# Exhibit M

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RUDY WOODWARD, for himself and other persons similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| GENERAL MOTORS LLC; and DON MCCUE CHEVROLET, INC.; | ) ) ) |
| Defendants. | ) ) |

## **COMPLAINT – CLASS ACTION**

### MATTERS RELEVANT TO MULTIPLE CLAIMS

### INTRODUCTION

1. Plaintiff Rudy Woodward brings this action against General Motors LLC ("GM") and Don McCue Chevrolet, Inc. ("McCue") to secure redress for the sale of vehicles with defective ignition and electrical systems.

### JURISDICTION AND VENUE

2. This Court has jurisdiction, under 28 U.S.C. §1332(d). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and at least one member of the class is of diverse citizenship to GM. There are over 100 class members.

3. Personal jurisdiction over GM is proper because GM does business in Illinois.

4. Personal jurisdiction over McCue is proper because McCue is located in Illinois.

5. Both defendants committed the tortious acts which are the subject of the complaint in Illinois, and within this district.

6. Venue in this district is proper for the same reasons.

### PARTIES

7. Plaintiff Rudy Woodward is an individual who resides in the Northern District of Illinois and is a citizen of Illinois.

1

8. Defendant GM is a limited liability company organized under Delaware law with principal offices at 300 Renaissance Center, Detroit, MI 48265. On information and belief, it has two members, Mark L. Reuss and Daniel Ammann. On information and belief, both members are residents and citizens of Michigan.

9. GM does business in Illinois. Its registered agent and office is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

10. GM is engaged in the business of manufacturing, producing, marketing, distributing, advertising and selling GM vehicles.

11. Defendant McCue is a Wisconsin corporation with its principal place of business in Illinois. It operates a car dealership. Its registered agent and office is Michael Navigato, 2580 Foxfield Rd., Suite 200, St. Charles, IL 60174.

## FACTS

12. In 2011, plaintiff Rudy Woodward purchased from McCue a used 2007 Chevrolet HHR that had been manufactured and sold by GM.

13. Plaintiff purchased the vehicle in reliance on GM's reputation for making quality vehicles.

14. In March 2014, GM recalled plaintiff's vehicle and numerous others because of a defective ignition switch ("ignition problem"). (Exhibit A)

15. The vehicles that were recalled include the 2003-07 Saturn Ion, 2005-07 Chevrolet Cobalt, 2006-07 Chevrolet HHR, 2006-07 Pontiac Solstice, 2007 Saturn Sky, and 2007 Pontiac G5 ("affected vehicles"), and two models not sold in the United States.

16. The number of vehicles recalled in the United States is 1.4 million.

17. The ignition problem is that the ignition switch shuts down if jostled, effectively turning the car off. Heavy key chains, or attachments hanging from the ignition switch, or the motion of a car veering off the road have been blamed for the car turning off. (Exhibit A)

18. This is not only a safety hazard, but if a collision results the airbags will not

function with the ignition turned off.

19. The ignition problem has been identified as the cause of 31 crashes, resulting in 13 fatalities.

20. Plaintiff believes that his particular ignition switch is defective because he has heard odd clicking noises from the switch when starting and stopping.

21. Plaintiff contacted McCue in response to the recall. He was told that he cannot bring the vehicle in for repairs because McCue does not have parts to fix the ignition. Plaintiff was informed that a new ignition switch is being developed, which may be available in April 2014. Plaintiff was told that the vehicle is not safe to operate.

22. Plaintiff suffered economic harm as a result of not being able to use his vehicle.

23. Plaintiff also suffered economic harm because his vehicle has lesser value than it would have had it not been defective.

24. Numerous members of the class described herein also suffered economic harm as a result of not being able or reluctance to use their vehicles. All members of the class have vehicles of lesser value than they would have had they not been defective.

25. On Feb. 24, 2014, GM issued a press release stating:

DETROIT – General Motors is expanding the recall of certain 2003-2007 model year vehicles to correct a condition with the ignition switch that may allow the key to unintentionally move or switch to the "accessory" or "off" position, turning off the engine and most of the electrical components on the vehicle.

In addition to 2005-2007 Chevrolet Cobalts and Pontiac G5 and Pontiac Pursuit sold in Canada only, GM is separately recalling 2003-2007 Saturn Ions, 2006-2007 Chevrolet HHRs, and 2006-2007 Pontiac Solstice and 2007 Saturn Sky models. The affected U.S. vehicle population, including those vehicles recalled Feb. 13, totals 1,367,146.

This expanded vehicle population raises the number of reported incidents involving frontal crashes, in which the recall condition may have caused or contributed to the non-deployment of the frontal airbags, to 31 involving 13 front-seat fatalities.

As part of the recall, GM is taking steps to address customer concerns and working with its suppliers to increase parts production and accelerate availability.

GM will notify all affected customers that in addition to recalling their vehicles and performing repairs at no charge to them, GM and its dealers will work with customers on an individual, case-by-case basis to minimize inconvenience associated with the recall.

"Ensuring our customers' safety is our first order of business," said GM North America President Alan Batey. "We are deeply sorry and we are working to address this issue as quickly as we can."

Going beyond required written notification, GM, through its customer care centers and social media teams, is using customer records and communications channels to notify affected customers of the recall and additional actions the company is willing to take to relieve their concerns and minimize inconvenience.

GM is recalling these vehicles because the ignition switch torque performance may not meet GM specifications. If the torque performance is not to specification, and the key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event, the ignition switch may inadvertently be moved out of the "run" position.

The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.

Dealers will replace the ignition switch to prevent the unintentional or inadvertent key movement. Until this correction is performed, customers should use only the ignition key with nothing else on the key ring. As always, customers should drive responsibly and use their safety belts.

On Monday, the company submitted to the National Highway Traffic Safety Administration a detailed chronology associated with its initial recall of the ignition switch torque performance condition in Chevrolet Cobalts and Pontiac G5s and Pursuits. The chronology outlines events that happened during the time that elapsed between receiving the first field reports and issuing a recall.

"The chronology shows that the process employed to examine this phenomenon was not as robust as it should have been," said Batey. "Today's GM is committed to doing business differently and better. We will take an unflinching look at what happened and apply lessons learned here to improve going forward." . . .

26. On information and belief, GM or its predecessor knew of the ignition problem as long ago as 2004. (Exhibit B)

27. In addition, GM dealers such as McCue knew of the ignition problem by 2005, when a technical service bulletin was issued (Exhibit B).

28. No public disclosure of the ignition problem in a manner likely to reach the average consumer was made until 2014.

29. McCue did not disclose the ignition problem to plaintiff prior to the time he purchased his vehicle in 2011.

30. Had plaintiff known of the ignition problem before he purchased his vehicle, he

4

would not have made the purchase.

31. The ignition problem was a material fact to plaintiff and all other purchasers and users of the affected vehicles.

32. The affected vehicles are not safe to operate until an ignition switch of different design than that used at present is installed.

33. GM and McCue intentionally concealed the ignition problem for their economic gain, in that (a) they wished to avoid having to repair the affected vehicles, (b) they wished to avoid having GM dealers such as McCue unable to sell the affected vehicles, new and used, and (c) they wished to avoid damaging GM's reputation for quality.

34. Defendants knew that the affected vehicles were being continuously sold as used vehicles.

35. The conduct of GM and McCue recklessly or maliciously disregarded the rights of plaintiff and the class members for motives of pecuniary gain.

36. Plaintiff has given notice of his claim to defendants.

## COUNT I – CONSUMER FRAUD

37. Plaintiff incorporates paragraphs 1-35.

38. This claim is against both defendants.

39. Defendants engaged in unfair and deceptive acts and practices, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and similar statutes of other states, by:

    a. Selling defective vehicles;

    b. Suppressing information about known defects;

    c. Representing that the affected vehicles were safe to drive;

40. The acts of defendants were done in the course of trade and commerce.

## CLASS ALLEGATIONS

41. Plaintiff brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf

of a class.

42. The class consists of all persons in the United States who purchased any of the affected vehicles new or used on or after June 2, 2009 (the day following the bankruptcy filing of GM's predecessor).

43. GM and its dealers are excluded from the class.

44. The members of the class are so numerous that joinder of all members is impracticable, numbering in the thousands.

45. There are questions of law and fact common to the members of the class, which predominate over any questions that affect only individual class members. The predominant common questions include:

    a. Whether the affected vehicles were materially defective;

    b. Whether defendants concealed the defects;

    c. Whether defendants misrepresented the vehicles as safe;

    d. Whether defendants' culpability is such that they should be required to pay punitive damages.

46. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

47. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer class action litigation.

48. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class, and against defendants (with McCue being liable only to persons it sold vehicles to), for:

    a. Compensatory damages;

    b. Punitive damages;

  c. Attorney's fees, litigation expenses, and costs of suit; and

  d. Such other or further relief as the Court deems proper.

## COUNT II – COMMON LAW FRAUD

49. Plaintiff incorporates paragraphs 1-35.

50. Defendants committed fraud by:

  a. Representing that the affected vehicles were safe to drive;

  b. Concealing a known dangerous condition.

## CLASS ALLEGATIONS

51. Plaintiff brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class.

52. The class consists of all persons who purchased any of the affected vehicles on or after June 2, 2009.

53. GM and its dealers are excluded from the class.

54. The members of the class are so numerous that joinder of all members is impracticable, numbering in the thousands.

55. There are questions of law and fact common to the members of the classes, which predominate over any questions that affect only individual class members. The predominant common questions include:

  a. Whether the affected vehicles were materially defective;

  b. Whether defendants concealed the defects;

  c. Whether defendants misrepresented the vehicles as safe;

  d. Whether defendants' culpability is such that they should be required to pay punitive damages.

56. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

57. Plaintiff will fairly and adequately represent the interests of the class

7

members. Plaintiff has retained counsel experienced in consumer class action litigation.

58. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class, and against defendants (with McCue being liable only to persons it sold vehicles to), for:

    a. Compensatory damages;

    b. Punitive damages;

    c. Litigation expenses, and costs of suit; and

    d. Such other or further relief as the Court deems proper.

## COUNT III – BREACH OF IMPLIED WARRANTY; UNIFORM COMMERCIAL CODE AND MAGNUSON-MOSS ACT

59. Plaintiff incorporates paragraphs 1-35.

60. This claim is against McCue.

61. Under the Uniform Commercial Code ("UCC") there is an implied warranty in the sale of goods by a merchant that the goods shall be merchantable. 810 ILCS 5/2-314.

62. Under UCC §2-314(2), "Goods to be merchantable must be at least such as.... (c) are fit for the ordinary purposes for which such goods are used".

63. The affected vehicles are not fit for ordinary driving.

## CLASS ALLEGATIONS

64. Plaintiff brings this claim, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), on behalf of a class.

65. The class consists of all persons who purchased one of the affected vehicles (new or used) from McCue on or after a date four years prior to the filing of this action.

66. The members of the class are so numerous that joinder of all members is impracticable.

67. There are questions of law and fact common to the members of the class, which

8

predominate over any questions that affect only individual class members. The predominant common questions include:

    a.    Whether the affected vehicles are unmerchantable.

    b.    Whether defendant failed to warn of the dangers of the affected vehicles;

    c.    Whether defendant breached implied warranties.

68. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

69. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer class action litigation.

70. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class, and against McCue, for:

    a.    Compensatory damages;

    b.    Attorney's fees and litigation expenses (pursuant to 15 U.S.C. §1610), and costs of suit; and

    c.    Such other or further relief as the Court deems proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

                                           /s/ Daniel A. Edelman
                                           Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

        Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

        /s/ Daniel A. Edelman
        Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**DOCUMENT PRESERVATION DEMAND**

      Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendants are aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendants.

                                                /s/ Daniel A. Edelman
                                                Daniel A. Edelman

# EXHIBIT A

# IMPORTANT SAFETY RECALL

March 2014

Rudy Woodward

**REDACTED**

Dear Rudy Woodward:

This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act.

General Motors has decided that a defect which relates to motor vehicle safety exists in 2005-2007 model year (MY) Chevrolet Colbalt, 2006-2007 MY Chevrolet HHR, 2005-2006 MY Pontiac Pursuit, 2006-2007 MY Pontiac Solstice, 2007 MY Pontiac G5, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles. As a result, GM is conducting a recall. We apologize for this inconvenience. However, we are concerned about your safety and continued satisfaction with our products.

## IMPORTANT

- This notice applies to your 2007 model year Chevrolet HHR, **VIN 3GNDA23P37S555604**. It is involved in safety recall 14063.
- **Until the recall repairs have been performed, it is <u>very</u> important that you remove all items from your key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from your key ring.**
- When parts become available, GM will notify you to schedule an appointment with your Chevrolet dealer.
- The recall repairs will be performed for you at **no charge**.

| | |
|---|---|
| **Why is your vehicle being recalled?** | There is a risk, under certain conditions, that your ignition switch may move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine. This risk increases if your key ring is carrying added weight (such as more keys or the key fob) or your vehicle experiences rough road conditions or other jarring or impact related events. If the ignition switch is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury or fatality.<br><br>**Until the recall repairs have been performed, it is <u>very</u> important that you remove all items from your key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from your key ring.** |
| **What will we do?** | PARTS ARE NOT CURRENTLY AVAILABLE, but when parts are available, your Chevrolet dealer will replace the ignition switch on your vehicle. This service will be performed for you at **no charge**. Because of scheduling |



requirements, it is likely that your dealer will need your vehicle longer than the actual service correction time of approximately 40 minutes.

We are working as quickly as possible to obtain parts, and expect to have parts beginning in April of this year. We will contact you as soon as parts are available so that you can schedule an appointment with your dealer to have your vehicle repaired.

| | |
|---|---|
| **What should you do?** | When GM notifies you that parts are available, you should contact your Chevrolet dealer to arrange a service appointment. In the meantime, remove all items other than the vehicle key from your key ring. |
| **Did you already pay for this repair?** | When GM notifies you that parts are available, GM will also provide instructions for you to request reimbursement if you paid for repairs for the recall condition previously. |
| **Do you have questions?** | If you have questions or concerns that your dealer is unable to resolve, please contact the Chevrolet Customer Assistance Center at 1.800.222.1020 (TTY 1.800.833.2438). |

If after contacting your dealer and the Customer Assistance Center, you are still not satisfied we have done our best to remedy this condition without charge and within a reasonable time, you may wish to write the Administrator, National Highway Traffic Safety Administration, 1200 New Jersey Avenue, SE., Washington, DC 20590, or call the toll-free Vehicle Safety Hotline at 1.888.327.4236 (TTY 1.800.424.9153), or go to http://www.safercar.gov. The National Highway Traffic Safety Administration Campaign ID Number for this recall is 14V-047.

Federal regulation requires that any vehicle lessor receiving this recall notice must forward a copy of this notice to the lessee within ten days.

Jim Moloney
General Director – Customer & Relationship Services

GM Recall #14063

# EXHIBIT B

Case: 1:14-cv-01877 Document #: 1-14 filed: 05/14/14 Page 5 of 69 PageID #:17
09-50026-mg    Doc 12621-13    Filed 04/21/14    Entered 04/21/14 20:24:57    Exhibit
                                  Pg 18 of 19

TRENDING　*Australia GP*　*Honda Recall*　*Toyota Driving Concept*　*SXSW Fatal Crash*　*Schwarzenegger Tank*

## REPORT

GM knew about fatal Chevy ignition problem decade before recall



By Brandon Turkus
Posted Feb 21st 2014 10:15AM

Well, this is not good for General Motors. Following a report last week that GM was recalling 778,000 Chevrolet Cobalt and Pontiac G5 compacts over concerns that the ignition could switch out of the "run" position without warning, USA Today reports that the Detroit-based behemoth knew about the issue, which affected 2005 to 2007 Cobalts (the Cobalt shown above and in the gallery is from 2010) and 2007 Pontiac G5s, all the way back in 2004.

The information comes from a deposition in a civil lawsuit against GM, obtained by USA Today, which claims that a GM engineer experienced the issue while the then-new model was undergoing testing. The issue was "solved" when a technical service bulletin was issued in 2005, informing dealers to install a snap-on key cover on the cars of customers who complained about the issue. According to the Cobalt's program engineering manager, Gary Altman, the cover was an "improvement, it was not a fix to the issue."

The case where the depositions were made was from 2010, and involved Brooke Melton, a 29-year-old pediatric nurse in Georgia who was killed on her birthday. At the time, police claimed she was going too fast on a wet, rural road, although it later came out through the black box that her car's ignition had come out of the "run" position at least three seconds before the accident (the max amount of time a black box records before a wreck), disabling her

airbags, power steering and anti-lock brakes. According to USA Today, police said Melton was "traveling too fast for the roadway conditions," although it's impossible to know if she'd have been in the wreck, which injured the occupants of another vehicle, had her 2005 Chevy not shut off. GM settled the Melton family's case, although the details remain confidential.

As we reported last week, GM knew of 22 crashes relating to the ignition issue and six deaths that came from "frontal-impact crashes." According to USA Today, GM wouldn't say whether Melton was one of the six known deaths, as she wasn't in a frontal-impact accident.

News Source: USA Today
Category: Budget, Sedan, Government/Legal, Recalls, Safety, Chevrolet, Pontiac
Tags: chevy, chevy cobalt, ignition, pontiac, pontiac g

Select Make

Select Model

Zip    GO

SHARE         ADD

MORE