# Exhibit Q

1 | **MICHAELS LAW GROUP, APLC**
A Professional Law Corporation
2 | Jonathan A. Michaels, Esq. – State Bar No. 180455
Kathryn J. Harvey, Esq. – State Bar No. 241029
3 | Kianna C. Parviz, Esq. – State Bar No. 293568
2801 W. Coast Highway, Suite 370
4 | Newport Beach, CA 92663
Telephone: (949) 581-6900
5 | Facsimile: (949) 581-6908
(jmichaels@michaelslawgroup.com)
6 | (kharvey@michaelslawgroup.com)
(kparviz@michaelslawgroup.com)
7 |

8 | Attorneys for Plaintiff,
Martin Ponce
9 |

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA**

12 | **WESTERN DIVISION**

13 |

14 |

15 | MARTIN PONCE, individually, and on | Case No.
16 | behalf of all others similarly situated, | CV14-2161 JFW-FFMx

17 | Plaintiffs, | **CLASS ACTION COMPLAINT**
18 | vs. | **FOR DAMAGES AND**
**EQUITABLE RELIEF**

19 | GENERAL MOTORS LLC, a
20 | Delaware limited liability company;
and DOES 1 to 100, inclusive,
21 |

22 | Defendants.

23 |

24 |

25 |

26 | **JURY TRIAL DEMANDED**

27 |

28 |

Plaintiff Martin Ponce, by his attorneys, files this Class Action Complaint, for himself and all others similarly situated against General Motors LLC ("GM" or "Defendant"). Plaintiff alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## I.

## INTRODUCTION

1. GM markets and sells numerous models of vehicles in the United States, including the following 2003 through 2007 models: 2003 Saturn Ion; 2004 Saturn Ion; 2005 Chevrolet Cobalt, Pontiac G5 and Saturn Ion; 2006 Chevrolet Cobalt, Pontiac G5, Pontiac Solstice, Saturn Ion and Chevrolet HHR; and 2007 Chevrolet Cobalt, Pontiac G5, Pontiac Solstice, Saturn Ion, Chevrolet HHR and Saturn Sky (the "Subject Vehicles").

2. This case involves Defendant GM's conscious decision to overlook, and in fact conceal, a deadly design defect in vehicle ignition switches in more than one million GM vehicles placed on the road from 2003 to 2007.

3. On February 13, 2014, GM issued a recall of 778,000 Chevrolet Cobalt and Pontiac G5 vehicles for "ignition key failure" — a situation where the vehicle unexpectedly turns off while driving, disabling the car's power steering and power brakes, shutting off the vehicle's airbag system, and cutting off acceleration. Now, GM has increased their recall to include not just the Chevrolet Cobalt and Pontiac G5, but each of the Subject Vehicles, all of which total more than one million GM vehicles.

4.      In making the unprecedented recall, GM issued a statement that it was "deeply sorry" for the catastrophic events, and that it was "working to address the issue as quickly as [it] can."  GM North America President Alan Batey stated, "Ensuring our customers' safety is our first order of business."

5.      On its surface, GM's public statement suggests that the company is acting with full corporate responsibility.  In truth, however, GM had known of the ignition switch defect since at least 2004.

6.      In 2010, pediatric nurse Brooke Melton was killed when her Chevy Cobalt lost power while driving on the highway.  Depositions in a civil lawsuit brought by the Melton's heirs revealed that GM engineers had experienced the defect in 2004 while testing the Cobalt at the time of the vehicle's launch.  In further testing, the engineers were able to replicate the problem, leading to the opening of an internal GM investigation on the issue.  However, as GM stated in a February 24, 2014 letter to the National Highway Traffic Safety Administration (NHTSA), "After consideration of the lead time required, cost, and effectiveness of each of these solutions, the [investigation] was closed with no action."

7.      In making the decision to cover up the ignition switch defect for at least a decade, GM consciously put millions of Americans' lives at risk.  GM knowingly placed on public streets more than one million defective vehicles with the propensity to shut down during normal driving conditions, creating a certainty of accidents, bodily harm and death.

8.      This action is brought by Plaintiff on behalf of a class comprising all similarly situated consumers in the United States who purchased or leased one or more of the Subject Vehicles other than for resale or distribution (the "Class" or

"Class Members"). Plaintiff and Class Members assert claims against GM for: i) Breach of Warranty, ii) Unlawful, Unfair, and Fraudulent Business Acts and Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*), iii) Fraudulent Concealment, and iv) Violation of the Magnuson-Moss Warranty Act. Plaintiff and Class Members seek restitution, damages and equitable relief, including disgorgement of profits, and appropriate attorney's fees and costs.

## II.

## THE PARTIES

9.     Plaintiff Martin Ponce is an individual consumer over the age of 18. At all relevant times, he resided in Pomona, California, a neighborhood located in Los Angeles County. In or about 2007 or 2008, Plaintiff purchased a 2007 Chevrolet HHR in Southern California. Plaintiff purchased the 2007 Chevrolet for use as a family car, to be used by both he and his wife while traveling to and from work and transporting their four children, now ages 4, 10, 13 and 14. Plaintiff's primary motivation for purchasing the vehicle was that he wanted a safely designed and manufactured vehicle for his family. Chevrolet's reputation, representations and advertising in the industry that it was a manufacturer of quality, safe and reliable cars influenced Plaintiff's decision to purchase his 2007 Chevrolet HHR. Plaintiff believes he paid a price premium for his vehicle based on his belief that the vehicle would be a safe family car. Plaintiff did not learn of the ignition switch defect on his Chevrolet HHR until March 2014. Had he known about the defect, he would not have purchased this vehicle, would not have paid a premium price, and would not have retained the vehicle.

10.     Plaintiff has standing to assert all of the claims set forth herein, as he suffered an injury in fact and a loss of money or property as a result of Defendant's

conduct. Plaintiff's 2007 Chevrolet HHR (VIN 3GNDA33P67S619205) is one of the Subject Vehicles, and in March 2014 Plaintiff received the Recall Notice attached hereto, and incorporated herein, as Exhibit "A."

11. Defendant General Motors LLC is a Delaware limited liability company with its principal place of business in Detroit, Michigan. GM assumed the business operations and acquired substantially all of the assets of General Motors Corporation ("Old GM") following General Motors Corporation's fall into bankruptcy in 2009. GM is authorized to do business in the State of California, and is identified as entity number 200928910138.

12. GM further assumed certain liabilities of Old GM under Bankruptcy Code 363, and pursuant to the *Amended and Restated Master Sale and Purchase Agreement by and Among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers and NGMCO, Inc., a Purchaser,* dated June 26, 2009, which stated:

> (A) all liabilities arising under express written warranties of Sellers [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers [Old GM] or Purchaser [GM] prior to or after the Closing and (B) all obligations under Lemon Laws;

13. Pursuant to the *Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc.. a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection*

*with the Sale; and (III) Granting Related Relief,* filed in the United States Bankruptcy Court Southern District of New York on July 5, 2009, as Docket No. 2968, GM agreed that:

> From and after the Closing, the Purchaser [GM] shall comply with the certification, reporting, and all recall requirements of the National Traffic and Motor Vehicle Safety Act, as amended and recodified, including by the Transportation Recall Enhancement Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code, and similar Laws, in each case, to the extent applicable in respect of motor vehicles, vehicles, motor vehicle equipment, and vehicle parts manufactured or distributed by the Sellers [Old GM] prior to the closing.

14.     Because GM acquired substantially all of Old GM's assets through the 363 Bankruptcy Sale, expressly assumed certain liabilities of Old GM and ran GM as a continuing enterprise of Old GM, and because both Old GM and GM were fully aware of, and took steps to conceal, the ignition switch defects contained on the Subject Vehicles, GM is liable for both its own acts and omissions, and the acts and omissions of Old GM, as alleged in this Complaint.

15.     Defendant and its subsidiaries, affiliates, and other related entities, and its respective employees were the agents, servants and employees of Defendant, and each was acting within the purpose and scope of that agency and employment.

16.     Whenever reference is made to any act by Defendant or its subsidiaries, affiliates, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified

**CLASS ACTION COMPLAINT**

and/or directed that act or transaction for Defendant while engaged in the scope of their duties.

### III.

### JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs.  Plaintiff alleges that the total claims of individual Class Members are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2).

18.     This Court has personal jurisdiction over Defendant, because Defendant engaged in significant business throughout the State of California thus providing the State of California with general jurisdiction.

19.     Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendant, as a corporation, is deemed to reside in any district in which it is subject to personal jurisdiction.  Moreover, because Defendant has failed to identify a California principal place of business in their Statement of Information filed with the California Secretary of State as required by California Corporations Code § 2105, venue is proper in this County and judicial district.

CLASS ACTION COMPLAINT

IV.

## FACTUAL ALLEGATIONS

### A. The Defective Ignition Switches and GM's Knowledge Thereof.

20.    GM manufactures, distributes, markets and sells numerous models of vehicles in the United States.  On February 13, 2014, GM issued a recall of 778,000 Chevrolet Cobalt and Pontiac G5 vehicles for "ignition key failure," a situation where the vehicle unexpectedly turns off while driving, disabling the car's power steering and power brakes, shutting off the vehicle's airbag system, and cutting off acceleration.  Thereafter, on or about February 25, 2014, GM expanded its recall to include 2003 – 2007 Saturn Ions, 2006 – 2007 Chevrolet HHRs, 2006 – 2007 Pontiac Solstice and 2007 Saturn Sky models.  According to GM, this brought the number of U.S. vehicles affected by the recall to 1,367,146 vehicles.

21.    The "ignition key failure" defect on nearly 1.4 million U.S. cars is about as serious an issue as they come.  The unexpected loss of all engine power while driving your vehicle causes a loss in power steering, power brakes and acceleration.  This instant and unexpected loss of power causes an unreasonable danger of accident.  Even worse, the loss of power also causes the vehicles' airbags system to shut off, meaning that when your car crashes from the lack of power your airbags fail to deploy, substantially increasing the likelihood of serious bodily injury or death.

22.    Imagine driving on a windy mountain road, or through a busy city intersection, and having your vehicle suddenly shut off — cutting off the power steering, power breaking and acceleration.  Or worse, imagine it happening to your teenage daughter, as was the case in 2006 when 18-year-old Natasha Weigel and

her 15-year-old friend, Amy Rademaker, suddenly lost control of their Chevy Cobalt and slammed into a tree, killing them both. For families who have lost loved ones as a result of GM's failures, the loss has been devastating. Even more devastating is learning that Old GM knew of, and could have prevented, the defective ignition switch since at least 2004.

23. When making the unprecedented recall, GM issued a statement that it was "deeply sorry" for the catastrophic events, and that it was "working to address the issue as quickly as [it] can." GM North America President Alan Batey stated, "Ensuring our customers' safety is our first order of business."

24. On its surface, GM's public statement suggests that the company is acting with full corporate responsibility: As soon as it learned of the problem, it acted swiftly to correct it. In truth, however, the Detroit automaker had known of the defect for a decade, only issuing the recall when it got caught actively concealing it.

25. The genesis for the recall was a recent lawsuit brought by the estate of Brooke Melton, a pediatric nurse killed on her 29th birthday when her Chevy Cobalt lost power while driving on the highway. Depositions in the case revealed that Old GM engineers experienced the defect in 2004 while testing the Cobalt at the time of the vehicle's launch. In further testing, the engineers were able to replicate the problem, leading to the opening of an internal GM investigation on the issue. However, as GM stated in a February 24, 2014 letter to the National Highway Traffic Safety Administration (NHTSA), "After consideration of the lead time required, cost, and effectiveness of each of these solutions, the [investigation] was closed with no action."

26.     In 2005, after the Cobalt was launched, Old GM received new field reports of vehicles suddenly losing engine power, leading to yet another internal GM investigation.  An Old GM engineer redesigned the ignition key to solve the issue, but after an initial approval, the redesign was canceled.  Instead, the company elected to issue a "service bulletin" to dealers to install a snap-on key cover for customers who complained of the problem.  However, as GM engineer Gary Altman testified in his deposition, the cover was an "improvement, it was not a fix to the issue."

27.     In September 2005, the Old GM legal department began opening files on fatalities caused by the ignition key failure, and by 2007 Old GM had tracked 10 crashes related to the defect.  In October 2006, the service bulletin was updated to include the four other GM vehicles that used the same ignition system: the Chevrolet HHR, the Pontiac Solstice, the Saturn Ion, and the Saturn Sky.

28.     In 2009, GM opened yet another investigation into the ignition problem, and concluded that the ignition system needed to be redesigned — the same conclusion it reached years before.  However, this time GM did not cancel the redesign, and the change was made for the 2010 model year cars.  However, nothing was done to recall the 2005 to 2009 defective vehicles that were in the hands of consumers.

29.     After the lawyers in the Brooke Melton lawsuit discovered that GM had been concealing the ignition key defect since 2004, GM had no choice but to act.  In mid-February, the company recalled 778,000 Chevrolet Cobalt and Pontiac G5 vehicles.  On February 24, 2014, it sent a formal letter to NHTSA, explaining that the defect had caused 22 front-impact crashes and six deaths, and admitting that it had known of the defect since 2004, but had failed to act.  GM did not explain,

**CLASS ACTION COMPLAINT**

however, why it had not issued a recall for the four other vehicles that used the same defective part.

30.     Under mounting pressure, on or about February 25, 2014, one day after GM had supposedly "come clean" to NHTSA, GM increased its recall to include another 842,0000 vehicles that also use the defective part, and now stated that it knew of 31 crashes and 13 deaths.  The veracity of this statement, however, is also suspect, as GM is only counting fatalities from "front-impact" crashes, when it knows that the defect caused deaths in other types of accidents.  For example, the crash involving Brooke Melton — the one who started it all — was a side impact crash, meaning that GM does not include her death in its fatality count.  Other reports that have surfaced following the recall indicate that the death toll for the defective vehicles is over 300.

31.     In making a decision to cover up its ignition switch defects for at least a decade, GM made a conscious decision to put millions of Americans' lives at risk.  GM placed on public streets more than one million defective vehicles with the propensity to shut down during normal driving conditions, creating a certainty of accidents, and resulting in bodily harm, and in more cases than they would like to admit, death.  GM's own recall notices recognize that as a result of the defective ignition switches, "air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury or fatality."

32.     As former NHTSA head, Joan Claybrook, stated, "This is an immoral act by General Motors to cover up this defect, not tell people and then the result was inevitable, that people were going to die and be injured and that to me is unconscionable."

**B. GM's Cover-Up of the Defective Ignition Switch on the Subject Vehicles Has Irreparably Damaged the Reputation of these Vehicles and Has Harmed Plaintiff and the Class.**

33.     Upon information and belief, both Old GM and GM have striven in the manufacturing, distributing, marketing and selling its vehicles, to promote their vehicles, including the Subject Vehicles, as quality, safe and reliable.  However, for a decade, Old GM, and more recently GM, have known, and failed to inform consumers, about a deadly ignition switch defect contained on the Subject Vehicles.

34.     The ignition switch defect contained on the Subject Vehicles have caused damage to Plaintiff and to the Class.

35.     In or about late 2007 or early 2008, Plaintiff purchased a 2007 Chevrolet HHR in Southern California.  Plaintiff purchased the 2007 Chevrolet HHR for use as a family car, to be used by both he and his wife while traveling to and from work and transporting their four children, now ages 4, 10, 13 and 14.

36.     Prior to purchase, Plaintiff saw and relied upon Defendant's advertising campaign for the Subject Vehicles, including advertising brochures prepared by Defendant and disseminated by its dealer network.  Plaintiff's primary motivation for purchasing the vehicle was because he wanted a safely designed and manufactured vehicle for his family.  He bought his vehicle relying on GM's representations and advertising in the industry that it was a manufacturer of quality, safe and reliable cars, all of which influenced Plaintiff's decision to purchase his 2007 Chevrolet HHR.

37.     As a result of more than one million defective ignition switches, the Subject Vehicles are not safe, and are not reliable.  Moreover, as a result of the 12 (or possibly, substantially more) deaths caused by GM's intentional concealment of the defect, the Subject Vehicles reputation and marketability have been irreparably destroyed.  This is particularly true because, as a result of the news surrounding the massive recall by GM, and the press surrounding the deaths caused by the failure to timely recall the defective parts, GM customers and consumers are skeptical of the safety and reliability of the auto maker's vehicles and are reluctant to purchase any of the Subject Vehicles.

38.     Plaintiff and the Class, all paid a price premium for their purchase of the Subject Vehicles based on their belief, reinforced by GM's advertising, that the vehicles are safe and reliable.  Now that GM has admitted that the vehicles contain a potentially deadly defect, the vehicles are worth less than they would have been without the defect.

39.     Further, given the serious safety concerns as a result of the defective ignition switch, Plaintiff has driven his vehicle, and will continue to drive his vehicle, less than he would have were he provided with a safe and reliable vehicle.

40.     Plaintiff did not learn of the ignition switch defect on his Chevrolet HHR until March 2014.  Had he known about the defect, he would not have purchased this vehicle, would not have paid a premium price, and would not have retained the vehicle.

41.     Further, a serious safety recall such as the recall of GM's ignition switches, is material to, and affects all consumers and the Class.  GM had a moral

and legal obligation to disclose to the Class, including Plaintiff, a defect that threatened the safety and life of everyone who drove in, or near, a Subject Vehicle.

42.     Defendant placed profit before integrity and the lives of its consumers in the marketing and sale of the Subject Vehicles.  Plaintiff and Class Members suffered injury in that they and others spent money on products that were not what they were represented to be, and therefore lacked the value Defendant led them to believe and/or for which they paid in a premium purchase or lease price for a Subject Vehicle.

## V.
## CLASS ALLEGATIONS

43.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and seeks certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed Class is defined as:

> All persons who purchased or leased the following vehicles sold by Defendant in the United States other than for resale or distribution: 2003 Saturn Ion, 2004 Saturn Ion, 2005 Chevrolet Cobalt, 2005 Pontiac G5, 2005 Saturn Ion, 2006 Chevrolet Cobalt, 2006 Pontiac G5, 2006 Pontiac Solstice, 2006 Saturn Ion, 2006 Chevrolet HHR, 2007 Chevrolet Cobalt, 2007 Pontiac G5, 2007 Pontiac Solstice, 2007 Saturn Ion, 2007 Chevrolet HHR and 2007 Saturn Sky.  This Class definition may be supplemented or extended to include other GM vehicles which are the subject of an ignition switch recall by GM after the filing of this Complaint.  Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of

> Defendant, and the legal representatives, heirs, successors
> and assigns and any entity in which they have or have had
> a controlling interest in Defendant.

44.     Defendant's representation, practices, and omissions were applied uniformly to all Members of the Class during the Class Period, so that the questions of law and fact are common to all Members of the Class.  All Members of the Class were and are similarly affected by having been exposed to the misrepresentations, purchased or leased and used the Subject Vehicles for their intended and foreseeable purpose, and the relief sought is for the benefit of Plaintiff and Members of the Class.

45.     The Class is so numerous that joinder of all Members would be impractical.  As there are over 1,000,000 Subject Vehicles in United States, the number of affected consumers would be in the hundreds of thousands, at least, making joinder impossible.

46.     Questions of law and fact common to each Class Member exist that predominate over questions affecting only individual Members, including, *inter alia*:

a.     Whether the Subject Vehicles suffer from ignition switch defects;

b.     Whether the defective ignition switch on the Subject Vehicles breaches implied and express warranties provided by Old GM and/or GM;

c.     Whether Old GM, and later GM, concealed the ignition switch defects;

d.      Whether Old GM, and later GM, engaged in fraud by concealing the defects contained in the Subject Vehicles ignition switches;

e.      Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sale of the Subject Vehicles were deceptive, unlawful or unfair, thereby violating the Cal. Bus. & Prof. Code § 17200, *et seq*. and other state laws;

f.      Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sale of the Subject Vehicles constitute a systematic breach of warranty, in violation of state law and the Magnuson-Moss Warranty Act; and

g.      Whether Defendant's conduct injured consumers and, if so, the extent of the injury.

47.     The claims asserted by Plaintiff are typical of the claims of the Class Members, as his claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiff, like all Class Members, was exposed to Defendant's misrepresentations and suffered an injury.

48.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

49.     Certification of this class action is appropriate under F.R.C.P. 23(b) because the above questions of law or fact common to the respective Members of

the Class predominate over questions of law or fact affecting only individual Members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims.

50.     Absent a class action, it would be highly unlikely that Plaintiff or any other Class Members could protect their own interests because the cost of litigation through individual lawsuits would exceed any expected recovery.

51.     Certification is also appropriate because Defendant has acted or refused to act on grounds applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

52.     Further, given the large number of purchasers and lessees of the Subject Vehicles, allowing individual actions to proceed in lieu of a class action would risk yielding inconsistent and conflicting adjudications.

53.     A class action is a fair and appropriate method for the adjudication of this controversy, in that it will permit many claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.

54.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued regarding the management of this class action.

## COUNT I

## Breach of Express and Implied Warranty

55.    Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the Class.

56.    Plaintiff and other members of the Class formed a contract with Old GM when they purchased or leased a Subject Vehicle based on the promises and affirmations of fact made by Defendant on the Subject Vehicles that the Subject Vehicles were in a safe and reliable condition suitable for driving.

57.    Defendant GM assumed liability for the warranties of Old GM under a theory of successor liability, by way of Bankruptcy Code 363, and pursuant the *Amended and Restated Master Sale and Purchase Agreement*, dated June 26, 2009.

58.    Plaintiff and Members of the Class were exposed to, and acted in positive and material response to, these promises and affirmations of fact, in purchasing or leasing the Subject Vehicles at the prices they did.    These representations constitute express warranties that became part of the basis of the bargain.

59.    Such representations also created implied warranties that the Subject Vehicles conformed to such representations and would pass without objection in the trade or industry.

60.    All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiff.

**CLASS ACTION COMPLAINT**

61.    Old GM and GM breached the terms of these express and implied agreements and warranties by providing Subject Vehicles that did not conform with the promised benefits, as described above, and instead by providing Subject Vehicles containing defective ignition switches.

62.    Because of Old GM and GM's systematic breach of warranties, Plaintiff and other Members of the Class have been damaged in an amount necessary to compensate them for not receiving the benefit of their bargain.

## COUNT II
### Fraud – Concealment

63.    Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the Class.

64.    In February 2014, GM issued a recall of 1.4 million vehicles for "ignition key failure," a situation where the vehicle unexpectedly turns off while driving, disabling the car's power steering and power brakes, shutting off the vehicle's airbag system, and cutting off acceleration.

65.    In making the unprecedented recall, GM issued a statement that it was "deeply sorry" for the catastrophic events, and that it was "working to address the issue as quickly as [it] can."  GM North America President Alan Batey stated, "Ensuring our customers' safety is our first order of business."

66.     On its surface, GM's public statement suggests that the company is acting with full corporate responsibility.  In truth, however, Old GM, and thereafter GM have known, since at least 2004, that the ignition switch in the Subject Vehicles was defective, that it would fail, and that Subject Vehicles were not suitable for their intended use.  Defendant GM assumed liability for the warranties of Old GM under a theory of successor liability, by way of Bankruptcy Code 363, and pursuant the *Amended and Restated Master Sale and Purchase Agreement*, dated June 26, 2009.

67.     Old GM, and thereafter GM, intentionally failed to disclose and actively concealed the important fact that the ignition switches in the Subject Vehicles were defective.  This fact was only known to Old GM, and thereafter GM.

68.     Plaintiff and Class Members could not, in the exercise of ordinary care, have discovered that the ignition switches in the Subject Vehicles were defective.

69.     Old GM, and thereafter GM, intended to deceive Plaintiff and the Class Members by concealing material facts that a reasonable person would have considered to be important.

70.     Old GM, and thereafter GM, actively concealed and failed to disclose the true nature of the design and manufacturing defects contained in the Subject Vehicles with the intent to deceive Plaintiff and the Class Members.  Plaintiff and the Class Members justifiably reasonably relied on Old GM, and thereafter GM's deception to their detriment.

71.     Old GM, and thereafter GM, were each under a duty to Plaintiff and the Class Members to disclose the defective nature of the Subject Vehicles and their ignition switch and/or the associated repair costs because:

a.     Old GM, and thereafter GM, were each in a superior position to know the true state of facts about the safety defects contained in the Subject Vehicles and their ignition switches;

b.     Plaintiff and Class Members could not reasonably have been expected to learn or discover that their ignition switches had a dangerous safety defect until they experienced their car turning off while driving or difficulty steering;

c.     Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the safety defect.

72.     Old GM, and thereafter GM, continued to conceal the defective nature of the Subject Vehicles and their ignition switches for years, until after the death of a pediatric nurse who was killed when her Chevy Cobalt lost power while driving on the highway.  Old GM, and thereafter GM, waited 10 years to begin recalling vehicles for defective ignition switches after it became aware of the dangerous defect.  GM continues to cover up and conceal the true extent and nature of the problem.

73.     As a direct and proximate result of Old GM, and thereafter GM's misconduct, Plaintiff and the Class have suffered and will continue to suffer actual damages.

74.     Old GM, and thereafter GM's acts were done maliciously, oppressively, deliberately, with the intent to defraud, and in reckless disregard of Plaintiff's and the Class' rights and well-being with the sole purpose of enriching the GM.  Old GM, and GM's conduct warrants an assessment of punitive damages against Defendant in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

**Unlawful, Unfair, and Fraudulent Business Acts and Practices —**
**Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.**

75.     Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the Class.

76.     This cause of action is brought under the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*, which provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

77.     Old GM and GM each engaged in unlawful business practices when they committing systematic violations of the state consumer protection statutes and warranty laws.  The violations of these laws serve as predicate violations of the "unlawful" prong of the California Business & Professions Code § 17200, *et seq.*

78.   Old GM and GM each engaged in unfair, deceptive, untrue or misleading advertising because they knew that the Subject Vehicles suffered from a deadly defect of the ignition switch that would cause the Subject Vehicles to unexpectedly turn off while driving, disabling the car's power steering and power brakes, shutting off the vehicle's airbag system, and cutting off acceleration.

79.   Despite knowing that the Subject Vehicles contained a deadly defect of the ignition switch, Old GM, and Defendant GM both actually and as a successor, wilfully concealed the defect from the public and from owners of Subject Vehicles.

80.   In knowing of the defective ignition switches and failing to disclosure the defect, Old GM and GM have knowingly and intentionally concealed material facts.

81.   Old GM, and later GM were each under a duty to Plaintiff and the Class to disclose the defective nature of the ignition switches contained on the Subject Vehicles in that:

a.   Old GM and GM were each in a superior position to know the true state of facts about the deadly defect with the Subject Vehicles' ignition switches;

b.   Old GM and GM made partial disclosures regarding the allegedly safe and dependable quality of the Subject Vehicles without revealing the defective nature of the Subject Vehicles' ignition switches; and

c.   Old GM and GM actively concealed the defective nature of the Subject Vehicles' ignition switches from Plaintiff and the Class.

82.     The facts concealed by Old GM and GM are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase a GM vehicle, or to pay less for them.  Had Plaintiff and/or the Class been informed of the deadly defective ignition switches on the Subject Vehicles, they would not have purchase the vehicles, or would not have paid as much for them.

83.     Old GM and GM had an improper motive — profit before consumer safety — in its practices related to the advertising, marketing, promotion and sale of the Subject Vehicles.

84.     Old GM and GM's deceptive practices occurred repeatedly in their trade or business and were deceptively concealed from Plaintiff, other Members of the Class, and the general public, such that they could not reasonably determine this inaccuracy prior to purchasing or leasing the Subject Vehicles.

85.     Old GM and GM committed unfair business acts and/or practices by engaged in extensive national marketing and advertising to promote and sell the Subject Vehicles knowing that the Subject Vehicles contained a deadly defect.

86.     Old GM and GM engaged in deceptive business acts or practices by misrepresenting, failing to disclose, or adequately disclose, to the consumers targeted by and exposed to GM's advertising and promotional campaign, that the Subject Vehicles contained a defective ignition switch.

87.     These deceptive acts and practices had a capacity, tendency, and/or likelihood to deceive or confuse reasonable consumers into believing the Subject

Vehicles were safe for driving when in fact the Subject Vehicles were not safe and could cause serious bodily injury and/or death.

88.     As one of the purchasers of  the Subject Vehicles who, as alleged above, were exposed to the misrepresentations and would not have paid the prices they did, if at all, if the true facts had been disclosed to them, Plaintiff has standing and is entitled to seek all available remedies under the UCL.

89.     Under California Business & Professions Code § 17203, as a result of Old GM and GM's violations of the UCL, Plaintiff and Class Members are entitled to injunctive relief, restitution for out-of-pocket expenses, and an order disgorging from Defendant and restoring to Members of the Class all monies that may have been acquired by Defendant because of such unfair, deceptive and/or unlawful business acts or practices.

90.     Under California Civil Code § 3287(a), Plaintiff and Class Members are further entitled to pre-judgment interest as a direct and proximate result of Old GM and GM's wrongful conduct.  The amount on which interest is applied is a sum certain and capable of calculation in an amount according to proof.

## COUNT IV

**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.**

91.     Plaintiff repeats every allegation contained in the paragraphs above and incorporates such allegations by reference.  Plaintiff brings this cause of action on behalf of himself and the Class.

92.     Plaintiff and the Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq*.

93.     Old GM and GM, as successor in interest, is a "supplier" and "warrantor" within the meaning of the MMWA.

94.     The Subject Vehicles are a "consumer product" within the meaning of the MMWA.

95.     Old GM's written affirmations of fact, promises and/or descriptions as alleged are each a "written warranty," and there exists an implied warranty for the sale of such Subject Vehicles within the meaning of the MMWA.

96.     Defendant GM assumed liability for the warranties of Old GM under a theory of successor liability, by way of Bankruptcy Code 363, and pursuant the *Amended and Restated Master Sale and Purchase Agreement*, dated June 26, 2009.

97.     Old GM and GM breached these express and implied warranties, as the Subject Vehicles did not provide the properties GM represented.  Defendant has refused to remedy such breaches despite prior demand therefore.

98.     The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined.

99.     Resorting to any informal dispute settlement procedure and/or affording Defendant an opportunity to cure these breaches of warranties is unnecessary and/or futile.  Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances.  Any

requirement under the MMWA or otherwise that Plaintiff resort to any informal dispute settlement procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranties described above is excused and/or has been satisfied.

100.    Because of Old GM and GM's breaches of warranty, Plaintiff and the Class Members have sustained damages and other losses in an amount to be determined at trial as described above, and therefore are entitled to recover damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, for himself and all others similarly situated, prays for relief against Defendant, jointly and severally under each Count in this Complaint as follows:

1.    For an order certifying the Class and appointing Plaintiff's counsel as Class Counsel;

2.    For an award of equitable relief as follows:

a.    An order enjoining GM from continuing to engage, use, or employ any unlawful, unfair and/or deceptive business acts or practices and from refusing to engage in a corrective advertising campaign; and

b.    An order awarding restitution for out-of-pocket expenses and economic harm and disgorging and restoring all monies that may have been acquired by GM because of such acts and/or practices;

3.  For an award of damages as permitted by law;

4.  For an award of punitive damages for GM's malicious, oppressive and deliberate fraud, as permitted by law;

5.  For an award of attorneys' fees under, *inter alia*, Cal. Code Civ. Proc. § 1021.5, and the MMWA;

6.  For pre- and post-judgment interest on any amounts awarded;

7.  For an award of costs; and

8.  For an Order providing such further relief as may be found just and proper.

          **MICHAELS LAW GROUP, APLC**

Dated: March 21, 2014   By: _____
                Jonathan A. Michaels, Esq.
                Kathryn J. Harvey, Esq.
                Kianna C. Parviz, Esq.
                Attorneys for Plaintiff,
                Martin Ponce

**CLASS ACTION COMPLAINT**

1
2

# **JURY DEMAND**

3      Plaintiff hereby demands a trial by jury on all issues so triable.

4
5
6                                          **MICHAELS LAW GROUP, APLC**
7
8
9   Dated:  March 21, 2014          By:  _____
                                          Jonathan A. Michaels, Esq.
10                                         Kathryn J. Harvey, Esq.
                                          Kianna C. Parviz, Esq.
11                                         Attorneys for Plaintiff,
                                          Martin Ponce
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

**CLASS ACTION COMPLAINT**

# EXHIBIT A

March 2014

Martin G. Ponce

Dear Martin G. Ponce:

This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act.

General Motors has decided that a defect which relates to motor vehicle safety exists in 2005-2007 model year (MY) Chevrolet Colbalt, 2006-2007 MY Chevrolet HHR, 2005-2006 MY Pontiac Pursuit, 2006-2007 MY Pontiac Solstice, 2007 MY Pontiac G5, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles. As a result, GM is conducting a recall. We apologize for this inconvenience. However, we are concerned about your safety and continued satisfaction with our products.

---

## IMPORTANT

- This notice applies to your 2007 model year Chevrolet HHR, **VIN** 3GNDA33P67S619205. It is involved in safety recall 14063.

- **Until the recall repairs have been performed, it is <u>very</u> important that you remove all items from your key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from your key ring.**

- When parts become available, GM will notify you to schedule an appointment with your Chevrolet dealer.

- The recall repairs will be performed for you at **no charge**.

---

**Why is your vehicle being recalled?**

There is a risk, under certain conditions, that your ignition switch may move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine. This risk increases if your key ring is carrying added weight (such as more keys or the key fob) or your vehicle experiences rough road conditions or other jarring or impact related events. If the ignition switch is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury or fatality.

**Until the recall repairs have been performed, it is <u>very</u> important that you remove all items from your key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from your key ring.**

**What will we do?**

PARTS ARE NOT CURRENTLY AVAILABLE, but when parts are available, your Chevrolet dealer will replace the ignition switch on your vehicle. This service will be performed for you at **no charge**. Because of scheduling



the actual service correction time of approximately 40 minutes.

We are working as quickly as possible to obtain parts, and expect to have parts beginning in April of this year. We will contact you as soon as parts are available so that you can schedule an appointment with your dealer to have your vehicle repaired.

**What should you do?**
When GM notifies you that parts are available, you should contact your Chevrolet dealer to arrange a service appointment. In the meantime, remove all items other than the vehicle key from your key ring.

**Did you already pay for this repair?**
When GM notifies you that parts are available, GM will also provide instructions for you to request reimbursement if you paid for repairs for the recall condition previously.

**Do you have questions?**
If you have questions or concerns that your dealer is unable to resolve, please contact the Chevrolet Customer Assistance Center at 1.800.222.1020 (TTY 1.800.833.2438).

If after contacting your dealer and the Customer Assistance Center, you are still not satisfied we have done our best to remedy this condition without charge and within a reasonable time, you may wish to write the Administrator, National Highway Traffic Safety Administration, 1200 New Jersey Avenue, SE., Washington, DC 20590, or call the toll-free Vehicle Safety Hotline at 1.888.327.4236 (TTY 1.800.424.9153), or go to http://www.safercar.gov. The National Highway Traffic Safety Administration Campaign ID Number for this recall is 14V-047.

Federal regulation requires that any vehicle lessor receiving this recall notice must forward a copy of this notice to the lessee within ten days.

Jim Moloney
General Director – Customer & Relationship Services

GM Recall #14063