# Exhibit V

| | |
|---|---|
| Elizabeth J. Cabraser (083151) | Roger L. Mandel (PHV Pending) |
| *ecabraser@lchb.com* | *rlm@lhlaw.net* |
| Todd A. Walburg (213063) | LACKEY HERSHMAN, L.L.P. |
| *twalburg@lchb.com* | 3102 Oak Lawn Ave., Suite 777 |
| LIEFF CABRASER HEIMANN & | Dallas, TX 75219 |
| BERNSTEIN, LLP | Telephone:  (214) 560-2238 |
| 275 Battery Street, 29th Floor | Facsimile:  (214)  560-2203 |
| San Francisco, CA  94111-3339 | |
| Telephone:  (415) 956-1000 | W. Mark Lanier (PHV Pending) |
| Facsimile:  (415) 956-1008 | *wml@lanierlawfirm.com* |
| | Eugene R. Egdorf (PHV Pending) |
| Benjamin L. Bailey (PHV Pending) | *ere@lanierlawfirm.com* |
| *bbailey@baileyglasser.com* | THE LANIER LAW FIRM P.C. |
| Eric B. Snyder (PHV Pending) | 6810 FM 1960 West |
| *esnyder@baileyglasser.com* | Houston, TX 77069 |
| BAILEY & GLASSER, LLP | Telephone:  (713) 659-5200 |
| 209 Capitol Street | Facsimile:  (713) 659-2204 |
| Charleston, WV 25301 | |
| Telephone:  (304) 345-6555 | Robin Greenwald (PHV Pending) |
| Facsimile:   (304) 342-1110 | *rgreenwald@weitzlux.com* |
| | James Bilsborrow (PHV Pending) |
| Don Barrett (PHV Pending) | *jbilsborrow@weitzlux.com* |
| *dbarrett@barrettlawgroup.com* | WEITZ & LUXENBERG, P.C. |
| BARRETT LAW GROUP, P.A. | 700 Broadway |
| 404 Court Square | New York, NY 10003 |
| Lexington, MS 39095-0927 | Telephone:  (212) 558-5500 |
| Telephone:  (662) 834-2488 | Facsimile:   (212) 344-5461 |
| Facsimile:   (662) 834-2628 | |
| | 1880 Century Boulevard E |
| W. Daniel "Dee" Miles (PHV Pending) | Los Angeles, CA 90067 |
| *dee.miles@beasleyallen.com* | Telephone:  (310) 247-0921 |
| BEASLEY, ALLEN, CROW, METHVIN, | Facsimile:   (310) 786-9927 |
| PORTIS & MILES, P.C. | |
| 218 Commerce Street | *Attorneys for the Plaintiffs* |
| Montgomery, AL 36104 | |
| Telephone:  (800) 898-2034 | |
| Facsimile:   (334) 954-7555 | |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPERANZA RAMIREZ; JUDY MURRAY; ROBERT WYMAN; DIANA CNOSSEN; JUDY PICKENS; PENNY BROOKS; KIM GENOVESE; STEPHANIE RENEE CARDEN; MELISSA CAVE; LINDA WRIGHT; DIANNE HUFF; and GARRETT S. MANCIERI, individually and on behalf of all others similarly situated, | Case No. **CLASS ACTION COMPLAINT** **FOR INJUNCTIVE RELIEF, EQUITABLE RELIEF, AND DAMAGES** **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. [caption cont'd next page] | |

| 1 | GENERAL MOTORS LLC; GENERAL |
|---|---|
| 2 | MOTORS HOLDING, LLC; DELPHI AUTOMOTIVE PLC; and DPH-DAS LLC |
| 3 | f/k/a DELPHI AUTOMOTIVE SYSTEMS, LLC, |
| 4 | Defendants. |

5                      **NATURE OF CLAIM**

6      1.     Plaintiffs ESPERANZA RAMIREZ, JUDY MURRAY, ROBERT

7 WYMAN, DIANA CNOSSEN, JUDY PICKENS, PENNY BROOKS, KIM

8 GENOVESE, STEPHANIE RENEE CARDEN, MELISSA CAVE, LINDA

9 WRIGHT, DIANNE HUFF, and GARRETT S. MANCIERI, bring this action for

10 themselves and on behalf of all persons similarly situated who purchased or leased

11 certain vehicles manufactured, distributed, and/or sold by GENERAL MOTORS

12 LLC, GENERAL MOTORS HOLDING, LLC, GENERAL MOTORS

13 CORPORATION, GENERAL MOTORS COMPANY, and/or its related

14 subsidiaries, successors, or affiliates ("GM") with defective ignition switches

15 manufactured by DELPHI AUTOMOTIVE PLC, DPH-DAS LLC f/k/a DELPHI

16 AUTOMOTIVE SYSTEMS, LLC, and/or its related subsidiaries, successors, or

17 affiliates ("Delphi"), as described below.

18      2.     As used in this complaint, the "Defective Vehicles" or "Class

19 Vehicles" refers to the GM vehicles sold in the United States that have defective

20 ignition switches, including the following makes and model years:

21             •      2005-2007 Chevrolet Cobalt

22             •      2006-2007 MY Chevrolet HHR

23             •      2006-2007 Pontiac Solstice

24             •      2003-2007 MY Saturn Ion

25             •      2007 MY Saturn Sky

26             •      2005-2007 Pontiac G5

27

28

3.     An estimated 1.5 million vehicles are affected by the Ignition Switch Defect. Upon information and belief, there are other Class Vehicles that have the Ignition Switch Defect that have not yet been disclosed by GM.

4.     The Class Vehicles contain an ignition switch that turns on the vehicle's motor engine and main electrical systems when the key is turned to the "run" or "on" position.  The GM ignition switches at issue have several common switch points, including "RUN" (or "ON"), "OFF," and "ACC" ("accessory").  At the "run" position, the vehicle's motor engine is running and the electrical systems have been activated; at the "accessories" position the motor is turned off, and electrical power is generally only supplied to the vehicle's entertainment system; and at the "off" position, both the vehicle's engine and electrical systems are turned off.  In most vehicles a driver must intentionally turn the key in the ignition to move to these various positions.

5.     GM began installing the defective Delphi manufactured ignition switches beginning in 2002 vehicle models. Upon information and belief, Delphi knew its ignition switches were defectively designed and/or manufactured, but nonetheless, continued to manufacture and sell the defective ignition switches with the knowledge that they would be used in GM vehicles, including the Class Vehicles.

6.     Because of defects in their design, manufacture, and/or assembly, the ignition switch installed in the Class Vehicles are, by their nature, loose and improperly positioned and are susceptible to failure during normal and expected conditions.  The ignition module is located in a position in the vehicle that allows a driver to contact the key ring, and inadvertently switch the ignition position. Because of its faulty design and improper positioning, the ignition switch can unexpectedly and suddenly move from the "on" or "run" position while the vehicle is in operation to the "off" or "acc" position (the "Ignition Switch Defect").  When this ignition switch failure occurs, the motor engine and certain electrical

1    components such as power-assisted steering and anti-lock brakes are turned off,

2    thereby endangering the vehicle occupants and compromising the safety airbag

3    system.

4         7.    The Ignition Switch Defect can occur at any time during normal and

5    proper operation of the Class Vehicles, meaning the ignition can suddenly switch

6    off while it is moving at 65mph on the freeway, leaving the driver unable to control

7    the vehicle.

8         8.    GM has acknowledged that the Ignition Switch Defect has caused at

9    least twelve deaths. Independent safety regulators have recorded 303 deaths

10   associated with only the Saturn Ion and Chevrolet Cobalt Class Vehicle models due

11   to the Ignition Switch Defect. The actual number of deaths for all Class Vehicle

12   models is expected to be much higher.

13        9.    All persons in the United States who have purchased or leased a Class

14   Vehicle with the subject ignition switches are herein referred to as Class Members

15   ("Class Members").

16        10.    The Ignition Switch Defect inhibits Class Members' proper and safe

17   use of their vehicles, reduces vehicle occupant protection, and endangers Class

18   Members and other vehicle occupants.

19        11.    Prior to the manufacture and sale of the vehicles at issue, GM knew of

20   the Ignition Switch Defect through sources such as pre-release design,

21   manufacturing, and field testing data; in-warranty repair data; early consumer

22   complaints made directly to GM, collected by the National Highway Transportation

23   Safety Administration's Office of Defect Investigation ("NHTSA ODI") and/or

24   posted on public online vehicle owner forums; field testing done in response to

25   those complaints; aggregate data from GM dealers; and accident data, yet despite

26   this knowledge, GM failed to disclose and actively concealed the Ignition Switch

27   Defect from Class Members and the public, and continued to market and advertise

28   the Class Vehicles as reliable and safe vehicles, which they are not.

12.     As a result of GM's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the Ignition Switch Defect.  Plaintiffs and the Class did not receive the benefit of their bargain as purchasers and lessees, received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations.  Class Members did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided, as GM knew but did not disclose, through the use of non-defective ignition parts.  A car purchased or leased under the reasonable assumption that it is "safe" as advertised is worth more than a car—such as the Class Vehicles—that is known to be subject to the risk of an Ignition Switch Defect.  All purchasers of the Defective Vehicles overpaid for their cars.  Furthermore, GM's public disclosure of the Ignition Switch Defect has caused the value of the Class Vehicles to materially diminish.  Purchasers or lessees of the Class Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the defects and non-conformities been disclosed.

## PARTIES

### Plaintiffs

### *Esperanza Ramirez - California*

13.     Plaintiff Esperanza Ramirez is a citizen the state of California and resides in the city of Los Angeles.  Ms. Ramirez owns a 2007 Saturn Ion, which she purchased new in 2007 at a dealership.  Ms. Ramirez's Saturn Ion was manufactured, sold, distributed, advertised, marketed, and warranted by GM.  Ms. Ramirez purchased her GM vehicle primarily for her personal, family, and household use. Ms. Ramirez has experienced several incidents consistent with the ignition defects at issue.

Case 2:14-cv-02344-JLS-AN    Document 21    Filed 03/27/14    Page 6 of 67    Page ID #6

1

2   ***Judy Murray - Texas***

3       14.   Plaintiff Judy Murray is a citizen of the state of Texas and resides in

4   the city of Memphis.  Ms. Murray owns a 2006 Saturn Ion, which was purchased in

5   2006 at the Saturn dealership in Amarillo, Texas.  Ms. Murray's Saturn Ion was

6   manufactured, sold, distributed, advertised, marketed, and warranted by GM.  Ms.

7   Murray purchased her GM vehicle primarily for her personal, family, and

8   household use. Ms. Murray has experienced several incidents consistent with the

9   ignition defects at issue.

10  ***Robert Wyman - Maryland***

11      15.   Plaintiff Robert Wyman is a citizen of the state of Maryland and

12  resides in the city of Baltimore.  Mr. Wyman owns a 2007 Saturn Sky, which he

13  purchased new in 2007 in Owings Mills, Maryland.  Mr. Wyman's Saturn Sky was

14  manufactured, sold, distributed, advertised, marketed, and warranted by GM, and

15  bears the Vehicle Identification No. 1G8MG35X47Y124315.  Mr. Wyman

16  purchased his GM vehicle primarily for his personal, family, and household use.

17  During the time that he has owned the vehicle, Mr. Wyman's Saturn Sky has

18  experienced power outages, including the sudden loss of power steering.

19  ***Diana Cnossen - Michigan***

20      16.   Plaintiff Diana Cnossen is a citizen the state of Michigan and resides

21  in the city of Grand Rapids.  Ms. Cnossen owns a 2007 Saturn Sky, which she

22  purchased new in 2007 in Grand Rapids, Michigan.  Ms. Cnossen's Saturn Sky was

23  manufactured, sold, distributed, advertised, marketed, and warranted by GM, and

24  bears Vehicle Identification No. 1G8AW15F97Z164112.  Ms. Cnossen purchased

25  her vehicle primarily for her personal, family, and household use.

26  ***Judy Pickens - Pennsylvania***

27      17.   Plaintiff Judy Pickens is a citizen of the state of Pennsylvania and

28  resides in the city of Beaver Falls.  Ms. Pickens owns a 2007 Chevy Cobalt, which

1    she purchased used in Pennsylvania.  Ms. Pickens's Chevy Cobalt was

2    manufactured, sold, distributed, advertised, marketed, and warranted by GM.  Ms.

3    Pickens purchased her vehicle primarily for her personal, family, and household

4    use.

5    *Penny Brooks - Tennessee*

6           18.    Plaintiff Penny Brooks is a citizen of the state of Tennessee and

7    resides in the city of Kingsport.  Ms. Brooks owns a 2005 Chevy Cobalt, which she

8    purchased used in Surgoinsville, Tennessee.  Ms. Brooks's Chevy Cobalt was

9    manufactured, sold, distributed, advertised, marketed, and warranted by GM, and

10   bears the Vehicle Identification No. 1G1AK52S157566429.  Ms. Brooks purchased

11   her vehicle primarily for personal, family, and household use.  Ms. Brooks has

12   experienced power outages while driving her vehicle.

13   *Kim Genovese - Florida*

14          19.    Plaintiff Kim Genovese is a citizen of the state of Florida and resides

15   in the city of Lantana.  Ms. Genovese owns a 2005 Saturn Ion, which she purchased

16   used in 2010 in Boynton Beach, Florida.  Ms. Genovese's Saturn Ion was

17   manufactured, sold, distributed, advertised, marketed, and warranted by GM, and

18   bears Vehicle Identification No. 1G8AJ52F95Z177370.  Ms. Genovese purchased

19   her vehicle for personal, family, and household use. Ms. Genovese is now terrified

20   to drive her vehicle even short distances.

21   *Stephanie Renee Carden – West Virginia*

22          20.    Plaintiff Stephanie Renee Carden is a citizen of the state of West

23   Virginia and resides in the city of Huntington.  Ms. Carden owns a 2004 Saturn Ion

24   2, which she purchased new on July 22, 2004, at Saturn of Hurricane at Hurricane,

25   West Virginia.  Ms. Carden's Saturn Ion 2 was manufactured, sold, distributed,

26   advertised, marketed, and warranted by GM, and bears the Vehicle Identification

27   No. 1G8AZ52F64Z219453.   Ms. Carden purchased the GM vehicle primarily for

28

1  her personal, family and household use.  Ms. Carden has experienced manifestation

2  of the defect on more than one occasion.

3  *Melissa Cave - Alabama*

4          21.    Plaintiff Melissa Cave is a citizen of the state of Alabama and resides

5  in the town of New Hope. Ms. Cave owns a 2006 Chevrolet Cobalt, which she

6  purchased in 2013 at High Country Toyota in Scottsboro, Alabama.  Ms. Cave's

7  Chevrolet Cobalt was manufactured, sold, distributed, advertised, marketed, and

8  warranted by GM, and bears the Vehicle Identification No.

9  1G1AK55FX67761474.  Ms. Cave purchased her GM vehicle primarily for her

10 personal, family, and household use.

11 *Linda Wright - Mississippi*

12          22.    Linda Wright is a citizen of the state of Mississippi and resides in the

13 city of Greenwood. Ms. Wright owns a 2007 Chevrolet Cobalt, which she

14 purchased on July 8, 2013, at CR Cars LLC, in Greenwood, Mississippi. Ms.

15 Wright's Cobalt was manufactured, sold, distributed, advertised, marketed, and

16 warranted by GM, and bears the Vehicle Identification No. 1g1al55f777149442.

17 Ms. Wright purchased her GM vehicle primarily for her personal, family, and

18 household use.

19 *Dianne Huff - Wisconsin*

20          23.    Plaintiff Dianne Huff is a citizen of the state of Wisconsin and resides

21 in the city of Milwaukee.  Ms. Huff owns a 2007 Chevy Cobalt, which she

22 purchased used in 2009 in Milwaukee, Wisconsin.  Ms. Huff's Chevy Cobalt was

23 manufactured, sold, distributed, advertised, marketed, and warranted by GM.  Ms.

24 Huff purchased her GM vehicle primarily for her personal, family, and household

25 use.  Recently, Ms. Huff experienced power failures while driving akin to those

26 described by GM in its recall.  Ms. Huff then sought the advice of a mechanic, who

27 recommended she replace the engine.  In light of the recall, and the similarity of

28 Ms. Huff's vehicle problems to those exhibited in faulty GM vehicles, Ms. Huff is

1    skeptical that her engine (rather than the ignition switch) must be replaced.  She is

2    nonetheless anxious each times she drives that her vehicle's power will fail.

3    ***Garrett S. Mancieri – Rhode Island***

4        24.    Plaintiff, Garrett S. Mancieri, is a citizen of the state of Rhode Island

5    and resides in the city of Woonsocket.  Plaintiff owns a 2007 Pontiac G5, which he

6    purchased new in 2006 in Woonsocket, Rhode Island. Mr. Mancieri's Chevy Cobalt

7    was manufactured, sold, distributed, advertised, marketed, and warranted by GM,

8    and bears the Vehicle Identification No. 1G2AL15F37719380. Mr. Mancieri

9    purchased his GM vehicle primarily for his personal, family, and household use.

10   Plaintiff received a safety recall notice from Defendant pertaining to his vehicle in

11   March 2014.

12

13   **<u>Defendants</u>**

14       25.    General Motors Corporation was a Delaware corporation with its

15   headquarters in Detroit, Michigan.  The Corporation through its various entities

16   designed, manufactured, marketed, distributed and sold Pontiac, Saturn, Chevrolet

17   and other brand automobiles in Alabama, California, Florida, Maryland, Michigan,

18   Mississippi, Pennsylvania, Rhode Island, Tennessee, Texas, West Virginia,

19   Wisconsin and multiple other locations in the United States and worldwide.

20       26.    In 2009, General Motors Corporation filed for bankruptcy, and

21   substantially all of its assets were sold pursuant to a Master Sales and Purchase

22   Agreement ("Agreement") to General Motors LLC.

23       27.    Under the Agreement, General Motors LLC also expressly assumed

24   certain liabilities of General Motors Corporation, including certain statutory

25   requirements:

26               From and after the Closing, Purchaser [GM] shall comply

27               with the certification, reporting and recall requirements of

28               the National Traffic and Motor Vehicle Safety Act, the

1          Transportation Recall Enhancement, Accountability and

2          Documentation Act, the Clean Air Act, the California

3          Health and Safety Code and similar Laws, in each case, to

4          the extent applicable in respect of vehicles and vehicle

5          parts manufactured or distributed by Seller.

6     In addition, General Motors LLC expressly set forth that it:

7          shall be responsible for the administration, management

8          and payment of all Liabilities arising under (i) express

9          written warranties of Sellers [General Motors

10         Corporation] that are specifically identified as warranties

11         and delivered in connection with the sale of new, certified

12         used or pre-owned vehicles or new or remanufactured

13         motor vehicle parts and equipment (including service

14         parts, accessories, engines and transmissions)

15         manufactured or sold by Sellers or Purchaser prior to or

16         after the Closing and (ii) Lemon Laws.

17         28.    General Motors LLC is a Delaware corporation with its headquarters

18    in Detroit, Michigan.  General Motors LLC is registered with the California

19    Department of Corporations to conduct business in California.  Post-bankruptcy,

20    General Motors LLC discontinued certain vehicle brands, including Pontiac and

21    Saturn.

22         29.    At all times relevant herein, General Motors Corporation and its

23    successor in interest General Motors LLC were engaged in the business of

24    designing, manufacturing, constructing, assembling, marketing, warranting,

25    distributing, selling, leasing, and servicing automobiles, including the Class

26    Vehicles, and other motor vehicles and motor vehicle components throughout the

27    United States.

28

30.     Defendant Delphi Automotive PLC ("Delphi") is headquartered in Gillingham, Kent, United Kingdom, and is the parent company of Delphi Automotive Systems LLC, which is headquartered in Troy, Michigan.

31.     Delphi began as a wholly-owned subsidiary of General Motors Corporation, until it was launched as an independent publicly-held corporation in 1999.

32.     In 2005, Delphi declared Chapter 11 bankruptcy. After emerging from bankruptcy in 2009, GM purchased certain Delphi assets, including Delphi's steering assets, and four Delphi plants to assist with its post-bankruptcy restructuring. In 2011, GM finally ended its ownership interest in Delphi by selling back the assets.

33.     At all times relevant herein, Delphi, through its various entities, designed, manufactured, and supplied GM with motor vehicle components, including the subject ignition switches.

34.     GM and Delphi are collectively referred to in this Complaint as "Defendants."

## JURISDICTION AND VENUE

35.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

36.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this district, and GM has caused harm to class members residing in this District.

## FACTUAL BACKGROUND

### The Defective Vehicles

37.     The Saturn Ion was a compact car first introduced in 2002 for the 2003 model year, and was discontinued in 2007.

38.     The Chevrolet Cobalt was a compact car first introduced in 2004 for the 2005 model year, and was discontinued in 2010.

39.     The Pontiac G5 was first introduced in 2004 for the 2005 model year, and was discontinued in 2009.  The coupe and four-door sedan version of the G5 was marketed in Canada from 2005 to 2010, but is not a vehicle at issue in this action.

40.     The Chevrolet HHR was a compact car first introduced in 2005 for the 2006 model year, and was discontinued in 2011.

41.     The Pontiac Solstice was a sports car first introduced in 2005 for the 2006 model year, and was discontinued in 2009.

42.     The Saturn Sky was first introduced in 2006 for the 2007 model year, and was discontinued in 2009.

43.     The Saturn Ion, Pontiac G5, Chevrolet HHR, and Chevrolet Cobalt were constructed on GM's Delta Platform.

44.     The Saturn Sky and Pontiac Solstice were constructed on GM's Kappa Platform.

45.     Upon information and belief, GM promoted these Class Vehicles as safe and reliable in numerous marketing and advertising materials.

***GM Field Reports and Internal Testing Reveal a Problem***

46.     In 2001, during pre-production of the 2003 Saturn Ion, GM engineers learned that the ignition switch could unintentionally move from the "run" position to the "accessory" or "off" position.  In an internal report generated at the time, GM identified the cause of the problem as "low detent plunger force."  The "detent" is part of the ignition switch's inner workings that keeps the switch from rotating from one setting to another unless the driver turns the key. The report stated that than an "ignition switch design change" was believed to have resolved the problem.

47.     In 2003, a second report documented an incident with a Saturn Ion where "a service technician observed a stall while driving."  There the technician

1    noted that the owner had several keys on the key ring and surmised that the "weight

2    of the keys had worn out the ignition switch" and replaced the switch and closed the

3    matter.

4         48.    GM engineers encountered the problem again in 2004 just prior to the

5    launch of the 2005 Chevrolet Cobalt. GM learned of an incident in which a Cobalt

6    vehicle suddenly switched out of the "run" position and lost engine power.  GM

7    engineers were able to replicate this problem during test drives of the Cobalt.

8    According to GM, an engineering inquiry known as a Problem Resolution Tracking

9    System ("PRTS") was able to pinpoint the problem and evaluate a number of

10    solutions; however, after considering "lead time required, cost, and effectiveness,"

11    GM decided to do nothing.

12         49.    After the Chevrolet Cobalt entered the market in 2004, GM began

13    receiving complaints about incidents of sudden loss of engine power.  GM

14    engineers determined that the low torque in the ignition switch could cause the key

15    to move from the "run" to the "accessory" or "off" position under ordinary driving

16    conditions with normal key chains because "detent efforts on ignition switch are too

17    low, allowing key to be cycled to off position inadvertently."  Specifically, in

18    February 2005, GM engineers concluded that "there are two main reasons that we

19    believe can cause a lower effort in turning the key: a lower torque detent in the

20    ignition switch . . . [and a] low position of the lock module [on] the [steering]

21    column."

22         50.    Additional PRTS's were opened to investigate the problem, and in

23    May 2005, GM engineers proposed redesigning the key head from a "slotted" to a

24    "hole" configuration to prevent inadvertent shifting of the key in the ignition.

25    Although GM initially approved the design, the company once again declined to

26    act.

27         51.    In April 2006, GM finally approved a design change for the Chevrolet

28    Cobalt's ignition switch, as proposed by the supplier Delphi. According to GM, the

1   changes included a new detent plunger and spring, but there was no corresponding

2   change in the ignition switch part number. GM estimates that Delphi began

3   producing the redesigned ignition switch for all Subject Vehicles during the 2007

4   model year.

5       52.    After another PRTS in 2009, GM redesigned the Chevrolet Cobalt key,

6   changing the top of the key from a "slot" design to a "hole" design—as had been

7   suggested in 2005. GM instituted the change after finding that consumers "with

8   substantially weighted key chains/additional keys hanging from ignition key have

9   experienced accidental ignition shut-off" and the design change was intended to

10  "significantly reduce downward force and the likelihood of this occurrence." The

11  new key design was produced for 2010 model year.

12      53.    GM also now acknowledges that Field Product Reports and PRTS

13  reports related to the Subject Vehicles from 2003 and 2006 concerned engine

14  stalling in the Saturn Ion and may be related to the Ignition Switch Defect.

15  *GM Issues Information Service Bulletins*

16      54.    In 2005, as a result of internal investigation, GM issued an Information

17  Service Bulletin entitled the "Information on Inadvertent Turning of Key Cylinder,

18  Loss of Electrical System and No DTCs" (#05-02-35-007) to GM dealers warning

19  about a stalling problem related to inadvertent shifting of the ignition switch. The

20  bulletin applied to 2005 and 2006 Chevrolet Cobalt, 2006 Chevrolet HHR, 2005

21  and 2006 Pontiac Pursuit (Canada only), 2006 Pontiac Solstice, and 2003 to 2006

22  Saturn Ion, which all had the same ignition switch.

23      55.    The bulletin advised that "[t]here is potential for the driver to

24  inadvertently turn off the ignition due to low ignition key cylinder torque/effort,"

25  noting that risk was greater "if the driver is short and has a large and/or heavy key

26  chain" such that "the driver's knee would contact the key chain while the vehicle

27  was turning." GM dealers were told to inform consumers of this risk, and

28  recommend "removing unessential items from their key chain." The bulletin also

informed dealers that GM had developed an insert for the key ring so that "the key ring cannot move up and down in the slot any longer – it can only rotate on the hole" and that the key ring has been replaced by a smaller design such that "the keys [will] not hang[ ] as low as in the past."

56.     In July 19, 2005, the New York Times reported that Chevrolet dealers were telling Cobalt owners to remove extra items from their key rings to prevent accidental stalling of their vehicles. Alan Adler, GM's Manager for Safety Communications, stated that the problem manifested in only "rare cases when a combination of factors is present." Adler advised that consumers "can virtually eliminate this possibility by taking several steps, including removing nonessential material from their key rings."

57.     The Times reporter noted that his wife had already encountered the problem with the Chevrolet Cobalt: she was driving on a freeway, accidentally bumped the steering column with her knee, and found the engine "just went dead." She was able to safely coast to the side of the road. When the vehicle was brought back to the Chevrolet dealer for an inspection, nothing was found wrong and they were advised of the service bulletin. The reporter stated that the key chain being used at the time of the stalling incident was provided by GM, and included only the key fob and a tag.

58.     GM, in a statement at the time through Adler, insisted that this problem was not a safety issue because "[w]hen this happens, the Cobalt is still controllable" and the "engine can be restarted after shifting to neutral." Adler also claimed that this ignition issue was widespread because "practically any vehicle can have power to a running engine cut off by inadvertently bumping the ignition…."

59.     GM affirms its prior actions, stating that the field service campaign was the correct response "given that the car's steering and braking systems remained operational after a loss of engine power," and because the engine could be restarted by shifting into neutral or park.

60.     In October 2006, GM updated the Information Service Bulletin, "Information on Inadvertent Turning of Key Cylinder, Loss of Electrical System and No DTCs" (#05-02-35-007A) to include additional vehicles and model years. Specifically, GM included he 2007 Chevrolet Cobalt, the 2007 Chevrolet HHR, the 2007 Pontiac G5, the 2007 Pontiac Solstice, the 2007 Saturn Ion, and the 2007 Saturn Sky.  The updated bulletin included the same service advisories to GM dealers as the earlier version.

61.     According to GM, the service bulletin was the appropriate response "given that the car's steering and braking systems remained operational even after a loss of engine power." GM reports that GM dealers provided 474 key inserts to GM vehicle owners who brought their vehicles in for servicing.

***Reports of Unintended Engine Shut Down***

62.     A number of reports from warranty and technical assistance data beginning in 2003, "addressed complaints of stalling Ion vehicles."  Despite these reports, the Saturn Ion remained in production until 2007.

63.     In May 26, 2005, a reporter for The Daily Item in Sunbury, Pennsylvania reviewed the Chevrolet Cobalt and found that during his test drives of the vehicle there were "[u]nplanned engine shutdowns [that] happened four times during a hard-driving test week" with the vehicle.

***Crash Reports and Data***

64.     The Defendants knew of the Ignition Switch Defect and its deadly consequences for consumers, but concealed that information from safety regulators and the public.

65.     National Highway Traffic Safety Administration (NHTSA) data shows that there were three fatal car crashes involving Saturn Ions due to a failure of the airbag to deploy prior to July 2005.

66.     In July 2005, a sixteen-year old was killed when her 2005 Chevrolet Cobalt crashed with the ignition switch in the accessory mode, which disabled the airbag.

67.     In 2006, there were at least two fatalities associated with a Chevy Cobalt crash.  Information from the car's data recorder indicated that the ignitions switch was in "accessory" instead of run, and the front airbags failed to deploy.

68.     In 2007, GM reviewed available sensor data from nine front-impact Cobalt crashes where the airbags did not deploy. GM discovered that in four of the crashes, the ignition was in the "accessory position." Crash information for the other Subject Vehicles was not reviewed.

69.     GM has identified 23 frontal-impact crashes in the United States involving 2005 to 2007 Chevrolet Cobalts and 2007 Pontiac G5s in which the Ignition Switch Defect may have caused or contributed to the failure of the safety airbags to deploy.

70.     GM has identified 8 frontal-impact crashes in the United States involving 2003 to 2007 Saturn Ion vehicles in which the Ignition Switch Defect may have caused or contributed to the failure of the safety airbags to deploy. These crashes resulted in four fatalities and six injuries to occupants.

71.     GM has identified 3 frontal-impact crashes in the United States involving 2006 and 2007 model year Chevrolet HHR vehicles in which the Ignition Switch Defect may have caused or contributed to the failure of the safety airbags to deploy. These crashes resulted in three injuries to occupants.

*GM's Belated Repair Recall of Some Vehicles*

72.     On February 7, 2014, GM filed a Part 573 Defect Notice with the NHTSA to recall 2005 to 2007 model year Chevrolet Cobalt and 2007 Pontiac G5 vehicles.  The notice identified that the "ignition switch torque performance may not meet General Motors' specifications," explaining that if "the key ring is carrying weight or the vehicle goes off road or experiences some other jarring

1    event, the ignition switch may inadvertently be moved out of the 'run' position"

2    and may result in deactivating the airbags. The notice did not acknowledge that the

3    Ignition Switch Defect could occur under normal driving conditions, even when the

4    key ring is not carrying added weight.

5         73.    The notice also did not identify all the vehicles affected by the Ignition

6    Switch Defect.

7         74.    The notice failed to indicate the full extent to which GM has been

8    aware of the Defect.  The notice suggests that GM's knowledge of the defect is

9    recent, stating that "[t]he issue was presented to the Field Performance Evaluation

10    Review Committee and on January 31, 2014, the Executive Field Action Decision

11    Committee decided to conduct a safety recall."

12         75.    In a February 24, 2014 letter to the NHTSA, GM amended the Part

13    573 Report to include a more detailed chronology. The chronology indicated that

14    GM first learned of the Ignition Switch Defect during the launch of the 2005

15    Chevrolet Cobalt from field tests by its engineers.

16         76.    On February 25, 2014, GM amended its Part 573 Report to cover

17    additional models and model years due to the same Ignition Switch Defect.

18    Specifically, GM identified the 2003 to 2007 model years of the MY Saturn Ion,

19    2006 and 2007 model years of the MY Chevrolet HHR, 2007 model year of the

20    Pontiac Solstice, and 2007 model year of MY Saturn Sky vehicles.

21         77.    On March 4, 2014, the NTHSA issued GM a Special Order demanding

22    that it provide additional information on 107 specific requests by April 3, 2014,

23    including information to "evaluate the timing of GM's defect decision making and

24    reporting of the safety defect to NHTSA."

25         78.    On March 11, 2014, GM filed a new Part 573 report superseding its

26    February 25 filing.  The new chronology provided with the report indicated that

27    GM was aware of the Ignition Switch Defect in 2001—significantly earlier than its

28    previous 2004 disclosure.  GM now indicated that it had a report from 2001 that

1    revealed a problem with the ignition switch during pre-production of the Saturn
2    Ion.

3        79.    GM notified dealers of the Defective Vehicles of the recall in February
4    and March 2014. GM also notified owners of the Defective Vehicles by letter of
5    the recall. The letter minimized the risk of the defect, indicating that the Ignition
6    Switch Defect would occur only "under certain conditions" and emphasized that the
7    risk increased if the "key ring is carrying added weight . . . or your vehicle
8    experiences rough road conditions."

9        80.    GM has advised the public that the replacement ignition switches
10   "ARE NOT CURRENTLY AVAILABLE."

**TOLLING OF THE STATUTE OF LIMITATIONS**

**Fraudulent Concealment Tolling**

13       81.    Upon information and belief, GM has known of the Ignition Switch
14   Defect in the vehicles since at least 2001, and certainly well before Plaintiffs and
15   Class Members purchased the Defective vehicles, and has concealed from or failed
16   to notify Plaintiffs, Class Members, and the public of the full and complete nature
17   of the Ignitions Switch Defect, even when directly asked about it by Class Members
18   during communications with GM and GM dealers.

19       82.    Although GM has now acknowledged that "[t]here is a risk, under
20   certain conditions, that your ignition switch may move out of the "run" position,
21   resulting in a partial loss of electrical power and turning off the engine," GM did
22   not fully disclose the Ignition Switch Defect and in fact downplayed the widespread
23   prevalence of the problem, and minimized the risk of the Defect occurring during
24   normal operation of the Class Vehicles.

25       83.    In 2005, GM issued a Technical Service Bulletin to dealers and service
26   technicians directing that customers be advised to "remove unessential items from
27   their key chains" to avoid inadvertent ignition switching, but did not identify or
28   disclose the Defect. In February 2014, GM instituted only a limited recall, only

1   identifying two of the several models with the Ignition Switch Defect. Likewise, the

2   later recall expanded to include five additional model years and makes does not

3   fully disclose all the vehicles affected by the Ignition Switch Defect.

4        84.    Upon information and belief, there are other Class Vehicles that have

5   the Ignition Switch Defect that have not yet been disclosed by GM.

6        85.    Any applicable statute of limitation has therefore been tolled by GM's

7   knowledge, active concealment, and denial of the facts alleged herein, which

8   behavior is ongoing.

9                                    **Estoppel**

10       86.    GM was and is under a continuous duty to disclose to Plaintiffs and

11  Class Members the true character, quality, and nature of the vehicles. GM actively

12  concealed the true character, quality, and nature of the vehicles and knowingly

13  made misrepresentations about the quality, reliability, characteristics, and

14  performance of the vehicles. Plaintiffs and Class Members reasonably relied upon

15  GM's knowing and affirmative misrepresentations and/or active concealment of

16  these facts. Based on the foregoing, GM is estopped from relying on any statutes of

17  limitation in defense of this action.

18                                **Discovery Rule**

19       87.    The causes of action alleged herein did not accrue until Plaintiffs and

20  Class Members discovered that their vehicles had the Ignition Switch Defect.

21       88.    However, Plaintiffs and Class Members had no realistic ability to

22  discern that the vehicles were defective until—at the earliest—after the Ignition

23  Switch Defect caused a sudden unintended ignition shut off. Even then, Plaintiffs

24  and Class Members had no reason to know the sudden loss of power was caused by

25  a defect in the ignition switch because of GM's active concealment of the Ignition

26  Switch Defect.

27       89.    Not only did GM fail to notify Plaintiffs or Class Members about

28  Ignition Switch Defect, GM in fact denied any knowledge of or responsibility for

1   the Ignition Switch Defect when directly asked about it. Thus Plaintiff and Class

2   Members were not reasonably able to discover the Ignition Switch Defect until after

3   they had purchased the vehicles, despite their exercise of due diligence, and their

4   causes of action did not accrue until they discovered that the Ignition Switch Defect

5   caused their vehicles to suddenly lose power.

6   ## CLASS ACTION ALLEGATIONS

7   90.    Plaintiffs bring this lawsuit as a class action on their own behalf and on

8   behalf of all other persons similarly situated as members of the proposed Class

9   pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or

10  c(4). This action satisfies the numerosity, commonality, typicality, adequacy,

11  predominance, and superiority requirements of those provisions.

12  91.    The proposed nationwide class is defined as:

13  ## Nationwide Class

14  All persons in the United States who purchased or leased

15  a GM Class Vehicle (2005-2007 Chevrolet Cobalt; 2006-

16  2007 MY Chevrolet HHR; 2006-2007 Pontiac Solstice;

17  2003-2007 MY Saturn Ion; 2007 MY Saturn Sky; and

18  2005-2007 Pontiac G5), and any other GM vehicle model

19  containing the same ignition switch as those Class

20  Vehicle models (Class Members).

21  92.    Plaintiffs also bring this action on behalf of the following State

22  Classes:

23
24  **Alabama:**    All Class Members who purchased or leased a Class
                    Vehicle in the State of Alabama ("Alabama Class").

25
26  **California:**  All Class Members who purchased or leased a Class
                    Vehicle in the State of California ("California Class").

27

28

| **Florida**: | All Class Members who purchased or leased a Class Vehicle in the State of Florida ("Florida Class"). |
|---|---|
| **Maryland:** | All Class Members who purchased or leased a Class Vehicle in the State of Maryland ("Maryland Class"). |
| **Michigan:** | All Class Members who purchased or leased a Class Vehicle in the State of Michigan ("Michigan Class"). |
| **Mississippi:** | All Class Members who purchased or leased a Class Vehicle in the State of Mississippi ("Mississippi Class"). |
| **Pennsylvania**: | All Class Members who purchased or leased a Class Vehicle in the State of Pennsylvania ("Pennsylvania Class"). |
| **Rhode Island:** | All Class Members who purchased or leased a Class Vehicle in the State of Rhode Island ("Rhode Island Class"). |
| **Tennessee**: | All Class Members who purchased or leased a Class Vehicle in the State of Tennessee ("Tennessee Class"). |
| **Texas:** | All Class Members who purchased or leased a Class Vehicle in the State of Texas ("Texas Class"). |
| **West Virginia**: | All Class Members who purchased or leased a Class Vehicle in the State of West Virginia ("West Virginia Class"). |
| **Wisconsin:** | All Class Members who purchased or leased a Class Vehicle in the State of Wisconsin ("Wisconsin Class"). |

93.     Excluded from the Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) those persons who

have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs

reserve the right to amend the Class definition if discovery and further investigation

reveal that the Class should be expanded, divided into additional subclasses, or

modified in any other way.

### Numerosity and Ascertainability

94.     Although the exact number of Class Members is uncertain and can

only be ascertained through appropriate discovery, the number is great enough such

that joinder is impracticable.  The disposition of the claims of these Class Members

in a single action will provide substantial benefits to all parties and to the Court.

Class Members are readily identifiable from information and records in GM's

possession, custody, or control.

### Typicality

95.     The claims of the representative Plaintiffs are typical of the claims of

the Class in that the representative Plaintiffs, like all Class Members, purchased or

leased a GM Class Vehicle designed, manufactured, and distributed by Defendants.

The representative Plaintiffs, like all Class Members, has been damaged by

Defendants' misconduct in that he has incurred costs relating to the Ignition Switch

Defect. Furthermore, the factual bases of Defendants' misconduct are common to

all Class Members and represent a common thread of misconduct resulting in injury

to all Class Members.

### Adequate Representation

96.     Plaintiffs will fairly and adequately represent and protect the interests

of the Class.  Plaintiffs have retained counsel with substantial experience in

prosecuting consumer class actions, including actions involving defective products.

97.     Plaintiffs and their counsel are committed to vigorously prosecuting

this action on behalf of the Class, and have the financial resources to do so.  Neither

Plaintiffs nor their counsel have interests adverse to those of the Class.

**Predominance of Common Issues**

98. There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

      a. whether the Class Vehicles suffer from the Ignition Switch Defect;

      b. whether Defendants knew or should have known about the Ignition Switch Defect, and, if yes, how long Defendants have known of the Defect;

      c. whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle;

      d. whether GM had a duty to disclose the defective nature of the Vehicles to Plaintiffs and Class Members;

      e. whether GM omitted and failed to disclose material facts about the Vehicles;

      f. whether GM concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing the Vehicles;

      g. whether GM violated the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. L. Ann. § 445.903 *et seq.*, and if so, what remedies are available under § 445.911;

      h. whether GM violated various state consumer protection statutes;

      i. whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

      j. whether Plaintiffs and Class Members are entitled to a declaratory judgment stating that the ignition switches in the Class Vehicles are defective and/or not merchantable;

      k.     whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction; and

      l.     whether GM should be declared responsible for notifying all Class Members of the Defect and ensuring that all GM vehicles with the Ignition Switch Defect are recalled and repaired.

      m.     what aggregate amounts of statutory penalties, as available under the laws of Michigan and other States are sufficient to punish and deter Defendants and to vindicate statutory and public policy, and how such penalties should most equitably be distributed among Class members.

### Superiority

99.    Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

100.   Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

101.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

102.   Defendants have acted in a uniform manner with respect to the Plaintiffs and Class Members, as demonstrated in the following form "Dear GM Customer" letter:

1

July 2013

2    Dear General Motors Customer:

3    This notice is sent to you in accordance with the

4    requirements of the National Traffic and Motor Vehicle

5    Safety Act.

6    General Motors, based on data and information from

7    supplier IMPCO Automotive, has decided that a defect,

8    which relates to motor vehicle safety, exists in certain

9    compressed natural gas (CNG) fuel systems installed by

10   IMPCO Automotive on 2011-2013 model year CNG

11   equipped Chevrolet Express and GMC Savana vehicles.

12   As a result, General Motors and IMPCO Automotive are

13   conducting a safety recall. We apologize for this

14   inconvenience.  However, we are concerned about your

15   safety and continued satisfaction with our products.

16

17                        I M P O R T A N T

18   • Your 2011-2013 model year Chevrolet Express

19       or GMC Savana CNG equipped vehicle is

20       involved in safety recall 13139.

21   • Owners who have not been contacted by

22       General Motors concerning this recall should

23       schedule an appointment with their Chevrolet or

24       GMC dealer to arrange for the repairs to be

25       completed.

26   • This service will be performed for you at **no**

27       **charge.**

28

---

| | |
|---|---|
| **Why is your vehicle being recalled?** | The underbody shut-off solenoid connector to a CNG fuel tank may corrode and could form a high-resistance short in the connector, potentially causing overheating or a self-extinguishing flame. If there is a fuel leak or other combustible material in the vicinity, there is a risk of fire. |
| **What will we do?** | To correct this condition, improved solenoids and securing nuts will be installed for all exterior tanks and the regulator, and the 30 amp gas fuel pump fuse will be replaced with either a 7.5 amp fuse (for the four tank configuration) or a 5.0 amp fuse (for the three tank configuration). In addition, the wiring routing will be adjusted, if necessary, to eliminate any undue tension on the |

connector, and anti-corrosion sealing plugs will be installed into the valve body (2013 model year vehicles have these plugs already installed). This service will be performed at no charge. The approximate time for the actual repair can be as much as four hours per vehicle, but the wait time for your vehicle may be longer depending on how busy the dealership is.

**What should you do?** General Motors will contact certain fleets directly to arrange for the performance of the required repair. If you have not already been contacted by General Motors, please schedule an appointment with your Chevrolet or GMC dealer for this repair.

**Do you have questions?** If you have questions or concerns that your dealer is unable to resolve, please

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

contact the GM Fleet Action

Center at 1-800-353-3867.

If after contacting your dealer and the Fleet Action

Center, you are still not satisfied GM has done their best

to remedy this condition without charge and within a

reasonable time, you may wish to write the Administrator,

National Highway Traffic Safety Administration, 1200

New Jersey Avenue, SE., Washington, DC 20590, or call

the toll-free Vehicle Safety Hotline at 1.888.327.4236

(TTY 1.800.424.9153), or go to http://www.safercar.gov.

The National Highway Traffic Safety Administration

Campaign ID Number for this recall is 13V225.

Federal regulation requires that any vehicle lessor

receiving this recall notice must forward a copy of this

notice to the lessee within ten days.

Jim Moloney

General Director,

Customer and Relationship Services

GM Recall #13139

103.   Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Defendants have acted on grounds that apply generally to the class, and inconsistent adjudications with respect to the Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests. Classwide relief assures fair, consistent, and equitable treatment and protection of all Class

1    Members, and uniformity and consistency in Defendants' discharge of their duties

2    to perform corrective action regarding the Ignition Switch Defect.

3

4                           **CAUSES OF ACTION**

5                        **FIRST CLAIM FOR RELIEF**

6                    **Asserted on Behalf of the Nationwide Class**
                **(Violation of Michigan Consumer Protection Act ("MCPA),**
7                    **Michigan Comp. Laws Ann. § 445.903 *et seq.*)**

8        104.   Plaintiffs hereby incorporate by reference the allegations contained in

9    the preceding paragraphs of this Complaint.

10       105.   This Claim is brought on behalf of the Nationwide Class.

11       106.   At all times relevant hereto, there was in full force and effect Mich.

12   Comp. Laws Ann. § 445.903 *et seq.* (the "MCPA").

13       107.   Plaintiffs and the Nationwide Class Members were "person[s]" within

14   the meaning of the MCPA, M.C.L.A § 445.902(1)(d).

15       108.   At all relevant times hereto, Defendants were "persons" engaged in

16   "trade or commerce" within the meaning of the MCPA, M.C.L.A. § 445.902(1)(d)

17   and (g).

18       109.   The MCPA holds unlawful "[u]nfair, unconscionable, or deceptive

19   methods, acts, or practices in the conduct of trade or commerce." M.C.L.A.

20   § 445.902(1).

21       110.   The practices of Defendants violate the MCPA for, *inter alia*, one or

22   more of the following reasons:

23            a.     represented that the Class Vehicles had approval, characteristics,

24   uses, and benefits that they do not have;

25            b.     Defendants provided, disseminated, marketed, and otherwise

26   distributed uniform false and misleading advertisements, technical data and other

27   information to consumers regarding the safety, performance, reliability, quality, and

28   nature of the Class Vehicles;

1          c.      Defendants represented that the Class Vehicles were of a

2    particular standard, quality, or grade, when they were of another;

3          d.      Defendants engaged in unconscionable commercial practices in

4    failing to reveal material facts and information about the Class Vehicles, which did

5    and tended to, mislead Plaintiffs and the Class about facts that could not reasonably

6    be known by the consumer until the February and March 2014 recalls;

7          e.      Defendants failed to reveal facts concerning the Ignition Switch

8    Defect that were material to the transaction in light of representations of fact made

9    in a positive manner;

10         f.      Defendants failed to reveal material facts concerning the

11   Ignition Switch Defect to Plaintiffs and the Class Members, the omission of which

12   would tend to mislead or deceive consumers, including Plaintiffs and the Class;

13         g.      Defendants made material representations and statements of fact

14   to Plaintiffs and the Class that resulted in Plaintiffs and the Class Members

15   reasonably believing the represented or suggested state of affairs to be other than

16   what they actually were;

17         h.      Defendants intended that Plaintiffs and Class Members rely on

18   their misrepresentations and omissions, so that Plaintiffs and other Class Members

19   would purchase or lease the Class Vehicles; and

20   111.   Plaintiffs seek injunctive relief to enjoin Defendants from continuing

21   their unfair and deceptive acts or; seek monetary relief against Defendants

22   measured as the greater of (a) actual damages in an amount to be determined at trial

23   and (b) statutory damages in the amount of $250 for Plaintiffs and each Class

24   Member, reasonable attorneys' fees; and any other just and proper relief available

25   under the Mich. Comp. L. Ann. § 445.911.

26   112.   Plaintiffs also seek punitive damages against Defendants because they

27   carried out despicable conduct with willful and conscious disregard of the rights

28   and safety of others. Defendants intentionally and willfully misrepresented the

Case 2:14-cv-02344-VSM-N Document 1 Filed 05/27/14 Page 32 of 71 Page ID #32
09-50026-mg Doc 12621-23 Filed 04/21/14 Entered 04/21/14 20:84:57 Exhibit

Pg 33 of 71

1  safety and reliability of Class Vehicles, deceived Plaintiffs and Class Members on

2  life-or-death matters, and concealed material facts that only it knew, all to avoid the

3  expense and public relations nightmare of correcting a deadly flaw in the Class

4  Vehicles it repeatedly promised Plaintiffs and Class Members were safe.

5  Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting

6  punitive damages.

### SECOND CLAIM FOR RELIEF

**Asserted on Behalf of the Nationwide Class**
**(Fraud by Concealment)**

10      113.  Plaintiffs hereby incorporate by reference the allegations contained in

11  the preceding paragraphs of this Complaint.

12      114.  This Claim is brought on behalf of the Nationwide Class.

13      115.  As set forth above, Defendants concealed and/or suppressed material

14  facts concerning the safety of their vehicles.

15      116.  Defendants had a duty to disclose these safety issues because they

16  consistently marketed their vehicles as reliable and safe and proclaimed that

17  Defendants maintain the highest safety standards. Once Defendants made

18  representations to the public about safety, Defendants were under a duty to disclose

19  these omitted facts, because where one does speak one must speak the whole truth

20  and not conceal any facts which materially qualify those facts stated.  One who

21  volunteers information must be truthful, and the telling of a half-truth calculated to

22  deceive is fraud.

23      117.  In addition, Defendants had a duty to disclose these omitted material

24  facts because they were known and/or accessible only to Defendants who have

25  superior knowledge and access to the facts, and Defendants knew they were not

26  known to or reasonably discoverable by Plaintiffs and Class Members.  These

27  omitted facts were material because they directly impact the safety of the Class

28  Vehicles.  Whether or not a vehicle ignition switch will unexpectedly and suddenly

move to the "off" or "accessory" position, thereby disabling power steering, anti-lock brakes and air bag deployment while the car is in motion, are material safety concerns. Defendants possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

118. Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and Class Members to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

119. Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and Class Members' actions were justified. Defendants were in exclusive control of the material facts concerning the Ignition Switch Defect and such facts were not known to the public or the Class Members.

120. As a result of the concealment and/or suppression of facts, Plaintiffs and Class Members have sustained and will continue to sustain damages arising from the difference between the actual value of that which Plaintiffs and the Classes paid and the actual value of that which they received.

121. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## **THIRD CLAIM FOR RELIEF**

### **Asserted on Behalf of the Alabama Class**
### **(Violation of Alabama's Deceptive Trade Practices Act ("ADTPA"), Ala. Code. § 8-19-1, *et seq.*)**

122. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

1      123.   This Count is brought on behalf of Plaintiff Melissa Cave, and the

2    Alabama Class.

3      124.   Plaintiff is a "consumer" within the meaning of Ala. Code §8-19-3(2).

4      125.   Defendants are "persons" within the meaning of Ala. Code §8-19-3(5).

5      126.   The Class Vehicles are "goods" within the meaning of Ala. Code §8-

6    19-3(3).

7      127.   Defendants were engaged in "trade or commerce" within the meaning

8    of Ala. Code §8-19-3(8).

9      128.   Defendants both participated in unfair or deceptive acts or practices

10   that violated the ADTPA, Ala. Code §8-19-1, *et seq.* as described above and below.

11   Defendants each are directly liable for these violations of law.

12     129.   By failing to disclose and actively concealing the dangerous risk of

13   ignition switch movement, engine shutdown, and airbag disabling in Class

14   Vehicles, Defendants engaged in deceptive business practices prohibited by the

15   ADTPA, Ala. Code §8-19-1, *et seq* including

16        a.    Representing that Class Vehicles have characteristics, uses,

17   benefits, and qualities which they do not have;

18        b.    Representing that Class Vehicles are of a particular standard,

19   quality, and grade when they are not;

20        c.    Advertising Class Vehicles with the intent not to sell or lease

21   them as advertised

22        d.    representing that a transaction involving Class Vehicles confers

23   or involves rights, remedies, and obligations which it does not; and

24        e.    Representing that the subject of a transaction involving

25   Defective Vehicles has been supplied in accordance with a previous representation

26   when it has not.

27     130.   As alleged above, Defendants made material statements about the

28   safety and reliability of Class Vehicles that were either false or misleading.

131.  Defendants knew that the ignition switch in the Class Vehicles was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use of controlling the main electrical systems of the vehicle and allowing the driver to maintain control of the vehicle.  Defendants nevertheless failed to warn Plaintiff about these inherent dangers despite having a duty to do so.

132.  Defendants each owed Plaintiff a duty to disclose the defective nature of Class Vehicles, including the dangerous risk of ignition switch movement, engine shutdown, and disabled safety airbags, because it:

a.  Possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles;

b.  Intentionally concealed the hazardous situation with Class Vehicles through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from Plaintiff; and/or

c.  Made incomplete representations about the safety and reliability of Class Vehicles generally, and the ignition switch in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

133.  Class Vehicles with the Ignition Switch Defect pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of sudden and unintended engine shutdown.

134.  Whether or not a vehicle's (a) ignition switch will move unintentionally and (b) shut down the engine and disable the safety airbags, are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and Alabama Class Members bought a Defendants Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would not change ignition position unless the driver turned the key.

135.   Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Class Vehicles.

136.   As a result of its violations of the ADTPA detailed above, Defendants caused ascertainable loss to Plaintiff and Alabama Class Members and, if not stopped, will continue to harm Plaintiff and Alabama Class Members. Plaintiff and Alabama Class Members currently own or lease, or within the class period have owned or leased, Class Vehicles that are defective and inherently unsafe.

137.   Plaintiff and Alabama Class Members risk irreparable injury as a result of Defendants' act and omissions in violation of the CCPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

138.   The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered to all Defective Vehicles.

139.   Pursuant to ADTPA § 8-19-10, Plaintiff Cave on behalf of herself and all others similarly situated, seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama Class Member.

140.   Plaintiff also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the ADTPA, §8-19-1, *et seq.*

141.   Plaintiff presently does not claim the relief sought above pursuant to Ala. Code § 8-19-10(e), until Plaintiffs' counsel, on behalf of Plaintiff Melissa Cave and the Alabama Class, serve Defendants with notice of their alleged violations of the CCPA relating to the Class Vehicles purchased by the Plaintiff and Class Members, and demanding that Defendants correct or agree to correct the

actions described therein. If Defendants fail to do so, Plaintiff seeks all damages
and relief to which Plaintiffs and the Class are entitled.

## FOURTH CLAIM FOR RELIEF

### Asserted on Behalf of the California Class
### (Violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*)

142.   Plaintiffs hereby incorporate by reference the allegations contained in
the preceding paragraphs of this Complaint.

143.   This Count is brought on behalf of Plaintiff Esperanza Ramirez, and
the California Class.

144.   Defendants are "persons" within the meaning of the CLRA.  Cal. Civ.
Code § 1761(c).

145.   Plaintiffs and Class Members are "consumers" within the meaning of
the CLRA, Cal. Civ. Code § 1761(d), who purchased or leased one more Class
Vehicles.

146.   Plaintiffs attach as Exhibit A an affidavit that shows venue in this
District is proper, to the extent such an affidavit is required by Cal. Civ. Code
§ 1780(d).

147.   By failing to disclose and actively concealing the dangerous risk of
ignition switch movement, engine shutdown, and disabled safety airbags in Class
Vehicles, Defendants engaged in deceptive business practices prohibited by the
CLRA, Cal. Civ. Code § 1750, et seq., including

    a.    representing that Class Vehicles have characteristics, uses,
benefits, and qualities which they do not have;

    b.    representing that Class Vehicles are of a particular standard,
quality, and grade when they are not;

    c.    advertising Class Vehicles with the intent not to sell or lease
them as advertised;

d.     representing that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations which it does not; and

e.     representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

148.   As alleged above, Defendants made material statements about the safety and reliability of Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

149.   Defendants knew that the ignition switch in Class Vehicles was defectively designed or manufactured, would fail without warning by unintentionally switching out of the "run" position while the vehicle is in operation, and was not suitable for its intended use of controlling the main electrical systems of the vehicle and allowing the driver to maintain control of the vehicle. Defendants nevertheless failed to warn Plaintiffs and Class Members about these inherent dangers despite having a duty to do so.

150.   Defendants owed Plaintiffs and Class Members a duty to disclose the defective nature of Class Vehicles, including the dangerous risk of inadvertent ignition switch movement, engine shutdown, and disabled safety airbags because:

a.     The Ignition Switch Defect is a safety hazard;

b.     Defendants possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles;

c.     Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Ignition Switch Defect until, at the earliest, the manifestation of the Defect; and

d.     G Defendants M intentionally concealed the hazardous situation with Class Vehicles through their deceptive marketing campaign and recall

1   program that they designed to hide the life-threatening problems from Plaintiff and
2   Class Members; and/or

3         e.   Defendants made incomplete representations about the safety
4   and reliability of the Class Vehicles, and the Ignition Switch Defect in particular,
5   while purposefully withholding material facts from Consumer Plaintiffs that
6   contradicted these representations.

7         f.   The facts concealed or not disclosed by Defendants to Plaintiffs
8   and Class Members are material in that a reasonable consumer would have
9   considered them to be important in deciding whether or not to purchase a Class
10   Vehicle.  Moreover, a reasonable consumer would consider the Ignition Switch
11   Defect to be a safety risk, as Class Members did.  Had Plaintiff and other Class
12   Members known that the Class Vehicles had the Ignition Switch Defect, they would
13   not have purchased a Class Vehicle.

14      151.   Class Vehicles equipped with the Ignition Switch Defect pose an
15   unreasonable risk of death or serious bodily injury to Plaintiffs and Class Members,
16   passengers, other motorists, pedestrians, and the public at large, because they are
17   susceptible to incidents where there is a sudden loss of power.

18      152.   Whether or not a the ignition switch is loose and may unintentionally
19   move or switch from the "run" position to the "accessory" or "off" position while
20   the vehicle is in operation, thereby turning off the engine and the main electrical
21   systems of the vehicle, leaving the driver unable to use power-assisted steering and
22   brakes, and disabling safety airbags, are facts that a reasonable consumer would
23   consider important in selecting a vehicle to purchase or lease. When Plaintiffs and
24   Class Members bought a GM Vehicle for personal, family, or household purposes,
25   they reasonably expected that while the vehicle was in operation, the vehicle's
26   ignition switch would not move from the "run" position and turn off the engine and
27   electrical systems, thereby cutting off power-assisted steering and brakes, and
28   disabling safety airbags, unless turned to that position intentionally by the driver.

153.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles.

154.   As a result of its violations of the CLRA detailed above, Defendants caused actual damage to Plaintiffs and Class Members and, if not stopped, will continue to harm Class Members. Plaintiffs and Class Members currently own or lease, or within the class period have owned or leased, Class Vehicles that are defective and inherently unsafe. Plaintiffs and Class Members risk irreparable injury as a result of Defendants' acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs and Class Members as well as to the general public.

155.   Thus Plaintiffs, on behalf of himself and for all those similarly situated, demands judgment against Defendants under the CLRA for injunctive relief in the form of restitution and/or proportional disgorgement of funds paid to Defendants to purchase their vehicles, an injunction requiring GM to adequately and permanently repair the vehicles, free of charge, and an award of attorneys' fees pursuant to Civil Code § 1780(d).  Plaintiffs seeks this injunctive relief for Defendants' violations of CLRA §§ 1770(a)(5), (7), and (9).

156.   In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiff Esperanza Ramirez, will serve Defendants with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the Class Vehicles purchased by the Plaintiffs, and demanding that Defendants correct or agree to correct the actions described therein. If Defendants fail to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiffs and the Class are entitled.

157.   The recalls and repairs instituted by Defendants have not been adequate.  Class Vehicles are still defective, the replacement ignition switch is not

1   an effective remedy, and in any event, it is not offered to all vehicles affected by the

2   Ignition Switch Defect.

3

### FIFTH CLAIM FOR RELIEF

4

**Asserted on Behalf of the California Class**
**(Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.*)**

5

6      158.   Plaintiffs hereby incorporate by reference the allegations contained in

7   the preceding paragraphs of this Complaint.

8      159.   This Count is brought on behalf of Plaintiff Esperanza Ramirez and the

9   California Class.

10      160.   California Business and Professions Code section 17200 prohibits acts

11   of "unfair competition," including any "unlawful, unfair or fraudulent business act

12   or practice" and "unfair, deceptive, untrue or misleading advertising."  Defendants

13   engaged in conduct that violated each of this statute's three prongs.

14      161.   Defendants committed an *unlawful business act or practice* in

15   violation of section 17200 by their violations of the Consumer Legal Remedies Act,

16   Cal. Civ. Code § 1750, *et seq.*, as set forth in Count I by the acts and practices set

17   forth in this Complaint.

18      162.   Defendants also violated the unlawful prong because Defendants has

19   engaged in business acts or practices that are unlawful because they violate the

20   National Traffic violated the National Traffic and Motor Vehicle Safety Act of

21   1996, codified at 49 U.S.C. § 30101, *et seq.*, and its regulations.

22      163.   Federal Motor Vehicle Safety Standard ("FMVSS") 573 governs a

23   motor vehicle manufacturer's responsibility to notify the NHTSA of a motor

24   vehicle defect within five days of determining that a defect in a vehicle has been

25   determined to be safety-related.  *See* 49 C.F.R. § 573.6.

26      164.   Defendants violated the reporting requirements of FMVSS 573

27   requirement by failing to report the Ignition Switch Defect within five days of

28   determining the defect existed, and failing to recall *all* affected vehicles.

165.   Defendants committed *unfair business acts and practices* in violation of section 17200 when it concealed the existence and nature of the Ignition Switch Defect and represented that the Class Vehicles were reliable and safe when, in fact, they are not.  The Ignition Switch Defect presents a safety hazard for occupants of the Class Vehicles.

166.   Defendants violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

167.   Defendants committed *fraudulent business acts and practices* in violation of section 17200 when it concealed the existence and nature of the Ignition Switch Defect, while representing in its marketing, advertising, and other broadly disseminated representations that the Class Vehicles were reliable and safe when, in fact, they are not.  Defendants' representations and active concealment of the Defect are likely to mislead the public with regard to the true defective nature of the Class Vehicles.

168.   Defendants has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with the ignition switch defect that unintentionally shifts from the "run" position to the "accessory" or "off" position causing loss of electrical power and turning off the engine, and Defendants' failure to adequately investigate, disclose and remedy, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices. Defendants' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs from making fully informed decisions about whether to purchase or lease Class Vehicles and/or the price to be paid to purchase or lease Class Vehicles.

169. Plaintiff Ramirez has suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful and/or deceptive practices. As set forth in the allegations concerning each plaintiff, in purchasing or leasing their vehicles, the Plaintiffs relied on the misrepresentations and/or omissions of Defendants with respect of the safety and reliability of the vehicles. Defendants' representations turned out not to be true because the vehicles can unexpectedly and dangerously accelerate out of the drivers' control. Had Plaintiff Ramirez known this she would not have purchased or leased her Class Vehicles and/or paid as much for them.

170. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

171. As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff Ramirez and California Class Members have suffered and will continue to suffer actual damages.

172. Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203; and for such other relief set forth below.

## SIXTH CLAIM FOR RELIEF

### Asserted on Behalf of the California Class
### (Violation of California's False Advertising Law,
### Cal. Bus. & Prof. Code § 17500, *et seq.*)

173. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

174. This Count is brought on behalf of Plaintiff Esperanza Ramirez and the California Class.

175. California Business and Professions Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

176. Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to the Defendants, to be untrue and misleading to consumers and Plaintiff.

177. Defendants violated section 17500 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

178. Plaintiffs and California Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful and/or deceptive practices. In purchasing or leasing their vehicles, the Plaintiffs and California Class Members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the vehicles. Defendants' representations turned out not to be true because the vehicles can unexpectedly and dangerously accelerate out of the drivers' control. Had the Plaintiffs and California Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

179. Accordingly, the Plaintiffs and California Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain. One way to

measure this overpayment, or lost benefit of the bargain, at the moment of purchase is by the value consumers place on the vehicles now that the truth has been exposed. Both trade-in prices and auction prices for Subject Vehicles have declined as a result of Defendants' misconduct. This decline in value measures the overpayment, or lost benefit of the bargain, at the time of the Plaintiff and California Class Member purchases.

180. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

181. Plaintiffs requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices, and for such other relief set forth below.

182. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

183. This Count is brought on behalf of Plaintiff Esperanza Ramirez and the California Class.

## SEVENTH CLAIM FOR RELIEF

### Asserted on Behalf of the California Class
### (Breach of Express Warranties Pursuant to the Song-Beverly Consumer Warranty Act Civil Code §§ 1793.2(D) & 1791.2)

184. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

185. This Count is brought on behalf of Plaintiff Esperanza Ramirez and the California Class.

186. Plaintiff and Class Members who purchased the GM vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

187. The GM vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

188. Defendants are "manufacturers" of the GM vehicles within the meaning of Cal. Civ. Code § 1791(j).

189. Plaintiffs and Class Members bought/leased new motor vehicles manufactured by the Defendants.

190. Defendants made express warranties to Plaintiffs and Class Members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, both in its warranty manual and advertising, as described above.

191. Defendants' vehicles had and continue to have sudden unintended ignition shut off and other ignition switch defects that were and continue to be covered by Defendants' express warranties and these defects substantially impair the use, value, and safety of Defendants' vehicles to reasonable consumers like Plaintiffs and Class Members.

192. Defendants did not promptly replace or buy back the vehicles of Plaintiffs and Class Members.

193. As a result of Defendants' breach of its express warranties, Plaintiffs and Class Members received goods whose dangerous condition substantially impairs their value to Plaintiffs and Class Members. Plaintiffs and Class Members have been damaged as a result of the diminished value of the Defendants' products, the products' malfunctioning, and the nonuse of their vehicles.

194. Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiffs and the Class are entitled to an injunction necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices.

195. Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the Class are entitled to costs and attorneys' fees.

| | |
|---|---|
| 1 | **EIGHTH CLAIM FOR RELIEF** |
| 2 | **Asserted on Behalf of the Florida Class** |
| 3 | **(Violation of Florida's Unfair & Deceptive Trade Practices Act ("Florida UDTPA"), Fla. Stat. § 501.201 *et seq.*)** |

196.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

197.   This Count is brought on behalf of Plaintiff Kim Genovese, and the Florida Class.

198.   Plaintiff is a "consumer" within the meaning of Florida UDTPA § 501.203(7).

199.   Defendants engaged in "trade or commerce" within the meaning of Florida UDTPA § 501.203(8).

200.   The conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to Defendants' manufacture and sale of vehicles with an ignition switch defect that can cause sudden and unwanted engine shutdown and disable safety airbags, which Defendants failed to adequately investigate, disclose and remedy, and Defendants' misrepresentations and omissions regarding the safety and reliability of its vehicles.

201.   Plaintiff and the Florida Class were injured as a result of the Defendants' conduct. Plaintiff and the Florida Class overpaid for the Class Vehicles and did not receive the benefit of their bargain.

202.   Plaintiff seeks an order enjoining Defendants' unfair or deceptive acts or practices, and attorneys' fees, and any other just and proper relief available under the Florida UDTPA, §§ 501.2105, 501.211.

**NINTH CLAIM FOR RELIEF**

**Asserted on Behalf of the Maryland Class**
**(Violation of Maryland's Consumer Protection Act ("MCPA"), Md. Code
Ann. Com. Law § 13-101 *et seq.*)**

203.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

204.  This Count is brought on behalf of Plaintiff Robert Wyman and the Maryland Class.

205.  Plaintiff is a "consumer" within the meaning of the MCPA, § 13-101(c).

206.  Defendants are "persons" within the meaning of the MCPA, § 13-101(h).

207.  The conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to Defendants' manufacture and sale of vehicles with an Ignition Switch Defect that can cause sudden and unwanted engine shutdown and disable safety airbags, which Defendants failed to adequately investigate, disclose and remedy, and Defendants' misrepresentations and omissions regarding the safety and reliability of its Class Vehicles.

208.  Defendant's actions as set forth above occurred in the conduct of trade or commerce.

209.  Defendants violated the MCPA when it represented, through their advertising, warranties and other express representations, that the Class Vehicles had characteristics and benefits that they did not actually have.

210.  Defendants violated the MCPA when it falsely represented, throughout its advertising, warranties and other express representations, that the Class Vehicles were of certain quality or standard when they were not.

211.  Defendants violated the MCPA by fraudulently concealing from and/or failing to disclose to Plaintiff and the Maryland Class the defects associated with the Class Vehicles.

212.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Maryland Class Members, about the true safety and reliability of Class Vehicles.

213.   Plaintiff and the Maryland Class were injured as a result of the Defendants' conduct. Plaintiff and the Maryland Class overpaid for the Class Vehicles and did not receive the benefit of their bargain.

214.   Plaintiff and the Maryland Class are also likely to be damaged by Defendants' deceptive trade practices. Plaintiff and the Maryland Class purchased or leased the Class Vehicles without knowledge of the dangerous risk of Ignition Switch Defect, which posed an unreasonable risk of death or serious bodily injury to Plaintiff, passengers, other motorists, pedestrians, and the public at large.

215.   Plaintiff seeks an order enjoining Defendants' unfair or deceptive acts or practices, and attorneys' fees, and any other just and proper relief available under the MCPA, § 13-408.

### TENTH CLAIM FOR RELIEF

**Asserted on Behalf of the Mississippi Class**
**(Mississippi Products Liability Act ("MPLA"),**
**Miss. Code Ann. § 11-1-63, *et seq.*)**

216.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

217.   This Count is brought on behalf of Plaintiff Linda Wright, and the Mississippi Class.

218.   Defendants have defectively designed, manufactured, sold or otherwise placed in the stream of commerce Defective Vehicles.

219.   Defendants are strictly liable in tort for the Plaintiffs' injuries and damages and the Plaintiff and Mississippi Class Members respectfully rely upon the Doctrine as set forth in RESTATEMENT, SECOND, TORTS § 402(a).

220.   Because of the negligence of the design and manufacture of the
Defective Vehicle, by which Plaintiffs were injured and the failure of Defendants to
warn Plaintiffs of the certain dangers concerning the operation of the Defective
Vehicles which were known to Defendants but were unknown to Plaintiffs, the
Defendants have committed a tort.

221.   The Defective Vehicles which caused Plaintiffs' injuries were
manufactured by Defendants.

222.   At all times herein material, Defendants negligently and carelessly did
certain acts and failed to do other things, including, but not limited to, inventing,
developing, designing, researching, guarding, manufacturing, building, inspecting,
investigating, testing, labeling, instructing, and negligently and carelessly failing to
provide adequate and fair warning of the characteristics, angers and hazards
associated with the operation of the vehicles in question to users of the Defective
Vehicles.

## ELEVENTH CLAIM FOR RELIEF

### Asserted on Behalf of the Pennsylvania Class
### (Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S.A. §§ 201-1 *et seq.*)

223.   Plaintiffs hereby incorporate by reference the allegations contained in
the preceding paragraphs of this Complaint.

224.   This Count is brought on behalf of Plaintiff Judy Pickens, and the
Pennsylvania Class.

225.   The Pennsylvania UTPCPL § 201-3 prohibits "[u]nfair methods of
competition and unfair or deceptive acts or practices in the conduct of any trade or
commerce." The conduct of Defendants as set forth herein constitutes unfair or
deceptive acts or practices under the UTPCPL, including, but not limited to
Defendants' manufacture and sale of vehicles with an ignition switch defect that
can cause sudden and unwanted engine shutdown and disable safety airbags, which

1    Defendants failed to adequately investigate, disclose and remedy, and Defendants'
2    misrepresentations and omissions regarding the safety and reliability of its vehicles.

3        226.   By failing to disclose and actively concealing the dangerous risk of
4    ignition switch movement, engine shutdown, and airbag disabling in Class
5    Vehicles, Defendants engaged in deceptive business practices prohibited by the
6    CCPA, W. VA. CODE § 46A-1-101, *et seq.*, including

7            a.     Representing that Class Vehicles have characteristics, uses,
8    benefits, and qualities which they do not have;

9            b.     Representing that Class Vehicles are of a particular standard,
10   quality, and grade when they are not; and

11           c.     Advertising Class Vehicles with the intent not to sell or lease
12   them as advertised.

13       227.   Defendants' unfair or deceptive acts or practices were likely to and did
14   in fact deceive reasonable consumers, including Plaintiff and Pennsylvania Class
15   Members, about the true safety and reliability of Class Vehicles.

16       228.   Defendants' conduct proximately caused the injuries to Plaintiff
17   Pickens and the Pennsylvania Class.

18       229.   Pursuant to UTPCPL § 201-9.2, Plaintiff Pickens on behalf of herself
19   and all others similarly situated, seeks monetary relief against Defendants measured
20   as the greater of (a) actual damages in an amount to be determined at trial and (b)
21   statutory damages in the amount of $100 for each Plaintiff and each Pennsylvania
22   Class Member.

23       230.   Plaintiff also seeks an order enjoining Defendants' unfair, unlawful,
24   and/or deceptive practices, attorneys' fees, and any other just and proper relief
25   available under UTPCPL § 201-9.2.

26

27

28

## TWELFTH CLAIM FOR RELIEF
### Asserted on Behalf of the Rhode Island Class
### (Violations of the Rhode Island Unfair Trade and Consumer Protection Act ("RIUTCPA") R.I. Comp. Laws Ann. 6-13.1, *et seq.*)

231.   Plaintiff and the Class hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

232.   This Count is brought on behalf of Plaintiff Garrett S. Mancieri and the Rhode Island Class.

233.   Defendants are "persons" within the meaning of RIUTCPA § 6-13.1-1(3).

234.   Plaintiff Garrett S. Mancieri and the Rhode Island Class Members are "persons" within the meaning of RIUTCPA § 6-13.1-1(3).

235.   The sales of the Defective Vehicles to Plaintiff and the Class constituted "trade" and "commerce" within the meaning of RIUTCPA § 6-13.1-1(5).

236.   The RIUTCPA makes any unfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce unlawful.  RIUTCPA § 6-13.1-2.

237.   Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the RIUTCPA.

238.   Defendants violated the RIUTCPA by (1) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, RIUTCPA § 6-13.1-1(6)(v), (2) [r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, RIUTCPA § 6-13.1-1(6)(vii), (3) [e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding, RIUTCPA § 6-13.1-1(6)(xii), (4) [e]ngaging in any act or practice that is unfair or deceptive to the consumer, RIUTCPA § 6-13.1-1(6)(xiii),

- 51 -

and (5) [u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect, RIUTCPA § 6-13.1-1(6)(xiv).

239.   As alleged above, Defendants knew of the Ignition Switch Defect in the Defective Vehicles.  Plaintiff and the Class were deceived into believing that the Defective Vehicles were safe by Defendants' affirmative statements to conceal the safety defects and also by Defendants' omissions regarding the safety defects. This information could not have been reasonably known by Plaintiff and the Class before the recalls in February 2014.

240.   Plaintiff and the Class are persons who have suffered a loss as a result of the violations of the RIUTCPA by Defendants.

241.   Plaintiff requests that the Court (1) enjoin Defendants from continuing their unfair methods of competition and unfair or deceptive acts or practices, RIUTCPA § 6-13.1-5.2(b), (2) award Plaintiff and each member of the Class their actual damages or $200.00, whichever is greater, RIUTCPA § 6-13.1-5.2(a), (3) award reasonable attorneys' fees and costs, RIUTCPA § 6-13.1-5.2(d), and (4) award punitive damages, RIUTCPA § 6-13.1-5.2(a).

## THIRTEENTH CLAIM FOR RELIEF

### Asserted on Behalf of the Texas Class
### (Violations of the Texas Deceptive Trade Practices Act ("Texas DTPA") Tex. Bus. & Com. Code §§ 17.41, *et seq.*)

242.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

243.   This Count is brought on behalf of Plaintiff Judy Murray, and the Texas Class.

244.   Defendants' above-described acts and omissions constitute false, misleading or deceptive acts or practices under the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.* ("Texas DTPA").

245.   Plaintiffs are "consumers" within the meaning of the Texas DTPA, who purchased or leased one or more Class Vehicles.

246.   By failing to disclose and actively concealing the dangerous risk of ignition switch movement, engine shutdown, and disabled safety airbags in Class Vehicles, Defendants engaged in deceptive business practices prohibited by the Texas DTPA, including

      a.     representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

      b.     representing that Class Vehicles are of a particular standard, quality, and grade when they are not;

      c.     advertising Class Vehicles with the intent not to sell them as advertised;

      d.     representing that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations which it does not, and

      e.     failing to disclose information concerning Class Vehicles with the intent to induce consumers to purchase or lease the Class Vehicles.

247.   As alleged above, Defendants made material statements about the safety and reliability of Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

248.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Texas Class Members, about the true safety and reliability of Class Vehicles.

249.   In purchasing or leasing their vehicles, the Plaintiff and Texas Class Members relied on the misrepresentations and/or omissions of Defendants with respect of the safety and reliability of the vehicles. Defendants' representations turned out not to be true because the vehicles can unexpectedly and dangerously

have ignition switch movement, shutting down the engine, and disabling the safety airbags.

250.   Had the Plaintiff known this they would not have purchased or leased their Class Vehicles and/or paid as much for them.

251.   Defendants also breached express and implied warranties to Plaintiffs and the Class, as set out above, and are, therefore liable to Plaintiffs and the Class for damages under §§ 17.50(a)(2) and 17.50(b) of the Texas DTPA. Defendants' actions also constitute an unconscionable action or course of action under §17.50(a)(3) of the Texas DTPA.

252.   Plaintiffs and the Class sustained damages as a result of the Defendants' unlawful acts and are, therefore, entitled to damages and other relief provided for under § 17.50(b) of the Texas DTPA. Because Defendants' conduct was committed knowingly and/or intentionally, the Plaintiffs and the Class are entitled to treble damages.

253.   For those Plaintiffs and the Class who wish to rescind their purchases, they are entitled under § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

254.   Plaintiffs and the Class also seek court costs and attorneys' fees under § 17.50(d) of the Texas DTPA.

255.   Plaintiff presently does not claim the relief sought above pursuant to Tex. Bus. Com. Code § 17.505, until Plaintiffs' counsel, on behalf of Plaintiff Judy Murray and the Texas Class, serve Defendants with notice of their alleged violations of the Texas DTPA relating to the Class Vehicles purchased by the Plaintiff and Class Members, and demanding that Defendants correct or agree to correct the actions described therein. If Defendants fail to do so, Plaintiff seeks all damages and relief to which Plaintiffs and the Class are entitled.

## FOURTEENTH CLAIM FOR RELIEF

### Asserted on Behalf of the Tennessee Class
### (Violations of Tennessee Consumer Protection Act ("Tennessee CPA"), Tenn. Code Ann. § 47-18-101, *et seq.*)

256.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

257.   This Count is brought on behalf of Plaintiff Penny Brooks, and the Tennessee Class.

258.   Plaintiff is a "consumer" within the meaning of Tenn. Code Ann. § 47-18-103(2).

259.   Defendants are "persons" within the meaning of Tenn. Code Ann. § 47-18-103(13).

260.   Defendants both participated in unfair or deceptive acts or practices that violated the Tennessee CPA, Tenn. Code Ann. § 47-18-101, *et seq.* as described above and below. Defendants each are directly liable for these violations of law.

261.   By failing to disclose and actively concealing the dangerous risk of ignition switch movement, engine shutdown, and airbag disabling in Class Vehicles, Defendants engaged in deceptive business practices prohibited by the Tennessee CPA, Tenn. Code Ann. § 47-18-101, *et seq.*, including

      a.      Representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

      b.      Representing that Class Vehicles are of a particular standard, quality, and grade when they are not;

      c.      Advertising Class Vehicles with the intent not to sell or lease them as advertised

      d.      representing that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations which it does not; and

e.    Representing that the subject of a transaction involving Defective Vehicles has been supplied in accordance with a previous representation when it has not.

262.   As alleged above, Defendants made material statements about the safety and reliability of Class Vehicles that were either false or misleading.

263.   Defendants knew that the ignition switch in the Class Vehicles was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use of controlling the main electrical systems of the vehicle and allowing the driver to maintain control of the vehicle.  Defendants nevertheless failed to warn Plaintiff about these inherent dangers despite having a duty to do so.

264.   Defendants each owed Plaintiff a duty to disclose the defective nature of Class Vehicles, including the dangerous risk of ignition switch movement, engine shutdown, and disabled safety airbags, because it:

a.    Possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles;

b.    Intentionally concealed the hazardous situation with Class Vehicles through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from Plaintiff; and/or

c.    Made incomplete representations about the safety and reliability of Class Vehicles generally, and the ignition switch in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

265.   Class Vehicles with the Ignition Switch Defect pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of sudden and unintended engine shutdown.

266.   Whether or not a vehicle's (a) ignition switch will move unintentionally and (b) shut down the engine and disable the safety airbags, are

1 facts that a reasonable consumer would consider important in selecting a vehicle to

2 purchase or lease. When Plaintiff and Tennessee Class Members bought a GM

3 Vehicle for personal, family, or household purposes, they reasonably expected the

4 vehicle would not change ignition position unless the driver turned the key.

5 267. Defendants' unfair or deceptive acts or practices were likely to deceive

6 reasonable consumers, including Plaintiffs, about the true safety and reliability of

7 Class Vehicles.

8 268. As a result of its violations of the CCPA detailed above, Defendants

9 caused ascertainable loss to Plaintiff and Tennessee Class Members and, if not

10 stopped, will continue to harm Plaintiff and Tennessee Class Members. Plaintiff

11 and Tennessee Class Members currently own or lease, or within the class period

12 have owned or leased, Class Vehicles that are defective and inherently unsafe.

13 269. Plaintiff and Tennessee Class Members risk irreparable injury as a

14 result of Defendants' act and omissions in violation of the CCPA, and these

15 violations present a continuing risk to Plaintiffs as well as to the general public.

16 270. The recalls and repairs instituted by Defendants have not been

17 adequate. The recall is not an effective remedy and is not offered to all Defective

18 Vehicles.

19 271. Plaintiff further seeks an order enjoining Defendants' unfair or

20 deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's

21 fees under W. Va. Code § 46A-5-101, *et seq.*, and any other just and proper relief

22 available under the Tennessee CPA, Tenn. Code Ann. § 47-18-101, *et seq.*

23 **FIFTEENTH CLAIM FOR RELIEF**

24 **Asserted on Behalf of the West Virginia Class**
**(Violations of the West Virginia Consumer Credit and**
25 **Protection Act ("CCPA"), W. Va. Code § 46A-1-101)**

26 272. Plaintiffs hereby incorporate by reference the allegations contained in

27 the preceding paragraphs of this Complaint.

28

273.   This Count is brought on behalf of Plaintiff Stephanie Renee Carden and the West Virginia Class.

274.   Defendants are "persons" within the meaning of W. Va. Code § 46A-1-102(31).

275.   Plaintiff is a "consumer," within the meaning of W. Va. Code §§ and 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Class Vehicles.

276.   Defendants both participated in unfair or deceptive acts or practices that violated the CCPA, W. Va. Code § 46A-1-101, *et seq.* as described above and below. Defendants each are directly liable for these violations of law.

277.   By failing to disclose and actively concealing the dangerous risk of ignition switch movement, engine shutdown, and airbag disabling in Class Vehicles, Defendants engaged in deceptive business practices prohibited by the CCPA, W. VA. CODE § 46A-1-101, *et seq.*, including

   a.   Representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

   b.   Representing that Class Vehicles are of a particular standard, quality, and grade when they are not;

   c.   Advertising Class Vehicles with the intent not to sell or lease them as advertised

   d.   representing that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations which it does not; and

   e.   Representing that the subject of a transaction involving Defective Vehicles has been supplied in accordance with a previous representation when it has not.

278.   As alleged above, Defendants made material statements about the safety and reliability of Class Vehicles that were either false or misleading.

279. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole.

280. Defendants knew that the ignition switch in the Class Vehicles was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use of controlling the main electrical systems of the vehicle and allowing the driver to maintain control of the vehicle. Defendants nevertheless failed to warn Plaintiff about these inherent dangers despite having a duty to do so.

281. Defendants each owed Plaintiff a duty to disclose the defective nature of Class Vehicles, including the dangerous risk of ignition switch movement, engine shutdown, and disabled safety airbags, because it:

a. Possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles;

b. Intentionally concealed the hazardous situation with Class Vehicles through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from Plaintiff; and/or

c. Made incomplete representations about the safety and reliability of Class Vehicles generally, and the ignition switch in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

282. Class Vehicles with the Ignition Switch Defect pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of sudden and unintended engine shutdown.

283. Whether or not a vehicle's (a) ignition switch will move unintentionally and (b) shut down the engine and disable the safety airbags, are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and West Virginia Class Members bought a GM

1  Vehicle for personal, family, or household purposes, they reasonably expected the

2  vehicle would not change ignition position unless the driver turned the key.

3      284.  Defendants' unfair or deceptive acts or practices were likely to deceive

4  reasonable consumers, including Plaintiffs, about the true safety and reliability of

5  Class Vehicles.

6      285.  As a result of its violations of the CCPA detailed above, Defendants

7  caused ascertainable loss to Plaintiff and West Virginia Class Members and, if not

8  stopped, will continue to harm Plaintiff and West Virginia Class Members. Plaintiff

9  and West Virginia Class Members currently own or lease, or within the class period

10  have owned or leased, Class Vehicles that are defective and inherently unsafe.

11      286.  Plaintiff and West Virginia Class Members risk irreparable injury as a

12  result of Defendants' act and omissions in violation of the CCPA, and these

13  violations present a continuing risk to Plaintiffs as well as to the general public.

14      287.  Plaintiff also seek punitive damages against Defendants because each

15  carried out despicable conduct with willful and conscious disregard of the rights

16  and safety of others, subjecting Plaintiff and West Virginia Class Members to cruel

17  and unjust hardship as a result. Defendants intentionally and willfully

18  misrepresented the safety and reliability of Class Vehicles, deceived Plaintiff on

19  life-or-death matters, and concealed material facts that only it knew, all to avoid the

20  expense and public relations nightmare of correcting a deadly flaw in the Class

21  Vehicles it repeatedly promised Plaintiff and West Virginia Class Members were

22  safe. Defendants' unlawful conduct constitutes malice, oppression, and fraud

23  warranting punitive damages.

24      288.  The recalls and repairs instituted by Defendants have not been

25  adequate. The recall is not an effective remedy and is not offered to all Defective

26  Vehicles.

27      289.  Plaintiff further seeks an order enjoining Defendants' unfair or

28  deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's

1  fees under W. Va. Code § 46A-5-101, *et seq.*, and any other just and proper relief
2  available under the CCPA.

3      290.   Plaintiff presently does not claim the relief sought above pursuant to
4  W. Va. Code § 46A-6-106, until Plaintiffs' counsel, on behalf of Plaintiff Stephanie
5  Renee Carden and the West Virginia Class, serve Defendants with notice of their
6  alleged violations of the CCPA relating to the Class Vehicles purchased by the
7  Plaintiff and Class Members, and demanding that Defendants correct or agree to
8  correct the actions described therein. If Defendants fail to do so, Plaintiff seeks all
9  damages and relief to which Plaintiffs and the Class are entitled.

10               **SIXTEENTH CLAIM FOR RELIEF**
11           **Asserted on Behalf of the Wisconsin Class**
    **(Violation of Wisconsin's Deceptive Trade Practices Act ("DTPA"),**
12                   **Wis. Stat. § 100.18)**

13      291.   Plaintiffs hereby incorporate by reference the allegations contained in
14  the preceding paragraphs of this Complaint.

15      292.   This Count is brought on behalf of Plaintiffs Dianne Huff and the
16  Wisconsin Class.

17      293.   Defendants are a "person, firm, corporation or association" within the
18  meaning of the DTPA.  Wis. Stat. § 100.18(1).

19      294.   Plaintiff and Class Members are members of "the public" within the
20  meaning of the DTPA, Wis. Stat. § 100.18(1).  Plaintiff and Class Members
21  purchased or leased one or more Class Vehicles.

22      295.   Wisconsin's DTPA prohibits a "representation or statement of fact
23  which is untrue, deceptive or misleading."  Wis. Stat. § 100.18(1).  As set forth
24  more fully above, by failing to disclose, and actively concealing, the dangerous risk
25  of ignition switch movement, engine shutdown, and disabled safety airbags in Class
26  Vehicles, Defendants made representations or statements of fact that were untrue,
27  deceptive or misleading.  Defendants' untrue, deceptive or misleading
28  representations included

1           a.    the representation, through its advertising, warranties, and other

2    express representations that Class Vehicles have characteristics, uses, benefits, and

3    qualities that they do not have;

4           b.    the representation, through its advertising, warranties, and other

5    express representations that Class Vehicles are of a particular standard, quality, and

6    grade when they are not; and

7           c.    the representation, through its advertising, warranties, and other

8    express representations, that a transaction involving Class Vehicles confers or

9    involves rights, remedies, and obligations that it does not.

10       296.   Defendants further violated the DTPA by fraudulently concealing

11   from, and/or failing to disclose, to Plaintiff and Class Members the Ignition Switch

12   Defect associated with the Class Vehicles.

13       297.   Defendants violated the DTPA by actively misrepresenting and/or

14   concealing and/or omitting from its advertising, marketing, and other

15   communications material information about Class Vehicles that concerned crucial

16   product safety.  The material information included:

17          a.    that there was a substantial risk of ignition switch failure that far

18   exceeded the risk of such defect normally associated with similar consumer

19   products;

20          b.    that the failures might not become apparent until after the

21   warranty expired;

22          c.    that if the failures become apparent after the warranty expired,

23   GM was not committing to make repairs to all affected Class Vehicles.

24       298.   Defendants made these untrue, deceptive or misleading statements in

25   order to induce Plaintiff and Class Members to purchase its Class Vehicles.  Indeed,

26   Plaintiff and Class Members would have declined to purchase Class Vehicles had

27   they been advertised and marketed in a manner that was not untrue, deceptive or

28   misleading.

299.   Plaintiff and Class Members were induced to purchase Class Vehicles by Defendants' untrue, deceptive or misleading representations.  As a result, Plaintiff and Class Members have suffered, and continue to suffer, pecuniary loss.

300.   Pursuant to Wis. Stat. § 100.18(11)(b)2, Plaintiff, on behalf of herself and all others similarly situated, seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) civil forfeiture of not less than $50 nor more than $200 for each Plaintiff and each Wisconsin Class Member, Wis. Stat. § 100.26(4).

301.   Plaintiff and Class Members also seek costs, reasonable attorneys' fees, and punitive damages, and any other just and proper relief available under Wisconsin law.

## SEVENTEENTH CLAIM FOR RELIEF
### (Claim for Actual Damages/Expense Reimbursement Fund)

302.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

303.   This Count is brought on behalf of all Plaintiffs and Members of all Classes.

304.   Plaintiffs and Class Members have incurred out-of-pocket expenses and damages in attempting to rectify the Ignition Switch Defect in their Vehicles, and such expenses and losses will continue as they must take time off from work, pay for rental cars or other transportation arrangements, child care and the myriad expenses involved in going through the recall process to correct the Defect.

305.   Plaintiffs and Class Members seek payment of such damages and reimbursement of such expenses under the consumer statutes and applicable law invoked in this Complaint. While such damages and expenses are individualized in detail and amount, the right of the Class members to recover them presents common questions of law. Equity and fairness to all Class members requires the establishment by court decree and administration under Court supervision of a

Defendant-funded program, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid, such that Defendants, not the Class members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the Defect.

## **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

A.    an order certifying the proposed Classes designating Plaintiffs as the named representatives of the Classes, and designating the undersigned as Class Counsel;

B.    a declaration that the Ignition Switches in Class Vehicles are defective;

C.    a declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

D.    an order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Class Vehicles to eliminate the Ignition Switch Defect;

E.    an award to Plaintiffs and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, in an amount to be proven at trial;

F.    a declaration that the Defendants must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

G.    an award of attorneys' fees and costs, as allowed by law;

H.    an award of attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5;

I.    an award of pre-judgment and post-judgment interest, as provided by

1   law;

2       J.    leave to amend this Complaint to conform to the evidence produced at

3   trial; and

4       K.    such other relief as may be appropriate under the circumstances.

5                           **<u>JURY DEMAND</u>**

6       Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial

7   by jury of any and all issues in this action so triable of right.

8

9   Dated: March 27, 2014          LIEFF CABRASER HEIMANN &
                                    BERNSTEIN, LLP
10

11                                 By:____/s/ *Elizabeth J. Cabraser*_____
                                          Elizabeth J. Cabraser
12

13                                 Elizabeth J. Cabraser (083151)
                                   *ecabraser@lchb.com*
14                                 Todd A. Walburg (213063)
                                   *twalburg@lchb.com*
15                                 LIEFF CABRASER HEIMANN &
                                   BERNSTEIN, LLP
16                                 275 Battery Street, 29th Floor
                                   San Francisco, CA  94111-3339
17                                 Telephone:  (415) 956-1000
                                   Facsimile:   (415) 956-1008
18
                                   Benjamin L. Bailey
19                                 *bbailey@baileyglasser.com*
                                   Eric B. Snyder
20                                 *esnyder@baileyglasser.com*
                                   BAILEY & GLASSER, LLP
21                                 209 Capitol Street
                                   Charleston, WV 25301
22                                 Telephone:  (304) 345-6555
                                   Facsimile:   (304) 342-1110
23

24

25

26

27

28

1
2
3
4

Don Barrett
*dbarrett@barrettlawgroup.com*
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, MS 39095-0927
Telephone: (662) 834-2488
Facsimile: (662) 834-2628

5
6
7
8

W. Daniel "Dee" Miles
*dee.miles@beasleyallen.com*
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Telephone: (800) 898 2034
Facsimile: (334) 954-7555

9
10
11
12
13

Roger L. Mandel
*rlm@lhlaw.net*
LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Ave., Suite 777
Dallas, TX 75219
Telephone: (214) 560-2238
Facsimile: (214) 560-2203

14
15
16
17
18

W. Mark Lanier
*wml@lanierlawfirm.com*
Eugene R. Egdorf
*ere@lanierlawfirm.com*
THE LANIER LAW FIRM P.C.
6810 FM 1960 West
Houston, TX 77069
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

19
20
21
22
23

Robin L. Greenwald
*rgreenwald@weitzlux.com*
James Bilsborrow
*jbilsborrow@weitzlux.com*
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, NY 10003
Telephone: (212)-558-5500
Facsimile: (212) 344-5466

24

*Attorneys for the Plaintiffs*

25

26

27

28

# EXHIBIT A

1   Elizabeth J. Cabraser (083151)
    *ecabraser@lchb.com*
2   Todd A. Walburg (213063)
    *twalburg@lchb.com*
3   LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
4   275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
5   Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
6
    Benjamin L. Bailey (PHV Pending)
7   *bbailey@baileyglasser.com*
    Eric B. Snyder (PHV Pending)
8   *esnyder@baileyglasser.com*
    BAILEY & GLASSER, LLP
9   209 Capitol Street
    Charleston, WV 25301
10  Telephone: (304) 345-6555
    Facsimile: (304) 342-1110
11
12  Don Barrett (PHV Pending)
    *dbarrett@barrettlawgroup.com*
13  BARRETT LAW GROUP, P.A.
    404 Court Square
14  Lexington, MS 39095-0927
    Telephone: (662) 834-2488
15  Facsimile: (662) 834-2628
16  W. Daniel "Dee" Miles (PHV Pending)
    *dee.miles@beasleyallen.com*
17  BEASLEY, ALLEN, CROW, METHVIN,
    PORTIS & MILES, P.C.
18  218 Commerce Street
    Montgomery, AL 36104
19  Telephone: (800) 898-2034
    Facsimile: (334) 954-7555
20

Roger L. Mandel (PHV Pending)
*rlm@lhlaw.net*
LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Ave., Suite 777
Dallas, TX 75219
Telephone: (214) 560-2238
Facsimile: (214) 560-2203

W. Mark Lanier (PHV Pending)
*wml@lanierlawfirm.com*
Eugene R. Egdorf (PHV Pending)
*ere@lanierlawfirm.com*
THE LANIER LAW FIRM P.C.
6810 FM 1960 West
Houston, TX 77069
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

Robin Greenwald (PHV Pending)
*rgreenwald@weitzlux.com*
James Bilsborrow (PHV Pending)
*jbilsborrow@weitzlux.com*
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, NY 10003
Telephone: (212)-558-5500
Facsimile: (212) 344-5466

*Attorneys for the Plaintiffs*

21              UNITED STATES DISTRICT COURT

22              CENTRAL DISTRICT OF CALIFORNIA

23  ESPERANZA RAMIREZ; JUDY          | Case No.
    MURRAY; ROBERT WYMAN; DIANA      |
24  CNOSSEN; JUDY PICKENS; PENNY     | **DECLARATION OF**
    BROOKS; KIM GENOVESE; STEPHANIE  | **ESPERANZA RAMIREZ IN**
25  RENEE CARDEN; MELISSA CAVE;      | **SUPPORT OF FILING CLASS**
    LINDA WRIGHT; DIANNE HUFF; and   | **ACTION COMPLAINT IN THE**
26  GARRETT S. MANCIERI, individually and | **CENTRAL DISTRICT OF**
    on behalf of all others similarly situated, | **CALIFORNIA, WESTERN**
27                                   | **DIVISION, PURSUANT TO**
              Plaintiffs,            | **CAL. CIV. CODE § 1780(D)**
28  v.

    [caption cont'd next page]

| | |
|---|---|
| 1 | GENERAL MOTORS LLC; GENERAL MOTORS HOLDING, LLC; DELPHI |
| 2 | AUTOMOTIVE PLC; and DPH-DAS LLC f/k/a DELPHI AUTOMOTIVE SYSTEMS, |
| 3 | LLC, |
| 4 | Defendants. |

5

6      I, Esperanza Ramirez, under penalty of perjury, do hereby state as follows:

7      1.    I am over the age of eighteen (18), and a Named Plaintiff and proposed

8 Class Representative in the above-entitled action. This Declaration, which is based

9 on my personal knowledge of the facts stated herein, is submitted in support of the

10 Class Action Complaint filed concurrently herewith, pursuant to Cal. Civ. Code

11 § 1780(d).

12      2.    As Named Plaintiff, I bring this action for money damages, equitable

13 relief, and restitution on behalf of myself and all similarly-situated individuals and

14 entities who were harmed by the practices described in the Complaint.

15      3.    As detailed in the Complaint, a substantial portion of the conduct at

16 issue in this litigation occurred within the Central District of California and, more

17 specifically, in Los Angeles County, California, because I live in Los Angeles,

18 California, and because General Motors LLC and Delphi Automotive Systems LLC

19 are registered with the California Department of Corporations to conduct business

20 in California.

21      I declare that the foregoing is true and correct. Executed in Los Angeles,

22 California, on March 27, 2014.

23

24

25      ESPERANZA RAMIREZ

26

27

28