# Exhibit W

FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

GREGORY MARK NESPOLE
nespole@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4400
Facsimile:  212/545-4653

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH Y. GRUMET; ABC FLOORING, INC.; MARCUS SULLIVAN; KATELYN SAXSON; AMY C. CLINTON; and ALLISON C. CLINTON, On Behalf of Themselves, and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>   v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No.  '14CV0713 JM   BGS<br><br>**Class Action**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Elizabeth Y. Grumet, ABC Flooring, Inc., Marcus Sullivan, Katelyn Saxson, Amy C. Clinton, and Allison C. Clinton ("Plaintiffs") on behalf of themselves individually and as class representatives on behalf of all similarly situated persons and the general public, bring this action against Defendant General Motors LLC ("G.M.") and allege as follows:

## INTRODUCTION

1.     Faced with the real possibility that its conduct rises to criminality, Alan Batey, president of G.M. North America, stated that G.M.'s near decade-long investigation of a defective ignition switch design "was not as robust as it should have been."  This comment is wholly inexcusable in light of G.M.'s nationwide recall of more than 1.6 million vehicles due to a defect in the ignition switch system that is linked to a least 12 crash related deaths.

2.     G.M. marketed and advertised that these vehicles, though equipped with defective ignition switches, were safe and reliable.  The vehicles were, however, anything but safe and reliable.  In fact, since 2004 (and quite possible as early as 2001), G.M. knew that the defective design of the ignition switches in these vehicles presented serious safety issues.  Instead of disclosing the defect and its disabling impact upon other safety systems in these vehicles – including that the defect could shut down the engine and electrical system without warning, and prevent airbags from being deployed in the case of a collision – G.M. consciously chose to conceal it and not address the problem.

3.     The efforts by G.M. to conceal the existence of the defectively designed ignition switches in its vehicles, even after it was aware that the defect was linked to several accident related fatalities, displays a wanton degree of corporate greed.  Indeed, it appears G.M. may have gone so far as to commit bankruptcy fraud in order to avoid disclosure of the problems with the ignition switch, while, at the same time, taking taxpayer money to salvage a failing business model.

Case 3:14-cv-00252-JM-BGS Document 1    Filed 02/04/14    Page 3 of 45

4.    G.M. now has grudgingly admitted that it knew millions of its vehicles were equipped with defective ignition switches dating back to as early as 2001 – three years earlier than it initially reported – and has yet to determine the full scope of the problem.  Moreover, based on statements by the maker of the ignition component in G.M. cars subject to the 1.6 million-vehicle recall, it would have only cost "a few dollars to produce and minutes to install" a fix.[1]

5.    As detailed herein, G.M. has violated federal law, various state statutes, and common law duties between 2002 and the present (the "Class Period").  Plaintiffs bring this action on behalf of themselves and other Class members, each of whom own, owned, lease or leased one or more of the following vehicles: 2005-2007 Chevrolet Cobalt; 2005-2007 Pontiac G5; 2003-2007 Saturn Ion; 2006-2007 Chevrolet HHR; 2005-2006 Pontiac Pursuit (Canada); 2006-2007 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").

6.    Plaintiffs believe that there are additional G.M. vehicles that have the same or similar defect in their ignition switch systems as the Defective Vehicles. Plaintiffs will supplement the definition of Defective Vehicles to include these additional vehicles with defective ignition switch systems as they are identified.

### JURISDICTION AND VENUE

7.    This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiffs and other Class members are citizens of a different state than Defendant.

8.    The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338 with respect to claims seeking declaratory and other relief arising under the Magnuson-Moss Federal Warranty Act, 15

---

[1]    Jeff Bennett, *GM Now Says It Detected Ignition Switch Problem Back in 2001*, Wall St. J., (Mar. 12, 2014, 10:35 p.m.), http://online.wsj.com/news/articles/SB1000142405270230491490 4579435171004763740 ?KEYWORDS=gm &mg=reno64-wsj.

- 2 -

U.S.C. §§ 2301 *et seq*., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the entire case or controversy.

9.      This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over G.M. because G.M. conducts substantial business in this District, and some of the actions giving rise to the complaint took place in this District.

10.      Venue is proper in this District under 28 U.S.C. § 1391 because G.M., as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Additionally, G.M. transacts business within the District, and some of the events establishing the claims arose in this District.

## PARTIES

11.      Plaintiff and proposed California State Class Representative Elizabeth Y. Grumet ("Grumet") is a resident and citizen of the State of California. Grumet owned a 2004 Saturn Ion and a 2006 Saturn Ion II, both of which were purchased from an authorized G.M. dealer in San Jose, California. Grumet chose the Saturn Ion and Ion II in part because she wanted a safely designed and manufactured vehicle.

12.      Grumet saw advertisements for G.M. vehicles before she purchased the cars and, although she does not recall the specifics of the advertisements, she does recall that safety and quality were consistent themes across the advertisements she saw before making the purchase of the 2004 Saturn Ion at the G.M./Saturn dealer in San Jose, California in 2004.   These representations about safety and quality influenced Grumet's decision to purchase the Saturn Ion and Ion II. Grumet did not learn of the ignition switch defects until about March 2104. Had G.M. disclosed the ignition switch defects, she would not have purchased either vehicle, or would have paid less than she did.

13.      On at least three different occasions, Grumet experienced engine shut down in her 2004 Saturn Ion. On the first occasion, Grumet experienced an engine

1   shut down incident while driving at 65 m.p.h. on the freeway. She was ultimately

2   able to get the vehicle to the freeway shoulder and later took it to the G.M. dealer

3   who kept the vehicle for several days, and claimed, however, to be unable to

4   replicate the engine shut down. On the second occasion, Grumet experienced an

5   engine shut down incident in a residential neighborhood and, again, took the

6   vehicle in for service to correct the problem.  After Grumet experienced an engine

7   shut down incident for a third time, she traded the vehicle in for a 2006 Saturn Ion

8   II at the G.M./Saturn dealer in San Jose, California in 2006.

9       14.   Plaintiff and proposed Florida State Class Representative ABC

10  Flooring, Inc. ("ABC"), is a Florida corporation.  ABC owns a 2007 Chevrolet

11  HHR which was purchased from an authorized G.M. dealer in Florida.  Frank

12  Borzen ("Borzen"), acting on behalf of ABC, chose the 2007 Chevrolet HHR, in

13  part, because he wanted a safely designed and manufactured vehicle for his
    business.

14
        15.   Borzen, acting on behalf of ABC, saw advertisements for G.M.
15
    vehicles before he purchased the 2007 Chevrolet HHR, and, although he does not
16
    recall the specifics of the advertisements, he does recall that safety and quality
17
    were consistent themes across the advertisements he saw before making the
18
    purchase.   These representations about safety and quality influenced Borzen's
19
    decision to purchase the 2007 Chevrolet HHR.  Borzen did not learn of the ignition
20
    switch defects until about March 2104. Had G.M. disclosed the ignition switch
21
    defects, he would not have purchased the vehicle, or would have paid less than he
22
    did.

23      16.   Plaintiff and proposed Illinois State Class Representative, Marcus

24  Sullivan ("Sullivan"), is a resident and citizen of the State of Illinois, who owns a

25  2007 Saturn Ion, which he purchased from an authorized G.M./Saturn dealer in

26  Chicago, Illinois.  Sullivan chose the 2007 Saturn Ion, in part, because he wanted a

27  safely designed and manufactured vehicle.

28

17.    Sullivan saw advertisements for G.M. vehicles before he purchased the 2007 Saturn Ion, and, although he does not recall the specifics of the advertisements, he does recall that safety and quality were consistent themes across the advertisements he saw before making the purchase.   These representations about safety and quality influenced his decision to purchase the 2007 Saturn Ion. Sullivan did not learn of the ignition switch defects until about March 2014.   Had G.M. disclosed the ignition switch defects, he would not have purchased the 2007 Saturn Ion, or would have paid less than he did.

18.    Plaintiff and proposed Michigan State Class Representative, Katelyn Saxson ("Saxson"), is a resident and citizen of the State of Michigan.   Saxson owns a 2006 Chevrolet Cobalt which was purchased from an authorized G.M. dealer in Lansing, Michigan in August 2006.   Saxson chose the 2006 Chevrolet Cobalt, in part, because he wanted a safely designed and manufactured vehicle.

19.    Saxson saw advertisements for G.M. vehicles before she purchased the 2006 Chevrolet Cobalt, and, although she does not recall the specifics of the advertisements, she does recall that safety and quality were consistent themes across the advertisements he saw before making the purchase.    These representations about safety and quality influenced her decision to purchase the 2006 Chevrolet Cobalt.   Saxson did not learn of the ignition switch defect until about March 2014.   Had G.M. disclosed the ignition switch defect, she would not have purchased the vehicle, or would have paid less than she did.

20.    Plaintiff and proposed Illinois State Class Representative, Amy C. Clinton ("Amy Clinton"), is a resident and citizen of the State of Illinois, owns a 2007 Chevrolet Cobalt which was purchased new from an authorized G.M dealer in Illinois.   Amy Clinton chose the 2007 Chevrolet Cobalt, in part, because she wanted a safely designed and manufactured vehicle.

21.    Amy Clinton saw advertisements for G.M. vehicles before she purchased the 2007 Chevrolet Cobalt, and, although she does not recall the

specifics of the advertisements, she does recall that safety and quality were consistent themes across the advertisements she saw before making the purchase. These representations about safety and quality influenced her decision to purchase the 2007 Chevrolet Cobalt. Amy Clinton did not learn of the ignition switch defects until about March 2014. Had G.M. disclosed the ignition switch defects, she would not have purchased the 2007 Chevrolet Cobalt, or would have paid less than she did.

22. Plaintiff and proposed Illinois State Class Representative, Allison C. Clinton ("Allison Clinton"), is a resident and citizen of the State of Illinois, owns a 2007 Chevrolet Cobalt which was purchased new from an authorized G.M dealer in Illinois. Allison Clinton chose the 2007 Chevrolet Cobalt, in part, because she wanted a safely designed and manufactured vehicle.

23. Allison Clinton saw advertisements for G.M. vehicles before she purchased the 2007 Chevrolet Cobalt, and, although she does not recall the specifics of the advertisements, she does recall that safety and quality were consistent themes across the advertisements she saw before making the purchase. These representations about safety and quality influenced her decision to purchase the 2007 Chevrolet Cobalt. Allison Clinton did not learn of the ignition switch defects until about March 2014. Had G.M. disclosed the ignition switch defects, she would not have purchased the 2007 Chevrolet Cobalt, or would have paid less than she did. She has experienced issues with the ignition switch during the Class Period.

24. Defendant General Motors LLC is a foreign limited liability company formed under the laws of Delaware with its principal place of business located at 300 Renaissance Center, Detroit, Michigan. G.M. was incorporated in 2009 and, on July 10, 2009, acquired substantially all assets and assumed certain liabilities of General Motors Corporation ("Old G.M.") through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.

25.     Among the liabilities and obligations expressly retained by G.M. after the bankruptcy are the following:

> From and after the Closing, Purchaser [G.M.] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code, and similar laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old G.M.].

26.     G.M. also expressly assumed:

> all Liabilities arising under express written warranties of [Old G.M.] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by [Old G.M.] or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws.

27.     Because G.M. acquired and operated Old G.M. and ran it as a continuing business enterprise, and because G.M. was aware from its inception of the ignition switch defects in the Defective Vehicles G.M. is liable through successor liability for the deceptive and unfair acts and omissions of Old G.M., as alleged in this Complaint.

**TOLLING OF STATUTES OF LIMITATION**

**A.     Discovery Rule Tolling**

28.     Any applicable statute(s) of limitations has been tolled by G.M.'s knowing and active concealment and denial of the facts alleged herein.

29.     Plaintiffs and the other members of the Classes could not have discovered through the exercise of reasonable diligence that their Defective Vehicles were defective within the time period for the applicable statutes of limitation.   Indeed, Plaintiffs and members of the Classes could not have reasonably discovered the true nature of the defect in the ignition switches in their Defective vehicles until shortly before this class action litigation was commenced.

**B.    Fraudulent Concealment Tolling**

30.    At all relevant times to this action G.M. affirmatively concealed from Plaintiffs and other members of the Classes the defects in the Defective Vehicles. G.M. withheld from Plaintiffs and other members of the Class information essential to the pursuit of their claims and, as a direct consequence, Plaintiffs and other members of the Classes could not have discovered the defects upon the exercise of reasonable diligence.

31.    As set forth below, G.M. was aware of the design defect in the ignition switches as early as 2001 and despite such knowledge continued to manufacture, market, advertise, sell, lease and warrant such vehicles without disclosing the defects to Plaintiffs and other members of the Classes.

32.    G.M. has repeatedly denied the existence of defects in the Defective Vehicles to Plaintiffs and other members of the Class.  Such denials concealed G.M.'s knowledge of the defects, as well as the attendant risks, from Plaintiffs and other members of the Classes.

33.    The running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and other members of the Classes have in connection with the defects in their Defective Vehicles, pursuant to the fraudulent concealment doctrine.

**C.    Estoppel**

34.    G.M. had a continuous duty to disclose to Plaintiffs and members of the Classes true character, quality and nature of the Defective Vehicles, that this defect is based on a poor design and/or substandard materials, and that it will require repairs, poses a safety concern, and diminishes the resale value of the Defective Vehicles.

35.    G.M. knowingly, affirmatively and consciously concealed the true nature, quality and character of the Defective Vehicles from consumers.

36.    As a result, G.M. is estopped from relying on any and all statutes of limitation in defense of this action.

### SUBSTANTIVE ALLEGATIONS

37.    Since 2002, G.M. has sold millions of Defective Vehicles throughout the world including within the United States knowing that they were prone to a very dangerous safety defect namely that the ignition switch could unintentionally move from the run position to "off" or "accessory" resulting in a loss of power, loss of braking, and a failure to deploy airbags in the event of a collision.

38.    Upon information and belief, G.M. installed these defective ignition switches in its cars from 2002 to 2007.    During this period, G.M. received hundreds of complaints that the Defective Vehicles were prone to sudden shut-off even though it concomitantly touted the Defective Vehicles as highly reliable and safe.

39.    The issues surrounding the Defective Vehicles include the period when Old G.M. designed and manufactured the vehicles with defective ignition switches, and failed to disclose the existence of the defect even after Old G.M. became aware that it had caused fatalities.    G.M. is liable for Old G.M.'s unfair and deceptive acts and/or omissions by virtue of the statutory obligations it assumed.    G.M. also has successor liability for the conduct of Old G.M. because G.M. has continued to operate the franchise of Old G.M knowing full well that the ignition switches were defectively designed.

40.    Upon information and belief, Delphi Automotive PLC "("Delphi") manufactured the defective ignition switches.    Delphi was a former subsidiary of Old G.M until it was spun off in 1999 and became an independent company.    Upon information and belief, Delphi knew the switches were defective at all relevant times and was in a position to manufacture a corrective device or other fix for a minimal amount of money, possibly from $2 to $5 per vehicle.

- 9 -

41.    The Defective Vehicles are inherently dangerous because the defective ignition switches renders them vulnerable to inadvertent engine shut off during normal operation. The ignition switches can, during normal driving conditions, shut off the engine and electrical system in Defective Vehicles without warning.  Once the engine and electrical system is shut down, power steering and power brakes fail raising a substantial risk that the vehicle will be involved in an accident.  Moreover, with the electrical system down, the vehicle's airbags are disengaged, thus, leaving passengers vulnerable to serious bodily injury or even death in the event of an accident.

42.    It has now been disclosed that the defect stems from a small, inexpensive part called the "detent plunger" reproduced below:



[2]

---

[2]    *See id.*

43.    After years of denying the existence of any problem with the Defective Vehicles, on February 14, 2014, G.M. finally disclosed in a report posted on the National Highway Traffic Safety Administration's ("NHTSA") website, dated February 7, 2014, that it would recall 619,000 cars in the United States because either a heavy key ring or a "jarring event" such as running off the road could cause the ignition to shut off and possibly prevent the air bags from deploying in a crash. The vehicles affected by the initial recall were the 2007 Pontiac G5 and 2005-07 Chevrolet Cobalt.  In addition to the vehicles being recalled in the United States, another 153,000 in Canada and 6,100 in Mexico were to be recalled.  In a separate news release, G.M. said it knew of at least six deaths in five crashes in which the front air bags did not deploy.  Commenting on the events, a G.M. spokesman said "all of these crashes occurred off-road and at high speeds, where the probability of serious or fatal injuries was high regardless of air bag deployment."[3]

44.    The February 7, 2014 G.M. letter to the NHTSA, further detailed the problem as follows:

> The ignition switch torque performance may not meet General Motors' specification. If the torque performance is not to specification, and the key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event, the ignition switch may inadvertently be moved out of the "run" position. The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes. Until this correction is performed, customers should remove non-essential items from their key ring.[4]
>
> Dealers are to replace the ignition switch.[4]

---

[3]    Christopher Jenson, *General Motors Recalls 778,000 Small Cars for Ignition Switch Problems*, N.Y. Times, (Feb. 13, 2014), http://www.nytimes.com/2014/02/14/automobiles/general-motors-recalls-778000-small-cars-for-ignition-switch-problem.html.

[4]    Letter from General Motors LLC to Nancy Lewis, Assoc. Admin. for Enforcement, Nat'l Hwy. Traffic Safety Admin., Recall Management Division (NVS-215), (Feb. 7, 2014), http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM450012/RCDNN-14V047-1347P.pdf.

45.     At the center of the recall is the above-mentioned Chevrolet Cobalt. Engineered more than a decade ago, executives at G.M. touted it as the beginning of a new era and the replacement for the poorly received Chevrolet Cavalier.  As reported in *The New York Times* on March 17, 2014, the Cobalt "would not only replace the aging and undistinguished Chevrolet Cavalier, but it would also prove that G.M.'s engineering and manufacturing skills had matured to the point that – like the Japanese automakers – it could build a world-class small car."[5]   The Cobalt's "mechanical underpinnings" were first developed in the 2003 Saturn Ion and included the flawed ignition switch.  *Id.*  G.M. knew this flaw existed from the moment the car hit dealers' floors even though it touted the car as "safe and sound" in an advertisement for a 2007 Saturn Ion.

46.     The advertisement states, "The Ion's designers accounted for almost everything but compromise. It's nimble, yet strong. Modern, but inviting. Sporty, yet safe and sound. Featuring the U.S. Government's highest possible front crash-test rating-five stars."

47.     G.M. promotional materials include the following claims of safety and reliability:

> 2003 Saturn Ion: "The ION sedan and quad coupe are designed to carry on the tradition of being at the top of the class when it comes to safety and security."
>
> 2006 and 2007 Saturn Ion: "Like all Saturns, the Ion was designed with an emphasis on safety and security."
>
> 2006 Pontiac G5: "The 2006 Pontiac G5 Pursuit offers a host of features for safety-minded consumers."
>
> 2006 Chevrolet HHR: "HHR is designed to protect occupants in the event of a crash."
>
> 2007 Saturn Sky: "Sky has a host of safety features ... including dual stage frontal air bags ... that use the latest sensing technology to turn the front passenger air bag on or off."

---

[5]     Christopher Jensen, *G.M. Saw Cobalt as Its Entry Into a Better Small-Car Market,* N.Y. Times, (Mar. 17, 2014), http://www.nytimes.com/2014/03/18/business/gm-saw-cobalt-as-its-entry-into-the-upscale-small-car-market.html?ref=generalmotorscorporation.html.

2005 - 2007 Chevrolet Cobalt: "Safety was a priority in the development of the Cobalt." Cobalt's "rigid body structure ... reinforces occupant safety." "The rigid body structure ... reinforces its safety [and] load carrying capability for crash protection."

48.    Accordingly, purchasers of the Defective Vehicles were lead to believe that the cars were safe and reliable.  This proved to be untrue.

49.    On February 25, 2014, G.M. announced it would double the size of the recall stemming from an ignition switch defect in the Defective Vehicles. G.M. said in the release that it was now aware of the deaths of at least 12 front-seat occupants in crashes where the front air bags did not deploy.  While G.M. had previously recalled 619,000 vehicles in the United States, including Chevrolet Cobalts from the 2005-7 model years and 2007 Pontiac G5 models, G.M. added 2003-7 Saturn Ions, 2006-7 Chevrolet HHRs and 2006-7 Pontiac Solstice and Saturn Sky models.[6]

50.    On February 26, 2014, *The Associated Press* reported that NHTSA was investigating whether G.M. acted quickly enough to recall 1.6 million older-model small cars in a case linked to 12 deaths. According to the *AP*, the agency has the authority to fine G.M. as much as $35 million under legislation that went into effect late last year. Automakers must report evidence of safety defects within five days. G.M. filed documents with the safety agency recently however that showed it knew of the problem as early as 2004.[7]

51.    The recall follows years of warnings and mounting evidence that the Defective Vehicles were prone to potentially dangerous operational shutdown that rendered the airbags inoperative.  It has been reported by *The New York Times* on

---

[6]    Christopher Jenson, *G.M. to Expand Small Car Recall to 1.4 Million Vehicles*, N.Y. Times (Feb. 25, 2014), http://www.nytimes.com/2014/02/26/automobiles/gm-to-expand-small-car-recall-to-1-4-million-vehicles.html.

[7]    Tom Krisher, *U.S. Safety Agency Likely is investigating G.M. for Slow Response to Small Car Recall*, A.P. (Feb. 26, 2014), http://www.usnews.com/news/business/articles/2014/02/26/us-safety-agency-likely-probing-gm-recall-response.html.

March 2, 2014, that shortly after the Cobalts left their Lordstown, Ohio assembly plant, G.M. learned that there was a problem with the ignition system.[8]

52.   For example, engineers determined as early as 2004 that a defect in the ignition switch meant a key could be unintentionally jostled out of the "Run" position to the "Accessory" or "Off" position by a heavy key ring or by a nudge from a driver's leg.  With the ignition switch in the "Accessory" or "Off" position, it would cause the car to stall and shut down power.  The powering down of the engine and electrical system would also disable the airbags so that any accident ensuing from the sudden and unexpected stall would not deploy the airbag safety devices and leave the vehicle's occupants exposed.

53.   In 2004, engineers, having identified the problem, proposed a fix. G.M. executives, however, decided, based among other things, that cost was prohibitive and declined to take remedial action. It has been reported that the 2004 proposed fix was actually less than $12.

54.   Reports detailing sudden ignition turn off continued through 2005 and yet another fix was considered but not implemented. [9]  G.M. instead, sought to place the burden on customers and, in 2005, G.M. sent dealers a technical service bulletin about the 2005-06 Cobalt warning about a stalling problem related to heavy key rings. At that time, a G.M. executive explained, "in rare cases when a combination of factors is present, a Chevrolet Cobalt driver can cut power to the engine by inadvertently bumping the ignition key to the accessory or off position while the car is running. Service advisers are telling customers they can virtually eliminate this possibility by taking several steps, including removing nonessential material from their key rings."[10]

---

[8]      Christopher Jensen, *In G.M. Recalls Inaction and Trails of Fatal Crashes*, N.Y. Times, (Mar. 12, 2014), http://www.nytimes.com/2014/03/03/business/in-general-motors-recalls-inaction-and-trail-of-fatal-crashes.html.

[9]      *See id*.

[10]     *Id.*

55.    G.M.'s apathy for customers and public safety became even more apparent when it was revealed on March 12, 2014, by *The New York Times* that G.M. knew since 2001 there were serious safety problems in the Defective Vehicles.  According to an expanded chronology submitted to regulators, G.M. admitted that during the development of the Saturn Ion in 2001, it learned that the ignition switch could turn off.  While G.M. insisted that the issue was resolved then, a 2003 internal inquiry indicated otherwise.[11]

56.    Further, at a May 15, 2009 meeting, G.M. confirmed from the data retrieved from the "black box" of a Cobalt during a post accident examination that the ignition switch in the Defective Vehicle was the cause of the accident.[12]

57.    According to the *N.Y. Times*, there is even more additional evidence of knowledge:

> Since the engineers' meeting in May 2009, at least 23 fatal crashes have involved the recalled models, resulting in 26 deaths. G.M. reported the accidents to the government under a system called Early Warning Reporting, which requires automakers to disclose claims they receive blaming vehicle defects for serious injuries or deaths.
>
> A New York Times review of 19 of those accidents – where victims were identified through interviews with survivors, family members, lawyers and law enforcement officials – found that G.M. pushed back against families in at least two of the accidents, and reached settlements that required the victims to keep the discussions confidential.
>
> In one of those cases, the company settled a lawsuit brought by the family of Hasaya Chansuthus, 25, who crashed her 2006 Cobalt in Murfreesboro, Tenn. After resisting, the company negotiated a deal even though Ms. Chansuthus's blood-alcohol level was more than twice the legal limit. Data from the black box – which records vehicle systems information – showed that the key was in the accessory or off position, according to court documents, and the air bags did not deploy. (The accessory position turns off the car, disabling the air bags, but allows certain electronics, like the radio, to run.) The terms of the settlement are confidential.
>
> In other instances, G.M. ignored repeated calls, families said. "We did call G.M.," said Leslie Dueno, whose 18-year-old son, Christopher

---

[11]    Hilary Stout, Bill Vlasic, Danielle Ivory, and Rebecca R. Ruiz, *Carmaker Misled Grieving Families on a Lethal Flaw*, N.Y. Times (Mar. 25, 2014), http://www.nytimes.com/2014/03/25/business/carmaker-mislead-grieving-families-on-a-lethal-flaw.html.

[12]    *Id.*

- 15 -

Hamberg, was killed on June 12, 2009 – not quite a month after the critical May 15 meeting of G.M. engineers about the ignition data – driving his 2007 Cobalt home before dawn in Houston. He lost control at 45 miles per hour and hit a curb, then a tree, the police report said. "Nobody ever called me. They never followed up. Ever."[13]

58.     As explained above, the evidence that G.M. knew there was a link between the defective ignition switches and accidents came in the form of electronically captured data retrieved from sensing modules removed from wrecked cars.  Premised upon a review of this information, the *New York Times* stated that by the end of 2007, G.M. recognized for certain the "link between a faulty switch and deactivated air bags":

Consumer complaints and claims came to the company in a variety of ways – through lawsuits, calls, letters and emails, warranty claims, or insurance claims. G.M.'s legal staff was the recipient of lawsuits, insurance information, accident reports and any other litigation-related paperwork. But warranty claims and customer calls were routed through the sales and service division – a vast bureaucracy that occupies most of one tower at G.M.'s headquarters in Detroit. Because the legal staff reports to the chief executive, and the sales department to the head of G.M. North America, it is unclear whether they share information related to a specific car, like the Cobalt.

And an even bigger communication gap on the Cobalt appeared to exist between the engineers in Warren, Mich., and the company lawyers in downtown Detroit. The most glaring example was that G.M. officials meeting with federal regulators in March 2007 did not know about a fatal Cobalt wreck in 2005 – even though G.M.'s legal department had had an open file on the case for almost two years.

Within the product development system was an isolated, subgroup of engineers assigned to Cobalt safety tests. According to the chronology G.M. has submitted to federal safety regulators, an unknown number of engineers were involved in opening – and closing – four separate inquiries on the Cobalt between 2004 and 2009. Engineers also performed four other analyses.

By the end of 2007, G.M. had examined data from nine "sensing and diagnostic modules" of crashed vehicles. In four cases, the ignition was in the accessory position. But it was not until May 15, 2009, that G.M. engineers verified the data. That day, they met with officials from its supplier Continental, which manufactured the Cobalt's diagnostic modules, or black boxes. By then G.M. had recovered 14 modules, and according to Continental, the ignition was in the accessory position on seven of the 14 cases. This appears to be the first proven link between a faulty switch and deactivated air bags.[14]

---

[13]     *Id.*

[14]     *Id.*

59.     Despite knowing full well that the Defective Vehicles' defective ignition switch was linked to horrific accidents including fatalities, G.M. vehemently denied its culpability until just hours before the first recall.  Indeed, it employed a harsh litigation strategy when dealing with the claims brought by the many who were harmed and the families of the deceased.  According to *The New York Times*, "in one case, G.M. threatened to come after the family of an accident victim for reimbursement of legal fees if the family did not withdraw its lawsuit. In another instance, it dismissed a family with a terse, formulaic letter, saying there was no basis for claims."[15]

60.     G.M. also threatened injured parties with retaliatory lawsuits and asserted that the earlier bankruptcy barred these people from pursing claims.  As reported in the *Times*:

> That same month, lawyers representing G.M. wrote to the lawyer in another wrongful-death case demanding that the lawsuit be withdrawn. The family of Allen Ray Floyd had sued G.M. after Mr. Floyd lost control of a 2006 Cobalt in daylight near Loris, S.C. Two weeks earlier, his sister had lost control of the same vehicle on the same road; she had it towed. The company contended the suit was "frivolous" because the accident occurred on July 3, 2009, a week before the company's bankruptcy agreement took effect, which meant G.M. was not liable for damages.

> "They sent us a letter in September telling us to drop our case or else they'd come after us," said William Jordan, the family's lawyer. "They were going to come after me for sanctions, to pay their attorneys' fees."

> Mr. Jordan added: "We looked at the prospect of going into bankruptcy court and duking it out with them and looking at the language of the bankruptcy legislation, and it just seemed to be such a big undertaking. We decided to capitulate."

61.     Finally, G.M.'s conduct and effort to avoid liability by hiding behind Old G.M.'s bankruptcy, has federal authorities investigating whether the automaker committed fraud by not disclosing defects that could lead to expensive future liabilities.  The issue is whether Old G.M. knew about the ignition defect at

---

[15]     *Id.*

the time it filed for bankruptcy in 2009, and failed to fully disclose the problem. The record is quite clear, however, that Old G.M. and G.M. knew the defect existed in the Defective Vehicles as early as 2001, and clearly by 2002.

62.   G.M. and its predecessor were at all times under an affirmative duty to advise customers about known defects. Specifically, under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act") and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defects. If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers, and dealers of the defect and must remedy the defect. This duty existed throughout the Class Period.

**SUCCESSOR LIABILITY**

63.   G.M. was incorporated in 2009 and on July 10, 2009 acquired substantially all assets and assumed certain liabilities of G.M. Corp through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code. Bankruptcy does not immunize G.M. from liability here. Specifically, G.M. expressly assumed certain obligations under, inter alia, the TREAD Act, and is liable for its non-disclosure of the ignition switch defects from the date of its formation on July 10, 2009.

64.   G.M. also expressly assumed liability for warranty claims in the Master Sale and Purchase Agreement of June 26, 2009, and this assumption of liability includes the claims of the Class.

65.   Moreover, G.M. has successor liability for Old G.M.'s acts and omissions in the marketing and sale of the Defective Vehicles during the Class Period because G.M. has continued the business enterprise of Old G.M., for the following reasons:

- G.M. admits that it knew of the ignition system defects from the very date of its formation;

- • G.M. has continued in the business of designing, manufacturing, and marketing vehicles, including at least some of the same vehicles as Old G.M.;

- • G.M. retained the bulk of the employees of Old G.M.;

- • G.M. acquired owned and leased real property of Old G.M., including all machinery, equipment, tools, information technology, product inventory, and intellectual property;

- • GM acquired the contracts, books, and records of Old G.M. Corp; and

- • G.M. acquired all goodwill and other intangible personal property of Old G.M.

66.    G.M. and Old G.M. did not report information within their knowledge to federal authorities (NHTSA) or consumers, nor would a reasonable and diligent investigation have disclosed that G.M. and Old G.M. had information in their possession about the existence and dangerousness of the defect and opted to conceal that information until shortly before this action was filed.

67.    G.M. and Old G.M. were, and G.M. remains, under a continuing duty to disclose to NHTSA, Plaintiffs and the Classes the true character, quality, and nature of the Defective Vehicles; that this defect is based on dangerous, inadequate, and defective design and/or substandard materials; and that it will require repair, poses a severe safety concern, and diminishes the value of the Defective Vehicles.

68.    Because of the active concealment by G.M. and Old G.M., any and all limitations periods otherwise applicable to Plaintiffs' claims have been tolled.

## CLASS ACTION ALLEGATIONS

69.    Plaintiffs brings this action pursuant to Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes:

a.   All persons and entities that purchased or leased Defective Vehicles in the United States between 2002 and the present (the "Class Period") (the "Nationwide Class").

b.   All persons and entities that purchased or leased Defective Vehicles during the Class Period in the State of California (the "California State Class").

c.   All persons and entities that purchased or leased Defective Vehicles during the Class Period in the State of Florida (the "Florida State Class").

d.   All persons and entities that purchased or leased Defective Vehicles during the Class Period in the State of Illinois (the "Illinois State Class").

e.   All persons and entities that purchased or leased Defective Vehicles during the Class Period in the State of Michigan (the "Michigan State Class").

70.   Together, the Nationwide, California, Florida, Illinois, and Michigan State Classes shall be collectively referred to hereinafter as the "Class." The Class excludes G.M. and any entity in which G.M. has a controlling interest, and its officers, directors, legal representatives, successors and assigns. The Class also excludes any entity in which G.M. has or had a controlling interest, and its officers, directors, legal representatives, successors and assigns.

71.   The Class is so numerous that joinder of all members is impracticable.

72.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

73.   Plaintiff's claims are typical of the claims of the Class. As alleged herein, Plaintiffs and members of the Class all sustained damages arising out of the G.M.'s same course of unlawful conduct.

74.     There are questions of law and fact common to the Class, including but not limited to:

- Whether G.M. and its predecessor had knowledge of the defect prior to its issuance of the current safety recall;

- Whether G.M. and its predecessor concealed defects affecting the Defective Vehicles;

- Whether G.M. and its predecessor misrepresented the safety of the Defective Vehicles;

- Whether G.M. and its predecessor's misrepresentations and omissions regarding the safety and quality of its vehicles were likely to deceive a reasonable person;

- Whether a reasonable customer would pay less for a car that had the ignition defect;

- Whether a reasonable customer would pay less for a vehicle that did not conform to G.M. and its predecessor's assurances of quality;

- Whether G.M. and its predecessor breached its applicable warranties;

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

- Whether injunctive relief enjoining the reoccurrence of Defendant's conduct and/or declaratory relief that such conduct is unlawful, is warranted.

75.     The interest of Class members in individually controlling the prosecution of separate actions is theoretical and not practical. The members of the Class have a high degree of similarity and are cohesive.  Plaintiffs anticipate no difficulty in the management of this matter as a class action.

76.     Class action status is also warranted under Federal Rules of Civil Procedure 23(b)(2) because G.M. has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

77.     Class action status is also warranted under Federal Rules of Civil Procedure 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

## COUNT I

**VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT
15 U.S.C. § 2301, *et seq*.
(On Behalf of Plaintiffs and the Nationwide Class)**

78.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

79.     This claim is brought on behalf of the Nationwide Class (the "Class" for purposes of this Count).

80.     This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. (the "Act"), by virtue of 28 U.S.C. §§ 1332 (a)-(d).

81.     The Defective Vehicles constitute "consumer products," as defined in 15 U.S.C. § 2301.

82.     Plaintiffs and the other members of the Class are "consumers," as defined in 15 U.S.C. § 2301.

83.     Old G.M. and G.M. are "suppliers" and a "warrantors" of the Defective Vehicles as defined in 15 U.S.C. § 2301.

84.     The Defective Vehicles are "consumer products" within the meaning of the Act, pursuant to 15 U.S.C. § 2301(1).

85.     Old G.M. supplied a "written warranty" regarding the Defective Vehicles, as defined in 15 U.S.C. § 2301(6).

86.    As suppliers and in connection with the sale of the Defective Vehicles, Old G.M. made "implied warranties" arising under State law regarding the Defective Vehicles, as defined in 15 U.S.C. § 2301(7).

87.    The Defective Vehicles were designed with defective ignition switches that can cause the Defective Vehicles' engine and electrical system to shut down without warning, exposing vehicle occupants to serious risks of accidents, injuries and potentially death.  G.M. issued a recall with respect to the Defective Vehicles, thus, admitting that the ignition switches are defective.

88.    As more fully described above, G.M. breached its express and implied warranties to Plaintiffs and the members of the Class by, among other things: selling and/or leasing the Defective Vehicles in an unmerchantable condition; selling and/or leasing the Defective Vehicles when they were not fit for the ordinary purposes for which vehicles are used, and which were not fully operational, safe or reliable; and not repairing or curing defects and nonconformities in the Defective Vehicles as they were identified.

89.    Plaintiffs and each member of the Class had sufficient direct dealings with old G.M., G.M. or their agents (dealerships) to establish privity of contract between G.M. and each member of the Class.  Privity, however, is not required here because Plaintiffs and each member of the Class are intended third-party beneficiaries of contracts between G.M. and its dealers, and specifically, they are intended beneficiaries of G.M.'s express and implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Additionally, privity is not required because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

90.    G.M. has successor liability for the acts of Old G.M. as described above.

91.    Requiring an informal dispute settlement procedure or affording G.M. a reasonable opportunity to cure its breach of warranties would be unnecessary and futile.  At the time of sale or lease of each the Defective Vehicles, G.M. knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – under the Act or otherwise – that Plaintiffs resort to an informal dispute resolution procedure and/or afford G.M. a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

92.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims under the Act, whether premised upon express or implied warranty, is procedurally and substantively unconscionable under federal law and the applicable state common law.

93.    Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines. Plaintiffs and the other Class members sustained injuries and damages as a proximate result of G.M.'s violation of their written and/or implied warranties and are entitled to legal and equitable relief against G.M., including economic damages, rescission or other relief as appropriate.

94.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

95.     Plaintiffs, on behalf of themselves and each member of the Class, seek all damages permitted by law, including diminution in value of their Defective Vehicles, in an amount to be proven at trial.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(On behalf of Plaintiffs and the Nationwide Class)**

96.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

97.     This claim is brought on behalf of the Nationwide Class (the "Class" for purposes of this Count).

98.     Old G.M. and G.M. concealed material facts about the defect in the ignition switches of the Defective Vehicles and the safety of such vehicles.

99.     G.M. has successor liability for the acts of concealment of Old G.M. as described above.

100.     G.M. had a duty to disclose these safety, quality, dependability, and reliability issues because G.M. consistently marketed the Defective Vehicles as safe.

101.     Once G.M. made representations to the public about the safety, quality, dependability and reliability of the Defective Vehicles, G.M. was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts that materially qualify those facts stated. A manufacturer that volunteers information about its product must be truthful, and the telling of a half-truth calculated to deceive is fraud.

102.     In addition, G.M. had a duty to disclose omitted facts with respect to the defects in the ignition switches of the Defective Vehicles because they were known and/or accessible only to G.M., which has superior knowledge and exclusive access to the facts, and G.M. knew they were not known to or discoverable by Plaintiffs and the other Class members.

103.   These omitted facts were material because they concern the safety and reliability of the Defective Vehicles. That a defect existed in the ignition switches of the Defective Vehicles which could cause the vehicles' engine and electrical system to shut down without warning, and disable the vehicles' safety systems, are material facts to consumers.

104.   G.M. actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the other Class members to purchase Defective Vehicles at a higher price for the Defective Vehicles, which did not match Defective Vehicles' true value.

105.   G.M. still has not made full and adequate disclosure and continues to defraud Plaintiffs and the other members of the Class by concealing material information regarding the defects in the Defective Vehicles and other G.M. vehicles.

106.   Plaintiffs and the other members of the Class reasonably relied on G.M.'s statements in its marketing and advertising that the Defective Vehicles were safe, and would not have purchased or leased the Defective Vehicles had they known of the defects in the ignition switches, or would not have paid as much as they did.

107.   As a result of the concealment and/or suppression of the facts, Plaintiffs and the other members of the Class sustained damages. For those Class members who elect to affirm the sale, damages include the difference between the actual value of that for which Class members paid and the actual value of what they received, together with additional damages arising from the sales transaction. Those Class members who want to rescind their purchase are entitled to restitution and consequential damages.

108.   G.M.'s acts were done maliciously, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the other Class members'

rights and well-being, and to enrich itself. G.M.'s conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

### COUNT III
### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, *et seq*.
### (On Behalf of Plaintiff Grumet and the California State Class)

109.    Plaintiff Grumet and the California State Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

110.    This claim is brought on behalf of Plaintiff Grumet and the California State Class (the "Class" for purposes of this Count) pursuant to the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA") and is limited solely to injunctive relief at this time.

111.    G.M. is a "person" within the meaning of California Civil Code § 1761(c).

112.    Plaintiff Grumet and the members of the Class are "consumers" as defined by California Civil Code § 1761(d).

113.    The Defective Vehicles are "goods" within the meaning of California Civil Code § 1761(a).

114.    Under the TREAD Act, a manufacturer of a vehicle is required to notify NHTSA, as well as the owners, purchasers and dealers of the vehicle, if the manufacturer learns that the vehicle contains a defect related to motor vehicle safety or the vehicle does not comply with an applicable motor vehicle safety standard. 49 U.S.C. § 30118(c).

115.    Plaintiff Grumet and the members of the Class were deceived by G.M.'s failure to disclose the defect in the ignition switches of the Defective Vehicles.

116.    Old G.M. had knowledge of the ignition switch defects since 2001, however, never disclosed the existence of such defects.  GM admitted the existence

of the ignition switch defects in the Defective Vehicles in connection with the issuing of the recall in February 2014.

117.  G.M. admits that the defect in the ignition switches of the Defective Vehicles has been linked to at least 12 accident related fatalities.

118.  In acquiring Old G.M., G.M. assumed the obligations to make all required disclosures under the TREAD Act.

119.  G.M. also has successor liability for the unfair or deceptive acts or practices of Old G.M.

120.  By failing to disclose and consciously concealing the ignition switch defects in the Defective Vehicles, in violation of the TREAD Act, Old G.M. and G.M. engaged in unfair or deceptive acts or practices prohibited by the CLRA, including in the following respects:

> (a) in violation of § 1770(a)(5), which prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

> (b) in violation of § 1770(a)(7), which prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

> (c) in violation of § 1770(a)(9), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

> (d) in violation of § 1770(a)(16), which prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

121.  For more than a decade, Old G.M. and G.M. failed to disclose to NHTSA the known defects in the ignition switches in the Defective Vehicles. As a result, consumers, including Plaintiff Grumet and the member of the Class received no notice

of the defect that could shut down engine power without warning, disable power steering and brakes, and cause airbags not to deploy in an accident.

122.   Old G.M. and G.M. knew that the defects in the ignition switches in the Defective Vehicles rendered such vehicle unreasonably dangerous to consumers, however, failed to disclose the danger to NHTSA, Plaintiff Grumet or the public – despite having a duty to do so.

123.   Instead, Old G.M. and G.M. allowed consumers to continue to believe the representations made about the Defective Vehicles in its marketing and advertising that such vehicles were safe.

124.   Old G.M.'s and G.M.'s unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety and reliability of the Defective Vehicles.

125.   Plaintiff Grumet and the other members of the Class have suffered injuries resulting from G.M.'s material omission regarding the Defective Vehicles because they paid an inflated purchase price for such vehicles.  If Old G.M. and G.M. had timely disclosed the defect, Plaintiff Grumet and the members of the Class would not have purchased the Defective Vehicles at all, or would have paid less. Plaintiff Grumet and the members of the Class did not receive the benefit of their bargain for a vehicle to provide safe and reliable transportation.

126.   G.M.'s acts and omissions in violation of the CLRA present a continuing risk to Plaintiff and the general public.

127.   Plaintiff Grumet and the members of the Class reserve any claims for damages under the CLRA and currently seek only injunctive relief against G.M.

128.   Pursuant to § 1782 of the CLRA, by letter dated March 27, 2014, Plaintiff notified G.M. in writing by certified mail of the particular violations of § 1770 of the CLRA, and demanded that G.M. cease its unlawful practices as described herein, and give notice to all affected customers of G.M.'s intent to so act.  A copy of that letter is attached hereto as Exhibit A.

129.   Plaintiff Grumet includes as Exhibit B hereto, an affidavit with this Complaint that shows that venue in this District is proper, to the extent such an affidavit is required by Cal. Civ. Code § 1780(d).

## COUNT IV

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200,** *et seq.*
**(On Behalf of Plaintiff Grumet and the California State Class)**

130.   Plaintiff Grumet and the California State Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

131.   This claim is brought on behalf of the California State Class (the "Class" for purposes of this Count).

132.   Plaintiff Grumet and the Class assert this claim for violations of California's Unfair Competition Law ("UCL"), Business & Professional Code §§ 17200, *et seq.*

133.   California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practices.

134.   Old G.M. and G.M. violated the unlawful prong of § 17200 by its violations of the CLRA, as set forth above.

135.   Old G.M. and G.M. also violated the unlawful prong of § 17200 because it engaged in unfair or deceptive acts or practices in violation of the TREAD Act.  Old G.M. and G.M. violated the TREAD Act by failing to timely to inform NHTSA of the ignition switch defects and allowed the Defective Vehicles to be sold with such defects.

136.   Old G.M. and G.M. violated the unfair and fraudulent prong of § 17200 because, in omitting to inform NHTSA about a defect affecting the safety and reliability of its vehicles, they engaged in conduct that was likely to deceive reasonable consumer, owners and purchaser into believing that the Defective Vehicles were safe and reliable. Furthermore, Old G.M. and G.M. misrepresented

and/or omitted to state material facts regarding the quality, safety and reliability of the Defective Vehicles.

137.  Old G.M. and G.M. also violated the unfair and fraudulent prong of § 17200 because the acts and practices set forth in this Complaint offend established public policy, as the harm caused to consumers greatly outweighs any benefits associated with those practices.

138.  G.M. has successor liability for the unlawful, unfair and fraudulent acts or practices of Old G.M.

139.  Plaintiff Grumet and the other members of the Class reasonably relied on Old G.M.'s and G.M.'s statements in its marketing and advertising that the Defective Vehicles were safe, and would not have purchased or leased the Defective Vehicles had they known of the defects in the ignition switches, or would not have paid as much as they did.

140.  Plaintiff Grumet and the members of the Class have suffered injuries, including the loss of money or property, because of Old G.M.'s and G.M.'s unfair, unlawful and/or deceptive practices.  Old G.M. and G.M. failed to inform NHTSA, as well as owners, purchasers and consumers, that the Defective Vehicles were inherently dangerous because they had a defective ignition switch that could shut the vehicles' engines down without warning, leaving the vehicles' occupants vulnerable to accidents, serious injury and potentially death.

141.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of G.M.'s business.  G.M.'s wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated in California and nationwide.

142.  Plaintiff Grumet requests that this Court enter such orders or judgments as may be necessary, including a declaratory judgment that G.M. has violated the UCL; an order enjoining G.M. from continuing its unfair, unlawful, and/or deceptive practices; an order and judgment restoring to Class members any

money lost as the result of G.M.'s unfair, unlawful and deceptive trade practices, including restitution and disgorgement of any profits GM received as a result of its unfair, unlawful and/or deceptive practices, as provided in California Business & Professional Code § 17203, California Code of Civil Procedure § 384, and California Civil Code § 3345.

<u>COUNT V</u>

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT (CALIFORNIA "LEMON LAW") FOR BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY, CAL. CIV. CODE §§ 1790 *et seq*. (On Behalf of Plaintiff Grumet and the California State Class)**

143.  Plaintiff Grumet and the California State Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

144.  This claim is brought on behalf of Plaintiff Grumet and the California State Class (the "Class" for purposes of this Count).

145.  Plaintiff Grumet and the members of the Class who purchased or leased the Defective Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

146.  The Defective Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

147.  Old G.M. was a "manufacturer" of the Defective Vehicles within the meaning of California Civil Code § 1791(j).

148.  G.M. expressly assumed responsibility for payment of Old G.M.'s liabilities arising under Lemon Law.

149.  Old G.M. and G.M. expressly warranted to Plaintiff Grumet and the members if the Class that its Defective Vehicles were "merchantable" within the meaning of California Civil Code §§ 1791.2 & 1793, in its warranty, marketing and advertising materials.

150.  The Defective Vehicles are defective insofar as they were designed with ignition switches that can cause the Defective Vehicles to inadvertently shut

down during ordinary driving conditions without warning, leading to an unreasonable likelihood of accident and that such accidents would cause serious bodily harm or death to the vehicles' occupants.

151. Because of the defective ignition switches, the Defective Vehicles are not safe to drive and thus not fit for ordinary purposes.

152. The Defective Vehicles are covered by Old G.M.'s and G.M.'s express warranties.

153. Old G.M. and G.M. were provided with notice and opportunity to correct the defect in the Defective Vehicles, however, failed to do so. Old G.M. and G.M. have also been on notice of the ignition switch defects through complaints filed in court, with NHTSA and themselves, and have failed to correct the same.

154. As a result of Old G.M.'s and G.M.'s breach of its express warranties, Plaintiff and members of the Class received goods whose dangerous condition substantially impairs their value. Plaintiff Grumet and the members of the Class have been damaged by the diminished value of G.M.'s products, the product's malfunctioning, and the nonuse of their Defective Vehicles.

155. Under California Civil Code §§ 1791.1(d) & 1794, Plaintiff Grumet and the members of the Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defective Vehicles, or the overpayment or diminution in value of the Defective Vehicles.

156. Pursuant to California Civil Code § 1794, Plaintiff Grumet and the members of the Class members are entitled to costs and attorneys' fees.

## COUNT VI

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT
(CALIFORNIA "LEMON LAW") FOR BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY, CAL. CIV. CODE §§ 1790 *et seq*.
(On Behalf of Plaintiff Grumet and the California State Class)**

- 33 -

157.   Plaintiff Grumet and the California State Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

158.   This claim is brought on behalf of Plaintiff Grumet and the California State Class (the "Class" for purposes of this Count).

159.   Plaintiff Grumet and the members of the Class members who purchased or leased the Defective Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

160.   The Defective Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

161.   Old G.M. was a "manufacturer" of the Defective Vehicles within the meaning of California Civil Code § 1791(j).

162.   G.M. expressly assumed responsibility for payment of Old G.M.'s liabilities arising under Lemon Law.

163.   Old G.M. and G.M. impliedly warranted to Plaintiff Grumet and the members if the Class that its Defective Vehicles were "merchantable" within the meaning of California Civil Code §§ 1791.1(a) & 1792; however, the Defective Vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

164.   California Civil Code § 1791.1(a) provides:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)   Pass without objection in the trade under the contract description.

(2)   Are fit for the ordinary purposes for which such goods are used.

(3)   Are adequately contained, packaged, and labeled.

(4)   Conform to the promises or affirmations of fact made on the container or label.

165.   The Defective Vehicles would not pass without objection in the automotive trade because of the defective ignition switches that cause the Defective Vehicles to inadvertently shut down during ordinary driving conditions without warning, leading to an unreasonable likelihood of accident and that such accidents would cause serious bodily harm or death to the vehicles' occupants.

166.   Because of the defective ignition switches, the Defective Vehicles are not safe to drive and thus not fit for ordinary purposes.

167.   The Defective Vehicles are not adequately labeled because the labeling fails to disclose the ignition switch defect and does not advise Class members to avoid attaching anything to their vehicle key rings.  Old G.M. and G.M. failed to warn about the dangerous safety defects in the Defective Vehicles.

168.   Old G.M. and G.M. breached the implied warranty of merchantability by manufacturing and selling the Defective Vehicles with defective ignition switch systems.  These defects have deprived Plaintiff and the members of the Class of the benefit of their bargain and have caused the Defective Vehicles to depreciate in value.

169.   As a direct and proximate result of Old G.M.'s and G.M.'s breach of its duties under California's Lemon Law, Plaintiff Grumet and members of the Class received goods whose dangerous condition substantially impairs their value. Plaintiff Grumet and the members of the Class have been damaged by the diminished value of G.M.'s products, the product's malfunctioning, and the nonuse of their Defective Vehicles.

170.   Under California Civil Code §§ 1791.1(d) & 1794, Plaintiff Grumet and the members of the Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defective Vehicles, or the overpayment or diminution in value of the Defective Vehicles.

171.   Pursuant to California Civil Code § 1794, Plaintiff Grumet and the members of the Class are entitled to costs and attorneys' fees.

**COUNT VII**

**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE
PRACTICES ACT, FLA. STAT. § 501.201, *et seq*.
(On Behalf of Plaintiff ABC and the Florida State Class)**

172.   Plaintiff ABC and the Florida State Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

173.   This claim is brought on behalf of Plaintiff ABC and the Florida State Class (the "Class" for purposes of this Count).

174.   The conduct of Old G.M. and G.M. as set forth herein constitutes unfair or deceptive acts or practices, in violation of the provisions of Florida Statutes Chapter 501, Part II. The prohibited conduct includes, but is not limited to Old G.M.'s manufacture and sale of the Defective Vehicles, Old G.M.'s and G.M.'s failure to disclose and remedy the defective ignition switches in the Defective Vehicles, and their misrepresentations and/or omissions regarding the safety and reliability of the Defective Vehicles.

175.   Old G.M.'s and G.M.'s actions as set forth above occurred in the conduct of trade or commerce.

176.   G.M. has successor liability for the deceptive or unfair acts or practices of Old G.M.

177.   G.M.'s actions impact the public interest because Plaintiff and the other Class members were injured in exactly the same way as millions of others purchasing and/or leasing the Defective Vehicles as a result of G.M.'s generalized course of deception.

178.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of G.M.'s business.

179.   Plaintiff ABC and the other Class members suffered ascertainable loss as a result of Old G.M.'s and G.M.'s conduct.  Plaintiff ABC and the other Class members were injured and suffered economic damages as a result of such conduct.

180.   Plaintiff ABC and the other Class members overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and the Defective Vehicles have suffered a diminution in value as a result of the conduct described herein.

181.   Old G.M.'s and G.M.'s conduct proximately caused the injuries to Plaintiff and the other Class members.

182.   G.M. is liable to Plaintiff ABC and the other Class members for damages in amounts to be proven at trial, including attorneys' fees recoverable pursuant to Florida Statute § 501.2105, costs, and treble damages. Pursuant to Florida Statute § 501.208, Plaintiff ABC will serve the Florida Attorney General with a copy of this complaint as Plaintiff ABC, individually and on behalf of the other Class members, seeks injunctive relief.

## COUNT VIII

### BREACH OF EXPRESS WARRANTY, Fla. Stat. § 672.313
### (On behalf of Plaintiff ABC and the Florida State Class)

183.   Plaintiff ABC and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

184.   This claim is brought on behalf of Plaintiff ABC and the Florida State Class (the "Class" for purposes of this Count).

185.   Old G.M. was, at all relevant times, a merchant with respect to motor vehicles.

186.   In the course of selling the Defective Vehicles, Old G.M. expressly warranted to repair and adjust to correct defects in materials and workmanship of any part supplied by G.M.  G.M. has not repaired or adjusted, and has been unable to repair or adjust the Defective Vehicles' materials and workmanship defects described herein.

187.   These warranties were made, *inter alia*, in advertisements and in uniform statements made by Old G.M. and G.M. to the public and consumers of

the Defective Vehicles. These affirmations and promises were part of the basis of the bargain between Old G.M., on the one hand, and Plaintiff ABC and the other Class members, on the other.

188.   Old G.M. did not provide at the time of sale, and G.M. has not provided since then, G.M. Vehicles conforming to these express warranties.

189.   G.M. expressly assumed all liabilities arising under the written warranties of Old G.M.

190.   Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff ABC and the other Class members whole.

191.   Accordingly, recovery by Plaintiff ABC and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

192.   Moreover, at the time that Old G.M. warranted and sold the Defective Vehicles, it knew that the Defective Vehicles did not conform to the warranties and were inherently defective, and wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Vehicles.

193.   Plaintiff ABC and the other Class members were induced to purchase the Defective Vehicles under false and/or fraudulent pretenses and without the benefit of full disclosure of the problems described herein.

194.   Many of the damages flowing from the Defective Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Old G.M.'s conduct as alleged herein, and due to G.M.'s failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on ABC's and the other Class members' remedies would be insufficient to make Plaintiff ABC and the other Class members whole.

195.   As a direct and proximate result of the breach of express warranties, Plaintiff ABC and the other Class members have been damaged in an amount to be determined at trial.

## COUNT IX

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 Ill. Comp. Stat. 505/1, *et seq.*
### (On Behalf of Plaintiffs Sullivan, Allison Clinton, and Amy Clinton  and the Illinois State Class)

196.   Plaintiffs Sullivan, Amy Clinton, Allison Clinton (the "Plaintiffs" for this Count), and the Illinois State Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

197.   This claim is brought on behalf of Plaintiffs and the Illinois State Class (the "Class" for purposes of this Count).

198.   The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits unfair or deceptive acts or practices in connection with any trade or commerce, including, among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, … whether any person has in fact been misled, deceived, or damaged thereby."  The Act also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

199.   The conduct of Old G.M. and G.M. as set forth herein constitutes unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. 505/2.  The prohibited conduct includes, but is not limited to their manufacture and sale of the Defective Vehicles, failure to disclose and remedy the defective ignition switches

in the Defective Vehicles, and misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles.

200. Old G.M. and G.M.'s actions as set forth above occurred in the conduct of trade or commerce.

201. G.M. has successor liability for the deceptive or unfair acts or practices of Old G.M.

202. G.M.'s actions impact the public interest because Plaintiffs and the other Class members were injured in exactly the same way as millions of others purchasing and/or leasing the Defective Vehicles as a result of G.M.'s generalized course of deception.

203. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of G.M.'s business.

204. Plaintiffs and the other Class members suffered ascertainable loss as a result of Old G.M.'s and G.M.'s conduct. Plaintiffs and the other Class members were injured and suffered economic damages as a result of such conduct.

205. Plaintiffs and the other Class members overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and the Defective Vehicles have suffered a diminution in value as a result of the conduct described herein.

206. Old G.M.'s and G.M.'s conduct proximately caused the injuries to Plaintiffs and the other Class members.

207. G.M. is liable to Plaintiffs and the other Class members for damages in amounts to be proven at trial, including attorneys' fees recoverable pursuant to 815 Ill. Comp. Stat. 505/1, *et seq*.

208. Plaintiffs and the members of the Class also seek punitive damages against G.M. because its conduct was wanton, willful and malicious.

209.   Pursuant to 815 Ill. Comp. Stat. 505/7, Plaintiffs request that this Court enter an order enjoining G.M. from continuing its unfair and/or deceptive practices as alleged herein.

## COUNT X

**VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 Ill. Comp. Stat. 510/1, *et seq*.**
**(On Behalf of Plaintiffs Sullivan, Allison Clinton, and Amy Clinton and the Illinois State Class)**

210.   Plaintiffs Sullivan, Amy Clinton, Allison Clinton (the "Plaintiffs" in this Count), and the Illinois State Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

211.   This claim is brought on behalf of Plaintiffs and the Illinois State Class (the "Class" for purposes of this Count).

212.   The Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a) sets forth that:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person; … causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; … represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; … advertises goods or services with intent not to sell them as advertised; … [or] engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

213.   As described above, the Defective Vehicles sold or leased to Plaintiffs and the other members of the Class were not of the particular standard, quality, grade or characteristic represented by Old G.M. and G.M.

214.   G.M. has successor liability for the deceptive or unfair acts or practices of Old G.M.

215.   Plaintiffs and other members of the Class are persons likely to be damaged as a result of the conduct by Old G.M. and G.M. alleged above.  815 Ill. Comp. Stat. 510/3 provides that the Court may enter injunctive relief to prevent G.M. from continuing to engage in the deceptive conduct alleged, and to assess costs and attorneys' fees against G.M. upon finding that it willfully engaged in a deceptive trade practice.

## COUNT XI

### BREACH OF EXPRESS WARRANTY, 810 Ill. Comp. Stat. 5/2-213
### (On Behalf of Plaintiffs and the Illinois State Class)

216.   Plaintiffs Sullivan, Amy Clinton, Allison Clinton (the "Plaintiffs" for this Count), and the Illinois State Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

217.   This claim is brought on behalf of the Illinois State Class (the "Class" for purposes of this Count).

218.   Old G.M. was at all relevant times a merchant with respect to motor vehicles.

219.   In the course of selling the Defective Vehicles, Old G.M. expressly warranted to repair and adjust to correct defects in materials and workmanship of any part supplied by G.M.  G.M. has not repaired or adjusted, and has been unable to repair or adjust the Defective Vehicles' materials and workmanship defects described herein.

220.   These warranties were made, *inter alia*, in advertisements and in uniform statements made by G.M. to the public and consumers of the Defective Vehicles.  These affirmations and promises were part of the basis of the bargain between Old G.M. and G.M., on the one hand, and Plaintiffs and the other Class members, on the other.

221.  Old G.M. did not provide at the time of sale, and G.M. has not provided since then, G.M. Vehicles conforming to these express warranties.

222.  G.M. expressly assumed all liabilities arising under the written warranties of Old G.M.

223.  Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiffs and the other Class members whole.

224.  Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of other Class members, seeks all remedies as allowed by law.

225.  Moreover, at the time that Old G.M. warranted and sold the Defective Vehicles, it knew that the Defective Vehicles did not conform to the warranties and were inherently defective, and wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Vehicles.

226.  Plaintiffs and the other Class members were induced to purchase the Defective Vehicles under false and/or fraudulent pretenses and without the benefit of full disclosure of the problems described herein.

227.  Many of the damages flowing from the Defective Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as those incidental and consequential damages have already been suffered due to Old G.M.'s conduct as alleged herein, and due to G.M.'s failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

228.  As a direct and proximate result of the breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XII

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### Mich. Compl. L. Ann. §§ 445.901, *et seq*.
### (On Behalf of Plaintiff Saxson and the Michigan State Class)

229.   Plaintiff Saxson and the Michigan State Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

230.   This claim is brought on behalf of Plaintiff Saxson and the Michigan State Class (the "Class" for purposes of this Count).

231.   The Michigan Consumer Protection Act ("MCPA") makes unlawful any unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or commerce. MCPA § 445.903(1).

232.   Old G.M., G.M. and Plaintiff are each "persons" within the meaning of MCPA § 445.902(d).

233.   The sale of the Defective Vehicles to Plaintiff Saxson and the members of the Class occurred within the conduct of "trade or commerce" as defined by MCPA § 445.902(g).

234.   The conduct of Old G.M. and G.M., as set forth herein, constitutes unfair, unconscionable or deceptive methods, acts or practices in violation of the MCPA.

235.   G.M. has successor liability for the unfair, unconscionable or deceptive methods, acts or practices of Old G.M.

236.   Old G.M. and G.M. violated the MCPA by failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.  MCPA § 445.903(s).  Old G.M. and G.M. violated the MCPA by making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.  MCPA § 445.903(bb).  Old G.M. and G.M. also violated the MCPA by failing to reveal

facts that are material to the transaction in light of representations of fact made in a positive manner.  MCPA § 445.903(cc).

237.   The acts of Old G.M. and G.M. which constitute unfair, unconscionable or deceptive methods, acts or practices in violation of the MCPA include, but are not limited to, their manufacture and sale of the Defective Vehicles, their manufacture and sale of the Defective Vehicles, their failure to disclose and remedy the defective ignition switches in the Defective Vehicles, and their misrepresentations and/or omissions regarding the safety and reliability of the Defective Vehicles.

238.   The actions of Old G.M. and G.M. impact the public interest because Plaintiff Saxson and the other Class members were injured in exactly the same way as thousands of others purchasing and/or leasing the Defective Vehicles as a result of Old G.M.'s and G.M.'s generalized course of conduct.

239.   All of the wrongful acts or practices alleged herein occurred, and continues to occur, in the conduct of G.M.'s business.

240.   Plaintiff Saxson and the other Class members suffered ascertainable loss as a result of Old G.M.'s and G.M.'s conduct.  Plaintiff Saxson and the other Class members were injured and suffered economic damages as a result of G.M.'s conduct.

241.   Plaintiff Saxson and the other Class members overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and the Defective Vehicles have suffered a diminution in value as a result of the conduct described herein.

242.   Old G.M.'s and G.M.'s conduct proximately caused the injuries to Plaintiff Saxson and the other Class members.

243.   G.M. is liable to Plaintiff Saxson and the other Class members for damages in amounts to be proven at trial.

244.   Old G.M.'s and G.M.'s actions as set forth above occurred in the conduct of trade or commerce.

245.   G.M.'s actions impact the public interest because Plaintiff Saxson and the other members of the Class were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of G.M.'s generalized course of deception.

246.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of G.M.'s business.

247.   Plaintiff Saxson and the other Class members suffered ascertainable loss as a result of Old G.M.'s and G.M.'s conduct.  Plaintiff Saxson and the other members of the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their Defective Vehicles have suffered a diminution in value.

248.   Old G.M.'s and G.M.'s conduct proximately caused the injuries to Plaintiff Saxson and the other members of the Class.

249.   G.M. is liable to Plaintiff Saxson and the other members of the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually, and on behalf of the other members of the Nationwide, California, Florida, Illinois, and Michigan State and Statewide Classes (collectively hereafter "Statewide Classes") they respectively seek to represent, respectfully request that the Court enter judgment in their favor and against G.M. as follows:

A.   Declaring that this action is a proper class action and certifying the Nationwide and Statewide Classes requested herein, designating Plaintiffs as Nationwide and Statewide Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

B.     Enjoining G.M. from continuing the unfair or deceptive acts or practices alleged in this Complaint and requiring G.M. to repair the Defective Vehicles;

C.     Ordering G.M. to pay actual, compensatory and statutory damages to Plaintiffs and the other members of the Nationwide and Statewide Classes;

D.     Alternatively, if elected, ordering G.M. to repair the defective ignition switches or provide a comparable vehicle that does not have ignition switch defects;

E.     Ordering G.M. to pay punitive damages to Plaintiffs and the other members of the Nationwide and Statewide Classes;

F.     Ordering G.M. to pay pre- and post-judgment interest on any amounts awarded;

G.     Ordering G.M. to pay the costs of suit, including Plaintiffs' and the other Class members' reasonable attorneys' fees; and

H.     Granting such other and further equitable relief as this Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiffs pray for a jury trial on all triable issues and in all proceedings so triable.

DATED: March 27, 2014                    Respectfully submitted,

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP


By:   /s/*Betsy C. Manifold*
          BETSY C. MANIFOLD
          Email: manifold@whafh.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FRANCIS M. GREGOREK
gregorek@whafh.com
BETSY C. MANIFOLD
manifold@whafh.com
RACHELE R. RICKERT
rickert@whafh.com
MARISA C. LIVESAY
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

GREGORY MARK NESPOLE
nespole@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4400
Facsimile:  212/545-4653

Attorneys for Plaintiffs

GENERALMOTORS:20627.complaint

- 48 -

JS 44 (Rev. 12/12)

09-50026-mg Doc 12621-23 Filed 04/21/14 Entered 04/21/14 20:24:57 Exhibit
Case 3:14-cv-00713-JM-BGS Document 1-5 Filed 03/28/14 Page 51 of 56
Pg 51 of 56

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| ELIZABETH Y. GRUMET, MICHAEL SULLIVAN, AMY C. CLINTON, ALLISON C. CLINTON, KATELYN SAXSON, Individually, and On Behalf of All Others Similarly Situated | GENERAL MOTORS LLC |

**(b)**   County of Residence of First Listed Plaintiff    San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
750 B STREET, SUITE 2770
SAN DIEGO, CA 92101

Attorneys *(If Known)*

'14CV0713 JM    BGS

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury  - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☒ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1   Original Proceeding | ☐ 2   Removed from State Court | ☐ 3   Remanded from Appellate Court | ☐ 4   Reinstated or Reopened | ☐ 5   Transferred from Another District *(specify)* | ☐ 6   Multidistrict Litigation |

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. section 2301 et seq.,
Brief description of cause:
MAGNUSON-MOSS FEDERAL WARRANTY ACT

## VII.  REQUESTED IN COMPLAINT:

☒  CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:     ☒ Yes    ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
03/27/2014

SIGNATURE OF ATTORNEY OF RECORD
/s/Betsy C. Manifold

**FOR OFFICE USE ONLY**

RECEIPT # _____     AMOUNT _____     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

09-50026-mg    Doc 12621-23    Filed 04/21/14    Entered 04/21/14 20:24:57    Exhibit
Pg 52 of 56

Case 3:14-cv-00723-JM-BGS   Document 1-1   Filed 03/27/14   Page 7 of 2

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

SYMPHONY TOWERS

750 B STREET, SUITE 2770

SAN DIEGO, CA 92101

619-239-4599

BETSY C. MANIFOLD
619-234-3896
manifold@whafh.com

270 MADISON AVENUE
NEW YORK, NY 10016

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 WEST MONROE STREET, SUITE 1111
CHICAGO, IL 60603
312-984-0000

March 27, 2014

VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED

General Motors Company Advanced Tech.
422 Portage Ave.
Palo Alto, CA 94306

General Motors Co.
9150 Hermosa Ave.
Rancho Cucamonga, CA 91730

Re:   *Elizabeth Y. Grumet, et al., v. General Motors LLC*
       Notice of Violation of the California Consumers Legal Remedies Act

Dear Sir or Madam:

We send this letter on behalf of our client, Elizabeth Y. Grumet, a resident of California, as well as on behalf of a proposed class of all consumers who own, owned, lease or leased those vehicles currently identified as defective by General Motors LLC ("GM"), including: 2005-2007 Chevrolet Cobalt, 2005-2007 Pontiac G5; 2003-2007 Saturn Ion, 2006-2007 Chevrolet HHR, 2005-2006 Pontiac Pursuit (Canada), 2006-2007 Pontiac Solstice, and 2007 Saturn Sky ("Defective Vehicles"), in California from 2002 to the present. We write to advise you that GM has violated and continues to violate the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq.* We hereby ask that GM remedy such violations within thirty (30) days.

GM is engaging in unfair competition and unfair or deceptive acts or practices with regard to the manner in which GM failed to disclose and consciously concealed the ignition switch defects in the Defective Vehicles in violation of the Transportation Recall Enhancement, Accountability and Documentation Act to the National Highway Traffic Safety Administration or the public.

These activities are prohibited by California Civil Code section 1770(a), in particular by:

- representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

- representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

General Motors LLC
March 27, 2014
Page 2

- advertising goods and services with the intent not to sell them as advertised; and

- representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

California Civil Code § 1770(a)(5), (7), (9) and (16).

Our client has filed a complaint seeking injunctive relief simultaneous with this letter, and will amend such complaint to seek monetary relief under the CLRA unless, within thirty (30) days, GM corrects, repairs, or otherwise rectifies the violations specified above.

If GM fails to comply with this request within thirty (30) days, GM may be liable for the following monetary amounts under the Consumers Legal Remedies Act:

- Actual damages suffered;
- Punitive damages;
- Costs and attorney's fees related to suit; and
- Penalties of up to $5,000.00 for each incident where senior citizens have suffered substantial physical, emotional or economic damage resulting from GM's conduct.

It is our hope that GM will choose to correct these unlawful practices promptly. A failure to act within thirty (30) days will be considered a denial of this claim and our client will act accordingly. If you would like to discuss the matter, please do not hesitate to call us at (619) 239-4599. Otherwise, we look forward to GM immediately changing its practices and compensating Ms. Grumet and the other members of the proposed class identified above.

Sincerely,

Betsy C. Manifold

BCM/meb
Enclosures

GM:20636.1.TR

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Rancho Cucamonga

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

7012 1640 0002 3442 8093

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Palo Altoca

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

7012 1640 0002 3442 8086

I, Elizabeth Y. Grumet, hereby declare and state:

1.  I have personal knowledge of the facts stated herein and could competently testify thereto if called upon to do so.

2.  I am currently a resident of San Diego County and a Plaintiff in the above-entitled action.

3.  Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code § 1780(a).

4.  This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a county that is a proper place for trial of this action because Defendants do business in this District (the Southern District of California) and throughout the state of California.

5.  The Complaint filed in this matter contains causes of action for violations the Consumers Legal Remedies Act against General Motors LLC ("GM"), a Delaware limited liability company doing business nationwide, including California.

6.  I owned a 2004 Saturn Ion, which was originally purchased at Saturn of Capitol Expressway in San Jose, California in or around 2004, and I also owned a 2006 Saturn Ion, which was originally purchased at Saturn of Capitol Expressway in San Jose, California in or around 2006.

I declare under penalty of perjury under the laws of the State of California that the foregoing Declaration is true and correct, and was executed by me in the city of San Jose, California on March 26, 2014.

Elizabeth Y. Grumet

GENERALMOTORS.20632.affidavit

- 1 -