# Exhibit KK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| RANDALL ROUSH and<br>JENNIFER ROUSH, individually and on<br>behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GENERAL MOTORS LLC,<br><br>Serve at:<br>CSC of St. Louis County, Inc.<br>130 South Bemiston Avenue, Suite 303<br>Clayton, Missouri 63105,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Randall Roush and Jennifer Roush, on behalf of themselves and all others similarly situated, brings this Class Action Complaint against General Motors LLC ("GM" or "Defendant"). In support of their Complaint, Plaintiffs respectfully allege the following:

## OVERVIEW OF THE CASE

1. Plaintiffs bring this action on behalf of themselves and a proposed class of all other persons in Missouri who owned or leased the following GM vehicles on February 13, 2014: 2005-2010 Chevrolet Cobalt; 2005-2010 Pontiac G5; 2003-2007 Saturn ION; 2006-2011 Chevrolet HHR; 2006-2010 Pontiac Solstice; and 2007-2010 Saturn Sky (collectively the "Class Vehicles").

2. GM knew that a defect in Class Vehicles' ignition switches caused the switches to move out of the "run" position while the vehicles are in motion. The defect causes the vehicles to lose power, drivers to lose control, and airbags to fail to deploy.

3. Despite its knowledge, GM did not disclose the defect until February 2014, thereby allowing Plaintiffs and other Class members to continue driving and spending money on recalled vehicles that were defective and unsafe.

4. GM does not yet have a suitable repair available for the defect, and acknowledges that Class Vehicles are not safe to drive. As a result, hundreds of thousands of consumers are left with vehicles that can neither be safely driven nor repaired, and the resale value of the vehicles is materially diminished.

5. Plaintiffs bring this action to provide relief for consumers, and to hold GM accountable for its misconduct.

## PARTIES

6. Plaintiff Randall Roush is a citizen of Missouri, residing in Moniteau County. He is the current co-owner of a 2007 Chevrolet Cobalt manufactured and sold by GM.

7. Plaintiff Jennifer Roush is a citizen of Missouri, residing in Moniteau County. She is the current co-owner of a 2007 Chevrolet Cobalt manufactured and sold by GM.

8. General Motors LLC is a Delaware corporation with its principal place of business in Detroit, Michigan. General Motors LLC is registered to do business in the State of Missouri.

9. General Motors LLC is the successor in interest to General Motors Corporation. General Motors Corporation filed for bankruptcy in 2009; virtually of its all assets were sold to General Motors LLC during the bankruptcy. In that transaction, General Motors

LLC expressly assumed General Motor Corporation's liabilities related to recalled vehicles, vehicle warranties, and other liabilities.

10. At all relevant times, General Motors Corporation and its successor in interest General Motors LLC have been in the business of developing, producing and marketing cars and trucks worldwide. GM has a network of authorized dealers that sell GM vehicles and parts throughout Missouri, including in this district.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d).

12. This Court has personal jurisdiction over Defendant because GM conducts substantial business in this district.

13. Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides in this district.

## FACTUAL ALLEGATIONS

*Plaintiffs Randall Roush and Jennifer Roush*

14. Plaintiffs Randall Roush and Jennifer Roush currently own a 2007 Chevrolet Cobalt that was manufactured and sold by GM.

15. Plaintiffs purchased the vehicle for personal use.

16. Plaintiffs believed they were buying a safe and reliable car with no known safety defects.

17. Until GM announced its recall in early 2014, Plaintiffs did not know that the ignition switch was defective, that GM had known about the defect, or that people allegedly had died as a result of the defect.

{287770.DOCX }3

18.     Had Plaintiffs known of the defect, they would not have purchased the vehicle.  Now Plaintiffs are left with a vehicle with an acknowledged safety hazard, and GM has not offered a suitable repair.  Additionally, the resale value of Plaintiffs' vehicle is significantly diminished.

***GM's Recalls***

19.     On February 10, 2014, GM notified the National Highway Transportation Safety Administration ("NHTSA") that it was ordering a recall of some vehicles due to a defect in the ignition switch.

20.     GM publicly announced the initial recall on February 13, 2014.  The recall applied only to the 2005-2007 Chevy Cobalt and Pontiac G5.

21.     On February 24, 2014, GM added several vehicles to the recall, including the 2006-2007 Chevy HHR and Pontiac Solstice; the 2003-2007 Saturn Ion; and the 2007 Saturn Sky.

22.     On March 28, 2014, GM expanded the recall again to include the 2008-2010 Pontiac Solstice and G5; 2008-2010 Saturn Sky; 2008-2010 Chevy Cobalt; and 2008-2011 Chevy HHR.

23.     GM initially notified its dealers of the recall on February 26, 2014, and March 4, 2014.  The recall directs dealers to replace the ignition switch, but GM does not have a suitable repair procedure for the defective part, and replacement switches will not be available until at least April 2014.

24.     GM admits that the recalled vehicles are unsafe and the defect persists.  In the Q&A section of its website, GM states that "there is a risk, under certain conditions, that your ignition switch may move out of the 'run' position, resulting in a partial loss of electrical power and turning off the engine . . . If the ignition switch is not in the run

{287770.DOCX }4

position, the air bags may not deploy if the vehicle is involved in a crash." *See* www.gm.com/ignition-switch-recall.

### *GM Knew About the Defects Before 2014*

25.     Evidence suggests that GM knew about the faulty ignition switches as early as 2001, and that ignitions could easily switch from the "run" mode.

26.     For example, in 2006, GM issued a Service Bulletin that applied to several categories of recalled vehicles concerning the ignition switch. The Bulletin stated in part that "there is a potential for the driver to inadvertently turn off the ignition due to low ignition key cylinder torque/effect." The Bulletin advised dealers that "the customer should be advised of this potential and should take steps to prevent it – such as removing unessential items from their key chain." The Bulletin instructed dealers to apply an insert for the key ring to adjust it from a "slot" design to a "hole" design.[1]

27.     Similarly, in 2007, GM assigned an engineer to "track[] crashes in which Cobalts were involved in frontal impacts and the airbags did not deploy . . . ." Data from four of those crashes revealed that the ignition was in the "accessory" position, meaning that the ignition switch had failed and the vehicle lacked electrical power at the time of the collision. *See* GM letter to NHTSA 14V-047 (March 11, 2014), at Attachment B.

28.     During this time period, reports of deaths associated with airbag non-deployment in Saturn Ions and Chevy Cobalts began to mount. According to the Center for Auto Safety, between 2003 and 2012, approximately 303 deaths occurred in the Ions and Cobalts where the airbag failed to deploy in non-rear impact crashes.[2] The Center's

---

[1]     *See*     www.thetruthaboutcars.com/2014/02/gm-knew-about-deadly-defect-for-a-decade/(quoting Service Bulletin 05-02-35-007A (Oct. 25, 2006)).

[2]     *See* Center for Auto Safety letter to NHTSA (March 13, 2014).

{287770.DOCX } 5

analysis did not include other categories of recalled vehicles. Despite these ominous warnings concerning the failure of airbags to deploy, GM did nothing.

29. In July 2011, GM convened staff from several departments to initiate its Field Performance Evaluation ("FPE") process. During the next two and a half years, the FPE process revealed torque variation among ignition switches in different GM models, potentially causing ignition switches to fail. *Id.*

30. In May 2012, as part of the FPE, a GM engineer began a forensic study of steering columns and ignition switches in several recalled models. Certain of the switches, specifically those in 2007 model year and earlier vehicles, demonstrated performance shortfalls.

31. Ultimately, after GM retained outside experts to assess its ignition switches, the company decided to take action and initiate the early 2014 recalls, but only after several deaths and an FPE process that was initiated in mid-2011.

32. In testimony before Congress on April 1, 2014, GM Chief Executive Officer Mary Barra conceded that GM waited too long to disclose the ignition switch defects. She stated, "Sitting here today, I cannot tell you why it took so long for a safety defect to be announced for this program, but I can tell you we will find out."[3]

*Plaintiffs and Class Members Have Been Damaged*

33. The defects in GM's vehicles have caused damage to Plaintiffs and other members of the proposed Class because a vehicle with a serious safety risk is worth less than a comparable vehicle without the defect. Plaintiffs and other members of the Class

---

[3] Barra also admitted that, as early as 2004, GM was aware of concerns about the ignition switches and conducted an internal review. GM did not disclose this internal review to regulators or consumers.

{287770.DOCX }6

are now burdened with unsafe vehicles that are worth significantly less than they would have been but for GM's failure to disclose the defects.

## CLASS ACTION ALLEGATIONS

34.     Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following proposed class:

> All persons in Missouri who owned or leased a Class Vehicle on February 13, 2014.

35.     Excluded from the Class are Defendant, any affiliate, parent, employee or subsidiary of Defendant; any officer, director, or employee of Defendant, anyone employed by counsel for Plaintiffs in this action; any Judge to whom this case is assigned as well as his or her immediate family; and any individual claiming damages for personal injuries allegedly arising from the Class Vehicles.

36.     This action has been brought and may be properly maintained as a class action under Federal Rule of Civil Procedure 23.

37.     <u>Numerosity of the Class – Rule 23(a)(1)</u>.  Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their addresses can be obtained from information and records in GM's possession and control. Class members may be notified of the pendency of this action by mail or by published notice or other appropriate methods.

38.     <u>Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), 23(b)(3)</u>.  Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

{287770.DOCX } 7

  a. Whether the vehicles are defective;

  b. When GM became aware of the defects;

  c. Whether the defects are material;

  d. Whether GM concealed the defects;

  e. Whether GM profited from its concealment of the defect;

  f. Whether GM's conduct harmed Plaintiffs and the Class;

  g. Whether GM's conduct violated the Missouri Merchandising Practices Act;

  h. Whether Plaintiffs and the other Class members are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and/or a permanent injunction; and

  i. Whether Plaintiffs and the other Class members are entitled to damages and/or other monetary relief.

39. <u>Typicality – Rule 23(a)(3)</u>.  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased a vehicle that is subject to GM's recalls and continued to own it on February 13, 2014.

40. <u>Adequacy of Representation – Rule 23(a)(4)</u>.  Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously. Plaintiffs have no interests adverse or antagonistic to those of the Class.

41. <u>Superiority - Rule 23(b)(3)</u>.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared

with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

42. In the alternative, the Class may be certified under Rule 23 (b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

      c.    GM has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## TOLLING

43. Any applicable statute of limitations that might otherwise bar any Class member's claim has been tolled by GM's knowing and active concealment of the facts alleged above. Plaintiffs and Class members were ignorant of vital information essential to the pursuit of their claims. Plaintiffs and Class members could not reasonably have discovered that their GM vehicles were defective because GM did not provide relevant information about the defects to the NHTSA or to vehicle owners/lessors until shortly before Plaintiffs filed this action.

## FIRST CAUSE OF ACTION

**On Behalf of the Class for Violations of
Missouri's Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq*.**

44. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein. Plaintiffs assert this cause of action on behalf of the Class against Defendant.

45. Plaintiffs and GM are "persons" within the meaning of section 407.010(5).

46. GM's activities constitute the sale of "merchandise" within the meaning of section 407.010(4).

47. Plaintiffs purchased their 2007 Chevrolet Cobalt for personal use.

48. As set forth herein, GM's acts, practices and conduct violate section 407.020(1) in that, among other things, GM has used and/or continues to use unfair

{287770.DOCX }10

practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of Class Vehicles.

49.    GM's unfair, unlawful and deceptive acts, practices, and conduct include selling Class Vehicles with a material defect and concealing the existence of that defect, thereby endangering and harming Plaintiffs and Class members.  GM's conduct violates the MMPA.

50.    GM's conduct also violates the enabling regulations for the MMPA because it: (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; and (6) is unlawful. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.

51.    As a direct and proximate result of GM's unfair and deceptive acts, Plaintiffs and Class members have suffered damages in that they spent more money on Class Vehicles and related purchases than they otherwise would have and are left with vehicles that cannot be safely driven and which are of diminished value.

52.    Plaintiffs and Class members seek actual damages; a declaration that GM's methods, acts and practices violate the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.*; an injunction prohibiting GM from continuing to engage in such unlawful methods, acts, and practices; restitution; rescission; disgorgement of all profits obtained from GM's unlawful conduct; pre and post-judgment interest; punitive damages; attorneys' fees and costs; and any other relief that the Court deems necessary or proper.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated persons, request judgment and relief as follows:

1. For an order certifying the proposed Class, and appointing Plaintiffs and their counsel of record to represent the proposed Class;

2. For an order declaring that GM has violated the Missouri Merchandising Practices Act, codified at Mo. Rev. Stat. §§ 407.010 *et seq.*;

3. For an order awarding Plaintiffs and Class members damages and statutory damages in an amount to be proven at trial, including punitive damages, together with pre-trial and post-trial interest thereon;

4. For an order awarding Plaintiffs and Class members restitution, disgorgement, or other equitable relief as the Court deems proper;

5. For an order enjoining GM from continuing to engage in the unlawful business practices alleged herein;

6. For an order awarding Plaintiffs and the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

7. For an order awarding such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs, on behalf of themselves and all similarly situated persons, demand a trial by jury on all issues that are triable to a jury.

DATED: April 4, 2014

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Matthew L. Dameron
Matthew L. Dameron, MO Bar No. 52093
Michael A. Williams, MO Bar No. 47538
Eric L. Dirks, MO Bar No. 54921
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
(816) 876-2600; fax (816) 221-8763
matt@williamsdirks.com
dirks@williamsdirks.com