# Exhibit LL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA E. FORBES, Individually and On Behalf of All Others Similarly Situated, | CIVIL ACTION NO.: _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | |
| GENERAL MOTORS, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Debra E. Forbes ("Plaintiff"), on behalf of herself individually and on behalf of all similarly situated persons, bring this action against Defendant General Motors LLC ("GM") and allege:

## INTRODUCTION

This lawsuit arises out of the warranty, common law, deceptive trade practices and consumer protection act obligations of GM, and GM's breach of those obligations.

1. An auto manufacturer should never make profits more important than safety and should never conceal defects that exist in its vehicles from consumers or the public. GM's Vehicle Safety Chief, Jeff Boyer, has stated that: "Nothing is more important than the safety of our customers in the vehicles they drive." Yet GM failed to live up to this commitment.

1

2. The first priority of a car manufacturer should be to ensure that it vehicles are safe, and particularly that its vehicles have operable ignition systems, airbags, power-steering, power brakes, and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision. In addition, a car manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely, and its critical safety systems (such as engine control, braking, and airbag systems) work properly until such time as the driver shuts the vehicle down.

3. Moreover, a manufacturer that is aware of dangerous design defects that cause its vehicles to shut down during operation, or the vehicles' airbags not to deploy, must promptly disclose and remedy such defects.

4. While promoting the safety and reliability of its vehicles, GM concealed a defect that caused its vehicles to have a sudden engine power loss. Try as it may to conceal this defect, it came to light in a recent recall.

5. Even following the recall, no suitable repair procedure has been made available to vehicle owners. The vehicles in question thus remain unsafe to drive (as GM has tacitly acknowledged), yet GM has not told drivers that continuing to drive their vehicles jeopardizes their lives and safety, or instructed them to refrain from driving their vehicles until an effective repair procedure is available. As a result, the value of these vehicles has been significantly diminished,

## PARTIES

6. Plaintiff Debra E. Forbes purchased a Chevrolet Cobalt in 2007.

7. Plaintiff was and is a resident of the State of Alabama.

8. Defendant General Motors, LLC is a Delaware limited liability company with its principal place of business in Michigan. The sole member of GM is General Motors Holdings, LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings, LLC's sole member is General Motors Company, a Delaware corporation with its principal place of business in Michigan.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C.A. § 1332(d), in that the aggregate claims of the Class, exclusive of interest and costs, exceed the sum of $5,000,000. There are more than 100 class members and more than two-thirds of the Class is diverse from GM.

10. This Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's and putative Class members' claims occurred within this District. Defendant is authorized to do business in this District and is subject to personal jurisdiction in this District.

## NATURE OF THE CASE

12.     Since at least 2003, GM has sold millions of vehicles throughout the United States and worldwide with a safety defect in which the vehicle's ignition switch can unintentionally move from the "run" position to the "accessory" or "off" position, resulting in a loss of power, vehicle speed control, power steering and braking, as well as a failure of the vehicle's airbags to deploy.

13.     GM began installing these ignition switch systems in models from at least 2003 through at least 2007, and possibly later. GM promised that these new systems would operate safely and reliably. This promise turned out to be false in several material respects. In reality, GM concealed and did not fix, a serious quality and safety problem plaguing its vehicles.

14.     Worse yet, the defects in GM's vehicles could have been easily avoided.

15.     From 2004 (and quite possible as early as 2001), to the present, GM received reports of crashes and injuries that put it on notice of the serious safety issues with its ignition switch system.

16.     Yet, despite the dangerous nature of this defect and its effects on critical safety systems, GM concealed its existence and failed to remedy the problem.

17.     Despite notice of the defect in its vehicles, GM did not disclose to consumers that its vehicles – which GM for years had advertised as "safe" and "reliable" – were in fact neither safe nor reliable.

18.     GM's CEO, Mary Barra has admitted in a video message that:

"Something went wrong with our process in this instance, and terrible things happened."

19.     This case arises from GM's breach of its obligations and duties, including GM's failure to disclose that, as a result of defective ignition switches, at least 1.6 million GM vehicles have the propensity to shut down during normal driving conditions and create an extreme and unreasonable risk of accident, serious bodily harm, and death.

20.     GM's predecessor, General Motors Corporation ("Old GM") (sometimes, together with GM, "the Companies") also violated these rules by designing and marketing vehicles with defective ignition switches, and then by failing to disclose that defect even after it became aware that the ignition switch defect was causing fatal accidents. In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects.

21.     The defective ignition switches were manufactured by Delphi Automotive PLC ("Delphi"). Once a subsidiary of Old GM, Delphi spun-off from Old GM in 1999, becoming an independent publicly held corporation.

22.     Plaintiff alleges, based on information and belief, that Delphi knew its ignition switches were defective. Nevertheless, Delphi continued to manufacture and sell the defective ignition switch systems, which it knew would be used in the vehicles of Plaintiff and the Class.

5

23. Plaintiff brings this action for a Class of all persons in the United States who currently own or lease one or more of the following GM vehicles: 2005-2010 Chevrolet Cobalt; 2003-2007 Saturn Ion; 2003-2010 Pontiac G5; 2005-2011 Chevrolet HHR; 2006-2010 Pontiac Solstice; and 2007-2010 Saturn Sky (hereinafter "Defective Vehicles").

24. Plaintiff believes that there are other GM vehicles, which suffer from the same or substantially similar ignition switch defects as the Defective Vehicles identified above. Accordingly, Plaintiff will supplement the list of Defective Vehicles to include additional GM vehicles that have defective ignition switches, which result in a loss of vehicle speed control, loss of braking control, and airbag non-deployment.

25. In the alternative to their nationwide class claims, Plaintiff also brings claims under the laws of the States that have consumer protection statutes on behalf of the respective residents of each of those States who currently own one or more of the Defective Vehicles.

26. The Defective Vehicles are defective and dangerous for multiple reasons, including the following (collectively, the "ignition switch defects"):

    a. The ignition switches can inadvertently shut off the engine and vehicle electrical system during normal driving conditions;

    b. When the engine and the electrical system shut down, the power steering and power brakes also shut down, creating a serious risk of accident; and

    c. When the electrical system shuts down, the vehicle's airbags are disabled, creating a serious risk of serious bodily harm or death if an accident occurs.

6

27. The ignition switch defects make the Defective Vehicles unreasonably dangerous. Because of the defects, the Defective Vehicles are likely to be involved in accidents, and, if accidents occur, there is an unreasonable and extreme risk of serious bodily harm or death to the vehicle's occupants and others in the vicinity.

28. GM admits to at least 13 deaths as a result of the ignition switch defects, but the actual number is believed to be much higher

29. The ignition switch defects present a significant and unreasonable safety risk exposing Defective Vehicle owners, their passengers and others in the vicinity to a risk of serious injury or death.

30. For many years, GM has known of the ignition switch defects that exist in millions of Defective Vehicles sold in the United States. But, to protect its profits and maximize sales, GM concealed the defects and their tragic consequences and allowed unsuspecting vehicle owners to continue driving highly dangerous vehicles.

31. Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act"),[1] and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defect.[2] If it is determined that the vehicle is defective, the

---

[1] 49 U.S.C.§§ 30101-30170
[2] 49 U.S.C. § 30118(c)(1) & (2).

7

manufacturer must notify vehicle owners, purchasers, and dealers of the defect and must remedy the defect.[3]

32. GM also violated the TREAD Act by failing to timely inform NHTSA of the ignition switch defects and allowed cars to remain on the road with these defects. These same acts and omissions also violated various State consumer protection laws as detailed below.

33. Plaintiff and the Class have been damaged by GM's misrepresentations, concealment and non-disclosure of the ignition switch defects in the Defective Vehicles, as they are now holding highly dangerous vehicles whose value has greatly diminished because of GM's failure to timely disclose the serious defect.

34. Plaintiff and the Class either paid more for the Defective Vehicles than they would have had they known of the ignition switch defects, or they would not have purchased the Defective Vehicles at all had they known of the defects.

## SUCCESSOR LIABILITY

35. As discussed above, GM expressly assumed certain obligations under, *inter alia*, the TREAD Act, and is liable for its non-disclosure and concealment of the ignition switch defects from the date of its formation on July 10, 2009.

36. GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM, for the following reasons:

---

[3] 49 U.S.C. § 30118(b)(2)(A) & (B)

8

- GM admits that it knew of the ignition system defects from the very date of its formation;
- GM has continued in the business of designing, manufacturing, and marketing vehicles, including at least some of the same vehicles as Old GM;
- GM retained the bulk of the employees of Old GM;
- GM acquired owned and leased real property of Old GM, including all machinery, equipment, tools, information technology, product inventory, and intellectual property;
- GM acquired the contracts, books, and records of Old GM; and
- GM acquired all goodwill and other intangible personal property of Old GM.

## TOLLING OF THE STATUTE OF LIMITATIONS

37. All applicable statutes of limitation have been tolled by GMs knowing and active fraudulent concealment and denial of the facts alleged herein. Plaintiff and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Old GM and GM did not report information within their knowledge to federal authorities (NHTSA) or consumers, nor would a reasonable and diligent investigation have disclosed that Old GM and GM had information in their possession about the existence and dangerousness of the defect and opted to conceal that information until shortly before this class action was filed.

38. Indeed, Old GM instructed its service shops to provide Defective Vehicle owners with a new key ring if they complained about unintended shut down, rather than admit what Old GM knew – that the ignition switches were dangerously defective and warranted replacement with a properly designed and built ignition

9

system.

39. Old GM and GM were, and GM remains, under a continuing duty to disclose to NHTSA, Plaintiff, and the Class the true character, quality, and nature of the Defective Vehicles; that this defect is based on dangerous, inadequate, and defective design and/or substandard materials; and that it will require repair, poses a severe safety concern, and diminishes the value of the Defective Vehicles.

40. Because of the active concealment by Old GM and GM, any and all limitations periods otherwise applicable to Plaintiff's claims have been tolled.

## CLASS ALLEGATIONS

41. Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself/herself and a Class initially defined as follows:

> All persons in the United States who own/owned or lease/leased one or more of the following vehicles: 2005-2010 Chevrolet Cobalt; 2003-2007 Saturn Ion; 2003-2010 Pontiac G5; 2005-2011 Chevrolet HHR; 2006-2010 Pontiac Solstice; and 2007-2010 Saturn Sky. This list will be supplemented to include additional GM vehicles that have the defective ignition switches which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.
>
> The Class excludes GM and any entity in which GM has a controlling interest, and its officers, directors, legal representatives, successors and assigns. The Class also excludes any entity in which GM has or had a controlling interest, and its officers, directors, legal representatives, successors and assigns.

42. The Class is so numerous that joinder of all members is impracticable. Millions of class members purchased defective vehicles. Class members are readily identifiable from records in GM's possession, custody of control.

10

43. Common questions of law and fact exist and predominate over any questions affecting individual members of the Class. Common questions include, but are not limited to:

- Whether GM and its predecessor had knowledge of the defect prior to its issuance of the current safety recall;
- Whether GM and its predecessor concealed defects affecting the Defective Vehicles;
- Whether GM and its predecessor misrepresented the safety of the Defective Vehicles;
- Whether GM and its predecessor's misrepresentations and omissions regarding the safety and quality of its vehicles were likely to deceive a reasonable person;
- Whether a reasonable customer would pay less for a car that had the ignition defect;
- Whether a reasonable customer would pay less for a vehicle that did not conform to GM and its predecessor's assurances of quality;
- Whether GM and its predecessor breached its applicable warranties;
- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and
- Whether injunctive relief enjoining the reoccurrence of Defendant's conduct and/or declaratory relief that such conduct is unlawful, is warranted.

44. Plaintiff's claims are typical of the Claims of the Class because Plaintiff and Class members purchased vehicles that contain defective parts. Neither Plaintiffs nor the Class members would have purchased the Defective Vehicles had they known of the defects in the vehicles. Plaintiff and Class members' claims arise from the same course of conduct. Plaintiff's claims are based on the same legal theories of Class members.

11

45. Plaintiff will fully and adequately protect the interests of other members of the Class and have retained counsel who are experience and qualified in prosecuting class actions. Neither Plaintiff or her counsel have interests that conflicted with the interest of the Class members.

46. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because it is economically impracticable for members of the Class to prosecute individual action. Prosecution as a class action will eliminate the possibility of repetitious and redundant litigation and a class action will enable claims to be handled in an orderly manner.

47. Class action status is also warranted because GM has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (FEDERAL "LEMON LAW") 15 U.S.C. §§ 2301 et seq.

48. Plaintiff brings this Count on behalf of the Class.

49. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

50. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301 (3).

12

51. GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301 (4)-(5).

52. The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301(1).

53. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

54. GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301(6). The Defective Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

55. GM breached these warranties as described in more detail above. Without limitation, the Defective Vehicles share a common design defect in that they are equipped with defective key systems that can suddenly fail during normal operation, leaving occupants of the Defective Vehicles vulnerable to crashes, serious injury, and death. GM has admitted that the Defective Vehicles are defective in issuing its recall.

56. Plaintiff and each of the other Class members have had sufficient direct dealings with either GM or its agents (dealerships) to establish privity of contract between GM. On the one hand, and Plaintiff and the other Class members, on the other hand. Nonetheless privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between GM and its dealers, and specifically, of GM's implied warranties. The

13

dealers were not intended to be the ultimate consumers of the Defective Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Finally, privity is also not required because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

57. Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Defective Vehicle, GM knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford GM a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

58. Plaintiff and the other Class members would suffer economic hardship if they returned their Defective Vehicles but did not receive the return of all payments made by them. Because GM is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Defective Vehicles by retaining them.

59. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of

14

$50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

## COUNT II
## BREACH OF CONTRACT

60. Plaintiff incorporates each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

61. Plaintiff and Class members were parties to actual or implied contracts with GM that required GM to properly and promptly notify Plaintiff and Class members about safety issues with its vehicles.

62. Defendant breached its agreements with Plaintiff and Class members by failing to properly and promptly notify Plaintiff and Class members about safety issues with its vehicles. The Defendant's wrongful conduct constitutes breach of contract.

## COUNT III
## UNJUST ENRICHMENT

63. To the detriment of Plaintiff and the Class, GM benefited from and were unjustly enriched by GM's receipt of monies as a result of Plaintiff's and the other Class members' purchases of Defective Vehicles, due to GM's concealment and failure to disclose the risk of sudden unintended acceleration associated with the Defective Vehicles.

15

64. GM had knowledge of, voluntarily accepted, and retained these benefits.

65. GM received these benefits to the detriment of Plaintiff and the Class.

66. It would be inequitable, unconscionable, unfair, unlawful, and unjust for GM to retain these ill-gotten benefits.

67. As a result of GM's unjust enrichment, Plaintiff and the Class are entitled to restitution and disgorgement in an amount to be proven at trial.

## JURY TRIAL DEMANDED

68. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of the other members of the Class she respectively seeks to represent, respectfully request that the Court enter judgment in their favor and against GM as follows:

A. Declaring that this action is a proper class action and certifying the Class requested herein, designating Plaintiff as Class Representatives, and appointing Plaintiff's attorneys as Class Counsel;

B. Enjoining GM from continuing the unfair or deceptive acts or practices alleged in this Complaint and requiring GM to repair the Defective Vehicles;

C. Ordering GM to pay actual, compensatory and statutory damages to Plaintiff and the other members of the Class;

D. Alternatively, if elected, ordering GM to repair the defective ignition switches or provide a comparable vehicle that does not have ignition switch defects;

E. Ordering GM to pay punitive damages to Plaintiff and members of the Class;

F. Ordering GM to pay pre- and post-judgment interest on any amounts awarded;

G. Ordering GM to pay the costs of suit, including Plaintiff and the other Class members' reasonable attorneys' fees; and

H. Granting such other and further equitable relief as this Court may deem just and proper.

Date: April 4, 2014

Dianne M. Nast (PA Atty. ID No. 24424)
Daniel N. Gallucci (PA Atty. ID No. 81995)
Joanne E. Matusko (PA Atty. ID No. 91059)
NASTLAW, LLC
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
Telephone: (215) 923-9300
Facsimile: (215) 923-9302
Email: dnast@nastlaw.com
dgallucci@nastlaw.com
jmatusko@nastlaw.com

*Attorneys for Plaintiff*

17