# Exhibit VV

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

MICHELLE E. DESUTTER, ROBERT H.
WHITE and JOIE E. FERGUSON,
          Plaintiff(s)

**CLASS ACTION**
**JURY TRIAL DEMAND**

vs.

GENERAL MOTORS, LLC

          Defendant(s).

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, Michelle E. DeSutter ("DeSutter"), Robert H. White ("White") (and jointly as "Desutter/White") and Joie E. Ferguson ("Ferfuson"), individually and on behalf of all similarly situated persons, brings this action against Defendant, General Motors, LLC ("GM"), and alleges as follows:

### NATURE OF THE CASE

1.    This case arises from GM's unconscionable failure to disclose and active concealment of a defect in certain GM vehicles that renders them unsafe to drive and has killed at least 12 innocent victims and possibly hundreds more.

2.    The defect involves the vehicles' ignition switch system, which is dangerously susceptible to failure during normal and foreseeable driving conditions (the "Ignition Switch Defect"). When the system fails, the switch turns from the "Run" (or "On") position to either the "Off" or the "accessory" position, which then results in a loss of power, speed control, and braking, as well as a disabling of the vehicle's airbags.

3.    The vehicles that have this defect ("Defective Vehicles") are:

Plaintiff v. General Motors, LLC
Class Action Complaint

- 2003-2007 Saturn Ion

- 2007 Saturn Sky

- 2005-2007 Pontiac G5

- 2006-2007 Pontiac Solstice

- 2005-2007 Chevrolet Cobalt

- 2006-2007 Chevrolet HHR

4.     So far, there are approximately 1.6 million Defective Vehicles.

5.     GM, acknowledging that "[s]omething went wrong with our process in this instance and terrible things happened," has recalled the Defective Vehicles to replace their ignition switch systems. Merely replacing the ignition switch systems, however, will not completely solve the problem or make the Defective Vehicles safe, because the defect also includes the location of the ignition switch, a lack of adequate protection of the ignition switch from forces of inadvertent driver contact, and the type of key that is used.

6.     Plaintiffs bring this action on behalf of a Class of all persons in the United States who currently own or lease one or more Defective Vehicles.

7.     Plaintiffs also bring this action for a subclass of Florida residents who own or lease one or more Defective Vehicles.

8.     GM's gross misconduct has harmed Plaintiffs and Class Members and caused them actual damages. Plaintiff and Class Members did not receive the benefit of their bargains as purchasers and lessees, as they received vehicles that were less safe, less useful, and of lower quality than represented. Plaintiffs and Class Members contracted to purchase vehicles that do

Plaintiff v. General Motors, LLC
Class Action Complaint

not unexpectedly turn off and become uncontrollable without airbag protection, but because of the Ignition Switch Defect, received defective vehicles that do unexpectedly turn off and become uncontrollable without airbag protection. Plaintiffs and Class Members thus overpaid for their vehicles or made lease payments that were too high. Plaintiffs and Class Members would not have paid as much for their vehicles or made as high lease payments had the Ignition Switch Defect been disclosed. As a result of publicity regarding the Ignition Switch Defect and GM's misconduct, the value of the Defective Vehicles has diminished, and GM's offer to replace the ignition switch system does not adequately address the diminished value of Plaintiffs and Class Members' vehicles.

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because the amount in controversy for the Class exceeds $5,000,000, exclusive of interest and costs, there are more than 100 class members, and more than two-thirds of the Class is diverse from Defendant.

10.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in this District, and some of the actions giving rise to the complaint took place in this District.

11.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant has caused harm to Class Members residing in this District.

## PARTIES

3

Plaintiff v. General Motors, LLC
Class Action Complaint

12.     Plaintiffs DeSutter, White and Ferguson are all residents of Royal Palm Beach,

Palm Beach County, Florida. DeSutter and White co-own a 2006 Saturn Ion, which they bought

new; Plaintiff Ferguson owns a 2006 Chevrolet Cobalt, which she bought new. DeSutter/White

chose the Saturn in part because they wanted a safely designed and manufactured vehicle and

they understood that Saturns had a reputation for being high-quality, durable, and safe vehicles.

Ferguson chose the Cobalt in part because she wanted a safely designed and manufactured

vehicle and she understood that Cobalt had a reputation for being high-quality, durable, and safe

vehicles. Plaintiffs did not learn of the Ignition Switch Defect until about March 2014. However,

a few years ago, when Plaintiff DeSutter was driving her Saturn Ion  her ignition went off as she

was pulling into her driveway at home on June 9, 2013 and the vehicle unexpectedly stalled.

Plaintiff Ferguson suffered her ignition problem on Route 95 in Palm Beach County in August

2006. Had GM disclosed the Ignition Switch Defect, Plaintiffs DeSutter/White would not have

purchased their Saturn and Ferguson would not have purchased her Cobalt, or both would have

paid less than they did, and would not have retained the vehicles.

13.     Defendant GM is a limited liability company formed under the laws of Delaware

with its principal place of business in Michigan. GM was incorporated in 2009, and on July 10,

2009, acquired substantially all the assets and assumed certain liabilities of General Motors

Corporation ("Old GM") through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy

Code, pursuant to a Master Sales and Purchase Agreement ("Agreement").

14.     Under the Agreement, GM expressly assumed the following obligation:

From and after the Closing, Purchaser [GM] shall comply with the certification,
reporting and recall requirements of the National Traffic and Motor Vehicle Act,

4

Plaintiff v. General Motors, LLC
Class Action Complaint

the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code, and similar laws, in each case, to the extent applicable in respect of vehicles and vehicles parts manufactured or distributed by [Old GM].

15.    GM also expressly assumed:

All Liabilities arising under express written warranties of [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by [Old GM] or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws.

16.    GM is also liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint, because GM acquired and operated Old GM and ran it as a continuing business enterprise, utilizing substantially the same brand names, logos, plants, offices, leadership, personnel, engineers, and employees, GM was aware from its inception of the Ignition Switch Defect and Power Steering Defect in the Defective Vehicles, and GM and Old GM concealed both Defects from the public, regulators, and the bankruptcy court. Because GM is liable for the wrongful conduct of Old GM, there is no need to distinguish between the conduct of Old GM and GM, and the complaint will hereinafter simply refer to GM as the corporate actor when describing the relevant facts.

## FACTUAL ALLEGATIONS

17.    In documents filed with the federal government, GM has admitted that it learned of the Ignition Switch Defect in 2001, during the pre-preproduction development of the Saturn Ion. At that time, an internal report indicated that the car was stalling due to problems with the

Plaintiff v. General Motors, LLC
Class Action Complaint

ignition switch, which included "low detent plunger force" in the ignition switch. The report stated that "an ignition switch design change" solved the problem, but it obviously did not.

18.     GM nonetheless began manufacturing and selling the Ion in 2002 (for the 2003 model year) with the defective ignition switch systems, which were manufactured by Delphi Automotive.

19.     In 2003, an internal GM inquiry documented that a service technician observed the Ion stall after the ignition had switched off while driving. The technician noticed that "[t]he owner had several keys on the key ring," and the report stated that "[t]he additional weight of the keys had worn out the ignition switch." The technician replaced the ignition switch, and the inquiry was closed without further action.

20.     In 2004, three GM employees driving production Ions reported that their cars had stalled from a loose ignition switch. "The switch should be raised at least one inch toward the wiper stalk. This is a basic design flaw and should be corrected if we want repeat sales." one engineer reported.

21.     Despite these reports, after considering "lead time required, cost, and effectiveness," GM decided to do nothing.

22.     Even worse, when GM began manufacturing and selling the Chevrolet Cobalt in 2004 (for the 2005 model year), which was essentially the same car as the Ion, it installed the same ignition switch system as it installed in the Ion.

23.     Soon after the Cobalt entered the market, GM began receiving complaints about incidents of vehicles losing engine power, including instances in which the key moved out of the

Plaintiff v. General Motors, LLC
Class Action Complaint

"run" position when a driver inadvertently contacted the key or steering column. Engineering inquiries, known within GM as Problem Resolution Tracking System ("PRTS") reports, were opened to assess the issue.

24.     In February 2005, GM engineers concluded that the problem had two causes: "a lower torque detent in the ignition switch . . . [and the] low position of the lock module on the [steering] column." Again, however, GM decided not to take action.

25.     During the course of a PRTS opened in May 2005, an engineer proposed that GM redesign the key head from a "slotted" to a "hole" configuration. The slot design allowed the key chain to hang lower on the key, which placed more torque on the ignition switch when the chain was contacted or moved. The proposal was initially approved, but later cancelled.

26.     In June 2005, the New York Times reported that Chevrolet dealers were telling customers to lighten their key rings to prevent intermittent stalling and the loss of electrical power in their cars. The article included a statement from Alan Adler, GM's Manager for Safety Communications, in which he reassured the public that the problem only occurred in "rare cases when a combination of factors is present," that customers "can virtually eliminate this possibility by taking several steps, including removing nonessential material from their key rings," and that "when [the stalling] happens, the Cobalt is still controllable" and the "engine can be restarted after shifting to neutral."

27.     These statements were false because GM's internal documents showed that these incidents occurred when drivers were using keys with the standard key fob, and that removing non-essential items from the key ring would not "virtually eliminate" the risk of an incident.

Plaintiff v. General Motors, LLC
Class Action Complaint

28.     In July 2005, Amber Marie Rose, who was 16-years old, was killed when she drove her 2005 Cobalt off the road and struck a tree. Her driver's side airbag did not deploy, even though it should have given the circumstances of the head-on crash, and the car's ignition switch was in the "accessory/off" position at the time of the crash. GM learned of these facts in 2005 and documented them in an internal investigation file.

29.     Instead of fixing the defect, in December 2005, GM issued a service bulletin to its dealers that reiterated much of the same message Adler delivered earlier in the year. It indicated that the possibility of the driver inadvertently turning off the ignition was more likely to occur if the driver is short and has a large or heavy key chain, and recommended that drivers remove unessential items from key chains. In addition, it informed dealers that it had developed an insert for the key ring to prevent it from moving up and down in the slot, and that the key ring had been replaced with a smaller design that would not hang as low as in the past. The service bulletin applied to 2003-06 Saturn Ions, 2005-06 Chevrolet Cobalts, the 2006 Chevrolet HHR, and the 2006 Pontiac Solstice, all of which were equipped with the same defective ignition switch system.

30.     In October 2006, GM updated its prior service bulletin to include the 2007 Saturn Ion, the 2007 Saturn Sky, the 2007 Chevrolet Cobalt, the 2007 Chevrolet HHR, the 2007 Pontiac G5, and the 2007 Pontiac Solstice.

31.     In 2006, at least two fatal accidents involving Cobalts occurred in which the cars' data recorders indicated that the ignition switches were in the "accessory" position and the front airbags failed to deploy. GM learned of this information in 2006.

Plaintiff v. General Motors, LLC
Class Action Complaint

32.    In 2007 and 2008, GM became aware of at least four more such fatal accidents.

33.    NHTSA's Fatal Analysis Reporting System (FARS) reveals 303 deaths of front seat occupants in 2005-07 Cobalts and 2003-07 Ions where the airbag failed to deploy in non-rear impact crashes.

34.    GM finally made some changes to the design of the ignition switch system in 2006 to include a new detent plunger and spring. The new switch, however, did not receive a new part number, which is considered a "cardinal sin" in the engineering community, and further concealed the defect in the switch that was installed in the Defective Vehicles.

35.    In 2012, GM engineers studied 44 vehicles across a range of make and model years, and results revealed that vehicles tested from model years 2003 through 2007 exhibited torque performance below the original specifications established by GM. Rather than immediately notify NHTSA of the results of this study or conduct a recall, GM continued to conceal the nature of the Ignition Switch Defect.

36.    In April 2013, GM hired an outside engineering consulting firm to investigate the ignition switch system. The external report concluded that ignition switches installed in early model Cobalt and Ion vehicles did not meet GM's torque specification. Rather than immediately notify NHTSA of the results of this report, GM continued to conceal the nature of the Ignition Switch Defect.

37.    Despite its utter disregard for public safety, GM vehicles have been marketed based on safety from 2002 through the present. For example, in 2005, Chevrolet emphasized on its website that "[y]our family's safety is important to us . . . . That's why every Chevrolet is

Plaintiff v. General Motors, LLC
Class Action Complaint

designed with a comprehensive list of safety and security features to help give you peace of mind." Likewise, in advertisements for Saturns, GM utilized the slogan, "Saturn. People First," and stated that, "… it's about things like reliability, durability, and of course, safety. That's where we started when developing our new line of cars."

38.     In February 2014, almost thirteen years after first recognizing the defect, GM finally admitted publicly that the ignition switch system is defective and agreed to recall the Defective Vehicles to replace the old ignition switch with the re-designed version.

39.     This recall is insufficient because it does not address the location of the ignition switch system or how low the key fob hangs on the steering column, all of which create a risk of inadvertent driver contact and an inadvertent turning of the switch.

40.     Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act"), 49 U.S.C. §§ 30101-30170, and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defects. If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers, and dealers of the defect and must remedy the defect. GM repeatedly violated the TREAD Act by actively concealing information about the Ignition Switch Defect for more than a decade.

41.     Throughout the relevant period, GM possessed vastly superior knowledge and information to that of consumers — if not exclusive information — about the design and function on the ignition switches in the Defective Vehicles and the existence of the defects in those vehicles.

Plaintiff v. General Motors, LLC
Class Action Complaint

42.     The Ignition Switch Defect has caused actual damages to Plaintiffs and the Class.

43.     A vehicle purchased, leased or retained with a serious safety defect is worth less than the equivalent vehicle leased, purchased or retained without the defect.

44.     A vehicle purchased, leased or retained under the reasonable assumption that it is safe is worth more than a vehicle known to be subject to the unreasonable risk of catastrophic accident because of the ignition switch defects.

45.     Purchasers and lessees paid more for the Defective Vehicles, through a higher purchase price or higher lease payments, than they would have had the ignition switch defects been disclosed. Plaintiffs and the Class overpaid for their Defective Vehicles. Because of the concealed Ignition Switch Defect, Plaintiffs and Class Members did not receive the benefit of their bargains.

46.     Additionally, as a result of publicity regarding the Ignition Switch Defect and GM's misconduct, the value of the Defective Vehicles has diminished, and GM's offer to replace the ignition switch system does not adequately address the diminished value of Plaintiff's and Class Members' vehicles. Plaintiff and the Class are stuck with unsafe vehicles that are now worth less than they would have been but for GM's wrongful conduct.

## TOLLING OF THE STATUTES OF LIMITATION

47.     All applicable statutes of limitation have been tolled by GM's knowing and active fraudulent concealment and denial of the Ignition Switch Defect. GM has been aware of the Ignition Switch Defect since at least 2001, and has concealed from Plaintiff, Class Members, the public, and the government the complete nature of the Ignition Switch Defect.

Plaintiff v. General Motors, LLC
Class Action Complaint

48.     Even now, after the Defective Vehicles have been recalled, GM continues to downplay the significance, danger, and nature of the Ignition Switch Defect.

49.     Plaintiffs and Class members did not discover and could not have discovered with reasonable diligence the facts that would have caused a reasonable person to suspect that the Ignition Switch Defect existed or that GM did not report information within its knowledge regarding the existence of a dangerous defect to federal authorities or consumers until shortly before this class action was filed.

50.     GM was and remains under a continuing duty to disclose to NHTSA, Plaintiffs and Class Members the true character, quality, and nature of the Defective Vehicles. GM actively concealed the true character, quality, and nature of the Defective Vehicles. Plaintiff and Class Members relied on GM's active concealment of these facts. GM is therefore estopped from relying on any statutes of limitation in this action.

## CLASS ALLEGATIONS

51.     Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and a Class initially defined as follows:
All persons in the United States who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2005-07 Pontiac G5; 2006-07 Chevrolet HER; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").

52.     Included within the Class is a subclass of Florida residents who own or lease Defective Vehicles (the "Florida Subclass").

Plaintiff v. General Motors, LLC
Class Action Complaint

53.     Excluded from the Class are GM, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case. Also excluded are any individuals claiming damages from personal injuries allegedly arising from the Defective Vehicles.

54.     The Class can be readily identified using registration records, sales records, production records, and other information kept by GM or third parties in the usual course of business and within their control.

55.     As there are approximately 1.6 million Defective Vehicles, the number of Class Members is great enough that joinder is impracticable.

56.     The claims of Plaintiffs are typical of the claims of the Class, as Plaintiffs and Class Members alike purchased or leased Defective Vehicles and were harmed in the same way by GM's uniform misconduct.

57.     Plaintiffs will fairly and adequately protect the interests of the other members of the Class and Subclass. Plaintiff's counsel has substantial experience in prosecuting class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action, have the financial resources to do so, and do not have any interests adverse to the Class.

58.     There are numerous questions of law and fact that are common to the Class and the Subclass and predominate over questions affecting only individual members, including the following:

Plaintiff v. General Motors, LLC
Class Action Complaint

    (a) Whether the Defective Vehicles suffer from Ignition Switch Defects;

    (b)    Whether GM concealed the defects;

    (c)    Whether GM misrepresented that the Defective Vehicles were safe;

    (d)    Whether GM owed Plaintiff and Class Members a duty to disclose the Ignition Switch Defect;

    (e)    Whether GM engaged in fraudulent concealment;

    (f)    Whether GM engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective ignition switches; and

    (g)    Whether GM's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class.

59.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable. Likewise, because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

60.    The prosecution of separate actions by the individual Class members would also create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of conduct for GM. The conduct of this action as a class action

14

Plaintiff v. General Motors, LLC
Class Action Complaint

presents far fewer management difficulties, conserves judicial resources and the parties'
resources, and protects the rights of each Class member.

## COUNT I

### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT

(The MCPA, Michigan Comp. Laws Ann. § 445, et seq.)

61.    Plaintiffs incorporate by reference each preceding paragraph as though fully set
forth at length herein.

62.    This claim is brought on behalf of the nationwide Class.

63.    Plaintiffs and Class Members are all "persons" under the Michigan Consumer
Protection Act ("MCPA"), M.C.L.A. § 445.902(1)(d).

64.    GM was a "person" engaged in "trade or commerce" under the MCPA, M.C.L.A.
§ 445.902(1)(d) and (g).

65.    The MCPA prohibits any "unfair, unconscionable, or deceptive methods, acts, or
practices in the conduct of trade or commerce." M.C.L.A. § 445.903(1).

66.    GM's conduct, as alleged in the preceding paragraphs, constitutes unfair,
unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce. In
particular, GM violated the MCPA by

        a.      "Flailing to reveal a material fact, the omission of which tends to mislead
        or deceive the consumer, and which fact could not reasonably be known by the
        consumer," M.C.L.A. § 445.903(s);

15

Plaintiff v. General Motors, LLC
Class Action Complaint

b.     "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is," M.C.L.A. § 405.903(bb); and

c.     "Flailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner," M.C.L.A. § 405.903(cc).

67.     GM's practices that violated the MCPA include, without limitation, the following:

a.     GM represented that the Defective Vehicles had safety characteristics that they do not have;

b.     GM represented that the Defective Vehicles were of a particular standard, quality, or grade, when they are not;

c.     GM knew of the Ignition Switch Defect, but failed to disclose its existence or its complete nature, even though GM knew that such information was material to the transaction in light of GM's prior representations;

d.     GM failed to reveal material facts concerning the Ignition Switch Defect to Plaintiffs, Class Members, the public, and the government, the omission of which would tend to mislead or deceive consumers, and which could not be reasonably known to Plaintiffs, Class Members, the public, and the government;

e.     GM intended for Plaintiffs, Class Members, the public, and the government to rely on its misrepresentations and omissions, so that Plaintiffs and Class Members would purchase or lease the Defective Vehicles; and

f.     GM repeatedly violated the TREAD Act.

Plaintiff v. General Motors, LLC
Class Action Complaint

68.     GM's acts and practices were unfair and unconscionable, because its acts and practices offend established public policy, and because the harm GM caused consumers greatly outweighs any benefits associated with its acts and practices. GM's conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and the Class from making fully informed decisions about whether to lease, purchase, and/or retain Defective Vehicles.

69.     While GM knew of the Ignition Switch Defect by 2001, and knew that the defect caused the Defective Vehicles to have an unreasonable propensity to shut down and become uncontrollable, it continued to design, manufacture, and market the Defective Vehicles until at least 2007.

70.     Plaintiffs and the Class have suffered an injury, including the loss of money or property, as a result of GM's unfair, unlawful, and/or deceptive practices. Had Plaintiffs and the Class known about the full extent of the Ignition Switch Defect, they would either not have purchased their vehicles at all or would have paid less for them, and would not have retained their Defective Vehicles. Plaintiffs and the Class have therefore suffered a "loss" because of the violations of the MCPA complained of here.

71.     All of the wrongful conduct alleged here occurred, and continues to occur, in the conduct of GM's business.

72.     Plaintiffs request that this Court: enjoin GM from continuing its unfair, unlawful, and/or deceptive practices; require GM to repair Plaintiffs and Class Members' vehicles to completely eliminate the Ignition Switch Defect; provide to Plaintiffs' and each Class either their

Plaintiff v. General Motors, LLC
Class Action Complaint

actual damages as the result of GM's unfair, unlawful, and deceptive trade practices, or $250 per

Class member, whichever is higher; award reasonable attorneys' fees; and provide other

appropriate relief under the MCPA.

73.     Plaintiffs also seeks punitive damages against GM because it carried out

reprehensible conduct with willful and conscious disregard of the rights and safety of others. GM

intentionally, willfully, and repeatedly misrepresented the reliability and safety of the Defective

Vehicles, and continued to conceal material facts that only it knew, even while numerous

innocent victims were being killed as a result of its conduct. GM's unlawful conduct constitutes

malice, oppression, and fraud justifying punitive damages.

**COUNT II**

**FRAUD BY CONCEALMENT**

74.     Plaintiffs and the Class incorporate by reference paragraphs 1-60 as though fully

set forth at length herein.

75.     This claim is brought on behalf of the nationwide Class.

76.     GM concealed and suppressed material facts concerning the Ignition Switch

Defect.

77.     GM had a duty to disclose the Ignition Switch Defect because it consistently

represented that its vehicles were reliable and safe and proclaimed that it maintained the highest

safety standards, and the defect was known and/or accessible only to GM, which had superior

knowledge and access to the facts, and GM knew that the facts were not known to or reasonably

discoverable by Plaintiffs and the Class. These omitted and concealed facts were material

Plaintiff v. General Motors, LLC
Class Action Complaint

because they directly impact the safety of the Defective Vehicles, and GM's prior representations regarding the safety of its vehicles became materially misleading when GM concealed facts regarding the Ignition Switch Defect.

78.     GM actively concealed and/or suppressed these material facts, in whole or in part, to induce Plaintiffs and Class Members to purchase or lease the Defective Vehicles at high prices, and to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiffs and the Class.

79.     Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs and the Class's actions were justified.

80.     Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damages, including the difference between the actual value of that which Plaintiffs and Class Members paid and what they received. The value of the Defective Vehicles has been diminished by GM's wrongful conduct.

81.     GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT III

## VIOLATIONS OF THE FLORIDA UNFAIR & DECEPTIVE TRADE PRACTICES ACT

### (FDUTPA, Fla. Stat. § 501.201, et seq.)

Plaintiff v. General Motors, LLC
Class Action Complaint

82.    Plaintiffs and the Class incorporate by reference paragraphs 1-60 as though fully set forth at length herein.

83.    This Count is brought on behalf of the Florida Subclass.

84.    Each Plaintiffs is a "consumer" under FDUTPA, § 501.203(7), Fla. Stat.

85.    GM engaged in "trade or commerce" within the meaning of FDUTPA, § 501.203(8), Fla. Stat.

86.    Under the TREAD Act, 49 U.S.C. § 30101, et seq., and its corresponding regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect, and must promptly notify vehicle owners, purchasers, and dealers of the defect and remedy the defect. The TREAD Act also requires manufacturers to file various reports and notify NHTSA within days of learning of a defect.

87.    From at least as early as 2001, GM was aware of the Ignition Switch Defect. But it waited until February 7, 2014, to finally send a letter to NHTSA confessing that it knew of the Ignition Switch Defect and that the defect could cause vehicles to lose power and control and cause the airbags not to deploy.

88.    GM's failure to disclose and active concealment of the Ignition Switch Defect violated the TREAD Act, and thereby violated FDUTPA.

89.    GM also violated FDUTPA by engaging in the following practices:

    a.    GM represented that the Defective Vehicles had safety characteristics that they do not have;

20

Plaintiff v. General Motors, LLC
Class Action Complaint

      b.     GM represented that the Defective Vehicles were of a particular standard, quality, or grade, when they are not;

      c.     GM knew of the Ignition Switch Defect, but failed to disclose its existence or its complete nature, even though GM knew that such information was material to the transaction in light of GM's prior representations;

      d.     GM failed to reveal material facts concerning the Ignition Switch Defect to Plaintiffs, the Florida Subclass, the public, and the government, the omission of which would tend to mislead or deceive consumers, and which could not be reasonably known to Plaintiffs, Class Members, the public, and the government; and

      e.     GM intended for Plaintiffs, the Florida Subclass, the public, and the government to rely on its misrepresentations and omissions, so that Plaintiffs and the Florida Subclass would purchase or lease the Defective Vehicles.

90.     Plaintiffs and the Florida Subclass were injured as a result of GM's misconduct. Plaintiffs and the Florida Subclass overpaid for the Defective Vehicles and did not receive the benefit of their bargain.

91.     Plaintiffs seeks damages and an order enjoining GM's unfair or deceptive acts or practices and an order requiring GM to completely remedy the defect in Plaintiffs' and the Florida Subclass Members' vehicles, and attorneys' fees, and any other just and proper relief available under FDUTPA.

Plaintiff v. General Motors, LLC
Class Action Complaint

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against GM, and grant the following relief:

A.      Determine that this action may be maintained as a Class action and certify it as such under Rule 23(b)(3) and or 23(b)(2), or alternatively certify all issues and claims that are appropriately certified; and designate and appoint Plaintiffs as Class and Subclass Representative and Plaintiffs chosen counsel as Class Counsel;

B.      Declare, adjudge and decree the conduct of GM as alleged herein to be unlawful, unfair and/or deceptive, and enjoin any such future conduct;

C.      Declare, adjudge, and decree that the ignition switches in the Defective Vehicles are defective;

D.      Declare, adjudge, and decree that GM must disgorge, for the benefit of Plaintiffs, Class Members, and Subclass Members all or part of the ill-gotten gains it received from the sale or lease of the Defective Vehicles;

E.      Award Plaintiffs, Class Members, and Subclass Members actual, compensatory damages, or, in the alternative, statutory damages, as proven at trial;

F.      Alternatively, if elected by Plaintiffs, Class Members, and Subclass Members, require GM to repair the defective ignition switches or provide a comparable vehicle that does not have ignition switch defects;

G.      Award Plaintiffs, Class Members, and Subclass Members punitive damages in such amount as proven at trial;

Plaintiff v. General Motors, LLC
Class Action Complaint

H. Award Plaintiffs, Class Members, and Subclass Members their reasonable

attorneys' fees, costs, and pre-judgment and post-judgment interest; and Award Plaintiffs, Class

Members and Subclass Members such other further and different relief as the case may require

or as determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMAND

Plaintiffs requests a trial by jury on all the legal claims alleged in this Complaint.

Dated this _11TH_ day of _April_, 2014.

> Respectfully submitted,
> SEARCY DENNEY SCAROLA BARNHART &
> SHIPLEY, P.A.,
> Counsel for Plaintiff
> 2139 Palm Beach Lakes Blvd.
> West Palm Beach, FL 33409
> Telephone: 561-686-6300
> Facsimile: 561-383-9451
>
> By
> John Scarola
> jsx@searcylaw.com; mep@searcylaw.com
> Florida Bar No.: 169440

23