# <u>EXHIBIT 1</u>

Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Tel: (213) 330-7150
Fax: (213) 330-7152
E-mail: elaine@hbsslaw.com

Steve W. Berman (*pro hac vice pending*)
Andrew M. Volk (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
E-mail: steve@hbsslaw.com
E-mail: andrew@hbsslaw.com

Mark P. Robinson, Jr. (SBN 054426)
Kevin F. Calcagnie (SBN 108994)
Scot D. Wilson (SBN 223367)
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
19 Corporate Plaza
Newport Beach, CA 92660
Tel.: (949) 720-1288
Fax: (949) 720-1292
mrobinson@rcrsd.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL RATZLAFF and PATRICIA BARKER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS LLC, <br><br> Defendant. | Case No.: 2:14-cv-02424 <br><br> **CLASS ACTION** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

010440-11 679569 V1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

II.  JURISDICTION AND VENUE................................................................... 6

III.  PARTIES ..................................................................................................... 6

IV.  FACTUAL ALLEGATIONS ...................................................................... 8

    A.  The Ignition Switch Defects in the Defective Vehicles......................... 8

    B.  GM Knew of the Ignition Switch Defects for Years, but Concealed the Defects from Plaintiffs and the Class............................. 9

    C.  GM Waited until 2014 to Finally Order a Recall of the Defective Vehicles ................................................................................ 15

    D.  GM has not Recalled all the Defective Vehicles ................................. 16

    E.  Old GM and GM Promoted the Defective Vehicles as Safe and Reliable............................................................................................ 18

    F.  The Ignition Switch Defects have Harmed Plaintiffs and the Class ..................................................................................................... 19

V.  SUCCESSOR LIABILITY ....................................................................... 21

VI.  TOLLING OF THE STATUTES OF LIMITATION ................................ 22

VII.  CLASS ALLEGATIONS .......................................................................... 23

    A.  The Nationwide Class .......................................................................... 23

    B.  Statewide Consumer Classes ............................................................... 23

VIII.  CAUSES OF ACTION ............................................................................. 30

    A.  Nationwide Class Claims ..................................................................... 30

    COUNT I:  VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT  (MICH. COMP. L. ANN. § 445.901, *et seq.*) ................. 30

    COUNT II:  FRAUDULENT CONCEALMENT ......................................... 33

    B.  Statewide Consumer Class Claims ...................................................... 35

    ALABAMA:  VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT  (ALA. CODE § 8-19-1, *et seq.*) .......................... 35

010440-11 679569 V1

ALASKA:  VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (AUTPCPA, ALASKA STAT. ANN. § 45.50.471, *et seq.*)................................. 36

CALIFORNIA:  COUNT I:  VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT  (CAL. CIV. CODE § 1750, *et seq.*).................................................................................. 39

COUNT II:  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW  (CAL. BUS. & PROF. CODE § 17200, *et seq.*)........................................................................................ 44

COUNT III:  VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CALIFORNIA "LEMON LAW") (CAL. CIV. CODE §§ 1791.1 & 1792)................................. 46

COLORADO:  VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT  (COLORADO CPA, COL. REV. STAT. § 6-1-101, *et seq.*)......................................... 48

CONNECTICUT:  VIOLATION OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT  (CONN. GEN. STAT. § 42-110A, *et seq.*) ....................................... 51

DELAWARE:  COUNT I:  VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT  (6 DEL. CODE § 2513, *et seq.*) ........................ 53

COUNT II:  VIOLATION OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT  (6 DEL. CODE § 2532, *et seq.*) ......................... 54

DISTRICT OF COLUMBIA:  VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT  (CPPA, D.C. CODE § 28-3901, *et seq.*) ................................................. 56

FLORIDA:  VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT  (FLA. STAT. § 501.201, *et seq.*)................................................................ 59

GEORGIA:  COUNT I:  VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE  TRADE PRACTICES ACT  (GA. CODE ANN. § 10-1-370, *et seq.*) ......................................... 60

COUNT II:  VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT  (GA. CODE ANN. § 10-1-390, *et seq.*) ............................. 61

HAWAII:  UNFAIR COMPETITION AND PRACTICES  (HAW. REV. STAT. § 480, *et seq.*) ................................................. 62

IDAHO:  VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT  (ICPA, IDAHO CIV. CODE § 48-601, *et seq.*) ............... 65

- ii -

ILLINOIS:  COUNT I:  VIOLATION OF ILLINOIS
CONSUMER FRAUD AND DECEPTIVE BUSINESS
PRACTICES ACT  (815 ILL. COMP. STAT. 505/1, *et seq.* and 720
ILL. COMP. STAT. 295/1A) ................................................................ 68

COUNT II: VIOLATION OF THE ILLINOIS UNIFORM
DECEPTIVE TRADE PRACTICES ACT  (815 ILL. COMP. STAT.
510/1, *et. seq.* and  720 ILL. COMP. STAT. 295/1A) ........................... 69

INDIANA:  VIOLATION OF THE INDIANA DECEPTIVE
CONSUMER SALES ACT  (IND. CODE § 24-5-0.5-3) ................................. 70

IOWA:  VIOLATIONS OF THE PRIVATE RIGHT OF ACTION
FOR CONSUMER FRAUDS ACT  (IOWA CODE § 714H.1, *et
seq.*) ................................................................................................ 72

KANSAS:  VIOLATIONS OF THE KANSAS CONSUMER
PROTECTION ACT  (KANSAS CPA, KAN. STAT. ANN. § 50-
623, *et seq.*) ..................................................................................... 74

KENTUCKY:  VIOLATION OF THE KENTUCKY
CONSUMER PROTECTION ACT  (KY. REV. STAT. § 367.110, *et
seq.*) ................................................................................................ 77

MAINE:  VIOLATION OF MAINE UNFAIR TRADE
PRACTICES ACT  (ME. REV. STAT. ANN. TIT. 5 § 205-A, *et seq.*) .............. 78

MARYLAND:  VIOLATIONS OF THE MARYLAND
CONSUMER PROTECTION ACT  (MD. CODE COM. LAW § 13-
101, *et seq.*) .................................................................................... 80

MASSACHUSETTS:  VIOLATION OF THE
MASSACHUSETTS  CONSUMER PROTECTION ACT
(Chapter 93A) ................................................................................. 81

MINNESOTA:  COUNT I:  VIOLATION OF MINNESOTA
UNIFORM  DECEPTIVE TRADE PRACTICES ACT  (MINN.
STAT. § 325D.43-48, *et seq.*) .............................................................. 82

COUNT II:  VIOLATION OF MINNESOTA PREVENTION  OF
CONSUMER FRAUD ACT   (MINN. STAT. § 325F.68, *et seq.*) ................... 83

MISSOURI:  VIOLATION OF MISSOURI MERCHANDISING
PRACTICES ACT  (MO. REV. STAT. § 407.010, *et seq.*) .............................. 84

MONTANA:  VIOLATION OF MONTANA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION ACT OF 1973
(MONT. CODE ANN. § 30-14-101, *et seq.*) .......................................... 85

NEBRASKA:  VIOLATION OF THE NEBRASKA CONSUMER
PROTECTION ACT  (NCPA, NEB. REV. STAT. § 59-1601, *et seq.*) ............. 88

010440-11  679569 V1

NEVADA:  VIOLATION OF THE NEVADA DECEPTIVE
TRADE PRACTICES ACT  (NEV. REV. STAT. § 598.0903, *et seq.*) ............. 90

NEW HAMPSHIRE:  VIOLATION OF N.H. CONSUMER
PROTECTION ACT  (N.H. REV. STAT. ANN. § 358-A:1, *et seq.*)................. 91

NEW JERSEY:  VIOLATION OF NEW JERSEY CONSUMER
FRAUD ACT  (N.J. STAT. ANN. § 56:8-1, *et seq.*) ......................................... 94

NEW MEXICO:  VIOLATIONS OF THE NEW MEXICO
UNFAIR TRADE PRACTICES ACT  (N.M. STAT. ANN. §§ 57-
12-1, *et seq.*) .............................................................................................. 96

NEW YORK:  DECEPTIVE ACTS OR PRACTICES  (N.Y. GEN.
BUS. LAW § 349 AND 350)............................................................................ 98

NORTH DAKOTA:  VIOLATION OF THE NORTH DAKOTA
CONSUMER FRAUD ACT  (N.D. CENT. CODE § 51-15-02) .................... 101

OHIO:  COUNT I:  VIOLATION OF OHIO CONSUMER SALES
PRACTICES ACT  (OHIO REV. CODE ANN. § 1345.01, *et seq.*)................. 102

COUNT II:  VIOLATION OF OHIO DECEPTIVE TRADE
PRACTICES ACT  (OHIO REV. CODE ANN. § 4165.01, *et seq.*)................. 103

OKLAHOMA:  VIOLATION OF OKLAHOMA CONSUMER
PROTECTION ACT  (OCPA, OKLA. STAT. TIT. 15 § 751, *et seq.*) ............. 105

OREGON:  VIOLATION OF THE OREGON UNLAWFUL
TRADE PRACTICES ACT  (OR. REV. STAT. §§ 646.605, *et seq.*) ............. 107

PENNSYLVANIA:  VIOLATION OF THE PENNSYLVANIA
UNFAIR TRADE  PRACTICES AND CONSUMER
PROTECTION LAW  (73 P.S. § 201-1, *et seq.*) ......................................... 109

RHODE ISLAND:  VIOLATION OF THE RHODE ISLAND
UNFAIR TRADE PRACTICES  AND CONSUMER
PROTECTION ACT  (R.I. GEN. LAWS § 6-13.1, *et seq.*)............................ 110

SOUTH CAROLINA:  UNFAIR TRADE PRACTICES ACT
(S.C. CODE ANN. § 39-5-10, *et seq.*) .............................................. 112

SOUTH DAKOTA:  VIOLATION OF THE SOUTH DAKOTA
DECEPTIVE TRADE PRACTICES ACT  (S.D. CODIFIED LAWS
§ 37-24-6) ................................................................................. 115

TENNESSEE:  VIOLATION OF TENNESSEE CONSUMER
PROTECTION ACT  (TENN. CODE ANN. § 47-18-101, *et seq.*) ................. 115

TEXAS:  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
PRACTICES ACT  (TEX. BUS. & COM. CODE §§ 17.41, *et seq.*)................ 116

010440-11 679569 V1

UTAH:  VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT  (UCSPA, Utah Code Ann. § 13-11-1, *et seq.*) ........... 118

VERMONT:  VIOLATION OF VERMONT CONSUMER FRAUD ACT  (Vt. Stat. Ann. tit. 9, § 2451 *et seq.*) ................................ 121

VIRGINIA:  VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT  (VCPA, Va. Code Ann. 15 §§ 59.1-196, *et seq.*) ........................................................................................................ 123

WASHINGTON:  VIOLATION OF THE CONSUMER PROTECTION ACT  (Rev. Code Wash. Ann. §§ 19.86.010, *et seq.*) ........................................................................................................ 125

WEST VIRGINIA:  VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT  (W. Va. Code § 46A-1-101, *et seq.*) ........................................................................................................ 126

WISCONSIN:  VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT  (Wisc. Stat. § 110.18) ........... 130

WYOMING:  VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT  (Wyo. Stat. §§ 45-12-105, *et seq.*)......................... 132

IX.    PRAYER FOR RELIEF ............................................................................. 133

X.    JURY TRIAL DEMAND ......................................................................... 134

- v -

1       Plaintiffs Daniel Ratzlaff and Patricia Barker, individually and as class

2    representatives on behalf of all similarly situated persons and the general public,

3    bring this action against Defendant General Motors LLC ("Defendant" or "GM") and

4    allege as follows:

## I.    INTRODUCTION

6      1.    This case involves an egregious and unprecedented failure to disclose

7    and to affirmatively conceal a known defect in GM vehicles.

8      2.    An auto manufacturer should never make profits more important than

9    safety and should never conceal defects that exist in its vehicles from consumers or

10    the public.  GM's Vehicle Safety Chief, Jeff Boyer has stated that:  "Nothing is more

11    important than the safety of our customers in the vehicles they drive."  Yet GM

12    failed to live up to this commitment.

13      3.    The first priority of a car manufacturer should be to ensure that its

14    vehicles are safe, and particularly that its vehicles have operable ignition systems,

15    airbags, power-steering, power brakes, and other safety features that can prevent or

16    minimize the threat of death or serious bodily harm in a collision.  In addition, a car

17    manufacturer must take all reasonable steps to ensure that, once a vehicle is running,

18    it operates safely, and its critical safety systems (such as engine control, braking, and

19    airbag systems) work properly until such time as the driver shuts the vehicle down.

20    Moreover, a manufacturer that is aware of dangerous design defects that cause its

21    vehicles to shut down during operation, or the vehicles' airbags not to deploy, must

22    promptly disclose and remedy such defects.

23      4.    Since at least 2003, GM has sold millions of vehicles throughout the

24    United States and worldwide that have a safety defect in which the vehicle's ignition

25    switch can inadvertently move from the "run" position to the "accessory" or "off"

26    position during ordinary driving conditions, resulting in a loss of power, vehicle

27    speed control, and braking, as well as a failure of the vehicle's airbags to deploy.

28

5.      There are at least two main reasons why the GM ignition switch systems are defective.  The first is that the ignition switch is simply weak and therefore does not hold the key in place in the "run position."  On information and belief, the ignition switch weakness is due to a defective part known as a "detent plunger."

6.      The second reason that the ignition switch systems are defective is due to the low position of the switches in the Defective Vehicles.  That causes the keys, and the fobs that hang off the keys, to hang so low in the Defective Vehicles that the drivers' knees can easily bump them and inadvertently shut down the vehicle.

7.      GM installed these faulty ignition switch systems in models from at least 2003 through at least 2011.  GM promised that these vehicles would operate safely and reliably.  This promise turned out to be false in several material respects. In reality, GM concealed and did not fix a serious quality and safety problem plaguing its vehicles.

8.      Worse yet, the ignition switch defects in GM's vehicles could have been easily avoided.

9.      From at least 2005 to the present, GM received reports of crashes and injuries that put GM on notice of the serious safety issues presented by its ignition switch system.

10.      Yet, despite the dangerous nature of this defect and its effects on critical safety systems, GM concealed its existence and failed to remedy the problem.

11.      Despite notice of the defect in its vehicles, GM did not disclose to consumers that its vehicles – which GM for years had advertised as "safe" and "reliable" – were in fact neither safe nor reliable.

12.      GM's CEO, Mary Barra, has admitted in a video message that: "Something went wrong with our process in this instance, and terrible things happened."

13.      This case arises from GM's breach of its obligations and duties, including GM's failure to disclose that, as a result of defective ignition switches, at

010440-11  679569 V1

1    least 2.59 million GM vehicles (and almost certainly more) may have the propensity

2    to shut down during normal driving conditions and create an extreme and

3    unreasonable risk of accident, serious bodily harm, and death.

4         14.    GM's predecessor, General Motors Corporation ("Old GM")

5    (sometimes, together with GM, "the Companies") also violated these obligations and

6    duties by designing and marketing vehicles with defective ignition switch systems,

7    and then by failing to disclose that defect even after it became aware that the ignition

8    switch defect was causing fatal accidents. In addition to the liability arising out of

9    the statutory obligations assumed by GM, GM also has successor liability for the

10   deceptive and unfair acts and omissions of Old GM because GM has continued the

11   business enterprise of Old GM with full knowledge of the ignition switch defects.

12        15.    The defective ignition switches were manufactured by Delphi

13   Automotive PLC ("Delphi"). Once a subsidiary of Old GM, Delphi spun off from

14   Old GM in 1999, and became an independent publicly held corporation.

15        16.    Plaintiffs allege, based on information and belief, that Delphi knew its

16   ignition switches were defective. Nevertheless, Delphi continued to manufacture

17   and sell the defective ignition switch systems, which it knew would be used in the

18   vehicles of Plaintiffs and the Class.

19        17.    Plaintiffs' investigation, including a review of NHTSA's complaint

20   database, suggests that GM's recall does not capture all of the Defective Vehicles

21   which suffer from the same or substantially similar ignition switch defects as the

22   recalled vehicles. Plaintiffs thereupon believe and allege that the following non-

23   recalled GM vehicles also have defective ignition switch systems: the 2005

24   Chevrolet Equinox, the 2006 Chevrolet Trailblazer, and the 2006 Chevrolet Monte

25   Carlo.

26        18.    Plaintiffs bring this action for a Class of all persons in the United States

27   who currently own or lease one or more of the following GM vehicles: (a) (The

28   recalled vehicles): 2003-2010 Saturn Ion; 2005-2010 Chevrolet Cobalt; 2007-2010

- 3 -

1    Pontiac G5; 2006-2011 Chevrolet HHR; 2006-2010 Pontiac Solstice; and 2007-2010

2    Saturn Sky; and (b) (Non-recalled vehicles):  the 2005 Chevrolet Equinox, the 2006

3    Chevrolet Trailblazer, and the 2006 Chevrolet Monte Carlo (hereinafter "Defective

4    Vehicles").

5          19.    To the extent warranted by the developing facts, Plaintiffs will further

6    supplement the list of Defective Vehicles to include additional GM vehicles that

7    have defective ignition switch systems, which result in a loss of vehicle speed

8    control, loss of braking control, and airbag non-deployment.

9          20.    In the alternative to their nationwide class claims, Plaintiffs also bring

10   claims under the laws of the States that have consumer protection statutes on behalf

11   of the respective residents of each of those States who currently own one or more of

12   the Defective Vehicles.

13         21.    The Defective Vehicles are defective and dangerous for multiple

14   reasons, including the following (collectively, the "ignition switch defects"):

15             a.     Due to their weaknesses and their low placement, the ignition

16   switches can inadvertently shut off the engine and vehicle electrical system during

17   normal driving conditions;

18             b.     When the engine and the electrical system shut down, the power

19   steering and power brakes also shut down, creating a serious risk of accident; and

20             c.     When the electrical system shuts down, the vehicle's airbags are

21   disabled, creating a serious risk of serious bodily harm or death if an accident occurs.

22         22.    The ignition switch defects make the Defective Vehicles unreasonably

23   dangerous.  Because of the defects, the Defective Vehicles are likely to be involved

24   in accidents and, if accidents occur, there is an unreasonable and extreme risk of

25   serious bodily harm or death to the vehicle's occupants and others in the vicinity.

26         23.    GM admits to at least 13 deaths as a result of the ignition switch defects,

27   but the actual number is believed to be much higher.

28

- 4 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24.     The ignition switch defects present a significant and unreasonable safety risk exposing Defective Vehicle owners, their passengers and others in the vicinity to a risk of serious injury or death.

25.     For many years, GM has known of the ignition switch defects that exist in millions of Defective Vehicles sold in the United States.  But, to protect its profits and maximize sales, GM concealed the defects and their tragic consequences and allowed unsuspecting vehicle owners to continue driving highly dangerous vehicles.

26.     Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act"),[1] and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defect.[2]  If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers, and dealers of the defect and must remedy the defect.[3]

27.     In addition to the TREAD Act and other laws, GM violated the Michigan Consumer Protection Act (the "MCPA") and fraudulently concealed the deadly ignition switch defects from consumers, owners, and lessees of the Defective Vehicles.  GM also violated the TREAD Act by failing to timely inform NHTSA of the ignition switch defects and allowed cars to remain on the road with these defects. These same acts and omissions also violated various State consumer protection laws as detailed below.

28.     Plaintiffs and the Class have been damaged by GM's misrepresentations, concealment, and non-disclosure of the ignition switch defects in the Defective Vehicles, as they are now holding highly dangerous vehicles whose value has greatly diminished because of GM's failure to timely disclose the serious defect.

---

[1] 49 U.S.C. §§ 30101-30170.
[2] 49 U.S.C. § 30118(c)(1) & (2).
[3] 49 U.S.C. § 30118(b)(2)(A) & (B).

010440-11  679569 V1

29.     Plaintiffs and the Class were also damaged by the acts and omissions of Old GM for which GM is liable through successor liability because the Defective Vehicles they purchased are worth less than they would have been without the ignition switch defects.

30.     Plaintiffs and the Class either paid more for the Defective Vehicles than they would have had they known of the ignition switch defects, or they would not have purchased the Defective Vehicles at all had they known of the defects.

## II.     JURISDICTION AND VENUE

31.     This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiffs and other Class members are citizens of a different state than Defendant.

32.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.  This Court has personal jurisdiction over GM because GM conducts substantial business in this District, and some of the actions giving rise to the complaint took place in this District.

33.     Venue is proper in this District under 28 U.S.C. § 1391 because GM, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.  Additionally, GM transacts business within the District, and some of the events establishing the claims arose in this District.

## III.     PARTIES

34.     Plaintiff and Class Representative, Daniel Ratzlaff, is a resident and citizen of Quartz Hill, California.  Plaintiff owns a 2005 Chevy Equinox.  Plaintiff chose the Equinox, in part, because he wanted a safely designed and manufactured vehicle.  Plaintiff saw advertisements for Old GM vehicles before he purchased the Equinox and, although he does not recall the specifics of the advertisements, he does recall that safety and quality were consistent themes across the advertisements he saw.  These representations about safety and quality influenced Plaintiff's decision to

- 6 -

1    purchase the Equinox.  Plaintiff experienced the ignition switch defect described by

2    the General Motors recall.  On several occasions, he recalls all electrical systems

3    turning off including air bags and dash signaling monitor information.  He would

4    have to consistently turn the ignition switch on and off until the condition resolved.

5    Most of the time, Plaintiff felt he was in danger and the situation could have quickly

6    turned tragic.  Plaintiff did not learn of the ignition switch defects until about March

7    2014.  Had Old GM disclosed the ignition switch defects, Plaintiff would not have

8    purchased his Equinox, or would have paid less than he did, and would not have

9    retained the vehicle.

10           35.    Plaintiff and Class Representative, Patricia Barker, is a resident and

11   citizen of Wilmington, California.  Plaintiff owns a 2005 Saturn Ion, which she

12   purchased in Torrance, California.  Plaintiff chose the Saturn, in part, because she

13   wanted a safely designed and manufactured vehicle.  Plaintiff saw advertisements for

14   Old GM vehicles before she purchased the Saturn and, although she does not recall

15   the specifics of the advertisements, she does recall that safety and quality were

16   consistent themes across the advertisements she saw.  These representations about

17   safety and quality influenced Plaintiff's decision to purchase the Saturn.  Plaintiff did

18   not learn of the ignition switch defects until about March 2014.  Had Old GM

19   disclosed the ignition switch defects, Plaintiff would not have purchased her Saturn,

20   or would have paid less than she did, and would not have retained the vehicle.

21           36.    Defendant General Motors LLC is a foreign limited liability company

22   formed under the laws of Delaware with its principal place of business located at 300

23   Renaissance Center, Detroit, Michigan.  GM was incorporated in 2009 and on

24   July 10, 2009, acquired substantially all assets and assumed certain liabilities of

25   General Motors Corporation through a Section 363 sale under Chapter 11 of the U.S.

26   Bankruptcy Code.

27           37.    Among the liabilities and obligations expressly retained by GM after the

28   bankruptcy are the following:

From and after the Closing, Purchaser [GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code, and similar laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

38.    GM also expressly assumed:

all Liabilities arising under express written warranties of [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by [Old GM] or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws.

39.    Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint.

## IV.    FACTUAL ALLEGATIONS

**A.    The Ignition Switch Defects in the Defective Vehicles**

40.    Given the importance that a vehicle and its electrical operating systems remain operational during ordinary driving conditions, it is imperative that a vehicle manufacturer ensure that its vehicles remain operational from the time the driver starts the vehicle until the driver intentionally shuts down the vehicle. With respect to the Defective Vehicles, GM has failed to do so.

41.    In the Defective Vehicles, the ignition switch defects can cause the vehicle's engine and electrical system to shut off, disabling the power steering and power brakes and causing non-deployment of the vehicle's airbags in the event of a crash.

- 8 -

42.     The ignition switch systems in the Defective Vehicles are defective in at least two major respects. The first is that the switches are simply weak; because of a faulty "detent plunger," the switch can inadvertently move from the "run" to the "accessory" or "off" position. The second defect is that, due to the low position of the ignition switch, the driver's knee can easily bump the key (or the hanging fob below the key), and cause the switch to inadvertently move from the "run" to the "accessory" or "off" position.

43.     The Defective Vehicles are, therefore, unreasonably prone to be involved in accidents, and those accidents are unreasonably likely to result in serious bodily harm or death to the drivers and passengers of the Defective Vehicles, as well as to other vehicle operators and pedestrians.

**B.      GM Knew of the Ignition Switch Defects for Years, but Concealed the Defects from Plaintiffs and the Class**

44.     Alarmingly, both Old GM and GM knew of the deadly ignition switch defects and their dangerous consequences for many years, but concealed their knowledge from Defective Vehicle owners.

45.     For example, on July 29, 2005, Amber Marie Rose, age 16, died after her 2005 Chevrolet Cobalt crashed and the airbag failed to deploy. Ms. Rose's death is the first known of the hundreds of deaths and injuries attributable to the ignition switch defects. Ms. Rose's death was an early warning in what would become a decade-long failure by Old GM and GM to address the ignition switch problem.

46.     Another incident involved 16-year old Megan Phillips. Ms. Phillips was driving a 2005 Chevrolet Cobalt that crashed in Wisconsin in 2006, killing two of her teenage friends when the car left the road and hit a clump of trees. NHTSA investigators found that the key had moved from the "run" to the "accessory" position, turning off the engine and disabling the vehicle's airbags before impact. According to Ms. Phillips, the families of her deceased friends blamed her and refused to speak with her; only after the recall was finally announced did they begin communicating. As

1   she stated, "I don't understand why [GM] would wait 10 years to say something.  And

2   I want to understand it but I never will."[4]

3          47.     Rather than publicly admitting the dangerous safety defects in the

4   Defective Vehicles, the Companies attempted to attribute these and other incidents to

5   "driver error."  Every year from 2005 to 2012, first Old GM and then GM received

6   reports of deaths in Cobalts involving steering and/or airbag failures, including:

7          • 2005:  26 Cobalt Death and Injury Incidents, including 1 death
8            citing Airbag as component involved.

9          • 2006:  69 Cobalt Death and Injury Incidents, including 2
10           deaths citing Airbag as component involved and 4 deaths
             citing Unknown component.

11         • 2007:  87 Cobalt Death and Injury Incidents, including 3
12           deaths citing Airbag as component involved.

13         • 2008:  106 Cobalt Death and Injury Incidents, including 1
14           death citing Airbag as component involved and 2 deaths citing
             Unknown component.

15         • 2009:  133 Cobalt Death and Injury Incidents, including 1
16           death citing Airbag as component involved, 1 death citing
             Service Brake as component involved, 1 death citing Steering
17           as component involved, and 2 deaths citing Unknown
             component.

18         • 2010:  400 Cobalt Death and Injury Incidents, including 2
19           deaths citing Airbag as component involved, 12 deaths citing
             Steering as component involved, and 1 death citing Unknown
20           component.

21         • 2011:  187 Cobalt Death and Injury Incidents, including 2
22           deaths citing Airbag as component involved, 2 deaths citing
             Steering as component involved, and 1 citing Unknown
23           component.

24         • 2012: 157 Cobalt Death and Injury Incidents, including 5
25           deaths citing Airbag as component involved, and 4 deaths
             citing Steering as component involved.

26

27   ────────────────
     [4] "*Owners of Recalled GM Cars Feel Angry, Vindicated,*" REUTERS (Mar. 17,
28   2014).

010440-11  679569 V1

48.     GM now admits that Old GM learned of the ignition switch defects as early as 200l.  During the pre-production development of the Saturn Ion, Old GM engineers learned that the ignition could inadvertently move from the "Run" position to the "Accessory" or "Off" position.  Old GM claimed that a switch design change "had resolved the problem."[5]

49.     In 2003, an internal report documented an instance in which the service technician observed a stall while driving.  The service technician noted that the weight of several keys on the key ring had worn out the ignition switch.  The switch was replaced and the matter was closed.[6]

50.     According to GM's latest chronology submitted to NHTSA pursuant to 49 C.F.R. § 573.6, Old GM engineers encountered the problem again in 2004 during test drives of the Chevy Cobalt, before it went to market.

51.     Old GM opened an engineering inquiry, known as a "Problem Resolution Tracking System inquiry" ("PRTS"), to investigate the issue.  According to the chronology provided to NHTSA by GM, engineers pinpointed the problem and were "able to replicate this phenomenon during test drives."

52.     According to GM, the PRTS engineers "believed that low key cylinder torque effort was an issue and considered a number of potential solutions."  But after considering cost and the amount of time it would take to develop a fix, Old GM did nothing.

53.     Gary Altman, program engineering manager for the 2005 Cobalt, admitted that Old GM's engineering managers knew about ignition-switch problems in the vehicle that could disable power steering, power brakes and airbags, but launched the vehicle anyway because they believed that the vehicles could be safely coasted off the road after a stall.  Altman insisted that "the [Cobalt] was

---

[5] *"G.M. Reveals It Was Told of Ignition Defect in '01*,"  D. Ivory, NEW YORK TIMES (Mar. 12, 2014).

[6] *Id.*

- 11 -

1   maneuverable and controllable" with the power steering and power brakes

2   inoperable, though he did not attempt to explain why the vehicle would not require

3   an operable airbag.  Needless to say, hapless Cobalt purchasers were not informed of

4   Old GM's decision to release the vehicle notwithstanding its knowledge of the

5   ignition switch defect.

6        54.    As soon as the 2005 Cobalt hit the market, Old GM almost immediately

7   started getting complaints about sudden loss of power incidents, "including instances

8   in which the key moved out of the 'run' position when a driver inadvertently

9   contacted the key or steering column."[7]  Old GM opened additional PRTS inquires.

10       55.    In another PRTS opened in May 2005, Old GM engineers again

11  assessed the problem and proposed that GM re-design the key head from a "slotted"

12  to a "hole" configuration, in order to make the key and key fob hang higher in the

13  vehicle and therefore make it less likely that a driver's knee would inadvertently shut

14  down the vehicle.  After initially approving the proposed partial fix, Old GM

15  reversed course and again declined to even attempt to implement a fix.[8]

16       56.    Instead, in October 2005, Old GM simply issued a Technical Service

17  Bulletin ("TSB") advising service technicians and GM dealers that the inadvertent

18  turning of the key cylinder was causing the loss of power in the vehicles' electrical

19  system.

20       57.    Rather than disclosing the true nature of the defects and correcting

21  them, under the TSB, Old GM gave customers who brought in their vehicle

22  complaining about the issue "an insert for the key ring so that it goes from a 'slot'

23  design to a hole design" to prevent the key and fob from moving up and down in the

24  slot.  "[T]he previous key ring" was "replaced with a smaller" one; this change was

25

26

27       [7] March 11, 2014, Chronology Re: Recall of 2006 Chevron HHR and Pontiac
     Solstice, 2003-2007 Saturn Ion, and 2007 Saturn Sky Vehicles, at 1.

28       [8] Id.

1  supposedly able to keep the keys from hanging as low as they had in the past.[9]

2  According to GM's records, Old GM dealers provided key inserts to 474 customers

3  who brought their vehicles into dealers for service.[10]

4      58.    Yet there was no recall.  And, not surprisingly, Old GM continued to get

5  complaints.

6      59.    In 2006, Old GM approved a design change for the Cobalt's ignition

7  switch supplied by Delphi.  The new design included "the use of a new detent

8  plunger and spring that increased torque force in the ignition switch."  But the new

9  design was not produced until the 2007 model year.[11]

10     60.    In what a high-level engineer at Old GM now calls a "cardinal sin" and

11 "an extraordinary violation of internal processes," Old GM changed the part design

12 **but kept the old part number**.  That makes it impossible to determine from the part

13 number alone which GM vehicles produced after 2007 contain the defective ignition

14 switches.

15     61.    In 2007, NHTSA investigators met with Old GM to discuss its airbags,

16 and informed Old GM of the July 2005 frontal and fatal crash involving Amber

17 Marie Rose.

18     62.    As alleged above, the airbags in Ms. Rose's 2005 Cobalt did not deploy.

19 Data retrieved from her vehicle's diagnostic system indicated that the ignition was in

20 the "accessory" position.  Old GM investigated and tracked similar incidents.

21     63.    By the end of 2007, by GM's own admission, Old GM knew of 10

22 frontal collisions in which the airbag did not deploy.[12]  Plaintiffs believe that Old GM

23 actually knew of many other similar incidents involving the ignition switch defects.

24

25

26     [9] *Id*. at 1-2.

27     [10] *Id*. at 3.

       [11] *Id*. at 2.

28     [12] Feb. 24, 2014, Attachment B-573.6(c)(6) at 2.

64.     At a May 15, 2009 meeting, GM engineers learned that data in the black boxes of Chevrolet Cobalts showed that the dangerous ignition switch defects existed in hundreds of thousands of Defective Vehicles.  But still GM did not reveal the defect to NHTSA, Plaintiffs or the Class.

65.     After the May 15, 2009 meeting, GM continued to get complaints of unintended shut down and continued to investigate frontal crashes in which the airbags did not deploy.

66.     After the May 15, 2009 meeting, GM told the families of accident victims and Defective Vehicle owners that it did not have sufficient evidence to conclude that there was any defect in the Defective Vehicles.  In one case involving the ignition switch defects, GM threatened to sue the family of an accident victim for reimbursement of its legal fees if the family did not dismiss its lawsuit.  In another, GM sent the victim's family a terse letter, saying there was no basis for any claims against GM.  These statements were part of GM's continuation of the campaign of deception begun by Old GM.

67.     According to GM, it was not until 2011 and 2012 that GM's examinations of switches from vehicles that had experienced crashes revealed significant design differences in the torque performance of ignition switches from the 2005 Cobalts and those from the 2010 model year, the last year of the Cobalt's production.

68.     GM responded by blaming the supplier for the switch design.[13]

69.     In 2014, after numerous assessments and facing increasing scrutiny of its conduct and the defects in its vehicles, GM finally announced a recall for the 2003-2007 Chevrolet Cobalt and 2005-2007 Pontiac G5 vehicles.[14]

---

[13] *Id*. at 3-4.

[14] *Id*. at 4-5.

- 14 -

**C.      GM Waited until 2014 to Finally Order a Recall of the Defective Vehicles**

70.      After analysis by GM's Field Performance Review Committee and the Executive Field Action Decision Committee ("EFADC"), the EFADC finally ordered a recall of *some* of the Defective Vehicles on January 31, 2014.

71.      Initially, GM's EFADC ordered a recall of only the Chevrolet Cobalt and Pontiac G5 for model years 2005-2007.

72.      After additional analysis, the EFADC expanded the recall on February 24, 2014, to include the Chevrolet HHR and Pontiac Solstice for model years 2006 and 2007, the Saturn Ion for model years 2003-2007, and the Saturn Sky for model year 2007.

73.      Most recently, on March 28, 2014, GM expanded the recall a third time, to include Chevrolet Cobalts, Pontiac G5s and Solstices, Saturn Ions and Skys from the 2008 through 2010 model years, and Chevrolet HHRs from the 2008 through 2011 model years.

74.      GM provided dealers with notice of the recalls on February 26, 2014, March 4, 2014, and March 28, 2014, and mailed letters to some of the current owners of the Defective Vehicles on March 10 and March 11, 2014.

75.      According to GM, "the dealers are to replace the ignition switch,"[15] presumably with one with sufficient torque to prevent the inadvertent shut down of the ignition, power steering, power brakes, and airbags.

76.      To date, GM has ***not*** pledged to remedy the fact that the key and fob in the Defective Vehicles hang dangerously low, leading to an unreasonable risk that the driver's knee will inadvertently shut down the Defective Vehicles during ordinary driving conditions.

---

[15] *Id*. at 6.

010440-11  679569 V1

77.     In a video message addressed to GM employees on March 17, 2014, CEO Mary Barra admitted that the Company had made mistakes and needed to change its processes.

78.     According to Ms. Barra, "Something went terribly wrong in our processes in this instance, and terrible things happened."  Barra went on to promise, "[w]e will be better because of this tragic situation if we seize this opportunity."[16]

79.     GM now faces an investigation by NHTSA, hearings in both the U.S. House and Senate, and a probe by the Department of Justice.

80.     While GM has now appointed a new Vehicle Safety Chief, on information and belief, at least 2.59 million potentially Defective Vehicles remain on the road to this day; and, on information and belief, other vehicles not yet acknowledged by GM also have the deadly ignition switch defects.

**D.     GM has not Recalled all the Defective Vehicles**

81.     Plaintiffs' research, including a review of NHTSA's complaint database, suggests that GM's recall does not capture all of the Defective Vehicles. Plaintiffs thereupon believe and allege that the following additional non-recalled GM vehicles also have defective ignition switches: the 2005 Chevrolet Equinox, the 2006 Chevrolet Trailblazer, and the 2006 Chevrolet Monte Carlo.

82.     Plaintiff and Class Representative Daniel Ratzlaff owns a 2005 Chevy Equinox.  As discussed above, Plaintiff has suffered from incidents of unintended shut down, and believes those incidents are the result of the ignition switch defects. Plaintiffs therefore believe and allege that the 2005 Equinox is a Defective Vehicle.

83.     The 2006 Chevrolet Trailblazer appears to have the ignition switch defect.  According to a complaint lodged with NHTSA on January 1, 2014:

> The contact owns a 2006 Chevrolet Trailblazer. ***The contact stated that while driving 15 mph, the vehicle stalled without any warning.***  The contact was able to

---

[16] "*Something Went 'Very Wrong' at G.M., Chief Says.*"  N.Y. TIMES (Mar. 18, 2014).

- 16 -

1  restart the vehicle which resumed normal function.  The
2  vehicle was taken to the dealer several times.  *The
   technician stated that the* exhaust cam shaft solenoid, cam
3  shaft sensor, *ignition switch needed to be replaced* and the
   computer needed to be reprogrammed.  The manufacturer
4  was notified of the failure…. (Emphasis added.)

5
6      84.    According to another complaint about a 2006 Chevrolet Trailblazer
7  lodged with NTHSA on August 28, 2013:

8          First incident: (23 August 2013) Driving to stop at stop
           sign at approximately 15 mph. *Vehicle turned off without*
9          *any warning lights.*  Second incident:  (26 August 2013)
           Driving on highway going close to  65 mph.  *Once again*
10         *vehicle turned off without any warning lights.  Had to*
           *turn hazards off and coast to safe zone while cars were*
11         *passing me going 65-80 mph*.  Third incident:  (28 August
           2013) Driving close to 50 mph.  *Once again vehicle shut*
12         *off without any warning lights.  Once again had to coast*
           *to the median and hope not to get in a car wreck.*  All 3 of
13         these incidents happened with my 2 year old daughter in
           the vehicle.  I have also done research through various
14         forums and websites. *It happens without any warning at*
15         *all and from what I have read there is only a temporary*
           *fix by changing the ignition switch* but months later it
16         comes back.  The only thing that you can do (from my
           knowledge) is let it sit for an hour or 2 and then it starts up
17         fine.  But when you [a]r[e] driving at 70 mph the last thing
           you want is for your vehicle to completely shut off on the
18         highway.  There are thousands of people in the exact same
19         situation as me hoping the next time they get into their
           vehicle they won't be in an accident…. (Emphasis added.)
20

21     85.    On information and belief, the 2006 Chevrolet Monte Carlo was also
22  manufactured using the defective ignition switches.  According to a March 6, 2014
23  complaint lodged with NHTSA:
24
25         While driving my car, it just shut off automatically.  Then
           it has been doing it multiple time[s] since.  It can happen
26         three to five times per day.  The dealership has tried to
27         reboot the computer system numerous times.  It still shuts

- 17 -

off with no warning.  I just listen to the fan if it shuts off, I have to put the transmission in neutral, and start the car while coasting.  I feel that this is related to the GM Chevrolet recall.  Feel free to call for a more in depth description of the ignition problem.  For the affected parts question [of the NHTSA intake form], it did not include ignition.  Therefore, I listed the areas of the car affected when the engine would shut off.  The steering, braking were also affected….

**E.      Old GM and GM Promoted the Defective Vehicles as Safe and Reliable**

86.     On information and belief, in marketing and advertising materials, Old GM and GM consistently promoted all their vehicles, including the Defective Vehicles, as safe and reliable.

87.     For example, under a section captured "safety," Old GM's website for its Chevrolet brand stated in 2005:

> **OUR COMMITMENT**
>
> Your family's safety is important to us. Whether it's a short errand around town or a cross-country road trip, Chevrolet is committed to keeping you and your family safe – from the start of your journey to your destination.
>
> That's why every Chevrolet is designed with a comprehensive list of safety and security features to help give you peace of mind….

88.     One Cobalt ad promised that "Side curtain airbags coupled with OnStar makes every journey the safest possible to assure that you and your occupants will stay safe at all times."

89.     An ad for the 2006 Solstice promises that the vehicle "[b]rings power and defines performance."

90.     A 2003 television spot for the Saturn vehicle closed with the tagline "Specifically engineered for whatever is next."  Another 2003 spot closed with the tagline "Saturn.  People first."

- 18 -

91.    A 2001 print ad touting the launch of the Saturn focused on safety:

Need is where you begin.  In cars, it's about things like
reliability, durability and, of course, safety.  That's where
we started when developing our new line of cars.  And it
wasn't until we were satisfied that we added things….

92.    Once GM came into existence, it continued to stress the safety and
reliability of all its vehicles – including the Defective Vehicles.

93.    For example, GM's Chevrolet brand ran television ads in 2010 showing
parents bringing their newborn babies home from the hospital, with the tagline "As
long as there are babies, there'll be Chevys to bring them home."

94.    Another 2010 television ad informed consumers that "Chevrolet's
ingenuity and integrity remain strong, exploring new areas of design and power,
while continuing to make some of the safest vehicles on earth."

95.    Old GM and GM made these representations to boost vehicle sales and
maximize profits while knowing that the ignition switches in the Defective Vehicles
were defective.

96.    Throughout the relevant period, Old GM and GM possessed vastly
superior knowledge and information to that of consumers – if not exclusive
information – about the design and function of the ignition switches in the Defective
Vehicles and the existence of the defects in those vehicles.

97.    Old GM and GM never informed consumers about the ignition switch
defects.

**F.    The Ignition Switch Defects have Harmed Plaintiffs and the Class**

98.    The ignition switch defects have caused damage to Plaintiffs and the
Class.

- 19 -

99. A vehicle purchased, leased, or retained with a serious safety defect is worth less than the equivalent vehicle leased, purchased, or retained without the defect.

100. A vehicle purchased, leased, or retained under the reasonable assumption that it is safe is worth more than a vehicle known to be subject to the unreasonable risk of catastrophic accident because of the ignition switch defects.

101. Purchasers and lessees paid more for the Defective Vehicles, through a higher purchase price or higher lease payments, than they would have had the ignition switch defects been disclosed. Plaintiffs and the Class overpaid for their Defective Vehicles. Because of the concealed ignition switch defects, Plaintiffs did not receive the benefit of the bargain.

102. Class members who purchased new or used Defective Vehicles after the date GM came into existence – July 10, 2009 – overpaid for their Defective Vehicles as a direct result of GM's ongoing violations of the TREAD Act and state consumer protection laws by failing to disclose the existence of the ignition switch defects.

103. Plaintiffs and the Class are stuck with unsafe vehicles that are now worth less than they would have been but for the Companies' failure to disclose and remedy the ignition switch defects.

104. GM admits to at least 13 deaths resulting from accidents linked to the ignition switch defects in the Defective Vehicles. However, Plaintiffs believe that the actual number is much higher, and that there may have been hundreds of deaths and injuries attributable to the ignition switch defects.

105. If Old GM or GM had timely disclosed the ignition switch defects as required by the MCPA, the TREAD Act, and the State consumer protection laws set forth below, all Class members' vehicles would now be worth more.

010440-11 679569 V1

## V.  SUCCESSOR LIABILITY

106.  As discussed above, GM expressly assumed certain obligations under, *inter alia*, the TREAD Act, and is liable for its non-disclosure and concealment of the ignition switch defects from the date of its formation on July 10, 2009.

107.  GM also expressly assumed liability for Lemon Law claims in the Master Sale and Purchase Agreement of June 26, 2009, and this assumption of liability includes the Class's claims under the Song-Beverly Act, which is California's Lemon Law statute.

108.  GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM, for the following reasons:

- GM admits that it knew of the ignition system defects from the very date of its formation;

- GM's current CEO, Mary Barra, began working at Old GM in 1980, and in February 2008 she became Vice President of Global Manufacturing Engineering, in which position she knew or should have known of the ignition switch defects;

- GM's Rule 30(b)(6) deponent concerning complaints Old GM and GM received about ignition switch defects in the Cobalt, Victor Hakim, worked at Old GM from 1971 until the end of Old GM, and now is a "Senior Manager/Consultant" in the "field performance assessment" department, further demonstrating GM's longstanding knowledge of the ignition switch defects.

- GM has continued in the business of designing, manufacturing, and marketing vehicles, including at least some of the same vehicles as Old GM;

- GM retained the bulk of the employees of Old GM;

- GM acquired owned and leased real property of Old GM, including all machinery, equipment, tools, information technology, product inventory, and intellectual property;

- GM acquired the contracts, books, and records of Old GM; and

- 21 -

- GM acquired all goodwill and other intangible personal property of Old GM.

## VI.    TOLLING OF THE STATUTES OF LIMITATION

109.    All applicable statutes of limitation have been tolled by GM's knowing and active fraudulent concealment and denial of the facts alleged herein.  Plaintiffs and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Old GM and GM did not report information within their knowledge to federal authorities (NHTSA) or consumers, nor would a reasonable and diligent investigation have disclosed that Old GM and GM had information in their possession about the existence and dangerousness of the defect and opted to conceal that information until shortly before this class action was filed.

110.    Indeed, Old GM instructed its service shops to provide Defective Vehicle owners with a new key ring if they complained about unintended shut down, rather than admit what Old GM knew – that the ignition switches were dangerously defective and warranted replacement with a properly designed and built ignition system.

111.    In April 2006, some eight years before the first recall of some Defective Vehicles, Old GM internally authorized a redesign of the defective ignition switch. Yet, as part of Old GM's concealment of the defect, GM redesigned the part ***but kept the old part number***.  According to one of the high-level Old GM engineers at the time, "Changing the fit, form or function of a part without making a part number change is a cardinal sin.  It would have been an extraordinary violation of internal processes."[17]

112.    Old GM and GM were, and GM remains, under a continuing duty to disclose to NHTSA, Plaintiffs, and the Class the true character, quality, and nature of

---

[17] "'*Cardinal sin*':  *Former GM engineers say quiet '06 redesign of faulty ignition switch was a major violation of protocol.*"  *Automotive News* (Mar. 26, 2014).

- 22 -

1    the Defective Vehicles; that this defect is based on dangerous, inadequate, and

2    defective design and/or substandard materials; and that it will require repair, poses a

3    severe safety concern, and diminishes the value of the Defective Vehicles.

4          113.   Because of the active concealment by Old GM and GM, any and all

5    limitations periods otherwise applicable to Plaintiffs' claims have been tolled.

## VII.   CLASS ALLEGATIONS

### A.     The Nationwide Class

114.   Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

Procedure, Plaintiffs bring this action on behalf of themselves and a Class initially

defined as follows:

> During the fullest period allowed by law, all persons in the
> United States who currently own or lease one or more of
> the following GM vehicles: (a) (The recalled vehicles):
> 2003-2010 Saturn Ion; 2005-2010 Chevrolet Cobalt; 2007-
> 2010 Pontiac G5; 2006-2011 Chevrolet HHR; 2006-2010
> Pontiac Solstice; and 2007-2010 Saturn Sky; and (b) (Non-
> recalled vehicles): the 2005 Chevrolet Equinox, the 2006
> Chevrolet Trailblazer, and the 2006 Chevrolet Monte Carlo
> (hereinafter "Defective Vehicles"). To the extent
> warranted, this list will be supplemented to include other
> GM vehicles that have the defective ignition switches,
> which inadvertently turn off the engine and vehicle
> electrical systems during ordinary driving conditions.

### B.     Statewide Consumer Classes

115.   In the alternative, in the event the Court declines to certify a nationwide

Class, Plaintiffs allege a separate Class for the District of Columbia and each State

that has its own consumer protection laws. These Classes are defined as follows for

the claims asserted under a particular jurisdiction's law:

> During the fullest period allowed by law, all persons or
> entities in the **State of Alabama** who currently own or
> lease one or more of the Defective Vehicles.

- 23 -

During the fullest period allowed by law, all persons or entities in the **State of Alaska** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of California** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Colorado** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Connecticut** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Delaware** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **District of Columbia** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Florida** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Georgia** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Hawaii** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Idaho** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Illinois** who currently own or lease one or more of the Defective Vehicles.

010440-11 679569 V1

1    During the fullest period allowed by law, all persons or
2    entities in the **State of Indiana** who currently own or lease
3    one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or
entities in the **State of Iowa** who currently own or lease
one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or
entities in the **State of Kansas** who currently own or lease
one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or
entities in the **Commonwealth of Kentucky** who currently
own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or
entities in the **State of Maine** who currently own or lease
one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or
entities in the **State of Maryland** who currently own or
lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or
entities in the **Commonwealth of Massachusetts** who
currently own or lease one or more of the Defective
Vehicles.

During the fullest period allowed by law, all persons or
entities in the **State of Michigan** who currently own or
lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or
entities in the **State of Minnesota** who currently own or
lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or
entities in the **State of Mississippi** who currently own or
lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or
entities in the **State of Missouri** who currently own or
lease one or more of the Defective Vehicles.

- 25 -

During the fullest period allowed by law, all persons or entities in the **State of Montana** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Nebraska** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Nevada** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of New Hampshire** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of New Jersey** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of New Mexico** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of New York** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of North Carolina** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of North Dakota** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Ohio** who currently own or lease one or more of the Defective Vehicles.

During the fullest period allowed by law, all persons or entities in the **State of Oklahoma** who currently own or lease one or more of the Defective Vehicles.

- 26 -

1
2
3

      During the fullest period allowed by law, all persons or entities in the **State of Oregon** who currently own or lease one or more of the Defective Vehicles.

4
5
6

      During the fullest period allowed by law, all persons or entities in the **Commonwealth of Pennsylvania** who currently own or lease one or more of the Defective Vehicles.

7
8

      During the fullest period allowed by law, all persons or entities in the **State of Rhode Island** who currently own or lease one or more of the Defective Vehicles.

9
10
11

      During the fullest period allowed by law, all persons or entities in the **State of South Carolina** who currently own or lease one or more of the Defective Vehicles.

12
13

      During the fullest period allowed by law, all persons or entities in the **State of South Dakota** who currently own or lease one or more of the Defective Vehicles.

14
15
16

      During the fullest period allowed by law, all persons or entities in the **State of Tennessee** who currently own or lease one or more of the Defective Vehicles.

17
18

      During the fullest period allowed by law, all persons or entities in the **State of Texas** who currently own or lease one or more of the Defective Vehicles.

19
20
21

      During the fullest period allowed by law, all persons or entities in the **State of Utah** who currently own or lease one or more of the Defective Vehicles.

22
23

      During the fullest period allowed by law, all persons or entities in the **State of Vermont** who currently own or lease one or more of the Defective Vehicles.

24
25
26

      During the fullest period allowed by law, all persons or entities in the **State of Virginia** who currently own or lease one or more of the Defective Vehicles.

27
28

      During the fullest period allowed by law, all persons or entities in the **State of Washington** who currently own or lease one or more of the Defective Vehicles.

- 27 -

1
2
3

    During the fullest period allowed by law, all persons or entities in the **Commonwealth of Virginia** who currently own or lease one or more of the Defective Vehicles.

4
5

    During the fullest period allowed by law, all persons or entities in the **State of West Virginia** who currently own or lease one or more of the Defective Vehicles.

6
7

    During the fullest period allowed by law, all persons or entities in the **State of Wisconsin** who currently own or lease one or more of the Defective Vehicles.

8
9
10

    During the fullest period allowed by law, all persons or entities in the **State of Wyoming** who currently own or lease one or more of the Defective Vehicles.

11
12
13
14
15
16
17

    116.   Excluded from each Class are Old GM and GM, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons.  Also excluded are any individuals claiming damages from personal injuries arising from an incident involving a Defective Vehicle.

18
19
20
21
22

    117.   Plaintiffs are informed and believe that Old GM manufactured and sold to consumers at least 2.59 million potentially Defective Vehicles nationwide and thousands of Defective Vehicles in each State where an alternative statewide consumer Class claim is pled.  Individual joinder of all Class members is impracticable.

23
24
25
26

    118.   The Class expressly disclaims any recovery for physical injury resulting from the ignition switch defects.  But the increased risk of injury from the ignition switch defects serves as an independent justification for the relief sought by Plaintiffs and the Class.

27
28

- 28 -

119.    The Class can be readily identified using registration records, sales records, production records, and other information kept by GM or third parties in the usual course of business and within their control.

120.    Questions of law and fact are common to the Class and predominate over questions affecting only individual members, including the following:

        a.    Whether the Defective Vehicles suffer from ignition switch defects;

        b.    Whether Old GM and GM concealed the defects;

        c.    Whether Old GM and GM misrepresented that the Defective Vehicles were safe;

        d.    Whether Old GM and GM engaged in fraudulent concealment;

        e.    Whether Old GM and GM engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective ignition switches;

        f.    Whether the alleged conduct by GM violated laws as Plaintiffs allege;

        g.    Whether Old GM's and GM's unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the members of the Class;

        h.    Whether Plaintiffs and the members of the Class are entitled to equitable and/or injunctive relief;

        i.    Whether, and to what extent, GM has successor liability for the acts and omissions of Old GM; and

        j.    Whether any or all applicable limitations periods are tolled by acts of fraudulent concealment.

121.    Plaintiffs' claims are typical of the claims of the Class members, and arise from the same course of conduct by GM and Old GM.  The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

010440-11  679569 V1

122.   Plaintiffs will fairly and adequately represent and protect the interests of all absent Class members.  Plaintiffs are represented by counsel competent and experienced in product liability, consumer protection, and class action litigation.

123.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable.  Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

124.   The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of conduct for GM.  The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

125.   Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Plaintiffs anticipate providing appropriate notice to be approved by the Court after discovery into the size and nature of the Class.

## VIII.  CAUSES OF ACTION

A.     **Nationwide Class Claims**

### COUNT I

### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. L. ANN. § 445.901, *et seq.*)

126.   Plaintiffs and the Class reallege and incorporate by reference each paragraph as though fully set forth at length herein.

- 30 -

1      127.   This claim is brought on behalf of the nationwide Class, or, alternatively

2  in the event the Court declines to certify a nationwide Class, on behalf of a Class of

3  Michigan residents who own one or more of the Defective Vehicles.

4      128.   Old GM, GM, and Plaintiffs are each "persons" under MICH. COMP. L.

5  ANN. § 445.902(d).

6      129.   The sale of the Defective Vehicles to Plaintiffs and the Class occurred

7  within "trade and commerce" within the meaning of MICH. COMP. L. ANN.

8  § 445.902(d), and both GM and Old GM committed deceptive and unfair acts in the

9  conduct of "trade and commerce" as defined in that statutory section.

10      130.   The Michigan Consumer Protection Act ("MCPA") makes unlawful any

11  "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of

12  trade or commerce," as more specifically defined in the MCPA. MICH. COMP. L.

13  ANN. § 445.903(1). GM has engaged in unfair, unconscionable, and deceptive

14  methods, acts and practices in violation of the MCPA, and also has successor

15  liability for the unfair, unconscionable, and deceptive methods, acts, and practices of

16  Old GM as set forth above.

17      131.   Both Old GM and GM violated the MCPA by "[f]ailing to reveal a

18  material fact, the omission of which tends to mislead or deceive the consumer, and

19  which fact could not reasonably be known by the consumer." MICH. COMP. L. ANN.

20  § 445.903(s).

21      132.   As alleged above, both Companies knew of the ignition switch defect,

22  while Plaintiffs and the Class were deceived by the Companies' omission into

23  believing the Defective Vehicles were safe, and the information could not have

24  reasonably been known by the consumer until the February and March 2014 recalls.

25      133.   Old GM also violated the MCPA by "[m]aking a representation of fact

26  or statement of fact material to the transaction such that a person reasonably believes

27  the represented or suggested state of affairs to be other than it actually is." MICH.

28  COMP. L. ANN. § 405.903(bb). For example, Old GM represented that the Defective

010440-11  679569 V1

1 Vehicles were safe such that reasonable people believed the represented or suggested

2 state of affairs to be true; namely, that the Defective Vehicles were safe.

3     134.   Old GM also violated the MCPA by "[f]ailing to reveal facts that are

4 material to the transaction in light of representations of fact made in a positive

5 manner." MICH. COMP. L. ANN. § 405.903(cc). Old GM represented that the

6 Defective Vehicles were safe, which made it even more incumbent on Old GM to

7 reveal the material fact of the ignition switch defects.

8     135.   Old GM's and GM's acts and practices were unfair and unconscionable,

9 because their acts and practices, including the manufacture and sale of vehicles with

10 an ignition switch defect, and the Companies' failure to adequately disclose the

11 defect to NHTSA and the Class and timely implement a remedy, offend established

12 public policy, and because the harm the Companies caused consumers greatly

13 outweighs any benefits associated with those practices. The Companies' conduct has

14 also impaired competition within the automotive vehicles market and has prevented

15 Plaintiffs and the Class from making fully informed decisions about whether to lease,

16 purchase, and/or retain the Defective Vehicles.

17     136.   While Old GM knew of the ignition switch defects by 2001, it

18 continued to design, manufacture, and market the Defective Vehicles until 2007.

19     137.   All the while, Old GM knew that the vehicles had an unreasonable

20 propensity to shut down during ordinary driving conditions, leading to an

21 unreasonable risk of serious bodily injury or death.

22     138.   Plaintiffs and the Class have suffered an injury, including the loss of

23 money or property, as a result of GM's unfair, unlawful, and/or deceptive practices.

24 Old GM and GM failed to inform NHTSA, and therefore failed to inform consumers,

25 that the Defective Vehicles had a defective ignition switch that could lead to injury

26 and death. Had Plaintiffs and the Class known this, they would either not have

27 purchased their vehicles at all or would have paid less for them, and would not have

28

- 32 -

retained their Defective Vehicles.  Plaintiffs and the Class have therefore suffered a "loss" because of the violations of the MCPA complained of herein.

139.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

140.   Plaintiffs request that this Court:  enjoin GM from continuing its unfair, unlawful, and/or deceptive practices; provide to Plaintiffs and each Class member either their actual damages as the result of GM's unfair, unlawful, and deceptive trade practices, or $250 per Class member, whichever is higher; award reasonable attorneys' fees; and provide other appropriate relief under MICH. COMP. L. ANN. § 445.911.

141.   Plaintiffs acknowledge that, on its face, the MCPA purports to (i) deprive non-residents of bringing class (but not individual) actions under the MCPA; and (ii) allows individuals (but not class members) the ability to recover a penalty of $250 per person if that amount is greater than their actual damages.  After the United States Supreme Court's decision in *Shady Grove Orthopedic Ass'n, P.A. v. Allstate Ins. Co.*, 589 U.S. 393 (2010), however, any such prohibitions imposed in class actions (but not in individual actions) are trumped and superseded by Fed. R. Civ. P. 23, which imposes no such restrictions.

## COUNT II
## FRAUDULENT CONCEALMENT

142.   Plaintiffs and the Class incorporate by reference each preceding and following paragraph as though fully set forth at length herein.

143.   This claim is brought on behalf of the nationwide Class.

- 33 -

144.   GM concealed and suppressed material facts concerning the ignition switch defects, and GM also has successor liability for the acts of concealment and oppression of Old GM as set forth above.

145.   The Companies had a duty to disclose the ignition switch defects because they were known and/or accessible only to the Companies who had superior knowledge and access to the facts, and the Companies knew they were not known to or reasonably discoverable by Plaintiffs and the Class.  These omitted and concealed facts were material because they directly impact the safety of the Defective Vehicles. Whether an ignition switch was designed and manufactured with appropriate safeguards is a material safety concern.

146.   The Companies actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and avoid a costly recall, and they did so at the expense of Plaintiffs and the Class.

147.   On information and belief, GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Class and conceal material information regarding the defects that exist in the Defective Vehicles and other GM vehicles.

148.   Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Class's actions were justified.  The Companies were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Class.

149.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they purchased and retained vehicles that are now diminished in value from what they would have been had the Companies timely disclosed the ignition switch defects.

150.   The Companies' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights

- 34 -

1   and well-being to enrich the Companies.  The Companies' conduct warrants an

2   assessment of punitive damages in an amount sufficient to deter such conduct in the

3   future, which amount is to be determined according to proof.

4   **B.        Statewide Consumer Class Claims**

5   ### ALABAMA

6   ### VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT

7   ### (ALA. CODE § 8-19-1, *et seq.*)

8   151.   In the event the Court declines to certify a nationwide Class, this claim

9   is brought only on behalf of Class members residing in Alabama.

10  152.   Plaintiffs reallege and incorporate by reference all paragraphs as though

11  fully set forth herein.

12  153.   The conduct of Old GM and GM, as set forth herein, constitutes unfair

13  or deceptive acts or practices, including, but not limited to, Old GM's manufacture

14  and sale of vehicles with ignition switch defects which Old GM and GM failed to

15  adequately investigate, disclose and remedy, and the Companies' misrepresentations

16  and omissions regarding the safety and reliability of their vehicles.

17  154.   The Companies' actions, as set forth above, occurred in the conduct of

18  trade or commerce.

19  155.   The Companies' actions impact the public interest because Plaintiffs

20  were injured in exactly the same way as millions of others purchasing, leasing and/or

21  retaining Defective Vehicles as a result of the Companies' generalized course of

22  deception.  All of the wrongful conduct alleged herein occurred, and continues to

23  occur, in the conduct of the Companies' business.

24  156.   Plaintiffs and the Class were injured as a result of the Companies'

25  conduct.  Plaintiffs overpaid for their Defective Vehicles and did not receive the

26  benefit of their bargain, and their vehicles have suffered a diminution in value.

27  157.   GM's conduct, and the conduct of Old GM for which GM has successor

28  liability, proximately caused the injuries to Plaintiffs and the Class.

- 35 -

158. GM is liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

159. Pursuant to ALA. CODE § 8-19-8, Plaintiffs will serve the Alabama Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## ALASKA

### VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

### (AUTPCPA, ALASKA STAT. ANN. § 45.50.471, *et seq.*)

160. In the event the Court declines to certify a nationwide Class, this claim is brought only on behalf of Class members residing in Alaska.

161. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

162. The Alaska Unfair Trade Practices and Consumer Protection Act ("AUTPCPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." ALASKA STAT. ANN.

§ 45.50.471. GM is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the AUTPCPA, and also has successor liability for the violations of Old GM.

163. In the course of their business, both Old GM and GM willfully failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles as described herein. Old GM also engaged in unlawful trade practices by representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Defective Vehicles are of a particular standard and quality when they are not; advertising the Defective Vehicles with the intent not to sell them as advertised; and omitting material facts in describing the Defective Vehicles.

164. As alleged above, both Companies knew of the ignition switch defects, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

165. While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

166. All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

167. Old GM's and GM's misrepresentations and omissions described herein have the capacity or tendency to deceive. Because of these unlawful trade practices, including failure to disclose material information, Class members suffered ascertainable loss. Class members overpaid for their vehicles and did not receive the benefit of their bargain. The value of their vehicles has diminished now that the safety issues have come to light, and Class members own vehicles that are not safe.

- 37 -

168.   Old GM's and GM's acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, were unconscionable because they offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and the Class from making fully informed decisions about whether to lease, purchase and/or retain the Defective Vehicles.

169.   Class members also seek punitive damages against GM because both Old GM's and GM's conduct was outrageous, malicious, with bad motive, or evidenced reckless indifference to the interest of the Class members.  Old GM and GM misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly promised Class members were safe.  Old GM's and GM's outrageous, malicious, reckless, and bad-intentioned conduct warrants punitive damages.

170.   Because they have suffered ascertainable loss, Class members are entitled to recover three times their actual damages or $500, whichever is greater, punitive damages, and reasonable attorneys' fees.  ALASKA STAT. ANN. §§ 45.50.531 and 45.50.537.

## CALIFORNIA

### COUNT I

### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT

### (CAL. CIV. CODE § 1750, *et seq.*)

171.    In the event the Court declines to certify a nationwide Class, this claim is brought only on behalf of Class members residing in California.

172.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

173.    GM is a "person" under CAL. CIV. CODE § 1761(c).

174.    Plaintiffs are "consumers," as defined by CAL. CIVIL CODE § 1761(d), who purchased or leased one or more Defective Vehicles.

175.    GM engaged in unfair or deceptive acts or practices that violated CAL. CIV. CODE § 1750, *et seq.*, as described above and below.

176.    Under the TREAD Act, 49 U.S.C. §§ 30101, *et seq.*, and its accompanying regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect.  49 U.S.C. § 30118(c)(1) & (2).

177.    In acquiring Old GM, GM expressly assumed the obligations to make all required disclosures under the TREAD Act.

178.    GM also has successor liability for the deceptive and unfair acts and omissions of Old GM.

179.    Under the TREAD Act, if it is determined that the vehicle is defective, the manufacturer must promptly notify vehicle owners, purchasers and dealers of the defect and remedy the defect.  49 U.S.C. § 30118(b)(2)(A) & (B).

180.    Under the TREAD Act, manufacturers must also file a report with NHTSA within five working days of discovering "a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist."  49 C.F.R. § 573.6(a) &

- 39 -

(b).  At a minimum, the report to NHTSA must include:  the manufacturer's name; the identification of the vehicles or equipment containing the defect, including the make, line, model year and years of manufacturing; a description of the basis for determining the recall population; how those vehicles differ from similar vehicles that the manufacturer excluded from the recall; and a description of the defect.  49 C.F.R. § 276.6(b), (c)(1), (c)(2), & (c)(5).

181.   The manufacturer must also promptly inform NHTSA regarding:  the total number of vehicles or equipment potentially containing the defect; the percentage of vehicles estimated to contain the defect; a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with its dates of receipt; and a description of the plan to remedy the defect.  49 C.F.R. § 276.6(b) & (c).

182.   The TREAD Act provides that any manufacturer who violates 49 U.S.C. § 30166 must pay a civil penalty to the U.S. Government.  The current penalty "is $7,000 per violation per day," and the maximum penalty "for a related series of daily violations is $17,350,000."  49 C.F.R. § 578.6(c).

183.   From at least 2001, Old GM had knowledge of the ignition switch defect, but hid the problem for the remainder of its existence until 2009.

184.   From its creation on July 10, 2009, GM knew of the ignition switch problem because of the knowledge of Old GM and continuous reports up until the present.

185.   GM admits the defect in the ignition switch has been linked to at least 13 accident-related fatalities.  But other sources have reported that hundreds of deaths and serious injuries are linked to the faulty ignition switches.

186.   Despite being aware of the ignition switch defects ever since its creation on July 10, 2009, GM waited until February 7, 2014, before finally sending a letter to NHTSA confessing its knowledge of the ignition switch defects which could cause

- 40 -

1  the vehicles to lose power, and in turn cause the airbags not to deploy.  GM initially

2  identified two vehicle models, along with the corresponding model years, affected by

3  the defect – the 2005-2007 Chevrolet Cobalt and the 2007 Pontiac G5.  On

4  February 25, 2014, GM amended its letter to include four additional vehicles, the

5  2006-2007 Chevrolet HHR, 2006-2007 Pontiac Solstice, 2003-2007 Saturn Ion, and

6  the 2007 Saturn Sky.

7  187.   By failing to disclose and by actively concealing the ignition switch

8  defect, and by selling vehicles while violating the TREAD Act and through its other

9  conduct as alleged herein, Old GM and GM both engaged in deceptive business

10  practices prohibited by the CLRA, CAL. CIV. CODE § 1750, *et seq.*

11  188.   Both Old GM and GM failed for many years to inform NHTSA about

12  known defects in the Defective Vehicles' ignition system.  Consequently, the public,

13  including Plaintiffs and the Class, received no notice of the ignition switch defects,

14  that the defect could disable multiple electrical functions including power steering

15  and power brakes, or that the defect could cause the airbags not to deploy in an

16  accident.

17  189.   GM knew that the ignition switch had a defect that could cause a

18  vehicle's engine to lose power without warning, and that when the engine lost power

19  there was a risk that electrical functions would fail and that the airbags would not

20  deploy. Yet GM failed to inform NHTSA or warn Plaintiffs or the public about these

21  inherent dangers despite having a duty to do so.

22  190.   Old GM and GM owed Plaintiffs and the Class a duty to comply with

23  the TREAD Act and disclose the defective nature of the Defective Vehicles,

24  including the ignition switch defect and accompanying loss of power and failure of

25  the airbags to deploy, because Old GM and GM:

26  a.   Possessed exclusive knowledge of the ignition switch defects

27  rendering the Defective Vehicles inherently more dangerous and unreliable than

28  otherwise similar vehicles; and

- 41 -

010440-11  679569 V1

b.      Intentionally concealed the hazardous situation with the Defective Vehicles by failing to comply with the TREAD Act, which required the disclosure of the ignition switch defects.

191.   Defective Vehicles equipped with the faulty ignition switch pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, and pedestrians, because they are susceptible to sudden loss of power resulting in the loss of power steering and power brakes and failure of the airbags to deploy.

192.   Old GM's and GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the Defective Vehicles.

193.   Because of their violations of the CLRA detailed above, Old GM and GM caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs and the California Subclass.  Plaintiffs and the Class members currently own or lease Defective Vehicles that are defective and inherently unsafe.  These violations caused the diminution in value of Plaintiffs' vehicles which are now worth less than they would have been without the ignition switch defects.  Had Old GM timely disclosed the defect, Plaintiffs would either not have purchased a Defective Vehicle at all, or would have paid less for the Defective Vehicle.  Plaintiffs and the Class did not receive the benefit of their bargain which was for a safe vehicle free of serious safety defects.

194.   Had GM timely disclosed the ignition switch defects, the issue would have been resolved years ago and the value of Plaintiffs' Defective Vehicles would not now be diminished.

195.   Plaintiffs and the Class face the risk of irreparable injury as a result of GM's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs and to the general public.

- 42 -

196.   Plaintiffs in this Complaint seek injunctive relief.  Plaintiff Ratzlaff sent a CRLA Notice Letter to GM on March 28, 2014.  After thirty days, Plaintiffs will, Under CAL. CIV. CODE § 1780(a), seek monetary relief against GM measured as the diminution of the value of their vehicles caused by Old GM's and GM's violations of the CLRA as alleged herein.

197.   Under CAL. CIV. CODE § 1780(b), Plaintiffs will seek an additional award against GM of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the CLRA.  Old GM and GM knew or should have known that their conduct was directed to one or more Class members who are senior citizens or disabled persons.  Old GM's and GM's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Old GM's and GM's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Old GM's and GM's conduct.

198.   Plaintiffs will also seek punitive damages against GM because it carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the Class to potential cruel and unjust hardship as a result.  First Old GM and then GM intentionally and willfully concealed and failed to inform NHTSA of the unsafe and unreliable Defective Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations problem of correcting a deadly flaw in the Defective Vehicles.  GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under CAL. CIV. CODE § 3294.

010440-11  679569 V1

199.   Plaintiffs further seek an order enjoining GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under CAL. CIV. CODE § 1780(e), and any other just and proper relief available under the CLRA.

200.   Plaintiffs include affidavits with this Complaint that show that venue in this District is proper, to the extent such affidavits are required by CAL. CIV. CODE § 1780(d).

## COUNT II

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

201.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in California.

202.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

203.   California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." GM has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL, and also has successor liability for the unlawful, fraudulent and unfair business acts and practices of Old GM.

204.   Both Old GM and GM violated the unlawful prong of section 17200 by their violations of the CLRA, CAL. CIV. CODE § 1750, *et seq.*, as set forth in Count I and by the acts and practices set forth in this Complaint.

205.   Both Old GM and GM also violated the unlawful prong because they engaged in business acts or practices that are unlawful because they violate the TREAD Act, 49 U.S.C. §§ 30101, *et seq.*, and its regulations.

206.   Old GM and GM violated the TREAD Act when they failed to timely inform NHTSA of the ignition switch defects and allowed cars to be sold with these defects.

- 44 -

207.   Old GM and GM violated the unfair and fraudulent prong of section 17200 because, in failing or refusing to inform NHTSA about a defect affecting the safety and reliability of the Defective Vehicles, the Companies precluded reasonable owners from discovering their vehicles were unsafe and unreliable.  The information that the Companies were required to disclose to NHTSA about the faulty ignition switch was material to a reasonable consumer.

208.   Old GM and GM also violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with an ignition switch defect and the Companies' failure to adequately disclose the defect to NHTSA and implement a remedy, offend established public policy, and also because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and the Class from making fully informed decisions about whether to lease, purchase and/or retain the Defective Vehicles.

209.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture and market the Defective Vehicles until 2007.  All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

210.   Plaintiffs and the Class have suffered an injury, including the loss of money or property, because of GM's unfair, unlawful and/or deceptive practices.  Old GM and GM failed to inform NHTSA, and therefore failed to inform consumers, that its vehicles had a defective ignition switch that could lead to injury and death.  Had Plaintiffs and the Class known this they would either not have purchased their vehicles at all or would have paid less for them, and would not have retained their Defective Vehicles.

- 45 -

1   211.   All of the wrongful conduct alleged herein occurred, and continues to

2   occur, in the conduct of the Companies' business.  The Companies' wrongful

3   conduct is part of a pattern or generalized course of conduct that is still perpetuated

4   and repeated, both in California and nationwide.

5   212.   Plaintiffs and the Class have suffered an injury, including the loss of

6   money or property, due to GM's unfair, unlawful and/or deceptive practices.

7   213.   Plaintiffs request that this Court enter such orders or judgments as may

8   be necessary, including a declaratory judgment that GM has violated the UCL; an

9   order enjoining GM from continuing its unfair, unlawful, and/or deceptive practices;

10  an order and judgment restoring to the Class members any money lost as the result of

11  GM's unfair, unlawful and deceptive trade practices, including restitution and

12  disgorgement of any profits GM received as a result of its unfair, unlawful and/or

13  deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203, Cal Civ.

14  Proc. § 384 and Cal. Civ. Code § 3345; and for such other relief as may be just and

15  proper.

### COUNT III

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CALIFORNIA "LEMON LAW")**

**(Cal. Civ. Code §§ 1791.1 & 1792)**

20  214.   In the event the Court declines to certify a nationwide Class, Plaintiffs

21  bring this claim solely on behalf of California residents.

22  215.   Plaintiffs reallege and incorporate by reference all paragraphs as though

23  fully set forth herein.

24  216.   Plaintiffs and Class members who purchased or leased the Defective

25  Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

26  217.   The Defective Vehicles are "consumer goods" within the meaning of

27  Civ. Code § 1791(a).

28

- 46 -

218. Old GM was a "manufacturer" of the Defective Vehicles within the meaning of CAL. CIV. CODE § 1791(j), and, in purchasing Old GM, GM expressly assumed liability and responsibility for "payment of all [Old GM's] Liabilities arising under …Lemon Laws," including California's Lemon Law, the Song-Beverly Act.

219. Old GM impliedly warranted to Plaintiffs and the Class that its Defective Vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792; however, the Defective Vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

220. CAL. CIV. CODE § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> (1)  Pass without objection in the trade under the contract description.
>
> (2)  Are fit for the ordinary purposes for which such goods are used.
>
> (3)  Are adequately contained, packaged, and labeled.
>
> (4)  Conform to the promises or affirmations of fact made on the container or label.

221. The Defective Vehicles would not pass without objection in the automotive trade because of the ignition switch defects that cause the Defective Vehicles to inadvertently shut down during ordinary driving conditions, leading to an unreasonable likelihood of accident and an unreasonable likelihood that such accidents would cause serious bodily harm or death to vehicle occupants.

222. Because of the ignition switch defects, the Defective Vehicles are not safe to drive and thus not fit for ordinary purposes.

223. The Defective Vehicles are not adequately labeled because the labeling fails to disclose the ignition switch defects and does not advise Class members to

- 47 -

avoid attaching anything to their vehicle key rings.  Old GM and GM failed to warn about the dangerous safety defects in the Defective Vehicles.

224.   Old GM breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing defects leading to the sudden and unintended shut down of the vehicles during ordinary driving conditions. These defects have deprived Plaintiffs and the Class of the benefit of their bargain and have caused the Defective Vehicles to depreciate in value.

225.   As a direct and proximate result of Old GM's breach of its duties under California's Lemon Law (for which GM expressly assumed liability), Class members received goods whose dangerous condition substantially impairs their value to Class members.  Plaintiffs and the Class have been damaged by the diminished value of Old GM's products, the products' malfunctioning, and the nonuse of their Defective Vehicles.

226.   Under CAL. CIV. CODE §§ 1791.1(d) & 1794, Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defective Vehicles, or the overpayment or diminution in value of their Defective Vehicles.

227.   Under CAL. CIV. CODE § 1794, Class members are entitled to costs and attorneys' fees.

## COLORADO

## VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
## (COLORADO CPA, COL. REV. STAT. § 6-1-101, *et seq.*)

228.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring the claim solely on behalf of Class members residing in Colorado.

229.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

230.   Old GM and GM are "persons" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), COL. REV. STAT. § 6-1-101, *et seq.*

010440-11  679569 V1

231. Class members are "consumers" for purposes of § 6-1-113(1)(a) of the Colorado CPA who purchased or leased one or more Defective Vehicles.

232. Old GM and GM engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Defective Vehicles that had the capacity or tendency to deceive Class members; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade even though both Companies knew or should have known they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Defective Vehicles that was known to Old GM and GM at the time of advertisement or sale with the intent to induce Class members to purchase, lease or retain the Defective Vehicles. In the course of their business, Old GM and GM participated in deceptive trade practices that violated the Colorado CPA as described herein. GM is directly liable for these violations of law, and also has successor liability for the deceptive trade practices of Old GM.

233. As alleged above, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of both Companies' unlawful advertising and representations as a whole.

234. Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles. Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

235. While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

- 49 -

236.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

237.   Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.  Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.

238.   Old GM's and GM's deceptive and unfair acts and practices significantly impact the public as actual consumers and users of the Defective Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.  Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

239.   Old GM's and GM's acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, were unconscionable because they offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and the Class from making fully informed decisions about whether to lease, purchase and/or retain Defective Vehicles.

- 50 -

1     240.  Whether or not a vehicle's (a) ignition switch will malfunction

(b) causing the car's engine and electrical system to shut off, (c) disabling the power

steering and power brakes and (d) causing the non-deployment of the vehicle's

airbags in a crash are facts that a reasonable consumer would consider important in

selecting a vehicle to purchase or lease.  When Class members bought a Defective

Vehicle for personal, family, or household purposes, they reasonably expected the

vehicle would feature a non-defective, safe ignition switch.

241.  Class members suffered injury-in-fact to their legally protected property

interests as a result of Old GM's and GM's violations of the Colorado CPA detailed

above.  Class members currently own or lease Defective Vehicles that are defective

and inherently unsafe.  The ignition switch defects and the resulting risk of accident,

injury, or death have caused the value of the Defective Vehicles to plummet.

242.  Class members also seek punitive damages against GM because both

Old GM and GM engaged in bad faith conduct.  Old GM and GM misrepresented the

safety and reliability of the Defective Vehicles, deceived Class members on life-or-

death matters, and concealed material facts that only they knew, all to avoid the

expense and public relations nightmare of correcting a deadly flaw in the Defective

Vehicles they repeatedly promised Class members were safe.  Old GM's and GM's

bad faith conduct warrants punitive damages.

243.  Because the Class members suffered injury-in-fact, they seek actual

damages or $500, whichever is greater, discretionary treble damages, punitive

damages, and reasonable attorneys' fees under COL. REV. STAT. § 6-1-113.

## CONNECTICUT

## VIOLATION OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT
### (CONN. GEN. STAT. § 42-110A, *et seq.*)

244.  Plaintiffs reallege and incorporate by reference all paragraphs as though

fully set forth herein.

- 51 -

245.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Connecticut residents.

246.   The Connecticut Unfair Trade Practices Act ("CUTPA") provides:  "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  CONN. GEN. STAT. § 42-110b(a).

247.   Old GM was, and GM is, a "person" within the meaning of CUTPA. CONN. GEN. STAT. § 42-110a(3).

248.   In the course of the business of Old GM and GM, the Companies willfully failed to disclose and actively concealed the dangerous risks of the ignition switch defects in the Defective Vehicles as described above.  This was a deceptive act in that GM and Old GM represented that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that the Defective Vehicles are of a particular standard and quality when they are not; and advertised the Defective Vehicles with the intent not to sell them as advertised.  Old GM and GM knew or should have known that their conduct violated the CUTPA.

249.   Old GM engaged in a deceptive trade practice when it failed to disclose material information concerning the Old GM vehicles which was known to Old GM at the time of the sale.  Old GM deliberately withheld the information about the vehicles' propensity to suddenly shut down in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

250.   The conduct of Old GM and GM was unfair because it causes substantial injury to consumers.

251.   The propensity of the Defective Vehicles for sudden, inadvertent shutdown during ordinary driving conditions was material to Plaintiffs and the Class. Had Plaintiffs and the Class known that their Defective Vehicles had these serious safety defects, they would not have purchased the vehicles.

252.   Plaintiffs and the Class suffered ascertainable loss caused by the deceptive and unfair practices of GM and Old GM.  Plaintiffs and the Class overpaid

- 52 -

for their vehicles and did not receive the benefit of their bargain. The value of their vehicles have diminished now that the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

253. GM and Old GM engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others.

254. Plaintiffs are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to CONN. GEN. STAT. § 42-110g.

255. Pursuant to CONN. GEN. STAT. § 42-110g(c), Plaintiffs will mail a copy of the complaint to Connecticut's Attorney General.

## DELAWARE

## COUNT I

## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
### (6 DEL. CODE § 2513, *et seq.*)

256. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

257. In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are Delaware residents.

258. The Delaware Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 DEL. CODE § 2513(a).

259. GM and Old GM are both "persons" within the meaning of 6 DEL. CODE § 2511(7).

260. As described herein, Old GM and GM each made false representations regarding the safety and reliability of their vehicles and concealed important facts

- 53 -

regarding the tendency of their vehicles to suddenly and inadvertently shut down during ordinary operation. Old GM and GM intended that others rely on these misrepresentations and omissions in connection with the purchase, lease and retention of their vehicles.

261.   The actions of Old GM and GM as set forth above occurred in the conduct of trade or commerce.

262.   The Companies' conduct proximately caused injuries to Plaintiffs and the Class.

263.   Plaintiffs and the Class were injured as a result of Old GM's conduct in that Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions, and of Old GM's misrepresentations and omissions for which GM has successor liability.

264.   Plaintiffs are entitled to recover damages, as well as punitive damages for the Companies' gross and aggravated misconduct.

## COUNT II

## VIOLATION OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT
### (6 DEL. CODE § 2532, *et seq.*)

265.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

266.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are Delaware residents.

267.   Delaware's Deceptive Trade Practices Act ("DTPA") prohibits a person from engaging in a "deceptive trade practice," which includes: "(5) Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have";

- 54 -

"(7) Represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

"(9) Advertis[ing] goods or services with intent not to sell them as advertised"; or

"(12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

268. Old GM and GM are "persons" within the meaning of 6 DEL. CODE § 2531(5).

269. In the course of the business of Old GM and GM, the Companies willfully failed to disclose and actively concealed the dangerous risk of ignition switch defects in the Defective Vehicles as described above. Accordingly, the Companies engaged in unlawful trade practices, including representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Defective Vehicles are of a particular standard and quality when they are not; advertising the Defective Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

270. The Companies' actions as set forth above occurred in the conduct of trade or commerce.

271. The Companies' conduct proximately caused injuries to Plaintiffs and the Class.

272. Plaintiffs and the Class were injured as a result of the Companies' conduct in that Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value that was exacerbated by the continuing violation of Delaware law by GM. These injuries are the direct and natural consequence of the Companies' misrepresentations and omissions.

273. Plaintiffs seek injunctive relief and, if awarded damages under Delaware common law or Delaware Consumer Fraud Act, treble damages pursuant to 6 DEL. CODE § 2533(c).

274.   Plaintiffs also seek punitive damages based on the outrageousness and recklessness of the Companies' conduct and the high net worth of GM.

## DISTRICT OF COLUMBIA

### VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT
### (CPPA, D.C. CODE § 28-3901, *et seq.*)

275.   Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

276.   In the event that the Court declines to certify a nationwide class, Plaintiffs bring this claim solely on behalf of Class members who reside in the District of Columbia.

277.   Old GM and GM are "persons" under the Consumer Protection Procedures Act ("CPPA"), D.C. CODE § 28-3901(a)(1).

278.   Class members are "consumers," as defined by D.C. CODE § 28-3901(1)(2), who purchased or leased one or more Defective Vehicles.

279.   Old GM's and GM's actions as set forth herein constitute "trade practices" under D.C. CODE § 28-3901.

280.   By failing to disclose and actively concealing the ignition switch defect in the Defective Vehicles, Old GM and GM engaged in unfair or deceptive practices prohibited by the CPPA, D.C. CODE § 28-3901, *et seq.*, including: (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) representing that the subject of a transaction involving the Defective Vehicles has been supplied in accordance with a previous representation when it has not.  Both Old GM and GM participated in unfair or deceptive acts or practices that violated the CPPA.  GM is directly liable for these

- 56 -

1  violations of law, and also has successor liability for the unfair and deceptive trade

2  practices of Old GM.

3      281.  Old GM made numerous material statements about the safety and

4  reliability of the Defective Vehicles that were either false or misleading.  Each of

5  these statements contributed to the deceptive context of both Companies' unlawful

6  advertising and representations as a whole.

7      282.  Both Old GM and GM also failed to disclose and actively concealed the

8  dangerous ignition switch defect in the Defective Vehicles.  Both Companies knew

9  of the ignition switch defect, while the Class was deceived by the Companies'

10  omission into believing the Defective Vehicles were safe, and the information could

11  not have reasonably been known by the consumer until the February and March 2014

12  recalls.

13      283.  While Old GM knew of the ignition switch defects by 2001, it

14  continued to design, manufacture, and market the Defective Vehicles until 2007.

15      284.  All the while, Old GM knew that the vehicles had an unreasonable

16  propensity to shut down during ordinary driving conditions, leading to an

17  unreasonable risk of serious bodily injury or death.

18      285.  Both Companies nevertheless failed to warn Class members about these

19  inherent dangers despite having a duty to do so.  Old GM's and GM's deceptive

20  practices were likely to and did in fact deceive reasonable consumers, including

21  Class members, about the true safety and reliability of the Defective Vehicles.

22      286.  Old GM's and GM's unfair and deceptive acts and practices

23  significantly impact the public as actual consumers and users of the Defective

24  Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class

25  members, passengers, other motorists, pedestrians, and the public at large, because

26  they are susceptible to ignition switch malfunction causing the car's engine and

27  electrical system to shut off, disabling the power steering and power brakes and

28  causing the non-deployment of the vehicle's airbags in the event of a crash.  Public

010440-11  679569 V1

interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

287. Old GM's and GM's acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, were unconscionable because they offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices. The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and the Class from making fully informed decisions about whether to lease, purchase and/or retain the Defective Vehicles.

288. Class members suffered actual harm as a result of Old GM's and GM's conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

289. Class members also seek punitive damages against GM because both Old GM's and GM's conduct evidences malice and/or egregious conduct. Old GM and GM maliciously and egregiously misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly promised Class members were safe. Old GM's and GM's unlawful conduct constitutes malice warranting punitive damages.

290. Because Old GM's and GM's conduct proximately caused actual harm to Class members, they are entitled to recover treble damages or $1500, whichever is

1   greater, punitive damages, reasonable attorneys' fees, and any other relief the Court

2   deems proper, under D.C. CODE § 28-3901.

### FLORIDA

### VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT

### (FLA. STAT. § 501.201, *et seq.*)

291.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

292.   In the event that the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are Florida residents.

293.   The conduct of Old GM and GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with the ignition switch defects which Old GM and GM failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of their vehicles.

294.   The actions of Old GM and GM as set forth above occurred in the conduct of trade or commerce.

295.   The Companies' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of the Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

296.   Plaintiffs and the Class were injured as a result of the Companies' conduct.  Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value that has been exacerbated by GM's ongoing campaign of deception.

- 59 -

1    297.   The Companies' conduct proximately caused the injuries to Plaintiffs

2  and the Class.

3    298.   GM is liable to Plaintiffs and the Class for damages in amounts to be

4  proven at trial, including attorneys' fees, costs, and treble damages.

5    299.   Pursuant to FLA. STAT. § 501.201, Plaintiffs will serve the Florida

6  Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

7                              **GEORGIA**

8                              **COUNT I**

9        **VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE
                  TRADE PRACTICES ACT**

10             (**GA. CODE ANN. § 10-1-370, *et seq.***)

11   300.   Plaintiffs reallege and incorporate by reference all paragraphs as though

12  fully set forth herein.

13   301.   In the event the Court declines to certify a nationwide Class, Plaintiffs

14  assert this claim solely on behalf of Class members who are Georgia residents.  A

15  pre-suit demand was sent on March 28, 2014.

16   302.   The conduct of Old GM and GM as set forth herein constitutes unfair or

17  deceptive acts or practices, including, but not limited to, Old GM's manufacture and

18  sale of vehicles with the ignition switch defect which Old GM and GM failed to

19  adequately investigate, disclose and remedy, and the Companies' misrepresentations

20  and omissions regarding the safety and reliability of their vehicles.

21   303.   The Companies' actions as set forth above occurred in the conduct of

22  trade or commerce.

23   304.   The Companies' actions impact the public interest because Plaintiffs

24  were injured in exactly the same way as millions of others purchasing, leasing and

25  retaining the Defective Vehicles as a result of the Companies' generalized course of

26  deception.  All of the wrongful conduct alleged herein occurred, and continues to

27  occur, in the conduct of the Companies' business.

28

305.   Plaintiffs and the Class were injured as a result of the Companies' conduct.  Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value that was exacerbated by GM's continued course of deceptive acts and omissions.

306.   The Companies' conduct proximately caused the injuries to Plaintiffs and the Class.

307.   GM is liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

308.   Pursuant to GA. CODE ANN. § 10-1-370, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT II

## VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (GA. CODE ANN. § 10-1-390, *et seq.*)

309.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

310.   In the event that the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members residing in Georgia.

311.   The conduct of GM and Old GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with a dangerous ignition switch defect which Old GM and GM failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles.

312.   The Companies' actions as set forth above occurred in the conduct of trade or commerce.

313.   The Companies' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of the Companies' generalized course of deception.

- 61 -

All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

314.   Plaintiffs and the Class were injured as a result of the Companies' conduct.  Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value that was exacerbated by the deceptive acts and omissions of GM.

315.   The Companies' conduct proximately caused injuries to Plaintiffs and the Class.

316.   GM is liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

317.   Pursuant to GA. CODE ANN. § 10-1-390, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## HAWAII
## UNFAIR COMPETITION AND PRACTICES
### (HAW. REV. STAT. § 480, *et seq.*)

318.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

319.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Hawaii.

320.   Old GM and GM are "persons" under HAW. REV. STAT. § 480-1.

321.   Class members are "consumer[s]" as defined by HAW. REV. STAT. § 480-1, who purchased or leased one or more Defective Vehicles.

322.   Old GM's and GM's acts or practices as set forth above occurred in the conduct of trade or commerce.

323.   The Act § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.…"  In the course of their business, both Old GM and GM willfully failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles in

- 62 -

violation of this Act. Both Companies' misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles were material and caused Class members to purchase, lease and/or retain vehicles they would not have otherwise purchased, leased and/or retained, or paid as much for, had the Class members known the vehicles were defective. GM is directly liable for its violations of law, and also has successor liability for the unfair and deceptive trade practices of Old GM.

324. As alleged above, both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

325. While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

326. All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

327. Old GM's and GM's misrepresentations and omissions described herein have the capacity or tendency to deceive. Because of these unlawful trade practices, including failure to disclose material information, Class members suffered injury, including the loss of money or property. Class members overpaid for their vehicles and did not receive the benefit of their bargain. The value of their vehicles has diminished now that the safety issues have come to light, and Class members own vehicles that are not safe.

328. Old GM's and GM's unfair and deceptive acts and practices significantly impact the public as actual consumers and users of the Defective Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and

electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash. Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

329. Old GM's and GM's acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, were unconscionable because they offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices. The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and the Class from making fully informed decisions about whether to lease, purchase and/or retain the Defective Vehicles.

330. Class members also seek punitive damages against GM because both Old GM's and GM's conduct evidences conscious wrongdoing. Old GM and GM consciously misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly promised Class members were safe. Old GM's and GM's conscious wrongdoing warrants punitive damages.

331. Because Old GM's and GM's conscious wrongdoing caused injury to Class members, they are entitled to recover treble damages or $1000, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the Court deems proper, under HAW. REV. STAT. § 480-13.

- 64 -

<u>**IDAHO**</u>

**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT**

**(ICPA, IDAHO CIV. CODE § 48-601, *et seq.*)**

332. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

333. In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members residing in Idaho.

334. Old GM and GM are "persons" under the Idaho Consumer Protection Act ("ICPA"), IDAHO CIV. CODE § 48-602(1).

335. Old GM's and GM's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under IDAHO CIV. CODE § 48-602(2).

336. Old GM and GM both participated in misleading, false, or deceptive acts that violated the ICPA. By failing to disclose and actively concealing the dangerous ignition switch defect in the Defective Vehicles, both Old GM and GM engaged in deceptive business practices prohibited by the ICPA, including: (1) representing that the Defective Vehicles have characteristics, uses, and benefits which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; and (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer. *See* IDAHO CIV. CODE § 48-603. GM is directly liable for its violations of law, and also has successor liability for the unfair methods of competition and unfair or deceptive acts of Old GM.

337. As detailed herein, Old GM made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

338. Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles. Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies'

- 65 -

omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

339. While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

340. All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

341. Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles. Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

342. Old GM and GM each owed Class members a duty to disclose the defective nature of Defective Vehicles, including the unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death, because they:

    a. Possessed exclusive knowledge of the defects rendering the Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

    b. Intentionally concealed the hazardous situation with the Defective Vehicles for more than a decade; and/or

    c. Made misrepresentations about the safety and reliability of the Defective Vehicles while purposefully withholding material facts from Class members that contradicted these representations.

343. Old GM's and GM's deceptive and unfair acts and practices significantly impact the public as actual consumers and users of the Defective Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and

010440-11 679569 V1

1  electrical system to shut off, disabling the power steering and power brakes and

2  causing the non-deployment of the vehicle's airbags in the event of a crash. Public

3  interest is also affected because Class members were injured in exactly the same way

4  as millions of others purchasing and/or leasing Defective Vehicles as a result of both

5  Companies' generalized course of deception. All of the wrongful conduct alleged

6  herein occurred, and continues to occur, in the conduct of Old GM's and GM's

7  businesses.

8  344. Whether or not a vehicle's ignition switch will malfunction, (a) causing

9  the car's engine and electrical system to shut off, (b) disabling the power steering

10  and power brakes and (c) causing the non-deployment of the vehicle's airbags in a

11  crash are facts that a reasonable consumer would consider important in selecting a

12  vehicle to purchase or lease. When Class members bought a Defective Vehicle for

13  personal, family, or household purposes, they reasonably expected the vehicle would

14  feature a non-defective, safe ignition switch.

15  345. As a result of its violations of the ICPA detailed above, Old GM and

16  GM caused ascertainable loss of money or property to Class members. Class

17  members currently own or lease Defective Vehicles that are defective and inherently

18  unsafe. Defective and dangerous ignition switches have caused the value of the

19  Defective Vehicles to plummet.

20  346. Class members also seek punitive damages against GM because both

21  Old GM's and GM's conduct evidences an extreme deviation from reasonable

22  standards. Old GM and GM flagrantly, maliciously, and fraudulently misrepresented

23  the safety and reliability of the Defective Vehicles, deceived Class members on life-

24  or-death matters, and concealed material facts that only they knew, all to avoid the

25  expense and public relations nightmare of correcting a deadly flaw in the Defective

26  Vehicles they repeatedly promised Class members were safe. Old GM's and GM's

27  unlawful conduct constitutes malice, oppression, and fraud warranting punitive

28  damages.

- 67 -

347.   Class members suffered ascertainable loss as a result of Old GM's and GM's flagrant violation of the ICPA.  The Class therefore seeks actual damages or $1000, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees, under IDAHO CIV. CODE § 48-608.

## ILLINOIS

### COUNT I

### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

**(815 ILL. COMP. STAT. 505/1, *et seq.* and 720 ILL. COMP. STAT. 295/1A)**

348.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

349.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Illinois.

350.   The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/2 prohibits unfair or deceptive acts or practices in connection with any trade or commerce.  Specifically, the Act prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

351.   Old GM and GM are "persons" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1(c).

352.   Plaintiffs are "consumers" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1(e).

353.   The unfair and deceptive conduct of Old GM and GM caused Plaintiffs' damages as alleged.

354.   As a result of the foregoing wrongful conduct of Old GM and GM, Plaintiffs and the Class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, court costs, and reasonable attorneys' fees under 815 ILL. COMP. STAT. 505/1, *et seq.*

- 68 -

## COUNT II

### VIOLATION OF THE ILLINOIS UNIFORM
### DECEPTIVE TRADE PRACTICES ACT

(815 ILL. COMP. STAT. 510/1, *et. seq.* and
720 ILL. COMP. STAT. 295/1A)

355.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

356.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Illinois.

357.   815 ILL. COMP. STAT. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person:  "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represents that goods or services have sponsorship, approval, characteristics ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; … (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; … (9) advertises goods or services with intent not to sell them as advertised; … [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

358.   Old GM and GM are "persons" within the meaning of 815 ILL. COMP. STAT. 510/1(5).

359.   The vehicles sold to Plaintiffs were not of the particular sponsorship, approval, characteristics, ingredients, uses benefits, or qualities represented by first Old GM and then GM with respect to used Defective Vehicle purchasers after July 10, 2009.

360.   The vehicles sold to Plaintiffs were not of the particular standard, quality, and/or grade represented by the Companies.

- 69 -

361.   The conduct of Old GM and GM was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

362.   As a result of the foregoing wrongful conduct of Old GM and GM, Plaintiffs have been damaged in an amount to be proven at trial, and seek  actual and punitive damages, equitable relief, reasonable attorneys' fees, and other available and appropriate relief.

## INDIANA

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (IND. CODE § 24-5-0.5-3)

363.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

364.   In the event the Court declines to certify a nationwide Class, Plaintiffs assert this claim solely on behalf of Class members who reside in Indiana.  A pre-suit demand was sent on March 28, 2014.

365.   Indiana's Deceptive Consumer Sales Act prohibits a person from engaging in a "deceptive trade practice," which includes representing:  "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who

- 70 -

authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."

366. Old GM and GM are "persons" within the meaning of IND. CODE § 24-5-0.5-2(2).

367. In the course of the Companies' business, they each willfully failed to disclose and actively concealed the dangerous risk caused by the ignition switch defects in the Defective Vehicles. Accordingly, the Companies engaged in unlawful trade practices, including: (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard and quality when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; and (4) otherwise engaging in conduct likely to deceive.

368. The Companies' actions as set forth above occurred in the conduct of trade or commerce.

369. The Companies' conduct proximately caused injuries to Plaintiffs and the Class.

370. Plaintiffs and the Class were injured as a result of the Companies' conduct in that Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of the Companies' misrepresentations and omissions.

371. Plaintiffs seek injunctive relief and, if awarded damages under Indiana Deceptive Consumer Protection Act, treble damages pursuant to IND. CODE § 24-5-0.5-4(a)(1).

372. Plaintiffs also seek punitive damages based on the outrageousness and recklessness of the Companies' conduct and GM's high net worth.

# IOWA

## VIOLATIONS OF THE PRIVATE RIGHT OF ACTION
## FOR CONSUMER FRAUDS ACT

### (IOWA CODE § 714H.1, *et seq.*)

373.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

374.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are Iowa residents.

375.   Old GM and GM are "persons" under IOWA CODE § 714H.2(7).

376.   Plaintiffs are "consumers," as defined by IOWA CODE § 714H.2(3), who purchased or leased one or more Defective Vehicles.

377.   Old GM and GM both participated in unfair or deceptive acts or practices that violated Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), IOWA CODE § 714H.1, *et seq.*, as described above and below.  GM is directly liable for its violations of law, and has successor liability for the actions of Old GM in violation of the Iowa CFA.

378.   By failing to disclose and actively concealing the dangerous risk of the ignition switch defects in the Defective Vehicles, the Companies engaged in deceptive business practices prohibited by the Iowa CFA, IOWA CODE § 714H.1, *et seq.*, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; and (4) engaging in acts or practices which are otherwise unfair, misleading, false or deceptive to the consumer.

379.   As alleged above, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or

- 72 -

misleading. Each of these statements contributed to the deceptive context of the Companies' unlawful advertising and representations as a whole.

380. The Companies knew that the ignition switches in the Defective Vehicles were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use of turning the vehicle on and off based on driver commands. The Companies nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

381. Old GM and GM each owed Plaintiffs a duty to disclose the defective nature of the Defective Vehicles, including the dangerous risk that the vehicles would shut down during ordinary driving conditions and render the vehicles' electrical systems inoperable, because they:

a. Possessed exclusive knowledge of the defects rendering the Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

b. Intentionally concealed the hazardous situation with the Defective Vehicles from Plaintiffs; and/or

c. Made incomplete representations about the safety and reliability of the Defective Vehicles generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

382. Defective Vehicles equipped with defective ignition switches pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents in which brakes, power steering, and airbags are all rendered inoperable.

383. Whether or not a vehicle (a) shuts down only when commanded to do so and (b) maintains operable brakes, steering, and airbags during ordinary operations are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiffs bought a GM vehicle for personal, family, or household purposes, they reasonably expected the vehicle would (a) not shut down

010440-11 679569 V1

1   until commanded to do so and (b) had brakes, power steering, and airbags that

2   remained operable during ordinary driving conditions.

3       384.   The Companies' unfair or deceptive acts or practices were likely to and

4   did in fact deceive reasonable consumers, including Plaintiffs, about the true safety

5   and reliability of the Defective Vehicles.

6       385.   As a result of the violations of the Iowa CFA detailed above, Old GM

7   and GM caused actual damage to Plaintiffs and, if not stopped, will continue to harm

8   Plaintiffs (including those driving the Defective Vehicles that have not yet been

9   recalled).  Plaintiffs currently own or lease Defective Vehicles that are defective and

10  inherently unsafe.  The ignition switch defects have caused the value of the

11  Defective Vehicles to plummet.

12      386.   Plaintiffs risk irreparable injury as a result of the Companies' acts and

13  omissions in violation of the Iowa CFA, and these violations present a continuing

14  risk to Plaintiffs as well as to the general public.

15      387.   Plaintiffs and the Class sustained damages as a result of the Companies'

16  unlawful acts and are, therefore, entitled to damages and other relief as provided

17  under Chapter 714H of the Iowa CFA.  Because the Companies' conduct was

18  committed willfully, Plaintiffs seek treble damages as provided in IOWA CODE

19  § 714H.5(4).

20      388.   Plaintiffs also seek court costs and attorneys' fees as a result of the

21  Companies' violation of Chapter 714H as provided in IOWA CODE § 714H.5(2).

22              **KANSAS**

23      **VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**

24          **(KANSAS CPA, KAN. STAT. ANN. § 50-623, *et seq.*)**

25      389.   Plaintiffs reallege and incorporate by reference all paragraphs as though

26  fully set forth herein.

27      390.   In the event the Court declines to certify a nationwide Class, Plaintiffs

28  bring this claim solely on behalf of Class members who are Kansas residents.

- 74 -

391. Old GM and GM are "suppliers" under the Kansas Consumer Protection Act ("Kansas CPA"), KAN. STAT. ANN. § 50-624(l).

392. Class members are "consumers," within the meaning of KAN. STAT. ANN. § 50-624(b), who purchased or leased one or more Defective Vehicles.

393. The sale of the Defective Vehicles to the Class members was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

394. The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." KAN. STAT. ANN. § 50-626. Old GM and GM both participated in deceptive acts or practices that violated the Kansas CPA, as described herein, including: (1) representing that the Defective Vehicles have characteristics, uses, and benefits that they do not have; and (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are of another which differs materially from the representation. Specifically, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading. *See* KAN. STAT. ANN. § 50-626. GM is directly liable for its violations of law, and also has successor liability for the deceptive acts and practices of Old GM.

395. As alleged herein, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading, and that Old GM and GM knew or had reason to know were false.

396. Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles. Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

397. While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

- 75 -

398.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

399.   Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

400.   Old GM's and GM's deceptive and unfair practices significantly impact the public since the Defective Vehicles pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.  Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

401.   Whether or not a vehicle's ignition switch will malfunction (a) causing the car's engine and electrical system to shut off, (b) disabling the power steering and power brakes, and (c) causing the non-deployment of the vehicle's airbags in a crash are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Class members bought a Defective Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would feature a non-defective, safe ignition switch.

402.   Class members are aggrieved as a result of Old GM's and GM's violations of the Kansas CPA detailed above.  Class members currently own or lease

- 76 -

Defective Vehicles that are defective and inherently unsafe. The defective ignition switches have caused the value of the Defective Vehicles to plummet.

403. Class members also seek punitive damages against GM because the conduct of Old GM and GM was willful, wanton, and malicious. The Companies fraudulently and willfully misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Class members were safe. Because Old GM's and GM's conduct was willful, wanton, fraudulent, and malicious, it warrants punitive damages.

404. Class members suffered actual harm as a result of Old GM's and GM's willful violation of the ICPA. The Class therefore seeks actual damages or maximum statutory damages up to $10,000 per violation, whichever is greater, punitive damages, and reasonable attorneys' fees, under KAN. STAT. ANN. §§ 50-634 and 50-636.

405. Pursuant to KAN. STAT. ANN. § 50-634, the Class will serve the Kansas Attorney General with a copy of this Complaint.

## **KENTUCKY**

### **VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
### **(KY. REV. STAT. § 367.110, *et seq.*)**

406. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

407. In the event the Court declines to certify a nationwide Class, Plaintiffs assert this claim solely on behalf of Class members who are Kentucky residents.

408. Old GM and GM misrepresented the safety of the Defective Vehicles after learning of their defects with the intent that Plaintiffs rely on such representations in their decision regarding the purchase, lease, and/or use of the Defective Vehicles.

- 77 -

409.   Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease, and/or use of the Defective Vehicles.

410.   Through those misleading and deceptive statements and false promises, Old GM and GM violated the Kentucky Consumer Protection Act ("KCPA").

411.   The KCPA applies to the Companies' transactions with Plaintiffs because the Companies' deceptive scheme was carried out in Kentucky and affected Plaintiffs.

412.   The Companies also failed to advise NHSTA and the public about what they knew about the ignition switch defects in the Defective Vehicles.

413.   Plaintiffs relied on the Companies' silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Defective Vehicles.

414.   As a direct and proximate result of the Companies' deceptive conduct and violation of the KCPA, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to declaratory relief, and compensatory and equitable damages in an amount to be proven at trial.

## MAINE

## VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
### (ME. REV. STAT. ANN. TIT. 5 § 205-A, *et seq.*)

415.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

416.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Maine.  A pre-suit demand was sent on March 28, 2014.

417.   The Maine Unfair Trade Practices Act ("UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." ME. REV. STAT. ANN. TIT. 5 § 207.

- 78 -

1    418.   The advertising and sale of motor vehicles by Old GM and GM

2    constitutes "trade or commerce" within the meaning of UTPA per ME. REV. STAT.

3    ANN. TIT. 5 § 206(3).

4    419.   In the course of the Companies' business, they willfully failed to

5    disclose and actively concealed the dangerous risks caused by the ignition switch

6    defects in Defective Vehicles as described above.  This was a deceptive act in that

7    the Companies represented that the Defective Vehicles have characteristics, uses,

8    benefits, and qualities which they do not have; represented that the Defective

9    Vehicles are of a particular standard and quality when they are not; and advertised

10   the Defective Vehicles with the intent not to sell them as advertised.  The Companies

11   knew or should have known that their conduct violated the UTPA.

12   420.   Old GM engaged in a deceptive trade practice when it failed to disclose

13   material information concerning the Defective Vehicles which was known to it at the

14   time of the sale.  Old GM deliberately withheld the information about the vehicles'

15   propensity to inadvertently shut down in order to ensure that consumers would

16   purchase its vehicles and to induce the consumer to enter into a transaction.  GM

17   exacerbated the harm by continuing the deception, deceiving current owners and

18   purchasers of used Deceptive Vehicles.

19   421.   The information withheld was material in that it was information that

20   was important to consumers and likely to affect their choice of, or conduct regarding,

21   the purchase of their cars.  The Companies' withholding of this information was

22   likely to mislead consumers acting reasonably under the circumstances.  The

23   propensity of the Defective Vehicles to shut down during ordinary driving conditions

24   was material to Plaintiffs and the Class.  Had Plaintiffs and the Class known that the

25   vehicles had these serious safety defects, they would not have purchased their

26   Defective Vehicles, or they would have paid less.  In the absence of the ignition

27   switch defects, or if Old GM or GM had remedied the problem earlier, the Defective

28

010440-11  679569 V1

1    Vehicles would be worth more than they now are as a result of the Companies'
2    campaign of deception.

3        422.    The Companies' conduct has caused or will cause a substantial injury
4    that cannot reasonably be avoided by consumers, and the harm is not outweighed by
5    a countervailing benefit to consumers or competition

6        423.    As a result of the Companies' deceptive and unfair practices, Plaintiffs
7    and the Class have suffered loss of money or property.  Plaintiffs and the Class
8    overpaid for their vehicles and did not receive the benefit of their bargain.  The value
9    of their vehicles has diminished now that the safety issues have come to light, and
10   Plaintiffs and the Class own vehicles that are not safe.

11       424.    Plaintiffs are entitled to actual damages, restitution, and such other
12   equitable relief, including an injunction, as the Court determines to be necessary and
13   proper.

14       425.    Pursuant to ME. REV. STAT. ANN. TIT. 5 § 213(3), Plaintiffs will mail a
15   copy of this complaint to Maine's Attorney General.

16                              **MARYLAND**
17   **VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
18              (**MD. CODE COM. LAW § 13-101, *et seq.***)

19       426.    Plaintiffs reallege and incorporate by reference all paragraphs as though
20   fully set forth herein.

21       427.    In the event the Court declines to certify a nationwide Class, Plaintiffs
22   bring this claim solely on behalf of Class members who are Maryland residents.

23       428.    Plaintiffs are persons within the meaning of the Maryland Consumer
24   Protection Act (the "Act") for all purposes therein.

25       429.    Old GM and GM are persons within the meaning of the Act for all
26   purposes therein.

27
28

- 80 -

1  430.   The Companies' unfair or deceptive acts or practices were likely to and

2  did in fact deceive reasonable consumers, including Plaintiffs, about the true safety

3  and reliability of the Defective Vehicles.

4  431.   As a direct and proximate result of their unfair and deceptive business

5  practices, and violations of the Act detailed above, the Companies caused actual

6  damages, injuries, and losses to Plaintiffs and, if not stopped, will continue to harm

7  Plaintiffs.  Plaintiffs currently own or lease Defective Vehicles that are defective and

8  inherently unsafe.  The ignition switch defects have caused the value of the

9  Defective Vehicles to plummet.

10  432.   Plaintiffs are entitled to all damages permitted by M.R.S § 13-101,

11  *et seq.*, including actual damages sustained, civil penalties, attorneys' fees, and costs

12  of this action.  Also, the State of Maryland is entitled to statutory penalties from GM

13  for each violation of the Act.

## MASSACHUSETTS

### VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT

### (Chapter 93A)

433.   Plaintiffs reallege and incorporate by reference all paragraphs as though
fully set forth herein.

434.   In the event the Court declines to certify a nationwide Class, Plaintiffs
bring this claim solely on behalf of Class members who are Massachusetts residents.

435.   Plaintiff Ratzlaff sent a demand letter to GM on March 28, 2014
pursuant to Mass. Gen. L. Ch. 93A.

- 81 -

# MINNESOTA

## COUNT I

### VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT

### (MINN. STAT. § 325D.43-48, *et seq.*)

436.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein

437.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are Minnesota residents.

438.   Old GM and GM engaged in – and GM continues to engage in – conduct that violates the Minnesota Deceptive Trade Practices Act, MINN. STAT. § 325D.44, *et seq.*  The violations include the following:

a.   The Companies violated MINN. STAT. § 325D.44(5) by representing the Defective Vehicles as having characteristics, uses, and benefits of safe and mechanically sound vehicles while knowing that the statements were false and the Defective Vehicles contained defects;

b.   The Companies violated MINN. STAT. § 325D.44(7) by representing the Defective Vehicles as a non-defective product of a particular standard, quality, or grade while knowing the statements were false and that the Defective Vehicles contained defects;

c.   The Companies violated MINN. STAT. § 325D.44(9) by advertising, marketing, and selling the Defective Vehicles as reliable and without a known defect while knowing those claims were false; and

d.   The Companies violated MINN. STAT. § 325D.44(13) by creating a likelihood of confusion and/or misrepresenting the safety of the Defective Vehicles.

439.   The Companies' deceptive scheme was carried out in Minnesota and affected Plaintiffs.

- 82 -

440.    The Companies also failed to advise NHSTA and the public about what it knew about the ignition switch defects.

441.    As a direct and proximate result of the Companies' deceptive conduct and violation of MINN. STAT. § 325D.44, *et seq.*, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to declaratory relief, compensatory and equitable damages in an amount to be proven at trial.

## COUNT II

### VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT

### (MINN. STAT. § 325F.68, *et seq.*)

442.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

443.    In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are Minnesota residents.

444.    Old GM and GM misrepresented the safety of the Defective Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease, and/or use of the Defective Vehicles.

445.    Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease, and/or use of the Defective Vehicles.

446.    Through these misleading and deceptive statements and false promises, the Companies violated MINN. STAT. § 325F.69.

447.    The Minnesota Prevention of Consumer Fraud Act applies to the Companies' transactions with Plaintiffs because the Companies' deceptive scheme was carried out in Minnesota and affected Plaintiffs.

448.    The Companies also failed to advise NHSTA and the public about what they knew about the ignition switch defects in the Defective Vehicles.

- 83 -

449.   Plaintiffs relied on the Companies' silence as to known defects in connection with their decision regarding the purchase, lease, and/or use of the Defective Vehicles.

450.   As a direct and proximate result of the Companies' deceptive conduct and violation of MINN. STAT. § 325F.69, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to declaratory relief, and compensatory and equitable damages in an amount to be proven at trial.

## **MISSOURI**

## **VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT**
### **(MO. REV. STAT. § 407.010, *et seq.*)**

451.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

452.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are Missouri residents.

453.   The conduct of Old GM and GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with defective ignition switches, which the Companies failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles.

454.   The Companies' actions as set forth above occurred in the conduct of trade or commerce.

455.   The Companies' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of the Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

- 84 -

456.   Plaintiffs and the Class were injured as a result of the Companies' conduct.  Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

457.   The Companies' conduct proximately caused the injuries to Plaintiffs and the Class.

458.   GM is liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

459.   Pursuant to MO. REV. STAT. § 407.010, Plaintiffs will serve the Missouri Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## MONTANA

### VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973

### (MONT. CODE ANN. § 30-14-101, *et seq.*)

460.   Plaintiffs reallege all preceding and succeeding paragraphs as if fully set forth herein.

461.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are Montana residents.

462.   Old GM and GM are each a "person" under MONT. CODE ANN. § 30-14-102(6).

463.   Class members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

464.   The sale of the Defective Vehicles to Class members occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and both Old GM and GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

465.   The Montana Act makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.  Old GM and GM both participated in unfair

- 85 -

methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce that violated the Montana Act, as described herein. GM is directly liable for its violations of law, and also has successor liability for the violations of Old GM, as set forth above.

466. As detailed herein, both Companies knew of the safety ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

467. While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

468. All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

469. Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles. Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

470. Old GM's and GM's deceptive and unfair acts and practices significantly impact the public since the Defective Vehicles pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash. Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

010440-11 679569 V1

1    471.   Whether or not a vehicle's ignition switch will malfunction, (a) causing

2    the car's engine and electrical system to shut off, (b) disabling the power steering

3    and power brakes, and (c) causing the non-deployment of the vehicle's airbags in a

4    crash, are facts that a reasonable consumer would consider important in selecting a

5    vehicle to purchase or lease. When Class members bought a Defective Vehicle for

6    personal, family, or household purposes, they reasonably expected the vehicle would

7    feature a non-defective, safe ignition switch.

8    472.   Old GM's and GM's acts and practices were unfair and unconscionable,

9    because their acts and practices, including the manufacture and sale of vehicles with

10   an ignition switch defect, and the Companies' failure to adequately disclose the

11   defect to NHTSA and the Class and timely implement a remedy, offend established

12   public policy, and because the harm the Companies caused consumers greatly

13   outweighs any benefits associated with those practices.  The Companies' conduct has

14   also impaired competition within the automotive vehicles market and has prevented

15   the Class from making fully informed decisions about whether to lease, purchase,

16   and/or retain the Defective Vehicles.

17   473.   Class members suffered an ascertainable loss of money and property, as

18   a result of Old GM's and GM's violations of the Montana Act detailed above.  Class

19   members currently own or lease Defective Vehicles that are defective and inherently

20   unsafe.  The defective ignition switches have caused the value of the Defective

21   Vehicles to plummet.

22   474.   Because Old GM's and GM's unlawful methods, acts, and practices

23   have caused Class members to suffer an ascertainable loss of money and property,

24   the Class seeks actual damages or $500, whichever is greater, discretionary treble

25   damages, reasonable attorneys' fees, and any other equitable relief the Court

26   considers necessary or proper, under MONT. CODE ANN. § 30-14-133.

27

28

- 87 -

# NEBRASKA

## VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NCPA, NEB. REV. STAT. § 59-1601, *et seq.*)

475.    Plaintiffs incorporate by reference all preceding and succeeding paragraphs as if set forth fully herein.

476.    In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members residing in Nebraska.

477.    Class members are "person[s]" under the Nebraska Consumer Protection Act ("NCPA"), NEB. REV. STAT. § 59-1601(1).

478.    Old GM's and GM's actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

479.    The Nebraska Consumer Protection Act ("NCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." The conduct of Old GM and GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with a defective ignition switch, which Old GM and GM failed to adequately investigate, disclose and remedy, and both Companies' misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead. GM is directly liable for its violations of the NCPA, and also has successor liability for the unfair and deceptive acts and practices of Old GM.

480.    As described herein, both Companies knew of the safety ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

481.    While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

- 88 -

1    482.   All the while, Old GM knew that the vehicles had an unreasonable

2    propensity to shut down during ordinary driving conditions, leading to an

3    unreasonable risk of serious bodily injury or death.

4    483.   Old GM's and GM's deceptive practices were likely to and did in fact

5    deceive reasonable consumers, including Class members, about the true safety and

6    reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn

7    Class members about these inherent dangers despite having a duty to do so.

8    484.   Old GM's and GM's deceptive and unfair acts and practices

9    significantly impact the public since the Defective Vehicles pose an unreasonable

10   risk of death or serious bodily injury to Class members, passengers, other motorists,

11   pedestrians, and the public at large, because they are susceptible to ignition switch

12   malfunction causing the car's engine and electrical system to shut off, disabling the

13   power steering and power brakes and causing the non-deployment of the vehicle's

14   airbags in the event of a crash.  Public interest is also affected because Class

15   members were injured in exactly the same way as millions of others purchasing

16   and/or leasing Defective Vehicles as a result of both Companies' generalized course

17   of deception.  All of the wrongful conduct alleged herein occurred, and continues to

18   occur, in the conduct of Old GM's and GM's businesses.

19   485.   Class members were injured in their property as a result of Old GM's

20   and GM's violation of the NCPA. Class members overpaid for their Defective

21   Vehicles and did not receive the benefit of their bargain, and their vehicles have

22   suffered a diminution in value.

23   486.   Because Old GM's and GM's conduct caused injury to Class members'

24   property through violations of the NCPA, the Class seeks recovery of actual

25   damages, as well as enhanced damages up to $1,000, and reasonable attorneys' fees,

26   under NEB. REV. STAT. § 59-1609.

27

28

010440-11  679569 V1

# **NEVADA**

## **VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

### (NEV. REV. STAT. § 598.0903, *et seq.*)

487. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

488. In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are Nevada residents.

489. Old GM and GM are both "persons" as required under the statute.

490. The Companies' actions as set forth above occurred in the course of business.

491. The Nevada Deceptive Trade Practices Act, NEV. REV. STAT. § 598.0903, *et seq.*, prohibits unfair or deceptive consumer sales practices.

492. NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

493. In the course of the Companies' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the defective ignition switches in the Defective Vehicles as described above. Accordingly, the Companies engaged in deceptive trade practices, including: (1) making false representations as to the characteristics, uses, and benefits of the Defective Vehicles; (2) representing

- 90 -

1  that the Defective Vehicles are of a particular standard and quality when they are

2  not; (3) advertising the Defective Vehicles with the intent not to sell them as

3  advertised; and (4) knowingly made numerous other false representations as further

4  described above.

5      494.   Old GM knowingly made false representations to consumers with the

6  intent to induce consumers into purchasing Defective Vehicles.  Plaintiffs reasonably

7  relied on the Companies' false representations and were induced to each purchase or

8  lease a Defective Vehicle.  As a result of these unlawful trade practices, Plaintiffs

9  have suffered ascertainable loss.

10      495.   Plaintiffs and the Class suffered ascertainable loss caused by the

11  Companies' false representations and failure to disclose material information.

12  Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of

13  their bargain.  The value of their Defective Vehicles has diminished now that the

14  safety issues have come to light, and Plaintiffs and the Class own vehicles that are

15  not safe.

16      496.   Accordingly, Plaintiffs and the Class seek their actual damages, and all

17  other appropriate and available remedies under the Nevada Deceptive Trade

18  Practices Act.

19  **<u>NEW HAMPSHIRE</u>**

20  **VIOLATION OF N.H. CONSUMER PROTECTION ACT**

21  **(N.H. REV. STAT. ANN. § 358-A:1, *et seq.*)**

22      497.   Plaintiffs reallege and incorporate by reference all paragraphs as though

23  fully set forth herein.

24      498.   In the event the Court declines to certify a nationwide Class, Plaintiffs

25  bring this claim solely on behalf of Class members residing in New Hampshire.

26      499.   Old GM and GM are each a "person" under the New Hampshire

27  Consumer Protection Act ("CPA"), N.H. REV. STAT. § 358-A:1.

28

- 91 -

1    500.   Old GM's and GM's actions as set forth herein occurred in the conduct

2    of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

3    501.   The CPA prohibits a person, in the conduct of any trade or commerce,

4    from doing any of the following:  "(V) Representing that goods or services have …

5    characteristics, … uses, benefits, or quantities that they do not have;" "(VII)

6    Representing that goods or services are of a particular standard, quality, or grade, …

7    if they are of another;" and "(IX) Advertising goods or services with intent not to sell

8    them as advertised." N.H. Rev. Stat. § 358-A:2.  GM is directly liable for engaging

9    in unfair and deceptive acts or practices in the conduct of trade or commerce in

10    violation of the CPA, and also has successor liability for the violations of Old GM.

11    502.   In the course of Old GM's and GM's business, both Companies

12    willfully failed to disclose and actively concealed the dangerous ignition switch

13    defect in the Defective Vehicles as described above.  Accordingly, both Companies

14    engaged in unlawful trade practices, including:  (1) representing that the Defective

15    Vehicles have characteristics, uses, benefits, and qualities which they do not have;

16    (2) representing that the Defective Vehicles are of a particular standard and quality

17    when they are not; and (3) advertising the Defective Vehicles with the intent not to

18    sell them as advertised.  Old GM and GM knew or should have known that their

19    conduct violated the CPA.

20    503.   As alleged above, Old GM made numerous material statements about

21    the safety and reliability of the Defective Vehicles that were either false or

22    misleading.  Each of these statements contributed to the deceptive context of both

23    Companies' unlawful advertising and representations as a whole.

24    504.   As described herein, both Companies knew of the safety ignition switch

25    defect, while the Class was deceived by the Companies' omission into believing the

26    Defective Vehicles were safe, and the information could not have reasonably been

27    known by the consumer until the February and March 2014 recalls.

28

- 92 -

505.    While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

506.    All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

507.    Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

508.    Whether or not a vehicle's ignition switch will malfunction, (a) causing the car's engine and electrical system to shut off, (b) disabling the power steering and power brakes, and (c) causing the non-deployment of the vehicle's airbags in a crash, are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Class members bought a Defective Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would feature a non-defective, safe ignition switch.

509.    Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented the Class from making fully informed decisions about whether to lease, purchase, and/or retain the Defective Vehicles.

510.    Class members were injured in their property as a result of Old GM's and GM's violation of the NCPA.  Class members overpaid for their Defective

Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

511.   Because Old GM's and GM's willful conduct caused injury to Class members' property through violations of the CPA, the Class seeks recovery of actual damages or $1,000, whichever is greater, discretionary treble damages, and reasonable attorneys' fees, under N.H. REV. STAT. § 358-A:10.

## NEW JERSEY

## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### (N.J. STAT. ANN. § 56:8-1, *et seq.*)

512.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

513.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in New Jersey.

514.   The New Jersey Consumer Fraud Act ("CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…." N.J. STAT. ANN. § 56:8-2.

515.   Old GM was, and GM is, a person within the meaning of the CFA.  N.J. STAT. ANN. § 56:8-1(d).

516.   In the course of the Companies' business, they knowingly failed to disclose and actively concealed the dangerous risks of the ignition switch defect in the Defective Vehicles as described above.  This was an unlawful practice in that the Companies represented that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that the Defective

- 94 -

1   Vehicles are of a particular standard and quality when they are not; and advertised
2   the Defective Vehicles with the intent not to sell them as advertised.  The Companies
3   knew or should have known that their conduct violated the CFA.

4       517.   Old GM engaged in an unlawful practice under the CFA when it failed
5   to disclose material information concerning the Defective Vehicles which it knew at
6   the time of the sale.  Old GM deliberately withheld the information about the
7   vehicles' propensity to shut down during ordinary driving conditions so that
8   consumers would purchase its vehicles and to induce the consumer to enter into a
9   transaction.

10       518.   The Companies' unlawful practices caused substantial injury to
11   consumers.

12       519.   The ignition switch defects, and the resultant propensity of the
13   Defective Vehicles to inadvertently shut down during normal driving conditions, was
14   material to Plaintiffs and the Class.  Had Plaintiffs and the Class known that their
15   Defective Vehicles had these serious safety defects, they would not have purchased
16   their Defective Vehicles.

17       520.   Plaintiffs and the Class suffered ascertainable loss of money or property
18   caused by the Companies' unlawful practices.  Plaintiffs and the Class overpaid for
19   their vehicles and did not receive the benefit of their bargain.  The value of their
20   Defective Vehicles has diminished now that the safety issues have come to light, and
21   Plaintiffs and the Class own vehicles that are not safe.  GM exacerbated the
22   diminution of value, and therefore the harm to Plaintiffs and the Class, by continuing
23   the campaign of deception as alleged above.

24       521.   Plaintiffs are entitled to recover legal and/or equitable relief, treble
25   damages, and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19.

26       522.   Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiffs will mail a copy of the
27   complaint to New Jersey's Attorney General within ten (10) days of filing it with the
28   Court.

- 95 -

# NEW MEXICO

## VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. STAT. ANN. §§ 57-12-1, *et seq.*)

523.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

524.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members residing in New Mexico.

525.   Old GM, GM, and Class members are "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. STAT. ANN. § 57-12-2.

526.   Old GM's and GM's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

527.   Old GM's and GM's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. STAT. ANN. § 57-12-2.  Specifically, by failing to disclose and actively concealing the dangerous ignition switch defect in Defective Vehicles, Old GM and GM engaged in deceptive business practices prohibited by the New Mexico UTPA, including:  (1) representing that the Defective Vehicles have characteristics and benefits, which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) using exaggeration as to a material fact and by doing so deceiving or tending to deceive; (4) failing to state a material fact and by doing so deceiving or tending to deceive; and (5) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not.  *See* N.M. STAT. ANN. § 57-12-2.  GM is directly liable for engaging in unfair or deceptive acts or practices in violation of the New Mexico UTPA, and also has successor liability for the violations of Old GM.

528.   As alleged herein, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or

010440-11  679569 V1

1  misleading.  Each of these statements contributed to the deceptive context of both

2  Companies' unlawful advertising and representations as a whole.

3  529.  As described herein, both Companies knew of the safety ignition switch

4  defect, while the Class was deceived by the Companies' omission into believing the

5  Defective Vehicles were safe, and the information could not have reasonably been

6  known by the consumer until the February and March 2014 recalls.

7  530.  While Old GM knew of the ignition switch defects by 2001, it

8  continued to design, manufacture, and market the Defective Vehicles until 2007.

9  531.  All the while, Old GM knew that the vehicles had an unreasonable

10 propensity to shut down during ordinary driving conditions, leading to an

11 unreasonable risk of serious bodily injury or death.

12 532.  Old GM's and GM's deceptive practices were likely to and did in fact

13 deceive reasonable consumers, including Class members, about the true safety and

14 reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn

15 Class members about these inherent dangers despite having a duty to do so.

16 533.  Old GM and GM took advantage of the lack of knowledge, ability,

17 experience, and capacity of the Class members to a grossly unfair degree.  Old GM's

18 and GM's actions resulted in a gross disparity between the value received and the

19 price paid by the Class members.  Old GM's and GM's actions constitute

20 unconscionable actions under § 57-12-2(E) of the New Mexico UTPA.

21 534.  Old GM's and GM's acts and practices were unfair and unconscionable,

22 because their acts and practices, including the manufacture and sale of vehicles with

23 an ignition switch defect, and the Companies' failure to adequately disclose the

24 defect to NHTSA and the Class and timely implement a remedy, offend established

25 public policy, and because the harm the Companies caused consumers greatly

26 outweighs any benefits associated with those practices.  The Companies' conduct has

27 also impaired competition within the automotive vehicles market and has prevented

28

010440-11  679569 V1

the Class from making fully informed decisions about whether to lease, purchase, and/or retain the Defective Vehicles.

535.   Class members were actually harmed as a result of Old GM's and GM's violation of the New Mexico UTPA.  Class members overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

536.   Class members also seek punitive damages against GM because both Old GM's and GM's conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.  Old GM and GM fraudulently and willfully misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly promised Class members were safe.  Because Old GM's and GM's conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith, it warrants punitive damages.

537.   Because Old GM's and GM's unconscionable, willful conduct caused actual harm to Class members, the Class seeks recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, under N.M. STAT. ANN. § 57-12-10.

## NEW YORK

## DECEPTIVE ACTS OR PRACTICES

### (N.Y. GEN. BUS. LAW § 349 AND 350)

538.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

539.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members residing in New York.

- 98 -

1    540.   New York General Business Law ("G.B.L."), N.Y. GEN. BUS. LAW

2    § 349, makes unlawful "[d]eceptive acts or practices in the conduct of any business,

3    trade or commerce."

4    541.   In the course of Old GM's and GM's business, they willfully failed to

5    disclose and actively concealed the dangerous ignition switch defect in the Defective

6    Vehicles as described above.  Accordingly, Old GM made untrue, deceptive, or

7    misleading representations of material facts and both Companies omitted and/or

8    concealed material facts.  GM is directly liable for engaging in deceptive acts or

9    practices in the conduct of any business, trade, or commerce in violation of the

10   G.B.L., and also has successor liability for the violations of Old GM.

11   542.   As alleged herein, Old GM made numerous material statements about

12   the safety and reliability of the Defective Vehicles that were either false or

13   misleading.  Each of these statements contributed to the deceptive context of both

14   Companies' unlawful advertising and representations as a whole.

15   543.   As described herein, both Companies knew of the safety ignition switch

16   defect, while the Class was deceived by the Companies' omission into believing the

17   Defective Vehicles were safe, and the information could not have reasonably been

18   known by the consumer until the February and March 2014 recalls.

19   544.   While Old GM knew of the ignition switch defects by 2001, it

20   continued to design, manufacture, and market the Defective Vehicles until 2007.

21   545.   All the while, Old GM knew that the vehicles had an unreasonable

22   propensity to shut down during ordinary driving conditions, leading to an

23   unreasonable risk of serious bodily injury or death.

24   546.   Whether or not a vehicle's ignition switch will malfunction, (a) causing

25   the car's engine and electrical system to shut off, (b) disabling the power steering

26   and power brakes, and (c) causing the non-deployment of the vehicle's airbags in a

27   crash, are facts that a reasonable consumer would consider important in selecting a

28   vehicle to purchase or lease.  When Class members bought a Defective Vehicle for

- 99 -

personal, family, or household purposes, they reasonably expected the vehicle would feature a non-defective, safe ignition switch.

547. Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles. Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

548. Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices. The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented the Class from making fully informed decisions about whether to lease, purchase, and/or retain the Defective Vehicles.

549. Old GM's and GM's deceptive and unfair acts and practices significantly impact the public as actual consumers of the Defective Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash. Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

550.   The Class suffered injury caused by Old GM's and GM's violation of the G.B.L.  Class members overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

551.   Class members also seek punitive damages against GM because both Old GM's and GM's conduct evidences egregious conduct.  Old GM and GM egregiously misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Class members were safe.  Old GM's and GM's egregious conduct warrants punitive damages.

552.   Because Old GM's and GM's willful and knowing conduct caused injury to Class members, the Class seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, and reasonable attorneys' fees, under N.Y. GEN. BUS. LAW § 349.

## NORTH DAKOTA

## VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT

### (N.D. CENT. CODE § 51-15-02)

553.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

554.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in North Dakota.

555.   The conduct of Old GM and GM as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Old GM's manufacture and sale of vehicles with defective ignition switches that the Companies failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles.

- 101 -

556.   Plaintiffs and the Class were injured as a result of the Companies' conduct.  Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value, which was exacerbated by GM's continuation of the campaign of deception as described above.

557.   The Companies' conduct proximately caused injuries to Plaintiffs and the Class.

558.   Further, the Companies knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, GM is liable to Plaintiffs and the Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.

## OHIO

### COUNT I

### VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT
### (OHIO REV. CODE ANN. § 1345.01, *et seq.*)

559.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

560.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Ohio.

561.   The Ohio Consumer Protection Act, OHIO REV. CODE § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  Specifically, the Act prohibits suppliers from representing that goods have characteristics or uses or benefits which they do not have.  The Act also prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

562.   Old GM and GM are "suppliers" as that term is defined in the Ohio Consumer Protection Act, OHIO REV. CODE § 1345.01(C).

- 102 -

563. Plaintiffs are "consumers" as that term is defined in the Ohio Consumer Protection Act, OHIO REV. CODE § 1345.01(D).

564. The conduct of the Companies alleged above constitutes unfair and/or deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02 because Old GM represented through advertising and other marketing communications that the vehicles were new and free from defects and could be driven safely in normal operation. Instead, the vehicles were not of the standard, quality, or grade of new vehicles.

565. The Companies' conduct caused Plaintiffs' damages as alleged.

566. Plaintiffs specifically do not allege herein a claim for violation of OHIO REV. CODE § 1345.72.

567. As a result of the foregoing wrongful conduct of the Companies, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual and statutory damages, treble damages, court costs, and reasonable attorneys' fees, pursuant to OHIO REV. CODE § 1345.09, *et seq.*

## COUNT II

## VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT

### (OHIO REV. CODE ANN. § 4165.01, *et seq.*)

568. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

569. In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Ohio.

570. OHIO REV. CODE § 4165.02(A) provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that

they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; … (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … [or] (11) Advertises goods or services with intent not to sell them as advertised."

571. Old GM and GM are "persons" within the meaning of OHIO REV. CODE § 4165.01(D).

572. The vehicles sold to Plaintiffs were not of the particular sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities represented by Old GM.

573. The vehicles sold to Plaintiffs were not of the particular standard, quality, and/or grade represented by Old GM.

574. The Companies made false or misleading statements of fact concerning the vehicles Plaintiffs purchased – *i.e.*, that such vehicles were suitable for ordinary use – when the Companies, in fact, knew that they were defective and not suitable for ordinary use.

575. These statements materially influenced Plaintiffs' decision to purchase the Defective Vehicles, in that the Companies' statements caused Plaintiffs to purchase and retain vehicles that they otherwise would not have had they known of the dangerous defect.

576. The Companies' deceptive trade practices caused Plaintiffs' damages.

577. The Companies' conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

578. As a result of the foregoing wrongful conduct of the Companies, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

010440-11 679569 V1

## OKLAHOMA

### VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT

### (OCPA, OKLA. STAT. TIT. 15 § 751, *et seq.*)

579. Plaintiffs reallege and incorporate by reference each paragraph as if set forth fully herein.

580. In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members residing in Oklahoma.

581. Class members are "persons" under the Oklahoma Consumer Protection Act ("OCPA"), OKLA. STAT. TIT. 15 § 752.

582. The sale of the Defective Vehicles to the Class members was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15 § 752, and Old GM's and GM's actions as set forth herein occurred in the conduct of trade or commerce.

583. Old GM and GM engaged in deceptive and unfair trade practices prohibited by the OCPA, including, but not limited to, making a false or misleading representation to Class members, knowingly or with reason to know, as to the approval or certification of the Defective Vehicles; making a false representation to Class members, knowingly or with reason to know, as to the characteristics or benefits of the Defective Vehicles; representing to Class members, knowingly or with reason to know, that the Defective Vehicles were of a particular standard when they were of another; and advertising to Class members, knowingly or with reason to know, the Defective Vehicles with intent not to sell them as advertised. *See* OKLA. STAT. TIT. 15, § 753. GM is directly liable for engaging in deceptive and unfair trade practices prohibited by the OCPA, and also has successor liability for the violations of Old GM.

584. As alleged herein, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or

- 105 -

misleading. Each of these statements contributed to the deceptive context of both Companies' unlawful advertising and representations as a whole.

585. Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles. Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

586. While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

587. All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

588. Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so. Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.

589. Old GM's and GM's deceptive and unfair acts and practices significantly impact the public since the Defective Vehicles pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash. Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

590.   The Class suffered injury-in-fact caused by Old GM's and GM's violation of the OCPA.  Class members overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

591.   Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and the Class from making fully informed decisions about whether to lease, purchase, and/or retain Defective Vehicles.

592.   Because Old GM's and GM's unconscionable conduct caused injury to Class members, the Class seeks recovery of actual damages, discretionary damages up to $2,000 per violation, and reasonable attorneys' fees, under OKLA. STAT. TIT. 15 § 761.1.

## OREGON

### VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (OR. REV. STAT. §§ 646.605, *et seq.*)

593.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

594.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Oregon residents.

595.   The Oregon Unfair Trade Practices Act ("OUTPA") prohibits a person from, in the course of the person's business, doing any of the following:
"(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular

- 107 -

standard [or] quality … if they are of another; and (i) Advertis[ing] … goods or services with intent not to provide them as advertised." OR. REV. STAT. § 646.608(1).

596. Old GM was, and GM is, a person within the meaning of OR. REV. STAT. § 646.605(4).

597. The Defective Vehicles at issue are "goods" obtained primarily for personal, family, or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

598. In the course of the Companies' business, they willfully failed to disclose and actively concealed the dangerous risk posed by the defective ignition switches in the Defective Vehicles as described above. Accordingly, the Companies engaged in unlawful trade practices, including representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles are of a particular standard and quality when they are not; and advertising Defective Vehicles with the intent not to sell them as advertised. The Companies knew or should have known that their conduct violated the OUTPA.

599. As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

600. Old GM engaged in a deceptive trade practice when it failed to disclose material information concerning the Defective Vehicles which it knew at the time of the sale. Old GM deliberately withheld the information about the vehicles' propensity to inadvertently shut down in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

601. The propensity of the Defective Vehicles to inadvertently shut down during ordinary operation was material to Plaintiffs and the Class. Had Plaintiffs and the Class known that their vehicles had these serious safety defects, they would not have purchased their Defective Vehicles.

- 108 -

602.   Plaintiffs and the Class suffered ascertainable loss caused by the Companies' failure to disclose material information.  Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of their bargain.  The value of their Defective Vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

603.   Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1).  Plaintiffs are also entitled to punitive damages because the Companies engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

604.   Pursuant to OR. REV. STAT. § 646.638(2), Plaintiffs will mail a copy of the complaint to Oregon's attorney general.

## PENNSYLVANIA

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (73 P.S. § 201-1, *et seq.*)

605.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

606.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Pennsylvania.

607.   The conduct of Old GM and GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with a serious ignition switch defect, which the Companies failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles.

608.   The Companies' actions as set forth above occurred in the conduct of trade or commerce.

609.   The Companies' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing

- 109 -

Defective Vehicles as a result of the Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

610.   Plaintiffs and the Class suffered ascertainable loss as a result of the Companies' conduct.  Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

611.   The Companies' conduct proximately caused injuries to Plaintiffs and the Class.

612.   GM is liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

### RHODE ISLAND

### VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

### (R.I. GEN. LAWS § 6-13.1, *et seq.*)

613.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

614.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this case solely on behalf of Class members who reside in Rhode Island.

615.   Plaintiffs are persons who purchased or leased goods primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6-13.1-5.2(a).

616.   Rhode Island's Unfair Trade Practices and Consumer Protection Act ("UTPCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including:  "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing that goods or services are of a particular standard, quality, or grade …, if they are of another"; "(ix) Advertising goods or

1    services with intent not to sell them as advertised"; "(xii) Engaging in any other

2    conduct that similarly creates a likelihood of confusion or of misunderstanding";

3    "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer";

4    and "(xiv) Using any other methods, acts or practices which mislead or deceive

5    members of the public in a material respect."  R.I. GEN. LAWS § 6-13.1-1(6).

6         617.   In the course of the business of Old GM and GM, the Companies

7    willfully failed to disclose and actively concealed the dangerous risks caused by the

8    ignition switch defects in the Defective Vehicles as described above.  Accordingly,

9    the Companies engaged in unlawful trade practices, including:  (1) representing that

10    the Defective Vehicles have characteristics, uses, benefits, and qualities which they

11    do not have; (2) representing that the Defective Vehicles are of a particular standard

12    and quality when they are not; (3) advertising the Defective Vehicles with the intent

13    not to sell them as advertised; and (4) otherwise engaging in conduct likely to

14    deceive.

15         618.   The Companies' actions as set forth above occurred in the conduct of

16    trade or commerce.

17         619.   Plaintiffs suffered ascertainable loss of money as a result of the

18    Companies' violation of the UTPCPA.

19         620.   Plaintiffs and the Class were injured as a result of the Companies'

20    conduct in that Plaintiffs overpaid for their Defective Vehicles and did not receive

21    the benefit of their bargain, and their vehicles have suffered a diminution in value.

22    These injuries are the direct and natural consequence of the Companies'

23    misrepresentations and omissions.

24         621.   Accordingly, Plaintiffs are entitled to recover the greater of actual

25    damages or $200 pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a).

26

27

28

010440-11  679569 V1

## SOUTH CAROLINA

## UNFAIR TRADE PRACTICES ACT

### (S.C. CODE ANN. § 39-5-10, *et seq.*)

622.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

623.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are South Carolina residents.

624.   Old GM was, and GM is, a "person" under S.C. CODE ANN. § 39-5-10.

625.   The Companies both participated in unfair or deceptive acts or practices that violated the South Carolina Unfair Trade Practices Act (the "Act"), S.C. CODE ANN. § 39-5-10, *et seq.*, as described above and below.

626.   By failing to disclose and actively concealing the dangerous risk caused by the ignition switch defects in the Defective Vehicles, the Companies engaged in unfair or deceptive practices prohibited by the Act, S.C. CODE ANN. § 39-5-10, *et seq.*, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) representing that the subject of a transaction involving the Defective Vehicles has been supplied in accordance with a previous representation when it has not.

627.   As alleged above, the Companies made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of the Companies' unlawful advertising and representations as a whole.

628.   The Companies knew that the ignition switch in the Defective Vehicles was defectively designed or manufactured, would fail without warning, and was not

010440-11  679569 V1

1    suitable for its intended use of turning the vehicle off based solely on driver

2    commands.  The Companies nevertheless failed to warn Plaintiffs about these

3    inherent dangers despite having a duty to do so.

4           629.   The Companies each owed Plaintiffs a duty to disclose the defective

5    nature of the Defective Vehicles, including the dangerous risks posed by the

6    defective ignition switches, because the Companies:

7                 a.      Possessed exclusive knowledge of the defects rendering the

8    Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

9                 b.      Intentionally concealed the hazardous situation with the Defective

10   Vehicles in order to hide the life-threatening problems from Plaintiffs; and/or

11                c.      Made incomplete representations about the safety and reliability

12   of the Defective Vehicles, while purposefully withholding material facts from

13   Plaintiffs that contradicted these representations.

14          630.   Defective Vehicles equipped with defective ignition switches pose an

15   unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other

16   motorists, pedestrians, and the public at large, because they are susceptible to the

17   inadvertent shut down of the vehicle and its electrical systems, including brakes,

18   power steering, and airbags.

19          631.   Whether or not a vehicle (a) shuts down only when commanded to do so

20   and (b) maintains operable brakes, power steering, and airbags during ordinary

21   operation, are facts that a reasonable consumer would consider important in selecting

22   a vehicle to purchase or lease.  When Plaintiffs bought a Defective Vehicle for

23   personal, family, or household purposes, they reasonably expected the vehicle would

24   (a) shut down only when commanded to do so and (b) maintain operable brakes,

25   power steering, and airbags during ordinary operation.

26          632.   The Companies' unfair or deceptive trade practices were likely to and

27   did in fact deceive reasonable consumers, including Plaintiffs, about the true safety

28   and reliability of the Defective Vehicles.

633.   As a result of their violations of the Act detailed above, the Companies caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.  Plaintiffs currently own or lease Defective Vehicles that are defective and inherently unsafe.  The ignition switch defects have caused the value of the Defective Vehicles to plummet.

634.   Plaintiffs risk irreparable injury as a result of the Companies' acts and omissions in violation of the Act, and these violations present a continuing risk to Plaintiffs as well as to the general public.

635.   Pursuant to S.C. CODE ANN. § 39-5-140, Plaintiffs seek monetary relief against GM to recover for their sustained losses.

636.   Plaintiffs further allege that GM's malicious and deliberate conduct warrants an assessment of punitive damages because GM carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result.  The Companies intentionally and willfully misrepresented the safety and reliability of the Defective Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Plaintiffs were safe.  GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

637.   Plaintiffs further seek an order enjoining GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Act.

010440-11  679569 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SOUTH DAKOTA

## VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES ACT

### (S.D. CODIFIED LAWS § 37-24-6)

638. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

639. In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in South Dakota.

640. The conduct of Old GM and GM as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Old GM's manufacture and sale of vehicles with an ignition switch defect which the Companies failed to adequately investigate, disclose and remedy, and the Companies misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles.

641. Plaintiffs and the Class were injured as a result of the Companies' conduct. Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

642. The Companies' conduct proximately caused the injuries to Plaintiffs and the Class.

643. Under S.D. CODIFIED LAWS § 37-24-31, Plaintiffs and the Class are entitled to a recovery of their actual damages suffered as a result of GM's acts and practices, including the acts and practices of Old GM for which GM has successor liability.

## TENNESSEE

## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

### (TENN. CODE ANN. § 47-18-101, *et seq.*)

644. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 115 -

645.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Tennessee.

646.   Old GM and GM misrepresented the safety of the Defective Vehicles after learning of their defects with the intent that Plaintiffs rely on such representations in their decision regarding the purchase, lease, and/or use of the Defective Vehicles.

647.   Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease, and/or use of the Defective Vehicles.

648.   Through these misleading and deceptive statements and false promises, the Companies violated the Tennessee Consumer Protection Act.

649.   The Tennessee Consumer Protection Act applies to the Companies' transactions with Plaintiffs because the Companies' deceptive scheme was carried out in Tennessee and affected Plaintiffs.

650.   The Companies also failed to advise NHSTA and the public about what they knew about the ignition switch defects in the Defective Vehicles.

651.   Plaintiffs relied on the Companies' silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Defective Vehicles.

652.   As a direct and proximate result of GM's deceptive conduct and violation of the Tennessee Consumer Protection Act, and the violations of Old GM for which GM has successor liability, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to declaratory relief, and compensatory and equitable damages in an amount to be proven at trial.

# TEXAS

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

### (TEX. BUS. & COM. CODE §§ 17.41, *et seq.*)

653.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 116 -

654. In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Texas. A pre-suit demand was sent on March 28, 2014.

655. The conduct of Old GM and GM described above constitutes false, misleading, or deceptive acts or practices under the Texas Deceptive Trade Practices – Consumer Protection Act, TEX. BUS. & COM. CODE § 17.41, *et seq.* ("Texas DTPA").

656. By failing to disclose and actively concealing the dangerous ignition switch defects in the Defective Vehicles, the Companies engaged in deceptive business practices prohibited by the Texas DTPA, including: (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) failing to disclose information concerning the Defective Vehicles with the intent to induce consumers to purchase or lease the Defective Vehicles.

657. As alleged above, the Companies made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of the Companies' unlawful advertising and representations as a whole.

658. The Companies' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the Defective Vehicles.

659. In purchasing, leasing, and/or continuing to use their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of the Companies with respect of the safety and reliability of the vehicles. The Companies' representations turned out not to be true because the vehicles can unexpectedly and dangerously shut down

- 117 -

during ordinary driving conditions. Had Plaintiffs known this they would not have purchased or leased their Defective Vehicles and/or paid as much for them, and they would not have retained and continued to use them.

660. GM is therefore liable to Plaintiffs and the Class for damages under §§ 17.50(a)(2) and 17.50(b) of the Texas DTPA, both because of its own violations and because of its successor liability for the violations of Old GM. These same actions also constitute an unconscionable action or course of action under § 17.50(a)(3) of the Texas DTPA.

661. Plaintiffs and the Class sustained damages as a result of the Companies' unlawful acts and are, therefore, entitled to damages and other relief provided for under § 17.50(b) of the Texas DTPA. Because this conduct was committed knowingly and/or intentionally, the Plaintiffs and the Class are entitled to treble damages.

662. For those Plaintiffs and the Class who wish to rescind their purchases, they are entitled under § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

663. Plaintiffs and the Class also seek court costs and attorneys' fees under § 17.50(d) of the Texas DTPA.

## UTAH

### VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT
### (UCSPA, Utah Code Ann. § 13-11-1, *et seq.*)

664. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

665. In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Utah.

666. Old GM and GM are each "suppliers" under the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code Ann. § 13-11-3.

- 118 -

667. Class members are "persons" under UTAH CODE ANN. § 13-11-3.

668. The sale of the Defective Vehicles to the Class members was a "consumer transaction" within the meaning of UTAH CODE ANN. § 13-11-3.

669. This UCSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under UTAH CODE ANN. § 13-11-4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." UTAH CODE ANN. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the UCSPA. UTAH CODE ANN. § 13-11-5. GM is directly liable for engaging in deceptive acts and practices in connection with a consumer transaction in violation of the UCSPA, and also has successor liability for the deceptive acts and practices of Old GM.

670. By misrepresenting the safety of the Defective Vehicles and omitting the material fact of the ignition switch defect, Old GM and GM violated the UCSPA by knowingly or intentionally indicating that the Defective Vehicles had performance, characteristics, or benefits they did not, and that the Defective Vehicles were of a particular standard, quality, or grade they were not.

671. As alleged herein, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading, and that Old GM and GM knew or had reason to know were false.

672. Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles. Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could

1    not have reasonably been known by the consumer until the February and March 2014

2    recalls.

3         673.    While Old GM knew of the ignition switch defects by 2001, it

4    continued to design, manufacture, and market the Defective Vehicles until 2007.

5         674.    All the while, Old GM knew that the vehicles had an unreasonable

6    propensity to shut down during ordinary driving conditions, leading to an

7    unreasonable risk of serious bodily injury or death.

8         675.    Old GM's and GM's deceptive practices were likely to and did in fact

9    deceive reasonable consumers, including Class members, about the true safety and

10   reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn

11   Class members about these inherent dangers despite having a duty to do so.

12        676.    As a result of their violations of the UCSPA detailed above, Old GM

13   and GM caused ascertainable loss of money or property to Class members.  Class

14   members currently own or lease Defective Vehicles that are defective and inherently

15   unsafe. Defective and dangerous ignition switches have caused the value of the

16   Defective Vehicles to plummet.

17        677.    Class members also seek punitive damages against GM because both

18   Old GM's and GM's conduct was willful, malicious, intentionally fraudulent, and

19   displayed reckless disregard for the rights of the Class members.  Old GM and GM

20   willfully, maliciously, recklessly, and fraudulently misrepresented the safety and

21   reliability of the Defective Vehicles, deceived Class members on life-or-death

22   matters, and concealed material facts that only they knew, all to avoid the expense

23   and public relations nightmare of correcting a deadly flaw in the Defective Vehicles

24   they repeatedly promised Class members were safe.  Because Old GM's and GM's

25   unlawful conduct was willful, malicious, intentionally fraudulent, and displayed

26   reckless disregard for the rights of the Class members, it warrants punitive damages.

27        678.    Class members suffered ascertainable loss as a result of Old GM's and

28   GM's knowing, intentional, and unconscionable violation of the UCSPA.  The Class

010440-11  679569 V1

therefore requests that each Class member recover either their actual damages or $2000, whichever is greater, punitive damages, and reasonable attorneys' fees, under UTAH CODE ANN. § 13-11-19(2),(5).

**VERMONT**

**VIOLATION OF VERMONT CONSUMER FRAUD ACT**

**(VT. STAT. ANN. TIT. 9, § 2451 *et seq.*)**

679.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

680.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring these claims solely on behalf of Class members who are Vermont residents.

681.   The Vermont Consumer Fraud Act ("VCFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce.…" VT. STAT. ANN. TIT. 9, § 2453(a).

682.   Old GM was, and GM is, a seller within the meaning of the VCFA. VT. STAT. ANN. TIT. 9, § 2451(a)(c).

683.   In the course of the Companies' business, they willfully failed to disclose and actively concealed the dangerous risk of ignition switch defects in the Defective Vehicles as described above. This was a deceptive act in that the Companies represented that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that the Defective Vehicles are of a particular standard and quality when they are not; and advertised the Defective Vehicles with the intent not to sell them as advertised. The Companies knew or should have known that their conduct violated the VCFA.

684.   Old GM engaged in a deceptive trade practice under the VCFA when it failed to disclose material information concerning the Defective Vehicles which was known to Old GM at the time of the sale. Old GM deliberately withheld the information about the vehicles' propensity for unintended shut down during normal

- 121 -

driving conditions in order to ensure that consumers would purchase the Defective Vehicles and to induce the consumer to enter into a transaction.

685. The information withheld was material in that it was information that was important to consumers and likely to affect their choice of, or conduct regarding, the purchase of their cars. Old GM's withholding of this information was likely to mislead consumers acting reasonably under the circumstances. The propensity of the Defective Vehicles to inadvertently shut down during ordinary driving conditions was material to Plaintiffs and the Class. Had Plaintiffs and the Class known that their Defective Vehicles had these serious safety defects, they would not have purchased their Defective Vehicles.

686. The Companies' conduct has caused or will cause a substantial injury that is not reasonably avoided by consumers, and the harm is not outweighed by a countervailing benefit to consumers or competition.

687. Plaintiffs and the Class have suffered injury and damages as a result of the Companies' false or fraudulent representations and practices in violation of § 2453, including the violations of GM itself and the violations of Old GM for which GM has successor liability. Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of their bargain. The value of their Defective Vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the Class own vehicles that are not safe.

688. Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]" pursuant to VT. STAT. ANN. TIT. 9, § 2461(b).

### **VIRGINIA**

### **VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT**

### **(VCPA, VA. CODE ANN. 15 §§ 59.1-196, *et seq.*)**

689.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

690.    In the event the Court declines to certify a nationwide Class, this claim is brought solely on behalf of Class members who are Virginia residents.

691.    Old GM and GM are each a "supplier" under VA. CODE ANN. § 59.1-198.

692.    The sale of the Defective Vehicles to the Class members was a "consumer transaction" within the meaning of VA. CODE ANN. § 59.1-198. The VCPA makes unlawful any "fraudulent acts or practices committed by a supplier in connection with a consumer transaction" specifically "2. Misrepresenting the source, sponsorship, approval, or certification of goods or services;" "5. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;" "6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model;" "8. Advertising goods or services with intent not to sell them as advertised;" and "14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200.  GM is directly liable for engaging in fraudulent acts and practices in violation of the VCPA, and also has successor liability for the fraudulent acts and practices of Old GM.

693.    Old GM violated the VCPA by "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services," "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits," "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model," and "[a]dvertising goods or services with intent not to sell them as advertised."  VA. CODE ANN. § 59.1-200.

- 123 -

694.   Both Old GM and GM violated the VCPA by "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200.

695.   As alleged above, both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

696.   Old GM also violated the VCPA by representing that the Defective Vehicles were safe such that reasonable people believed the represented or suggested state of affairs to be true; namely, that the Defective vehicles were safe.  By representing the Defective Vehicles were safe, Old GM in effect misrepresented the certification, characteristics, benefits, standard, quality, and grade of the Defective Vehicles, while also advertising the Defective Vehicles with intent not to sell them as advertised."

697.   Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and the Class from making fully informed decisions about whether to lease, purchase, and/or retain the Defective Vehicles.

698.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

699.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

700. As a result of their violations of the VCPA detailed above, Old GM and GM caused ascertainable loss of money or property to Class members. Class members currently own or lease Defective Vehicles that are defective and inherently unsafe. Defective and dangerous ignition switches have caused the value of the Defective Vehicles to plummet.

701. Class members also seek punitive damages against GM because both Old GM's and GM's conduct was willfully and wantonly negligent and/or malicious. Old GM and GM willfully, wantonly, and maliciously misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Class members were safe. Because Old GM's and GM's unlawful conduct was willfully and wantonly negligent and/or malicious, it warrants punitive damages.

702. Class members suffered loss as a result of Old GM's and GM's willful violation of the VCPA. The Class therefore seeks treble damages or $1000, whichever is greater, punitive damages, and reasonable attorneys' fees, under VA. CODE ANN. § 59.1-204(A).

## WASHINGTON

### VIOLATION OF THE CONSUMER PROTECTION ACT

#### (REV. CODE WASH. ANN. §§ 19.86.010, *et seq.*)

703. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

704. In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are residents of the State of Washington.

705. The conduct of Old GM and GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and

- 125 -

sale of vehicles with an ignition switch defect which the Companies failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles.

706.   The Companies' actions as set forth above occurred in the conduct of trade or commerce.

707.   The Companies' actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of the Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

708.   Plaintiffs and the Class were injured as a result of the Companies' conduct.  Plaintiffs overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value, and that diminution has been exacerbated by GM's perpetuation of the campaign of deception begun by Old GM.

709.   The Companies' conduct proximately caused the injuries to Plaintiffs and the Class.

710.   GM is liable to Plaintiffs and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

711.   Pursuant to WASH. REV. CODE. ANN. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## WEST VIRGINIA

## VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT
### (W. VA. CODE § 46A-1-101, *et seq.*)

712.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

010440-11  679569 V1

713.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who are residents of West Virginia.

714.   Old GM was, and GM is, a "person" under W. VA. CODE § 46A-1-102(31).

715.   Plaintiffs are "consumers," as defined by W. VA. CODE §§ and 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Defective Vehicles.

716.   Old GM and GM both participated in unfair or deceptive acts or practices that violated the Consumer Credit and Protection Act ("CCPA"), W. VA. CODE § 46A-1-101, *et seq.* as described herein.  GM is directly liable for its violations of law, and has successor liability for the violations of Old GM.

717.   By failing to disclose and actively concealing the dangerous risks posed by the defective ignition switches in the Defective Vehicles, the Companies engaged in deceptive business practices prohibited by the CCPA, W. VA. CODE § 46A-1-101, *et seq.*, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) representing that the subject of a transaction involving the Defective Vehicles has been supplied in accordance with a previous representation when it has not.

718.   As alleged above, the Companies made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of the Companies' unlawful advertising and representations as a whole.

719.   The Companies knew that the ignition switches in the Defective Vehicles were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use of shutting down the vehicle only in response to driver commands.  The Companies nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

720.   The Companies each owed Plaintiffs a duty to disclose the defective nature of the Defective Vehicles, including the dangerous risk the vehicles would unexpectedly shut down, rendering the vehicle, its power steering and brakes, and its airbags inoperable, because the Companies:

a.      Possessed exclusive knowledge of the defects rendering the Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

b.      Intentionally concealed the hazardous situation with the Defective Vehicles; and/or

c.      Made incomplete representations about the safety and reliability of the Defective Vehicles while purposefully withholding material facts from Plaintiffs that contradicted these representations.

721.   Defective Vehicles equipped with defective ignition switches pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large.

722.   Whether or not a vehicle (a) shuts down only when commanded to do so and (b) suddenly loses power steering, breaks, and airbag, are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiffs bought a Defective Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would (a) not shut down unless commanded to do so by the driver; and (b) maintain operable brakes, power steering and airbags.

010440-11  679569 V1

1    723.   The Companies' unfair or deceptive acts or practices were likely to

2  deceive reasonable consumers, including Plaintiffs, about the true safety and

3  reliability of the Defective Vehicles.

4    724.   As a result of its violations of the CCPA detailed above, the Companies

5  caused ascertainable loss to Plaintiffs and, if not stopped, will continue to harm

6  Plaintiffs.  Plaintiffs currently own or lease Defective Vehicles that are defective and

7  inherently unsafe.  The ignition switch defects have caused the value of the

8  Defective Vehicles to plummet.

9    725.   Plaintiffs risk irreparable injury as a result of GM's acts and omissions

10  in violation of the CCPA, and these violations present a continuing risk to Plaintiffs

11  as well as to the general public, especially with respect to other Defective Vehicles,

12  which Plaintiffs believe exist and have not yet been recalled.

13    726.   Notice will be sent to GM in compliance with W. VA. CODE § 46A-6-

14  106 more than twenty days prior to the filing of an Amended Complaint.

15    727.   Pursuant to W. VA. CODE § 46A-1-106, Plaintiffs seek monetary relief

16  against GM measured as the greater of (a) actual damages in an amount to be

17  determined at trial and (b) statutory damages in the amount of $200 per violation of

18  the CCPA for each Plaintiff and each member of the Class they seek to represent.

19    728.   Plaintiffs also seek punitive damages against GM because the

20  Companies carried out despicable conduct with willful and conscious disregard of

21  the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a

22  result.  The Companies intentionally and willfully misrepresented the safety and

23  reliability of the Defective Vehicles, deceived Plaintiffs on life-or-death matters, and

24  concealed material facts that only they knew, all to avoid the expense and public

25  relations nightmare of correcting a deadly flaw in the Defective Vehicles it

26  repeatedly promised Plaintiffs were safe.  The Companies' unlawful conduct

27  constitutes malice, oppression, and fraud warranting punitive damages.

28

729.   Plaintiffs believe that the recalls and repairs instituted by GM have not been adequate.  Defective Vehicles still are defective and, Plaintiffs believe, the recall has not been offered to all Defective Vehicle owners.

730.   Plaintiffs further seek an order enjoining GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W. VA. CODE § 46A-5-101, *et seq.*, and any other just and proper relief available under the CCPA.

**WISCONSIN**

**VIOLATIONS OF THE WISCONSIN
DECEPTIVE TRADE PRACTICES ACT**

**(WISC. STAT. § 110.18)**

731.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

732.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Wisconsin.

733.   The Companies' above-described acts and omissions constitute false, misleading, or deceptive acts or practices under the Wisconsin Deceptive Trade Practices Act § 110.18 ("Wisconsin DTPA").

734.   By failing to disclose and misrepresenting the risks posed by defective ignition switches in the Defective Vehicles, the Companies engaged in deceptive business practices prohibited by the Wisconsin DTPA, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) representing that the subject of a

- 130 -

1    transaction involving the Defective Vehicles has been supplied in accordance with a

2    previous representation when it has not.

3         735.   As alleged above, the Companies made numerous material statements

4    about the safety and reliability of the Defective Vehicles that were either false or

5    misleading.  Each of these statements contributed to the deceptive context of the

6    Companies' unlawful advertising and representations as a whole.

7         736.   The Companies' unfair or deceptive acts or practices were likely to and

8    did in fact deceive reasonable consumers, including Plaintiffs, about the true safety

9    and reliability of the Defective Vehicles.

10        737.   In purchasing or leasing their vehicles, and in retaining and continuing

11    to operate them, the Plaintiffs relied on the misrepresentations and/or omissions of

12    the Companies with respect to the safety and reliability of the vehicles.  The

13    Companies' representations turned out not to be true because the vehicles can

14    unexpectedly and dangerously shut down during ordinary driving conditions.  Had

15    the Plaintiffs known this they would not have purchased or leased their Defective

16    Vehicles and/or paid as much for them, and they would not have retained and

17    continued to operate them.

18        738.   Plaintiffs and the Class sustained damages as a result of the Companies'

19    unlawful acts and are, therefore, entitled to damages and other relief provided for

20    under § 110.18(11)(b)(2) of the Wisconsin DTPA.  Because the Companies' conduct

21    was committed knowingly and/or intentionally, the Plaintiffs and the Class are

22    entitled to treble damages.

23        739.   Plaintiffs and the Class also seek court costs and attorneys' fees under

24    § 110.18(11)(b)(2) of the Wisconsin DTPA.

25

26

27

28

| | |
|---|---|
| 1 | **<u>WYOMING</u>** |
| 2 | **VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT** |
| 3 | **(WYO. STAT. §§ 45-12-105, *et seq.*)** |

740.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

741.   In the event the Court declines to certify a nationwide Class, Plaintiffs bring this claim solely on behalf of Class members who reside in Wyoming.  A pre-suit demand was sent on March 28, 2014.

742.   Under the Wyoming Consumer Protection Act, a person engages in a deceptive trade practice when, in the course of its business and in connection with a consumer transaction it knowingly:  "(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not"; "(v) Represents that merchandise has been supplied in accordance with a previous representation, if it has not…"; "(viii) Represents that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false"; "(x) Advertises merchandise with intent not to sell it as advertised"; or "(xv) Engages in unfair or deceptive acts or practices." WYO. STAT. § 45-12-105.

743.   In the course of the Companies' business, they willfully failed to disclose and actively concealed the dangerous risk posed by the ignition switch defects in the Defective Vehicles as described above.  Accordingly, the Companies engaged in deceptive trade practices, including (among other things) representing that the Defective Vehicles are of a particular standard and grade, which they are not; advertising the Defective Vehicles with the intent not to sell them as advertised; and overall engaging in unfair and deceptive acts or practices.

744.   Old GM knowingly made false representations to consumers with the intent to induce consumers into purchasing Defective Vehicles.  Plaintiffs reasonably relied on false representations by Old GM and were induced to purchase Defective

1  Vehicles. GM exacerbated the harm by continuing the campaign of deception begun
2  by Old GM. As a result of these unlawful trade practices, Plaintiffs have suffered
3  ascertainable loss.

4      745. Plaintiffs and the Class suffered ascertainable loss caused by the
5  Companies' false representations and failure to disclose material information.
6  Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of
7  their bargain. The value of their Defective Vehicles has diminished now that the
8  safety issues have come to light, and Plaintiffs and the Class own vehicles that are
9  not safe.

10      746. Old GM was, and GM is, a "person" as required under the statute.

11      747. The Companies' actions as set forth above occurred in the course of
12  business and in connection with a consumer transaction.

13      748. As required under the Wyoming Consumer Protection Act, a notice
14  letter will be sent on behalf of the Class in connection with this case.

## IX. PRAYER FOR RELIEF

16      WHEREFORE, Plaintiffs, individually and on behalf all others similarly
17  situated, respectfully request that this Court enter a judgment against GM and in
18  favor of Plaintiffs and the Class, and grant the following relief:

19      A. Determine that this action may be maintained as a Class action and
20  certify it as such under Rule 23(b)(3), or alternatively certify all issues and claims
21  that are appropriately certified; and designate and appoint Plaintiffs as Class
22  Representatives and Plaintiffs' chosen counsel as Class Counsel;

23      B. Declare, adjudge, and decree the conduct of GM as alleged herein to be
24  unlawful, unfair, and/or deceptive, and enjoin any such future conduct;

25      C. Award Plaintiffs and Class members actual, compensatory damages or,
26  in the alternative, statutory damages, as proven at trial;

27      D. Award Plaintiffs and the Class members exemplary damages in such
28  amount as proven;

1    E.    Award damages and other remedies as allowed by the laws of the States

2    as alleged in the alternate statewide consumer counts;

3    F.    Award Plaintiffs and the Class members their reasonable attorneys'

4    fees, costs, and pre-judgment and post-judgment interest;

5    G.    Grant an injunction ordering GM to implement an effective remedy for

6    all vehicles with defective ignition switches, including those not yet subject to recall;

7    and

8    H.    Award Plaintiffs and the Class members such other further and different

9    relief as the case may require or as determined to be just, equitable, and proper by

10   this Court.

11              **X.    JURY TRIAL DEMAND**

12        Plaintiffs request a trial by jury on the legal claims, as set forth herein.

13

14   DATED:  March 31, 2014              HAGENS BERMAN SOBOL SHAPIRO LLP

15                                       By:_____/s/ Elaine T. Byszewski_____
                                             Elaine T. Byszewski, Cal. Bar No. 222304
16                                       HAGENS BERMAN SOBOL SHAPIRO LLP
                                         301 North Lake Avenue, Suite 203
17                                       Pasadena, CA 91101
                                         Telephone: (213) 330-7150
18                                       Facsimile: (213) 330-7152
                                         E-mail: elaine@hbsslaw.com
19

20                                       Steve W. Berman (*pro hac vice pending*)
                                         Andrew M. Volk (*pro hac vice pending*)
21                                       HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1918 Eighth Avenue, Suite 3300
22                                       Seattle, WA  98101
                                         Telephone:  (206) 623-7292
23                                       Facsimile:  (206) 623-0594
                                         E-mail:  steve@hbsslaw.com
24                                       E-mail:  andrew@hbsslaw.com

25

26

27

28

1

2 Robert B. Carey (*pro hac vice pending*)
Michella A. Kras (*pro hac vice pending*)
3 HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
4 Telephone: (602) 840-5900
Facsimile: (602) 840-3012
5 E-mail: rob@hbsslaw.com
E-mail: michellak@hbsslaw.com
6

7 Mark P. Robinson, Jr. (SBN 054426)
Kevin F. Calcagnie (SBN 108994)
8 Scot D. Wilson (SBN 223367)
ROBINSON CALCAGNIE ROBINSON
9 SHAPIRO DAVIS, INC.
19 Corporate Plaza
10 Newport Beach, CA 92660
Tel.: (949) 720-1288
11 Fax: (949) 720-1292
mrobinson@rcrsd.com
12

13 Jon C. Cuneo (*pro hac vice pending*)
CUNEO GILBERT & LADUCA LLP
14 507 C Street NE
Washington, DC 20002
15 Tel.: (202) 587-5065
Fax: (202) 789-1813
16 JonC@cuneolaw.com

17

18 *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

27

28

Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
E-mail: elaine@hbsslaw.com

Steve W. Berman (*pro hac vice pending*)
Andrew M. Volk (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com
E-mail: andrew@hbsslaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION

| | |
|---|---|
| DANIEL RATZLAFF, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS COMPANY,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION<br><br>**RATZLAFF DECLARATION RE: CLRA VENUE** |

BARKER DECLARATION RE CLRA VENUE
010440-11 679397 V1

1    I, Daniel Ratzlaff, hereby declare and state as follows:

2    1.    I have personal knowledge of the facts stated herein and, if necessary,

3  could competently testify thereto.

4

5    2.    I am a Plaintiff in the above-entitled action.

6    3.    Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support

7  of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code

8  § 1780(a).

9    4.    This action for relief under Cal. Civ. Code § 1780(a) has been

10  commenced in a county that is a proper place for trial of this action because

11  Defendants do business in this District (the Central District of California) and

12

13  throughout the State of California.

14    5.    The Complaint filed in this matter contains causes of action for

15  violations of the Consumers Legal Remedies Act against General Motors, LLC

16  ("GM"), a Delaware limited liability company doing business nationwide, including

17  California.

18

19    6.    I own a 2005 Chevy Equinox which I purchased used in Lancaster,

20  California.

21    I declare under penalty of perjury under the laws of the State of California that

22  the foregoing Declaration is true and correct, and was executed by me in the city of

23  Quartz Hill, California, on March 22, 2014.

24

25    By: *Daniel Ratzlaff*
    Daniel Ratzlaff

26

27

28

BARKER DECLARATION RE CLRA VENUE
010440-11 679397 V1

1   Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
2   301 North Lake Avenue, Suite 203
Pasadena, CA 91101
3   Telephone: (213) 330-7150
Facsimile: (213) 330-7152
4   E-mail: elaine@hbsslaw.com

5

6   Steve W. Berman (*pro hac vice pending*)
Andrew M. Volk (*pro hac vice pending*)
7   HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
8   Seattle, WA 98101
Telephone: (206) 623-7292
9   Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com
10  E-mail: andrew@hbsslaw.com

11

12  *Attorneys for Plaintiff*

13            UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION

15

16  PATRICIA BARKER, individually and  |  Case No.:
on behalf of all others similarly situated,

17                      |  CLASS ACTION
          Plaintiff,

18

19  v.                   |  **BARKER DECLARATION
RE: CLRA VENUE**

20  GENERAL MOTORS COMPANY,

21          Defendant.

22

23

24

25

26

27

28

I, Patricia Barker, hereby declare and state as follows:

1. I have personal knowledge of the facts stated herein and, if necessary, could competently testify thereto.

2. I am a Plaintiff in the above-entitled action.

3. Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code § 1780(a).

4. This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a county that is a proper place for trial of this action because Defendants do business in this District (the Central District of California) and throughout the State of California.

5. The Complaint filed in this matter contains causes of action for violations of the Consumers Legal Remedies Act against General Motors, LLC ("GM"), a Delaware limited liability company doing business nationwide, including California.

6. I own a 2005 Saturn ION which I purchased in Torrance, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing Declaration is true and correct, and was executed by me in the city of Wilmington, California, on March 29, 2014.

By _Patricia A. Barker_

Patricia Barker