# EXHIBIT 2

Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Tel: (213) 330-7150
Fax: (213) 330-7152
E-mail: elaine@hbsslaw.com

Steve W. Berman (*pro hac vice pending*)
Andrew M. Volk (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
E-mail:  steve@hbsslaw.com
E-mail:  andrew@hbsslaw.com

Mark P. Robinson, Jr. (SBN 054426)
Kevin F. Calcagnie (SBN 108994)
Scot D. Wilson (SBN 223367)
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
19 Corporate Plaza
Newport Beach, CA  92660
Tel.: (949) 720-1288
Fax: (949) 720-1292
mrobinson@rcrsd.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SYLVIA BENTON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>GENERAL MOTORS LLC,<br><br>        Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

010440-11  680594 V1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................ 1

II.  JURISDICTION AND VENUE ......................................................... 5

III.  PARTIES ............................................................................................ 6

IV.  FACTUAL ALLEGATIONS ............................................................. 7

    A.  The Ignition Switch Defects in the Defective Vehicles .......................... 7

    B.  GM Knew of the Ignition Switch Defects for Years, but Concealed
the Defects from Plaintiff and the Class ................................................ 7

    C.  GM Waited until 2014 to Finally Order a Recall of the Defective
Vehicles ............................................................................................... 12

    D.  Old GM Promoted the Defective Vehicles as Safe and Reliable ........... 13

    E.  The Ignition Switch Defects have Harmed Plaintiff and the Class ......... 14

V.  SUCCESSOR LIABILITY ............................................................... 15

VI.  TOLLING OF THE STATUTES OF LIMITATION ...................... 15

VII.  CLASS ALLEGATIONS ................................................................. 16

    A.  The Nationwide Class ........................................................................... 16

    B.  Statewide Consumer Classes ............................................................... 17

VIII.  CAUSES OF ACTION .................................................................... 29

    A.  Nationwide Class Claims ..................................................................... 29

COUNT I  VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION
ACT  (MICH. COMP. L. ANN. § 445.901, *et seq.*) .................................. 29

COUNT II  FRAUDULENT CONCEALMENT .......................................................... 32

    B.  Statewide Consumer Class Claims ....................................................... 34

ALABAMA  VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES
ACT  (ALA. CODE § 8-19-1, *et seq.*) ...................................................... 34

ALASKA  VIOLATION OF THE ALASKA UNFAIR TRADE  PRACTICES
AND CONSUMER PROTECTION ACT  (AUTPCPA, ALASKA STAT.
ANN. § 45.50.471, *et seq.*) ...................................................................... 35

CALIFORNIA  COUNT I  VIOLATIONS OF THE CONSUMER LEGAL
REMEDIES ACT  (CAL. CIV. CODE § 1750, *et seq.*) ........................................ 38

COUNT II  VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION
LAW  (CAL. BUS. & PROF. CODE § 17200, *et seq.*)............................... 43

COUNT III  VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY
ACT FOR BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (CALIFORNIA "LEMON LAW")  (CAL. CIV.
CODE §§ 1791.1 & 1792) ...................................................... 46

COLORADO  VIOLATIONS OF THE COLORADO CONSUMER
PROTECTION ACT  (COLORADO CPA, COL. REV. STAT. § 6-1-101,
*et seq.*)............................................................................................. 48

CONNECTICUT  VIOLATION OF CONNECTICUT UNLAWFUL TRADE
PRACTICES ACT  (CONN. GEN. STAT. § 42-110A, *et seq.*)........................... 51

DELAWARE  COUNT I  VIOLATION OF THE DELAWARE CONSUMER
FRAUD ACT  (6 DEL. CODE § 2513, *et seq.*)............................... 52

COUNT II  VIOLATION OF THE DELAWARE DECEPTIVE TRADE
PRACTICES ACT  (6 DEL. CODE § 2532, *et seq.*)............................... 54

DISTRICT OF COLUMBIA  VIOLATION OF THE CONSUMER
PROTECTION PROCEDURES ACT  (CPPA, D.C. CODE § 28-3901,
*et seq.*)............................................................................................. 55

FLORIDA  VIOLATION OF FLORIDA'S UNFAIR &  DECEPTIVE TRADE
PRACTICES ACT  (FLA. STAT. § 501.201, *et seq.*)............................... 58

GEORGIA  COUNT I  VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE
TRADE PRACTICES ACT  (GA. CODE ANN. § 10-1-370, *et seq.*)................. 59

COUNT II  VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES
ACT  (GA. CODE ANN. § 10-1-390, *et seq.*) ........................................ 60

HAWAII  UNFAIR COMPETITION AND PRACTICES  (HAW. REV. STAT.
§ 480, *et seq.*)....................................................................... 62

IDAHO  VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
(ICPA, IDAHO CIV. CODE § 48-601, *et seq.*) ........................................ 64

ILLINOIS  COUNT I  VIOLATION OF ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT  (815 ILL. COMP. STAT.
505/1, *et seq.*  and 720 ILL. COMP. STAT. 295/1A)............................... 68

COUNT II VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE
PRACTICES ACT  (815 ILL. COMP. STAT. 510/1, *et. seq.* and  720 ILL.
COMP. STAT. 295/1A) ........................................................ 69

INDIANA  VIOLATION OF THE INDIANA DECEPTIVE CONSUMER
SALES ACT  (IND. CODE § 24-5-0.5-3) ............................................................. 70

IOWA  VIOLATIONS OF THE PRIVATE RIGHT OF ACTION  FOR
CONSUMER FRAUDS ACT  (IOWA CODE § 714H.1, *et seq.*) ....................... 72

KANSAS  VIOLATIONS OF THE KANSAS CONSUMER PROTECTION
ACT  (KANSAS CPA, KAN. STAT. ANN. § 50-623, *et seq.*) ............................ 74

KENTUCKY  VIOLATION OF THE KENTUCKY CONSUMER
PROTECTION ACT  (KY. REV. STAT. § 367.110, *et seq.*) .............................. 77

MAINE  VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
(ME. REV. STAT. ANN. TIT. 5 § 205-A, *et seq.*).................................................. 78

MARYLAND  VIOLATIONS OF THE MARYLAND CONSUMER
PROTECTION ACT  (MD. CODE COM. LAW § 13-101, *et seq.*)...................... 80

MASSACHUSETTS  VIOLATION OF THE MASSACHUSETTS
CONSUMER PROTECTION ACT  (Chapter 93A) ........................................ 82

MINNESOTA  COUNT I  VIOLATION OF MINNESOTA UNIFORM
DECEPTIVE TRADE PRACTICES ACT  (MINN. STAT. § 325D.43-48,
*et seq.*)................................................................................................................. 83

COUNT II  VIOLATION OF MINNESOTA PREVENTION  OF CONSUMER
FRAUD ACT   (MINN. STAT. § 325F.68, *et seq.*)................................................. 85

MISSOURI  VIOLATION OF MISSOURI MERCHANDISING PRACTICES
ACT  (MO. REV. STAT. § 407.010, *et seq.*) ........................................................ 86

MONTANA  VIOLATION OF MONTANA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION ACT OF 1973  (MONT. CODE ANN.
§ 30-14-101, *et seq.*).......................................................................................... 87

NEBRASKA  VIOLATION OF THE NEBRASKA CONSUMER
PROTECTION ACT  (NCPA, NEB. REV. STAT. § 59-1601, *et seq.*) ............... 89

NEVADA  VIOLATION OF THE NEVADA DECEPTIVE TRADE
PRACTICES ACT  (NEV. REV. STAT. § 598.0903, *et seq.*) ............................. 91

NEW HAMPSHIRE  VIOLATION OF N.H. CONSUMER PROTECTION
ACT  (N.H. REV. STAT. ANN. § 358-A:1, *et seq.*)............................................. 93

NEW JERSEY  VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
(N.J. STAT. ANN. § 56:8-1, *et seq.*)................................................................... 96

NEW MEXICO  VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE
PRACTICES ACT  (N.M. STAT. ANN. §§ 57-12-1, *et seq.*)............................. 97

NEW YORK  DECEPTIVE ACTS OR PRACTICES  (N.Y. GEN. BUS. LAW
§ 349 AND 350) ................................................................................................. 100

010440-11  680594 V1

NORTH DAKOTA  VIOLATION OF THE NORTH DAKOTA CONSUMER
    FRAUD ACT  (N.D. CENT. CODE § 51-15-02)................................................. 103

OHIO  COUNT I  VIOLATION OF OHIO CONSUMER SALES PRACTICES
    ACT  (OHIO REV. CODE ANN. § 1345.01, et seq.)......................................... 104

COUNT II  VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT
    (OHIO REV. CODE ANN. § 4165.01, et seq.)................................................. 105

OKLAHOMA  VIOLATION OF OKLAHOMA CONSUMER PROTECTION
    ACT  (OCPA, OKLA. STAT. TIT. 15 § 751, et seq.) .......................................... 106

OREGON  VIOLATION OF THE OREGON UNLAWFUL TRADE
    PRACTICES ACT  (OR. REV. STAT. §§ 646.605, et seq.).............................. 109

PENNSYLVANIA  VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
    PRACTICES AND CONSUMER PROTECTION LAW
    (73 P.S. § 201-1, et seq.) ............................................................................ 111

RHODE ISLAND  VIOLATION OF THE RHODE ISLAND UNFAIR TRADE
    PRACTICES  AND CONSUMER PROTECTION ACT
    (R.I. GEN. LAWS § 6-13.1, et seq.)............................................................... 112

SOUTH CAROLINA  UNFAIR TRADE PRACTICES ACT
    (S.C. CODE ANN. § 39-5-10, et seq.) ........................................................... 113

SOUTH DAKOTA  VIOLATION OF THE SOUTH DAKOTA  DECEPTIVE
    TRADE PRACTICES ACT  (S.D. CODIFIED LAWS § 37-24-6) ...................... 116

TENNESSEE  VIOLATION OF TENNESSEE CONSUMER PROTECTION
    ACT  (TENN. CODE ANN. § 47-18-101, et seq.) .............................................. 117

TEXAS  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES
    ACT  (TEX. BUS. & COM. CODE §§ 17.41, et seq.) ......................................... 118

UTAH  VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT
    (UCSPA, UTAH CODE ANN. § 13-11-1, et seq.)............................................. 120

VERMONT  VIOLATION OF VERMONT CONSUMER FRAUD ACT
    (VT. STAT. ANN. TIT. 9, § 2451 et seq.) ........................................................ 122

VIRGINIA  VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT
    (VCPA, VA. CODE ANN. 15 §§ 59.1-196, et seq.)........................................... 124

WASHINGTON  VIOLATION OF THE CONSUMER PROTECTION ACT
    (REV. CODE WASH. ANN. §§ 19.86.010, et seq.) ........................................... 127

WEST VIRGINIA  VIOLATIONS OF THE CONSUMER CREDIT AND
    PROTECTION ACT  (W. VA. CODE § 46A-1-101, et seq.)............................. 128

WISCONSIN  VIOLATIONS OF THE WISCONSIN  DECEPTIVE TRADE
    PRACTICES ACT  (WISC. STAT. § 110.18).................................................... 131

WYOMING  VIOLATION OF THE WYOMING CONSUMER
PROTECTION ACT  (Wyo. Stat. §§ 45-12-105, *et seq.*) ............................ 133

PRAYER FOR RELIEF ........................................................................................ 134

JURY TRIAL DEMAND ...................................................................................... 135

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

010440-11  680594 V1

Plaintiff Sylvia Benton, individually and as class representative on behalf of all similarly situated persons and the general public, brings this action against Defendant General Motors LLC ("Defendant" or "GM") and allege as follows:

## I.    INTRODUCTION

1.    This case involves an egregious and unprecedented failure to disclose and to affirmatively conceal a known defect in GM vehicles.

2.    An auto manufacturer should never make profits more important than safety and should never conceal defects that exist in its vehicles from consumers or the public.  GM's Vehicle Safety Chief, Jeff Boyer has stated that:  "Nothing is more important than the safety of our customers in the vehicles they drive."  Yet GM failed to live up to this commitment.

3.    The first priority of a car manufacturer should be to ensure that its vehicles are safe, and particularly that its vehicles have operable ignition systems, airbags, power-steering, power brakes, and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision.  In addition, a car manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely, and its critical safety systems (such as engine control, braking, and airbag systems) work properly until such time as the driver shuts the vehicle down.  Moreover, a manufacturer that is aware of dangerous design defects that cause its vehicles to shut down during operation, or the vehicles' airbags not to deploy, must promptly disclose and remedy such defects.

4.    Since at least 2003, GM has sold millions of vehicles throughout the United States and worldwide that have a safety defect in which the vehicle's ignition switch can unintentionally move from the "run" position to the "accessory" or "off" position, resulting in a loss of power, vehicle speed control, and braking, as well as a failure of the vehicle's airbags to deploy.

5.    GM began installing these ignition switch systems in models from at least 2003 through at least 2007 and possibly later.  GM promised that these new

010440-11  680594 V1

systems would operate safely and reliably.  This promise turned out to be false in several material respects.  In reality, GM concealed and did not fix a serious quality and safety problem plaguing its vehicles.

6.     Worse yet, the defects in GM's vehicles could have been easily avoided.

7.     From 2004 to the present, GM received reports of crashes and injuries that put GM on notice of the serious safety issues presented by its ignition switch system.

8.     Yet, despite the dangerous nature of this defect and its effects on critical safety systems, GM concealed its existence and failed to remedy the problem.

9.     Despite notice of the defect in its vehicles, GM did not disclose to consumers that its vehicles – which GM for years had advertised as "safe" and "reliable" – were in fact neither safe nor reliable.

10.     GM's CEO, Mary Barra has admitted in a video message that: "Something went wrong with our process in this instance, and terrible things happened."

11.     This case arises from GM's breach of its obligations and duties, including GM's failure to disclose that, as a result of defective ignition switches, at least 1.6 million GM vehicles have the propensity to shut down during normal driving conditions and create an extreme and unreasonable risk of accident, serious bodily harm, and death.

12.     GM's predecessor, General Motors Corporation ("Old GM") (sometimes, together with GM, "the Companies") also violated these rules by designing and marketing vehicles with defective ignition switches, and then by failing to disclose that defect even after it became aware that the ignition switch defect was causing fatal accidents.  In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects.

- 2 -

13.    The defective ignition switches were manufactured by Delphi Automotive PLC ("Delphi").  Once a subsidiary of Old GM, Delphi spun-off from Old GM in 1999, and became an independent publicly held corporation.

14.    Plaintiff alleges, based on information and belief, that Delphi knew its ignition switches were defective.  Nevertheless, Delphi continued to manufacture and sell the defective ignition switch systems, which it knew would be used in the vehicles of Plaintiff and the Class.

15.    Plaintiff brings this action for a Class of all persons in the United States who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt;  2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (hereinafter "Defective Vehicles").

16.    Plaintiff believes that there are other GM vehicles which suffer from the same or substantially similar ignition switch defects as the Defective Vehicles identified above.  Accordingly, Plaintiff will supplement the list of Defective Vehicles to include additional GM vehicles that have defective ignition switches, which result in a loss of vehicle speed control, loss of braking control, and airbag non-deployment.

17.    In the alternative to their nationwide class claims, Plaintiff also brings claims under the laws of the States that have consumer protection statutes on behalf of the respective residents of each of those States who currently own one or more of the Defective Vehicles.

18.    The Defective Vehicles are defective and dangerous for multiple reasons, including the following (collectively, the "ignition switch defects"):

a.    The ignition switches can inadvertently shut off the engine and vehicle electrical system during normal driving conditions;

b.    When the engine and the electrical system shut down, the power steering and power brakes also shut down, creating a serious risk of accident; and

- 3 -

c.   When the electrical system shuts down, the vehicle's airbags are disabled, creating a serious risk of serious bodily harm or death if an accident occurs.

19.   The ignition switch defects make the Defective Vehicles unreasonably dangerous.  Because of the defects, the Defective Vehicles are likely to be involved in accidents, and, if accidents occur, there is an unreasonable and extreme risk of serious bodily harm or death to the vehicle's occupants and others in the vicinity.

20.   GM admits to at least 12 deaths as a result of the ignition switch defects, but the actual number is believed to be much higher.

21.   The ignition switch defects present a significant and unreasonable safety risk exposing Defective Vehicle owners, their passengers and others in the vicinity to a risk of serious injury or death.

22.   For many years, GM has known of the ignition switch defects that exist in millions of Defective Vehicles sold in the United States.  But, to protect its profits and maximize sales, GM concealed the defects and their tragic consequences and allowed unsuspecting vehicle owners to continue driving highly dangerous vehicles.

23.   Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act"),[1] and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defect.[2]  If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers, and dealers of the defect and must remedy the defect.[3]

24.   In addition to the TREAD Act and other laws, GM violated the Michigan Consumer Protection Act (the "MCPA") and fraudulently concealed the deadly ignition switch defects from consumers, owners, and lessees of the Defective Vehicles.  GM also violated the TREAD Act by failing to timely inform NHTSA of

---

[1] 49 U.S.C. §§ 30101-30170.

[2] 49 U.S.C. § 30118(c)(1) & (2).

[3] 49 U.S.C. § 30118(b)(2)(A) & (B).

- 4 -

010440-11  680594 V1

the ignition switch defects and allowed cars to remain on the road with these defects. These same acts and omissions also violated various State consumer protection laws as detailed below.

25.    Plaintiff and the Class have been damaged by GM's misrepresentations, concealment and non-disclosure of the ignition switch defects in the Defective Vehicles, as they are now holding highly dangerous vehicles whose value has greatly diminished because of GM's failure to timely disclose the serious defect.

26.    Plaintiff and the Class were also damaged by the acts and omissions of Old GM for which GM is liable through successor liability because the Defective Vehicles they purchased are worth less than they would have been without the ignition switch defects.

27.    Plaintiff and the Class either paid more for the Defective Vehicles than they would have had they known of the ignition switch defects, or they would not have purchased the Defective Vehicles at all had they known of the defects.

## II.    JURISDICTION AND VENUE

28.    This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiff and other Class members are citizens of a different state than Defendant.

29.    This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction.  This Court has personal jurisdiction over GM because GM conducts substantial business in this District, and some of the actions giving rise to the complaint took place in this District.

30.    Venue is proper in this District under 28 U.S.C. § 1391 because GM, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.  Additionally, GM transacts business within the District, and some of the events establishing the claims arose in this District.

- 5 -

1

## III.    PARTIES

2      31.    Plaintiff and Class Representative Sylvia Benton is a resident and

3    citizen of Barstow, California.  Plaintiff owns a 2005 Chevy Cobalt.  Plaintiff chose

4    the Cobalt, in part, because she wanted a safely designed and manufactured vehicle.

5    Plaintiff saw advertisements for Old GM vehicles before she purchased the Cobalt,

6    and, although she does not recall the specifics of the advertisements, she does recall

7    that safety and quality were consistent themes across the advertisements she saw.

8    These representations about safety and quality influenced Plaintiff's decision to

9    purchase the Cobalt.  Plaintiff did not learn of the ignition switch defects until about

10   March 2014.  Had Old GM disclosed the ignition switch defects, Plaintiff would not

11   have purchased her Cobalt, or would have paid less than she did, and would not have

12   retained the vehicle.

13     32.    Defendant General Motors LLC ("GM") is a foreign limited liability

14   company formed under the laws of Delaware with its principal place of business

15   located at 300 Renaissance Center, Detroit, Michigan.  GM was incorporated in 2009

16   and on July 10, 2009, acquired substantially all assets and assumed certain liabilities

17   of General Motors Corporation ("Old GM") through a Section 363 sale under

18   Chapter 11 of the U.S. Bankruptcy Code.  Collectively, Old GM and GM are

19   sometimes referred to as "the Companies."

20     33.    Among the liabilities and obligations expressly retained by GM after the

21   bankruptcy are the following:

22           From and after the Closing, Purchaser [GM] shall comply
             with the certification, reporting and recall requirements of
23           the National Traffic and Motor Vehicle Act, the
             Transportation Recall Enhancement, Accountability and
24           Documentation Act, the Clean Air Act, the California
             Health and Safety Code, and similar laws, in each case, to
25           the extent applicable in respect of vehicles and vehicle
             parts manufactured or distributed by [Old GM].
26

27     34.    GM also expressly assumed:

28           all Liabilities arising under express written warranties of
             [Old GM] that are specifically identified as warranties and

- 6 -

> delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by [Old GM] or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws.

35.     Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint.

## IV.   FACTUAL ALLEGATIONS

### A.   The Ignition Switch Defects in the Defective Vehicles

36.     Given the importance that a vehicle and its electrical operating systems remain operational during ordinary driving conditions, it is imperative that a vehicle manufacturer ensure that its vehicles remain operational from the time the driver starts the vehicle until the driver intentionally shuts down the vehicle.  With respect to the Defective Vehicles, GM has failed to do so.

37.     In the Defective Vehicles, the ignition switch defects can cause the vehicle's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.

38.     The Defective Vehicles are, therefore, unreasonably prone to be involved in accidents, and those accidents are unreasonably likely to result in serious bodily harm or death to the drivers and passengers of the Defective Vehicles, as well as to other vehicle operators and pedestrians.

### B.   GM Knew of the Ignition Switch Defects for Years, but Concealed the Defects from Plaintiff and the Class

39.     Alarmingly, both Old GM and GM knew of the deadly ignition switch defects and their dangerous consequences for many years, but concealed their knowledge from Defective Vehicle owners.

- 7 -

40.    For example, on July 29, 2005, Amber Marie Rose, age 16, died after her 2005 Chevrolet Cobalt crashed and the airbag failed to deploy.  Ms. Rose's death is the first known of the hundreds of deaths and injuries attributable to the ignition switch defects.  Ms. Rose's death was an early warning in what would become a decade-long failure by Old GM and GM to address the ignition switch problem.

41.    Another incident involved 16-year old Megan Phillips.  Ms. Phillips was driving a 2005 Chevrolet Cobalt that crashed in Wisconsin in 2006, killing two of her teenage friends when the car left the road and hit a clump of trees.  NHTSA investigators found that the key had moved from the "run" to the "accessory" position, turning off the engine and disabling the vehicle's airbags before impact.  According to Ms. Phillips, the families of her deceased friends blamed her and refused to speak with her; only after the recall was finally announced did they begin communicating.  As she stated, "I don't understand why [GM] would wait 10 years to say something.  And I want to understand it but I never will."[4]

42.    Rather than publicly admitting the dangerous safety defects in its vehicles, the Companies attempted to attribute these and other incidents to "driver error."  Every year from 2005 to 2012, first Old GM and then GM received reports of deaths in Cobalts involving steering and/or airbag failures, including:

- 2005:  26 Cobalt Death and Injury Incidents, including 1 death citing Airbag as component involved.

- 2006:  69 Cobalt Death and Injury Incidents, including 2 deaths citing Airbag as component involved and 4 deaths citing Unknown component.

- 2007:  87 Cobalt Death and Injury Incidents, including 3 deaths citing Airbag as component involved.

- 2008:  106 Cobalt Death and Injury Incidents, including 1 death citing Airbag as component involved and 2 deaths citing Unknown component.

_____

[4] "*Owners of Recalled GM Cars Feel Angry, Vindicated*," REUTERS (Mar. 17, 2014).

010440-11  680594 V1

- 2009: 133 Cobalt Death and Injury Incidents, including 1 death citing Airbag as component involved, 1 death citing Service Brake as component involved, 1 death citing Steering as component involved, and 2 deaths citing Unknown component.

- 2010: 400 Cobalt Death and Injury Incidents, including 2 deaths citing Airbag as component involved, 12 deaths citing steering as component involved, and 1 death citing Unknown component.

- 2011: 187 Cobalt Death and Injury Incidents, including 2 deaths citing Airbag as component involved, 2 deaths citing Steering as component involved, and 1 Unknown component.

- 2012: 157 Cobalt Death and Injury Incidents, including 5 deaths citing Airbag as component involved, and 4 deaths citing Steering as component involved.

43.    GM now admits that Old GM learned of the ignition switch defects as early as 200l.  During the pre-production development of the Saturn Ion, Old GM engineers learned that the ignition could inadvertently move from the "Run" position to the "Accessory" or "Off" position.  Old GM claimed that a switch design change "had resolved the problem."[5]

44.    In 2003, an internal report documented an instance in which the service technician observed a stall while driving.  The service technician noted that the weight of several keys on the key ring had worn out the ignition switch.  The switch was replaced and the matter was closed.[6]

45.    According to GM's latest chronology submitted to NHTSA pursuant to 49 C.F.R. § 573.6, Old GM engineers encountered the problem again in 2004 during test drives of the Chevy Cobalt, before it went to market.

46.    Old GM opened an engineering inquiry, known as a "Problem Resolution Tracking System inquiry" ("PRTS"), to investigate the issue.  According

---

[5] "G.M. Reveals It Was Told of Ignition Defect in '01," D. Ivory, NEW YORK TIMES (Mar. 12, 2014).

[6] Id.

- 9 -

1   to the chronology provided to NHTSA by GM, engineers pinpointed the problem and

2   were "able to replicate this phenomenon during test drives."

3       47.    According to GM, the PRTS engineers "believed that low key cylinder

4   torque effort was an issue and considered a number of potential solutions."  But after

5   considering cost and the amount of time it would take to develop a fix, Old GM did

6   nothing.

7       48.    As soon at the 2005 Cobalt hit the market, Old GM almost immediately

8   started getting complaints about sudden loss of power incidents, "including instances

9   in which the key moved out of the 'run' position when a driver inadvertently

10  contacted the key or steering column."[7]  Old GM opened additional PRTS inquires.

11      49.    In another PRTS opened in May 2005, Old GM engineers again

12  assessed the problem and proposed that GM re-design the key head from a "slotted"

13  to a "hole" configuration.  After initially approving the proposed fix, Old GM

14  reversed course and again declined to implement a fix.[8]

15      50.    Instead, in October 2005, Old GM simply issued a Technical Service

16  Bulletin ("TSB") advising service technicians and GM dealers that the inadvertent

17  turning of the key cylinder was causing the loss of the car's electrical system.

18      51.    Rather than disclosing the true nature of the defects and correcting

19  them, under the TSB, Old GM gave customers who brought in their vehicle

20  complaining about the issue "an insert for the key ring so that it goes from a 'slot'

21  design to a hole design" to prevent the key ring from moving up and down in the

22  slot.  "[T]he previous key ring" was "replaced with a smaller" one; this change was

23  supposedly able to keep the keys from hanging as low as they had in the past.[9]

24

25

26      [7] March 11, 2014 Chronology Re: Recall of 2006 Chevron HHR and Pontiac
    Solstice, 2003-2007 Saturn Ion, and 2007 Saturn Sky Vehicles, at 1.

27      [8] Id.

28      [9] Id. at 1-2.

- 10 -

1    According to GM's records, Old GM dealers provided key inserts to 474 customers

2    who brought their vehicles into dealers for service.[10]

3        52.    Yet there was no recall.  And, not surprisingly, Old GM continued to get

4    complaints.

5        53.    In 2006, Old GM approved a design change for the Cobalt's ignition

6    switch supplied by Delphi.  The new design included "the use of a new detent

7    plunger and spring that increased torque force in the ignition switch."  But the new

8    design was not produced until the 2007 model year.[11]

9        54.    In 2007, NHTSA investigators met with Old GM to discuss its airbags,

10    and informed Old GM of the July 2005 frontal and fatal crash involving Amber

11    Marie Rose.

12        55.    As alleged above, the airbags in Ms. Rose's 2005 Cobalt did not deploy.

13    Data retrieved from her vehicle's diagnostic system indicated that the ignition was in

14    the "accessory" position.  Old GM investigated and tracked similar incidents.

15        56.    By the end of 2007, by GM's own admission, Old GM knew of 10

16    frontal collisions in which the airbag did not deploy.[12]  Plaintiff believes that Old GM

17    actually knew of many other similar incidents involving the ignition switch defects.

18        57.    For the next six years, GM continued to get complaints and continued to

19    investigate frontal crashes in which the airbags did not deploy.

20        58.    However, according to GM, it was not until 2011 and 2012 that GM's

21    examinations of switches from vehicles that had experienced crashes revealed

22    significant design differences in the torque performance of ignition switches from the

23    2005 Cobalts and those from the 2010 model year, the last year of the Cobalt's

24    production.

25        59.    GM responded by blaming the supplier for the switch design.[13]

26    _____

27      [10] *Id*. at 3.
  [11] *Id*. at 2.

28      [12] Feb. 24, 2014 Attachment B-573.6(c)(6) at 2.

- 11 -

60.    In 2014, after numerous assessments and facing increasing scrutiny of its conduct and the defects in its vehicles, GM finally announced a recall for the Cobalt and G5 vehicles.[14]

**C.    GM Waited until 2014 to Finally Order a Recall of the Defective Vehicles**

61.    After analysis by GM's Field Performance Review Committee and the Executive Field Action Decision Committee ("EFADC"), the EFADC finally ordered a recall of *some* of the Defective Vehicles on January 31, 2014.

62.    Initially, GM's EFADC ordered a recall of only the Chevrolet Cobalt and Pontiac G5 for model years 2005-2007.

63.    After additional analysis, the EFADC expanded the recall on February 24, 2014, to include the Chevrolet HHR and Pontiac Solstice for model years 2006 and 2007, the Saturn Ion for model years 2003-2007, and the Saturn Sky for model year 2007.

64.    GM provided dealers with notice of the recall on February 26, 2014, and March 4, 2014, and mailed letters to current owners on March 10 and March 11, 2014.

65.    According to GM, "the dealers are to replace the ignition switch,"[15] presumably with one with sufficient torque to prevent the inadvertent shut down of the ignition, power steering, power brakes, and airbags.

66.    In a video message addressed to GM employees on March 17, 2014, C.E.O. Mary Barra admitted that the Company had made mistakes and needed to change its processes.

67.    According to Ms. Barra, "Something went terribly wrong in our processes in this instance, and terrible things happened."  Barra went on to promise, "[w]e will be better because of this tragic situation if we seize this opportunity."[16]

---

[13] *Id*. at 3-4.

[14] *Id*. at 4-5.

[15] *Id*. at 6.

- 12 -

68.    GM now faces an investigation by NHTSA, hearings in both the U.S. House and Senate, and a probe by the Department of Justice.

69.    While GM has now appointed a new Vehicle Safety Chief, on information and belief at least 1.6 million Defective Vehicles remain on the road to this day; and, on information and belief, other vehicles not yet acknowledged by GM also have the deadly ignition switch defects.

**D.    Old GM Promoted the Defective Vehicles as Safe and Reliable**

70.    On information and belief, in marketing and advertising materials, Old GM consistently promoted the Defective Vehicles as safe and reliable.

71.    For example, one Cobalt ad promised that "Side curtain airbags coupled with OnStar makes every journey the safest possible to assure that you and your occupants will stay safe at all times."

72.    An ad for the 2006 Solstice promises that the vehicle "[b]rings power and defines performance."

73.    A 2003 television spot for the Saturn vehicle closed with the tagline "Specifically engineered for whatever is next."  Another 2003 spot closed with the tagline "Saturn.  People first."

74.    A 2001 print ad touting the launch of the Saturn focused on safety:

> Need is where you begin.  In cars, it's about things like reliability, durability and, of course, safety.  That's where we started when developing our new line of cars.  And it wasn't until we were satisfied that we added things….

75.    Old GM made these representations to boost vehicle sales and maximize profits while knowing that the ignition switches in the Defective Vehicles were defective.

76.    Throughout the relevant period, Old GM possessed vastly superior knowledge and information to that of consumers – if not exclusive information –

---

[16] *"Something Went "Very Wrong" at G.M., Chief Says."* N.Y. TIMES (Mar. 18, 2014).

- 13 -

about the design and function of the ignition switches in the Defective Vehicles and the existence of the defects in those vehicles.

77. Old GM never informed consumers about the ignition switch defects.

**E.    The Ignition Switch Defects have Harmed Plaintiff and the Class**

78. The ignition switch defects have caused damage to Plaintiff and the Class.

79. A vehicle purchased, leased or retained with a serious safety defect is worth less than the equivalent vehicle leased, purchased or retained without the defect.

80. A vehicle purchased, leased or retained under the reasonable assumption that it is safe is worth more than a vehicle known to be subject to the unreasonable risk of catastrophic accident because of the ignition switch defects.

81. Purchasers and lessees paid more for the Defective Vehicles, through a higher purchase price or higher lease payments, than they would have had the ignition switch defects been disclosed. Plaintiff and the Class overpaid for their Defective Vehicles. Because of the concealed ignition switch defects. Plaintiff and the Class did not receive the benefit of the bargain.

82. Class members who purchased used Defective Vehicles after the date GM came into existence—July 10, 2009—overpaid for their Defective Vehicles as a direct result of GM's ongoing violations of the TREAD Act and state consumer protection laws by failing to disclose the existence of the ignition switch defects.

83. Plaintiff and the Class are stuck with unsafe vehicles that are now worth less than they would have been but for the Companies' failure to disclose the ignition switch defects.

84. GM admits to at least 12 deaths resulting from accidents linked to the ignition switch defects in the Defective Vehicles. However, Plaintiff believes that

- 14 -

the actual number is much higher, and that there may have been hundreds of deaths and injuries attributable to the ignitions switch defects.

85.    If Old GM or GM had timely disclosed the ignition switch defects as required by the MCPA, the TREAD Act, and the State consumer protection laws set forth below, all Class members' vehicles would now be worth more.

## V.    SUCCESSOR LIABILITY

86.    As discussed above, GM expressly assumed certain obligations under, *inter alia*, the TREAD Act, and is liable for its non-disclosure and concealment of the ignition switch defects from the date of its formation on July 10, 2009.

87.    GM also expressly assumed liability for Lemon Law claims in the Master Sale and Purchase Agreement of June 26, 2009, and this assumption of liability includes the Class' claims under the Song-Beverly Act, which is California's Lemon Law statute.

88.    GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM, for the following reasons:

- GM admits that it knew of the ignition system defects from the very date of its formation;

- GM has continued in the business of designing, manufacturing, and marketing vehicles, including at least some of the same vehicles as Old GM;

- GM retained the bulk of the employees of Old GM;

- GM acquired owned and leased real property of Old GM, including all machinery, equipment, tools, information technology, product inventory, and intellectual property;

- GM acquired the contracts, books, and records of Old GM; and

- GM acquired all goodwill and other intangible personal property of Old GM.

## VI.    TOLLING OF THE STATUTES OF LIMITATION

89.    All applicable statutes of limitation have been tolled by GM's knowing and active fraudulent concealment and denial of the facts alleged herein. Plaintiff

- 15 -

1    and Class members did not discover, and did not know of facts that would have

2    caused a reasonable person to suspect, that Old GM and GM did not report

3    information within their knowledge to federal authorities (NHTSA) or consumers,

4    nor would a reasonable and diligent investigation have disclosed that Old GM and

5    GM had information in their possession about the existence and dangerousness of the

6    defect and opted to conceal that information until shortly before this class action was

7    filed.

8        90.    Indeed, Old GM instructed its service shops to provide Defective

9    Vehicle owners with a new key ring if they complained about unintended shut down,

10   rather than admit what Old GM knew – that the ignition switches were dangerously

11   defective and warranted replacement with a properly designed and built ignition

12   system.

13       91.    Old GM and GM were, and GM remains, under a continuing duty to

14   disclose to NHTSA, Plaintiff, and the Class the true character, quality, and nature of

15   the Defective Vehicles; that this defect is based on dangerous, inadequate, and

16   defective design and/or substandard materials; and that it will require repair, poses a

17   severe safety concern, and diminishes the value of the Defective Vehicles.

18       92.    Because of the active concealment by Old GM and GM, any and all

19   limitations periods otherwise applicable to Plaintiff's claims have been tolled.

20                        **VII.   CLASS ALLEGATIONS**

21   **A.    The Nationwide Class**

22       93.    Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

23   Procedure, Plaintiff brings this action on behalf of herself and a Class initially

24   defined as follows:

25           During the fullest period allowed by law, all persons in the
             United States who currently own or lease one or more of
26           the following GM vehicles:  2003-07 Saturn Ion; 2005-07
             Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet
27           HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the
             "Defective Vehicles").  This list will be supplemented to
28           include other GM vehicles that have the defective ignition

1    switches, which inadvertently turn off the engine and
2    vehicle electrical systems during ordinary driving
     conditions.

3    **B.    Statewide Consumer Classes**

4        94.    In the alternative, in the event the Court declines to certify a nationwide

5    Class, Plaintiff alleges a separate Class for the District of Columbia and each State

6    that has its own consumer protection laws.  These Classes are defined as follows for

7    the claims asserted under a particular jurisdiction's law:

8        During the fullest period allowed by law, all persons or
9        entities in the **State of Alabama** who currently own or
         lease one or more of the following GM vehicles:  2003-07
10       Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5;
         2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and
11       2007 Saturn Sky (the "Defective Vehicles").  This list will
         be supplemented to include other GM vehicles that have
12       the defective ignition switches, which inadvertently turn
         off the engine and vehicle electrical systems during
13       ordinary driving conditions.

14       During the fullest period allowed by law, all persons or
         entities in the **State of Alaska** who currently own or lease
15       one or more of the following GM vehicles:  2003-07 Saturn
         Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07
16       Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn
         Sky (the "Defective Vehicles").  This list will be
17       supplemented to include other GM vehicles that have the
         defective ignition switches, which inadvertently turn off
18       the engine and vehicle electrical systems during ordinary
         driving conditions.

19       During the fullest period allowed by law, all persons or
         entities in the **State of California** who currently own or
20       lease one or more of the following GM vehicles:  2003-07
         Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5;
21       2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and
         2007 Saturn Sky (the "Defective Vehicles").  This list will
22       be supplemented to include other GM vehicles that have
         the defective ignition switches, which inadvertently turn
23       off the engine and vehicle electrical systems during
         ordinary driving conditions.

24       During the fullest period allowed by law, all persons or
25       entities in the **State of Colorado** who currently own or
         lease one or more of the following GM vehicles:  2003-07
26       Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5;
         2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and
27       2007 Saturn Sky (the "Defective Vehicles").  This list will
         be supplemented to include other GM vehicles that have
28       the defective ignition switches, which inadvertently turn

- 17 -

1    off the engine and vehicle electrical systems during
ordinary driving conditions.

2

3    During the fullest period allowed by law, all persons or
entities in the **State of Connecticut** who currently own or
lease one or more of the following GM vehicles: 2003-07

4    Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5;
2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and

5    2007 Saturn Sky (the "Defective Vehicles"). This list will
be supplemented to include other GM vehicles that have

6    the defective ignition switches, which inadvertently turn
off the engine and vehicle electrical systems during

7    ordinary driving conditions.

8    During the fullest period allowed by law, all persons or
entities in the **State of Delaware** who currently own or

9    lease one or more of the following GM vehicles: 2003-07
Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5;

10   2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and
2007 Saturn Sky (the "Defective Vehicles"). This list will

11   be supplemented to include other GM vehicles that have
the defective ignition switches, which inadvertently turn

12   off the engine and vehicle electrical systems during
ordinary driving conditions.

13

14   During the fullest period allowed by law, all persons or
entities in the **District of Columbia** who currently own or
lease one or more of the following GM vehicles: 2003-07

15   Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5;
2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and

16   2007 Saturn Sky (the "Defective Vehicles"). This list will
be supplemented to include other GM vehicles that have

17   the defective ignition switches, which inadvertently turn
off the engine and vehicle electrical systems during

18   ordinary driving conditions.

19   During the fullest period allowed by law, all persons or
entities in the **State of Florida** who currently own or lease

20   one or more of the following GM vehicles: 2003-07 Saturn
Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07

21   Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn
Sky (the "Defective Vehicles"). This list will be

22   supplemented to include other GM vehicles that have the
defective ignition switches, which inadvertently turn off

23   the engine and vehicle electrical systems during ordinary
driving conditions.

24

25   During the fullest period allowed by law, all persons or
entities in the **State of Georgia** who currently own or lease

26   one or more of the following GM vehicles: 2003-07 Saturn
Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07

27   Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn
Sky (the "Defective Vehicles"). This list will be

28   supplemented to include other GM vehicles that have the
defective ignition switches, which inadvertently turn off

- 18 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Hawaii** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Idaho** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Illinois** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Indiana** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Iowa** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off

- 19 -

1

the engine and vehicle electrical systems during ordinary driving conditions.

2

3

During the fullest period allowed by law, all persons or entities in the **State of Kansas** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

4

5

6

7

8

During the fullest period allowed by law, all persons or entities in the **State of Kentucky** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

9

10

11

12

13

During the fullest period allowed by law, all persons or entities in the **State of Maine** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

14

15

16

17

18

19

During the fullest period allowed by law, all persons or entities in the **State of Maryland** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

20

21

22

23

24

During the fullest period allowed by law, all persons or entities in the **State of Massachusetts** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently

25

26

27

28

- 20 -

turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Michigan** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Minnesota** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Mississippi** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Missouri** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Montana** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn

- 21 -

010440-11  680594 V1

1

off the engine and vehicle electrical systems during ordinary driving conditions.

2

3

During the fullest period allowed by law, all persons or entities in the **State of Nebraska** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

4

5

6

7

8

During the fullest period allowed by law, all persons or entities in the **State of Nevada** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

9

10

11

12

13

14

During the fullest period allowed by law, all persons or entities in the **State of New Hampshire** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

15

16

17

18

19

During the fullest period allowed by law, all persons or entities in the **State of New Jersey** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

20

21

22

23

24

During the fullest period allowed by law, all persons or entities in the **State of New Mexico** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn

25

26

27

28

010440-11  680594 V1

off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of New York** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of North Carolina** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of North Dakota** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Ohio** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Oklahoma** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn

- 23 -

1

off the engine and vehicle electrical systems during ordinary driving conditions.

2

3

During the fullest period allowed by law, all persons or entities in the **State of Oregon** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

4

5

6

7

8

During the fullest period allowed by law, all persons or entities in the **State of Pennsylvania** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

9

10

11

12

13

During the fullest period allowed by law, all persons or entities in the **State of Rhode Island** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

14

15

16

17

18

19

During the fullest period allowed by law, all persons or entities in the **State of South Carolina** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

20

21

22

23

24

During the fullest period allowed by law, all persons or entities in the **State of South Dakota** who currently own or lease one or more of the following GM vehicles:  2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn

25

26

27

28

- 24 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Tennessee** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Texas** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Utah** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Vermont** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Virginia** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off

the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Washington** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Virginia** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of West Virginia** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Wisconsin** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

During the fullest period allowed by law, all persons or entities in the **State of Wyoming** who currently own or lease one or more of the following GM vehicles: 2003-07 Saturn Ion; 2005-07 Chevrolet Cobalt; 2007 Pontiac G5; 2006-07 Chevrolet HHR; 2006-07 Pontiac Solstice; and 2007 Saturn Sky (the "Defective Vehicles"). This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn

- 26 -

off the engine and vehicle electrical systems during
ordinary driving conditions.

95.    Excluded from each Class are Old GM and GM, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons.  Also excluded are any individuals claiming damages from personal injuries arising from an incident involving a Defective Vehicle.

96.    The Defective Vehicles include at least the following models: Chevrolet Cobalts (2005-07 model years); Pontiac G5 (2006-07 model years); Saturn Ions (2003-07 model years); Chevrolet Hurst (2006-07 model years); Pontiac Solstice (2006-07 model years); and Saturn Sky (2007 model year).

97.    Plaintiff is informed and believes that Old GM manufactured and sold to consumers at least 1.6 million of the Defective Vehicles nationwide and at least - thousands of Defective Vehicles in each State where an alternative statewide consumer Class claim is pleaded.  Individual joinder of all Class or members is impracticable.

98.    The Class expressly disclaims any recovery for physical injury resulting from the ignition switch defects.  But the increased risk of injury from the ignition switch defects serves as an independent justification for the relief sought by Plaintiff and the Class.

99.    The Class can be readily identified using registration records, sales records, production records, and other information kept by GM or third parties in the usual course of business and within their control.

100.    Questions of law and fact are common to the Class and predominate over questions affecting only individual members, including the following:

010440-11  680594 V1

a.    Whether the Defective Vehicles suffer from ignition switch defects;

b.    Whether Old GM and GM concealed the defects;

c.    Whether Old GM and GM misrepresented that the Defective Vehicles were safe;

d.    Whether Old GM and GM engaged in fraudulent concealment;

e.    Whether Old GM and GM engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective ignition switches;

f.    Whether the alleged conduct by GM violated laws as Plaintiff alleges;

g.    Whether Old GM's and GM's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class;

h.    Whether Plaintiff and the members of the Class are entitled to equitable and/or injunctive relief;

i.    Whether, and to what extent, GM has successor liability for the acts and omissions of Old GM; and

j.    Whether any or all applicable limitations periods are tolled by acts of fraudulent concealment.

101.   Plaintiff's claims are typical of the claims of the Class members, and arise from the same course of conduct by GM and Old GM. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

102.   Plaintiff will fairly and adequately represent and protect the interests of all absent Class members. Plaintiff is represented by counsel competent and experienced in product liability, consumer protection, and class action litigation.

103.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class

- 28 -

members is impracticable.  Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

104.   The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of conduct for GM.  The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

105.   Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Plaintiff anticipates providing appropriate notice to be approved by the Court after discovery into the size and nature of the Class.

## VIII.  CAUSES OF ACTION

A.    **Nationwide Class Claims**

### COUNT I

### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT

### (MICH. COMP. L. ANN. § 445.901, *et seq.*)

106.   Plaintiff and the Class reallege and incorporate by reference each paragraph as though fully set forth at length herein.

107.   This claim is brought on behalf of the nationwide Class, or, alternatively in the event the Court declines to certify a nationwide Class, on behalf of a Class of Michigan residents who own one or more of the Defective Vehicles.

108.   Old GM, GM, and Plaintiff are each "persons" under MICH. COMP. L. ANN. § 445.902(d).

- 29 -

109.    The sale of the Defective Vehicles to Plaintiff and the Class occurred within "trade and commerce" within the meaning of MICH. COMP. L. ANN. § 445.902(d), and both GM and Old GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

110.    The MCPA makes unlawful any "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce," as more specifically defined in the MCPA.  MICH. COMP. L. ANN. § 445.903(1).  GM has engaged in unfair, unconscionable, and deceptive methods, acts and practices in violation of the MCPA, and also has successor liability for the unfair, unconscionable, and deceptive methods, acts and practices of Old GM as set forth above.

111.    Both Old GM and GM violated the MCPA by "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."  MICH. COMP. L. ANN. § 445.903(s).

112.    As alleged above, both Companies knew of the ignition switch defect, while Plaintiff and the Class were deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

113.    Old GM also violated the MCPA by "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."  MICH. COMP. L. ANN. § 405.903(bb).  For example, Old GM represented that the Defective Vehicles were safe such that reasonable people believed the represented or suggested state of affairs to be true; namely, that the Defective Vehicles were safe.

- 30 -

010440-11  680594 V1

114.   Old GM also violated the MCPA by "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. L. ANN. § 405.903(cc). Old GM represented that the Defective Vehicles were safe, which made it even more incumbent on Old GM to reveal the material fact of the ignition switch defects.

115.   Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices. The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff and the Class from making fully informed decisions about whether to lease, purchase, and/or retain the Defective Vehicles.

116.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

117.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

118.   Plaintiff and the Class have suffered an injury, including the loss of money or property, as a result of GM's unfair, unlawful, and/or deceptive practices. Old GM and GM failed to inform NHTSA, and therefore failed to inform consumers, that the Defective Vehicles had a defective ignition switch that could lead to injury and death. Had Plaintiff and the Class known this, they would either not have purchased their vehicles at all or would have paid less for them, and would not have

- 31 -

retained their Defective Vehicles.  Plaintiff and the Class have therefore suffered a "loss" because of the violations of the MCPA complained of herein.

119.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

120.   Plaintiff requests that this Court:  enjoin GM from continuing its unfair, unlawful, and/or deceptive practices; provide to Plaintiff and each Class member either their actual damages as the result of GM's unfair, unlawful, and deceptive trade practices, or $250 per Class member, whichever is higher; award reasonable attorneys' fees; and provide other appropriate relief under MICH. COMP. L. ANN. § 445.911.

121.   Plaintiff acknowledges that, on its face, the MCPA purports to (i) deprive non-residents of bringing class (but not individual) actions under the MCPA; and (ii) allows individuals (but not class members) the ability to recover a penalty of $250 per person if that amount is greater than their actual damages.  After the United States Supreme Court's decision in *Shady Grove Orthopedic Ass., P.A. v. Allstate Ins. Co.*, 589 U.S. 393 (2010), however, any such prohibitions imposed in class actions (but not in individual actions) are trumped and superseded by Fed. R. Civ. P. 23, which imposes no such restrictions.

## COUNT II
## FRAUDULENT CONCEALMENT

122.   Plaintiff and the Class incorporate by reference each preceding and following paragraph as though fully set forth at length herein.

123.   This claim is brought on behalf of the nationwide Class.

- 32 -

124.   GM concealed and suppressed material facts concerning the ignition switch defects, and GM also has successor liability for the acts of concealment and oppression of Old GM as set forth above.

125.   The Companies had a duty to disclose the ignition switch defects because they were known and/or accessible only to the Companies who had superior knowledge and access to the facts, and the Companies knew they were not known to or reasonably discoverable by Plaintiff and the Class.  These omitted and concealed facts were material because they directly impact the safety of the Defective Vehicles. Whether an ignition switch was designed and manufactured with appropriate safeguards is a material safety concern.

126.   The Companies actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and avoid a costly recall, and they did so at the expense of Plaintiff and the Class.

127.   On information and belief, GM has still not made full and adequate disclosure and continues to defraud Plaintiff and the Class and conceal material information regarding the defects that exist in the Defective Vehicles and other GM vehicles.

128.   Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiff's and the Class's actions were justified.  The Companies were in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

129.   Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they purchased and retained vehicles that are now diminished in value from what they would have been had the Companies timely disclosed the ignition switch defects.

130.   The Companies' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights

- 33 -

and well-being to enrich the Companies.  The Companies' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**B.    Statewide Consumer Class Claims**

**ALABAMA**

**VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT**

**(ALA. CODE § 8-19-1, *et seq.*)**

131.    In the event the Court declines to certify a nationwide Class, this claim is brought only on behalf of Class members residing in Alabama.

132.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

133.    The conduct of Old GM and GM, as set forth herein, constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with ignition switch defects which Old GM and GM failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of their vehicles.

134.    The Companies' actions, as set forth above, occurred in the conduct of trade or commerce.

135.    The Companies' actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing, leasing and/or retaining Defective Vehicles as a result of the Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

136.    Plaintiff and the Class were injured as a result of the Companies' conduct.  Plaintiff and the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

- 34 -

137.   GM's conduct, and the conduct of Old GM for which GM has successor liability, proximately caused the injuries to Plaintiff and the Class.

138.   GM is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

139.   Pursuant to ALA. CODE § 8-19-8, Plaintiff will serve the Alabama Attorney General with a copy of this complaint as Plaintiff seeks injunctive relief.

## ALASKA

### VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

### (AUTPCPA, ALASKA STAT. ANN. § 45.50.471, *et seq.*)

140.   In the event the Court declines to certify a nationwide Class, this claim is brought only on behalf of Class members residing in Alaska.

141.   Plaintiff reallege and incorporates by reference all paragraphs as though fully set forth herein.

142.   The Alaska Unfair Trade Practices And Consumer Protection Act ("AUTPCPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including:  "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in

- 35 -

010440-11  680594 V1

connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." ALASKA STAT. ANN. § 45.50.471. GM is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the AUTPCPA, and also has successor liability for the violations of Old GM.

143.   In the course of their business, both Old GM and GM willfully failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles as described herein.  Old GM also engaged in unlawful trade practices by representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Defective Vehicles are of a particular standard and quality when they are not; advertising the Defective Vehicles with the intent not to sell them as advertised; and omitting material facts in describing the Defective Vehicles.

144.   As alleged above, both Companies knew of the ignition switch defects, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

145.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

146.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

147.   Old GM's and GM's misrepresentations and omissions described herein have the capacity or tendency to deceive.  Because of these unlawful trade practices, including failure to disclose material information, Class members suffered ascertainable loss.  Class members overpaid for their vehicles and did not receive the

- 36 -

benefit of their bargain.  The value of their vehicles has diminished now that the safety issues have come to light, and Class members own vehicles that are not safe.

148.   Old GM's and GM's acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, were unconscionable because they offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff and the Class from making fully informed decisions about whether to lease, purchase and/or retain the Defective Vehicles.

149.   Class members also seek punitive damages against GM because both Old GM's and GM's conduct was outrageous, malicious, with bad motive, or evidenced reckless indifference to the interest of the Class members.  Old GM and GM misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly promised Class members were safe.  Old GM's and GM's outrageous, malicious, reckless, and bad-intentioned conduct warrants punitive damages.

150.   Because they have suffered ascertainable loss, Class members are entitled to recover three times their actual damages or $500, whichever is greater, punitive damages, and reasonable attorneys' fees.  ALASKA STAT. ANN. §§ 45.50.531 and 45.50.537.

010440-11  680594 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CALIFORNIA

## COUNT I

## VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT

### (CAL. CIV. CODE § 1750, *et seq.*)

151.   In the event the Court declines to certify a nationwide Class, this claim is brought only on behalf of Class members residing in California.

152.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

153.   GM is a "person" under CAL. CIV. CODE § 1761(c).

154.   Plaintiff and the Class are "consumers," as defined by CAL. CIVIL CODE § 1761(d), who purchased or leased one or more Defective Vehicles.

155.   GM engaged in unfair or deceptive acts or practices that violated CAL. CIV. CODE § 1750, *et seq.*, as described above and below.

156.   Under the TREAD Act, 49 U.S.C. §§ 30101, *et seq.*, and its accompanying regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect.  49 U.S.C. § 30118(c)(1) & (2).

157.   In acquiring Old GM, GM expressly assumed the obligations to make all required disclosures under the TREAD Act.

158.   GM also has successor liability for the deceptive and unfair acts and omissions of Old GM.

159.   Under the TREAD Act, if it is determined that the vehicle is defective, the manufacturer must promptly notify vehicle owners, purchasers and dealers of the defect and remedy the defect.  49 U.S.C. § 30118(b)(2)(A) & (B).

160.   Under the TREAD Act, manufacturers must also file a report with NHTSA within five working days of discovering "a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist."  49 C.F.R. § 573.6(a) &

- 38 -

(b).  At a minimum, the report to NHTSA must include:  the manufacturer's name; the identification of the vehicles or equipment containing the defect, including the make, line, model year and years of manufacturing; a description of the basis for determining the recall population; how those vehicles differ from similar vehicles that the manufacturer excluded from the recall; and a description of the defect.  49 C.F.R. § 276.6(b), (c)(1), (c)(2), & (c)(5).

161.   The manufacturer must also promptly inform NHTSA regarding:  the total number of vehicles or equipment potentially containing the defect; the percentage of vehicles estimated to contain the defect; a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with its dates of receipt; and a description of the plan to remedy the defect.  49 C.F.R. § 276.6(b) & (c).

162.   The TREAD Act provides that any manufacturer who violates 49 U.S.C. § 30166 must pay a civil penalty to the U.S. Government.  The current penalty "is $7,000 per violation per day," and the maximum penalty "for a related series of daily violations is $17,350,000."  49 C.F.R. § 578.6(c).

163.   From at least 2001, Old GM had knowledge of the ignition switch defect, but hid the problem for the remainder of its existence until 2009.

164.   From its creation on July 10, 2009, GM knew of the ignition switch problem because of the knowledge of Old GM and continuous reports up until the present.

165.   GM admits the defect in the ignition switch has been linked to at least 12 accident-related fatalities.  But other sources have reported that hundreds of deaths and serious injuries are linked to the faulty ignition switches.

166.   Despite being aware of the ignition switch defects ever since its creation on July 10, 2009, GM waited until February 7, 2014, before finally sending a letter to NHTSA confessing its knowledge of the ignition switch defects which could cause

- 39 -

the vehicles to lose power, and in turn cause the airbags not to deploy.  GM initially identified two vehicle models, along with the corresponding model years, affected by the defect – the 2005-2007 Chevrolet Cobalt and the 2007 Pontiac G5.  On February 25, 2014, GM amended its letter to include four additional vehicles, the 2006-2007 Chevrolet HHR, 2006-2007 Pontiac Solstice, 2003-2007 Saturn Ion, and the 2007 Saturn Sky.

167.    By failing to disclose and by actively concealing the ignition switch defect, and by selling vehicles while violating the TREAD Act and through its other conduct as alleged herein, Old GM and GM both engaged in deceptive business practices prohibited by the CLRA, CAL. CIV. CODE § 1750, *et seq*.

168.    Both Old GM and GM failed for many years to inform NHTSA about known defects in the Defective Vehicles' ignition system.  Consequently, the public, including Plaintiff and the Class, received no notice of the ignition switch defects, that the defect could disable multiple electrical functions including power steering and power brakes, or that the defect could cause the airbags not to deploy in an accident.

169.    GM knew that the ignition switch had a defect that could cause a vehicle's engine to lose power without warning, and that when the engine lost power there was a risk that electrical functions would fail and that the airbags would not deploy. Yet GM failed to inform NHTSA or warn Plaintiff or the public about these inherent dangers despite having a duty to do so.

170.    Old GM and GM owed Plaintiff and the Class a duty to comply with the TREAD Act and disclose the defective nature of the Defective Vehicles, including the ignition switch defect and accompanying loss of power and failure of the airbags to deploy, because Old GM and GM:

a.      Possessed exclusive knowledge of the ignition switch defects rendering the Defective Vehicles inherently more dangerous and unreliable than otherwise similar vehicles; and

- 40 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

b.    Intentionally concealed the hazardous situation with the Defective

Vehicles by failing to comply with the TREAD Act, which required the disclosure of

the ignition switch defects.

171.   Defective Vehicles equipped with the faulty ignition switch pose an

unreasonable risk of death or serious bodily injury to Plaintiff, passengers, other

motorists, and pedestrians, because they are susceptible to sudden loss of power

resulting in the loss of power steering and power brakes and failure of the airbags to

deploy.

172.   Old GM's and GM's unfair or deceptive acts or practices were likely to

and did in fact deceive reasonable consumers, including Plaintiff, about the true

safety and reliability of the Defective Vehicles.

173.   Because of their violations of the CLRA detailed above, Old GM and

GM caused actual damage to Plaintiff and, if not stopped, will continue to harm

Plaintiff and the Class.  Plaintiff and the Class members currently own or lease

Defective Vehicles that are defective and inherently unsafe.  These violations caused

the diminution in value of Plaintiff's vehicle which is now worth less than it would

have been without the ignition switch defects.  Had Old GM timely disclosed the

defect, Plaintiff would either not have purchased a Defective Vehicle at all, or would

have paid less for the Defective Vehicle.  Plaintiff and the Class did not receive the

benefit of their bargain which was for a safe vehicle free of serious safety defects.

174.   Had GM timely disclosed the ignition switch defects, the issue would

have been resolved years ago and the value of Plaintiff's Defective Vehicle would

not now be diminished.

175.   Plaintiff and the Class face the risk of irreparable injury as a result of

GM's acts and omissions in violation of the CLRA, and these violations present a

continuing risk to Plaintiff and to the general public.

010440-11  680594 V1

176.   Under CAL. CIV. CODE § 1780(a), Plaintiff and the Class seek monetary relief against GM measured as the diminution of the value of their vehicles caused by Old GM's and GM's violations of the CLRA as alleged herein.

177.   Under CAL. CIV. CODE § 1780(b), Plaintiff seeks an additional award against GM of up to $5,000 for each Class member who qualifies as a "senior citizen" or "disabled person" under the CLRA.  Old GM and GM knew or should have known that their conduct was directed to one or more Class members who are senior citizens or disabled persons.  Old GM's and GM's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person.  One or more Class members who are senior citizens or disabled persons are substantially more vulnerable to Old GM's and GM's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Old GM's and GM's conduct.

178.   Plaintiff also seeks punitive damages against GM because it carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff and the Class to potential cruel and unjust hardship as a result.  First Old GM and then GM intentionally and willfully concealed and failed to inform NHTSA of the unsafe and unreliable Defective Vehicles, deceived Plaintiff on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations problem of correcting a deadly flaw in the Defective Vehicles.  GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under CAL. CIV. CODE § 3294.

179.   Plaintiff further seeks an order enjoining GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under CAL. CIV. CODE § 1780(e), and any other just and proper relief available under the CLRA.

- 42 -

180.   Finally, Class members who purchased a Defective Vehicle after July 10, 2009 ("Repurchasers") have a CLRA claim against GM for failing to disclose the known ignition switch defect.

181.   But for GM's deceptive and unfair failure to disclose the ignition switch defects, the Repurchasers would either not have purchased the Defective Vehicles or would have paid less for them, entitling them to monetary relief under CAL. CIV. CODE § 1780(a) and punitive damages, for the reasons set forth above.

182.   On March 19, 2014, Plaintiff Benton sent a letter complying with CAL. CIV. CODE § 1780(b).

183.   Plaintiff include an affidavit with this Complaint that show that venue in this District is proper, to the extent such an affidavit is required by CAL. CIV. CODE § 1780(d).

## COUNT II

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

184.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who reside in California.

185.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

186.   California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."  GM has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL, and also has successor liability for the unlawful, fraudulent and unfair business acts and practices of Old GM.

187.   Both Old GM and GM violated the unlawful prong of section 17200 by their violations of the CLRA, CAL. CIV. CODE § 1750, *et seq.*, as set forth in Count I by the acts and practices set forth in this Complaint.

010440-11  680594 V1

188.    Both Old GM and GM also violated the unlawful prong because they engaged in business acts or practices that are unlawful because they violate the TREAD Act, 49 U.S.C. §§ 30101, *et seq*., and its regulations.

189.    Old GM and GM violated the TREAD Act when they failed to timely inform NHTSA of the ignition switch defects and allowed cars to be sold with these defects.

190.    Old GM and GM violated the unfair and fraudulent prong of section 17200 because, in failing or refusing to inform NHTSA about a defect affecting the safety and reliability of the Defective Vehicles, the Companies precluded reasonable owners from discovering their vehicles were unsafe and unreliable.  The information that the Companies were required to disclose to NHTSA about the faulty ignition switch was material to a reasonable consumer.

191.    Old GM and GM also violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with an ignition switch defect and the Companies' failure to adequately disclose the defect to NHTSA and implement a remedy, offend established public policy, and also because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff and the Class from making fully informed decisions about whether to lease, purchase and/or retain the Defective Vehicles.

192.    While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture and market the Defective Vehicles until 2007.  All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

193.    Plaintiff and the Class have suffered an injury, including the loss of money or property, because of GM's unfair, unlawful and/or deceptive practices.

- 44 -

1    Old GM and GM failed to inform NHTSA, and therefore failed to inform consumers,

2    that its vehicles had a defective ignition switch that could lead to injury and death.

3    Had Plaintiff and the Class known this they would either not have purchased their

4    vehicles at all or would have paid less for them, and would not have retained their

5    Defective Vehicles.

6        194.   All of the wrongful conduct alleged herein occurred, and continues to

7    occur, in the conduct of the Companies' business.  The Companies' wrongful

8    conduct is part of a pattern or generalized course of conduct that is still perpetuated

9    and repeated, both in California and nationwide.

10        195.   Plaintiff and the Class have suffered an injury, including the loss of

11    money or property, due to GM's unfair, unlawful and/or deceptive practices.

12        196.   Plaintiff requests that this Court enter such orders or judgments as may

13    be necessary, including a declaratory judgment that GM has violated the UCL; an

14    order enjoining GM from continuing its unfair, unlawful, and/or deceptive practices;

15    an order and judgment restoring to the Class members any money lost as the result of

16    GM's unfair, unlawful and deceptive trade practices, including restitution and

17    disgorgement of any profits GM received as a result of its unfair, unlawful and/or

18    deceptive practices, as provided in CAL. BUS. & PROF. CODE § 17203, CAL CIV.

19    PROC. § 384 and CAL. CIV. CODE § 3345; and for such other relief as may be just and

20    proper.

21        197.   Finally, Class members who purchased a Defective Vehicle after

22    July 10, 2009 (the Repurchasers) have a UCL claim against GM for failing to

23    disclose the known ignition switch defect.

24        198.   But for GM's deceptive and unfair failure to disclose the ignition switch

25    defects, the Repurchasers would either not have purchased the Defective Vehicles or

26    would have paid less for them, entitling them to orders or judgments to:  enjoin GM

27    from continuing its unfair, unlawful, and/or deceptive practices; and/or restore to the

28    Repurchasers any money lost as the result of GM's unfair, unlawful and deceptive

- 45 -

trade practices, as provided in CAL. BUS. & PROF. CODE § 17203, CAL CIV. PROC. § 384 and CAL. CIV. CODE § 3345.

## COUNT III

### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CALIFORNIA "LEMON LAW")

### (CAL. CIV. CODE §§ 1791.1 & 1792)

199.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of California residents.

200.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

201.   Plaintiff and Class members who purchased or leased the Defective Vehicles in California are "buyers" within the meaning of CAL. CIV. CODE § 1791(b).

202.   The Defective Vehicles are "consumer goods" within the meaning of CIV. CODE § 1791(a).

203.   Old GM was a "manufacturer" of the Defective Vehicles within the meaning of CAL. CIV. CODE § 1791(j), and, in purchasing Old GM, GM expressly assumed liability and responsibility for "payment of all [Old GM's] Liabilities arising under …Lemon Laws," including California's Lemon Law, the Song-Beverly Act.

204.   Old GM impliedly warranted to Plaintiff and the Class that its Defective Vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792; however, the Defective Vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

205.   CAL. CIV. CODE § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

- 46 -

(2)    Are fit for the ordinary purposes for which such
goods are used.

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact
made on the container or label.

206.    The Defective Vehicles would not pass without objection in the automotive trade because of the ignition switch defects that cause the Defective Vehicles to inadvertently shut down during ordinary driving conditions, leading to an unreasonable likelihood of accident and an unreasonable likelihood that such accidents would cause serious bodily harm or death to vehicle occupants.

207.    Because of the ignition switch defects, the Defective Vehicles are not safe to drive and thus not fit for ordinary purposes.

208.    The Defective Vehicles are not adequately labeled because the labeling fails to disclose the ignition switch defects and does not advise Class members to avoid attaching anything to their vehicle key rings.  Old GM and GM failed to warn about the dangerous safety defects in the Defective Vehicles.

209.    Old GM breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing defects leading to the sudden and unintended shut down of the vehicles during ordinary driving conditions. These defects have deprived Plaintiff and the Class of the benefit of their bargain and have caused the Defective Vehicles to depreciate in value.

210.    As a direct and proximate result of Old GM's breach of its duties under California's Lemon Law (for which GM expressly assumed liability), Class members received goods whose dangerous condition substantially impairs their value to Class members.  Plaintiff and the Class have been damaged by the diminished value of Old GM's products, the products' malfunctioning, and the nonuse of their Defective Vehicles.

211.    Under CAL. CIV. CODE §§ 1791.1(d) & 1794, Class members are entitled to damages and other legal and equitable relief including, at their election,

- 47 -

the purchase price of their Defective Vehicles, or the overpayment or diminution in value of their Defective Vehicles.

212.   Under CAL. CIV. CODE § 1794, Class members are entitled to costs and attorneys' fees.

## COLORADO

### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
### (COLORADO CPA, COL. REV. STAT. § 6-1-101, *et seq.*)

213.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members residing in Colorado.

214.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

215.   Old GM and GM are "persons" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), COL. REV. STAT. § 6-1-101, *et seq.*

216.   Class members are "consumers" for purposes of § 6-1-113(1)(a) of the Colorado CPA who purchased or leased one or more Defective Vehicles.

217.   Old GM and GM engaged in deceptive trade practices prohibited by the Colorado CPA, including:  (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Defective Vehicles that had the capacity or tendency to deceive Class members; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade even though both Companies knew or should have known they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Defective Vehicles that was known to Old GM and GM at the time of advertisement or sale with the intent to induce Class members to purchase, lease or retain the Defective Vehicles.  In the course of their business, Old GM and GM participated in deceptive trade practices that violated the Colorado CPA as described herein.  GM is directly liable for these violations of law, and also has successor liability for the deceptive trade practices of Old GM.

- 48 -

218.   As alleged above, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of both Companies' unlawful advertising and representations as a whole.

219.   Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles. Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

220.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

221.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

222.   Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.  Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.

223.   Old GM's and GM's deceptive and unfair acts and practices significantly impact the public as actual consumers and users of the Defective Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.  Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged

- 49 -

1    herein occurred, and continues to occur, in the conduct of Old GM's and GM's

2    businesses.

3        224.    Old GM's and GM's acts and practices, including the manufacture and

4    sale of vehicles with an ignition switch defect, and the Companies' failure to

5    adequately disclose the defect to NHTSA and the Class and timely implement a

6    remedy, were unconscionable because they offend established public policy, and

7    because the harm the Companies caused consumers greatly outweighs any benefits

8    associated with those practices.  The Companies' conduct has also impaired

9    competition within the automotive vehicles market and has prevented Plaintiff and

10   the Class from making fully informed decisions about whether to lease, purchase

11   and/or retain Defective Vehicles.

12       225.    Whether or not a vehicle's (a) ignition switch will malfunction

13   (a) causing the car's engine and electrical system to shut off, (b) disabling the power

14   steering and power brakes and (c) causing the non-deployment of the vehicle's

15   airbags in a crash are facts that a reasonable consumer would consider important in

16   selecting a vehicle to purchase or lease.  When Class members bought a Defective

17   Vehicle for personal, family, or household purposes, they reasonably expected the

18   vehicle would feature a non-defective, safe ignition switch.

19       226.    Class members suffered injury-in-fact to their legally protected property

20   interests as a result of Old GM's and GM's violations of the Colorado CPA detailed

21   above.  Class members currently own or lease Defective Vehicles that are defective

22   and inherently unsafe.  The ignition switch defects and the resulting risk of accident,

23   injury, or death have caused the value of the Defective Vehicles to plummet.

24       227.    Class members also seek punitive damages against GM because both

25   Old GM and GM engaged in bad faith conduct.  Old GM and GM misrepresented the

26   safety and reliability of the Defective Vehicles, deceived Class members on life-or-

27   death matters, and concealed material facts that only they knew, all to avoid the

28   expense and public relations nightmare of correcting a deadly flaw in the Defective

- 50 -

1    Vehicles they repeatedly promised Class members were safe.  Old GM's and GM's

2    bad faith conduct warrants punitive damages.

3    228.   Because the Class members suffered injury-in-fact, they seek actual

4    damages or $500, whichever is greater, discretionary treble damages, punitive

5    damages, and reasonable attorneys' fees under COL. REV. STAT. § 6-1-113.

6    ## CONNECTICUT

7    ## VIOLATION OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT

8    ### (CONN. GEN. STAT. § 42-110A, *et seq.*)

9    229.   Plaintiff realleges and incorporates by reference all paragraphs as

10    though fully set forth herein.

11    230.   In the event the Court declines to certify a nationwide Class, Plaintiff

12    brings this claim solely on behalf of Connecticut residents.

13    231.   The Connecticut Unfair Trade Practices Act ("CUTPA") provides:  "No

14    person shall engage in unfair methods of competition and unfair or deceptive acts or

15    practices in the conduct of any trade or commerce."  CONN. GEN. STAT. § 42-110b(a).

16    232.   Old GM was, and GM is, a "person" within the meaning of CUTPA.

17    CONN. GEN. STAT. § 42-110a(3).

18    233.   In the course of the business of Old GM and GM, the Companies

19    willfully failed to disclose and actively concealed the dangerous risks of the ignition

20    switch defects in the Defective Vehicles as described above.  This was a deceptive act

21    in that GM and Old GM represented that the Defective Vehicles have characteristics,

22    uses, benefits, and qualities which they do not have; represented that the Defective

23    Vehicles are of a particular standard and quality when they are not; and advertised the

24    Defective Vehicles with the intent not to sell them as advertised.  Old GM and GM

25    knew or should have known that their conduct violated the CUTPA.

26    234.   Old GM engaged in a deceptive trade practice when it failed to disclose

27    material information concerning the Old GM vehicles which was known to Old GM

28    at the time of the sale.  Old GM deliberately withheld the information about the

- 51 -

vehicles' propensity to suddenly shut down in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

235.   The conduct of Old GM and GM was unfair because it causes substantial injury to consumers.

236.   The propensity of the Defective Vehicles for sudden, inadvertent shutdown during ordinary driving conditions was material to Plaintiff and the Class. Had Plaintiff and the Class known that their Defective Vehicles had these serious safety defects, they would not have purchased the vehicles.

237.   Plaintiff and the Class suffered ascertainable loss caused by the deceptive and unfair practices of GM and Old GM.  Plaintiff and the Class overpaid for their vehicles and did not receive the benefit of their bargain.  The value of their vehicles have diminished now that the safety issues have come to light, and Plaintiff and the Class own vehicles that are not safe.

238.   GM and Old GM engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others.

239.   Plaintiff and the Class are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to CONN. GEN. STAT. § 42-110g.

240.   Pursuant to CONN. GEN. STAT. § 42-110g(c), Plaintiff will mail a copy of the complaint to Connecticut's Attorney General.

## DELAWARE

### COUNT I

### VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT

### (6 DEL. CODE § 2513, *et seq.*)

241.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

242.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Delaware residents.

010440-11  680594 V1

243.    The Delaware Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."  6 DEL. CODE § 2513(a).

244.    GM and Old GM are both "persons" within the meaning of 6 DEL. CODE § 2511(7).

245.    As described herein, Old GM and GM each made false representations regarding the safety and reliability of their vehicles and concealed important facts regarding the tendency of their vehicles to suddenly and inadvertently shut down during ordinary operation.  Old GM and GM intended that others rely on these misrepresentations and omissions in connection with the purchase, lease and retention of their vehicles.

246.    The actions of Old GM and GM as set forth above occurred in the conduct of trade or commerce.

247.    The Companies' conduct proximately caused injuries to Plaintiff and the Class.

248.    Plaintiff and the Class were injured as a result of Old GM's conduct in that Plaintiff and the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of GM's misrepresentations and omissions, and of Old GM's misrepresentations and omissions for which GM has successor liability.

249.    Plaintiff and the Class are entitled to recover damages, as well as punitive damages for the Companies' gross and aggravated misconduct.

- 53 -

## COUNT II

## VIOLATION OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT
### (6 DEL. CODE § 2532, *et seq.*)

250.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

251.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Delaware residents.

252.   Delaware's Deceptive Trade Practices Act ("DTPA") prohibits a person from engaging in a "deceptive trade practice," which includes:  "(5) Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "(7) Represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "(9) Advertis[ing] goods or services with intent not to sell them as advertised"; or "(12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

253.   Old GM and GM are "persons" within the meaning of 6 DEL. CODE § 2531(5).

254.   In the course of the business of Old GM and GM, the Companies willfully failed to disclose and actively concealed the dangerous risk of ignition switch defects in the Defective Vehicles as described above.  Accordingly, the Companies engaged in unlawful trade practices, including representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Defective Vehicles are of a particular standard and quality when they are not; advertising the Defective Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

- 54 -

255.   The Companies' actions as set forth above occurred in the conduct of trade or commerce.

256.   The Companies' conduct proximately caused injuries to Plaintiff and the Class.

257.   Plaintiff and the Class were injured as a result of the Companies' conduct in that Plaintiff and Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value that was exacerbated by the continuing violation of Delaware law by GM. These injuries are the direct and natural consequence of the Companies' misrepresentations and omissions.

258.   Plaintiff seeks injunctive relief and, if awarded damages under Delaware common law or Delaware Consumer Fraud Act, treble damages pursuant to 6 DEL. CODE § 2533(c).

259.   Plaintiff also seeks punitive damages based on the outrageousness and recklessness of the Companies' conduct and the high net worth of GM.

## DISTRICT OF COLUMBIA

## VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT
### (CPPA, D.C. CODE § 28-3901, *et seq.*)

260.   Plaintiff realleges and incorporates by reference all paragraphs as if fully set forth herein.

261.   In the event that the Court declines to certify a nationwide class, Plaintiff brings this claim solely on behalf of Class members who reside in the District of Columbia.

262.   Old GM and GM are "persons" under the Consumer Protection Procedures Act ("CPPA"), D.C. CODE § 28-3901(a)(1).

263.   Class members are "consumers," as defined by D.C. CODE § 28-3901(1)(2), who purchased or leased one or more Defective Vehicles.

264.    Old GM's and GM's actions as set forth herein constitute "trade practices" under D.C. CODE § 28-3901.

265.    By failing to disclose and actively concealing the ignition switch defect in the Defective Vehicles, Old GM and GM engaged in unfair or deceptive practices prohibited by the CPPA, D.C. CODE § 28-3901, *et seq.*, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) representing that the subject of a transaction involving the Defective Vehicles has been supplied in accordance with a previous representation when it has not.  Both Old GM and GM participated in unfair or deceptive acts or practices that violated the CPPA.  GM is directly liable for these violations of law, and also has successor liability for the unfair and deceptive trade practices of Old GM.

266.    Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of both Companies' unlawful advertising and representations as a whole.

267.    Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles.  Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

268.    While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

- 56 -

269.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

270.   Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.  Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.

271.   Old GM's and GM's unfair and deceptive acts and practices significantly impact the public as actual consumers and users of the Defective Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.  Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

272.   Old GM's and GM's acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, were unconscionable because they offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff and the Class from making fully informed decisions about whether to lease, purchase and/or retain the Defective Vehicles.

- 57 -

273.    Class members suffered actual harm as a result of Old GM's and GM's conduct.  Plaintiff and the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

274.    Class members also seek punitive damages against GM because both Old GM's and GM's conduct evidences malice and/or egregious conduct.  Old GM and GM maliciously and egregiously misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly promised Class members were safe.  Old GM's and GM's unlawful conduct constitutes malice warranting punitive damages.

275.    Because Old GM's and GM's conduct proximately caused actual harm to Class members, they are entitled to recover treble damages or $1500, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the Court deems proper, under D.C. CODE § 28-3901.

## **FLORIDA**

### **VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT**

### **(FLA. STAT. § 501.201, *et seq.*)**

276.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

277.    In the event that the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Florida residents.

278.    The conduct of Old GM and GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with the ignition switch defects which Old GM and GM failed to

010440-11  680594 V1

adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of their vehicles.

279.   The actions of Old GM and GM as set forth above occurred in the conduct of trade or commerce.

280.   The Companies' actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of the Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

281.   Plaintiff and the Class were injured as a result of the Companies' conduct. Plaintiff and the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value that has been exacerbating by GM's ongoing campaign of deception.

282.   The Companies' conduct proximately caused the injuries to Plaintiff and the Class.

283.   GM is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

284.   Pursuant to FLA. STAT. § 501.201, Plaintiff will serve the Florida Attorney General with a copy of this complaint as Plaintiff seeks injunctive relief.

## GEORGIA

## COUNT I

### VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT

### (GA. CODE ANN. § 10-1-370, *et seq.*)

285.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

286.   In the event the Court declines to certify a nationwide Class, Plaintiff asserts this claim solely on behalf of Class members who are Georgia residents.

- 59 -

287.   The conduct of Old GM and GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with the ignition switch defect which Old GM and GM failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of their vehicles.

288.   The Companies' actions as set forth above occurred in the conduct of trade or commerce.

289.   The Companies' actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing, leasing and retaining the Defective Vehicles as a result of the Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

290.   Plaintiff and the Class were injured as a result of the Companies' conduct.  Plaintiff and the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value that was exacerbated by GM's continued course of deceptive acts and omissions.

291.   The Companies' conduct proximately caused the injuries to Plaintiff and the Class.

292.   GM is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

293.   Pursuant to GA. CODE ANN. § 10-1-370, Plaintiff will serve the Georgia Attorney General with a copy of this complaint as Plaintiff seeks injunctive relief.

## COUNT II

## VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT

### (GA. CODE ANN. § 10-1-390, *et seq.*)

294.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

010440-11  680594 V1

295.   In the event that the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members residing in Georgia.

296.   The conduct of GM and Old GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with a dangerous ignition switch defect which Old GM and GM failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles.

297.   The Companies' actions as set forth above occurred in the conduct of trade or commerce.

298.   The Companies' actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of the Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

299.   Plaintiff and the Class were injured as a result of the Companies' conduct.  Plaintiff and the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value that was exacerbated by the deceptive acts and omissions of GM.

300.   The Companies' conduct proximately caused injuries to Plaintiff and the Class.

301.   GM is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

302.   Pursuant to GA. CODE ANN. § 10-1-390, Plaintiff will serve the Georgia Attorney General with a copy of this complaint as Plaintiff seeks injunctive relief.

010440-11  680594 V1

# HAWAII

## UNFAIR COMPETITION AND PRACTICES

### (HAW. REV. STAT. § 480, *et seq.*)

303.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

304.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who reside in Hawaii.

305.   Old GM and GM are "persons" under HAW. REV. STAT. § 480-1.

306.   Class members are "consumer[s]" as defined by HAW. REV. STAT. § 480-1, who purchased or leased one or more Defective Vehicles.

307.   Old GM's and GM's acts or practices as set forth above occurred in the conduct of trade or commerce.

308.   The Act § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.…"  In the course of their business, both Old GM and GM willfully failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles in violation of this Act.  Both Companies' misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles were material and caused Class members to purchase, lease and/or retain vehicles they would not have otherwise purchased, leased and/or retained, or paid as much for, had the Class members known the vehicles were defective.  GM is directly liable for its violations of law, and also has successor liability for the unfair and deceptive trade practices of Old GM.

309.   As alleged above, both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

- 62 -

310.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

311.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

312.   Old GM's and GM's misrepresentations and omissions described herein have the capacity or tendency to deceive.  Because of these unlawful trade practices, including failure to disclose material information, Class members suffered injury, including the loss of money or property.  Class members overpaid for their vehicles and did not receive the benefit of their bargain.  The value of their vehicles has diminished now that the safety issues have come to light, and Class members own vehicles that are not safe.

313.   Old GM's and GM's unfair and deceptive acts and practices significantly impact the public as actual consumers and users of the Defective Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.  Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

314.   Old GM's and GM's acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, were unconscionable because they offend established public policy, and

- 63 -

1    because the harm the Companies caused consumers greatly outweighs any benefits

2    associated with those practices.  The Companies' conduct has also impaired

3    competition within the automotive vehicles market and has prevented Plaintiff and

4    the Class from making fully informed decisions about whether to lease, purchase

5    and/or retain the Defective Vehicles.

6    315.    Class members also seek punitive damages against GM because both

7    Old GM's and GM's conduct evidences conscious wrongdoing.  Old GM and GM

8    consciously misrepresented the safety and reliability of the Defective Vehicles,

9    deceived Class members on life-or-death matters, and concealed material facts that

10   only they knew, all to avoid the expense and public relations nightmare of correcting

11   a deadly flaw in the Defective Vehicles it repeatedly promised Class members were

12   safe.  Old GM's and GM's conscious wrongdoing warrants punitive damages.

13   316.    Because Old GM's and GM's conscious wrongdoing caused injury to

14   Class members, they are entitled to recover treble damages or $1000, whichever is

15   greater, punitive damages, reasonable attorneys' fees, and any other relief the Court

16   deems proper, under HAW. REV. STAT. § 480-13.

### IDAHO

### VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT

### (ICPA, IDAHO CIV. CODE § 48-601, *et seq.*)

20   317.    Plaintiff realleges and incorporates by reference all paragraphs as

21   though fully set forth herein.

22   318.    In the event the Court declines to certify a nationwide Class, Plaintiff

23   brings this claim solely on behalf of Class members residing in Idaho.

24   319.    Old GM and GM are "persons" under the Idaho Consumer Protection

25   Act ("ICPA"), IDAHO CIV. CODE § 48-602(1).

26   320.    Old GM's and GM's acts or practices as set forth above occurred in the

27   conduct of "trade" or "commerce" under IDAHO CIV. CODE § 48-602(2).

28

321.   Old GM and GM both participated in misleading, false, or deceptive acts that violated the ICPA.  By failing to disclose and actively concealing the dangerous ignition switch defect in the Defective Vehicles, both Old GM and GM engaged in deceptive business practices prohibited by the ICPA, including: (1) representing that the Defective Vehicles have characteristics, uses, and benefits which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; and (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer. *See* IDAHO CIV. CODE § 48-603. GM is directly liable for its violations of law, and also has successor liability for the unfair methods of competition and unfair or deceptive acts of Old GM.

322.   As detailed herein, Old GM made numerous material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

323.   Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles.  Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

324.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

325.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

326.   Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and

010440-11  680594 V1

reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

327.   Old GM and GM each owed Class members a duty to disclose the defective nature of Defective Vehicles, including the unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death, because they:

a.    Possessed exclusive knowledge of the defects rendering the Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

b.    Intentionally concealed the hazardous situation with the Defective Vehicles for more than a decade; and/or

c.    Made misrepresentations about the safety and reliability of the Defective Vehicles while purposefully withholding material facts from Class members that contradicted these representations.

328.   Old GM's and GM's deceptive and unfair acts and practices significantly impact the public as actual consumers and users of the Defective Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.  Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

329.   Whether or not a vehicle's ignition switch will malfunction, (a) causing the car's engine and electrical system to shut off, (b) disabling the power steering and power brakes and (c) causing the non-deployment of the vehicle's airbags in a

- 66 -

1    crash are facts that a reasonable consumer would consider important in selecting a

2    vehicle to purchase or lease.  When Class members bought a Defective Vehicle for

3    personal, family, or household purposes, they reasonably expected the vehicle would

4    feature a non-defective, safe ignition switch.

5        330.   As a result of its violations of the ICPA detailed above, Old GM and

6    GM caused ascertainable loss of money or property to Class members.  Class

7    members currently own or lease Defective Vehicles that are defective and inherently

8    unsafe.  Defective and dangerous ignition switches have caused the value of the

9    Defective Vehicles to plummet.

10       331.   Class members also seek punitive damages against GM because both

11   Old GM's and GM's conduct evidences an extreme deviation from reasonable

12   standards.  Old GM and GM flagrantly, maliciously, and fraudulently misrepresented

13   the safety and reliability of the Defective Vehicles, deceived Class members on life-

14   or-death matters, and concealed material facts that only they knew, all to avoid the

15   expense and public relations nightmare of correcting a deadly flaw in the Defective

16   Vehicles they repeatedly promised Class members were safe.  Old GM's and GM's

17   unlawful conduct constitutes malice, oppression, and fraud warranting punitive

18   damages.

19       332.   Class members suffered ascertainable loss as a result of Old GM's and

20   GM's flagrant violation of the ICPA.  The Class therefore seeks actual damages or

21   $1000, whichever is greater, discretionary treble damages, punitive damages, and

22   reasonable attorneys' fees, under IDAHO CIV. CODE § 48-608.

23

24

25

26

27

28

- 67 -

1

## ILLINOIS

2

## COUNT I

3

### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

4

5

**(815 ILL. COMP. STAT. 505/1, *et seq.*
and 720 ILL. COMP. STAT. 295/1A)**

6

333.    Plaintiff realleges and incorporates by reference all paragraphs as

7

though fully set forth herein.

8

334.    In the event the Court declines to certify a nationwide Class, Plaintiff

9

brings this claim solely on behalf of Class members who reside in Illinois.

10

335.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815

11

ILL. COMP. STAT. 505/2 prohibits unfair or deceptive acts or practices in connection

12

with any trade or commerce.  Specifically, the Act prohibits suppliers from

13

representing that their goods are of a particular quality or grade they are not.

14

336.    Old GM and GM are "persons" as that term is defined in the Illinois

15

Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1(c).

16

337.    Plaintiff and the Class are "consumers" as that term is defined in the

17

Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT.

18

505/1(e).

19

338.    The unfair and deceptive conduct of Old GM and GM caused Plaintiff's

20

damages as alleged.

21

339.    As a result of the foregoing wrongful conduct of Old GM and GM,

22

Plaintiff and the Class have been damaged in an amount to be proven at trial,

23

including, but not limited to, actual damages, court costs, and reasonable attorneys'

24

fees under 815 ILL. COMP. STAT. 505/1, *et seq.*

25

26

27

28

- 68 -

## COUNT II

### VIOLATION OF THE ILLINOIS UNIFORM
### DECEPTIVE TRADE PRACTICES ACT

**(815 ILL. COMP. STAT. 510/1, *et. seq.* and
720 ILL. COMP. STAT. 295/1A)**

340.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

341.    In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who reside in Illinois.

342.    815 ILL. COMP. STAT. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person:  "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represents that goods or services have sponsorship, approval, characteristics ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; … (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; … (9) advertises goods or services with intent not to sell them as advertised; … [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

343.    Old GM and GM are "persons" within the meaning of 815 ILL. COMP. STAT. 510/1(5).

344.    The vehicles sold to Plaintiff was not of the particular sponsorship, approval, characteristics, ingredients, uses benefits, or qualities represented by first Old GM and then GM with respect to used Defective Vehicle purchasers after July 10, 2009.

345.    The vehicles sold to Plaintiff was not of the particular standard, quality, and/or grade represented by the Companies.

- 69 -

346.   The conduct of Old GM and GM was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiff.

347.   As a result of the foregoing wrongful conduct of Old GM and GM, Plaintiff and the Class have been damaged in an amount to be proven at trial, and seek actual and punitive damages, equitable relief, reasonable attorneys' fees, and other available and appropriate relief.

## INDIANA

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (IND. CODE § 24-5-0.5-3)

348.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

349.   In the event the Court declines to certify a nationwide Class, Plaintiff asserts this claim solely on behalf of Class members who reside in Indiana.

350.   Indiana's Deceptive Consumer Sales Act prohibits a person from engaging in a "deceptive trade practice," which includes representing:  "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that

- 70 -

1    such representation is true if such other supplier shall know or have reason to know

2    that such representation was false."

3        351.   Old GM and GM are "persons" within the meaning of IND. CODE § 24-

4    5-0.5-2(2).

5        352.   In the course of the Companies' business, they each willfully failed to

6    disclose and actively concealed the dangerous risk caused by the ignition switch

7    defects in the Defective Vehicles.  Accordingly, the Companies engaged in unlawful

8    trade practices, including:  (1) representing that the Defective Vehicles have

9    characteristics, uses, benefits, and qualities which they do not have; (2) representing

10   that the Defective Vehicles are of a particular standard and quality when they are

11   not; (3) advertising the Defective Vehicles with the intent not to sell them as

12   advertised; and (4) otherwise engaging in conduct likely to deceive.

13       353.   The Companies' actions as set forth above occurred in the conduct of

14   trade or commerce.

15       354.   The Companies' conduct proximately caused injuries to Plaintiff and

16   the Class.

17       355.   Plaintiff and the Class were injured as a result of the Companies'

18   conduct in that Plaintiff and the Class overpaid for their Defective Vehicles and did

19   not receive the benefit of their bargain, and their vehicles have suffered a diminution

20   in value.  These injuries are the direct and natural consequence of the Companies'

21   misrepresentations and omissions.

22       356.   Plaintiff seeks injunctive relief and, if awarded damages under Indiana

23   Deceptive Consumer Protection Act, treble damages pursuant to IND. CODE § 24-5-

24   0.5-4(a)(1).

25       357.   Plaintiff also seeks punitive damages based on the outrageousness and

26   recklessness of the Companies' conduct and GM's high net worth.

27

28

010440-11  680594 V1

# IOWA

## VIOLATIONS OF THE PRIVATE RIGHT OF ACTION
## FOR CONSUMER FRAUDS ACT

### (IOWA CODE § 714H.1, *et seq.*)

358.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

359.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Iowa residents.

360.   Old GM and GM are "persons" under IOWA CODE § 714H.2(7).

361.   Plaintiff and the Class are "consumers," as defined by IOWA CODE § 714H.2(3), who purchased or leased one or more Defective Vehicles.

362.   Old GM and GM both participated in unfair or deceptive acts or practices that violated Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA"), IOWA CODE § 714H.1, *et seq.*, as described above and below.  GM is directly liable for its violations of law, and has successor liability for the actions of Old GM in violation of the Iowa CFA.

363.   By failing to disclose and actively concealing the dangerous risk of the ignition switch defects in the Defective Vehicles, the Companies engaged in deceptive business practices prohibited by the Iowa CFA, IOWA CODE § 714H.1, *et seq.*, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; and (4) engaging in acts or practices which are otherwise unfair, misleading, false or deceptive to the consumer.

364.   As alleged above, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or

- 72 -

1    misleading.  Each of these statements contributed to the deceptive context of the

2    Companies' unlawful advertising and representations as a whole.

3         365.    The Companies knew that the ignition switches in the Defective

4    Vehicles were defectively designed or manufactured, would fail without warning,

5    and were not suitable for their intended use of turning the vehicle on and off based

6    on driver commands.  The Companies nevertheless failed to warn Plaintiff about

7    these inherent dangers despite having a duty to do so.

8         366.    Old GM and GM each owed Plaintiff a duty to disclose the defective

9    nature of the Defective Vehicles, including the dangerous risk that the vehicles

10   would shut down during ordinary driving conditions and render the vehicles'

11   electrical systems inoperable, because they:

12              a.    Possessed exclusive knowledge of the defects rendering the

13   Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

14              b.    Intentionally concealed the hazardous situation with the Defective

15   Vehicles from Plaintiff; and/or

16              c.    Made incomplete representations about the safety and reliability

17   of the Defective Vehicles generally, while purposefully withholding material facts

18   from Plaintiff that contradicted these representations.

19        367.    Defective Vehicles equipped with defective ignition switches pose an

20   unreasonable risk of death or serious bodily injury to Plaintiff, passengers, other

21   motorists, pedestrians, and the public at large, because they are susceptible to

22   incidents in which brakes, power steering and airbags are all rendered inoperable.

23        368.    Whether or not a vehicle (a) shuts down only when commanded to do so

24   and (b) maintains operable brakes, steering and airbags during ordinary operations

25   are facts that a reasonable consumer would consider important in selecting a vehicle

26   to purchase or lease.  When Plaintiff and the Class bought a GM vehicle for personal,

27   family, or household purposes, they reasonably expected the vehicle would (a) not

28

- 73 -

shut down until commanded to do so and (b) had brakes, power steering and airbags that remained operable during ordinary driving conditions.

369.    The Companies' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the Defective Vehicles.

370.    As a result of the violations of the Iowa CFA detailed above, Old GM and GM caused actual damage to Plaintiff and the Class and, if not stopped, will continue to harm Class members (including those driving the Defective Vehicles that have not yet been recalled).  Plaintiff and the Class currently own or lease Defective Vehicles that are defective and inherently unsafe.  The ignition switch defects have caused the value of the Defective Vehicles to plummet.

371.    Plaintiff and the Class risk irreparable injury as a result of the Companies' acts and omissions in violation of the Iowa CFA, and these violations present a continuing risk to Plaintiff as well as to the general public.

372.    Plaintiff and the Class sustained damages as a result of the Companies' unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H of the Iowa CFA.  Because the Companies' conduct was committed willfully, Plaintiff seeks treble damages as provided in IOWA CODE § 714H.5(4).

373.    Plaintiff also seeks court costs and attorneys' fees as a result of the Companies' violation of Chapter 714H as provided in IOWA CODE § 714H.5(2).

## KANSAS

### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### (KANSAS CPA, KAN. STAT. ANN. § 50-623, *et seq.*)

374.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

375.    In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Kansas residents.

- 74 -

376.   Old GM and GM are "suppliers" under the Kansas Consumer Protection Act ("Kansas CPA"), KAN. STAT. ANN. § 50-624(l).

377.   Class members are "consumers," within the meaning of KAN. STAT. ANN. § 50-624(b), who purchased or leased one or more Defective Vehicles.

378.   The sale of the Defective Vehicles to the Class members was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

379.   The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." KAN. STAT. ANN. § 50-626. Old GM and GM both participated in deceptive acts or practices that violated the Kansas CPA, as described herein, including:  (1) representing that the Defective Vehicles have characteristics, uses, and benefits that they do not have; and (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are of another which differs materially from the representation. Specifically, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading. *See* KAN. STAT. ANN. § 50-626.  GM is directly liable for tits violations of law, and also has successor liability for the deceptive acts and practices of Old GM.

380.   As alleged herein, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading, and that Old GM and GM knew or had reason to know were false.

381.   Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles.  Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

382.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

- 75 -

383.    All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

384.    Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

385.    Old GM's and GM's deceptive and unfair practices significantly impact the public since the Defective Vehicles pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.  Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

386.    Whether or not a vehicle's ignition switch will malfunction (a) causing the car's engine and electrical system to shut off, (b) disabling the power steering and power brakes and (c) causing the non-deployment of the vehicle's airbags in a crash are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Class members bought a Defective Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would feature a non-defective, safe ignition switch.

387.    Class members are aggrieved as a result of Old GM's and GM's violations of the Kansas CPA detailed above.  Class members currently own or lease

Defective Vehicles that are defective and inherently unsafe.  The defective ignition switches have caused the value of the Defective Vehicles to plummet.

388.   Class members also seek punitive damages against GM because the conduct of Old GM and GM was willful, wanton, and malicious.  The Companies fraudulently and willfully misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Class members were safe.  Because Old GM's and GM's conduct was willful, wanton, fraudulent, and malicious, it warrants punitive damages.

389.   Class members suffered actual harm as a result of Old GM's and GM's willful violation of the ICPA.  The Class therefore seeks actual damages or maximum statutory damages up to $10,000 per violation, whichever is greater, punitive damages, and reasonable attorneys' fees, under KAN. STAT. ANN. §§ 50-634 and 50-636.

390.   Pursuant to KAN. STAT. ANN. § 50-634, the Class will serve the Kansas Attorney General with a copy of this Complaint.

## KENTUCKY

## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT

### (KY. REV. STAT. § 367.110, *et seq.*)

391.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

392.   In the event the Court declines to certify a nationwide Class, Plaintiff asserts this claim solely on behalf of Class members who are Kentucky residents.

393.   Old GM and GM misrepresented the safety of the Defective Vehicles after learning of their defects with the intent that Plaintiff and the Class rely on such representations in their decision regarding the purchase, lease and/or use of the Defective Vehicles.

- 77 -

394.   Plaintiff did, in fact, rely on such representations in her decision regarding the purchase, lease and/or use of a Defective Vehicle.

395.   Through those misleading and deceptive statements and false promises, Old GM and GM violated the Kentucky Consumer Protection Act ("KCPA").

396.   The KCPA applies to the Companies' transactions with Plaintiff and the Class because the Companies' deceptive scheme was carried out in Kentucky and affected Plaintiff and the Class.

397.   The Companies also failed to advise NHSTA and the public about what they knew about the ignition switch defects in the Defective Vehicles.

398.   Plaintiff and the Class relied on the Companies' silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Defective Vehicles.

399.   As a direct and proximate result of the Companies' deceptive conduct and violation of the KCPA, Plaintiff and the Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to declaratory relief, and compensatory and equitable damages in an amount to be proven at trial.

## MAINE

### VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT

### (ME. REV. STAT. ANN. TIT. 5 § 205-A, *et seq.*)

400.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

401.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who reside in Maine.

402.   The Maine Unfair Trade Practices Act ("UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." ME. REV. STAT. ANN. TIT. 5 § 207.

010440-11  680594 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

403.    The advertising and sale of motor vehicles by Old GM and GM constitutes "trade or commerce" within the meaning of UTPA per ME. REV. STAT. ANN. TIT. 5 § 206(3).

404.    In the course of the Companies' business, they willfully failed to disclose and actively concealed the dangerous risks caused by the ignition switch defects in Defective Vehicles as described above.  This was a deceptive act in that the Companies represented that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that the Defective Vehicles are of a particular standard and quality when they are not; and advertised the Defective Vehicles with the intent not to sell them as advertised.  The Companies knew or should have known that their conduct violated the UTPA.

405.    Old GM engaged in a deceptive trade practice when it failed to disclose material information concerning the Defective Vehicles which was known to it at the time of the sale.  Old GM deliberately withheld the information about the vehicles' propensity to inadvertently shut down in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.  GM exacerbated the harm by continuing the deception, deceiving current owners and purchasers of used Deceptive Vehicles.

406.    The information withheld was material in that it was information that was important to consumers and likely to affect their choice of, or conduct regarding, the purchase of their cars.  The Companies' withholding of this information was likely to mislead consumers acting reasonably under the circumstances.  The propensity of the Defective Vehicles to shut down during ordinary driving conditions was material to Plaintiff and the Class.  Had Plaintiff and the Class known that the vehicles had these serious safety defects, they would not have purchased their Defective Vehicles, or they would have paid less.  In the absence of the ignition switch defects, or if Old GM or GM had remedied the problem earlier, the Defective

- 79 -

Vehicles would be worth more than they now are as a result of the Companies' campaign of deception.

407. The Companies' conduct has caused or will cause a substantial injury that cannot reasonably be avoided by consumers, and the harm is not outweighed by a countervailing benefit to consumers or competition

408. As a result of the Companies' deceptive and unfair practices, Plaintiff and the Class have suffered loss of money or property. Plaintiff and the Class overpaid for their vehicles and did not receive the benefit of their bargain. The value of their vehicles have diminished now that the safety issues have come to light, and Plaintiff and the Class own vehicles that are not safe.

409. Plaintiff and the Class are entitled to actual damages, restitution and such other equitable relief, including an injunction, as the Court determines to be necessary and proper.

410. Pursuant to ME. REV. STAT. ANN. TIT. 5 § 213(3), Plaintiff will mail a copy of this complaint to Maine's Attorney General.

## MARYLAND

### VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT

#### (MD. CODE COM. LAW § 13-101, *et seq.*)

411. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

412. In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Maryland residents.

413. Plaintiff and the Class are persons within the meaning of the Maryland Consumer Protection Act (the "Act") for all purposes therein.

414. Old GM and GM are persons within the meaning of the Act for all purposes therein.

- 80 -

415.   The false, deceptive and misleading statements and representations made by the Companies alleged above and below are Unfair and Deceptive Trade Practices within the meaning of the Act.

416.   The Companies participated in unfair or deceptive acts or practices that violated the Act, as described above and below, and those unfair and deceptive trade practices occurred or were committed in the course, vocation or occupation of the Companies' businesses.  GM engaged in the unfair and deceptive trade practices and is directly liable for these violations of law, and also has successor liability for Old GM's unfair and deceptive trade practices.

417.   The Unfair and Deceptive Trade Practices as alleged above and below significantly impact the public as actual or potential customers of the Companies.

418.   By failing to disclose and actively concealing the dangerous risk of the unintended shut down of the Defective Vehicles, the Companies engaged in deceptive business practices prohibited by the Act, including, but not limited to:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving the Defective Vehicles has been supplied in accordance with a previous representation when it has not.

419.   As alleged above, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of the Companies' unlawful advertising and representations as a whole.

- 81 -

420.    The Companies' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the Defective Vehicles.

421.    As a direct and proximate result of their unfair and deceptive business practices, and violations of the Act detailed above, the Companies caused actual damages, injuries, and losses to Plaintiff and the Class and, if not stopped, will continue to harm Plaintiff and the Class.  Plaintiff and the Class currently own or lease Defective Vehicles that are defective and inherently unsafe.  The ignition switch defects have caused the value of the Defective Vehicles to plummet.

422.    Plaintiff and the Class are entitled to all damages permitted by M.R.S § 13-101, *et seq.*, including actual damages sustained, civil penalties, attorneys' fees, and costs of this action.  Also, the State of Maryland is entitled to statutory penalties from GM for each violation of the Act.

## MASSACHUSETTS

### VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT

### (Chapter 93A)

423.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

424.    In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Massachusetts residents.

425.    The conduct of Old GM and GM as set forth herein constitutes unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, MASS. GEN. L. ch. 93A, including, but not limited to, Old GM's manufacture and sale of vehicles with the ignition switch defects, which the Companies failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of

- 82 -

the Defective Vehicles, which misrepresentations and omissions possessed the tendency to deceive.

426.   The Companies engage (or have engaged) in the conduct of trade or commerce and the misconduct alleged herein occurred in trade or commerce.

427.   In satisfaction of MASS. GEN. LAWS ch. 93A, § 9(3), Plaintiff will make demand on GM more than 30 days prior to the filing of an Amended Complaint by letters sent by Plaintiff and the Class.  These letters will assert that rights of consumers as claimants have been violated, describe the unfair and deceptive acts committed by the Companies, and specified the injuries that Plaintiff and the Class have suffered and the relief they seek.  Thus, these letters will satisfy section 9(3).

428.   As a result of the Companies' unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, MASS. GEN. L. ch. 93A, Plaintiff and the Class suffered injury as described herein.  Plaintiff and the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value that was exacerbated by GM's perpetuation of the campaign of deception as described above.

429.   Plaintiff and the Class are therefore entitled to actual damages, or $25 per Class member, whichever is greater.

### MINNESOTA

### COUNT I

### VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT

### (MINN. STAT. § 325D.43-48, *et seq.*)

430.   Plaintiff realleges and incorporate by reference all paragraphs as though fully set forth herein

431.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Minnesota residents.

- 83 -

432.   Old GM and GM engaged in – and GM continues to engage in – conduct that violates the Minnesota Deceptive Trade Practices Act, MINN. STAT. § 325D.44, *et seq*.  The violations include the following:

a.   The Companies violated MINN. STAT. § 325D.44(5) by representing the Defective Vehicles as having characteristics, uses, and benefits of safe and mechanically sound vehicles while knowing that the statements were false and the Defective Vehicles contained defects;

b.   The Companies violated MINN. STAT. § 325D.44(7) by representing the Defective Vehicles as a non-defective product of a particular standard, quality, or grade while knowing the statements were false and that the Defective Vehicles contained defects;

c.   The Companies violated MINN. STAT. § 325D.44(9) by advertising, marketing, and selling the Defective Vehicles as reliable and without a known defect while knowing those claims were false; and

d.   The Companies violated MINN. STAT. § 325D.44(13) by creating a likelihood of confusion and/or misrepresenting the safety of the Defective Vehicles.

433.   The Companies' deceptive scheme was carried out in Minnesota and affected Plaintiff.

434.   The Companies also failed to advise NHSTA and the public about what it knew about the ignition switch defects.

435.   As a direct and proximate result of the Companies' deceptive conduct and violation of MINN. STAT. § 325D.44, *et seq*., Plaintiff and the Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to declaratory relief, compensatory and equitable damages in an amount to be proven at trial.

- 84 -

# COUNT II

## VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT

### (MINN. STAT. § 325F.68, *et seq.*)

436.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

437.    In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Minnesota residents.

438.    Old GM and GM misrepresented the safety of the Defective Vehicles after learning of their defects with the intent that Plaintiff and the Class rely on such representations in their decision regarding the purchase, lease and/or use of the Defective Vehicles.

439.    Plaintiff and the Class did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Defective Vehicles.

440.    Through these misleading and deceptive statements and false promises, the Companies violated MINN. STAT. § 325F.69.

441.    The Minnesota Prevention of Consumer Fraud Act applies to the Companies' transactions with Plaintiff and the Class because the Companies' deceptive scheme was carried out in Minnesota and affected Plaintiff.

442.    The Companies also failed to advise NHSTA and the public about what they knew about the ignition switch defects in the Defective Vehicles.

443.    Plaintiff and the Class relied on the Companies' silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Defective Vehicles.

444.    As a direct and proximate result of the Companies' deceptive conduct and violation of MINN. STAT. § 325F.69, Plaintiff and the Class have sustained and will continue to sustain economic losses and other damages for which they are

- 85 -

entitled to declaratory relief, and compensatory and equitable damages in an amount to be proven at trial.

## MISSOURI

## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT

### (MO. REV. STAT. § 407.010, *et seq.*)

445.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

446.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Missouri residents.

447.   The conduct of Old GM and GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with defective ignition switches, which the Companies failed to adequately investigate, disclose and remedy, and the Companies' misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles.

448.   The Companies' actions as set forth above occurred in the conduct of trade or commerce.

449.   The Companies' actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of the Companies' generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

450.   Plaintiff and the Class were injured as a result of the Companies' conduct.  Plaintiff and the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

451.   The Companies' conduct proximately caused the injuries to Plaintiff and the Class.

- 86 -

452.   GM is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

453.   Pursuant to MO. REV. STAT. § 407.010, Plaintiff will serve the Missouri Attorney General with a copy of this complaint as Plaintiff seeks injunctive relief.

## MONTANA

### VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973

### (MONT. CODE ANN. § 30-14-101, *et seq.*)

454.   Plaintiff realleges all preceding and succeeding paragraphs as if fully set for the herein.

455.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are Montana residents.

456.   Old GM and GM are each a "person" under MONT. CODE ANN. § 30-14-102(6).

457.   Class members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

458.   The sale of the Defective Vehicles to Class members occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and both Old GM and GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

459.   The Montana Act makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103. Old GM and GM both participated in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce that violated the Montana Act, as described herein. GM is directly liable for its violations of law, and also has successor liability for the violations of Old GM, as set forth above.

460.   As detailed herein, both Companies knew of the safety ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

461.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

462.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

463.   Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

464.   Old GM's and GM's deceptive and unfair acts and practices significantly impact the public since the Defective Vehicles pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.  Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

465.   Whether or not a vehicle's ignition switch will malfunction, (a) causing the car's engine and electrical system to shut off, (b) disabling the power steering and power brakes and (c) causing the non-deployment of the vehicle's airbags in a crash, are facts that a reasonable consumer would consider important in selecting a

- 88 -

vehicle to purchase or lease. When Class members bought a Defective Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would feature a non-defective, safe ignition switch.

466. Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices. The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented the Class from making fully informed decisions about whether to lease, purchase, and/or retain the Defective Vehicles.

467. Class members suffered an ascertainable loss of money and property, as a result of Old GM's and GM's violations of the Montana Act detailed above. Class members currently own or lease Defective Vehicles that are defective and inherently unsafe. The defective ignition switches have caused the value of the Defective Vehicles to plummet.

468. Because Old GM's and GM's unlawful methods, acts, and practices have caused Class members to suffer an ascertainable loss of money and property, the Class seeks actual damages or $500, whichever is greater, discretionary treble damages, reasonable attorneys' fees, and any other equitable relief the Court considers necessary or proper, under MONT. CODE ANN. § 30-14-133.

## NEBRASKA

### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NCPA, NEB. REV. STAT. § 59-1601, *et seq.*)

469. Plaintiff incorporates by reference all preceding and succeeding paragraphs as if set forth fully herein.

010440-11  680594 V1

470.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members residing in Nebraska.

471.   Class members are "person[s]" under the Nebraska Consumer Protection Act ("NCPA"), NEB. REV. STAT. § 59-1601(1).

472.   Old GM's and GM's actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

473.   The Nebraska Consumer Protection Act ("NCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  The conduct of Old GM and GM as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Old GM's manufacture and sale of vehicles with a defective ignition switch, which Old GM and GM failed to adequately investigate, disclose and remedy, and both Companies' misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead. GM is directly liable for its violations of the NCPA, and also has successor liability for the unfair and deceptive acts and practices of Old GM.

474.   As described herein, both Companies knew of the safety ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

475.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

476.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

477.   Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and

- 90 -

1   reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn

2   Class members about these inherent dangers despite having a duty to do so.

3       478.   Old GM's and GM's deceptive and unfair acts and practices

4   significantly impact the public since the Defective Vehicles pose an unreasonable

5   risk of death or serious bodily injury to Class members, passengers, other motorists,

6   pedestrians, and the public at large, because they are susceptible to ignition switch

7   malfunction causing the car's engine and electrical system to shut off, disabling the

8   power steering and power brakes and causing the non-deployment of the vehicle's

9   airbags in the event of a crash.  Public interest is also affected because Class

10  members were injured in exactly the same way as millions of others purchasing

11  and/or leasing Defective Vehicles as a result of both Companies' generalized course

12  of deception.  All of the wrongful conduct alleged herein occurred, and continues to

13  occur, in the conduct of Old GM's and GM's businesses.

14      479.   Class members were injured in their property as a result of Old GM's

15  and GM's violation of the NCPA. Class members overpaid for their Defective

16  Vehicles and did not receive the benefit of their bargain, and their vehicles have

17  suffered a diminution in value.

18      480.   Because Old GM's and GM's conduct caused injury to Class members'

19  property through violations of the NCPA, the Class seeks recovery of actual

20  damages, as well as enhanced damages up to $1,000, and reasonable attorneys' fees,

21  under NEB. REV. STAT. § 59-1609.

## NEVADA

### VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT

### (NEV. REV. STAT. § 598.0903, *et seq.*)

25      481.   Plaintiff realleges and incorporates by reference all paragraphs as

26  though fully set forth herein.

27      482.   In the event the Court declines to certify a nationwide Class, Plaintiff

28  brings this claim solely on behalf of Class members who are Nevada residents.

- 91 -

483.   Old GM and GM are both "persons" as required under the statute.

484.   The Companies' actions as set forth above occurred in the course of business.

485.   The Nevada Deceptive Trade Practices Act, NEV. REV. STAT. § 598.0903, *et seq.*, prohibits unfair or deceptive consumer sales practices.

486.   NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person:  "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15.  Knowingly makes any other false representation in a transaction."

487.   In the course of the Companies' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the defective ignition switches in the Defective Vehicles as described above.  Accordingly, the Companies engaged in deceptive trade practices, including:  (1) making false representations as to the characteristics, uses, and benefits of the Defective Vehicles; (2) representing that the Defective Vehicles are of a particular standard and quality when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; and (4) knowingly made numerous other false representations as further described above.

488.   Old GM knowingly made false representations to consumers with the intent to induce consumers into purchasing Defective Vehicles.  Plaintiff and the Class reasonably relied on the Companies' false representations and were induced to

- 92 -

1   each purchase or lease a Defective Vehicle.  As a result of these unlawful trade

2   practices, Plaintiff and the Class have suffered ascertainable loss.

3        489.    Plaintiff and the Class suffered ascertainable loss caused by the

4   Companies' false representations and failure to disclose material information.

5   Plaintiff and the Class overpaid for their vehicles and did not receive the benefit of

6   their bargain.  The value of their Defective Vehicles has diminished now that the

7   safety issues have come to light, and Plaintiff and the Class own vehicles that are not

8   safe.

9        490.    Accordingly, Plaintiff and the Class seek their actual damages, and all

10  other appropriate and available remedies under the Nevada Deceptive Trade

11  Practices Act.

12                           **NEW HAMPSHIRE**

13           **VIOLATION OF N.H. CONSUMER PROTECTION ACT**

14             **(N.H. REV. STAT. ANN. § 358-A:1, *et seq.*)**

15       491.    Plaintiff realleges and incorporates by reference all paragraphs as

16  though fully set forth herein.

17       492.    In the event the Court declines to certify a nationwide Class, Plaintiff

18  brings this claim solely on behalf of Class members residing in New Hampshire.

19       493.    Old GM and GM are each a "person" under the New Hampshire

20  Consumer Protection Act ("CPA"), N.H. REV. STAT. § 358-A:1.

21       494.    Old GM's and GM's actions as set forth herein occurred in the conduct

22  of trade or commerce as defined under N.H. REV. STAT. § 358-A:1.

23       495.    The CPA prohibits a person, in the conduct of any trade or commerce,

24  from doing any of the following:  "(V) Representing that goods or services have …

25  characteristics, … uses, benefits, or quantities that they do not have;" "(VII)

26  Representing that goods or services are of a particular standard, quality, or grade, …

27  if they are of another;" and "(IX) Advertising goods or services with intent not to sell

28  them as advertised."  N.H. REV. STAT. § 358-A:2.  GM is directly liable for engaging

- 93 -

in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CPA, and also has successor liability for the violations of Old GM.

496.   In the course of Old GM's and GM's business, both Companies willfully failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles as described above.  Accordingly, both Companies engaged in unlawful trade practices, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard and quality when they are not; and (3) advertising the Defective Vehicles with the intent not to sell them as advertised.  Old GM and GM knew or should have known that their conduct violated the CPA.

497.   As alleged above, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of both Companies' unlawful advertising and representations as a whole.

498.   As described herein, both Companies knew of the safety ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

499.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

500.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

501.   Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and

- 94 -

1 reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn

2 Class members about these inherent dangers despite having a duty to do so.

3     502.   Whether or not a vehicle's ignition switch will malfunction, (a) causing

4 the car's engine and electrical system to shut off, (b) disabling the power steering

5 and power brakes, and (c) causing the non-deployment of the vehicle's airbags in a

6 crash, are facts that a reasonable consumer would consider important in selecting a

7 vehicle to purchase or lease.  When Class members bought a Defective Vehicle for

8 personal, family, or household purposes, they reasonably expected the vehicle would

9 feature a non-defective, safe ignition switch.

10     503.   Old GM's and GM's acts and practices were unfair and unconscionable,

11 because their acts and practices, including the manufacture and sale of vehicles with

12 an ignition switch defect, and the Companies' failure to adequately disclose the

13 defect to NHTSA and the Class and timely implement a remedy, offend established

14 public policy, and because the harm the Companies caused consumers greatly

15 outweighs any benefits associated with those practices.  The Companies' conduct has

16 also impaired competition within the automotive vehicles market and has prevented

17 the Class from making fully informed decisions about whether to lease, purchase,

18 and/or retain the Defective Vehicles.

19     504.   Class members were injured in their property as a result of Old GM's

20 and GM's violation of the NCPA.  Class members overpaid for their Defective

21 Vehicles and did not receive the benefit of their bargain, and their vehicles have

22 suffered a diminution in value.

23     505.   Because Old GM's and GM's willful conduct caused injury to Class

24 members' property through violations of the CPA, the Class seeks recovery of actual

25 damages or $1,000, whichever is greater, discretionary treble damages, and

26 reasonable attorneys' fees, under N.H. REV. STAT. § 358-A:10.

27

28

010440-11  680594 V1

**NEW JERSEY**

**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**

**(N.J. STAT. ANN. § 56:8-1, *et seq.*)**

506.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

507.    In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who reside in New Jersey.

508.    The New Jersey Consumer Fraud Act ("CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. STAT. ANN. § 56:8-2.

509.    Old GM was, and GM is, a person within the meaning of the CFA. N.J. STAT. ANN. § 56:8-1(d).

510.    In the course of the Companies' business, they knowingly failed to disclose and actively concealed the dangerous risks of the ignition switch defect in the Defective Vehicles as described above. This was an unlawful practice in that the Companies represented that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that the Defective Vehicles are of a particular standard and quality when they are not; and advertised the Defective Vehicles with the intent not to sell them as advertised. The Companies knew or should have known that their conduct violated the CFA.

511.    Old GM engaged in an unlawful practice under the CFA when it failed to disclose material information concerning the Defective Vehicles which it knew at the time of the sale. Old GM deliberately withheld the information about the

- 96 -

1    vehicles' propensity to shut down during ordinary driving conditions so that

2    consumers would purchase its vehicles and to induce the consumer to enter into a

3    transaction.

4          512.   The Companies' unlawful practices caused substantial injury to

5    consumers.

6          513.   The ignition switch defects, and the resultant propensity of the

7    Defective Vehicles to inadvertently shut down during normal driving conditions, was

8    material to Plaintiff and the Class.  Had Plaintiff and the Class known that their

9    Defective Vehicles had these serious safety defects, they would not have purchased

10    their Defective Vehicles.

11          514.   Plaintiff and the Class suffered ascertainable loss of money or property

12    caused by the Companies' unlawful practices.  Plaintiff and the Class overpaid for

13    their vehicles and did not receive the benefit of their bargain.  The value of their

14    Defective Vehicles has diminished now that the safety issues have come to light, and

15    Plaintiff and the Class own vehicles that are not safe.  GM exacerbated the

16    diminution of value, and therefore the harm to Plaintiff and the Class, by continuing

17    the campaign of deception as alleged above.

18          515.   Plaintiff and the Class are entitled to recover legal and/or equitable

19    relief, treble damages, and reasonable attorneys' fees pursuant to N.J. Stat. Ann.

20    § 56:8-19.

21          516.   Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff will mail a copy of the

22    complaint to New Jersey's Attorney General within ten (10) days of filing it with the

23    Court.

## NEW MEXICO

### VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT

### (N.M. Stat. Ann. §§ 57-12-1, *et seq.*)

27          517.   Plaintiff realleges and incorporates by reference all paragraphs as

28    though fully set forth herein.

- 97 -

518.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members residing in New Mexico.

519.   Old GM, GM, and Class members are "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. STAT. ANN. § 57-12-2.

520.   Old GM's and GM's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

521.   Old GM's and GM's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. STAT. ANN. § 57-12-2.  Specifically, by failing to disclose and actively concealing the dangerous ignition switch defect in Defective Vehicles, Old GM and GM engaged in deceptive business practices prohibited by the New Mexico UTPA, including:  (1) representing that the Defective Vehicles have characteristics and benefits, which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) using exaggeration as to a material fact and by doing so deceiving or tending to deceive; (4) failing to state a material fact and by doing so deceiving or tending to deceive; and (5) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not.  *See* N.M. STAT. ANN. § 57-12-2.  GM is directly liable for engaging in unfair or deceptive acts or practices in violation of the New Mexico UTPA, and also has successor liability for the violations of Old GM.

522.   As alleged herein, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of both Companies' unlawful advertising and representations as a whole.

523.   As described herein, both Companies knew of the safety ignition switch defect, while the Class was deceived by the Companies' omission into believing the

Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

524.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

525.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

526.   Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

527.   Old GM and GM took advantage of the lack of knowledge, ability, experience, and capacity of the Class members to a grossly unfair degree.  Old GM's and GM's actions resulted in a gross disparity between the value received and the price paid by the Class members.  Old GM's and GM's actions constitute unconscionable actions under § 57-12-2(E) of the New Mexico UTPA.

528.   Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented the Class from making fully informed decisions about whether to lease, purchase, and/or retain the Defective Vehicles.

529.   Class members were actually harmed as a result of Old GM's and GM's violation of the New Mexico UTPA.  Class members overpaid for their Defective

- 99 -

Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

530.   Class members also seek punitive damages against GM because both Old GM's and GM's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.  Old GM and GM fraudulently and willfully misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly promised Class members were safe.  Because Old GM's and GM's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith, it warrants punitive damages.

531.   Because Old GM's and GM's unconscionable, willful conduct caused actual harm to Class members, the Class seeks recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, under N.M. STAT. ANN. § 57-12-10.

**NEW YORK**

**DECEPTIVE ACTS OR PRACTICES**

**(N.Y. GEN. BUS. LAW § 349 AND 350)**

532.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

533.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members residing in New York.

534.   New York General Business Law ("G.B.L."), N.Y. GEN. BUS. LAW § 349, makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

535.   In the course of Old GM's and GM's business, they willfully failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles as described above.  Accordingly, Old GM made untrue, deceptive or

misleading representations of material facts and both Companies omitted and/or concealed material facts.  GM is directly liable for engaging in deceptive acts or practices in the conduct of any business, trade, or commerce in violation of the G.B.L., and also has successor liability for the violations of Old GM.

536.   As alleged herein, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of both Companies' unlawful advertising and representations as a whole.

537.   As described herein, both Companies knew of the safety ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

538.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

539.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

540.   Whether or not a vehicle's ignition switch will malfunction, (a) causing the car's engine and electrical system to shut off, (b) disabling the power steering and power brakes, and (c) causing the non-deployment of the vehicle's airbags in a crash, are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Class members bought a Defective Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would feature a non-defective, safe ignition switch.

541.   Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.  Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.

010440-11  680594 V1

542.   Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented the Class from making fully informed decisions about whether to lease, purchase, and/or retain the Defective Vehicles.

543.   Old GM's and GM's deceptive and unfair acts and practices significantly impact the public as actual consumers of the Defective Vehicles, which pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash. Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

544.   The Class suffered injury caused by Old GM's and GM's violation of the G.B.L. Class members overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

545.   Class members also seek punitive damages against GM because both Old GM's and GM's conduct evidences egregious conduct.  Old GM and GM egregiously misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting

- 102 -

1   a deadly flaw in the Defective Vehicles they repeatedly promised Class members

2   were safe.  Old GM's and GM's egregious conduct warrants punitive damages.

3       546.   Because Old GM's and GM's willful and knowing conduct caused

4   injury to Class members, the Class seeks recovery of actual damages or $50,

5   whichever is greater, discretionary treble damages up to $1,000, punitive damages,

6   and reasonable attorneys' fees, under N.Y. GEN. BUS. LAW § 349.

## NORTH DAKOTA

## VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT

### (N.D. CENT. CODE § 51-15-02)

10       547.   Plaintiff realleges and incorporates by reference all paragraphs as

11   though fully set forth herein.

12       548.   In the event the Court declines to certify a nationwide Class, Plaintiff

13   brings this claim solely on behalf of Class members who reside in North Dakota.

14       549.   The conduct of Old GM and GM as set forth herein constitutes

15   deceptive acts or practices, fraud, and misrepresentation, including, but not limited

16   to, Old GM's manufacture and sale of vehicles with defective ignition switches that

17   the Companies failed to adequately investigate, disclose and remedy, and the

18   Companies' misrepresentations and omissions regarding the safety and reliability of

19   the Defective Vehicles.

20       550.   Plaintiff and the Class were injured as a result of the Companies'

21   conduct.  Plaintiff and the Class overpaid for their Defective Vehicles and did not

22   receive the benefit of their bargain, and their vehicles have suffered a diminution in

23   value, which was exacerbated by GM's continuation of the campaign of deception as

24   described above.

25       551.   The Companies' conduct proximately caused injuries to Plaintiff and

26   the Class.

27       552.   Further, the Companies knowingly committed the conduct described

28   above, and thus, under N.D. CENT. CODE § 51-15-09, GM is liable to Plaintiff and

the Class for treble damages in amounts to be proven at trial, as well as attorneys'
fees, costs, and disbursements.

## OHIO

### COUNT I

### VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT

### (OHIO REV. CODE ANN. § 1345.01, *et seq.*)

553.    Plaintiff realleges and incorporates by reference all paragraphs as
though fully set forth herein.

554.    In the event the Court declines to certify a nationwide Class, Plaintiff
brings this claim solely on behalf of Class members who reside in Ohio.

555.    The Ohio Consumer Protection Act, OHIO REV. CODE § 1345.02,
prohibits unfair or deceptive acts or practices in connection with a consumer
transaction.  Specifically, the Act prohibits suppliers from representing that goods
have characteristics or uses or benefits which they do not have.  The Act also
prohibits suppliers from representing that their goods are of a particular quality or
grade they are not.

556.    Old GM and GM are "suppliers" as that term is defined in the Ohio
Consumer Protection Act, OHIO REV. CODE § 1345.01(C).

557.    Plaintiff and the Class are "consumers" as that term is defined in the
Ohio Consumer Protection Act, OHIO REV. CODE § 1345.01(D).

558.    The conduct of the Companies alleged above constitutes unfair and/or
deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02
because Old GM represented through advertising and other marketing
communications that the vehicles were new and free from defects and could be
driven safely in normal operation.  Instead, the vehicles were not of the standard,
quality or grade of new vehicles.

559.    The Companies' conduct caused Plaintiff's damages as alleged.

- 104 -

560.   Plaintiff and the Class specifically do not allege herein a claim for violation of OHIO REV. CODE § 1345.72.

561.   As a result of the foregoing wrongful conduct of the Companies, Plaintiff and the Class have been damaged in an amount to be proven at trial, including, but not limited to, actual and statutory damages, treble damages, court costs and reasonable attorneys' fees, pursuant to OHIO REV. CODE § 1345.09, *et seq.*

## COUNT II

## VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT
### (OHIO REV. CODE ANN. § 4165.01, *et seq.*)

562.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

563.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who reside in Ohio.

564.   OHIO REV. CODE § 4165.02(A) provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following:  "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; … (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … [or] (11) Advertises goods or services with intent not to sell them as advertised."

565.   Old GM and GM are "persons" within the meaning of OHIO REV. CODE § 4165.01(D).

010440-11  680594 V1

566.  The vehicles sold to Plaintiff was not of the particular sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities represented by Old GM.

567.  The vehicles sold to Plaintiff was not of the particular standard, quality, and/or grade represented by Old GM.

568.  The Companies made false or misleading statements of fact concerning the vehicles Plaintiff and the Class purchased – *i.e.*, that such vehicles were suitable for ordinary use – when the Companies, in fact, knew that they were defective and not suitable for ordinary use.

569.  These statements materially influenced Plaintiff's decision to purchase the Defective Vehicles, in that Companies' statements caused Plaintiff and the Class to purchase and retain vehicles that they otherwise would not have had they known of the dangerous defect.

570.  The Companies' deceptive trade practices caused Plaintiff's damages.

571.  The Companies' conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiff.

572.  As a result of the foregoing wrongful conduct of the Companies, Plaintiff and the Class have been damaged in an amount to be proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

## **OKLAHOMA**

### **VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT**
### **(OCPA, Okla. Stat. tit. 15 § 751, *et seq.*)**

573.   Plaintiff realleges and incorporates by reference each paragraph as if set forth fully herein.

574.  In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members residing in Oklahoma.

- 106 -

575.   Class members are "persons" under the Oklahoma Consumer Protection Act ("OCPA"), OKLA. STAT. TIT. 15 § 752.

576.   The sale of the Defective Vehicles to the Class members was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15 § 752, and Old GM's and GM's actions as set forth herein occurred in the conduct of trade or commerce.

577.   Old GM and GM engaged in deceptive and unfair trade practices prohibited by the OCPA, including, but not limited to, making a false or misleading representation to Class members, knowingly or with reason to know, as to the approval or certification of the Defective Vehicles; Making a false representation to Class members, knowingly or with reason to know, as to the characteristics or benefits of the Defective Vehicles; Representing to Class members, knowingly or with reason to know, that the Defective Vehicles were of a particular standard when they were of another; and Advertising to Class members, knowingly or with reason to know, the Defective Vehicles with intent not to sell them as advertised. *See* OKLA. STAT. TIT. 15, § 753.  GM is directly liable for engaging in deceptive and unfair trade practices prohibited by the OCPA, and also has successor liability for the violations of Old GM.

578.   As alleged herein, Old GM made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of both Companies' unlawful advertising and representations as a whole.

579.   Both Old GM and GM also failed to disclose and actively concealed the dangerous ignition switch defect in the Defective Vehicles.  Both Companies knew of the ignition switch defect, while the Class was deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

- 107 -

010440-11  680594 V1

580.   While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

581.   All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

582.   Both Companies nevertheless failed to warn Class members about these inherent dangers despite having a duty to do so.  Old GM's and GM's deceptive practices were likely to and did in fact deceive reasonable consumers, including Class members, about the true safety and reliability of the Defective Vehicles.

583.   Old GM's and GM's deceptive and unfair acts and practices significantly impact the public since the Defective Vehicles pose an unreasonable risk of death or serious bodily injury to Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to ignition switch malfunction causing the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's airbags in the event of a crash.  Public interest is also affected because Class members were injured in exactly the same way as millions of others purchasing and/or leasing Defective Vehicles as a result of both Companies' generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Old GM's and GM's businesses.

584.   The Class suffered injury-in-fact caused by Old GM's and GM's violation of the OCPA.  Class members overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

585.   Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established

- 108 -

1  public policy, and because the harm the Companies caused consumers greatly

2  outweighs any benefits associated with those practices.  The Companies' conduct has

3  also impaired competition within the automotive vehicles market and has prevented

4  Plaintiff and the Class from making fully informed decisions about whether to lease,

5  purchase and/or retain Defective Vehicles.

6      586.   Because Old GM's and GM's unconscionable conduct caused injury to

7  Class members, the Class seeks recovery of actual damages, discretionary damages

8  up to $2,000 per violation, and reasonable attorneys' fees, under OKLA. STAT. TIT. 15

9  § 761.1.

10  ### OREGON

11  **VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**

12  **(OR. REV. STAT. §§ 646.605, *et seq.*)**

13      587.   Plaintiff realleges and incorporates by reference all paragraphs as

14  though fully set forth herein.

15      588.   In the event the Court declines to certify a nationwide Class, Plaintiff

16  brings this claim solely on behalf of Oregon residents.

17      589.   The Oregon Unfair Trade Practices Act ("OUTPA") prohibits a person

18  from, in the course of the person's business, doing any of the following:

19  "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or

20  qualities that they do not have; (g) Represent[ing] that … goods … are of a particular

21  standard [or] quality … if they are of another; and (i) Advertis[ing] … goods or

22  services with intent not to provide them as advertised."  OR. REV. STAT.

23  § 646.608(1).

24      590.   Old GM was, and GM is, a person within the meaning of OR. REV.

25  STAT. § 646.605(4).

26      591.   The Defective Vehicles at issue are "goods" obtained primarily for

27  personal family or household purposes within the meaning of OR. REV. STAT.

28  § 646.605(6).

- 109 -

592.   In the course of the Companies' business, they willfully failed to disclose and actively concealed the dangerous risk posed by the defective ignition switches in the Defective Vehicles as described above.  Accordingly, the Companies engaged in unlawful trade practices, including representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles are of a particular standard and quality when they are not; and advertising Defective Vehicles with the intent not to sell them as advertised.  The Companies knew or should have known that their conduct violated the OUTPA.

593.   As a result of these unlawful trade practices, Plaintiff and the Class have suffered ascertainable loss.

594.   Old GM engaged in a deceptive trade practice when it failed to disclose material information concerning the Defective Vehicles which it knew at the time of the sale.  Old GM deliberately withheld the information about the vehicles' propensity to inadvertently shut down in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

595.   The propensity of the Defective Vehicles to inadvertently shut down during ordinary operation was material to Plaintiff and the Class.  Had Plaintiff and the Class known that their vehicles had these serious safety defects, they would not have purchased their Defective Vehicles.

596.   Plaintiff and the Class suffered ascertainable loss caused by the Companies' failure to disclose material information.  Plaintiff and the Class overpaid for their vehicles and did not receive the benefit of their bargain.  The value of their Defective Vehicles has diminished now that the safety issues have come to light, and Plaintiff and the Class own vehicles that are not safe.

597.   Plaintiff and the Class are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1).  Plaintiff and the Class

010440-11  680594 V1

1    are also entitled to punitive damages because the Companies engaged in conduct

2    amounting to a particularly aggravated, deliberate disregard of the rights of others.

3    598.    Pursuant to OR. REV. STAT. § 646.638(2), Plaintiff will mail a copy of

4    the complaint to Oregon's attorney general.

5    ### PENNSYLVANIA

6    **VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW**

7    **(73 P.S. § 201-1, *et seq.*)**

8
9    599.    Plaintiff realleges and incorporates by reference all paragraphs as

10   though fully set forth herein.

11   600.    In the event the Court declines to certify a nationwide Class, Plaintiff

12   brings this claim solely on behalf of Class members who reside in Pennsylvania.

13   601.    The conduct of Old GM and GM as set forth herein constitutes unfair or

14   deceptive acts or practices, including, but not limited to, Old GM's manufacture and

15   sale of vehicles with a serious ignition switch defect, which the Companies failed to

16   adequately investigate, disclose and remedy, and the Companies' misrepresentations

17   and omissions regarding the safety and reliability of the Defective Vehicles.

18   602.    The Companies' actions as set forth above occurred in the conduct of

19   trade or commerce.

20   603.    The Companies' actions impact the public interest because Plaintiff was

21   injured in exactly the same way as millions of others purchasing and/or leasing

22   Defective Vehicles as a result of the Companies' generalized course of deception.

23   All of the wrongful conduct alleged herein occurred, and continues to occur, in the

24   conduct of the Companies' business.

25   604.    Plaintiff and the Class suffered ascertainable loss as a result of the

26   Companies' conduct.  Plaintiff and the Class overpaid for their Defective Vehicles

27   and did not receive the benefit of their bargain, and their vehicles have suffered a

28   diminution in value.

- 111 -

605.   The Companies' conduct proximately caused injuries to Plaintiff and the Class.

606.   GM is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## RHODE ISLAND

### VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

### (R.I. GEN. LAWS § 6-13.1, *et seq.*)

607.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

608.   In the event the Court declines to certify a nationwide Class, Plaintiff and the Class bring this case solely on behalf of Class members who reside in Rhode Island.

609.   Plaintiff and the Class are persons who purchased or leased goods primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6-13.1-5.2(a).

610.   Rhode Island's Unfair Trade Practices and Consumer Protection Act ("UTPCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing that goods or services are of a particular standard, quality, or grade …, if they are of another"; "(ix) Advertising goods or services with intent not to sell them as advertised"; "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding"; "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer"; and "(xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect."  R.I. GEN. LAWS § 6-13.1-1(6).

010440-11 680594 V1

611.   In the course of the business of Old GM and GM, the Companies willfully failed to disclose and actively concealed the dangerous risks caused by the ignition switch defects in the Defective Vehicles as described above.  Accordingly, the Companies engaged in unlawful trade practices, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard and quality when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; and (4) otherwise engaging in conduct likely to deceive.

612.   The Companies' actions as set forth above occurred in the conduct of trade or commerce.

613.   Plaintiff and the Class suffered ascertainable loss of money as a result of the Companies' violation of the UTPCPA.

614.   Plaintiff and the Class were injured as a result of the Companies' conduct in that Plaintiff and the Class overpaid for their Defective Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of the Companies' misrepresentations and omissions.

615.   Accordingly, Plaintiff and the Class are entitled to recover the greater of actual damages or $200 pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a).

## SOUTH CAROLINA

## UNFAIR TRADE PRACTICES ACT

### (S.C. CODE ANN. § 39-5-10, *et seq.*)

616.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

617.   In the event the Court declines to certify a nationwide Class, Plaintiff bring this claim solely on behalf of Class members who are South Carolina residents.

618.   Old GM was, and GM is, a "person" under S.C. CODE ANN. § 39-5-10.

- 113 -

619.    The Companies both participated in unfair or deceptive acts or practices that violated the South Carolina Unfair Trade Practices Act (the "Act"), S.C. CODE ANN. § 39-5-10, *et seq.*, as described above and below.

620.    By failing to disclose and actively concealing the dangerous risk caused by the ignition switch defects in the Defective Vehicles, the Companies engaged in unfair or deceptive practices prohibited by the Act, S.C. CODE ANN. § 39-5-10, *et seq.*, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) representing that the subject of a transaction involving the Defective Vehicles has been supplied in accordance with a previous representation when it has not.

621.    As alleged above, the Companies made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of the Companies' unlawful advertising and representations as a whole.

622.    The Companies knew that ignition switch in the Defective Vehicles was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use of turning the vehicle off based solely on driver commands.  The Companies nevertheless failed to warn Plaintiff about these inherent dangers despite having a duty to do so.

623.    The Companies each owed Plaintiff and the Class a duty to disclose the defective nature of the Defective Vehicles, including the dangerous risks posed by the defective ignition switches, because the Companies:

a.    Possessed exclusive knowledge of the defects rendering the Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

b.      Intentionally concealed the hazardous situation with the Defective Vehicles in order to hide the life-threatening problems from Plaintiff; and/or

c.      Made incomplete representations about the safety and reliability of the Defective Vehicles, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

624.   Defective Vehicles equipped with defective ignition switches pose an unreasonable risk of death or serious bodily injury to Plaintiff, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to the inadvertent shut down of the vehicle and its electrical systems, including brakes, power steering and airbags.

625.   Whether or not a vehicle (a) shuts down only when commanded to do so and (b) maintains operable brakes, power steering and airbags during ordinary operation, are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Plaintiff and the Class bought a Defective Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would (a) shut down only when commanded to do so and (b) maintain operable brakes, power steering and airbags during ordinary operation.

626.   The Companies' unfair or deceptive trade practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the Defective Vehicles.

627.   As a result of their violations of the Act detailed above, the Companies caused actual damage to Plaintiff and the Class and, if not stopped, will continue to harm Plaintiff and the Class.  Plaintiff and the Class currently own or lease Defective Vehicles that are defective and inherently unsafe.  The ignition switch defects have caused the value of the Defective Vehicles to plummet.

628.   Plaintiff and the Class risk irreparable injury as a result of the Companies' acts and omissions in violation of the Act, and these violations present a continuing risk to Plaintiff and the Class as well as to the general public.

- 115 -

629.   Pursuant to S.C. CODE ANN. § 39-5-140, Plaintiff seeks monetary relief against GM to recover for their sustained losses.

630.   Plaintiff further alleges that GM's malicious and deliberate conduct warrants an assessment of punitive damages because GM carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff and the Class to cruel and unjust hardship as a result.  The Companies intentionally and willfully misrepresented the safety and reliability of the Defective Vehicles, deceived Plaintiff on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Plaintiff was safe.  GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

631.   Plaintiff further seeks an order enjoining GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Act.

## SOUTH DAKOTA

### VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES ACT

### (S.D. CODIFIED LAWS § 37-24-6)

632.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

633.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who reside in South Dakota.

634.   The conduct of Old GM and GM as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Old GM's manufacture and sale of vehicles with an ignition switch defect which the Companies failed to adequately investigate, disclose and remedy, and the

010440-11  680594 V1

1    Companies misrepresentations and omissions regarding the safety and reliability of

2    the Defective Vehicles.

3    635.    Plaintiff and the Class were injured as a result of the Companies'

4    conduct.  Plaintiff and the Class overpaid for their Defective Vehicles and did not

5    receive the benefit of their bargain, and their vehicles have suffered a diminution in

6    value.

7    636.    The Companies' conduct proximately caused the injuries to Plaintiff

8    and the Class.

9    637.    Under S.D. CODIFIED LAWS § 37-24-31, Plaintiff and the Class are

10    entitled to a recovery of their actual damages suffered as a result of GM's acts and

11    practices, including the acts and practices of Old GM for which GM has successor

12    liability

13    ## TENNESSEE

14    ## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

15    ### (TENN. CODE ANN. § 47-18-101, *et seq.*)

16    638.    Plaintiff realleges and incorporates by reference all paragraphs as

17    though fully set forth herein.

18    639.    In the event the Court declines to certify a nationwide Class, Plaintiff

19    brings this claim solely on behalf of Class members who reside in Tennessee.

20    640.    Old GM and GM misrepresented the safety of the Defective Vehicles

21    after learning of their defects with the intent that Plaintiff rely on such

22    representations in her decision regarding the purchase, lease and/or use of a

23    Defective Vehicle.

24    641.    Plaintiff did, in fact, rely on such representations in their decision

25    regarding the purchase, lease and/or use of the Defective Vehicles.

26    642.    Through these misleading and deceptive statements and false promises,

27    the Companies violated the Tennessee Consumer Protection Act.

28

- 117 -

643.   The Tennessee Consumer Protection Act applies to the Companies' transactions with Plaintiff and the Class because the Companies' deceptive scheme was carried out in Tennessee and affected Plaintiff and the Class.

644.   The Companies also failed to advise NHSTA and the public about what they knew about the ignition switch defects in the Defective Vehicles.

645.   Plaintiff relied on the Companies' silence as to known defects in connection with her decision regarding the purchase, lease and/or use of a Defective Vehicle.

646.   As a direct and proximate result of GM's deceptive conduct and violation of the Tennessee Consumer Protection Act, and the violations of Old GM for which GM has successor liability, Plaintiff and the Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to declaratory relief, and compensatory and equitable damages in an amount to be proven at trial.

## TEXAS

### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### (TEX. BUS. & COM. CODE §§ 17.41, *et seq.*)

647.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

648.   In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who reside in Texas.

649.   The conduct of Old GM and GM described above constitutes acts and omissions constitute false, misleading or deceptive acts or practices under the Texas Deceptive Trade Practices – Consumer Protection Act, TEX. BUS. & COM. CODE § 17.41, *et seq.* ("Texas DTPA").

650.   By failing to disclose and actively concealing the dangerous ignition switch defects in the Defective Vehicles, the Companies engaged in deceptive business practices prohibited by the Texas DTPA, including: (1) representing that

the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) failing to disclose information concerning the Defective Vehicles with the intent to induce consumers to purchase or lease the Defective Vehicles.

651.    As alleged above, the Companies made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of the Companies' unlawful advertising and representations as a whole.

652.    The Companies' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the Defective Vehicles.

653.    In purchasing, leasing and/or continuing to use their vehicles, Plaintiff and the Class relied on the misrepresentations and/or omissions of the Companies with respect of the safety and reliability of the vehicles.  The Companies' representations turned out not to be true because the vehicles can unexpectedly and dangerously shut down during ordinary driving conditions.  Had Plaintiff and the Class known this they would not have purchased or leased their Defective Vehicles and/or paid as much for them, and they would not have retained and continued to use them.

654.    GM is, therefore liable to Plaintiff and the Class for damages under §§ 17.50(a)(2) and 17.50(b) of the Texas DTPA, both because of its own violations and because of its successor liability for the violations of Old GM.   These same actions also constitute an unconscionable action or course of action under § 17.50(a)(3) of the Texas DTPA.

010440-11  680594 V1

655.   Plaintiff and the Class sustained damages as a result of the Companies'

unlawful acts and are, therefore, entitled to damages and other relief provided for

under § 17.50(b) of the Texas DTPA.  Because this conduct was committed

knowingly and/or intentionally, the Plaintiff and the Class are entitled to treble

damages.

656.   For those Plaintiff and the Class who wish to rescind their purchases,

they are entitled under § 17.50(b)(4) to rescission and other relief necessary to

restore any money or property that was acquired from them based on violations of

the Texas DTPA.

657.   Plaintiff and the Class also seek court costs and attorneys' fees under

§ 17.50(d) of the Texas DTPA.

## UTAH

### VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT

### (UCSPA, UTAH CODE ANN. § 13-11-1, *et seq.*)

658.   Plaintiff realleges and incorporates by reference all paragraphs as

though fully set forth herein.

659.   In the event the Court declines to certify a nationwide Class, Plaintiff

brings this claim solely on behalf of Class members who reside in Utah.

660.   Old GM and GM are each "suppliers" under the Utah Consumer Sales

Practices Act ("UCSPA"), UTAH CODE ANN. § 13-11-3.

661.   Class members are "persons" under UTAH CODE ANN. § 13-11-3.

662.   The sale of the Defective Vehicles to the Class members was a

"consumer transaction" within the meaning of UTAH CODE ANN. § 13-11-3.

663.   This UCSPA makes unlawful any "deceptive act or practice by a

supplier in connection with a consumer transaction" under UTAH CODE ANN. § 13-

11-4.  Specifically, "a supplier commits a deceptive act or practice if the supplier

knowingly or intentionally:  (a) indicates that the subject of a consumer transaction

has sponsorship, approval, performance characteristics, accessories, uses, or benefits,

- 120 -

1   if it has not" or "(b) indicates that the subject of a consumer transaction is of a

2   particular standard, quality, grade, style, or model, if it is not." UTAH CODE ANN. §

3   13-11-4. "An unconscionable act or practice by a supplier in connection with a

4   consumer transaction" also violates the UCSPA. UTAH CODE ANN. § 13-11-5. GM is

5   directly liable for engaging in deceptive acts and practices in connection with a

6   consumer transaction in violation of the UCSPA, and also has successor liability for

7   the deceptive acts and practices of Old GM.

8        664.   By misrepresenting the safety of the Defective Vehicles and omitting

9   the material fact of the ignition switch defect, Old GM and GM violated the UCSPA

10  by knowingly or intentionally indicating that the Defective Vehicles had

11  performance, characteristics, or benefits they did not, and that the Defective Vehicles

12  were of a particular standard, quality, or grade they were not.

13       665.   As alleged herein, Old GM made numerous material statements about

14  the safety and reliability of the Defective Vehicles that were either false or

15  misleading, and that Old GM and GM knew or had reason to know were false.

16       666.   Both Old GM and GM also failed to disclose and actively concealed the

17  dangerous ignition switch defect in the Defective Vehicles. Both Companies knew

18  of the ignition switch defect, while the Class was deceived by the Companies'

19  omission into believing the Defective Vehicles were safe, and the information could

20  not have reasonably been known by the consumer until the February and March 2014

21  recalls.

22       667.   While Old GM knew of the ignition switch defects by 2001, it

23  continued to design, manufacture, and market the Defective Vehicles until 2007.

24       668.   All the while, Old GM knew that the vehicles had an unreasonable

25  propensity to shut down during ordinary driving conditions, leading to an

26  unreasonable risk of serious bodily injury or death.

27       669.   Old GM's and GM's deceptive practices were likely to and did in fact

28  deceive reasonable consumers, including Class members, about the true safety and

- 121 -

1    reliability of the Defective Vehicles. Both Companies nevertheless failed to warn

2    Class members about these inherent dangers despite having a duty to do so.

3    670.    As a result of their violations of the UCSPA detailed above, Old GM

4    and GM caused ascertainable loss of money or property to Class members. Class

5    members currently own or lease Defective Vehicles that are defective and inherently

6    unsafe. Defective and dangerous ignition switches have caused the value of the

7    Defective Vehicles to plummet.

8    671.    Class members also seek punitive damages against GM because both

9    Old GM's and GM's conduct was willful, malicious, intentionally fraudulent, and

10   displayed reckless disregard for the rights of the Class members. Old GM and GM

11   willfully, maliciously, recklessly, and fraudulently misrepresented the safety and

12   reliability of the Defective Vehicles, deceived Class members on life-or-death

13   matters, and concealed material facts that only they knew, all to avoid the expense

14   and public relations nightmare of correcting a deadly flaw in the Defective Vehicles

15   they repeatedly promised Class members were safe. Because Old GM's and GM's

16   unlawful conduct was willful, malicious, intentionally fraudulent, and displayed

17   reckless disregard for the rights of the Class members, it warrants punitive damages.

18   672.    Class members suffered ascertainable loss as a result of Old GM's and

19   GM's knowing, intentional, and unconscionable violation of the UCSPA. The Class

20   therefore requests that each Class member recover either their actual damages or

21   $2000, whichever is greater, punitive damages, and reasonable attorneys' fees, under

22   UTAH CODE ANN. § 13-11-19(2),(5).

## VERMONT

### VIOLATION OF VERMONT CONSUMER FRAUD ACT

### (VT. STAT. ANN. TIT. 9, § 2451 *et seq.*)

26   673.    Plaintiff realleges and incorporates by reference all paragraphs as

27   though fully set forth herein.

28

- 122 -

674. In the event the Court declines to certify a nationwide Class, Plaintiff brings these claims solely on behalf of Class members who are Vermont residents.

675. The Vermont Consumer Fraud Act ("VCFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce.…" VT. STAT. ANN. TIT. 9, § 2453(a).

676. Old GM was, and GM is, a seller within the meaning of the VCFA. VT. STAT. ANN. TIT. 9, § 2451(a)(c).

677. In the course of the Companies' business, they willfully failed to disclose and actively concealed the dangerous risk of ignition switch defects in the Defective Vehicles as described above. This was a deceptive act in that the Companies represented that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that the Defective Vehicles are of a particular standard and quality when they are not; and advertised the Defective Vehicles with the intent not to sell them as advertised. The Companies knew or should have known that their conduct violated the VCFA.

678. Old GM engaged in a deceptive trade practice under the VCFA when it failed to disclose material information concerning the Defective Vehicles which was known to Old GM at the time of the sale. Old GM deliberately withheld the information about the vehicles' propensity for unintended shut down during normal driving conditions in order to ensure that consumers would purchase the Defective Vehicles and to induce the consumer to enter into a transaction.

679. The information withheld was material in that it was information that was important to consumers and likely to affect their choice of, or conduct regarding, the purchase of their cars. Old GM's withholding of this information was likely to mislead consumers acting reasonably under the circumstances. The propensity of the Defective Vehicles to inadvertently shut down during ordinary driving conditions was material to Plaintiff and the Class. Had Plaintiff and the Class known that their

- 123 -

1 Defective Vehicles had these serious safety defects, they would not have purchased

2 their Defective Vehicles.

3      680.   The Companies' conduct has caused or will cause a substantial injury

4 that is not reasonably avoided by consumers, and the harm is not outweighed by a

5 countervailing benefit to consumers or competition.

6      681.   Plaintiff and the Class have suffered injury and damages as a result of

7 the Companies' false or fraudulent representations and practices in violation of

8 § 2453, including the violations of GM itself and the violations of Old GM for which

9 GM has successor liability.  Plaintiff and the Class overpaid for their vehicles and

10 did not receive the benefit of their bargain.  The value of their Defective Vehicles

11 has diminished now that the safety issues have come to light, and Plaintiff and the

12 Class own vehicles that are not safe.

13      682.   Plaintiff and the Class are entitled to recover "appropriate equitable

14 relief" and "the amount of [their] damages, or the consideration or the value of the

15 consideration given by [them], reasonable attorney's fees, and exemplary damages

16 not exceeding three times the value of the consideration given by [them]" pursuant to

17 VT. STAT. ANN. TIT. 9, § 2461(b).

18 **VIRGINIA**

19 **VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT**

20 **(VCPA, VA. CODE ANN. 15 §§ 59.1-196, *et seq.*)**

21      683.   Plaintiff realleges and incorporates by reference all paragraphs as

22 though fully set forth herein.

23      684.   In the event the Court declines to certify a nationwide Class, this claim

24 is brought solely on behalf of Class members who are Virginia residents.

25      685.   Old GM and GM are each a "supplier" under VA. CODE ANN. § 59.1-198.

26      686.   The sale of the Defective Vehicles to the Class members was a

27 "consumer transaction" within the meaning of VA. CODE ANN. § 59.1-198. The

28 VCPA makes unlawful any "fraudulent acts or practices committed by a supplier in

1   connection with a consumer transaction" specifically "2. Misrepresenting the source,

2   sponsorship, approval, or certification of goods or services;" "5. Misrepresenting that

3   goods or services have certain quantities, characteristics, ingredients, uses, or

4   benefits;" "6. Misrepresenting that goods or services are of a particular standard,

5   quality, grade, style, or model;" "8. Advertising goods or services with intent not to

6   sell them as advertised;" and "14. Using any other deception, fraud, false pretense,

7   false promise, or misrepresentation in connection with a consumer transaction." VA.

8   CODE ANN. § 59.1-200. GM is directly liable for engaging in fraudulent acts and

9   practices in violation of the VCPA, and also has successor liability for the fraudulent

10   acts and practices of Old GM.

11   687.   Old GM violated the VCPA by "[m]isrepresenting the source,

12   sponsorship, approval, or certification of goods or services," "[m]isrepresenting that

13   goods or services have certain quantities, characteristics, ingredients, uses, or

14   benefits," "[m]isrepresenting that goods or services are of a particular standard,

15   quality, grade, style, or model," and "[a]dvertising goods or services with intent not

16   to sell them as advertised." VA. CODE ANN. § 59.1-200.

17   688.   Both Old GM and GM violated the VCPA by "[u]sing any other

18   deception, fraud, false pretense, false promise, or misrepresentation in connection

19   with a consumer transaction." VA. CODE ANN. § 59.1-200.

20   689.   As alleged above, both Companies knew of the ignition switch defect,

21   while the Class was deceived by the Companies' omission into believing the

22   Defective Vehicles were safe, and the information could not have reasonably been

23   known by the consumer until the February and March 2014 recalls.

24   690.   Old GM also violated the VCPA by representing that the Defective

25   Vehicles were safe such that reasonable people believed the represented or suggest

26   state of affairs to be true; namely, that the Defective vehicles were safe. By

27   representing the Defective Vehicles were safe, Old GM in effect misrepresented the

28   certification, characteristics, benefits, standard, quality, and grade of the Defective

- 125 -

Vehicles, while also advertising the Defective Vehicles with intent not to sell them as advertised."

691.    Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff and the Class from making fully informed decisions about whether to lease, purchase and/or retain the Defective Vehicles.

692.    While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007.

693.    All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

694.    As a result of their violations of the VCPA detailed above, Old GM and GM caused ascertainable loss of money or property to Class members. Class members currently own or lease Defective Vehicles that are defective and inherently unsafe. Defective and dangerous ignition switches have caused the value of the Defective Vehicles to plummet.

695.    Class members also seek punitive damages against GM because both Old GM's and GM's conduct was willfully and wantonly negligent and/or malicious. Old GM and GM willfully, wantonly, and maliciously misrepresented the safety and reliability of the Defective Vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles they repeatedly promised Class members were safe. Because Old GM's and GM's

010440-11  680594 V1

1    unlawful conduct was willfully and wantonly negligent and/or malicious, it warrants

2    punitive damages.

3         696.   Class members suffered loss as a result of Old GM's and GM's willful

4    violation of the VCPA. The Class therefore seeks treble damages or $1000,

5    whichever is greater, punitive damages, and reasonable attorneys' fees, under VA.

6    CODE ANN. § 59.1-204(A).

<u>**WASHINGTON**</u>

**VIOLATION OF THE CONSUMER PROTECTION ACT**

(**REV. CODE WASH. ANN. §§ 19.86.010, *et seq.***)

10         697.   Plaintiff realleges and incorporates by reference all paragraphs as

11    though fully set forth herein.

12         698.   In the event the Court declines to certify a nationwide Class, Plaintiff

13    brings this claim solely on behalf of Class members who are residents of the State of

14    Washington.

15         699.   The conduct of Old GM and GM as set forth herein constitutes unfair or

16    deceptive acts or practices, including, but not limited to, Old GM's manufacture and

17    sale of vehicles with an ignition switch defect which the Companies failed to

18    adequately investigate, disclose and remedy, and the Companies' misrepresentations

19    and omissions regarding the safety and reliability of the Defective Vehicles.

20         700.   The Companies' actions as set forth above occurred in the conduct of

21    trade or commerce.

22         701.   The Companies' actions impact the public interest because Plaintiff was

23    injured in exactly the same way as millions of others purchasing and/or leasing

24    Defective Vehicles as a result of the Companies' generalized course of deception.

25    All of the wrongful conduct alleged herein occurred, and continues to occur, in the

26    conduct of the Companies' business.

27         702.   Plaintiff and the Class were injured as a result of the Companies'

28    conduct.  Plaintiff and the Class overpaid for their Defective Vehicles and did not

- 127 -

receive the benefit of their bargain, and their vehicles have suffered a diminution in value, and that diminution has been exacerbated by GM's perpetuation of the campaign of deception begun by Old GM.

703.    The Companies' conduct proximately caused the injuries to Plaintiff and the Class.

704.    GM is liable to Plaintiff and the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

705.    Pursuant to WASH. REV. CODE. ANN. § 19.86.095, Plaintiff will serve the Washington Attorney General with a copy of this complaint as Plaintiff seeks injunctive relief.

## WEST VIRGINIA

## VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT
### (W. VA. CODE § 46A-1-101, *et seq.*)

706.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

707.    In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who are residents of West Virginia.

708.    Old GM was, and GM is, a "person" under W.VA. CODE § 46A-1-102(31).

709.    Plaintiff and the Class are "consumers," as defined by W.VA. CODE §§ and 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Defective Vehicles.

710.    Old GM and GM both participated in unfair or deceptive acts or practices that violated the Consumer Credit and Protection Act ("CCPA"), W. VA. CODE § 46A-1-101, *et seq.* as described above and below. GM is directly liable for its violations of law, and has successor liability for the violations of Old GM.

- 128 -

711.   By failing to disclose and actively concealing the dangerous risks posed by the defective ignition switches in the Defective Vehicles, the Companies engaged in deceptive business practices prohibited by the CCPA, W. VA. CODE § 46A-1-101, *et seq.*, including:  (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) representing that the subject of a transaction involving the Defective Vehicles has been supplied in accordance with a previous representation when it has not.

712.   As alleged above, the Companies made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of the Companies' unlawful advertising and representations as a whole.

713.   The Companies knew that the ignition switches in the Defective Vehicles were defectively designed or manufactured, would fail without warning, and was not suitable for their intended use of shutting down the vehicle only in response to driver commands.  The Companies nevertheless failed to warn Plaintiff and the Class about these inherent dangers despite having a duty to do so.

714.   The Companies each owed Plaintiff and the Class a duty to disclose the defective nature of the Defective Vehicles, including the dangerous risk the vehicles would unexpectedly shut down, rendering the vehicle, its power steering and brakes, and its airbags, inoperable, because the Companies:

    a.   Possessed exclusive knowledge of the defects rendering the Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

    b.   Intentionally concealed the hazardous situation with the Defective Vehicles; and/or

010440-11  680594 V1

c.    Made incomplete representations about the safety and reliability of the Defective Vehicles while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

715.    Defective Vehicles equipped with defective ignition switch pose an unreasonable risk of death or serious bodily injury to Plaintiff, passengers, other motorists, pedestrians, and the public at large.

716.    Whether or not a vehicle (a) shuts down only when commanded to do so and (b) suddenly loses power steering, breaks, and airbag, are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiff and the Class bought a Defective Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would (a) not shut down unless commanded to do so by the driver; and (b) maintain operable brakes, power steering and airbags.

717.    The Companies' unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the Defective Vehicles.

718.    As a result of its violations of the CCPA detailed above, the Companies caused ascertainable loss to Plaintiff and the Class and, if not stopped, will continue to harm Plaintiff.  Plaintiff and the Class currently own or lease Defective Vehicles that are defective and inherently unsafe.  The ignition switch defects have caused the value of the Defective Vehicles to plummet.

719.    Plaintiff and the Class risk irreparable injury as a result of GM's acts and omissions in violation of the CCPA, and these violations present a continuing risk to Plaintiff as well as to the general public, especially with respect to other Defective Vehicles, which Plaintiff believes exist and have not yet been recalled.

720.    Notice will be sent to GM  in compliance with W. VA. CODE § 46A-6-106 more than twenty days prior to the filing of an Amended Complaint.

- 130 -

721.    Pursuant to W. Va. Code § 46A-1-106, Plaintiff seeks monetary relief against GM  measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the CCPA for each Plaintiff and each member of the Class they seek to represent.

722.    Plaintiff also seeks punitive damages against GM because the Companies carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff to cruel and unjust hardship as a result. The Companies intentionally and willfully misrepresented the safety and reliability of the Defective Vehicles, deceived Plaintiff on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly promised Plaintiff was safe.  The Companies' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

723.    Plaintiff believes that the recalls and repairs instituted by GM have not been adequate.  Defective Vehicles still are defective and, Plaintiff believes, the recall has not been offered to all Defective Vehicle owners.

724.    Plaintiff further seeks an order enjoining GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W. Va. Code § 46A-5-101, *et seq.*, and any other just and proper relief available under the CCPA.

## WISCONSIN

### VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT

### (Wisc. Stat. § 110.18)

725.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

726.    In the event the Court declines to certify a nationwide Class, Plaintiff brings this claim solely on behalf of Class members who reside in Wisconsin.

- 131 -

727.   The Companies' above-described acts and omissions constitute false, misleading or deceptive acts or practices under the Wisconsin Deceptive Trade Practices Act § 110.18 ("Wisconsin DTPA").

728.   By failing to disclose and misrepresenting the risks posed by defective ignition switches in the Defective Vehicles, the Companies engaged in deceptive business practices prohibited by the Wisconsin DTPA, including: (1) representing that the Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving the Defective Vehicles confers or involves rights, remedies, and obligations which it does not; and (5) representing that the subject of a transaction involving the Defective Vehicles has been supplied in accordance with a previous representation when it has not.

729.   As alleged above, the Companies made numerous material statements about the safety and reliability of the Defective Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of the Companies' unlawful advertising and representations as a whole.

730.   The Companies' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the Defective Vehicles.

731.   In purchasing or leasing their vehicles, and in retaining and continuing to operate them, Plaintiff and the Class relied on the misrepresentations and/or omissions of the Companies with respect to the safety and reliability of the vehicles. The Companies' representations turned out not to be true because the vehicles can unexpectedly and dangerously shut down during ordinary driving conditions. Had the Plaintiff and the Class known this they would not have purchased or leased their

010440-11  680594 V1

1   Defective Vehicles and/or paid as much for them, and they would not have retained

2   and continued to operate them.

3   732.   Plaintiff and the Class sustained damages as a result of the Companies'

4   unlawful acts and are, therefore, entitled to damages and other relief provided for

5   under § 110.18(11)(b)(2) of the Wisconsin DTPA.  Because the Companies' conduct

6   was committed knowingly and/or intentionally, the Plaintiff and the Class are

7   entitled to treble damages.

8   733.   Plaintiff and the Class also seek court costs and attorneys' fees under

9   § 110.18(11)(b)(2) of the Wisconsin DTPA.

10   ## WYOMING

11   ## VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT

12   ### (WYO. STAT. §§ 45-12-105, *et seq.*)

13   734.   Plaintiff realleges and incorporates by reference all paragraphs as

14   though fully set forth herein.

15   735.   In the event the Court declines to certify a nationwide Class, Plaintiff

16   brings this claim solely on behalf of Class members who reside in Wyoming.

17   736.   Under the Wyoming Consumer Protection Act, a person engages in a

18   deceptive trade practice when, in the course of its business and in connection with a

19   consumer transaction it knowingly: "(iii) Represents that merchandise is of a

20   particular standard, grade, style or model, if it is not"; "(v) Represents that

21   merchandise has been supplied in accordance with a previous representation, if it has

22   not…"; "(viii) Represents that a consumer transaction involves a warranty, a

23   disclaimer of warranties, particular warranty terms, or other rights, remedies or

24   obligations if the representation is false"; "(x) Advertises merchandise with intent

25   not to sell it as advertised"; or  "(xv) Engages in unfair or deceptive acts or

26   practices." WYO. STAT. § 45-12-105.

27   737.   In the course of the Companies' business, they willfully failed to

28   disclose and actively concealed the dangerous risk posed by the ignition switch

- 133 -

defects in the Defective Vehicles as described above.  Accordingly, the Companies engaged in deceptive trade practices, including (among other things) representing that the Defective Vehicles are of a particular standard and grade, which they are not; advertising the Defective Vehicles with the intent not to sell them as advertised; and overall engaging in unfair and deceptive acts or practices.

738.   Old GM knowingly made false representations to consumers with the intent to induce consumers into purchasing Defective Vehicles.  Plaintiff and the Class reasonably relied on false representations by Old GM and were induced to purchase Defective Vehicles.  GM exacerbated the harm by continuing the campaign of deception begun by Old GM.  As a result of these unlawful trade practices, Plaintiff and the Class have suffered ascertainable loss.

739.   Plaintiff and the Class suffered ascertainable loss caused by the Companies' false representations and failure to disclose material information. Plaintiff and the Class overpaid for their vehicles and did not receive the benefit of their bargain.  The value of their Defective Vehicles has diminished now that the safety issues have come to light, and Plaintiff and the Class own vehicles that are not safe.

740.   Old GM was, and GM is, a "person" as required under the statute.

741.   The Companies' actions as set forth above occurred in the course of business and in connection with a consumer transaction.

742.   As required under the Wyoming Consumer Protection Act, a notice letter will be sent on behalf of the Class in connection with this case.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against GM and in favor of Plaintiff and the Class, and grant the following relief:

A.    Determine that this action may be maintained as a Class action and certify it as such under Rule 23(b)(3), or alternatively certify all issues and claims

- 134 -

that are appropriately certified; and designate and appoint Plaintiff as Class

Representative and Plaintiff's chosen counsel as Class Counsel;

B.    Declare, adjudge and decree the conduct of GM as alleged herein to be

unlawful, unfair and/or deceptive, and enjoin any such future conduct;

C.    Award Plaintiff and Class members actual, compensatory damages, or,

in the alternative, statutory damages, as proven at trial;

D.    Award Plaintiff and the Class members exemplary damages in such

amount as proven;

E.    Award damages and other remedies as allowed by the laws of the States

as alleged in the alternate statewide consumer counts;

F.    Award Plaintiff and the Class members their reasonable attorneys' fees,

costs, and pre-judgment and post-judgment interest;

G.    Grant an injunction ordering GM to implement an effective remedy for

all vehicles with defective ignition switches, including those not yet subject to recall;

and

H.    Award Plaintiff and the Class members such other further and different

relief as the case may require or as determined to be just, equitable, and proper by

this Court.

### JURY TRIAL DEMAND

Plaintiff requests a trial by jury on the legal claims, as set forth herein.

DATED:  March 26, 2014          HAGENS BERMAN SOBOL SHAPIRO LLP

By:_____/s/ Elaine T. Byszewski_____
    Elaine T. Byszewski, Cal. Bar No. 222304
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
E-mail: elaine@hbsslaw.com

010440-11  680594 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve W. Berman (*pro hac vice pending*)
Andrew M. Volk (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
E-mail:  steve@hbsslaw.com
E-mail:  andrew@hbsslaw.com

Robert B. Carey (*pro hac vice pending*)
Michella A. Kras (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
E-mail: rob@hbsslaw.com
E-mail:  michellak@hbsslaw.com

Mark P. Robinson, Jr. (SBN 054426)
Kevin F. Calcagnie (SBN 108994)
Scot D. Wilson (SBN 223367)
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
19 Corporate Plaza
Newport Beach, CA  92660
Tel.: (949) 720-1288
Fax: (949) 720-1292
E-mail:  mrobinson@rcrsd.com

Jon C. Cuneo (*pro hac vice pending*)
CUNEO GILBERT & LADUCA LLP
507 C Street NE
Washington, DC 20002
Tel.: (202) 587-5065
Fax: (202) 789-1813
E-mail:  JonC@cuneolaw.com

*Attorneys for Plaintiff*

010440-11  680594 V1

Steve W. Berman (*pro hac vice pending*)
Andrew M. Volk (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone (206) 623-7292
Facsimile (206) 623-0594
E-mail: steve@hbsslaw.com
E-mail: andrew@hbsslaw.com

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SYLVIA BENTON, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | CLASS ACTION |
| v. | BENTON DECLARATION RE: CLRA VENUE |
| GENERAL MOTORS COMPANY, | |
| Defendant. | |

I, Sylvia Benton, hereby declare and state as follows:

1.    I have personal knowledge of the facts stated herein and, if necessary, could competently testify thereto.

2.    I am a Plaintiff in the above-entitled action.

3.    Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code § 1780(a).

4.    This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a county that is a proper place for trial of this action because Defendants do business in this District (the Central District of California) and throughout the State of California.

5.    The Complaint filed in this matter contains causes of action for violations of the Consumers Legal Remedies Act against General Motors, LLC ("GM"), a Delaware limited liability company doing business nationwide, including California.

6.    I own a 2005 Chevy Cobalt which I purchased used in Barstow, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing Declaration is true and correct, and was executed by me in the city of Barstow, California, on March 19, 2014.

By: *Sylvia Benton*
Sylvia Benton

- 1 -