# <u>EXHIBIT 3</u>

Mark P. Robinson, Jr., Esq., State Bar No. 054426
Scot D. Wilson, Esq., State Bar No. 223367
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
19 Corporate Plaza
Newport Beach, CA 92660
Tel.: (949) 720-1288/Fax: (949) 720-1292
mrobinson@rcrsd.com
swilson@rcrsd.com

Steve W. Berman (*pro hac vice pending*)
Elaine T. Byszewski, State Bar No. 222304
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292/Fax: (206) 623-0594
E-mail: steve@hbsslaw.com
E-mail: elaine@hbsslaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| NICOLE HEULER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No.: **SACV14-00492 AG (RNBx)**<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nicole Heuler, individually and as class representative on behalf of all similarly situated persons and the general public, brings this action against Defendant General Motors LLC ("Defendant" or "GM") and alleges as follows:

## I.    INTRODUCTION

1.    This case involves an egregious and unprecedented failure to disclose and to conceal known dangerous safety defects in millions of GM vehicles.

2.    An auto manufacturer should never make profits more important than safety and should never conceal defects that exist in its vehicles from consumers or the public. GM's Vehicle Safety Chief, Jeff Boyer has stated that: "Nothing is more important than the safety of our customers in the vehicles they drive." Yet, GM failed to live up to this commitment.

3.    The first priority of a car manufacturer should be to ensure that its vehicles are safe, and particularly that its vehicles have operable ignition systems, airbags, seat belts, power-steering, power brakes and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision. In addition, a car manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely, and its safety critical systems (such as engine control, braking and airbag systems) work properly until such time as the driver shuts the vehicle down. Moreover, a manufacturer that is aware of dangerous design defects that cause its vehicles to shut down during operation or its airbags not to deploy must promptly disclose and remedy such defects.

4. Since 2002, GM has sold millions of vehicles throughout the United States and worldwide that have a safety defect in which the vehicle's ignition switch can unintentionally move from the "run" position to the "accessory" or "off" position resulting in a loss of power, loss of vehicle speed control, loss of braking, and non-deployment of the vehicle's airbags.

5. GM began installing these ignition switch systems in models from 2003 through at least 2011 and possibly later. GM promised that these new systems would operate safely and reliably. This promise turned out to be false in several material respects. In reality, GM concealed and did not fix a serious quality and safety problem plaguing its vehicles.

6. Worse yet, the defects in GM's vehicle could have been easily avoided.

7. From 2004 to the present, GM received reports of crashes and injuries that put GM on notice of the serious safety issues presented by its ignition switch system. GM knew about the problems before the subject vehicles were even sold.

8. Yet, despite the dangerous nature of this defect and its effects on safety critical systems, GM concealed its existence and failed to repair the problem.

9. Despite notice of the defect in its vehicles, GM did not disclose to consumers that its vehicles – which GM for years had advertised as "safe" and "reliable" – were in fact not as safe or reliable.

10. GM's CEO, Mary Barra has admitted that: **"Something went wrong with our process in this instance, and terrible things happened,"** in a video message. Terrible things happened because GM lost its way. It cut corners and avoided addressing safety defects in its vehicles because its sole focus was on cutting costs, avoiding damage to its reputation, and maximizing profit.

11.     This case arises from GM's breach of its obligations and duties, including GM's failure to disclose that, as a result of defective ignition switch design, millions of GM vehicles had the propensity to shut down during normal driving conditions and created an extreme and unreasonable risk of accident, serious bodily harm, and death.

12.     GM's predecessor, General Motors Corporation ("Old GM") also violated these rules by designing and marketing vehicles with defective ignition switches, and then by failing to disclose that defect even after it became aware that the ignition switch defect was causing fatal accidents.  In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects.

13.     The defective ignition switches were manufactured by Delphi Automotive PLC ("Delphi").  Once a subsidiary of Old GM, Delphi spun-off from Old GM in 1999, and was an independent publicly held corporation.

14.     Plaintiff alleges based on information and belief that Delphi knew that its ignition switches were defective, but nevertheless continued to manufacture and sell the defective ignition switch systems which it knew would be used in the vehicles of Plaintiffs and the Class.

15.     Plaintiff brings this class action on behalf of all persons in the United States who own or lease one or more of the following GM vehicles: all model years of the Chevrolet Cobalt, Chevrolet HHR, Saturn Ion, Saturn Sky, Pontiac G5 and Pontiac Solstice made from 2003-2011 (together the "Defective Vehicles").

16.     Plaintiff believes that there may be other GM vehicles which suffer from the same or substantially similar safety defects relating to the airbag and ignition switch defects as the Defective Vehicles identified above.  Accordingly, Plaintiff will supplement the list of Defective Vehicles to include additional GM vehicles that have defective ignition switches, which result in a loss of vehicle speed control, loss of braking control, and seat belt pretensioner problems and airbag non-deployment

17.     Plaintiff also brings this action on behalf of a subclass of all California residents who own or lease one or more Defective Vehicles.

18.     The Defective Vehicles are defective and dangerous for multiple reasons, including the following (collectively the "ignition switch defects"):

        a.     The ignition switches can inadvertently shut off the engine and vehicle electrical system during normal driving conditions;

        b.     When the engine and the electrical system shut down, the power steering and power brakes also shut down, creating a serious risk of accident;

        c.     When the electrical system shuts down, the vehicle's air bags are and seat belt pretensioners are disabled, creating a serious risk of serious bodily harm or death if an accident occurs.

19.     The ignition switch defects make the Defective Vehicles unreasonably dangerous and unsafe.  Because of the defects, the Defective Vehicles are likely to be involved in accidents, and, accidents occur, there is an unreasonable and extreme risk of serious bodily harm or death to the vehicle's occupants.

20.     GM admits to at least twelve (12) deaths as a result of the ignition switch defects, but the actual number is believed to be much higher.

21.     The ignition switch defects present a significant and unreasonable safety risk exposing Defective Vehicle owners and their passengers to a risk of serious injury or death.

22.     For many years, GM has known of the ignition switch defects that exist in millions of Defective Vehicles sold in the United States.  But, to protect its profits and maximize sales, GM concealed the defects and their tragic consequences and allowed unsuspecting vehicle owners to continue driving highly dangerous vehicles.

23.     Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act"),[1] and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defects the defects.[2]   If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers and dealers of the defect and must remedy the defect.[3]

24.     In addition to the TREAD Act and other laws, GM violated the Michigan Consumer Protection Act ("MCPA") and fraudulently concealed the deadly ignition switch defects to consumers, owners and lessors of the Defective Vehicles.  GM also violated the TREAD Act by failing to timely inform NHTSA of the ignition switch defects and allowed cars to remain on the road with these defects.  GM's violations of the TREAD Act also constitute violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.

---

[1] 49 U.S.C. §§ 30101-30170.
[2] 49 U.S.C. § 30118(c)(1), (2).
[3] 49 U.S.C. § 30118(b)(2)(A), (B).

25.    Plaintiff and the Class have been damaged by GM's misrepresentations, concealment and non-disclosure of the ignition switch defects in the Defective Vehicles, as they are now holding highly dangerous vehicles whose value has greatly diminished because of GM's failure to timely disclose the serious defect.

26.    Plaintiff and the Class have also been harmed and damaged by the acts and omissions of Old GM for which GM is liable through successor liability because the Defective Vehicles they purchased are worth less than they would have been without the ignition switch defects.

27.    Plaintiff and the Class paid more for the Defective Vehicles than they would have had they known of the ignition defects—if they would have even purchased the Defective Vehicles at all.

## II.    JURISDICTION AND VENUE

28.    This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiff and other Class members are citizens of a different state than Defendant.

29.    This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction.  This Court has personal jurisdiction over GM because GM conducts substantial business in this District, and some of the actions giving rise to the complaint took place in this District.

30.     Venue is proper in this District under 28 U.S.C. § 1391 because GM, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.  Additionally, GM transacts business within the District, and some of the events establishing the claims arose in this District.  Venue is also proper in this Court because Plaintiff resides within the Southern Division of the Central District of California.

### III.   PARTIES

31.     Plaintiff and Class Representative Nicole Heuler is a citizen and resident of Anaheim, California.  Plaintiff owns a 2006 Chevy Cobalt vehicle. Plaintiff has standing assert the claims alleged herein and have been harmed as a result of Defendants' conduct.  Plaintiff chose Chevy Cobalt in part because she wanted a safely designed and manufactured vehicle.  Plaintiff saw advertisements for Old GM vehicles before she purchased the Cobalt, and, although she do not recall the details of many of the advertisements, she does recall that safety and quality were consistent themes across the advertisements that they saw.  These representations about safety and quality influenced Plaintiff's decision to purchase the Cobalt. Plaintiff did not learn of the ignition switch defects until about March 2014.  Had GM disclosed and not concealed the ignition switch defects, Plaintiff would not have purchased her Cobalt vehicle, or would have paid less than she did, and would not have retained the vehicle.

32.     Defendant General Motors LLC ("GM") is a Delaware corporation with

its principal place of business located at 300 Renaissance Center, Detroit, Michigan.

GM was incorporated in 2009 and on July 10, 2009 acquired substantially all assets

and assumed certain liabilities of General Motors Corporation ("Old GM.") through

a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.

33.     Among the liabilities and obligations expressly retained by GM after the

bankruptcy are the following:

> From and after the Closing, Purchaser [GM] shall comply with the
> certification, reporting and recall requirements of the National Traffic
> and Motor Vehicle Act, the Transportation Recall Enhancement,
> Accountability and Documentation Act, the Clean Air Act, the
> California Health and Safety Code, and similar laws, in each case, to the
> extent applicable in respect of vehicles and vehicle parts manufactured
> or distributed by [Old GM].

34.     GM also expressly assumed:

> [A]ll Liabilities arising under express written warranties of [Old GM]
> that are specifically identified as warranties and delivered in connection
> with the sale of new, certified used or pre-owned vehicles or new or
> remanufactured motor vehicle parts and equipment (including service
> parts, accessories, engines and transmissions) manufactured or sold by
> [Old GM] or Purchaser prior to or after the Closing and (B) all
> obligations under Lemon Laws.

35.     Because GM acquired and operated Old GM and ran it as a continuing

business enterprise, and because GM was aware from its inception of the ignition

switch defects in the Defective Vehicles, GM is liable through successor liability for

the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint.

### IV.   FACTUAL ALLEGATIONS

**A.**   **The Ignition Switch Defects in the Defective Vehicles**

36.   Given the importance that a vehicle and its electrical operating systems remain operational during ordinary driving conditions, it is imperative that a vehicle manufacturer ensure that its vehicles remain operational from the time the driver starts the vehicle until the driver intentionally shuts down the vehicle.  With respect to the Defective Vehicles, GM has failed to do so.

37.   The ignition switch defects can cause the vehicle's engine and electrical system to shut off, disabling the power steering and power brakes and causing the non-deployment of the vehicle's air bags in the event of a crash.

38.   The Defective Vehicles are therefore unreasonably prone to be involved in accidents and those accidents are unreasonably likely to result in serious bodily harm or death to the drivers and passengers of the Defective Vehicles, as well as to other vehicle operators and pedestrians.

**B.**   **GM knew of the ignition switch defects for years, but concealed the defects from Plaintiff and the Class**

39.   Alarmingly, both Old GM and GM knew of the deadly ignition switch defects and their dangerous consequences for many years, but concealed their knowledge from Defective Vehicle owners.

40.   For example, on July 29, 2005, Amber Marie Rose, age 16, died after her 2005 Chevrolet Cobalt crashed and the air bag failed to deploy.  Ms. Rose's death was the first of the hundreds deaths and injuries attributable to the ignition switch defects.  Ms. Rose's death was an early warning in what would become a decade-long failure by Old GM and GM to address the ignition switch problem.

41.     Another incident involved sixteen year-old Megan Phillips.  Ms. Phillips was driving a 2005 Chevrolet Cobalt that crashed in Wisconsin in 2006, killing two of her teenage friends when the car left the road and hit a clump of trees. NHTSA investigators found that the key had moved from the "run" to the "accessory" position, turning off the engine and disabling the vehicle's airbags before impact.  According to Ms. Phillips, the families of her deceased friends blamed her and refused to speak with her; only after the recall was finally announced, they began communicating.  As she stated, "I don't understand why they would wait 10 years to say something.  And I want to understand it but I never will."[4]

42.     Rather than publicly admitting the dangerous safety defects in its vehicles, GM attempted to attribute these and other incidents to "driver error." Every year from 2005 to 2012, first Old GM and then GM received reports of deaths in Cobalts involving steering and/or airbag failures, including:

- 2005: 26 Cobalt Death and Injury Incidents, including 1 death citing Airbag as component involved.

- 2006: 69 Cobalt Death and Injury Incidents, including 2 deaths citing Airbag as component involved and 4 deaths citing Unknown component.

- 2007: 87 Cobalt Death and Injury Incidents, including 3 deaths citing Airbag as component involved.

- 2008: 106 Cobalt Death and Injury Incidents, including 1 death citing Airbag as component involved and 2 deaths citing Unknown component.

---

[4] "*Owners of Recalled GM Cars Feel Angry, Vindicated*," Reuters (Mar. 17, 2014).

- 2009: 133 Cobalt Death and Injury Incidents, including 1 death citing Airbag as component involved, 1 death citing Service Brake as component involved, 1 death citing Steering as component involved, and 2 deaths citing Unknown component.

- 2010: 400 Cobalt Death and Injury Incidents, including 2 deaths citing Airbag as component involved, 12 deaths citing steering as component involved, and 1 death citing Unknown component.

- 2011: 187 Cobalt Death and Injury Incidents, including 2 deaths citing Airbag as component involved, 2 deaths citing Steering as component involved, and 1 Unknown component.

- 2012: 157 Cobalt Death and Injury Incidents, including 5 deaths citing Airbag as component involved, and 4 deaths citing Steering as component involved.

43.    GM now admits that Old GM learned of the ignition switch defects as early as 2001.  During the pre-production development of the Saturn Ion, Old GM engineers learned that the ignition could inadvertently move from the "Run" position to the "Accessory" or "Off" position. Old GM claimed that a switch design change "had resolved the problem."[5]

44.    In 2003, an internal report documented an instance in which the service technician observed a stall while driving. The service technician noted that the weight of several keys on the key ring had worn out the ignition switch. It was replaced and the matter was closed.[6]

---

[5] *"G.M. Reveals It Was Told of Ignition Defect in '01,"* D. Ivory, New York Times (Mar. 12, 2014).
[6] *Id.*

45.     According to GM's latest chronology submitted to NHTSA pursuant to 49 CFR § 573.6, Old GM engineers encountered the problem again in 2004 during test drives of the Chevy Cobalt, before it went to market.

46.     Old GM opened an engineering inquiry, known as a "Problem Resolution Tracking System inquiry" ("PRTS"), to investigate the issue.  According to the chronology provided to NHTSA by GM, engineers pinpointed the problem and were "able to replicate this phenomenon during test drives."

47.     According to GM, the PRTS engineers "believed that low key cylinder torque effort was an issue and considered a number of potential solutions."   But after considering cost and the amount of time it would take to develop a fix, Old GM did nothing.

48.     As soon the 2005 Cobalt hit the market, Old GM almost immediately started getting complaints about sudden loss of power incidents, "including instances in which the key moved out of the 'run' position when a driver inadvertently contacted the key or steering column."[7]  Old GM opened additional PRTS inquires.

49.     In another PRTS opened in May 2005, Old GM engineers again assessed the problem and proposed that GM re-design the key head from a "slotted" to a "hole" configuration.  After initially approving the proposed fix, Old GM reversed course and again declined to implement a fix.[8]

---

[7] March 11, 2014 Chronology Re: Recall of 2006 Chevron HHR and Pontiac Solstice, 2003-2007 Saturn Ion, and 2007 Saturn Sky Vehicls, at 1.
[8] *Id.*

50.     Instead, in October 2005, Old GM simply issued a Technical Service Bulletin ("TSB") advising service technicians and GM dealers that the inadvertent turning of the key cylinder was causing the loss of the car's electrical system.

51.     Rather than disclosing the true nature of the defects and correcting them, under the TSB, Old GM gave customers who brought in their vehicle complaining about the issue "an insert for the key ring so that it goes from a 'slot' design to a hole design" to prevent the key ring from moving up and down in the slot. "[T]he previous key ring" was "replaced with a smaller" one; this change was supposedly able to keep the keys from hanging as low as they did in the past.[9] According to GM's records, Old GM dealers provided key inserts to 474 customers who brought their vehicles into dealers for service.[10]

52.     Yet there was no recall.   And, not surprisingly, Old GM continued to get complaints.

53.     In 2006, Old GM approved a design change for the Cobalt's ignition switch supplied by Delphi.  The new design included "the use of a new detent plunger and spring that increased torque force in the ignition switch."  But the new design was not produced until the 2007 model year.[11]

54.     In 2007, NHTSA investigators met with Old GM to discuss its air bags, and informed Old GM of the July 2005 frontal and fatal crash involving Amber Marie Rose.

---

[9] *Id.* at 1-2.
[10] *Id.* at 3.
[11] *Id.* at 2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

55.     As alleged above, the airbags in Ms. Rose's 2005 Cobalt did not deploy. Data retrieved from her vehicle's diagnostic system indicated that the ignition was in the "accessory" position.  Old GM investigated and tracked similar incidents.

56.     By the end of 2007, by GM's own admission, Old GM knew of 10 frontal collisions in which the airbag did not deploy.[12]  Plaintiff allege that Old GM actually knew of many other similar incidents involving the ignition switch defects.

57.     For the next six years, GM continued to get complaints and continued to investigate frontal crashes in which the airbags did not deploy.

58.     However, according to GM, it was not until 2011 and 2012 that GM's examinations of switches from vehicles that had experienced crashes revealed significant design differences in the torque performance of ignition switches from the 2005 Cobalts and those from the 2010 model year, the last year of the Cobalt's production.

59.     GM responded by blaming the supplier for instituting those changes in the switch design.[13]

60.     In 2014, after numerous assessments and facing increasing scrutiny of its conduct and the defects in its vehicles, GM finally announced a recall for the Cobalt and G5 vehicles.[14]

---

[12] Feb. 24, 2014 Attachment B-573.6(c)(6) at 2.
[13] *Id.* at 3-4.
[14] *Id.* at 4-5.

**C.**   **GM waited until 2014 to finally orders a recall of the Defective Vehicles.**

61.   After analysis by GM's Field Performance Review Committee and the Executive Action Decision Committee ("EFADC"), the EFADC finally ordered a recall of *some* of the Defective Vehicles on January 31, 2014.

62.   Initially, GM's EFADC ordered a recall of only the Chevrolet Cobalt and Pontiac G5 for model years 2005-2007.

63.   After additional analysis, the EFADC expanded the recall on February 24, 2014 to include the Chevrolet HHR and Pontiac Solstice for model years 2006 and 2007, the Saturn Ion for model years 2003-2007, and the Saturn Sky for model year 2007.  Later, at the end of March 2014, the recall was belatedly expanded to include an additional million vehicles.

64.   GM provided dealers with notice of the recall on February 26, 2014, and March 4, 2014, and mailed letters to current owners on March 10 and March 11, 2014.

65.   According to GM, "the dealers are to replace the ignition switch,"[15] presumably with one with sufficient torque to prevent the inadvertent shut down of the ignition, power steering, power brakes, and airbags.

66.   In a video message addressed to GM employees on March 17, 2014, CEO Mary Barra admitted that the Company had made mistakes and need to change its processes.

---

[15] *Id.* at 6.

67.     According to Ms. Barra, "Something went terribly wrong in our processes in this instance, and terrible things happened." Barra continued to promise that "We will be better because of this tragic situation if we seize this opportunity." [16]

68.     GM now faces an investigation by NHTSA, hearings in both the U.S. House and Senate, and a probe by the Department of Justice.

69.     While GM has now appointed a new Vehicle Safety Chief, on information and belief at least 2.6 million Defective Vehicles remain on the road to this day; and, on information and belief, other vehicles not yet acknowledged by GM also have the deadly ignition switch defects.

**D.     Old GM Promoted the Defective Vehicles as Safe and Reliable**

70.     On information and belief, in marketing and advertising materials, Old GM consistently promoted the Defective Vehicles as safe and reliable.

71.     For example, one Cobalt add promise that "Side curtain airbags coupled with OnStar makes every journey the safest possible to assure that you and your occupants will stay safe at all times."

72.     An ad for the 2006 Solstice promises that the vehicle "[b]rings power and defines performance."

73.     A 2003 television spot for the Saturn vehicle closed with the tagline "Specifically engineered for whatever is next." Another 2003 spot closed with the tagline "Saturn. People first."

---

[16] *"Something Went "Very Wrong" at G.M., Chief Says."* N.Y. Times (Mar. 18, 2014).

74.  A 2001 print ad touting the launch of the Saturn focused on safety:

> Need is where you begin.  In cars, it's about things like reliability, durability  and, of course, safety.  That's where we started when developing our new line of cars.  And it wasn't until we were satisfied that we added things…

75.  Old GM made these representations to boost vehicle sales and maximize profits while knowing that the ignition switches in the Defective Vehicles were defective.

76.  Throughout the relevant period, Old GM possessed vastly superior knowledge and information to that of consumers – if not exclusive information – about the design and function of the ignition switches in the Defective Vehicles and the existence of the defects in those vehicles.

77.  Old GM never informed consumers about the ignition switch defects.

**E.** **The ignition switch defects have harmed Plaintiff and the Class**

78.  The ignition switch defects have caused damage to Plaintiff and the Class.

79.  A vehicle purchased, leased or retained with a serious safety defect is worth less than the equivalent vehicle leased, purchased or retained without the defect.

80.  A vehicle purchased, leased or retained under the reasonable assumption that it is safe is worth more than a vehicle known to be subject to the unreasonable risk of catastrophic accident because of the ignition switch defects.

81.     Purchasers and lessees paid more for the Defective Vehicles, through a higher purchase price or higher lease payments, than they would have had the ignition switch defects been disclosed.  Plaintiff and the Class overpaid for their Defective Vehicles.   Because of the concealed ignition switch defects.  Plaintiff did not receive the benefit of the bargain.

82.     Plaintiff and the Class are stuck with unsafe vehicles that are now worth less than they would have been but for GM's failure to disclose the ignition switch defects.

83.     GM admits to at least twelve deaths resulting from accidents linked to the ignition switch defects in the Defective Vehicles.  However, Plaintiff believes that the actual number is much higher, and that there may have been hundreds of deaths and injuries attributable to the ignitions switch defects.

84.     If Old GM or GM had timely disclosed the ignition switch defects as required by the MCPA, TREAD Act, UCL, CLRA and Song-Beverly Act, all Class members' vehicles would now be worth more than they would have been if GM had complied with its legal obligations.

## V.     SUCCESSOR LIABILITY

85.     As discussed above, GM expressly assumed certain obligations under, *inter alia*, the TREAD Act, and is liable for its non-disclosure of the ignition switch defects from the date of its formation on July 10, 2009.

86.     GM also expressly assumed liability for Lemon Law claims in the Master Sale and Purchase Agreement of June 26, 2009, and this assumption of liability includes the Class' claims under the Song-Beverly Act, which is California's Lemon Law statute.

87.    GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM, for the following reasons:

- GM admits that it was knew of the ignition system defects from the very date of its formation;

- GM has continued in the business of designing, manufacturing and marketing vehicles, including at least some of the same vehicles as Old GM;

- GM retained the bulk of the employees of Old GM;

- GM acquired owned and leased real property of Old GM, including all machinery, equipment, tools, information technology, product inventory, and intellectual property;

- GM acquired the contracts, books and records of Old GM;

- GM acquired all goodwill and other intangible personal property of Old GM.

## VI.    TOLLING OF THE STATUTES OF LIMITATION

88.    All applicable statutes of limitation have been tolled by GM's knowing and active fraudulent concealment and denial of the facts alleged herein.  Plaintiff and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Old GM and GM did not report information within their knowledge to federal authorities (NHTSA) or consumers, nor would a reasonable and diligent investigation have disclosed that Old GM and GM had information in their possession about the existence and dangerousness of the defect and opted to conceal that information until shortly before this class action was filed.

89.     Indeed, Old GM instructed its service shops to provide Defective Vehicle owners with a new key ring if they complained about unintended shut down, rather than admit what Old GM knew—that the ignition switches were dangerously defective and warranted replacement with a properly designed and built ignition system.

90.     Old GM and GM were, and GM remains, under a continuing duty to disclose to NHTSA, Plaintiff and the Class the true character, quality and nature of the Defective Vehicles, that this defect is based on dangerous, inadequate and defective design and/or substandard materials, and that it will require repair, poses a severe safety concern, and diminishes the value of the Defective Vehicles.

91.     Because of the active concealment by Old GM and GM, any and all limitations periods otherwise applicable to the claims alleged herein have been tolled.

## VII.   CLASS ALLEGATIONS

92.     Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of themselves and a Class initially defined as follows:

> All persons in the United States who currently own or lease one or more of the following GM vehicles:  all model years of the Chevrolet Cobalt, Chevrolet HHR, Saturn Ion, Saturn Sky, Pontiac G5 and Pontiac Solstice made from 2003-2011 (the "Defective Vehicles").  This list will be supplemented to include other GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

93.     Included within the Class is a subclass of California residents who own or lease Defective-Vehicles (the "California Subclass").

94.     Excluded from the Class are GM, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons.  Also excluded are any individuals claiming damages from personal injuries allegedly arising from the Defective Vehicles.

95.     The Defective Vehicles include at least the following models:  all model years of the Chevrolet Cobalt, Chevrolet HHR, Saturn Ion, Saturn Sky, Pontiac G5 and Pontiac Solstice made from 2003-2011.

96.     Plaintiff is informed and believes that Old GM manufactured and sold to consumers at least 2.6 million of the Defective Vehicles nationwide and hundreds-of-thousands of Defective Vehicles in the State of California.   Individual joinder of all Class or Subclass members is impracticable.

97.     The Class expressly disclaims any recovery for physical injury resulting from the ignition switch defects.  But the increased risk of injury from the ignition switch defects serves as an independent justification for the relief sought by Plaintiff and the Class.

98.     The Class can be readily identified using registration records, sales records, production records, and other information kept by GM or third parties in the usual course of business and within their control.

99.     Questions of law and fact are common to the Class and the Subclass and predominate over questions affecting only individual members, including the following:

(a)     Whether the Defective Vehicles suffer from ignition switch defects;

(b)     Whether Old GM and GM concealed the defects;

(c)     Whether Old GM and GM misrepresented that the Defective Vehicles were safe;

(d)     Whether Old GM and GM engaged in fraudulent concealment;

(e)     Whether Old GM and  GM engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured and sold with defective ignition switches;

(f)     Whether the alleged conduct by GM violated laws as Plaintiff alleges;

(g)     Whether Old GM's' and GM's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class

(h)     Whether GM violated the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. L. Ann. § 445.901 *et seq*. and, if so, what remedies are available for the Class under Mich. Comp. L. Ann. § 445.911.

(i)     Whether GM violated California law, including the CLRA, Cal. Civ. Code §§ 1750, *et seq*.; and the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and if so, what remedies are available for the California Subclass;

(j)     Whether Plaintiff and the members of the Class are entitled to equitable and/or declaratory and injunctive relief; and

1

2

          (k)    Whether, and to what extent, GM has successor liability for the acts and omissions of Old GM.

3

4

5

6

    100.  Plaintiff's claims are typical of the claims of the Class members, and arise from the same course of conduct by GM and Old GM. The relief that Plaintiff seeks is typical of the relief sought for the absent Class members.

7

8

9

    101.  Plaintiff will fairly and adequately represent and protect the interests of all absent Class members. Plaintiff is represented by counsel competent and experienced in product liability, consumer protection, and class action litigation.

10

11

12

13

14

15

16

17

    102.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable. Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

18

19

20

21

22

23

24

25

    103.  The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of conduct for GM. The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

26

27

28

104.   Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Plaintiff anticipates providing appropriate notice to be approved by the Court after discovery into the size and nature of the Class.

## VIII.  CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT

## (The MCPA, Mich. Comp. L. Ann. § 44901 *et seq.*)

105.   Plaintiff and the Class incorporate by reference each preceding and paragraph as though fully set forth at length herein.

106.   This claim is brought on behalf of the nationwide Class.

107.   Old GM, GM and Plaintiff are each "persons" under Mich. Comp. L. Ann. § 445.902(d).

108.   The sale of the Defective Vehicles to Plaintiff and the Class occurred within "trade and commerce" within the meaning of Mich. Comp. L. Ann. § 445.902(d), and both GM and Old GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

109.   The MCPA makes unlawful any "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce," as more specifically defined in the MCPA.  Mich. Comp. L. Ann. § 445.903 (1).  GM has engaged in unfair, unconscionable, and deceptive methods, acts and practices violation of the MCPA, and also has successor liability for the unfair, unconscionable, and deceptive methods, acts and practices of Old GM as set forth above.

110. Both Old GM and GM violated the MCPA by "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." Mich. Comp. L. Ann. § 445.903(s).

111. As alleged above, both Companies knew of the safety ignition defect, while Plaintiff and the Class were deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

112. Old GM also violated the MPA by "[m]aking a representation of fact or statement of fact material to the transaction such a person reasonably believes the represented or suggested state of affairs to be other than it actually is." Mich. Comp. L. Ann. § 405.903(bb). For example, Old GM represented that the Defective Vehicles were safe such that reasonable people believed the represented or suggest state of affairs to be true; namely, that the Defective vehicles were safe.

113. Old GM also violated the MPA by "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. L. Ann. § 405.903(cc). Old GM represented that the Defective Vehicles were safe, which made it even more incumbent on Old GM to reveal the material fact of the ignition switch defects.

114. Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Class and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly

outweighs any benefits associated with those practices.  The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff and the Class from making fully informed decisions about whether to lease, purchase and/or retain Defective Vehicles.

115.  While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture and market the Defective Vehicles until 2007.

116.  All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

117.  Plaintiff and the Class have suffered an injury, including the loss of money or property, as a result of GM's unfair, unlawful and/or deceptive practices. Old GM and GM failed to inform NHTSA, and therefore failed to inform consumers, that its vehicles had a defective ignition switch that could lead to injury and death. Had Plaintiff and the Class known this they would either not have purchased their vehicles at all or would have paid less for them, and would not have retained their Defective Vehicles. Plaintiff and the Class have therefore suffered a "loss" because of the violations of the MCPA complained of herein.

118.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

119.  Plaintiff requests that this Court:  enjoin GM from continuing their unfair, unlawful, and/or deceptive practices; provide to Plaintiff and each Class recover either their actual damages as the result of GM's unfair, unlawful and deceptive trade practices, or $250 per Class member, whichever is higher, award

reasonable attorneys' fees, and provide other appropriate relief under Mich. Comp. L. Ann.§ 445.911.

120.  Plaintiff acknowledges that, on its face, the MCPA purports to (i) deprive non-residents of bringing class (but not individual) actions under the MCPA; and (ii) allows individuals (but not class members) the ability to recover a penalty of $250 per person if that amount is greater than their actual damages.  After the United States Supreme Court's decision, in *Shady Grove Orthopedic Ass., P.A. v. Allstate Ins. Co.*, 589 U.S. 393 (2010), however, any such prohibitions imposed in class actions (but not in individual actions) are trumped and superseded by Fed. R. Civ. P. 23, which imposes no such restrictions.

## SECOND CAUSE OF ACTION
## FRAUDULENT CONCEALMENT

121.  Plaintiff and the Class incorporate by reference each preceding and paragraph as though fully set forth at length herein.

122.  This claim is brought on behalf of the nationwide Class.

123.  GM concealed and suppressed material facts concerning the ignition switch defects, and GM also has successor liability for the acts of concealment and oppression of Old GM as set forth above.

124.  The Companies had a duty to disclose the ignition switch defects because they were known and/or accessible only to the Companies who had superior knowledge and access to the facts, and the Companies knew they were not known to or reasonably discoverable by Plaintiff and the Class.  These omitted and concealed facts were material because they directly impact the safety of the Defective Vehicles.

Whether an ignition switch was designed and manufactured with appropriate safeguards is a material safety concern.

125. The Companies actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and avoid a costly recall, and they did so at the expense of Plaintiff and the Class.

126. On information and belief, GM has still not made full and adequate disclosure and continues to defraud Plaintiff and the Class and conceal material information regarding the defects that exist in the Defective Vehicles and other GM vehicles.

127. Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff and the Class's actions were justified. The Companies were in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

128. Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage as they purchased and retained vehicles that are now diminished in value from what they would have been had the Companies timely disclosed the ignition switch defects.

129. The Companies' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff and the Class's rights and well-being to enrich the Companies. The Companies' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT

### (Cal. Civ. Code § 1750, *et seq.*)

130.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

131.   Plaintiff asserts this claim for violation of the California Consumer Legal Remedies Act ("CLRA") against GM on behalf of members of the California Subclass.

132.   GM is a "person" under Cal. Civ. Code § 1761(c).

133.   Plaintiff and the members of the California Subclass are "consumers," as defined by Cal. Civil Code § 1761(d), who purchased or leased one or more Defective Vehicles.

134.   GM engaged in unfair or deceptive acts or practices that violated the Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750, *et seq.*, as described above and below.

135.   Under the TREAD Act, 49 U.S.C. §§ 30101 *et seq.*, and its accompanying regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect. 49 U.S.C. § 30118(c)(1) & (2).

136.   In acquiring Old GM, GM expressly assumed the obligations to make all required disclosures under the TREAD Act.

137.   GM also has successor liability for the deceptive and unfair acts and omissions of Old GM.

138.   Under the TREAD Act, if it is determined that the vehicle is defective, the manufacturer must promptly notify vehicle owners, purchasers and dealers of the defect and remedy the defect. 49 U.S.C. § 30118(b)(2)(A) & (B).

139.   Under the TREAD Act, manufacturers must also file a report with NHTSA within five working days of discovering "a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist." 49 C.F.R. § 573.6(a) & (b).  At a minimum, the report to NHTSA must include: the manufacturer's name; the identification of the vehicles or equipment containing the defect, including he make, line, model year and years of manufacturing; a description of the basis for determining the recall population; how those vehicles differ from similar vehicles that the manufacturer excluded from the recall; and a description of the defect. 49 C.F.R. § 276.6(b), (c)(1), (c)(2), & (c)(5).

140.   The manufacturer must also promptly inform NHTSA regarding: the total number of vehicles or equipment potentially containing the defect; the percentage of vehicles estimated to contain the defect; a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with its dates of receipt; and a description of the plan to remedy the defect.  49 C.F.R. § 276.6(b) & (c).

141.   The TREAD Act provides that any manufacturer who violates 49 U.S.C. § 30166 must pay a civil penalty to the U.S. Government.  The current penalty "is $7,000 per violation per day," and the maximum penalty "for a related series of daily violations is $17,350,000."  49 C.F.R. § 578.6(c).

142. From at least 2001, Old GM had knowledge of the ignition switch defect, but hid the problem for the remainder of its existence until 2009.

143. From its creation on July 10, 2009, GM knew of the ignition switch problem because of the knowledge of Old GM and continuous reports up until the present.

144. GM admits the defect in the ignition switch has been linked to at least twelve accident- related fatalities. But other sources have reported that hundreds of deaths and serious injuries are linked the faulty ignition switches to over 300 deaths.

145. Despite being aware of the ignition switch defects ever since its creation on July 10, 2009, GM waited until February 7, 2014, before finally sending a letter to NHTSA confessing its knowledge of the ignition switch defects which could cause the vehicles to lose power, and in turn cause the airbags not to deploy. GM initially identified two vehicle models, along with the corresponding model years, affected by the defect -- the 2005-2007 Chevrolet Cobalt and the 2007 Pontiac G5. On February 25, GM amended its letter to include four additional vehicles, the 2006-2006 Chevrolet HHR, 2006-2007 Pontiac Solstice, 2003-2007 Saturn Ion, and the 2007 Saturn Sky.

146. By failing to disclose and by actively concealing the ignition switch defect, and by selling vehicles while violating the TREAD Ac and other conduct as alleged herein, Old GM and GM both engaged in deceptive business practices prohibited by the CLRA, Cal. Civil Code § 1750, et seq.

147. Both Old GM and GM failed for many years to inform NHTSA about known defects in the Defective Vehicles' ignition system. Consequently, the public, including Plaintiff and the California Subclass, received no notice of the ignition

switch defects, that the defect could disable multiple electrical functions including power steering and power brakes, or that the defect could cause the airbags not to deploy in an accident.

148. GM knew that the ignition switch had a defect that could cause a vehicle's engine to lose power without warning, and that when the engine lost power there was a risk that electrical functions would fail and that the airbags would not deploy. Yet GM failed to inform NHTSA or warn Plaintiff or the public about these inherent dangers despite having a duty to do so.

149. Old GM and GM owed Plaintiff and the California Subclass a duty to comply with the TREAD Act and disclose the defective nature of Defective Vehicles, including the ignition switch defect and accompanying loss of power and failure of the airbags to deploy, because Old GM and GM:

    a.    Possessed exclusive knowledge of the ignition switch defects rendering the Defective Vehicles inherently more dangerous and unreliable than otherwise similar vehicles; and

    b.    Intentionally concealed the hazardous situation with Defective Vehicles by failing to comply with the TREAD Act and disclosing the ignition switch defects.

150. Defective Vehicles equipped with the faulty ignition switch pose an unreasonable risk of death or serious bodily injury to Plaintiff, passengers, and other motorists, because they are susceptible to sudden loss of power resulting in the loss of power steering and power breaks and failure of the airbags to deploy.

151.  Old GM's and GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of Defective Vehicles.

152.  Because of their violations of the CLRA detailed above, Old GM and GM caused actual damage to Plaintiff and, if not stopped, will continue to harm Plaintiff and the California Subclass.  Plaintiff and the California Subclass members currently own or lease Defective Vehicles that are defective and inherently unsafe. These violations caused the diminution in value of Plaintiff's vehicles which are now worth less than they would have been without the ignition switch defects.  Had Old GM timely disclosed the defect, Plaintiff would either not have purchased the Defective Vehicle at all, or would have paid less for the Defective Vehicle.  Plaintiff and the Class did not receive the benefit of their bargain which was for a safe vehicle free of serious safety defects.

153.  Had GM timely disclosed the ignition switch defects, the issue would have been resolved years ago and the value of Plaintiff's Defective Vehicle would not now be diminished.

154.  Plaintiff and the Class face the risk of irreparable injury as a result of GM's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiff and to the general public.

155.  Under Cal. Civ. Code § 1780(a), Plaintiff and the Class seek monetary relief against GM measured as the diminution of the value of their vehicles caused by Old GM's and GM's violations of the CLRA as alleged herein.

156.  Under Cal. Civ. Code § 1780(b), Plaintiff seeks an additional award against GM of up to $5,000 for each class member who qualifies as a "senior

citizen" or "disabled person" under the CLRA. Old GM and GM knew or should have known that their conduct was directed to one or more California Subclass members who are senior citizens or disabled persons. Old GM and GM's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more California Subclass members who are senior citizens or disabled persons are substantially more vulnerable to Old GM and GM's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Old GM's and GM's conduct.

157. Plaintiff also seeks punitive damages against GM because it carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff and the California Subclass to potential cruel and unjust hardship as a result. First Old GM and then GM intentionally and willfully concealed and failed to inform NHTSA of the unsafe and unreliable Defective Vehicles, deceived Plaintiff on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations problem of correcting a deadly flaw in the Defective Vehicles. GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under Cal. Civ. Code § 3294.

158. Plaintiff further seeks an order enjoining GM's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

159.   Finally, California Subclass members who purchased a Defective Vehicle after July 10, 2009 ("Repurchasers") have a CLRA claim against GM for failing to disclose the known ignition-switch defect.

160.   But for GM's deceptive and unfair failure to disclose the ignition switch defects, the Repurchasers would either not have purchased the Defective Vehicles or would have paid less for them, entitling them to  monetary relief under Cal. Civ. Code § 1780(a) and punitive damages, for the reasons set forth above.

161.   Plaintiff has submitted a declaration showing that venue in this District is proper, to the extent that it is required by Cal. Civ. Code § 1780(d).

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

162.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

163.   Plaintiff and the California Subclass assert this claim for violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.,* on behalf of the California Subclass.

164.   California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."   GM has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL, and also has successor liability for the unlawful, fraudulent and unfair business acts and practices of Old GM.

165. Both Old GM and GM violated the unlawful prong of section 17200 by their violations of the Consumer Legal Remedies Act, Cal. Civil Code § 1750, et seq., as set forth in Count III by the acts and practices set forth in this Complaint.

166. Both Old GM and GM also violated the unlawful prong because they engaged in business acts or practices that are unlawful because they violate the TREAD Act, 49 U.S.C. §§ 30101 *et seq*., and its regulations.

167. Old GM and GM violated the TREAD Act when they failed to timely inform NHTSA of the ignition switch defects and allowed cars to be sold with these defects.

168. Old GM and GM violated the unfair and fraudulent prong of section 17200 because in omitting to inform NHTSA about a defect affecting the safety and reliability of its vehicles, the Companies engaged in conduct that was likely to deceive reasonable owners into believing that the vehicles were safe and reliable. The information that should have been disclosed to NHTSA about the faulty ignition switch would be material to a reasonable consumer.

169. Old GM and GM also violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices. The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff and the California Subclass from making fully informed decisions about whether to lease, purchase and/or retain Defective Vehicles.

170. While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture and market the Defect Vehicles until 2007. All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

171. Plaintiff and the California Subclass have suffered an injury, including the loss of money or property, because of GM's unfair, unlawful and/or deceptive practices. Old GM and GM failed to inform NHTSA, and therefore failed to inform consumers, that its vehicles had a defective ignition switch that could lead to injury and death. Had Plaintiff and the California subclass known this they would either not have purchased their vehicles at all or would have paid less for them, and would not have retained their Defective Vehicles.

172. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business. The Companies' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in California and nationwide.

173. Plaintiff and the California Subclass have suffered an injury, including the loss of money or property, due to GM's unfair, unlawful and/or deceptive practices.

174. Plaintiff requests that this Court enter such orders or judgments as may be necessary, including a declaratory judgment that GM has violated the UCL; an order enjoining GM from continuing its unfair, unlawful, and/or deceptive practices; an order and judgment restoring to the California Subclass members any money lost as the result of GM's unfair, unlawful and deceptive trade practices, including

restitution and disgorgement of any profits GM received as a result of its unfair, unlawful and/or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203, Cal Civ. Proc. § 384 and Cal. Civ. Code § 3345; and for such other relief set forth below.

175. Finally, California Subclass members who purchased a Defective Vehicle after July 10, 2009 (the Repurchasers) have a UCL claim against GM for failing to disclose the known ignition-switch defect.

176. But for GM's deceptive and unfair failure to disclose the ignition switch defects, the Repurchasers would either not have purchased the Defective Vehicles or would have paid less for them, entitling them to orders or judgments to: enjoin GM from continuing its unfair, unlawful, and/or deceptive practices; and/or restore to the Repurchasers any money lost as the result of GM's unfair, unlawful and deceptive trade practices, as provided in Cal. Bus. & Prof. Code § 17203, Cal Civ. Proc. § 384 and Cal. Civ. Code § 3345.

## **FIFTH CAUSE OF ACTION**

### **VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CALIFORNIA "LEMON LAW")**

### **(Cal. Civ. Code §§ 1791.1 & 1792)**

177. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

178. This claim is brought on behalf of the California Subclass.

179. Plaintiff and California Class members who purchased or leased the Defective Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

180.   The Defective Vehicles are "consumer goods" within the meaning of Civ. Code § 1791(a).

181.   Old GM was a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j), and, in purchasing Old GM, GM expressly assumed liability and responsibility for "payment of all [Old GM's] Liabilities arising under ….Lemon Laws," including California's Lemon Law, the Song-Beverly Act.

182.   Old GM impliedly warranted to Plaintiff and the California Subclass that its Defective Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Defective Vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

183.   Cal. Civ. Code § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> (1)   Pass without objection in the trade under the contract description.
>
> (2)   Are fit for the ordinary purposes for which such goods are used.
>
> (3)   Are adequately contained, packaged, and labeled.
>
> (4)   Conform to the promises or affirmations of fact made on the container or label.

184.   The Defective Vehicles would not pass without objection in the automotive trade because of the ignition switch defects that cause the Defective Vehicles to inadvertently shut down during ordinary driving conditions, leading to an unreasonable likelihood of accident and an unreasonable likelihood that such accidents would cause serious bodily harm or death to vehicle occupants.

185.   Because of the ignition switch defects, the Defective Vehicles are not safe to drive and thus not fit for ordinary purposes.

186.   The Defective Vehicles are not adequately labeled because the labeling fails to disclose the ignition switch defects and does not advise Class members to avoid attaching anything to their vehicle key rings.  Old GM and GM failed to warn about the dangerous safety defects in the Defective Vehicles.

187.   GM breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing defects leading to the sudden and unintended shut down of the vehicles during ordinary driving conditions.  These defects have deprived Plaintiff and the California Subclass of the benefit of their bargain and have caused the Defective Vehicles to depreciate in value.

188.   As a direct and proximate result of GM's breach of its duties under California's Lemon Law, California Subclass members received goods whose dangerous condition substantially impairs their value to California Subclass members.  Plaintiff and the California Subclass have been damaged by the diminished value of GM's products, the products' malfunctioning, and the nonuse of their Defective Vehicles.

189.   Under Cal. Civ. Code §§ 1791.1(d) & 1794, California Subclass members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defective Vehicles, or the overpayment or diminution in value of their Defective Vehicles.

190.   Under Cal. Civ. Code § 1794, California Subclass members are entitled to costs and attorneys' fees.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nicole Heuler, individually and on behalf all others similarly situated, respectfully request that this Court enter a judgment against GM and in favor of Plaintiff and the Class, and grant the following relief:

A.    Determine that this action may be maintained as a Class action and certify it as such under Rule 23(b)(3), or alternatively certify all issues and claims that are appropriately certified; and designate and appoint Plaintiff as Class and Subclass Representatives and Plaintiffs' chosen counsel as Class Counsel;

B.    Declare, adjudge and decree the conduct of GM as alleged herein to be unlawful, unfair and/or deceptive, and enjoin any such future conduct;

C.    Award Plaintiff and Class members actual, compensatory damages, or, in the alternative, statutory damages, as proven at trial;

D.    Alternatively, if elected by Plaintiff and the Subclass, require GM to repair the defective ignition switches or provide a comparable vehicle that does not have ignition switch defects;

E.    Award Plaintiff and the California Subclass restitution of all monies paid to Old GM because of GM's violation of the UCL, the CLRA and the Song-Beverly Act;

F.    Award Plaintiff and the Class members exemplary damages in such amount as proven;

G.    Award Plaintiff and the Class members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest; and

1       H.     Award Plaintiff and the Class members such other further and different

2 relief as case may require or as determined to be just, equitable, and proper by this

3 Court.

4                    **X.**    **JURY TRIAL DEMAND**

5       Plaintiff Nicole Heuler requests a trial by jury on the legal claims, as set forth

6 herein.

7

8 Dated: April 2, 2014          Respectfully submitted,

9                    By:   */s/ Mark P. Robinson, Jr.*
                              Mark P. Robinson, Jr.

10

11               Mark P. Robinson, Jr., Bar No. 054426
               *mrobinson@rcrlaw.net*

12               ROBINSON, CALCAGNIE & ROBINSON
               620 Newport Center Drive, 7th Floor

13               Newport Beach, CA 92660
               Telephone: (949) 720-1288

14               Facsimile: (949) 720-1292

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF VENUE BY PLAINTIFF NICOLE HEULER

I, Nicole Heuler, hereby declare and state as follows:

1.      I have personal knowledge of the facts stated herein and could competently testify thereto if called upon to do so.

2.      I am a Plaintiff in the above-entitled action.

3.      Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code § 1780(a).

4.      This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a county that is a proper place for trial of this action because Defendants do business in this District (the Central District of California) and throughout the State of California.

5.      The Complaint filed in this matter contains causes of action for violations of the Consumers Legal Remedies Act against General Motors, LLC ("GM"), a Delaware limited liability company doing business nationwide, including California.

6.      I own a 2006 Chevy Cobalt.

7.      I declare under penalty of perjury under the laws of the State of California that the foregoing Declaration is true and correct, and was executed by me in the city of Anaheim, California on March 31, 2014.

_____
Nicole Heuler

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Andrew J. Guilford_____ and the assigned Magistrate Judge is _____Robert N. Block_____ .

The case number on all documents filed with the Court should read as follows:

### SACV14-00492 AG (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____April 1, 2014_____          By _____Lori Wagers_____
Date                                                   Deputy Clerk

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| ☐ Western Division | ☒ Southern Division | ☐ Eastern Division |
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)          NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

NICOLE HEULER, individually and on behalf of all others similarly situated

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

GENERAL MOTORS LLC

**(b)** County of Residence of First Listed Plaintiff  Orange
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
GENERAL MOTORS LLC

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No     ☒ **MONEY DEMANDED IN COMPLAINT:** $ 5,000,000+

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
State law claims subject to 28 U.S.C. Section 1332(a) and (d)

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☒ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**     Case Number:     **SACV14-00492 AG (RNBx)**

CV-71 (11/13)                    CIVIL COVER SHEET                    Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☒ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | SOUTHERN DIVISION |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

    If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?   ☐ NO   ☒ YES

    If yes, list case number(s):   8:14-CV-00424-JVS-AN

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☒ A. Arise from the same or closely related transactions, happenings, or events; or

    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

    ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   /S/ Mark P. Robinson, Jr.   DATE:   April 1, 2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |