# SUPPLEMENT[1] TO SCHEDULE "2"

# SAMPLE ALLEGATIONS/CAUSES OF ACTION IN IGNITION SWITCH COMPLAINTS FILED AFTER THE FILING OF NEW GM'S MOTION TO ENFORCE[2]

| Lead Plaintiff | Allegations |
|---|---|
| Arnold | "GM failed to disclose and actively concealed the Ignition Switch Defect from Class Members and the public, and continued to market and advertise the Class Vehicles as reliable and safe vehicles, which they are not. A reasonable manufacturer would not have sold a vehicle if it contained the Ignition Switch Defect." Compl., ¶ 11. |
| | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles . . . ." Compl., ¶ 22. |
| | Two Class questions are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle" (Compl. ¶ 106(c)), and (ii) "whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability" (Compl., ¶ 106(j)). |
| | "Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the safety, performance, reliability, quality, and nature of the Class Vehicles." Compl., ¶ 140(b). |
| | "In connection with its sale of the Defective Vehicles, GM gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. As a part of the implied warranty of merchantability, GM warranted that the Defective Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured and marketed, and were adequately contained, packaged and labeled." |
| | "At the time of the delivery of the Defective Vehicles, GM did not provide instructions and warnings to Plaintiffs . . . ." Compl., ¶ 165. |
| | The Fifth Claim for Relief is based on a "breach of implied warranty." |

---

[1] This schedule supplements Schedule "2" [Dkt. No. 12620-2] ("**Original Schedule 2**") filed with the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* on April 21, 2014 [Dkt. No. 12620].

[2] Due to space limitations, this chart contains only a ***sample*** of statements, allegations and/or causes of action contained in complaints filed in the Ignition Switch Actions after the filing of Original Schedule 2. This chart does ***not*** contain ***all*** statements, allegations and/or causes of action that New GM believes violates the provisions of the Court's Sale Order and Injunction and the MSPA.

|  |  |
|---|---|
|  | "Defendants violated the [Illinois Consumer Fraud and Deceptive Business Practices Act] when they falsely represented, through advertising, warranties, and other express representations, that the Class Vehicles were of certain quality or standard when they were not." Compl., ¶ 197. |
| Espineira | "Had GM disclosed the Ignition Switch Defect, Plaintiff would not have purchased his Saturn Ion, or would have paid less than he did, and would not have retained the vehicle . . . ." Compl., ¶ 14. |
|  | "GM is also liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint, because GM acquired and operated Old GM and ran it as a continuing business enterprise, utilizing substantially the same brand names, logos, plants, offices, leadership, personnel, engineers, and employees, GM was aware from its inception of the Ignition Switch Defect in the Defective Vehicles, and GM and Old GM concealed the Ignition Switch Defect from the public, regulators, and the bankruptcy court." Compl., ¶ 19. |
|  | "GM has failed to comply with the terms of its written, express, or implied warranties." Compl., ¶ 130. |
|  | "Yet GM marketed, promoted, and sold the Defective Vehicles as safe and free from defects." Compl., ¶ 145. |
|  | "GM's warranty disclaimers, exclusions, and limitations were unconscionable and unenforceable because they disclaimed a defect known but not disclosed to consumers at or before the time of purchase." Compl., ¶ 149. |
|  | Count VII is based on "breach of express warranty." |
| Gebremariam | "For over ten years, GM has designed, manufactured, promoted, marketed and sold Defective Vehicles . . . ." Compl., ¶ 10. |
|  | "In addition to liability for the statutory obligations assumed by GM, GM has successor liability of Old GM for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the defects." Compl., ¶ 24; *see also* Compl., ¶¶ 40, 115. |
|  | Four Class questions are: (i) "whether GM engaged in a deceptive and unlawful advertising and marketing campaign by concealing serious defects in its vehicles" (Compl., ¶ 46(b)), (ii) "whether and to the extent GM breached its express warranties relating to the safety and quality of its vehicles" (Compl., ¶ 46(d)), (iii) "whether and to the extent GM breached its implied warranties relating to the safety and quality of its vehicles" (Compl., ¶ 46(e)), and (iv) "whether and to the extent GM engaged in unfair, false, misleading, or deceptive acts or practices regarding its marketing and sale of its vehicles" (Compl. ¶ 46(g)). |
|  | "Had Old GM and GM timely disclosed the defects, Plaintiff and the Class would either not have purchased the Defective Vehicles at all, or would have paid less for the |

| | |
|---|---|
| | Defective Vehicles." Compl., ¶ 138. |
| | "GM knew of the ignition switch defects by 2001, yet it continued to design, manufacture and market the Defect Vehicles for years . . ." Compl., ¶ 151. |
| | "GM engaged in the advertising and the failure to disclose the defects and design flaws in its products with the intent to induce Plaintiff and the Class to purchase Defendant's vehicles." Compl., ¶ 158. |
| | The Fourth Cause of Action is based on "breach of implied warranty" and the Sixth Cause of Action is based on "breach of express warranty." |
| | "Defendants engaged in deceptive business practices prohibited by the [Texas Deceptive Trade Practices Act], including . . . advertising Class Vehicles with the intent not to sell them as advertised."  Compl., ¶ 163. |
| LaReine | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects."  Compl., ¶ 11; *see also* Compl., ¶¶ 28, 43, 115. |
| | "Plaintiffs and the Class paid more for the Subject Vehicles than they would have had they known of the ignition defects or they would not have purchased the Subject Vehicles at all."  Compl., ¶ 29. |
| | A Class question is "[w]hether, and to what extent, GM has successor liability for the acts and omissions of Old GM."  Compl., ¶ 125(o). |
| | "Touting the vehicles' safety and failing to disclose the dangers inherent in the ignition switch design . . . were likely to deceive a reasonable consumer as to the safety of the vehicles."  Compl., ¶ 146. |
| | "Defendants caused to be made or disseminated to consumers throughout California and the United States, advertising, marketing and other publications, statements about the Subject Vehicles that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to the Defendants, to be untrue and misleading."  Compl., ¶ 151. |
| | "While the GM Companies knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Subject Vehicles until 2007."  Compl., ¶ 166. |
| | "As alleged above, Defendants made numerous material statements about the safety and reliability of the Subject Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations as a whole."  Compl., ¶ 207. |
| | "Defendants . . . intentionally concealed the hazardous situation with Defective Vehicles through their deceptive marketing campaign and recall program . . . ."  Compl., ¶ 232. |

| | |
|---|---|
| Salazar | "At all times relevant herein, General Motors Corporation and its successors in interest General Motors LLC and General Motors Company were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles . . . ." Compl., ¶ 25.<br><br>"Upon information and belief, GM promoted these Class Vehicles as safe and reliable in numerous marketing and advertising materials." Compl., ¶ 41.<br><br>Two Class questions are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Class Vehicles" (Compl., ¶ 106(c)), and (ii) "whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability" Compl., ¶ 106(h)).<br><br>"Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the safety, performance, reliability, quality, and nature of the Class Vehicles." Compl., ¶ 118(b).<br><br>The Second and Third Claims for Relief are based on "breach of implied warranty of merchantability." |
| Witherspoon | "GM designed, manufactured, distributed, advertised, marketed, promoted, warranted and sold these vehicles with defective ignition systems installed . . . ." Compl., ¶ 3.<br><br>"In fact, GM is a mere continuation of the Old GM . . . ." Compl., ¶ 17.<br><br>"Because GM is a mere continuation of Old GM, GM has successor liability for the conduct of Old GM as alleged herein." Compl., ¶ 18.<br><br>Three Class questions are: (i) "whether in connection with marketing or selling the Defective Vehicles, Defendants engaged any method, act, use, practice, advertisement or solicitation having the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression in regard to the safety of the Defective Vehicles" (Compl., ¶ 91(d)), (ii) "whether Defendants continued to manufacture, market, distribute, and sell the Defective Vehicles notwithstanding its actual or constructive knowledge of their dangerous nature" (Compl., ¶ 91(i)), and (iii) "whether GM has successor liability for the acts of Old GM" (Compl., ¶ 91(p)).<br><br>"Plaintiff did not learn of the dangerous design defect in her vehicle until she received the recall notice." Compl., ¶ 100.<br><br>"In connection with the advertising, marketing, sale, and distribution of the Defective Vehicles, Defendants engaged in acts and practices including deception, false promises, misrepresentation, and/or concealment, suppression, or omission of material facts each of which constitutes an unlawful and/or unfair practices in violation of the [Missouri Merchandising Practices Act]." Compl., ¶ 113. |

|  | "Plaintiff purchased her vehicle on or about December 2005 primarily for personal or family use" and, "[a]s a direct and proximate result of the unlawful merchandising practices of Defendants, Plaintiff purchased their vehicles from GM, and as a result suffered economic damages . . . ." Compl., ¶¶ 116-117. |
|---|---|