# Exhibit D

1  Michael Louis Kelly - State Bar No. 82063
   mlk@kirtlandpackard.com
2  Behram V. Parekh - State Bar No. 180361
   bvp@kirtlandpackard.com
3  Heather M. Baker - State Bar No. 261303
   hmb@kirtlandpackard.com
4  KIRTLAND & PACKARD LLP
   2041 Rosecrans Avenue
5  Third Floor
   El Segundo, California  90245
6  Telephone: (310) 536-1000
   Facsimile: (310) 536-1001
7
   *Counsel for Plaintiff and all*
8  *others similarly situated*

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  HILARIE FAVRO, on behalf of herself    ) Case No.
    and all others similarly situated,     )
14                                          ) **CLASS ACTION**
              Plaintiffs,                   )
15                                          ) **COMPLAINT**
         v.                                 )
16                                          )
    GENERAL MOTORS LLC, a Delaware          )
17  Limited Liability Company, and DOES     ) **DEMAND FOR JURY TRIAL**
    1-10, inclusive,                        )
18                                          )
              Defendants.                   )
19  _____)

20

21

22

23

24

25

26

27

28

99003-00001  163398.01

KIRTLAND & PACKARD LLP
LAW OFFICES

Plaintiff Hilaire Favro ("Plaintif"), on behalf of herself and all others

similarly situated, alleges the following upon information and belief based upon

investigation of counsel, on information and belief and published reports, except to

her own acts, which she alleges upon personal knowledge:

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction pursuant to the Class Action

    Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class

    member is of diverse citizenship from one Defendant; there are more than

    100 Class members nationwide; the aggregate amount in controversy exceeds

    $5,000,000; and minimal diversity exists.

2.  Venue is proper in this District under 28 U.S.C. § 1391(a) because a

    substantial part of the events or omissions giving rise to the claims occurred

    and/or emanated from this District, and Defendant has caused harm to Class

    members residing in this District.

## PARTIES

3.  Plaintiff Hilarie Favro is a citizen and resident of Orange County. Plaintiff

    purchased her 2005 Saturn Ion in November 2005 and traded the vehicle

    back to the dealer in 2009.

4.  Defendant General Motors LLC (also referred to as "Defendant" or "GM") is,

    and at all relevant times was, a Delaware Corporation headquartered in

    Detroit, Michigan. Defendant was incorporated in 2009 after General Motors

    Corporation ("Old GM") filed for bankruptcy. Through the Section 363 sale

    under Chapter 11 of the U.S. Bankruptcy Code (referred to as the

    "Bankruptcy Sale"), Defendant acquired substantially all assets and liabilities

    from Old GM.

5.  As a condition of the Bankruptcy Sale, Defendant assumed liability and

    responsibility of the following:

    From and after the Closing, Purchaser [GM] shall comply with

KIRTLAND & PACKARD LLP

LAW OFFICES

Case 8:14-cv-00636    Document 1    Filed 05/01/14    Page 4 of 28    Page ID #:5

the certification, reporting and recall requirements of the
National Traffic and Motor Vehicle Act, the Transportation
Recall Enhancement, Accountability and Documentation Act,
the Clean Air Act, the California Health and Safety Code, and
similar laws, in each case, to the extent applicable in respect of
vehicles and vehicle parts manufactured or distributed by [Old
GM].

6.    Further, GM expressly assumed:

[A]ll Liabilities arising under express written warranties of [Old
GM] that are specifically identified as warranties and delivered
in connection with the sale of new, certified used or pre-owned
vehicles or new or remanufactured motor vehicles parts and
equipment (including service parts, accessories, engines and
transmissions) manfactured or sold by [Old GM] or Purchaser
prior to or after the Closing and (B) all obligations under Lemon
Laws.

7.    Due to the conditions of the Bankruptcy Sale and the withheld defects in the
vehicles for over a decade, Defendant is liable through successor liability for
the deceptive and unfair acts and omissions of Old GM, as alleged in this
Complaint.

8.    Defendant is responsible for the defects (also referred to as the "Defective
Ignition" or "Ignition Defect" or "Ignition Switch") in the following vehicles
(collectively referred to as the "Defective Vehicles"):

- 2005 - 2010 Chevrolet ("Chevy") Cobalt
- 2006 - 2011 Chevrolet HHR
- 2007 - 2010 Pontiac G5
- 2006 - 2010 Pontiac Solstice
- 2003-2007 Saturn Ion

KIRTLAND & PACKARD LLP
LAW OFFICES

1          • 2007 - 2010 Saturn Sky

2   9.    Plaintiff does not know the true names or capacities of the persons or entities

3          sued herein as DOES 1-10, inclusive, and therefore sues such Defendants by

4          such fictitious names.  Plaintiff is informed and believes, and upon such

5          information and belief alleges, that each of the DOE Defendants is in some

6          manner legally responsible for the damages suffered by Plaintiff and the

7          members of the Class as alleged herein.  Plaintiff will amend this Complaint

8          to set forth the true names and capacities of these Defendants when they have

9          been ascertained, along with appropriate charging allegations, as may be

10         necessary.

11  10.   At all times herein mentioned, Defendants, and each of them, were the

12         agents, principals, servants, employees, and subsidiaries of each of the

13         remaining Defendants, and were at all times acting within the purpose and

14         scope of such agency, service, and employment, and directed, consented,

15         ratified, permitted, encouraged, and approved the acts of each remaining

16         Defendant.

17                              **FACTUAL ALLEGATIONS**

18  11.   General Motors is and has been the United States largest manufacturer of

19         vehicles with a net revenue in 2013 of 3.8 billion dollars[1].  Furthermore,

20         Defendant touts its vehicles to be safe and reliable to all customers.

21         Specifically, Defendant's home-page for consumer safety states, "Developing

22         high-quality cars, crossovers and trucks begins with the customer in mind."

23  12.   Moreover, General Motor's Vehicle Safety Chief, Jeff Boyer stated, "Nothing

24         is more important that the safety of our customers in the vehicles they drive."

25         After more than a decade covering up the Ignition Defect, these claims are

26

27         _____

28         [1]http://www.gm.com/content/gmcom/home/company/investors/earning-releas
           es.content_pages_news_emergency_news_2014_0206-gm-reports-2013-net-income
           -of-3-8-billion.~content~gmcom~home~company~investors~earning-releases.html

KIRTLAND & PACKARD LLP
LAW OFFICES

1    more fictitious than truthful.

2    13.    GM's promise of safety and quality are adequately discussed on GM's

3    website which states the following:

4        "Safety and Quality First: Safety will always be a priority at

5        GM.  We continue to emphasize our safety-first culture in our

6        facilities, and as we grow our business in new markets.  Our

7        safety philosophy is at the heart of the development of each

8        vehicle.  In addition to safety, delivering the highest quality

9        vehicles is a major cornerstone of our promise to our

10        customers.  That is why our vehicles go through extreme

11        testing procedures in the lab, on the road and in our production

12        facilities prior to being offered to customers."

13    14.    Since 2002, Defendant has sold millions of vehicles throughout the United

14    States and worldwide that were recently recalled due to a safety defect in the

15    Ignition Switch that Old GM knew about since 2001.

16    15.    It was determined by in-house and third party engineers that the vehicle's

17    Ignition Switch can unintentionally move from the "run" position to the

18    "accessory" or "off" position when operating the vehicle.  Thus resulting in a

19    loss of power, loss of vehicle speed control, loss of braking, and non-

20    deployment of the vehicle's air bags.

21    16.    In 2003, an internal report documented an instance in which the service

22    technician observed a stall while driving.  The service technician noted that

23    the weight of several keys on the key ring had worn out the ignition switch.

24    It was replaced and the matter was closed.[2]

25    17.    Despite learning this about this Ignition Defect and the potential for engine

26    failure and/or loss of steering, braking and/or air bag functionality due to the

27

28    [2]http://www.nytimes.com/2014/03/13/business/gm-reveals-it-was-told-of-ign
ition-defect-in-01.html?_r=0

KIRTLAND & PACKARD LLP
LAW OFFICES

1    Defective Ignition switches, Defendant withheld the information and
2    continued to mass produce the vehicles with the Defective Ignition switches.

3    18.    According to GM's latest admissions to the National Highway Traffic Safety
4    Administration[3] ("NHTSA"), pursuant to 49 CFR § 573.6, Old GM engineers
5    encountered the problem again with the Defective Ignition switches in 2004
6    during test drives of the Chevy Colbalt, before it went on the market.

7    19.    In 2004, as documented by NHTSA[4], Old GM opened an engineering inquiry
8    known as a "Problem Resolution Tracking System Inquiry." This
9    investigation pinpointed the problem that the engineers were "able to
10    replicate this phenomenon during test drives."

11    20.    Ultimately however, despite the known risks, Old GM closed the Problem
12    Resolution Tracking System Inquiry without making any changes to the
13    Defectively Ignition switches or taking any steps to inform consumers of the
14    associated risks due to the defective design.

15    21.    Again in 2005 another Problem Resolution Tracking System Inquiry opened
16    and Old GM engineers again assessed the problem and proposed that Old
17    GM re-design the key head from a "slotted" to a "hole" configuration. After
18    initially approving the proposed fix, Old GM decided to not implement a fix.[5]
19    Instead, Old GM simply issued a Technical Service Bulletin advising service
20    technicians and GM dealers that the inadvertent turning of the key cylinder
21    was causing the loss of the car's electrical system.

22    22.    Instead of actively informing customers and addressing the Ignition Defect,
23    Old GM chose to conceal the Ignition Defect and to wait to address the issue

24    _____

25    [3]    http://www.autoblog.com/2014/02/27/gm-ignition-recall-nhtsa-investi
gation-timeliness/

26    [4]    http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM45066
27    3/RCDNN-14V047-3409.pdf

28    [5] March 11, 2014 Chronology Re: Recall of 2006 Chevron HHR and Pontiac
Solstice, 2003-2007 Saturn Ion, and 2007 Saturn Sky Vehicles.

LAW OFFICES
KIRTLAND & PACKARD LLP

1    until the vehicle was brought to a dealership after experiencing the problem.

2    Old GM said that 474 customers who brought their Defective Vehicle had the

3    Ignition Switch repaired.  Yet, hundreds of thousands of Defective Vehicles

4    were still on the market putting the lives of thousands at potentially life-

5    threatening risks due to the Defective Ignition.

6   23.    In 2007, NHTSA investigators met with Old GM in Washington D.C. to

7    discuss occupant restraint systems.  During this meeting, a NHTSA

8    representative informed Old GM representative's about a recent accident that

9    killed Marie Rose due to Ignition Switch being in the "accessory" position.

10    By the end of 2007, GM had admitted that of all the frontal collisions in the

11    Chevy Cobalt, almost half were caused by the Ignition Defect, similar to that

12    of Marie Rose.

13   24.    In 2009, another Problem Resolution Tracking System Inquiry was

14    conducted regarding the Defective Ignition switch.  GM engineers also

15    concluded that three more deaths had occurred due to the Defective Ignition

16    switch.  Finally, after seven deaths due to the Defective Ignition switch, GM

17    was making a change to the Defective Ignition switch.

18   25.    In 2011 and 2012, a GM engineers conducted various Field Performance

19    Evaluations of a group of crashes in which air bags in the 2005-2007 model

20    Chevrolet Cobalts and the 2007 Pontiac G5 were deployed during a frontal

21    impact.  The engineer also examined various vehicles with model years

22    ranging form 2003-2010, including the Saturn Ion, and Chevrolet HHRs and

23    concluded that the majority of the Ignition Switches exhibited torque

24    performance below the level specified by GM for the ignition switch.

25   26.    GM also admitted that the Defective Vehicles made before 2007 had the most

26    "prevalent shortfalls in performance..."[6]   Yet, nothing was reported to the

27

28       [6]

http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM450663/RCDNN-1

LAW OFFICES
KIRTLAND & PACKARD LLP

1    public.

2    27.    It wasn't until February 13, 2014, that GM decided to recall of 2005-2007

3    Chevy Cobalts and the 2007 Pontiac G5 - more than ten years after the

4    discovery of the Ignition Defect.  GM admitted that at least 23 frontal-impact

5    crashes involving 2005-2007 Chevy Cobalts and 2007 Pontiac G5s, in which

6    the Defective Ignition switch caused or contributed to an air bag failure.

7    28.    Onstar System, a subsidiary of General Motors that provides

8    subscription-based communications, in-vehicle security, hands free calling,

9    turn-by-turn navigation, and remote diagnostics systems, constantly

10    monitored critical systems, including the ignition switches.  Onstar, submits

11    real-time performance data to GM through the "Chordiant Java Connector

12    Architecture Adapter."  Thus GM had knowledge of the ignition system

13    failure in all of the OnStar equipped vehicles, but failed to disclose the

14    existence of the critical safety defect in the thousands of Defected Vehicles.

15    29.    A car manufacturer, like GM and Old GM, is required to promptly report any

16    defect that is related to motor vehicle safety to the National Highway Traffic

17    Safety Administration under the Transportation Recall Enhancement,

18    Accountability and Documentation Act ("TREAD Act")[7].  Therefore, as soon

19    as GM was aware of the ignition switch defect, no later than 2004, Old GM

20    should have reported the defect to the NHTSA immediately.

21    30.    GM instead decided to continue to manufacture and sell the Defective

22    Vehicles containing the faulty ignition switch, failed to report the Ignition

23    Defect to NHTSA and did not inform the unsuspecting consumers of the

24    risks.

25    31.    Clarence Ditlow, the Executive Director of the Center for Auto Safety stated,

4V047-3409.pdf

[7] 49 U.S.C. § 30118(c)(1),(2)

99003-00001  163398.01          -8-
COMPLAINT

KIRTLAND & PACKARD LLP
LAW OFFICES

1   "GM bears complete responsibility for failing to recall these vehicles by
2   2005, when it knew what the defect was and how to fix it ..."

3   32.   For over a decade, GM knew and withheld the Ignition Defect leaving its
4   consumers to bear the risks - it wasn't until 2014 that GM decided to issue a
5   recall.

6   33.   In fact, it wasn't until February 7, 2014, that GM for the first time notified
7   NHTSA about the Ignition Defect, despite discovering the faulty ignition
8   switch more than a decade before.  Less than a week later, GM recalled
9   619,122 vehicles.

10  34.   However, GM still knew that almost two million more Defective Vehicles
11  with the Ignition Defect were still on the market, but failed to recall any of
12  those additional vehicles.

13  35.   Two weeks later, GM recalled an additional 748,024 Defective Vehicles.
14  Once again, still avoiding recalling nearly a million more Defective Vehicles
15  that contained the dangerous Defective Ignition.

16  36.    To date, GM has recalled 2.6 million Defective Vehicles. Yet, prior to
17  issuing the recall, GM concealed the Ignition Defect and failed to warn
18  consumers about the potential steering, braking, and/or air bag malfunctions
19  that could result in the normal operation of the vehicle.

20  37.   GM bought back at least 12 Cobalts from customers who reported frequent
21  incidents in which the dealers could not fix.  These buy-backs underscore the
22  lack of mandated warnings between the consumers and GM and careless
23  regard for any consumer that had purchased a Defective Vehicle.

24  38.   Additionally, GM continues to maintain that the Defective Vehicles are safe
25  to drive despite its knowledge that the Defective Vehicles contain a very
26  dangerous Ignition Defect.

27  39.   The following is a comprehensive time line of Old GM and GM's
28  investigations, incidents and discoveries throughout the past decade:

KIRTLAND & PACKARD LLP
LAW OFFICES

- **2001**: GM detects the defect during pre-production testing of the Saturn Ion.
- **2003**: A service technician closes an inquiry into a stalling Saturn Ion after changing the key ring and noticing the problem was fixed.
- **2004**: GM recognizes the defect again as the Chevrolet Cobalt replaces the Cavalier.
- **March 2005**: GM rejects a proposal to fix the problem because it would be too costly and take too long.
- **May 2005**: A GM engineer advises the company to redesign its key head, but the proposal is ultimately rejected.
- **July 29, 2005**: Maryland resident Amber Marie Rose, 16, dies when her 2005 Chevrolet Cobalt crashes into a tree after the ignition switch shuts down the car's electrical system and the air bags fail to deploy.
- **December 2005**: GM sends dealers a bulletin stating the defect can occur when "the driver is short and has a large and/or heavy key chain ... the customer should be advised of this potential and should ... [remove] unessential items from their key chain."
- **December 2005**: GM issues a service bulletin announcing the problem, but does not issue a recall.
- **March 2007**: Safety regulators inform GM of the issues involved in Amber Rose's death; neither GM nor the safety regulators open a formal investigation.
- **April 2007**: An investigation links the fatal crash of a 2005 Chevrolet Cobalt in Wisconsin to the ignition

1        defect, but regulators do not conduct an investigation.

2        •   **September 2007**: A NHTSA official emails the

3        agency's Office of Defects Investigation recommending

4        a probe looking into the failure of air bags to deploy in

5        crashes involving Chevrolet Cobalts and Saturn Ions,

6        prompted by 29 complaints, four fatal crashes and 14

7        field reports.

8        •   **Nov. 17, 2007**: The Office of Defects Investigation at

9        NHTSA concludes that there is no correlation between

10       the crashes and the failure of air bags to deploy, ending

11       the proposed probe.

12       •   **April 24, 2009**: GM says that it will scrap the Pontiac

13       brand to invest more in Buick, Cadillac, Chevrolet and

14       GMC.

15       •   **June 1, 2009**: GM files for Chapter 11 bankruptcy.

16       •   **July 10, 2009**: The U.S. Treasury purchases GM assets,

17       giving the government primary ownership of the

18       company.

19       •   **February 2010**: NHTSA again recommends a probe

20       looking into problems with air bags in Cobalts; Office

21       of Defects Investigation again decides that there is no

22       correlation and drops the matter.

23       •   **2012**: GM identifies four crashes and four

24       corresponding fatalities (all involving 2004 Saturn Ions)

25       along with six other injuries from four other crashes

26       attributable to the defect.

27       •   **June 2013**: A deposition by a Cobalt program engineer

28       says the company made a "business decision not to fix

KIRTLAND & PACKARD LLP

LAW OFFICES

LAW OFFICES

KIRTLAND & PACKARD LLP

1   this problem," raising questions of whether GM
2   consciously decided to launch the Cobalt despite
3   knowing of a defect.

4   •   **End of 2013**: GM determines that the faulty ignition
5       switch is to blame for at least 31 crashes and 13 deaths.

6   •   **Jan. 15, 2014**: Mary Barra becomes CEO of GM and
7       the first woman to run a major automaker.

8   •   **Jan. 31, 2014**: Barra learns of the ignition switch
9       defect, according to GM.

10  •   **Feb. 7, 2014**: GM notifies NHTSA "that it determined
11      that a defect, which relates to motor vehicle safety,
12      exists in 619,122 cars."

13  •   **Feb. 13, 2015**: GM officially recalls 2005-2007
14      Chevrolet Cobalts and 2007 Pontiac G5s.

15  •   **Feb. 25, 2014**: GM adds 748,024 more vehicles to the
16      recall.

17  •   **March 10, 2014**: GM hires two law firms to look into
18      the recall, with Anton "Tony" Valukas, who
19      investigated Lehman Brothers after the firm's 2008
20      collapse, leading the internal probe.

21  •   **March 17, 2014**: GM recalls 1.55 million vans, sedans
22      and sport utility vehicles.

23  •   **March 17, 2014**: Barra states in a video apology that
24      "something went very wrong" in GM's mishandling of
25      the crisis. She says the company expected about $300
26      million in expenses in the current quarter to cover the
27      cost of repairing 3 million vehicles.

28  •   **March 18, 2014**: GM appoints a new safety chief.

- • **March 20, 2014**: The House Energy and Commerce Committee's Subcommittee on Oversight and Investigations schedules a hearing for April 1, titled "The GM Ignition Switch Recall: Why Did It Take So Long?"

- • **March 28, 2014**: GM recalls an additional 824,000 vehicles (including all model years of the Chevrolet Cobalt and HHR, the Pontiac G5 and Solstice, and the Saturn Ion and Sky), stating ignition switches could be faulty; the new total number of recalled vehicles in the U.S. is 2,191,146.

- • **April 1, 2014**: GM hires Kenneth Feinberg, an attorney specializing in corporate payouts, as a consultant "to explore and evaluate options" in the automaker's response to families of the victims involved in the recall.

- • **April 1-2, 2014**: Barra and NHTSA Acting Administrator David Friedman testify at House and Senate hearings on the handling of the recall. Barra apologizes to family members whose loved ones have died from the defect.

- • **April 3, 2014**: Deadline for GM to respond to 107 questions from NHTSA.

40.    The Ignition Defect has caused irreparable damage to Plaintiff and the punative Class. A vehicle purchased, leased, or retained with a serious safety defect is worth less than an equivalent vehicle without the defects and cost Plaintiff hundreds of dollars in repairs due to the Defective Ignition switch and the subsequent damages caused by the Defective Ignition switch.

LAW OFFICES

KIRTLAND & PACKARD LLP

1   41.   Plaintiff and other Class members paid a premium for a vehicle that they

2         would not have paid as much, if at all, but for the withheld disclosure of the

3         Ignition Defect.

4   42.   Plaintiff brings this lawsuit to recover the monetary gains taken by this

5         unlawful practice.

6                        **CLASS ACTION ALLEGATIONS**

7   43.   Plaintiff brings this action on behalf of herself and on behalf of all others

8         similarly situated and, as members of the Class or subclasses (collectively

9         referred to hereafter as the "Class") defined as follows:

10              (1) California Class: The Class that Plaintiff seeks to

11              represent ("the California Class") consists of all persons

12              who are citizens or residents of California who formerly or

13              currently own or lease one or more of any Defective

14              Vehicles made from 2003 - 2011. Excluded from the Class

15              are Defendant, any parent, subsidiary, affiliate or

16              controlled person of Defendant, as well as the officers and

17              directors of Defendant, and the immediate family member

18              of any such person. Also excluded is any judge who may

19              preside over this case.

20              (2) Nationwide Class: The Class that Plaintiff seeks to

21              represent ("the Nationwide Class") is defined to include all

22              persons in the United States who formerly or currently own

23              or lease one or more of any Defective Vehicles made from

24              2003 - 2011. Excluded from the Class are Defendant, any

25              parent, subsidiary, affiliate or controlled person of

26              Defendant, as well as the officers and directors of

27              Defendant, and the immediate family member of any such

28              person. Also excluded is any judge who may preside over

LAW OFFICES
KIRTLAND & PACKARD LLP

1    this case.

2    44.    Specifically excluded from the proposed Class are Defendants, any entities in

3    which Defendants have a controlling interest, and the officers, directors,

4    affiliates, legal representatives, successors, subsidiaries and/or assigns of

5    Defendant.  Also specifically excluded from the proposed Class are any

6    claims by any persons who have suffered or possess a right of action for

7    personal injury or wrongful death as a result of the Defective Ignition switch.

8    45.    This action is brought and may be properly maintained as a class action

9    pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)-(4) and

10    23(b)(1)-(3).  This action satisfies the numerosity, typicality, adequacy,

11    predominance and superiority requirements of those provisions.

12    46.    [Fed. R. Civ. P. 23(a)(1)]  The Class is so numerous that the individual

13    joinder of all of its members is impractical.  While the exact number and

14    identities of Class members are unknown to Plaintiff at this time and can only

15    be ascertained through appropriate discovery, Plaintiff is informed and

16    believes the Class includes many thousands of members.  Plaintiff allege that

17    the Class may be ascertained by the records maintained by GM and its

18    network of dealerships, and/or through the records of public agencies.

19    47.    [Fed. R. Civ. P. 23(a)(2)] Common questions of fact and law exist as to all

20    members of the Class which predominate over any questions affecting only

21    individual members of the Class.  These common legal and factual questions,

22    which do not vary from class member to class member, and which may be

23    determined without reference to the individual circumstances of any class

24    member, include, but are not limited to, the following:

25        a.    Whether GM engaged in the conduct alleged herein;

26        b.    Whether GM's alleged conduct violates applicable law;

27        c.    Whether GM was negligent in the design, manufacturing, and

28            distribution of the Defective Vehicles;

KIRTLAND & PACKARD LLP
LAW OFFICES

KIRTLAND & PACKARD LLP
LAW OFFICES

d.  Whether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defective Vehicles into United States commerce;

e.  Whether GM misled Class members about the safety and quality of the Defective Vehicles;

f.  Whether GM actively concealed the design defects contained in the Defective Vehicles;

g.  Whether GM's misrepresentations and omissions regarding the safety and quality of the Defective Vehicles were likely to deceive Class members in violation of the consumer protection statutes alleged herein;

h.  Whether Class members overpaid for their Defective Vehicle as a result of the defects alleged herein;

i.  Whether Class members are entitled to damages;

j.  Whether GM's conduct alleged herein violated California's Unfair Competition Law;

k.  Whether GM's conduct alleged herein violated California's False Advertising Act;

l.  Whether GM's conduct alleged herein violated California's Consumer Legal Remedies Act;

48.  [Fed. R. Civ. P. 23(a)(3)] Plaintiff claims are typical of the claims of the members of the Class. Plaintiff and all members of the putative Class have sustained injury arising out of Defendant's common course of conduct as complained of herein. The losses of each member of the Class were caused directly by Defendant's wrongful conduct as alleged herein.

49.  [Fed. R. Civ. P. 23(a)(4)] Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff have retained attorneys experienced in the prosecution of class actions, including complex consumer

LAW OFFICES
KIRTLAND & PACKARD LLP

1 | and mass tort litigation.

2 | 50. | [Fed. R. Civ. P. 23(b)(3)] A class action is superior to other available methods

3 | of fair and efficient adjudication of this controversy, since individual

4 | litigation of the claims of all Class members is impracticable. Even if every

5 | Class member could afford individual litigation, the court system could not.

6 | It would be unduly burdensome to the courts in which individual litigation of

7 | numerous issues would proceed. Individualized litigation would also present

8 | the potential for varying, inconsistent, or contradictory judgments and would

9 | magnify the delay and expense to all parties and to the court system resulting

10 | from multiple trials of the same complex factual issues. By contrast, the

11 | conduct of this action as a class action, with respect to some or all of the

12 | issues presented herein, presents fewer management difficulties, conserves

13 | the resources of the parties and of the court system, and protects the rights of

14 | each Class member.

15 | 51. | [Fed. R. Civ. P. 23(b)(1)(A)] The prosecution of separate actions by

16 | thousands of individual Class members would create the risk of inconsistent

17 | or varying adjudications with respect to, among other things, the need for and

18 | the nature of proper notice which Defendant must provide to all Class

19 | members.

20 | 52. | [Fed. R. Civ. P. 23(b)(1)(B)] The prosecution of separate actions by

21 | individual class members would create a risk of adjudications with respect to

22 | them that would, as a practical matter, be dispositive of the interests of the

23 | other Class members not parties to such adjudications or that would

24 | substantially impair or impede the ability of such non-party Class members to

25 | protect their interests.

26 | 53. | [Fed. R. Civ. P. 23(b)(2)] Defendant has acted or refused to act in respects

27 | generally applicable to the Class, thereby making appropriate final and

28 | injunctive relief with regard to the members of the Class as a whole.

# FIRST CAUSE OF ACTION

## *Civil Code § 1750 et seq.*

### (Violation of the Consumer Legal Remedies Act)

### (By Plaintiff and the Class Against Defendant)

54. Plaintiff hereby incorporate, as if set forth in full, paragraphs 1 through 53 above.

55. The Defendant's acts and omissions violate the following portions of the California *Consumers Legal Remedies Act*:

- *Civil Code* § 1770(a)(5) "Representing that goods or services have ... characteristics ... uses, benefits ... which they do not have ..."

- *Civil Code* § 1770(a)(7) "Representing that goods or services are of a particular standard, quality, or grade ... if they are of another"

- *Civil Code* § 1770(a)(9) "Advertising goods or services with intent not to sell them as advertised."

56. Plaintiff and the members of the Class risk irreparable injury as a result of the Defendant's acts and omission in violation of the CLRA and these violations present a continuing risk to the class and members of the public.

57. Pursuant to Section 1782 of the CLRA, Plaintiff intends to notify Defendant in writing of the particular violations of Section 1770 of the CLRA (the "Notice Letter"). If Defendant fails to comply with Plaintiff's demands within thirty days of receipt of the Notice Letter, pursuant to Section 1782 of the CLRA, Plaintiff will amend this Complaint to further request damages under the CLRA.

58. Pursuant to *Civil Code* § 1780(a)(2) Plaintiff seek an order enjoining Defendant from selling any vehicles with a Defective Ignition switch in the United States which has not been revised in such a manner as to eliminate the

LAW OFFICES
KIRTLAND & PACKARD LLP

KIRTLAND & PACKARD LLP
LAW OFFICES

1    possibility of disabling power steering, power brakes and air bag

2    functionality.

3  59.  Plaintiff further seeks restitution from Defendant for the cost paid for their

4    unsafe and dangerous Defective Vehicle.  Plaintiff, alternatively, seeks a

5    mandatory injunction against Defendant requiring them to repair and/or

6    replace Plaintiff and the putative Class' vehicles, at Defendant's expense, to

7    eliminate the possibility of sudden of disabling power steering, power brakes

8    and air bag functionality. Unless Defendant are enjoined from violations of

9    the CLRA alleged herein, the members of the class and the general public,

10    who lack an adequate remedy at law to deter Defendant's wrongful conduct,

11    will be irreparably harmed.

12  60.  Plaintiff has suffered economic damage as a result of Defendant's violations

13    of *Civil Code* § 1770 in that she owned a vehicle which was defective and

14    inherently dangerous, regardless of the manifestation of the defect.  Plaintiff

15    has further suffered economic damage in that her vehicle's resale value has

16    been reduced and repair costs were much higher than they otherwise would

17    have been.

18  61.  As the factual allegations make clear, Defendant knew of the Defective

19    Ignition for a long period of time and has, during this time, not only failed to

20    correct it, but actively suppressed evidence of its existence.

21  62.  Defendant's conduct is sufficiently blameworthy to merit the imposition of

22    punitive damages pursuant to *Civil Code* § 1780(a)(4) to punish, deter, and

23    make an example of Defendant.  In addition, Plaintiff and the putative Class

24    are entitled to an award of attorneys' fees and costs against Defendant

25    pursuant to the provisions of *Civil Code* § 1780(d).

26  //

27  //

28  //

### SECOND CAUSE OF ACTION

### _Business and Professions Code § 17200 et seq._

### (Violation of the Unfair Competition Law)

### (By Plaintiff and the Class Against Defendant)

63. Plaintiff hereby incorporate, as if set forth in full, paragraphs 1 through 62 above.

64. California _Business and Professions Code_ § 17200 _et seq._, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

65. Defendant violated and continue to violate the UCL through one or more of the following unfair, unlawful, or fraudulent practices:

   a. Selling to Plaintiff and Class members vehicles which contain a defect or design which makes them inherently more dangerous than other similar vehicles;

   b. Failing to disclose to Plaintiff and Class members that the vehicles sold to such consumers contain a defect or design which makes them inherently more dangerous than other similar vehicles;

   c. Failing to remedy the defect or design which makes Defendant's vehicles inherently more dangerous than other similar vehicles;

   d. Failing to manufacture, distribute, and sell a product which would perform in a safe manner when used in a reasonably foreseeable manner by a reasonable consumer;

   e. Violating the other statutes and common law causes of action as alleged in the instant Complaint;

66. As a direct and proximate result of Defendant's illegal business practices,

LAW OFFICES
KIRTLAND & PACKARD LLP

Plaintiff and the members of the Class have suffered injury and have lost money or property.

67. Defendant's conduct has further injured Plaintiff and Class members by impairing competition within the motor vehicle markets and prevented Plaintiff and Class members from making fully informed decisions about the motor vehicles they purchase.

68. Plaintiff respectfully request that the Court enjoin Defendant from engaging in the unlawful conduct alleged herein and require Defendant to:

- stop selling any vehicles with that may be disabled of the power steering, power brakes and air bag functionality in the United States, which has not been revised in such a manner as to eliminate the possibility of the risks alleged herein;
- require Defendant to repair and/or replace Plaintiff and the putative Class' vehicles, at Defendant's expense, to eliminate the possibility of disabled power steering, power brakes and air bag functionality;
- in the interim time period, provide immediate notice to Plaintiff and Class members of the potential for disabling of the power steering, power brakes and air bag functionality and provide instructions for how best to mitigate the situation were it to occur;
- require Defendant to notify all affected persons affected of the Court's injunction;
- require Defendant to provide restitution to Plaintiff and Class members;
- award Plaintiff and/or Class members reasonable attorneys' fees and expenses, and
- award such other relief as the Court may deem just and proper.

69. The illegal business practices described herein present a continuing threat to

KIRTLAND & PACKARD LLP
LAW OFFICES

KIRTLAND & PACKARD LLP
LAW OFFICES

Plaintiff, members of the Class, and members of the general public in that Defendant continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to Plaintiff and the Class unless enjoined or restrained.

### THIRD CAUSE OF ACTION
### (*Business and Professions Code § 17500*)
### (Violation of the False Advertising Act)
### (By Plaintiff and the Class Against Defendant)

70. Plaintiff hereby incorporate, as if set forth in full, paragraphs 1 through 69 above.

71. *Business and Professions Code* § 17500 provides that "[i]t is unlawful for any ... corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

72. Defendant's representations, including statements made in Defendant's television, radio, and print advertising, website, brochures, and all other written and oral materials disseminated by Defendant to promote its vehicles constitute advertising for purposes of this cause of action.

73. Such advertising contained statements which were false, misleading, or which omitted material information which Defendant was under a duty to disclose and which were known or should have been known to Defendant to be false, misleading, or deceptive.

74.  As a direct and proximate result of Defendant's misleading advertising, Plaintiff and the members of the putative Class have suffered injury in fact and have lost money or property.

75.  The misleading advertising described herein presents a continuing threat to Plaintiff, the Class, and members of the public in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to plaintiff and the class unless enjoined or restrained.

## FOURTH CAUSE OF ACTION

### (*California Civil Code* §§ 1791.1 & 1792)

### (Consumer Warranty Protection)

### (By Plaintiff and the Class Against Defendant)

76.  Plaintiff hereby incorporate, as if set forth in full, paragraphs 1 through 75 above.

77.  Defendant impliedly warrants that its vehicles are fit for the ordinary purpose for which the Defective Vehicle were sold.

78.  The ordinary purpose for which Defendant's Defective Vehicles are sold is to provide the purchaser with a vehicle that is capable of transporting the driver and passengers in reasonable safety, and without unduly endangering them or members of the public.

79.  Defendant breached its implied warranty of merchantability by selling a vehicle which has a propensity to have disabled power steering, power brakes and air bag functionality.

80.  Plaintiff, and every member of the classes alleged herein, have been similarly damaged as a result of this breach of warranty.

//

//

//

KIRTLAND & PACKARD LLP
LAW OFFICES

**FIFTH CAUSE OF ACTION**

**(Breach of Implied Warranty of Fitness For a Particular Purpose)**

**(By Plaintiff and the Class Against Defendant)**

81.  Plaintiff hereby incorporate, as if set forth in full, paragraphs 1 through 80 above.

82.  GM is, and at all relevant times has been, in the business of designing, manufacturing, distributing, and selling the Defective Vehicles to consumers with the Defective Ignition.

83.  GM knew, at the time it sold its vehicles to consumers, that such vehicles would be used by Plaintiff and putative Class members for the specific purpose of attempting to safely transport the driver and passengers from one point to another.

84.  GM knew that consumers who purchased their vehicles relied upon Defendant's expertise and skill, judgment and knowledge in furnishing vehicles which were capable of transporting the driver and passengers of such vehicle without unreasonable risk of harm to them or to members of the general public.

85.  GM's vehicles are not fit for that purpose in that their design or manufacture is so defective as to cause such vehicles to suddenly be disabled of the power steering, power brakes and air bag functionality.

86.  Plaintiff, and every member of the classes alleged herein, have been similarly damaged as a result of this breach of warranty.

**SIXTH CAUSE OF ACTION**

**(Negligence)**

**(By Plaintiff and the Class Against Defendant)**

87.  Plaintiff hereby incorporate, as if set forth in full, paragraphs 1 through 86 above.

88.  Defendant had a duty to its consumers, as a manufacturer of motor vehicles,

KIRTLAND & PACKARD LLP
LAW OFFICES

1    to provide vehicles which, in their ordinary operation, would be safe.

2   89.   Defendant also had a duty to sufficiently test their vehicles' safety before

3    selling thousands of Defective Vehicles. Defendant had further duties once it

4    was on notice by consumers of the propensity to be disabled of the power

5    steering, power brakes and air bag functionality.

6   90.   Defendant breached its duty to Plaintiff and class members. Plaintiff and the

7    putative Class Members have been and are currently dealing with vehicles

8    that are inherently unsafe and more dangerous than similar vehicles

9    manufactured by other companies.

10   91.   Defendant's breach proximately caused the damages to Plaintiff and putative

11    Class Members, namely that Plaintiff and Class Members have been

12    financially and economically damaged by owning vehicles which are

13    inherently unsafe, and damaged by the potential risk of injury to themselves

14    and others every time they operate their vehicles.

15    **PRAYER FOR RELIEF**

16    **WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for

17 relief and judgment as follows:

18 1.   For preliminary and permanent injunctive relief enjoining Defendant, its

19    agents, servants and employees, and all persons acting in concert with it, from

20    engaging in, and continuing to engage in, the unfair, unlawful and/or

21    fraudulent business practices alleged above and that may yet be discovered in

22    the prosecution of this action;

23 2.   For certification of the putative class;

24 3.   For restitution and disgorgement of all money or property wrongfully

25    obtained by Defendant by means of its herein-alleged unlawful, unfair, and

26    fraudulent business practices;

27 4.   For an accounting by Defendant for any and all profits derived by Defendant

28    from its herein-alleged unlawful, unfair and/or fraudulent conduct and

KIRTLAND & PACKARD LLP

1    business practices;

2    5.    An award of statutory damages according to proof, except that no damages

3          are currently sought on Plaintiff's Cause of Action regarding the Consumer

4          Legal Remedies Act at this time;

5    6.    An award of general damages according to proof, except that no damages

6          are currently sought on Plaintiff's Cause of Action regarding the Consumer

7          Legal Remedies Act at this time;

8    7.    An award of special damages according to proof, except that no damages

9          are currently sought on Plaintiff's Cause of Action regarding the Consumer

10         Legal Remedies Act at this time;

11   8.    Exemplary damages, except that no damages are currently sought on

12         Plaintiff's Cause of Action regarding the Consumer Legal Remedies Act at

13         this time;

14   9.    For attorneys' fees and expenses pursuant to all applicable laws, including,

15         without limitation, the CLRA and the common law private attorney general

16         doctrine;

17   10.   For costs of suit; and

18   11.   For such other and further relief as the Court deems just and proper.

19

20   DATED:  May 1, 2014

21                              Respectfully submitted,

22                              KIRTLAND & PACKARD LLP

23

24                     By:    _____

25                              MICHAEL LOUIS KELLY
                                BEHRAM V. PAREKH
26                              HEATHER M. BAKER

27                              *Counsel for Plaintiff and all others similarly
                                situated.*
28

LAW OFFICES
KIRTLAND & PACKARD LLP

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims so triable.

DATED: May 1, 2014

Respectfully submitted,

KIRTLAND & PACKARD LLP

By: _____

MICHAEL LOUIS KELLY
BEHRAM V. PAREKH
HEATHER M. BAKER

*Counsel for Plaintiff and all others similarly situated.*

**DECLARATION OF PROPER VENUE BY HILARIE FAVRO**

1  I, Hilarie Favro, declare as follows:

2  1.    I am a Plaintiff in this action, and am a resident and citizen of the State of
California.  I have personal knowledge of the facts alleged herein and, if called as a witness, I
could and would testify competently thereto.

2.    The Complaint in this action, filed concurrently with this Declaration, is filed in the
proper place for trial under Civil Code Section 1780(d) in that Orange County is a county where
Defendant does business.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

_____

Hilarie Favro

99003-00001  163396.01

VENUE DECLARATION