# Exhibit H

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

NANCY HAUSMANN FRANK individually,
and on behalf of all those similarly situated,

Plaintiff,

vs.

GENERAL MOTORS, LLC,

Defendant.

_____/

Case No.:

CLASS REPRESENTATION

## COMPLAINT

This case arises from General Motors LLC's ("GM") unconscionable failure to disclose and active concealment of a defect in certain GM vehicles that renders them unsafe to drive and has likely killed and injured innocent victims. The defect involves the vehicles' power steering system, causing a sudden loss of electric power to the steering assist ("Power Steering Defect") making the vehicle virtually incapable of being driven. The Power Steering Defect is present in many makes and model years, and renders the affected vehicles dangerously susceptible to failure during normal and foreseeable driving conditions. GM has known for years and has actively concealed the Power Steering Defect, which has likely resulted in deaths and significant injury. Accordingly, the Plaintiff, Nancy Hausmann Frank, individually and on behalf of all similarly situated individuals, brings this action against Defendant GM, and alleges as follows:

### PARTIES

1.      Plaintiff Nancy Hausmann Frank, a resident of the Southern District of Florida and citizen of Florida, owns a 2008 Saturn Aura. Plaintiff chose the Saturn Aura, in part, because

[1404667/1]

1

she wanted a safely designed and manufactured vehicle, and she understood that the Saturn Aura has a reputation for being of high-quality, durable, and safe. Plaintiff did not learn of the Power Steering Defect until April 2014.

2.      GM is a Delaware limited liability company doing business in all fifty states (including the District of Columbia) with its principal place of business in Detroit, Michigan. GM is responsible for the manufacture, distribution, and sale of all GM automobiles in the United States, as well as engineering design, research and development, and manufacturing activities in the United States, Canada, and Mexico. GM is a wholly-owned subsidiary of General Motors Company, a Delaware corporation with its principal place of business in Detroit, Michigan.

3.      GM was incorporated in 2009 and, on July 10, 2009, pursuant to a Master Sales and Purchase Agreement ("Agreement"), acquired substantially all assets and assumed certain liabilities of General Motors Corporation ("GM Corp.") through a Section 363 sale under Section 11 of the U.S. Bankruptcy Code.

4.  Under the Agreement, GM expressly assumed the following obligation:

> From and after the Closing, Purchaser [GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code, and similar laws, in each case, to the extent applicable in respect of vehicles and vehicles parts manufactured or distributed by [GM Corp.].

5.  GM also expressly assumed:

> All Liabilities arising under express written warranties of [GM Corp.] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by

[GM Corp.] or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws.

6.      GM is also liable through successor liability for the deceptive and unfair acts and omissions of GM Corp., as alleged in this Complaint, because GM acquired and operated GM Corp., and ran it as a continuing business enterprise, utilizing substantially the same brand names, logos, plants, offices, leadership, personnel, engineers, and employees. GM was aware from its inception of the Power Steering Defect in certain of its vehicles, and GM and GM Corp. concealed the Power Steering Defect from the public, regulators, and the bankruptcy court. Because GM is liable for the wrongful conduct of GM Corp., there is no need to distinguish between the conduct of GM Corp. and GM, therefore the Complaint will simply refer to GM as the corporate actor when describing the relevant facts.

### JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under 28 U.S.C. §1332(d) because the amount in controversy for the Class exceeds $5,000,000, exclusive of interest and costs, there are more than 100 Class members, and more than two-thirds of the Class is diverse from the Defendant.

8.      This Court has personal jurisdiction over the Defendant because the Defendant conducts substantial business in this District, and some of the actions giving rise to the claims in this Complaint took place in this District.

9.      Venue is proper in this District under 28 U.S.C. §1391(d) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant has caused harm to Class members residing in this District.

## FACTUAL ALLEGATIONS

10.    For years, GM manufactured and actively concealed a defect in certain of its vehicles. The power steering system of certain makes and model GM vehicles are dangerously susceptible to failure during normal and foreseeable driving conditions. When the power steering system fails, it makes the vehicle virtually impossible to steer or direct in a safe manner.

11.    The Plaintiff brings this action seeking relief against GM individually, and, on behalf of a class of persons whom purchased or leased vehicles that have a defective power steering system.

12.    Recently, GM admitted that the Power Steering Defect renders the vehicle unsafe and creates a risk of a crash and serious injury.

13.    The vehicles that have this defect (collectively, the "Defective Vehicles") are:

- Chevrolet Malibu: All vehicles in model years 2004 and 2005, and certain vehicles model years for 2006, 2008, and 2009;

- Chevrolet Malibu Maxx: All model years for 2004 and 2005, and certain vehicles in model year 2006;

- Chevrolet HHR (Non-Turbo): Certain vehicles in model years 2009 and 2010;

- Chevrolet Cobalt: Certain vehicles in model year 2010;

- Saturn Aura: Certain vehicles in model years 2008 and 2009;

- Saturn ION: All vehicles in model years 2004 to 2007;

- Pontiac G6: All vehicles in model year 2005, and certain vehicles in model years 2006, 2008, and 2009; and

- Service parts installed on certain vehicles before May 31, 2010, under a previous safety recall.

14.     So far, there are approximately 1.3 million Defective Vehicles.

15.     In March 2010, GM recalled 1.05 million 2005-10 Cobalts, and 2007-10 Pontiac G5s, because they were experiencing a loss of power that disabled the power steering system, making the vehicles difficult, if not impossible, to control. The electric motor that provides the assist to the power steering system could fail when debris built up on the motor's brushes ("2010 Recall").

16.     The 2010 Recall was based on complaints that the power steering would fail during routine and foreseeable use.  Indeed, as early as June 2004, the Power Steering Defect was experienced by drivers and prior to 2008, the Power Steering Defect started to result in numerous and serious reported injuries.

17.     The same or substantially similar power steering system that was recalled in 2010 is also used in all of the Defective Vehicles.

18.     Notwithstanding its knowledge that the Defective Vehicles had the same problem as the vehicles in the 2010 Recall, GM elected to put its profits over safety and refused to recall the other vehicles which it knew or should have known had a defect similar to the prior recalled vehicles.

19.     Now, after a decade of knowing that the design and/or manufacture of the power steering systems in the Defective Vehicles was unreasonably dangerous, GM issued a subsequent recall, which is at issue in this case ("2014 Recall").

20.     Despite its disregard for public safety, GM vehicles have been marketed based on safety from 2002, through the present. For example, Chevrolet emphasized on its website that "[y]our family's safety is important to us . . . That's why every Chevrolet is designed with a comprehensive list of safety and security features to help give you peace of mind." Likewise, in

advertisements for Saturn, GM utilized the slogan, "Saturn. People First," and stated that, "[i]n cars, it's about things like reliability, durability, and of course, safety. That's where we started when developing our new line of cars."

21.     Under   the   Transportation   Recall   Enhancement,   Accountability   and Documentation Act ("TREAD Act"), 49 U.S.C. §§ 30101-30170, and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defect. If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers, and dealers of the defect, and must remedy the defect. GM repeatedly violated the TREAD Act by actively concealing information about the Power Steering Defect for at least five years.

22.     Throughout the relevant period, GM possessed vastly superior knowledge and information -- if not exclusive knowledge-- to that of consumers about the design and function on the power steering in the Defective Vehicles and the existence of the defect in those vehicles.

23.     The Power Steering Defect and GM's gross misconduct have caused actual damages to Plaintiff and the Class. Plaintiff and the Class members did not receive the benefit of their bargains as purchasers and lessees, as they received vehicles that were less safe, less useful, and of lower quality and value than represented. Indeed, Plaintiff and the Class members contracted to purchase safe and reliable vehicles, not vehicles that do experience a sudden loss of power to the power steering system and thereby become difficult, if not impossible, to steer, increasing the chance for collisions and injuries. Accordingly, Plaintiff and the Class members paid an excessive amount for their vehicles or made higher than necessary lease payments. Had the Power Steering Defect been disclosed, Plaintiff and the Class Members would not have paid as much for their vehicles or made as high lease payments.

24.     The value of the Defective Vehicles has also been diminished because of the publicity regarding the Power Steering Defect.  The value of the Defective Vehicles has been further diminished based on GM's actions in refusing to disclose defects in their products as is evidenced by recent testimony in Congress, and documents provided to governmental entities related to GM's ignition switches and the Power Steering Defect, both of which can cause serious injuries and death.  GM's offer to replace the power steering system does not adequately address the diminished value of Plaintiff's, and the Class members' vehicles.

## TOLLING OF THE STATUTES OF LIMITATION

25.     All applicable statutes of limitation have been tolled by GM's knowing and active fraudulent concealment and denial of the Power Steering Defect. GM has been aware of the Power Steering Defect since at least 2004, and has concealed from the Plaintiff, the Class members, the public, and the United States government the complete truth about the Power Steering Defect.  Moreover, GM continued to design and manufacture new vehicles with the Power Steering Defect notwithstanding its knowledge that the power steering system was defective.

26.     Even now, after the Defective Vehicles have been recalled, GM continues to downplay the significance, danger, and nature of the Power Steering Defect.

27.     Plaintiff and the Class members did not discover and could not have discovered with reasonable diligence the facts that would have caused a reasonable person to suspect that the Power Steering Defect existed or that GM did not report information within its knowledge regarding the existence of a dangerous defect to federal authorities or consumers until shortly before this class action was filed.

28.     GM was and remains under a continuing duty to disclose to the NHTSA, the

Plaintiff, and the Class Members the true character, quality, and nature of the Defective Vehicles.

GM actively concealed the true character, quality, and nature of the Defective Vehicles. Plaintiff

and the Class members relied on GM's active concealment of these facts. GM is therefore

estopped from relying on any statutes of limitations in this action.

## CLASS ALLEGATIONS

29.     Plaintiff asserts that a class should be certified pursuant to Rules 23(b)(2) and

(b)(3), of the Federal Rules of Civil Procedure, and the following class should be certified:

> All persons in the United States who currently own or lease one or more of
> the following GM vehicles: Chevrolet Malibu: All vehicles in model years
> 2004 and 2005, and certain vehicles in model years 2006, 2008, and 2009;
> Chevrolet Malibu Maxx: All vehicles in model years 2004 and 2005, and
> certain vehicles in model year 2006; Chevrolet HHR (Non-Turbo): Certain
> vehicles in model years 2009 and 2010; Chevrolet Cobalt: Certain vehicles
> in model year 2010; Saturn Aura: Certain vehicles in model years 2008
> and 2009; Saturn ION: All vehicles in model years 2004 through 2007;
> Pontiac G6: All vehicles in model year 2005, and certain vehicles in
> model years 2006, 2008 and 2009.  Excluded from the Class are GM, its
> employees, co-conspirators, officers, directors, legal representatives, heirs,
> successors and wholly or partly owned subsidiaries or affiliated
> companies; class counsel and their employees; and the judicial officers
> and their immediate family members and associated court staff assigned to
> this case. Also excluded are any individuals claiming damages from
> personal injuries allegedly arising from the Defective Vehicles.

30.     Plaintiff also seeks to certify a Florida subclass (the "Florida Subclass"), defined

as:

> All Florida residents who currently own or lease one or more of the
> following GM vehicles: Chevrolet Malibu: All vehicles in model years
> 2004 and 2005, and certain vehicles in model years 2006, 2008, and 2009;
> Chevrolet Malibu Maxx: All vehicles in model years 2004 and 2005, and
> certain vehicles in model year 2006; Chevrolet HHR (Non-Turbo): Certain
> vehicles in model years 2009 and 2010; Chevrolet Cobalt: Certain vehicles
> in model year 2010; Saturn Aura: Certain vehicles in model years 2008
> and 2009; Saturn ION: All vehicles in model years 2004 through 2007;
> Pontiac G6: All vehicles in model year 2005, and certain vehicles in

model years 2006, 2008 and 2009. Excluded from the Class are GM, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case. Also excluded are any individuals claiming damages from personal injuries allegedly arising from the Defective Vehicles.

31. There are approximately 1.3 million Defective Vehicles. Given the number of Defective Vehicles, the number of potential Class members is sufficient to make joinder impracticable. Moreover, each Class member can be readily identified using registration records, sales records, production records, and other information kept by GM or third parties in the usual course of business and within its possession, custody, or control.

32. There are numerous questions of law and fact that are common to the Class and the Subclass and predominate over questions affecting only individual members, including the following:

(a.) Whether the power steering systems in the Defective Vehicles are defective;

(b.) Whether GM concealed these defects;

(c.) Whether GM misrepresented that the Defective Vehicles were safe;

(d.) Whether GM owed Plaintiff and the Class members a duty to disclose the Power Steering Defect;

(e.) Whether GM engaged in fraudulent concealment;

(f.) Whether GM engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with a Power Steering Defect; and

(g.)    Whether GM's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class.

33.    Plaintiff's claims are typical of the claims of the Class members, as Plaintiff and the Class members alike purchased or leased Defective Vehicles and were harmed in the same way by GM's uniform misconduct.

34.    Plaintiff will fairly and adequately protect the interests of the Class members and the members of the Florida Subclass. Plaintiff's counsel has substantial experience in prosecuting class actions. Plaintiff and her counsel are committed to vigorously prosecute this action, have the financial resources to do so, and do not have any interests adverse to the Class.

35.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable. Likewise, because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

36.    The questions of law and fact enumerated above predominate over questions affecting only individual members of the Class.

37.    The likelihood that individual members of the Class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation.

38.    This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class. The Plaintiff knows of no

difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

39.    GM has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole.

## COUNT I – VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
### (The MCPA, Michigan Comp. Laws Ann. § 445, *et seq.*)

40.    Plaintiff incorporates by reference paragraphs 1-39 as though fully set forth herein.

41.    This claim is brought on behalf of the nationwide Class.

42.    Plaintiff and the Class members are all "persons" under the Michigan Consumer Protection Act ("MCPA"), M.C.L.A. § 445.902(1)(d).

43.    GM was a "person" engaged in "trade or commerce" under the MCPA, M.C.L.A. § 445.902(1)(d) and (g).

44.    The MCPA prohibits any "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." M.C.L.A. § 445.903(1).

45.    GM's conduct, as alleged in the preceding paragraphs, constitutes unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce. In particular, GM violated the MCPA by:

> (a.)    "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer," M.C.L.A. § 445.903(s);

> (b.)    "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or

suggested state of affairs to be other than it actually is," M.C.L.A. § 405.903(bb); and

(c.) "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner," M.C.L.A. § 405.903(cc).

46. GM's practices that violated the MCPA include, without limitation, the following:

(a.) GM represented that the Defective Vehicles had safety characteristics that they do not have;

(b.) GM represented that the Defective Vehicles were of a particular standard, quality, or grade, when they were not;

(c.) GM knew of the Power Steering Defect, but failed to disclose its existence or its complete nature, even though GM knew that such information was material to the transaction in light of GM's prior representations;

(d.) GM failed to reveal material facts concerning the Power Steering Defect to the Plaintiff, the Class members, the public, and the United States government, the omission of which would tend to mislead or deceive consumers, and which could not be reasonably known to the Plaintiff, the Class members, the public, and the United States government;

(e.) GM engaged in unconscionable commercial practices in failing to reveal material facts and information about the Defective Vehicles, which did and tended to mislead the Plaintiff and the Class members about facts that could not reasonably be known by the consumer until the 2014 Recall;

(f.)    GM engaged in unconscionable commercial practices by continuing to design and manufacture the Defective Vehicles with the Power Steering Defect, notwithstanding its knowledge that the power steering system was defective;

(g.)    GM intended for Plaintiff, the Class members, the public, and the United States government to rely on its misrepresentations and omissions, so that Plaintiff and the Class Members would purchase or lease the Defective Vehicles; and

(h.)    GM repeatedly violated the TREAD Act.

47.    GM's acts and practices were unfair and unconscionable, because its acts and practices offend established public policy, and because the harm GM caused consumers greatly outweighed any benefits associated with its acts and practices. GM's conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff and the Class from making fully informed decisions about whether to lease, purchase, and/or retain Defective Vehicles.

48.    While GM knew of the Power Steering Defect as early as 2004, and knew that the defect caused the Defective Vehicles to have a propensity to lose power to the power steering system and become uncontrollable, it continued to design, manufacture, and market the Defective Vehicles until at least 2010.

49.    Plaintiff and the Class have suffered an injury, including the loss of money or property, as a result of GM's unfair, unlawful, and/or deceptive practices. Plaintiff and the Class have therefore suffered a "loss" because of the violations of the MCPA.

50. All of the wrongful conduct alleged here occurred, and continues to occur, in the conduct of GM's business.

51. Plaintiff requests that this Court: declare GM's conduct unlawful and in violation of the MCPA; enjoin GM from continuing its unfair, unlawful, and/or deceptive practices; require GM to repair Plaintiff's and the Class members vehicles to completely eliminate the Power Steering Defect; provide to Plaintiff and the Class members either their actual damages as a result of GM's unfair, unlawful, and deceptive trade practices, or $250 per Class member, whichever is higher; award reasonable attorneys' fees and costs; and provide other appropriate relief under the MCPA.

52. Plaintiff also seeks punitive damages against GM because it carried out its conduct with willful and conscious disregard of the rights and safety of others. GM intentionally, willfully, and repeatedly misrepresented the reliability and safety of the Defective Vehicles, and continued to conceal material facts that only it knew, even while numerous innocent victims were killed and injured as a result of its conduct. GM's unlawful conduct constitutes malice, oppression, and fraud justifying punitive damages.

## COUNT II –FRAUD BY CONCEALMENT

53. Plaintiff incorporates by reference paragraphs 1-39 as though fully set forth herein.

54. This claim is brought on behalf of the nationwide Class.

55. Notwithstanding the fact that GM knew that the power steering system in the Defective Vehicles was defective and unsafe, GM advertised the Defective Vehicles as being safe.

56.     Even though GM knew that the power steering system was defective and unsafe, GM made representations to each purchaser of a Defective Vehicle that the Defective Vehicle had a non-defective power steering system.

57.     GM had a duty to disclose the Power Steering Defect because it consistently represented that its vehicles were reliable and safe and advertised that it maintained the highest safety standards, and the defect was known and/or accessible only to GM, which had superior and unique knowledge and access to the facts, and GM knew that the facts were not known to or reasonably discoverable by Plaintiff and the Class. These omitted and concealed facts were material because they directly impacted the safety of the Defective Vehicles, and GM's prior representations regarding the safety of its vehicles became materially misleading when GM concealed facts regarding the Power Steering Defect.

58.     GM actively concealed and/or suppressed these material facts, in whole or in part, to induce Plaintiff and the Class members to purchase or lease the Defective Vehicles at high prices, and to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiff and the Class.

59.     Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff's and the Class's actions were justified.

60.     Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damages, including the difference between the actual value of that which Plaintiff and the Class members paid and what they received. The value of the Defective Vehicles has been diminished by GM's wrongful conduct.

61. GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, to enrich GM. GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT III-NEGLIGENT OMISSION

62. Plaintiff incorporates by reference paragraphs 1-39 as though fully set forth herein.

63. This claim is brought on behalf of the nationwide Class.

64. Notwithstanding the fact that GM knew that the power steering system in the Defective Vehicles was defective and unsafe, GM advertised the Defective Vehicles as being safe.

65. Even though GM knew that the power steering system was defective and unsafe, GM made representations to each purchaser of a Defective Vehicle that the Defective Vehicle had a non-defective power steering system.

66. GM had a duty to disclose the Power Steering Defect because it consistently represented that its vehicles were reliable and safe and advertised that it maintained the highest safety standards, the defect was known and/or accessible only to GM, which had superior and unique knowledge and access to the facts, and GM knew that the facts were not known to or reasonably discoverable by Plaintiff and the Class. These omitted and concealed facts were material because they directly impacted the safety of the Defective Vehicles, and GM's prior representations regarding the safety of its vehicles became materially misleading when GM concealed facts regarding the Power Steering Defect.

67.     GM negligently withheld such information from Plaintiff and the Class members.

68.     The withheld information was information that a reasonable person would find relevant, rely upon, and take into consideration in making the decision as to whether or not to purchase one of the Defective Vehicles.

69.     Plaintiff and the Class members were damaged as a result of GM's negligent omissions.

## COUNT IV-- VIOLATIONS OF THE FLORIDA UNFAIR & DECEPTIVE TRADE PRACTICES ACT (FDUTPA, Fla. Stat. § 501.201, *et seq.*)

70.     Plaintiff incorporates by reference paragraphs 1-39 as though fully set forth herein.

71.     This Count is brought on behalf of the Florida Subclass.

72.     Plaintiff is a "consumer" under FDUTPA, § 501.203(7), Fla. Stat.

73.     GM engaged in "trade or commerce" within the meaning of FDUTPA, § 501.203(8), Fla. Stat.

74.     Under the TREAD Act, 49 U.S.C. § 30101, *et seq.,* and its corresponding regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect, and must promptly notify vehicle owners, purchasers, and dealers of the defect and remedy the defect. The TREAD Act also requires manufacturers to file various reports and to notify the NHTSA within days of learning of a defect.

75.     From at least as early as 2004, GM was aware of the Power Steering Defect. GM, however, waited until March 2014, to finally send a letter to the NHTSA confessing that it knew

of the Power Steering Defect and that the defect could cause the loss of power to the power steering system.

76.     GM's failure to disclose an active concealment of the Power Steering Defect violated the TREAD Act, and thereby violated FDUTPA.

77.     GM also violated FDUTPA by engaging in the following practices:

(a.)     GM represented that the Defective Vehicles had safety characteristics that they did not have;

(b.)     GM represented that the Defective Vehicles were of a particular standard, quality, or grade, when they were not;

(c.)     GM knew of the Power Steering Defect, but failed to disclose its existence or its complete nature, even though GM knew that such information was material to the transaction in light of GM's prior representations;

(d.)     GM failed to reveal material facts concerning the Power Steering Defect to Plaintiff, the Florida Subclass, the public, and the United States government, the omission of which would tend to mislead or deceive consumers, and which could not be reasonably known to Plaintiff, the Class members, the public, and the United States government; and

(e.)     GM intended for Plaintiff, the Florida Subclass, the public, and the United States government to rely on its misrepresentations and omissions, so that Plaintiff and the Florida Subclass would purchase or lease the Defective Vehicles.

78.     Plaintiff and the Florida Subclass were injured as a result of GM's misconduct. Plaintiff and the Florida Subclass overpaid for the Defective Vehicles and did not receive the benefit of their bargain.

79.     Plaintiff seeks damages and an order enjoining GM's unfair or deceptive acts or practices and an order requiring GM to completely remedy the defect in Plaintiff's and the Florida Subclass Members' vehicles, pay actual damages and attorneys' fees and reasonable costs, and any other just and proper relief available under FDUTPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against GM, and grant the following relief:

A.     Determine that this action may be maintained as a Class action and certify it as such under Rule 23(b)(2), and 23(b)(3), and designate and appoint Plaintiff as Class and Subclass Representative, and Plaintiff's chosen counsel as Class Counsel;

B.     Declare, adjudge, and decree that GM's conduct is unlawful, unfair and deceptive, and enjoin any such future conduct;

C.     Declare, adjudge, and decree that the power steering in the Defective Vehicles are defective;

D.     Declare, adjudge, and decree that GM must disgorge, for the benefit of Plaintiff, the Class members, and the Subclass members, all of the ill-gotten gains it received from the sale or lease of the Defective Vehicles;

E.     Award Plaintiff, the Class members, and the Subclass members actual, compensatory damages, or, in the alternative, statutory damages, as proven at trial;

F.      Alternatively, if elected by Plaintiff, the Class members, and the Subclass Members, require GM to repair the Power Steering Defect or provide a comparable vehicle that does not have the Power Steering Defect;

G.      Award Plaintiff, the Class members, and the Subclass members punitive damages in such an amount as proven at trial;

H.      Award Plaintiff, the Class members, and the Subclass members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest; and

I.      Award Plaintiff, the Class members, and the Subclass Members such other further relief as the case may require or as determined to be just, equitable, and proper by this Court.

## DEMAND FOR JURY TRIAL

The Plaintiff, Nancy Hausmann Frank, hereby requests a trial by jury of all issues so triable as a matter of right.

DATED this 6 day of May, 2014.

Respectfully submitted,

ZEBERSKY PAYNE, LLP
110 SE 6th St., Suite 2150
Fort Lauderdale, FL 33301
Telephone:     (954) 989-6333
Facsimile:     (954) 989-7781

By: _____
Edward H. Zebersky, Esq. (FBN: 908370)
ezebersky@zpllp.com

and

David M. Buckner (FBN: 60550)
dbu@grossmanroth.com

Seth E. Miles (FBN: 385530)
sem@grossmanroth.com
Brett E. von Borke (FBN: 0044802)
bvb@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Blvd., Suite 1150
Coral Gables, FL 33134
Telephone No.: (305) 442-8666
Facsimile: (305) 285-1668

***Attorneys for Plaintiff***