# Exhibit R

1   DESAI LAW FIRM, P.C.
    Aashish Y. Desai, Esq. (SBN 187394)
2   Adrianne De Castro, Esq. (SBN 238930)
    3200 Bristol Street, Suite 650
3   Costa Mesa, CA 92626
    Telephone: (949) 614-5830
4   Facsimile: (949) 271-4190
    aashish@desai-law.com;
5   adrianne@desai-law.com

6

7   Attorneys for Plaintiff, SONIA NAVA, Individually
    and on behalf of all others similarly situated

8

9              **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA**

11

12   SONIA NAVA, individually, and on   )  CASE NO.
    behalf of all others similarly situated,   )
13                     )  **CLASS ACTION COMPLAINT**
           Plaintiffs,         )
14                     )
         v.             )
15                     )  **JURY TRIAL DEMANDED**
    GENERAL MOTORS, LLC., and     )
16   DOES 1 through 10, inclusive,     )
                    )
17         Defendants.       )
                    )
18                     )
                    )
19                     )
                    )
20                     )
                    )
21                     )
                    )
22                     )
                    )
23                     )

24

25

26

27

28

1

1

## INTRODUCTION

2

3

Plaintiff Sonia Nava, individually and on behalf of the other members of the California class she seeks to represent ("the Class") against General Motors, LLC ("GM" or "Defendant"), alleges upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

4

5

6

7

8

## NATURE OF THE CASE

9

10

1.     Plaintiff brings this class action seeking redress and remedy from GM on behalf of herself and the other class members, each of whom purchased or leased one or more of the following vehicles: 2003-2007 Saturn Ion ("Defective Vehicles").

11

12

13

2.     Each of the Defective Vehicles contains a uniformly designed ignition switch which is substantially similar for all the Defective Vehicles, with the key position of the lock module on the steering column, and an ignition key with a slot for a key ring at the top (hereinafter referred to as "Key System"). The Key System on these vehicles is prone to fail during ordinary and foreseeable driving situations. GM has actual knowledge that, because of the way in which the Key System was designed and integrated into the Defective Vehicles, the ignition switch can suddenly fail during normal operation, cutting off engine power and certain electrical systems in the cars, which in turn, disables key vehicle components, safety features (like airbags), or other vehicle functions, leaving occupants vulnerable to crashes, serious injuries, and death.[1]

14

15

16

17

18

19

20

21

22

23

24

3.     The Key System defects in the Defective Vehicles have been linked to at least thirty-one crashes and thirteen deaths, and GM has recognized that the Key System poses an "increas[ed] risk of injury or fatality" to occupants because the ignition switch may move out of the "run" position during operation."

25

26

27

28

---

[1] See Exhibit A, GM Recall Letter.

4.    Although GM has, and has had, actual knowledge of safety defects in the Key System in the Defective Vehicles for years, it fraudulently concealed and continues to fraudulently conceal material facts regarding the extent and nature of safety defects in the Defective Vehicles and what must be done remedy them.

5.    In fact, GM has not only fraudulently concealed material facts relating to the safety defects in the Key System in the Defective Vehicles for years, but it has also made affirmative fraudulent and misleading statements, and it is continuing to make fraudulent and misleading statements to the public and the Class regarding the nature and extent of the safety defects in the Key System in the Defective Vehicles.

6.    While GM has initiated a recall of identified vehicles in which is acknowledges a defect with the ignition switch itself, it knows – and one of its engineering documents reflect – that the defects transcend just the ignition switch and also include the placement of the ignition switch, a lack of adequate protection of the ignition switch from forces of inadvertent driver contact, and the use of different types of keys.  To fully remedy the problem and render the Defective Vehicles safe and of economic value to their owners again, additional design elements beyond a new ignition switch are needed.

7.    The fact that GM has, to date, issued a partial recall despite knowing the insufficiency thereof underscores GM's ongoing, fraudulent concealment and fraudulent misrepresentation of the nature and extent of the defects, and makes this class action even more important to obtaining the proper remedy for Plaintiffs and the other Class members.

8.    GM's defective Key System design, combined with GM's past and ongoing failure to adequately warn of, or remedy, that design, and its past and ongoing fraudulent concealment and/or fraudulent misrepresentation of the full nature and extent of the defects in that design in the Defective Vehicles, has proximately caused and continues to cause Plaintiff and the other Class members to

3

1    suffer economic damages because they purchased or leased vehicles that: (a) have
2    diminished value as they presently exist because the Key System cannot be
3    operated safely without fear of catastrophic event; and (b) require modification of
4    the Key System, beyond that included in the recent GM recall of the Defective
5    Vehicles, to be operated safely or sold to other buyers, as demonstrated by GM's
6    own internal documents that have not been disclosed to the general public (but that
7    are discussed below).

8        9.    Through this action, Plaintiff, individually and on behalf of the other
9    Class Members, seeks injunctive relief in the form of a repair to fully remedy the
10   defects in the Key System such that the Defective Vehicles have their economic
11   value restored and can be operated safely and/or damages to compensate them for
12   the diminished value of their Defective Vehicles as a result of the defect and GM's
13   wrongful conduct related to same.

14                        **JURISDICTION AND VENUE**

15       10.   This court has subject matter jurisdiction over this action under the
16   Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Plaintiff alleges and
17   believes that the aggregate claims of the Class exceed $5,000,000 exclusive of
18   interest and costs. There are more than 100 class members, and many members of
19   the Class are diverse from GM.

20       11.   This court has personal jurisdiction over GM because GM's contacts
21   with the State of California are systematic, continuous, and sufficient to subject
22   them to personal jurisdiction in this Court.

23       12.   Venue is proper in this district under 28 U.S.C. § 1391 because a
24   substantial part of the events or omissions giving rise to the claims occurred within
25   this District, and because Plaintiff Nava is a resident of Orange County, California,
26   which is in this District.

27

28

                                    4

## PARTIES

13.     Plaintiff Sonia Nava is a citizen of the State of California, and is a resident of Santa Ana, which is in Orange County, California.

14.     Plaintiff Nava owns a 2004 Saturn Ion.

15.     Induced by GM's fraudulent concealment and misrepresentations about the existence of a defect of the severity and extent of the defects, which left her without knowledge of the conditions or the lack of value in a vehicle containing such unremedied defects, Plaintiff purchased her Saturn Ion during the liability period in California. She would not have paid as much as she did for the vehicle had she known that, as sold, it was defective.

16.     Plaintiff Nava was recently informed about the recall but her GM dealer has yet to correct the problem.

17.     GM should have disclosed the Key System defects when Plaintiff Nava purchased the vehicle. Plaintiff Nava would not have purchased the vehicle or paid as much as she did had she known of the defects.

### Defendant

18.     GM is a Delaware limited liability company doing business in all fifty states with its principle place of business in Detroit, Michigan.

19.     GM, which is a successor GM entity resulting from the GM chapter 11 bankruptcy proceeding, contractually assumed liability for the claims in this lawsuit. The Defective Vehicles were originally designed, manufactured, marketed and distributed into the stream of commerce by GM's predecessor, General Motors Corporation (sometimes referred to here as "old GM"). In July 2009, Defendant General Motors, LLC ("new GM") purchased the old GM.

20.     The sale of the old GM to new GM was memorialized in a contract that made new GM legally responsible for those vehicles still on the road and recognized that it is responsible for these vehicles despite old GM's bankruptcy. *See* Amended and Restated Mater Sale and Purchase Agreement Section 2.2 which

5

1  defines Purchased Assets as "all inventories of vehicles....finished
2  products...wherever located, including any of the foregoing in the possession
3  of...customers."

4      21.    Under this Agreement, Defendant GM also "Assumed Liabilities"
5  which included "all Liabilities arising out of, relating to, in respect of, or in
6  connection with the use, ownership or sale of the Purchased Assets after Closing."

7      22.    In addition, Defendant GM is liable for the claims alleged here
8  because since 2009, new GM has had its own independent knowledge of the defects
9  in the Defective Vehicle and the need for the multiple design steps to be undertaken
10  to fully resolve those defects so as to prevent injury and economic harm to owners
11  of GM vehicles.

12     23.    For all these reasons, and others to be confirmed or which may emerge
13  during the course of discovery, Defendant GM is the proper party against whom to
14  assert the claims herein, and Plaintiff and the Class will use the term GM from
15  point forward in the Complaint to refer collectively to both GM entities.

16                        **FACTUAL BACKGROUND**

17  **The Defective Vehicles Have Common Defects in their Key Systems, and GM**
18        **knew of the Defects for at Least a Decade and a Concealed them**

19     24.    In 2001, during development testing of the 2003 Saturn Ion, GM
20  learned that the engines in those cars were stalling due to defects in the Key System
21  therein.    GM chose not to fix these defects.    Instead, in 2002, GM began
22  manufacturing and selling 2003 Saturn Ions with defective Key System.

23     25.    In 2004, GM engineers reported that the ignition switch on the Saturn
24  Ion was so weak and so low on the steering column that the driver's knee could
25  easily bump the key and turn off the car.

26     26.    This defect was sufficiently serious for a GM engineer, in January
27  2004, as part of GM's vehicle evaluation program, to affirmatively conclude, in
28  writing, that "[t]his is a basic design flaw and should be corrected if we want repeat

6

1   sales."

2       27.    GM had actual knowledge of this defect.  In fact, on February 28,
3   2005, it issued a bulletin with recommendations/instructions to its dealers
4   informing them of the "potential for a driver to inadvertently turn off the ignition
5   due to low key ignition cylinder torque/effort."  GM informed its dealers that if a
6   customer reports these issues, the "customer should be advised of this potential and
7   take steps, such as removing unessential items from their key chains, to prevent it."

8       28.    GM knew that the inadvertent turning off of the ignition in the
9   Defective Vehicles was not due to items on a consumer's key chain but rather was
10  due to design defects in the Key System in those vehicles.

11      29.    Rather than disclose this serious safety problem that uniformly affects
12  the Defective Vehicles, GM, instead concealed and obscured the problems electing
13  to wait until customers brought their cars to a dealership after an engine-stalling
14  incident.

15      30.    As of February 2005, GM engineers knew that the Saturn Ion vehicles
16  had the safety-related defects discussed in this complaint.

17      31.    Pursuant to 49 C.F.R. § 573.6, which requires an automobile
18  manufacturer to "furnish a report to the NGTSA for each defect…related to motor
19  vehicle safety," GM had a duty, no later than February 2005 to disclose the safety
20  related defects in the Defective Vehicles.

21      32.    Instead of complying with its legal obligations, GM fraudulently
22  concealed the Key System defect from the public – including Plaintiff and the other
23  Class Members – and continued to manufacture and sell Saturn Ions with these
24  known safety defects, causing Plaintiff and the other Class Members to purchase
25  and own, and continue to own, vehicles that contained a defective and dangerous
26  system.

27      33.    Although GM had actual knowledge of safety defects that it was
28  concealing, GM continued to sell hundreds of thousands of Defective Vehicles,

7

1   reaping profits from those sales from purchasers who were never informed the
2   vehicles they were purchasing had a defective Key System and therefore, were
3   unable to consider that information in deciding whether to purchase or lease the
4   Defective Vehicles.

5                      **GM Issues a recall**

6       34.   In April 2014, GM issued a recall for defects related to vehicle safety
7   that exist in all 2003-2007 MY Saturn Ion vehicles.  The notice applied to
8   Plaintiff's 2004 Saturn ION.  The recall notice informed Plaintiff and other class
9   members that the parts needed for the recall repairs are becoming available for
10   dealers and advised Plaintiff to contact her GM dealer to schedule an appointment
11   to have the recall repairs performed.  The notice also informed Plaintiff that she
12   should remove all items from the key ring since under certain conditions, the
13   ignition switch may move out of the "run" position, resulting in partial loss of
14   electrical power and turning off the engine.

15       35.   GM's recall is woefully inadequate, and ten years too late. Since at
16   least 2005, GM has known that simply replacing the ignition switches on the
17   Defective Vehicles is not a solution to the potential for the key to inadvertently turn
18   from the "run" to the "accessory/off" position in these vehicles.

19       36.   Additionally, GM's recall fails to address the design defect that causes
20   the key fob/chain to hang too low on the steering column.  Thus, even when the
21   ignition switches are replaced, this defective condition would still exist in the
22   Defective Vehicles and there continues to be the potential for a driver to contact the
23   key chain and inadvertently turn the key from the "run" to the "accessory/off"
24   position.

25       37.   This recall also fails to address the design defects in the Defective
26   Vehicles which disables the airbag immediately upon the engine shutting off.

27               **CLASS ACTION ALLEGATIONS**

28       38.   Plaintiff brings this action as a class under F.R.C.P. 23(a). 23(b)(2),

1 and 34(b)(3) and on behalf of herself and all others similarly situated. Plaintiff
2 seeks to represent a California class initially defied as:

3        39.    All current and former owners and lessees of a Defective Vehicle who
4 were issued recall notices by GM. And appropriate sub-class exists for all current
5 and former California owners and lessees of a Defective Vehicle who were issued
6 recall notices by GM.

7        40.    Excluded from the state class are GM, as well as GM's employees,
8 affiliates, officers, and directors, including franchised dealers, any individuals who
9 experienced physical injuries as a result of the defects at issue in this litigation, and
10 the judge and court staff to whom this case is assigned. Plaintiff reserves the right
11 to amend the definition of the class if discovery or further investigation reveals that
12 the class should be expanded or otherwise modified.

13       41.    **Numerosity and impracticality of joinder.** The members of the class
14 are so numerous that joinder of all members is impractical. Thousands of class
15 members purchased or leased the Saturn Ions. These members of the class are
16 easily and readily identifiable from information and records in GM's possession,
17 custody, or control.

18       42.    **Commonality and predominance**. There are common questions of
19 law and fact that predominate over any questions affecting the individual members
20 of the class. Common legal and factual questions include, but are not limited to:

21            (a) Whether GM breached the duty of reasonable care it owed to the Class;
22            (b) Whether GM's breach of its duties directly and proximately caused the
23                class damages;
24            (c) Whether GM omitted, misrepresented, concealed, or manipulated material
25                facts from Plaintiffs and the Class regarding defects, the actions taken to
26                address the defects, and the result of those actions;
27            (d) Whether GM had a duty to disclose those defects to Plaintiff and the other
28                class members;

9

(e) Whether GM engaged in fraud, fraudulent concealment, and made fraudulent representations to the public;

(f) Whether Plaintiff and the Class members are entitled to damages; and

(g) Whether Plaintiff and the Class Members are entitled to equitable relief or other relief, and the nature of such relief.

43.    **Typicality.** Plaintiff's claims are typical of the claims of the other class members because Plaintiff and the Class Members purchased the vehicle that continued defective parts. Neither Plaintiff nor the other class members would have purchased the Saturn had they known of the defects in the vehicles. These defects pose an unreasonable risk of harm to the Plaintiff and the Class. Plaintiff and the other class members suffered damages as a direct proximate result of the same wrongful practices that GM engaged in. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other class members. Plaintiff's claims are based upon the same legal theories as the claims of the other class members.

44.    **Adequacy**. Plaintiff will fully and adequately protect the interests of the other members of the class and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation. Neither Plaintiff nor her counsel has interests that conflict with the interests of the other class members.

45.    **Declaratory and Injunctive Relief.** GM has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the class members as a whole.

46.    **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other thing: it is economically impracticable for members of the class to prosecute

10

1  individual actions; prosecution as a class action will eliminate the possibility of

2  repetitious and redundant litigation; and a class action will enable claims to be

3  handled in an orderly, and expeditious manner.

## FIRST CAUSE OF ACTION

### Violation of Magnuson-Moss Warrant Act (Federal "Lemon Law")

### 15 U.S.C. §§ 2301, *et seq.*

7  47.    Plaintiff repeats and realleges all paragraphs above as if fully set forth

8  herein.

9  48.    This court has jurisdiction to decide claims brought under 15 U.S.C. §

10  2301 by virtue of 28 U.S.C. § 1332(a)-(d).

11  49.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss

12  Warranty Act, 15 U.S.C. § 2301(3).

13  50.    GM is a "supplier," and "warrantor" within the meaning of the

14  Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

15  51.    The Saturn Ion 2004 and other Defective Vehicles are "consumer

16  products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §

17  2301(1).

18  52.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer

19  who is damaged by the failure of a warrantor to comply with a written or implied

20  warranty.

21  53.    GM's express warranties are written warranties within the meaning of

22  the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Saturn Ion's implied

23  warranties are covered under 15 U.S.C. § 2301(7).

24  54.    GM breached these warranties.

25  55.    The amount in controversy of Plaintiff's individual claims meets or

26  exceeds the sum of $25. The amount in controversy of this action exceeds the sum

27  of $50,000, exclusive of interest and costs, computer on the basis of all claims to be

28  determined in this lawsuit. Plaintiff, individually and on behalf of the other class

11

1  members, seek all damages permitted by law, including diminution of value of their
2  vehicles, in an amount to be proven at trial.

3  ## SECOND CAUSE OF ACTION

4  ### Fraudulent Concealment

5  56.   Plaintiff repeats and realleges all paragraphs above as if fully set forth
6  herein.

7  57.   GM concealed material facts from Plaintiffs, the other Class members,
8  the public, and the NHTSA.  GM knew that the Saturn Ions were designed and
9  manufactured with Key System defects, but GM concealed those material facts.
10 Although the Defective vehicles contain material safety defects that GM knew or
11 should have known of, at the time of distribution, GM recklessly manufactured and
12 distributed those vehicles to consumers in the United States.  Those consumers had
13 no knowledge of the defects.

14 58.   GM had a duty to disclose the facts to Plaintiffs, the other Class
15 Members, the public, and the NHTSA, but failed to do so.

16 59.   GM knew that Plaintiff and the other class members had no knowledge
17 of those facts and that neither Plaintiff nor the Class Members had an equal
18 opportunity to discover those facts.  GM was in a position of superiority over
19 Plaintiff and the other Class members.  Indeed, Plaintiff and the other Class
20 members trusted GM not to sell or lease them vehicles that were defective or that
21 violated federal law governing motor vehicle safety.

22 60.   By failing to disclose these material facts, GM intended to induce
23 Plaintiff and the class members to purchase or lease defective vehicles.

24 61.   Plaintiff and the other Class members reasonably relied on GM's
25 nondisclosure.

26 62.   Plaintiff and the other Class members would not have purchased or
27 leased the Saturn Ion had they known of the ignition-switch defect, or certainly
28 would not have paid as much as they did.

63.     GM reaped the benefit of the sale and leases of the Defective Vehicles as a result of its nondisclosure.

64.     As a direct and proximate result of GM's wrongful conduct, Plaintiffs and the other class member have suffered or will suffer damages, including the cost of repairing the Key Systems in their vehicles to fully remedy the defects such that the Defective Vehicles can be operated safely, and the diminished value of their defective vehicles as a result of defect's and GM's wrongful conduct related to the same.

65.     GM's conduct was knowing, intentional, with malice, and demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other class members, such that punitive damages are appropriate.

## THIRD CAUSE OF ACTION

### Violation of California Unfair Competition Law

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

66.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

67.     California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business acts or practices."

68.     GM has violated the unlawful and unfair prongs of § 17200 because the Defective Vehicles share a common design defect in that they are equipped with defective Key Systems that can suddenly fail during normal operation, leaving occupants of the Defective Vehicles vulnerable to crashes, serious injury, and death.  GM has admitted that the Defective Vehicles are defective in issuing its recall.

69.     GM failed to adequately disclose and remedy this issue.

70.     GM's conduct offends established public policy, as the harm GM caused to consumer greatly outweighs any benefits associated with those practices.

71.     Plaintiff and the other Class members have suffered an injury in fact,

13

1  including the loss of money or property, as a result of GM's unfair, unlawful,
2  and/or deceptive practices.

3      72.    GM has violated the fraudulent prong of § 17200 because GM
4  misrepresented the quality, safety, and reliability of the Defective Vehicles.

5      73.    The Plaintiff and the class members relied on the
6  misrepresentations/omissions of GM with respect to the quality, safety, and
7  reliability of the Defective Vehicles. Plaintiff and the Class would not have
8  purchased or leased the Defective Vehicles and/or paid as much for them but for
9  GM's misrepresentations and/or omissions.

10      74.    All of the wrongful conduct alleged herein occurred, and continues to
11  occur, in the conduct of GM's business. GM's wrongful conduct is part of a pattern
12  or generalized course of conduct that is still perpetuated and repeated in California.

13      75.    Plaintiff, individually and on behalf of the Class, request that this
14  Court enjoin GM from continuing its unfair, unlawful, and/or deceptive practices
15  and restore to Plaintiff and the other class members any money acquired by its
16  unfair competition, including restitution and/or restitutionary disgorgement, as
17  provided in Cal. Bus. & Prof. Code § 17203, and Cal. Civ. Code § 334.

18  <center>**FOURTH CAUSE OF ACTION**</center>

19  <center>**Violation of the California False Advertising Law**</center>

20  <center>**Cal. Civ. Code §§ 17500, *et seq.***</center>

21      76.    Plaintiff repeats and realleges all paragraphs above as if fully set forth
22  herein.

23  Cal Business and Profession Code § 17500 states:

24      It is unlawful for any...corporation...with intent directly or indirectly to
25      dispose of real or personal property...to induce the public to enter into any
26      obligation relating thereto, to make or disseminate or cause to be made or
27      disseminated...from this state before the public in any state, in any
28      newspaper or other publication, or any advertising device,...or in any other

<center>14</center>

1    manner or means whatever, including over the Internet, any

2    statement…which is untrue or misleading, and which is known, or which by

3    the exercise of reasonable care should be known, to be untrue or misleading.

4    77.    Through advertising, marketing, and other publications, GM caused

5    statements to be disseminated that were untrue or misleading, and that were known,

6    or that by the exercise of reasonable care should have been known to GM, to be

7    untrue and misleading to consumers, including Plaintiffs and other Class members.

8    78.    GM has violated § 17500 because its misrepresentations and omissions

9    regarding the safety and reliability of its Defective Vehicles were material and

10   likely to deceive a reasonable consumer.

11   79.    Plaintiff and the other class members have suffered an injury in fact,

12   including the loss of money or property, as a result of GM's unfair, unlawful,

13   and/or deceptive practices.   In purchasing or leasing their Defective Vehicles,

14   Plaintiff and the Class relied on the misrepresentations and/or omissions of GM

15   with respect to the safety and reliability of the Defective Vehicles.

16   80.    GM's representations turned out to be false because the Defective

17   Vehicles share a common design defect in that they are equipped with defective

18   Key Systems that can suddenly fail during normal operations, leaving occupants of

19   the Defective Vehicles vulnerable to crashes, serious injury, and death. Had

20   Plaintiffs and the other class members known this, they would not have purchased

21   or leased their Defective Vehicles and/or paid as much for them.

22   81.    Accordingly, Plaintiff and the Class overpaid for their defective

23   vehicles and did not receive the benefit of their bargain.

24   82.    All of the wrongful conduct alleged herein occurred, and continues to

25   occur in the conduct of GM's business.  GM's wrongful conduct is part of a pattern

26   of generalized course of conduct that is still perpetuated and repeated in California.

27   83.    Plaintiff, individually and on behalf of the Class, requests that this

28   Court enjoin GM from continuing its unfair, unlawful, and/or deceptive practices

15

1  and to restore Plaintiffs and the other Class members any money acquired by unfair

2  competition, including restitution and/or restitutionary disgorgement, and other

3  such relief as is appropriate.

## FIFTH CAUSE OF ACTION

### Violation of Song-Beverly Consumer Warranty Act (California's "Lemon Law") for Breach of Warranty Cal. Civ. Code § 1790, *et seq.*

7      84.    Plaintiff repeats and realleges all paragraphs above as if fully set forth

8  herein.

9      85.    Plaintiff and the other Class members who purchased their Defective

10  Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

11      86.    The Defective Vehicles are "consumer goods" within the meaning of

12  Cal. Civ. Code § 1791(a).

13      87.    GM is a "manufacturer" of the Defective Vehicles within the meaning

14  of Cal. Civ. Code § 1791(j).

15      88.    Plaintiff and the Class bought/leased new motor vehicles manufactured

16  by GM.

17      89.    GM made express warranties to Plaintiffs and the other Class members

18  within meaning of Cal. Civ. Code §§ 1791.2 and 1793.2 in its warranty, manual,

19  and advertising, as described above.

20      90.    The Defective Vehicles share a common design defect in that they are

21  equipped with defective Key Systems that can suddenly fail during normal

22  operations, leaving occupants of the Defective Vehicles vulnerable to crashes,

23  serious injury, and death.  GM has admitted that the Defective Vehicles are

24  defective in issuing its recall.

25      91.    The Defective Vehicles are covered by GM's express warranties. The

26  defects described herein substantially impair the use, value, and safety of the

27  Defective Vehicles to reasonable consumers, including Plaintiff and the Class.

28      92.    GM was provided notice of these issues and defects by numerous

1  complaints filed against it, as well as its own internal knowledge derived from
2  testing and internal expert analysis.

3      93.  GM has had the opportunity to cure the defect in the Defective
4  Vehicles but is has chosen not to do so.  GM has had ample warning of the defect
5  through various complaints, filed both in court with the NHTSA, and directly with
6  GM, and it has failed to remedy the defect.  Giving GM a chance to cure the defect
7  is simply not practicable here and would serve only to delay this litigation.

8      94.  As a result of GM's breach of its express warranties, Plaintiff and the
9  Class received goods whose dangerous condition substantially impairs their value
10  to Plaintiff and the other Class members.  Plaintiffs and the other Class members
11  have been damaged as a result of diminished value of GM's products, the product's
12  malfunctioning, and the non-use of their Defective Vehicles.

13      95.  Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff and the Class
14  are entitled to damages and other legal and equitable relief including, at their
15  election, the purchase price of their vehicles, or the overpayment or diminution in
16  value of their Defective Vehicles.

17      96.  Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class
18  members are entitled to costs and attorneys' fees.

19  <div align="center">**SIXTH CAUSE OF ACTION**</div>

20  <div align="center">**Violation of Song-Beverly Consumer Warranty Act (California's "Lemon**</div>
21  <div align="center">**Law") for Breach of Implied Warranty Cal. Civ. Code § 1790, *et seq.***</div>

22      97.  Plaintiff repeats and realleges all paragraphs above as if fully set forth
23  herein.

24      98.  Plaintiff and the other Class members who purchased their Defective
25  Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

26

27      99.  The Defective Vehicles are "consumer goods" within the meaning of
28  Cal. Civ. Code § 1791(a).

100. GM is a "manufacturer" of the Defective Vehicles within the meaning of Cal. Civ. Code § 1791(j).

101. GM impliedly warranted to Plaintiff and the other Class members that the Defective Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1791, however, the Defective Vehicles do not have the quality that a buyer would reasonably expect.

102. Cal. Civ. Code § 1791.1(a) states: "implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of facts made on the container or label.

94. The Defective Vehicles would not pass without objection in the automotive trade because they share a common design defect in that they are equipped with defective Key Systems that can suddenly fail during normal operations, leaving occupants of the Defective Vehicles vulnerable to crashes, serious injury, and death. GM has admitted that the Defective Vehicles are defective in issuing its recall.

95. Because of the defective Key Systems, the Defective Vehicles are not safe to drive and thus not fit for ordinary purposes.

96. The Defective Vehicles are not adequately labeled because the labeling fails to disclose the defects described herein.

97. GM has breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles that are defective. Furthermore, this defect caused Plaintiffs and the Class to not receive the benefit of their bargain and

18

1  have cause the Defective Vehicles to depreciate in value.

2      98.    GM was provided notice of these issues and defects by numerous
3  complaints filed against it, as well as its own internal knowledge derived from
4  testing and internal expert analysis.

5      99.    As a direct and proximate result of GM's breach of implied warranty
6  of merchantability, Plaintiff and the Class received goods whose dangerous
7  condition substantially impairs their value to Plaintiffs and the other Class
8  Members.

9      100.   Plaintiffs and the other Class members have been damaged as a result
10  of diminished value of GM's products.

11      101.   Pursuant to Cal. Civ. Code §§ 1793.1(d) & 1794, Plaintiff and the
12  Class are entitled to damages and other legal and equitable relief including, at their
13  election, the purchase price of their vehicles, or the overpayment or diminution in
14  value of their Defective Vehicles.

15      102.   Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class
16  members are entitled to costs and attorneys' fees.

17                        **SEVENTH CAUSE OF ACTION**

18              **Violation of California Consumer Legal Remedies Act**

19                        **Cal. Civ. Code §§ 1750, *et seq.***

20      94.    Plaintiff repeats and realleges all paragraphs above as if fully set forth
21  herein.

22      95.    Plaintiff and the other Class members were deceived by GM's failure
23  to disclose that the Defective Vehicles share a common design defect in that they
24  are equipped with defective Key Systems that can suddenly fail during normal
25  operations, leaving occupants of the Defective Vehicles vulnerable to crashes,
26  serious injury, and death.  GM has admitted that the Defective Vehicles are
27  defective in issuing its recall.

28      96.    GM intended for Plaintiffs and the other Class member to rely on it to

19

1  provide safe, adequately designed, and adequately manufactured automobiles and to
2  honestly and accurately reveal the problems described throughout this Complaint.

3      97.  GM intentionally failed or refused to disclose the defect to consumers
4  and, instead allowed consumers to believe the representations it had made about the
5  Defective Vehicles.

6      98.  GM's conduct and deceptive omission were intended to induce
7  Plaintiff and the Class to believe the defective vehicles were safe, adequately
8  designed, and adequately manufactured automobiles.

9      99.  GM's conduct constitutes unfair acts or practices as defined by the
10  California Consumer Legal Remedies Act ("CLRA").

11      100.  Plaintiff and the other class have suffered injury in fact and actual
12  damage resulting from GM's material omissions and misrepresentations because
13  they paid an inflated price for the Defective Vehicles.  However, Plaintiff and the
14  Class reserve any claim for damages under the CLRA and by this Complaint bring
15  only an action for injunctive relief under the CLRA pursuant to § 1782(d) of the
16  Act.

17      101.  Plaintiff and the other Class members' injuries were proximately
18  caused by GM's fraudulent and deceptive business practices.  However, Plaintiff
19  and the Class reserve any claim for damages under the CLRA and by this
20  Complaint bring only an action for injunctive relief under the CLRA pursuant to §
21  1782(d) of the Act.

22      102.  GM's conduct described herein is fraudulent, wanton, and malicious.

23      103.  Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on
24  behalf of the Class, seeks a Court order enjoining the above-described wrongful
25  acts and practices of GM. Plaintiff and the other Class member reserve any claim
26  for restitution, disgorgement, or damages under the CLRA pursuant to § 1782(d) of
27  the Act.

28      104.  Pursuant to § 1782 of the Act, Plaintiff provided GM written notice of

20

1  its violations of the CLRA, and demands that GM rectify the problems associated
2  with the actions detailed above and give notice to all affected consumers of GM's
3  intent to so act.  Exhibit "A."

4     105.  If GM fails to rectify or agree to rectify the problems associated with
5  the actions detailed above, and give notice to all affected consumers within 30 days
6  of the date of written notice pursuant to § 1782 of the Act, Plaintiff will amend this
7  complaint to add claims for actual, punitive and statutory damages, restitution, and
8  disgorgement under the CLRA as appropriate under the Cal. Civ. Code § 1780, and
9  § 1782(d).

10    106.  Pursuant to § 1780(c) of the Act, attached hereto as Exhibit B is the
11  affidavit showing that this action has been commenced in the proper forum.

12                          **PRAYER FOR RELIEF**

13     WHEREFORE, Plaintiffs pray for judgment as follows:

14     (a)    That the Court certify this action as a class action, appointing Plaintiff
15  as class representative and appointing Plaintiffs' Counsel as lead counsel;

16     (b)    That the Court enjoin GM from continuing the unfair practices alleged
17  in this Complaint and requiring GM to repair the Defective Vehicles;

18     (c)    That the Court award Plaintiff and the other Class members
19  compensatory damages in an amount to be proven at trial;

20     (d)    That the Court award Plaintiff and the other Class members punitive
21  damages in an amount to be proven at trial;

22     (e)    That the Court award Plaintiff and the other Class members attorneys'
23  fees, costs, and expenses; and

24     (f)    That the Court award Plaintiff and the other Class members all other
25  and further relief as this Court deems appropriate and just under the circumstances.

26

27

28

21

Date: May 14, 2014

DESAI LAW FIRM, P.C.

By _____

Aashish Y. Desai, Esq.
M. Adrianne De Castro, Esq.
Attorneys for Plaintiffs, Individually
and on behalf of all others similarly
situated

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury on all issues so triable.

Date: May 14, 2014

DESAI LAW FIRM, P.C.

By _____

Aashish Y. Desai, Esq.
M. Adrianne De Castro, Esq.
Attorneys for Plaintiffs, Individually
and on behalf of all others similarly
situated

# EXHIBIT A

# DESAI LAW FIRM, P.C.

### SMART. DEDICATED. EFFECTIVE.

*Aashish Y. Desai – Managing Partner*
*www.desai-law.com | aashish@desai-law.com*

May 14, 2014

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**

General Motors, LLC
300 Renaissance Center
Detroit, MI 48243

> *Re:* *Ongoing Violations of the California Legal Remedies Act*

To Whom It May Concern:

### Please give this letter your complete and immediate attention.

## I. Introduction

I am writing on behalf of Sonia Nava, and a class of similar situated persons, to advise you that the above-referenced party ("Defendant") has violated and continues to violate the California Consumer Legal Remedies Act ("CLRA").

## II. Factual Background

Defendant profits from the marketing, advertising, and distribution of the Saturn Ion 2003-2007. Specifically, Defendants falsely claim that 2003-2007 Saturn Ions are safe, reliable, adequately designed, and adequately manufactured vehicles. Ms. Nava purchased her Saturn Ion relying on these representations which were in fact, false. GM intentionally failed or refused to disclose a key ignition defect to her and, instead allowed Ms. Nava and other consumers to believe the representations it had made about the Saturn Ions.

## III. Summary of Violations

The 2003-2007 Saturn Ions contain a uniformly designed ignition switch which is substantially similar for all the Saturn Ions, with the key position of the lock module on the steering column, and an ignition key with a slot for a key ring at the top (hereinafter referred to as "Key System"). The Key System on these vehicles is prone to fail during ordinary and foreseeable driving situation.

CALIFORNIA  3200 Bristol Street, Ste 650  Costa Mesa, CA 92626 | *ph* (949) 614-5830 *fx* (949) 271-4190
TEXAS  401 Congress Avenue, Ste 1540  Austin, TX 78701 | *ph* (512) 687-3455 *fx* (512) 687-3499

*Re: Ongoing Violations of the California Consumer Legal Remedies Act*
May 14, 2014
Page 2

Specifically, GM had actual knowledge that, because of the way the Key System was designed and integrated into the Saturn Ions, the ignition switch can suddenly fail during normal operation, cutting off engine power and certain electrical systems in the cars, which in turn, disables key vehicle components, safety features (like airbags), or other vehicle functions, leaving occupants vulnerable to crashes, serious injuries, and death. [1]

Although GM has, and has had actual knowledge of safety defects in the Key System in the Saturn Ions for years, it fraudulently concealed and continues to fraudulently conceal material facts regarding the extent and nature of safety defects and what must be done remedy them.

In fact, GM has not only fraudulently concealed material facts relating to the safety defects in the Key System in the Saturn Ions years, but it has also made affirmative fraudulent and misleading statements, and it is continuing to make fraudulent and misleading statements to the public and the Class regarding the nature and extent of the safety defects in the Key System in the Saturn Ions.

While GM has initiated a recall of the Saturn Ions in which is acknowledges a defect with the ignition switch itself, it knows – and its one engineering documents reflect – that the defects transcend just the ignition switch and also include the placement of the ignition switch, a lack of adequate protection of the ignition switch from forces of inadvertent driver contact, and the use of different types of keys. To fully remedy the problem and render the Defective Vehicles safe and of economic value to their owners again, additional design elements beyond a new ignition switch are needed.

The fact that GM has, to date, issued a partial recall despite knowing the insufficiency thereof underscores GM's ongoing, fraudulent concealment and fraudulent misrepresentation of the nature and extent of the defects.

Defendants' conduct violates the California Consumer Legal Remedies act by, without limitation,

1.      Falsely claiming that the Saturn Ions have characteristics, uses, and benefits which they do not have;

2.      Falsely representing that the Saturn Ions are of a particular, quality, or grade;

3.      Fraudulently inducing consumers to purchase Saturn Ions;

4.      Placing the Saturn Ions for sale to the general public when they do not materially conform to the product's advertisements; and

5.      Labeling and advertising the Saturn Ions in a way that is misleading in material respects.

---

[1] See Exhibit A, GM Recall Letters collectively attached.

---

## IV.    Demand for Relief

We respectfully request that Defendants:

1. Adequately disclose that the Saturn Ions have defective Key Systems;
2. Fully remedy the defect in the Key System by adequately protecting the ignition switch from forces of inadvertent driver contact, and the use of different types of keys.

3. Take any additional steps it deems necessary to fully remedy the problem and render the Saturn Ions safe and of economic value to their owners again, and

4. Reimburse Ms. Nava and other Class the purchase price of their vehicles, or the overpayment or diminution in value of their Saturn Ions.

## V.    Offer of Compromise

If Defendants will agree to the preceding request, we will take no further action in this matter.  Please contact me, if you would like to discuss this matter.

Very truly yours,

Aashish Y. Desai
DESAI LAW FIRM, P.C.

# EXHIBIT A

# IMPORTANT SAFETY RECALL

April 2014

Sonia M. Nava
624 N. Milford St.
Orange, CA 92867-7218

Dear Sonia M. Nava:

This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act.

General Motors has decided that one or more defects as described below which relate to motor vehicle safety exist in all 2005-2007 model year (MY) Chevrolet Cobalt; 2006-2007 MY Chevrolet HHR, 2007 MY Pontiac G5, 2006-2007 MY Pontiac Solstice, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles. As a result, GM is conducting a recall. We apologize for this inconvenience. However, we are concerned about your safety and continued satisfaction with our products.

---

## IMPORTANT

- This notice applies to your 2004 model year Saturn ION.
  VIN 1G8AJ52F74Z223633.

- Parts needed for the recall repairs are becoming available for dealers to order. Please contact your General Motors dealer to schedule an appointment to have the recall repairs performed on your vehicle.

- Until the recall repairs have been performed, it is **very** important that you remove all items from your key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from the key ring. Also, when exiting your vehicle, always make sure your vehicle is in "Park", or in the case of a manual transmission, put the transmission into reverse gear and set the parking brake.

- The recall repairs will be performed for you at **no charge**.

---

**Why is your vehicle being recalled?**

There is a risk, under certain conditions, that your ignition switch may move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine. This risk increases if your key ring is carrying added weight (such as more keys or the key fob) or your vehicle experiences rough road conditions or other jarring or impact related events. If the ignition switch is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury or fatality.

Some of these vehicles may also have a condition in which the ignition key may be removed when the ignition is not in the "Off" position. If the ignition key is removed when the ignition is not in the "Off" position, unintended vehicle motion may occur: (a) for an automatic transmission, if the transmission is not in "Park"; or (b) for a manual transmission, if the parking brake is not engaged and the transmission is not in reverse gear. This could result in a vehicle crash and occupant or pedestrian injuries.

GM

until the recall repairs have been performed, it is very important that. The key fob (if applicable) should also be removed from your key ring. Also, when exiting your vehicle, always make sure your vehicle is in "Park", or in the case of a manual transmission, put the transmission into reverse gear and set the parking brake.

| | |
|---|---|
| **What will we do?** | Your General Motors dealer will replace the ignition switch on your vehicle whether it is the original switch or a replacement. For vehicles that have not previously had an ignition cylinder replacement under warranty, dealers will replace the ignition cylinder. Dealers will also cut and, if necessary, re-learn two ignition/door keys for each vehicle. This service will be performed for you at no charge. Because of service scheduling requirements, it is likely that your dealer will need your vehicle longer than the actual service correction time of approximately 90 minutes.

If required, your dealer will provide you with some form of courtesy transportation at no charge while your vehicle is at the dealership for this repair. |
| **What should you do?** | You should contact your General Motors dealer to arrange a service appointment as soon as possible. Until the recall repair has been performed, it is very important that you remove all items from your key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from your key ring. Also, when exiting your vehicle, always make sure your vehicle is in "Park", or in the case of a manual transmission, put the transmission into reverse gear and set the parking brake. |
| **Did you already pay for this repair?** | Even though you may have already had the ignition switch replaced, you will still need to take your vehicle to your dealer to have the switch replaced. If you have paid to have your vehicle's ignition switch or ignition cylinder replaced, please complete the enclosed reimbursement form and present it to your dealer with all required documents. Working with your dealer will expedite your request, however, if this is not convenient, you may mail the completed reimbursement form and all required documents to Reimbursement Department, PO Box 33170, Detroit, MI 48232-5170. The completed form and required documents must be presented to your dealer or received by the Reimbursement Department by May 31, 2015, unless state law specifies a longer reimbursement period. |
| **Do you have questions?** | If you have questions or concerns that your dealer is unable to resolve, please contact the Saturn Customer Assistance Center at 1.800.553.6000 (TTY 1.800.833.6000). |

If after contacting your dealer and the Customer Assistance Center, you are still not satisfied we have done our best to remedy this condition without charge and within a reasonable time, you may wish to write the Administrator, National Highway Traffic Safety Administration, 1200 New Jersey Avenue, SE., Washington, DC 20590, or call the toll-free Vehicle Safety Hotline at 1.888.327.4236 (TTY 1.800.424.9153), or go to http://www.safercar.gov. The National Highway Traffic Safety Administration Campaign ID Numbers for these recalls are 14V047 and 14V171.

Federal regulation requires that any vehicle lessor receiving this recall notice must forward a copy of this notice to the lessee within ten days.

For additional information regarding this recall, please go to www.gmignitionupdate.com.

Jim Moloney
General Director – Customer & Relationship Services

Enclosure
GM Recall Bulletin Numbers: 13454 or 14063, and 14113 or 14133

## General Motors Product Field Action
## Customer Reimbursement Request Form

| This section to be completed by customer (please print) |
|---|

Customer Name: _____

Street Address or P. O. Box Number: _____

City: _____ State: _____ Zip Code: _____

Daytime Telephone Number (include Area Code): _____

Evening Telephone Number (include Area Code): _____

Date Request Form and Supporting Documentation Submitted to Dealer: _____

Vehicle Identification Number of Involved Vehicle: _____
(17 Characters)

Mileage at Time of Repair: _____ Date of Repair: _____

Amount of Reimbursement Requested: $_____

### THE FOLLOWING DOCUMENTATION MUST ACCOMPANY THIS REQUEST FORM.

Original or clear copy of all receipts, invoices and/or repair orders that show:

- The name and address of the person who paid for the repair.
- The Vehicle Identification Number (VIN) of the vehicle that was repaired.
- Description of problem, the repair performed, date of repair and who performed the repair.
- The total cost of the repair expense that is being requested.
- Proof of payment for the repair in question and the date of payment.
  (Copy of cancelled check, copy of credit card receipt or receipt for cash payment)

My signature to this document attests that all attached documents are genuine and I request reimbursement for the expense I incurred for the repair covered by this letter.

Customer's Signature: _____

Submit this request form and the required documents to your GM dealer for processing. All reasonable and customary costs to correct the condition described in the letter that came with this form will be considered for reimbursement. If your request is approved, you will receive a check from your dealer. If your request is denied, you will receive a written explanation for the denial from your dealer. If your request is incomplete, your dealer will advise you what documentation is needed to complete the request and offer you the opportunity to resubmit the request when the missing documents are available. If you have any questions about this process or have waited 30 or more days for a response from your dealer, please contact the GM Customer Assistance Center at 1-800-204-0261.

| This section to be completed by dealer (please print) |
|---|

Bulletin No.: _____ Request Approved: _____ Date: _____ Amount: $_____

Request Denied: _____ Date: _____ Reviewed By: _____

Reason: _____

If denied, please provide a copy of this form to the customer and retain original for your files



Saturn
P.O. Box 900000
Milwaukee, WI 53209-0000

Sonia M. Neva
624 N. Milford St.
Orange, CA 92867-7218

14063 1G8AJ52F74Z223633

PRESORTED
FIRST-CLASS
MAIL
U.S. POSTAGE
PAID
GREEN BAY, WI
PERMIT NO. 981

**FIRST-CLASS MAIL**

# SAFETY RECALL NOTICE

IMPORTANT SAFETY RECALL INFORMATION



Issued in Accordance
With Federal Law





Alan Batey
President
General Motors North America

Sonia M. Nava:

You have received or are about to receive a letter about the safety recalls we are conducting. These recalls replace ignition switches, ignition cylinders and keys on the Chevrolet Cobalt and HHR, Pontiac G5 and Solstice, and Saturn ION and Sky.

Here's why we are conducting the recalls: We learned the ignition key is too easy to turn, so if your car is jostled or jolted, it's possible for the key to move from "run" to "accessory" especially if you have a heavy keychain.

We have conducted more than 80 tests including tests at very high speed and in extremely rough road conditions. Some were very severe tests including driving over a railroad crossing at high speed and driving over river rocks, potholes and cobblestones. We put these vehicles in extreme conditions. The conclusion of this extensive testing with just the key is that the key did not move out of the run position. These tests show the vehicles are safe to drive if you take everything off your key ring, and drive using ONLY the ignition key.

We have also recalled the vehicle to address a defect in the ignition cylinder, where you insert your key. It may be possible to remove the ignition key while the engine is running. This makes a rollaway vehicle possible.

To get your vehicle fixed as soon as possible, here's what you need to do:
- Please call your local Chevrolet, Buick, GMC or Cadillac dealer today and ask to speak to the service department.
- Share your contact information and Vehicle Identification Number with the dealer. When the parts come in, your dealer will call you to schedule an appointment.
- Take everything off your key ring, and drive using ONLY the ignition key.
- When you get out of your car, always make sure it is in "Park" (or for manual transmissions, in reverse gear with the parking brake on).

It will take a number of months to build enough parts to fix every car. These are large recalls and the parts have been out of production for a while. But we are making them as quickly as possible.

In the meantime, we ask for your patience. And please remember to drive using ONLY the ignition key and always wear your seat belt.

If you have specific questions that I haven't covered, please call our Customer Care team at (800) 222-1020 or visit gmignitionupdate.com.

I know that these recalls may have worried and inconvenienced you. On behalf of everyone at GM, we are working to retain your trust. We are confident we can learn from this and become a better company.

Sincerely,

Alan Batey
President, General Motors North America

Case 9:14-cv-80118... Document... Filed... Page... Exhibit B

March 2014

Sonia M. Nava
624 N. Milford St.
Orange, CA 92867-7218

Dear Sonia M. Nava:

This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act.

General Motors has decided that a defect which relates to motor vehicle safety exists in 2005-2007 model year (MY) Chevrolet Colbalt, 2006-2007 MY Chevrolet HHR, 2005-2006 MY Pontiac Pursuit, 2006-2007 MY Pontiac Solstice, 2007 MY Pontiac G5, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles. As a result, GM is conducting a recall. We apologize for this inconvenience. However, we are concerned about your safety and continued satisfaction with our products.

---

## IMPORTANT

- This notice applies to your 2004 model year Saturn ION, **VIN** 1G8AJ52F74Z223633. It is involved in safety recall 14063.

- Until the recall repairs have been performed, it is **very** important that you remove all items from your key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from your key ring.

- When parts become available, GM will notify you to schedule an appointment with your General Motors dealer.

- The recall repairs will be performed for you at **no charge**.

---

**Why is your vehicle being recalled?**

There is a risk, under certain conditions, that your ignition switch may move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine. This risk increases if your key ring is carrying added weight (such as more keys or the key fob) or your vehicle experiences rough road conditions or other jarring or impact related events. If the ignition switch is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury or fatality.

Until the recall repairs have been performed, it is **very** important that you remove all items from your key ring, leaving only the vehicle key. The key fob (if applicable) should also be removed from your key ring.

**What will we do?**

PARTS ARE NOT CURRENTLY AVAILABLE, but when parts are available, your General Motors dealer will replace the ignition switch on your vehicle. This service will be performed for you at **no charge**. Because of scheduling

GM

the actual service correction time of approximately 40 minutes.

We are working as quickly as possible to obtain parts, and expect to have parts beginning in April of this year. We will contact you as soon as parts are available so that you can schedule an appointment with your dealer to have your vehicle repaired.

**What should you do?**

When GM notifies you that parts are available, you should contact your General Motors dealer to arrange a service appointment. In the meantime, remove all items other than the vehicle key from your key ring.

**Did you already pay for this repair?**

When GM notifies you that parts are available, GM will also provide instructions for you to request reimbursement if you paid for repairs for the recall condition previously.

**Do you have questions?**

If you have questions or concerns that your dealer is unable to resolve, please contact the Saturn Customer Assistance Center at 1.800.553.6000 (TTY 1.800.833.6000).

If after contacting your dealer and the Customer Assistance Center, you are still not satisfied we have done our best to remedy this condition without charge and within a reasonable time, you may wish to write the Administrator, National Highway Traffic Safety Administration, 1200 New Jersey Avenue, SE., Washington, DC 20590, or call the toll-free Vehicle Safety Hotline at 1.888.327.4236 (TTY 1.800.424.9153), or go to http://www.safercar.gov. The National Highway Traffic Safety Administration Campaign ID Number for this recall is 14V-047.

Federal regulation requires that any vehicle lessor receiving this recall notice must forward a copy of this notice to the lessee within ten days.

Jim Moloney
General Director – Customer & Relationship Services

GM Recall #14063





FIRST-CLASS MAIL

PRESORTED
FIRST-CLASS
MAIL
U.S. POSTAGE
PAID
GREEN BAY, WI
PERMIT NO. 991

SAFETY RECALL NOTICE

IMPORTANT SAFETY RECALL INFORMATION

Issued In Accordance
With Federal Law

NHTSA

Saturn
P.O. Box 00000
Milwaukee, WI 53208-0000

14083 1G8AJ52F742223633

Sonia M. Nava
824 N. Milford St.
Orange, CA 92867-7218

# EXHIBIT B

1    I, Sonia Nava, declare as follows:

2    1.    I am Plaintiff in this action, and am a citizen of the State of California.

3 I have personal knowledge of the facts herein and, if called as a witness, I could

4 and would testify competently thereto.

5

6    2.    The Complaint in this action, filed concurrently with this Declaration,

7 is filed in the proper place for trial under Civil Code Section 1780(d) in that

8 Orange County is a county in which Defendants are doing business.

9

10    I declare under penalty of perjury under the laws of the United States of

11 America and the State of California that the foregoing is true and correct to the best

12 of my knowledge and that this Declaration was executed on this **14** day of May

13 2014, at **Costa Mesa** California.

14

15

16                     Sonia Nava

17

18

19

20

21

22

23

24

25

26

27

28

1
DECLARATION RE VENUE