FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP
D. Greg Blankinship
Todd S. Garber
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com
tgarber@fbfglaw.com

BLOCK & LEVITON LLP
Jeffrey C. Block
Jason M. Leviton
Joel A. Fleming
155 Federal Street
Boston, Massachusetts 02110
Tel: (617) 398-5600
Fax: (617) 507-6020
Jeff@blockesq.com
Jason@blockesq.com
Joel@blockesq.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
| In re : | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, | Case No. 09-50026 (REG) |
| | |
| Debtor. | |
-------------------------------------------------------------X

**NO STAY PLEADING**

Lisa Phaneuf, Adam Smith, Mike Garcia, Javier Delacruz, Steve Sileo, Steven Bucci, David Padilla and Catherine and Joseph Cabral (collectively "Plaintiffs"), plaintiffs in *Phaneuf, et al. v. General Motors LLC*, 14-cv-3298 (SDNY), submit this No Stay Pleading, in accordance with this Court's May 16, 2014 scheduling order ("Scheduling Order"), in support of their request that their action not be stayed. Plaintiffs all purchased their General Motors vehicles *after* this Court approved the 363 Transaction[1] and General Motors LLC ("New GM") emerged from bankruptcy on July 5, 2009. They assert product liability claims on their own behalf and on behalf of all post-bankruptcy purchasers of Affected Vehicles[2] subject to recall due to faulty ignition switches. As set forth herein, Plaintiffs assert that their claims are not subject to any injunction or release of claims in the Sale Order and Injunction.[3]

As alleged in the *Phaneuf* complaint, the wrongful conduct giving rise to the product liability claims *occurred after* New GM emerged from bankruptcy. Cplt ¶¶ 30, 31, 60 to 65 and 71. Thus, Plaintiffs' claims relate to new GM's conduct *post-bankruptcy*. They are not seeking to hold New GM liable for conduct by Old GM; rather Plaintiffs seek to hold New GM liable for New GM's conduct.

Specifically, Plaintiff Mike Garcia purchased a 2010 Chevrolet Cobalt in April 2011; Plaintiff Javier Delacruz purchased a 2009 Chevrolet Cobalt in September 2009;

---

[1] "363 Transaction" is defined in the same manner as that term is used in the Court's July 5, 2009 order approving the sale of assets to Vehicle Acquisitions Holdings, Inc.

[2] These automobiles include the Chevrolet Cobalt, Chevrolet HHR, Pontiac Solstice, Pontiac G5, Saturn Ion or Saturn Sky. *Phanuef* Complaint at ¶ 1.

[3] "Sale Order and Injunction" is defined in the same manner as that term is used in the Court's July 5, 2009 order approving the sale of assets to Vehicle Acquisitions Holdings, Inc.

2

Plaintiff Steve Sileo purchased a 2009 Chevrolet Cobalt in November 2009; Plaintiff Steve Bucci purchased a 2009 Chevrolet Cobalt in November 2009; and Plaintiff Padilla purchased a 2010 Chevrolet Cobalt in April 2010.  Cplt at ¶¶ 10-14.

Plaintiffs Garcia, Delacruz, Sileo, Bucci and Padilla purchased automobiles from New GM *after* New GM emerged from bankruptcy.  Since their injuries arose after the 363 Transaction, the Sale Order and Injunction does not bar their product liability claims. *See In Re General Motors Corp. et. al. Debtors*, 407 B.R. 463, 500 (S.D.N.Y. 2009) ("Under the proposed order, in its latest form, New GM would voluntarily assume liability for warranty claims, and for product liability claims *asserted by those injured after the 363 Transaction*.  But New GM would not assume any Old GM liabilities for injuries or illnesses that arose ***before*** the 363 Transaction.") (Emphasis added.)

Plaintiff Lisa Phaneuf purchased a 2006 Chevrolet HHR in September 2010; Plaintiff Adam Smith purchased a 2007 Pontiac Solstice in November 2009; and Plaintiffs Catherine and Joseph Cabral purchased a 2007 Chevrolet Cobalt in June 2010.  Although Plaintiffs Phaneuf, Smith and the Cabrals purchased automobiles manufactured *before* the 363 Transaction, their injuries arose *after* the 363 Transaction.  Since they purchased those automobiles *after* the 363 Transaction, their product liability claims are also not barred by the Sale Order and Injunction.  *Id.*

I. **THE SALE ORDER AND INJUNCTION DOES NOT BAR OR STAY PLAINTIFFS' CLAIMS**

Pursuant to the 363 Transaction's Master Sales and Purchase Agreement, New GM agreed to assume liability for compliance with "the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation

3

Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by" Old GM. Thus, as noted above, New GM was subject to a continuing duty to "notify … the owners, purchasers, and dealers of the vehicle" of any defect "related to motor vehicle safety[.]" Cplt ¶ 71. The *Phaneuf* Complaint alleges that New GM failed to comply with these certification, reporting and recall requirements, failed to notify Plaintiffs of the motor vehicle safety defects, and Plaintiffs suffered damages as a result. As such, since their claims are directed at New GM for allegedly wrongful conduct by New GM, their claims are not subject to the Sale Order and Injunction.

Indeed, as noted, New GM expressly and voluntarily agreed "to assume liability for . . . product liability claims asserted by those injured after the 363 Transaction – even if the vehicle was manufactured before the 363 Transaction." As this Court expressly noted, the MPA was amended to expand the definition of liabilities assumed by New GM to expressly include "*all* product liability claims arising from accidents or other discrete incidents arising from operation of GM vehicles occurring subsequent to the closing of the 363 Transaction, *regardless of when the product was purchased.*" 407 B.R. at (emphasis in original.) Thus, the *Phaneuf* Complaint is not subject to the Sale Order and Injunction and should not be stayed.

## II. EVEN IF THE BAR ORDER SOMEHOW APPLIED IT CANNOT BAR CLAIMS OF FUTURE CLAIMANTS

Despite the Sale Order's express acknowledgement that New GM will assume liability for product liability claims "asserted by those injured *after* 363 Transaction –

4

even if the vehicle was manufactured before the 363 Transaction," New GM is now arguing that because the ignition switch was designed and manufactured[4] *before* the 363 Transaction, the Sale Order and Injunction bars the Plaintiffs' Claims and their case should be stayed.  Plaintiffs submit that this argument lacks merit.

In essence, New GM asserts that the Sale Order and Injunction extinguishes the claims of automobile purchasers who had not yet purchased GM vehicles and who did not yet know whether they had a claim, *i.e.*, "Future Claimants."  Although the Sale Order extinguished claims for "successor liability," it did not extinguish claims of Future Claimants and, Plaintiffs respectfully submit, Future Claims cannot be extinguished in bankruptcy.

In *In re Chrysler LLC, Debtor,* 576 F. 3d 108 (2d. Cir. 2009), the Second Circuit affirmed, among other issues, that a bankruptcy court could extinguish New Chrysler's successor liability claims.  576 F. 3d at 126.  With regard to the bankruptcy court's authority to extinguish Future Claims, however, the Court of Appeals declined "to delineate the scope of the bankruptcy court's authority to extinguish future claims, until such time as we are presented with an actual claim for an injury that is caused by Old Crysler, that occurs after the Sale, and that is cognizable under state successor liability law." *Id.* at 127.

Subsequent to the Second Circuit's decision in *In re Chrysler*, this Court held that a bankruptcy court 363 sale order cannot extinguish claims brought by an individual

---

[4] It is unclear whether the ignition switches installed in the *post* 363 Transaction automobiles were actually manufactured *prior* to the 363 Transaction.  While Plaintiffs believe this distinction is not dispositive, if the Court determines it to be relevant, then Plaintiffs request targeted and limited discovery as to when the ignition switches in the *post* 363 Transaction automobiles were actually manufactured.

5

injured *after* a 363 sale even though the product was manufactured *before* the 363 sale. *In re Grumman Olson Industries, Inc.*, 467 B.R. 694 (S.D.N.Y. 2012) *affirming In re: Grumman Olson Indus., Inc., Debtor*, 445 B.R. 243 (S.D.N.Y. Bkr. 2011)(Bernstein, J.).

In *Grumman Olson,* Grumman Olson Industries, Inc. designed, manufactured and sold products for the truck body industry that were mounted on chassis sold by Ford Motor Co. and GM. Morgan purchased the assets of Grumman Olson pursuant to a 363 sale. The 363 sale order provided that the assets were sold "free and clear" of any and all claims "arising in any way in connection with any acts of the Debtor . . ." including any claims for successor liability. 445 B.R. at 246. After the 363 sale, Ms. Frederico was injured driving a truck that was designed, manufactured and sold by Grumman Olson prior to the 363 sale and was alleged to be defective. *Id.* at 247. Judge Bernstein denied Morgan's motion for summary judgment that the sale order barred Ms. Frederico's claim.

> Accordingly, the Court concludes that the Sale Order does not affect [the Frederico's] rights to sue Morgan. Except for *Chrysler*, which is discussed below, every case that we have found addressing this issue has concluded for reasons of practicality or due process, or both, that a person injured after the sale (or confirmation) by a defective product manufactured and sold prior to the bankruptcy does not hold a "claim" in the bankruptcy case and is not affected by either the *§ 363(f)* sale order or the discharge under *11 U.S.C. §1141(d)*. [Citations omitted.]

*Id.* at 254. With regard to *Chrysler,* Judge Bernstein noted that the Second Circuit declined to reach the question of whether Future Claims could be barred in bankruptcy and noted that in the GM bankruptcy "the buyer in GM assumed 'all product liability claims arising from accidents or other discrete incidents arising from operation of GM vehicles occurring subsequent to the closing of the 363 Transaction, regardless of when the product was purchased.'" *Id.* at 255.

6

The District Court affirmed. 467 B.R. 694 (S.D.N.Y. 2012). There, Judge Oetken noted that "it is well settled that in order for any proceeding to satisfy due process, there must be 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Id.* at 706. The court continued "because parties holding future claims cannot possibly be identified and, thus, cannot be provided notice of the bankruptcy, courts consistently hold that, for due process reasons, their claims cannot be discharged by the bankruptcy courts' orders." *Id.* at 707. The court held:

> Enforcing the Sale Order against the Fredericos to take away their right to seek redress under a state law theory of successor liability when they did not have notice or an opportunity to participate in the proceedings that resulted in that order would deprive them of due process.
> . . .
> [T]he question is whether the Sale Order prevents them from even bringing suit in the first place. In light of the due process problems that would result from such an interpretation, the Court holds that the Sale Order cannot be enforced in this manner.

*Id* at 708.

Here, Plaintiffs' claims all arose after the 363 Transaction. All purchased automobiles post bankruptcy. Garcia, Delacruz, Sileo, Bucci and Padilla purchased automobiles from New GM which was under an obligation to comply with the rules and regulations of NHTSA. As alleged, New GM failed to comply with those rules and regulations and these plaintiffs suffered injury. Their claims are not subject to the Sale Order.

Phaneuf, Smith and the Cabrals purchased their GM vehicles *after* the 363 Transaction. Although those vehicles were manufactured by Old GM, these Plaintiffs

7

were never provided notice and an opportunity to participate in the GM bankruptcy proceeding. Thus, due process concerns prevent their claims from being subject to the Stay Order. Moreover, New GM's failure to comply with the rules and regulations of NHTSA meant that Phaneuf, Smith, the Cabrals and other purchasers of used vehicles manufactured by Old GM paid an inflated price for those vehicles in the secondary market. The injuries suffered by those purchasers are directly attributable to New GM's wrongful, post-bankruptcy conduct.

### III.    CONCLUSION

For the reasons set forth herein, the *Phaneuf* Complaint should not be stayed and the claims of the Plaintiffs are not subject to the Sale Order.

Dated: May 27, 2014

Respectfully submitted,

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

By: /s/ D. Greg Blankinship
D. Greg Blankinship
Todd S. Garber
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com
tgarber@fbfglaw.com

BLOCK & LEVITON LLP
Jeffrey C. Block
Jason M. Leviton
Joel A. Fleming
155 Federal Street
Boston, Massachusetts 02110
Tel: (617) 398-5600
Fax: (617) 507-6020
Jeff@blockesq.com

Jason@blockesq.com
Joel@blockesq.com

9