Hearing Date and Time: July 2, 2014 at 9:45 a.m. (Eastern Time)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re                                                            :     Chapter 11
                                                                 :
MOTORS LIQUIDATION COMPANY, *et al.*,                            :     Case No.: 09-50026 (REG)
     f/k/a General Motors Corp., *et al.*                        :
                                                                 :
                    Debtors.                                     :     (Jointly Administered)
                                                                 :
-----------------------------------------------------------------X

# RESPONSE BY GENERAL MOTORS LLC TO
# NO STAY PLEADING FILED IN CONNECTION
# WITH THE COURT'S MAY 16, 2014 SCHEDULING ORDER

23152421v1

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..........................................................................................................1

BACKGROUND RELEVANT TO RESPONSE ..................................................................................2

RESPONSE ...............................................................................................................................................5

THE RELIEF REQUESTED IN THE PHANEUF NO STAY PLEADING SHOULD BE
DENIED ....................................................................................................................................................7

    A.    The Phaneuf Plaintiffs Are Expressly Enjoined From Commencing And
Continuing Their Ignition Switch Action .........................................................................7

    B.    The Phaneuf Contentions Should Be Decided By The Court After The
Threshold Issues Are Decided............................................................................................9

    C.    The Phaneuf Plaintiffs' Claims Are Barred By The Sale Order And
Injunction............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayers v. Gen. Motors*,
  234 F.3d 514 (11th Cir. 2000) ..................................................................................7

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) ...................................................................................................5

*Handy v. Gen. Motors Corp.*,
  518 F.2d 786 (9th Cir 1975) ......................................................................................7

*Stewart v. General Motors Corp.*,
  756 F.2d 1285 (7th Cir. 1985) ...................................................................................6

*Sunni, LLC v. Edible Arrangements, Inc.*,
  No. 14 Civ. 461 (KPF), 2014 WL 1226210 (S.D.N.Y. March 25, 2014) ..................6

General Motors LLC ("**New GM**"), by its undersigned counsel, respectfully submits this response ("**Response**") to the "No Stay Pleading" ("**Phaneuf No Stay Pleading**") filed by the Plaintiffs ("**Phaneuf Plaintiffs**") in the Ignition Switch Action[1] filed by Lisa Phaneuf, et al. ("**Phaneuf Ignition Switch Action**"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. While the Plaintiff ("**Witherspoon Plaintiff**") in the Ignition Switch Action filed by Patrice Witherspoon previously filed a No Stay Pleading, on June 11, 2014, the Witherspoon Plaintiff subsequently agreed to a voluntary stay of her Action.[2] Accordingly, the No Stay Pleading filed by the Witherspoon Plaintiff is no longer relevant.

2. The Phaneuf Plaintiffs (like Plaintiffs in many other Ignition Switch Actions) allege claims based on Old GM's conduct, Old GM vehicles and Old GM parts. These claims clearly implicate the Sale Order and Injunction and are subject to the injunction therein. Since the Plaintiffs contend otherwise, this Court will ultimately need to determine the issue, but that determination should be made after the Threshold Issues (as defined in the May 16, 2014 Scheduling Order) are decided. That is the process the Court set forth in the Scheduling Order, the process recommended by Designated Counsel (as defined in the Scheduling Order) at the conference held on May 2, 2014 ("**Conference**"), and the process agreed to by *all other Plaintiffs in the 88 Ignition Switch Actions*.

3. Simply put, there is no reason to overly-complicate or otherwise delay the Court's determination of the Threshold Issues by dealing now with the totally separate claims raised in the Phaneuf Ignition Switch Action. Similarly, there is no basis for the Phaneuf Plaintiffs to

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("**Motion to Enforce**"), dated April 21, 2014 [Dkt. No. 12620].

[2] A copy of the Witherspoon voluntary stay stipulation is annexed hereto as Exhibit A.

1

jump ahead of the other Plaintiffs in litigating the common bankruptcy-related issues raised by the Phaneuf Ignition Switch Action. The bankruptcy-related claims in the Phaneuf Ignition Switch Action should be presented to the Court for determination at the same time as the other Plaintiffs – after the Threshold Issues are determined.

## BACKGROUND RELEVANT TO RESPONSE

4.   Prior to the Conference, based on statements made by Designated Counsel that it represented the interests of most of the Plaintiffs with respect to the Motion to Enforce, New GM had a "meet and confer" session with Designated Counsel, and each side shared their views as to the procedures that should be put into place for the efficient adjudication by the Court of the Motion to Enforce. New GM also met prior to the Conference with counsel who filed the Adversary Proceeding for that same purpose.

5.   As indicated in New GM's letter to the Court, dated April 30, 2014, regarding the Conference [Dkt. No. 12673], and Designated Counsel's letter in response thereto [Dkt. No. 12677], the parties were in substantial agreement regarding the Stay Procedures for the Ignition Switch Actions. At the Conference, the Court noted this agreement, and ruled:

> Six, anyone who is unwilling to agree to the temporary stand still that the majority seems to agree upon must come forward before me within a time certain, either on the date proposed in the Steinberg and Weisfelner letters, or an alternative date they might agree upon, in consultation with the other parties that I've allowed to participate in the formation of the order, with a motion asking me to rule on whether I should force such a standstill on the dissenter by TRO or preliminary injunction.

Transcript of Conference, at 99:9-18. The Court also noted that, while it could not enjoin other courts, it certainly could enjoin parties, and has done so before. *Id.* at 54:7-9.

2

6.      At the Conference, the Court directed Counsel for the Identified Parties[3] to confer on a proposed form of scheduling order consistent with his ruling at the Conference. *Id.* at 96:9-14. As directed, after the Conference, New GM and the other Counsel for the Identified Parties negotiated a consensual form of scheduling order, which was filed under a notice for settlement on all Plaintiffs on May 12, 2014, with a presentment date of May 15, 2014.

7.      The proposed form of scheduling order submitted to the Court on May 12, 2014 contained the following procedures:

> 5(a)    Plaintiffs shall be given until May 23, 2014 to enter into voluntary stipulations with New GM staying all proceedings in their Ignition Switch Action against New GM (including General Motors Holdings LLC and/or General Motors Company) other than the JPML proceedings set forth in paragraph 4 above and, if the Transferee Court so chooses, proceedings in the Transferee Court for the appointment of plaintiff and defendant liaison counsel and the formation of a plaintiffs' steering committee or other committee of plaintiffs' counsel. [footnote omitted] The Order is without prejudice to the rights of any party to request that this Court stay the Plaintiff(s) from further proceedings before the Transferee Court or for any party to oppose such relief.
>
> (b)     If a Plaintiff chooses not to enter into a voluntary stay stipulation, it shall be required to file a pleading in this Court by no later than May 27, 2014 setting forth why it should not be directed to stay its Ignition Switch Action ("No Stay Pleading"). New GM will file a response to the No Stay Pleading by June 13, 2014, and the Court shall hold a hearing on a date set by the Court. Nothing set forth in this Order shall change the burden of proof as to whether there has been a violation of the Sale Order and Injunction by Plaintiffs who do not enter into a voluntary stay stipulation. This Order is without prejudice to any party, after September 1, 2014, requesting that this Court modify the stay for cause shown, including based on any rulings in this case, or any perceived delay in the resolution of the Threshold Issues.

8.      Only one response was filed to the proposed form of scheduling order. *See* Letter dated May 15, 2014 by Lowenstein Sandler LLP [Dkt. No. 12693]. This Letter did not object to the Stay Procedures.

---

[3] The term "Counsel for Identified Parties" is defined in the Scheduling Order.

3

9. The Court ultimately entered the *Scheduling Order Regarding (I) Motion Of General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce The Court's July 5, 2009 Sale Order And Injunction, (II) Objection Filed By Certain Plaintiffs In Respect Thereto, And (III) Adversary Proceeding No. 14-01929* on May 16, 2014 ("**Scheduling Order**"),[4] substantially in the form presented by Counsel for the Identified Parties.

10. After the Scheduling Order was entered, New GM circulated a form of the Stay Stipulation and solicited comments from Designated Counsel and counsel for the Plaintiffs in the Adversary Proceeding. A consensual form of the Stay Stipulation was agreed to on May 19, 2014, and counsel for New GM promptly circulated the Stay Stipulation to counsel for all Plaintiffs.[5]

11. Since circulating the Stay Stipulations, Plaintiffs *in 87 out of 88* Ignition Switch Actions have entered into Stay Stipulations. Thus, only the Phaneuf Plaintiffs have not voluntarily agreed to stay their Ignition Switch Action.

12. In reality, there is a strong likelihood that the Phaneuf Plaintiffs will not be able to separately proceed in their Ignition Switch Action. New GM designated with the Judicial Panel for Multidistrict Litigation ("**JPML**") the Phaneuf Ignition Switch Action as a case that should be consolidated for discovery and other pretrial proceedings. The JPML held a hearing in Chicago on May 29, 2014. On June 9, 2014, the JPML entered a transfer order, transferring the designated litigations to the Southern District of New York, before the Honorable Jesse M. Furman.[6] As the Phaneuf Ignition Switch Action will very likely be transferred as well, there

---

[4] A copy of the Scheduling Order is annexed hereto as Exhibit "B."
[5] A copy of the Stay Stipulation sent to the Phaneuf Plaintiffs is annexed hereto as Exhibit "C."
[6] A copy of the JPML Order is annexed hereto as Exhibit "D".

4

23152421v1

will be no independent action for the Phaneuf Plaintiffs to proceed with. In other words, they will be on the same timeline as every other Plaintiff that signed the Stay Stipulation.

13. This Response is filed by New GM pursuant to paragraph 5(b) of the Scheduling Order and sets forth (a) why the relief requested in the Phaneuf No Stay Pleading should be denied, and (b) why the Phaneuf Plaintiffs should be enjoined from proceeding with their Ignition Switch Action.

## **RESPONSE**

14. As stated in the Motion to Enforce, the United States Supreme Court in *Celotex Corp. v. Edwards* set forth the "well-established" rule that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'" 514 U.S. 300, 306 (1995). The Supreme Court further explained:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . . . Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law.

*Id.* at 313.

15. The settled principles of *Celotex* required the Phaneuf Plaintiffs to seek relief from the Sale Order and Injunction in this Court, prior to commencing their Ignition Switch Action. They did not do so.

16. New GM is not seeking an injunction against the Phaneuf Plaintiffs; it is seeking to enforce the pre-existing injunction set forth in this Court's Sale Order and Injunction. Through their No Stay Pleading, the Phaneuf Plaintiffs are essentially asking the Court to vacate its preexisting injunction as to them. The burden is thus on the Phaneuf Plaintiffs to demonstrate

5

that the injunction in the Sale Order and Injunction should be vacated. *See Stewart v. General Motors Corp.*, 756 F.2d 1285, 1291 (7th Cir. 1985) ("The law appears settled that the defendant bears that burden on a motion to vacate an injunction."). They have not met their burden.

17. Even if the Court views New GM as seeking a preliminary injunction (which it is not), as demonstrated herein, New GM clearly can satisfy such burden of proof.

18. The test for granting a preliminary injunction is whether the moving party can establish (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Sunni, LLC v. Edible Arrangements, Inc.*, No. 14 Civ. 461 (KPF), 2014 WL 1226210 (S.D.N.Y. March 25, 2014 (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (internal quotation marks omitted)).

19. Here, New GM will be irreparably harmed if the Phaneuf Plaintiffs are not stayed from proceeding in another forum. Allowing the Phaneuf Plaintiffs to continue their Action in another forum will require New GM to defend the same claims in multiple forums. Inconsistent decisions on issues squarely within this Court's province may result. In addition, as discussed below, allowing the Phaneuf Plaintiffs – one group of Plaintiffs out of 88 Ignition Switch Actions -- to continue their Ignition Switch Action in another forum may cause other Plaintiffs to seek relief from the Stay Stipulations they already entered into. It will also create confusion in the Transferee Court (as defined in the Scheduling Order) as to what issues may proceed thereat before the bankruptcy-related issues are determined by this Court. That will place a significant burden on not only New GM, but this Court and the Transferee Court.

20. The Phaneuf Plaintiffs have sought to hold New GM liable as a successor to Old GM, and seek to hold New GM accountable for Old GM's conduct relating to Old GM vehicles and Old GM parts. These types of claims are clearly barred by the Sale Order and Injunction. Accordingly, as demonstrated more fully in the Motion to Enforce, New GM has demonstrated a likelihood of success on the merits or, at a minimum, that there are very serious questions going to the merits to make them a fair ground for litigation.

21. In addition, in their No Stay Pleading, the Phaneuf Plaintiffs have not stated how they would be harmed if their Ignition Switch Action was stayed like all other Plaintiffs in the Ignition Switch Actions, who voluntarily agreed to do so. They merely argue that they are not bound by the Sale Order and Injunction. This Court will have to make that determination but, regardless, the Phaneuf Plaintiffs cannot demonstrate any hardship from a stay.

22. In view of the foregoing, to the extent applicable, New GM has satisfied the standard for the issuance of a preliminary injunction against the Phaneuf Plaintiffs.

## THE RELIEF REQUESTED IN THE PHANEUF NO STAY PLEADING SHOULD BE DENIED

### A. The Phaneuf Plaintiffs Are Expressly Enjoined From Commencing And Continuing Their Ignition Switch Action

23. The Phaneuf Plaintiffs contend that their claims are based on (i) New GM's covenant in the MSPA to comply with Old GM's recall obligations, and (ii) New GM's agreement in the MSPA to assume certain Product Liabilities (as defined in the MSPA). *See* Phaneuf No Stay Pleading, at pp. 3-4. ("**Phaneuf Contentions**"). New GM strongly disputes the Phaneuf Contentions. Among other things, there is no private right of action for a vehicle owner to sue a manufacturer for a violation of the National Highway, Transportation and Safety Act.[7]

---

[7] *See Ayers v. Gen. Motors*, 234 F.3d 514, 522-24 (11th Cir. 2000); *Handy v. Gen. Motors Corp.*, 518 F.2d 786, 787-88 (9th Cir 1975).

7

23152421v1

Moreover, the Phaneuf Plaintiffs have not asserted a Product Liability Claim within the meaning of the MSPA as there has been no accident, death or property damage incurred by them.[8]

24. This Court retained exclusive jurisdiction over issues, such as the Phaneuf Contentions, so that it could decide how such disputes should be resolved. In particular, the Sale Order and Injunction reserved exclusive jurisdiction to this Court to interpret and construe the Sale Order and Injunction, as well as the terms of the MSPA.[9] By contending that New GM agreed to undertake certain actions pursuant to the MSPA, and that certain claims against New GM arise from those actions, the Phaneuf Plaintiffs have conceded that the Court needs to construe the Sale Order and Injunction and MSPA with respect to the Phaneuf Contentions.

25. Here, all the Plaintiffs are required to obey the injunction contained in the Sale Order and Injunction until this Court has had an opportunity to resolve the bankruptcy-related issues set forth in the Motion to Enforce, and in particular, decide which claims asserted against New GM are barred, and which, if any, are not. The Phaneuf Plaintiffs are no different from any of the other Plaintiffs. Every other one of them, by signing the Stay Stipulation, has acknowledged their obligation to comply with the Court's Sale Order and Injunction. The Phaneuf Plaintiffs should be compelled to do what the others have readily acknowledged they will and must do.

26. For all of these reasons and as further explained below, the Phaneuf No Stay Pleading should be denied.

---

[8] These issues will be fully briefed in accordance with the procedures to be established at the scheduled July 2, 2014 Court conference.

[9] *See* Sale Order and Injunction, ¶ 71.

8

23152421v1

### B. The Phaneuf Contentions Should Be Decided By The Court After The Threshold Issues Are Decided

27. The real issue raised by the Phaneuf No Stay Pleading is whether the Phaneuf Contentions should be decided at the same time, or after the Threshold Issues are determined by the Court. Every Plaintiff in the 88 Ignition Switch Actions, other than the Phaneuf Plaintiffs, agree with the Court's ruling in the Scheduling Order that the Phaneuf Contentions should be decided *after* the Threshold Issues are determined.

28. Specifically, by entering into the Stay Stipulations, the Plaintiffs in all other Ignition Switch Actions agreed to litigate the Threshold Issues first, and to defer consideration of other issues (such as the Phaneuf Contentions) until a later phase of this case. The Threshold Issues include, but are not limited to, (i) whether procedural due process in connection with the Sale Motion and the Sale Order and Injunction was violated as it relates to the Plaintiffs; and (ii) whether a fraud on the Court was committed in connection with the Sale Order and Injunction based on the alleged issues regarding the ignition switch defect. They are unrelated to the Phaneuf Contentions.

29. The resolution of the Threshold Issues will shape the remaining aspects of this case, and should be decided first. That is the orderly process that was set forth by the Court in the Scheduling Order, and agreed to by all other Plaintiffs in the Ignition Switch Actions.

30. To be sure, the Court may ultimately have to address the Phaneuf Contentions in connection with other Plaintiffs' claims -- not just the claims of the Phaneuf Plaintiffs. However, they are not issues that should be addressed at this time. To do so would, among other things, delay the prompt adjudication of the Threshold Issues.

31. The Scheduling Order provides that any Plaintiff can file a motion with the Court, after September 1, 2014, for further relief from the procedures set forth in the Scheduling Order,

9

for cause shown. The Phaneuf Plaintiffs will have an opportunity to seek a further adjustment of the Scheduling Order in a few months, if they can demonstrate one is warranted. In the meantime, the procedures adopted by the Court and agreed to by every other Plaintiff should be followed by all Plaintiffs, including the Phaneuf Plaintiffs.

32. If the Phaneuf Plaintiffs are not required to abide by the preexisting injunction and to cease prosecuting their Ignition Switch Action, the carefully-crafted procedures put in place by this Court in the Scheduling Order may unravel. The Stay Stipulations entered into by all the other Plaintiffs provide that:

> if a plaintiff in a different Ignition Switch Action (as defined in the Motion to Enforce) does not sign a stipulation similar to this Stipulation, and prior to September 1, 2014 obtains a ruling from the Bankruptcy Court which permits that plaintiff to go forward in its Ignition Switch Action, the Plaintiff who signed this Stipulation reserves the right to promptly seek the same relief from the Bankruptcy Court as it applies to this Action but only if the same factual and/or legal predicate on which the other plaintiff obtained relief applies to the Plaintiff in this Action as it did to the plaintiff in the other Ignition Switch Action who obtained such relief.

33. Allowing one Plaintiff to proceed with its Ignition Switch Action in a different forum could cause other Plaintiffs to seek relief in this Court from the stay that they previously voluntarily entered into, which would cause the very chaos that the Court sought to avoid by entering the Scheduling Order. The procedures agreed to by all other Plaintiffs should govern the Action instituted by the Phaneuf Plaintiffs.

### C. The Phaneuf Plaintiffs' Claims Are Barred By The Sale Order and Injunction

34. The Phaneuf Plaintiffs attempt to distinguish their Action by arguing that "the wrongful conduct giving rise to the product liability claims occurred after New GM emerged from bankruptcy" and that "[t]hey are not seeking to hold New GM liable for conduct by Old

10

23152421v1

GM."[10] Phaneuf No Stay Pleading, p. 2. However, other Ignition Switch Actions have made the same argument, basing their claims on, among other things, New GM's conduct relating to the recall of certain affected vehicles.

35. Moreover, other Ignition Switch Actions (like the Phaneuf Ignition Switch Action) also define their putative classes as including persons who purchased a vehicle manufactured by New GM (which contains potentially an allegedly defective Old GM part installed by a third party).

36. Equally important, while the Phaneuf Plaintiffs contend that they are only complaining about New GM's conduct, and not Old GM's conduct, a review of their complaint demonstrates that this is not the case. For example, like many other Plaintiffs, the Phaneuf Plaintiffs expressly make a "successor liability" claim. In the very first paragraph of their complaint, the Phaneuf Plaintiffs allege (albeit wrongly) that their Ignition Switch Action is brought against "General Motors LLC . . . *successor-in-interest* to General Motors Corporation . . . ." Phaneuf Compl., p. 1 (emphasis added).

37. In addition, while the Phaneuf Plaintiffs define their class of plaintiffs as persons who purchased affected vehicles after the closing of the MSPA, the claims asserted in the Phaneuf Ignition Switch Action *all* involve vehicles and/or parts manufactured by Old GM, not New GM. For example, lead plaintiff Lisa Phaneuf purchased a 2006 Chevrolet HHR, a vehicle manufactured by Old GM. Even though such vehicle was purchased after the Sale Order and Injunction, in the resale market from a non-GM dealership, that does not change the scope of the Assumed Liabilities of New GM under the MSPA with respect to Old GM vehicles.

---

[10] As the Phaneuf Plaintiffs have not asserted a Product Liability claim as defined by the MSPA, their citation to case law regarding future claims (such as *In re Grumman Olson Industries Inc.*) is inapposite and unavailing.

38.     As New GM explained in its Motion to Enforce, the potential ignition switch issue with vehicles manufactured by New GM is *not* that the original ignition switch in these models was faulty. Instead, a *repair may* have been made to these vehicles by someone other than New GM whereby a good ignition switch manufactured by New GM was replaced with a faulty ignition switch made by Old GM. *See* Motion to Enforce, ¶ 19. New GM is not liable for such actions.

39.     The Phaneuf Plaintiffs' complaint is also littered with numerous allegations regarding Old GM's conduct, just like all other Ignition Switch Actions. A few of the many allegations concerning Old GM conduct contained in the Phaneuf Plaintiffs' complaint (and virtually all other complaints) are as follows:

   a.   "In 2005, for example, GM launched the 'Only GM' advertising campaign. . . . 'Safety and security' were the first two features highlighted in the Company's February 17, 2005 press release describing the campaign." Compl., ¶ 26.

   b.   "Similarly, an April 5, 2005 press release about the 'Hot Button marketing program' stated that the 'Value of GM's Brands [Was] Bolstered By GM's Focus On Continuous Safety' and explained that the Hot Button program was 'intended to showcase the range of GM cars, trucks and SUVs that offer drivers continuous safety — protection before, during and after a vehicle collision.'" *Id.*, ¶ 27.

   c.   "On June 14, 2005, GM issued a press release stating that 'Safety [Was The] No. 1 Concern For Women At The Wheel' . . . ." *Id.*, ¶ 28.

   d.   "In a statement aired on Good Morning America on March 7, 2005, a GM spokesperson stated that 'the [Chevrolet] Cobalt exceeds all Federal safety standards that provide – significant real-world safety before, during, and after a crash.' In November 2005, GM ran radio advertisements stating that 'One of the best things to keep you [and your] family safe is to buy a Chevy equipped with OnStar . . . from Cobalt to Corvette there's a Chevy to fit your budget.'" *Id.*, ¶ 29.

   e.   "In April 2006, GM attempted to fix the Ignition Defect by replacing the original detent spring and plunger with a longer detent spring and plunger." *Id.*, ¶ 41.

   f.   "[I]n 2003, a GM service technician observed the Ignition Defect while he was driving." *Id.*, ¶ 44.

12

23152421v1

40. Simply put, the Phaneuf Plaintiffs' claims are based on conduct by Old GM. They are not uniquely situated, and there is no reason to create an exception to the procedure agreed to by every other Plaintiff as to how litigation issues should proceed in relation to the Motion to Enforce. Accordingly, the Phaneuf No Stay Pleading should be denied.

WHEREFORE, New GM respectfully requests that this Court (i) deny the relief requested in the Phaneuf No Stay Pleading, (ii) enjoin the Phaneuf Plaintiffs from further prosecuting their Ignition Switch Action, and (iii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       June 13, 2014

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 556-2100
Facsimile:   (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

23152421v1