IN THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re Motors Liquidation Company (f/k/a General Motors Corporation), et al., | ) ) ) | Case No. 09-50026-REG |
| | ) | |
| Debtors | ) | Hon. Robert E. Gerber |
| | ) | |
| | ) | |
| | ) | |

## MOTION FOR LEAVE TO PURSUE CLAIMS AGAINST GENERAL MOTORS LLC, AND, ALTERNATIVELY, TO FILE A POST-BAR-DATE PROOF OF CLAIM IN THE MOTORS LIQUIDATION COMPANY BANKRUPTCY

Now Comes Roger Dean Gillispie, by and through his attorneys, and hereby respectfully moves for leave to pursue claims against General Motors, LLC, and, alternatively, to file a post-bar-date proof of claim in the Motors Liquidation Company bankruptcy. In support thereof, Mr. Gillispie states as follows:

### Background

Roger Dean Gillispie, a former General Motors employee in Dayton, Ohio, spent more than 20 years in prison for crimes he did not commit. Mr. Gillispie is a family man, an avid fisher, and an individual who has no criminal record other than his wrongful conviction.

In 1990, GM's Director of Security in Dayton, Ohio fired and then falsely targeted Mr. Gillispie for several rapes that took place outside of Dayton. The GM Director was also an off-and-on auxiliary police officer in the area and (Mr. Gillispie alleges) conspired with police officers and other GM employees to frame Mr. Gillispie for the crimes. The GM Director then participated in the investigation and

prosecution of Mr. Gillispie, all of which involved a substantial violation of his constitutional rights.

Since then, Mr. Gillispie has steadfastly maintained his innocence and labored tirelessly for over 20 years to clear his name. As a result of these efforts, and those of the Ohio Innocence Project, in 2011 and 2012 two courts—one federal and one state—called into question Mr. Gillispie's conviction. *Gillispie v. Timmerman-Cooper*, 835 F. Supp.2d 482 (S.D. Ohio 2011); *State v. Gillispie* 2012 WL 1264496 (Ohio App. 2 Dist. 2012).

Now, in light of his conviction having been undermined, Mr. Gillispie has begun pursuing the next phase of relief to remedy this wrongful incarceration—a civil suit under 42 U.S.C. § 1983 alleging that his conviction was the result of violations of his constitutional rights and, likewise, the result of a conspiracy among police officers and individuals working at GM to maliciously prosecute him. *Cf. Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) ("Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents.").

To that end, in December of 2013 Mr. Gillispie commenced a civil action, *Gillispie v. Miami Township, et al.*, 13cv416, in the Southern District of Ohio. *See* Exhibit 1 (First Amended Complaint). In his Complaint, Ms. Gillispie alleges that, among others, the police officers from Miami Township worked in conjunction with Mr. Gillispie's former colleagues and supervisors at General Motors to falsely implicate him in several crimes; that they withheld exculpatory evidence from Mr.

2

Gillispie during his criminal prosecution; and that several General Motors and Miami Township employees even provided false, perjured testimony in order to secure Mr. Gillispie's conviction.

In addition to naming the police officers and other public officials that caused his incarceration, Mr. Gillispie's First Amended Complaint alleges that several of his former colleagues at General Motors, and ultimately GM itself, are liable for the actions they took that contributed to his wrongful incarceration. The Complaint alleges that GM itself is possibly liable on the basis that (1) the GM Director's actions (with other GM employees) were pursuant to company as policies, practices, or customs, *see Monell v. Department of Soc. Svcs.*, 436 US 658 (1978); (2) that the supervisor's decisions were sufficient for making company policy in the applicable area, *see Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), (3) and that GM has an obligation to indemnify its employees if they are ultimately liable, *see, e.g.*, Ohio Rev. Code § 1729.031.

After Mr. Gillispie was convicted in 1990 but before that conviction was called into question in 2011 and 2012, General Motors went through a § 363 sale and a Chapter 11 bankruptcy. These events complicate the question of which entity is the proper defendant to Mr. Gillispie's § 1983 suit, and such a question did not come before the Court in the proceedings regarding the § 363 sale or at any point in the bankruptcy proceedings. Mr. Gillispie's status vis-à-vis GM as a defendant in his lawsuit is therefore unique, and perhaps *sui generis*.

3

The question is complicated because before Mr. Gillispie's conviction was called into question or otherwise undermined, he could not have filed a § 1983 suit alleging that his conviction was unconstitutional or otherwise invalid. *See Heck v. Humphrey*, 512 U.S. 477 (1994).[1] In addition, to bring a § 1983 malicious prosecution claim, which is advanced in the suit, Mr. Gillispie's conviction similarly had to have been undermined. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir .2010). Thus, it is undisputed that before 2011 or 2012 Mr. Gillispie could not have sued GM for the claims advanced in his § 1983 suit—because of *Heck* he had no cause of action. Indeed, under *Heck*, the law would not acknowledge that any wrong at all was done to Mr. Gillispie.

Accordingly, given that Supreme Court law precluded Mr. Gillispie from asserting any claims against GM during the entire pendency of the § 363 sale and bankruptcy proceedings, the constitutional guarantee of Due Process demands that Mr. Gillispie now have the opportunity to present his claims against GM in some capacity. *See Zinermon v. Burch*, 494 U.S. 113, 129-30 (1990) (explaining that due process requires "post deprivation tort remedies" in situations where they are the "only remedies" one "could be expected to provide"); *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701 (1884) (explaining that due process "must be adapted to the end

---

[1] In *Heck*, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87.

to be attained; and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought"); *cf. Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Put differently, applying due process here means that Mr. Gillispie must be allowed to seek some form of post-incarceration relief against GM for the actions, if proven, he alleges GM took in violation of his rights. Accordingly, Mr. Gillispie's First Amended Complaint names both "Old GM" (Motors Liquidation Company f/k/a General Motors Corporation) and "New GM" (General Motors, LLC f/k/a General Motors Company and NGMCO, Inc.) as defendants. By this Motion, Mr. Gillispie asks this Court to determine whether he can pursue his claims against New GM, Old GM, or both. Without being granted such relief, contrary to foundational notions of due process, Mr. Gillispie will absolutely no opportunity to seek a remedy for what he alleges was a violation of his most fundamental rights.

### Issues Presented & Relief Requested

First, with respect to New GM, the question is whether Mr. Gillispie's interests are ones that, in light of Constitution and other applicable law, he must be entitled to assert against New GM notwithstanding the consideration of similar, though distinct, issues in this Court's prior orders. *See In re General Motors Corp*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) (the *"Sale Opinion"*) (addressing the constitutionality of successor liability issues for certain claimants); *In re General*

*Motors Corp.*, 09-50026, Dkt. 2968, Order Authorizing Sale of Assets, at ¶8 (July 5, 2009) (the "Sale Order"), attached as Exhibit 2 (enjoining "all persons" from asserting claims against New GM related to assets bought from Old GM). Put differently, the question is whether this Court's injunction following the § 363 sale prevents Mr. Gillispie from asserting his claims against New GM.

Importantly, this Court's prior orders do not address whether the § 1983 claims here, which could not have even possibly existed until after the sale and bankruptcy (because they were barred by *Heck* at the time of the § 363 sale and bankruptcy), fall within the ambit of this Court's injunction. Due process demands they do not. Indeed, this Court has acknowledged that individuals with "future claims" should not be treated as bound by the injunction—Mr. Gillispie is such an individual. Due process therefore requires that he have the opportunity to pursue his claims, which did not previously exist, against New GM.

New GM takes the position that Mr. Gillispie's claims against it violate the *Sale Order* and that due process does not demand he be allowed to pursue his claims against New GM. *See* Exhibit 3 (Ltr. from Lawrence Buonomo to Mr. Gillispie's Counsel, Feb. 13, 2014.)[2]  Mr. Gillispie has no intention of violating an Order of this Honorable Court, and, by this Motion, seeks an Order clarifying that he can pursue his claims against New GM without violating the injunction. In

[2] Counsel for Mr. Gillispie and New GM have consulted regarding the issues presented in this Motion. Counsel for Mr. Gillispie have agreed not to pursue his case against New GM while this Motion is pending. Likewise, counsel for New GM have agreed that this Motion is the proper way for adjudicating whether New GM should be a party to the civil suit and are not pursuing an injunction or any other form of sanction against Mr. Gillispie for having named New GM as a defendant to the suit.

6

addition, and in accordance with such an Order, there is a new reason to find that New GM is the proper party to Mr. Gilispie's civil suit: New GM admits that it is in fact the same company as, and legally responsible for the actions of, Old GM.

Second, in the alternative, should the court find that Mr. Gillispie is barred from pursuing his claims against New GM, the issue is whether Mr. Gillispie is an unsecured creditor of the bankruptcy estate. That question turns on whether Mr. Gillispie can now file a proof of claim despite the fact that the bar date was years ago. As explained below, Mr. Gillispie's claims easily satisfy the "excusable neglect" standard of Federal Rule of Bankruptcy Procedure 9006(b)(1). Accordingly, at a minimum, Mr. Gillispie should be permitted to file his proof of claim now, though after the bar date.

## Argument

## I.  Mr. Gillispie  Should Be Permitted to Advance His Civil Suit Against New GM

As this Court recognized in *Sale Opinion*, due process demands different treatment for individuals holding "future claims" against GM that could not have been raised previously. The Court defined this class of people as follows:  (1) claimants who were not previously able to file a claim at the time of the 363 sale or bankruptcy, who therefore had no notice that such a claim needed to filed; and (2) claimants whose interests were "not yet 'claims' as Defined in the Bankruptcy code." *Sale Opinion*, 407 B.R. at 506. Mr. Gillispie is such an individual, as his situation more than satisfies both of these criteria.

7

**A. Mr. Gillispie Could Not Have Previously Asserted His Claims Against GM and is Therefore a "Future Claims" Holder**

When this Court issued the Sale Opinion and Sale Order, and then later confirmed Old GM's Chapter 11 plan, the *Heck*-bar prevented Mr. Gillispie from bringing the claims he now advances civilly in *Gillispie v. Miami Township* because, through those claims, Mr. Gillispie alleges that his conviction was wrongful and invalid. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Heck*, 512 U.S. at 487. Under *Heck*, Mr. Gillispie could not have filed his § 1983 lawsuit until after his conviction was called into question, which occurred in either 2011 or 2012, and is the subject of ongoing litigation in federal and state courts. The law is clear that a § 1983 plaintiff's underlying conviction must be called into question, reversed, or otherwise undermined before civil rights claims implicating the conviction accrue. *Heck*, 512 U.S. at 489-90.

Thus, because Mr. Gillispie's cause of action did not accrue—that is, his claims did not come into existence—until *after* the 363 sale (and *after* the bankruptcy proceedings were complete), he could not have filed a claim at the time of any of GM's bankruptcy proceedings. *See Gabelli v. SEC*, 133 S. Ct. 1216, 1220 (2013) ("'In common parlance a right accrues when it comes into existence'" (quoting *United States v. Lindsay*, 346 U.S. 568, 569 (1954)); *id.* at 1221 (noting that Black's Law Dictionary defines "'accrue' as '[t]o come in to existence as an enforceable claim or right'"). In fact, at the time of the prior proceedings Mr. Gillispie did not know, nor could he have had any way of knowing, whether he would *ever* have federal constitutional claims that he would be able to advance in a § 1983 lawsuit. If, as his

8

previous attempts had been, Mr. Gillispie was unsuccessful in obtaining post-conviction relief, his claim would have never come into existence.

This Court has recognized that an individual in a situation something analogous to Mr. Gillispie's could not have previously asserted their claims against GM. Specifically, in the *Sale Opinion*, this Court recognized that individuals who had been exposed to asbestos pre-sale and pre-petition, but did not "yet know of their ailments or the need to sue or assert a claim," should not be bound by the *Sale Order*. 407 B.R. at 506. As the Court recognized, Due Process requires a different result for these individuals because "the notice given on the [sale] was not fully effective" because, at the time of the notice, any of these "recipient[s] would be in no position to file a present claim." *Id.* at 507. Accordingly, this correctly explained, barring these sorts of individuals from presenting claims against New GM would be "constitutionally suspect," and the Court therefore added language into its injunction recognizing such limitations. *Id.*

Mr. Gillispie is not a future asbestos claimant. Nonetheless, his claims fall well within the group of individuals holding "future claims," as defined by the Court. To start, he "was in no position to file a present claim" at the time of the sale. *Id.* Indeed, Mr. Gillispie's circumstances are possibly more compelling than, and the due process demands all the more present, than a "future" asbestos claimant. For one, Mr. Gillispie was (wrongfully) incarcerated at the time of the sale and bankruptcy proceedings, rendering him outside of the scope of the notice published in the sale and bankruptcy. In addition, any notice would have been completely

defective: Mr. Gillispie had absolutely *no* cause of action until his conviction was called into question—something that undisputedly took place after the 363 sale and bankruptcy petition. Nor did Mr. Gillispie have any way of knowing (though he had every hope) of whether he would have been ultimately successful in having his conviction declared invalid, undermined, or called into question. Last, while someone who had been exposed to asbestos would have had a claim that they did not know about—because the injuries had not begun to manifest—Mr. Gillispie had no claim whatsoever.

In short, if an asbestos "future claimant's" due process rights require a different analysis, then *a fortiori* Mr. Gillispie's do as well.

### B. Mr. Gillispie's Interests, True "Future Claims," are Not "Claims" As Defined in the Bankruptcy Code and Cannot, Consistent with Due Process, Be Categorically Discharged

In the *Sale Opinion*, the Court defined those with "Future Claims" as individuals possessing interests that were "not yet 'claims' as defined in the Bankruptcy Code." *Id.* at 506l. Mr. Gillispie is such an individual, and his § 1983 suit against GM satisfies this criterion (that his interests would not be defined as a "claim" under the Bankruptcy Code) as well.

It is well established that "[a] claim exists *only if* before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all the elements necessary to give rise to a legal obligation—a right to payment— under the relevant non-bankruptcy law." *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir.1995) (quoting *In re National Gypsum*

*Co.*, 139 B.R. 397, 405 (N.D.Tex.1992) (emphasis added)). Here, "all of the elements necessary to give rise to a legal obligation" did not occur prepetition; indeed, Mr. Gillispie's legal claims had not accrued and therefore did not even exist. *Gabelli*, 133 S. Ct. at 1220.

Thus, because interests at stake in *Gillispie v. Miami Township* are post-petition "future claims," it is well established: that they are not "claims" for the purposes of the Bankruptcy Code; that due process therefore demands that Mr. Gillispie cannot be bound by the injunction in the *Sale Order*; and that Mr. Gillispie should now be able to assert his claims against New GM. *See In re Johns–Manville Corp.,* 600 F.3d 135 (2d Cir.2010) (discussing the application of due process to future claims in bankruptcy); *In re Grumman Olson Indus.*. 467 B.R. 694, 706 (S.D.N.Y. 2012) ("Courts have held in general that, for due process reasons, a party that did not receive adequate notice of bankruptcy proceedings could not be bound by orders issued during those proceedings."); *see also id.* at 709 ("Because parties holding future claims cannot possibly be identified and, thus, cannot be provided notice of the bankruptcy, courts consistently hold that, for due process reasons, their claims cannot be discharged by the bankruptcy courts' orders."); *In re Waterman S.S. Corp.*, 157 B.R. 220, 222 (S.D.N.Y. 1993) ("The Bankruptcy Court correctly held that the potential future claims of those who had not manifested any detectable signs of disease when notice of the bar date was given, were not discharged in the bankruptcy proceeding.").

Courts nationwide have reached the same conclusion in situations involving "future claims" for others, like unborn claimants, that are materially analogous to Mr. Gillispie. *See, e.g.*, *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994); *Morgan Olson, LLC v. Fredrico (In re Grumman Olson Indus., Inc.)*, 445 B.R. 243, 254-56 (Bankr. S.D.N.Y. 2011); *In re Chance Industries, Inc.*, 367 B.R. 689 (Bankr. D. Kan. 2006); *In re Hoffinger Industries, Inc.*, 307 B.R. 112 (Bankr. E.D. Ark. 2004); *In re Piper Aircraft Corp. v. Official Committee of Unsecured Creditors of The Estate of Piper Aircraft Corp.*, 168 B.R. 434 (S.D. Fla. 1994).

Likewise, courts considering the materially indistinguishable situation of a malicious prosecution claim where the criminal proceedings terminated in the claimants favor after the bankruptcy petition was filed have overwhelmingly held that such an action accrues following a bankruptcy is therefore not a "claim" within the meaning of the bankruptcy code, meaning such a claim cannot be discharged by the bankruptcy either. *Austin v. BFW Liquidation, LLC (In re BFW Liquidation, LLC)*, 471 B.R. 654, 667 (N.D. Ala. 2012), is illustrative. There, the Court explained that where a criminal action against the plaintiff did not conclude in the plaintiff's favor until after the debtor's plan was confirmed, that the plaintiff's "malicious prosecution action accrued … post-confirmation" and was not, therefore, "discharged by confirmation of the debtor's plan." *Id.*

Again, nationwide, numerous courts have reached the same conclusion. *See, e.g.*, *Johnson v. Mitchell*, 2011 WL 1586069, at *7-*8 (E.D. Cal. 2011) (explaining that "the element of termination in plaintiff's favor is of paramount importance to a

12

malicious prosecution claim, and the claim would not exist without this primary predicate," and that because the "predicate" requirement occurred after the bankruptcy filing,  "plaintiff's malicious prosecution claims [we]re not part of the bankruptcy estate"); *In re Jenkins*, 410 B.R. 182 (W.D. Va. 2008) (holding that even though some of the conduct that constituted the basis for the plaintiff's malicious prosecution claim arose prepetition, the fact that the "right to bring the claim" was not in existence at the time of filing—the criminal case had not resolved in the plaintiff's favor—meant that the malicious prosecution was not property of the bankruptcy estate); *Carroll v. Henry County, Georgia*, 336 B.R. 578 (N.D. Ga. 2006)(discussing *Heck*, and concluding that the Plaintiff "had no section 1983 claim until the conclusion of his trial, when the jury found him not guilty of the charges against him," and that "[b]ecause the jury verdict occurred after the filing of the bankruptcy petition, the plaintiff had no section 1983 claims at the time of commencement of [the bankruptcy] case"); *Brunswick Bank & Trust Co. v. Atanasov* (*In re Atanasov*), 221 B.R. 113 (D.N.J.1998) (debtor's malicious prosecution claim was not property of estate as it arose post-petition when indictment was dismissed); *cf.  Atkins v. Cory & Cory (In re Cory)*, 2008 WL 5157515, at *1 (W.D. Mo. 2008) ("The Debtors concede that the criminal action against Ms. Atkins at issue in the state court malicious prosecution action was dismissed after the Debtors filed their Chapter 7 bankruptcy petition. Therefore, the Plaintiff's malicious prosecution action accrued post-petition. As a post-petition claim, it is not subject to the Debtors' discharge.").

13

In light of these authorities, there should be no question that, at the time of the 363 sale and confirmation date, Mr. Gillispie did not have a "claim" within the meaning of the Bankruptcy Code. Accordingly, given that due process requires "future claims" holders like Mr. Gillispie be entitled to litigate their claims once they do exist, due process demands that same result here where Mr. Gillispie was incarcerated and had no claim at the time of the 363 sale or petition date.

**C. General Motors LLC's Recent Admissions That It Bears Legal Responsibility For The Pre-Sale and Bankruptcy Actions of Motors Liquidation Company Creates A Question of Fact for the Article III Court As To Whether General Motors LLC Should Be A Defendant to Mr. Gillispie's § 1983 Suit.**

Apart from the issues related to this Court's prior decisions, General Motors LLC—New GM—is potentially liable for Mr. Gillispie's claims a wealth of new information has recently emerged wherein New GM has admitted to being the same corporation as Motors Liquidation Company—Old GM. These admissions took place well-after the *Sale Opinion*, and were not addressed by that order at all; nor could they have been. Instead, in the last several months New GM has admitted that, despite the language in the used in the sale and bankruptcy, it bears responsibility for the actions of Motors Liquidation Company, Old GM, because they remain the same company.

Specifically, and for example, GM's CEO, Mary Barra, was recently asked about whether the company bears responsibility for ignition switch defects in cars manufactured and sold before the § 363 sale and bankruptcy. When asked whether "New GM" is responsible," Ms. Bara admitted that the company retains "legal

14

obligations and responsibilities as well as moral obligations," derived out of its continuing operation of General Motors. Tr. of Testimony before the House Committee on Energy and Commerce Subcommittee on Oversight and Investigations, *GM Ignition Switch Recall, Why Did it Take So Long?*, at 105 (Apr. 1, 2014), attached as Exhibit 4; *see also id.* at 36 (Ms. Barra: "As I see it, GM has civil responsibilities and legal responsibilities" related to compensating claimants from Old GM's prior sales); *id.* at 102 (discussing "civic responsibilities as well as legal responsibilities" related to Old GM).

Similarly, before a senate subcommittee, Ms. Barra, admitted that "General Motors is a hundred-year-old company," that has changed its "focus" since the bankruptcy, including compensating families for car crashes after the bankruptcy proceedings. Tr. of Proceedings before the Senate Transportation Subcommittee on Consumer Protection and Product Safety, *GM Ignition Switch Recall*, at 36 (Apr. 2, 2014), attached as Exhibit 5; *see also id.* at 49-51 (admitting that New GM will work to compensate families for pre sale and bankruptcy defects); *id.* at 33 (discussing the changing culture since the bankruptcy). Again, Ms. Barra admitted that "GM has both civic responsibilities and legal responsibilities" associated with pre-sale and pre-bankruptcy transactions. *Id.* at 21.; *see also id.* at 50 (similar). It is no surprise, then, that Congress members recognized New GM to be taking admitting its own legal responsibility for "Old GM's" actions. *See, e.g.*, *id.* at 125( Senator Blumenthal: "What you're doing now is incurring both legal and moral responsibility....").

In light of these sorts of admissions, and entirely distinct from the questions addressed in the *Sale Opinion*, there is now a question of fact related to whether New GM has ongoing "legal obligations" derived from the plain fact that it is the same company as Old GM and has admitted that it bears responsibility as such. That is, the question of whether GM should be a party to Mr. Gillispie's lawsuit also involves factual questions entirely unrelated to the prior proceedings in this Court. As such, like many questions about whether the proper parties have been sued in a given lawsuit, whether New GM can be a defendant in the § 1983 action should be considered in the first instance by the Article III court in the Southern District of Ohio where that lawsuit is currently pending.

## II.  Mr. Gillispie's Post-Bar-Date Proof Of Claim Should Be Allowed

Should the Court disagree with the foregoing, and hold that New GM cannot be a defendant in *Gillispie v. Miami Township*, the opposite cannot also be true— the Old GM, and its still-open estate, cannot also be potentially liable for the conduct, if proven, alleged in Mr. Gillispie's complaint. That is, given Mr. Gillispie's fundamental, constitutional right to Due Process, this Court cannot hold that Mr. Gillispie—who has never had a prior opportunity to assert his claims—cannot litigate them against New GM *and* Old GM. Accordingly, the flipside of the foregoing is that if Mr. Gillispie's claims are not post-petition claims that, for constitutional and equitable reasons, he is entitled to bring against New GM, then he must, at a minimum, be entitled to pursue relief from Old GM's estate.

16

In addition to due process, the Court's analysis turns on Federal Rule of Bankruptcy Procedure 9006(b)(1), which "empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect.'" *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 382 (1993) (quoting FED. R. BANKR. P. 9006(b)(1)). In determining whether an individual has met her burden of demonstrating excusable neglect, the Court considers the "totality of the circumstances," including the (1) danger of prejudice to the debtor, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was in the movant's control, and (4) whether the movant acted in good faith. *Id.* at 395. At the end of the day, excusable neglect is an "elastic concept" and the Court's determination is "an equitable one." *Id.* at 392 & 395; *see also In re 50-Off Stores, Inc.*, 22 B.R. 897, 901 (Bankr. W.D. Tex 1998) (explaining that "no single circumstance controls, nor is a court simply to proceed down a checklist ticking off traits").

Here, the equities undoubtedly favor Mr. Gillispie. First, and most paramount is the fact that Mr. Gillispie was incarcerated during the sale and confirmation of the bankruptcy due to a conviction that was called into question years after the bar date. Before then, in light of *Heck*, Mr. Gillispie could not have brought his civil rights case. Accordingly, it cannot be doubted that Mr. Gillispie's reason for seeking to file a proof of claim after the bar date is outside of his control.

In addition, by this Motion, Mr. Gillispie is acting in good faith in trying to determine, as a matter of federal bankruptcy law, whether Old GM, New GM, or both are proper defendants to his lawsuit.

The Debtor, Old GM, will not be prejudiced by allowing Mr. Gillispie to file a proof of claim. For one, the amount of time between the bar date (in 2009) and this motion (in 2014) is not prejudicial; there are still a number of pending claims in the bankruptcy estate, and the General Unsecured Creditors Trust remains open. In addition, Mr. Gillispie's claims are unique, allowing his claim will not open the door to a flood of other litigants. *Compare In re Enron Corp.*, 2003 WL 1889042 (Bankr. S.D.N.Y. Apr. 8, 2003) (denying a rule 9006(b)(1) motion to file tardy proof of claim where a "deluge of motions seeking similar relief" could have occurred, thus causing substantial prejudice to the Debtor).

Indeed, underscoring the lack of prejudice is the fact that both the Debtor and this Court have acknowledged that, given the size, structure, and age of General Motors, future claimants would likely be making claims against Old GM related to events that happened well before the bankruptcy was filed. This is why, for example, to "manage the liquidation of this very large and complex estate," the Plan created the GUC trust in the first place, established "future claims" representatives for asbestos litigants, *In re Motors Liquidation Co.*, 447 B.R. 198 (Bankr. S.D.N.Y. 2011), and why this Court reserved its right to Order certain "late claims" be allowed. (*See* Dkt. 11394). Likewise, in the *Sale Opinion*, the Court recognized that many "Future Claims" issues could arise after the purchase and

sale (as now, after the bar date) "especially if Old GM were still in existence, and a claim could be filed with Old GM," which is precisely the circumstance here. *Sale Opinion*, 407 B.R. at 507.

In short, Mr. Gillispie has demonstrated his entitlement to file a post-bar-date proof of claim because he has more than established "excusable neglect" as required by Rule 9006(b)(1).

## Conclusion

WHEREFORE, Roger Dean Gillispie respectfully Moves this Court to Order that he be able to pursue his claims in *Gillispie v. Miami Township* against General Motors LLC, and, simultaneously and in the alternative, be granted leave to file a post-bar-date proof of claim the Motors Liquidation Company bankruptcy estate.

Respectfully Submitted,

/s/ David B. Owens*
*Attorney for Roger Dean Gillispie*

David. B. Owens*
LOEVY & LOEVY
312 N. May, Suite 100
Chicago, IL 60607
(312) 243-5900
david@loevy.com

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, David B. Owens, an attorney, certify that on June 17, 2014, I delivered by electronic means a copy of the attached Notice to all counsel of record via the Court's electronic filing system.

/s/ David. B. Owens