KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial: 212-556-2158
asteinberg@kslaw.com

July 1, 2014

**VIA ECF FILING**
**AND E-MAIL TRANSMISSION**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

**Re: In re Motors Liquidation Company, *et al.***
**Case No. 09-50026 (REG)**

**New GM's Response to Daniel Hornal's Letter, Dated June 30, 2014**

Dear Judge Gerber:

King & Spalding LLP is co-counsel with Kirkland & Ellis LLP for General Motors LLC ("**New GM**") in the above-referenced matter. New GM submits this letter in response to the letter filed with the Court by Daniel Hornal, Esq. on June 30, 2014 ("**Hornal Letter**") on behalf of Lawrence and Celestine Elliott.

As stated in New GM's *Supplemental Response by General Motors LLC in Connection with Stay Procedures Set Forth in the Court's May 16, 2014 Scheduling Order*, filed on June 24, 2014 [ECF 12735] ("**Supplemental Response**"), the Elliotts, *pro se*, previously commenced an individual action ("**Elliott Action**") against New GM that concerned, at least in part, an allegedly defective ignition switch. As such, the Elliott Action was included in New GM's Motion, dated April 21, 2014 ("**Motion**"),[1] seeking to enforce the Sale Order and Injunction.

Pursuant to the Scheduling Order entered by the Court on May 16, 2014 ("**Scheduling Order**"), New GM sent the Elliotts a letter explaining that they could either enter into a

1 Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

stipulation ("**Stay Stipulation**") with New GM that would stay their Action, or they could file a No Stay Pleading with the Court explaining why their Action should not be stayed ("**Stay Procedures**"). The Elliotts did not contact counsel for New GM to ask any questions regarding the Stay Procedures. Instead, prior to the deadline for entering into a Stay Stipulation or filing a No Stay Pleading, the Elliotts voluntarily faxed to counsel for New GM an executed Stay Stipulation. The Stay Stipulation is not required to be filed with any court in order for it to be binding. *See* Stay Stipulation, ¶ 12.

Counsel for New GM attempted to file the Stay Stipulation with the United States District Court for the District of Columbia ("**DC District Court**") where the Elliott Action is pending, but the DC District Court instructed the parties that such relief needed to be requested by motion. Accordingly, on or about June 13, 2014, New GM sent to the Elliotts the identical substance of the executed stipulation restyled in the form of a draft motion, as required by the DC District Court. Thus, Mr. Hornal should have been provided a copy of the draft joint motion by his clients on June 18, 2014 – the date that he asserts he was retained by the Elliotts. A second copy of the draft joint motion was provided to the Elliotts' counsel in electronic form, at their request, on June 23, 2014. Mr. Hornal falsely represents to this Court that "GM has refused to confer with counsel regarding a motion submission to Judge Jackson [of the DC District Court] regarding the stay that GM requests." (*Id*. at 2). To the contrary, counsel for New GM has been in near-daily contact with counsel for the Elliotts on this subject. Counsel for the Elliotts has made plain in these conversations that, despite the plain language of the Stay Stipulation, the Elliotts will not participate in any joint motion that requires them to stay their entire case (*i.e.*, both ignition switch and any non-ignition switch claims) pending this Court's resolution of the Threshold Issues.[2] Indeed, despite having a draft of the joint motion since June 14, and an electronic version since June 23, neither the Elliotts nor their attorneys have provided comments on that motion or executed it, despite the Stay Stipulation expressly requiring that "[t]he Parties each agree to execute such documents as may be reasonably necessary to carry out the terms of this Stipulation." Stay Stipulation, ¶ 7.

Instead, counsel for the Elliotts has taken various actions in the DC District Court that are in blatant violation of the Stay Stipulation that their client voluntarily signed. Most recently, on June 28, 2014, the Elliotts, through their counsel, filed in the DC District Court a motion for leave to amend their complaint ("**Motion to Amend**").[3] Like Mr. Hornal's correspondence to this Court, the Memorandum in Support of the Motion to Amend filed in the DC District Court misrepresents to that court the proceedings here: "GM is currently attempting to circumvent this Court's [*i.e.*, the DC District Court's] authority by appealing to the Bankruptcy Court in the Southern District of New York to bar Mr. and Mrs. Elliott even from presenting the [Motion to Amend] to this Court." To the contrary, the Elliott's Motion to Amend is a clear violation of (a) the procedures implemented in the Scheduling Order, and (b) the Stay Stipulation. New GM is

---

2 The non-ignition switch claim also is for economic losses relating to a vehicle sold by Old GM and is thus a Retained Liability under the MSPA. The Elliotts' assertion of such claim is a separate violation of the Sale Order and Injunction.

3 Annexed hereto as Exhibit "A" is the Motion to Amend, with exhibits, including a copy of the Elliotts' proposed amended complaint ("**Proposed Amended Complaint**").

doing no more than seeking to enforce its rights and secure an orderly resolution of issues, as required under these documents.

Contrary to Mr. Hornal's assertion that the Elliott Action "is not an 'Ignition Switch Action' subject to the Court's Scheduling Order but instead was erroneously and improperly designated by GM as such" (Hornal Letter, p. 1), not only did the Elliotts' original *pro se* complaint clearly include allegations related to the ignition switch—"The key turned the ignition off under many conditions in the Cobalt SS, (the ignition switch was also found to split at times and turn the run cycle to the accessory cycle)" Elliott 4/1/14 Complaint, at p. 2-3—but a review of their Proposed Amended Complaint clearly demonstrates that the Elliott Action is an Ignition Switch Action to its core. The Proposed Amended Complaint is replete with references to the alleged defective ignition switch in an Old GM pre-petition vehicle allegedly owned by the Elliotts (*i.e.*, a 2006 Chevrolet Cobalt), and each of the eight causes of action asserted against New GM set forth in the Proposed Amended Complaint is premised and seek economic loss damages, at least in part, based on the alleged defective ignition switch. *See generally* Proposed Amended Complaint.[4]

In addition, while Mr. Hornal asserts that the Elliotts have been denied a reasonable opportunity to present their arguments, what he does not acknowledge is that the Elliott Action was part of the Motion from the beginning, the Elliotts were on notice of the Motion since late April 2014, and that they retained counsel, at the latest, on June 18, 2014. Nowhere in the Hornal Letter does Mr. Hornal acknowledge that the Elliotts voluntarily executed the Stay Stipulation.

Mr. Hornal does acknowledge that the Elliotts "should have brought these matters to the Court's attention by way of a 'No Stay' motion and request[s] that the Court excuse their failure to do so as excusable neglect . . . ." Hornal Letter, p. 1 n. 1. To be clear, the "excusable neglect" referred to is not for actions taken by a *pro se* plaintiff, but are actions taken by counsel for the Elliotts with knowledge of the Sale Order and Injunction and the Stay Stipulation. Even at this late date, neither the Elliotts nor their counsel have filed a No Stay Pleading or sought relief from the Stay Stipulation. As Mr. Hornal has acknowledged, that is what they should have done.

The Hornal letter also does not even provide a specific date by which a No Stay Pleading would be filed. Rather, they conveniently seek to peg their response date based on the DC District Court ruling on the Motion to Amend. The filing of that pleading was itself a violation of the Stay Stipulation and Sale Order and Injunction.

In sum, there is nothing unreasonable or unfair about holding the Elliotts to the Stay Stipulation that they voluntarily executed (which, of course, by its terms does no more than

---

[4] Mr. Hornal is correct that the JPML initially declined to include the Elliott Action in the MDL based on the lack of clarity in the Elliotts' *pro se* allegations. The Elliotts' draft Proposed Amended Complaint contains no such ambiguity and, as set forth above, clearly alleges economic loss claims arising from the ignition switch defect in a pre-petition vehicle manufactured by Old GM. Accordingly, New GM will be filing today a motion to transfer before the JPML and expects that the Elliott Action shortly will be transferred to the MDL court in the Southern District of New York for coordinated or consolidated pretrial proceedings.

*temporarily* prohibit the Elliotts from seeking relief from the stay until September 1, 2014). New GM also is prepared—in light of the Elliotts' recent retention of counsel—to consent to the Elliotts receiving additional time to file a No Stay Pleading with this Court, should the Court wish to consider it, *if* the Elliotts agree to withdraw their improperly brought Motion to Amend and to otherwise maintain the *status quo* in the DC District Court until their No Stay Pleading is resolved by this Court. Such a standstill in the DC District Court would work no prejudice on the Elliotts. Indeed, the *only* explanation that the Hornal Letter puts forth for seeking to continue to prosecute their action in the DC District Court while their forthcoming No Stay Pleading is considered is because "the Amendment of the Elliotts' pro se pleadings will clarify the factual and legal bases of the Elliotts' claims and provide the basis for this Court to fairly consider the Elliotts' contention that their case is not an 'Ignition Switch Action' subject to the Court's Scheduling Order but instead was erroneously and improperly designated by GM as such." (*Id*. at 1). But that clearly is not true insofar as Elliott's counsel is trying to turn an individual action to a class action. Moreover, there is no need for the DC District Court to decide the Motion to Amend—much less to allow the Elliotts to continue to litigate their individual action in the DC District Court—for this Court to be able to consider the allegations in the Proposed Amended Complaint and decide whether their case is an Ignition Switch Action. Indeed, the argument itself is meritless, given that the Elliotts seek economic loss damages arising from a pre-petition vehicle (*i.e.*, a 2006 Chevrolet Cobalt) and the words "ignition switch" appear multiple times on almost every page of their 53-page draft Proposed Amended Complaint.[5] On the other hand, New GM (and the more than 85 sets of plaintiffs that have properly followed this Court's procedures) will be substantially prejudiced if New GM is forced to continue to litigate with the Elliotts in contravention of the Scheduling Order, the Stay Stipulation and the Sale Order and Injunction.

New GM reserves the right to respond to all arguments made by counsel for the Elliotts at the July 2, 2014 hearing.

Respectfully submitted,

*/s/ Arthur Steinberg*

Arthur Steinberg

AJS/sd

cc: Daniel Hornal, Esq. (without enclosures)
Gary Peller, Esq. (without enclosures)

---

[5] The Proposed Amended Complaint also seeks to join an additional plaintiff, Berenice Summerville, who claims economic loss damages arising from a post-sale vehicle (*i.e.*, a 2010 Chevrolet Cobalt). As set forth in the Motion, New GM believes that post-sale vehicles were subject to the ignition switch recall only because of the remote possibility that they may have been repaired using a pre-petition part never manufactured by New GM. These claims are Retained Liabilities which are subject to this Court's exclusive jurisdiction.