# GEORGETOWN LAW

**Gary Peller**
Professor of Law

July 9, 2014

**VIA ECF FILING
AND E-MAIL TRANSMISSION**
Hon. Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004-1408
gerber.chambers@nysb.uscourts.gov

*Endorsed Order:*
*"Denied."*
*s/ REG, USBJ*
*7/11/2014*

Re: In re Motors Liquidation Co., et al, f/k/a General Motors Corp., et al. – United States Bankruptcy Court for the Southern District of New York, Case No: 09-50026

Dear Judge Gerber:

With co-counsel Daniel Hornal, I represent Lawrence and Celestine Elliott in the claims against New GM that were the subject of the last few minutes of the Court's July 2, 2014, hearing in the above referenced matter. My representation is not sponsored or endorsed by Georgetown University Law Center. I seek the Court's indulgence regarding the length of this submission in light of the serious and pressing issues that Mr. and Mrs. Elliottt, their counsel, and others targeted by this Court's restraining Order imminently face.[1]

I am writing to seek the Court's expedited consideration of Plaintiffs' request contained herein that the Court forthwith vacate or, in the alternative, suspend paragraphs 2-4 of its July 8, 2014, Order Staying and Restraining Lawrence and Celestine Elliott, and their Counsel, from Further Proceeding with their Ignition Switch Action, Except as Expressly Set Forth Herein. *See* Order Staying and Restraining Lawrence and Celestine Elliott, and their Counsel, from Further Proceeding with their Ignition Switch Action (*In re Motors Liquidation*, 1:09-bk-50026 (Bankr. S.D.N.Y. Jun 01, 2009, Doc. No. 12763) (hereinafter *Motors*). Those provisions require Plaintiffs, within two days of the Order's entry, to withdraw their pending Motion to Amend

---

[1] All factual allegations contained in this letter will be included in a sworn declaration to be submitted as an exhibit to plaintiffs' No Stay Pleading and Motion for an Order of Dismissal for Lack of Subject Matter Jurisdiction filed in accordance with the Court's July 8 Order Staying and Restraining Lawrence and Celestine Elliott, and their Counsel, from Further Proceeding (*In re Motors Liquidation*, 1:09-bk-50026, Doc. No. 12763). I certify under penalty of perjury that all statements made in this letter are true and correct to the best of my knowledge.

Honorable Robert E. Gerber
July 9, 2014
Page 2

their Complaint in their action against New GM currently pending in the United States District Court for the District of Columbia.

The ground for the request for *expedited* consideration is that the relevant provisions in the Order would put counsel in an untenable situation. The limited time accorded does not permit counsel to properly carry out their professional and ethical duties to their clients, to their professional colleagues and support staff, and to the Court. Counsel should at the least have a reasonable opportunity to explain the Court's directions to all those named in the Court's Order ("the Elliotts, their counsel and any other person acting in concert with them...") *See id.* at ¶ 2. Each of those individuals is potentially subject to this Court's civil contempt power, and should be afforded a reasonable time to consider their options and, for those not represented, to retain and consult separate counsel for advice on this matter. To counsel's knowledge, there are at least nine persons potentially subject to the Court's Contempt power who, in counsel's estimation, should have an opportunity to understand the Order and carefully weigh the requirements and implications of the Order with respect to their own ethical or moral commitments. Given the seriousness of the matter, counsel believes that in person and individual consultations are warranted.

Moreover, the Court's timetable, which also requires that the Elliotts present a No Stay Pleading within three days of the entry of the Order, does not give counsel an opportunity to research and consider relevant authority regarding the appropriate course of action under these circumstances. Consequently, counsel cannot meaningfully advise other affected parties, including their clients, with respect to those clients' options. Given the number of people subject to the Court's Order, Counsel will face complex issues as those subject to the Order may wish to take varied actions in response thereto.

Without the benefit of proper research and time for deliberate consideration of the issue, it is nevertheless clear to counsel that complying with the Order will place counsel in an unfair quandary in which they must choose between properly fulfilling their professional and ethical obligations to protect the interests of their clients, on the one hand, and properly fulfilling their professional and ethical obligations to comply with Orders of this Court on the other hand. The Elliotts themselves must decide whether or not to expose themselves to potential dismissal of their lawsuit in the DC District Court or to expose themselves to this Court's contempt power.

As Mr. Hornal noted at the July 2, 2014, hearing, and contrary to GM's demagogy about nefarious motives of fee-voracious Plaintiffs' counsel,[2] the Elliotts' Motion to Amend their Complaint was not filed to "jump ahead" of any litigants here or somehow game the orderly management of claims that are properly before the Court. The Motion to Amend was filed to protect the Elliotts from having their action dismissed by the DC District Court acting on GM's **still pending** motion to dismiss the Elliotts' *pro se* pleadings.[3] The Elliotts should not be forced to withdraw – under the shadow of potential contempt proceedings, in the face of a pending motion to dismiss that GM has not withdrawn – a pleading that addresses and corrects the alleged flaws of their *pro se* complaint, and carefully avoids violation of the Sale Order. Compliance with the Order would put them in precisely that position.

---

[2] *See* July 2 Hearing Transcript (attached as Exhibit 1) at 105:23-24

[3] *See id.* at 110:11-17

Honorable Robert E. Gerber
July 9, 2014
Page 3

In addition to the professional and ethical quandaries the strict timetable of the Court's Order imposes upon Plaintiffs and their counsel, Plaintiffs respectfully suggest that a review of the Transcript reveals that the Court's rulings may have rested on misconceptions about the actions that Plaintiffs' and their counsel have taken to date, and on misconceptions that Plaintiffs' claims presumptively lack merit and accordingly they would have to reproduce the "Hail Mary" heroics of a "Joe Montana" to prevail on their No Stay Pleading.[4]

As described herein, Plaintiffs and their counsel have acted reasonably and diligently to date, and there is binding Second Circuit legal authority for the precise proposition upon which their "No Stay" contentions and soon-to-be-filed Motion to Dismiss for lack of subject matter jurisdiction rest: Third-party claims, like the Elliotts' allegations against New GM – a non-debtor – are beyond the jurisdictional reach of this Court and beyond the explicit, and the permissible, reach the Sale Order and Injunction. The Elliotts claims rest on duties that New GM, the non-debtor, owed Plaintiffs independently – duties that could not have existed before New GM bought Old GM's assets pursuant to a sale under relevant provisions of the Bankruptcy Code. Unlike the other cases the Court has considered with respect to the stay issues, the Elliotts make no claims based on successor liability, nor any claims that relate whatsoever to liabilities retained by Old GM.

First, contrary to GM's insinuations at the hearing and in their papers,[5] Plaintiffs and their counsel have moved in a reasonable and orderly fashion since counsel was retained in the case on June 17, 2014. They have certainly not engaged in the wanton violation of this Court's authority that GM asserts. Counsel have not unduly delayed application for relief from the timetables in the Court's May 16, 2014, Scheduling Order.

The very day they were retained, Counsel contacted the opposing counsel of record in the DC Action regarding the proposed joint motion for a stay that GM had prepared. Counsel was referred to GM's Chicago lawyers, with whom counsel began conferring about the terms of a joint stipulation regarding a stay of the litigation. It is true that such "conferring" made no progress toward narrowing our differences, but this is because GM insisted on Plaintiffs consenting, word for word, to GM's proposal. When counsel declined, GM sought enforcement from the Court, which has resulted in the Order from which the Elliotts, their counsel, and others, seek relief. Counsel had good reason for not agreeing to the proposed language because it purported to bar the Elliotts from proceeding even with claims that could not be encompassed in the Sale Order because they in no way implicate or rely upon liabilities, retained from Old GM.

On June 17, 2014, counsel also reviewed the docket of the DC District Court and spent much of the next day reviewing the (complex) docket of this Court. Additionally, Counsel reviewed the docket of the JPML to determine whether the action had been consolidated and transferred with other lawsuits against New GM.

From counsel's initial review of these complex proceedings in multiple tribunals, and after careful consultation with the Elliotts regarding how they wished to proceed, counsel

---

[4] *See id.* at 100:2-5

[5] *See e.g.* Motion to Enforce the Court's July 2009 Sale Order and Injunctions (*Motors*, Doc. No. 12620, *passim*), *see also* Supplemental Response by General Motors LLC in Connection with Stay Procedures Set Forth in the Court's May 16, 2014 Schedule (*Motors,* Doc. No. 12735, *passim*), *see also* July 2 Hearing Transcript (attached as Exhibit 1), *passim.*

Honorable Robert E. Gerber
July 9, 2014
Page 4

determined it was immediately necessary to protect the Elliotts' lawsuit from being dismissed pursuant to GM's pending motion to dismiss, which GM has not withdrawn. Accordingly, on June 18, 2014, the day after we were retained, counsel filed a motion on behalf of the Elliotts asking Judge Jackson to defer consideration of GM's pending motion to give the Elliotts time to clarify their factual allegations and to present the full legal bases that support their claims for relief. Understanding that the request rested with the discretion of the Court, the Elliotts represented in their motion to defer consideration that they would present their motion to amend no later than June 28, 2014. Although the undersigned and some staff members were on long-planned vacations, counsel worked diligently to prepare an amended pleading that would address the alleged flaws in the Elliotts' pro se pleading and that would carry out the Elliotts' wishes regarding how to proceed.

After extensive consultation with counsel, who took significant time to explain the complications that their lawsuit had met, including the proceedings in this Court, as well as the potential that all or part of their claims may be consolidated with and transferred into the pending MDL in the SDNY, the Elliotts opted to forego, for the time being, any claims whose assertion could even arguably violate the Sale Order, because, in light of their advanced ages, they wished to avoid the delay they could face if they sought to hold New GM liable for liability retained from Old GM. They chose to assert class action and representative action claims because they have a legal right to do so, because they have a particular desire to act for the public good, because they believe that it is imperative that GM's unsafe vehicles be taken off the road to protect the public safety.[6] Additionally, in the event that their action were consolidated with others, they wished to ensure that DC residents, who benefit from unique and favorable law entitling them to a broad range of relief, are treated fairly in pre-trial matters – particularly in any certification of a nationwide class that might impinge on the due process rights of DC residents by denying them the benefits that DC law affords them. The "representative action" provisions of the District's consumer protection law accord the Elliotts the right to act in this fashion, as private attorneys general, to protect the public interest. *See* D.C. Code § 28-3905(k)(2)(E); § 28-3901(b) and (c).

While familiarizing themselves with the complex issues posed in the case, Counsel understood that – in addition to preparing Amended papers for the Elliotts – application should be made to this Court for leave to file a late No Stay Pleading. However, counsel reasonably concluded that, given the limited time and resources available, and the immediate threat posed by GM's pending motion to dismiss, counsel should *first* complete preparation of the Elliotts' Amended Complaint. Between June 19, 2014, and June 28, 2014, when the Elliotts' Motion to Amend was filed, counsel and staff together spent over 140 hours preparing the Elliotts' complex amended pleadings. Contrary to GM's constant drumbeat that the Elliotts have simply ignored the Sale Order injunction, even a cursory review of their proposed amended complaint[7] reveals precisely the opposite: The Elliotts' claims are painstakingly drafted to ensure they assert no claims depending upon Old GM's retained liabilities, or that assert successor or any other

---

[6] It also should be noted that the Elliotts did not and do not have the luxury of amending their complaint to assert only individual claims and then, later, the right to amend their complaint again to assert class relief. Granting of amendments is a matter of discretion, and counsel for GM would undoubtedly oppose an amendment of the Elliotts' complaint at a later date to add class and representative allegations as untimely and prejudicial.

[7] *See* Motion for Leave to File First Amended Complaint (*Elliott v. General Motors LLC*, 1:14-cv-00691-KBJ, Doc. No. 15, attached as Exhibit 2).

Honorable Robert E. Gerber
July 9, 2014
Page 5

derivative liability on the part of New GM. The allegations in the Amended Complaint depend in no way upon the wrongdoing by Old GM. GM's paradoxical opposition to permitting the Elliotts' to file their amended pleadings ignores the Elliotts' studied attempt to *comply* with the Sale Order by *only* asserting claims based on New GM's conduct and duties New GM independently owed to Plaintiffs. The Elliotts could have asserted, like other Plaintiffs, claims that arguably rest on the retained liabilities of Old GM – at least under the interpretation of the Sale Order reflected in GM's Motion to Enforce – but they did not assert such claims.

Counsel also reasoned that this Court's eventual consideration of the Elliotts' request to be relieved from any stay obligations would benefit from the amendment of the Elliotts' pleadings. The amended pleadings are intended to provide a clear statement of the Elliotts' factual claims and legal bases for relief. Counsel believed there would be little benefit to interrupting their work on the pleadings simply to advise this Court that the Elliotts would seek such relief once counsel completed drafting pleadings that the review of such a request would require. In counsel's experience, Courts have uniformly welcomed the substitution of pleadings drafted by competent counsel for those of untrained pro se litigants. Counsel never imagined that a Court would conduct such a review on the basis of *proposed* pleadings that yet to be formally accepted for filing in any tribunal. GM's Supplemental Response, seeking to enforce a stay on the Elliotts' lawsuit, was filed on June 24, 2014, one week after counsel was retained and only one day after GM sent counsel their proposed joint motion - purportedly for discussion or for counsel to "mark up," despite clear assertions on behalf of GM that the substance of their proposed joint motion was not up for meaningful discussion.

In short, the Elliotts and their counsel intended no affront to this Court's authority, nor did they simply ignore the Sale Order and proceed to violate it, as GM alleges. On the basis of my more than 20 years' experience as a part-time practicing lawyer and two years (albeit long ago) as a law clerk in the SDNY, I, with co-counsel, made a considered, apparently incorrect, judgment.

Counsel believes this Court (and the JPML) would *prefer* to make any determinations about the nature of the Elliotts' claims on the basis of clear allegations drafted by experienced counsel rather than on the basis of *pro se* papers that, as GM alleges in its pending motion to dismiss, make out no cognizable claims whatsoever. Additionally, Counsel determined that, having signed the Joint Stipulation itself, as formally required by the Court's Scheduling Order, the Elliotts were not in violation of the formal terms of the Court Order. Counsel planned, upon completion of the immediately pressing task of drafting amended pleadings, for the Elliotts to apply for relief from the Joint Stipulation – and from the Scheduling Order more generally – on various grounds no longer relevant in light of the Court's Order extending time to file a no stay pleading in accordance with the Joint Stipulation. *See* Order Staying and Restraining (*Motors*, Doc. No. 12763, ¶ 1).

In addition to the apparent misperception about the reasonableness of the actions counsel has taken since retention by the Elliotts, the Court's unusually strict order restrains the Elliotts' rights to act in representative capacities or on behalf of similarly situated persons. Such restriction seems to rely on the assumption, expressed by GM at the July 2 hearing and throughout the papers filed in connection with its Motion to Enforce, that merely filing an "Ignition Switch Action," and later filing a motion to amend that action, violated the Sale Order and this Court's Scheduling Orders. As far as counsel can determine, that belief that the Elliotts and their counsel are already transgressors is the sole basis for prohibiting the Elliotts from

Honorable Robert E. Gerber
July 9, 2014
Page 6

asserting representative and class claims, i.e., the notion that the Elliotts should not be able to "jump ahead" on the basis of having violated a Stay Stipulation to which so many other Plaintiffs agreed.

With all due respect, however, such a posture prejudges the question of whether the Elliott's pleadings implicate the retained liability of Old GM. Prior to the forthcoming filing of their No Stay Pleading, this Court has not considered, even preliminarily, whether the Elliotts' third party claims against New GM, a non-debtor who purchased assets from the debtor conceivably implicate liabilities retained from Old GM.

GM[8] and, regrettably, the Court[9] have, thus far, treated Lawrence and Celestine Elliott (and their counsel) as presumptively guilty of violating the Sale Order because the independent duties they allege New GM owed to them, and breached, relate to *"pre-petition" vehicles or parts*.[10] The Court explicitly disparaged the possibility that the Elliotts might have meritorious arguments that their claims are not subject to the stay *even though* they relate to pre-petition vehicles. The basis for this prejudgment of the claims seems to be the date of manufacture of their vehicles: "I mean, if we are talking about vehicles that were manufactured in about 2006, I am scratching my head to see how you are going to do that." *See Motors*, July 2 Hearing Transcript (attached, in part, as Exhibit 1), 108:17-19.

But legal duties are owed from and to persons; they do not inhere in vehicles or auto parts or other objects in the material world. The fact that the Elliotts' legal claims for relief from New GM relate to "pre-petition" vehicles simply means they may have had *potential* claims against Old GM – perhaps for breach of implied warranty, common law misrepresentation, or state consumer protection violations – *in addition to* the claims they have chosen to assert. The Elliotts are not, in fact, *asserting* the claims they might have asserted against Old GM. The Elliotts are asserting solely claims which arose after the Sale Order, after Old GM no longer existed as a functioning company, based solely on the conduct of New GM. The Elliotts' claims are not based on claims of liability inherited from New GM's purchase of Old GM's cars and car parts.

---

[8] "But don't... take advantage of the fact that you violated the sale order and injunction, give something and then say, that's why I want to announce the truce. He should be required to withdraw that action and I said before, if he wants to clarify an individual action on behalf of the Elliotts, let him do that. I think we would consent if this was an individual action on behalf of the Elliotts. It will say ignition switch on almost every page. That's what this complaint says as well, too." July 2 Hearing Transcript (Exhibit 1) at 112:16-24.

[9] "To consider my ruling that I just issued in Phaneuf to be stare decisis, that is a precedent, vis-à-vis your effort to get them special treatment but not res judicata or collateral estoppel. I do want you to think about whether you want special treatment after the ruling that I just dictated, because frankly, I think that you'd have to throw a hail Mary -- throw and complete a hail Mary, Joe Montana style, if you're old enough to remember him -- to succeed when the able counsel for the Phaneuf plaintiffs failed. But that' the way I see it, gentlemen. *Id.* at 100:1-6.

"But the meritorious defense or claim part would, at least seemingly, require, unless you can show me some case law authority to the contrary, that you have some plausible argument for being excused from the sale order or for contending that it doesn't apply.... I mean, if we are talking about vehicles that were manufactured in about 2006, I am scratching my head to see how you're going to do that." *Id.* at 108:17-19.

[10] "They may have a theory but, believe me, it's no different than any other theory that has been asserted by any of the 87 plaintiffs." (July 2 Hearing Transcript at 106:1-2) "On June 19, 2014, in clear violation of the Scheduling Order and the Elliott Stay Stipulation, the Elliott Plaintiffs filed a motion" (*See* Supplemental Response by General Motors LLC in Connection with Stay Procedures, *Motors*, Doc. No. 12735 ¶ 7).

Honorable Robert E. Gerber
July 9, 2014
Page 7

The Elliotts' claims are based only on the illegal deceptive practices of New GM of hiding severe safety defects from the public for more than 4 years.

Plaintiffs' claims "relate to" pre-petition vehicles, but that fact alone is not a sufficient predicate for the conclusion that their claims are encompassed by the Sale Order and Injunction; or that Lawrence and Celestine Elliott, and their counsel, are violating this Court's authority by asserting such claims. More analysis is necessary. First, it must be determined whether the Elliotts' third-party non-debtor claims assert derivative or successor liability on the part of New GM for any retained liabilities of Old GM. If this were the case, the claims could be within the terms of the Sale Order, as the bankruptcy court unquestionably has the power to discharge liabilities and obligations of a bankrupt entity, and to supervise the sale of assets free and clear of said liabilities to new owners.

However, if, as plaintiffs assert, the claims are based upon allegations that New GM violated *independent* duties that New GM owed to the Elliotts, thereby causing them legally cognizable harm, their claims would not be, and constitutionally could not be, encompassed by the Sale Order and Injunction.[11] This analysis, which GM's invocation of "pre-petition" vehicles and auto parts neglects, is also required to determine the *constitutional* authority of this Court because Bankruptcy Courts have no subject matter jurisdiction over third party non-debtor claims that allege harm from breaches of duties independently owed by third party non-debtors such as New GM.[12]

It is ironic that the Elliotts (and their counsel), who have expended great effort to *comply with* this Court's Sale Order, and accordingly have made every effort to *avoid* making claims that might be within the terms of this Court's injunction,[13] have nevertheless been treated as presumptive violators of the Order solely and exclusively because they make claims against New GM on behalf of owners of "pre-petition" vehicles (or, if Plaintiffs understand GM's position, even pre-petition auto parts in post-petition vehicles).

Surely neither GM nor the Court interprets the Sale Order to enjoin third-party claims against a non-debtor simply because such parties *could have* asserted claims barred by the Sale Order, *but chose not to*.[14] And surely no reasonable interpretation of the Sale Order would read it

---

[11] Presumably New GM will argue that it owed no such duties, and it may win the argument. But the relevant question before this Court is not whether there is a legal basis for the duties they allege GM owed and breached, but more narrowly whether the *allegations* are essentially of breaches of independent or derivative duties to the Elliotts.

[12] *See In re Quigley Co.*, 676 F.3d 45 (2d Cir. 2012) ("the touchstone for bankruptcy jurisdiction remains whether its outcome might have any 'conceivable effect' on the bankruptcy estate") (internal quotation marks omitted) (quoting *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)); *see also In re Johns-Manville Corp.*, 517 F.3d 52, 68 (2d Cir. 2008) (finding the bankruptcy court had no jurisdiction "to enjoin claims against travelers that were predicated, as a matter of state law, on Travelers' own alleged misconduct and were unrelated to Manville's insurance policy proceeds and the res of the Manville estate") (reversed on other grounds).

[13] In its Motion to Enforce the Sale Order and Injunction, GM indicates that several of the Ignition Switch Actions "reflect an effort to plead around the Court's Sale Order and Injunction." *See* Motion to Enforce the Court's July 2009 Sale Order and Injunctions (*Motors*, Doc. No. 12620 ¶29) GM cannot, however, have it both ways – the Elliotts' careful compliance with this Court's Sale Order is not artful pleading to sneak around the Sale Order, but compliance with it.

[14] The Elliotts and their counsel believed that a reasonable way to proceed with these important substantive questions would be on the basis of a set of pleadings drafted by counsel, rather than the *pro se* pleadings. *See* Letter to the Honorable Robert E. Gerber on June 30, 2014 from Daniel Hornal (*Motors*, Doc. No. 12737). As we now

09-50026-reg    Doc 12766    Filed 07/10/14    Entered 07/10/14 01:14:03    Main Document
Pg 8 of 11

Honorable Robert E. Gerber
July 9, 2014
Page 8

to immunize New GM from all civil liability for *its* criminal and reckless endangerment of the public safety and the lives of Mr. and Mrs. Elliott, their families, and millions of others through its 4+ year pattern of concealment of the safety defects, once it learned of them. New GM has admitted that *New GM* (or at least its engineers, in-house counsel, risk and compliance personnel, and certain management officials) decided to conceal rather than disclose the risks of which the Elliotts complain. This episode of gross corporate misconduct, plaintiffs allege, was perpetuated through a criminal enterprise engaged in various acts of racketeering activity systematically designed to conceal and minimize the risks posed by GM vehicles.

The merits of the Elliotts' arguments will be more fully developed in the No Stay Pleading that they are preparing and expect to file with the Court in accordance with this Court's order. In the No Stay Pleading, the Elliotts will further demonstrate that they have not asserted, and do not currently seek to assert, any claims that derive from, succeed from, or arose at any time against Old GM. They make no claims that relate to any liabilities Old GM retained under the Sale Order, or to conduct engaged in by Old GM, or to New GM's liability for Old GM's conduct or inaction. Unlike the *other* "ignition-switch" lawsuits against New GM that this Court has considered, the Elliotts do not seek to charge New GM with liability for the wrongdoing of Old GM at all. The Elliotts are before this Court solely on the basis of GM's wholesale listing of cases in a Chart attached to its motion which GM asserts make claims based on liabilities retained by Old GM.

GM's Motion to Enforce is *exclusively* concerned with establishing whether and which liabilities of the Old GM it did or did not assume. Under the Sale Order, it argues, "New GM would be insulated from lawsuits by Old GM's creditors based on Old GM liabilities [New GM] did not assume. The MSPA and Sale Order and Injunction were expressly intended to provide such protections." *See* Motion to Enforce the Court's July 2009 Sale Order and Injunctions (*Motors*, Doc. No. 12620 ¶ 3). New GM contends it did not assume potential product liability, breach of warranty, negligence, successor liability, or other liabilities that the Old GM might have had with respect to vehicles sold before the asset sale to New GM. *See id.* at ¶ 11).

From the premise that New GM is protected from lawsuits based on Old GM's liabilities it did not assume, GM leaps to the unwarranted conclusion (which it apparently hedges for ethical reasons) that any claims made against New GM by owners of vehicles sold by (or even containing parts sold by) Old GM must be "Retained Liabilities."

> "To be sure, the causes of action asserted by Plaintiffs in the Ignition Switch Actions are varied, and in some instances, because of imprecise drafting, it is unclear whether there *might be a viable cause of action ... being asserted against New GM*. What is clear, however, is *that the crux of virtually all Plaintiffs' claims* is a problem in the ignition switch in vehicles and parts sold by the Old GM. Claims based on that factual predicate are Retained Liabilities."

---

understand it, the Court intends to conduct this inquiry on the basis of the Elliotts' proposed pleading that have not yet been accepted for filing in the Elliott action. While insisting to this Court that the Elliotts are violating the authority of this Court simply by seeking to amend their pro se pleadings in the face of GM's pending motion to dismiss that action, GM opposes the Elliotts' motion to clarify their pleadings yet insists that this Court conduct its analysis on the basis of such proposed pleadings. Plaintiffs oppose this way of proceeding as an unconstitutional prior restraint on their free speech and due process rights. *See* July 3 Letter (*Motors*, Doc. No. 12761).

Honorable Robert E. Gerber
July 9, 2014
Page 9

Motion to Enforce the Court's July 2009 Sale Order and Injunctions (*Motors*, Doc. No. 12620 ¶ 22)

GM then identifies the actions it claims violate the Sale Order, including the Elliotts' Lawsuit, in an *en masse* chart that provides no information about the lawsuits other than that they involve particular GM Models and, presumably (inferring from the inclusion of the Elliott action), the factual allegations used the words "ignition switch."

*In order to connect that information to possible violations of the Sale Order*—a critical step given the extraordinary relief that New GM seeks from third-party non-debtor lawsuits, and the extraordinary relief it has already been accorded in connection with the Elliotts' lawsuit, *see* Order Staying and Restraining (*Motors*, Doc. No. 12763), GM must show not only that the lawsuits mentioning ignition switches involve pre-petition vehicles or parts, *but also that the claims actually asserted are the claims from which it is protected* under the Sale Order. The critical question is not the year in which vehicles or auto parts were made, but whether the duties Plaintiffs allege New GM violated involved liabilities retained by Old GM or instead, as Plaintiffs contend, involve independent duties that New GM owed them.

Rather than provide the Court with the requisite analysis to connect factual allegations about ignition switches in pre-petition vehicles to the kinds of claims that it contends that the Sale Order protects it from, GM simply "samples" allegations it cherry-picked from pleadings. GM represents to the Court (in a footnote) that "[t]he allegations and claims asserted in the Ignition Switch Actions include Retained Liabilities such as implied warranty claims, successor liability claims, and miscellaneous tort and statutory claims premised in whole or in part on the alleged acts or omissions of Old GM."[15] GM's only support for the conclusion is its reference to another chart purportedly containing *samples* of such allegations from select cases. Notably, *GM did not include any such summaries or excerpts* from the Elliotts' *pro se* pleadings.

Whatever the possible merits of its assertions about other litigants, GM's argument is not applicable to the Elliotts. Respectfully, Mr. and Mrs. Elliott are entitled to individual rather than bulk consideration before their rights to litigate their claims are delayed or, as in the case of their rights to pursue a representative or class action, extinguished. They should not to be presumed to be in violation of this Court's Orders based on GM's carefully crafted representations to the Court that, upon scrutiny, do not directly say anything about the Elliotts' claims at all.

To emphasize, GM is wrong to include the Elliott action within the ambit of its Motion to Enforce because the Elliotts are not complaining that Old GM sold them a vehicle with a bad ignition switch or claiming that New GM is liable for that fact. They complain that *New GM* violated *its* duties to disclose that the vehicles in question were dangerous to drive, in part because of the ignition switch defect GM has now conceded that *it* (more precisely, its engineers, lawyers, risk managers, and management) concealed from the Plaintiffs, the public, and governmental regulators. Whether the Elliotts will prevail on this legal theory is not for this Court to determine; the issue to be determined here is whether such allegations impinge in any way on retained liabilities of Old GM. They do not.

---

[15] *See* Motion to Enforce the Court's July 2009 Sale Order and Injunction (*Motors*, Doc. No. 12620 ¶ 15-16, and n. 11)

Honorable Robert E. Gerber
July 9, 2014
Page 10

Finally, given the constitutional issues posed by the Court's Order – including the restraint on the Elliotts' First Amendment and Due Process rights to file claims[16] seeking relief from wrongdoing and freely associate with others to bring such claims,[17] counsel renew their July 3, 2014, request – made by letter to the Court – that the Court take appropriate time to consider the Elliotts' arguments. The Order[18] extinguishes the Elliotts' right to file a representative action – a claim they are entitled to under state law, raising serious constitutional concerns.[19] Neither GM nor the court provided any legal citation supporting this action.

The transcript of the July 2, 2014, hearing reflects the Court's appropriate concern with the orderly management of the multitude of actions before it, and concern with the possibility that relief for the Elliotts would trigger other applications for relief, disrupting the orderly processes that the Court and counsel in other cases have jointly developed for the resolution of issues presented by those cases. However, the Elliotts did not participate in any way in those proceedings. The Elliotts, who have asserted no claims that affect the retained liabilities of Old GM, should not be saddled with the decisions of other litigants to assert such claims and argue that the Sale Order should not apply for various reasons. The Elliotts should not be saddled with the oversight of others who failed to provide – in the May 16, 2014, Scheduling Order – for the possibility that particular lawsuits were incorrectly or improperly designated as related, and that the Court may be obliged to relieve such parties from the Scheduling Order because their claims are improperly before the Court. The question of "jumping ahead" of others in this proceeding is irrelevant. The Elliott action should not have been brought here, the amended complaint makes that clear if it was not clear pre-amendment, and the Court is accordingly obliged to relieve the Elliotts from Orders in this proceeding regardless of the wishes or desires of other parties.

New GM is a non-debtor who is seeking extraordinary relief from this Court. The Court's obligation to protect the bankrupt estate under the Bankruptcy Code either does not apply or is greatly attenuated when a non-debtor, such as New GM, seeks the Court's protection. The kind of protection that the Court would provide to a bankrupt estate against pending litigation is not appropriate under the wholly different circumstances of the Elliotts' case.

In sum, the Court's July 2, 2014, Order does not grant the Elliotts or their counsel, sufficient time to consult the various people targeted by the Order, nor sufficient time to prepare pleadings. To the extent that the Court believes counsel are gaming the proceedings or simply ignoring the Court's Sale Order and Injunction, counsel has attempted to describe its actions since entering the case to show that such a belief is mistaken. The Elliotts present substantial, and serious, arguments that their claims are not properly before this Court. Their arguments differ from those of the other Plaintiffs because they decided to forgo assertion of any claims based upon Old GM's retained liabilities; plaintiffs, therefore, have no reason to consent, as the

---

[16] *See* Order Staying and Restraining Lawrence and Celestine Elliott, and their Counsel, from Further Proceeding (*Motors*, Doc. No. 12763)

[17] *C.f. Holt v. Virginia*, 381 U.S. 131 (1965) ("the right to be heard must necessarily embody a right to file motions and pleadings essential to present claims and raise relevant issues.")

[18] *See* Order Staying and Restraining Lawrence and Celestine Elliott, and their Counsel, from Further Proceeding (*Motors*, Doc. No. 12763, ¶ 3)

[19] *See Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011) (Bankruptcy Court lacks jurisdiction to extinguish state law claim).

Honorable Robert E. Gerber
July 9, 2014
Page 11

Plaintiffs in 86 of 88 other cases did, to a delay of their lawsuit to decide "threshold issues" that have no bearing on their claims.

The Elliotts and their counsel respectfully suggest that it is inappropriate, given the circumstances of this proceeding, to force the Elliotts into the quandaries that the Court's restraining Order presents. The Elliotts should have the opportunity to have their arguments heard in an orderly process without the shadow of the threat of their being held in contempt of Court for taking reasonable measures to protect their interests.

For all these reasons, the Court should immediately vacate or suspend paragraphs 2-4 of the July 2, 2014, Order which both restrains the Elliotts and orders them to take affirmative actions that will prejudice their interests and the interests of the public.

Respectfully submitted,

*[signature]*

Gary Peller

Professor of Law, Georgetown University
Law Center
peller@law.georgetown.edu

Filed and served on all parties via ECF, courtesy copies provided to counsel for GM and chambers.