# Exhibit A



**CORPORATION SERVICE COMPANY®**

null / ALL
**Transmittal Number: 12644931**
**Date Processed: 06/18/2014**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Rosemarie Williams<br>General Motors LLC<br>Mail Code 48482-038-210<br>400 Renaissance Center<br>Detroit, MI 48265 |

| | |
|---|---|
| **Entity:** | General Motors LLC<br>Entity ID Number  3113523 |
| **Entity Served:** | General Motors LLC |
| **Title of Action:** | Johnson, Elizabeth, D. vs. General Motors LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | U.S. District Court Southern District, Mississippi |
| **Case/Reference No:** | 3:14cv477HTW-LRA |
| **Jurisdiction Served:** | Mississippi |
| **Date Served on CSC:** | 06/18/2014 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Hazzard Law LLC (Jackson, MS)<br>601-977-5253 |
| **Client Requested Information:** | Year:<br>Make:<br>Model:<br>VIN: |

| | |
|---|---|
| **Notes:** | Hazzard Law LLC PO Box 24382 Jackson, Mississippi 39225<br>CSC Location document was served: CSC of Rankin County, Inc. Mirror Lake Plaza, 2829 Lakeland Drive<br>Suite 1502 Flowood, MS 39232 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Mississippi

| | | |
|---|---|---|
| Elizabeth D  Johnson, individually and on behalf of all others similarly situated | ) ) ) ) | |
| *Plaintiff(s)* | ) ) | Civil Action No. 3:14cv47𝒜 HTW-LRA |
| v. | ) | |
| GENERAL MOTORS COMPANY, LLC, a foreign corporation | ) ) ) | |
| *Defendant(s)* | ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  General Motors Company, LLC
c/o CSC of Rankin County, Inc.
Mirror Lake Plaza
2829 Lakeland Drive, Suite 1502
Flowood, Mississippi 39232

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Brent Hazzard, MSB# 99721
Hazzard Law, LLC
Post Office Box 24382
Jackson, Mississippi 39225

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

ARTHUR JOHNSTON

Date:     **JUN 1 8 2014**

*Signature of Clerk or Deputy Clerk*

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

*3:14cv477 HTW-LRA*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Elizabeth D. Johnson, individually and on behalf of all other similary situated

## DEFENDANTS
General Motor Company, LLC, a foreign corporation

**(b)** County of Residence of First Listed Plaintiff    Hinds
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Wayne County, MI
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUN 18 2014
ARTHUR JOHNSTON
DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Brent Hazzard (MSB#99721), Hazzard Law, LLC, Post Office Box 24382, Jackson, Mississippi 39225

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☒ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Class Action Fairness Act, 28 U.S.C. § 1332(d).
Brief description of cause:
An action regarding the recall of GM vehicles due to faulty ignition switches

## VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE    Honorable Jesse M. Furman    DOCKET NUMBER    MDL No. 2543

DATE
06/18/2014

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ELIZABETH D. JOHNSON, individually
and on behalf of all others similarly situated,

Plaintiff,

v.

GENERAL MOTORS LLC, a Foreign
Corporation,

Defendant.

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JUN 18 2014

ARTHUR JOHNSTON
BY_____ DEPUTY

**CLASS ACTION**
**MDL No. 2543**
**JURY TRIAL DEMANDED**

Case No. 3:14cv 477#TW-LRA

## COMPLAINT

COMES NOW Plaintiff Elizabeth D. Johnson ("Plaintiff") and brings this action on her own behalf and on behalf of a class of persons defined below against the Defendant General Motors, LLC ("GM") and alleges as follows:

### I.

#### INTRODUCTION

1   On February 3, 2014, GM announced a massive recall of numerous models of vehicles it produced for sale worldwide. While the recall alone has significantly damaged buyers of these vehicles and automotive consumers at large, it was also later revealed that GM had a coordinated effort to conceal an ignition

switch defect, which is the subject of the recall, from both customers and industry regulators for over ten years.

2.     It is now known that, *at a minimum*, the following GM models contain an ignition switch defect that is the subject of this recall: 1) Saturn Ion, model years 2003-07; 2) Chevrolet Cobalt, model years 2005-10; 3) Pontiac G5, model years 2007-10; 4) Chevrolet HHR, model years 2006-11; 5) Pontiac Solstice, model years 2006-10; and 6) Saturn Sky, model years 2007-10.[1]

3.     An estimated 2.6 million vehicles are affected by this ignition switch defect, however, upon information and belief, there other GM models impacted by this defect that have not yet been disclosed to the public by GM.

4.     These model vehicles contain an ignition switch that allows the vehicles' engines and full electrical systems to be activated and operated by a driver, when the ignition switch is turned to the "RUN" or "ON" position. The defective ignition switches installed in these GM vehicles have several common positions that the ignition switch may be turned to, activating different vehicles functions. These ignition switch positions are 1) "OFF"; 2) "ACC" ("accessory"); and 3) "ON" or "RUN". In the "OFF" position, the vehicle's engine and electrical systems are turned off.  In the "ACC" or "accessory" position, the limited electrical systems are

---

[1] General Motors, Ignition Recall Safety Information, General Motors, LLC (2014), http://www.gmignitionupdate.com/ (last visited April 30, 2014).

activated; allowing vehicle occupants to, generally, use such things the vehicle's entertainment system or limited climate control. In the "RUN" or "ON" position, the vehicle's engine and full electrical systems are active, allowing a driver to fully operate the vehicle.

5.      Due to defects in their design, manufacture, and/or assembly, the ignition switches installed in the above listed vehicles are susceptible to failure during easily foreseeable operating conditions. This failure results in the possible movement of the ignition switch to a position other than one selected by the driver, without driver intent or manipulation. When such a critical failure occurs during the operation of the vehicle and the ignition switch moves to the "ACC" ("accessory") or "OFF" position, the vehicle's engine and essential electrical systems such as anti-lock brakes, power-assisted steering, and/or the supplemental restraint system ("air bags") are turned off. Not only does such a critical failure preclude safe and complete operation of the vehicle by the driver, it also precludes potentially life-saving vehicle systems from activating.

6.      Despite knowing of this defect since 2001, GM has installed the defective ignition switch on millions of vehicles sold worldwide and even marketed these vehicles as "safe" and "reliable," going so far as to provide an express warranty,

3

which states, "[t]he warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship . . . ".[2]

7.      These defective ignition switches installed by GM, and concealed by GM from its own customers, have resulted in at least thirteen (13) deaths confirmed by GM, however the actual number of fatalities caused by this defective ignition switch is assumed to be far higher.

8.      As a result of GM's gross misconduct, Plaintiff and Class Members were harmed and suffered significant damages due to this ignition switch defect. GM fraudulently concealed known defects to its vehicles, which directly affected the use, safety, and value of their products purchased by innocent consumers. The Plaintiff and Class Members did not receive vehicles that would safely and reliably operate, placing them in a situation of continuing harm wherein the driver and/or their occupants stood to suffer bodily injury or even death.    Furthermore, notwithstanding the significant potential for bodily harm or injury to its customers, the Plaintiff and Class Members did not receive the benefit of the bargain as purchasers or lessees of GM vehicles, as they paid for vehicles that were inherently

_____

[2] Chevrolet Motor Division, General Motors, LLC., 2014 Chevrolet Limited Warranty and Owner Assitance Information, General Motors, LLC, (2014), http://www.chevrolet.com/content/dam/Chevrolet/northamerica/usa/nscwebsite/en/Home/Ownership/Warranty/02-pdfs/2k14chev_lim_wm2ndprint.pdf (last visited April 29, 2014).

defective and of lesser quality than promised by GM. Moreover, even excluding GM's marketing statements or promises, the vehicles received by the Plaintiff and Class Members did not meet the ordinary and reasonable consumer expectations of safety, reliability, or functionality. The ignition switch defect created a material diminution in value in the vehicles purchased or leased by the Plaintiff and Class Members, in that the Plaintiff and Class Members paid for vehicles that were defective, non-conforming goods, which GM had special knowledge of and failed to disclose to their customers and the automotive purchasing public.

## II.

### JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the class members are of diverse citizenship from Defendant's home states, and the aggregate amount in controversy exceeds $5 million.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1407 and by the Judicial Panel on Multidistrict Litigation's Transfer Order regarding this matter dated June 9th, 2014.

## III.

## PARTIES

11.    Plaintiff Elizabeth D. Johnson is an adult resident of the City of Jackson, Hinds County, Mississippi.  She owns a 2007 Chevrolet Cobalt.  While driving, the ignition switch in Ms. Johnson's vehicle failed, causing the vehicle to lose power and stop in the roadway.  Ms. Johnson tried but could not restart her vehicle and during this time was struck by another driver, causing damage to Ms. Johnson's vehicle.

12.    Defendant General Motors, LLC is a Delaware corporation, with its corporate headquarters in Detroit, Michigan.  It is responsible for the manufacture, distribution, and sale of all GM vehicles in the United States and worldwide.  GM acquired substantially all assets and liabilities from General Motors Corporation in 2009 after a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.

13.    General Motors, LLC may be served with process through its registered agent in the State of California, Corporation Service Company, Corporation Service Company, d/b/a CSC – Lawyers Incorporating Service.

## IV.

### FACTUAL ALLEGATIONS

#### *Timeline Leading to the 2014 GM Recall*[3]

14.    2001, GM engineers first discovered the ignition switch defect in the Saturn Ion during pre-production testing.  GM identified the defect as the result of "low detent plunger force" in the ignition switch's internal mechanism; the "detent plunger force" prevents the switch from moving into a position other than the one selected by the driver with their ignition key.  Subsequent GM reports during this testing process indicate that a "design change" corrected the problem.

15.    2002, GM approves the ignition switch design even though Delphi informed GM that the ignition switch did not meet GM's own specifications.

---

[3] *See* Tanya Basu, Timeline: A History of GM's Ignition Switch Defect, N.P.R. (Mar. 31, 2014, 4:33 PM ET), http://www.npr.org/2014/03/31/297158876/timeline-a-history-of-gms-ignition-switch-defect (last visited April 29, 2014); Peter Valdes-Dapena and Tal Yellin, GM: Steps to a recall nightmare, CNNMoney, http://money.cnn.com/infographic/pf/autos/gm-recall-timeline/ (last visited April 29, 2014); Alex Davies, Here's A Complete Timeline Of The General Motors Recall, Starting In The Late '90s, Business Insider (Mar. 31, 2014, 12:47 PM), http://www.businessinsider.com/timeline-gm-general-motors-recall-2014-3 (last visited April 29, 2014); The Associated Press, Timeline: Major events in GM's recall of 2.6M cars, CTV News (Apr. 1, 2014, 11:21 AM), http://www.ctvnews.ca/autos/timeline-major-events-in-gm-s-recall-of-2-6m-cars-1.1755446 (last visited April 29, 2014); and Nathan Bomey, SEC opens probe over GM ignition switch recall, Detroit Free Press (Apr. 24, 2014, 4:44 PM), http://www.usatoday.com/story/money/cars/2014/04/24/gm-sec-switch-recall-probe/8112469/ (last visited April 30, 2014).

16.   2003, a service technician investigates a Saturn Ion that reportedly stalled while driving. Believing that the weight of the driver's key ring wore out the ignition switch, the technician removed keys from the driver's key ring, replaced the ignition switch, and closed the matter.

17.   2004, GM engineers again recognize the ignition switch defect in pre-production testing of the Chevrolet Cobalt when an engineer bumps the ignition key during testing and the vehicle abruptly lost power.

18.   May 2005, several proposals to fix the ignition switch defect are presented to GM by its own engineers. One such proposal was a redesigned key head that would reduce torque on the ignition switch and therefore prevent the ignition switch from moving into a different, unintended position. However, each proposal was ultimately rejected as either too costly or too time consuming to implement.

19.   July 29, 2005, Maryland teenager Amber Marie Rose dies when her Chevrolet Cobalt crashes into a tree after the ignition switch turns off the vehicle's engine and full electrical systems, causing the air bags to fail to deploy.

20.   December 2005, GM issues a service bulletin detailing the ignition switch defect, but attributes the problems to situations where "the driver is short and has a large and/or heavy key chain." No recall is issued.

21.    2006, Delphi presents a proposal for a redesigned ignition switch that GM engineer Ray DeGiorgio signed off on   Critically however, the redesigned ignition switch still failed to meet GM's own minimum testing specifications.  In yet a further critical error, the part number for the newly redesigned ignition switch was not changed from the defective ignition switch part number, meaning old and new ignition switches were labeled with the same part number.

22    2007, the National Highway Traffic Safety Administration ("NHTSA") informs several GM employees, at a meeting of automotive safety regulators, of a fatal crash involving a 2005 Chevrolet Cobalt in which the air bags failed to deploy. By the end of the year, GM is aware of numerous accidents involving Chevrolet Cobalts in which the air bags failed to deploy, in four (4) instances the vehicle's ignition switch was in the "accessory" position at the time of impact.

23.    June 2009, Old GM files for Chapter 11 bankruptcy.

24.    July 2009, the United States Treasury purchases significant quantities of GM stock and assets, giving the United States Federal Government primary ownership and control over the corporation.  The corporation begins the transition from Old GM to GM, in which GM acquired most or all of the assets, liabilities, and obligations from Old GM.

25.    2010, after yet another NHTSA investigation, GM agrees to repair power steering motors in over 1 million Chevrolet Cobalts, produced 2005-10 and Pontiac G5s, produced 2007-10.

26.    2011, GM launches an investigation into Chevrolet Cobalts, produced 2005-07, and Pontiac G5s, produced 2007, to determine why the air bags did not deploy in crashes.

27.    2012, GM widens the investigation to include other models and model years, but eventually closes the investigation without reaching a conclusion.

28.    January 2014, a committee of GM executives approves a recall of vehicles with the defective ignition switches.

29.    February 2014, GM recalls 780,000 vehicles, including Chevrolet Cobalts and Pontiac G5s. Later in the month, GM adds a further 600,000 vehicles to the recall including Chevrolet HHRs, Pontiac Solstices, Saturn Ions, and Saturn Skys.

30.    March 2014, the United States Justice Department launches a criminal investigation into why the recall was delayed. Meanwhile, GM expands its recall to include an additional 824,000 vehicles with defective ignition switches, bringing the total recalled vehicles to 2.6 million cars worldwide. Further, GM confirms one more death caused by the defective ignition switch, bringing the total number of GM's *confirmed* fatalities as a result of the defective switch to thirteen (13).

31.    April 2014, GM dealers finally begin making repairs to vehicles affected by the recall.    Additionally, the United States Securities and Exchange Commission begins an investigation into GM's handling of the defective ignition switch and subsequent recall.

## Class Allegations

32.    Ignition switches are an integral part of an automobile's internal mechanical workings and are necessary for insuring that the vehicle is either operational or non-operational, depending upon the intent and manipulation of the driver.    With respect to the above listed GM recalled vehicles, the ignition switch defect in these vehicles precludes safe operation of the vehicle by the driver.

33.    In these vehicles, the ignition switch defect can cause the vehicle's engine and critical electrical systems to turn off, disabling vehicle power, anti-lock brakes, power-assisted steering, and the supplemental restraint system.

34.    Therefore, these vehicles are unnecessarily and unreasonable susceptible to accidents, not due to driver error, which can and often did result in damage to property and injury or death to the driver, occupants, and the general public.

35.    GM, in its defect notices to the NHTSA, acknowledges that it was aware of and could replicate the circumstances where the ignition switch moved into a position other than one selected by the driver.    In its March 11, 2014 Amended

Defect Notice filing and again in its April 11, 2014 Supplement filing to the NHTSA,

GM acknowledges that it was aware of the ignition switch defect and that its own

engineers could easily replicate that conditions under which the ignition switch

would move to an unintended position, causing the vehicle to lose power and critical

electrical systems.[4]

36.    Despite this knowledge, Old GM decided to conceal the ignition switch

defect from its customers, regulators, and the general public, rather than admit the

defect and issue a recall of its defective vehicles.  The result of this inaction caused

the deaths of *at least* thirteen (13) people by GM's own admission.

37.    From 2001 forward, both Old GM and GM promoted vehicles it

produced as safe and reliable, when in fact they were neither.  Old GM and GM

perpetuated a concerted effort aimed at increasing profits through the knowing sale

of defective vehicles.

38.    As a result, Old GM and GM have harmed the Plaintiff and Class

Members by selling vehicles with a serious defect, causing a significant diminution

to the value of the vehicle purchased or leased.

---

[4] *See*
http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM451430/RCDNN-
14V047-9346P.pdf (last visited April 30, 2014) and
http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM453829/RCDNN-
14V047-2110.pdf (last visited April 30, 2014).

39.    Plaintiff and Class Members had a reasonable and ordinary consumer expectation that the vehicles they purchased or leased would function properly for their intended purpose, free of defects.   Since the vehicles contained a serious ignition switch defect, the Plaintiff and Class Members did not receive the benefit of the bargain as they paid for non-conforming goods, of which the non-conformity was concealed from them.

40.    The failure by Old GM and GM to disclose the ignition switch defect has caused a significant diminution in value to the Plaintiff and Class Members vehicles.

## V.

### SUCCESSOR LIABILITY

41.    As discussed above, GM acquired all or most assets, liabilities, and obligations from Old GM through the Section 363 sale under Chapter 11 Bankruptcy.

42.    Because of this sale, GM is responsible and liable for the non-disclosure and suppression of the ignition switch defects.

43.    GM has successor liability for Old GM's actions and omissions regarding the ignition switch defect and the sale and manufacture of defective vehicles because it continued the business operations of Old GM, for the following reasons:

a.      GM admitted that it knew of the ignition switch defect when it purchased Old GM.

b.      GM continued to market, manufacture, sell, and distribute at least some of the same vehicles that Old GM did.

c.      GM kept a majority of the same employees that were hired by Old GM.

d.      GM, through the purchase, acquired property from Old GM, including but not limited to, machinery, equipment, inventory, and intellectual property.

e.      GM, through the purchase, acquired contracts, books, records, assets, liabilities, and obligations from Old GM.

## VI.

### TOLLING OF STATUTE OF LIMITATIONS

44.     GM was aware of the unreasonably dangerous defective ignition switch at least at the time of the purchase of Old GM, but due to the concealment of such facts, Plaintiff was unaware of the dangerous condition.

45.     Old GM, rather than replacing the faulty ignition switches, instructed service shops to either instruct owners of defective vehicles to remove unnecessary items from their key rings, or replace the key ring if there was a complaint of a shutdown.

14

46.     Both Old GM and GM were and are still under a duty to disclose their full knowledge of the faulty ignition switch, including but not limited to any other models affected, the extent of the defect in terms of diminishing value of the vehicles and safety concerns, and that the vehicles will require repair.

47.     Because Old GM and GM fraudulently and continuously concealed facts and knowledge of the faulty ignition switch that has caused an unreasonably dangerous condition in many of GM's vehicles, any and all applicable statutes of limitation have been tolled.

## VII.

### CAUSES OF ACTION

### Count I - *Fraudulent Concealment*

48.     Plaintiff alleges all preceding and following allegations as if fully set forth herein.

49.     GM concealed material and important facts about the faulty ignition switch.

50.     GM had a duty to disclose the facts about the faulty ignition switch once they became aware of the defective conditions. These facts were known only to GM and not known to or able to be reasonably discovered by the Plaintiffs.

51.     These material facts directly impacted the safety of the vehicles put into production and sold by GM.

52.     GM actively concealed these material facts, in part to protect their financial situation and avoid a recall of the faulty vehicles.

53.     Plaintiff was unaware of the faulty ignition switch that directly impacted the safety and relied upon the assumption of a safe vehicle. Had Plaintiff known or been aware of the defective design, Plaintiff would not have purchased the vehicles.

54.     Because Plaintiff was unaware of the defective design, Plaintiff suffered damages in the forms of, but not limited to, injury and the purchase of a vehicle that now has diminished value.

55.     GM's suppression of these material facts was done deliberately with the intent to defraud the Plaintiff in order to protect itself.

56.     GM's actions warrant an assessment of punitive damages in an amount sufficient to deter such conduct in the future, in an amount to be determined.

57.     As a direct and proximate result of GM's concealment of material facts, Plaintiff suffered and will continue to suffer losses as alleged herein.

### Count II - *Breach of Implied Contract*

58.     Plaintiff re-alleges all preceding allegations as if fully set forth herein.

59.     In order to prove the existence of an implied contract, it is necessary to show an offer, acceptance, and consideration. These elements may be established by the conduct of the parties rather than through written or oral agreements.

60.    An offer, acceptance, and consideration for the sale of these vehicles existed. The sale of avehicle in exchange for money constituted an offer and an acceptance. The vehicles and the money constitute the consideration.

61.    It is an implied term of sale that GM would sell vehicles to its consumers that would not contain unreasonably dangerous conditions.

62.    GM's intent to provide vehicles to its consumers that did not have unreasonably dangerous conditions is shown, for example, by its Commitment to Safety marketing scheme.

63.    Plaintiff would not have purchased a vehicle from GM had Plaintiff known about the unreasonably dangerous condition that came from the defective ignition switch.

64.    GM breached its implied contract terms when it sold unreasonably dangerous vehicles to its consumers.

65.    As a direct and proximate result of the breach, Plaintiff suffered and will continue to suffer losses as alleged herein.

### Count III - *Breach of Implied Warranty of Merchantability*

66.    Plaintiff re-alleges all preceding allegations as if fully set forth herein.

67.    A warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

68.    Goods to be merchantable must at least such as: pass without objection in the trade under the contract description; are fit for the ordinary purposes for which such goods are used; are adequately contained, packaged, and labeled as the agreement may require; and conform to the promise or affirmations of fact made on the container or label if any.

69.    GM is a merchant who sold the faulty vehicles to Plaintiff and Class Members.

70.    The vehicles sold by GM were accompanied by an implied warranty of merchantability.

71.    The vehicles, because of the unreasonably dangerous conditions, would not pass without objection in the trade under the contract description.

72.    The vehicles are not fit for the ordinary purpose for which they should be used. GM's vehicles were sold with the implied purpose of providing safe transportation for drivers and passengers and cannot be used for this purpose because of the faulty ignition switch.

73.    The vehicles were not adequately labeled as the agreement required because of the failure to disclose or make known the faulty ignition switch.

74.    By manufacturing and selling vehicles with this unreasonably dangerous condition, GM breached its implied warranty of merchantability.

75.    As a direct and proximate result of the breach, Plaintiff suffered and will continue to suffer losses as alleged herein.

### Count IV - *Breach of the Implied Warranty of Fitness for a Particular Purpose*

76.    Plaintiff re-alleges all preceding allegations as if fully set forth herein.

77.    There is an implied warranty that goods shall be fit for a particular purpose when the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.

78.    GM knew that buyers would buy its vehicles in reliance on the fact that its vehicles had a particular purpose of, among other things, providing safe transportation for drivers and passengers.

79.    GM knew that Plaintiff would rely on its skill or judgment to provide and furnish vehicles that were suitable for safe transportation.

80.    GM breached its implied warranty of fitness for a particular purpose because the vehicles it sold to Plaintiff were not fit for their intended purpose, which is, among other things, to provide safe transportation for drivers and passengers.

81.    As a direct and proximate result of the breach, Plaintiff suffered and will continue to suffer losses as alleged herein.

### Count V - *Mississippi Tort Claim (Mississippi Code § 11-1-63)*

82.    Plaintiff re-alleges all preceding allegations as if fully set forth herein.

83.    GM has placed designed, manufactured, sold, or otherwise placed into the stream of commerce defective vehicles with an unreasonably dangerous ignition switch.

84.    Under Mississippi Code § 11-1-63, the manufacturer of a product is liable if the product was defective because it failed to contain adequate warnings or instructions, the product was designed in a defective manner, or the product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and the defective condition rendered the product unreasonably dangerous to the user or consumer; and the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

85.    The vehicles GM manufactured, sold, or otherwise placed into the stream of commerce failed to contain adequate warnings regarding the faulty ignition switch.

86.    The vehicles GM manufactured, sold, or otherwise placed into the stream of commerce were designed in a defective manner which resulted in the vehicles being unfit for safe consumer usage.

87.    GM breached an express warranty of providing safe vehicles that Plaintiff justifiably relied on when they purchased and elected to use the vehicles GM manufactured, sold, or otherwise placed into the stream of commerce.

20

88.    The faulty ignition switch in the GM vehicles rendered the product unreasonably dangerous by suddenly switching the car's ignition into the "off " or "accessory" position, thereby disabling power steering and anti-lock brakes and rendering the airbags useless in the event of a collision.

89.    The defective ignition switch proximately caused the damages for which recovery is sought.

90.    Because of the negligence of GM in the manufacture and production of the vehicles with the faulty ignition switch by which Plaintiff was damaged, along with the failure to warn about the unreasonably dangerous condition, the Defendant has committed a tort.

91.    As a direct and proximate result of the breach, Plaintiff suffered and will continue to suffer losses as alleged herein.

## VIII.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully request this Court enter a judgment against the Defendant and for the Plaintiff and the Class, and enter an order:

A.    Certifying the proposed Class and designating Plaintiff and Plaintiff's Counsel as representatives;

B.    Finding the Defendant liable for all legal claims asserted;

C.   Finding the ignition switches defective;

D.   Ordering injunctive relief for all applicable claims set forth above;

E.   Awarding damages to Plaintiff and the Class members in the form of punitive, actual, compensatory, nominal, and/or statutory damages, as proven at trial;

F.   Awarding attorney's fees and costs, as well as pre-judgment and post-judgment interest as allowed by law;

G.   Allowing leave to amend this Complaint to conform to any evidence presented at trial.

H.   Awarding any other further and different relief the Court deems proper under the circumstances.

## IX.

### JURY DEMAND

Under the Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all legal claims set forth herein.

Respectfully submitted,

Brent Hazzard, # MSB 99721
Jeremy N. Cline, AL Bar No. CLI021
Hazzard Law, LLC
P.O. Box 24382
Jackson, MS 39225
(601) 977-5253
brent.hazzard@hazzardlaw.net

David Boies
BOIES, SCHILLER &FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300
dboies@bsfllp.com

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131

Stephen N. Zack
BOIES, SCHILLER & FLEXNER LLP
(Florida Bar No.: 145215)
100 S.E. 2nd Street, Suite 2800
Miami, Florida 33131
Tel: (305)539-8400
Fax: (305)539-1307
Email: szack@bsfllp.com

Jason J. Thompson (P47184)
Lance C. Young (P51254)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
(248) 355-0300
jthompson@sommerspc.com
lyoung@sommerspc.com


Dean M. Googasian (P53995)
Thomas H. Howlett (P57346)
THE GOOGASIAN FIRM, P.C.
6895 Telegraph Road
Bloomfield Hills, MI 48301
(248) 540-3333
dgoogasian@googasian.com
thowlett@googasian.com

Counsel for Plaintiff and the Putative Class