# Exhibit D

I4CV004836

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

---

ERIN E. KANDZIORA,
2729 S. Herman Street
Milwaukee, Wisconsin 53207,

        Plaintiff,

    vs.

GENERAL MOTORS LLC,
a foreign corporation,
300 Renaissance Center
Detroit, Michigan 48265,

      and

HEISER CHEVROLET, INC.,
a Wisconsin corporation,
10200 W. Arthur Avenue
West Allis, Wisconsin 53227,

      Defendants.

**COMPLAINT**
Case No.
Code No. 30703
Unclassified

The amount claimed is
greater than the amount
under sec. 799.07(1)(d),
Wis. Stats.



FILED

O   JUN 0 5 2014   O

JOHN BARRETT
Clerk of Circuit Court

---

    NOW COMES the above-named Plaintiff by her attorneys, Aiken & Scoptur, S.C.,
and as and for claims against the above-named defendants, alleges and shows to the
Court as follows:

### GENERAL ALLEGATIONS

    1.    That the Plaintiff, Erin E. Kandziora, is an adult residing at 2729 S. Herman
Street, Milwaukee, Wisconsin 53207; that said Plaintiff is a "consumer," as that term is
defined in sec. 15 U.S.C. 2301(3), and a "retail buyer," as that term is defined in sec.
218.0101(31), Wis. Stats.

2.     That upon information and belief, the defendant, General Motors LLC, is a foreign corporation duly authorized and licensed to do business in the State of Wisconsin and is engaged in the manufacture and sale of motor vehicles through its duly authorized dealers in the State of Wisconsin and elsewhere; that said defendant does substantial business in Milwaukee County, Wisconsin; that upon information and belief, General Motors LLC's principal offices are located at 300 Renaissance Center, Detroit, Wisconsin 48265; that the registered agent for said defendant in the State of Wisconsin is C T Corporation System, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717; that said defendant is a "supplier" and "warrantor," as those terms are defined in sec. 15 U.S.C. 2301(4) and (5), and a "distributor" and "manufacturer" as those terms are defined in sec. 218.0101(6) and (20), Wis. Stats.

3.     The defendant, General Motors LLC, is the successor corporation to General Motors Corporation (hereinafter both collectively referred to as "GM"). Upon information and belief, General Motors Corporation underwent bankruptcy in 2009 and General Motors LLC assumed responsibility for General Motors Corporation liabilities; as demonstrated by the fact that General Motors LLC has initiated a recall of defective vehicles which includes vehicles manufactured and sold prior to 2009. General Motors LLC is legally responsible for those vehicles still on the road and recognizes that it is responsible for those vehicles despite General Motors Corporation's bankruptcy.

4.     The defective vehicles in the possession of customers were and are assets purchased by the defendant, General Motors LLC, under the Amended and Restated Master Sale and Purchase Agreement (hereinafter "Agreement") between General Motors

2

Corporation and General Motors LLC approved as part of General Motors Corporation's bankruptcy.

5.     Under said Agreement, the defendant, General Motors LLC, is the owner of all General Motors Corporation documents and has knowledge thereof; the contents of said documents are properly attributable and imputable to General Motors LLC.

6.     Under said Agreement, the defendant, General Motors LLC, assumed liabilities of General Motors Corporation; that the claims alleged herein fall within the liabilities assumed pursuant to said Agreement.

7.     Regardless of said Agreement, the defendant, General Motors LLC, is liable for its own conduct since its inception in 2009, including its own independent knowledge of safety defects in defective vehicles.

8.     That upon information and belief, the defendant Heiser Chevrolet, Inc. (hereinafter "Heiser"), is a Wisconsin corporation duly authorized and licensed to do business in the State of Wisconsin with its principal place of business located at 10200 W. Arthur Avenue, West Allis, Wisconsin 53227; that the registered agent for said defendant is Chris Dulla, 1700 W. Silver Spring Drive, Glendale, Wisconsin 53209; that upon information and belief, the defendant, Heiser, was at all times material hereto, an authorized "motor vehicle dealer," as that term is defined in sec. 218.0101(23), Wis. Stats., a "supplier" and/or "warrantor," as those terms are defined in sec. 15 U.S.C. 2301(4) and sec. 15 U.S.C. 2301(5), and an agent of the manufacturer, the defendant, GM.

3

9.      That on or about April 7, 2010, the Plaintiff purchased from the defendant,
Heiser, a GM authorized motor vehicle dealer, a 2010 Chevrolet Cobalt, vehicle
identification number 1G1AD1F50A7135269, as more fully set forth in copies of the
Motor Vehicle Purchase Contract and Wisconsin Title & License Plate Application
which are attached hereto, incorporated by reference herein and collectively marked as
Exhibit A; that the Plaintiff received delivery of said 2010 Chevrolet Cobalt on or about
April 7, 2010; that said 2010 Chevrolet Cobalt is a "consumer product," as that term is
defined in sec. 15 U.S.C. 2301(1), and a "motor vehicle" as that term is defined in sec.
218.0101(22), Wis. Stats.

10.     That upon information and belief, the full purchase price of said 2010
Chevrolet Cobalt purchased by the Plaintiff was $18,954.00, including a services fee of
$194.00, plus sales tax in the sum of $1,061.42, plus title, loan filing and processing fees
in the sum of $99.00; that upon information and belief, the Plaintiff received
manufacturer rebates in the sum of $4,000.00, made a cash down payment of $2,500.00,
and financed the balance of said purchase price.

### FIRST CLAIM

### FRAUDULENT CONCEALMENT

As and for a first claim against the defendant, General Motors LLC, the Plaintiff
alleges:

11.     That the Plaintiff realleges and incorporates herein and by reference all of
the allegations contained above in paragraphs 1 through 10, inclusive, as if fully set forth
herein.

4

12.    GM designed, manufactured and sold the Chevrolet Cobalt from 2005 to 2010, including the 2010 Chevrolet Cobalt purchased by the Plaintiff; all Chevrolet Cobalts, including the Plaintiff's 2010 Chevrolet Cobalt, contain the same safety defects.

13.    Upon information and belief, more than five years before the Plaintiff purchased her 2010 Chevrolet Cobalt, GM knew about the safety defects in the Chevrolet Cobalt, and did nothing to recall or fully remedy the defects or warn drivers about said defects. Rather, GM, intentionally, purposely, fraudulently, and systematically concealed the defects from the Plaintiff, the National Highway Traffic Safety Administration ("NHTSA"), and the driving public.

14.    Upon information and belief, as early as 2001 during developmental testing of the 2003 Saturn Ion, GM learned that defects in the ignition system were causing a loss of engine power in said vehicles, yet GM did not remedy the defects; see copy of GM 2001 Problem Resolution Tracking System Inquiry attached hereto, incorporated by reference and marked as Exhibit B.

15.    Upon information and belief, in 2002 GM began manufacturing and selling 2003 Saturn Ions with the defective ignition system; GM later began selling Chevrolet Cobalts with the same defective ignition system.

16.    Upon information and belief, in 2004, GM began manufacturing and selling the 2005 Chevrolet Cobalt. The Cobalt was a sister vehicle (essentially the same car with a different badge or name) of the Saturn Ion. GM installed the same ignition system on the 2005 Cobalt as it did on the Saturn Ion.

5

17.    On October 29, 2004, around the time of GM's market launch of the 2005 Cobalt, Gary Altman, GM's program-engineering manager for the Cobalt, test drove the Cobalt with the standard key and key fob. During the test drive, when Altman's knee bumped the key, the engine turned off, causing the engine to stall. Altman reported the incident to GM; see copy of GM Problem Resolution Tracking System Inquiry N172404 attached hereto, incorporated by reference and marked as Exhibit C.

18.    Upon information and belief, in response to Altman's report, GM launched an engineering inquiry to investigate the potential for the key to move from the "run" to "accessory/off" position during ordinary driving conditions. This inquiry is known within GM as a Problem Resolution Tracking System Inquiry ("PRTS"). The specific complaint which resulted in the PRTS was that the "vehicle can be keyed off with knee while driving." See Exhibit C attached hereto.

19.    Upon information and belief, on February 1, 2005, as part of the PRTS, GM engineers concluded:

"There are two main reasons that [sic] we believe can cause a lower effort in turning the key: 1. A low torque detent in the ignition switch 2. A low position of the lock module in the column." See Exhibit C attached hereto.

20.    Upon information and belief, as part of said PRTS, GM engineers also began looking into ways to solve the problem of the key moving from the "run" to the "accessory/off" position during ordinary driving.

21.    Upon information and belief, during this PRTS inquiry, GM considered changing the key from a slot to a hole as a way to attempt to contain this defect, **but not as a solution to the problem.**

6

22.    Upon information and belief, changing the key from a slot to a hole would reduce the lever arm of the key and the key chain. With a slot design, the key chain would hang lower on the key which would increase the torque force on the ignition switch when the chain was contacted or moved in any way. GM engineers determined this key change would significantly reduce the chance of the key inadvertently moving from the "run" to the "accessory/off" position during ordinary driving maneuvers.

23.    Upon information and belief, a GM engineer conducted a cost analysis of this key change and determined that the cost to make this change would be less than one dollar per vehicle.

24.    Upon information and belief, GM, however, rejected this proposed key change and, on March 9, 2005, GM closed the PRTS without taking any steps to fix the defective ignition system in Ions and Cobalts. The PRTS detailed the reasons why GM took no action:

"Per GMX001 PEM's [Gary Altman] directive we are closing this PRTS with no action. The main reasons are as following: 1. All possible solutions were presented to CPIT and VAPIR: a. The lead-time for all the solutions is too long. b. The tooling costs and piece price are too high. c. None of the solutions seem to fully countermeasure the possibility of the key being turned (ignition turn off) during driving. Thus **none of the solutions represents an acceptable business case.**" (emphasis added). See Exhibit C attached hereto.

25.    Upon information and belief, in December, 2005, GM issued a bulletin to its dealers regarding engine-stalling incidents in 2005-2006 Cobalts, 2006 Chevrolet HHR, 2006 Pontiac Solstice, 2003-2006 Saturn Ion, and 2005-2006 Pontiac Pursuits (the Canadian version of the Pontiac G5).

26.    In    the    December.    2005,    bulletin,    GM    provided    the    following

recommendations/instructions to its dealers – but not to the public in general:

> "There is a potential for the driver to inadvertently turn off the ignition due
> to low ignition key cylinder torque/effort. The concern is more likely to
> occur if the driver is short and has a large and/or heavy key chain.
>
> In these cases, this condition was documented and the driver's knee would
> contact the key chain while the vehicle was turning and the steering column
> was adjusted all the way down. This is more likely to happen to a person
> who is short, as they will have the seat positioned closer to the steering
> column.
>
> In cases that fit this profile, question the customer thoroughly to determine
> if this may [sic] the cause. The customer should be advised of this potential
> and should take steps to prevent it, such as removing unessential items from
> their key chains." See copy of GM Service Bulletin No. 05-02-35-007
> attached hereto, incorporated by reference and marked as Exhibit D.

27.    Upon information and helief, at the time of issuing the December. 2005

bulletin, GM knew that the inadvertent turning off of the ignition in the vehicles was due

to design defects in the ignition system in those vehicles, including the Chevrolet Cobalt,

and **was not** limited to short drivers using large and/or heavy key chains.

28.    Upon information and belief, GM failed to disclose and, in fact, concealed,

the December. 2005 bulletin and/or the information contained therein. from Chevrolet

Cobalt owners, and sent affirmative representations to dealers that did not accurately

describe the nature of the defect, the multiple design steps needed for a solution to the

problem, and GM's knowledge of it.

29.    Upon information and belief, indeed, rather than disclosing this serious

safety defect that uniformly affected all Chevrolet Cobalt cars, GM, instead, concealed

and obscured the defect, electing to wait until customers brought their cars to a dealership

8

after an engine-stalling incident, and even offered its own dealers only an incomplete, incorrect, and insufficient description of the defects and the manner in which to actually remedy said defects.

30.    Upon information and belief, as of December 2005, GM engineers knew that the Saturn Ion and Chevrolet Cobalt vehicles had the ignition system safety defects set forth above.

31.    Upon information and belief, pursuant to 49 C.F.R. §573.6, which requires an automobile manufacturer to "furnish a report to the NHTSA for each defect...related to motor vehicle safety," GM had a duty, no later than December 2005 to disclose the safety defects in the Saturn Ion and Chevrolet Cobalt vehicles.

32.    Upon information and belief, instead of complying with its legal obligations, however, GM fraudulently concealed the ignition system defect from the public and continued to manufacture and sell Ions and Cobalts with these known safety defects.

33.    Upon information and belief, in 2009, GM approved of the design change in its key from a slot to a hole. This redesigned change was implemented in model year 2010 Chevrolet Cobalts, including the 2010 Chevrolet Cobalt purchased by the Plaintiff.

34.    The change in the key from a slot to a hole did not correct the ignition system defect in the Plaintiff's 2010 Chevrolet Cobalt, or in any other 2010 Chevrolet Cobalt.

35.    From 2005 through 2010, GM sold defective Cobalt vehicles to consumers for full price, and consumers purchased said Cobalts believing that the vehicles were non-

defective; all the while GM was concealing the extent and nature of the safety defects in the Chevrolet Cobalt vehicle.

36.    Finally in April 2014, more than 10 years after the first Chevrolet Cobalt was built with the defective ignition system and start switch, GM issued a Recall entitled **IMPORTANT SAFETY RECALL** to all Cobalt owners, including the Plaintiff, which in part states the following:

> "General Motors has decided that one or more defects as described below which relate to motor vehicle safety may exist in all 2008-2010 model year (MY) Chevrolet Cobalt...
>
> ### IMPORTANT
>
> • This notice applies to your 2010 model year Chevrolet Cobalt, **VIN 1G1AD1F50A7135269.**
>
> GM records indicate a defective Ignition & Start Switch or a kit containing a defective Ignition & Start Switch may have been installed in some 2008-2010 MY Chevrolet Cobalt...If your vehicle has the defective Ignition & Start Switch, there is a risk, under certain conditions, that your ignition switch may move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine...If the ignition switch is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury or fatality.
>
> **Until the recall repairs have been performed, it is very important that you remove all items from your key ring, leaving only the vehicle key.**
>
> **Until the recall repairs have been performed, it is very important that you remove all items from your key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from your key ring."**

See copy of IMPORTANT SAFETY RECALL attached hereto, incorporated by reference and marked as Exhibit E.

37.    That since approximately 2004, GM knew about a safety defect in the Chevrolet Cobalt ignition system whereby the ignition switch could turn off the engine

10

and shut off the car's electrical system; knew that this could occur if the ignition key was inadvertently jarred or when the car went over a bump; knew that a large and/or heavy key ring attached to the ignition key could pull the key into the "off" position; knew that this problem presented a severe safety hazard to anyone driving a Chevrolet Cobalt from 2004 to the present day; and knew that the Chevrolet Cobalt was not a safe vehicle.

38.    On April 7, 2010, when the Plaintiff purchased her 2010 Chevrolet Cobalt, GM knew that said Chevrolet Cobalt was not safe; that the ignition system was defective and presented a risk to the Plaintiff; that the ignition switch could move out of the "run" position resulting in a loss of electrical power and turn off the engine; that if the ignition switch was not in the "run" position, the airbags might not deploy if the vehicle was involved in a crash, thereby increasing the risk of injury or fatality; knew that if the ignition key was removed when the ignition was not in the "off" position, that unintended vehicle motion might occur and could result in a vehicle crash and occupant or pedestrian injuries; at the time of Plaintiff's purchase of said 2010 Chevrolet Cobalt, neither GM nor any agent of the defendant, GM, disclosed any of the above to the Plaintiff.

39.    That at the time of Plaintiff's purchase of said 2010 Chevrolet Cobalt, GM knew but did not disclose to the Plaintiff that said 2010 Chevrolet Cobalt was not safe to drive.

40.    That at the time of Plaintiff's purchase of said 2010 Chevrolet Cobalt, GM had a legal duty and moral duty to disclose to the Plaintiff that the 2010 Chevrolet Cobalt she was purchasing had major safety defects, including an ignition system defect and was

not safe to drive; Plaintiff would not have purchased the vehicle had she known of said safety defects.

41.    That as a result of the defendant's fraudulent concealment of a safety defect in the Chevrolet Cobalt ignition system, the Plaintiff is entitled to recover all amounts paid by Plaintiff for said vehicle as well as punitive damages.

SECOND CLAIM

**FRAUDULENT MISREPRESENTATION**

As and for a second claim against the defendant, General Motors LLC, the Plaintiff alleges:

42.    That the Plaintiff realleges and incorporates by reference all of the allegations contained above in paragraphs 1 through 41, inclusive, as if fully set forth herein.

43.    That at the time of Plaintiff's purchase of said 2010 Chevrolet Cobalt, GM made false, misleading, deceptive, untrue statements to the Plaintiff including but not limited to, that the Chevrolet Cobalt she was purchasing was a safe vehicle.

44.    That the 2010 CHEVY COBALT booklet (I0CHE60BCAT01) attached hereto, incorporated by reference and marked as Exhibit F, given to the Plaintiff during the purchase process, included the following statements made by the defendant, General Motors LLC, regarding the safety of said 2010 Chevrolet Cobalt:

- MEET YOUR NEW RIDE: Impressive Safety (p. 3);

- Street smart about safety (p. 4);

- Chevrolet Cobalt is savvy when it comes to standard safety (p. 4);

12

- It is equipped with duel frontal airbags and HEAD – CURTAIN SIDE – IMPACT

  AIR BAGS (p. 4);

- Factor in antilock brakes – standard on 2LT (Plaintiff's model) [p. 4];

- The OnStar Safe & Sound Plan (p. 4 and 7);

- You'll see we've thought about safety so you don't have to (p. 4);

- SAFETY & SECURITY (p. 12)

```
Air bags: –   driver and front passenger,
              Frontal
         --   head-curtain side- impact for
              driver, front passenger and
              rear outboard passengers
Brakes: –     front disc/rear drum
         --   four wheel ABS, front disc/
              rear drum
         --   four wheel ABS, four-wheel
              disc, Brembo; and
```

- CHEVY.com/SAFETY Chevrolet is committed to keeping you and your family

  safe – from the start of your journey to your destination. That's why every

  Chevrolet is designed with a comprehensive list of safety and security features to

  help give you peace of mind (p. 14). See Exhibit F attached hereto.

45.    That said representations made by GM in the 2010 CHEVY COBALT

booklet are false, untrue, misleading, and deceptive.

46.    That upon information and belief, GM's misrepresentations contained in

Exhibit F concealed the true condition of said 2010 Chevrolet Cobalt; the defendant knew

that said misrepresentations relating to safety of said 2010 Chevrolet Cobalt contained in

Exhibit F created material false and misleading representations; the misrepresentations

13

set forth in Exhibit F relate to the safety of said 2010 Chevrolet Cobalt were intentional and made with the intent to deceive, or were made recklessly without caring whether they were true or false.

47.    That GM made such false representations with the intent to defraud Plaintiff and for purpose of inducing Plaintiff to act upon them and purchase said 2010 Chevrolet Cobalt.

48.    That the Plaintiff believed and relied upon GM's false, untrue representations regarding the safety of said 2010 Chevrolet Cobalt and purchased said 2010 Chevrolet Cobalt in reliance thereon.

49.    That the Plaintiff is entitled to compensatory damages based upon the intentional fraudulent misrepresentations of the defendant as well as punitive damages.

### THIRD CLAIM

### VIOLATION OF SEC. 218.0116, WIS. STATS.

As and for a third claim against the defendant, General Motors LLC, the Plaintiff alleges:

50.    That the Plaintiff realleges and incorporates herein and by reference all of the allegations contained above in paragraphs 1 through 49, inclusive, as if fully set forth herein.

51.    That GM willfully defrauded the Plaintiff to her damage by concealing safety defects with said 2010 Chevrolet Cobalt by making fraudulent misrepresentations regarding the safety of said 2010 Chevrolet Cobalt; that said conduct was in violation of sec. 218.0116(1)(c), Wis. Stats.

14

52.    That upon information and belief, GM made a fraudulent sale to the Plaintiff by failing to disclose that said 2010 Chevrolet Cobalt had safety defects as disclosed and alleged herein, and fraudulently misrepresenting that said vehicle was safe; that said fraudulent sale was in violation of sec. 218.0116(1)(dm), Wis. Stats.

53.    That GM made fraudulent misrepresentations, circumvention and/or concealment through whatsoever subterfuge or device of material particulars as alleged herein relating to the true condition of the Plaintiff's 2010 Chevrolet Cobalt which were required to be disclosed to the Plaintiff; that said conduct of GM was in violation of sec. 218.0116(e), Wis. Stats.

54.    That GM's concealment for over a decade of the true condition of all Chevrolet Cobalts involving the defects and conditions described and alleged herein, such as the risk that the ignition switch may move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine; the risk of losing steering and braking while driving; the risk that air bags will not deploy in a crash; the increased risk of injury or fatality; and GM's fraudulent misrepresentations made to the Plaintiff as to the safety of her 2010 Chevrolet Cobalt were unconscionable in violation of sec. 218.0116(1)(f), Wis. Stats.

55.    That GM's conduct and fraudulent representations to the Plaintiff were in violation of sec. 218.0116(1), (c), (dm), (e), or (f), Wis. Stats.; that sec. 218.0163(2), Wis. Stats., provides that any retail buyer who has suffered a pecuniary loss because of a violation of sec. 218.0116(1)(c), (dm), (e), or (f), Wis. Stats., may recover damages for the loss together with costs, including reasonable attorney fees; that as a result of

15

defendant's violation of sec. 218.0116(1), Wis. Stats., the Plaintiff may recover damages, together with costs, including reasonable attorney fees pursuant to sec. 218.0163(2), Wis. Stats.

## FORTH CLAIM

### PUNITIVE DAMAGES

In conjunction with the other claims against the defendant, General Motors LLC, the Plaintiff alleges:

56.     That the Plaintiff realleges and incorporates herein and by reference all of the allegations contained above in paragraphs 1 through 55, inclusive, as if fully set forth herein.

57.     That upon information and belief, GM's concealment of the true condition of said 2010 Chevrolet Cobalt and fraudulent misrepresentations to the Plaintiff were made maliciously or in an intentional disregard of the rights of the Plaintiff by the defendant.

58.     That if the evidence at trial shows that some of GM's actions were made maliciously or in an intentional disregard of the rights of the Plaintiff, then the Plaintiff is entitled to recover punitive damages, to the extent allowed by law.

## FIFTH CLAIM

### MAGNUSON-MOSS, 15 U.S.C. 2301 et seq.

In conjunction with the other claims against the defendant, General Motors LLC, the Plaintiff alleges:

16

59.     That the Plaintiff realleges and incorporates herein and by reference all of the allegations contained above in paragraphs 1 through 58, inclusive, as if fully set forth herein.

60.     That GM limited warranties were provided to the Plaintiff at the time of purchase; that as part of said purchase, the Plaintiff's 2010 Chevrolet Cobalt was warranted in writing to be free from mechanical and other defects.

61.     That GM obligated itself under the terms of written warranties to perform repairs within a stated period.

62.     That GM failed to remedy defects or failures to conform with a warranty within a reasonable time that were present at the time of sale and delivery of said 2010 Chevrolet Cobalt; that defects with Plaintiff's 2010 Chevrolet Cobalt include, but are not limited to, a defective Ignition & Start Switch or kit containing a defective Ignition & Start Switch; a risk, that said 2010 Chevrolet Cobalt's ignition switch may move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine; the risk of losing power steering and braking; the risk that airbags will not deploy in a crash, increasing the risk of injury or fatality, while driving; the ignition key may be removed when the ignition key is not in the "Off" position; and if removed, unintended vehicle motion may occur that could result in a vehicle crash and occupant or pedestrian injuries.

63.     That upon information and belief, GM violated the terms of an express warranty or warranties granted to the Plaintiff.

64.     That the Plaintiff's 2010 Chevrolet Cobalt failed to conform with a warranty or warranties provided by GM; that further, GM failed to comply with its obligations under a written warranty or warranties.

65.     That GM has violated the terms of the Magnuson-Moss Warranty Act – Federal Trade Commission Improvement Act, 15 U.S.C. 2301 et seq.

66.     That upon information and belief, no informal dispute settlement procedure, as defined in sec. 15 U.S.C. 2310, is available to the Plaintiff; that consequently, the Plaintiff may bring this action pursuant to sec. 15 U.S.C. 2310(d).

67.     That since GM has violated the Magnuson-Moss Warranty Act – Federal Trade Commission Improvement Act, 15 U.S.C. 2301 et seq., the Plaintiff is entitled to a refund or damages as described herein together with any other relief provided for by such law.

SIXTH CLAIM

**REVOCATION OF ACCEPTANCE**

As and for a claim against the defendant, Heiser Chevrolet, Inc., the Plaintiff alleges:

68.     That the Plaintiff realleges and incorporates herein and by reference all of the allegations contained above in paragraphs 1 through 67, inclusive, as if fully set forth herein.

69.     In April 2014, the Plaintiff received an IMPORTANT SAFETY RECALL (Exhibit E) from the defendant, General Motors LLC, advising that said Recall applies to her 2010 Chevrolet Cobalt, VIN 1G1AD1F50A7135269, and that the defendant, General

18

Motors LLC, decided that "one or more defects" that relate to "motor vehicle safety" applies to all 2008 – 2010 Chevrolet Cobalts; said Recall further stated that "parts are not presently available to remedy your vehicle."

70.     On May 7, 2014, the Plaintiff received an email from the defendant, Heiser's, representative, Ashley Corning, entitled "Important recall information about your 2010 Chevrolet Cobalt."

71.     On May 22, 2014, the Plaintiff sent a Revocation of Acceptance letter to the defendant, Heiser, advising that she first became aware of the nonconformity that applies to her 2010 Chevrolet Cobalt in April 2014, that she was cancelling the Motor Vehicle Purchase Contract dated April 7, 2010 and she demanded a full refund pursuant to sec. 402.711(1), Wis. Stats.; a copy of the Revocation of Acceptance letter is attached hereto, incorporated by reference and marked as Exhibit G.

72.     The defendant, Heiser, has not complied with the Plaintiff's demand.

WHEREFORE, the Plaintiff demands judgment against the defendant, General Motors, LLC, as follows:

(a)     For damages based on fraudulent concealment;

(b)     For damages based on intentional fraudulent misrepresentation;

(c)     For damages pursuant to sec. 218.0163(2), Wis. Stats.;

(d)     For punitive damages pursuant to sec. 895.043, Wis. Stats.;

(e)     For a refund or damages pursuant to sec. 15 U.S.C. 2301, et seq.;

(f)     For rescission of the purchase contract and a refund;

(g)     For the Plaintiff's actual attorney fees and litigation costs;

(h)     For the statutory costs and disbursements incurred by the Plaintiff in this

action; and

(i)     For such other relief as the Court deems just and equitable.

The Plaintiff demands judgment against the defendant, Heiser Chevrolet, Inc., as

follows:

(a)     For rescission of the purchase contract and a refund;

(b)     For cancellation of the contract and a refund pursuant to sec. 402.711(1),

Wis. Stats.;

(c)     For statutory costs, disbursements, and attorney fees incurred by the

Plaintiff in this action; and

(d)     For such other relief that the Court deems just and equitable.

Dated this __4th__ day of June, 2014.

AIKEN & SCOPTUR, S.C.
Attorneys for Plaintiff

By: _____

VINCENT P. MEGNA
State Bar No. 1013041
SUSAN M. GRZESKOWIAK
State Bar No. 1031586

MAILING ADDRESS
2600 N. Mayfair Road
Suite 1030
Milwaukee, WI 53226-1308
Phone No. (414) 225-0260
Fax No. (414) 225-9666