# Exhibit E

Deborah R. Rosenthal (#184241)
drosenthal@simmonsfirm.com
**SIMMONS HANLY CONROY**
455 Market Street, Suite 1150
San Francisco, California 94105
Phone: (415) 536-3986
Fax:    (415) 537-4120

Jayne Conroy*
jconroy@simmonsfirm.com
Paul J. Hanly, Jr.*
phanly@simmonsfirm.com
Andrea Bierstein*
abierstein@simmonsfirm.com
Mitchell M. Breit*
mbreit@simmonsfirm.com
**SIMMONS HANLY CONROY**
112 Madison Avenue
New York, New York  10016-7416
Phone: (212) 784-6400
Fax:    (212) 213-5949

*Attorneys for Plaintiffs Alondra Ibanez and Sylvia Degado and all others similarly situated*

*Application pro hac vice to be submitted

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALONDRA IBANEZ and SYLVIA DEGADO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS LLC, <br> Defendant. | Case No.: <br><br> **CLASS ACTION** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

1

Plaintiffs, ALONDRA IBANEZ and SYLVIA DEGADO, individually and as class representative on behalf of all similarly situated persons, brings this action against Defendant General Motors LLC ("Defendant" or "GM") and alleges, on personal information as to itself and on information and belief as to all other matters, as follows:

## I.    INTRODUCTION

1.    This case involves an unprecedented failure to disclose, indeed, affirmatively to conceal, known dangerous defects in GM vehicles.

2.    An auto manufacturer is entrusted with the safety of the driving public.  It should never make profits more important than safety and should never conceal defects that exist in its vehicles from consumers or the public. GM's Vehicle Safety Chief, Jeff Boyer has stated that:  "Nothing is more important than the safety of our customers in the vehicles they drive."  The facts will show that GM repeatedly failed to live up to this commitment.

3.    The first priority of a car manufacturer should be to ensure that its vehicles are safe, and in particular that its vehicles have operative ignition systems, airbags, power-steering, power brakes, and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision.  In addition, a car manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely and its safety critical systems (such as engine control, braking, and airbag systems) work properly until such time as the driver shuts the vehicle down.  Moreover, a manufacturer that is aware of dangerous design defects that cause its vehicles to shut down during operation, or its airbags not to deploy, must promptly disclose and remedy such defects.

4.    Since 2002, GM has sold millions of vehicles throughout the United States and worldwide that have a safety defect in which the vehicle's

CLASS ACTION COMPLAINT

ignition switch can unintentionally move from the "run" position to the "accessory" or "off" position, resulting in a loss of power, vehicle speed control, and braking, as well as a failure of the vehicle's airbags to deploy.

5.    GM began installing these ignition switch systems in models from 2002 through at least 2007 and possibly later.  GM promised that these new systems would operate safely and reliably.  This promise turned out to be false in several material respects.  In reality, GM concealed and did not fix a serious quality and safety problem plaguing its vehicles.

6.    Worse yet, the defects in GM's vehicle could easily have been avoided.

7.    From 2004 to the present, GM received reports of crashes and injuries that put GM on notice of the serious safety issues presented by its ignition switch system.

8.    Despite the dangerous nature of this defect and its effects on critical safety systems, GM concealed the existence of the defect and failed to repair the problem.

9.    Despite being on notice of the defect in its vehicles, GM did not disclose to consumers that its vehicles – which GM for years had widely advertised as "safe" and "reliable" – were in fact not safe or reliable as claimed.

10.    GM's CEO, Mary Barra has admitted in a video message: "Something went wrong with our process in this instance, and terrible things happened."

11.    This case arises from GM's breach of its obligations and duties, including GM's failure to disclose that, as a result of defective ignition switch design, at least 2.6 million GM vehicles had the propensity to shut down during normal driving conditions and this created an extreme and unreasonable risk of accident, serious bodily harm, and death.

2

Case 2:14-cv-05238    Document 1    Filed 07/07/14    Page 4 of 38    Page ID #:4

12.    GM's predecessor, General Motors Corporation ("Old GM"), also violated these rules by designing and marketing vehicles with defective ignition switches, and then failing to disclose that defect even after it became aware that the ignition switch defect was causing fatal accidents.  In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects.

13.    The defective ignition switches were manufactured by Delphi Automotive PLC ("Delphi").  Once a subsidiary of Old GM, Delphi spun-off from Old GM in 1999, and was an independent publicly-held corporation.

14.    Delphi knew its ignition switches were defective, but nevertheless continued to manufacture and sell the defective ignition switch systems, which it knew would be used in the vehicles of Plaintiff and the Class.

15.    Plaintiff brings this action for a Class of all persons in the United States who currently own or lease one or more of the following GM vehicles: Chevrolet Cobalt (2005-2010 model years); Chevrolet HHR (2006-2011 model years); Pontiac G5 (2006-2007 model years); Pontiac Solstice (2006-2010 model years); Saturn Ions (2003-2007 model years); Saturn Sky (2007-2010 model years); Buick Lacrosse (2005-2009 model years); Buick Lucerne (2006-2011 model years); Buick Regal LS (2004-2005 model years); Buick Regal RS (2004-2005 model years); Chevrolet Impala (2000-2014 model years); Chevrolet Monte Carlo (2000-2008 model years); Chevrolet Malibu 1997-2005 model years); Oldsmobile Intrigue (1998-2002 model years); Oldsmobile Alero (1999-2004 model years); Pontiac Grand Am (1999-2005 model years); Pontiac Grand Prix (2004-2008 model years); Cadillac CTS (2003-2014 model years); Cadillac SRX (2004-2006 model years); Cadillac

3

1    DeVille (2000-2005 model years); and Cadillac DTS (2004-2011 model
2    years), (hereinafter "Defective Vehicles").

3        16.    Plaintiff believes that there are other GM vehicles which suffer
4    from the same or substantially similar ignition switch defects as the Defective
5    Vehicles identified above.  Accordingly, Plaintiff will supplement the list of
6    Defective Vehicles to include additional GM vehicles that have defective
7    ignition switches, which result in a loss of vehicle speed control, loss of
8    braking control, and airbag non-deployment.

9        17.    The Defective Vehicles are defective and dangerous for multiple
10   reasons, including the following (collectively, the "ignition switch defects"):

11       a. The ignition switches can inadvertently shut off the engine
12          and vehicle electrical system during normal driving
13          conditions;
14       b. When the engine and the electrical system shut down, the
15          power steering and power brakes also shut down, creating a
16          serious risk of accident;
17       c. When the electrical system shuts down, the vehicle's airbags
18          are disabled, creating a serious risk of serious bodily harm or
19          death if an accident occurs.

20       18.    The ignition switch defects make the Defective Vehicles
21   unreasonably dangerous.  Because of the defects, the Defective Vehicles are
22   likely to be involved in accidents, and, if accidents occur, there is an
23   unreasonable and extreme risk of serious bodily harm or death to the vehicles'
24   occupants.

25       19.    GM admits to at least thirteen deaths as a result of the ignition
26   switch defects, but the actual number is estimated to be much higher.

27

28

CLASS ACTION COMPLAINT

20.    The ignition switch defects present a significant and unreasonable safety risk, exposing Defective Vehicle owners and their passengers to a risk of serious injury or death.

21.    For many years, GM has known of the ignition switch defects that exist in millions of Defective Vehicles sold in the United States.  But, to protect its profits and maximize sales, GM concealed the defects and their tragic consequences and allowed unsuspecting vehicle owners to continue driving highly dangerous vehicles.

22.    Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act"),[1] and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defects.[2]  If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers, and dealers of the defect and must remedy the defect.[3]

23.    In addition to the TREAD Act and other laws, GM violated the California Consumer Legal Remedies Act ("CLRA")[4] by engaging in unfair trade practices and by fraudulently concealing the deadly ignition switch defects from consumers, owners, and lessees of the Defective Vehicles.  GM also violated the TREAD Act by failing to timely inform the National Highway Traffic Safety Administration (the "NHTSA") of the ignition switch defects and by allowing cars to remain on the road with these defects.  GM's violations of the TREAD Act also constitute violations of the CLRA.

24.    Plaintiff and the Class have been damaged by GM's misrepresentations, concealment, and non-disclosure of the ignition switch

---

[1] 49 U.S.C. §§ 30101-30170.
[2] 49 U.S.C. § 30118(c)(1) & (2).
[3] 49 U.S.C. § 30118(b)(2)(A) & (B).
[4] Cal. Civ. Code § 1750, *et seq.*

CLASS ACTION COMPLAINT

defects in the Defective Vehicles, as they are now holding highly dangerous vehicles whose value has greatly diminished because of GM's failure to timely disclose the serious and potentially deadly defects.

25.    Plaintiff and the Class also were damaged by the acts and omissions of Old GM, for which GM is liable through successor liability, because the Defective Vehicles they purchased are worth less than they would have been without the ignition switch defects.

26.    Plaintiff and the Class either paid more for the Defective Vehicles than they would have had they known of the ignition defects or they would not have purchased the Defective Vehicles at all.  As a result of the defects in these vehicles, the Plaintiff and the Class are unable to seal or otherwise realize their investments in the Defective Vehicles.

## II.    JURSIDICTION AND VENUE

27.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, as codified at 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant; there are more than 100 class members; the aggregate amount in controversy exceeds $5,000,000.

28.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## III.    PARTIES

29.    Plaintiff and Named Class Representatives Alondra Ibanez and Sylvia Degado are persons who reside in Panorama City, California. Plaintiffs own a 2008 Chevy Impala, which they purchased used in 2011. This model has been recalled for safety defects related to the faulty ignition

CLASS ACTION COMPLAINT

Case 2:14-cv-05238    Document 1    Filed 07/07/14    Page 6 of 38    Page ID #:8

switch.  Plaintiff relied on GM to produce a safely designed and manufactured vehicle.  Plaintiff did not learn of the ignition switch defects until after the car was in her possession, and after the recall was announced.  Had Old GM disclosed the ignition switch defects, Plaintiff would not have purchased these vehicles.  As a result of the vehicle defect and recalls, Plaintiff has been unable to re-sell her Defective Vehicle and is incurring considerable expense, financial loss, and economic damage as a result.

30.    Defendant General Motors LLC ("GM") is a limited liability company formed under the laws of Delaware with its principal place of business located at 300 Renaissance Center, Detroit, Michigan.  GM was incorporated in 2009 and on July 10, 2009 acquired substantially all assets and assumed certain liabilities of General Motors Corporation ("Old GM") through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.

31.    Among the liabilities and obligations expressly retained by GM after the bankruptcy of Old GM are the following:

> From and after the Closing, Purchaser [GM] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code, and similar laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

32.    GM also expressly assumed:

> All Liabilities arising under express written warranties of [Old GM] that are specifically identified as warranties and delivered in connection

7

with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by [Old GM] or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws.

33.     Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint.

## IV.   FACTUAL ALLEGATIONS

### A.     The Ignition Switch Defects in the Defective Vehicles

34.     Given the importance of a vehicle and its electrical operating systems remaining fully functional and operational during driving conditions, it is imperative that a vehicle manufacturer ensure that its vehicles remain operational from the time the driver starts the vehicle until the driver intentionally shuts down the vehicle. With respect to the Defective Vehicles, GM has failed to do so.

35.     In the Defective Vehicles, the ignition switch defects can cause the car's engine and electrical system to shut off, disabling the power steering and power brakes and the airbag system, so that in the event of a crash (itself made more likely by the engine shut-off and the failure of the power steering and power brakes), the airbags will not deploy.

36.     The Defective Vehicles are, therefore, unreasonably prone to accidents, and those accidents are unreasonably likely to result in serious

8

CLASS ACTION COMPLAINT

1    bodily harm or death to the drivers and passengers of the Defective Vehicles,

2    as well as to other vehicle operators and pedestrians.

3

4    **B.    GM Knew of the Ignition Switch Defects for Years, but**

5    **Concealed the Defects from Plaintiff and the Class**

6    37.    Alarmingly, both Old GM and GM knew of the deadly ignition

7    switch defects and their dangerous consequences for many years, but

8    concealed their knowledge from Defective Vehicle owners.

9    38.    For example, on July 29, 2005, Amber Marie Rose, age 16, died

10   after her 2005 Chevrolet Cobalt crashed and the airbag failed to deploy. Ms.

11   Rose's death was the first of the hundreds of deaths and injuries attributable

12   to the ignition switch defects. Ms. Rose's death was an early warning in what

13   would become a decade-long failure by Old GM and GM to address the

14   ignition switch defect and problem.

15   39.    Another incident involved 16 year-old Megan Phillips. Ms.

16   Phillips was driving a 2005 Chevrolet Cobalt that crashed in Wisconsin in

17   2006, killing two of her teenage friends when the car left the road and hit a

18   clump of trees. NHTSA investigators found that the key had moved from the

19   "run" to the "accessory" position, turning off the engine and disabling the

20   vehicle's airbags before impact. According to Ms. Phillips, the families of

21   her deceased friends blamed her and refused to speak with her; only after the

22   recall was finally announced did they begin communicating. As she stated, "I

23   don't understand why [GM] would wait 10 years to say something. And I

24   want to understand it but I never will."[5]

25   40.    Rather than publicly admitting the dangerous safety defects in its

26   vehicles, GM attempted to attribute these and other incidents to "driver error."

27

28   _____
[5] "Reuters, *Owners of Recalled GM Cars Feel Angry, Vindicated*" (Mar. 17, 2014).

CLASS ACTION COMPLAINT

Every year from 2005 to 2012, first Old GM and then GM received reports of deaths in Cobalts involving steering and/or airbag failures, including:

- 2005: 26 Cobalt Death and Injury Incidents, including 1 death citing "airbag" as the component involved.

- 2006: 69 Cobalt Death and Injury Incidents, including 2 deaths citing "airbag" as the component involved and 4 deaths listing the component involved as "unknown."

- 2007: 87 Cobalt Death and Injury Incidents, including 3 deaths citing "airbag" as the component involved.

- 2008: 106 Cobalt Death and Injury Incidents, including 1 death citing "airbag" as the component involved and 2 deaths listing the component involved as "unknown."

- 2009: 133 Cobalt Death and Injury Incidents, including 1 death citing "airbag" as the component involved, 1 death citing "service brake" as the component involved, 1 death citing "steering" as component involved, and 2 deaths listing the component involved as "unknown."

- 2010: 400 Cobalt Death and Injury Incidents, including 2 deaths citing "airbag" as the component involved, 12 deaths citing "steering" as the component involved, and 1 death listing the component involved as "unknown."

- 2011: 187 Cobalt Death and Injury Incidents, including 2 deaths citing "airbag" as the component involved, 2 deaths citing "steering" as the component involved, and 1 death listing the component involved as "unknown."

- 2012: 157 Cobalt Death and Injury Incidents, including 5 deaths citing "airbag" as the component involved, and 4 deaths citing "steering" as the component involved.

10

CLASS ACTION COMPLAINT

41.    GM now admits that Old GM learned of the ignition switch defects as early as 2001.  During the pre-production development of the Saturn Ion, Old GM engineers learned that the ignition could inadvertently move from the "Run" position to the "Accessory" or "Off" position.  Old GM claimed that a switch design change "had resolved the problem."[6]

42.    In 2003, an internal report documented an instance in which the service technician observed a stall while driving.  The service technician noted that the weight of several keys on the key ring had worn out the ignition switch.  The ignition switch was replaced and the matter closed.[7]

43.    According to GM's latest chronology, submitted to NHTSA pursuant to 49 CFR § 573.6, Old GM engineers encountered the problem again in 2004 during test drives of the Chevy Cobalt, before it went to market.

44.    Old GM opened an engineering inquiry, known as a "Problem Resolution Tracking System inquiry" ("PRTS"), to investigate the issue. According to the chronology provided to NHTSA by GM, engineers pinpointed the problem and were "able to replicate this phenomenon during test drives."

45.    According to GM, the PRTS engineers "believed that low key cylinder torque effort was an issue and considered a number of potential solutions."  But after considering cost the cost and amount of time it would take to develop a fix, Old GM did nothing.

46.    As soon as the 2005 Cobalt hit the market, Old GM almost immediately started getting complaints about sudden loss of power incidents, "including instances in which the key moved out of the 'run' position when a

---

[6] "D. Ivory, *G.M. Reveals It Was Told of Ignition Defect in '01*, N.Y. Times (Mar. 12, 2014).
[7] *Id.*

1  driver inadvertently contacted the key or steering column."[8]  Old GM opened

2  additional PRTS inquiries.

3        47.    In another PRTS opened in May 2005, Old GM engineers once

4  again assessed the problem and proposed that GM re-design the key head

5  from a "slotted" to a "hole" configuration.  After initially approving the

6  proposed fix, Old GM reversed course and again declined to implement a fix.[9]

7        48.    Instead, in October 2005, Old GM simply issued a Technical

8  Service Bulletin ("TSB") advising service technicians and GM dealers that

9  the inadvertent turning of the key cylinder was causing the failure of the car's

10  electrical system.

11        49.    Rather than disclose the true nature of the defects and correct

12  them, pursuant to the TSB Old GM instead gave customers who brought in

13  their vehicle complaining about the issue "an insert for the key ring so that it

14  goes from a 'slot' design to a hole design" to prevent the key rings from

15  moving up and down in the slot.  "[T]he previous key ring" was "replaced

16  with a smaller" one; this change would supposedly keep the keys from

17  hanging as low as they had in the past.[10]  According to GM's records, Old

18  GM dealers provided key inserts to 474 customers who brought their vehicles

19  into dealers for service.[11]

20        50.    Yet there was no recall.  And, not surprisingly, Old GM

21  continued to receive complaints.

22        51.    In 2006, Old GM approved a design change for the Cobalt's

23  ignition switch that was supplied by Delphi.  The new design included "the

24  use of a new detent plunger and spring that increased torque force in the

25

---

26  [8] March 11, 2014 Chronology Re:  Recall of 2006 Chevron HHR and Pontiac Solstice, 2003-2007 Saturn Ion, and 2007 Sky Vehicles, at 1.

27  [9] *Id.*

28  [10] *Id.* at 1-2.
[11] *Id.* at 3.

CLASS ACTION COMPLAINT

1   ignition switch." But the new design was not produced until the 2007 model

2   year.[12]

3          52.    In 2007, NHTSA investigators met with Old GM to discuss its

4   airbags and informed Old GM of the July 2005 frontal and fatal crashing

5   involving Amber Marie Rose.

6          53.    As alleged above, the airbags in Ms. Rose's 2005 Cobalt did not

7   deploy. Data retrieved from the vehicle's diagnostic system indicated that the

8   ignition was in the "accessory" position. Old GM investigated and tracked

9   similar incidents.

10         54.    By the end of 2007, by GM's own admission, Old GM knew of

11  10 frontal collisions in which the airbag did not deploy.[13] Plaintiff believes

12  that Old GM actually knew of many other similar incidents involving the

13  ignition switch defects.

14         55.    For the next six years, GM continued to receive complaints and

15  continued to investigate frontal crashes in which the airbags did not deploy.

16         56.    However, according to GM it was not until 2011 and 2012 that

17  GM's examinations of switches from vehicles that had experienced crashes

18  revealed significant design differences in the torque performance of ignition

19  switches from the 2005 Cobalt and those from the 2010 model year, the last

20  year of the Cobalt's production.

21         57.    GM responded by blaming the supplier for the switch design.[14]

22         58.    In 2014, after numerous assessments and facing increasing

23  scrutiny of its conduct and the defects in its vehicles, GM finally announced a

24  recall for the Cobalt and G5 vehicles.[15]

25

26  [12] *Id.* at 2.
    [13] Letter from M. Carmen Benavides, Dir., Prod. Investigations & Safety Regulations, GM, to Nancy Lewis,

27  Assoc. Adm'r for Enforements, NHTSA, Attach. B-573.6(c)(6) at 2 (Feb. 24, 2014), *available at* http://www-
    odi.nhtsa.dot.gove/acms/cs/jaxrs/download/doc/UCM450663/RCDNN-14V047-3409.pdf.
    [14] *Id.* at 3-4.

28  [15] *Id.* at 4-5.

CLASS ACTION COMPLAINT

C.    **GM Waited until 2014 to Finally Order a Recall of the Defective Vehicles**

59.    After an analysis GM's Field Performance Review Committee and the Executive Action Decision Committee ("EFADC") finally ordered a recall of some of the Defective Vehicles on January 31, 2014.

60.    Initially, GM's EFADC ordered a recall of only the Chevrolet Cobalt and Pontiac G5 for model years 2005-2007.

61.    After additional analysis, the EFADC expanded the recall on February 24, 2014 to include the Chevrolet HHR and Pontiac Solstice for model years 2006 and 2007, the Saturn Ion for model years 2003-2007, and the Saturn Sky for model year 2007.

62.    GM provided dealers with notice of the recall on February 26, 2014 and March 4, 2014, and mailed letters to current owners on March 10 and March 11, 2014.

63.    According to GM, "the dealers are to replace the ignition switch,"[16] presumably with one with sufficient torque to prevent the inadvertent shut down of the ignition, power steering, power brakes, and airbags.

64.    In a video message addressed to GM employees on March 17, 2014, CEO Mary Barra admitted that the Company had made mistakes and needed to change its processes.

65.    According to Ms. Barra, "Something went wrong in our processes in this instance, and terrible things happened."  Barra continued to promise, "We will be better because of this tragic situation if we seize this opportunity."[17]

---

[16] *Id.* at 6.
[17] *Something Went "Very Wrong" at G.M., Chief Says,*  N.Y. TIMES (Mar. 18, 2014).

CLASS ACTION COMPLAINT

66.   GM now faces an investigation by NHTSA, hearings in both the U.S. House and Senate, and a probe by the Department of Justice.  GM has been ordered to turn over its internal documents, and CEO Mary Barra testified before the Senate and House in early April 2014.

67.   While GM has now appointed a new Vehicle Safety Chief and laid off two engineers, millions of Defective Vehicles remain on the road to this day; and, upon information and belief, other vehicles not yet acknowledged by GM also have the deadly ignition switch defect.

### D.   Old GM Promoted the Defective Vehicles as Safe and Reliable

68.   On information and belief, Old GM consistently promoted the Defective Vehicles as safe and reliable in marketing and advertising materials.

69.   For example, a Cobalt ad promised that "Side curtain airbags coupled with OnStar makes every journey the safest possible to assure that you and your occupants will stay safe at all times."

70.   An ad for the 2006 Solstice promises that the vehicle "[b]rings power and defines performance."

71.   A 2003 television spot for the Saturn vehicle closed with the tagline "Specifically engineered for whatever is next."  Another 2003 spot closed with the tagline "Saturn.  People first."

72.   A 2001 print ad touting the launch of the Saturn focused on safety:

> Need is where you begin.  In cars, it's about things
> like reliability, durability and, of course, safety.
> That's where we started when developing our new

CLASS ACTION COMPLAINT

line of cars.  And it wasn't until we were satisfied

that we added things . . . .

73.    Old GM made these representations to boost vehicle sales and maximize profits while knowing that the ignition switches in the Defective Vehicles were defective.

74.    Throughout the relevant period, Old GM possessed knowledge and information vastly superior to that of consumers – if not exclusive information – about the design and function of the ignition switches in the Defective Vehicles and the existence of the defects in those vehicles.

75.    Old GM never informed consumers, the public, Plaintiff or Class members about the ignition switch defects.

**E.    The Ignition Switch Defects have Harmed Plaintiff and the Class**

76.    The ignition switch defects have caused damage to Plaintiff and the Class.

77.    A vehicle purchased, leased, or retained with a serious safety defect is worth less than the equivalent vehicle leased, purchased, or retained without the defect.

78.    A vehicle purchased, leased, or retained under the reasonable assumption that it is safe is worth more than a vehicle known to be subject to the unreasonable risk of catastrophic accident because of the ignition switch defects.

79.    Purchasers and lessees paid more for the Defective Vehicles, through a higher purchase price or higher lease payments, than they would have had the ignition switch defects been disclosed.  Plaintiff and the Class overpaid for their Defective Vehicles and are unable to resell them for what they paid.  This loss is due to the concealed ignition switch defects.  Plaintiff

16

1    did not and now cannot realize any profit on the purchase of these vehicles
2    and is unable to sell them.

3        80.    Plaintiff and the Class are stuck with unsafe, tainted vehicles that
4    are now worth less than they would have been but for GM's failure to
5    disclose the ignition switch defects.

6        81.    GM admits to a least thirteen deaths resulting from accidents
7    linked to the ignition switch defects in the Defective Vehicles.  However,
8    Plaintiff believes that the actual number is much higher, and that there may be
9    hundreds of deaths and injuries attributable to the ignition switch defects.

10        82.    If Old GM or GM had timely disclosed and repaired the ignition
11    switch defects as required by the CLRA, TREAD Act, the Common Law, and
12    Lemon Law, all Class members' vehicles would now be worth more.

14        ## V.    SUCCESSOR LIABILITY

15        83.    As discussed above, GM expressly assumed certain obligations
16    under, inter alia, the TREAD Act, and is liable for its non-disclosure of the
17    ignition switch defects from the date of its formation on July 10, 2009.

18        84.    GM also expressly assumed liability for Lemon Law claims in
19    the Master Sale and Purchase Agreement of June 26, 2009.

20        85.    GM has successor liability for Old GM's acts and omissions in
21    the marketing and sale of the Defective Vehicles because it has continued the
22    business enterprise of Old GM and for the following reasons:

23            a. GM admits that it knew of the ignition system defects from
24                the very date of its formation;
25            b. GM has continued in the business of designing,
26                manufacturing, and marketing vehicles, including at least
27                some of the same vehicles as Old GM;
28            c. GM retained the bulk of the employees of Old GM;

17

Case 2:14-cv-05236-JFW-FFM   Document 1   Filed 07/07/14   Page 19 of 38   Page ID #:19

d.   GM acquired, owned, and leased real property of Old GM, including all machinery, equipment, tools, information technology, product inventory, and intellectual property;

e.   GM acquired the contracts, books, and records of Old GM; and

f.   GM acquired all goodwill and other intangible personal property of Old GM.

## VI.   TOLLING OF THE STATUTES OF LIMITATION

86.   All applicable statutes of limitation have been tolled by GM's knowing and active fraudulent concealment and denial of the facts alleged herein.  Plaintiff and Class members did not discover, and did not know of material facts that would have caused a reasonable person to suspect, that Old GM and GM did not report information within their knowledge to federal authorities (NHTSA) purchasers or consumers, nor would a reasonable and diligent investigation have disclosed that Old GM and GM had information in their possession about the existence and dangerousness of the defect and that they opted to conceal that information until shortly before this Class action was filed.

87.   Indeed, Old GM instructed its service shops to provide Defective Vehicle owners with a new key ring if they complained about unintended shut down, rather than admit what Old GM already knew – that the ignition switches were dangerously defective and warranted replacement with a properly designed and built ignition system.

88.   Old GM and GM were, and GM remains, under a continuing duty to disclose to NHTSA, Plaintiff, and the Class" the true character, quality, and nature of the Defective Vehicles; that this defect is based on dangerous, inadequate, and defective design and/or substandard materials;

18

CLASS ACTION COMPLAINT

1    and that the defect will require repair, poses a severe safety concern, and

2    diminishes the value of the Defective Vehicles.

3        89.    Because of the active concealment by Old GM and GM, any and

4    all limitations periods otherwise applicable to Plaintiff's claims have been

5    tolled.

6

7                    **VII.   CLASS ALLEGATIONS**

8        90.    Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of

9    Civil Procedure, Plaintiff brings this action individually and on behalf of a

10   Class initially defined as follows:

11              All persons in the United States who currently own or

12              lease one or more of the following GM vehicles:  2003-

13              2007 Saturn Ion; 2005-2010 Chevrolet Cobalt; 2007-2010

14              Pontiac G5; 2006-2011 Chevrolet HHR; 2006-2010

15              Pontiac Solstice; 2007-2010 Saturn Sky; Buick Lacrosse

16              (2005-2009 model years); Buick Lucerne (2006-2011

17              model years); Buick Regal LS (2004-2005 model years);

18              Buick Regal RS (2004-2005 model years); Chevrolet

19              Impala (2000-2014 model years); Chevrolet Monte Carlo

20              (2000-2008 model years); Chevrolet Malibu 1997-2005

21              model years); Oldsmobile Intrigue (1998-2002 model

22              years); Oldsmobile Alero (1999-2004 model years);

23              Pontiac Grand Am (1999-2005 model years); Pontiac

24              Grand Prix (2004-2008 model years); Cadillac CTS (2003-

25              2014 model years); Cadillac SRX (2004-2006 model

26              years); Cadillac DeVille (2000-2005 model years); and

27              Cadillac DTS (2004-2011 model years) (the "Defective

28              Vehicles").  This list will be supplemented to include other

                              19

Case 2:14-cv-09238    Document 1    Filed 07/07/14    Page 21 of 38    Page ID #:21

> GM vehicles that have the defective ignition switches, which inadvertently turn off the engine and vehicle electrical systems during ordinary driving conditions.

91.    Excluded from the Class are GM, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons. Also excluded are any individuals claiming damages from personal injuries allegedly arising from the Defective Vehicles.

92.    The Defective Vehicles include at least the following models: Chevrolet Cobalt (2005-10 model years); Chevrolet HHR (2006-2011 model years); Pontiac G5 (2006-2010 model years); Pontiac Solstice (2006-2010 model years); Saturn Ions (2003-2007 model years); Saturn Sky (2007-2010 model years); Buick Lacrosse (2005-2009 model years); Buick Lucerne (2006-2011 model years); Buick Regal LS (2004-2005 model years); Buick Regal RS (2004-2005 model years); Chevrolet Impala (2000-2014 model years); Chevrolet Monte Carlo (2000-2008 model years); Chevrolet Malibu 1997-2005 model years); Oldsmobile Intrigue (1998-2002 model years); Oldsmobile Alero (1999-2004 model years); Pontiac Grand Am (1999-2005 model years); Pontiac Grand Prix (2004-2008 model years); Cadillac CTS (2003-2014 model years); Cadillac SRX (2004-2006 model years); Cadillac DeVille (2000-2005 model years); and Cadillac DTS (2004-2011 model years).

93.    Plaintiff is informed and believes that Old GM manufactured and sold to consumers millions of the Defective Vehicles nationwide. Individual joinder of all Class members is impracticable.

CLASS ACTION COMPLAINT

Case 2:14-cv-09238    Document 1    Filed 07/07/14    Page 22 of 38    Page ID #:22

94.    The Class expressly disclaims any recovery for physical injury resulting from the ignition switch defects.  But the increased risk of injury and death from the ignition switch defects serves as an independent justification for the relief sought by Plaintiff and the Class.

95.    The Class can be readily identified using registration records, sales records, production records, and other information kept by GM or third parties in the usual course of business and within their control.

96.    Questions of law and fact are common to the Class members and predominate over questions affecting only individual members, including the following:

    a.    Whether the Defective Vehicles suffer from ignition switch defects;

    b.    Whether Old GM and GM concealed the defects;

    c.    Whether Old GM and GM misrepresented that the Defective Vehicles were safe;

    d.    Whether Old GM and GM engaged in fraudulent concealment;

    e.    Whether Old GM and GM engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective ignition switches;

    f.    Whether the alleged conduct by GM violated laws as Plaintiff alleges;

    g.    Whether Old GM's and GM's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class;

CLASS ACTION COMPLAINT

Case 2:14-cv-09238-JGB-DSC   Document 1   Filed 07/07/14   Page 26 of 181   Page ID #:26

h. Whether GM violated the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq.);

i. Whether GM violated the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.);

j. Whether GM violated the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.)

k. Whether Plaintiff and the members of the Class are entitled to equitable and/or injunctive relief; and

l. Whether, and to what extent, GM has successor liability for the acts and omissions of Old GM.

97.   Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by GM and Old GM.  The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

98.   Plaintiff will fairly and adequately represent and protect the interests of all absent Class members.  Plaintiff is represented by counsel competent and experienced in product liability, vehicle defect, consumer protection, and class action litigation.

99.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the individual Class members is impracticable.  Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

100.   The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of

22

Case 2:14-cv-09238   Document 1   Filed 07/07/14   Page 24 of 38   Page ID #:24

conduct for GM. The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

101.   Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Plaintiff anticipates providing appropriate notice to be approved by the Court after discovery into the size and nature of the Class.

## VIII.  CAUSES OF ACTION

## COUNT I

### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT

#### (CAL. CIV. CODE § 1750, *et seq.*)

102.   Plaintiff and the Class re-allege and incorporate by reference previous allegations as though fully set forth at length herein.

103.   GM participated in unfair or deceptive acts or practices that violated the Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, et seq., as described above and below. GM is directly liable for these violations of law.

104.   By failing to disclose and actively concealing the defects as alleged, by misrepresenting its vehicles as safe, reliable, dependable, and of high quality and by selling vehicles while violating the TREAD Act, GM engaged in deceptive business practices prohibited by the CLRA, CAL. CIV. CODE § 1750, et seq., including (1) representing that GM vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that GM vehicles are of a particular standard, quality, and grade when they are not, (3) advertising GM vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving GM vehicles confers or involves rights, remedies, and obligations which it does not, (5)

23

representing that the subject of a transaction involving GM vehicles has been supplied in accordance with a previous representation when it has not; and (6) selling vehicles in violation of the TREAD Act.

105. As alleged above, GM made numerous material statements about the quality, safety and reliability of GM vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of GM's unlawful advertising and representations as a whole.

106. GM knew that the Defective Vehicles were not suitable for their intended use but nevertheless failed to warn Consumer Plaintiffs about these inherent dangers despite having a duty to do so.

107. A reasonable consumer would not have paid as much as he or she did for a GM vehicle if GM had disclosed the defects about which GM was aware.

108. GM owed Plaintiffs and the class a duty to disclose the defective nature of GM vehicles because they:

       a. Possessed exclusive knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

       b. Intentionally concealed the hazardous situation with the Defective Vehicles through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from Plaintiffs and the class and/or

       c. Made incomplete representations about the quality, safety and reliability of GM vehicles generally, while purposefully withholding material facts from Plaintiffs and the class that contradicted these representations.

109. The Defective Vehicles pose an unreasonable risk of death or serious bodily injury to Plaintiffs and the class, passengers, other motorists,

Case 2:14-cv-05238-JSW    Document 1    Filed 07/07/14    Page 26 of 38    Page ID #:26

pedestrians, and the public at large, because they are susceptible to dangerous and life-threatening incidents as alleged above.

110.    GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the class, about the true safety and reliability of Defective Vehicles.

111.    As a result of its violations of the CLRA detailed above, GM caused actual damage to Plaintiffs and the class, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period have owned or leased, Defective Vehicles that are defective and inherently unsafe. These defects have caused the value of GM vehicles to decrease.

112.    Consumer Plaintiffs risk irreparable injury as a result of GM's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs and the class, as well as to the general public.

113.    Upon information and belief, GM has previously received notice in compliance with CAL. CIV. CODE § 1782.  Over thirty days have since passed without GM taking, or agreeing to take, the appropriate corrective measures.

114.    Pursuant to CAL. CIV. CODE § 1780(a), Consumer Plaintiffs seek monetary relief against GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Plaintiff and each member of the class they seek to represent.

115.    Pursuant to CAL. CIV. CODE § 1780(b), Plaintiffs seek an additional award against GM of up to $5,000 for each Plaintiff and class member who qualifies as a "senior citizen" or "disabled person" under the CLRA. GM knew or should have known that its conduct was directed to one or more of the Plaintiffs who are senior citizens or disabled persons. GM's conduct caused one or more of these senior citizens or disabled persons to

25

suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more of the class members who are senior citizens or disabled persons are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them actually suffered substantial physical, emotional, or economic damage resulting from Defendant's conduct.

116. Plaintiffs also seek punitive damages against Defendant because each carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendant intentionally and willfully misrepresented the safety and reliability of GM vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the GM vehicles it repeatedly promised Plaintiffs were safe. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

117. Consumer Plaintiffs further seek an order enjoining Defendant's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under CAL. CIV. CODE § 1780(e), and any other just and proper relief available under the CLRA.

## COUNT II

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200, *et seq.*)

118. Plaintiff and the Class re-allege and incorporate by reference previous allegations as though fully set forth at length herein.

CLASS ACTION COMPLAINT

119.   Plaintiffs assert this claim on behalf of themselves and members of the class that purchased or leased a vehicle from GM or a GM dealership.

120.   California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Defendant has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

121.   Defendant has violated the unlawful prong of section 17200 by their violations of the Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, et seq., as set forth in Count I by the acts and practices set forth in this Complaint.

122.   Defendant has also violated the unlawful prong because GM has engaged in business acts or practices that are unlawful because they violate the National Traffic and Motor Vehicle Safety Act of 1996 (the "Safety Act"), codified at 49 U.S.C. § 30101, et seq., and its regulations.

123.   Defendant has violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

124.   Defendant has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with the defects alleged, failure to adequately investigate, disclose and remedy, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices.

125.   Defendant's conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs from making fully

CLASS ACTION COMPLAINT

1   informed decisions about whether to purchase or lease Defective Vehicles
2   and/or the price to be paid to purchase or lease Defective Vehicles.

3      126.   The Named Plaintiffs have suffered an injury in fact, including
4   the loss of money or property, as a result of Defendant's unfair, unlawful
5   and/or deceptive practices. As set forth in the allegations concerning each
6   plaintiff, in purchasing or leasing their vehicles, the Plaintiffs relied on the
7   misrepresentations and/or omissions of GM with respect to the quality, safety
8   and reliability of the vehicles. GM's representations turned out not to be true
9   because the vehicles can unexpectedly and dangerously experience ignition
10  switch failure as alleged. Had the Named Plaintiffs known this they would not
11  have purchased or leased their Defective Vehicles and/or paid as much for
12  them.

13     127.   All of the wrongful conduct alleged herein occurred, and
14  continues to occur, in the conduct of Defendant's business. Defendant's
15  wrongful conduct is part of a pattern or generalized course of conduct that is
16  still perpetuated and repeated, both in the State of California and nationwide.

17     128.   Plaintiffs request that this Court enter such orders or judgments
18  as may be necessary to enjoin Defendant from continuing their unfair,
19  unlawful, and/or deceptive practices and to restore to Plaintiffs and members
20  of the Class any money GM acquired by unfair competition, including
21  restitution and/or restitutionary disgorgement, as provided in CAL. BUS. &
22  PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other
23  relief set forth below.

24

25  ///

26  ///

27  ///

28

CLASS ACTION COMPLAINT

Case 2:14-cv-05238    Document 1    Filed 07/07/14    Page 31 of 38    Page ID #:30

# COUNT III

## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW

### (CAL. BUS. & PROF. CODE § 17500, *et seq.*)

129.   Plaintiff and the Class re-allege and incorporate by reference previous allegations as though fully set forth at length herein.

130.   Plaintiffs assert this claim on behalf of themselves and members of the class that purchased or leased a vehicle from GM or a GM dealership.

131.   California Business and Professions Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

132.   Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant to be untrue and misleading to consumers and Plaintiffs.

133.   Defendant has violated section 17500 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

134.   Named Plaintiffs and members of the class have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful and/or deceptive practices. In purchasing or

CLASS ACTION COMPLAINT

leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of GM with respect to the safety and reliability of the vehicles. GM's representations turned out not to be true because the vehicles because the vehicles can unexpectedly and dangerously experience ignition switch failure as alleged. Had the Plaintiffs known this, they would not have purchased or leased their GM vehicle and/or paid as much for it.

135.   Accordingly, the Plaintiffs overpaid for their GM vehicle and did not receive the benefit of their bargain. One way to partially measure this overpayment, or lost benefit of the bargain, at the moment of purchase is by the value consumers place on the vehicles now that the truth has been exposed. Both trade-in prices and auction prices for Defective Vehicles have declined as a result of Defendant's misconduct. This decline in value partially measures the overpayment, or lost benefit of the bargain, at the time of the Plaintiffs' purchase.

136.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

137.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the class any money GM acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

///

///

///

CLASS ACTION COMPLAINT

Case 2:14-cv-09238    Document 1    Filed 07/07/14    Page 32 of 38    Page ID #:32

**COUNT IV**

BREACH OF IMPLIED WARRANTY/STRICT LIABILITY

138.   Plaintiff and Class re-allege and incorporate by reference all previous allegations as though set forth at length herein.

139.   The Defective Vehicles were defective at the time they left GM's control and were not reasonably safe for the reasonably foreseeable uses to which they would be used.

140.   GM is in the business of manufacturing, designing, distributing, marketing, selling and/or supplying into the stream of commerce the Defective Vehicles.

141.   At the time GM designed, manufactured, marketed, sold, and/or distributed the Defective Vehicles, GM intended and impliedly warranted the product to be of merchantable quality and safe for such use.

142.   Plaintiff reasonably relied upon the skill and judgment of GM as to whether Defective Vehicles were of merchantable quality and safe for their intended use and upon GM's implied warranty as to such matters.

143.   GM breached its implied warranty in the design of Defective Vehicles such that the damages suffered by Plaintiff were foreseeable by GM; the likelihood of the occurrence of the damage suffered by Plaintiff was foreseeable by GM at the time it distributed Defective Vehicles; there was a reasonable alternative design available, and such alternative design was practicable and would have reduced the foreseeable risk of harm posed by GM's product; and the omission of the available and practicable reasonable alternative design rendered GM's product not reasonably safe for use by a consumer.

144.   GM breached its implied warranty in the manufacturing of Defective Vehicles such that the Defective Vehicles product was unreasonably dangerous, not fit for the ordinary purpose for which it was

31

intended, and not manufactured in such a way as to eliminate unreasonable risks of foreseeable injury. Furthermore, GM failed to make reasonable inspections or conduct adequate testing of Defective Vehicles. Despite knowing of the problems associated with the Defective Vehicles, GM took no action for over ten years to cure or disclose the defects.

145. GM breached its implied warranty in the labeling of Defective Vehicles such that GM knew or should have known that the products were unreasonably dangerous and created significant risks of serious harm and/or death, yet it failed to provide adequate warnings to consumers of such significant risks of serious harm and/or death.

146. The Defective Vehicles manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by GM were defective in their manufacture, construction, design, and labeling as described above at the time they left GM's control.

147. As a direct and proximate result of Plaintiff's purchase, use and ownership of Defective Vehicles as manufactured, designed, sold, supplied, and introduced into the stream of commerce by GM, Plaintiff has suffered harm, damages, and economic loss and will continue to suffer such harm, damages, and economic loss in the future.

148. The defects at issue herein were a legal and/or proximate cause of Plaintiff's harm, damages, and economic loss.

149. Plaintiff did not know that the Defective Vehicles were defective and dangerous until after purchase.

150. As a direct and proximate result of GM's conduct, Plaintiff and the Class members suffered the injuries and compensable damages in an amount to be determined at trial.

CLASS ACTION COMPLAINT

## COUNT V

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

151.  Plaintiff and Class re-allege and incorporates by reference all previous allegations as though fully set forth at length herein.

152.  GM knew at the time it sold vehicles to the Plaintiff that such vehicles would be used for the specific purpose of, among other things, providing safe transportation.

153.  GM knew at the time it manufactured and sold vehicles to the public, the Plaintiff, and the Class members that those individuals chose to buy their vehicles from GM at least in part because of the reputation of GM cars and trucks as safe vehicles with high resale value, as compared to cars and trucks manufactured by GM's competitors.

154.  GM knew that Plaintiff and the Class members were relying on GM's skill and judgment in manufacturing vehicles that were purportedly suitable for providing safe transportation and that enjoyed high resale value, as compared to cars and trucks manufactured by GM's competitors.

155.  Defendant GM breached the implied warranty of fitness for a particular purpose because the Defective Vehicles contained an unreasonably dangerous condition and were not suitable for providing safe transportation. Likewise, the unreasonably dangerous condition of the vehicles has resulted in a substantial diminishment in the resale value of those vehicles.

156.  As a direct and proximate result of GM's conduct, Plaintiff and the Class members suffered injuries and compensable damages in an amount to be set forth at trial.

///

///

## CLASS ACTION COMPLAINT

**COUNT VI**

FRAUDULENT CONCEALMENT

157.  Plaintiff and the Class re-allege and incorporate by reference previous allegations as though fully set forth at length herein.

158.  This claim is brought on behalf of the nationwide Class of Plaintiffs.

159.  GM concealed and suppressed material facts concerning the ignition switch defects, and GM also has successor liability for the acts of concealment and suppression of material facts by oppression of Old GM as set forth above.

160.  The Defendant had a duty to disclose the ignition switch defects because they were known and/or accessible only to the Defendant who had superior knowledge and access to the facts, and the Defendant knew they were not known to or reasonably discoverable by Plaintiff and the Class. These omitted and concealed facts were material because they directly impact the safety of the defective vehicles.  Whether an ignition switch was designed and manufactured with appropriate safeguards is a material safety concern.

161.  The Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and avoid a costly recall, and they did so at the expense of Plaintiff and the Class.

162.  On information and belief, GM has still not made full and adequate disclosure and continues to defraud Plaintiff and the Class and conceal material information regarding the defects that exist in the defective vehicles and other GM vehicles.

163.  Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiff's and the Class's actions were justified.

CLASS ACTION COMPLAINT

1    Defendant was in exclusive control of the material facts and such facts were
2    not known to the public, regulators, Plaintiff, or the Class.

3        164.   Because of the concealment and/or suppression of material facts,
4    Plaintiff and the Class sustained damage because they purchased and retained
5    vehicles that are now diminished in value from what they would have been
6    had the Companies timely disclosed the ignition switch defects.

7        165.   The Companies' acts were done maliciously, oppressively,
8    deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and
9    the Class's rights and well-being to enrich the Companies.  The Companies'
10   conduct warrants an assessment of punitive damages in an amount sufficient
11   to deter such conduct in the future, in an amount to be determined according
12   to proof at trial.

13

14                            **COUNT VII**
15                   RESTITUTION/UNJUST ENRICHMENT

16       166.   Plaintiff and the Class re-allege and incorporate by reference all
17   previous allegations as though fully set forth at length herein.

18       167.   This claim is brought on behalf of the National Class.

19       168.   As a result of GM's wrongful conduct as described herein, GM
20   was enriched, at the expense of Plaintiffs and the Class, through the receipt of
21   money from the purchase, sale and/or lease of the defective vehicles as
22   described herein.

23       169.   Under these circumstances, it would be against equity and good
24   conscience to permit GM to retain the ill-gotten monies that it received from
25   Plaintiffs and the other members of the proposed Classes.  Because the
26   Defective Vehicles were not safe and reliable as represented by GM, it would
27   be unjust and inequitable for GM to retain the benefit of enrichment through
28   the sale of a known defective vehicle.  Plaintiff and the other members of the

                              35

1  proposed Class seek restitution for the monies received by GM for the sale or

2  lease of the defective vehicles.

3

4  ## PRAYER FOR RELIEF

5       WHEREFORE, Plaintiff, individually and on behalf of all others

6  similarly situated, respectfully requests that this Court enter a judgment

7  against GM and in favor of Plaintiff and the Class, and grant the following

8  relief:

9       A.      Determine that this action may be maintained as a Class action

10  and certify it as such under Rule 23(b)(3), or alternatively certify all issues

11  and claims that are appropriately certified; and designate and appoint Plaintiff

12  as Class Representative and Plaintiff's chosen counsel as Class Counsel;

13       B.      Declare, adjudge, and decree the conduct of GM as alleged

14  herein to be unlawful, unfair and/or deceptive, and enjoin any such future

15  conduct;

16       C.      Award Plaintiff and the Class members actual, compensatory

17  damages, or, in the alternative, statutory damages, as proven at trial;

18       D.      Alternatively, if elected by Plaintiff and the Class, require GM to

19  repair the defective ignition switches or provide a comparable vehicle that

20  does not have ignition switch defects;

21       E.      Award Plaintiff and Class members restitution of all monies paid

22  to Old GM because of GM's violation of the CLRA, the lemon laws, equity

23  and the common law;

24       F.      Award Plaintiff and the Class members exemplary damages in

25  such amount as proven;

26       G.      Award Plaintiff and the Class members their reasonable

27  attorneys' fees, costs, and pre-judgment and post-judgment interest; and

28

---

36

CLASS ACTION COMPLAINT

H.      Award Plaintiff and the Class members such other further and different legal or equitable relief as the case and the proof may require or as is determined to be just, equitable, and proper by this Court.

Dated: July 7, 2014                    SIMMONS HANLY CONROY

By: _____
                                       Deborah R. Rosenthal

### JURY TRIAL DEMAND

Plaintiff requests a trial by jury on the legal claims, as set forth herein.

Dated: July 7, 2014                    SIMMONS HANLY CONROY

By: _____
                                       Deborah R. Rosenthal
                                       *Attorneys for Plaintiffs*

*Applications *Pro Hac Vice* to be Submitted

Jayne Conroy*
jconroy@simmonsfirm.com
Paul J. Hanly, Jr.*
phanly@simmonsfirm.com
Andrea Bierstein*
abierstein@simmonsfirm.com
Mitchell M. Breit*
mbreit@simmonsfirm.com
SIMMONS HANLY CONROY
112 Madison Avenue
New York, New York  10016-7416
Phone: (212) 784-6400
Fax:    (212) 213-5949

CLASS ACTION COMPLAINT