KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                 :        Chapter 11
                                                      :
MOTORS LIQUIDATION COMPANY, *et al.*,    :        Case No.: 09-50026 (REG)
            f/k/a General Motors Corp., *et al.*       :
                                                      :
                                    Debtors.     :        (Jointly Administered)
-------------------------------------------------------------x

## NOTICE OF FILING OF FIFTH SUPPLEMENT TO SCHEDULE "2" TO THE MOTION OF GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION

**PLEASE TAKE NOTICE** that on July 21, 2014, General Motors LLC filed the

attached *Fifth Supplement to Schedule "2" to the Motion of General Motors LLC Pursuant to 11*

*U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* with the

United States Bankruptcy Court for the Southern District of New York.

Dated:  New York, New York
          July 21, 2014

                                        Respectfully submitted,

                                        /s/ Scott I. Davidson
                                        Arthur Steinberg
                                        Scott Davidson
                                        KING & SPALDING LLP
                                        1185 Avenue of the Americas
                                        New York, New York  10036
                                        Telephone:  (212) 556-2100
                                        Facsimile:  (212) 556-2222

                                        Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                                        Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                                        KIRKLAND & ELLIS LLP
                                        300 North LaSalle
                                        Chicago, IL 60654
                                        Telephone: (312) 862-2000
                                        Facsimile: (312) 862-2200

                                        *Attorneys for General Motors LLC*

**FIFTH SUPPLEMENT[1] TO SCHEDULE "2"**

**SAMPLE ALLEGATIONS/CAUSES OF ACTION IN IGNITION SWITCH
COMPLAINTS FILED AFTER THE FILING OF NEW GM'S
FOURTH SUPPLEMENT TO SCHEDULE "2" TO MOTION TO ENFORCE[2]**

| Lead Plaintiff | Allegations |
|---|---|
| Corbett | "Because Defendant acquired and operated Old GM and ran it as a continuing business enterprise, and because Defendant was aware from its inception of the ignition switch defects in the Defective Vehicles, Defendant is liable independently and through successor liability for the improper acts and omissions of Old GM, as alleged in this Complaint." Compl., ¶ 7.<br><br>"Since at least 2003, Defendant has sold millions of vehicles throughout the United States (including North Carolina) and worldwide that have a safety defect causing the vehicle's ignition switch to inadvertently move from the 'run' position to the 'accessory' or 'off' position during ordinary driving conditions, resulting in a loss of power, vehicle speed control, and braking, as well as a failure of the vehicle's airbags to deploy." Compl., ¶ 16.<br><br>"GM's predecessor, General Motors Corporation ("Old GM") (sometimes, together with GM, 'the Companies') violated its obligations and duties by designing and marketing vehicles with defective ignition switch systems . . ." Compl., ¶ 25.\<br><br>"Plaintiff Corbett purchased and owns a 2006 Pontiac Solstice and Plaintiffs Barnes purchased and own a 2009 Chevrolet Cobalt, both of which are, upon information and belief, Defective Vehicles." Compl., ¶ 31.<br><br>"Plaintiffs and the Class were also damaged by the acts and omissions of Old GM for which GM is liable through successor liability because the Defective Vehicles they purchased are worth less than they would have been without the ignition switch defects." Compl., ¶ 39.<br><br>"Plaintiffs and the Class either paid more for the Defective Vehicles than they would have had they known of the ignition switch defects, or they would not have purchased the Defective Vehicles at all had they known of the defects." Compl., ¶ 40. |

---

[1]   This schedule supplements the Fourth Supplement to Schedule "2" [Dkt. No. 12723] ("**Fourth Supplement to Schedule 2**") filed with the Bankruptcy Court on June 13, 2014, the Third Supplement to Schedule "2" [Dkt. No. 12720] filed with the Bankruptcy Court on June 2, 2014, the Second Supplement to Schedule "2" [Dkt. No. 12699] filed with the Bankruptcy Court on May 19, 2014, the Supplement to Schedule "2" [Dkt. No. 12672-8] filed with the Bankruptcy Court on April 30, 2014, and Schedule "2" [Dkt. No. 12620-2] filed with the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* on April 21, 2014 [Dkt. No. 12620].

[2]   Due to space limitations, this chart contains only a ***sample*** of statements, allegations and/or causes of action contained in complaints filed in the Ignition Switch Actions after the filing of the Fourth Supplement to Schedule 2. This chart does ***not*** contain ***all*** statements, allegations and/or causes of action that New GM believes violates the provisions of the Court's Sale Order and Injunction and the MSPA.

| | |
|---|---|
| | "On information and belief, in marketing and advertising materials, Old GM and GM consistently promoted all their vehicles, including the Defective Vehicles, as safe and reliable." Compl., ¶ 86. |
| | "Because Defendant acquired and operated Old GM and ran it as a continuing business enterprise, and because Defendant was aware from its inception of the ignition switch defects in the Defective Vehicles, Defendant is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint." Compl., ¶ 106. |
| | "In addition to the liabilities of Old GM that Defendant expressly assumed and retained through the bankruptcy as detailed above, GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM . . ." Compl., ¶ 107. |
| | Class questions include (i) "[w]hether Defendant breached the implied warranty of merchantability;" (ii) "[w]hether Defendant breached the implied warranty of fitness for a particular purpose;"   (iii) "[w]hether Defendant breached express warranties;" (iv) "[w]hether Defendant made negligent misrepresentations to induce the purchases of the Defective Vehicles;" and (v) "[w] hether Defendant is liable for a design defect[.]" Compl., ¶ 117. |
| | "Defendant designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofit or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the Defective Vehicles and their component parts and constituents, which was intended by Defendant to be used as passenger vehicles and for other related activities." Compl., ¶ 125. |
| | The First Claim for Relief is based on "Negligence-Design Defect." |
| | The Third Claim for Relief is based on "Breach of Implied Warranty of Merchantability." |
| | The Fourth Claim for Relief is based on "Breach of Implied Warranties of Fitness for a Particular Purpose." |
| | The Fifth Claim for Relief is based on "Breach of Express Warranties." |
| Ibanez | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 12. |
| | "Plaintiff and the Class also were damaged by the acts and omissions of Old GM, for which GM is liable through successor liability, because the Defective Vehicles they purchased are worth less than they would have been without the ignition switch defects." Compl., ¶ 25. |
| | "Because GM acquired and operated Old GM and ran it as a continuing business |

| | |
|---|---|
| | enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint." Compl., ¶ 33. |
| | "On information and belief, Old GM consistently promoted the Defective Vehicles as safe and reliable in marketing and advertising materials." Compl., ¶ 68. |
| | Paragraphs 70 to 72 of the Complaint reference Old GM advertisements from 2001 through 2006. |
| | "GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM . . . ." Compl., ¶ 85. |
| | "A reasonable consumer would not have paid as much as he or she did for a GM vehicle if GM had disclosed the defects about which GM was aware." Compl., ¶ 107. |
| | "Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant to be untrue and misleading to consumers and Plaintiffs." Compl., ¶ 132. |
| | "At the time GM designed, manufactured, marketed, sold, and/or distributed the Defective Vehicles, GM intended and impliedly warranted the product to be of merchantable quality and safe for such use." Compl., ¶ 141. |
| | "The Defective Vehicles manufactured, designed, sold, distributed, supplied, and/or placed in the stream of commerce by GM were defective in their manufacture, construction, design, and labeling as described above at the time they left GM's control." Compl., ¶ 146. |
| | Count IV is based on "Breach of Implied Warranty/Strict Liability." |
| | Count V is based on "Breach of Implied Warranty of Fitness for a Particular Purpose." |
| Johnson | Named Plaintiff owns a 2007 Chevrolet Cobalt. Compl., ¶ 11. |
| | Paragraphs 14 through 22 allege events that took place between 2001 and 2007. |
| | "GM has successor liability for Old GM's actions and omissions regarding the ignition switch defect and the sale and manufacture of defective vehicles because it continued the business operations of Old GM . . ." Compl., ¶ 43. |
| | "These material facts directly impacted the safety of the vehicles put into production and sold by GM." Compl., ¶ 51. |
| | "Had Plaintiff known or been aware of the defective design, Plaintiff would not have purchased the vehicles." Compl., ¶ 53. |
| | "Because Plaintiff was unaware of the defective design, Plaintiff suffered damages in the forms of, but not limited to, injury and the purchase of a vehicle that now has diminished |

| | |
|---|---|
| | value." Compl., ¶ 54. |
| | Count II is for "Breach of Implied Contract." |
| | Count III is for **"Breach of Implied Warranty of Merchantability."** |
| | "GM's vehicles were sold with the implied purpose of providing safe transportation for drivers and passengers and cannot be used for this purpose because of the faulty ignition switch." Compl., ¶ 72. |
| | Count IV is for **"Breach of the Implied Warranty of Fitness for a Particular Purpose."** |
| | "GM breached its implied warranty of fitness for a particular purpose because the vehicles it sold to Plaintiff were not fit for their intended purpose . . ." Compl., ¶ 80. |
| | Count V is titled **"Mississippi Tort Claim (Mississippi Code § 11-1-63)."** |
| | "GM has placed designed, manufactured, sold, or otherwise placed into the stream of commerce defective vehicles . . . ." Compl., ¶ 83. |
| | "GM breached an express warranty of providing safe vehicles that Plaintiff justifiably relied on when they purchased and elected to use the vehicles GM manufactured, sold, or otherwise placed into the stream of commerce." Compl., ¶ 87. |
| Kandziora | "Upon information and belief, General Motors Corporation underwent bankruptcy in 2009 and General Motors LLC assumed responsibility for General Motors Corporation liabilities; as demonstrated by the fact that General Motors LLC has initiated a recall of defective vehicles which includes vehicles manufactured and sold prior to 2009, General Motors LLC is legally responsible for those vehicles still on the road and recognizes that it is responsible for those vehicles despite General Motors Corporation's bankruptcy." Compl., ¶ 3. |
| | "Under [the Amended and Restated Master Sale and Purchase Agreement], the defendant, General Motors LLC, assumed liabilities of General Motors Corporation; that the claims alleged herein fall within the liabilities assumed pursuant to said Agreement." Compl., ¶ 6. |
| | "GM designed, manufactured and sold the Chevrolet Cobalt from 2005 to 2010, including the 2010 Chevrolet Cobalt purchased by the Plaintiff; all Chevrolet Cobalts, including the Plaintiffs 2010 Chevrolet Cobalt, contain the same safety defects." Compl., ¶ 12. |
| | Upon information and belief more than five years before the Plaintiff purchased her 2010 Chevrolet Cobalt, GM knew about the safety defects in the Chevrolet Cobalt, and did nothing to recall or fully remedy the defects or warn drivers about said defects." Compl., ¶ 13. |
| | Paragraphs 14 through 30 allege events that took place between 2001 and 2005. |

| Kluessendorf | "GM and its predecessor advertised and promoted its vehicles to be safe and reliable since 2001 . . . ." Compl., ¶ 16. |
| --- | --- |
| | "An automobile leased or purchased under the reasonable assumption that it is 'safe' as advertised is worth more than a car . . . that is known to be subject to the risk of a [defective ignition switch]." Compl., ¶ 17. |
| | "GM's predecessor, General Motors Corporation ("GM Corp.") also violated disclosure requirements by designing and marketing vehicles with defective ignition switches . . ." Compl., ¶ 19. |
| | "Plaintiff and the Class were also damaged by the acts and omissions of GM Corp. for which GM is liable through successor liability because the DIS Models they purchased are worth less than they would have been without the ignition switch defects." Compl., ¶ 21. |
| | "Had [Plaintiff] known of the [defective ignition switch] defect, she would not have bought the 2009 Chevrolet Cobalt or she would not have paid as much for it." Compl., ¶ 25. |
| | "Because GM acquired and operated GM Corp. and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the DIS Models, GM is liable through successor liability for the deceptive and unfair acts and omissions of GM Corp., as alleged in this Complaint." Compl., ¶ 29. |
| | Paragraph 37 of the Complaint references Old GM advertisements from 2003 through 2007. |
| | Paragraphs 39 through 44, 47 through 51, and 53 through 56 allege events that took place between 2001 and 2006. |
| | "GM also expressly assumed liability for warranty claims in the Master Sale and Purchase Agreement of June 26, 2009, and this assumption of liability includes the Classes' claims pursuant to Minnesota and other state statutes." Compl., ¶ 86. |
| | "Moreover, GM has successor liability for GM Corp.'s acts and omissions in the marketing and sale of the DIS Models during the Class Period because GM has continued the business enterprise of GM Corp. . . ." Compl., ¶ 87. |
| | The Second Claim is based on "Breach of Express Warranty." |
| | The Third Claim is based on "Breach of Implied Warranty of Merchantability." |
| | The Complaint alleges that "there were dangerous defects in the DIS Models manufactured, distributed, and sold by Defendant GM . . . ." Compl., ¶ 120. |
| | The Fourth Claim is based on "Common Law Breach of Contract and Breach of Warranty." |

| Turpyn | Plaintiffs bring "this action against Defendant General Motors LLC and its predecessor in interest General Motors Corporation ('GM' or 'General Motors') . . . ."  Compl., p.1. |
| --- | --- |
| | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of General Motors Corporation ('Old GM') because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects."  Compl., ¶ 24. |
| | "Plaintiff and the Class also were damaged by the acts and omissions of Old GM, for which GM is liable through successor liability, because the Defective Vehicles they purchased are worth less than they would have been without the ignition switch defects."  Compl., ¶ 25. |
| | "Plaintiff and the Class either paid more for the Defective Vehicles than they would have had they known of the ignition defects or they would not have purchased the Defective Vehicles at all."  Compl., ¶ 26. |
| | "Had Old GM disclosed the ignition switch defects, Plaintiffs would not have purchased this vehicle [a 2006 Chevrolet HHR]." Compl., ¶ 31. |
| | "Richard Turpyn purchased the Defective Vehicle for his wife, Janet Turpyn, from a dealer in 2007. The Turpyn's Chevrolet HHR was manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl., ¶ 32. |
| | "Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint."  Compl., ¶ 36. |
| | The complaint contains numerous references to events that took place prior to the closing of the 363 Sale.  *See, e.g.,*  Compl., ¶¶ 53-63, 113-115. |
| | "GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM . . . ."  Compl., ¶ 141. |
| | A class question includes "[w]hether, and to what extent, GM has successor liability for the acts and omissions of Old GM."  Compl., ¶ 156(r). |
| | "The sale of the Defective Vehicles to Plaintiffs and the Class occurred within 'trade and commerce' within the meaning of Mich. Comp. L. Ann. § 445.902(d), and both GM and Old GM committed deceptive and unfair acts in the conduct of 'trade and commerce' as defined in that statutory section. Compl., ¶ 165. |
| | "As more fully described above, GM breached its express and implied warranties to Plaintiffs and the members of the Class . . . ."  Compl., ¶ 189. |
| | "GM has successor liability for the acts of concealment of Old GM as described above."  Compl., ¶ 198; *see also* ¶¶ 216, 233. |
| | Count VI contains a claim based on "breach of express warranty of merchantability. |

|  | Count Vii contains a claim based on "breach of implied warranties." |
|  | Count IX contains a claim based on "strict product liability." |