**Hearing Date and Time:  August 5, 2014 at 9:45 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re                                                          :        Chapter 11
                                                               :
MOTORS LIQUIDATION COMPANY, *et al.*,                          :        Case No.:  09-50026 (REG)
          f/k/a General Motors Corp., *et al.*                 :
                                                               :
                          Debtors.                             :        (Jointly Administered)
                                                               :
---------------------------------------------------------------x


# RESPONSE BY GENERAL MOTORS LLC TO
# NO STAY PLEADING FILED BY THE ELLIOTT PLAINTIFFS

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND RELEVANT TO RESPONSE ........................................................................3

    **A.**    **The Elliott Plaintiffs Were On Notice of the
Motion to Enforce Immediately Upon Its Filing**....................................................3

    **B.**    **The Elliott Plaintiffs' Initial Compliance with the Stay Procedures**.................4

    **C.**    **After Retaining Counsel, the Elliott Plaintiffs
Refused to Comply with the Stay Procedures** .......................................................6

    **D.**    **New GM is Forced to Seek Court Intervention to
Compel the Elliott Plaintiffs to Comply With the Stay Procedures**...................8

    **E.**    **The July Conference, and the Court's Denial of
the Relief Requested in the Phaneuf No Stay Pleading** ........................................9

    **F.**    **The Court Enjoins the Elliott Plaintiffs from Proceeding in
Their Ignition Switch Action, but Allows them to
File a Late No Stay Pleading** ...............................................................................11

RESPONSE .............................................................................................................................15

THE RELIEF REQUESTED IN THE ELLIOTT NO STAY PLEADING SHOULD BE
DENIED ...................................................................................................................................17

    **A.**    **The Elliott Plaintiffs' Claims Clearly
Implicate the Sale Order and Injunction**............................................................18

    **B.**    **The Elliott Plaintiffs' Arguments Are Subsumed in the
Old GM Claim Threshold Issues And Should Be Decided
Pursuant to the Court-Approved Procedures Regarding Same**.......................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995)..................................................................................................................15

*Stewart v. General Motors Corp.*,
    756 F.2d 1285 (7th Cir. 1985) .................................................................................................15

*Sunni, LLC v. Edible Arrangements, Inc.*,
    No. 14 Civ. 461 (KPF), 2014 WL 1226210 (S.D.N.Y. March 25, 2014)................................16

General Motors LLC ("**New GM**"), by its undersigned counsel, respectfully submits this response ("**Response**") to the "No Stay Pleading" ("**Elliott No Stay Pleading**") filed by the Plaintiffs ("**Elliott Plaintiffs**") in the Ignition Switch Action[1] filed by Lawrence and Celestine Elliott ("**Elliott Ignition Switch Action**"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      Contrary to the assertions in their No Stay Pleading, the Elliott Plaintiffs allege claims similar to those asserted by Plaintiffs in many other Ignition Switch Actions, including, for example, those alleged by the Phaneuf Plaintiffs (who were the only other Plaintiffs – out of 88 groups of Plaintiffs – to file a No Stay Pleading).[2]   The Elliott Plaintiffs are not uniquely situated; their issues are not unique; and their claims are no different from those of other plaintiffs whose cases are stayed, voluntarily or otherwise.   The Elliott Plaintiffs have, thus, failed to complete the "hail Mary" pass that they asserted they could at the July 2, 2014 Conference, and the relief requested by them should therefore be denied.

2.      Just like the claims alleged by the Phaneuf Plaintiffs, the claims alleged by the Elliott Plaintiffs ("**Elliott Claims**") are based on Old GM vehicles, and at least in part, on Old GM's conduct.   And, as the Court found with respect to the Phaneuf Plaintiffs' claims, the claims alleged by the Elliott Plaintiffs clearly implicate the Sale Order and Injunction and are thus subject to the injunction therein.

3.      The Elliott Plaintiffs contend otherwise; but that simply means this Court will ultimately need to determine the issue.   That determination should be made by this Court as part

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("**Motion to Enforce**"), dated April 21, 2014 [Dkt. No. 12620].

[2]   The relief requested by the Phaneuf Plaintiffs in their No Stay Pleading [Dkt. No. 12712] was denied by the Court on July 2, 2014.   *See* discussion, *infra*, at ¶¶ 29 to 31.   The Phaneuf Plaintiffs have filed a letter with the Court indicating their intention to appeal the Court's ruling.

of its determination of the Four Threshold Issues (as defined in the Court's July 11, 2014 Supplemental Scheduling Order ("**Supplemental Scheduling Order**")).    One of the Four Threshold Issues is identical to the one raised by the Elliott No Stay Pleading: specifically, "[w]hether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust)" ("**Old GM Claim Threshold Issue**"). Supplemental Scheduling Order, p. 3.  A briefing schedule has been established for the Old GM Claim Threshold Issue (and the other Threshold Issues), and that issue will be resolved in due course by this Court.  This is the orderly process the Court set forth in its May 16, 2014 Scheduling Order ("**Scheduling Order**"), as supplemental by the Supplemental Scheduling Order, the process recommended by Designated Counsel (as defined in the Scheduling Order) at the conferences held on May 2, 2014 ("**May Conference**") and July 2, 2014 ("**July Conference**"), and the process agreed to by *all but one other group of Plaintiffs in the 88 Ignition Switch Actions*.  The Court-approved procedures should govern the Elliott Plaintiffs and their claims.

4.     Despite the length of their No Stay Pleadings, the Elliott Plaintiffs make a critical admission that demonstrates why their request should be denied.    Specifically, the Elliott Plaintiffs acknowledge that their "claims do relate to 'pre-petition' vehicles" (Elliott No Stay Pleading, p. 27), but then assert that more is needed to conclude that such claims violated the Sale Order and Injunction.  That is true, but the more that is needed is whether the claims are based on the Glove Box Warranty (No), Lemon Law claims (No), or a post-363 Sale accident (No).  Since the claims do not fit in any of these categories of Assumed Liabilities, then, by definition, all claims relating to the Elliott Plaintiffs' Old GM vehicles are Retained Liabilities that the Elliott Plaintiffs are barred from pursuing under the Court's Sale Order and Injunction.

2

5.      The Elliott Plaintiffs further concede that this Court has a need for the "orderly disposition of the issues that the Court faces" and that "actions similar[ly] situated with respect to the claims that they assert must be treated similarly, and, in a consolidated proceeding like this, no one group should be permitted unfairly to 'jump ahead' of others."  Elliott No Stay Pleading, p. 6.  But "jump ahead" is exactly what the Elliott Plaintiffs are attempting to do through their No Stay Pleading.

6.      Simply put, there is no reason to overly-complicate the Court's determination of the Four Threshold Issues by dealing now with the claims raised in the Elliott Ignition Switch Action, claims that are common to numerous other Ignition Switch Actions.  The Elliott Claims should, thus, be presented to the Court for determination at the same time as when the other Plaintiffs present such claims.

## BACKGROUND RELEVANT TO RESPONSE

### A.      The Elliott Plaintiffs Were On Notice of the Motion to Enforce Immediately Upon Its Filing

7.      The Elliott Plaintiffs, *pro se*, commenced their Ignition Switch Action against New GM on April 1, 2014.  While the *pro se* complaint contained a variety of allegations, the complaint on its face (i) concerned vehicles manufactured and sold by Old GM (*i.e.*, a 2006 Chevy Cobalt SS and a 2006 Trailblazer SS), and (ii) alleged claims based on an alleged defective ignition switch.  The Elliott Ignition Switch Action is, like all other Ignition Switch Actions, an action seeking economic loss damages, and not damages based on death, personal injury, or other injury to persons or damage to property.

8.      On April 21, 2014, New GM filed its Motion to Enforce and listed the Elliott Ignition Switch Action on Schedule "1" to the Motion to Enforce.

9.      On April 22, 2014, the Court issued its Scheduling Order ("**April 22 Scheduling Order**"), and scheduled the May Conference.  New GM timely served the Elliott Plaintiffs by overnight mail with the Motion to Enforce, the April 22 Scheduling Order and a Notice of the May Conference.  *See* Certificate of Service [Dkt. No. 12658].

10.     The Elliott Plaintiffs did not file any letter or pleading with the Court prior to the May Conference, and did not make an appearance at the May Conference.

**B.      The Elliott Plaintiffs' Initial Compliance with the Stay Procedures**

11.     At the May Conference, various bankruptcy-related issues were discussed with the Court, and there was a general consensus reached between New GM and counsel speaking on behalf of most of the Plaintiffs that, as part of the process in which the Court would address bankruptcy-related issues, the Plaintiffs would either (i) agree to enter into a stipulation ("**Stay Stipulation**") with New GM staying their individual Ignition Switch Actions, or (ii) file with the Court a "No Stay Pleading" setting forth why they believed their individual Ignition Switch Actions should not be stayed (collectively, the "**Stay Procedures**").

12.     At the May Conference, the Court directed Counsel for the Identified Parties (as defined in the Scheduling Order) to confer on a proposed form of scheduling order consistent with the Court's ruling at the May Conference.  *See* Hr'g Tr., at 96:9-14, May 2, 2014.  A consensual form of scheduling order was agreed to, which was filed under a notice for settlement ("**Notice of Settlement**") on all Plaintiffs on May 12, 2014, with a presentment date of May 15, 2014.

13.     The Elliott Plaintiffs were served via overnight mail with the Notice of Settlement on May 12, 2014.  *See* Certificate of Service [Dkt. No. 12692].  They did not file a pleading with respect to the Scheduling Order and the procedures therein.

4

14.    The Stay Procedures were approved by the Scheduling Order.  Pursuant to those procedures, all Plaintiffs in the Ignition Switch Actions, including the Elliott Plaintiffs, were required to either (i) agree to enter into a Stay Stipulation by May 23, 2014 ("**Stay Stipulation Deadline**"), or (ii) file with the Court a "No Stay Pleading" by May 26, 2014 ("**No Stay Pleading Deadline**").  The Stay Procedures required plaintiffs to stay "*all* proceedings in their Ignition Switch Action against New GM (including General Motors Holdings LLC and/or General Motors Company) other than the JPML proceedings set forth in paragraph 4 above." Scheduling Order, at ¶ 5(a) (emphasis added).

15.    On May 20, 2014, New GM sent the Elliott Plaintiffs, via overnight delivery ("**May 20 Correspondence**"), a copy of the Scheduling Order and a Stay Stipulation for their Ignition Switch Action ("**Elliott Stay Stipulation**").[3]  In its May 20 Correspondence, New GM informed the Elliott Plaintiffs, among other things, that Designated Counsel appeared at the May Conference, that Designated Counsel had agreed to coordinate the efforts of Plaintiffs in this matter, and New GM provided the Elliott Plaintiffs with contact information (e-mail addresses and telephone numbers) for each of the Designated Counsel.

16.    The Elliott Plaintiffs did not contact Designated Counsel after receipt of the May 20 Correspondence.  Instead, on May 23, 2014 – the Stay Stipulation Deadline – New GM received a facsimile from the Elliott Plaintiffs containing an executed signature page for the Elliott Stay Stipulation.[4]  In their executed stipulation, the Elliott Plaintiffs expressly agreed that "subject to further order of the Bankruptcy Court, [Plaintiffs] shall not seek to further prosecute this Action [until] 30 days after a Final Order(s) is entered resolving all issues raised in the

---

[3]    A copy of the May 20 Correspondence is annexed hereto as Exhibit "A."

[4]    A copy of the Elliott Stay Stipulation is annexed hereto as Exhibit "B."

23309026v4

Motion to Enforce." *Id.*, at ¶ 1. The Elliott Plaintiffs did not file a No Stay Pleading with the Court prior to the No Stay Pleading Deadline.

17.     On May 28, 2014, New GM filed the fully-executed Elliott Stay Stipulation with the United States District Court for the District of Columbia ("**DC District Court**") (the court where the Elliott Ignition Switch Action is pending). While the Elliott Stay Stipulation provides that it "may be filed by either Party in the Action and in the Bankruptcy Court" (Elliott Stay Stipulation, ¶ 12), there is no requirement that the Elliott Stay Stipulation be filed with any Court to be valid and binding.

18.     On June 11, 2014, the DC District Court entered a notation on the docket of the Elliott Ignition Switch Action, requiring the parties to file a joint motion requesting the Action be stayed.[5] Numerous other district courts with pending Ignition Switch Actions likewise preferred and requested that the parties submit joint motions rather than stipulations. In each case, Plaintiffs and New GM worked cooperatively to convert the stipulation to a joint motion and to have an order entered providing for the same relief as the Stay Stipulation.

## C.     After Retaining Counsel, the Elliott Plaintiffs Refused to Comply with the Stay Procedures

19.     The Elliott Stay Stipulation expressly provided that "[t]he Parties each agree to execute such documents as may be reasonably necessary to carry out the terms of this Stipulation." Elliott Stay Stipulation, ¶ 7. Accordingly, counsel for New GM prepared the necessary motion papers ("**DC Stay Motion**") and, on June 13, 2014, sent them to the Elliott Plaintiffs so that the parties could jointly file the DC Stay Motion with the DC District Court.

---

[5]     Also on June 11, 2014, the JPML entered a docket entry stating that the Clerk of the Panel had determined, in response to a notice of related action, that the Elliott Ignition Switch Action was not appropriate for inclusion in the MDL, likely because of the confusing nature of the *pro se* complaint filed by the Elliott Plaintiffs. *See* MDL 2543, Dkt. No. 269. Inclusion in the MDL was never a condition of an Ignition Switch Action being subject to the Scheduling Order or a fully-executed stay stipulation. In any event, based on the Elliott Plaintiffs' filing of a motion to amend their complaint (discussed, *infra*), New GM has filed a motion to transfer the Elliott Ignition Switch Action to the MDL. Briefing on that motion is currently ongoing.

20.     On June 13, 2014, New GM, as required by the Scheduling Order, filed with this Court its *Response by General Motors LLC to No Stay Pleading Filed in Connection with the Court's May 16, 2014 Scheduling Order* [Dkt. No. 12724] ("**Phaneuf Response**"), responding to the Phaneuf Plaintiffs' No Stay Pleading.

21.     On June 17, 2014, after the Phaneuf Response was filed with the Court, counsel for New GM was contacted by Gary Peller, an attorney who stated he was recently retained by the Elliott Plaintiffs.  Although the Elliott Plaintiffs had previously agreed to stay their Ignition Switch Action and had voluntarily executed the Elliott Stay Stipulation, newly-retained counsel for the Elliott Plaintiffs stated that the Elliott Plaintiffs now wished to file an amended complaint and that they believed that only some of their claims should be subject to the stay stipulation, while others should be allowed to proceed.  A different attorney, Daniel Hornal, entered an appearance for the Elliott Plaintiffs in the DC District Court

22.     In numerous conversations and exchanges of correspondence over the following days, counsel for New GM explained to Mr. Peller the Stay Procedures, which were timely served on the Elliott Plaintiffs, and New GM's position that the Elliott Plaintiffs remained bound by the Stay Stipulation they executed and entered into.  Mr. Peller refused to cooperate with the filing of the DC Stay Motion or any joint motion in a form that would stay the Elliott Plaintiffs' entire case; instead, Mr. Peller insisted that the Elliott Plaintiffs should be required to stay only part of their case alleging pre-petition economic loss claims arising from the ignition switch, while being allowed to proceed with other pre-petition economic loss claims not directly related to the ignition switch.  To New GM, Mr. Peller was making a distinction without a difference. All pre-petition economic loss claims were Retained Liabilities of Old GM, regardless of whether they related to the ignition switch issue, or some other Old GM part.  In any event, the Elliott No

7

Stay Pleading now asserts that the entire Elliott Ignition Switch Action should be allowed to proceed, and that no part of it should be stayed.

23.    On June 19, 2014, the Elliott Plaintiffs filed a motion ("**Motion to Defer**") in the DC District Court requesting that the District Court defer consideration of New GM's pending motion to dismiss "until after the Plaintiffs have an opportunity to move for leave to amend the Complaint . . . in order to clarify their factual allegations and the legal bases for relief, and to make other changes in their pleadings."[6]

**D.    New GM is Forced to Seek Court Intervention to
Compel the Elliott Plaintiffs to Comply With the Stay Procedures**

24.    Given that the Elliott Plaintiffs were not complying with the terms of the Elliott Stay Stipulation they voluntarily entered into, New GM was forced to file with this Court the *Supplemental Response by General Motors LLC in Connection with Stay Procedures Set Forth in the Court's May 16, 2014 Scheduling Order*, dated June 24, 2014 [Dkt. No. 12735] ("**Supplemental Response**").  In its Supplemental Response, New GM requested that the Court direct the Elliott Plaintiffs to comply with the Elliott Stay Stipulation, to cooperate with New GM in the filing of the DC Stay Motion, and to refrain from taking any further action in the DC District Court.

25.    Thereafter, on June 28, 2014, in violation of the Stay Stipulation and Scheduling Order, the Elliott Plaintiffs, through their counsel, filed in the DC District Court a motion for leave to amend their complaint ("**Motion to Amend**").[7]  The Memorandum in Support of the Motion to Amend filed in the DC District Court misstated to that court the proceedings here: "GM is currently attempting to circumvent this Court's [*i.e.*, the DC District Court's] authority

---

[6]    A copy of the Motion to Defer is annexed hereto as Exhibit "C."

[7]    Annexed hereto as Exhibit "D" is the Motion to Amend, with exhibits, including a copy of the Elliott Plaintiffs' proposed amended complaint ("**Proposed Amended Complaint**").

by appealing to the Bankruptcy Court in the Southern District of New York to bar Mr. and Mrs. Elliott even from presenting the [Motion to Amend] to this Court."

26.    A review of their Proposed Amended Complaint clearly demonstrates that the Elliott Action is an Ignition Switch Action to its core.  The Proposed Amended Complaint is replete with references to the alleged defective ignition switch in an Old GM pre-petition vehicle allegedly owned by the Elliott Plaintiffs (*i.e.*, a 2006 Chevrolet Cobalt), and each of the eight causes of action asserted against New GM seek economic loss damages, at least in part, based on the alleged defective ignition switch.  *See generally* Proposed Amended Complaint.

27.    Moreover, the Proposed Amended Complaint did not merely seek to clarify the *pro se* allegations contained in the Elliott Plaintiffs' original complaint; it sought to add a new plaintiff, convert the Action into a class action, and to address issues with 13 different vehicle models that were, in some instances, manufactured and sold by Old GM, and in other instances manufactured by New GM.

**E.    The July Conference, and the Court's Denial of
the Relief Requested in the Phaneuf No Stay Pleading**

28.    The Court held the July Conference to address certain additional procedural issues that had arisen among Counsel for the Identified Parties since the entry of the Scheduling Order. As part of the July Conference, the Court ruled on which issues should be decided first in these contested proceedings.  One of those issues was the Old GM Claim Threshold Issue, which necessarily concerns the issues raised by New GM and the Elliott Plaintiffs themselves – *i.e.*, whether the claims at issue in the Elliott Ignition Switch Action are claims against Old GM or New GM.  A briefing schedule respecting the Old GM Claim Threshold Issue was established in the Supplemental Scheduling Order, with briefing to conclude by the end of September, 2014.

9

29.    After the July Conference, the Court heard argument on the Phaneuf No Stay Pleading [Dkt. No. 12712].  Like the Elliott Ignition Switch Action, the Phaneuf Ignition Switch Action attempted to allege claims solely against New GM, and not Old GM.  The Phaneuf Plaintiffs argued, like the Elliott Plaintiffs argue here, that their "claims relate to New GM's conduct *post*-bankruptcy."  Phaneuf No Stay Pleading, p. 2.  New GM responded, arguing that the Phaneuf Plaintiffs' claims were like the other Plaintiffs' claims in other Ignition Switch Actions, and that the Phaneuf Plaintiffs should be on the same schedule as the other Plaintiffs in the nearly 90 other Ignition Switch Actions.

30.    The Court agreed with New GM, finding

> that the sale order now applies, though it is possible, without prejudging any issues, that, after I hear from the other 87 litigants, I might ultimately rule that it does not apply to some kinds of claims and that, even if the sale order didn't apply, that New GM would be entitled to a preliminary injunction temporarily staying the Phaneuf plaintiffs' action from going forward, pending a determination by me on the other 87 litigants' claims under the standards articulated by the circuit in Jackson Dairy and its progeny.

Hr'g Tr. 91:12-21, July 2, 2014.  The Court ruled that it makes the most sense to address common issues at one time, and not to make early findings based on the request of one, out of many, parties in interest:

> To step out of that template and make early findings without giving them the opportunity to be heard and where the issues are of the complexity that people argued in good faith from many different approaches would be extraordinarily ill-advised. To the contrary, every principal of case management that judges are taught causes them to, on the one hand, try to deal with issues where all concerned have the ability to be heard and also to prevent one client or one group of litigants to get ahead of the rest in a way that has the potential for prejudicing the remainder.

*Id.*, 94:1-11.

31.    In addition, the Court found that even if the Sale Order and Injunction did not stay the Phaneuf Plaintiffs in the first instance, New GM had satisfied its burden of obtaining a preliminary injunction:

> Finally, I determine that, even if my earlier order hadn't been entered, it would be appropriate to enter a preliminary injunction, limited in duration until I've ruled, preventing the piecemeal litigation of the Phaneuf plaintiffs' claims now ahead of all of the other lawsuits that are similarly situated. While I don't have a complete record, it's foreseeable, if not obvious, that at least a subset of the 87 other litigants are going to present the same issues, and that's the exact reason why the MDL action came into being where the cases before Judge Furman were determined by the MDL panel to be sent to a single judge for pretrial matters and explains how they originally came to be before Judge Furman. When issues raise overlapping -- excuse me. When actions raise overlapping issues, even if they're not wholly congruent, coordinated disposition is essential, and I don't rule out the possibility -- in fact, I assume it to be true -- that the facts you present, Mr. Block and Mr. Garber, may not appear in every one of those 88 cases, but the chances that they're not going to be present in at least some of them are remote. While I well-understand the desire of litigants both to get their cases moving as quickly as possible and -- though I don't know if it's your desire here -- to put yourself in a desirable a position ahead of others -- might occasion your desire to get this relief, they are insufficient to trump the normal case management concerns that I and most other judges would have.

*Id.*, 94:21-95:22.

## F.    The Court Enjoins the Elliott Plaintiffs from Proceeding in Their Ignition Switch Action, but Allows them to File a Late No Stay Pleading

32.    After the Phaneuf No Stay Pleading was ruled on, the Court heard argument on the Supplemental Response, as further supplemented by the Elliott Plaintiffs' and New GM's letters.  The Court was prepared to allow the Elliott Plaintiffs to file a late No Stay Pleading to give them "the opportunity, if [they] can, to show that [their] action is any different than the other 87, including now Phaneuf and to consider my ruling that I just issued in Phaneuf to be stare decisis, that is a precedent, vis-a-vis your effort to get them special treatment but not res judicata or collateral estoppel."  *Id.*, 99:19-24.

33.     While the Court was skeptical about whether the Elliott Plaintiffs could make a cogent argument for why a stay would not apply to them, the Court nevertheless ruled, given that the Elliott Plaintiffs signed the Elliott Stay Stipulation *pro se*,[8] that the Elliott Plaintiffs would have an opportunity to file a No Stay Pleading on behalf of themselves individually.  However, after hearing that counsel for the Elliott Plaintiffs were attempting to convert the Elliott Ignition Switch Action into a class action, and to actively solicit additional plaintiffs, the Court limited its ruling:

> So we're going to give the Elliotts, themselves, relief from the stipulation that they entered into, but nobody else.  Therefore, if you want to proceed for their benefit as a non-class action, as what in substance is an individual action, you can do that, Mr. Hornal.  But when a Judge, like me, excuses somebody from the legal consequences of what he's done, there is no basis in law or logic for then opening up the doors to anything more than that which is necessary to protect the pro se plaintiff.

Hr'g Tr. 114:7-16, July 2, 2014.

34.     Thereafter, the Court entered the *Order Staying And Restraining Lawrence And Celestine Elliott, And Their Counsel, From Further Proceeding With Their Ignition Switch Action, Except As Expressly Set Forth Herein*, entered by the Court on July 8, 2014 ("**Elliott Stay Order**") [Dkt. No. 12763].[9]  The Elliott Stay Order provides that, except as expressly set forth in that Order, the Elliott Plaintiffs, their counsel and others acting in concert with them, are stayed from proceeding in the DC District Court with respect to the Elliott Ignition Switch Action.  In addition, the Elliott Stay Order required the Elliott Plaintiffs to undertake certain actions within a specific period of time, including (i) withdrawing their Motion to Amend within

---

[8]     The Court did state that if the Elliott Plaintiffs had counsel when they executed the Stay Stipulation, it would have held them to that stipulation.  Hr'g Tr. 100:7-8, July 2, 2014 ("Frankly, if your clients' hadn't been pro se at the time, I would hold them to the stip. . . .").

[9]     On July 14, 2014, the Elliott Plaintiffs filed a notice of appeal with respect to, among other Orders, the Elliott Stay Order.  Referencing the DC District Court Order (defined below), the Elliott Plaintiffs withdrew their notice of appeal on July 18, 2014.

12

two (2) business days of entry of the Elliott Stay Order (*i.e.*, July 10, 2014),[10] and (ii) the filing of

a No Stay Pleading with this Court within three (3) business days of entry of the Elliott Stay

Order (*i.e.*, July 11, 2014).  While the Elliott Plaintiffs timely filed their No Stay Pleading, they

did not withdraw their Motion to Amend or provide any reason for not complying with this

Court's directive.  Their actions are a willful violation of this Court's Elliott Stay Order, and their

misconduct is thus subject to the Court's contempt powers.

35.    New GM's deadline to file a response in the DC District Court to the Motion to

Amend was Monday, July 14, 2014.  As the Elliott Plaintiffs did not withdraw their Motion to

Amend by the date set forth in the Elliott Stay Order (July 10, 2014), New GM filed a *Notice of*

*Authority and Related Proceedings* with the DC District Court on July 11, 2014 ("**Notice of**

**Authority**"),[11] informing that court of the Elliott Stay Order, and New GM's motion to transfer

the Elliott Ignition Switch Action to the MDL.

36.    In response to the Notice of Authority, the Elliott Plaintiffs filed a 15-page

pleading with the DC District Court on July 16, 2014.[12]  While their Motion of Counsel contends

that it seeks "no specific relief" (p. 1 n. 2 thereof), it contains many argumentative statements

regarding this contested matter and this Court's Elliott Stay Order.  For example, counsel for the

Elliott Plaintiffs affirmatively state they decided not to withdraw their Motion to Amend, despite

---

[10]    Pursuant to the Elliott Stay Order, the Elliott Plaintiffs were permitted to file by July 18, 2014 an amended complaint in the DC District Court that alleged claims against New GM solely held by the Elliott Plaintiffs individually.  The Elliott Plaintiffs were not permitted to convert their complaint into a class action complaint. However, presumably in light of the DC District Court Order, the Elliott Plaintiffs did not file an amended complaint as authorized by the Elliott Stay Order.

[11]    A copy of the Notice of Authority is annexed hereto as Exhibit "E."

[12]    The full title of the Elliott Plaintiffs pleading is *Motion Of Counsel To Notify The Court Of Developments In Related Proceedings Between The Parties, Of The Potential For Jurisdictional Conflict With Another Federal Court, Of Intrusion On The Integrity Of This Court's Proceedings, And Of The Conflicting Ethical Obligations Counsel Face* ("**Motion of Counsel**").  A copy of the Motion of Counsel is annexed hereto as Exhibit "F."

13

this Court's very clear instructions to do so in the Elliott Stay Order.  *See* Motion of Counsel, p. 14.

37.    Moreover, despite **this Court** being the proper forum to decide whether the claims asserted by the Elliott Plaintiffs are claims against Old GM or New GM, counsel for the Elliott Plaintiffs argued to the DC District Court their belief that this Court has no jurisdiction over the Elliott Ignition Switch Action. *See id.* at p. 13.  Counsel for the Elliott Plaintiffs have thus taken it upon themselves to decide what, in their view, is appropriate and what is not, regardless of what is contained in a valid Order of the Court.

38.    On July 16, 2014, after the Motion of Counsel was filed and, given that the Motion to Amend had not been withdrawn, the DC District Court entered an Order ("**DC District Court Order**")[13] in connection with the Motion to Amend.  The DC District Court recognized that the Elliott Stay Stipulation "was still a binding agreement based on the required procedures of the Bankruptcy Court," and found that "[t]he Elliotts have not complied with the Bankruptcy Court's directive to withdraw their motion to amend."  DC District Court Order, at 3.  However, as the Elliott Ignition Switch Action was not stayed, the DC District Court granted the Motion to Amend, finding the Proposed Amended Complaint "helpful to all concerned insofar as it would clarify the claims that the Elliotts are pressing before this Court." *Id.* at 4.  Nonetheless, the DC District Court stayed all further proceedings in the Elliott Ignition Switch Action "pending the outcome of the proceedings before the Bankruptcy Court and the JPML." *Id.*[14]

---

[13]    A copy of the DC District Court Order is annexed hereto as Exhibit "G."

[14]    Having granted the Motion to Amend, the DC District Court denied New GM's motion to dismiss the initial complaint as moot.  Moreover, in a separate Minute Order entered by the DC District Court also on July 16, 2014, that Court denied as moot any relief requested by the Elliott Plaintiffs in the Motion to Defer and in the Motion of Counsel. *See* Elliott Ignition Switch Action Civil Docket Sheet for July 16, 2014, annexed hereto as Exhibit "H."

39.     This Response is filed by New GM pursuant to paragraph 5 of the Elliott Stay Order, and sets forth (a) why the relief requested in the Elliott No Stay Pleading should be denied, and (b) why the Elliott Plaintiffs should be preliminarily enjoined from proceeding with their Ignition Switch Action pursuant to the terms of the Elliott Stay Stipulation.

**RESPONSE**

40.     As stated in the Motion to Enforce, the United States Supreme Court in *Celotex Corp. v. Edwards* set forth the "well-established" rule that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'"  514 U.S. 300, 306 (1995). The Supreme Court further explained:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . . .  Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.

*Id.* at 313.

41.     The settled principles of *Celotex* required the Elliott Plaintiffs to seek relief from the Sale Order and Injunction in this Court, prior to commencing their Ignition Switch Action. They did not do so, and – through their No Stay Pleading – they continue to disregard this Court's jurisdiction over them.

42.     New GM is not seeking any new injunction against the Elliott Plaintiffs; New GM is simply seeking to enforce the pre-existing injunction set forth in this Court's Sale Order and Injunction.  Through their No Stay Pleading, the Elliott Plaintiffs are essentially asking the Court to vacate its preexisting injunction as to them.  The burden is thus on the Elliott Plaintiffs to demonstrate that the injunction in the Sale Order and Injunction should be vacated.  *See Stewart*

15

*v. General Motors Corp.*, 756 F.2d 1285, 1291 (7th Cir. 1985) ("The law appears settled that the defendant bears that burden on a motion to vacate an injunction.").  They have not met their burden.

43.    Moreover, even if the Court views New GM as seeking a preliminary injunction (which it is not), as demonstrated herein, New GM clearly can satisfy such burden of proof.

44.    The test for granting a preliminary injunction is whether the moving party can establish "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Sunni, LLC v. Edible Arrangements, Inc.*, No. 14 Civ. 461 (KPF), 2014 WL 1226210 (S.D.N.Y. March 25, 2014) (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.,* 696 F.3d 206, 215 (2d Cir. 2012) (internal quotation marks omitted)).

45.    Here, as was the case with the Phaneuf Plaintiffs, New GM will be irreparably harmed if the Elliott Plaintiffs are not stayed from proceeding in another forum.  Allowing the Elliott Plaintiffs to continue their Action in another forum will require New GM to defend the same claims in multiple forums.  Inconsistent decisions on issues squarely within this Court's province may result.  In addition, allowing just the Elliott Plaintiffs – one small group of Plaintiffs out of scores of other Ignition Switch Actions – to continue their Ignition Switch Action in another forum may cause other Plaintiffs to seek relief from the Stay Stipulations they already entered into, and may potentially create confusion in the Transferee Court (as defined in

the Scheduling Order)[15] as to what issues may proceed there before the bankruptcy-related issues are determined by this Court.

46.    Although the Elliott Plaintiffs have argued to the contrary, they essentially seek to hold New GM liable as a successor to Old GM, and seek to hold New GM accountable for Old GM's conduct relating to Old GM vehicles.  These types of claims are clearly barred by the Sale Order and Injunction.  Accordingly, as demonstrated more fully in the Motion to Enforce, New GM has demonstrated a likelihood of success on the merits or, at a minimum, that there are very serious questions going to the merits to make them a fair ground for litigation.

47.    In addition, in their No Stay Pleading, aside from referencing their ages, the Elliott Plaintiffs have not stated how they would be harmed if their Ignition Switch Action was stayed like effectively all other Plaintiffs seeking economic loss damages in the Ignition Switch Actions, who voluntarily agreed to do so.[16]

48.    In view of the foregoing, to the extent applicable, New GM has satisfied the standard for the issuance of a preliminary injunction against the Elliott Plaintiffs.

### THE RELIEF REQUESTED IN THE ELLIOTT
### NO STAY PLEADING SHOULD BE DENIED

49.    Preliminarily, as was the case with respect to the Phaneuf No Stay Pleading, New GM will limit its substantive arguments in this Response because of the absence of counsel for the other Plaintiffs in the Ignition Switch Actions.  *See* Hr'g Tr. 82:14-17, July 2, 2014 ("MR. STEINBERG:   . . . and I'm trying to be very careful not to make substantive arguments . . .

---

[15]    Given the allegations in the Proposed Amended Complaint, it is likely that the Elliott Ignition Switch Action will ultimately be transferred to the MDL.  The Elliott Plaintiffs concede this likely outcome in their No Stay Pleading.  *See* Elliott No Stay Pleading, p. 8 n. 10 ("The Elliotts understand that at least some of their claims may be consolidated with, and transferred to, the pending MDL.").

[16]    In fact, the recall repairs for the ignition switch and related parts in the Elliott Plaintiffs' 2006 Cobalt were recently completed free of charge by an authorized GM dealer in the Washington DC area.

THE COURT:  That's especially important in light of all the people who have already left the courtroom today.").  As discussed herein, the issues raised by the Elliott Plaintiffs will be briefed in accordance with the procedures established for the Four Threshold Issues pursuant to the Supplemental Scheduling Order.

50.    To the extent the Court believes that substantive arguments are needed to address the Elliott Plaintiffs' claims in the context of their No Stay Pleading prior to the Court addressing the Four Threshold Issues (which New GM asserts should not be the case), New GM requests that it be given an opportunity to brief such issues.

A.    **The Elliott Plaintiffs' Claims Clearly
Implicate the Sale Order and Injunction**

51.    The issues raised by the Elliott Plaintiffs are simpler to address than the issues raised by the Phaneuf Plaintiffs (who assert claims with respect to both New GM and Old GM vehicle owners).  The Elliott Plaintiffs own an Old GM vehicle which the Court found to be a highly relevant fact in determining whether a No Stay Pleading should be granted.  Hr'g Tr. 92:3-5, July 2, 2014.[17]

52.    The Elliott Plaintiffs, like the Phaneuf Plaintiffs, similarly argue that their claims are based solely on New GM's conduct, and not Old GM's conduct.  New GM strongly disputes the Elliott Plaintiffs' assertion.  In any event, it is undisputed that the Elliott Plaintiffs purchased their vehicle -- a 2006 Chevrolet Cobalt – from Old GM (not New GM).  The Elliott Plaintiffs are identically situated to many of the other class representatives in the other Ignition Switch Actions who purchased their vehicles from Old GM.  All of those Plaintiffs have voluntarily

---

[17]    If the joined plaintiff in the Elliott Ignition Switch Action were to be considered, which should not be the case given that her presence in the Action is solely a function of the Elliott Plaintiffs' failure to comply with this Court's Elliott Stay Order, she owns a New GM vehicle (*i.e.*, a 2010 Cobalt), which would merely bring the Elliott Plaintiffs to equal footing with the Phaneuf Plaintiffs.

23309026v4

agreed to stay their Ignition Switch Actions pending resolution of the bankruptcy-related issues

raised in the Motion to Enforce.  The Elliott Plaintiffs should be required to do the same.

53.    Moreover, while the Elliott Plaintiffs contend that they are only complaining

about New GM's conduct, and not Old GM's conduct, a review of their complaint demonstrates

that is not true.  Despite an affirmative statement to the contrary, the Elliott Plaintiffs' claims are

based on a "successor liability" theory.  The Elliott Plaintiffs specifically assert, among other

things, that "New GM acquired all the books, records and accounts of [Old GM], including

records that document the unlawful concealment of defects in vehicles sold by Old GM prior to

New GM's existence."   Proposed Amended Complaint, ¶ 6.

54.    The Elliott Plaintiffs may dispute New GM's assertion, but even they recognize

that the Court needs to interpret the Sale Order and Injunction to reach a conclusion on the

issue.[18]  The Sale Order and Injunction unquestionably reserved exclusive jurisdiction to this

Court to interpret and enforce the Sale Order and Injunction, as well as the terms of the MSPA.[19]

This is why the Motion to Enforce was filed in this Court, and this is why this Court is the only

proper Court to hear and decide these issues.

---

[18]    *See* Elliott No Stay Pleading, pp. 27-28 ("Before such a conclusion can reasonably (or constitutionally) be reached, an analysis is necessary first to determine if their third-party nondebtor claims assert derivative or successor liability on the part of New GM for retained liability of Old GM, in which case the claims may well be within the terms of the Sale Order, or if they are based instead on allegations that New GM violated independent duties that New GM owed to the Elliotts, causing them legally cognizable harm, in which case the claims would not be, and constitutionally could not have been, encompassed by the Sale Order and Injunction.").

[19]    *See* Sale Order and Injunction, ¶ 71.  In their No Stay Pleading, the Elliott Plaintiffs confuse the Court's jurisdiction to interpret and enforce the Sale Order and Injunction, with a bankruptcy court's general jurisdiction to enforce the automatic stay or to generally protect debtors and/or property of the estate.  *See, e.g.*, Elliott No Stay Pleading, at pp. 9-11.  New GM has never argued that the automatic stay applies here or that this Court's jurisdiction arises from a specific section of the Bankruptcy Code.  New GM asserts, and as this Court has previously found in similar matters, this Court has exclusive jurisdiction to enforce its previous Orders, like the Sale Order and Injunction.  *See* Motion to Enforce, ¶¶ 25-27.  This Court clearly has such jurisdiction to resolve the issues raised in the Motion to Enforce, generally, and with respect to the Elliott Plaintiffs specifically.

23309026v4

55.     All Plaintiffs are required to obey the injunction contained in the Sale Order and

Injunction until this Court has had an opportunity to resolve the bankruptcy-related issues set

forth in the Motion to Enforce, and in particular, decide which claims asserted against New GM

are barred, and which, if any, are not.  The Elliott Plaintiffs are no different from any of the other

Plaintiffs.  Virtually every other one of them, by signing the Stay Stipulation, has acknowledged

their obligation to comply with the Court's Sale Order and Injunction.  The Elliott Plaintiffs

should be compelled to do what the others have readily acknowledged they will and must do.

**B.      The Elliott Plaintiffs' Arguments Are Subsumed in the
         Old GM Claim Threshold Issues And Should Be Decided
         <u>Pursuant to the Court-Approved Procedures Regarding Same</u>**

56.     As stated above, the claims asserted by the Elliott Plaintiffs are no different from

the claims asserted by many Plaintiffs in other Ignition Switch Actions.  Numerous other

Plaintiffs have asserted, among other things, claims against New GM based on RICO,[20] fraud and

consumer protection statutes.[21]  The real issue raised by the Elliott No Stay Pleading is whether

their contention – *i.e.*, that they have asserted claims only against New GM and not Old GM --

should be decided now, or as part of the identical Old GM Claim Threshold Issue that is set forth

in the Supplemental Scheduling Order.  This is a question that this Court already has answered

repeatedly, and has implemented carefully-crafted procedures for doing so.

57.     If the Elliott Plaintiffs are not required to abide by the preexisting injunction and

to cease prosecuting their Ignition Switch Action, the carefully-crafted procedures put in place by

---

[20]    Other Ignition Switch Actions asserting a RICO claim include those filed by the Arnold Plaintiffs, the Burton
Plaintiffs, the Edwards Plaintiffs, the Emerson Plaintiffs, the Espineira Plaintiffs, the Harris Plaintiffs, the
Knetze Plaintiffs, the Lannon Plaintiffs, the Markle Plaintiffs, the Mazzocchi Plaintiffs, the Ramirez Plaintiffs,
the Ross Plaintiffs and the Santiago Plaintiffs.

[21]    Most of the Ignition Switch Actions contain claims based on (i) fraud or fraudulent concealment (which the
Elliott Plaintiffs allege in their Proposed Amended Complaint (*see* ¶ 66 thereof)), and (ii) alleged violations of
consumer protection statutes.

20

this Court in the Scheduling Order and Supplemental Scheduling Order may unravel.  The Stay

Stipulations entered into by the other Plaintiffs provide that:

> if a plaintiff in a different Ignition Switch Action (as defined in the Motion to
> Enforce) does not sign a stipulation similar to this Stipulation, and prior to
> September 1, 2014 obtains a ruling from the Bankruptcy Court which permits that
> plaintiff to go forward in its Ignition Switch Action, the Plaintiff who signed this
> Stipulation reserves the right to promptly seek the same relief from the
> Bankruptcy Court as it applies to this Action but only if the same factual and/or
> legal predicate on which the other plaintiff obtained relief applies to the Plaintiff
> in this Action as it did to the plaintiff in the other Ignition Switch Action who
> obtained such relief.

58.     Allowing the Elliott Plaintiffs to proceed with their Ignition Switch Action in a

different forum could cause other Plaintiffs to seek relief in this Court from the stay that they

previously voluntarily entered into, or to proceed directly in an individual court or the MDL

court based on the caveat to the Stay Stipulation set forth above.  Any of this would cause the

very chaos the Court sought to avoid by entering the Scheduling Order.  The procedures agreed

to by all other Plaintiffs should govern the Action instituted by the Elliott Plaintiffs.

WHEREFORE, New GM respectfully requests that this Court (i) deny the relief

requested in the Elliott No Stay Pleading, (ii) preliminarily enjoin the Elliott Plaintiffs from

further prosecuting their Ignition Switch Action pursuant to the terms of the Elliott Stay

Stipulation, and (iii) grant New GM such other and further relief as the Court may deem just and

proper.

23309026v4

Dated: New York, New York
      July 21, 2014

Respectfully submitted,


     /s/ Arthur Steinberg

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

23309026v4