# Exhibit E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAWRENCE M. ELLIOTT, CELESTINE V. ELLIOTT, et al., | ) ) ) | **Case No. 1:14-cv-00691-KBJ** |
| Plaintiffs, | ) ) | **Hon. Ketanji Brown Jackson** |
| v. | ) ) ) | |
| GENERAL MOTORS LLC, | ) ) | |
| Defendant. | ) ) | |

## NOTICE OF AUTHORITY AND RELATED PROCEEDINGS

General Motors LLC ("New GM") submits this Notice of Authority and Related Proceedings to advise this Court of (i) an "Order Staying and Restraining Lawrence and Celestine Elliott, and Their Counsel, From Further Proceeding With Their Ignition Switch Action, Except as Expressly Set Forth Herein," entered by the United States Bankruptcy Court for the Southern District of New York on July 8, 2014 (the "Bankruptcy Court Order," attached hereto as Ex. A); and of (ii) "New GM's Motion to Transfer Tag-Along Action for Consolidated Pretrial Proceedings," filed before the Judicial Panel on Multidistrict Litigation ("JPML") on July 1, 2014 (the "JPML Transfer Motion," attached hereto as Ex. B).

**The Bankruptcy Court Order**. On July 8, 2014, the Bankruptcy Court Order was entered in aid of the Bankruptcy Court's exclusive and continuing jurisdiction to interpret and resolve any claims arising from or related to its 2009 Sale Order and Injunction, and the Amended and Restated Master Sale and Purchase Agreement ("ARMSPA") that it approved. Pursuant to the 2009 Sale Order and Injunction, New GM purchased substantially all of the assets of Motors Liquidation Co., f/k/a/ General Motors Corporation ("Old GM"), while all

liabilities relating to vehicles and parts manufactured and sold by Old GM (subject to limited exceptions not applicable here) were legacy liabilities retained by Old GM.  On April 21, 2014, New GM filed a Motion to Enforce the 2009 Sale Order and Injunction in the Bankruptcy Court, asking that the Bankruptcy Court enforce the injunction contained therein which prohibited the plaintiffs in many dozens of cases pending nationwide from pursuing claims against New GM for economic loss damages arising from vehicles and parts manufactured by Old GM—including the Elliotts' suit here.  (*In re Motors Liquidation Co*., No. 09-50026, ECF No. 12620).  On May 16, 2014, the Bankruptcy Court entered a Scheduling Order, establishing procedures to resolve the Motion to Enforce with respect to the Elliotts and approximately 80 other sets of plaintiffs (the "Ignition Switch Actions"), including requiring all plaintiffs to stay their individual Actions, or else seek relief in the Bankruptcy Court, until the Bankruptcy Court had an opportunity to resolve certain Threshold Issues raised by the Motion to Enforce.  (*Id*., ECF No. 12697).  The Elliotts, *pro se*, initially entered into a Stay Stipulation with New GM, but this Court rejected it as to form, subject to resubmission as a joint motion (Doc. No. 11).  The Elliotts later retained counsel who sought to proceed with a Motion for Leave to File Proposed First Amended [Class Action] Complaint in this Court (Doc. No. 15), without first following the procedures implemented in the Bankruptcy Court for all Ignition Switch Actions.

The Elliotts were heard in the Bankruptcy Court on July 2, 2014.  Following that hearing, on July 8, 2014, the Bankruptcy Court entered an Order providing "that the Elliotts, their counsel and any other person acting in concert with them are stayed and restrained from undertaking any further action against New GM in their Ignition Switch Action pending in the United States District Court for the District of Columbia . . . except as expressly provided by this Order[.]" (Ex. A. at 2.)  The Bankruptcy Court further ordered "that the Elliotts are directed within two (2)

business days of entry of this Order to withdraw their motion for leave to amend their [class action] complaint ('Motion to Amend') filed with the DC District Court," but were permitted, if they so choose, to file "an amended complaint in the DC District Court that solely alleges claims [against New GM] that the Elliotts possess individually . . . ."  (*Id.* at 2-3).  The time for the Elliotts to withdraw their Motion to Amend expired on July 10, 2014, and the Elliotts have not complied with the Bankruptcy Court Order.

**The JPML Transfer Motion**.  On March 25, 2014, the JPML established MDL No. 2543, *In re: General Motors LLC Ignition Switch Litigation*.  On June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL court and assigned the Honorable Jesse M. Furman to conduct coordinated or consolidated pretrial proceedings in the Ignition Switch Actions.  (*Id.*, ECF No. 266).  The JPML transferred an initial group of fifteen cases pending in six federal districts to the Southern District of New York, after concluding that it was "undisputed" that cases alleging a vehicle ignition switch defect satisfied the requirements for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.  (*Id.* at 2).  More than 80 additional Ignition Switch Actions have since been transferred to the MDL Court, including claims to recover both for alleged economic losses and for alleged personal injuries.  (*See* MDL No. 2543.)

The Clerk of the JPML initially determined that this Action should not be included in the MDL, after reviewing the abstruse *pro se* complaint originally filed by the Elliotts.  (MDL 2543, ECF No. 269).  On July 1, 2014, after plaintiffs filed their Motion for Leave to File the Proposed First Amended Complaint, clearly setting forth multiple counts based on the purported ignition switch defect that is the subject of MDL No. 2543, New GM filed the JPML Transfer Motion.  (Ex. B).  The JPML has set a briefing schedule on the Transfer Motion, with plaintiffs' response

due on July 23, 2014, New GM's reply due on July 30, 2014, and a decision expected shortly

thereafter. (*Id.*, ECF No. 312). If the JPML Transfer Motion is granted, there will be no need

for further pretrial proceedings in this Court.


DATED:  July 11, 2014                    Respectfully submitted,

                                         */s/ Robert S. Ryland*
                                         Robert S. Ryland (DC BN 419706)
                                         KIRKLAND & ELLIS LLP
                                         655 Fifteenth Street, N.W.
                                         Washington, DC  20005-5793
                                         Telephone:  202-879-5000
                                         Facsimile:  202-879-5200
                                         Email:  rryland@kirkland.com

                                         Matthew F. Hall (DC BN 418404)
                                         DUNAWAY & CROSS, P.C.
                                         1100 Connecticut Avenue NW
                                         Washington, DC  20036
                                         Telephone: 202-862-9700
                                         Facsimile  202-862-9710

                                         Richard C. Godfrey, P.C. (to be admitted *pro hac vice*)
                                         Robert B. Ellis, P.C. (to be admitted *pro hac vice*)
                                         Andrew B. Bloomer, P.C. (*pro hac vice* motion
                                         pending)
                                         Leonid Feller (*pro hac vice* motion pending)
                                         KIRKLAND & ELLIS LLP
                                         300 North LaSalle
                                         Chicago, IL  60654-3406
                                         Telephone: 312-862-2000
                                         Facsimile:  312-862-2200
                                         Email:  rgodfrey@kirkland.com
                                         Email:  rellis@kirkland.com
                                         Email:  abloomer@kirkland.com
                                         Email:  leonid.feller@kirkland.com

                                         *Attorneys for Defendant General Motors LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2014, a copy of the forgoing **NOTICE OF AUTHORITY AND RELATED ACTION** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

DATED:      July 11, 2014                    _/s/ Robert S. Ryland_____

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In re                                                    :          Chapter 11
                                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,                    :          Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., *et al.*             :
                                                         :
                        Debtors.                         :          (Jointly Administered)

------------------------------------------------------------------x

### ORDER STAYING AND RESTRAINING LAWRENCE AND CELESTINE ELLIOTT, AND THEIR COUNSEL, FROM FURTHER PROCEEDING WITH THEIR IGNITION SWITCH <u>ACTION, EXCEPT AS EXPRESSLY SET FORTH HEREIN</u>

Upon the Court's Order, dated May 16, 2014 ("**Scheduling Order**"), establishing procedures to address certain issues respecting, among other things, (i) the Motion, dated April 21, 2014 [Dkt. No. 12620] ("**Motion**"), of General Motors LLC ("**New GM**"),[1] pursuant to Sections 105 and 363 of the Bankruptcy Code, seeking to enforce the Sale Order and Injunction; and upon the Scheduling Order providing that Plaintiffs in Ignition Switch Actions were required by a date certain to either (i) agree to enter into a stipulation ("**Stay Stipulation**") with New GM staying their individual Ignition Switch Actions, or (ii) file with the Court a "No Stay Pleading" setting forth why they believed their individual Ignition Switch Actions should not be stayed (collectively, the "**Stay Procedures**"); and Lawrence and Celestine Elliott (collectively, the "**Elliotts**"), *pro se*, having timely executed a Stay Stipulation ("**Elliott Stay Stipulation**") but, upon retaining counsel, having requested to withdraw the Elliott Stay Stipulation and to file a late No Stay Pleading; and upon the *Supplemental Response by General Motors LLC in Connection with Stay Procedures Set Forth in the Court's May 16, 2014 Scheduling Order*, filed

---

[1]   Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

by General Motors LLC [ECF 12735] ("**Supplemental Response**"); and upon the letter

("**Hornal Letter**") dated June 30, 2014 by Daniel Hornal, Esq., counsel for the Elliotts, which

was attached to an Endorsed Order issued by the Court on June 30, 2014 [Dkt. No. 12737]; and

upon the letter, dated July 1, 2014 by New GM to the Court in response to the Hornal Letter

[ECF 12748] ("**New GM Letter**"); and upon a hearing ("**Hearing**") being held before the Court

on July 2, 2014 to address the issues raised in the aforementioned pleadings and upon the record

of the Hearing, and the prior proceedings had herein, the Court having issued a ruling from the

bench, which is memorialized in this Order; it is hereby

> 1)  ORDERED that, subject to the Elliotts timely filing a No Stay Pleading
> consistent with the terms of this Order, the Elliotts are granted relief from the
> Elliott Stay Stipulation solely as provided in this Order, and it is further

> 2)  ORDERED that the Elliotts, their counsel and any other person acting in
> concert with them are stayed and restrained from undertaking any further action
> against New GM in their Ignition Switch Action pending in the United States
> District Court for the District of Columbia ("**DC District Court**"), or in any other
> ~~court~~ action in which the Elliotts are a party based on allegations that are
> substantially similar to those alleged in the Elliotts' Ignition Switch Action,
> except as expressly provided by this Order; and it is further

> 3)  ORDERED that the Elliotts are directed within two (2) business days of
> entry of this Order to withdraw their motion for leave to amend their complaint
> ("**Motion to Amend**") filed with the DC District Court on June 28, 2014, and are
> stayed and restrained from taking any action in respect thereof, including without
> limitation litigating their proposed amended complaint seeking to proceed as a

class action, *provided, however*, within ten (10) business days after the entry of this Order, the Elliotts may file an amended complaint in the DC District Court that solely alleges claims ~~against New GM~~ that the Elliotts possess individually, and not as a representative of any class of plaintiffs. In particular, neither the Elliotts nor their counsel are permitted to amend the Elliotts' complaint to add any additional plaintiff(s) ~~or defendant(s)~~, or to convert the Elliotts' individual Ignition Switch Action into a class action; and it is further

4) ORDERED that, within ten (10) business days after the entry of this Order, the Elliotts shall file with the Clerk of this Court evidence of the withdrawal of the Motion to Amend and the filing of any amended complaint on behalf of the Elliotts individually; and it is further

5) ORDERED that the Elliotts shall be permitted to file a No Stay Pleading with this Court within three (3) business days of entry of this Order, New GM shall have ten (10) days to file any response to such No Stay Pleading, and the Court shall hold a hearing on the No Stay Pleading on August 5, 2014 at 9:45 a.m. (Eastern Time); and it is further

6) ORDERED that, if the Elliotts fail to file a No Stay Pleading with the Court within three (3) business days of entry of this Order, the terms of the Stay Stipulation shall automatically be binding on the Elliotts; and it is further

 

       7)  ORDERED that this Court shall retain exclusive jurisdiction to interpret

and enforce this Order.

Dated: July  8, 2014
      New York, New York

                         s/ Robert E. Gerber
                      UNITED STATES BANKRUPTCY JUDGE

# Exhibit B

## BEFORE THE UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| **IN RE GENERAL MOTORS LLC** | ) | **MDL DOCKET NO. 2543** |
| **IGNITION SWITCH LITIGATION** | ) |  |
|  | ) |  |
|  | ) |  |

## DEFENDANT GENERAL MOTORS LLC'S MOTION TO TRANSFER TAG-ALONG
## ACTION FOR CONSOLIDATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407 and Rules 6.1 and 6.2 of the Rules of Procedure of the

Judicial Panel on Multidistrict Litigation (the "Panel"), defendant General Motors LLC ("New

GM") respectively moves this Panel to transfer the related action styled *Elliott, et al. v. General

Motors LLC* (D.D.C. No. 1:14-cv-00691) to the Southern District of New York for coordinated

or consolidated pretrial proceedings in MDL 2543.  Plaintiffs' proposed amended complaint in

*Elliott*, like the 90 cases the Panel already has transferred to date, purports to "assert[] economic

damages on behalf of certain classes and/or individuals stemming from an alleged defect in

certain General Motors vehicles that causes the vehicle's ignition switch to move unintentionally

from the 'run' position to the 'accessory' or 'off' position."  (Transfer Order, ECF No. 266 at 1.)

Transfer is warranted here, where "[c]entralization under Section 1407 will eliminate duplicative

discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and

conserve the resources of the parties, their counsel, and the judiciary."  (*Id.* at 2.)

**WHEREFORE**, for the reasons more fully set forth in the accompanying memorandum,

New GM respectfully requests that the *Elliott* tag-along action be transferred to the Southern

District of New York for coordinated or consolidated pretrial proceedings.

DATED:  July 1, 2014

Respectfully Submitted,

KIRKLAND & ELLIS LLP

By:  /s/ Andrew B. Bloomer, P.C.
Andrew B. Bloomer, P.C.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Phone: (312) 862-2000
Fax: (312) 862-2200
andrew.bloomer@kirkland.com

*Attorney for Defendant General Motors LLC*

09-50026-reg   Doc 12782-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 15 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/21/14   Page 24 of 83

Case MDL No. 2543   Document 309-1   Filed 07/01/14   Page 1 of 6

**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

|                                                                        |                       |
| ---------------------------------------------------------------------- | --------------------- |
| **IN RE GENERAL MOTORS LLC**<br>**IGNITION SWITCH LITIGATION**         | **MDL DOCKET NO. 2543** |

**MEMORANDUM IN SUPPORT OF DEFENDANT GENERAL MOTORS LLC'S
MOTION TO TRANSFER TAG-ALONG ACTION**

On June 9, 2014, the Panel transferred 15 cases to the Southern District of New York for
coordinated or consolidated pretrial proceedings, finding that "each of the actions… asserts
economic damages on behalf of certain classes and/or individuals stemming from an alleged
defect in certain General Motors vehicles that causes the vehicle's ignition switch to move
unintentionally from the 'run' position to the 'accessory' or 'off' position."  (Transfer Order,
ECF No. 266 at 1.)   In determining that transfer was warranted, the Panel concluded that
"[c]entralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent
pretrial rulings, including with respect to class certification; and conserve the resources of the
parties, their counsel, and the judiciary."  (*Id.* at 2.)

Among the more than 90 cases that have been tagged as related actions in MDL 2543, the
Clerk of the Panel initially determined that *Elliott, et al. v. General Motors LLC* (D.D.C. No.
1:14-cv-00691) should not be included in the MDL, after reviewing an abstruse pro se complaint
originally filed by plaintiffs.  The plaintiffs now have retained counsel and filed a proposed
amended complaint, which eliminates any doubt that this case appropriately should be included
in the MDL for coordinated and consolidated pretrial proceedings.   (Ex. 1, Pls.' Mot. for Leave
& Prop. Am. Compl.)  The *Elliott* plaintiffs' proposed amended complaint asserts claims on
behalf of a putative nationwide class for the alleged decrease in values of their vehicles due to

the same ignition switch defect at issue in the MDL (as well as an alleged fuel pump defect). (Pls.' Prop. Am. Compl. ¶¶41-42.) Given these shared core allegations, transfer of *Elliott* for consolidation with MDL 2543 will avoid unnecessary, costly, and duplicative discovery regarding the same events and conduct. The MDL judge is ideally positioned to manage that overlapping discovery, avoiding the risk of inconsistent pretrial rulings, and conserving the resources of the parties and the judiciary.

### A. *Elliott* Involves The Same Core Conduct And Events Alleged In Cases In MDL 2543.

On April 1, Plaintiffs Lawrence M. Elliott and Celestine V. Elliott filed a four-page complaint against New GM in the Superior Court of the District of Columbia, seeking economic damages arising out of their ownership of a 2006 Chevy Cobalt SS. (*See Elliott* Compl., Notice of Related Actions, ECF No. 223, Ex. 3.) Plaintiffs' complaint, which was filed pro se, makes the following allegations related to the faulty ignition switch which gave rise to this MDL:

> Even though they [New GM] say the key lock has been recalled (not until we get the parts) is it a recall. The key turned the ignition off under many conditions in the Cobalt SS, (the ignition switch was also found to split at times and turn the run cycle to the accessory cycle). The accessory cycle does not have the Air Bags or many features that the Run position supports. They used the same part number so how are we to know which is the replacement and which is the old defective one. This turns the air bags and steering (OFF) both of which are controlled electrically, which is how it kills. According to what is in the public arena they knew this as early as 2002. It is now 2014. To make matters worse, they did not change the part number so you would not know if you were getting or buying the same defect.

(*Id.* at 6-7.)  On April 23, New GM removed the case to the United States District Court for the District of Columbia and moved to dismiss for failure to state a claim upon which relief can be granted.  (*Id.* at 2.)   As of this filing, the motion to dismiss remains pending.

On May 12, New GM tagged the *Elliott* action as a potential related action in accordance with JPML Rule 6.2(d).  (*Id.* at 1.)   On June 11, after reviewing the pro se complaint, and notwithstanding the ignition switch allegations containing therein, the Clerk of the Panel initially determined that *Elliott* was "not appropriate for inclusion in this MDL."  (ECF No. 269.)

On June 28, after retaining counsel, plaintiffs filed a motion for leave to file a proposed amended complaint.  (*See* Ex. 1, Pls.' Mot. for Leave & Prop. Am. Compl.)  Plaintiffs' proposed amended complaint, which refers to the ignition switch at issue in MDL 2543 in no less than 39 separate paragraphs—and as a basis for each of the eight counts alleged—confirms that this case is appropriate for inclusion in this MDL.  (*See, e.g.,* Pls' Mot. & Am. Compl. ¶¶ 2, 5, 7, 11, 16, 20, 25-26, 28-31, 34, 36, 41-42, 45, 47, 57, 58, 59, 60, 61, 62, 63, 65, 67, 72, 74-75, 77, 81, 91, 92, 101-102, 105, 111.)

By way of example only, Plaintiffs' proposed amended complaint contains the following claims regarding the faulty ignition switch defect:

- "The Enterprise was partly embodied in practices and procedures intended to mischaracterize safety related defects – such as the ignition switch – as 'customer convenience issues' to avoid incurring the costs of a recall . . . ."  (¶ 57, Count I: RICO; *see also id.* ¶¶ 6, 8-9, 12, 20, 25.)

- "At the time of New GM's inception in 2009, Defendants knew that the ignition switch used or which would be placed in the Plaintiffs' and class members' vehicles could inadvertently move from 'run' to 'accessory' or 'off,' under regular driving conditions." (¶ 65, Count II: Fraud.)

- "Because the defective ignition switches . . . created a foreseeable risk of severe personal and property injury to drivers, passengers, other motorists, and the public at large, Defendants had a duty to warn consumers about, and fix, the defect as soon as soon as they learned of the problem – upon the inception of New GM in October 2009."  (¶ 81, Count IV: Negligent Infliction of Economic Loss.)

3

**B.** **Transfer Will Serve The Convenience Of The Parties And Witnesses And Will Promote The Just And Efficient Conduct Of The Actions.**

*Elliott* should be transferred to MDL 2543 because its core allegations are the same as the claims in the other ignition switch cases and transfer will promote the goals that MDL 2543 is meant to accomplish: eliminating duplicative discovery, avoiding the risk of inconsistent pretrial rulings, and conserving the resources of the parties, their counsel and the judiciary. *See In re Gen. Motors Ignition Switch Litig.*, MDL 2543, ECF 266, 2014 WL 2616819, at *1 (J.P.M.L. June 9, 2014) (identifying factors supporting consolidation). The fact that *Elliott* also contains certain non-ignition switch allegations is neither relevant to the issue of, nor prevents, transfer. *See In re AT&T Corp. Secs. Litig.*, 2001 U.S. Dist. LEXIS 5233, at *3-4 (J.P.M.L. Apr. 19, 2001) (in consolidating cases over plaintiffs' objection that their cases were "brought on behalf of purchasers of a different stock, during a smaller time period, and primarily under different federal statutes," the Panel noted that "transfer under Section 1407 does not require a complete identity or even majority of common factual issues . . . [n]or is the presence of additional or differing legal theories significant when the underlying actions still arise from a common factual core"); *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007) (rejecting argument that transfer should be denied because common issues did not predominate; "Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer"). Discovery is likely to be time-consuming and complex, and consolidation of *Elliott* with MDL 2543 will eliminate what would otherwise be unnecessary, expensive, and duplicative depositions of witnesses as well as the review and production of documents regarding the same events and conduct. *See In re Gen. Tire & Rubber Co. Secs. Litig.*, 429 F. Supp. 1032, 1034 ("placing these actions under the

09-50026-reg   Doc 12782-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 19 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 5 of 83

Case MDL No. 2543   Document 309-1   Filed 07/01/14   Page 5 of 6

control of a single judge will ensure that duplicative discovery on the complex factual questions will be prevented").

Furthermore, because the MDL transferee court can manage the discovery to accommodate any differences, the fact that the Elliotts also premise some of their claims on a purportedly defective fuel pump, in addition to the common ignition switch claims, is no bar to transfer. *See, e.g., In re Bridgestone/Firestone, Inc., Tires Product Liab. Litig.*, 151 F. Supp. 2d 1381 (J.P.M.L. 2001) (transferring tag-along actions regarding alleged defects in two additional lines of tires and renaming MDL to reflect broader subject matter); *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374 (J.P.M.L. 2011) (centralizing actions implicating "eight products, six different design teams, six different sets of design history documents, and eight different 510(k) regulatory applications"); *see also In re Denture Cream Products Liab. Litig.*, MDL 2051, 624 F. Supp. 2d 1379, 1381 (2009) (the "transferee court can employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks—to efficiently manage this litigation"); *In re Nat'l Century Fin. Enters., Inc.*, 293 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003) (rejecting argument that there were insufficient common questions and noting ability of transferee judge to remand certain claims or actions in advance of others).

## CONCLUSION

Discovery in the MDL 2543 cases is likely to be complex, time-consuming, and expensive.  Given the significant factual overlap with those cases, transfer of *Elliott* to MDL 2543 will avoid unnecessarily duplicating that discovery, and also will conserve the parties' and the judiciary's resources by eliminating extensive parallel pretrial conferences, briefing, and rulings.  Accordingly, New GM respectfully requests that the Panel transfer *Elliott* for coordinated or consolidated pretrial proceedings in MDL 2543.

DATED:  July 1, 2014                    Respectfully Submitted,

                                        KIRKLAND & ELLIS LLP

                                        By:  /s/ Andrew B. Bloomer, P.C.
                                        Andrew B. Bloomer, P.C.
                                        Kirkland & Ellis LLP
                                        300 North LaSalle
                                        Chicago, IL 60654
                                        Phone: (312) 862-2000
                                        Fax: (312) 862-2200
                                        andrew.bloomer@kirkland.com

                                        *Attorney for Defendant General Motors LLC*

Case MDL No. 2543   Document 309-2   Filed 07/01/14   Page 1 of 1

**SCHEDULE A - Motion to Transfer Tag-along Action**
*In re General Motors LLC Ignition Switch Litigation*, **MDL No. 2543**

| NO. | CASE NAME | CASE NO. | COURT | JUDGE |
|-----|-----------|----------|-------|-------|
| 1 | *Lawrence M. Elliott and Celestine V. Elliott v. General Motors LLC* | 1:14-cv-00691 | D.D.C. | Hon. Ketanji Brown Jackson |

## BEFORE THE UNITED STATES JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | MDL No. 2543 |
| This Document Relates To: ALL CASES | |

## PROOF OF SERVICE

In accordance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, the undersigned hereby certifies that a true and correct copy of the foregoing Motion to Transfer Tag-along Action was served on all CM/ECF registered users on the 1st day of July 2014, and by First Class Mail on the following counsel who have not registered with CM/ECF:

*Elliott, et al. v. General Motors LLC,* **D.D.C., No. 1:14-cv-00691**

Daniel Hornal
TALOS LAW
705 Fourth Street, N.W.
Washington, D.C.  20001

Gary Peller
Professor of Law
Georgetown University Law Center
600 New Jersey Avenue, N.W.
Washington, D.C. 20001

*Attorneys for Plaintiffs*

/s/ Andrew B. Bloomer, P.C.
Andrew B. Bloomer, P.C.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL  60654
Phone:  312-862-2000
Fax:  312-862-2200
Email: abloomer@kirkland.com

*Attorney for Defendant General Motors LLC*

District of Columbia live database                                                      Page 1 of 3

JURY,TYPE-F

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:14-cv-00691-KBJ

ELLIOTT et al v. GENERAL MOTORS LLC
Assigned to: Judge Ketanji Brown Jackson
Demand: $580,000
Case in other court:  Superior Court of the District of Columbia,
                       2014 CA 0001980
Cause: 28:1441 Petition for Removal

Date Filed: 04/23/2014
Jury Demand: Defendant
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**
**LAWRENCE M. ELLIOTT**        represented by   **Daniel James Hornal**
                                                TALOS LAW
                                                705 Fourth Street, NW
                                                Suite 403
                                                Washington, DC 20001
                                                (202) 709-9862
                                                Email: daniel@taloslaw.com
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Plaintiff**
**CELESTINE V. ELLIOTT**       represented by   **Daniel James Hornal**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**
**GENERAL MOTORS LLC**         represented by   **Robert Shapleigh Ryland**
                                                KIRKLAND & ELLIS LLP
                                                655 15th Street, NW
                                                Suite 1200
                                                Washington, DC 20005
                                                (202) 879-5086
                                                Fax: (202) 879-5200
                                                Email: robert.ryland@kirkland.com
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Matthew Francis Hall**
                                                DUNAWAY & CROSS
                                                1100 Connecticut Avenue, NW
                                                Suite 410
                                                Washington, DC 20036
                                                (202) 862-9700
                                                Fax: (202) 862-9710
                                                Email: mfxhall@earthlink.net
                                                *ATTORNEY TO BE NOTICED*

District of Columbia live database                                                          Page 2 of 3

| Date Filed | # | Docket Text |
|---|---|---|
| 04/23/2014 | 1 | NOTICE OF REMOVAL from Superior Court for the District of Columbia, case number 14-CA-0001980 Filing fee $ 400, receipt number 0090-3693777 filed by GENERAL MOTORS LLC. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit Summons and Complaint in DC Superior Court Action)(Hall, Matthew) (Additional attachment(s) added on 4/24/2014: # 3 Notice to Counsel/Party) (jf, ). (Entered: 04/23/2014) |
| 04/23/2014 | 2 | Corporate Disclosure Statement by GENERAL MOTORS LLC. (Hall, Matthew) (Entered: 04/23/2014) |
| 04/23/2014 | 3 | MOTION to Dismiss *PLAINTIFFS' COMPLAINT* by GENERAL MOTORS LLC (Attachments: # 1 Exhibit Plaintiffs' Complaint)(Hall, Matthew) (Entered: 04/23/2014) |
| 04/23/2014 | | Case Assigned to Judge Emmet G. Sullivan. (kb) (Entered: 04/23/2014) |
| 04/23/2014 | 4 | ORDER directing planitiffs to respond to motion to dismiss by no later than June 5, 2014. Signed by Judge Emmet G. Sullivan on April 23, 2014. (lcegs4) (Entered: 04/23/2014) |
| 04/24/2014 | | Set/Reset Deadlines: Plaintiff's Response To Motion to Dismiss due by 6/5/2014. (mac) (Entered: 04/24/2014) |
| 04/24/2014 | | NOTICE: 4 Order mailed to CELESTINE V. ELLIOTT and LAWRENCE M. ELLIOTT at court's address of record. (mac) (Entered: 04/24/2014) |
| 04/28/2014 | 5 | Case randomly reassigned to Judge Ketanji Brown Jackson. Judge Emmet G. Sullivan no longer assigned to the case. (gt, ) (Entered: 04/28/2014) |
| 05/05/2014 | 6 | GENERAL ORDER AND GUIDELINES FOR CIVIL CASESBEFORE JUDGE KETANJI BROWN JACKSON. See attached Order for details. Signed by Judge Ketanji Brown Jackson on 05/05/2014. (lckbj1) (Entered: 05/05/2014) |
| 05/05/2014 | 7 | Receipt on 05/05/2014 of ORIGINAL FILE, certified copy of transfer order and docket sheet from Superior Court. Superior Court Number 2014 ca01980 B. (Attachments: # 1 Superior Court Documents)(jf, ) (Entered: 05/06/2014) |
| 05/08/2014 | 8 | NOTICE by CELESTINE V. ELLIOTT, LAWRENCE M. ELLIOTT "LET THIS BE FILED" by Judge Ketanji Brown Jackson (rdj) (Entered: 05/08/2014) |
| 05/08/2014 | 9 | Memorandum in opposition to re 3 MOTION to Dismiss *PLAINTIFFS' COMPLAINT* filed by CELESTINE V. ELLIOTT, LAWRENCE M. ELLIOTT. "LET THIS BE FILED. as an opposition to 3 Defendant's Motion to Dismiss" by Judge Ketanji Brown Jackson (rdj) (Entered: 05/08/2014) |
| 05/08/2014 | 10 | NOTICE by CELESTINE V. ELLIOTT, LAWRENCE M. ELLIOTT (rdj) (Entered: 05/08/2014) |
| 05/28/2014 | 11 | STIPULATION *STAYING ACTION* by GENERAL MOTORS LLC. (Ryland, Robert) (Entered: 05/28/2014) |
| 06/02/2014 | 12 | NOTICE of Appearance by Robert Shapleigh Ryland on behalf of GENERAL MOTORS LLC (Ryland, Robert) (Entered: 06/02/2014) |
| 06/11/2014 | | On May 28, 2014, the parties filed 11 a Joint Stipulation that memorializes an agreement they have reached regarding a stay of this matter pending resolution of a motion that Defendant has filed in the United States Bankruptcy Court for the Southern District of New York to enforce a sale order and injunction. This Court does not to honor stipulations to stay proceedings and deadlines. Should the parties desire to stay proceedings and deadlines in this matter, they must file a motion and, in that motion, establish why this Court should exercise its discretion to order such a stay. See Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by |

09-50026-mg    Doc 12782-5    Filed 07/21/14    Entered 07/21/14 17:00:24    Exhibit E
Pg 25 of 99
Case 1:14-cv-00691-KBJ    Document 18-2    Filed 07/21/14    Page 44 of 68

Case MDL No. 2543    Document 309-4    Filed 07/01/14    Page 3 of 23

District of Columbia live database                                                    Page 3 of 3

| | | |
|---|---|---|
| | | motion."). Signed by Judge Ketanji Brown Jackson on 06/11/2014. (lckbj1) (Entered: 06/11/2014) |
| 06/18/2014 | 13 | NOTICE of Appearance by CELESTINE V. ELLIOTT, LAWRENCE M. ELLIOTT (Hornal, Daniel) Modified on 6/18/2014 (jf, ). (Entered: 06/18/2014) |
| 06/20/2014 | 14 | MOTION for Order *Deferring Consideration of Defendant's Pending Motion to Dismiss* by CELESTINE V. ELLIOTT, LAWRENCE M. ELLIOTT (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Certificate of Service)(Hornal, Daniel) (Entered: 06/20/2014) |
| 06/28/2014 | 15 | MOTION for Leave to File *First Amended Complaint* by CELESTINE V. ELLIOTT, LAWRENCE M. ELLIOTT (Hornal, Daniel) (Entered: 06/28/2014) |

<table>
<tr><td colspan="4" align="center">**PACER Service Center**</td></tr>
<tr><td colspan="4" align="center">**Transaction Receipt**</td></tr>
<tr><td colspan="4" align="center">07/01/2014 16:13:10</td></tr>
<tr><td>**PACER Login:**</td><td>ke1159</td><td>**Client Code:**</td><td>25025-0001/43721</td></tr>
<tr><td>**Description:**</td><td>Docket Report</td><td>**Search Criteria:**</td><td>1:14-cv-00691-KBJ</td></tr>
<tr><td>**Billable Pages:**</td><td>2</td><td>**Cost:**</td><td>0.20</td></tr>
</table>

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION-CIVIL ACTIONS BRANCH

Lawrence M. Elliott
Celestine V. Elliott, et al
620 Nicholson Street NW
Washington, DC 20011-2020

_____Plaintiffs_____

FILED
CIVIL

0 1 2014

Wa...

**14-0001980**

Civil Action No._____

General Motors LLC

_____Defendant_____

Serve:

Corporation Service Company
1090 Vermont Avenue, NW
Washington, DC 20005



page 1            Civil Action No.

Lawrence M. Elliott and Celestine V. Elliott, husband and wife for many years and family

hereafter called WE, come before this Honorable Court for justice in a matter dealing with

General Motors Corp. hereafter known as GMC . We are asking for the original cost plus all

interest paid for the 2006 Trailblazer SS and the Chevy Cobalt SS about eighty thousand dollars

( $80,000.00) and five hundred thousand dollars ($500,000.00) for punitive damages both

bought new from Curtis Chevrolet located in Washington, DC, now no longer in existence.

Five hundred eighty thousand dollars ($580,000.00).

We are also asking for immediate relief in this matter forthwith in the form of two vehicles

provided by GMC at their expense for our transportation until this issue is resolved.  WHY?  If

GMC replaced the fuel pump in our Cobalt SS with the same design that split open, it could

happen again with catastrophic results, such as the lose of life and/or serious injury.  GMC

should be made to declare what was used by this Court ,as soon as possible, so no one will be put

in danger. This may well be another recall before someone has to die first or be hurt.  We had

no idea that we would find both by failure of major systems and other problems that GMC

knew of. This problem that could have killed us or still others should be addressed  immediately.

GMC should be stopped from using old part numbers after fixed issues because it keeps one

from knowing if it is the broken one and is safe to use.  This was found to be what they did

and has been documented. First the Cobalt was known to have problems  with the

ELECTRIC POWER STEERING that could render the car incapable of being steered or the

air bags from deploying.  This was fixed under a recall #10V073000.

page 2                                    Civil Action No.

While driving the Cobalt we had a strong odor of gasoline that was first thought to be from another

vehicle or place. What we found upon close inspection for the source, was a gasoline leak that

was from the bottom of the car. It left a puddle on the ground. It was weeks after it started

since in the beginning it was not constant. This was very serious. When I researched it I found it

had been known for some time by GMC, but was recklessly only stated by GMC after I called

them and found it on the WEB.

I found they were only going to fix it if happened in States other than ours. I raised this with

GMC and they fixed it by replacing the fuel pump assembly. Recall #09V419000. I saw the

part they took from the car and was shocked to find that they had made it of what appeared to be

plastic that had developed a split in it. The fuel pump assembly is no place to cut corners. (See

attachment 1)

Look at the temperature the Catalatic Convertor Muffler operates at and how close it is to the leak.

Temperature as high as above 1000 degrees C. (Attachments 2, 3, 4, and 5)

IF THEY REPLACED THE FUEL PUMP ASSEMBLY WITH THE SAME ONE THAT SPLIT.

THAT IS CRIMINAL BEHAVIOR AND SHOULD BE YET ANOTHER RECALL. Look at

the door lock complaints that did not let one leave the car except through the window (Cobalt).

Another complaint.

Even though they say the key lock has been recalled (not until we get the parts) is it a recall.

The key turned the ignition off under many conditions in the Cobalt SS, ( the ignition switch

was also found to split at times and turn the run cycle to the accessory cycle). The accessory cycle

does not have the Air Bags or many features that the Run position supports. They used the same

page 3                                    Civil Action No.

part number so how are we to know  which is the replacement and which is the old defective one.

This turns the air bags and steering (OFF) both of which are controlled electrically,  which is how

it  kills.

According  to what is in the public arena they knew this as early as 2002. It is now 2014. To make

matters worse, they did not change the part number so you would not know if you were

getting or buying the same defect.

The chrome on the door knobs is bubbling off.

The paint on th arm rest on the door is peeling off almost  all looks bad and cheap.

All of the above and possibly more  was reckless, fraudulent, wanton, inexcusable and unlawful to

say the least.  This is why we are bringing the Law Suit. No one (GMC)  should ever be permitted

to keep one cent under these conditions and  should be by any Honorable Court  made to pay

punitive damages as well as a deterrent that will send a message  around the world.  Further if, this

Honorable Court does  justice in this case, we should not be  kept silent as a matter of settlement.

This very often is done as a part of Settlements.  We have to become more humane.

Our Trailblazer SS (SUV)  is unsafe to drive. The Trailblazer SS is showing excessive rust,

although we live in an area that has not bad that much snow since WE bought it.  Many of the

critical electrical components that  determines how and if the vehicle runs are grounded by a wire

from the component ending with  a connector  to a ground to the body in a rusting environment.

(screw, a  washer into a thin piece of body sheet metal) When the electrical components of the

various systems lose the integrity of ground , they do not operate correctly.

ground, they do not operate correctly).  I have a PO121 fault  OBD light on that happened just

page 4                                             Civil Action No.

after the SUV cut off on my wife while she was driving twice in less than a few blocks.  This reads

the throttle  position that tell the brain  (ECM)  what the gas peddle position (throttle plate) is.

Wrong message, wrong outcome.  This is probably why it cut off and has run so erratic since.

All of the emission components depend on sound connections. The throttle position sensor error

Code PO121   may be a ground issue from rust.   GMC carefully stated they were only going

to warrant  for rust if it was ALL the way through. If this is legal, then GMC should have said

when the vehicle stars to rust junk it for it will no longer be reliable. This caused her to loose all of

her control of the vehicle.  We  have kept the family and children  out of the vehicle since.  Our

daughter who lives with us has  borrowed our neighbor's truck to carry the children, for fear of

hurting or possibly killing them.  The weather has been too cold for us to check it further.

Considering  how deceptive  GMC has been, I cannot trust them to touch the vehicle, this is why

its use has been very limited.  The rust  we found is unacceptable.

My wife and I are  CDL drivers, which may have been how she was able to survive this mess.

We have been professional drivers for over forty years  with many miles of experience.



                                   Respectfully submitted,


                                   Lawrence Elliott


                                   Celestine Elliott

Form CA 101-A: Unsworn Declaration Supplement



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

*Lawrence Elliott*
_____
Plaintiff(s)

v.

*General Motors LLC*
_____
Defendant(s)

Case No: _____

This form supplements *COMPLAINT* _____ and is being filed along with that
document.      (list title of pleading, motion, or other document)

(a) *If Executed Inside the United States:*

I declare (certify, verify, or state) under penalty of perjury that the foregoing is true and correct.
Executed on *15* day of *April*, *2014*
        (date)       (month)    (year)

*Lawrence Elliott*
_____
Printed Name

*Lawrence Elliott*
_____
Signature

*Washington, DC*               ✗ *202-744-5443*
_____      _____
City and State, or Other Location      Phone Number

*See* D.C. CODE § 22-2402 (a)(3) (2010).

(b) *If Executed Outside the United States:*

I declare under penalty of perjury under the law of the District of Columbia that the foregoing is
true and correct, and that I am physically located outside the geographic boundaries of the United
States, Puerto Rico, the United States Virgin Islands, and any territory or insular possession
subject to the jurisdiction of the United States. Executed on ____ day of _____, _____,
                                      (date)       (month)      (year)

at _____        _____
   (city or other locations, and state)        (country)

_____
Printed Name

_____        _____
Signature                        Phone Number

*See* D.C. CODE § 16-5306 (2010).

**Note:** This form may be attached to any document to be used in place of sworn written declarations, verifications,
certificates, statements, oaths, or affidavits unless otherwise provided by law; for example, this form may not be used to
supplement a verified complaint in the Landlord and Tenant Branch or Small Claims Branch. *See* D.C. Code §§ 16-1501,
3902 (2001).

Form CA 101-A: Unsworn Declaration Supplement



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

X Celestine Elliott
_____
Plaintiff(s)

v.

X General Motors LLC
_____
Defendant(s)

Case No: _____

This form supplements _____COMPLAINT_____ and is being filed along with that
document. (list title of pleading, motion, or other document)

(a) *If Executed Inside the United States:*

I declare (certify, verify, or state) under penalty of perjury that the foregoing is true and correct.
Executed on 15 day of April, 2014.
    (date)        (month)    (year)

Celestine Elliott
_____
Printed Name

_____
Signature

Washington, DC
_____
City and State, or Other Location

☎ 202-744-3558
_____
Phone Number

*See* D.C. CODE § 22-2402 (a)(3) (2010).

(b) *If Executed Outside the United States:*

I declare under penalty of perjury under the law of the District of Columbia that the foregoing is
true and correct, and that I am physically located outside the geographic boundaries of the United
States, Puerto Rico, the United States Virgin Islands, and any territory or insular possession
subject to the jurisdiction of the United States. Executed on ____ day of _____, _____
                                                                    (date)      (month)    (year)

at _____         _____
    (city or other locations, and state)         (country)

_____
Printed Name

_____
Signature

_____
Phone Number

*See* D.C. CODE § 16-5306 (2010).

**Note:** This form may be attached to any document to be used in place of sworn written declarations, verifications,
certificates, statements, oaths, or affidavits unless otherwise provided by law; for example, this form may not be used to
supplement a verified complaint in the Landlord and Tenant Branch or Small Claims Branch. *See* D.C. Code §§ 16-1501,
3902 (2001).

06 Chevrolet Cobalt Fuel Pump Assembly Parts from Buy Auto Parts



*Attachment 1*
*Civil Action-#*

- DEALER PARTS
  - Brand New $205 $202.95
- OEM New $275.00

Part Number:

*Attachment # 2    Civil Action #*

# eHow

| Mom | Style | Food | Tech | Home | Money | Health | Crafts | More | | eHow Now |

SEARCH

Featured: *[illegible]*

eHow » Cars » Driving & Safety » Driving Safety » The Dangers of a Catalytic Converter

# The Dangers of a Catalytic Converter

By [illegible]

Like   Share   0      Tweet   0      Share

*Since 1975 most cars have included catalytic converters, which remove the most dangerous pollutants from engine exhaust before it is passed to the muffler and out the tailpipe. They do this by passing the exhaust through many clay sheets containing platinum and rhodium. The pollutants bond to these elements and react to form less dangerous molecules which are then emitted. There are several dangers associated with catalytic converters, all of which are avoidable. [Have a question? Get an answer from an online mechanic now!]*

## Other People Are Reading

 How Long Can You Drive With a Bad Catalytic Converter

 How to Reset the Platinum From a Catalytic Converter

## Burns

Catalytic converters get very hot when a car is running, with their exteriors reaching temperatures of 800 to 1,000 degrees F when the engine is working under extremely heavy load conditions. If the car has a partial failure in its ignition system, unburned fuel will reach the converter and push temperatures into the 1,200 to 1,400 F degree range. This presents a clear danger to anyone working underneath the vehicle. To avoid being severely burned, always allow a catalytic converter time to cool before working on it or on anything near it. As a relatively dense structure, it will take longer to cool than other parts of the car.

## Fire

The heat produced by a catalytic converter can be enough to ignite dry tinder. In most cases this only happens when a misfiring spark plug or fuel injector results in unburnt fuel reaching the converter. The converter burns the fuel off, raising the temperature high enough to be a fire risk. Never park a car over any dry leaves or brush, as these could be lit on fire by this heat. Be careful not to spray undercoating on the converter, as this could also ignite under high heat conditions and damage the vehicle.

## Carbon Monoxide

Catalytic converters remove carbon monoxide, a potentially deadly gas, from car exhaust. If the converter is clogged it may not fully accomplish this. A catalytic converter also must warm up before it starts to work, meaning that even cars equipped with one should never be started in enclosed spaces or household garages. The gas is colorless and odorless, making it a danger to anyone

### Related Ads

*[illegible list of ads]*



**View Photos**

09-50026-mg Doc 12782-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 35 of 99
Case 1:14-cv-03691-RBJ Document 18-2 Filed 07/21/14 Page 24 of 68

Case MDL No. 2543   Document 309-4   Filed 07/21/14   Page 35 of 68

The Dangers of a Catalytic Converter | eHow                    http://www.ehow.com/list_7251821_dangers-catalytic-converter.html

connected to that area by ventilation.

**Sponsored Links**

Toyota Hybrid Clearance
Find Cheapest Local Toyota Hybrids. Pay Below MSRP & Invoice Prices!
reply.com/Toyota

#1 Extended Auto Warranty
We Pay Parts Labor & 24/7 Roadside. Get a Free Quote in Seconds!
directbuywarranty.com/Free_Quote

Scrap Metal Recycling
See Listings for Scrap Metal Buyers in Your Area. Compare Prices Online
candofinance.com/MetalRecycling

Sell your Scrap Palladium
Unique opportunity to sell your scrap Palladium to our Refinery
directgold.metallixrefining.com/

## Related Searches

Catalytic Converter

Fuel Efficient Cars

Exotic Cars

Exhaust Gas Emissions

Fuel Sales

## Ask a mechanic

Ask a mechanic – get your answers in real time!

*10 Fun Ways To Spend Your Tax Refund*

## You May Like

 Catalytic Converter Failure Symptoms

 How to Unplug a Catalytic Converter

 Signs of a Bad Catalytic Converter

 How to Check If Your EVT Is Full Platinum?

 How Can I Tell If My Catalytic Converter Is Plugged?

 How Is Platinum Extracted From a Catalytic Converter?

 How to Drill a Clogged Catalytic Converter

 Why Is My Catalytic Converter Glowing Red?



Sponsored Content

 Little Known Way to Pay Off Mortgage
**One Smart Penny**

 What the Bible Says About Money (Shocking)
**Moneynews**

 25 Cars Who Totally Overpaid Their Salary Even Uses
**StereoTude**

 These 8 Companies Will Give You $125 or More
**The Penny Hoarder**

by Taboola

*(Attachment # 3   Civil Action #*

SEARCH

Mom    Style    Food    Tech    Home    Money    Health    Crafts    More    eHow Now

Featured:

## "...an outstanding ally in protecting the environment..."

*PHIL DEMOCRAT MENDELSON*

eHow » Cars » Auto Repair » Mufflers » How Hot Does a Catalytic Convertor Get?

# How Hot Does a Catalytic Convertor Get?

Like  Share  2    Tweet  0    Share

*The catalytic converter is an important ......... of a modern vehicle exhaust system. It uses the catalytic action of precious metals to convert combustion pollutants into naturally occurring gases, reducing emissions of hydrocarbons, nitrogen oxides and carbon monoxide to low levels.*

## Other People Are Reading

     

### Two Important Design Parameters

The minimum temperature at which a catalytic converter begins to function, called the light-off temperature, is 600-700 degrees F.

........ manufacturers usually minimize the distance between the engine and catalytic converter. This reduces the time required for the converter to reach operating temperature, which in turn reduces cold-start emissions.

### Normal Temperatures and Beyond

The ideal operating temperature range of catalytic converters is 900-1,000 degrees F, although they can, and often do, operate above this range.

However, when a converter operates above 1,300 degrees F for prolonged periods, catalysts and converter components begin to melt. The result is a gradual and usually permanent degradation in performance.

### High Converter Temperatures Spell Trouble

A converter temperature can rise dramatically when an ...... is badly malfunctioning or for some other reason producing an excessive amount of heat and pollutants. In such cases the catalyst temperature can exceed 2,000 degrees F. When this happens the converter becomes deactivated and conversion efficiency approaches zero.

Sponsored Links

Related Ads



*View Photos*

You May Like





3/30/2014 2:16 F

| Main Menu | | Table of Contents |
|---|---|---|

**Parking**    *attachment # 4    Civil Action #*

Always use the parking brake when you park your vehicle. The indicator on the instrument panel shows that the parking brake is not fully released; it does not indicate that the parking brake is firmly set. Make sure the parking brake is set firmly or your vehicle may roll if it is parked on an incline.

If your vehicle has an automatic transmission, set the parking brake before you put the transmission in Park. This keeps the vehicle from moving and putting pressure on the parking mechanism in the transmission — making it easier to move the shift lever out of Park when you want to drive away.

If the vehicle is facing uphill, turn the front wheels away from the curb. If you have a manual transmission, put it in first gear.

If the vehicle is facing downhill, turn the front wheels toward the curb. If you have a manual transmission, put it in reverse gear.

Make sure the parking brake is fully released before driving away. Driving with the parking brake partially set can overheat or damage the rear brakes.

**Parking Tips**
• Make sure the moonroof and the windows are closed.

• Turn off the lights.

• Place any packages, valuables, etc., in the cargo area or take them with you.

• Lock the doors and the tailgate with the key or the remote transmitter.
Make sure the hatch glass is closed securely.

• Never park over dry leaves, tall grass, or other flammable materials. The three way catalytic converter gets very hot, and could cause these materials to catch on fire.

**210**  Driving

09-50026-smg Doc-13782-BJ Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 38 of 99
Case 1:14-cv-03391-RBJ Document 48-2 Filed 07/21/14 Page 27 of 68

Case MDL No. 2543   Document 309-4   Filed 07/01/14   Page 16 of 23

*Attachment #5 (Civil Action #*

presence of catalyst materials like – Platinum, Rhodium and/or Palladium. In a catalytic converter, large surface area is provided for the chemical reaction to take place and a very small amount of precious catalyst material is distributed throughout the structure in an ultra-thin layer. Catalytic reactions are generally exothermic, so heat-shields and temperature withstanding materials need to be used for its construction. Figure-1 shows the typical placement of a catalytic converter in an automobile.

 

**Catalytic Converter**

Fig 1. Location of Catalytic Converter in a typical car.

Generally speaking, catalytic converters are good post-engine emission controlling devices capable of achieving more than 90% reduction of the emissions generated by a well tuned modern engine [1]. However, it should be noted that, this level of performance from a catalytic converter can be only expected, when a number of prerequisites are met. For a catalytic converter to function effectively, it is essential that the proper chemistry and operating temperature be present. These factors are critical to consider when retrofitting a converter on a vehicle which was not originally designed or equipped for its use. These generally include vehicles produced till late 80's in Japan and European countries and till early 80's in USA, many of which are still used in developing countries [2].

Catalytic converters operate under complicated highly dynamic conditions and catalytic reactions occur at typical exhaust gas temperatures leaving the cylinder. This in warmed-up gasoline engines, can vary from 300°C to 400°C during idle, raising even up to about 1000°C, depending on the driving conditions. Different engines possess different warm-up characteristics from cold-start as well. These catalytic reactions depend on the temperature and the composition of the exhaust gas. The activity of the catalyst as a function of its temperature is a critical feature of the catalyst's performance and is affected by a number of exothermic reactions. When the engine is started, the exhaust gas gradually heats up to initiate the catalytic reactions, once the 'light-off'(typically reaching 50% conversion efficiency) temperature is reached. NOx efficiency remains very high regardless of temperature. However, CO and HC efficiency varies *significantly* *with* temperature. As temperature increases CO oxidation reactions typically start first, followed then by HC oxidation[3,4]. Hence the placement of the converter in the exhaust system relative to the engine is important to

ensure that the exhaust temperature is sufficient for the operating range of the catalyst as suggested from figure 2a. On the other hand, if the converter is too close to the engine, it may be exposed to excessive temperature damaging the catalyst [5].



Fig 2a. Effect on HC emission in a FTP cycle as a function of CC start temperature [6].



Fig 2b. Typical conversion regimes for controlling CC conversion rate as a function of temperature [7].

Figure 2b presents, a typical activity plot. At low temperatures, the reaction rate is so small that no conversion is reached over the catalyst. In this stage, the reaction kinetics is the controlling factor for the overall reaction rate, whereas in the second stage, the conversion is limited by the pore diffusion in the wash-coat. Catalyst light-off typically occurs in this temperature range. The high temperature region corresponds to bulk mass transfer between the gas phase and wash-coat [7].

Thermocouples(TC) are still the most reliable way of exhaust gas temperature measurement, if exposed to the gas. Unfortunately this is not very convenient to measure the temperature of automotive exhaust passing through the piping. Resistance temperature detectors(RTD) in addition may cause significant disturbances to exhaust flow. To overcome these limitations a number of other techniques are being employed [8]. Infra-Red(IR) sensors are being used to estimate internal exhaust temperature from pipe surface IR measurements [9], systems with high accuracy are expensive. High-temperature stable air borne ultrasonic sensors have been successfully used for exhaust gas



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Lawrence Elliott et al
_____
Plaintiff

vs.                                        Case Number **14 - 0001980**

General Motors LLC
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Lawrence Elliott/Celestine Elliott          Clerk of the Court
_____
Name of Plaintiff's Attorney

1020 Nicholson Street, NW          By _____
_____                        Deputy Clerk
Address

Washington, DC 20011
_____          Date  04/01/14

_____
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오          ፡አማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                              CASUM.doc

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

### INFORMATION SHEET

**14 - 0 0 0 1 9 8 0**

*Lawrence Elliott etcl*

vs

*General Motors LLC*

Case Number: _____

Date: _____

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| Firm Name: | ☐ Attorney for Plaintiff |
| | ☑ Self (Pro Se) |
| Telephone No.:      Six digit Unified Bar No.: | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury   ☑ 6 Person Jury   ☐ 12 Person Jury

Demand: $_____    Other: _____

**PENDING CASE(S) RELATED TO THE ACTION BEING FILED**

Case No.:_____ Judge: _____ Calendar #:_____

Case No.:_____ Judge: _____ Calendar#:_____

**NATURE OF SUIT:**   *(Check One Box Only)*

### A. CONTRACTS

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 15 Special Education Fees
☐ 10 Mortgage Foreclosure D.C. Code § 42-815

☐ 07 Personal Property
☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 13 Employment Discrimination

**COLLECTION CASES**

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 16 Under $25,000 Consent Denied
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 18 OVER $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass
☐ 06 Traffic Adjudication

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
■ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 09 Harassment
☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED

CV-496/Jun 13

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 04 Condemnation (Emin. Domain)
- [ ] 05 Ejectment
- [ ] 07 Insurance/Subrogation
     Under $25,000 Pltf.
     Grants Consent
- [ ] 08 Quiet Title
- [ ] 09 Special Writ/Warrants
     (DC Code § 11-941)

- [ ] 10 T.R.O./ Injunction
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment
- [ ] 17 Merit Personnel Act (OEA)
     (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability
- [ ] 24 Application to Confirm, Modify,
     Vacate Arbitration Award
     (DC Code § 16-4401)

- [ ] 25 Liens: Tax/Water Consent Granted
- [ ] 26 Insurance/ Subrogation
     Under $25,000 Consent Denied
- [ ] 27 Insurance/ Subrogation
     Over $25,000 Pltf. Grants Consent
- [ ] 28 Motion to Confirm Arbitration
     Award (Collection Cases Only)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 30 Liens: Tax/ Water Consent Denied
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower
- [ ] 34 Insurance/Subrogation
     Over $25,000 Consent Denied

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
     Certificate

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
     Judgment [ D.C. Code §
     2-1802.03 (h) or 32-1519 (a)]
- [ ] 20 Master Meter (D.C. Code §
     42-3301, et seq.)

- [ ] 21 Petition for Subpoena
     [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a) (1)
     (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

_Lawrence Elliott_
_____
Attorney's Signature

04/01/2014
_____
Date

CV-496/Jun 13



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

LAWRENCE M ELLIOTT et al
Vs.
GENERAL MOTORS LLC

C.A. No.      2014 CA 001980 B

## INITIAL ORDER AND ADDENDUM

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

    (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge CRAIG ISCOE
Date:  April 2, 2014
Initial Conference: 9:30 am, Friday, July 18, 2014
Location:  Courtroom 200
        500 Indiana Avenue N.W.
        WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

ELLIOTT, LAWRENCE M, et al. Vs. GENERAL MOTORS LLC, Docket No. 2014-CA-001980 (D.C. Super. Ct. Apr. 01, 2014), Court

# General Information

| | |
|---|---|
| **Court** | Superior Court of District Columbia |
| **Docket Number** | 2014-CA-001980 |
| **Status** | Open |

**Bloomberg Law**®   © 2014 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service
View at Bloomberg Law   **// PAGE 19**

ELLIOTT, LAWRENCE M, et al. Vs. GENERAL MOTORS LLC, Docket No. 2014-CA-001980 (D.C. Super. Ct. Apr. 01, 2014), Court

# Notes

No Notepad Content Found

**Bloomberg Law**®    © 2014 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service
View at Bloomberg Law    **// PAGE 20**

# Exhibit 1

09-50026-mg Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 47 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/21/14 Page 36 of 68
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 2 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 1 of 53

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LAWRENCE M. ELLIOTT )
    and )
CELESTINE V. ELLIOTT., )
       )
        Plaintiffs, )   Case No. 1:14-cv-00691-KBJ
v. )
       )
GENERAL MOTORS LLC, )
       )
        Defendant. )

## PLAINTIFFS' MOTION FOR LEAVE TO FILE THE
## PROPOSED FIRST AMENDED COMPLAINT AND TO JOIN PARTIES

On June 20, 2014, plaintiffs, Lawrence and Celestine Elliott, filed a motion in this Court requesting that consideration of General Motors LLC's ("GM's") Motion to Dismiss be deferred until June 27, 2014, while plaintiffs drafted and filed a motion for leave to file an amended complaint.

Plaintiffs now file this motion, pursuant to Fed. R. Civ. P. 15(a)(2), for leave to file the attached First Amended Complaint against GM.

Plaintiffs additionally request leave to join Berenice Summerville as a Plaintiff and Delphi Automotive PLC and Delphi Automotive Systems LLC as defendants, pursuant to Fed. R. Civ. P. 21 and Fed. R. Civ. P. 20(a)(1)(b). Ms. Summerville's claims against GM raise the same or common questions of law and fact as those of Mr. and Mrs. Elliott. The proposed Defendants are independently and jointly and severally liable with GM for many of the injuries that Plaintiffs allege.

1

09-50026-mg Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 48 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 37 of 68
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 3 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 2 of 53

Pursuant to Local Rule 7(m), counsel for Plaintiffs contacted counsel for GM regarding

the filing of this motion. Counsel for GM stated that GM would not consent to Plaintiffs' request

to amend their pleadings.

          Respectfully submitted,

          /s/ Daniel Hornal (D.C. Bar No. 1005381)

DATE: June 28, 2014          _____

          Daniel Hornal, Esq.
          705 4th Street, NW
          Suite 403
          Washington, DC, 20001
          (202) 709 9662
          daniel@taloslaw.com
          Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAWRENCE M. ELLIOTT | ) | |
| and | ) | |
| CELESTINE V. ELLIOTT., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:14-cv-00691-KBJ |
| v. | ) | |
| | ) | |
| GENERAL MOTORS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE THE PROPOSED FIRST AMENDED COMPLAINT AND TO JOIN PARTIES

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:34   Exhibit E
Pg 50 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 39 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 5 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 4 of 53

### I.   Plaintiffs' Motion for Leave to File First Amended Complaint

On April 1, 2014, Lawrence and Celestine Elliott, as *pro se* plaintiffs, filed a Complaint in letter form in the Superior Court of the District of Columbia, which was docketed as Civil Action No. 14-001980. General Motors LLC ("GM") was served with a Summons and the Complaint on April 4, 2014, and on April 23, 2014, GM removed the case to this Court.

On April 23, 2014, GM moved to dismiss Mr. and Mrs. Elliott's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 3). Plaintiffs' original Complaint was filed without the benefit of counsel and contains a variety of complaints stemming from their ownership of their 2006 Chevrolet Cobalt. *See* Complaint in Superior Court Documents, May 5, 2014 (Doc. No. 7).

As the Proposed First Amended Complaint alleges, Mr. and Mrs. Elliott are 78 and 73 years of age respectively.  After they retired from over twenty-five years as taxi and commercial drivers, they paid the full manufacturers' suggested retail price for a new 2006 Chevrolet Cobalt. They had used this vehicle to transport their family, including grand and great-grand children who reside with them or nearby.  This car has safety related defects that posed unreasonable and imminent danger of death or serious bodily injury. New GM and Delphi concealed these defects from them since the time of New GM's inception in October 2009.

On May 12, 2014, GM notified the United States Judicial Panel on Multidistrict Litigation that this action is related to the proceedings in *In re: General Motors LLC Ignition Switch Litigation. See* Notice of Related Action *(In re: General Motors LLC Ignition Switch Litigation* MDL No. 2543 Doc. No. 223). On June 11, 2014, that forum determined that Elliot et al. v. GM is not appropriate for inclusion in the Multidistrict Litigation proceedings. *See*

4

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:26   Exhibit E
Pg 51 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 40 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 6 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 5 of 53

Notice to Counsel *(In re: General Motors Ignition Switch Litigation* MDL No. 2543 Doc. No. 269).

April 21, 2014, in *In re: Motors Liquidation,* GM filed a Motion to Enforce the Bankruptcy Court's July 5, 2009 Sale Order and Injunction. *See* Motion to Enforce (*Motors Liquidation Company,* (Bankr. S.D.N.Y), Doc. No. 12620).  GM again unilaterally designated Mr. and Mrs. Elliotts' action, on a spreadsheet schedule, along with dozens of others, and based solely on the *pro se* letter, as an "ignition switch action" in its attempt to bar claims against it based on the bankruptcy proceedings of its predecessor. *See id.*  GM is currently attempting to circumvent this Court's authority over its docket by appealing to the Bankruptcy Court in the Southern District of New York to bar Mr. and Mrs. Elliott even from presenting the instant motion to this Court.  *See id.* Plaintiffs, through their counsel, are in contact with the Bankruptcy Court to determine how to proceed to correct GM's erroneous inclusion of the Elliott's claims in those proceedings.

Plaintiffs now move for leave to amend their original complaint, pursuant to Fed. R. Civ. P. 15(a)(2), to join parties, and to clarify their factual allegations and the legal claims they assert. Such clarification is indispensable to the ability of this Court and sister Courts considering related matters to give fair consideration to Plaintiffs claims. If a party seeks leave of the court to amend the complaint, the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). This Court has previously found that amendments should only be denied where there is a clear justification for doing so, such as "futility, bad faith, undue delay, or dilatory motive." *See, e.g., Lopez v. JetSetDC, LLC*, ---F. Supp. 2d--- (D.D.C. 2014) (citing *Monroe v. Williams*, 704 F. Supp. 621, 623 (D.D.C. 1988)).  Due to the *pro se* nature of Plaintiffs' original Complaint, the intent of this Amended Complaint is the opposite of dilatory. The Amended Complaint clarifies the position of Plaintiffs such that their claims

5

09-50026-smb Doc 13792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 52 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 41 of 68
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 7 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 6 of 53

can be more easily evaluated in light of GM's Motion to Dismiss under Fed. R. Civ. P.

12(b)(6) and other issues that are reasonably expected to arise in the litigation.

Plaintiffs seek to join Berenice Summerville as a Plaintiff. Ms. Summerville bought a dark

blue 2010 Chevrolet Cobalt in December of 2009 as a Christmas gift for her mother. Ms.

Summerville primarily used the car to drive her mother, who is now eighty years old, to doctor

appointments and run errands. Ms. Summerville resides in Maryland, just five miles outside

the District of Columbia; she frequently drives her Cobalt within the District. Just like Mr. and

Mrs. Elliott, Ms. Summerville has endured a litany of problems with her Cobalt; there has

periodically been an odor of gasoline around the car, and she has noted the vehicle's

particularly poor gas mileage – both indicators of a gas leak that would be consistent with the

2006 Cobalt's defective gas pump. Additionally, her 2010 Cobalt uses the same defective

ignition switch as the 2006 Cobalt that belongs to Mr. and Mrs. Elliott.

Plaintiffs seek to join related Delphi entities as Defendants. As the Proposed First

Amended Complaint alleges, Delphi manufactured the defective ignition switches in Plaintiffs

and Ms. Summerville's vehicles, and collaborated with GM in an extensive and elaborate

scheme to conceal the defect from Plaintiffs, class members, regulatory authorities, investors,

and others

Fed. Rule Civ. P. 21 states, "the court may at any time, on just terms, add or drop a party."

In this case, those just terms come from Fed. Rule Civ. P. 20. Rule 20 requires first that the

claims of the two parties arise out of the same transaction, occurrence or series thereof – that

the claims are logically related. Fed. Rule Civ. P 20(a)(1)-(2); *see, e.g., Disparte v. Corporate

Executive Bd.* 223 F.R.D. 7, 11 (D.D.C. 2004) (citing *Moore v. New York Cotton Exchange,*

270 U.S. 593, 610)). The claims that Mrs. Summerville brings, like Mr. and Mrs. Elliott's

09-50026-smb   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 53 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/21/14   Page 42 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 8 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 7 of 53

claims, arise out of the same conspiracy between GM, Delphi, and their dealers to conceal the extent of the danger posed by the latent defects in the vehicles plaintiffs purchased and drove.

Second, Rule 20(a)(1)-(2) requires that there be *some* question of law or fact as to all of the plaintiffs' claims. Fed. Rule Civ. P 20(a)(1)-(2); *see, e.g, Disparte*, 223 F.R.D. at 11 (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974)). The claims that Ms. Summerville brings share many questions of law and fact in common with the claims that Mr. and Mrs. Elliott bring, including but not limited to the following:

    A.  Whether the ignition switches in Plaintiffs' and Class Members vehicles are defective;

    B.  Whether the fuel pumps in Plaintiffs' and Class Members' Chevrolet Cobalts are defective;

    C.  Whether Defendants violated 18 U.S.C. § 1962(c) by conducting the affairs of the RICO Enterprise through a pattern of racketeering activity; and

    D.  Whether Defendants had a duty to disclose the latent safety defects in plaintiffs' cars upon Defendants' discovery of those defects.

Finally, joinder may not prejudice any party or cause needless delay. *See Call of the Wild Movie, LLC v. Does*, 770 F. Supp. 2d 332 (D.D.C. 2011). In this case, joinder does not prejudice any party and is explicitly intended to reduce delay by increasing the efficiency with which these common questions of law and fact can be resolved. Pursuant to judicial efficiency and expeditious resolution of disputes, joinder of parties and claims has been "strongly encouraged." *United Mine Workers of America v. Gibbs,* 383 U.S. 715 (1966); *see also M.K. v. Tenet,* 216 F.R.D. 133 (D.D.C. 2002) (stating the interest of this Court in preventing "multiple lawsuits, extra expense to the parties, and loss of time to the court [and]...litigants.).

09-50026-mg    Doc 12792-5    Filed 07/21/14    Entered 07/21/14 17:00:24    Exhibit E
Pg 54 of 99
Case 1:14-cv-00691-KBJ    Document 18-2    Filed 07/11/14    Page 43 of 68
Case MDL No. 2543    Document 309-5    Filed 07/01/14    Page 9 of 54
Case 1:14-cv-00691-KBJ    Document 15    Filed 06/28/14    Page 8 of 53

Respectfully submitted,

/s/ Daniel Hornal (D.C. Bar No. 1005381)

DATE: June 28, 2014

_____
Daniel Hornal, Esq.
705 4th Street, NW
Suite 403
Washington, DC, 20001
(202) 709 9662
daniel@taloslaw.com
Attorney for Plaintiffs

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 55 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/21/14   Page 44 of 58
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 10 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 9 of 53

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAWRENCE M. ELLIOTT            )
    and                                        )
CELESTINE V. ELLIOTT.,         )
                              )
              Plaintiffs,         )        Case No. 1:14-cv-00691-KBJ
v.                                               )
                              )
GENERAL MOTORS LLC,            )
                              )
             Defendant.         )

### [PROPOSED] Order

Upon consideration of the Motion for Leave to File First Amendment Complaint filed by Plaintiffs, Mr. and Mrs. Elliott, IT IS HEREBY ORDERED that the Plaintiffs' motion is GRANTED. The clerk is directed to file the First Amended Complaint.

Upon consideration of Plaintiffs' Motion for Permissive Joinder of Berenice Summerville as a Plaintiff, IT IS HEREBY ORDERED that the Plaintiffs' motion is GRANTED and Berenice Summerville is joined as a Plaintiff in this matter.

Upon consideration of Plaintiffs' Motion for Permissive Joinder of Delphi Automotive PLC and Delphi Automotive Systems LLC ("the Delphi parties"), IT IS HEREBY ORDERED that the Plaintiffs' motion is GRANTED and the Delphi parties are joined as Defendants in this matter.

ORDERED, District of Columbia, this _____ day of _____, 2014

_____
UNITED STATES DISTRICT JUDGE

9

09-50026-mg    Doc 12792-5    Filed 07/21/14    Entered 07/21/14 17:00:24    Exhibit E
Pg 56 of 99
Case 1:14-cv-00691-KBJ    Document 18-2    Filed 07/11/14    Page 45 of 68
Case MDL No. 2543    Document 309-5    Filed 07/01/14    Page 11 of 54
Case 1:14-cv-00691-KBJ    Document 15    Filed 06/28/14    Page 10 of 53

**DISTRIBUTION:**

Robert Sharpleigh Ryland
KIRKLAND & ELLIS LLP
655 15th Street, NW
Suite 1200
Washington, DC 20005
Tel: (202) 879-5086
Fax: (202) 879-5200
robert.ryland@kirkland.com
Attorney for General Motors LLC

Matthew Francis Hall
DUNWAY & CROSS
1100 Connecticut Avenue, NW
Suite 410
Washington, DC 20036
Tel: (202) 862-9700
Fax: (202) 862-9710
Attorney for General Motors LLC

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing Plaintiffs' Motion to Amend Complaint

and Join Plaintiffs and Defendants, Memorandum in Support thereof, and Proposed Order on

the following parties by electronically filing them with the Court's electronic case filing system

this 28th day of June 2014:

Robert Sharpleigh Ryland
KIRKLAND & ELLIS LLP
655 15th Street, NW
Suite 1200
Washington, DC 20005
Tel: (202) 879-5086
Fax: (202) 879-5200
robert.ryland@kirkland.com
Attorney for General Motors LLC

Matthew Francis Hall
DUNWAY & CROSS
1100 Connecticut Avenue, NW
Suite 410
Washington, DC 20036
Tel: (202) 862-9700
Fax: (202) 862-9710
Attorney for General Motors LLC

/s/ Daniel Hornal (D.C. Bar No. 1005381)

DATE: June 28, 2014 _____
Daniel Hornal, Esq.
705 4th Street, NW
Suite 403
Washington, DC, 20001
(202) 709 9662
daniel@taloslaw.com
Attorney for Plaintiffs

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAWRENCE M. ELLIOTT, | ) | |
| CELESTINE V. ELLIOTT, and | ) | |
| BERENICE SUMMERVILLE, | ) | |
| for themselves, on behalf | ) | **Case No. 1:14-cv-00691 (KBJ)** |
| of all others similarly situated, | ) | |
| and on behalf of the People of the | ) | **CLASS ACTION FOR DECLARATORY,** |
| District of Columbia, | ) | **INJUNCTIVE, AND MONETARY RELIEF** |
| | ) | |
| | ) | **REPRESENTATIVE ACTION FOR** |
| Plaintiffs, | ) | **DECLARATORY, INJUNCTIVE, AND** |
| | ) | **MONETARY RELIEF** |
| | ) | **PURSUANT TO THE** |
| v. | ) | **D.C CONSUMER PROTECTION** |
| | ) | **PROCEDURES ACT, D.C. Code § 28-3901** |
| GENERAL MOTORS LLC, | ) | **et seq.** |
| DELPHI AUTOMOTIVE PLC, | ) | |
| and DPH-DAS LLC f/k/a DELPHI | ) | **JURY TRIAL DEMANDED** |
| AUTOMOTIVE SYSTEMS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

### INTRODUCTORY STATEMENT

Plaintiffs LAWRENCE ELLIOTT, CELESTINE ELLIOTT and BERENICE

SUMMERVILLE bring this action for themselves, and on behalf of all persons similarly

situated who own or have owned the substandard and dangerous vehicles identified below at

any time since October 19, 2009.  The Elliotts also bring this action of behalf of the public as

representatives of the People of the District of Columbia.

1.      Mr. and Mrs. Elliott are 78 and 73 years of age respectively as of the date of

filing this Complaint. They have been married for forty-nine years. They are retired

commercial drivers with over twenty-five years of on-the-road experience.  After they retired

from professional driving, they paid the full manufacturer's suggested retail price for a new

2006 Chevrolet Cobalt at a now-defunct GM dealership in Washington, D.C. The Elliotts'
Cobalt has substantial safety related defects that render it dangerous to drive. The Elliotts'
Cobalt has substantial safety related defects that render it dangerous to drive; these same
defects are  suspected of causing death or personal injury to hundreds of people across the
United States, according to the National Highway Traffic Safety Administration ("NHTSA).

2.      The Elliotts' Cobalt has a defective ignition switch that could, unexpectedly and
without warning, shut down the car's engine and electrical systems while the car is in motion -
rendering the power steering, anti-lock brakes and airbags inoperable.

3.      The Elliotts' Cobalt has a plastic fuel pump which is mounted on the top of the
gas tank. When the fuel pump leaks, gasoline flows down the side of the tank and can pool
under the car, dangerously close to the car's catalytic converter. The fuel pump is not designed
to withstand the reasonably foreseeable environmental and operating conditions to which a car
can be expected to be exposed. The fuel pump in the Elliotts' car has already failed to
withstand the heat to which it is exposed. After noticing a persistent fuel smell, the Elliotts
eventually discovered a two-foot in diameter pool of leaked gasoline under the car.
Subsequently, a GM dealer replaced the pump at New GM's direction, with, as far as Plaintiffs
can determine, a new plastic replica of the first pump - presenting the same defect and the same
unreasonable safety risk of personal injury and property damages to Plaintiffs and class
members due to the fire hazards associated with the pooling gas.

4.      The Elliotts, whose entire family – including their children, grandchildren, and
great-grandchildren – depended upon the Cobalt for transportation, are now extremely hesitant
to drive the vehicle. They fear for their own safety and, in particular, for the safety of their
great grandchildren (aged 6 and 8) who reside with them and were frequently driven to school
in the car before the Elliotts discovered the extent and nature of the Cobalt's defects.

09-50026-smb  Doc 12792-5  Filed 07/21/14  Entered 07/21/14 17:00:24  Exhibit E
Pg 60 of 99
Case 1:14-cv-00691-KBJ  Document 18-2  Filed 07/11/14  Page 49 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 15 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 14 of 53

5.      In December 2009, Ms. Berenice Summerville bought a 2010 Chevrolet Cobalt as a Christmas gift for her mother, Louella Summerville, who is 80 years of age as of the date of the filing of this First Amended Complaint. Like the Elliotts' 2006 Cobalt, Ms. Summerville's vehicle contains a defective ignition switch and a defective fuel pump, both of which posed and continue to pose risks of imminent death, personal injury or property damage. Ms. Summerville first became aware of problems with the car when she noticed the smell of gasoline when starting or switching off the car. She also noticed that the car had particularly poor gas mileage, which she supposed was consistent with fuel leakage. When she took the car in for maintenance, she asked the mechanic at Ourisman Chevrolet of Marlow Heights ("Ourisman"), a GM dealership, to inspect for fuel leakage, but the dealer refused to do so without a fee. Because the odor and poor performance continued, she again requested that the fuel system be inspected for leaks at her car's most recent service. After searching the vehicle history, Ourisman representatives informed Ms. Summerville that although there had been a recall on the fuel system, it was now closed. Ourisman again refused to inspect the fuel system without a fee. Ms. Summerville also noticed that the airbag light was flickering on and off, inexplicably, on both the passenger and driver sides of the car. She no longer drives the Cobalt because of fear for her own and her mother's safety.

6.      GM admits that, since its incorporation on October 19, 2009, General Motors LLC ("GM" or "New GM") has known and failed to disclose that the Plaintiffs' Cobalts and class members' vehicles are substandard and pose significant and unreasonable risks of death, serious personal injury, and property damage. GM could hardly deny these facts in any event. New GM acquired all the books, records and accounts of General Motors Corporation ("Old GM"), including records that document the unlawful concealment of defects in vehicles sold by Old GM prior to New GM's existence. New GM also retained the engineering, legal and

09-50026-smb   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 61 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 60 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 16 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 15 of 53

management officials who were responsible for designing, engineering, and concealing safety-related defects at Old GM; those officials were immediately assigned to precisely the same tasks at New GM, and they implemented or continued identical policies and practices to conceal safety related defects in GM products.

7.      The National Highway Traffic Safety Administration (NHTSA) fined New GM $28,000,000, the maximum permissible under applicable law, for GM's failure to disclose defects related to the ignition switches in Plaintiffs' and class members' cars.

8.      For nearly five years after its inception, GM failed to disclose to, and actively concealed from, Plaintiffs, class members, investors, litigants, courts, law enforcement and other government officials including the NHTSA, the risks of death, personal injury, and property damage posed by its defective products.  Instead, conspiring with Delphi, Ourisman, GM's dealers nationwide, outside lawyers, and various others, GM engaged in, and may still be engaging in, an extensive, aggressive and complex campaign to conceal and minimize the safety-related defects that exist in Plaintiffs' and class members' vehicles. That campaign is designed to mislead Plaintiffs, class members, consumers, investors, courts, law enforcement officials, and other governmental officials, including the NHTSA, that the value of the company and the worth and safety of its products are greater than they are. With those same co-conspirators, GM directed an unlawful and continuing enterprise calculated to gain an unfair advantage over competitor automakers that conduct their business within the bounds of the law.

9.      Defendants first deployed their campaign of deception on the day that New GM began operating. The scheme continued at least until its exposure began in early 2014. Through their deception, Defendants recklessly endangered the safety of Plaintiffs, their families, and members of the public. Defendants' wrongful acts and omissions harmed Plaintiffs and class

15

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 62 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 61 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 17 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 16 of 53

members by exposing them to increased risk of death or serious bodily injury, by depriving

them of the full use and enjoyment of their vehicles, and by causing a substantial diminution in

the value of the vehicles to Plaintiffs and class members, and a substantial diminution in value

of their vehicles on the open automobile market.

10.     As of the date of the filing of this First Amended Complaint, the United States

Department of Justice has opened, and is pursuing, a criminal investigation into GM's

campaign of deceit.

11.     GM's Chief Executive Officer Mary Barra admitted on behalf of the company

that New GM employees knew about safety-related defects in millions of vehicles, including

the Elliotts' 2006 Cobalt and Ms. Summerville's 2010 Cobalt, and that GM did not disclose

those defects as it was required to do by law. Ms. Barra attributed New GM's "failure to

disclose critical pieces of information," in her words, to New GM's policies and practices that

mandated and rewarded the unreasonable elevation of cost concerns over safety risks. For

example, GM chose to use and then conceal defective ignition switches in Plaintiffs' and class

members' vehicles in order to save approximately $0.99 per vehicle.

12.     In executing their scheme to conceal the dangerous character of Plaintiffs'

vehicles, Defendants violated a multitude of laws:

a)     In furtherance of their common design to prevent Plaintiffs, class

members, other consumers, law enforcement and other governmental officials,

litigants, courts, and investors from learning of the safety defects in GM cars,

GM, Delphi, and GM's dealers conducted a racketeering enterprise and engaged

in a pattern of racketeering activities, including repeated and continuous acts of

mail and wire fraud, television and radio fraud, and tampering with witnesses

and victims in violation of the Racketeer Influenced and Corrupt Organizations

16

09-50026-smb   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 63 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 62 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 18 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 17 of 53

Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, causing the harm to Plaintiffs and class

members described above.

b)       By concealing the material fact of the dangerousness of the Plaintiffs'

and class members' vehicles, by failing properly to repair the safety defects in

the cars in a timely manner, and by engaging in other unconscionable and/or

unlawful behavior, GM and Delphi violated the District of Columbia Consumer

Protection Procedures Act, D.C. Code § 28-3901 *et seq.*, and the Maryland

Consumer Protection Act,. Md. Code, Com. Law § 13-408 *et seq.*, causing the

harm described above to Plaintiffs and class members.

c)       GM and Delphi also violated their duties to warn Plaintiffs and class

members about the dangers that their vehicles posed, resulting in economic loss

and increased risk of personal injury for which Defendants are liable to

Plaintiffs and Class members under the common law of the District of Columbia

and the States of Florida, Maryland, New Jersey and Ohio.

d)       Because they intentionally concealed a material fact from Plaintiffs and

Class members, Defendants are liable to Plaintiffs for the harm Plaintiffs and

class members have suffered and for punitive damages under the common law

of fraud common to the several States.

e)       By civilly conspiring to conceal the safety-related defects of GM

vehicles, both among themselves and among nonparties to this litigation, and

because they acted jointly to harm Plaintiffs and class members, Defendants are

jointly and severally liable for all harm they or any co-conspirator caused.

f)       Defendants aided and abetted the conduct of each other and of

nonparties in concealing the safety-related defects of GM vehicles.

17

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 64 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 33 of 68
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 19 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 18 of 53

g)        With respect to the claims of Ms. Summerville and other purchasers of

identified cars sold since New GM's inception, Defendants are also liable for

breach of a sellers implied warranty of merchantability under the Uniform

Commercial Code §2-314 of thirty-one States identified herein that have

abolished vertical privity requirements for such suits. They are also liable under

the common law of the several States to those purchasers for fraud in inducing

the purchases through misrepresentations and material omissions upon which

Plaintiffs and class members based their purchases.

## PARTIES

13.        Plaintiffs Lawrence and Celestine Elliott are citizens and residents of the

District of Columbia. Mr. and Mrs. Elliott jointly own a 2006 Chevrolet Cobalt SS. Although

Mr. and Mrs. Elliott have always been the primary drivers of their cars, they have children,

grand children, and great-grandchildren who live with them, and frequently ride in the cars as

passengers and, on rare occasions, also drive the cars.

14.        Plaintiff Berenice Summerville is a citizen and resident of the State of

Maryland. She purchased a 2010 Chevrolet Cobalt in December 2010 from a GM dealer in the

State of Maryland, and she has been the primary driver of the vehicle for virtually the entire

period since she purchased the car. She often drives in the District of Columbia, which is less

than 5 miles from her home.

15.        General Motors LLC is a limited liability company formed under the laws of

Delaware with its principal place of business in Detroit, Michigan. On October 19, 2009, it

began conducting the business of designing, manufacturing, constructing, assembling,

marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the

vehicles of class members, and other motor vehicles and motor vehicle components throughout

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 65 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 64 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 20 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 19 of 53

the United States. Plaintiffs' claims and allegations against GM refer solely to this entity. In

this First Amended Complaint, Plaintiffs are not making any claim against Old GM (General

Motors Corporation) whatsoever, and Plaintiffs are not making any claim against New GM

based on its having purchased assets from Old GM or based on its having continued the

business or succeeded Old GM. Plaintiffs disavow any claim based on the design or sale of

vehicles by Old GM, or based on any retained liability of Old GM. Plaintiffs seek relief from

New GM solely for claims that have arisen after October 19, 2009, and solely based on actions

and omissions of New GM.

16.     Delphi Automotive PLC is headquartered in Gillingham, Kent, United

Kingdom, and is the parent company of Delphi Automotive Systems LLC, headquartered in

Troy, Michigan. At all times relevant herein, Delphi, through its various entities, designed,

manufactured, and supplied GM with motor vehicle components, including the defective

ignition switches contained in the Cobalts owned by Plaintiffs, and in at least 6.5 million other

vehicles.

17.     GM and Delphi are collectively referred to in this Complaint as "Defendants."

### JURISDICTION AND VENUE

18.     Jurisdiction is proper in this Court pursuant to 28 U.S.C § 1331, because the

claims under the Racketeer Influenced and Corrupt Organizations Act present a federal

question. Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act, 28

U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens of states

different from Defendants' home states, and the aggregate amount in controversy exceeds

$5,000,000, exclusive of interest and costs.

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 66 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 35 of 68
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 21 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 20 of 53

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to these claims occurred in this District, and Defendants have caused harm to plaintiffs and class members residing in this District.

## FACTUAL BACKGROUND

20.     GM has publicly admitted that the ignition switches in Plaintiffs' and class members' cars are defective and pose a safety hazard. It has also admitted that, from its inception in 2009, various New GM engineers, attorneys, and management officials knew of, and took measures to conceal, the ignition switch defect and/or diminish its significance. GM has been found guilty of failing to disclose the defect to Plaintiffs, class members, and governmental officials as required by law, and the NHTSA has fined New GM the maximum penalty that agency is authorized to impose.

21.     GM continues to conceal the defect in the design of the fuel pumps on Plaintiffs' and Class members' vehicles from Plaintiffs, class members, investors, and governmental officials. On October 29, 2009, GM notified the NHTSA that they were recalling 2006 Chevrolet Cobalt and Saturn Ion vehicles sold or registered in Arizona and Nevada, and 2007 Chevrolet Cobalt, Pontiac G5, and Saturn Ion vehicles sold or registered in Arizona, California, Florida, Nevada and Texas. The reason for the recall was that "the plastic supply or return port on the modular reservoir assembly may crack…[and] fuel will leak." (NHTSA Report Campaign No. 09V419000). The consequence of this defect was listed in the report as follows: "Fuel leakage, in the presence of an ignition source, could result in a fire." The recall was limited, however, to vehicles in the five aforementioned states. Special coverage – that is, GM would replace a noticeably leaking fuel pump if the issue was specifically brought to them by a customer – was provided in a limited number of additional states: 2006 vehicles registered in Alabama, Arkansas, California, Florida Georgia, Hawaii, Louisiana, Mississippi, North

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 67 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 36 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 22 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 21 of 53

Carolina, New Mexico, Oklahoma, South Carolina, Tennessee, and Texas, and 2007 vehicles

registered in Alabama, Arkansas, Georgia, Hawaii, Louisiana, Mississippi, North Carolina,

New Mexico, Oklahoma, South Carolina, and Tennessee. GM offered vehicle owners outside

the listed recall states no recourse, even if their plastic fuel pumps, which were susceptible to

exactly the same life-threatening defect, started noticeably leaking.  GM did not inform owners

of identical vehicles outside of Arizona, California, Florida, Nevada and Texas that they were

in danger of being seriously injured or killed by their defective and potentially leaking fuel

pump, despite the fact that the defective fuel pump can cause fuel to pool very close to the

catalytic converter, which can temperatures in excess of 1000 degrees Fahrenheit in some

circumstances. A fuel leak in close proximity to such high temperatures is extremely unsafe.

22.     On September 19, 2012, GM notified the NHTSA that they were expanding the

recall described in paragraph 21 to cover 2007 Chevrolet Equinox and Pontiac Torrent

vehicles, 2007 Chevrolet Cobalt, Pontiac G5, and Saturn ION vehicles, 2008 Chevrolet Cobalt

and Pontiac G5 vehicles, and 2009 Chevrolet Cobalt and Pontiac G5 vehicles, but again

geographically limited the recall, providing no recourse or notification to vehicle owners

outside Arizona, Arkansas, California, Nevada, Oklahoma and Texas.

23.     Since at least October 29, 2009, GM has been aware that the fuel pumps in

Plaintiffs' and class members' vehicles are defective because of their propensity to fail when

exposed to high temperatures, which can occur in any car regardless of what state it is

registered in. Failure of the fuel pump threatens the kind of fuel leakage that Plaintiffs and

class members have detected, and creates an unreasonable danger of fire, personal injury

and/or property damage. GM continues to conceal the safety defect and risk of death or severe

personal and property damage from vehicle owners outside the recall states. GM has failed to

21

09-50026-smb   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 68 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/21/14   Page 67 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 23 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 22 of 53

notify Plaintiffs, class members, and governmental officials of the full scope of the defect, nor

has it rectified the defect, as required by law.

24.     Under the Transportation Recall Enhancement, Accountability and

Documentation Act ("TREAD Act"), 49 U.S.C. §§ 30101-30170, and its accompanying

regulations, when a manufacturer learns that a vehicle contains a safety defect, the

manufacturer must disclose the defect to appropriate government officials and registered

owners of the vehicle in question.

25.     Upon its inception, New GM instituted and continued policies and practices

intended to conceal safety related defects in GM products from Plaintiffs, class members,

investors, litigants, courts, law enforcement officials, the NHTSA, and other governmental

officials. In furtherance of its illegal scheme, New GM trained and directed its employees and

dealers to take various measures to avoid exposure of safety related product defects:

a)     GM mandated that its personnel avoid exposing GM to the risk of having to

recall vehicles with safety-related defects by limiting the action that GM would take

with respect to such defects to the issuance of a Technical Service Bulletin or an

Information Service Bulletin.

b)     New GM directed its engineers and other employees to falsely characterize

safety-related defects – including the defects described in this complaint – in their

reports, business and technical records as "customer convenience" issues, to avoid

being forced to recall vehicles as the relevant law requires.

c)     New GM trained its engineers and other employees in the use of euphemisms to

avoid disclosure to the NHTSA and others of the safety risks posed by defects in GM

products.

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 69 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/21/14 Page 68 of 68
Case MDL No. 2543    Document 309-5    Filed 07/01/14    Page 24 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 23 of 53

d)      New GM directed its employees to avoid the word "stall" in describing vehicles experiencing a moving stall, because it was a "hot word" that could alert the NHTSA and others to safety risks associated with GM products, and force GM to incur the costs of a recall.

    i.      A "moving stall" is a particularly dangerous condition because the driver of a moving vehicle in such circumstances no longer has control over key components of steering and/or braking, and air bags will not deploy in any, increasingly likely, serious accident.

e)      New GM directed its engineering and other personnel to avoid the word "problem," and instead use a substitute terms, such as "issue," "concern," or "matter," with the intent of deceiving plaintiffs and the public.

f)      New GM instructed its engineers and other employees not to use the term "safety" and refer instead to "potential safety implications."

g)      New GM instructed its engineers and other employees to avoid the term "defect" and substitute the phrase "does not perform to design."

h)      New GM instituted and/or continued managerial practices designed to ensure that its employees and officials would not investigate or respond to safety-related defects, and thereby avoid creating a record that could be detected by governmental officials, litigants or the public. In a practice New GM management labeled "the GM nod," GM managers were trained to feign engagement in safety related product defects issues in meetings by nodding in response to suggestions about steps that they company should take. Protocol dictated that, upon leaving the meeting room, the managers would not respond to or follow up on the safety issues raised therein.

23

09-50026-smb Doc 13792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 70 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/21/14 Page 59 of 68
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 25 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 24 of 53

i)       New GM's lawyers discouraged note-taking at critical product safety meetings to avoid creation of a written record and thus avoid outside detection of safety-related defects and GM's refusal to respond to and/or GM's continuing concealment of those defects. New GM employees understood that no notes should be taken during meetings about safety related issues, and existing employees instructed new employees in this policy.  New GM did not describe the "no-notes policy" in writing to evade detection of their campaign of concealment.

j)       New GM would change part design without a corresponding change in part number, in an attempt to conceal the fact that the original part design was defective. New GM concealed the fact that it manufactured cars with intentionally mislabeled part numbers, making the parts difficult for New GM, Plaintiffs, class members, law enforcement officials, the NHTSA, and other governmental officials to identify. New GM knew from its inception that the part number irregularity was intended to conceal the faulty ignition switches in Plaintiffs' and class members' vehicles.

26.     New GM followed a practice and policy of intentionally mischaracterizing safety issues as "customer convenience" issues to avoid recall costs, and it enlisted its dealership network in its campaign of concealment by minimizing the safety aspects of the "technical service bulletins" and "information service bulletins" it sent to dealers.  New GM directed dealers to misrepresent the safety risks associated with the product defects of its vehicles.  New GM followed this practice with respect to the defective ignition switches from its inception in October 2009 until its campaign of concealment of the ignition switch defect began to unravel in February 2014.

27.     New GM followed a practice or policy of minimizing and mischaracterizing safety related defects in its cars in its communications with Plaintiffs, class members, law

09-50026-smb   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:26   Exhibit E
Pg 71 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 60 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 26 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 25 of 53

enforcement officials, the NHTSA, and other governmental officials.  New GM followed these
practices and procedures when it wrongfully limited the geographic reach of its October 2009
recall of defective fuel pumps in Plaintiffs and class members cars to drivers in a small number
of states, even though GM knew that the fuel pump defect threatened the safety and posed
unreasonable risks of death, serious bodily injury, and property damage in all vehicles
containing the fuel pump regardless of the state in which the vehicle was registered. GM
concealed the fact that vehicle owners and drivers who are residents of Maryland and the
District of Columbia and other states face the same or similar unreasonable risks of fuel
leakage and subsequent fire as drivers in the recall states.

28.     Upon the inception of New GM in October 2009, New GM and Delphi agreed
to conceal safety related defects from Plaintiffs, class members, law enforcement officials,
other governmental officials, litigants, courts, and investors. Both New GM and Delphi knew
since October 2009 that the design of the faulty ignition switch in Plaintiffs and class
members' cars had been altered without a corresponding change in part number, in gross
violation of normal engineering practices and standards. Part labeling fraud is particularly
dangerous in vehicle parts potentially related to safety because it makes tracing and identifying
faulty parts very difficult, and will delay the detection of critical safety defects.

29.     Since New GM's inception in October 2009, both New GM and Delphi have
known that the faulty ignition switch in the Plaintiffs' Cobalts and class members' vehicles
posed a serious safety and public health hazard because the faulty ignition switch caused
moving stalls. Each Defendant had legal duties to disclose the safety related defects. Rather
than notifying the NHTSA, Defendants instead decided that Plaintiffs and class members, and
millions of drivers and pedestrians should face imminent risk of injury and death due to the
defective ignition switches in Plaintiffs' and class members' vehicles. Delphi and GM entered

09-50026-smb Doc 13792-5 Filed 07/21/14 Entered 07/21/14 17:00:34 Exhibit E
Pg 72 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 61 of 68
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 27 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 26 of 53

into an agreement to conceal the alteration of the part without simultaneously changing the part number, and concealed the risks associated with the defective ignition switches.

30.     In 2012, more GM employees learned that the ignition switches in vehicles from model years 2003, 2004, 2005, 2006, and 2007 exhibited torque performance below the specifications originally established by GM. Rather than notify Plaintiffs, class members, or the NHTSA, GM continued to conceal the nature of the defect.

31.     In April 2013, GM hired an outside engineering-consulting firm to investigate the defective ignition switch system. The resulting report concluded that the ignition switches in early model Cobalt and Ion vehicles did not meet GM's torque specification. Rather than notify Plaintiffs, class members, or the NHTSA, GM still continued to conceal the nature of the Ignition Switch Defect until 2014.

32.     NHTSA's Fatal Analysis Reporting System (FARS) reveals 303 deaths of front seat occupants in 2005-07 Cobalts and 2003-07 Ions where the airbags failed to deploy in non-rear impact crashes.

33.     While GM has finally admitted that the ignition switch in millions of vehicles poses an unreasonable safety risk to Plaintiffs, class members, and to the public, it continues to deny and conceal that fact that the fuel pump design on Plaintiffs' and class members' vehicles is also defective and poses its own imminent and unreasonable risk of death or serious bodily injury.

34.     New GM explicitly directed its lawyers and any outside counsel it engaged to act to avoid disclosure of safety related defects – including the ignition switch defect – in GM products.  These actions included settling cases raising safety issues, demanding that GM's victims agree to keep their settlements secret, threatening and intimidating potential litigants into not bringing litigation against New GM by falsely claiming such suits are barred by Order

26

09-50026-smb  Doc 12792-5  Filed 07/21/14  Entered 07/21/14 17:00:24  Exhibit E
Pg 73 of 99
Case 1:14-cv-00691-KBJ  Document 18-2  Filed 07/11/14  Page 62 of 68
Case MDL No. 2543  Document 309-5  Filed 07/01/14  Page 28 of 54
Case 1:14-cv-00691-KBJ  Document 15  Filed 06/28/14  Page 27 of 53

of the Bankruptcy Court, and settling cases for amounts of money that did not require GM

managerial approval, so management officials could maintain their false veneer of ignorance

concerning the safety related defects. In one case, GM threatened the family of an accident

victim with liability for GM's legal fees if the family did not withdraw its lawsuit,

misrepresenting to the family that their lawsuit was barred by Order of GM's Bankruptcy

Court. In another case, GM communicated by means of mail and wire to the family of the

victim of a fatal accident caused by the faulty ignition switch that their claim has no basis, even

though GM knew that its communication was false and designed to further GM's campaign of

concealment and deceit. In other cases, GM falsely claimed that accidents or injuries were due

to the driver when it knew the accidents were likely caused by the dangerous product defects

GM concealed.

## TOLLING OF THE STATUTE OF LIMITATIONS

37.     Any applicable statute of limitation has been tolled by Defendants' knowledge, active

concealment, and denial of the facts alleged herein, which behavior is ongoing.

38.     The causes of action alleged herein did not accrue until Plaintiffs and Class

Members discovered that their vehicles had the safety related defects described herein.

39.     Plaintiffs and Class Members had no reason to know that their products were

defective and dangerous because of Defendants' active concealment.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this lawsuit as a class action on their own behalves and on

behalf of all other persons similarly situated as members of the proposed Class pursuant to

Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action

satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority

requirements of those provisions. All proposed Class and Subclass periods run from the inception of New GM in October 2009 and continue until judgment or settlement of this case.

41.     Plaintiffs bring this action on behalf of a proposed nationwide class defined as follows: All persons in the United States who, since the inception of New GM in October 2009, hold or have held a legal or equitable interest in a GM vehicle with a defective ignition switch manufactured by Delphi and/or a defective fuel pump. As of the time of the filing of this First Amended Complaint, Plaintiffs are aware that the following GM models contain dangerous ignition switches:

- 2005-2011 Chevrolet Cobalt
- 2006-2011 Chevrolet HHR
- 2006-2010 Pontiac Solstice
- 2007-2010 Pontiac G5
- 2003-2007 Saturn Ion
- 2007-2010 Saturn Sky
- 2005-2009 Buick Lacrosse
- 2006-2011 Buick Lucerne
- 2004-2005 Buick Regal LS & GS
- 2006-2014 Chevrolet Impala
- 2006-2008 Chevrolet Monte Carlo
- 2000-2005 Cadillac Deville
- 2004-2011 Cadillac DTS

As of the time of the filing of this First Amended Complaint, Plaintiffs are aware that the following GM models contain dangerously defective fuel pumps:

28

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 75 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/21/14 Page 64 of 68
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 30 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 29 of 53

- 2006-2010 Chevrolet Cobalt

- 2006-2007 Saturn Ion

- 2007-2009 Pontiac G5

- 2007 Chevrolet Equinox

42.    Plaintiffs also bring this action on behalf of the following Subclasses:

 a. The Elliotts bring this action on behalf of all persons in the District of
Columbia who, since October 2009, hold or have held a legal or equitable
interest in a GM vehicle with a defective ignition switch or defective fuel
pump as described above. The GM models include those listed in the
preceding paragraph (the "District of Columbia" Subclass);

 b. Ms. Summerville brings this action on behalf of all persons in the State of
Maryland who, since October 2009, purchased or hold or have held a legal
or equitable interest in a GM vehicle with a defective ignition switch and/or
fuel pump (the "Maryland Subclass");

 c. Ms. Summerville brings this action on behalf of residents of the District of
Columbia, Alaska, Arkansas, Delaware, Hawaii, Indiana, Kansas, Louisiana,
Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi,
Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, North
Dakota, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas,
Utah, West Virginia, and Wyoming, who, since New GM's inception in
October 2009, purchased a GM vehicle containing the defective ignition
switch manufactured by Delphi and/or the defective fuel pump (the "Multi-
State Warranty Subclass");

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 76 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 65 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 31 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 30 of 53

    d.   Plaintiffs also bring this action on behalf of residents of the District of

Columbia and the States of California, Florida, Maryland, New Jersey and

Ohio who, since October 2009, hold or have held a legal or equitable

interest in a GM vehicle with a defective ignition switch and/or fuel pump

(the "Multi-State Negligence Subclass").

43.    Excluded from the Class are: (1) Defendants, any entity or division in which

Defendants have a controlling interest, and their legal representatives, officers, directors,

assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3)

governmental entities; and (4) those persons who have suffered personal injuries as a result of

the facts alleged herein.

**NUMEROSITY AND ASCERTAINABILITY**

44.    Although the exact number of Class Members is uncertain and can only be

ascertained through appropriate discovery, the number is great enough such that joinder for

each Class or Subclass is impracticable. The disposition of the claims of these Class Members

in a single action will provide substantial benefits to all parties and to the Court. Class

Members are readily identifiable from information and records in GM's possession, custody, or

control, and/or from public vehicular registration records.

**TYPICALITY**

45.    The claims of the Plaintiffs are typical of the claims of each member of the

class and subclasses in that the representative Plaintiffs, like all class members, legally or

equitably own or owned a GM vehicle during the Class Period that contained a defective

ignition switch manufactured by Delphi and/or a defective fuel pump. Plaintiffs, like all class

and subclass members, have been damaged by Defendants' misconduct, namely, in being

wrongfully exposed to an increased risk of death or serious bodily injury, in suffering

30

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 77 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/21/14   Page 66 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 32 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 31 of 53

diminished use and enjoyment of their vehicles, and in suffering the diminished market value of their vehicles.  Furthermore, the factual bases of Defendants' misconduct are common to all class and subclass members.

## ADEQUATE REPRESENTATION

46.    Plaintiffs will fairly and adequately represent and protect the interests of the class and subclasses. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions and in prosecuting complex federal litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and subclasses, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the class of subclasses.

## PREDOMINANCE OF COMMON ISSUES

47.    There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include:

a.    Whether the vehicles owned by class or subclass members during the class periods suffer from the defective ignition switch and/or defective fuel pump described herein?

b.     Whether the defective ignition switch and/or fuel pump posed an unreasonable danger of death or serious bodily injury?

c.    Whether GM and/or Delphi imposed an increased risk of death or serious bodily injury on Plaintiffs and class and subclass members during the Class period?

d.    Whether GM and/or Delphi caused Plaintiffs and class and subclass members to suffer economic loss during the Class period?

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 78 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 67 of 68

Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 33 of 54

Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 32 of 53

e.      Whether GM and/or Delphi caused Plaintiffs and class and subclass members to suffer the loss of the use and enjoyment of their vehicles during the class period?

f.      Whether GM and Delphi had a legal duty to disclose the ignition switch danger to class and subclass members?

g.      Whether GM and/or Delphi had a legal duty to disclose the ignition switch danger to the NHTSA?

h.      Whether either GM and/or Delphi breached duties to disclose the ignition switch defect?

i.      Whether class and subclass members suffered legally compensable harm?

j.      Whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle during the class period?

k.      Whether Defendants violated the consumer protection statutes of the District of Columbia and Maryland by concealing the ignition switch defect and/or the fuel pump defect from Plaintiffs and governmental officials?

l.      Whether Defendants violated Maryland's consumer protection statute by concealing material facts about and making affirmative misrepresentations about GM cars in connection with sales made since the inception of the New GM?

m.      Whether the fact that the ignition switch was defective was a material fact?

n.      Whether Ms. Summervilles and the Multi-State Warranty Subclass members' vehicles were merchantable?

o.      Whether Plaintiffs and Class Members are entitled to a declaratory judgment stating that the ignition switches and/or fuel pumps in their vehicles are defective and/or not merchantable?

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 79 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/21/14 Page 68 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 34 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 33 of 53

p.      Whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction?

q.      Whether GM should be declared responsible for notifying all Class Members of the Defect and ensuring that all GM vehicles with the Ignition Switch Defect are recalled and repaired?

r.      Whether Defendants conducted a criminal enterprise in violation of RICO?

s.      Whether Defendants engaged in a pattern or practice of racketeering?

t.      Whether Defendants committed mail or wire fraud in connection with their concealment of the defective ignition switch.

u.      Whether class members were harmed by Defendants' violations of RICO?

v.      Whether class and subclass members are entitled to recover punitive damages from Defendants, and, if so, what amount would be sufficient to deter Defendants from engaging in such conduct in the future and to punish Defendants for their recklessness regarding the public health and safety and their campaign of concealment?

**SUPERIORITY**

48.     Plaintiffs and class and subclass members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most class and subclass members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual class and subclass member's claims, it is likely that few could afford to seek legal redress for Defendants' misconduct. Absent a class action, class and subclass members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and

33

09-50026-mg Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 80 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 69 of 68
Case MDL No. 2543    Document 309-5    Filed 07/01/14    Page 35 of 54
Case 1:14-cv-00691-KBJ    Document 15    Filed 06/28/14    Page 34 of 53

fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication. The class action is superior for defendants as well, who otherwise could be forced to litigate thousands of separate actions.

49.    Defendants have acted in a uniform manner with respect to the Plaintiffs and class and subclass members. Class and subclass wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because Defendants have acted on grounds that apply generally to the class, and inconsistent adjudications with respect to the Defendants' liability would establish incompatible standards and substantially impair or impede the ability of class and subclass members to protect their interests. Class and subclass wide relief assures fair, consistent, and equitable treatment and protection of all class and subclass members.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF RACKETEER INFLUENCED
### AND CORRUPT ORGANIZATIONS ACT
### (18 U.S.C. § 1962(c) and (d))

50.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth at length herein.

51.    This claim is brought by all Plaintiffs on behalf of the nationwide Class.

52.    Defendants violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the "RICO Enterprise" through a "pattern of racketeering activity." Defendants violated 18 U.S.C. § 1962(d) by conspiring to violate § 1962(c).

53.    At all times relevant, GM, Delphi, its associates-in-fact, Plaintiffs, and the Class and Subclass members are each a "person," as that term is defined in 18 U.S.C. § 1961(3).

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 81 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 70 of 88
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 36 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 35 of 53

54.     At all times relevant, Plaintiff and each class and subclass member were and are "a person injured in his or her business or property" by reason of a violation of RICO within the meaning of 18 U.S.C. § 1964(c).

55.     At all times relevant, GM and Delphi are and were each a "person" who participated in or conducted the affairs of the RICO Enterprise through the pattern of racketeering activity described below. While GM and Delphi each participated in the RICO Enterprise, they each exist separately and distinctly from the Enterprise. Further, the RICO Enterprise is separate and distinct from the pattern of racketeering activity in which GM and Delphi have engaged and are engaging.

56.     At all times relevant, GM and Delphi were associated with, operated or controlled, the RICO Enterprise, and participated in the operation and management of the affairs of the RICO Enterprise, through a variety of actions described herein. Defendants' participation in the RICO Enterprise was necessary for the successful operation of its scheme to defraud.

## The RICO Enterprise

57.     Defendants participated in the operation and management of an association-in-fact enterprise whose aim was to conceal safety related defects in Delphi products installed in GM vehicles from Plaintiffs, class members, the NHTSA, litigants, courts, law enforcement officials, consumers, and investors. The Enterprise was motivated by the common design of concealing the true value of the defendant companies and their products, and it constituted an unlawful, continuing enterprise calculated to gain an unfair advantage over competitor automakers who conduct their business within the bounds of the law. The Enterprise was partly embodied in practices and procedures intended to mischaracterize safety related defects – such as the ignition switch – as "customer convenience issues" to avoid incurring the costs of a

09-50026-smb   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 82 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 71 of 88

Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 37 of 54

Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 36 of 53

recall, and minimizing the significance of disclosures that were made by limiting the scope of their gas-pump recall to five and then seven states.

58.     The RICO Enterprise began with the inception of New GM, on October 19, 2009. The following persons, and others presently unknown, have been members of and constitute the association-in-fact enterprise with the following roles:

a)     New GM, which mandated its employees take the various measures, described above at paragraph 26, to conceal safety related defects, including the ignition switch and the fuel pump defects.

b)     GM's engineers (including but not limited to Ray DeGiorgio, Gary Altman, a program engineering manager, Michael Robinson, vice president for environmental sustainability and regulatory affairs, Gay Kent, general director of product investigations and safety regulations) who have carried out GM's directives since the inception of New GM in October 2009 by minimizing and misrepresenting the safety aspects of the ignition switch defect – enabling GM to avoid its legal obligations to recall vehicles with safety related defects. GM's engineers (including but not limited to Mr. DeGiorgio, Mr. Altman, Mr. Robinson and Ms. Kent) have also concealed the part-number-labeling fraud of which they have known since New GM's inception in October 2009.

c)     GM's in-house lawyers (including but not limited to Jaclyn Palmer, Ron Porter, William Kemp, Lawrence Buonomo, and Jennifer Sevigny), who knowingly assisted GM in evading its legal responsibilities by taking measures allowing GM management to claim ignorance about the increasing number of accidents and personal injuries that the ignition switches were causing throughout the Class period. GM's in-house lawyers,

as described in Paragraph 36, also took measures to ensure that lawsuits filed by victims of the ignition switch defect and their surviving families were settled confidentially – preventing them from revealing the defect to other Plaintiffs, class members, law enforcement officials, or other government authorities, including the NHTSA – for amounts below the threshold that would trigger closer scrutiny within GM.

d)      GM's outside lawyers, retained to defend the Company against lawsuits filed by victims with injuries allegedly caused by the ignition switch defect, who were directed to play, and played, the same roles as those of in-house counsel described above – taking analogous measures to help GM conceal the ignition switch defect.

e)      Delphi, who, since the inception of the new GM in October 2009, has participated in the Enterprise to conceal the defective ignition switch system and its knowledge that ignition switch part numbers on vehicles driven by class members during the class period were misleading or fraudulent and would hinder any attempt to investigate or learn about the ignition switch defect.

f)      GM's Dealers, including but not limited to Ourisman of Marlow Heights, whom New GM instructed, explicitly or implicitly, to present false and misleading information regarding the ignition switch and fuel pump defects to Plaintiffs and Class members, through *inter alia*, Technical Service Bulletins and Information Service Bulletins, and who did, in fact, present such false and misleading information to Plaintiffs and Class members during the Class period.

58.      GM and Delphi conducted and participated in the affairs of this RICO Enterprise through a continuous pattern of racketeering activity that began with the inception

37

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 84 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 73 of 88
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 39 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 38 of 53

of the New GM in October 2009, and that consisted of numerous and repeated violations of the

federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, and 18 U.S.C. § 1512

(tampering with witnesses and victims).

### Predicate Acts of Wire and Mail Fraud

59.     Since its inception in October 2009 and in furtherance of its scheme to defraud,

GM, its engineers and its lawyers communicated with Delphi on a regular basis via the mail

and/or wires regarding the defective ignition switch. Through those communications, GM

instructed Delphi to continue concealing the ignition switch defect and to continue to produce

ignition mislabeled or fraudulently labeled switches to help GM evade detection of New GM's

unlawful failure to recall vehicles with defective ignition switches by the NHTSA or other law

enforcement officials. GM's and Delphi's communications constitute repeated violations of 18

U.S.C. §§ 1341 and 1343.

60.     Since GM's inception in October 2009, in furtherance of its scheme to defraud,

GM's lawyers communicated with those claiming injuries caused by the ignition switch defects

on a regular basis via the mail and/or wires. Upon information and belief, GM's lawyers

utilized the mail and wires to insist that litigants agree to confidentiality agreements forbidding

disclosure that the ignition switch defects caused their injuries, and to communicate with

supervisors and each other about ensuring that the cases settled below the threshold that would

trigger scrutiny that might endanger Defendants' concealment of the ignition switch defects.

61.     Since its inception in October 2009, GM has routinely used the wires and mail

to disseminate false and fraudulent advertising about Plaintiffs' and Class members' vehicles,

misrepresenting the vehicles as safe and dependable and failing to disclose the ignition switch

or fuel pump defects in its advertising.

### Predicate Acts of Tampering With Witnesses and Victims

62.    New GM engaged in an ongoing scheme to tamper with witnesses and victims as described in 18 U.S.C. § 1512(b) by using misleading conduct to influence, delay and prevent the testimony of victims in official proceedings and by entering into a campaign of intimidation and false statements to discourage victims from pursuing their claims against GM, as described elsewhere in the complaint. New GM's in-house legal office played an integral role in the RICO Enterprise by instituting and/or continuing policies and practices with respect to potential and ongoing legal proceedings designed to intimidate victims from utilizing the courts to seek legal protection and to prevent outsiders from becoming aware of the number of victims of safety related defects in GM cars and the severity of injuries those defects were causing.  GM instructed its counsel to deny to victims and their families the existence of the ignition switch defect, and to place blame for any injuries on driver error or irresponsible driving. GM instructed its counsel to prepare its corporate and fact witnesses by encouraging them to deny that they remember anything about any topic on which they were questioned. GM's lawyers actively discouraged GM personnel from taking any notes at safety related meetings. In furtherance of its scheme to conceal its wrongful behavior, GM insisted as a condition of providing any compensation to victims that they agree to confidentiality agreements designed to prevent detection of the safety related defect at issue by Plaintiffs, Class and Subclass members, the NHTSA, courts, litigants, and investors.  New GM also corruptly encouraged its employees and engaged in misleading conduct to prevent said employees from reporting safety defects and therefore delay or prevent their testimony about said defects. GM accomplished this by, *inter alia*, punishing employees who raised red flags about safety defects, thus intentionally intimidating and threatening employees who otherwise could have raised red flags. Jaclyn Palmer, Ron Porter, William Kemp, Lawrence Buonomo,

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 86 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/21/14 Page 75 of 88
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 41 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 40 of 53

and Jennifer Sevigny, five of GM's in-house lawyers responsible for carrying the tasks described herein, were fired by GM in June 2014, after the Enterprise came to light.

63. Defendants' conduct in furtherance of this scheme to conceal and/or minimize the significance of the ignition switch defect and fuel pump defect was intentional. Plaintiff, Class and Subclass members were harmed in that they were forced to endure increased risk of death or serious bodily injury, they lost use and enjoyment of their vehicles, and their vehicles' values have diminished because of Defendants' participation in conducting the RICO Enterprise. The predicate acts committed in furtherance of the enterprise each had a significant impact on interstate commerce.

### COUNT II
### Asserted on Behalf of Plaintiffs and the Nationwide Class
### (Common Law Fraud)

64. Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint.

65. At the time of New GM's inception in 2009, Defendants knew that the ignition switch used or which would be placed in the Plaintiffs' and class members' vehicles could inadvertently move from "run" to "accessory" or "off," under regular driving conditions. This fact was material to Plaintiffs and class members.

66. In late October 2009, Defendants also knew that the fuel pump design in the Chevrolet Cobalt was prone to cause fuel leakage and fires.

67. Between October 2009 and February 2014, Defendants actively and intentionally concealed and/or suppressed the existence and true nature of the ignition switch and fuel pump defects, and minimized the extent of the danger they posed in direct and indirect communications with Plaintiffs, class and subclass members, dealers, the NHTSA, and others.

09-50026-smb  Doc 12792-5  Filed 07/21/14  Entered 07/21/14 17:00:24  Exhibit E
Pg 87 of 99
Case 1:14-cv-00691-KBJ  Document 18-2  Filed 07/11/14  Page 76 of 68

Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 42 of 54

Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 41 of 53

68.     Plaintiffs and class members reasonably relied on GM's communications and material omissions to their detriment. As a result of the concealment and/or suppression of facts, Plaintiffs and Class Members have sustained and will continue to sustain injuries, consisting of the diminished value of their GM vehicles and the lost use and enjoyment of the vehicles that Defendants actions have caused, and exposure to increased risk of death or serious bodily injury.

69.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and with reckless disregard to Plaintiffs' and Class Members' rights and well-being, in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**Asserted on Behalf of Ms. Summerville and the Nationwide Subclass of Class Members Who Purchased their Vehicles after New GM's Incorporation on October 19, 2009**
**(Common Law Fraud)**

70.     Plaintiffs hereby incorporate by reference all allegations contained in the preceding paragraphs of this Complaint.

71.     This Claim is brought on behalf of Berenice Summerville and the subclass of consumers who purchased their vehicles after New GM's incorporation on October 19, 2009.

72.     Upon incorporation of New GM, Defendants knew that ignition switch used in the 2010 Chevrolet Cobalt and other Class Vehicles purchased after October 10, 2009 could inadvertently move from "run" to "accessory" or "off," under regular driving conditions, and that the fuel pump was dangerously defective and posed an unreasonable risk of death or serious bodily injury.

09-50026-smg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 88 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 77 of 88

Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 43 of 54

Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 42 of 53

73.     Prior to November 2009, Defendants also knew that the fuel pump design in the Chevrolet Cobalt was improperly placed and prone to leakage and even fire.

74.     Between October 2009 and February 2014, Defendants actively and intentionally concealed and/or suppressed the existence and true nature of the ignition switch and fuel pump defects, and minimized the extent of the danger they posed. Concealment of the fuel pump defect continues to the present.

75.     Because Defendants were in exclusive control of the material facts concerning the ignition switch and fuel pump defects, Plaintiffs' and Class Members' actions in purchasing and driving the dangerous vehicles were justified because they had no way of knowing that material facts had been concealed. Plaintiffs and Class Members would not have acted as they did in purchasing and driving their cars if they had known of the concealed and/or suppressed facts.

76.     In the alternative, even if a class member would still have made the vehicle purchase had the defects been known, they would have paid less for their vehicles but for the concealment of the defect. The concealment of the defects artificially increased the market price of the vehicles.

77.     As a result of the concealment and/or suppression of facts, Plaintiffs and Class Members have sustained, and continue to sustain, damages arising from the difference in value between the prices they were induced to pay for their vehicles, and the true value of a vehicle with a defective ignition switch or fuel pump.

78.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being, in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 89 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/21/14 Page 78 of 88
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 44 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 43 of 53

damages in an amount sufficient to deter such conduct in the future, which amount is to be

determined according to proof.

## COUNT IV
**Asserted on Behalf of Plaintiffs and on Behalf of the Multi-State Negligence Subclass**
**(Negligent Infliction of Economic Loss and Increased Risk under the Common Law of the**
**District of Columbia and Florida, Maryland, New Jersey, and Ohio)**

79.     Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

80.     This claim is brought on behalf of Plaintiffs and the District of Columbia and

Maryland Classes and, with respect to the fuel pump defect, the District of Columbia and

Maryland subclasses of consumers whose vehicles also suffer from the fuel pump defect

described in Paragraph 21.

81.     Because the defective ignition switches and fuel pumps created a foreseeable

risk of severe personal and property injury to drivers, passengers, other motorists, and the

public at large, Defendants had a duty to warn consumers about, and fix, the defect as soon as

soon as they learned of the problem – upon the inception of New GM in October 2009.

82.     Rather than alerting vehicle owners to the danger, Defendants actively

concealed and suppressed knowledge of the problems.

83.     Defendants created an unreasonable risk of death or serious bodily injury to

Plaintiffs and Subclass members. Plaintiffs and Subclass members were particularly

identifiable and foreseeable victims of Defendants' negligence, and their injuries in terms of

the diminution in the value of their vehicles and the loss of use and enjoyment of the vehicles

was particularly foreseeable.

84.     Defendants created an unreasonable risk of death or serious bodily injury

through a pattern and practice of negligent hiring and training of its employees, and by creating

43

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 90 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/21/14 Page 79 of 88
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 45 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 44 of 53

and allowing to continue a culture at GM which encouraged the minimizing and hiding of safety defects from the public. GM negligently increased this risk by firing or otherwise retaliating against employees who did attempt to convince GM to fix safety problems.

85.     As a result of Defendants' failure to warn them about the defects or repair their vehicles, Plaintiffs and Class Members sustained, and continue to sustain, damages arising from the increased risk of driving vehicles with safety related defects, from the loss of use and enjoyment of their vehicles, and from the diminished value of their vehicles attributable to Defendants' wrongful acts.

86.     Plaintiffs and class members seek compensatory damages in an amount to be proved at trial, including compensation for any pain and suffering they endured.

**COUNT V**
**Asserted on Behalf of Mr. and Mrs. Elliott, for themselves, as representatives of the public, and on behalf of the District of Columbia Subclass**
**(Violation of the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 _et seq._)**

87.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

88.     This Count is brought on behalf of Mr. and Mrs. Elliott and the District of Columbia Subclass.

89.     Plaintiffs are "consumers" within the meaning of the CPPA, § 28-3901(a)(2).

90.     Defendants are "persons" within the meaning of the CPPA, § 28-3901(a)(1).

91.     Upon the inception of GM in 2009, Defendants knew the Elliotts' and Subclass members' vehicles, due to the ignition switch defect, are prone to engine and electrical failure during normal and expected driving conditions. The potential concurrent loss of control of the vehicle and shut down of safety mechanisms such as air bags and anti-lock brakes makes

Subclass Vehicles less reliable, less safe, and less suitable for normal driving activities inhibiting their proper and safe use of their vehicles, reducing their protections from injury during reasonably foreseeable driving conditions, and endangering Subclass members, other vehicle occupants, and bystanders. GM knew that the defective fuel pumps in the vehicles posed unreasonable risks of death, serious bodily injury, and property damage to the Elliotts, Subclass members, and bystanders. Because of the life threatening nature of these defects, their existence was a material fact that Defendants concealed from plaintiffs and class members.

92.     Subclass members had no reason to believe that their vehicles possessed distinctive shortcomings; throughout the Class Period, they relied on Defendants to identify latent features that distinguished Plaintiffs' and Subclass members' vehicles from similar vehicles without the ignition switch and fuel pump defects, and the Defendants' failure to do so tended to mislead consumers into believing the Class Vehicles were safe to drive.

93.     Defendants violated D.C. Code § 28-3904(f) by failing to state a material fact, the omission of which tended to mislead consumers.

94.     Defendants violated the District of Columbia's consumer protection act generally by violating the common law governing fraud and negligence of the District of Columbia.

95.     Defendants violated the CPPA because any violation of any state or federal regulation of any trade practice is also a violation of the CPPA, so each complaint of each violation of federal law described above, including allegations of GM's violations of the Tread Act, ") , 49 U.S.C. §§ 30101-30170, is also a predicate violation of the CPPA.

96.     Plaintiffs seek treble damages, or $1,500 per violation, whichever is greater, payable to the consumer, an order enjoining Defendants' unfair or deceptive acts or practices, attorneys' fees, punitive damages, and any other just and proper relief available under D.C.

09-50026-smb Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 92 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/21/14 Page 81 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 47 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 46 of 53

Code § 28-3905(k)(2), including preliminary and permanent injunctive relief aimed at

providing protection for the People of the District of Columbia from Defendants' reckless

endangerment of the public health and their wanton disregard for the law.

### COUNT VI
### Asserted on Behalf of Ms. Summerville and the Maryland Subclass
### (Violation of Maryland's Consumer Protection Act ("MDCPA"),
### Md. Code, Comm. Law § 13-101 *et seq.*)

97.     Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

98.     This Count is brought on behalf of Ms. Summerville, the Maryland Class

generally with respect to the alleged violations of MDCPA § 13-301(3) and the portion of the

Maryland Class who purchased vehicles after October 19, 2009, with respect to violations of

MDCPA §§ 13-301(2)(i), 13-301(2)(iv), and 13-301(3).

99.     Plaintiffs are "consumers" within the meaning of MDCPA, § 13-101(c)(1).

100.     Defendants are "merchants" within the meaning of MDCPA, § 13-
    101(g)(1).

101.     Upon the inception of GM in 2009, Defendants knew the Elliotts' and Subclass

members' vehicles, due to the ignition switch defect, are prone to engine and electrical failure

during normal and expected driving conditions. The potential concurrent loss of control of the

vehicle and shut down of safety mechanisms such as air bags and anti-lock brakes makes

Subclass Vehicles less reliable, less safe, and less suitable for normal driving activities

inhibiting their proper and safe use of their vehicles, reducing their protections from injury

during reasonably foreseeable driving conditions, and endangering Subclass members, other

vehicle occupants, and bystanders.  GM knew that the defective fuel pumps in the vehicles

posed unreasonable risks of death, serious bodily injury, and property damage to the Elliotts,

Subclass members, and bystanders. Because of the life threatening nature of these defects, their existence was a material fact that Defendants concealed from plaintiffs and class members in violation of Md. Code, Comm. Laws § 13-301(3).  Plaintiffs were injured thereby having to endure unreasonable risk of death, serious bodily imjury, and diminution of the value of each of their vehicles.

102.    At no time during the Class Period did Ms. Summerville and Subclass members have access to the pre-release design, manufacturing, and field-testing data, and they had no reason to believe that their vehicles possessed distinctive shortcomings. Throughout the Class Period, they relied on Defendants to identify any latent features that distinguished their vehicles from similar vehicles without the ignition switch and fuel pump defects, and the Defendants' failure to do so tended to mislead consumers into believing no distinctive defect was present in their vehicles.

103.    With respect to Maryland Subclass members like Ms. Summerville who purchased their defective vehicles since October 19, 2009, Defendants violated Md. Code, Comm. Laws § 13-301(2)(i) by falsely representing, through advertising, warranties, and other express representations, that the Class Vehicles had characteristics and benefits which they did not actually have, namely, reasonably safe design and component parts.

104.    With respect to Maryland Subclass members like Ms. Summerville who purchased their defective vehicles since October 19, 2009, Defendants violated Md. Code, Comm. Laws § 13-301(2)(iv) by falsely representing through advertising, warranties, and other express representations, that the Class Vehicles met a certain standard or quality which they did not.

105.    With respect to the Subclass generally without regard to whether they purchased their vehicle after October 129, 2009, Defendants violated Md. Code, Comm. Laws § 13-

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 94 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/21/14   Page 83 of 88
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 49 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 48 of 53

301(3) throughout the Class Period by failing to state a material fact, the omission of which

tended to mislead consumers, by concealing the ignition switch and fuel pump defects from

Ms. Summerville and Subclass members.

106.    Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or

practices, and attorney's fees, and any other just and proper relief available under Md. Code,

Com. Laws § 13-408.

## COUNT VII
### Asserted on behalf of Ms. Summerville and the Multi-State Class
### (Breach of Implied Warranty of Merchantability Under § 2-314 of the UCC)

107.    Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

108.    This Count is brought on behalf of Ms. Summerville and the Multi-State

Warranty Class.

109.    Plaintiffs are "buyers" within the meaning of the Uniform Commercial Code.

110.    Defendants GM and Delphi are "sellers" within the meaning of the Uniform

Commercial Code because the Multi-State class members' jurisdictions do not require privity

with the buyer for a breach of the implied warranty of merchantability claim.

111.    Subclass members who purchased Class Vehicles from Defendants since

October 19, 2009, did so under an implied warranty that the vehicles would be merchantable.

Because of the poor design of the fuel pump, which made leakage and fire more likely, and

because of the ignition switch defect, their vehicles are not fit for ordinary purposes for which

such vehicles are generally used and are therefore not merchantable.

112.    Defendants sold goods that were not merchantable, because those goods are not

fit for the ordinary purposes for which such goods are used – the vehicles were marketed and

intended to be driven, but become unsafe under ordinary driving conditions.

09-50026-smg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 95 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 84 of 88
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 50 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 49 of 53

113.    Ms. Summerville and the Multi-State Class members were injured in that they did not receive the full benefits of their bargains with Defendants and seek to recover an amount to make them whole, or seek to exercise their contractual rights of rescission and return to the *status quo ante* by allowing them to return their vehicles to GM for a full refund, and to seek any other rights and remedies afforded them under the Uniform Commercial Code as buyers injured by the total breach of the seller in failing to tender a merchantable product as promised.

### COUNT VIII
### Asserted on Behalf of Plaintiffs and the Nationwide and all Subclasses
### (Civil Conspiracy and Joint Action or Aiding and Abetting)

114.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

115.    This Count is brought on behalf of the nationwide Class and all Subclasses.

116.    Defendants are jointly and severally liable for Plaintiffs' and Class and Subclass members' injuries because they acted in concert to cause those injuries.

117.    Defendants are also liable for Plaintiffs' and class and subclass members' injuries because they entered into specific agreement, explicit and implied, with each other and with others, including but not limited to the other defendants, dealers, engineers, accountants and lawyers (the co-conspirators) described in the preceding paragraphs of this First Amended Complaint, to inflict those injuries and to conceal their actions from Plaintiffs, Class and Subclass members and others.  By these agreements, Defendants conspired to violate each of the laws that form the basis for the claims in the preceding Counts of this Complaint.

118.    Defendants each committed overt acts in furtherance of the conspiracy.

09-50026-smg    Doc 12792-5    Filed 07/21/14    Entered 07/21/14 17:00:24    Exhibit E
Pg 96 of 99
Case 1:14-cv-00691-KBJ    Document 18-2    Filed 07/21/14    Page 85 of 88
Case MDL No. 2543    Document 309-5    Filed 07/01/14    Page 51 of 54
Case 1:14-cv-00691-KBJ    Document 15    Filed 06/28/14    Page 50 of 53

119.    Defendants knew that the conduct of the co-conspirators constituted a breach of

duties to the plaintiffs.

120.    Defendants gave substantial assistance and encouragement to the co-

conspirators in their course of conduct in violation of the rights of the plaintiffs.

121.    Defendants were aware that their assistance and encouragement of the wrongful

acts herein complained of substantially assisted the wrongful acts herein complained of.

122.    The wrongful acts herein complained of harmed plaintiffs.

123.    All defendants are therefore liable under civil conspiracy and civil aiding and

abetting for all harm to plaintiffs and class members as described in this complaint.

### ALLEGATIONS IN SUPPORT OF
### PRELIMINARY RELIEF

124.    As of the date of the filing of this Complaint, GM concedes that some 6.5

million GM products have safety related defects that create an unreasonable danger of death or

serious bodily harm to their drivers, vehicle occupants, nearby drivers, and bystanders.

125.    Despite purporting to come clean about its campaign of concealment and deceit

in February 2014, GM has failed to take measures to ensure that these vehicles do not remain

on the roads as a source of further death and injury.  Tens of thousands of GM vehicles with

safety related defect threatening moving stalls and other dangerous conditions are driven

within the District of Columbia by D.C. resident and commuters.

126.    GM has recklessly endangered the public health and safety of the People of the

District of Columbia.

127.    One of the main purposes of the "representative action" authorized by the law of

the District of Columbia is to allow private citizens such has Mr. and Mrs. Elliott to who are

09-50026-smb   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 97 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/11/14   Page 86 of 88

Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 52 of 54

Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 51 of 53

entitled to relief in this representative action to assist public authorities in protecting the public

interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated,

respectfully request that this Court enter a judgment against GM and Delphi, and grant the

following relief:

E.      Determine that the Elliotts may act as representatives of the public on behalf of

the People of the District of Columbia;

F.      Declare, adjudge and decree that Defendants have recklessly endangered the

public safety of the People of the District of Columbia and order specific steps that Defendants

must take to restore public safety, including but not limited to preliminary relief aimed at

removing the unreasonably dangerous GM vehicles from the public streets and thoroughfares

of the District forthwith; providing safe replacement vehicles for Plaintiffs and Class and

Subclass members that do not contain safety related defects; and, in light of the nature of GM's

wrongdoing, the substantial threat to the public health it has wrongfully caused, its apparent

management recalcitrance or incompetence as evidenced by GM's failure to take significant

remedial steps for the past six months since it has publicly admitted its years-long campaign of

concealment and deceit,  the appointment of a Special Master with expertise in the automobile

industry and ethical risk management practices to assist in the judicial supervision of GM's

management reforms designed to ensure that the Company does not continue to threaten the

public safety in the future; and permanent injunctive relief aimed at ensuring that GM deploys

reasonable  and responsible management controls with respect to safety or cease its business of

manufacturing for sale to the public complex products that can so easily be a threat of death of

serious bodily injury if not manufactured properly.

09-50026-smg Doc 12792-5 Filed 07/21/14 Entered 07/21/14 17:00:24 Exhibit E
Pg 98 of 99
Case 1:14-cv-00691-KBJ Document 18-2 Filed 07/11/14 Page 87 of 88
Case MDL No. 2543 Document 309-5 Filed 07/01/14 Page 53 of 54
Case 1:14-cv-00691-KBJ Document 15 Filed 06/28/14 Page 52 of 53

G.     Determine that this action may be maintained as a Class action and certify it as

such under Fed. R. Civ. P. 23(a) and 23(b)(3) and/or Fed. R. Civ. P. 23(b)(2), and/or Fed. R.

Civ. 23(c)(2), or alternatively certify all issues and claims that are appropriately certified; and

designate and appoint Plaintiffs as Class and Subclass Representatives and Plaintiffs' chosen

counsel as Class Counsel;

H.     Declare, adjudge and decree that the ignition switches in Plaintiffs' and Class

and Subclass Members vehicles are defective;

I.     Declare, adjudge and decree that the fuel pumps in Plaintiffs' and Class and

Subclass Members' vehicles are defective;

J.     Declare, adjudge and decree that Defendants violated 18 U.S.C. §§ 1962(c) and

(d) by conducting the affairs of the RICO Enterprise through a pattern of racketeering activity

and conspiring to do so;

K.     Declare, adjudge and decree the conduct of Defendants as alleged herein to be

unlawful, unfair, and/or deceptive, enjoin any such future conduct, and direct Defendants to

permanently, expeditiously, and completely repair the Plaintiffs', Class and Subclass

Members' vehicles to eliminate the ignition switch and fuel pump defects or, in the case of

Class and Subclass Members who purchased their vehicles after October 9, 2009, declare GM

in total breach of contract for its failure to tender a merchantable vehicle, and order GM to

return the full purchase price paid upon surrender of the vehicle at the election of the Class and

Subclass member;

L.     Declare, adjudge and decree that Defendants are financially responsible for

notifying all Class Members about the defective nature of the Class Vehicles;

M.     Declare, adjudge and decree that Defendants must disgorge, for the benefit of

Plaintiffs, Class Members, and Subclass Members all or part of the ill-gotten gains it received

09-50026-mg   Doc 12792-5   Filed 07/21/14   Entered 07/21/14 17:00:24   Exhibit E
Pg 99 of 99
Case 1:14-cv-00691-KBJ   Document 18-2   Filed 07/21/14   Page 68 of 68
Case MDL No. 2543   Document 309-5   Filed 07/01/14   Page 54 of 54
Case 1:14-cv-00691-KBJ   Document 15   Filed 06/28/14   Page 53 of 53

from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

N.      Award Plaintiffs, Class Members, and Subclass Members the greater of actual, compensatory damages or statutory damages, or treble damages under the CPPA, as proven at trial;

O.      Award Plaintiff and the nation-wide Class Members treble damages pursuant to 18 U.S.C. § 1964(c);

P.      Award Plaintiff, Class Members, and Subclass Members punitive damages in such amount as proven at trial;

Q.      Award Plaintiff, Class Members and Subclass Members their reasonable attorneys' fees, costs, and prejudgment and postjudgment interest; and

R.      Award Plaintiff, Class Members, and Subclass Members such other further and different relief as the case may require or as determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury on all the legal claims alleged in this Complaint.

Respectfully submitted,

_____/s/_____
Daniel Hornal
Talos Law
D.C Bar #1005381
705 4th St. NW #403
Washington, DC 20001
(202) 709-9662
daniel@taloslaw.com
Attorney for Plaintiffs