UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------------------

IN RE:

| | |
|---|---|
| GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | 14-MD-2543 (JMF) |
| *This Document Relates To* | Case No. |
| PAMELA EDWARDS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF PAUL EDWARDS | Jury Trial Demanded |
| Together with all individuals whose names appear on the attached Exhibit "A" | Complaint |
| PLAINTIFFS, | |

v.

GENERAL MOTORS, LLC
            DEFENDANT.

---------------------------------------------------------------------------------------------

## PLAINTIFFS' MOTION FOR LEAVE
## TO FILE OMNIBUS COMPLAINT WITH THE MDL COURT

Pursuant to Fed. R. Civ. Pro 42(a), Plaintiffs hereby respectfully request that the Court grant them leave to file an Omnibus Complaint, a copy of which is attached hereto as Exhibit "1," and in support thereof state as follows:

Plaintiffs assert claims against General Motors, LLC (hereafter referred as "New GM") under various theories of liability.

On July 9, 2014 the Judicial Panel on Multidistrict Litigation ordered the consolidation of all related actions pursuant to 28 U.S.C. § 1407. Plaintiffs now seek this Court's permission to file an Omnibus Complaint for Plaintiffs for pre-sale injuries and deaths in this proceeding in order to assist the Court in the orderly organization and efficient pre-trial disposition of these matters. The Omnibus Complaint alleges that New GM is liable for the wrongful deaths and

personal injuries that Plaintiffs suffered before the closing date of the sale of General Motors
Corporation.

Because the Firms are aware and mindful of the sale order, the plan injunction, and the
various stay stipulations as well as the many outstanding and pending issues identified in Judge
Gerber's July 30th DECISION WITH RESPECT TO NO STAY PLEADING (PHANEUF
PLAINTIFFS) and cautious as to the potential and substantial effect many of Judge Gerber's
future rulings will likely have on the Plaintiffs' claims contained herein, this relief is requested at
this time to make this Court—and by simultaneous filings in the bankruptcy proceeding—Judge
Gerber, aware of the significant number of pre-sale death and injury claims caused by defective
ignition switches.  The right to be heard on those pending issues in Judge Gerber's court (only in
the unlikely event that Designated Counsel does not "satisfactorily present the others' views . . .
") is an important right to these Plaintiffs, and is hereby preserved.  Neither the Firms nor the
Plaintiffs that would be covered by the Omnibus Complaint intend to take any step in the MDL
proceeding or otherwise that is not explicitly permitted by this MDL Court by way of a Court-
issued case management order.  The Omnibus Complaint would move apace with the other
actions in the MDL proceeding and be subject to any orders of the bankruptcy court on the
threshold issues the same as any other litigant or claimant.

Plaintiffs expect they will be entering into a Stay Stipulation as to the claims set out in
the Complaint during the pendency of the orderly and coordinated process ongoing in the
Bankruptcy Court which Plaintiffs believe will assure the fair adjudication of important
issues.   The careful and coordinated disposition of dispositive issues is paramount and, as Judge
Gerber rightly opines, should be done in a thoughtful, collaborative and systematic fashion.

Other than the filing of the Omnibus Complaint in the MDL proceeding, no other relief is sought by this Motion for Leave.

<div style="margin-left: 40%;">

**Respectfully Submitted,**

**HILLIARD MUÑOZ GONZALES LLP**

By: */s/ Robert C. Hilliard*                  

    Robert C. Hilliard
    State Bar No. 09677700
    Federal ID No. 5912
    bobh@hmglawfirm.com
    Rudy Gonzales, Jr.
    State Bar No. 08121700
    Federal ID No. 1896
    rudyg@hmglawfirm.com
    Catherine D. Tobin
    State Bar No. 24013642
    Federal ID No. 25316
    catherine@hmglawfirm.com
    Marion Reilly
    Texas Bar No. 24079195
    Federal ID No. 1357491
    marion@hmglawfirm.com

    719 S. Shoreline Boulevard,
    Suite 500
    Corpus Christi, TX  78401
    Telephone No.:  (361) 882-1612
    Facsimile No.:   (361) 882-3015

    -and-

By: */s/ Thomas J. Henry*                     

    Thomas J. Henry
    State Bar No. 09484210
    Federal ID No. 12980
    tjh@tjhlaw.com
    Curtis W. Fitzgerald, II
    State Bar No. 24012626
    Federal ID No. 24980
    cfitzgerald@tjhlaw.com

    **THOMAS J. HENRY INJURY ATTORNEYS**
    521 Starr St.

</div>

Corpus Christi, Texas 78401
Telephone No.:  (361) 985-0600
Facsimile No.:  (361) 985-0601

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 31, 2014, I filed the foregoing document with the Clerk
of Court via the CM/ECF system, which will automatically serve and send email notification of
such filing to all registered attorneys of record.


<u>/s/ Robert C. Hilliard</u>
Robert C. Hilliard

# EXHIBIT

# "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------------------

| | |
|---|---|
| IN RE: | |
| GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | 14-MD-2543 (JMF) |
| *This Document Relates To* | Case No. |
| PAMELA EDWARDS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF PAUL EDWARDS | Jury Trial Demanded |
| Together with all individuals whose names appear on the attached Exhibit "A" | Complaint |
| PLAINTIFFS, | |
| v. | |
| GENERAL MOTORS, LLC | |
| DEFENDANT. | |

---------------------------------------------------------------------------------------------

## <u>OMNIBUS COMPLAINT FOR PRE-SALE PERSONAL INJURIES AND DEATHS</u>

COME NOW the individuals listed on the attached and fully incorporated Exhibit A (hereinafter "Named Plaintiffs"), through undersigned counsel, respectfully represent that:

### <u>PRELIMINARY STATEMENT</u>

1.     The Named Plaintiffs' causes of action are brought solely against GENERAL MOTORS, LLC ("New GM").  Plaintiffs do not assert any causes of action against General Motors Corporation ("Old GM").

2.     Any references to General Motors Corporation, Old GM, or pre-sale order conduct in this Complaint are for background and reference purposes only.  That is, under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM acquired knowledge of Old GM's activities and the defective ignition switch via the minds of the employees, officers and managers it acquired

through the sale order.  New GM also acquired knowledge of Old GM's activities and the defective ignition switch via the books and records obtained and/or acquired as a result of the sale order.  Thus, the duties of Old GM are part of the foundation for New GM's liability. Additionally, New GM's liability for damages is attributable to its own post-sale conduct.

## II.   INTRODUCTION

3.      At any given moment, an ignition switch in a wide variety of General Motors vehicles could fail, killing or maiming countless individuals.  The disastrous system failures in GM vehicles are triggered by something as simple as a key chain on the vehicle's key or a bump in the road, as the ignition switch shifts from the "run" position into the "accessory/off" position, with a corresponding reduction or loss of power.  *See* March 11, 2014 Letter from New GM to Ms. Nancy Lewis re: NHTSA Recall No. 14V-047, at 1 ("Until the recall repairs have been performed, it is very important that customers remove all items from their key rings, leaving only the vehicle key."); *see also* New GM Safety Recall Notice ("Th[e] risk increases if your key ring is carrying added weight (such as more keys or the key fob) or your vehicle experiences rough road conditions or other jarring or impact related events.").  Yet, New GM also admits to its customers that lightening the key chain may not help as "rough road conditions or other jarring impact related events" could cause the vehicle to experience full loss of power, steering, braking and air bag deployment.  *See* Mar. 24, 2014 Letter from Senator Blumenthal to Attorney General Holder.  Appropriately, the Old GM engineer who designed the ignition switch called it "the switch from hell."  *Report to the Board of Directors of General Motors Company Regarding the Ignition Switch Recalls,* authored by Anton R. Valukas of Jenner & Block (May 29, 2014) (or "Valukas Report") at 5.

4.      New GM's refusal to honestly speak about the defective ignition switch has gone on too long—more than four and a half years since Old GM filed for bankruptcy.  Throughout that time, New GM knew of the life-threatening danger, and yet concealed the risk from drivers. Considering both the time that Old GM discovered the ignition switch defect and the time that New GM learned about it, thirteen years have passed.  New GM belatedly admits that there has been a death for every year of their collective silence.  But a recent report suggests that the death toll is exponentially higher than New GM admits, with the number actually in the hundreds.  *See* March 13, 2014 Letter from Center for Auto Safety to the Honorable David J. Friedman ("On March 7, the Center for Auto Safety (CAS) wrote you about NHTSA's failure to utilize its Special Crash Investigations (SCI) of 2005 Cobalts and 2004 Ions and Early Warning Reports (EWR) of death claims filed by GM to open a defect investigation and order a recall. Examination of NHTSA's Fatal Analysis Reporting System (FARS) reveals 303 deaths of front seat occupants in the recalled 2005-07 Cobalts and 2003-07 Ions where the airbag failed to deploy in non-rear impact crashes.").  This new figure is drawn from data on only two of the six recalled models, the Chevrolet Cobalt and Saturn Ion.  The death toll is expected to increase significantly as the full gamut of defective vehicles and incidents come to light.

5.      Old GM remained silent in 2001 when it received evidence that there was a problem with the now-recalled ignition switch in a pre-production Saturn Ion.

6.      Old GM remained silent in 2004, when two Old GM engineers reported that the Ion's ignition switch could accidently turn off if inadvertently hit by the driver's knee.  *See* March 11, 2014 Letter from GM to Nancy Lewis re: NHTSA Recall No. 14V-047; *see also* GM Recall Timeline.  At that time, Old GM's engineers reportedly considered several remedies to increase torque in the key cylinder, but no action was taken "after consideration of the lead time

required, cost and effectiveness of each of these solutions." *See* March 11, 2014 Letter from GM to Ms. Nancy Lewis re: NHTSA Recall No. 14V-047.   Old GM remained silent throughout 2005, when it received numerous reports of its customers' vehicles stalling, including a fatal crash in which a Cobalt's airbags did not deploy.   A proposal to redesign the ignition key was approved by Old GM, then cancelled for undisclosed reasons. Old GM sent its dealers a bulletin instructing them to tell customers who complained of stalling to remove extra items from their key chains.   Old GM also developed a key insert to prevent the key ring from hanging so low, but warranty records indicate that only 474 customers received one, compared to the more than one million vehicles sold.

7.     Old GM remained silent in 2006, when more than 30 complaints had been filed with the National Highway Traffic Safety Administration ("NHTSA") about unexpected stopping and stalling—at least a dozen of these complaints involved the 2005 Chevrolet Cobalt.

8.     Old GM remained silent in 2007, when it began tracking frontal-impact Cobalt crashes with no airbag deployment and discovered that in four of ten of such incidents the ignition was in "accessory" mode.   Old GM also remained silent about the defects when it elected to discontinue the Ion that same year, and when over 80 complaints about unexpected stopping or stalling were filed with the NHTSA, including at least 30 involving the now-recalled 2005 Chevrolet Cobalt.

9.     Old GM remained silent in 2008, when the NHTSA received 90 complaints about unexpected stopping or stalling for the now-recalled vehicles, including at least eight involving the 2006 Chevrolet HHR.

10.    Old GM remained silent in 2009, as the NHTSA complaint toll reached 120, including at least one 2007 Chevrolet Cobalt.

11.     New GM remained silent in 2009 when Old GM employees, officers, and managers with knowledge of the issue came to work for New GM.

12.     New GM remained silent in 2009 when it acquired Old GM's books and records pursuant to the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order, which referenced and detailed the defective ignition switch.

13.     New GM remained silent in 2010, as the NHTSA complaint toll reached 170, including at least thirty-five involving the 2006 Chevrolet Cobalt.

14.     New GM remained silent in 2013 when a technical expert discovered that the ignition switches in Ions and early-model Cobalts did not meet GM's torque specifications. Records reveal that Delphi Mechatronics provided Old GM with documents uncovering the 2006 ignition design change.

15.     GM's silence over the past thirteen years speaks volumes.  It resounds with an egregious and unprecedented failure to disclose a known defect, and reaches a crescendo of complete and utter disregard for human life.  And, just "[a]s we must account for every idle word, so must we account for every idle silence."[1]  The time for silence is over.

### III.   PARTIES

16.     The Named Plaintiffs are those individuals listed on the attached Exhibit A, which are incorporated herein as if set forth *in extenso*.

17.     The Named Plaintiffs listed in Exhibit A assert claims against Defendant General Motors LLC for personal injury and/or wrongful death stemming from pre-sale accidents—that is, the accidents in question occurred before July 10, 2009.

18.     The Named Plaintiffs' claims involve one or more of the following GM vehicles: (a) the First Wave Defective Vehicles, consisting of Chevrolet Cobalt (2005-2010 model years);

Chevrolet HHR (2006-2011 model years); Pontiac GS (2006-2007 model years); Pontiac

Solstice (2006-2010 model years); Saturn Ions (2003-2007 model years); Saturn Sky (2007-2010

model years); and (b) the Second Wave Defective Vehicles, consisting of Buick LaCrosse (2005-

2009 model years); Buick Lucerne (2006-2011 model years); Buick Regal LS (2004-2005 model

years); Buick Regal GS (2004-2005 model years); Cadillac Deville (2000-2005 model years);

Cadillac DTS (2004-2011 model years); Cadillac CTS (2003-2014 model years); Cadillac SRX

(2004-2006 model years); Chevrolet Camaro (2010-2014 model years); Chevrolet Impala (2000-

2014 model years); Chevrolet Monte Carlo (2000-2008 model years); Chevrolet Malibu (1997-

2005 model years); Oldsmobile Intrigue (1998-2002 model years); Oldsmobile Alero (1999-

2004 model years); Pontiac Grand Am (1999-2005 model years); Pontiac Grand Prix (2004-2008

model years); Daewoo G2x (2007-2009 model years); Opal GT (2007-2010 model years);

Pontiac Pursuit (2005-2007 model years); and Vauxhall GT (2007-2010 model years).  The First

Waver Defective Vehicles and the Second Wave Defective Vehicles are collectively the

"Defective Vehicles."

     19.     Defendant General Motors, LLC ("New GM"), is a Delaware limited liability

company.   On July 10, 2009, General Motors, LLC acquired substantially all of the assets and

acquired certain liabilities of General Motors Corporation by way of a Section 363 sale under

Chapter 11 of the Bankruptcy Code.   New GM acquired specific liabilities of Old GM, who

filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 1,

2009.  New GM acquired substantially all of Old GM's employees, officers and management

personnel.  New GM also acquired Old GM's designs, tools, inventory, books, records, and its

key contracts, among other essential assets. The Named Plaintiffs' causes of action in this

---

[1] Benjamin Franklin.

lawsuit are brought against New GM, and Plaintiffs do not assert any causes of action against
General Motors Corporation ("Old GM").

20.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase
Agreement, New GM expressly acquired liability for post-sale accidents involving Old GM
vehicles causing personal injury, loss of life or property damage.

21.    New GM also expressly acquired certain liabilities of Old GM, including certain
statutory requirements:

> From and after the Closing, Purchaser [New GM] shall comply with the
> certification, reporting and recall requirements of the National Traffic and Motor
> Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and
> Documentation Act, the Clean Air Act, the California Health and Safety Code and
> similar Laws, in each case, to the extent applicable in respect of vehicles and
> vehicle parts manufactured or distributed by Seller.

22.    In addition, [New GM] expressly set forth that it:

> shall be responsible for the administration, management and payment of all
> Liabilities arising under (i) express written warranties of Sellers [General Motors
> Corporation] that are specifically identified as warranties and delivered in
> connection with the sale of new, certified used or pre-owned vehicles or new or
> remanufactured motor vehicle parts and equipment (including service parts,
> accessories, engines and transmissions) manufactured or sold by Sellers or
> Purchaser prior to or after the Closing and (ii) Lemon Laws.

23.    At all times relevant to the claims in this lawsuit, Old GM and New GM were in
the business of developing, manufacturing, and marketing cars throughout the United States
generally, and specifically in each of the states of citizenship identified in Exhibit A. New GM
has a network of authorized retailers that sell its vehicles and parts throughout the United States.
New GM maintains its principal place of business at 300 Renaissance Center, Detroit, Michigan.

## IV.    JURISDICTION AND VENUE

24.    Plaintiffs' filing of this Complaint in this district does not alter the choice-of-law
analysis and does not constitute a waiver of any of Plaintiffs' rights to transfer to another district

at the conclusion of pretrial proceedings in this case. Named Plaintiffs have filed this Complaint

in this district in order to advance the efficient and orderly resolution of claims arising from

Defendants' conduct and its attendant nationwide devastating effects. At the conclusion of

pretrial proceedings in this case, each Named Plaintiff will be entitled to transfer of his or her

claim to the state of his or her residence as listed on the attached Exhibit A.

25.    This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)

because the amount in controversy exceeds $75,000.00 and Named Plaintiffs are citizens of

different states than Defendant.

## V.    FACTUAL BACKGROUND

### A.    General Background

26.    An auto manufacturer should never make profits more important than safety and

should never conceal from consumers or the public any defects that exist in its vehicles.  New

GM's Vehicle Safety Chief, Jeff Boyer recently proclaimed that: "Nothing is more important than

the safety of our customers in the vehicles they drive."  *GM Announces New Vehicle Safety*

*Chief,*    http://democrats.energycommerce.house.gov/sites/default/files/documents/Testimony-

Barra-GM-Ignition-Switch-Recall-2014-4-1.pdf    Yet New GM failed to live up to this

commitment.  Appropriately, the Old GM engineer who designed the ignition switch called it

"the switch from hell." *Report to the Board of Directors of General Motors Company Regarding*

*the Ignition Switch Recalls,* authored by Anton R. Valukas of Jenner & Block (May 29, 2014)

(or "Valukas Report") at 5.

27.    The first priority of a car manufacturer should be to ensure that its vehicles are

safe, and particularly that its vehicles have operable ignition systems, airbags, power-steering,

power brakes, and other safety features that can prevent or minimize the threat of death or

serious bodily harm in a collision.  In addition, a car manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely, and its critical safety systems (such as engine control, braking, and airbag systems) work properly until such time as the driver shuts down the vehicle.  Moreover, a manufacturer that is aware of dangerous design defects that cause its vehicles to shut down during operation, or its airbags not to deploy, must promptly disclose and remedy such defects.

28.   To date, GM has sold at least 15 million automobiles installed with defective ignition switches which slip into the "accessory" or "off" position and turn off the engine and the car's vital engine systems without warning while the car is in motion. This ignition switch defect disables the power steering and power brakes and prevents the deployment of air bags in the vehicles.

**B.   GM's Knowledge of Safety-Related Defects and Its Concealment of those Defects**

29.   It has now come to light that the GM vehicles had safety related design defects that were known by Old GM as early as 2001, and by New GM as a result of the acquired knowledge from employees, officers, and managers and the books and records that New GM obtained and/or acquired as a result of the 2009 sale.  During pre-production development of the Ion in 2001, Old GM became aware of issues relating to its ignition switch "passlock" system.  Old GM's 2001 internal report stated the problem included a "low detent plunger force" in the ignition switch.  In 2003, before the launch of the 2005 Cobalt, Old GM became aware of incidents wherein the vehicle engine would suddenly lose power in the event the key moved out of the "run" position when the driver inadvertently contacted the key or steering column. An investigation of these issues was opened and, after consideration of the lead-time required and the cost effectiveness of potential solutions, the investigation was closed with no

action taken.

30.    The design of the ignition switch, position of the key lock module, and slot design of the key are hereinafter referred to as the "Key System."

31.    In 2002, Old GM began manufacturing and selling 2003 Saturn Ions with the defective Key System. It later began selling Chevrolet Cobalts with the same defective Key System.

32.    In 2004, Old GM engineers reported that the ignition switch on the Saturn Ion was so weak and so low on the steering column that a driver's knee could easily bump the key and turn off the vehicle.  This defect was sufficiently serious for an Old GM engineer, in January 2004, as part of Old GM's vehicle evaluation program, to affirmatively conclude, in writing, that "[t]his is a basic design flaw and should be corrected if we want repeat sales."

33.    In 2004, Old GM began manufacturing and selling the 2005 Chevrolet Cobalt. The Cobalt was a sister vehicle (essentially the same car with a different badge or name) of the Saturn Ion. As noted, Old GM installed the same Key System on the 2005 Cobalt as it did on the Saturn Ion.

34.    On October 29, 2004, around the time of Old GM's market launch of the 2005 Cobalt, Gary Altman — Old GM's program-engineering manager for the Cobalt — test-drove the Cobalt with the standard key and key fob. During the test drive, when Altman's knee bumped the key, the engine turned off, causing the engine to stall. Altman reported this incident to GM.

35.    In response to Altman's report, Old GM launched an engineering inquiry to investigate the potential for the key to move from the "run" to the "accessory/off" position during ordinary driving conditions. This inquiry is known within GM as a Problem Resolution

Tracking System Inquiry ("PRTS"). The specific complaint which resulted in the PRTS was
that the "the vehicle can be keyed off with knee while driving."

     36.   On February 1, 2005, as part of the PRTS, Old GM engineers concluded:

> There are two main reasons that [sic] we believe can cause a lower
> effort in turning the key: 1. A low torque detent in the ignition
> switch. 2. A low position of the lock module in the column. (PRTS
> — Complete Report N172404).

As part of the PRTS, Old GM engineers also began looking into ways to solve the problem of the
key moving from the "run" to the "accessory/off" position during ordinary driving.

     37.    On February 18, 2005, Old GM engineers presented several possible solutions to
the Cockpit Program Integration Team ("CPIT").  Old GM engineers determined the only "sure
solution" to resolve the problem of the key inadvertently moving from the "run" to the
"accessory/off" position required changing from a low mount to a high mount lock module,
which would considerably reduce the possibility of the key/key fob being impacted by a driver.
According to Old GM engineers, this change in the key position on the lock module, combined
with increasing the detent in the ignition switch, would be a "sure solution." Old GM, however,
through Altman, rejected this "sure solution," in part, because the cost to implement the solution
would be too high.

     38.    During this PRTS, Old GM also considered changing the key from a slot to a hole
as a way to attempt to contain this problem, but not as a solution to the problem.  Changing the
key from a slot to a hole would reduce the lever arm of the key and the key chain. With the slot
design, the key chain would hang lower on the key which would increase the torque force on the
ignition switch when the chain was contacted or moved in any way.  Old GM engineers
determined this key change would significantly reduce the chance of the key inadvertently
moving from the "run" to the "accessory/off" position during ordinary driving maneuvers.

-11-

39.    An Old GM engineer conducted a cost analysis of this key change and determined that the cost to make this change would be less than one dollar per vehicle or around 57 cents per part.  Old GM, however, rejected this proposed key change and, on March 9, 2005, Old GM closed the PRTS without taking any steps to fix the defective Key System in Ions and Cobalts. The PRTS detailed the reasons why Old GM took no action.

> Per GMX001 PEM's [Gary Altrnan] directive we are closing this PRTS with no action. The main reasons are as follows: All possible solutions were presented to CPIT and VAPTR: a. The lead-time for all the solutions is too long. b. The tooling cost and piece price are too high. c. None of the solutions seem to fully countermeasure the possibility of the key being turned (ignition turn off) during driving. Thus **none of the solutions represents an acceptable business case** (emphasis added).

40.    On February 28, 2005, Old GM issued a bulletin to its dealers regarding engine-stalling incidents in 2005 Cobalts and 2005 Pontiac Pursuits (the Canadian version of the Pontiac G5).  The February 28, 2005 bulletin addressed the potential for drivers of these vehicles to inadvertently turn off the ignition due to low key ignition cylinder torque/effort.  In the February 28, 2005 bulletin, Old GM provided the following recommendations/instructions to its dealers — **but not to the Named Plaintiffs or to the public in general:**

> There is potential for the driver to inadvertently turn off the ignition due to low key ignition cylinder torque/effort. The concern is more likely to occur if the driver is short and has a large heavy key chain.
>
> In the cases this condition was documented, the driver's knee would contact the key chain while the vehicle was turning. The steering column was adjusted all the way down. This is more likely to happen to a person that is short as they will have the seat positioned closer to the steering column.
>
> In cases that fit this profile, question the customer thoroughly to determine if this may be the cause. The customer should be advised of this potential and to take steps, such as removing unessential items from their key chains, to prevent it.

> Please follow this diagnosis process thoroughly and complete each
> step. If the condition exhibited is resolved without completing
> every step, the remaining steps do not need to be performed.

41.     At that time, however, Old GM knew that the inadvertent turning off of the ignition in the vehicles was due to design defects in the Key System in those vehicles, including the Saturn Ion, and **was not** limited to short drivers using large heavy key chains.  Simply stated, as of February 2005, Old GM engineers knew that the Saturn Ion and Chevrolet Cobalt vehicles had the Key System safety-related defects discussed in this Complaint.  GM failed to disclose and, in fact, concealed, the February 28, 2005 bulletin — and/or the information contained therein, from Saturn Ion and Chevrolet Cobalt owners, including the Named Plaintiffs, and sent affirmative representations to dealers that did not accurately describe the nature of the problem, the multiple design steps needed for a "sure solution" to the problem, and GM's knowledge of it.

42.     Indeed, rather than disclosing this serious safety problem that uniformly affected all Saturn Ion cars, GM, instead, concealed and obscured the problems, electing to wait until customers brought their cars to a dealership after an engine-stalling incident, and offered even its own dealers only an incomplete, incorrect, and insufficient description of the defects and the steps necessary to actually remedy them.

43.     Under 49 C.F.R. § 573.6, GM was required to "furnish a report to the NHTSA for each defect . . . related to motor vehicle safety."  Instead of complying with its legal obligations, GM fraudulently concealed the Key System defect from the public — including Named Plaintiffs — and continued to manufacture and sell Ions and Cobalts with these known safety defects, causing the Named Plaintiffs to continue to own, operate or ride in vehicles that contained defective and dangerous ignition switches.

44.    In March 2005, following its receipt of a customer complaint that his/her Cobalt

vehicle ignition turned off while driving, Old GM opened another PRTS — Complete Report

(0793/2005-US). Steve Oakley, the brand quality manager for the Cobalt, originated the PRTS.

As part of the PRTS, Mr. Oakley reviewed an email dated March 9, 2005 from Jack Weber, an

Old GM engineer. The subject of the email was "Cobalt SS Ignition Turn Off." In the email, Mr.

Weber stated:

> I've had a chance to drive a Cobalt SS and attempt to turn off the
> ignition during heel/toe down shifting. Much to my surprise, the first
> time I turned off the ignition switch was during a normal traffic brake
> application on I96. After that I was able to do a static reproduction of
> the condition in a parking lot. I've attached photos of the condition
> with comments. My Anthropometric
> Measurements are attached below:
> Static view of keys, fob and registration hitting knee.
>
> Position of RKE fob during normal driving. Dynamic evaluation.
> View of steering column cover and Pass Key 3+ "lump" under the
> key slot.
> Key in run position, knee contacting the fob and the split ring is
> pulling on the key to move it to the "off" position. Static evaluation.
> Fob has levered around the steering column cover and turned the
> ignition off.
> Unobstructed view of the fob and column cover.
> Attached below is documentation of a RAMSIS study performed
> to attempt to duplicate the real world condition.
> Please call at (586) 986-0622 with questions.
>
> Jack Weber

Mr. Weber clearly identified the defects in the Key System while he was driving the Cobalt,

which is essentially the same vehicle as the Saturn Ion.

45.    Despite the clear evidence of the safety-related defect with the Key System,

during the March 2005 PRTS, Old GM engineers decided not to reconsider any of the proposed

solutions discussed during the February 2005 PRTS. Instead, the Old GM engineers leading the

PRTS recommended that the sole corrective action GM should recommend would be to advise

customers to remove excess material from their key rings. This recommendation was made despite the fact that Old GM knew that the inadvertent turning off of the ignition in these vehicles was due to design defects in the Key System, and was not limited to drivers having excess key ring materials.

46.    In May 2005, Old GM, following its receipt of another customer complaint that the customer's Cobalt ignition turned off while driving, opened another PRTS. During the May 2005 PRTS, Old GM decided to redesign the key in order to reduce the possibility that a driver may inadvertently turn the key from the "run" to the "accessory/off" position during ordinary driving.

47.    Despite this initial safety/redesign commitment, however, Old GM ultimately failed to follow through on its own decision and closed this PRTS without any action, further concealing what it knew from the public and continuing to subject the public, including the Named Plaintiffs, to the Defective Vehicles' serious safety risks.

48.    At or about this same time, Old GM, through Alan Adler, Old GM's Manager, Product Safety Communications, issued the following statement with respect to the Chevrolet Cobalt's inadvertent shut-off problems, affirmatively representing in its "Statement on Chevrolet Cobalt Inadvertent Shut-offs" that:

> In rare cases when a combination of factors is present, a Chevrolet Cobalt driver can cut power to the engine by inadvertently bumping the ignition key to the accessory or off position while the car is running.
>
> When this happens, the Cobalt is still controllable. The engine can be restarted after shifting to neutral.
>
> GM has analyzed this condition and believes it may occur when a driver overloads a key ring, or when the driver's leg moves amid factors such as steering column position, seat height and placement.

Depending on these factors, a driver can unintentionally turn the
vehicle off.

Service advisers are telling customers they can virtually eliminate this
possibility by taking several steps, including removing non-essential
material from their key rings.

Ignition systems are designed to have "on" and "off" positions, and
practically any vehicle can have power to a running engine cut off by
inadvertently bumping the ignition from the run to accessory or off
position.

49.    Old GM's statement, however, was demonstrably false and misleading.    Old
GM's internal testing documents showed that these incidents occurred when drivers were using
keys with the standard key fob.    GM knew that these incidents were not caused by heavy key
chains or a driver's size and seating position.    GM also knew that removing the non-essential
material from key rings would not "virtually eliminate" the possibility of inadvertent bumping of
the ignition key from the "run" to the "accessory/off" position while the car was running.

50.    GM's above-referenced statement was further demonstrably false and misleading
because GM knew that these incidents were ultimately caused by the safety-related defects in the
Key System identified in the February 2005 PRTS.    GM's affirmative concealment of the
problems with the defective vehicles, including the Saturn Ion and Cobalt cars, did not end there.

51.    On July 29 2005, Amber Marie Rose ("Amber"), a sixteen-year-old Clinton,
Maryland resident, was driving a 2005 Cobalt when she drove off the road and struck a tree
head-on. Amber's driver's side frontal airbag did not deploy and she died as a result of the
injuries she sustained in the crash.

52.    Old GM received notice of Amber's incident in September 2005 and shortly
thereafter opened an internal investigation file concerning the incident.    During its investigation
of the incident, Old GM learned that the key in Amber's Cobalt was in the "accessory/off"

position at the time of the crash.  During its investigation, Old GM also knew that the driver's

side frontal airbag should have deployed given the circumstances of Amber's crash.  Upon

information and belief, Old GM subsequently entered into a confidential settlement agreement

with Amber's mother.

53.    In December 2005, shortly after it commenced its internal investigation into the

incident leading to Amber's death, Old GM issued a Technical Service Bulletin (05-02-35-007)

(the "TSB").  The TSB, which GM affirmatively represented applied to 2005-2006 Chevrolet

Cobalts, 2006 Chevrolet 1-11-1Rs, 2005-2006 Pontiac Pursuit, 2006 Pontiac Solstices, and 2003-

2006 Saturn Ions, provided, "Information on inadvertent Turning of Key Cylinder, Loss of

Electrical System and no DTCs," provided the following service information:

> There is potential for the driver to inadvertently turn off the ignition
> due to low ignition key cylinder torque/effort.
>
> The concern is more likely to occur if the driver is short and has a
> large and/or heavy key chain. In these cases, this condition was
> documented and the driver's knee would contact the key chain while
> the vehicle was turning and the steering column was adjusted all the
> way down. This is more likely to happen to a person who is short, as
> they have the seat positioned closer to the steering column.
>
> In cases that fit this profile, question the customer thoroughly to
> determine if this may be the cause. The customer should be advised
> of this potential and should take steps to prevent it - such as
> removing unessential items from their key chain.
>
> Engineering has come up with an insert for the key ring so that it
> goes from a "slot" design to a hole design. As a result, the key ring
> cannot move up and down in the slot any longer - it can only rotate
> on the hole. In addition, the previous key ring has been replaced
> with a smaller, 13 mm (0.5 in) design. This will result in the keys
> not hanging as low as in the past.

54.    As with its prior statements regarding the Defective Vehicles, the information Old

GM provided in this TSB was also false and misleading.  In the two PRTSs GM issued before it

issued the TSB, GM engineers never represented that short drivers or heavy key chains were the reasons why these incidents were happening. Indeed, at the time it issued the TSB, Old GM knew that these incidents were happening to drivers of all sizes using keys with the standard key fobs. In other words, Old GM knew these incidents were not caused by short drivers with heavy key chains, but were caused by the safety-related defects in the Key System of its Defective Vehicles, including the Chevrolet Cobalt.

55.   Not only did GM fail to address the safety defects, it covered-up and fraudulently concealed the facts from the Named Plaintiffs and the driving public. One GM Quality Service Manager, who drafted a TSB in connection with the ignition switch defects, stated "the term 'stall' is a 'hot' word that GM generally does not use in bulletins because it may raise a concern about vehicle safety, which suggests GM should recall the vehicle, not issue a bulletin." Valukas Report at 92. GM personnel stated that "there was concern about the use of 'stall' in a TSB because such language might draw the attention of NHTSA." *Id.* at 93.

56.   GM's widespread cover-up and deception was brought to light in the Valukas Report. Multiple GM employees confirmed that GM intentionally avoids using the word "stall" "because such language might draw the attention of NHTSA" and "may raise a concern about safety, which suggests GM should recall the vehicle . . . ." Even GM's CEO, Mary Barra, testified on June 18, 2014, before the United States House of Representatives Committee on Energy and Commerce, Subcommittee on Oversight and Investigation, that "we consider a stall to be a safety issue."

57.   In 2005, Old GM began buying back Cobalts from certain customers who were experiencing engine stalling incidents. GM never told the public, including the Named Plaintiffs, that it was buying back Cobalts under these circumstances. GM refused to buy back Cobalts

from other customers who had also experienced engine-stalling incidents.  In fact, for many of
the customers who complained about experiencing engine-stalling incidents, GM never informed
these customers of the TSB and/or the availability of the key insert.

58.    On November 17, 2005, shortly after Amber's death and immediately before Old
GM's issuance of the TSB, there was another incident involving a 2005 Cobalt in Baldwin,
Louisiana. In that incident, the Cobalt went off the road and hit a tree. The frontal airbags did not
deploy.  Old GM received notice of this accident, opened a file, and referred to it as the "Colbert"
incident.

59.    On February 10, 2006, in Lanexa, Virginia, shortly after Old GM issued the TSB,
a 2005 Cobalt drove off of the road and hit a light pole.  As with the Colbert incident (above), the
frontal airbags failed to deploy.  The download of the SDM (the vehicle's "black box") showed
the key was in the "accessory/off" position at the time of the crash.  Old GM received notice of
this accident, opened a file, and referred to it as the "Carroll" incident.

60.    On March 14, 2006, in Frederick, Maryland, a 2005 Cobalt traveled off the road
and struck a utility pole. The frontal airbags did not deploy.  The download of the SDM showed
the key was in the "accessory/off" position at the time of the crash. Old GM received notice of
this incident, opened a file, and referred to it as the "Oakley" incident.

61.    On August 1, 2006, following its receipt of a customer complaint about a Cobalt
stalling while driving, Old GM opened yet another PRTS relating to this issue.  Old GM closed
this PRTS on October 2, 2006 without taking any action.

62.    In October 2006, Old GM updated the TSB (05-02-35-007) to include additional
model years: the 2007 Saturn Ion and Sky, 2007 Chevrolet HEIR, 2007 Cobalt and 2007 Pontiac

Solstice and Pontiac 05 vehicles.  These vehicles had the same safety-related defects in the Key

System as the vehicles in the original TSB.

63.     On December 29, 2006, in Sellenville, Pennsylvania, a 2005 Cobalt drove off the

road and hit a tree. The frontal airbags failed to deploy.  Old GM received notice of this incident,

opened a file, and referred to it as the "Frei" incident.

64.     On February 6, 2007, in Shaker Township, Pennsylvania, a 2006 Cobalt sailed off

the road and struck a truck. Despite there being a frontal impact in this incident, the frontal

airbags failed to deploy. The download of the SDM showed the key was in the "accessory/off"

position. Old GM received notice of this incident, opened a file, and referred to it as the "White"

incident.

65.     On August 6, 2007, in Cross Lanes, West Virginia, a 2006 Cobalt rear-ended a

truck. The frontal airbags failed to deploy.  Old GM received notice of this incident, opened a

file, and referred to it as the "McCormick" incident.

66.     On September 25, 2007, in New Orleans, Louisiana, a 2007 Chevrolet Cobalt lost

control and struck a guardrail. Despite there being a frontal impact in this incident, the frontal

airbags failed to deploy.  Old GM received notice of this incident, opened a file, and referred to it

as the "Gathe" incident.

67.     On October 16 2007, in Lyndhurst, Ohio, a 2005 Chevrolet Cobalt traveled off

road and hit a tree. The frontal airbags failed to deploy. Old GM received notice of this incident,

opened a file, and referred to it as the "Breen" incident.

68.     On April 5, 2008, in Sommerville, Tennessee, a 2006 Chevrolet Cobalt traveled

off the road and struck a tree. Despite there being a frontal impact in this incident, the frontal

airbags failed to deploy. The download of the SDM showed the key was in the "accessory/off"

position. Old GM received notice of this incident, opened a file, and referred to it as the "Freeman" incident.

69.      On May 21, 2008, in Argyle, Wisconsin, a 2007 Pontiac G5 traveled off the road and struck a tree. Despite there being a frontal impact in this incident, the frontal airbags failed to deploy. The download of the SDM showed the key was in the "accessory/off" position. Old GM received notice of this incident, opened a file, and referred to it as the "Wild" incident.

70.      On May 28, 2008, in Lufkin, Texas, a 2007 Chevrolet Cobalt traveled off the road and struck a tree. Despite there being a frontal impact in this incident, the frontal airbags failed to deploy. Old GM received notice of this incident, opened a file, and referred to it as the "McDonald" incident.

71.      On September 13, 2008, in Lincoln Township, Michigan, a 2006 Chevrolet Cobalt traveled off the road and struck a tree. Despite there being a frontal impact in this incident, the frontal airbags failed to deploy. Old GM received notice of this incident, opened a file, and referred to it as the "Harding" incident.

72.      In 2008, in Rolling Hills Estates, California, a 2008 Chevrolet Cobalt traveled off the road and hit a tree. Despite there being a frontal impact in this incident, the frontal airbags failed to deploy. Old GM received notice of this incident, opened a file, and referred to it as the "Dunn" incident.

73.      On December 6, 2008, in Lake Placid, Florida, a 2007 Chevrolet Cobalt traveled off the road and hit a utility pole. Despite there being a frontal impact in this incident, the frontal airbags failed to deploy. The download of the SDM showed the key was in the "accessory/off" position. Old GM received notice of this incident, opened a file, and referred to it as the "Grondona" incident.

74.     In February 2009, Old GM opened yet another PRTS with respect to the Defective Vehicles — this time to investigate why the slot in the key in Cobalts allowed the key chain to hang too low in the vehicles, as well as the inadvertent shutting off of the vehicles. Through this PRTS, Old GM determined that changing the key from a slot to a hole would significantly reduce the likelihood of the ignition switch inadvertently turning off.

75.     In March 2009, Old GM approved of the design change in the key from the slot to a hole. According to GM, this redesigned change was implemented in model year 2010 Chevrolet Cobalts. GM, however, chose not to provide these redesigned keys to the owners or lessees of any of the vehicles implicated in the TSB, including the 2005 Cobalt

76.     The following timeline gives a short overview of some key points between 2004 and the present, as discussed above:

| **2001-2004** | **2005-2009** | **2010-2014** |
|---|---|---|
| GM learns Key Systems are defective. | GM learns of hundreds of field reports of Key System failures and multiple fatalities. | GM learns of more field reports of Key System failures and additional fatalities. |

| **2005** | **2009** | **2014** |
|---|---|---|
| GM engineers' proposed fix rejected; Amber Rose dies after airbag in Cobalt fails to deploy | GM declares and emerges from bankruptcy | GM issues inadequate recall over 10 years after learning its Key Systems are defective |

77.     Throughout this time period, GM was selling the Defective Vehicles to consumers for full price, and consumers were purchasing them believing that the vehicles were non-defective, but all the while GM was concealing the extent and nature of the defects in the Defective Vehicles.

**C.**     **Old GM's Marketing Represented to the Public that the Defective Vehicles Were
Safe.**

78.     In a section called "safety," Old GM's Chevrolet website stated:

**OUR COMMITMENT**

Your family's safety is important to us. Whether it's a short errand
around town or a cross-country road trip, Chevrolet is committed to
keeping you and your family safe — from the start of your journey
to your destination. That's why every Chevrolet is designed with a
comprehensive list of safety and security features to help give you
peace of mind. Choose from the safety features below to learn more
about how they work, and which Chevy vehicles offer them.

79.     Similarly, Old GM promoted its Saturn vehicle line on television with statements
like "Putting people first," and "Saturn. People First."  Saturn's print ad campaign featured
advertisements like the following, which stated, among other things: "Need is where you begin.
In cars, it's about things like reliability, durability and, of course, safety. That's where we started
when developing our new line of cars."  In sum, in order to increase sales, Old GM touted the
safety of its vehicles.  But, when the time came for the company to stay true to its words, GM did
not disclose its knowledge about the dangerous Key System defects to its customers, including
the Named Plaintiffs.

**D.**     **Meet the New GM, Same as the Old GM**

80.     In 2009, GM declared bankruptcy and, weeks later, it emerged from bankruptcy.
Both before and after GM's bankruptcy, the Key Systems in the Defective Vehicles continued to
fail and New GM, in all iterations, continued to conceal the truth.

81.     On May 15, 2009, New GM again met with Continental AG, an airbag component
supplier, and requested that Continental download SDM data from a 2006 Chevrolet Cobalt
accident where the airbags failed to deploy.

82.     On December 31, 2010, in Rutherford County, Tennessee, a 2006 Chevrolet Cobalt traveled off the road and struck a tree. Despite there being a frontal impact in this incident, the frontal airbags failed to deploy. The download of the SDM showed the key was in the "accessory/off" position. New GM received notice of this incident, opened a file, and referred to it as the "Chansuthus" incident.

83.     On December 31, 2010, in Harlingen, Texas, a 2006 Chevrolet Cobalt traveled off the road and struck a curb. Despite there being a frontal impact in this incident, the frontal airbags failed to deploy. New GM received notice of this incident, opened a file, and referred to it as the "Najera" incident.

84.     On March 22, 2011, Ryan Jahr, a New GM engineer, downloaded the SDM from a Cobalt. The information from the SDM download showed that the key in that Cobalt turned from the "run" to the "accessory/off" position 3 to 4 seconds before the crash.

85.     On December 18, 2011, in Parksville, South Carolina, a 2007 Chevrolet Cobalt traveled off the road and struck a tree. Despite there being a frontal impact in this incident, the frontal airbags failed to deploy. The download of the SDM showed the key was in the "accessory/off" position.  New GM received notice of this incident, opened a file, and referred to it as the "Sullivan" incident.

86.     These incidents are not limited to vehicles of model year 2007 and before. According to New GM's own investigation, there have been over 250 crashes involving 2008-2010 GM vehicles in which the airbags failed to deploy.

87.     In 2010, New GM began a formal investigation of the frontal airbag non-deployment incidents in Chevrolet Cobalts and Pontiac G5s. GM subsequently elevated the investigation to a Field Performance Evaluation ("FPE").

-24-

88.      In August 2011, New GM assigned Engineering Group Manager, Brian Stouffer as the Field Performance Assessment Engineer ("FPAE") to assist with the FPE investigation.

89.      In Spring 2012, Stouffer asked Jim Federico, a high-level executive and chief engineer at New GM, to oversee the FPE investigation. Federico was the "executive champion" for the investigation to help coordinate resources for the FPE investigation.

90.      In May 2012, New GM engineers tested the torque on the ignition switches for 2005-2009 Cobalts, 2007 and 2009 Pontiac 05s, 2006-2009 HHRs, and 2003-2007 Saturn Ion vehicles in a junkyard. The results of these tests showed that the torque required to turn the ignition switches in most of these vehicles from the "run" to the "accessory/off" position did not meet GM's minimum torque specification requirements. These results were reported to Stouffer and other members of the FPE.

91.      In September 2012, Stouffer requested assistance from a "Red X Team" as part of the FPE investigation. The Red X Team was a group of engineers within New GM assigned to find the root cause of the airbag non-deployments in frontal accidents involving GM vehicles. By that time, however, it was clear that the root cause of the airbag non-deployments in a majority of the frontal accidents was the defective Key System. The Red X Team became involved in the investigation shortly after Mr. Stouffer's request.

92.      During the field-performance-evaluation process, New GM determined that, although increasing the detent in the ignition switch would reduce the chance that the key would inadvertently move from the "run" to the "accessory/off" position, it would not be a total solution to the problem.  Indeed, the New GM engineers identified several additional ways to actually fix the problem. These ideas included adding a shroud to prevent a driver's knee from contacting the key, modifying the key and lock cylinder to orient the key in an upward facing

orientation when in the run position, and adding a push button to the lock cylinder to prevent it from slipping out of run. New GM rejected each of these ideas. New GM engineers understood that the key fob may be impacted and pinched between the driver's knee and the steering column which causes the key to be inadvertently turned from the run to accessory/off position. New GM engineers understood that increasing the detent in the ignition switch would not be a total solution to the problem. New GM engineers also believed that the additional changes to the Key System (such as the shroud) were necessary to fix the defects with the Key System. The New GM engineers clearly understood that increasing the detent in the ignition switch alone was not a solution to the problem but New GM concealed — and continued to conceal — from the public the nature and extent of the defects.

93.    By 2012, Federico, Stouffer, and the remaining members of the Red X Team knew that the Key System in the Saturn Ion, the Cobalt, and the G5 vehicles had safety-related defects that would cause the key to move from the "run" to the "accessory/off" position while driving these vehicles. They also knew that when this happened the airbags would no longer work in frontal crashes. Federico, Stouffer, and the other members of the Red X Team also understood that these safety-related defects had caused or contributed to numerous accidents and multiple fatalities. Despite this knowledge, New GM chose to conceal this information from the public, NHTSA, and the Named Plaintiffs.

94.    In December 2012, in Pensacola, Florida, Ebram Handy, a New GM engineer, participated in an inspection of components from Brooke Melton's Cobalt, including the ignition switch. At that inspection, Handy, along with Mark Hood, a mechanical engineer retained by the Meltons, conducted testing on the ignition switch from Brooke Melton's vehicle, as well as a replacement ignition-switch for the 2005 Cobalt.

95.     At that inspection, Handy observed that the results of the testing showed that the torque performance on the ignition switch from Brooke Melton's Cobalt was well below GM's minimum torque performance specifications. Handy also observed that the torque performance on the replacement ignition switch was significantly higher than the torque performance on the ignition switch in Brooke Melton's Cobalt.

96.     In January 2013, Handy, in preparation for a Rule 30(b)(6) deposition, spoke with several GM engineers, including DeGiorgio and Stouffer.  At that time, Handy knew that, based on the testing he had observed, the original ignition switch in the 2005 Cobalt failed to meet GM's minimum torque performance specifications.  New GM knew that an ignition switch that did not meet its minimum torque performance requirements was a safety-related defect.

**E.     GM Recalls**

97.     On February 7, 2014, New GM, in a letter from Carmen Benavides, Director of Product Investigations and Safety Regulations for New GM, notified the NHTSA that it was conducting Recall No. 13454 for certain 2005-2007 model year Chevrolet Cobalts and 2007 model year Pontiac 05 vehicles.  In its February 7, 2014, letter to NHTSA, New GM represented that as replacement ignition switches became available, GM would replace the ignition switches on the Defective Vehicles.

98.     On February 19, 2014, a request for timeliness query of General Motors' Safety Recall 13454 was sent to the NHTSA. The timeliness query pointed out that GM had failed to recall all of the vehicles with the defective ignition switches.  The February 19, 2014 request for timeliness query also asked the NHTSA to investigate GM's failure to fulfill its legal obligation to report the safety-related defects in the Defective Vehicles to the NHTSA within five days of discovering the defect.

99.    On February 24, 2014, New GM in a letter from Carmen Benavides, informed the

NHTSA it was expanding the recall to include 2006-2007 model year (MY) Chevrolet I-EHR

and Pontiac Solstice, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles.   GM

included an Attachment to the February 24, 2014 letter. In the Attachment, New GM, **for the**

**first time,** admitted that GM previously authorized a change in the ignition switch.  Specifically,

New GM stated:

> On April 26, 2006, the GM design engineer responsible for the Cobalt's
> ignition switch signed a document approving changes to the ignition switch
> proposed by the supplier, Delphi Mechatronics. The approved changes
> included, among other things, the use of a new detent plunger and spring that
> increased torque force in the ignition switch. This change to the ignition switch
> was not reflected in a corresponding change in the part number for the ignition
> switch. GM believes that the supplier began providing the re-designed ignition
> switch to GM at some point during the 2007 model year. (GM's February 24,
> 2014 letter).

100.    New GM then produced documents in response to Congressional requests leading

up to the hearings on April 1 and 2, 2014. Among the documents produced by New GM is a

document titled, "GENERAL MOTORS COMMODITY VALIDATION SIGN-OFF," dated

April 26, 2006. According to this document, Delphi had met all of the sign-off requirements in

order to provide a new ignition switch for certain GM vehicles. New GM has acknowledged that

the ignition switch in the Cobalt was included in this design change.  The design change included

a new detent plunger "to increase torque force in the switch." DeGiorgio's signature is on this

page as the GM authorized engineer who signed off on this change to the ignition switch.  This

GM Commodity Validation Sign-Off shows that DeGiorgio repeatedly perjured himself during

his deposition on April 29, 2013. DeGiorgio perjured himself in order to fraudulently conceal

evidence from the Plaintiffs that GM had signed off on the change in the ignition switch so that

the Plaintiffs, and ultimately a jury, would never know that GM was changing the switches in

Case 14-mc-02543-JMF    Document 188-1    Filed 07/31/14    Page 30 of 50

2007 and later model year Cobalts and concealing these changes.  DeGiorgio perjured himself when he signed the errata sheet confirming that all the testimony was true and accurate.

**F.      The Named Plaintiffs' Specific Experiences.**

101.    The Named Plaintiffs incorporate each and every paragraph above as if fully set forth herein.  Each of the Named Plaintiffs listed in Exhibit A assert a loss of vehicular control arising from an ignition switch defect of a GM vehicle resulting in the death and/or serious personal injuries of the Plaintiffs listed in Exhibit A.

## VI.      CLAIMS AGAINST GENERAL MOTORS, LLC BROUGHT BY ALL PLAINTIFFS LISTED IN EXHIBIT A

**COUNT I – Negligence, Gross Negligence, Recklessness**

102.    The Named Plaintiffs re-allege as if fully set forth, each and every allegation set forth herein.

103.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM acquired knowledge of Old GM's activities and the defective ignition switch via the minds of the employees, officers and managers it acquired through the sale order.  New GM acquired knowledge of Old GM's activities and the defective ignition switch via the books and records obtained and/or acquired as a result of the sale order.  Thus, the duties of Old GM are part of the foundation for New GM's liability.  Additionally, New GM's liability for damages is attributable to its own post-sale conduct.

104.    Old GM and New GM owed Named Plaintiffs a duty to design, manufacture, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as Named Plaintiffs.

105.    Old GM and New GM owed the Named Plaintiffs a duty to detect known safety defects in GM vehicles.

106.    Old GM and New GM owed the Named Plaintiffs a duty, once it discovered the ignition switch defect, to provide thorough notice of the defect, including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

107.    Old GM and New GM owed the Named Plaintiffs a duty, once it discovered the ignition switch defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

108.    Old GM and New GM knew that their customers, such as the Named Plaintiffs, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

109.    Old GM and New GM's efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of the Named Plaintiffs and other drivers of GM vehicles. Old GM and New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, Old GM and New GM had a responsibility to the Named Plaintiffs and other drivers to take the reasonable measures listed above.

110.    Independent of any failures by Old GM as described herein, between July 10, 2009 and March 2014, New GM breached its duties to the Named Plaintiffs by failing to provide appropriate notice of and repair procedures for the ignition switch defect in the Named Plaintiffs' vehicles.  In doing so, New GM departed from the reasonable standard of care required of it.

111.    It was foreseeable that if the New GM did not provide appropriate notice and
repair procedures for the defect, the Named Plaintiffs and other drivers would be endangered.

112.    The Named Plaintiffs' injuries were reasonably foreseeable to Old GM and New
GM.

113.    The Named Plaintiffs could not through the exercise of reasonable diligence have
prevented the injuries caused by Old GM and New GM's negligence and gross negligence.

114.    Old GM and New GM's acts and omissions, when viewed objectively from the
actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude
of the potential harm to others.  Old GM and New GM nevertheless proceeded with conscious
indifference to the rights, safety and welfare of others.

**COUNT II - Fraud by Non Disclosure**

115.    The Named Plaintiffs re-allege as if fully set forth, each and every allegation set
forth herein.

116.    As early as 2001, during pre-production development of the Saturn Ion, Old GM
became aware of issues relating to the ignition switch "passlock" system.  The 2001 report stated
that the problem included a "low detent plunger force" in the ignition switch.

117.    In 2003, before the launch of the 2005 Cobalt, Old GM became aware of incidents
wherein the vehicle engine would suddenly lose power in the event the key moved out of the
"run" position when the driver inadvertently contacted the key or steering column. An
investigation was opened and, after consideration of lead-time required and the cost and
effectiveness of potential solutions, the investigation was closed with no action taken.

118.    As set forth above, from July 2009 to the present, New GM intentionally
concealed or failed to disclose material facts from the Plaintiff, the public, and NHTSA

119.    Additionally, from its inception in 2009, New GM possessed independent knowledge of the defects in the Named Plaintiffs' vehicles and the need to undertake multiple design steps to resolve those defects to prevent injury and economic harm to vehicle owners such as Plaintiffs.  This knowledge was based, in part, on the information from records, files, reports and other documents and materials regarding the defective ignition switch maintained by Old GM, all of which were included in the assets purchased by New GM during the bankruptcy sale.

120.    Old GM had a duty to disclose the facts to the Named Plaintiffs and Old GM knew: (1) that the Named Plaintiffs were ignorant of the material facts that New GM did not disclose and/or intentionally concealed; and (2) the Named Plaintiffs did not have an equal opportunity to discover the material facts that New GM did not disclose and/or intentionally concealed.  Old GM's fraud, fraudulent concealment and fraudulent non-disclosure were all components of the subject incidents of the Named Plaintiffs.  Because New GM acquired knowledge of Old GM's activities and the defective ignition switch via the minds of the employees, officers, managers, books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order, New GM is expressly liable to Named Plaintiffs.  Further, the duties of Old GM are part of the foundation for the liability acquired by New GM.

121.    Independent of any failures by Old GM as described herein, between July 10, 2009 and March 2014, New GM breached its duties to the Named Plaintiffs by failing to disclose knowledge of the defective ignition switch to Named Plaintiffs.

122.    New GM had a duty to disclose the facts to the Named Plaintiffs and New GM knew: (1) that the Named Plaintiffs were ignorant of the material facts that New GM did not disclose and/or intentionally concealed; and (2) the Named Plaintiffs did not have an equal

opportunity to discover the material facts that New GM did not disclose and/or intentionally concealed.

123.    By failing to disclose these material facts, New GM intended to induce the Named Plaintiffs to take some action or refrain from acting.

124.    The Named Plaintiffs relied on New GM's non-disclosure and they were injured as a result of acting without knowledge of the undisclosed facts.

## VII.    DAMAGES

125.    The Named Plaintiffs pray for damages against the Defendant in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) plus costs and any other such other relief to be deemed just and equitable to which they are entitled.

## VIII.    JURY DEMAND

126.    The Named Plaintiffs request a trial by jury.

## PRAYER

For the foregoing reasons, Named Plaintiffs pray that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the each Plaintiff against Defendant for actual damages, as alleged, and exemplary damages; together with pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Named Plaintiffs may be entitled at law or in equity.

**Respectfully Submitted,**

**HILLIARD MUÑOZ GONZALES LLP**

By: /s/ Robert C. Hilliard
    Robert C. Hilliard
    State Bar No. 09677700

Federal ID No. 5912
bobh@hmglawfirm.com
Rudy Gonzales, Jr.
State Bar No. 08121700
Federal ID No. 1896
rudyg@hmglawfirm.com
Catherine D. Tobin
State Bar No. 24013642
Federal ID No. 25316
catherine@hmglawfirm.com
Marion Reilly
Texas Bar No. 24079195
Federal ID No. 1357491
marion@hmglawfirm.com

719 S. Shoreline Boulevard,
Suite 500
Corpus Christi, TX  78401
Telephone No.:   (361) 882-1612
Facsimile No.:    (361) 882-3015

-and-

By: */s/ Thomas J. Henry*
    Thomas J. Henry
    State Bar No. 09484210
    Federal ID No. 12980
    tjh@tjlaw.com
    Curtis W. Fitzgerald, II
    State Bar No. 24012626
    Federal ID No. 24980
    cfitzgerald@tjlaw.com

    **THOMAS J. HENRY INJURY ATTORNEYS**
    521 Starr St.
    Corpus Christi, Texas 78401
    Telephone No.:  (361) 985-0600
    Facsimile No.:  (361) 985-0601

    **ATTORNEYS FOR PLAINTIFFS**

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court* |
|-----|---------------------|-----------|----------|-------|---------------|---------------------|---------------------|
| **Death** | | | | | | | |
| 1 | Davis, Donna Individually, and as Representative of the Estate of Kendra Davis | Clyde, North Carolina | 2000 Chevy Cavalier | 1G1JC1246Y7406135 | 5/1/05 | Waynesville, NC | Western District of North Carolina |
| 2 | Edwards, Pamela Individually, and as Representative of the Estate of Paul Adams | Jonesboro, Georgia | 2008 Pontiac G6 | 1G2ZH58N774169761 | 3/18/08 | Jackson, MS | Southern District of Mississippi |
| 3 | Goad, Lisa Individually, and as Representative of the Estate of Justin Wayne Goad | Dyer, Tennessee | 2001 Chevy Impala | 2G1WF55E719204482 | 11/5/07 | Gibson County, TN | Western District of Tennessee |
| 4 | Gonzalez, Deborah Individually, and as Representative of the Estate of Roberto D. Gonzalez | Vineland, New Jersey | 2008 Chevy Malibu | 1G1ZH57B684200754 | 4/18/09 | Vineland, NJ | District of New Jersey |
| 5 | Haseleu, Todd Individually, and as Representative of the Estate of Tiffany Lee Haseleu | Watertown, Wisconsin | 2006 Chevy Cobalt | 1G1AK15F867747145 | 6/11/09 | Jefferson County, WI | Western District of Wisconsin |
| 6 | Hawkins, Carolyn Individually, and as Representative of the Estate of Tamia Williams | Montgomery, Alabama | 2008 Chevy Malibu | 1G1ZT58NX8G112964 | 7/6/08 | Ponitiac, MI | Eastern District of Michigan |
| 7 | Herren, Gena Individually, and as Representative of the Estate of Morgan D'Nan Foster | Red Oak, Oklahoma | 2006 Chevy Cobalt | 1G1AK15FX67792510 | 12/13/06 | Wilburton, OK | Eastern District of Oklahoma |
| 8 | Hicks, Jennie Individually, and as Representative of the Estate of Alphonso Hicks | Hephzibah, Georgia | 2006 Chevy Impala | 2G1WT55K369193924 | 9/15/08 | Augusta, GA | Southern District of Georgia |
| 9 | Higgins, Sherell Individually, and as Representative of the Estate of Darneasha Brown | Calumet City, Illinois | 2006 Chevy Cobalt | 1G1AK55F167627873 | 9/3/05 | Nashville, TN | Middle District of Tennessee |
| 10 | Johnson, Margaret Individually, and as Next Friend of Bryan Johnson, and as Representative of the Estate of Robert Brian Johnson | Fairfield, California | 1997 Chevy Malibu | 1G1NE52MXVY118238 | 6/26/01 | Suisun, CA | Eastern District of California |
| 11 | Langley, Kim Individually, and as Representative of the Estate of Richard Bailey | Phoenix, Arizona | 2007 Chevy Cobalt | 1G1AL15F277100383 | 4/21/08 | San Bernandino, CA | Central District of California |

*Named Plaintiffs state that but for the Order permitting direct filing into the Southern District of New York, they would have filed in the district courts listed in this column.

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|-----|----------------------|-----------|----------|-------|---------------|---------------------|---------------------|
| 12 | Lindsay, Kenneth Individually, and as Representative of the Estate of Rita Carol Lindsay | Altoona, Alabama | 2006 Chevy Cobalt | 1G1AL15F467777370 | 10/19/08 | Attalla, AL | Northern District of Alabama |
| 13 | Moza, Joseph Individually, and as Representative of the Estate of Loretta Moza | Yale, Michigan | 2006 Chevy HHR | 3GNDA23D56S582078 | 8/4/08 | Detroit, MI | Eastern District of Michigan |
| 14 | O'Shields, Mary Individually, and as Representative of the Estate of Brenda Inman | Myrtle Beach, South Carolina | 2003 Chevy Impala | | 7/16/03 | Dillon, SC | District of South Carolina |
| 15 | Powledge Colvin, Amber Individually, and as Representative of the Estate of Adam Powledge | Crosby, Texas | 2004 Chevy Malibu | 1G1NB52F34M598780 | 10/18/05 | Texas City, TX | Southern District of Texas |
| 16 | Raniolo, Samuel Individually, and as Representative of the Estate of Christian Raniolo | Kings Mountain, North Carolina | 2006 Chevy Cobalt | 1G1AK55F767632009 | 10/10/07 | Kings Mountain, NC | Western District of North Carolina |
| 17 | Swafford, Marshell Individually, and as Representative of the Estate of Corey Swafford | Wolfe City, Texas | 2006 Chevy Cobalt | 1G1AK55F067686784 | 11/5/05 | Greenville, TX | Northern District of Texas |
| 18 | Tyler, Jacqueline Individually, and as Representative of the Estate of Altonio Tyler | Jackson, Mississippi | 2008 Pontiac G6 | 1G2ZH58N774169761 | 3/18/08 | Jackson, MS | Southern District of Mississippi |
| 19 | Vogt, William Individually, and as Representative of the Estate of Valerie Vogt | Hamlin, Pennsylvania | 2006 Pontiac G6 | 1G2ZH158564186032 | 4/30/07 | Wayne Lake Township, PA | Middle District of Pennsylvania |
| 20 | Wallace, Carla Individually, and as Representative of the Estate of Cory Wallace | Wyandotte, Oklahoma | 2006 Chevy Cobalt | 1G1AK15FX67838854 | 6/2/09 | Miami, OK | Northern District of Oklahoma |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|-----|----------------------|-----------|----------|-------|---------------|----------------------|---------------------|
| **Injury** | | | | | | | |
| 21 | Anderson, Vangie | Clarksdale, Mississippi | 2006 Chevy Cobalt | 4T16E37K92U113110 | 12/17/08 | Birmingham, AL | Northern District of Alabama |
| 22 | Banks, Isadore | Little Rock, Arkansas | 2008 Chevy Cobalt | 1G1AL58F887151763 | 1/1/09 | Little Rock, AR | Eastern District of Arkansas |
| 23 | Baylor, Sandra D | Tallmadge, Ohio | 2007 Chevy Cobalt | | 3/8/09 | Austintown, OH | Southern District of Ohio |
| 24 | Bennett, Keith | South Williamsport, Pennsylvania | 2009 Chevy Cobalt | 1G1AK18H097197959 | 5/19/09 | Montoursville, PA | Middle District of Pennsylvania |
| 25 | Berard, Brandy | Lake Charles, Louisiana | 2005 Chevy Cobalt | 1G1AK55F667640005 | 11/10/05 | Welsh, LA | Western District of Louisiana |
| 26 | Bethel, Lisa | Fort Edward, New York | 2007 Chevy HHR | | 6/1/07 | , NY | |
| 27 | Bond, Dalena | Saucier, Mississippi | 2005 Chevy Cobalt | 1G1AK52F957512649 | 4/10/06 | Saucier, MS | Southern District of Mississippi |
| 28 | Bonito, Kathleen | Downingtown, Pennsylvania | 2006 Saturn Ion | 1G8AJ55F06Z188481 | 5/6/08 | East Whiteland Township, PA | Eastern District of Pennsylvania |
| 29 | Braxton, Linda | Taylor, Michigan | 2007 Saturn Ion | 1G8AJ55F27Z122404 | 10/8/08 | Westland, MI | Eastern District of Michigan |
| 30 | Brooks, Joseph | Applevalley, Minnesota | 2007 Chevy Cobalt | | 5/26/08 | Minneapolis, MN | District of Minnesota |
| 31 | Brooks, Rose | Louisville, Kentucky | 2005 Saturn Ion | 1E8AL652535Z166410 | 11/6/08 | Louisville, KY | Western District of Kentucky |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|---|---|---|---|---|---|---|---|
| 32 | Brown, Cathalina | University Park, Illinois | 2005 Chevy Cobalt | 1G1AL14F457616906 | 5/1/08 | Orland Park, IL | Northern District of Illinois |
| 33 | Buckley, Amanda | Tulsa, Oklahoma | 2004 Saturn Ion | 1G8AG52F240114785 | 6/30/07 | Tulsa, OK | Northern District of Oklahoma |
| 34 | Bueno, John | Lake Balboa, California | 2008 Chevy Cobalt | Rental Vehicle VIN not recorded on police report | 2/20/08 | Sherman Oaks, CA | Central District of California |
| 35 | Bueno, Lisa | Lake Balboa, California | 2008 Chevy Cobalt | Rental Vehicle VIN not recorded on police report | 2/20/08 | Sherman Oaks, CA | Central District of California |
| 36 | Burns, Angela | Nashville, Tennessee | 2006 Chevy Cobalt | 1G1AK15F467663646 | 4/14/06 | Whitesburg, KY | Eastern District of Kentucky |
| 37 | Burton, Shari | Prattville, Alabama | 2006 Chevy Malibu | | 1/1/06 | , | |
| 38 | Caldwell, Connell | Rialto, California | 2006 Saturn Ion | 1G8AJ58F4967163305 | 6/23/09 | Las Vegas, NV | District of Nevada |
| 39 | Carter, Nicole | Fairfield, California | 2007 Chevy HHR | | 10/20/07 | Lake County, CA | Northern District of California |
| 40 | Chandler, Dessie | Birmingham, Alabama | 2006 Saturn Ion  and 2009 Chevy Cobolt | 1G1As58H397170890 | 4/1/08 | Birmingham, AL | Northern District of Alabama |
| 41 | Collins, Billy V. | Mansfield, Ohio | 2006 Chevy Cobalt | 1G1AK55F667607361 | 2/23/08 | Ontario, OH | Northern District of Ohio |
| 42 | Curry, Annie | Hyattsville, Maryland | 2004 Chevy Malibu | 1G1ZT64834F232539 | 7/25/08 | Washington, DC | District of Columbia |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|-----|----------------------|-----------|----------|-------|---------------|----------------------|---------------------|
| 43 | Curry, Jacqueline | Upper Marlboro, Maryland | 2004 Chevy Malibu | | 7/25/08 | Washington, DC | District of Columbia |
| 44 | Cuthbertson, Ruth | Washington, District of Columbia | 2008 Saturn Sky | | 7/28/08 | Washington, DC | District of Columbia |
| 45 | Davis, Veronica | Burton, Michigan | 2007 Chevy HHR | 3GNDA23D465650032 | 9/16/07 | Grand Blanc, MI | Eastern District of Michigan |
| 46 | Deforest, Gayla | Venus, Texas | 2007 Chevy Cobalt | 1G1AL55F877173619 | 5/1/08 | Alvarado, TX | Northern District of Texas |
| 47 | Delhommer, Michelle | Prairieville, Louisiana | 2008 Chevy Cobalt | 1G1AK18F687224026 | 8/2/08 | Prairieville, LA | Middle District of Louisiana |
| 48 | Delhommer, Michelle Individually, and as Next Friend of Justice Delhommer | Prairieville, Louisiana | 2008 Chevy Cobalt | 1G1AK18F687224026 | 8/2/08 | Prairieville, LA | Middle District of Louisiana |
| 49 | Delhommer, Michelle Individually, and as Next Friend of Justin Kyle | Prairieville, Louisiana | 2008 Chevy Cobalt | 1G1AK18F687224026 | 8/2/08 | Prairieville, LA | Middle District of Louisiana |
| 50 | Deming, Michael | Flint, Michigan | 2007 Chevy Cobalt | 1G1AL55F577379514 | 11/7/07 | Fayetteville, NC | Eastern District of North Carolina |
| 51 | Doindis Jr., Peter | Cleveland, Ohio | 2008 Saturn Sky | 1g8mb35bx8y100427 | 4/28/08 | Canton, OH | Northern District of Ohio |
| 52 | Duckett, Raymond | Charlotte, North Carolina | 2005 Chevy Cobalt | 1G1AK12F557661892 | 4/26/08 | Pittsburgh, PA | Western District of Pennsylvania |
| 53 | Edmonson, Kesha | Denver, Virginia | 2006 Chevy Cobalt | 1G1AK15FX67701381 | 1/1/06 | Williamsburg, VA | Eastern District of Virginia |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|---|---|---|---|---|---|---|---|
| 54 | Edwards, Shiza | Millbrook, Alabama | 2007 Chevy Cobalt | | 1/1/09 | Montgomery, AL | Middle District of Alabama |
| 55 | Enzor, Marc | Tucson, Arizona | 2005 Chevy Cobalt | | 1/1/06 | , | |
| 56 | Ferdarko, Jacqueline | Lorian, Ohio | 2004 Saturn Ion | 1G8AN12F34Z200735 | 10/29/04 | Lorain, OH | Northern District of Ohio |
| 57 | Ferrell, Tabatha | Chapmanville, West Virginia | 2005 Chevy Cobalt | 1G1AL12F757663818 | 8/5/08 | Logan, WV | Southern District of West Virginia |
| 58 | Fish, Robert | Mulberry, Florida | 2006 Pontiac Solstice | 1g2mb35b26y113454 | 8/5/08 | Tallahassee, FL | Northern District of Florida |
| 59 | Fleming, Jessica | Longview, Texas | 2008 Chevy Cobalt | | 6/2/09 | , | |
| 60 | Garza, Rosy E | Corpus Christi, Texas | 2007 Chevy Cobalt | | 4/16/08 | Gregory, TX | Southern District of Texas |
| 61 | Gaston Jr, Darryl R | Lexington, South Carolina | 2003 Chevy Impala | 2G1WH52K239421638 | 1/1/05 | Jacksonville, AL | Northern District of Alabama |
| 62 | Gibbs, Santoria | Auburn, Alabama | 2007 Saturn Ion | 1G8AJ58F872199895 | 7/15/08 | Montgomery, AL | Middle District of Alabama |
| 63 | Gillespie, Robert | London, Ohio | 2007 Chevy HHR | 3GNDA23D47S558212 | 11/1/07 | London, OH | Southern District of Ohio |
| 64 | Gordon, Catherine | Algonac, Michigan | 2005 Chevy Cobalt | 1G1AL52F457511552 | 12/4/06 | Port Huron, MI | Eastern District of Michigan |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|---|---|---|---|---|---|---|---|
| 65 | Grooms, Stephanie | Watertown, Tennessee | 2007 Chevy HHR | 3GNDA23P97S570706 | 10/21/08 | Lebanon, TN | Middle District of Tennessee |
| 66 | Gross, Kevin D. | Glen Burnie, Maryland | 2005 Chevy Cobalt | 1G1AK12F557581332 | 6/22/08 | Easton, MD | District of Maryland |
| 67 | Groves, Michelle | Independence, Missouri | 2006 Chevy Cobalt | 1G1AK15F167645122 | 4/21/09 | Kansas City, MO | Western District of Missouri |
| 68 | Hairston, John T | Eden, North Carolina | 2006 Saturn Ion | 21GBAJ55RXZ12226 | 10/27/06 | Perth Amboy, NJ | District of New Jersey |
| 69 | Haislah, Robert | Rome, Ohio | 2006 Chevy Cobalt | | 6/1/07 | Clevand, OH | Northern District of Ohio |
| 70 | Hamilton, Donnie | Fayetteville, North Carolina | 2006 Chevy Cobalt | 1G1AL15F177266118 | 11/14/08 | Benson, NC | Eastern District of North Carolina |
| 71 | Harris, Charlesa | Westville, Oklahoma | 2008 Chevy Cobalt | 1G1AK18F087164132 | 9/23/08 | Watts, OK | Eastern District of Oklahoma |
| 72 | Hemminger, Deana | Enigma, Georgia | 2005 Chevy Cobalt | Not available | 4/1/05 | Chester, GA | Southern District of Georgia |
| 73 | Henley, Robert | Tomball, Texas | 2005 Chevy Malibu | | 5/15/05 | Houston, TX | Southern District of Texas |
| 74 | Higgins, Sherell | Calumet City, Illinois | 2006 Chevy Cobalt | 1G1AK55F167627873 | 9/3/05 | Nashville, TN | Middle District of Tennessee |
| 75 | Hill, Roderick | Pearl, Mississippi | 2006 Saturn Ion | 1G8AJ55FX62110841 | 2/3/07 | Yazoo, MS | Southern District of Mississippi |

Case 14-mc-02349-JMF   Document 488-1   Filed 07/31/14   Page 43 of 50

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|-----|----------------------|-----------|----------|-------|---------------|----------------------|---------------------|
| 76 | Hillman, Diana | Madison, Wisconsin | 2006 Pontiac Grand Am | 2G2WP552561147106 | 8/1/08 | Madison, WI | Western District of Wisconsin |
| 77 | Honeycutt, Sammeeka | Los Angelos, California | 2006 Chevy Cobalt | 1G1AL55F767810529 | 11/25/07 | West LA, CA | Central District of California |
| 78 | Howard, Tanya | Mobile, Alabama | 2005 Chevy Malibu | 1g1nd52f35m185517 | 1/1/08 | Creola, AL | Southern District of Alabama |
| 79 | Hultgren, Erik | Menifee, California | 2003 Saturn Ion | 1g8ak52f13z143238 | 3/17/04 | Riverside County, CA | Central District of California |
| 80 | James, Gwendolyn | Detroit, Michigan | 2006 Chevy Cobalt | | 4/1/06 | Troy, MI | Eastern District of Michigan |
| 81 | Jennings, Robert | Indianapolis, Indiana | 2007 Saturn Ion | | 1/14/09 | Indianapolis, IN | Southern District of Indiana |
| 82 | Johndro, Jason | Lorian, Ohio | 2008 Chevy Cobalt | 1g1ak18f387263589 | 3/1/09 | Dallas, TX | Northern District of Texas |
| 83 | Johnson, Kara | Oswego, Illinois | 2006 Saturn Ion | 1g8aj55fx6z171364 | 11/20/07 | Oswego, IL | Northern District of Illinois |
| 84 | Kage, Gloria | Baltimore, Maryland | 2005 Chevy Cobalt | | 11/27/05 | Hanover, MD | District of Maryland |
| 85 | Kalilou, Rasheda | Greensboro, North Carolina | 2006 Chevy Cobalt | | 7/27/08 | Gulfport, MS | Southern District of Mississippi |
| 86 | Keller, William F. | White Lake, Michigan | 2004 Saturn Ion | 1G8AY12P94Z231617 | 1/5/05 | Bloomfield Township, MI | Eastern District of Michigan |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|---|---|---|---|---|---|---|---|
| 87 | Kichar, Karen | Webster, Massachusetts | 2005 Chevy Cobalt | 1G1AK54F357608404 | 7/25/08 | Webster, MA | District of Massachusetts |
| 88 | Leblanc, Nachel | New Bedford, Massachusetts | 2004 Saturn Ion | 1G8AG52F14Z151911 | 1/1/05 | New Bedford, MA | District of Massachusetts |
| 89 | LeDay, Gilbert | Baton Rouge, Louisiana | 2006 Chevy Cobalt | | 1/28/08 | Baton Rouge, LA | Middle District of Louisiana |
| 90 | Lee, Wanda | Dothan, Alabama | 2008 Pontiac G6 | 1G2ZH57NX84134778 | 11/2/08 | Marianna, FL | Northern District of Florida |
| 91 | Leonard, Janeshea | Ruston, Louisiana | 2005 Chevy Cobalt | 1G1AK52F057602658 | 1/1/09 | Ruston, LA | Western District of Louisiana |
| 92 | Lichtenwalner, Pamela | Stinson Beach, California | 2004 Saturn Ion | 1G8AZ54F34Z155269 | 1/16/07 | Stinson Beach, CA | Northern District of California |
| 93 | Lockhart, Marjorie | Monroe, Michigan | 2003 Saturn Ion | 1G8AL52F737204220 | 10/20/03 | Frenchtown Twp, MI | Eastern District of Michigan |
| 94 | Lopez, Kimberly | La Jara, Colorado | 2007 Chevy Cobalt | 1G1AK15F477413437 | 3/8/09 | Denver, CO | District of Colorado |
| 95 | Love, Mark | Gary, Indiana | 2006 Chevy Cobalt | 1G1AL15F367689510 | 4/1/07 | Holbert, ID | District of Idaho |
| 96 | Lynn, Kenneth A. | Cincinnati, Ohio | 2006 Chevy Malibu  LS | 1GT51F96F300100 | 7/14/08 | Cincinnati, OH | Southern District of Ohio |
| 97 | Maclin, Justin | Warren, Michigan | 2006 Chevy Cobalt | | 3/22/09 | Detroit, MI | Eastern District of Michigan |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|-----|---------------------|-----------|----------|-------|---------------|---------------------|---------------------|
| 98 | McCloud, Patricia | Burkburnett, Texas | 2005 Chevy Cobalt | | 11/4/06 | Fargo, ND | District of North Dakota |
| 99 | Mency, Eileen | Boston, Massachusetts | 2006 Chevy HHR | 3GNDA23P56S524627 | 7/3/08 | Dorchester, MA | District of Massachusetts |
| 100 | Moindi Wycliffe | San Jose, California | 2005 Chevy Cobalt | | 3/1/09 | , CA | Northern District of California |
| 101 | Moore, Justin | Gaylord, Michigan | 2007 Chevy Cobalt | | 7/1/07 | Almont, Lapeer County, MI | Eastern District of Michigan |
| 102 | Myers, Diane | Daytona Beach, Florida | 2003 Saturn Ion | 1G8A652F93Z102725 | 2/29/08 | Port Orange, FL | Middle District of Florida |
| 103 | Owens, Janice | Lansing, Michigan | 2005 Chevy Malibu | 1G1ZT54885F162371 | 1/16/09 | Lansing, MI | Western District of Michigan |
| 104 | Pearce, Kenneth | Mustang, Oklahoma | 2004 Saturn Ion | 1G8AZ52F54Z127640 | 4/1/05 | Ada, OK | Eastern District of Oklahoma |
| 105 | Peete, Getta | St. Louis, Missouri | 2006 Pontiac G6 | | 5/10/07 | St.Louis, MO | Eastern District of Missouri |
| 106 | Peoples, Earlesha | Cincinnati, Ohio | 2007 Chevy Cobalt | | 11/1/07 | Cincinnati, OH | Southern District of Ohio |
| 107 | Peterson, Ranae | Hortonville, Wisconsin | 2007 Pontiac G5 | 1G2ZG58N274151638 | 6/30/09 | Appleton, WI | Eastern District of Wisconsin |
| 108 | Polomsky, John | North Ridge Ville, Ohio | 2008 Chevy HHR | 3GNDA13D185607782 | 2/1/09 | North Ridgeville, OH | Northern District of Ohio |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|---|---|---|---|---|---|---|---|
| 109 | Powell, Sharon | Glenwood, Illinois | 2005 Chevy Cobalt | 1G1AL14F457616906 | 5/21/08 | Orland Park, IL | Northern District of Illinois |
| 110 | Pylar, Shirley | Clinton Township, Michigan | 2006 Chevy HHR | 3GNDA23D56S582078 | 8/4/08 | Clinton Township, MI | Eastern District of Michigan |
| 111 | Robbins, Justin | Fairborn, Ohio | 2008 Chevy HHR | 3GNDA23D28S541751 | 10/1/08 | Fairborn, OH | Southern District of Ohio |
| 112 | Rodgers, Dailene | Euclid, Ohio | 2005 Chevy Cobalt | 1G1AL14F957657788 | 6/6/07 | Euclid, OH | Northern District of Ohio |
| 113 | Rodriguez, Rafael | Vineland, New Jersey | 2003 Saturn Ion | 1G8AL52F33Z186749 | 4/24/09 | Vineland, NJ | District of New Jersey |
| 114 | Rooney, Richard | Kernville, California | 2008 Chevy HHR | | 10/4/08 | Worford Heights, CA | Eastern District of California |
| 115 | Roura, Samara | Mission, Texas | 2006 Chevy Cobalt | 1G1AK55F567840924 | 10/20/08 | Pharr, TX | Southern District of Texas |
| 116 | Santiago, Carla | Vineland, New Jersey | 2003 Saturn Ion | 1G8AL52F33Z186749 | 4/24/09 | Vineland, NJ | District of New Jersey |
| 117 | Scroggins, Deborah | Brooklyn, New York | 2007 Chevy Cobalt | 1G1AK15F477302645 | 12/12/07 | Kings, NY | Eastern District of New York |
| 118 | Scroggins, Deborah | Brooklyn, New York | 2007 Chevy Cobalt | 1G1AK15F477302645 | 3/27/09 | Brooklyn, NY | Eastern District of New York |
| 119 | Shinko, Patricia | Pittston, Pennsylvania | 2008 Chevy HHR | | 6/1/07 | Edwardsville, PA | Middle District of Pennsylvania |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|---|---|---|---|---|---|---|---|
| 120 | Shipman, Deidra | Chadbourn, North Carolina | 2008 Chevy HHR | 3GNDA23D785530633 | 10/26/07 | Whiteville, NC | Eastern District of North Carolina |
| 121 | Sims, Rodney | Waldoff, Maryland | 2008 Saturn Sky | | 9/21/08 | Washington, DC | District of Columbia |
| 122 | Slaughter, Kimberly | Jackson, Mississippi | 2006 Chevy Cobalt | 1G1AK55F177402712 | 1/17/09 | Jackson, MS | Southern District of Mississippi |
| 123 | Small, Clara | Columbus, Georgia | 2006 Chevy HHR | 3GNDA13D86S573909 | 2/13/07 | Columbus, GA | Middle District of Georgia |
| 124 | Small, Kenneth | Columbus, Ohio | 2005 Chevy Malibu | | 12/24/08 | Cleveland, OH | Northern District of Ohio |
| 125 | Smith, George E. | Westerville, Ohio | 2005 Chevy Cobalt | | 6/5/07 | Columbus, OH | Southern District of Ohio |
| 126 | Snyder, Anthony | Bloomsburg, Pennsylvania | 2003 Saturn Ion | 1G8AJ52F93Z136606 | 12/28/08 | Berwick, PA | Middle District of Pennsylvania |
| 127 | Solomon, Jerald | Celveland, Ohio | 2004 Chevy Malibu | | 9/1/06 | Cleveland, OH | Northern District of Ohio |
| 128 | Sorrells, Rickey | Lansing, Michigan | 2008 Chevy HHR | | 5/25/08 | Olivet, MI | Western District of Michigan |
| 129 | Spencer, Christina | Madison, Georgia | 2007 Chevy Cobalt | | 1/9/08 | Greensboro, GA | Middle District of Georgia |
| 130 | Stanley, Deborah | Clintwood, Virginia | 2007 Chevy Cobalt | 1G1AK55F177403858 | 10/25/07 | Big Branch, VA | Western District of Virginia |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|---|---|---|---|---|---|---|---|
| 131 | Stanley, Glenn | Clintwood, Virginia | 2007 Chevy Cobalt | 1G1AK55F177403858 | 10/25/07 | Big Branch, VA | Western District of Virginia |
| 132 | Starks, Sharm | Cleveland Heights, Ohio | 2007 Chevy Cobalt | | 1/27/07 | Cleveland, OH | Northern District of Ohio |
| 133 | Stevens, Cheryl | Brooksville, Florida | 2006 Saturn Ion | K250628384430 | 3/8/08 | San Antonio, FL | Middle District of Florida |
| 134 | Strauss, Alaina | Aurora, Colorado | 2003 Saturn Ion | | 10/1/03 | Lakewood, CO | District of Colorado |
| 135 | Surbeck, Kally | Cheyenne, Wyoming | 2007 Chevy HHR | 3GNDA23PX7S536435 | 6/21/09 | Lusk, WY | District of Wyoming |
| 136 | Taylor, Kenya | Birmingham, Alabama | 2006 Chevy Cobalt | 1G1AK55F967757626 | 1/1/08 | Tuscaloosa, AL | Northern District of Alabama |
| 137 | Thomas, Frank | Decatur, Alabama | 2006 Chevy Malibu | 1G1ZT548X4F223511 | 3/10/09 | Decatur, AL | Northern District of Alabama |
| 138 | Thomison, Teresa | Spring, Texas | 2007 Chevy Cobalt | 1G1AL15F177361892 | 1/12/09 | Houston, TX | Southern District of Texas |
| 139 | Torres, Aleni | Defiance, Ohio | 2005 Chevy Cobalt | 1G1AL52F157564483 | 6/29/06 | Napoleon, OH | Northern District of Ohio |
| 140 | Torres, Daniel | Defiance, Ohio | 2005 Chevy Cobalt | 1G1AL52F157564483 | 6/29/06 | Napoleon, OH | Northern District of Ohio |
| 141 | Vasquez, Hilda | Quail Valley, California | 2007 Saturn Ion | 1G8AJ55F47Z124610 | 5/21/09 | Wildomar, CA | Central District of California |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|-----|---------------------|-----------|----------|-------|---------------|---------------------|---------------------|
| 142 | Vega-Torres, Omaira | Defiance, Ohio | 2005 Chevy Cobalt | 1G1AL52F157564483 | 6/29/06 | Napoleon, OH | Northern District of Ohio |
| 143 | Venable, Houston | Halifax, Virginia | 2008 Chevy Cobalt | 1G1AL18F287199980 | 2/8/09 | Halifax, VA | Western District of Virginia |
| 144 | Washington, Myra | Flint, Michigan | 2006 Saturn Ion | 1G8AJ55FX6Z103923 | 6/3/09 | Lakeville, MI | Eastern District of Michigan |
| 145 | Watkins, Diana | Blytheville, Arkansas | 2003 Saturn Ion | | 3/12/03 | Satillo, MS | Northern District of Mississippi |
| 146 | Watkins, Lester | Blythevill, Arkansas | 2003 Saturn Ion | | 3/12/03 | Saltillo, MS | Northern District of Mississippi |
| 147 | Wellington, James | Mt. Olive, North Carolina | 2009 Chevy Malibu | 1G1ZH57BX9F112084 | 1/22/09 | Mount Olive, NC | Eastern District of North Carolina |
| 148 | Weston, Rhonda | Depew, New York | 2006 Saturn Ion | 1G8AJ55F46Z148579 | 1/31/06 | , | |
| 149 | White, Virginia | Indianapolis, Indiana | 2005 Chevy Cobalt | 1G1AK52F657633011 | 10/16/06 | Indianapolis, IN | Southern District of Indiana |
| 150 | Williams, Alexander | Houston, Texas | 2007 Chevy Cobalt | 1G1AL55F677324330 | 12/1/07 | Wolflake, IN | Northern District of Indiana |
| 151 | Williams, Terrell | Poplar Bluff, Missouri | 2006 Chevy Cobalt | 1G1Ak55F167627873 | 9/3/05 | Decatur, GA | Northern District of Georgia |
| 152 | Willis-Singh, Tanya | Darby, Pennsylvania | 2007 Pontiac Solstice | 1G2MB35B38Y107410 | 3/20/08 | Darby, PA | Eastern District of Pennsylvania |

# EXHIBIT A

| No. | Name of Plaintiff(s) | Residency | Car Type | VIN # | Accident Date | Accident City/ State | U.S. District Court |
|---|---|---|---|---|---|---|---|
| 153 | Wilson, Alexis | Montgomery, Alabama | 2008 Chevy Malibu | 1G1ZT58NX8G112964 | 7/6/08 | Pontiac, MI | Eastern District of Michigan |
| 154 | Wilson, Johnny | Taylorsville, Mississippi | 2008 Chevy HHR | 3GNDA23D18S523810 | 1/30/09 | Taylorsville, MS | Southern District of Mississippi |
| 155 | Wright, Jacqueline | Washington, District of Columbia | 2006 Chevy HHR | 3GNDA23P96S515588 | 5/23/08 | Washington, DC | District of Columbia |
| 156 | Wyche, Vinessa | Poughkeepsie, New York | 2004 Saturn Ion | 1G8AJ527X42113269 | 9/3/07 | Poughkeepsie, NY | Southern District of New York |