**Hearing Date and Time:  TO BE DETERMINED**
**Objection Deadline:  TO BE DETERMINED**
**Reply Deadline:  TO BE DETERMINED**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------x

**MOTION OF GENERAL MOTORS LLC PURSUANT**
**TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THIS COURT'S**
**JULY 5, 2009 SALE ORDER AND INJUNCTION AGAINST**
<u>**PLAINTIFFS IN PRE-CLOSING ACCIDENT LAWSUITS**</u>

23382356v1

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND STATEMENT OF FACTS ......................................................................... 7

    A.    Old GM Filed For Protection Under The Bankruptcy Code In June 2009 .......... 8

    B.    Objectors To The Sale Motion Argued That New GM Should Assume Additional Liabilities Of The Type Plaintiffs Now Assert In The Pre-Closing Accident Lawsuits ................................................................................... 9

    C.    The Court Issued Its Sale Order And Injunction, And The Product Liability Claimants And Others Appealed Because They Objected To The Fact That New GM Was Not Assuming *Their* Liabilities For Any Claims They Might Have Then Or In The Future .............................................. 10

    D.    Upon Approval Of The Sale Agreement And Issuance Of The Sale Order And Injunction, New GM Assumed Certain Narrowly Defined Liabilities, But The Bulk Of Old GM's Liabilities Remained With Old GM ...................... 13

    E.    The Court's Sale Order And Injunction Expressly Protects New GM From Litigation Over Retained Liabilities, And The Injunction Expressly Bars Plaintiffs From Initiating And Pursuing Litigation Against New GM. ............... 15

    F.    New GM Has Recalled Certain Vehicles And In Response, Plaintiffs Have Filed The Pre-Closing Accident Lawsuits ................................................. 17

    G.    The Pre-Closing Accident Lawsuits ................................................................. 19

    H.    New GM Has Adopted the Feinberg Protocol .................................................... 21

NEW GM'S ARGUMENT TO ENFORCE THE COURT'S SALE ORDER AND INJUNCTION AGAINST THE PLAINTIFFS IN THE PRE-CLOSING ACCIDENT LAWSUITS ................................................................................................. 23

    A.    This Court's Sale Order And Injunction Should Be Enforced .......................... 23

    B.    New GM Is Not Liable For Damages Arising From Accidents That Took Place Prior to the Closing Of The 363 Sale ................................................. 26

    C.    New GM Cannot Be Held Liable For Old GM's Alleged Conduct, Either Directly Or As Old GM's Alleged "Successor" ...................................... 28

    D.    Plaintiffs' Warranty Assertions Do Not Enable Them To Circumvent The Court's Sale Order And Injunction .............................................................. 29

CONCLUSION ..................................................................................................................... 30

NOTICE AND NO PRIOR REQUESTS ............................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ayers v. Gen. Motors*,
   234 F.3d 514, 522-24 (11th Cir. 2000) ................................................................... 14

*Back v. LTV Corp. (In re Chateaugay Corp.)*,
   213 B.R. 633, 640 (S.D.N.Y. 1997)......................................................................... 24

*Burton v. Chrysler Group, LLC (In re Old Carco LLC)*,
   492 B.R. 392 (Bankr. S.D.N.Y. 2013)..................................................................... 29

*Callan v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
   428 B.R. 43 (S.D.N.Y. 2010)............................................................................. 12, 13

*Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*,
   Adv. Proc. No. 09-00509 (Bankr. S.D.N.Y.) .................................................... 24, 25

*Celotex Corp. v. Edward*,
   514 U.S. 300 (1995).......................................................................................... 6, 7, 25

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
   445 U.S. 375 (1980)................................................................................................. 25

*Handy v. Gen. Motors Corp.*,
   518 F.2d 786 (9th Cir 1975) .................................................................................... 14

*Handy v. Gen. Motors Corp.*,
   518 F.2d 786, 787-88 (9th Cir 1975). ..................................................................... 14

*In re Cont'l Airlines, Inc.*,
   236 B.R. 318 (Bankr. D. Del. 1999) ........................................................................ 24

*In re Gen. Motors Corp.*,
   407 B.R. 463 (Bankr. S.D.N.Y. 2009) ........................................................... 5, 10, 11

*In re Gruntz*,
   202 F.3d 1074 (9th Cir. 2000) ................................................................................. 26

*In re McGhan*,
   288 F.3d 1172 (9th Cir. 2002) ................................................................................. 26

*In re Motors Liquidation Co.*, No. 09-50026 (REG),
   2011 WL 6119664 (Bankr. S.D.N.Y. 2011)............................................................ 24

*In re Wilshire Courtyard*,
   729 F.3d 1279, 1290 (9th Cir. 2013) ....................................................................... 23

*Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
   430 B.R. 65 (S.D.N.Y. 2010).................................................................................... 13

*Pratt v. Ventas, Inc.*,
   365 F.3d 514 (6th Cir. 2004) ................................................................................... 25

*Spartan Mills v. Bank of Am. Ill.*,
   112 F.3d 1251 (4th Cir. 1997).................................................................................. 26

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137, 151 (2009).......................................................................................... 23

*Trusky v. Gen. Motors LLC* (In re Motors Liquidation Co.),
    Adv. Proc. No. 09–09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) ....... 14, 25, 28

*U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.),*
    68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ............................................................................. 24

## STATUTES

11 U.S.C. § 105(a) ....................................................................................................................... 24

11 U.S.C. § 363 ............................................................................................................................ 11

11 U.S.C. § 363(m) ...................................................................................................................... 11

49 C.F.R. § 554.1 ......................................................................................................................... 18

49 U.S.C. § 30119 ........................................................................................................................ 18

## INTRODUCTION

In June 2009, General Motors LLC ("**New GM**") was a newly-formed entity, created by the U.S. Treasury, to purchase substantially all of the assets of Motors Liquidation Company, formerly known as General Motors Corporation ("**Old GM**").  Through a bankruptcy-approved sale process, New GM acquired Old GM's assets, free and clear of all liens, claims, liabilities and encumbrances of Old GM, other than a limited and defined set of liabilities that New GM expressly assumed under a June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("**Sale Agreement**").[1]  The Bankruptcy Court approved the sale from Old GM to New GM ("**363 Sale**") and the terms of the Sale Agreement in its "**Sale Order and Injunction**," dated July 5, 2009.[2]

This Motion does not address the approximately 90 lawsuits ("**Ignition Switch Actions**") against New GM that seek economic losses (*i.e.*, where there was no post-363 Sale accident causing personal injury, loss of life, or property damage) against New GM relating to allegedly defective ignition switches in certain vehicle models.  New GM previously filed a motion with this Court on April 21, 2014 ("**Ignition Switch Motion to Enforce**") seeking relief with respect to the Ignition Switch Actions, the Court held Scheduling Conferences on May 2, 2014, and July 2, 2014, with respect to that Motion, and the initial phase of that contested

---

[1]    A copy of the Sale Agreement is annexed hereto as Exhibit "A."

[2]    The full title of the Sale Order and Injunction is "Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief," entered by the Court on July 5, 2009.  A copy of the Sale Order and Injunction is annexed hereto as Exhibit "B."

proceeding is being governed by Scheduling Orders entered by the Court on May 16, 2014, and July 11, 2014 (collectively, the "**Scheduling Orders**")[3]

This Motion also does not concern any litigation involving an accident that occurred *after* the closing of the 363 Sale that caused personal injury, loss of life, or property damage; New GM assumed such liabilities pursuant to the Sale Agreement and is addressing issues respecting those claims in appropriate non-bankruptcy forums.

Instead, this Motion involves *only* litigation in which Plaintiffs are asserting claims against New GM that emanate from an accident that occurred *prior to* the closing of the 363 Sale. Such claims do not involve New GM in any way, were never assumed by New GM as part of the Sale Agreement, and are barred by the Court's Sale Order and Injunction.

The subject matter of this Motion was not included in the Ignition Switch Motion to Enforce because, at the time that Motion was filed, New GM already had announced that it had retained Kenneth Feinberg to develop and design a protocol ("**Feinberg Protocol**")[4] for the submission, evaluation, and settlement of death or physical injury claims resulting from accidents allegedly caused by defective ignition switches in certain vehicles. New GM delayed filing this Motion so that the Feinberg Protocol could be developed, formally announced, and implemented. By filing this Motion in conjunction with the launch of the Feinberg Protocol, GM has provided eligible Plaintiffs with an alternative (*i.e.*, a source of recovery under the Feinberg Protocol) to the enforcement of the Sale Order and Injunction against them. Participation in the

_____

[3]    As New GM did when it filed the Ignition Switch Motion to Enforce, New GM will seek a conference before the Court upon filing this Motion to Enforce to discuss procedural issues raised by the relief sought herein, including the possibility of consolidating this Motion and the Monetary Relief Motion to Enforce (as herein defined and discussed *infra*) with the Ignition Switch Motion to Enforce.

[4]    A copy of the Feinberg Protocol is attached hereto as Exhibit "C". It can also be accessed at: http://www.gmignitioncompensation.com/docs/FINAL%20PROTOCOL%20June%2030%20%202014.pdf. The Feinberg Protocol encompasses claims resulting from accidents that occurred both before and after the closing of the 363 Sale that allegedly were caused by defective ignition switches in certain vehicles.

Feinberg Protocol is voluntary, and if eligible claimants decline to participate, New GM seeks by this Motion to enforce the Sale Order and Injunction against them.

The timing of the filing of this Motion is also dictated by the Scheduling Orders which set forth specific deadlines for the development of agreed upon factual stipulations, and the briefing of Threshold Issues (as defined in the Scheduling Orders). Generally, the Plaintiffs' counsel related to this Motion are already involved in the Ignition Switch Motion to Enforce.[5] However, to the extent there is not complete overlap, and to ensure that all parties in interest have an opportunity to address common issues before the Court at the same time, this Motion is being filed now.

It is also for this reason that, simultaneously with the filing of this Motion, New GM is filing a motion ("**Monetary Relief Motion to Enforce**") to enforce the Sale Order and Injunction with respect to other litigations brought against New GM for Retained Liabilities (as defined in the Sale Order and Injunction) of Old GM, that are unrelated to the alleged ignition switch issue.  Since announcing the Ignition Switch recalls, New GM has announced other recalls unrelated to the alleged ignition switch defect with respect to vehicles manufactured and sold by Old GM.  Notwithstanding the Sale Order and Injunction, New GM has been sued in other courts for such Retained Liabilities.  Again, generally, counsel in those litigations are already involved in the Ignition Switch Motion to Enforce.  But, to the extent there is not complete overlap, and to ensure that all parties in interest have an opportunity to address

---

[5]    It is significant and unexplainable that, in connection with the Ignition Switch Actions, Plaintiffs' attorneys entered into Voluntary Stay Stipulations recognizing the Court's exclusive jurisdiction to decide issues relating to the Sale Order and Injunction. Yet, the same counsel continue to file law suits against New GM in other courts for Retained Liabilities as if the Sale Order and Injunction does not exist (thus necessitating the filing of this Motion and the Monetary Relief Motion to Enforce).

common issues before the Court at the same time, the Monetary Relief Switch Motion to Enforce is also being filed now.

It must be emphasized that the Feinberg Protocol is strictly a voluntary action by New GM which addresses specific claims which New GM never assumed. New GM has nevertheless made this commitment to address a unique series of events involving the vehicles in the Cobalt/Ion Recall.

However, to be clear, the Feinberg Protocol does not modify New GM's protections under the Sale Agreement and the Sale Order and Injunction. Under the Sale Agreement approved by the Court, New GM assumed only three expressly defined categories of liabilities for vehicles sold by Old GM: (a) *post-363 Sale* accidents involving Old GM vehicles causing personal injury, loss of life or property damage; (b) repairs provided for under the "Glove Box Warranty"—a specific written warranty, of limited duration, that only covers repairs and replacement of parts; and (c) Lemon Law claims (as defined in the Sale Agreement) essentially tied to the failure to honor the Glove Box Warranty. All other liabilities relating to vehicles sold by Old GM were legacy liabilities that were retained by Old GM. *See* Sale Agreement § 2.3(b).

New GM's assumption of just these limited categories of liabilities was based on the independent judgment of U.S. Treasury officials as to which liabilities, if paid, would best position New GM for a successful business turnaround. It was an absolute condition of New GM's purchase offer that New GM not take on all of Old GM's liabilities. That was the bargain struck by New GM and Old GM, and approved by the Court as being in the best interests of Old GM's bankruptcy estate and the public interest.

Objections to the 363 Sale were made by, among others, prepetition product liability claimants who essentially wanted New GM to assume their liabilities. But the Court found that, if not for New GM's purchase offer, which provided for a meaningful distribution to prepetition

unsecured creditors, Old GM would have liquidated and those unsecured creditors—like the Plaintiffs that are the subject of this Motion—would have received nothing. Indeed, had the objectors been successful in opposing the Sale Order and Injunction, it would not only have been a pyrrhic victory for them, but a disaster for many thousands of others who relied on the continued viability of the assets being sold to New GM. Judge Lewis Kaplan aptly summarized the point:

> No sentient American is unaware of the travails of the automobile industry in general and of General Motors Corporation ([Old] GM) in particular. As the Bankruptcy Court found, [Old] GM will be forced to liquidate — with appalling consequences for its creditors, its employees, and our nation — unless the proposed sale of its core assets to a newly constituted purchaser is swiftly consummated.

*In re Gen. Motors Corp.*, No. M 47 (LAK), 2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009).

One of the groups that most vigorously objected to Old GM's asset sale motion was a coalition representing Old GM vehicle owners. That group included State Attorneys General, individual accident victims, the Center for Auto Safety, Consumer Action and other consumer advocacy groups. The gist of their objections was: as long as New GM was assuming any of Old GM liabilities, then it should assume *all* vehicle owner liabilities as well. In particular, the objectors argued, unsuccessfully, that New GM should assume pre-363 Sale accident claims, based upon defects in Old GM vehicles and parts, in addition to the limited categories of claims that New GM already agreed to assume.

A critical element of protecting the integrity of the bankruptcy sale process was to ensure that New GM, as the good faith purchaser for substantial value, received the benefit of its Court-approved bargain. This meant that New GM would be insulated from lawsuits by Old GM's creditors based on Old GM liabilities that it did not assume. The Sale Agreement and the Sale Order and Injunction were expressly intended to provide such protections. The Order thus enjoined such proceedings against New GM, and expressly reserved exclusive jurisdiction to this

Court to ensure that the sale transaction it approved would not be undermined or collaterally attacked.

As has been widely reported (and as discussed in the Ignition Switch Motion to Enforce), beginning in February, 2014, New GM sent notices to NHTSA concerning problems with ignition switches and ignition switch repairs in certain vehicles and parts manufactured by Old GM. New GM has also recently issued recalls concerning other defects in other Old GM vehicles. Shortly after New GM issued the recall notices, Plaintiffs sought to use the recalls as a basis to commence actions against New GM for damages arising from accidents that occurred prior to the closing of the 363 Sale—claims expressly retained by Old GM for which New GM has no liability.

Thus, the issue to be addressed in this Motion is:

> **May New GM be sued, in clear violation of this Court's Sale Order and Injunction, for damages relating to vehicles sold by Old GM that were involved in accidents that occurred *prior* to the closing of the 363 Sale?**

A review of the Sale Agreement and previous decisions of this Court provide the unambiguous answer: Under the Sale Order and Injunction, all such claims were retained by Old GM, and not assumed by New GM. Plaintiffs' tactical decision to not appear in this Court to challenge the Sale Order and Injunction is telling: they know that this Court previously has enforced the Sale Order and Injunction, and they are seeking to evade this Court's injunction that bars them from suing New GM on account of pre-363 Sale accidents involving Old GM vehicles and parts.

Simply put, Plaintiffs cannot ignore the Court's Sale Order and Injunction, and proceed in other courts as though the Sale Order and Injunction never existed. The law is settled that persons subject to a Court's injunction simply do not have that option. As the United States Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey

6

that decree until it is modified or reversed, even if they have proper grounds to object to the order.'" 514 U.S. 300, 306 (1995). Plaintiffs and their counsel are bound by this rule of law and were required to seek and obtain relief from this Court before commencing any lawsuits against New GM. They did not.

Accordingly, based on this Court's prior proceedings and Orders, New GM brings this Motion to enforce the Sale Order and Injunction by:

(a)   directing the Plaintiffs ("**Plaintiffs**") in  lawsuits ("**Pre-Closing Accident Lawsuits**")[6] commenced against New GM that concern damages arising from accidents that occurred prior to the closing of the 363 Sale, to cease and desist from further prosecuting against New GM, or otherwise pursuing against New GM, the claims asserted in the Pre-Closing Accident Lawsuits, and

(b)   directing Plaintiffs to dismiss the Pre-Closing Accident Lawsuits with prejudice immediately.

## BACKGROUND STATEMENT OF FACTS

1.   In June 2009, in the midst of a national financial crisis, Old GM was insolvent with no alternative other than to seek bankruptcy protection to sell its assets. New GM, a newly

---

[6]   The Pre-Closing Accident Lawsuits, at this time, include: (i) *Phillips, et al. v. General Motors Corporation, et al.*, pending in the United States District Court for the Southern District of Texas ("**Phillips Action**"); (ii) *Boyd, et al. v. General Motors LLC*, pending in the United States District Court for the Eastern District of Missouri ("**Boyd Action**"); (iii) *Vest v. General Motors LLC, et al.*, pending in the Circuit Court of Mercer County, West Virginia ("**Vest Action**"); and (iv) *Abney et al. v. General Motors LLC*, pending in the Southern District of New York ("**Abney Action**").   A copy of the complaint or petition in the foregoing Actions are annexed hereto as Exhibits "D" through "G" respectively.

Certain other lawsuits were previously commenced against New GM that related to accidents that occurred prior to the closing of the 363 Sale.   The Plaintiffs have voluntarily dismissed those lawsuits, without prejudice, pending their review of the relief available to them under the Feinberg Protocol.   These other lawsuits are not referenced herein because of such dismissal.

New GM reserves the right to supplement the list of Pre-Closing Accident Lawsuits set forth above in the event additional cases are brought against New GM that implicate similar provisions of the Sale Order and Injunction, including without limitation those lawsuits which have previously been dismissed without prejudice if they are re-filed in any court, and the Purported Edwards Plaintiffs discussed *infra*.

created, government-sponsored entity, was the only viable purchaser, but it would not purchase Old GM's assets unless the sale was free and clear of all liens and claims (except for the claims it expressly agreed to assume).  After a contested hearing, the Court approved this sale transaction, which set the framework for New GM to begin its business operations.  During the last five years, New GM has operated its business based on the fundamental structure of the Sale Agreement and Sale Order and Injunction — that its new business enterprise would not be burdened with liabilities retained by Old GM.  The Pre-Closing Accident Lawsuits represent an impermissible collateral attack on this Court's Sale Order and Injunction.  The Plaintiffs may not rewrite, years later, the Court-approved sale to a good faith purchaser, which was affirmed on appeal, and has been the predicate for literally millions of transactions between New GM and third parties.

## A.      Old GM Filed For Protection Under
## The Bankruptcy Code In June 2009

2.      On June 1, 2009 ("**Petition Date**"), Old GM and certain of its affiliates filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  Old GM simultaneously filed a motion seeking approval of the original version of the Sale Agreement ("**Original Sale Agreement**"), pursuant to which substantially all of Old GM's assets were to be sold to New GM ("**Sale Motion**").  The Original Sale Agreement (like the Sale Agreement) provided that New GM would assume only certain specifically identified liabilities (*i.e.*, the "**Assumed Liabilities**"); all other liabilities would be retained by Old GM (*i.e.*, the "**Retained Liabilities**").

**B.      Objectors To The Sale Motion Argued That New GM
           Should Assume Additional Liabilities Of The Type
           Plaintiffs Now Assert In The Pre-Closing Accident Lawsuits**

3.      Many objectors, including various State Attorneys General, certain individual accident victims ("**Product Liability Claimants**"), the Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizens (collectively, the "**Consumer Organizations**"), the Ad Hoc Committee of Consumer Victims, and the Official Committee of Unsecured Creditors challenged various provisions in the Original Sale Agreement relating to actual and potential tort and contract claims held by Old GM vehicle owners. These objectors argued that the Court should not approve the Original Sale Agreement unless New GM assumed additional Old GM liabilities, including those now being asserted by Plaintiffs in the Pre-Closing Accident Lawsuits.

4.      The Original Sale Agreement was amended so that New GM would assume liabilities for personal injury, loss of life, and property damage claims for ***accidents taking place after the closing of the 363 Sale*** that concern vehicles manufactured and sold by Old GM. The Original Sale Agreement provided that New GM would only assume such liabilities for vehicles ***delivered*** to consumers after the closing of the 363 Sale. This change was negotiated with the State Attorneys General after the Petition Date, who sought the inclusion of additional liabilities as Assumed Liabilities. The U.S. Treasury agreed to make this change (and to assume Lemon Law claims), but would not go further. *See* Hr'g Tr. 194:13 – 18, July 2, 2009 (when discussing improvements to the Sale Agreement, counsel for the State Attorneys General referred to a change to "the assumption of the future product liability claims. Obviously, we -- you know, in a perfect world, we would not be distinguishing between those two categories, but certainly that's better than none of them. And it certainly goes a ways to addressing issues that were raised by the state Attorney Generals.").

9

5.      However, the Product Liability Claimants and the Consumer Organizations were not satisfied and continued to press their objections, arguing that New GM should assume broader claims relating to pre-363 Sale accidents, as well as successor liability claims. Representatives from the U.S. Treasury declined to make further changes. *See* Hr'g Tr. 151:1 – 10, July 1, 2009.   The Court found that New GM would not have consummated the "[t]ransaction (i) if the sale . . . was not free and clear of all liens, claims, encumbrances, and other interests . . . , including rights or claims based on any successor or transferee liability or (ii) if [New GM] would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability (collectively, the 'Retained Liabilities'), other than, in each case, the Assumed Liabilities." *See* Sale Order and Injunction ¶ DD.  The Court ultimately overruled the objectors on these issues. *See id.*, ¶ 2.

**C.      The Court Issued Its Sale Order And Injunction, And The Product Liability Claimants And Others Appealed Because They Objected To The Fact That New GM Was Not Assuming *Their* Liabilities For Any Claims They Might Have Then Or In The Future**

6.      The Court held a three-day hearing on the Sale Motion, then issued its Sale Decision on July 5, 2009, finding that the only alternative to the immediate sale to New GM pursuant to the Sale Agreement was a liquidation of Old GM, in which case unsecured creditors, such as the Plaintiffs now suing New GM, would receive nothing. *See In re Gen. Motors Corp.*, 407 B.R. 463, 474 (Bankr. S.D.N.Y. 2009).  The Court analyzed the law of successor liability at length (*see id.* at 499-506), and ruled that: "[T]he law in this Circuit and District is clear; the Court will permit [Old] GM's assets to pass to the purchaser [New GM] *free and clear of successor liability claims*, and in that connection, will issue the requested findings and associated injunction." *Id*. at 505-06 (emphasis added).

10

7.      In approving the 363 Sale, the Court specifically found that New GM was a "good faith purchaser, for sale-approval purposes, and also for the purpose of the protections section 363(m) provides." *Id.* at 494 (citing 11 U.S.C. § 363(m)).  The Sale Order and Injunction expressly enjoined parties (like Plaintiffs in the Pre-Closing Accident Lawsuits) from proceeding against New GM with respect to Retained Liabilities at any time in the future.  *See* Sale Order and Injunction, ¶¶ 8, 47.  This Court well understood that accident victims—like Plaintiffs in the Pre-Closing Accident Lawsuits—would recover only modest amounts on their claims from Old GM if they could not look to New GM as an additional source of recovery.  *See Gen. Motors*, 407 B.R. at 505.

8.      But the Court also recognized that if a Section 363 purchaser like New GM did not obtain protection against claims against Old GM, like successor liability claims, it would pay less for the assets because of the risks of known and unknown liabilities.  *Id.* at 500.  The Court further recognized that, under the law, a Section 363 purchaser could choose which liabilities of the debtors to assume, and not assume (*id.* at 496), and that the U.S. Treasury, on New GM's behalf, could rightfully condition its purchase offer on its refusal to assume the liabilities now being asserted by Plaintiffs in the Pre-Closing Accident Lawsuits.

9.      Old GM, the proponent of the asset sale transaction, presented evidence establishing that if the Sale Agreement was not approved, Old GM would have liquidated.  If it did, objecting creditors seeking incremental recoveries would have ended up with nothing, given that the book value of Old GM's global assets was $82 billion, the book value of its global liabilities was $172 billion (s*ee Gen. Motors*, 407 B.R. at 475), and that, in a liquidation, the value of Old GM's assets was probably less than 10% of stated book value (*id.*).

10.      Objectors also presented evidence that the book value of certain contingent liabilities was about $934 million.  *Id.* at 483.  As discussed at the trial, these contingent

liabilities concerned product liability claims, including both "reported cases" and "incurred but not reported cases." Hr'g Tr. 161:23 – 162:8, June 30, 2009. The Court noted in its Sale Decision that contingent liabilities were "difficult to quantify." *Gen. Motors*, 407 B.R. at 483. And, if the book value of all contingent liabilities was understated, that simply meant Old GM was even more insolvent—an even greater reason for New GM to decline to assume the liabilities retained by GM.

11.     Whether Old GM presented evidence regarding a particular claim or specific defect was not germane to this Court's approval of the Sale Order and Injunction. Indeed, as the Court found in the Sale Order and Injunction, the proper analysis for approving the asset sale is whether Old GM obtained the "highest or best" available offer for the Purchased Assets. *See* Sale Order and Injunction, ¶ G. In contrast, the quantification of liabilities left behind with Old GM (*i.e.*, the Retained Liabilities) was only relevant to a different phase of the bankruptcy case (the claims process) which did not involve New GM.

12.     New GM's refusal to assume a substantial portion of Old GM's liabilities was fundamental to the sale transaction and was widely disclosed by Old GM to all interested parties. Indeed, the Product Liability Claimants objected to and appealed the Sale Order and Injunction to specifically challenge this aspect of the 363 Sale. *See Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010). On appeal, although the District Court focused on the appellants' failure to seek a stay of the 363 Sale and on equitable mootness principles, it also found that this Court had jurisdiction to enjoin successor liability claims. *See id.* at 59-60. In its decision, the District Court further noted that the Sale Agreement and Sale Order and Injunction "made clear that [New GM] would not pursue the 363 Transaction unless the assets were sold free and clear of those liabilities [New GM] had not agreed to assume,

including the Existing Products Claims of Appellants . . . ."  *Id.* at 48 (citing to Sale Order and Injunction, ¶ DD).

13.    The Sale Order and Injunction was affirmed on appeal by two different District Court Judges.  *Id.; Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65 (S.D.N.Y. 2010).  There were no further appeals.[7]

**D.    Upon Approval Of The Sale Agreement And Issuance Of The Sale Order And Injunction, New GM Assumed Certain Narrowly Defined Liabilities, But The Bulk Of Old GM's Liabilities Remained With Old GM**

14.    Under the Sale Agreement and the Sale Order and Injunction, New GM only became responsible for "Assumed Liabilities."  *See* Sale Agreement § 2.3(a).  These included liability claims for ***post-363 Sale accidents***, as well as the Glove Box Warranty, a warranty of limited duration (typically three years or 36,000 miles, whichever comes first) provided at the time of sale for repairs and replacement of parts. New GM assumed no other Old GM warranty obligations, express or implied:

> The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty."  ***The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials.***

Sale Order and Injunction, ¶ 56 (emphasis added).

_____

[7]    The Product Liability Claimants appealed the District Court's decision, but pursuant to a stipulation so-ordered by the Second Circuit Court of Appeals on September 23, 2010, the appeal was withdrawn.  The *Parker* decision was also appealed, but that appeal was dismissed as equitably moot because the appellant had not obtained a stay pending appeal.  *See Parker v. Motors Liquidation Company*, Case No. 10-4882-bk (2d Cir. July 28, 2011).

15.    Independent of the Assumed Liabilities under the Sale Agreement, New GM covenanted to perform Old GM's recall responsibilities under federal law.  *See* Sale Agreement ¶ 6.15(a).  But, with respect to pre-363 Sale accidents, there was nothing for New GM to recall.[8] Thus, New GM's recall covenant does not create a basis for Plaintiffs to sue New GM for damages relating to a vehicle sold by Old GM that was involved in an accident prior to the closing of the 363 Sale—events that predated New GM's very existence.

16.    All liabilities of Old GM that were not expressly defined as Assumed Liabilities constituted "Retained Liabilities" that remained obligations of Old GM.   Sale Agreement §§ 2.3(a), 2.3(b).  Retained Liabilities include the claims asserted by Plaintiffs in the Pre-Closing Accident Lawsuits such as:

    i.     "[A]ll Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date." Sale Agreement, § 2.3(b)(ix).

    ii.     [L]iabilities "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers."  Sale Agreement § 2.3(b)(xvi), *see also id.* ¶ 6.15(a). This would include liability based on implied warranty and state consumer statutes (except Lemon Law claims).

    iii.     All liabilities (other than Assumed Liabilities) of Old GM based upon contract, tort or any other basis. Sale Agreement § 2.3(b)(xi). This covers claims based on, among others, negligence, conspiracy, concealment and fraud.

    iv.     All liabilities relating to vehicles sold by Old GM with a design defect.[9]

---

[8]    In any event, there are no third-party beneficiary rights granted under the Sale Agreement with respect to the covenant to comply with NHTSA (*see* Sale Agreement § 9.11), and there is no private right of action for third parties to sue for a breach of a recall obligation.  *See Ayers v. Gen. Motors*, 234 F.3d 514, 522-24 (11th Cir. 2000); *Handy v. Gen. Motors Corp.*, 518 F.2d 786, 787-88 (9th Cir 1975).  Thus, New GM's recall covenant does not create any basis for the Plaintiffs to sue New GM.

[9]    *See* Sale Order and Injunction, ¶ AA; *see also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013).

v.       All Liabilities based on the conduct of Old GM including any allegation, statement or writing attributable to Old GM. This covers fraudulent concealment type claims. *See* Sale Order and Injunction, ¶ 56.

vi.     All claims based on the doctrine of "successor liability." *See, e.g.,* Sale Order and Injunction, ¶ 46.

**E.    The Court's Sale Order And Injunction Expressly Protects
New GM From Litigation Over Retained Liabilities,
And The Injunction Expressly Bars Plaintiffs From
<u>Initiating And Pursuing Litigation Against New GM.</u>**

17.    On July 10, 2009, the parties consummated the Sale. New GM acquired substantially all of the assets of Old GM free and clear of all liens, claims and encumbrances, except for the narrowly defined Assumed Liabilities. In particular, paragraphs 46, 9, and 8 of the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (except for Assumed Liabilities) relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009:

> Except for the Assumed Liabilities expressly set forth in the [Sale Agreement] . . . [New GM] . . . shall [not] have any liability for any claim that arose prior to the Closing Date, ***relates to the production of vehicles prior to the Closing Date***, or otherwise is assertable against [Old GM] . . . prior to the Closing Date . . . . Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity . . . and products . . . liability, ***whether known or unknown*** as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction, ¶ 46 (emphasis added); *see also id.*, ¶ 9(a) ("(i) no claims other than Assumed Liabilities, will be assertable against the Purchaser; (ii) the Purchased Assets [are] transferred to the Purchaser free and clear of all claims (other than Permitted Encumbrances) . . ."); and *id.*, ¶ 8 ("All persons and entities . . . holding claims against [Old GM] or the Purchased Assets arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, ***the operation of the Purchased Assets*** prior to the Closing . . .

are forever barred, estopped, and permanently enjoined . . . from asserting [such claims] against [New GM]. . . .") (emphasis added).

18.    Anticipating the possibility that New GM might be wrongfully sued for Retained Liabilities, the Sale Order and Injunction permanently enjoins claimants from asserting claims of the type made in the Pre-Closing Accident Lawsuits:

> [A]ll persons and entities . . . holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, *matured or unmatured*, *contingent or noncontingent*, senior or subordinated), *arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing . . . are forever barred, estopped, and permanently enjoined . . . from asserting against [New GM] . . . such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability*.

Sale Order and Injunction, ¶ 8 (emphasis added); *see also id.*, ¶ 47.

19.    The Court specifically found that the provisions of the Sale Order and Injunction, as well as the Sale Agreement, were binding on all creditors, *known and unknown* alike.  *See* Sale Order and Injunction, ¶ 6 ("This [Sale] Order and [Sale Agreement] "shall be binding in all respects upon the Debtors, their affiliates, *all known and unknown creditors* of, and holders of equity security interests in, any Debtor, including any holders of liens, claims, encumbrances, or other interests, including rights or claims based on any successor or transferee liability . . . ." (emphasis added)); *see also id.*, ¶ 46.

20.    Because the Plaintiffs in the *Phillips* Action commenced a lawsuit against Old GM prior to the Petition Date, they were known creditors of Old GM and received notice of the Sale Motion and the relief requested therein.[10]  *See* Certificate of Service, filed on June 15, 2009

_____

[10]    The Plaintiffs in the *Phillips* Action also filed four proofs of claim in Old GM's bankruptcy case and, after mediation, entered into a settlement with Old GM resolving those claims.  Under the settlement, the Court

[Dkt. No. 973].  Upon information and belief, the Plaintiffs in the other Pre-Closing Accident Lawsuit had not filed a lawsuit against Old GM prior to the Petition Date, they were not listed as creditors on Old GM's books and records, and therefore they received notice of the 363 Sale by publication.

21.    In short, except for Assumed Liabilities, claims based on Old GM vehicles remained the legal responsibility of Old GM, and are not the responsibility of New GM.

22.    Finally, paragraph 71 of the Sale Order and Injunction makes this Court the gatekeeper to enforce its own Order. It provides for this Court's **exclusive jurisdiction** over matters and claims regarding the Sale, including jurisdiction to protect New GM against any Retained Liabilities of Old GM:

> **This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement],** all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, . . ., in all respects, including, but not limited to, **retaining jurisdiction to . . . (c) resolve any disputes arising under or related to the [Sale Agreement],** except as otherwise provided therein, (d) **interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities** or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets . . . . (Emphasis added.)

## F.    New GM Has Recalled Certain Vehicles And In Response, Plaintiffs Have Filed The Pre-Closing Accident Lawsuits

23.    New GM informed NHTSA of a recall on February 7, 2014, of 2005-2007 model year (MY) Chevrolet Cobalt and 2007 Pontiac G5 vehicles.  GM expanded this ignition switch recall on February 25, 2014 to include 2006-2007 MY Chevrolet HHR and Pontiac Solstice, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles, and on March 27, 2014 to include certain Ignition & Start Switch service parts and Ignition & Start Switch Housing Kits that may

retained exclusive jurisdiction with respect to any claims thereunder.  As part of their current lawsuit, the Plaintiffs in the *Phillips* Action are seeking to undo the settlement with Old GM.

have been installed during repairs in some 2008-2011 MY Chevrolet HHR, 2008-2010 MY Pontiac Solstice, 2008-2010 MY Pontiac G5, and 2008-2010 MY Saturn Sky vehicles (collectively referred to as the "**Cobalt/Ion Recall**").  This recall pertains to a problem with ignition switches in the above identified vehicles and parts manufactured by Old GM.  Pursuant to the Cobalt/Ion Recall, New GM is to replace the ignition switches (at no cost to the owners).  New GM sent recall notices approved by NHTSA to all vehicle owners subject to this recall.

24.    The Cobalt/Ion Recall is underway and New GM already has started to replace the ignition switches.  NHTSA, as the government agency responsible for overseeing the technical and highly-specialized domain of automotive safety defects and recalls, administers the rules concerning the content, timing, and means of delivering a recall notice to affected motorists and dealers.  *See* 49 C.F.R. § 554.1;  49 U.S.C. § 30119.  Other governmental agencies and Congress are also examining various issues relating to the Cobalt/Ion Recall.

25.    Three of the four Pre-Closing Accident Lawsuits (as well as many of the Purported Edwards Plaintiffs (as defined below)) that are the subject of this Motion concerns vehicles that are the subject of the Cobalt/Ion Recall, and the Feinberg Protocol.

26.    In addition to the Cobalt/Ion Recall, New GM has also instituted recalls for other model vehicles that concern different issues.  The vehicle at issue in the *Phillips* Action is subject to a different ignition switch recall that is not eligible for the Feinberg Protocol.  Moreover, while the Plaintiffs in the *Phillips* Action assert that the subject 2004 Chevrolet Malibu Classic was subject to recalls related to electric power steering and increased resistance in the Body Control Module, these recalls are inapplicable to the subject model vehicle.  Even so, given the date of the accident in question, the Phillips' vehicle has not been in use since before the 363 Sale closed.

27.    After the Cobalt/Ion Recall was announced, the Plaintiffs filed the Pre-Closing Accident Lawsuits against New GM, each of which has its genesis in accidents that occurred prior to the closing of the 363 Sale.  It is expected that the number of Pre-Closing Accident Lawsuits will increase.

28.    The Pre-Closing Accident Lawsuits assert claims that are barred by the Sale Agreement and the Sale Order and Injunction.  Each of the Pre-Closing Accident Lawsuits are premised on an accident involving a vehicle manufactured and sold by Old GM that occurred prior to the closing of the 363 Sale.  In their complaints, the Plaintiffs conflate Old GM and New GM, but the Sale Order and Injunction is clear that New GM is a separate entity from Old GM (*see* Sale Order and Injunction, ¶ R), and is not liable for successor liability claims (*see, e.g.*, *id.*, ¶¶ 46, 47).  Claims based on that factual predicate are Retained Liabilities and may not be brought against New GM.

29.    This Court is uniquely situated to enforce its own Order.  By this Motion, New GM requests that the Court enforce the Sale Order and Injunction by directing Plaintiffs (i) to cease and desist from pursuing claims for Retained Liabilities of Old GM against New GM, and (ii) to dismiss with prejudice the Pre-Closing Accident Lawsuits immediately.

**G.    The Pre-Closing Accident Lawsuits**

30.    While the Plaintiffs in the Pre-Closing Accident Lawsuits contort allegations in an effort to frame a cause of action against New GM, their efforts are futile.  As demonstrated in the chart below, each of the complaints/petitions in the Pre-Closing Accident Lawsuits concern (i) a vehicle manufactured and sold ***by Old GM, and not New GM***, and (ii) an accident that occurred ***prior to the Closing Date of the 363 Sale***:[11]

---

[11]    As noted above, certain similar lawsuits not listed in the chart have been voluntarily dismissed, without prejudice, by the Plaintiffs, pending their review of the Feinberg Protocol.

|   | **Plaintiff Name** | **Date of Accident**[12] | **Vehicle Year and Model** |
|---|---|---|---|
| 1 | Phillips | October 18, 2005 | 2004 Chevy Malibu Classic |
| 2 | Boyd[13] | January 22, 2008 (Marino) | 2007 Chevy Cobalt |
|   |  | September 13, 2008 (Suarez-Marquez) | 2006 Chevy Cobalt |
| 3 | Vest | May 2, 2006 | 2005 Chevy Cobalt |
| 4 | Abney[14] | July 4, 2009 (Gray) | 2006 Chevy Cobalt |
|   |  | July 6, 2009 (Page, A.) | 2008 Chevy Cobalt |
|   |  | July 6, 2009 (Page, S.) | 2009 Chevy Cobalt |
|   |  | July 9, 2009 (Stivers) | 2006 Chevy Cobalt |

31.    In addition to the Plaintiffs set forth in the chart above, a group of over 150 would-be plaintiffs (collectively, the "**Purported Edwards Plaintiffs**"), who are represented by counsel already involved in the Ignition Switch Motion to Enforce and in the Multi-District Litigation ("**MDL**") currently pending in the Southern District of New York relating to the Ignition Switch Actions, filed a motion ("**Motion for Leave**") on July 31, 2014 with the MDL court – and ***not*** this Court -- seeking leave to file a consolidated complaint against New GM based on claims that emanate from accidents that occurred ***prior to*** the closing of the 363 Sale.

32.    Also on July 31, 2014, the Purported Edwards Plaintiffs filed with this Court a *Notice of Filing of Motion for Leave to File Omnibus Complaint with MDL Court* [Dkt. No. 12796]  ("**Notice of Filing**"), which discusses the Motion for Leave, but does not seek relief

---

[12]    Names in parentheses denote the individual plaintiffs that were in the referenced accidents.

[13]    The *Boyd* Action concerns four different accidents, two that occurred prior to the closing of the 363 Sale and two that occurred after the closing of the 363 Sale.  This Motion to Enforce concerns only the two accidents that occurred prior to the closing of the 363 Sale, and which are referenced in the chart above.

[14]    The *Abney* Action was filed on behalf of 658 plaintiffs and concerns hundreds of different accidents, four of which occurred prior to the closing of the 363 Sale; the remainder occurred after the closing of the 363 Sale. This Motion to Enforce concerns only the four accidents that occurred prior to the closing of the 363 Sale, and which are referenced in the chart above.

from this Court.[15]  In their Notice of Filing, the Purported Edwards Plaintiff clearly recognize that their purported claims are subject to the injunction provisions contained in the Sale Order and Injunction.  *See* Notice of Filing, ¶ 3 (asserting that the Purported Edwards Plaintiffs are "mindful of this Court's sale order, plan injunction and various stay stipulations" and that if the Motion for Leave was granted, the Purported Edwards Plaintiffs "expect to enter into a stay stipulation" with respect to their claims so this Court can conduct an "orderly and coordinated process").  Yet, instead of filing the Motion for Leave in this Court – which would have been the proper procedure in view of the Court's exclusive jurisdiction over this issue -- they inexplicably filed the Motion for Leave with the MDL court.  Given their actions, the Purported Edwards Plaintiffs are, for purposes herein, included within the defined term "Plaintiffs."

33.    The Plaintiffs in the Pre-Closing Accident Lawsuits allege various facts based on New GM's recent recalls of various models of pre-closing date vehicles.  However, such recalls do not change the fact that New GM did not assume these liabilities.  All of the accidents and injuries at issue in these lawsuits occurred prior to the closing date of the 363 Sale and therefore relate solely to Old GM's conduct.  Plaintiffs have not, and cannot, allege any cognizable facts against New GM that would form the basis of valid claims against New GM.

**H.    New GM Has Adopted the Feinberg Protocol**

34.    On April 1, 2014, New GM announced that it retained Kenneth Feinberg as a consultant to explore and evaluate actions it may take to assist families of accident victims whose vehicles were the subject of the Cobalt/Ion Recall.  Mr. Feinberg was asked to consider, in an independent, balanced and objective manner, the options available to New GM for

---

[15]    A copy of the Notice of Filing is annexed hereto as Exhibit "H."

addressing issues related to the Cobalt/Ion Recall and possible compensation for accident victims.

35.    On or about June 30, 2014, Mr. Feinberg presented his protocol to the public. The Feinberg Protocol sets forth the eligibility and process requirements for individual claimants to submit and settle claims alleging that a defective ignition switch subject to the Cobalt/Ion Recall caused a death or physical injury in an automobile accident.  The individual on whose behalf a claim is filed must have been the driver, a passenger, a pedestrian, or the occupant of another vehicle in an accident involving one of the "Eligible Vehicles" (as defined in the Feinberg Protocol).  Pursuant to the Feinberg Protocol, claims will be accepted beginning August 1, 2014.

36.    The Feinberg Protocol creates a Claims Resolution Facility ("**Facility**") under which Mr. Feinberg (as an independent administrator) will process and evaluate claims to determine: (i) whether a submitted claim meets the eligibility requirements under the Feinberg Protocol, and (ii) the compensation to be paid for eligible claims.  The Facility is authorized to process *only* those eligible claims involving death or physical injury (as defined in the Feinberg Protocol) caused by a defective ignition switch in an Eligible Vehicle.  No claims for economic injury or other allegations of damage (whether based on a defective ignition switch or otherwise) are eligible under the Feinberg Protocol.

37.    Accident victims who are eligible under the Feinberg Protocol may choose to participate in that program and, if their claims are accepted, will be compensated in an amount determined by the Facility.  Claimant eligibility and compensation awards under the Feinberg Protocol are decided by Mr. Feinberg in his sole discretion.  Eligible accident victims who fail or decline to opt into the Feinberg Protocol, and other parties who are not eligible under the

Feinberg Protocol, are barred pursuant to the Sale Order and Injunction from asserting claims against New GM that are based on Retained Liabilities of Old GM.[16]

### NEW GM'S ARGUMENT TO ENFORCE THE COURT'S SALE ORDER AND INJUNCTION AGAINST THE PLAINTIFFS IN THE PRE-CLOSING ACCIDENT LAWSUITS

38.    The Plaintiffs in the Pre-Closing Accident Lawsuits do not have the choice of simply ignoring the Court's Sale Order and Injunction.  As the Supreme Court expressed in its *Celotex* decision:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . .  Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.

514 U.S. at 313.  These settled principles bind Plaintiffs in the Pre-Closing Accident Lawsuits. Those who purchased vehicles from Old GM and were involved in accidents that occurred before the 363 Sale are subject to the terms of the Court's Sale Order and Injunction, whether they were known or unknown by Old GM at the time, and are barred by this Court's Injunction from suing New GM on account of Old GM's Retained Liabilities.

### A.    This Court's Sale Order And Injunction Should Be Enforced

39.    It is well settled that a "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *In re Wilshire Courtyard*, 729 F.3d 1279, 1290 (9th Cir. 2013) (affirming bankruptcy court's post-confirmation jurisdiction to interpret and enforce its orders; "[i]nterpretation of the Plan and

---

[16]    The Plaintiffs in the *Boyd, Vest* and *Abney* Actions, as well as many of the Purported Edwards Plaintiffs, may be eligible under the Feinberg Protocol.  While the Plaintiffs in the *Philips* Action are not eligible under the Feinberg Protocol (as their accident did not concern an Eligible Vehicle), they have already received compensation from the Old GM bankruptcy estate pursuant to their previous settlement with Old GM.

Confirmation Order is the only way for a court to determine the essential character of the negotiated Plan transactions in a way that reflects the deal the parties struck in chapter 11 proceedings"); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, inter alia, to enforce its confirmation order."); *U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("[a]ll courts, whether created pursuant to Article I or Article III, have inherent contempt power to enforce compliance with their lawful orders. The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order."). In addition, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions, and this section "codif[ies] the bankruptcy court's inherent power to enforce its own orders." *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997); 11 U.S.C. § 105(a).

40.     Consistent with these authorities, this Court retained subject matter jurisdiction to enforce its Sale Order and Injunction. Indeed, this is not the first time that this Court has been asked to enforce its injunction against plaintiffs improperly seeking to sue New GM for Old GM's Retained Liabilities. *See In re Motors Liquidation Co.*, No. 09-50026 (REG), 2011 WL 6119664 (Bankr. S.D.N.Y. 2011) (ordering various plaintiffs to dismiss with prejudice civil actions in which they had brought claims against New GM that are barred by the Sale Order and Injunction); *Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-00509 (Bankr. S.D.N.Y.), Hr'g Tr. 9:3-9:14, May 6, 2010 ("when you are looking for a declaratory judgment on an agreement that I approved [*i.e.*, the Sale Agreement] that was affected by an order that I entered [*i.e.*, the Sale Order and Injunction], and with the issues permeated by bankruptcy law as they are, and which also raise issues as to one or more

injunctions that I entered, ***how in the world would you have brought this lawsuit in Delaware Chancery Court. I'm not talking about getting in personam jurisdiction or whether you can get venue over a Delaware corporation in Delaware. I'm talking about what talks and walks and quacks like an intentional runaround of something that's properly on the watch of the U.S. Bankruptcy Court for the Southern District of New York.***" (emphasis added)); *Castillo*, 2012 WL 1339496 (entering judgment in favor of New GM) (affirmed by 500 B.R. 333, 335 (S.D.N.Y. 2013)); *see also Trusky*, 2013 WL 620281, at *2 (finding that "claims for design defects [of 2007-2008 Chevrolet Impalas] may not be asserted against New GM and that "New GM is not liable for Old GM's conduct or alleged breaches of warranty").

41.    New GM also recently filed a motion to enforce the Sale Order and Injunction against the plaintiffs who filed the Ignition Switch Actions.  Recognizing its continuing jurisdiction over the issues raised in those actions, this Court entered Scheduling Orders on May 16, 2014 and July 11, 2014, establishing procedures for the resolution of the issues raised in that motion by this Court.

42.    Much like the plaintiffs in the Ignition Switch Actions, and contrary to New GM's bargained for rights under the Sale Agreement and the Court's Sale Order and Injunction, Plaintiffs in the Pre-Closing Accident Lawsuits are suing New GM for alleged defects in Old GM vehicles.  Plaintiffs may not simply ignore the Court's injunction through these collateral attacks, especially when the Sale Order and Injunction is a final order no longer subject to appeal.  *See Celotex*, 514 U.S. at 306, 313 ("'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed'") (quoting *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980)); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 520 (6th Cir. 2004) (applying doctrine to dismiss suits filed in violation of injunction in confirmation order entered by bankruptcy court); *In re McGhan*, 288

25

F.3d 1172, 1180-81 (9th Cir. 2002) (applying doctrine to enforce discharge order in favor of

debtors and holding that only the bankruptcy court could grant relief from the order); *see also In

re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000) (applying this doctrine in the context of an

automatic stay entered by the bankruptcy court); *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251

(4th Cir. 1997) (applying doctrine to bankruptcy court order approving sales of assets free and

clear of liens).

**B.     New GM Is Not Liable For Damages Arising From
         Accidents That Took Place Prior to the Closing Of The 363 Sale**

43.     The Sale Order and Injunction could not be more clear.  Retained Liabilities of

Old GM for which New GM has no liability expressly include "all Product Liabilities arising in

whole or in part from any accidents, incidents or other occurrences that happen prior to the

Closing Date."  Sale Agreement, § 2.3(b)(ix).  "Product Liabilities" was defined by the Sale

Agreement as

> all Liabilities to third parties for death, personal injury, or other injury to Persons
> or damage to property caused by motor vehicles designed for operation on public
> roadways or by the component parts of such motor vehicles and, in each case,
> manufactured, sold or delivered by Sellers (collectively, "Product Liabilities") . . .

Sale Agreement, § 2.3(a)(ix).

44.     In its objection to the 363 Sale, the Ad Hoc Committee of Consumer Victims

recognized that while New GM was agreeing to assume certain liabilities of Old GM, it was not

agreeing to assume "Product Liabilities" arising out of accidents that took place prior to the 363

Sale.  The Ad Hoc Committee of Consumer Victims argued, among other things, that New GM's

refusal to "assume successor for pre-closing product liability claims . . . [was] not in good faith."

Objection to 363 Sale by Ad Hoc Committee of Consumer Victims [Dkt. No. 1997], ¶ 33.  As

noted, the Court considered that and other objections, and after a contested hearing, overruled all

objections to the Sale Motion, including those raised by the Ad Hoc Committee of Consumer Victims.[17]  *See* Sale Order and Injunction, ¶ 2.

45.    In addition, the Court previously was asked to decide whether a claim against New GM that was based on a prepetition accident was barred by the Sale Order and Injunction. Specifically, after the Estate of Beverly Deutsch ("**Deutsch**") commenced a state court action against New GM that arose from an accident in June, 2007, New GM asked this Court to enjoin Deutsch from prosecuting the state court action because it was barred by the terms of the Sale Agreement and Sale Order and Injunction.    While the issue in Deutsch concerned an interpretation of the difference between "accident" and "incident" (as Deutsch argued that the accident occurred before the 363 Sale, but the death of the driver was a separate "incident" that occurred after the 363 Sale), the end result is applicable here.    Deutsch did not have a claim against New GM because the accident occurred prior to the closing of the 363 Sale.[18]

46.    Like the claimant in Deutsch, Plaintiffs have no claims against New GM.    The claims asserted by the Plaintiffs in each of the Pre-Closing Accident Lawsuits (i) concern a vehicle manufactured and sold by Old GM; (ii) arise directly from an accident that occurred prior to the Closing Date; and (iii) arise from the vehicles' operation or performance.    Accordingly, Plaintiffs' claims in the Pre-Closing Accident Lawsuits fit squarely within the definition of Retained Liabilities in Section 2.3(b)(ix) of the Sale Agreement.    Such claims were not assumed by New GM as part of the 363 Sale but were, for all purposes, retained by Old GM.    Thus, Plaintiffs' prosecution against New GM of the Pre-Closing Accident Lawsuits is a direct

---

[17]    The Ad Hoc Committee of Consumer Victims had "more than 300 members who each have product liability tort claims involving personal injuries (including derivative claims and wrongful death claims) against GM." Objection to 363 Sale by Ad Hoc Committee of Consumer Victims, ¶ 4.

[18]    *See* "Decision on New GM's Motion to Enforce Section 363 Order With Respect To Product Liability Claim of Estate of Beverly Deutsch," dated January 5, 2011 [Dkt. No. 8383] ("**Deutsch Decision**").    A copy of the Deutsch Decision is annexed hereto as Exhibit "I."

violation of the Sale Order and Injunction, and Plaintiffs should be barred from continuing to prosecute those cases.

**C.      New GM Cannot Be Held Liable For**
**Old GM's Alleged Conduct, Either**
**Directly Or As Old GM's Alleged "Successor"**

47.      Each of the Pre-Closing Accident Lawsuits involve vehicles manufactured and sold by Old GM prior to the Sale Order and Injunction.  *See* Chart, *supra*, at ¶ 30.    The complaints in the Pre-Closing Accident Lawsuits are similar, and while they reflect an effort to plead around the Court's Sale Order and Injunction, they in fact all make the same allegations concerning Old GM:  it designed and sold vehicles with a defect that caused personal injuries prior to the closing of the 363 Sale.  Additionally, they all seek to hold New GM liable for damages based on Old GM's conduct—claims that are prohibited by the Sale Order and Injunction.  In short, as this Court previously held, New GM did not assume any liabilities based on Old GM's conduct or design defects in any of Old GM's vehicles.  *See Trusky*, 2013 WL 620281, at *2.

48.      Similarly, by conflating Old GM and New GM, Plaintiffs attempt to impose "successor" liability upon New GM, but New GM is not a successor to Old GM and did not assume any liabilities in connection with successor or transferee liability.  This is expressly provided by the Court's Sale Order and Injunction:

> The Purchaser shall not be deemed, as a result of any action taken in connection with the [Sale Agreement] or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, to:  (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchased Assets from and after the Closing); (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.  Without limiting the foregoing, the Purchaser (New GM) shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability,

de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction ¶ 46; *see also id.*, ¶¶ AA, BB, DD, 6, 7, 8, 10 and 47; Sale Agreement § 9.19.

49.    **P**laintiffs' successor liability allegations are simply a violation of this Court's Sale Order and Injunction.   But whether or not they expressly allege successor liability, Plaintiffs' claims against New GM based on Old GM's conduct are essentially successor liability claims cast in a different way and are precluded by that Order.

**D.    Plaintiffs' Warranty Assertions Do Not Enable Them
To Circumvent The Court's Sale Order And Injunction**

50.    The Glove Box Warranty is for a limited duration and all of the vehicles that are the subject of the Pre-Closing Accident Lawsuits were sold considerably more than three years ago (the most recent accident occurred almost six years ago).  Thus, the Glove Box Warranty for each vehicle at issue has expired.   In any event, the Glove Box Warranty provides only for repairs and replacement parts.

51.    This distinction is not unique to Old GM's Sale.  In the *Chrysler* bankruptcy case, the court likewise found that the assumed liabilities were limited to the standard limited warranty of repair issued in connection with sales of vehicles.  *See, e.g., Burton v. Chrysler Group, LLC (In re Old Carco LLC)*, 492 B.R. 392, 404 (Bankr. S.D.N.Y. 2013) ("New Chrysler did agree to honor warranty claims — the Repair Warranty.  None of the statements attributed to New Chrysler state or imply that it assumed liability to pay consequential or other damages based upon pre-existing defects in vehicles manufactured and sold by Old Carco.").

52.    Similarly, the Sale Agreement and the Sale Order and Injunction provide that the implied warranty claims asserted by Plaintiffs here are Retained Liabilities for which New GM is

not responsible.  *See* Sale Order and Injunction, ¶ 56 (New GM "is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs and point of purchase materials." (emphasis added)); *see also* Sale Agreement § 2.3(b)(xvi) (one of the Retained Liabilities of Old GM was any liabilities "arising out of, related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." (emphasis added)).

53.    In short, any breach of warranty claims Plaintiffs pursue relating to Old GM vehicles (whether express or implied) improperly seek damages against New GM in violation of the Sale Order and Injunction.

## <u>CONCLUSION</u>

54.    New GM was created to purchase the assets of Old GM pursuant to the Sale Agreement.  The limited category of liabilities it agreed to assume as part of the purchase was the product of a negotiated bargain, which was approved by this Court in July 2009.  Plaintiffs in the Pre-Closing Accident Lawsuits have completely ignored this; they improperly treat New GM and Old GM interchangeability and are pursuing Old GM claims that they cannot lawfully pursue against New GM; and they wrongfully have filed suit in violation of this Court's Sale Order and Injunction.

55.    New GM has no liability or responsibility for the Retained Liability claims asserted in the Pre-Closing Accident Lawsuits and, under the Sale Order and Injunction, Plaintiffs in such Actions are enjoined from bringing them against New GM.  *See, e.g.*, Sale Order and Injunction, ¶¶ 8, 47.  Accordingly, the Court should enforce the terms of its Sale Order

and Injunction by ordering Plaintiffs to promptly dismiss the Pre-Closing Accident Lawsuits, and to cease and desist from all efforts to assert such claims against New GM that are barred by the Sale Order and Injunction. Of course, as noted, those Plaintiffs eligible to participate in the Feinberg Protocol may do so.

## <u>NOTICE AND NO PRIOR REQUESTS</u>

56.    Notice of this Motion has been provided to (a) counsel for Plaintiffs in each of the Pre-Closing Accident Lawsuits, (b) counsel for Motors Liquidation Company General Unsecured Creditors Trust, and (c) the Office of the United States Trustee.  New GM submits that such notice is sufficient and no other or further notice need be provided.

57.    No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court: (i) enter an order substantially in the form set forth as Exhibit "J" hereto, granting the relief sought herein; and (ii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      August 1, 2014                       Respectfully submitted,

                                      _/s/ Arthur Steinberg_____
                                        Arthur Steinberg
                                        Scott Davidson
                                        KING & SPALDING LLP
                                        1185 Avenue of the Americas
                                        New York, New York  10036
                                        Telephone:  (212) 556-2100
                                        Facsimile:  (212) 556-2222

                                        Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                                        Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                                        KIRKLAND & ELLIS LLP
                                        300 North LaSalle
                                        Chicago, IL 60654
                                        Telephone: (312) 862-2000
                                        Facsimile: (312) 862-2200

                                        *Attorneys for General Motors LLC*