# Exhibit E



CORPORATION SERVICE COMPANY®

**null / ALL**
**Transmittal Number: 12592699**
**Date Processed: 06/04/2014**

# Notice of Service of Process

**Primary Contact:** Rosemarie Williams
General Motors LLC
Mail Code 48482-038-210
400 Renaissance Center
Detroit, MI 48265

| | |
|---|---|
| **Entity:** | General Motors LLC<br>Entity ID Number 3113523 |
| **Entity Served:** | General Motors LLC |
| **Title of Action:** | Boyd, James; Cameron, John; Marino, Lisa vs. General Motors LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Personal Injury |
| **Court/Agency:** | St. Louis City Circuit Court, Missouri |
| **Case/Reference No:** | 1422-CC01202 |
| **Jurisdiction Served:** | Missouri |
| **Date Served on CSC:** | 06/03/2014 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Holland Groves Schneller and Stolze (St. Louis, MO)<br>314-640-7550 |
| **Client Requested Information:** | Year:<br>Make:<br>Model:<br>VIN: |

**Notes:** Holland Groves Schneller and Stolze 300 North Tucker, Suite 801 St. Louis, MO 63101
CSC Location document was served: CSC of St. Louis County, Inc. 130 South Bemiston Avenue, Suite 303 Clayton, MO 63105

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscinfo.com



# IN THE 22ND JUDICIAL CIRCUIT COURT OF CITY OF ST LOUIS, MISSOURI

| | |
|---|---|
| Judge or Division:<br>PHILIP HEAGNEY | **Case Number: 1422-CC01202** |
| Plaintiff/Petitioner:<br>JAMES BOYD<br><br>**vs.** | Plaintiff's/Petitioner's Attorney/Address<br>STEVEN JOSEPH STOLZE<br>300 N TUCKER<br>SUITE 801<br>ST LOUIS, MO 63101 |
| Defendant/Respondent:<br>GENERAL MOTORS LLC | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 |
| Nature of Suit:<br>CC Pers Injury-Other | |

(Date File Stamp)

## Summons in Civil Case

**The State of Missouri to: GENERAL MOTORS LLC**
**Alias:**

**CSC OF ST LOUIS COUNTY**
**130 S BEMISTON AVE STE 303**
**CLAYTON, MO 63105**

**ST LOUIS COUNTY, MO**

*COURT SEAL OF*

*CITY OF ST LOUIS*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**May 27, 2014**
Date

M. Jane Schweitzer
Circuit Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ______________________ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

______________________ (name) ______________________ (title).

☐ other ______________________.

Served at ______________________ (address)

in ______________________ (County/City of St. Louis), MO, on ______________________ (date) at ______________ (time).

______________________ Printed Name of Sheriff or Server

______________________ Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on ______________________ (date).

My commission expires: ______________ Date

______________________ Notary Public

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $______ |
| Non Est | $______ |
| Mileage | $______ ( ____miles @ $ .______per mile) |
| Total | $______ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**1422-CC01202**

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS, MISSOURI
22ND JUDICIAL DISTRICT

JAMES BOYD, JOHN CAMERON, LISA MARINO, and REBECCA SUAREZ-MARQUEZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSEPH HARDING, JR.
Plaintiffs, )
)
v. )
)
GENERAL MOTORS, LLC, ) JURY TRIAL DEMANDED
)
Defendant. )

Serve at: CSC of St. Louis County
130 S. Bemiston Ave, Suite 303
Clayton, MO 63105

PETITION

Plaintiffs bring this action against Defendant General Motors LLC ("Defendant" or "GM") and allege upon information and belief as follows:

I. INTRODUCTION

1. Since 2003, GM has sold millions of vehicles throughout the United States and worldwide that have a safety defect in which the vehicle's ignition switch can unintentionally move from the "run" position to the "accessory" or "off" position, resulting in a loss of power, vehicle speed control, and braking, as well as a failure of the vehicle's airbags to deploy.

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

2. GM began installing these ignition switch systems in models from 2003 through at least 2011 and possibly later. GM promised that these new systems would operate safely and reliably. This promise turned out to be false in several material respects. In reality, GM concealed and did not fix a serious quality and safety problem plaguing its vehicles.

3. From 2004 to the present, GM received reports of crashes and injuries that put GM on notice of the serious safety issues presented by its ignition switch system.

4. Despite notice of the defect in its vehicles, GM did not disclose to consumers that its vehicle – which GM for years had advertised as "safe" and "reliable" – were in fact not as safe or reliable.

5. GM"s CEO, Mary Barra has admitted in a video message that: "Something went wrong with our process in this instance, and terrible things happened."

6. This case arises from GM's breach of its obligations and duties, including GM's failure to disclose that, as a result of defective ignition switch design, at least 1.4 million GM vehicles had the propensity to shut down during normal driving conditions and created an extreme and unreasonable risk of accident, serious bodily harm, and death.

7. GM's predecessor, General Motors Corporation ("Old GM") also violated these rules by designing and marketing vehicles with defective ignition switches, and then by failing to disclose that defect even after it became aware that the ignition switch defect was causing fatal accidents. In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects.

8. The Defective Vehicles are defective and dangerous for multiple reasons, including the following (collectively, the "ignition switch defects"):

a. The ignition switches can inadvertently shut off the engine and vehicle electrical system during normal driving conditions;

Electronically Filed - City of St. Louis - May 23 2014 - 03:44 PM

b. When the engine and the electrical system shut down, the power steering and power brakes also shut down, creating a serious risk of accident;

c. When the electrical system shuts down, the vehicle's airbags are disabled, creating a serious risk of serious bodily harm or death if an accident occurs.

9. The ignition switch defects make the Defective Vehicles unreasonably dangerous. Because of the defects, the Defective Vehicles are likely to be involved in accidents, and, if accidents occur, there is an unreasonable and extreme risk of serious bodily harm or death to the vehicle's occupants.

10. The ignition switch defects present a significant and unreasonable safety risk exposing Defective Vehicle owners and their passengers to a risk of serious injury or death.

11. For many years, GM has known of the ignition switch defects that exist in millions of Defective Vehicles sold in the United State. But, to protect its profits and maximize sales, GM concealed the defects and their tragic consequences and allowed unsuspecting vehicle owners to continue driving highly dangerous vehicles.

12. Plaintiffs have been damaged by GM's misrepresentations, concealment and non-disclosure of the ignition switch defects in the Defective Vehicles, as they are now holding highly dangerous vehicles whose value has greatly diminished because of GM's failure to timely disclose the serious defect.

13. Plaintiffs were also damaged by the acts and omissions of Old GM for which GM is liable through successor liability because the Defective Vehicles they purchased are worth less than they would have been without the ignition switch defects.

14. Plaintiffs paid more for the Defective Vehicles than they would have had they known of the ignition defects or they would not have purchased the Defective Vehicles at all.

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

## II. JURISDICTION AND VENUE

15. This court has personal jurisdiction over the Defendant because Defendant is present in the State of Missouri such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

16. This Court has personal jurisdiction over Defendant pursuant to Missouri's Long Arm Statute, R.S. Mo. 506.500. The Defendant regularly conducts or solicits business and derives substantial revenue from goods used or consumed in the State of Missouri.

17. Certain Plaintiffs herein suffered injury from Defendant's conduct in the State of Missouri, City of St. Louis. Accordingly, venue is proper under R.S. Mo. 508.010.

18. Plaintiffs each seek relief in excess of the jurisdictional limits of $50,000.

## JOINDER OF PLAINTIFFS

19. Joinder of Plaintiffs in the Petition is proper pursuant to R.S. Mo. 507.040(1) because Plaintiffs' rights to relief arise out of the same transaction, occurrence, or series of transactions or occurrences and involve common questions of law and fact.

## III. PARTIES

20. Plaintiff James Boyd is a resident of the City of St. Louis. He purchased a 2008 Chevrolet HHR in the City of St. Louis. His vehicle has diminished in value due to the facts recited herein. Additionally, upon information and belief plaintiff sustained personal injuries when the vehicle was involved in a collision in 2012 in the City of St. Louis as a result of the allegations recited herein.

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

21. Plaintiff John Cameron purchased a 2011 Chevrolet HHR in Terre Haute, Indiana which has diminished in value due to the facts recited herein. Additionally upon information and belief plaintiff sustained personal injuries when the vehicle was involved in a collision on or about July 9, 2012 in Terre Haute, Indiana as a result of the allegations recited herein.
22. Plaintiff Lisa Marino purchased a 2007 Chevrolet Cobalt in Richmond, Texas which has diminished in value due to the facts recited herein. Additionally upon information and belief plaintiff sustained personal injuries when the vehicle was involved in a collision on or about January 22, 2008 in Fort Bend, Texas as a result of the allegations recited herein.
23. Plaintiff Rebecca Suarez-Marquez is a resident of Stevensville, Michigan. Plaintiff Rebecca Suarez-Marquez is the sister of decedent Joseph Harding, Jr. and is the personal representative of the Estate of decedent Joseph Harding, Jr. Upon information and belief, decedent Joseph Harding, Jr. was killed when the 2006 Chevrolet Cobalt he was driving was involved in a collision on or about September 13, 2008 in Stevensville, Michigan as a result of the allegations recited herein.
24. Defendant General Motors LLC ("GM") is a foreign limited liability company formed under the laws of Delaware and is a resident of the State of Michigan with its principal place of business located at 300 Renaissance Center, Detroit, Michigan. GM was incorporated in 2009 and on July 10, 2009 acquired substantially all assets and assumed certain liabilities of General Motors Corporation ("Old GM.") through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.
25. Among the liabilities and obligations expressly retained by GM after the bankruptcy are the following:

> From and after the Closing, Purchaser [GM] shall comply with the certification, reporting and recall requirements of the National Traffic and

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

> Motor Vehicle Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code, and similar laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by [Old GM].

26. GM also expressly assumed:

> All Liabilities arising under express written warranties of [Old GM] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by [Old GM] or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws.

27. Because GM Acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint.

## III. FACTUAL ALLEGATIONS

### A. The Ignition Switch Defects in the Defective Vehicles

28. Given the importance that a vehicle and its electrical operating systems remain operational during ordinary driving conditions, it is imperative that a vehicle manufacturer ensure that its vehicles remain operational from the time the driver starts the vehicle until the driver intentionally shuts down the vehicle. With respect to the Defective Vehicles, GM has failed to do so.

29. In the Defective Vehicles, the ignition switch defects can cause the car's engine and electrical system to shut off, disabling the power steering and power brakes and causing non-deployment of the vehicle's airbags in the

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

event of a crash.

30. The Defective Vehicles are, therefore, unreasonably prone to be involved in accidents, and those accidents are unreasonably likely to result in serious bodily harm or death to the drivers and passengers of the Defective Vehicles, as well as other vehicle operators and pedestrians.

B. **GM Knew of the Ignition Switch Defects for Years, but Concealed the Defects from Plaintiff and the Class**

31. Alarmingly, both Old GM and GM knew of the deadly ignition switch defects and their dangerous consequences for many years, but concealed their knowledge from Defective Vehicle owners.

32. For example, on July 29, 2005, Amber Marie Rose, age 16, died after her 2005 Chevrolet Cobalt crashed and the airbag failed to deploy. Ms. Rose's death was the first of the hundreds deaths and injuries attributable to the ignition switch defects. Ms. Rose's death was an early warning in what would become a decade-long failure by Old GM and GM to address the ignition switch problems.

33. Another incident involved sixteen year-old Megan Phillips. Ms. Phillips was driving a 2005 Chevrolet Cobalt that crashed in Wisconsin in 2006, killing two of her teenage friends when the car left the road and hit a clump of trees. NHTSA investigators found that the key had moved from the "run" to the "accessory" position, turning off the engine and disabling the vehicle's airbags before impact. According to Ms. Phillips, the families of her deceased friends blamed her and refused to speak with her; only after the recall was finally announced did they began communicating. As she stated, "I don't

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

understand why [GM] would wait 10 years to say something. And I want to understand it but I never will."

34. Rather than publicly admitting the dangerous safety defects in its vehicles, GM attempted to attribute these and other incidents to "driver error." Every year from 2005 to 2012, first Old GM and then GM received reports of deaths in Cobalts involving steering and/or airbag failures, including:

- 2005: 26 Cobalt Death and Injury Incidents, including 1 death citing Airbag as component involved.
- 2006: 69 Cobalt Death and Injury Incidents, including 2 deaths citing Airbag as component involved and 4 deaths citing Unknown component.
- 2007: 87 Cobalt Death and Injury Incidents, including 3 deaths citing Airbag as component involved.
- 2008: 106 Cobalt Death and Injury Incidents, including 1 death citing Airbag as component involved and 2 deaths citing Unknown component.
- 2009: 133 Cobalt Death and Injury Incidents, including 1 death citing Airbag as component involved, 1 death citing Service Brake as component involved, 1 death citing Steering as component involved, and 2 deaths citing Unknown component.
- 2010: 400 Cobalt Death and Injury Incidents, including 2 deaths citing Airbag as component involved, 12 deaths citing steering as component involved, and 1 death citing Unknown component.
- 2011: 187 Cobalt Death and Injury Incidents, including 2 deaths citing Airbag as component involved, 2 deaths citing Steering as component involved, and 1 Unknown component.
- 2012: 157 Cobalt Death and Injury Incidents, including 5 deaths citing Airbag as component involved, and 4 deaths citing Steering as component involved.

35. GM now admits that Old GM learned of the ignition switch defects as early as 2001. During the pre-production development of the Saturn Ion, Old GM engineers learned that the ignition could inadvertently move from the "Run"

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

position to the "Accessory" or "Off" position. Old GM claimed that a switch design change "had resolved the problem."

36. In 2003, an internal report documented an instance in which the service technician observed a stall while driving. The service technician noted that the weight of several keys on the key ring had worn out the ignition switch. It was replaced and the matter was closed.

37. Old GM opened an engineering inquiry, known as a "Problem Resolution Tracking System inquiry" ("PRTS"), to investigate the issue. According to the chronology provided to NHTSA by GM, engineers pinpointed the problem and were "able to replicate this phenomenon during test drives."

38. According to GM, the PRTS engineers "believed that low key cylinder torque effort was an issue and considered a number of potential solutions." But after considering cost and the amount of time it would take to develop a fix, Old GM did nothing.

39. As soon the 2005 Cobalt hit the market, Old GM almost immediately started getting complaints about sudden loss of power incidents, "including instances in which the key moved out of the 'run' position when a driver inadvertently contacted the key or steering column." Old GM opened additional PRTS inquires.

40. Rather than disclosing the true nature of the defects and correcting them, Old GM gave customers who brought in their vehicle complaining about the issue "an insert for the key ring so that it goes from a 'slot' design to a hole design" to prevent the key ring from moving up and down in the slot. "[T]he previous

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

key ring" was "replaced with a smaller" one; this change was supposedly able to keep the keys from hanging as low as they had in the past. According to GM's records, Old GM dealers provided key inserts to 474 customers who brought their vehicles into dealers for service. Yet there was no recall. And, not surprisingly, Old GM continued to get complaints.

41. In 2006, Old GM approved a design change for the Cobalt's ignition switch supplied by Delphi. The new design included "the use of a new detent plunger and spring that increased torque force in the ignition switch." But the new design was not produced until the 2007 model year.

42. As alleged above, the airbags in Ms. Rose's 2005 Cobalt did not deploy. Data retrieved from her vehicle's diagnostic system indicated that the ignition was in the "accessory" position. Old GM investigated and tracked similar incidents.

43. For the next six years, GM continued to get complaints and continued to investigate frontal crashes in which the airbags did not deploy.

44. In 2014, after numerous assessments and facing increasing scrutiny of its conduct and the defects in its vehicles, GM finally announced a recall for the Cobalt and G5 vehicles.

**C. GM Waited until 2014 to Finally Order a Recall of the Defective Vehicles**

45. After analysis by GM's Field Performance Review Committee and the Executive Action Decision Committee ("EFADC"), the EFADC finally ordered a recall of *some* of the Defective Vehicles on January 31, 2014.

46. According to GM, "the dealers are to replace the ignition switch," presumably

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

with one with sufficient torque to prevent the inadvertent shut down of the ignition, power steering, power brakes, and airbags.

47. In a video message addressed to GM employees on March 17, 2014, C.E.O. Mary Barra admitted that the Company had made mistakes and needed to change its processes.

48. According to Ms. Barra, "Something went terribly wrong in our processes in this instance, and terrible things happened." Barra continued to promise, "We will be better because of this tragic situation if we seize this opportunity."

49. GM now faces an investigation by NHTSA, hearings in both the U.S. House and Senate, and a probe by the Department of Justice.

**D. Old GM Promoted the Defective Vehicles as Safe and Reliable**

50. On information and belief, in marketing and advertising materials, Old GM consistently promoted the Defective Vehicles as safe and reliable.

51. For example, one Cobalt ad promised that "Side curtain airbags coupled with OnStar makes every journey the safest possible to assure that you and your occupants will stay safe at all times."

52. An ad for the 2006 Solstice promises that the vehicle "[b]rings power and defines performance."

53. A 2003 television spot for the Saturn vehicle closed with the tagline "Specifically engineered for whatever is next." Another 2003 spot closed with the tagline "Saturn. People first."

54. A 2001 print ad touting the launch of the Saturn focused on safety:

> Need is where you begin. In cars, it's about things like reliability,

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

> durability and, of course, safety. That's where we started when developing our new line of cars. And it wasn't until we were satisfied that we added things....

55. Old GM made these representations to boost vehicle sales and maximize profits while knowing that the ignition switches in the Defective Vehicles were defective.

56. Throughout the relevant period, Old GM possessed vastly superior knowledge and information to that of consumers – if not exclusive information – about the design and function of the ignition switches in the Defective Vehicles and the existence of the defects in those vehicles.

57. Old GM never informed consumers about the ignition switch defects.

**E. The Ignition Switch Defects have Harmed Plaintiffs**

58. The ignition switch defects have caused damage to Plaintiffs

59. A vehicle purchased, leased or retained with a serious safety defect is worth less than the equivalent vehicle leased, purchased or retained without the defect. Additionally as set forth herein Plaintiffs and their Decedents have sustained personal injury and death upon information and belief as a result of the allegations contained herein.

60. A vehicle purchased, leased or retained under the reasonable assumption that it is safe is worth more than a vehicle known to be subject to the unreasonable risk of catastrophic accident because of the ignition switch defects.

61. Purchasers and lessees paid more for the Defective Vehicles, through a higher purchase price or higher lease payments, than they would have had the ignition switch defects been disclosed. Plaintiffs overpaid for their Defective

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

Vehicles because of the concealed ignition switch defects. Plaintiffs did not receive the benefit of the bargain.

62. Plaintiffs are stuck with unsafe vehicles that are now worth less than they would have been but for GM's failure to disclose the ignition switch defects.

63. GM admits to at least twelve deaths resulting from accidents linked to the ignition switch defects in the Defective Vehicles. However, Plaintiffs believe that the actual number is much higher, and that there may have been hundreds of deaths and injuries attributable to the ignitions switch defects.

64. If Old GM or GM had timely disclosed the ignition switch defects vehicles would now be worth more.

## V. SUCCESSOR LIABILITY

65. As discussed above, GM is liable for its non-disclosure of the ignition switch defects from the date of its formation on July 10, 2009.

66. GM also expressly assumed liability for Lemon Law claims in the Master Sale and Purchase Agreement of June 26, 2009.

67. GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM, for the following reasons:

- GM admits that it knew of the ignition system defects from the very date of its formation;
- GM has continued in the business of designing, manufacturing, and marketing vehicles, including at least some of the same vehicles as Old GM;
- GM retained the bulk of the employees of Old GM;
- GM acquired owned and leased real property of Old GM, including all

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

machinery, equipment, tools, information technology, product inventory, and intellectual property;

- GM acquired the contracts, books, and records of Old GM; and
- GM acquired all goodwill and other intangible personal property of Old GM.

## VI. TOLLING OF THE STATUTES OF LIMITATION

68. All applicable statutes of limitation have been tolled by GM's knowing and active fraudulent concealment and denial of the facts alleged herein. Plaintiffs did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Old GM and GM did not report information within their knowledge to federal authorities (NHTSA) or consumers, nor would a reasonable and diligent investigation have disclosed that Old GM and GM had information in their possession about the existence and dangerousness of the defect and opted to conceal that information.

69. Indeed, Old GM instructed its service shops to provide Defective Vehicle owners with a new key ring if they complained about unintended shut down, rather than admit what Old GM knew -- that the ignition switches were dangerously defective and warranted replacement with a properly designed and built ignition system.

70. Old GM and GM were, and GM remains, under a continuing duty to disclose to NHTSA and Plaintiffs the true character, quality, and nature of the Defective Vehicles; that this defect is based on dangerous, inadequate, and defective design and/or substandard materials; and that it will require repair; poses a severe safety concern, and diminishes the value of the Defective Vehicles.

Electronically Filed - City of St. Louis - May 23 2014 - 03:44 PM

71. Because of the active concealment by Old GM and GM, any and all limitations periods otherwise applicable to Plaintiffs claims have been tolled.

72. The Defective Vehicles include at least the following models: Chevrolet Cobalts (2005-10 model years); Pontiac G5 (2007-10 model years); Saturn Ions (2003-07 model years); Chevrolet HHR (2006-11 model years); Pontiac Solstice (2006-10 model years); and Saturn Sky (2007-10 model years).

73. Questions of law and fact are common to the Plaintiffs include:

(a) Whether the Defective Vehicles suffer from ignition switch defects;

(b) Whether Old GM and GM concealed the defects;

(c) Whether Old GM and GM misrepresented that the Defective Vehicles were safe;

(d) Whether Old GM and GM engaged in fraudulent concealment;

(e) Whether Old GM and GM engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective ignition switches;

(f) Whether the alleged conduct by GM violated laws as Plaintiff alleges;

(g) Whether Old GM's and GM's unlawful, unfair and/or deceptive practices harmed Plaintiffs;

(h) Whether, and to what extent, GM has successor liability for the acts and omissions of Old GM.

## VII. CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT

(The MCPA, Mich. Comp. L. Ann. § 44901, *et seq.)*

74. Plaintiffs incorporate by reference each preceding and following paragraph as

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

though fully set forth at length herein.

75. Old GM, GM, and Plaintiffs are each "persons" under MICH. COMP. L. ANN. § 445.902(d).

76. The sale of the Defective Vehicles to Plaintiffs occurred within "trade and commerce" within the meaning of MICH. COMP. L. ANN.□§ 445.902(d), and both GM and Old GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

77. The MCPA makes unlawful any "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce," as more specifically defined in the MCPA. MICH. COMP. L. ANN. § 445.903 (1). GM has engaged in unfair, unconscionable, and deceptive methods, acts and practices violation of the MCPA, and also has successor liability for the unfair, unconscionable, and deceptive methods, acts and practices of Old GM as set forth above.

78. Both Old GM and GM violated the MCPA by "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." MICH. COMP. L. ANN. § 445.903(s).

79. As alleged above, both Companies knew of the safety ignition defect, while Plaintiffs were deceived by the Companies' omission into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer until the February and March 2014 recalls.

80. Old GM also violated the MCPA by "[m]aking a representation of fact or

Electronically Filed - City of St. Louis - May 23 2014 - 03:44 PM

statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." Mich. Comp. L. Ann. § 405.903(bb). For example, Old GM represented that the Defective Vehicles were safe such that reasonable people believed the represented or suggested state of affairs to be true; namely, that the Defective vehicles were safe.

81. Old GM also violated the MCPA by "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. L. Ann. § 405.903(cc). Old GM represented that the Defective Vehicles were safe, which made it even more incumbent on Old GM to reveal the material fact of the ignition switch defects.

82. Old GM's and GM's acts and practices were unfair and unconscionable, because their acts and practices, including the manufacturer and sale of vehicles with an ignition switch defect, and the Companies' failure to adequately disclose the defect to NHTSA and the Plaintiffs and timely implement a remedy, offend established public policy, and because the harm the Companies caused consumers greatly outweighs any benefits associated with those practices. The Companies' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs from making fully informed decisions about whether to lease, purchase, and/or retain Defective Vehicles.

83. While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2011.

Electronically Filed - City of St Louis - May 23, 2014 - 03:44 PM

84. All the while, Old GM knew that the vehicles had an unreasonable propensity to shut down during ordinary driving conditions, leading to an unreasonable risk of serious bodily injury or death.

85. Plaintiffs have suffered an injury, including the loss of money or property, as a result of GM's unfair, unlawful, and/or deceptive practices. Old GM and GM failed to inform NHTSA, and therefore failed to inform consumers, that its vehicles had a defective ignition switch that could lead to injury and death. Had Plaintiffs known this, they would either not have purchased their vehicles at all or would have paid less for them, and would not have retained their Defective Vehicles. Plaintiffs have therefore suffered a "loss" because of the violations of the MCPA complained of herein.

86. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Companies' business.

87. Plaintiff requests that this Court: provide to Plaintiffs either their actual damages as the result of GM's unfair, unlawful, and deceptive trade practices, or $250 per Plaintiff, whichever is higher; award reasonable attorneys' fees; and provide other appropriate relief under Mich. Comp. L. Ann. § 445.911.

**COUNT II**

**FRAUDULENT CONCEALMENT**

88. Plaintiffs incorporate by reference each preceding and following paragraph as though fully set forth at length herein.

89. GM concealed and suppressed material facts concerning the ignition switch defects, and GM also has successor liability for the acts of concealment and

Electronically Filed - City of St Louis - May 23, 2014 - 03:44 PM

oppression of Old GM as set forth above.

90. The Companies had a duty to disclose the ignition switch defects because they were known and/or accessible only to the Companies who had superior knowledge and access to the facts, and the Companies knew they were not known to or reasonably discoverable by Plaintiffs. These omitted and concealed facts were material because they directly impact the safety of the Defective Vehicles. Whether an ignition switch was designed and manufactured with appropriate safeguards is a material safety concern.

91. The Companies actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and avoid a costly recall, and they did so at the expense of Plaintiffs.

92. On information and belief, GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and conceal material information regarding the defects that exist in the Defective Vehicles and other GM vehicles.

93. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs actions were justified. The Companies were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs.

94. Because of the concealment and/or suppression of the facts, Plaintiffs sustained damage because they purchased and retained vehicles that are now diminished in value from what they would have been had the Companies timely disclosed the ignition switch defects.

95. The Companies' acts were done maliciously, oppressively, deliberately, with

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

intent to defraud, and in reckless disregard of Plaintiffs rights and well-being to enrich the Companies. The Companies' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**

**STRICT LIABILITY**

96. Plaintiffs incorporate by reference each preceding and succeeding paragraphs as though fully set forth at length herein.

97. Defendant placed the defective vehicles into the stream of commerce throughout the United States.

98. The vehicles were used in a manner reasonably anticipated.

99. The vehicles were in a defective condition which rendered them unreasonably dangerous when put to their reasonably anticipated use.

100. Plaintiffs and/or Decedents were damaged as a direct result of the aforementioned defective conditions which existed when Defendant sold the vehicles.

101. The vehicles were unreasonably dangerous when put to a reasonably anticipated use without knowledge of its defective characteristics and Plaintiffs were damaged as a direct result of the product being sold without a warning.

**COUNT IV**

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

**NEGLIGNCE**

102. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

103. Defendant had a duty to exercise reasonable care in the manufacture, design, sale, distribution, supply, marketing, inspection, testing and placement of its products, including a duty to ensure that its products did not pose a risk of bodily harm. Defendant owed Plaintiffs a duty to provide thorough notice of known safety defects, including a warning that the defective vehicles should not be driven until repaired. Defendant also owed Plaintiffs a duty to ensure that an appropriate repair procedure was developed and implemented.

104. Defendant owed a duty to Plaintiffs not to engage in fraudulent or deceptive conduct, including the knowing omission of material information such as the defect.

**COUNT V**

**BREACH OF EXPRESS AND/OR IMPLIED WARRANTY**

105. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

106. Old GM and GM impliedly warranted to Plaintiffs that its Defective Vehicles were "merchantable"; however, the Defective Vehicles do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

107. The Defective Vehicles would not pass without objection in the automotive trade because of the ignition switch defects that cause the

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

Defective Vehicles to inadvertently shut down during ordinary driving conditions, leading to an unreasonable likelihood of accident and an unreasonable likelihood that such accidents would cause serious bodily harm or death to vehicle occupants.

108. Because of the ignition switch defects, the Defective Vehicles are not safe to drive and thus not fit for ordinary purposes.

109. The Defective Vehicles are not adequately labeled because the labeling fails to disclose the ignition switch defects and does not advise to avoid attaching anything to their vehicle key rings. Old GM and GM failed to warn about the dangerous safety defects in the Defective Vehicles.

110. GM breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing defects leading to the sudden and unintended shut down of the vehicles during ordinary driving conditions. These defects have deprived Plaintiffs of the benefit of their bargain and have caused the Defective Vehicles to depreciate in value.

111. As a direct and proximate result of GM's breach of its duties Plaintiffs received goods whose dangerous condition substantially impairs their value and have been damaged by the diminished value of GM's products, the products' malfunctioning, and the nonuse of their Defective Vehicles.

**COUNT VI**

**NEGLIGENT MISREPRESENTATION AND/OR FRAUDULENT MISREPRESENTATION OR FRAUD**

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

112. **Plaintiffs incorporate by reference all the preceeding paragraphs.**

113. **Defendant represented that its product was safe for its intended use.**

114. **Defendant's representations were untrue.**

115. **Defendant had actual knowledge or should have had such knowledge that their products created an unreasonable risk of harm to the Plaintiffs.**

116. **Defendant negligently or and/or intentionally misrepresented or omitted this information in its labeling, promotions and advertisements and instead advertised its products as safe in order to avoid losses and sustain profits and such actions were willful, wanton and malicious.**

117. **As a direct result, Plaintiffs have sustained personal injury, economic and non-economic damages and death.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment against GM and in favor of Plaintiffs, and grant the following relief:

A. Award Plaintiffs actual compensatory damages, or, in the alternative, statutory damages, as proven at trial;

B. Award Plaintiffs exemplary damages in such amount as proven;

C. Award Plaintiffs their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest; and

D. Award Plaintiffs such other further and different relief as the case may require or as determined to be just, equitable, and proper by this Court.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on the legal claims, as set forth herein.

Electronically Filed - City of St. Louis - May 23, 2014 - 03:44 PM

DEFEO & KOLKER, LLC

Daniel T. DeFeo MO #35161
770 Bonhomme
Suite 350
St. Louis, MO 63105
Facsimile: (660)259-9809
ddefeo@defeolaw.com

and

Steven Stolze #39795
Holland Groves Schneller and Stolze
300 North Tucker, Suite 801
St. Louis, MO 63101
Telephone: (314) 640-7550

stevenstolze@yahoo.com

and

The Penton Law Firm
Ronnie G. Penton, *pro hac vice*
209 Hoppen Place
Bogalusa, LA 70427
Telephone: (985) 732-5651
Facsimile: (985) 735-5579
rgp@rgplaw.com

and

Frederick Kuykendall, III, pro hac vice
23937 US Highway 98, Suite 3
Fairhope, Alabama 36532
251-928-4008
rfkuykendall@yahoo.com

and

Craig Hiborn, pro hac vice
999 Haynes St. Suite 205
Birmingham, MI 48009
248-642-8350
Craig@hibornlaw.com

***Attorneys for Plaintiff***