## SCHEDULE "2"

## SAMPLE ALLEGATIONS/CAUSES OF ACTION
## IN IGNITION SWITCH COMPLAINTS[1]

| Lead Plaintiff | Allegations |
|---|---|
| Andrews | "GM enticed Plaintiff and all GM vehicle purchasers to buy vehicles that have now diminished in value as the truth about the GM brand has come out, and a stigma has attached to all GM-branded vehicles." Compl., ¶ 3. |
| | Allegations regarding defects in numerous vehicles manufactured by Old GM. *See, e.g.*, Compl., ¶¶ 17-21, 86, 97, 111, 131, 143. |
| | The purported class of plaintiffs appears to include all owners of GM vehicles (whether manufactured by Old GM or New GM) that purchased their vehicles between July 10, 2009 and April 1, 2014. Compl., ¶ 25.[2] |
| | "GM inherited from Old GM a company that valued cost-cutting over safety, actively discouraged its personnel from taking a 'hard line' on safety issues, avoided using 'hot' words like 'stall' that might attract the attention of NHTSA and suggest that a recall was required, and trained its employees to avoid the use of words such as 'defect' or 'problem' that might flag the existence of a safety issue. GM did nothing to change these practices." Compl., ¶ 59. |
| | "In April 2006, the GM design engineer who was responsible for the ignition switch in the recalled vehicles, Design Research Engineer Ray DeGiorgio, authorized part supplier Delphi to implement changes to fix the ignition switch defect. [footnote omitted] The design change 'was implemented to increase torque performance in the switch.' [footnote omitted] However, testing showed that, even with the proposed change, the performance of the ignition switch was still below original specifications. [footnote omitted] *Yet no recall occurred.*" Compl., ¶ 76 (emphasis in original). |
| | "Modified ignition switches – with greater torque – started to be installed in 2007 model/year vehicles." Compl., ¶ 77. |
| | "In June 2008, Old GM noticed increased warranty claims for airbag service on certain of its vehicles and determined it was due to increased resistance in airbag wiring. After analysis of the tin connectors in September 2008, Old GM determined that corrosion and wear to the connectors was causing the increased resistance in the airbag wiring. It released a technical service bulletin on November 25, 2008, for 2008-2009 Buick |

---

[1] Due to space limitations, this chart contains only a ***sample*** of statements, allegations and/or causes of action contained in the complaints filed in the Economic Loss Actions. This chart does ***not*** contain ***all*** statements, allegations and/or causes of action that New GM believes violates the provisions of the Court's Sale Order and Injunction and the MSPA.

[2] Excluded from the class are "owners and lessors of model year 2005-2010 Chevrolet Cobalts, 2005-2011 Chevrolet HHRs, 2007-2010 Pontiac G5s, 2003-2007 Saturn Ions, and 2007-2010 Saturn Skys, whose vehicles were recalled for an ignition switch defect." *Andrews* Compl., ¶ 25.

| | |
|---|---|
| | Enclaves, 2009 Chevy Traverse, 2008-2009 GMC Acadia, and 2008-2009 Saturn Outlook models, instructing dealers to repair the defect by using Nyogel grease, securing the connectors, and adding slack to the line. Old GM also began the transition back to gold-plated terminals in certain vehicles. At that point, Old GM suspended all investigation into the defective airbag wiring and took no further action." Compl., ¶ 101.<br><br>"On December 4, 2008, Old GM issued a TSB recommending the application of dielectric grease to the BCM C2 connector for the MY 2005-2009, Pontiac G6, 2004-2007 Chevrolet Malibu/Malibu Maxx and 2008 Malibu Classic and 2007-2009 Saturn Aura vehicles." Compl., ¶ 119.<br><br>A class question is "[w]hether GM misrepresented to Affected Vehicle purchasers that GM vehicles are safe, reliable, and of high quality[.]" Compl., ¶ 232(c).<br><br>"Had they been aware of the many defects that existed in GM-branded vehicles, the Company's disregard for safety, Plaintiff either would have paid less for her vehicle or would not have purchased it at all." Compl., ¶ 248.<br><br>"From the date of its inception on July 10, 2009, GM knew of many serious defects affecting many models and years of GM-branded vehicles, both because of the knowledge of Old GM personnel who remained at GM and continuous reports, investigations, and notifications from regulatory authorities. GM became aware of other serious defects years ago, but concealed all of them until recently." Compl., ¶ 261. |
| Jones | "This case arises out of General Motors ('GM') and its predecessor's [footnote omitted] failure to disclose and lengthy concealment of a known defect affecting the Electronic Power Steering ('EPS') system of over 1.3 million vehicles and compromising the safety and integrity of those vehicles." Compl., ¶ 1.<br><br>"From 2004 until March of 2014, GM concealed and did not fix the serious quality and safety problems affecting the Defective Vehicles." Compl., ¶ 7.<br><br>"From at least 2004 to the present both Old GM and GM received reports of crashes and injuries that put GM on notice of the serious safety issues presented by its EPS system." Compl., ¶ 9.<br><br>"The applicability of the bar on successor liability claims against GM for the acts and omissions of Old GM prior to the Sale Order is an issue that is currently pending in Bankruptcy Court in the Southern District of New York. To the extent permitted by the Bankruptcy Court, Plaintiff herein will seek leave of this Court to amend the complaint to add successor liability claims against GM for the acts and omissions of Old GM." Compl., p. 5 n.6.<br><br>Paragraph 64 of the Complaint references alleged "training materials" from 2008.<br><br>"Over 1.2 million vehicles sold by Old GM and later GM between 2003 and 2010 had defective wiring harnesses." Compl., ¶ 70.<br><br>Paragraphs 72 and 73 concern events that occurred between June 2008 and September 2008. |

|  | |
|---|---|
|  | The purported Class is defined as following: "During the fullest period allowed by law, all persons in the United States who own or lease, or who sold after March 1, 2014, one or more of the following GM vehicles: 2005-2006, 2007-2010 Pontiac G6; 2004-2006, 2008-2009 Chevy Malibu; 2004-2006 Chevy Malibu Max; 2009-2010 Chevy HHR; 2008-2009 Saturn Aura."  Compl., ¶ 99. |
|  | Plaintiff alleges that a Class question is "[w]hether the Defective Vehicles suffer from EPS system defects." Compl., ¶ 106(A). |
| Stevenson | Named Plaintiff "purchased a 2007 Saturn Ion on or around November 2007, in Bakersfield, California."  Compl., ¶ 17. |
|  | "Plaintiff and Class members' vehicles are worth less than they would be without the defects. A vehicle purchased, leased, or retained with serious safety defects is worth less than the equivalent vehicle leased, purchased, or retained without the defect." Compl., ¶ 58. |
|  | "A vehicle purchased, leased, or retained under the reasonable assumption that it is safe is worth more than a vehicle known to be subject to the unreasonable risk of accident because of the EPS defects." Compl., ¶ 59. |
|  | Allegations discussing Old GM conduct are contained in various paragraphs including, without limitation, paragraphs 65, 72 to 74. |
|  | "Old GM impliedly warranted to Plaintiff and Class members that its Defective Vehicles were 'merchantable' within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792 . . . ." Compl., ¶ 180. |
|  | "Old GM breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing defects leading to the potential safety issues during ordinary driving conditions."  Compl., ¶ 185. |
| Yagman | "Plaintiff is an owner of a 2007 Buick Lucerne."  Compl., ¶ 5. |
|  | "Plaintiff now is an owner of a defective vehicle. Defendant GM manufactured a defective vehicle.  Defendant GM sold a defective vehicle. Defendant GM knew the vehicle was defective at the time it was put into the stream of commerce for sale and was sold."  Compl., ¶¶ 11-14. |
|  | "[D]efendants and each of them violated the warranty of merchantability and thereby damaged plaintiff."  Compl., ¶ 16. |
|  | "[D]efendants violated the warranty of fitness for a particular use of their product.' Compl., ¶ 17 |