# Exhibit G

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| OLD CARCO LLC | : | Case No. 09-50002 (AJG) |
| f/k/a CHRYSLER LLC, *et al.*, | : | Confirmed Cases |
| Debtors. | : |  |
| DANIEL TULACRO, | : |  |
| Plaintiff, | : |  |
| v. | : | Adv. No. 11-09401 (AJG) |
| CHRYSLER GROUP LLC, *et al.*, | : |  |
| Defendants. | : |  |

OPINION REGARDING DEFENDANT CHRYSLER GROUP LLC'S
MOTION TO DISMISS THE AMENDED COMPLAINT

On July 29, 2011, Chrysler Group LLC ("Chrysler Group"), the purchaser of substantially all of the assets of Old Carco LLC (f/k/a Chrysler LLC) and its affiliated debtors (collectively, the "Debtors"), filed a motion (the "Motion") seeking entry of an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated into bankruptcy practice by Rule 7012 of the Federal Rules of Bankruptcy Procedure, dismissing this adversary proceeding with prejudice. The plaintiff, Daniel Tulacro (the "Plaintiff"), opposed the Motion. On September 22, 2011, the Court held a hearing (the "Hearing") on the Motion.

In the amended complaint filed in the adversary proceeding, the Plaintiff asserts several claims against Chrysler Group under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq*. (the "Song-Beverly Act"), based upon a failure to repair certain alleged defects in Plaintiff's 2003 Dodge vehicle (the "Vehicle") which was manufactured by the

Debtors and purchased (as a "used" vehicle) by Plaintiff in 2006.

In the Motion, Chrysler Group seeks dismissal of the Amended Complaint, arguing that the Plaintiff's claims are barred by the Court's June 1, 2009 order (the "Sale Order") approving the sale of substantially all of the Debtors' assets to Chrysler Group, free and clear of all claims other than liabilities expressly assumed by the Chrysler Group, pursuant to Section 363 of title 11 of the United States Code (the "Bankruptcy Code"). The Sale Order authorized the Debtors to enter into a Master Transaction Agreement, dated April 30, 2009 (as subsequently amended, the "MTA") with the Chrysler Group. The closing of the sale of the Debtors' assets to the Chrysler Group was on June 10, 2009 (the "Closing Date").

The Chrysler Group maintains that the claims asserted by the Plaintiff are not within the scope of those claims that it assumed under the Sale Order. Specifically, the Chrysler Group argues that the Song-Beverly Act is a "lemon law" and that the Sale Order expressly delineated those lemon-law liabilities that the Chrysler Group would assume. The Chrysler Group argues that, pursuant to Paragraph 19 of the Sale Order, it only assumed lemon-law liabilities for vehicles manufactured by the Debtors in the five years prior to the Closing Date. The Chrysler Group contends that, as a result, the Plaintiff's claims relating to the Vehicle, which was manufactured by the Debtors prior to June 10, 2004, was not within the ambit of the lemon-law liabilities that the Chrysler Group assumed because it only assumed lemon-law liabilities for vehicles manufactured after that date.

Each side argues that the plain meaning of the Sale Order and the MTA support their respective positions. The Plaintiff relies primarily on Section 2.08(g) of the MTA. The Chrysler Group argues that Section 2.08(g) of the MTA must be read in the context of all of the

provisions of the MTA, as well as of the Sale Order, which provides that if the terms of the MTA and Sale Order conflict, the Sale Order controls.

*DISCUSSION*

The Court has reviewed and considered the relevant documents, the parties' submissions and the parties' arguments at the Hearing, and has determined that liability based upon the Song-Beverly Act was not assumed by the Chrysler Group with respect to any vehicles manufactured prior to June 10, 2004. Inasmuch as the Plaintiff's Vehicle was manufactured prior to that date, Chrysler Group did not assume any such liability with respect to the Vehicle.

Although Section 2.08(g)[1] of the MTA includes "Liabilities pursuant to product warranties" under the heading of liabilities that the Chrysler Group assumed, that section must be read in the context of the entire agreement, together with the controlling Sale Order.

The Sale Order indicates that its terms control if in conflict with the MTA. Moreover, Paragraph 19 of the Sale Order[2] specifically addresses lemon-law claims. This specific provision contains a limitation based upon date of manufacture. Therefore, this "more specific and authoritative provision" of the Sale Order would control over a general provision in the MTA.

---

[1] Section 2.08(g) of the MTA provides that Chrysler Group's Assumed Liabilities include "Liabilities pursuant to product warranties . . . on vehicles sold by [the Debtors] prior to the Closing."

[2] Paragraph 19 of the Sale Order provides, in relevant part, as follows:
Notwithstanding anything else contained herein or in the Purchase Agreement, in connection with the purchase of the Debtors' brands and related Purchased Assets, the Purchaser, from and after the Closing, will recognize, honor and pay liabilities under Lemon Laws for additional repairs, refunds, partial refunds (monetary damages) or replacement of a defective vehicle (including reasonable attorneys' fees, if any, required to be paid under such Lemon Laws and necessarily incurred in obtaining those remedies), and for any regulatory obligations under such Lemon Laws arising now, including but not limited to cases resolved prepetition or in the future, on vehicles manufactured by the Debtors in the five years prior to the Closing (without extending any statute of limitations provided under such Lemon Laws), but in any event not including punitive, exemplary, special, consequential or multiple damages or penalties and not including any claims for personal injury or other consequential damages that may be asserted in relationship to such vehicles under the Lemon Laws.

3

*See Wolff v. Chrysler Group LLC*, Adv. Proc. No. 10-05007 (AJG) at 20.

       In Paragraph 19 of the Sale Order, a lemon law is defined to mean

> a federal or state statute, including, but not limited to, claims under the Magnuson-Moss Warranty Act based on or in conjunction with a state breach of warranty claim, requiring a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty after a reasonable number of attempts as defined in the applicable statute.

In addition, Paragraph 19 specifically contemplates that monetary damages may be one of the consumer remedies for failure to conform a vehicle to the warranty. Thus, the Plaintiff's claims premised on the Song-Beverly Act are lemon-law claims.

       Moreover, reading Section 2.08(g) to include all lemon-law liabilities would have eliminated the requirement for the specific assumption, pursuant to Sale Order Paragraph 19, of certain lemon-law claims because those claims already would have been assumed under Section 2.08. Thus, such a reading would render Paragraph 19 of the Sale Order superfluous.

       Further, Paragraph 19 of the Sale Order includes claims that might arise in the future and, therefore, is the exclusive source of Chrysler Group's potential liabilities under lemon laws for claims relating to vehicles manufactured by the Debtors, whether the claims arose before or after the Closing.

       Similarly, even with respect to breach of warranty claims that may arguably not rely on lemon laws, the more specific and authoritative section concerning consumer actions related to warranty claims, *i.e.*, breach of warranty claims, would be section 2.08(h) of the MTA which provides that the Chrysler Group's Assumed Liabilities include

4

(h)(i) all Product Liability Claims[3] arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by the [Debtors] . . . solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

Prior to its amendment, which added subdivision (ii) to the provision, Section 2.08(h) only provided for the assumption by the Chrysler Group of those Product Warranty Claims related to products sold after the Closing Date.[4] Thus, the amendment to Section 2.08(h), added to the breach of warranty claims assumed by the Chrysler Group, certain types of accident claims with respect to products sold prior to the Closing Date, but only if the claims came within the parameters set forth in subdivision (ii). At the same time that Section 2.08(h) was amended, Section 2.09(i), which described liabilities that were excluded from assumption by the Chrysler Group, was also amended to add conforming language.[5]

---

[3]"Product Liability Claims" - the term used for Sections 2.08(h) and 2.09(i) of the MTA, but not Section 2.09(g) - is defined, in relevant part, in the MTA to include
> any Action or action taken . . . by a customer arising out of, or otherwise relating to in any way in respect of claims for . . . any other warranty claims, refunds, . . . defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items . . . sold . . . . by the [Debtors], whether such claims or causes of action are known or unknown or asserted or unasserted.

[4]Product Warranty Claims related to products sold *before* the Closing Date were retained by the Debtors to be dealt with in the context of their bankruptcy cases. Although currently there is no guaranty that there will be a distribution to the unsecured creditors in the bankruptcy cases, nonetheless, any liability that was not assumed by the Chrysler Group remained with the Debtors.

[5] As amended, Section 2.09(i) of the MTA provides that excluded from liabilities assumed by the Chrysler Group are
> all Product Liability Claims arising from the sale of Products or Inventory on or prior to the Closing that are not described in Section 2.08(h).

5

To give effect to all provisions of the MTA and Sale Order, and to render them consistent, the Court agrees with the Chrysler Group's assessment to the effect that

> Reading Paragraph 19 of the Sale Order and Sections 2.08(g), 2.08(h) and 2.09(i) of the MTA together and in context, it is clear that the proper construction of those provisions is that Chrysler Group assumed the Lemon Law claims defined by Paragraph 19 and the specific claims defined by Section 2.08(h), but, as made clear by the express liability exclusion set forth in Section 2.09(i), Chrysler Group did not assume any other claims for breach of [a Debtor] warranty relating to a vehicle manufactured before the Closing Date. Under Section 2.08(g), therefore, Chrysler Group assumed other warranty-related obligations, such as to pay for repairs under [Debtor] product warranties, but did not assume liability for breach-of-warranty claims. In other words, because the plain language of Section 2.09(i) of the MTA unambiguously bars claims for breach of [Debtor] product warranties, in order to give meaning to all terms of the MTA, Section 2.08(g) must be interpreted to encompass only the obligations of [Debtor] under its written limited warranty to "Cover the cost of all parts and Labor needed to repair . . ." (footnote and citation omitted).

Thus, the types of warranty-related obligations that the Chrysler Group assumed under Section 2.08(g) of the MTA were set forth in the limited written warranty issued in connection with the Vehicle, where the Debtors were obligated to "cover the cost of all parts and labor needed to repair any defective item on [a] truck supplied by [the Debtors] that is defective in material, workmanship or factory preparation." The obligations that the Chrysler Group assumed under that section were limited to those repair costs. As specified in Section 2.09(i) of the MTA, the Chrysler Group did not assume any other breach of warranty claims for vehicles sold prior to the Closing Date, except for the narrow exception set forth in Section 2.08(h)(ii) and the lemon-law carve out in Paragraph 19 of the Sale Order.

This is consistent with the entire structure of the MTA, which was initially crafted to allocate Product Liability Claims between the Debtor and the Chrysler Group for vehicles manufactured by the Debtors based upon whether those vehicles were sold to customers prior to

or after the Closing Date. As previously noted, Section 2.08(h), initially included in the listing of liabilities that were assumed by the Chrysler Group "all Product Liability Claims arising from the sale after the Closing [Date] of Products or Inventory manufactured by [the Debtors] . . . prior to the Closing [Date]," and Section 209(i), included in the list of liabilities that were excluded from assumption "all Product Liability Claims arising from the sale of Products or Inventory prior to the Closing [Date]." Although Sections 2.08(h) and 209(i) were subsequently amended to provide for a limited exception to this structure for accident claims that met certain criteria, the limited exception does not apply to Plaintiff's claims. In addition, the exception for certain lemon-law claims, which was added by Paragraph 19 of the Sale Order does not apply.

Reconciling the relevant sections of the MTA and Paragraph 19 of the Sale Order in the manner advocated by the Chrysler Group is further supported by the negotiations that led to the addition of Paragraph 19 to the Sale Order. In that regard, because the combined effect of Sections 2.08(g) and 2.09(i) of the MTA was to deprive consumers of a remedy for a breach of a warranty, the Ad Hoc Committee Seeking Fairness for Warranty and Lemon Law claimants (the "Ad Hoc Committee") filed an objection to the proposed sale. The compromise reached was to add Paragraph 19, which carved out the specific exception to the broad exclusion of Section 2.09(i). Upon the addition of that provision to the Sale Order, the Ad Hoc Committee withdrew its objection.

*CONCLUSION*

Pursuant to Paragraph 19 of the Sale Order, Chrysler Group's assumption of lemon-law claims applies only with respect to vehicles manufactured by the Debtors in the five years before the Closing Date. The Plaintiff's Vehicle was manufactured more than five years prior to the

7

Closing Date and, therefore, the Sale Order bars the Plaintiff's claims.

Similarly, for any breach of warranty claims that arguably do not come within the ambit of Paragraph 19 of the Sale Order, Sections 2.08(h) and 2.9(i) of the MTA set forth the breadth of Product Liability Claims (breach of warranty claims) assumed by the Chrysler Group. As the Plaintiff's asserts a breach of warranty claim for a Vehicle sold prior to the Closing Date and it does not meet the criteria set forth in Section 2.08(h) for breach of warranty claims on such vehicles assumed by the Debtors, the Plaintiff's claim is barred by the MTA and Sale Order.

Based upon the record of the Hearing, and all prior pleadings, papers, and proceedings had herein relating to the relief requested in the Motion; and due and proper notice of the Motion having been provided; the Court concludes that the claims that the Plaintiff asserts in the amended complaint are barred by the Sale Order and, therefore, the Plaintiff's claims against Chrysler Group are dismissed with prejudice.

The Chrysler Group is to settle an Order.

Dated: New York, New York
October 28, 2011

/s/ *Arthur J. Gonzalez*
CHIEF UNITED STATES BANKRUPTCY JUDGE