```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re                                                          :    Chapter 11
                                                               :
MOTORS LIQUIDATION COMPANY, et al.,                            :    Case No.: 09-50026 (REG)
     f/k/a General Motors Corp., et al.                        :
                                                               :
                                   Debtors.                    :    (Jointly Administered)
---------------------------------------------------------------x
```

DECISION WITH RESPECT TO NO STAY
PLEADING AND RELATED MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION (ELLIOTT PLAINTIFFS)[1]

APPEARANCES:

KING & SPALDING LLP
*Attorneys for General Motors LLC*
1185 Avenue of the Americas
New York, New York 10036
By:   Arthur J. Steinberg, Esq. (argued)
      Scott I. Davidson, Esq.

KIRKLAND & ELLIS LLP
*Attorneys for General Motors LLC*
300 North LaSalle
Chicago, Illinois 60654
By:   Richard C. Godfrey, Esq.
      Andrew B. Bloomer, Esq.

GARY PELLER
*Attorney for Lawrence and Celestine Elliott*
600 New Jersey Avenue, NW
Washington, DC  20001
By:   Gary Peller, Esq. (argued)

---

[1] This written decision memorializes and amplifies on the oral decision that I issued after the close of oral argument at the hearing on this matter on August 5, 2014.  Because it had its origins in the originally dictated decision, it has a more conversational tone.

-1-

TALOS LAW
*Attorneys for Lawrence and Celestine Elliott*
705 4th Street NW #403
Washington DC  20001
By:    Daniel Hornal, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Once again, a plaintiff group wishing to proceed ahead of all of the others (only one week after I issued the written opinion memorializing my earlier oral ruling proscribing such an effort)[2] has asked for leave to go it alone.  Its request is denied.  With a single exception, the issues raised by this group (the "**Elliott Plaintiffs**") don't differ from those addressed in *Phaneuf.*  And as to that single exception—their claim that I don't have subject matter jurisdiction to construe and enforce the Sale Order in this case[3]— their contention is frivolous, disregarding controlling decisions of the United States Supreme Court[4] and Second Circuit;[5] district court authority in this District;[6] four

---

[2]   *In re Motors Liquidation Company*,  --- B.R. ----, 2014 Bankr. LEXIS 3239, 2014 WL 3747338 (Bankr. S.D.N.Y. Jul. 30, 2014) ("*Phaneuf*"), incorporated here by reference.

[3]   Defined terms are as used in *Phaneuf.*

[4]   *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (U.S. 2009)  ("*Travelers*") ("the only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order.  The answer here is easy:  as the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders").

[5]   *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir.2002) ("*Petrie Retail*") ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.  The plan consummation motion was filed in response to Luan's demand for excluded liabilities and sought enforcement of the injunction provisions outlined in the sale order, plan of reorganization, and confirmation order.  Therefore, the dispute between Luan and Marianne involved interpretation of the bankruptcy court's orders.  The bankruptcy court thus had jurisdiction over the plan consummation motion and, specifically, had jurisdiction to consider whether Luan was seeking excluded liabilities and, if so, to enforce the injunction provisions of its orders.") (citations omitted); *Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 97 (2d Cir. 2005) ("***Millenium Seacarriers***") ("Bankruptcy courts retain jurisdiction to enforce and interpret their own orders." (citing *Petrie Retail*)).

[6]   *Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013) (Marrero, J.) ("***Lothian-Cassidy***") ("'Arising in' claims may include '[m]atters involving the enforcement or construction of a bankruptcy court order . . . .'").

earlier decisions that I personally have issued;[7] three decisions by other bankruptcy judges in the Southern District of New York,[8] and the leading treatise in the area, *Collier*.[9] The Elliott Plaintiffs' motion to dismiss for lack of subject matter jurisdiction thus likewise is denied.

## Discussion

Given the ease of these issues, and my earlier discussion in *Phaneuf* (incorporated into this decision by reference), this discussion will be brief.

---

[7] *See Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.)*, 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003) ("**Sterling Optical**") ("Matters involving the enforcement or construction of a bankruptcy court order are in [the 'arising in'] category."); *NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.)*, 317 B.R. 260, 272 (Bankr. S.D.N.Y. 2004) ("**Ames Department Stores**") ("As in *Petrie Retail* and *Millenium Seacarriers*, this Court has subject matter jurisdiction to enforce its orders not only because they were entered in proceedings in a case under title 11 . . . with respect to which it undoubtedly had subject matter jurisdiction, but also by reason of the power granted to any federal court to enforce its own orders.") (citation omitted); *In re Motors Liquidation Co.*, 457 B.R. 276, 287 (Bankr. S.D.N.Y. 2011) ("**GM-UAW**") ("And it's well established, of course, that bankruptcy courts, like other federal courts, have the jurisdiction to enforce their earlier orders, even after confirmation."); *Trusky v. Gen. Motors Co. (In re Motors Liquidation Co.)*, 2013 Bankr. LEXIS 620, at *33, 2013 WL 620281, at *11 (Bankr. S.D.N.Y. Feb. 19, 2013) ("**GM-Trusky**") ("There is subject matter jurisdiction in this Court under the 'arising in' prong of 28 U.S.C. § 1334, for me to construe my Sale Order, though I have great difficulty in seeing how I'd have subject matter jurisdiction to decide anything else.").

[8] *In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009) (Drain, J.) ("**Portrait Corporation of America**") (determining not just that court had subject matter jurisdiction to "interpret and enforce" the sale order in that case; it was a core matter); *Moelis & Co., LLC v. Wilmington Trust FSB (In re Gen. Growth Props., Inc.)*, 460 B.R. 592, 598 (Bankr. S.D.N.Y. 2011) (Gropper, J.) ("**General Growth**") (determining not just that court had subject matter jurisdiction to interpret and enforce the sale order in that case; it was a core matter: The argument that the dispute did not "arise in" the Chapter 11 Cases was "wholly specious." The controversy "implicate[d] the 'enforcement or construction of a bankruptcy court order,' in this case the confirmation order. *A bankruptcy court always has jurisdiction to interpret its own orders*. It does not matter that the State Court Action is purportedly between two non-debtors, or that the Chapter 11 Cases have been confirmed.") (emphasis added) (citations omitted); *Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus.)*, 445 B.R. 243, 248 (Bankr. S.D.N.Y. 2011) (Bernstein, C.J.) ("**Grumman Olson**") ("In addition, Morgan's request for declaratory and injunctive relief asks the Court to interpret and enforce the Sale Order by enjoining the Fredericos from proceeding with their successor liability claims. The presence of these two factors renders the dispute core. . . . [T]he Court has subject matter jurisdiction to interpret and enforce the Sale Order.") (citations omitted).

[9] *See 10 Collier* ¶ 7087.01 (discussing *GM-Trusky*, noting that while the bankruptcy court's subject matter jurisdiction over the underlying merits of a contract dispute between New GM and the UAW was debatable, construction of the Sale Order was a matter over which the bankruptcy court had "unquestioned subject matter jurisdiction" under the "arising in" prong of 28 U.S.C. § 1334).

I.

Subject Matter Jurisdiction[10]

In addition to contending that they should be allowed to proceed on their own because the Sale Order should not be deemed to apply to them, the Elliott Plaintiffs contend that I lack subject matter jurisdiction to enforce the Sale Order. They say "[b]ecause New GM's claims are not 'related to' any proceedings before this Court, this Court lacks jurisdiction to stay their lawsuit or to restrict the Elliotts in any way . . . ."[11]

I disagree. Their argument misses the point. "Related to" jurisdiction has nothing to do with the issues here. Bankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' "*arising in*" jurisdiction.[12] The nearly a dozen cases cited above expressly so hold.

---

[10]  Though the argument comes second in the Elliott Plaintiff's brief, I consider it as a threshold issue. *See, e.g.*, *Millenium Seacarriers, Inc. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 2004 WL 63501, at *4 (S.D.N.Y. 2004) (Patterson, J.) ("***Millenium Seacarriers (S.D.N.Y.)***") ("When a court's jurisdiction is challenged, the court has an obligation to resolve that issue before proceeding to the other issues in a proceeding."), *aff'd*, *Millenium Seacarriers*, n.5 above; *Ames Department Stores*, 317 B.R. at 268 & n.29 (same, quoting *Millenium Seacarriers (S.D.N.Y.)*).

[11]  Elliott Pls.' Br. at 5.

[12]  *See* page 5 below. For this reason, I found the Elliott Plaintiffs' reference to *Johns-Manville* puzzling. *See* Elliott Pls.' Br. at 28, 32, 33 (citing *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52 (2d Cir. 2008) ("*Johns-Manville*"), *rev'd and remanded sub nom. Travelers*, *see* n.4 above. Preliminarily, the Elliott Plaintiffs twice cited *Johns-Manville* for its asserted relevance to "related to" jurisdiction, which is not the question here. And the controversy in *Johns-Manville* didn't deal with a Bankruptcy court's subject matter jurisdiction to construe and enforce its own orders; in fact the *Johns-Manville* court assumed that a Bankruptcy court had jurisdiction to interpret and enforce its own orders, *Johns-Manville* at 60–61 ("It is undisputed that the bankruptcy court had continuing jurisdiction to interpret and enforce its own 1986 orders."). And though the Supreme Court in *Travelers* reversed the Second Circuit's order for other reasons, it agreed with the Second Circuit in that respect. *See* n.4 above. While *Johns-Manville* may be argued to be relevant in proceedings hereafter to determine whether or not the language of the Sale Order is determinative, it does not deprive me of subject matter jurisdiction to construe and enforce my earlier order now.

As explained in many of those cases,[13] section 1334 of the Judicial Code, 28 U.S.C. § 1334—which immediately follows the provisions covering subject matter jurisdiction in federal question, diversity, and admiralty cases, 28 U.S.C. §§ 1331, 1332 and 1333, respectively—addresses the subject matter of the district courts (and hence the bankruptcy courts) with respect to the exercise of their bankruptcy jurisdiction. After providing, in its subsection "(a)," that the district courts have jurisdiction (and, indeed, exclusive jurisdiction) over *cases* under title 11 (a matter not relevant here), § 1334 provides, in relevant part, with respect to bankruptcy *proceedings* (which include the contested matter and adversary proceeding that are before me here):

> (b) . . . . the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The three types of jurisdiction that district (and hence bankruptcy) courts may exercise are thus those colloquially referred to as (1) "arising under";[14] (2) "arising in"; and (3) "related to" jurisdiction.[15] The second of these—"arising in"—focuses on whether the claim would have no existence outside of bankruptcy.[16] "Matters involving the enforcement or construction of a bankruptcy court order are in this category."[17]

---

[13] *See, e.g.*, *Sterling Optical*, 302 B.R. at 800–02; *Ames Department Stores*, 317 B.R. at 268–69. *See also ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Commc'ns Corp.)*, 285 B.R. 127, 136–37 (Bankr. S.D.N.Y. 2002) (Gerber, J.) ("***Adelphia***").

[14] This is analytically the same as "federal question" jurisdiction, but the claim must arise under title 11, as contrasted to any other title or provision, of the U.S. Code. It is not relevant here.

[15] *See, e.g.*, *Ames Dept. Stores*, 317 B.R. at 269.

[16] *See Sterling Optical*, 302 B.R. at 801.

[17] *Id. Accord Lothian-Cassidy*, 487 B.R. at 162 ("'Arising in' claims may include '[m]atters involving the enforcement or construction of a bankruptcy court order . . .'").

As in *Ames Department Stores*,[18] the Elliott Plaintiffs make their subject matter jurisdiction contentions on the premise that the outcome of the sale order interpretation would have no effect on the debtor's estate.[19] But even assuming such is true (though I am not sure that it is, since if New GM is not liable for an otherwise enforceable obligation, that increases the likelihood that Old GM would be), it misses the point. Effect on the estate is the standard for "related to" jurisdiction,[20] not "arising in."[21] The bankruptcy court's subject matter jurisdiction when it comes to construing or enforcing

---

[18] *See* n.22 below.

[19] *See* Elliott Pls.' Br. at 5 ("Because their claims are not 'related to' any proceedings before this Court, this Court lacks jurisdiction to stay their lawsuit or to restrict the Elliotts in any way . . . ."); *id.* at 31 ("The technical jurisdiction issue presented is whether the Elliotts' claims against New GM 'relate to' any proceeding properly before the Court . . . ."); *id.* at 32 ("The Second Circuit has . . . made clear that this Court's 'related to' jurisdiction is limited to power over litigants in proceedings *only* when the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy" (emphasis in original) (citing *Cuyahoga Equipment*, n.21 below)). In the portion of their brief beginning at page 31 (captioned "The Elliotts Claims Do Not 'Relate to' Any Proceeding Before the Court"), the Elliott Plaintiffs continue in conclusory terms, after stating the issue to be whether their claims against New GM "'relate to' any proceeding properly before the Court," "that their claims themselves assuredly do not 'arise in' the proceedings that Old GM initiated." *Id.* That conclusory assertion is the only place in their brief where "arising in" jurisdiction is mentioned, and—apart from misstating how "arising in" jurisdiction is analyzed—it is made without any explanation or, especially, authority.

[20] *See, e.g.*, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984); *Publicker Industries Inc. v. United States (In re Cuyahoga Equipment Corp.)*, 980 F.2d 110, 113–15 (2d Cir.1992).

[21] As I held in *GM-Trusky*:

> The Trusky Plaintiffs' claims, arising under state law, don't arise under title 11 (the Bankruptcy Code), and as they're asserted against New GM, not Old GM, it's difficult to see, under the *Pacor* and *Cuyahoga Equipment* tests applicable in this Circuit, . . . how they would have sufficient impact on Old GM or the administration of its chapter 11 case to be "related to" that case. But construction of my bankruptcy court Sale Order, which was entered in Old GM's chapter 11 case, and which would not have been entered, or necessary to construe, if there were no bankruptcy case, is a garden-variety example of a proceeding "arising in" a chapter 11 case.

2013 Bankr. LEXIS 620, at *33 n.7, 2013 WL 620281, at *11 n.7.

its earlier orders has wholly different underpinnings,[22] as review of any of the nearly dozen decisions cited above would have revealed.

Nor is it an answer for the Elliott Plaintiffs' to premise jurisdictional arguments on the conclusion they ultimately want me to reach—that upon construction of the Sale Order and the Sale Agreement, their claims would be permissible under each. That assumes the fact to be decided, in the proceedings the Elliott Plaintiffs wish to sidestep. Their argument conflates the conclusion I might reach after analysis of matters before me—that certain claims ultimately might not be covered by the Sale Order—with my jurisdiction to decide whether or not they are.[23]

The motion to dismiss for asserted lack of subject matter jurisdiction is denied.

## II.

### The No Stay Request

I then reach the issue that the plaintiffs in 86 other Ignition Switch actions did not bother to raise, and that I addressed in the only other exception, *Phaneuf*. The Elliott Plaintiffs have given me no greater reason to conclude that they should be a special case than the Phaneuf Plaintiffs did.

---

[22] *See, e.g.*, *Ames Dept. Stores*, 317 B.R. at 269 ("Eden Center premises its argument on the truism that at this juncture, with Ames having already effected its assignment, the outcome of this controversy will not have an economic or other effect on the Ames estate, as has traditionally been required in this Circuit and elsewhere, to invoke 'related to' jurisdiction. But Eden Center fails satisfactorily to recognize that subject matter jurisdiction here is not based on 'related to' jurisdiction. Rather, it exists by reason of 'arising in' jurisdiction, by reason of the Court's earlier orders in this case . . . , and the need to enforce them.").

[23] I considered a similar issue in *GM-Trusky*, where I exercised my "arising in" jurisdiction to construe the very same Sale Order that we have here, and then abstained with respect to the remainder of the controversy, sending it to the Eastern District of Michigan. *See* 2013 Bankr. LEXIS 620, at *33, 2013 WL 620281, at *11. Exercising jurisdiction to adjudicate issues (and hold other matters in abeyance pending that adjudication) does not preordain the latter's outcome. To the extent that Designated Counsel do not satisfactorily present arguments by the Elliott Plaintiffs and others that claims the latter wish to assert are not forbidden by the Sale Order, the Elliott Plaintiffs will be free to do so—but only pursuant to the orderly procedures that will apply to everyone.

Like *Phaneuf* plaintiffs Lisa Phaneuf, Adam Smith, and Catherine and Joseph Cabral, Elliott Plaintiffs Lawrence and Celestine Elliott purchased a car manufactured by Old GM—in this case, a 2006 Chevy Cobalt.[24]  The Sale Order provided, among other things, that except for the Assumed Liabilities expressly set forth in the Sale Agreement, New GM would not

> have any liability for any claim that arose prior to the Closing Date, *relates to the production of vehicles prior to the Closing Date,* or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date.[25]

On their face, the Elliott Plaintiffs' claims "relate[] to the production of vehicles prior to the Closing Date"—even assuming, without deciding, that the Elliott Plaintiffs do not also assert liability for a claim that "that arose prior to the Closing Date," or "otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date."

And while the Elliott Plaintiffs' brief disclaims reliance on Old GM acts, their complaint doesn't bear that out.  Though to a lesser degree than in *Phaneuf*, the Elliott Plaintiffs' complaint also relies on the conduct of Old GM in asserting claims against New GM, accusing Old GM of "unlawful concealment": "New GM acquired all the

---

[24]  It appears that the amended Elliotts' complaint includes the claims of an additional plaintiff, Berenice Summerville, who purchased a 2010 Chevy Cobalt in December 2009.  (Am. Comp. ¶ 5.)  Assuming that the facts bear this out, this additional plaintiff seemingly is in the same category as some of the Phaneuf Plaintiffs—those who purchased vehicles that conceivably could have been manufactured after the July 2009 363 Sale.  For the avoidance of doubt, I am not going to put this additional plaintiff in a different category than the Phaneuf Plaintiffs, or Lawrence and Celestine Elliott, as discussed below.

[25]  Sale Order ¶ 46 (emphasis added).

books, records and accounts of [Old GM], including records that document *the unlawful concealment of* defects in vehicles sold by Old GM prior to New GM's existence."[26]

As in *Phaneuf*, I find that the Elliott Plaintiffs are asserting claims with respect to vehicles that were manufactured before the 363 Sale, and, although to a lesser extent than in *Phaneuf*, relying on the conduct of Old GM. Thus I find as a fact, or mixed question of fact and law, that the threshold applicability of the Sale Order—and its injunctive provisions—has been established in the first instance.

And once again, even if the Sale Order did not apply in the first instance, a preliminary injunction would also be appropriate here, for the reasons discussed at length in *Phaneuf*, which I will not repeat at comparable length here—other than to say that the prejudice to all of the other litigants, and to the case management concerns I had with respect to the Phaneuf Plaintiffs, is just as much a matter of concern here.

As in *Phaneuf*, I will not allow the Elliott Plaintiffs to go it alone. The Elliott Plaintiffs' claims can be satisfactorily addressed—and will have to be addressed—as part of the coordinated proceedings otherwise pending before me.

## Conclusion

For the reasons set forth above and in *Phaneuf*, the relief requested in the Elliott Plaintiffs' No Stay Pleading (including their motion to dismiss for lack of subject matter jurisdiction) is denied. The Elliott Plaintiffs' claims will be treated the same as those in all of the other Ignition Switch Actions. The stay already imposed by the injunctive provisions of Paragraphs 8 and 47 of the Sale Order (and that the Court may also impose by preliminary injunction) will remain in place insofar as it affects the Elliott Plaintiffs'

---

[26] Am. Compl. ¶ 6 (emphasis added).

complaint—subject to the right, shared by all of the other plaintiffs in the Ignition Switch Actions, to ask that the Court revisit the issue after September 1.

Dated: New York, New York      *s/Robert E. Gerber*
        August 6, 2014                  United States Bankruptcy Judge