UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
In re :                                                                                              Chapter 11
MOTORS LIQUIDATION COMPANY,                                      Case No. 09-50026

Debtor.
-------------------------------------------------------------------------X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
IN RE:
GENERAL MOTORS LLC IGNITION SWITCH LITIGATION   District Court
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　14-MD-2543
*This Document Relates To All Actions*
-------------------------------------------------------------------------X

## MOTION FOR LEAVE TO APPEAL INTERLOCUTORY INJUNCTIVE ORDER OF THE BANKRUPTCY COURT

Pursuant to 28 U.S.C. § 158(a)(3), Lisa Phaneuf, Adam Smith, Mike Garcia, Javier Delacruz, Steve Sileo, Steven Bucci, David Padilla and Catherine and Joseph Cabral (collectively "Plaintiffs"), plaintiffs in *Phaneuf, et al. v. General Motors LLC*, 14-cv-3298 (S.D.N.Y.) respectfully ask the District Court for leave to appeal the Bankruptcy Court's August 4, 2014 Order Denying The Relief Requested By The Phaneuf Plaintiffs In Their No Stay Pleading (ECF No. 12811), which was based on the reasons set forth in the Bankruptcy Court's July 30, 2014 Decision With Respect To No Stay Pleading (Phaneuf Plaintiffs) (the "No Stay Decision") (ECF No. 12791).[1]

---

[1] Plaintiffs recognize that the Court will soon appoint a leadership structure to represent all plaintiffs in the MDL. Plaintiffs are filing this appeal in order to preserve their rights—and the rights of other post-bankruptcy purchasers—while the Court's leadership decision is pending. Once a leadership structure is appointed, Plaintiffs anticipate that lead counsel and the executive committee will assume responsibility for and decide whether to proceed with this appeal.

## I. INTRODUCTION

Plaintiffs seek leave to file an interlocutory appeal of an unconstitutional order by the Bankruptcy Court, which enjoined Plaintiffs' claims because of "case management concerns." The Bankruptcy Court's case management concerns are misplaced—and, in any event, cannot trump the United States Constitution.

Plaintiffs purchased[2] General Motors ("GM") vehicles affected by the ignition switch defect. All of the Plaintiffs purchased their vehicles after the 363 Sale closed on July 10, 2009 and did not receive notice of the Sale Order. They seek to represent a class of similarly situated post-bankruptcy purchasers.

Plaintiffs' appeal satisfies the requirements for seeking interlocutory relief. Plaintiffs' appeal presents two controlling questions of law: (1) whether the Due Process Clause permits the Bankruptcy Court to enjoin the Phaneuf Plaintiffs (and other post-bankruptcy purchasers) who had no claim at the time of the 363 Sale and received no notice of the 363 Sale Order; and (2) whether the Bankruptcy Court has subject-matter jurisdiction over claims by third parties (the Phaneuf Plaintiffs) against a non-debtor (New GM) for misconduct by the non-debtor. There are, at minimum, substantial grounds for this Court to hold that the Due Process Clause does not permit the Bankruptcy Court to enjoin post-bankruptcy purchasers from prosecuting their claims and that the Bankruptcy Court does not have subject matter jurisdiction over post-bankruptcy purchasers' claims. By affirming that post-bankruptcy purchasers are free to litigate the merits of their claims, the Court would significantly and materially advance the litigation. This Court may, of course, use whatever case management tools it deems necessary to ensure maximum efficiency in resolving the claims of pre- and post-bankruptcy purchasers in the District Court.

---

[2] References herein to "purchases" should be read to include both buying and leasing of vehicles.

But *any* progress made in addressing the claims of post-bankruptcy purchasers will necessarily benefit the Court and the parties in resolving the claims of all plaintiffs.

## II.    BACKGROUND

### A. Plaintiffs Overpaid For GM Vehicles That They Purchased After Old GM's Assets Were Sold to New GM

In a July 5, 2009 order (the "Sale Order"),[3] the Bankruptcy Court approved a section 363 asset sale (the "363 Sale") by General Motors Corporation ("Old GM"; now Motors Liquidation Corp.) to General Motors LLC ("New GM"). No Stay Decision at 2 n.2. The 363 Sale closed on July 10, 2009. *Id.*

Under the terms of the Amended and Restated Master Purchase and Sale Agreement (the "Sale Agreement"), New GM agreed to assume responsibility for complying with "the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by" Old GM.[4] New GM thus assumed a duty to disclose safety defects with vehicles manufactured by Old GM as well as vehicles manufactured by New GM. New GM also agreed to assume "all Liabilities to third parties for death, personal injury, <u>or other injury</u> to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by" Old GM. *Id.* § 2.3(a)(ix).

Plaintiffs all purchased their GM vehicles after the 363 Sale closed.[5] No Stay Decision at

---

[3] ECF No. 2968.
[4] ECF No. 2968-2 § 6.15(a).
[5] Plaintiff Mike Garcia purchased a 2010 Chevrolet Cobalt in April 2011; Plaintiff Javier Delacruz purchased a 2009 Chevrolet Cobalt in September 2009; Plaintiff Steve Sileo purchased

3

12-13 & n.26. They assert fraud, unjust enrichment, and state consumer-protection law claims against New GM. Compl. ¶¶ 87-141. The gravamen of each count of the Complaint is that Plaintiffs overpaid for their vehicles because New GM failed to disclose the ignition defect. *Id.* Plaintiffs seek to represent a class of post-bankruptcy purchasers, only. *Id.* ¶ 77. To the knowledge of Plaintiffs' counsel, no other case was filed by only post-bankruptcy purchasers seeking to represent a class of only post-bankruptcy purchasers.

### B. The Bankruptcy Court Held That Plaintiffs Are Enjoined By The Sale Order

Plaintiffs filed their Complaint on May 7, 2014. Approximately a week earlier, on May 2, 2014, the Bankruptcy Court had ordered that ignition switch plaintiffs either (1) enter into stipulations staying their ignition switch actions, pending resolution of New GM's Motion to Enforce the Sale Order; or (2) file a No Stay Pleading explaining why they believed their action should not be stayed. *See* No Stay Decision at 6. The Bankruptcy Court expanded upon and clarified this order in a May 16 Order. *Id.*; ECF No. 12697.

Consistent with the Bankruptcy Court's direction, Plaintiffs filed a No Stay Pleading on May 27, 2014, asserting that their claims were not—and could not be—subject to any injunction or release of claims by virtue of the Bankruptcy Court's Sale Order. *See* No Stay Pleading, ECF No. 12712 (arguing that the Due Process clause prohibits a bankruptcy court from enforcing a sale order against future claimants).

At the July 2, 2014 hearing, the Bankruptcy Court orally denied Plaintiffs' Pleading. On July 30, 2014, the Bankruptcy Court issued the No Stay Decision, memorializing its July 2 ruling. In the No Stay Decision, the Bankruptcy Court held that Plaintiffs are subject to and

---

a 2009 Chevrolet Cobalt in November 2009; Plaintiff Steve Bucci purchased a 2009 Chevrolet Cobalt in November 2009; and Plaintiff Padilla purchased a 2010 Chevrolet Cobalt in April 2010. Plaintiff Lisa Phaneuf purchased a used 2006 Chevrolet HHR in September 2010; Plaintiff Adam Smith purchased a used 2007 Pontiac Solstice in November 2009; and Plaintiffs Catherine and Joseph Cabral purchased a used 2007 Chevrolet Cobalt in June 2010.  Compl. ¶¶ 8-15.

enjoined by the Sale Order pending the resolution of New GM's Motion to Enforce. Decision at 15 (finding that Plaintiffs are subject to stay "imposed by the injunctive provisions … of the Sale Order); *id.* at 16 (finding that Plaintiffs' efforts are "expressly forbidden by the two injunctive provisions" of the Sale Order); *id.* at 17 (holding that "the Phaneuf Plaintiffs remain enjoined under" the Sale Order). The Bankruptcy Court held that an injunction was justified by, *inter alia*, "case management concerns and prejudice to the litigants in the other 87 [ignition switch actions]." The Bankruptcy Court stated that it was necessary to enjoin Plaintiffs to "protect[] New GM from the need now to defend claims that, under the Sale Agreement and Sale Order, it did not assume, and [from] the piecemeal litigation of the Phaneuf Plaintiffs' claims[.]" *Id.* at 19.

On August 4, 2014, the Bankruptcy Court's entered an Order Denying The Relief Requested By The Phaneuf Plaintiffs In Their No Stay Pleading.[6] The Order provides that "the Phaneuf Plaintiffs' claims will be treated the same as those in the other 87 Ignition Switch Actions. The stay already imposed by the injunctive provisions of Paragraphs 8 and 47 of the Sale Order (and that the Court may also impose by preliminary injunction) will remain in place insofar as it affects the Phaneuf Plaintiffs' complaint—subject to the right, shared by all of the other plaintiffs in the Ignition Switch Actions, to ask that the Court revisit the issue after September 1." *Id.* at 1-2.

On August 6, 2014, the Bankruptcy Court issued a similar order denying a No Stay Pleading filed by and enjoining the plaintiffs in *Elliott v. General Motors, LLC*, 14-cv-00691 (D.D.C., July 16, 2014) (the "Elliott Plaintiffs") who, like the Phaneuf Plaintiffs, assert claims arising from post-bankruptcy misconduct by New GM.[7] The Phaneuf Plaintiffs expect that the Elliot Plaintiffs will appeal. The District Court may wish to consider these appeals together.

---

[6] ECF No. 12811.
[7] ECF No. 12815.

**III.   ARGUMENT**

In considering a motion for leave to appeal an interlocutory order of the bankruptcy court under 28 U.S.C. § 158(a)(3), a district court should look to the standards of 28 U.S.C. § 1292(b), which ordinarily govern interlocutory appeals of district courts' orders. *See Brooks Fashion Stores, Inc. v. Wainscott Sportswear, Inc.*, No. 96 Civ. 0362(HB), 1996 WL 221591 (S.D.N.Y. May 1, 1996) ("Leave to appeal an interlocutory order from the bankruptcy court will be granted only where the standard of 28 U.S.C. § 1292(b) is satisfied."). Thus, an appellant must "demonstrate that the order '[A] involves a controlling issue of law as to which [B] there is substantial ground for difference of opinion and that [C] an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Id.* (internal citations omitted). Here, all three elements are satisfied.

### A.   The Appeal Presents Controlling Questions of Law

The appeal presents two controlling question of law:

(1) Does the Due Process Clause permit the Bankruptcy Court to enjoin litigation by the *Phaneuf* Plaintiffs (and other post-bankruptcy purchasers) who had no claim at the time of the 363 Sale and received no notice of the 363 Sale Order?

(2) Does the Bankruptcy Court have subject-matter jurisdiction over claims by third parties (the *Phaneuf* Plaintiffs) against a non-debtor (New GM) based on the non-debtor's misconduct?

The facts necessary to resolve these questions are undisputed: Plaintiffs purchased their vehicles after the 363 Sale closed and Plaintiffs are suing New GM for New GM's failure to disclose the ignition defect.[8]

---

[8] To be sure, the Bankruptcy Court stated that it was "find[ing] as a fact, or mixed question of fact and law, that the threshold applicability of the Sale Order—and its injunctive provisions—has easily been established in the first instance, at least for the purposes of the Phaneuf Plaintiffs' claims." Decision at 15. The Bankruptcy Court may have needed to make findings of disputed fact to deny the No Stay Pleading its decision. But the only facts necessary to *reverse* the Bankruptcy Court's decision are undisputed.

6

These questions are controlling: if the Court answers either question in Plaintiffs' favor, it must reverse the Bankruptcy Court's order. Plaintiffs cannot be enjoined by the Sale Order if the Due Process clause prohibits the Bankruptcy Court from enjoining persons who had no claim and received no notice at the time the Sale Order was entered. Similarly, Plaintiffs cannot be enjoined by the Bankruptcy Court if the Bankruptcy Court does not have subject matter jurisdiction.

### B. There Are Substantial Grounds To Disagree With the Bankruptcy Court's Ruling

#### i. The Due Process Clause Prohibits The Bankruptcy Court From Enjoining Future Claimants

There are substantial grounds to disagree with the Bankruptcy Court's ruling because it is a violation of the Due Process Clause to enforce a 363 sale order against "the state law claims of third parties" where "no injury was caused until after the bankruptcy[.]" *In re Grumman Olson Indus.*, 467 B.R. 694, 696 (S.D.N.Y. 2012).

Here, Plaintiffs allege that they suffered an injury at the point of sale: they paid more for their GM vehicles than they would have under conditions of full disclosure. *See* Compl. ¶¶ 91, 99, 104, 110, 116, 122, 128, 134, 140. Plaintiffs all purchased their vehicles after the bankruptcy. Therefore, Plaintiffs all suffered their injuries after the bankruptcy.

In the closest case on point, *Grumman Olson*, Grumman Olson Industries, Inc. designed, manufactured and sold automotive parts mounted on chassis sold by Ford Motor Co. and GM. Morgan purchased the assets of Grumman Olson pursuant to a 363 sale. The 363 sale order provided that the assets were sold "free and clear" of any and all claims "arising in any way in connection with any acts of the Debtor . . ." including any claims for successor liability. 445 B.R. 243, 246 (S.D.N.Y. Bkr. 2011). After the 363 sale, the plaintiff was injured driving a truck that

7

was designed, manufactured and sold by Grumman Olson prior to the 363 sale and was alleged to be defective. *Id.* at 247.

Judge Bernstein of the Bankruptcy Court held that the sale order did not bar plaintiff's claim, noting that—with one exception—"every case that we have found addressing this issue has concluded for reasons of practicality or due process, or both, that a person injured after the sale (or confirmation) by a defective product manufactured and sold prior to the bankruptcy does not hold a 'claim' in the bankruptcy case and is not affected by either the § 363(f) sale order or the discharge under 11 U.S.C. §1141(d)." *Id.* at 254 (internal citations omitted) (emphasis added).[9] The single exception was the Second Circuit's decision in *In re Chrysler LLC, Debtor*, 576 F. 3d 108 (2d. Cir. 2009) in which the court addressed, but did not reach the issue. *Id.* at 127 (declining "to delineate the scope of the bankruptcy court's authority to extinguish future claims, until such time as we are presented with an actual claim for an injury that is caused by Old Chrysler, that occurs after the Sale, and that is cognizable under state successor liability law.").[10]

Judge Oetken of this Court affirmed the Bankruptcy Court's ruling, holding that "because parties holding future claims cannot possibly be identified and, thus, cannot be provided notice of the bankruptcy, courts consistently hold that, for due process reasons, their claims cannot be discharged by the bankruptcy courts' orders." 467 B.R. at 707.

Although it declined to reach the issue in *Chrysler*, the Second Circuit has since held that a future claimant who was "not afforded constitutionally sufficient notice" of reorganization

---

[9] As discussed below, Plaintiffs are not proceeding under a successor liability theory. Even if Plaintiffs were asserting successor liability claims, however, the outcome under the Due Process Clause should be the same. The *Grumman* plaintiff's claim was for successor liability and that did not affect the court's decision.

[10] The bankruptcy court in *Chrysler* has since clarified that the *Chrysler* Sale Order "obviously does not bar claims concerning vehicles manufactured or sold by New Chrysler after the closing or injuries resulting from the breach of any duties that arose under non-bankruptcy law after the closing." *In re Old Carco LLC*, 492 BR 392, 395 (Bankr. S.D.N.Y. 2013) (emphasis added).

8

orders cannot be bound by a bankruptcy court's subsequent interpretation of those orders. *In re Johns-Manville Corp.* (*Manville IV*), 600 F.3d 135, 138 (2d Cir. 2010). In *Manville IV*, the Second Circuit noted that there were "grave representation and notice problems" with enforcing reorganization orders to bar claims that were not "contemplated, much less accounted for, during the proceedings that led to the" original orders. *Id.* at 156.

The Second Circuit has also previously suggested, in *dicta*, that it would forbid bankruptcy courts from enforcing their orders against future claimants. In *In re Chateaugay Corp.*, the Second Circuit noted that expecting "'claims' to be filed by those who have not yet had any contact whatever with the tort-feasor has been characterized as 'absurd.'" 944 F.2d 997, 1003 (2d Cir. N.Y. 1991). The court noted further that "[a]ccepting as claimants those future tort victims whose injuries … do not become manifest until after confirmation, arguably puts considerable strain not only on the Code's definition of 'claim,' but also on the definition of 'creditor' -- an 'entity that has a claim against the debtor that *arose* at the time of or before the order for relief concerning the debtor.'" *Id.* at 1004 (emphasis original).

Other circuits that have reached the issue have consistently held that the Due Process clause forbids bankruptcy courts from enforcing sale orders against plaintiffs who had not suffered an injury and had no relationship with the debtor at the time of the sale. In *In re Savage Indus.*, the debtor (Debtor Industries) transferred its assets to a new corporation (Savage Arms). 43 F.3d 714, 717 (1st Cir. 1994). After the bankruptcy, a third-party (Western Auto) brought an indemnification claim against Savage Arms on a successor-liability theory, based on a product liability suit filed against Western Auto a year after the asset transfer took place, involving a product manufactured by Debtor Industries. *Id.* The bankruptcy court enjoined Western Auto from prosecuting its successor liability claim. *Id.* at 718. The district court reversed the

9

injunction and the First Circuit affirmed the district court. *Id.* at 716. The First Circuit held that the Bankruptcy Code's notice provisions are "founded in fundamental notions of procedural due process." *Id.* at 721. The court held that "there can be no question that its claim could not be extinguished absent a showing that Western Auto was afforded appropriate notice." *Id.*

Similarly, in *Lemelle v. Universal Mfg. Corp.*, the Fifth Circuit recognized the "significant and possibly insurmountable due process problems" associated with "providing future claimants with constitutionally sufficient notice" of bankruptcy proceedings that might extinguish their future claims.18 F.3d 1268, 1277 (5th Cir. 1994) (internal quotations omitted). The court found the record to be "devoid of any evidence of any pre-petition contact, privity, or other relationship between [the debtor], on the one hand, and [the plaintiffs], on the other" and held that "the absence of this evidence precludes a finding by the district court that the claims asserted … were discharged in [the] bankruptcy proceedings." *Id.*

### ii. The Bankruptcy Court Lacked Subject Matter Jurisdiction

In addition to the fatal Due Process issue discussed above, the Bankruptcy Court's order is also constitutionally defective because the Bankruptcy Court lacked subject matter jurisdiction.[11] The Bankruptcy Court stated—and it is undoubtedly true—that it had "jurisdiction to interpret and enforce [its] own orders." Decision at 16 & n.43 (collecting cases). But this ancillary jurisdiction exists only if the Bankruptcy Court had the jurisdiction to enter the underlying order (here, the Sale Order). *See Zerand-Bernal Group v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) (Posner, J.) ("[T]he fact that the bankruptcy court, in the order approving the bankruptcy sale and later in the plan of reorganization, purported expressly to assume

---

[11] Although Plaintiffs framed their arguments to the Bankruptcy Court through the lens of due process, defects in subject matter jurisdiction can be raised at any time. *See United States v. Cotton*, 535 US 625, 630 (2002).

10

jurisdiction … could not confer jurisdiction. A court cannot write its own jurisdictional ticket."). Pursuant to controlling Second Circuit precedent, if "the [Sale Order] could not bind [the Phaneuf Plaintiffs] because such a holding would violate due process, then [the Phaneuf Plaintiffs] may challenge the bankruptcy court's jurisdiction" to interpret and enforce the Sale Order. *Manville IV*, 600 F.3d at 148.

The Bankruptcy Court did not have subject matter jurisdiction to issue a Sale Order "protecting New GM" (No Stay Decision at 19)—a non-debtor—by limiting the rights of future claimants to bring suit against New GM for New GM's misconduct. The subject matter of the bankruptcy courts is limited to "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "The test for determining whether litigation has a significant connection with a pending bankruptcy [sufficient to confer jurisdiction on the bankruptcy court] is whether its outcome might have any conceivable effect on the bankrupt estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (internal quotations omitted)); *In re Quigley Co., Inc.*, 676 F.3d 45 (2d Cir. 2012) ("'related to' jurisdiction to enjoin a third party dispute exists where the subject of the third party dispute is property of the estate, or the dispute would have an effect on the estate.").

Plaintiffs' suit would have no effect on the estate. Plaintiffs are suing New GM—a non-debtor. *Zerand*, 23 F.3d at 162 (finding no bankruptcy jurisdiction over products liability suit against purchaser of debtor's assets because "claim [was] neither by nor against the debtor."). In *Manville IV*, the Second Circuit expressly held that bankruptcy courts do not have jurisdiction to issue injunctions against "claims against non-debtor third parties," where those claims are based on the misconduct of the non-debtor. 600 F.3d at 153. Here, as set forth above, Plaintiffs assert claims against New GM based on New GM's failures to disclose the ignition defect. *See* Compl.

11

¶¶ 91, 99, 104, 110, 116, 122, 128, 134, 140. At the time it issued the Sale Order, the Bankruptcy Court lacked subject matter jurisdiction to enjoin claims of that nature. *Manville IV*, 600 F.3d at 153. The Bankruptcy Court cannot bootstrap its way to jurisdiction over Plaintiffs' claims by interpreting its original order in a manner that exceeds the limits of its underlying authority. *Id.*; *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 916 (Bankr. W.D. Tex. 1995) (bankruptcy court's authority to enforce its own orders "is itself limited by the jurisdictional limits of the order sought to be enforced.").

The Bankruptcy Court relied heavily on a passing reference in the Phaneuf Complaint to the fact that New GM is a "successor-in-interest" to Old GM. *See, e.g.*, No Stay Decision at 13, 16. As noted above (*see supra* fn 9), even if Plaintiffs *were* asserting a successor liability claim, this would not affect the Due Process issue. *See, e.g.*, *In re Grumman Olson Indus.*, 467 B.R. 694 (Due Process clause prohibited bankruptcy court from enjoining successor liability claim by future claimant); *In re Savage Indus.*, 43 F.3d 714 (same).

But Plaintiffs' theory is not a successor liability claim.[12] New GM's relationship to Old GM is relevant background. It is not the basis of Plaintiffs' claim. Plaintiffs are suing only New GM and not Old GM. As alleged in the Complaint, New GM had an independent duty to disclose defects with vehicles manufactured by both Old GM and New GM. *See* Compl. ¶¶ 66, 71. It is the breach by New GM of that duty which forms the basis of each of Plaintiffs' claims. *See* Compl. ¶¶ 91, 99, 104, 110, 116, 122, 128, 134, 140. This is precisely the type of claim over

---

[12] *See Pajarillo v. Bank of America*, 2010 U.S. Dist. LEXIS 115227, at *2 (S.D. Cal. Oct. 28, 2010) (a statement that Bank of America was "a successor-in-interest to Countrywide Bank" does not state a successor liability claim against Bank of America); *Carolina Power & Light Co. v. 3M Co.*, 2010 U.S. Dist. LEXIS 145667, at *261 (E.D.N.C. Mar. 24, 2010) (statement that "defendants are 'successors in interest…'" is "insufficient under the Federal Rules of Civil Procedure to invoke successor liability.").

which the Bankruptcy Court does not have subject-matter jurisdiction. *See Manville IV*, 600 F.3d at 153 (holding that a bankruptcy court may not enjoin actions against non-debtor third parties that bring direct claims based on misconduct by the non-debtor third party).

Similarly, the fact that "[i]n seven places in their complaint, the Phaneuf Plaintiffs speak of acts that took place … before the formation of New GM" (No Stay Decision at 13-14) does not transmogrify Plaintiffs' action into one against the debtor or the estate. Old GM and New GM had the same employees. Those employees' memories and knowledge of the ignition switch defect were not wiped clean by the Sale Order. The knowledge of Old GM employees is probative evidence of the knowledge and scienter of New GM employees. Plaintiffs' use of that evidence will not affect Old GM's estate and, therefore, does not create subject matter jurisdiction for the bankruptcy court.

### C. Resolving This Appeal Will Hasten The Conclusion of This Litigation

The Bankruptcy Court's No Stay Decision appears to be founded, almost entirely, on case management concerns. *See* No Stay Decision at 3 ("I must determine whether one out of 88 Ignition Switch Actions … should be allowed to proceed when the plaintiffs in every other Ignition Switch Actions [*sic*] agreed to stay their actions"); *id.* at 4 ("I rule that the Phaneuf Plaintiffs should be treated no differently than those in the 87 other Ignition Switch Actions who agreed to voluntary stays, with adherence to the orderly procedures in this Court that were jointly agreed to by counsel for those other plaintiffs and New GM"); *id.* at 15 ("I rule that the Phaneuf Plaintiffs' claims will be treated the same as those in the other 87 Ignition Switch Actions."); *id.* at 18 ("It would be grossly unfair to the plaintiffs in the 87 Ignition Switch Actions who stipulated to stay their cases to give a single litigant group leave to proceed on its own. My efforts to manage 88 cases, with largely overlapping issues, require that they proceed in a

13

coordinated way. … Makin an exception for the Phaneuf Plaintiffs would be monumentally bad case management."); *id.* at 19 ("[I]rreparable injury, in terms of the case management concerns and prejudice to the litigants in the other 87 actions, has been established."); *id.* at 20 ("I well understand the desires of litigants to get their cases moving as quickly as possible. But those desires are insufficient to trump the normal case management concerns that I and most other judges have."); *id.* at 22 ("there would be significant prejudice to my case management needs").

Even if the Bankruptcy Court's injunction against the Phanuef Plaintiffs was convenient, that is not enough to make it constitutional. *United States v. Polouizzi*, 687 F. Supp. 2d 133, 188 (E.D.N.Y. 2010) ("Supposed efficiency—which is an objection largely based on phantoms of chaos—cannot trump the Constitution.") *vacated on other grounds* 564 F.3d 142 (2d Cir. 2009). For the reasons set forth above, the Bankruptcy Court cannot constitutionally enforce its orders against the Phaneuf Plaintiffs. The Bankruptcy Court cannot manage a case that is not properly before it.

Moreover, the case management challenges raised by this case—which are undeniably significant—neither require nor are aided by an unconstitutional Bankruptcy Court injunction against post-bankruptcy purchasers. This Court has issued its own scheduling order to ensure an efficient resolution of all issues. *See* Order No. 1 at 10-11 (staying all deadlines and discovery). If the Bankruptcy Court's injunction is vacated, the Phaneuf Plaintiffs will remain bound by and will respect the stay order issued by this Court.

An order granting Plaintiffs' appeal and vacating the Bankruptcy Court's injunction would give this Court additional flexibility to exercise its discretionary authority over scheduling to hasten the conclusion of this litigation. The Court would have the *option*—although not the obligation—to permit post-bankruptcy purchasers to proceed in whatever fashion and to

whatever extent this Court deemed appropriate. Any progress made in addressing the claims of post-bankruptcy purchasers would benefit the Court in addressing the claims of pre-bankruptcy purchasers. Rulings on common issues would be binding as law-of-the-case; discovery would be shared.

By contrast, permitting the Bankruptcy Court's injunction to stand will needlessly delay proceedings in the District Court. For all the reasons set forth above, the Bankruptcy Court has no constitutional authority to protect New GM by releasing or extinguishing claims against New GM by post-bankruptcy purchasers. One way or another, those claims will eventually be decided in this Court. There is no reason for post-bankruptcy purchasers to languish in the Bankruptcy Court, waiting for that court to resolve extraordinarily complicated factual issues relating to pre-bankruptcy purchasers—factual issues which are unnecessary to resolve post-bankruptcy purchasers' arguments. Permitting the Bankruptcy Court's injunction to stand only delays the inevitable.

## IV. CONCLUSION

For all the foregoing reasons, the District Court should grant leave to appeal the Bankruptcy Court's order.

Dated: August 7, 2014                                              Respectfully submitted,

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

By: /s/ D. Greg Blankinship
D. Greg Blankinship
Todd S. Garber
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com
tgarber@fbfglaw.com

15

BLOCK & LEVITON LLP
Jeffrey C. Block
Jason M. Leviton
Joel A. Fleming
155 Federal Street
Boston, Massachusetts 02110
Tel: (617) 398-5600
Fax: (617) 507-6020
Jeff@blockesq.com
Jason@blockesq.com
Joel@blockesq.com

16