# Exhibit 5

Gary Peller (*Pro Hac Vice* Pending)
Counsel for Plaintiffs
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
(202) 662-9122 (voice)
(202) 662-9680 (facsimile)
peller@law.georgetown.edu

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------------------X
IN RE:
**GENERAL MOTORS LLC IGNITION SWITCH LITIGATION**

                                                                         **14-MD-2543 (JMF)**

-----------------------------------------------------------------------------------X

-----------------------------------------------------------------------------------X
**ISHMAIL SESAY et al**
      **Plaintiffs,**
v.
                                                                    **14-cv-6018 (JMF)**
**GENERAL MOTORS LLC, et al**
     **Defendants.**
-----------------------------------------------------------------------------------X
**LAWRENCE AND CELESTINE ELLIOTT et al**
      **Plaintiffs,**
v.
                                                                   **14-cv-00691 (KBJ)**
**GENERAL MOTORS LLC, et al**                              **14-mdl-2543 (U.S.J.P.M.L.)**
     **Defendants.**
-----------------------------------------------------------------------------------X

**NOTICE OF DEVELOPMENTS IN RELATED PROCEEDINGS BETWEEN THE PARTIES ESTABLISHING AN ADVERSARIAL RELATIONSHIP WITHIN THE PLAINTIFFS' GROUP AND AN ASSOCIATED FAILURE TO PROTECT THE COMMON INTEREST PRIVILEGE AFTER PLAINTIFFS' LEADERSHIP DISCLOSED CONFIDENTIAL COMMUNICATIONS AMONG PLAINTIFFS' COUNSEL TO GM'S OPPOSING COUNSEL**

Plaintiffs Ishmail Sesay, Joanne Yearwood,[1] Lawrence Elliott, Celestine Elliott, and Berenice Summerville,[2] hereby notify the Court of developments in related proceedings that

---

[1] Mr. Sesay and Ms. Yearwood are the named Plaintiffs in the putative class action, *Sesay et al v. General Motors, LLC, et al*, 1:14-md-2543 (1:14-cv-6018) (JMF).

evidence an actual conflict of interest within the Plaintiffs' group as described in the Court's Order No. 5, note 1. Doc. No. 70.

Each of the five above identified Plaintiffs (hereafter "non-bankruptcy Plaintiffs") assert third-party claims against New GM, a non-debtor, that rest solely and exclusively on alleged breaches by New GM of independent, non-derivative duties that it owed to non-bankruptcy Plaintiffs and those they seek to represent, and that, non-bankruptcy Plaintiffs allege, New GM breached, causing legally cognizable harm to non-bankruptcy Plaintiffs. None of the non-bankruptcy Plaintiffs alleged claims could conceivably be traced to Old GM's liability. Such a technical[3] statement of the duties New GM allegedly breached clarifies that, because their lawsuits assert no breach of any duty allegedly owed by Old GM, the Bankruptcy Court lacks subject matter jurisdiction over the non-bankruptcy Plaintiffs' claims, under applicable Second Circuit authority that no party disputes.[4]

The non-bankruptcy Plaintiffs are, therefore, in a different position than those Plaintiffs asserting alternative or additional claims that may rest upon duties originally owed to them by Old GM ("hereafter "the bankruptcy Plaintiffs) – at least with respect to the Bankruptcy Court's assertion of jurisdiction and its aggressive exercise of its stay power in the proceedings with which this Court has endeavored to coordinate.[5]

---

[2] Mr. and Mrs. Elliott are co-named Plaintiffs in the putative class action, *Elliott et al v. General Motors, LLC, et al*, 14-mdl-2543 (14-cv-00691) (KBJ). They have consented, with co-plaintiff Berenice Summerville, to the consolidation and transfer of their ignition switch claims to this Court.

[3] *See* Wesley Newcomb Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L.J. 16, 28-59 (1913).

[4] *See In re Johns Manville Corp.*, 517 F.3d 52, 66 (2s Cir. 2008) ("Manville II"), vacated and remanded on other grounds, 129, S. Ct. 2195, 174 L. Ed. 2d 99 (2009), aff'g in part & rev'g in part, 600 F. 3d 135, 2010 U.S. Ap. LEXIS 5877, 2010 WL 1007832 (2d Cir. Mar. 22, 2010) ("Manville III").

[5] *See* Order Staying and Restraining Lawrence and Celestine Elliott and their Counsel (*In re Motors Liquidation Co.*, 1:09-bk-50026 (Bankr. S.D.N.Y. Jun 01, 2009) (hereafter "*Motors*"), Doc. No. 12763, July 8, 2014) (purporting to require that the Elliotts withdraw pleadings under active consideration by an Article III court).

Most lawsuits in these consolidated proceedings, like those filed by each of the Temporary Lead Counsel and the candidates for permanent leadership, may be subject to the jurisdiction of the Bankruptcy Court because they *do* assert derivative, successor, or fraudulent concealment claims that ultimately rest on the liability of Old GM. Even if they *also* assert claims like those of the non-bankruptcy Plaintiffs, the Bankruptcy Court may have "related to" jurisdiction over their claims implicating Old GM, and supplemental jurisdiction over the remaining claims. Apparently conceding the Bankruptcy Court's subject matter jurisdiction over their lawsuits, the Temporary Leadership, in conjunction with their own bankruptcy counsel and in coordination with Designated Counsel in the Bankruptcy proceedings,[6] each entered "voluntary stay stipulations" to suspend the prosecution of their cases pending determinations of certain threshold issues in those proceedings. Eighty-seven of eighty-eight original lawsuits entered into such voluntary stay stipulations.[7] GM has announced to this Court its intention to broaden the Bankruptcy proceedings dramatically beyond the "ignition switch actions" currently defining its scope by seeking to enforce its 2009 Sale Order protections against lawsuits regardless of whether they allege an ignition switch risk or *any* of the many other dangerous characteristics that GM has, over the past few months, admitted millions of GM vehicles possess.[8]

---

[6] Leadership later agreed to GM-proposed procedures in which, simply by listing actions in bulk schedules it periodically files, GM may bring new actions into that forum just – as it did with the Elliotts' action – without any demonstration that the actions "relate to" those proceedings. *See* Endorsed Order (*Motors*, Doc. No. 12771, July 11, 2014). Plaintiffs are given three days to agree to stay their cases or file a "No Stay Pleading," although the Bankruptcy Court has identified or recognized no basis for any exception to its determination to stay all actions before it pending disposition of "threshold issues" and so no lawsuit may proceed ahead of any other. *See* Written Opinion with Respect to No Stay Pleading (*Motors*, Doc. No. 12791, July 30, 2014). Plaintiffs in cases stayed in the Bankruptcy proceeding have no ability to seek the temporary, preliminary or other interim injunctive relief to which they and putative class members they hope to represent may be entitled.

[7] *See* Scheduling Order (*Motors*, Doc. No. 12697, May 16, 2014), *see also* Supplemental Scheduling Order (*Motors*, Doc. No. 12770, July 11, 2014).

[8] *See* General Motors LLC's Reply in Support of its Motion to Transfer Tag-Along Action for Consolidated Pretrial Proceedings (*In re: General Motors Ignition Switch Litigation*, MDL No. 2543 (U.S.J.P.M.L March 24, 2014), Doc. No. 390, July 30, 2014, at note 5).

It is no coincidence that such different bankruptcy and non-bankruptcy lawsuits are represented in the consolidated lawsuits in this proceeding. Temporary leadership, and almost all leadership candidates, filed lawsuits soon after GM publicly admitted that it had failed to disclose the dangers posed by millions of GM vehicles, but before GM initiated its purported enforcement proceedings before Judge Gerber. The lawsuits of non-bankruptcy plaintiffs, and probably many more that will be brought here in the next few weeks as "tag-along" actions, were drafted with knowledge of GM's Bankruptcy contentions, and took care not to trigger the jurisdiction of that forum.

Notably, none of the stays agreed to by Plaintiff's leadership and entered in the bankruptcy proceedings includes an exception for a public safety emergency or for emergency relief applications to allow those still driving dangerous vehicles to seek interim relief, although each lawsuit alleges that the need for such relief currently exists. Contrastingly, after considering the interests of others they seek to represent and their own urgent needs to obtain safe interim transportation until GM repairs their dangerous vehicles, non-bankruptcy Plaintiffs decided to limit the claims they assert to those outside the stay power of the Bankruptcy Court and the associated closure of judicial avenues for emergency, temporary, and preliminary relief.

The conflict, then, is between the lawsuits, like those filed by non-bankruptcy Plaintiffs, which are not subject to the Bankruptcy Court's jurisdiction and thereby provide means to obtain relief from the safety dangers immediately faced by millions of consumers, and those bankrupty lawsuits, like those filed by Temporary leadership and virtually all candidates for permanent leadership in these proceedings, that are subject to the power of the Bankruptcy Court and consequently parties to those lawsuits are prevented from obtaining relief for at least the next several months. Whatever arguments for delaying the prosecution of ignition switch cases

against New GM may exist regarding lawsuits subject to the stay power of the Bankruptcy Court,[9] no such arguments are available to justify the delay of lawsuits, and applications for interim relief, that have nothing to do with the Bankruptcy proceedings.

In the view of non-bankruptcy Plaintiffs, such a difference of position in relation to the Bankruptcy Court's power need not have resulted in a conflict between Plaintiffs and non-bankruptcy Plaintiffs. Non-bankruptcy Plaintiffs believe there is a common interest among all Plaintiffs in establishing that the Bankruptcy Court lacks jurisdiction over, and may not use its stay power to bar or delay, meritorious claims against New GM that would obtain substantial relief for many plaintiffs.

Unfortunately, an actual conflict has in fact developed.[10] Temporary leadership in these proceedings, in conjunction with the Designated Counsel leadership in the Bankruptcy proceedings, have taken an adversarial posture to non-bankruptcy Plaintiffs and have given non-bankruptcy Plaintiffs reasonable grounds to believe that they no longer share a common interest privilege, regardless of the common interests they might otherwise share.

On July 11, 2014, Lawrence Elliott and Celestine Elliott moved the Bankruptcy Court for an order of dismissal based on the lack of subject matter jurisdiction.[11] They sought the support of Designated Counsel and Temporary Lead Counsel for their motion because it would help establish the limits of GM's ability to bar plaintiffs from suing GM for its wrongdoing, benefiting the Plaintiffs' group as a whole and assuring an avenue through which to seek the

---

[9] *See* Letter addressed to Judge Jesse M. Furman from Andrew B. Bloomer (Doc. No. 114, July 28, 2014)
[10] Counsel emphasize that this is not a conventional conflict of interest in which the conflict is identified by inconsistent legal positions that otherwise aligned parties take. There seems to be no such substantive conflict between the claims asserted by various Plaintiffs. Rather, there is an *actual* conflict, evidenced by the Plaintiffs' leadership joining with GM against non-bankruptcy Plaintiffs, with no readily apparent, *legitimate*, reason for such actions.
[11] *See* Motion to Dismiss Plaintiffs for Lack of Subject Matter Jurisdiction (*Motors,* Doc. No. 12772, July 11, 2014).

interim relief that may be necessary to prevent additional death and serious bodily injury to Plaintiffs and putative class members.[12]

In response to such requests for support, on August 1, 2014, Designated Counsel Edward Weisfelner declared to non-bankruptcy Plaintiffs' counsel that Designated Counsel will not support the motion, and, in fact, Plaintiffs' leadership actively opposes the motion. *Mr. Weisfelner will appear at the hearing on the motion on August 5, 2014, to speak, purportedly on behalf of the Plaintiffs' group generally, against its consideration by Judge Gerber*. Counsel for non-bankruptcy Plaintiffs then sought the advice of Temporary Lead Counsel, who confirmed that Designated Counsel spoke for them. The unseemly appearance of fellow Plaintiffs' counsel joining with GM and speaking before the Bankruptcy Court in favor of GM's attempt to bar non-bankruptcy Plaintiffs from suing GM reflects the adversarial posture taken by leadership toward non-bankruptcy Plaintiffs. Non-bankruptcy Plaintiffs hesitate to identify this as a formal conflict of interest  From the viewpoint of the legal interests involved, all Plaintiffs share an interest in avoiding the "haircut" GM would like Judge Gerber to perform before those claims go forward.

---

[12] The Elliotts appealed to leadership to no avail when GM first threatened to hold them and their counsel in contempt for failing to comply with an Order of the Bankruptcy Court that would have prejudiced the Elliotts' lawsuit – interfering with the integrity of the adjudicative process by requiring the Elliotts to withdraw pleadings under active consideration by Judge Jackson of the United States District Court for the District of Columbia. Judge Jackson issued an Order mooting that threat by granting the Elliotts motion to amend their *pro se* papers without awaiting GM's response. *See* Order Granting Plaintiffs' Motion to Amend the Complaint (*Elliott v. General Motors LLC*, 1:14-cv-00691 (D.D.C. Apr. 23, 2014), Doc. No. 20, July 16, 2014). Because of the continued threat by GM to hold the Elliotts in contempt, *see* Response by General Motors LLC to No Stay Pleading Filed by the Elliott Plaintiffs (*Motors*, Doc. No. 12782, July 21, 2014), the Elliotts' motion to dismiss for lack of subject matter jurisdiction is particularly important to their interests. *See* Letter to Honorable Robert E Gerber from Gary Peller, (*Motors*, Doc. No. 12783, July 23, 2014) (stating that the Elliotts are not required to obey the orders of a court lacking subject matter jurisdiction over their action). The Elliotts also believe that the Bankruptcy Court, with Designated Leadership's acquiescence, has treated the Elliotts abusively in other ways, including setting of unrealistic deadlines for them to present complex constitutional arguments about the limits of that forum's jurisdiction, and the imposition of Orders designed to punish them for seeking to join together with and represent other consumers in their lawsuits. *See* Order Staying and Restraining Lawrence and Celestine Elliott and their Counsel (*Motors*, Doc. No. 12763, July 08, 2014).

In response to an inquiry to co-Designated Counsel Elihu Inselbruch whether he, too, would appear at the hearing to oppose the Elliotts' motion, Mr. Inselbruch responded "No. We will leave the matter to be addressed by General Motors counsel."

While such a statement may not be an unequivocal adoption of an adversarial posture towards the interests of non-bankruptcy Plaintiffs, Mr. Inselbruch confirmed his intent to identify common interests with GM, and not to identify common interests with non-bankruptcy Plaintiffs, by adding GM's Chief Bankruptcy counsel, Arthur Steinberg, to the electronic mail address-to list that had to that point included exclusively various plaintiffs' counsel. The disclosure was particularly egregious because Mr. Steinberg is the GM lawyer who will argue for GM against the Elliotts' motion at the upcoming hearing on the matter

Mr. Inselbruch dispatched his electronic mail and thereby disclosed to Mr. Steinberg his reply to non-bankruptcy Plaintiffs' counsel containing the statement noted above. In addition, because Mr. Inselbruch did not delete the electronic communication to which he was responding before attaching his reply, he also disclosed the extensive communication from non-bankruptcy Plaintiffs' counsel, intended only for disclosure to Plaintiffs' counsel sharing the Plaintiffs' common interest privilege, to Mr. Steinberg. Accordingly, Mr. Inselbruch disclosed to opposing GM counsel information counsel for non-bankruptcy Plaintiffs' had reasonably assumed were confidential attorney communications exclusively between and among Plaintiffs' counsel – communications protected by the common interest or joint prosecution privilege.

When counsel for non-bankruptcy Plaintiffs objected to Mr. Inselbruch's inclusion of GM's counsel on confidential communications between and among Plaintiffs' counsel and requested that Mr. Inselbruch take effective measures to assert and protect the common interest privilege, Mr. Inselbruch instead made only a partial request for retraction and took no additional

measure to protect the privilege or even acknowledge its existence. He requested retraction of his reply but not the remainder of the communication between Plaintiffs' counsel that he had disclosed. Mr. Inselbruch did not identify the communication to Mr. Steinberg as an inadvertent disclosure of a privileged communication, he did not take reasonable measures to protect privileged communications after disclosure he did not request that Mr. Steinberg destroy the communication and all copies, and he did not direct that Mr. Steinberg not use the communication for any purpose.[13]

Most notably, Mr. Inselbruch did not assert the privilege in his purported retraction, a precondition to any claim of inadvertent disclosure. To the contrary, he indicated to GM's counsel that he thought the existence of the privilege was subject to "debate." He represented to Mr. Steinberg that he was only asking to retract his communication because "[Peller] objects..:"[14]

> **From:** Elihu Inselbuch
> **Sent:** Saturday, August 02, 2014 10:05 AM
> **To:** Steinberg, Arthur (ASteinberg@KSLAW.com)
> **Subject:** Peller
>
> Please let me retract the copy of my response to Peller just sent to you. He objects that it was a violation of the common interest privilege. Rather than have a debate, I accept that it was an error to send it to you. Thanks.

Non-bankruptcy Plaintiffs' counsel immediately informed Temporary Lead counsel of Mr. Inselbruch's refusal to make an effective assertion of a common interest privilege and to take effective acts to protect such a privilege, and of the concomitant threat to the common interest privilege counsel reasonably assumed they had shared. Counsel requested that Designated Counsel and Temporary Lead counsel identify any other communications of Plaintiffs' counsel that leadership disclosed to GM's counsel – or others not sharing the common interest of

---

[13] After concluding that Mr. Inselbruch would not comply with requests to take measures to assert and protect the privilege, non-bankruptcy Plaintiff's counsel sent such a notice to Mr. Steinberg. Counsel expresses no opinion on the effectiveness of such an assertion of privilege in the face of Mr. Inselbruch's communication to Mr. Steinberg.

[14] Mr. Inselbruch inserted the subject line "Peller".

Plaintiffs. Counsel requested that each leadership group in the coordinated proceedings confirm whether or not they recognized a common interest privilege with non-bankruptcy Plaintiffs, or with other subgroups within the Plaintiffs group. Counsel also requested that each leadership group assist him in communicating with fellow Plaintiffs' counsel to warn them of the risk that their reasonable assumptions of a common interest privilege may be incorrect with respect to the understanding of Designated Counsel and Temporary Lead Counsel. As of the filing of this Notice, counsel has not received communication from any member of Plaintiffs' leadership regarding this matter.

Because of the pendency of permanent appointments to leadership positions in this proceeding, non-bankruptcy Plaintiffs believe it prudent to notify the Court that, as soon as is feasible, they intend to formally request that the Court delay that selection process until the issues described herein can be resolved and Plaintiffs' counsel generally can be heard as to whether present circumstances require the establishment of a separate track within this proceeding – with independent leadership – for claims, like those of non-bankruptcy Plaintiffs, that do not implicate Bankruptcy jurisdiction and may, therefore, proceed despite the commitment of bankruptcy Plaintiffs to claims that may derive from the liability of Old GM. While no *substantive* conflict between the various claims asserted by Plaintiffs seems to warrant consideration of such an extraordinary remedy, the adversarial stance adopted by leadership toward non-bankruptcy Plaintiffs' lawsuits may make such a step imperative to protect the interests of all Plaintiffs in the fair and efficient treatment of their claims in these proceedings.

Non-bankruptcy Plaintiffs have no present intention of seeking relief from the Court with respect to the leadership's failure to recognize and take measures to protect the common interest privilege to date. They are notifying the Court because of its relevance to the divisions currently

existing within the Plaintiffs' group, and because the failure to assert and protect the privilege may reflect Plaintiffs' leadership's belief that no common interest actually exists between Plaintiffs groups, at least regarding this particular divide.

                                              Respectfully submitted,

                                              */s/ Gary Peller*

                                              Gary Peller (*Pro Hac Vice* Pending)
                                              Counsel for Non-Bankruptcy Plaintiffs
                                              600 New Jersey Avenue, N.W.
                                              Washington, D.C. 20001
                                              (202) 662-9122 (voice)
                                              (202) 662-9680 (facsimile)
                                              peller@law.georgetown.edu

## CERTIFICATE OF SERVICE

      I hereby certify that on August 4, 2014, I caused this Notice Of Developments In Related Proceedings Between The Parties Evidencing An Adversarial Relationship Within The Plaintiffs' Group And An Associated Failure To Assert The Common Interest Privilege After Plaintiffs' Leadership Disclosed Confidential Communications Among Plaintiffs' Counsel To GM's Opposing Counsel to be filed and served upon all parties receiving notice via the Court's ECF system.

Dated: August 04, 2014                             /s/ *Gary Peller*

                                                                 600 New Jersey Avenue, NW
                                                                  Washington, DC, 20001
                                                                  (202) 662 9122
                                                                  peller@law.georgetown.edu
                                                                  Counsel for Non-Bankruptcy Plaintiffs