# Exhibit 6

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, Illinois 60654

Andrew B. Bloomer, P.C.
To Call Writer Directly:
(312) 862-2482
andrew.bloomer@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

August 5, 2014

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

> ### Re:  *In re: General Motors LLC Ignition Switch Litigation,*
> 14-MD-2543 (JMF); 14-MC-2543

Dear Judge Furman:

Pursuant to this Court's Order No. 1 § XVI[1] and further to Defendants' July 21, 2014 Status Letter (ECF No. 73), we write on behalf of General Motors LLC ("New GM") to inform the Court of developments in proceedings related to MDL 2543.

First, on August 4, 2014, Judge Gerber denied the *Phaneuf* plaintiffs' No Stay Pleading for the reasons set forth in his July 30, 2014 Decision.  Copies of Judge Gerber's August 4 Order and July 30 Decision are attached hereto as Exhibits 1 and 2, respectively.  Additionally, at a hearing held on August 5, 2014, Judge Gerber denied the *Elliott* plaintiffs' No Stay Pleading.

Second, on Friday, August 1, 2014, New GM filed in the Bankruptcy Court the two additional motions to enforce identified on page 2 of the Defendants' July 21 Status Letter. Copies of New GM's Non-Ignition Switch Motion to Enforce and Pre-Closing Accident Motion to Enforce are attached hereto as Exhibits 3 and 4, respectively.

Third, the Defendants' July 21 Status Letter reported that New GM had petitioned the Texas Judicial Panel on Multidistrict Litigation ("Texas Panel") to consolidate several ignition switch actions pending in Texas state court.  (ECF No. 73-2 at 2.)  On July 30, 2014, the Texas Panel granted New GM's motion and assigned the ignition switch actions consolidated in the Texas MDL to the Honorable Robert Schaffer, presiding judge of the 152nd District Court of Harris County.  Copies of the Texas Panel Opinion and Appointment Order are attached hereto as Exhibit 5.

---

[1]  *See* Order No. 1 (ECF No. 19) § XVI, at 14 ("Counsel for General Motors is ORDERED to promptly advise the Court by letter of any ruling by the Bankruptcy Court that may affect the MDL.").

Beijing    Hong Kong    Houston    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
August 5, 2014
Page 2


Fourth, in the Defendants' July 21 Status Letter, New GM stated that it would "keep the Court advised of the status of the *Melton* case" pending in Cobb County State Court in Georgia. (ECF No. 73 at 7.)  The judge presiding in that case, the Honorable Kathryn J. Tanksley, has scheduled an August 9, 2014 hearing on New GM's motion to dismiss the plaintiffs' complaint.

Finally, pursuant to Order No. 1 § X.8, the Defendants' July 21 Status Letter included an Exhibit A listing all cases consolidated to date in MDL 2543, as well as an Exhibit B listing all related cases pending in state or federal court, together with their current status.  For the Court's convenience, updated versions of Exhibits A and B are attached hereto as Exhibit 6.


Respectfully submitted,

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.

*Counsel for Defendant General Motors LLC*


cc:     Steve W. Berman (Temporary Lead Counsel for Plaintiffs)
        Elizabeth Joan Cabraser (Temporary Lead Counsel for Plaintiffs)
        Mark P. Robinson, Jr. (Temporary Lead Counsel for Plaintiffs)
        Mark E. Howard (counsel for AutoFair Chevrolet, LLC)
        Michele R. Sowers (counsel for Continental Automotive Systems, Inc.)
        Eugene A. Schoon (counsel for Delphi Automotive PLC and Delphi Automotive Systems, LLC)
        Michael T. Navigato (counsel for Don McCue Chevrolet, Inc.)

# Exhibit 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                      Chapter 11

**MOTORS LIQUIDATION COMPANY,** *et al.*,                   Case No.: 09-50026 (REG)
f/k/a General Motors Corp., *et al.*

                              Debtors.                      (Jointly Administered)
------------------------------------------------------------x

## ORDER DENYING THE RELIEF REQUESTED BY
## THE PHANEUF PLAINTIFFS IN THEIR NO STAY PLEADING

Upon the *No Stay Pleading* ("**Phaneuf No Stay Pleading**") filed by Lisa Phaneuf, *et al.* ("**Phaneuf Plaintiffs**"), dated May 27, 2014 [Dkt. No. 12713]; and upon the *Response by General Motors LLC to No Stay Pleading Filed in Connection with the Court's May 16, 2014 Scheduling Order*, filed by General Motors LLC on June 13, 2014 [Dkt. No. 12724] ("**Response**"); and a hearing (the "**Hearing**") having been held with respect to the Phaneuf No Stay Pleading and the Response on July 2, 2014; and upon the record of the Hearing, the Court having orally found and determined that the relief requested in the Phaneuf No Stay Pleading should be denied ("**Oral Ruling**"); and upon the Court issuing its *Decision with Respect to No Stay Pleading (Phaneuf Plaintiffs)* on July 30, 2014 [Dkt. No. 12791] ("**Decision**"), memorializing and amplifying the Oral Ruling issued at the Hearing; and after due deliberation and sufficient cause appearing therefore, it is hereby

**ORDERED** that the relief requested in the Phaneuf No Stay Pleading is denied in its entirety for the reasons set forth in the Decision; and it is further

**ORDERED** that the Phaneuf Plaintiffs' claims will be treated the same as those in the other 87 Ignition Switch Actions. The stay already imposed by the injunctive provisions of

09-50026-mg   Doc 12824-6   Filed 08/08/14   Entered 08/08/14 15:30:48   Exhibit 6
Case 1:14-md-02543-JMF   Document 200-1   Filed 08/03/14   Page 3 of 3
Pg 6 of 126

09-50026-reg   Doc 12811   Filed 08/04/14   Entered 08/04/14 09:48:07   Main Document
Pg 2 of 2

Paragraphs 8 and 47 of the Sale Order (and that the Court may also impose by preliminary

injunction) will remain in place insofar as it affects the Phaneuf Plaintiffs' complaint—subject to

the right, shared by all of the other plaintiffs in the Ignition Switch Actions, to ask that the Court

revisit the issue after September 1; and it is further

> **ORDERED** that the Bankruptcy Court shall retain jurisdiction to interpret and enforce

this Order.


Dated: New York, New York
         August 4, 2014

                                         _s/ Robert E. Gerber_____
                                         UNITED STATES BANKRUPTCY JUDGE

# Exhibit 2

09-50026-mg    Doc 12824-6    Filed 08/08/14    Entered 08/08/14 15:30:48    Exhibit 6
Case 1:14-md-02543-JMF    Document 200    Filed 06/05/14    Page 2 of 25
Pg 8 of 126

09-50026-reg    Doc 12791    Filed 07/30/14    Entered 07/30/14 09:54:52    Main Document
Pg 1 of 24

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                                       :        Chapter 11
                                                            :
MOTORS LIQUIDATION COMPANY, *et al.*,                       :        Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., *et al.*                :
                                                            :
                            Debtors.                        :        (Jointly Administered)
                                                            :
------------------------------------------------------------x

DECISION WITH RESPECT TO NO STAY
PLEADING (PHANEUF PLAINTIFFS)[1]

APPEARANCES:

KING & SPALDING LLP
*Attorneys for General Motors LLC*
1185 Avenue of the Americas
New York, New York 10036
By:     Arthur J. Steinberg, Esq. (argued)
        Scott I. Davidson, Esq.

KIRKLAND & ELLIS LLP
*Attorneys for General Motors LLC*
300 North LaSalle
Chicago, Illinois 60654
By:     Richard C. Godfrey, Esq.
        Andrew B. Bloomer, Esq.

BLOCK & LEVITON LLP
*Attorneys for Phaneuf Plaintiffs*
155 Federal Street, Suite 400
Boston, Massachusetts 02110
By:     Jeffrey C. Block, Esq. (argued)
        Joel A. Fleming, Esq.

---

[1]     This written decision memorializes and amplifies on the oral decision that I issued after the close of oral argument at the hearing on this matter on July 2, 2014 (the "**July 2 Hearing**"). Because it had its origins in the originally dictated decision, it has a more conversational tone. As a general matter, it speaks as of the time I issued the original decision, though by footnote (*see* n.8), I've updated it to describe an event that took place after I dictated the original decision.

-1-

FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP
*Attorneys for Phaneuf Plaintiffs*
1279 Route 300
Newburg, New York 12551
By:      Todd Garber, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

In February 2014, General Motors LLC ("**New GM**") announced ignition switch

defects in Chevy Cobalts and Pontiac G5s going back to the 2005 model year—at least

seemingly in material part before the chapter 11 filing of Reorganized Debtor General

Motors Corporation, now called Motors Liquidation Corp. ("**Old GM**"), from whom

New GM purchased the bulk of Old GM assets in a section 363 "free and clear" sale[2] in

July 2009.[3]  The 2014 announcement came many years after ignition switch issues were

first discovered by at least some personnel at Old GM.  Very nearly immediately after

New GM's announcement, a large number of class actions (and to a lesser extent,

individual lawsuits) relating to those defects, referred to here as the "**Ignition Switch**

**Actions**," were commenced against New GM.

At the time of the 363 Sale, New GM assumed many, but much less than all, of

Old GM's liabilities.[4]  Focusing on that distinction, in April 2014, New GM filed a

---

[2]        I approved the sale—referred to here as the "**363 Sale**"—by order dated July 5, 2009 (the "**Sale Order**") (ECF No. 2968), and the sale closed a few days thereafter.

[3]        In a February 2014 letter to the National Traffic and Highway Administration, New GM made reference to 2005–2007 model year Chevy Cobalts, and 2007 model year Pontiac G5s.  Defective ignition switches, manufactured at a time yet to be determined (before the 363 Sale, after the 363 Sale, or both), may also have been installed in other vehicles, including those in other (and possibly later) model years, including some after the 363 Sale.  I make no findings as to any of these matters at this point in time; I merely identify them as matters that may eventually need to be stipulated to or otherwise resolved.

[4]        The Old GM  liabilities assumed by New GM, on the one hand, and not assumed, on the other, were described in the 363 Sale's underlying sale agreement, captioned "Amended and Restated Master Purchase and Sale Agreement," often referred to by the parties as the "**ARMSPA**," "**MPA**," or "**MSPA**."  As in the past—because, as I've repeatedly noted, all but the most common acronyms are singularly unhelpful to those who haven't been living with a case—I instead use the

motion before me (the "**Motion to Enforce**")[5] to enforce the free and clear provisions of
the Sale Order—contending (though these contentions are disputed) that most, if not all,
of the claims in the Ignition Switch Actions related to vehicles or parts manufactured and
sold by Old GM; that the Ignition Switch Actions assert liabilities not assumed by New
GM; and that the Sale Order's free and clear provisions proscribe such claims.  At very
nearly the same time, counsel for one group of plaintiffs—the "**Groman Plaintiffs**"—
commenced a class action adversary proceeding in this Court (the "**Groman
Adversary**")[6] seeking a declaration that their claims were not so proscribed.

In this jointly administered proceeding in which I address issues in New GM's
Motion to Enforce and the Groman Adversary,[7] I must determine whether one out of
88 Ignition Switch Actions—brought by a group of plaintiffs (the "**Phaneuf Plaintiffs**"),
suing on their own behalf and on behalf of a purported class—should be allowed to
proceed when the plaintiffs in every other Ignition Switch Actions agreed to stay their
actions while the issues in the Motion to Enforce were being litigated.[8]

---

[  ] more descriptive term "**Sale Agreement**."  *See, e.g., Castillo v. Gen. Motors LLC (In re Motors
Liquidation Co.)*, 2012 Bankr. LEXIS 1688, at *13 n.25, 2012 WL 1339496, at *5 n.25 (Bankr.
S.D.N.Y. Apr. 17, 2012) (Gerber, J.), *aff'd*, 500 B.R. 333 (S.D.N.Y. 2013) (Furman, J.) ("The Sale
Agreement was more formally entitled 'Amended and Restated Master Purchase and Sale
Agreement,' and referred to more than occasionally as the 'ARMSPA.'  By reason of the Court's
dislike of acronyms, which rarely are helpful to anyone lacking intimate familiarity with the
subject, the Court simply says 'Sale Agreement'").

[5]    ECF No. 12620.

[6]    Adv. No. 14-01929.

[7]    I determined early on that the largely overlapping issues in the contested matter that resulted from
New GM's Motion to Enforce and the Groman Adversary should be heard together in this Court.
For brevity I'll hereafter refer to the Motion to Enforce as a shorthand means to collectively refer
to both.

[8]    At the time I orally ruled with respect to the Phaneuf Plaintiffs' issues at the July 2 Hearing, they
were the only plaintiff group that had declined to stipulate to stay its Ignition Switch Action.  In
proceedings later that day, I granted leave to two initially *pro se* individual plaintiffs (the "**Elliott
Plaintiffs**"), who had so stipulated but later retained counsel, to be relieved of the stipulation they
had agreed to while *pro se*.  Thus, after having delivered my oral decision on this matter, I now
have one more group of plaintiffs seeking to proceed before all of the others.

-3-

Some of the issues that I'll later need to decide may turn out to be difficult, but those here are not. I rule that the Phaneuf Plaintiffs should be treated no differently than those in the 87 other Ignition Switch Actions who agreed to voluntary stays, with adherence to the orderly procedures in this Court that were jointly agreed to by counsel for those other plaintiffs and New GM. The Phaneuf Plaintiffs' complaint alleges matters that, on their face, involve matters preceding Old GM's chapter 11 filing and 363 sale, with respect to which the Sale Order's "free and clear" injunctive provisions, at least in the first instance, apply. And the Phaneuf Plaintiffs would not be prejudiced at all, much less materially, by litigating their needs and concerns along with the other New GM consumers raising substantially identical claims. Though injunctive provisions are already in place and thus a preliminary injunction is unnecessary, New GM has also shown an entitlement to a preliminary injunction staying the Phaneuf Plaintiffs from proceeding with their litigation elsewhere while the issues here are being determined.

My Findings of Fact, Conclusions of Law, and bases for the exercise of my discretion follow.

<u>Findings of Fact</u>

As previously noted, very nearly immediately after New GM's public announcement of the ignition switch defects, a very large number of Ignition Switch Actions were commenced against New GM. Although back in 2009, New GM had voluntarily undertaken to assume liability for death, personal injury, and property damage arising from accidents and incidents after the 363 Sale, these lawsuits were for something else—for "economic loss," which I understand to cover (possibly among things) claims for alleged diminishment in value of affected vehicles, out of pocket expenses, inconvenience, and, additionally, punitive damages, RICO damages, and attorneys fees.

-4-

*A. The Context of this Controversy*

Very shortly after it filed its Motion to Enforce, New GM sought a conference with me to establish procedures to manage the litigation of its motion. With the Groman Adversary also having been filed, and with additional similar litigation foreseeable, I granted new GM's request for the conference. I solicited comments from interested parties with respect to the agenda for that conference, and held an on-the-record conference on May 2 (the "**May 2 Conference**"). By the time of the May 2 Conference, I understood there to be about 65 Ignition Switch Actions; I'm informed that their number has now reached 88.

To deal with the very large number of plaintiffs' attorneys who might be impacted by any rulings I might issue, I asked them to designate a smaller group of their number who'd speak on their behalf. The plaintiffs' lawyers community did so. They designated the law firms of Brown Rudnick, LLP; Caplin & Drysdale, Chartered; and Stutzman, Bromberg, Esserman & Plifka, PC (whose practices include the representation of tort and asbestos plaintiffs in bankruptcy courts) to speak on their behalf; those three firms came to be known as the "**Designated Counsel**." And at the May 2 Conference, it became apparent that this controversy had the potential to impact prepetition creditors of Old GM, who, under Old GM's reorganization plan, had become unit holders ("**Unit Holders**") in a General Unsecured Creditors Trust—referred to colloquially as the "**GUC Trust**"—which, among other things, would quarterback objections to claims on behalf of Old GM unsecured creditors, whose recoveries might be diluted by others' claims against Old GM. Thus I determined that I should give counsel for the GUC Trust and Unit Holders the opportunity to be heard as well. Though I provided means for other plaintiffs' counsel to be heard to the extent that the Designated Counsel didn't

-5-

satisfactorily present the others' views, I ruled that I should primarily hear from Designated Counsel to avoid duplication and to allow the issues to be decided in an orderly manner.

At the May 2 Conference, with knowledge of the injunctive provisions of the Sale Order, I determined that while the litigation process was underway in this Court, plaintiffs in Ignition Switch Actions would either

(i) agree to enter into a stipulation ("**Stay Stipulation**") with New GM staying the Ignition Switch Actions they'd brought elsewhere, or

(ii) file with the Bankruptcy Court a "**No Stay Pleading**"—as later defined in a heavily negotiated scheduling order (the "**May 16 Order**")[9] I signed after the May 2 Conference—setting forth why they believed their Ignition Switch Actions should not be stayed.

The May 16 Order further provided that after September 1, any party may request that I "modify the stay for cause shown, including based on any rulings in this case, or any perceived delay in the resolution of the Threshold Issues."[10]

---

[9]         ECF No. 12697.

[10]        The "Threshold Issues" are:

a.  Whether Plaintiffs' procedural due process rights were violated in connection with the Sale Motion and the Sale Order and Injunction, or alternatively, whether Plaintiffs' procedural due process rights would be violated if the Sale Order and Injunction is enforced against them ("**Due Process Threshold Issue**");

b.  If procedural due process was violated as described in (a) above, whether a remedy can or should be fashioned as a result of such violation and, if so, against whom ("**Remedies Threshold Issue**");

c.  Whether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust) ("**Old GM Claim Threshold Issue**"); and

On June 9, the Ignition Switch Actions, which were brought in many judicial districts in the United States, were transferred, under 28 U.S.C. § 1407, upon a decision of the Judicial Panel on Multidistrict Litigation[11] to the United States District Court for the Southern District of New York.  They're now pending in this district for pretrial purposes before the Hon. Jesse Furman, United States District Judge.  Each of Judge Furman and I has granted comity to the other, and he has entered a scheduling order in his court that accomplishes his needs while respecting mine.[12]  By a subsequent MDL Panel order, the Phaneuf Plaintiffs' action is before Judge Furman too.

Plaintiffs in 87 out of 88 Ignition Switch Actions agreed to enter into stay stipulations.[13]  But the Phaneuf Plaintiffs declined to do so.  Instead, they filed a No Stay Pleading, contending that they are asserting only post-sale claims, and thus that their claims should be treated differently.  They argue that they should be allowed to proceed with their action even while the Motion to Enforce is pending.

---

        d.  If any or all of the claims asserted in the Ignition Switch Actions are or could be claims against the Old GM bankruptcy estate (and/or the GUC Trust), should such claims or the actions asserting such claims nevertheless be disallowed/dismissed on grounds of equitable mootness (**"Equitable Mootness Threshold Issue"**).

[11]    *See In re General Motors LLC Ignition Switch Litigation*, --- F.Supp.2d ---, 2014 U.S. Dist. LEXIS 79713, 2014 WL 2616819 (J.P.M.L June 9, 2014) ("***JPML Decision***").

[12]    Order No. 1, *In re General Motors LLC Ignition Switch Litigation*, No. 14-MC-2543 (S.D.N.Y. June 24, 2014), ECF No. 3 (the "**June 24 Order**").

[13]    But see n.8 above, with respect to the Elliott Plaintiffs' request, which I granted, to withdraw from their earlier stipulation.

-7-

### B. The Sale Agreement and Sale Injunctions

As noted above, the Sale Agreement and Sale Order set out Old GM liabilities that New GM would assume and not assume.[14]  Under the Sale Agreement, New GM did not assume liability for most "**Product Liability Claims**" (as there defined).[15]  But New GM expressly assumed responsibility for claims for death, personal injury or damage to property caused by "accidents or incidents" first occurring after the 363 Sale,[16] even if such might otherwise be claims against Old GM.[17]

Under the Sale Agreement (and the Sale Order, which had corresponding provisions), New GM also took on, as additional Assumed Liabilities, some, but not all, claims other than for death, personal injury or property damage caused by accidents or incidents.  In addition, the Sale Order included several injunctive provisions.  Relevant provisions of the Sale Order follow.

### 1. Sale Order Provisions re Assumed Liabilities

Under the Sale Order (and as described with greater precision there), New GM assumed Old GM's obligations under express warranties (colloquially referred to as the "glove box" warranty) that had been delivered in connection with the sale of vehicles and

---

[14]     Liabilities New GM agreed to assume were called "**Assumed Liabilities**," in each of the Sale Agreement and Sale Order.  Those New GM did not assume (and that Old GM retained) were called "**Retained Liabilities**."

[15]     *See* Sale Agreement § 2.3(a)(ix) (as amended on June 30, 2009 (see pages 111–12 of ECF No. 2968-2)).

[16]     *Id.*

[17]     *See generally In re Motors Liquidation Co.*, 447 B.R. 142, 149 (Bankr. S.D.N.Y. 2011) (Gerber, J.) ("*GM-Deutsch*") (construing the "incidents" portion of the "accidents or incidents" language (in the context of claims against New GM by the estate of a consumer who had been in an accident before the 363 Sale, but died thereafter) as covering more than just "accidents," but covering things that were similar, such as fires, explosions, or other definite events that caused injuries and resulted in the right to sue).

vehicle parts prior to the 363 Sale.[18] But New GM did not assume responsibility for
other alleged warranties, including implied warranties and statements in materials such as
individual customer communications, owner's manuals, advertisements, and other
promotional materials.[19]

The Sale Order also provided that except for the Assumed Liabilities expressly set
forth in the Sale Agreement, New GM would not "have any liability for any claim that
arose prior to the Closing Date, relates to the production of vehicles prior to the Closing
Date, or otherwise is assertable against the Debtors or is related to the Purchased Assets
prior to the Closing Date."[20] And it went on to say that:

> The Purchaser [New GM] shall not be deemed, as a
> result of any action taken in connection with the
> MPA [Sale Agreement] or any of the transactions or
> documents ancillary thereto or contemplated
> thereby or in connection with the acquisition of the
> Purchased Assets, to:
>
> > (i) be a legal successor, or otherwise
> > be deemed a successor to the Debtors (other
> > than with respect to any obligations arising
> > under the Purchased Assets from and after
> > the Closing);
>
> > (ii) have, de facto or otherwise,
> > merged with or into the Debtors; or
>
> > (iii) be a mere continuation or
> > substantial continuation of the Debtors or
> > the enterprise of the Debtors.

---

[18]   *See* Sale Order ¶ 56.  New GM also assumed Old GM obligations under state "lemon law"
statutes—which generally require a manufacturer to provide a consumer remedy when the
manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute,
after a reasonable number of attempts as further defined in the statute—and other related
regulatory obligations under such statutes.  *Id.*

[19]   *Id.*

[20]   Sale Order ¶ 46.

> Without limiting the foregoing, the Purchaser shall
> not have any successor, transferee, derivative, or
> vicarious liabilities of any kind or character
>
> for any claims, including, but not limited to, under
> any theory of successor or transferee liability, de
> facto merger or continuity, environmental, labor and
> employment, and products or antitrust liability,
> whether known or unknown as of the Closing, now
> existing or hereafter arising, asserted, or unasserted,
> fixed or contingent, liquidated or unliquidated.[21]

The Sale Order also provided:

> Except for the Assumed Liabilities, or as expressly
> permitted or otherwise specifically provided for in
> the MPA or this Order,
>
> the Purchaser shall have no liability or
> responsibility for any liability or other obligation of
> the Sellers [Old GM and its Debtor subsidiaries]
> arising under or related to the Purchased Assets.
>
> Without limiting the generality of the foregoing,
> and except as otherwise specifically provided in this
> Order and the MPA,
>
> the Purchaser shall not be liable for any claims
> against the Sellers or any of their predecessors or
> Affiliates, and
>
> the Purchaser shall have no successor, transferee, or
> vicarious liabilities of any kind or character,
>
> including, but not limited to, any theory of antitrust,
> environmental, successor, or transferee liability,
> labor law, de facto merger, or substantial continuity,
>
> whether known or unknown as of the Closing, now
> existing or hereafter arising, whether fixed or
> contingent, asserted or unasserted, liquidated or
> unliquidated, with respect to the Sellers or any
> obligations of the Sellers arising prior to the
> Closing.[22]

---

[21]    Sale Order ¶ 46 (reformatted for readability).

[22]    Sale Order ¶ 48 (reformatted for readability).

-10-

## 2. Sale Order Injunctive Provisions

Importantly for this matter, the Sale Order also included injunctive provisions.

The first of them provided, in relevant part:

> Except as expressly permitted or otherwise specifically provided by the MPA or this Order,
>
> all persons and entities, including, but not limited to . . . litigation claimants . . .
>
> holding . . . claims . . . of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against . . . a Seller . . .
>
> arising under or out of, in connection with, or in any way relating to, the Sellers, the Purchased Assets, the operation of the Purchased Assets prior to the Closing, or the 363 Transaction,
>
> are forever barred, estopped, and permanently enjoined (with respect to future claims or demands based on exposure to asbestos, to the fullest extent constitutionally permissible)
>
> from asserting against the Purchaser, its successors or assigns, its property, or the Purchased Assets, such persons' or entities' . . . claims . . . , including rights or claims based on any successor or transferee liability.[23]

The second injunctive provision provided, in relevant part:

> Effective upon the Closing and except as may be otherwise provided by stipulation filed with or announced to the Court with respect to a specific matter or an order of the Court,
>
> all persons and entities are forever prohibited and enjoined

---

[23]    Sale Order ¶ 8 (reformatted for readability).

> from commencing or continuing in any manner any
> action or other proceeding, whether in law or
> equity,
>
> in any judicial, administrative, arbitral, or other
> proceeding against the Purchaser . . . or the
> Purchased Assets, with respect to any
>
> > (i) claim against the Debtors other than
> > Assumed Liabilities, or
> >
> > (ii) successor or transferee liability of the
> > Purchaser for any of the Debtors, including,
> > without limitation, the following actions:
> >
> > > (a) commencing or continuing any
> > > action or other proceeding pending
> > > or threatened against the Debtors as
> > > against the Purchaser, or its
> > > successors, assigns, affiliates, or
> > > their respective assets, including the
> > > Purchased Assets;
> > >
> > > . . . .
> > >
> > > (e) commencing or continuing any
> > > action, in any manner or place, that
> > > does not comply, or is inconsistent
> > > with, the provisions of this Order or
> > > other orders of this Court, or the
> > > agreements or actions contemplated
> > > or taken in respect thereof . . . .[24]

## C.. *The Phaneuf Plaintiffs' Claims*

The Phaneuf Plaintiffs' complaint alleges that after the 363 Sale (which it will be

recalled took place in July 2009), at various times in the period from November 2009 to

September 2010, Phaneuf Plaintiffs:

- Lisa Phaneuf purchased a 2006 Chevy HHR;

- Adam Smith purchased a 2007 Pontiac Solstice; and

---

[24]    Sale Order ¶ 47 (reformatted for readability).

-12-

- Catherine and Joseph Cabral purchased a 2007 Chevy Cobalt.[25]

Each was a vehicle manufactured by Old GM.[26]

But the Phaneuf Plaintiffs' Ignition Switch Action was brought against New GM.
New GM was sued as alleged "successor in interest" to Old GM,[27] and the Phaneuf
Plaintiffs repeatedly rely on alleged conduct of Old GM, in part by referring to the two
entities collectively,[28] and in part by specific reference to acts undertaken by Old GM
before New GM was created.  In seven places in their complaint, the Phaneuf Plaintiffs
speak of acts that took place in February 2005;[29] April 2005;[30] June 2005;[31] March

---

[25]    See Phaneuf Compl. ¶¶ 8, 9, 15, ECF No. 12698-10 ("**Compl.**").

[26]    The Phaneuf Plaintiffs' Complaint suggests that others in their group—Mike Garcia, who bought a
2010 Cobalt; Javier Delacruz, who bought a 2009 Cobalt (in September 2009, which conceivably
could have been manufactured after the July 2009 363 Sale); Steve Sileo, who bought a 2010
Cobalt; Steven Bucci, who bought a 2009 Cobalt (in November 2009, which, like Delacruz's
Cobalt, conceivably could have been manufactured after the July 2009 363 Sale); and David
Padilla, who purchased a 2010 Cobalt (see Compl. ¶¶ 10–14)—might have purchased vehicles
manufactured by New GM, rather than Old GM, and that they thus might have factual
circumstances that distinguish them from Phaneuf, Smith, and the Cabrals.  But all of the Phaneuf
Plaintiffs sue under a common complaint.  In the briefing to follow, Garcia, Delacruz, Sileo, Bucci
and Padilla, like others, will be free to flesh out the facts with respect to the manufacture of their
vehicles, and to point out any factual distinctions that might be warranted.

[27]    See Compl. at page 1, before the beginning of numbered paragraphs ("Plaintiffs . . . allege the
following against Defendant General Motors LLC ('New GM') *successor-in-interest to General
Motors Corporation ('Old GM')* (collectively, the 'Company,' or 'GM')") (emphasis added).

[28]    The Phaneuf Plaintiffs' effort to treat Old GM and New GM as a single entity is inappropriate, as
a matter of bankruptcy law, if not as a matter of other law as well.  As if it cures the deficiency,
the Phaneuf Plaintiffs continue, in a footnote:

> Any reference to "GM" relating to a date before July 10, 2009
> means Old GM.  Any reference to "GM" relating to a date
> after July 10, 2009 means New GM.  Any reference to "GM"
> that does not related to a specific date means Old GM and
> New GM, collectively.

Compl. n.2.  That tactic underscores the Phaneuf Plaintiffs' efforts to muddy the distinctions
between the two entities, and to impose liability on New GM based on Old GM's conduct.

[29]    See Compl. ¶ 26 ("In 2005, for example, GM launched the 'Only GM' advertising campaign. . . .
'Safety and security' were the first two features highlighted in the Company's February 17, 2005
press release describing the campaign.").

[30]    Id. ¶ 27 ("Similarly, an April 5, 2005 press release about the 'Hot Button marketing program'
stated that the 'Value of GM's Brands [Was] Bolstered By GM's Focus On Continuous Safety'
and explained that the Hot Button program was 'intended to showcase the range of GM cars,

2005;[32] November 2005;[33] April 2006;[34] and as early as 2003.[35]  Each of those acts took

place before the formation of New GM, and would have been more candidly described in

the Phaneuf Plaintiffs' complaint if, in each instance, the reference to "GM" were to "Old

GM."  The allegations do not describe actions taken by New GM.

I don't now make any finding as to any respects in which New GM might be

liable for its own post-sale conduct, or whether the Sale Order (or any part of it) should

be invalidated, by reason of due process concerns or any of the other matters that

Designated Counsel will be briefing in the upcoming weeks.[36]  But I do find the Phaneuf

Plaintiffs' efforts to merge pre- and post-sale acts, and to place reliance on the alleged

conduct of Old GM, especially collectively, are much more than sufficient for me to find

that the Phaneuf Plaintiffs place material reliance on Old GM actions that took place

before the Sale Order, and assert claims with respect to vehicles that were manufactured

before the 363 Sale.  Thus I find as a fact, or mixed question of fact and law, that the

---

trucks and SUVs that offer drivers continuous safety-protection before, during and after a
vehicle collision.'") (hyphen in original).

[31]    *Id.* ¶ 28 ("On June 14, 2005, GM issued a press release stating that 'Safety [Was The] No. 1
Concern For Women At The Wheel' . . . .").

[32]    *Id.* ¶ 29 ("In a statement aired on Good Morning America on March 7, 2005, a GM
spokesperson stated that 'the [Chevrolet] Cobalt exceeds all Federal safety standards that
provide – significant real-world safety before, during, and after a crash.'") (alteration and
hyphen in original).

[33]    *Id.* ("In November 2005, GM ran radio advertisements stating that 'One of the best things to
keep you [and your] family safe is to buy a Chevy equipped with OnStar . . . from Cobalt to
Corvette there's a Chevy to fit your budget.'") (alterations in original).

[34]    *Id.* ¶ 41 ("In April 2006, GM attempted to fix the Ignition Defect by replacing the original detent
spring and plunger with a longer detent spring and plunger.").

[35]    *Id.* ¶ 45 ("[I]n 2003, a GM service technician observed the Ignition Defect while he was
driving").

[36]    I likewise don't make a finding now as to the significance of the pre- or post-sale timing of the
design or manufacture of *parts* that might have gone into vehicles that were built pre- or post-sale.
I assume that issues of that character will be addressed by Designated Counsel, New GM, and
others in the briefing in the upcoming weeks, and those parties deserve to be heard before I make
any decisions in that regard.

threshold applicability of the Sale Order—and its injunctive provisions—has easily been established in the first instance, at least for the purposes of the Phaneuf Plaintiffs' claims.[37]

Discussion

In that factual context, I rule that the Phaneuf Plaintiffs' claims will be treated the same as those in the other 87 Ignition Switch Actions. The stay already imposed by the injunctive provisions of Paragraphs 8 and 47 of the Sale Order (and that I may also impose by preliminary injunction) will remain in place insofar as it affects the Phaneuf Plaintiffs' complaint—subject to the right, shared by all of the other plaintiffs in the Ignition Switch Actions, to ask that I revisit the issue after September 1.

*A. Applicability of the Sale Order*

Paragraph 8 of the Sale Order provides, among other things, that all persons and entities "are . . . enjoined . . . from asserting against the Purchaser [New GM] . . . such persons' or entities' . . . claims . . ., including rights or claims based on any successor or transferee liability."

Similarly, Paragraph 47 of the Sale Order provides, among other things, that all persons and entities "are . . . enjoined from commencing or continuing in any manner any action or other proceeding . . . against the Purchaser . . . with respect to any (i) claim against the Debtors other than Assumed Liabilities, or (ii) successor or transferee liability of the Purchaser for any of the Debtors . . . ."

---

[37]    That is not to say, of course, that what the Sale Order says will be the end of the inquiry, either in the Phaneuf Plaintiffs' case or in the case of the other 87 Ignition Switch Actions. By reason of the due process contentions that the other litigants will address, or otherwise, the Sale Order may turn out to have exceptions or self-destruct. But for now it's in place.

I've found as a fact—based on the Phaneuf Plaintiffs' complaint's express

reference to New GM as the "successor in interest" to Old GM,[38] and the facts that at

least three of them purchased cars manufactured before the 363 Sale;[39] that their

complaint (apparently intentionally) merges pre- and post-sale conduct by Old GM and

New GM;[40] and that their complaint places express reliance on at least seven actions by

Old GM, before New GM was formed[41]—that at least much of the Phaneuf Plaintiffs'

complaint seeks to impose liability on New GM based on Old GM's pre-sale acts.

Efforts of that character are expressly forbidden by the two injunctive provisions just

quoted. Though I can't rule out the possibility that a subset of matters the Phaneuf

Plaintiffs might ultimately show would not similarly be forbidden, at this point the Sale

Order injunctive provisions apply. And it need hardly be said that I have jurisdiction to

interpret and enforce my own orders,[42] just as I've previously done, repeatedly, with

respect to the very Sale Order here.[43]

---

[38]     *See* page 13 & n.27 above.

[39]     *See* pages 12–13 & n.25 above.

[40]     *See* page 13 & n.28 above.

[41]     *See* pages 13–14 & nn.29–35 above.

[42]     *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("***Travelers***") ("[A]s the Second
Circuit recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its
own prior orders"); *see also In re Lyondell Chem. Co.*, 445 B.R. 277, 287 (Bankr. S.D.N.Y. 2011)
(Gerber, J.) (same).

[43]     *See Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 2012 Bankr. LEXIS 1688, at
*17, 20, 31, 50, 2012 WL 1339496, at *6–7, 9, 14 (Bankr. S.D.N.Y. April 17, 2012) (Gerber, J.),
*aff'd*, 500 B.R. 333 (S.D.N.Y. 2013) (Furman, J.) (interpreting the Sale Order, among other
extrinsic evidence bearing on the intent of Old GM and New GM in entering into the Sale
Agreement, to aid in determining whether New GM assumed Old GM's settlement with the
Castillo Plaintiffs); *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 2013 Bankr.
LEXIS 620, at *4, 11–24, 2013 WL 620281, at *1, 4–8 (Bankr. S.D.N.Y. Feb. 19, 2013) (Gerber,
J.) (construing the Sale Order, and then remanding the remainder of a controversy, involving
issues unrelated to the Sale Order, to the Eastern District of Michigan); *GM-Deutsch*, discussed at
n.17 above.

Other judges in the Southern District of New York, at both the District Court and Bankruptcy
Court levels, have recognized this as well.  *See, e.g.*, *In re Grumman Olson Indus., Inc.*, 467 B.R.

Thus unless and until I rule, after hearing from counsel in the other 87 Ignition

Switch Actions, that I should not enforce the Sale Order, in whole or in part (or that with

respect to any particular matters, the Sale Order does not apply), the Phaneuf Plaintiffs

remain enjoined under it.  As the Supreme Court held in *Celotex*,[44] persons subject to an

injunctive order issued by a court with jurisdiction are expected to obey that decree until

it is modified or reversed, even if they have proper grounds to object to the order.

Then even assuming (though this is debatable) that I could deprive New GM of

the benefits of the Sale Order's injunctive provisions in the exercise of my discretion, I

am not prepared to do so now.  I have 88 Ignition Switch Actions before me—in most of

which parties are likely to make similar contentions.  Under section 105(d) authority[45]

---

694 (S.D.N.Y. 2012) (Oetken, J.), *aff'g*, 445 B.R. 243, 247–50 (Bankr. S.D.N.Y. 2011) (Bernstein, C.J.) ("**Grumman Olson**") (confirming that a bankruptcy judge can interpret the scope and effect of his or her court's prior sale order, post-confirmation, and as between non-debtors (citing *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 228–31 (2d Cir.2002) (holding that Bankruptcy Court could exercise continuing postconfirmation jurisdiction over non-debtor parties, in part because "the dispute . . . was based on rights established in the sale order" and noting that a "bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders"))); *In re Old Carco LLC*, 505 B.R. 151, 159 & 163 n.17 (Bankr. S.D.N.Y. 2014) (Bernstein, C.J.) ("the Court retains bankruptcy jurisdiction under 28 U.S.C. § 1334 to interpret its prior sale order even when the dispute involves non-debtor third parties"); *see also Moelis Co. LLC v. Wilmington Trust FSB (In re Gen. Growth Props., Inc.)*, 460 B.R. 592, 595 (Bankr. S.D.N.Y. 2011) (Gropper, J.) ("[a] bankruptcy court always has jurisdiction to interpret its own orders.  It does not matter that the State Court Action is purportedly between two non-debtors or the Chapter 11 Cases have been confirmed.") (citation omitted).

[44]     *Celotex Corp. v. Edwards*, 514 U.S. 300, 306–07 (1995).

[45]     Bankruptcy Code section 105(d) provides:

> The court, on its own motion or on the request of a party in interest—
>
>> (1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and
>>
>> (2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, may issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically . . . .

-17-

given to me by Congress, I established an orderly process, with input from Designated
Counsel and counsel for New GM, the Groman Adversary Plaintiffs, the GUC Trust and
others by which I can fairly address these issues. It would be grossly unfair to the
plaintiffs in the 87 Ignition Switch Actions who stipulated to stay their cases to give a
single litigant group leave to proceed on its own. My efforts to manage 88 cases, with
largely overlapping issues, require that they proceed in a coordinated way.

There is no basis in law or equity, or logic, for the notion that I should except one
plaintiff group from the process to which the other 87 litigant groups are bound. Making
an exception for the Phaneuf Plaintiffs would be monumentally bad case management.
During the July 2 Hearing, we had lengthy discussion as to what would make the most
sense in managing the issues in this case—which are in many respects difficult ones.
Except for the limited purpose of having concluded that the Phaneuf Plaintiffs' complaint
raises contentions forbidden, in the first instance, by the Sale Order, I need to minimize
piecemeal rulings now, by me or by any other judge—assuming that he or she would
disregard express provisions in the Sale Order giving me exclusive jurisdiction to decide
the matters before me now.[46] Nor should I simply let the Phaneuf Plaintiffs' claims
proceed without the scrutiny that all of the other Ignition Switch Action claims will
undergo.

I've determined that the Sale Order applies in the first instance. The procedures
established by my earlier orders are necessary to ensure the fair adjudication of the issues
before me. The Phaneuf Plaintiffs have not come close to making a sufficient showing as

---

[46]      *See* Sale Order ¶ 71 ("This Court retains exclusive jurisdiction to enforce and implement the terms
         and provisions of this Order, the MPA, . . . and each of the agreements executed in connection
         therewith, . . . including, but not limited to, retaining jurisdiction to . . . (c) resolve any disputes
         arising under or related to the MPA, except as otherwise provided therein . . . .").

to why I should make an exception for them—nor for allowing them to proceed ahead of
the other 87 Ignition Switch Actions.

## B. Preliminary Injunction

Additionally, I determine that even if the Sale Order lacked the injunctive
provisions it has, it would be appropriate to enter a preliminary injunction protecting New
GM from the need now to defend claims that, under the Sale Agreement and Sale Order,
it did not assume, and preventing the piecemeal litigation of the Phaneuf Plaintiffs'
claims ahead of all of the other lawsuits similarly situated.

The standards for entry of a preliminary injunction in the Second Circuit, as set
out in its well-known decision in *Jackson Dairy*[47] and its progeny,[48] are well established.
As stated in *Jackson Dairy*, "the standard in the Second Circuit for injunctive relief
clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success
on the merits or (2) sufficiently serious questions going to the merits to make them a fair
ground for litigation and a balance of hardships tipping decidedly toward the party
requesting the preliminary relief."[49]  Those requirements are easily met here.

### 1. Irreparable Harm

Here, irreparable injury, in terms of the case management concerns and prejudice
to the litigants in the other 87 actions, has been established.  It's foreseeable, if not
obvious, that at least many of the 87 other litigants will present issues that the Phaneuf
Plaintiffs now present.

---

[47]     *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ("**Jackson Dairy**").

[48]     *See, e.g.*, *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F. 3d 206, 215
(2d Cir. 2012) (applying the *Jackson Dairy* standard, though not citing *Jackson Dairy* directly);
*UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citing
*Jackson Dairy*); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598
F.3d 30, 35 (2d Cir. 2010) (same).

[49]     *Jackson Dairy*, 596 F.2d at 72.

And when actions raise overlapping issues, even if they're not wholly congruent, coordinated disposition is essential.[50]  The facts that the Phaneuf Plaintiffs present may not appear in every one of those 88 cases.  But the chances that similar facts will not be present in at least many of them are remote.  I well understand the desires of litigants to get their cases moving as quickly as possible.  But those desires are insufficient to trump the normal case management concerns that I and most other judges have.

Indeed, these concerns underlie why MDL proceedings, like the one before Judge Furman, come into being.  For reasons that would be obvious to most, the MDL Panel determined that Ignition Switch Actions should be handled by a single judge for coordinated or consolidated pretrial proceedings.  Irreparable injury in terms of case management concerns, for each of me and Judge Furman (not to mention prejudice to the litigants in the other 87 actions), would plainly occur if I were to allow the Phaneuf Plaintiffs to proceed before all of the others.

Judge Furman's case management concerns were apparent in his June 24 Order,[51] which, among other things, set up his cases for adjudication in an orderly way,[52] just as I

---

[50]    Exemplifying this is the Phaneuf Plaintiffs' reliance on the Bankruptcy Court and District Court decisions in *Grumman Olson*, see n.43 above, 445 B.R. 243 (Bankr. S.D.N.Y. 2011) (Bernstein, C.J.), and 467 B.R. 694 (S.D.N.Y. 2012) (Oetken, J.), respectively.  I have no doubt whatever that in the subsequent proceedings before me in connection with the other 87 Ignition Switch Actions, Designated Counsel will place reliance on one or both of those cases, and that New GM will argue, in contrast, that in respects relevant here, those cases are distinguishable or wrongly decided.  (The GUC Trust may also wish to be heard on the *Grumman Olson* cases, though its likely position is less obvious.)  That is exactly why the Phaneuf Plaintiffs' contentions should not be heard on their own, and why I should not be making early judgments on the merits of the issues now—especially before Designated Counsel, New GM, the GUC Trust and any others with differing views have had a chance to be heard.

[51]    *See* n.12 above.

[52]    *See, e.g.*, June 24 Order at Section XI, regulating motion practice (providing that "[a]ny and all pending motions in the transferor courts are denied without prejudice, and will be adjudicated under procedures set forth in this Order and subsequent orders issued by this Court"); *id.* at Section XII, regulating discovery (providing that "[p]ending the development of a fair and efficient schedule, all outstanding discovery proceedings are suspended until further order of this Court, and no further discovery shall be initiated," but further providing that the June 24 Order

-20-

did.  Each of us recognizes the need for coordinated proceedings in a matter of this size and complexity.

### 2. *Sufficiently Serious Questions Going to the Merits*

But I don't need to, and should not, make a finding of likelihood of success on the merits.  That would require me to decide too much at this time, to the potential prejudice of the plaintiffs in the other 87 Ignition Switch Actions, New GM, and the GUC Trust.  I need not address likelihood of success because, as I've previously noted, serious questions going to the merits provide an alternate basis for the entry of a preliminary injunction, when coupled with the requisite tipping of hardships.

New GM has easily shown serious issues going to the merits with respect to relief from this Court, though it is premature for me to go beyond such a narrow finding.  It now appears, from the preceding discussion, that at least many of the Phaneuf Plaintiffs' claims were not assumed by New GM.  It's possible that the Phaneuf Plaintiffs or others could eventually establish that a subset of their claims would fall outside of the Sale Order's scope, but New GM has already made at least a prima facie showing that it did not assume a significant portion of the Phaneuf Plaintiffs' claims.  Similarly, while we know that other Ignition Switch Action plaintiffs will want to be heard on whether due process concerns place constraints on New GM's ability to rely on the Sale Order, the starting point is the Sale Order itself.  New GM has shown serious issues going to the merits with respect to the protection it was granted under the express language of that order, which would remain unless and until due process (or other) concerns make some or all of the Sale Order's protections drop out of the picture.

---

would not "preclude any discovery that is agreed or ordered to facilitate matters in the Bankruptcy Court, *provided that* to the extent any discovery is undertaken in the Bankruptcy Court, it shall be coordinated with this Court.") (italics in original).

3. *Balance of Hardships*

Finally, I turn to the balance of hardships.   That too weighs in New GM's favor.

The hardship to New GM if it were forced to litigate against the Phaneuf Plaintiffs on one track, and the other 87 actions, on another, would be significant.  New GM would have to defend largely similar claims in multiple forums, thus exposing it to both unnecessary expense and the possibility of inconsistent results.  And New GM, the non-bankruptcy court and I would all be prejudiced by confusion with respect to which issues could be decided in the non-bankruptcy court, and which would have to be decided here. There also could be prejudice to the plaintiffs in the other 87 Ignition Switch Actions, who might be affected (presumably not by *res judicata* or collateral estoppel, but still by *stare decisis*) by adverse rulings in the non-bankruptcy court.  And there would be significant prejudice to my case management needs, as the extensively negotiated coordinated mechanism for dealing with 88 separate actions, with coordinated briefing of threshold issues, was cut away.

By contrast, by being treated the same as the plaintiffs in the other 87 actions, the Phaneuf Plaintiffs would not be harmed in any material respect.  Their effort to proceed going it alone rests on the notion that another federal judge—here, Judge Furman— would consider it productive to allow one plaintiff group to move forward in its action while 87 others are stayed, pending the determination in this Court of critical threshold issues that will determine what claims may, and what claims may not, be asserted in light of the Sale Order.  That premise is unrealistic.

Reasons cited by the Multidistrict Panel in sending the Ignition Switch Actions to New York included its recognition that I "already [have] been called upon by both General Motors and certain plaintiffs to determine whether the 2009 General Motors

-22-

bankruptcy Sale Order prohibits plaintiffs' ignition switch defect lawsuits."[53] Proceeding without regard to the agreed-on mechanisms for determining those issues in this Court would frustrate the purpose for which the Ignition Switch Actions were sent here. And there is little or no basis for the Phaneuf Plaintiffs' assumption (or hope) that Judge Furman would deprive me of the ability to do my job.

To the contrary, Judge Furman has been highly sensitive to the Bankruptcy Court's needs and concerns. His first order provided that while he might appoint lead and liaison counsel before I ruled, he would be open to consideration as to whether such appointment should be amended if "the Bankruptcy Court rules that some, but less than all, of the claims now pending here may be asserted."[54] He asked counsel appearing before him to address, among other things, "the extent to which proceedings in this Court should proceed before rulings by the Bankruptcy Court, on the one hand, or should be deferred pending such rulings, on the other."[55] He provided, as I have, for an initial suspension of discovery, but provided further that his directive would not "preclude any discovery that is agreed or ordered to facilitate matters in the Bankruptcy Court, *provided that* to the extent any discovery is undertaken in the Bankruptcy Court, it shall be coordinated with this Court."[56] And he expressly provided that matters addressed in his order could be reconsidered "to the extent necessary or desirable to address any rulings

---

[53] *JPML Decision*, --- F.Supp.2d at ---, 2014 U.S. Dist. LEXIS 79713, at *4, 2014 WL 2616819, at *2.

[54] June 24 Order Section IX.

[55] *Id.* Section X(B).

[56] *Id.* Section XII (italics in original).

by the Bankruptcy Court or any higher court exercising appellate authority over the Bankruptcy Court's decision."[57]

Given the respect evidenced by each of the Multidistrict Panel and Judge Furman of the Bankruptcy Court's responsibility to determine matters pending here, there is no reasonable basis for a conclusion that Judge Furman would want—or allow—the Phaneuf Plaintiffs' action, which has been added to the lengthy list of cases before him, to proceed on its own.

Thus, even if I had not already found that the Sale Order's injunctive provisions already apply, New GM would be entitled to a preliminary injunction in its favor until I've ruled on the Threshold Issues.

<u>Conclusion</u>

For the above reasons, the Phaneuf Plaintiffs' Ignition Switch Action, like the others, will be stayed pending further rulings in the matters before me, or my further order.

This decision is without prejudice to the rights of the plaintiffs in all of the other 87 Ignition Switch Actions, and of any other parties (including, without limitation, New GM and the GUC Trust) who might hereafter want to be heard on issues before me.

New GM is to settle an order in accordance with this ruling.

Dated: New York, New York        ___*s/Robert E. Gerber*___
      July 30, 2014                     United States Bankruptcy Judge

---

[57]     *Id.* Section XVI.

# Exhibit 3

**Hearing Date and Time: To Be Determined**
**Objection Deadline: To Be Determined**
**Reply Deadline: To Be Determined**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.: 09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x


**MOTION OF GENERAL MOTORS LLC PURSUANT**
**TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE**
**COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION**
**(MONETARY RELIEF ACTIONS, OTHER THAN IGNITION SWITCH ACTIONS)**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ................................................................................................ 1

**BACKGROUND STATEMENT OF FACTS** .......................................................... 7

**I.**    **OLD GM FILED FOR PROTECTION UNDER THE BANKRUPTCY CODE IN JUNE 2009.** ........................................................................ 7

    A.    Objectors to the Sale Motion Argued that New GM Should Assume Additional Liabilities of the Type Plaintiffs Now Assert in the Monetary Relief Actions. ...................................................... 8

    B.    The Court Issued Its Sale Order And Injunction, And The Product Liability Claimants And Others Appealed Because They Objected To The Fact That New GM Was Not Assuming *Their* Liabilities. ..................................... 9

    C.    Upon Approval Of The Sale Agreement And Issuance Of The Sale Order And Injunction, New GM Assumed Certain Narrowly Defined Liabilities, But The Bulk Of Old GM's Liabilities Remained With Old GM. ...................... 11

    D.    The Court's Sale Order And Injunction Expressly Protects New GM From Litigation Over Retained Liabilities. ................................... 13

**II.**   **NEW GM HAS RECALLED CERTAIN VEHICLES AND IN RESPONSE, PLAINTIFFS HAVE FILED MONETARY RELIEF ACTIONS.** ........................... 15

**NEW GM'S ARGUMENT TO ENFORCE THE COURT'S SALE ORDER AND INJUNCTION** ............................................................................. 17

**I.**    **THIS COURT'S SALE ORDER AND INJUNCTION SHOULD BE ENFORCED.** ......................................................................................... 17

**II.**   **NEW GM CANNOT BE HELD LIABLE FOR OLD GM'S ALLEGED CONDUCT, EITHER DIRECTLY OR AS OLD GM'S ALLEGED "SUCCESSOR."** .................................................................................... 20

**III.**  **PLAINTIFFS' WARRANTY ASSERTIONS AND STATE LEMON LAW ALLEGATIONS DO NOT ENABLE THEM TO CIRCUMVENT THE COURT'S SALE ORDER AND INJUNCTION** ............................................. 22

    A.    The Limited Glove Box Warranty is Not Applicable.  But As a Practical Matter, Plaintiffs Already Are Obtaining Such Relief As Part of the Recall. ....................................................................... 22

**Page**

    B.    Any Purported State Lemon Law Claims Are Premature At Best, And Cannot Be Adequately Pled. ................................................................................ 24

**CONCLUSION** .................................................................................................... **25**

**NOTICE AND NO PRIOR REQUESTS** ................................................................ **27**

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ayers v. Gen. Motors,*
    234 F.3d 514 (11th Cir. 2000) .............................................................................12

*Back v. LTV Corp. (In re Chateaugay Corp.),*
    213 B.R. 633 (S.D.N.Y. 1997)...........................................................................18

*Burton v. Chrysler Group, LLC (In re Old Carco LLC),*
    492 B.R. 392 (Bankr. S.D.N.Y. 2013)......................................................22, 24, 25

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.),*
    428 B.R. 43 (S.D.N.Y. 2010)....................................................................8, 11, 13

*In re Cont'l Airlines, Inc.,*
    236 B.R. 318 (Bankr. D. Del. 1999) ...................................................................17

*In re Gen. Motors Corp.,*
    407 B.R. 463 (Bankr. S.D.N.Y. 2009)..............................................................9, 10

*In re Gen. Motors Corp.,*
    No. M 47 (LAK), 2009 WL 2033079 (S.D.N.Y. July 9, 2009).................................4

*In re Gruntz,*
    202 F.3d 1074 (9th Cir. 2000) ............................................................................20

*Handy v. Gen. Motors Corp.,*
    518 F.2d 786 (9th Cir 1975) ...............................................................................12

*In re McGhan,*
    288 F.3d 1172 (9th Cir. 2002) ............................................................................19

*In re Motors Liquidation Co.,*
    No. 09-50026 (REG), 2011 WL 6119664 (Bankr. S.D.N.Y. 2011) .......................18

*Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.),*
    430 B.R. 65 (S.D.N.Y. 2010)...............................................................................11

*Parker v. Motors Liquidation Company,*
    Case No. 10-4882-bk (2d Cir. July 28, 2011)......................................................11

*Pratt v. Ventas, Inc.,*
    365 F.3d 514 (6th Cir. 2004) .............................................................................19

**Page**

*Spartan Mills v. Bank of Am. Ill.*,
   112 F.3d 1251 (4th Cir. 1997) ............................................................................20

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009)........................................................................................17

*U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.)*,
   68 B.R. 690 (Bankr. S.D.N.Y. 1986)................................................................18

*In re Wilshire Courtyard*,
   729 F.3d 1279 (9th Cir. 2013) ........................................................................17

## STATUTES

11 U.S.C. § 105(a) ............................................................................................ 18

11 U.S.C. § 363................................................................................................10

11 U.S.C. § 363(m) ............................................................................................9

49 C.F.R. § 554.1 ..............................................................................................15

49 U.S.C. § 30119..............................................................................................15

## INTRODUCTION

In June 2009, General Motors LLC ("**New GM**") was a newly formed entity, created by the U.S. Treasury, to purchase substantially all of the assets of Motors Liquidation Company, formerly known as General Motors Corporation ("**Old GM**"). Through a bankruptcy-approved sale process, New GM acquired Old GM's assets, free and clear of all liens, claims, liabilities and encumbrances, other than liabilities that New GM expressly assumed under a June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("**Sale Agreement**").[1] The Bankruptcy Court approved the sale ("**363 Sale**") from Old GM to New GM and the terms of the Sale Agreement in its "**Sale Order and Injunction**," dated July 5, 2009.[2]

This Motion does not address the approximately 90 lawsuits ("**Ignition Switch Actions**") against New GM that seek monetary relief (*i.e.*, where there was no accident causing personal injury, loss of life, or property damage) relating to allegedly defective ignition switches ("**Ignition Switch**") in certain vehicle models. New GM previously filed a motion with this Court on April 21, 2014 ("**Ignition Switch Motion to Enforce**") seeking to enforce the Sale Order and Injunction with respect to the Ignition Switch Actions, the Court held Scheduling Conferences on May 2, 2014 and July 2, 2014 with respect to that Motion, and the initial phase of that contested proceeding is being governed by Scheduling Orders entered by the Court on May 16, 2014 and July 11, 2014 ("**Scheduling Orders**")[3]

---

[1]  A copy of the Sale Agreement is annexed hereto as Exhibit "A."

[2]  The full title of the Sale Order and Injunction is "Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief, entered by the Court on July 5, 2009." A copy of the Sale Order and Injunction is annexed hereto as Exhibit "B."

[3]  As New GM did when it filed the Ignition Switch Motion to Enforce, New GM will seek a conference before the Court upon filing this Motion to Enforce to discuss procedural issues raised by the relief sought herein, including the possibility of consolidating this Motion with the Ignition Switch Motion to Enforce.

At the time the Ignition Switch Motion to Enforce was filed, New GM had recently instituted a recall ("**Ignition Switch Recall**") covering vehicles that had an allegedly defective Ignition Switch, and New GM subsequently was named as a defendant in numerous lawsuits that referenced the Ignition Switch Recall.  New GM later instituted various other recalls regarding vehicles and/or parts designed, manufactured and/or sold by Old GM.  Like the plaintiffs in the actions that are covered by the Ignition Switch Motion to Enforce, other plaintiffs have filed actions against New GM based on these later recalls.  These lawsuits were served on New GM beginning in late May 2014, and could not have been included in the Ignition Switch Motion to Enforce.

The timing of the filing of this Motion is dictated by the Scheduling Orders which set forth specific deadlines for the development of agreed upon factual stipulations, and the briefing of Threshold Issues (as defined in the Scheduling Orders). Generally, the Plaintiffs' counsel related to this Motion are already involved in the Ignition Switch Motion to Enforce.[4]  However, to the extent there is not complete overlap, and to ensure that all parties in interest have an opportunity to address common issues before the Court, this Motion is being filed now.

This Motion to Enforce also does not address any litigation involving an accident or incident causing personal injury, loss of life or property damage.  Any such lawsuits against New GM that concern accidents or incidents that occurred prior to the closing of the 363 Sale are the subject of a separate motion filed by New GM at this time.[5]

---

[4]   It is significant, and unexplainable that, in connection with the Ignition Switch Actions, Plaintiffs' attorneys entered into Voluntary Stay Stipulations recognizing the Court's exclusive jurisdiction to decide issues relating to the Sale Order and Injunction. Yet the same counsel continue to file law suits against New GM in other courts for Retained Liabilities as if the Sale Order and Injunction does not exist (thus necessitating the filing of this Motion and other motions to enforce).

[5]   Liabilities related to accidents or incidents that occurred after the closing of the 363 Sale that allegedly caused personal injury, loss of life or property damage were assumed by New GM pursuant to the Sale Order and

Furthermore, New GM has committed to repairing (at no cost to the owners) such vehicles that are the subject of a recalls conducted by New GM under the supervision of the National Highway Traffic Safety Administration ("**NHTSA**").  This Motion does not involve those repairs or costs.

Instead, this Motion to Enforce involves *only* litigation in which Plaintiffs seek economic losses, monetary and other relief against New GM relating to an Old GM vehicle or part (other than the Ignition Switch).  Like the Ignition Switch Actions, liabilities for these types of claims were never assumed by New GM and are barred by the Court's Sale Order and Injunction.[6]

Under the Sale Agreement approved by the Court, New GM assumed only three expressly defined categories of liabilities for vehicles and parts sold by Old GM:  (a) post-sale accidents involving Old GM vehicles causing personal injury, loss of life or property damage; (b) repairs provided for under the "Glove Box Warranty"— a specific written warranty, of limited duration, that only covers repairs and replacement of parts; and (c) Lemon Law[7] claims essentially tied to the failure to honor the Glove Box Warranty.  All other liabilities relating to vehicles and parts sold by Old GM were "Retained Liabilities" of Old GM.  *See* Sale Agreement § 2.3(b).

New GM's assumption of just these limited categories of liabilities was based on the independent judgment of U.S. Treasury officials as to which liabilities, if paid, would best

---

Injunction, and the Sale Agreement.  Lawsuits based on such circumstances are not the subject of this or any other motion filed by New GM with the Bankruptcy Court.

[6]     To the extent the lawsuits that are the subject of this Motion to Enforce concern vehicles that were manufactured solely by New GM, and do not concern any allegedly defective parts manufactured by Old GM or concern Old GM conduct, those portions of such lawsuits are not implicated by this Motion to Enforce.

[7]     *See* Sale Agreement § 1.1, at p. 11 (defining "Lemon Laws" as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute.").

position New GM for a successful business turnaround. It was an absolute condition of New GM's purchase offer that New GM not take on all of Old GM's liabilities. That was the bargain struck by New GM and Old GM, and approved by the Court as being in the best interests of Old GM's bankruptcy estate and the public.

The primary objections to the 363 Sale were made by prepetition creditors who essentially wanted New GM to assume their liabilities. But the Court found that, if not for New GM's purchase offer, which provided for a meaningful distribution to prepetition unsecured creditors, Old GM would have liquidated its assets and those unsecured creditors would have received nothing. Indeed, had the objectors been successful in opposing the Sale Order and Injunction, it would have been a pyrrhic victory, and disaster not only for them but for thousands of others who relied on the continued viability of the assets being sold to New GM. Judge Lewis Kaplan aptly summarized the point: "No sentient American is unaware of the travails of the automobile industry in general and of General Motors Corporation ([Old] GM) in particular. As the Bankruptcy Court found, [Old] GM will be forced to liquidate — with appalling consequences for its creditors, its employees, and our nation — unless the proposed sale of its core assets to a newly constituted purchaser is swiftly consummated." *In re Gen. Motors Corp.*, No. M 47 (LAK), 2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009).

One of the groups that objected most vigorously to the 363 Sale was a coalition representing Old GM vehicle owners. That group included State Attorneys General, individual accident victims, the Center for Auto Safety, Consumer Action, and other consumer advocacy groups. The gist of their objections was: as long as New GM was assuming any of Old GM liabilities, then it should assume *all* vehicle-owner liabilities as well. In particular, the objectors argued, unsuccessfully, that New GM should assume successor liability claims, all warranty

claims (express and implied), economic damages claims based upon defects in Old GM vehicles and parts, and tort claims, in addition to the limited categories of claims that New GM already agreed to assume.

A critical element of protecting the integrity of the bankruptcy sale process, however, was to ensure that New GM, as the good faith purchaser for substantial value, received the benefit of its Court-approved bargain. This meant that New GM would be insulated from lawsuits by Old GM's creditors based on Old GM liabilities it did not assume. The Sale Agreement and the Sale Order and Injunction were expressly intended to provide such protections. The Order thus enjoined such proceedings against New GM, and expressly reserved exclusive jurisdiction to this Court to ensure that the sale transaction it approved would not be undermined or collaterally attacked.

As this Court may be aware, New GM recently sent various recall notices to NHTSA concerning issues in certain vehicles and parts, many of which were manufactured by Old GM. Shortly after New GM issued these recall notices, various Plaintiffs sued New GM for claimed economic losses, monetary and other relief allegedly resulting from the issues addressed by the recalls. These lawsuits, in part, concern Old GM vehicles and/or parts—the very type of claims retained by Old GM for which New GM has no liability.

This Motion to Enforce, thus, presents the very same issue that the Court is addressing in the Ignition Switch Motion to Enforce:

> **May New GM be sued in violation of this Court's Sale Order and Injunction for economic losses, monetary and other relief relating to vehicles and parts manufactured and/or sold by Old GM?**

As is the case in the Ignition Switch Actions, Plaintiffs in the cases based on the later recalls assert claims, either in whole or in part, for liabilities that Old GM retained under the Sale

Order and Injunction.  Plaintiffs apparently decided to not appear in this Court to challenge the Sale Order and Injunction; and with good reason:  they know that this Court has previously enforced the Sale Order and Injunction, and they were seeking to evade this Court's injunction that bars them from suing New GM on account of liabilities retained by Old GM.

Simply put, Plaintiffs cannot ignore the Court's Sale Order and Injunction, and proceed in other courts as though it never existed.  The law is settled that persons subject to a Court's injunction do not have that option.  As the United States Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'"  514 U.S. 300, 306 (1995).

Based on this Court's prior proceedings and Orders, New GM has brought this Motion to Enforce to require the plaintiffs (collectively, the "**Plaintiffs**") in the actions listed in Schedule 1 attached hereto ("**Monetary Relief Actions**") to comply with the Court's Sale Order and Injunction by directing Plaintiffs to (a) cease and desist from further prosecuting against New GM claims that are barred by the Sale Order and Injunction, (b) dismiss with prejudice those void claims brought in violation of the Sale Order and Injunction, and (c) specifically identify which claims against New GM they believe are not otherwise barred by the Sale Order and Injunction.[8]

---

[8]   At this time, the following Monetary Relief Actions have been commenced against New GM:  (i) *Yagman v. General Motors Company, et al.* (a copy of the *Yagman* Complaint is annexed hereto as Exhibit "C"); (ii) *Andrews v. General Motors LLC* (a copy of the *Andrews* Complaint is annexed hereto as Exhibit "D"); (iii) *Stevenson v. General Motors LLC* (a copy of the *Stevenson* Complaint is annexed hereto as Exhibit "E"); and (iv) *Jones v. General Motors LLC* (a copy of the *Jones* Complaint is annexed hereto as Exhibit "F).

New GM reserves the right to supplement the list of Monetary Relief Actions contained in Schedule 1 in the event additional cases are brought against New GM that implicate similar provisions of the Sale Order and Injunction.

## BACKGROUND STATEMENT OF FACTS

1.      In June 2009, in the midst of a national financial crisis, Old GM was insolvent with no alternative other than to seek bankruptcy protection to sell its assets.  New GM, a newly created, government-sponsored entity, was the only viable purchaser, but it would not purchase Old GM's assets unless the sale was free and clear of all liens and claims (except for the claims it expressly agreed to assume). The Court approved this sale transaction, which set the framework for New GM to begin its business operations.  During the last five years, New GM has operated its business based on the fundamental structure of the Sale Agreement and Sale Order and Injunction — a new business enterprise that would not be burdened with liabilities retained by Old GM.  The Monetary Relief Actions represent a collateral attack on this Court's Sale Order and Injunction.  The Plaintiffs may not rewrite, years later, the Court-approved sale to a good faith purchaser, which was affirmed on appeal, and which has been the predicate ever since for literally millions of transactions between New GM and third parties.

## I.      OLD GM FILED FOR PROTECTION UNDER THE BANKRUPTCY CODE IN JUNE 2009.

2.      On June 1, 2009, Old GM and certain of its affiliates filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  Old GM simultaneously filed a motion seeking approval of the original version of the Sale Agreement ("**Original Sale Agreement**"), pursuant to which substantially all of Old GM's assets were to be sold to New GM ("**Sale Motion**").  The Original Sale Agreement (like the Sale Agreement) provided that New GM would assume only certain specifically identified liabilities (*i.e.*, the "**Assumed Liabilities**"); all other liabilities would be retained by Old GM (*i.e.*, the "**Retained Liabilities**").

    A.    **Objectors to the Sale Motion Argued that New GM Should Assume Additional Liabilities of the Type Plaintiffs Now Assert in the Monetary Relief Actions.**

3.    Many objectors, including various State Attorneys General, certain individual accident victims ("**Product Liability Claimants**"), the Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizens (collectively, the "**Consumer Organizations**"), the Ad Hoc Committee of Consumer Victims, and the Official Committee of Unsecured Creditors challenged various provisions in the Original Sale Agreement relating to actual and potential tort and contract claims held by Old GM vehicle owners.  These objectors argued that the Court should not approve the Original Sale Agreement unless New GM assumed additional Old GM liabilities (beyond the Glove Box Warranty), including those now being asserted by the Plaintiffs in the Monetary Relief Actions.

4.    The Original Sale Agreement was amended so that New GM would assume Lemon Law claims, as well as personal injury, loss of life and property damage claims for accidents taking place after the closing of the 363 Sale.[9]  Product Liability Claimants and the Consumer Organizations were not satisfied and pressed their objections, arguing that New GM should assume broader warranty-related claims as well as successor liability claims.[10] Representatives from the U.S. Treasury declined to make further changes.  *See* Hr'g Tr. 151:1 – 10, July 1, 2009.  The Court found that New GM would not have consummated the "[t]ransaction (i) if the sale . . . was not free and clear of all liens, claims, encumbrances, and

---

[9]    Assumption of the Glove Box Warranty was provided for in the Original Sale Agreement.

[10]    Numerous State Attorneys General also objected, seeking to expand the definition of New GM's Assumed Liabilities to include implied warranty claims. *Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.),* Adv. Proc. No. 09–00509, 2012 WL 1339496, at *5 (Bankr. S.D.N.Y. April 17, 2012), *aff'd,* 500 B.R. 333 (S.D.N.Y. 2013).  The *Castillo* decision has been appealed to the Second Circuit and that appeal remains pending.

other interests . . . , including rights or claims based on any successor or transferee liability or (ii) if [New GM] would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability (collectively, the 'Retained Liabilities'), other than, in each case, the Assumed Liabilities."  *See* Sale Order and Injunction ¶ DD.  The Court ultimately overruled the objectors on these issues.  *See id.*, ¶ 2.

> **B.   The Court Issued Its Sale Order And Injunction, And The Product Liability Claimants And Others Appealed Because They Objected To The Fact That New GM Was Not Assuming *Their* Liabilities.**

5.      The Court held a three-day hearing on the Sale Motion, then issued its Sale Decision on July 5, 2009, finding that the only alternative to the immediate sale to New GM pursuant to the Sale Agreement was a liquidation of Old GM, in which case unsecured creditors, such as the Plaintiffs now suing New GM, would receive nothing.  *See In re Gen. Motors Corp.*, 407 B.R. 463, 474 (Bankr. S.D.N.Y. 2009).  The Court analyzed the law of successor liability at length (*see id.* at 499-506), and ruled that: "[T]he law in this Circuit and District is clear; the Court will permit [Old] GM's assets to pass to the purchaser [New GM] *free and clear of successor liability claims*, and in that connection, will issue the requested findings and associated injunction."  *Id.* at 505-06 (emphasis added).

6.      In approving the 363 Sale, the Court specifically found that New GM was a "good faith purchaser, for sale-approval purposes, and also for the purpose of the protections section 363(m) provides."  *Id.* at 494 (citing 11 U.S.C. § 363(m)).  The Sale Order and Injunction expressly enjoined parties (like the Plaintiffs in the Monetary Relief Actions) from proceeding against New GM with respect to Retained Liabilities at any time in the future.  *See* Sale Order and Injunction, ¶¶ 8, 47.  The Court recognized that if a Section 363 purchaser like New GM did not obtain protection from claims against Old GM, like successor liability claims, it would pay

less for the assets because of the risks of known and unknown liabilities. *Id.* at 500; *see* 11
U.S.C. § 363. The Court further recognized that, under the law, a Section 363 purchaser could
choose which liabilities of the debtors to assume (*id.* at 496), and that the U.S. Treasury, on
New GM's behalf, could rightfully condition its purchase offer on its refusal to assume the
liabilities now being asserted by Plaintiffs in the Ignition Switch Actions.

7.      Old GM, the proponent of the asset sale transaction, presented evidence
establishing that if the Sale Agreement was not approved, Old GM would have liquidated. In a
liquidation, objecting creditors seeking incremental recoveries would have ended up with
nothing, given that the book value of Old GM's global assets was $82 billion, the book value of
its global liabilities was $172 billion (s*ee Gen. Motors*, 407 B.R. at 475), and that, in a
liquidation, the value of Old GM's assets was probably less than 10% of stated book value (*id.*).

8.      Objectors also presented evidence that the book value of certain contingent
liabilities was about $934 million. *Id.* at 483. The Court noted that contingent liabilities were
"difficult to quantify." *Id.* And, if the book value of all contingent liabilities was understated,
that simply meant Old GM was even more insolvent—an even greater reason for New GM to
decline to assume the liabilities retained by GM.

9.      Whether Old GM presented evidence regarding a particular claim or specific
defect was not germane to this Court's approval of the Sale Order and Injunction. Indeed, as the
Court found in the Sale Order and Injunction, the proper analysis for approving the asset sale
was whether Old GM obtained the "highest or best" available offer for the Purchased Assets.
*See* Sale Order and Injunction, ¶ G. In contrast, the quantification of liabilities left behind with
Old GM (*i.e.*, the Retained Liabilities) was pertinent to a different phase of the bankruptcy case
(the claims process) which did not involve New GM.

10.     New GM's refusal to assume a substantial portion of Old GM's liabilities was fundamental to the sale transaction and was widely disclosed by Old GM to all interested parties. Indeed, the Product Liability Claimants objected to and appealed the Sale Order and Injunction to specifically challenge this aspect of the sale.  *See Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010).  On appeal, although the District Court focused on the appellants' failure to seek a stay of the Sale and on equitable mootness principles, it also found that this Court had jurisdiction to enjoin successor liability claims.  *See id. at* 59-60Indeed, the Sale Order and Injunction was affirmed on appeal by two different District Court Judges.  *Id.* ; *Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65 (S.D.N.Y. 2010).  There were no further appeals.[11]

**C.     Upon Approval Of The Sale Agreement And Issuance Of The Sale Order And Injunction, New GM Assumed Certain Narrowly Defined Liabilities, But The Bulk Of Old GM's Liabilities Remained With Old GM.**

11.     Under the Sale Agreement and the Sale Order and Injunction, New GM became responsible for "Assumed Liabilities."  *See* Sale Agreement § 2.3(a).  These included liability claims for post-sale accidents and Lemon Law claims, as well as the Glove Box Warranty—a written warranty of limited duration (typically three years or 36,000 miles, whichever comes first) provided at the time of sale for repairs and replacement of parts. The Glove Box Warranty expressly excludes economic damages.   New GM assumed no other Old GM warranty obligations, express or implied:

> The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components

---

[11]   The Product Liability Claimants appealed the District Court's decision, but pursuant to a stipulation so-ordered by the Second Circuit Court of Appeals on September 23, 2010, the appeal was withdrawn.  The *Parker* decision was also appealed, but that appeal was dismissed as equitably moot because the appellant had not obtained a stay pending appeal.  *See Parker v. Motors Liquidation Company*, Case No. 10-4882-bk (2d Cir. July 28, 2011).

prior to the Closing of the 363 Transaction and specifically identified as a "warranty." ***The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials.***

Sale Order and Injunction, ¶ 56 (emphasis added).

12.    Independent of the Assumed Liabilities under the Sale Agreement, New GM covenanted to perform Old GM's recall responsibilities under federal law. *See* Sale Agreement ¶ 6.15(a). But there were no third party beneficiary rights granted under the Sale Agreement with respect to that covenant (*see* Sale Agreement § 9.11), and there is no private right of action for third parties to sue for a breach of a recall obligation. *See Ayers v. Gen. Motors*, 234 F.3d 514, 522-24 (11th Cir. 2000); *Handy v. Gen. Motors Corp*., 518 F.2d 786, 787-88 (9th Cir 1975). Thus, New GM's recall covenant provides no basis for the Plaintiffs to sue New GM for economic losses, monetary or other relief relating to a vehicle or part sold by Old GM.

13.    All liabilities of Old GM not expressly defined as Assumed Liabilities constituted "Retained Liabilities" that remained obligations of Old GM. *See* Sale Agreement §§ 2.3(a), 2.3(b). Retained Liabilities include economic losses and other monetary relief relating to vehicles and parts manufactured by Old GM (the primary claims asserted by the Plaintiffs in the Monetary Relief Actions) such as:

(a)    liabilities "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers." Sale Agreement § 2.3(b)(xvi), *see also id.* ¶ 6.15(a). This would include liability based on state consumer statutes, except Lemon Law claims.

(b)    All liabilities (other than Assumed Liabilities) of Old GM based upon contract, tort or any other basis. Sale Agreement § 2.3(b)(xi). This covers claims based on negligence, concealment and fraud.

(c)   All liabilities relating to vehicles and parts sold by Old GM with a design defect.[12]

(d)   All Liabilities based on the conduct of Old GM including any allegation, statement or writing attributable to Old GM. This covers fraudulent concealment type claims. *See* Sale Order and Injunction, ¶ 56.

(e)   All claims based on the doctrine of "successor liability." *See, e.g.,* Sale Order and Injunction, ¶ 46.

**D.   The Court's Sale Order And Injunction Expressly Protects New GM From Litigation Over Retained Liabilities.**

14.   On July 10, 2009, the parties consummated the Sale.   New GM acquired substantially all of the assets of Old GM free and clear of all liens, claims and encumbrances, except for the narrowly defined Assumed Liabilities.   In particular, paragraphs 46, 9, and 8 of the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (except for Assumed Liabilities) relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009:

> Except for the Assumed Liabilities expressly set forth in the [Sale Agreement] . . . [New GM] . . . shall [not] have any liability for any claim that arose prior to the Closing Date, ***relates to the production of vehicles prior to the Closing Date***, or otherwise is assertable against [Old GM] . . . prior to the Closing Date . . . . Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity . . . and products . . . liability, ***whether known or unknown*** as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction, ¶ 46 (emphasis added); *see also id.*, ¶ 9(a) ("(i) no claims other than Assumed Liabilities, will be assertable against the Purchaser; (ii) the Purchased Assets [are] transferred to the Purchaser free and clear of all claims (other than Permitted Encumbrances) . . ."); and *id.*, ¶ 8 ("All persons and entities . . . holding claims against [Old GM]

---

[12]   *See* Sale Order and Injunction, ¶ AA; *see also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at \*2 (Bankr. S.D.N.Y. Feb. 19, 2013).

or the Purchased Assets arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, *the operation of the Purchased Assets* prior to the Closing . . . are forever barred, estopped, and permanently enjoined . . . from asserting [such claims] against [New GM]. . . .") (emphasis added).

15.     Anticipating the possibility that New GM might be wrongfully sued for Retained Liabilities, the Sale Order and Injunction permanently enjoins claimants from asserting claims of the type made in the Monetary Relief Actions:

> [A]ll persons and entities . . . holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, *matured or unmatured, contingent or noncontingent*, senior or subordinated), *arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing* . . . *are forever barred, estopped, and permanently enjoined . . . from asserting against [New GM] . . . such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability*.

Sale Order and Injunction, ¶ 8 (emphasis added); *see also id.*, ¶ 47.

16.     The Court specifically found that the provisions of the Sale Order and Injunction, as well as the Sale Agreement, were binding on all creditors, *known and unknown* alike.  *See* Sale Order and Injunction, ¶ 6 ("This [Sale] Order and [Sale Agreement] "shall be binding in all respects upon the Debtors, their affiliates, *all known and unknown creditors* of, and holders of equity security interests in, any Debtor, including any holders of liens, claims, encumbrances, or other interests, including rights or claims based on any successor or transferee liability . . . ." (emphasis added)); *see also id.*, ¶ 46.  In short, except for Assumed Liabilities, claims based on Old GM vehicles and parts remained the legal responsibility of Old GM, and are not the responsibility of New GM.

09-50026-mg   Doc 12824-6   Filed 08/08/14   Entered 08/08/14 15:30:48   Exhibit 6
Case 1:14-md-02543-JMF   Document 200-3   Filed 08/08/14   Page 21 of 34
Pg 52 of 126

09-50026-reg   Doc 12808   Filed 08/01/14   Entered 08/01/14 17:31:28   Main Document
Pg 20 of 33

17.     Finally, paragraph 71 of the Sale Order and Injunction makes this Court the gatekeeper to enforce its own Order. It provides for this Court's ***exclusive jurisdiction*** over matters and claims regarding the 363 Sale, including jurisdiction to protect New GM against any Retained Liabilities of Old GM:

> ***This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement],*** all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, . . ., in all respects, including, but not limited to, ***retaining jurisdiction to . . . (c) resolve any disputes arising under or related to the [Sale Agreement],*** except as otherwise provided therein, (d) ***interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities*** or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets . . . . (Emphasis added.)

## II.   NEW GM HAS RECALLED CERTAIN VEHICLES AND IN RESPONSE, PLAINTIFFS HAVE FILED MONETARY RELIEF ACTIONS.

18.     Consistent with its obligations under the Sale Order and Injunction, New GM, over the last several months, has informed NHSTA of certain issues in various vehicles and parts, including those manufactured by Old GM, and that New GM would conduct recalls to remedy the problems (at no cost to the owners). New GM sent NHTSA-approved recall notices to all vehicle owners subject to the recalls. All of the recalls are underway and New GM already has started to fix the vehicles identified by the recalls. NHTSA, as the government agency responsible for overseeing the technical and highly-specialized domain of automotive safety defects and recalls, administers the rules concerning the content, timing, and means of delivering a recall notice to affected motorists and dealers. *See* 49 C.F.R. § 554.1; 49 U.S.C. § 30119.

19.     Since the various recalls were announced, Monetary Relief Actions have been filed against New GM related to these recalls, including recalls of vehicles and parts sold or manufactured by Old GM (*see* Schedule 1, attached to this Motion); additional similar cases will likely be filed in the future.   At this time, these cases include four class actions.

20.     The non-ignition switch Monetary Relief Actions assert claims that are barred by the Sale Agreement and the Sale Order and Injunction.  The claims at issue that are the subject of this Motion to Enforce are for economic losses, monetary and other relief premised on alleged defects in vehicles and components manufactured and/or sold by Old GM, which are unrelated to any accident causing personal injury, loss of life or property damage.  In their complaints, the Plaintiffs, at times, conflate Old GM and New GM, but the Sale Order and Injunction is clear that New GM is a separate entity from Old GM (*see* Sale Order and Injunction, ¶ R), and is not liable for successor liability claims (*see, e.g.*, *id.*, ¶¶ 46, 47).  To be sure, the claims asserted by the Plaintiffs in the Monetary Relief Actions are varied, and in some instances, because of the imprecise factual allegations, it is unclear whether there might be a viable cause of action (of the many) being asserted against New GM.  What is clear, however, is that the crux of certain of the Plaintiffs' claims is a problem in vehicles and/or parts manufactured and/or sold by Old GM.  Claims based on that factual predicate are Retained Liabilities and may not be brought against New GM.[13]

21.     This Court is uniquely situated to enforce its own Order and interpret what the parties to the Sale Agreement agreed to, and what issues were raised and resolved in connection with the 363 Sale.  This Motion to Enforce requests that the Court enforce the Sale Order and Injunction by directing Plaintiffs to cease and desist from pursuing claims against New GM for Retained Liabilities of Old GM, direct Plaintiffs to dismiss with prejudice those void claims that are barred by the Sale Order and Injunction, and direct Plaintiffs to specifically identify which

---

[13]     The allegations and claims asserted in the Monetary Relief Actions include Retained Liabilities, such as implied warranty claims, successor liability claims, and miscellaneous tort and statutory claims premised in whole or in part on the alleged acts or omissions of Old GM.  *See* Schedule 2 annexed hereto for a sample of such statements, allegations and/or causes of action.

claims they may properly pursue against New GM that are not in violation of the Court's Sale Order and Injunction.

## NEW GM'S ARGUMENT TO ENFORCE THE COURT'S SALE ORDER AND INJUNCTION

22.     The Plaintiffs do not have the choice of simply ignoring the Court's Sale Order and Injunction.  As the Supreme Court expressed in its *Celotex* decision:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . .  Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.

514 U.S. at 313.  These settled principles bind Plaintiffs in the Monetary Relief Actions.  Those who purchased vehicles or parts manufactured by Old GM, whether they were a known or unknown creditor at the time, are subject to the terms of the Court's Sale Order and Injunction, and are barred by this Court's Injunction from suing New GM on account of Old GM's Retained Liabilities.

## I.     THIS COURT'S SALE ORDER AND INJUNCTION SHOULD BE ENFORCED.

23.     It is well settled that a "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *In re Wilshire Courtyard*, 729 F.3d 1279, 1290 (9th Cir. 2013) (affirming bankruptcy court's post-confirmation jurisdiction to interpret and enforce its orders; "[i]nterpretation of the Plan and Confirmation Order is the only way for a court to determine the essential character of the negotiated Plan transactions in a way that reflects the deal the parties struck in chapter 11 proceedings"); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its confirmation order."); *U.S. Lines, Inc. v. GAC*

*Marine Fuels, Ltd. (In re McClean Indus., Inc.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("[a]ll courts, whether created pursuant to Article I or Article III, have inherent contempt power to enforce compliance with their lawful orders.  The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order.").  In addition, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions, and this section "codif[ies] the bankruptcy court's inherent power to enforce its own orders."  *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997); 11 U.S.C. § 105(a).

24.    Consistent with these authorities, this Court retained subject matter jurisdiction to enforce its Sale Order and Injunction.  Indeed, this is not the first time that this Court has been asked to enforce its injunction against plaintiffs improperly seeking to sue New GM for Old GM's Retained Liabilities.  *See In re Motors Liquidation Co.*, No. 09-50026 (REG), 2011 WL 6119664 (Bankr. S.D.N.Y. 2011) (ordering various plaintiffs to dismiss with prejudice civil actions in which they had brought claims against New GM that are barred by the Sale Order and Injunction); *Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-00509 (Bankr. S.D.N.Y.), Hr'g Tr. 9:3-9:14, May 6, 2010 ("when you are looking for a declaratory judgment on an agreement that I approved [*i.e.*, the Sale Agreement] that was affected by an order that I entered [*i.e.*, the Sale Order and Injunction], and with the issues permeated by bankruptcy law as they are, and which also raise issues as to one or more injunctions that I entered, ***how in the world would you have brought this lawsuit in Delaware Chancery Court.  I'm not talking about getting in personam jurisdiction or whether you can get venue over a Delaware corporation in Delaware.  I'm talking about what talks and walks and quacks like an intentional runaround of something that's properly on the watch of the***

18

*U.S. Bankruptcy Court for the Southern District of New York*.") (emphasis added); *Castillo*,

2012 WL 1339496 (entering judgment in favor of New GM) (affirmed by 500 B.R. 333, 335

(S.D.N.Y. 2013)); *see also Trusky*, 2013 WL 620281, at *2 (finding that "claims for design

defects [of 2007-2008 Chevrolet Impalas] may not be asserted against New GM and that "New

GM is not liable for Old GM's conduct or alleged breaches of warranty").

25.     This Court is also presently addressing New GM's Ignition Switch Motion to

Enforce, which raises issues that overlap and are indistinguishable from the issues raised herein.

Specifically, both this Motion to Enforce and the Ignition Switch Motion to Enforce concern

Retained Liabilities stemming from vehicles and/or parts manufactured and/or sold by Old GM.

This Court has exercised jurisdiction over the issues raised in the Ignition Switch Motion to

Enforce; the Court should do the same here.

26.     Contrary to New GM's bargained for rights under the Sale Agreement and the

Court's Sale Order and Injunction, Plaintiffs in the Monetary Relief Actions are suing New GM,

in part, for defects in Old GM vehicles and/or parts in various courts.  As in the Ignition Switch

Actions, Plaintiffs may not simply ignore the Court's injunction through these collateral attacks,

especially when the Sale Order and Injunction is a final order no longer subject to appeal.  *See*

*Celotex Corp.*, 514 U.S. at 306, 313  ("'persons subject to an injunctive order issued by a court

with jurisdiction are expected to obey that decree until it is modified or reversed'") (quoting *GTE*

*Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 386 (1980)); *Pratt v. Ventas, Inc.*,

365 F.3d 514, 520 (6th Cir. 2004) (applying doctrine to dismiss suits filed in violation of

injunction in confirmation order entered by bankruptcy court); *In re McGhan*, 288 F.3d 1172,

1180-81 (9th Cir. 2002) (applying doctrine to enforce discharge order in favor of debtors and

holding that only the bankruptcy court could grant relief from the order); *see also In re Gruntz*,

202 F.3d 1074, 1082 (9th Cir. 2000) (applying this doctrine in the context of an automatic stay entered by the bankruptcy court); *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255 (4th Cir. 1997) (applying doctrine to bankruptcy court order approving sales of assets free and clear of liens).

## II.     NEW GM CANNOT BE HELD LIABLE FOR OLD GM'S ALLEGED CONDUCT, EITHER DIRECTLY OR AS OLD GM'S ALLEGED "SUCCESSOR."

27.     Many of the vehicles and parts at issue in the Monetary Relief Actions were manufactured, marketed, and sold by Old GM prior to the Sale Order and Injunction. *See, e.g.*, *Yagman* Compl., ¶ 5 (alleging the named plaintiff owns a 2007 Buick Lucerne); *Andrews* Compl., ¶ 25 (alleging that the class includes all persons who own or lease any new or used GM-branded vehicle sold between July 10, 2009, and April 1, 2014); *Stevenson* Compl., ¶ 17 (alleging that the named plaintiff purchased a 2007 Saturn Ion in or around November 2007).

28.     Certain of the Monetary Relief Actions reflect an effort to plead around the Court's Sale Order and Injunction.  In fact they all generally assert the same underlying allegations made about Old GM:  that it manufactured and/or sold vehicles with some type of defect.  (*See* Schedules 1 and 2 attached hereto.)  And, they all seek, at least in part, to hold New GM liable for economic losses, monetary and other relief based on Old GM's conduct — claims that are prohibited by the Sale Order and Injunction.

29.     For example, in *Andrews*, the Plaintiffs seek to limit their class to people who purchased GM vehicles after July 10, 2009.  However, vehicles are not limited to only New GM vehicles; the "Affected Vehicles" as defined in the Andrews complaint encompasses all new and used GM vehicles subject to a recall (other than the Ignition Switch Recall).  The Complaint specifically excludes from the class "owners and lessors of model year 2005-2010 Chevrolet Cobalts, 2005-2011 Chevrolet HHRs, 2007-2010 Pontiac G5s, 2003-2007 Saturn Ions, and 2007-

2010 Saturn Skys, whose vehicles were recalled for an ignition switch defect." Id., ¶ 25.  There are no other specific exclusions from the purported class of plaintiffs and, thus, such class necessarily includes vehicles manufactured by Old GM.

30.     In connection with the Ignition Switch Motion to Enforce, this Court addressed similar allegations by a group of plaintiffs (*i.e.*, the *Phaneuf* Plaintiffs) in an Ignition Switch Action.  The *Phaneuf* Plaintiffs argued that the Sale Order and Injunction did not apply to them because the class was also limited to individuals who purchased GM vehicles after July 10, 2009.  However, because the vehicles in question were not limited to New GM vehicles, but included Old GM vehicles as well, this Court ruled

> that the sale order now applies, though it is possible, without prejudging any issues, that, after I hear from the other 87 litigants, I might ultimately rule that it does not apply to some kinds of claims and that, even if the sale order didn't apply, that New GM would be entitled to a preliminary injunction temporarily staying the Phaneuf plaintiffs' action from going forward, pending a determination by me on the other 87 litigants' claims under the standards articulated by the circuit in Jackson Dairy and its progeny.

Hr'g Tr. 91:12-21, July 2, 2014.  Accordingly, as was the case with the *Phaneuf* Plaintiffs, the Sale Order and Injunction applies to the *Andrews* Action in the first instances, subject to the rights of the *Andrews* Plaintiff – in this Court -- to argue that it should not apply.

31.     Similarly, as in the Ignition Switch Actions, certain Plaintiffs attempt to impose "successor" liability upon New GM, but New GM is not a successor to Old GM and did not assume any liabilities in connection with successor or transferee liability.  This is expressly provided by the Court's Sale Order and Injunction:

> ***The Purchaser shall not be deemed***, as a result of any action taken in connection with the [Sale Agreement] or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, ***to:   (i) be a legal successor***, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchased Assets from and after the Closing); ***(ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial***

> *continuation of the Debtors or the enterprise of the Debtors*. Without limiting
> the foregoing, the Purchaser (New GM) shall not have any successor, transferee,
> derivative, or vicarious liabilities of any kind or character for any claims,
> including, but not limited to, under any theory of successor or transferee liability,
> de facto merger or continuity, environmental, labor and employment, and
> products or antitrust liability, whether known or unknown as of the Closing, now
> existing or hereafter arising, asserted, or unasserted, fixed or contingent,
> liquidated or unliquidated.

Sale Order and Injunction ¶ 46 (emphasis added); *see also id.*, ¶¶ AA, BB, DD, 6, 7, 8, 10 and
47; Sale Agreement § 9.19.

32.     Plaintiffs' successor liability allegations are simply a violation of this Court's Sale
Order and Injunction. But whether or not Plaintiffs' claims expressly allege successor liability,
their claims against New GM based on Old GM's conduct are essentially successor liability
claims cast in a different way and are precluded by that Order.

**III.    PLAINTIFFS' WARRANTY ASSERTIONS AND STATE LEMON LAW
ALLEGATIONS DO NOT ENABLE THEM TO CIRCUMVENT THE COURT'S
SALE ORDER AND INJUNCTION.**

**A.    The Limited Glove Box Warranty is Not Applicable. But As a Practical
Matter, Plaintiffs Already Are Obtaining Such Relief As Part of the Recall.**

33.     The Glove Box Warranty is for a limited duration and many of the vehicles that
are the subject of the Monetary Relief Actions were sold more than three years ago. Thus, the
Glove Box Warranty has expired for those vehicles. In any event, the Glove Box Warranty
provides only for repairs and replacement parts; the economic losses asserted by Plaintiffs in the
Monetary Relief Actions are of an entirely different character and are expressly barred by the
Glove Box Warranty. This distinction is not unique to Old GM's 363 Sale. In the Chrysler
bankruptcy case, the court likewise found that the assumed liabilities were limited to the standard
limited warranty of repair issued in connection with sales of vehicles. *See*, *e.g.*, *Burton v.
Chrysler Group, LLC (In re Old Carco LLC)*, 492 B.R. 392, 404 (Bankr. S.D.N.Y. 2013)
("New Chrysler did agree to honor warranty claims — the Repair Warranty. None of the

statements attributed to New Chrysler state or imply that it assumed liability to pay consequential or other damages based upon pre-existing defects in vehicles manufactured and sold by Old Carco.").[14] Finally, as a practical matter, New GM will make the necessary repairs as part of the various on-going recalls, which is all that the Glove Box Warranty would have required. Hence, any claims, if they existed, are moot.

34. Similarly, the Sale Agreement and the Sale Order and Injunction provide that the implied warranty and other implied obligation claims that Plaintiffs assert here are Retained Liabilities for which New GM is not responsible. *See* Sale Order and Injunction, ¶ 56 (New GM "is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, ***including implied warranties*** and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs and point of purchase materials." (emphasis added)); *see also* Sale Agreement § 2.3(b)(xvi) (one of the Retained Liabilities of Old GM was any liabilities "arising out of, related to or in connection with any (A) ***implied warranty*** or other ***implied obligation arising under statutory or common law*** without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." (emphasis added)).

35. In short, any breach of warranty claims Plaintiffs pursue relating to Old GM vehicles or parts (whether express or implied) improperly seek damages against New GM in violation of the Sale Order and Injunction.

---

[14]   *See also Tulacro v. Chrysler Group LLC, et al.*, Adv. Proc. No. 11-09401 (Bankr. S.D.N.Y. Oct. 28, 2011) [Dkt. No. 18] (Exhibit "G" annexed hereto); *Tatum v. Chrysler Group LLC*, Adv. Proc. No. 11-09411 (Bankr. S.D.N.Y. Feb. 15, 2012) [Dkt. No. 73] (Exhibit "H" annexed hereto).

**B.**     **Any Purported State Lemon Law Claims Are Premature At Best, And Cannot Be Adequately Pled.**

36.     In an apparent attempt to circumvent the Court's Sale Order and Injunction, certain of the Monetary Relief Actions purport to assert claims based on alleged violations of state Lemon Laws.  But merely referencing state Lemon Laws is not sufficient.  Plaintiffs must actually plead facts giving rise to Lemon Law liability as defined in the Sale Agreement.  Even a cursory review of the complaints reveals they have not done so.

37.     New GM agreed to assume Old GM's "obligations under state 'lemon law' statutes, which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a ***reasonable number of attempts*** as further defined in the statute, and other related regulatory obligations under such statutes."  Sale Order and Injunction, ¶ 56 (emphasis added).  None of the Plaintiffs has alleged that New GM has not conformed the vehicle "after a reasonable number of attempts."   And, not only is New GM in the process of conforming the vehicles (through the various recalls), but the statutes of limitations on Lemon Law claims as defined in the Sale Agreement have expired for many of the Old GM vehicles referenced in the Monetary Relief Actions.

38.     As Judge Bernstein found in *Old Carco*, whether claimants can assert a valid Lemon Law claim "depends on the law that governs each plaintiff's claim and whether the plaintiff can plead facts that satisfy the requirements of the particular Lemon Law."  492 B.R. at 406.  He further held as follows:

> With some variation, the party asserting a Lemon Law claim must typically plead and ultimately prove that (1) the vehicle does not conform to a warranty, (2) the

Case 14-mc-02543-JMF   Document 200-3   Filed 08/08/14   Page 31 of 34

nonconformity substantially impairs the use or value of the vehicle, and (3) the
nonconformity continues to exist after a reasonable number of repair attempts.[15]

Judge Bernstein ultimately found that the claimants there did "not plead that any of the[m]
brought their vehicles in for servicing, or that New Chrysler was unable to fix the problem after a
reasonable number of attempts." *Id.* at 407. As was the case in *Old Carco*, none of the Plaintiffs
here have pled that they brought their vehicles in to be fixed and, after a reasonable number of
attempts, that they could not be fixed. They merely base their claims on the recall notices and
letters to owners that New GM previously issued.

## CONCLUSION

39. New GM was created to purchase the assets of Old GM pursuant to the Sale
Agreement. The limited category of liabilities that New GM agreed to assume as part of the
purchase was the product of a negotiated bargain, which was approved by this Court in July
2009. Plaintiffs in the Monetary Relief Actions have essentially ignored this; they wrongfully
treat New GM and Old GM interchangeably and are pursuing Old GM claims that they cannot
lawfully pursue against New GM.

40. Schedule 2 provides examples of allegations that on their face relate to the
Retained Liabilities asserted by the Plaintiffs in the Monetary Relief Actions. Set forth below
are illustrations of what Plaintiffs have improperly alleged in such Actions.

(a)     **Implied Warranty**. *See, e.g.*, *See, e.g.*, *Yagman* Compl., ¶ 16 ("defendants and
each of them violated the warranty of merchantability . . . ."); *id.*, ¶ 17
("defendants violated the warranty of fitness for a particular use of their
product"); *Stevenson* Compl., ¶ 185 ("Old GM breached the implied warranty of

---

[15]   *Old Carco*, 492 B.R. at 406 (citing *Sipe v. Fleetwood Motor Homes of Penn., Inc.*, 574 F. Supp. 2d 1019, 1028
(D. Minn. 2008); *McLaughlin v. Chrysler Corp.*, 262 F. Supp. 2d 671, 679 (N.D.W. Va. 2002); *Baker v.
Chrysler Corp.*, Civ. A. No. 91–7092, 1993 WL 18099, at *1–2 (E.D. Pa. Jan. 25, 1993); *Palmer v. Fleetwood
Enterp., Inc.*, Nos. C040161, C040765, 2003 WL 21228864, at *4 (Cal. Ct. App. May 28, 2003); *Iams v.
DaimlerChrysler Corp.*, 174 Ohio App. 3d 537, 883 N.E.2d 466, 470 (2007); *DiVigenze v. Chrysler Corp.*, 345
N.J. Super. 314, 785 A.2d 37, 48 (App. Div. 2001)).

09-50026-mg   Doc 12824-6   Filed 08/08/14   Entered 08/08/14 15:30:48   Exhibit 6
Pg 63 of 126
Case 14-mc-02543-JMF   Document 200-3   Filed 08/08/14   Page 32 of 34

09-50026-reg   Doc 12808   Filed 08/01/14   Entered 08/01/14 17:31:28   Main Document
Pg 31 of 33

merchantability by manufacturing and selling Defective Vehicles containing defects leading to the potential safety issues during ordinary driving conditions.").

(b) **Implied Obligations under Statute or Common Law**.  *See, e.g.*, *Andrews* Compl. (asserting causes of action under California Consumer Legal Remedies Act and California Unfair Competition Law); *Stevenson* Compl. (asserting causes of action under California Consumer Legal Remedies Act and California Unfair Competition Law); *Jones* Complaint (asserting causes of action under States' consumer protection statutes).

(c) **Successor Liability**.  *See, e.g.*, *Yagman* Compl. (not differentiating between Old GM and New GM); *Andrews* Compl., ¶ 59 ("GM inherited from Old GM a company that valued cost-cutting over safety . . . ."); *id.*, ¶ 24 (alleging that New GM knew "[f]rom its inception" about many of the defects that existed in Old GM vehicles); *Stevenson* Compl, ¶¶ 65, 72-74 (allegations discussing Old GM's conduct).

(d) **Design Defect**.  *See, e.g.*, *Yagman* Compl., ¶ 12 ("Defendant GM manufactured a defective vehicle"); *id.*, ¶ 13 ("Defendant GM sold a defective vehicle."); *Andrews* Compl., ¶¶ 17-21 (alleging that vehicles manufactured by Old GM were sold with a defect); *id.*, ¶ 232 (asserting as a common class question "[w]hether numerous GM vehicles suffer from serious defects").

(e) **Tort, Contract or Otherwise**.  *See, e.g.*, *Andrews* Compl. (asserting a cause of action based on fraudulent concealment); *Stevenson* Compl. (asserting causes of action based on fraudulent concealment and tortious interference with contract); *Jones* Complaint (asserting causes of action based on fraudulent concealment and tortious interference with contract).

(f) **The Conduct of Old GM**.  *See, e.g.*, *Yagman* Compl., ¶ 14 ("Defendant GM knew the vehicle [*i.e.*, a 2007 Buick Lucerne] was defective at the time it was put into the stream of commerce for sale and was sold); *Andrews* Compl., ¶ 3 ("GM enticed Plaintiff and all GM vehicle purchasers [not differentiating between purchasers who bought from Old GM and New GM] to buy vehicles that have now diminished in value as the truth about the GM brand has come out, and a stigma has attached to all GM-branded vehicles."); *Stevenson* Compl., ¶¶ 65, 72-74 (allegations discussing Old GM's conduct); *Jones* Compl., ¶¶ 65, 72-74 (allegations discussing Old GM's conduct).

41.     New GM has no liability or responsibility for these Retained Liability claims and, under the Sale Order and Injunction, Plaintiffs in the Monetary Relief Actions are enjoined from bringing them against New GM, and their pursuit of these claims violates the Court's injunction. *See, e.g.,* Sale Order and Injunction, ¶¶ 8, 47.  Accordingly, the Court should enforce the terms

of its Sale Order and Injunction by ordering Plaintiffs to promptly dismiss all of their claims that violate the provisions of that Order, to cease and desist from all efforts to assert such claims against New GM that are void because of the Sale Order and Injunction, and to specifically identify which claims, if any, they might have which are not barred by this Court's Sale Order and Injunction.

## NOTICE AND NO PRIOR REQUESTS

42.     Notice of this Motion to Enforce has been provided to (a) counsel for Plaintiffs in each of the Monetary Relief Actions, (b) Designated Counsel and other lead counsel involved in the Ignition Switch Motion to Enforce, (c) counsel for Motors Liquidation Company General Unsecured Creditors Trust, and (d) the Office of the United States Trustee.  New GM submits that such notice is sufficient and no other or further notice need be provided.

43.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court: (i) enter an order substantially in the form set forth as Exhibit "I" annexed hereto, granting the relief sought herein; and (ii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York                 Respectfully submitted,
        August 1, 2014


                                          _/s/_ Arthur Steinberg_____
                                          Arthur Steinberg
                                          Scott Davidson
                                          KING & SPALDING LLP
                                          1185 Avenue of the Americas
                                          New York, New York  10036
                                          Telephone:     (212) 556-2100
                                          Facsimile:     (212) 556-2222

                                          Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                                          Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                                          KIRKLAND & ELLIS LLP
                                          300 North LaSalle
                                          Chicago, IL 60654
                                          Telephone: (312) 862-2000
                                          Facsimile: (312) 862-2200

                                          *Attorneys for General Motors LLC*

# Exhibit 4

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
In re                                               :     **Chapter 11**
                                                    :
**MOTORS LIQUIDATION COMPANY,** *et al.,*            :     **Case No.: 09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*     :
                                                    :
                **Debtors.**                        :     **(Jointly Administered)**
                                                    :
------------------------------------------------------------x

**MOTION OF GENERAL MOTORS LLC PURSUANT**
**TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THIS COURT'S**
**JULY 5, 2009 SALE ORDER AND INJUNCTION AGAINST**
**PLAINTIFFS IN PRE-CLOSING ACCIDENT LAWSUITS**

23382356v1

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND STATEMENT OF FACTS ...................................................... 7

    A.    Old GM Filed For Protection Under  The Bankruptcy Code In June 2009 ........... 8

    B.    Objectors To The Sale Motion Argued That New GM  Should Assume Additional Liabilities Of The Type  Plaintiffs Now Assert In The Pre-Closing Accident Lawsuits .................................................................... 9

    C.    The Court Issued Its Sale Order And Injunction, And The  Product Liability Claimants And Others Appealed Because  They Objected To The Fact That New GM Was Not Assuming *Their* Liabilities For Any Claims They Might Have Then Or In The Future ............................................. 10

    D.    Upon Approval Of The Sale Agreement And Issuance Of The Sale Order And Injunction, New GM Assumed Certain Narrowly Defined Liabilities, But The Bulk Of Old GM's Liabilities Remained With Old GM ...................... 13

    E.    The Court's Sale Order And Injunction Expressly Protects New GM From Litigation Over Retained Liabilities, And The Injunction Expressly  Bars Plaintiffs From Initiating And Pursuing Litigation Against New GM. ............... 15

    F.    New GM Has Recalled Certain Vehicles  And In Response, Plaintiffs Have Filed  The Pre-Closing Accident Lawsuits ................................................. 17

    G.    The Pre-Closing Accident Lawsuits .................................................... 19

    H.    New GM Has Adopted the Feinberg Protocol ........................................ 21

NEW GM'S ARGUMENT TO ENFORCE THE COURT'S SALE ORDER AND INJUNCTION AGAINST THE PLAINTIFFS IN THE PRE-CLOSING ACCIDENT LAWSUITS ................................................................................. 23

    A.    This Court's Sale Order And  Injunction Should Be Enforced ........................... 23

    B.    New GM Is Not Liable For Damages Arising From Accidents That Took Place Prior to the Closing Of The 363 Sale ................................................ 26

    C.    New GM Cannot Be Held Liable For  Old GM's Alleged Conduct, Either  Directly Or As Old GM's Alleged "Successor" ...................................... 28

    D.    Plaintiffs' Warranty Assertions Do Not Enable Them To Circumvent The Court's Sale Order And Injunction ................................................... 29

CONCLUSION ................................................................................................ 30

NOTICE AND NO PRIOR REQUESTS ........................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ayers v. Gen. Motors,*
    234 F.3d 514, 522-24 (11th Cir. 2000) .................................................................. 14

*Back v. LTV Corp. (In re Chateaugay Corp.),*
    213 B.R. 633, 640 (S.D.N.Y. 1997)...................................................................... 24

*Burton v. Chrysler Group, LLC (In re Old Carco LLC),*
    492 B.R. 392 (Bankr. S.D.N.Y. 2013).................................................................. 29

*Callan v. Motors Liquidation Co. (In re Motors Liquidation Co.),*
    428 B.R. 43 (S.D.N.Y. 2010)......................................................................... 12, 13

*Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.),*
    Adv. Proc. No. 09-00509 (Bankr. S.D.N.Y.)...................................................... 24, 25

*Celotex Corp. v. Edward,*
    514 U.S. 300 (1995)................................................................................. 6, 7, 25

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,*
    445 U.S. 375 (1980)...................................................................................... 25

*Handy v. Gen. Motors Corp.,*
    518 F.2d 786 (9th Cir 1975) ............................................................................ 14

*Handy v. Gen. Motors Corp.,*
    518 F.2d 786, 787-88 (9th Cir 1975). ................................................................ 14

*In re Cont'l Airlines, Inc.,*
    236 B.R. 318 (Bankr. D. Del. 1999) .................................................................. 24

*In re Gen. Motors Corp.,*
    407 B.R. 463 (Bankr. S.D.N.Y. 2009)........................................................ 5, 10, 11

*In re Gruntz,*
    202 F.3d 1074 (9th Cir. 2000) ......................................................................... 26

*In re McGhan,*
    288 F.3d 1172 (9th Cir. 2002) ......................................................................... 26

*In re Motors Liquidation Co.,* No. 09-50026 (REG),
    2011 WL 6119664 (Bankr. S.D.N.Y. 2011)....................................................... 24

*In re Wilshire Courtyard,*
    729 F.3d 1279, 1290 (9th Cir. 2013) ................................................................. 23

*Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.),*
    430 B.R. 65 (S.D.N.Y. 2010)........................................................................... 13

*Pratt v. Ventas, Inc.,*
    365 F.3d 514 (6th Cir. 2004) ........................................................................... 25

*Spartan Mills v. Bank of Am. Ill.,*
    112 F.3d 1251 (4th Cir. 1997) ......................................................................... 26

*Travelers Indem. Co. v. Bailey,*
    557 U.S. 137, 151 (2009)................................................................................ 23

iii

*Trusky v. Gen. Motors LLC* (In re Motors Liquidation Co.),
   Adv. Proc. No. 09–09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) ....... 14, 25, 28

*U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.),*
   68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ........................................................................... 24

## STATUTES

11 U.S.C. § 105(a) ....................................................................................................................... 24

11 U.S.C. § 363 ........................................................................................................................... 11

11 U.S.C. § 363(m) ..................................................................................................................... 11

49 C.F.R. § 554.1 ........................................................................................................................ 18

49 U.S.C. § 30119 ....................................................................................................................... 18

## INTRODUCTION

In June 2009, General Motors LLC ("**New GM**") was a newly-formed entity, created by the U.S. Treasury, to purchase substantially all of the assets of Motors Liquidation Company, formerly known as General Motors Corporation ("**Old GM**"). Through a bankruptcy-approved sale process, New GM acquired Old GM's assets, free and clear of all liens, claims, liabilities and encumbrances of Old GM, other than a limited and defined set of liabilities that New GM expressly assumed under a June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("**Sale Agreement**").[1] The Bankruptcy Court approved the sale from Old GM to New GM ("**363 Sale**") and the terms of the Sale Agreement in its "**Sale Order and Injunction**," dated July 5, 2009.[2]

This Motion does not address the approximately 90 lawsuits ("**Ignition Switch Actions**") against New GM that seek economic losses (*i.e.*, where there was no post-363 Sale accident causing personal injury, loss of life, or property damage) against New GM relating to allegedly defective ignition switches in certain vehicle models. New GM previously filed a motion with this Court on April 21, 2014 ("**Ignition Switch Motion to Enforce**") seeking relief with respect to the Ignition Switch Actions, the Court held Scheduling Conferences on May 2, 2014, and July 2, 2014, with respect to that Motion, and the initial phase of that contested

---

[1]   A copy of the Sale Agreement is annexed hereto as Exhibit "A."

[2]   The full title of the Sale Order and Injunction is "Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief," entered by the Court on July 5, 2009. A copy of the Sale Order and Injunction is annexed hereto as Exhibit "B."

proceeding is being governed by Scheduling Orders entered by the Court on May 16, 2014, and

July 11, 2014 (collectively, the "**Scheduling Orders**")[3]

This Motion also does not concern any litigation involving an accident that occurred **after**

the closing of the 363 Sale that caused personal injury, loss of life, or property damage; New GM

assumed such liabilities pursuant to the Sale Agreement and is addressing issues respecting those

claims in appropriate non-bankruptcy forums.

Instead, this Motion involves **only** litigation in which Plaintiffs are asserting claims

against New GM that emanate from an accident that occurred **prior to** the closing of the 363

Sale. Such claims do not involve New GM in any way, were never assumed by New GM as part

of the Sale Agreement, and are barred by the Court's Sale Order and Injunction.

The subject matter of this Motion was not included in the Ignition Switch Motion to

Enforce because, at the time that Motion was filed, New GM already had announced that it had

retained Kenneth Feinberg to develop and design a protocol ("**Feinberg Protocol**")[4] for the

submission, evaluation, and settlement of death or physical injury claims resulting from

accidents allegedly caused by defective ignition switches in certain vehicles. New GM delayed

filing this Motion so that the Feinberg Protocol could be developed, formally announced, and

implemented. By filing this Motion in conjunction with the launch of the Feinberg Protocol, GM

has provided eligible Plaintiffs with an alternative (*i.e.*, a source of recovery under the Feinberg

Protocol) to the enforcement of the Sale Order and Injunction against them. Participation in the

---

[3]   As New GM did when it filed the Ignition Switch Motion to Enforce, New GM will seek a conference before
the Court upon filing this Motion to Enforce to discuss procedural issues raised by the relief sought herein,
including the possibility of consolidating this Motion and the Monetary Relief Motion to Enforce (as herein
defined and discussed *infra*) with the Ignition Switch Motion to Enforce.

[4]   A copy of the Feinberg Protocol is attached hereto as Exhibit "C". It can also be accessed at:
http://www.gmignitioncompensation.com/docs/FINAL%20PROTOCOL%20June%2030%20%202014.pdf. The
Feinberg Protocol encompasses claims resulting from accidents that occurred both before and after the closing
of the 363 Sale that allegedly were caused by defective ignition switches in certain vehicles.

2

Feinberg Protocol is voluntary, and if eligible claimants decline to participate, New GM seeks by this Motion to enforce the Sale Order and Injunction against them.

The timing of the filing of this Motion is also dictated by the Scheduling Orders which set forth specific deadlines for the development of agreed upon factual stipulations, and the briefing of Threshold Issues (as defined in the Scheduling Orders). Generally, the Plaintiffs' counsel related to this Motion are already involved in the Ignition Switch Motion to Enforce.[5] However, to the extent there is not complete overlap, and to ensure that all parties in interest have an opportunity to address common issues before the Court at the same time, this Motion is being filed now.

It is also for this reason that, simultaneously with the filing of this Motion, New GM is filing a motion ("**Monetary Relief Motion to Enforce**") to enforce the Sale Order and Injunction with respect to other litigations brought against New GM for Retained Liabilities (as defined in the Sale Order and Injunction) of Old GM, that are unrelated to the alleged ignition switch issue. Since announcing the Ignition Switch recalls, New GM has announced other recalls unrelated to the alleged ignition switch defect with respect to vehicles manufactured and sold by Old GM. Notwithstanding the Sale Order and Injunction, New GM has been sued in other courts for such Retained Liabilities. Again, generally, counsel in those litigations are already involved in the Ignition Switch Motion to Enforce. But, to the extent there is not complete overlap, and to ensure that all parties in interest have an opportunity to address

---

[5]   It is significant and unexplainable that, in connection with the Ignition Switch Actions, Plaintiffs' attorneys entered into Voluntary Stay Stipulations recognizing the Court's exclusive jurisdiction to decide issues relating to the Sale Order and Injunction. Yet, the same counsel continue to file law suits against New GM in other courts for Retained Liabilities as if the Sale Order and Injunction does not exist (thus necessitating the filing of this Motion and the Monetary Relief Motion to Enforce).

common issues before the Court at the same time, the Monetary Relief Switch Motion to Enforce is also being filed now.

It must be emphasized that the Feinberg Protocol is strictly a voluntary action by New GM which addresses specific claims which New GM never assumed. New GM has nevertheless made this commitment to address a unique series of events involving the vehicles in the Cobalt/Ion Recall.

However, to be clear, the Feinberg Protocol does not modify New GM's protections under the Sale Agreement and the Sale Order and Injunction. Under the Sale Agreement approved by the Court, New GM assumed only three expressly defined categories of liabilities for vehicles sold by Old GM: (a) *post-363 Sale* accidents involving Old GM vehicles causing personal injury, loss of life or property damage; (b) repairs provided for under the "Glove Box Warranty"—a specific written warranty, of limited duration, that only covers repairs and replacement of parts; and (c) Lemon Law claims (as defined in the Sale Agreement) essentially tied to the failure to honor the Glove Box Warranty. All other liabilities relating to vehicles sold by Old GM were legacy liabilities that were retained by Old GM. *See* Sale Agreement § 2.3(b).

New GM's assumption of just these limited categories of liabilities was based on the independent judgment of U.S. Treasury officials as to which liabilities, if paid, would best position New GM for a successful business turnaround. It was an absolute condition of New GM's purchase offer that New GM not take on all of Old GM's liabilities. That was the bargain struck by New GM and Old GM, and approved by the Court as being in the best interests of Old GM's bankruptcy estate and the public interest.

Objections to the 363 Sale were made by, among others, prepetition product liability claimants who essentially wanted New GM to assume their liabilities. But the Court found that, if not for New GM's purchase offer, which provided for a meaningful distribution to prepetition

4

unsecured creditors, Old GM would have liquidated and those unsecured creditors—like the Plaintiffs that are the subject of this Motion—would have received nothing. Indeed, had the objectors been successful in opposing the Sale Order and Injunction, it would not only have been a pyrrhic victory for them, but a disaster for many thousands of others who relied on the continued viability of the assets being sold to New GM. Judge Lewis Kaplan aptly summarized the point:

> No sentient American is unaware of the travails of the automobile industry in general and of General Motors Corporation ([Old] GM) in particular. As the Bankruptcy Court found, [Old] GM will be forced to liquidate — with appalling consequences for its creditors, its employees, and our nation — unless the proposed sale of its core assets to a newly constituted purchaser is swiftly consummated.

*In re Gen. Motors Corp.*, No. M 47 (LAK), 2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009).

One of the groups that most vigorously objected to Old GM's asset sale motion was a coalition representing Old GM vehicle owners. That group included State Attorneys General, individual accident victims, the Center for Auto Safety, Consumer Action and other consumer advocacy groups. The gist of their objections was: as long as New GM was assuming any of Old GM liabilities, then it should assume **all** vehicle owner liabilities as well. In particular, the objectors argued, unsuccessfully, that New GM should assume pre-363 Sale accident claims, based upon defects in Old GM vehicles and parts, in addition to the limited categories of claims that New GM already agreed to assume.

A critical element of protecting the integrity of the bankruptcy sale process was to ensure that New GM, as the good faith purchaser for substantial value, received the benefit of its Court-approved bargain. This meant that New GM would be insulated from lawsuits by Old GM's creditors based on Old GM liabilities that it did not assume. The Sale Agreement and the Sale Order and Injunction were expressly intended to provide such protections. The Order thus enjoined such proceedings against New GM, and expressly reserved exclusive jurisdiction to this

Court to ensure that the sale transaction it approved would not be undermined or collaterally attacked.

As has been widely reported (and as discussed in the Ignition Switch Motion to Enforce), beginning in February, 2014, New GM sent notices to NHTSA concerning problems with ignition switches and ignition switch repairs in certain vehicles and parts manufactured by Old GM. New GM has also recently issued recalls concerning other defects in other Old GM vehicles. Shortly after New GM issued the recall notices, Plaintiffs sought to use the recalls as a basis to commence actions against New GM for damages arising from accidents that occurred prior to the closing of the 363 Sale—claims expressly retained by Old GM for which New GM has no liability.

Thus, the issue to be addressed in this Motion is:

**May New GM be sued, in clear violation of this Court's Sale Order and Injunction, for damages relating to vehicles sold by Old GM that were involved in accidents that occurred *prior* to the closing of the 363 Sale?**

A review of the Sale Agreement and previous decisions of this Court provide the unambiguous answer: Under the Sale Order and Injunction, all such claims were retained by Old GM, and not assumed by New GM. Plaintiffs' tactical decision to not appear in this Court to challenge the Sale Order and Injunction is telling: they know that this Court previously has enforced the Sale Order and Injunction, and they are seeking to evade this Court's injunction that bars them from suing New GM on account of pre-363 Sale accidents involving Old GM vehicles and parts.

Simply put, Plaintiffs cannot ignore the Court's Sale Order and Injunction, and proceed in other courts as though the Sale Order and Injunction never existed. The law is settled that persons subject to a Court's injunction simply do not have that option. As the United States Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey

09-50026-mg   Doc 12824-6   Filed 08/08/14   Entered 08/08/14 15:30:48   Exhibit 6
Case 14-mc-02543-JMF   Document 200-1   Filed 08/08/14   Page 82 of 37
Pg 77 of 126

09-50026-reg   Doc 12807   Filed 08/01/14   Entered 08/01/14 17:19:36   Main Document
Pg 11 of 36

that decree until it is modified or reversed, even if they have proper grounds to object to the
order.'" 514 U.S. 300, 306 (1995). Plaintiffs and their counsel are bound by this rule of law and
were required to seek and obtain relief from this Court before commencing any lawsuits against
New GM. They did not.

Accordingly, based on this Court's prior proceedings and Orders, New GM brings this
Motion to enforce the Sale Order and Injunction by:

(a)   directing the Plaintiffs ("**Plaintiffs**") in  lawsuits ("**Pre-Closing Accident
      Lawsuits**")[6] commenced against New GM that concern damages arising
      from accidents that occurred prior to the closing of the 363 Sale, to cease
      and desist from further prosecuting against New GM, or otherwise
      pursuing against New GM, the claims asserted in the Pre-Closing
      Accident Lawsuits, and

(b)   directing Plaintiffs to dismiss the Pre-Closing Accident Lawsuits with
      prejudice immediately.

## BACKGROUND STATEMENT OF FACTS

1.   In June 2009, in the midst of a national financial crisis, Old GM was insolvent

with no alternative other than to seek bankruptcy protection to sell its assets. New GM, a newly

---

[6]   The Pre-Closing Accident Lawsuits, at this time, include: (i) *Phillips, et al. v. General Motors Corporation, et
al.*, pending in the United States District Court for the Southern District of Texas ("**Phillips Action**"); (ii) *Boyd,
et al. v. General Motors LLC*, pending in the United States District Court for the Eastern District of Missouri
("**Boyd Action**"); (iii) *Vest v. General Motors LLC, et al.*, pending in the Circuit Court of Mercer County, West
Virginia ("**Vest Action**"); and (iv) *Abney et al. v. General Motors LLC*, pending in the Southern District of New
York ("**Abney Action**").  A copy of the complaint or petition in the foregoing Actions are annexed hereto as
Exhibits "D" through "G" respectively.

Certain other lawsuits were previously commenced against New GM that related to accidents that occurred
prior to the closing of the 363 Sale.  The Plaintiffs have voluntarily dismissed those lawsuits, without prejudice,
pending their review of the relief available to them under the Feinberg Protocol.  These other lawsuits are not
referenced herein because of such dismissal.

New GM reserves the right to supplement the list of Pre-Closing Accident Lawsuits set forth above in the event
additional cases are brought against New GM that implicate similar provisions of the Sale Order and Injunction,
including without limitation those lawsuits which have previously been dismissed without prejudice if they are
re-filed in any court, and the Purported Edwards Plaintiffs discussed *infra*.

created, government-sponsored entity, was the only viable purchaser, but it would not purchase Old GM's assets unless the sale was free and clear of all liens and claims (except for the claims it expressly agreed to assume). After a contested hearing, the Court approved this sale transaction, which set the framework for New GM to begin its business operations. During the last five years, New GM has operated its business based on the fundamental structure of the Sale Agreement and Sale Order and Injunction — that its new business enterprise would not be burdened with liabilities retained by Old GM. The Pre-Closing Accident Lawsuits represent an impermissible collateral attack on this Court's Sale Order and Injunction. The Plaintiffs may not rewrite, years later, the Court-approved sale to a good faith purchaser, which was affirmed on appeal, and has been the predicate for literally millions of transactions between New GM and third parties.

### A. Old GM Filed For Protection Under The Bankruptcy Code In June 2009

2.      On June 1, 2009 ("**Petition Date**"), Old GM and certain of its affiliates filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Old GM simultaneously filed a motion seeking approval of the original version of the Sale Agreement ("**Original Sale Agreement**"), pursuant to which substantially all of Old GM's assets were to be sold to New GM ("**Sale Motion**"). The Original Sale Agreement (like the Sale Agreement) provided that New GM would assume only certain specifically identified liabilities (*i.e.*, the "**Assumed Liabilities**"); all other liabilities would be retained by Old GM (*i.e.*, the "**Retained Liabilities**").

**B.**      **Objectors To The Sale Motion Argued That New GM
Should Assume Additional Liabilities Of The Type
Plaintiffs Now Assert In The Pre-Closing Accident Lawsuits**

3.      Many objectors, including various State Attorneys General, certain individual accident victims ("**Product Liability Claimants**"), the Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizens (collectively, the "**Consumer Organizations**"), the Ad Hoc Committee of Consumer Victims, and the Official Committee of Unsecured Creditors challenged various provisions in the Original Sale Agreement relating to actual and potential tort and contract claims held by Old GM vehicle owners.  These objectors argued that the Court should not approve the Original Sale Agreement unless New GM assumed additional Old GM liabilities, including those now being asserted by Plaintiffs in the Pre-Closing Accident Lawsuits.

4.      The Original Sale Agreement was amended so that New GM would assume liabilities for personal injury, loss of life, and property damage claims for ***accidents taking place after the closing of the 363 Sale*** that concern vehicles manufactured and sold by Old GM.  The Original Sale Agreement provided that New GM would only assume such liabilities for vehicles ***delivered*** to consumers after the closing of the 363 Sale.  This change was negotiated with the State Attorneys General after the Petition Date, who sought the inclusion of additional liabilities as Assumed Liabilities.  The U.S. Treasury agreed to make this change (and to assume Lemon Law claims), but would not go further.  *See* Hr'g Tr. 194:13 – 18, July 2, 2009 (when discussing improvements to the Sale Agreement, counsel for the State Attorneys General referred to a change to "the assumption of the future product liability claims. Obviously, we -- you know, in a perfect world, we would not be distinguishing between those two categories, but certainly that's better than none of them. And it certainly goes a ways to addressing issues that were raised by the state Attorney Generals.").

5.      However, the Product Liability Claimants and the Consumer Organizations were not satisfied and continued to press their objections, arguing that New GM should assume broader claims relating to pre-363 Sale accidents, as well as successor liability claims. Representatives from the U.S. Treasury declined to make further changes.  *See* Hr'g Tr. 151:1 – 10, July 1, 2009.   The Court found that New GM would not have consummated the "[t]ransaction (i) if the sale . . . was not free and clear of all liens, claims, encumbrances, and other interests . . . , including rights or claims based on any successor or transferee liability or (ii) if [New GM] would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability (collectively, the 'Retained Liabilities'), other than, in each case, the Assumed Liabilities."  *See* Sale Order and Injunction ¶ DD.  The Court ultimately overruled the objectors on these issues.  *See id.*, ¶ 2.

**C.      The Court Issued Its Sale Order And Injunction, And The Product Liability Claimants And Others Appealed Because They Objected To The Fact That New GM Was Not Assuming *Their* Liabilities For Any Claims They Might Have Then Or In The Future**

6.      The Court held a three-day hearing on the Sale Motion, then issued its Sale Decision on July 5, 2009, finding that the only alternative to the immediate sale to New GM pursuant to the Sale Agreement was a liquidation of Old GM, in which case unsecured creditors, such as the Plaintiffs now suing New GM, would receive nothing.  *See In re Gen. Motors Corp.*, 407 B.R. 463, 474 (Bankr. S.D.N.Y. 2009).  The Court analyzed the law of successor liability at length (*see id.* at 499-506), and ruled that: "[T]he law in this Circuit and District is clear; the Court will permit [Old] GM's assets to pass to the purchaser [New GM] *free and clear of successor liability claims*, and in that connection, will issue the requested findings and associated injunction."  *Id*. at 505-06 (emphasis added).

7.      In approving the 363 Sale, the Court specifically found that New GM was a "good faith purchaser, for sale-approval purposes, and also for the purpose of the protections section 363(m) provides." *Id.* at 494 (citing 11 U.S.C. § 363(m)).  The Sale Order and Injunction expressly enjoined parties (like Plaintiffs in the Pre-Closing Accident Lawsuits) from proceeding against New GM with respect to Retained Liabilities at any time in the future.  *See* Sale Order and Injunction, ¶¶ 8, 47.  This Court well understood that accident victims—like Plaintiffs in the Pre-Closing Accident Lawsuits—would recover only modest amounts on their claims from Old GM if they could not look to New GM as an additional source of recovery.  *See Gen. Motors*, 407 B.R. at 505.

8.      But the Court also recognized that if a Section 363 purchaser like New GM did not obtain protection against claims against Old GM, like successor liability claims, it would pay less for the assets because of the risks of known and unknown liabilities.  *Id.* at 500.  The Court further recognized that, under the law, a Section 363 purchaser could choose which liabilities of the debtors to assume, and not assume (*id.* at 496), and that the U.S. Treasury, on New GM's behalf, could rightfully condition its purchase offer on its refusal to assume the liabilities now being asserted by Plaintiffs in the Pre-Closing Accident Lawsuits.

9.      Old GM, the proponent of the asset sale transaction, presented evidence establishing that if the Sale Agreement was not approved, Old GM would have liquidated.  If it did, objecting creditors seeking incremental recoveries would have ended up with nothing, given that the book value of Old GM's global assets was $82 billion, the book value of its global liabilities was $172 billion (s*ee Gen. Motors*, 407 B.R. at 475), and that, in a liquidation, the value of Old GM's assets was probably less than 10% of stated book value (*id.*).

10.      Objectors also presented evidence that the book value of certain contingent liabilities was about $934 million.  *Id.* at 483.  As discussed at the trial, these contingent

liabilities concerned product liability claims, including both "reported cases" and "incurred but not reported cases."  Hr'g Tr. 161:23 – 162:8, June 30, 2009.  The Court noted in its Sale Decision that contingent liabilities were "difficult to quantify."  *Gen. Motors*, 407 B.R. at 483. And, if the book value of all contingent liabilities was understated, that simply meant Old GM was even more insolvent—an even greater reason for New GM to decline to assume the liabilities retained by GM.

11.     Whether Old GM presented evidence regarding a particular claim or specific defect was not germane to this Court's approval of the Sale Order and Injunction.  Indeed, as the Court found in the Sale Order and Injunction, the proper analysis for approving the asset sale is whether Old GM obtained the "highest or best" available offer for the Purchased Assets.  *See* Sale Order and Injunction, ¶ G.  In contrast, the quantification of liabilities left behind with Old GM (*i.e.*, the Retained Liabilities) was only relevant to a different phase of the bankruptcy case (the claims process) which did not involve New GM.

12.     New GM's refusal to assume a substantial portion of Old GM's liabilities was fundamental to the sale transaction and was widely disclosed by Old GM to all interested parties. Indeed, the Product Liability Claimants objected to and appealed the Sale Order and Injunction to specifically challenge this aspect of the 363 Sale.  *See Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010).  On appeal, although the District Court focused on the appellants' failure to seek a stay of the 363 Sale and on equitable mootness principles, it also found that this Court had jurisdiction to enjoin successor liability claims.  *See id.* at 59-60.  In its decision, the District Court further noted that the Sale Agreement and Sale Order and Injunction "made clear that [New GM] would not pursue the 363 Transaction unless the assets were sold free and clear of those liabilities [New GM] had not agreed to assume,

12

including the Existing Products Claims of Appellants . . . ."  *Id.* at 48 (citing to Sale Order and Injunction, ¶ DD).

13.   The Sale Order and Injunction was affirmed on appeal by two different District Court Judges.  *Id.; Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65 (S.D.N.Y. 2010).  There were no further appeals.[7]

**D.   Upon Approval Of The Sale Agreement And Issuance Of The Sale Order And Injunction, New GM Assumed Certain Narrowly Defined Liabilities, But The Bulk Of Old GM's Liabilities Remained With Old GM**

14.   Under the Sale Agreement and the Sale Order and Injunction, New GM only became responsible for "Assumed Liabilities."  *See* Sale Agreement § 2.3(a).  These included liability claims for **post-363 Sale accidents**, as well as the Glove Box Warranty, a warranty of limited duration (typically three years or 36,000 miles, whichever comes first) provided at the time of sale for repairs and replacement of parts. New GM assumed no other Old GM warranty obligations, express or implied:

> The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty."  ***The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials.***

Sale Order and Injunction, ¶ 56 (emphasis added).

---

[7]   The Product Liability Claimants appealed the District Court's decision, but pursuant to a stipulation so-ordered by the Second Circuit Court of Appeals on September 23, 2010, the appeal was withdrawn.  The *Parker* decision was also appealed, but that appeal was dismissed as equitably moot because the appellant had not obtained a stay pending appeal.  *See Parker v. Motors Liquidation Company*, Case No. 10-4882-bk (2d Cir. July 28, 2011).

15.     Independent of the Assumed Liabilities under the Sale Agreement, New GM covenanted to perform Old GM's recall responsibilities under federal law. *See* Sale Agreement ¶ 6.15(a). But, with respect to pre-363 Sale accidents, there was nothing for New GM to recall.[8] Thus, New GM's recall covenant does not create a basis for Plaintiffs to sue New GM for damages relating to a vehicle sold by Old GM that was involved in an accident prior to the closing of the 363 Sale—events that predated New GM's very existence.

16.     All liabilities of Old GM that were not expressly defined as Assumed Liabilities constituted "Retained Liabilities" that remained obligations of Old GM. Sale Agreement §§ 2.3(a), 2.3(b). Retained Liabilities include the claims asserted by Plaintiffs in the Pre-Closing Accident Lawsuits such as:

i.      "[A]ll Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date." Sale Agreement, § 2.3(b)(ix).

ii.     [L]iabilities "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers." Sale Agreement § 2.3(b)(xvi), *see also id.* ¶ 6.15(a). This would include liability based on implied warranty and state consumer statutes (except Lemon Law claims).

iii.    All liabilities (other than Assumed Liabilities) of Old GM based upon contract, tort or any other basis. Sale Agreement § 2.3(b)(xi). This covers claims based on, among others, negligence, conspiracy, concealment and fraud.

iv.     All liabilities relating to vehicles sold by Old GM with a design defect.[9]

---

[8]     In any event, there are no third-party beneficiary rights granted under the Sale Agreement with respect to the covenant to comply with NHTSA (*see* Sale Agreement § 9.11), and there is no private right of action for third parties to sue for a breach of a recall obligation. *See Ayers v. Gen. Motors*, 234 F.3d 514, 522-24 (11th Cir. 2000); *Handy v. Gen. Motors Corp.*, 518 F.2d 786, 787-88 (9th Cir 1975). Thus, New GM's recall covenant does not create any basis for the Plaintiffs to sue New GM.

[9]     *See* Sale Order and Injunction, ¶ AA; *see also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013).

09-50026-mg   Doc 12824-6   Filed 08/08/14   Entered 08/08/14 15:30:48   Exhibit 6
Pg 85 of 126
Case 1:14-md-02543-JMF   Document 200-4   Filed 08/08/14   Page 20 of 37

09-50026-reg   Doc 12807   Filed 08/01/14   Entered 08/01/14 17:19:36   Main Document
Pg 19 of 36

> v.      All Liabilities based on the conduct of Old GM including any allegation, statement or writing attributable to Old GM. This covers fraudulent concealment type claims. *See* Sale Order and Injunction, ¶ 56.

> vi.     All claims based on the doctrine of "successor liability." *See, e.g.,* Sale Order and Injunction, ¶ 46.

**E.      The Court's Sale Order And Injunction Expressly Protects
New GM From Litigation Over Retained Liabilities,
And The Injunction Expressly Bars Plaintiffs From
<u>Initiating And Pursuing Litigation Against New GM.</u>**

17.     On July 10, 2009, the parties consummated the Sale. New GM acquired substantially all of the assets of Old GM free and clear of all liens, claims and encumbrances, except for the narrowly defined Assumed Liabilities. In particular, paragraphs 46, 9, and 8 of the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (except for Assumed Liabilities) relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009:

> Except for the Assumed Liabilities expressly set forth in the [Sale Agreement] . . . [New GM] . . . shall [not] have any liability for any claim that arose prior to the Closing Date, ***relates to the production of vehicles prior to the Closing Date***, or otherwise is assertable against [Old GM] . . . prior to the Closing Date . . . . Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity . . . and products . . . liability, ***whether known or unknown*** as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction, ¶ 46 (emphasis added); *see also id.*, ¶ 9(a) ("(i) no claims other than Assumed Liabilities, will be assertable against the Purchaser; (ii) the Purchased Assets [are] transferred to the Purchaser free and clear of all claims (other than Permitted Encumbrances) . . ."); and *id.*, ¶ 8 ("All persons and entities . . . holding claims against [Old GM] or the Purchased Assets arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, ***the operation of the Purchased Assets*** prior to the Closing . . .

are forever barred, estopped, and permanently enjoined . . . from asserting [such claims] against
[New GM]. . . .") (emphasis added).

    18.    Anticipating the possibility that New GM might be wrongfully sued for Retained
Liabilities, the Sale Order and Injunction permanently enjoins claimants from asserting claims of
the type made in the Pre-Closing Accident Lawsuits:

> [A]ll persons and entities . . . holding liens, claims and encumbrances, and other
> interests of any kind or nature whatsoever, including rights or claims based on any
> successor or transferee liability, against [Old GM] or the Purchased Assets
> (whether legal or equitable, secured or unsecured, *matured or unmatured*,
> *contingent or noncontingent*, senior or subordinated), *arising under or out of, in*
> *connection with, or in any way relating to [Old GM], the Purchased Assets, the*
> *operation of the Purchased Assets prior to the Closing* . . . *are forever barred,*
> *estopped, and permanently enjoined . . . from asserting against [New GM] . . .*
> *such persons' or entities' liens, claims, encumbrances, and other interests,*
> *including rights or claims based on any successor or transferee liability*.

Sale Order and Injunction, ¶ 8 (emphasis added); *see also id.*, ¶ 47.

    19.    The Court specifically found that the provisions of the Sale Order and Injunction,
as well as the Sale Agreement, were binding on all creditors, *known and unknown* alike. *See*
Sale Order and Injunction, ¶ 6 ("This [Sale] Order and [Sale Agreement] "shall be binding in all
respects upon the Debtors, their affiliates, *all known and unknown creditors* of, and holders of
equity security interests in, any Debtor, including any holders of liens, claims, encumbrances, or
other interests, including rights or claims based on any successor or transferee liability . . . ."
(emphasis added)); *see also id.*, ¶ 46.

    20.    Because the Plaintiffs in the *Phillips* Action commenced a lawsuit against Old
GM prior to the Petition Date, they were known creditors of Old GM and received notice of the
Sale Motion and the relief requested therein.[10]  *See* Certificate of Service, filed on June 15, 2009

---

[10]   The Plaintiffs in the *Phillips* Action also filed four proofs of claim in Old GM's bankruptcy case and, after
mediation, entered into a settlement with Old GM resolving those claims.  Under the settlement, the Court

[Dkt. No. 973].  Upon information and belief, the Plaintiffs in the other Pre-Closing Accident

Lawsuit had not filed a lawsuit against Old GM prior to the Petition Date, they were not listed as

creditors on Old GM's books and records, and therefore they received notice of the 363 Sale by

publication.

21.     In short, except for Assumed Liabilities, claims based on Old GM vehicles

remained the legal responsibility of Old GM, and are not the responsibility of New GM.

22.     Finally, paragraph 71 of the Sale Order and Injunction makes this Court the

gatekeeper to enforce its own Order. It provides for this Court's *exclusive jurisdiction* over

matters and claims regarding the Sale, including jurisdiction to protect New GM against any

Retained Liabilities of Old GM:

> *This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement],* all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, . . ., in all respects, including, but not limited to, *retaining jurisdiction to . . . (c) resolve any disputes arising under or related to the [Sale Agreement],* except as otherwise provided therein, (d) *interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities* or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets . . . . (Emphasis added.)

**F.      New GM Has Recalled Certain Vehicles
         And In Response, Plaintiffs Have Filed
         <u>The Pre-Closing Accident Lawsuits</u>**

23.     New GM informed NHTSA of a recall on February 7, 2014, of 2005-2007 model

year (MY) Chevrolet Cobalt and 2007 Pontiac G5 vehicles.  GM expanded this ignition switch

recall on February 25, 2014 to include 2006-2007 MY Chevrolet HHR and Pontiac Solstice,

2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles, and on March 27, 2014 to include

certain Ignition & Start Switch service parts and Ignition & Start Switch Housing Kits that may

---

retained exclusive jurisdiction with respect to any claims thereunder.  As part of their current lawsuit, the Plaintiffs in the *Phillips* Action are seeking to undo the settlement with Old GM.

have been installed during repairs in some 2008-2011 MY Chevrolet HHR, 2008-2010 MY Pontiac Solstice, 2008-2010 MY Pontiac G5, and 2008-2010 MY Saturn Sky vehicles (collectively referred to as the "**Cobalt/Ion Recall**").  This recall pertains to a problem with ignition switches in the above identified vehicles and parts manufactured by Old GM.  Pursuant to the Cobalt/Ion Recall, New GM is to replace the ignition switches (at no cost to the owners).  New GM sent recall notices approved by NHTSA to all vehicle owners subject to this recall.

24.    The Cobalt/Ion Recall is underway and New GM already has started to replace the ignition switches.   NHTSA, as the government agency responsible for overseeing the technical and highly-specialized domain of automotive safety defects and recalls, administers the rules concerning the content, timing, and means of delivering a recall notice to affected motorists and dealers.   *See* 49 C.F.R. § 554.1; 49 U.S.C. § 30119.   Other governmental agencies and Congress are also examining various issues relating to the Cobalt/Ion Recall.

25.    Three of the four Pre-Closing Accident Lawsuits (as well as many of the Purported Edwards Plaintiffs (as defined below)) that are the subject of this Motion concerns vehicles that are the subject of the Cobalt/Ion Recall, and the Feinberg Protocol.

26.    In addition to the Cobalt/Ion Recall, New GM has also instituted recalls for other model vehicles that concern different issues.  The vehicle at issue in the *Phillips* Action is subject to a different ignition switch recall that is not eligible for the Feinberg Protocol.  Moreover, while the Plaintiffs in the *Phillips* Action assert that the subject 2004 Chevrolet Malibu Classic was subject to recalls related to electric power steering and increased resistance in the Body Control Module, these recalls are inapplicable to the subject model vehicle.  Even so, given the date of the accident in question, the Phillips' vehicle has not been in use since before the 363 Sale closed.

27.   After the Cobalt/Ion Recall was announced, the Plaintiffs filed the Pre-Closing Accident Lawsuits against New GM, each of which has its genesis in accidents that occurred prior to the closing of the 363 Sale.  It is expected that the number of Pre-Closing Accident Lawsuits will increase.

28.   The Pre-Closing Accident Lawsuits assert claims that are barred by the Sale Agreement and the Sale Order and Injunction.  Each of the Pre-Closing Accident Lawsuits are premised on an accident involving a vehicle manufactured and sold by Old GM that occurred prior to the closing of the 363 Sale.  In their complaints, the Plaintiffs conflate Old GM and New GM, but the Sale Order and Injunction is clear that New GM is a separate entity from Old GM (*see* Sale Order and Injunction, ¶ R), and is not liable for successor liability claims (*see, e.g.*, *id.*, ¶¶ 46, 47).  Claims based on that factual predicate are Retained Liabilities and may not be brought against New GM.

29.   This Court is uniquely situated to enforce its own Order.  By this Motion, New GM requests that the Court enforce the Sale Order and Injunction by directing Plaintiffs (i) to cease and desist from pursuing claims for Retained Liabilities of Old GM against New GM, and (ii) to dismiss with prejudice the Pre-Closing Accident Lawsuits immediately.

### G.   The Pre-Closing Accident Lawsuits

30.   While the Plaintiffs in the Pre-Closing Accident Lawsuits contort allegations in an effort to frame a cause of action against New GM, their efforts are futile.  As demonstrated in the chart below, each of the complaints/petitions in the Pre-Closing Accident Lawsuits concern (i) a vehicle manufactured and sold *by Old GM, and not New GM*, and (ii) an accident that occurred *prior to the Closing Date of the 363 Sale*:[11]

_____

[11]   As noted above, certain similar lawsuits not listed in the chart have been voluntarily dismissed, without prejudice, by the Plaintiffs, pending their review of the Feinberg Protocol.

|   | Plaintiff Name | Date of Accident[12] | Vehicle Year and Model |
|---|---|---|---|
| 1 | Phillips | October 18, 2005 | 2004 Chevy Malibu Classic |
| 2 | Boyd[13] | January 22, 2008 (Marino) | 2007 Chevy Cobalt |
|   |  | September 13, 2008 (Suarez-Marquez) | 2006 Chevy Cobalt |
| 3 | Vest | May 2, 2006 | 2005 Chevy Cobalt |
| 4 | Abney[14] | July 4, 2009 (Gray) | 2006 Chevy Cobalt |
|   |  | July 6, 2009 (Page, A.) | 2008 Chevy Cobalt |
|   |  | July 6, 2009 (Page, S.) | 2009 Chevy Cobalt |
|   |  | July 9, 2009 (Stivers) | 2006 Chevy Cobalt |

31.    In addition to the Plaintiffs set forth in the chart above, a group of over 150 would-be plaintiffs (collectively, the "**Purported Edwards Plaintiffs**"), who are represented by counsel already involved in the Ignition Switch Motion to Enforce and in the Multi-District Litigation ("**MDL**") currently pending in the Southern District of New York relating to the Ignition Switch Actions, filed a motion ("**Motion for Leave**") on July 31, 2014 with the MDL court – and *not* this Court -- seeking leave to file a consolidated complaint against New GM based on claims that emanate from accidents that occurred *prior to* the closing of the 363 Sale.

32.    Also on July 31, 2014, the Purported Edwards Plaintiffs filed with this Court a *Notice of Filing of Motion for Leave to File Omnibus Complaint with MDL Court* [Dkt. No. 12796]  ("**Notice of Filing**"), which discusses the Motion for Leave, but does not seek relief

---

[12]    Names in parentheses denote the individual plaintiffs that were in the referenced accidents.

[13]    The *Boyd* Action concerns four different accidents, two that occurred prior to the closing of the 363 Sale and two that occurred after the closing of the 363 Sale.  This Motion to Enforce concerns only the two accidents that occurred prior to the closing of the 363 Sale, and which are referenced in the chart above.

[14]    The *Abney* Action was filed on behalf of 658 plaintiffs and concerns hundreds of different accidents, four of which occurred prior to the closing of the 363 Sale; the remainder occurred after the closing of the 363 Sale. This Motion to Enforce concerns only the four accidents that occurred prior to the closing of the 363 Sale, and which are referenced in the chart above.

from this Court.[15]  In their Notice of Filing, the Purported Edwards Plaintiff clearly recognize
that their purported claims are subject to the injunction provisions contained in the Sale Order
and Injunction.  *See* Notice of Filing, ¶ 3 (asserting that the Purported Edwards Plaintiffs are
"mindful of this Court's sale order, plan injunction and various stay stipulations" and that if the
Motion for Leave was granted, the Purported Edwards Plaintiffs "expect to enter into a stay
stipulation" with respect to their claims so this Court can conduct an "orderly and coordinated
process").  Yet, instead of filing the Motion for Leave in this Court – which would have been the
proper procedure in view of the Court's exclusive jurisdiction over this issue -- they inexplicably
filed the Motion for Leave with the MDL court.  Given their actions, the Purported Edwards
Plaintiffs are, for purposes herein, included within the defined term "Plaintiffs."

33.     The Plaintiffs in the Pre-Closing Accident Lawsuits allege various facts based on
New GM's recent recalls of various models of pre-closing date vehicles.  However, such recalls
do not change the fact that New GM did not assume these liabilities.  All of the accidents and
injuries at issue in these lawsuits occurred prior to the closing date of the 363 Sale and therefore
relate solely to Old GM's conduct.  Plaintiffs have not, and cannot, allege any cognizable facts
against New GM that would form the basis of valid claims against New GM.

**H.     New GM Has Adopted the Feinberg Protocol**

34.     On April 1, 2014, New GM announced that it retained Kenneth Feinberg as a
consultant to explore and evaluate actions it may take to assist families of accident victims
whose vehicles were the subject of the Cobalt/Ion Recall.  Mr. Feinberg was asked to consider,
in an independent, balanced and objective manner, the options available to New GM for

_____

[15]    A copy of the Notice of Filing is annexed hereto as Exhibit "H."

addressing issues related to the Cobalt/Ion Recall and possible compensation for accident victims.

35.     On or about June 30, 2014, Mr. Feinberg presented his protocol to the public. The Feinberg Protocol sets forth the eligibility and process requirements for individual claimants to submit and settle claims alleging that a defective ignition switch subject to the Cobalt/Ion Recall caused a death or physical injury in an automobile accident.  The individual on whose behalf a claim is filed must have been the driver, a passenger, a pedestrian, or the occupant of another vehicle in an accident involving one of the "Eligible Vehicles" (as defined in the Feinberg Protocol).  Pursuant to the Feinberg Protocol, claims will be accepted beginning August 1, 2014.

36.     The Feinberg Protocol creates a Claims Resolution Facility ("**Facility**") under which Mr. Feinberg (as an independent administrator) will process and evaluate claims to determine: (i) whether a submitted claim meets the eligibility requirements under the Feinberg Protocol, and (ii) the compensation to be paid for eligible claims.  The Facility is authorized to process *only* those eligible claims involving death or physical injury (as defined in the Feinberg Protocol) caused by a defective ignition switch in an Eligible Vehicle.  No claims for economic injury or other allegations of damage (whether based on a defective ignition switch or otherwise) are eligible under the Feinberg Protocol.

37.     Accident victims who are eligible under the Feinberg Protocol may choose to participate in that program and, if their claims are accepted, will be compensated in an amount determined by the Facility.  Claimant eligibility and compensation awards under the Feinberg Protocol are decided by Mr. Feinberg in his sole discretion.  Eligible accident victims who fail or decline to opt into the Feinberg Protocol, and other parties who are not eligible under the

Feinberg Protocol, are barred pursuant to the Sale Order and Injunction from asserting claims against New GM that are based on Retained Liabilities of Old GM.[16]

### NEW GM'S ARGUMENT TO ENFORCE THE COURT'S SALE ORDER AND INJUNCTION AGAINST THE PLAINTIFFS IN THE PRE-CLOSING ACCIDENT LAWSUITS

38.    The Plaintiffs in the Pre-Closing Accident Lawsuits do not have the choice of simply ignoring the Court's Sale Order and Injunction.  As the Supreme Court expressed in its *Celotex* decision:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . .  Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.

514 U.S. at 313.  These settled principles bind Plaintiffs in the Pre-Closing Accident Lawsuits. Those who purchased vehicles from Old GM and were involved in accidents that occurred before the 363 Sale are subject to the terms of the Court's Sale Order and Injunction, whether they were known or unknown by Old GM at the time, and are barred by this Court's Injunction from suing New GM on account of Old GM's Retained Liabilities.

### A.    This Court's Sale Order And Injunction Should Be Enforced

39.    It is well settled that a "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *In re Wilshire Courtyard*, 729 F.3d 1279, 1290 (9th Cir. 2013) (affirming bankruptcy court's post-confirmation jurisdiction to interpret and enforce its orders; "[i]nterpretation of the Plan and

---

[16]   The Plaintiffs in the *Boyd, Vest* and *Abney* Actions, as well as many of the Purported Edwards Plaintiffs, may be eligible under the Feinberg Protocol.  While the Plaintiffs in the *Philips* Action are not eligible under the Feinberg Protocol (as their accident did not concern an Eligible Vehicle), they have already received compensation from the Old GM bankruptcy estate pursuant to their previous settlement with Old GM.

Confirmation Order is the only way for a court to determine the essential character of the
negotiated Plan transactions in a way that reflects the deal the parties struck in chapter 11
proceedings"); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("In the
bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court
retains jurisdiction, inter alia, to enforce its confirmation order."); *U.S. Lines, Inc. v. GAC
Marine Fuels, Ltd. (In re McClean Indus., Inc.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("[a]ll
courts, whether created pursuant to Article I or Article III, have inherent contempt power to
enforce compliance with their lawful orders.  The duty of any court to hear and resolve legal
disputes carries with it the power to enforce the order.").  In addition, Section 105(a) of the
Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is
necessary or appropriate to carry out" the Bankruptcy Code's provisions, and this section
"codif[ies] the bankruptcy court's inherent power to enforce its own orders."  *Back v. LTV Corp.
(In re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997); 11 U.S.C. § 105(a).

40.    Consistent with these authorities, this Court retained subject matter jurisdiction to
enforce its Sale Order and Injunction.  Indeed, this is not the first time that this Court has been
asked to enforce its injunction against plaintiffs improperly seeking to sue New GM for Old
GM's Retained Liabilities.  *See In re Motors Liquidation Co.*, No. 09-50026 (REG), 2011 WL
6119664 (Bankr. S.D.N.Y. 2011) (ordering various plaintiffs to dismiss with prejudice civil
actions in which they had brought claims against New GM that are barred by the Sale Order and
Injunction); *Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-
00509 (Bankr. S.D.N.Y.), Hr'g Tr. 9:3-9:14, May 6, 2010 ("when you are looking for a
declaratory judgment on an agreement that I approved [*i.e.*, the Sale Agreement] that was
affected by an order that I entered [*i.e.*, the Sale Order and Injunction], and with the issues
permeated by bankruptcy law as they are, and which also raise issues as to one or more

24

09-50026-mg 4 Doc 12824-6 Filed 08/08/14 Entered 08/08/14 15:30:48 Exhibit 6
Pg 95 of 126
Case 1:14-md-02543-JMF Document 200-4 Filed 08/08/14 Page 90 of 37

09-50026-reg    Doc 12807    Filed 08/01/14    Entered 08/01/14 17:19:36    Main Document
Pg 29 of 36

injunctions that I entered, ***how in the world would you have brought this lawsuit in Delaware***
***Chancery Court.  I'm not talking about getting in personam jurisdiction or whether you can***
***get venue over a Delaware corporation in Delaware.  I'm talking about what talks and walks***
***and quacks like an intentional runaround of something that's properly on the watch of the***
***U.S. Bankruptcy Court for the Southern District of New York.***" (emphasis added)); *Castillo*,
2012 WL 1339496 (entering judgment in favor of New GM) (affirmed by 500 B.R. 333, 335
(S.D.N.Y. 2013)); *see also Trusky*, 2013 WL 620281, at *2  (finding that "claims for design
defects [of 2007-2008 Chevrolet Impalas] may not be asserted against New GM and that "New
GM is not liable for Old GM's conduct or alleged breaches of warranty").

41.    New GM also recently filed a motion to enforce the Sale Order and Injunction
against the plaintiffs who filed the Ignition Switch Actions.  Recognizing its continuing
jurisdiction over the issues raised in those actions, this Court entered Scheduling Orders on May
16, 2014 and July 11, 2014, establishing procedures for the resolution of the issues raised in that
motion by this Court.

42.    Much like the plaintiffs in the Ignition Switch Actions, and contrary to New GM's
bargained for rights under the Sale Agreement and the Court's Sale Order and Injunction,
Plaintiffs in the Pre-Closing Accident Lawsuits are suing New GM for alleged defects in Old
GM vehicles.  Plaintiffs may not simply ignore the Court's injunction through these collateral
attacks, especially when the Sale Order and Injunction is a final order no longer subject to
appeal. *See Celotex*, 514 U.S. at 306, 313 ("'persons subject to an injunctive order issued by a
court with jurisdiction are expected to obey that decree until it is modified or reversed'")
(quoting *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980)); *Pratt*
*v. Ventas, Inc.*, 365 F.3d 514, 520 (6th Cir. 2004) (applying doctrine to dismiss suits filed in
violation of injunction in confirmation order entered by bankruptcy court); *In re McGhan*, 288

F.3d 1172, 1180-81 (9th Cir. 2002) (applying doctrine to enforce discharge order in favor of

debtors and holding that only the bankruptcy court could grant relief from the order); *see also In

re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000) (applying this doctrine in the context of an

automatic stay entered by the bankruptcy court); *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251

(4th Cir. 1997) (applying doctrine to bankruptcy court order approving sales of assets free and

clear of liens).

**B.      New GM Is Not Liable For Damages Arising From
          Accidents That Took Place Prior to the Closing Of The 363 Sale**

43.     The Sale Order and Injunction could not be more clear.  Retained Liabilities of

Old GM for which New GM has no liability expressly include "all Product Liabilities arising in

whole or in part from any accidents, incidents or other occurrences that happen prior to the

Closing Date."   Sale Agreement, § 2.3(b)(ix).   "Product Liabilities" was defined by the Sale

Agreement as

> all Liabilities to third parties for death, personal injury, or other injury to Persons
> or damage to property caused by motor vehicles designed for operation on public
> roadways or by the component parts of such motor vehicles and, in each case,
> manufactured, sold or delivered by Sellers (collectively, "Product Liabilities") . . .

Sale Agreement, § 2.3(a)(ix).

44.     In its objection to the 363 Sale, the Ad Hoc Committee of Consumer Victims

recognized that while New GM was agreeing to assume certain liabilities of Old GM, it was not

agreeing to assume "Product Liabilities" arising out of accidents that took place prior to the 363

Sale.  The Ad Hoc Committee of Consumer Victims argued, among other things, that New GM's

refusal to "assume successor for pre-closing product liability claims . . . [was] not in good faith."

Objection to 363 Sale by Ad Hoc Committee of Consumer Victims [Dkt. No. 1997], ¶ 33.  As

noted, the Court considered that and other objections, and after a contested hearing, overruled all

objections to the Sale Motion, including those raised by the Ad Hoc Committee of Consumer Victims.[17]  *See* Sale Order and Injunction, ¶ 2.

45.    In addition, the Court previously was asked to decide whether a claim against New GM that was based on a prepetition accident was barred by the Sale Order and Injunction. Specifically, after the Estate of Beverly Deutsch ("**Deutsch**") commenced a state court action against New GM that arose from an accident in June, 2007, New GM asked this Court to enjoin Deutsch from prosecuting the state court action because it was barred by the terms of the Sale Agreement and Sale Order and Injunction.    While the issue in Deutsch concerned an interpretation of the difference between "accident" and "incident" (as Deutsch argued that the accident occurred before the 363 Sale, but the death of the driver was a separate "incident" that occurred after the 363 Sale), the end result is applicable here.  Deutsch did not have a claim against New GM because the accident occurred prior to the closing of the 363 Sale.[18]

46.    Like the claimant in Deutsch, Plaintiffs have no claims against New GM.  The claims asserted by the Plaintiffs in each of the Pre-Closing Accident Lawsuits (i) concern a vehicle manufactured and sold by Old GM; (ii) arise directly from an accident that occurred prior to the Closing Date; and (iii) arise from the vehicles' operation or performance.  Accordingly, Plaintiffs' claims in the Pre-Closing Accident Lawsuits fit squarely within the definition of Retained Liabilities in Section 2.3(b)(ix) of the Sale Agreement.  Such claims were not assumed by New GM as part of the 363 Sale but were, for all purposes, retained by Old GM.  Thus, Plaintiffs' prosecution against New GM of the Pre-Closing Accident Lawsuits is a direct

_____

[17]    The Ad Hoc Committee of Consumer Victims had "more than 300 members who each have product liability tort claims involving personal injuries (including derivative claims and wrongful death claims) against GM." Objection to 363 Sale by Ad Hoc Committee of Consumer Victims, ¶ 4.

[18]    *See* "Decision on New GM's Motion to Enforce Section 363 Order With Respect To Product Liability Claim of Estate of Beverly Deutsch," dated January 5, 2011 [Dkt. No. 8383] ("**Deutsch Decision**").  A copy of the Deutsch Decision is annexed hereto as Exhibit "I."

violation of the Sale Order and Injunction, and Plaintiffs should be barred from continuing to prosecute those cases.

**C.      New GM Cannot Be Held Liable For
          Old GM's Alleged Conduct, Either
          Directly Or As Old GM's Alleged "Successor"**

47.      Each of the Pre-Closing Accident Lawsuits involve vehicles manufactured and sold by Old GM prior to the Sale Order and Injunction.  *See* Chart, *supra*, at ¶ 30.   The complaints in the Pre-Closing Accident Lawsuits are similar, and while they reflect an effort to plead around the Court's Sale Order and Injunction, they in fact all make the same allegations concerning Old GM:  it designed and sold vehicles with a defect that caused personal injuries prior to the closing of the 363 Sale.   Additionally, they all seek to hold New GM liable for damages based on Old GM's conduct—claims that are prohibited by the Sale Order and Injunction.  In short, as this Court previously held, New GM did not assume any liabilities based on Old GM's conduct or design defects in any of Old GM's vehicles.  *See Trusky*, 2013 WL 620281, at *2.

48.      Similarly, by conflating Old GM and New GM, Plaintiffs attempt to impose "successor" liability upon New GM, but New GM is not a successor to Old GM and did not assume any liabilities in connection with successor or transferee liability.   This is expressly provided by the Court's Sale Order and Injunction:

> The Purchaser shall not be deemed, as a result of any action taken in connection with the [Sale Agreement] or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, to:  (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchased Assets from and after the Closing); (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.  Without limiting the foregoing, the Purchaser (New GM) shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability,

28

de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction ¶ 46; *see also id.*, ¶¶ AA, BB, DD, 6, 7, 8, 10 and 47; Sale Agreement § 9.19.

49.    **P**laintiffs' successor liability allegations are simply a violation of this Court's Sale Order and Injunction.  But whether or not they expressly allege successor liability, Plaintiffs' claims against New GM based on Old GM's conduct are essentially successor liability claims cast in a different way and are precluded by that Order.

**D.    Plaintiffs' Warranty Assertions Do Not Enable Them To Circumvent The Court's Sale Order And Injunction**

50.    The Glove Box Warranty is for a limited duration and all of the vehicles that are the subject of the Pre-Closing Accident Lawsuits were sold considerably more than three years ago (the most recent accident occurred almost six years ago).  Thus, the Glove Box Warranty for each vehicle at issue has expired.  In any event, the Glove Box Warranty provides only for repairs and replacement parts.

51.    This distinction is not unique to Old GM's Sale.  In the *Chrysler* bankruptcy case, the court likewise found that the assumed liabilities were limited to the standard limited warranty of repair issued in connection with sales of vehicles.  *See, e.g., Burton v. Chrysler Group, LLC (In re Old Carco LLC)*, 492 B.R. 392, 404 (Bankr. S.D.N.Y. 2013) ("New Chrysler did agree to honor warranty claims — the Repair Warranty.  None of the statements attributed to New Chrysler state or imply that it assumed liability to pay consequential or other damages based upon pre-existing defects in vehicles manufactured and sold by Old Carco.").

52.    Similarly, the Sale Agreement and the Sale Order and Injunction provide that the implied warranty claims asserted by Plaintiffs here are Retained Liabilities for which New GM is

09-50026-mg Doc 12824-6 Filed 08/08/14 Entered 08/08/14 15:30:48 Exhibit 6
Pg 100 of 126
Case 14-mc-02543-JMF Document 200-4 Filed 08/08/14 Page 35 of 37

09-50026-reg Doc 12807 Filed 08/01/14 Entered 08/01/14 17:19:36 Main Document
Pg 34 of 36

not responsible. *See* Sale Order and Injunction, ¶ 56 (New GM "is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs and point of purchase materials." (emphasis added)); *see also* Sale Agreement § 2.3(b)(xvi) (one of the Retained Liabilities of Old GM was any liabilities "arising out of, related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." (emphasis added)).

53.     In short, any breach of warranty claims Plaintiffs pursue relating to Old GM vehicles (whether express or implied) improperly seek damages against New GM in violation of the Sale Order and Injunction.

## CONCLUSION

54.     New GM was created to purchase the assets of Old GM pursuant to the Sale Agreement.  The limited category of liabilities it agreed to assume as part of the purchase was the product of a negotiated bargain, which was approved by this Court in July 2009.  Plaintiffs in the Pre-Closing Accident Lawsuits have completely ignored this; they improperly treat New GM and Old GM interchangeability and are pursuing Old GM claims that they cannot lawfully pursue against New GM; and they wrongfully have filed suit in violation of this Court's Sale Order and Injunction.

55.     New GM has no liability or responsibility for the Retained Liability claims asserted in the Pre-Closing Accident Lawsuits and, under the Sale Order and Injunction, Plaintiffs in such Actions are enjoined from bringing them against New GM. *See, e.g.*, Sale Order and Injunction, ¶¶ 8, 47.  Accordingly, the Court should enforce the terms of its Sale Order

09-50026-mg    Doc 12824-6    Filed 08/08/14    Entered 08/08/14 15:30:48    Exhibit 6
Case 1:14-md-02543-JMF    Document 200-4    Filed 08/09/14    Page 96 of 37
Pg 101 of 126

09-50026-reg    Doc 12807    Filed 08/01/14    Entered 08/01/14 17:19:36    Main Document
Pg 35 of 36

and Injunction by ordering Plaintiffs to promptly dismiss the Pre-Closing Accident Lawsuits, and to cease and desist from all efforts to assert such claims against New GM that are barred by the Sale Order and Injunction. Of course, as noted, those Plaintiffs eligible to participate in the Feinberg Protocol may do so.

## NOTICE AND NO PRIOR REQUESTS

56.      Notice of this Motion has been provided to (a) counsel for Plaintiffs in each of the Pre-Closing Accident Lawsuits, (b) counsel for Motors Liquidation Company General Unsecured Creditors Trust, and (c) the Office of the United States Trustee.  New GM submits that such notice is sufficient and no other or further notice need be provided.

57.      No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court: (i) enter an order substantially in the form set forth as Exhibit "J" hereto, granting the relief sought herein; and (ii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      August 1, 2014              Respectfully submitted,

                                       _/s/ Arthur Steinberg_____
                                       Arthur Steinberg
                                       Scott Davidson
       KING & SPALDING LLP
       1185 Avenue of the Americas
       New York, New York  10036
       Telephone:  (212) 556-2100
       Facsimile:  (212) 556-2222

       Richard C. Godfrey, P.C. (admitted _pro hac vice_)
       Andrew B. Bloomer, P.C. (admitted _pro hac vice_)
       KIRKLAND & ELLIS LLP
       300 North LaSalle
       Chicago, IL 60654
       Telephone: (312) 862-2000
       Facsimile: (312) 862-2200

       _Attorneys for General Motors LLC_

# Exhibit 5

=============
MDL No. 14-0399
=============

IN RE GENERAL MOTORS IGNITION SWITCH LITIGATION

==============================================

ON REVIEW BY THE MULTIDISTRICT LITIGATION PANEL

==============================================

### OPINION

Justice Harvey Brown delivered the opinion of the MDL panel.

General Motors LLC and Delphi Automotive Systems LLC ask us to transfer four product liability lawsuits against them to a single pretrial court for consolidated or coordinated pretrial proceedings.[1] Each of the lawsuits involves personal injury or wrongful death claims alleged to have resulted from defects in a GM vehicle's ignition switch.

GM has issued recalls for vehicle ignition switch problems for the models of the vehicles involved in each of these four crashes, as well as numerous other models, and has already produced numerous documents and a report to Congress about the ignition switch problems. These four product liability lawsuits are pending in four separate counties and prosecuted by four different law firms. Defendants assert that they have good reason to believe that numerous additional lawsuits that are similar "will be filed soon in various Texas state courts."

In federal court litigation arising out of economic losses from the same claimed ignition switch defect, Plaintiffs in 15 lawsuits have agreed that consolidated pretrial proceedings are appropriate.[2] Also, 73 personal injury actions involving allegedly faulty GM ignition switches have been transferred to a federal MDL court.[3]

---

[1]   *See* TEX. GOV'T CODE ANN. §§ 74.161–.164 (West 2013); TEX. R. JUD. ADMIN. 13.

[2]   *In re Gen. Motors Ignition Switch Litig.*, MDL No. 2543, 2014 WL 2616819, at *1 (J.P.M.L. June 9, 2014).

[3]   The following cases were transferred to a federal MDL court under *In re Gen. Motors Ignition Switch Litig.*, MDL No. 2543, 2014 WL 2616819 (J.P.M.L. June 9, 2014): *Van Pelt v.*

1

Regarding the four suits that are the subject of this motion to transfer, Plaintiffs in two cases have agreed to the transfer,[4] Plaintiffs in the third case have opposed the transfer,[5] and Plaintiffs in the fourth case did not file any opposition after initially indicating that they were undecided on the matter.

Having concluded that these four products liability suits are related and that transfer would result in more efficient pre-trial of the related cases, we grant the motion to transfer these four Texas cases.

## FIRST PRONG: RELATEDNESS

Texas Rule of Judicial Administration 13 authorizes the MDL panel to transfer "related" cases to a single pretrial judge if "transfer would be for the convenience of the parties and witnesses and would promote the just and efficient conduct of the cases."[6] The threshold question under Rule 13.3 is whether the cases are "related."[7]  The relatedness inquiry examines whether the cases involve "one or more common questions of fact."[8]

Plaintiffs opposing the motion to transfer assert that the existence of a defective ignition switch in a GM vehicle is an undisputed fact, as demonstrated by the recalls and the testimony and documents provided by GM to Congress.  Plaintiffs contend that these undisputed facts "cannot support" a motion to transfer, and that individualized liability and

---

*Gen. Motors LLC*, No. 14–01081 (N.D. Ga.); *Hair v. Gen. Motors LLC*, No. 14–00792 (C.D. Cal.); *Buzard v. Gen. Motors LLC*, No. 14–03633 (E.D. Penn.); *see* MDL No. 2543, ECF No. 271 ("Conditional Transfer Order–1") (filed June 12, 2014); MDL No. 2543, ECF No. 280 ("Conditional Transfer Order–3") (filed June 18, 2014).

[4]      One candidly conceded that the lawsuits "assert a number of similar allegations, present common questions of fact, and are right for MDL treatment" and will result in "consistent rulings on pretrial matters."

[5]      Counsel in that case has subsequently filed a second lawsuit in a fifth county.

[6]      TEX. R. JUD. ADMIN. 13.3(a)(2).

[7]      TEX. R. JUD. ADMIN. 13.3; *In re Deepwater Horizon Incident Litig.*, 387 S.W.3d 127, 128 (Tex. M.D.L. Panel 2011) ("Relatedness is a threshold question.").

[8]      *See* TEX. R. JUD. ADMIN. 13.2(f); TEX. GOV'T CODE ANN. § 74.162 (West 2013).

Case 1:14-md-02543-JMF    Document 200    Filed 09/03/14    Page 4 of 8

damage issues "will predominate" because "the cases involve different plaintiffs who suffered different injuries, at different times, in different places, in different makes, models and years of GM vehicles, while engaging in different activities."  Plaintiffs rely on *In re Delta Lloyds Insurance Co. of Houston*, 339 S.W.3d 384 (Tex. M.D.L. Panel 2008) and *In re Personal Injury Litigation Against Great Lakes Dredge & Dock, Co.,* 283 S.W.3d 547 (Tex. M.D.L. Panel 2007). Both of these cases are distinguishable.

In *Great Lakes*, we denied the motion to transfer because the plaintiff maritime workers "were injured at different times, in different states, on different vessels, while engaging in different activities, resulting in different injuries."[9] The common liability issue was insufficient to show relatedness.  Then, in *Delta Lloyds*, we observed that a common origin or common event—there a hurricane—does not by itself make cases "related" under Rule 13.  But in products liability cases alleging a common defect, "relatedness [is] supplied by the common product, not by a common event" or a common liability issue.[10] "By their nature, product liability cases are related."[11] Indeed, we have recognized "there will be common liability questions at the core of each case," including questions of knowledge of the defect, testing of the product, and the timeliness of the recall.[12] These product liability issues are certain to arise in the GM litigation switch cases as well.

Plaintiffs identify a number of individualized issues that will have to be resolved in the cases, such as whether an ignition switch caused the accident, and the extent of the plaintiffs' injuries and damages. Because complex products cases will always involve

---

[9]    *In re Deepwater Horizon Incident Litig.*, 387 S.W.3d at 129 (discussing *Great Lakes Dredge & Dock, Co.*, 283 S.W.3d at 548).

[10]    *In re Wellington Ins. Co. Hailstorm Litig.*, 427 S.W.3d 581, 583 n.9 (Tex. M.D.L. Panel 2014).

[11]    *In re Toyota Unintended Acceleration Litig.*, 398 S.W.3d 892, 895 (Tex. M.D.L. Panel 2010).

[12]    *Id.* at 895.

3

individual issues of fact, the transfer rule does not require identity of parties or issues. Indeed, it does not even require common issues to predominate.[13]  Therefore, we have "granted MDL motions in product liability cases involving different events at different times linked by claims that a product was defective."[14] Further, in cases involving allegedly defective vehicles, we have held that "it is irrelevant that the cases involve vehicles of differing make, model, and year."[15]

Plaintiffs also argue that individual cases will involve separate issues regarding the culpability of different local dealerships and their owners and the culpability of drivers. The presence of other defendants does not, however, destroy relatedness.[16]

We conclude that these cases are related; the unique facts presented by the individual accidents and plaintiffs are less significant than the fact that these actions share core issues of fact concerning the design and testing of GM's vehicles.

## SECOND PRONG: EFFICIENCY

We next consider whether transfer to a single pretrial judge would "serve the convenience of the parties and witnesses" and "promote the just and efficient conduct of the litigation."[17] Rule 13 aims to further the goals of convenience, efficiency, and justice by (1) eliminating duplicative and repetitive discovery, (2) minimizing conflicting

---

[13]     *In re State Farm Lloyds Hidalgo Cnty Hail Storm Litig.*, No. 14-01689, 2014 WL 2885699, at *2 (Tex. M.D.L. Panel May 13, 2014)

[14]     *In re Wellington Ins. Co. Hailstorm Litig.*, 427 S.W.3d at 583.  *Cf. In re Firestone/Ford Litig.*, 166 S.W.3d 2 (Tex. M.D.L. Panel 2004) (transferring personal injury cases involving tread separation defects).

[15]     *In re Toyota Unintended Acceleration Litig.*, 398 S.W.3d at 894; *see also In re DaimlerChrysler AG CLK430Litig.*, 216 S.W.3d 81, 82 (Tex. M.D.L. Panel 2006) (transferring cases involving allegedly defective vehicles from model years 2000-03).

[16]     *See In re Toyota Unintended Acceleration Litig.*, 398 S.W.3d at 894 (recognizing claims were related even though some of the cases involved "local issues like breach of warranty and misrepresentation by local dealerships.").

[17]     *In re State Farm Lloyds Hurricane Litig.*, 387 S.W.3d 130, 133 (Tex. M.D.L. 2012) (quoting *In re Ad Valorem Tax Litig.,* 216 S.W.3d 83, 84 (Tex. M.D.L. Panel 2006)).

4

demands on witnesses, (3) preventing inconsistent decisions on common issues, (4) reducing unnecessary travel, and (5) creating judicial efficiency through the use of a single judge.[18] Plaintiffs assert that "transfer will not promote the efficient conduct of the litigation." We disagree and conclude that all five of these goals would be satisfied by transfer.

Discovery in these cases is likely to overlap. The common pretrial discovery disputes are more efficiently resolved by a single judge instead of multiple hearings in multiple courts. Moreover, multiple courts are likely to have different approaches to resolving discovery disputes, creating the risk of conflicting pretrial rulings. Plaintiffs contend that the liability discovery "will likely embrace the information and materials GM has already gathered and provided to the government in the ongoing investigations" but do not offer to bypass all other discovery.[19] Moreover, even if the document production largely encompasses the documents already produced to the government, other discovery—such as interrogatories and depositions—would be outside of that production and any disputes related to that discovery would benefit from efficient resolution by a single judge. Also, consolidated discovery will minimize conflicting demands upon witnesses and reduce unnecessary travel.

Plaintiffs respond that it will not be convenient for party witnesses to have to travel for "discovery-related matters" or hearings if the cases are transferred.  But transfer and consolidation do not require that individual witnesses be deposed in the county of the MDL court. As for hearings, we have previously observed, "parties and witnesses rarely need to attend pretrial hearings in person . . . ."[20]

---

[18]    *See In re State Farm Lloyds Hurricane Ike Litig.*, 392 S.W.3d 353, 355–56 (Tex. M.D.L. Panel 2012);  *In re Digitek Litig.*, 387 S.W.3d 115, 116–17 (Tex. M.D.L. Panel 2009).

[19]    One of the Plaintiffs not opposing the motion to transfer observes that "many"—but not all—of the documents have already been produced.

[20]    *In re Toyota Unintended Acceleration Litig.*, 398 S.W.3d at 895.

Finally, we observe that consolidation will not only conserve the resources of the parties and their counsel, but also the judiciary. For example, the opposing Plaintiffs are seeking to depose Michael Millikin, the Executive Vice President and General Counsel for General Motors Company, the parent company of GM.  GM objects on grounds of privilege. Rather than multiple courts addressing this issue, it is much more efficient for one court to decide it for the entire state.

## CONCLUSION

We conclude that Defendants have shown that the cases listed in their motion are "related" within the meaning of Rule 13 and that transferring them to one pretrial court would serve the convenience of the parties and witnesses and the efficient conduct of the litigation. Accordingly, Defendants' motion to transfer these cases and all related cases to a pretrial court is granted.


Presiding Judge PEEPLES, Chief Justices STONE, and McCLURE, and Justice LANG-MEIRS join.


_____
HARVEY BROWN,
JUSTICE


**OPINION ISSUED:  July 30, 2014**

Case 1:14-md-02543-JMF   Document 200-5   Filed 08/05/14   Page 8 of 8

# ORDER OF MULTIDISTRICT LITIGATION PANEL

Order Pronounced July 30, 2014

<u>APPOINTMENT OF PRETRIAL JUDGE IN THE FOLLOWING MULTIDISTRICT
LITIGATION CASE</u>:

14-0399          IN RE GENERAL MOTORS IGNITION SWITCH LITIGATION

Defendants' Motion to Transfer pursuant to Rule 13 of the Texas Rules of
Judicial Administration, filed on May 20, 2014, is granted.  The cases listed in the First
Amended Appendix A, and all tag-along cases if any, are hereby transferred to The
Honorable Robert Schaffer, presiding judge of the 152nd District Court of Harris County.

Justice Harvey Brown delivered the opinion of the MDL Panel.

# Exhibit 6

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Andrews v. General Motors LLC, No. 5:14-cv-01239-ODW-AJW (C.D. Cal.)

Arnold, et al. v. General Motors LLC, et al., No. 1:14-cv-02882-RMD (N.D. Ill.)

Ashbridge v. General Motors LLC, et al., No. 2:14-cv-00463-RCM (W.D. Pa.)

Ashworth, et al. v. General Motors LLC, No. 2:14-cv-00607-JHE (N.D. Ala.)

Balls, et al. v. General Motors LLC, No. 2:14-cv-02475-JVS-AN (C.D. Cal.)

Bedford Auto v. General Motors LLC, No. 2:14-cv-11544-GCS-DRG (E.D. Mich.)

Bender v. General Motors LLC, No. 1:14-cv-00134-TLS-RBC (N.D. Ind.)

Benton v. General Motors LLC, No. 5:14-cv-00590-JVS-AN (C.D. Cal.)

Biggs v. General Motors LLC, et al., No. 2:14-cv-11912-PDB-MKM (E.D. Mich.)

Brandt, et al. v. General Motors LLC, No. 2:14-cv-00079 (S.D. Tex.)

Brown, et al. v. General Motors LLC, No. 2:14-cv-02828-JVS-AN (C.D. Cal.)

Burton v. General Motors LLC, et al., No. 5:14-cv-00396-R (W.D. Okla.)

Camlan, Inc., et al. v. General Motors LLC, No. 8:14-cv-00535-JVS-AN (C.D. Cal.)

Childre v. General Motors LLC, et al., No. 2:14-cv-01320-KDE-MBN (E.D. La.)

Coleman v. General Motors LLC, No. 3:14-cv-00220-BAJ-SCR (M.D. La.)

Corbett, et al. v. General Motors LLC, No. 7:14-cv-00139-D (E.D.N.C.)

Cox v. General Motors LLC, et al., No. 2:14-cv-02608-JVS-AN (C.D. Cal.)

Darby v. General Motors LLC, et al., No. 5:14-cv-00676-JVS-AN (C.D. Cal.)

Dawson v. General Motors LLC, No. 1:14-cv-01459-DCN (N.D. Ohio)[*]

Deighan v. General Motors LLC, et al., No. 2:14-cv-00458-RCM (W.D. Pa.)

DeLuco v. General Motors LLC, No. 1:14-cv-02713-JMF (S.D.N.Y.)

DePalma, et al. v. General Motors LLC, et al., No. 1:14-cv-00681-YK (M.D. Pa.)

DeSutter, et al. v. General Motors LLC, No. 9:14-cv-80497-DMM (S.D. Fla.)

Detton, et al. v. General Motors LLC, et al., No. 3:14-cv-00500-MJR-PMF (S.D. Ill.)

---

[*] Action asserts personal injury or wrongful death claims.

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Deushane v. General Motors LLC, et al., No. 8:14-cv-00476-JVS-AN (C.D. Cal.)

Dinco, et al. v. General Motors LLC, No. 2:14-cv-03638-JVS-AN (C.D. Cal.)

Duarte v. General Motors LLC, et al., No. 1:14-cv-21815-JAL (S.D. Fla.)

Duncan v. General Motors LLC, No. 4:14-cv-00597-ODS (W.D. Mo.)[*]

Edwards, et al. v. General Motors LLC, et al., No. 1:14-cv-21949-MGC (S.D. Fla.)

Elliott v. General Motors, LLC, et al., No. 1:14-cv-11982-WGY (D. Mass)

Emerson, et al. v. General Motors LLC, et al., No. 1:14-cv-21713-UU (S.D. Fla.)

Espineira v. General Motors LLC, et. al., No. 1:14-cv-21417-FAM (S.D. Fla.)

Favro v. General Motors LLC, No. 8:14-cv-00690-JVS-AN (C.D. Cal.)

Forbes v. General Motors LLC, No. 2:14-cv-02018-GP (E.D. Pa.)

Foster v. General Motors LLC, et al., No. 1:14-cv-00844-SO (N.D. Ohio)

Fugate v. General Motors LLC, No. 7:14-cv-00071-ART (E.D. Ky.)

Gebremariam v. General Motors LLC, No. 8:14-cv-00627-JVS-AN (C.D. Cal.)

Groman v. General Motors LLC, No. 1:14-cv-02458-JMF (S.D.N.Y.)

Grumet, et al. v. General Motors LLC, No. 3:14-cv-00713-JM-BGS (S.D. Cal.)

Hair, et al. v. General Motors LLC, No. 8:14-cv-00792-JLS-RNB (C.D. Cal.)[*]

Harris, et al. v. General Motors LLC et al., No. 1:14-cv-21919-JAL (S.D. Fla.)

Henry, et al. v. General Motors LLC, et al., No. 4:14-cv-00218-DDB (E.D. Tex.)

Heuler v. General Motors LLC, No. 8:14-cv-00492-JVS-AN (C.D. Cal.)

Higginbotham v. General Motors LLC, et al., No. 4:14-cv-00306-JM (E.D. Ark.)

Holliday, et al. v. General Motors LLC, et al., No. 1:14-cv-00271-ZJH (E.D. Tex.)

Hurst v. General Motors Co., No. 2:14-cv-02619-JVS-AN (C.D. Cal.)

Ibanez, et al. v. General Motors LLC, No. 2:14-cv-05238-JVS-AN (C.D. Cal.)

Irvin v. General Motors LLC, et al., No. 1:14-cv-00090-JAR (E.D. Mo.)[*]

---

[*] Action asserts personal injury or wrongful death claims.

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Jawad v. General Motors LLC, No. 4:14-cv-11151-MAG-DRG (E.D. Mich.)

Johnson v. General Motors LLC, No. 3:14-cv-477 HTW-LRA (S.D. Miss.)

Jones v. General Motors LLC, No. 1:14-cv-01052-CRC (D.D.C.)[*]

Jones v. General Motors LLC, No. 4:14-cv-11197-MAG-DRG (E.D. Mich.)

Jones v. General Motors LLC, No. 1:14-cv-0850-JMF (S.D.N.Y.)

Kelley, et al. v. General Motors Co., et al., No. 8:14-cv-00465-JVS-AN (C.D. Cal.)

Klussendorf v. General Motors LLC, et al., No. 1:14-cv-05035  (S.D.N.Y.)

Knetzke v. General Motors LLC, et al., No. 1:14-cv-21673-JAL (S.D. Fla.)

Lambeth v. General Motors LLC, No. 1:14-cv-00546-WO-LPA (M.D.N.C.)[*]

Lannon, et al. v. General Motors LLC, et al., No. 1:14-cv-21933-KMM (S.D. Fla.)

LaReine, et al. v. General Motors LLC, et al., No. 2:14-cv-03112-JVS-AN (C.D. Cal.)

Letterio v. General Motors LLC, et al., No. 2:14-cv-00488-RCM (W.D. Pa.)

Leval v. General Motors LLC, No. 2:14-cv-00901-KDE-DEK (E.D. La.)

Levine v. General Motors LLC, No. 1:14-cv-21752-JAL (S.D. Fla.)

Lewis v. General Motors LLC, et al., No. 1:14-cv-00573-WTL-DKL (S.D. Ind.)

Maciel, et al. v. General Motors LLC, No. 4:14-cv-01339-JSW (N.D. Cal.)

Malaga et al. v. General Motors LLC, No. 8:14-cv-00533-JVS-AN (C.D. Cal.)

Markle v. General Motors LLC, et al., No. 1:14-cv-21788-FAM (S.D. Fla.)

Mazzocchi v. General Motors LLC, et al., No. 7:14-cv-02714-NSR (S.D.N.Y.)

McCarthy v. General Motors LLC, et al., No. 2:14-cv-00895-MLCF-KWR (E.D. La.)

McConnell v. General Motors LLC, No. 8:14-cv-00424-JVS-AN (C.D. Cal.)

Nava v. General Motors LLC, et al., No. 8:14-cv-00755-JVS-AN (C.D. Cal.)

Nettleton v. General Motors LLC, et al., No. 4:14-cv-00318-DPM (E.D. Ark.)

Phaneuf, et al. v. General Motors LLC, No. 1:14-cv-03298-JMF (S.D.N.Y.)

---

[*] Action asserts personal injury or wrongful death claims.

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Phillip, et al. v. General Motors LLC, No. 3:14-cv-08053-DGC (D. Ariz.)

Ponce v. General Motors LLC, No. 2:14-cv-02161-JVS-AN (C.D. Cal.)

Powell v. General Motors LLC, No. 1:14-cv-00963-DAP (N.D. Ohio)

Ramirez, et al. v. General Motors LLC, et al., No. 2:14-cv-02344-JVS-AN  (C.D. Cal.)

Ratzlaff, et al. v. General Motors LLC, No. 2:14-cv-02424-JVS-AN (C.D. Cal.)

Roach v. General Motors LLC, et al., No. 3:14-cv-00443-DRH-DGW (S.D. Ill.)

Robinson, et al. v. General Motors LLC, et al., No. 2:14-cv-02510-JVS-AN (C.D. Cal.)

Ross, et al. v. General Motors LLC, et al., No. 1:14-cv-02148-KAM-JO (E.D.N.Y.)

Ross v. General Motors LLC, et al., No. 2:14-cv-03670-ADS-ARL (E.D.N.Y.)[*]

Roush, et al. v. General Motors LLC, No. 2:14-cv-04095-NKL (W.D. Mo.)

Ruff, et al. v. General Motors LLC, et al., No. 3:14-cv-02375-PGS-DEA (D.N.J.)

Rukeyser v. General Motors LLC, No. 1:14-cv-05715-JMF (S.D.N.Y.)

Saclo et al. v. General Motors LLC, et al., No. 8:14-cv-00604-JVS-AN (C.D. Cal.)

Salazar v. General Motors LLC, et al., No. 5:14-cv-00362-FB (W.D. Tex.)

Salerno v. General Motors LLC, et al., No. 2:14-cv-02132-JD (E.D. Pa.)

Santiago v. General Motors LLC, No. 1:14-cv-21147-KMW (S.D. Fla.)

Satele, et al. v. General Motors LLC, No. 8:14-cv-00485-JVS-AN (C.D. Cal.)

Sauer, et al. v. General Motors, et al., No. 2:14-cv-04080-SDW-MCA (D.N.J.)

Shollenberger v. General Motors LLC, No. 1:14-cv-00582-YK(M.D. Pa.)

Shotwell v. General Motors LLC, No. 2:14-cv-00094-KS-MTP (S.D. Miss.)[*]

Silvas v. General Motors LLC, No. 2:14-cv-00089 (S.D. Tex.)

Skillman v. General Motors LLC, et al., No. 1:14-cv-03326-UA (S.D.N.Y.)

Smith v. General Motors LLC, et al., No. 3:14-cv-00120-SA-SAA (N.D. Miss.)

Spangler v. General Motors LLC, No. 8:14-cv-00816-PSG-RNB (C.D. Cal.)

---

[*] Action asserts personal injury or wrongful death claims.

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Stafford v. General Motors LLC, No. 3:14-cv-01702-THE (N.D. Cal.)

Stafford-Chapman v. General Motors LLC, et al., No. 1:14-cv-00474-MRB (S.D. Ohio)

Stevenson v. General Motors LLC, No. 1:14-cv-05137-UA (S.D.N.Y.)

Sumners, et al. v. General Motors LLC, et al., No. 1:14-cv-00070 (M.D. Tenn.)[*]

Taylor v. General Motors Company, No. 9:14-cv-80618-DMM (S.D. Fla.)

Turpyn, et al. v. General Motors LLC, et al., No. 1:14-cv-5328-JMF (S.D.N.Y.)

Van Pelt, et al. v. General Motors LLC, No. 1:14-cv-01081-RWS (N.D. Ga.)[*]

Villa, et al. v. General Motors LLC, et al., No. 2:14-cv-02548-JCJ (E.D. Pa.)

Witherspoon v. General Motors LLC, et al., No. 4:14-cv-00425-HFS (W.D. Mo.)

Woodward v. General Motors LLC, et al., No. 1:14-cv-01877 (N.D. Ill.)

Yingling, et al. v. General Motors LLC, No. 3:14-cv-00116-KRG (W.D. Pa.)[*]

---

[*] Action asserts personal injury or wrongful death claims.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

**(8)     A list of all related cases pending in state or federal court, together with their current status, including (a) discovery taken to date and pending motions, to the extent known; and (b) whether the cases have been stayed pending a decision on New GM's Motion to Enforce filed in the United States Bankruptcy Court for the Southern District of New York on April 21, 2014.**

## I.     Related Ignition Switch Civil Actions

- *Abney, et al. v. General Motors LLC*, No. 14-cv-5810 (S.D.N.Y.)
  (No Judge Assigned)
  - o Wrongful death and personal injury action alleging ignition switch defects accidents involving 29 deaths and 629 personal injuries certain vehicles that are subject to an ignition switch recall campaign and to certain vehicles that are not.
    - No discovery taken to date.
    - Action included in New GM's Pre-Closing Accident Motion to Enforce.
    - Plaintiffs' filed a letter on August 5, 2014, seeking leave to file a corrected Exhibit A to remove inadvertently listed Plaintiffs.

- *Ackerman v. General Motors*, No. 14-L-489 (St. Clair County, Ill.)[αβ]
  (Hon. Vincent Lopinot, 618-825-2338)
  - o Personal injury action alleging ignition switch defects in 2006 Chevrolet Cobalt.

- *Adams v. General Motors LLC, et al.*, No. 201419403-7-189 (Harris County, Tex.)[αβ]
  (Hon. Robert Schaffer, 713-368-6040)
  - o Personal injury action alleging ignition switch defects in 2007 Pontiac Solstice.
    - Stayed by order granting New GM's Emergency Motion for Stay pending determination by the Texas Judicial Panel on Multidistrict Litigation ("Texas Panel") of New GM's motion for consolidation and transfer to a pretrial court for consolidated or coordinated pretrial proceedings ("Texas MDL").
    - The Texas Panel granted New GM's motion to transfer and assigned the Honorable Robert Schaffer to preside over the Texas MDL.

- *Alexander v. ESIS/General Motors LLC, et al.*, No. 2013-29761 (Harris County, Tex.)[β]
  (Hon. Robert Schaffer, 713-368-6040)
  - o Personal injury action filed in May 2013 alleging power steering defect in 2007 Chevrolet Cobalt.  After New GM filed motion for summary judgment in March 2014— which is still pending— Plaintiff filed a response, contending the vehicle's ignition switch was defective and attaching the recall.  Plaintiff subsequently filed a second amended petition in July 2014 to formally allege an ignition switch defect.
    - The Texas Panel granted New GM's Motion to Transfer and assigned the Honorable Robert Schaffer to preside over the Texas MDL.

---

[α]     No discovery taken to date and no pending motions.
[β]     Not currently subject to a New GM Motion to Enforce the Sale Order and Injunction.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Beckwith v. General Motors Company, et al.*, No. 13CECG03298 (Fresno County, Cal.)$^\beta$ (Hon. M. Bruce Smith, 559-457-6318)
  - Personal injury action filed in October 2013 alleging power steering defects in 2008 Chevrolet Cobalt.
    - Plaintiff seeks to amend complaint to include ignition switch allegations and a claim for punitive damages.
      - Hearing on Plaintiff's motion for leave to amend on July 30, 2014.
    - Plaintiff served discovery regarding ignition switch defects in June 2014, to which New GM objected in July 2014.

- *Bogle v. General Motors LLC, et al.*, No. 16-2014-CA-002731 (Duval County, Fla.)$^{\alpha\beta}$ (Hon. Virginia Norton, 904-255-1300)
  - Wrongful death suit alleging ignition switch defects in 2007 Chevrolet Cobalt.

- *Boyd, et al. v. General Motors LLC*, No. 4:14-cv-01205 (E.D. Mo.) (Hon. Henry E. Autrey, 314-244-7450)
  - Economic loss, personal injury, and wrongful death suit alleging New GM fraudulently concealed ignition switch defects in 2008 Chevrolet HHR, 2011 Chevrolet HHR, 2007 Chevrolet Cobalt, and 2006 Chevrolet Cobalt.
    - No discovery taken to date.
    - Plaintiffs' motion to remand and New GM's motion to stay pending JPML determination are fully briefed.
    - Conditionally transferred to MDL 2543 in MDL 2543 CTO-7.
      - New GM's response to Plaintiffs' motion to vacate due August 25.

- *Cecchini v. General Motors LLC*, No. BC549604 (Los Angeles County, Cal.)$^\alpha$ (Hon. Susan Bryant-Deason, 213-974-5677)
  - Individual action filed on behalf of owner of 2006 Saturn Ion that seeks economic damages arising out of New GM's purported breach of contract and/or breach of warranty related to alleged ignition housing and ignition cylinder, headlamps, brake system, and window defects.
    - Action will be included in and subject to New GM's Ignition Switch Motion to Enforce.

- *Chaplin v. General Motors Corporation A/K/A General Motors LLC, et al.*, No. 2014-CP-18-1378 (Dorchester County, S.C.)$^{\alpha\beta}$ (No Judge Assigned)
  - Personal injury action alleging ignition switch defects in 2007 Chevrolet HHR.

- *Cull, et al. v. General Motors LLC, et al.*, No. 10C02-1404-CT-000060 (Clark County, Ind.)$^{\alpha\beta}$ (Hon. Jerry Jacobi, 812-285-6333)
  - Personal injury action alleging ignition switch defects in 2006 Chevrolet Cobalt.

---

$\alpha$     No discovery taken to date and no pending motions.
$\beta$     Not currently subject to a New GM Motion to Enforce the Sale Order and Injunction.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Elliott, et al. v. General Motors LLC*, No. 1:14-cv-00691 (D.D.C.)$^{\alpha}$
  (Hon. Ketanji Brown Jackson, 202-354-3350)
  - Putative class action filed on behalf of owners of a 2006 Chevrolet Cobalt and a 2010 Chevrolet Cobalt seeking economic loss damages for New GM's alleged fraudulent concealment of ignition switch and fuel pump defects.
    - Then-*pro se* Plaintiffs executed Bankruptcy Stay Stipulation in May 2014; after Plaintiffs retained counsel, Judge Gerber permitted Plaintiffs to file a late "No Stay Pleading" on July 11, which Judge Gerber denied at an August 5 hearing.
    - New GM moved to transfer action to MDL 2543 on July 1.
      - New GM's transfer motion fully briefed.
    - Judge Jackson stayed action pending Bankruptcy and JPML determinations.

- *Frank v. General Motors LLC*, No. 1:14-cv-21652 (S.D. Fla.)$^{\alpha}$
  (Hon. Marcia G. Cooke, 305-523-5150)
  - Putative class action filed on behalf of owner of 2008 Saturn Aura that seeks economic loss damages arising out of New GM's alleged fraudulent concealment of a power steering defect and diminished value of putative class vehicles due to New GM's purported ignition switch defects.
    - Action stayed pending resolution of New GM's Ignition Switch Motion to Enforce.

- *Gebremariam v. General Motors LLC*, No. 8:14-cv-00627 (C.D. Cal.)$^{\alpha}$
  (Hon. James V. Selna, 714-338-2848)
  - Putative class action filed on behalf of owner of 2014 Chevrolet Cruze that seeks economic loss damages for New GM's alleged fraudulent concealment of ignition switch and front axle right half shaft defects.
    - JPML Clerk transferred ignition switch claims to MDL 2543 but severed and remanded front axle right half shaft claims.
    - Action stayed pending resolution of New GM's Ignition Switch Motion to Enforce.

- *Gilbert v. General Motors LLC, et al.*, No. 140500140 (Philadelphia County, Pa.)$^{\alpha\beta}$
  (No Judge Assigned)
  - Personal injury action alleging ignition switch defects in 2010 Chevrolet Cobalt.

- *Graves Sr., et al. v. General Motors LLC, et al.*, No. 25,715 (Gonzales County, Tex.)$^{\alpha\beta}$
  (Hon. William Old, III, 830-303-4188)
  - Personal injury suit alleging ignition switch defects in 2014 GMC Sierra.
    - New GM expects to "tag" this case as a related action for the Texas MDL.

---

$^{\alpha}$   No discovery taken to date and no pending motions.
$^{\beta}$   Not currently subject to a New GM Motion to Enforce the Sale Order and Injunction.

## Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *Green, et al. v. General Motors LLC, et al.*, No. 14-cv-11557 (Giles County, Tenn.)[αβ]
  (No Judge Assigned)
    - o Wrongful death suit alleging ignition switch defects in 2005 Cobalt.
        - ▪ New GM's responses to Plaintiffs' July 2014 discovery requests are due September 4.

- *Homer v. General Motors LLC, et al.*, No. 14/7662 (Monroe County, N.Y.)[αβ]
  (No Judge Assigned)
    - o Wrongful death suit alleging ignition switch defects in 2006 Chevrolet Cobalt.

- *Johnson v. General Motors LLC*, No. BC550606 (Los Angeles County, Cal.)[α]
  (Hon. Deirdre Hill, 213-974-5671)
    - o Individual action filed on behalf of owner of 2008 Chevrolet HHR that seeks economic damages arising out of New GM's purported breach of contract and/or warranty related to alleged ignition switch, catalytic converter, suspension system, throttle body, and other defect.
        - ▪ Action will be included in and subject to New GM's Ignition Switch Motion to Enforce.

- *Kandziora v. General Motors LLC, et al.*, No. 2:14-cv-00801(E.D. Wis.)
  (Hon. Aaron E. Goodstein, 414-297-3963)
    - o Individual action filed on behalf of owner of 2010 Chevrolet Cobalt that seeks economic damages arising out of New GM's alleged fraudulent concealment of ignition switch defects.
        - ▪ No discovery taken to date.
        - ▪ New GM's motion to dismiss and Plaintiff's motion to remand are pending.
        - ▪ Conditionally transferred to MDL 2543 in MDL 2543 CTO-7.
            - • New GM's response to Plaintiff's motion to vacate due August 25.
        - ▪ Action included in and subject to New GM's Ignition Switch Motion to Enforce.

- *Kosovec v. General Motors LLC, et al.*, No. 3:14-cv-00354-RS-EMT (N.D. Fla)[αβ]
  (Hon. Richard Smoak, 850-785-9761)
    - o Putative class action brought by the owner of a 2008 Chevrolet Cobalt seeking economic loss damages arising out of New GM's alleged fraudulent concealment of ignition switch defects.
        - ▪ Action will be included and subject to New GM's Ignition Switch Motion to Enforce.

- *Largent v. General Motors LLC, et al.*, No. 14-006509-NP (Wayne County, Mich.)[αβ]
  (Hon. Edward Ewell, Jr., 313-224-5195)
    - o Personal injury action alleging ignition switch defects in 2006 Saturn Ion.

---

[α]    No discovery taken to date and no pending motions.
[β]    Not currently subject to a New GM Motion to Enforce the Sale Order and Injunction.

Case 1:14-md-02543-JMF   Document 200-6   Filed 08/08/14   Page 31 of 36

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Linder v. Jim Taylor Chevrolet, LLC, et al.*, No. 43,703c (Franklin Parish, La.)[αβ]
  (No Judge Assigned)
  - Personal injury suit alleging electrical system defects in 2011 Chevrolet Silverado.

- *Longpre, et al. v. General Motors LLC*, No. 49D14-1406-CT-021621 (Marion County, Ind.)[αβ]
  (Hon. James Osborne, 317-327-0440)
  - Wrongful death suit alleging ignition switch defects in 2012 Chevrolet Impala.

- *Melton, et al. v. General Motors LLC, et al.*, No. 14A-1197-4 (Cobb County, Ga.)[αβ]
  (Hon. Kathryn J. Tanksley, 770-528-1701)
  - Wrongful death suit alleging ignition switch defects in 2005 Chevrolet Cobalt.
    - Plaintiffs have served ignition switch discovery.
    - Plaintiffs' motion for sanctions and GM's motion to dismiss are fully briefed.
      - Judge Tanksley set an August 9 hearing on New GM's motion to dismiss.

- *Morgan, et al. v. General Motors LLC*, No. 5:14-cv-01058 (W.D. La.)[αβ]
  (Hon. S. Maurice Hicks, 318-676-3055)
  - Putative class action filed on behalf of Chevrolet Cruze owners seeking economic loss damages arising out of New GM's alleged concealment of ignition switch and other defects.
    - Conditionally transferred to MDL 2543 in CTO-8.
      - Plaintiffs' motion to vacate due August 11; New GM's response due September 2.

- *Nelson v. General Motors LLC, et al.*, No. D140141-C (Harris County, Tex.)[αβ]
  (Hon. Robert Schaffer, 713-368-6040)
  - Personal injury action alleging ignition switch defects in 2003 Saturn Ion.
    - Stayed by order granting GM's Emergency Motion for Stay pending Texas MDL determination by Texas Panel.
    - The Texas Panel granted New GM's Motion to Transfer and assigned the Honorable Robert Schaffer to preside over the Texas MDL.

---

[α]   No discovery taken to date and no pending motions.
[β]   Not currently subject to a New GM Motion to Enforce the Sale Order and Injunction.

Case 1:14-md-02543-JMF   Document 200-6   Filed 08/08/14   Page 22 of 10

### Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *Phillips/Powledge v. General Motors LLC*, No. 3:14-cv-00192 (S.D. Tex.)[α]
  (Hon. David Hittner, 713-250-5511)
  - Wrongful death suit alleging ignition switch, brake light, and power steering defects in a 2004 Chevrolet Malibu.
    - Plaintiff's motion to remand and New GM's motion to dismiss are fully briefed.
    - New GM's motion to transfer to MDL 2543 pending.
      - Plaintiff's response is due August 15.
      - New GM's reply is due August 22.
    - Action included in and subject to New GM's Pre-Closing Accident Motion to Enforce.

- *People of California v. General Motors LLC* No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.)[α]
  (Hon. Kim Dunning, 657-622-5304)
  - Civil action filed by Orange County, California District Attorney alleging New GM fraudulently concealed ignition switch and other defects.
    - Action will be included in and subject to New GM's Ignition Switch Motion to Enforce.

- *Precht v. General Motors LLC*, No. 1:14-cv-20971 (S.D. Fla.)[α]
  (Hon. Paul C. Huck, 305-523-5520)
  - Putative class action brought on behalf of owner of 2011 Chevrolet Traverse that seeks economic loss damages arising out of New GM's purported fraudulent concealment of airbag defects.
    - Action included in and subject to New GM's Non-Ignition Switch Motion to Enforce.

- *Sesay, et al. v. General Motors, et al.*, No. 14-cv-6018 (S.D.N.Y.)[α]
  (No Judge Assigned)
  - Putative class action filed on behalf of owners of 2007 Chevrolet Impala and 2010 Chevrolet Cobalt that seeks economic loss damages arising out of New GM's alleged fraudulent concealment of an ignition switch defect.
    - Action will be included in and subject to New GM's Ignition Switch Motion to Enforce.

- *Smith v. General Motors LLC, et al.*, No. 41-CV-2014-900140.00 (Lauderdale County, Ala.)[β]
  (Hon. Gilbert P. Self, 256-760-5822)
  - Wrongful death suit alleging ignition switch defects in 2006 Chevrolet Cobalt.
    - No pending motions.
    - New GM's responses to Plaintiff's June 2014 discovery requests due August 25.

---

[α]   No discovery taken to date and no pending motions.
[β]   Not currently subject to a New GM Motion to Enforce the Sale Order and Injunction.

Case 14-mc-02543-JMF    Document 200-6    Filed 08/08/14    Page 123 of 126

## Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *Spencer, et al. v. General Motors LLC, et al.*, No. D-1-GN-14-001337 (Harris County, Tex.)[αβ]
  (Hon. Robert Schaffer, 713-368-6040)
  - o   Wrongful death suit alleging ignition switch defects in 2008 Chevrolet Cobalt.
    - ▪ Stayed by order granting GM's Emergency Motion for Stay pending Texas MDL determination by Texas Panel.
    - ▪ The Texas Panel granted New GM's Motion to Transfer and assigned the Honorable Robert Schaffer to preside over the Texas MDL.

- *Stoneham v. General Motors LLC, et al.*, No. 201422646 (Harris County, Tex.)[αβ]
  (Hon. Jaclanel McFarland, 713-368-6200)
  - o   Wrongful death suit alleging ignition switch defects in 2010 Chevrolet Camaro.
    - ▪ New GM expects to "tag" this case as a related action for the Texas MDL.

- *Szatkowski, et al. v. General Motors LLC, et al.*, No. N/A (Luzerne County, Pa.)[αβ]
  (No Judge Assigned)
  - o   Personal injury action alleging ignition switch defects in 2006 Pontiac Solstice.

- *Tyre v. General Motors LLC, et al.*, No. GD-14-010489 (Allegheny County, Pa.)[αβ]
  (No Judge Assigned)
  - o   Wrongful death suit alleging ignition switch defects in 2005 Chevrolet Cobalt.

- *Vest v. General Motors LLC, et al.*, No. 14-C-437 (Mercer County, W.V.)[α]
  (Hon. Omar J. Aboulhosn, 304-431-8500)
  - o   Wrongful death action alleging ignition switch defects in 2005 Chevrolet Cobalt.
    - ▪ Action included in and subject to New GM's Pre-Closing Accident Motion to Enforce.

- *Wilson, et al. v. General Motors LLC*, No. 14-A-2092-2 (Cobb County, Ga.)[αβ]
  (No Judge Assigned)
  - o   Wrongful death suit alleging ignition switch defects in 2007 Buick LaCrosse.

- *Wilson v. General Motors LLC, et al.,* No. 201429914 (Harris County, Tex.)[αβ]
  (Hon. Robert Schaffer, 713-368-6040)
  - o   Personal injury action alleging ignition switch defects in 2006 Chevrolet Cobalt.
    - ▪ New GM will shortly file with the Texas Panel an amended case list and move for a stay pending Texas MDL determination.
    - ▪ The Texas Panel granted New GM's Motion to Transfer and assigned the Honorable Robert Schaffer to preside over the Texas MDL.

---

[α]     No discovery taken to date and no pending motions.
[β]     Not currently subject to a New GM Motion to Enforce the Sale Order and Injunction.

Case 1:14-md-02543-JMF   Document 200-6   Filed 08/08/14   Page 124 of 126

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Yagman v. General Motors Company, et al.*, No. 2:14-cv-04696 (C.D. Cal.)
  (Hon. Michael W. Fitzgerald, 213-894-1527)
  - Putative class action brought by the owner of a 2007 Buick Lucerne that alleges breaches of warranty.
    - No discovery taken to date.
    - New GM's motion to dismiss pending.
      - Plaintiff's response was due August 4.
      - New GM's reply due August 11.
    - Action will be included in and subject to New GM's Non-Ignition Switch Motion to Enforce.

## II. Related Ignition Switch Securities And Derivatives Actions

- *Boso, et al v. Solso, et al*, No. 9925-VCG (Del. Court of Chancery)
  (Hon. Sam Glasscock, 302-856-5424)
  - Shareholder derivative suit alleging breaches of fiduciary duties, corporate waste and aiding and abetting breaches of fiduciary duties by current and former officers and directors of the Company.
    - There is a pending Motion to Consolidate this action with *In re: General Motors Derivative Litigation*, No. 9627-VCG (Del. Court of Chancery); no discovery taken to date.

- *Pio v. General Motors Company, et al.*, No. 2:14-cv-11191 (E.D. Mich.)
  (Hon. Linda V. Parker, 313-234-5105)
  - Securities class action suit under §10(b) of the Securities Exchange Act of 1934, alleging violation of federal securities laws by New GM and damages for purchasers of New GM securities between November 17, 2010 and March 10, 2014.
    - Time to answer or otherwise plead in response to complaint extended until after lead counsel appointment has been ruled upon; hearing set for August 20, 2014; no discovery taken to date.

- *In re: General Motors Company Shareholder Derivative Litigation*, No. 2014-004611-CZ (Wayne County, Mich.)
  (Hon. Brian R. Sullivan, 313-224-2447)
  - Shareholder derivative suit alleging breaches of fiduciary duties, corporate waste and aiding and abetting breaches of fiduciary duties by current and former officers and directors of the Company.
    - Cases were consolidated on June 18, 2014; all deadlines extended until resolution of the motion to dismiss the shareholder derivative action pending in the Eastern District of Michigan; no discovery taken to date.

## Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *In re: General Motors Company Shareholder Derivative Litigation*, No. 2:14-cv-11277 (E.D. Mich.)
  (Hon. Robert H. Cleland, 313-234-5525)
  - o Shareholder derivative suit alleging breaches of fiduciary duties, corporate waste and aiding and abetting breaches of fiduciary duties by current and former officers and directors of the Company.
    - ▪ Cases were consolidated on May 27, 2014; Plaintiffs to file a consolidated complaint by August 21, 2014; New GM to answer or otherwise plead by October 2, 2014; no discovery taken to date.

- *In re: General Motors Derivative Litigation*, No. 9627-VCG (Del. Court of Chancery)
  (Hon. Sam Glasscock, 302-856-5424)
  - o Shareholder derivative suit alleging breaches of fiduciary duties, corporate waste and aiding and abetting breaches of fiduciary duties by current and former officers and directors of the Company.
    - ▪ Cases were consolidated on June 20, 2014 and July 18, 2014; Plaintiffs to file an amended consolidated complaint by August 11, 2014; New GM's answer date has not been set by the Court; no discovery taken to date.

## III.    Unrelated Actions Seeking Ignition Switch-Related Discovery[1]

- *Butcher v. General Motors Company, et al.*, No. 2:14-cv-00353 (W.D. Pa.)
  (Hon. Mark. R. Hornak, 412-208-7433)
  - o Personal injury action alleging airbag defects in 2008 Saturn Astra.
    - ▪ Plaintiff's interrogatories seek Cobalt/Ion ignition switch related discovery.

- *Clarke v. General Motors Company LLC,* No. 4:14-cv-00006 (N.D. Tex.)
  (Hon. Reed C. O'Connor, 214-753-2650)
  - o Personal injury action alleging the 2001 Saturn SL2 was defective and unreasonably dangerous in the following respects: (1) defective roof structure; (2) driver's seatbelt failed to restrain its occupant; and (3) failure to incorporate electronic stability control.
    - ▪ Plaintiff seeks a corporate representative deposition on the Valukas report dated May 29, 2014.

- *Mathes v. General Motors LLC,* No. CL12001623-00 (Augusta Co. Cir. Ct., Va.)
  (No judge assigned)
  - o Personal injury action alleging airbag and seat belt defects in a 2002 Chevrolet Impala.
    - ▪ Plaintiff seeks a corporate representative deposition on the Valukas report dated May 29, 2014.

---

[1] Counsel for New GM will update the Court regarding non-related cases that seek ignition switch-related discovery as additional such cases and requests are identified.

Case 1:14-md-02543-JMF    Document 200-6    Filed 08/08/14    Page 86 of 126

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Nguyen, et al. v. General Motors LLC*, No. 3:14-cv-01102 (N.D. Tex.) (Hon. Jorge A Solis, 214-753-2342)
    - Personal injury action alleging fuel, exhaust and emission system defects in a 2002 Chevrolet Avalanche.
        - Plaintiff requests production of materials and information related to the Valukas report and investigation.  New GM's responses are due Aug. 7.