# Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*
------------------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

ORDER NO. 7

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/07/2014

JESSE M. FURMAN, United States District Judge:

The Court thanks counsel for their helpful status letters (14-MD-2543, Docket Nos. 72-73) and joint letter regarding the agenda for the conference to be held on August 11, 2014 (14-MD-2543, Docket No. 114), which were submitted in response to Order No. 1 (14-MD-2543, Docket No. 19). Having reviewed those letters, and other submissions in the multidistrict litigation ("MDL") and member cases, the Court issues this Order (1) to share its preliminary views on some of the matters discussed in the parties' letters; and (2) to assist the parties in preparing for the August 11, 2014 conference.

I.  **PRELIMINARY VIEWS**

*First*, the Court is of the preliminary view that some discovery should proceed now, notwithstanding the motions to enforce pending before the United States Bankruptcy Court and the related stay orders. In particular, the Court is inclined to agree with Temporary Lead Counsel ("TLC") that General Motors ("GM") (and other Defendants, to the extent applicable) should be required to produce any and all relevant and non-privileged materials that have been (or are later) provided to (1) Congress, the National Highway Traffic Safety Administration, or other government agencies; and (2) the investigative team led by Anton Valukas (including, perhaps, factual statements contained in the notes of witnesses interviewed by Valukas and his

1

team). The Court is disinclined, however, to allow depositions at this time, except as necessary to preserve the testimony of a witness who may become unavailable.

In the Court's current view, allowing for such limited discovery would serve to streamline and advance this litigation and would facilitate any settlement discussions at the appropriate time, without unduly burdening Defendants or interfering with the proceedings before the Bankruptcy Court. (Indeed, such limited discovery might even facilitate those proceedings.) The Court is mindful that some cases and claims in the MDL are likely to survive any ruling by the Bankruptcy Court. (As the Court understands it, for example, GM has represented that it does not intend to seek to bar claims relating to accidents or incidents that occurred after entry of the Sale Order.) In addition, allowing limited discovery at this time would put the parties in a better position to proceed expeditiously with the amendment of pleadings and full discovery once the Bankruptcy Court resolves the threshold issues currently under consideration.

*Second*, the Court is inclined to agree that Plaintiffs (through Lead Counsel, once appointed) should file a consolidated or master complaint with respect to the economic loss claims and cases, but that consolidated pleadings are not necessary or prudent with respect to personal injury and wrongful death claims. In the Court's current view, however, Plaintiffs should not — as TLC suggest — wait until they have received and reviewed any limited discovery to file a consolidated complaint, as that would result in undue delay. Instead, the Court is inclined to believe that Lead Counsel should — sooner rather than later — review all existing complaints (and the facts already in the public record, including but not limited to the Valukas Report), and file a consolidated or master complaint with claims on behalf of the class

2

or classes, as appropriate. After doing so, any counsel who believed that their claims should have been included, but were not, would have an opportunity to object.

In the Court's current view, having a consolidated or master complaint sooner rather than later would streamline and clarify the claims and help eliminate those that are duplicative, obsolete, or unreflective of developing facts or current law. That would not only help advance this litigation, but would also presumably facilitate litigation of the issues currently pending before the Bankruptcy Court. Those advantages would be lost (or reduced) if Plaintiffs were to wait until after they have received and reviewed discovery. Moreover, Plaintiffs may always seek leave to amend the consolidated or master complaint based on their review of discovery (or rulings by the Bankruptcy Court or any other material development).

*Third*, the Court is preliminarily disinclined to withdraw the reference with respect to any claims or proceedings currently pending before the Bankruptcy Court. The Court recognizes that some claims may not ultimately be subject to the Sale Agreement or Sale Order, but given the complexities involved, and the interrelated nature of the different claims, the Court is inclined to believe that the Bankruptcy Court should rule, in the first instance, on matters relating to its prior orders and the bankruptcy generally. Withdrawing the reference as to any of the claims or proceedings before the Bankruptcy Court risks prejudging complicated issues and may result in undue complications later in the litigation.

*Finally*, the Court notes that GM raises valid concerns with respect to the scope and expense of its preservation obligations given the ongoing nature of the recalls and repairs. The Court preliminarily believes that it should enter a preservation order that properly balances the right of Plaintiffs to obtain potentially relevant evidence against the undue burden and expense to GM of preserving large numbers of parts that have been the subject of recalls or other evidence.

3

The Court hopes (and assumes) that counsel can amicably negotiate the terms of a preservation order that strikes the right balance. In the absence of agreement, the Court is inclined to adopt an order after giving each side an opportunity to be heard.

The Court emphasizes — again — that the foregoing views are merely preliminary, and are shared only to facilitate and streamline discussion of the issues at the initial conference. The Court will keep an open mind and give counsel an opportunity to be heard on all of the foregoing issues before making any final decisions. Counsel should, of course, be prepared to address all of the foregoing issues, as well as the other matters discussed below, at the conference.

## II.   INITIAL CONFERENCE AGENDA

As noted in Order No. 1, the Initial Conference will be held on August 11, 2014, at 11 a.m., in Courtroom 110 at the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York. (Please note that this is not Judge Furman's regular courtroom.) **The Court intends to begin the initial conference promptly at 11 a.m.** To that end, the Court reminds counsel that they must check in with the Courtroom Deputy **at least fifteen minutes in advance**. (The Court will not take appearances in the Courtroom, but will invite counsel to state their appearances each time they speak.) Moreover, counsel should arrive at the Courthouse with sufficient time to go through security. Seats in the courtroom may not be reserved.

At the conference, TLC and counsel for Defendants should be prepared to address and/or update the Court with respect to the following issues (in order):

1. Whether, and to what extent, there are claims or cases that are not within the scope of the litigation pending before the Bankruptcy Court (such as personal injury and wrongful death cases relating to accidents or incidents postdating the Sale Order).

4

2. The nature and status of claims against Defendants other than GM, including but not limited to claims against Delphi (and their relationship, if any, to any prior rulings or orders of the Bankruptcy Court) and claims against DPH-DAS LLC (14-MD-2543, Docket No. 25).

3. Whether the Court should withdraw the reference with respect to any claims or proceedings currently pending before the Bankruptcy Court.

4. The issues raised by the "Notice of Conflict within the Plaintiffs' Group" filed by Gary Peller (14-MD-2543, Docket No. 195), with respect to which the Court will also give Mr. Peller an opportunity to be heard.

5. Any issues arising from those cases that involve parts other than ignition switches. *See, e.g.*, Defendants' Letter of July 21, 2014 (14-MD-2543, Docket No. 73) at 5 n.7.

6. The status of any related cases that are not currently part of the MDL, including but not limited to any cases pending in state court (such as *Melton v. General Motors*, No. 14-A-1197-4 (Ga. Cobb Cnty. Ct.)) and any cases pending transfer to the MDL.

7. A process for review of cases filed directly in this District to ensure that they are properly included in the MDL.

8. Suggested procedures for coordination of the MDL with the Bankruptcy Court litigation and related state-court litigation.

9. Whether and, if applicable, to what extent and when Plaintiffs should file a consolidated or master complaint, and how and when counsel should be given an opportunity to object if claims are omitted from the consolidated pleading.

10. Whether, and to what extent, the Court should allow discovery pending a ruling from the Bankruptcy Court and, if applicable, the development of a comprehensive

5

discovery plan, including establishment of an electronic document depository and databases and the appointment of discovery masters.

11. Adoption of a preservation protocol that balances the right of Plaintiffs to obtain potentially relevant evidence against the undue burden and expense to GM of preserving large numbers of parts that have been the subject of recalls or other evidence.

12. A briefing schedule and process for adjudicating motions or appeals from orders of the Bankruptcy Court, including but not limited to (1) the motion to remand filed in *Sumners v. General Motors, LLC*, 14-CV-5461 (JMF) (14-MD-2543, Docket No. 182); (2) the motion for leave to file an omnibus complaint (14-MD-2543, Docket No. 188); (3) the notice of appeal from the Decision With Respect to No Stay Pleading (Phaneuf Plaintiffs), *In re Motors Liquidation Co.*, 09-50026 (REG) (Bankr. S.D.N.Y. July 30, 2014) (Docket No. 12791); and (4) any other motions that counsel anticipate, such as the motions for a preliminary injunction and provisional class certification previously filed in *Benton v. General Motors LLC*, 14-CV-4268 (JMF) and *Kelley v. General Motors Company*, 14-CV-4272 (JMF).

13. Settlement, including the timing and process for appointment of a private mediator or special master.

14. The need, if any, for regular conferences or regular updates from counsel.

After hearing from TLC and counsel for Defendants, the Court will give other Plaintiffs' counsel an opportunity to be heard on those issues or on any other issues with respect to which they feel TLC does not adequately represent their interests. The Court encourages multiple proponents of a common position to designate one lawyer to address the Court.

After addressing the issues referenced above, the Court will hear from applicants for Plaintiffs' leadership positions. Per Order No. 5, the Court will hear from all applicants who have requested an opportunity to supplement their applications with an oral presentation. The Court will hear such applicants in alphabetical order (followed by any applicants who submitted applications on August 7 or 8, 2014, pursuant to Order No. 6). The Court will allot each applicant no more than five minutes. The Court will draw no adverse inference if counsel conclude that they would like to rest on the strength of their written submissions, or if multiple counsel wish to address the Court through a single spokesperson.

SO ORDERED.

Dated: August 7, 2014
      New York, New York

                                    JESSE M. FURMAN
                                    United States District Judge