**GOLENBOCK EISEMAN**
**ASSOR BELL & PESKOE** LLP

Attorneys at Law I 437 Madison Ave., New York, NY 10022-7020
T (212) 907-7300 I F (212) 754-0330 I www.golenbock.com

DIRECT DIAL NO.: (2 I 2) 907-7327
DIRECT FAX NO.: (2 I 2) 754-0777
EMAIL ADDRESS: JFLAXER@GOLENBOCK.COM

August 8, 2014

*Via Overnight Delivery & ECF*
Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
One Bowling Green
New York, New York 10004

       Re:   *In re Motors Liquidation Company (Case No. 09-50026 (REG))*
             *Groman v. General Motors LLC (Adv. Pro. No. 14-01929 (REG))*

Dear Judge Gerber:

      We are co-counsel to plaintiffs (the "**Groman Plaintiffs**") in the above-captioned adversary proceeding.  Pursuant to subsection (e) of this Court's order dated July 11, 2014 (the "**Scheduling Order**"),[1] the Groman Plaintiffs respectfully submit that the Court should authorize limited discovery before resolving the Threshold Issues.

      The Groman Plaintiffs have previously expressed reservations as to whether the Threshold Issues could fairly and appropriately be resolved based solely on stipulated facts. Today, Counsel for the Identified Parties are filing (i) the agreed-upon stipulations (the "**Agreed Facts**") and (ii) each party's respective proposed stipulations which could not be agreed upon (the "**Disputed Facts**").  Although the Groman Plaintiffs believe that the Ignition Switch Plaintiffs should prevail based on the applicable law and Agreed Facts, they nevertheless submit that the Court should authorize limited discovery in the manner described below in order that a more complete record be presented to the Court.  As we noted at the last hearing, Plaintiffs' best case on the due process threshold issue would be to show that GM's senior executives knew about the ignition switch defect and the potential related claims before and during Old GM's bankruptcy case.  Proof of senior management's knowledge would reflect intentionality and a level of egregiousness that would moot any imputation of knowledge issues and otherwise rebut GM's defenses to having violated Plaintiffs' right to due process.  Showing such egregious misconduct should also, in our view, tilt the legal analysis and equities strongly in favor of fashioning a remedy permitting the assertion of claims against New GM, given that all or

---

[1] All terms not defined herein shall have the same meaning ascribed to such terms in the Scheduling Order.

2076035.3

**GOLENBOCK EISEMAN**
**ASSOR BELL & PESKOE**LLP

Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
August 8, 2014
Page 2

virtually all of the responsible senior executives were immediately hired by New GM, and both they and New GM benefitted from the due process violation.

As shown by the Disputed Facts, New GM did not agree to numerous stipulations proposed by the Groman Plaintiffs concerning senior GM lawyers' and other executives' knowledge of the ignition switch defect. New GM generally declined to stipulate to proposed facts unless they were based on information in a deposition transcript, already in the public record created by the Government investigations or stated in the Valukas Report (cited herein as "V.R."). Regarding that report, although at the last hearing we expressed optimism that it would provide the basis for a meaningful factual record, it in fact does not.

For example, while the Valukas Report concludes that GM's current General Counsel (who assumed office when New GM acquired Old GM's assets on July 10, 2009) did not know about the ignition switch defect until February 2014, the Valukas Report says nothing about the knowledge possessed by the people who served as GM's General Counsel or General Counsel of GM North America at the time of GM's bankruptcy – Robert Osborne and Michael Robinson, respectively – or by Mr. Robinson's predecessor, Chris Johnson. Thus, although top GM safety and products litigation lawyers (V.R. 104), who apparently knew about the moving stalls, reported directly to Mr. Johnson and Mr. Robinson before GM's bankruptcy, the Valukas Report and the rest of the public record is silent as to whether those two former General Counsels of GM North America knew about the moving stalls before June 2009, or had by then reported it to their boss, Mr. Osborne.

That silence, coupled with the fact that Mr. Robinson was among the 15 GM employees who were fired for their roles relating to the ignition switch defect (along with senior safety and products lawyers, William Kemp and Lawrence Buonomo), gives rise to a reasonable inference that those senior executives' testimony may be adverse to GM's claim that its senior management was ignorant of the ignition switch defect when GM filed for bankruptcy. Based on that reasonable adverse inference from the missing evidence in the Valukas Report, the Groman Plaintiffs proposed stipulations stating that Messrs. Osborne, Robinson and Johnson had knowledge of the Defect. Those proposed stipulations are Disputed Facts.

**GOLENBOCK EISEMAN**
**ASSOR BELL & PESKOE** LLP

Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
August 8, 2014
Page 3

As another example, the Valukas Report discusses an August 2007 "Warranty Settlement Agreement" between Old GM and Delphi Automotive (which made the defective ignition switches for GM). That agreement identified "all known issues with Delphi parts where the estimated warranty cost recovery exceeded $1 million." (V.R. 127-28.) A chart of the parts covered by the agreement included entries regarding an "ignition switch failure" on the model year 2003-04 Saturn Ion and model year 2005-06 Chevy Cobalt. (V.R. 128.) The Valukas Report asserts that "no witness can identify the warranty issues encompassed by the 'ignition switch failure'" referenced on the chart, citing interviews of four individuals whose roles and basis for having relevant knowledge are not identified, as well as an interview of Fred Fromm, who became General Counsel of GM North America in October 2009 – more than two years *after* the Delphi Warranty Settlement was executed – and had no reported role in that transaction. (V.R. 104, 128.)[2]

Obviously, whether the "ignition switch failure" in 2003-04 Ions and 2005-06 Cobalts addressed by the 2007 Delphi settlement referred to the same defect as the ignition switch defect at issue in this litigation – and whether the GM lawyers and senior executives who negotiated that settlement knew that – is highly probative of whether GM's senior management knowingly violated Plaintiffs' due process rights. The Groman Plaintiffs requested GM to stipulate that the "ignition switch failure" was indeed the ignition switch defect. Those proposed stipulations are Disputed Facts.

The Valukas Report is also silent concerning virtually all of GM's other senior officials' knowledge of the ignition switch defect at the time of GM's bankruptcy. To bridge that evidentiary gap, the Groman Plaintiffs proposed stipulations that other senior officers had such knowledge, which are Disputed Facts.

Because the extent, timing, and scope of GM's senior lawyers' and other senior executives' knowledge about the ignition switch defect is critical to a full and fair determination of the Threshold Issues, we cannot recommend to our clients or to the Plaintiff class that these issues be decided by the Court based on the limited stipulated record. We therefore urge the Court to authorize limited discovery that focuses on this specific area of dispute.

---

[2] The five cited interviews, like every interview referenced in the Valukas Report, was apparently unsworn, was not subject to cross-examination, and no transcripts or recordings of the interviews have been made available to enabled readers to test the quoted or cited portions for completeness, accuracy or context.

**GOLENBOCK EISEMAN**
**ASSOR BELL & PESKOE**LLP

Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
August 8, 2014
Page 4


The limited discovery we propose should not unduly extend, and may expedite, the proceedings before this Court. First, we concur with Temporary Lead Counsel's ("TLC's") July 21, 2014 letter request to Judge Furman (No. 14-md-02543 (JMF), Dkt. No. 72), that GM be ordered to produce forthwith all documents (i) provided to the government or (ii) reviewed during the Jenner & Block investigation (including all interview notes), which are readily available in a transmittable format as described in TLC's letter and can be produced by New GM in short order. Judge Furman recently stated that he is preliminarily inclined to agree that GM should provide that discovery and that "such limited discovery might even facilitate [the] proceedings" in the Bankruptcy Court. *See* Order No. 7, at 1-2, No. 1:14-MD-02543 (JMF) [Doc. 215]. Counsel for the Identified Parties can review these materials within 21 days (or any other time frame set by the Court at the August 18 conference).

Second, the Groman Plaintiffs can propound very limited additional document requests by August 22 seeking only materials relevant to certain witnesses we would expect to need to depose, for example, Messrs. Robinson's, Kemp's and Buonomo's severance and related confidentiality agreements, or other information we requested in connection with the Groman Plaintiffs' proposed stipulations, which we would propose New GM produce within 20 days thereafter. To the extent GM seeks to assert the attorney-client privilege as to the Valukas materials (despite what our litigation co-counsel believes has been a subject matter waiver of any such privileges under the law of this Circuit) or other objections, the parties can expeditiously brief those issues pursuant to a schedule to be set on August 18.

After reviewing the produced materials, a limited number of depositions, if any are necessary, can be noticed and conducted in an additional approximately three weeks, which means that this limited discovery (including production and review of documents) can occur in approximately six to eight weeks, barring extended motion practice. The Groman Plaintiffs submit that, on balance, the benefit of a far more complete record for the Threshold Issues briefing outweighs any alleged adverse consequences of a six- to eight-week delay.

Although the Groman Plaintiffs are hopeful and optimistic that the above limited discovery plan will provide a sufficient factual record and that further discovery would not be necessary, they would reserve their rights to request additional discovery that may be required as a result of the limited discovery.

2076035.3

**GOLENBOCK EISEMAN**
**ASSOR BELL & PESKOE** LLP

Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
August 8, 2014
Page 5


For the foregoing reasons, the Groman Plaintiffs respectfully request that the Court grant limited discovery as set forth above.

Respectfully submitted,

Jonathan L. Flaxer

cc:    (via e-mail)
       Arthur Steinberg, Esq.
       Richard C. Godfrey, P.C.
       Edward S. Weisfelner, Esq.
       Sander L. Esserman, Esq.
       Elihu Inselbuch, Esq.
       Lisa H. Rubin, Esq.
       Daniel H. Golden, Esq.
       Alexander H. Schmidt, Esq.