# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                                   :        Chapter 11
                                                        :
MOTORS LIQUIDATION COMPANY, *et al.*,                   :        Case No.:  09-50026 (REG)
      f/k/a General Motors Corp., *et al.*                 :
                                                        :
                   Debtors.               :        (Jointly Administered)
----------------------------------------------------------------x

## GENERAL MOTORS LLC'S AGREED-UPON STIPULATIONS OF FACT IN CONNECTION WITH THE FOUR THRESHOLD ISSUES IDENTIFIED IN THIS COURT'S JULY 11, 2014 SUPPLEMENTAL SCHEDULING ORDER[1]

       Pursuant to this Court's *Supplemental Scheduling Order, Dated July 11, 2014, Regarding (i) the Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (ii) the Objection Filed by Certain Plaintiffs in Respect Thereto, and (iii) Adversary Proceeding No. 14-01929* (the "**Supplemental Scheduling Order**"), General Motors LLC ("**New GM**"), hereby submits the following agreed-upon stipulations of fact concerning the Four Threshold Issues.

       In addition, annexed hereto as Exhibit "1" are New GM's proposed stipulation of fact that have not been agreed to by the other Counsel for the Identified Parties, and annexed hereto as Exhibit "2" are New GM's responses to proposed stipulation of fact identified by other Counsel for the Identified Parties that have not been agreed to by New GM.

---

[1]    Unless otherwise indicated, capitalized terms not defined herein shall have the meanings ascribed to them in the Supplemental Scheduling Order (as defined herein).

23406468v4

## AGREED-UPON STIPULATIONS OF FACT

1.      In March 2009, the U.S. Government gave Old GM sixty days to submit a viable restructuring plan or, otherwise, Old GM would be forced to liquidate.

2.      On June 1, 2009 ("**Petition Date**"), General Motors Corporation ("**Old GM**") and three of its direct and indirect subsidiaries, Saturn, LLC, n/k/a MLCS, LLC ("**MLCS**"), Saturn Distribution Corporation, n/k/a MLCS Distribution Corporation ("**MLCS Distribution**"), and Chevrolet-Saturn of Harlem Inc., n/k/a MLC of Harlem, Inc. ("**MLCS Harlem**" and collectively with Old GM, MLCS, and MLCS Distribution, the "**Debtors**") commenced cases under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**" or "**Court**").

3.      Frederick Henderson, former CEO of Old GM, testified as follows: "The U.S. Treasury, in late December 2008, provided the necessary financing to temporarily sustain Old GM's operations. The U.S. Treasury, however, provided such financing on the express condition that Old GM develop a business plan that would fundamentally transform Old GM (operationally and financially) into a viable and profitable American OEM capable of meeting the competitive and environmental challenges of the 21st century. Thereafter, in March 2009, the U.S. Treasury indicated that, if Old GM was unable to complete an effective out-of-court restructuring, it should consider a new, more aggressive viability plan under an expedited Court-supervised process to avoid erosion of asset value. After exploring numerous options, including seeking potential sources of financing (both public and private) and strategic alliances, it became evident that, in light of the ongoing economic crisis, Old GM would not be able to achieve an effective out-of-court restructuring, and the only viable option was the 363 Transaction." *Affidavit of*

23406468v4

*Frederick A. Henderson Pursuant to Local Bankruptcy Rule 1007-2* ("**Henderson Affidavit**")

(Dkt. No. 21), ¶¶ 13-14.

4.      This Court found in its Sale Decision, "[a]t the time that the U.S. Treasury first

extended credit to GM, there was absolutely no other source of financing available. No party

other than Treasury conveyed its willingness to loan funds to [Old] GM and thereby enable it to

continue operating." *Decision on Debtors' Motion for Approval of (1) Sale of Assets to Vehicle*

*Acquisition Holdings LLC; (2) Assumption and Assignment of Related Executory Contracts; and*

*(3) Entry into UAW Retiree Settlement Agreement* ("**Sale Decision**") (Dkt. No. 2967) Sale

Decision, p. 8.

5.      In a prior proceeding related to Old GM's bankruptcy, the Court found that, "it

was the intent and structure of the 363 Sale, as agreed on by the [U.S. Treasury] and Old GM,

that the New GM would start business with as few legacy liabilities as possible, and that

presumptively, liabilities would be left behind and not assumed." *See In re Motors Liquidation*

*Co.*, 09-50026 REG, 2012 WL 1339496, at *3 (Bankr. S.D.N.Y. Apr. 17, 2012) *aff'd*, 500 B.R.

333 (S.D.N.Y. 2013) ("**Castillo Decision**").

6.      This Court previously found in *Castillo* as follows:

> Auto Task Force member Harry Wilson . . ., under cross-examination by objectors
> to the 363 Sale, testified that "[o]ur thinking [as] a commercial buyer of the assets
> that will constitute [New GM] was to assess what *[l]iabilities were commercially*
> *necessary* for the success of [New GM]." He later said "we're focused on *which*
> *assets and which liabilities we needed for the success of New GM.*" And again:
> "We focused on which assets we wanted to buy and *which liabilities were*
> *necessary for the* commercial success of New GM. In short, by the end of the 363
> Sale hearing it was clear not only to Old GM and Treasury, but also to the Court
> and to the public, that the goal of the 363 Sale was to pass on to Old GM's
> purchaser—what thereafter became New GM—only those liabilities that were
> commercially necessary to the success of New GM.

*See Castillo* Decision, at *4.

7.      On the Petition Date, Old GM filed the Sale Motion with the Bankruptcy Court. *See* Sale Motion.[2]

8.      Vehicle Acquisition Holdings LLC (n/k/a New GM), the purchaser under the Sale Agreement,[3] was not the movant under the Sale Motion. *Id.*

9.      Vehicle Acquisition Holdings LLC was a United States Treasury-sponsored Delaware limited liability company formed on May 29, 2009. Sale Agreement, at 1.

10.     At the time the Sale Motion was filed, Old GM was in possession of all of its books and records.

11.     As of June 30, 2009, none of the Named Plaintiffs[4] in the Ignition Switch Actions had filed any court pleadings or otherwise commenced litigation (*i.e.*, asserting a claim or seeking a remedy based on economic loss, warranty, Lemon Law, *etc.*) against Old GM with respect to the defective Ignition Switch in a Subject Vehicle. Annexed hereto as Exhibit "3" is a list of all Named Plaintiffs known to New GM as of the date hereof.

12.     As of June 30, 2009, none of the Named Plaintiffs in the Ignition Switch Actions had commenced litigation against Vehicle Acquisition Holdings LLC with respect to their Subject Vehicles.

13.     AP Services, LLC ("**APS**") was retained by Old GM to provide interim management and restructuring services. *See Motion Of The Debtors Pursuant To 11 U.S.C. § 363*

---

2    The full title of the Sale Motion is *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 35 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief; and (II) Schedule Sale Approval Hearing* ("**Sale Motion**") (Dkt. No. 92).

3    The full title of the Sale Agreement is *Amended and Restated Master Sale and Purchase Agreement By and Among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc., as Sellers and NGMCO, Inc., as Purchaser* (as amended, "**Sale Agreement**") (Dkt. No. 2968-1).

4    "**Named Plaintiffs**" shall mean all of the plaintiffs named in the Ignition Switch Actions that are designated as a putative class representative or are listed as an individual plaintiff therein.

4

*For An Order Authorizing The Debtors To Employ And Retain AP Services, LLC As Crisis Managers And To Designate Albert A. Koch As Chief Restructuring Officer, Nunc Pro Tunc To The Petition Date, dated June 12, 2009* ("**APS Application**") (Dkt. No. 952).

14.    The tasks assigned to APS by Old GM included overseeing "the administration of the Debtors' bankruptcy case, including compliance with bankruptcy court reporting requirements and the discharge of obligations of the Debtors pursuant to the Bankruptcy Code." *Id.* at 6.

15.    Albert Koch, vice chairman and managing director of AlixPartners LLP in June 2009, testified as follows: "Other members of the AlixPartners' team have been involved in assisting with preparations for the 363 sale, developing operating plans to acquire select U.S. locations of Delphi, contract review protocol, identifying dealers whose contracts would be transitioned to wind down agreements. assisting with the mechanics of preparing for a bankruptcy filing, working with the Treasurer's office to improve cash forecasting and other tasks that assisted Company employees to prepare for and execute the restructuring." *Declaration of Albert Koch* ("**Koch Declaration**") (Dkt. No. 435), at 4.

16.    Old GM's bankruptcy counsel (Weil Gotshal & Manges ("**WGM**")), was retained to, among other things, (i) "prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtors' estates," (ii) "take all necessary action in connection with the" Sale Motion, and (iii) "perform all other necessary legal services in connection with the prosecution of these chapter 11 cases." *See Application of the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 328 (a) and Fed. R. Bankr. P. 2014(a) for Authority to Employ Weil, Gotshal &*

*Manges LLP as Attorneys for the Debtors, Nunc Pro Tunc to the Commencement Date*, dated

June 12, 2009 ("**WGM Retention Application**") (Dkt. No. 949), ¶ 8.

17.    Vehicle Acquisition Holdings LLC did not decide which parties would receive

direct mail notice of the Sale Motion or how notice would be provided.

18.    In 2009, Old GM had a contract with R. L. Polk and Company that allowed it to

obtain, for vehicle recall notification purposes, vehicle owner name and address information.

19.    Old GM requested of the Bankruptcy Court that direct mail notice of the Sale

Motion and the relief requested therein be served on the categories of individuals and entities

listed on Exhibit "4" annexed hereto. *See* Sale Procedures Order, ¶ 9.[5]

20.    No direct mail notice of the Sale Motion and the relief requested therein was sent

(a) to the Ignition Switch Plaintiffs in their capacity as owners of Subject Vehicles, or (b) as a

general matter, to a category of "owners of Old GM vehicles".

21.    There are owners of Old GM vehicles that did receive direct mail notice of the

Sale Motion because they were in another category of entities who did receive direct mail notice

of the Sale Motion (*i.e.*, as an equity security holder, contract counterparty, vendor, *etc.*), or

someone may have otherwise given them the direct mail notice of the Sale Motion.

22.    Old GM requested of the Bankruptcy Court, and the Bankruptcy Court approved,

that notice of the relief requested in the Sale Motion be published, by June 5, 2009, or as soon as

practicable thereafter (i) once in (a) the global edition of *The Wall Street Journal*, (b) the national

edition of *The New York Times*, (c) the global edition of *The Financial Times*, (d) the national

edition of *USA Today*, (e) *Detroit Free Press/Detroit News*, (f) *Le Journal de Montreal*, (g)

---

[5]    The full title of the Sale Procedures Order is *Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 (I) Approving Procedures for Sale of Debtors' Assets Pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser; (II) Scheduling Bid Deadline and Sale Hearing Date; (III) Establishing Assumption and Assignment Procedures; and (IV) Fixing Notice Procedures and Approving Form of Notice* ("**Sale Procedures Order**") (Dkt. No. 274).

23406468v4

*Montreal Gazette*, (h) *The Globe and Mail*, and (i) *The National Post*, and (ii) on the website of the Debtors' proposed claims and noticing agent, The Garden City Group, Inc., at http://www.gmcourtdocs.com (the "**Publication Notice**"). *See* Sale Motion, at 25; Sale Procedures Order, at 8.

23.    The Publication Notice did occur on or before June 11, 2009 in each newspaper identified in the preceding paragraph. The Garden City Group posted the notice of the Sale Motion on its public website as required by the Sale Procedures Order. *See Certificate of Publication*, filed by The Garden City Group ("**Cert. of Publication**") (Dkt. No. 2757); Sale Procedures Order, at 8.

24.    The Sale Procedures Order was not appealed.

25.    Neither the direct mail notice nor the Publication Notice sent in connection with the Sale Motion discussed the Ignition Switch or most liabilities or potential liabilities of Old GM.

26.    Under the Sale Agreement, either Old GM or Vehicles Acquisition Holdings LLC, the purchaser sponsored by the U.S. Treasury, could terminate the Sale Agreement if certain deadlines were not met. Sale Agreement, § 8.1.

27.    Under the Sale Agreement, either the sellers or purchaser could terminate the Sale Agreement if the Bankruptcy Court did not enter an order approving the sale by July 10, 2009. Sale Agreement, § 8.1.

28.    No qualified party other than Vehicle Acquisition Holdings LLC sought to purchase the assets of Old GM. *See* Sale Decision, at 15, 39; Sale Order and Injunction, at 5.[6]

---

[6] The full title of the Sale Order and Injunction is *Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief* ("**Sale Order and Injunction**") (Dkt. No. 2968).

29.    The Court found in its Sale Decision and Sale Order and Injunction that, if the Sale Agreement was terminated and the 363 Sale to Vehicle Acquisition Holdings LLC had not taken place, Old GM would have liquidated its assets. *See Sale Decision*, at 23; Sale Order and Injunction, at 5.

30.    The Court found in its Sale Decision and Sale Order and Injunction that, if the Sale Agreement was terminated and the 363 Sale to Vehicle Acquisition Holdings LLC had not taken place, Old GM would not have been able to continue in business. *See* Sale Order and Injunction, at 5.

31.    Numerous objections and responses to the Sale Motion were filed with the Bankruptcy Court. *See* Omnibus Reply.[7]

32.    Among the objections to the Sale Motion were objections filed by (i) The Personal Injury Claimants[8] and entities and/or groups (as described in paragraph 36 below); (ii) the Ad Hoc Committee of Consumer Victims; (iii) the States' Attorneys General; and (iv) the Official Committee of Unsecured Creditors ("**Creditors Committee**").

33.    The Creditors Committee was comprised of 15 members, including workers, suppliers, dealers, tort creditors, and other unsecured creditors of Old GM. *See Appointment of Committee of Unsecured Creditors* ("**Appt. of Creditors Committee**") (Dkt. No. 356).

34.    The Creditors Committee is statutorily charged with representing the interests of all unsecured creditors.

---

[7]    The full title of the Omnibus Reply is *Debtors to Objections to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m) and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, A U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Other Relief* ("**Omnibus Reply**") (Dkt. No. 2645).

[8]    The Personal Injury Claimants were Callan Campbell, Kevin Junso, *et al.*, Edwin Agosto, Kevin Chadwick, *et al.*, and Joseph Berlingieri.

35.    Three of the Creditors Committee's members (Genoveva Bermudez, Mark Buttita, and Kevin Schoenl) were tort claimants or representatives of tort claimants. *See id.*; Creditors Committee, at 5.

36.    The following entities and/or groups, among others, filed an objection to the Sale Motion, and described themselves in their objection as follows:

a.    **The Center for Auto Safety** says that it is a non-profit consumer advocacy organization that, among other things, works for strong federal safety standards to protect drivers and passengers. The Center states that it was founded in 1970 to provide consumers a voice for auto safety and quality in Washington, DC, and to help "lemon" owners fight back across the country. The Center claims to advocate for auto safety before the Department of Transportation and in the courts.

b.    **Consumer Action** says that it is a national non-profit education and advocacy organization serving more than 9,000 community-based organizations with training, educational modules, and multi-lingual consumer publications since 1971. Consumer Action claims to serve consumers nationwide by advancing consumer rights in the fields of credit, banking, housing, privacy, insurance, and utilities.

c.    **Consumers for Auto Reliability and Safety ("CARS")** states that it is a national, award-winning non-profit auto safety and consumer advocacy organization dedicated to preventing motor vehicle-related fatalities, injuries, and economic losses. CARS claims to have worked to enact legislation to protect the public and successfully petitioned the National Highway Traffic Safety Administration for promulgation of regulations to improve protections for consumers.

d.    **National Association of Consumer Advocates ("NACA")** is a non-profit association of attorneys and advocates who claims that its primary focus is the protection and representation of consumers. NACA's stated mission is to promote justice for all consumers by maintaining a forum for communication, networking, and information sharing among consumer advocates across the country, particularly regarding legal issues, and by serving as a voice for its members and consumers in the ongoing struggle to curb unfair or abusive business practices that affect consumers.

e.    **Public Citizen**, a consumer advocacy organization, that claims to be nonpartisan. It is a non-profit group founded in 1971 with members

9

> nationwide. Public Citizen claims to advocate before Congress, administrative agencies, and the courts for strong and effective health and safety regulation, and also claims to have a long history of advocacy on matters related to auto safety. In addition, through litigation and lobbying, Public Citizen states that it works to preserve consumers' access to state-law remedies for injuries caused by consumer products, such as state product liability laws.

*Objection to the Sale Motion filed by Personal Injury Claimants and Consumer Advocacy Groups* (Dkt. No. 2041), at 4-5.

37.    The Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizen claimed to be non-profit organizations that work to protect consumers, including consumers who would be affected by Old GM's bankruptcy case. *See id.* at 4.

38.    The Ad Hoc Committee of Consumer Victims claimed to represent more than 300 members who each had product liability tort claims involving personal injuries against Old GM. *See* Objection to the Sale Motion filed by the Ad Hoc Committee of Consumer Victims (Dkt. No. 1997), at 2.

39.    Counsel for the entities or groups identified in paragraph 36 above, the Ad Hoc Committee of Consumer Victims, the States' Attorneys General, and the Creditors Committee all appeared at and at least certain of them participated in the Sale Hearing. *See* Transcript of 363 Sale Hearing held on June 30, 2009; Transcript of 363 Sale Hearing held on July 1, 2009; Transcript of 363 Sale Hearing held on July 2, 2009.

40.    Arguments were raised in connection with the Sale Motion by, among others, the consumer advocacy groups, the Ad Hoc Committee of Consumer Victims, the States' Attorneys General and/or the Creditors Committee. *See* Objection to the Sale Motion filed by the Ad Hoc Committee of Consumer Victims; Objections to the Sale Motion filed by the States Attorneys

General (Dkt. No. 1928 and 2043); Objection to the Sale Motion filed by Personal Injury Claimants and Consumer Advocacy Groups; Objection to the Sale Motion filed by the Official Committee of Unsecured Creditors (Dkt. No. 2362).

41.    The States' Attorneys General raised arguments against the 363 Sale. *See* Objections to the Sale Motion filed by the States Attorneys General, at 10-14.

42.    After the Petition Date, representatives of Old GM, the U.S. Treasury, the Creditors Committee, and the States Attorneys General negotiated various provisions of the Sale Agreement. As a result of these negotiations, Old GM and the U.S. Treasury agreed on certain modifications to the Sale Agreement. As stated by counsel for the Attorneys General: "We have worked very hard since the beginning of the case with debtors' counsel initially, with Treasury counsel, almost everybody in this room at some point or another, it feels like. And I think a great number of improvements have been made in this agreement over that time period. The first was the assumption of the future product liability claims. Obviously, we -- you know, in a perfect world, we would not be distinguishing between those two categories, but certainly that's better than none of them. And it certainly goes a ways to addressing issues that were raised by the state Attorney Generals." Sale Hearing Transcript, July 2, 2009, 194. Counsel for the Attorneys General stated further: "We also wanted to be sure that lemon laws were covered under the notion of warranty claims, but they did not specifically refer to state lemon laws, and that coverage is being picked up." *Id.* at 196. This Court also found as follows: "Significantly also, the AG concerns resulted in one change in the game plan—assumption of liabilities under Lemon Laws—but no others, and the Lemon Laws change was made *expressly*." *Castillo Decision*, at *13.

43.    This Court further found that, around this same time, "[t]he AGs urged in argument before the Court that New GM take on liabilities broader than those that would be undertaken under the Sale Agreement as initially proposed—including implied warranties, additional express warranties, statutory warranties, and obligations under Lemon Laws." *Castillo* Decision, at *5. The U.S. Treasury and Old GM declined to amend the Sale Agreement to assume these types of liabilities (except for Lemon Laws, as defined the Sale Agreement). *See id.*

44.    The Personal Injury Claimants and the consumer advocacy groups argued at the 363 Sale hearing, *inter alia*, that New GM should assume broader warranty-related claims and that New GM should not be shielded from successor liability claims. *See* Transcript of 363 Sale Hearing held on July 1, 2009, at 295-324.

45.    The Ad Hoc Committee of Consumer Victims objected to the 363 Sale, arguing, among other things, that, "knowing that it is seeking an order which would eliminate tort claims, GM has continued to advertise and sell GM vehicles without advising unwitting consumers that it is seeking to bar future claims for injuries arising from defects in vehicles sold before the closing." *See* Objection to the Sale Motion filed by the Ad Hoc Committee of Consumer Victims, at ¶ 38.

46.    In another objection, it was argued: "GM's attempt to enjoin successor liability claims against the Purchaser must be denied because it violates applicable law, notice, and due process requirements." Objection to the Sale Motion filed by Personal Injury Claimants and Consumer Advocacy Groups, ¶ 18; *see also id.* ("A sale of GM's assets 'free and clear' of future tort and product liability claims violates due process because people who have not yet suffered injury from defects in GM vehicles do not know that they will be injured in the future cannot be

12

given meaningful notice of that their rights are being adjudicated or a meaningful opportunity to be heard.").

47.    Representatives from the U.S. Treasury declined to make further changes to the Sale Agreement with respect to Assumed Liabilities and Retained Liabilities (as such terms are defined in the Sale Agreement). *See Castillo Decision*, *5-7.

48.    The hearing on the Sale Motion took place before the Bankruptcy Court on June 30, 2009, July 1, 2009 and July 2, 2009.

49.    Old GM presented evidence to the Court in connection with the hearing on the Sale Motion.

50.    According to the Court's Sale Decision, if Old GM liquidated its assets in 2009, unsecured creditors would have received nothing from the Old GM bankruptcy estate. *See* Sale Decision, at 3.

51.    As of March 31, 2009, Old GM had consolidated reported global assets and liabilities of approximately $82,290,000,000 and $172,810,000,000, respectively. *See* Henderson Affidavit, ¶ 101; Sale Decision, at 5.

52.    According to the Court's Sale Decision, as of the Petition Date, if Old GM liquidated its assets, its liquidation asset value would be less than 10% of $82 billion. Sale Decision, at 5.

53.    According to the Court's Sale Decision, the consideration transferred by New GM to Old GM under the Sale Agreement as of the closing date of the 363 Sale was estimated to be worth not less than $45 billion, plus the value of equity interests in New GM. Sale Decision, at 18.

23406468v4

54.     No specific contingent liabilities were identified in the Sale Motion or in any trial exhibits used during the Sale Hearing. *See generally* Sale Motion; Transcript of 363 Sale Hearing held on June 30, 2009; Transcript of 363 Sale Hearing held on July 1, 2009; Transcript of 363 Sale Hearing held on July 2, 2009.

55.     Objectors to the 363 Sale presented evidence at the Sale Hearing that the book value of certain contingent liabilities was approximately $934 million. *See* Sale Decision, at 21; Transcript of Sale Hearing, June 30, 2009, at 157-159.

56.     On July 10, 2009, each of the Debtors consummated a sale of substantially all of its assets in a transaction under Section 363 of the Bankruptcy Code (the "**363 Sale**") to an acquisition vehicle, NGMCO, Inc. (as successor in interest to Vehicle Acquisition Holdings LLC), pursuant to the Sale Agreement, and (ii) the Sale Order and Injunction.    Following the 363 Sale, Old GM changed its name to Motors Liquidation Company ("**MLC**") and the acquisition vehicle later became New GM.

57.     The New GM Common Stock and both series of New GM Warrants (collectively, the "New GM Securities") are currently listed on the New York Stock Exchange.

58.     New GM and the Debtors further agreed that New GM would provide additional consideration if the aggregate amount of allowed general unsecured claims against the Debtors exceed $35 billion. (*See* Sale Agreement, § 3.2(c)). In that event, New GM will be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries. (*See id.*). The number of additional shares of New GM Common Stock to be issued will be equal to the number of such shares, rounded up to the next whole share, calculated by multiplying (i) 30 million shares (adjusted to take into account any stock dividend, stock split, combination of shares, recapitalization, merger, consolidation, reorganization or similar

14

transaction with respect to such New GM Common Stock from and after the closing of the 363

Sale and before issuance of additional shares) and (ii) a fraction, (A) the numerator of which is

the amount by which allowed general unsecured claims exceed $35 billion (such excess amount

being capped at $7 billion) and (B) the denominator of which is $7 billion."[9]  (*See* Motors

Liquidation Company GUC Trust Quarterly GUC Trust Reports as of September 30, 2013 at 6).

59.    At the time the 363 Sale was approved, Old GM had not filed its schedules of

assets and liabilities with the Court.

60.    At the time the 363 Sale was approved, there was no deadline or bar date for

general unsecured creditors to file proofs of claim.

61.    The Plaintiffs in the Ignition Switch Actions are not parties under the Sale

Agreement.

62.    The Personal Injury Claimants objected to and appealed the Sale Order and

Injunction. *See Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43

(S.D.N.Y. 2010) (Buchwald, J.).

63.    The Sale Order and Injunction was upheld on appeal by two different District

Court Judges. *See id.*; *Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430

B.R. 65 (S.D.N.Y. 2010) (Sweet, J.).

64.    While the appellants in *Campbell* originally sought to appeal the Sale Order and

Injunction to the Court of Appeals for the Second Circuit, that appeal was subsequently

withdrawn by the parties to the appeal pursuant to a stipulation so-ordered on September 23,

---

[9]    *See* Second Amendment to Sale Agreement, Section 2(r) (amending Section 3.2(c) of the Sale Agreement) ("Sellers may, at any time, seek an Order of the Bankruptcy Court ... estimating the aggregate allowed general unsecured claims against Sellers' estates ... [and if] the Bankruptcy Court makes a finding that the estimated allowed general unsecured claims against Sellers' estates exceed $35,000,000,000, then Purchaser will ... issue additional shares of Common Stock ...."). While the Sale Agreement initially provided for the issuance of up to 10,000,000 additional shares, this number has subsequently been adjusted for the three-for-one split of New GM Common Stock. (*See* Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan, at 16-17 n.2 (Dkt. No. 8023).

23406468v4

2010. In addition, while the appellant in *Parker* originally sought to appeal the Sale Order and Injunction to the Court of Appeals for the Second Circuit, that appeal was subsequently dismissed by the Court of Appeals for the Second Circuit on July 28, 2011 on equitable mootness grounds for appellant's failure to seek a stay of the Sale Order and Injunction. *See Parker v. Motors Liquidation Company*, Case No. 10-4882-bk (2d Cir. July 28, 2011). There were no further appeals of the Sale Order and Injunction.

65.    On December 15, 2011 (the "Dissolution Date"), as required by the Plan, MLC filed its certificate of dissolution. (*See* Form 10-K Annual Report for Motors Liquidation Company GUC Trust for the Fiscal Year Ended March 31, 2014, filed May 22, 2014 ("GUC Trust 2014 Form 10-K") at 3). Pursuant to an *Assignment and Assumption Agreement (GUC Trust)*, dated that same day, Old GM assigned to the GUC Trust certain assets and agreements, and the GUC Trust assumed certain obligations of Old GM. *See* Assignment and Assumption Agreement (GUC Trust), § 1.

66.    All of the Ignition Switch Actions include vehicles and/or parts designed and manufactured by Old GM.

67.    None of the Ignition Switch Actions seek repairs of Old GM vehicles under the Glove Box Warranty.

68.    None of the claims asserted in the Ignition Switch Actions constitute claims under Lemon Laws as defined by the Sale Agreement (as contrasted with state law definitions of lemon laws).

# Exhibit 1

EXHIBIT "1"

## NEW GM'S PROPOSED STIPULATIONS OF FACT NOT AGREED TO BY OTHER COUNSEL FOR THE IDENTIFIED PARTIES

1.      On the Petition Date, Old GM's general ledger, and other corporate books and records listing Old GM's liabilities, did not list any Plaintiffs in the Ignition Switch Actions as having a claim or liability owed to them by Old GM relating to the defective Ignition Switches in the Subject Vehicles.

2.      New GM did not sell a vehicle with a defective Ignition Switch, nor did it sell defective Ignition Switches to be used as repair parts.

3.      After the expiration of the Bar Date established by the Bankruptcy Court for general unsecured creditors to file claims against the Debtors (*i.e.*, November 30, 2009), certain claimants filed late proofs of claim in the Debtors' bankruptcy case, and some of those claims became allowed claims against the Debtors.

4.      As of June 30, 2009, none of the Named Plaintiffs in the Ignition Switch Actions had filed any court pleadings or otherwise commenced litigation (*i.e.*, asserting a claim or seeking a remedy based on economic loss, warranty, Lemon Law, *etc.*) against Old GM with respect to their Subject Vehicle.

5.      In 2009, approximately 75 million Old GM vehicles were in use in the United States.

6.      Old GM's noticing agent, the Garden City Group ("GCG"), provided direct mail notice of the 363 Sale to approximately 4 million persons and entities in June 2009. See Certificate of Service, filed by The Garden City Group ("Sale Motion Notice") (Dkt. No. 973).

# Exhibit 2

EXHIBIT "2"

## NEW GM'S RESPONSES TO PROPOSED STIPULATIONS OF FACT BY OTHER COUNSEL FOR THE IDENTIFIED PARTIES NOT AGREED TO BY NEW GM

**A.    New GM's Responses to Designated Counsel's
Proposed Facts To Which New GM Does Not Stipulate**

1.     On November 19, 2004, Old GM personnel opened a Problem Resolution Tracking System report to address a complaint at a press event that a Subject Vehicle could be "keyed off with knee while driving. This was the first of six reports opened between 2004 and 2009 in connection with moving stalls in the Cobalt." (V.R. at 63). As part of the November 19, 2004 Problem Resolution Tracking System investigation, Old GM engineers suggested solutions to address the complaint that the ignition could be "keyed off with knee while driving," and presented them to the Current Production Improvement Team. (V.R. at 64-68).

> **NEW GM RESPONSE**: The Stipulation is incomplete. The Valukas Report also says: "As a critical decision point, the problem described in the November 19, 2004 PRTS was assigned a severity level of 3 - on a scale of 1 (most severe) to 4 (least severe)." (V.R. at 63). The Valukas Report describes the severity levels as follows: "After identifying the issue, the originator of a PRTS selects a severity level for the problem. The severity level is a significant factor in the priority given to a PRTS report, with more severe issues addressed more urgently. The originator selects the severity level from a drop-down menu that includes brief descriptions of four options, which, during the relevant time period, were:
>
> Code 1: Possibly Safety / Regulatory Issues / Walk Home / No Build
> Code 2: Major Issues- an issue that would cause the customer to immediately return the vehicle to the dealership or cause excessive cost or labor impact at the assembly plant
>
> Code 3: Moderate Issues - fix on the next trip to dealership or cause moderate cost or labor impact at the assembly plant
>
> Code 4: Annoyance / Continuous Improvement" (V.R. at 41-42).

2.     As Old GM's Program Engineering Manager for the Chevrolet Cobalt when it was launched, Gary Altman would have been present at Current Production Improvement Team and Vehicle and Process Integration Review meetings in which possible solutions were presented to address reports that drivers had inadvertently turned off the ignition switch in Cobalt vehicles by hitting their knees against the key or key fob. (V.R. at 63-67).

**NEW GM RESPONSE**: This is not a fact and is speculation. It is also not supported by the Valukas Report. The Report does not state that Gary Altman attended or possibly attended meetings.

3.     A May 2007 case evaluation, by Old GM's outside counsel, of an accident in a 2004 Saturn Ion in which the airbag failed to deploy despite the fact that the vehicle went off the road, traveled through a brush line and struck a tree head on, resulting in one fatality and one severe injury, was deemed "unusual." "In discussing the technical issues in the case, outside counsel explained that, given the severity of the impact, the airbag non-deployment 'must be' attributable to power loss." (V.R. at 124-125).

**NEW GM RESPONSE**: The reference in the response which relates to what "outside counsel explained" should not have been cited because of the attorney client/work-product privileges.

4.     A January 2008 second evaluation by Old GM outside counsel of a non-deployment case involving a Subject Vehicle hitting a tree concluded that "[t]he impact with the tree was clearly severe enough to warrant deployment of the vehicle's airbags. As a result, from a technical standpoint, there is a potential problem with the non-deployment, which was originally attributed to a pre-collision power loss." While outside counsel and Old GM Field Performance Assessment Engineer Manuel Peace thought the non-deployment event was not caused by a power loss, outside counsel concluded that "it was likely 'that a jury will find that the vehicle was defective' [and] GM eventually settled the case in 2008." (V.R. at 129-30).

**NEW GM RESPONSE**: The reference in the response which relates to what "outside counsel concluded" should not have been cited because of the attorney client/work-product privileges. The stipulation is also incomplete. The Valukas Report also states: "After further analysis of the accident sequence and information in the SDM download it appears that the non-deployment was not caused by a power loss but by some error in the SDM which caused it to misinterpret this significant crash as a non-deployment event." (V.R. at 129-30).

5.     In March 2009, Old GM CEO Rick Wagoner had a "back-up" slide of a slide deck that included a reference to the Cobalt's inadvertent shut-off issue, that was presented at a meeting of the Vehicle Program Review team. That slide, in a 72-page slide presentation, described a proposed change in the Cobalt's key design from a slot to a hole. The slide deck was found in the data collected from Wagoner's computer from March 2009. (V.R. at 245).

**NEW GM RESPONSE**: The Stipulation is incomplete. The Valukas Report goes on to state as follows: "The back-up slide focused solely on warranty cost reduction and did not characterize the matter as a safety issue or mention airbag non-deployment, accidents or fatalities. Wagoner does not recollect reviewing any part of the slide deck." (V.R. at 245). After going through the background of the slide deck and investigating whether

23406468v4

Wagoner was informed of its contents, the Valukas Report states as follows: "There is no forensic evidence that Wagoner reviewed any specific slide within the presentation. As noted, Wagoner does not recollect viewing the presentation or the back-up slides; about three weeks later, on March 29, 2009, Wagoner agreed to resign as CEO at the request of the U.S. government's Auto Task Force. Contemporaneous e-mails he exchanged with the person who provided the summary notes of the meeting do not mention the Cobalt issue or any other specific topic." (V.R. at 247).

6.    In furtherance of Old GM's admitted culture of avoiding responsibility, an Old GM 2008 Q1 Interior Technical Learning Symposium presentation provided examples of comments and phrases employees should avoid using in reports:

i.    "This is a lawsuit waiting to happen . . ." ; "unbelievable engineering screw up . . . "; "this is a safety and security issue . . ."; "scary for the customer . . . "; "kids and wife panicking over the situation . . . "; "i believe the wheels are too soft and weak and could cause serious problems. . ."; "dangerous . . . Almost cause accident."

ii.    The Old GM Symposium presentation also stated that documents used for reports and presentations should only concern engineering results, facts, and judgments. Some examples of words or phrases that are to be avoided are: *always* (emphasis in original), annihilate, apocalyptic, bad, Band- Aid, big time, brakes like an "X" car, cataclysmic, catastrophic, Challenger, chaotic, Cobain, condemns, Corvair-like, crippling, critical, dangerous, deathtrap, debilitating, decapitating, *defect* (emphasis in original), defective, detonate, disemboweling, enfeebling, evil, eviscerated, explode, failed, failure, flawed, genocide, ghastly, grenadelike, grisly, gruesome, Hindenburg, Hobbling, Horrific, impaling, inferno, Kevorkianesque, lacerating, life –threatening, maiming, malicious, mangling, maniacal, mutilating, *never* (emphasis in original), potentially-disfiguring, powder keg, problem, rolling sarcophagus (tomb or coffin), safety, safety related, serious, spontaneous combustion, startling, suffocating, suicidal, terrifying, Titanic, tomblike, unstable, widow-maker, words or phrases with biblical connotation, you're toast.

**NEW GM RESPONSE:** This is an exhibit to the NHTSA Consent Order. The Stipulation is incomplete. The presentation also states:

"In a corporation the size of GM, writing is in many cases the only way to communicate globally because of time changes, number of people involved, etc.

• Write "smart."

-Be factual, not fantastic, in your writing.

• When identifying product risks, make sure they are addressed and closed out.

• Our writing must always be based only on fact, without judgmental adjectives and speculation.

• Understand that there really aren't any secrets in this company.

> - For anything you say or do, ask yourself how you would react if it was reported in a major newspaper or on television.

• Don't be cute or clever.

> -The words you choose could be taken out of context to
>
> suggest you meant something much worse than what was intended.
>
> -This may be especially easy to do in an e-mail, when there might be a temptation to use a casual tone to describe a potentially serious safety risk."

In addition, the lead in to the list set forth in (i) is: "Examples of comments that do not help identify and solve problems."

Also, the lead in to (ii) is as follows: "Documents used for reports and presentations should contain only engineering results, facts, and judgments. These documents should not contain speculations, opinions, vague non descriptive words, or words with emotional connotations. Some examples of words or phrases that are to be avoided are . . . ."

The Valukas Report also states: "Leadership at GM has tried to counter this culture with clear messages that employees should raise issues. 'Winning With Integrity' (the code of conduct) instructs employees to raise problems (although it does not explicitly reference vehicle safety) and ensure they receive proper attention, and to conduct themselves with the highest ethical standards." (V.R. at 255). The Valukas Report goes on to state that the author of the presentation used the phrases and words "as an attempt at humor," and that "[t]he employee who presented the training was later told by a lawyer who saw a version of this training to remove the slide listing words never to be used." (V.R. at 254 and n. 1156).

7.     "In addition to being trained on how to write, a number of GM employees reported that they did not take notes at all critical safety meetings because they believed GM lawyers did not want such notes taken." (V.R. at 254).

**NEW GM RESPONSE:** The Stipulation is incomplete. The Valukas Report also states: "No witness was able to identify a lawyer who gave such an instruction, no lawyer

reported having given such an instruction, and we have found no documents ore-mails reflecting such an instruction."

**B.    New GM's Responses to Groman Plaintiffs'
Proposed Facts To Which New GM Does Not Stipulate**[10]

1.    During his employment, William Kemp reported to the General Counsel of GM North America. (V.R. at 104).

**NEW GM RESPONSE:** This assertion is vague. The Valukas Report discusses this person's role at the time the Report was written, and not for the entire time during the person's career as the stipulation suggests.

2.    During his employment, Larry Buonomo reported to the General Counsel of GM North America. (V.R. at 104).

**NEW GM RESPONSE:** This assertion is vague. The Valukas Report discusses this person's role at the time the Report was written, and not for the entire time during the person's career as the stipulation suggests.

3.    When the ignition switch is turned to Accessory or Off, a Subject Vehicle would lose power brakes. (V.R. at 25).

**NEW GM RESPONSE:** The loss of power brakes under these circumstances would not happen immediately. This is a matter of engineering and has been confirmed by New GM engineers.

4.    In 2003, Old GM became aware of Saturn customer complaints about intermittent engine stalls while driving. (V.R. at 54).

**NEW GM RESPONSE:** This assertion is incomplete. The Valukas Report goes on to state: "Witnesses recalled that the vast majority of claims concerning the Ion involved

---

[10]  In the evening on Thursday, August 7, 2014 – the night before the agreed upon stipulations of fact were due to be delivered to the Court and hours after New GM received a list of proposed stipulations of fact not agreed to and which New GM herein responds, the Groman Plaintiffs sent the other Counsel for the Identified Parties (including New GM) an additional 87 proposed stipulations of fact that have not been agreed to. Until that time, New GM believed that all of the other Counsel for the Identified Parties (including the Groman Plaintiffs) had already delivered their disputed stipulations of fact. New GM has not had an appropriate opportunity to respond to the Groman Plaintiffs' new list of disputed stipulated facts.

23406468v4

complaints of 'no crank/no start' problems, which arose from electrical, rather than mechanical, problems with the Ignition Switch." (V.R. at 54).

5.      In October 2003, a Field Performance Report, 3101/2003/US, lists 65 Ion stalls and states: "Customers comment of intermittent stall while driving.  In most cases, there are no trouble codes associated with the stall. " This Field Performance Report lists a vehicle with 15 miles as the youngest vehicle affected. (V.R. at 54-55).

> **NEW GM RESPONSE:**  This assertion is incomplete.  Some of the stalls were due to "heavy key chains." (V.R. at 54).  In addition, the October 2003 Field Performance Report "was canceled in January 2004 for the purported reason that a different report already resolved the issue." (V.R. at 55)

6.      Before 2008, a handful of Old GM engineers other than Raymond DeGiorgio also received information describing the change to the Ignition Switch for the model year 2008 Chevrolet Cobalt, including four engineers who received a June 30, 2006 email from Delphi to DeGiorgio stating that the detent plunger had been changed "to increase torque forces to be within specification." (V.R. 102).

> **NEW GM RESPONSE:**  This assertion is incomplete.  The Valukas Report goes on to states that these engineers were "in other departments" and "were not involved in the investigations that ensued in the coming years, nor did they hold a position, like DeGiorgio's, with responsibility for the Ignition Switch." (V.R. at 102 n.417).

7.      When first told of the Ignition Switch Defect in or about March 2005, Steven Oakley formed the view that the Ignition Switch Defect was a safety issue. (V.R. at 76).

> **NEW GM RESPONSE:**  This assertion is unsupported.  The Valukas Report goes on to state that "Gary Altman, the PEM for the Cobalt program team, and other engineers told him [Oakley] it was not ( safety issue), and he deferred to them. (V.R. at 76). This portion of the Valukas Report discusses Oakley's review of an event wherein the driver's knee contacted the key fob.  The problem did not occur when the fob was removed from the key. Oakley assigned the incident with the lowest rating (4) "annoyance or continuous improvement." (V.R. at 76).

8.      In or about November 15, 2004, one individual was killed and another was severely injured in a crash involving a 2004 Saturn Ion where the airbags did not deploy. (V.R. at 124).  Manuel Peace, an Old GM engineer who assisted Old GM's legal department in evaluating cases, did a case evaluation for this incident.  (V.R. 124).  In his case evaluation, Peace stated he had never seen a situation like this where the airbags did not deploy, and that the best explanation for why the airbags did not deploy was that the vehicle lost power.  (V.R. at 125)

**NEW GM RESPONSE:** This assertion is incomplete. The Valukas Report notes that neither individual was wearing their seatbelts at the time of the accident. In addition, the Report states that "Peace , however, had not determined precisely how the vehicle lost power…. Peace does not recall the case or what he did to investigate it." (V.R. at 125).

9.     At some point between 2007 and the commencement of Old GM's bankruptcy case, John Sprague and the Field Performance Assessment team observed a pattern of airbag non-deployments in Cobalts and Ions. (V.R. at 9, 118-19, 134).

**NEW GM RESPONSE:** This assertion is unsupported. The Valukas Report does not say that John Sprague or anyone else noticed a "pattern of airbag non-deployments," but instead that the FPA team in 2009 " had not realized that the observed pattern of non-deployments could have been caused by a change in power mode signal that disabled airbag sensors." (V.R. at 134-135).

10.     At the time John Sprague and Brian Everest met with Continental, Sprague and Everest knew that the rotation of the ignition switch from Run to Accessory or Off could cause the Sensing and Diagnostic Module to receive a power mode message of Accessory or Off. (V.R. at 135).

**NEW GM RESPONSE:** This assertion is unsupported. The Valukas Report does not state that Sprague and Everest knew. (V.R. at 135).

11.     At or about the time of the meeting with Continental in May 2009, Brian Everest and John Sprague had spoken with members of Old GM's Product Investigations group about the non-deployment of airbags in Cobalts. (V.R. at 135).

**NEW GM RESPONSE:** This assertion is unsupported and incomplete. The Valukas Report states that: "Before receiving the Continental report, Everest and Sprague explained, the FPA team had not realized that the observed pattern of Cobalt non-deployments could have been caused by a change of power mode signal that disabled airbag sensors." It goes on to state that Sprague gathered further information, and the engineers first focused their attention on the vehicles electric system. It was in this context that Sprague and Everest spoke to the engineering team about the non-deployment issue.

12.     Joseph Taylor, an Old GM Program Quality Manager who administered the Captured Test Fleet program for the Chevrolet Cobalt drove a 2005 Cobalt test vehicle and personally experienced moving stalls with the Cobalt. (V.R. at 58).

**NEW GM RESPONSE:** This assertion is incomplete. The Valukas Report goes on to state that Taylor did not recall any Capture Test Fleet ("CTF") "reports of Ignition Switch or stalling issues for the Cobalt, either during the initial 2004 CTF or in subsequent model years." (V.R. at 58.)  It further states that Taylor did not report the stalling instances in his CTF Reports "because he did not regard them as significant." "Taylor, like many other GM engineers, did not regard stalling as a safety issue." (V.R. at 59).

23406468v4

# Exhibit 3

IN RE NEW GM VIS LITIGATION
EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | NUMBER | COURT | PLAINTIFF |
|---|---|---|---|
| Arnold et al. v. General Motors LLC et al. | 1:14-cv-05325-JMF | USDC SDNY | Arnold, Phillip R. |
| Arnold et al. v. General Motors LLC et al. | 1:14-cv-05325-JMF | USDC SDNY | Painter, Patrick C. |
| Ashbridge v. General Motors LLC et al. | 1:14-cv-04781-JMF | USDC SDNY | Ashbridge, Amy |
| Ashworth et al. v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Booher, Lynda |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Ashworth, Dianne |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Moore, Karen |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Dean, David |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | De Atley, Sandra |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Glantz, Paul |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Roads, Cathy |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Serpa, Moraima |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Anderson, Steven |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Witmer, Matthew |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Willis, Joanna |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Weingarten, Marsha |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Webster, Aaron |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Wallace, Jamie |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Walker, Maple |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Vanevery, Julie |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Ulrich, Natahsa |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Tucker, Kristen |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Trickey, Debby |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Thompson, Amanda |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Switzer, Stephen |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Sussell, Kathy |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Suman, Joseph |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Stovall, AJ |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Stevens, Geraldine |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Stephans, Lori |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Snover, Ann |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Smith, Karla |

DMSLIBRARY01:23416963.1

IN RE NEW GM VIS LITIGATION
EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | NUMBER | COURT | PLAINTIFF |
|------|--------|-------|-----------|
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Skinner, Tracy |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Shorter, Karissa |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Scott, Ladena |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Schneider, Donna |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Rolling, Gregory |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Rice, Randall |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Quinn, Juanita |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Pope, Ledell |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Pinon, Jessica |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Pereira-Lopez, Migdalia |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Palsmeier, Lawrence |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Oswald, Frank |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Onyeador, Misty |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Morgan, Chris |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Moore, Robert |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Milton, Bonnie |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Miller, Brian |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Miles, Leslie |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | McMath, Dionne |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Matamoros, David |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Macon, Sharon |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Lynn, Kari |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Lein, Dina |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Lee, Theresa |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Lech, Donna |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Kidd, Amy |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Kennedy, Jamie |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Joseph, Jean |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Jones, Lakeisha |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Jackson, Gloria |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Jackson, Cheryl |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Ingram, Christine |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Humphries, Emily |

2

**IN RE NEW GM VIS LITIGATION**
**EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM**

| CASE | NUMBER | COURT | PLAINTIFF |
|------|--------|-------|-----------|
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Howell, Simmion |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Honeywood, Cecilia |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Foster, Deloris |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Bryant, Virginia |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Frankhouser, Deena |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Fuller, Kara |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Averhart, Balisha |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Caratozzolo, James |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Gallo, Salvatore |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Gretch, Nicholas |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Collins, Sonja |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Gums, Elridge |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Hendrickson, Jamie |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Cooper, Robert |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Batchelor, Cheree |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Covert, Daniel |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Hernandez, Christina |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Higgins, Jillian |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Crosby, Christina |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Hite, Kenneth |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Battee, Percy |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Dean, Allicia |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Dodge, Scott |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Downing, David |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Beardsley, Everett |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Dutton, Brandi |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Feehley, William |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Bellomy, Karen |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Follmer, Janice |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Birney, Neddie |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Black, Ellis |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Black, Tahnea |
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Bowman, Vanessa |

3

DMSLIBRARY01\23416063.1

IN RE NEW GM VIS LITIGATION
EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | NUMBER | COURT | PLAINTIFF |
|---|---|---|---|
| Ashworth v. General Motors LLC | 1:14-cv-04804-JMF | USDC SDNY | Bryant, Pamela |
| Balls et al v. General Motors LLC | 1:14-cv-04691-JMF | USDC SDNY | Balls, Jeffery |
| Balls et al. v. General Motors LLC | 1:14-cv-04691-JMF | USDC SDNY | Balls, Tammie |
| Bedford Auto Wholsale Inc. v. General Motors LLC | 1:14-cv-05356-JMF | USDC SDNY | Bedford Auto Wholsale Inc |
| Bender v. General Motors LLC | 1:14-cv-04768-JMF | USDC SDNY | Bender, Larry |
| Benton v. General Motors LLC | 1:14-cv-04268-JMF | USDC SDNY | Benton, Sylvia |
| Biggs v. General Motors LLC et al. | 1:14-cv-05358-JMF | USDC SDNY | Biggs, Lorie |
| Brandt v. General Motors LLC | 1:14-cv-04340-JMF | USDC SDNY | Brandt, Daryl |
| Brandt v. General Motors LLC | 1:14-cv-04340-JMF | USDC SDNY | Brandt, Maria |
| Brown v. General Motors LLC | 1:14-cv-04715-JMF | USDC SDNY | Brown, Kimberly |
| Brown v. General Motors LLC | 1:14-cv-04715-JMF | USDC SDNY | Shipley, Dan |
| Burton v. General Motors LLC et al. | 1:14-cv-04771-JMF | USDC SDNY | Burton, Deneise |
| Camlan v. General Motors LLC | 1:14-cv-04741-JMF | USDC SDNY | Camlan, Inc. |
| Camlan v. General Motors LLC | 1:14-cv-04741-JMF | USDC SDNY | Marquez, Salvador R. |
| Camlan v. General Motors LLC | 1:14-cv-04741-JMF | USDC SDNY | Pina, Randall |
| Camlan v. General Motors LLC | 1:14-cv-04741-JMF | USDC SDNY | Books, Amalia |
| Childre v. General Motors LLC et al. | 1:14-cv-05332-JMF | USDC SDNY | Childre, Brittany |
| Coleman v. General Motors LLC | 1:14-cv-04731-JMF | USDC SDNY | Coleman, Jomaka |
| Corbett et al. v. General Motors LLC | 1:14-cv-05754-JMF | USDC SDNY | Corbett, Diana |
| Corbett et al. v. General Motors LLC | 1:14-cv-05754-JMF | USDC SDNY | Barnes, Gertrude |
| Corbett et al. v. General Motors LLC; | 1:14-cv-05754-JMF | USDC SDNY | Barnes, Michael |
| Cox v. General Motors LLC | 1:14-cv-04701-JMF | USDC SDNY | Cox, Ronald |
| Darby v. General Motors LLC | 1:14-cv-04692-JMF | USDC SDNY | Darby, Larry |
| Deighan v. General Motors LLC et al. | 1:14-cv-04858-JMF | USDC SDNY | Deighan, Kathleen |
| Deluco v. General Motors LLC | 1:14-cv-02713-JMF | USDC SDNY | Deluco, Robin |
| DePalma et al v. General Motors LLC et al. | 1:14-cv-05501-JMF | USDC SDNY | McCann, Bob |
| DePalma et al v. General Motors LLC et al. | 1:14-cv-05501-JMF | USDC SDNY | McCann, Dorothy |
| DePalma et al v. General Motors LLC et al. | 1:14-cv-05501-JMF | USDC SDNY | Pollastro, Paul J. |
| DePalma et al. v. General Motors LLC et al. | 1:14-cv-05501-JMF | USDC SDNY | DePalma, Austin |
| Desutter et al. v. General Motors LLC | 1:14-cv-04685-JMF | USDC SDNY | Desutter, Michelle |
| Desutter et al. v. General Motors LLC | 1:14-cv-04685-JMF | USDC SDNY | White, Robert |
| Desutter et al. v. General Motors LLC | 1:14-cv-04685-JMF | USDC SDNY | Ferguson, Joie |
| Detton v. General Motors LLC et al. | 1:14-cv-04784-JMF | USDC SDNY | Detton, Sarah |

4

IN RE NEW GM VIS LITIGATION
EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | NUMBER | COURT | PLAINTIFF |
|---|---|---|---|
| Detton v. General Motors LLC et al. | 1:14-cv-04784-JMF | USDC SDNY | Detton, Jeff |
| Deushane v. General Motors LLC | 1:14-cv-04732-JMF | USDC SDNY | Deushane, Taylor |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Dinco, Deanna |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Butler, David |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Blinsmon, Curtis |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Henderson, Aaron |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Belford, Grace |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Terry, Nathan |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Pesce, Michael |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Haskins, Rhonda |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Gearin, Jennifer |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Revak, Arlene |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Mathis, George |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Dias, Mary |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Amezquita, Michael |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | De Vargas, Lorraine |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Tefft, Dawn |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Taylor, Bonnie |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Gordon, Jerrile |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Hunter, Keisha |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Rouse, Les |
| Dinco et al. v. General Motors LLC | 1:14-cv-04727-JMF | USDC SDNY | Anderson, Sheree |
| Duarte v. General Motors LLC et al. | 1:14-cv-04667-JMF | USDC SDNY | Duarte, Ruth |
| Edwards_C et al. v. General Motors LLC et al. | 1:14-cv-04684-JMF | USDC SDNY | Edwards, Cynthia |
| Edwards_C et al. v. General Motors LLC et al. | 1:14-cv-04684-JMF | USDC SDNY | Thomas, Madeline |
| Edwards_C et al. v. General Motors LLC et al. | 1:14-cv-04684-JMF | USDC SDNY | Prassel, Jay |
| Edwards_C et al. v. General Motors LLC et al. | 1:14-cv-04684-JMF | USDC SDNY | Madewell, Hope |
| Edwards_C et al. v. General Motors LLC et al. | 1:14-cv-04684-JMF | USDC SDNY | Ball, Jeanne Jones |
| Elliott_C v. General Motors LLC et al. | 1:14-cv-05323-JMF | USDC SDNY | Elliott, Colin |
| Elliott_L et al. v. General Motors LLC | 1:14-cv-00691-KBJ | USDC DC | Elliott, Lawrence M. |
| Elliott_L et al. v. General Motors LLC | 1:14-cv-00691-KBJ | USDC DC | Elliot, Celestine V. |
| Elliott_L et al. v. General Motors LLC | 1:14-cv-00691-KBJ | USDC DC | Summerville, Berenice |
| Emerson et al. v. General Motors LLC et al. | 1:14-cv-04650-JMF | USDC SDNY | Emerson, Jonathan |

5

IN RE NEW GM VIS LITIGATION
EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | NUMBER | COURT | PLAINTIFF |
|------|--------|-------|-----------|
| Emerson et al. v. General Motors LLC et al. | 1:14-cv-04650-JMF | USDC SDNY | Barbiaux, Melinda |
| Emerson et al. v. General Motors LLC et al. | 1:14-cv-04650-JMF | USDC SDNY | Brown Davis, Carter |
| Emerson et al. v. General Motors LLC et al. | 1:14-cv-04650-JMF | USDC SDNY | Garrett, Dawn |
| Emerson et al. v. General Motors LLC et al. | 1:14-cv-04650-JMF | USDC SDNY | Hicks, Thomas |
| Emerson et al. v. General Motors LLC et al. | 1:14-cv-04650-JMF | USDC SDNY | Lawson, Barb |
| Emerson et al. v. General Motors LLC et al. | 1:14-cv-04650-JMF | USDC SDNY | Moore, Carlton |
| Emerson et al. v. General Motors LLC et al. | 1:14-cv-04650-JMF | USDC SDNY | Perkins, Janet |
| Espineira v. General Motors LLC, et al. | 1:14-cv-04637-JMF | USDC SDNY | Espineira, Reynaldo A. |
| Favro v. General Motors LLC, et al. | 1:14-cv-04752-JMF | USDC SDNY | Favro, Hilarie |
| Forbes v. General Motors LLC | 1:14-cv-04798-JMF | USDC SDNY | Forbes, Debra E. |
| Foster v. General Motors LLC et al. | 1:14-cv-04775-JMF | USDC SDNY | Foster, Joyce |
| Frank v. General Motors LLC | 1:14-cv-21652-MGC | USDC SD Fla | Frank, Nancy Hausmann |
| Fugate v. General Motors LLC | 1:14-cv-04714-JMF | USDC SDNY | Fugate, Jolene |
| Gebremariam v. General Motors LLC | 1:14-cv-05340-JMF | USDC SDNY | Gebremariam, Mesafint |
| Groman v General Motors LLC | 1:14-cv-02458-JMF | USDC SDNY | Groman, Steven |
| Grumet et al v. General Motors LLC | 1:14-cv-04690-JMF | USDC SDNY | Grumet, Elizabeth Y. |
| Grumet et al v. General Motors LLC | 1:14-cv-04690-JMF | USDC SDNY | ABC Flooring INC |
| Grumet et al v. General Motors LLC | 1:14-cv-04690-JMF | USDC SDNY | Sullivan, Marcus |
| Grumet et al v. General Motors LLC | 1:14-cv-04690-JMF | USDC SDNY | Saxson, Katelyn |
| Grumet et al v. General Motors LLC | 1:14-cv-04690-JMF | USDC SDNY | Clinton, Amy C. |
| Grumet et al v. General Motors LLC | 1:14-cv-04690-JMF | USDC SDNY | Clinton, Allison C. |
| Harris et al. v. General Motors LLC et al. | 1:14-cv-04672-JMF | USDC SDNY | Harris, Alicia |
| Harris et al. v. General Motors LLC et al. | 1:14-cv-04672-JMF | USDC SDNY | Toth, Kristin |
| Henry et al. v. General Motors LLC et al. | 1:14-cv-04811-JMF | USDC SDNY | Youngblood, Rebecca |
| Henry et al. v. General Motors LLC et al. | 1:14-cv-04811-JMF | USDC SDNY | Gladson, Pam |
| Henry et al. v. General Motors LLC et al. | 1:14-cv-04811-JMF | USDC SDNY | Henry, Shenyesa |
| Heuler v. General Motors LLC | 1:14-cv-04345-JMF | USDC SDNY | Heuler, Nicole |
| Higginbotham v. General Motors LLC et al. | 1:14-cv-04759-JMF | USDC SDNY | Higginbotham, Drew |
| Holliday, et al. v. General Motors LLC, et al. | 1:14-cv-05506-JMF | USDC SDNY | Holliday, Kevin |
| Holliday, et al. v. General Motors LLC, et al. | 1:14-cv-05506-JMF | USDC SDNY | Calvillo, Elvira |
| Hurst v. General Motors Company | 1:14-cv-04707-JMF | USDC SDNY | Hurst, Kim |
| Ibanez v. General Motors LLC | 1:14-cv-05880-JMF | USDC SDNY | Ibanez, Alondra |
| Ibanez v. General Motors LLC | 1:14-cv-05880-JMF | USDC SDNY | Degado, Sylvia |

6

DMSLIBRARY01:23416963.1

IN RE NEW GM VIS LITIGATION

EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | COURT | NUMBER | PLAINTIFF |
|---|---|---|---|
| Jawad v. General Motors LLC | USDC SDNY | 1:14-cv-04348-JMF | Jawad, Adnan |
| Johnson v. General Motors LLC | USDC SDNY | 1:14-cv-05347-JMF | Johnson, Elizabeth D. |
| Jones_P v. General Motors LLC | USDC SDNY | 1:14-cv-04350-JMF | Jones, Peggy Sue |
| Kandziora v. General Motors LLC et. al. | USDC ED Wis | 2:14-cv-00801-AEG | Kandziora, Erin E. |
| Kelley et al. v. General Motors Company et al. | USDC SDNY | 1:14-cv-04272-JMF | Kelley, Devorah |
| Kelley et al. v. General Motors Company et al. | USDC SDNY | 1:14-cv-04272-JMF | Whittington, Frederick |
| Kluessendorf v. General Motors LLC et al. | USDC SDNY; | 1:14-cv-05035-JMF | Kluessendorf, Sandra |
| Knetzke v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04641-JMF | Knetzke, Jacob P. |
| Kosovec v. General Motors LLC et al. | USDC ND Fla | 3:14-cv-00354-RS-EMT | Kosovec, Wendy |
| Lannon et al. v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04676-JMF | Lannon, Michelle |
| Lannon et al. v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04676-JMF | Little, Jeaninne |
| Lareine et al. v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04717-JMF | Lareine, Lianne |
| Lareine et al. v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04717-JMF | Chandler, Marguerite |
| Lareine et al. v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04717-JMF | Evans, James |
| Lareine et al. v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04717-JMF | LaGoe, Bonita |
| Lareine et al. v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04717-JMF | Jordanides, Lea |
| Lareine et al. v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04717-JMF | Rodriguez, Yvonne E. |
| Letterio v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04857-JMF | Letterio, Noel Joyce |
| Leval v. General Motors LLC | USDC SDNY | 1:14-cv-04802-JMF | Leval, Vernon |
| Levine v. General Motors LLC | USDC SDNY | 1:14-cv-04661-JMF | Levine, Michael |
| Lewis v. General Motors LLC et al. | USDC SDNY | 1:14-cv-04720-JMF | Lewis, Tracy |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Maciel, Galdina |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Cortez, Daniel |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Wade, Cindy |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Dewitt, Zachary |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Cheraso, Roberta |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Smith, Demetrius |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Byrd, Jenee |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Leyva, Ashuhan |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Gresik, Jim |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Steele, Barbara Ellis |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Raygoza, Maria |
| Maciel et al. v. General Motors LLC | USDC SDNY | 1:14-cv-04339-JMF | Gray, Barbara |

DMSLIBRARY01:23416963.1

IN RE NEW GM VIS LITIGATION
EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | NUMBER | COURT | PLAINTIFF |
|------|--------|-------|-----------|
| Maciel et al. v. General Motors LLC | 1:14-cv-04339-JMF | USDC SDNY | Bennett, Michele |
| Malaga et al. v. General Motors LLC | 1:14-cv-04738-JMF | USDC SDNY | Malaga, Javier F. |
| Malaga et al. v. General Motors LLC | 1:14-cv-04738-JMF | USDC SDNY | Estencion, Estella |
| Markle v. General Motors LLC et al. | 1:14-cv-04662-JMF | USDC SDNY | Markle, Peyton |
| Mazzocchi v. General Motors LLC et al. | 1:14-cv-02714-JMF | USDC SDNY | Mazzocchi, Marie |
| McCarthy v. General Motors et al. | 1:14-cv-04758-JMF | USDC SDNY | McCarthy, Karen |
| McConnell v. General Motors | 1:14-cv-04270-JMF | USDC SDNY | McConnell, Katie Michelle |
| Nava v. General Motors LLC, et al. | 1:14-cv-04754-JMF | USDC SDNY | Nava, Sonia |
| Nettleton v. General Motors LLC et al. | 1:14-cv-04760-JMF | USDC SDNY | Nettleton Auto Sales, INC. |
| Phaneuf et al. v. General Motors LLC | 1:14-cv-03298-JMF | USDC SDNY | Phaneuf, Lisa |
| Phaneuf et al. v. General Motors LLC | 1:14-cv-03298-JMF | USDC SDNY | Smith, Adam |
| Phaneuf et al. v. General Motors LLC | 1:14-cv-03298-JMF | USDC SDNY | Garcia, Mike |
| Phaneuf et al. v. General Motors LLC | 1:14-cv-03298-JMF | USDC SDNY | Delacruz, Javier |
| Phaneuf et al. v. General Motors LLC | 1:14-cv-03298-JMF | USDC SDNY | Sileo, Steve |
| Phaneuf et al. v. General Motors LLC | 1:14-cv-03298-JMF | USDC SDNY | Bucci, Steven |
| Phaneuf et al. v. General Motors LLC | 1:14-cv-03298-JMF | USDC SDNY | Padilla, David |
| Phaneuf et al. v. General Motors LLC | 1:14-cv-03298-JMF | USDC SDNY | Cabral, Catherine |
| Phaneuf et al. v. General Motors LLC | 1:14-cv-03298-JMF | USDC SDNY | Cabral, Joseph |
| Phillip et al. v. General Motors LLC | 1:14-cv-04630-JMF | USDC SDNY | Phillip, Kyle |
| Phillip et al. v. General Motors LLC | 1:14-cv-04630-JMF | USDC SDNY | Torres, Evelyn |
| Phillip et al. v. General Motors LLC | 1:14-cv-04630-JMF | USDC SDNY | Kirkpatrick, Kelly |
| Phillip et al. v. General Motors LLC | 1:14-cv-04630-JMF | USDC SDNY | Berry, Steve |
| Phillip et al. v. General Motors LLC | 1:14-cv-04630-JMF | USDC SDNY | Johnson, Eslie |
| Phillip et al. v. General Motors LLC | 1:14-cv-04630-JMF | USDC SDNY | Berry, Diane |
| Ponce v. General Motors LLC | 1:14-cv-04265-JMF | USDC SDNY | Ponce, Martin |
| Powell v. General Motors LLC | 1:14-cv-04778-JMF | USDC SDNY | Powell, Amy |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Huff, Diana |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Wright, Linda |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Cave, Melissa |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Carden, Stephanie Renee |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Genovese, Kim |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Brooks, Penny |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Pickens, Judy |

8

## IN RE NEW GM VIS LITIGATION
## EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | NUMBER | COURT | PLAINTIFF |
|------|--------|-------|-----------|
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Cnossen, Diana |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Wyman, Robert |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Murray, Judy |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Ramirez, Esperanza |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Mancieri, Garrett S. |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Dail, Robert |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Laverdiere, Antonia |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Bernick, William |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Zivnuska, Philip |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Valdez, Yolanda |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Smith, Kimberly |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Graciano, Michael |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Tomlinson, Blair |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Cole, Laura |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Nelson, Norma Lee |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Claggion, Yolanda |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Wright, Alphonso |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Stocchi, Demealla |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Hansen, Patrick |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Gutchewsky, Cathy |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | England, William Jr. |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Mortel, Jane |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Barnes, Betty |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Romero, Bernadette |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Lambert, Marguerite |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | West, Lisa |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Taylor, Erik |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Hobby, Sarah |
| Ramirez et al. v. General Motors LLC | 1:14-cv-04267-JMF | USDC SDNY | Counts, April |
| Ratzlaff et al. v. General Motors LLC | 1:14-cv-04346-JMF | USDC SDNY | Barker, Patricia |
| Ratzlaff et al. v. General Motors LLC | 1:14-cv-04346-JMF | USDC SDNY | Ratzlaff, Daniel |
| Roach v. General Motors LLC et al. | 1:14-cv-04810-JMF ; | USDC SDNY | Roach, Rex |
| Robinson v. General Motors LLC | 1:14-cv-04699-JMF | USDC SDNY | Lewis, Richard |

9

DMSLIBRARY01:23416963.1

IN RE NEW GM VIS LITIGATION
EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | NUMBER | COURT | PLAINTIFF |
|---|---|---|---|
| Robinson v. General Motors LLC | 1:14-cv-04699-JMF | USDC SDNY | Robinson, Sara |
| Robinson v. General Motors LLC | 1:14-cv-04699-JMF | USDC SDNY | Helcl, John |
| Robinson v. General Motors LLC | 1:14-cv-04699-JMF | USDC SDNY | Petersen, Denise |
| Ross_J et al. v. General Motors LLC et al. | 1:14-cv-04756-JMF | USDC SDNY | Bellin, Robert |
| Ross_J et al. v. General Motors LLC et al. | 1:14-cv-04756-JMF | USDC SDNY | Ross, Janice |
| Ross_J et al. v. General Motors LLC et al. | 1:14-cv-04756-JMF | USDC SDNY | Chambers, George |
| Roush et al. v. General Motors LLC | 1:14-cv-04704-JMF | USDC SDNY | Roush, Jennifer |
| Roush et al. v. General Motors LLC | 1:14-cv-04704-JMF | USDC SDNY | Roush, Randall |
| Ruff et al. v. General Motors et al. | 1:14-cv-04764-JMF | USDC SDNY | Ruff, Lisa |
| Ruff et al. v. General Motors et al. | 1:14-cv-04764-JMF | USDC SDNY | Marx, Sherri |
| Rukeyser v. General Motors LLC | 1:14-5715-UA | USDC SDNY | Rukeyser, William L. |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Saclo, Ken |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Cohen, Mel |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Malone, Tiffany |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Orona, Dawn |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Teicher, Lisa |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Nagle, Sue |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Young, Robert |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Luthander, Robbie |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Holleman, Heather |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Clinton, Jeremy |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Tyson, Tommy |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Talbot, Dawn |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Heath, Tara |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Sloan, Sarah |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Condon, Bonnie |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Wilson, Derek |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Kielman, Sherry |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Levine, Sandra |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Glasgow, Jennifer |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Owens, Michael |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Doucette, Shawn |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Miller, Geraldine |

10

DMSLIBRARY01:23416963.1

IN RE NEW GM VIS LITIGATION
EXHIBIT 3 - 358 NAMED PLAINTIFFS KNOWN TO NEW GM

| CASE | NUMBER | COURT | PLAINTIFF |
|---|---|---|---|
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Wessel, Christa |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Maas, Pamela |
| Saclo et al. v. General Motors LLC et al. | 1:14-cv-04751-JMF | USDC SDNY | Stewart, Elizabeth |
| Salazar v. General Motors et al. | 1:14-cv-04859-JMF | USDC SDNY | Salazar III, Jesse |
| Salerno v. General Motors LLC et al. | 1:14-cv-04799-JMF | USDC SDNY | Salerno, Nicole |
| Santiago v. General Motors LLC | 1:14-cv-04632-JMF | USDC SDNY | Santiago, Maria Elena |
| Satele et al. v. General Motors LLC | 1:14-cv-04273-JMF | USDC SDNY | Onofre, Carlota |
| Satele et al. v. General Motors LLC | 1:14-cv-04273-JMF | USDC SDNY | Satele, Telso |
| Sesay et al. v. General Motors LLC et al. | 14-cv-6018 | USDC SDNY | Sesay, Ishmail |
| Sesay et al. v. General Motors LLC et al. | 14-cv-6018 | USDC SDNY | Yearwood, Joanne |
| Shollenberger v. General Motors LLC | 1:14-cv-04338-JMF | USDC SDNY | Shollenberger, Chris |
| Silvas et al. v. General Motors LLC | 1:14-cv-04342-JMF | USDC SDNY | Silvas, Charles |
| Silvas et al. v. General Motors LLC | 1:14-cv-04342-JMF | USDC SDNY | Silvas, Grace |
| Skillman v. General Motors LLC et al. | 1:14-cv-03326-JMF | USDC SDNY | Skillman, Meaghan |
| Smith, V v. General Motors LLC et al. | 1:14-cv-05338-JMF | USDC SDNY | Smith, Vickie |
| Spangler v. General Motors LLC | 1:14-cv-04755-JMF | USDC SDNY | Spangler, Randi |
| Stafford Chapman v. General Motors et al. | 1:14-cv-05345-JMF | USDC SDNY | Stafford-Chapman, Aletha |
| Stafford v. General Motors LLC | 1:14-cv-04808-JMF | USDC SDNY | Stafford, Richard |
| Taylor v. General Motors Company | 1:14-cv-04686-JMF | USDC SDNY | Taylor, John W. |
| The People of the State of California v. General Motors LLC | 30-2014-00731038-CU-BT-CXC | Orange Co. | California |
| Thomas Stevenson v. General Motors LLC | 1:14-cv-05137-JMF | USDC SDNY | Stevenson, Thomas |
| Turpyn et al. v. General Motors LLC et al. | 1:14-cv-05328-JMF | USDC SDNY | Turpyn, Janet |
| Turpyn et al. v. General Motors LLC et al. | 1:14-cv-05328-JMF | USDC SDNY | Turpyn, Richard |
| Villa et al. v. General Motors LLC et al. | 1:14-cv-04801-JMF | USDC SDNY | Villa, AmberLynn I. |
| Villa et al. v. General Motors LLC et al. | 1:14-cv-04801-JMF | USDC SDNY | Cohen, Jack |
| Villa et al. v. General Motors LLC et al. | 1:14-cv-04801-JMF | USDC SDNY | Bell, Helen |
| Villa et al. v. General Motors LLC et al. | 1:14-cv-04801-JMF | USDC SDNY | Armstrong, Caitlyn |
| Villa et al. v. General Motors LLC et al. | 1:14-cv-04801-JMF | USDC SDNY | Keenan, Frank |
| Witherspoon v. General Motors LLC et al. | 1:14-cv-04702-JMF | USDC SDNY | Witherspoon, Patrice |
| Woodward v. General Motors LLC et al. | 1:14-cv-04226-JMF | USDC SDNY | Woodward, Rudy |

11

DMSLIBRARY01:23416963.1

# Exhibit 4

EXHIBIT "4"

## INDIVIDUALS AND ENTITIES WHO RECEIVED
## DIRECT MAIL NOTICE OF THE 363 SALE

(i)     the attorneys for the U.S. Treasury,

(ii)    the attorneys for Export Development Canada,

(iii)   the attorneys for the agent under the Debtors' pre-petition secured term loan agreement,

(iv)    the attorneys for the agent under the Debtors' pre-petition amended and restated secured revolving credit agreement,

(v)     the attorneys for the statutory committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Creditors Committee") (if no statutory committee of unsecured creditors has been appointed, the holders of the fifty largest unsecured claims against the Debtors on a consolidated basis),

(vi)    the attorneys for the UAW,

(vii)   the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America,

(viii)  the United States Department of Labor,

(ix)    the attorneys for the National Automobile Dealers Association,

(x)     the attorneys for the ad hoc bondholders committee,

(xi)    any party who, in the past three years, expressed in writing to the Debtors an interest in the Purchased Assets and who the Debtors and their representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transaction contemplated in the MPA,

(xii)   non-Debtor parties to the Assumable Executory Contracts,

(xiii)  all parties who are known to have asserted any lien, claim, encumbrance, or interest in or on the Purchased Assets,

(xiv)   the Securities and Exchange Commission,

(xv)    the Internal Revenue Service,

(xvi)   all applicable state attorneys general, local environmental enforcement agencies, and local regulatory authorities,

(xvii)  all applicable state and local taxing authorities,

(xviii) the Federal Trade Commission,

(xix)   all applicable state attorneys general,

(xx)    United States Attorney General/Antitrust Division of the Department of Justice,

(xxi)   the U.S. Environmental Protection Agency and similar state agencies,

(xxii)  the United States Attorney's Office,

(xxiii) all dealers with current agreements for the sale or leasing of GM brand vehicles,

(xxiv)  the Office of the United States Trustee for the Southern District of New York,

(xxv)   all entities that requested notice in these chapter 11 cases under Bankruptcy Rule 2002,

(xxvi)  all other known creditors, and

(xxvii) all equity security holders of the Debtors of record as of May 27, 2009.

23406468v4