**JOSH DAVIS LAW FIRM**
Joshua P. Davis (*admission pending*)
1010 Lamar, Suite 200
Houston, Texas 77002
Telephone: (713) 337-4100
Facsimile: (713) 337-4101

*Attorneys for Doris Phillips*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re                                                   :        **Chapter 11**
                                                        :
**MOTORS LIQUIDATION COMPANY,** *et al.,*     :        Case No.: 09-50026 (REG)
    **f/k/a General Motors Corp.,** *et al.*   :
                                                        :        **(Jointly Administered)**
                                    **Debtors.**        :
                                                        :
-------------------------------------------------------------x


**OBJECTION TO GENERAL MOTORS LLC'S MOTION TO ENFORCE,
PURSUANT TO 11 U.S.C. 105 & 363, THE COURT'S JULY 5, 2009
SALE ORDER AND INJUNCTION AGAINST PLAINTIFFS IN
<u>PRE-CLOSING ACCIDENT LAWSUITS</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS .......................................................................................................... 2

INTRODUCTION .................................................................................................................... 3

PLAINTIFFS' OBJECTIONS.

    1. Plaintiffs' claims did not exist prior to the Sale Order.

    2. If the Court applies the Sale Order to Plaintiffs' claims New GM's fraud will be complete.

FACTUAL BACKGROUND ................................................................................................... 12

SUMMARY OF THE ARGUMENT ...................................................................................... 14

ARGUMENT ........................................................................................................................... 14

    I. The Sale Order does cover non-existent presale claims ........................................ 14

    II. New GM's "nothing-to-see-here" defense is fanciful ............................................. 16

    III. *Archer v. Warner's* expansive language is instructive—Plaintiffs' claims should proceed to discovery .............................................................................................. 17

CONCLUSION ....................................................................................................................... 18

CERTIFICATE OF SERVICE .............................................................................................. 19

TO THE HONORABLE COURT:

COME NOW Doris Powledge Phillips, f/k/a Doris Powledge, Plaintiff, Individually and as Representative of the Estate of Adam Powledge, deceased, the Estate of Rachel Powledge, deceased, the Estate of Isaac Powledge, deceased, the Estate of Christian Powledge, deceased, and the Estate of Jacob Powledge, deceased (collectively, "Plaintiffs"), complaining of General Motors Corporation n/k/a Motors Liquidation GUC Trust ("Old GM"), Respondent-Defendant, and Defendant General Motors LLC ("New GM") (collectively, "GM"), filing Plaintiffs' Objection to General Motors LLC's Motion Pursuant to 11 U.S.C. 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction Against Pre-Closing Accident Lawsuits and respectfully show the following:

> *"…[I]t is better to be guilty of manslaughter
> than of fraud about what is fair and just."*

## INTRODUCTION

**The Crash—**

1.     On October 18, 2005 a father and his four children were killed in a fiery one-car accident. That morning Adam Powledge was taking his children to school. As they drove along I-45 in Houston, Texas Adam lost control of his vehicle, a 2004 Chevy Malibu, and drove onto a grassy median. Unable to control the vehicle, the Malibu drove in an almost perfectly straight line until it was cut into two parts, down the middle, by a metal pole located at the center of the median. The car erupted in fire with Adam and the little children inside. These lives were unnecessarily taken from us because of GM's negligence and gross negligence.



The photographs taken just after the accident reveal that, while the airbags did not deploy, the airbag failure was not the cause of the crash.

**Underlying Litigation—**

2. On September 6, 2007 Dori Powledge filed suit, *Powledge, et al. v. General Motors Corp.*, Cause No. 07-CV-1040, alleging that an electrical malfunction caused a loss of control of the vehicle. During the litigation GM dismissed Plaintiffs' claims because "[her] theories require failures of both the cruise control and brake systems, as well as the inability to steer." Such a significant malfunction, according to GM, was implausible given that "[Plaintiffs] cannot demonstrate any defect **and any alleged 'recall'**" of the 2004 Malibu that would have contributed to the accident.

4

3. A cornerstone of GM's legal defense to the 2007 lawsuit was a particularly nefarious accusation—**that Adam Powledge was not the victim of a GM defect, but was a murderer and intended to kill himself and his children.**[1] This defense was used throughout the litigation as a means of undermining Plaintiffs' case. While Plaintiffs have no doubt that the vehicle was not intentionally crashed by Adam Powledge, GM's (both Old and New) concealment of the issues with the vehicle described below gave such a preposterous theory a shred of credibility that it never deserved. If only because, in the absence of knowledge about the defects in the vehicle that were known to GM at the time, it is hard to fathom why a vehicle would behave the way it did. Of course, knowing what Plaintiffs know about the defects today, it is certain that design defects, known to GM at the time, caused, or at a minimum significantly contributed to, this tragic event.

**Recalls of 2014—**

4. We now know that GM was aware that the power steering system on the 2004 Malibu—identical to the 2004-2007 Saturn Ion and part of the March 31, 2014 recall—could cause a loss of control. But GM put off a recall and never disclosed this information during the 2007 litigation. And now, in the days since Plaintiffs' Original Bill of Review and Original Petition were filed, we know of even more defects. Below is

---

[1] Exhibit A, *correspondence from A. Zambrano* dated July 27, 2010 at pp. 7; Exhibit B, *Expert Report of S. Syson* dated July 14, 2008, pp. 5 - 15; and Exhibit C, *Rebuttal Assessment Report of S. Syson*, pp. 2, 5, and 6; *See also* Exhibit D, *Report of B. Bowman* dated February 18, 2009, pp. 3.

a chart of all GM recalls affecting Plaintiffs' 2004 Malibu that were the subject of this crash:

| Recall Date | Model | Reason(s) | Hazard | What is the recall |
|---|---|---|---|---|
| 5/15/14 | 2004-2012 Malibu | Increased resistance in the Body Control Module (BCM). This condition can cause brake lamp failure, cruise control failure, traction control failure, braking assist failure, electronic stability control failure | Any of the failure conditions increase the risk of a crash | GM will notify owners and dealers, attach wiring harness to BCM with a spacer, apply dialectic lubricant to both the BCM and harness connector, and will relearn the brake pedal home position |
| 3/31/14 | 2004-2006 Malibu | Possible loss of electric power steering (EPS) assist could occur at any time while driving | If power steering is lost, greater driver effort required to steer at low speeds, increasing the risk of a crash | At time of recall, parts to fix problem were not currently available. Around April 28, 2014, GM will send bulletin for owners. |
| 6/30/14 | 1997-2004 Malibu | Unintended ignition key rotation | Undefined | |

Given the recent trickle of recalls involving the 2004 Malibu, Plaintiffs would not be surprised to see additional recalls announced. Furthermore, given GM's past dishonesty, discovery may yield even more concealed defects.

6



The photo above shows the Malibu's tire track marks as it headed straight into the metal pole.

5.      While the Cobalt/Ion/Saturn ignition switch recall in February has received greater media attention, the Malibu is now the most recalled GM vehicle for 2014.[2] According to GM, the 5/15/14 recall listed above is the result of a "problem with the wiring harness associated with the brake lamp."[3] This can cause "the vehicles' brake lights to illuminate when the brakes aren't being engaged, or, on the other hand, **prevent the lights from illuminating when the driver hits the brakes**."[4] Importantly for

---

[2] CNNMoney.com, "*Chevy Malibu tops GM's recall parade,*" May 23, 2014, http://features.blogs.fortune.cnn.com/2014/05/23/chevy-malibu-tops-gms-recall-parade/ (last visited 5-30-14).

[3] Yahoo!News, "*Huge GM Recall: Chevrolet Corvette, Malibu, Silverado, Tahoe, Cadillac CTS, GMC Sierra, More,*" May 15, 2014, https://autos.yahoo.com/news/huge-gm-recall-chevrolet-corvette-141857653.html?soc_src=mediacontentsharebuttons (last visited 5-30-14).

[4] *Id.*

7

Plaintiffs' claims, the problem can also "disable important systems like **electronic stability control, traction control, panic braking assist, and cruise control**."[5] These systems were the primary areas that we know Plaintiffs' Malibu demonstrated a lack of control prior to the crash.[6]

6. We also know that the reason why witnesses to the crash—whose testimony was heavily relied upon by GM to support GM's murder-suicide defense—testified that prior to the crash Plaintiffs' Malibu's "brake lights never came on…."[7] But the reason why the brake lights never came on was because the problems with the "wiring harness associated with the brake lamp" can "**prevent the lights from illuminating when the driver hits the brakes**." But rather than GM disclosing this known electrical issue in, at the latest, 2009 or 2010 as the litigation was ongoing, the lack of brake lights being observed _**was used as the basis for accusing Adam Powledge of murdering his children.**_

**GM's Fraud—**

7. When did GM know about this potentially fatal flaw concerning the wiring harness? In 2009, during the height of the 2007 litigation.[8] From USA Today:

---

[5] *Id.*
[6] Ex. B, pp. 23. Plaintiffs' expert from the 2007 Lawsuit concluded a "mechanical/electrical or environmental failure in the design" was a contributing factor to the crash. Additionally, the expert concluded that the "brake system, throttle control, vehicle speed control and cruise control system is defectively designed…" These are the exact components that are impacted by GM's most recent Malibu recall and that effected Plaintiffs' 2004 Malibu.
[7] Ex. A, pp.2 (*citing* L. Gilman's deposition, 19:4-20).
[8] USA Today, "*Documents show another delayed GM recall*," May 29, 2014, http://www.usatoday.com/story/money/cars/2014/05/29/another-delayed-gm-recall/9740545/ (last visited 5-30-14).

8

> The documents, filed Thursday, show that [in 2009] GM recalled about 8,000 Pontiacs from the 2005 and 2006 model years because the brake lights might not work when the driver stepped on the brake pedal. But the company didn't recall later-model G6s or the Chevrolet Malibu and Saturn Aura until three weeks ago. The cars are nearly identical.

USA Today, "*Documents show another delayed GM recall*," May 29, 2014.

8. As noted above, the problem not only impacts the brakes, but "can affect some of a car's other functions. If the cruise control is on, drivers may have to push harder on the brake pedal to get it to disengage…. Also, the cars' traction control, electronic stability control and panic braking assist features, all designed to prevent crashes or lessen their severity, could become disabled."[9] None of this information was provided to Plaintiffs during the 2007 Litigation, but was withheld.

9. Then, on June 30, 2014, GM announced another recall related to the subject Malibu, an ignition switch recall similar to GM's February recall.[10] In addition to hindering the braking and steering systems, the ignition switch defect will prohibit the airbags from deploying.[11] By all accounts, Plaintiffs' Malibu did not deploy airbags prior to impact.

10. Now, years later, after bankruptcy forced Plaintiffs and other tort plaintiffs to accept penny-on-the-dollar settlements, GM finally disclosed this information—as it continues to trickle out—that supports Plaintiffs' theory of the case. Rather than a lack of

---

[9] *Id.*
[10] Wall Street Journal, *GM to Recall 8.45 Million More Vehicles in North America*, June 30, 2014, http://online.wsj.com/articles/gm-to-recall-7-6-million-more-vehicles-in-u-s-1404153705?cb=logged0.442486526677385 (last visited 7-6-14)("The proposed fix is the same one the company once considered using to repair older model Chevrolet Cobalt compact cars and

9

evidence concerning "any defect and any alleged 'recall,'" GM had mountains of evidence that demonstrate its drive-by-wire electrical systems—including the power steering, cruise control, and braking systems—were harming thousands of GM customers nationwide.

11.   But both Old and New GM fraudulently concealed this information, and lied under oath regarding related electrical failures. In the course of this fraud, GM conspired in bankruptcy, waiting to disclose this information until well after the bankruptcy sale. In hindsight, the financial collapse of 2008-2009 created the perfect opportunity for GM to shed the many lawsuits it was facing as it actively concealed key evidence. Certainly it would be more difficult to justify a taxpayer-funded bailout if GM disclosed the truth—that it put profits ahead of safety.

12.   For example, <u>Exhibit D</u> is a report by Bruce Bowman, a GM expert and former GM engineer utilized by GM in the 2007 Litigation, dated February 18, 2009. In the report Mr. Bowman states that there is nothing wrong with the brake system of the subject Malibu. We know that that statement is not accurate and was not accurate when made. Based on the referenced USA Today article quoted *supra*, GM had actual knowledge of the risks the 5/31/14 recall creates to "the cars' traction control, electronic stability control and panic braking assist features."[12]

---

other small cars, which later were found to have a defective ignition switch that when jarred could turn off power to air bags, power steering and power brakes.").
[11] *Id.*
[12] USA Today, "*Documents show another delayed GM recall*," May 29, 2014, http://www.usatoday.com/story/money/cars/2014/05/29/another-delayed-gm-recall/9740545/ (last visited 5-30-14).

13.     Additionally, the USA Today article highlights that GM was aware of this product defect as early as 2009 when "GM recalled about 8,000 Pontiacs from the 2005 and 2006 model years" with "nearly identical" electrical systems to the subject Malibu.[13] But GM, when responding to Plaintiffs' *Third Set of Requests for Production* in the 2007 Litigation, never mentioned anything related to the Pontiac recall or the Cobalt.[14] Responses to these requests were never amended to include the Pontiac recall, or disclose information GM had in its possession at the time the request was made, but purposefully withheld the information.[15] It should be noted that Plaintiffs' underlying claims against GM were not resolved until August 9, 2010.

14.     New GM, in its Motion to Enforce, claims that the power steering and BCM recall of 5/15/14 are "inapplicable" to Plaintiffs' Malibu.[16] Plaintiffs, this Court, and the public writ large can no longer accept GM's unsupported statements of purported fact.[17] Much like New GM's buckshot approach to litigating, New GM has no idea what is true and what is false.

---

[13] *Id.*

[14] Exhibit E, *Defendant General Motors Corp.'s Amended Objections and Responses to Plaintiffs' Third Set of Requests for Production*, pp. 5-6.

[15] Reuters, "*Two GM lawyers, quality control executive among those pushed out over switch*," June 9, 2014, http://www.reuters.com/article/2014/06/09/us-gm-recall-dismissed-idUSKBN0EK1XY20140609 (last visited 7-7-14).

[16] *New GM's Motion to Enforce*, Doc. No. 12807, pp. 18.

[17] Consumer Reports, "*GM recall puts bad ignition switches back in some cars: Automaker issues a new recall to fix its recall*," August 8, 2014, http://www.consumerreports.org/cro/news/2014/08/gm-recall-puts-bad-ignition-switches-back-in-some-cars/index.htm (last visited 8-14-14).

11

**FACTUAL BACKGROUND**

15. On October 18, 2005 Adam Powledge was driving his four children, Isaac, Rachel, Christian, and Jacob to school in the family's 2004 Chevrolet Malibu. As Adam approached the 4600 Block of I-45 North in Houston, Texas, near the intersection of Holland Road, he lost control of the vehicle. Witnesses described the Malibu traveling at a high rate of speed, even as other vehicles began slowing for approaching traffic. As the Malibu drove off the interstate and onto the median it made a straight-line that was so direct in its trajectory that there is one explanation for its course—a vehicle malfunction.

16. Adam, Rachel, Isaac, Christian and Jacob died at the scene. The wreckage was so severe that valuable evidence was lost. As traumatic as the accident was, GM's subsequent actions have caused further trauma to Plaintiffs.

17. On September 6, 2007 Plaintiffs filed suit against GM asserting that the crash was the result of an electrical malfunction.[18] During the course of the litigation GM blamed Adam for the crash—GM's primary legal defense was that Adam committed murder-suicide and acted purposefully. On June 1, 2009 GM entered bankruptcy. A government orchestrated purchase allowed New GM to purchase assets and avoid liabilities of Old GM.

18. Plaintiffs were ordered to mediate, and subsequently agreed to a confidential settlement based on a fundamental belief—that GM was litigating in good faith and adhering to due process by producing relevant, discoverable evidence and

---

[18] Exhibit F, *Plaintiffs' Fourth Amended Petition, Powledge, et al v. General Motors Corp.,* Cause No. 07-CV-1040 (July 3, 2008).

testifying truthfully while under oath. That belief was misplaced. Rather than conducting discovery in a forthright manner, GM was committing fraud by withholding key documents concerning the electrical and mechanical systems of Plaintiffs' Malibu.

19. On March 31, 2014 GM notified the National Highway Safety Administration of a safety recall that GM initiated due to a defect in the power steering system. Plaintiffs' 2004 Chevy Malibu driven by Adam on October 18, 2005 was included in the list of vehicles that were recalled. Then, on May 15, 2014 GM recalled Plaintiffs' Malibu concerning a "problem with the wiring harness associated with the brake lamp."[19] This can cause "the vehicles' brake lights to illuminate when the brakes aren't being engaged, or, on the other hand, **prevent the lights from illuminating when the driver hits the brakes**."[20] Importantly for Plaintiffs' claim, the problem can also "disable important systems like **electronic stability control, traction control, panic braking assist, and cruise control**."[21] And now, on June 30, 2014 GM made another recall concerning the 2004 Malibu concerning the ignition switch.

20. Contrary to GM's smears and accusations, Adam did nothing wrong—he was the innocent victim of GM's negligence, gross negligence and cover-up. Plaintiff and her family, as they mourned this unspeakable loss, had to contend with these baseless accusations. GM knowingly made these accusations as it withheld evidence that proves Adam Powledge did not murder his children. GM's conduct—and its choice to blame

---

[19] Yahoo!News, "*Huge GM Recall: Chevrolet Corvette, Malibu, Silverado, Tahoe, Cadillac CTS, GMC Sierra, More*," May 15, 2014, https://autos.yahoo.com/news/huge-gm-recall-chevrolet-corvette-141857653.html?soc_src=mediacontentsharebuttons (last visited 5-30-14).
[20] *Id.*
[21] *Id.*

Adam and conceal evidence that proves Plaintiffs' claims—was intentional and reckless. The conduct under the circumstances was extreme and outrageous, causing Plaintiff Doris Powledge Phillips extreme emotional distress. These constitute Plaintiffs' claims, and they did not exist prior to the Sale Order. Plaintiffs have been victimized twice. Once by Old GM's negligence, and another time by New GM's deceit and dishonesty—or in legal parlance **fraud.**

## SUMMARY OF THE ARGUMENT

21. GM committed fraud and concealed material evidence during the 2007 litigation. Now GM asks that this Court facilitate and sanction its fraud. Our judicial system's credibility is at stake. If GM's fraudulent conduct is excused through enforcement of the Sale Order, and without the benefit of discovery, a dangerous precedent is set. Litigants will be encouraged to suppress or misrepresent evidence, hoping to ride out litigation. Fraudulent concealment in bankruptcy will become routine based on a cold-hearted cost benefit analysis. This Court must set the price for fraud as high as possible.

## ARGUMENT

### I. The Sale Order does not cover post-sale fraud claims.

22. New GM argues that Plaintiffs' underlying accident and the alleged product defect claim is subject to the Sale Order. But that is not Plaintiffs' claim today. Plaintiffs' fraud claim concerns injuries that she was completely unaware of until just this year. GM was orchestrating a fraud, withholding documents, and undermining Plaintiffs' ability to

14

meet the evidentiary burdens of her product defect case. GM's fraud facilitated a settlement based on lies.

23.     Like the plaintiffs in *In re Lawrence*, Plaintiffs' claims are "not directed at the sale, but damages arising from non-disclosure of material information known to the defendants..." *In re Lawrence*, 293 F.3d 615, 624 (2d Cir. 2002). And like that court "this Court [should find] that defendants are engaging in tactics to obfuscate the record ... [i]f there were misrepresentations at the time of the sale, this Court approved such sale not fully knowing all the salient facts" and Plaintiffs' fraud claims should proceed. *Id.*

24.     In *Lawrence*, the plaintiffs complained that "they should not have to forfeit their right to press their [fraud] claims simply because they sold their shares in bankruptcy court…" *Id.* at 621. In that case the district court refusal to recharacterize the plaintiffs' claims as a collateral attack on the sale order under Rule 60(b)(3) was reversed because such an outcome would "severely limit the recourse available to plaintiffs who uncover a fraud more than a year after the purchase in question.…" *Id.* The *Lawrence* plaintiffs were entitled to attack the sale order due to the fact that "[t]he alleged fraud was not, and could not with due diligence have been, discovered during the original Sale Order proceedings." *Id.* at 625. And while the holding in *Lawrence* concerns Rule 60(b)—that includes a 1-year limitation—Plaintiffs' injuries were "inherently undiscoverable [because the] nature [of GM's fraud made it] unlikely to be discovered within the prescribed limitations period despite due diligence." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 358 (5th Cir. 2008)(*quoting S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996)).

15

25. Plaintiffs' claims were not subject to the Sale Order—they are the result of GM's conduct, and the discovery of that conduct—post Sale Order.

## II. New GM's "nothing-to-see-here" defense is fanciful.

26. Plaintiffs' fraud claim did not exist prior to the Sale Order, as GM (both Old and New) fraudulently induce Plaintiffs into an unfair settlement and the public and this Court into embracing a sale that was rotten at its core, based on lies, half-truths, and glaring omissions. Looking back, everyone can appreciate why "[i]t was an absolute condition of New GM's purchase offer that New GM not take on all of Old GM's liabilities."[22] New GM—comprised of the same people that concealed the defects in Plaintiffs' vehicle—appreciated how badly New GM needed to avoid the future consequences of presale accidents.

27. New GM's Motion to Enforce suggests business as usual. Plaintiffs' counsel "continue to file (sic) lawsuits against New GM [] as if the Sale Order and Injunction does not exist.…"[23] New GM's argument requires a level of cognitive dissonance that is mind-numbing in its scope: We—the debtor and buyer in a protected, government backed and financed sale—colluded, benefiting from fraudulently concealed information. Our fraud ensured the trivialization of lives destroyed by GM's deceit, and allowed the underpaying of meritorious product defect claims. But it is "[a] critical element of protecting the **integrity of the bankruptcy sale process** [] to ensure that New GM, **as a good faith purchaser for substantial value**, receive[s] the benefit of its Court-

---

[22] *New GM's Motion to Enforce*, Doc. No. 12807, pp. 4.
[23] *Id.* at 3.

approved bargain."[24] So… Judge, please rubber-stamp our fraud. This is New GM's position. That New GM can use "integrity" to describe its insider purchase of assets minus liabilities while committing a fraud on the Court and Plaintiffs is remarkable.

28.  GM has lost sight of the fact that the Sale Order was to allow a seemingly honest, yet financially struggling, enterprise to survive as a pillar of the American economy. The Section 363 sale was never intended to be a vehicle to avoid the consequences for years of abuse, neglect, and conscious indifference to the American consumer.

### III. *Archer v. Warner's* expansive language is instructive—Plaintiffs' claims should proceed.

29.  In *Archer v. Warner* the Supreme Court considered whether a creditor could pursue a fraud claim, even after reaching a settlement.[25] Citing to *Brown v. Felsen*, 442 U.S. 127, 129, 99 S. Ct. 2205, 2208, 60 L. Ed. 2d 767 (1979), the Supreme Court held that while "the Archers' settlement agreement and releases may have worked a kind of novation, [] that fact does not bar the Archers from showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud.…'"[26] "'Congress intended the fullest possible inquiry' to ensure that 'all debts arising out of' fraud are 'excepted from discharge,' **no matter what their form**."[27]

30.  GM's Sale Order is *sui generis*, for certain, but the extreme nature of GM's fraud and conspiracy requires a unique remedy. At a minimum, Plaintiffs are entitled to

---

[24] *Id.* at 5.
[25] *Id.*
[26] *Id.*

conduct further discovery concerning their fraud claims.

**CONCLUSION**

31. Contrary to New GM's suggestion, Plaintiffs are not eligible for the Feinberg Protocol. Plaintiffs' 2004 Malibu Classic is not included. New GM's suggestion that Plaintiffs have a voluntary remedy that New GM is providing—out of the kindness of its corporate innards—is inaccurate. The only remedies available to Plaintiffs are the courts.[28]

32. Plaintiffs' due process rights have been prejudiced by GM's fraud. Plaintiffs respectfully request a few moments of the Court's time to ensure that Plaintiffs' unique claims are addressed. Plaintiffs require an expanded briefing schedule and discovery in order to more adequately address New GM's Motion to Enforce.

                Respectfully submitted,

                **JOSH DAVIS LAW FIRM**

                By:   /s/ Joshua P. Davis
                Joshua P. Davis
                    State Bar No. 24055379
                    Federal Bar No. 1109971
                1010 Lamar, Suite 200
                Houston, Texas 77002
                (713) 337-4100/Phone
                (713) 337-4101 /Fax
                josh@thejdfirm.com
                *Attorney-in-Charge for Plaintiffs*

---

[27] *Id.*
[28] This Court should be aware that Plaintiffs' have, until now, pursued their claims against New GM in state and federal district Court, and not bankruptcy Court, based on GM's explicit exclusion of tort claimants from its original Motion to Enforce. Clearly, GM has reversed its position.