**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**MOTORS LIQUIDATION COMPANY,** *et al.*, f/k/a General Motors Corp., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

**RESPONSE OF WILMINGTON TRUST COMPANY, AS TRUSTEE FOR AND ADMINISTRATOR OF THE MOTORS LIQUIDATION COMPANY GENERAL UNSECURED CREDITORS TRUST, TO ROGER DEAN GILLISPIE'S MOTION FOR LEAVE TO PURSUE CLAIMS AGAINST GENERAL MOTORS, LLC, OR, ALTERNATIVELY, TO FILE A POST-BAR-DATE PROOF OF CLAIM IN THE <u>MOTORS LIQUIDATION COMPANY BANKRUPTCY</u>**

<div align="right">

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Wilmington Trust Company, as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust*

</div>

August 19, 2014

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 3

    I.     Mr. Gillispie's Criminal Conviction In 1991 ................................................. 3

    II.    This Court's July 2009 Sale Order .............................................................. 4

    III.   No Proof Of Claim Is Filed By Mr. Gillispie Prior To The November 2009 Bar
         Date ............................................................................................................... 4

    IV.   In April 2012, Mr. Gillispie's Criminal Conviction Is Vacated ................... 5

    V.    In December 2013, Mr. Gillispie Files Suit Against "GM" For Alleged Torts By
         GM Personnel ............................................................................................... 6

    VI.   In February 2014, New GM Demands That Mr. Gillispie "Immediately
         Discontinue" Any Litigation Against It ....................................................... 7

    VII.  In June 2014, Mr. Gillispie Moves For Leave To Pursue Claims Against New
         GM Or To File A Post-Bar-Date Proof Of Claim To Pursue Relief From Old
         GM's Estate ................................................................................................. 7

    VIII. The GUC Trust's Limited Appearance To Respond To Mr. Gillispie's Motion .......... 7

ARGUMENT .................................................................................................................. 8

    I.     Because Mr. Gillispie Had No Cognizable "Claim" Under The Bankruptcy Code
         Until Years After Entry Of The Sale Order, The Sale Order Cannot Be Enforced
         To Bar Mr. Gillispie's Suit Against New GM ............................................. 8

         A.   Mr. Gillispie Had No Cognizable "Claim" Under The Bankruptcy Code
              Until Years After The Entry Of The Sale Order In July 2009 ............................ 9

         B.   Because Mr. Gillispie Had No Cognizable "Claim" Under The
              Bankruptcy Code Until After Entry Of The Sale Order, Mr. Gillispie's
              Due Process Rights Would Be Violated If The Sale Order Were Used To
              Bar His Assertion Of Any Causes Of Action Against New GM ...................... 14

i

## TABLE OF CONTENTS
### (Continued)

**Page**

II.    If Mr. Gillispie Were Deemed To Have Had A Cognizable "Claim" Under The Bankruptcy Code Prior To Entry Of The Sale Order, New GM Would Be The Only Possible Defendant For Mr. Gillispie's Causes Of Action In The Civil Action ........................................................................................................... 16

    A.    If Mr. Gillispie Were Deemed To Have Had A Pre-Sale Claim And To Have Received Adequate Notice Of The Sale, He Would Have No Cause Of Action Against New GM Or Old GM ................................................ 17

    B.    Assuming *Arguendo* That Mr. Gillispie Had A Pre-Sale Claim But Did Not Receive Adequate Notice Of The Sale, Due Process Requires That He Be Allowed To Proceed Against New GM ................................................... 21

CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Armstrong v. Floyd Cnty.*,
   2013 WL 8711442 (N.D. Ga. Dec. 3, 2013)........................................................ 11, 12

*Atlas v. Chrysler, LLC (In re TALT)*,
   2010 WL 2771841 (Bankr. S.D.N.Y. July 13, 2010) .................................... 19, 20, 21

*Babcock v. Jackson*,
   12 N.Y.2d 473 (1963) .......................................................................................... 11

*Bianco v. Erkins (In re Gaston & Snow)*,
   243 F.3d 599 (2d Cir. 2001) ............................................................................ 10, 11

*Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*,
   221 B.R. 113 (D.N.J. 1998) ................................................................................... 12

*Callaway v. Nu-Cor Auto. Corp.*,
   166 Ohio App. 3d 56 (Ct. App. 2006) ................................................................. 1, 12

*Canfield v. Van Atta Buick/GMC Truck*,
   127 F.3d 248 (2d Cir. 1997) ............................................................................ 18, 19

*Carroll v. Henry Cnty.*,
   336 B.R. 578 (N.D. Ga. 2006) ............................................................................... 11

*Compak Cos. LLC v. Johnson*,
   415 B.R. 334 (N.D. Ill. 2009) ............................................................................. 3, 22

*D'Ambrosio v. Marino*,
   747 F.3d 378 (6th Cir. 2014) ...................................................................... 1, 10, 11

*Doolittle v. Cnty. of Santa Cruz (In re Metzger)*,
   346 B.R. 806 (Bankr. N.D. Cal. 2006) ................................................................. 3, 22

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
   871 F. Supp. 2d 143 (E.D.N.Y. 2012) ......................................... 2, 13, 15, 16, 17

*Epstein v. Official Comm. of Unsecured Creditors of the Estate of Piper Aircraft
   Corp. (In re Piper Aircraft Corp.)*,
   58 F.3d 1573 (11th Cir. 1995) ............................................................................. 14

iii

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Froehlich v. Ohio Dep't of Mental Health,*
871 N.E.2d 1159 (Ohio 2007) ............................................................................. 1, 12

*Gabauer v. Chemtura Corp. (In re Chemtura),*
505 B.R. 427 (S.D.N.Y. 2014) ............................................................................. 14, 16

*Gillispie v. Timmerman-Cooper,*
835 F. Supp. 2d 482 (S.D. Ohio 2011) ................................................................. 5

*Heck v. Humphrey,*
512 U.S. 477 (1994) ................................................................................. 1, 10, 11

*Hutsell v. Sayre,*
5 F.3d 996 (6th Cir. 1993) ..................................................................................... 11

*In re AMR Corp.,*
492 B.R. 660 (Bankr. S.D.N.Y. 2012) ................................................................. 20

*In re BGI, Inc.,*
476 B.R. 812 (Bankr. S.D.N.Y. 2012) ................................................................. 20

*In re Enron Corp.,*
2003 WL 1889042 (Bankr. S.D.N.Y. Apr. 8, 2003)............................................. 21

*In re Enron Corp.,*
2007 WL 610404 (Bankr. S.D.N.Y. Feb. 23, 2007)............................................. 20

*In re GM Corp.,*
407 B.R. 463 (Bankr. S.D.N.Y. 2009)............................................................. 4, 13, 16

*In re Motors Liquidation Co.,*
462 B.R. 494 (Bankr. S.D.N.Y. 2012) ................................................................. 19

*In re Ritchie Risk-Linked Strategies Trading (Ir.) Ltd.,*
471 B.R. 331 (Bankr. S.D.N.Y. 2012)....................................................... 2, 18, 22

*In re TWA,*
322 F.3d 283 (3d Cir. 2003) ................................................................................. 14

*Jenkins v. A.T. Massey Coal Co., Inc. (In re Jenkins),*
410 B.R. 182 (Bankr. W.D. Va. 2008) ................................................................. 12

*Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.),*
600 F.3d 135 (2d Cir. 2010) ................................................................................. 15

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*LTV Steel Co. v. Shalala (In re Chateaugay Corp.),*
    53 F.3d 478 (2d Cir. 1995) ................................................................. 9, 11

*McCune v. City of Grand Rapids,*
    842 F.2d 903 (6th Cir. 1988) .............................................................. 11

*Metal Founds. Acquisition, LLC v. Reinert (In re Reinert),*
    467 B.R. 830 (Bankr. W.D. Pa. 2012) ................................................ 3, 22

*Mich. Self-Insurers' Sec. Fund v. DPH Holdings, Corp. (In re DPH Holdings, Inc.),*
    434 B.R. 77 (S.D.N.Y. 2010).............................................................. 18, 19

*Midland Cogeneration Venture LP v. Enron Corp.,*
    419 F.3d 115 (2d. Cir. 2005) .............................................................. 2, 19

*Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.),*
    467 B.R. 694 (S.D.N.Y. 2012).................................................................*passim*

*Morgan Olson LLC v. Frederico (In re Grumman Olson Indus., Inc.),*
    445 B.R. 243 (Bankr. S.D.N.Y. 2011)................................................. 22

*Motors Liquidation Co. v. JP Morgan Chase Bank (In re Motors Liquidation Co.),*
    755 F.3d 78 (2d Cir. 2014) ................................................................. 21

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950)............................................................................ 15

*Pension Benefit Guar. Corp. v. Oneida Ltd.,*
    562 F.3d 154 (2d Cir. 2009) ............................................................... 9

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.,*
    507 U.S. 380 (1993)............................................................................ 18, 19

*Polycel Structural Foam, Inc. v. Pool Builders Supply of the Carolinas (In re Polycel*
    *Liquidation, Inc.),*
    2007 WL 77336 (D.N.J. Jan. 9, 2007)................................................ 3, 22

*Schwinn Cycling & Fitness, Inc. v. Benonis (In re Schwinn Bicycle Co.),*
    210 B.R. 747 (Bankr. N.D. Ill. 1997) ................................................. 14

*State v. Gillispie,*
    1993 WL 10927 (Ohio Ct. App. Jan. 21, 1993),
    *leave to appeal denied*, 616 N.E.2d 504 (Ohio 1993) ........................... 3

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*State v. Gillispie*,
  1995 WL 41334 (Ohio Ct. App. Feb. 1, 1995),
  *appeal not allowed*, 650 N.E.2d 479 (Ohio 1995) ..................................................... 3

*State v. Gillispie*,
  2012 WL 1264496 (Ohio Ct. App. Apr. 13, 2012) ........................................... 3, 5, 6

*State v. Gillispie*,
  No. 1990 CR 02667 (Ohio Ct. C.P. Sept. 17, 1999),
  *aff'd*, 2002 WL 471866 (Ohio Ct. App. Mar. 29, 2002),
  *appeal not allowed*, 770 N.E.2d 1050 (Ohio 2002) .................................................. 3

*State v. Gillispie*,
  No. 1990 CR 02667 (Ohio Ct. C.P. July 9, 2008) ..................................................... 3

*Statek v. Devel. Specialists, Inc. (In re Coudert Brothers LLP)*,
  673 F.3d 180 (2d Cir. 2012) ................................................................................... 11

*Sykes v. Anderson*,
  625 F.3d 294 (6th Cir. 2010) ................................................................................. 11

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
  549 U.S. 443 (2007) ................................................................................................. 9

*United States v. LTV Corp. (In re Chateaugay Corp.)*,
  944 F.2d 997 (2d Cir. 1991) ................................................................. 2, 9, 13, 14

*Wallace v. Kato*,
  549 U.S. 384 (2007) ............................................................................................... 10

*Waterman Steamship Corp. v. Aguiar (In re Waterman Steamship Corp.)*,
  141 B.R. 552 (Bankr. S.D.N.Y. 1992),
  *vacated on other grounds*, 157 B.R. 220 (S.D.N.Y. 1993) ............................... 14, 15

### Statutes

11 U.S.C. § 101(5)(A) .............................................................................................. 1, 8

11 U.S.C. § 363 ..................................................................................................... *passim*

42 U.S.C. § 1983 ................................................................................................... *passim*

Wilmington Trust Company ("WTC"), as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust (the "GUC Trust"), respectfully submits this memorandum of law in response to Roger Dean Gillispie's motion for leave to pursue tort claims against General Motors, LLC ("New GM"), or, in the alternative, to file a post-bar-date Proof of Claim in the bankruptcy proceedings of Motors Liquidation Company ("MLC"), formerly known as General Motors Corporation ("Old GM").

## INTRODUCTION

The sole issue on this motion is whether Mr. Gillispie's causes of action under 42 U.S.C. § 1983 ("Section 1983")[1] and under Ohio common law are properly directed against New GM or the Old GM bankruptcy estate. Those causes of action arise from alleged torts committed by Mr. Gillispie's former co-workers at GM, who allegedly contributed to his wrongful imprisonment. Under any scenario, the only possible defendant for Mr. Gillispie's causes of action is New GM.

There is no dispute that Mr. Gillispie had been convicted of rape and was incarcerated when this Court entered its order approving the sale of substantially all of Old GM's assets to New GM (the "Sale Order") on July 5, 2009. It was not until an Ohio state court vacated his criminal conviction on April 13, 2012 that Mr. Gillispie had any conceivable causes of action under federal or state law for torts allegedly committed by GM personnel. *See Heck v. Humphrey*, 512 U.S. 477 (1994); *see also D'Ambrosio v. Marino*, 747 F.3d 378, 384-86 (6th Cir. 2014); *Froehlich v. Ohio Dep't of Mental Health*, 871 N.E.2d 1159, 1162 (Ohio 2007); *Callaway v. Nu-Cor Auto. Corp.*, 166 Ohio App. 3d 56, 64 (Ct. App. 2006). Indeed, case law interpreting Section 1983 actions and the Ohio common law at issue are clear that even contingent claims under such federal and state laws could not have accrued until Mr. Gillispie's criminal

---

[1]    Section 1983 creates a federal civil cause of action for any person deprived of a constitutional right under color of law. *See* 42 U.S.C. § 1983.

conviction was vacated.  As Mr. Gillispie argues in his brief (*see* Dkt. 12727 at 7-14), he thus had no cognizable claim in this bankruptcy proceeding until years after entry of the Sale Order. *See* 11 U.S.C. § 101(5)(A); *United States v. LTV Corp. (In re Chateaugay Corp.) (Chateaugay I"*), 944 F.2d 997, 1003 (2d Cir. 1991).

Because Mr. Gillispie had no cognizable claim in this bankruptcy proceeding until after entry of the Sale Order, it would violate his due process rights to use the Sale Order to bar his suit against New GM for alleged violations of Section 1983 and Ohio common law.  *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 155 (E.D.N.Y. 2012); *Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*, 467 B.R. 694, 708 (S.D.N.Y. 2012).  Moreover, because Mr. Gillispie never had a pre-petition claim, he has no basis for seeking recovery from "Old GM's estate" (Dkt. 12727 at 16), much less the GUC Trust.

Even if Mr. Gillispie were somehow deemed to have had a cognizable claim in this bankruptcy proceeding prior to entry of the Sale Order in July 2009 (a "pre-sale claim"), New GM would be the only possible defendant for Mr. Gillispie's causes of action.  On the one hand, if Mr. Gillispie had a pre-sale claim and was provided with adequate notice of the bankruptcy proceeding and the proposed entry of the Sale Order, he would have no cause of action against New GM or the Old GM bankruptcy estate now.  *See, e.g.*, *In re Ritchie Risk-Linked Strategies Trading (Ir.) Ltd.*, 471 B.R. 331, 338-39 (Bankr. S.D.N.Y. 2012); *Midland Cogeneration Venture LP v. Enron Corp.*, 419 F.3d 115, 121-23 (2d. Cir. 2005).  On the other hand, if Mr. Gillispie had a pre-sale claim and was not provided with adequate notice of the bankruptcy proceeding and the proposed entry of the Sale Order, it would violate his due process rights to use the Sale Order to bar his suit against New GM for alleged violations of Section 1983 and Ohio common law; rather, to comport with constitutional due process, Mr. Gillispie would have

2

proper grounds to have the Sale Order lifted as to him and to pursue his claims against New GM.

*See, e.g., Compak Cos. LLC v. Johnson*, 415 B.R. 334, 340 n.8 (N.D. Ill. 2009); *Polycel Structural Foam, Inc. v. Pool Builders Supply of the Carolinas (In re Polycel Liquidation, Inc.)*, 2007 WL 77336, at *8-9 (D.N.J. Jan. 9, 2007); *Metal Founds. Acquisition, LLC v. Reinert (In re Reinert)*, 467 B.R. 830, 832 (Bankr. W.D. Pa. 2012); *Doolittle v. Cnty. of Santa Cruz (In re Metzger)*, 346 B.R. 806, 819 (Bankr. N.D. Cal. 2006).

For these and all the other reasons herein, WTC respectfully submits that New GM is the only possible defendant for Mr. Gillispie's causes of action and requests that the Court enter an order denying Mr. Gillispie's request to file a post-bar-date Proof of Claim in order to "pursue relief from Old GM's estate." (Dkt. 12727 at 16).

## FACTUAL BACKGROUND

### I.    Mr. Gillispie's Criminal Conviction In 1991

In 1988, three women were raped at gunpoint in Ohio.  *State v. Gillispie*, 2012 WL 1264496, at *1-2 (Ohio Ct. App. Apr. 13, 2012).  In February 1991, Mr. Gillispie was convicted of those rapes at trial.  *Id.* at *3.  He was subsequently re-tried and convicted again in June 1991. *Id.*  On at least nine occasions between 1991 and 2008, Ohio state courts affirmed Mr. Gillispie's conviction.[2]

---

[2]    *See State v. Gillispie*, 1993 WL 10927 (Ohio Ct. App. Jan. 21, 1993) (rejecting direct appeal), *leave to appeal denied*, 616 N.E.2d 504 (Ohio 1993); *State v. Gillispie*, 1995 WL 41334 (Ohio Ct. App. Feb. 1, 1995) (affirming trial court's dismissal of first post-conviction challenge), *appeal not allowed*, 650 N.E.2d 479 (Ohio 1995); *State v. Gillispie*, No. 1990 CR 02667 (Ohio Ct. C.P. Sept. 17, 1999), *aff'd*, 2002 WL 471866 (Ohio Ct. App. Mar. 29, 2002), *appeal not allowed*, 770 N.E.2d 1050 (Ohio 2002); *State v. Gillispie*, No. 1990 CR 02667 (Ohio Ct. C.P. July 9, 2008) (denying second motion for new trial based on due process violations and newly discovered evidence of an alternative suspect).

## II.    This Court's July 2009 Sale Order

On June 1, 2009, Old GM filed a Chapter 11 petition for bankruptcy and sought approval

to sell substantially all of its assets, pursuant to 11 U.S.C. § 363, to an entity that became New

GM.  *In re GM Corp.*, 407 B.R. 463, 479-80 (Bankr. S.D.N.Y. 2009).

On June 2, 2009, this Court entered an order adopting procedures for the Section 363

sale, including giving notice of a hearing on the sale to "all known creditors," including through

publication in various global, national, and local newspapers.  (Dkt. 274).  On June 5, 2009, Old

GM's notice and claims agent, Garden City Group ("GCG"), served Mr. Gillispie by mail, at his

last-known address, with notice of the bankruptcy proceedings and the hearing on the proposed

sale of substantially all of Old GM's assets (the "Sale Hearing").  (*See* Dkt. 973 & Ex. C, part 17

at 351).  The notice that was sent to Mr. Gillispie was not returned as undeliverable.  (*See* Ex. A,

Declaration of Angela Ferrante, dated August 19, 2014 ("Ferrante Decl."), ¶ 2.)

The Sale Hearing occurred over several days in late June and early July 2009.  Mr.

Gillispie was neither mentioned nor represented at the Sale Hearing.  On July 5, 2009, this Court

entered its Sale Order, and the sale closed on July 10, 2009.  (*See* Dkt. 2968).

## III.    No Proof Of Claim Is Filed By Mr. Gillispie Prior To The November 2009 Bar Date

On September 2, 2009, Old GM filed a motion (the "Bar Date Motion") requesting that

the Court set a deadline (the "Bar Date") for all Proofs of Claim relating to prepetition claims

against Old GM or any of its affiliated debtors that did not appear on schedules of assets and

liabilities to be filed.  (*See* Dkt. 3940).[3]  The Bar Date Motion contained, as exhibits thereto, a

form of notice establishing the Bar Date (the "Notice of Bar Date"), the proposed procedures for

---

[3]    On September 15, 2009, Old GM and its affiliated debtors filed their schedules of assets and
liabilities.  (Dkt. 4061-4077).  The schedules did not list a claim by Mr Gillispie.  Amendments to the
schedules were filed on October 4, 2009.  (Dkt. 4161).  Like the original schedules filed on
September 15, the amendments did not list a claim by Mr. Gillispie.

delivering such Notice of Bar Date, and a form of Proof of Claim.  (*Id.*)  On September 16, 2009,

the Court issued an order (the "Bar Date Order") approving the Bar Date Motion, including the

proposed Notice of Bar Date and Proof of Claim, and establishing November 30, 2009 at

5:00 p.m. (Eastern Time) as the Bar Date.  The Bar Date Order further stated:

> [A]ny holder of a Claim against the Debtors that is required but fails to file a Proof of
> Claim in accordance with this Bar Date Order . . . shall be forever barred, estopped and
> enjoined from asserting such Claim against each of the Debtors and their respective
> estates (or filing a Proof of Claim with respect thereto), and each of the Debtors and their
> respective chapter 11 estates, successors, and property shall be forever discharged from
> any and all indebtedness or liability with respect to such Claim.

(Dkt. 4079 at 5).

On September 25, 2009, GCG served Mr. Gillispie by mail, at his last-known address,

with the Notice of Bar Date and a Proof of Claim form.  (Dkt. 4238 & Ex. B, part 27 at 583).

That mailing to Mr. Gillispie was not returned as undeliverable, and he did not file a Proof of

Claim prior to the Bar Date.  (*See* Ferrante Decl. ¶¶ 3-4).

## IV.    In April 2012, Mr. Gillispie's Criminal Conviction Is Vacated

On December 15, 2009, Mr. Gillispie filed a petition for a writ of habeas corpus in the

U.S. District Court for the Southern District of Ohio, alleging that his conviction was invalid

because the State of Ohio had violated his due process rights by failing to disclose certain

supplemental reports to Mr. Gillispie or his counsel before trial.  *See Gillispie v. Timmerman-

Cooper*, 835 F. Supp. 2d 482, 494 (S.D. Ohio 2011).  On December 15, 2011, the district court

conditionally granted Mr. Gillispie's petition, and ordered the State of Ohio to either release him

or retry him.  *Id.* at 508-09.

On April 13, 2012, the Ohio Court of Appeals vacated Mr. Gillispie's conviction, based

on newly discovered evidence of an alternative suspect.  *Gillispie*, 2012 WL 1264496, at *12.  In

doing so, it reversed a trial court's 2009 finding, on remand, that certain newly discovered

evidence would be inadmissible and in any event insufficient to warrant a new trial. *Id.* at *11-12. The Court of Appeals then remanded the case again, this time for that new trial to occur. *Id.* at *12. To date, Mr. Gillispie's new trial has not taken place.

**V.    In December 2013, Mr. Gillispie Files Suit Against "GM" For Alleged Torts By GM Personnel**

In December 2013, with his conviction vacated by two different courts on two different grounds, Mr. Gillispie filed a civil suit for alleged violations of Section 1983 and Ohio common law by GM personnel, among others (the "Civil Action"). *See* Complaint, *Gillispie v. City of Miami Twp.*, No. 13-cv-416 (Dkt. 1) (S.D. Ohio Dec. 13, 2013). In his First Amended Complaint, Mr. Gillispie names both New GM and Old GM as defendants, but alleges that New GM is "the successor in interest and owner of substantially all of [Old GM's] assets and bears liability for any judgment entered against GM as a result of this lawsuit," and therefore, refers to Old GM and New GM collectively as "GM" throughout his pleadings. (*See* Dkt. 12727-1, at 4).

Mr. Gillispie asserts four Section 1983 claims against "GM," alleging that multiple GM employees (i) suppressed and conspired to suppress exculpatory evidence from the prosecutors, who then could not provide it to Mr. Gillispie; (ii) conspired with police to arrange a suggestive photo lineup; (iii) fabricated and conspired to fabricate evidence, including false testimony at Mr. Gillispie's trials; and (iv) conspired with police and prosecutors to maliciously prosecute Mr. Gillispie. *Id.* According to Mr. Gillispie, "GM" is liable for the actions of its employees under the doctrine of *respondeat superior*. He also alleges "GM" itself acted under color of law, and is liable under Section 1983 because the violation of Mr. Gillispie's rights "was caused by [GM's] policies, practices, customs, and/or decisions of the policymakers." *Id.* ¶¶ 81, 88, 95, 102. Mr. Gillispie also brings state law claims against GM employees for malicious prosecution and intentional infliction of emotional distress, and alleges that GM is liable for their acts under the

doctrine of *respondeat superior*, or alternatively, because it is statutorily obligated to indemnify them for any judgment based on their conduct as GM employees. *Id.* ¶¶ 115, 120, 127.

## VI. In February 2014, New GM Demands That Mr. Gillispie "Immediately Discontinue" Any Litigation Against It

In February 2014, New GM demanded that Mr. Gillispie "immediately discontinue[]" any litigation against it on the ground that the Master Sale and Purchase Agreement ("Sale Agreement") negotiated in connection with the Section 363 sale of substantially all of Old GM's assets to New GM "expressly excludes all Liabilities to third parties for Claims based upon Contract, tort or any other basis." (Dkt. 12727-3). New GM also insisted that the Sale Order barred the Civil Action. (*Id.*).

## VII. In June 2014, Mr. Gillispie Moves For Leave To Pursue Claims Against New GM Or To File A Post-Bar-Date Proof Of Claim To Pursue Relief From Old GM's Estate

In June 2014, Mr. Gillispie filed the instant motion for leave to pursue claims in his Civil Action against New GM, or, alternatively, to file a post-bar-date proof of claim to "pursue relief from Old GM's estate." (Dkt. 12727 at 16).

## VIII. The GUC Trust's Limited Appearance To Respond To Mr. Gillispie's Motion

The operative complaint in Mr. Gillispie's Civil Action names "Motors Liquidation Company f/k/a General Motors Corporation," or Old GM, as a defendant. Old GM was dissolved, however, on December 15, 2011. (*See* Ex. B, Declaration of Lisa H. Rubin, Esq., dated August 19, 2014 ("Rubin Decl."), Ex. 1 at 3). Prior to Old GM's dissolution, a number of trusts, including the GUC Trust, were established on March 31, 2011, the effective date of Old GM's chapter 11 plan of liquidation (the "Plan"). (*See id.* at 2-3, 20). Like the other trusts established as part of the Plan, the GUC Trust was a transferee of certain assets and liabilities of Old GM. (*See* Rubin Decl. Ex. 2; Dkt. 9477). Since the effective date, the GUC Trust, acting

through WTC as its administrator, has had the authority to "compromise, settle, otherwise resolve or withdraw any objections to Disputed General Unsecured Claims against the Debtors." (Dkt. 9477, § 5.1(d); *see also* Rubin Decl. Ex. 1 at 2).  To qualify as a "General Unsecured Claim," a claim must have been listed on one of the schedules filed by the Debtors at the outset of Old GM's bankruptcy or have been subject to a timely-filed Proof of Claim.  (*See* Dkt. 4079 at 5).

Unless and until Mr. Gillispie is granted leave to file a post-bar-date Proof of Claim, he has no Disputed General Unsecured Claim for the GUC Trust to resolve, and the GUC Trust bears no responsibility toward him.  Indeed, pursuant to an order of this Court, unless a claim was filed before February 8, 2012, it is automatically disallowed unless and until the GUC Trust expressly consents to allow it.  (*See* Dkt. 11394).  Nonetheless, in the interest of efficiency, WTC, trustee for and administrator of the GUC Trust, makes a limited appearance to respond to Mr. Gillispie's motion and to demonstrate that (i) New GM is the only possible defendant for Mr. Gillispie's causes of action in the Civil Action; and (ii) there are no grounds for the filing of a post-bar-date proof of claim to pursue relief from Old GM's estate.

## ARGUMENT

### I.    Because Mr. Gillispie Had No Cognizable "Claim" Under The Bankruptcy Code Until Years After Entry Of The Sale Order, The Sale Order Cannot Be Enforced To Bar Mr. Gillispie's Suit Against New GM

There is no basis for New GM's demand that Mr. Gillispie "immediately discontinue[]" any litigation against it.  As explained below, Mr. Gillispie had no cognizable claim in this bankruptcy proceeding until long after entry of the Sale Order, when an Ohio state court vacated his criminal conviction; thus, Mr. Gillispie's due process rights would be violated if the Sale Order were used to bar his assertion of any causes of action against New GM in the Civil Action.

8

### A. Mr. Gillispie Had No Cognizable "Claim" Under The Bankruptcy Code Until Years After The Entry Of The Sale Order In July 2009

The Bankruptcy Code broadly defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). While a "claim" encompasses "all legal obligations of the debtor," *Chateaugay I*, 944 F.2d at 1003, "the definition's reach is not infinite." *Pension Benefit Guar. Corp. ("PBGC") v. Oneida Ltd.*, 562 F.3d 154, 157 (2d Cir. 2009) (citing *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)* ("*Chateaugay II*"), 53 F.3d 478, 496-97 (2d Cir. 1995)). Instead, a valid bankruptcy "claim" exists if and only if "the claimant possessed a right to payment" and "that right arose before the filing of the petition." *Id.* Moreover, a right to payment necessitates that "the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation . . . under the relevant non-bankruptcy law" *before* the sale at issue. *Chateaugay II*, 53 F.3d at 496-97 (internal quotation marks omitted); *accord Chateaugay I*, 944 F.2d at 1003-05 (articulating relationship test for analyzing future claims); *PBGC*, 562 F.3d at 157 ("No matter how broadly the term 'claim' is construed, it cannot extend to a right to payment that does not yet exist under federal law."). In other words, as a matter of federal bankruptcy law, the Second Circuit has made clear that it looks to "the substantive non-bankruptcy law that gives rise to the debtor's obligation" – in this case, applicable federal and state tort law – to determine the existence of a claim under the Code. *PBGC*, 562 F.3d at 157 (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007)).

Here, because it was not until an Ohio state court vacated his criminal conviction in April 2012 that Mr. Gillispie had any conceivable causes of action under federal or state law for torts allegedly committed by GM personnel, Mr. Gillispie had no cognizable "claim" under the

Bankruptcy Code either until April 2012, well after entry of the Sale Order.

> **1.    Mr. Gillispie Had No Conceivable Cause Of Action Under Section 1983, And Thus No Cognizable "Claim" Under The Bankruptcy Code, Until His Criminal Conviction For Rape Was Vacated In April 2012**

Since a Section 1983 claim is based on "the invalidity of [a] conviction," Mr. Gillispie had no Section 1983 claim until his conviction was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87; *see also* Dkt. 12727 at 8-10. The issuance of a conditional writ of habeas corpus pending retrial is *not* enough to give rise to a Section 1983 claim. *See D'Ambrosio*, 747 F.3d at 384-86.[4] Instead, a Section 1983 claim arises only after an *un*conditional writ issues or the plaintiff's state conviction is vacated. *Id.* As the Supreme Court has made clear, it is not merely that a plaintiff's Section 1983 claim is contingent or unripe until his conviction is vacated. Rather, no cause of action whatsoever exists until that point. *Heck*, 512 U.S. at 489.

Here, because each of his Section 1983 claims against "GM" require him to show he had been improperly convicted, Mr. Gillispie had no conceivable cause of action under Section 1983 until April 13, 2012, when the Ohio Court of Appeals vacated his conviction. Prior to that date, adjudicating Mr. Gillispie's Section 1983 claims would have risked "conflicting parallel litigation 'arising out of the same . . . transaction' and would essentially [have permitted] a 'collateral attack on the conviction through the vehicle of a civil suit.'" *D'Ambrosio*, 747 F.3d at

---

[4]    Under applicable choice of law rules, the accrual date of Mr. Gillispie's Section 1983 claim is based on "the law of the [federal] jurisdiction with the most significant relationship with the action." *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 605 (2d Cir. 2001); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("[T]he accrual date of a § 1983 cause of action is . . . federal law that is not resolved by reference to state law."). Because all of the events underlying Mr. Gillispie's Section 1983 claims occurred in Ohio, Sixth Circuit law governs the accrual date here.

384 (quoting *Heck*, 512 U.S. at 484).[5]

Therefore, as Mr. Gillispie was not eligible under the "relevant non-bankruptcy law" to

bring his Section 1983 claims until April 2012, he had no cognizable claim in this bankruptcy

proceeding either until April 2012. *Chateaugay II*, 53 F.3d at 496-97; *see also Armstrong v.

Floyd Cnty.*, 2013 WL 8711442, at *5 (N.D. Ga. Dec. 3, 2013) (rejecting defendant's contention

that plaintiff's Section 1983 claim had been discharged in her bankruptcy because plaintiff's

acquittal after trial occurred "long after" she filed her bankruptcy petition); *Carroll v. Henry

Cnty.*, 336 B.R. 578 (N.D. Ga. 2006) (holding that plaintiff had no cognizable "claim" under

Bankruptcy Code in connection with Section 1983 claim for malicious prosecution until after

bankruptcy petition was filed because he was not acquitted of criminal charges until

approximately six months later).

> ### 2.    Mr. Gillispie Had No Conceivable Cause Of Action For Malicious Prosecution Or Intentional Infliction Of Emotional Distress, And Thus No Cognizable "Claim" Under The Bankruptcy Code, Until His Criminal Conviction For Rape Was Vacated In April 2012

Mr. Gillispie's claims for malicious prosecution and intentional infliction of emotional

distress also did not accrue until his conviction was vacated in 2012.[6]  In Ohio, a plaintiff must

show "termination of the prosecution in favor of the accused" for a malicious prosecution claim,

---

[5]    *See also Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (Section 1983 malicious prosecution claim requires favorable termination of criminal case); *Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993) (Section 1983 claim for suggestive photo array implies improper conviction); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) (Section 1983 claim for withholding exculpatory evidence implies unfair trial).

[6]    In assessing when Mr. Gillispie's common law claims in the Civil Action accrued, New York's choice of law rules apply.  *See Gaston & Snow*, 243 F.3d at 605 (applying forum choice of law rules to "state law claims that do not implicate federal policy concerns"); *Statek v. Devel. Specialists, Inc. (In re Coudert Brothers LLP)*, 673 F.3d 180, 191 (2d Cir. 2012) (holding bankruptcy court applies forum rules to pre-petition diversity action).  Under New York's choice of law rules, the law of the forum with the most "significant relationship" to the underlying events, here Ohio, applies.  *See Babcock v. Jackson*, 12 N.Y.2d 473, 481-82 (1963).

and such favorable termination must occur *before* the claim accrues.  *See Froehlich*, 871 N.E.2d

at 1162.  Similarly, the tort of intentional infliction of emotional distress requires a plaintiff to

show that "the defendant's conduct was so extreme and outrageous that it went beyond all

bounds of decency, and was such as to be considered utterly intolerable in a civilized

community."  *Callaway*, 166 Ohio App. 3d at 64.  As Mr. Gillispie agrees, because his

conviction was intact when the Sale Order was entered on July 5, 2009, it would have been

impossible for him to show that the prosecution was terminated in his favor, as is required for a

malicious prosecution claim, or that GM's conduct was so outrageous as to be "utterly

intolerable in a civilized community," as needed to show intentional infliction of emotional

distress.  (*See* Dkt. 12727 at 12-13).  Accordingly, Mr. Gillispie had no conceivable cause of

action for malicious prosecution or intentional infliction of emotional distress until his conviction

was vacated in April 2012, and therefore no cognizable "claim" under the Bankruptcy Code until

April 2012.  *See*, *e.g.*, *Armstrong*, 2013 WL 8711442, at *5 (intentional infliction of emotional

distress claim did not accrue until after criminal trial had concluded and been terminated in her

favor); *Jenkins v. A.T. Massey Coal Co., Inc. (In re Jenkins)*, 410 B.R. 182, 193 (Bankr. W.D.

Va. 2008) (no cognizable "claim" under Bankruptcy Code in connection with state-law

malicious prosecution claims where "all of the Defendants' actions had occurred pre-petition"

but "neither the right to bring the claim nor the possibility that such a claim might shortly arise

was in existence" when the petition was filed); *Carroll*, 336 B.R. at 584 (malicious prosecution

claim accrued upon post-petition acquittal); *Brunswick Bank & Trust Co. v. Atanasov (In re

Atanasov)*, 221 B.R. 113, 117 (D.N.J. 1998) (malicious prosecution claim accrued when

indictment was dismissed, three months after filing a bankruptcy petition).

12

### 3. "Future Claim" Cases Underscore That Mr. Gillispie Had No Cognizable "Claim" Under The Bankruptcy Code Until His Criminal Conviction For Rape Was Vacated In April 2012

Because he had no conceivable cause of action under Section 1983 or for malicious prosecution or intentional infliction of emotional distress until years after the entry of the Sale Order, Mr. Gillispie likens himself to a "future claimant" who suffered post-petition harm caused by pre-petition conduct. (Dkt. 12727 at 10-12). And for the same reason, Mr. Gillispie also notes that this Court recognized at the time the Sale Order was entered that it would be "constitutionally suspect" to bar the claims of those on whom "the notice given . . . was not fully effective, since without knowledge of an ailment that had not yet manifested itself, any recipient would be in no position to file a present claim." *In re GM Corp.*, 407 B.R. at 505-07; *see also* Dkt. 12727 at 9.

Although none of the "future claim" cases cited by Mr. Gillispie squarely fit his circumstances, they help illustrate why none of his "claims" could have accrued until after entry of the Sale Order here. In *Chateaugay I*, the Second Circuit held that a "claim" arising from injury that manifested post-petition is cognizable when either a pre-petition relationship allowed the debtor to identify the potential claimant and her claim, or when the debtor could sufficiently contemplate the contingencies that would trigger the claimant's right to payment. *Chateaugay I*, 944 F.2d at 1005; *see also DPWN*, 871 F. Supp. 2d at 153 & n.5 (noting disagreement about controlling test after *Chateaugay I*). Applying *Chateaugay I* in the Section 363 context, courts have "[g]enerally . . . held that future claims cannot be considered 'claims,'" reasoning that a "claim" cannot accrue when (1) the debtor could not have discerned who would be harmed post-sale by pre-petition conduct, and (2) when exposure to that conduct was not *per se* harmful such that the only remaining question would be "when (and to what extent) harm will manifest itself."

*Grumman*, 467 B.R. at 704, 709-10; *see also Chateaugay I*, 944 F.2d at 1003; *Schwinn Cycling*

*& Fitness, Inc. v. Benonis (In re Schwinn Bicycle)*, 210 B.R. 747, 760 (Bankr. N.D. Ill. 1997).

There is, of course, no "accident" or "exposure" to a dangerous chemical or device

underlying Mr. Gillispie's Civil Action.  *See Grumman*, 467 B.R. at 709-10 (distinguishing

between types of future claimants); *see also Waterman Steamship Corp. v. Aguiar (In re*

*Waterman Steamship Corp.)*, 141 B.R. 552, 556 (Bankr. S.D.N.Y. 1992), *vacated on other*

*grounds*, 157 B.R. 220 (S.D.N.Y. 1993).  Yet the future claim cases he embraces further show

that his claims did not accrue prior to the sale.

- *First*, Mr. Gillispie and Old GM had a pre-sale employment relationship, but Old GM had no reason to identify Mr. Gillispie as potentially holding Section 1983 claims in June and July 2009 under Supreme Court precedent – and Mr. Gillispie himself was equally without knowledge that he would ever hold such claims.  *See Chateaugay I*, 944 F.2d at 1005; *accord Epstein v. Official Comm. of Unsecured Creditors of the Estate of Piper Aircraft Corp. (In re Piper Aircraft Corp.)*, 58 F.3d 1573, 1577 (11th Cir. 1995) (requiring knowledge of claimant and her claim).

- *Second*, Old GM had no reason to contemplate that its employment relationship with Mr. Gillispie would lead to liability for an alleged conspiracy to falsely obtain his criminal conviction, especially because the conspiracy was outside the scope of the employment of all the alleged GM participants and there was no prior conduct by those alleged participants to put Old GM on notice.  *But see Chateaugay I*, 944 F.2d at 1005 (stating EPA *could* contemplate debtor's future environmental cleanup costs because it knew about previous costs); *In re TWA*, 322 F.3d 283, 285 (3d Cir. 2003) (Section 363 seller and purchaser each contemplated future discrimination claims brought by debtor's employees or EEOC); *Gabauer v. Chemtura Corp. (In re Chemtura)*, 505 B.R. 427, 429, 431 (S.D.N.Y. 2014) (debtor-employer contemplated future claims by employees who had been exposed on the job to chemical that may cause latent injuries).

- *Third*, the "defect" to which Mr. Gillispie was "exposed" – his allegedly invalid conviction – was not *per se* harmful (because it was valid at that point and could have remained so), and neither he nor Old GM knew that the "exposure" would certainly cause injury that would manifest post-sale – namely, that his conviction would be vacated.

In other words, no one involved ever thought it was "only a question of when (and to what

extent)" Mr. Gillispie's conviction would be set aside.  *Grumman*, 467 B.R. at 709-10.  Thus, the

"future claim" cases cited by Mr. Gillispie underscore that he is akin to a true future claimant in that he had no cognizable "claim" under the Bankruptcy Code until his conviction was vacated in April 2012.

> **B.    Because Mr. Gillispie Had No Cognizable "Claim" Under The Bankruptcy Code Until After Entry Of The Sale Order, Mr. Gillispie's Due Process Rights Would Be Violated If The Sale Order Were Used To Bar His Assertion Of Any Causes Of Action Against New GM**

Because Mr. Gillispie did not have any cognizable "claim" under the Bankruptcy Code at the time of the Sale Order – and did not know whether he *ever* would have one – applying the Sale Order to bar his causes of action against New GM in the Civil Action would unquestionably violate his due process rights.  (*See* Dkt. 12727 at 10, 14).

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  To be effective in the bankruptcy context, notice must not only "'reasonably . . . convey the required information,' *i.e.*, the nature and purpose of the proceeding," but also must inform the claimant of "the nature of the charges or claims that will be adjudicated."  *DPWN*, 871 F. Supp. 2d at 153, 155 (citations omitted); *see also Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135, 158 (2d Cir. 2010) (holding claimant could not be bound by bankruptcy court orders where, even with notice, "it could not have anticipated . . . that its . . . claims . . . would be enjoined"); *In re Waterman Steamship Corp.*, 141 B.R. at 556 (finding notice ineffective if reader would not have known it affected his rights).

"At its core, the concern is whether a claimant can be 'force[d] . . . to be bound by proceedings in which he did not and could not participate.'"  *Grumman*, 467 B.R. at 706 (citation omitted).  Here, there is no question that Mr. Gillispie not only did *not* participate, but *could not*

have participated, in the proceedings prior to the entry of the Sale Order. Indeed, because Mr.

Gillispie's conviction had not been vacated before the sale, his injuries "had not yet manifested"

and he was "in no position to file a present claim," *In re GM*, 407 B.R. at 507, nor did he have

any reason to know, with certainty, that he would one day have any "claim" to bring. *See*

*DPWN*, 871 F. Supp. 2d at 157-59 (finding due process had not been satisfied where claimant

had actual notice of proceeding but not that it could bring a claim).[7]

Moreover, Old GM could not have provided him with any constitutionally sound notice.

Even if Old GM had full knowledge of Mr. Gillispie's location in the Ohio prison system and all

of the allegations underlying his claims, those claims did not exist under *Heck* or Ohio law at the

time of the sale, and therefore, no notice could have been constitutionally adequate. *Compare*

*Grumman*, 467 B.R. at 708 (holding due process not satisfied "because, at the time of the

bankruptcy, there was no way for anyone to know [claimants] ever would have a claim") *with In*

*re Chemtura*, 505 B.R. at 428 (finding employer's notice sufficient where it described

bankruptcy proceeding and explained basis for employees' potential claims). This case is simply

not one where, for instance, Old GM was aware of "claims against it due to information uniquely

within its purview." *DPWN*, 871 F. Supp. 2d at 157.

In sum, because Mr. Gillispie could not have received notice of both the proceedings at

issue and of its impact on him, the Sale Order cannot be enforced to bar his claims against New

GM consistent with due process. *Id.* at 155; *Grumman*, 467 B.R. at 708. Moreover, because Mr.

Gillispie did not have a pre-petition claim, he cannot recover from "Old GM's estate" (Dkt.

---

[7]     In *DPWN*, DHL did not have *any* information indicating that it might have a claim in United's
bankruptcy, whereas Mr. Gillispie at least subjectively believed that he had been wrongly convicted
(and thus might one day have a Section 1983 claim, if exonerated). This is a distinction without
difference. At the time of the Section 363 sale, whether through lack of knowledge or a function of
law, neither putative claimant could satisfy all the necessary elements for a claim to accrue.

12727 at 16), much less the GUC Trust.

## II.    If Mr. Gillispie Were Deemed To Have Had A Cognizable "Claim" Under The Bankruptcy Code Prior To Entry Of The Sale Order, New GM Would Be The Only Possible Defendant For Mr. Gillispie's Causes Of Action In The Civil Action

If Mr. Gillispie were somehow deemed to have had a cognizable "claim" under the

Bankruptcy Code prior to entry of the Sale Order in July 2009, New GM would be the only

possible defendant for Mr. Gillispie's causes of action in the Civil Action.  As explained below,

if Mr. Gillispie were deemed to have had a pre-sale claim and to have been furnished with

adequate notice of the bankruptcy proceeding and the proposed entry of the Sale Order, he would

have no cause of action against New GM or the Old GM bankruptcy estate.  On the other hand, if

Mr. Gillispie were deemed to have had a pre-sale claim and to have not been provided with

adequate notice of the bankruptcy proceeding and the proposed entry of the Sale Order, applying

the Sale Order to bar his causes of action against New GM in the Civil Action would violate his

due process rights, and the appropriate remedy would be to lift the Sale Order as to Mr. Gillispie

in order to allow him to pursue claims against New GM.

### A.    If Mr. Gillispie Were Deemed To Have Had A Pre-Sale Claim And To Have Received Adequate Notice Of The Sale, He Would Have No Cause Of Action Against New GM Or Old GM

Mr. Gillispie contends that he was "outside the scope of the notice published in the sale

and bankruptcy" (Dkt. 12727 at 9), but he does not and cannot dispute that (i) Old GM's notice

and claims agent, GCG, served Mr. Gillispie, by mail at his last-known address, with a notice of

the initiation of the bankruptcy proceedings, notice of the Sale Hearing, Notice of Bar Date, and

a Proof of Claim (*see* Dkt. 973 & Ex. C, part 17 at 351; Dkt. 4238 & Ex. B, part 27 at 583); and

(ii) none of these documents were returned as undeliverable.  (*See* Ferrante Decl. ¶¶ 2-3).  Under

the circumstances, nothing more was required.  *See DPWN*, 871 F. Supp. 2d at 157 ("[D]ue

process demands only what is reasonable, not what is impossible or impracticable."); *In re*

*Ritchie*, 471 B.R. at 338-40 (explaining that, in determining whether notice was "reasonably given," "'the proper inquiry is whether [noticing party] acted reasonably in selecting means likely to inform persons affected, not whether [a particular party] actually received notice'" and that "impracticable and extended searches in the name of due process are not required") (internal quotations and citations omitted)).

Thus, if Mr. Gillispie were deemed to have had a pre-sale claim, he was provided with adequate notice of the bankruptcy proceeding and the proposed entry of the Sale Order, and Mr. Gillispie would be in the same position as any other claimant who failed to file timely Proof of Claim – *i.e.*, his claims would be barred against both New GM and the Old GM bankruptcy estate alike.

Mr. Gillispie argues that, if he were deemed to have had a pre-sale claim, he nonetheless should be allowed to file a post-bar-date Proof of Claim based on his "excusable neglect," under the test articulated by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993).  Mr. Gillispie ignores, however, that the doctrine of excusable neglect has no application if the decision of a party with a pre-sale claim to stay out of a bankruptcy proceeding was based on a legal error.  *See Canfield v. Van Atta Buick/GMC Truck*, 127 F.3d 248, 251 (2d Cir. 1997) (*per curiam*) (noting "general rule that a mistake of law does not constitute excusable neglect"); *Mich. Self-Insurers' Sec. Fund v. DPH Holdings, Corp. (In re DPH Holdings, Inc.)*, 434 B.R. 77, 85 (S.D.N.Y. 2010) ("Legal mistakes are usually not considered excusable neglect.").

Here, Mr. Gillispie subjectively believed that he was wrongly convicted and envisioned that his wrongful conviction ultimately would give rise to a tort claim, but concluded, as a legal matter, that his tort causes of action had not accrued into "claims" under the Bankruptcy Code

18

prior to the entry of the Sale Order in July 2009.  If this Court were to conclude that Mr. Gillispie

reached an incorrect legal conclusion and that he *did* have a "claim" under the Bankruptcy Code

prior to the entry of the Sale Order in July 2009, the doctrine of excusable neglect would have no

application here.  *See Canfield*, 127 F.3d at 251; *DPH Holdings*, 434 B.R. at 85.

Moreover, even if the doctrine of excusable neglect had any possible application here, "a

party claiming excusable neglect will, in the ordinary course, lose," because of the Second

Circuit's self-described "hard line" approach in applying the *Pioneer* test.  *Midland*, 419 F.3d at

121-23.  Specifically, under *Pioneer*, a court must equitably consider four factors:  (i) risk of

prejudice to the debtor, (ii) length of the delay and its potential impact on judicial proceedings,

(iii) the reason for the delay, including whether it was within the reasonable control of the

movant, and (iv) whether the movant acted in good faith.  507 U.S. at 395.  Where, as here, a

Chapter 11 plan has been consummated, *see In re Motors Liquidation Co.*, 462 B.R. 494, 501

n.36 (Bankr. S.D.N.Y. 2012), a court must use "added caution" in evaluating claims of excusable

neglect.  *Atlas v. Chrysler, LLC (In re TALT)*, 2010 WL 2771841, at *3 (Bankr. S.D.N.Y. July

13, 2010).

While Mr. Gillispie's good faith is not in question, none of the other *Pioneer* factors

weigh in his favor.  The Second Circuit "focuse[s] on the third [*Pioneer*] factor: 'the reason for

the delay, including whether it was within the reasonable control of the movant.'"  *Midland*, 419

F.3d at 122 (quoting *Pioneer*, 507 U.S. at 395).  Here, Mr. Gillispie does not, and cannot, dispute

that (i) notice of the Sale Hearing and the Notice of Bar Date were served on his last-known

address in Fairborn, Ohio (*see* Dkt. 973 & Ex. C, part 17 at 351; Dkt. 4238 & Ex. B, part 27 at

583), *where he still appears to live* (*see* Dkt. 12727-1 ¶ 5); and (ii) none of the documents were

returned as undeliverable (*see* Ferrante Decl. ¶¶ 2-3); but that (iii) the period of delay for which

19

he seeks to invoke "excusable neglect" spans almost *five years*.  His incarceration cannot justify

a nearly *five-year* delay, especially when the length of his delay (the second *Pioneer* factor) has

been considerably longer than the delay for claims in other cases that courts found were too stale

to satisfy the *Pioneer* test for excusable neglect.  *See, e.g.*, *In re AMR Corp.*, 492 B.R. 660, 667

(Bankr. S.D.N.Y. 2012) ("significant" delay of "more than five months"); *In re BGI, Inc.*, 476

B.R. 812, 826 (Bankr. S.D.N.Y. 2012) (eight-month delay); *Atlas*, 2010 WL 2771841, at *3

(thirty-one-month delay); *In re Enron Corp.*, 2007 WL 610404, at *10 (Bankr. S.D.N.Y. Feb. 23,

2007) (nearly three-year delay).

Mr. Gillispie's only other justification for his delay is that he did not have a cognizable

pre-sale "claim" under the Bankruptcy Code.  As discussed in Section I above, however, if

Mr. Gillispie did not have a cognizable pre-sale "claim" under the Bankruptcy Code, the proper

remedy, consistent with due process, is to relieve him from the confines of the Sale Order.  The

law of excusable neglect should only come into play in the event that, notwithstanding *Heck* and

its progeny and Ohio law, this Court concludes that Mr. Gillispie had a cognizable pre-sale

"claim" under the Bankruptcy Code.

The *first Pioneer* factor – the risk of prejudice from a late-filed claim – also underscores

that Mr. Gillispie has not met his burden of demonstrating that he should be allowed to file a

post-bar-date Proof of Claim based on "excusable neglect."  While the GUC Trust still exists,

more than 75 percent of all New GM securities held by the GUC Trust were distributed to

holders of Initial Allowed General Unsecured Claims *more than three years ago* in April and

May 2011 (*see* Rubin Decl. Ex. 3 at 2), and as of June 30, 2014, nearly 90 percent of the New

GM Securities held by the GUC Trust have been distributed (Dkt. 12838 & Ex. A at 6, 11).

Moreover, although the GUC Trust continues to hold New GM securities for distribution, there is an outstanding litigation on appeal to the Second Circuit that could result in the GUC Trust being subject to up to $1.5 billion in additional Allowed General Unsecured Claims. *See Motors Liquidation Co. v. JP Morgan Chase Bank (In re Motors Liquidation Co.)*, 755 F.3d 78, 87 (2d Cir. 2014). Beyond the prospective addition of *those* claims, the GUC Trust is also currently litigating whether the claims asserted in more than one hundred lawsuits alleging economic losses arising out of the ignition switch recall New GM issued this year are or should be against the Old GM bankruptcy estate, and New GM has also recently brought two additional motions to enforce concerning other recall-related lawsuits that presumably will entail similar litigation as to whether the underlying claims are or should be against the Old GM bankruptcy estate.

In light of these ongoing litigations, which could, by themselves, meaningfully impair the rights and expectations of current GUC Trust unitholders, any finding that a claimant can recover from Old GM's bankruptcy estate after a five-year delay would potentially open the floodgates to other litigation. Indeed, granting Mr. Gillispie's request for a finding of "excusable neglect" could cause precisely what he has promised it will not: a "deluge of motions" seeking excusable neglect determinations in circumstances, as in Mr. Gillispie's own case, involving claims beyond any party's imagination. (Dkt. 12727 at 17 (quoting *In re Enron Corp.*, 2003 WL 1889042 (Bankr. S.D.N.Y. Apr. 8, 2003))). And even if the floodgates are not certain to open, "there is a disruptive effect of even a *de minimis* prospective claim," especially given the advanced stage of the bankruptcy. *Atlas*, 2010 WL 2771841, at *4.

In sum, if Mr. Gillispie were deemed to have had a pre-sale claim and to have been provided with adequate notice of the bankruptcy proceeding and the proposed entry of the Sale

Order, the "excusable neglect" doctrine would have no application here, and Mr. Gillispie would

have no cause of action against New GM or Old GM.  Moreover, even if the "excusable neglect"

doctrine were at issue, application of the *Pioneer* factors weighs heavily in favor of a finding that

Mr. Gillespie's failure to file a proof of claim by the Bar Date should not be excused.

> **B.      Assuming *Arguendo* That Mr. Gillispie Had A Pre-Sale Claim But Did Not
> Receive Adequate Notice Of The Sale, Due Process Requires That He Be
> Allowed To Proceed Against New GM.**

If Mr. Gillispie were deemed to have had a pre-sale claim, but to have not been provided

with adequate notice of the bankruptcy proceeding and the proposed entry of the Sale Order,

applying the Sale Order to bar his causes of action against New GM in the Civil Action would

violate his due process rights, and the appropriate remedy would be to lift the Sale Order as to

Mr. Gillispie in order to allow him to pursue his claims against New GM.

As this court has made clear, a sale order pursuant to Section 363 "'that purports to free a

purchaser from the debtor's liabilities does not bind parties in interest that did not receive

appropriate notice of the sale.'" *In re Ritchie*, 471 B.R. at 338-39 (quoting *Morgan Olson LLC v.

Frederico (In re Grumman Olson Indus., Inc.)*, 445 B.R. 243, 254 (Bankr. S.D.N.Y. 2011)).

Other courts across the country have reached the same conclusion and have refused to enforce a

Section 363 sale order and injunction against a party that lacked adequate notice of the

proceedings prior to entry of the sale order.  *See, e.g.*, *Compak*, 415 B.R. at 340 n.8  (holding

Section 363 sale order was void as to a third-party licensee who did not receive proper notice of

the sale); *Polycel*, 2007 WL 77336, at *8-9 (partially invalidating Section 363 sale order and

injunction insofar as it impacted property to which a third party without notice of the sale had a

claim); *Metal Founds.*, 467 B.R. at 832 (holding Section 363 sale order and injunction could not

be enforced, consistent with "constitutional due process," against third-party claimant who did

not receive notice of sale); *Doolittle*, 346 B.R. at 819 (holding Section 363 sale order was void

with respect to the property interests of a county that did not receive adequate notice of the hearing on the order).

Therefore, to the extent that Mr. Gillispie is found to have had a cognizable pre-sale "claim" under the Bankruptcy Code but was not sufficiently on notice of the bankruptcy proceedings or Sale Order, and their impact on him, the only just way to remedy that deficiency now is to afford him an exemption from the Sale Order and allow him to proceed with his suit against New GM.

## CONCLUSION

For all these reasons, WTC respectfully submits that New GM is the only possible defendant for Mr. Gillispie's causes of action in the Civil Action and requests that the Court enter an order denying Mr. Gillispie's request to file a post-bar-date proof of claim in order to "pursue relief from Old GM's estate."

Dated:    August 19, 2014

<div style="margin-left:40%">

GIBSON, DUNN & CRUTCHER LLP

By:    /s/ Adam H. Offenhartz
    Adam H. Offenhartz
    Matthew J. Williams
    Aric H. Wu
    Lisa H. Rubin

200 Park Avenue
New York, New York 10166
Telephone:  (212) 351-4000
Facsimile:   (212) 351-4035

*Attorneys for Wilmington Trust Company, as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust*

</div>