# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**MOTORS LIQUIDATION COMPANY,** *et al.*, **f/k/a General Motors Corp.,** *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

<u>**DECLARATION OF LISA H. RUBIN, ESQ.**</u>

I, Lisa H. Rubin, an attorney admitted to practice before this Court, hereby declare:

1.       I am Of Counsel in the law firm of Gibson, Dunn & Crutcher, LLP, counsel to Wilmington Trust Company ("WTC"), as trustee for and administrator of the Motors Liquidation Company GUC Trust.  I submit this declaration in support of WTC's brief in response to Roger Dean Gillispie's motion for leave to pursue claims against New GM, or, alternatively, to file a post-bar-date Proof of Claim in the Motors Liquidation Company bankruptcy.  (*See* Dkt. 12727).

2.       Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the Form 10-K Annual Report for Motors Liquidation Company GUC Trust for the Fiscal Year Ended March 31, 2014, which was filed with the U.S. Securities and Exchange Commission on May 22, 2014.

3.       Attached hereto as Exhibit 2 is a true and correct copy of the Assignment and Assumption Agreement dated as of December 15, 2011 between Motors Liquidation Company and the Motors Liquidation Company GUC Trust.

4.       Attached hereto as Exhibit 3 is a true and correct copy of excerpts of the Form 8-K Current Report for Motors Liquidation Company GUC Trust dated April 21, 2011, which was filed with the U.S. Securities and Exchange Commission on April 27, 2011.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  New York, New York
        August 19, 2014

                                        /s/ Lisa H. Rubin
                                        Lisa H. Rubin

## EXHIBIT 1

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

———————————

## FORM 10-K

———————————

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

#### For the fiscal year ended March 31, 2014

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

#### For the transition period from _____ to _____

#### Commission File No. 001-00043

———————————

# Motors Liquidation Company GUC Trust
### (Exact name of registrant as specified in its charter)

———————————

| | |
|---|---|
| **Delaware** | **45-6194071** |
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification No.) |

**c/o Wilmington Trust Company,**
**as trust administrator and trustee**
**Attn: David A. Vanaskey Jr., Vice President**
**Rodney Square North**
**1100 North Market Street**
**Wilmington, Delaware**     **19890-1615**
(Address of principal executive offices)     (Zip Code)

#### (302) 636-6019
#### (Registrant's telephone number, including area code)

#### (Former Name or Former Address, if Changed Since Last Report)

———————————

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.    Yes ☐    No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.    Yes ☒    No ☐

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    Yes ☐    No ☒ *

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).    Yes ☒    No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐                                                                Accelerated filer            ☐

Non-accelerated filer  ☒  (Do not check if a smaller reporting company)            Smaller Reporting Company ☐

Indicate by checkmark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
Yes ☐    No ☒

Indicate by check mark whether the registrant has filed all documents and reports required to be filed by Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934 subsequent to the distribution of securities under a plan confirmed by a court.
Yes ☐    No ☒ *

*  The registrant is not required to file reports pursuant to Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934, but has filed all reports required pursuant to the relief granted to the registrant in a No Action Letter from the Division of Corporation Finance of the Securities and Exchange Commission to the registrant dated May 23, 2012.

# PART I

**Item 1.    Business.**

The GUC Trust was formed on March 30, 2011 as a statutory trust under the Delaware Statutory Trust Act, as amended, or the Delaware Act, upon the execution of the Motors Liquidation Company GUC Trust Agreement, or the GUC Trust Agreement (a copy of which, as amended, is filed as Exhibit 3.1 hereto), by Motors Liquidation Company, or MLC, MLC of Harlem, Inc., MLCS, LLC, MLCS Distribution Corporation, Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc., Wilmington Trust Company, not in its individual capacity but solely in its capacity as trust administrator and trustee of the GUC Trust, or the GUC Trust Administrator, and FTI Consulting, Inc., solely in its capacity as trust monitor of the GUC Trust, or the GUC Trust Monitor, and upon the filing of the Certificate of Trust of Motors Liquidation Company GUC Trust with the Office of the Secretary of State of the State of Delaware.

The GUC Trust has no officers, directors or employees. The GUC Trust is administered by the GUC Trust Administrator, which is authorized by the GUC Trust Agreement to engage professionals, or GUC Trust professionals, to assist the GUC Trust Administrator in the administration of the GUC Trust. Accordingly, the GUC Trust and GUC Trust Administrator rely on receiving accurate information, reports and other representations from (i) the GUC Trust professionals, (ii) the GUC Trust Monitor, and (iii) other service providers to the GUC Trust. Notwithstanding such reliance, the GUC Trust Administrator is ultimately responsible for the disclosure provided in this Form 10-K. Among other rights and duties, pursuant and subject to the GUC Trust Agreement, the GUC Trust Administrator has the powers and authority as set forth in the GUC Trust Agreement, including, without limitation, the power and authority to hold, manage, sell, invest and distribute the assets comprising the corpus of the GUC Trust, prosecute and resolve objections to Disputed General Unsecured Claims (as defined below), take all necessary actions to administer the wind-down of the affairs of the Debtors (as defined below), and resolve and satisfy (to the extent allowed) any administrative expenses, priority tax claims, priority non-tax claims and secured claims, or collectively the Residual Wind-Down Claims. The activities of the GUC Trust Administrator are overseen by the GUC Trust Monitor. As further described below, the GUC Trust was formed for the purposes of implementing the Plan (as defined below) as a post-confirmation successor to MLC and resolving Disputed General Unsecured Claims against MLC and its affiliated debtors and debtors-in-possession, or the Debtors, and winding-down the Debtors' affairs, with no objective to engage in the conduct of a trade or business. The GUC Trust is a post-confirmation successor to MLC within the meaning of Section 1145 of title 11 of the United States Code, or the Bankruptcy Code.

*Background: The General Motors Corporation Bankruptcy*

General Motors Corporation, or Old GM, which is also known as MLC, and certain of its direct and indirect subsidiaries Chevrolet-Saturn of Harlem, Inc., n/k/a MLC of Harlem, Inc., Saturn, LLC, n/k/a MLCS, LLC and Saturn Distribution Corporation, n/k/a MLCS Distribution Corporation filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York, or the Bankruptcy Court, on June 1, 2009. On October 9, 2009, Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

On July 5, 2009, the Bankruptcy Court authorized the sale of substantially all of the assets of the Debtors to an acquisition vehicle principally formed by the United States Department of the Treasury, or the U.S. Treasury. On July 10, 2009, the acquisition vehicle, NGMCO, Inc., acquired substantially all of the assets and assumed certain liabilities of the Debtors pursuant to a Master Sale and Purchase Agreement, or, as amended, the MSPA, among Old GM and certain of its debtor subsidiaries and NGMCO, Inc., in a transaction under Section 363 of the Bankruptcy Code, or the 363 Transaction. In connection with the 363 Transaction, Old GM changed its name to Motors Liquidation Company and the acquisition vehicle pursuant to a holding company reorganization became General Motors Company, or (together with its consolidated subsidiaries) New GM.

The primary consideration provided by New GM to the Debtors under the MSPA was 150 million shares of common stock of New GM, or the New GM Common Stock, issued by New GM, amounting to approximately 10% of the outstanding New GM Common Stock at the time of the closing of the 363 Transaction, a series of warrants to acquire 136,363,635 newly issued shares of New GM Common Stock with an exercise price set at $10.00 per share, expiring July 10, 2016, or the New GM Series A Warrants, and another series of warrants to acquire 136,363,635 newly issued shares of New GM Common Stock with an exercise price set at $18.33 per share, expiring July 10, 2019, or the New GM Series B Warrants, and, collectively, the New GM Warrants. Together, the New GM Warrants constituted approximately 15% of the New GM Common Stock on a fully-diluted basis at the time of their issuance. Both the New GM Series A Warrants and the New GM Series B Warrants are subject to customary anti-dilution adjustments. The New GM Common Stock and both series of New GM Warrants are currently listed on the New York Stock Exchange, or the NYSE.

Additional consideration was also provided in the form of (i) the assumption of certain liabilities by New GM, (ii) a credit bid of certain outstanding obligations under (a) certain prepetition debt held by the U.S. Treasury and (b) a debtor-in-possession credit agreement, or the DIP Credit Agreement, held by, as lenders thereunder, the U.S. Treasury and the Governments of Canada and Ontario (through Export Development Canada), and together with the U.S. Treasury, the DIP Lenders, and (iii) the cancellation of certain warrant notes issued to the U.S. Treasury.

On March 18, 2011, the Debtors filed the Debtors' Second Amended Joint Chapter 11 Plan, or the Plan, with the Bankruptcy Court, and on March 29, 2011, or the Confirmation Date, the Bankruptcy Court entered an order confirming the Plan, or the Confirmation Order. The Plan became effective on March 31, 2011, or the Effective Date. On December 15, 2011, or the Dissolution Date, as required by the Plan, MLC filed a Certificate of Dissolution with the Secretary of State of the State of Delaware and MLC was dissolved as of such date. On April 18, 2013, the Bankruptcy Court entered an order granting the GUC Trust's request for entry of a final decree administratively closing each of the Debtors' chapter 11 cases other than that of MLC.

### The Plan and the Formation of the GUC Trust

The Plan treats all creditors and equity interest holders in accordance with their relative priorities under the Bankruptcy Code, and designates 6 distinct classes of claims or equity interests: secured claims, priority non-tax claims, general unsecured claims, property environmental claims, asbestos personal injury claims and equity interests in MLC. The GUC Trust is primarily tasked with the resolution and satisfaction of general unsecured claims. Under the terms of the Plan and following the Special Excess Distribution (as defined below), for each $1,000 in amount of allowed general unsecured claims against the Debtors, or the Allowed General Unsecured Claims, the holders of such claims are entitled to receive (upon delivery of any information required by the GUC Trust) approximately 4.19 shares of New GM Common Stock and approximately 3.81 warrants of each series of New GM Warrants, as well as one unit of beneficial interest in the GUC Trust, or a GUC Trust Unit, subject in each case to rounding under the Plan, the GUC Trust Agreement and/or the rules of any applicable clearing system, and exclusive of any securities received, or to be received, in respect of GUC Trust Units. Holders of disputed general unsecured claims against the Debtors, or the Disputed General Unsecured Claims, will receive subsequent distributions of New GM Common Stock and New GM Warrants (which are collectively called the New GM Securities) and GUC Trust Units, in respect of such claims, only if and to the extent that their Disputed General Unsecured Claims are subsequently allowed, or Resolved Disputed Claims.

The Plan provides for the formation of the GUC Trust to, among other duties, administer the prosecution, resolution and satisfaction of general unsecured claims and Residual Wind-Down Claims against the Debtors. As further described below, the GUC Trust is responsible for implementing the Plan, including distributing the New GM Securities and GUC Trust Units to holders of Allowed General Unsecured Claims in satisfaction of their claims, resolving (that is, seeking allowance or disallowance of all or part of such claims) Disputed General Unsecured Claims that were outstanding as of the Effective Date and distributing New GM Securities and GUC Trust Units in satisfaction of the Resolved Allowed Claims (as defined below).

Under the Plan, the Debtors were required to be dissolved no later than the Dissolution Date. Upon the dissolution of MLC, the GUC Trust assumed responsibility for the winding down of the affairs of the Debtors and resolving and satisfying the Residual Wind-Down Claims.

The GUC Trust had an initial stated term of three years from the Effective Date. On February 6, 2014, the Bankruptcy Court entered an order extending the duration of the GUC Trust to March 31, 2015. The duration of the GUC Trust may in the future be shortened or further extended upon application to and approval by the Bankruptcy Court as necessary to complete the claims resolution process and the wind-down of the Debtors' affairs. The GUC Trust will remain under the jurisdiction of the Bankruptcy Court throughout the term of its existence.

### The GUC Trust Assets

As of the Effective Date, the corpus of the GUC Trust consisted solely of approximately $52.7 million in cash contributed by the Debtors to fund the administrative fees and expenses (including certain tax obligations), or the Wind-Down Costs, incurred by the GUC Trust in administering its duties pursuant to the Plan and the GUC Trust Agreement, or the Administrative Fund. The cash comprising the Administrative Fund was obtained by MLC from the DIP Lenders and is subject to a lien held by the DIP Lenders pursuant to the DIP Credit Agreement, with any excess funds remaining in the Administrative Fund required to be returned to the DIP Lenders after (i) the satisfaction in full of all Wind-Down Costs and other liabilities of the GUC Trust (subject to the terms of the GUC Trust Agreement) and (ii) the winding up of the GUC Trust's affairs. As such, the Administrative Fund cannot be utilized for distributions to holders of Allowed General Unsecured Claims.

Moreover, the usage of the Administrative Fund for the payment of fees and expenses of the GUC Trust is subject to a budget, (the "Budget"), which must be submitted on an annual basis to the GUC Trust Monitor and the DIP Lenders for their approval and is updated quarterly as needed. The GUC Trust Agreement provides that any Wind-Down Costs incurred by the GUC Trust that exceed or are not covered by the Budget cannot be paid from the Administrative Fund, except with written consent of the DIP Lenders or Bankruptcy Court approval, in limited circumstances.

3

*The GUC Trust Units constitute contingent rights to receive the Excess GUC Trust Distributable Assets, including New GM Securities, the value of which will depend on the business, assets, operations and prospects of New GM, regarding which the GUC Trust, the GUC Trust Administrator and the GUC Trust Monitor have no independent knowledge or control.*

By holding beneficial interests in GUC Trust Units, each GUC Trust Unit beneficiary has a contingent right to receive Excess GUC Trust Distributable Assets, which may include New GM Securities. The value of the New GM Securities depends on the business, assets, operations and prospects of New GM, and the GUC Trust, the GUC Trust Administrator and the GUC Trust Monitor have no independent knowledge or control over such matters. Fluctuations in the stock market, adverse developments regarding New GM's business, assets, operations or prospects and general economic and market conditions may adversely affect the value of the New GM Securities, and the value of the distributions that you receive as a beneficiary of the GUC Trust may thus decline. You should consider the "Risk Factors" section and other information in New GM's Annual Report on Form 10-K for the year ended December 31, 2013 and in New GM's subsequently filed Quarterly Reports on Form 10-Q.

*There can be no assurance that an active trading market for the GUC Trust Units exists or will continue to exist, and the GUC Trust, the GUC Trust Administrator and the GUC Trust Monitor will take no actions to facilitate or promote such a trading market.*

There can be no assurance that an active trading market for the GUC Trust Units exists or will continue to exist. Because the GUC Trust Units are not listed on any securities exchange, the liquidity of the GUC Trust Units is limited, and the value of the GUC Trust Units could be negatively impacted. Pursuant to the No Action Letter, the GUC Trust, the GUC Trust Administrator and the GUC Trust Monitor will not take any actions to facilitate or promote a trading market in the GUC Trust Units or any instrument or interest tied to the value of the GUC Trust Units.

*The GUC Trust Unit beneficiaries have no management, control or voting rights beyond their limited ability to remove and replace the GUC Trust Administrator and the GUC Trust Monitor for good cause.*

Beneficiaries of the GUC Trust Units have no title or right to, or possession, management, or control of, the GUC Trust or the GUC Trust assets, including with respect to the resolution of Disputed General Unsecured Claims, the outcome of which could adversely impact the value of the GUC Trust Units. In addition, under the GUC Trust Agreement, beneficiaries of the GUC Trust Units do not have the right to appoint or remove the GUC Trust Administrator or the GUC Trust Monitor, except with respect to the removal of the GUC Trust Administrator or GUC Trust Monitor for good cause.

*In addition to providing services to the GUC Trust, certain agents of the GUC Trust also provide services to other trusts that have been established to administer claims against the Debtors, the beneficiaries of which may have differing interests from the beneficiaries of the GUC Trust.*

In addition to providing services to the GUC Trust, certain agents of the GUC Trust also provide services to other trusts that have been established to administer claims against the Debtors, the beneficiaries of which may have differing interests from the beneficiaries of the GUC Trust. For example, as approved by the Bankruptcy Court at the time it confirmed the Plan, in addition to serving as the GUC Trust Administrator, Wilmington Trust Company also serves as the Avoidance Action Trust Administrator. Similarly, in addition to serving as the GUC Trust Monitor, FTI Consulting, Inc. also serves as monitor for the Avoidance Action Trust.

The GUC Trust also relies significantly upon certain advisory services provided by AlixPartners, LLP and Weil, Gotshal & Manges LLP, which provide similar advisory services to the Motors Liquidation Company DIP Lenders Trust and the Motors Liquidation Company Wind-Down Trust (until its dissolution on December 31, 2013), two other trusts established to administer recoveries from certain assets formerly owned by MLC for the benefit of the DIP Lenders. AP Services, LLC, an affiliate of AlixPartners, LLP, also serves as the trustee and trust administrator for each of such other trusts. While the GUC Trust believes that the foregoing arrangements do not currently present any material conflict of interest, circumstances could arise where potential conflicts of interest could exist. In such circumstances, the GUC Trust will make reasonable efforts to cause its agents to mitigate such conflicts of interest, including by disclosure of the conflict of interest to relevant parties.

*Resolution of the Term Loan Avoidance Action could result in additional Term Loan Avoidance Action Claims, the holders of which would be entitled to share in distributions of New GM Securities and GUC Trust Units from the GUC Trust.*

Term Loan Avoidance Action Claims could potentially arise in the event that the Avoidance Action Trust Administrator is successful in prosecuting the Term Loan Avoidance Action and recovering the proceeds of such legal action. To the extent that the Avoidance Action Trust Administrator is successful in obtaining a judgment against the defendant(s) in the Term Loan Avoidance Action, Term Loan Avoidance Action Claims will arise in the amount of any transfers actually avoided and disgorged pursuant to the Term Loan Avoidance Action. Once such Term Loan Avoidance Action Claims arise, the holders of such claims will be entitled to receive a distribution of New GM Securities and GUC Trust Units from the GUC Trust corresponding to the amounts of such claims. Such a distribution could reduce the numbers of New GM Securities available for distribution to the current beneficiaries of GUC Trust Units and the pro rata share of New GM Securities distributed in the future to which the current beneficiaries of GUC Trust Units are entitled.

# EXHIBIT 2

## ASSIGNMENT AND ASSUMPTION AGREEMENT (GUC TRUST)

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "**Agreement**"), effective as of the 15th day of December, 2011, is made by Motors Liquidation Company, a Delaware corporation ("**MLC**" or "**Assignor**") and Motors Liquidation Company GUC Trust (the "**GUC Trust**" or "**Assignee**") (acting through Wilmington Trust Company, solely in its capacity as trust administrator and trustee of the GUC Trust and not in its individual or any other capacity (the "**GUC Trust Administrator**")).

WHEREAS, on June 1, 2009, MLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**");

WHEREAS, MLC's Chapter 11 case is being jointly administered with the chapter 11 cases of certain of its affiliates under Case No. 09-50026 (REG) (the "**Case**");

WHEREAS, in connection with the Case, on March 18, 2011, the Debtors filed that certain Second Amended Joint Chapter 11 Plan with the Bankruptcy Court (such plan, as it may be modified, supplemented or amended from time to time, the "**Plan**");

WHEREAS, capitalized terms used but not defined herein shall have the meanings set forth in the Plan;

WHEREAS, on March 29, 2011, the Bankruptcy Court approved the Plan pursuant to that certain Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure, filed with the Bankruptcy Court as Docket 9941 (the "**Confirmation Order**");

WHEREAS, on March 31, 2011 (the "**Effective Date**"), the Plan became effective;

WHEREAS, the Plan provides that from the Effective Date through the date of the dissolution of MLC, the Debtors have the right to object to Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims;

WHEREAS, the Plan defines "Residual Wind-Down Assets" as the Cash necessary to fund resolution of Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims, and the Cash reserved to pay such Administrative Expenses and Claims;

WHEREAS, pursuant to Section 6.10 of the Plan, upon the dissolution of MLC, the Residual Wind-Down Assets and the Indenture Trustee/Fiscal and Paying Agent Reserve Cash are to be transferred to the GUC Trust, *provided that* with respect to the Residual Wind-Down Assets, Section 5.2(b) of the Plan provides that the Debtors shall only transfer Cash in the amount, based on the Debtors' reasonable estimate, necessary to satisfy the ultimate Allowed amount of all remaining unpaid Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims;

WHEREAS, pursuant to Section 5.2(a) of the Plan, all remaining New GM Securities held by Post-Effective Date MLC (the "**Remaining New GM Securities**") shall be transferred, on or after December 15, 2011, to the GUC Trust free and clear of all liens, claims, and encumbrances, but subject to

any obligations imposed by the Plan;

WHEREAS, the Debtors have provided appropriate and customary instructions to the transfer agent for the New GM Stock and the custodian for the New GM Warrants to deliver the Remaining New GM Securities to the GUC Trust (the "**Instructions**");

WHEREAS, pursuant to Section 2.3(a) and Section 2.3(e)(i) of the GUC Trust Agreement, all Other GUC Trust Administrative Cash (as defined in the GUC Trust Agreement), which includes the GUC Reporting Cash (as defined below), shall be transferred to the GUC Trust free and clear of all liens, claims, and encumbrances;

WHEREAS, pursuant to an engagement letter dated May 29, 2009, executed by and between MLC and AP Services, LLC ("Alix"), MLC provided a retainer to Alix against which Alix is entitled to apply certain future fees and expenses (the "**Retainer**");

WHEREAS, as of the date hereof, the Retainer, in which MLC possesses a remainder interest, amounts to $1,085,529.00 and is in the possession of Alix;

WHEREAS, the Debtors have determined that, based upon their reasonable estimate, Cash in the amount of $39,964,510.00 is sufficient to fund resolution of any remaining unpaid Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims, and to pay the ultimate Allowed amount of such Administrative Expenses and Claims; and

WHEREAS, MLC is the legal owner of the Assigned Assets and Agreements (as defined below) and in accordance with the Plan, Confirmation Order and the GUC Trust Agreement, MLC desires to transfer, assign and deliver to Assignee all of its right, title and interest in and to (a) the Residual Wind-Down Assets, (b) the Indenture Trustee/Fiscal and Paying Agent Reserve Cash, (c) the Remaining New GM Securities, (d) the Rights and Defenses (as defined below), (e) the GUC Reporting Cash (as defined below), (f) the Retainer and (g) certain agreements between MLC and third-party service providers, and Assignee desires to accept such transfer, assignment and delivery and assume the responsibility, power and authority to administer the resolution and payment of the Assumed Claims (as defined below), in each case, in accordance with and subject to the terms of the Plan, the Confirmation Order and the GUC Trust Agreement and on such terms and conditions as described below.

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants and agreements hereinafter contained, the parties hereby agree as follows:

## ARTICLE I

### Assignment and Assumption

SECTION 1.1.  Assignment.  Pursuant to the Plan and the GUC Trust Agreement, at the Effective Time, MLC hereby transfers, assigns and delivers to Assignee (the "**Assignment**") all of MLC's right, title and interest in and to the following:

(a)  the Residual Wind-Down Assets, which shall consist of an amount of Cash equal to $39,964,510.00 and which the Debtors, based upon their reasonable estimate in accordance with Section 5.2(b) of the Plan, have determined is sufficient to, as of the Effective Time, fund the resolution of any remaining unpaid Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims, and to pay the ultimate Allowed amount of such Administrative Expenses and Claims;

(b)  the Indenture Trustee/Fiscal and Paying Agent Reserve Cash, which shall consist of an amount in cash equal to $1,364,509.00;

(c)  the Remaining New GM Securities pursuant to the Instructions;

(d)  any and all defenses and counterclaims of MLC to each Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, Secured Claim and, consistent with Section 8.1(b)(iv) of the GUC Trust Agreement, each Disputed General Unsecured Claim, including, without limitation, all defenses and claims for avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, cross-claim, setoff, recoupment, disallowance, impairment, indemnification, contribution and any other challenge of any kind under the Bankruptcy Code or applicable domestic or foreign non-bankruptcy law or regulation; provided, however, that to the extent MLC is not permitted to transfer, assign and deliver its interest in any of the foregoing, MLC hereby appoints the Assignee as its agent to administer the resolution of the Assumed Claims (collectively, the "**Rights and Defenses**");

(e)  the Retainer;

(f)  an amount in cash equal to $2,049,608.00 (the "**GUC Reporting Cash**", and together with the Residual Wind-Down Assets, the Indenture Trustee/Fiscal and Paying Agent Reserve Cash, the Remaining New GM Securities, the Rights and Defenses and the Retainer, the "**Assigned Assets**"); and

(g)  the contracts listed on Schedule A hereto (the "**Assigned Agreements**", and together with the Assigned Assets, the "**Assigned Assets and Agreements**");

free and clear of all Claims and Encumbrances (other than, solely with respect to the Residual Wind-Down Assets, the Assumed Claims), but subject to any obligations imposed by the Plan or the Confirmation Order (including, without limitation, any Claim or Encumbrance in favor of the DIP Lenders that remains effective pursuant to the Plan).

SECTION 1.2.  Assumption.  Pursuant to the Plan and the GUC Trust Agreement, at the Effective Time, and upon its receipt of the Cash consideration set forth in Section 1.1(a), (b) and (f) above, and its receipt of the Remaining New GM Securities pursuant to Section 1.1(c) above, Assignee hereby (i) accepts such transfer, assignment and delivery of the Assigned Assets and Agreements, and (ii) assumes (the "**Assumption**", and together with the Assignment, the "**Assignment and Assumption**") the responsibility, power and authority to prosecute, resolve and settle objections to and satisfy the Disputed Administrative Expenses, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Secured Claims, and any liability arising under the Assigned Agreements (collectively the "**Assumed Claims**," which include but are not limited to the claims set forth on Schedule B hereto).  Nothing herein shall be deemed to constitute an admission or acknowledgement regarding the allowance of any Assumed Claim.  Other than as expressly set forth in this Section 1.2 or as otherwise provided by the Plan or Confirmation Order, Assignee is not assuming any obligations or liabilities of Assignor.

SECTION 1.3.  Closing Transaction.  Subject to the terms and conditions set forth in this Agreement, and in accordance with the Plan, the Confirmation Order and the GUC Trust Agreement, Assignor shall pay to Assignee, by wire transfer of immediately available funds to the accounts specified by Assignee on Schedule C hereto, cash in the amounts set forth on Schedule C which, in the aggregate, is an amount equal to the cash portion of the Assigned Assets.

SECTION 1.4.  <u>Further Assurances</u>.  Prior to the dissolution of MLC, to further give effect to the Assignment and Assumption, the parties hereto agree to execute and deliver any such additional documents or instruments of assignment or transfer, as may be reasonably necessary or appropriate to effectuate the Assignment and Assumption described in this <u>Article I</u> or that is contemplated by the Plan or the GUC Trust Agreement.

## ARTICLE II

<u>Miscellaneous</u>

SECTION 2.1.  <u>Effective Time</u>.  The Assignment and Assumption shall be effective immediately upon the execution of this Agreement by each of Assignor and Assignee and the satisfaction of the conditions set forth in Section 1.3 above (the "**<u>Effective Time</u>**").

SECTION 2.2.  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code is applicable, this Agreement shall be construed and enforced in accordance with, and the rights and obligations of the parties hereunder shall be governed by, the laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

SECTION 2.3.  <u>Counterparts</u>.  This Agreement may be executed in multiple counterparts (including by means of telecopied or PDF signature pages), each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

SECTION 2.4.  <u>GUC Trust Administrator</u>.  Nothing herein shall be deemed to impose or constitute a claim upon or liability or obligation of Wilmington Trust Company in its individual capacity. It is the understanding of the parties hereto that Wilmington Trust Company shall not, under any event or circumstance, be individually liable for any fee, cost, charge, liability or other obligation described herein or conveyed hereby.  The GUC Trust Administrator makes no representation, warranty or assurance that the cash transferred to the Assignee pursuant to Section 1.1(a) above will actually be sufficient to fund resolution of Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims, and to pay the ultimate Allowed amount of such Claims, and expressly disclaims any resulting liability (other than as set forth in the Plan) to the extent that such Cash is insufficient for such purposes.

*[Signature page follows]*

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed and delivered as of the day and year first above written.

**MOTORS LIQUIDATION COMPANY**

By: _____

Name: Albert A. Koch
Title:    President & Chief Executive Officer

**MOTORS LIQUIDATION COMPANY GUC TRUST**

By: WILMINGTON TRUST COMPANY, solely in its capacity as GUC Trust Administrator

By: _____

Name: David A. Vanaskey, Jr.
Title:    Vice President

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the day and year first above written.

MOTORS LIQUIDATION COMPANY

By: _____
Name:   Albert A. Koch
Title:   President & Chief Executive Officer


MOTORS LIQUIDATION COMPANY GUC TRUST

By: WILMINGTON TRUST COMPANY, solely in its capacity as GUC Trust Administrator

By: _____
Name:   David A. Vanaskey, Jr.
Title:   Vice President

[SIGNATURE PAGE TO ASSIGNMENT AND ASSUMPTION AGREEMENT (GUC TRUST)]

## SCHEDULE A

**Assigned Agreements**

1.    Software licenses agreement for MAS 90 accounting system for MLC, customer number 1313829250, user key 207A862CE964E108058D.
2.    Hosting services agreement for MAS 90 accounting system by and between MLC and Secure-24, Inc. dated June 18, 2008.

## **SCHEDULE B**

### **Claims**

1.  The following tax obligations:

- Any tax payments required as a result of the assembly plant in Moraine being undervalued for the 2009 and 2010 tax years.
- Approximately $1,188,000.00 owed to General Motors Company or one of its affiliates to reimburse General Motors Company or one of its affiliates for property taxes it paid on behalf of MLC.
- All amounts owed to General Motors Company or one of its affiliates under the tax true-up process for property taxes paid by General Motors Company or one of its affiliates on behalf of MLC.
- Approximately $319,200.00 owed to General Motors Company or one of its affiliates to reimburse General Motors Corporation or one of its affiliates for property taxes it paid on behalf of MLC as a result of a clerical error by Wayne County, Michigan.
- Approximately $2,569,000.00 owed to General Motors Company or one of its affiliates for Motors Company or one of its affiliates for tax credits utilized by MLC for the 2009 and 2010 tax years.
- Michigan Business Tax liability of approximately $25,000.00 for 2011.

<u>**SCHEDULE C**</u>

**Wire Instructions**

<u>Residual Wind-Down Assets</u>:

| | |
|---|---|
| Account Holder: | Wilmington Trust Company |
| Bank: | Wilmington Trust Company |
| ABA: | ███████ |
| Account Name: | MLC GUC Residual Wnd-Dn Assets Sub |
| Account Number: | ██████ |
| Attn: | David Vanaskey |
| | |
| Reference: | Assignment of Residual Wind-Down Assets |
| | |
| Cash Payment: | $39,964,510.00 |

<u>Indenture Trustee/Fiscal and Paying Agent Reserve Cash</u>:

| | |
|---|---|
| Account Holder: | Wilmington Trust Company |
| Bank: | Wilmington Trust Company |
| ABA: | ███████ |
| Account Name: | MLC GUC Ind TTEE/Fis PA Res Sub Acct |
| Account Number: | ██████ |
| Attn: | David Vanaskey |
| | |
| Reference: | Assignment of Indenture Trustee/Fiscal and Paying Agent Reserve Cash |
| | |
| Cash Payment: | $1,364,509.00 |

<u>GUC Reporting Cash</u>:

| | |
|---|---|
| Account Holder: | Wilmington Trust Company |
| Bank: | Wilmington Trust Company |
| ABA: | ███████ |
| Account Name: | MLC GUC Rptg Trsfr Holdback Sub Acct |
| Account Number: | ██████ |
| Attn: | David Vanaskey |
| | |
| Reference: | Assignment of GUC Reporting Cash |
| | |
| Cash Payment: | $2,049,608.00 |

# **EXHIBIT 3**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, DC 20549

## FORM 8-K

### CURRENT REPORT

**Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934**

**Date of report (Date of earliest event reported): April 21, 2011**

# Motors Liquidation Company GUC Trust

#### (Exact Name of Registrant as Specified in Charter)

| **Delaware** | **1-43** | **45-6194071** |
|:---:|:---:|:---:|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**c/o Wilmington Trust Company, as trust administrator and trustee
Attn: David A. Vanaskey Jr., Vice President
Rodney Square North
1100 North Market Street
Wilmington, Delaware**  **19890-1615**
**(Address of Principal Executive Offices)**  **(Zip Code)**

**Registrant's telephone number, including area code: (302) 636-6019**

*(Former Name or Former Address, if Changed Since Last Report)*

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01    Other Events.**

On April 21, 2011, the Motors Liquidation Company GUC Trust (the "GUC Trust") announced that, pursuant to the Plan (as defined below) and the GUC Trust Agreement (as defined below), it had directed Motors Liquidation Company, f/k/a General Motors Corporation ("MLC") to make an initial distribution (the "Initial Distribution") of more than 75 percent of the New GM Securities (as defined below) to holders of Allowed General Unsecured Claims (as defined below).

Background

As previously discussed in MLC's Current Report on Form 8-K filed on April 4, 2011, MLC, Chevrolet-Saturn of Harlem, Inc., n/k/a MLC of Harlem, Inc., Saturn, LLC, n/k/a MLCS, LLC, and Saturn Distribution Corporation, n/k/a MLCS Distribution Corporation (collectively, the "Initial Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code"), with the bankruptcy court for the Southern District of New York (the "Bankruptcy Court") on June 1, 2009. On October 9, 2009, Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc. (collectively with the Initial Debtors, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

On July 5, 2009, the Bankruptcy Court authorized the sale (the "Sale") of substantially all of the assets of the Initial Debtors to a U.S. Treasury sponsored purchaser, NGMCO, Inc. n/k/a General Motors Company ("New GM").[1] In addition to the assumption of certain liabilities by New GM, a credit bid of outstanding obligations under certain prepetition debt held by the U.S. Treasury and a debtor-in-possession credit agreement (the "DIP Credit Agreement") held by the U.S. Treasury and the Governments of Canada and Ontario (through Export Development Canada) ("EDC"), and the cancellation of certain warrants issued to the U.S. Treasury, the primary consideration provided by New GM to the Initial Debtors was 150 million shares of common stock issued by New GM ("New GM Stock"), warrants to acquire 136,363,635 newly issued shares of New GM Stock with an exercise price set at $10.00 per share ("New GM $10.00 Warrants"), and warrants to acquire 136,363,635 newly issued shares of New GM Stock with an exercise price set at $18.33 per share ("New GM $18.33 Warrants," and together with the New GM $10.00 Warrants, the "New GM Warrants").[2] In addition, the agreement governing the Sale provides that in the event that the aggregate total allowed general unsecured claims against the Initial Debtors exceed $35 billion, New GM will issue additional New GM Stock in an amount up to 2% of the total New GM Stock outstanding as of the closing of the Sale (the "Additional Shares," and together with the New GM Stock and the New GM Warrants, the "New GM Securities").

---

[1]    Formerly known as General Motors Holding Company, General Motors Company is a Delaware corporation formed as part of that certain holding company reorganization that occurred on October 19, 2009, pursuant to which all of the outstanding shares of common stock and preferred stock of the prior General Motors Company (now known as "General Motors LLC") were exchanged on a one-for-one basis for shares of common stock and preferred stock of the newly organized holding company that now bears the name General Motors Company. General Motors Company has a 100% ownership interest in General Motors Holdings LLC, a Delaware limited liability company, and General Motors LLC is a direct wholly-owned subsidiary of General Motors Holdings LLC.

[2]    The number of shares of New GM Common Stock, the number of shares issuable upon exercise of the New GM Warrants to acquire New GM Common Stock, and the exercise price of the New GM Warrants were adjusted to account for a three-for-one stock split of the New GM Common Stock effected in connection with the initial public offering of the New GM Common Stock in November 2010.

2

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: April 27, 2011

**MOTORS LIQUIDATION COMPANY GUC TRUST**

By: Wilmington Trust Company, not in its individual capacity, but solely in its capacity as trust administrator and trustee of the Motors Liquidation Company GUC Trust

By:    /s/ David A. Vanaskey
Name: David A. Vanaskey
Title:  Vice President of Wilmington Trust
       Company

8