KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re                                                    :        Chapter 11
                                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,    :        Case No.:  09-50026 (REG)
          f/k/a General Motors Corp., *et al.*           :
                                                         :
                              Debtors.                   :        (Jointly Administered)
                                                         :
------------------------------------------------------------------x


**RESPONSE BY GENERAL MOTORS LLC TO THE "LIMITED" NO STAY
PLEADING FILED BY THE ORANGE COUNTY PLAINTIFF IN CONNECTION
WITH THE COURT'S JULY 8, 2014 ORDER ESTABLISHING
STAY PROCEDURES FOR NEWLY-FILED CASES**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 3

INTRODUCTION ............................................................................................... 1

BACKGROUND RELEVANT TO RESPONSE ...................................................... 5

RESPONSE ........................................................................................................ 6

I.    The Orange County Plaintiff Is Enjoined From Commencing and Continuing
      Its Action Against New GM. ....................................................................... 6

II.   The Orange County Plaintiff's Contention That Its Claims Are Not Subject
      to the Sale Order and Injunction Is Wrong but, Regardless, It Should Be
      Decided by this Court as Part of Resolving the Threshold Issues. ............ 10

III.  Plaintiff's Forum-Shopping Attempt With Respect to its Motion to Remand
      Should Not Exempt It From the Stay ......................................................... 14

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Baron v. Merck & Co., Inc.*,
  No. 06-1183, 2006 WL 2521615 (E.D. Mo. Aug. 30, 2006 .................................................. 15

*Buie v. Blue Cross & Blue Shield of Kan. City, Inc.*,
  No. 05-0534, 2005 WL 2218461 (W.D. Mo. Sept. 13, 2005) ............................................... 14

*Grable & Sons Metal Products v. Darue Engineering & Manufacturing*,
  545 U.S. 308 (2005) ............................................................................................................. 10

*In re Air Crash Disaster at Juneau, Alaska, on Sept. 4, 1971*,
  MDL No. 107, 360 F. Supp. 1406 (J.P.M.L. 1973) .............................................................. 15

*In re Am. Online Spin-Off Accounts Litig.*,
  2005 WL 5747463 (C.D. Cal. 2005) ..................................................................................... 16

*In re Chateaugay*,
  115 B.R. 28 (Bankr. S.D.N.Y. 1988) .................................................................................... 11

*In re Commonwealth Cos., Inc.*,
  913 F.2d 518 (8th Cir. 1990) ............................................................................................ 3, 12

*In re Darvocet Prods. Liab. Litig.*,
  2012 WL 7764151 (J.P.M.L. 2012) ....................................................................................... 14

*In re Enron*,
  314 B.R. 524 (Bankr. S.D.N.Y. 2004) ............................................................................... 3, 10

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  899 F. Supp. 2d 1374 (J.P.M.L. 2012) ............................................................................... 4, 15

*In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.*,
  229 F. Supp. 2d 1377 (J.P.M.L. 2002) .................................................................................. 15

*In re Gadolinium Contrast Dyes Prods. Liab. Litig*,
  2012 WL 78073401 (J.P.M.L. 2012) ..................................................................................... 14

*In re Gen. Mod. Rice Litig.*,
  2011 WL 7143470 (J.P.M.L. 2011) ....................................................................................... 15

*In re Island Club Marina, Ltd.*,
  38 B.R. 847 (Bankr. N.D. Ill., 1984) .................................................................................... 11

*In re Ivy*,
  901 F.2d 7 (2d Cir. 1990) ...................................................................................................... 15

*In re King Memorial Hosp., Inc.*,
  4 B.R. 704 (Bankr. S.D. Fla. 1980) ................................................................. 12

*In re New Eng. Mut. Life Ins. Co. Sales Pracs. Litig.*,
  324 F. Supp. 2d 288 (D. Mass. 2004) .......................................................... 4, 15

*In re PBBPC, Inc.*,
  467 B.R. 1 (Bankr. D. Mass. 2012) ................................................................. 13

*In re Prudential Ins. Co. Sales Pracs. Litig.*,
  170 F. Supp. 2d 1346 (J.P.M.L. 2001) ............................................................ 15

*In re Reliance Group Holdings, Inc.*,
  273 B.R. 374 (Bankr. E.D. Pa. 2002)......................................................... 10, 11

*In re The Billing Resource*,
  2007 WL 3254835 (Bankr. N.D. Cal. 2007) .................................................. 13

*In re The Fairchild Corp.*,
  2009 WL 4546581 (Bankr. D. Del. 2009)........................................................ 9

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
  290 F. Supp. 2d 13768 (J.P.M.L. 2003) ......................................................... 14

*In re WBQ Partnership*,
  189 B.R. 97 (Bankr. E.D. Va. 1995) ............................................................... 13

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
  596 F.2d 70 (2d Cir. 1979)............................................................................. 18

*Matter of IDH Realty, Inc.*,
  16 B.R. 55 (Bankr. E.D.N.Y. 1981) ............................................................... 11

*Nekritz v. Canary Capital Partners, LLC*,
  Civ. A. No. 03–5081, 2004 WL 1462035 (D.N.J. 2004) ............................... 15

*Pennsylvania v. McGraw-Hill, Co.*,
  No. 1:14-00605, 2013 WL 1397434 (M.D. Pa. Apr. 5, 2013) ................................ 16

*State of Mo. v. U.S. Bankr. Court for E. D. of Arkansas*,
  647 F.2d 768 (8th Cir. 1981)........................................................................... 12

*Tennessee ex rel. Cooper v. McGraw-Hill Cos.*,
  No. 3:13-00193, 2013 WL 1785512 (M.D. Tenn. Apr. 25, 2013)........................... 15

*United States v. Seitles*,
  106 B.R. 36 (S.D.N.Y. 1989), vacated on other grounds, 742 F. Supp. 1275 (S.D.N.Y. 1990)11

4

**Statutes**

11 U.S.C. § 105(a) ...................................................................................................... 12

28 U.S.C. § 1452(a) ................................................................................................... 10

28 U.S.C. §§ 1331 ..................................................................................................... 10

28 U.S.C. §§ 1441 ..................................................................................................... 10

**Other Authorities**

2 Norton Bankr. L. & Prac. 3d § 43:15 ..................................................................... 12

314 B.R. 524, 537 ...................................................................................................... 11

Bankruptcy Code section 362(b)(4)") ........................................................................ 13

Collier on Bankruptcy ¶ 362.05 ................................................................................ 12

H.R.Rep. 595, 95th Cong., 1st Sess. 342 (1977) ...................................................... 13

S.Rep.No. 989, 95th Cong., 2d Sess. 51, reprinted in (1978) ................................... 13

U.S.Code & Cong.News 5787, 5837.) ...................................................................... 13

U.S.Code & Cong.News 5963, 6298 ......................................................................... 13

KE 33118344.15

## INTRODUCTION

1.    In approving General Motors Corporation's ("Old GM's") sale of substantially all of its assets to General Motors LLC ("New GM"), this Court held that New GM would not "have any liability for any claim that arose prior to the Closing Date, relates to the production of vehicles prior to the Closing Date, or otherwise is assertable against [Old GM] or is related to the Purchased Assets prior to the Closing Date." (Sale Order and Injunction, ¶ 46 [ECF No. 2968].)[1] The Court also enjoined "all persons and entities, including but not limited to . . . litigation claimants" from asserting such claims against New GM. (*Id.* ¶ 8.) The term "entities" includes governmental units which, in turn, includes States (*i.e.*, California). *See* Bankruptcy Code §§ 101(15), (27).

2.    Like plaintiffs in many other Ignition Switch Actions,[2] the People of the State of California, acting by and through Orange County District Attorney Tony Rackauckas (the "Orange County Plaintiff") seek to plead around the Sale Order and Injunction by asserting that the Orange County Complaint intends to hold New GM liable only for its own conduct after the effective date of the Sale Order and Injunction. (*See*, *e.g*., Cmplt. ¶ 3, attached hereto at Ex. A.) On its face, however, the Orange County Complaint specifically alleges conduct by Old GM, blurs the distinction between Old GM and New GM, and relies on defects in numerous vehicles and parts manufactured by Old GM before the Sale. (*See, e.g., id.* at ¶¶ 31-150, 179-206.) Therefore, as this Court held in rejecting similar arguments by the *Phaneuf*, *Elliott*, and *Phillips*

---

[1]    New GM did agree to assume certain Old GM liabilities, but none of them are implicated by the Orange County Plaintiff's No-Stay Pleading.

[2]    Capitalized terms not otherwise defined herein shall have the meaning defined in the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("Motion to Enforce"), dated April 21, 2014 [Dkt. No. 12620].

plaintiffs, the case is subject to New GM's Motions to Enforce the Sale Order and Injunction.[3] (*See* Decision With Respect to No Stay Pleading (Phaneuf Plaintiffs) 7/30/14 [Dkt. 12791] ("*Phaneuf* Stay Decision"); Decision With Respect To No Stay Pleading And Related Motion To Dismiss For Lack Of Subject Matter Jurisdiction (Elliott Plaintiffs), 8/6/14 [Dkt. 12815] ("*Elliott* Stay Decision"); August 18, 2014 Hr'g Tr. at 81:10-83:8 ("*Phillips* Stay Decision").) As a result, under the procedures set forth in the Court's May 16, 2014 "Scheduling Order"[4] and July 8, 2014 Order Establishing Stay Procedures for Newly-Filed Ignition Switch Actions, the case should remain stayed for all purposes pending the Court's resolution of certain due process and other issues (the "Threshold Issues") relating to the Motions to Enforce—a process agreed to by all but four plaintiffs in the 110 Ignition Switch Actions.[5]

3.    The Orange County Plaintiff argues that because its case is brought by a governmental unit, the Complaint is not subject to federal court jurisdiction pursuant to 28 U.S.C. § 1452(a). (No Stay Pleading at 2 [Dkt. 12862].) But as a matter of law, and under the circumstances here where the Orange County Plaintiff primarily is seeking pecuniary relief,

---

[3]    *See* April 21, 2014 Motion of General Motors LLC pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction [Dkt. 12620] (the "Ignition Switch Actions Motion to Enforce") and August 1, 2014 Motion of General Motors LLC pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other than Ignition Switch Actions) [Dkt. 12808] (the "Monetary Relief Actions Motion to Enforce"). New GM also has filed a third Motion to Enforce with respect to claims arising from pre-sale accidents, which is not applicable to the Orange County Complaint. *See* August 1, 2014 Motion of General Motors LLC pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction against Plaintiffs in Pre-Closing Accident Lawsuits [Dkt. 12807] (the "Pre-Closing Accidents Motion to Enforce").

[4]    "Scheduling Order" means the Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 111 U.S.C. §§ 105 and 363 to Enforce the Court's July 6, 2009 Sale Order and Injunction, (II) Objection Filed By Certain Plaintiffs in Respect Thereto, and (III) Adversary Proceeding No. 14-01929 on May 16, 2014.

[5]    In addition to the *Phaneuf* and *Elliott* Plaintiffs, and the Orange County Plaintiff here, the *Sesay* Plaintiffs (represented by the same counsel as the Elliott Plaintiffs) have filed a no-stay pleading. (Plaintiffs' No Stay Pleading, Motion For Order Of Dismissal For Lack Of Subject Matter And Personal Jurisdiction, Objections To GM's Motion To Enforce, To The Court's Orders As Applied To Any Of Their Claims, To "Designated Counsel" Or Any Other Person Not A Party To Or Interested In The Controversy Between Nondebtor GM And Themselves Being Heard In Connection With Their Controversy, And For Related Relief, 8/21/14 [Dkt. 12868].) No other plaintiff has done so with respect to any of the three Motions to Enforce.

2

Plaintiff is wrong.  *See, e.g., In re Enron*, 314 B.R. 524 (Bankr. S.D.N.Y. 2004) (holding that when primary purpose of government lawsuit is to seek money damages or other monetary relief for past conduct, and not to prevent future conduct that could harm the public health or safety, the "police or regulatory power" exception does not apply).  And regardless of whether it is exercising a police power, the exception to the automatic stay that the Orange County Plaintiff relies upon is not at issue here because a governmental unit is not exempt from a bankruptcy court's express injunction, such as the Sale Order and Injunction.  *See, e.g.*, 3 Collier on Bankruptcy ¶ 362.05; *see also In re Commonwealth Cos., Inc.*, 913 F.2d 518, 527 (8th Cir. 1990) (bankruptcy court has "ample other powers" to stay a governmental action, "including the discretionary power under 11 U.S.C. § 105(a)" to issue an express injunction).

4.       The Orange County Plaintiff acknowledges the applicability of the Court's Sale Order and Injunction.  It agrees that it is subject to this Court's jurisdiction "and agree[s] to the terms of the stay."  (No Stay Pleading at 8 [Dkt. 12862].)  However, it requests in its Limited No Stay Pleading that "it be given the opportunity to oppose JPML transfer and to proceed with a motion to remand this action back to the California Orange County Superior Court where it was originally filed. . . ." (*Id*. at 2.)

5.       This request should be denied.  At its heart, the Limited No-Stay Pleading is nothing more than a forum-shopping exercise.  Plaintiff concedes that even if its remand motion were to be granted, the Orange County Complaint "would be stayed [in state court] pending further proceedings before this Court." (*Id*. at 2.)  Thus, all that Plaintiff wants is "to be able to proceed with a motion to remand *before Judge Selna* . . . ." (*Id*. at 9) (emphasis added), rather than have the remand matter decided by Judge Furman in the MDL.[6]  But the overwhelming

---

[6]    During a meet-and-confer teleconference between counsel for the parties on August 19, 2014, counsel for New GM expressly agreed that the Orange County Plaintiff could file the Motion for Remand in the MDL Court, and

weight of authority holds that it is the MDL transferee court that is best-positioned to decide remand motions in a consistent and uniform manner post-transfer.  *See, e.g.*, *In re New Eng. Mut. Life Ins. Co. Sales Pracs. Litig.*, 324 F. Supp. 2d 288, 291–92 (D. Mass. 2004) ("The Judicial Panel on Multidistrict Litigation has concluded repeatedly that pending motions to remand MDL-transferred actions to their respective state courts can be presented to and decided by the transferee judge."); *see also In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 899 F. Supp. 2d 1374, 1376 (J.P.M.L. 2012) ("Plaintiffs in the removed derivative actions can present their pending motions for remand to state court to the transferee court.").  Indeed, one such remand motion is currently pending before Judge Furman in *Sumners v. General Motors, LLC* (MDL 2543, ECF 182), and he already has set a prompt briefing schedule.  (MDL Order No. 8, ECF 249).  Thus, consistent with this settled law, Judge Furman can and should decide the Orange County Plaintiff's Motion to Remand, and the carefully-crafted stay procedures implemented by this Court should remain in place.  As the Orange County Plaintiff admits that it does not actually wish to proceed with the underlying action even if it were remanded, it will suffer no prejudice from allowing the MDL court to decide remand.

6.      In short, there simply is no legal or practical reason to have the Plaintiff's remand motion decided ahead of everything else in the Ignition Switch Actions—or by a different judge. Allowing an exception for the Orange County Plaintiff's remand motion would risk inconsistent rulings in different districts, contrary to well-established federal precedent, and would invite similar requests for "limited" exceptions by plaintiffs in other removed cases.  This would be unfair to plaintiffs in the more than 100 other cases who have agreed to a stay, and would

---

that it would be heard on such schedule as Judge Furman deemed appropriate.  Plaintiff's counsel refused, insisting that the Motion to Remand be heard only by Judge Selna in the Central District of California.  Prior to MDL consolidation, Plaintiff's counsel argued before the JPML that the MDL should be assigned to Judge Selna; that request was denied and the MDL was assigned to Judge Furman.

4

undermine the Court's efforts to manage this contested matter efficiently, to the detriment of all parties. The Orange County Plaintiff's Limited No-Stay Pleading should be denied.

### BACKGROUND RELEVANT TO RESPONSE

7.       On April 21, 2014, New GM filed the Ignition Switch Actions Motion to Enforce the Sale Order and Injunction, contending that "most of the claims in the Ignition Switch Actions related to vehicles or parts manufactured and sold by Old GM; that the Ignition Switch Actions assert liabilities not assumed by New GM; and that the Sale Order's free and clear provisions proscribe such claims." (*See Phaneuf* Stay Decision at 2-3.)   After input from all interested parties (*i.e.*, New GM, lawyers designated by the plaintiffs' lawyers community to speak on their behalf ("Designated Counsel"), counsel for plaintiffs in a related adversary proceeding, counsel for the Motors Liquidation Company GUC Trust, and counsel for certain holders of GUC Trust units), the Court determined that while the litigation process was underway, plaintiffs in the Ignition Switch Actions would either (i) agree to enter into a stipulation ("Stay Stipulation") with New GM staying the Ignition Switch Actions that they had brought elsewhere, or (ii) file with the Bankruptcy Court a "No-Stay Pleading"—as later defined in the May 16, 2014 Scheduling Order—setting forth why they believed their Ignition Switch Actions should not be stayed. (*See Phaneuf* Stay Decision, at 6 [Dkt. 12791].)   These procedures were subsequently extended to newly-filed actions on July 8, 2014. (Order Granting Motion Of General Motors LLC To Establish Stay Procedures For Newly-Filed Ignition Switch Action, 7/8/14 [Dkt. 16764].)  Any issues other than the Threshold Issues relating to New GM's Motion to Enforce would be deferred until the Threshold Issues were determined. (*See* Scheduling Order ¶ 7 at 6; Supp. Scheduling Order, at 3.)

8.       After the Orange County Plaintiff filed this action on June 27, 2014, New GM filed a Notice of Removal (C.D. Cal. No. 8:14-cv-01238, ECF 1), and filed a Notice of Tag-

Along Action with the JPML, as it was required to do pursuant to J.P.M.L. Rule 6.2(d). (J.P.M.L. ECF 399; *see also* Panel R. 6.2 (d) ("Any party . . . shall promptly notify the Clerk of the Panel of any potential tag-along actions in which that party is also named[.]").)  The Orange County Action was added to the Sixth Supplement to Schedule 1 to New GM's Ignition Switch Actions Motion to Enforce, and New GM then provided to the Orange County Plaintiff a copy of the Stay Stipulation and, after receiving a seven-day extension from GM, the Plaintiff filed its "Limited" No Stay Pleading with this Court on August 19, 2014.[7]  [Dkt. 12862.]  Three days later, the Orange County Plaintiff filed its Motion to Remand in the Central District of California.  (Notice of Motion to Remand by Plaintiff the People of the State of California, No. 8:14-cv-01238, ECF 14, 8/22/14.)

## RESPONSE

**I.    THE ORANGE COUNTY PLAINTIFF IS ENJOINED FROM COMMENCING AND CONTINUING ITS ACTION AGAINST NEW GM.**

As in *Phaneuf*, *Elliott*, and *Phillips*, and in many other cases subject to the Motions to Enforce, the Orange County Plaintiff attempts to avoid the Sale Order and Injunction by asserting that its claims are against New GM only.  (*See* No Stay Pleading at 4.)  The Court rejected that argument in *Phaneuf*, *Elliott*, and *Phillips*, holding that because the complaints in those cases materially relied upon Old GM conduct and vehicles and parts manufactured by Old GM, "the threshold applicability of the Sale Order—and its injunctive provisions—has easily

---

[7]    The Orange County Plaintiff asserts that New GM has engaged in unfair "tactical moves" in exercising its right to a federal forum and insisting on the same stay that more than 100 other plaintiffs have entered into.  This contention is curious given that, based on the Court's exclusive jurisdiction to enforce the Sale Order and Injunction and the Scheduling Orders already entered (which the Orange County Plaintiff's counsel participated in), the Orange County Plaintiff should have come to this Court first, before filing any pleading in any other court.  Moreover, Plaintiff and New GM expressly agreed regarding the procedural timing of New GM's Notice of Removal and the addition of this Action to the Sixth Supplemental Schedule 1.  (*See* E-Mail from L. Feller to M. Robinson, July 14, 2014, attached hereto as Ex. B.)

been established." (*Phaneuf* Stay Decision at 14-15; *Elliott* Stay Decision at 9.)  In *Phaneuf*, the

Court expressly held:

> I've found as a fact . . . that their complaint (apparently intentionally) merges pre-
> and post-sale conduct by Old GM and New GM . . . .  Efforts of that character are
> expressly forbidden by the two [Sale Order] injunctive provisions just quoted. . . .
> [A]t this point the Sale Order injunctive provisions apply.  And it need hardly be
> said that I have jurisdiction to interpret and enforce my own orders, just as I've
> previously done, repeatedly, with respect to the very Sale Order here.

(*Phaneuf* Stay Decision at 16.)

So too in *Elliott*, the Court held:

> [A]s to . . . [plaintiffs'] claim that I don't have subject matter jurisdiction to
> construe and enforce the Sale Order in this case—their contention is frivolous,
> disregarding controlling decisions of the United States Supreme Court and Second
> Circuit; district court authority in this District, four earlier decisions that I
> personally have issued . . . and the leading treatise in the area, *Collier*.

(*Elliott* Stay Decision at 2-3.)

And in *Phillips*:

> THE COURT: But here's what I'm telling you you got to do.  You're to caucus
> with the other parties in this case, get yourself bankruptcy counsel, because at
> least seemingly if you have a vehicle made by Old GM prepetition it's subject to
> at least one of the three categories of the sale order that New GM has been relying
> upon and going against people like the [Phaneufs] and the Elliotts and most of the
> others, and if you want to deal with it the mechanism is going to be by a no stay
> pleading.  Sooner or later your concerns are going to be heard, but the chances of
> you being allowed to litigate them in another court before I've ruled on this issue
> are about the same as me playing for the Knicks, or in your term it's the Rockets.

 (8/18/14 Tr. at 82:20-83:8.)

     9.     As in all these cases, the Orange County Plaintiff's Complaint materially relies on

Old GM conduct and on defects in vehicles and parts manufactured by Old GM.  For example,

the Complaint alleges defects in millions of parts and vehicles manufactured by Old GM before

the Sale.  (*See*, *e.g.*, (Compl. ¶ 15) (alleging a power steering defect in vehicles sold "[b]etween

2003 and 2010"); Compl. ¶ 17 ("From 2007 until at least 2013, nearly 1.2 million GM-branded

vehicles were sold in the United States with defective wiring harnesses."); Compl. ¶ 19
("[B]etween 2003 and 2012, 2.4 million GM-branded vehicles in the United States were sold
with a wiring harness defect that could cause brake lamps to fail to illuminate").)  The Orange
County Plaintiff also alleges that customers purchased or leased "used GM vehicles sold on or
after July 10, 2009"—many of which would have been manufactured by Old GM before that
date.  (*See* Compl. ¶ 51.)  Similarly, numerous paragraphs describe and seek to make New GM
liable for specific events that took place before the 363 Sale.  (*See e.g.*, Compl. ¶ 46 ("In
2001, . . . GM privately acknowledged . . ."); ¶ 47 ("Mr. DeGiorgio actively concealed the
defect, . . . while working for Old GM . . ."); ¶ 49 ("On October 29, 2004, Mr. Altman test-
drove a Cobalt."); ¶ 51 ("The PRTS concluded in 2005 that . . ."); ¶ 52 ("The 2005 PRTS further
demonstrates . . ."); ¶ 58 ("In April 2006, the GM design engineer who was responsible for the
ignition switch . . ."); ¶ 60 ("At a May 15, 2009 meeting . . ."); ¶ 96 ("After analysis of the tin
connectors in September 2008, Old GM determined . . ."); *see also* ¶¶ 59, 113, 114, 149, 189,
190, 200.:

10.    The Orange County Plaintiff's Complaint also intentionally blurs the distinction
between Old GM and New GM.  For example, the term "GM-branded vehicles" is defined in the
Complaint to include vehicles sold by Old GM and New GM.  (See Compl., ¶ 2.)  Furthermore,
the Complaint repeatedly relies on Old GM's conduct to attempt to show knowledge by New
GM "from its inception."  (*See* Compl. ¶¶ 11, 16, 18, and 22).  Similarly, the Complaint's
allegations about what New GM "inherited" are nothing more than allegations about Old GM's
policies and personnel, and a species of successor liability.  (*See* Compl. ¶ 33 ("GM inherited
from Old GM a company that valued cost-cutting over safety . . ."); ¶ 44 ("GM's knowledge of
the ignition switch defects arises from the fact that key personnel with knowledge of the defects

remained in their same positions once GM took over from Old GM."); ¶ 199 ("It appears that the defects were concealed pursuant to a company policy GM inherited from Old GM.").)

11.    Additionally, large swaths of the Complaint are copied and pasted verbatim from an earlier suit filed by the same private plaintiffs' attorneys representing the Orange County Plaintiff in this case,[8] *Andrews v. General Motors LLC*.  (*Compare, e.g.,* Compl., *Orange County* ¶¶ 4-9, 229-247 (Ex. A hereto), *with* Compl., *Andrews*, ¶¶ 4-9, 34-43, 45-53 (MDL ECF 302-3.) Like the Orange County Action, *Andrews* alleges 35 different defects in vehicles and parts manufactured by both Old and New GM, and yet purports to limit its claims to conduct by New GM.  (*See* Compl., *Andrews* ¶¶ 3 & at 1).  *Andrews* is part of MDL 2543, is subject to the Monetary Relief Actions Motion to Enforce, and the *Andrews* plaintiffs have never claimed that they are not subject to a stay pending resolution of the Threshold Issues.  *Andrews* was brought by the same two private firms that are co-counsel to the Orange County District Attorney here.

12.    In short, the Orange County Action seeks to impose liability on New GM based on Old GM's pre-sale acts.  Accordingly, as in *Phaneuf*, *Elliott*, and *Phillips*, even if a "subset of matters the [plaintiff] might ultimately show would not similarly be forbidden, at this point the Sale Order injunctive provisions apply."  (*Phaneuf* Stay Decision, at 16.)  As such, the Orange County Plaintiff is subject to New GM's Motions to Enforce, to the Court's Scheduling Orders for adjudicating the Threshold Issues, and to the concomitant stay requirements.

---

[8]    Indeed, were this truly a police power action as the Orange County Plaintiff asserts, it would not be permissible for private plaintiffs' attorneys to represent the State of California on a contingency-fee basis.  *See People v. Atlantic Richfield Co.*, Superior Court of California, Case No. 804030 (July 19, 2002) (Disqualifying counsel and holding that the contingency fee arrangement in that case was "antithetical to the standard of neutrality that an attorney representing the government must meet when prosecuting a public nuisance abatement action") (internal quotation omitted).  *See also In re The Fairchild Corp.*, 2009 WL 4546581 (Bankr. D. Del. 2009) (Orange County Water District's action to recover environmental abatement damages was not a police power action exempt from the automatic stay).  In *Fairchild Group*, the court reasoned that that the State's retention of private contingency-fee counsel in its California action demonstrated that its case was a private action to collect money damages, rather than a true police power action.  *See id.* at note 38.

9

## II.    THE ORANGE COUNTY PLAINTIFF'S CONTENTION THAT ITS CLAIMS ARE NOT SUBJECT TO THE SALE ORDER AND INJUNCTION IS WRONG BUT, REGARDLESS, IT SHOULD BE DECIDED BY THIS COURT AS PART OF RESOLVING THE THRESHOLD ISSUES.

13.    The Orange County Plaintiff's substantive argument—that any action brought by a governmental unit against a private business is automatically a police-power action and not subject to removal pursuant to 28 U.S.C. § 1452(a) (under the same standard as the automatic stay provisions of Section 362(b)(4))—is simply incorrect.[9]  *In re Enron*, 314 B.R. 524 (Bankr. S.D.N.Y. 2004), is directly analogous to the situation here.  There, Judge Gonzalez refused to apply the Section 362(b)(4) exception[10] to an action much like this one, brought by the State of California alleging state law violations that included violations of California's Unfair Competition Law.  Judge Gonzalez held that California was acting not as a policeman or regulator because, *inter alia*, California's request for an injunction against Enron was a "meaningless request" purely "duplicative" of actions already taken by Enron's federal regulators, with "no additional deterrent value" beyond those federal proceedings.  *See id.* at 537-39.  Thus, Judge Gonzalez reasoned, California was acting "merely… as a creditor or an

---

[9]    The Orange County Plaintiff's No-Stay Pleading entirely ignores an independent basis for New GM's removal of the Action to federal court:  federal question jurisdiction under 28 U.S.C. § 1331.  (*See* Ex. C, Notice of Removal ¶¶ 13-18.)  Because the Orange County Plaintiff's allegations that New GM's business practices were "unlawful" is predicated on alleged violations of federal statutes by both Old GM and New GM, the Orange County Action raises a substantial issue of federal law that entitles New GM to a federal forum.  *See Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005); *see also* Notice of Removal ¶¶ 13-18.  Thus, all questions of an exception to 28 U.S.C. § 1452(a) aside, the removal of the Action was proper under 28 U.S.C. §§ 1331 and 1441, and Plaintiff's remand motion is without merit.

[10]    As the Orange County Plaintiff correctly notes in its No-Stay Pleading, the twin exceptions of Section 362(b)(4) (exception to the automatic stay) and Section 1452(a) (exception to bankruptcy jurisdiction removal) are "designed specifically to work in tandem" and, "[t]herefore, interpretation of these two provisions should be consonant." *In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 385 (Bankr. E.D. Pa. 2002); *see also* No Stay Pleading at 6-7.  "[C]aselaw applying the Bankruptcy Code § 362(b)(4) exception to the automatic stay indicates that this exception was intended by Congress to be narrow." 1 Norton Bankr. L. & Prac. 3d § 7:1; *see also In re Enron Corp.*, 314 B.R. 524, 534 (same; noting the legislative history).

entity in a private class action" and was not entitled to the Section 362(b)(4) exception. *Id.* at 540.

14. The same is true here. The primary purpose of the Orange County Action is pecuniary gain—Plaintiff requests $2,500 for each alleged violation of California Business and Professions Code Section 17200, and $5,000 for each alleged violation of Section 17500. It also seeks injunctive relief, but all of the defects alleged in the Complaint already have been the subject of widely publicized recalls administered by NHTSA. As in *Enron*, therefore, the injunctive relief purportedly sought by the Orange County Plaintiff is a "meaningless request." *See* 314 B.R. 524, 537; *see also United States v. Seitles*, 106 B.R. 36, 39 (S.D.N.Y. 1989), vacated on other grounds, 742 F. Supp. 1275 (S.D.N.Y. 1990) (exception to stay does not apply where there is no continuing harm or threat to the public health; conclusory allegations that suit is brought for purposes of deterrence are insufficient to avoid the stay); *In re Chateaugay*, 115 B.R. 28, 32 (Bankr. S.D.N.Y. 1988) (exceptions to stay are strictly limited to protection of the public health or safety; the public policy of deterrence does not justify exception to the stay where the alleged violations have already ceased and state agency seeks civil penalties for past conduct). Indeed, bankruptcy courts have ruled that the "police or regulatory power" exceptions are applicable only for "those exercises of the police powers which are urgently needed to protect the public health and welfare." *Matter of IDH Realty, Inc.*, 16 B.R. 55, 57 (Bankr. E.D.N.Y. 1981) (refusing to apply exception to automatic stay to state action to enforce zoning regulation); *In re Island Club Marina, Ltd.*, 38 B.R. 847, 854 (Bankr. N.D. Ill., 1984) (same); *see also In re Reliance Group Holdings, Inc.*, 273 B.R. 374 (Bankr. E.D. Pa. 2002) (Pennsylvania Insurance Commissioner's suit seeking declaratory judgment regarding estate's ownership of certain assets was not subject to bankruptcy removal exception); *In re King Memorial Hosp.*,

11

*Inc.*, 4 B.R. 704, 708 (Bankr. S.D. Fla. 1980) (state agency's attempted revocation of exemption from administrative review was subject to automatic stay).

15.    Far from "urgently" demanding the exercise of California's police power, any public interest concerns the Orange County Plaintiff has raised already are being addressed by NHTSA.  Accordingly, the Orange County Plaintiff's requested injunction would, as in *Enron*, serve no additional deterrent or public safety function.  *Id.* at 540.

16.    In addition to being wrong, Plaintiff's argument that the Bankruptcy Code's automatic stay provisions are not applicable to police power actions is entirely beside the point. The automatic stay is not at issue here; instead, the Sale Order and Injunction is an express injunction and it contains no exception for governmental actions.  (*See* Sale Order and Injunction ¶ 8 ("[A]ll persons and entities, including, but not limited to  . . . litigation claimants . . . holding claims . . . of any kind or nature whatsoever . . . are forever barred, estopped, and permanently enjoined from asserting against the Purchaser . . . such persons' or entities' . . . claims . . . .").) As courts and commentators have recognized, the Section 362(b) exceptions to the automatic stay do not apply to or bar express injunctions issued by a bankruptcy court.  *See* 3 Collier on Bankruptcy ¶ 362.05; 2 Norton Bankr. L. & Prac. 3d § 43:15 ("it does not follow that because an action is specifically excepted from the automatic stay that it may not be stayed by the court"); *see also In re Commonwealth Cos., Inc.*, 913 F. 2d 518, 527 (8th Cir. 1990) (bankruptcy court has "ample other powers" to stay a governmental action falling under the 362(b)(4) exception to the automatic stay, "including the discretionary power under 11 U.S.C. § 105(a)" to issue an express injunction); *State of Mo. v. U.S. Bankr. Court for E. D. of Arkansas*, 647 F.2d 768, 776 (8th Cir. 1981) ("'(t)he effect of an exception is not to make the action immune from injunction. The court has ample other powers to stay actions not covered by the automatic stay.  Section

12

105 . . . grants the power to issue orders necessary or appropriate to carry out the provisions of

title 11.'") (quoting H.R.Rep. 595, 95th Cong., 1st Sess. 342 (1977) reprinted in (1978)

U.S.Code & Cong.News 5963, 6298; S.Rep.No. 989, 95th Cong., 2d Sess. 51, reprinted in

(1978) U.S.Code & Cong.News 5787, 5837.))[11]

17.    New GM and the Orange County Plaintiff agree that the Court need not and

should not reach these substantive issues now. (No-Stay Pleading at 8 ("the State [is not] now

seek[ing] to have this Court accept its position that this action is exempt from the stay and is not

covered by the Sales Order and Injunction.")). Rather, the Orange County Plaintiff concedes that

such questions about the applicability of the Sale Order and Injunction to governmental claims

should be resolved in conjunction with the Threshold Issues. (*See* Scheduling Order ¶ 7 at 6;

Supp. Scheduling Order, at 3.)[12] Indeed, the Orange County Plaintiff expressly "does [not]

challenge this Court's jurisdiction to interpret its own orders" in this regard. (No-Stay Pleading,

at 1.)

18.    As set forth in Part I, *supra*, on its face, the Orange County Complaint is subject

to the Sale Order and Injunction and New GM's Motions to Enforce. Although the Orange

County Plaintiff purports to distinguish its case through an overboard and erroneous

governmental action jurisdictional argument, the Orange County Plaintiff concedes that it is

seeking no relief from this Court, at this time, on the basis of that jurisdictional argument.

---

[11]    *See also In re The Billing Resource*, 2007 WL 3254835 at *10 (Bankr. N.D. Cal. 2007) (citing "myriad of authorities" holding that "this Court has the legal authority to enjoin prosecution of governmental actions against a debtor that falls within the regulatory and police powers exception of Bankruptcy Code section 362(b)(4)"); *In re WBQ Partnership*, 189 B.R. 97 (Bankr. E.D. Va. 1995) (on motion of debtor, the court ruled that nursing home assets could be sold free and clear of state's statutory right to recover overpayments, and issued a permanent injunction against such action); *cf. In re PBBPC, Inc.*, 467 B.R. 1 (Bankr. D. Mass. 2012) (enforcing free-and-clear sale order against a Michigan state agency).

[12]    In *Phaneuf*, the Court recognized that "in most [of the 88 Ignition Switch Actions before the Court] parties are likely to make similar contentions." (*Phaneuf* Stay Decision at 17.) So too here; although this is the only governmental action at present, there is no reason that others may not be filed prior to resolution of the Threshold Issues.

Indeed, Plaintiff consents to this Court's jurisdiction "and agree[s] to the terms of the stay for all purposes and reserve[s] its position . . . ."  (No Stay Pleading at 8.)  As a result, there is no basis to excuse the Orange County Plaintiff from the exact same stay to which each of more than 100 other sets of plaintiffs are subject.

## III.    PLAINTIFF'S FORUM-SHOPPING ATTEMPT WITH RESPECT TO ITS MOTION TO REMAND SHOULD NOT EXEMPT IT FROM THE STAY.

19.     The Orange County Plaintiff is left with an express desire to have one judge (*i.e.*, Judge Selna), rather than another (*i.e.*, Judge Furman), decide its remand motion.  But the law is settled that under the circumstances of this case—where it is undisputed that a complaint's factual allegations are related to those already at issue in an MDL but the plaintiff wishes to challenge defendant's removal petition—it is the MDL transferee court that is best-positioned to decide remand in a uniform and consistent manner with all of the cases before it.  *See, e.g.*, *In re Gadolinium Contrast Dyes Prods. Liab. Litig*, 2012 WL 7807340, at *1 (J.P.M.L. 2012) (holding that "jurisdictional objections are not an impediment to transfer" and motions to remand can and should be decided by the transferee court.); *In re W. States Wholesale Natural Gas Antitrust Litig.*, 290 F. Supp. 2d 1376, 1378 (J.P.M.L. 2003) ("Plaintiffs in the actions to be centralized have suggested that a decision in their favor on pending motions to remand to state court may obviate the need for transfer.  We note, however, that such motions can be presented to and decided by the transferee judge."); *see also In re Darvocet Prods. Liab. Litig.*, 2012 WL 7764151, at *1 (J.P.M.L. 2012) ("[P]laintiffs argue primarily that federal jurisdiction does not exist . . . as demonstrated in their pending motion to remand[.]  We find these arguments unpersuasive.  The Panel has often held that a pending motion for remand is not a bar to transfer."); *Buie v. Blue Cross & Blue Shield of Kan. City, Inc*., No. 05-0534, 2005 WL 2218461, *1-2 (W.D. Mo. Sept. 13, 2005) ("having the transferee judge decide [motions to remand] . . .

14

promotes judicial economy.") (citation omitted)); *In re New Eng. Mut. Life Ins. Co. Sales Pracs. Litig.*, 324 F. Supp. 2d 288, 291–92 (D. Mass. 2004) ("The Judicial Panel on Multidistrict Litigation has concluded repeatedly that pending motions to remand MDL-transferred actions to their respective state courts can be presented to and decided by the transferee judge.").[13]

20.    Plaintiff has not explained (and given this overwhelming authority, cannot explain) why Judge Selna, rather than the MDL court, should decide plaintiff's remand motion. As new cases are filed and removed, numerous plaintiffs have sought, and will continue to seek, early rulings on motions to remand, including perhaps additional government plaintiffs raising similar arguments regarding bankruptcy removal—many of which, like the plaintiff here, will no doubt prefer that the motions be decided in their home district.  But the possibility of a more favorable outcome in a particular forum is one of the principal reasons for having the MDL court decide such motions.  *See*, *e.g.*, *Tennessee ex rel. Cooper v. McGraw-Hill Cos.*, No. 3:13-00193, 2013 WL 1785512, at *5 (M.D. Tenn. Apr. 25, 2013) (deferring ruling on motion for remand to allow the Panel to determine whether cases should be consolidated; district courts should defer to

---

[13]    *Accord In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 899 F. Supp. 2d 1374, 1376 (J.P.M.L. 2012) ("Plaintiffs in the removed derivative actions can present their pending motions for remand to state court to the transferee court.") (citations omitted); *In re Gen. Mod. Rice Litig.*, 2011 WL 7143470, at *1 (J.P.M.L. 2011) (denying motion to vacate and noting "the pendency of a motion to remand generally is not a good reason to deny or delay transfer" because such motions can be presented to the transferee judge); *Baron v. Merck & Co., Inc.*, No. 06-1183, 2006 WL 2521615, at *1 (E.D. Mo. Aug. 30, 2006) ("pendency of a motion to remand was not a sufficient basis to avoid transfer" to the MDL); *In re New Eng. Mut. Life Ins. Co. Sales Practices Litig.*, 324 F. Supp. 2d 288, 291–92 (D. Mass. 2004) ("The [JPML] has concluded repeatedly that pending motions to remand MDL-transferred actions to their respective state courts can be presented to and decided by the transferee judge.");.*Nekritz v. Canary Capital Partners, LLC*, Civ. A. No. 03–5081, 2004 WL 1462035, at *2 (D.N.J. 2004) (citing *In re Ivy*, 901 F.2d 7 (2d Cir. 1990) ("the Court has the power to consider [the defendant's] motion for a stay without first determining conclusively that removal was proper and that it has jurisdiction over the merits of the case."); *In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.*, 229 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) ("We note that any pending motions to remand these actions to their respective state courts can be presented to and decided by the transferee judge."); *In re Prudential Ins. Co. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) ("[R]emand motions can be presented to and decided by the transferee judge."); *In re Air Crash Disaster at Juneau, Alaska, on Sept. 4, 1971*, MDL No. 107, 360 F. Supp. 1406, 1407 (J.P.M.L. 1973) (plaintiffs' pending motion to remand is "no reason for delaying our decision to transfer this action" where it "involves questions of fact identical to those raised in actions previously transferred by the Panel.").

the possibility of consolidation and determination by one judicial body to promote judicial economy and avoid inconsistent judgments.") (citing *Pennsylvania v. McGraw-Hill, Co*., No. 1:14-00605, 2013 WL 1397434, at *2 (M.D. Pa. Apr. 5, 2013); *see also In re Am. Online Spin-Off Accounts Litig*., 2005 WL 5747463 at *5 (C.D. Cal. 2005) ("The purpose of MDL litigation is to allow centralization and to prevent… forum-shopping[.]") (internal quotation marks omitted). Equally important, allowing an exception for motions to remand would undermine the purpose of the Stay Stipulation, promote piecemeal litigation, and be unfair to the other plaintiffs who have agreed to an orderly process for managing these cases. (*See Phaneuf* Stay Decision, at 18 ("It would be grossly unfair to the plaintiffs in the 87 Ignition Switch Actions who stipulated to stay their cases to give a single litigant group leave to proceed on its own. My efforts to manage 88 cases, with largely overlapping issues, require that they proceed in a coordinated way.").)

21.     Other than its desire to have Judge Selna resolve its motion to remand, the Orange County Plaintiff has offered no reason for allowing that motion to go forward when all other Ignition Switch Actions are stayed. This is because there is no logical reason to do so. The outcome of its Motion to Remand will have no effect on the status of Plaintiff's case, which Plaintiff concedes shall immediately "be stayed pending further proceedings before this Court." (No-Stay Pleading at 1). Under these circumstances, carving out an exception from the stay for a remand motion is pointless where, as Plaintiff agrees, the case would otherwise proceed no further while the Threshold Issues are litigated.

22.     Moreover, the Orange County Plaintiff does not, and cannot, identify any prejudice that would result from a short delay in deciding its Motion to Remand,[14] much less any

---

[14]     Indeed, there is every reason to believe that any delay in hearing the Orange County Plaintiff's remand motion after it is transferred to the MDL court will be brief. In *Sumners v. Gen. Motors LLC*, 1:14-cv-00070, ECF No.

imminent harm to California consumers which would "urgently" require the application of its

police power in this case.[15]    Indeed, Plaintiff's willingness to agree to stay its *entire case* other

than the remand motion—even though it contends the Sale Order and Injunction does not

apply—undermines its contention that public safety is in any way at issue, and betrays the fact

that the Orange County Plaintiff has brought this action out of mere pecuniary interest, rather

than to address any imminent public safety issue.  (*See* No Stay Pleading at 3 (quoting First Am.

Compl. ¶ 1).)

## CONCLUSION

The Orange County Plaintiff "has not come close to making a sufficient showing as to

why [the Court] should make an exception for them."    (*Id.* at 19.)    Accordingly, under the

---

8 (M.D. Tenn.), following New GM's removal and the plaintiffs' motion to remand, the Tennessee district court administratively closed the case pending final determination by the JPML: "[i]f the Judicial Panel on Multidistrict Litigation does not enter a final transfer order in this action, then either party may move to reopen this action."  *Id.*, 1:14-cv-00070, ECF No. 8 (M.D. Tenn. Jun. 17, 2014).    Consistent with its Order administratively closing the case, the district court also proceeded to deny plaintiffs' motion to remand "without prejudice to renew before the [JPML]'s designated District Court." (*Id.*, 1:14-cv-00070, ECF No. 31 (M.D. Tenn. July 21, 2014).  The *Summers* Plaintiffs refiled their motion to remand in the MDL court, which promptly set a briefing schedule.  (MDL Order No. 8, MDL ECF 249).

In two other cases, courts in Ignition Switch Actions have proceeded to decide remand, notwithstanding the substantial weight of authority that the transferee court should be permitted to do so.  In *Witherspoon v. Gen. Motors LLC and Gen. Motors Co.*, No. 4:14-cv-00425-HFS (W.D. Mo. June 09, 2014, ECF No. 15), in which the plaintiff challenged Article III standing, the court upheld federal jurisdiction, while in *Melton v. Gen. Motors LLC et al.*, No. 1:14-cv-1815-TWT (N.D. Ga. July 18, 2014, ECF. No. 45), involving the fraudulent misjoinder of a co-defendant dealership, the court granted remand.  Neither case contradicts the overwhelming weight of authority above nor stands for the proposition that the MDL transferee court should not decide a pending remand motion.

[15]  Indeed, NHTSA and the Secretary of Transportation concluded months ago that there is no ongoing safety risk to consumers who drive vehicles manufactured by either Old GM or New GM, given the actions New GM has already taken.  (*See* May 6, 2014 Letter from Secretary Foxx to Congressman Markey, Ex. D (declining to "advise owners of all General Motors (GM) vehicles" subject to the ignition-switch recall to "cease driving their vehicles until they are repaired," because "NHTSA is satisfied," based on its own engineers' testing of the "vehicle key, ignition switch, and steering column of the affected GM vehicles," that New GM's recommendations to vehicle owners had "sufficiently mitigated" safety risks while those vehicles awaited permanent repairs).)  The Orange County Plaintiff makes no argument to the contrary.

Scheduling Orders, Plaintiff's remand motion should be stayed until after the Threshold Issues are resolved.[16]

WHEREFORE, New GM respectfully request that this Court (i) deny the relief requested in the Orange County Plaintiff's "Limited" No Stay Pleading, (ii) enjoin the Orange County Plaintiff from further prosecuting its Ignition Switch Action, including its opposition to JPML transfer and motion to remand; and (iii) grant New GM such other and further relief as the Court may deem just and proper.

---

[16] As this Court stated in *Phaneuf*, "[e]ven if the Sale Order lacked the injunctive provisions it has, it would be appropriate to enter a preliminary injunction protecting New GM from the need now to defend claims that, under the Sale Agreement and Sale Order, it did not assume, and preventing the piecemeal litigation of the [plaintiffs'] claims ahead of all of the other lawsuits similarly situated." (*Phaneuf* Stay Decision at 19 (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979)); *see also Elliott* Stay Decision at 9) For the same reasons as in *Phaneuf* and *Elliott*, New GM is entitled to a preliminary injunction to protect it from litigating the Orange County Plaintiff's motion ahead of all the other Ignition Switch Actions. Irreparable injury to case management concerns would occur if the plaintiff were allowed an exception from the injunction, to be followed by numerous similar requests for exceptions by other plaintiffs on other issues. (*See Phaneuf* Stay Decision at 9.) New GM has shown "serious issues going to the merits with respect to the protection it was granted under the express language of [the Sale] Order." (*Id.* at 21.) Furthermore, New GM would be prejudiced by having to litigate the remand motion and "there would be significant prejudice to [the court's] case management needs, as the extensively negotiated coordinated mechanism for dealing with 88 separate actions, with coordinated briefing of threshold issues, was cut away." (*See id.* at 22.) By contrast, the Orange County Plaintiff has not identified any prejudice in having to adhere to the Scheduling Orders, and its remand motion may be decided by the MDL court in the ordinary course. Thus, "New GM would be entitled to a preliminary injunction in its favor until [the Court has] ruled on the Threshold Issues." (*Id.* at 25; *see also Elliott* Stay Decision at 9.)

Dated: New York, New York             Respectfully submitted,
       August 29, 2014

                                         /s/ Arthur Steinberg
                                      Arthur Steinberg
                                      Scott Davidson
                                      KING & SPALDING LLP
                                      1185 Avenue of the Americas
                                      New York, New York  10036
                                      Telephone:     (212) 556-2100
                                      Facsimile:     (212) 556-2222

                                      Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                                      Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                                      KIRKLAND & ELLIS LLP
                                      300 North LaSalle
                                      Chicago, IL 60654
                                      Telephone: (312) 862-2000
                                      Facsimile: (312) 862-2200

                                      *Attorneys for General Motors LLC*