# **Exhibit A**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

-and-

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Richard C. Godfrey, P.C. (admitted pro hac vice)
Andrew B. Bloomer, P.C. (admitted pro hac vice)

*Attorneys for General Motors LLC*
*f/k/a General Motors Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------x

**REPLY BY GENERAL MOTORS LLC TO RESPONSE BY
WILMINGTON TRUST COMPANY TO THE GILLISPIE MOTION FOR
LEAVE TO PURSUE CLAIMS AGAINST GENERAL MOTORS LLC,
AND, ALTERNATIVELY, TO FILE A POST-BAR-DATE PROOF OF
CLAIM IN THE MOTORS LIQUIDATION COMPANY BANKRUPTCY**

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

I.      THE GUC TRUST'S ARGUMENTS FOR THE MOVANT HAVE NO MERIT.......... 2

    A.      Movant's Claim Arose Years Before The Closing Of The 363 Sale
        And Is Thus A Retained Liability Not Assumed By New GM ............................ 3

    B.      Movant Was Provided Adequate And Sufficient Notice Of The 363 Sale
        And Is Thus Bound By The Sale Order And Injunction....................................... 6

    C.      Even if Movant Did Not Receive Adequate Notice, There Would Not
        Have Been a Due Process Violation .................................................................... 8

    D.      Even if Movant's Claim Did Not Arise Until After The 363 Sale,
        It Remains A Claim Against Old GM And Not New GM................................. 11

II.     THE GUC TRUST IS JUDICIALLY ESTOPPED FROM ASSERTING THE
    MOVANT'S POSITION ................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Armstrong v. Floyd Cnty.*, No. 4:13-CV-0050-HLM,
2013 WL 8711442 (N.D. Ga. Dec. 3, 2013) ........................................................................ 5

*Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*,
221 B.R. 113 (D.N.J. 1998) ................................................................................................. 6

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
428 B.R. 43 (S.D.N.Y. 2010) ............................................................................................. 17

*Carroll v. Henry Cnty, Georgia*,
336 B.R. 578 (N.D. Ga. 2006) ............................................................................................. 6

*Compak Cos. LLC v. Johnson*,
415 B.R. 334, (N.D. Ill. 2009) ........................................................................................... 10

*Conway v. White Trucks, A Div. of White Motor Corp.*,
885 F.2d 90 (3d Cir. 1989) ................................................................................................. 12

*DeRosa v. National Envelope Corp.*,
595 F.3d 99 (2d Cir. 2010) ................................................................................................. 19

*Doktor v. Werner Co.*,
762 F. Supp. 2d 494 (E.D.N.Y. 2011) ................................................................................ 13

*Doolittle v. Cnty. of Santa Cruz (In re Metzger)*,
346 B.R. 806 (Bankr. N.D. Cal. 2006) ............................................................................... 11

*Douglas v. Stamco*,
363 Fed. App'x 100, 2010 WL 337043 (2d Cir. 2010) ................................................ 12, 13

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
871 F. Supp. 2d 143 (E.D.N.Y. 2012) .................................................................................. 8

*Epstein v. Official Comm. of Unsecured Creditors of Piper Aircraft Corp.*,
58 F.3d 1577 (11th Cir 1995) ............................................................................................... 2

*In re Agway, Inc.*,
313 B.R. 31 (Bankr. N.D.N.Y. 2004) ................................................................................... 6

*In re All American of Ashburn, Inc.*, 56 B.R. 186
(Bankr. N.D. Ga. 1986) ...................................................................................................... 13

*In re Caldor, Inc.*, 240 B.R. 180
(Bankr. S.D.N.Y. 1999) ......................................................................................................... 3

*In re Edwards*, 962 F.2d 641
(7th Cir. 1992) ..................................................................................................................... 8, 9

*In re Emoral, Inc.* 740 F.3d 875
(3d Cir. 2014) ......................................................................................................................... 5

*In re Gen. Motors Corp.*, 407 B.R. 463
(Bankr. S.D.N.Y. 2009) ......................................................................................................... 7

*In re Gen. Motors Corp.*, No. M 47(LAK),
2009 WL 2033079 (S.D.N.Y. July 9, 2009) ................................................................. 7, 17

*In re Grumman Olson Indus., Inc.*,
   467 B.R. 694 (S.D.N.Y. 2012) ........................................................................... 4

*In re Old Carco LLC*,
   492 B.R. 392 (Bankr. S.D.N.Y. 2013) ............................................................... 4

*In re Paris Indus. Corp.*,
   132 B.R. 504 (D. Me. 1991) ........................................................................ 9, 10

*Jenkins v. A.T. Massey Coal Co., Inc. (In re Jenkins)*,
   410 B.R. 182 (W.D. Va. 2008) .......................................................................... 6

*MacArthur Co. v. Johns-Manville Corp.*,
   837 F.2d 89 (2d Cir. 1988) .............................................................................. 12

*Polycel Structural Foam, Inc. v. Pool Builders Supply of the Carolinas*
   *(In re Polycel Liquidation, Inc.)*,
   2007 WL 77336 (D. N.J. Jan. 9, 2007) ........................................................... 11

*Stone v. Kmart Corp.*, No. 2:06-cv-302-WKW,
   2007 WL 1034959 (M.D. Ala. Mar. 30, 2007) ................................................. 3

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this reply ("**Reply**") to the *Response of Wilmington Trust Company, as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust to Roger Dean Gillispie's Motion for Leave to Pursue Claims Against General Motors LLC, and, Alternatively, to File a Post-Bar-Date Proof Of Claim in the Motors Liquidation Company Bankruptcy* ("**Response**"), filed by Wilmington Trust Company, as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust ("**GUC Trust**") on August 19, 2014 [Dkt. No. 12864].[1]  In support thereof, New GM represents as follows:

## PRELIMINARY STATEMENT

1.     New GM is compelled to file this Reply in light of the position the GUC Trust takes in its Response to the Motion for Leave.  When New GM agreed to the briefing schedule for the Motion for Leave, it assumed that it would have a full opportunity to respond to the allegations made against it.  A few hours after New GM filed its Objection in response to the Motion for Leave, the GUC Trust filed its Response, which functions, in large measure,[2] as an *amicus curiae* brief for the Movant's position.  The GUC Trust's Response, however, is improper and misleading.  As such, this Reply is necessary to address the new issues raised by the GUC Trust.

2.     Specifically, the GUC Trust is advocating the Movant's position, which is meritless as a mater the law, and, in any event, the GUC Trust should be judicially estopped from taking such position.

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Objection by General Motors LLC to Motion For Leave To Pursue Claims Against General Motors LLC, And, Alternatively, To File A Post-Bar-Date Proof Of Claim In The Motors Liquidation Company Bankruptcy*, dated August 19, 2014 ("**Objection**") [Dkt. No. 12863].

[2]     The GUC Trust makes an alternative argument towards the end of their Response which endorses New GM's position.

## I.  THE GUC TRUST'S ARGUMENTS FOR THE MOVANT HAVE NO MERIT

3.  There is a clear difference in the law between the cases that discuss when a contingent asset becomes "property of the estate," and the cases that discuss when a contingent liability becomes a ***claim against*** the bankruptcy estate.  The cases the GUC Trust cites are contingent asset cases, and are thus irrelevant.  The cases that New GM cites are contingent liability cases, and are directly on point.  Based on that established legal authority, the Movant was clearly a prepetition creditor (albeit disputed and contingent) of Old GM.

4.  The question is not when Movant's alleged claim ***accrued*** so that he could ***commence a lawsuit***; the question is when his claim ***arose for bankruptcy purposes***.  Here, there was a prepetition relationship with Old GM that was known to Movant, and Old GM's conduct was the basis for the alleged liability owed to Movant.  That is sufficient to establish Movant's claim as a prepetition claim and not as a "future claim."  *See Epstein v. Official Comm. of Unsecured Creditors of Piper Aircraft Corp.,* 58 F.3d 1577, 1577 (11th Cir 1995).

5.  The GUC Trust's argument to the contrary merely constitutes a disguised attempt to burden New GM with successor liability.  But, significantly, the GUC Trust cannot point to any New GM conduct that has any conceivable connection to the Movant's claim.  All of the conduct complained of—Movant's arrest, indictment and conviction—occurred years before New GM came into existence.

6.  The GUC Trust's due process argument on behalf of the Movant likewise is without merit. According to the GUC Trust Response, the Movant was provided direct mail notice of the 363 Sale at his last known address, and the notice was never returned.  Of course, Movant was also provided with appropriate publication notice. These notice procedures and the form of the 363 Sale Notice were approved by the Court. The 363 Notice clearly says that the

363 Sale would be free and clear of all claims. It also says that the failure to object to the 363

Sale will be deemed consent to the 363 Sale, and a bar against future challenges to the sale

procedures. The Court correctly found that this type of notice satisfied procedural due process,

and the district courts affirmed the Court's ruling.

7.    Movant's failure to assert a claim against Old GM has nothing to do with New

GM.  The claims bar order, the claims process, and the Plan process all occurred significantly

*after* the consummation of the 363 Sale.  Movant's situation presents an issue for Old GM, not

New GM.

8.    In short, to the extent that the GUC Trust requests in its Response that the Court

find that the Movant can maintain his alleged claim against New GM, such request must be

denied.

**A.    Movant's Claim Arose Years Before The Closing Of The 363 Sale
And Is Thus A Retained Liability Not Assumed By New GM**

9.    From the day of Movant's conviction, he believed that he was wrongfully

prosecuted.  It was, thus, as early as 1991 that Movant's claim arose against Old GM.  His injury

did ***not*** occur when he was vindicated.  The vindication was the contingent event that resulted in

his cause of action becoming ripe.  The fact that he could not commence ***a lawsuit*** until his

conviction was called into question does not mean that he did not possess ***a claim for***

***bankruptcy purposes*** at an earlier point in time.  *See, e.g., In re Caldor, Inc.*, 240 B.R. 180, 192

(Bankr. S.D.N.Y. 1999) ("Because contingent and unmatured rights of payment are 'claims'

under the Bankruptcy Code, a right to payment that is not yet enforceable under non-bankruptcy

law may be defined as a claim" under the Bankruptcy Code); *Stone v. Kmart Corp.*, No. 2:06-cv-

302-WKW, 2007 WL 1034959 (M.D. Ala. Mar. 30, 2007) (discussing distinction between when

a claim accrues and when a claim arises).

10.    The GUC Trust's reference to cases that concern "accidents," or "exposure" to chemicals, is irrelevant.  This is not a case where a claimant had no connection with the debtor prepetition and was injured in a post-petition accident, or did not manifest any symptoms of a disease until after confirmation. Movant's claims are therefore readily distinguishable from the "future" claims at issue in *In re Grumman Olson Indus., Inc.*, 467 B.R. 694 (S.D.N.Y. 2012). The *Grumman* case involved personal injury claims brought by a plaintiff that had no pre-petition relationship with the debtor manufacturer, did not suffer an injury until after the section 363 sale, and had no reason to believe that the debtor's 363 sale might impact her rights. Moreover, unlike *Grumman*, and comparable to the Movant's situation, in *In re Old Carco LLC*, the bankruptcy court, in distinguishing *Grumman*, found no successor liability where the plaintiffs had a "pre-petition relationship" with Old Chrysler and the plaintiffs' due process rights had not been violated because the plaintiffs had received ***publication notice*** of Old Chrysler's "***well-publicized***" bankruptcy proceedings. 492 B.R. 392, 396 (Bankr. S.D.N.Y. 2013) (emphasis added).[3]

11.    In addition, the GUC Trust's reference to the Court's Sale Decision is entirely beside the point.  The quoted passage at page 13 of the Response is taken from the Court's discussion of asbestos claimants and their due process rights.  While language was added to the Sale Order and Injunction in connection with asbestos claimants only, it did ***not*** eliminate the successor liability language for asbestos claims.[4]

---

[3]    *Old Carco* limits the scope of successor liability and reinforces the principle that a sale order approving a 363 Sale will preclude claims where the claimant had a pre-petition relationship with the debtor and the product defect existed pre-petition.

[4]    The Sale Agreement provides that Retained Liabilities include "all Liabilities to third parties for death, personal injury, other injury to Persons or damage to property, in each case, arising out of asbestos exposure[.]"  Sale Agreement, § 2.3(b)(x).

12.     The GUC Trust readily acknowledges, as it must, that the definition of a "claim"
under the Bankruptcy Code includes "contingent," "unmatured" and "unliquidated" claims.
Response, at 9.  Section 502(c) of the Bankruptcy Code specifically mandates the estimation of
contingent and unliquidated claims. Yet, if the GUC Trust's concocted definition of a "future
claim" was actually the law (which it is not), there would be no such thing as a contingent claim
or an unmatured claim for bankruptcy purposes.

13.     In addition to being contradicted by the Sale Order and Injunction, the GUC
Trust's successor liability argument runs afoul of the recent holding in *In re Emoral, Inc.* 740
F.3d 875 (3d Cir. 2014). There, the Third Circuit recognized that any possible successor liability
claim would constitute a general claim, and not an individualized claim.  *See id.* at 881
("Plaintiffs' cause of action against Aaroma would be based on facts generally available to any
creditor, and recovery would serve to increase the pool of assets available to all creditors.
Therefore, the District Court appropriately classified that cause of action as a generalized claim
constituting property of the estate.").  At best, Movant has a general claim against Old GM's
bankruptcy estate.  The successor liability claim was properly released pursuant to the Sale Order
and Injunction over the vigorous objections of other alleged creditors.

14.     The cases relied on by the GUC Trust are all distinguishable.  For example, in
*Armstrong v. Floyd Cnty.*, No. 4:13-CV-0050-HLM, 2013 WL 8711442 (N.D. Ga. Dec. 3,
2013),[5] the issue addressed was not when a claim against the debtor arose, but whether a cause of
action was property of the debtor's bankruptcy estate pursuant to Section 541 of the Bankruptcy

---

[5]     The GUC Trust's citation to the *Armstrong* case is misleading.  At page 11 of the Response, the GUC Trust
cites the *Armstrong* case, and includes a parenthetical referencing plaintiff's Section 1983 claim and whether it
was "discharged" in her bankruptcy.  The parenthetical gives the impression that the case concerned a claim
against the debtor (like here) when, in reality, it concerned a cause of action belonging to the debtor.  As noted
in the text, the *Armstrong* case addressed a "property of the estate" question, not a "when a claim arises"
question.

Code.  Similarly, *Jenkins v. A.T. Massey Coal Co., Inc. (In re Jenkins)*, 410 B.R. 182 (W.D. Va.

2008), concerned a "property of the estate" question, not a question concerning when a claim

against the bankruptcy estate arises.  The other cases cited by the GUC Trust are simply taken

from the Movant's Motion for Leave and, as discussed in the Objection, are entirely inapposite.

*Carroll v. Henry Cnty, Georgia*, 336 B.R. 578 (N.D. Ga. 2006) (discussing a malicious

prosecution claim as property of the estate, ***not*** as a claim against the debtor's estate (emphasis

added)); *Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113 (D.N.J. 1998)

(discussing ***debtor's*** malicious prosecution claim for purposes of setoff, not a creditor's claim

against the estate for malicious prosecution) (emphasis added).

### B.    Movant Was Provided Adequate And Sufficient Notice Of <u>The 363 Sale And Is Thus Bound By The Sale Order And Injunction</u>

15.    As Movant's claim arose prior to the closing of the 363 Sale, the question is

whether he was provided adequate notice of the 363 Sale.  As the GUC Trust concedes, Movant

was provided direct mail notice of the 363 Sale at his last known address.  In the words of the

GUC Trust, "[u]nder the circumstances, nothing more was required."  Response, at 17 (and the

cases cited therein); *see also In re Agway, Inc.*, 313 B.R. 31, 39 (Bankr. N.D.N.Y. 2004)

("Sending a notice by U.S. mail to the recipient's last known address is reasonably calculated to

inform the recipient of the contents of the notice and thereby satisfies due process.").[6]

16.    Movant does not assert that he was unaware of Old GM's bankruptcy case, and

the GUC Trust cannot contend otherwise.  In fact, Old GM's bankruptcy filing was anticipated

and widely publicized.  The District Court aptly summarized this point: "No sentient American is

unaware of the travails of the automobile industry in general and of General Motors Corporation

_____

[6]    But "more" was given here.  As stated in the Objection, Movant received publication notice of the 363 Sale.

. . . in particular." *In re Gen. Motors Corp.*, No. M 47(LAK), 2009 WL 2033079, at \*1 (S.D.N.Y. July 9, 2009).

17.    As this Court previously found, "[n]otice was extensively given, and it complied with all applicable rules." *In re Gen. Motors Corp.*, 407 B.R. 463, 507 (Bankr. S.D.N.Y. 2009)[7] *aff'd sub nom. In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010) *and aff'd sub nom. In re Motors Liquidation Co.*, 430 B.R. 65 (S.D.N.Y. 2010).   Having received adequate and sufficient notice of the 363 Sale (by both direct mail notice and publication notice), Movant's failure to object to the 363 Sale prohibits him from objecting to it now, and from seeking relief against New GM that is clearly barred by the Sale Order and Injunction.

18.    The GUC Trust asserts that Movant had no "reason to know, *with certainty*, that he would one day have 'any' claim to bring" against Old GM.   Response, at 16 (emphasis added).   It further asserts that Movant "was equally *without knowledge* that he would ever hold such claims." *Id.* at p. 14 (emphasis added).   This is nonsense.   The GUC Trust states that, "[o]n at least nine occasions between 1991 and 2008, Ohio state courts affirmed" Movant's conviction. *Id.* at p. 3.   Yet, if Movant had no knowledge of his claims, why did he "labor[] tirelessly for 20 years to clear his name"?   Motion for Leave, at 2.   At the time of the closing of the 363 Sale— *more than eighteen years after Movant's conviction*—Movant was unquestionably aware of the facts giving rise to his claim against the bankruptcy estate; he had been arguing those facts for almost 20 years.   The "with certainty" element is not part of the criteria for what constitutes a bankruptcy claim. If it were, the definition of a "claim" in Section 101(5) of the Bankruptcy Code would be meaningless.

---

[7]    Referred to herein as the "Sale Decision."

19.     The GUC Trust's reliance on *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143 (E.D.N.Y. 2012), is misplaced.  *DPWN* did not involve a sale pursuant to Section 363 of the Bankruptcy Code and a claim against the buyer, but rather whether a claim against the debtor was discharged through a plan.  Here, Movant's claim was not discharged pursuant to the 363 Sale; he was just prohibited from bringing such a claim against the Purchaser.  Movant always retained the right to file a claim against Old GM after the 363 Sale.

**C.      Even if Movant Did Not Receive Adequate Notice,
          There Would Not Have Been a Due Process Violation**

20.     Movant was provided adequate and sufficient notice of the 363 Sale. But even if he was not, he should not be permitted to simply disregard the Sale Order and Injunction and proceed as if it never happened because of an error by Old GM (***not*** New GM).

21.     *In re Edwards* is instructive. 962 F.2d 641 (7th Cir. 1992).  There, a known secured creditor with an undisputed claim challenged the validity of a judicially approved sale of the debtor's assets (which sale included the creditor's collateral) on the grounds that the creditor had not received actual notice of the sale.  *Id.* at 642-45.   The creditor sought relief from the sale order under Rule 60(b)(4) of the Federal Rules of Civil Procedure, arguing that the lack of actual notice deprived him of due process and therefore the sale order was void.  *Id.* at 644.    In affirming the lower court decisions, the Seventh Circuit rejected the creditor's argument, holding that "the doctrine of bona fide purchasers does not violate the due process clause."  *Id.* at 645. The court weighed the lack of prejudice against the strong policies of finality of bankruptcy sales embodied in section 363(m) and the bedrock principle that a bona fide purchaser at a bankruptcy sale gets good title to the assets purchased.  *Id.*   The court enforced the sale order and held that it was not void even as to a known undisputed secured creditor that was not provided actual notice that his own collateral was being sold.

22.     The *Edwards* court relied in part on the fact that there was no dispute about the sales process or the sales price. *Id.* Also, it concluded that had the secured creditor been notified, appeared and objected at the sale hearing, nothing would have changed. The same sale to the same buyer at the same price would have been approved. The court reasoned that "[t]he law balances the competing interests [of a purchaser against a lienholder who did not receive notice], but weights the balance heavily in favor of the bona fide purchaser." *Id.* at 643.

23.     Here, the situation is much simpler to resolve in favor of New GM. Unlike in *Edwards*, Movant had no specific property right in the asset sold, was notified of the Sale, and was fully aware of his claim against Old GM.

24.     In *In re Paris Indus. Corp.*, the court reached a similar conclusion. 132 B.R. 504 (D. Me. 1991). The debtor there sold its assets in bankruptcy "free and clear" of product liability claims. *Id.* 506-508. A person injured after the sale—by a product manufactured by the debtor prior to the sale—brought suit in state court against several defendants, including the purchaser of the debtor's assets. The purchaser's co-defendants sought contribution from the purchaser. In response, the purchaser filed an action in bankruptcy court seeking a declaratory judgment and injunctive relief (a) enforcing the "free and clear" language in the sale order, and (b) enjoining any further state court actions against it based on successor liability claims arising from products manufactured by the debtor prior to the sale. The bankruptcy court granted the purchaser the requested relief.

25.     The co-defendants in *Paris* appealed the bankruptcy court order on due process grounds, arguing that the sale order could not be enforced against them because they had not been provided actual notice of the sale. *Id.* at 509-10. The district court rejected that argument, affirming the enforcement of the free and clear provision of the sale order. The court

9

distinguished the purpose of notice in the context of claims discharge from the purpose in the

context of a sale of a debtor's assets.  The court reasoned that:

> The purpose of notice to creditors and other parties-in-interest when bankruptcy
> assets are to be sold . . . is to insure that the sales price is fair and that the funds
> flowing into the bankrupt estate for distribution among creditors or for other
> purposes are the most that could be realized from the assets sold.
> …
> [Appellants were] in no way prejudiced by the lack of notice and their inability to
> appear and argue their position on the sale.  They have made no showing that, if
> they had been notified and had appeared, they could have made any arguments to
> dissuade the bankruptcy court from issuing its order that the assets be sold free
> and clear of all claims.

*Id.*  The court held that the plaintiffs were not prejudiced by the sale because all the sale did was

take a group of assets and convert them into cash.  *Id.* The fact that the cash was subsequently

distributed to creditors in accordance with bankruptcy law, leaving the appellants with no

recovery on their claim did not mean that they were prejudiced by the sale.  *Id.*

26.     The cases relied on by the GUC Trust for the proposition that Movant is not

bound by the Sale Order and Injunction are inapposite.  Unlike here where Movant (who would

have been classified as a general unsecured creditor) was provided actual and publication notice,

in most of the cited cases[8] the claimant had a specific interest in property and was not provided

with ***any*** notice of the sale.  *See Compak Cos. LLC v. Johnson*, 415 B.R. 334, 337, 342-43 (N.D.

Ill. 2009) (finding that "Compak did not send the Notice [of sale] to Holdings," a patent license

holder who is provided special protections under the Bankruptcy Code); *Polycel Structural*

*Foam, Inc. v. Pool Builders Supply of the Carolinas (In re Polycel Liquidation, Inc.),* 2007 WL

---

[8]    In *Metal Founds. Acquisition, LLC v. Reinert (In re Reinert)*, 467 B.R. 830 (Bankr. W.D. Pa. 2012), the court's
decision turned on (1) whether the subject property was in fact the property of the debtor and (2) if it was
encompassed by the sale motion and Order.  *See id.* at 832 ("Nothing in the Sale Motion itself sought a
determination or declaratory judgment that the bankruptcy estate actually owned the unspecified domain names
at issue.  As a result, Baha is not bound by the terms of the order approving the Sale Motion (because there is no
affirmative relief contained in it which consists of a determination of Baha's rights vis-à-vis the estate's
interest").  The *Reinert* case thus involved the question of whether the estate had a right in the subject property
in the first instance, as a debtor cannot sell something it does not own.  This is not the present case.

77336, at *7-8 (D. N.J. Jan. 9, 2007) (holding that claimant, who claimed ownership of a specific asset, was not provided notice of the sale); *Doolittle v. Cnty. of Santa Cruz (In re Metzger)*, 346 B.R. 806, 811, 817 (Bankr. N.D. Cal. 2006) (concluding that the County of Santa Cruz, which held a particularized interest in certain real property, was "not served with any of the pleadings regarding the five sale attempts and does not appear on any of the certificates of service for any of the sale pleadings"; the court's analysis was also based, in part, on its conclusion that the purchaser was not a *bona fide* purchaser). It does not appear from a review of these court decisions that publication notice was given for any of the sales of assets. By contrast it is undisputed that Old GM provided extensive publication notice of the 363 Sale, as well as direct mail notice to the Movant here.

**D.    Even if Movant's Claim Did Not Arise Until After The 363 Sale,
It Remains A Claim Against Old GM And Not New GM**

27.    Assuming that Movant and the GUC Trust are correct and that Movant's claims did not arise until after the 363 Sale (which New GM disputes), such claims are not magically transformed into claims against New GM merely because they allegedly accrued at a specific time. New GM only assumed specifically-defined liabilities from Old GM. *See* Sale Agreement, § 2.3(a). All other liabilities were Retained Liabilities. *Id.*, § 2.3(b).[9]

28.    Movant has not, and cannot, allege that New GM caused any of his purported injuries. As such, any claim that Movant may have simply is not in any of the categories of Assumed Liabilities. By definition, any claim asserted by Movant is a Retained Liability not assertable against New GM pursuant to the Sale Order and Injunction, and Sale Agreement. Moreover, under the express terms of the Sale Order and Injunction (¶ AA), any Old GM claim

---

[9]    If the GUC Trust is correct (which it is not) that Movant had a "future claim," then the claims bar date would not apply to Movant and, arguably, he could assert a wind-down expense claim against the GUC Trust.

(that is not an Assumed Liability), even if it "arises" **after** the Petition Date, remains a claim of Old GM (and not New GM).

29.    Significantly, Movant is not left without a remedy if his arguments for lack of notice warrant any relief. Movant can bring a claim against the debtor. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."); *see also Conway v. White Trucks, A Div. of White Motor Corp.*, 885 F.2d 90, 96 (3d Cir. 1989) ("Conway contends that he should be able to sue Volvo [(the purchaser)], despite the available of a remedy against White [(the debtor)], because he had no notice of any of the relevant bankruptcy proceedings and therefore was unable to file a timely claim . . . .  The thrust of this argument is that successor liability is appropriate because Conway did not have an effective remedy against the predecessor.  This argument is unavailing, however, because it primarily provides a justification for permitting Conway to file a late proof of claim with the bankruptcy court or to avoid the discharge, arguments which he did not vigorously assert against White, rather than a justification for imposing successor liability on Volvo.").

30.    A corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities. *See Douglas v. Stamco*, 363 Fed. App'x 100, 2010 WL 337043 (2d Cir. 2010). The Second Circuit recently explained that there are "underlying public policy concerns" in reaching a contrary conclusion. "Allowing the plaintiff to proceed with his tort claim directly against [the purchaser] **would be inconsistent with the Bankruptcy Code's priority scheme** because plaintiff's claim is otherwise a low-priority, unsecured claim.  Moreover to the extent that the 'free and clear' nature of the sale … was a crucial inducement in the sale's successful transaction, it is evident that the potential chilling effect of allowing a tort claim

subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to maximize potential recovery by creditors." *Id.* at \*2 (emphasis added); *see also Doktor v. Werner Co.*, 762 F. Supp. 2d 494, 498-99 (E.D.N.Y. 2011) ("[C]ourts recognize that allowing a free and clear sale increases the purchase price of assets, 'because with this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with risk of endless litigation as to who has right to estate property'. . . . The fact that the asset sale here took place pursuant to a bankruptcy court proceeding raises a policy matter that strengthens the court's conclusions regarding successor liability. The Second Circuit has recognized clearly the importance of free and clear sales, and their ability to increase the value of the estate and benefit all creditors. Allowing Plaintiff to pursue a claim against a company that purchases the assets of a bankruptcy entity *would not only discourage such sales but also allow Plaintiff's low-priority unsecured claim to rise above claims of other creditors*." (emphasis added) (internal citations omitted)); *In re All American of Ashburn, Inc.*, 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (discussing two policies against allowing successor liability to follow bankruptcy sales, the first being "that if a plaintiff asserts a claim grounded on successor liability after a bankruptcy sale, he, in effect, receives a priority over those claims which were paid in accordance with the Bankruptcy Code [with the result being] that successor liability theory would rearrange the priority scheme established by the Bankruptcy Code," and the second "reason is the negative impact that potential successor liability claims would have on the trustee's ability to sell assets of the estate at a fair price"). Here, the GUC Trust's position contravenes these basic bankruptcy policies.

## II.    THE GUC TRUST IS JUDICIALLY ESTOPPED FROM ASSERTING THE MOVANT'S POSITION

31.    Try as it might, the GUC Trust cannot argue the merits of the Motion for Leave as if it is working off a "clean slate." The GUC Trust is the successor to the Old GM estate, and is

subject to the positions previously taken by its predecessor(s).  While the GUC Trust now advocates the Movant's position on due process and successor liability, Old GM and the Official Committee of Unsecured Creditors ("**Creditors' Committee**") previously took a contrary position on those precise issues, and judicial relief was granted to them based on their commonly held position.  As such, the GUC Trust is judicially estopped from taking a position different to that advocated by its predecessor.  The relevant facts are as follows.

32.    In early June 2009, Old GM obtained the Sale Procedures Order, which sets forth the requisite notice that needed to be provided for the Sale Motion. The Creditors' Committee never challenged or appealed the Sale Procedures Order, and the Sale Procedures Order is a "final and non-appealable order."  The GUC Trust Administrator (Wilmington Trust) was the chairman of the Creditors' Committee.

33.    On July 5, 2009, the Court granted Old GM's Sale Motion and entered the Sale Order and Injunction. Among other things, the Sale Order and Injunction addressed the due process issue as follows:

> (i) proper, timely, adequate and sufficient notice of the [Sale] Motion, the Sale Procedures, the 363 Transaction . . . have been provided in accordance with Bankruptcy Rule 2002(a), 6004(a) and 6006(c) and in compliance with the Sale Procedures Order; (ii) such notice was good and sufficient, reasonable, and appropriate under the particular circumstances of these chapter 11 cases, and reasonably calculated to reach and apprise all holders of liens, claims and encumbrances, and other interest, ***including rights or claims based on any successor or transferee liability***, about the Sales Procedures, the sale of the Purchased Assets, the 363 Transaction . . . and (iii) no other or further notice of the Motion, the 363 Transaction, the Sales Procedures . . .  and the Sale Hearing or any matters in connection therewith is or shall be required.  With respect to parties who may have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors (including, but not limited to, potential contingent warranty claims against the Debtors), the Publication Notice was sufficient and reasonably calculated under the circumstances to reach such parties.

Sale Order and Injunction, ¶ E (emphasis added).

34.    The Sale Order and Injunction addressed the successor liability issue by, among other things, providing that New GM would acquire the Purchased Assets free and clear of "all claims arising in any way in connection with [Old GM's] agreements, *acts,* failures to act, . . . *whether known or unknown, contingent or otherwise*, whether arising prior to or *subsequent to the commencement of the chapter 11* cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to, claims arising *under the doctrines of successor or transferee liability*."  Sale Order and Injunction, ¶ AA (emphasis added).[10]

35.    Old GM, as the proponent of the Sale Motion, sought approval of the Sale Order and Injunction with these provisions.  The Creditors' Committee ultimately supported Old GM's efforts to obtain the Sale Order and Injunction.  Indeed, Counsel for Wilmington Trust spoke at the July 2, 2009 Sale Hearing in favor of the entry of the Sale Order and Injunction.  Hr'g Tr. 109:8-12, July 2, 2009. The Sale Order and Injunction is a "final and non-appealable order."

36.    At the Sale Hearing, the issue of the rights of Old GM's "future creditors" was extensively discussed.  *See, e.g.,* Hr'g Tr. 165:15-25; 194:8-19. July 2, 2009; Hr'g Tr. 94:13-19, June 30, 2009.  The Sale Order and Injunction specifically protected New GM from such "future creditor" claims, with the lone caveat being that New GM would be protected from future claims of asbestos claimants "to the fullest extent constitutionally permissible." *In re Gen. Motors Corp.*, 407 B.R. at 507.

37.    In discussing whether the Sale Order and Injunction could constitutionally bar future claims of asbestos holders, the Court noted it was unclear whether any asbestos holder in the future would have a valid objection, "especially if Old GM were [*sic*] still in existence, and a claim could be filed against Old GM." *Id.*

_____

[10]    New GM did agree to assume certain enumerated liabilities of Old GM (the Assumed Liabilities), but they are not implicated by the Motion for Leave.

38.    The GUC Trust, as the successor to the Old GM estate, has over $1 billion in assets.  *See* GUC Trust Quarterly Reports as of March 31, 2014 [Dkt. No. 12708].

39.    Wilmington Trust's counsel advocated at the Sale Hearing that the division of the estate's portion of the sale proceeds among the creditors was not relevant to the Sale Motion, and should be decided by Old GM and its creditors (*i.e.*, not New GM) at a later point in the case. Hr'g Tr. 109, July 2, 2009.  ("[T]he sales price creates a pie and it creates a universe of people who are going to fight over that pie.  We understood that was the game when this case was filed. What's going to happen post-closing was that there was going to be a numerator and that is the stock and warrants that the bondholders and the other unsecured creditors are going to have a discussion and potential litigations over, how big the denominator was. What we were fundamentally concerned over at the outset, was the size of the pie was set.").

40.    Old GM's counsel argued at that same hearing that the Creditors' Committee would have to deal with future creditors in structuring a plan.  It was not a New GM issue or relevant to the Sale Motion.  Hr'g Tr. 165, July 2, 2009.

41.    On July 6, 2009, counsel for the ad-hoc committee of asbestos claimants filed a motion in the Bankruptcy Court seeking approval to take a direct appeal of the Sale Order and Injunction to the Second Circuit ("**Direct Appeal Motion**") arguing, among other things, that the Sale Order and Injunction violated due process and other constitutional rights of future creditors. *The Ad Hoc Committee Of Asbestos Personal Injury Claimants' Motion For An Order Certifying Sale Order For Immediate Appeal To The United States Court Of Appeals, Pursuant To 28 U.S.C. § 158(d)(2) Or In The Alternative For A Stay Of The Sale Order, Pursuant To Fed. R. Bankr. P. 8005*, filed July 6, 2009, ¶ 5 [Dkt. No. 2989].  The Direct Appeal Motion was opposed by Old GM and the Creditors' Committee, and the Court denied the Direct Appeal Motion.

42.    On July 9, 2009, District Court Judge Kaplan denied the motion by the Ad-Hoc Committee of Asbestos Personal Injury Claimants ("**Ad Hoc Tort Claimants**") for a stay pending appeal of the Sale Order and Injunction ("**Stay Motion**"). *See Gen. Motors Corp.*, 2009 WL 2033079.  Old GM and the Creditors' Committee opposed the Stay Motion.  Although the appellant claimed irreparable injury on issues such as successor liability, Judge Kaplan found that appellant had not satisfied its burden to obtain a stay.

43.    On July 10, 2009, Old GM and New GM consummated the Sale Agreement. Thereafter, District Court Judge Buchwald dismissed the Ad Hoc Tort Claimants appeal of the Sale Order and Injunction on the grounds that the appeal was statutorily moot (based on the section 363(m) finding in the Sale Order and Injunction) as well as equitably moot. *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010) (Buchwald, J.).

44.    Old GM prosecuted the successful dismissal of the appeal with the full support of the Creditors' Committee.[11]

45.    Old GM's Disclosure Statement states that the GUC Trust is the successor to Old GM under the Plan. Disclosure Statement, at 93.

46.    The GUC Trust's SEC filing states that "the GUC Trust was formed for the purposes of implementing the Plan . . . as a post-confirmation successor to MLC." *See* Response, Ex. B, Ex. 1, at 2. In addition, the GUC Trust was formed for "***winding down the Debtors' affairs*** . . . ." *See* GUC Trust Form 10-K, at 2 (emphasis added); *see also* Amended

---

[11]    The GUC Trust has staked out a position in this case that even if the Ignition Switch Plaintiffs have a claim against the GUC Trust, it should not be recognized based on principles of "equitable mootness."  Presumably, if the GUC Trust is protected under this doctrine, it will concede that New GM should be similarly protected (especially because appellate courts have already so found).

and Restated Motors Liquidation Company GUC Trust Agreement, dated as of June 11, 2012

("**GUC Trust Agreement**").

47.    The GUC Trust Agreement likewise states:  "The GUC Trust Administrator may, but shall not be required to, setoff against or recoup from any payments to be made pursuant to the Plan in respect of any Allowed General Unsecured Claim, including in respect of any Units, any claims of any nature whatsoever that the GUC Trust, *as successor to the Debtors*, may have against the claimant . . . ." GUC Trust Agreement, § 6.5 (emphasis added).

48.    Old GM's plan of reorganization ("**Plan**") provided that, upon the dissolution of Old GM, the GUC Trust would assume Old GM's remaining obligations under the Sale Agreement.  *Id.* at 3.  The Plan also states that the definition of "Protected Party" includes "any Entity that, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or *successor to*, any assets of the Debtors (including, without limitation, the GUC Trust . . . .)." Plan, § 1.115 (emphasis added).

49.    In the Assignment Agreement (Exhibit B to the Response), Old GM assigned to the GUC Trust, for *no consideration*, all of its "rights and defenses" against any creditor of Old GM.  *See* Response, Ex. B, Ex. 2, at 2.

50.    The Creditors' Committee supported Old GM's Plan and the establishment of trusts for certain future creditor claims. The Creditors' Committee was a fiduciary for all creditors.  New GM was not involved in the structuring of Old GM's Plan.

51.    The foregoing sets forth the extensive support the GUC Trust's predecessor gave for the Sale Order and Injunction and the provisions therein relating to due process and successor liability.  The GUC Trust cannot conveniently retreat, years after the fact, from this support and, is in fact, judicially estopped from asserting the Movant's position.

52.    The elements of judicial estoppel are: "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. National Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

53.    Here, the GUC Trust is clearly the successor of Old GM and bound by its positions.  For purposes of judicial estoppel, the GUC Trust is the same party as Old GM; as such, all the elements of judicial estoppel are satisfied. *First*, Old GM took the position that New GM, as purchaser would not be subject to successor liability and that proper notice of the 363 Sale—including its provisions on successor liability—was provided.  The GUC Trust's Response now seeks to contradict the position of its predecessor. *Second*, Old GM's position was adopted by this Court and two District Courts when they approved the 363 Sale and the Sale Order and Injunction (which contained the provisions prohibiting successor liability, and finding due process was satisfied). *Third*, the GUC Trust would derive an unfair advantage against New GM if it were allowed to contradict the position of its predecessor.  The lack of successor liability and the finding of proper notice were essential elements of the 363 Sale for the purchaser.  The Sale Order and Injunction repeatedly emphasized that New GM would not be subject to successor liability.  New GM would not have entered into the 363 Sale had it known it could be subject to successor liability.  Moreover, the GUC Trust's predecessor expressly stated at the 363 Sale hearing that dealing with future creditors would be handled in Old GM's Plan, rather than shifting those liabilities onto New GM.

54.    Letting the GUC Trust contradict this position would allow unjust enrichment for the GUC Trust and its beneficiaries, at the expense of New GM.  This unfair advantage should

not be allowed.  Instead, the GUC Trust should be required to abide by its predecessor's position in supporting the Sale Agreement, and the Sale Order and Injunction.

WHEREFORE, New GM respectfully requests that this Court (i) deny, in its entirety, any relief requested by the GUC Trust in its Response as against New GM, and (ii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      September 5, 2014

Respectfully submitted,


_____/s/ Arthur Steinberg_____
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

-and-

Richard C. Godfrey, P.C. (admitted pro hac vice)
Andrew B. Bloomer, P.C. (admitted pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*