# Exhibit 3

 

September 12, 2014

*Via Electronic Court Filing*

The Honorable Jesse M. Furman
United States District Court
Southern District of New York

    Re:    *In re: General Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF)

            **Plaintiffs' Response to GM's Demand to Delay Discovery**
            <u>**Relating to Post-Sale Claims**</u>

Dear Judge Furman:

      Per Order No. 12 § III, Plaintiffs submit this letter in response to GM's bid to block discovery pending resolution of (i) Motions to Enforce the Sale Order and Injunction ("Motion to Enforce") in the Bankruptcy Court, and (ii) motions to dismiss the consolidated complaint here in the MDL.

      The Court's inclination to permit discovery relating to post-Sale Order claims complies with the Bankruptcy Court's Sale Order, is a sound exercise of discretion to manage this MDL in an efficient and coherent manner, will not interfere with proceedings in the Bankruptcy Court, and comports with common sense. Conversely, GM's attempt to block discovery—even in cases in which it has not filed a Motion to Enforce—is baseless. The Sale Order does not apply to a wide array of claims, including (i) personal injury and wrongful death claims associated with vehicles made or sold by Old GM and resulting from post-Sale accidents, and (ii) economic loss claims involving only cars manufactured and sold by New GM. GM has decided not to assert a bankruptcy defense in approximately 45 cases where it has not filed Motions to Enforce. Literally millions of class vehicles fall into the foregoing categories, and Judge Gerber's rulings on pending Motions to Enforce *in other cases* will have no bearing on the progression of the claims relating to these vehicles. Consequently, discovery should commence with dispatch so that claims unaffected by Old GM's bankruptcy do not get mired in collateral skirmishes in the Bankruptcy Court–an unfortunate result that would likely add a year or more to resolving this MDL.

**A.**     **The Sale Agreement and the Sale Order Preserve Warranty and Injury Claims Against New GM–Claims that Cannot Be the Subject of Motions to Enforce**

      In purchasing Old GM's assets, New GM agreed to "assume and thereafter pay or perform as and when due, or otherwise discharge" certain enumerated "Assumed Liabilities,"[1] including:

            (vii)(A) all Liabilities arising under express written warranties of
            Sellers that are specifically identified as warranties and delivered in connection

---

[1] June 26, 2009 Amended and Restated Master Sale and Purchase Agreement (the "Sale Agreement"), § 2.1.

The Honorable Jesse M. Furman
September 12, 2014
Page 2

with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws;

(ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of accidents, incidents or other distinct and discreet occurrences that happen on or after the Closing Date and arise from such motor vehicles' operation or performance....[2]

The Sale Order adopts these Sale Agreement provisions by preserving New GM's liability for "Assumed Liabilities."[3]

Thus, there are two broad categories of claims that are unaffected by the Sale Order and, therefore, could not be the subject of any Motions to Enforce:

1. Express written warranty and Lemon Law obligations pertaining to vehicles made or sold by Old GM, whether made or sold before or after the Sale Order; and

2. Personal injury and property damage claims associated with vehicles made or sold by Old GM, provided that the accidents or incidents occurred after the date of the Sale Order.

**B.    Substantial Claims Relate Solely to Post-Sale Vehicles Sold by New GM to which the Sale Order Does Not Apply**

In addition to exposure to "Assumed Liabilities," *New GM would, of course, be subject to liability for its own conduct relating to cars manufactured and sold by New GM and not by Old GM*. This is a third, broad category of claims against New GM that cannot be barred by the Sale Order. The number of putative class vehicles falling into this category is massive. For example, New GM has recalled over 790,000 Chevy Impala, Cadillac DTS, and Buick Lucerne models post-dating 2009 for "weighted key ring" ignition defects; over 100,000 post-2009 Cadillac CTS vehicles for ignition switch defects; and over 460,000 post-2009 Chevy Camaro vehicles for a "key

---

[2] *Id.*, § 2.3(a)(vii), (ix).

[3] *See* July 5, 2009 Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief (the "Sale Order"), ¶¶ 46-48.

The Honorable Jesse M. Furman
September 12, 2014
Page 3

design" ignition defect. Further, the *Andrews* case[4] implicates over 10 million GM models sold post-Sale.

### C. In the Exercise of its Broad Case Management Powers, the Court Should Authorize Discovery into Post-Sale Order Claims

Given the foregoing, a significant amount of claims are preserved against New GM for millions of vehicles at issue in the underlying complaints. Indeed, New GM has admitted that, among the 116 cases consolidated into MDL 2543 to date, there are 16 cases not subject to any of New GM's Motions to Enforce, either because they involve post-Sale personal injury or wrongful death claims (15) or because they only involve economic loss claims relating to post-Sale New GM vehicles (1).[5] This includes 620 injury/wrongful death plaintiffs who filed directly in this Court. In addition, GM has identified 31 cases pending in state and federal court that have not been consolidated into the MDL and in which New GM has not filed a Motion to Enforce.[6]

So, *even if GM prevails in all Motions to Enforce*, claims will remain on behalf of millions of putative class members.[7] Allowing discovery to proceed in cases involving post-Sale accidents or post-Sale economic loss claims will not adversely impact Judge Gerber's management of his own docket, especially when New GM admits they are not subject to the Sale Order.[8] We submit that the Court's instincts on this issue were sound when the Court indicated that if discovery is "ultimately going to go forward [in some cases] regardless, then we may as well get it done now because it will not only be necessary to those cases because it will benefit whatever cases remain after the bankruptcy court ruling is made."[9] We also agree with the Court's assessment that the parties in all cases have an "interest in ensuring that documents are gathered both to ensure the documents and materials don't disappear or get lost, to ensure that custodians who have information about where things are identified and those things can be tracked down[,] [a]nd also to ensure that when the time comes to begin depositions in this matter which we'll talk about at some point that we don't need another six 12, 18 months to gather documents and we're taking advantage of the

---

[4] *Andrews v. General Motors LLC*, No. 5:14-01239-ODW-AJW (C.D. Cal.).

[5] GM Letter Br., Dkt. No. 297 at 2; *see also* Parties' August 29, 2014 Joint Letter re: Matters of Possible Significance, Dkt. No. 271 at 2.

[6] *Id.* at Ex. B, pages 1-8. One of these, *Morgan, et al. v. General Motors LLC*, No. 5:14-cv-01058 (W.D. La.), is a putative class action on behalf of Chevrolet Cruze owners seeking economic loss damages arising out of New GM's alleged concealment of ignition switch and other defects.

[7] Sept. 4, 2014 Hearing Tr. at 25. The Court stated: "Let me ask a very pointed question. Assume you [GM] win on everything before Judge Gerber and all those plaintiffs disappear, how does discovery change vis-a-vis the remaining cases as to which you are not making any motion before the bankruptcy court?" Plaintiffs submit that, even if GM does win all motions before Judge Gerber, there are still claims on behalf of millions of class members that will be unaffected.

[8] *Id.* ("there is a category of plaintiffs that we would agree are not subject to Judge Gerber's ruling").

[9] *Id.* at 30. The Court's pointed questions to GM as to why discovery should be delayed in some cases if discovery in other cases will be moving forward remain unaddressed by GM.

The Honorable Jesse M. Furman
September 12, 2014
Page 4

time now while a bankruptcy litigation is ongoing to do what we can on that front."[10] For these reasons, the parties should not be content with GM's production of documents already provided to the federal government; there will be a cache of relevant documents not contained in that production that will need to be produced here, and those documents should be identified, gathered, and provided without delay.

GM's assertion to the contrary is not supported by the Sale Order, sound case management principles, or logic. Delaying discovery into purely post-Sale claims pending Judge Gerber's resolution of all Motions to Enforce will lead to six months or more of delay in getting discovery off the ground and could cause this MDL to, as GM's counsel recognized at the last status hearing, "last 15 years or more." The Court has already recognized that briefing on the issues before Judge Gerber will not be complete until January, and that Judge Gerber may not be in a position to rule quickly given his docket demands.[11] Indeed, Judge Gerber has not yet set a hearing on the motions, only indicating that a hearing would be set some time after January 26.

Further, Judge Gerber's order denying discovery in the Bankruptcy proceedings with respect to claims implicating Old GM is not a reason to stay discovery in the MDL relating to post-Sale claims; that discovery will be taken here and not in the Bankruptcy proceeding. And GM's concerns that discovery here will disrupt the Bankruptcy proceedings are overblown. Given that Judge Gerber has denied discovery in cases where Motions to Enforce are pending, he is unlikely to entertain revisions to stipulated facts based on new discovery; but, in any event, that will be a matter for Judge Gerber to decide in the exercise of his discretion if presented with new facts.

GM also argues that discovery should await resolution of motions to dismiss directed at a consolidated complaint in the economic loss class actions. While motion practice will, in part, frame the scope of claims in the economic loss cases, even if all economic loss class actions are dismissed–a *highly* unlikely result given GM's defect admissions–discovery will proceed in all of the personal injury and wrongful death cases for accidents that post-date the Sale Order. And the scope of models identified in the complaints alleging personal injuries or wrongful death resulting from post-Sale accidents is very broad and significantly overlaps with the models targeted in the economic loss class actions. For example, in the *Abney* personal injury/wrongful death complaint filed directly in this Court and where New GM did not file a Motion to Enforce, plaintiffs target the following models:

> Chevrolet Cobalt (2005-2010 model years); Chevrolet HHR (2006-2011 model years); Pontiac GS (2006-2007 model years); Pontiac Solstice (2006-

---

[10] *Id.* at 20. New GM admits that at least some discovery is proper in the injury/death actions given its agreement to produce "non-privileged, post-Sale Vehicle Inquiry System documents (related to the seller of the new vehicle and any vehicle warranty and recall history) and any available Sensing Diagnostic Module ("SDM") downloads and crash reports currently in New GM's possession, custody, and control for all personal injury and wrongful death MDL cases involving post-Sale accidents, and for which Plaintiffs have provided New GM a valid Vehicle Identification Number." GM Letter Br., Dkt. No. 297 at 3; Parties' August 29, 2014 Joint Letter re: Status Conference Agenda, Dkt. No. 272 at 2.

[11] Sept. 4, 2014 Hearing Tr. at 24.

09-50026-mg    Doc 12896-3    Filed 09/12/14    Entered 09/12/14 17:52:28    Exhibit 3
Pg 6 of 7
Case 1:14-md-02543-JMF    Document 298    Filed 09/12/14    Page 5 of 6

The Honorable Jesse M. Furman
September 12, 2014
Page 5

2010 model years); Saturn Ions (2003-2007 model years); Saturn Sky (2007-2010 model years); and (b) the Second Wave Defective Vehicles, consisting of Buick LaCrosse (2005-2009 model years); Buick Lucerne (2006-2011 model years); Buick Regal LS (2004-2005 model years); Buick Regal GS (2004-2005 model years); Cadillac Deville (2000-2005 model years); Cadillac DTS (2004-2011 model years); Cadillac CTS (2003-2014 model years); Cadillac SRX (2004-2006 model years); Chevrolet Camaro (2010-2014 model years); Chevrolet Impala (2000-2014 model years); Chevrolet Monte Carlo (2000-2008 model years); Chevrolet Malibu (1997-2005 model years); Oldsmobile Intrigue (1998-2002 model years); Oldsmobile Alero (1999-2004 model years); Pontiac Grand Am (1999-2005 model years); Pontiac Grand Prix (2004-2008 model years); Daewoo G2x (2007-2009 model years); Opal GT (2007-2010 model years); Pontiac Pursuit (2005-2007 model years); and Vauxhall GT (2007-2010 model years).[12]

It simply makes no sense for discovery to be stayed pending the outcome of Rule 12 motions in the economic loss class actions given that some discovery, particularly in the injury/death cases, will be moving forward *on the very same models*.

Lastly, GM contends that Plaintiffs should prepare and submit specific discovery requests tailored to post-Sale accident and economic loss claims, and that, at a minimum, the Court and parties should evaluate plaintiffs' requests, assess their impact (if any) on the Bankruptcy proceedings, and provide GM with an opportunity to respond before the Court authorizes discovery.[13] Plaintiffs are preparing such discovery. GM will have an opportunity to respond thereto in accord with the Federal Rules of Civil Procedure. But this should not stop the Court from ordering that discovery generally may proceed on post-Sale claims.[14]

For these reasons, Plaintiffs respectfully request that the Court generally authorize the commencement of discovery relating to claims in cases not subject to a Motion to Enforce. There are no valid reasons supporting further delay. GM has asserted no burden, let alone made any particularized showing of burden, and its desire to avoid producing discoverable materials simply because such discovery may also be relevant to other claims is contrary to the letter and spirit of Fed. R. Civ. Proc. 1 and general principles of sound case management.

---

[12] *Abney, et al. v. General Motors LLC*, No. 14-cv-05810-JMF (S.D.N.Y.), Dkt. No. 1 at ¶ 18.

[13] GM Letter Br., Dkt. No. 297 at 5.

[14] GM's position on this point is inconsistent with its argument that it is impossible to segregate discovery. In any event, any purported difficulty in partitioning discovery is not a basis for delay and in fact militates in favor of Plaintiffs' position; if future discovery is simplified by production now, all the better. If there are no future claims (again, a highly unlikely outcome), that is irrelevant–GM should not be *withholding* documents that are relevant to going-forward claims simply because those documents may *also* be relevant to claims that are the subject of motions. This also serves to distinguish cases cited by GM in which courts stayed discovery pending motion practice.

The Honorable Jesse M. Furman
September 12, 2014
Page 6

Respectfully,

| /s/ Steve W. Berman | /s/ Elizabeth J. Cabraser | /s/ Robert C. Hilliard |
|---|---|---|
| Steve W. Berman | Elizabeth J. Cabraser | Robert C. Hilliard |
| **Hagens Berman Sobol Shapiro LLP** | **Lieff Cabraser Heimann & Bernstein, LLP** | **Hilliard Muñoz Gonzales L.L.P.** |
| 1918 Eighth Ave. | 275 Battery Street | 719 S Shoreline Blvd |
| Suite 3300 | 29th Floor | Suite #500 |
| Seattle, WA 98101 | San Francisco, CA 94111-3339 | Corpus Christi, TX 78401 |
| -and- | -and- | |
| 555 Fifth Avenue | 250 Hudson Street | |
| Suite 1700 | 8th Floor | |
| New York, NY 10017 | New York, NY 10013-1413 | |

HB010440-11 717762 V1