# Exhibit 4

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

<table>
<tr><td>Andrew B. Bloomer, P.C.<br>To Call Writer Directly:<br>(312) 862-2482<br>andrew.bloomer@kirkland.com</td><td>300 North LaSalle<br>Chicago, Illinois  60654<br><br>(312) 862-2000<br><br>www.kirkland.com</td><td>Facsimile:<br>(312) 862-2200</td></tr>
</table>

September 12, 2014

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *In re: General Motors LLC Ignition Switch Litigation,*
14-MD-2543 (JMF); 14-MC-2543

Dear Judge Furman:

Pursuant to Order No. 12 § IX, counsel for General Motors LLC ("New GM"), on behalf of all Defendants, submit this letter brief regarding coordination of this litigation with related cases in other state and federal courts.

**1.    Effective Coordination With State Courts And The Bankruptcy Court Is Critical To The Success Of This MDL:** The success of federal multidistrict litigation involving other courts turns upon the effectiveness of MDL Court coordination, if not control, of the discovery and pre-trial rulings in other actions. As the district court observed in *Blue Cross of Cal. et al. v. SmithKline Beecham Clinical Labs.,* 108 F. Supp. 2d 130 (D. Conn. 2000), "given the multidistrict character of this litigation, [] intolerable conditions [] could ensue from conflicting orders from different courts, including duplicative and inconsistent rulings on discovery disputes ..." *Id.* at 137. In the absence of appropriate coordination, "[t]he potential for confusion and chaos [] is significant. . . . [I]t is imperative to protect this Court's multidistrict jurisdiction against state or other federal court actions that threaten to . . . issue conflicting discovery orders." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* MDL No. 1559, 2003 WL 26613196, at *3 (W.D. Mo. Dec. 22, 2003).

These inherent challenges are multiplied in this case given the primarily federal character of this litigation and the fact that the vast majority of cases are being administered in the MDL. There are 116 cases pending in this MDL, encompassing 1,188 plaintiffs and 1,128 vehicles. In contrast, and without intending to minimize their individual significance, there are only 28 related cases pending in state courts around the country, involving just 42 vehicles (3.7 percent of the total) and 66 plaintiffs (5.5 percent of the total). Yet any one of those 28 cases could have a disproportionate impact on the orderly conduct of this MDL proceeding, and even eliminate completely every efficiency the MDL is designed to achieve. Furthermore, the proceedings in

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
September 12, 2014
Page 2

the Bankruptcy Court may well moot a substantial majority of plaintiffs' claims, whether federal or state, with only approximately 6.4 percent of the vehicles at issue in these cases alleged to have been manufactured and sold by New GM.[1] Recognizing this, this Court already has stated that it "strongly agrees that it is prudent to establish, at an early stage, appropriate procedures for coordinating this litigation with related cases in other courts, including the Bankruptcy Court and state courts." (MDL Order No. 8, ECF No. 249 § V.)

Pursuant to Order No. 12, the purpose of this letter brief is to offer specific suggestions to the Court for how coordination with the state court actions can best be achieved. Defendants' suggestions are two-fold. *First*, with respect to state *courts*, Defendants submit that the Court should adopt the draft Coordination Order previously submitted by New GM (MDL ECF No. 273 at Ex. A)—with modest adjustments in the version attached hereto as Exhibit 1 to capture the technological and procedural suggestions made by the Court at the September 4 Status Conference. But *second*, and more significantly, the coordination problems emerging to date have arisen not as a result of any actions taken by state *courts*, which have imposed schedules and procedures that would accommodate the primacy of the federal MDL. Rather, at this time, coordination problems are arising solely as a result of the tactical decisions and conduct of certain plaintiffs' *counsel* who have cases pending both in this MDL and in state courts, including one attorney who serves on plaintiffs' MDL Executive Committee. To protect the primacy of the MDL Court, and also to avoid the very real problems posed by inconsistent orders, duplicative discovery, and conflicting discovery tracks and scope, Defendants propose entry of a second order setting forth specific gatekeeping steps to be implemented by this Court with regard to MDL plaintiffs' counsel prosecuting actions both in the MDL and in state court.

**2.    Specific Yet Surgically-Tailored Coordination Activities Are Essential At The Current Time To Avoid The Need For More Drastic Measures Later:** New GM is *not* asking this Court at the current time to exercise its authority pursuant to the All-Writs Act and the Anti-Injunction Act to enjoin either state courts or individual litigants, which this Court clearly can do in aid of its jurisdiction.[2] Such measures are not yet necessary given other

---

[1] In contrast, 83 percent of vehicles are alleged to have been manufactured and sold by General Motors Corporation ("Old GM") pre-bankruptcy; another 6.5 percent are alleged to have been manufactured and sold in 2009—making it possible that they are either pre- or post-Sale vehicles; and the date of manufacture for approximately another four percent of vehicles alleged in these cases is not ascertainable based upon the pleadings thus far.

[2] The All Writs Act authorizes (and the Anti-Injunction Act permits) an MDL court to enjoin state court proceedings "to protect the integrity of [its] rulings, including pretrial rulings like discovery orders." *Manual for Complex Litig.* ("MCL") § 22.4 (4th ed. 2004). In doing so, an MDL Court may enjoin state court proceedings in their entirety to "protect its multidistrict jurisdiction." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2003 WL 26613196, at *3; *Blue Cross of Cal.*, 108 F. Supp. 2d at 136-37. An MDL court also may prohibit discovery in other forums, including (i) by directly enjoining a state court pursuant to "the power conferred by the All Writs Act to enjoin those

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
September 12, 2014
Page 3

coordination options available to the Court. Rather, Defendants believe that the steps this Court already is taking—outreach to and cooperative consultation with state court judges, along with entry of a suitable coordination order combined with the additional gatekeeping measures New GM suggests below—should be sufficient.

**3.      The Emerging Challenges Posed By Certain MDL Plaintiffs' Counsel Warrant Entry Of A Coordination Order And For This Court To Exercise A Gatekeeping Function:**   The record is clear that certain MDL plaintiffs' counsel are taking conflicting positions in different forums.  That is, notwithstanding their agreement to proceed one way in this Court on a particular issue, plaintiffs' counsel feel unconstrained in taking a starkly contrary position on the exact same issue in a different court, posing fundamental challenges to managing this MDL in a rational and efficient manner.  These challenges include:

i.   Although this Court has deferred the issue of taking depositions (9/4/14 Tr. at 20), MDL plaintiffs' counsel in the *Melton* case has requested 15 depositions to commence at the end of October.  Should these depositions proceed in one state court action, it is likely that they will be noticed repeatedly in other state court actions, and then again in the MDL—the very problem identified by the Court in the *Blue Cross of California* case, noted above.

ii.   Although discovery in the MDL thus far has been limited to previously-produced relevant and non-privileged NHTSA and Congressional productions, and briefing has been ordered only with respect to specific additional categories of discovery related to post-Sale accidents, defects alleged in New GM vehicles, and the implementation of various recalls, MDL plaintiffs' counsel acting in several state court cases have requested broad discovery.[3]

---

who could frustrate the implementation of the court's order[s]," *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 93 F. Supp. 2d 876, 881 (M.D. Tenn. 2000); (ii) by enjoining litigants from proceeding in another court so as to "protect [the MDL court's] jurisdiction and further the goals of the MDL," *In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.*, MDL No. 1488, 2003 WL 22331286, at *1 (N.D. Ohio May 21, 2003); and (iii) by requiring entry of a protective order (and other discovery orders) identical to ones entered in the MDL "as a precondition for seeking discovery. . . ." *ONBANCorp, Inc. v. Holtzman*, 1997 WL 381779, at *4-9 (N.D.N.Y. June 27, 1997).

[3] Discovery requests have been propounded in the following related state court cases: *Beckwith v. General Motors Company, et al.*, No. 13CECG03298 (Fresno County, Cal.); *Cull, et al. v. General Motors LLC, et al.*, No. 10C02-1404-CT-000060 (Clark County, Ind.); *Graves Sr., et al. v. General Motors LLC, et al.*, No. 25,715 (Gonzales County, Tex.); *Melton, et al. v. General Motors LLC, et al.*, No. 14A-1197-4 (Cobb County, Ga.); *Smith v. General Motors LLC, et al.*, No. 41-CV-2014-900140.00 (Lauderdale County, Ala.); and *Wilson, et al. v. General Motors LLC*, No. 14-A-2092-2 (Cobb County, Ga.).  Relevant discovery also has been requested in the following additional cases, which do not primarily allege claims that are the subject of this MDL: *Butcher v. General Motors Company, et al.*, No. 2:14-cv-00353 (W.D. Pa.); *Clarke v. General Motors Company LLC*, No. 4:14-cv-00006 (N.D. Tex.); *Kokalichev v. General Motors LLC, et al.*, No. 12-25369 (Broward Co. Cir. Ct., Fla.); *Mathes v. General Motors*

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
September 12, 2014
Page 4


iii. Although Lead Counsel have agreed to defer the issue of discovery related to the Valukas Report and documents produced to other federal agencies in the MDL,[4] these same documents are being requested in state court cases by certain MDL plaintiffs' counsel.

iv. Although MDL Lead Counsel have agreed to take up privilege-related objections to discovery at a later time (9/4/14 Tr. at 41), these same objections will be at issue in New GM's responses to state court discovery initiated by certain MDL plaintiffs' counsel.

v. Discovery is proceeding in state court notwithstanding that protocols have not been established for state court attorneys to participate in a common benefit fund or for cost-sharing in the MDL common document depository. (*See* 9/4/14 Tr. at 69).

These coordination challenges are most acutely illustrated by the *Melton* litigation.[5]  In that case,[6] although Mr. Cooper tentatively has agreed to consider the MDL protective order and

---

*LLC*, No. CL12001623-00 (Augusta Co. Cir. Ct., Va.); and *Nguyen, et al. v. General Motors LLC*, No. 3:14-cv-01102 (N.D. Tex.). *See* Joint Letter re Developments in Related Proceedings, MDL ECF No. 271.

[4] *See* Letter re Proposed Agenda, MDL ECF No. 272.

[5] Indeed, the Beasley Allen firm, which is co-counsel to Mr. Cooper in *Melton*, has said that "The return of the *Melton* case to Cobb for discovery and trial is 'the most important thing that has happened so far in the GM litigation'" and "'will now take center stage.'" Katheryn Tucker, "Federal Judge Returns Melton Case Against GM To Cobb County," *Daily Report*, July 18, 2014, attached hereto as Exhibit 2. In addition to *Melton*, Beasley Allen has propounded early discovery in the *Cull* and *Smith* cases that may also require this Court's attention.

[6] Notwithstanding Mr. Cooper's assertions, the allegations in *Melton* are not "unique." (9/4/14 Tr. at 65). Tragically, Brooke Melton was killed in a March 2010 motor vehicle accident while driving her 2005 Chevrolet Cobalt. (1:14-cv-01815 (N.D. Ga.), ECF No. 1 Ex. 4, Cmplt. ¶ 1, 15). Plaintiffs originally brought suit in the State Court of Cobb County, Georgia, in 2011 against New GM and Thornton Chevrolet, Inc., a GM dealership, asserting claims for strict liability, negligence, breach of implied warranty, fraud and fraudulent concealment, punitive damages, and attorneys' fees. (*Id.* at ¶ 136). Plaintiffs alleged that a defective ignition switch caused the key to turn from the run to the accessory/off position, resulting in the engine shutting off, Ms. Melton losing control of the vehicle, and the airbags not deploying. (*Id.* at ¶ 14). Thus, *Melton's* underlying factual allegations regarding the ignition switch causing an accident are identical to those in scores of cases in this MDL. The original *Melton* suit was settled in September 2013 and the state court entered an Order dismissing New GM, with prejudice. (ECF No. 22). Then, in May 2014, plaintiffs filed a second suit alleging substantially identical claims against New GM and the Thornton dealership, and sought to rescind the settlement agreement without tendering all of the consideration paid in the settlement back to New GM. (ECF No. 22).  New GM moved to dismiss, arguing that *res judicata* barred the second suit because plaintiffs could not unilaterally rescind the settlement agreement, had failed even to move to set aside the prior judgment, as required by O.C.G.A. § 9-12-40 (the state-law equivalent to Fed. R. Civ. P. 60) and, in any event, had failed to tender back the full consideration paid by New GM. On Saturday August 9, 2014, at a special hearing held three days prior to this Court's initial August 11 MDL status conference, the Georgia state court denied New GM's motion to dismiss and set a schedule for New GM to respond to plaintiffs' discovery requests. The Court did not, however, set aside the underlying judgment of dismissal with prejudice, holding instead

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
September 12, 2014
Page 5

to use the common document repository—demonstrating that the issues in *Melton* are fundamentally the same as the more than 1,100 plaintiffs with claims pending in the MDL cases—Mr. Cooper has insisted that depositions proceed almost immediately. He also has propounded two sets of wide-ranging discovery requests, attached hereto as Exhibit 3. In addition to the NHTSA and Congressional productions, which are effectively co-extensive with this MDL, the *Melton* discovery requests include but are not limited to:

- The Valukas Report, all documents referenced in the Report, all documents provided to or reviewed by Mr. Valukas' law firm for purposes of preparing the Report, all interview notes prepared in connection with the Report, and all bills from Mr. Valukas' law firm.

- Internal New GM correspondence related to the production of documents to the United States Attorney's Office for the Southern District of New York in connection with a confidential grand jury investigation.

- "All documents authored by, received by, and sent to [New] GM's Board of Directors" related to the ignition switch recalls.

- "All documents, including attorney's notes, created by GM and/or any of its attorneys, including in-house counsel as well as outside counsel, in connection with its investigation into safety related defects in the [ignition switch]."

- "All documents sent by GM to attorneys at any law firm about the existence of safety-related defects in the cars covered in the Recall."

- "All documents reflecting any work done by GM's in-house counsel, and/or outside counsel, relating to the Key System, including the ignition switch."

(Plaintiffs' First Document Request Nos. 2, 3, 5, 7, 12-14, 21-23; Plaintiffs' Second Document Request Nos. 5-8, 25, 28-31, 35, Ex 3 hereto).

The *Melton* discovery requests are inconsistent with agreements reached between Lead Counsel and New GM in the MDL, memorialized in this Court's orders, including an agreement to defer discovery with respect to the Valukas Report and with respect to documents produced to

---

that the plaintiffs had the unilateral right to rescind the settlement, and that their decision to rescind had the effect of rendering the judgment of dismissal without any legal effect—even though, to this day, that judgment of dismissal still stands on the public docket and no motion to set it aside has ever been filed or granted. But regardless, with respect to its underlying claims, *Melton* is just like the overwhelming majority of claims asserted by the more than 1,100 plaintiffs in this Court, and is by no means limited to the issue of rescission.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
September 12, 2014
Page 6

federal agencies other than NHTSA and Congress. (MDL ECF No. 272 at 4). The remaining categories of documents listed above not only far exceed what has been agreed to, ordered, or even is currently being briefed in this MDL, but also raise important legal issues with respect to the scope of discovery in general and the attorney-client privilege and the work-product doctrine in particular.  For this MDL to be successful, all of these issues—depositions, document discovery, and the many legal issues embodied therein, including core issues related to the attorney-client privilege and work-product doctrine—should be decided by this Court in the first instance on behalf of the more than 1,100 plaintiffs already before it, not by the rulings of a single state court in a single plaintiff suit that could preempt everything this Court would subsequently seek to accomplish.

    4.    **This Court Should Act Now To Enter A Suitable Coordination Order And To Control The Conduct Of Counsel Under Its Jurisdiction:**  In light of the emerging problems and risks to the success of this MDL, Defendants submit that two distinct orders should be entered. *First*, for the reasons set forth in the parties' joint correspondence of August 29, 2014 (MDL ECF No. 273), New GM believes that a coordination order in substantially the form attached hereto as Exhibit 1, and consistent with coordination orders entered in prior MDLs such as *Grey Market*, is appropriate and essential "to enable this Court to effectuate appropriate coordination, including discovery coordination, with [related] cases." (MDL Order No. 8, at 8). Critically, aside from discovery taken in the MDL, the parties in related state court actions would be permitted to take additional or independent discovery only upon leave of the state court in which the state court action is pending. (Ex. 1 at ¶¶ 17, 23). In contrast, placing the burden on Defendants to seek a protective order in response to every written discovery request or deposition notice that might issue in any individual state court action, as Lead Counsel propose in their draft coordination order, is unworkable and impractical.

    *Second*, Defendants propose that an additional gatekeeping order should be entered directing *counsel* appearing both in this MDL (and therefore inherently subject to this Court's authority) and in related state court litigation to comply with this Court's discovery orders in the state court proceedings. Such an order should apply to both Plaintiffs and Defendants alike, and should apply retroactively to state court discovery that already has been propounded. Among other things the gatekeeping order should provide that:

    i.    Requests for written discovery may be propounded in a state court action only upon prior leave of the MDL Court, obtained on noticed motion for good cause shown, including why the written discovery is non-duplicative and cannot be obtained in coordinated discovery in the MDL at the appropriate time, and subject to appropriate procedures such that any state court discovery does not need to be repeated in other state court actions or in the MDL.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
September 12, 2014
Page 7

       ii.     Depositions may be taken in a state court action only upon prior leave of the MDL Court, obtained on noticed motion for good cause shown, including why the deposition is non-duplicative and cannot be obtained in coordinated discovery in the MDL at the appropriate time, and subject to appropriate procedures such that any such deposition does not need to be repeated in other state court actions or in the MDL.

       iii.    It shall be presumed that the substantive terms of the protective order, ESI order, preservation orders, and any other orders governing discovery in the MDL should govern discovery in related state court actions. Should counsel appearing in the MDL seek entry of a discovery order in a state court action that is substantively different from the corresponding MDL discovery order, counsel shall first file a noticed motion for good cause shown in the MDL Court, explaining the justification for any differences contained in such discovery order.

       iv.    It shall be presumed that any legal issue implicating MDL coordinated discovery shall be decided by the MDL Court. Should counsel appearing in the MDL seek to initiate any substantive motion practice with respect to discovery in a state court action—*e.g.*, entry of a motion to compel or entry of a protective order related to a document over which the attorney-client privilege has been asserted—such counsel shall first file a noticed motion for good cause shown in the MDL and establish why such motion should be allowed to proceed in the state court notwithstanding the implications for MDL coordinated discovery.

       In sum, certain counsel prosecuting cases both in this MDL and in state court already have demonstrated that they are prepared to circumvent this Court's authority over the more than 1,100 plaintiffs before it by exploiting single plaintiff actions in disparate state courts. Under such circumstances, Defendants believe that entry of an appropriate, voluntary coordination order available to state courts is essential. Defendants also believe that there is more than sufficient basis for the gatekeeping order to be entered now but, if plaintiffs persist in the conduct, Defendants formally will move for entry of the gatekeeping order governing the conduct of MDL counsel as the only way to preserve the central purpose of this MDL and permit orderly and effective pretrial proceedings to move forward.

Respectfully submitted,

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.

*Counsel for Defendant General Motors LLC*

cc:   Steve W. Berman (Lead Counsel for Plaintiffs)
      Elizabeth Joan Cabraser (Lead Counsel for Plaintiffs)

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
September 12, 2014
Page 8


      Robert C. Hilliard (Lead Counsel for Plaintiffs)
      Mark E. Howard (counsel for AutoFair Chevrolet, LLC)
      Michele R. Sowers (counsel for Continental Automotive Systems, Inc.)
      Eugene A. Schoon (counsel for Delphi Automotive PLC and Delphi Automotive
      Systems, LLC)
      James R. Figliulo (counsel for Don McCue Chevrolet, Inc.)

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to All Actions*

-----------------------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

[PROPOSED] ORDER NO. __

JESSE M. FURMAN, United States District Judge:

**[Joint Coordination Order]**

WHEREAS, a federal proceeding captioned *In re General Motors LLC Ignition Switch Litigation*, MDL Docket No. 2543 (the "MDL Proceeding"), is pending before the Hon. Jesse M. Furman in the United States District Court for the Southern District of New York (the "MDL Court");

WHEREAS, several other actions involving the same subject matter as the MDL Proceeding have been filed in the courts of a number of states and in federal courts (the "Related Actions");[1]

WHEREAS, the MDL Proceeding and the Related Actions involve many of the same factual allegations and circumstances and many of the same parties, and discovery in those various proceedings will substantially overlap;

WHEREAS, in order to achieve the full benefits of this MDL proceeding, the MDL Court has and will continue to encourage coordination with courts presiding over related cases, to the extent that those courts so desire, up to and including issuance of any joint orders that might allow full cooperation as between and among the courts and the parties. As the MDL Court indicated at the initial case management conference, and has been reiterated thereafter, the MDL Court intends to work actively to reach out to any court that is interested in coordinating discovery activities. The MDL Court expects counsel for parties in the MDL

---

[1]    "Related Actions" shall not include shareholder derivative suits and securities class actions.

proceeding to help ensure that such coordination is achieved wherever it is practicable and desired by a given court or courts;

WHEREAS, coordination of pretrial proceedings in the MDL Proceeding and the Related Actions will likely prevent duplication of discovery and undue burden on courts, parties, and nonparties in responding to discovery requests, save substantial expense by the parties and nonparties, and produce substantial savings in judicial resources;

WHEREAS, each Court adopting this Order (collectively, the "Courts") finds that coordination of discovery and pretrial scheduling in the MDL Proceeding and the Related Actions will further the just and efficient disposition of each proceeding and believe that the circumstances presented by these proceedings warrant the adoption of certain procedures to manage these litigations;

WHEREAS, the Courts and the parties wish and anticipate that other courts in which Related Actions are now pending may join this Joint Coordination Order (this "Order");

WHEREAS, a Related Action in which this Order has been entered by the Court in which the action is pending is referred to herein as a "Coordinated Action" or, collectively as the "Coordinated Actions"; and

WHEREAS, each Court entering this Order is mindful of the jurisdiction of each of the other Courts in which other Coordinated Actions are pending and does not wish to interfere with the jurisdiction or discretion of those Courts.

NOW, THEREFORE, IT IS ORDERED that the parties are to work together to coordinate discovery to the maximum extent feasible in order to avoid duplication of effort and to promote the efficient and speedy resolution of the MDL Proceeding and the Coordinated Actions and, to that end, the following procedures for discovery and pretrial proceedings shall be adopted:

2

### A.   Discovery and Pretrial Scheduling

1.      All discovery and pretrial scheduling in the Coordinated Actions will be coordinated to the fullest extent possible with the discovery and pretrial scheduling in the MDL Proceeding. The MDL Proceeding shall be used as the lead case for discovery and pretrial scheduling in the Coordinated Actions.

2.      Lead Counsel shall create a single electronic document depository for use of all MDL counsel as well as counsel in Coordinated Actions, subject to provision by the MDL Court of an order for the equitable spreading of depository costs among users.

3.      New GM shall apprise the MDL Court, Lead Counsel, Plaintiff Liaison Counsel and Federal-State Liaison Counsel every two weeks of matters of significance (including hearings, schedules, deadlines, and trial dates) in Related Actions to enable the Court and the parties to effectuate appropriate coordination, including discovery coordination, with these cases.

4.      Plaintiffs in the Coordinated Actions and their counsel shall be entitled to participate in discovery in the MDL Proceeding as set forth in this Order and in accordance with the terms of the MDL Order No. 10 Protecting Confidentiality and Privileged Materials (ECF No. 294), the MDL Order No. 11 Regarding Production of Documents and Electronic Data ("ESI Order") (ECF No. 295), and any subsequent order entered in the MDL Proceeding governing the conduct of discovery (collectively, the "MDL Discovery Orders"), copies of which are attached hereto as Exhibit A or shall be made available pursuant to the terms of this Order.  Each Court that adopts this Joint Coordination Order thereby also adopts the MDL Discovery Orders which, except as amended by separate order of the Coordinated Action Court, shall govern the use and dissemination of all documents and information produced in coordinated discovery conducted in accordance with the terms of this Order. Discovery in the MDL Proceeding will be conducted in accordance with the Federal Rules of

3

Civil Procedure and the Local Rules and Orders of the MDL Court, including the MDL

Discovery Orders, all as interpreted by the MDL Court. Parties in the MDL Proceeding and

their counsel may also participate in discovery in any Coordinated Action as set forth in this

Order.  Counsel in any Coordinated Action may, at the appropriate time and following the

appropriate Orders, submit time and expenses expended for the common benefit pursuant to

the MDL Order (ECF No. __).[2]  Specifically, and not by way of limitation, any lawyer

seeking recovery of time or expenses as common benefit work in this MDL for time or

expenses spent on work in a Related Case must contact the MDL Lead Counsel before

conducting such work or incurring such expenses, and must comply with the authorization

and reporting requirements set forth in this Order.  Should there be an assessment in a

Coordinated Action, any attorney will be subject to only one assessment order.  MDL Lead

Counsel should work with counsel in a Coordinated Action to resolve any issue related to

multiple jurisdictions' assessments.

    5.    The parties in a Coordinated Action may take discovery (whether directed to

the merits or class certification) in a Coordinated Action only upon leave of the Court in

which the Coordinated Action is pending. Such leave shall be obtained on noticed motion for

good cause shown, including why the discovery sought could not have been obtained in

coordinated discovery in the MDL Proceeding.

    **B.    Use of Discovery Obtained in the MDL Proceeding**

    6.    Counsel representing the plaintiff or plaintiffs in a Coordinated Action will be

entitled to receive all discovery taken in the MDL Proceeding, provided that such discovery

responses and documents shall be used or disseminated only in accordance with the terms of

the MDL Discovery Orders. Counsel representing a party in the MDL Proceeding shall be

---

[2]    Nothing herein is intended to presume that any judgment of liability shall be entered now or in the
future against any defendant or that any common benefit fund shall ever be created.  Defendants expressly
reserve all rights in this regard.

entitled to receive all discovery taken in any Coordinated Action; any such discovery responses and documents shall be used or disseminated only in accordance with the terms of the MDL Discovery Orders.

7.    Requests for documents, interrogatories, depositions on written questions, and requests for admission propounded in the MDL Proceeding will be deemed to have been propounded and served in the Coordinated Actions. Requests for documents, interrogatories, depositions on written questions, and requests for admission propounded in the Coordinated Actions will be deemed to have been propounded and served in the MDL Proceeding.  The parties' responses to such requests for documents, interrogatories, depositions on written questions, and requests for admission will be deemed to be made in the MDL Proceeding and in the Coordinated Actions and may be used in the MDL Proceeding and in the Coordinated Actions, subject to and in accordance with the terms of the MDL Discovery Orders, as if they had been taken under the applicable civil discovery rules of the respective jurisdictions.

8.    Depositions taken in the MDL Proceeding may be used in the Coordinated Actions, subject to and in accordance with the terms of the MDL Discovery Orders, as if they had been taken under the applicable civil discovery rules of the respective jurisdictions.  Depositions taken in a Coordinated Action may be used in the MDL Proceeding, subject to and in accordance with the terms of the MDL Discovery Orders, as if they had been taken under the applicable discovery rules of the Southern District of New York.

### C.    Service and Coordination Among Counsel

9.    The MDL Court has previously appointed Lead Counsel for Plaintiffs, Plaintiff Liaison Counsel, and Federal/State Liaison Counsel in the MDL Proceeding (those counsel are identified in the attached Exhibit B). Defendants shall file with the MDL Court

5

and serve upon Lead Plaintiff Counsel, Plaintiff Liaison Counsel, and Federal/State Liaison Counsel in the MDL Proceeding copies of all Complaints, Coordination Orders, Protective Orders, ESI Orders or other Discovery Orders, and Orders designating plaintiffs' liaison counsel that are entered in the Coordinated Actions on the first of every month. Service may be made by electronic means.[3]

10.     Any Court in a Coordinated Action wishing to grant the parties before it access to coordinated discovery may do so by joining this Order pursuant to paragraph 26 and appointing one Plaintiffs' Liaison Counsel or designating one plaintiffs' counsel from the Coordinated Action to work with Plaintiff Liaison Counsel and Federal/State Liaison Counsel to facilitate coordination of discovery in the Coordinated Action and discovery in the MDL Proceeding.

11.     Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding shall promptly serve upon Plaintiffs' Liaison Counsel (if any) or designated plaintiffs' counsel in each Coordinated Action all discovery requests (including requests for documents, interrogatories, depositions on written questions, requests for admission, and subpoenas duces tecum), responses and objections to discovery requests; deposition notices; correspondence or other papers modifying discovery requests or schedules; and discovery motions (i.e., motions under Rules 26 through 37 or Rule 45 of the Federal Rules of Civil Procedure) or requests for hearing on discovery disputes regarding coordinated discovery matters that are served upon the parties in the MDL Proceeding. Service may be made by electronic means upon Plaintiffs' Liaison Counsel in each Coordinated Action. Deposition notices shall be served by facsimile or other electronic means. Plaintiffs' Liaison Counsel in

---

[3]     All forms of service made under this Joint Coordination Order shall be deemed mailed in accordance with Rule 6 of the Federal Rules of Civil Procedure.

the Coordinated Actions shall be responsible for distributing such documents to other counsel for plaintiffs in their respective actions.

12.    Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding shall maintain a log of all Orders entered in the MDL Proceeding and all discovery requests and responses sent and received in the MDL Proceeding and shall transmit a copy of said log by facsimile or other electronic means to Plaintiffs' Liaison Counsel in each Coordinated Action by the seventh (7th) day of each month, or on a more frequent basis upon written request. Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding will promptly transmit a copy of each Order entered in the MDL Proceeding to Plaintiffs' Liaison Counsel in the Coordinated Actions.

13.    In order to facilitate the dissemination of information and Orders in the MDL, the Court—or the parties if the Court so prefers—will create and maintain a website devoted solely to this MDL.[4]    The site will contain sections through which the parties, counsel, and the public may access Court Orders, Court opinions, Court minutes, Court calendars, frequently asked questions, court transcripts, the MDL docket, current developments, information about leadership in the MDL, and appropriate contact information.

14.    To encourage communication between this Court and any Coordinated Action Court, one section of the website will be accessible only to judges in any Coordinated Action and Judge Furman.    Additionally, each status conference will be open to the judge in any Coordinated Action, who will be provided a separate call-in number from the general public to allow Coordination Action judges to participate in the status conference.    Plaintiffs' Federal-State Liaison Counsel will notify all Coordinated Action

---

[4] *See, e.g.,* Website for *In re Actos (Pioglitazone) Prods. Liab. Litig.,* MDL No. 2299, *available at* http://www.lawd.uscourts.gov/welcome-web-site-mdl-no-2299; Website for *In re Oil Spill by the Oil Rig "Deepwater Horizon",* MDL 2179, *available at* http://www.laed.uscourts.gov/OilSpill/OilSpill.htm.

Courts of each status conference and provide the appropriate call-in number.  Plaintiffs'

Federal-State Liaison Counsel will also promptly transmit a copy of each Order entered in

the MDL Proceeding to the judges in all Coordinated Actions.

### D.    Participation in Depositions in the MDL Proceeding

15.    All counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions. Counsel may agree to use videoconferencing or other technology to conduct depositions remotely, in order to reduce the time and cost burden of travel for the deponent and counsel.

16.    Each deposition taken in the MDL Proceeding: (i) will be conducted on reasonable written notice, to be served, electronically or otherwise, on Plaintiffs' Liaison Counsel in each Coordinated Action in accordance with the provisions of paragraph 9 above; (ii) shall be subject to the time limits prescribed by Rule 30(d)(1) of the Federal Rules of Civil Procedure; and (iii) will be conducted pursuant to the Federal Rules of Civil Procedure and under the terms of the MDL Discovery Orders, all as interpreted by the MDL Court. Detailed procedures for the conduct of deposition shall be entered by separate MDL Order.

17.    At least one Co-Lead Counsel for the MDL Plaintiffs, or their designee, and MDL Plaintiffs' Federal/State Liaison Counsel or Plaintiffs' Liaison Counsel, shall confer with Plaintiffs' Liaison Counsel in the Coordinated Actions, or their designees, in advance of each deposition taken in the MDL Proceeding, taking such steps to cooperate on selecting a mutually convenient date, and taking such steps as may be necessary to avoid multiple interrogators and duplicative questions, and to avoid to the extent practicable additional depositions in the Coordinated Actions.

18.    Counsel representing the plaintiff or plaintiffs in a Coordinated Action shall be permitted to attend any deposition scheduled in the MDL Proceeding. One Plaintiffs' Counsel from each Coordinated Action shall be permitted a reasonable amount of time to question the deponent in those depositions following questioning by the Co-Lead Counsel for the MDL Plaintiffs, or their designee, and shall be permitted to make objections during

9

examination by other counsel, in accordance with the Federal Rules of Civil Procedure, the
Local Rules of the Southern District of New York, and the Orders of the MDL Court entered
in the MDL Proceeding, and in accordance with the terms and procedures set forth in
subparts (a) through (c) below providing that:

(a)     the court in which the Coordinated Action is pending has adopted the MDL
        Discovery Orders or has entered a Protective Order, ESI Order or other
        Discovery Order substantially similar to the MDL Discovery Orders;

(b)     Plaintiffs' Counsel from the Coordinated Action shall make best efforts to ask
        questions that are nonduplicative of questions already asked at the deposition;

(c)     participation of Plaintiffs' Counsel from the Coordinated Actions shall be
        arranged so as not to delay discovery or other proceedings as scheduled in the
        MDL Proceeding; and

        Counsel representing each Defendant named in the MDL shall be permitted to
        question the deponent.

19.    Counsel representing any party to any Coordinated Action may obtain from
the MDL repository or directly from the court reporter, at its own expense, a transcript of
any deposition taken in the MDL Proceeding or in any other Coordinated Action. The
transcript of any deposition taken in the MDL Proceeding shall not be used or disseminated
except in accordance with the terms of this Order and the MDL Discovery Orders.

20.    Depositions in addition to those taken in the MDL Proceeding (whether
directed to the merits or class certification) may be taken in a Coordinated Action only upon
leave of the court in which the Coordinated Action is pending, obtained on noticed motion for
good cause shown, including why the discovery sought could not have been obtained in
coordinated discovery in the MDL Proceeding. The transcript of any such deposition shall not
be used or disseminated except in accordance with the terms of the MDL Discovery Orders.

10

21.     If depositions in addition to those taken in the MDL Proceeding are permitted in a Coordinated Action, the noticing party shall provide reasonable written notice, by electronic means, to Plaintiff Liaison Counsel and Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding and all Liaison Counsel in the other Coordinated Actions. Counsel representing parties in the MDL Proceeding and counsel representing plaintiffs in each other Coordinated Action shall be entitled to attend the deposition of any witness whose deposition is taken in a Coordinated Action and, following questioning by Plaintiffs' Counsel in the Coordinated Action, one counsel representing the MDL Plaintiffs, one counsel representing each MDL Defendant and one Plaintiffs' Counsel from each Coordinated Action shall each be permitted a reasonable amount of time to ask nonduplicative additional questions and shall be permitted to make objections during examination by other counsel.

22.     If the MDL Plaintiffs, through Plaintiff Liaison Counsel or Plaintiffs' Federal/State Liaison Counsel, or the MDL Defendants have been provided with reasonable notice of and opportunity to participate in a deposition taken in any Coordinated Action, no MDL Plaintiff or MDL Defendant shall be permitted to re-depose that deponent without first obtaining an Order of the MDL Court upon a showing of good cause therefor. Any party or witness receiving notice of a deposition which it contends is not permitted by the terms of this Order shall have seven (7) days from receipt of the notice within which to serve the noticing party with a written objection to the deposition. In the event of such an objection, the deposition shall not go forward until the noticing party applies for and receives an order from the MDL Court, if the notice was issued in the MDL proceeding, or in the Coordinated Action Court, if the notice was issued in a Coordinate Action, granting leave to take the deposition.

23.     If the MDL Plaintiffs or MDL Defendants and their respective Counsel in any Coordinated Action have received notice of a deposition in either the MDL Proceeding or any

11

Coordinated Action, such deposition may be used in the MDL Proceeding and each Coordinated Action for all purposes permitted under the jurisdiction's applicable rules without regard to whether any MDL Plaintiffs' Counsel or any MDL Defendants' Counsel or any counsel representing plaintiffs or defendants in any Coordinated Action attend or cross-examine at the noticed deposition.

### E.    Participation in Written Discovery in the MDL Proceeding

24.    At least one Co-Lead Counsel for the MDL Plaintiffs, or their designee, and Plaintiffs' Federal/State Liaison Counsel, shall confer with Plaintiffs' Liaison Counsel in the Coordinated Actions, or their designees, in advance of the service of requests for written discovery in the MDL Proceeding, taking such steps as may be necessary to avoid additional interrogatories, depositions on written questions, requests for admission and requests for documents in the Coordinated Actions.

25.    Plaintiffs' Liaison Counsel in any Coordinated Action may submit requests for documents, interrogatories, depositions on written questions and requests for admission to MDL Co-Lead Counsel for Plaintiffs and Plaintiffs' Federal/State Liaison Counsel for inclusion in the requests for documents, interrogatories, depositions on written questions, and requests for admission to be propounded in the MDL Proceeding. Such requests shall be included in the requests propounded in the MDL Proceeding, provided that:

(a)    the requests for documents, interrogatories, depositions on written questions and/or requests for admission are submitted to MDL Plaintiff Liaison Counsel and Plaintiffs' Federal/State Liaison Counsel within ten (10) calendar days after MDL Plaintiff Liaison Counsel have notified Plaintiffs' Liaison Counsel in the Coordinated Actions of MDL Plaintiffs' intent to serve such discovery; and

(b)    the requests are non-duplicative of requests proposed by MDL Plaintiffs' Co-

Lead Counsel.

The number of interrogatories permitted in the MDL Proceeding will be subject to such

limitations as are imposed by Rule or Order of the MDL Court.

26.    Requests for documents, interrogatories, depositions on written questions and

requests for admission in addition to those served in the MDL Proceeding (whether directed

to the merits or class certification) may be propounded in a Coordinated Action only upon

leave of the court in which the Coordinated Action is pending, obtained on noticed motion for

good cause shown, including why the discovery sought could not have been obtained in

coordinated discovery in the MDL Proceeding. A motion for leave to serve additional

document requests, interrogatories, depositions on written questions and/or requests for

admission which were proposed by Plaintiffs' Liaison Counsel in a Coordinated Action in

accordance with paragraph 20 and which were not included in the discovery requests served

by Lead Counsel in the MDL Proceeding shall be filed in the court on notice within twenty-

one (21) calendar days of service of the Lead Counsel's discovery request from which those

requests for documents, interrogatories, depositions on written questions and/or requests for

admission were omitted.

27.    All parties to the MDL Proceeding shall be entitled to receive copies of

responses to interrogatories, responses to depositions on written questions, responses to

requests for admission, and documents produced in any Coordinated Action. Any party or

counsel otherwise entitled under this order to receive copies of discovery from other parties

or counsel shall reimburse the producing party for actual out-of pocket costs incurred in

connection with the copying and shipping of such discovery (including but not limited to

document productions) and shall use such materials only in accordance with the terms of the

MDL Discovery Orders.

13

28.    Any counsel representing a plaintiff in a Coordinated Action shall, in accordance with any Orders of the MDL Court entered in the MDL Proceeding and subject to the terms of the MDL Discovery Orders, have access to any document depository that may be established by the parties to the MDL Proceeding.

**F.    Discovery Dispute Resolution**

29.    Prior to any party in the MDL filing a discovery motion, the parties must first attempt to resolve the dispute in good faith and in accordance with the procedures and requirements outlined in the Court's Individual Rules and Practices in Civil Cases and the Court's standard Case Management Plan and Scheduling Order, both of which are available at http://www.nysd.uscourts.gov/judge/Furman.

30.    In the event that the parties are not able to resolve any disputes that may arise in the coordinated pretrial discovery conducted in the MDL Proceeding, including disputes as to the interpretation of the MDL Discovery Orders, such disputes will be presented to the MDL Court. Resolution of such disputes shall be pursuant to the applicable federal or state law, as required, and such resolution may be sought by any party permitted by this Order to participate in the discovery in question. In the event that additional discovery is sought in a Coordinated Action and the parties to that action are not able to resolve any discovery disputes that may arise in connection with that additional discovery, such disputes will be presented to the Court in which that Coordinated Action is pending.

31.    Nothing contained herein shall constitute or be deemed to constitute a waiver of any objection of any defendant or plaintiff to the admissibility at trial, of any documents, deposition testimony or exhibits, or written discovery responses provided or obtained in accordance with this Order, whether on grounds of relevance, materiality or any other basis, and all such objections are specifically preserved. The admissibility into evidence in any

Coordinated Action of any material provided or obtained in accordance with this Order shall be determined by the Court in which such action is pending.

**G.    Implementing This Order**

32.    Any court before which a Coordinated Action is pending may join this Order, thereby authorizing the parties to that Coordinated Action to participate in coordinated discovery as and to the extent authorized in this Order.

33.    Each Court that joins this Order shall retain jurisdiction to modify, rescind and/or enforce the terms of this Order.

SO ORDERED.

Date:    August __, 2014
         New York, New York

_____
JESSE M. FURMAN
United States District Judge

Attachments:

Exhibit A:    MDL Discovery Orders
Exhibit B:    MDL Co-Lead Counsel, Plaintiff Liaison Counsel, and Federal/State
              Liaison Counsel

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

09/10/2014

----------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*

14-MD-2543 (JMF)
14-MC-2543 (JMF)

**ORDER NO. 10**
----------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

### [Protecting Confidentiality and Privileged Materials]

Defendants and Lead Counsel for the Multidistrict Litigation ("MDL") 2543 Plaintiffs

having consented thereto, and for good cause shown,

WHEREAS, the Court has advised all Parties that there is a presumption in favor of public

access, particularly in a case of this nature, and that unless the Court determines — based on a

written application — that there is a reason justifying something be filed in redacted form or under

seal, any filings are public and publicly available to the press and the public alike; and

WHEREAS, it is the Court's sole province to authorize a pleading and/or document to be

filed under seal; the Court grants this protective order recognizing that Defendants intend to

include "blanket confidential designations" so as to immediately provide bulk production of

millions of pages of documents.    Plaintiffs will be allowed to challenge any specific

document designation as discovery proceeds within the framework of this Order;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the documents and other

information, including the substance and content thereof, designated by any party as confidential

and proprietary, and produced by that party in response to any formal or informal request for

discovery in any of the cases consolidated in the above-captioned MDL 2543, shall be subject to

the terms of this Consent Protective Order ("Protective Order" or "Order"), as set forth below:

The purpose of this Order is to expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, and protect material to be kept confidential or privileged, pursuant to the Court's inherent authority, its authority under Federal Rule of Civil Procedure 26(c) and Federal Rule of Evidence 502(d), and the judicial opinions interpreting such Rules.

## I.   CONFIDENTIALITY.

1.   *Information.*  "Information" includes the contents of documents and other data, any data and information associated with documents (whether physical or in electronic format), oral and written testimony, answers to interrogatories, admissions, and data and information derived from objects other than documents, produced or disclosed in these proceedings by any party to the above-captioned litigation or by any third party (the "Producing Party") to any other party or parties, subject to the provisions in Paragraphs 5 and 6 of this Order (the "Receiving Party").

2.   *Confidentiality Designations.*  This Order covers Information that the Producing Party designates "Confidential" or "Highly Confidential."  Information may be designated as Confidential when (i) the Producing Party reasonably believes that the Information constitutes, reflects, discloses or contains Information subject to protection under Federal Rule of Civil Procedure 26(c) or other confidential, non-public information, or (ii) the Producing Party reasonably believes that the documents or information includes material protected by federal, state, or foreign data protection laws or other privacy obligations, including (but not limited to) consumer and third-party names, such as the first and last names of persons involved in an accident or of other individuals not directly involved in an accident but included in documents related to an accident; Social Security Numbers; health information relating to the past, present or future physical or mental health or condition of an individual; the provision of health care to an

2

individual, or the past, present or future payment for the provision of health care to an individual; driver's license or other identification numbers; personal financial information such as tax information, bank account numbers, and credit card numbers; insurance claim numbers; insurance policy numbers; VIN numbers; or the personal email addresses or other contact information of GM board members and employees ("Personal Information").   Information may be designated as Highly Confidential when: (i) the Producing Party reasonably believes that the documents or information contain competitively sensitive information regarding future product designs or strategies, commercial or financial information, or other sensitive information, the disclosure of which to third party competitors may result in commercial harm; or (ii) the Producing Party reasonably believes that the documents or information includes Personal Information. Subject to provisions of Paragraph 3(b), the parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents that merit Confidential or Highly Confidential treatments are so designated.

 3. *Procedure for Confidentiality Designations.*

 (a) *Designation.* To designate Information as Confidential or Highly Confidential, a Producing Party must mark it or identify it on the record as such.  Either designation may be withdrawn by the Producing Party.

 (b) *Bulk Designation.* To expedite production of potentially voluminous materials — such as the productions referenced in Paragraph 11(d) — a Producing Party may, but is not required to, produce materials without a detailed confidentiality review, subject to the "clawback" procedures in Paragraphs 3(f) and 10 of this Order or as otherwise agreed to.  In so doing, the Producing Party may designate those collections of documents that by their nature contain "Confidential" or "Highly Confidential"

3

Information with the appropriate designation notwithstanding that some of the documents within the collection may not qualify for such designation. The materials that may be so designated shall be limited to the types or categories of documents that the Producing Party reasonably believes may contain Highly Confidential Information, as defined in Paragraph 2 of this Order. Notwithstanding the foregoing, a Receiving Party may at any time challenge the designation of one or more particular documents as Confidential or Highly Confidential on the grounds that it does not or they do not qualify for such protection. If the Producing Party agrees, it must promptly notify all Receiving Parties that it is withdrawing or changing the designation.

(c)  *Marking*.  All or any part of a document, tangible object, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the face of the document and each page so designated. With respect to tangible items or electronically stored Information produced in native format, the appropriate legend shall be marked on the face of the tangible item or media containing electronically stored Information, if practicable, or by written notice to the Receiving Party at the time of disclosure, production or filing that such tangible item or media is Confidential or Highly Confidential or contains such Information.

(d)  *Redaction*.  Any Producing Party may redact from the documents and things it produces any Highly Confidential Information, as defined in Paragraph 2, or any matter that the Producing Party claims is subject to attorney-client privilege, work-product protection, a legal prohibition against disclosure, or any other privilege or immunity. The

4

Producing Party shall mark each thing where matter has been redacted with a legend stating "REDACTED," "CBI," "PRIVACY," "PII," "NON-RESPONSIVE," "PRIVILEGED," or a comparable notice. Where a document consists of more than one page, each page on which Information has been redacted shall be so marked. The Producing Party shall preserve an unredacted version of each such document. The process for challenging the designation of redactions shall be the same as the process for challenging the designation of Confidential Material and Highly Confidential Material set forth in Paragraph 6. If counsel for the Producing Party agrees that Information initially redacted shall not be subject to redaction or shall receive alternative treatment, or if the Court orders that those materials shall not be subject to redaction or shall receive alternative treatment, and the Information is subsequently produced in unredacted form, then that unredacted Information shall bear the legend "Highly Confidential" and shall continue to receive the protections and treatment afforded to documents bearing the Highly Confidential designation.

(e)    *Timing.* Subject to the provisions of Paragraphs 3(f) and 10, documents and other objects must be designated as Confidential or Highly Confidential, and redactions must be applied to Highly Confidential Information, before disclosure. In the event that a Producing Party designates some or all of a witness's deposition testimony as Confidential or Highly Confidential, the specific page and line designations over which confidentiality is claimed must be provided to the Receiving Party within thirty (30) days of receipt of the final transcript, provided, however, that the Receiving Party will consider reasonable requests for an extension of the deadline. Deposition testimony shall be treated as Highly Confidential pending the deadline.

(f)     *Errors*. Disclosure of Confidential or Highly Confidential Information does not waive the confidential status of such Information.  In the event that Confidential or Highly Confidential Information is disclosed without a marking or designation of it as such, the Producing Party may thereafter assert a claim or designation of confidentiality, and promptly provide replacement media.  Thereafter, the Receiving Party must immediately return the original Confidential or Highly Confidential Information and all copies of the same to the Producing Party and make no use of such Information.

4.     *Challenges to Confidentiality Designations*.  Any party may object to the propriety of the designation of specific material as Confidential or Highly Confidential by serving a written objection upon the Producing Party's counsel. The Producing Party or its counsel shall thereafter, within ten calendar days, respond to such objection in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation.  If the objecting party and the Producing Party are subsequently unable to agree upon the terms and conditions of disclosure for the material(s) in issue, the objecting party may move the Court for an order withdrawing the designation as to the specific designation on which the Parties could not agree. Counsel may agree to a reasonable extension of the ten-day period, if necessary.  On such a motion, the Producing Party shall have the burden of proving that "good cause" exists for the designation at issue and that the material is entitled to protection as Confidential or Highly Confidential Information under applicable law.  In the event a motion is filed by the objecting party, the Information at issue shall continue to be treated in the manner as designated by the Producing Party until the Court orders otherwise.  A Receiving Party does not waive its right to challenge a Confidential or Highly Confidential designation by electing not to raise a challenge promptly after the original designation is disclosed and may challenge a designation at such time as the Receiving Party deems

appropriate. Each party shall bear its own fees and costs related to any challenges of confidentiality designations under this Protective Order.

     5.    *Access to Confidential Information.*  The Receiving Party may share Confidential Information with only the following persons and entities related to each of the cases consolidated in the above-captioned MDL 2543:

     (a)    The Court and its staff;

     (b)    Parties to any of the actions consolidated in the above-captioned MDL 2543;

     (c)    Parties' counsel;

     (d)    Counsel (and their staff) for parties to any of the federal or state court actions alleging injuries related to the ignition switch and/or other parts in vehicles recalled by General Motors LLC that are the subject of MDL 2543 ("Related Litigation"), provided that (i) the proposed recipient agrees to be bound by this Order and signs the certificate attached hereto as Appendix A; (ii) the proposed recipient agrees to be bound by any discovery-related or protective Orders, including Federal Rule of Evidence 502(d) Orders, that may be entered in MDL 2543; (iii) counsel for the party that supplies the Confidential Information to such recipient maintains copies of the certificates and a log identifying each such recipient; and (iv) upon a showing by a party that Confidential Information has been used in violation of this Order, counsel shall provide copies of the log and certificate to the Court for *in camera* review;

     (e)    Court reporters (including audio and video), interpreters, translators, copy services, graphic support services, document imaging services, and database or coding services retained by counsel, provided that these individuals or an appropriate company

7

official with authority to do so on behalf of the company executes a certification attached

hereto as Appendix A;

      (f)      Special masters;

      (g)      Mediators;

      (h)      The direct staff of those identified in Paragraphs 5(c), 5(f), and 5(g);

      (i)      Deponents and trial witnesses during a deposition or trial who have a

reasonable need to see the Confidential Information in order to provide testimony, provided

such witness executes a certification in the form attached hereto as Appendix A;

      (j)      Any expert or consultant, and his, her or its staff, hired by a party for

litigation purposes who agrees to be bound by this Order and signs the certificate attached

hereto as Appendix A; and

      (k)      Any other person to whom the Producing Party, in writing, authorizes

disclosure.

      6.    *Access to Highly Confidential Information.*  The Receiving Party may share Highly

Confidential Information with only the following persons and entities related to each of the cases

consolidated in the above-captioned MDL 2543:

      (a)      The Court and its staff;

      (b)      Court reporters (including audio and video), interpreters, translators, copy

services, graphic support services, document imaging services, and database or coding

services retained by counsel, provided that these individuals or an appropriate company

official with authority to do so on behalf of the company executes a certification attached

hereto as Appendix A;

8

Case 1:14-md-02543-JMF Document 294   Filed 09/12/14   Page 26 of 49

(c)    Mediators and their staff, provided that such persons execute a certification attached hereto as Appendix A;

(d)    Co-lead counsel, executive committee members, and liaison counsel in the above-captioned MDL 2543, as well as counsel for parties in Related Litigation, the Receiving Party's external counsel, and a Receiving Party's internal counsel whose primary responsibilities include overseeing litigation in the above-captioned MDL 2543, and their direct staff, provided that (i) the proposed recipient agrees to be bound by this Order and signs the certificate attached hereto as Appendix A; (ii) the proposed recipient agrees to be bound by any discovery-related or protective Orders, including Federal Rule of Evidence 502(d) Orders, that may be entered in MDL 2543; (iii) counsel for the party that supplies the Highly Confidential Information to such recipient maintains copies of the certificates and a log identifying each such recipient; and (iv) upon a showing by a party that Highly Confidential Information has been used in violation of this Order, counsel shall provide copies of the log and certificate to the Court for *in camera* review;

(e)    Persons who prepared, received, or reviewed the Highly Confidential Information prior to its production and who execute a certification in the form attached hereto as Appendix A;

(f)    A witness during a hearing, a deposition, or preparation for a deposition who is a current employee of the Party that produced the applicable document(s) or who appears, based upon the document itself or testimony in a deposition, to have specific knowledge of the contents of the documents designated "HIGHLY CONFIDENTIAL," provided such witness executes a certification in the form attached hereto as Appendix A;

9

(g)    Outside experts, consultants, or other agents retained by a party for litigation purposes, provided such expert, consultant, or agent executes a certification in the form attached hereto as Appendix A; and

(h)    Any other person to whom the Producing Party, in writing, authorizes disclosure.

7.    *Use of Confidential and Highly Confidential Information.*

(a)    *Restricted to This Proceeding and Related Litigation.*    Confidential Information and Highly Confidential Information must be used only in this proceeding, or in any Related Litigation, except that nothing in this Protective Order shall be construed as limiting any party from disclosing a potential safety defect to an appropriate government agency.

(b)    *Acknowledgement.*  Subject to the restrictions contained in Paragraphs 5 and 6, the persons identified in Paragraphs 5 and 6 may receive or review Confidential or Highly Confidential Information.  All persons specifically designated in Paragraphs 5 and 6 must execute the certificate attached hereto as Appendix A or affirm on the record that he or she will not disclose Confidential or Highly Confidential Information revealed during a deposition and will keep the transcript confidential.

(c)    *Filings.*  All parties shall make reasonable efforts to avoid requesting the filing of Confidential or Highly Confidential Information under seal by, for example, redacting or otherwise excluding from a submission to the Court any such Information not directly pertinent to the submission.  Where not reasonably possible, any Party wishing to file a document or paper containing Confidential or Highly Confidential Information may request by motion that such Information be filed under seal.

(d)    *Hearings.* In the event that a Receiving Party intends to utilize Confidential or Highly Confidential Information during a pre-trial hearing, such Receiving Party shall provide written notice no less than five days prior to the hearing, to the Producing Party and to the Court, except that shorter notice may be provided if the Receiving Party could not reasonably anticipate the need to use the document at the hearing five days in advance, in which event notice shall be given immediately upon identification of that need. The use of such Confidential or Highly Confidential Information during the pre-trial hearing shall be determined by agreement of the parties or by Order of the Court.

(e)    *Trial.* The use of Confidential or Highly Confidential Information during the trial shall be determined by Order of the Court.

(f)    *Subpoena by Other Courts or Agencies.* If another court or an administrative agency subpoenas or otherwise orders production of Confidential or Highly Confidential Information that any Party or other person has obtained under the terms of this Order, the Party or other person to whom the subpoena or other process is directed must notify the Producing Party in writing within five days of all of the following: (a) the discovery materials that are requested for production in the subpoena; (b) the date by which compliance with the subpoena is requested; (c) the location at which compliance with the subpoena is requested; (d) the identity of the party serving the subpoena; and (e) the case name, jurisdiction and index, docket, complaint, charge, civil action or other identification number or other designation identifying the litigation, administrative proceeding or other proceeding in which the subpoena or other process has been issued. Confidential or Highly Confidential Information shall not be produced prior to the receipt of written notice by the Producing Party and after a reasonable opportunity to object has been offered. Further, the

11

party or person receiving the subpoena or other process will cooperate with the Producing Party in any proceeding related thereto. The Producing Party will bear the burden and all costs of opposing the subpoena on grounds of confidentiality.

8.    *Return of Discovery Materials.*  Within ninety days of the termination of any party from all proceedings in this proceeding, that party, its employees, attorneys, consultants and experts must destroy or return (at the election of the Receiving Party) all originals and/or copies of documents with Confidential Information or Highly Confidential Information, provided however, that the obligation to destroy or return such documents that is imposed on counsel, consultants and experts representing multiple parties shall not occur until the last of their represented parties has been terminated from the foregoing referenced proceedings.  At the written request of the Producing Party, any person or entity having custody or control of recordings, notes, memoranda, summaries or other written materials, and all copies thereof, related to or containing discovery materials produced by the Producing Party (the "Discovery Materials") shall deliver to the Producing Party an affidavit certifying that reasonable efforts have been made to assure that all Discovery Materials (except for privileged communications, work product and court-filed documents as stated above) have been destroyed or delivered to the Producing Party in accordance with the terms of this Protective Order. A Receiving Party is permitted to retain a list of the documents by Bates Number that are produced by a Producing Party under this Protective Order.

## II.    PRIVILEGES.

9.    *No Waiver by Disclosure.*

(a)    This Order is entered, *inter alia*, pursuant to Rule 502(d) of the Federal Rules of Evidence.  If a Producing Party discloses information in connection with the pending litigation that the Producing Party thereafter claims to be privileged or protected

by the attorney-client privilege or attorney work product protection ("Disclosed Protected Information"), the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Protected Information and its subject matter in this proceeding or in any other federal or state proceeding.

(b)    A Producing Party may assert in writing attorney-client privilege or work product protection with respect to Disclosed Protected Information. The Receiving Party must—unless it contests the claim of attorney-client privilege or work product protection in accordance with sub-paragraph (c)—within five business days of receipt of that writing, (i) return or destroy all copies of the Disclosed Protected Information, and (ii) provide a certification of counsel that all of the Disclosed Protected Information has been returned or destroyed. Within five business days of receipt of the notification that the Disclosed Protected Information has been returned or destroyed, the Producing Party must produce a privilege log with respect to the Disclosed Protected Information.

(c)    If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must — within five business days of receipt of the claim of privilege or protection — move the Court for an Order compelling disclosure of the Disclosed Protected Information (a "Disclosure Motion"). The Receiving Party must seek to file the Disclosure Motion under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure, and may not disclose, rely on or refer to any of the Disclosed Protected Information. Pending resolution of the Disclosure Motion, the Receiving Party must sequester the Disclosed Protected Information and not

13

use the Disclosed Protected Information or disclose it to any person other than as required by law.

(d)    The parties may stipulate to extend the time periods set forth in sub-paragraphs (ii) and (iii).

(e)    Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

(f)    The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an *in camera* review of the Disclosed Protected Information.

10.    *Receiving Party's Obligation*. Nothing in this Order shall relieve counsel for any Receiving Party of any existing duty or obligation, whether established by case law, rule of court, regulation or other source, to return, and not to review, any privileged or work product materials without being requested by the Producing Party to do so. Rather, in the event a Receiving Party becomes aware that it is in possession of what appears to be privileged documents or materials, then counsel for the Receiving Party shall immediately: (i) cease any further review or use of that document or material and (ii) notify the Producing Party of the apparent production of Disclosed Protected Information, requesting whether the documents or materials are Disclosed Protected Information. In the event the Producing Party confirms the documents or material are Disclosed Protected Information, the Receiving Party shall (i) promptly return or destroy all copies of the

Disclosed Protected Information in its possession and (ii) take reasonable steps to retrieve all copies of the Disclosed Protected Information distributed to other counsel or non-parties.

11.    *Privilege Log Production.*

(a)    Unless otherwise provided in this Order, any document falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party on a privilege log, which the Producing Party shall produce in an electronic format that allows text searching. For administrative purposes, an e-mail thread contained within a single document need only be recorded once on the Producing Party's privilege log, even if a privilege is asserted over multiple portions of the thread. Redacted documents need not be logged as long as (a) for emails, the bibliographic information (i.e. to, from, cc, bcc, recipients, date and time) is not redacted, and the reason for the redaction is noted on the face of the document; and (b) for non-email documents, the reason for the redaction is noted on the face of the document. Documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

(b)    Privilege log identification is not required for work product created by counsel, or by an agent of counsel other than a party, after January 31, 2014, or for post-January 31, 2014 communications exchanged between or among: (i) the Producing Party and their counsel; (ii) counsel for the Producing Party; (iii) counsel for Plaintiffs; and/or (iv) counsel for Defendants. Privilege log identification is also not required for: (i) communications between a Producing Party and its counsel in proceedings other than MDL 2543; (ii) work product created by a Producing Party's counsel, or by an agent or contractor

15

of counsel other than the Producing Party, in proceedings other than MDL 2543; (iii) internal communications within: (a) a law firm representing a party or (b) a legal department of a party that is a corporation or another organization.

(c)    In order to avoid unnecessary cost, the parties are encouraged to identify categories of privileged information that may be logged categorically rather than document-by-document. (*See* Advisory Committee Note to Fed. R. Civ. P. 26(b)(5) (1993).) The parties shall meet and confer on this issue and raise with the Court either: (i) agreements reached with respect to documents that the parties have agreed to log by category, or (ii) proposals for logging other than document-by-document that have been proposed by one or more Producing Parties, but which have not been agreed to by the Receiving Parties. The parties should keep in mind that the Court's intention is to enable the parties to minimize the cost and resources devoted to privilege logging, while enabling the Court and Receiving Party to assess the assertions of privilege made by the Producing Party.

(d)    The Defendants, where applicable, will post to the MDL 2543 Document Depository privilege logs relating to (i) the productions made in response to the plaintiffs' requests for production in any Related Litigation (as defined in Paragraph 5(d)) at the same time these logs are due in the Related Litigation; (ii) the productions made in response to the National Highway Traffic Safety Administration's pre-August 22, 2014 requests at the same time these logs are due in *Melton v. General Motors LLC*, No. 14A-1197-4 (Ga. Cobb Cnty. St.) ("*Melton*"); and (iii) certain productions made in response to Congressional Committees' pre-August 22, 2014 requests at the same time these logs are due in *Melton*. Thereafter, a Producing Party shall produce privilege logs no later than thirty (30) days

16

after withholding from production documents pursuant to a claim of privilege, but in any event the Defendants are not required to produce supplemental privilege logs any earlier than sixty (60) days after the initial document production deadline in *Melton*.

## III.    MISCELLANEOUS.

12.    *Violations of the Protective Order by a Receiving Party*.  In the event that any person or party violates the terms of this Protective Order, the aggrieved Producing Party should apply to the Court to obtain relief against any such person or party violating or threatening to violate any of the terms of this Protective Order.  In the event that the aggrieved Producing Party seeks injunctive relief, it must direct the petition for such relief to this Court.  To the extent the same document or categories of documents are at issue in both the above-captioned MDL 2543 and in any Related Litigation, the Parties will attempt first to resolve the issue in the MDL and before this Court.  The parties and any other person subject to the terms of this Protective Order agree that this Court shall retain jurisdiction over it and them for the purpose of enforcing this Protective Order.

13.    *Violations of the Protective Order by Disclosure of Personal Information*.  In the event that any person or party violates the terms of this Protective Order by disclosing Confidential Personal Information or Highly Confidential Information relating to an individual third party, as defined in Paragraph 2 of this Order, or in the event that any person or party breaches the terms of the Protective Order in a manner that requires disclosure to a third party under pertinent privacy laws or otherwise, it shall be the responsibility of the breaching party to contact that third party and to comply with any laws or regulations involving breaches of Personal Information.

14.    *Protective Order Remains In Force:*  This Protective Order shall remain in force and effect until modified, superseded, or terminated by order of the Court made upon reasonable

written notice.  Unless otherwise ordered, or agreed upon by the parties, this Protective Order shall survive the termination of this action.  The Court retains jurisdiction even after termination of this action to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the Court may from time to time deem appropriate.

SO ORDERED.

Date:    September 10, 2014
         New York, New York

_____
JESSE M. FURMAN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:
GENERAL MOTORS LLC IGNITION SWITCH                    14-MD-2543 (JMF)
LITIGATION                                            14-MC-2543 (JMF)
*This Document Relates to All Actions*
------------------------------------------------------------------------x

## APPENDIX A TO PROTECTIVE ORDER - AGREEMENT

I hereby certify that I have read the Order Protecting Confidentiality ("Order") entered in

the above-captioned action and that I understand the terms thereof. I agree to be bound by the

Order. If I receive documents or information designated as Confidential or Highly Confidential,

as those terms are defined in the Order, I understand that such information is provided to me

pursuant to the terms and restrictions of the Order. I agree to hold in confidence and not further

disclose or use for any purpose, other than as permitted by the Order, any information disclosed to

me pursuant to the terms of the Order. I further agree to submit to the jurisdiction of this Court for

purposes of enforcing the Order and agree to accept service of process in connection with this

action or any proceedings related to enforcement of the Order by certified letter, return receipt

requested, at my principal residence, in lieu of personal service or other methods of service.

I understand that these certifications are strictly confidential, that counsel for each party

are maintaining the certifications without giving copies to the other side, and that the parties

expressly agreed and the Court ordered that except in the event of a violation of this Order, the

parties will make no attempt to seek copies of the certifications or to determine the identities of

persons signing them. I further understand that if the Court should find that any disclosure is

necessary to investigate a violation of this Order, the disclosure will be limited to outside counsel

only, and outside counsel shall not disclose any information to their clients that could tend to

identify any certification signatory unless and until there is specific evidence that a particular

signatory may have violated the Order, in which case limited disclosure may be made with respect to that signatory.

_____
(signature)

_____
(print name)

Sworn to and subscribed before me this ____day of _____, 2014.

_____
Notary Public

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                                        09/10/2014
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION                14-MD-2543 (JMF)
                                                            14-MC-2543 (JMF)

*This Document Relates to All Actions*                        **ORDER NO. 11**

------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

### [Regarding Production of Documents and Electronic Data]

WHEREAS, Defendants and Lead Counsel for the Plaintiffs have met and conferred on

the procedures and format relating to the production of documents and things, and having agreed

on a format for all such productions, it is SO ORDERED:

1.    **General Format of Production.**    The parties agree to produce documents

(including Hard Copy scanned images) in the electronic format described herein.   Production to

the MDL 2543 Document Depository by a party (the "Producing Party") shall be deemed sufficient

to constitute production to all parties (the "Receiving Party").

2.    **Hard Copy Scanned Images.**    To the extent practicable, Hard Copy scanned

images shall be produced in the manner in which those documents were kept in the ordinary course

of business.   Where Hard Copy scanned images have identification spines, "post-it notes," or any

other labels, the information on the label shall be scanned and produced to the extent practicable.

The parties will utilize reasonable best efforts to ensure that Hard Copy scanned images in a single

production are produced in consecutive Bates number order.

3.    **Images.**   Images will be produced as Single Page Group IV, 300 DPI, when

reasonably practicable, Black and White TIF images named as the Bates number.   Page level Bates

numbers will be branded in the lower right of the image and additional legends applied to the lower

left or lower center (if applicable). If the Receiving Party encounters a document where color is needed to comprehend the content, the Producing Party will re-produce that document in a color format upon reasonable request. Common file types that will likely require color will be produced in native format as noted below. The following formatting will be applied to Microsoft Office documents:

> (a)     Word Documents will be imaged showing Track Changes.

> (b)     Excel files with redactions will be imaged un-hiding any hidden rows and/or columns and/or sheets.

> (c)     PowerPoint files will be imaged in Notes Pages.

4.     **Native Files**.   In addition to TIF images, native files will be provided for PowerPoint, and JPG when corresponding images and any embedded items are not redacted. For files that cannot be imaged (e.g., .wav, .mpeg and .avi) or become unwieldy when converted to TIF (e.g., source code, large diagrams, etc.), the producing party will produce a placeholder (a single-page TIF slipsheet indicating that the native item was produced) along with the file itself in native format. Excel and CSV files will only be provided in native format with a placeholder, unless they have redactions. Redacted documents will be produced in TIF format. The native file will be named as the first Bates number of the respective document. The corresponding load file shall include native file link information for each native file that is produced.

5.     **Agreed File Types Other Than Database Records**.   The Producing Party will process the file types listed in Appendix B, unless processing is disproportionate, or overly broad or unduly burdensome, in which case the parties will meet and confer. The Producing Party will also meet and confer in good faith with the Receiving Party regarding requests to modify the file types listed in Appendix B

2

6.     **Metadata**.  A standard Concordance delimited load file (.DAT), with field header information added as the first line of the file, will be provided with each production.  Documents will be produced with related metadata (to the extent it exists) as described in the attached Appendix A specifications, unless as otherwise provided herein.

7.     **Image Cross Reference**.  A standard Opticon (.OPT) file will be provided with each production that contains document boundaries.

(a)     Format:

<Bates Number>,,<Not Required >,<Relative Path to TIF Image>,<Y if First Page of Document, Else Blank>,,,<If First Page of Document, Total Page Count>

(b)     Example:

```
GM000000001,,\IMAGES\001\GM00000001.TIF,Y,,,,2
GM000000002,,\IMAGES\001\GM00000002.TIF,Y,,,,
GM000000003,,\IMAGES\001\GM00000003.TIF,Y,,,,1
```

8.     **Text**.  Document level text files (.TXT) will be provided for each document produced.  Text files will be named the first Bates number of the respective document.  Extracted text will be provided when it exists for non-redacted documents.  OCR Text will be provided for documents when no extracted text exists or when the document is redacted.

9.     **De-Duplication**.  Data will be de-duplicated across custodians following industry standard de-duplication algorithms.  Additional custodians who had a copy prior to de-duplication will be populated in the ALL_CUSTODIANS field.

10.     **Related Documents**.  Email attachments will be extracted and related back to the respective email via the ATTACH_BEGIN field referenced in Appendix A. Embedded ESI documents (e.g., a spreadsheet embedded within a word processing document) will be extracted and related back to the respective top level parent document (e.g., standalone file, email message,

3

etc.) via the ATTACH_BEGIN field referenced in Appendix A.  Related documents will be produced within a continuous Bates range.

11.    **Confidentiality Designations**.  If a particular document has a confidentiality designation, the designation shall be stamped on the face of all TIF images pertaining to such document, in the lower left-hand corner of the document, or as close thereto as possible while preserving the underlying image.   If the receiving party believes that a confidentiality stamp obscures the content of a document, then the Receiving Party may request that the document be produced with the confidentiality designation in a different position.  No party may attach to any filing or any correspondence addressed to the Court (including the Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any document produced by any Producing Party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the document.

12.    **Specialized Databases**.   The parties agree to meet and confer regarding the production of reasonably accessible enterprise database-application files (e.g., SQL and SAP) and non-standard ESI responsive to the parties' requests to determine the most reasonable form of production based on the specific circumstances.

13.    **Metadata Of Redacted Or Withheld Documents**.  When a document or email is redacted or withheld, all metadata on a family level is excluded from the metadata DAT file.

14.    **Encoding Format**.  Text files, concordance load files, and Opticon image reference files will be provided in UTF-8 encoding.

15.    **Search Terms**.   Other than the document production referenced in the parties' proposed September 4, 2014 status conference letter (ECF No. 272 § 1), a Producing Party will

produce ESI in its possession according to agreed-upon search term criteria (including custodians and date ranges), except in instances where the parties agree that an alternative reasonable search would be more appropriate. Documents identified by search term criteria may be reviewed for privilege, confidentiality, redactions, and relevance or responsiveness prior to production.

16.    **Not Reasonable Accessible Sources**. The parties have taken reasonable steps to identify and/or collect potentially relevant ESI stored on reasonably accessible sources. On or before October 1, 2014, the parties shall provide a description of sources of electronic data which may have potentially relevant information, but which the parties do not intend to search on the basis that such data is alleged to be not reasonably accessible due to burden or cost (in accordance with Rule 26(b)(2)(B)).

17.    **ESI Discovery Dispute Resolution.** Prior to bringing any discovery dispute to the Court, the parties must attempt to resolve the dispute on their own, in good faith, and in accordance with the procedures and requirements outlined in the Court's Individual Rules and Practices in Civil Cases and the Court's standard Case Management Plan and Scheduling Order, both of which are available at http://www.nysd.uscourts.gov/judge/Furman.

18.    **Disclosed Protected Information And/Or Otherwise Privileged Information**. Information produced pursuant to this Order that is subject to a claim of privilege shall be treated in a manner consistent with any order entered in this matter pursuant to Federal Rule of Civil Procedure 502(d).

19.  **Costs of MDL 2543 Production**.  The parties shall share the cost of the MDL 2543

Document Depository.  Each party shall bear its own costs of production to the MDL 2543

Document Depository.


SO ORDERED.

Dated:  September 10, 2014
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

Case 1:14-md-02543-JMF Document 2905 Filed 09/12/14 Page 74 of 49

Appendix A

| Field | Description | Hard Copy | Email | Attachment OR Standalone File |
|---|---|---|---|---|
| BATES_BEGIN | First bates number assigned to the first page of the document. | X | X | X |
| BATES_END | Last bates number assigned to the last page of the document. | X | X | X |
| ATTACH_BEGIN | First bates number assigned to parent. | | X | X |
| ATTACH_END | Last bates number assigned to the last child. | | X | X |
| PAGE_COUNT | Number of images provided for the document | X | X | X |
| CUSTODIAN | Individual/Source assigned to the record at collection time | X | X | X |
| ALL_CUSTODIANS | Additional custodians who had a copy prior to de-duplication. | | X | X |
| DOC_TITLE | File property Title | | | X |
| DOC_SUBJECT | File property Subject | | | X |
| CREATED_DATE | File system create date (YYYYMMDD) [Normalized to UTC] | | | X |
| CREATED_TIME | File system create time (24 HR) [Normalized to UTC] | | | X |
| LAST_MODIFY_DATE | File system last modify date (YYYYMMDD) [Normalized to UTC] | | | X |
| LAST_MODIFY_TIME | File system last modify time (24 HR) [Normalized to UTC] | | | X |
| LAST_SAVED_BY | File property Last Saved By | | | X |
| DOC_TYPE | Category of file (e.g. MSG, ATTACH, USERFILE) | X | X | X |
| FILE_TYPE | Type of file (e.g. Word, Excel) | | | X |
| FILE_NAME | Name of file. | | | X |
| FULL_PATH | Path to file as collected. | | | X |
| FILE_EXT | Extension of the file. | | | X |
| AUTHOR | Email FROM value. | | X | X |
| CC | Email CC value. | | X | X |
| BCC | Email BCC value. | | X | X |
| RECIPIENT | Email TO value. | | X | X |
| DATE_SENT | Date email sent (YYYYMMDD) [Normalized to UTC] | | X | X |
| TIME_SENT | Time email sent (24 HR) [Normalized to UTC] | | X | X |
| DATE_RECIEVED | Date email received (YYYYMMDD) [Normalized to UTC] | | X | X |
| TIME_RECIEVED | Time email received (24 HR) [Normalized to UTC] | | X | X |
| DATE_APPT_START | Date email calendar item start (24 HR) [Normalized to UTC]. | | X | X |
| TIME_APPT_START | Time email calendar item start (24 HR) [Normalized to UTC]. | | X | X |
| EMAIL_FOLDER | Folder where email resided within email container. | | X | X |
| SUBJECT | Email Subject value. | | X | X |
| TEXT_LINK | Relative path to the document level text file (e.g. \TEXT\0001\GM00000001.TXT) | X | X | X |
| NATIVE_LINK | Relative path to native file (if produced), (e.g. \NATIVES\001\GM00000001.XLS) | | X | X |
| MD5_HASH | Hash of native file. | | X | X |

**APPENDIX B**

123
7Z
ACCDB
ADP
ARJ
BAK
BMP
CSV (to be processed as Microsoft Excel)
DBF
DBX
DOC
DOCX
DOT
DOTM
DOTX
DWG
EML
EXE (only for self-extracting archives)
GIF (will only be processed if it is an attachment to a parent email)
GZ
GZIP
HTM
HTML
ID
JPG
MDB
MHT
MHTML
MPP
MSG
NSF
ODT
OTT
OTH
ODM
ODP
ODG
OTP
ODS
OTS
OST
PDF
PNG (will only be processed if it is an attachment to a parent email)
POT
POTX
POTM

PPD
PPS
PPSM
PPSX
PPT
PPTM
PPTX
PS
PSD
PST
PUB
RAR
RM
RTF
SDW
SHTML
SWF
TAR
TC
TIF
TXT
UOP
UOF
UOS
VMDK
VHD
VSD
WAV
WK1
WKS
WK3
WK4
WPC
WPD
XLS
XLW
XLSB
XLSM
XLSX
XLT
XLTM
XLTX
XPS
Z
ZIP

# Exhibit B

W   E   I   T   Z
&
L   U   X   E   N   B   E   R   G

A  P R O F E S S I O N A L  C O R P O R A T I O N
• L A W  O F F I C E S •

700 BROADWAY       •     NEW YORK, NY 10003
TEL. 212-558-5500              FAX  212-344-5461
WWW.WEITZLUX.COM

September 8, 2014

<u>VIA ELECTRONIC FILING</u>
Hon. Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

     RE:  *In Re: General Motors LLC Ignition Switch Litigation*
        14-MD-2543 (JMF)

Dear Judge Furman:

    In accordance with Your Honor's request, below is the contact information for the Co-Lead Counsel and Liaison Counsel, including an alternate contact for each attorney, in the above-referenced case:

**Co-Lead Counsel:**

Steve Berman
Email: steve@hbsslaw.com
Office: 206 268 9320
Cell: 206 295 7975

*Alternate Contact:*
Sean Matt
Email: sean@hbsslaw.com
Office: 206 268 9327
Cell: 206 349 4726

Elizabeth Cabraser:
Email: ecabraser@lchb.com
Office: 415 956 1000 x 2275
Cell: 415 806 2100

200 LAKE DRIVE EAST, SUITE 205 • CHERRY HILL, NJ 08002 • TEL 856-755-1115
1880 CENTURY PARK EAST, SUITE 700 • LOS ANGELES, CA 90067 • TEL 310-247-0921

*Alternate Contact:*
Rachel Geman
Email: rgeman@lchb.com
Office: 212 355 9500 x6608
Cell: 917 691 1683

Bob Hilliard
Email: Bobh@hmglawfirm.com
Office: 361 882 1612
Cell: 361 877 2292

*Alternate Contact:*
Lauren Gomez
Email: Lauren@hmglawfirm.com
Office: 361 882 1612
Cell: 361 960 3146

**Liaison Counsel:**

Robin Greenwald
Email: rgreenwald@weitzlux.com
Office: 212 558 5802
Cell: 917 543 8572

*Alternate Contact:*
James Bilsborrow
Email: jbilsborrow@weitzlux.com
Office: 212 558 5856
Cell: 773 934 4930

Respectfully submitted,

Robin L. Greenwald

# Exhibit 2

# DAILY REPORT

**NOT FOR REPRINT**

Click to Print or Select **'Print'** in your browser menu to print this document.

Page printed from: _Daily Report_

# Federal Judge Returns Melton Case Against GM to Cobb County

Katheryn Hayes Tucker, Daily Report

July 18, 2014

Marietta lawyer Lance Cooper won an important round in his battle with General Motors Friday as a federal judge remanded to Cobb County State Court the case that has formed the foundation of the recall of millions of cars over an ignition switch defect.

U. S. District Court Judge Thomas Thrash Jr. of the Northern District of Georgia issued a ruling Friday returning to Cobb the case filed by Kenneth and Mary Melton over the 2010 death of their daughter, Brooke. Cooper's investigation for their lawsuit discovered that Brooke's 2005 Chevrolet Cobalt had a faulty ignition switch that caused to car to suddenly shut down without warning, which led to her crash.

The Meltons settled their lawsuit in Cobb last year for a confidential amount, which a GM internal investigation report later revealed to be $5 million. But after finding out that GM executives knew about the ignition switch defect for a decade without correcting it, the Meltons announced in May that they would give back the money, claiming the settlement was reached on the basis of false information from the company. The Meltons sued GM again, but the company moved the lawsuit to federal court with the stated intention of combining it with other lawsuits in multi-district litigation that can be stayed under a bankruptcy order.

The return of the Melton case to Cobb for discovery and trial is "the most important thing that has happened so far in the GM litigation," said Jere Beasley of Beasley Allen, the Montgomery plaintiffs' firm that has joined with Cooper in litigation over the ignition switch defect. "The Melton case will now take center stage."

Beasley added that the second most important development in the GM litigation is the Meltons' decision to give back their settlement and pursue litigation against the auto maker. "Five million dollars is a lot of money," Beasley said. "They're so genuine, so real. They never even thought about the money."

The Melton lawyers say discovery in the case is crucial because it will examine who knew what about the ignition defect and when they knew it.

Beasley said his firm will work with Cooper on the Melton case in Cobb.

Copyright 2014. ALM Media Properties, LLC. All rights reserved.

# Exhibit 3

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

KENNETH DAVID MELTON and )
MARY ELIZABETH MELTON, )
Individually, and as Administrators )
of the Estate of JENNIFER )
BROOKE MELTON, deceased, )
 )
Plaintiffs, )
 )
 )
GENERAL MOTORS LLC, and )
THORNTON CHEVROLET, INC., )
 )
Defendants. )

CIVIL ACTION
FILE NO. _____

14A1197-4

PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFENDANT GENERAL MOTORS, LLC

COME NOW Plaintiffs, and pursuant to O.C.G.A. § 9-11-34, hereby

request that Defendant General Motors LLC ("GM") produce for inspection and

photocopying the originals or, if the originals are unavailable, copies of the

documents and materials described in Part III, which documents and materials are

in the possession, custody, or control of GM, or their present or former employees,

agents, or representatives, including, but not limited to, their attorneys of record

herein, at the offices of The Cooper Firm, 531 Roselane Street, Suite 200, Marietta,

Georgia 30060, within forty-five (45) day of the service of the Summons and

Complaint, or at such other place and time as agreeable between counsel:

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

1. "Document" means every writing or record of every type and

description that is or has been in your possession, custody or control or of which

you have knowledge, including, but not limited to, letters, correspondence,

telegrams, mailgrams, appointment books, diaries, memoranda, tapes, stenographic

or handwritten notes, studies, publications, books, pamphlets, pictures, drawings

and photographs, videos, films, microfilms, voice and/or sound recordings, maps,

reports, surveys, minutes or statistical compilations, agreements, contracts,

corporate records of corporate meetings, books of accounts, ledger books, bank

checks, cashier's checks, canceled checks, wire transfer documents, bills, receipts,

invoices or any other reported or graphic material in whatever form, including

copies, drafts, and reproductions. "Document" also refers to any other data

compilations from which information can be obtained and translated, if necessary,

by you through computers or detection devices in to reasonably useful form.

2. "Person" means any natural person, corporation, partnership,

proprietorship, association, governmental entity, agency, group, organization or

group of persons.

3. To "identify" a "document" means to provide the following information irrespective of whether the document is deemed privileged or subject to any claim of privilege:

(a)    The title or other means of identification or each such document;

(b)    The date of each such document;

(c)    The author of each such document;

(d)    The recipient or recipients of each such document, including, but not limited to, GM or anyone who purports to represent GM;

(e)    The present location of any and all copies of each such document in the care, custody, or control of GM;

(f)    The names and current addresses of any and all persons who have custody or control of each such document or copies thereof; and

(g)    If all copies of the document have been destroyed, the names and current addresses of the person or persons authorizing the destruction of the document and the date the document was destroyed.

In lieu of "identifying" any document, it shall be deemed a sufficient compliance with these interrogatories to attach a copy of each such document to the answers hereto and reference said document to the particular interrogatory to which the document is responsive.

Page 3 of 12

4. To "identify" a natural person means to state that person's full name, title, or affiliation, and last known address and telephone number. To "identify" a person that is a business, organization, or group of persons, means to state the full name of such business, organization, or group of persons, the form of business, organization or group of persons (e.g., government agency, corporation, partnership, joint venture, etc.) and to "identify" the natural person who would have knowledge of the information sought by the interrogatory.

5. "Complaint" refers to the Complaint filed by Plaintiffs in this action.

6. Terms in the singular shall be deemed to include the plural and terms in the plural shall be deemed to include the singular.

7. "Specific Product" is defined as the 2005 Chevrolet Cobalt, Vehicle Identification Number 1G1AL12F557571865.

8. "Key System" is defined as the ignition switch, the position of the key lock module, and slot design of the key in GM vehicles.

9. "Safety Recall" is defined as Safety Recall 13454.

10. "Defective Vehicles" are defined as all GM vehicles subject to Safety Recall 13454.

11. The terms "you," "your," and "GM" shall mean Defendant General Motors LLC and each of its present or former agents, employees, and

representatives, and each person who, with respect to the subject matter of the category of the Request is or was acting on its behalf or under its direction or control.

12. The term "Subject Incident" shall mean the incident which is described in the Complaint.

## II. INSTRUCTIONS

1. No category specified herein is intended to, nor shall, supersede, exclude, or restrict the scope of any other category.

2. To the extent that any documents and materials are furnished by GM in connection with any numbered document category set forth in Part III below, they may be omitted by GM in responding to any subsequent document category.

3. If GM claims privilege or attorney work product protection for any document, GM is hereby requested to identify each such document and, with respect to each such document, state the specific basis for the claim of privilege or work product protection, providing the following information:

(a) The subject matter of the document;

(b) The title, heading, or caption of the document, if any;

Page 5 of 12

(c)  The identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s), or combination thereof;

(d)  The date appearing on the document or, if no date appears thereon, the date or approximate date on which the document was prepared;

(e)  The general nature or description of the document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.) and the number of pages of which it consists;

(f)  The identity of the person who signed the document and, if it was not signed, the identity of each person who prepared it;

(g)  The identity of each person to whom the document was addressed and the identity of each person to whom a copy thereof was sent; and

(h)  The identity of each person who has custody of each such document.

4.  In producing the documents and materials requested herein, GM may omit unmarked copies of the pleadings filed in this action.

5.  In producing the documents and materials requested herein, GM is requested to produce such documents and materials as they are kept in the usual course of business or organized and labeled to correspond with the document category of Part III to which they are responsive.

6.  In producing the documents and materials requested herein, GM is required to produce documents and materials located at any of its offices, storage units, or other facilities.

## III.  DOCUMENTS AND MATERIALS TO BE PRODUCED

1.  All documents requested by the Congressional committees and the National Highway Traffic Safety Administration ("NHTSA") regarding their investigations of GM ignition switches.

2.  All documents relating to the suspension of Ray DeGiorgio and Gary Altman.

3.  All documents relating to the decision by Brian Stouffer and Jim Federico to leave GM.

4.  All documents relating to the investigation of any incident or event in which is alleged and/or thought that the key in a GM car moved from RUN to ACCESSORY/OFF when the driver did not intend it to move.

5.  The personnel files of Jim Federico, Ray DeGiorgio, Gary Altman, David Trush, Brian Stouffer, Craig St. Pierre, Peter Judis, Brian Chase, Brian Everestt, Victor Hakim, Steven Oakley, Bill Thompson and Ebram Handy.

6.  To the extent they need to be re-requested, please produce all the documents that you produced to the Meltons before the case settled in 2013.

7.  All documents sent by GM to attorneys at the firm of King &
Spalding about the existence of safety-related defects in the cars covered in the
Recall.

8.  All documents, including attorney's notes, created by GM and/or
any of its attorneys in connection with Ray DeGiorgio's April 29, 2013 deposition.
If you contend any document is privileged, please provide a suitable Privilege Log.

9.  All documents, including attorney's notes, created by GM and/or
any of its attorneys in connection with Ebram Handy's February 1, 2013
deposition.  If you contend any document is privileged, please provide a suitable
Privilege Log.

10.  All documents, including attorney's notes, created by GM and/or
any of its attorneys in connection with Gary Altman's June 12, 2013 deposition.  If
you contend any document is privileged, please provide a suitable Privilege Log.

11.  All documents, including attorney's notes, created by GM and/or
any of its attorneys in connection with Brian Stouffer's May 1, 2013 deposition.  If
you contend any document is privileged, please provide a suitable Privilege Log.

12.  All documents, including attorney's notes, created by GM and/or
any of its attorneys, including in-house counsel as well as outside counsel, in
connection with its investigation into safety related defects in the Key System,
which includes the ignition switch, of the Chevrolet Cobalt or any other GM

vehicle with the similar Key System, which includes the ignition switch. If you contend any document is privileged, please provide a suitable Privilege Log.

13. All documents in which GM or anyone on its behalf, including attorneys for GM, both in-house and outside counsel, told GM to recall the cars with the defective ignition switch covered in the Recall. If you contend any document is privileged, please provide a suitable Privilege Log.

14. All documents in which GM or anyone on its behalf, including attorneys for the GM, both in-house and outside counsel, told GM not to recall the cars with the defective ignition switch covered in the Recall. If you contend any document is privileged, please provide a suitable Privilege Log.

15. All documents from which it can be determined that GM or anyone acting on its behalf ever had possession of any cars or their components that contained the defects set out in the Recall.

16. Produce all documents that pertain to the cars in Response to Request No. 15 from which it can be determined what GM or anyone acting on its behalf did with the cars or components from those cars.

17. All documents that pertain in any way to any studies, inspections, CAD, analysis and any examination (as those terms are most broadly defined) of the ignition systems and/or components of any of the cars identified in Request No. 15.

18. All letters, emails and all other documents in which GM or anyone acting on its behalf authorized and/or acquiesced in the disposal of any of the cars or components identified in Request No.15.

19. Any communications between GM, its in-house counsel, and/or outside counsel, relating to the Melton case.

20. All documents prepared by GM, its in-house counsel, and/or outside counsel, relating to the Melton case.

21. All documents sent by GM to attorneys at any law firm about the existence of safety-related defects in the cars covered in the Recall.

22. All documents received back from King & Spalding and/or other lawyers that pertain to the existence of safety-related defects in the cars covered in the Recall.

23. All documents reflecting any work done by GM's in-house counsel, and/or outside counsel, relating to the Key System, including the ignition switch.

24. All documents and materials relating to the investigation of the Subject Incident made the basis of this suit and of the injuries and damages sustained by Jennifer Brooke Melton.

25. All experts' reports, including any tests, supporting data, calculations, or photographs, factual observations and reports or facts on which such experts intend to rely.

DATED:  May 12, 2014.

Respectfully submitted,

THE COOPER FIRM

_____

Lance A. Cooper
  Georgia Bar No. 186100
Patrick A. Dawson
  Georgia Bar No. 005620
  *Of Counsel*

531 Roselane Street
Suite 200
Marietta, GA  30060
(770) 427-5588

BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.

_____

Benjamin E. Baker, Jr.
  Georgia Bar No. 032926
  *Of Counsel*

218 Commerce Street
Post Office Box 4160
Montgomery, AL 36104
(334) 269-2034

SHERROD & BERNARD, P.C.

Kenneth R. Bernard, Jr.
Georgia Bar No. 054844

8470 Price Avenue
P.O. Box 1154
Douglasville, Georgia 30133-1154
(770) 920-8350

Attorneys for Plaintiffs

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| KENNETH DAVID MELTON and | ) | |
| MARY ELIZABETH MELTON, | ) | |
| Individually, and as Administrators | ) | |
| of the Estate of JENNIFER | ) | |
| BROOKE MELTON, deceased, | ) | CIVIL ACTION |
| | ) | FILE NO. 14:A-1197 |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| GENERAL MOTORS LLC, and | ) | |
| THORNTON CHEVROLET, INC., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' SECOND REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFENDANT GENERAL MOTORS, LLC

COME NOW Plaintiffs, and pursuant to O.C.G.A. § 9-11-34, hereby

request that Defendant General Motors LLC ("GM") produce for inspection and

photocopying the originals or, if the originals are unavailable, copies of the

documents and materials described in Part III, which documents and materials are

in the possession, custody, or control of GM, or their present or former employees,

agents, or representatives, including, but not limited to, their attorneys of record

herein, at the offices of The Cooper Firm, 531 Roselane Street, Suite 200, Marietta,

Georgia 30060, within thirty (30) days of service upon you.

DEFINITIONS

As used herein, the terms listed below are defined as follows:

1.  "Document" means every writing or record of every type and description that is or has been in your possession, custody or control or of which you have knowledge, including, but not limited to, letters, correspondence, telegrams, mailgrams, appointment books, diaries, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, drawings and photographs, videos, films, microfilms, voice and/or sound recordings, maps, reports, surveys, minutes or statistical compilations, agreements, contracts, corporate records of corporate meetings, books of accounts, ledger books, bank checks, cashier's checks, canceled checks, wire transfer documents, bills, receipts, invoices or any other reported or graphic material in whatever form, including copies, drafts, and reproductions.  "Document" also refers to any other data compilations from which information can be obtained and translated, if necessary, by you through computers or detection devices in to reasonably useful form.

2.  "Person" means any natural person, corporation, partnership, proprietorship, association, governmental entity, agency, group, organization or group of persons.

3.  To "identify" a "document" means to provide the following information irrespective of whether the document is deemed privileged or subject to any claim of privilege:

(a)    The title or other means of identification or each such document;

(b)    The date of each such document;

(c)    The author of each such document;

(d)    The recipient or recipients of each such document, including, but not limited to, GM or anyone who purports to represent GM;

(e)    The present location of any and all copies of each such document in the care, custody, or control of GM;

(f)    The names and current addresses of any and all persons who have custody or control of each such document or copies thereof; and

(g)    If all copies of the document have been destroyed, the names and current addresses of the person or persons authorizing the destruction of the document and the date the document was destroyed.

In lieu of "identifying" any document, it shall be deemed a sufficient compliance with these interrogatories to attach a copy of each such document to the answers hereto and reference said document to the particular interrogatory to which the document is responsive.

4. To "identify" a natural person means to state that person's full name, title, or affiliation, and last known address and telephone number. To "identify" a person that is a business, organization, or group of persons, means to

state the full name of such business, organization, or group of persons, the form of

business, organization or group of persons (e.g., government agency, corporation,

partnership, joint venture, etc.) and to "identify" the natural person who would

have knowledge of the information sought by the interrogatory.

5. "Complaint" refers to the Complaint filed by Plaintiffs in this

action.

6. Terms in the singular shall be deemed to include the plural and

terms in the plural shall be deemed to include the singular.

7. "Specific Product" is defined as the 2005 Chevrolet Cobalt,

Vehicle Identification Number 1G1AL12F557571865.

8. "Key System" is defined as the ignition switch, the position of the

key lock module, and slot design of the key in GM vehicles.

9. "Safety Recall" is defined as Safety Recall 13454.

10. "Defective Vehicles" are defined as all GM vehicles subject to

Safety Recall 13454.

11. The terms "you," "your," and "GM" shall mean Defendant

General Motors LLC and each of its present or former agents, employees, and

representatives, and each person who, with respect to the subject matter of the

category of the Request is or was acting on its behalf or under its direction or

control.

12. The term "Subject Incident" shall mean the incident which is described in the Complaint.

## II. INSTRUCTIONS

1. No category specified herein is intended to, nor shall, supersede, exclude, or restrict the scope of any other category.

2. To the extent that any documents and materials are furnished by GM in connection with any numbered document category set forth in Part III below, they may be omitted by GM in responding to any subsequent document category.

3. If GM claims privilege or attorney work product protection for any document, GM is hereby requested to identify each such document and, with respect to each such document, state the specific basis for the claim of privilege or work product protection, providing the following information:

(a) The subject matter of the document;

(b) The title, heading, or caption of the document, if any;

(c) The identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s), or combination thereof;

(d) The date appearing on the document or, if no date appears thereon, the date or approximate date on which the document was prepared;

Page 5 of 15

(e)  The general nature or description of the document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.) and the number of pages of which it consists;

(f)  The identity of the person who signed the document and, if it was not signed, the identity of each person who prepared it;

(g)  The identity of each person to whom the document was addressed and the identity of each person to whom a copy thereof was sent; and

(h)  The identity of each person who has custody of each such document.

4.  In producing the documents and materials requested herein, GM may omit unmarked copies of the pleadings filed in this action.

5.  In producing the documents and materials requested herein, GM is requested to produce such documents and materials as they are kept in the usual course of business or organized and labeled to correspond with the document category of Part III to which they are responsive.

6.  In producing the documents and materials requested herein, GM is required to produce documents and materials located at any of its offices, storage units, or other facilities.

## III. DOCUMENTS AND MATERIALS TO BE PRODUCED

1.   Produce a copy of all Pugh Analyses (sometimes called Pugh Matrix Analysis) performed by you on various criteria and choices for the GM ignition switches chosen and/or considered for use in the recalled Defective Vehicles.

2.   Produce a copy of all RAMSIS Analyses performed by you on various criteria and ergonomics design choices that were to accompany the GM ignition switches chosen and/or considered for use in the recalled Defective Vehicles.

3.   Please produce a list or documents evidencing or relating to all GM vehicles that used the ignition switch design used in the 2006 Cobalt, including years of production.

4.   Please produce documents evidencing when GM started producing vehicles with the updated ignition switch design, including documents that show what model vehicle received the newer switch designs and when.

5.   Please produce an unredacted version of the report prepared by Anton Valukas and Jenner & Block ("Valukas Report") dated May 29, 2014, and presented to the Board of Directors of General Motors Co. regarding ignition switch recalls. (A redacted version of the report was filed with NHTSA).

6.  Please produce unredacted copies of all documents, witness interviews, reports, tests or other documents, however designated, that were referenced as footnotes in the "Valukas Report", i.e., footnotes 1 through 1355.

7.  Please produce an index evidencing all documents or information provided to or made available to Antone Valukas and/or Jenner & Block with respect to its investigation into the GM ignition switch recalls.

8.  Produce a copy of all bills, billing statements, and raw billing sheets sent to you by Jenner & Block in connection with any work done to research and prepare the Valukas Report.

9.  Please produce the spreadsheet of ignition switch problems and/or air bag non-deployments maintained by field performance assessment engineer, John Sprague, as referenced in the "Valukas Report."

10.  Please produce the personnel files of any person fired by GM as a result of the investigation in the ignition switch defect issue, except for those in Request No. 5 of Plaintiffs' First Document Requests, as those have already been asked for.

11.  Please produce the personnel files of any person censured, reprimanded, re-assigned, and/or retired by GM as a result of the investigation in the ignition switch defect issue.

12.    Please produce GM's files for the 54 frontal impact crashes identified by GM as being related to the faulty ignition switch recalls.

13.    Please produce GM's files on the 13 deaths that General Motors claims are related to the faulty ignition switch recalls.

14.    Please produce a copy of the Wisconsin Safety Patrol Accident Reconstruction Report on a Cobalt fatality that was published in April 2007 and referenced in the "Valukas Report."

15.    Please produce any and all emails, memos, correspondence or other documents to or from GM employee Ray DeGiorgio related to the model ignition switch made the basis of this suit, including any communications with suppliers related to the approval and subsequent changes made to the ignition switch over its history.

16.    Please produce a copy of any and all SDM download documents in GM's possession related to vehicles it has downloaded for vehicles within the scope of any 2014 ignition switch recalls.

17.    Please produce any and all tests reports showing that subject model ignition switch or subsequent versions of the switch that failed to meet the torque requirement of GM's specifications.

18.    Please produce any and all documents received from Delphi as a result of GM's investigation into the ignition defect recall issue.

19.  Please produce any and all final engineering drawings related to the ignition switch used in the subject model vehicle from 2001 through 2010.

20.  Please produce any and all correspondence, emails or other communications from GM's attorneys King & Spalding regarding Ray DeGiorgio, including but not limited to emails about, before, and after his deposition testimony in *Melton v. GM.*

21.  Please produce any and all consumer complaints within the scope of vehicles set forth in the ignition switch recalls wherein it was alleged that the vehicle stalled and/or air bags failed to deploy.

22.  Please produce any documents produced to the United States Congress regarding the ignition switch recalls.

23.  Any documents produced to the NHSTA regarding the ignition switch recalls.

24.  Please produce documents evidencing or relating to whether the new design ignition switch met GM's torque requirements.

25.  Produce copies of all hard drives of documents that were gathered in connection with the investigation GM and the preparation of the Valukas Report (encompasses 23 TB of data and 41 million documents).  The documents should be produced in a format that may be searched by Plaintiff's counsel.

26. An exact mirrored (and unaltered) copy of the hard drive that contains the 23 TB of data mentioned in the Valukas Report.

27. Produce a copy of all documents authored by, received by, and sent to Mary Barras about the GM ignition switch issues that pertain to the Subject Recall and Defective Vehicles, as well as any 2014 ignition switch recalls.

28. Produce a copy of all documents authored by, received by, and sent to GM's Board of Directors about the GM ignition switch issues that pertain to the Subject Recall and Defective Vehicles, as well as any 2014 ignition switch recalls.

29. If not already produced, please produce a copy of each and every document referred to directly or indirectly in the Valukas Report.

30. Please produce a copy of all notes, transcripts, and tapes (audio or video) of any person interviewed by Jenner & Block for the Valukas investigation and Report, including any of those not cited in the final Valukas Report.

31. Please produce copies of all drafts of the Valukas Report sent to you.

32. Please produce any internal GM correspondence relating to the Valukas investigation.

33. Please produce any internal GM correspondence relating to the Congressional investigation of the ignition switch.

34. Please produce any internal GM correspondence relating to the production of documents to Congress.

35. Please produce any internal GM correspondence relating to the production of documents to the Department of Justice.

36. Please produce all documents and materials relating to any communications between GM, Opel, and Daewoo which address the Subject Recall and Defective Vehicles, as well as any 2014 ignition switch recalls.

37. Please produce the minutes of every meeting where the Key System in the Defective Vehicles was discussed.

38. All documents which identify the committees (and the members of those committees) that would have reviewed the Key System in the Defective Vehicles and the Safety Recall.

39. All documents and materials which identify every internal database GM is using to search for documents requested in Plaintiffs' First and Second Requests for Production.

40. All documents and materials relating to the policies and procedures used by in-house counsel to inform Michael Milliken of developments in any lawsuits, claims and complaints brought against GM.

41.  All documents received from Delphi relating to the Key System

in the Defective Vehicles and the Safety Recall.

DATED:   August 15, 2014.

Respectfully submitted,

**THE COOPER FIRM**

Lance A. Cooper
  Georgia Bar No. 186100
Patrick A. Dawson
  Georgia Bar No. 005620
  *Of Counsel*


531 Roselane Street
Suite 200
Marietta, GA  30060
(770) 427-5588

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.

Benjamin E. Baker, Jr.
   Georgia Bar No. 032926
   *Of Counsel*

218 Commerce Street
Post Office Box 4160
Montgomery, AL 36104
(334) 269-2034

SHERROD & BERNARD, P.C.

Kenneth R. Bernard, Jr.
Georgia Bar No. 054844

8470 Price Avenue
P.O. Box 1154
Douglasville, Georgia 30133-1154
(770) 920-8350

**Attorneys for Plaintiffs**

Page 14 of 15

## CERTIFICATE OF SERVICE

This hereby certifies that on this date, I served the following counsel via email:

| | |
|---|---|
| Robert D. Ingram, Esq.<br>Jeffrey A. Daxe, Esq.<br>Moore Ingram Johnson & Steele<br>326 Roswell Street<br>Marietta, GA 30060 | Kyle Dreyer<br>Hartline Dacus Barger Dreyer LLP<br>6688 N. Central Expressway<br>Suite 1000<br>Dallas, TX 75206 |
| John E. Hall<br>Walter Bibbins<br>Patrick Millsaps<br>Hall Booth Smith PC<br>191 Peachtree Street, Ste. 2900<br>Atlanta, GA 30303 | Brian Sieve<br>Nicholas Wasdin<br>Jeffrey Bramson<br>Leonid Feller<br>Renee Smith<br>Kirkland & Ellis, LLP<br>300 North LaSalle<br>Chicago, IL 60654 |

DATED:  August 15, 2014.

THE COOPER FIRM

Lance A. Cooper
Georgia Bar No. 186100

531 Roselane Street
Suite 200
Marietta, Georgia  30060
(770) 427-5588
Email:  lance@thecooperfirm.com