# Exhibit 5





September 12, 2014

*Via Electronic Court Filing*

The Honorable Jesse M. Furman
United States District Court
Southern District of New York

Re:    *In re: General Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 14-MC-2543
       Coordination with Related Cases (Melton)

Dear Judge Furman:

Plaintiffs' Co-Lead Counsel, in consultation with Executive Committee Member Lance
Cooper and Plaintiffs' Federal/State Liaison Counsel Dawn Barrios ("Plaintiffs"), submit this letter
brief on MDL/Related Case Coordination in further follow-up to CMO No. 8 § V, the parties' letter
of August 29, 2014 [Dkt. No. 273], and Your Honor's direction at the September 4, 2014
conference. An updated (proposed) Coordination Order is attached as Exhibit 1, incorporating the
Court's suggestions, and a red-line showing the substantive areas of dispute between Plaintiffs'
(proposed) Coordination Order and Defendants' is attached as Exhibit 2.

At the September 4, 2014 status conference, this Court directed the parties to brief issues
relating to (a) New GM's request to stop discovery in the *Melton* case and the injunctive powers of
the Court; and (b) the parties' disputes in their respective coordination orders. Tr. at 66-67.

With respect to the first issue, Plaintiffs respectfully submit that Your Honor's statement that
the Court was not "going to start issuing injunction[s] to the state courts," and would instead reach
out to judges in Related Cases to discuss coordination issues, Tr. at 58:1-8,[1] is fully supported by the
case law, the MANUAL FOR COMPLEX LITIGATION, FOURTH ("MCL") and remains a contemporary
MDL best practice. *See*, e.g., The Duke Law Center For Judicial Studies' "MDL Standards and Best
Practices (2014) Revised 9-10-14, available online at
https://law.duke.edu/sites/default/files/centers/judicialstudies/MDL_Standards_and_Best_Practi
ces_2014-REVISED.pdf, and *Appendix*, available online at
https://law.duke.edu/sites/default/files/centers/judicialstudies/MDL_SBP_Appendix_2014.pdf.
These new proposed standards, based on judicial and practitioner experiences since the issuance of
the MCL, bear out that the diplomatic approach in the spirit of comity appears to be the best course
to assure congenial cooperation with independently minded state court benches.

---

[1] Plaintiffs are also mindful of the fact that the Court has likely already spoken with the judges in the Related
Cases.

September 12, 2014
Page 2

The best practices set forth in the MCL, and now in the developing Duke Standards, address precisely these issues. Parallel federal and state actions naturally create jurisdictional complexities and scheduling tensions, and it is within the powers and discretion of the Transferee Court to ensure cooperation and coordination. Invoking the All Writs Act[2] or the Anti-Injunction Act[3] should be a last resort, utilized, "if at all," after all attempts at voluntary coordination have failed. MCL §20.32. As an initial matter, the Supreme Court has held that "[any] doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy." *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238, 2005 U.S. Dist. LEXIS 18693, at *7 (E.D.N.Y. Aug. 31, 2005) (quoting *Atl. Coast Line R.R. Co., v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)).

More recent authority is in accord as well. *See Wyly v. Weiss*, 697 F.3d 131, 139 (2d Cir. 2012) (declining to apply the "in aid of jurisdiction" exception to the Anti-Injunction Act and observing that "we have never held that a district court's involvement in complex litigation justifies, without more, issuance of an injunction"); *Hinds Cnty. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 125 (S.D.N.Y. 2011) (refusing to issue an injunction when, among other reasons, the federal case had not been certified as a class action and only one defendant had settled); *cf. In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (issuing injunction against state court actions given that "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control" and two years of court-supervised settlement discussions among the parties). Notably, in the case Defendants cited in their August 29, 2014 letter, *In re Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litig.*, 2003 WL 22331286, at *1 (N.D. Ohio May 21, 2003), the request for an injunction was unopposed.

An injunction against a state court proceeding might solve an initial scheduling issue, but may be detrimental to all further efforts at coordination throughout the tenure of the MDL. *See* MCL, § 20.32. Thus, even if the Court could properly issue an injunction in this circumstance, such an injunction may very well have the least-desired consequence: it may be the death knell for any real coordination, and insure the very duplication of discovery that all parties are striving to minimize.

As the MCL suggests, "Coordination could involve inviting state judges to participate in a coordinated national discovery program while retaining control of local discovery. Depending on the progress of the state litigation, some aspects of discovery in state cases may in some instances serve as the basis for national discovery." MCL, § 20.313. There is no authority to enjoin a Related Action from permitting depositions, and Defendants have not cited any to date. In fact, the situation where (as here) discovery in a Related Action is ahead of the discovery in the MDL is a paradigmatic example of how the federal court can benefit from the state court discovery. In the *Vioxx* litigation, for example, the New Jersey and Texas state actions were ahead of the MDL; Judge Fallon reached out to the state court judges, and the state court proceedings coordinated their schedules to avoid conflicting trial dates, and joint depositions and shared discovery. In *Vioxx* and

---

[2] 28 U.S.C. § 1651(a).
[3] 28 U.S.C. § 2283.

September 12, 2014
Page 3

more recently in the *Actos* MDL, bellwether personal injury/wrongful death trials were conducted in both the MDL and state courts. Here, even assuming that this Court will, as indicated, and as appropriate, issue a Coordination Order, this need not and does not preclude (and should facilitate) potential use of Related Action's discovery in this MDL, and a Related Action could serve as one of the bellwether trials. There is no basis, let alone ex ante, for an injunction. *See* August 29, 2014 Ltr. [Dkt. No. 273], at Exs. E, G.

For these reasons, Plaintiffs believe that Your Honor has taken the correct approach by reaching out to the judges with Related Actions to discuss voluntary coordination, and that Your Honor should not enjoin the progress of the Related Actions, or the ability of a lawyer to prosecute his client's case in a different forum. Indeed, Plaintiffs submit that Defendants' attempt to draw a distinction in this context between enjoining lawyers in the MDL and enjoining the Related Action is illusory and is an end run around the best practices of an MDL, and an unsuccessful effort to ignore the practical unworkability of the injunction GM seeks.

Notably, the MCL expressly endorses having lawyers in state-court cases involved in the MDL. *See* MCL § 20.311 ("In appointing lead or liaison counsel or otherwise organizing counsel . . . consider including attorneys from jurisdictions with cases that may need to be coordinated with either class action or multidistrict litigation"). That very situation has occurred here. Your Honor appointed counsel with state court cases in leadership positions. Those appointments were made to facilitate coordination and accommodation, not to prevent it, as the Defendants advocate here.

Specifically, to solve its purported "lawyer problem," the Defendants seek a protective order/injunction preventing the Meltons' attorney (Lance Cooper) from proceeding with scheduled depositions later in the fall. Defendants have presented no authority to support an injunction against a state court attorney from pursuing his client's case. Even if this Court could enjoin the upcoming depositions, this would not serve the interests of the MDL, and could prejudice the orderly proceeding of the *Melton* case. Communication between the Court and the *Melton* court can address and achieve scheduling coordination, which should be a joint judicial decision, far better than an injunction.

Mr. Cooper explains the factual background and his deposition requests in the *Melton* case as follows, stating:

Although we are working with GM's counsel to coordinate discovery to the extent practicable, there are unique issues in *Melton*. As this Court recognizes, *Melton* is the case furthest along as far as discovery is concerned. In fact, because of the discovery obtained in the underlying case, the Meltons have all of the evidence they need to prove defect, causation, and damages, including punitive damages. Discovery was over and the trial was just a month away when the underlying case settled.

In the *Melton* case discovery centers on the rescission of the settlement claim. Under Georgia law, the Meltons must prove that GM fraudulently concealed evidence from them in order to induce them to settle their case. The *Melton* discovery is focused on obtaining evidence relating to GM's

September 12, 2014
Page 4

concealment. The Meltons intend to present evidence to a jury that GM's concealment of evidence was part of a concerted effort to settle the case without the Meltons or Judge Tanksley knowing what GM knew.

At the September 9, 2014, meet and confer, we informed GM's counsel that the following categories of documents were relevant to the fraudulent concealment claim:

•    Documents that were ordered to be produced by Judge Tanksley that were not produced;

•    Documents that show GM concealed what it knew about the defects from the Meltons and Judge Tanksley;

•    Documents that show GM's suborned perjury in *Melton*; and

•    Documents that show that GM obstructed justice in *Melton*.

The Meltons also intend to begin deposing witnesses as soon as possible. The depositions will be focused on GM's concealment of evidence from the Meltons and Judge Tanksley, as well as GM's subornation of perjury and obstruction of justice. These depositions will not be ordinary discovery depositions of the kind which were taken in the previously filed case to prove that a defect caused Brooke Melton's accident. They will be targeted evidentiary depositions for use at trial and will be focused on GM's fraudulent concealment.

The Meltons will suffer prejudice by significant delay in the taking of these depositions. Judge Tanksley has asked the parties to submit a scheduling order by September 30, 2014. The Meltons sent a proposed scheduling order to GM's counsel which, consistent with Georgia law, provides for a six-month discovery period, ending in January 2015. The anticipated trial date would be in the spring of 2015. GM does not want depositions to begin, if at all, until after Judge Gerber rules on the threshold issues which, according to the present schedule, will not be fully briefed and submitted to Judge Gerber until February 16, 2015, at the earliest. Succinctly stated, GM wants to delay taking of depositions which will push discovery back and delay the *Melton* trial.

Mr. Cooper concludes: "Pursuant to O.C.G.A. § 9-11-1, the Meltons are entitled to a "just, speedy, and inexpensive determination of every action [trial]." Delaying discovery per GM's request would be unjust, lengthy, and expensive to the Meltons. Respectfully, Judge Tanksley presided over the underlying pre-trial matters, the settlement and the rescission of the settlement, and is in the most knowledgeable position regarding the instant matter. She should be consulted to give due consideration to all parties interests as the case proceeds."

Co-lead Counsel are charged to expedite discovery, including depositions of New GM involving fraudulent concealment, a key issue in the MDL actions, for the common benefit of all plaintiffs. Plaintiffs' Co-Lead Counsel respectfully observe that the MDL is the center of activity on claims arising from New GM's serial ignition system recalls, and on claims arising from the post-Sale crashes that implicate these defects. All of the economic loss/injunctive relief class actions, and

September 12, 2014
Page 5

the vast majority of individual crash claims (over 600 to date), are here. Most of the general discovery and most of the bellwether trials, including early bellwether trials, should accordingly be scheduled and conducted here. Discovery should advance without delay; as Plaintiffs will demonstrate by separate letter brief, time is of the essence, as the safety of millions of class members is at risk. Expediting discovery, rather than enjoining or delaying it, can save not only time, but lives.

For these reasons, we believe scheduling in *Melton* should be decided by the MDL Court and the *Melton* court, collaboratively, and in no event should the discovery clock be stopped, or run backward. Depositions that assist the *Melton* trial preparation (including case-specific testimony) can be taken in the MDL, since the concealment issues cut across all cases, without irreparably delaying either the *Melton* trial or the commencement of depositions in the MDL, and the MDL Leadership (including *Melton* counsel) has no objection to coordination and reasonable accommodations in scheduling between the courts.

Such coordination may also properly involve scheduling adjustments in *Melton* to enable the MDL to catch up, and thus reduce duplication, and Plaintiffs are committed to a running start. GM's discovery letter brief of September 10, 2014 makes no such commitment. GM's position that state court discovery should be stopped in deference to the MDL is fundamentally at odds with the position GM takes in its discovery letter brief of September 10, 2014; if this court is to be the hub of discovery activity, such activity should commence now and proceed briskly. There is no reason that general depositions of New GM witnesses cannot be scheduled with due regard (including reasonable adjustments) to the *Melton* schedule, and that case-specific questions, tailored to that trial, cannot be asked by *Melton* counsel in the course of such depositions, without either prejudicially delaying *Melton*, or resulting in duplicate depositions.

Finally, Plaintiffs briefly address the parties' differences in the proposed Coordination Order relating to on whose shoulders the burden rests to obtain discovery in Related Actions. Plaintiffs, as did the Court, advocate comity between this Court and the Related Actions with respect to discovery and pre-trial coordination. There should not be onerous, ambiguous and unnecessary requirements as preconditions to taking discovery in the Related Actions. The Defendants advocate that any discovery requested in a Related Action "*only upon leave in the state court on noticed motion for good cause shown, including why the discovery could not have been obtained in the MDL*". This high burden will invite inefficient interminable arguments over the relatively vague and somewhat abstract (in context) question of what could have been obtained in the MDL and foster potential reactive orders from strong-minded State court judges. GM's suggested course, forcing state courts to hear these motions is a strong armed approach designed to prevent legitimate State court discovery, and is not comity. Though, preventing unnecessarily duplicative discovery is the goal, the means depend on context and there is no one-size-fits all model. Under Plaintiffs' proposal, Defendants in Related Action cases do not waive their rights to seek protective orders under the applicable rules and will have their day in court. However, Defendants may not enjoy the unfair advantage of broad *ex ante* restrictions which would engender endless arguments on what could occur in MDL discovery.

September 12, 2014
Page 6

     The law, all parties' stated goal of coordination, the principles of comity, and the procedural posture of this MDL do not support any departure from established MDL best practices set forth in the MCL, or the injunction which Defendants advocate.

Respectfully,

Steve W. Berman
**Hagens Berman Sobol**
**Shapiro LLP**
1918 Eighth Ave.
Suite 3300
Seattle, WA  98101

-and-

555 Fifth Avenue
Suite 1700
New York, NY 10017

Lance Cooper
**The Cooper Firm**
531 Roselane Street
Suite 200
Marietta, GA 30060


Elizabeth J. Cabraser
**Lieff Cabraser Heimann &**
**Bernstein, LLP**
275 Battery Street
29th Floor
San Francisco, CA  94111-3339

-and-

250 Hudson Street
8th Floor
New York, NY  10013-1413

Dawn M. Barrios, Esq.
**Barrios, Kingsdorf & Casteix, LLP**
701 Poydras St., Suite 3650
New Orleans, LA 70139


Robert C. Hilliard
**Hilliard Muñoz Gonzales L.L.P.**
719 S Shoreline Blvd, # 500
Corpus Christi, TX 78401

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to All Actions*

14-MD-2543 (JMF)
14-MC-2543 (JMF)

[PROPOSED] ORDER NO. __

-------------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Joint Coordination Order]**

WHEREAS, a federal proceeding captioned *In re General Motors LLC Ignition Switch Litigation*, MDL Docket No. 2543 (the "MDL Proceeding"), is pending before the Hon. Jesse M. Furman in the United States District Court for the Southern District of New York (the "MDL Court");

WHEREAS, several other actions involving the same subject matter as the MDL Proceeding have been filed in the courts of a number of states and in federal courts (the "Related Actions");[1]

WHEREAS, the MDL Proceeding and the Related Actions involve many of the same factual allegations and circumstances and many of the same parties, and discovery in those various proceedings will substantially overlap;

WHEREAS, in order to achieve the full benefits of this MDL proceeding, the MDL Court has and will continue to encourage coordination with courts presiding over related cases, to the extent that those courts so desire, up to and including issuance of any joint orders that might allow full cooperation as between and among the courts and the parties. As the MDL Court indicated at the initial case management conference, and has been reiterated thereafter, the MDL Court intends to work actively to reach out to any court that is interested in coordinating

--------------------------------------------------------------------

[1] "Related Actions" shall not include shareholder derivative suits and securities class actions.

discovery activities. The MDL Court expects counsel for parties in the MDL proceeding to help ensure that such coordination is achieved wherever it is practicable and desired by a given court or courts.

WHEREAS, coordination of pretrial proceedings in the MDL Proceeding and the Related Actions will likely prevent duplication of discovery and undue burden on courts, parties, and non-parties in responding to discovery requests, save substantial expense by the parties and non-parties, and produce substantial savings in judicial resources;

WHEREAS, each Court adopting this Order (collectively, the "Courts") finds that coordination of discovery and pretrial scheduling in the MDL Proceeding and the Related Actions will further the just and efficient disposition of each proceeding and believe that the circumstances presented by these proceedings warrant the adoption of certain procedures to manage these litigations;

WHEREAS, the Courts and the parties wish and anticipate that other courts in which Related Actions are now pending may join this Joint Coordination Order (this "Order");

WHEREAS, a Related Action in which this Order has been entered by the Court in which the action is pending is referred to herein as a "Coordinated Action" or, collectively as the "Coordinated Actions"; and

WHEREAS, each Court entering this Order is mindful of the jurisdiction of each of the other Courts in which other Coordinated Actions are pending and does not wish to interfere with the jurisdiction or discretion of those Courts.

NOW, THEREFORE, IT IS ORDERED that the parties are to work together to coordinate discovery to the maximum extent feasible in order to avoid duplication of effort and to promote the efficient and speedy resolution of the MDL Proceeding and the Coordinated

Actions and, to that end, the following procedures for discovery and pretrial proceedings should be adopted:

### A.    Discovery and Pretrial Scheduling

1.    All discovery and pretrial scheduling in the Coordinated Actions will be coordinated to the fullest extent possible with the discovery and pretrial scheduling in the MDL Proceeding. The MDL Proceeding will be used as the lead case for discovery and pretrial scheduling in the Coordinated Actions. This Order does not operate to vacate discovery or pretrial scheduling in a Coordinated Action that predates its entry; such is left to the judgment and discretion of the Court in that Action.

2.    Lead Counsel will create a single electronic document depository for use of MDL counsel as well as counsel in Coordinated Actions, subject to provision by the MDL Court of an order for the equitable spreading of depository costs among users.

3.    New GM must apprise the Court, Lead Counsel, Liaison Counsel, and Federal-State Liaison Counsel every 2 weeks of matters of significance (including hearings, schedules, deadlines, and trial dates) in Related Actions to enable the Court and the parties to effectuate appropriate coordination, including discovery coordination, with these cases.

4.    Plaintiffs in the Coordinated Actions and their counsel will be entitled to participate in discovery in the MDL Proceeding as set forth in this Order and in accordance with the terms of MDL Order No. 10: Protective Order (ECF No. ___); and the MDL Order No. 11: Regarding Production of Documents and Electronic Data ("ESI Order") (ECF No. ___) (collectively, the "MDL Discovery Orders"), copies of which are attached hereto as Exhibit A. Each Court that adopts this Joint Coordination Order thereby also adopts the MDL Discovery Orders which, except as amended by separate order of the Coordinated Action Court, will govern the use and dissemination of all documents and information produced in coordinated discovery

3

conducted in accordance with the terms of this Order. Discovery in the MDL Proceeding will be conducted in accordance with the Federal Rules of Civil Procedure and the Local Rules, Individual Rules and Practices in Civil Cases, and Orders of the MDL Court, including the MDL Discovery Orders, all as interpreted by the MDL Court. Parties in the MDL Proceeding and their counsel may also participate in discovery in any Coordinated Action as set forth in this Order.

5. Counsel in any Coordinated Action may, at the appropriate time and following the appropriate Orders, submit time and expenses expended for the common benefit pursuant to the MDL Order on XYZ, all in compliance with the MDL Order on XYZ. Specifically, and not by way of limitation, any lawyer seeking recovery of time or expenses as common benefit work in this MDL for time or expenses spent on work in a Related Case must contact the MDL Co-Lead Counsel before conducting such work or incurring such expenses, and must comply with the authorization and reporting requirements set forth in this Order. Should there be an assessment in a Coordinated Action, as one in the MDL, an attorney will be subject to only one assessment order. Plaintiffs' Lead Counsel should work with counsel in a Coordinated Action to resolve any issue related to multiple jurisdictions' assessments.

6. The parties in a Coordinated Action may take discovery (whether directed to the merits or class certification) in those Actions only upon leave of the Court in which the Coordinated Action is pending. Each Coordinated Action Court will establish its individual rules and procedures for requesting and conducting discovery in the Coordinated Action, cognizant of the mutual goal of avoiding duplication and inconvenience in discovery and scheduling.

**B.    Use of Discovery Obtained in the MDL Proceeding**

7. Counsel representing the plaintiff or plaintiffs in a Coordinated Action will be entitled to receive all discovery taken in the MDL Proceeding, provided that such discovery

responses and documents must be used or disseminated only in accordance with the terms of the MDL Discovery Orders. Counsel representing a party in the MDL Proceeding will be entitled to receive all discovery taken in any Coordinated Action; any such discovery responses and documents must be used or disseminated only in accordance with the terms of the MDL Discovery Orders and the Coordinated Action Court Orders, whichever is applicable.

8.      Requests for documents, interrogatories, depositions on written questions, and requests for admission propounded in the MDL Proceeding will be deemed to have been propounded and served in the Coordinated Actions as if they had been propounded under the applicable civil discovery rules of the respective jurisdictions. Requests for documents, interrogatories, depositions on written questions, and requests for admission propounded in the Coordinated Actions will be deemed to have been propounded and served in the MDL Proceeding. The parties' responses to such requests for documents, interrogatories, depositions on written questions, and requests for admission will be deemed to be made in the MDL Proceeding and in the Coordinated Actions and may be used in the MDL Proceeding and in the Coordinated Actions, subject to and in accordance with the terms of the MDL Discovery Orders in the MDL proceeding and the State Court Discovery Orders in the Coordinated Actions, provided that, to the extent that any discovery generated in the MDL proceedings were to be used in any Coordinated Action court proceedings by agreement, the MDL Court's Protective Order and Federal Rules of Evidence 502 will apply.

9.      Depositions taken in the MDL Proceeding may be used in the Coordinated Actions, subject to and in accordance with the terms of the MDL Discovery Orders, as if they had been taken under the applicable civil discovery rules of the respective jurisdictions. Depositions taken in a Coordinated Action may be used in the MDL Proceeding, subject to and

1195580.1                                        5

in accordance with the terms of the MDL Discovery Orders and the Coordinated Action Court
Discovery Orders. With respect to the *Melton* case in particular, the parties agree to coordinate
the *Melton* depositions if possible; any disputes about the timing of such depositions should be
addressed on a case by case basis.

### C.     Service and Coordination Among Counsel

10.     The MDL Court has previously appointed Co-Lead Counsel for Plaintiffs,
Plaintiff Liaison Counsel, and Federal/State Liaison Counsel in the MDL Proceeding (those
counsel are identified in the attached Exhibit B). Defendants will file with the MDL Court and
serve upon MDL Co-Lead Plaintiff Counsel, Plaintiff Liaison Counsel, and Federal/State
Liaison Counsel in the MDL Proceeding copies of all Complaints, Coordination Orders,
Protective Orders, ESI Orders or other Discovery Orders, and Orders designating plaintiffs'
liaison counsel that are entered in the Coordinated Actions on the first of every month.
Service may be made by electronic means.[2]

11.     Any Court in a Related Action wishing to grant the parties before it access to
coordinated discovery may do so by joining this Order pursuant to paragraph 26 and appointing
one Plaintiffs' Liaison Counsel or designating one plaintiffs' counsel from that Action to work
with Plaintiffs' Liaison Counsel and Federal/State Liaison Counsel to facilitate coordination of
discovery in the Coordinated Action and discovery in the MDL Proceeding.

12.     Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding will promptly
serve upon plaintiffs' liaison counsel (if any) or designated plaintiffs' counsel in each
Coordinated Action all discovery requests (including requests for documents, interrogatories,
depositions on written questions, requests for admission, and subpoenas duces tecum), responses

---

[2] All forms of service made under this Joint Coordination Order will be deemed mailed in accordance with Rule 6
of the Federal Rules of Civil Procedure.

and objections to discovery requests; deposition notices; correspondence or other papers modifying discovery requests or schedules; and discovery motions (*i.e.*, motions under Rules 26 through 37 or Rule 45 of the Federal Rules of Civil Procedure) or requests for hearing on discovery disputes regarding coordinated discovery matters that are served upon the parties in the MDL Proceeding. Service may be made by electronic means upon plaintiffs' liaison counsel in each Coordinated Action. Deposition notices should be served by e-mail or other electronic means. Plaintiffs' liaison counsel in the Coordinated Actions will be responsible for distributing such documents to other counsel for plaintiffs in their respective actions.

13.     Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding should maintain a log of all Orders entered in the MDL Proceeding and all discovery requests and responses sent and received in the MDL Proceeding and should transmit a copy of said log by e-mail or other electronic means to plaintiffs' liaison counsel in each Coordinated Action by the seventh (7th) day of each month, or on a more frequent basis upon written request. Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding will promptly transmit a copy of each Order entered in the MDL Proceeding to plaintiffs' liaison counsel in the Coordinated Actions.

14.     In order to facilitate the dissemination of information and Orders of the MDL, the Court will create and maintain a Website devoted solely to this MDL.[3] The site will contain sections through which the parties, counsel, and the public may access Court Orders, Court opinions, Court minutes, Court calendars, frequently asked questions, court transcripts, the MDL docket, current developments, information about leadership in the MDL and contact information for the leaders, and contact information for the staff of the transferee Court.

---

[3] *See, e.g.*, Website for *In re Actos (Pioglitazone) Prods. Liab. Litig.*, MDL No. 2299, *available at* http://www.lawd.uscourts.gov/welcome-web-site-mdl-no-2299; Website for In re Oil Spill by the Oil Rig "Deepwater Horizon", MDL 2179, *available at* http://www.laed.uscourts.gov/OilSpill/OilSpill.htm.

15.    To encourage communication between this Court and any Coordinated Court, one section of the website will be accessible only to judges in any Coordinated Courts and Judge Furman.    Additionally, each status conference will be open to the judge in any Coordinated Action, and will be provided a separate call-in number from the general public.    Plaintiffs' Federal-State Liaison Counsel will notify all Coordinated Courts of each status conference and provide the appropriate call-in number.    Plaintiffs' Federal-State Liaison Counsel will also promptly transmit a copy of each Order entered in the MDL Proceeding to the judges in all Coordinated Actions.

### D.    Participation in and Conduct of Depositions in the MDL Proceeding

16.    All counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions.

17.    Each deposition taken in the MDL Proceeding: (i) will be conducted on reasonable written notice, to be served, electronically or otherwise, on Plaintiffs' Liaison Counsel in each Coordinated Action in accordance with the provisions of paragraph 9 above; (ii) will be subject to the time limits prescribed by Rule 30(d)(1) of the Federal Rules of Civil Procedure; and (iii) will be conducted pursuant to the Federal Rules of Civil Procedure and under the terms of the MDL Discovery Orders, all as interpreted by the MDL Court.

18.    Counsel may agree to use videoconferencing or other technology to conduct depositions remotely, in order to reduce the time and cost burden of travel for the deponent and Counsel.[4]

---

[4] *See, e.g.*, Order: Protocol for Contemporaneous Transmission of Live Testimony, *In re Actos (Pioglitazone) Prods. Liab. Litig.*, MDL No. 6:11-md-2299 (W.D. La. Jan. 8, 2014).

19.    At least one Co-Lead Counsel for the MDL Plaintiffs, or their designee, and Plaintiffs' Federal/State Liaison Counsel, or Plaintiffs' Liaison Counsel, should confer with plaintiffs' liaison counsel in the Coordinated Actions, or their designees, in advance of each deposition taken in the MDL Proceeding, taking such steps to cooperate on selecting a mutually convenient date, and any steps as may be necessary to avoid multiple interrogatories and duplicative questions, and to avoid to the extent practicable additional depositions in the Coordinated Actions.

20.    Questioning should ordinarily be by one attorney for all Plaintiffs and one attorney for all Defendants in the MDL, designated by Lead Counsel for each side.  Once the witness has fully answered a question,  that same or substantially the same question should not be asked again.  Counsel for plaintiffs who have individual or divergent positions, which cannot be resolved by good faith negotiations with plaintiffs' Lead Counsel, may examine a deponent limited to matters not previously covered.  This limitation will be strictly construed against the examining attorney.

21.    Absent agreement of the parties or order of this Court based on a showing of good cause, the length of depositions will be controlled by Fed. R. Civ. P. 30(d)(2).  Counsel should cooperate so examinations by multiple attorneys do not result in a deposition exceeding the allotted time.

22.    A deposition day should commence at 9:30 a.m. and terminate no later than 5:30 p.m. local time.  Modest variations in the schedule may be made by agreement of counsel who noticed the deposition and counsel for the witness.  There should be a 15-minute morning break and a 15-minute afternoon break, with a one (1) hour break for lunch.

23.    Counsel representing the plaintiff or plaintiffs in a Coordinated Action will be permitted to attend any deposition scheduled in the MDL Proceeding.  One Plaintiffs' Counsel from each Coordinated Action will be permitted a reasonable amount of time to question the deponent in those depositions following questioning by the Co-Lead Counsel for the MDL Plaintiffs, or their designee, and will be permitted to make objections during examination by other counsel, in accordance with the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, and the Orders of the MDL Court entered in the MDL Proceeding, and in accordance with the terms and procedures set forth in subparts (a) through (c) below providing that:

(a)    the court in which the Coordinated Action is pending has adopted the MDL Discovery Orders or has entered a Protective Order, ESI Order, or other Discovery Order substantially similar to the MDL Discovery Orders;

(b)    Plaintiffs' Counsel from the Coordinated Action should make best efforts to ask questions that are non-duplicative of questions already asked at the deposition; and

(c)    participation of Plaintiffs' Counsel from the Coordinated Actions should be arranged so as not to delay discovery or other proceedings as scheduled in the MDL Proceeding.

24.    If a deponent is questioned about any stamped confidential document or the confidential information contained therein, persons to whom disclosure is not authorized under the Confidentiality Order will be excluded.

25.    Unnecessary attendance by counsel is discouraged and may not be compensated in any fee application to the Court. Counsel who have only marginal interest in a proposed deposition or who expect their interests to be adequately represented by other counsel may elect not to attend.

26.    To allow counsel to make arrangements for adequate deposition space, counsel who intend to attend a deposition noticed in the MDL or in a Coordinated Court should advise counsel for the noticing party at least three days prior to the deposition.

27.    Counsel representing any party to any Coordinated Action may obtain from the MDL depository or directly from the court reporter, at its own expense, a transcript of any deposition taken in the MDL Proceeding or in any other Coordinated Action. The transcript of any deposition taken in the MDL Proceeding must not be used or disseminated except in accordance with the terms of this Order and the MDL Discovery Orders.

28.    Depositions in addition to those taken in the MDL Proceeding (whether directed to the merits or class certification) may be taken in a Coordinated Action in accordance with the rules established by the Court in the Coordinated Action to avoid duplicative depositions. Counsel in the MDL proceeding may petition the Coordinated Action Court for a protective order from any deposition MDL counsel believe are duplicative of depositions taken or scheduled to be taken in the MDL proceeding. The transcript of any such deposition must not be used or disseminated in the MDL proceeding except in accordance with the terms of the MDL Discovery Orders.

29.    If depositions in addition to those taken in the MDL Proceeding are permitted in a Coordinated Action, the noticing party should provide reasonable written notice, by electronic mail, facsimile or other electronic means, to Plaintiffs' Liaison Counsel and Plaintiffs'

Federal/State Liaison Counsel in the MDL Proceeding and all liaison counsel in the other Coordinated Actions. Counsel representing parties in the MDL Proceeding and counsel representing plaintiffs in each other Coordinated Action will be entitled to attend the deposition of any witness whose deposition is taken in a Coordinated Action and, following questioning by Plaintiffs' Counsel in the Coordinated Action, one counsel representing the MDL Plaintiffs, one counsel representing each MDL Defendant and one Plaintiffs' Counsel from each Coordinated Action will each be permitted a reasonable amount of time to ask non-duplicative additional questions and will be permitted to make objections during examination by other counsel.

30.    If any party in the MDL, through Plaintiff Liaison Counsel or Plaintiffs' Federal/State Liaison Counsel or Defendants, through Defense Lead Counsel, have been provided with reasonable notice of and opportunity to participate in a deposition taken in any Coordinated Action, no party in the MDL will be permitted to re-depose that deponent without first obtaining an Order of the MDL Court upon a showing of good cause therefor. Any party or witness receiving notice of a deposition which it contends is not permitted by the terms of this Order will have seven (7) days from receipt of the notice within which to serve the noticing party with a written objection to the deposition. In the event of such an objection, the deposition will not go forward until the noticing party applies for and receives an order from the MDL Court, if the notice was issued in the MDL proceeding, or in the Coordinated Action court if the notice was issued in a Coordinate Action, granting leave to take the deposition. Prior to any party in the MDL filing a discovery motion, the parties must first attempt to resolve the dispute in good faith and in accordance with the procedures and requirements outlined in the Court's Individual Rules and Practices in Civil Cases and the Court's standard Case Management Plan

and    Scheduling    Order,    both    of    which    are    available    at
http://www.nysd.uscourts.gov/judge/Furman.

31.    If the MDL Plaintiffs or MDL Defendants and their respective Counsel in any
Coordinated Action have received notice of a deposition in either the MDL Proceeding or any
Coordinated Action, such deposition may be used in the MDL Proceeding and each Coordinated
Action for all purposes permitted under the jurisdiction's applicable rules, without regard to
whether any MDL Plaintiffs' Counsel or any MDL Defendants' Counsel or any counsel
representing plaintiffs or defendants in any Coordinated Action attend or cross-examine at the
noticed deposition.

**E.        Participation in Written Discovery in the MDL Proceeding**

32.    At least one Co-Lead Counsel for the MDL Plaintiffs, or their designee, and
Plaintiffs' Federal/State Liaison Counsel should confer with plaintiffs' liaison counsel in the
Coordinated Actions, or their designees, in advance of the service of requests for written
discovery in the MDL Proceeding, taking such steps as may be necessary to avoid additional
interrogatories, depositions on written questions, requests for admission and requests for
documents in the Coordinated Actions.

33.    Plaintiffs' Liaison Counsel in any Coordinated Action may submit requests for
documents, interrogatories, depositions on written questions and requests for admission to MDL
Co-Lead Counsel for Plaintiffs and Plaintiffs' Federal/State Liaison Counsel for inclusion in
the requests for documents, interrogatories, depositions on written questions, and requests for
admission to be propounded in the MDL Proceeding. Such requests should be included in the
requests propounded in the MDL Proceeding, provided that:

(a)     the requests for documents, interrogatories, depositions on written questions and/or requests for admission are submitted to MDL Plaintiffs' Liaison Counsel and Plaintiffs' Federal/State Liaison Counsel within ten (10) calendar days after MDL Plaintiff Liaison Counsel have notified plaintiffs' liaison counsel in the Coordinated Actions of MDL Plaintiffs' intent to serve such discovery; and

(b)     the requests are non-duplicative of requests proposed by MDL Plaintiffs' Co-Lead Counsel.

The number of interrogatories permitted in the MDL Proceeding will be subject to such limitations as are imposed by Rule or Order of the MDL Court.  Requests for documents, interrogatories, depositions on written questions and requests for admission in addition to those served in the MDL Proceeding (whether directed to the merits or class certification) may be propounded in a Coordinated Action in accordance with the rules established by the Coordinated Action Court in the Coordinated Action to avoid duplicative discovery.  Counsel in the MDL proceeding may petition the Coordinated Action Court for a protective order from any such discovery MDL counsel believe is duplicative of discovery served in the MDL proceeding. All parties to the MDL Proceeding will be entitled to receive copies of responses to interrogatories, responses to depositions on written questions, responses to requests for admission, and documents produced in any Coordinated Action.  Any party or counsel otherwise entitled under this order to receive copies of discovery from other parties or counsel will reimburse the producing party for actual out-of-pocket costs incurred in connection with the copying and shipping of such discovery (including but not limited to document productions).

34.     Any counsel representing a plaintiff in a Coordinated Action should, in accordance with any Orders of the MDL Court entered in the MDL Proceeding and subject to the terms of the MDL Discovery Orders, have access to any document depository that may be established by the parties to the MDL Proceeding.

**F.      Discovery Dispute Resolution**

35.     Prior to bringing any discovery dispute to the Court, the parties must attempt to resolve the dispute on their own, in good faith, and in accordance with the procedures and requirements outlined in the Court's Individual Rules and Practices in Civil Cases and the Court's standard Case Management Plan and Scheduling Order, both of which are available at http://www.nysd.uscourts.gov/judge/Furman.

36.     In the event that the parties are not able to resolve any disputes that may arise in the coordinated pretrial discovery conducted in the MDL Proceeding, including disputes as to the interpretation of the MDL Discovery Orders, such disputes will be presented to the MDL Court.  Resolution of such disputes will be pursuant to the applicable federal or state law, as required, and such resolution may be sought by any party permitted by this Order to participate in the discovery in question.  In the event that additional discovery is sought in a Coordinated Action and the parties to that action are not able to resolve any discovery disputes that may arise in connection with that additional discovery, such disputes will be presented to the Court in which that Coordinated Action is pending.

37.     Nothing contained herein will constitute or be deemed to constitute a waiver of any objection of any defendant or plaintiff to the admissibility at trial, of any documents, deposition testimony or exhibits, or written discovery responses provided or obtained in accordance with this Order, whether on grounds of relevance, materiality or any other basis, and all such objections are specifically preserved.  The admissibility into evidence in any

Coordinated Action of any material provided or obtained in accordance with this Order will be determined by the Court in which such action is pending.

**G.       Implementing This Order**

38.       Any court before which a Related Action is pending may join this Order, thereby authorizing the parties to that Related Action to participate in coordinated discovery as and to the extent authorized in this Order.

39.       Each Court that joins this Order will retain jurisdiction to modify, rescind and/or enforce the terms of this Order.

SO ORDERED.

Date:   September __, 2014
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

Attachments:

Exhibit A:      MDL Discovery Orders
Exhibit B:      MDL Co-Lead Counsel, Plaintiff Liaison Counsel, and Federal/State Liaison Counsel

# EXHIBIT A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/10/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*
-------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

[**Protecting Confidentiality and Privileged Material**

Defendants and Lead Counsel for the Multidistrict Litigation ("N

having consented thereto, and for good cause shown,

WHEREAS, the Court has advised all Parties that there is a presump

access, particularly in a case of this nature, and that unless the Court dete

written application — that there is a reason justifying something be filed in r

seal, any filings are public and publicly available to the press and the public

WHEREAS, it is the Court's sole province to authorize a pleading a

filed under seal; the Court grants this protective order recognizing that I

include "blanket confidential designations" so as to immediately provide

millions of pages of documents.    Plaintiffs will be allowed to chal

document designation as discovery proceeds within the framework of this Or

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the c

information, including the substance and content thereof, designated by any p

and proprietary, and produced by that party in response to any formal or ii

discovery in any of the cases consolidated in the above-captioned MDL 2543

the terms of this Consent Protective Order ("Protective Order" or "Order"), as

The purpose of this Order is to expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, and protect material to be kept confidential or privileged, pursuant to the Court's inherent authority, its authority under Federal Rule of Civil Procedure 26(c) and Federal Rule of Evidence 502(d), and the judicial opinions interpreting such Rules.

## I.   CONFIDENTIALITY.

1.   *Information.* "Information" includes the contents of documents and other data, any data and information associated with documents (whether physical or in electronic format), oral and written testimony, answers to interrogatories, admissions, and data and information derived from objects other than documents, produced or disclosed in these proceedings by any party to the above-captioned litigation or by any third party (the "Producing Party") to any other party or parties, subject to the provisions in Paragraphs 5 and 6 of this Order (the "Receiving Party").

2.   *Confidentiality Designations.* This Order covers Information that the Producing Party designates "Confidential" or "Highly Confidential." Information may be designated as Confidential when (i) the Producing Party reasonably believes that the Information constitutes, reflects, discloses or contains Information subject to protection under Federal Rule of Civil Procedure 26(c) or other confidential, non-public information, or (ii) the Producing Party reasonably believes that the documents or information includes material protected by federal, state, or foreign data protection laws or other privacy obligations, including (but not limited to) consumer and third-party names, such as the first and last names of persons involved in an accident or of other individuals not directly involved in an accident but included in documents related to an accident; Social Security Numbers; health information relating to the past, present or future physical or mental health or condition of an individual; the provision of health care to an

2

individual, or the past, present or future payment for the provision of health care to an individual; driver's license or other identification numbers; personal financial information such as tax information, bank account numbers, and credit card numbers; insurance claim numbers; insurance policy numbers; VIN numbers; or the personal email addresses or other contact information of GM board members and employees ("Personal Information").   Information may be designated as Highly Confidential when: (i) the Producing Party reasonably believes that the documents or information contain competitively sensitive information regarding future product designs or strategies, commercial or financial information, or other sensitive information, the disclosure of which to third party competitors may result in commercial harm; or (ii) the Producing Party reasonably believes that the documents or information includes Personal Information. Subject to provisions of Paragraph 3(b), the parties shall make Confidential and Highly Confidential designations in good faith to ensure that only those documents that merit Confidential or Highly Confidential treatments are so designated.

3.    *Procedure for Confidentiality Designations.*

(a)    *Designation.*    To designate Information as Confidential or Highly Confidential, a Producing Party must mark it or identify it on the record as such.   Either designation may be withdrawn by the Producing Party.

(b)    *Bulk Designation.*    To expedite production of potentially voluminous materials — such as the productions referenced in Paragraph 11(d) — a Producing Party may, but is not required to, produce materials without a detailed confidentiality review, subject to the "clawback" procedures in Paragraphs 3(f) and 10 of this Order or as otherwise agreed to.  In so doing, the Producing Party may designate those collections of documents that by their nature contain "Confidential" or "Highly Confidential"

3

Information with the appropriate designation notwithstanding that some of the documents within the collection may not qualify for such designation. The materials that may be so designated shall be limited to the types or categories of documents that the Producing Party reasonably believes may contain Highly Confidential Information, as defined in Paragraph 2 of this Order. Notwithstanding the foregoing, a Receiving Party may at any time challenge the designation of one or more particular documents as Confidential or Highly Confidential on the grounds that it does not or they do not qualify for such protection. If the Producing Party agrees, it must promptly notify all Receiving Parties that it is withdrawing or changing the designation.

(c)    *Marking.* All or any part of a document, tangible object, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the face of the document and each page so designated. With respect to tangible items or electronically stored Information produced in native format, the appropriate legend shall be marked on the face of the tangible item or media containing electronically stored Information, if practicable, or by written notice to the Receiving Party at the time of disclosure, production or filing that such tangible item or media is Confidential or Highly Confidential or contains such Information.

(d)    *Redaction.* Any Producing Party may redact from the documents and things it produces any Highly Confidential Information, as defined in Paragraph 2, or any matter that the Producing Party claims is subject to attorney-client privilege, work-product protection, a legal prohibition against disclosure, or any other privilege or immunity. The

4

Producing Party shall mark each thing where matter has been redacted with a legend stating "REDACTED," "CBI," "PRIVACY," "PII," "NON-RESPONSIVE," "PRIVILEGED," or a comparable notice. Where a document consists of more than one page, each page on which Information has been redacted shall be so marked. The Producing Party shall preserve an unredacted version of each such document. The process for challenging the designation of redactions shall be the same as the process for challenging the designation of Confidential Material and Highly Confidential Material set forth in Paragraph 6. If counsel for the Producing Party agrees that Information initially redacted shall not be subject to redaction or shall receive alternative treatment, or if the Court orders that those materials shall not be subject to redaction or shall receive alternative treatment, and the Information is subsequently produced in unredacted form, then that unredacted Information shall bear the legend "Highly Confidential" and shall continue to receive the protections and treatment afforded to documents bearing the Highly Confidential designation.

(e)    *Timing.* Subject to the provisions of Paragraphs 3(f) and 10, documents and other objects must be designated as Confidential or Highly Confidential, and redactions must be applied to Highly Confidential Information, before disclosure. In the event that a Producing Party designates some or all of a witness's deposition testimony as Confidential or Highly Confidential, the specific page and line designations over which confidentiality is claimed must be provided to the Receiving Party within thirty (30) days of receipt of the final transcript, provided, however, that the Receiving Party will consider reasonable requests for an extension of the deadline. Deposition testimony shall be treated as Highly Confidential pending the deadline.

(f)    *Errors.* Disclosure of Confidential or Highly Confidential Information does not waive the confidential status of such Information.  In the event that Confidential or Highly Confidential Information is disclosed without a marking or designation of it as such, the Producing Party may thereafter assert a claim or designation of confidentiality, and promptly provide replacement media.  Thereafter, the Receiving Party must immediately return the original Confidential or Highly Confidential Information and all copies of the same to the Producing Party and make no use of such Information.

4.    *Challenges to Confidentiality Designations.*  Any party may object to the propriety of the designation of specific material as Confidential or Highly Confidential by serving a written objection upon the Producing Party's counsel. The Producing Party or its counsel shall thereafter, within ten calendar days, respond to such objection in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation.  If the objecting party and the Producing Party are subsequently unable to agree upon the terms and conditions of disclosure for the material(s) in issue, the objecting party may move the Court for an order withdrawing the designation as to the specific designation on which the Parties could not agree. Counsel may agree to a reasonable extension of the ten-day period, if necessary.  On such a motion, the Producing Party shall have the burden of proving that "good cause" exists for the designation at issue and that the material is entitled to protection as Confidential or Highly Confidential Information under applicable law.  In the event a motion is filed by the objecting party, the Information at issue shall continue to be treated in the manner as designated by the Producing Party until the Court orders otherwise.  A Receiving Party does not waive its right to challenge a Confidential or Highly Confidential designation by electing not to raise a challenge promptly after the original designation is disclosed and may challenge a designation at such time as the Receiving Party deems

6

appropriate. Each party shall bear its own fees and costs related to any challenges of confidentiality designations under this Protective Order.

5.    *Access to Confidential Information.*  The Receiving Party may share Confidential Information with only the following persons and entities related to each of the cases consolidated in the above-captioned MDL 2543:

(a)    The Court and its staff;

(b)    Parties to any of the actions consolidated in the above-captioned MDL 2543;

(c)    Parties' counsel;

(d)    Counsel (and their staff) for parties to any of the federal or state court actions alleging injuries related to the ignition switch and/or other parts in vehicles recalled by General Motors LLC that are the subject of MDL 2543 ("Related Litigation"), provided that (i) the proposed recipient agrees to be bound by this Order and signs the certificate attached hereto as Appendix A; (ii) the proposed recipient agrees to be bound by any discovery-related or protective Orders, including Federal Rule of Evidence 502(d) Orders, that may be entered in MDL 2543; (iii) counsel for the party that supplies the Confidential Information to such recipient maintains copies of the certificates and a log identifying each such recipient; and (iv) upon a showing by a party that Confidential Information has been used in violation of this Order, counsel shall provide copies of the log and certificate to the Court for *in camera* review;

(e)    Court reporters (including audio and video), interpreters, translators, copy services, graphic support services, document imaging services, and database or coding services retained by counsel, provided that these individuals or an appropriate company

7

official with authority to do so on behalf of the company executes a certification attached hereto as Appendix A;

    (f)    Special masters;

    (g)    Mediators;

    (h)    The direct staff of those identified in Paragraphs 5(c), 5(f), and 5(g);

    (i)    Deponents and trial witnesses during a deposition or trial who have a reasonable need to see the Confidential Information in order to provide testimony, provided such witness executes a certification in the form attached hereto as Appendix A;

    (j)    Any expert or consultant, and his, her or its staff, hired by a party for litigation purposes who agrees to be bound by this Order and signs the certificate attached hereto as Appendix A; and

    (k)    Any other person to whom the Producing Party, in writing, authorizes disclosure.

6.    *Access to Highly Confidential Information.* The Receiving Party may share Highly Confidential Information with only the following persons and entities related to each of the cases consolidated in the above-captioned MDL 2543:

    (a)    The Court and its staff;

    (b)    Court reporters (including audio and video), interpreters, translators, copy services, graphic support services, document imaging services, and database or coding services retained by counsel, provided that these individuals or an appropriate company official with authority to do so on behalf of the company executes a certification attached hereto as Appendix A;

8

(c)    Mediators and their staff, provided that such persons execute a certification attached hereto as Appendix A;

(d)    Co-lead counsel, executive committee members, and liaison counsel in the above-captioned MDL 2543, as well as counsel for parties in Related Litigation, the Receiving Party's external counsel, and a Receiving Party's internal counsel whose primary responsibilities include overseeing litigation in the above-captioned MDL 2543, and their direct staff, provided that (i) the proposed recipient agrees to be bound by this Order and signs the certificate attached hereto as Appendix A; (ii) the proposed recipient agrees to be bound by any discovery-related or protective Orders, including Federal Rule of Evidence 502(d) Orders, that may be entered in MDL 2543; (iii) counsel for the party that supplies the Highly Confidential Information to such recipient maintains copies of the certificates and a log identifying each such recipient; and (iv) upon a showing by a party that Highly Confidential Information has been used in violation of this Order, counsel shall provide copies of the log and certificate to the Court for *in camera* review;

(e)    Persons who prepared, received, or reviewed the Highly Confidential Information prior to its production and who execute a certification in the form attached hereto as Appendix A;

(f)    A witness during a hearing, a deposition, or preparation for a deposition who is a current employee of the Party that produced the applicable document(s) or who appears, based upon the document itself or testimony in a deposition, to have specific knowledge of the contents of the documents designated "HIGHLY CONFIDENTIAL," provided such witness executes a certification in the form attached hereto as Appendix A;

(g)    Outside experts, consultants, or other agents retained by a party for litigation purposes, provided such expert, consultant, or agent executes a certification in the form attached hereto as Appendix A; and

(h)    Any other person to whom the Producing Party, in writing, authorizes disclosure.

7.    *Use of Confidential and Highly Confidential Information.*

(a)    *Restricted to This Proceeding and Related Litigation.*    Confidential Information and Highly Confidential Information must be used only in this proceeding, or in any Related Litigation, except that nothing in this Protective Order shall be construed as limiting any party from disclosing a potential safety defect to an appropriate government agency.

(b)    *Acknowledgement.* Subject to the restrictions contained in Paragraphs 5 and 6, the persons identified in Paragraphs 5 and 6 may receive or review Confidential or Highly Confidential Information. All persons specifically designated in Paragraphs 5 and 6 must execute the certificate attached hereto as Appendix A or affirm on the record that he or she will not disclose Confidential or Highly Confidential Information revealed during a deposition and will keep the transcript confidential.

(c)    *Filings.* All parties shall make reasonable efforts to avoid requesting the filing of Confidential or Highly Confidential Information under seal by, for example, redacting or otherwise excluding from a submission to the Court any such Information not directly pertinent to the submission. Where not reasonably possible, any Party wishing to file a document or paper containing Confidential or Highly Confidential Information may request by motion that such Information be filed under seal.

(d)    *Hearings.* In the event that a Receiving Party intends to utilize Confidential

or Highly Confidential Information during a pre-trial hearing, such Receiving Party shall

provide written notice no less than five days prior to the hearing, to the Producing Party

and to the Court, except that shorter notice may be provided if the Receiving Party could

not reasonably anticipate the need to use the document at the hearing five days in advance,

in which event notice shall be given immediately upon identification of that need. The use

of such Confidential or Highly Confidential Information during the pre-trial hearing shall

be determined by agreement of the parties or by Order of the Court.

(e)    *Trial.* The use of Confidential or Highly Confidential Information during

the trial shall be determined by Order of the Court.

(f)    *Subpoena by Other Courts or Agencies.*    If another court or an

administrative agency subpoenas or otherwise orders production of Confidential or Highly

Confidential Information that any Party or other person has obtained under the terms of

this Order, the Party or other person to whom the subpoena or other process is directed

must notify the Producing Party in writing within five days of all of the following: (a) the

discovery materials that are requested for production in the subpoena; (b) the date by which

compliance with the subpoena is requested; (c) the location at which compliance with the

subpoena is requested; (d) the identity of the party serving the subpoena; and (e) the case

name, jurisdiction and index, docket, complaint, charge, civil action or other identification

number or other designation identifying the litigation, administrative proceeding or other

proceeding in which the subpoena or other process has been issued. Confidential or Highly

Confidential Information shall not be produced prior to the receipt of written notice by the

Producing Party and after a reasonable opportunity to object has been offered. Further, the

party or person receiving the subpoena or other process will cooperate with the Producing Party in any proceeding related thereto. The Producing Party will bear the burden and all costs of opposing the subpoena on grounds of confidentiality.

8.      *Return of Discovery Materials.*  Within ninety days of the termination of any party from all proceedings in this proceeding, that party, its employees, attorneys, consultants and experts must destroy or return (at the election of the Receiving Party) all originals and/or copies of documents with Confidential Information or Highly Confidential Information, provided however, that the obligation to destroy or return such documents that is imposed on counsel, consultants and experts representing multiple parties shall not occur until the last of their represented parties has been terminated from the foregoing referenced proceedings. At the written request of the Producing Party, any person or entity having custody or control of recordings, notes, memoranda, summaries or other written materials, and all copies thereof, related to or containing discovery materials produced by the Producing Party (the "Discovery Materials") shall deliver to the Producing Party an affidavit certifying that reasonable efforts have been made to assure that all Discovery Materials (except for privileged communications, work product and court-filed documents as stated above) have been destroyed or delivered to the Producing Party in accordance with the terms of this Protective Order. A Receiving Party is permitted to retain a list of the documents by Bates Number that are produced by a Producing Party under this Protective Order.

## II.    PRIVILEGES.

9.      *No Waiver by Disclosure.*

(a)      This Order is entered, *inter alia*, pursuant to Rule 502(d) of the Federal Rules of Evidence.  If a Producing Party discloses information in connection with the pending litigation that the Producing Party thereafter claims to be privileged or protected

by the attorney-client privilege or attorney work product protection ("Disclosed Protected Information"), the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Protected Information and its subject matter in this proceeding or in any other federal or state proceeding.

(b)    A Producing Party may assert in writing attorney-client privilege or work product protection with respect to Disclosed Protected Information. The Receiving Party must—unless it contests the claim of attorney-client privilege or work product protection in accordance with sub-paragraph (c)—within five business days of receipt of that writing, (i) return or destroy all copies of the Disclosed Protected Information, and (ii) provide a certification of counsel that all of the Disclosed Protected Information has been returned or destroyed. Within five business days of receipt of the notification that the Disclosed Protected Information has been returned or destroyed, the Producing Party must produce a privilege log with respect to the Disclosed Protected Information.

(c)    If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must — within five business days of receipt of the claim of privilege or protection — move the Court for an Order compelling disclosure of the Disclosed Protected Information (a "Disclosure Motion"). The Receiving Party must seek to file the Disclosure Motion under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure, and may not disclose, rely on or refer to any of the Disclosed Protected Information. Pending resolution of the Disclosure Motion, the Receiving Party must sequester the Disclosed Protected Information and not

13

use the Disclosed Protected Information or disclose it to any person other than as required by law.

(d)    The parties may stipulate to extend the time periods set forth in sub-paragraphs (ii) and (iii).

(e)    Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

(f)    The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an *in camera* review of the Disclosed Protected Information.

10.    *Receiving Party's Obligation*. Nothing in this Order shall relieve counsel for any Receiving Party of any existing duty or obligation, whether established by case law, rule of court, regulation or other source, to return, and not to review, any privileged or work product materials without being requested by the Producing Party to do so. Rather, in the event a Receiving Party becomes aware that it is in possession of what appears to be privileged documents or materials, then counsel for the Receiving Party shall immediately: (i) cease any further review or use of that document or material and (ii) notify the Producing Party of the apparent production of Disclosed Protected Information, requesting whether the documents or materials are Disclosed Protected Information. In the event the Producing Party confirms the documents or material are Disclosed Protected Information, the Receiving Party shall (i) promptly return or destroy all copies of the

14

Disclosed Protected Information in its possession and (ii) take reasonable steps to retrieve all copies of the Disclosed Protected Information distributed to other counsel or non-parties.

11.    *Privilege Log Production.*

(a)    Unless otherwise provided in this Order, any document falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party on a privilege log, which the Producing Party shall produce in an electronic format that allows text searching. For administrative purposes, an e-mail thread contained within a single document need only be recorded once on the Producing Party's privilege log, even if a privilege is asserted over multiple portions of the thread. Redacted documents need not be logged as long as (a) for emails, the bibliographic information (i.e. to, from, cc, bcc, recipients, date and time) is not redacted, and the reason for the redaction is noted on the face of the document; and (b) for non-email documents, the reason for the redaction is noted on the face of the document. Documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

(b)    Privilege log identification is not required for work product created by counsel, or by an agent of counsel other than a party, after January 31, 2014, or for post-January 31, 2014 communications exchanged between or among: (i) the Producing Party and their counsel; (ii) counsel for the Producing Party; (iii) counsel for Plaintiffs; and/or (iv) counsel for Defendants. Privilege log identification is also not required for: (i) communications between a Producing Party and its counsel in proceedings other than MDL 2543; (ii) work product created by a Producing Party's counsel, or by an agent or contractor

of counsel other than the Producing Party, in proceedings other than MDL 2543; (iii) internal communications within: (a) a law firm representing a party or (b) a legal department of a party that is a corporation or another organization.

(c)    In order to avoid unnecessary cost, the parties are encouraged to identify categories of privileged information that may be logged categorically rather than document-by-document. (See Advisory Committee Note to Fed. R. Civ. P. 26(b)(5) (1993).) The parties shall meet and confer on this issue and raise with the Court either: (i) agreements reached with respect to documents that the parties have agreed to log by category, or (ii) proposals for logging other than document-by-document that have been proposed by one or more Producing Parties, but which have not been agreed to by the Receiving Parties. The parties should keep in mind that the Court's intention is to enable the parties to minimize the cost and resources devoted to privilege logging, while enabling the Court and Receiving Party to assess the assertions of privilege made by the Producing Party.

(d)    The Defendants, where applicable, will post to the MDL 2543 Document Depository privilege logs relating to (i) the productions made in response to the plaintiffs' requests for production in any Related Litigation (as defined in Paragraph 5(d)) at the same time these logs are due in the Related Litigation; (ii) the productions made in response to the National Highway Traffic Safety Administration's pre-August 22, 2014 requests at the same time these logs are due in *Melton v. General Motors LLC*, No. 14A-1197-4 (Ga. Cobb Cnty. St.) ("*Melton*"); and (iii) certain productions made in response to Congressional Committees' pre-August 22, 2014 requests at the same time these logs are due in *Melton*. Thereafter, a Producing Party shall produce privilege logs no later than thirty (30) days

16

after withholding from production documents pursuant to a claim of privilege, but in any event the Defendants are not required to produce supplemental privilege logs any earlier than sixty (60) days after the initial document production deadline in *Melton*.

## III.    MISCELLANEOUS.

12.    *Violations of the Protective Order by a Receiving Party.*  In the event that any person or party violates the terms of this Protective Order, the aggrieved Producing Party should apply to the Court to obtain relief against any such person or party violating or threatening to violate any of the terms of this Protective Order.  In the event that the aggrieved Producing Party seeks injunctive relief, it must direct the petition for such relief to this Court.  To the extent the same document or categories of documents are at issue in both the above-captioned MDL 2543 and in any Related Litigation, the Parties will attempt first to resolve the issue in the MDL and before this Court.  The parties and any other person subject to the terms of this Protective Order agree that this Court shall retain jurisdiction over it and them for the purpose of enforcing this Protective Order.

13.    *Violations of the Protective Order by Disclosure of Personal Information.*  In the event that any person or party violates the terms of this Protective Order by disclosing Confidential Personal Information or Highly Confidential Information relating to an individual third party, as defined in Paragraph 2 of this Order, or in the event that any person or party breaches the terms of the Protective Order in a manner that requires disclosure to a third party under pertinent privacy laws or otherwise, it shall be the responsibility of the breaching party to contact that third party and to comply with any laws or regulations involving breaches of Personal Information.

14.    *Protective Order Remains In Force:*  This Protective Order shall remain in force and effect until modified, superseded, or terminated by order of the Court made upon reasonable

written notice.  Unless otherwise ordered, or agreed upon by the parties, this Protective Order shall

survive the termination of this action.  The Court retains jurisdiction even after termination of this

action to enforce this Protective Order and to make such amendments, modifications, deletions

and additions to this Protective Order as the Court may from time to time deem appropriate.

SO ORDERED.

Date:    September 10, 2014
         New York, New York

_____
JESSE M. FURMAN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

IN RE:                                                          14-MD-2543 (JMF)
GENERAL MOTORS LLC IGNITION SWITCH                              14-MC-2543 (JMF)
LITIGATION
*This Document Relates to All Actions*

-------------------------------------------------------------------------x

## APPENDIX A TO PROTECTIVE ORDER - AGREEMENT

I hereby certify that I have read the Order Protecting Confidentiality ("Order") entered in

the above-captioned action and that I understand the terms thereof. I agree to be bound by the

Order. If I receive documents or information designated as Confidential or Highly Confidential,

as those terms are defined in the Order, I understand that such information is provided to me

pursuant to the terms and restrictions of the Order. I agree to hold in confidence and not further

disclose or use for any purpose, other than as permitted by the Order, any information disclosed to

me pursuant to the terms of the Order. I further agree to submit to the jurisdiction of this Court for

purposes of enforcing the Order and agree to accept service of process in connection with this

action or any proceedings related to enforcement of the Order by certified letter, return receipt

requested, at my principal residence, in lieu of personal service or other methods of service.

I understand that these certifications are strictly confidential, that counsel for each party

are maintaining the certifications without giving copies to the other side, and that the parties

expressly agreed and the Court ordered that except in the event of a violation of this Order, the

parties will make no attempt to seek copies of the certifications or to determine the identities of

persons signing them. I further understand that if the Court should find that any disclosure is

necessary to investigate a violation of this Order, the disclosure will be limited to outside counsel

only, and outside counsel shall not disclose any information to their clients that could tend to

identify any certification signatory unless and until there is specific evidence that a particular

Case 11-14-md-02543-JMF   Document 32941   Filed 09/10/14   Page 280 of 251

signatory may have violated the Order, in which case limited disclosure may be made with respect to that signatory.

_____
(signature)

_____
(print name)

Sworn to and subscribed before me this ____day of
_____, 2014.

_____
Notary Public

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  09/10/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to All Actions*

----------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Regarding Production of Documents and Electronic I**

WHEREAS, Defendants and Lead Counsel for the Plaintiffs have

the procedures and format relating to the production of documents and thin

on a format for all such productions, it is SO ORDERED:

1.    **General Format of Production.**   The parties agree to

(including Hard Copy scanned images) in the electronic format described b

the MDL 2543 Document Depository by a party (the "Producing Party") shall

to constitute production to all parties (the "Receiving Party").

2.    **Hard Copy Scanned Images.**   To the extent practicable,

images shall be produced in the manner in which those documents were kept in

of business.  Where Hard Copy scanned images have identification spines, "p

other labels, the information on the label shall be scanned and produced to th

The parties will utilize reasonable best efforts to ensure that Hard Copy scanne

production are produced in consecutive Bates number order.

3.    **Images.**   Images will be produced as Single Page Group I

reasonably practicable, Black and White TIF images named as the Bates numbe

numbers will be branded in the lower right of the image and additional legends a

left or lower center (if applicable).  If the Receiving Party encounters a document where color is
needed to comprehend the content, the Producing Party will re-produce that document in a color
format upon reasonable request.  Common file types that will likely require color will be produced
in native format as noted below.  The following formatting will be applied to Microsoft Office
documents:

> (a)    Word Documents will be imaged showing Track Changes.

> (b)    Excel files with redactions will be imaged un-hiding any hidden rows and/or
columns and/or sheets.

> (c)    PowerPoint files will be imaged in Notes Pages.

4.    **Native Files**.  In addition to TIF images, native files will be provided for
PowerPoint, and JPG when corresponding images and any embedded items are not redacted.  For
files that cannot be imaged (e.g., .wav, .mpeg and .avi) or become unwieldy when converted to
TIF (e.g., source code, large diagrams, etc.), the producing party will produce a placeholder (a
single-page TIF slipsheet indicating that the native item was produced) along with the file itself in
native format.  Excel and CSV files will only be provided in native format with a placeholder,
unless they have redactions.  Redacted documents will be produced in TIF format.  The native file
will be named as the first Bates number of the respective document.  The corresponding load file
shall include native file link information for each native file that is produced.

5.    **Agreed File Types Other Than Database Records**.  The Producing Party will
process the file types listed in Appendix B, unless processing is disproportionate, or overly broad
or unduly burdensome, in which case the parties will meet and confer.  The Producing Party will
also meet and confer in good faith with the Receiving Party regarding requests to modify the file
types listed in Appendix B

2

6.      <u>Metadata</u>.  A standard Concordance delimited load file (.DAT), with field header information added as the first line of the file, will be provided with each production.  Documents will be produced with related metadata (to the extent it exists) as described in the attached Appendix A specifications, unless as otherwise provided herein.

7.      <u>Image Cross Reference</u>.  A standard Opticon (.OPT) file will be provided with each production that contains document boundaries.

(a)      <u>Format</u>:

<Bates Number>,<Not Required >,<Relative Path to TIF Image>,<Y if First Page of Document, Else Blank>,,,<If First Page of Document, Total Page Count>

(b)      <u>Example</u>:

GM000000001,,\IMAGES\001\GM00000001.TIF,Y,,,,2
GM000000002,,\IMAGES\001\GM00000002.TIF,Y,,,,
GM000000003,,\IMAGES\001\GM00000003.TIF,Y,,,,1

8.      <u>Text</u>.  Document level text files (.TXT) will be provided for each document produced.  Text files will be named the first Bates number of the respective document.  Extracted text will be provided when it exists for non-redacted documents.  OCR Text will be provided for documents when no extracted text exists or when the document is redacted.

9.      <u>De-Duplication</u>.  Data will be de-duplicated across custodians following industry standard de-duplication algorithms.  Additional custodians who had a copy prior to de-duplication will be populated in the ALL_CUSTODIANS field.

10.      <u>Related Documents</u>.  Email attachments will be extracted and related back to the respective email via the ATTACH_BEGIN field referenced in Appendix A.  Embedded ESI documents (e.g., a spreadsheet embedded within a word processing document) will be extracted and related back to the respective top level parent document (e.g., standalone file, email message,

3

etc.) via the ATTACH_BEGIN field referenced in Appendix A. Related documents will be produced within a continuous Bates range.

11. **Confidentiality Designations**. If a particular document has a confidentiality designation, the designation shall be stamped on the face of all TIF images pertaining to such document, in the lower left-hand corner of the document, or as close thereto as possible while preserving the underlying image. If the receiving party believes that a confidentiality stamp obscures the content of a document, then the Receiving Party may request that the document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including the Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any document produced by any Producing Party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the document.

12. **Specialized Databases**. The parties agree to meet and confer regarding the production of reasonably accessible enterprise database-application files (e.g., SQL and SAP) and non-standard ESI responsive to the parties' requests to determine the most reasonable form of production based on the specific circumstances.

13. **Metadata Of Redacted Or Withheld Documents**. When a document or email is redacted or withheld, all metadata on a family level is excluded from the metadata DAT file.

14. **Encoding Format**. Text files, concordance load files, and Opticon image reference files will be provided in UTF-8 encoding.

15. **Search Terms**. Other than the document production referenced in the parties' proposed September 4, 2014 status conference letter (ECF No. 272 § 1), a Producing Party will

produce ESI in its possession according to agreed-upon search term criteria (including custodians and date ranges), except in instances where the parties agree that an alternative reasonable search would be more appropriate. Documents identified by search term criteria may be reviewed for privilege, confidentiality, redactions, and relevance or responsiveness prior to production.

16.   **Not Reasonable Accessible Sources**. The parties have taken reasonable steps to identify and/or collect potentially relevant ESI stored on reasonably accessible sources. On or before October 1, 2014, the parties shall provide a description of sources of electronic data which may have potentially relevant information, but which the parties do not intend to search on the basis that such data is alleged to be not reasonably accessible due to burden or cost (in accordance with Rule 26(b)(2)(B)).

17.   **ESI Discovery Dispute Resolution.** Prior to bringing any discovery dispute to the Court, the parties must attempt to resolve the dispute on their own, in good faith, and in accordance with the procedures and requirements outlined in the Court's Individual Rules and Practices in Civil Cases and the Court's standard Case Management Plan and Scheduling Order, both of which are available at http://www.nysd.uscourts.gov/judge/Furman.

18.   **Disclosed Protected Information And/Or Otherwise Privileged Information**. Information produced pursuant to this Order that is subject to a claim of privilege shall be treated in a manner consistent with any order entered in this matter pursuant to Federal Rule of Civil Procedure 502(d).

19.    **Costs of MDL 2543 Production**.  The parties shall share the cost of the MDL 2543

Document Depository.  Each party shall bear its own costs of production to the MDL 2543

Document Depository.


    SO ORDERED.

Dated:  September 10, 2014
    New York, New York                                           _____
                                                                   JESSE M. FURMAN
                                                                   United States District Judge

Case 14-10979-CSS   Doc 3025   Filed 09/12/14   Page 51 of 51
Appendix A

| Field | Description | Hard Copy | Email | Attachment OR Standalone File |
|---|---|---|---|---|
| BATES_BEGIN | First bates number assigned to the first page of the document. | X | X | X |
| BATES_END | Last bates number assigned to the last page of the document. | X | X | X |
| ATTACH_BEGIN | First bates number assigned to parent. | X | X | X |
| ATTACH_END | Last bastes number assigned to the last child. | X | X | X |
| PAGE_COUNT | Number of images provided for the document | X | X | X |
| CUSTODIAN | Individual/Source assigned to the record at collection time | X | X | X |
| ALL_CUSTODIANS | Additional custodians who had a copy prior to de-duplication. | | | X |
| DOC_TITLE | File property Title | | | X |
| DOC_SUBJECT | File property Subject | | | X |
| CREATED_DATE | File system create date (YYYYMMDD) [Normalized to UTC] | | | X |
| CREATED_TIME | File system create time (24 HR) [Normalized to UTC] | | | X |
| LAST_MODIFY_DATE | File system last modify date (YYYYMMDD) [Normalized to UTC] | | | X |
| LAST_MODIFY_TIME | File system last modify time (24 HR) [Normalized to UTC] | | | X |
| LAST_SAVED_BY | File property Last Saved By | | | X |
| DOC_TYPE | Category of file (e.g. MSG, ATTACH, USERFILE) | X | X | X |
| FILE_TYPE | Type of file (e.g. Word, Excel) | | | X |
| FILE_NAME | Name of file. | | | X |
| FULL_PATH | Path to file as collected. | | | X |
| FILE_EXT | Extension of the file. | | | X |
| AUTHOR | Email FROM value. | | X | |
| CC | Email CC value. | | X | |
| BCC | Email BCC value. | | X | |
| RECIPIENT | Email TO value. | | X | |
| DATE_SENT | Date email sent (YYYYMMDD) [Normalized to UTC] | | X | |
| TIME_SENT | Time email sent (24 HR) [Normalized to UTC] | | X | |
| DATE_RECEIVED | Date email received (YYYYMMDD) [Normalized to UTC] | | X | |
| TIME_RECEIVED | Time email received (24 HR) [Normalized to UTC] | | X | |
| DATE_APPT_START | Date email calendar item start (24 HR)  [Normalized to UTC]. | | X | |
| TIME_APPT_START | Time email calendar item end (24 HR)  [Normalized to UTC] | | X | |
| EMAIL_FOLDER | Folder where email resided within email container. | | X | |
| SUBJECT | Email Subject value. | | X | |
| TEXT_LINK | Relative path to the document level text file (e.g. \TEXT\0001\GM000000001.TXT) | X | X | X |
| NATIVE_LINK | Relative path to native file (if produced), (.e.g. \NATIVES\001\GM000000001.XLS) | | | X |
| MD5_HASH | Hash of native file. | | X | X |

**APPENDIX B**

123
7Z
ACCDB
ADP
ARJ
BAK
BMP
CSV (to be processed as Microsoft Excel)
DBF
DBX
DOC
DOCX
DOT
DOTM
DOTX
DWG
EML
EXE (only for self-extracting archives)
GIF (will only be processed if it is an attachment to a parent email)
GZ
GZIP
HTM
HTML
ID
JPG
MDB
MHT
MHTML
MPP
MSG
NSF
ODT
OTT
OTH
ODM
ODP
ODG
OTP
ODS
OTS
OST
PDF
PNG (will only be processed if it is an attachment to a parent email)
POT
POTX
POTM

PPD
PPS
PPSM
PPSX
PPT
PPTM
PPTX
PS
PSD
PST
PUB
RAR
RM
RTF
SDW
SHTML
SWF
TAR
TC
TIF
TXT
UOP
UOF
UOS
VMDK
VHD
VSD
WAV
WK1
WKS
WK3
WK4
WPC
WPD
XLS
XLW
XLSB
XLSM
XLSX
XLT
XLTM
XLTX
XPS
Z
ZIP

# EXHIBIT B

### GM Leadership Contact Information

**_Co-Lead Counsel_:**

Steve W. Berman, Esq.
Hagens Berman Sobol Shapiro, LLP
1918 Eighth Ave., Suite 3300
Seattle, WA  98101
Ph: 206.623.7292
Email: steve@hbsslaw.com

Elizabeth J. Cabraser, Esq.
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery St., 29th Floor
San Francisco, CA 94111
Ph: 415.956.1000
Email: ecabraser@lchb.com

Robert C. Hilliard, Esq.
Hilliard Muñoz Gonzales, LLP
719 S. Shoreline Blvd. #500
Corpus Christi, TX 78401
Ph: 361.882.1612
Email: bobh@hmglawfirm.com

**_Executive Committee_:**

David Boies, Esq.
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY  10504
Ph: 914.749.8200
Email:  dboies@bsfllp.com

Lance A. Cooper, Esq.
The Cooper Firm
531 Roselane St., Suite 200
Marietta, GA 30060
Ph: 770.427.5588
Email: lance@thecooperfirm.com

*Barrios, Kingsdorf & Casteix, LLP*                    9/12/2014

Melanie Cyganowski, Esq.
Otterbourg, Steindler, Houston & Rosen
230 Park Avenue
New York, NY 10169-0075
Ph: 212-661-9100
Email: mcyganowski@otterbourg.com

Adam J. Levitt, Esq.
Grant & Eisenhofer, P.A.
30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Ph: 312.214.0000
Email: alevitt@gelaw.com

Dianne M. Nast, Esq.
Nast Law LLC
1101 Market St., Suite 2801
Philadelphia, PA 19107
Ph: 215.923.9300
Email: dnast@nastlaw.com

Peter Prieto, Esq.
Podhurst Orseck, P.A.
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
Ph: 305.358.2800
Email: pprieto@podhurst.com

Frank Pitre, Esq.
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Ph: 650.697.6000
Email: fpitre@cpmlegal.com

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Ph: 843.216.9159
Email: jrice@motleyrice.com

*Barrios, Kingsdorf & Casteix, LLP*                                                 9/12/2014

Mark P. Robinson, Jr., Esq.
Robinson Calcagnie Robinson Shapiro Davis, Inc.
19 Corporate Plaza
Newport Beach, CA 92660
Ph: 949.720.1288
Email: mrobinson@rcrsd.com

Marc M. Seltzer, Esq.
Susman Godfrey, L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067
Ph: 310.789.3102
Email: mseltzer@susmangodfrey.com

***Plaintiff Liaison Counsel***:

Robin L. Greenwald, Esq.
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Ph: 212.558.5500
Email: rgreenwald@weitzlux.com

***Federal/ State Liaison Counsel***:

Dawn M. Barrios, Esq.
Barrios, Kingsdorf & Casteix, LLP
701 Poydras St., Suite 3650
New Orleans, LA 70139
Ph: 504.524.3300
Email: barrios@bkc-law.com

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

14-MD-2543 (JMF)
14-MC-2543 (JMF)

*This Document Relates to All Actions*

[PROPOSED] ORDER NO. __

------------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Joint Coordination Order]**

WHEREAS, a federal proceeding captioned *In re General Motors LLC Ignition Switch Litigation*, MDL Docket No. 2543 (the "MDL Proceeding"), is pending before the Hon. Jesse M. Furman in the United States District Court for the Southern District of New York (the "MDL Court");

WHEREAS, several other actions involving the same subject matter as the MDL Proceeding have been filed in the courts of a number of states and in federal courts (the "Related Actions");[1]

WHEREAS, the MDL Proceeding and the Related Actions involve many of the same factual allegations and circumstances and many of the same parties, and discovery in those various proceedings will substantially overlap;

WHEREAS, in order to achieve the full benefits of this MDL proceeding, the MDL Court has and will continue to encourage coordination with courts presiding over related cases, to the extent that those courts so desire, up to and including issuance of any joint orders that might allow full cooperation as between and among the courts and the parties. As the MDL Court indicated at the initial case management conference, and has been reiterated thereafter, the MDL Court intends to work actively to reach out to any court that is interested in coordinating discovery activities. The MDL Court expects counsel for parties in the MDL

---

[1]    "Related Actions" shall not include shareholder derivative suits and securities class actions.

proceeding to help ensure that such coordination is achieved wherever it is practicable and desired by a given court or courts;

WHEREAS, coordination of pretrial proceedings in the MDL Proceeding and the Related Actions will likely prevent duplication of discovery and undue burden on courts, parties, and nonparties in responding to discovery requests, save substantial expense by the parties and nonparties, and produce substantial savings in judicial resources;

WHEREAS, each Court adopting this Order (collectively, the "Courts") finds that coordination of discovery and pretrial scheduling in the MDL Proceeding and the Related Actions will further the just and efficient disposition of each proceeding and believe that the circumstances presented by these proceedings warrant the adoption of certain procedures to manage these litigations;

WHEREAS, the Courts and the parties wish and anticipate that other courts in which Related Actions are now pending may join this Joint Coordination Order (this "Order");

WHEREAS, a Related Action in which this Order has been entered by the Court in which the action is pending is referred to herein as a "Coordinated Action" or, collectively as the "Coordinated Actions"; and

WHEREAS, each Court entering this Order is mindful of the jurisdiction of each of the other Courts in which other Coordinated Actions are pending and does not wish to interfere with the jurisdiction or discretion of those Courts.

NOW, THEREFORE, IT IS ORDERED that the parties are to work together to coordinate discovery to the maximum extent feasible in order to avoid duplication of effort and to promote the efficient and speedy resolution of the MDL Proceeding and the Coordinated Actions and, to that end, the following procedures for discovery and pretrial proceedings shall be adopted:

2

A.    **Discovery and Pretrial Scheduling**

1.    All discovery and pretrial scheduling in the Coordinated Actions will be coordinated to the fullest extent possible with the discovery and pretrial scheduling in the MDL Proceeding. The MDL Proceeding shall be used as the lead case for discovery and pretrial scheduling in the Coordinated Actions. ~~This Order does not operate to vacate discovery or pretrial scheduling in a Coordinated Action that predates its entry; such is left to the judgment and discretion of the Court in that Action.~~

2.    Lead Counsel shall create a single electronic document depository for use of all MDL counsel as well as counsel in Coordinated Actions, subject to provision by the MDL Court of an order for the equitable spreading of depository costs among users.

3.    New GM shall apprise the MDL Court, Lead Counsel, Plaintiff Liaison Counsel and Federal-State Liaison Counsel every two weeks of matters of significance (including hearings, schedules, deadlines, and trial dates) in Related Actions to enable the Court and the parties to effectuate appropriate coordination, including discovery coordination, with these cases.

4.    Plaintiffs in the Coordinated Actions and their counsel shall be entitled to participate in discovery in the MDL Proceeding as set forth in this Order and in accordance with the terms of the MDL Order No. 10 Protecting Confidentiality and Privileged Materials (ECF No. 294), the MDL Order No. 11 Regarding Production of Documents and Electronic Data ("ESI Order") (ECF No. 295), and any subsequent order entered in the MDL Proceeding governing the conduct of discovery (collectively, the "MDL Discovery Orders"), copies of which are attached hereto as Exhibit A or shall be made available pursuant to the terms of this Order. Each Court that adopts this Joint Coordination Order thereby also adopts the MDL Discovery Orders which, except as amended by separate order of the Coordinated Action Court, shall govern the use and dissemination of all documents and information

3

produced in coordinated discovery conducted in accordance with the terms of this Order.

Discovery in the MDL Proceeding will be conducted in accordance with the Federal Rules of

Civil Procedure and the Local Rules and Orders of the MDL Court, including the MDL

Discovery Orders, all as interpreted by the MDL Court. Parties in the MDL Proceeding and

their counsel may also participate in discovery in any Coordinated Action as set forth in this

Order.  Counsel in any Coordinated Action may, at the appropriate time and following the

appropriate Orders, submit time and expenses expended for the common benefit pursuant to

the MDL Order (ECF No. __).[2]  Specifically, and not by way of limitation, any lawyer

seeking recovery of time or expenses as common benefit work in this MDL for time or

expenses spent on work in a Related Case must contact the MDL Lead Counsel before

conducting such work or incurring such expenses, and must comply with the authorization

and reporting requirements set forth in this Order.   Should there be an assessment in a

Coordinated Action, any attorney will be subject to only one assessment order.  MDL Lead

Counsel should work with counsel in a Coordinated Action to resolve any issue related to

multiple jurisdictions' assessments.

     5.    The parties in a Coordinated Action may take discovery (whether directed to

the merits or class certification) in a Coordinated Action only upon leave of the Court in

which the Coordinated Action is pending.  ~~Each Coordinated Action Court will establish its

individual rules and procedures~~Such leave shall be obtained on noticed motion for ~~requesting

and conducting~~ good cause shown, including why the discovery sought could not have been

obtained in ~~the Coordinated Action, cognizant of the mutual goal of avoiding duplication and

inconvenience in~~ coordinated discovery ~~and scheduling~~in the MDL Proceeding.

---

[2]    Nothing herein is intended to presume that any judgment of liability shall be entered now or in the future against any defendant or that any common benefit fund shall ever be created.  Defendants expressly reserve all rights in this regard.

4

**B.    Use of Discovery Obtained in the MDL Proceeding**

6.    Counsel representing the plaintiff or plaintiffs in a Coordinated Action will be entitled to receive all discovery taken in the MDL Proceeding, provided that such discovery responses and documents shall be used or disseminated only in accordance with the terms of the MDL Discovery Orders. Counsel representing a party in the MDL Proceeding shall be entitled to receive all discovery taken in any Coordinated Action; any such discovery responses and documents shall be used or disseminated only in accordance with the terms of the MDL Discovery Orders ~~and the Coordinated Action Court Orders, whichever is applicable~~.

7.    Requests for documents, interrogatories, depositions on written questions, and requests for admission propounded in the MDL Proceeding will be deemed to have been propounded and served in the Coordinated Actions ~~as if they had been propounded under the applicable civil discovery rules of the respective jurisdictions.~~. Requests for documents, interrogatories, depositions on written questions, and requests for admission propounded in the Coordinated Actions will be deemed to have been propounded and served in the MDL Proceeding. The parties' responses to such requests for documents, interrogatories, depositions on written questions, and requests for admission will be deemed to be made in the MDL Proceeding and in the Coordinated Actions and may be used in the MDL Proceeding and in the Coordinated Actions, subject to and in accordance with the terms of the MDL Discovery Orders ~~in the MDL proceeding and the State Court Discovery Orders in the Coordinated Actions, provided that, to the extent that any discovery generated in the MDL proceedings were to be used in any Coordinated Action court proceedings by agreement, the MDL Court's Protective Order and Federal Rules of Evidence 502 will apply~~, as if they had been taken under the applicable civil discovery rules of the respective jurisdictions.

8.      Depositions taken in the MDL Proceeding may be used in the Coordinated Actions, subject to and in accordance with the terms of the MDL Discovery Orders, as if they had been taken under the applicable civil discovery rules of the respective jurisdictions.   Depositions taken in a Coordinated Action may be used in the MDL Proceeding, subject to and in accordance with the terms of the MDL Discovery Orders and the Coordinated Action Court Discovery Orders.  With respect to the *Melton* case in particular, the parties agree to coordinate the *Melton* depositions if possible; any disputes about the timing of such depositions should be addressed on a case-by-case basis. , as if they had been taken under the applicable discovery rules of the Southern District of New York.

**C.      Service and Coordination Among Counsel**

9.      The MDL Court has previously appointed Lead Counsel for Plaintiffs, Plaintiff Liaison Counsel, and Federal/State Liaison Counsel in the MDL Proceeding (those counsel are identified in the attached Exhibit B). Defendants shall file with the MDL Court and serve upon Lead Plaintiff Counsel, Plaintiff Liaison Counsel, and Federal/State Liaison Counsel in the MDL Proceeding copies of all Complaints, Coordination Orders, Protective Orders, ESI Orders or other Discovery Orders, and Orders designating plaintiffs' liaison counsel that are entered in the Coordinated Actions on the first of every month. Service may be made by electronic means.[3]

10.      Any Court in a Coordinated Action wishing to grant the parties before it access to coordinated discovery may do so by joining this Order pursuant to paragraph 26 and appointing one Plaintiffs' Liaison Counsel or designating one plaintiffs' counsel from the Coordinated Action to work with Plaintiff Liaison Counsel and Federal/State Liaison Counsel

---

[3]      All forms of service made under this Joint Coordination Order shall be deemed mailed in accordance with Rule 6 of the Federal Rules of Civil Procedure.

to facilitate coordination of discovery in the Coordinated Action and discovery in the MDL Proceeding.

11.    Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding shall promptly serve upon Plaintiffs' Liaison Counsel (if any) or designated plaintiffs' counsel in each Coordinated Action all discovery requests (including requests for documents, interrogatories, depositions on written questions, requests for admission, and subpoenas duces tecum), responses and objections to discovery requests; deposition notices; correspondence or other papers modifying discovery requests or schedules; and discovery motions (*i.e.*, motions under Rules 26 through 37 or Rule 45 of the Federal Rules of Civil Procedure) or requests for hearing on discovery disputes regarding coordinated discovery matters that are served upon the parties in the MDL Proceeding. Service may be made by electronic means upon Plaintiffs' Liaison Counsel in each Coordinated Action. Deposition notices shall be served by e-mail, facsimile or other electronic means. Plaintiffs' Liaison Counsel in the Coordinated Actions shall be responsible for distributing such documents to other counsel for plaintiffs in their respective actions.

12.    Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding shall maintain a log of all Orders entered in the MDL Proceeding and all discovery requests and responses sent and received in the MDL Proceeding and shall transmit a copy of said log by e-mail or other electronic means to Plaintiffs' Liaison Counsel in each Coordinated Action by the seventh (7th) day of each month, or on a more frequent basis upon written request. Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding will promptly transmit a copy of each Order entered in the MDL Proceeding to Plaintiffs' Liaison Counsel in the Coordinated Actions.

13.    In order to facilitate the dissemination of information and Orders in the MDL, the Court—or the parties if the Court so prefers—will create and maintain a website devoted solely to this MDL.[4] The site will contain sections through which the parties, counsel, and the public may access Court Orders, Court opinions, Court minutes, Court calendars, frequently asked questions, court transcripts, the MDL docket, current developments, information about leadership in the MDL, and appropriate contact information.

14.    To encourage communication between this Court and any Coordinated Action Court, one section of the website will be accessible only to judges in any Coordinated Action and Judge Furman. Additionally, each status conference will be open to the judge in any Coordinated Action, who will be provided a separate call-in number from the general public to allow Coordination Action judges to participate in the status conference. Plaintiffs' Federal-State Liaison Counsel will notify all Coordinated Action Courts of each status conference and provide the appropriate call-in number. Plaintiffs' Federal-State Liaison Counsel will also promptly transmit a copy of each Order entered in the MDL Proceeding to the judges in all Coordinated Actions.

**D.    Participation in Depositions in the MDL Proceeding**

15.    All counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions. Counsel may agree to use videoconferencing or other technology to conduct depositions remotely, in order to reduce the time and cost burden of travel for the deponent and counsel. Lead Counsel and counsel for the Defendants shall further meet and confer in good faith to propose a more detailed

---

[4] *See, e.g.,* Website for *In re Actos (Pioglitazone) Prods. Liab. Litig.,* MDL No. 2299, *available at* http://www.lawd.uscourts.gov/welcome-web-site-mdl-no-2299; Website for *In re Oil Spill by the Oil Rig "Deepwater Horizon",* MDL 2179, *available at* http://www.laed.uscourts.gov/OilSpill/OilSpill.htm.

deposition protocol for depositions in the Coordinated Actions. The detailed deposition

deposition protocol shall be entered by separate Order.

16.    Each deposition taken in the MDL Proceeding: (i) will be conducted on

reasonable written notice, to be served, electronically or otherwise, on Plaintiffs' Liaison

Counsel in each Coordinated Action in accordance with the provisions of paragraph 9

above; (ii) shall be subject to the time limits prescribed by Rule 30(d)(1) of the Federal

Rules of Civil Procedure; and (iii) will be conducted pursuant to the Federal Rules of Civil

Procedure and under the terms of the MDL Discovery Orders, all as interpreted by the MDL

Court.

17.    At least one Lead Counsel for the MDL Plaintiffs, or their designee, and MDL

Plaintiffs' Federal/State Liaison Counsel or Plaintiffs' Liaison Counsel, shall confer with

Plaintiffs' Liaison Counsel in the Coordinated Actions, or their designees, in advance of each

deposition taken in the MDL Proceeding, taking such steps to cooperate on selecting a

mutually convenient date, and taking such steps as may be necessary to avoid multiple

interrogatories and duplicative questions, and to avoid to the extent practicable additional

depositions in the Coordinated Actions.

18.    Depositions in addition to those taken in the MDL Proceeding (whether

directed to the merits or class certification) may be taken in a Coordinated Action ~~in~~

~~accordance with~~ only upon leave of ~~the rules established by the Court in~~ court in which the

Coordinated Action ~~to avoid duplicative depositions. Counsel~~ is pending, obtained on noticed

motion for good cause shown, including why the discovery sought could not have been

obtained in coordinated discovery in the MDL ~~proceeding may petition the Coordinated~~

~~Action Court for a protective order from any deposition MDL counsel believe are duplicative~~

~~of depositions taken or scheduled to be taken in the MDL proceeding.~~ Proceeding. The

9

transcript of any such deposition shall not be used or disseminated ~~in the MDL proceeding~~ except in accordance with the terms of the MDL Discovery Orders.

19.    If depositions in addition to those taken in the MDL Proceeding are permitted in a Coordinated Action, the noticing party shall provide reasonable written notice, by e-mail or other electronic means, to Plaintiff Liaison Counsel and Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding and all Liaison Counsel in the other Coordinated Actions. Counsel representing parties in the MDL Proceeding and counsel representing plaintiffs in each other Coordinated Action shall be entitled to attend the deposition of any witness whose deposition is taken in a Coordinated Action and, following questioning by Plaintiffs' Counsel in the Coordinated Action, one counsel representing the MDL Plaintiffs, one counsel representing each MDL Defendant and one Plaintiffs' Counsel from each Coordinated Action shall each be permitted a reasonable amount of time to ask non-duplicative additional questions and shall be permitted to make objections during examination by other counsel.

20.    If the MDL Plaintiffs, through Plaintiff Liaison Counsel or Plaintiffs' Federal/State Liaison Counsel, or the MDL Defendants have been provided with reasonable notice of and opportunity to participate in a deposition taken in any Coordinated Action, no MDL Plaintiff or MDL Defendant shall be permitted to re-depose that deponent without first obtaining an Order of the MDL Court upon a showing of good cause therefor. Any party or witness receiving notice of a deposition which it contends is not permitted by the terms of this Order shall have seven (7) days from receipt of the notice within which to serve the noticing party with a written objection to the deposition. In the event of such an objection, the deposition shall not go forward until the noticing party applies for and receives an order from the MDL Court, if the notice was issued in the MDL proceeding, or in the Coordinated Action Court, if the notice was issued in a Coordinate Action, granting leave to take the deposition~~. Prior to any party in the MDL filing a discovery motion, the parties must first~~

10

~~attempt to resolve the dispute in good faith and in accordance with the procedures and requirements outlined in the Court's Individual Rules and Practices in Civil Cases and the Court's standard Case Management Plan and Scheduling Order, both of which are available at http://www.nysd.uscourts.gov/judge/Furman.~~

21.    If the MDL Plaintiffs or MDL Defendants and their respective Counsel in any Coordinated Action have received notice of a deposition in either the MDL Proceeding or any Coordinated Action, such deposition may be used in the MDL Proceeding and each Coordinated Action for all purposes permitted under the jurisdiction's applicable rules without regard to whether any MDL Plaintiffs' Counsel or any MDL Defendants' Counsel or any counsel representing plaintiffs or defendants in any Coordinated Action attend or cross-examine at the noticed deposition.

### E.    Participation in Written Discovery in the MDL Proceeding

22.    At least one Co-Lead Counsel for the MDL Plaintiffs, or their designee, and Plaintiffs' Federal/State Liaison Counsel, shall confer with Plaintiffs' Liaison Counsel in the Coordinated Actions, or their designees, in advance of the service of requests for written discovery in the MDL Proceeding, taking such steps as may be necessary to avoid additional interrogatories, depositions on written questions, requests for admission and requests for documents in the Coordinated Actions.

23.    Plaintiffs' Liaison Counsel in any Coordinated Action may submit requests for documents, interrogatories, depositions on written questions and requests for admission to MDL Co-Lead Counsel for Plaintiffs and Plaintiffs' Federal/State Liaison Counsel for inclusion in the requests for documents, interrogatories, depositions on written questions, and requests for admission to be propounded in the MDL Proceeding. Such requests shall be included in the requests propounded in the MDL Proceeding, provided that:

11

    (a)    the requests for documents, interrogatories, depositions on written questions and/or requests for admission are submitted to MDL Plaintiff Liaison Counsel and Plaintiffs' Federal/State Liaison Counsel within ten (10) calendar days after MDL Plaintiff Liaison Counsel have notified Plaintiffs' Liaison Counsel in the Coordinated Actions of MDL Plaintiffs' intent to serve such discovery; and

    (b)    the requests are non-duplicative of requests proposed by MDL Plaintiffs' Co-Lead Counsel.

The number of interrogatories permitted in the MDL Proceeding will be subject to such limitations as are imposed by Rule or Order of the MDL Court.

24.    Requests for documents, interrogatories, depositions on written questions and requests for admission in addition to those served in the MDL Proceeding (whether directed to the merits or class certification) may be propounded in a Coordinated Action only upon leave of the court in which the Coordinated Action is pending, obtained on noticed motion for good cause shown, including why the discovery sought could not have been obtained in coordinated discovery in the MDL Proceeding. A motion for leave to serve additional document requests, interrogatories, depositions on written questions and/or requests for admission which were proposed by Plaintiffs' Liaison Counsel in a Coordinated Action in accordance with paragraph 20 and which were not included in the discovery requests served by Lead Counsel in the MDL Proceeding shall be filed in the court on notice within twenty-one (21) calendar days of service of the Lead Counsel's discovery request from which those requests for documents, interrogatories, depositions on written questions and/or requests for admission were omitted.

25.    ~~23.~~  ~~in accordance with the rules established by the Coordinated Action Court in the Coordinated Action to avoid duplicative discovery. Counsel in the MDL~~

~~proceeding may petition the Coordinated Action Court for a protective order from any such~~ ~~discovery MDL counsel believe is duplicative of discovery served in the MDL proceeding.~~ ~~All parties to the MDL Proceeding will~~ All parties to the MDL Proceeding shall be entitled to receive copies of responses to interrogatories, responses to depositions on written questions, responses to requests for admission, and documents produced in any Coordinated Action. Any party or counsel otherwise entitled under this order to receive copies of discovery from other parties or counsel shall reimburse the producing party for actual out-of-pocket costs incurred in connection with the copying and shipping of such discovery (including but not limited to document productions).) and shall use such materials only in accordance with the terms of the MDL Discovery Orders.

26.    Any counsel representing a plaintiff in a Coordinated Action shall, in accordance with any Orders of the MDL Court entered in the MDL Proceeding and subject to the terms of the MDL Discovery Orders, have access to any document depository that may be established by the parties to the MDL Proceeding.

F.    **Discovery Dispute Resolution**

27.    Prior to any party in the MDL filing a discovery motion, the parties must first attempt to resolve the dispute in good faith and in accordance with the procedures and requirements outlined in the Court's Individual Rules and Practices in Civil Cases and the Court's standard Case Management Plan and Scheduling Order, both of which are available at http://www.nysd.uscourts.gov/judge/Furman.

28.    In the event that the parties are not able to resolve any disputes that may arise in the coordinated pretrial discovery conducted in the MDL Proceeding, including disputes as to the interpretation of the MDL Discovery Orders, such disputes will be presented to the MDL Court. Resolution of such disputes shall be pursuant to the applicable federal or state law, as required, and such resolution may be sought by any party permitted by this Order to

participate in the discovery in question. In the event that additional discovery is sought in a Coordinated Action and the parties to that action are not able to resolve any discovery disputes that may arise in connection with that additional discovery, such disputes will be presented to the Court in which that Coordinated Action is pending.

29.    Nothing contained herein shall constitute or be deemed to constitute a waiver of any objection of any defendant or plaintiff to the admissibility at trial, of any documents, deposition testimony or exhibits, or written discovery responses provided or obtained in accordance with this Order, whether on grounds of relevance, materiality or any other basis, and all such objections are specifically preserved. The admissibility into evidence in any Coordinated Action of any material provided or obtained in accordance with this Order shall be determined by the Court in which such action is pending.

**G.    Implementing This Order**

30.    Any court before which a Coordinated Action is pending may join this Order, thereby authorizing the parties to that Coordinated Action to participate in coordinated discovery as and to the extent authorized in this Order.

31.    Each Court that joins this Order shall retain jurisdiction to modify, rescind and/or enforce the terms of this Order.

SO ORDERED.

Date:    September __, 2014
New York, New York

_____
JESSE M. FURMAN
United States District Judge

Attachments:

Exhibit A:    MDL Discovery Orders
Exhibit B:    MDL Co-Lead Counsel, Plaintiff Liaison Counsel, and Federal/State
Liaison Counsel

14