Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4   In the Matter of:

5                                       Chapter 11

6   MOTORS LIQUIDATION COMPANY,        Case No.: 09-50026(REG)

7   et al, f/k/a General Motors        (Jointly Administered)

8   Corp., et al.,

9

10          Debtors.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  U.S. Bankruptcy Court

14                  One Boling Green

15                  New York, New York

16

17                  August 18, 2014

18                  9:46 AM

19

20

21  B E F O R E :

22  HON ROBERT E. GERBER

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1   Hearing re:  Threshold Issues Letters, filed pursuant to the

2   Supplemental Scheduling Order, Dated July 11, 2014.

3

4   Hearing re:  Motion of General Motors LLC Pursuant to 11

5   U.S.C. § 105 And 363 To Enforce the Sale Order And

6   Injunction ("Motion to Enforce"), filed by General Motors

7   LLC (ECF 12620, 12621).

8

9   Hearing re:  Motion of General Motors LLC Pursuant to 11

10  U.S.C. §§ 105 and 363 to Enforce This Court's July 5, 2009

11  Sale Order And Injunction Against Plaintiffs In Pre-Closing

12  Accident Lawsuits ("Pre-Closing Accident Lawsuits Motion to

13  Enforce"), filed by General Motors LLC (ECF 12807).

14

15  Hearing re:  Motion of General Motors LLC Pursuant to 11

16  U.S.C. §§ 105 and 363 To Enforce This Court's July 5, 2009

17  Sale Order And Injunction (Monetary Relief Actions, Other

18  than Ignition Switch Actions)("Monetary Relief Actions

19  Motion to Enforce"), filed by General Motors LLC (ECF

20  12808).

21

22

23

24

25  Transcribed by:  Dawn South

Page 3

1   A P P E A R A N C E S :

2   KING & SPALDING LLP

3        Attorneys for General Motors LLC

4        1185 Avenue of the Americas

5        New York, NY 10036-4003

6

7   BY:   ARTHUR J. STEINBERG, ESQ.

8        SCOTT DAVIDSON, ESQ.

9

10   KIRKLAND & ELLIS

11        Attorney for New GM

12        300 North LaSalle

13        Chicago, IL 60654

14

15   BY:   RICHARD C. GODFREY, P.C., ESQ.

16

17   STUZMAN, BROMBERG, ESSERMAN & PLIFKA

18        Attorney for the Plaintiffs

19        2323 Bryan Street

20        Suite 2200

21        Dallas, TX 75201-2689

22

23   BY:   SANDER L. ESSERMAN, ESQ.

24

25

Page 4

1   BROWN RUDNICK LLP

2        Attorneys for Plaintiffs

3        Seven Times Square

4        New York, NY 10036

5

6   BY:  EDWARD WEISFELNER, ESQ.

7        DAVID J. MOLTON, ESQ.

8        HOWARD S. STEEL, ESQ.

9

10  GOODWIN ROCTER LLP

11       Attorneys for Hilliard, et al.

12       The New York Times Building

13       620 Eighth Avenue

14       New York, NY 10018

15

16  BY:  WILLIAM P. WEINTRAUB, ESQ.

17       EAMONN O'HAGAN, ESQ.

18

19  AKIN GUMP STRAUSS HAUER & FELD LLP

20       Attorney for Holders of Units in the GUC Trust

21       One Bryant Park

22       New York, NY 10036-6745

23

24  BY:  DANIEL H. GOLDEN, ESQ.

25

Page 5

1   CAPLIN & DRYSDALE, CHARTERED

2        Attorney for Holders of Units in the GUC Trust

3        600 Lexington Avenue

4        21st Floor

5        New York, NY 10022-7619

6

7   BY:  ELIHU INSELBUCH, ESQ.

8

9   GIBSON, DUNN & CRUTCHER LLP

10        Attorney for Motors Liquidation GUC Trust

11        200 Park Avenue

12        New York, NY 10166-0193

13

14   BY:  LISA H. RUBIN, ESQ.

15

16   GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

17        Attorneys for the Plaintiffs

18        437 Madison Avenue

19        New York, NY 10022

20

21   BY:  JONATHAN FLAXER, ESQ.

22

23

24

25

Page 6

1   LAW OFFICES OF JOSH DAVIS

2        Attorney for Dori Powledge

3        1010 Lamar

4        Suite 200

5        Houston, TX 77002

6

7   BY:  JOSH DAVIS, ESQ.

8

9   HAGENS BERMAN SOBOL SHAPIRO LLP

10       555 Fifth Avenue

11       Suite 1700

12       New York, NY 10017

13

14  BY:  JASON A. ZWEIG, ESQ.

15

16  WOLF HALDENSTEIN ADLER FREEMAN & HERBZ LLP

17       Attorney for the Groman Plaintiffs

18       270 Madison Avenue

19       New York, NY 10016

20

21  BY:  ALEXANDER H. SCHMIDT, ESQ.

22

23

24

25

Page 7

1  GENERAL MOTORS COMPANY

2        Attorney for General Motors

3        400 Renaissance Center

4        P.O. Box 400

5        Detroit, MI 48265-4000

6

7  BY:  L. JOSEPH LINES III, ESQ.

8

9  OTTERBOURG

10       Bankruptcy Liaison Counsel

11       230 Park Avenue

12       New York, NY 10169

13

14  BY:  MELANIE L. CYGANOWSKI, ESQ.

15

16

17

18

19

20

21

22

23

24

25

Page 8

1                    P R O C E E D I N G S

2              THE COURT:  Good morning.  Have seats, please.

3              Okay, we're here on GM, and I think I know all of

4    the folks who are going to be the principal speakers today,

5    and others can introduce themselves when it's their turn to

6    be heard.

7              I do have some preliminary comments and thoughts

8    that I want to share with you.

9              Folks, I'm appreciative of the effort that y'all

10   made between the time that I last saw you and now,

11   particularly, vis-à-vis, the stips.

12             I've received letters from Mr. Steinberg,

13   Mr. Flaxer, Mr. Golden, yeah, who I see there, Mr. Esserman,

14   and I've reviewed the notebook with the stipulations and the

15   disputed facts, although I'll confess to you that I did it

16   mainly to get my arms around the terrain rather than

17   mastering the underlying facts that are stated there.

18             I don't claim the same familiarity with the stips

19   and the disputed facts that I do with the letters.

20             After review of the submissions I'm inclined to

21   agree with Mr. Esserman and Mr. Steinberg for reasons most

22   fully fleshed out by Mr. Esserman, that discovery in this

23   court before getting to work on the briefing would be a bad

24   idea.  Mr. Flaxer, certainly I want to get your perspective

25   on that.

Page 9

```
 1            I'm not of a view to stand in the way of any

 2    discovery of the type that Judge Furman identified at his

 3    recent conference in the District Court, but here we're

 4    talking about incremental additional discovery of a

 5    fundamentally different character going beyond redelivering,

 6    if you will, material that's already been delivered once.

 7    And I have material concerns that as Mr. Esserman pointed

 8    out in his letter that the costs of any such discovery

 9    articulated initially as being eight weeks would be at least

10    that bad and potentially much worse.

11            It also appears to me that you folks have plenty

12    of work to do any way, and another thought that wasn't

13    addressed in the papers but which has informed the exercise

14    of my discretion on this has been that one of the things

15    that you folks are going to be briefing, as I understand it,

16    is the legal standard for fraud on the Court, and one of the

17    reasons why I wanted you guys to address that in your

18    briefing, I think I had said this out loud in the last

19    conference, it may have been just in my head, was that the

20    legal standard could inform the exercise of my discretion

21    and your thoughts shared with me on what kind of discovery

22    then becomes necessary.

23            So all of those facts tend to cause me as a

24    tentative -- only as a tentative -- but as a tentative that

25    we're not going to hold up the train from leaving the
```

Page 10

1    station by reason of the desires for discovery that your

2    guys articulated, Mr. Flaxer, but obviously I'm going to

3    give you a chance to be heard on that.

4              The second main area of controversy, and it's

5    going to expand into a third area where I'm going to need

6    your help, is the extent to which we should wait for the

7    filing of a consolidated and amended complaint.

8              Related to that is a desire that many, if not all

9    of you, share but which I still have some questions in my

10   own mind about on deferring two of the four issues,

11   vis-à-vis, the extent to which any of these claims to the

12   extent they otherwise exist would be against Old GM and on

13   equitable mootness.

14             When I was addressing these issues at our last

15   conference it had seemed to me at the time that some of the

16   issues were mirror images of the others and that the

17   entirety of the issues were presented kind of a holistic

18   type of situation where I couldn't really get my arms around

19   things without getting my arms around the entirety.  That's

20   still my instinct in terms of the way by which I would

21   ultimately rule.

22             It's not the same thing as to say that we're going

23   to take the briefing in nibbles as it is to say that we're

24   going to do everything in seriatim after earlier rulings,

25   but I don't think I'm giving away the nuclear launch codes

Page 11

1   when I tell you that I'm unlikely to decide the issues we

2   have here off the bench, I'm unlikely to be issuing only a

3   dictated decision, and I'm unlikely -- change on likely to

4   it ain't gonna happen that you're going to get a decision on

5   the issues we have here as quickly as you got a decision on

6   the 363 issues back in July of 2009.

7           But with that said I share the view by

8   Mr. Esserman, and not disagreed by Mr. Steinberg, maybe not

9   even Mr. Flaxer, that we should be moving as expeditiously

10  as we can do so responsibly.

11          And then on the other hand I see a largely

12  unanimous view, which I share, that the task of giving you

13  guys meaningful rulings would be easier with the benefit of

14  the consolidated complaint.  That gives me the luxury of

15  giving you all and Judge Furman rulings on what particular

16  causes of action are green light, what are red light, and

17  what are yellow light in terms of helping him do his job and

18  allowing you folks to put your energy into particularly

19  kinds of claims or if you wish to get appellate review.

20          But waiting for the consolidated complaint imposes

21  a price in time, and since subject to one of you guys

22  correcting me post 363 sale personal injury and death cases

23  are going to be going forward before Judge Furman in any

24  event, it raises the question for which I need your help as

25  to how I can best keep things moving forward here without a

1  material adverse impact on what Judge Furman is trying to

2  accomplish.

3          I also have a selfish need that I want to start

4  thinking about these issues even if I don't put pen to paper

5  and go public with them as early as practical, so I need you

6  folks to help me find the sweet spot to enable me to get the

7  benefit -- me and maybe you all as well -- of that amended

8  complaint while permitting progress to continue here.

9          And that brings us finally to the next point,

10  which isn't on the agenda for many of you but which is for

11  Mr. Steinberg and which is for me, which is that I gather

12  there are new issues that need to be teed up for judicial

13  determination.  One with respect to preclosing personal

14  injury and death cases, and a second variant of issues that

15  Mr. Steinberg wants my attention to now.  And it appears to

16  me that those need to be addressed.

17          In a perfect world I wouldn't be writing two or

18  three or four opinions for you all and I want your thoughts

19  as to how I can tee up those issues for determination

20  without dragging everybody else into delay and without

21  impairing the needs of everybody else to get these issues

22  determined.

23          So that's the present state of my thinking now and

24  where I need your help the most.

25          I'll hear from each of you with appropriate

1       opportunities for reply and surreply until we're done.

2              At this point I want to deal only with the issues

3       that I've talked about and not the miscellaneous issues that

4       we're going to have to deal with, vis-à-vis, other more

5       limited plaintiff groups which I'll deal with at the end of

6       the conference.

7              I don't know how you folks have addressed if you

8       have who's going to be heard first and so forth.  Is there

9       any agreement or shall I just let the first guy up there

10      speak?

11             MR. STEINBERG:  Good morning, Your Honor, Arthur

12      Steinberg from -- and Scott Davidson from King & Spalding,

13      and Rick Godfrey from Kirkland & Ellis.

14             With regard to your -- the discussion about the

15      MDL complaint and whether you should wait until the MDL

16      complaint to hear the briefing on the third threshold issue,

17      which is the Old GM claim issue, we believe --

18             THE COURT:  Pause, please, Mr. Steinberg, I didn't

19      plan to interrupt you so soon.

20             In your view does it affect only that one of the

21      four or does it go beyond that?

22             MR. STEINBERG:  I think it also affects the

23      equitable mootness argument, but to some extent a little

24      less so than the Old GM threshold issue.

25             Your Honor, there are at this point in time 102

1     complaints related to the ignition switch motion that we

2     filed with the court, that we're up to that amount in number

3     now.  So if the District Court had not said anything we

4     would have had some difficulty, although it was obviously

5     doable, to try to lump everything that every creative lawyer

6     would have put into these complaints to try to respond on

7     the Old GM issue -- Old GM claim issues so Your Honor would

8     have had the benefit of it.

9           Your Honor had heard over the last few weeks and

10    have seen papers filed by Mr. Peller (ph), who said that he

11    in effect went to school on the earlier complaints and

12    purposely drafted his complaint for his clients differently

13    so as not to implicate Your Honor's jurisdiction under the

14    sale order and injunction.

15          Having a master complaint which reflects one set

16    of issues makes it much easier for us to respond to it and

17    makes it much easier for us to give it to you so that you'd

18    be able -- Your Honor will be able to tee it up for

19    determination.

20          I do think that the exercise of -- that has been

21    crafted in the MDL court, which is that they have a full 45

22    days from Friday to sort of try to consolidate all these

23    into a complaint and then they have 7 days or 10 days -- I

24    forgot the exact amount -- to then talk to the other counsel

25    to make sure that it's being appropriately consolidated, and

1    then the overall date would be 60 days from August 15th,

2    which would take you to October 15th.  I think all of that

3    will make it much easier for all the parties to brief before

4    Your Honor and all of it easier for Your Honor to make the

5    determinations that are necessary.

6            For example -- and I think one of the colleagues

7    on this side of the table actually has said it before, that

8    some of the earlier complaints say things about implied

9    warranty, successor liability, and I'm not sure what is

10   actually going to be alleged when this master complaint has.

11   I mean clearly I think they will try to avoid the buzz words

12   which are in the sale order and injunction.

13           So how we brief what is actually said and whether

14   we say something to the effect of what they're really saying

15   now is really a successor liability claim it is much, much

16   easier to try to do that if I'm working off the current

17   state of play, the current draft of what they're dealing

18   with.

19           And that's why I think it made the most sense, and

20   I did speak to Groman before -- the Groman plaintiffs'

21   lawyer before and they can obviously correct me if I'm wrong

22   -- but they also agree that those issues should be deferred.

23           So what you have in front of you is all the

24   litigants who would be briefing the issue which would be the

25   designated counsel, the Groman plaintiffs, and even the GUC

1    Trust unit holders all agreeing that the issues should be

2    deferred, recognizing that the GUC Trust unit holders have a

3    different view as to the timing of the briefing of all

4    issues.  But everybody agrees that it makes sense to defer

5    it.

6            The reason --

7            THE COURT:  Now break that down a little more if

8    you would, please, Mr. Steinberg.

9            You spoke of unanimity, is that across the board

10   of all four or potentially five threshold issues or is that

11   with respect to a subset like on whether they're claims

12   against Old GM and unmootness?

13           MR. STEINBERG:  The unanimity -- and I want to

14   make sure I get this right -- the unanimity is only with the

15   Old GM threshold claim, the deferral of that and the

16   equitable mootness claim.  All of the parties have agreed

17   those should be deferred.

18           The GUC Trust believes that if we're going defer

19   that then we should defer the briefing on all of the other

20   issues, and New GM and the designated counsel believe the

21   briefing should go forward on those issues now.  And the

22   first brief on that is due by New GM and that's due this

23   Friday, August 22nd.

24           THE COURT:  Which category did we put the legal

25   standard for fraud on the Court?

```
 1              MR. STEINBERG:  I think everybody agrees that the
 2    legal standard should be briefed at this point in time.  No
 3    one thinks there's a reason to delay.
 4              THE COURT:  And does that effectively create a
 5    fifth threshold category?
 6              MR. STEINBERG:  I think the way it was written,
 7    Your Honor, in the scheduling order is there was four
 8    threshold issues and then the fraud on the Court legal
 9    standard was put in a separate decretal paragraph.  The
10    reality is is that there are five threshold issues.
11              So we believe that it makes sense to delay the
12    briefing.  And when you look at the schedule based on the
13    order that Your Honor signed on October 1st -- I'm sorry --
14    August 1st the last briefing --
15              THE COURT:  Is that the endorsed order --
16              MR. STEINBERG:  That's the endorsed --
17              THE COURT:  -- where I approved your proposed
18    briefing schedule?
19              MR. STEINBERG:  Yes, that's the one where you
20    approved --
21              THE COURT:  And the page limits?
22              MR. STEINBERG:  -- the page limits, but the last
23    paragraph asks for a slight further adjournment so that the
24    designated counsel would have a greater opportunity to
25    circulate their brief to other counsel to review and
```

Page 18

```
 1    therefore they asked for an additional period of time which

 2    we consented to.

 3              So I think the present schedule has their brief

 4    due on September 22nd and our reply due on October 10th.

 5    And the present schedule says oral argument would not be

 6    scheduled before October 20th, would be done in consultation

 7    with the parties, but would be based on whenever Your Honor

 8    believes it's appropriate to do that.  And when you look at

 9    that kind of calendar of dates the MDL complaint is supposed

10    to be filed on October 15th, so --

11              THE COURT:  Did you say 15th?

12              MR. STEINBERG:  October 15th.

13              So my own thoughts with regard to how to try to

14    sort of coalesce what the GUC Trust unit holders would like

15    to see in the briefing and what the designated counsel and

16    New GM believe should happen in the briefing is that we

17    should be briefing the issues that we know we can brief,

18    which is the remedy section, the due process section, and

19    the fraud on the Court legal standard, and we should adhere

20    to that schedule.

21              At some point in time the MDL complaint will be

22    filed on October 15th, Your Honor could have a short status

23    conference shortly after the October 15th to give us an

24    opportunity to read the brief and see if we can agree on a

25    briefing schedule.  At that point in time Your Honor will
```

Page 19

```
 1    have the benefit of the briefing that we've already

 2    submitted, Your Honor will always be able to decide when you

 3    want to schedule oral argument, and you could decide whether

 4    you want to schedule oral argument on the three issues that

 5    have already been briefed or whether you want to wait for

 6    all -- all the other issues to come in and have the oral

 7    argument all heard at one point in time.

 8            The benefit of that kicking the can approach down

 9    the road as to how to finesse Mr. Golden's issue is that

10    Your Honor will have the benefit of the briefing and

11    everybody's briefing for the benefit of Your Honor to make

12    his determination.  So if you have the benefit of the briefs

13    and you believe that you do need to see what the other

14    briefs look like on -- I assume it's the equitable mootness

15    thing that is driving Mr. Golden -- then you'll have the

16    ability to say that's fine, we'll work through the briefing

17    schedule on oral argument and we'll reschedule when

18    everything is in.

19            If Your Honor thinks that equitable mootness

20    shouldn't drive the due process argument, which is what I

21    believe is the case, but you know, this is a little like the

22    song from the Fantastics where if I say one thing everybody

23    else will automatically reflexively say I should be on the

24    other side of the equation.  If everybody believes as I said

25    that it'll all be more easier for Your Honor to see and for
```

Page 20

1     everybody to see whether you need to have further briefing

2     to decide on other issues to properly decide the due process

3     issue Your Honor will make that decision with the benefit of

4     the briefing.

5              So that would be my way of trying to coalesce the

6     briefing.

7              On the discovery issue I think the words that come

8     out of the designated counsel as to -- and Mr. Esserman's

9     letter reflecting why there should be no further discovery

10    and why the discovery suggested by the Groman plaintiffs

11    will delay this matter significantly beyond six to eight

12    weeks.

13             I mean the document discovery which ultimately may

14    be produced in the MDL court will be, you know, millions of

15    pages.  They want as part of their proposal to propound

16    additional document discovery, they want to take deposition

17    discovery which the MDL court has not authorized to be

18    taken, all for the purposes of saying I can get potentially

19    a better case even though I think there's enough stipulated

20    facts for me to win my case right now.

21             Well, I may disagree that they'll ever be able to

22    win their case, but I do believe that we went through a

23    laborious exercise and we came across with enough stipulated

24    facts that I think Your Honor has the ability to rule on the

25    due process issue and the remedies issue and you don't need

1    the facts for the legal standard issue.

2            The due process -- and I would want to point out

3    that vis-à-vis New GM's disputed facts, the designated

4    counsel's disputed facts, and the GUC Trust disputed facts,

5    none of them are really what I'll say fully disputed.

6            The New GM disputed facts are I think six or

7    seven.  Three of them are things that we believe that we

8    could put in by affidavit, the other side just didn't want

9    to stipulate it because there was nothing in the public

10   record.  But we think Your Honor's order said that you could

11   handle this like a summary judgment motion.  We think those

12   issues could be put in by affidavit.

13           The others relate to the third threshold issue and

14   were disputed really by the GUC Trust unit holders and

15   that's why they're there.

16           So vis-à-vis the new --

17           THE COURT:  The third one being whether if they're

18   not claims against --

19           MR. STEINBERG:  That's correct.

20           THE COURT:  -- New GM they're claims against Old

21   GM?

22           MR. STEINBERG:  That's correct.

23           The designated counsel disputed facts, and I think

24   they -- theirs are eight.  So there's only eight disputed

25   facts on the designated counsel.  Seven of the eight are

Page 22

1    responded to by us.

2            What happened, just so Your Honor understands the

3    exercise, they very citing from an excerpt in the Valucas

4    (ph) report.  We believe that the Valucas report had some

5    additional language which helped put the event that was

6    being described into better content.  It is the equivalent

7    of someone cross-examining on a deposition --

8            THE COURT:  A Rule 32 --

9            MR. STEINBERG:  Right.

10           THE COURT:  -- counter-designation.

11           MR. STEINBERG:  That's correct.

12           So what you have there is the exact same event

13   being described in our disputed issues where we said it's

14   like a point counter-point, they have it strictly as their

15   designated counsel issue.

16           So, for example, I think they wanted to introduce

17   an excerpt from the Valucas report that said that Ray

18   Degorgio (ph) -- the idea that Ray Degorgio didn't change

19   the switch part number was sent to other people at GM and we

20   wanted to include in the Valucas report that said that the

21   other people that he sent it to were cc'd on an email and

22   they were not involved with the ignition switch issue at all

23   and were not involved in investigating the problem.

24           So we thought that was relevant to describing the

25   issue, they obviously didn't want to put that in, and that's

Page 23

1    why you see it separated in two.

2            So that takes care of seven of the eight disputed

3    facts by the designated counsel.

4            The other one was a statement where their

5    authority was a consumer advocate group on a letter that

6    they wrote to Congress.  My guess is if they have an

7    independent source to validate it they'll put it in by

8    affidavit and we'll be able to respond as to whether it's

9    true or not.

10           But I think vis-à-vis the designated counsel there

11   truly are no disputed facts that each of us has come up with

12   to prevent the issues from being decided.

13           With regard to the GUC Trust all of -- I think

14   they had seven disputed facts, all of them related to the

15   issues that are being deferred.  It's the Old GM retention

16   issue or the equitable mootness issue.

17           And to be candid I think the major objection is

18   really not much of an objection, it's that they -- we

19   believe that either it was a legal conclusion or it was an

20   argumentative presentation of a fact that we didn't want to

21   sign off onto.  But I think ultimately at the end of the day

22   even when we get to those issues that will not delay any

23   need -- there won't be any need for discovery on that.

24           So I think the by-product of going through the

25   discovery with the designated counsel and the GUC Trust unit

1  holders is that we really do have a stipulated record that

2  Your Honor can rule certainly on the issues that we've

3  isolated for Your Honor to rule on right now.

4        The Groman plaintiffs put in 83 disputed facts.  I

5  will say that 12 of the 83 have the same point counter-point

6  issues relating to the Valucas report.  So they cite to

7  something in the Valucas report and we say it's -- for the

8  rule of completeness this should be a broader cite.  So they

9  really have 69 disputed facts, but you know, it's

10  significant that whatever they're alleging are things that

11  the designated counsel didn't think needed to be set

12  forward, and some of them we described in our letter to the

13  Court were aspirational, right?

14        And so I'd give an example of what I would

15  consider to be a aspirational facts.  They said, "Before

16  ..." -- this is number 44 -- "Before entry of a sale order

17  Old GM disclosed the defective ignition switch or related

18  potential claims to the U.S. government."

19        Forty-five, "Before entry of the sale order Old GM

20  did not disclose the defective ignition switch or related

21  potential claims to the U.S. government."

22        These aren't disputed facts, they had no basis for

23  that fact one way or the other, they were using this as an

24  opportunity to do rules for admission is, that's what you

25  would (indiscernible - 00:28:39) admission.

1            To be candid on our first iteration of the

2     disputed facts we did some of the same thing, and when the

3     designated counsel said that's not really what this exercise

4     is about we eliminated it from our side, they eliminated it

5     from their side, and these are some of the remnants that are

6     left in the Groman plaintiffs' stipulations.

7            There was a recitation that said something like

8     Robert Osborn provided information regarding the ignition

9     switch failure -- Robert Osborn was a general counsel at one

10    point of Old GM --to -- relating to the chart that was on

11    the Delphi settlement of Fritz Henderson.  When we said what

12    was the basis for that, they said no, but that would make

13    our case better and stronger.  And the Valucas report

14    actually described the attachment to the Delphi and talked

15    about what they did and said they had no solutions.

16           Their response was, well, I'd like to be able to

17    in effect take what I will describe as a fishing expedition

18    to see whether they can catch anything.  But that is in the

19    nature of what we think has happened here.

20           Some of these disputed facts -- most of these

21    disputed facts were put in as the basis knowing that we

22    couldn't accept it, knowing that we would deny it, that they

23    would then want to ask for discovery, which would have made

24    a large portion of our exercise a waste of time.

25           And while we may have been able to skinny some of

Page 26

1   these things down from the 69 to a smaller amount there was

2   -- and I will say it charitably -- there was a

3   miscommunication as to whether they were still asserting

4   these claims at all.

5           As Your Honor could imagine when we were going

6   through the process I said to everybody I'd like everybody

7   to give me their designations that they want me to review

8   that they're asking me to make compromises on at one time,

9   and I had made it clear that I was no longer interested in

10  getting the designated counsels' stipulations and then

11  separately two days later the Groman stipulations over the

12  same factual matters.  I said, you need to talk to each

13  other and you need to give it to me at one time so that I

14  can evaluate what it is that I want to do.  There was a lot

15  of what's good for the goose is good for the gander type of

16  discussion that we were having in this matter.

17          So after two meet and confer sessions I thought

18  that this list had been put to bed, that whatever I was

19  dealing with with the designated counsel was the final

20  version of what I had to deal with, and at 8 o'clock on

21  Thursday night --

22          THE COURT:  Let me interrupt you for a second.

23          Am I correct that I don't have to find whether one

24  side was right or one side was wrong in terms of this issue

25  and that I need to focus only on that discovery that remains

Page 27

1    to be accomplished before this stuff can be briefed?

2              MR. STEINBERG:  That's absolutely you're right --

3    absolutely right, Your Honor, and I'll move on from that

4    point.

5              THE COURT:  Then I want to cut you off.

6              MR. STEINBERG:  It was --

7              THE COURT:  And --

8              MR. STEINBERG:  No, no, it's appropriate.

9              THE COURT:  -- because that's going to require

10   Mr. Flaxer to respond, he already responded once in this

11   letter, I don't think that's --

12             MR. STEINBERG:  I'm prepared to --

13             THE COURT:  -- a good use of our time.

14             MR. STEINBERG:  I'm prepared to accept that it was

15   a miscommunication, but I wanted to explain to Your Honor

16   why we ended up with so many that are still out there and I

17   was trying to give Your Honor what the explanation would be.

18             But our bottom line is that what they're proposing

19   is entirely unworkable and that the designated counsel who

20   are now essentially mostly the representatives of the lead

21   counsel that have been appointed by the MDL.  The Groman

22   plaintiffs' lawyers were not on any of the selected counsel

23   positions for the MDL.  So they are -- they are entitled to

24   defend their clients, I don't dispute that, but they are

25   sort of an outlying from the general gist of what is being

1    pushed forward in the MDL, which is that there's a lead

2    counsel, there's an executive counsel, there's liaison

3    counsel, and the Groman plaintiffs are not on any of those

4    lists as to how the MDL is going to go forward.

5          And therefore I believe that the viewpoints of the

6    designated counsel on this issue and probably all other

7    issues is the stronger voice that Your Honor should hear as

8    to what the collective ignition switch plaintiffs want to

9    see go forward.

10         I think Your Honor that addresses the issues.

11         THE COURT:  All right, thank you.

12         Mr. Flaxer I want to give you a chance to be heard

13   after the other guys have weighed in.  So I'll hear next

14   from Mr. Esserman and then from Mr. Golden or Ms. Rubin, and

15   then you can respond to everybody who you think you need to

16   respond to, Mr. Flaxer.

17         MR. ESSERMAN:  Good morning, Your Honor, Sandy

18   Esserman on behalf of designated counsel with Mr. Weisfelner

19   and Mr. Inselbuch present in the courtroom also.

20         I'm not going to speak long, our letter I think

21   set forth our views on discovery and I've got nothing

22   further to add to that.

23         We think that there's more than enough

24   stipulations to decide the issues that are going to be

25   decided, that being issues number 1 and number 2.

1          GM late Friday asked that the issue, what I'll

2     call 3 and 4 or C and D under your order, be deferred.  We

3     have no objection to that.

4          I would note that those two issues specifically

5     use the word "ignition switch actions," and they're

6     requesting a response -- or initial brief by GM based on the

7     ignition switch actions, both the Old GM threshold issue and

8     the equitable mootness issue.

9          So I certainly understand the predicament that it

10    puts General Motors in, that is you've got 102 complaints or

11    you've got a master complaint, which they just want to

12    respond to that one, and that is understandable and we

13    accept that.

14         We do not see a need to postpone all four issues,

15    we think it is beneficial to this Court, it's beneficial to

16    the MDL court to get decisions out of this Court.

17         We all read very carefully the decisions of the --

18    the orders of the MDL and I think it is looking to this

19    Court to make certain decisions as it feels that it can, and

20    we certainly believe that the threshold -- due process

21    threshold issue and the remedies threshold issue you will

22    have a record, you will be able to make those decisions on

23    the record that exists now without any further discovery and

24    without any further stipulations frankly.

25         So we think we're ready to proceed.  I know new

Page 30

1    General Motors' brief is due in a few days, we'll respond.

2              With regard to the discovery I think I'm just

3    going rest on my papers.

4              THE COURT:  Okay.

5              MR. ESSERMAN:  Thank you.

6              THE COURT:  Thank you.

7              Mr. Golden?

8              MR. GOLDEN:  Good morning, Your Honor, Daniel

9    Golden, Akin Gump Strauss Hauer & Feld, counsel for certain

10   unit holders.

11             Your Honor, as you've now heard and read both New

12   GM and designated plaintiffs' counsel are seeking to put off

13   consideration of two of the four threshold issues, namely

14   the Old GM claim threshold issue and the equitable mootness

15   threshold issue on the grounds that the MDL court is

16   requiring the filing of a consolidated complaint for the --

17   in place of the more than 100 pending class action

18   complaints asserting claims involving economic loss.

19             As a result of that position New GM and the

20   designated plaintiffs' counsel are seeking to go forward now

21   only with respect to the due process threshold issue and the

22   related remedies threshold issue.

23             THE COURT:  And the standards for fraud on the

24   Court.

25             MR. GOLDEN:  And the standards.  Nobody is

Page 31

1    objecting to going forward on the legal standards of fraud

2    on the Court.

3              Your Honor, we filed a letter late Friday

4    afternoon, by the way it did contain a typo.  I think the

5    intent of the letter was clear, but we interchanged two of

6    the threshold issues.  But in that letter we explained that

7    we disagreed with the notion that you could go forward

8    simply with the procedural due process violation and the

9    related remedies issue when you are deferring the other two

10   issues and you don't have the benefit of the consolidated

11   complaint when we are going to discuss the due process

12   issues and the related remedies issues.

13             We believe that it would be virtually impossible

14   for Your Honor to decide completely the due process

15   violation issues and the related remedies issues without the

16   benefit of the consolidated complaint, and more importantly

17   without the benefit of the equitable mootness arguments.

18             Your Honor, we took comfort from your opening

19   comments that your view of this was that this was largely

20   holistic and that many, if not all, of these threshold

21   issues are interrelated or mirror images of one another, and

22   we agree.

23             The remedies threshold issue, which is the second

24   part of the due process violation threshold issue, is

25   defined in this Court's supplemental order as requiring this

Page 32

1    Court to determine once it -- or if -- once and if it

2    determines that there has in fact been a due process

3    violation whether a remedy can or should be fashioned as a

4    result of such violation, and if so, against whom.

5         It is our view that in deciding this issue the

6    Court would be required to consider whether the plaintiffs

7    are actually able to assert claims against the GUC Trust or

8    whether these claims are equitably moot, they go in tandem

9    with one another.

10        I don't understand the process where people would

11   be denied the ability to brief the equitable mootness

12   argument and not responding to the due process violation.

13        It would be a defense to the assertion by the

14   plaintiffs if it came to that point that they wanted to

15   assert their claims against the GUC Trust in the context of

16   procedural due process violation whether or not those claims

17   are equitably moot.  That is a point you know that we are --

18   consistently have supported, have suggested to the Court

19   that without that finding I don't know how you can make a

20   complete ruling on the procedural due process and the

21   remedies issue.

22        In addition one of the issues that will almost

23   definitely come up in the context of the due process

24   threshold issue is the number of cars and thus the number of

25   claimants which are the subject of ignition switch actions.

```
 1              There seems to be a fair amount of confusion if

 2    you read through the stipulated facts.  It seems that New GM

 3    is asserting that only 2.2 million cars based upon recalls

 4    issued on February 7 and February 25 and March 28th are the

 5    subject of ignition switch actions as a defined term.  We

 6    believe that's -- that estimate is off by more than

 7    11 million cars based upon additional recalls issued on

 8    June 16 and June 30.

 9              The consolidated complaint will shed substantial

10    light on who's right and who's wrong on what appears to be a

11    factual dispute.

12              Moreover the consolidated complaint will also shed

13    light on the actual claims being asserted and who they are

14    being asserted against.  Whether New GM or Old GM, and that

15    will go to the Old -- to the Old GM claim threshold issue.

16              Your Honor has already indicated that the ruling

17    on these threshold issues will take a considerable amount of

18    time.  It won't be a ruling from the bench, it won't be a

19    ruling that Your Honor will just simply dictate having had

20    the benefit of briefing and oral argument.

21              The complaint is to be filed I think Mr. Steinberg

22    said by October 10th -- October 15th, excuse me.  Yes, our

23    position would engender a delay in the briefing of the due

24    process violation and the related remedies issue, but we

25    think that they are so interrelated and equitable mootness
```

Page 34

1   is essentially a defense in some respects to the due process

2   violation and the related remedies issue that it would be

3   worth the delay of approximately 60 days, have the

4   consolidated complaint in front of us, there won't be a

5   dispute any longer about what's being asserted in that

6   complaint, and at that time and immediately thereafter all

7   of the parties can brief all of the issues, which as Your

8   Honor has indicated would probably be helpful in the sense

9   that they are mirror images of one another.

10          THE COURT:  Pause, please, Mr. Golden.

11          MR. GOLDEN:  Yes, Your Honor.

12          THE COURT:  I didn't want to interrupt you as you

13  were going through it because I was hoping you would

14  anticipate what I'm about to ask next.

15          So far I'm not aware of there being much

16  disagreement on the benefits of the amended complaint.

17          Is the difference in perspective that you have

18  from the other guys -- or at least some of the other guys --

19  vis-à-vis, whether everything should await briefing wise the

20  filing of the amended complaint or do you understand there

21  to be consensus that I can split the briefing to deal with

22  some stuff to get a running start and other stuff after the

23  amended complaint is filed or can I solve the problem by

24  simply not having oral argument in ruling until everything

25  is in?

1              MR. GOLDEN:  Well you can't glean an answer to

2      that question from the letters that were submitted.

3              Mr. Steinberg in his oral presentation suggested a

4      possibility that maybe you can have the baby by having

5      briefing but delay oral argument until some time

6      substantially or sufficiently after the filing of the

7      consolidated complaint so as to give the GUC Trust and the

8      GUC Trust unit holders the opportunity having seen the

9      consolidated complaint to be able to weigh in at least with

10     respect to oral argument on the equitable mootness

11     implications that follow from the consolidated claim.

12             Your Honor, frankly we think that's unfair.  We

13     don't see in the large scheme of this litigation that

14     delaying procedural due process by 60 days is going to make

15     much of a difference at all.  Frankly, I think it's largely

16     tactical on the part of the designated plaintiffs and New GM

17     to try and separate equitable mootness from procedural due

18     process.  We don't think that's fair.

19             So at the end of the day because --

20             THE COURT:  Pause, please.

21             MR. GOLDEN:  Yes.

22             THE COURT:  Because I'm sure everybody comes with

23     their own tactical moves and concerns.

24             MR. GOLDEN:  Absolutely, Your Honor.

25             THE COURT:  But your position in substance is that

Page 36

```
1    if indeed it is holistic you would think it more appropriate

2    that after waiting the time for the amended complaint to be

3    out there to be available for all I should then deal with

4    all five issues at the same time with the knowledge of what

5    the amended complaint says?

6              MR. GOLDEN:  Absolutely, Your Honor, we think that

7    makes eminently good sense.  They are -- these threshold

8    issues are so interrelated I think it would make the

9    briefing actually easier at that point, even though we'll be

10   briefing at one time more issues.

11             This is what was always contemplated from the very

12   beginning that all of these issues would be briefed at the

13   same time.  The fact that there is now going to be a

14   consolidated complaint I think leads to the urgency of that

15   decision.

16             THE COURT:  Continue, please.

17             MR. GOLDEN:  Your Honor, just it wasn't clear to

18   me that at this point of the hearing we were going to

19   debate, not debate the disputed stipulations of fact as

20   Mr. Steinberg said.  There are only seven disputed

21   stipulations of fact put forward by the GUC Trust and the

22   unit holders.

23             I tried to catch Mr. Steinberg's language where he

24   referred to those seven as either being argumentative or

25   drawing legal conclusions.  I'm not going to argue that
```

```
 1    point I'll just ask Your Honor to remember those comments

 2    when you actually get an opportunity to review the seven

 3    disputed facts.  All I'll say now is they are neither

 4    argumentative or do they call for legal conclusions.

 5              THE COURT:  Okay.

 6              MR. GOLDEN:  Thank you, Your Honor.

 7              THE COURT:  Thank you.

 8              Mr. Flaxer?

 9              MS. RUBIN:  Your Honor?

10              THE COURT:  I'm sorry.

11              MS. RUBIN:   (Indiscernible - 00:47:29).

12              THE COURT:  Well, Ms. Rubin, you're closer in

13    position to Mr. Golden than anybody aren't you?  Come on up

14    now and then Mr. Flaxer can be heard after you.

15              MS. RUBIN:  Good morning, Your Honor, I'm Lisa

16    Rubin of Gibson, Dunn & Crutcher for the GUC Trust, and with

17    apologizes to Mr. Flaxer for jumping the line.

18              I just briefly wanted to address the Court --

19              THE COURT:  Pull the mic closing to you if you

20    would, please, Ms. Rubin.

21              MS. RUBIN:  Sure.  Sure.

22              Your Honor, we have a couple of points that we

23    just wanted to underscore from Mr. Golden's preparation.

24              You asked Mr. Golden whether deferring oral

25    argument would help, and I want to underscore here that the
```

Page 38

1   answer is no.

2          To be as clear as we can be with Your Honor in

3   briefing the procedural due process issue and the remedy we

4   wholly anticipate that New GM is going to tell you there was

5   not a procedural due process violation.  That is not a shock

6   to anyone in this courtroom.  But at the same time they're

7   going to say that if there is a remedy at all that remedy

8   should come from the GUC Trust.  It would cut the GUC Trust

9   and the unit holders off at the knees to not then be able to

10  say to Your Honor that that is not in fact the case because

11  those claims would be equitably moot.

12          To be able to -- or to be forced rather, Your

13  Honor, to litigate the remedies issue without also being

14  able to raise the equitable mootness points with Your Honor

15  we think is fundamentally unjust.

16          The other thing that I would say, Your Honor, is

17  there is widespread agreement that we should defer the

18  assumed versus retained liabilities question, or as

19  designated counsel has corrected me on multiple occasions

20  assumed versus retained versus wholly independent and

21  entirely unrelated to the sale order and the sale agreement.

22          But I want to emphasize for Your Honor that the

23  reason we as the GUC Trust believe that should be deferred

24  isn't just a question of administrative ease for the parties

25  or judicial efficiently, it's an interpretive question, it

Page 39

1    is a mixed question of law and fact that necessitates

2    comparing the claims made by the lead plaintiffs against the

3    sale agreement and the sale order.

4           It would be fundamentally unfair to construe what

5    those claims are and whether they are in fact assumed versus

6    retained versus wholly independent on the basis of 102

7    existing ignition switch actions that are going to be

8    superseded and significantly modified by a single unitary

9    complaint.

10          To have to litigate what those claims are now when

11   those aren't if claims that lead plaintiffs are going to be

12   articulating in the MDL seems to me to invite this briefing

13   all over again once they amend.

14          And with that, Your Honor, I don't have anything

15   further for the Court.

16          THE COURT:  Okay.  Thank you, Ms. Rubin.

17          MS. RUBIN:  Thank you.

18          THE COURT:  Mr. Flaxer?

19          MR. FLAXER:  Good morning, Your Honor.

20          THE COURT:  Good morning.

21          MR. FLAXER:  I heard your preliminary rulings loud

22   and clear.

23          What I would observe is that we think first of all

24   that the areas which where we believe discovery should take

25   place before Your Honor rules on the due process issue are

Page 40

```
 1    highly relevant and very material.  And I'm specifically

 2    focusing on whether or not senior executives had knowledge

 3    of this what I'll call the ignition switch defect.

 4             We conceded that we think based on our

 5    understanding of the law that the extensive knowledge of

 6    I'll call them lower down employees at GM should be

 7    sufficient, but we're very worried about the remedy issue

 8    because we could win in a sense a pyrrhic victory by having

 9    Your Honor rule based on the stipulated facts that there has

10    in fact been a due process violation but not grant us the

11    ability to pursue claims against New GM based on New GM's

12    view on what I'll call contextual due process and argue as

13    we know they will argue that even if Your Honor finds that

14    there's been a due process violation that the only remedy

15    should be a claim against Old GM.

16             And we believe that if we could establish

17    knowledge of senior executives -- and I'm focusing primarily

18    though not exclusively on getting up to the level of general

19    counsel of North America and then up to the level of general

20    counsel of the company as a whole -- that if that could be

21    established then we think that would inform Your Honor's

22    view on what the remedy should be and in our view it would

23    -- we think it makes a stronger case for imposing a remedy

24    against New GM and permitting us to pursue those claims.

25             The Valucas report has formed the basis for a lot
```

Page 41

1    of what's before you on stipulated -- stipulated facts.  It

2    is surely long and contains an enormous amount of detail.

3           What left us very concerned was for whatever

4    reason a striking absence of discussion of what senior

5    people knew.

6           It's not that the Valucas report says we

7    interviewed, you know, Michael Robinson and Mr. Osborn and

8    some of the others and concluded that they didn't have

9    knowledge.  The trail just stops cold and doesn't quite go

10   there.

11          So one example just to sort of paint the picture

12   for Your Honor, if I may, and I believe we discussed this in

13   our letter, is that from November of '08 to September of '09

14   Michael Robinson was the general counsel of North America,

15   which we think is a very senior position.  It appears from

16   the Valucas report that the head lawyers for safety and the

17   head lawyers for consumer products reported to him, and it

18   appears from the Valucas report that there were indications

19   that those individuals one level down had knowledge.

20          We believe -- we can't understand why the report

21   didn't go to the next level.  Maybe it's in his interview

22   notes, but it's not in the report about what Mr. Robinson

23   may have been told.

24          It turns out that Mr. Robinson was one of the

25   individuals who was let go because of the ignition switch

Page 42

1    defect issues, which seems to us suggests very strongly that

2    there was some involvement there by him, otherwise why was

3    he left go over this?

4            So we were not able -- you know -- well, let me go

5    back.  We requested stipulations about Mr. Robinson's

6    knowledge based on what I'll call a negative inference from

7    the Valucas report.

8            Now the Valucas report is not evidence so in a way

9    I'm importing a concept that applies to evidence, but it

10   really is not evidence, it's in the category I guess of

11   hearsay, but having said that since we've all been using the

12   Valucas report as the basis for this effort it seemed

13   necessary and important for us so that Your Honor would be

14   able to look at the agreed facts and the disputed facts and

15   understand the areas of concern that we had better at least

16   ask those questions and if GM says no that's exactly the way

17   Your Honor contemplated the process and then Your Honor

18   could see what areas were areas where at least one of the

19   parties felt that there needed to be more investigation.

20           Another example would be the Delphi settlement in

21   2007.  One of the items on the list of warranty issues that

22   was resolved is called ignition switch failure.  Each of

23   those items involved at least $1 million of claims.  The

24   Valucas report again we think is -- leaves one feeling to

25   want to know more when you read what is said about it.  You

Page 43

1    would want to know how much money was allocated to the so-

2    called ignition switch failure.  You'd want to confirm that.

3            When the Delphi settlement refers to ignition

4    switch failure it's in fact referring to what we've all been

5    calling the ignition switch defect.  I think it's above 99

6    percent likely that it is, but it doesn't state that in the

7    report, I don't know why.  GM, which it was absolutely their

8    right would not stipulate to that.

9            We think -- and it seems very likely that a

10   settlement of this magnitude, which is we understand the

11   entire settlement, was a settlement of half a billion

12   dollars or in that range, that Your Honor should at least

13   have the opportunity to have a record that explores those

14   two narrow issues.  I think they're very important, but I

15   think targeted discovery could get at them.

16           It turns out now that Judge Furman has authorized

17   at the request of the what was then the temporary lead

18   counsel and now two-thirds of which are the lead counsel,

19   now the materials underlying the Valucas report as well as

20   documents turned over to the government are going to be

21   produced fairly soon in the District Court proceeding.

22           I'm going to put aside for the moment the obvious,

23   you know, problem of documents turned over by the government

24   are surely hundreds of thousands of pieces of paper.  Let

25   put that on the side for the moment.

1          It seems to me that if these materials are being

2     produced so another judge in a parallel proceeding is going

3     to have them any way and Your Honor is ruling on issues

4     where we think information in those materials would be

5     highly germane you ought to have it too.  You should be --

6          THE COURT:  Pause, please, Mr. Flaxer, because

7     what you just said informed my discretion that I would not

8     want to interfere with Judge Furman's decision to authorize

9     discovery of that character.

10          But you know I used to be a general purpose

11     litigator before I was a bankruptcy litigator and --

12          MR. FLAXER:  I actually know that.

13          THE COURT:  Right.

14          MR. FLAXER:  I remember that.

15          THE COURT:  And I know what document review takes,

16     it's a massive exercise, and it's a massive exercise in what

17     used to be the norm for litigation in the federal courts

18     back in the days of 10(b)(5) cases and things like that, and

19     reading all of those documents is going to be a massive and

20     time-consuming undertaking isn't it?

21          MR. FLAXER:  The answer is yes with a but, sort of

22     two buts.

23          One is that, Your Honor, you will control the

24     process every step of the way.  So if it turns out that this

25     is becoming -- it is going to cause undue delay Your Honor

Page 45

1   can control that process.  Your Honor could rule, for

2   example, I'll authorize review of the Valucas report notes

3   but nothing else for now.

4        It also seems to me that with modern technology of

5   which other lawyers in this room are much better at than I,

6   I assure you, but with the use of, you know, search terms if

7   the document says I'm guessing they are are in searchable

8   format or if they're not lots of lawyers in this room, as my

9   firm, also does have technology for converting documents

10  into searchable format.  I understand that in large class

11  action cases it's customary to have a centralized, you know,

12  in a software system and everything goes up on that and it

13  all becomes, you know, searchable.

14        That if the subject matter is limited -- and I

15  know there was a view that what we were suggesting wouldn't

16  be so limited -- but actually we're basically not seeking

17  discovery on most of what's in the -- in the Valucas report,

18  we're really focusing on senior level knowledge and what --

19  who -- and included in that I guess is senior level

20  involvement in the Delphi settlement.  That I think those

21  are actually limited compared to the vast scope of the

22  Valucas report.

23        And with -- so again with the available technology

24  and Your Honor's ability to control the process every step

25  of the way and we'll be back here no more status conferences

Page 46

1   Your Honor could say this set of documents is out it's going

2   to take too long, or I've authorized this but no more,

3   meaning I know you folks want to take -- want to take a

4   couple of depositions but I'm not going to authorize that.

5          You -- so I think with those two items on the

6   table I actually don't think the delay problem is as large

7   as it is being suggested, and I think in balancing the needs

8   of the parties and the benefit of doing this right the first

9   time and letting Your Honor have a more complete record as

10  balanced against the delay, and it surely will cause some

11  delay, I'm not going argue that it won't, we think, you

12  know, unbalance it's better for the process.

13         I suggested -- we're talking about two months, at

14  one point Mr. Steinberg said to me you're talking about six

15  months.  Even if he's right and it's six months -- and I

16  don't think it'll be, maybe it's four -- but even if he's

17  right I still think it's worth it for you to have a more

18  complete record.

19         THE COURT:  Okay.  Thank you.

20         MR. FLAXER:  Thank you, Your Honor.

21         THE COURT:  I want to give people opportunities to

22  reply to any remarks made after they spoke.  That would mean

23  opportunities to respond to what Mr. Flaxer said, but I also

24  want to get my arms better around the extent of agreement or

25  disagreement with what Mr. Golden and Ms. Rubin said.

Page 47

1          First you, Mr. Steinberg.

2          MR. STEINBERG:  Your Honor, I have only brief

3     remarks.

4          First we -- we sent Your Honor yesterday, to the

5     extent that Your Honor didn't have it, Judge Furman's order

6     of August 15.

7          THE COURT:  I've read it.

8          MR. STEINBERG:  And that order does describe what

9     will be discussed at the status conference scheduled --

10          THE COURT:  Which is on September 4 if I recall.

11          MR. STEINBERG:  That's correct, Your Honor.

12          And paragraph 1 says one of the items of the -- to

13     be discussed is an initial discovery plan to produce those

14     relevant non-privileged documents previously provided by New

15     GM and the other defendants to the extent applicable to

16     Congress and to the National Highway Traffic Safety

17     Administration.

18          So paragraph 1 is not talking about the Valucas

19     report or what's related to the Valucas report.

20          Separately the Valucas report is discussed in

21     paragraph 7 as another agenda item to be discussed, and

22     that's he wants to hear the parties' position on the

23     production of documents relating to the May 29, 2014 report

24     by Anton (ph) Valucas and a process for addressing disputes

25     regarding same.

1            So there was clearly a distinction between how the

2       Valucas report would be treated and what was already

3       produced to Congress and NHTSA.

4            And I think Mr. Flaxer in his preparation sort of

5       merged the concepts and I wanted to just be precise as to

6       what Judge Furman was going to be hearing from lead counsel

7       and from New GM on September 4th at the status conference.

8            The second is without trying to get into too much

9       of the weeds of the Delphi settlement, our letter to the

10      Court on Friday highlighted what the Valucas report said

11      about the Delphi settlement.

12           And, Your Honor, just so you know to put into

13      context Mr. Flaxer's remarks, the Delphi settlement broke

14      out six separate items for a specific resolution and then

15      they had a list of 43 items on the schedule.  And what he's

16      referring to is the line item on one of the 43 items on the

17      schedule.

18           The result of the Delphi settlement was that

19      Delphi as a debtor was supposed to pay Old -- New GM

20      $41 million and then the next year that settlement was

21      amended where GM waived any payment of the money.

22           So to the extent that one wants to put into

23      context what the Delphi settlement is about in connection

24      with this dispute we think those are additional relevant

25      facts.

1          The -- with regard to what Mr. Golden said about

2     the purpose the MDL complaint as it relates to the issues

3     that people want to brief now, I will point out that both

4     him and Mr. Flaxer were pointing to the remedy section, not

5     the due process section.

6          The equitable mootness doctrine I think has no

7     relevance at all to the -- to the -- whether there was a due

8     process violence or not.

9          The remedy section assumes that there was a due

10    process violation and wants to look to see whether as a

11    result of there being a due process violation what should be

12    the remedy that's fashioned as a result.

13          THE COURT:  Are you sure about that,

14    Mr. Steinberg?  Because I want to try very hard not to

15    prejudge issues, not to decide anything in advance, but

16    don't due process issues break down into multiple

17    components?  One an asserted denial of due process to be

18    heard on the form of the sale order or on the underlying

19    decision as to whether or not I protect New GM from

20    successor liability types of contentions, and then apart

21    from that in the alleged denial of due process on the

22    opportunity to file claims of this character against the Old

23    GM estate back when there was a full pot of money to do it.

24          MR. STEINBERG:  I think, Your Honor, the answer to

25    that is no, because the issue that is being teed up for Your

Page 50

1   Honor is whether there was a due process violation in

2   connection with the sale order.  The sale order was entered

3   in July of 2009, the schedules in this case were not filed

4   until three months later, the bar date was not entered into

5   until a later period of time, and the issue as to whether

6   they should be able to -- where there's a remedy because

7   they didn't file a claim or didn't have notice of a claim is

8   different than whether they got notice of a sale.

9           The issue of what the liabilities were of Old GM

10  at the time of the sale is I believe -- and you'll seeing in

11  our brief differently -- but the concern about whether there

12  was a due process violation then becomes with regard to the

13  bar order, the schedules, and what was known or not known,

14  that we believe is strictly an Old GM issue because all of

15  those events took place after July of 2009, months

16  afterwards, they were not New GM implicated issues.

17          And our understanding is that the only thing that

18  Your Honor is being asked to review was the due process

19  issues relating to the June -- July 5th events, not anything

20  that happened afterwards.

21          With regard to the timeliness issue I will point

22  out, and just so that everybody appreciates it, that

23  Mr. Golden has said that equitable mootness is relevant to

24  the remedies issue because if we can't file a claim against

25  -- if the plaintiffs can't file a claim against Old GM maybe

1   that should color how Your Honor deals with the issue.

2            Without trying to address whether I think that's

3   relevant or not I will point out to Your Honor that one of

4   the things that we keep on footnoting that Your Honor is not

5   being asked to determine as a threshold issue, even as part

6   of the equitable mootness issue, are the Pioneer factors,

7   right?  So that they're arguing that equitable mootness

8   prevents the filing of a claim against the estate at this

9   point in time.  But we keep on putting as a footnote that

10  the issue of whether you can file a late-filed claim is not

11  before the Court.

12           And so I'm not sure why they think that doing

13  equitable mootness colors the remedies but the Pioneer issue

14  didn't color the remedies.

15           But we've sort of split that baby in half and

16  equitable mootness came in as an agreement by all the

17  parties to say well we'll brief another issue, but it wasn't

18  originally part of your first issues.

19           And then I just go back to the -- what I said

20  before, which is that whether they can file a claim against

21  Old GM or not has nothing to do, we believe, as to whether

22  there was a due process violation that insofar as the

23  noticing of the 363 sale motion.

24           So we think that we should be going forward on the

25  briefing on the issues that we talked about and that there

Page 52

```
 1    should be no discovery and no discovery is necessary, and

 2    certainly limited additional targeted discovery and document

 3    discovery is way beyond what Judge Furman has talked about

 4    at all at the last conference and is not on the agenda for

 5    this conference.

 6                THE COURT:  All right, thank you.

 7                Mr. Esserman?

 8                MR. ESSERMAN:  Your Honor, Sandy Esserman on

 9    behalf of designated counsel.

10                To a certain extent Mr. Golden informed me of why

11    we don't need to wait to get to the due process issue.  He

12    recited the fact that 2.2 million vehicles were subject to

13    the ignition switch defect and perhaps there could be

14    another I thought he said 16 million as a result of recalls.

15    Regardless of whether it's 2 million or 16 million the issue

16    of due process has been teed up.  We do not need to know the

17    precise number, although we think we know, of ignition

18    switch recalls that are defective here.  We don't need to

19    wait until we see the amended complaint to get to that

20    issue.

21                We have the record ready to go, we have the record

22    ready to decide whether or not there's a due process

23    violation.  It is ready to be tendered to the Court.  I know

24    GM probably already has their brief in the can.  We think it

25    would inform everybody greatly to get that issue decided.
```

1           THE COURT:  Let me interrupt you, please,

2    Mr. Esserman.

3           MR. ESSERMAN:  Yes.

4           THE COURT:  As I understood the back and forth

5    that was agreed upon by the parties and that I so ordered

6    your guys have the next brief that's due.

7           MR. ESSERMAN:  Yes.

8           THE COURT:  And it's due in --

9           MR. ESSERMAN:  September 22?

10          THE COURT:  -- a week or two.

11          MR. ESSERMAN:  September 22 I thought.

12          THE COURT:  Correct, September 22.  So it's more

13   than a week or two, in fact it's over a month.

14          But if I were to agree with Mr. Golden that I

15   should keep all of the issues on the table and just delay it

16   to await the amended complaint the practical effect of that

17   would be to give your guys in the first instance more time

18   and then presumably a corresponding opportunity for those

19   who have a different view of the world to reply at a later

20   date.

21          I don't see Mr. Steinberg filing another brief for

22   a while, unless I misunderstood the schedule you guys agreed

23   to.

24          MR. ESSERMAN:  I think that's correct.

25   October 10th is what I've been informed by Mr. Inselbuch, is

Page 54

1      the next --

2              THE COURT:  Yeah, and that's what I had written in

3      my calendar when I had looked at the underlying so ordered

4      letter and it was confirmed to me by somebody this morning.

5              I understand your underlying conceptual point but

6      I'm trying to integrate that into the schedule that we now

7      have in place.

8              MR. ESSERMAN:  It just seems to me, Your Honor,

9      with everything done that needs to be done to decide the due

10     process issues and trying to fit it in the fabric of the

11     MDL, is this Court and the MDL court going to be benefited

12     by your ruling on due process?  And I think the answer to

13     that is yes.  And sooner rather than later.  Sooner for a

14     variety of reasons.

15             No matter which way you come out I think -- I

16     think everybody is going to be benefited by that ruling.

17     And with the record we've got before Your Honor we believe

18     that you can have that issue teed up and ready to decide.

19             I understand it's not going to be a bench ruling,

20     these are complicated issues, they're going to take a lot of

21     thought on your part and you will rule when you are ready to

22     rule, we all know that and we respect that, and you need to

23     be given time to contemplate the issues, but having said

24     that, that decision will advance the process tremendously.

25     And since I think we're all ready to go now to hold some --

1    to hold it up at this point we think doesn't make any sense

2    and we're ready -- we're ready to have that issue decided.

3            THE COURT:  Okay.  Thank you.

4            MR. ESSERMAN:  Thank you.

5            MR. WEISFELNER:  Your Honor, I apologize.

6            THE COURT:  Sure, come on up, please,

7    Mr. Weisfelner.

8            MR. WEISFELNER:  Your Honor, I want to tell you

9    why I think the position that Mr. Golden and Ms. Rubin took

10   ought to in effect be overruled.  I think we've come full

11   circle.

12           When designated counsel was first before you when

13   I spoke on behalf of designated counsel our position was

14   there was one issue and one issue only that ought to go

15   forward first, and that's whether or not there's been a

16   denial of due process in connection with the sale order.

17           That list of threshold issues grew, and in

18   particular the question of equitable mootness was proposed

19   by the GUC Trust and the GUC unit owners, and other issues

20   got proposed by other parties.  And Mr. Golden gave you two

21   reasons why in his view none of the threshold issues ought

22   to go forward at the current time.

23           And the first thing he raised was the filing of

24   the consent -- the near term filing of the consolidated

25   amended complaint.  And I'm sitting here trying to figure

Page 56

1   out what it is about a consolidated amended complaint and

2   what it could possibly say that has an impact on equitable

3   mootness.

4          Their position, as we understand it, as is

5   reflected in their stipulations, is that any claim -- any

6   claim to be asserted against Old GM, which is any claim to

7   be asserted against the GUC Trust, is equitable moot.  Any

8   claim.

9          So to suggest to Your Honor that they're in a

10  better position to brief that issue and that you're in a

11  better position to adjudicate that issue based on the

12  amended consolidated complaint seems to me to be lacking in

13  merit, with all due respect.

14         Now the second point they raised quite frankly I

15  think is a closer call and it reflects Your Honor's

16  tentative that to the extent that we raise the question of

17  was there a denial of due process, the next question is --

18  and that designated counsel and GM agree on -- is that we

19  ought to go forward with threshold issue 1 and 2, 2 being

20  remedy or what we colloquially in a short form refer to as

21  remedy.

22         Said a different way it's if Your Honor finds that

23  there's been a violation of due process what's the

24  appropriate remedy?  Frankly we thought it's a no-brainer.

25  If due process has by violated Supreme Court authority

1   teaches us that the order that was entered in violation of

2   due process can't be held against the party whose due

3   process was denied.

4        So we always thought the remedy came naturally

5   from a determination of violation of due process.

6        But Mr. Golden says, well, wait a second, we're

7   concerned that someone is going to argue that if there was a

8   due process violation the remedy ought to be something other

9   than.  Well then the order is not applicable as written, and

10  in fact we ought to find the remedy against potentially old

11  GM which implicates the GUC Trust.  And that's when the GUC

12  Trust insists that they want the notion of equitable

13  mootness to come forward.

14        And, Your Honor, I think we've conflated issues.

15  It is desperately important for the plaintiffs and I think

16  desperately important for Judge Furman and the process

17  contemplated there to get the train moving as quickly as

18  possible or at least that many of the cars of the train as

19  we can get moving as quickly as possible.

20        I can see the argument that says all of us would

21  benefit more from an amended consolidated complaint to

22  determine, to use I think Your Honor's view, what's a red

23  light?  Things that are implicated by the sale order, no

24  question about it under GM's theory.  What's a green light?

25  Things that were never implicated by the sale order.  Gary

Page 58

1    Peller's arguments comes to mind, although in a different

2    procedural context.  And what's a yellow light?  I concede

3    that reading the complaint helps that threshold issue, which

4    is why we agreed to defer it, but there's nothing about the

5    complaint that's going to impact equitable mootness, that's

6    a legal argument.

7              And now I'll be perfectly frank in terms of what

8    our motivations are.  I want to be able -- we want to

9    collectively be able to write a brief to you that says, Your

10   Honor, due process was violated in this context and the only

11   proper remedy for a violation of due process is that the

12   sale order, or more particularly the sale order injunction,

13   can't be imposed against the people whose due process rights

14   were violated.  Period, end of a very long story, everything

15   else is in front of Judge Furman.

16             What I don't want to have to brief simultaneously

17   is if I'm wrong and due process -- due process wasn't

18   violated or the appropriate remedy for a violation of due

19   process is not that the sale order injunction doesn't get

20   applied to me but now somehow the only recourse I have is

21   against Old GM.

22             THE COURT:  Pause, please, Mr. Weisfelner.

23             You've been around the block a couple of times.

24   Don't lawyers write briefs with an if I'm wrong second and

25   third and fourth argument following the first?

1             MR. WEISFELNER:  They do.  And, Your Honor, so

2     also could the GUC Trust and the unit holders, and they too

3     could argue if you find that due process wasn't violated or

4     you determine that it was violated and the appropriate

5     remedy isn't what Weisfelner thinks is the obvious remedy

6     don't send them knocking at our door because it's equitable

7     moot.

8             But do we have to hold up the train on the first

9     issue, which is due process, for an amended consolidated

10    complaint that isn't going to inform their briefing on that

11    topic?

12            Their position is there's no claim that could ever

13    be asserted against the GUC Trust no matter what your

14    amended complaint ultimately says that isn't equitably moot.

15    Okay, got it.  Their position is acknowledged for the

16    record.  We can all now brief due process with that position

17    in mind.

18            I don't understand, and they're the only party

19    sitting here today who's telling you delay the whole train.

20    We're agreeing split the train, let due process and remedy

21    go forward.  To our mind that's what the main constituents

22    want, plaintiffs and defendants, all of the plaintiffs, all

23    of the defendants.  The only party that's telling you to

24    slow this train down is the GUC Trust and certain unit

25    holders.  And I respect their position, but they're

1       rationale doesn't bear appropriate focus.

2               There's nothing about what's happened in the MDL,

3       and the only thing that's happened is the judge has said he

4       wants an amended consolidated complaint by a date certain

5       that's going to inform their legal argument.  They just

6       don't want to see --

7               THE COURT:  Well isn't it going to inform

8       everybody's legal argument?

9               MR. WEISFELNER:  On other threshold issues other

10      than due process.

11              Our point of view is yes, to the extent it impacts

12      legal argument on things like is this a claim against New GM

13      that stands all by itself?  Is this a claim against Old GM?

14      Is it impacted by the sale order because it was either

15      retained or assumed liabilities?  We conceded the point.

16      Your Honor will be better off, we'll all be better all by

17      seeing the amended consolidated complaint.

18              But what I can't fathom is why we need to wait now

19      for the amended consolidated complaint either to adjudicate

20      due process.  We worked for weeks -- actually months on the

21      stipulations.  We have a record ready to go, and I don't

22      understand why we need to move forward today on equitable

23      mootness.  And the only person -- the only people that are

24      here, Your Honor, telling you anything different is the GUC

25      and the unit holders.  Everyone else is in agreement.

Page 61

1          Let's go forward with issue 1, due process, issue

2     number 2, remedy.  And the only people that say no, stop the

3     entire train are Mr. Golden and Ms. Rubin, and they tell you

4     their rationale is we should all wait to see an amended

5     consolidated complaint.  Really, on your equitable mootness

6     position?  How could it possibly inform your decision?

7          So, Your Honor, we would respectfully request that

8     the main litigants in this case and their point of view be

9     afforded deference.  New GM, designated counsel, even the

10    outlier Groman plaintiffs all believe that we ought to go

11    forward with issue 1 and 2 and not defer all four issues.

12    But go forward with 1 and 2, defer 3 and 4, and give Your

13    Honor the briefing on the fraud on the Court standards.

14          Thank you.

15          THE COURT:  All right, thank you.

16          Has everybody had a chance to speak their peace?

17    Mr. Golden, limited of course to the new stuff your

18    opponents laid on you.

19          MR. GOLDEN:  Your Honor, Mr. Weisfelner makes a

20    big point that the real parties in action, the plaintiffs

21    all --

22          THE COURT:  Pull that mic close to you, please,

23    Mr. Golden.

24          MR. GOLDEN:  -- all the plaintiffs and the

25    defendants want to go forward with 1 and 2 and it's only the

1   GUC Trust unit holders and the GUC Trust that are insisted

2   upon going forward with equitable mootness now.  But maybe

3   that's because it's only the GUC Trust and the unit holders

4   who have the right to raise the argument about equitable

5   mootness.  So I wouldn't expect New GM or the plaintiffs to

6   be that concerned about when and in what context we can

7   raise equitable mootness.

8           You asked Mr. Weisfelner a very what I thought a

9   germane question, lawyers all the time argue in the

10  alternative.  He begrudgingly acknowledged that but said

11  well so could -- so to could the GUC Trust unit holders and

12  the GUC Trust argue in the alternative.  Except by virtue of

13  the way they tried to separate the threshold issues we are

14  really not going to be able to argue that in the

15  alternative.  So let's just go down the path they want to

16  just brief and have oral argument on the threshold issue

17  regarding procedural due process and the related remedies.

18          We would want to argue to the extent that it was

19  determined that there was a violation but that the remedy is

20  not going to be against New GM we want to defend against the

21  remedy being against the GUC Trust and we would be arguing

22  equitable mootness.  But they don't want us to argue

23  equitable mootness now, they want that issue deferred until

24  a later point in time.

25          So it's not like they say you could argue in the

1    alternative, but you can argue in the alternative with one

2    arm tied behind your back because you're not going to be

3    able to brief defensively in the context of the procedural

4    due process and remedies threshold, you're not going to be

5    argue equitable mootness.  That is inherently unfair.

6          We've heard a lot about the delay.  We've been at

7    this months just trying to get to a stipulation of facts.  I

8    just don't see how this 60 days when everybody acknowledges

9    that having a consolidated complaint in front of us will

10   inform everybody's decision and then we'll be able to brief

11   all four of the threshold issues simultaneously at the same

12   time as was always contemplated by the first scheduling

13   order and by the second scheduling order.

14          Thank you, Your Honor.

15          THE COURT:  All right.  Ladies and gentlemen, I'm

16   going to take a brief recess.  I would like you all back

17   here by 11:25 on the clock up there.  I can't guarantee you

18   that I'll be ready then, but please be back in the courtroom

19   at that point.  We're in recess.

20          (Recess at 11:15 a.m.)

21          THE CLERK:  All rise.

22          THE COURT:  Have seats, please.

23       (Pause)

24          THE COURT:  Ladies and gentlemen, I'm denying the

25   Groman plaintiffs request for a delay of the briefing to

Page 64

1    await the discovery that they wish at this point in time

2    without prejudice of course to their rights to get discovery

3    of that character or of any other character down the road.

4            And with respect to the schedule for the briefing

5    I am kicking the briefing out to await the filing of the

6    consolidated and amended complaint but with respect to all

7    five issues, or if you prefer all but the pure legal

8    standard for what it takes to somehow fraud on the Court,

9    and not just two of the four as was advocated by several of

10   the parties, most significantly designated counsel.

11           The basis for the exercise of my discretion in

12   this regard follow.

13           Turning first to the discovery aspect I

14   telegraphed much of my thinking with respect to that when I

15   discussed my tentative views, and after hearing the argument

16   nothing has caused me to change from those views.

17           The issue in my thinking is not whether discovery

18   of the type that's requested there ultimately will become of

19   significance and ultimately become necessary or desirable.

20   I assume without deciding that it ultimately will be one or

21   the other.

22           The issue now however is whether that discovery is

23   important enough at this point in time and how it presently

24   should be weighed as part of the balancing that all agree,

25   including Mr. Flaxer, is essential here in terms of meeting

1    the needs and concerns of many parties and ultimately

2    reaching a just result on what all describe as threshold

3    issues, describing it as such because they are threshold

4    issues.

5         We decided to go with threshold reasons -- or

6    threshold issues -- excuse me -- for a reason or many

7    reasons, including the potential, if not certainty, that

8    discovery would slow the train down, to use a metaphor that

9    we've used several times today.

10        I think the price to be paid of having that

11   discovery now is too high, and that taking the discovery now

12   would too materially adversely affect the needs and concerns

13   of the bulk of the parties in the case.

14        Then we get to the briefing.  Nobody disputes the

15   benefits to you all and to me of having the amended

16   complaint as laying out specific matters that we all need to

17   address, and potentially, although I don't know if I have

18   complete optimism on this, vis-à-vis, taking issues off the

19   table.

20        Nobody disputes that at least two-fifths of the

21   threshold issues should be deferred, but then you differ

22   with respect to the remaining issues and your diverging

23   views as to whether I should decide two of them or perhaps

24   three of them before deciding them all, all of course in

25   this context being threshold issues fully understanding that

Page 66

1    threshold issues may not be the end of the story.

2         I can't help but come to the view that your

3    recommendations in that regard are colored by your own

4    clients' tactical needs and concerns.  That of course is

5    what lawyers are paid to do, and I find no fault with that,

6    but of course judges have agendas different than advocates

7    do.

8         The designated counsel and Mr. Weisfelner was the

9    most vigorous and if you will obvious in doing so would like

10   to get -- would like to litigate issues on their terms, and

11   conversely Mr. Golden would like to do the same, and in that

12   connection would prefer not to be thrown under the bus.

13        My agenda is to get a just result and to do so in

14   a way so that the teeing up of the issues doesn't come at

15   the price of material prejudice to any party.

16        As an analytic matter Mr. Weisfelner was right

17   that a subset of the issues don't require an amended

18   complaint, but Mr. Golden and Ms. Rubin made the stronger

19   point that dealing with some issues without dealing with all

20   of them is fundamentally unfair.

21        It may be that I'm going agree with parties on the

22   left side of the courtroom to a greater degree after all of

23   the issues are litigated or it may not be, but the important

24   thing is that at this point I can't put a thumb on the

25   scales of the mechanisms by which we're going to litigate

Page 67

1    these issues to allow certain parties' issue to be litigated

2    without allowing everybody's petitions to be litigated.  And

3    that is particularly so since as you were able to since from

4    our colloquy the chances of my deciding some issues without

5    dealing with all of them and of even hearing oral argument

6    with respect to some issues without hearing all of them are

7    remote.

8             Even assuming, as I do for the sake of this

9    discussion, that all of the issues aren't wholly related and

10   that some could, if you wanted to badly enough, be decided

11   in isolation without deciding the remainder.  The risks of

12   doing that in a way that isn't unfair to other parties are

13   too great for me to tolerate.

14            I have no doubt whatever that I would need to get

15   all of the threshold issues, all five of them briefed and

16   argued before I'd issue a ruling on any of them, and that

17   comes at a price to you all and it comes at a price to me

18   and it comes at a price to Judge Furman.

19            I was originally sympathetic to the need to get

20   the train moving, and I forgot whether I made the point

21   first or Mr. Weisfelner did, but certainly getting the train

22   moving is a laudable goal.  But the issue is not when the

23   train leaves but when it arrives, and given the needs to

24   maintain fairness to all I need to focus on the latter

25   concern, when the train arrives, and to insure that when it

1    does arrive it does so in a way that doesn't put a thumb on

2    the scales as part of the briefing that's going to help me

3    do my job.

4           Ultimately folks as important as moving this

5    forward is to everybody in this room doing so piecemeal

6    comes at too high a price and nothing is more important to

7    me than maintaining the overall fairness of the briefing of

8    the issues as they go forward.

9           So you're to dust off the letter scheduling your

10   briefs that you gave me a couple a weeks ago and that I so

11   ordered and you're to fine tune the dates in there to delay

12   the response by the designated counsel by a time reasonably

13   necessary to take into account what the amended complaint

14   says and so correspondingly adjust the time for replies to

15   be filed.

16          I envision a change in that letter to the minimum

17   extent reasonably necessary to take into account the amended

18   complaint.  Assuming that it's as reasonable as the last one

19   I'll so order it promptly thereafter.

20          Not by way of reargument I'll hear follow up from

21   what I just said.

22          MR. STEINBERG:  Your Honor, I assumed, but I

23   wanted to make it clear, that the entire briefing schedule

24   is going to change so the opening brief itself will have to

25   be reset as well too.  I think when Your Honor went through

Page 69

```
1    what was going to be changed as a result of the MDL you said

2    the designated counsel and the reply, but I assume the

3    opening brief as well will be.

4              THE COURT:  Yes.  Anything else?

5              All right, hearing nothing else then we'll turn to

6    what else we have on the agenda for today.  To what extent

7    do we have stuff of that character, Mr. Steinberg?

8              MR. STEINBERG:  Your Honor, I think what we have

9    on the agenda is the other two motions that were filed.

10             THE COURT:  Okay.  And I think I telegraphed my

11   thinking on that.  I would like to get work on that under

12   way, but I don't want to do it in a way that's unfair to

13   anybody.  What's your recommendation?

14             MR. STEINBERG:  Well in connection with the

15   prepetition accident victim case and the non-ignition switch

16   motion we think that the same procedures that were done in

17   May with regard to the ignition switch action should follow,

18   which is are the plaintiffs in those actions going to agree

19   that Your Honor has jurisdiction under the -- your sale

20   order and agree voluntarily to a stay, and if not they

21   should file a no stay pleading as to why Your Honor does not

22   have jurisdiction over the claims that they are asserting.

23             THE COURT:  With the sword for your opponents be

24   carried by the same designated counsel or will it be

25   different guys?
```

Page 70

1                 MR. STEINBERG:  Well, Your Honor, the -- it may

2      very well -- well let me say it this way.  The prepetition

3      accident victims case now has on the list four -- only four

4      cases.  One of them we think will be added, but will agree

5      to an immediate stay, and one of them we think will be

6      amended to delete the prepetition accident cases and only

7      deal with the postpetition accidents, which would then leave

8      us with only three actions.

9                 And I think the only person who we've heard from

10     in connection with this motion is the -- is the person

11     represented the Powledge -- Mrs. Powledge who filed a letter

12     to Your Honor and wants to address the Court and filed an

13     objection -- something labeled as an objection on Friday.

14                 THE COURT:  Uh-huh.

15                 MR. STEINBERG:  So it may very well be that we

16     will be dealing with separate counsel on this as compared to

17     the overlapping counsel.  I think we still have one that

18     overlaps, but it's a fairly narrow universe.

19                 THE COURT:  I know you've tried to answer my

20     question, but what I'm trying to get my arms around is am I

21     going to have the benefit of your views being opposed by

22     somebody who knows something about bankruptcy law like the

23     designated counsel do?

24                 MR. STEINBERG:  I think that that may be the case,

25     but I'm not aware of who emerges as a bankruptcy counsel

Page 71

1    here.  Again, I said that the only person who is -- who I've

2    seen pleadings from is Mr. Davis, and I think he -- my

3    suggestion to him before the court was that if he was

4    looking for a relaxation of a briefing schedule because he

5    thought he had a lot to say then I would accommodate him,

6    but I think he first had to make the determination as to

7    whether he was going to stay the activity that was going on

8    in the other courts with regard to his litigation, and to

9    the extent that New GM was responding to what he was doing

10   we would stay as well our efforts to make this Court to

11   focus as to whether those claims were subject to Your

12   Honor's sale order and injunction.

13           Prepetition accident cases and especially the

14   Powledge matter -- I mean Powledge did get notice of the 363

15   sale because they were a litigant at the time.  They did

16   file proofs of claim in the case, they did settle those

17   proofs of claim.  They did agree to the exclusive

18   jurisdiction of the Bankruptcy Court with regard to their

19   settlement.

20           We think that it's pretty clear that Your Honor

21   should be the one to determine it, but I'm sure they have --

22   they have a different view or they may have a different

23   view, but I think they should articulate what their view is.

24           THE COURT:  Let me hear from anybody who's on the

25   other side of those two categories of cases.  Those with

Page 72

1    presale personal injury cases or non-ignition switch

2    cases --

3            MR. STEINBERG:  I will say --

4            THE COURT:  -- who want to be heard on scheduling.

5    But then I also want the parties who I heard before whose

6    own schedules might be impacted by any of this to have a

7    chance to be heard if they want to.

8            MR. STEINBERG:  The only thing I want to just say

9    to Your Honor is that on the non-ignition switch motion

10   cases there are only four in those as well, and one of them

11   has already indicated to us they will stay, so.

12           THE COURT:  I couldn't hear the last part.

13           MR. STEINBERG:  There are only four actions with

14   regard to the other motion, one of the people involved in

15   those actions has indicated to us they will stay.  So we

16   have a much narrower universe for now in both motions.

17           THE COURT:  Okay.  But what I guess I want people

18   to address is whether theirs should be considered to be tag

19   alongs to be addressed after I deal with this or whether

20   it's simply a supplemental brief that could be filed along

21   the same time schedule we're now talking about, especially

22   since the ruling that I gave a moment ago would seemingly

23   allow them enough time to catch up.

24           MR. STEINBERG:  That's fine.

25           THE COURT:  Mr. Weintraub, you got one of those

1    guys?

2              MR. WEINTRAUB:  Yes, Your Honor.  Thank you.

3              THE COURT:  Come on up, please.

4              If my concern was having a guy who knows something

5    about bankruptcy that would seemingly be mooted if you're

6    the guy.

7              MR. WEINTRAUB:  Well that's very nice of you to

8    say, Your Honor.

9              My firm represents a group of plaintiffs who are

10   in the presale category, and the counsel that we're working

11   with --

12             THE COURT:  Did you say presale category?

13             MR. WEINTRAUB:  Yes.

14             THE COURT:  Uh-huh.

15             MR. WEINTRAUB:  And the counsel that we're working

16   with is the third co-lead counsel in the MDL.

17             I don't know as I stand here today what role we

18   will have in the Bankruptcy Court on these issues, I need to

19   speak with my client about that, but if the question is

20   could we catch up on the new briefing schedule I'm sure we

21   could.

22             THE COURT:  Okay.

23             MR. WEINTRAUB:  Thank you, Your Honor.

24             THE COURT:  Thank you.

25             Others want to be heard?  Yes, come on up, please.

1          MR. DAVIS:  Thank you, Your Honor.

2          THE COURT:  Now forgive me, I know people who

3     appear here more frequently than you, so could you introduce

4     yourself?

5          MR. DAVIS:  It's Josh Davis for Dori Powledge

6     Phillips, the individual plaintiff.

7          THE COURT:  Okay.

8          MR. DAVIS:  First --

9          THE COURT:  Will I need to pull your complaint or

10    can I just invite you to start talking?

11         MR. DAVIS:  I don't think you'll need to pull the

12    complaint.

13         THE COURT:  Well, I got it any way, Mr. Davis.  Go

14    ahead.

15         MR. DAVIS:  Okay.  First to address Your Honor's

16    concern about the adequate experience of me in Bankruptcy

17    Court I can assure you I am not adequately experienced in

18    Bankruptcy Code law to simply be here representing my client

19    without help.  I do have help.  My bankruptcy counsel in

20    Houston has not filed an admission pro hac vice, will be

21    doing so.  Certainly I'm comfortable with his knowledge of

22    the Bankruptcy Code and some other complex bankruptcies that

23    he's been a part of that are certainly taking place in the

24    Southern District of Texas.

25              That being said it sounds like Mr. Hilliard has

1   engaged bankruptcy counsel that the Court is familiar with

2   and I think will be of good use to both the Court and to my

3   individual client with regard to the issues that the Court

4   has already addressed with other counsel concerning the

5   economic loss ignition switch claims.

6          Given the fact that the Court has provided me a

7   brief opportunity I suppose it's appropriate to talk about

8   the macro issues with regard to my specific client's claims

9   and the sui generous nature of these claims.

10          She had a lawsuit in 2007 that was litigated and

11   was litigated substantially with Old GM prior to the removal

12   to bankruptcy and prior to the sale order.  That case

13   resulted in a settlement in August of 2010.  But certainly

14   prior to that settlement my client's due process rights, as

15   much as anyone's, was prejudiced by the actions of New and

16   Old GM as outlined in our petition.

17          And I would say to the Court respectfully one

18   unique aspect of my client's claim is the fact that there

19   was ongoing discovery leading up to that settlement in which

20   very specific discovery requests were made by Old GM and as

21   I understand the GUC Trust's position were further

22   prejudiced by New GM subsequent to the sale order when

23   documents that would have been responsive to material

24   questions of fact that supported by client's position about

25   what caused this wreck that killed her husband and four

Page 76

1    children were not answered, and certainly were not answered

2    adequately with the kind of documents that would have

3    demonstrated that the claims were meritorious as opposed to

4    being the result of Mr. Adam Powledge's suicidal, murderous,

5    you know, rage that resulted in the wreck.  That was GM's

6    affirmative alternative causation theory in that case.

7            So certainly that fact combined with the fact that

8    we were actively litigating with someone that certainly

9    everyone has an expectation is litigating in good faith and

10   was not responding to very specific discovery requests that

11   would have demonstrated the merits of plaintiff's claims at

12   that time resulted in a significant undervaluing in the

13   Bankruptcy Court of that claim as it was settled.

14           There should have been absolutely no creditability

15   given to GM's position that my client's husband caused this

16   wreck purposefully, which was the only alternative causation

17   theory they came up with based on what we now know to be

18   recalls that demonstrate the exact kinds of electrical

19   mechanical failure that would have led to the wreck.

20           Another unique fact about my client's fact.  We

21   were litigating with New and Old GM.  First in the Galveston

22   District Court State Court and then after New GM's removal

23   in the Southern District of Texas for months.

24           The recall that affects my client's ignition

25   switch did not occur until June 30th.  Prior to that time

Page 77

1    New GM had already filed a 12(b)(6) motion, we were in the

2    midst of very active litigation, and at no time had they

3    indicated either to plaintiff, myself, my client, or to this

4    Court that they were going to be enforcing the sale order as

5    to personal injury claims, even those that predated the sale

6    order.  It was only on August 1st that that occurred.

7              So to the extent that New GM in its briefing in

8    its letter to the Court has somehow complained of

9    plaintiff's counsel ignoring the injunctive order of the

10   Court or the sale order we were simply operating on what was

11   already New GM's public statements concerning its

12   willingness or unwillingness to litigate these issues with

13   this Court.

14             THE COURT:  Pause, please, Mr. Davis.

15             I don't think anybody, or at least I'm not trying

16   to find fault with you in trying to represent your client up

17   to this point, I guess the issue that I have is can we weave

18   your needs and concerns into the scheduling orders that I've

19   previously entered and I'm about to enter, and can you join

20   the dialogue, and will you enter into a stay stip to tee

21   those issues up before me either in conjunction with or

22   shortly after the other guys?

23             MR. DAVIS:  With regard to the legal issues that

24   have already been discussed, due process, mootness, those

25   issues I think can adequately be addressed by myself on the

Page 78

1    kind of extended timeline that the Court has already

2    outlined.

3            With regard to my client's specific recall that we

4    think is the actual cause of this wreck, which is a May 15th

5    recall that does not impact or implicate the ignition

6    switch, but is solely about a brake wiring harness that has

7    not been the subject of the Valucas report, has not been the

8    subject of multiple congressional hearings in which GM

9    provided documents, and certainly would not be discussed

10   significantly in what's already been ordered to be delivered

11   the redelivery materials by the MDL, my client is prejudiced

12   from being able to adequately brief the merits of her fraud

13   claim that is specific to her and to the recall that we

14   think most closely fits the facts as that know them in terms

15   of what caused the upside lying wreck.

16           THE COURT:  Well you're saying two separate

17   things, Mr. Davis, let's slice and dice them.

18           One you're saying that you don't have an ignition

19   switch issue but you have a separate issue, and then second

20   you're saying that although you enter into a stip you were

21   defrauded effectively in entering into that stip either by

22   things that were said to you or by discovery violations, if

23   I hear you right.

24           Although the offense -- alleged offense that New

25   GM entered into or engaged in doesn't involve an ignition

Page 79

```
1    switch it at least seemingly has a lot of overlap with the

2    other issues that the other folks are litigating, except

3    that I guess whether there was failures of disclosure,

4    vis-à-vis, your problem, I think you said a harness in --

5              MR. DAVIS:  A brake wiring harness.

6              THE COURT:  Brake wiring harness.  And that's an

7    electro mechanical device that links the brake pedal with

8    the brakes actually operating or something different?

9              MR. DAVIS:  Yes, and there are associated problems

10   with the cruise control, power steering, other similar

11   effects that have been described by an ignition switch

12   defect, but given the fact that one of the -- one of the

13   side affects of this issue is that the brake lights fail to

14   come on when you're applying the brake.

15             Well GM as part of its murder, suicide,

16   affirmative defense specifically highlighted the fact that

17   witnesses testified they did not observe brake lights

18   leading up to impact.

19             THE COURT:  And your contention is that the reason

20   that the brake lights didn't light up is unrelated to

21   whether or not the driver put his foot on the brake pedal.

22             MR. DAVIS:  Well we know -- well, it's plaintiff's

23   position --

24             THE COURT:  You're saying that even though he

25   might have put his foot on the brake pedal the witnesses
```

1    might have not seen brake lights because of the separate

2    issue that you're identifying.

3              MR. DAVIS:  Correct.  The brake wiring harness.

4              THE COURT:  I understand the issue.

5              MR. DAVIS:  Okay.

6              THE COURT:  Obviously I'm not dealing with the

7    merits.

8              MR. DAVIS:  And --

9              THE COURT:  But forgive me, I could swear that you

10   had a vehicle produced back in the Old GM era, like a 2007

11   or was that the time of the accident and the vehicle was

12   made even before that?

13             MR. DAVIS:  It was a 2004 Malibu, and the accident

14   occurred on October 18th, 2005.

15             THE COURT:  Oh, 2005.

16             MR. DAVIS:  But in -- I'll just quickly, Your

17   Honor, my delineation between what we can stipulate to and

18   what we can't is purely the legal arguments in which the

19   Court is going to be assessing due process violations and

20   legal arguments concerning, for example, the correct

21   standard for fraud on the Court that can certainly be

22   briefed absent some specific discovery regarding the brake

23   wiring harness recall that we think my client's underlying

24   case was caused by.

25             The thing that I think certainly my individual

1    client needs to be provided discovery on is documents that

2    have never been produced to anyone and certainly haven't

3    been the subject of an internal GM report.

4         The Valucas report is going to provide and has

5    provided a lot of information and documents that are

6    applicable to the ignition switch recall that simply are not

7    going to be particularly helpful regarding the recall that

8    based on what we know seems to be most applicable to this

9    underlying crash.

10         THE COURT:  Okay.  Well, Mr. Davis, I'm not here

11   to play let's make a deal with you.  I can tell you if you

12   don't already know how I've ruled on people who are of a

13   mind to go it alone and who have made similar arguments to

14   you, and I encourage you to read my decisions in the Finuf

15   (ph) and Elliott matters.

16         You have the right if you want to file a no stay

17   pleading.  I guess it would have to come after New GM filed

18   something, which I'm not sure if it's fully filed yet or

19   not.  And if you do you'd have to -- or if you're thinking

20   about doing it you'd have to make a preliminary decision

21   first as to whether you can comply with Bankruptcy Rule 9011

22   which is like Federal Civil Rule 11, in light of the rulings

23   in that area.

24         I imagine you could enter into a stip with New GM

25   so you could go directly up on appeal if you wanted to

1    without subjecting yourself to Rule 11 risks.

2            At some point your contentions will be heard

3    either as flowing from the matters that are already before

4    me or anything else you want to argue, but the chances of

5    you being allowed to go it alone ahead of the other -- I

6    thought there were 94 -- I thought I heard 104 at this point

7    -- others, practically everybody is making arguments that

8    their cases -- that's an exaggeration -- many people are

9    making arguments that their cases are special.

10           You also heard the back and forth on discovery

11   today.  If I'm not of a mind to allow discovery of the type

12   that Mr. Flaxer issued or desired, which had some legitimate

13   justification, albeit on balancing I ruled against him, I

14   have some great difficulty, I'll just at the start of every

15   argument I tell you what I need you to address and this is

16   what I'm going need you to address, why your claim that you

17   should get any discovery at this point is any different.  It

18   sounds like it's a lot worse.

19           MR. DAVIS:  Well, Your Honor --

20           THE COURT:  But here's what I'm telling you you

21   got to do.  You're to caucus with the other parties in this

22   case, get yourself bankruptcy counsel, because at least

23   seemingly if you have a vehicle made by Old GM prepetition

24   it's subject to at least one of the three categories of the

25   sale order that New GM has been relying upon and going

1    against people like the Finufs and the Elliotts and most of

2    the others, and if you want to deal with it the mechanism is

3    going to be by a no stay pleading.

4            Sooner or later your concerns are going to be

5    heard, but the chances of you being allowed to litigate them

6    in another court before I've ruled on this issue are about

7    the same as me playing for the Knicks, or in your term it's

8    the Rockets.

9            MR. DAVIS:  And I understand Your Honor's

10   instruction regarding the stay.

11           THE COURT:  Okay.

12           MR. DAVIS:  It's not -- it's not my intent to file

13   something that is clearly so unnecessary based on Your

14   Honor's representations from the bench.

15           THE COURT:  I appreciate that.

16           I would encourage you to have a dialogue with the

17   other guys to see when and how your claim should be

18   addressed in the context of everything else that's being

19   addressed.

20           MR. DAVIS:  And I will certainly abide by the

21   Court's instruction on that issue as well.

22           That being said, with regard to discovery I don't

23   know how to make this any clearer.  Plaintiff's claims were

24   being actively litigated related to recalls that are

25   completely unrelated and were not addressed by the Valucas

Page 84

1    report or any documents that would be subject to the

2    redelivery material, and for that reason being able for my

3    client to demonstrate the due process prejudice that

4    occurred to her it's very difficult to say that we are

5    somehow going to be able to rely on these documents that

6    don't appear to be particularly relevant to her recall that

7    underlies her due process claim because there just hasn't

8    been much.

9            You know, the Valucas report doesn't address the

10   brake wiring harness recall or what GM knew or when it knew

11   or when it didn't disclose information or documents to

12   either this Court or to my client.

13           And it would seem that because my client's claims

14   are so intertwined on that specific recall that we would be

15   able to get some documents similar to those that have

16   already been produced by GM but specific to this recall.

17           Because at the end of the day, Your Honor, I

18   imagine I'm going to be left in a position where the Court

19   having the briefing from both sides is going to be looking

20   at the stipulations and certainly all the documents that are

21   being relied upon, moth significantly the Valucas report,

22   and I'm going to be left out in the cold because my claim

23   and the underlying prejudice relates to a recall that is

24   completely separate and not addressed by either the Valucas

25   report or any congressional hearing.  That's my issue.

Page 85

1            THE COURT:  I understand your issue, Mr. Davis, I

2      understood it the first time you told it to me.

3            MR. DAVIS:  Okay.

4            THE COURT:  The problem is as I articulated to

5      you, that the sale order and related sale injunction don't

6      mention ignition switches.  What they speak of is vehicles

7      that were manufactured by Old GM.

8            I am not going prejudge the ultimate outcome of

9      any controversy between you and Mr. Steinberg on that issue,

10     and I don't rule out for half a second that sooner or later

11     you're going to get the discovery you're looking for.

12           But the procedural issue before me now is how in

13     the context of 104 or whatever individual and class actions,

14     mainly the latter, that are on my watch, the extent to which

15     I allow matters premised on the outcome of arguments to

16     govern how I manage them before I decide the underlying

17     issues.

18           And as I stated in the Finuf decision I am

19     unwilling to assume the outcome in determining my extent of

20     jurisdiction to decide the underlying issues.

21           MR. DAVIS:  I appreciate that.

22           THE COURT:  Thank you.

23           MR. DAVIS:  Again.

24           THE COURT:  Okay.  Anybody else wanting to be

25     heard at this point on the issue that I discussed with

Page 86

1      Mr. Steinberg and Mr. Davis?  Ms. Rubin, come on up, please.

2              MS. RUBIN:  I appreciate Your Honor's patience

3      with us, I know that the Court is eager to bring this

4      proceeding to a close.

5              I want to mention that the GUC Trust is also a

6      party to the lawsuit involving Mr. Davis' client, so that

7      the ultimate controversy is not just between Mr. Davis and

8      Mr. Steinberg but also involves the GUC Trust.

9              And I'll say a few things here.  Your Honor, as

10     Mr. Davis touched upon there are lots of recalls that are at

11     issue here.  I would refer Your Honor to paragraphs 56

12     through 77 of the GUC Trust and unit holders' agreed upon

13     facts which discuss those recalls at length.  One of them at

14     least is at issue in Mr. Davis' client's suit.

15             The legal issue here in Mr. Davis' suit as he

16     outlined for the Court is not the defect in his client's

17     car, it is the fraud in litigating the claims related to

18     those defects which was revealed to Mr. Davis as he contends

19     or Mr. Davis' client at the times of the applicable recall

20     in May of 2014.

21             It is the GUC Trust' position that the damages of

22     which Mr. Davis' client now complains were caused by the

23     recall.  They are not an underlying product liability

24     defect.

25             I'd also point out there's an existing motion to

Page 87

1    stay already in Texas.  We are the informationally most

2    impoverished party here.  To the extent that Mr. Davis and

3    others like him need to litigation in the court the motion

4    to enforce brought by New GM all I would say is this, it's

5    impossible for us to understand whether or not Mr. Davis'

6    due process rights were or were not respected without having

7    access to some of the documents to which he referred.  We

8    simply do not know what happened with respect to the recall

9    that he claims is at issue in his client's complaint.  We

10   can't say for sure whether or not information was presented

11   to him that allowed his client to fully understand the

12   nature of her claims as we understand is necessary for him

13   to have a claim under the code.

14            We would ask that the Court consider that in

15   scheduling the new motions to enforce and whether or not

16   they should be part of the same schedule that we've

17   discussed earlier.

18            Thank you, Your Honor.

19            THE COURT:  Thank you.  Well this part is pretty

20   easy, folks.  Mr. Davis, there's a section -- where's

21   Mr. Davis?  Oh, there you are.  There's a section of the

22   Bankruptcy Code 1109 that says in a Chapter 11 case any

23   party in interest has the right to appear and be heard on

24   any issue.

25            What that means as a practical matter is that on

Page 88

1    anything that you're litigating before me now the GUC Trust

2    has told you they're interested in the controversy as well

3    or they may be affected by it, you've got to include them on

4    any papers you do.  That's obviously very easy.

5           When you ultimately get to discovery going back

6    and forth or stipulations and so forth one of my published

7    opinions says that even in an adversary all parties in

8    interest have a right under 1109 to participate in

9    discovery, although they got to try to do it in a non-

10   burdensome way.  That's going to give Ms. Rubin a chance to

11   have a seat at the table.  The case is called -- I think

12   Adelphia.  You can cite check a -- or shepardize a case

13   called Term Lenders versus Caldor (ph), which is a Second

14   Circuit decision that laid out the principal and this was

15   one of the early decisions that implemented rights after

16   that Caldor decision came down.

17          Now, I still think that discovery -- you're going

18   to have to address my questions at the outset of the

19   argument on your special needs and concerns is going to be

20   premature at this point, but when it comes, if it comes,

21   you're to invite Ms. Rubin, and since I normally prefer that

22   parties try to agree upon their discovery needs and concerns

23   informally without court intervening, just include her at

24   the table at such time as it happens.

25          Mr. Steinberg?

Page 89

1          MR. STEINBERG:  Your Honor, I'm happy to work with

2     Mr. Davis to see whether we can agree to something as to the

3     timing of the no stay pleading so that it's not lost.

4          The present pleading and the letters that Mr.

5     Davis writes did what the earlier complaints did in the

6     ignition switch actions which defines Old GM and New GM as

7     collectively GM and then where I say the entire allegations

8     as it was GM.

9          Just so there's no confusion this -- after the

10    sale this claimant actually filed a claim in the case,

11    which --

12          THE COURT:  Claim in the Old GM case -- you mean a

13    claim --

14          MR. STEINBERG:  In the Old GM --

15          THE COURT:  -- like a traditional prepetition

16    claim?

17          MR. STEINBERG:  Right.  That's correct.  So it's

18    sort of a tacit admission that they knew that that was the

19    party to go after Old GM.

20          What he's complaining about now was a settlement

21    reached by the GUC Trust that that was a mediated

22    settlement, it wasn't handled by New GM, it was handled by

23    the GUC Trust and their counsel.

24          If he wants to vacate that settlement which Your

25    Honor actually approved because he thinks he has rights he

```
 1    actually should file that type of motion.  But I actually

 2    had no clue what Ms. Rubin said as to how she wants to

 3    reframe his claim.  He got notice -- his client got notice

 4    of the sale, his client got notice of the bar order, his

 5    client filed the claim against the GUC Trust, the bankruptcy

 6    estate, they went to court-ordered mediation, they had a

 7    settlement, Your Honor approved the settlement.

 8              If he thinks that something happened because of a

 9    recall on a car that was destroyed in 2005 by an accident

10    which was clearly a prepetition event then he needs to

11    articulate what the claim is and we will respond as to

12    whether we think that is a claim or not a claim.

13              But I didn't want the confusion that Ms. Rubin had

14    said to linger with Your Honor.

15              THE COURT:  All right.  Look, this isn't the first

16    time or I suspect the last that New GM is going to say it's

17    Old GM's problem and Old GM is going to say it's New GM's

18    problem, and I'm not going to decide those issues today.

19    All I'm trying to do is tee this stuff up in an orderly way

20    so this case doesn't spin out of control, and you guys are

21    all good lawyers and I'm going expect you to do that.

22              Anything else?  Okay, then we're adjourned.

23              MR. STEINBERG:  Your Honor, this is a status

24    conference, right, so what -- what I'd like to do is to be

25    able to try to propose an order which I'll settle on all the
```

Page 91

```
 1    plaintiffs which is to try to impose the same stay, no stay,

 2    either you enter into a voluntary stay and then if you think

 3    you're not subject to Your Honor's jurisdiction do a no stay

 4    and file a pleading, and I will be -- I will be cordial and

 5    try to work with whatever deadlines that people have.

 6              THE COURT:  So what you're speaking of now is

 7    those with prepetition injury and death claims and claims of

 8    any character with respect to matters other than ignition

 9    switches.

10              MR. STEINBERG:  Economic loss cases --

11              THE COURT:  Economic loss cases.

12              MR. STEINBERG:  -- which involve Old GM cars.

13              THE COURT:  All right.  You can tee it up that way

14    procedurally and that will be the mechanism.

15              I still want you to see if you can go forward to

16    see if we can avoid overlap between the stuff that's already

17    going on here and the new stuff, and that to the extent

18    there isn't any they have a means of catching up without

19    holding back everything going on here.

20              MR. STEINBERG:  That's fine, Your Honor.  And I

21    will try to -- just so Your Honor knows, I will try to reach

22    out to all of them to see if I can get them to agree to a

23    form because there's no coalesce counsel, and if not I will

24    settle the order on seven-days notice, which will give

25    everybody a week to react to it, and if people call at the
```

Page 92

1    end and ask for a little more time I will try to accommodate

2    date them.

3              THE COURT:  Okay.  Fair enough.  Anything else,

4    anybody?

5              MR. STEINBERG:  No.

6              THE COURT:  Thank you.  We're adjourned.

7         (Whereupon these proceedings were concluded at 12:23

8    PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 93

1                           I N D E X

2

3                           RULINGS

4                                              Page        Line

5    Gorman Request for Delay                    63          24

6

7    Schedule for Briefing                       64           4

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 94

1                     C E R T I F I C A T I O N

2

3     I, Dawn South, certify that the foregoing transcript is a

4     true and accurate record of the proceedings.

5

6     Dawn South   Digitally signed by Dawn South
                   DN: cn=Dawn South, o, ou,
                   email=digital1@veritext.com,
                   c=US
                   Date: 2014.08.21 12:17:15 -04'00'

      _____

7     Dawn South

      AAERT Certified Electronic Transcriber CET**D-408

8

9     Veritext

10    330 Old Country Road

11    Suite 300

12    Mineola, NY 11501

13

14    Date:  August 21, 2014

15

16

17

18

19

20

21

22

23

24

25