KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
|     f/k/a General Motors Corp., *et al.* | : | |
| | : | |
|                     Debtors. | : | (Jointly Administered) |
---------------------------------------------------------------x

# NOTICE OF FILING OF EIGHTH SUPPLEMENT TO SCHEDULE "2" TO THE MOTION OF GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION

**PLEASE TAKE NOTICE** that on September 18, 2014, General Motors LLC filed the attached *Eighth Supplement to Schedule "2" to the Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* with the United States Bankruptcy Court for the Southern District of New York.

23862463.3

Dated: New York, New York
September 18, 2014

        Respectfully submitted,

        /s/ Scott I. Davidson
        Arthur Steinberg
        Scott Davidson
        KING & SPALDING LLP
        1185 Avenue of the Americas
        New York, New York 10036
        Telephone: (212) 556-2100
        Facsimile: (212) 556-2222

        Richard C. Godfrey, P.C. (admitted *pro hac vice*)
        Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
        KIRKLAND & ELLIS LLP
        300 North LaSalle
        Chicago, IL 60654
        Telephone: (312) 862-2000
        Facsimile: (312) 862-2200

        *Attorneys for General Motors LLC*

23862463.3

# EIGHTH SUPPLEMENT[1] TO SCHEDULE "2"

## SAMPLE ALLEGATIONS/CAUSES OF ACTION IN IGNITION SWITCH COMPLAINTS FILED AGAINST NEW GM NOT CONTAINED IN THE PREVIOUS SUPPLEMENTS TO SCHEDULE "2" TO MOTION TO ENFORCE[2]

| **Plaintiff** | **Allegations** |
|---|---|
| Alers | "The Defendant initially manufactured the Saturn Ion in 2003 and in 2005 its cousin, the Chevrolet Cobalt." Compl., ¶ 2.<br><br>"Second, the Defendant had knowledge of the sub-par ignition switches since 2001-2002 and failed to provide the Plaintiff with any written or oral notice at the time of purchase in 2010 regarding the sub-par ignition switches." Compl., ¶ 13.<br><br>"The Defendant knew of the defect since 2001-2002. The Defendant knew of the accidents and deaths related to the defective ignition switches in 2004." Compl., ¶ 17.<br><br>"Since 2001-2002, the Defendant knew the sub-par ignition switches were defective and failed to meet the Defendant's torque requirements or standards as a safe and reliable ignition switch." Compl., ¶ 18.<br><br>"In 2002, Delphi Automotive, supplier of the ignition switches to the Defendant, informed the Defendant that the ignition switches failed to meet the Defendant's specifications. The Defendant told the supplier to install the switches anyway. The Defendant sold the automobiles to the public without the disclosure of the information that the ignition switches failed to meet the Defendant's specifications was an intent to deceive the Plaintiff." Compl., ¶ 20.<br><br>"At the time the Plaintiff signed the contract to purchase the Cobalt in 2010, the Defendant refused to disclose the ignition switch problem although the Defendant had knowledge of the sub-par ignition switch problem since 2002, and knowledge of the deaths and major injuries related to the ignition switch problem since 2004." Compl., ¶ 25.<br><br>In his request for punitive damages, the Plaintiff asserts that "[t]he Defendant knew of the link between the sub-par ignition switches and death-related accidents in 2004." Compl., ¶ 31. |
| Krause | "The defects existing in Plaintiffs vehicle relating to the above recalls represent a serious safety concern to Plaintiff, which General Motors knew about since 2004, as outlined below." Compl., ¶ 7. |

---

[1] This schedule supplements the previous supplements and the original Schedule "2" previously filed with the Court in connection with the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* on April 21, 2014 [Dkt. No. 12620]. *See* Dkt. Nos. 12620-2, 12672-8, 12699, 12720, 12723, 12781, 12819, 12844.

[2] Due to space limitations, this chart contains only a ***sample*** of statements, allegations and/or causes of action contained in the complaints referenced herein. This chart does ***not*** contain ***all*** statements, allegations and/or causes of action that New GM believes violates the provisions of the Court's Sale Order and Injunction and the MSPA.

23862463.3

| **Plaintiff** | **Allegations** |
|---|---|
| | "In 2004, before the launch of the 2005 Cobalt, GM became aware of incidents wherein the vehicle engine would suddenly lose power in the event the key moved out of the 'run' position when the driver inadvertently contacted the key or steering column." Compl., ¶ 11.<br><br>"Throughout 2005, GM received similar field reports of vehicles losing engine power when the key moved out of the 'run' position. A proposal was approved to redesign the key head but later cancelled. Instead of recalling the vehicles to replace the defective ignition switches, GM issued a Safety Bulletin." Compl., ¶ 13.<br><br>"Although GM developed an insert for the key ring that changed it from a slot design to a hole design, to prevent the key from easily jogging the ignition switch out of the run position, the redesigned ignition switch was not installed in vehicles until the 2007 model year." Compl., ¶ 14.<br><br>Count I is based on "breach of implied contract."<br><br>"GM's intent to provide safe vehicles was evidenced by, among other things, its advertising and marketing materials emphasizing the safety qualities of its vehicles." Compl., ¶ 27.<br><br>"Plaintiff would not have purchased the subject vehicle, or would not have paid the requested purchase price had he known of the ignition switch defect and other inherent defects." Compl., ¶ 28.<br><br>"GM breached the implied terms of their contract by providing Plaintiff with a vehicle that contains an unreasonably dangerous conditions." Compl., ¶ 29.<br><br>Count II is based on "breach of implied warranty of merchantability."<br><br>Count III is based on "breach of the implied warranty of fitness for a particular purpose."<br><br>Count IV is based on "breach of express warranty."<br><br>"GM expressly affirmed through its statements and advertisements that the subject vehicle was of high quality, and, at a minimum, would work properly and safely." Compl., ¶ 48.<br><br>"The aforementioned concealment was material because if it had been disclosed Plaintiff he would not have bought the subject vehicle at the same price, or would not have bought it at all." Compl., ¶ 58. |