# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JONI PRECHT, on behalf of herself and all others similarly situated, | Case No. 1:14-cv-20971-PCH |
| Plaintiff, | **CLASS ACTION** |
| vs. | |
| GENERAL MOTORS LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Joni Precht ("Plaintiff" or "Precht") , brings this action against

Defendant General Motors LLC ("GM"), by and through her attorneys,

individually and on behalf of all others similarly situated, and alleges as follows:

## INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiff on behalf of herself

and a class of current and former Chevrolet Traverse vehicle owners and lessees

with defective airbag systems including model years ("MY") 2010-2013 Chevrolet

Traverse vehicles (the "Class Vehicles" or "Vehicles"), but only those for which

General Motors, LLC is liable, not those for which General Motors Corporation

would be liable.[1]  As discussed in more detail below, as the result of defects in the

airbag systems, airbag warning lights are illuminating in the Class Vehicles.  Given

_____

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

- 1 -

the recent Department of Justice criminal probe concerning GM ignition switches, and a release of a report on March 13, 2014, by the Center for Auto Safety, concluding that 303 fatalities have occurred as the result of airbags that did not deploy in GM vehicles, the sensitivity to airbag issues in GM vehicles is at a fever pitch.

2.     This action arises from Defendant's failure, despite their longstanding knowledge of a material design defect, to disclose to Plaintiff and other consumers that the Class Vehicles are predisposed to an airbag system defect (the "Airbag Defect").  This defect – which frequently manifests during and shortly after the limited warranty period has expired – will inevitably cause airbag failure notifications to illuminate on the dash of the Class Vehicles.

3.     The illumination of the airbag warning light is of substantial concern to any reasonable consumer as it creates a risk that an essential safety component will fail when occupants need it most – especially in light of recent revelations about rampant airbag failures in GM vehicles.  Under the circumstances, the mere threat of an airbag failure raises substantial safety risk to the occupants of Class Vehicles.

4.     Not only did GM actively conceal the fact that particular components within the airbag systems are defective (and require costly repairs to fix), they did not reveal that the existence of this defect would diminish the intrinsic and resale

value of the Class Vehicles and lead to the safety concerns described within.

5.      GM has long been well aware of the Airbag Defect.  Despite its
longstanding knowledge of this design defect, GM has routinely refused to repair
the Class Vehicles without charge when the defect manifests.  As a result, many
consumers have expended significant cost to repair this defect.

6.      Many owners and lessees of Class Vehicles have communicated with
Defendant's agents to request that GM remedy and/or address the Airbag Defect
and/or resultant damage at no expense.  Defendant has failed and/or refused to do
so.

7.      For customers with vehicles within the written warranty period (which
extends for the shorter of 3 years or 36,000 miles, GM has done nothing more than
temporarily repair the Airbag Defect, or replace it with other similarly defective
and inherently failure-prone parts.  GM has historically refused to take any action
to correct this concealed design defect when it manifests in vehicles outside the
warranty period.  Since the Airbag Defect typically manifests shortly outside of the
warranty period for the Class Vehicles – and given Defendant's knowledge of this
concealed, safety related design defect, unequal bargaining power, and other
factors discussed below – GM's attempt to limit the warranty with respect to the
Airbag Defect is unconscionable here.

8.      Despite notice and knowledge of the Airbag Defect from the

numerous consumer complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, GM has not provided a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out of pocket expenses to repair the defect.

9.      As a result of Defendant's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value.  The unfair and deceptive trade practices committed by Defendant were conducted in a manner giving rise to substantial aggravating circumstances.

10.     Had Plaintiff and other Class members known about the Airbag Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

11.     As a result of the Airbag Defect and the considerable monetary costs associated with attempting to repair such defect, Plaintiff and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by GM's conduct.

12.     Accordingly, Plaintiff brings this action to redress Defendant's violations of the Florida consumer fraud statutes, and also seek recovery for Defendant's breach of express warranty, and breach of the covenant of good faith

and fair dealing.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, Defendant has advertised in this district and has received substantial revenue and profits from its sale and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

15.     This Court has personal jurisdiction over Defendant because it has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the Southern District of Florida and throughout the United States.

## THE PARTIES

### Plaintiff Precht

16.    Plaintiff Joni Precht ("Precht" or "Plaintiff") is a citizen of the State of Florida, residing at 7310 Poinciana Court, Miami Lakes, Florida, 33014.

17.    In or around May 2011, Plaintiff Precht purchased a new 2011 Chevy Traverse from Miami Lakes Auto Mall, an authorized Chevrolet dealer and repair center located in Miami Lakes, Florida.

18.    Plaintiff Precht purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.  Her vehicle bears Vehicle Identification Number: 1GNKREED2BJ282766.

19.    At approximately 65,000 miles, Plaintiff Precht noticed that the "check/service air bag" light was illuminated on her dash.  Plaintiff quickly brought her vehicle to the dealership, where she has had all scheduled maintenance performed, and was informed that a repair would cost $300, but that the airbag was still fully operational.  After completing service and an oil change the airbag light went off.  At approximately 70,000 miles when the vehicle was again due for an oil change the light illuminated again.  After service the light went out.  The light illuminated again at 75,000.  More recently, on or about March 17, 2014, at 82,775, the light illuminated yet again.  When the situation manifests, it appears as a warning light on the center console of the car.  Below is a photograph of

Plaintiff's center console warning light taken on or about March 17, 2014.



20.    Plaintiff Precht has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Airbag Defect, including, but not limited to, any out-of-pockets she incurs to repair the Airbag Defect, future attempted repairs and diminished value of his vehicle.

21.    Neither Defendant, nor any of its agents, dealers or other representatives informed Plaintiff of the existence of the Airbag Defect and/or defective vehicle design prior to her purchase.

**Defendant General Motors LLC**

22.     Defendant General Motors LLC is a multinational corporation that manufactures vehicles in 37 countries.  GM is incorporated under the laws of the state of Delaware and maintains its corporate headquarters in Detroit, Michigan. Chevrolet is one of the 10 brands of vehicle manufactured by GM.  The Chevrolet Traverse is one of the vehicles manufactured by GM under the Chevrolet brand name.

## TOLLING OF STATUTES OF LIMITATION

23.     Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiff and members of the Class could not have reasonably discovered the true, latent defective nature of the Airbag Defect until shortly before this class action litigation was commenced.

24.     Defendant was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Class Vehicles, that this defect is based on a poor design and/or substandard materials, and that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.  As a result of this active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

# FACTUAL ALLEGATIONS

## A.    The Airbag Defect within the Class Vehicles.

25.    The Chevrolet Traverse is a seven or eight seat full-size crossover SUV built on the GM Lambda platform (also used on the GMC Acadia and Buick Enclave).  The first model year of production was the 2009.  In 2008 and 2009, the Traverse was manufactured in Spring Hill, Tennessee.  Since 2010 the Traverse has been manufactured at the Lansing Delta Township Assembly in Michigan.  From inception to December 2013, Chevrolet produced and sold 496,478 Traverses in the United States.

26.    When the Airbag Defect manifests in the Class Vehicles, the dash warning light illuminates.  As an essential safety system in the vehicles, even the possibility of the airbags failing to deploy in an accident scenario is of substantial concern to any reasonable consumer, particularly given the very public issues GM has recently had with airbag and ignition switch failures.

27.    Defendant has issued several technical service bulletins ("TSBs") related to airbag issues in the Class Vehicles.  The TSBs can essentially be distilled down to two issues.  First, all implicated model years have a TSB along the following lines:

**SUMMARY:**
PASSENGER PRESENCE SYSTEM (PPS) MAY COMMAND PASSENGER AIRBAG INDICATOR AND SEAT BELT REMINDER ON WHEN ELECTRONIC DEVICES (COMPUTERS,

MP3 PLAYERS, CELL PHONES, DIAGNOSTIC SCAN TOOL, ETC.) ARE PLACED ON FRONT PASSENGER SEAT, DTCS 5045 OR B0074 0F SET IN PPS MODULE. 2/21/13.

It cannot be gainsaid that the presence of personal electronics, such as cellphones, is all but a certainty among consumers in today's world. The notion that the proper functioning of the airbag system in the vehicles is adversely impacted by the presence of personal electronics, yet no recall as to this problem has been issued, borders on absurd.

28.     The second airbag-related TSB available at NHTSA's website, www.safercar.gov, concerns "loose, missing, or broken connector position assurance retainer[s] at the airbag." It is unclear whether this issue is the result of substandard parts, poor engineering, or both.

29.     On March 17, 2014, GM issued a recall seemingly pertaining to the second TSB. However, it is unclear that this recall will fix the issues Plaintiff has experienced and GM has made no provision to compensate owners who previously paid to complete repairs.

**B.      Complaints by Other Class Members.**

30.     Plaintiff's experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Airbag Defect within the Class Vehicles. A small sample appears below:

 **Service airbag soon lights on, off, on, off and now on again.**
« **on:** October 25, 2013, 07:45:08 PM »

---

We have a Chevy Traverse 2012.  Just out of warranty, our alternator went out and cost $1,000.  Then 2 weeks later, our service airbag soon light came on and stayed on. (I have read the information about electronic devices that can cause problems laying in the seat).  We paid the dealership $400 to replace a seat belt tensioner.  Getting ready for a long weekend trip the following week, and the light came back on.  Went to the dealership and they said it was another seat belt tensioner.  Another $300 for the repair since they gave us a discount???  2 weeks later...our service airbag light came out, I called and made an appt at another dealer in town but he light went off the following morning so I cancelled.  A day later, the light has returned and is staying on... What the heck is going on?  Any ideas?  No cell phones, laptops, etc on the seat.   Mileage is now 44,000.

http://www.traverseforum.com/index.php?topic=4745.0

**2013 traverse "service air bag" message keeps coming on**
« **on:** September 12, 2013, 11:23:35 PM »

---

We purchased a new 2013 traverse in December.  We have had it in the shop 4 times before May.  One time the computer/electronic system shut down while driving and then after about 3-4 seconds they lights and computer came back on.  They could not find anything wrong with it at the time.  The next three times the  "service air bag" message was coming on.  The first time they said it was a loose connection and they pushed it together (under the driver's seat).  The second time they replaced something and the third time they replaced something else.  It just came on again.  I am very frustrated!!!!!!!!!!  I purchased a new vehicle with the belief that I would not have to take it for repairs for some time.  The dealership has been helpful, but I am still not happy and worried that I may run into more trouble when the car is actually old.
Has anyone else had problems with the "service air bag" message and light?  I found a few complaints on the older traverses and one on the 2013. I just want it fixed.

http://www.traverseforum.com/index.php?topic=4105.0

Maxxmd -

What was the outcome of the problems with your Traverse?

- 11 -

I have a 2009 traverse and am having the same identical problems. I've had the car at the dealership numerous times. The dealership has told me that they have been working with a "GM Engineer", but now it appears that they have given up and are telling me that the vehicle is behaving "normally".

The bucking/surging seems to be getting worse. It's very annoying!
Also still having problems with the service airbag light continuing to come on/off (wiggling the wire harness under the drivers seat seems to make it come and go). Heated seat on drivers side intermittent as well.

Would you be willing to share the contact information you have for the folks at GM who helped you get your problems resolved, assuming they were resolved?

Thanks,
Scott

http://chevytraverseforum.com/topic/637-multiple-problems/

I bought a used fleet 2009 traverse and the airbag light comes on constantly. i didn't pay much attention to it, but now it's really aggravating me. i took it to the dealer but they wanted to charge me for checking it. i told them that i had mentioned before but the light had turned off again so not much attention was placed on it. this is a big concern for me. also this vehicle has the habit of rolling back when i park or on a slight incline this is scary!!!!!

Read more: http://www.faqs.org/car/chevrolet-traverse/air-bags/#ixzz2rtwX0snw

Posted 01 July 2011 - 01:58 PM

Well the Traverse has a whopping 407 miles on it and it is telling me to check the airbag already! (And the wife isn't even talking he he) j/k

Along with this, it doesn't tel me which one to check. Dealer says there is no code, so they can't fix it.....DUH!!
http://chevytraverseforum.com/topic/826-check-airbag-keeps-coming-on/

31.    Owners of Traverse models have also publicly complained to the

United States government about the Airbag Defect in Class Vehicles and related

issues. The Office of Defects Investigation (ODI) is an office within the National Highway Traffic Safety Administration . ODI conducts defect investigations and administers safety recalls to support NHTSA's mission to improve safety on the Nation's highways. The following are just a small sampling of the many complaints submitted to ODI by GM Traverse owners. These publicly available complaints, filed as early as 2011, evidence Defendant's prior knowledge of the Airbag Defect, the negative experiences encountered by Traverse owners and the serious safety concerns the Airbag Defect presents to vehicle occupants.

**Date Complaint Filed:** 08/22/2013
**Component(s):** AIR BAGS
**Date of Incident:** 06/08/2013
**NHTSA ID Number:** 10536816
**Manufacturer:** General Motors LLC
**Vehicle Identification No. (VIN):** Not Available

SUMMARY:

AROUND JUNE 8, 2013 VEHICLE DASH BOARD SHOWS AIR BAG SERVICE REQUIRED AND AIR BAG SERVICE INDICATOR ON, ALSO NOTICE WHILE SITTING ON PASSENGER SEAT, PASSENGER AIR BAG INDICATOR SHOWS OFF . CONTACTED TO DEALER AND GOT REPAIRED AFTER PAYING $107 ON JUNE 10,2013, WHICH WAS CHARGED FOR NEW FUSE . AGAIN SAME ISSUE ACCRUED ON AUGUST 19, 2013 CONTACTED DEALER. OWNER CONTACTED ON AUGUST 22, 2013 CHEVROLET CUSTOMER DEPARTMENT THROUGH ONSTAR REPRESENTATIVE, FROM HER NO SATISFIED ANSWER RECEIVED AND THEY MENTIONED THERE IS NOTHING PROBLEMATIC IN VEHICLE MODEL HISTORY. *TR

**Date Complaint Filed:** 07/31/2013
**Component(s):** AIR BAGS

- 13 -

**Date of Incident:** 05/09/2012
**NHTSA ID Number:** 10532805
**Manufacturer:** General Motors LLC
**Vehicle Identification No. (VIN):** 1GNEV13DX9S...

SUMMARY:

TL* THE CONTACT OWNS A 2009 CHEVROLET TRAVERSE. THE
CONTACT STATED THAT WHILE DRIVING 40 MPH, THE AIR BAG
WARNING LIGHT ILLUMINATED. THE VEHICLE WAS TAKEN TO THE
DEALER FOR INSPECTION WHERE THEY STATED THAT THE AIR BAG
WIRES FOR THE FRONT PASSENGER SIDE SEAT WERE CROSSED AND
NEEDED TO BE UNTANGLED. THE VEHICLE WAS REPAIRED BUT THE
FAILURE RECURRED. THE MANUFACTURER WAS NOT NOTIFIED. THE
FAILURE MILEAGE WAS 32,000.

**Date Complaint Filed:** 05/08/2012
**Component(s):** AIR BAGS
**Date of Incident:** 03/24/2012
**NHTSA ID Number:** 10457748
**Manufacturer:** General Motors LLC
**Vehicle Identification No. (VIN):** 1GNER33D29S...

SUMMARY:

TL* THE CONTACT OWNS A 2009 CHEVROLET TRAVERSE. WHILE
PARKED, THE CONTACT NOTICED THAT THE AIR BAG LIGHT
ILLUMINATED ON THE INSTRUMENT PANEL. THE VEHICLE WAS
TAKEN TO THE DEALER THREE DIFFERENT TIMES FOR A DIAGNOSTIC
TEST. THE CONTACT WAS NOT AWARE OF THE REPAIR THAT WAS
PERFORMED. AFTER THE REPAIR, THE AIR BAG WARNING LIGHT
CONTINUED TO ILLUMINATE. THE TECHNICIAN WAS UNABLE TO
DIANGOSE THE FAILURE. THE MANUFACTURER WAS MADE AWARE
OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE
APPROXIMATE FAILURE MILEAGE WAS 34,000.

**Date Complaint Filed:** 03/20/2012
**Component(s):** AIR BAGS
**Date of Incident:** 09/07/2011
**NHTSA ID Number:** 10452345
**Manufacturer:** General Motors LLC

- 14 -

**Vehicle Identification No. (VIN):** Not Available

SUMMARY:

I BOUGHT A USED FLEET 2009 TRAVERSE AND THE AIRBAG LIGHT
COMES ON CONSTANTLY. I DIDN'T PAY MUCH ATTENTION TO IT, BUT
NOW IT'S REALLY AGGRAVATING ME. I TOOK IT TO THE DEALER BUT
THEY WANTED TO CHARGE ME FOR CHECKING IT. I TOLD THEM
THAT I HAD MENTIONED BEFORE BUT THE LIGHT HAD TURNED OFF
AGAIN SO NOT MUCH ATTENTION WAS PLACED ON IT. THIS IS A BIG
CONCERN FOR ME. ALSO THIS VEHICLE HAS THE HABIT OF ROLLING
BACK WHEN I PARK OR ON A SLIGHT INCLINE THIS IS SCARY!!!!! *KB

**Date Complaint Filed:** 01/24/2012
**Component(s):** AIR BAGS
**Date of Incident:** 01/23/2012
**NHTSA ID Number:** 10445015
**Manufacturer:** General Motors LLC
**Vehicle Identification No. (VIN):** 1GNLRFED2AS...

SUMMARY:

TL* THE CONTACT OWNS A 2010 CHEVROLET TRAVERSE. THE
CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 50 MPH,
SHE NOTICED THE AIRBAG WARNING LIGHT WAS ILLUMINATED.
AFTER CONTACTING ONSTAR, THEY ADVISED HER THAT THE
WARNING WAS AN INDICATION THAT HER AIRBAGS MAY NOT
DEPLOY IF A CRASH WAS TO OCCUR. THE VEHICLE WAS LATER
TAKEN TO THE DEALER WHERE THEY ADVISED HER THAT THEY
WERE UNABLE TO DIAGNOSE THE FAILURE. THE MANUFACTURER
WAS CONTACTED AND THEY WERE PENDING AN INVESTIGATION
INTO THE FAILURE. THE FAILURE AND THE CURRENT MILEAGES
WERE APPROXIMATELY 37,500.

**Date Complaint Filed:** 09/27/2013
**Component(s):** AIR BAGS
**Date of Incident:** 09/18/2013
**NHTSA ID Number:** 10545617
**Manufacturer:** General Motors LLC
**Vehicle Identification No. (VIN):** 1GNKVFED9BJ...

SUMMARY:

TL* THE CONTACT OWNS A 2011 CHEVROLET TRAVERSE. THE
CONTACT STATED THAT WHEN THE VEHICLE WAS TURNED ON, THE
AIR BAG WARNING LIGHT ILLUMINATED. THE VEHICLE WAS TAKEN
TO A DEALER AND THE MECHANIC STATED THAT THE AIR BAG
MODULE HAD TO BE REPLACED HOWEVER, THE PARTS WERE NOT
AVAILABLE. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED. THE APPROXIMATE FAILURE AND
CURRENT MILEAGE WAS 35,000.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action on her own behalf, and on behalf of the

following Classes pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3).

Specifically, the Classes consist of each of the following:

**National Class:**
All persons or entities in the United States who are current or former owners
and/or lessees of a Class Vehicle.

         Or, in the alternative,

**Florida Class:**
All persons or entities in Florida who are current or former owners and/or
lessees of a Class Vehicle.

33.     Together, the National and Florida Classes shall be collectively

referred to herein as the "Class." Excluded from the Class are Defendant, its

affiliates, employees, officers and directors, persons or entities that purchased the

Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff expressly

reserves the right to modify, change or expand the Class definition consistent with

the Federal Rules of Civil Procedure and any applicable rules of this Court.

34.     <u>Numerosity</u>: Upon information and belief, the Class is so numerous

that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant, and obtainable by Plaintiff only through the discovery process, Plaintiff believes that thousands of Class Vehicles have been sold and leased in each of the states that are the subject of the Class.

35. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a. whether the airbag systems in the Class Vehicles are predisposed to fail prematurely;

    b. whether the airbag systems in Class Vehicles contain a design defect;

    c. whether the defective vehicle design is common to all or some of the Class Vehicles;

    d. if so, whether the Airbag Defect causes the airbag systems to fail in the Class Vehicles;

    e. whether Defendant knowingly failed to disclose the existence and cause of the Airbag Defect in Class Vehicles;

    f. whether Defendant's conduct violates the Florida Deceptive and Unfair Trade Practices Act and the other statutes asserted herein;

g. whether, as a result of Defendant's omissions and/or misrepresentations of material facts related to the Airbag Defect, Plaintiff and members of the Class have suffered ascertainable loss of monies and/or property and/or value;

h. whether Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

36. <u>Typicality</u>:  All of the Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased a Class Vehicle with an Airbag Defect and defective vehicle design, as did each member of the Class.  Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

37. <u>Adequacy</u>:  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class that she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

38. <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

39. Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

Case 1:14-cv-20971-PCH   Document 1   Entered on FLSD Docket 06/17/2014   Page 20 of 32

## VIOLATIONS ALLEGED

### COUNT I

**VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT
15 U.S.C. §2301, et seq.
(On Behalf of Named Plaintiffs and the Class)**

40.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

41.     The Class Vehicles constitute "consumer products," as defined in 15 U.S.C. §2301.

42.     Named Plaintiff and the other Class members are "consumers," as defined in 15 U.S.C. §2301.

43.     Defendant is a "supplier" of the Class Vehicles as defined in 15 U.S.C. §2301.

44.     Defendant GM is a "warrantor" as defined in 15 U.S.C. §2301.

45.     Defendant GM supplied a "written warranty" regarding the Class Vehicles, as defined in 15 U.S.C. §2301(6).

46.     As suppliers and in connection with the sale of the Class Vehicles, Defendant made "implied warranties" arising under State law regarding the Class Vehicles, as defined in 15 U.S.C. §2301(7).

47.     The warranties made by Defendant pertained to consumer products costing the consumer more than five dollars, *see* 15 U.S.C. §2302(e).

48.     Named Plaintiff invokes federal jurisdiction for her claims stated under this Count pursuant to the Class Action Fairness Act.

49.     Defendant violated the Magnuson-Moss Federal Warranty Act by its failure to comply with the express and implied warranties it made to Plaintiff and other Class members.  *See* 15 U.S.C. §2301, et seq.

50.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the Magnuson-Moss Federal Warranty Act claims in this Count, whether premised upon express or implied warranty, is procedurally and substantively unconscionable under federal law and the applicable state common law.

51.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines.  Named Plaintiff, and the other Class members, sustained injuries and damages as a proximate result of Defendant's violation of their written and/or implied warranties, and are entitled to legal and equitable relief against Defendant, including economic damages, rescission or other relief as appropriate.

## **COUNT II**

## **BREACH OF EXPRESS WARRANTY**

52.     Plaintiff and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

53.     Defendant expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly.  Defendant also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the new vehicle and certified pre-owned ("CPO") warranty periods.

54.     Defendant breached this warranty and Florida Statutes 672.313 by selling to Plaintiff and Class members the Class Vehicles with known airbag system problems, which are not of high quality, and which fail prematurely and/or fail to function properly.

55.     As a result of the Defendant's actions, Plaintiff and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

56.     Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.  Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

57.     The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class.

Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between GM and Class members, and GM knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives, subjecting Plaintiff and Class members to substantial costs and significant safety risks.

58. Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT III

### BREACH OF STATE IMPLIED WARRANTIES
### (On Behalf of the Florida Class)

59. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

60. Defendant's actions, as complained of herein, violate the Florida implied warranty of merchantability statute (Florida Statutes 672.316 ). This Count is thus brought on behalf of the Florida Class.

61. Defendant marketed and sold Class Vehicles to Plaintiff and the members of the Florida Class as referenced in this Count, in the regular course of business.

62.    Defendant impliedly warranted that the Class Vehicles were of merchantable quality, would pass without objection in the trade or business under the contract description, and were free of material defects and fit for the ordinary purposes for which they are used.

63.    The implied warranty included, among other things, a warranty that the Class Vehicles were safe for use and that they would not be subject to onset of airbag defects necessitating expensive repair and replacement costs early in their expected useful life.

64.    Defendant as sellers of the Class Vehicles breached its implied warranties of merchantability by selling Plaintiff and the Class members defective Class Vehicles that suffered from problems with their airbag systems. The Airbag Defect rendered the Class Vehicles unfit for their ordinary use and purpose. Defendant has refused to properly recall, repair or replace, free of charge, the Airbag Defect and any related defective parts.

65.    The inherent design and/or manufacturing defect in the Class Vehicles existed when the Class Vehicles left Defendant's possession and rendered the Class Vehicles unfit for their intended use and purpose.

66.    As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff and members of the Florida Class, have suffered damages and continue to suffer damages, including economic damages at the point of sale in

terms of the difference between the value of the Class Vehicles as promised and the value of the Class Vehicles as delivered. Additionally, they either have incurred or will incur economic damages in the form of cost of repair or replacement.

67.     Based on the facts alleged herein, any durational limitation to the express or implied warranties that would otherwise bar the warranty claims in this Count is procedurally and substantively unconscionable.

68.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines.

69.     Plaintiff and the members of the Florida Class are entitled to legal, injunctive and equitable relief against Defendant, including damages, injunctive relief (recall and replacement), restitution, attorneys' fees, costs and/or other relief as appropriate.

## COUNT IV

### VIOLATION OF THE FLORIDA
### DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### (On Behalf of the Florida Class)

70.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

71.     The purpose of the Florida Deceptive and Unfair Trade Practices Act

("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2).

72.     Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members the fact that the Class Vehicles suffer from a design defect (and the costs, risks, and diminished value of the Vehicles as a result of this problem), which was not readily discoverable until years later.  Defendant should have disclosed this information because it was in a superior position to know the true facts related to this design defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to this defect until after manifestation of the defect.

73.     These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiff and members of the Class.

## COUNT V

## NEGLIGENCE – FAILURE TO WARN

74.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

75.    At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Class Vehicles to Plaintiff and the Class.

76.    At all times material hereto, the use of the Class Vehicles in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of premature failure of the airbag systems and safety risks to occupants of Class Vehicles.

77.    At all times, the risk of premature failure and potential danger was known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

78.    GM, as the manufacturer of the Class Vehicles, had a duty to warn Plaintiff and the members of the Class of all dangers associated with the intended use.

79.    Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Class Vehicles, including Plaintiff, about the risks, potential dangers and defective condition of the Class Vehicles.

80.    GM knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Class

Vehicles, and knew that Plaintiff and Class members could not reasonably be aware of those risks. GM failed to exercise reasonable care in providing the Class with adequate warnings.

81.    As a direct and proximate result of GM's failure to adequately warn consumers about the risks and dangers of using the Class Vehicles, Plaintiff and the Class have suffered damages as set forth herein.

## COUNT VII

## NEGLIGENCE – FAILURE TO TEST

82.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

83.    GM did not perform adequate testing on the Class Vehicles, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiff and the Class.

84.    Adequate testing would have revealed the serious deficiencies in the Class Vehicles in that it would have revealed the Airbag Defect.

85.    GM had and continues to have a duty to exercise reasonable care to properly design—including the duty to test—the Class Vehicles that it introduced into the stream of commerce.

86.    GM breached these duties by failing to exercise ordinary care in the design, specifically the testing of the Class Vehicles, which it introduced into the

stream of commerce, because GM knew or should have known that the Class Vehicles suffered from the Dry Exhaust Defect.

87. GM knew or should have known that consumers such as Plaintiff would foreseeably suffer economic damages or injury, and/or be at an increased risk of suffering damage and injury, as a result of Defendant's failure to exercise ordinary care in the design of the Class Vehicles by failing to conduct appropriate testing.

88. By reason of the foregoing, Plaintiff and the Class experienced and/or are at risk of experiencing financial damage and injury.

## COUNT VIII

## NEGLIGENT MISREPRESENTATION

89. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

90. Defendant made material misrepresentations of fact to Plaintiff and the Class concerning the quality and durability of the Class Vehicles.

91. At the time the representations were made, Defendant knew, or by the exercise of reasonable care, should have known that the statements were false and that the Class Vehicles suffered from the Airbag Defect, as detailed above.

92. Defendant made such claims about the Class Vehicles with the intent to induce Plaintiff and Class members to purchase Class Vehicles.

93.     Plaintiff and Class members justifiable relied upon Defendant's misrepresentations about the quality and durability of the Class Vehicles.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, respectfully requests that this Court:

A.     determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.     appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

C.     award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.     determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

E.     appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

F.      award all actual, general, special, incidental, statutory,

        punitive, and consequential damages to which Plaintiff and

        Class members are entitled;

G.      award pre-judgment and post-judgment interest on such

        monetary relief;

H.      grant appropriate injunctive and/or declaratory relief,

        including, without limitation, an order that requires

        Defendant to repair, recall, and/or replace the Class

        Vehicles and to extend the applicable warranties to a

        reasonable period of time and reimburse Class members

        who paid for repairs out-of-pocket, or, at a minimum, to

        provide Plaintiff and Class members with appropriate

        curative notice regarding the existence and cause of the

        design defect;

I.      award reasonable attorney's fees and costs; and

J.      grant such further relief that this Court deems appropriate.

Dated:  June 16, 2014

                             Respectfully submitted,

By:    *//s// Jon M. Herskowitz*
           Jon M. Herskowitz
           Florida Bar No. 814032
           BARON & HERSKOWITZ, LLP
           9100 South Dadeland Boulevard
           One Datran Center, Suite 1704
           Miami, FL 33156
           Telephone: (305) 670-0101
           Facsimile: (305) 670-2393
           E-mail:  jon@bhfloridalaw.com

           Charles J. LaDuca (to apply *pro hac vice*)
           William H. Anderson (to apply *pro hac vice*)
           CUNEO GILBERT & LADUCA, LLP
           507 C Street, NE
           Washington, DC 20002
           Telephone: (202) 789-3960
           Facsimile: (202) 789-1813
           E-mail:  charlesl@cuneolaw.com
                       wanderson@cuneolaw.com