**Hearing Date and Time:  October 15, 2014 at 9:45 A.M.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.:  09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

--------------------------------------------------------------x

**RESPONSE BY GENERAL MOTORS LLC TO PLAINTIFFS'
AMENDED NO STAY PLEADING, MOTION FOR ORDER OF
DISMISSAL FOR LACK OF SUBJECT MATTER AND PERSONAL
JURISDICTION, OBJECTIONS TO GM'S MOTION TO ENFORCE,
<u>TO THE COURT'S ORDERS, AND FOR RELATED RELIEF</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND RELEVANT TO RESPONSE .............................................................7

    A.    The Elliott Case, the Scheduling Orders,
           The Phaneuf Case, and the Tag-Along Procedures ............................................7

    B.    MDL 2543 and Its Initial Case Conference .......................................................13

    C.    The August Conference and the Court's Reiteration
           that the Sale Order And Injunction Applies to the
           Ignition Switch Actions in the First Instance ....................................................14

    D.    The Sesay No Stay Pleading ...............................................................................15

RESPONSE

THE RELIEF REQUESTED IN THE AMENDED
SESAY PLEADING SHOULD BE DENIED.................................................................18

    A.    The Sesay Plaintiffs Are Subject To The
           Injunction Contained In The Sale Order And Injunction ...............................19

    B.    A Preliminary Injunction Is Not Needed
           In Connection With The Sesay Ignition Switch Action...................................21

    C.    The Sesay Plaintiffs' Claims Clearly  Implicate
           the Sale Order and Injunction .........................................................................21

    D.    The Sesay Plaintiffs' Arguments Are Subsumed in At Least
           Two Of The Four Threshold Issues, And Should Be Decided
           Pursuant to the Court-Approved Procedures Regarding Same.....................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995)..................................................................................................... 19

*In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd*,
471 B.R. 331 (Bankr. S.D.N.Y. 2012)....................................................................... 20

*In re WorldCorp., Inc.*,
252 B.R. 890 (Bankr. D. Del 2000) ........................................................................... 20

*Stewart v. General Motors Corp.*,
756 F.2d 1285 (7th Cir. 1985..................................................................................... 19

**Statutes and Rules**

Rule 9011 of the Federal Rules of Bankruptcy Procedures........................................... 1

General Motors LLC ("**New GM**"), by its undersigned counsel, respectfully submits this response ("**Response**") to the *Plaintiffs' Amended No Stay Pleading, Motion For Order Of Dismissal For Lack Of Subject Matter And Personal Jurisdiction, Objections To GM's Motion To Enforce, To The Court's Orders, And For Related Relief* ("**Amended Sesay Pleading**") filed by Plaintiffs Ishmail Sesay and Joanne Yearwood ("**Sesay Plaintiffs**") with respect to their Ignition Switch Action[1] ("**Sesay Ignition Switch Action**"), and represents as follows:

## PRELIMINARY STATEMENT

1.    When the Sesay Plaintiffs requested additional time to file their No Stay Pleading, this Court stated that they "may file a No Stay Pleading if they think, consistent with the Court's earlier ruling, that such a pleading would meet FRBP 9011 standards."  Endorsed Order, dated August 12, 2014 [Dkt. No. 12835].   For the reasons discussed below, the Amended Sesay Pleading fails to meet the FRBP 9011 standards and, regardless, should be denied on its merits.

2.    **Subject Matter Jurisdiction**:  The Amended Sesay Pleading makes the same subject matter jurisdiction argument already raised, and rejected, in *Elliott*.[2]  There, the Court ruled that the "no subject matter jurisdiction" argument was frivolous:

> [The Elliott Plaintiffs'] claim that I don't have subject matter jurisdiction to construe and enforce the Sale Order in this case— *their contention is frivolous*, disregarding controlling decisions of the United States Supreme Court and Second Circuit; district court authority in this District; four earlier decisions that I personally have issued; three decisions by other bankruptcy judges in the Southern District of New York, and the leading treatise in the area, *Collier*.

*Decision with Respect to No Stay Pleading and Related Motion to Dismiss for Lack of Subject Matter Jurisdiction (Elliott Plaintiffs)*, dated August 6, 2014 (Dkt. No. 12815) ("**Elliott Written**

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("**Ignition Switch Motion to Enforce**"), dated April 21, 2014 [Dkt. No. 12620].

[2]    Counsel for the Sesay Plaintiffs and counsel for the Elliott Plaintiffs (as herein defined) is the same.

1

**Decision**"), at 1-2.

3.    In *Sesay*, as in *Elliott*, counsel argues that this Court lacks "related to" jurisdiction over this controversy.  Counsel refers to inapposite cases involving post-confirmation jurisdiction over a reorganized debtor.  This argument, in the Court's words, "misses the point."  Elliott Written Decision, p. 4.  The question is not one of "related to" jurisdiction, but one of "arising in" jurisdiction, which this Court clearly possesses given that it is being called upon to enforce its prior Order (*i.e.*, the Sale Order and Injunction).  *See* Elliott Written Decision, at 4-7.

4.    The Sesay Plaintiffs concede that they have not raised any new arguments with respect to this issue.  The Sesay Amended Pleading admits that the Ignition Switch Action "is not distinguishable from the *Elliott v GM* matter that the Court has already considered," and contends that "[t]he Court misapplied the law in that ruling and mistakenly thought it had 'arising in' jurisdiction over such claims . . . ."  Amended Sesay Pleading, at 22-23 (citing Doc No. 12815).

5.    Simply put, the law of this case is that this Court has subject matter jurisdiction over this controversy.  The Sesay Plaintiffs have raised the same frivolous argument again.

6.    **Abstention**: The Court already has ruled that it would be exercising its jurisdiction to decide, among other things, the Four Threshold Issues.[3]  A briefing schedule has been established by the Court for that purpose.  This is (a) the orderly process the Court set forth in its May 16, 2014 Scheduling Order ("**Scheduling Order**"), as supplemental by the Supplemental Scheduling Order and August 22 Order, (b) the process recommended by Designated Counsel (as defined in the Scheduling Order) at the conferences held on May 2, 2014 ("**May Conference**"), July 2, 2014 ("**July Conference**") and August 18, 2014 ("**August**

---

[3]    This term is defined in the Court's July 11, 2014 Supplemental Scheduling Order ("**Supplemental Scheduling Order**"), as further supplemented by the Court's Endorsed Order, dated August 22, 2014 ("**August 22 Order**").

2

**Conference**"), and (c) the process agreed to by *all but three other groups of Plaintiffs (the Elliott Plaintiffs, the Phaneuf Plaintiffs, and on a self-described "limited" basis, the Orange County Plaintiff) in the over 100 pending Ignition Switch Actions*.  There is no reason to revisit the issue again.

7.      The Sesay Plaintiffs, like the Elliott Plaintiffs, claim they are uniquely situated as contrasted to the other Plaintiffs in the Ignition Switch Actions.  As the Court held in *Elliott*, they are simply wrong.  The Sesay Plaintiffs are not uniquely situated; their issues are not unique; and their claims are no different from those made by many of the other Plaintiffs whose cases are stayed, voluntarily or otherwise.

8.      **Service of the Ignition Switch Motion to Enforce**. At all relevant times, counsel for the Sesay Plaintiffs had the Ignition Switch Motion to Enforce.  He concedes that he was served with the Sixth Supplements on August 7, 2014.  *See* Sesay Amended Pleading, at 2 n.4. His argument that the Sesay Plaintiffs also had to be formally served with these documents is frivolous.

9.      The Sixth Supplements unmistakably put the Sesay Plaintiffs and their counsel on notice of the relief requested by New GM.  Counsel for the Sesay Plaintiffs has been intimately involved in proceedings respecting the Ignition Switch Motion to Enforce, having filed numerous documents with this Court (including his 40-page Amended Sesay Pleading and a 30-plus page pleading on behalf of the Elliott Plaintiffs).  These prior actions clearly reflect an understanding of the relief requested by New GM.

10.     Counsel made a formal appearance for the Sesay Plaintiffs in this Court when, among other things, he wrote to the Court asking for more time to respond to the Ignition Switch

23916950v2

Motion to Enforce. He never raised the "service to his client" issue when seeking such relief. Thus, even if there was a service issue for his client (and there was not), it was waived by him.

11. The Sesay Ignition Switch Action was commenced in a non-bankruptcy forum on August 1, 2014, after the July 2, 2014 rulings in *Phaneuf* and *Elliott*. Thus, even though the Court already ruled that it had exclusive jurisdiction over issues raised in the Ignition Switch Actions by virtue of the Sale Order and Injunction, and that such matters should first be brought to this Court, counsel for the Sesay Plaintiffs – the same counsel that was involved in the Elliott matter – nevertheless commenced the Sesay Ignition Switch Action in a non-bankruptcy forum, instead of first seeking relief from this Court. The Sesay Plaintiffs now try to deflect attention away from their actions by manufacturing a bogus "lack of service" argument that is frivolous.

12. **The Court's Procedure to Adjudicate the Four Threshold Issues is Proper**. As the Court already has ruled, it was entirely appropriate for New GM to request relief by motion, as opposed to an adversary proceeding, since New GM is seeking to enforce a *preexisting* injunction, not obtain a new one. *See* Phaneuf Written Decision (defined below), at 4 ("Though injunctive provisions are already in place and thus a preliminary injunction is unnecessary, New GM has also shown an entitlement to a preliminary injunction staying the Phaneuf Plaintiffs from proceeding with their litigation elsewhere while the issues here are being determined."). All of the Plaintiffs in the Ignition Switch Actions (other than the Sesay Plaintiffs)[4] have agreed with this procedure, and the Sesay Plaintiffs' throw-away argument for this point should be quickly discarded.

13. **Time to Respond to the Ignition Switch Motion to Enforce**. The Sesay Plaintiffs complain that the Stay Procedures Order (as defined below) provided for a three-day

---

[4]    In *Elliott*, the "service of pleading" issue was not raised until after the Court entered the No Stay Order against the Elliott Plaintiffs.

period in which to file a No Stay Pleading.  However, the Sesay Plaintiffs were given, with the consent of New GM, at least 14 days to file the Amended Sesay Pleading.  This was the same amount of time requested by them to file the Sesay No Stay Pleading.  To complain about an issue, when they received exactly the relief they asked for, is frivolous.

14.    __The Relief Requested is Wasteful__.  As a practical matter, the issues raised by the Sesay Plaintiffs are wasteful of the Court's and New GM's time and resources.  As explained below, Lead Counsel appointed in Multidistrict Litigation ("__MDL__") 2543 will, in less than a month, be filing a consolidated master complaint "with respect to all claims alleging economic loss."  *See* Order No. 8, entered on August 15, 2014 in MDL 2543 [Dkt. No. 36], at 5.[5]  Judge Furman has implemented procedures for plaintiffs to lodge any objections to the consolidated master complaint with MDL Lead Counsel prior to filing, and for the District Court to resolve any remaining objections amongst plaintiffs after filing of the consolidated master complaint.  The Sesay Ignition Switch Action is in the MDL, and is an "economic loss" case.  Thus, the complaint filed in the Sesay Ignition Switch Action is expected to be subsumed by the consolidated master complaint.  There simply is no point in seeking to proceed on the existing Sesay Amended Complaint at this time, given the forthcoming filing of a consolidated master complaint in MDL 2543.

15.    __The Sesay Plaintiffs are Seeking to "Jump the Line" on the Four Threshold__ __Issues__.  At least two of the Four Threshold Issues are identical to the issues raised by the Amended Sesay Pleading: (i) "whether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust) ('__Old GM__ __Claim Threshold Issue__')"; and (ii) "whether Plaintiffs' procedural due process rights were

---

[5]    A copy of Order No. 8 is annexed hereto as Exhibit "A."

violated in connection with the Sale Motion and the Sale Order and Injunction ('**Due Process Threshold Issue**')."  Supplemental Scheduling Order, at 3.  The Court already has ruled, on multiple occasions, that the Court-approved procedures with respect to the Four Threshold Issues will govern the adjudication of such claims.  Other Plaintiffs who have tried to "jump the line" (*e.g.*, the Phaneuf Plaintiffs, the Elliott Plaintiffs, and the Powledge Plaintiff[6]) have failed.  The Sesay Plaintiffs should be bound by the same rules that will apply to all the Plaintiffs.

16.     The Sesay Plaintiffs argue that, other than claiming their vehicle was an Old GM vehicle, more is needed to conclude that their claims violated the Sale Order and Injunction. That is true, but the more that is needed is whether the Sesay Plaintiffs' claims fall within the narrow categories of Assumed Liabilities—*i.e.*, claims based on the Glove Box Warranty (No), Lemon Law claims (No), or a post-363 Sale accident (No).  Since the claims do not fit in any of these categories of Assumed Liabilities then, by definition, all claims relating to the Sesay Plaintiffs' Old GM vehicle (or a New GM vehicle that may contain Old GM parts) are Retained Liabilities that the Sesay Plaintiffs are barred from pursuing under the Sale Order and Injunction.[7]  The Sesay Plaintiffs contend otherwise; but that simply means this Court will ultimately need to determine the issue as part of the Threshold Issues.

17.     It seems evident that the real purpose of the Amended Sesay Pleading is to have the Court deny the relief requested, appeal the Court's ruling,[8] and see if the Sesay Plaintiffs' counsel can convince the MDL Court to change its mind, and decide certain of the Four Threshold Issues raised in the Amended Sesay Pleading before this Court has ruled on them.

---

[6]     The Powledge case is subject to the Pre-Sale Accident Motion to Enforce.

[7]     There is no dispute that the Sesay Plaintiffs seek to have a class certified with respect to many vehicles manufactured by Old GM.

[8]     Any appeal will be interlocutory, and not as of right.

23916950v2

This Court should not allow the Sesay Plaintiffs to "go it alone," and undermine the carefully-crafted procedures it established to resolve the Four Threshold Issues.

18.    Counsel for New GM tried to resolve this matter, as suggested by the Court's August 12, 2014 Order, by asking counsel for the Sesay Plaintiffs to stipulate to the denial of the Amended Sesay Pleading.  Counsel for the Sesay Plaintiffs suggested that New GM's counsel prepare a stipulation for that purpose, which was done.  Thereafter, counsel for the Sesay Plaintiffs decided it would rather press ahead with its Amended Sesay Pleading, which necessitated the filing of this Response.

19.    In sum, the Amended Sesay Pleading re-plows old ground, makes the same frivolous arguments already rejected by this Court, and should be summarily dismissed.

## BACKGROUND RELEVANT TO RESPONSE

20.    The Sesay Ignition Switch Action was filed on August 1, 2014.  The Sesay Plaintiffs' counsel has been involved in this contested proceeding concerning the Ignition Switch Motion to Enforce since at least the middle of June 2014, having filed numerous letters with the Court, as well as a No Stay Pleading for his other clients, the Elliott Plaintiffs.  Some relevant background on the Elliott Plaintiffs, as well as the Phaneuf matter, in which a No Stay Pleading was decided after the Sesay Plaintiffs' counsel was involved in these proceedings, is provided below.

### A.    The Elliott Case, the Scheduling Orders, The Phaneuf Case, and the Tag-Along Procedures

21.    The Elliott Plaintiffs, *pro se*, commenced their Ignition Switch Action against New GM on April 1, 2014.  On April 21, 2014, New GM filed its Ignition Switch Motion to Enforce and listed the Elliott Ignition Switch Action on Schedule "1" annexed thereto.  On April

7

22, 2014, the Court issued an Order ("**April 22 Scheduling Order**"), scheduling the May Conference.

22.     At the May Conference, various bankruptcy-related issues were discussed with the Court, and there was a general consensus reached between New GM and counsel speaking on behalf of almost all of the Plaintiffs that, as part of the process in which the Court would address bankruptcy-related issues, the Plaintiffs would either (i) agree to enter into a stipulation ("**Stay Stipulation**") with New GM staying their individual Ignition Switch Actions, or (ii) file with the Court a "No Stay Pleading" setting forth why they believed their individual Ignition Switch Actions should not be stayed (collectively, the "**Initial Stay Procedures**").

23.     The Initial Stay Procedures were set forth and approved in the Scheduling Order. The overwhelming number of Plaintiffs agreed to enter into Stay Stipulations.  The Elliott Plaintiffs, *pro se*, received the Stay Stipulation and timely executed it.  However, once the Elliott Plaintiffs retained counsel, they sought to undo the Stay Stipulation and to file an amended class action complaint.  New GM thereafter filed the *Supplemental Response by General Motors LLC in Connection with Stay Procedures Set Forth in the Court's May 16, 2014 Scheduling Order*, dated June 24, 2014 [Dkt. No. 12735] ("**Elliott Supplemental Response**"), requesting that the Court direct the Elliott Plaintiffs to refrain from taking further action in the Elliott Ignition Switch Action.

24.     The Court held the July Conference to address certain procedural issues that had arisen since the entry of the Scheduling Order.  As part of the July Conference, the Court ruled on which issues should be decided first in these contested proceedings.  At least two of the Four Threshold Issues identified by the Court at the July Conference are implicated by the Amended Sesay Pleading, those being the Old GM Claim Threshold Issue and the Due Process Threshold

8

Issue.   A briefing schedule respecting the Four Threshold Issues was established in the Supplemental Scheduling Order, as amended by the August 22 Order.

25.      Immediately after the July Conference, the Court heard argument on a No Stay Pleading [Dkt. No. 12712] filed by another group of Plaintiffs (*i.e.*, the "**Phaneuf Plaintiffs**"). Then co-counsel for the Elliott Plaintiffs was present during this argument.  Like the Sesay Ignition Switch Action and the Elliott Ignition Switch Action, the Phaneuf Ignition Switch Action attempted to allege claims solely against New GM, and not Old GM.  The Phaneuf Plaintiffs argued, as the Sesay Plaintiffs argue here, that their "claims relate to New GM's conduct *post*-bankruptcy."  Phaneuf No Stay Pleading, at 2.  New GM responded, arguing that the Phaneuf Plaintiffs' claims were like a number of other plaintiffs' claims in other Ignition Switch Actions, and that the Phaneuf Plaintiffs should be on the same schedule as the other plaintiffs in the then nearly 90 other Ignition Switch Actions (which now number more than 100).

26.      The Court agreed with New GM in an oral ruling ("**Phaneuf Oral Ruling**") issued from the Bench, finding:

> the sale order now applies, though it is possible, without prejudging any issues, that, after I hear from the other 87 litigants, I might ultimately rule that it does not apply to some kinds of claims and that, even if the sale order didn't apply, that New GM would be entitled to a preliminary injunction temporarily staying the Phaneuf plaintiffs' action from going forward, pending a determination by me on the other 87 litigants' claims under the standards articulated by the circuit in Jackson Dairy and its progeny.

Hr'g Tr. 91:12-21, July 2, 2014.  The Court ruled that it makes the most sense to address common issues at one time, and not to make early findings based on the request of one, out of many, parties in interest:

> To step out of that template and make early findings without giving them [*i.e.,* other plaintiffs] the opportunity to be heard and where the issues are of the complexity that people argued in good faith from many different approaches would be extraordinarily ill-advised.  To the contrary, every principal of case

management that judges are taught causes them to, on the one hand, try to deal
with issues where all concerned have the ability to be heard and also to prevent
one client or one group of litigants to get ahead of the rest in a way that has the
potential for prejudicing the remainder.

*Id.* at 94:1-11.

25.    In addition, the Court found that even if the Sale Order and Injunction did not stay

the Phaneuf Plaintiffs in the first instance (which it did), New GM had satisfied its burden of

obtaining a preliminary injunction:

> Finally, I determine that, even if my earlier order hadn't been entered, it would be
> appropriate to enter a preliminary injunction, limited in duration until I've ruled,
> preventing the piecemeal litigation of the Phaneuf plaintiffs' claims now ahead of
> all of the other lawsuits that are similarly situated.  While I don't have a complete
> record, it's foreseeable, if not obvious, that at least a subset of the 87 other
> litigants are going to present the same issues, and that's the exact reason why the
> MDL action came into being where the cases before Judge Furman were
> determined by the MDL panel to be sent to a single judge for pretrial matters and
> explains how they originally came to be before Judge Furman.  When issues raise
> overlapping -- excuse me.  When actions raise overlapping issues, even if they're
> not wholly congruent, coordinated disposition is essential, and I don't rule out the
> possibility -- in fact, I assume it to be true -- that the facts you present, Mr. Block
> and Mr. Garber, may not appear in every one of those 88 cases, but the chances
> that they're not going to be present in at least some of them are remote.  While I
> well-understand the desire of litigants both to get their cases moving as quickly as
> possible and -- though I don't know if it's your desire here -- to put yourself in a
> desirable a position ahead of others -- might occasion your desire to get this relief,
> they are insufficient to trump the normal case management concerns that I and
> most other judges would have.

*Id.* at 94:21-95:22.  On July 30, 2014, the Court entered its *Decision with Respect to No Stay*

*Pleading (Phaneuf Plaintiffs)* ("**Phaneuf Written Decision**"), memorializing and amplifying the

Phaneuf Oral Decision.

27.    Immediately after the Phaneuf No Stay Pleading was ruled on, the Court heard

argument on the Elliott Supplemental Response.  The Court allowed the Elliott Plaintiffs to file a

late No Stay Pleading to give them "the opportunity, if [they] can, to show that [their] action is

any different than the other 87, including now Phaneuf and to consider my ruling that I just

issued in Phaneuf to be stare decisis, that is a precedent, vis-a-vis your effort to get them special treatment but not res judicata or collateral estoppel." Hr'g Tr. 99:19-24, July 2, 2014.

28.    Thereafter, the Court entered the *Order Staying And Restraining Lawrence And Celestine Elliott, And Their Counsel, From Further Proceeding With Their Ignition Switch Action, Except As Expressly Set Forth Herein*, entered by the Court on July 8, 2014 ("**Elliott Stay Order**") [Dkt. No. 12763].  The Elliott Stay Order provided that, except as expressly set forth in that Order, the Elliott Plaintiffs and their counsel were stayed from proceeding in the Elliott Ignition Switch Action.[9]  The Elliott Plaintiffs were, however, permitted to file a late No Stay Pleading with this Court, which they did on July 11, 2014.

29.    The Elliott No Stay Pleading contains many of the arguments made in the Amended Sesay Pleading, including that this Court did not have "related to" subject matter jurisdiction over the Elliott Plaintiffs.  New GM responded to the Elliott No Stay Pleading, arguing that the Elliott Ignition Switch Action was essentially no different from the Phaneuf Ignition Switch Action and that the same result should be applied to them.  At a hearing held on August 5, 2014 ("**August 5 Hearing**"), the Court agreed with New GM.  In another written decision (*i.e.*, the Elliott Written Decision), the Court aptly summarized its ruling as follows:

> Once again, a plaintiff group wishing to proceed ahead of all of the others (only one week after I issued the written opinion memorializing my earlier oral ruling proscribing such an effort) has asked for leave to go it alone.  Its request is denied. With a single exception, the issues raised by this group (the "Elliott Plaintiffs") don't differ from those addressed in Phaneuf.  And as to that single exception—

---

[9]    The Elliott Stay Order also required, within two  business days of entry of the Elliott Stay Order (*i.e.*, July 10, 2014), the Elliott Plaintiffs to withdraw a motion to amend their complaint ("**Motion to Amend**") filed in the Elliott Ignition Switch Action.  The Elliott Plaintiffs did not withdraw their Motion to Amend or provide any reason for not complying with this Court's directive.  Given that the Motion to Amend had not been withdrawn, the district court in the Elliott Ignition Switch Action entered an order on July 16, 2014 ("**July 16 Order**") allowing the amended complaint to be filed, finding the proposed amended complaint "helpful to all concerned insofar as it would clarify the claims that the Elliotts are pressing before this Court."  *Id.* at 4.  The court then stayed all further proceedings in the Elliott Ignition Switch Action "pending the outcome of the proceedings before the Bankruptcy Court and the JPML."  *Id.*

11

their claim that I don't have subject matter jurisdiction to construe and enforce the Sale Order in this case— ***their contention is frivolous . . . .***

*Id.* at 1 (emphasis added)(footnotes omitted).  With respect to the Elliott Plaintiffs' argument regarding "related to" jurisdiction, the Court found that:

> "Related to" jurisdiction has nothing to do with the issues here.  Bankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' "*arising in*" jurisdiction. The nearly a dozen cases cited above expressly so hold.

*Id.* at 4 (footnote omitted).  The Court further found that the Elliott Plaintiffs' "argument conflates the conclusion I might reach after analysis of matters before me—that certain claims ultimately might not be covered by the Sale Order—with my jurisdiction to decide whether or not they are." *Id.* at 7.  The Court, thus, denied the Elliott Plaintiffs' motion to dismiss.

30.    With respect to the Elliott "no stay" request, the Court denied that as well, relying on its Phaneuf Written Decision:

> As in *Phaneuf*, I find that the Elliott Plaintiffs are asserting claims with respect to vehicles that were manufactured before the 363 Sale, and, although to a lesser extent than in *Phaneuf*, relying on the conduct of Old GM.  Thus I find as a fact, or mixed question of fact and law, that the threshold applicability of the Sale Order—and its injunctive provisions—has been established in the first instance.
>
> And once again, even if the Sale Order did not apply in the first instance, a preliminary injunction would also be appropriate here, for the reasons discussed at length in *Phaneuf*, which I will not repeat at comparable length here—other than to say that the prejudice to all of the other litigants, and to the case management concerns I had with respect to the Phaneuf Plaintiffs, is just as much a matter of concern here.
>
> As in *Phaneuf*, I will not allow the Elliott Plaintiffs to go it alone.  The Elliott Plaintiffs' claims can be satisfactorily addressed—and will have to be addressed—as part of the coordinated proceedings otherwise pending before me.

Elliott Written Decision, at 9.  Ultimately, the Court held that the "injunctive provisions of Paragraphs 8 and 47 of the Sale Order (and that the Court may also impose by preliminary injunction) will remain in place" with respect to the Elliott Ignition Switch Action.  *Id*. at 9-10.

12

31.    Because new Ignition Switch Actions were being filed against New GM almost on a daily basis, New GM needed to implement stay procedures to address these new Actions. Accordingly, on June 13, 2014, New GM filed with the Court a motion to establish stay procedures for newly-filed Ignition Switch Actions [Dkt. No. 12725] ("**Tag-Along Motion**"). The relief requested in the Tag-Along Motion was granted by Order dated July 8, 2014 [Dkt. No. 12764] ("**Stay Procedures Order**").  The Stay Procedures Order requires, *inter alia*, plaintiffs in newly filed Ignition Switch Actions, within three (3) days of receipt of a form Stay Stipulation, to either enter into a Stay Stipulation or file a "No Stay Pleading" with the Court ("**Supplemental Stay Procedures**").

B.    **MDL 2543 and Its Initial Case Conference**

32.    On March 25, 2014, the Judicial Panel on Multidistrict Litigation ("**JPML**") established MDL 2543, *In re: General Motors LLC Ignition Switch Litigation*.  Subsequently, on June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL court and assigned the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings in the Ignition Switch Actions.  *See In re General Motors LLC Ignition Switch Litigation*, MDL No. 2543.  More than 110 cases currently are pending in MDL 2543, including the Sesay Ignition Switch Action.

33.    On August 11, 2014, the District Court held an initial case conference ("**Initial Conference**") in MDL 2543.  Among the matters discussed at the Initial Conference was the filing by Lead Counsel of a consolidated master complaint for all economic loss actions that are part of MDL 2543.  Subsequently, the District Court entered Order No 8 on August 15, 2014, which, among other things, provides that Lead Counsel in MDL 2543 shall have 60 days from the date of Order No 8 to file a consolidated master complaint with the District Court.  The Court also implemented procedures for plaintiffs to lodge any objections to the consolidated master

13

complaint with MDL Lead Counsel prior to filing and for the Court to resolve any remaining objections amongst plaintiffs after filing.  It is anticipated that the master consolidated complaint will be filed in the middle of October 2014.

**C.**    **The August Conference and the Court's Reiteration that the Sale Order
And Injunction Applies to the Ignition Switch Actions in the First Instance**

34.    On August 1, 2014, New GM filed with the Court the *Motion Of General Motors LLC Pursuant To 11 U.S.C. §§ 105 And 363 To Enforce This Court's July 5, 2009 Sale Order And Injunction Against Plaintiffs In Pre-Closing Accident Lawsuits* ("**Pre-Closing Accident Motion to Enforce**"), and requested a conference with the Court which was held on August 18, 2014.

35.    Prior to the August Conference, and in response to the filing of the Pre-Closing Accident Motion to Enforce, one plaintiff ("**Powledge**") filed a letter and objection with the Court, requesting time to addresses the Court at the August Conference, and to explain why that plaintiff was different from other plaintiffs.    At the August Conference, after counsel for Powledge laid out his reasoning, the Court found Powledge's situation was no different from that of other plaintiffs:

> I can tell you if you don't already know how I've ruled on people who are of a mind to go it alone and who have made similar arguments to you, and I encourage you to read my decisions in the [Phaneuf] and Elliott matters.  You have the right if you want to file a no stay pleading. . . .  [I]f you're thinking about doing it you'd have to make a preliminary decision first as to whether you can comply with Bankruptcy Rule 9011 which is like Federal Civil Rule 11, in light of the rulings in that area.
>
> . . .
>
> At some point your contentions will be heard either as flowing from the matters that are already before me or anything else you want to argue, but the chances of you being allowed to go it alone ahead of the other -- I thought there were 94 -- I thought I heard 104 at this point -- others, practically everybody is making arguments that their cases -- that's an exaggeration -- many people are making arguments that their cases are special.
>
> . . .

14

[A]t least seemingly if you have a vehicle made by Old GM prepetition it's subject to at least one of the three categories of the sale order that New GM has been relying upon and going against people like the [Phaneuf Plaintiffs] and the Elliotts and most of the others, and if you want to deal with it the mechanism is going to be by a no stay pleading.  Sooner or later your concerns are going to be heard, but the chances of you being allowed to litigate them in another court before I've ruled on this issue are about the same as me playing for the Knicks, or in your term it's the Rockets.

Hr'g Tr. 81:11-83:8, August 18, 2014.

36.    Given the Court's *Phaneuf* Written Decision and *Elliott* Written Decision, as well as the Court's statements at the August Conference with respect to *Powledge*, it is clear that the Court has exclusive jurisdiction over the Ignition Switch Actions, and that no Plaintiff (including the Sesay Plaintiffs) may or should get ahead of all of the other Plaintiffs.  The procedures adopted by the Court apply to all Plaintiffs.

**D.    The Sesay No Stay Pleading**

37.    As noted above, the Sesay Plaintiffs' counsel was aware of the *Phaneuf* Written Decision and was involved in the oral argument that led to the *Elliott* Decision.  Despite being on notice that the Sale Order and Injunction is applicable to Ignition Switch Actions in the first instance, counsel for the *Elliott* Plaintiffs – instead of seeking relief in this Court  – filed a new action directly in the Southern District of New York on behalf of the Sesay Plaintiffs on August 1, 2014.  The Sesay Ignition Switch Action was designated by the Sesay Plaintiffs as being related to MDL 253.  The Sesay Ignition Switch Action was filed almost a month after the Court issued the *Phaneuf* Oral Decision (at which co-counsel for the *Elliott* Plaintiff was in attendance).

38.    On August 28, 2014, the Sesay Plaintiffs filed an amended complaint with the District Court.  While the Sesay Ignition Switch Action is part of MDL 2543 and the Sesay Plaintiffs were not authorized to file such a pleading, the District Court, by Endorsed Order dated

September 4, 2014 ("**September 4 Order**") allowed the Sesay Plaintiffs to file the amended complaint, but further held that "[t]he deadline to answer or otherwise respond to any amended complaint, however, is adjourned until further order of the Court.  The Court will address the need, if any, for Defendants to respond to individual complaints after the process for filing the Consolidated Class Action Complaint and adjudication of any disputes concerning the Consolidated Class Action Complaint, set forth in Order No. 8, runs its course."  The District Court thus recognized that the filing of the consolidated master complaint will have an impact on the Sesay Ignition Switch Action.

39.     The Sesay Ignition Switch Action is substantially similar to the Elliott Ignition Switch Action.   Both Actions contain causes of action based on (i) a RICO violation, (ii) common law fraud, (iii) "negligent infliction of economic loss," (iv) violations of consumer protect statutes, and (v) "civil conspiracy, joint action and aiding and abetting."

40.     Moreover, the Sesay Ignition Switch Action concerns both Old GM and New GM Vehicles, with model years ranging from 2003 through 2011.  One of the named plaintiffs (Mr. Sesay) owns a 2007 Chevrolet Impala which he bought from a friend.  The Class is defined as people "who, since the inception of [New] GM in October 2009, hold or have held a legal or equitable interest in a GM vehicle with a dangerous ignition switch or steering hazard."  Sesay Amended Compl., ¶ 41.   Thus, the purported class, as defined by the Sesay Plaintiffs, encompasses anyone who owned a subject vehicle as of October 2009, even if that person purchased the vehicle from Old GM.

41.     Upon learning of the filing of the Sesay Ignition Switch Action, New GM, as it had done numerous times before, determined that the Action implicated the Sale Order and Injunction, and designated the Action as being subject to the Ignition Switch Motion to Enforce

16

by including it in the Sixth Supplements, which were filed with the Court on August 7, 2014 [Dkt. Nos. 12818 and 12819].  Counsel of record for the Sesay Plaintiffs was served with the Sixth Supplements on August 7, 2014.  By virtue of him representing the Elliott Plaintiffs in connection with this contested matter, counsel for the Sesay Plaintiffs was already in possession of the Ignition Switch Motion to Enforce, and was fully familiar with the relief requested therein.

42.     As authorized by the Stay Procedures Order, New GM sent counsel for the Sesay Plaintiffs the Scheduling Order, Supplemental Scheduling Order, and the Stay Procedures Order by e-mail transmission on August 7, 2014.  As further authorized by the Stay Procedures Order and the Supplemental Stay Procedures that it approved, the e-mail also contained the form Stay Stipulation.   Counsel for the Sesay Plaintiffs was informed that, consistent with the Supplemental Stay Procedures, the Sesay Plaintiffs had three days either to enter into the Stay Stipulation or file a No Stay Pleading with the Court.

43.     The next day (August 8, 2014), counsel for the Sesay Plaintiffs filed a letter ("**August 8 Letter**") with the Court, among other things, requesting additional time to file a No Stay Pleading.  While the Sesay Plaintiffs in their August 8 Letter raised many arguments going to the substance of the Ignition Switch Motion to Enforce (including counsel's now familiar "lack of subject matter jurisdiction" refrain), the Sesay Plaintiffs never complained about any lack of notice of the Ignition Switch Motion to Enforce or lack of knowledge about the Ignition Switch Motion to Enforce.

44.     New GM responded to the August 8 Letter on August 12, 2014, disputing much of what was contained in the August 8 Letter.  Nonetheless, New GM stated it "would consent to giving Mr. Peller a courtesy extension if one is needed . . . ."  Later in the day on August 12,

17

2014, the Court entered an Endorsed Order regarding the relief requested in the August 8 Letter, which stated as follows:

> ***All requests denied***.  Notwithstanding the foregoing, the Sesay Plaintiffs may have an extension for a duration no longer than seven calendar days from the date of this order to file a No Stay Pleading if New GM is willing to so stipulate.  ***The Sesay Plaintiffs may file a No Stay Pleading if they think, consistent with the Court's earlier ruling, that such a pleading would meet FRBP 9011 standards***.  If they do, New GM is to respond, and the Sesay Plaintiffs may reply.  Upon reading the papers, the Court will determine whether oral argument is warranted.  This Order is without prejudice to the ability of the Sesay Plaintiffs and New GM to enter into a stipulation to enable the Sesay Plaintiffs to seek appellate review to obviate further litigation in this Court. (emphasis added)

45.    Thereafter, New GM did consent to an extension for the Sesay Plaintiffs to file a No Stay Pleading until August 19, 2014.  *See* Dkt. No. 12853.  On August 19, 2014, counsel for the Sesay Plaintiffs asked for a further extension until August 21, 2014; that request was also granted by New GM.  *See* Dkt. No. 12860.  Accordingly, the Sesay Plaintiffs had 14 days from service of the form Stay Stipulation, and 21 days from the commencement of their Action, to prepare and file their No Stay Pleading.

<u>**RESPONSE**</u>

<u>**THE RELIEF REQUESTED IN THE**</u>
<u>**AMENDED SESAY PLEADING SHOULD BE DENIED**</u>

46.    Preliminarily, as was the case with respect to the Phaneuf No Stay Pleading and the Elliott No Stay Pleading, New GM will limit its substantive arguments in this Response because of the absence of counsel for the other Plaintiffs in the Ignition Switch Actions.  *See* Hr'g Tr. 82:14-17, July 2, 2014 ("MR. STEINBERG:   . . . and I'm trying to be very careful not to make substantive arguments . . .  THE COURT:  That's especially important in light of all the people who have already left the courtroom today.").  As discussed herein, the issues raised by

18

the Sesay Plaintiffs will be briefed in accordance with the procedures established for the Four

Threshold Issues pursuant to the Supplemental Scheduling Order.[10]

**A.**     **The Sesay Plaintiffs Are Subject To The**
          **Injunction Contained In The Sale Order And Injunction**

47.     As stated in the Ignition Switch Motion to Enforce, the United States Supreme

Court in *Celotex Corp. v. Edwards* set forth the "well-established" rule that "'persons subject to

an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is

modified or reversed, even if they have proper grounds to object to the order.'"  514 U.S. 300,

306 (1995).  The Supreme Court further explained:

> If respondents believed the Section 105 Injunction was improper, they should
> have challenged it in the Bankruptcy Court, like other similarly situated bonded
> judgment creditors have done . . . .  Respondents chose not to pursue this course
> of action, but instead to collaterally attack the Bankruptcy Court's Section 105
> Injunction in the federal courts in Texas.  This they cannot be permitted to do
> without seriously undercutting the orderly process of the law.

*Id.* at 313.

48.     New GM is not seeking any new injunction against the Sesay Plaintiffs; New GM

is simply seeking to enforce the preexisting injunction set forth in this Court's Sale Order and

Injunction, and which remains in effect.   Through their pleading, the Sesay Plaintiffs are

essentially asking the Court to vacate its preexisting injunction as to them.   The burden is thus on

the Sesay Plaintiffs to demonstrate that the injunction in the Sale Order and Injunction should be

vacated.  *See Stewart v. General Motors Corp.*, 756 F.2d 1285, 1291 (7th Cir. 1985) ("The law

appears settled that the defendant bears that burden on a motion to vacate an injunction.").  Just

---

[10]     To the extent the Court believes that substantive arguments are needed to address the Sesay Plaintiffs' claims in
the context of their pleading prior to the Court addressing the Four Threshold Issues (which New GM asserts,
consistent with this Court's rulings in connection with the Phaneuf No Stay Pleading and the Elliott No Stay
Pleading, should not be the case), New GM requests that it be given an opportunity to brief such issues.

19

like the Phaneuf Plaintiffs and the Elliott Plaintiffs, the Sesay Plaintiffs have not come close to meeting their burden.

49.    It is for this reason that the Sesay Plaintiffs' arguments regarding the procedural mechanism chosen by New GM to seek relief in this Court is beside the point.  As counsel for the Sesay Plaintiffs by now well knows, it was the Sesay Plaintiffs who should have sought relief in this Court before filing the Sesay Ignition Switch Action; they did not do so.   In any event, contrary to the Sesay Plaintiffs' unsupported argument, the relief requested by New GM was appropriately brought by way of motion.  An adversary proceeding was not necessary as New GM is seeking to *enforce* a *preexisting* injunction, not *obtain* a *new* injunction.  *See, e.g.*, *In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd*, 471 B.R. 331, 337 (Bankr. S.D.N.Y. 2012) ("As a threshold matter, contrary to [respondent] Bancorp's argument, the Motion need not have been brought as an adversary proceeding since U.S. Bank seeks only the enforcement of an injunction already in effect under this Court's existing Sale Order, not the issuance of a new injunction."); *In re WorldCorp., Inc.,* 252 B.R. 890, 895 (Bankr. D. Del 2000) ("an adversary proceeding is not necessary where the relief sought [against only one respondent] is the enforcement of an order previously obtained.").

50.    In addition, the Sesay Plaintiffs were properly put on notice of the Ignition Switch Motion to Enforce.  New GM specifically stated in the Ignition Switch Motion to Enforce that it "reserve[d] the right to supplement the list of Ignition Switch Actions contained in Schedule 1 in the event additional cases are brought against New GM after the filing of this Motion to Enforce that implicate similar provisions of the Sale Order and Injunction."  Ignition Switch Motion to Enforce, p. 5 n.4.  To date, New GM has filed eight supplements to Schedules 1 and 2; such

20

supplements reference approximately fifty Ignition Switch Actions, and no other group of Plaintiffs has complained about the procedures employed by New GM.

**B.      A Preliminary Injunction Is Not Needed In**
**        Connection With The Sesay Ignition Switch Action**

51.      While New GM has in previous responses to other No Stay Pleadings asserted that it can satisfy its burden for obtaining a preliminary injunction, a preliminary injunction is not needed or required herein.[11]   It is undisputed that the Sesay Ignition Switch Action is part of MDL 2543.  Judge Furman has already stated that, while certain matters may go forward, he will await this Court's ruling on the Four Threshold Issues as they pertain to the economic loss actions (including the Sesay Ignition Switch Action).  In reality, regardless of what the Sesay Plaintiffs say or do, they are on the same track as all other Plaintiffs in MDL 2543 that have commenced Ignition Switch Actions.

52.      Moreover, this entire exercise is a waste of the Court's and New GM's resources and time.  As noted above, Judge Furman has ordered Lead Counsel for Plaintiffs in MDL 2543 to file a consolidated master complaint by the middle of October 2014 for all of the economic loss actions, which is expected to subsume the Sesay Ignition Switch Action.

**C.      The Sesay Plaintiffs' Claims Clearly**
**        Implicate the Sale Order and Injunction**

53.      The issues raised by the Sesay Plaintiffs are substantially similar to the issues raised by the Elliott Plaintiffs.  Mr. Sesay (as well as, presumably, many of the putative class members that Mr. Sesay seeks to represent) owns an Old GM vehicle, which the Court has

---

[11]      However, to the extent a preliminary injunction is needed with respect to the Sesay Plaintiffs, New GM asserts that, for the reasons stated in its responses to the Phaneuf No Stay Pleading and the Elliott No Stay Pleading (with such arguments being incorporated herein by reference), New GM's burden for obtaining a preliminary injunction is clearly satisfied herein.  The Sesay Ignition Switch Action is substantially similar to the Elliott Ignition Switch Action, and functionally equivalent to the Phaneuf Ignition Switch Action.  As a preliminary injunction was granted in those matters, it should likewise be granted here.

already held to be dispositive in determining that a No Stay Pleading should be denied.  Hr'g Tr.

92:3-5, July 2, 2014.

54.    In addition, as New GM explained in its Motion to Enforce, the reason that the

initial ignition switch recall was extended to some vehicles manufactured by New GM (like the

2010 Cobalt owned by Ms. Yearwood) is based on the remote possibility that an Old GM ignition

switch may have been installed in such vehicles by third-party dealerships or other repair outlets

during a post-manufacture repair or replacement.  *See* Motion to Enforce, ¶ 19.  Because New

GM is not liable for Old GM parts, it is not liable for economic loss claims arising from such

vehicles.

55.    The Sesay Plaintiffs, like the Phaneuf Plaintiffs and Elliott Plaintiffs, similarly

argue that their claims are based solely on New GM's conduct, and not Old GM's conduct.  But

because the class of plaintiffs, as defined, includes people who purchased their vehicles from Old

GM, this identical argument—that a plaintiff can sidestep the Sale Order and Injunction by

asserting only claims against New GM with respect to Old GM vehicles—was rejected by the

Court in *Phaneuf, Elliott*, and *Powledge.*

56.    Even the Sesay Plaintiffs themselves recognize that the Court needs to interpret

the Sale Order and Injunction to reach a conclusion on the issue.[12]  The Sale Order and Injunction

unquestionably reserved exclusive jurisdiction to this Court to interpret and enforce the Sale

---

[12]    *See* Amended Sesay Pleading, p. 41 ("Before such a conclusion can reasonably (or constitutionally) be reached, an analysis is necessary *first* to determine if their third-party non-debtor claims assert derivative or successor liability on the part of Non-Debtor GM for retained liability of Debtor GM, ***in which case the claims may well be within the terms of the Sale Order***, or if they are based instead on allegations that Non-Debtor GM violated *independent* duties that Non-Debtor GM owed to the *Sesay* Plaintiffs, causing them legally cognizable harm, in which case the claims would not be, and constitutionally could not have been, encompassed by the Sale Order and Injunction." (bold and italic emphasis added)).

Order and Injunction, as well as the terms of the Sale Agreement.[13]  This is why the Ignition Switch Motion to Enforce was filed in this Court, and this is why this Court is the only proper Court to hear and decide these issues.

57.    The Sesay Plaintiffs' arguments concerning this Court's lack of "related to" jurisdiction are inexplicable given this Court's ruling on the identical issue in *Elliott*.  The Court, in no uncertain terms, has already found, as counsel for the Sesay Plaintiffs (who is also counsel for the Elliott Plaintiffs) well knows, that any argument based on a lack of "related to" jurisdiction simply "misses the point."   Elliott Written Decision, at 4.   As clearly and unambiguously found by the Court, "[b]ankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' "*arising in*" jurisdiction.  The nearly a dozen cases cited [in the first two pages of the Elliott Written Decision] expressly so hold."   *Id.* (emphasis in original)(footnote omitted).

58.    All Plaintiffs are required to obey the injunction contained in the Sale Order and Injunction until this Court has had an opportunity to resolve the Threshold Issues set forth in the Ignition Switch Motion to Enforce, and, in particular, decide which claims asserted against New GM are barred, and which, if any, are not.  The Sesay Plaintiffs are no different from any of the other Plaintiffs.   Virtually every other Plaintiff, by signing the Stay Stipulation, has acknowledged their obligation to comply with the Court's Sale Order and Injunction.  The Sesay Plaintiffs should be compelled to do what the other Plaintiffs have readily acknowledged they will and must do.

---

[13]    *See* Sale Order and Injunction, ¶ 71.  In the Amended Sesay Pleading, the Sesay Plaintiffs go on for pages discussing a bankruptcy court retention of jurisdiction provision in a plan of reorganization.  *See* Amended Sesay Pleading, at pp. 14-17.  Again, counsel gets it wrong.  These cases have nothing to do with Old GM's plan of liquidation or any of its provisions.

**D. The Sesay Plaintiffs' Arguments Are Subsumed in At Least
Two Of The Four Threshold Issues, And Should Be Decided
<u>Pursuant to the Court-Approved Procedures Regarding Same</u>**

59.      As stated above, the claims asserted by the Sesay Plaintiffs are no different from the claims asserted by many Plaintiffs in other Ignition Switch Actions.   Numerous other Plaintiffs (including, notably, the Elliott Plaintiffs) have asserted, among other things, claims against New GM based on RICO,[14] fraud, and consumer protection statutes.[15]   The real issue raised by the Amended Sesay Pleading is whether their contention – *i.e.*, that they have asserted claims only against New GM and not Old GM -- should be decided now, or as part of the identical Old GM Claim Threshold Issue that is set forth in the Supplemental Scheduling Order. This is a question this Court has already answered repeatedly, and for which the Court has implemented carefully-crafted procedures.

60.      Moreover, Point II in the Amended Sesay Pleading asserts that the Ignition Switch Motion to Enforce should be denied because the Sesay Plaintiffs' due process rights were violated in that they received "no effective notice nor any reasonable opportunity to be heard with respect to entry of the Sale Order and Injunction."   Amended Sesay Pleading, at 29-33. This unquestionably fits within the Due Process Threshold Issue.   Again, this question should be answered after following the carefully-crafted procedures approved by this Court in the Scheduling Order and Supplemental Scheduling Order.

---

[14]      In addition to the Sesay Plaintiffs, other Ignition Switch Actions asserting a RICO claim include those filed by the Elliott Plaintiffs, the Arnold Plaintiffs, the Burton Plaintiffs, the Edwards Plaintiffs, the Emerson Plaintiffs, the Espineira Plaintiffs, the Harris Plaintiffs, the Knetze Plaintiffs, the Lannon Plaintiffs, the Markle Plaintiffs, the Mazzocchi Plaintiffs, the Ramirez Plaintiffs, the Ross Plaintiffs and the Santiago Plaintiffs.

[15]      Most of the Ignition Switch Actions contain claims based on (i) fraud or fraudulent concealment (which the Sesay Plaintiffs allege in their amended complaint (*see* ¶¶ 66-67 thereof)), and (ii) alleged violations of consumer protection statutes.

23916950v2

WHEREFORE, New GM respectfully requests that this Court (i) deny the relief requested in the Amended Sesay Pleading, (ii) preliminarily enjoin the Sesay Plaintiffs from further prosecuting their Ignition Switch Action, and (iii) grant New GM such other and further relief as the Court may deem just and proper for the filing of this frivolous pleading.

Dated: New York, New York
      September 19, 2014

Respectfully submitted,

    /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

23916950v2