**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**MOTORS LIQUIDATION COMPANY,** *et al.*, **f/k/a General Motors Corp.,** *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

**WILMINGTON TRUST COMPANY'S RESPONSE TO GENERAL MOTORS LLC'S "REPLY" IN CONNECTION WITH ROGER DEAN GILLISPIE'S MOTION FOR LEAVE TO PURSUE CLAIMS AGAINST GENERAL MOTORS, LLC, OR, ALTERNATIVELY, TO FILE A POST-BAR-DATE PROOF OF <u>CLAIM IN THE MOTORS LIQUIDATION COMPANY BANKRUPTCY</u>**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Wilmington Trust Company, as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust*

September 29, 2014

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 4

    I.      Because Mr. Gillispie Had No Pre-Sale Claim, The Sale Order
           Cannot Be Enforced To Bar Mr. Gillispie's Suit Against New GM ............................ 4

    II.     If Mr. Gillispie Were Deemed To Have Had A Pre-Sale Claim, New GM
           Would Be The Only Possible Defendant For Mr. Gillispie's Causes Of Action ......... 7

    III.    The GUC Trust Is Not "Estopped" From Disputing
           New GM's Interpretation Of The Sale Order .................................................................. 9

          A.     The Underlying Plan Documents Directly Refute New GM's Contention
                  That The GUC Trust Is The General "Successor To The Old GM Estate" ......... 9

          B.     New GM Has Not Satisfied Any Of The Elements For The "Extraordinary
                  Remedy" Of Judicial Estoppel, Much Less All Of Them ................................. 12

CONCLUSION ............................................................................................................................. 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*,
  221 B.R. 113 (D.N.J. 1998) ............................................................................................... 6

*Callaway v. Nu-Cor Auto. Corp.*,
  166 Ohio App. 3d 56 (Ohio Ct. App. 2006) ..................................................................... 5

*Compak Cos. LLC v. Johnson*,
  415 B.R. 334 (N.D. Ill. 2009) ........................................................................................... 9

*D'Ambrosio v. Marino*,
  747 F.3d 378 (6th Cir. 2014) ............................................................................................ 5

*DeRosa v. Nat'l Envelope Corp.*,
  595 F.3d 99 (2d Cir. 2010) ........................................................................................ 12, 13

*Doktor v. Werner Co.*,
  762 F. Supp. 2d 494 (E.D.N.Y. 2011). .............................................................................. 8

*Doolittle v. Cnty. of Santa Cruz (In re Metzger)*,
  346 B.R. 806 (Bankr. N.D. Cal. 2006) .............................................................................. 9

*Douglas v. Stamco*,
  363 F. App'x 100, 2010 WL 337043 (2d Cir. 2010) ......................................................... 7

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
  871 F. Supp. 2d 143 (E.D.N.Y. 2012) ..................................................................... 2, 7, 8

*Dunkley Co. v. Cal. Packing Co.*,
  277 F. 996 (2d Cir. 1921) ............................................................................................ 9, 11

*Epstein v. Official Comm. of Unsecured Creditors of Piper Aircraft Corp.*,
  58 F.3d 1573 (11th Cir. 1995) .......................................................................................... 1

*Ezekiel v. Michel*,
  66 F.3d 894 (7th Cir. 1995) ............................................................................................ 13

*Fehl v. S. W. C. Corp.*,
  433 F. Supp. 939 (D. Del. 1977) ..................................................................................... 12

*Fountain v. Colonial Chevrolet Co.*,
  1988 WL 40019 (Del. Super. Apr. 13, 1988) ................................................................. 11

*Froelich v. Ohio Dep't of Mental Health*,
  871 N.E.2d 1159 (Ohio 2007) ...................................................................................... 5, 6

*Goldman, Sachs & Co. v. Esso Virgin Is., Inc. (In re Duplan Corp.)*,
  212 F.3d 144 (2d Cir. 2000) ............................................................................................. 4

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Heck v. Humphrey*,
   512 U.S. 477 (1994) ............................................................................................................. 5

*In re Amarex, Inc.*,
   53 B.R. 12 (Bankr. W.D. Okla. 1985) ............................................................................... 10

*In re Caldor*,
   240 B.R. 180 (Bankr. S.D.N.Y. 1999) ................................................................................. 6

*In re Edwards*,
   962 F.2d 641 (7th Cir. 1992) ................................................................................................ 8

*In re Emoral, Inc.*,
   740 F.3d 875 (3d Cir. 2014) ................................................................................................. 7

*In re Ex-Cel Concrete Co., Inc. v. Citicorp. Mortg.,Inc.*,
   178 B.R. 198 (9th Cir. B.A.P. 1995) .................................................................................... 8

*In re MMH Automotive Group, LLC*,
   385 B.R. 347 (Bankr. S.D. Fla. 2008) .................................................................................. 8

*In re Old Carco LLC*,
   492 B.R. 392 (Bankr. S.D.N.Y. 2013) ................................................................................. 7

*In re Polycel Liquidation, Inc.*,
   2006 WL 4452982 (Bankr. D.N.J. Apr. 18, 2006) .............................................................. 8

*In re Ritchie Risk-Linked Strategies Trading (Ir.) Ltd.*,
   471 B.R. 331 (Bankr. S.D.N.Y. 2012) .............................................................................. 3, 8

*In re Savage Indus., Inc.*,
   43 F.3d 714 (1st Cir. 1994) .................................................................................................. 8

*In re Tronox, Inc. Secs. Litig.*,
   769 F. Supp. 2d 202 (S.D.N.Y. 2011) ................................................................................ 11

*Jenkins v. A.T. Massey Coal Co., Inc. (In re Jenkins)*,
   410 B.R. 182 (Bankr. W.D. Va. 2008) ................................................................................ 6

*Leveraged Innovations, LLC v. NASDAQ OMX Grp., Inc.*,
   2012 WL 1506524 (S.D.N.Y. April 20, 2012) ............................................................... 9, 11

*LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*,
   53 F.3d 478 (2d Cir. 1995) ......................................................................................... 1, 4, 6

*Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*,
   740 F.3d 81 (2d Cir. 2014) .................................................................................................. 6

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Metal Founds. Acquisition, LLC v. Reinert (In re Reinert)*,
  467 B.R. 830 (Bankr. W.D. Pa. 2012) ................................................................................ 9

*Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus., Inc.)*,
  467 B.R. 694 (S.D.N.Y. 2012) ............................................................................. 2, 3, 7, 8, 14

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ......................................................................................................... 12

*New York v. Nat'l Serv. Indus., Inc.*,
  460 F.3d 201 (2d Cir. 2006) ........................................................................................ 11, 12

*Ogle v. Fid. & Deposit Co.*,
  586 F.3d 143 (2d Cir. 2009) .............................................................................................. 4

*Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods.)*,
  209 F.3d 125 (2d Cir. 2000) ........................................................................................... 4, 6

*Pennsylvania Dept. of Public Welfare v. Davenport*,
  495 U.S. 552 (1990) ........................................................................................................... 2

*Pension Benefit Guar. Corp. v. Oneida Ltd.*,
  562 F.3d 154 (2d Cir. 2009) ............................................................................... 1, 2, 4, 5, 6

*Polycel Structural Foam, Inc. v. Pool Builders Supply of the Carolinas
  (In re Polycel Liquidation, Inc.)*, 2007 WL 77336 (D.N.J. Jan. 9, 2007) ................................. 9

*Reed v. City of Arlington*,
  650 F.3d 571 (5th Cir. 2011) ........................................................................................... 13

*Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*,
  81 F.3d 355 (3d Cir. 1996) .............................................................................................. 12

*Speyer v. Kieselstein-Cord*,
  2011 WL 2022828 (S.D.N.Y. May 24, 2011) ................................................................. 4, 6

*Stone v. Kmart Corp.*,
  2007 WL 1034959 (M.D. Ala. Mar. 30, 2007) .................................................................. 6

*United States v. LTV Corp. (In re Chateaugay Corp.)*,
  944 F.2d 997 (2d Cir. 1991) .............................................................................................. 6

**Statutes**

11 U.S.C. § 1123(a)(5) ............................................................................................................ 11

**Other Authorities**

8 Collier on Bankruptcy ¶ 1145.02 .......................................................................................... 9

Wilmington Trust Company ("**WTC**"), as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust (the "**GUC Trust**"), respectfully submits this memorandum of law in response to the "Reply" filed by General Motors, LLC ("**New GM**") in connection with Roger Dean Gillispie's motion for leave to pursue tort claims against New GM, or, in the alternative, to file a post-bar-date Proof of Claim in the bankruptcy proceedings of Motors Liquidation Company ("**MLC**"), formerly known as General Motors Corporation ("**Old GM**").

## INTRODUCTION

New GM concedes that the key question on Mr. Gillispie's motion is "when his claim ***arose for bankruptcy purposes***." Reply ¶ 3 (Dkt. 12892) (emphasis in original). New GM makes no attempt, however, to apply Second Circuit law as to when a prepetition "claim" arises under Section 101(5)(A) of the Bankruptcy Code. *See Pension Benefit Guar. Corp. v. Oneida Ltd.*, 562 F.3d 154, 157 (2d Cir. 2009) ("*PBGC*"); *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)* ("*Chateaugay II*"), 53 F.3d 478, 496-97 (2d Cir. 1995). Instead, relying on an Eleventh Circuit case, New GM contends that Mr. Gillispie's "prepetition relationship with Old GM" is "sufficient to establish [his] claim as a prepetition claim." Reply ¶ 4 (citing *Epstein v. Official Comm. of Unsecured Creditors of Piper Aircraft Corp.*, 58 F.3d 1573 (11th Cir. 1995)).

In the Second Circuit, the mere existence of a prepetition relationship is not "sufficient" to establish a prepetition claim. Instead, a prepetition "claim" under Section 101(5)(A) of the Bankruptcy Code "exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation – a right to payment – ***under the relevant non-bankruptcy law***." *Chateaugay II*, 53 F.3d at 497 (2d Cir. 1995) (internal quotation omitted) (emphasis added). The Second Circuit has been unambiguous about the analysis that must be applied:

> [T]he existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition. To make these determinations, *we look to the substantive non-bankruptcy law that gives rise to the debtor's obligation*.

*PBGC*, 562 F.3d at 157 (internal quotation omitted) (emphasis added).

These are binding Second Circuit cases on when a "claim" under Section 101(5)(A) of the Bankruptcy Code arises, not "contingent asset cases" that are "irrelevant" or a "disguised attempt to burden New GM with successor liability." Reply ¶¶ 3, 5. Here, New GM does not, and cannot, dispute that, under the relevant non-bankruptcy law, Mr. Gillispie had no right to payment, which is "nothing more nor less than an enforceable obligation," *Pa. Dep't. of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990), until an Ohio court vacated his criminal conviction on April 13, 2012, nearly three years after this Court entered the Sale Order on July 5, 2009. *See* WTC Response to Mr. Gillispie's Motion at 10-12 (Dkt. 12864).

Because Mr. Gillispie did not have any claim until after entry of the Sale Order (a "**Post-Sale Claim**"), New GM's arguments about what liabilities were retained by Old GM or not assumed by New GM under the Sale Order are beside the point. *See* Reply ¶¶ 9-14, 28. If Mr. Gillispie's claims did not exist prior to entry of the Sale Order or if Mr. Gillispie did not know that the Sale Order would impact claims he would one day hold, it would violate Mr. Gillispie's due process rights to use the Sale Order to bar his suit against New GM. *See Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus.)*, 467 B.R. 694, 708 (S.D.N.Y. 2012); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 155 (E.D.N.Y. 2012).

Even assuming a*rguendo* that Mr. Gillispie had a claim prior to entry of the Sale Order (a "**Pre-Sale Claim**"), New GM still would be the only possible defendant for Mr. Gillispie's causes of action. There is no dispute that, if Mr. Gillispie had a Pre-Sale Claim and was provided adequate notice, he would have no cause of action against New GM or the Old GM

2

bankruptcy estate. If Mr. Gillispie had a Pre-Sale Claim and was not provided adequate notice, however, Mr. Gillispie would have proper grounds to have the Sale Order lifted as to him and to pursue his claims against New GM because "[a sale order] that purports to free a purchaser from the debtor's liabilities does not bind parties in interest that did not receive appropriate notice of the sale." *In re Ritchie Risk-Linked Strategies Trading (Ir.) Ltd.*, 471 B.R. 331, 338 (Bankr. S.D.N.Y. 2012) (internal quotation omitted). Indeed, "[c]ourts have rejected the premise that maximizing the value of the estate outweighs the due process rights of potential claimants." *Grumman*, 467 B.R. at 711.

Because it has no arguments on the merits, New GM is reduced to arguing that WTC should be estopped from disputing New GM's interpretation of the Sale Order. *See* Reply ¶¶ 31-54. The underlying Plan documents, however, directly refute New GM's contention that the GUC Trust is the general "successor to the Old GM estate." *Id.* ¶ 31. The GUC Trust therefore did not inherit all of Old GM's positions in connection with the Sale.

Even indulging New GM's erroneous contention that the GUC Trust was Old GM's successor for all purposes, New GM has not come close to satisfying any of the elements for the "extraordinary remedy" of estoppel, much less all of them. The GUC Trust's arguments in connection with the motion filed by Mr. Gillispie, whose plight could not be more unique, are not inconsistent with any positions taken by Old GM or WTC itself. Nor has the Court adopted any Old GM or prior WTC position that is dispositive of the GUC Trust's arguments here. Under these circumstances, there is no prejudice to New GM. Moreover, New GM's attempt to estop the GUC Trust from making any substantive arguments is particularly pointless here when there is no dispute that the principal party on this motion – Mr. Gillispie – may properly make all the same arguments.

For these and all the other reasons herein, WTC respectfully submits that New GM is the only possible defendant for Mr. Gillispie's causes of action and requests that the Court enter an order denying Mr. Gillispie's request to file a post-bar-date Proof of Claim.

## ARGUMENT

### I. Because Mr. Gillispie Had No Pre-Sale Claim, The Sale Order Cannot Be Enforced To Bar Mr. Gillispie's Suit Against New GM

New GM admits that the key question on Mr. Gillispie's motion is "when his claim *arose for bankruptcy purposes*." Reply ¶ 3 (emphasis in original). Section 101(5)(A) of the Bankruptcy Code defines a bankruptcy claim as a "right to payment." 11 U.S.C. § 101(5)(A). Under binding Second Circuit precedent, the time a claim arises under Section 101(5)(A) of the Bankruptcy Code is determined under "relevant non-bankruptcy law":

> A valid pre-petition claim requires two elements. *See LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995). First, the claimant must possess a right to payment. Second, that right must have arisen prior to the filing of the bankruptcy petition. Whether a claim exists is determined by bankruptcy law, while *the time a claim arises is determined under relevant non-bankruptcy law*. *See id.*

*Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods.)*, 209 F.3d 125, 128 (2d Cir. 2000).

Consistent with this analysis prescribed by the Second Circuit, courts have repeatedly looked at "whether the claimant possessed a right to payment" and "whether that right arose before the filing of the petition" under the "non-bankruptcy law that gives rise to the debtor's obligation," whether the source of that law is state or federal. *PBGC*, 562 F.3d at 157 (evaluating claims under ERISA); *see also Ogle v. Fid. & Deposit Co.*, 586 F.3d 143, 146 (2d Cir. 2009) (evaluating claims under state contract law); *Goldman, Sachs & Co. v. Esso V.I., Inc. (In re Duplan Corp.)*, 212 F.3d 144, 151 (2d Cir. 2000) (evaluating claims under CERCLA); *Speyer v. Kieselstein-Cord*, 2011 WL 2022828, at *3 n.3 (S.D.N.Y. May 24, 2011) (evaluating

4

claims under New York law). All of these cases are from the Second Circuit, and each of them post-dates *Epstein*, the Eleventh Circuit case on which New GM relies.

New GM does not dispute that the relevant non-bankruptcy laws here are (i) federal Sixth Circuit law for Mr. Gillispie's causes of action under Section 1983; and (ii) Ohio state law for Mr. Gillispie's causes of action for malicious prosecution and intentional infliction of emotional distress. *See* WTC Response to Mr. Gillispie's Motion at 9-12 (Dkt. 12864). New GM bypasses any analysis under the relevant non-bankruptcy law, however, and contends that Mr. Gillispie's bankruptcy claims arose on "the day of [his] conviction" simply because "he believed that he was wrongfully prosecuted." Reply ¶ 9. As case law from the Supreme Court, Sixth Circuit, and Ohio all make clear, an inmate's subjective belief that he was wrongly convicted does not give rise to any right to payment. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (explaining that an inmate has no cause of action under Section 1983 until his conviction is overturned); *D'Ambrosio v. Marino*, 747 F.3d 378, 384-86 (6th Cir. 2014) (same); *Froelich v. Ohio Dep't of Mental Health*, 871 N.E.2d 1159, 1162 (Ohio 2007) (explaining that an inmate has no cause of action for malicious prosecution claim until he is exonerated); *see also* WTC Response to Mr. Gillispie's Motion at 10-12 (Dkt. 12864).

As a fallback, New GM argues that Mr. Gillispie had a Pre-Sale Claim under Section 101(5)(A) because "the definition of a 'claim' includes 'contingent,' 'unmatured' and 'unliquidated claims." Reply ¶ 12. This "definitional" argument, however, ignores that this is "not a situation . . . where an obligation ha[d] already been created prior to bankruptcy but [wa]s subject to a contingency." *PBGC*, 562 F.3d at 157. Instead, until Mr. Gillispie's criminal conviction was vacated on April 13, 2012, there was no right to payment to begin with under the relevant non-bankruptcy law. *See Heck*, 512 U.S. at 486-87; *D'Ambrosio*, 747 F.3d at 384-86;

5

*Froehlich*, 871 N.E.2d at 1162. "No matter how broadly the term 'claim' [under Section 101(5)(A)] is construed, it cannot extend to a right to payment that d[id] not yet exist under federal [or state] law." *PBGC*, 562 F.3d at 157; *accord Speyer*, 2011 WL 2022828, at *3 n.3.[1]

Moreover, the same type of "definitional" argument that New GM advances here has been advanced, and rejected, in the Section 541 context. Similar to the definition of "claim" in Section 101(5)(A), the definition of "interest" in Section 541 includes "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d 81, 88 (2d Cir. 2014) (internal quotation omitted). Yet courts have repeatedly held that causes of action under Section 1983 and under common law for malicious prosecution or intentional infliction of emotional distress only become "interests" under Section 541 when the debtor is exonerated, even if the allegedly tortious conduct occurred pre-petition. *See*, *e.g.*, *Jenkins v. A.T. Massey Coal Co., Inc. (In re Jenkins)*, 410 B.R. 182, 193 (Bankr. W.D. Va. 2008); *Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113, 117 (D.N.J. 1998).

In sum, Mr. Gillispie had no Pre-Sale Claim under the "relevant non-bankruptcy law." New GM tries to obfuscate this point by accusing the GUC Trust of engaging in a "disguised attempt to burden New GM with successor liability." Reply ¶ 5. Successor liability is simply

---

[1]   *In re Caldor*, 240 B.R. 180 (Bankr. S.D.N.Y. 1999) has no application here because it involved contract claims. As the Second Circuit has explained, "the concepts of 'maturity' and 'contingency' are not readily transferable from the context of contracts to that of tort and statutory claims." *United States v. LTV Corp. (In re Chateaugay Corp.)* ("*Chateaugay I*"), 944 F.2d 997, 1005 (2d Cir. 1991).

New GM also mistakenly relies on *Stone v. Kmart Corp.*, 2007 WL 1034959 (M.D. Ala. Mar. 30, 2007). In *Stone*, the district court was bound by the Eleventh Circuit's decision in *Epstein*, which held that non-bankruptcy law is irrelevant to the determination of when a claim under Section 101(5)(A) arises. *Id.* at *3 (citing *Epstein*, 58 F.3d at 1576 n.2). In contrast to the Eleventh Circuit, the Second Circuit has made clear that "the time a claim arises is determined under relevant non-bankruptcy law." *Manville*, 209 F.3d at 128; *see also PBGC*, 562 F.3d at 157; *Chateaugay II*, 53 F.3d at 496-97.

6

not at issue here, however, because there were no pre-sale "liabilities" to Mr. Gillispie that could have been "retained" by Old GM or not "assumed" by New GM. *Id.* ¶¶ 9-14, 28.[2] Rather, Mr. Gillispie had no claim under the "relevant non-bankruptcy law" until his criminal conviction was vacated in April 2012, and it would violate his due process rights to use the Sale Order entered on July 5, 2009 to bar his suit against New GM. *See Grumman*, 467 B.R. at 708; *DPWN*, 871 F. Supp. 2d at 155.[3]

## II. If Mr. Gillispie Were Deemed To Have Had A Pre-Sale Claim, New GM Would Be The Only Possible Defendant For Mr. Gillispie's Causes Of Action

New GM does not dispute that, if Mr. Gillispie were deemed to have had a Pre-Sale Claim and was provided adequate notice, Mr. Gillispie would have no cause of action against New GM or the Old GM bankruptcy estate. *See* WTC Response to Mr. Gillispie's Motion at 17-22 (Dkt. 12864) (explaining, *inter alia*, that "Mr. Gillispie would be in the same position as any other claimant who failed a file a timely Proof of Claim" if he were deemed to have had a Pre-Sale Claim and was provided with adequate notice, and that "excusable neglect" doctrine would not apply to allow Mr. Gillispie to file a post-bar-date Proof of Claim); Reply ¶¶ 15-17.[4]

---

[2] The successor liability cases that New GM cites thus have no application here. *See In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014); *Douglas v. Stamco*, 363 F. App'x 100 (2d Cir. 2010) (summary order); *In re Old Carco LLC*, 492 B.R. 392 (Bankr. S.D.N.Y. 2013).

[3] New GM inexplicably asserts that the court in *Old Carco* held that "the plaintiffs' due process rights had not been violated because the plaintiffs had received publication notice of Old Chrysler's 'well-publicized' bankruptcy proceedings." Reply ¶ 10. There is *no* discussion in *Old Carco* about the sufficiency of publication notice. Moreover, the claims at issue in *Old Carco* related to "design flaws" for which "Old Carco had already issued at least two and possibly three recall notices . . . *before* the original purchasers bought their vehicles from Old Carco." 492 B.R. at 403 (emphasis added). That is not remotely "comparable" to Mr. Gillispie's situation here. Reply ¶ 10. Mr. Gillispie had no Pre-Sale Claim, and therefore no notice of any Pre-Sale Claim, because his criminal conviction was not vacated until nearly three years after the entry of the Sale Order.

[4] Moreover, as will be briefed in connection with the New GM Motions to Enforce and the related Threshold Issues, any Pre-Sale Claim that Mr. Gillispie may be deemed to have had would be barred under the doctrine of equitable mootness.

7

If Mr. Gillispie were deemed to have had a Pre-Sale Claim but was "outside the scope of the notice published in the sale and bankruptcy" (Dkt. 12727 at 9), New GM would be the only possible defendant for Mr. Gillispie's causes of action. Indeed, "[c]ourts have rejected the premise that maximizing the value of the estate outweighs the due process rights of potential claimants." *Grumman*, 467 B.R. at 711; *see also In re Polycel Liquidation, Inc.*, 2006 WL 4452982, at *11 (Bankr. D.N.J. Apr. 18, 2006), *aff'd*, 2007 WL 77336 (D.N.J. Jan. 8, 2007) ("Although this court agrees that the interest of finality is an important part of ensuring participation in bankruptcy sales, this cannot trump constitutionally mandated due process requirements for notice and an opportunity to be heard.").[5]

New GM purports to rely on "free and clear" cases (Reply ¶¶ 21-25, 30), but ignores that "a sale order under section 363(f) of the Code that purports to free a purchaser from the debtor's liabilities does not bind parties in interest that did not receive appropriate notice of the sale." *In re Ritchie*, 471 B.R. at 338-39 (internal quotation omitted). Thus, courts have repeatedly held that constitutionally insufficient notice of a sale proceeding precludes a purchaser from taking property free and clear of *pre-sale* interests. *Id.*; *DPWN*, 871 F. Supp. 2d at 154; *In re Savage Indus., Inc.*, 43 F.3d 714, 722-23 (1st Cir. 1994); *Compak Cos. LLC v. Johnson*, 415 B.R. 334,

---

[5] In arguing that finality should trump constitutional due process, New GM relies on a case that has been sharply criticized and rejected. *Compare* Reply ¶¶ 21-22 (discussing and relying on *In re Edwards*, 962 F.2d 641 (7th Cir. 1992)), *with In re Ex-Cel Concrete Co., Inc. v. Citicorp. Mortg.,Inc.*, 178 B.R. 198, 204-05 (9th Cir. B.A.P. 1995) ("We . . . disagree with *Edwards* to the extent that it allows considerations, such as the exigent needs of the bankruptcy system . . . to justify departures from due process standards in adjudicating property rights."); *In re MMH Automotive Group, LLC*, 385 B.R. 347, 359-60 (Bankr. S.D. Fla. 2008) (adopting approach that "rejected the holding in *Edwards*"); *Polycel*, 2006 WL 4452982, at *10-11 (rejecting *Edwards* and "follow[ing] the more persuasive line of cases that recognize the importance of affording parties their due process rights over the interest of finality in bankruptcy sales"). In the 22 years since *Edwards* was decided, no court in the Second Circuit has adopted *Edwards*.

New GM also mistakenly relies on *Doktor v. Werner Co.*, 762 F. Supp. 2d 494 (E.D.N.Y. 2011). *Doktor* neither involved any alleged deprivation of due process rights, nor any suggestion that the claim at issue did not arise until *after* the asset sale at issue. *See id.* at 498-99.

8

339 (N.D. Ill. 2009); *Polycel Structural Foam, Inc. v. Pool Builders Supply of the Carolinas (In re Polycel Liquidation, Inc.)*, 2007 WL 77336, at *8-9 (D.N.J. Jan. 9, 2007); *Metal Founds. Acquisition, LLC v. Reinert (In re Reinert)*, 467 B.R. 830, 832 (Bankr. W.D. Pa. 2012); *Doolittle v. Cnty. of Santa Cruz (In re Metzger)*, 346 B.R. 806, 819 (Bankr. N.D. Cal. 2006).

### III. The GUC Trust Is Not "Estopped" From Disputing New GM's Interpretation Of The Sale Order

As a last resort, New GM asks this Court to ignore the merits and hold that the GUC Trust is estopped from disputing New GM's interpretation of the Sale Order. *See* Reply ¶¶ 31-54. The underlying Plan documents, however, directly refute New GM's contention that the GUC Trust is the general "successor to the Old GM estate." *Id.* ¶ 31. The GUC Trust therefore did not inherit all of Old GM's positions in connection with the Sale. Moreover, even if the GUC Trust were somehow deemed to be Old GM's general successor, New GM has not come close to satisfying any of the elements for the "extraordinary remedy" of estoppel, much less all of them.

#### A. The Underlying Plan Documents Directly Refute New GM's Contention That The GUC Trust Is The General "Successor To The Old GM Estate"

In determining whether, and to what extent, the GUC Trust constitutes the Debtors' successor, the underlying Plan documents control. *See Leveraged Innovations, LLC v. NASDAQ OMX Grp., Inc.*, 2012 WL 1506524, at *5 (S.D.N.Y. April 20, 2012) (citing *Dunkley Co. v. Cal. Packing Co.*, 277 F. 996, 1000-01 (2d Cir. 1921)). The Plan, Confirmation Order, and GUC Trust Agreement each make clear that the GUC Trust is not Old GM's general successor, but instead a successor solely *within the meaning of Section 1145* of the Bankruptcy Code for the limited purpose of exempting the GUC Trust from the requirements of Section 5 of the Securities

9

Act of 1933 in connection with its distribution of New GM securities or GUC Trust units.[6] These narrowly crafted provisions in the Plan, Confirmation Order, and GUC Trust Agreement permit the GUC Trust to act as a "successor" for this limited securities-law purpose, but they do not render it a "successor" for more than that limited purpose. *See also In re Amarex, Inc.*, 53 B.R. 12, 14 (Bankr. W.D. Okla. 1985) (explaining that "[t]he obvious purpose of section 1145 is to encourage reorganization and to relieve bankrupt entities of the strict requirements of securities laws so long as adequate disclosure is made").

New GM tries to change the plain meaning of the Plan documents by ripping out of context any provisions in the Plan, GUC Trust Agreement, or GUC Trust filings that use the word "successor." None of New GM's carefully trimmed excerpts, however, shows that the GUC Trust is the general successor to the Old GM estate:

- Reply ¶ 46: New GM quotes a GUC Trust Form 10-K stating that the Trust was formed for the purpose of "winding down the Debtors' affairs." Yet, as the Plan makes clear, the Trust's primary purpose is to resolve and satisfy general unsecured claims and secured, administrative and priority claims. Plan § 6.2(b). New GM does not explain how those limited duties make the GUC Trust the general successor to the Old GM estate.

- Reply ¶ 47: New GM quotes the GUC Trust Agreement provision allowing the GUC Trust to setoff against a claimant any claim the GUC Trust receives from the Debtor, without acknowledging that this section does no more than grant the GUC Trust the limited power to assert a counterclaim against a claimant. New GM cites no legal authority for its apparent position that such limited setoff rights transform the GUC Trust into the general successor to the Old GM estate.

- Reply ¶ 48: New GM asserts that, at page 3 of the Plan, "the GUC Trust would assume Old GM's remaining obligations" under the MSPA. But neither that page, nor any part of the Plan or any Plan-related document,

---

[6] *See* Plan § 6.6 (under the heading "Securities Law Matters"); Confirmation Order ¶ 13 (under the heading "Securities Laws Exemption"); GUC Trust Agreement ¶ E; *see also* Dkt. 12892 ¶¶ 38, 45, 46 (citing the Disclosure Statement, a GUC Trust Form 10-K, and a GUC Trust Quarterly Report, each of which note that the GUC Trust is a successor within the meaning of Section 1145 of the Bankruptcy Code).

10

places the Trust "in the shoes" of Old GM for all purposes. Instead, the GUC Trust Agreement provides that, post-dissolution, certain limited tax obligations of Debtors become applicable to the GUC Trust. *See* GUC Trust Agreement §7.7(e). This provision makes clear, however, that its reach is restricted to certain "Debtor Tax Matters."

- Reply ¶ 48: New GM contends that the GUC Trust is a successor to Old GM because the Plan defines a "Protected Party" to include both a "transferee of, and successor to, any assets of the Debtors (including, without limitation, the GUC Trust . . .)." A plain reading of this provision, however, comports with the Trust's status as a *transferee*, not a successor. New GM cites no authority to the contrary.

- Reply ¶ 49: New GM asserts that Old GM assigned to the GUC Trust "all of its 'rights and defenses' against any creditor" for "no consideration." However, New GM overlooks that the GUC Trust also assumed certain liabilities to those claimants – which constitutes obvious consideration. *See* Assignment Agreement § 1.2. In any event, the receipt of certain assets and the assumption of certain liabilities under a contract does not create a successor relationship. *See Dunkley*, 277 F. 996 at 1000-01; *Leveraged Innovations,* 2012 WL 1506524, at *5.

Moreover, under applicable law,[7] one corporation is not another's successor except by express or implied agreement, or where the corporations effectively merge. *See In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 216 & n.23 (S.D.N.Y. 2011). Here, the GUC Trust did not expressly or impliedly agree to be Old GM's general successor. Rather, the GUC Trust agreed to become Old GM's successor only for certain limited and delineated purposes. *See id.* (rejecting broad successor liability where contract merely made entity liable as successor for environmental remediation costs); *Fountain v. Colonial Chevrolet Co.*, 1988 WL 40019, *7 (Del. Super. Apr. 13, 1988) (rejecting broad successor liability where sale agreement lacked express provision providing for it). Nor did the GUC Trust merge with Old GM. Prior to Old GM's dissolution,

---

[7] Successor liability law is the same under New York law, which governs the Plan (¶ 12.13), Delaware law, which governs the GUC Trust Agreement (¶ 13.2), and federal common law, which applies to bankruptcy claims. *Compare New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 206 (2d Cir. 2006) (federal and New York law), *with In re Tronox, Inc. Secs. Litig.*, 769 F. Supp. 2d 202, 216 & n.23 (S.D.N.Y. 2011) (New York and Delaware law).

11

the Plan created the GUC Trust as a separate, independent trust for the purpose of satisfying and resolving various claims. *See* Plan § 6.2. And although the GUC Trust was a "transferee" of "certain" of the Debtors' assets and liabilities to carry out its assigned tasks, it did not receive all or substantially all of Old GM's assets. *See id.* §§ 1.85, 6.2(b); *see also* 11 U.S.C. § 1123(a)(5) (permitting debtors' assets to be transferred to another entity to implement the plan). Being a "transferee" of certain property under Section 1123 does not make the GUC Trust a "successor" for all purposes. *See Nat'l Serv. Indus.*, 460 F.3d at 209; *Fehl v. S. W. C. Corp.*, 433 F. Supp. 939, 945 (D. Del. 1977).

### B. New GM Has Not Satisfied Any Of The Elements For The "Extraordinary Remedy" Of Judicial Estoppel, Much Less All Of Them

Even if the GUC Trust were deemed to be the Debtors' successor for more than the limited purposes envisioned in the Plan and related agreements – and it is not – the "extraordinary remedy" of judicial estoppel would not apply.[8] Estoppel *only* applies in "situations where the risk of inconsistent results with its impact on judicial integrity is certain," and the party requesting estoppel must show "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)) *see also Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996) ("[J]udicial

---

[8] WTC is similarly not bound by positions taken while acting as a fiduciary in its completely unrelated capacities as a member of the Creditors' Committee and as Indenture Trustee of certain Old GM bonds. *See* Reply ¶¶ 31, 35, 39-42, 44, 50. WTC no longer serves in either role and has no continuing responsibility in either capacity. *See* Dkt. 9638 at 28 (noting that WTC was to resign from Creditors' Committee); *Id.* at 7-8 (cancelling indentures and relieving WTC of all duties); *see also* Plan § 6.7 (same).

12

estoppel is an extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice."). Here, New GM has not come close to satisfying any of the elements of judicial estoppel, let alone all of them.

*First*, the GUC Trust's position on when Mr. Gillispie's claims arose is not "clearly inconsistent" with any prior positions by Old GM or WTC in this bankruptcy proceeding. *See Ezekiel v. Michel*, 66 F.3d 894, 905 (7th Cir. 1995) (positions are inconsistent "only when the [party] raises contradictory arguments in response to the same dry [set] of facts"). Old GM was dissolved in 2011 before Mr. Gillispie even had a legally cognizable claim. Old GM's position that some holders of *Pre-Sale* Claims could not pursue those claims against New GM is not "clearly inconsistent" with WTC's position that Mr. Gillispie holds a *Post-Sale* Claim that may be pursued against New GM.

*Second*, within this bankruptcy proceeding, this Court has never adopted a view on the questions at issue on Mr. Gillispie's motion, namely when a tort claim held by an incarcerated individual arises under the Bankruptcy Code, how such a claim relates to constitutional concepts of adequate notice and due process, and what remedial possibilities flow from the answers to those questions. *See DeRosa*, 595 F.3d at 103. Therefore, the Court has never adopted Old GM's position on these issues.

*Third*, New GM cannot show any prejudice from WTC's position here.[9] New GM was well aware in 2009 that Old GM did not and could not promise, via an arms-length agreement entered into under Section 363, to immunize New GM against claims that arose post-sale. Old

---

[9] Finding WTC is not judicially estopped from arguing New GM is the proper defendant for Mr. Gillispie's claims is also in the best interest of Old GM's unsecured creditors, the protection of whom is a "core goal[] of the bankruptcy system." *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011). Such a finding is also consistent with WTC's fiduciary duties to general unsecured creditors. *See* GUC Trust Agreement §§ 2.4, 8.1(b)(iv).

13

GM also could not have promised to bar claims such as Mr. Gillispie's, or by claimants who were, as Mr. Gillispie contends he was, "outside the scope of the [publication] notice." (Dkt. 12727 at 9). Rather, all parties understood then that the Sale Order and Injunction operated only to bind claims that existed as of July 5, 2009, *i.e.* "claims" under Section 101(5)(A) of the Bankruptcy Code. *See, e.g.*, *Grumman*, 467 B.R. at 707 ("[F]or due process reasons," claims that have not arisen pre-sale "cannot be discharged by the bankruptcy courts' orders").

At bottom, New GM's judicial estoppel argument is not only flawed at every turn, but New GM has offered no real reason to impose that "extraordinary remedy" in a multi-party litigation like this. The realities of this case reflect that even if WTC were estopped, Mr. Gillispie himself could make the exact same arguments, making it even more difficult for New GM to demonstrate the requisite prejudice from WTC's position on this motion.

## CONCLUSION

For all these reasons, WTC respectfully submits that New GM is the only possible defendant for Mr. Gillispie's causes of action and requests that the Court enter an order denying Mr. Gillispie's request to file a post-bar-date proof of claim.

Dated:   September 29, 2014            GIBSON, DUNN & CRUTCHER LLP

By:   /s/ Adam H. Offenhartz
    Adam H. Offenhartz
    Matthew J. Williams
    Aric H. Wu
    Lisa H. Rubin

200 Park Avenue
New York, New York 10166

*Attorneys for Wilmington Trust Company, as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust*

14