**Response Deadline: October 21, 2014**
**No Hearing Required Pursuant to Stipulation and Agreed**
**Scheduling Order dated October 16, 2014 [Dkt. No. 12956]**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
In re                                              :    Chapter 11
                                                   :
MOTORS LIQUIDATION COMPANY, *et al.*,              :    Case No.: 09-50026 (REG)
     f/k/a General Motors Corp., *et al.*          :
                                                   :
                    Debtors.                       :    (Jointly Administered)
                                                   :
----------------------------------------------------------------x

**RESPONSE BY GENERAL MOTORS LLC TO**
**<u>NO STAY PLEADING FILED BY ALEJANDRO ALERS, SR.</u>**

24021862v2

**TABLE OF CONTENTS**

                                                **Page**

**PRELIMINARY STATEMENT** ...................................................................................................1

**BACKGROUND RELEVANT TO RESPONSE** ........................................................................3

      A.      **The Ignition Switch Motion To Enforce, Court Conferences And Scheduling Orders** ......................................................................3

      B.      **The Denial Of The Phaneuf No Stay Pleading** .......................................................4

      C.      **The Tag-Along Motion For Newly-Filed Ignition Switch Actions And The Implementation Of Supplemental Stay Procedures** .............6

      D.      **MDL 2543 And Its Initial Case Conference** ...........................................................6

      E.      **The Alers Ignition Switch Action** ...........................................................................7

**RESPONSE** ..................................................................................................................................8

**THE RELIEF REQUESTED IN THE ALERS NO STAY PLEADING SHOULD BE DENIED** ..........................................................................................................8

      A.      **The Alers Plaintiff Is Subject To The Injunction Contained In The Sale Order And Injunction** ......................................................9

      B.      **This Court Has Exclusive Jurisdiction Over The Alers Ignition Switch Action And Should Enjoin The Alers Plaintiff From Continuing To Prosecute Same** ...............................10

      C.      **The Alers Plaintiff's Claims Are Based On A Successor Liability Theory, Which Is Barred By The Sale Order And Injunction** .........................12

      D.      **The Alers Ignition Switch Action Raises Questions Of Law And Fact That Are Implicated By Other Ignition Switch Actions** ..................14

09-50026-mg    Doc 12959    Filed 10/21/14    Entered 10/21/14 14:49:19    Main Document
Pg 3 of 18

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995) ............................................................................................................... 9

*Stewart v. General Motors Corp.*,
    756 F.2d 1285 (7th Cir. 1985) ............................................................................................... 9

General Motors LLC ("**New GM**"), by its undersigned counsel, respectfully submits this response ("**Response**") to the "No Stay Pleading" ("**Alers No Stay Pleading**") filed by the Plaintiff ("**Alers Plaintiff**") in the Ignition Switch Action[1] filed by Alejandro Alers ("**Alers Ignition Switch Action**"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Alers Plaintiff (like Plaintiffs in other Ignition Switch Actions) alleges claims based on a 2010 Chevrolet Cobalt that may have been repaired with a defective ignition switch manufactured by Old GM. As all defective ignition switches were manufactured by Old GM (and not New GM), the Alers Ignition Switch Action necessarily asserts claims based on Old GM parts and Old GM conduct. Such claims clearly implicate the Sale Order and Injunction and are subject to the injunction therein. Since the Alers Plaintiff contends otherwise, this Court will ultimately need to determine the issue, but that determination should be made in conjunction with the Four Threshold Issues.[2] A briefing schedule has been established by the Court for that purpose.[3] This is (a) the orderly process the Court set forth in its May 16, 2014 Scheduling Order ("**Scheduling Order**"), as supplemental by the Supplemental Scheduling Order and August 22 Order, (b) the process recommended by Designated Counsel (as defined in the Scheduling Order) at the conferences held on May 2, 2014 ("**May Conference**"), July 2, 2014 ("**July Conference**") and August 18, 2014, and (c) the process agreed to by substantially all of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("**Motion to Enforce**"), dated April 21, 2014 [Dkt. No. 12620].

[2] The term "Four Threshold Issues" is defined in the Court's July 11, 2014 Supplemental Scheduling Order ("**Supplemental Scheduling Order**"), as further supplemented by the Court's Endorsed Order, dated August 22, 2014 ("**August 22 Order**").

[3] New GM's opening brief will be filed on November 5, 2014, and the Four Threshold Issues will be fully briefed by mid-January 2015 (in approximately 3 months).

1

the other Plaintiffs in the over 100 pending Ignition Switch Actions that are subject to the Motion to Enforce.[4]

2. As many other Ignition Switch Actions concern vehicles manufactured by New GM that may contain a defective ignition switch manufactured by Old GM, the Alers Plaintiff is not at all uniquely situated. His issues are therefore not unique, and his claims are no different from those made by many of the other Plaintiffs whose cases are stayed, voluntarily or otherwise. Indeed, certain of his claims are subsumed in the consolidated complaint filed by lead counsel on October 14, 2014 ("**Consolidated Complaint**") in the MDL.

3. The Alers Ignition Switch Action is simply based on a successor liability theory as all of the Alers Plaintiffs' claims stem from an allegedly defective ignition switch manufactured by Old GM that *may* have been installed in his vehicle. This issue falls squarely within one the Four Threshold Issues, namely "whether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust) ('**Old GM Claim Threshold Issue**')."[5] The Court already has ruled, on multiple occasions, that the Court-approved procedures with respect to the Four Threshold Issues will govern the adjudication of such claims. Other Plaintiffs who have tried to "jump the line" (*e.g.*, the Phaneuf Plaintiffs, the

---

[4] The five groups of Plaintiffs that have filed No Stay Pleadings with the Court are (i) the Elliott Plaintiffs, (ii) the Phaneuf Plaintiffs, (iii) the Orange County Plaintiff (on a self-described "limited" basis), (iv) the Sesay Plaintiffs, and (v) the Bledsoe Plaintiffs. The Court has previously denied the No Stay Pleadings filed by the Elliott Plaintiffs and the Phaneuf Plaintiffs. The limited No Stay Pleading filed by the Orange County Plaintiff is essentially moot as the sole basis for that pleading was to have the California District Court hear the Orange County Plaintiff's remand motion. The California District Court has stayed the Orange County Ignition Switch Action, and the remand motion is currently pending before the District Court in Multi-District Litigation ("**MDL**") 2543. The Orange County Plaintiff has agreed to stay its Action (in which ever court it ends up in) after the remand motion is decided. The Sesay No Stay Pleading (filed by the same counsel as the Elliott Plaintiffs and which raises substantially similar issues) is currently *sub judice* before the Court. The Bledsoe No Stay Pleading (filed by the same counsel as the Elliott and Sesay Plaintiffs, and which raises substantially similar issues) is currently being briefed.

[5] The Alers Plaintiff also raises certain due process issues in his No Stay Pleading. However, such due process issues are the subject of two of the other Four Threshold Issues, which will be decided by the Court at the same time as it decides the Old GM Claim Threshold Issue.

2

09-50026-mg    Doc 12959    Filed 10/21/14    Entered 10/21/14 14:49:19    Main Document
                                      Pg 6 of 18

Elliott Plaintiffs, and the Phillips Plaintiff[6]) have failed. The Alers Plaintiff should be bound by the same rules that will apply to all the Plaintiffs.

4. Moreover, the Alers Ignition Switch Action has been tagged by New GM for the MDL. The Alers Plaintiff opposes such designation. If the Alers Ignition Switch Action is transferred to the MDL, the economic loss claims contained therein should be subsumed by the Consolidated Complaint.

5. Simply put, there is no reason to overly-complicate or otherwise delay the Court's determination of the Four Threshold Issues by dealing now with the claims raised in the Alers Ignition Switch Action, as that Action, contrary to the Alers Plaintiff's contentions, raise questions of law and fact that are common to other Ignition Switch Actions. All such issues should be heard at the same time, and not in a piece-meal, plaintiff-by-plaintiff fashion. Accordingly, the Alers No Stay Pleading should be denied.

## BACKGROUND RELEVANT TO RESPONSE

**A.    The Ignition Switch Motion To Enforce, Court Conferences And Scheduling Orders**

6. On April 21, 2014, New GM filed its Motion to Enforce and designated numerous Ignition Switch Action as being subject to the relief requested therein. On April 22, 2014, the Court issued an Order, scheduling the May Conference.

7. At the May Conference, various bankruptcy-related issues were discussed with the Court, and there was a general consensus reached between New GM and counsel speaking on behalf of almost all of the Plaintiffs that, as part of the process in which the Court would address bankruptcy-related issues, the Plaintiffs would either (i) agree to enter into a stipulation ("**Stay Stipulation**") with New GM staying their individual Ignition Switch Actions, or (ii) file with the

---

[6]    The Phillips Action is subject to New GM's Pre-Closing Accident Motion to Enforce.

3

24021862v2

Court a "No Stay Pleading" setting forth why they believed their individual Ignition Switch Actions should not be stayed (collectively, the "**Initial Stay Procedures**").  The Initial Stay Procedures were set forth and approved in the Scheduling Order.  An overwhelming number of Plaintiffs agreed to enter into Stay Stipulations.

8.    Thereafter, the Court held the July Conference to address certain procedural issues that had arisen since the entry of the Scheduling Order.  As part of the July Conference, the Court ruled on which issues should be decided first in these contested proceedings.  At least three of the Four Threshold Issues identified by the Court at the July Conference are implicated by the Alers No Stay Pleading, those being the Old GM Claim Threshold Issue, the Due Process Threshold Issue, and the Remedies Threshold Issue.  A briefing schedule respecting the Four Threshold Issues was established in the Supplemental Scheduling Order, as amended by the August 22 Order.

**B.    The Denial Of The Phaneuf No Stay Pleading**

9.    Immediately after the July Conference, the Court heard argument on a No Stay Pleading [Dkt. No. 12712] filed by another group of Plaintiffs (*i.e.*, the "**Phaneuf Plaintiffs**").  Like the Alers Ignition Switch Action, the Phaneuf Ignition Switch Action (which concerns vehicles manufactured by both Old GM and New GM) attempted to allege claims solely against New GM, and not Old GM.  New GM responded, arguing that the Phaneuf Plaintiffs' claims were like a number of other Plaintiffs' claims in other Ignition Switch Actions, and that the Phaneuf Plaintiffs should be on the same schedule as the other plaintiffs in the then nearly 90 other Ignition Switch Actions (which number has grown to more than 100).

10.    The Court agreed with New GM and, on July 30, 2014, the Court entered its *Decision with Respect to No Stay Pleading (Phaneuf Plaintiffs)* ("**Phaneuf Written Decision**").  In the Phaneuf Written Decision, the Court found that the Phaneuf Ignition Switch Action:

4

merges pre- and post-sale conduct by Old GM and New GM; and that their complaint places express reliance on at least seven actions by Old GM, before New GM was formed—that at least much of the Phaneuf Plaintiffs' complaint seeks to impose liability on New GM based on Old GM's pre-sale acts. Efforts of that character are expressly forbidden by the two injunctive provisions [from the Sale Order and Injunction] just quoted. Though I can't rule out the possibility that a subset of matters the Phaneuf Plaintiffs might ultimately show would not similarly be forbidden, at this point the Sale Order injunctive provisions apply. And it need hardly be said that I have jurisdiction to interpret and enforce my own orders, just as I've previously done, repeatedly, with respect to the very Sale Order here.

Phaneuf Written Decision, at 16 (footnotes omitted).[7]

11. With respect to *parts* manufactured by Old GM (as opposed to New GM), the Court noted in the Phaneuf Written Decision as follows: "I likewise don't make a finding now as to the significance of the pre- or post-sale timing of the design or manufacture of *parts* that might have gone into vehicles that were built pre- or post-sale. I assume that issues of that character will be addressed by Designated Counsel, New GM, and others in the briefing in the upcoming weeks, and those parties deserve to be heard before I make any decisions in that regard." *Id.* at 14 n.36 (emphasis in original).

12. In addition, the Court found that even if the Sale Order and Injunction did not stay the Phaneuf Plaintiffs in the first instance (which it did), New GM had satisfied its burden of obtaining a preliminary injunction: "Additionally, I determine that even if the Sale Order lacked the injunctive provisions it has, it would be appropriate to enter a preliminary injunction protecting New GM from the need now to defend claims that, under the Sale Agreement and Sale

---

[7] The Court noted that the Phaneuf Ignition Switch Action concerned plaintiffs who "might have purchased vehicles manufactured by New GM, rather than Old GM, and that they thus might have factual circumstances that distinguish them from [other plaintiffs]. But all of the Phaneuf Plaintiffs sue under a common complaint. In the briefing to follow, [post-sale purchasers of vehicles], like others, will be free to flesh out the facts with respect to the manufacture of their vehicles, and to point out any factual distinctions that might be warranted." Phaneuf Written Decision, at 13 n.26.

5

Order, it did not assume, and preventing the piecemeal litigation of the Phaneuf Plaintiffs' claims ahead of all of the other lawsuits similarly situated." *Id.* at 19.[8]

C.   **The Tag-Along Motion For Newly-Filed Ignition Switch Actions And The Implementation Of Supplemental Stay Procedures**

13.   Because new Ignition Switch Actions were being filed against New GM almost on a daily basis, New GM needed to implement stay procedures to address these new Actions. Accordingly, on June 13, 2014, New GM filed with the Court a motion to establish stay procedures for newly-filed Ignition Switch Actions [Dkt. No. 12725] ("**Tag-Along Motion**"). The relief requested in the Tag-Along Motion was granted by Order dated July 8, 2014 [Dkt. No. 12764] ("**Stay Procedures Order**"). The Stay Procedures Order requires, *inter alia*, plaintiffs in newly filed Ignition Switch Actions, within three (3) days of receipt of a form Stay Stipulation, to either enter into a Stay Stipulation or file a "No Stay Pleading" with the Court ("**Supplemental Stay Procedures**").

D.   **MDL 2543 And Its Initial Case Conference**

14.   On March 25, 2014, the Judicial Panel on Multidistrict Litigation ("**JPML**") established MDL 2543, *In re: General Motors LLC Ignition Switch Litigation*. Subsequently, on June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL court and assigned the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings in the Ignition Switch Actions. *See In re General*

---

[8] A ruling similar to the Phaneuf Written Decision was issued by the Court in connection with the Elliott No Stay Pleading. *See Decision with Respect to No Stay Pleading and Related Motion to Dismiss for Lack of Subject Matter Jurisdiction (Elliott Plaintiffs),* dated August 6, 2014 [Dkt. No. 12815]. The Court also addressed this issue in connection with the Phillips Action (which is subject to New GM's Pre-Closing Accident Motion to Enforce). *See* Hr'g Tr. 83:4-8, August 18, 2014 ("Sooner or later your concerns are going to be heard, but the chances of you being allowed to litigate them in another court before I've ruled on this issue are about the same as me playing for the Knicks, or in your term it's the Rockets.").

*Motors LLC Ignition Switch Litigation*, MDL No. 2543. More than 120 cases currently are pending in MDL 2543.

15. On August 11, 2014, the District Court held an initial case conference ("**Initial Conference**") in MDL 2543. Among the matters discussed at the Initial Conference was the filing by Lead Counsel of a consolidated master complaint for all economic loss actions that are part of MDL 2543. Subsequently, the District Court entered Order No 8 on August 15, 2014, which, among other things, provides that Lead Counsel in MDL 2543 shall have 60 days from the date of Order No. 8 to file a consolidated master complaint with the District Court. The Court also implemented procedures for plaintiffs to lodge any objections to the consolidated complaint with MDL Lead Counsel prior to filing and for the Court to resolve any remaining objections amongst plaintiffs after filing.

16. On October 14, 2014, lead counsel in the MDL filed the Consolidated Complaint which, among other things, concerns the vehicle and claims at issue in the Alers Ignition Switch Action.

E. **The Alers Ignition Switch Action**

17. The Alers Ignition Switch Action was commenced on August 11, 2014.[9] The Alers Ignition Switch Action was removed by New GM to the United States District Court for the Central District of California on September 17, 2014. Alers was listed as a Plaintiff in New GM's Eighth Supplements to Schedule 1 and 2 (collectively "**Eighth Supplements**")[10] filed with the Court on September 18, 2014. Thereafter, counsel for Alers was sent by e-mail correspondence on September 18, 2014 copies of the Scheduling Order, Stay Procedures Order,

---

[9] A copy of the complaint filed in the Alers Ignition Switch Action is annexed hereto as Exhibit "A."
[10] Copies of the Eighth Supplements are annexed hereto collectively as Exhibit "B."

7

24021862v2

and form Stay Stipulation. In the e-mail correspondence, counsel for New GM explained the Stay Procedures and informed counsel for Alers that if he did not wish to execute a Stay Stipulation, he had to file a No Stay Pleading by September 23, 2014.[11]

18.  On September 19, 2014, New GM filed a tag-along notice with the JPML, designating the Alers Ignition Switch Action as being subject to the MDL. On September 30, 2014, the Alers Plaintiff filed an opposition to the tag-along notice, arguing that the Alers Ignition Switch Action should not be transferred to the MDL.[12]

## RESPONSE

### THE RELIEF REQUESTED IN THE ALERS NO STAY PLEADING SHOULD BE DENIED

19.  Preliminarily, as was the case with respect to other Plaintiffs' No Stay Pleadings, New GM will limit its substantive arguments in this Response because of the absence of counsel for the other Plaintiffs in the Ignition Switch Actions. *See* Hr'g Tr. 82:14-17, July 2, 2014 ("MR. STEINBERG: . . . and I'm trying to be very careful not to make substantive arguments . . . THE COURT: That's especially important in light of all the people who have already left the courtroom today."). As discussed herein, the issues raised by the Alers Plaintiff will be briefed in

---

[11] While the Alers No Stay Pleading was filed after September 23, 2014, in an effort to conserve judicial resources, as well as the resources of the parties, counsel for New GM and counsel for the Alers Plaintiff agreed on a briefing schedule for this matter, setting October 7, 2014 as the deadline for the filing of the Alers No Stay Pleading, and October 21, 2014 as the deadline for the filing of this Response. The parties agreed to submit the matter for the Court's determination without the need for oral argument. *See Stipulation And Agreed Scheduling Order Regarding The No Stay Pleading Filed By Alejandro Alers, Sr.*, so-ordered by the Court on October 16, 2014 [Dkt. No. 12956].

[12] While the JPML will decide whether the Alers Ignition Switch Action will be transferred to the MDL, New GM believes that such transfer will ultimately take place given the allegations regarding the ignition switch. *See, e.g.*, JPML Transfer Orders regarding Phillips Action, Yagman Action, Boyd Action, Kandziora Action and Elliott Action, copies of which are collectively annexed hereto as Exhibit "C." The Alers Plaintiff appears to concede that his Action will ultimately be transferred to the MDL as one of his arguments in his No Stay Pleading is that the enforcement of the Sale Order and Injunction will interfere with the MDL. In this regard, the Alers Plaintiff's argument is meritless. Judge Furman has already stated that, while certain matters may go forward in the MDL, he will await this Court's ruling on the Four Threshold Issues as they pertain to the economic loss actions (which, if transferred to the MDL, will include the Alers Ignition Switch Action).

8

24021862v2

accordance with the procedures established for the Four Threshold Issues pursuant to the Supplemental Scheduling Order.[13]

### A. The Alers Plaintiff Is Subject To The Injunction Contained In The Sale Order And Injunction

20. As stated in the Motion to Enforce, the United States Supreme Court in *Celotex Corp. v. Edwards* set forth the "well-established" rule that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'" 514 U.S. 300, 306 (1995). The Supreme Court further explained:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . . . Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law.

*Id.* at 313.

21. New GM is not seeking a new injunction against the Alers Plaintiff; New GM is simply seeking to enforce the preexisting injunction set forth in this Court's Sale Order and Injunction, which remains in full force and effect. Through his pleading, the Alers Plaintiff is essentially asking the Court to vacate its preexisting injunction as to him. The burden is thus on the Alers Plaintiff to demonstrate that the injunction in the Sale Order and Injunction should be vacated. *See Stewart v. General Motors Corp.*, 756 F.2d 1285, 1291 (7th Cir. 1985) ("The law appears settled that the defendant bears that burden on a motion to vacate an injunction.").

---

[13] To the extent the Court believes that substantive arguments are needed to address the Alers Plaintiff's claims in the context of his pleading prior to the Court addressing the Four Threshold Issues (which New GM asserts, consistent with this Court's rulings in connection with the other No Stay Pleadings, should not be the case), New GM requests that it be given an opportunity to brief such issues.

22. Just like the Phaneuf Plaintiffs, the Elliott Plaintiffs and the Phillips Plaintiffs, the Alers Plaintiff has not come close to meeting his burden. It was the Alers Plaintiff who should have sought relief in this Court before filing the Alers Ignition Switch Action; he did not do so.[14] All Plaintiffs are required to obey the injunction contained in the Sale Order and Injunction until this Court has had an opportunity to resolve the bankruptcy-related issues set forth in the Motion to Enforce, and in particular, decide which claims asserted against New GM are barred, and which, if any, are not. The Alers Plaintiff is no different from any of the other Plaintiffs as he is asserting claims against New GM which New GM believes are barred by the Sale Order and Injunction. By signing Stay Stipulations, the vast majority of the other Plaintiffs have acknowledged their obligation to comply with the Court's Sale Order and Injunction pending the resolution of the issues raised by the Motion to Enforce. The Alers Plaintiff should be compelled to do what the others have readily acknowledged they will and must do.

**B. This Court Has Exclusive Jurisdiction Over The Alers Ignition Switch Action And Should Enjoin The Alers Plaintiff From Continuing To Prosecute Same**

23. The Alers Plaintiff contends that this Court has no jurisdiction over his claims because the Alers Ignition Switch Action concerns a vehicle manufactured by New GM, and not Old GM. *See* Alers No Stay Pleading, ¶¶ 7-8. However, as New GM explained in the Motion to Enforce, the reason that the initial ignition switch recall was extended to some vehicles manufactured by New GM (like the 2010 Cobalt owned by the Alers Plaintiff) is based on the remote possibility that an Old GM ignition switch may have been installed in such vehicle by

---

[14] To the extent a preliminary injunction is needed with respect to the Alers Plaintiff, New GM asserts that, for the reasons stated in its responses to the Phaneuf No Stay Pleading and the Elliott No Stay Pleading (with such arguments being incorporated herein by reference), New GM's burden for obtaining a preliminary injunction is clearly satisfied herein. The Alers Ignition Switch Action is similar to the Phaneuf Ignition Switch Action and, as the Court ruled there, if applicable, the preliminary injunction standard would have been satisfied. The same result should apply herein.

10

third-party dealerships or other repair outlets during a post-manufacture repair or replacement. *See* Motion to Enforce, ¶ 19. Because New GM is not liable for Old GM parts, or repairs done by others, it is not liable for economic loss claims arising from the use of such Old GM parts.

24.     This Court retained exclusive jurisdiction over issues, such as those raised by the Alers Plaintiff, so that it could decide how such disputes should be resolved. In particular, the Sale Order and Injunction reserved exclusive jurisdiction to this Court to interpret and construe the Sale Order and Injunction, as well as the terms of the MSPA.[15] The Court's exclusive jurisdiction unquestionable extends to resolving the bankruptcy-related issues set forth in the Motion to Enforce, including which claims asserted against New GM are barred, and which, if any, are not. The Alers Ignition Switch Action, like the other Ignition Switch Actions, raises such an issue. Accordingly, the Alers Plaintiff is no different from any of the other Plaintiffs, is subject to the injunction contained in the Sale Order and Injunction, and his Action is subject to the Motion to Enforce.

25.     Moreover, allowing one Plaintiff to proceed with its Ignition Switch Action in a different forum could cause other Plaintiffs to seek relief in this Court from the stay that they previously voluntarily entered into, which would cause the very chaos that the Court sought to avoid by entering its previous Scheduling Orders. The procedures agreed to by all other Plaintiffs should govern the Action instituted by the Alers Plaintiff.

---

[15] *See* Sale Order and Injunction, ¶ 71. The fact that New York may be an "inconvenient forum" for the Alers Plaintiff (*see* Alers No Stay Pleading, ¶ 11) is of no moment as this Court has the exclusive jurisdiction to interpret and enforce the Sale Order and Injunction. This can only be done by this Court. To alleviate any inconvenience, the Alers Plaintiff, like many other Plaintiffs have already done, can work through Designated Counsel to ensure that all of his issues are addressed appropriately, while minimizing any potential burden on him and his counsel.

11

24021862v2

**C.     The Alers Plaintiff's Claims Are Based On A Successor
          Liability Theory, Which Is Barred By The Sale Order And Injunction**

26.     The Alers Plaintiff attempts to distinguish his Action by arguing that he purchased his vehicle after the closing of the 363 Sale, that he has claims against New GM and not Old GM, that he could not have participated in Old GM's bankruptcy case, and that he was effectively denied due process in connection with the 363 Sale.  Initially, New GM notes that one of the Four Threshold Issues is "whether Plaintiffs' procedural due process rights were violated in connection with the Sale Motion and the Sale Order and Injunction ('**Due Process Threshold Issue**')."  Supplemental Scheduling Order, at 3.  Other Ignition Switch Actions have made this same argument, and this issue will be resolved by the Court according to the procedures previously established for the Four Threshold Issues.

27.     Equally important, while the Alers Plaintiff contends that he is only complaining about New GM's conduct, and not Old GM's conduct, a review of his complaint demonstrates that this is not the case.  For example, like many other Plaintiffs, the Alers Plaintiff is essentially making a "successor liability" claim against New GM.

28.     As stated above (and in the Motion to Enforce), the potential ignition switch issue with vehicles manufactured by New GM is *not* that the original ignition switch in these models was faulty.  Instead, a *repair may* have been made to these vehicles by someone other than New GM whereby a good ignition switch manufactured by New GM was replaced with a faulty ignition switch made by Old GM.  *See* Motion to Enforce, ¶ 19.  New GM is not liable for claims based on a defective ignition switch manufactured by Old GM or the conduct of others.

29.     The Alers Plaintiff's complaint seeks to treat Old GM and New GM as one entity, which this Court has previously found to be "inappropriate."  *See* Phaneuf Written Decision, at 13 n. 28 ("The Phaneuf Plaintiffs' effort to treat Old GM and New GM as a single entity is

12

inappropriate, as a matter of bankruptcy law, if not as a matter of other law as well. . . . That tactic underscores the Phaneuf Plaintiffs' efforts to muddy the distinctions between the two entities, and to impose liability on New GM based on Old GM's conduct."). Allegations conflating Old GM and New GM contained in the Alers Plaintiff's complaint include the follows:

    a.    "The Defendant initially manufactured the Saturn Ion in 2003 and in 2005 its cousin, the Chevrolet Cobalt." Compl., ¶ 2.

    b.    "Second, the Defendant had knowledge of the sub-par ignition switches since 2001-2002 and failed to provide the Plaintiff with any written or oral notice at the time of purchase in 2010 regarding the sub-par ignition switches." Compl., ¶ 13.

    c.    "The Defendant knew of the defect since 2001-2002. The Defendant knew of the accidents and deaths related to the defective ignition switches in 2004." Compl., ¶ 17.

    d.    "Since 2001-2002, the Defendant knew the sub-par ignition switches were defective and failed to meet the Defendant's torque requirements or standards as a safe and reliable ignition switch." Compl., ¶ 18.

    e.    "In 2002, Delphi Automotive, supplier of the ignition switches to the Defendant, informed the Defendant that the ignition switches failed to meet the Defendant's specifications. The Defendant told the supplier to install the switches anyway. The Defendant sold the automobiles to the public without the disclosure of the information that the ignition switches failed to meet the Defendant's specifications was an intent to deceive the Plaintiff." Compl., ¶ 20.

    f.    "At the time the Plaintiff signed the contract to purchase the Cobalt in 2010, the Defendant refused to disclose the ignition switch problem although the Defendant had knowledge of the sub-par ignition switch problem since 2002, and knowledge of the deaths and major injuries related to the ignition switch problem since 2004." Compl., ¶ 25.

    g.    In his request for punitive damages, the Alers Plaintiff asserts that "[t]he Defendant knew of the link between the sub-par ignition switches and death-related accidents in 2004." Compl., ¶ 31.

30.    Simply put, the Alers Plaintiff's claims are based on an Old GM part and Old GM conduct. He is not uniquely situated, and there is no reason to create an exception to the

13

procedure agreed to by the other Plaintiff as to how litigation issues should proceed in relation to the Motion to Enforce. Accordingly, the Alers No Stay Pleading should be denied.

**D.    The Alers Ignition Switch Action Raises Questions Of Law
And Fact That Are Implicated By Other Ignition Switch Actions**

31.    As noted above, the Old GM Claim Threshold Issue is implicated by the Alers Ignition Switch Action. This question of law and fact is implicated by all other Ignition Switch Actions.

32.    Moreover, all of the Ignition Switch Actions (including the Alers Ignition Switch Action) concern allegations regarding an ignition switch manufactured by Old GM. In addition, the Alers Ignition Switch Action is not the only Action that concerns a 2010 Chevrolet Cobalt. Named Plaintiffs in the following Ignition Switch Actions asserted claims based on 2010 Chevrolet Cobalts: (i) the *Arnold* Action, (ii) the *Kandziora* Action, (iii) the *Maciel* Action; (iv) the *McCarthy* Action, (v) the *Phaneuf* Action, and (vii) the *Sesay* Action. Similarly, a clear majority of the class actions that are the subject of the Motion to Enforce concern a class of vehicles that include the 2010 Chevrolet Cobalt. As noted, the Consolidated Complaint includes this vehicle.

33.    The Alers Ignition Switch Action also asserts causes of action that are contained in many other Ignition Switch Actions. For example, the Alers Plaintiff's first cause of action is based on breach of contract and express warranty. Among others, Ignition Switch Actions that contain similar causes of actions are: (i) the *Ashworth* Action, (ii) the *Emerson* Action, (iii) the *Favro* Action, (iv) the *Forbes* Action, (v) the *Fugate* Action, and (vi) the *Kluessendorf* Action. Moreover, most of the Ignition Switch Actions contain causes of action based on fraud or fraudulent concealment, which is the Alers Plaintiff's second cause of action. As noted, the Consolidated Complaint includes these claims.

14

34. There are over 100 other Actions that implicate the Sale Order and Injunction. While each of them may have some differing facts, that in no way equates to there being *no* common questions of law and/or fact. As demonstrated above, and as demonstrated by the fact that the MDL was specifically created to address common questions of law and fact that arise in connection with the Ignition Switch Actions, the Alers Plaintiff's argument to the contrary are simply not well-founded.

WHEREFORE, New GM respectfully requests that this Court (i) deny the relief requested in the Alers No Stay Pleading, (ii) enjoin the Alers Plaintiffs from further prosecuting his Ignition Switch Action, and (iii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       October 21, 2014

Respectfully submitted,

   /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 556-2100
Facsimile:   (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*