**Hearing Date and Time:  To be Determined**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re                                                      :          Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,      :          Case No.:  09-50026 (REG)
        f/k/a General Motors Corp., *et al.*         :
                                                           :
                            Debtors.                  :          (Jointly Administered)
                                                           :
------------------------------------------------------------x


**RESPONSE BY GENERAL MOTORS LLC TO
BLEDSOE PLAINTIFFS' NO STAY PLEADING**

## TABLE OF CONTENTS

**Cases**                                                                                                    **Page**

**PRELIMINARY STATEMENT** ..................................................................................1

**BACKGROUND RELEVANT TO RESPONSE** ......................................................5

    **A.**   **The Elliott Case, the Scheduling Orders,
The Phaneuf Case, and the Tag-Along Procedures** ...................................6

    **B.**   **The Two Additional Motions to Enforce, The August
Conference, and the Court's Reiteration that the Sale
Order And Injunction Applies to the Actions in the First Instance** ......................10

    **C.**   **MDL 2543, the Initial Case Conference and the Consolidated Complaints** .........12

    **D.**   **The Bledsoe Lawsuit** ..............................................................................13

**RESPONSE** ............................................................................................................14

**THE RELIEF REQUESTED IN THE
BLEDSOE NO STAY PLEADING SHOULD BE DENIED** ....................................14

    **A.**   **The Bledsoe Plaintiffs Are Subject To The
Injunction Contained In The Sale Order And Injunction** .....................................15

    **B.**   **A Preliminary Injunction Is Not Needed
In Connection With The Bledsoe Lawsuit** ................................................17

    **C.**   **The Bledsoe Plaintiffs' Claims Clearly Implicate
the Sale Order and Injunction** ..................................................................17

    **D.**   **The Bledsoe Plaintiffs' Arguments Are Subsumed In
Three Of The Four Threshold Issues, Which Should Be Decided
Pursuant To The Court-Approved Procedures Regarding Same** ........................19

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                                        **<u>Page(s)</u>**

*Celotex Corp. v. Edwards,*
   514 U.S. 300 (1995)............................................................................................................... 15

*In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*,
   471 B.R. 331 (Bankr. S.D.N.Y. 2012)........................................................................................ 16

*In re WorldCorp., Inc.,*
   252 B.R. 890 (Bankr. D. Del 2000) ........................................................................................ 16

*Stewart v. General Motors Corp.*,
   756 F.2d 1285 (7th Cir. 1985................................................................................................ 15

General Motors LLC ("**New GM**"), by its undersigned counsel, respectfully submits this response ("**Response**") to the *Bledsoe Plaintiff's No Stay Pleading* ("**Bledsoe No Stay Pleading**") filed by Plaintiffs Sharon Bledsoe, *et al.* ("**Bledsoe Plaintiffs**") with respect to their lawsuit against New GM ("**Bledsoe Lawsuit**"), which implicates New GM's Ignition Switch Motion to Enforce, Monetary Relief Motion to Enforce, and Pre-Closing Accident Motion to Enforce[1] (collectively, the "**Motions to Enforce**"),[2] and represents as follows:

**PRELIMINARY STATEMENT**

1.      The Bledsoe Plaintiffs are represented by the same counsel as the Elliott Plaintiffs and Sesay Plaintiffs, each of whom has previously filed a No Stay Pleading and raised the same arguments contained in the Bledsoe No Stay Pleading. These arguments are, thus, not new, and have previously been rejected by this Court. Indeed, ***the Elliott Plaintiffs are two of the named plaintiffs in the Bledsoe Lawsuit***. Thus, this is now the second time that counsel for the Elliott Plaintiffs is making the same arguments in this Court on behalf of the same plaintiffs.

2.      In connection with counsel's request for an extension of time to file the Sesay No Stay Pleading (which is *sub judice* before the Court), the Court stated that the Sesay Plaintiffs "may file a No Stay Pleading if they think, consistent with the Court's earlier ruling, that such a pleading would meet FRBP 9011 standards." Endorsed Order, dated August 12, 2014 [Dkt. No.

---

[1]    The Bledsoe Lawsuit contains allegations concerning five separate accidents, two that allegedly occurred (with respect to the same Plaintiff) prior to the closing of the 363 Sale, and three that allegedly occurred after the closing of the 363 Sale. The two accidents that occurred prior to the closing of the 363 Sale implicate the Pre-Closing Accident Motion to Enforce.

[2]    The full titles of the Motions to Enforce are: (i) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [Dkt. No. 12620] ("**Ignition Switch Motion to Enforce**"), (ii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [Dkt. No. 12807] ("**Pre-Closing Accident Motion to Enforce**"), and (iii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [Dkt. No. 12808] ("**Monetary Relief Motion to Enforce**"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motions to Enforce.

12835].  In response, New GM asserted that the Sesay No Stay Pleading was essentially a rehash

of the arguments already rejected by the Court with respect to the Elliott No Stay Pleading.  The

Bledsoe No Stay Pleading follows the same pattern of recirculating already rejected arguments,

notwithstanding the Court's admonition not to reiterate arguments that it previously deemed

"frivolous."

3.      The only difference between the Bledsoe Lawsuit, and the Elliott and Sesay

Ignition Switch Actions, is that the Bledsoe Lawsuit implicates ***all three*** Motions to Enforce, not

just one.  But this just makes the case against the Bledsoe Plaintiffs more compelling.  The

Bledsoe Plaintiffs (like Plaintiffs in other Ignition Switch Actions, Monetary Relief Actions, and

Pre-Closing Accident Lawsuits, collectively, the "**Actions**") allege claims based on Old GM

vehicles, Old GM parts, Old GM conduct and/or accidents that occurred prior to the closing of

the 363 Sale.  Such claims clearly implicate the Sale Order and Injunction and are subject to the

injunction therein.  The Bledsoe Plaintiffs may contend otherwise, but that just means this Court

will ultimately need to determine the relevant issues; and that determination should be made by

this Court in conjunction with the Four Threshold Issues.[3]

4.      Based on the arguments previously made to the Court, the Bledsoe No Stay

Pleading should be denied on the following grounds:

5.      **Subject Matter Jurisdiction**:  The Bledsoe Plaintiffs make the same subject

matter jurisdiction argument already rejected in connection with the Elliott No Stay Pleading.

There, the Court ruled that the "no subject matter jurisdiction" argument was ***frivolous***,

disregarding controlling decisions issued by not only this Court, but by the United States

Supreme Court, the Second Circuit and District Courts within this District.  *See Decision with*

---

[3]      The term "Four Threshold Issues" is defined in the Court's July 11, 2014 Supplemental Scheduling Order
("**Supplemental Scheduling Order**"), as further supplemented by the Court's Endorsed Order, dated August
22, 2014 ("**August 22 Order**").

2

*Respect to No Stay Pleading and Related Motion to Dismiss for Lack of Subject Matter Jurisdiction (Elliott Plaintiffs)*, dated August 6, 2014 [Dkt. No. 12815] ("**Elliott Written Decision**"), at 1-2.

6.      In the Bledsoe No Stay Pleading (just like in the Elliott and Sesay No Stay Pleadings), counsel argues that this Court lacks "related to" jurisdiction over this controversy. Counsel refers to inapposite cases involving post-confirmation jurisdiction over a reorganized debtor. This argument, in the Court's words, "misses the point." Elliott Written Decision, p. 4. The question is not one of "related to" jurisdiction, but one of "arising in" jurisdiction, which this Court clearly possesses given that it is being called upon to enforce its prior Order (*i.e.*, the Sale Order and Injunction). *See* Elliott Written Decision, at 4-7.

7.      The Bledsoe Plaintiffs concede that they have not raised any new arguments with respect to this issue. The Bledsoe No Stay Pleading (just like the Sesay No Stay Pleading) admits that the Bledsoe Lawsuit "is not distinguishable from the *Elliott v. GM* matter that the Court has already considered," and contends that "[t]he Court misapplied the law in that ruling and mistakenly thought it had 'arising in' jurisdiction over such claims . . . ." Bledsoe No Stay Pleading, at 16 (citing Dkt. No. 12815).

8.      Thus, the law of this case is that this Court has subject matter jurisdiction over this controversy. Substantially all of the other Plaintiffs have acknowledged that uncontroversial fact. Counsel for the Bledsoe Plaintiffs stands virtually alone on this point. Having raised the same frivolous argument for now the third time, it should again be summarily rejected.

9.      **The Bledsoe No Stay Pleading Implicates Three of the Four Threshold Issues**:  At least three of the Four Threshold Issues are identical to the issues raised by the Bledsoe No Stay Pleading, namely the Due Process Threshold Issue, the Remedies Threshold

Issue and the Old GM Claim Threshold Issue (each as defined in the Supplemental Scheduling Order). The Court already ruled that it would exercise its jurisdiction to decide, among other things, the Four Threshold Issues. A briefing schedule has been established by the Court for that purpose.[4] This is (a) the orderly process the Court set forth in its May 16, 2014 Scheduling Order ("**Scheduling Order**"), as supplemented by the Supplemental Scheduling Order and August 22 Order, (b) the process recommended by Designated Counsel (as defined in the Scheduling Order) at the conferences held on May 2, 2014 ("**May Conference**"), July 2, 2014 ("**July Conference**") and August 18, 2014, and (c) the process agreed to by *all but five other groups of Plaintiffs in the over 100 pending Actions* that are subject to the Motions to Enforce.[5]

10.    Additionally, on September 15, 2014, in the interest of efficiency and conserving resources, this Court ordered that the schedule governing the briefing of the Four Threshold Issues in the Ignition Switch Motion to Enforce be applied to the Pre-Closing Accident Motion to Enforce[6] and the Monetary Relief Motion to Enforce ("**September Orders**"). Thus, briefing of the Four Threshold Issues, and the conclusions reached on those issues, will apply to all Actions subject to the Motions to Enforce, including the Bledsoe Lawsuit. There is no reason to deal with these issues separately in the Bledsoe No Stay Pleading. Other Plaintiffs who have

---

[4]    New GM's opening brief will be filed on November 5, 2014, and the Four Threshold Issues will be fully briefed by mid-January 2015 (in approximately 3 months).

[5]    The six other groups of Plaintiffs that have filed No Stay Pleadings with the Court are (i) the Elliott Plaintiffs, (ii) the Phaneuf Plaintiffs, (iii) the Orange County Plaintiff (on a self-described "limited" basis), (iv) the Sesay Plaintiffs, (v) the Alers Plaintiff, and (vi) the Bloom Plaintiff. The Court has previously denied the No Stay Pleadings filed by the Elliott Plaintiffs and the Phaneuf Plaintiffs. The limited No Stay Pleading filed by the Orange County Plaintiff is essentially moot as the sole basis for that pleading was to have the California District Court hear the Orange County Plaintiff's remand motion. The California District Court previously stayed the Orange County Ignition Switch Action, and the remand motion is currently pending before the District Court in Multi-District Litigation ("**MDL**") 2543. The Orange County Plaintiff has agreed to stay its Action (in whichever court it ends up in) after the remand motion is decided. The Sesay No Stay Pleading and Alers No Stay Pleading are currently *sub judice* before the Court. The Bloom No Stay Pleading was filed on October 20, 2014; New GM will be filing a response thereto on or before October 30, 2014.

[6]    On October 15, 2014, Plaintiffs' Lead Counsel in the MDL appointed Goodwin Procter LLP to serve as "Designated Counsel" in these proceedings to oppose the Pre-Closing Accident Motion to Enforce. Thus, issues related to those Bledsoe Plaintiffs that had a pre-closing accident will be addressed by Goodwin Procter as part of the Four Threshold Issues.

4

tried to "jump the line" (*e.g.*, the Phaneuf Plaintiffs, the Elliott Plaintiffs, and the Powledge Plaintiff) have failed.  The Bledsoe Plaintiffs should be bound by the same rules that will apply to all Plaintiffs.

11. <u>**The Court's Procedure to Adjudicate the Four Threshold Issues is Proper**</u>. As the Court already has ruled, it was entirely appropriate for New GM to request relief by motion, as opposed to an adversary proceeding, since New GM is seeking to enforce a *preexisting* injunction, not obtain a new one.  *See* Phaneuf Written Decision (defined below), at 4 ("Though injunctive provisions are already in place and thus a preliminary injunction is unnecessary, New GM has also shown an entitlement to a preliminary injunction staying the Phaneuf Plaintiffs from proceeding with their litigation elsewhere while the issues here are being determined.").  The Bledsoe Plaintiffs' argument to the contrary should be rejected.

12. <u>**The Relief Requested is Wasteful**</u>.  The issues raised by the Bledsoe Plaintiffs are wasteful of the Court's and New GM's time and resources.  The Bledsoe Lawsuit is part of the MDL.  Most of the claims asserted in the Bledsoe Lawsuit will be subsumed by the consolidated complaints ("**Consolidated Complaints**") filed by Lead Plaintiffs in the MDL on October 14, 2014.  Judge Furman has previously stated that, aside from allowing certain matters to go forward, he will await this Court's ruling on the Four Threshold Issues.  There simply is nothing to be gained by granting any portion of the Bledsoe No Stay Pleading.  Accordingly, the Bledsoe No Stay Pleading should be denied.

<u>**BACKGROUND RELEVANT TO RESPONSE**</u>

13. The Bledsoe Lawsuit was filed on September 19, 2014.[7]  The Bledsoe Plaintiffs' counsel has been involved in this contested proceeding since at least the middle of June 2014, having filed numerous letters with the Court, as well as a No Stay Pleading for *certain of the*

---

[7] A copy of the complaint filed in the Bledsoe Lawsuit is annexed hereto as Exhibit "A."

24042688v2

***Bledsoe Plaintiffs*** (*i.e.*, the Elliotts) and other clients.  Some relevant background on the Elliott

and Phaneuf matters is provided below.

A.    **The Elliott Case, the Scheduling Orders,
The Phaneuf Case, and the Tag-Along Procedures**

14.    The Elliott Plaintiffs, *pro se*, commenced their Ignition Switch Action against

New GM on April 1, 2014.   The Elliott Plaintiffs original complaint concerned the **same**

Chevrolet Trailblazer that is now at issue in the Bledsoe Lawsuit.  On April 21, 2014, New GM

filed its Ignition Switch Motion to Enforce and listed the Elliott Ignition Switch Action on

Schedule "1" annexed thereto.   On April 22, 2014, the Court issued an Order, scheduling the

May Conference.

15.    At the May Conference, various bankruptcy-related issues were discussed with

the Court, and there was a general consensus reached between New GM and counsel speaking on

behalf of almost all of the Plaintiffs that, as part of the process in which the Court would address

bankruptcy-related issues, the Plaintiffs would either (i) agree to enter into a stipulation ("**Stay**

**Stipulation**") with New GM staying their individual Ignition Switch Actions, or (ii) file with the

Court a "No Stay Pleading" setting forth why they believed their individual Ignition Switch

Actions should not be stayed (collectively, the "**Initial Stay Procedures**").

16.    The Initial Stay Procedures were set forth and approved in the Scheduling Order.

The overwhelming number of Plaintiffs agreed to enter into Stay Stipulations.   The Elliott

Plaintiffs, *pro se*, received the Stay Stipulation and timely executed it.   However, once the Elliott

Plaintiffs retained counsel, they sought to undo the Stay Stipulation and to file an amended class

action complaint.   The amended complaint deleted all references to the Trailblazer that is now at

issue in the Bledsoe Lawsuit.   New GM thereafter filed the *Supplemental Response by General*

*Motors LLC in Connection with Stay Procedures Set Forth in the Court's May 16, 2014*

*Scheduling Order*, dated June 24, 2014 [Dkt. No. 12735] ("**Elliott Supplemental Response**"),
requesting that the Court direct the Elliott Plaintiffs to refrain from taking further action in the
Elliott Ignition Switch Action.

17.     The Court held the July Conference to address certain procedural issues that had
arisen since entry of the Scheduling Order.  At that time, the Court ruled on which issues should
be decided first in this matter.  At least three of the Four Threshold Issues identified by the Court
at the July Conference are implicated by the Bledsoe No Stay Pleading (*i.e.*, the Due Process,
Remedies and Old GM Claim Threshold Issues).   A briefing schedule respecting the Four
Threshold Issues was established in the Supplemental Scheduling Order, as amended by the
August 22 Order, and expanded to all Motions to Enforce by the September Orders.

18.     Immediately after the July Conference, the Court heard argument on a No Stay
Pleading [Dkt. No. 12712] filed by another group of Plaintiffs (*i.e.*, the "**Phaneuf Plaintiffs**").
Then co-counsel for the Elliott Plaintiffs was present during this argument.  Like the Bledsoe
Lawsuit, the Phaneuf, Elliott and Sesay Ignition Switch Actions attempted to allege claims solely
against New GM, and not Old GM.  The Phaneuf Plaintiffs argued, as the Bledsoe Plaintiffs
argue here, that their "claims relate to New GM's conduct *post*-bankruptcy."  Phaneuf No Stay
Pleading, at 2.  New GM responded, arguing that the Phaneuf Plaintiffs' claims were like a
number of other plaintiffs' claims in other Ignition Switch Actions, and that the Phaneuf
Plaintiffs should be on the same schedule as the other Plaintiffs in the then nearly 90 other
Ignition Switch Actions (which now number more than 100).

19.     The Court agreed with New GM and issued an oral ruling from the Bench at the
July Conference, which was memorialized on July 30, 2014 in the Court's *Decision with Respect*

*to No Stay Pleading (Phaneuf Plaintiffs)* ("**Phaneuf Written Decision**").  In the Phaneuf Written

Decision, the Court found that the Phaneuf Ignition Switch Action:

> merges pre- and post-sale conduct by Old GM and New GM; and that their
> complaint places express reliance on at least seven actions by Old GM,
> before New GM was formed—that at least much of the Phaneuf Plaintiffs' complaint
> seeks to impose liability on New GM based on Old GM's pre-sale acts. Efforts of
> that character are expressly forbidden by the two injunctive provisions [from the
> Sale Order and Injunction] just quoted. Though I can't rule out the possibility that
> a subset of matters the Phaneuf Plaintiffs might ultimately show would not
> similarly be forbidden, at this point the Sale Order injunctive provisions apply.
> And it need hardly be said that I have jurisdiction to interpret and enforce my own
> orders, just as I've previously done, repeatedly, with respect to the very Sale
> Order here.

Phaneuf Written Decision, at 16 (footnotes omitted).

20.     Immediately after the Phaneuf No Stay Pleading was addressed at the July

Conference, the Court heard argument on the Elliott Supplemental Response.  The Court allowed

the Elliott Plaintiffs to file a late No Stay Pleading to give them "the opportunity, if [they] can, to

show that [their] action is any different than the other 87, including now Phaneuf and to consider

my ruling that I just issued in Phaneuf to be stare decisis, that is a precedent, vis-a-vis your effort

to get them special treatment but not res judicata or collateral estoppel."  Hr'g Tr. 99:19-24, July

2, 2014.

21.     The Elliott No Stay Pleading contained many of the arguments made in the

Bledsoe No Stay Pleading, including that this Court did not have "related to" subject matter

jurisdiction over the Elliott Plaintiffs.  New GM responded to the Elliott No Stay Pleading,

arguing that the Elliott Ignition Switch Action was essentially no different from the Phaneuf

Ignition Switch Action and that the same result should be applied to them.  At a hearing held on

August 5, 2014, the Court agreed with New GM.  In another written decision (*i.e.*, the Elliott

Written Decision), the Court aptly summarized its ruling as follows:

24042688v2

> Once again, a plaintiff group wishing to proceed ahead of all of the others (only one week after I issued the written opinion memorializing my earlier oral ruling proscribing such an effort) has asked for leave to go it alone.  Its request is denied.  With a single exception, the issues raised by this group (the "Elliott Plaintiffs") don't differ from those addressed in Phaneuf.  And as to that single exception— their claim that I don't have subject matter jurisdiction to construe and enforce the Sale Order in this case— ***their contention is frivolous . . . .***

*Id.* at 1 (emphasis added)(footnotes omitted).  With respect to the Elliott Plaintiffs' argument regarding "related to" jurisdiction, the Court found that:

> "Related to" jurisdiction has nothing to do with the issues here.  Bankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' "*arising in*" jurisdiction. The nearly a dozen cases cited above expressly so hold.

*Id.* at 4 (footnote omitted).  The Court further found that the Elliott Plaintiffs' "argument conflates the conclusion I might reach after analysis of matters before me—that certain claims ultimately might not be covered by the Sale Order—with my jurisdiction to decide whether or not they are." *Id.* at 7.  The Court, thus, denied the Elliott Plaintiffs' motion to dismiss.

22.    With respect to the Elliott "no stay" request, the Court denied that as well, relying on its Phaneuf Written Decision:

> As in *Phaneuf*, I find that the Elliott Plaintiffs are asserting claims with respect to vehicles that were manufactured before the 363 Sale, and, although to a lesser extent than in *Phaneuf*, relying on the conduct of Old GM.  Thus I find as a fact, or mixed question of fact and law, that the threshold applicability of the Sale Order—and its injunctive provisions—has been established in the first instance.

> And once again, even if the Sale Order did not apply in the first instance, a preliminary injunction would also be appropriate here, for the reasons discussed at length in *Phaneuf*, which I will not repeat at comparable length here—other than to say that the prejudice to all of the other litigants, and to the case management concerns I had with respect to the Phaneuf Plaintiffs, is just as much a matter of concern here.

> As in *Phaneuf*, I will not allow the Elliott Plaintiffs to go it alone.  The Elliott Plaintiffs' claims can be satisfactorily addressed—and will have to be addressed—as part of the coordinated proceedings otherwise pending before me.

9

Elliott Written Decision, at 9.  Ultimately, the Court held that the "injunctive provisions of Paragraphs 8 and 47 of the Sale Order (and that the Court may also impose by preliminary injunction) will remain in place" with respect to the Elliott Ignition Switch Action.  *Id.* at 9-10.

23.    Because new Ignition Switch Actions were being filed against New GM almost on a daily basis in other courts (notwithstanding the procedures already put in place by this Court), New GM needed to implement stay procedures to address such Ignition Switch Actions. Accordingly, on June 13, 2014, New GM filed with the Court a motion to establish stay procedures for newly-filed Ignition Switch Actions [Dkt. No. 12725] ("**Tag-Along Motion**"). The relief requested in the Tag-Along Motion was granted by Order dated July 8, 2014 [Dkt. No. 12764] ("**Stay Procedures Order**").  The Stay Procedures Order requires, *inter alia*, plaintiffs in newly filed Ignition Switch Actions, within three (3) days of receipt of a form Stay Stipulation, to either enter into a Stay Stipulation or file a "No Stay Pleading" with the Court.

**B.      The Two Additional Motions to Enforce, The August
         Conference, and the Court's Reiteration that the Sale
         Order And Injunction Applies to the Actions in the First Instance**

24.    Since recalling vehicles based on allegedly defective ignition switches in February, 2014, New GM has instituted various other recalls concerning Old GM and New GM vehicles.  In response to these additional recalls, plaintiffs have commenced lawsuits against New GM based on alleged defective parts (other than the ignition switch) in Old GM vehicles. Accordingly, on August 1, 2014, New GM filed with the Court the Monetary Relief Motion to Enforce, seeking to enforce the Sale Order and Injunction against plaintiffs (including certain of the Bledsoe Plaintiffs) who are improperly asserting claims against New GM based on non-ignition switch defects in Old GM vehicles.

24042688v2

25.    In addition, again based on the various recalls that have been instituted by New GM in recent months, certain plaintiffs have commenced lawsuits against New GM that are based on accidents that occurred prior to the closing of the 363 Sale.  As claims against New GM based on pre-closing accidents are clearly barred by the Sale Order and Injunction, New GM filed the Pre-Closing Accident Motion to Enforce on August 1, 2014.

26.    In conjunction with filing the Monetary Relief Motion to Enforce and the Pre-Closing Accident Motion to Enforce, New GM requested a conference with the Court which was held on August 18, 2014 ("**August Conference**").  Prior to the August Conference, and in response to the filing of the Pre-Closing Accident Motion to Enforce, one plaintiff ("**Powledge**") filed a letter and objection with the Court, requesting time to addresses the Court at the August Conference, and to explain why that plaintiff was different from other plaintiffs.  At the August Conference, after counsel for Powledge laid out his reasoning, the Court found Powledge's situation was no different from that of other plaintiffs:

> I can tell you if you don't already know how I've ruled on people who are of a mind to go it alone and who have made similar arguments to you, and I encourage you to read my decisions in the [Phaneuf] and Elliott matters.  You have the right if you want to file a no stay pleading.  . . .  [I]f you're thinking about doing it you'd have to make a preliminary decision first as to whether you can comply with Bankruptcy Rule 9011 which is like Federal Civil Rule 11, in light of the rulings in that area.
> . . .
>
> At some point your contentions will be heard either as flowing from the matters that are already before me or anything else you want to argue, but the chances of you being allowed to go it alone ahead of the other -- I thought there were 94 -- I thought I heard 104 at this point -- others, practically everybody is making arguments that their cases -- that's an exaggeration -- many people are making arguments that their cases are special.
> . . .
>
> [A]t least seemingly if you have a vehicle made by Old GM prepetition it's subject to at least one of the three categories of the sale order that New GM has been relying upon and going against people like the [Phaneuf Plaintiffs] and the

11

> Elliotts and most of the others, and if you want to deal with it the mechanism is
> going to be by a no stay pleading.  Sooner or later your concerns are going to be
> heard, but the chances of you being allowed to litigate them in another court
> before I've ruled on this issue are about the same as me playing for the Knicks, or
> in your term it's the Rockets.

Hr'g Tr. 81:11-83:8, August 18, 2014.

27.     Given the Court's *Phaneuf* Written Decision and *Elliott* Written Decision, as well as the Court's statements at the August Conference with respect to *Powledge*, it is clear that the Court has exclusive jurisdiction over all of the Actions, and that no Plaintiff (including the Bledsoe Plaintiffs) may or should get ahead of all of the other Plaintiffs.  The procedures adopted by the Court apply to all Plaintiffs (including the Bledsoe Plaintiffs).

28.     The September Orders set out stay procedures for actions that are subject to these two additional Motions to Enforce.  The September Orders require, *inter-alia*, plaintiffs in newly filed Monetary Relief Actions and/or Pre-Closing Accident Lawsuits, within seven (7) days of receipt of a form Stay Stipulation, to either enter into a Stay Stipulation or file a "No Stay Pleading" with the Court.

## C.     MDL 2543, the Initial Case Conference and the Consolidated Complaints

29.     On March 25, 2014, the Judicial Panel on Multidistrict Litigation ("**JPML**") established MDL 2543, *In re: General Motors LLC Ignition Switch Litigation*.  Subsequently, on June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL court and assigned the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings in the Ignition Switch Actions.  *See In re General Motors LLC Ignition Switch Litigation*, MDL No. 2543.  More than 120 cases currently are pending in MDL 2543, including the Bledsoe Lawsuit.  MDL 2543 does not only contain lawsuits that seek economic damages based on alleged defective ignition switches; it also contains lawsuits asserting personal injuries from accidents involving Old GM and New GM

12

vehicles, and lawsuits seeking economic damages based on alleged defects other than the ignition switch.

30.   On August 11, 2014, the District Court held an initial case conference ("**Initial Conference**") in MDL 2543.  Among the matters discussed at the Initial Conference was the filing by Lead Counsel of a consolidated complaint for all economic loss actions that are part of MDL 2543.  Two Consolidated Complaints were filed October 14, 2014, one that concerns claims based on vehicles purchased prior to the 363 Sale and the other concerning claims based on vehicles purchased after the closing of the 363 Sale (although this second Consolidated Complaint, like the other Consolidated Complaint, concerns vehicles manufactured by Old GM). The District Court also implemented procedures for plaintiffs to lodge any objections to the Consolidated Complaints with MDL Lead Counsel prior to their filing, and for the Court to resolve any remaining objections amongst plaintiffs after filing.

31.   The Master Complaints, among other things, concern vehicles and claims at issue in the Bledsoe Lawsuit.

## D.   The Bledsoe Lawsuit

32.   Despite being aware of the Phaneuf Written Decision and the Elliott Written Decision, and being on notice that the Sale Order and Injunction is applicable to the Actions in the first instance, counsel for the Bledsoe Plaintiffs – instead of seeking relief in this Court  – filed the Bledsoe Lawsuit in the Southern District of New York on September 19, 2014.  The Bledsoe Lawsuit was designated by the Bledsoe Plaintiffs as being related to MDL 2543, and it was ultimately consolidated with MDL 2543.[8]

---

[8]   *See MDL Consolidation Order* (S.D.N.Y. Oct. 15, 2014) [Dkt. No. 349], a copy of which is annexed hereto as Exhibit "B."

33.     The named Plaintiffs in the Bledsoe Lawsuit own only Old GM vehicles, with model years ranging from 2000 through 2008 (certain of the Old GM vehicles were purchased prior to the 363 Sale; certain others were purchased in the resale market after the 363 Sale).  The Bledsoe Plaintiffs claim to bring their lawsuit "on behalf of a proposed nationwide class" and the Class is defined as people "who, since the inception of [New] GM in October 2009, hold or have held a legal or equitable interest in a GM vehicle with an ignition switch hazard [*sic*], an ignition switch key hazard, a power steering hazard, a transmission cable hazard, a brake light failure hazard, and/or a master power door switch hazard."  Bledsoe Compl., ¶ 85.  Thus, the purported class, as defined by the Bledsoe Plaintiffs, encompasses anyone who owned a subject vehicle as of October 2009, even if that person purchased the vehicle from Old GM before the 363 Sale.

Upon learning of the filing of the Bledsoe Lawsuit, New GM, as it has done numerous times before, determined that it implicated the Sale Order and Injunction, and designated the Bledsoe Lawsuit as being subject to all three Motions to Enforce on October 6, 2014 pursuant to various supplemental schedules filed with the Court [Dkt. Nos. 12938-12942] ("Collectively, "**Supplemental Schedules**").[9]

## RESPONSE

## THE RELIEF REQUESTED IN THE
## BLEDSOE NO STAY PLEADING SHOULD BE DENIED

34.     Preliminarily, as was the case with respect to the No Stay Pleadings filed by other Plaintiffs, New GM will limit its substantive arguments in this Response because of the absence of counsel for the other Plaintiffs in the Ignition Switch Actions.  *See* Hr'g Tr. 82:14-17, July 2, 2014 ("MR. STEINBERG:    . . . and I'm trying to be very careful not to make substantive arguments . . .  THE COURT:  That's especially important in light of all the people who have

---

[9]     Copies of the Supplemental Schedules are collectively annexed hereto as Exhibit "C."

already left the courtroom today.").  As discussed herein, the issues raised by the Bledsoe

Plaintiffs will be briefed in accordance with the procedures established for the Four Threshold

Issues pursuant to the Supplemental Scheduling Order.[10]

A.    **The Bledsoe Plaintiffs Are Subject To The
      Injunction Contained In The Sale Order And Injunction**

35.    As stated in the Motions to Enforce, the United States Supreme Court in *Celotex*

*Corp. v. Edwards* set forth the "well-established" rule that "'persons subject to an injunctive

order issued by a court with jurisdiction are expected to obey that decree until it is modified or

reversed, even if they have proper grounds to object to the order.'"  514 U.S. 300, 306 (1995).

The Supreme Court further explained:

> If respondents believed the Section 105 Injunction was improper, they should
> have challenged it in the Bankruptcy Court, like other similarly situated bonded
> judgment creditors have done . . . .  Respondents chose not to pursue this course
> of action, but instead to collaterally attack the Bankruptcy Court's Section 105
> Injunction in the federal courts in Texas.  This they cannot be permitted to do
> without seriously undercutting the orderly process of the law.

*Id.* at 313.

36.    New GM is not seeking a new injunction against the Bledsoe Plaintiffs; New GM

is simply seeking to enforce the preexisting injunction set forth in the Sale Order and Injunction,

which remains in effect.  Through their pleading, the Bledsoe Plaintiffs are essentially asking the

Court to vacate its preexisting injunction as to them.  The burden is thus on the Bledsoe Plaintiffs

to demonstrate that the injunction in the Sale Order and Injunction should be vacated.  *See*

*Stewart v. General Motors Corp.*, 756 F.2d 1285, 1291 (7th Cir. 1985) ("The law appears settled

---

[10]    To the extent the Court believes that substantive arguments are needed to address the Bledsoe Plaintiffs' claims
in the context of their pleading prior to the Court addressing the Four Threshold Issues (which New GM asserts,
consistent with this Court's rulings in connection with the Phaneuf No Stay Pleading and the Elliott No Stay
Pleading, should not be the case), New GM requests that it be given an opportunity to brief such issues.

that the defendant bears that burden on a motion to vacate an injunction.").  Just like the Phaneuf

and Elliott Plaintiffs, the Bledsoe Plaintiffs have not come close to meeting their burden.

37.     It is for this reason that the Bledsoe Plaintiffs' arguments regarding the procedural

mechanism chosen by New GM to seek relief in this Court is beside the point.  As counsel for

the Bledsoe Plaintiffs by now well knows, it was the Bledsoe Plaintiffs who should have sought

relief in this Court before filing the Bledsoe No Stay Pleading; they did not do so.  In any event,

contrary to the Bledsoe Plaintiffs' unsupported argument, the relief requested by New GM was

appropriately brought by way of motion.  An adversary proceeding was not necessary as New

GM is seeking to *enforce* a *preexisting* injunction, not *obtain* a *new* injunction.  *See, e.g.*, *In re*

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. 331, 337 (Bankr. S.D.N.Y.

2012) ("As a threshold matter, contrary to [respondent] Bancorp's argument, the Motion need

not have been brought as an adversary proceeding since U.S. Bank seeks only the enforcement of

an injunction already in effect under this Court's existing Sale Order, not the issuance of a new

injunction."); *In re WorldCorp., Inc.,* 252 B.R. 890, 895 (Bankr. D. Del 2000) ("an adversary

proceeding is not necessary where the relief sought [against only one respondent] is the

enforcement of an order previously obtained.").

38.     Knowing that New GM would make the foregoing argument (since it did so in

connection with the Sesay No Stay Pleading), the Bledsoe Plaintiffs assert that "to the extent that

[New GM] seeks to enforce an existing injunction, its exclusive remedy is to seek to hold

plaintiffs in contempt in appropriate proceedings."  Bledsoe No Stay Pleading, at 6.  Such

statement is not only wholly unsupported, but is directly contrary to the authorities cited above.

While New GM does not now seek to hold the Bledsoe Plaintiffs in contempt, it nonetheless

reserves all of its rights to seek to hold them in contempt.

16

**B.      A Preliminary Injunction Is Not Needed
          In Connection With The Bledsoe Lawsuit**

39.      While New GM has in previous responses to other No Stay Pleadings asserted that it can satisfy its burden for obtaining a preliminary injunction, a preliminary injunction is not needed or required herein.[11]   It is undisputed that the Bledsoe Lawsuit is part of MDL 2543. Judge Furman has already stated that, while certain matters may go forward, he will await this Court's ruling on the Four Threshold Issues.  In reality, regardless of what the Bledsoe Plaintiffs say or do, they are on the same track as all other Plaintiffs in MDL 2543 that have commenced Ignition Switch Actions.  Thus, this entire exercise is a waste of the Court's and New GM's resources and time.

**C.      The Bledsoe Plaintiffs' Claims Clearly
          Implicate the Sale Order and Injunction**

40.      As acknowledged by the Bledsoe Plaintiffs, the issues raised by them are substantially similar to the issues raised by the Elliott Plaintiffs.  All of the Bledsoe Plaintiffs (as well as, presumably, many of the putative class members that the Bledsoe Plaintiffs seek to represent) own an Old GM vehicle, which the Court has already held to be dispositive in determining that a No Stay Pleading should be denied.  Hr'g Tr. 92:3-5, July 2, 2014.

41.      The Bledsoe Plaintiffs, like the Phaneuf Plaintiffs and Elliott Plaintiffs, similarly argue that many of their claims are based on New GM's conduct, and not Old GM's conduct. However, counsel for the Bledsoe Plaintiffs is more brazen in this action and he affirmatively asserts in the Bledsoe No Stay Pleading that the negligence claims are being asserted "on the part

---

[11]      However, to the extent a preliminary injunction is needed with respect to the Bledsoe Plaintiffs, New GM asserts that, for the reasons stated in its responses to the Phaneuf No Stay Pleading and the Elliott No Stay Pleading (with such arguments being incorporated herein by reference), New GM's burden for obtaining a preliminary injunction is clearly satisfied herein.  The Bledsoe Lawsuit is substantially similar to the Elliott Ignition Switch Action, and functionally equivalent to the Phaneuf Ignition Switch Action.  As a preliminary injunction was effectively granted in those matters, it should likewise be granted here.

of Debtor GM for which [New] GM is liable." This is clearly a claim based on successor liability
which is expressly forbidden by the Sale Order and injunction.  Moreover, because the class of
plaintiffs, as defined, includes people who purchased their vehicles from Old GM, this identical
argument—that a plaintiff can sidestep the Sale Order and Injunction by asserting only claims
against New GM with respect to Old GM vehicles—was rejected by the Court in Phaneuf,
Elliott, and Powledge.

42.    Even the Bledsoe Plaintiffs themselves recognize that the Court needs to interpret
the Sale Order and Injunction to reach a conclusion on the issue.[12]  The Sale Order and Injunction
unquestionably reserved exclusive jurisdiction to this Court to interpret and enforce the Sale
Order and Injunction, as well as the terms of the Sale Agreement.[13]  This is why the Motions to
Enforce were filed in this Court, and this is why this Court is the only proper Court to hear and
decide these issues.

43.    The Bledsoe Plaintiffs' arguments concerning this Court's lack of "related to"
jurisdiction are inexplicable given this Court's ruling on the identical issue in connection with
the Elliott No Stay Pleading.  The Court, in no uncertain terms, has already found, as counsel for
the Bledsoe Plaintiffs well knows, that any argument based on a lack of "related to" jurisdiction
simply "misses the point."  Elliott Written Decision, at 4.  As clearly and unambiguously found
by the Court, "[b]ankruptcy courts (and when it matters, district courts) have subject matter

---

[12]    *See* Bledsoe No Stay Pleading, p. 16 ("Before such a conclusion can reasonably (or constitutionally) be reached, an analysis is necessary *first* to determine if their third-party non-debtor claims assert derivative or successor liability on the part of Non-Debtor GM for retained liability of Debtor GM, in which case the claims may well be within the terms of the Sale Order, or if they are based instead on allegations that Non-Debtor GM violated *independent* duties that Non-Debtor GM owed to the *Bledsoe* Plaintiffs, causing them legally cognizable harm, in which case the claims would not be, and constitutionally could not have been, encompassed by the Sale Order and Injunction." (italic emphasis in original)).

[13]    *See* Sale Order and Injunction, ¶ 71.  In the Bledsoe No Stay Pleading, the Bledsoe Plaintiffs go on at length discussing a bankruptcy court retention of jurisdiction provision in a plan of reorganization.  *See* Bledsoe No Stay Pleading, at pp. 9-12.  Again, counsel gets it wrong.  These cases have nothing to do with Old GM's plan of liquidation or any of its provisions.

18

jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts'
"*arising in*" jurisdiction.  The nearly a dozen cases cited [in the first two pages of the Elliott
Written Decision] expressly so hold."  *Id.* (emphasis in original)(footnote omitted).

44.    All Plaintiffs are required to obey the injunction contained in the Sale Order and
Injunction until this Court has an opportunity to resolve the issues set forth in the Motions to
Enforce, and, in particular, decide which claims asserted against New GM are barred, and
which, if any, are not.  The Bledsoe Plaintiffs are no different from any of the other Plaintiffs,
except in one situation.  The Elliotts are part of the Bledsoe Plaintiffs.  They already have made
most of these arguments and lost.  The principles of collateral estoppel mandate the same result
again.

45.    Virtually every other Plaintiff, by signing the Stay Stipulation, has acknowledged
their obligation to comply with the Sale Order and Injunction.  The Bledsoe Plaintiffs should be
compelled to do what the other Plaintiffs have readily acknowledged they will and must do.

**D.    The Bledsoe Plaintiffs' Arguments Are Subsumed In
Three Of The Four Threshold Issues, Which Should Be Decided
Pursuant To The Court-Approved Procedures Regarding Same**

46.    As stated above, the claims asserted by the Bledsoe Plaintiffs are no different
from the claims asserted by many Plaintiffs in other Actions.  Numerous other Plaintiffs
(including, notably, the Elliott Plaintiffs) have asserted, among other things, claims against New
GM based on fraud, and consumer protection statutes.[14]  In fact, the Consolidated Complaints
recently filed in the MDL contain these very same causes of action.  The real issue raised by the
Bledsoe No Stay Pleading is whether their contention – *i.e.*, that they have asserted claims only
against New GM and not Old GM -- should be decided now, or as part of the identical Old GM

---

[14]    Most of the Actions contain claims based on (i) fraud or fraudulent concealment (which the Bledsoe Plaintiffs
allege in their complaint (*see* ¶¶ 94-99 thereof)), and (ii) alleged violations of consumer protection statutes.

Claim Threshold Issue that is set forth in the Supplemental Scheduling Order.  This is a question this Court has already answered repeatedly.

47.    Moreover, Point II in the Bledsoe No Stay Pleading asserts that the Motions to Enforce should be denied because the Bledsoe Plaintiffs' due process rights were violated in that they received no effective notice nor any reasonable opportunity to be heard with respect to entry of the Sale Order and Injunction.  Bledsoe No Stay Pleading, at 6-7.  This unquestionably fits within the Due Process Threshold Issue and the Remedies Threshold Issue.  Again, this question should be answered after following the carefully-crafted procedures approved by this Court in the Scheduling Order and Supplemental Scheduling Order.

WHEREFORE, New GM respectfully requests that this Court (i) deny the relief requested in the Bledsoe No Stay Pleading, (ii) preliminarily enjoin the Bledsoe Plaintiffs from further prosecuting the Bledsoe Lawsuit, and (iii) grant New GM such other and further relief as the Court may deem just and proper for the filing of this frivolous pleading.

24042688v2

Dated: New York, New York
      October 23, 2014               Respectfully submitted,


                                          /s/ Arthur Steinberg
                              Arthur Steinberg
                              Scott Davidson
                              KING & SPALDING LLP
                              1185 Avenue of the Americas
                              New York, New York  10036
                              Tefexlephone: (212) 556-2100
                              Facsimile:     (212) 556-2222


                              Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                              Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                              KIRKLAND & ELLIS LLP
                              300 North LaSalle
                              Chicago, IL 60654
                              Telephone: (312) 862-2000
                              Facsimile: (312) 862-2200


                              *Attorneys for General Motors LLC*

24042688v2