**Hearing Date:  To Be Determined**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
|     f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
------------------------------------------------------------x

**RESPONSE BY GENERAL MOTORS LLC TO
<u>NO STAY PLEADING FILED BY KAREN BLOOM</u>**

**TABLE OF CONTENTS**

Page

**PRELIMINARY STATEMENT** ..................................................................................................1

**BACKGROUND RELEVANT TO RESPONSE** ......................................................................4

    A.    The Ignition Switch Motion To Enforce,
         Court Conferences And Scheduling Orders........................................................4

    B.    The Denial Of The Phaneuf No Stay Pleading .....................................................5

    C.    The Tag-Along Motion For Newly-Filed Ignition Switch
         Actions And The Implementation Of Supplemental Stay Procedures .............6

    D.    MDL 2543 And Its Initial Case Conference ..........................................................7

    E.    The Bloom Ignition Switch Action .......................................................................8

**RESPONSE** ....................................................................................................................................9

  **THE RELIEF REQUESTED IN THE BLOOM
  NO STAY PLEADING SHOULD BE DENIED** ................................................................9

    A.    The Bloom Plaintiff Is Subject To The Injunction Contained
         In The Sale Order And Injunction ........................................................................9

    B.    This Court Has Exclusive Jurisdiction Over The Bloom Ignition
         Switch Action And Should Enjoin The Bloom Plaintiff From
         Continuing To Prosecute Same..........................................................................11

    C.    The Bloom Plaintiff's Claims Are Barred By The Sale Order
         And Injunction .....................................................................................................11

        1.    The Bloom Plaintiff Has Not Asserted A Lemon Law Claim as
            Defined in the MSPA .................................................................................11

        2.    The Bloom Ignition Switch Action Asserts Claims
            Against New GM Other Than Lemon Law Claims .................................13

    D.    The Bloom Ignition Switch Action Inappropriately
         Treats Old GM and New GM As the Same Entity ...........................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) .................................................................................................... 9

*Stewart v. General Motors Corp.*,
  756 F.2d 1285 (7th Cir. 1985) .................................................................................. 10

*Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803,
  2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) .................................................. 13

**Statutes**

73 P.S. § 1954(a) ............................................................................................................. 12

73 P.S. § 1955 ................................................................................................................. 12

General Motors LLC (**"New GM"**), by its undersigned counsel, submits this response ("**Response**") to the "No Stay Pleading" ("**Bloom No Stay Pleading**") filed by the Plaintiff ("**Bloom Plaintiff**") in the Ignition Switch Action[1] filed by Karen Bloom ("**Bloom Ignition Switch Action**"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.     In the Bloom No Stay Pleading, the Bloom Plaintiff asserts that "[a]ll of the laws the Plaintiff filed under compose Pennsylvania's Lemon Laws" (Bloom No Stay Pleading, at ¶ 2), and that, since New GM assumed liabilities under Lemon Laws (as defined in the MSPA), New GM assumed the liabilities alleged in the Bloom Ignition Switch Action. Even if the Bloom Plaintiff was correct (she is not) and that the Bloom Ignition Switch Action only concerns a lemon law claim (it does not), the Action would still be subject to the Motion to Enforce for the reasons set forth below.

2.     The Bloom Plaintiff's vehicle was repaired in April 2014 pursuant to the recall, and from a review of the complaint, it does not appear that the Bloom Plaintiff has experienced any further problems since that time. Thus, the Bloom Plaintiff has effectively received her remedy. But, even if that were not the case, New GM believes that any lemon law claim asserted by the Bloom Plaintiff does not fit within the definition of "Lemon Law" as such term is defined in the MSPA, given that (i) the asserted lemon law claim does not comply with Pennsylvania's lemon law statute, (ii) the Bloom Ignition Switch Action is time barred since it was commenced over six years after the Bloom Plaintiff purchased her vehicle from Old GM; and (iii) the Bloom Plaintiff seeks damages in excess of what Pennsylvania's lemon law allows. As such, New GM

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("**Motion to Enforce**"), dated April 21, 2014 [Dkt. No. 12620].

1

did not assume the liabilities asserted in the Bloom Ignition Switch Action, and such claims are barred by the Sale Order and Injunction.

3.   In addition, and contrary to the Bloom Plaintiff's assertions in her No Stay Pleading, a review of the Bloom Plaintiff's complaint[2] reveals that she has brought other causes of action against New GM in addition to her lemon law claims which are clearly barred by the Sale Order and Injunction. Specifically, in addition to a lemon law claim, the Bloom Ignition Switch Action contains the following other separate and distinct causes of action with respect to their Old GM vehicle: (i) a violation of the Magnuson-Moss Federal Trade Commission Improvement Act ("**Magnuson-Moss Act**"), (ii) an unfair trade practices and consumer protection claim,[3] and (iii) claims under the Uniform Commercial Code ("**UCC**"), including alleged breaches of contractual and statutory obligations (including breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose and breach of a duty of good faith). Such claims obviously implicate the Sale Order and Injunction and are therefore subject to the Motion to Enforce.

4.   Since the Bloom Plaintiff contends otherwise, this Court will ultimately need to determine the issue, but that determination should be made in conjunction with the Four Threshold Issues[4] since one of them is squarely implicated by the Bloom Ignition Switch Action: "whether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust) ('**Old GM Claim Threshold Issue**')." A

---

[2]  A copy of the complaint filed in the Bloom Ignition Switch Action is annexed hereto as Exhibit "A."

[3]  The Bloom Plaintiff "admits that under the Sale Agreement . . . does [sic] not include claims under the Unfair Trade Practices and Consumer Protection Act and therefore agrees to withdraw this claim." Bloom No Stay Pleading, at 2 n.1. As of this filing, however, the Bloom Plaintiff still has not done so.

[4]  The term "Four Threshold Issues" is defined in the Court's July 11, 2014 Supplemental Scheduling Order ("**Supplemental Scheduling Order**"), as further supplemented by the Court's Endorsed Order, dated August 22, 2014 ("**August 22 Order**").

2

24060888v2

briefing schedule has been established by the Court for that purpose.[5] This is (a) the orderly process the Court set forth in its May 16, 2014 Scheduling Order ("**Scheduling Order**"), as supplemented by the Supplemental Scheduling Order and August 22 Order, (b) the process recommended by Designated Counsel (as defined in the Scheduling Order) at the conferences held on May 2, 2014 ("**May Conference**"), July 2, 2014 ("**July Conference**") and August 18, 2014, and (c) the process agreed to by substantially all of the other Plaintiffs in the over 100 pending Ignition Switch Actions that are subject to the Motion to Enforce.[6] The Court already has ruled, on multiple occasions, that these Court-approved procedures with respect to the Four Threshold Issues will govern the adjudication of such claims. Other Plaintiffs who have tried to "jump the line" (*e.g.*, the Phaneuf Plaintiffs, the Elliott Plaintiffs, and the Phillips Plaintiff[7]) have failed.

5.  Although the Bloom Plaintiff asserts that she is different from these other Plaintiffs, she simply is not; she should be bound by the same rules that will apply to all the other Plaintiffs. As substantially all other Ignition Switch Actions concern vehicles manufactured by Old GM (and not New GM), the Bloom Plaintiff is not at all uniquely situated. Her issues are

---

[5] New GM's opening brief will be filed on November 5, 2014, and the Four Threshold Issues will be fully briefed by mid-January 2015 (in approximately 3 months).

[6] The six groups of Plaintiffs that have filed No Stay Pleadings with the Court are (i) the Elliott Plaintiffs, (ii) the Phaneuf Plaintiffs, (iii) the Orange County Plaintiff (on a self-described "limited" basis), (iv) the Sesay Plaintiffs, (v) the Alers Plaintiff, and (vi) the Bledsoe Plaintiffs. The Court has previously denied the No Stay Pleadings filed by the Elliott Plaintiffs and the Phaneuf Plaintiffs. The limited No Stay Pleading filed by the Orange County Plaintiff is essentially moot as the sole basis for that pleading was to have the California District Court hear the Orange County Plaintiff's remand motion. The California District Court has stayed the Orange County Ignition Switch Action, and the remand motion is currently pending before the District Court in Multi-District Litigation ("**MDL**") 2543. The Orange County Plaintiff has agreed to stay its Action (in which ever court it ends up in) after the remand motion is decided. The Sesay No Stay Pleading (filed by the same counsel as the Elliott Plaintiffs and which raises substantially similar issues) and the Alers No Stay Pleading are currently *sub judice* before the Court. The Bledsoe No Stay Pleading (filed by the same counsel as the Elliott and Sesay Plaintiffs, and which raises substantially similar issues) has been briefed.

[7] The Phillips Action is subject to New GM's Pre-Closing Accident Motion to Enforce.

therefore not *sui generis*, and her claims are no different from those made by many of the other Plaintiffs whose cases are stayed, voluntarily or otherwise.

6. Indeed, certain of the Bloom Plaintiff's claims are subsumed in the consolidated complaint filed by Lead Plaintiffs on October 14, 2014 ("**Consolidated Complaint**") in the MDL. The Bloom Ignition Switch Action has been tagged by New GM for the MDL. The Bloom Plaintiff opposes such designation. If the Bloom Ignition Switch Action is transferred to the MDL, the economic loss claims contained therein should be subsumed by the Consolidated Complaint.

7. Simply put, there is no reason to overly-complicate or otherwise delay the Court's determination of the Four Threshold Issues by dealing now with the claims raised in the Bloom Ignition Switch Action, as it raises issues that are common to other Ignition Switch Actions. All such issues should be heard at the same time, and not in a piece-meal, plaintiff-by-plaintiff fashion. Accordingly, the Bloom No Stay Pleading should be denied.

## BACKGROUND RELEVANT TO RESPONSE

**A.    The Ignition Switch Motion To Enforce, Court Conferences And Scheduling Orders**

8. On April 21, 2014, New GM filed its Motion to Enforce and designated numerous Ignition Switch Action as being subject to the relief requested therein. On April 22, 2014, the Court issued an Order, scheduling the May Conference.

9. At the May Conference, various bankruptcy-related issues were discussed with the Court, and there was a general consensus reached between New GM and counsel speaking on behalf of almost all of the Plaintiffs that, as part of the process in which the Court would address bankruptcy-related issues, the Plaintiffs would either (i) agree to enter into a stipulation ("**Stay Stipulation**") with New GM staying their individual Ignition Switch Actions, or (ii) file with the

4

24060888v2

Court a "No Stay Pleading" setting forth why they believed their individual Ignition Switch Actions should not be stayed (collectively, the "**Initial Stay Procedures**"). The Initial Stay Procedures were approved in the Scheduling Order. An overwhelming number of Plaintiffs agreed to enter into Stay Stipulations.

10. Thereafter, the Court held the July Conference to address certain procedural issues that had arisen since the entry of the Scheduling Order. As part of the July Conference, the Court ruled on which issues should be decided first in these contested proceedings. At least one of the Four Threshold Issues identified by the Court at the July Conference are implicated by the Bloom No Stay Pleading; that being, the Old GM Claim Threshold Issue. A briefing schedule respecting the Four Threshold Issues was established in the Supplemental Scheduling Order, as amended by the August 22 Order.

    **B.**    **The Denial Of The Phaneuf No Stay Pleading**

11. Immediately after the July Conference, the Court heard argument on a No Stay Pleading [Dkt. No. 12712] filed by another group of Plaintiffs (*i.e.*, the "**Phaneuf Plaintiffs**"). The Phaneuf Ignition Switch Action (which concerns vehicles manufactured by both Old GM and New GM) attempted to allege claims solely against New GM, and not Old GM. New GM responded, arguing that the Phaneuf Plaintiffs' claims were like a number of other Plaintiffs' claims in other Ignition Switch Actions, and that the Phaneuf Plaintiffs should be on the same schedule as the other plaintiffs in the then nearly 90 other Ignition Switch Actions (which number has grown to more than 100).

12. The Court agreed with New GM and, on July 30, 2014, the Court entered its *Decision with Respect to No Stay Pleading (Phaneuf Plaintiffs)* ("**Phaneuf Written Decision**"). In the Phaneuf Written Decision, the Court found that the Phaneuf Ignition Switch Action:

5

        merges pre- and post-sale conduct by Old GM and New GM; and that their complaint places express reliance on at least seven actions by Old GM, before New GM was formed—that at least much of the Phaneuf Plaintiffs' complaint seeks to impose liability on New GM based on Old GM's pre-sale acts. Efforts of that character are expressly forbidden by the two injunctive provisions [from the Sale Order and Injunction] just quoted. Though I can't rule out the possibility that a subset of matters the Phaneuf Plaintiffs might ultimately show would not similarly be forbidden, at this point the Sale Order injunctive provisions apply. And it need hardly be said that I have jurisdiction to interpret and enforce my own orders, just as I've previously done, repeatedly, with respect to the very Sale Order here.

Phaneuf Written Decision, at 16 (footnotes omitted).

        13.    In addition, the Court found that even if the Sale Order and Injunction did not stay the Phaneuf Plaintiffs in the first instance (which it did), New GM had satisfied its burden of obtaining a preliminary injunction: "Additionally, I determine that even if the Sale Order lacked the injunctive provisions it has, it would be appropriate to enter a preliminary injunction protecting New GM from the need now to defend claims that, under the MSPA, and Sale Order and Injunction, it did not assume, and preventing the piecemeal litigation of the Phaneuf Plaintiffs' claims ahead of all of the other lawsuits similarly situated." *Id.* at 19.[8]

    **C.**    **The Tag-Along Motion For Newly-Filed Ignition Switch Actions And The Implementation Of Supplemental Stay Procedures**

        14.    Because new Ignition Switch Actions were being filed against New GM almost on a daily basis, New GM needed to implement stay procedures to address these new Actions. Accordingly, on June 13, 2014, New GM filed with the Court a motion to establish stay procedures for newly-filed Ignition Switch Actions [Dkt. No. 12725] ("**Tag-Along Motion**"). The relief requested in the Tag-Along Motion was granted by Order dated July 8, 2014 [Dkt. No.

---

[8] A ruling similar to the Phaneuf Written Decision was issued by the Court in connection with the Elliott No Stay Pleading. *See Decision with Respect to No Stay Pleading and Related Motion to Dismiss for Lack of Subject Matter Jurisdiction (Elliott Plaintiffs),* dated August 6, 2014 [Dkt. No. 12815]. The Court also addressed this issue in connection with the Phillips Action (which is subject to New GM's Pre-Closing Accident Motion to Enforce). *See* Hr'g Tr. 83:4-8, August 18, 2014 ("Sooner or later your concerns are going to be heard, but the chances of you being allowed to litigate them in another court before I've ruled on this issue are about the same as me playing for the Knicks, or in your term it's the Rockets.").

6

12764] ("**Stay Procedures Order**").  The Stay Procedures Order requires, *inter alia*, plaintiffs in newly filed Ignition Switch Actions, within three (3) days of receipt of a form Stay Stipulation, to either enter into a Stay Stipulation or file a "No Stay Pleading" with the Court ("**Supplemental Stay Procedures**").

### D. MDL 2543 And Its Initial Case Conference

15. On March 25, 2014, the Judicial Panel on Multidistrict Litigation ("**JPML**") established MDL 2543, *In re: General Motors LLC Ignition Switch Litigation*.  Subsequently, on June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL court and assigned the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings in the Ignition Switch Actions.  *See In re General Motors LLC Ignition Switch Litigation*, MDL No. 2543.  More than 120 cases currently are pending in MDL 2543.

16. On August 11, 2014, the District Court held an initial case conference ("**Initial Conference**") in MDL 2543.  Among the matters discussed at the Initial Conference was the filing by Lead Counsel of a consolidated master complaint for all economic loss actions that are part of MDL 2543.  Subsequently, the District Court entered Order No 8 on August 15, 2014, which, among other things, provides that Lead Counsel in MDL 2543 shall have 60 days from the date of Order No. 8 to file a consolidated master complaint with the District Court.  The Court also implemented procedures for plaintiffs to lodge any objections to the consolidated complaint with MDL Lead Counsel prior to filing and for the Court to resolve any remaining objections amongst plaintiffs after filing.

17. On October 14, 2014, lead counsel in the MDL filed the Consolidated Complaint which, among other things, concerns the vehicle and claims at issue in the Bloom Ignition Switch Action.

7

### E.  The Bloom Ignition Switch Action

18.  The Bloom Ignition Switch Action was commenced on September 5, 2014, and it was removed by New GM to the United States District Court for the Middle District of Pennsylvania on September 30, 2014.  The Bloom Plaintiff filed a motion to remand the Bloom Ignition Switch Action to the state court on October 10, 2014.

19.  Bloom was listed as a Plaintiff in New GM's Ninth Supplements to Schedule 1 and 2 (collectively "**Ninth Supplements**")[9] filed with the Court on October 6, 2014.  Thereafter, counsel for Bloom was sent by e-mail correspondence on October 14, 2014 copies of the Scheduling Order, Stay Procedures Order, and form Stay Stipulation.  In the e-mail correspondence, counsel for New GM explained the Stay Procedures and informed counsel for Bloom that if she did not wish to execute a Stay Stipulation, she had to timely file a No Stay Pleading.

20.  On October 3, 2014, New GM filed a tag-along notice with the JPML, designating the Bloom Ignition Switch Action as being subject to the MDL.  On October 20, 2014, the Bloom Plaintiff filed an opposition to the tag-along notice, arguing that the Bloom Ignition Switch Action should not be transferred to the MDL.[10]

---

[9] Copies of the Ninth Supplements are annexed hereto collectively as Exhibit "B."

[10] While the JPML will decide whether the Bloom Ignition Switch Action will be transferred to the MDL, New GM believes that such transfer will ultimately take place given the allegations regarding the ignition switch; a pending remand motion also is not an impediment to transfer.  *See, e.g.*, JPML Transfer Order regarding Yagman Action, Boyd Action and Kandziora Action, a copy of which is annexed hereto as Exhibit "C."

8

24060888v2

# RESPONSE

## THE RELIEF REQUESTED IN THE
## BLOOM NO STAY PLEADING SHOULD BE DENIED

21.     Preliminarily, as was the case with respect to other Plaintiffs' No Stay Pleadings, New GM will limit its substantive arguments in this Response because of the absence of counsel for the other Plaintiffs in the Ignition Switch Actions.  *See* Hr'g Tr. 82:14-17, July 2, 2014 ("MR. STEINBERG:   . . . and I'm trying to be very careful not to make substantive arguments . . . THE COURT:  That's especially important in light of all the people who have already left the courtroom today.").  As discussed herein, the issues raised by the Bloom Plaintiff will be briefed in accordance with the procedures established for the Four Threshold Issues pursuant to the Supplemental Scheduling Order.[11]

### A.  The Bloom Plaintiff Is Subject To The Injunction Contained In The Sale Order And Injunction

22.     As stated in the Motion to Enforce, the United States Supreme Court in *Celotex Corp. v. Edwards* set forth the "well-established" rule that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'" 514 U.S. 300, 306 (1995). The Supreme Court further explained:

> If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . . .  Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law.

*Id.* at 313.

---

[11] To the extent the Court believes that substantive arguments are needed to address the Bloom Plaintiff's claims in the context of his pleading prior to the Court addressing the Four Threshold Issues (which New GM asserts, consistent with this Court's rulings in connection with the other No Stay Pleadings, should not be the case), New GM requests that it be given an opportunity to brief such issues.

23. New GM is not seeking a new injunction against the Bloom Plaintiff; New GM is simply seeking to enforce the preexisting injunction set forth in this Court's Sale Order and Injunction, which remains in full force and effect. Through her pleading, the Bloom Plaintiff is essentially asking the Court to vacate its preexisting injunction as to her. The burden is thus on the Bloom Plaintiff to demonstrate that the injunction in the Sale Order and Injunction should be vacated. *See Stewart v. Gen. Motors Corp.*, 756 F.2d 1285, 1291 (7th Cir. 1985) ("The law appears settled that the defendant bears that burden on a motion to vacate an injunction.").

24. Just like the Phaneuf Plaintiffs, the Elliott Plaintiffs and the Phillips Plaintiffs, the Bloom Plaintiff has not come close to meeting her burden. It was the Bloom Plaintiff who should have sought relief in this Court before filing the Bloom Ignition Switch Action; she did not do so.[12] All Plaintiffs are required to obey the injunction contained in the Sale Order and Injunction until this Court has had an opportunity to resolve the bankruptcy-related issues set forth in the Motion to Enforce, and in particular, decide which claims asserted against New GM are barred, and which, if any, are not. While she asserts that she is not like other Plaintiffs, the Bloom Plaintiff is no different from any of the other Plaintiffs as she is asserting claims against New GM which New GM believes are barred by the Sale Order and Injunction. By signing Stay Stipulations, the vast majority of the other Plaintiffs have acknowledged their obligation to comply with the Court's Sale Order and Injunction pending the resolution of the issues raised by the Motion to Enforce. The Bloom Plaintiff should be compelled to do what the others have readily acknowledged they will and must do.

---

[12] To the extent a preliminary injunction is needed with respect to the Bloom Plaintiff, New GM asserts that, for the reasons stated in its responses to the Phaneuf No Stay Pleading and the Elliott No Stay Pleading (with such arguments being incorporated herein by reference), New GM's burden for obtaining a preliminary injunction is clearly satisfied herein. The Bloom Ignition Switch Action is similar to the Phaneuf and Elliott Ignition Switch Actions as the Bloom Plaintiff is seeking to hold New GM liable for claims that it did not assume pursuant to the Sale Order and Injunction. As the Court ruled with respect to the Phaneuf and Elliott Plaintiffs, if applicable, the preliminary injunction standard would have been satisfied. The same result should apply herein.

10

B.  **This Court Has Exclusive Jurisdiction Over The Bloom Ignition Switch Action And Should Enjoin The Bloom Plaintiff From Continuing To Prosecute Same**

25. Pursuant to the Sale Order and Injunction, this Court retained exclusive jurisdiction over issues, such as the Old GM Claim Threshold Issue (which is implicated by the Bloom Ignition Switch Action), so that it could decide how such disputes should be resolved. In particular, the Sale Order and Injunction reserved exclusive jurisdiction to this Court to interpret and construe the Sale Order and Injunction, as well as the terms of the MSPA. The Court's exclusive jurisdiction unquestionably extends to resolving the bankruptcy-related issues set forth in the Motion to Enforce, including which claims asserted against New GM are barred, and which, if any, are not. The Bloom Ignition Switch Action, like all other Ignition Switch Actions, raises such an issue. Accordingly, the Bloom Plaintiff is no different from any of the other Plaintiffs, is subject to the injunction contained in the Sale Order and Injunction, and her Action is subject to the Motion to Enforce.

26. Moreover, allowing one Plaintiff to proceed with its Ignition Switch Action in a different forum could cause other Plaintiffs to seek relief in this Court from the stay that they previously voluntarily entered into, which would cause the very chaos that the Court sought to avoid by entering its previous Scheduling Orders. The procedures agreed to by all other Plaintiffs should, thus, govern the Bloom Ignition Switch Action.

C.  **The Bloom Plaintiff's Claims Are Barred By The Sale Order And Injunction**

  1. **The Bloom Plaintiff Has Not Asserted A Lemon Law Claim as Defined in the MSPA**

27. The Bloom Plaintiff attempts to distinguish her Action by arguing that, since she has asserted exclusively lemon law claims, she has claims against only New GM and not Old

11

GM. However, whether the Bloom Plaintiff has asserted a "Lemon Law" claim, as defined in the MSPA, is an open question, and one that must be resolved by this Court and no other.

28.     The MSPA defines "Lemon Laws" as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute." MSPA, p. 11. Pennsylvania's lemon law statute (73 P.S. § 1954(a)) provides as follows: "The manufacturer of a new motor vehicle sold or leased and registered in the Commonwealth shall repair or correct, at no cost to the purchaser, a nonconformity which substantially impairs the use, value or safety of said motor vehicle which may occur within a period of one year following the actual delivery of the vehicle to the purchaser, within the first 12,000 miles of use or during the term of the warranty, whichever may first occur."

29.     The Bloom Plaintiff's vehicle was purchased on April 18, 2008. See Compl., ¶ 8 ("On or about 4/18/08, Plaintiff took possession of the above mentioned vehicle . . . ."). Based on the Vehicle Report annexed to the Bloom Plaintiff's complaint, no services were performed on the vehicle within one year of delivery of the vehicle. Moreover, New GM asserts that by agreeing to assume "Lemon Law" claims, it did not agree to assume liabilities based on an Old GM vehicle that are contained in a lawsuit commenced over six years after the vehicle was sold. In addition, pursuant to her "lemon law" count, the Bloom Plaintiff seeks damages "equal to three (3) times the purchase price of the subject vehicle." Compl., Count I. Such damages are not authorized under Pennsylvania's lemon law. *See* 73 P.S. § 1955 (describing the remedies available to a vehicle purchaser under the Pennsylvania's lemon law). Thus, the Bloom Plaintiff's purported "lemon law" claim does not fit within the definition of "Lemon Laws" as defined by the MSPA.

12

### 2. The Bloom Ignition Switch Action Asserts Claims Against New GM Other Than Lemon Law Claims

30. Equally important, while the Bloom Plaintiff contends that her lawsuit only concerns lemon law claims, a review of her complaint demonstrates that this is not the case at all. The Bloom Plaintiff asserts claims based on (i) the UCC, including alleged breaches of contractual and statutory obligations (including breaches of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose and breach of a duty of good faith), (ii) an unfair trade practices and consumer protection claim,[13] and (iii) the Magnuson-Moss Act. Such claims are expressly barred by the Sale Order and Injunction, and MSPA.

31. New GM agreed to assume the glove box warranty for Old GM vehicles. The vehicle in the Bloom Ignition Switch Action had a glove box warranty that was limited to three years. *See* Bloom No Stay Pleading, ¶ 3. The Bloom Ignition Switch Action was commenced well after the glove box warranty expired. In any event, the glove box warranty covers only repairs and replacement parts; the economic losses asserted by the Bloom Plaintiff are for monetary damages and expressly barred by the glove box warranty. *See Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *8 (Bankr. S.D.N.Y. Feb. 19, 2013).[14] Thus, the Bloom Plaintiff's claim based on the Magnuson-Moss Act

---

[13] The Bloom Plaintiff herself concedes that Assumed Liabilities under the Sale Agreement do "***not*** include claims under the Unfair Trade Practices and Consumer Protection Act," and that she agrees to withdraw such claim. Bloom No Stay Pleading, at 2 n.1.

[14] The Bloom Plaintiff's reliance on the *Trusky* decision is misplaced. This Court held in *Trusky* that "New GM's warranty obligations ***are limited*** to honoring the specific terms of the Glove Box Warranty as to vehicles presented for repair to New GM dealers ***within the mileage and duration limitations*** of the Glove Box Warranty . . . ." *Id.*, 2013 WL 620281, at *2 (emphasis added). Thus, New GM was only obligated to honor the glove box warranty on the Bloom Plaintiff's vehicle if it was still applicable. As the Bloom Plaintiff admits that the glove box warranty was for three years/36,000 miles and that she purchased her vehicle in April, 2008, the glove box warranty expired years ago. Any claims based on the glove box warranty were, thus, not assumed by New GM.

13

and other express warranties (that are not the glove box warranty) were never assumed by New GM under the MSPA.

32. Moreover, liabilities not assumed by New GM pursuant to the MSPA include liabilities "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers." MSPA § 2.3(b)(xvi), *see also* MSPA ¶ 6.15(a). Such claims include alleged breaches of implied and statutory warranties, as asserted in the Bloom Plaintiff's complaint. Accordingly, as the Bloom Plaintiff is asserting claims against New GM that were not assumed by it, the Bloom Ignition Switch Action is clearly subject to the Motion to Enforce.

D. **The Bloom Ignition Switch Action Inappropriately Treats Old GM and New GM As the Same Entity**

33. The Bloom Plaintiff's complaint seeks to treat Old GM and New GM as one entity, which this Court has previously found to be "inappropriate." *See* Phaneuf Written Decision, at 13 n. 28 ("The Phaneuf Plaintiffs' effort to treat Old GM and New GM as a single entity is inappropriate, as a matter of bankruptcy law, if not as a matter of other law as well. . . . That tactic underscores the Phaneuf Plaintiffs' efforts to muddy the distinctions between the two entities, and to impose liability on New GM based on Old GM's conduct."). Allegations conflating Old GM and New GM contained in the Bloom Plaintiff's complaint include the following:

   a. "On or about 4/18/08, Plaintiff purchased a new 2008 Chevrolet Cobalt (hereinafter referred to as the 'vehicle'), manufactured and warranted by Defendant . . . ." Compl., ¶ 4.

   b. "In consideration of the purchase of the above vehicle, Defendant, issued to Plaintiff several warranties, fully outlined in the warranty booklet." Compl., ¶ 7.

14

24060888v2

  c. "The nonconformities violate the express written warranties issued to Plaintiff by Defendant." Compl., ¶ 10.

  34. The Bloom Plaintiff carries this practice over to her No Stay Pleading, asserting that *New GM* "manufactured and warranted" her vehicle (Bloom No Stay Pleading, ¶ 3), knowing full well that Old GM and New GM are distinct entities and that it was Old GM, and not New GM, who manufactured and warranted her 2008 Chevrolet Cobalt.

  35. Simply put, the Bloom Plaintiff's claims are based on an Old GM vehicle and Old GM conduct. She is not uniquely situated, and there is no reason to create an exception to the procedures agreed to by the other Plaintiffs as to how litigation issues should proceed in relation to the Motion to Enforce. Accordingly, the Bloom No Stay Pleading should be denied.

  WHEREFORE, New GM respectfully requests that this Court (i) deny the relief requested in the Bloom No Stay Pleading, (ii) enjoin the Bloom Plaintiff from further prosecuting her Ignition Switch Action, and (iii) grant New GM such other and further relief as the Court may deem just and proper.

24060888v2

Dated: New York, New York
October 30, 2014

Respectfully submitted,

　　　/s/ Arthur Steinberg　　　　　
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:　(212) 556-2100
Facsimile:　(212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

16

24060888v2