# Exhibit A

DAVID J. GORBERG & ASSOCIATES, P.C.
By: DAVID J. GORBERG
Identification No.: 53084
32 Parking Plaza
Suite 700
Ardmore, PA 19003
215-665-7660

Attorney for Plaintiff

Karen Bloom
135 Morris Ave
Scranton, PA 18504

COURT OF COMMON PLEAS

vs.

Luzerne

General Motors, LLC
C/O CSC
2595 INTERSTATE DRIVE
SUITE 103
HARRISBURGH PA 17110

**COMPLAINT**

1. Plaintiff, Karen Bloom, is an adult individual citizen and legal resident of the Commonwealth of Pennsylvania, residing 135 Morris Ave, Scranton, PA 18504

2. Defendant, General Motors, LLC is a business corporation qualified to do business and regularly conducts business in the Commonwealth of Pennsylvania and can be served c/o CSC Interstate Drive, Suite 103, Harrisburg, PA 17110.

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

**BACKGROUND**

3. Plaintiff incorporates by reference paragraphs 1 and 2 as fully as if set forth here length.

4. On or about 4/18/08, Plaintiff purchased a new 2008 Chevrolet Cobalt (hereinafter referred to as the "vehicle"), manufactured and warranted by Defendant bearing the Vehicle Identification Number 1G1AK58F8F987248747. The vehicle was purchased and registered in the Commonwealth of Pennsylvania.

5. The price of the vehicle, including registration charges, document fees, sales tax, but, excluding other collateral charges not specified, totaled $.

6. Plaintiff avers that as a result of the ineffective repair attempts made by Defendant through its authorized dealer, the vehicle cannot be utilized for the purposes intended by Plaintiff at the time of acquisition and as such, the vehicle is worthless.

7. In consideration of the purchase of the above vehicle, Defendant, issued to Plaintiff several warranties, fully outlined in the warranty booklet.

8. On or about 4/18/08, Plaintiff took possession of the above mentioned vehicle and experienced nonconformities, which substantially impaired the use, value and/or safety of the vehicle.

9. Said nonconformities consisted of but was not limited to, ingnition. Copies of repair receipts are attached hereto and marked as Exhibit "A".

10. The nonconformities violate the express written warranties issued to Plaintiff by Defendant.

11. Plaintiff avers the vehicle has been subject to repair more than two (2) times for the same nonconformity, and the nonconformity remains uncorrected.

12. Plaintiff has delivered the nonconforming vehicle to an authorized service and repair facility of the defendant on numerous occasions. After a reasonable number of attempts, Defendant was unable to repair the nonconformities.

13. In addition, the above vehicle has or will in the future be out of service by reason of the non-conformities complained of for a cumulative total of thirty (30) days or more.

14. The vehicle continues to exhibit defects and nonconformities which substantially impair it's use, value and/or safety.

15. Plaintiff avers the vehicle has been subject to additional repair attempts for defects and/or nonconformities and/or conditions for which the Defendant and or it's authorized service center, may not have maintained records.

16. Plaintiff has been and will continue to be financially damaged due to Defendant's failure to comply with the provisions of its' warranty.

17. Plaintiff seeks relief for losses due to the nonconformities and defects in the above mentioned vehicle in addition to attorney fees and all court costs.

**COUNT I**
**PENNSYLVANIA AUTOMOBILE LEMON LAW CLAIM**

18. Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

19. Plaintiff is a "Purchaser" as defined by 73 P.S. §1952.

20. Defendant is a "Manufacturer" as defined by 73 P.S. §1952.

21. Plaintiff's vehicle is a "New Motor Vehicle" as defined by 73 P.S. §1952.

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

22. Said vehicle experienced non conformities within the first year of purchase, which substantially impairs the use, value and safety of said vehicle.

23. Defendant failed to correct and or repair said nonconformities.

24. The vehicle continues to exhibit defects and nonconformities which substantially impair it's use, value and/or safety.

25. Defendant does not require participation in any informal dispute settlement program prior to filing suit.

26. As a direct and proximate result of Defendant's failure to repair the nonconformities , Plaintiff has suffered damages and, in accordance with 73 P.S. §1958, Plaintiff is entitled to bring suit for such damages and other legal and equitable relief.

27. Plaintiff avers that upon successfully prevailing upon the Lemon Law claim herein, all attorney fees are recoverable and are demanded against the Defendant.

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against the Defendant in an amount equal to three (3) times the purchase price of the subject vehicle, plus all available collateral changes and attorney fees. Amount not in excess of $50,000.00.

**COUNT II**
**MAGNUSON-MOSS FEDERAL TRADE COMMISSION IMPROVEMENT ACT**

28. Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

29. Plaintiff is a "Consumer" as defined by 15 U.S.C. §2301(3).

30. Defendant is a "Warrantor" as defined by 15 U.S.C. §2301(5).

31. Plaintiff uses the subject product for personal, family and household purposes.

32. By the terms of the express written warranties referred to in this Complaint,

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

Defendant agreed to perform effective warranty repairs at no charge for parts and/or labor.

33. Defendant failed to make effective repairs.

34. As a direct and proximate result of Defendant's failure to comply with the express written warranties, Plaintiff has suffered damages and, in accordance with 15 U.S.C. §2310(d)(1), Plaintiff is entitled to bring suit for such damages and other legal and equitable relief.

35. Section 15 U.S.C. §2310 (d) (1) provides:

> If a consumer finally prevails on an action brought under paragraph (1) of this subsection, he may be allowed by the Court to recover as part of the judgment a sum equal to the amount of aggregate amount of costs and expenses (including attorney fees based upon actual time expended), determined by the Court to have been reasonably incurred by the Plaintiff for, or in connection with the commencement and prosecution of such action, unless the Court, in its discretion shall determine that such an award of attorney's fees would be inappropriate.

36. Plaintiff avers that upon successfully prevailing upon the Magnuson-Moss claim herein, all attorney fees are recoverable and are demanded against the Defendant.

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against the Defendant in an amount equal to three (3) times the purchase price of the subject vehicle, plus all available collateral changes and attorney fees. Amount not in excess of $50,000.00.

**COUNT III**
**UNIFORM COMMERCIAL CODE**

37. Plaintiff hereby incorporates all the paragraphs of this Complaint by reference as if fully set forth at length herein.

38. The defects and nonconformities existing within the vehicle constitute a breach of contractual and statutory obligations of the Defendant, including but not limited to the following;

a. Breach of Express Warranty

b. Breach of Implied Warranty of Merchantability;

c. Breach of Implied Warranty of Fitness For a Particular Purpose;

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

d. Breach of Duty of Good Faith.

39. The purpose for which Plaintiff purchased the vehicle include but are not limited to his personal, family and household use.

40. At the time of this purchase and at all times subsequent thereto, Plaintiff has justifiably relied upon Defendant's express warranties and implied warranties of fitness for a particular purpose and implied warranty of merchantability.

41. At the time of the purchase and at all times subsequent thereto, Defendant was aware Plaintiff was relying upon Defendant's express and implied warranties, obligations, and representations with regard to the subject vehicle.

42. Plaintiff has incurred damages as a direct and proximate result of the breach and failure of Defendant to honor its express and implied warranties.

43. Such damages include, but are not limited to, the purchase price of the vehicle plus all collateral charges, including attorney fees and costs, as well as other expenses, the full extent of which are not yet known.

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against the Defendant in an amount equal to three (3) times the purchase price of the subject vehicle, plus all available collateral changes and attorney fees. Amount not in excess of $50,000.00.

**COUNT IV**
**PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION CLAIM**

44. Plaintiff hereby incorporates all the paragraphs of this Complaint by reference as if set forth at length herein.

45. The Unfair Trade Practices and Consumer Protection Law defines unfair methods of competition to include the following:

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

(xiv). Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to, or after a contract for the purchase of goods or services is made.

46. Plaintiff, as a Pennsylvania resident, believes, and therefore, avers Defendant's failure to comply with the terms of the written warranty constitutes an unfair method of competition.

47. Section 201-9.2(a) of the Unfair Trade Practices and Consumer Protection Law, authorizes the Court, in its discretion, to award up to three (3) times the actual damages sustained for violations of the Act.

WHEREFORE, Plaintiff respectfully demands judgment in his favor and against the Defendant in an amount equal to three (3) times the purchase price of the subject vehicle, plus all available collateral changes and attorney fees. Amount not in excess of $50,000.00.

DAVID J. GORBERG & ASSOCIATES, P.C.

BY:______________________________
DAVID J. GORBERG, ESQUIRE
Attorney for Plaintiff

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

# VERIFICATION

The undersigned, after having read the attached pleading verifies that the within Civil Action Complaint is based on information furnished to counsel, which information has been gathered by counsel in the course of this lawsuit. The language of the Civil Action Complaint is that of counsel and not of signer. Signer verifies that he has read the within Civil Action Complaint and that they are true and correct to the best of the signer's knowledge, information and belief. To the extent that the contents of the Civil Action Complaint are that of counsel, verifier has relied upon counsel in taking this verification. This verification is made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

X /S/ David J. Gorberg
DAVID J. GORBERG

Date: ____________

# Vehicle Report

Printed on: 07/11/2014 15:30:34

WORKBENCH Service

**VIN:** 1G1AK58F987248747 **Vehicle Model:** 2008 COBALT 4-DOOR LS SEDAN **Delivery Date:** 04/18/2008

**Service Consultant :**

## Vehicle Summary

| OnStar Status | OVD Enabled | DMN Enabled | Radio Status | Radio ID |
|---|---|---|---|---|
| Not Equipped | No | No | Equipped - InActive | WQZGY0CG |

## Required Field Actions

| Number | Type | Description | Release Date | Status |
|---|---|---|---|---|
| 10023 | Product Safety Recall | LOSS OF POWER STEERING ASSIST - REPLACE ELECTRIC POWER STEERING MOTOR | 03/18/2010 | Closed |
| 14092 | Product Safety Recall | IGNITION SWITCH REPLACEMENT | 04/03/2014 | Open |
| 14133 | Product Safety Recall | REPLACE IGNITION KEY | 04/18/2014 | Open |

## Applicable Warranties

| Description | Effective Date | Effective Odometer | End Date | End Odometer | Warranty Status |
|---|---|---|---|---|---|
| Corrosion Limited Warranty | 04/18/2008 | 61 MI | 04/18/2014 | 100061 MI | Expired |
| PZEV Emission Limited Warranty | 04/18/2008 | 61 MI | 04/18/2023 | 150061 MI | Applicable |
| Emission Select State Component Ltd Wty | 04/18/2008 | 61 MI | 04/18/2023 | 150061 MI | Applicable |
| Emission Limited Warranty | 04/18/2008 | 61 MI | 04/18/2023 | 150061 MI | Applicable |
| Powertrain Limited Warranty | 04/18/2008 | 61 MI | 04/18/2013 | 100061 MI | Expired |
| Bumper to Bumper Limited Warranty | 04/18/2008 | 61 MI | 04/18/2011 | 36061 MI | Expired |

## Service Contracts

| Policy Number | Owner Name | Description | Deductible Amount | Daily Rental Allowance | Effective Date | Effective Odometer | Expiration Date | Expiration Odometer |
|---|---|---|---|---|---|---|---|---|
| 817389849 | BLOOM | GMPP 60/60 MAJOR GUARD | $0.00 | $35.00 | 04/18/2008 | 61 MI | 04/18/2013 | 60061 MI |

## Service Information

| Type | Number | Description | Date Posted |
|---|---|---|---|
| | | No information found for this vehicle. | |

## Vehicle Transaction History

| Service Date | R.O. Number | Transaction Type | OP Code | Description | Odometer Reading | Service Type |
|---|---|---|---|---|---|---|
| 03/07/2013 | 236812 | ZSCT | E2147 | Stabilizer Shaft Link Replacement - Both Sides | 31622 MI | Warranty |
| 03/07/2013 | 236812 | ZSCT | E3651 | Strut, Front - Left - Replace | 31622 MI | Warranty |
| 03/07/2013 | 236812 | ZSCT | E3557 | Front Lower Control Arm Bushing Replacement - Both Sides | 31622 MI | Warranty |
| 03/07/2013 | 236812 | ZFAT | V2220 | 10023 - Replace Power Steering Assist Motor (Including Test Drive) | 31622 MI | Warranty |
| 10/05/2012 | 0158708 | ZREG | N6604 | Ignition System Wiring and/or Connector Repair or Replacement | 27106 MI | Warranty |

Please Note: This document may be considered current for 24 hours from the time it was printed.



Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

# Vehicle Report

Printed on: 07/11/2014 16:30:34

WORKBENCH Service

**VIN:** 1G1AK58F987248747 **Vehicle Model:** 2008 COBALT 4-DOOR LS SEDAN **Delivery Date:** 04/18/2008

**Service Consultant :**

## Vehicle Transaction History

| Service Date | R.O. Number | Transaction Type | OP Code | Description | Odometer Reading | Service Type |
|---|---|---|---|---|---|---|
| 02/08/2010 | 203588 | ZREG | E7200 | Ignition Lock Cylinder Replacement | 8367 MI | Warranty |
| 02/05/2010 | 797998 | ZREG | Z2080 | ROADSIDE SERVICE (TOWING) | 8000 MI | Warranty |
| 03/07/2008 | 014040 | ZPDI | Z6999 | PDI Related Fluid Adds | 4 MI | Warranty |
| 02/21/2008 | A48747 | ZPDI | Z7000 | Pre-Delivery Inspection - Base Time | 0 MI | Warranty |

## Repair Order History

| R.O. Closure Date | R.O. Number | Service Location | 1st R.O. Job Description Text | R.O. Job Count | Job Type Indicators | Vehicle R.O. Mileage |
|---|---|---|---|---|---|---|
| 03/08/2013 | 236812 | PA | REPLACE POWER STEERING ASSIST MOTOR | 4 | W | 31625 MI |
| 10/24/2012 | 158708 | PA | WIRING AND OR CONN | 2 | W | 27106 MI |

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

Please Note: This document may be considered current for 24 hours from the time it was printed.

TOM HESSER CHEVROLET/BMW, INC.
1001 N. WASHINGTON AVENUE
SCRANTON, PA 18509
TELEPHONE (570) 343-1221
(800) 435-9566
www.tomhesser.com

CUSTOMER #: 86534

252097

*INVOICE*

KAREN BLOOM
237 LIDY RD
DUPONT, PA 18641-2149
HOME:570-313-3193 CONT:570-313-3193
BUS: CELL:

PAGE 1

SERVICE CONSULTANT 1163 NICOLA DOUGHER

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|---|---|---|---|---|---|---|
| | 08 | CHEVROLET COBALT | 1G1AK58F987248747 | | 40237/40237 | T3537 |

| DEL. DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 1JAN08 DD | | | WAIT 25JUL14 | | 91.00 | CASH | 25JUL14 |

| R.O. OPENED | READY | OPTIONS: |
|---|---|---|
| 25JUL14 | 25JUL14 | ENG:2.2_Liter_MFI_DOHC |

LINE OPCODE TECH TYPE HOURS LIST NET TOTAL

A #14092A Service Parts Safety - Ignition Switch Replacement
CAUSE: INSTALLED SWITCH
9100468 REPLACE IGNITION & START SWITCH
1112 WC 0.40 (N/C)
1 23237272 SWITCH (N/C)
FC: 9090
PART#: 23237272
COUNT: 1
CLAIM TYPE: ZFAT
AUTH CODE:

**************************************************

B #14350 Product Safety - Replace Ignition Key
CAUSE: CUT AND PROGRAMED KEYS
9100491 CUT TWO KEYS AND PERFORM KEY LEARN PROCEDURE
1112 WC 0.40 (N/C)
FC: 9090 PART#: COUNT:
CLAIM TYPE: ZFAT
AUTH CODE:

**************************************************

DEAR CUSTOMER,
YOUR SATISFACTION IS OUR #1 GOAL. IF YOU CAN'T IN GOOD FAITH SCORE THE MANUFACTURERS SURVEY QUESTIONS AS COMPLETELY SATISFIED, PLEASE CONTACT US. WE WILL DO EVERYTHING IN OUR POWER TO DESERVE A COMPLETELY SATISFIED RESPONSE FROM YOU. THANK YOU.

**STATEMENT OF DISCLAIMER**

The factory warranty constitutes all of the warranties with respect to the sale of this item/items. The Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of this item/items.

CUSTOMER SIGNATURE

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | 0.00 |
| PARTS AMOUNT | 0.00 |
| GAS, OIL, LUBE | 0.00 |
| SUBLET AMOUNT | 0.00 |
| MISC. CHARGES | 0.00 |
| TOTAL CHARGES | 0.00 |
| LESS INSURANCE | 0.00 |
| SALES TAX | 0.00 |
| PLEASE PAY THIS AMOUNT | 0.00 |

CUSTOMER COPY

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 3:52 PM, Fee = $152.00

(12)

**PENNSYLVANIA**
**MOTOR VEHICLE INSTALLMENT SALE CONTRACT,** Dated 04/18/2008

**SIMPLE INTERES**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 4382.23 |
|---|---|---|---|---|
| 5.49 % | $ 2305.14 | $ 13102.14 | $ 15407.28 | $ 19789.51 |

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 213.99 | Monthly, beginning 05/18/2008 |
| | $ N/A | |

Security: You are giving a security interest in the motor vehicle being purchased.

Prepayment: If you pay off early, you will not have to pay a penalty.

92.0110536

Filing Fees: $ 5.00

Late Charge: If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties. e means estimate

In this Contract we are the SELLER. BONNER CHEVROLET CO INC 694 WYOMING AVENUE KINGSTON PA 18704-
Name Address Zip Code

You are the BUYER(S). KAREN BLOOM 237 LIDY RD DUPONT, PA 18641-
Name(s) Address(es) Zip Code(s)

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

**TRADE-IN:**
You have traded in the following vehicle: 1999 Chevrolet Blazer 1GNDT13WXX2150380
Year and Make Description

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the Itemization of Amount Financed as the "Lien Payoff."

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

By signing, you select Single Credit Life Insurance, which costs $ N/A What is your age? ____ Years

Signature of Buyer to be Insured for Single Credit Life Insurance

By signing, you select Single Credit Accident & Health Insurance, which costs $ N/A What is your age? ____ Years

Signature of Buyer to be Insured for Single Credit Accident & Health Insurance

By signing, you both select Joint Credit Life Insurance, which costs $ N/A What are your ages?

1. ____
2. ____
Signatures of both Buyers to be Insured for Joint Credit Life Insurance

By signing, you both select Joint Credit Accident & Health Insurance, which costs $ N/A What are your ages? Percentage to be insured

1. ____ %
2. ____ %
Signatures of both Buyers to be Insured for Joint Credit Accident & Health Insurance

Insurer:

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| N | 2008 Chevrolet | Cobalt | SDN | 4 | | 1G1AK58F987248747 |

Equipped with ___ A.T. ___ P.S. ___ AM-FM Stereo ___ 5 Spd. Other ___
___ A.C. ___ P.W. ___ AM-FM Tape ___ Vinyl Top ___

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

**FIRST NATIONAL COMMUNITY BANK**
**DUNMORE, PENNSYLVANIA**

IF YOU DO NOT MEET YOUR CONTRAC OBLIGATIONS, YOU MAY LOSE THE MOTO VEHICLE AND PROPERTY THAT YO BOUGHT WITH THIS CONTRACT, AND/O MONEY ON DEPOSIT WITH THE ASSIGNEE

This Contract is between Seller and Buyer. A disclosures have been made by Seller. Sel intends to assign this Contract to the Assignee

**Itemization of Amount Financed**

| Item | Amount |
|---|---|
| Cash Price | $ 15965.00 |
| Cash Downpayment | $ 2000.00 |
| Trade-In Value of Trade-In | $ 2382.23 |
| Lien Payoff to: | $ N/A |
| Unpaid Cash Price Balance | $ 11582.77 |
| Paid to Others on Your Behalf: To Credit Insurance Company | $ N/A * |
| To Public Officials for: License, Tags and Registration | $ 28.50 |
| Lien Fee | $ 5.00 |
| To DOC FEE/TIRE | $ 59.50 * |
| To SVC CONTRACT | $ 690.00 * |
| To | $ N/A * |
| To TAXES | $ 736.37 * |
| Amount Financed | $ 13102.14 |
| Finance Charge | $ 2305.14 |
| Total of Payments (Time Balance) | $ 15407.28 |

*We may retain a portion of amounts marked

Payment Schedule - You agree to pay to us the Amount Financed plus interest in 71 payments of $ 213.99 each, and a final payment of

Case# 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

DUNMORE, PENNSYLVANIA

| | |
|---|---|
| **CO-SIGNER:** Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.<br>**CO-OWNER:** Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.<br>**TERMS:** The terms shown in the boxes above are part of this Contract. | each, and a final payment of $ 213.99. The first payment will be due on MAY 18 2008, and then payments will be due on that same day of each month following. |

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-in, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

**ADDITIONAL TERMS AND CONDITIONS: THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.**

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

SELLER BONNER CHEVROLET CO INC

BY: [signature] Treas. 04/18/2008 Date

**NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

BUYER [signature] (SEAL) 04/18/2[illegible] Date

BUYER ______ (SEAL) ______ Date

**CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.**

**CO-SIGNER'S AGREEMENT:** You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

______ (SEAL) Co-Signer's Signature ______ Address ______ Date

______ (SEAL) Co-Signer's Signature ______ Address ______ Date

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a Security Interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

______ (SEAL) Co-Owner's Signature ______ Address ______ Date

**BUYER, CO-SIGNER AND CO-OWNER, AS APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

BUYER [signature] ______ BUYER ______ CO-SIGNER ______ CO-SIGNER OR CO-OWNER

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

BANCONSUMER FORM PA 123-SLC 2/1/2004

ORIGINAL - White • DEALER COPY - Canary • BORROWER'S/CO-SIGNER'S COPY - Pink • COPY - Goldenrod

© 2004 BANCONSUMER SERVICE, INC.

CANCELED

MAR 17 20[illegible]

F.N.C.B.

(4)

# ADDITIONAL TERMS AND CONDITIONS

**1. SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

**2. HOW THE TOTAL OF PAYMENTS IS COMPUTED:** The Total of Payments is the sum of the Amount Financed and the Finance Charge. The Finance Charge consists solely of interest computed daily on the outstanding balance of the Amount Financed. The Finance Charge shown on the front side has been computed on the assumption that we will receive all payments on their scheduled due dates.

**3. COMPUTING INTEREST:** We will charge interest on a daily basis on the outstanding balance subject to interest on each day of the loan term, including any period for which a late charge is also imposed. The daily interest rate is equal to the Annual Percentage Rate divided by the number of days in that calendar year. Buyer agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge). Early payments will result in less interest being charged. Early and/or late payments will cause the amount of the final payment to change.

**4. LATE CHARGE:** Buyer agrees to pay a late charge for any payment not made within 10 days after its due date. The late charge will be 2% per month on the unpaid amount of the payment. We will consider any part of a month in excess of 10 days to be a full month. The late charge will be due when earned. No late charge will be due if the reason that the payment is late is because, after default, the entire outstanding balance on this Contract is due. No late charge will be due if the only reason that the payment is late is because of a late charge assessed on an earlier payment.

**5. APPLICATION OF PAYMENTS:** We will apply payments in the following order of priority: first to interest; and then to late charges, fees, principal and any other amounts you owe in the order that we choose.

**6. PREPAYMENT:** You may prepay, in full or in part, the amount owed on this Contract at any time without penalty. If you prepay the Contract in part, you agree to continue to make regularly scheduled payments until you pay all amounts due under this Contract. This will reduce the number of payments you will make.

**7. WAIVERS.**

**a. WAIVER BY SELLER AND ASSIGNEE:** We and Assignee waive the right to treat any property as security for the repayment of this Contract, except for the Vehicle and the other security specifically mentioned in this Contract.

**b. WAIVERS BY BUYER, CO-SIGNER AND CO-OWNER:** You agree to make all payments on or before they are due without our having to ask. If you don't, we may enforce our rights without notifying you in advance. You give up any right you may have to require that we enforce our rights against some other person or property before we enforce our rights against you. You agree that we may give up our rights against some other person but not against you. You waive due diligence in collection and all defenses based on suretyship and impairment of collateral or security.

**8. INTEREST AFTER MATURITY AND JUDGMENT:** Interest at the rate provided in this Contract shall continue to accrue on the unpaid balance until paid in full, even after maturity and/or after we get a judgment against you for the amounts due. This will apply even if the maturity occurs because of acceleration. If at any time interest as provided for in this paragraph is not permitted by law, interest shall accrue at the highest rate allowed by applicable law beginning at that time.

**9. YOUR PROMISES ABOUT OUR SECURITY INTEREST:** You will not permit anyone other than us to obtain a security interest or other rights in the Vehicle. You will pay all filing fees necessary for us to obtain and maintain our security interest in the Vehicle. You will assist us in having our security interest noted on the Certificate of Title to the Vehicle. You will not sell or give away the Vehicle. If someone puts a lien on the Vehicle, you will pay the obligation and clear the lien.

**10. YOUR PROMISES ABOUT THE VEHICLE:** You will keep the Vehicle in good condition and repair. You will pay all taxes and charges on the Vehicle. You will pay all costs of maintaining the Vehicle. You will not abuse the Vehicle or permit anything to be done to the Vehicle which will reduce its value, other than for normal wear and use. You will not use the Vehicle for illegal purposes or for hire or lease. You will not move the Vehicle from your address shown on the front of this Contract to a new permanent place of garaging without notifying us in advance.

**11. YOUR PROMISES ABOUT INSURANCE:** You will keep the Vehicle insured against fire, theft and collision until all sums due us are paid in full. The insurance coverage must be satisfactory to us and protect your interests and our interests at the time of any insured loss. The insurance must name us as "loss-payee" on the policy. The insurance must be written by an insurance company qualified to do business in Pennsylvania and licensed to sell insurance in the state where the Vehicle is permanently garaged. The insurance policy must provide us with at least ten (10) days prior written notice of any cancellation or reduction in coverage. On request, you shall deliver the policy or other evidence of insurance coverage to us. In the event of the loss or damage to the Vehicle, you will immediately notify us in writing and file a proof of loss with the insurer.

**a. OUR RIGHT TO FILE PROOF OF LOSS:** In the event of any loss or damage to the Vehicle, if you fail or refuse to file a claim or proof of loss with the insurance company, you agree that the Seller, Assignee, any subsequent assignee, or any authorized employee of any of them ("we") may file a proof of loss with the insurance company, in your name and acting as your agent, with respect to the insured claim. You agree that you do not have the right to and will not revoke the power you have given us to file a proof of loss. You agree that we may exercise this power for our benefit and not for your benefit, except as provided in this Contract and by law.

**b. OUR RIGHT TO ENDORSE INSURANCE CHECKS:** You agree that the Seller, Assignee, any subsequent assignee, or any authorized employee of any of them ("we") may endorse your

**12. OUR RIGHTS IF YOU BREAK YOUR PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE:** If you fail to keep your promises to pay filing fees, taxes, liens or the costs necessary to keep the Vehicle in good condition and repair, we may advance any money you promised to pay. If you fail to keep your promises about required insurance, we may advance money to obtain insurance to cover loss or damage to the Vehicle. We have the choice of whether or not to advance any money for these purposes. Such insurance will be limited to an amount not greater than you owe on this Contract. THE INSURANCE WE PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE YOU LESS COVERAGE THAN INSURANCE YOU COULD PURCHASE YOURSELF.

We will add any money we advance on your behalf to the balance on which we impose Finance Charges at the Annual Percentage Rate of this Contract. You agree to repay the money advanced as we alone may specify: (i) immediately on demand, or (ii) along with your monthly payments. If we choose to allow you to repay the money advanced along with your monthly payments, we can choose the amount of these payments and how long you have to repay. If any of our rights stated in this paragraph are not permitted by law, we still have the other rights mentioned. Our payments on your behalf will not cure your failure to perform your promises in this Contract.

**13. DEFAULT:** In this paragraph "You" means the Buyer, Co-Signer and Co-Owner, or any one of them. You will be in "Default" of the Contract if any one or more of the following things happen:

a. You do not make any payment on or before it is due; or

b. You do not keep any promise you made in this Contract; or

c. You do not keep any promise you made in another Contract, Note, Loan or Agreement with Seller or Assignee; or

d. You made any untrue statement in the credit application for this Contract; or

e. You committed any forgery in connection with this Contract; or

f. You die, are convicted of a crime involving fraud or dishonesty, or are found by a court with jurisdiction to do so to be incapacitated; or

g. You file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against you; or

h. You take the Vehicle outside the United States or Canada without our written consent; or

i. You use the Vehicle or allow someone else to use it in a way that causes it not to be covered by your insurance; or

j. You do something that causes the Vehicle to be subject to confiscation by government authorities; or

k. The Vehicle is lost, stolen, destroyed or damaged beyond economical repair, and not fixed or found within a reasonable time; or

l. Another creditor tries to take the Vehicle or your money on deposit with Assignee by legal process.

**14. OUR RIGHTS IF YOU ARE IN DEFAULT OF THIS CONTRACT:** If you are in Default of this Contract, we may enforce our rights according to law. We may also do the things specifically mentioned in this Contract. We may do one of these things and at the same time or later do another. Some of the things we may do are the following:

**a. ACCELERATION:** We can demand that you pay to us the entire unpaid balance owing on the Contract and all unpaid Finance Charges and other money due. You agree that you will pay this money to us in one single payment immediately upon receiving our demand.

**b. REPOSSESSION:** We can repossess the Vehicle, unless prohibited by law. We can do this ourselves, have a qualified person do it for us, or have a government official (by replevin) do it for us. You agree that we can peaceably come on to your property to do this. We may take any other things found in the Vehicle, but will return these things to you if you ask. If you want these things back, you may reclaim them within thirty (30) days of our mailing you a Notice of Repossession. If you do not reclaim the things found in the Vehicle within that time, we may dispose of those things in the same manner as the motor vehicle. You agree that we may use your license plates in repossessing the Vehicle and taking it to a place for storage.

**c. VOLUNTARY DELIVERY:** We can ask you to give us the Vehicle at a reasonably convenient place. You agree to give us the Vehicle if we ask.

**d. DELAY IN ENFORCEMENT:** We can delay enforcing our rights under this Contract without losing any rights.

**15. SOME THINGS YOU SHOULD KNOW IF WE REPOSSESS THE VEHICLE:** If we repossess without using a government official (by replevin):

**a. NOTICE:** We will send you a Notice of Repossession to your last address we know about. This Notice will tell you how to buy back (redeem) the Vehicle. You will NOT have the right to reinstate the Contract. This means you will have to pay the total balance on the Contract and other amounts due. You may not get the Vehicle back by paying delinquent installments. This Notice will tell you other information required by law.

**b. REDEMPTION:** You have the right to buy back (redeem) the Vehicle within 15 days of the mailing of the Notice and at any later time before we sell the Vehicle. If you redeem the Vehicle, we will deliver the Vehicle to you at a place as provided by law, as soon as is reasonably possible, but in not more than ten (10) business days of our receipt of the funds required. If you do not redeem, you give up all claim to the Vehicle.

**c. SALE:** If you don't redeem, we will sell the Vehicle. The money received at sale will be used to pay costs and expenses you owe, and then to pay the amount you owe on the Contract.

**d. SURPLUS OR DEFICIENCY:** If there is money left, we will pay it to the Buyer. If there is not enough money from the sale to pay what you owe, Buyer and Co-Signer agree to pay what is still owed to us.

**e. EXPENSES:** You agree to pay the costs of repossessing, storing, repairing, preparing for sale and selling the Vehicle as may be allowed by law. These costs will only be due if:

1. Default exceeds fifteen (15) days at the time of repossession;
2. The amount of costs are actual, necessary and reasonable; and
3. We can prove the costs were paid.

**16. HEIRS AND PERSONAL REPRESENTATIVES BOUND:** After your death, this Contract shall be enforceable against your heirs and personal representatives of your estate.

Case # 2014-10215-0 Received at Luzerne County Prothonotary on 09/05/2014 12:52 PM, Fee = $152.00

Contract and by law.

b. OUR RIGHT TO ENDORSE INSURANCE CHECKS: You agree that the Seller, Assignee, any subsequent assignee, or an authorized employee of any of them ("we") may endorse your name, acting as your agent, to any check, draft or other instrument we receive in payment of an insured loss or return of insurance premiums. You agree that you do not have the right to and will not revoke the power you have given us to make your endorsement. You agree that we may exercise this power for our benefit and not for your benefit, except as provided in this Contract and by law.

c. USE OF PROCEEDS: We may apply any insurance proceeds we receive to repair or replace the Vehicle if, in our opinion, it is economically feasible and you are not then in default of this Contract. Otherwise, we will apply the insurance proceeds to reduce the unpaid balance due us. After the balance due us is paid, any excess will belong to you.

3. We can prove the costs were paid.

16. HEIRS AND PERSONAL REPRESENTATIVES BOUND: After your death, this Contract sh[illegible] be enforceable against your heirs and personal representatives of your estate.

17. GOVERNING LAW: This Contract is to be interpreted according to the law of Pennsylvania.

18. SEVERABILITY OF PROVISIONS: If for any reason any part of this Contract shall become illegal, void or unenforceable, that part shall not be a part of this Contract.

19. ASSIGNMENT BY BUYER: Buyer shall not assign this Contract.

20. THERE ARE NO WARRANTIES BY SELLER, EXPRESSED OR IMPLIED, INCLUDING TH[illegible] WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE UNLESS WE HAVE GIVEN YOU A SEPARATE WRITTEN WARRANTY OR UNLESS SE[illegible] ENTERS INTO A SERVICE CONTRACT WITH BUYER WITHIN 90 DAYS FROM THE DATE O[illegible] THIS CONTRACT.

**Buyer's Guide Window Sticker.** If the Car which is described on the face of this Contract has a Buyer's Guide Window Sticker required by the Fede[illegible] Trade Commission Used Car Trade Regulation Rule, the following notice applies:

**The information you see on the window form for this Vehicle is part of this Contract. Information on the window form overrides a[illegible] contrary provisions in the contract of sale.**

**NOTICE—ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COU[illegible] ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVE[illegible] HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**NOTICE OF PROPOSED CREDIT INSURANCE**

The signer(s) of this Contract hereby take(s) notice that Group Credit Life Insurance coverage or Group Credit Accident and Disability Insurance coverage will be applicable to this Contract if so marked on the front of this Contract, and each such type of coverage will be written by the insurance company named. This insurance, subject to acceptance by the insurer, covers only the person or persons signing the request for such insurance. The amount of charge is indicated for each type of Credit Insurance to be purchased. The term of insurance will commence as of the date the indebtedness is incurred and will expire on the original scheduled maturity date of the indebtedness. Subject to acceptance by the insurer and within 30 days, there will be delivered to the insured debtor(s) a certificate of insurance more fully describing the insurance. In the event of prepayment of the indebtedness, a refund of insurance charges will be made when due.

**NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.**

**THE PROVISION BELOW IS NOT PART OF THE PENNSYLVANIA MOTOR VEHICLE INSTALLMENT SALE CONTRACT BETWEEN THE BUYER AND SELLER.**

**ASSIGNMENT**

To induce you, the "Assignee" identified on the face of this Contract or as follows, ______________________ (Name), to purchase the within Contract, the Seller hereby warrants and represents, and continues to warrant and represent that: the sale has been made in strict conformity with all applicable federal, state and local laws and regulations, including, but not limited to, Article 2 of the Pennsylvania Uniform Commercial Code (13 Pa. C.S.A. §§2101 et seq); our title to the Contract and the Vehicle covered thereby is absolute, free of all liens, encumbrances and security interests, and is subject only to the rights of the Buyer as set forth therein; the Contract is genuine, the signatures thereon are not forgeries, arose from the sale of the Vehicle therein described, and all parties thereto are of full age and had capacity to contract; the description of the Vehicle and extra equipment is complete and correct; the cash downpayment and/or trade-in allowance were actually received and no part thereof consisted of notes, post-dated checks, other credit advanced by us to Buyer or rebates or similar payments from us to the Buyer (however manufacturer rebates may constitute all or a part of the downpayment); all warranties and statements therein are true; there is owing thereon the Amount Financed plus interest at the Annual Percentage Rate of the Contract set forth therein; we are duly licensed under the Pennsylvania Motor Vehicle Sales Finance Act and have duly complied with all requirements thereof with respect to the transaction and with the federal Truth-in-Lending Act and with any other federal or state law, rule or regulation applicable to this Contract; a motor vehicle title certificate showing a lien or encumbrance in favor of Assignee has been or will be applied for promptly; the registration of the Vehicle has not been suspended and the Seller knows of no facts which may result in the suspension of said registration under the Pennsylvania Motor Vehicle Financial Responsibility Act; the Buyer(s) named in the within Contract is (are) personally known to the Seller to be the same identical person(s) whose signature(s) is (are) affixed to this Contract; and Seller has no knowledge of facts impairing the validity or value of the Contract. If any such warranties or representations should be breached at any time, Seller shall repurchase said Contract from Assignee, on demand, and will pay therefor, in cash, the amount owing thereon, computed as set forth below, and said remedy shall be cumulative and not exclusive, and shall not affect any other right or remedy that Assignee might have at law or in equity against Seller. In the event that Buyer fails or refuses to make any payment due hereunder on the assertion, either oral or written, that the Vehicle is defective, not as represented to the Buyer by Seller, or that Seller refuses to honor any warranty or service agreement of Seller or manufacturer, Seller agrees that, on being advised by Assignee of such claim of Buyer, Seller will repurchase the Contract from Assignee and pay Assignee for same immediately in accordance with the repurchase terms set forth below, and Seller further agrees to hold Assignee harmless from any other claims of Buyer, including attorneys' fees, costs and expenses incurred in defending against claims asserted by Buyer and including claims for refund of payments made by Buyer to Assignee. If the Seller contracts to purchase property insurance on behalf of the Buyer, and that insurance is cancelled by the insurance company prior to its scheduled expiration date, Seller will attempt to place comparable coverage with another insurance company on behalf of the Buyer. If Seller is unable to do so, Seller will notify Buyer and pay to Buyer any additional costs incurred by the Buyer in obtaining replacement insurance for the unexpired period of the original insurance policy. By signing and dating the Contract, as Seller, delivering the Contract to the Assignee and accepting payment for it, Seller authorizes the Assignee to act as the Seller's agent for the purpose of completing or correcting the identification of the Assignee in this Assignment to reflect the true Assignee who purchased the Contract and/or for the purpose of signing Seller's name to this Assignment, without recourse, if the Assignment is delivered without the Seller's signature. Assignee may exercise the power given in this paragraph for the benefit of the Assignee and not for the benefit of the Seller. Seller does not have the right to and agrees not to revoke the power given in this paragraph.

In the event that Seller is required by this Assignment to repurchase the Contract and/or Vehicle, Seller shall pay to Assignee, in cash, the full unpaid balance of the Contract as of the date of repurchase, plus any then earned Finance Charge and any and all costs and expenses paid or incurred by Assignee in respect thereto, including reasonable attorneys' fees, in connection with claims by or against any Buyer, Owner or persons in possession of the Vehicle and/or by or against Seller.

For value received, Seller hereby sells, assigns and transfers unto the Assignee, its successors and assigns, the within Contract, all moneys due and to become due thereunder, and all right, title and interest in and to the Vehicle therein described, with full power in the Assignee in its or our name to take such legal or other action which we might have taken save for this Assignment. Unless Seller marks either of the endorsements below, titled "WITH FULL RECOURSE" or "WITH REPURCHASE," Seller's assignment shall, except for the provisions of the paragraph titled "Assignment," be without recourse.

☐ WITH FULL RECOURSE—Seller agrees that, in addition to the paragraph above titled "Assignment," in the event of default by Buyer in the full payment on the due date thereof of any installment payable under the Contract or in the prompt performance of any other obligation to be performed under the Contract by Buyer, Seller will, on demand by Assignee, forthwith repurchase the Contract from Assignee for a repurchase price, in cash, computed as set forth above.

☐ WITH REPURCHASE—Seller agrees that, in addition to the provisions of the paragraph above titled "Assignment," in the event of any default by Buyer which shall entitle Assignee to repossess the Vehicle, Seller will, if the Vehicle is repossessed by Assignee and delivered to Seller, and without regard to the then condition of the Vehicle, forthwith repurchase the Contract and the Vehicle from Assignee for a repurchase price, in cash, computed as set forth above.

By signing below, we agree to the terms of the Assignment.

Seller ______________________ By ______________________ ________ Date

BANCONSUMER FORM PA 123-SLC 2/1/2004