# Exhibit 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

In re:                                                    :         Chapter 11
                                                          :
MOTORS LIQUIDATION COMPANY, *et al.*,                     :         Case No.: 09-50026 (REG)
         f/k/a General Motors Corp., *et al.*            :
                                                          :         (Jointly Administered)
                Debtors.                                  :
------------------------------------------------------------------ x

## DECLARATION OF SCOTT I. DAVIDSON

I, Scott I. Davidson, hereby declare under the penalty of perjury, pursuant to 28 U.S.C. §
1746, that the following is true and correct to the best of my knowledge, information and belief.

1.       I am counsel in the law firm of King & Spalding LLP, attorneys for General
Motors LLC ("**New GM**") in the above-captioned matter. I am familiar with the statements set
forth below based on my personal knowledge, and my review of relevant documents. I submit
this declaration in support of the *Opening Brief By General Motors LLC On Threshold Issues
Concerning Its Motions To Enforce The Sale Order And Injunction*, filed simultaneously
herewith.

2.       On June 1, 2009, General Motors Corporation (now known as Motors Liquidation
Company) ("**Old GM**") filed for bankruptcy protection in the United States Bankruptcy Court
for the Southern District of New York ("**Bankruptcy Court**"). On June 12, 2009, Old GM
sought approval from the Bankruptcy Court to retain and employ The Garden City Group
("**GCG**") as Old GM's claim and noticing agent. *See Application Of Debtors For Entry Of
Order Pursuant To 28 U.S.C. § 156(C) Authorizing Retention And Employment Of The Garden*

1

*City Group, Inc. As Notice And Claims Agent Nunc Pro Tunc To The Commencement Date*, dated June 12, 2009 [Dkt. No. 953] ("**GCG Application**").[1]

3.      GCG's engagement letter (attached as Exhibit "A" to the GCG Application) sets forth certain fees GCG was proposing to charge Old GM for various tasks. Included in the proposal was a charge for mailing notices ("**Sale Notice**") of the sale ("**363 Sale**") of substantially all of the assets from Old GM to New GM. Specifically, Schedule "A" attached to GCG's engagement letter provides as follows:

The notice of commencement, which is usually a 2-4 page document, would be quoted in the range of $0.15 per packet plus postage if mailed to 1.5 million addresses and within these specifications. *The notice of sale, assuming it is 4-6 pages, is quoted at $.20 per packet.* This is an "all in" price and there are no extra charges for labor, copy charges, envelopes, labels. stuffing, etc. All of our volume discount quotes will be "all in." *The only additional cost will be postage* and we will do a zip code presort to get the best postage discount rate for the mailing. [emphasis added]

4.      On June 25, 2009, the Bankruptcy Court authorized Old GM to retain GCG as its claims and noticing agent. *See Order Pursuant To 28 U.S.C. § 156(C) Authorizing Retention And Employment Of The Garden City Group, Inc. As Notice And Claims Agent Nunc Pro Tunc To The Commencement Date*, dated June 25, 2009 [Dkt. No. 2549] ("**GCG Order**").[2]

5.      According to an inquiry I made to GCG in June 2014, GCG informed me that direct mail notice of the Sale Notice was provided to approximately 4,350,000 individuals and entities at a cost of approximately $3 million. *See* E-mail ("**Gargan E-Mail**")[3] from Kimberly Gargan (from GCG) to Scott Davidson, dated June 16, 2014 at 5:11 p.m. According to the

---

[1]  A true and correct copy of the GCG Application is annexed hereto as Exhibit "A."

[2]  A true and correct copy of the GCG Order is annexed hereto as Exhibit "B."

[3]  A true and correct copy of the Gargan E-Mail is annexed hereto as Exhibit "C."

Gargan E-mail, printing labor and materials for the three-page Sale Notice cost $0.175 per notice; postage for the notice was $0.44, for a total of $0.615 per notice.

6.      According to the Declaration of Michael Yakima, which is being filed with the Bankruptcy Court simultaneously herewith, there were a total of 70,535,565 Old GM manufactured vehicles in operation in the United States as of June 30, 2009.

7.      Assuming the same GCG pricing structure, if Old GM had provided direct mail notice of the Sale Notice to all owners of Old GM manufactured vehicles in operation in the United States as of June 30, 2009, it would have cost Old GM approximately $43.4 million – or more than 14 times greater than what it actually cost Old GM to provide direct mail notice of the 363 Sale.

Dated:   November 5, 2014

_____
SCOTT I. DAVIDSON

# Exhibit A

09-50026-mg    Doc 12982-1    Filed 11/05/14    Entered 11/05/14 17:16:14    Exhibit 1
Pg 6 of 42
09-50026-reg    Doc 953    Filed 06/12/09    Entered 06/12/09 14:37:16    Main Document
Pg 6 of 23
Hearing Date and Time: June 25, 2009 at 9:45 a.m. (Eastern Time)
Objection Date and Time: June 19, 2009 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                        :
In re                                   :           Chapter 11 Case No.
                                        :
GENERAL MOTORS CORP., et al.,           :           09-50026 (REG)
                                        :
               Debtors.                 :           (Jointly Administered)
                                        :
------------------------------------------------------------x
```

**APPLICATION OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO**
**28 U.S.C. § 156(c) AUTHORIZING RETENTION AND EMPLOYMENT OF THE**
**GARDEN CITY GROUP, INC. AS NOTICE AND CLAIMS AGENT**
***NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation and certain of its subsidiaries, as debtors and debtors

in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully

represent:

**<u>Jurisdiction</u>**

1.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

09-50026-reg    Doc 953    Filed 06/12/09    Entered 06/12/09 22:27:37    Main Document
Pg 7 of 42

## Relief Requested

2.       By this Application, the Debtors seek entry of an order pursuant to 28

U.S.C. § 156(c) to approve the retention and employment The Garden City Group, Inc. ("**GCG**")

as notice and claims agent ("**Agent**") of the Clerk of the Bankruptcy Court ("**Court**") *nunc pro*

*tunc* to the Commencement Date, and to approve the assumption of a related agreement, in order

to assume full responsibility for the distribution of notices and proofs of claim, to maintain,

process and docket proofs of claim filed in the chapter 11 cases, and to perform such other

services as the Debtors and the Court require.  The Debtors' selection of GCG to act as the Agent

has satisfied the Court's protocol for the retention of GCG, where the Debtors have obtained and

reviewed engagement proposals from other Court approved claims agents to ensure selection

through a competitive process.  Moreover, the Debtors submit that based on all engagement

proposals obtained and reviewed, that GCG would provide the most cost effective and efficient

service as Agent in these chapter 11 cases.

3.       In view of the complexity of these chapter 11 cases and the anticipated

number of entities to be noticed, the Debtors submit that the appointment of an Agent is both

necessary and in the best interests of the Debtors' estate and their creditors.  GCG is one of the

country's leading Chapter 11 administrators with expertise in noticing, claims processing,

balloting administration and distribution.  GCG has also acted as the Agent in several cases

which are currently pending in this Court.  GCG is well qualified to provide experienced noticing,

claims processing and balloting administration services in connection with these chapter 11

cases.

## Services To Be Provided

4.      GCG is authorized and directed to perform all related tasks to process the proofs of claims and maintain a claims register including, without limitation:

a. notify all potential creditors of the filing of the bankruptcy petition and of the setting of the first meeting of creditors, pursuant to §341(a) of the Bankruptcy Code, under the proper provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure;

b. maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

c. notify all potential creditors of the existence and amount of their respective claims as evidenced by the Debtors' books and records and set forth in the Schedules;

d. furnish a notice of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court;

e. file with the Court a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date the notice was mailed, within ten (10) days of service;

f. docket all claims received and maintain the official claims register (the "**Claims Register**") on behalf of the Court;

g. specify, in the Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification(s) of the claim (e.g., secured, unsecured, priority, etc.);

h. record all transfers of claims and provide any notices of such transfers required by Rule 3001 of the Federal Rules of Bankruptcy Procedure;

i. make changes in the Claims Register pursuant to Court Order;

j. maintain the official mailing list for the Debtors of all entities that have filed a proof of claim, which list shall be available upon request by a party-in-interest or the Court;

k. assist with, among other things, solicitation and calculation of votes and distribution as required in furtherance of confirmation of a plan of reorganization;

l. thirty (30) days prior to the close of these chapter 11 cases, an Order dismissing GCG shall be submitted terminating the services of the GCG upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases; and

09-50026-reg  Doc 953  Filed 06/12/09  Entered 06/12/09 22:17:16  Main Document
Pg 9 of 29

m. at the close of these chapter 11 cases, box and transport all original documents in proper format, as provided by the Court, to the Federal Records Center.

5.      In connection with retention as Agent, GCG will not employ any past or present employees of the Debtors in connection with its work as Agent. The terms of GCG's retention are set forth in Exhibit A annexed hereto.

6.      As more fully described in the Affidavit of Neil L. Zola, President and Chief Operating Officer of GCG, annexed hereto as Exhibit B, neither GCG nor any of its employees have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their professionals.

7.      GCG has received a retainer in the amount of $1,850,000.00 from the Debtors and will apply same first against all pre-petition fees and expenses and then against the last bill for fees and expenses that GCG will render in these chapter 11 cases.

## Notice

8.      Notice of this Application has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the United States Department of the Treasury, (iii) the attorneys for Export Development Canada, (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases, (vii) the attorneys for the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the United States Department of Labor, (x) the attorneys for the National

Automobile Dealers Association, (xi) the attorneys for the ad hoc bondholders committee, (xii) the U.S. Attorney's Office, and (xiii) all entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

9.        No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  New York, New York
         June 12, 2009

GENERAL MOTORS CORPORATION
(for itself and on behalf of its affiliated
Debtors and Debtors in Possession)


/s/ Walter G. Borst
NAME:  Walter G. Borst

TITLE: Treasurer

# EXHIBIT A
## (Engagement Letter)



**The Garden City Group, Inc.**

## COURT ADMINISTRATION AGREEMENT

This Court Administration Agreement, dated as of May 19, 2009, is between The Garden City Group, Inc., a Delaware corporation (the "Company"), and Chevrolet-Saturn of Harlem, Inc., General Motors Corporation, Saturn, LLC and Saturn Distribution Corporation, Debtors (the "Clients").

The Clients desire to retain the Company to perform certain noticing, claims processing and other administration services for the Clients in their Chapter 11 cases anticipated to be filed in the United States Bankruptcy Court for the Southern District of New York (such Court or such other Bankruptcy Court where said case may actually be filed in lieu thereof), (the "Bankruptcy Court"), and the Company desires to be so retained, in accordance with the terms and conditions of this Agreement.

In consideration of the mutual covenants herein contained, the parties hereby agree as follows:

1.  Services. The Company agrees to provide the services necessary to perform the tasks specified in the pricing schedule that has been supplied to the Clients and which has been attached hereto as Schedule A. Such services are hereinafter referred to as "Services." The Clients agree and understand that none of the Services constitute legal advice. The Company designates Angela Ferrante as the Project Team Leader of this case and the Company represents that it will, in performing its services and while following any and all court instructions and orders, take its day to day directions from AlixPartners LLP and Weil, Gotshal & Manges LLP or any other professionals designated by those entities in this case.

2.  Payment for Services; Expenses.

    2.1  Compensation. As full compensation for the Services to be provided by the Company, the Clients agree to pay the Company its fees as outlined in the pricing schedule that has been supplied to the Clients and which has been attached hereto as Schedule A (subject to Bankruptcy Court approval in the event of an unresolved dispute). Billing rates may be adjusted from time to time by the Company in its reasonable discretion, although billing rates generally are changed on an annual basis. The Clients agree to pay the Company a retainer of $1.85 million, to be applied first against the pre-petition fees and expenses incurred by the Clients in connection with Services rendered by the Company and then against the final bill that will be rendered by the Company to the Clients for the post-petition fees and expenses incurred by the Clients in connection with Services rendered by the Company.

    2.2  Expenses. In addition to the compensation set forth in Section 2.1, the Clients shall reimburse the Company for all out-of-pocket expenses reasonably incurred by the Company in connection with the performance of the Services (subject to Bankruptcy Court determination in the event of an unresolved dispute). The out-of-pocket expenses will be billed on the expense (non-fee) portion of the Company's invoice to the Clients and may include, but are not limited to, postage, banking fees, brokerage fees, costs of messenger and delivery service, travel, filing fees, staff overtime meal expenses and other similar expenses. In some cases, the Company may receive a rebate at the end of a year from a vendor.

        2.3     Billing and Payment. Except as provided in Section 2.2, the Company shall bill the Clients for its fees and expenses on a monthly basis, and the Clients shall pay the Company within thirty (30) days of its receipt of each such bill in the ordinary course of business (subject to Bankruptcy Court approval in the event of an unresolved dispute). Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses such as postage must be paid at least three (3) business days in advance of those fees and expenses being incurred. Each of the Clients is jointly and severally liable for the Company's fees and expenses. Nothing contained in this Agreement shall obligate the clients to pay the Company for any fees or expenses incurred by the Company in connection with work performed negligently, with willful or wanton misconduct or outside the scope of services requested by the Clients, AlixPartners LLP or Weil, Gotshal & Manges LLP, or in connection with correcting any such identified work, except that in the event Company has to redo a project it shall be entitled to charge and be paid once for said project or work.

3.     Term and Termination.

        3.1     Term. The term of this Agreement shall commence on the date hereof and shall continue until performance in full of the Services, unless earlier terminated as set forth herein.

        3.2     Termination.

        (a)     In the event of any material breach of this Agreement by either party hereto, either party may apply to the Bankruptcy Court for an order allowing termination of the Agreement. Grounds for termination include: (i) failure to cure a material breach within thirty (30) days after receipt of the notice by the non-breaching party or (ii) in the case of any breach which requires more than thirty (30) days to effect a cure, failure to commence and continue in good faith efforts to cure such breach, provided that such cure shall be effected no later than ninety (90) days after receipt of such notice of such breach. Waiver of any such default or material breach by either party hereto shall not be construed as limiting any right of termination for a subsequent default or material breach.

        (b)     The Company shall be entitled to an administrative claim for all fees and expenses outstanding at the time of termination (subject to Bankruptcy Court approval in the event of an unresolved dispute).

        4.     Independent Contractor. It is understood and agreed that the Company, through itself or any of its agents, shall perform the Services as an independent contractor. Neither the Company nor any of its employees shall be deemed to be an employee of the Clients. Neither the Company nor any of its employees shall be entitled to any benefits provided by the Clients to their employees, and the Clients will make no deductions from any of the payments due to the Company hereunder for state or federal tax purposes. The Company agrees that the Company shall be responsible for any and all taxes and other payments due on payments received hereunder by the Company from the Clients. Nothing in this Agreement requires the Clients to use the Company for any future work relating to the Services and, in the event the Clients decide to use another party for such future work, the Company agrees to cooperate fully with the Clients to ensure a smooth transition to the new party.

        5.     Accuracy of Client Supplied Information. The Clients are responsible for the accuracy of all programs, data and other information it submits to the Company (including all information for schedule and statement preparation) and for the output of such information. The Company may undertake to place that data and information into certain systems and programs, including in connection with the generation of Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"). The Company does not verify information provided by the Clients and, with respect to Schedules and Statements preparation, all decisions are at the sole discretion and direction of the Clients.

All Schedules and Statements filed on behalf of, or by, the Clients are reviewed and ultimately approved by the Clients, and the Company bears no responsibility for the accuracy or contents therein.

6. Confidential Information.

6.1    Confidentiality. In connection with this Agreement, each of the Clients and the Company (as the case may be, the "Disclosing Party") may disclose to the Company or the Clients (as the case may be, the "Receiving Party") certain information (a) that is marked or otherwise identified in writing as confidential or proprietary information of the Disclosing Party ("Confidential Information") prior to or upon receipt by the Receiving Party; or (b) which the Receiving Party reasonably should recognize from the circumstances surrounding the disclosure to be Confidential Information. The Receiving Party (x) shall hold all Confidential Information in confidence and will use such information only for the purposes of fulfilling the Receiving Party's obligations hereunder and for no other purpose, and (y) shall not disclose, provide, disseminate or otherwise make available any Confidential Information to any third party other than for the purposes of fulfilling the Receiving Party's obligations hereunder, in either case without the express prior written permission of the Disclosing Party. Notwithstanding the foregoing, the Receiving Party may disclose Confidential Information pursuant to a validly issued subpoena or order of a court of competent jurisdiction.

6.2    Protection of Intellectual Property. The Clients acknowledge that the Company's intellectual property, including, without limitation, the Company's inventions (whether or not patentable), processes, trade secrets and know how are of ultimate importance to the Company. Accordingly, the Clients agree to use their best efforts to protect such intellectual property, and shall not, either during the term of this Agreement or subsequent to its termination, utilize, reveal or disclose any of such intellectual property. The Clients understand that the software programs and other materials furnished by the Company pursuant to this Agreement and/or developed during the course of this Agreement by the Company are the sole property of the Company. The term "program" shall include, without limitation, data processing programs, check printing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation. The Clients further agree that any ideas, concepts, know-how or techniques relating to the claims management software used or developed by the Company during the course of this Agreement shall be the exclusive property of the Company.

6.3    Scope. The foregoing obligations in Sections 6.1 and 6.2 shall not apply to (a) information that is or becomes generally known or available by publication, commercial use or otherwise through no fault of the Receiving Party; (b) information that is known by the Receiving Party prior to the time of disclosure by the Disclosing Party to the Receiving Party; (c) information that is obtained from a third party who, to the Receiving Party's knowledge, has the right to make such disclosure without restriction; (d) any disclosure required by applicable law; or (e) information that is released for publication by the Disclosing Party in writing. The obligations set forth under Sections 6.1 and 6.2 shall survive the termination of this Agreement.

7.    Limitation on Damages. The Company shall be without liability to the Clients with respect to anything done or omitted to be done, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. In no event shall liability to the Clients for any claims, losses, costs, fines, penalties or damages, including court costs and reasonable attorneys' fees (collectively, "Losses"), whether direct or indirect, arising out of or in connection with or related to this Agreement, exceed the total amount billed or billable to the Clients for the portion of the particular work which gave rise to the Losses. Under no circumstances will the Company be liable to the Clients for any special, consequential or incidental damages incurred by the Client relating to this Agreement or the performance of Services hereunder, regardless of whether the Clients' claim is for breach of warranty, contract, tort (including negligence),

3

strict liability or otherwise. To the extent there is any conflict between this provision and paragraph 2.3, the terms of paragraph 2.3 control.

8.　　Indemnification. The Clients, jointly and severally, hereby indemnify and hold harmless the Company and its directors, officers, employees, affiliates and agents against any Losses incurred by the Company arising out of or in connection with or related to (a) any gross negligence or willful misconduct by Clients, their employees, agents or representatives, or any misrepresentations made by such persons to third parties in connection with the Company's acts or omissions in connection with its rendition of the Services; (b) any breach of this Agreement by any of the Clients; or (c) any erroneous instructions or information provided to the Company by any of the Clients for use in providing the Services. To the extent there is any conflict between this provision and paragraph 2.3, the terms of paragraph 2.3 control.

9.　　Jurisdiction. This Agreement is subject to the approval of the Bankruptcy Court, and such Court shall retain jurisdiction over all matters regarding this Agreement.

10.　　Force Majeure. Whenever performance by the Company of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reason of any other matter beyond the Company's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

11.　　Notice. Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or if sent by overnight courier, one business day after delivery to such courier, as follows: if to the Company, to The Garden City Group, Inc., 105 Maxess Road, Melville, New York 11747-3836, Attention: David Isaac, President; and if to the Clients, to Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attention: Stephen Karotkin, Esquire.

12.　　Governing Law. This contract will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

13.　　Severability. All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

14.　　Assignment. This Agreement and the rights and obligations of the Company and the Clients hereunder shall bind and inure to the benefit of any successors or assigns thereto.

15.　　General. This Agreement supersedes and replaces any existing agreement entered into by the Company and the Clients relating generally to the same subject matter, and may be modified only in a writing signed by the Company and the Clients. The paragraph headings in this Agreement are included only for convenience, do not in any manner modify or limit any of the provisions of this Agreement and may not be used in the interpretation of this Agreement. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. The Clients shall file an application with the Bankruptcy

4

Court seeking approval of this Agreement (the "Application"). If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

THE GARDEN CITY GROUP, INC.

By: _____
Name: Karen Shaber
Title: EVP + U-C

GENERAL MOTORS CORPORATION

By: _____
Name:   Ray G. Young
Title:   Executive Vice President & CFO

5

## **Schedule A**

## GCG Fees

| Service | Claims Agent Pricing |
|---------|---------------------|
| Matter and database set-up | Waived |
| Transfer of data from company/AlixPartners to claims agent database | $.02 per creditor |
| Storage of data | $.002 per electronic record/image per month; $1.50 per box (capped at $100,000 for electronic storage) |
| Tailoring of proof of claim form by creditor/schedules, including bar coding | $100 per hour |
| Intake of creditor proofs of claim and scanning to claims agent electronic system | $.11 per image scanned $.15 per claim associated to database |
| Application of message codes and processing non-conforming claims | $55 per hour |
| Claims or Docket Reports | $150 per hour |
| Copy charges for mailings | $.10 per page for copy jobs of under 5,000 addresses or where document is less than 8 pages. Volume discount quotes for larger jobs. See Note below. |
| Preparation of mailings (folding, etc.) | Standard Hourly Rates for smaller jobs under 5,000 pieces. For larger jobs, in excess of 5,000 pieces, no hourly rate for prep, including folding, insertion, etc. Those tasks are included in the volume discount quote. |
| Address labels and envelopes for mailings | No charge for any mailing to more than 5,000 people. For smaller mailings, the charge is $.05 per label or window envelope (we do not |

|  | charge for both). |
|---|---|
| Email Noticing | $100 per 1,000 names |
| Fax notice | $.10 per page |
| Website design | $3,500 |
| Website hosting | $200 per month |
| Charges for public to access web site | No |
| Website updates (docket; claims register) | $125 per hour |
| Incoming mail sorting | $.45 each |
| Accepting data from AlixPartners for creation of Schedules and SOFAs | $150 per hour |
| Handling undeliverable mail & recording in database | $.25 each |
| Handling remails & forwarding notices | $.55 each |
| Supervisory Review by Project Manager leaders | Standard hourly rates |
| Quality Assurance Review | Standard hourly rates |
| Beneficial Stockholder search | Standard hourly rates |
| Balloting and Solicitation | Standard hourly rates |
| Call Center Set-up | $10,000 |
| IVR Set-up and monthly fee<br>- IVR minutes<br>- Live Operators | Waived<br>.32 cents per minute<br>1-74    $34.50 per hour<br>75-100 $32.50 per hour<br>75-101 $30.00 per hour<br>151 plus $28.50 per hour |
| Call Center Training and Managers | Standard hourly rates |

Note:   The notice of commencement, which is usually a 2-4 page document, would be quoted in the range of $0.15 per packet plus postage if mailed to 1.5 million addresses and within these specifications. The notice of sale, assuming it is 4-6 pages, is quoted at $.20 per packet. This is an "all in" price and there are no extra charges for labor, copy charges, envelopes, labels, stuffing, etc. All of our volume discount quotes will be "all in." The only additional cost will be postage and we will do a zip code-presort to get the best postage discount rate for the mailing.

If the bar date notice is about 6 pages, including a 2 page personalized POC, and is mailed to 1.5 million addresses, the likely quote would be around $0.20 per packet. Again, these quotes are provided to demonstrate the volume discounts we provide and the "all in" nature of our quotes. Actual quotes are provided once set specifications are provided.

## The Garden City Group, Inc. Standard Hourly Billing Rates

**GCG will cap the hourly rates of its Senior Management at $250 and there will be no charge for overtime.**

| | |
|---|---|
| Administrative | $45-$70 |
| Data Entry Processors | $55 |
| Mailroom and Claims Control | $55 |
| Customer Service Rep's | $57 |
| Project Administrators | $70-$85 |
| Quality Assurance Staff | $80-$125 |
| Project Supervisors | $95-$110 |
| Systems & Technology Staff | $100-$200 |
| Graphic Support | $125 |
| Project Managers, Senior Project Managers, and Department Managers | $125-$150 |
| Directors, Senior Consultants, and Assistant Vice Presidents | $175-$250 |
| Senior Management | $250 |

# EXHIBIT B
### (Affidavit of Neil L. Zola)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                              :
In re                                         :                    Chapter 11 Case No.
                                              :
**GENERAL MOTORS CORP.,** *et al.***,**        :                    09-50026 (REG)
                                              :
                              Debtors.        :                    (Jointly Administered)
                                              :
----------------------------------------------------------------x

**AFFIDAVIT OF NEIL L. ZOLA IN SUPPORT OF THE APPLICATION FOR ORDER**
**UNDER 28 U.S.C. § 156(c) AUTHORIZING THE RETENTION OF THE GARDEN CITY**
**GROUP, INC. AS NOTICE AND CLAIMS AGENT AND APPROVING ASSUMPTION**
**OF RELATED AGREEMENT**

Neil L. Zola, being duly sworn, deposes and says:

1.      I am the President and Chief Operating Officer of The Garden City Group,

Inc. ("**GCG**"), and I am authorized to make and submit this affidavit on behalf of GCG.  This

affidavit is submitted in support of the application (the "**Application**") of Chevrolet-Saturn of

Harlem, Inc., General Motors Corporation, Saturn, LLC and Saturn Distribution Corporation,

debtors and debtors in possession (collectively, the "**Debtors**"), for authorization to retain GCG

as official notice and claims agent ("**Claims Agent**") for the above-captioned Chapter 11 case

(the "**Case**"), pursuant to 28 U.S.C. § 156(c) and to approve the assumption of a related

agreement.  The statements contained herein are based upon personal knowledge.

2.      GCG is one of the country's leading Chapter 11 administrators with

expertise in noticing, claims processing, balloting administration and distribution.  GCG is well

qualified to provide experienced noticing, claims processing and balloting administration services

in connection with this Case.  Among the large Chapter 11 cases in which GCG is or was

retained as noticing and claims agent to debtors are: <u>In re BearingPoint, Inc.</u>, Case No. 09-10691

(REG), In re Fortunoff Holdings, LLC, Case No. 09-10497 (RDD), In re Star Tribune Holdings Corp., Case No. 09-10244 (RDD), In re Lenox Sales, Inc., Case No. 08-14679 (ALG), In re IBP Corp., Case No. 08-11181 (AJG), In re Alper Holdings USA, Inc., Case No. 07-12148 (BRL), In re The New York Racing Ass'n Inc., Case No. 06-12618 (JMP), In re Our Lady of Mercy Med. Ctr., Case No. 07-10609 (REG), In re Saltire Industrial, Inc., Case No. 04-15389 (BRL), In re Sure Fit, Inc., Case No. 04-11495 (BRL) and In re General Media, Inc., Case No. 03-15078 (SMB), which were filed in the Southern District of New York; In re Forward Foods LLC, case no. 09-10545 (KJC), In re Nailite International, Inc., case no. 09-10526 (MFW), In re Foothills Texas, Inc., case no. 09-10452 (CSS), In re Jancor Companies Inc., et al., case no. 08-12556 (MFW), In re Comfort Co., Inc., case no. 08-12305 (MFW), In re DG Liquidation Corp., case no. 08-10601 (CSS), In re KCMVNO, Inc., case no. 08-10600 (BLS), In re Supplements LT Inc., case no. 08-10446 (KJC), In re ProRhythm, Inc., case no. 07-11861 (KJC), In re S-Tran Holdings, Inc., et al., case no. 05-11391 (RB), In re Flintkote Company, case no. 04-11300 (JKF), In re Factory 2-U Stores, Inc., case no. 04-10111 (PJW), In re Magnatrax Corporation, case no. 03-11402 (PJW), In re HQ Global Holdings, Inc., et al., case no. 02-10760 (MFW), In re Federal-Mogul Global, Inc., case no. 01-10578 (AMW) and In re ACandS, Inc., case no. 02-12687 (RJN), which were filed in the District of Delaware; In re Commercial Mortgage & Finance Co., case no. 08-73242 (MB), In re Printers Row, LLC, case no. 08-17301 (ERW) and In re Gateway Home Care Inc., et al., case no. 03-17457 (JPC), which were filed in the Northern District of Illinois; In re Zurich Depository Corp., case no. 07-71352 (JBR), In re Copperfield Investment, LLC, case no. 07-71327 (JBR), In re The Brunswick Hospital Center, Inc., case no. 07-40290 (CEC), In re Photocircuits Corporation, case no. 05-89022 (SB), In re MetroTec Communications, Inc., et al., case no. 05-20953 (DEM), In re Allou Distributors Inc., et al., case no.03-82321 (ESS) and In re

2

CyberRebate.com, Inc., case no. 01-16534 (CEC), which were filed in the Eastern District of

New York; In re Foxtons, Inc., et al., case no. 07-24496 (MBK), In re NJ Affordable Homes

Corp., case no. 05-60442 (DHS), In re Omne Staffing Inc., et al., case no. 04-22316 (RG), In re

NorVergence, Inc., case no. 04-32079 (RG), In re Muralo Company, Inc., case no. 03-26723

(MS) and In re AremisSoft, case no. 02-32621 (RG), which were filed in the District of New

Jersey; In re O'Sullivan Industries, Inc., et al., case no. 05-83049 (CRM) and In re Galey & Lord,

Inc., et al., case no. 04-43098 (MGC), which were filed in the Northern District of Georgia; In re

SENCORP, Case No. 09-12869 (JVA) and In re United Producers, Inc., case no. 05-55272 (CMC),

which were filed in the Southern District of Ohio; In re Boyds Collection, Ltd., et al., case no. 05-

43793  (DWK), which was filed in the District of Maryland; In re Romacorp, Inc., case no. 05-

86818 (BJH), which was filed in the Northern District of Texas; In re Mercury Companies, Inc.,

case no. 08-23125 (MER), which was filed in the District of Colorado; and In re Hawaiian

Airlines, Inc., case no. 03-00817 (RJF), which was filed in the District of Hawaii.

   3.  The Debtors selected GCG to serve as the Claims Agent for the Debtors'

estates, as set forth in more detail in the Application filed contemporaneously herewith. To the

best of my knowledge, neither GCG, nor any of its professional personnel, have any relationship

with the Debtors that would impair GCG's ability to serve as Claims Agent.  Although certain

GCG personnel may own or lease certain automobiles produced and/or sold by the Debtors, may

have utilized repair facilities operated by the Debtors, may have automotive warranties issued by

the Debtors or may own General Motors Corporation ("**GM**") stock, these relationships are

merely personal in nature and in no way affect GCG's ability to serve as Claims Agent in the

Case.  In addition, GCG does have relationships with some of the Debtors' creditors, but they are

in matters completely unrelated to this Case, either as vendors or in cases where GCG serves in a

neutral capacity as a class action settlement claims administrator.  In addition, GCG has acted as

a class action settlement claims administrator for GM.  GCG's assistance in the cases where

GCG acts as a class action settlement claims administrator has been primarily related to the

design and dissemination of legal notice and other administrative functions in class actions. At

the time of the filing of this Case, GCG was acting as a settlement claims administrator for GM

in two class actions matters. For its work in the first of those two cases, Sadowski v. GM, which

is pending in California state court (with a companion Missouri state court case), as of the date of

the filing of this Case, GCG was owed $19,381.631.  For its work in the second of those two

cases, Soders v. GM, which is pending in a Pennsylvania state court, as of the date of the filing

of this Case, GCG was owed $2,737.71.  GCG agrees to waive payment for any and all unpaid

pre-petition sums owed by Debtors; that waived sum totals $22,119.34.  GCG has working

relationships with certain of the professionals retained by the Debtors and other parties herein but

such relationships are completely unrelated to this Case.  Two Directors at GCG, Craig Johnson

and Angela Ferrante, are attorneys formerly associated with the Debtors' bankruptcy counsel,

Weil, Gotshal & Manges LLP ("**WGM**").  Mr. Johnson and Ms. Ferrante were employed by

WGM from October 2001 through September 2005 and October 2000 through May 2003,

respectively. I have also been advised that while employed at WGM, neither Mr. Johnson nor

Ms. Ferrante worked on any matters involving the Debtors.  Mr. Johnson and Ms. Ferrante were

not employed by WGM when this Case was filed.  I have further been advised that Jeffrey Stein,

a Vice President at GCG, was employed by WGM as a paralegal from June 1977 through August

1978, and was a summer associate at WGM from June 1979 through August 1979.  Mr. Stein

was not employed by WGM when this Case was filed.  I have also been advised that William A.

Brandt, Assistant Vice President, Compliance at GCG, is an attorney formerly associated with

4

09-50026-mg    Doc 3398    Filed 03/05/14    Entered 03/05/14 17:16:14    Main Document
Pg 21 of 42

Davis Polk & Wardwell ("**Davis Polk**"), a law firm employed by the Debtors.  Mr. Brandt was

employed by Davis Polk from 1989 to 1996.  I have also been advised that while employed at

Davis Polk, Mr. Brandt did not work on any matters involving the Debtors.  Mr. Brandt was not

employed by Davis Polk when this Case was filed.   I have been further advised that Donna

Zeiser, a Bankruptcy Consultant hired by GCG on June 1, 2009, was formerly employed as a

Senior Bankruptcy Paralegal at Sonnenschein Nath & Rosenthal LLP, which represents the

United States Treasury in connection with its recent dealings with GM.  I have been advised that

Ms. Zeiser performed certain ministerial tasks in connection therewith.  Ms. Zeiser will not be

working on the Case while employed by GCG.  In addition, GCG personnel may have

relationships with some of the Debtors' creditors; however, such relationships are of a personal,

financial nature and completely unrelated to this Case.  GCG has and will continue to represent

clients in matters unrelated to this Case and has had and will continue to have relationships in the

ordinary course of its business with certain vendors and professionals in connection with matters

unrelated to this Case.

       4.      Since 1999, GCG has been a wholly owned subsidiary of Crawford &

Company ("**Crawford**").  I have been advised that Crawford is one of the Debtors unsecured

creditors in the amount of approximately $2,650.50.  I am also advised that KPMG and Ernst &

Young LLP are professionals retained by the Debtors.  More than fifteen years ago, certain

employees of GCG worked with a practice group at KPMG, which was spun off in 1994 and

renamed GCG.   From time to time, GCG retains KPMG to provide tax consulting advice in

connection with its settlement administrative and related work, which is completely unrelated to

this Case.  Ernst & Young LLP serves as Crawford's auditor in matters completely unrelated to

this Case.  I am advised that Crawford & Company has no material relationship with the Debtors,

and while it may have rendered services to certain creditors or have a vendor relationship with some creditors, such relationships were (or are) in no way connected to GCG's representation of the Debtors in this Case.

5.      GCG is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, in that GCG and its professional personnel:

(a)      are not creditors, equity security holders or insiders of the Debtors;

(b)      are not and were not, within two years before the date of the filing of this Case, directors, officers or employees of the Debtors; and

(c)      do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

6.      GCG has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, this Case.  If GCG's proposed retention is approved by this Court, GCG will not accept any engagement or perform any service for any entity or person other than the Debtors in this Case.  GCG may, however, provide professional services to entities or persons that may be creditors or parties in interest in this Case, which services do not relate to, or have any direct connection with, this Case or the Debtors.

7.      GCG represents, among other things, that:

(a)      It will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims Agent;

(b)      By accepting employment in this Case, GCG waives any right to receive compensation from the United States government;

6

(c)     In its capacity as Claims Agent, GCG will not be an agent of the United States and will not act on behalf of the United States; and

(d)     GCG will not employ any past or present employees of the Debtors in connection with its work as Claims Agent.

8.     Subject to the Court's approval, the Debtors have agreed to compensate GCG for professional services rendered in connection with this Case pursuant to the retention agreement by and between the Debtors and GCG, a true and correct copy of which is attached as Exhibit A.  Payments are to be based upon the submission to the Debtors by GCG of a billing statement, which includes a detailed listing of services and expenses, at the end of each calendar month.  GCG has received a $1,850,000.00 retainer from the Debtors and will apply same first against all pre-petition fees and expenses and then against the first post-petition invoice for fees and expenses that GCG will render in this Case.

9.      GCG will comply with all requests of the Clerk of the Court and the

guidelines promulgated by the Judicial Conference of the United States for the implementation

of 28 U.S.C. § 156(c).

/s/ Neil L. Zola
Neil L. Zola
President and Chief Operating Officer

Sworn and subscribed to
before me this 12th day
of June, 2009

/s/ Allison Hassett (Sciortino)
ALLISON HASSETT (SCIORTINO)
NOTARY PUBLIC, State of New York
01HA NO. 4940286
Qualified in Nassau County
Commission Expires August 8, 2010

8

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                          :
**In re**                                 :          **Chapter 11 Case No.**
                                          :
**GENERAL MOTORS CORP.,** *et al.***,**   :          **09-50026 (REG)**
                                          :
                            **Debtors.**  :          **(Jointly Administered)**
                                          :
----------------------------------------------------------------x

## ORDER PURSUANT TO
## 28 U.S.C. § 156(c) AUTHORIZING RETENTION AND EMPLOYMENT OF THE
## GARDEN CITY GROUP, INC. AS NOTICE AND CLAIMS AGENT
## *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon the Application, dated June 12, 2009 (the "**Application**"),[1] of General

Motors Corporation and certain of its subsidiaries, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, "**Debtors**"), pursuant to 28 U.S.C. § 156(c) to

approve the retention and employment The Garden City Group, Inc. ("**GCG**") as notice and

claims agent ("**Agent**") of the Clerk of the Bankruptcy Court ("**Court**") in the above chapter 11

cases (the "**Chapter 11 Cases**") *nunc pro tunc* to the Commencement Date and to approve the

assumption of a related agreement, pursuant to the terms of the Claims Agent Agreement

annexed to the Application as Exhibit A ("**Agency Agreement**") to, among other things, (i)

distribute required notices to parties in interest, (ii) receive, maintain, docket and otherwise

administer the proofs of claims filed in the chapter 11 cases, (iii) assist in the tabulation of

acceptances and rejections of the Debtors' plan of reorganization, and (iv) provide such other

administrative services that the Debtors may require; and upon the affidavit of  Neil L. Zola,

President and Chief Operating Officer of GCG submitted in support of the Application; and the

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

Debtors having estimated that there are in excess of 1,000 creditors in these chapter 11 cases, many of which are expected to file proofs of claims, and it appearing that the receiving, docketing and maintaining of proofs of claims would be unduly time consuming and burdensome for the Court; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that GCG has the capability and experience to provide such services and that GCG does not hold an interest adverse to the Debtors or their estate with respect to the matters upon which they are to be engaged; and due and proper notice of the Application having been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the United States Department of the Treasury, (iii) the attorneys for Export Development Canada, (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases, (vii) the attorneys for the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the United States Department of Labor, (x) the attorneys for the National Automobile Dealers Association, (xi) the attorneys for the ad hoc bondholders committee, (xii) the U.S. Attorney's Office, S.D.N.Y., and (xiii) all entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002; and no other or further notice being required; and it appearing that the employment of GCG is in the best interests of the Debtors, their estate and creditors; and sufficient cause appearing therefor; it is hereby

**ORDERED,** that the Debtors are authorized to retain GCG, *nunc pro tunc* to the Commencement Date, to perform the noticing and other services set forth in the Application and to receive, maintain, record and otherwise administer the proofs of claim filed in these Chapter 11 Cases; and it is further

**ORDERED,** that GCG is appointed as Agent for the Court and custodian of court records and, as such, is designated as the authorized repository for all proofs of claims filed in these Chapter 11 Cases and is authorized and directed to maintain the official claims register for the Debtors; and it is further

**ORDERED,** that GCG is authorized and directed to perform all related tasks to process the proofs of claims and maintain a claims register including, without limitation:

a. notify all potential creditors of the filing of the bankruptcy petition and of the setting of the first meeting of creditors, pursuant to §341(a) of the Bankruptcy Code, under the proper provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure;

b. maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

c. notify all potential creditors of the existence and amount of their respective claims as evidenced by the Debtors' books and records and set forth in the Schedules;

d. furnish a notice of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court;

e. file with the Court  a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date the notice was mailed, within ten (10) days of service;

f. docket all claims received, maintain the official claims register (the "**Claims Register**") for the Debtors on behalf of the Court;

g. specify, in the applicable Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification(s) of the claim (e.g., secured, unsecured, priority, etc.);

h. record all transfers of claims and provide any notices of such transfers required by Rule 3001 of the Federal Rules of Bankruptcy Procedure;

i. make changes in the Claims Registers pursuant to Court Order;

j. maintain the official mailing list for the Debtors of all entities that have filed a proof of claim, which list shall be available upon request by a party-in-interest or the Court;

k. assist with, among other things, solicitation and calculation of votes and distribution as required in furtherance of confirmation of plan(s) of reorganization;

l. thirty (30) days prior to the close of these chapter 11 cases, an Order dismissing GCG shall be submitted terminating the services of GCG upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases; and

m. at the close of the chapter 11 cases, box and transport all original documents in proper format, as provided by the Court, to the Federal Records Center; and it is further

**ORDERED,** that GCG is authorized to take such other action to comply with all duties set forth in the application; and it is further

**ORDERED,** that the Debtors are authorized to compensate GCG on a monthly basis, in accordance with the Agency Agreement, upon the receipt of reasonably detailed invoices setting forth the services provided by GCG in the prior month and the rates charged for each, and to reimburse GCG for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation; and it is further

**ORDERED,** if these Chapter 11 Cases convert to cases under Chapter 7, GCG will continue to be paid for its services until the claims filed in the Chapter 11 Cases have been completely processed; if claims agent representation is necessary in the converted chapter 7 cases, GCG will continue to be paid in accordance with 28 U.S.C. §156(c) under the terms set out herein; and it is further

**ORDERED,** that in the event GCG is unable to provide the services set out in this order, GCG will immediately notify the Court and the Debtors' attorney and cause to have all

original proofs of claim and computer information turned over to another claims agent with the

advice and consent of the Court and Debtors' attorney; and it is further

        **ORDERED**, that the Debtors are granted a waiver of the requirement, under

Local Bankruptcy Rule 9013-1(b), that a memorandum of law be submitted.

Dated: New York, New York
      June 12, 2009

 

                                    _____
                                    United States Bankruptcy Judge

# **Exhibit B**

**garden**UNITED STATES BANKRUPTCY COURT
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
**In re** : **Chapter 11 Case No.**
:
**GENERAL MOTORS CORP.**, *et al.*, : **09-50026 (REG)**
:
**Debtors.** : **(Jointly Administered)**
:
-----------------------------------------------------------------x

## ORDER PURSUANT TO
## 28 U.S.C. § 156(c) AUTHORIZING RETENTION AND EMPLOYMENT OF THE
## GARDEN CITY GROUP, INC. AS NOTICE AND CLAIMS AGENT
## *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon the Application, dated June 12, 2009 (the "**Application**"),[1] of General

Motors Corporation and certain of its subsidiaries, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, "**Debtors**"), pursuant to 28 U.S.C. § 156(c) to

approve the retention and employment The Garden City Group, Inc. ("**GCG**") as notice and

claims agent ("**Agent**") of the Clerk of the Bankruptcy Court ("**Court**") in the above chapter 11

cases (the "**Chapter 11 Cases**") *nunc pro tunc* to the Commencement Date and to approve the

assumption of a related agreement, pursuant to the terms of the Claims Agent Agreement

annexed to the Application as Exhibit A ("**Agency Agreement**") to, among other things, (i)

distribute required notices to parties in interest, (ii) receive, maintain, docket and otherwise

administer the proofs of claims filed in the chapter 11 cases, (iii) assist in the tabulation of

acceptances and rejections of the Debtors' plan of reorganization, and (iv) provide such other

administrative services that the Debtors may require; and upon the affidavit of Neil L. Zola,

President and Chief Operating Officer of GCG submitted in support of the Application; and the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

Debtors having estimated that there are in excess of 1,000 creditors in these chapter 11 cases,

many of which are expected to file proofs of claims, and it appearing that the receiving,

docketing and maintaining of proofs of claims would be unduly time consuming and burdensome

for the Court; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors'

expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive,

docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that

GCG has the capability and experience to provide such services and that GCG does not hold an

interest adverse to the Debtors or their estate with respect to the matters upon which they are to

be engaged; and due and proper notice of the Application having been provided to (i) the Office

of the United States Trustee for the Southern District of New York, (ii) the attorneys for the

United States Department of the Treasury, (iii) the attorneys for Export Development Canada,

(iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the

attorneys for the agent under GM's prepetition amended and restated secured revolving credit

agreement, (vi) the attorneys for the statutory committee of unsecured creditors appointed in

these chapter 11 cases, (vii) the attorneys for the International Union, United Automobile,

Aerospace and Agricultural Implement Workers of America, (viii) the attorneys for the

International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—

Communications Workers of America, (ix) the United States Department of Labor, (x) the

attorneys for the National Automobile Dealers Association, (xi) the attorneys for the ad hoc

bondholders committee, (xii) the U.S. Attorney's Office, S.D.N.Y., and (xiii) all entities that

requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002; and no other or further

notice being required; and it appearing that the employment of GCG is in the best interests of the

Debtors, their estate and creditors; and sufficient cause appearing therefor; it is hereby

**ORDERED,** that the Debtors are authorized to retain GCG, *nunc pro tunc* to the Commencement Date, to perform the noticing and other services set forth in the Application and to receive, maintain, record and otherwise administer the proofs of claim filed in these Chapter 11 Cases; and it is further

**ORDERED,** that GCG is appointed as Agent for the Court and custodian of court records and, as such, is designated as the authorized repository for all proofs of claims filed in these Chapter 11 Cases and is authorized and directed to maintain the official claims register for the Debtors; and it is further

**ORDERED,** that GCG is authorized and directed to perform all related tasks to process the proofs of claims and maintain a claims register including, without limitation:

a. notify all potential creditors of the filing of the bankruptcy petition and of the setting of the first meeting of creditors, pursuant to §341(a) of the Bankruptcy Code, under the proper provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure;

b. maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

c. notify all potential creditors of the existence and amount of their respective claims as evidenced by the Debtors' books and records and set forth in the Schedules;

d. furnish a notice of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court;

e. file with the Court  a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date the notice was mailed, within ten (10) days of service;

f. docket all claims received, maintain the official claims register (the "**Claims Register**") for the Debtors on behalf of the Court;

g. specify, in the applicable Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification(s) of the claim (e.g., secured, unsecured, priority, etc.);

h. record all transfers of claims and provide any notices of such transfers required by Rule 3001 of the Federal Rules of Bankruptcy Procedure;

i. make changes in the Claims Registers pursuant to Court Order;

j. maintain the official mailing list for the Debtors of all entities that have filed a proof of claim, which list shall be available upon request by a party-in-interest or the Court;

k. assist with, among other things, solicitation and calculation of votes and distribution as required in furtherance of confirmation of plan(s) of reorganization;

l. thirty (30) days prior to the close of these chapter 11 cases, an Order dismissing GCG shall be submitted terminating the services of GCG upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases; and

m. at the close of the chapter 11 cases, box and transport all original documents in proper format, as provided by the Court, to the Federal Records Center; and it is further

**ORDERED,** that GCG is authorized to take such other action to comply with all duties set forth in the application; and it is further

**ORDERED,** that the Debtors are authorized to compensate GCG on a monthly basis, in accordance with the Agency Agreement, upon the receipt of reasonably detailed invoices setting forth the services provided by GCG in the prior month and the rates charged for each, and to reimburse GCG for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation; and it is further

**ORDERED,** if these Chapter 11 Cases convert to cases under Chapter 7, GCG will continue to be paid for its services until the claims filed in the Chapter 11 Cases have been completely processed; if claims agent representation is necessary in the converted chapter 7 cases, GCG will continue to be paid in accordance with 28 U.S.C. §156(c) under the terms set out herein; and it is further

**ORDERED,** that in the event GCG is unable to provide the services set out in this order, GCG will immediately notify the Court and the Debtors' attorney and cause to have all

09-50026-reg   Doc 2549   Filed 06/25/09   Entered 06/25/09 16:23:16   Main Document
Pg 5 of 5

original proofs of claim and computer information turned over to another claims agent with the

advice and consent of the Court and Debtors' attorney; and it is further

**ORDERED**, that the Debtors are granted a waiver of the requirement, under

Local Bankruptcy Rule 9013-1(b), that a memorandum of law be submitted.

Dated: New York, New York
_**June 25, 2009**_


_**/s/ Robert E. Gerber**_
United States Bankruptcy Judge

# Exhibit C

## Davidson, Scott

| | |
|---|---|
| **From:** | Kimberly Gargan <Kimberly.Gargan@gcginc.com> |
| **Sent:** | Monday, June 16, 2014 5:11 PM |
| **To:** | Davidson, Scott; Angela Ferrante |
| **Cc:** | Steinberg, Arthur |
| **Subject:** | RE: GM - Request |

Scott,

As per yesterday's email exchange below, please find our updated numbers in regard to the Sale Notice mailing handled in June, 2009. As an update, the original cost provided to you on Friday did include the printing, labor and materials costs. Below please find the additional cost of postage and the costs for Broadridge (which include labor, postage, and materials).

Printing, Labor and Materials for the 3 pg. Sale Notice :
Quantity - 4,350,000
Rate - $0.175
**Cost - $761,250.00**

Postage for 3 pg. Sale Notice
Quantity - 2,000,000 (to the creditor matrix)
Rate - $0.44
**Cost - $880,000.00**

Broadridge – To equity and bondholders
Quantity – 2,350,000
**Cost - $1,358.008.59** (excluding printing and related costs captured above)

**Total (printing, postage, labor & materials)- $2,999,258.59**

Please let us know if you need anything further at this time. Thank you

**Kimberly Gargan**
Senior Project Manager, Bankruptcy

**GCG**℠ The Garden City Group, Inc.
1985 Marcus Ave. Lake Success, NY 11042
T:631-470-6802
Kimberly.Gargan@gcginc.com | www.gcginc.com