# Exhibit 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

-------------------------------------------------------------- x

### DECLARATION OF ANDREW B. BLOOMER IN SUPPORT OF
### NEW GM'S  MOTION TO ENFORCE SALE ORDER AND INJUNCTION

I, Andrew B. Bloomer, hereby declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information and belief.

1.      I am a partner of the law firm Kirkland & Ellis LLP.  I am one of the counsel of record in this action for General Motors LLC ("**New GM**").  I submit this declaration in support of New GM's Motion to Enforce the Court's July 5, 2009 Sale Order and Injunction.  Unless otherwise indicated, I have personal knowledge of the matters set forth below.  If called as a witness, I could and would testify competently as follows:

2.       Old GM filed for Chapter 11 bankruptcy on June 1, 2009.  Between June 1, 2009 and July 10, 2009, more than 1,250 media articles reporting on Old GM's prospective or actual bankruptcy were published in virtually every major newspaper in each of the fifty United States and the District of Columbia, each of the national wire services, as well as in many leading foreign newspapers.  These newspapers and wire services include but are not limited to: The New York Times, The Wall Street Journal, USA Today, The Washington Post, Chicago Tribune, Daily News, New York Post, Chicago Sun-Times, Los Angeles Times, Associated Press, Reuters, The Independent, and The Guardian.

3.      Media articles between June 1, 2009 and July 10, 2009 reporting on Old GM's prospective or actual bankruptcy can be identified by using the following search criteria in LexisNexis databases such as "US Newspapers and Wires," "MegaNews, US News," "Mega News, Major Newspapers," and "Global publications: Non-US database": "headline ((caps(general motors) or allcaps(gm)) w/25 (restructur! or bankrupt! or insolven!)) and date (geq(6/1/2009) and leq(7/11/2009))."

4.      Attached as **Exhibit 1** are true and accurate screenshots of abstracts from articles identified using the databases and search criteria described above.   Below are examples of articles located using such databases and search criteria.

5.      Attached as **Exhibit 2** is a true and correct copy of a June 4, 2009 article entitled *Accident Victims Fight For Carmaker Payouts; Chrysler, GM Bankruptcies Affect Liability*, published in The Washington Times.   The article reported that "Accident victims and their lawyers descended on Capitol Hill on Wednesday [June 3, 2009], urging Congress and the Obama administration to guarantee their ability to seek medical reimbursement from Chrysler and General Motors.  The companies' Chapter 11 filings treat victims as unsecured creditors who must wait in line to receive their payouts."   (John P. Krudy, *Accident Victims Fight For Carmaker Payouts; Chrysler, GM Bankruptcies Affect Liability*, The Washington Times, June 4, 2009.)

6.      Attached as **Exhibit 3** is a true and correct copy of a June 19, 2009 article entitled *Bondholders, Unions Object to GM Asset Sale*, published by the Associated Press.  On June 19, 2009, the Associated Press reported that a group of bondholders and some of the automaker's labor unions filed objections to Old GM's proposed Section 363 sale and that "additional objections filed by consumer groups, a handful of states and cities, and individual retirees,

2

shareholders and bondholders, threaten[ ] to put the brakes on what has so far been a speedy trip

through the Chapter 11 process."  (Bree Fowler, *Bondholders, Unions Object to GM Asset Sale*,

Associated Press, June 19, 2009.)

7.      Attached as **Exhibit 4** and **Exhibit 5** are true and correct copies of a June 22,

2009 article entitled *Missouri Challenges GM Bankruptcy Plan*, published in the St. Louis

Business Journal, and a June 23, 2009 article entitled *37 States Claim GM Using Court to Skirt*

*State Laws; AGs File Objection in Bankruptcy Proceedings*, published in The Washington

Times.  The articles reported that 37 state Attorney Generals objected to Old GM's bankruptcy

plan on the ground that the plan "would free the automaker of lemon law and product liability

requirements, hurting customers who recently bought cars."  (Kelsey Volkmann, *Missouri*

*Challenges GM Bankruptcy Plan*, St. Louis Business Journal, June 22, 2009; William Ehart, *37*

*States Claim GM Using Court To Skirt State Laws; AGs File Objection In Bankruptcy*

*Proceedings*, The Washington Times, June 23, 2009.)

8.      Attached as **Exhibit 6** is a true and correct copy of a June 29, 2009 article entitled

*GM Agrees to Liability for Defects After Bankruptcy — Auto Maker's Decision Comes Amid*

*Pressure from States, Consumer Advocates in Advance of Tuesday Hearing*, published in The

Wall Street Journal.  The article reported that "victims with pending lawsuits, those who won

damages against [Old] GM before it filed for bankruptcy and those who get in accidents while

the auto maker is under bankruptcy protection will still be unable to bring claims against the new

GM.  They would remain with other unsecured creditors making claims against the old GM.

Those victims are likely to recover little or nothing."  (Mike Spector, *GM Agrees to Liability for*

*Defects After Bankruptcy — Auto Maker's Decision Comes Amid Pressure from States,*

*Consumer Advocates in Advance of Tuesday Hearing*, The Wall Street Journal, June 29, 2009.)

9.      Attached as **Exhibit 7** is a true and correct copy of a July 1, 2009 article entitled *GM Faces July 10 Liquidation if Asset Sale Is Denied*, published in The Detroit News. The article reported that "[m]otorists injured in crashes and accidents involving General Motors Corp. vehicles protested outside U.S. Bankruptcy Court this morning ahead of this key hearing in the automaker's bankruptcy case.  The victims and their relatives, who have pending lawsuits against GM, likely will be left with no opportunity to collect damages if a judge, as expected, allows the automaker to sell its best assets to a government-sponsored company.  The judge's approval could come this week."  (Robert Snell, *GM Faces July 10 Liquidation if Asset Sale Is Denied*, The Detroit News, July 1, 2009.)

10.      Attached as **Exhibit 8** is a true and correct copy of a July 2, 2009 article entitled *GM Says Approval of Restructuring is Urgent*, published in The Washington Post.  The article reported that "the new GM would assume responsibility for claims arising from accidents that occur after the sales transaction, even if they involve GM vehicles made before the sale of the company.  Those who suffered injuries before that would have to pursue the old GM, which means they would probably recover little, if any, money."  (Tomoeh Murakami Tse, *GM Says Approval of Restructuring is Urgent*, The Washington Post, July 2, 2009.)

11.      Attached as **Exhibit 9** is a true and correct copy of a July 7, 2009 article entitled *GM Ruling Blow to Crash Victims; Bankruptcy Plan Would Limit Existing Liability Claims*, published in the Sacramento Bee. The article reported that "Attorney Christine Spagnoli, president of the Sacramento-based Consumer Attorneys of California, said if the judge's ruling stands, consumers with existing claims are 'pretty much going to be out of luck, pennies on the dollar.'"  (Mark Glover, *GM Ruling Blow to Crash Victims; Bankruptcy Plan Would Limit Existing Liability Claims*, Sacramento Bee, July 7, 2009.)

12.    Attached as **Exhibit 10** is a true and correct copy of a July 7, 2009 article entitled *Car Accident Plaintiffs Scurry to File Appeals vs. GM Plan; They Say Bankruptcy Strategy Would Free Automaker from Liability*, published in the Grand Rapid Press. The article reported that "Steve Jakubowski, who filed the appeal notice for the accident litigants, said his appeal would assert the bankruptcy judge overstepped his authority by preventing victims from pursuing litigation under their state product liability laws."    (*Car Accident Plaintiffs Scurry to File Appeals vs. GM Plan; They Say Bankruptcy Strategy Would Free Automaker from Liability*, Grand Rapid Press, July 7, 2009.)

Dated: November 5, 2014

_____
                Andrew B. Bloomer

# Exhibit 1

4.



# Lexis®

**Search** ▼ | **Get a Document** ▼ | **Shepard's®** ▼ | **More** ▼

Switch Client | Preferences | Help | S

🕑 **History** | View

Mega News, Major Newspapers: (run 10/29/2014)

**FOCUS™ Terms** [ hlead((caps(general motors) or allcaj ] Search Within [ Original Results (1 - 1331) ∨ ] [ Go ]   Advanced....

Edit Search | Save As Alert | Hide Hits

⬇ **1 - 50 of 1314\*** ⬆ Why is this number different?

**View** [ Cite ∨ ]   ∨ What's this?

**Sort By** [ Default ∨ ]

**Source:** News & Business > Combined Sources > Mega News, Major Newspapers [ℹ]
**Terms:** hlead((caps(general motors) or allcaps(gm)) w/25 (restructur! or bankrupt! or insolven!)) and date(geq (6/1/2009) and leq (7/10/2009)) (Suggest Terms for My Search)

**Duplicate Options** [ On - High similarity ] ∨ What's this?

# Exhibit 2



225 of 662 DOCUMENTS

Copyright 2009 The Washington Times LLC
All Rights Reserved
The Washington Times

June 4, 2009 Thursday

**SECTION:** BUSINESS; A10

**LENGTH:** 560 words

**HEADLINE:** Accident victims fight for carmaker payouts;
Chrysler, GM bankruptcies affect liability

**BYLINE:** By John P. Krudy, THE WASHINGTON TIMES

**BODY:**

Accident victims and their lawyers descended on Capitol Hill on Wednesday, urging Congress and the Obama administration to guarantee their ability to seek medical reimbursement from Chrysler and General Motors. The companies' Chapter 11 filings treat victims as unsecured creditors who must wait in line to receive their payouts.

"Our tax dollars are now being used to take away our right for compensation," said Jeremy Warriner of Indianapolis, who lost both of his legs in 2005 after suffering severe burns when his Jeep Wrangler crashed. "I'm here to make certain this is fixed, and other Americans don't have to fight this fight."

Bankruptcy Judge Arthur Gonzalez overruled the objections of the Ad Hoc Committee of Consumer-Victims of Chrysler LLC on Monday when he approved the company's sale to Fiat. The group sought a fund or a retroactive insurance policy to cover the cost of lawsuits and medical treatment. A policy like that would cost $300 million a year, enough to cover the $250 million Chrysler paid last year in medical settlements, according to the group.

"This is an unprecedented use of the bankruptcy system, to not pass on successor liability [to Fiat]," said James Lowe, an attorney for the group. "This filing was obviously prepackaged, pre-engineered and backed by the White House. It went through that judge like butter."

Mr. Lowe said a rushed bankruptcy could cause a similar loss of rights in GM's case.

Clarence Ditlow, director of the Center for Auto Safety, said Fiat "was willing to assume the liabilities" of Chrysler.

Accident victims fight for carmaker payouts; Chrysler, GM bankruptcies affect
liability The Washington Times June 4, 2009 Thursday

"When [Chrysler and Fiat] met with the auto task force, that changed," he told reporters at a Capitol news briefing Wednesday. "The [task force] is guiding this bankruptcy, and it left the consumers out in the cold."

Victims and their families at the news conference said they were surprised to lose their rights in bankruptcy.

"I want to go to court and plead our case," said Bob Dinnigan, whose daughter Amanda suffered spinal cord injuries and is now a paraplegic after what Mr. Dinnigan described as a "seat-belt defect" injured her in a February 2007 crash.

A spokesman for Chrysler defended the decisions made by the bankruptcy court.

"The other option - liquidation - would have had far more dire consequences for employees, retirees, dealers, suppliers and creditors - including unsecured tort claimants," Chrysler spokesman Michael Palese said. "All these people are considered unsecured creditors, and they can bring their complaints to the bankruptcy process."

Some observers described Wednesday's media event, in the Rayburn House Office Building, as a publicity stunt staged by trial lawyers who wish to ignore bankruptcy law.

"The Obama administration is abusing bankruptcy process, but the bar on these legal claims is the same whatever type of bankruptcy you use," said Andrew Grossman, senior legal policy analyst for the Heritage Foundation, a conservative D.C. think tank. "That's the case in all bankruptcies: It cleanses the company of existing obligations."

"Those who in fact were injured and can make a plausible case should do so," said Darren McKinney, director of communications for the American Tort Reform Association, which seeks to reduce the number of lawsuits clogging the civil justice system. "But the bankruptcy judge takes that into account, and that's the way the cookie crumbles."

**GRAPHIC:** Shaun Doss, 6, of Gilbert, Ariz., listens to other accident victims Wednesday during a Capitol Hill news conference urging a guarantee on medical reimbursements from Chrysler and General Motors. [Photo by Barbara L. Salisbury/The Washington Times]

**LOAD-DATE:** June 4, 2009

# Exhibit 3



FOCUS - 40 of 162 DOCUMENTS

Copyright 2009 Associated Press
All Rights Reserved
The Associated Press

June 19, 2009 Friday

**SECTION:** DOMESTIC NEWS

**LENGTH:** 755 words

**HEADLINE:** Bondholders, unions object to GM asset sale

**BYLINE:** By BREE FOWLER, AP Auto Writer

**DATELINE:** NEW YORK

**BODY:**

A group of General Motors Corp. bondholders and some of the automaker's labor unions filed objections Friday to GM's plan to sell its assets to a new company that can emerge from bankruptcy protection.

Their opposition, along with additional objections filed by consumer groups, a handful of states and cities, and individual retirees, shareholders and bondholders, threatens to put the brakes on what has so far been a speedy trip through the Chapter 11 process.

The Unofficial Committee of Family & Dissident GM Bondholders claim they are being treated unfairly compared with the automaker's other stakeholders and deserve more than the 10 percent stake in the new company that they would receive if the sale goes through.

In its motion, the bondholders group accused GM and the U.S. government of unjustly speeding the case through the bankruptcy process at the expense of the bondholders and dividing the new company's assets "among a few select favored classes."

"GM's bondholders appear to be the most disfavored and discriminated class in the scheme," the group wrote, pointing to the larger 17.5 percent stake the United Auto Workers union is slated to get under the sale.

The group claims to represent about 1,500 bondholders with holdings worth more than $400 million. It's also asking the court to grant it permission to form a formal committee that would be able to negotiate with GM separately from larger bank and investment firm bondholders. A hearing on that request is

Bondholders, unions object to GM asset sale The Associated Press June 19, 2009
Friday

scheduled for Tuesday.

GM spokeswoman Renee Rashid-Merem declined to comment on the group's objection, saying that the company doesn't discuss specific claims or possible outcomes that will be determined by the bankruptcy court.

As part of GM's restructuring plan, the automaker wants to sell the bulk of its assets to a new company in which the U.S. government will take a 60 percent ownership stake. The Canadian government would get 12.5 percent of the new GM, with the UAW taking a 17.5 percent share and unsecured bondholders receiving 10 percent. Existing GM shareholders are expected to be wiped out.

The support of bondholders is seen as a key step toward moving the bankruptcy process along quickly and allowing GM to meet its goal of emerging from court oversight in 60 to 90 days.

The day before GM's June 1 bankruptcy protection filing, a group of ad hoc institutional bondholders said that 54 percent of the automaker's bondholders had agreed to exchange their shares of automaker's $27 billion in unsecured bonds for the 10 percent stake and warrants to purchase a greater stake in the new company later.

Chrysler LLC also tried to hammer out a deal in the days leading to its April 30 Chapter 11 filing, but it faced heavy resistance from debtholders representing a fraction of its $6.9 billion in secured debt.

That group objected to Chrysler's plan to sell the bulk of its assets to Italy's Fiat Group SpA, and took the case all the way to the U.S. Supreme Court before the sale ultimately went through. Attorneys for consumer groups and people with product liability lawsuits against Chrysler also appealed the sale to the high court.

Several of the same consumer groups are also objecting to the GM sale, because like in the case of Chrysler, the new company would not be responsible for product liability claims related to vehicles produced and sold by the old company.

Consumers would be left to file claims against the assets remaining after the sale, and it is unlikely that there will be anything left to pay those claims.

Meanwhile, the IUE-CWA, United Steelworkers and International Union of Operating Engineers claimed Friday that the GM sale will ultimately take away the health care benefits of their 50,000 retirees.

Before it filed for bankruptcy protection, GM reached a deal to give the UAW a stake in the new company to help fund retiree heath care benefits, but no such agreement has been reached with the other unions.

"If GM succeeds in leaving behind these union-represented retirees and dependents, they will be left with only an unsecured claim against old GM for more than $3 billion in retiree health care and hundreds of millions more for retirement life insurance," the unions said in their objection.

Rashid-Merem said discussions related to the non-UAW health care benefits are ongoing, and the company hopes to reach final decisions about their future soon.

Bondholders, unions object to GM asset sale The Associated Press June 19, 2009
Friday


    A hearing on the sale of GM's assets to the new government-led entity is
scheduled for June 30. The deadline to file objections with the court was 5 p.m.
Friday.

**LOAD-DATE:** June 20, 2009

# Exhibit 4



63 of 662 DOCUMENTS

Copyright 2009 American City Business Journals, Inc.
All Rights Reserved

### ST. LOUIS BUSINESS JOURNAL

St. Louis Business Journal

June 22, 2009 Monday

**LENGTH:** 290  words

**HEADLINE:** Missouri challenges GM bankruptcy plan

**BYLINE:** Kelsey Volkmann

**BODY:**

   Missouri Attorney General Chris Koster is challenging General Motors Corp.'s bankruptcy plan, calling it unfair for both consumers and dealerships.

   GM's plan would free the automaker of lemon law and product liability requirements, hurting customers who recently bought cars, Koster's office said Monday.

   Attorneys general from Connecticut, Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Dakota and Vermont filed an objection about the provision Friday in U.S. Bankruptcy Court in New York.

   But Chrysler emerged from bankruptcy earlier this month free of the same liabilities for vehicle defects.

   Koster said he also is concerned about how GM's bankruptcy plan treats automobile dealerships.

   The current agreement allows the post-bankruptcy GM to decide unilaterally what contractual provisions to insert into dealership contracts and requires the dealerships to accept the contracts as written by the automaker.

   The agreement takes away the dealerships' right to object, even if the contract does not give them the protections they have in state law, Koster's office said.

Missouri challenges GM bankruptcy plan St. Louis Business Journal June 22, 2009
Monday

"The current agreement is terribly unfair to these dealership owners, many of whom have been loyal GM dealers for decades and have invested their life savings in these family businesses," Koster said in a statement. "It is unconscionable to force a dealership to waive its rights under Missouri law simply because GM has floundered."

Sam Barbee, president and chief executive officer of the Missouri Automobile Dealers Association, praised Koster's objections to GM's bankruptcy plan. "His efforts are focused not just on ensuring the legal rights of affected Missouri dealers and their businesses, but also protecting Missouri's consumers," he said in a statement.

**LOAD-DATE:** June 22, 2009

# Exhibit 5



49 of 662 DOCUMENTS

Copyright 2009 The Washington Times LLC
All Rights Reserved
The Washington Times

June 23, 2009 Tuesday

**SECTION:** THE SECOND FRONT; A03

**LENGTH:** 457 words

**HEADLINE:** 37 states claim GM using court to skirt state laws;
AGs file objection in bankruptcy proceedings

**BYLINE:** By William Ehart, THE WASHINGTON TIMES

**BODY:**

General Motors came under attack Monday from another quarter when 37 states, including Maryland and Virginia, filed an objection in the automaker's bankruptcy proceedings.

The objection, filed by Nebraska Attorney General Jon Bruning on behalf of the other states, argues that the company should not be able to use bankruptcy court to skirt state laws, including franchise laws protecting dealers' relationship with the automaker.

The states find fault not just with GM's 1,350 dealer terminations, but with the terms it is forcing continuing dealers to accept.

"The attorneys general have grave concerns over what GM is doing," said Mr. Bruning, a Republican. "Ignoring state law is not only illegal, it's just plain bad business, and we're going to try and stop it."

The objection also covers such ground as environmental and personal-injury liability and consumer warranty claims.

Mr. Bruning is president of the National Association of Attorneys General.

GM is also under fire from its dealers, some of its bondholders and Congress, which has introduced legislation on the dealer issue.

The states filed objections in Chrysler's bankruptcy case without success, though Mr. Bruning said some of their concerns were addressed. The issue of continuing dealers was not a factor in Chrysler's proceedings.

37 states claim GM using court to skirt state laws; AGs file objection in
bankruptcy proceedings The Washington Times June 23, 2009 Tuesday

"In the GM case, we also are objecting to the treatment of the dealers being retained," said Raquel Guillory, a spokeswoman for Maryland Attorney General Douglas F. Gansler, a Democrat. "They want them to sign away any rights they have under state law.

"We don't think they should ask them to do that, and we don't think that they should be allowed to ask the dealers to do that."

States involved in the objection also include California, Massachusetts, Michigan, New Jersey and Pennsylvania. Texas filed a similar objection on its own.

Mr. Bruning said later Monday that he and representatives from four other states had a "very productive" conference call with Matt Feldman, a bankruptcy lawyer for President Obama's auto task force.

"I said the closings need to be a transparent process, that if there are metrics, those metrics need to be clear," Mr. Bruning said. "He agreed that transparency would be useful in the process, and he wants to be more transparent going forward.

"He assured me that the government was not involved in choosing which of the dealers would be closed."

Mr. Bruning said there are examples of GM dealer closings in his state that put the fairness of the process in doubt.

"One dealer bought his dealership for $2 million four years ago. He has tripled his sales, and they are shutting him down and giving him $70,000," he said. "They relocate the franchise in the same town, and the new dealer doesn't have to pay anything."

**GRAPHIC:** Nebraska Attorney General Jon Bruning filed an objection in GM's bankruptcy proceedings Monday on behalf of 37 states. [Photo by Associated Press]

**LOAD-DATE:** June 23, 2009

# Exhibit 6



FOCUS - 33 of 208 DOCUMENTS

Copyright 2009 Factiva ®, from Dow Jones
All Rights Reserved

**Dow Jones** Factiva

(Copyright (c) 2009, Dow Jones & Company, Inc.)

## THE WALL STREET JOURNAL.
The **Wall Street Journal**

June 29, 2009 Monday

**SECTION:** Pg. B3

**LENGTH:** 710 words

**HEADLINE:** Corporate News: GM Agrees to Liability for Defects After Bankruptcy --- Auto Maker's Decision Comes Amid Pressure From States, Consumer Advocates in Advance of Tuesday Hearing

**BYLINE:** By Mike Spector

**BODY:**

   General Motors Corp., under pressure from state attorneys general, agreed to assume legal responsibility for injuries drivers suffer from vehicle defects after the auto maker emerges from U.S. bankruptcy protection.

   The concession means consumers who are injured in car accidents after GM emerges from bankruptcy protection will be able to bring product-liability claims against the government-owned auto maker.

   Under GM's original bankruptcy plan, the auto maker planned to leave such liabilities behind after selling its "good" assets to a new GM owned by the government. That meant future car-accident victims who believe that faulty manufacturing by the old GM caused their injuries would be unable to sue the new GM. Instead, they would have been treated as unsecured creditors, fighting over the remains of GM's old bankruptcy estate.

   GM's agreement to take responsibility for future product-liability claims, outlined in a court filing late Friday, represents a partial victory for more than a dozen state attorneys general and several consumer-advocacy groups. They had objected to GM's original plan to shed these liabilities, arguing it would

Corporate News: GM Agrees to Liability for Defects After Bankruptcy --- Auto
Maker's Decision Comes Amid Pressure From States, Consumer Advocates in Advance
of Tuesday Hearing The Wall Street Jou

rob future car-accident victims of their legal rights because they would have no
way of knowing they might be entitled to claims.

GM advisers, members of President Barack Obama's auto task force and the
attorneys general negotiated for several days to address concerns about
product-liability claims, among other issues. The talks heated up Friday ahead
of GM's Tuesday court date, when it will ask a judge to approve the auto maker's
plan to create a new GM by selling its desirable assets to the government.

An administration official recently said the government had become concerned
about murky legal precedent surrounding the issue of future product-liability
claims. The official said case law was "unclear and ambiguous on the issue of
future product-liability claims" making it sensible "for both sides to settle."

GM maintained in court papers that it wasn't legally required to take on the
claims, saying federal pre-emption meant the bankruptcy code overrode state laws
governing the rights of car-accident victims to sue the new GM. It also noted
that Chrysler Group LLC, which recently emerged from bankruptcy in a deal with
Fiat SpA, wouldn't be responsible for such claims, after a bankruptcy judge
dismissed objections to its plan.

GM said it ultimately agreed to take on future product-liability claims "to
alleviate certain concerns that have been raised on behalf of consumers."

Car-accident victims with pending lawsuits, those who won damages against GM
before it filed for bankruptcy and those who get in accidents while the auto
maker is under bankruptcy protection will still be unable to bring claims
against the new GM. They would remain with other unsecured creditors making
claims against the old GM. Those victims are likely to recover little or
nothing.

Attorneys general were expected to "keep pressing" for the new GM to take on
those liabilities ahead of Tuesday's court hearing, a person involved in the
discussions said. But the person said GM and the government were unlikely to
capitulate further.

An ad hoc committee representing car-accident victims who have sued GM said
there are more than 300 people with personal-injury claims exceeding $1.25
billion.

A committee representing GM and Chrysler car-accident victims called GM's
move "a positive development."

The committee said new GM should take on claims from victims already hurt
from defective GM vehicles. It said Chrysler also should take responsibility for
future claims as well as those with pending lawsuits and successful cases
brought against Chrysler before it filed for bankruptcy.

The committee said Chrysler's unwillingness to take on future claims as GM
has represented "an unacceptable double standard."

A Chrysler spokeswoman declined to comment. A GM spokesman declined to
comment beyond the auto maker's court filing.

Separately, talks were expected to continue over further compensation for
dealers whose contracts were terminated as part of GM's bankruptcy. GM so far

Corporate News: GM Agrees to Liability for Defects After Bankruptcy --- Auto
Maker's Decision Comes Amid Pressure From States, Consumer Advocates in Advance
of Tuesday Hearing The Wall Street Jou

has signaled it won't compensate dealers beyond programs the auto maker already
outlined.

    License this article from Dow Jones Reprint Service

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.

**LOAD-DATE:** May 31, 2010

# Exhibit 7



FOCUS - 153 of 167 DOCUMENTS

Copyright 2009 The Detroit News
All Rights Reserved
The Detroit News (Michigan)

July 1, 2009 Wednesday
no-dot Edition

**SECTION:** BUSINESS

**LENGTH:** 650 words

**HEADLINE:** Henderson: GM faces July 10 liquidation if asset sale is denied

**BYLINE:** Robert Snell

**BODY:**

The Detroit News

New York - General Motors Corp. will face liquidation July 10 unless a federal bankruptcy judge approves the sale of the automaker's best assets to a new company, President and CEO Fritz Henderson testified today.

The U.S. Treasury Department has told GM it will provide no additional financing if the assets are not sold by July 10, Henderson said during early testimony in U.S. Bankruptcy Court.

If that deadline is missed, "we will liquidate," Henderson testified.

After a late court start, Henderson was questioned by attorneys representing GM creditors such as asbestos claimants and their families, and dissident bondholders.

Henderson also said that once a new GM emerges from bankruptcy court, the company will not change its operating name: It will still be called General Motors.

Henderson's testimony could last several days.

Motorists injured in crashes and accidents involving General Motors Corp. vehicles protested outside U.S. Bankruptcy Court this morning ahead of this key hearing in the automaker's bankruptcy case.

The victims and their relatives, who have pending lawsuits against GM, likely will be left with no opportunity to collect damages if a judge, as expected,

Henderson: GM faces July 10 liquidation if asset sale is denied The Detroit News
(Michigan) July 1, 2009 Wednesday

allows the automaker to sell its best assets to a government-sponsored company.
The judge's approval could come this week.

The protestors, along with a parade of union workers chanting "Save our
benefits," added drama at the start of a historic day for GM, which is trying to
emerge from bankruptcy court as a new, largely debt-free company.

"GM is trying to weasel out of its obligations," said Missouri resident Terry
Cole, 53, who sued after a fiery accident involving his Cadillac Escalade two
years ago left the wheelchair-bound man with third-degree burns. He sued, but
the lawsuit was put on hold after GM filed Chapter 11 bankruptcy June 1.

The start of today's hearing was delayed by more than an hour, as technical
issues were worked out to ensure that the proceedings could be broadcast to
overflow rooms.

During the delay, Judge Robert Gerber also told participants - including
Henderson - that the heat and rising temperatures in the courtroom didn't
warrant strict adherence to formal protocol. Typically, men are not allowed to
remove their suit coats in the courtroom, but that rule was waived today.

"Anything you want to do to be more comfortable," Gerber said.

Henderson then took off his jacket.

GM on Friday agreed to cover future liability claims no matter when the
vehicles involved were built, but liability claims pending before GM filed for
bankruptcy are still likely to be classified as bad assets and left behind in
bankruptcy.

"They want to leave us in the gutter," Cole said. "I can't believe the
president would let GM be this immoral."

Minutes later, dozens of retirees from Ohio marched past, carrying yellow
signs reading "Save the Middle Class," in a show of protest against GM's attempt
to terminate retiree health care benefits. The groups clogged the entrance to
the U.S. Bankruptcy Court, where dozens of lawyers, reporters and the curious
waited in line to witness GM's court hearing.

Outside the courthouse, it was a sea of sad tales, like Jones, and the
surreal.

A busker dressed as a bright yellow ball milled about, advertising tonight's
$94 million MegaMillions lottery.

U.S. Homeland Security agents and NYPD officers stood guard outside while
subway riders spilled from a station just outside the courthouse entrance.

Nearby, newspaper peddlers rubbed shoulders with a guy hawking bootleg CDs
alongside vendors selling farm-fresh green beans and beets, and pound cake.

GM is using Section 363 of the Chapter 11 bankruptcy code that allows for
assets to be divided into the good ones that will be assumed by a new automaker
and the bad that are deemed of little value and will remain in court to be
liquidated.

Come back to www.detnews.com for updates throughout the day.

Henderson: GM faces July 10 liquidation if asset sale is denied The Detroit News
(Michigan) July 1, 2009 Wednesday

**LOAD-DATE:** July 23, 2009

# Exhibit 8



FOCUS - 142 of 167 DOCUMENTS

Copyright 2009 The Washington Post
All Rights Reserved

The Washington Post
washingtonpost.com
The Washington Post

July 2, 2009 Thursday
Suburban Edition

**SECTION:** FINANCIAL; Pg. A11

**DISTRIBUTION:** Maryland

**LENGTH:** 804 words

**HEADLINE:** GM Says Approval of Restructuring Is Urgent

**BYLINE:** Tomoeh Murakami Tse; Washington Post Staff Writer

**DATELINE:** NEW YORK, July 1

**BODY:**

General Motors mounted a final push for its historic restructuring plan, arguing before a federal bankruptcy judge Wednesday that the U.S. government would cut off funding -- in effect risking liquidation of the automaker -- unless it won quick approval for the turnaround proposal.

The government has "no intention to further fund this company if the sale order is not entered by July 10," said Harry Wilson, a member of the Obama administration's auto task force who oversaw the government's day-to-day dealings with GM.

Wilson's testimony came during the second day of hearings on a request to approve the sale of the automaker's assets to a "new" GM that would be 61 percent owned by the U.S. government.

Wilson told the court that he expected an initial public offering of the new GM's stock in 2010. That would allow the Obama administration, which has said it

GM Says Approval of Restructuring Is Urgent The Washington Post July 2, 2009
Thursday

does not want to run private companies, to sell its GM stake.

In closing arguments, attorneys for GM, and the governments of the United States and Canada, which has also provided funding, urged Judge Robert Gerber to approve the sale quickly. Speed, they said, was of the essence, because GM's assets -- as well as consumer confidence -- are fragile.

Under the proposed agreement, the government can walk away if the judge does not approve the deal by July 10 or if the sale is not completed by Aug. 15.

According to a source familiar with the matter, GM and the Obama administration's auto task force are aiming to close the sale Tuesday. That would mean GM would emerge from bankruptcy 37 days after seeking court protection, or five days faster than Chrysler managed the same feat.

Unlike the Chrysler case, GM has faced no major threat to its sale, in part because the legal path for the type of speedy bankruptcy being sought had been tested by Chrysler.

Despite the more than 700 objections that have been filed by bondholders, unions and other GM stakeholders, no one has seriously questioned the fundamental merits of the government-orchestrated plan to revitalize the largest U.S. automaker, attorneys for GM and the federal government said during closing arguments. Under the proposed sale, GM would sell its profitable assets to the new GM. Left behind in bankruptcy with the "old" GM would be liabilities and assets that would be a drag on the new, leaner company, they said.

"No party has come forward with another source of financing or proposed higher value for assets to be sold," said bankruptcy lawyer Harvey Miller, who is representing GM.

The objectors, Miller said, largely want more money, or more time to gain negotiating leverage.

Aside from the precedent set by Chrysler, there are several factors contributing to GM's fast trip through bankruptcy proceedings so far.

Last week, the Treasury Department struck a deal with a number of state attorneys general who had objected to the sale of GM assets "free and clear" of liens, removing a potential hurdle.

Under the plan, the new GM would assume responsibility for claims arising from accidents that occur after the sales transaction, even if they involve GM vehicles made before the sale of the company. Those who suffered injuries before that would have to pursue the old GM, which means they would probably recover little, if any, money. Some of those claimants showed up in court in wheelchairs or with pictures of loved ones lost.

Under repeated questioning from attorneys for people who would be forced to seek claims against the old company, Wilson of the auto task force said GM's commercial viability was the sole factor the government used when deciding which liabilities the new automaker would assume.

"This entity that's going forward has a challenge before it," Miller told the court. "It has to materially increase sales. It has to lower its costs of operations. It cannot afford to take on unnecessary liabilities."

GM Says Approval of Restructuring Is Urgent The Washington Post July 2, 2009
Thursday

GM also faced no court objections from dealers it is seeking to shed. GM is allowing more time than Chrysler for the dealers to wind down their operations. In addition, the company has set up a system for dealers to appeal, Miller said. Sixty dealers have successfully won reversals, the company has said.

GM and the federal government had also secured agreements before the June 1 bankruptcy filing with more than half of GM's bondholders, a group that collectively holds $27 billion in unsecured loans. They are to receive a 10 percent stake in the new company, plus warrants for an additional 15 percent if certain conditions are met.

Michael Richman, an attorney for three dissenting bondholders, plans to offer his closing argument Thursday. GM's Miller challenged the bondholders' standing in court, arguing that those individuals hold a mere $2.3 million in bonds purchased for no more than $20 per $1,000 in face value.

The judge overruled Miller on the matter.

**GRAPHIC:** IMAGE; By Paul Sakuma -- Associated Press; General Motors' sales last month were down 33 percent from June 2008. The drop was sharper than the overall decline in U.S. auto sales by the same measure.
IMAGE; By Brendan Mcdermid -- Reuters; GM chief executive Fritz Henderson enters U.S. Bankruptcy Court in New York, where attorneys asked for quick approval of the company's reorganization.
IMAGE

**LOAD-DATE:** July 2, 2009

# Exhibit 9



FOCUS - 81 of 167 DOCUMENTS

Copyright 2009 McClatchy Newspapers, Inc.
All Rights Reserved
Sacramento Bee (California)

July 7, 2009 Tuesday
METRO FINAL EDITION

**SECTION:** BUSINESS; Pg. B6

**LENGTH:** 783 words

**HEADLINE:** GM ruling blow to crash victims;
BANKRUPTCY PLAN WOULD LIMIT EXISTING LIABILITY CLAIMS

**BYLINE:** Mark Glover mglover@sacbee.com

**BODY:**

The head of a Sacramento-based consumer advocacy group says a judge's ruling Sunday in the General Motors bankruptcy case is a stinging blow to those who have been injured by defective GM cars but is still a better deal for consumers than the plan for Chrysler.

"It's a partial victory for consumers," said Rosemary Shahan, president of the Sacramento-based nonprofit Consumers for Auto Reliability and Safety.

U.S. Bankruptcy Judge Robert Gerber late Sunday approved a crucial step of GM's reorganization plan, allowing the troubled automaker to sell its assets to a new company. Gerber said the deal was in the best interest of both the automaker and its creditors, who would get nothing if GM was forced to liquidate.

The plan would free the "new GM" from liability for people injured by a defective GM product before June 1. People injured before that date would have to seek compensation from the "old GM," a collection of assets left over from the sale.

Shahan, who has been at the center of numerous battles between the auto industry and consumers, said Gerber's ruling is "better than what we saw with Chrysler, because it (protects) consumers injured in the future, including those who are in (GM) vehicles produced prior to the bankruptcy."

Shahan said covering future claims is important because of the large volume of GM vehicles on the roadways, compared with Chrysler.

GM ruling blow to crash victims; BANKRUPTCY PLAN WOULD LIMIT EXISTING LIABILITY
CLAIMS Sacramento Bee (California) July 7, 2009 Tuesday

She said CARS would not appeal Sunday's ruling, "because we're focused on
future claims."

However, she said the ruling's lack of consumer protection on existing claims
against GM, which Shahan said is in the $1.25 billion range, was a major
shortfall and something worth challenging by other groups.

"No, we don't accept that," Shahan said. "Consumers deserve those
protections. The other thing I'm concerned about is I hope (GM) doesn't go
bankrupt again."

Attorney Christine Spagnoli, president of the Sacramento-based Consumer
Attorneys of California, said if the judge's ruling stands, consumers with
existing claims are "pretty much going to be out of luck, pennies on the
dollar."

A Chicago law firm representing people who have sued GM has announced plans
to appeal the judge's ruling. The deadline to appeal the case to the U.S.
District Court is noon Thursday, after which point Gerber's order takes effect
and the sale is free to close.

Steve Jakubowski, who filed the appeal notice for the accident litigants,
said his appeal would assert that the bankruptcy judge overstepped his authority
by preventing victims from pursuing litigation under their state product
liability laws.

He estimated that about 1,000 lawsuits could be pending with potential
damages in the range of hundreds of millions of dollars.

Robert Dinnigan, whose 10-year-old daughter, Amanda, was paralyzed from the
neck down in an accident aboard a 2003 GMC Envoy two years ago, said the court
decision may have doomed the chances of a lawsuit he filed against GM after the
February 2007 crash.

"Our only recourse is the old GM. There isn't going to be anything left even
if we get a chance to go to court," said Dinnigan, who faces medical bills of
around $500,000 per year. It cost about $100,000 to retrofit Dinnigan's
Smithtown, N.Y., home to accommodate Amanda's needs, he said.

To date, the courts have sided primarily with the beleaguered carmakers
rather than consumer groups.

In May, CARS and other advocacy groups asked a federal bankruptcy court to
bar a restructured Chrysler from escaping liability in connection with past and
future consumer claims of defective cars produced by the automaker.

Shahan said advocates were "giddy with hope" before their proposals
ultimately were turned aside by the U.S. Supreme Court.

Steve Rattner, the head of the Obama administration's auto task force, said
the government was "confident that (Gerber's) decision will stand and the sale
of GM's assets to new GM will proceed expeditiously."

The bankruptcy judge's ruling followed a three-day hearing that wrapped up
Thursday. GM and government officials had urged a quick approval of the sale,
saying it was needed to keep the automaker from selling itself off piece by

GM ruling blow to crash victims; BANKRUPTCY PLAN WOULD LIMIT EXISTING LIABILITY
CLAIMS Sacramento Bee (California) July 7, 2009 Tuesday

piece. The Treasury Department, which is expected to provide about $50 billion
to the automaker, has vowed to cut off funding to GM if the sale doesn't go
through by Friday.

   GM will leave bankruptcy court with significantly reduced debt and labor
costs, as well as fewer dealerships and brands. But the automaker still faces a
challenging U.S. auto market, where auto companies are on pace to sell around
9.7 million vehicles this year compared with sales of more than 16 million
vehicles in 2007.

   The Associated Press contributed to this report. Call The Bee's Mark Glover,
(916) 321-1184.

**LOAD-DATE:** July 8, 2009

# Exhibit 10



FOCUS - 76 of 167 DOCUMENTS

Copyright 2009 Grand Rapids Press
All Rights Reserved
Grand Rapid Press (Michigan)

July 7, 2009 Tuesday
ALL S EDITION

**SECTION:** BUSINESS; Pg. A11

**LENGTH:** 704 words

**HEADLINE:** Car accident plaintiffs scurry to file appeals vs. GM plan;
They say bankruptcy strategy would free automaker from liability

**BODY:**

   NEW YORK -- Groups representing plaintiffs in car accidents said Monday they
would oppose General Motors' attempt to quickly exit bankruptcy protection,
arguing hundreds of victims could be hurt by the government-led plan.

   U.S. Judge Robert Gerber approved a crucial step of the plan late Sunday,
allowing the troubled automaker to sell its assets to a new company and saying
the deal was in the best interest of the automaker and its creditors, who would
get nothing if the automaker was forced to liquidate.

   The Detroit carmaker's Chapter 11 filing June 1 was the fourth-largest in
U.S. history. Under Chapter 11 reorganization, a company can stay in operation
under court protection while it sheds debts and unprofitable assets.

   General Motors and the Obama administration praised the judge's decision, but
opponents readied an appeal to the U.S. District Court in New York. A Chicago
law firm representing people who have sued GM in several auto accident cases
said they objected to parts of the plan that would free the "new GM" from
liability for people injured by a defective GM product before June 1.

   Steve Jakubowski, who filed the appeal notice for the accident litigants,
said his appeal would assert the bankruptcy judge overstepped his authority by
preventing victims from pursuing litigation under their state product liability
laws.

   He estimated about 1,000 lawsuits could be pending with potential damages in
the range of hundreds of millions of dollars.

   "It affects ... virtually every walk of life in this country," he said.

Car accident plaintiffs scurry to file appeals vs. GM plan; They say bankruptcy strategy would free automaker from liability Grand Rapid Press (Michigan) July 7, 2009 Tuesday

The deadline to appeal the case to the District Court is noon Thursday, after which point Gerber's order takes effect and the sale can close.

Steve Rattner, the head of the Obama administration's auto task force, said the government was "confident that (Gerber's) decision will stand and the sale of GM's assets to new GM will proceed expeditiously."

The bankruptcy judge's ruling followed a three-day hearing that wrapped up Thursday. GM and government officials urged a quick approval of the sale, saying it was needed to keep the automaker from selling itself off piece by piece. The Treasury Department, which is expected to provide about $50 billion in aid to the automaker, has vowed to cut off funding to GM if the sale doesn't go through by Friday.

"Now, it's our responsibility to fix this business and place the company on a clear path to success without delay," GM CEO Fritz Henderson said.

Litigants injured by a defective GM product before June 1 would have to seek compensation from the "old GM," the collection of assets leftover from the sale, where they would be less likely to receive compensation.

Robert Dinnigan, whose 10-year-old daughter Amanda was paralyzed from the neck down in an accident aboard a 2003 GMC Envoy two years ago, said the court decision may have doomed the chances of a lawsuit he filed against GM after the February 2007 crash.

"Our only recourse is the old GM. There isn't going to be anything left even if we get a chance to go to court," said Dinnigan, who faces medical bills of about $500,000 per year. It cost about $100,000 to retrofit Dinnigan's Smithtown, N.Y., home to accommodate Amanda's needs.

Last month, objectors to Chrysler LLC's sale plan failed to convince an appellate court and the Supreme Court to block the automaker's sale to Italy's Fiat in appeals that lasted about a week after the bankruptcy judge cleared the deal.

Jakubowski said the 2nd Circuit's ruling in the Chrysler case created "a big hurdle" that may require an appeal to the Supreme Court. "At the end of the day, I think we're going to need Supreme Court review of this issue," he said.

David Neier, a New York-based bankruptcy lawyer who has followed the auto industry cases, said it was possible the court could determine the amount of consumer liability the new GM should be responsible for.

The new GM has agreed to take on responsibility for future product liability claims involving vehicles made by the old company.

In related news, The Lansing State Journal today reported the new GM will retain two Lansing-area assembly plants and a parts warehouse but four other area GM properties, sites of former metal stamping, assembly and engine plants, will be sold.

**LOAD-DATE:** July 10, 2009