# Exhibit A

**Hearing Date and Time:  To Be Determined**
**Objection Deadline:  To Be Determined**
**Reply Deadline:  To Be Determined**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (*pro hac vice* pending)
Andrew B. Bloomer, P.C. (*pro hac vice* pending)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------X
In re                                    :    Chapter 11
                                         :
MOTORS LIQUIDATION COMPANY, et al.,      :    Case No.:  09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                         :
                Debtors.                 :    (Jointly Administered)
                                         :
-------------------------------------------------------------x
```

**MOTION OF GENERAL MOTORS LLC PURSUANT**
**TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE**
**THE COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION**

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ................................................................................................. iv

**INTRODUCTION**.................................................................................................................... 1

**BACKGROUND STATEMENT OF FACTS** ......................................................................... 5

I.    OLD GM FILED FOR PROTECTION UNDER THE BANKRUPTCY CODE IN JUNE 2009.......................................................................................................... 6

    A.    Objectors to the Sale Motion Argued that New GM Should Assume Additional Liabilities of the Type Plaintiffs Now Assert in the Ignition Switch Actions. ...................................................................................... 6

    B.    The Court Issued Its Sale Order And Injunction, And The Product Liability Claimants And Others Appealed Because They Objected to the Fact That New GM Was Not Assuming *Their* Liabilities ...................................... 7

    C.    Upon Approval Of The MSPA And Issuance Of The Sale Order And Injunction, New GM Assumed Certain Narrowly Defined Liabilities, But The Bulk Of Old GM's Liabilities Remained With Old GM. .............................. 10

    D.    The Court's Sale Order And Injunction Expressly Protects New GM From Litigation Over Retained Liabilities. .................................................................. 11

II.    NEW GM HAS RECALLED CERTAIN VEHICLES AND IN RESPONSE, PLAINTIFFS HAVE FILED MULTIPLE IGNITION SWITCH ACTIONS. ................ 14

**NEW GM'S ARGUMENT TO ENFORCE THE COURT'S SALE ORDER AND INJUNCTION** ........................................................................................................... 16

I.    THIS COURT'S SALE ORDER AND INJUNCTION SHOULD BE ENFORCED. ......................................................................................................... 17

II.    NEW GM CANNOT BE HELD LIABLE FOR OLD GM'S ALLEGED CONDUCT, EITHER DIRECTLY OR AS OLD GM'S ALLEGED "SUCCESSOR."........................................................................................................ 19

III.    PLAINTIFFS' WARRANTY ASSERTIONS AND STATE LEMON LAW ALLEGATIONS DO NOT ENABLE THEM TO CIRCUMVENT THE COURT'S SALE ORDER AND INJUNCTION. ...................................................... 21

    A.    The Limited Glove Box Warranty is Not Applicable.  But As a Practical Matter, Plaintiffs Already Are Obtaining Such Relief As Part of the Recall. ................................................................................................................. 21

**Page**

    B.      Any Purported State Lemon Law Claims Are Premature At Best, And Cannot Be Adequately Pled. ............................................................................... 22

**CONCLUSION** ....................................................................................................... **23**

**NOTICE AND NO PRIOR REQUESTS** .............................................................. **26**

# TABLE OF AUTHORITIES

**Cases**

*Ayers v. Gen. Motors*,
    234 F.3d 514, (11th Cir. 2000) ................................................................ 11

*Back v. LTV Corp. (In re Chateaugay Corp.)*,
    213 B.R. 633 (S.D.N.Y. 1997) ............................................................... 17

*Baker v. Chrysler Corp.*,
    Civ. A. No. 91–7092, 1993 WL 18099 (E.D. Pa. Jan. 25, 1993) .................................... 23

*Burton v. Chrysler Group, LLC (In re Old Carco LLC)*,
    492 B.R. 392 (Bankr. S.D.N.Y. 2013) ................................................. 21, 23

*Callan v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
    428 B.R. 43 (S.D.N.Y. 2010) ............................................................. 9, 10

*Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.)*,
    Adv. Proc. No. 09–00509, 2012 WL 1339496 (Bankr. S.D.N.Y. April 17, 2012), *aff'd*,
    500 B.R. 333 (S.D.N.Y. 2013) ........................................................... 7, 18

*Celotex Corp. v. Edward*,
    514 U.S. 300 (1995) ................................................................ 4, 16, 18

*DiVigenze v. Chrysler Corp.*,
    345 N.J. Super. 314, 785 A.2d 37 (App. Div. 2001) ...................................... 23

*GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*,
    445 U.S. 375 (1980) ...................................................................... 18

*Handy v. Gen. Motors Corp.*,
    518 F.2d 786 (9th Cir 1975) ............................................................... 11

*Iams v. DaimlerChrysler Corp.*,
    174 Ohio App. 3d 537, 883 N.E.2d 466 (2007) ......................................... 23

*In re Cont'l Airlines, Inc.*,
    236 B.R. 318 (Bankr. D. Del. 1999) ....................................................... 17

*In re Gen. Motors Corp.*,
    No. M 47 (LAK), 2009 WL 2033079 (S.D.N.Y. July 9, 2009) ............................... 3

*In re Gen. Motors Corp.*,
    407 B.R. 463 (Bankr. S.D.N.Y. 2009) ................................................. 7, 8, 9

**Page**

*In re Gruntz,*
    202 F.3d 1074 (9th Cir. 2000) ........................................................ 19

*In re McGhan,*
    288 F.3d 1172 (9th Cir. 2002) ........................................................ 19

*In re Motors Liquidation Co.,*
    No. 09-50026 (REG), 2011 WL 6119664 (Bankr. S.D.N.Y. 2011) ................................ 17

*In re Wilshire Courtyard,*
    729 F.3d 1279 (9th Cir. 2013) ........................................................ 17

*McLaughlin v. Chrysler Corp.,*
    262 F. Supp. 2d 671 (N.D.W. Va. 2002) ........................................................ 23

*Palmer v. Fleetwood Enterp., Inc.,*
    Nos. C040161, C040765, 2003 WL 21228864 (Cal. Ct. App. May 28, 2003) ............... 23

*Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.),*
    430 B.R. 65 (S.D.N.Y. 2010) ........................................................ 10

*Pratt v. Ventas, Inc.,*
    365 F.3d 514 (6th Cir. 2004) ........................................................ 19

*Sipe v. Fleetwood Motor Homes of Penn., Inc.,*
    574 F. Supp. 2d 1019 (D. Minn. 2008) ........................................................ 23

*Spartan Mills v. Bank of Am. Ill.,*
    112 F.3d 1251 (4th Cir. 1997) ........................................................ 19

*Tatum v. Chrysler Group LLC,*
    Adv. Proc. No. 11-09411 (Bankr. S.D.N.Y. Feb. 15, 2012) ........................................................ 21

*Travelers Indem. Co. v. Bailey,*
    557 U.S. 137 (2009) ........................................................ 17

*Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.),*
    Adv. Proc. No. 09–09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013).. 11, 18, 20

*Tulacro v. Chrysler Group LLC, et al.,*
    Adv. Proc. No. 11-09401 (Bankr. S.D.N.Y. Oct. 28, 2011) ........................................................ 21

*U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.),*
    68 B.R. 690 (Bankr. S.D.N.Y. 1986) ........................................................ 17

**Page**

**Statutes and Rules**

11 U.S.C. § 105 .................................................................................................................... 17

11 U.S.C. § 363 ...................................................................................................................... 8

11 U.S.C. § 363(m) ............................................................................................................... 8

49 C.F.R. § 554.1 ................................................................................................................. 14

49 U.S.C. § 30119 ............................................................................................................... 14

# INTRODUCTION

In June 2009, General Motors LLC ("**New GM**") was a newly formed entity, created by the U.S. Treasury, to purchase substantially all of the assets of Motors Liquidation Company, formerly known as General Motors Corporation ("**Old GM**"). Through a bankruptcy-approved sale process, New GM acquired Old GM's assets, free and clear of all liens, claims, liabilities and encumbrances of Old GM, other than liabilities expressly assumed by New GM under a June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("**MSPA**").[1] The Bankruptcy Court approved the asset purchase transaction and the terms of the MSPA in its "**Sale Order and Injunction**," dated July 5, 2009.[2]

This Motion to Enforce does not address any litigation involving an accident or incident causing personal injury, loss of life or property damage. Further, this Motion to Enforce does not involve whether New GM should repair the ignition switch defect. New GM has committed to replacing the defective ignition switch as a result of the recall being conducted under the supervision of the National Highway Traffic Safety Administration ("**NHTSA**"), the government agency with jurisdiction over recalls. Instead, this Motion to Enforce involves *only* litigation in which the plaintiffs seek economic losses against New GM relating to an Old GM vehicle or part, including, for example, for the claimed diminution in the vehicle's value, and for loss of use, alternative transportation, child care or lost wages for time spent in seeking prior repairs. Those types of claims were never assumed by New GM and are barred by the Court's Sale Order and Injunction.

---

[1] *See* Exhibit A, MSPA. Exhibits to this Motion are contained in the Compendium of Exhibits, filed simultaneously herewith.

[2] *See* Exhibit B, "Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief, entered by the Court on July 5, 2009."

Under the MSPA approved by the Court, New GM assumed only three expressly defined categories of liabilities for vehicles and parts sold by Old GM:  (a) post-sale accidents involving Old GM vehicles causing personal injury, loss of life or property damage; (b) repairs provided for under the "Glove Box Warranty"— a specific written warranty, of limited duration, that only covers repairs and replacement of parts and (c) Lemon Law claims essentially tied to the failure to honor the Glove Box Warranty.[3]  All other liabilities relating to vehicles and parts sold by Old GM were legacy liabilities that were retained by Old GM.  *See* MSPA § 2.3(b).

New GM's assumption of just these limited categories of liabilities was based on the independent judgment of U.S. Treasury officials as to which liabilities, if paid, would best position New GM for a successful business turnaround.  It was an absolute condition of New GM's purchase offer that New GM not take on all of Old GM's liabilities.  That was the bargain struck by New GM and Old GM, and approved by the Court as being in the best interests of Old GM's bankruptcy estate and the public interest.

The primary objections to the sale were made by prepetition creditors who essentially wanted New GM to assume their liabilities.  But the Court found that, if not for New GM's purchase offer, which provided for a meaningful distribution to prepetition unsecured creditors, Old GM would have liquidated and those creditors would have received nothing.  Indeed, had the objectors been successful in opposing the Sale Order and Injunction, it would have been a pyrrhic victory, and disaster not only for them but for thousands of others who relied on the continued viability of the business being sold to New GM.  Judge Lewis Kaplan aptly summarized the point:  "No sentient American is unaware of the travails of the automobile

---

[3]  *See also* MSPA § 1.1, at p. 11 (defining "Lemon Laws" as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute.").

industry in general and of General Motors Corporation ([Old] GM) in particular. As the Bankruptcy Court found, [Old] GM will be forced to liquidate — with appalling consequences for its creditors, its employees, and our nation — unless the proposed sale of its core assets to a newly constituted purchaser is swiftly consummated." *In re Gen. Motors Corp.*, No. M 47 (LAK), 2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009).

One of the most vigorous groups that objected to Old GM's asset sale motion was a coalition representing Old GM vehicle owners. That group included State Attorneys General, individual accident victims, the Center for Auto Safety, Consumer Action and other consumer advocacy groups. The gist of their objections was: as long as New GM was assuming any of Old GM liabilities, then it should assume *all* vehicle owner liabilities as well. In particular, the objectors argued, unsuccessfully, that New GM should assume successor liability claims, all warranty claims (express and implied), economic damages claims based upon defects in Old GM vehicles and parts, and tort claims, in addition to the limited categories of claims that New GM already agreed to assume.

A critical element of protecting the integrity of the bankruptcy sale process, however, was to ensure that New GM, as the good faith purchaser for substantial value, received the benefit of its Court-approved bargain. This meant that New GM would be insulated from lawsuits by Old GM's creditors based on Old GM liabilities it did not assume. The MSPA and the Sale Order and Injunction were expressly intended to provide such protections. The Order thus enjoined such proceedings against New GM, and expressly reserved exclusive jurisdiction to this Court to ensure that the sale transaction it approved would not be undermined or collaterally attacked.

3

As this Court undoubtedly is aware, New GM recently sent notices to NHTSA concerning problems with ignition switches and ignition switch repairs in certain vehicles and parts manufactured by Old GM. Shortly after New GM issued the recall notice, numerous plaintiffs throughout the country sued New GM for claimed economic losses allegedly resulting from ignition switch defects in Old GM vehicles and parts — the very type of claims retained by Old GM for which New GM has no liability.

GM's Motion to Enforce thus presents a single, simple, overarching question for the Court to decide:

> **May New GM be sued in violation of this Court's Sale Order and Injunction for economic damages relating to vehicles and parts sold by Old GM?**

To ask the question is to answer it. In all of the cases based on the ignition switch defect that are the subject of this Motion to Enforce, plaintiffs assert claims for liabilities that, under the Sale Order and Injunction, were retained by Old GM. Plaintiffs apparently decided to not appear in this Court to challenge the Sale Order and Injunction — and with good reason: this Court has rejected prior challenges to that Order and it is now too late, as the Order has been affirmed by the appellate courts and has been a final Order for several years. Faced with a fundamental bar to many of their claims against New GM, the ignition switch plaintiffs simply have decided to ignore the Court's Sale Order and Injunction, and proceed as though it never existed. The law is settled, however, that persons subject to a Court's injunction do not have that option. As the United States Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'" 514 U.S. 300, 306 (1995).

Based on this Court's prior proceedings and Orders, New GM has brought this Motion to Enforce to require the plaintiffs (collectively, the "**Plaintiffs**") in the actions listed in Schedule 1 attached hereto ("**Ignition Switch Actions**") to comply with the Court's Sale Order and Injunction by directing Plaintiffs to (a) cease and desist from further prosecuting against New GM claims that are barred by the Sale Order and Injunction, (b) dismiss with prejudice those void claims because they were brought by the Plaintiffs in violation of the Sale Order and Injunction, and (c) show cause whether they have any claims against New GM not otherwise already barred by the Sale Order and Injunction.[4]

## BACKGROUND STATEMENT OF FACTS

1.       In June 2009, in the midst of a national financial crisis, Old GM was insolvent with no alternative other than to seek bankruptcy protection to sell its assets. New GM, a newly created, government-sponsored entity, was the only viable purchaser, but it would not purchase Old GM's assets unless the sale was free and clear of all liens and claims (except for the claims it expressly agreed to assume). The Court approved this sale transaction, which set the framework for New GM to begin its business operations. During the last five years, New GM has operated its business based on the fundamental structure of the MSPA and Sale Order and Injunction — that its new business enterprise would not be burdened with liabilities retained by Old GM. The Ignition Switch Actions represent a collateral attack on this Court's Sale Order and Injunction. The Plaintiffs may not rewrite, years later, the Court-approved sale to a good faith purchaser, which was affirmed on appeal, and which has been the predicate ever since for literally millions of transactions between New GM and third parties.

---

[4]       New GM reserves the right to supplement the list of Ignition Switch Actions contained in Schedule 1 in the event additional cases are brought against New GM after the filing of this Motion to Enforce that implicate similar provisions of the Sale Order and Injunction.

## I.   OLD GM FILED FOR PROTECTION UNDER THE BANKRUPTCY CODE IN JUNE 2009.

2.      On June 1, 2009, Old GM and certain of its affiliates filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  Old GM simultaneously filed a motion seeking approval of the original version of the MSPA ("**Original MSPA**"), pursuant to which substantially all of Old GM's assets were to be sold to New GM ("**Sale Motion**").  The Original MSPA (like the MSPA) provided that New GM would assume only certain specifically identified liabilities (*i.e.*, the "**Assumed Liabilities**"); all other liabilities would be retained by Old GM (*i.e.*, the "**Retained Liabilities**").

### A.   Objectors to the Sale Motion Argued that New GM Should Assume Additional Liabilities of the Type Plaintiffs Now Assert in the Ignition Switch Actions.

3.      Many objectors, including various State Attorneys General, certain individual accident victims ("**Product Liability Claimants**"), the Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizens (collectively, the "**Consumer Organizations**"), the Ad Hoc Committee of Consumer Victims, and the Official Committee of Unsecured Creditors challenged various provisions in the Original MSPA relating to actual and potential tort and contract claims held by Old GM vehicle owners.  These objectors argued that the Court should not approve the Original MSPA unless New GM assumed additional Old GM liabilities (beyond the Glove Box Warranty), including those now being asserted by the Plaintiffs in the Ignition Switch Actions.

4.      The Original MSPA was amended so that New GM would assume (for vehicles and parts sold by Old GM) Lemon Law claims, as well as personal injury, loss of life and

property damage claims for accidents taking place after the closing of the sale.[5]  Product

Liability Claimants and the Consumer Organizations were not satisfied and pressed their

objections, arguing that New GM should assume broader warranty-related claims as well as

successor liability claims.[6]  Representatives from the U.S. Treasury declined to make further

changes.  *See* Hr'g Tr. 151:1 – 10, July 1, 2009.  The Court found that New GM would not have

consummated the "[t]ransaction (i) if the sale . . . was not free and clear of all liens, claims,

encumbrances, and other interests . . . , including rights or claims based on any successor or

transferee liability or (ii) if [New GM] would, or in the future could, be liable for any such liens,

claims, encumbrances, and other interests, including rights or claims based on any successor or

transferee liability (collectively, the 'Retained Liabilities'), other than, in each case, the Assumed

Liabilities."  *See* Sale Order and Injunction ¶ DD.  The Court ultimately overruled the objectors

on these issues.  *See id.*, ¶ 2.

> **B.**     **The Court Issued Its Sale Order And Injunction, And The Product Liability
>         Claimants And Others Appealed Because They Objected to the Fact That
>         New GM Was Not Assuming *Their* Liabilities**

5.     The Court held a three-day hearing on the Sale Motion, then issued its Sale

Decision on July 5, 2009, finding that the only alternative to the immediate sale to New GM

pursuant to the MSPA was a liquidation of Old GM, in which case unsecured creditors, such as

the Plaintiffs now suing New GM, would receive nothing.  *See In re Gen. Motors Corp.*, 407

---

[5]     Assumption of the Glove Box Warranty was provided for in the Original MSPA.

[6]     As noted in the Court's *Castillo* decision, numerous State Attorneys General also objected, seeking to expand
the definition of New GM's Assumed Liabilities to include implied warranty claims. *Castillo v. Gen. Motors
LLC (In re Motors Liquidation Co.),* Adv. Proc. No. 09–00509, 2012 WL 1339496, at *5 (Bankr. S.D.N.Y.
April 17, 2012), *aff'd,* 500 B.R. 333 (S.D.N.Y. 2013).

B.R. 463, 474 (Bankr. S.D.N.Y. 2009). The Court analyzed the law of successor liability, devoted several pages of its opinion to this issue (*id.* at 499-506), and ruled that: "[T]he law in this Circuit and District is clear; the Court will permit (Old) GM's assets to pass to the purchaser (New GM) *free and clear of successor liability claims*, and in that connection, will issue the requested findings and associated injunction." *Id.* at 505-06 (emphasis added).

6.      In approving the sale, the Court specifically found that New GM was a "good faith purchaser, for sale-approval purposes, and also for the purpose of the protections section 363(m) provides." *Id.* at 494 (citing 11 U.S.C. § 363(m)). The Sale Order and Injunction expressly enjoined parties (like the Plaintiffs in the Ignition Switch Actions) from proceeding against New GM with respect to Retained Liabilities at any time in the future. *See* Sale Order and Injunction, ¶¶ 8, 47. This Court well understood the circumstances of accident victims (who are not the subject of this Motion to Enforce), and that if they could not look to New GM as an additional source of recovery, they would recover only modest amounts on their claims from Old GM. *See Gen. Motors*, 407 B.R. at 505. But the Court also recognized that if a Section 363 purchaser like New GM did not obtain protection against claims against Old GM, like successor liability claims, it would pay less for the assets because of the risks of known and unknown liabilities. *Id.* at 500; *see* 11 U.S.C. § 363. The Court further recognized that, under the law, a Section 363 purchaser could choose which liabilities of the debtors to assume, and not assume (*id.* at 496), and that the U.S. Treasury, on New GM's behalf, could rightfully condition its purchase offer on its refusal to assume the liabilities now being asserted by Plaintiffs in the Ignition Switch Actions.

7.      Old GM, the proponent of the asset sale transaction, presented evidence that established that if the MSPA was not approved, Old GM would liquidate. If it did, objecting

creditors seeking incremental recoveries would end up with nothing, given that the book value of Old GM's global assets was $82 billion, the book value of its global liabilities was $172 billion (see *Gen. Motors*, 407 B.R. at 475), and that, in a liquidation, the value of Old GM's assets was probably less than 10% of stated book value (*id.*).

8.      Objectors also presented evidence that the book value of certain contingent liabilities was about $934 million. *Id.* at 483.  The Court noted that contingent liabilities were "difficult to quantify." *Id.*  And, if the book value of all contingent liabilities was understated, that simply meant Old GM was even more insolvent — an even greater reason for New GM to decline to assume the liabilities retained by GM.

9.      Whether Old GM presented evidence regarding a particular claim or specific defect was not germane to this Court's approval of the Sale Order and Injunction.  Indeed, as the Court found in the Sale Order and Injunction, the proper analysis for approving the asset sale is whether Old GM obtained the "highest or best" available offer for the Purchased Assets.  *See* Sale Order and Injunction, ¶ G.  In contrast, the quantification of liabilities left behind with Old GM (*i.e.*, the Retained Liabilities) was pertinent to a different phase of the bankruptcy case (the claims process) which did not involve New GM.

10.      New GM's refusal to assume a substantial portion of Old GM's liabilities was fundamental to the sale transaction and was widely disclosed by Old GM to all interested parties. Indeed, the Product Liability Claimants objected to and appealed the Sale Order and Injunction to specifically challenge this aspect of the sale.  *See Callan v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010).  Although on appeal, the District Court focused on the appellants' failure to seek a stay of the Sale and on equitable mootness principles, the District Court also found that this Court had jurisdiction to enjoin successor liability claims.

*See id.* at 59-60.  Indeed, the Sale Order and Injunction was affirmed on appeal by two different

District Court Judges.  *Id.; Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430

B.R. 65 (S.D.N.Y. 2010).  There were no further appeals.

      **C.**      **Upon Approval Of The MSPA And Issuance Of The Sale Order And Injunction, New GM Assumed Certain Narrowly Defined Liabilities, But The Bulk Of Old GM's Liabilities Remained With Old GM.**

      11.      Under the MSPA and the Sale Order and Injunction, New GM became

responsible for "Assumed Liabilities."  *See* MSPA § 2.3(a).  These included New GM's

assumption of liability claims for post-sale accidents and Lemon Law claims, as well as the

Glove Box Warranty—a written warranty of limited duration (typically three years or 36,000

miles, whichever comes first) provided at the time of sale, for repairs and replacement of parts.

The Glove Box Warranty expressly excludes economic damages.[7]  New GM assumed no other

Old GM warranty obligations, express or implied:

> The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty."  ***The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials.***

Sale Order and Injunction, ¶ 56 (emphasis added).

      12.      Independent of the Assumed Liabilities under the MSPA, New GM covenanted to

perform Old GM's recall responsibilities under federal law.  *See* MSPA ¶ 6.15(a).  But there

were no third party beneficiary rights granted under the MSPA with respect to that covenant (*see*

MSPA § 9.11), and there is no private right of action for third parties to sue for a breach of a

---

[7]    A copy of a typical Glove Box Warranty is annexed in the Compendium of Exhibits as Exhibit C.

recall obligation.  *See Ayers v. Gen. Motors*, 234 F.3d 514, 522-24 (11th Cir. 2000); *Handy v. Gen. Motors Corp.*, 518 F.2d 786, 787-88 (9th Cir 1975).  Thus, New GM's recall covenant does not create a basis for the Plaintiffs to sue New GM for economic damages relating to a vehicle or part sold by Old GM.

13.    All liabilities of Old GM not expressly defined as Assumed Liabilities constituted "Retained Liabilities" that remained an obligation of Old GM.    MSPA §§ 2.3(a), 2.3(b). Retained Liabilities include economic damage claims relating to vehicles and parts manufactured by Old GM (the primary claims asserted by the Plaintiffs in the Ignition Switch Actions) such as:

(a)    liabilities "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers."  MSPA § 2.3(b)(xvi), *see also* MSPA ¶ 6.15(a). This would include liability based on state consumer statutes, except Lemon Law claims.

(b)    All liabilities (other than Assumed Liabilities) of Old GM based upon contract, tort or any other basis.  MSPA § 2.3(b)(xi).  This covers claims based on negligence, concealment and fraud.

(c)    All liabilities relating to vehicles and parts sold by Old GM with a design defect (*i.e.*, the ignition switch).[8]

(d)    All Liabilities based on the conduct of Old GM including any allegation, statement or writing attributable to Old GM. This covers fraudulent concealment type claims.  *See* Sale Order and Injunction, ¶ 56.

(e)    All claims based on the doctrine of "successor liability."  *See, e.g.,* Sale Order and Injunction, ¶ 46.

**D.    The Court's Sale Order And Injunction Expressly Protects New GM From Litigation Over Retained Liabilities.**

14.    On  July 10,  2009,  the  parties  consummated  the  Sale.    New GM  acquired substantially all of the assets of Old GM free and clear of all liens, claims and encumbrances,

---

[8]    *See* Sale Order and Injunction, ¶ AA; *see also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013).

except for the narrowly defined Assumed Liabilities. In particular, paragraphs 46, 9 and 8 of the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (except for Assumed Liabilities) relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009:

> Except for the Assumed Liabilities expressly set forth in the [MSPA] . . . [New GM] . . . shall [not] have any liability for any claim that arose prior to the Closing Date, ***relates to the production of vehicles prior to the Closing Date***, or otherwise is assertable against [Old GM] . . . prior to the Closing Date . . . . Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity . . . and products . . . liability, ***whether known or unknown*** as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction, ¶ 46 (emphasis added); *see also id.*, ¶ 9(a) ("(i) no claims other than Assumed Liabilities, will be assertable against the Purchaser; (ii) the Purchased Assets [are] transferred to the Purchaser free and clear of all claims (other than Permitted Encumbrances) . . ."); and *id.*, ¶ 8 ("All persons and entities . . . holding claims against [Old GM] or the Purchased Assets arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, ***the operation of the Purchased Assets*** prior to the Closing . . . are forever barred, estopped, and permanently enjoined . . . from asserting [such claims] against [New GM]. . . .") (emphasis added).

15.     Anticipating the possibility that New GM might be wrongfully sued for Retained Liabilities, the Sale Order and Injunction contains an injunction permanently enjoining claimants from asserting claims of the type made in the Ignition Switch Actions:

> [A]ll persons and entities . . . holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, ***matured or unmatured***, ***contingent or noncontingent***, senior or subordinated), ***arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the***

> *operation of the Purchased Assets prior to the Closing . . . are forever barred, estopped, and permanently enjoined . . . from asserting against [New GM] . . . such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.*

Sale Order and Injunction, ¶ 8 (emphasis added); *see also id.*, ¶ 47.

16.     The Court specifically found that the provisions of the Sale Order and Injunction, as well as the MSPA, were binding on all creditors, ***known and unknown*** alike.  *See* Sale Order and Injunction, ¶ 6 ("This [Sale] Order and M[S]PA "shall be binding in all respects upon the Debtors, their affiliates, ***all known and unknown creditors*** of, and holders of equity security interests in, any Debtor, including any holders of liens, claims, encumbrances, or other interests, including rights or claims based on any successor or transferee liability . . . ." (emphasis added)); *see also id.*, ¶ 46.  In short, except for Assumed Liabilities, claims based on Old GM vehicles and parts remained the legal responsibility of Old GM, and are not the responsibility of New GM.

17.     Finally, paragraph 71 of the Sale Order and Injunction makes this Court the gatekeeper to enforce its own Order. It provides for this Court's ***exclusive jurisdiction*** over matters and claims regarding the Sale, including jurisdiction to protect New GM against any Retained Liabilities of Old GM:

> ***This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the M[S]PA,*** all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, . . ., in all respects, including, but not limited to, ***retaining jurisdiction to . . . (c) resolve any disputes arising under or related to the M[S]PA,*** except as otherwise provided therein, (d) ***interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities*** or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets . . . .  (Emphasis added.)

13

## II. NEW GM HAS RECALLED CERTAIN VEHICLES AND IN RESPONSE, PLAINTIFFS HAVE FILED MULTIPLE IGNITION SWITCH ACTIONS.

18.    Consistent with its obligations under the Sale Order and Injunction, New GM informed NHSTA on February 7, 2014, of a problem with ignition switches in certain vehicles and parts manufactured by Old GM, and that a recall would be conducted by New GM to replace the ignition switches (at no cost to the owners).  (*See* Exhibit D.)  A short time later, New GM sent NHTSA a second letter, dated February 24, 2014, which gave NHTSA additional information about the ignition switch and the defect, and what owners should do to ameliorate the problem while waiting for their vehicles to be repaired.  (*See* Exhibit E.)  GM sent recall notices approved by NHTSA to all vehicle owners subject to the recall (Exhibit F), which informed owners about how to safely drive the vehicles prior to the recall.

19.    In March 2014, New GM sent another notice to NHTSA concerning a problem with Old GM ignition switches that may have been installed during repairs to certain Old GM and New GM vehicles, and that a recall would be conducted for those vehicles.  (Exhibit G.)  The notice contained the same safety instruction, and the same repair and reimbursement statements made by New GM for the earlier recall.  New GM expects that only a small fraction of the cars being recalled for potentially faulty repairs actually have the defective ignition switch part in them at this time.[9]

20.    The recall is underway and New GM already has started to replace the ignition switches.  NHTSA, as the government agency responsible for overseeing the technical and highly-specialized domain of automotive safety defects and recalls, administers the rules concerning the content, timing, and means of delivering a recall notice to affected motorists and

---

[9]    In April 2014, New GM sent a recall notice to NHTSA concerning an ignition cylinder lock issue that is different than the issue presented in the Ignition Switch Actions.

dealers.  *See* 49 C.F.R. § 554.1; 49 U.S.C. § 30119.  Other governmental agencies and the
Congress are also examining various issues relating to the ignition switch recall.

21.    Since the recall was announced, numerous Ignition Switch Actions have been
filed against New GM based upon vehicles and parts sold by Old GM, and virtually each day,
additional cases are being filed.  (*See* Schedule 1, attached to this Motion.)  These cases include
over 50 class actions and two individual actions.  The Ignition Switch Actions have been brought
in over 20 federal courts and two state courts.  Plaintiffs in some of those actions have filed
motions with the Judicial Panel for Multidistrict Litigation ("**MDL**") to consolidate at least 19
actions for pre-trial purposes.  It is expected that the number of Ignition Switch Actions
identified to the MDL Panel for consolidation will grow.[10]

22.    The Ignition Switch Actions assert claims that are barred by the MSPA and the
Sale Order and Injunction.  The primary claims at issue are for economic losses premised on
alleged defects in vehicles and components designed and sold by Old GM, which are unrelated to
any accident causing personal injury, loss of life or property damage.  In their complaints, the
Plaintiffs conflate Old GM and New GM, but the Sale Order and Injunction is clear that
New GM is a separate entity from Old GM (*see* Sale Order and Injunction, ¶ R), and is not liable
for successor liability claims (*see, e.g.*, *id.*, ¶¶ 46, 47).  To be sure, the causes of action asserted
by the Plaintiffs in the Ignition Switch Actions are varied, and in some instances, because of the
imprecise factual allegations, it is unclear whether there might be a viable cause of action (of the
many) being asserted against New GM.  What is clear, however, is that the crux of virtually all
of Plaintiffs' claims is a problem in the ignition switch in vehicles and parts sold by Old GM.

---

[10]    The MDL Panel has scheduled a hearing on the motions for May 29, 2014.

Claims based on that factual predicate are Retained Liabilities and may not be brought against New GM.[11]

23.     This Court is uniquely situated to enforce its own Order and interpret what the parties to the MSPA agreed to, and what issues were raised and resolved in connection with the asset sale.  This Motion to Enforce respectfully requests that the Court enforce the Sale Order and Injunction by directing Plaintiffs to cease and desist from pursuing claims for Retained Liabilities of Old GM against New GM, direct Plaintiffs to dismiss with prejudice those void claims that are barred by the Sale Order and Injunction, and direct Plaintiffs to show cause whether there is any claim that they may properly pursue against New GM that is not in violation of the Court's Sale Order and Injunction.

**NEW GM'S ARGUMENT TO ENFORCE THE COURT'S
SALE ORDER AND INJUNCTION**

24.     The Plaintiffs do not have the choice of simply ignoring the Court's Sale Order and Injunction.  As the Supreme Court expressed in its *Celotex* decision:  "If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done . . . Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law."  514 U.S. at 313.  These settled principles bind Plaintiffs in the Ignition Switch Actions.  Those who purchased vehicles or parts from Old GM before the Sale, whether they were a known or unknown creditor

---

[11]     The allegations and claims asserted in the Ignition Switch Actions include Retained Liabilities, such as implied warranty claims, successor liability claims, and miscellaneous tort and statutory claims premised in whole or in part on the alleged acts or omissions of Old GM.  *See* para. 39 *infra*, and Schedule 2, attached to this Motion to Enforce, for a sample of such statements, allegations and/or causes of action.

at the time, are subject to the terms of the Court's Sale Order and Injunction, and are barred by this Court's Injunction from suing New GM on account of Old GM's Retained Liabilities.

## I.     THIS COURT'S SALE ORDER AND INJUNCTION SHOULD BE ENFORCED.

25.     It is well settled that a "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *In re Wilshire Courtyard*, 729 F.3d 1279, 1290 (9th Cir. 2013) (affirming bankruptcy court's post-confirmation jurisdiction to interpret and enforce its orders; "[i]nterpretation of the Plan and Confirmation Order is the only way for a court to determine the essential character of the negotiated Plan transactions in a way that reflects the deal the parties struck in chapter 11 proceedings"); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its confirmation order."); *U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("[a]ll courts, whether created pursuant to Article I or Article III, have inherent contempt power to enforce compliance with their lawful orders.  The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order.").  In addition, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions, and this section "codif[ies] the bankruptcy court's inherent power to enforce its own orders." *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997); 11 U.S.C. § 105(a).

26.     Consistent with these authorities, this Court retained subject matter jurisdiction to enforce its Sale Order and Injunction.  Indeed, this is not the first time that this Court has been asked to enforce its injunction against plaintiffs improperly seeking to sue New GM for Old GM's Retained Liabilities.  *See In re Motors Liquidation Co.*, No. 09-50026 (REG), 2011 WL

6119664 (Bankr. S.D.N.Y. 2011) (ordering various plaintiffs to dismiss with prejudice civil actions in which they had brought claims against New GM that are barred by the Sale Order and Injunction); *Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-00509 (Bankr. S.D.N.Y.), Hr'g Tr. 9:3-9:14, May 6, 2010 ("when you are looking for a declaratory judgment on an agreement that I approved [*i.e.*, the MSPA] that was affected by an order that I entered [*i.e.*, the Sale Order and Injunction], and with the issues permeated by bankruptcy law as they are, and which also raise issues as to one or more injunctions that I entered, how in the world would you have brought this lawsuit in Delaware Chancery Court. I'm not talking about getting in personam jurisdiction or whether you can get venue over a Delaware corporation in Delaware. I'm talking about what talks and walks and quacks like an intentional runaround of something that's properly on the watch of the U.S. Bankruptcy Court for the Southern District of New York."); *Castillo*, 2012 WL 1339496 (entering judgment in favor of New GM) (affirmed by 500 B.R. 333, 335 (S.D.N.Y. 2013)); *see also Trusky*, 2013 WL 620281, at *2 (finding that "claims for design defects [of 2007-2008 Chevrolet Impalas] may not be asserted against New GM and that "New GM is not liable for Old GM's conduct or alleged breaches of warranty").

27. Contrary to New GM's bargained for rights under the MSPA and the Court's Sale Order and Injunction, Plaintiffs in the Ignition Switch Actions are suing New GM for defects in Old GM vehicles and/or parts in courts across the country. Plaintiffs may not simply ignore the Court's injunction through these collateral attacks, especially when the Sale Order and Injunction is a final order no longer subject to appeal. *See Celotex Corp.*, 514 U.S. at 306, 313 ("'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed'") (quoting *GTE Sylvania, Inc. v. Consumers Union of U. S., Inc.*,

445 U.S. 375, 386 (1980)); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 520 (6th Cir. 2004) (applying doctrine to dismiss suits filed in violation of injunction in confirmation order entered by bankruptcy court); *In re McGhan*, 288 F.3d 1172, 1180-81 (9th Cir. 2002) (applying doctrine to enforce discharge order in favor of debtors and holding that only the bankruptcy court could grant relief from the order); *see also In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000) (applying this doctrine in the context of an automatic stay entered by the bankruptcy court); *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255 (4th Cir. 1997) (applying doctrine to bankruptcy court order approving sales of assets free and clear of liens).

## II. NEW GM CANNOT BE HELD LIABLE FOR OLD GM'S ALLEGED CONDUCT, EITHER DIRECTLY OR AS OLD GM'S ALLEGED "SUCCESSOR."

28.     Plaintiffs acknowledge that most of the vehicles and parts at issue in the Ignition Switch Actions were manufactured, marketed, and sold by Old GM prior to the Sale Order and Injunction.  *See, e.g.*, *Benton* Compl., ¶ 31 (discussing Plaintiff's alleged review of Old GM advertisements and purchase of a 2005 Chevy Cobalt); *Ponce* Compl., ¶ 35 ("In or about 2007 or early 2008, Plaintiff purchased a 2007 Chevrolet HHR in Southern California."); *Maciel* Compl., ¶¶ 21, 25, 33, 38, 46, 50, 58, 62 (alleging named plaintiffs own, among other vehicles, 2005, 2007 and 2008 Chevrolet Cobalts; a 2007 Chevrolet HHR; and 2003, 2004, 2006 Saturn Ions); *Jawad* Compl., ¶ 8; *Jones* Compl., preamble paragraph at p. 1; *Maciel* Compl., ¶¶ 1, 196-97.

29.     Many of the complaints in the Ignition Switch Actions are similar, and while several reflect an effort to plead around the Court's Sale Order and Injunction, in fact they all generally assert the same underlying allegations made about Old GM:  that it designed and sold vehicles with a defective ignition switch.  (*See* Schedules 1 and 2 attached hereto.)  And, they all seek to hold New GM liable for economic damages based on Old GM's conduct — claims that are prohibited by the Sale Order and Injunction.  In short, New GM did not agree, and this Court

previously held, that New GM did not assume any economic injury liabilities based on design defects in any of Old GM's vehicles and parts. *See Trusky*, 2013 WL 620281, at *2.

30. Similarly, various Plaintiffs attempt to impose "successor" liability upon New GM, but New GM is not a successor to Old GM and did not assume any liabilities in connection with successor or transferee liability. This is expressly provided by the Court's Sale Order and Injunction:

> ***The Purchaser shall not be deemed***, as a result of any action taken in connection with the M[S]PA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, ***to:  (i) be a legal successor***, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchased Assets from and after the Closing); ***(ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors***.  Without limiting the foregoing, the Purchaser (New GM) shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction ¶ 46 (emphasis added); *see also id.*, ¶¶ AA, BB, DD, 6, 7, 8, 10 and 47; MSPA § 9.19.

31. Plaintiffs' express successor liability allegations are simply a violation of this Court's Sale Order and Injunction.  But whether or not Plaintiffs' claims expressly allege successor liability, their claims against New GM based on Old GM's conduct are essentially successor liability claims cast in a different way and are precluded by that Order.

## III. PLAINTIFFS' WARRANTY ASSERTIONS AND STATE LEMON LAW ALLEGATIONS DO NOT ENABLE THEM TO CIRCUMVENT THE COURT'S SALE ORDER AND INJUNCTION.

### A. The Limited Glove Box Warranty is Not Applicable. But As a Practical Matter, Plaintiffs Already Are Obtaining Such Relief As Part of the Recall.

32.    The Glove Box Warranty is for a limited duration and virtually all of the vehicles that are the subject of the Ignition Switch Actions were sold more than three years ago. Thus, the Glove Box Warranty has expired. In any event, the Glove Box Warranty provides only for repairs and replacement parts; the economic losses asserted by Plaintiffs in the Ignition Switch Actions are of an entirely different character and are expressly barred by the Glove Box Warranty. This distinction is not unique to Old GM's Sale. In the Chrysler bankruptcy case, the court likewise found that the assumed liabilities were limited to the standard limited warranty of repair issued in connection with sales of vehicles. *See, e.g., Burton v. Chrysler Group, LLC (In re Old Carco LLC)*, 492 B.R. 392, 404 (Bankr. S.D.N.Y. 2013) ("New Chrysler did agree to honor warranty claims — the Repair Warranty. None of the statements attributed to New Chrysler state or imply that it assumed liability to pay consequential or other damages based upon pre-existing defects in vehicles manufactured and sold by Old Carco.").[12] Finally, as a practical matter, New GM will make the necessary ignition switch repairs as part of the recall, which is all that the Glove Box Warranty would have required New GM to do anyway. Hence, any claims, if they existed, are moot.

33.    Similarly, the MSPA and the Sale Order and Injunction provide that the implied warranty and other implied obligation claims asserted by Plaintiffs here are Retained Liabilities for which New GM is not responsible. *See* Sale Order and Injunction, ¶ 56 (New GM "is not

---

[12]    *See also*; *Tulacro v. Chrysler Group LLC, et al.*, Adv. Proc. No. 11-09401 (Bankr. S.D.N.Y. Oct. 28, 2011) [Dkt. No. 18] (Exhibit H, Compendium of Exhibits); *Tatum v. Chrysler Group LLC*, Adv. Proc. No. 11-09411 (Bankr. S.D.N.Y. Feb. 15, 2012) [Dkt. No. 73] (Exhibit I, Compendium of Exhibits).

assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, ***including implied warranties*** and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs and point of purchase materials." (emphasis added)); *see also* MSPA § 2.3(b)(xvi) (one of the Retained Liabilities of Old GM was any liabilities "arising out of, related to or in connection with any (A) ***implied warranty*** or other ***implied obligation arising under statutory or common law*** without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." (emphasis added)).

34.     In short, any breach of warranty claims Plaintiffs pursue relating to Old GM vehicles or parts (whether express or implied) improperly seek damages against New GM in violation of the Sale Order and Injunction.

**B.     Any Purported State Lemon Law Claims Are Premature At Best, And Cannot Be Adequately Pled.**

35.     In an apparent attempt to circumvent the Court's Sale Order and Injunction, certain of the Ignition Switch Actions purport to assert claims based on alleged violations of state Lemon Laws.  But merely referencing state Lemon Laws is not sufficient.  Plaintiffs must actually plead facts giving rise to Lemon Law liability as defined by the MSPA.  Even a cursory review of the complaints reveals they have not done so.

36.      New GM agreed to assume Old GM's "obligations under state 'lemon law' statutes, which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a ***reasonable number of attempts*** as further defined in the statute, and other related regulatory obligations under such statutes."  Sale Order and Injunction, ¶ 56 (emphasis added).  None of the Plaintiffs has alleged that New GM has not conformed the vehicle "after a reasonable number of

attempts." And not only is New GM in the process of conforming the vehicles (through the recall), but the statutes of limitations on Lemon Law claims as defined in the MSPA have expired.

37.     As Judge Bernstein found in *Old Carco*, whether claimants can assert a valid Lemon Law claim "depends on the law that governs each plaintiff's claim and whether the plaintiff can plead facts that satisfy the requirements of the particular Lemon Law." 492 B.R. at 406. He further held as follows:

> With some variation, the party asserting a Lemon Law claim must typically plead and ultimately prove that (1) the vehicle does not conform to a warranty, (2) the nonconformity substantially impairs the use or value of the vehicle, and (3) the nonconformity continues to exist after a reasonable number of repair attempts.[13]

Judge Bernstein ultimately found that the claimants there did "not plead that any of the[m] brought their vehicles in for servicing, or that New Chrysler was unable to fix the problem after a reasonable number of attempts." *Id.* at 407. As was the case in *Old Carco*, none of the Plaintiffs here have pled that they brought their vehicles in to be fixed and, after a reasonable number of attempts, that they could not be fixed. They merely base their claims on the recall notices and letters to owners that New GM previously issued.

## CONCLUSION

38.     New GM was created to purchase the assets of Old GM pursuant to the MSPA. The limited category of liabilities it agreed to assume as part of the purchase was the product of a negotiated bargain, which was approved by this Court in July 2009. Plaintiffs in the Ignition Switch Actions have essentially ignored this; they wrongfully treat New GM and Old GM

---

[13]     *Old Carco*, 492 B.R. at 406 (citing *Sipe v. Fleetwood Motor Homes of Penn., Inc.*, 574 F. Supp. 2d 1019, 1028 (D. Minn. 2008); *McLaughlin v. Chrysler Corp.*, 262 F. Supp. 2d 671, 679 (N.D.W. Va. 2002); *Baker v. Chrysler Corp.*, Civ. A. No. 91–7092, 1993 WL 18099, at *1–2 (E.D. Pa. Jan. 25, 1993); *Palmer v. Fleetwood Enterp., Inc.*, Nos. C040161, C040765, 2003 WL 21228864, at *4 (Cal. Ct. App. May 28, 2003); *Iams v. DaimlerChrysler Corp.*, 174 Ohio App. 3d 537, 883 N.E.2d 466, 470 (2007); *DiVigenze v. Chrysler Corp.*, 345 N.J. Super. 314, 785 A.2d 37, 48 (App. Div. 2001)).

interchangeability and are pursuing Old GM claims that they cannot lawfully pursue against

New GM.

39.      Schedule 2 provides examples of allegations that on their face relate to the

Retained Liabilities asserted by the Plaintiffs in the Ignition Switch Actions.  Set forth below are

illustrations of what Plaintiffs have improperly alleged in such Actions.

(a)    **Express Warranty, other than the Glove Box Warranty**.  *See, e.g.*, Ashbridge
Compl., ¶¶ 164-65 (New GM's "express warranties are written warranties within
the meaning of the Magnuson-Moss Warranty Act" and New GM "breached these
express . . . warranties as described in more detail above."); Maciel Compl.,
¶¶ 212-13 (same) and fifth, eleventh, thirteenth, and fifteenth, seventeenth, and
nineteenth causes of action assert claims for breach of express warranty); Balls
Compl., ¶¶ 137-141 (alleging a breach of an express warranty); Cox Compl., ¶¶
124-127 (the third cause action asserts a breach of express warranty).

(b)    **Implied Warranty**.  *See, e.g.*, DePalma Compl. (Count IV asserts a breach of
implied warranty of merchantability); Jawad Compl. ¶¶ 41, 42 (alleging New GM
"breached its implied warranty in the design of the Defective GM Vehicles" and
that New GM "breached its implied warranty in the manufacturing of Defective
GM Vehicles"); Ross Compl., ¶¶ 124-125 (asserting that "GM gave an implied
warranty . . . namely, the implied warranty of merchantability" and that GM
"breached the implied warranty of merchantability"); Maciel Compl., ¶¶ 274
(New GM "breached the implied warranty of merchantability by manufacturing
and selling Defective Vehicles that are defective.").

(c)    **Implied Obligations under Statute or Common Law**.  *See, e.g.*, Heuler Compl.
(asserting causes of action under state consumer protection statutes); Jones
Compl. (asserting violations of numerous state consumer protection and unfair
competition statutes); Benton Compl., (asserting violations of numerous state
consumer protection and unfair competition statutes); Maciel Compl., (asserting
violations of numerous state consumer protection and unfair competition statutes).

(d)    **Successor Liability**.  *See, e.g.*, Malaga Compl., ¶ 117 (alleging that New GM
"has successor liability for GM Corporation's acts and omissions in the marketing
and sale of the Defective Vehicles"); McConnell Compl., ¶ 12 (alleging that New
GM "has successor liability for the deceptive and unfair acts and omissions of Old
GM because GM has continued the business enterprise of Old GM with full
knowledge of the ignition switch defect"); Phillip Compl., ¶ 50 (alleging that
"[b]ecause GM acquired and operated Old GM and ran it as a continuing business
enterprise, and because GM was aware from its inception of the ignition switch
defects in the Defective Vehicles, GM is liable through successor liability . . ."); 
Maciel Compl. ¶¶ 70, 80 ("GM, which is the successor GM entity resulting from

24

the GM chapter 11 bankruptcy proceeding, contractually assumed liability [in the MSPA] for the claims in this lawsuit" and "is liable under theories of successor liability in addition to, or in the alternative to, other bases of liability.").

(e) **Design Defect**. *See, e.g.*, Brown Compl. (the fifth cause of action is premised on a design defect theory); Stafford Compl. (the fifth cause of action is premised on a design defect theory); Ramirez Compl., ¶ 150(f) (alleging that had "Plaintiff and other Class Members known that the Class Vehicles had the Ignition Switch Defect, they would not have purchased a Class Vehicle"); Maciel Compl. ¶¶ 213, 232, 257, 271, 282, 310, 336, 362 (first, third, fifth, sixth, seventh, ninth, twelfth, and fourteenth causes of action are premised on claim that "the Defective Vehicles share a common design defect").

(f) **Tort, Contract or Otherwise**. *See, e.g.*, Ashworth Compl., ¶¶ 519-523 (second cause of action asserts a claim based on, among other things, common law breach of contract); Ratzlaff Compl. (Count II asserts a fraudulent concealment theory); Shollenberger Compl., ¶ 69 (alleging that New GM "breached its contractual duties by, inter alia, selling Class Vehicles with a known safety defect and failing to timely recall them"); Maciel Compl. ¶¶ 218-28 (second cause of action asserts fraudulent concealment theory).

(g) **The Conduct of Old GM**. *See, e.g.*, Brandt Compl., ¶ 48 (asserting that "GM knew at the time they sold the vehicles to the Plaintiffs that such vehicles would be used for" a specific purpose); Darby Compl., ¶ 131 (alleging that "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Class to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value"); DeSutter Compl., ¶¶ 12, 67(e) (alleging that the Named Plaintiffs own a 2006 Saturn Ion or a 2006 Chevrolet Cobalt, that such vehicles were purchased new, and that "GM intended for Plaintiffs, Class Members, the public, and the government to rely on its misrepresentations and omissions, so that Plaintiffs and Class Members would purchase or lease the Defective Vehicles"); Maciel Compl. ¶ 155 (alleging that "neither old GM, nor GM disclosed its knowledge about the dangerous Key System defects to its customers."

40.     New GM has no liability or responsibility for these Retained Liability claims and, under the Sale Order and Injunction, Plaintiffs in the Ignition Switch Actions are enjoined from bringing them against New GM. *See, e.g.,* Sale Order and Injunction, ¶¶ 8, 47. Accordingly, the Court should enforce the terms of its Sale Order and Injunction by ordering Plaintiffs to promptly dismiss all of their claims that violate the provisions of that Order, to cease and desist from all efforts to assert such claims against New GM that are void because of the Sale Order

and Injunction, and to show cause whether they have any claims that are not already barred by this Court's Sale Order and Injunction.

**NOTICE AND NO PRIOR REQUESTS**

41.     Notice of this Motion to Enforce has been provided to (a) counsel for Plaintiffs in each of the Ignition Switch Actions, (b) counsel for Motors Liquidation Company General Unsecured Creditors Trust, and (c) the Office of the United States Trustee.  New GM submits that such notice is sufficient and no other or further notice need be provided.

42.     No prior request for the injunctive relief sought in this Motion has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court:   (i) enter an order substantially in the form set forth as Exhibit "J" in the Compendium of Exhibits, granting the relief sought herein; and (ii) grant New GM such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        April 21, 2014

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (*pro hac vice* pending)
Andrew B. Bloomer, P.C. (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

# SCHEDULE "1"

## CHART OF IGNITION SWITCH ACTIONS

| | **Name** | **Class Models** | **Plaintiffs' Model**[1] | **Court** | **Filing Date** |
|---|---|---|---|---|---|
| 1 | Silvas[2] | N/A | 2006 Chevy Cobalt | Southern District of Texas<br><br>2:14-cv-00089 | 2/27/2014[3] |
| 2 | Brandt (Class Action)[4] | Various models from 2003 to 2007 | 2007 Chevy Cobalt | Southern District of Texas<br><br>2:14-cv-00079 | 3/13/14 |
| 3 | Woodward (Class Action)[5] | Various models from 2003 to 2007 | 2007 Chevy HHR | Northern District of Illinois<br><br>1:14-cv-01877 | 3/17/14 |
| 4 | Jawad (Class Action)[6] | Various models from 2003 to 2007 | 2007 Chevy Cobalt | Eastern District of Michigan<br><br>4:14-cv-11151 | 3/19/14 |
| 5 | McConnell (Class Action)[7] | Various models from 2003 to 2007 | 2007 Saturn Ion | Central District of California<br><br>8:14-cv-00424 | 3/19/14 |
| 6 | Jones (Class Action)[8] | Various models from 2003 to 2007 | 2006 Saturn Ion | Eastern District of Michigan<br><br>4:14-cv-11197 | 3/21/14 |

---

[1]   The purported class in an alleged class action should not be greater in scope than the claims related to the named representative plaintiffs.  Except for a portion of four Ignition Switch Actions (Camlan, Maciel, McCarthy, and Saclo), the proposed representative plaintiffs all owned vehicles designed and manufactured by Old GM.  In Camlan, Maciel, McCarthy, and Saclo, the overwhelming majority of the named plaintiffs claim to own vehicles designed and manufactured by Old GM.

[2]   A copy of the complaint filed in the Silvas Action is contained in the Compendium of Exhibits as Exhibit "K."

[3]   The Silvas Action was originally commenced in State Court in Texas.  New GM removed the Silvas Action to the Southern District of Texas on March 21, 2014.

[4]   A copy of the complaint filed in the Brandt Action is contained in the Compendium of Exhibits as Exhibit "L."

[5]   A copy of the complaint filed in the Woodward Action is contained in the Compendium of Exhibits as Exhibit "M."

[6]   A copy of the complaint filed in the Jawad Action is contained in the Compendium of Exhibits as Exhibit "N."

[7]   A copy of the complaint filed in the McConnell Action is contained in the Compendium of Exhibits as Exhibit "O."

[8]   A copy of the complaint filed in the Jones Action is contained in the Compendium of Exhibits as Exhibit "P."

| 7 | Ponce (Class Action)[9] | Various models from 2003 to 2007 | 2007 Chevy HHR | Central District of California<br><br>2:14-cv-02161 | 3/21/14 |
|---|---|---|---|---|---|
| 8 | Maciel (Class Action)[10] | Various models from 2003 to 2007, and 2005 to 2010 Chevrolet Cobalts | 2010 Chevy Cobalt<br>2007 Chevy Cobalt<br>2008 Chevy Cobalt<br>2010 Chevy Cobalt<br>2005 Chevy Cobalt<br>2003 Saturn Ion<br>2010 Chevy Cobalt<br>2004 Saturn Ion<br>2007 Chevy HHR<br>2006 Saturn Ion | Northern District of California<br><br>4:14-cv-01339 | 3/24/14 |
| 9 | Benton (Class Action)[11] | Various models from 2003 to 2007 | 2005 Chevy Cobalt | Central District of California<br><br>5:14-cv-00590 | 3/26/14 |
| 10 | Kelley (Class Action)[12] | Various models from 2003 to 2007 | 2007 Chevy Cobalt<br>2007 Chevy HHR | Central District of California<br><br>8:14-cv-00465 | 3/26/14 |
| 11 | Shollenberger (Class Action)[13] | Various models from 2003 to 2007 | 2006 Chevy Cobalt | Middle District of Pennsylvania<br><br>1:14-cv-00582 | 3/27/14 |
| 12 | Ramirez (Class Action)[14] | Various models from 2003 to 2007 | 2007 Saturn Ion<br>2006 Saturn Ion<br>2007 Saturn Sky<br>2007 Saturn Sky<br>2007 Chevy Cobalt<br>2005 Chevy Cobalt<br>2005 Saturn Ion<br>2004 Saturn Ion<br>2006 Chevy Cobalt<br>2007 Chevy Cobalt<br>2007 Chevy Cobalt | Central District of California<br><br>2:14-cv-02344 | 3/27/14 |

---

[9]   A copy of the complaint filed in the Ponce Action is contained in the Compendium of Exhibits as Exhibit "Q."
[10]  A copy of the complaint filed in the Maciel Action is contained in the Compendium of Exhibits as Exhibit "R."
[11]  A copy of the complaint filed in the Benton Action is contained in the Compendium of Exhibits as Exhibit "S."
[12]  A copy of the complaint filed in the Kelley Action is contained in the Compendium of Exhibits as Exhibit "T."
[13]  A copy of the complaint filed in the Schollenberger Action is contained in the Compendium of Exhibits as Exhibit "U."
[14]  A copy of the complaint filed in the Ramirez Action is contained in the Compendium of Exhibits as Exhibit "V."

| | | | 2007 Pontiac G5 | | |
|---|---|---|---|---|---|
| 13 | Grumet (Class Action)[15] | Various models from 2003 to 2007 | 2004 Saturn Ion<br>2006 Saturn Ion<br>2007 Chevy HHR<br>2007 Saturn Ion<br>2006 Chevy Cobalt<br>2007 Chevy Cobalt | Southern District of California<br><br>3:14-cv-00713 | 3/27/14 |
| 14 | Deushane (Class Action)[16] | 2005 to 2010 Chevy Cobalts | 2005 Chevy Cobalt | Central District of California<br><br>8:14-cv-00476 | 3/28/14 |
| 15 | Ratzlaff (Class Action)[17] | Various models from 2003 to 2011 | 2005 Chevy Equinox<br>2005 Saturn Ion | Central District of California<br><br>2:14-cv-2424 | 3/31/14 |
| 16 | Satele (Class Action)[18] | Various models from 2003 to 2011 | 2006 Chevy Cobalt<br>2006 Chevy Cobalt | Central District of California<br><br>8:14-cv-00485 | 3/31/14 |
| 17 | Santiago (Class Action)[19] | Various models from 2003 to 2007 | 2007 Saturn Ion | Southern District of Florida<br><br>1:14-cv-21147 | 3/31/14 |
| 18 | Elliott[20] | N/A | 2006 Trailblazer SS<br><br>Chevy Cobalt SS | Superior Court of the District of Columbia<br><br>2014 CA 1980 B | 4/1/14 |
| 19 | Heuler (Class Action)[21] | Various models from 2003 to 2011 | 2006 Chevy Cobalt | Central District of California<br><br>8:14-cv-00492 | 4/1/14 |

---

[15]   A copy of the complaint filed in the Grumet Action is contained in the Compendium of Exhibits as Exhibit "W."

[16]   A copy of the complaint filed in the Deushane Action is contained in the Compendium of Exhibits as Exhibit "X."

[17]   A copy of the complaint filed in the Ratzlaff Action is contained in the Compendium of Exhibits as Exhibit "Y."

[18]   A copy of the complaint filed in the Satele Action is contained in the Compendium of Exhibits as Exhibit "Z."

[19]   A copy of the complaint filed in the Santiago Action is contained in the Compendium of Exhibits as Exhibit "AA."

[20]   A copy of the complaint filed in the Elliott Action is contained in the Compendium of Exhibits as Exhibit "BB."

[21]   A copy of the complaint filed in the Heuler Action is contained in the Compendium of Exhibits as Exhibit "CC."

| 20 | Balls (Class Action)[22] | Various models from 2003 to 2011 | 2007 Saturn Ion | Central District of California<br><br>2:14-cv-02475 | 4/1/14 |
|----|---|---|---|---|---|
| 21 | Hamid (Class Action)[23] | Various models from 2003 to 2007 | 2007 Chevy Cobalt | District of Colorado<br><br>1:14-cv-00953 | 4/2/14 |
| 22 | Ashworth (Class Action)[24] | Various models from 2003 to 2007 | 2005 Chevy Cobalt<br>2005 Saturn Ion<br>2005 Saturn Ion<br>2007 Pontiac Solstice<br>2003 Saturn Ion<br>2006 Chevy HHR<br>2007 Pontiac G5 | Northern District of Alabama<br><br>2:14-cv-00607 | 4/2/14 |
| 23 | Phillip (Class Action)[25] | Various models from 2003 to 2011 | 2006 Saturn Ion<br>2009 Chevy HHR<br>2007 Chevy Cobalt<br>2007 Saturn Ion | District of Arizona<br><br>3:14-cv-08053 | 4/2/14 |
| 24 | Robinson (Class Action)[26] | Various models from 2003 to 2011 | 2005 Saturn Ion<br>2009 Chevy HHR<br>2007 Chevy Cobalt<br>2005 Saturn Ion<br>2009 Chevy Cobalt | Central District of California<br><br>2:14-cv-02510 | 4/3/14 |
| 25 | Ross (Class Action)[27] | Various models from 2003 to 2011 | 2007 Chevy Cobalt<br>2006 Saturn Ion<br>2007 Chevy Cobalt<br>2005 Chevy Cobalt | Eastern District of New York<br><br>1:14-cv-02148 | 4/3/14 |
| 26 | Darby (Class Action)[28] | Various models from 2003 to 2011 | 2006 Chevy HHR | Central District of California<br><br>5:14-cv-00676 | 4/4/14 |

---

[22]  A copy of the complaint filed in the Balls Action is contained in the Compendium of Exhibits as Exhibit "DD."

[23]  A copy of the complaint filed in the Hamid Action is contained in the Compendium of Exhibits as Exhibit "EE."

[24]  A copy of the complaint filed in the Ashworth Action is contained in the Compendium of Exhibits as Exhibit "FF."

[25]  A copy of the complaint filed in the Phillip Action is contained in the Compendium of Exhibits as Exhibit "GG."

[26]  A copy of the complaint filed in the Robinson Action is contained in the Compendium of Exhibits as Exhibit "HH."

[27]  A copy of the complaint filed in the Ross Action is contained in the Compendium of Exhibits as Exhibit "II."

[28]  A copy of the complaint filed in the Darby Action is contained in the Compendium of Exhibits as Exhibit "JJ."

| 27 | Roush (Class Action)[29] | Various models from 2003 to 2011 | 2007 Chevy Cobalt | Western District of Missouri<br><br>2:14-cv-04095 | 4/4/14 |
|---|---|---|---|---|---|
| 28 | Forbes (Class Action)[30] | Various models from 2003 to 2011 | Chevy Cobalt (purchased in 2007) | Eastern District of Pennsylvania<br><br>2:14-cv-02018 | 4/4/14 |
| 29 | Camlan (Class Action)[31] | Various models from 2003 to 2011 | 2007 Chevy HHR<br>2008 Chevy HHR<br>2006 Chevy HHR<br>2011 Chevy HHR<br>2006 Chevy HHR | Central District of California<br><br>8:14-cv-00535 | 4/7/14 |
| 30 | Cox (Class Action)[32] | Various models from 2003 to 2011 | 2007 Saturn Ion | Central District of California<br><br>2:14-cv-02608 | 4/7/14 |
| 31 | Hurst (Class Action)[33] | Various models from 2003 to 2011 | 2005 Chevy Cobalt | Central District of California<br><br>2:14-cv-02619 | 4/7/14 |
| 32 | Malaga (Class Action)[34] | Various models from 2003 to 2011 | 2006 Chevy Cobalt<br>2006 Chevy Cobalt | Central District of California<br><br>8:14-cv-00533 | 4/7/14 |
| 33 | Groman (Class Action)[35] | Various models from 2003 to 2011 | 2008 Chevy HHR | Southern District of New York<br><br>1:14-cv-02458 | 4/7/14 |
| 34 | DePalma (Class Action)[36] | Various models from 2003 to 2007 | 2007 Chevy Cobalt<br>2006 Chevy Cobalt<br>2007 Chevy Cobalt | Middle District of Pennsylvania<br><br>1:14-cv-00681 | 4/8/14 |

---

[29]  A copy of the complaint filed in the Roush Action is contained in the Compendium of Exhibits as Exhibit "KK."

[30]  A copy of the complaint filed in the Forbes Action is contained in the Compendium of Exhibits as Exhibit "LL."

[31]  A copy of the complaint filed in the Camlan Action is contained in the Compendium of Exhibits as Exhibit "MM."

[32]  A copy of the complaint filed in the Cox Action is contained in the Compendium of Exhibits as Exhibit "NN."

[33]  A copy of the complaint filed in the Hurst Action is contained in the Compendium of Exhibits as Exhibit "OO."

[34]  A copy of the complaint filed in the Malaga Action is contained in the Compendium of Exhibits as Exhibit "PP."

[35]  A copy of the complaint filed in the Groman Action is contained in the Compendium of Exhibits as Exhibit "QQ."

[36]  A copy of the complaint filed in the DePalma Action is contained in the Compendium of Exhibits as Exhibit "RR."

| 35 | Deighan (Class Action)[37] | Various models from 2003 to 2007 | 2004 Saturn Ion | Western District of Pennsylvania<br><br>2:14-cv-00458 | 4/9/14 |
|----|----|----|----|----|----|
| 36 | Ashbridge (Class Action)[38] | Various models from 2003 to 2011 | 2003 Saturn Ion | Western District of Pennsylvania<br><br>2:14-cv-00463 | 4/10/14 |
| 37 | Henry (Class Action)[39] | Various models from 2003 to 2011 | 2004 Saturn Ion 2005 Chevy Cobalt | Eastern District of Texas<br><br>4:14-cv-00218 | 4/10/14 |
| 38 | DeSutter (Class Action)[40] | Various models from 2003 to 2007 | 2006 Saturn Ion 2006 Chevy Cobalt | Southern District of Florida<br><br>9:14-cv-80497 | 4/11/14 |
| 39 | Salerno (Class Action)[41] | Various models from 2003 to 2011 | 2006 Saturn Ion | Eastern District of Pennsylvania<br><br>2:14-cv-02132 | 4/11/14 |
| 40 | Stafford (Class Action)[42] | Various models from 2003 to 2011 | 2004 Saturn Ion | Northern District of California<br><br>3:14-cv-01702 | 4/11/14 |
| 41 | Brown (Class Action)[43] | Various models from 2003 to 2011 | 2006 Chevy HHR | Central District of California<br><br>2:14-cv-02828 | 4/13/14 |
| 42 | Coleman (Class Action)[44] | Various models from 2003 to 2011 | 2007 Pontiac G5 | Middle District of Louisiana<br><br>3:14-cv-00220 | 4/13/14 |

---

[37]  A copy of the complaint filed in the Deighan Action is contained in the Compendium of Exhibits as Exhibit "SS."

[38]  A copy of the complaint filed in the Ashbridge Action is contained in the Compendium of Exhibits as Exhibit "TT."

[39]  A copy of the complaint filed in the Henry Action is contained in the Compendium of Exhibits as Exhibit "UU."

[40]  A copy of the complaint filed in the DeSutter Action is contained in the Compendium of Exhibits as Exhibit "VV."

[41]  A copy of the complaint filed in the Salerno Action is contained in the Compendium of Exhibits as Exhibit "WW."

[42]  A copy of the complaint filed in the Stafford Action is contained in the Compendium of Exhibits as Exhibit "XX."

[43]  A copy of the complaint filed in the Brown Action is contained in the Compendium of Exhibits as Exhibit "YY."

[44]  A copy of the complaint filed in the Coleman Action is contained in the Compendium of Exhibits as Exhibit "ZZ."

| 43 | Ruff (Class Action)[45] | Various models from 2003 to 2011 | 2009 Chevy Cobalt 2007 Chevy Cobalt 2006 Chevy Cobalt | District of New Jersey<br><br>3:14-cv-02375 | 4/14/14 |
|----|----|----|----|----|----|
| 44 | Lewis (Class Action)[46] | Various models from 2003 to 2007 | 2007 Chevy HHR | Southern District of Indiana<br><br>1:14-cv-00573 | 4/14/14 |
| 45 | Roach (Class Action)[47] | Various models from 2003 to 2011 | 2008 Chevy Malibu | Southern District of Illinois<br><br>3:14-cv-00443 | 4/15/14 |
| 46 | Letterio (Class Action)[48] | Various models from 2003 to 2011 | 2007 Pontiac Solstice | Western District of Pennsylvania<br><br>2:14-cv-00488 | 4/15/14 |
| 47 | Bedford (Class Action)[49] | Various models from 2003 to 2011 | 27 Chevy Cobalts 7 Saturn Ions 2 Chevy HHRs | Eastern District of Michigan<br><br>2:14-cv-11544 | 4/16/14 |
| 48 | DeLuco (Class Action)[50] | Various models from 2003 to 2011 | 2006 Saturn Ion | Southern District of New York<br><br>1:14-cv-02713 | 4/16/14 |
| 49 | Saclo (Class Action)[51] | Various models from 2003 to 2011 | 15 Chevy Cobalts 5 Saturn Ions 3 Chevy HHRs 1 Pontiac Sky 1 Pontiac G5 | Central District of California<br><br>8:14-cv-00604 | 4/16/14 |

---

[45]   A copy of the complaint filed in the Ruff Action is contained in the Compendium of Exhibits as Exhibit "AAA."

[46]   A copy of the complaint filed in the Lewis Action is contained in the Compendium of Exhibits as Exhibit "BBB."

[47]   A copy of the complaint filed in the Roach Action is contained in the Compendium of Exhibits as Exhibit "CCC."

[48]   A copy of the complaint filed in the Letterio Action is contained in the Compendium of Exhibits as Exhibit "DDD."

[49]   A copy of the complaint filed in the Bedford Action is contained in the Compendium of Exhibits as Exhibit "EEE."

[50]   A copy of the complaint filed in the DeLuco Action is contained in the Compendium of Exhibits as Exhibit "FFF."

[51]   A copy of the complaint filed in the Saclo Action is contained in the Compendium of Exhibits as Exhibit "GGG."

| 50 | Mazzocchi (Class Action)[52] | Various models from 2003 to 2011 | 2003 Saturn Ion | Southern District of New York 7:14-cv-02714 | 4/16/14 |
|---|---|---|---|---|---|
| 51 | McCarthy (Class Action)[53] | Various models from 2003 to 2011 | 2010 Chevy Cobalt | Eastern District of Louisiana 2:14-cv-00895 | 4/17/14 |
| 52 | Leval (Class Action)[54] | Various models from 2003 to 2011 | 2007 Chevy HHR | Eastern District of Louisiana 2:14-cv-00901 | 4/18/14 |
| 53 | Foster (Class Action)[55] | Various models from 2003 to 2011 | 2006 Chevy Cobalt | Northern District of Ohio 1:14-cv-00844 | 4/18/14 |
| 54 | Burton (Class Action)[56] | Various models from 2003 to 2011 | 2007 Saturn Ion | Western District of Oklahoma 5:14-cv-00396 | 4/18/14 |

---

[52] A copy of the complaint filed in the Mazzocchi Action is contained in the Compendium of Exhibits as Exhibit "HHH."

[53] A copy of the complaint filed in the McCarthy Action is contained in the Compendium of Exhibits as Exhibit "III."

[54] A copy of the complaint filed in the Leval Action is contained in the Compendium of Exhibits as Exhibit "JJJ."

[55] A copy of the complaint filed in the Foster Action is contained in the Compendium of Exhibits as Exhibit "KKK."

[56] A copy of the complaint filed in the Burton Action is contained in the Compendium of Exhibits as Exhibit "LLL."

## SCHEDULE "2"

## SAMPLE ALLEGATIONS/CAUSES OF ACTION
## IN IGNITION SWITCH COMPLAINTS[1]

| <u>Lead Plaintiff</u> | <u>Allegations</u> |
|---|---|
| Ashbridge | "In addition to the liability arising out of the statutory obligations assumed by GM, it is also subject to successor liability for the deceptive and unfair acts and omissions of Old GM because, as described below, Defendant has continued the business enterprise of Old GM with full knowledge of the ignition switch defects. In light of this continuing course of business, GM and Old GM together will be referred to as 'GM' hereafter, unless noted otherwise." Compl., ¶ 8. <br><br> Alleging Named Plaintiffs own a 2003 Saturn ION, purchased in 2002, and that Plaintiff would not have purchased the vehicle if she knew about the defect.  Compl., ¶ 15. <br><br> "Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the Vehicles' ignition switch defects, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged herein."  Compl., ¶ 114. <br><br> A few of the Class questions are: (i) "Whether Defendants were negligent in the design, manufacturing, and distribution of the Vehicles" (Compl., ¶ 119(c)); (ii) "Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed defectively designed Vehicles into the stream of commerce in the United States" (Compl., ¶ 119(d)); and (iii) "Whether Class members overpaid for their Vehicles as a result of the defects alleged herein (Compl., ¶ 119(h)). <br><br> "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Class to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 131. <br><br> "GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(6). The Vehicles' implied warranties are covered under 15 U.S.C. §2301(7)." Compl., ¶ 164. <br><br> "GM breached these express and implied warranties as described in more detail above . . ." Compl., ¶ 165. |
| Ashworth | "Defendant, GM and its predecessor [footnote omitted], manufactured and distributed the [subject] vehicles [various models from 2003 through 2007] during the class period . . . ." Compl., ¶ 2. |

---

[1]    Due to space limitations and the ever increasing number of Ignition Switch Actions, this chart contains only a *sample* of statements, allegations and/or causes of action contained in certain complaints filed in the Ignition Switch Actions.  This chart does *not* contain *all* statements, allegations and/or causes of action that New GM believes violates the provisions of the Court's Sale Order and Injunction and the MSPA.

| | |
|---|---|
| | "GM and its predecessor marketed, warranted and sold the Class Models as safe and reliable." Compl., ¶ 3. |
| | There are well over 50 individuals identified in the Complaint, all of whom either purchased or leased a vehicle that was designed and manufactured by Old GM prior to the closing of the 363 Sale, and an allegation that they would not have purchased or leased the vehicle if they knew about the defect. |
| | "GM is liable through successor liability for the deceptive and unfair acts and omissions of GM Corp., as alleged in the Compliant." Compl., ¶ 469. |
| | Alleging that GM breached express warranties. Compl., ¶¶ 513-14. |
| | Asserting causes of Action for breach of contract and breach of warranty. Compl., ¶ 519-523. |
| Balls | Alleging Named Plaintiffs own a 2007 Saturn ION and that Plaintiffs would not have purchased the vehicle if they knew about the defect. Compl., ¶ 31. |
| | Discussing Old GM's promotion and marketing of vehicles. Compl., ¶¶ 80-87. |
| | Asserting that New GM "has successor liability for Old GM's acts and omissions in the marketing and sale of the Subject Vehicles . . . ." Compl., ¶ 96; *see also* Compl., ¶ 145. |
| | Asserting that the "sale of the Subject Vehicles to Plaintiffs and the Class occurred within 'trade and commerce' within the meaning of" the Michigan Consumer Protection Act ("**MCPA**"). Compl., ¶ 115. |
| | Alleging numerous violations of the MCPA by Old GM. *See* Compl., ¶¶ 119-123. |
| | Alleging a breach of an express warranty. *See* Compl., ¶¶ 137-141. |
| Bedford | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., 12; *see also* Compl., ¶¶ 34, 86, 97(j). |
| | Allegations that Old GM promoted the Defective Vehicles as safe and reliable, referring to advertisements from 2001, 2003 and 2006. Compl., ¶¶ 70-75. |
| | Count II concerns a "breach of implied warranty," and Count III concerns a "breach of implied warranty of fitness for a particular purpose." |
| Benton[2] | Asserting that if Plaintiff and others knew about the defect, she would not have purchased the vehicle (a 2005 Chevy Cobalt). Compl., ¶ 31. |
| | Asserting that "GM is liable through successor liability for deceptive and unfair acts and omissions of Old GM, as alleged in the Compliant." Compl., ¶ 35; *see also* Compl., ¶ 88. One of the Class questions is "[w]hether, and to what extent, GM has successor liability for the acts and omissions of Old GM." Compl., ¶ 100(i). |

---

[2]    The *Ratzlaff* Action was commenced by the same attorneys as those that commenced the *Benton* Action, and the complaints are very similar.

| Brandt | Discussing "implied terms of sale" (Compl., ¶ 35) and referencing "advertising and marketing materials emphasizing the safety quality of its vehicles" (Compl., ¶ 36). |
|---|---|
| | Stating "GM knew at the time they sold the vehicles to the Plaintiffs that such vehicles would be used for" a specific purpose.  Compl., ¶ 48. |
| Brown | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects."  Compl., ¶ 15; *see also* Compl., ¶ 104. |
| | Alleging that in connection with their purchase of a 2006 HHR, the Named Plaintiffs "saw advertisements for Old GM vehicles before they purchased the HHR. Plaintiffs do recall that safety and quality were consistent themes in the advertisements they saw. These representations about safety and quality influenced Plaintiffs' decision to purchase the HHR."  Compl., ¶ 35. |
| | "Had Old GM and/or Defendant disclosed the ignition switch defects, Plaintiffs would not have purchased the HHR, or would have paid less than they did, and would not have retained the vehicle."  Compl., ¶ 35. |
| | A Class question is "whether Defendant is liable for a design defect."  Compl., ¶ 114(f). |
| | "At all times relevant, Defendant sold, marketed, advertised, distributed, and otherwise placed Defective Vehicles into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public."  Compl., ¶ 143. |
| | The Fifth Cause of Action is premised on a design defect theory. |
| | "As a direct and proximate result of Defendant's breach of written warranties, Plaintiffs and Class members sustained damages and other losses."  Compl., ¶ 171. |
| | "Defendant breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing the ignition switch defects."  Compl., ¶ 182. |
| Burton | Alleging that the Named Plaintiff's 2007 Saturn Ion was "manufactured, sold, distributed, advertised, marketed, and warranted by GM."  Compl., ¶ 17. |
| | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States."  Compl., ¶ 22. |
| | Two Class questions are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle" (Compl., ¶ 106 (c)), (ii) "whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability" (Compl., ¶ 106 (j)). |

| | |
|---|---|
| | "In furtherance of its scheme to defraud, GM's February 28, 2005 Service Bulletin was issued in furtherance of its scheme to defraud." Compl., ¶ 123. |
| | "In June of 2005, GM issued a public statement through the mail and wires in furtherance of its scheme to defraud." Compl., ¶ 124. |
| | "Defendants intended that Plaintiff and Class Members rely on their misrepresentations and omissions, so that Plaintiff and other Class Members would purchase or lease the Class Vehicles." Compl., ¶ 140(h). |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 149. |
| | "GM breached its implied warranty of merchantability to Plaintiff and the Nationwide, Multi-State and Oklahoma Class because the Class Vehicles were not fit for the ordinary purposes for which they are used - a safe passenger motor vehicle." Compl., ¶ 164. |
| | The Fifth Claim for Relief is based on a "breach of implied warranty." |
| Camlan | Class questions include: (i) "whether and to what extent GM breached its express warranties relating to the safety and quality of its vehicles" (Compl., ¶ 32(b)), and (ii) "whether and to what extent GM breached any implied warranties relating to the safety and quality of its vehicles (Compl., ¶ 32(c)). |
| | Allegations that New GM is liable to Plaintiffs on a successor liability theory. Compl., ¶¶ 121-125. |
| | Allegation that New GM's "business practices include, without limitation: (a) Selling to Plaintiffs and the Class vehicles which contain defects or design flaws which make them inherently more dangerous than other similar vehicles . . . ." Compl., ¶ 135(a). |
| | "Defendant engaged in the advertising and the failure to disclose the defects and design flaws in its products herein alleged with the intent to induce Plaintiffs and the Class to purchase Defendant's products." Compl., ¶ 147. |
| Coleman | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 12; *see also* Compl., ¶84. |
| | Alleging that in connection with her purchase of a 2007 Pontiac G5, the Named Plaintiff "saw advertisements for Old GM vehicles before she purchased the G5, and, although she does recall the specifics of the advertisements, she does recall that safety and quality were consistent themes across the advertisements she saw. These representations about safety and quality influenced Plaintiff's decision to purchase the G5.." Compl., ¶ 30. |
| | "Had Old GM disclosed the ignition switch defects, Plaintiff would not have purchased her G5, or would have paid less than she did, and would not have retained the vehicle." |

| | |
|---|---|
| | Compl., ¶ 30. |
| | Allegations that Old GM promoted the Defective Vehicles as safe and reliable, referring to advertisements from 2001, 2003 and 2006.  Compl., ¶¶ 70-75. |
| | Three Class questions are (i) "Whether GM's practices in connection with the promotion, marketing, advertising, packaging, labeling and sale of the Defective Vehicles unjustly enriched GM at the expense of, and to the detriment of, Plaintiffs and the other members of the Class" (Compl., ¶ 94(i)); (ii) "Whether GM breached implied warranties in its sale and lease of the Defective Vehicles, thereby causing harm to Plaintiffs and the other members of the Class" (Compl., ¶ 94(j)); and (iii) "Whether, and to what extent, GM has successor liability for the acts and omissions of Old GM" (Compl., ¶ 94(m)). |
| | "GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Defective Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7). MG [sic] breached these warranties as described in more detail above."  Compl., ¶¶ 107-108. |
| | "The sale of the Defective Vehicles to Plaintiffs and the Class occurred within 'trade and commerce' within the meaning of" the MCPA.  Compl., ¶ 116. |
| | "While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007."  Compl., ¶ 123. |
| | Count IV concerns a breach of implied warranty. |
| Cox | Old GM and New GM "are the alter-egos of one another and [Old GM] exercised decision-making and control over [New GM] with respect to the conduct giving rise to Plaintiffs' claims." Compl., ¶ 6. |
| | "Because GM is a mere continuation of Old GM, GM has successor liability for the conduct of Old GM as alleged herein." Compl., 15. |
| | A Class question is "whether GM has successor liability for the acts of Old GM." Compl., ¶ 92(p). |
| | A cause of action asserts a breach of express warranty.  Compl., ¶¶124-127 |
| Darby | Alleging Named Plaintiff owns a 2006 Chevy HHR and that Plaintiff would not have purchased the vehicle if he knew about the defect.  Compl., ¶ 15. |
| | "Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the Vehicles' ignition switch defects, GM is liable through successor liability for deceptive and unfair acts and omissions of Old GM, as alleged herein."  Compl., ¶ 114. |
| | Class questions include (i) "[w]hether GM was negligent in the design, manufacturing, and distribution of the Vehicles" (Compl., ¶ 119(c)); and (ii) "[w]hether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed defectively designed Vehicles into the stream of commerce in the United States" (Compl., ¶ 119(d)). |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in |

| | |
|---|---|
| | part, with the intend to induce Plaintiff and the Class to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 131 |
| DeLuco | The Named Plaintiff purchased a new 2006 Saturn Ion in 2006 after seeing advertisements for G.M. vehicles . . . and, although she does not recall the specifics of the advertisements, she recalls that safety and quality were consistent themes across the advertisements she saw before making the purchase of her 2006 Saturn Ion. She also recalls seeing promotional materials about the Saturn at the dealership where she purchased her 2006 Saturn Ion and spoke with Saturn salespeople who told her that the Saturn Ion was one of the safest vehicles in its class." Compl., ¶¶ 11-12.

"Because G.M. acquired and operated Old G.M. and ran it as a continuing business enterprise, and because G.M. was aware from its inception of the ignition switch defects in the Defective Vehicles G.M. is liable through successor liability for the deceptive and unfair acts and omissions of Old G.M., as alleged in this Complaint." Compl., ¶ 17; *see also* Compl., ¶¶ 56, 80, 89, 107, 124.

Two Class questions are: (i) "Whether G.M. and its predecessor breached its applicable warranties" and (ii) "Whether G.M. bears successor liability for Defective Vehicles that Class Members purchased or leased before July 10, 2009, the date G.M. acquired substantially all of the assets of its predecessor." Compl., ¶ 65.

"As more fully described above, G.M. breached its express and implied warranties to Plaintiff and the members of the Class . . . ." Compl., ¶ 78.

"Old G.M. and G.M. caused to be made or disseminated in New York, through advertising, marketing and other publications, statements regarding the quality, safety and reliability of the Defective Vehicles that were untrue or misleading." Compl., ¶ 120 |
| DePalma | "This case arises from GM's breach of express warranties, as well as its obligations and duties, including GM's failure to disclose . . . ." Compl., ¶ 8.

"Plaintiffs and the Class were also damaged by the acts and omissions of Old GM for which GM is liable through successor liability because the defective Vehicles they purchased are worth less than they would have been without the ignition switch defect." Compl., ¶ 19.

Allegations that Old GM promoted the Defective Vehicles as safe and reliable, referring to advertisements from 2001, 2003 and 2006.  Compl., ¶¶ 74-77.

Allegations that "GM has successor liability for Old GM's acts and omissions in the marketing and sale of" the vehicles "because it continued the business enterprise of Old GM . . . ." Compl., ¶ 91.

"Concealment of the known ignition switch defects at the time of sale denied the Class an opportunity to refuse delivery of the Defective Vehicles." Compl., ¶ 123.

Count IV asserts a breach of implied warranty of merchantability, and Counts VI and VII assert breaches of express warranty. |

| DeSutter | Alleging Named Plaintiffs own a 2006 Saturn Ion or a 2006 Chevrolet Cobalt, each purchased new, and that Plaintiffs would not have purchased the vehicles if he knew about the defect. Compl., ¶ 12. |
|---|---|
| | GM is also liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint, because GM acquired and operated Old GM and ran it as a continuing business enterprise, utilizing substantially the same brand names, logos, plants, offices, leadership, personnel, engineers, and employees, GM was aware from its inception of the Ignition Switch Defect and Power Steering Defect in the Defective Vehicles, and GM and Old GM concealed both Defects from the public, regulators, and the bankruptcy court.  Because GM is liable for the wrongful conduct of Old GM, there is no need to distinguish between the conduct of Old GM and GM, and the complaint will hereinafter simply refer to GM as the corporate actor when describing the relevant facts."  Compl., ¶ 16. |
| | "GM intended for Plaintiffs, Class Members, the public, and the government to rely on its misrepresentations and omissions, so that Plaintiffs and Class Members would purchase or lease the Defective Vehicles."  Compl., ¶ 67(e); *see also* Compl., ¶ 89(e). |
| | "GM actively concealed and/or suppressed these material facts, in whole or in part, to induce Plaintiffs and Class Members to purchase or lease the Defective Vehicles at high prices, and to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiffs and the Class."  Compl., ¶ 78. |
| Deushane | "Through advertising, marketing, and other publications, GM caused statements to be disseminated that were untrue or misleading . . . ."  Compl., ¶ 31. |
| | "Had Plaintiff and the other California Sub Class members known this, they would not have purchased or leased their Defective Cobalts and/or paid as much for them." Compl., ¶ 34. |
| | "GM made express warranties to Plaintiff" (Compl., ¶ 44), the "Defective Cobalts are covered by GM's express warranties" (Compl., ¶ 46), and "GM breach[ed] its express warranties . . . . (Compl., ¶ 47). |
| | Asserting that "GM is a 'manufacturer' of the Defective Vehicles" (Compl., ¶ 54) and that "GM impliedly warranted" to Plaintiff and the Class that the vehicles were "merchantable" (Compl., ¶ 55). |
| Deighan | "In addition to the liability arising out of the statutory obligations assumed by GM, it is also subject to successor liability for the deceptive and unfair acts and omissions of Old GM because, as described below, Defendant has continued the business enterprise of Old GM with full knowledge of the ignition switch defects. In light of this continuing course of business, GM and Old GM together will be referred to as 'GM' hereafter, unless noted otherwise."  Compl., ¶ 8. |
| | "Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the Vehicles' ignition switch defects, GM is liable through successor liability for the deceptive and unfair acts and |

| | |
|---|---|
| | omissions of Old GM, as alleged herein." Compl., ¶ 114. |
| Forbes | "Plaintiff and the Class either paid more for the Defective Vehicles than they would have had they known of the ignition switch defects, or they would not have purchased the Defective Vehicles at all had they known of the defects." Compl., ¶ 34. |
| | "GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it continued the business enterprise of Old GM, for the following reasons . . ." Compl., ¶ 36. |
| Foster | Alleging that the Named Plaintiff's 2006 Chevrolet Cobalt was "manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl., ¶ 17. |
| | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 22. |
| | Two Class questions are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle" (Compl., ¶ 104 (c)), (ii) "whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability" (Compl., ¶ 106 (h)). |
| | "Defendants intended that Plaintiff and Class Members rely on their misrepresentations and omissions, so that Plaintiff and other Class Members would purchase or lease the Class Vehicles." Compl., ¶ 116(h). |
| | "GM is liable to Plaintiff and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability." Compl., ¶ 127. |
| | "GM breached its implied warranty of merchantability to Plaintiff and the Nationwide, Class because the Class Vehicles were not fit for the ordinary purposes for which they are used – namely a safe passenger motor vehicle." Compl., ¶ 128. |
| | The Third Claim for Relief is based on a "breach of implied warranties" and the Sixth Claim for Relief is based on a "tortious breach of warranty." |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 153. |
| | "Defendants violated the CSPA when they represented, through advertising, warranties, and other express representations, that the Class Vehicles had characteristics and benefits that they did not actually have." Compl., ¶ 163. |
| | "Defendants failed to use appropriate design, engineering, and parts in manufacturing the Class Vehicles, and in other respects, Defendants breached its duties by being wantonly reckless, careless, and negligent." Compl., ¶ 185. |

| | |
|---|---|
| Groman | Referencing a 2008 Chevrolet HHR, "Groman saw advertisements for G .M. vehicles before he purchased the car and . . . safety and quality were consistent themes across the advertisements . . . . These representations about safety and quality influenced Groman's decision to purchase the 2008 Chevrolet HHR. . . . Had G.M. disclosed the ignition switch defects , he would not have purchased the vehicle and would not have paid as much for it." Compl., ¶ 12.<br><br>"G.M. actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the other members of the Class to purchase Defective Vehicles at a higher price for the Defective Vehicles.  Compl., ¶ 98.<br><br>"Plaintiff and the other members of the Class reasonably relied on G.M.'s statements in its marketing and advertising that the Defective Vehicles were safe, and would not have purchased or leased the Defective Vehicles had they known of the defects in the ignition switches, or would not have paid as much as they did." Compl., ¶ 100, 129.<br><br>"Old G.M. and G.M. caused to be made or disseminated . . . through advertising, marketing and other publications, statements regarding the quality, safety and reliability of the Defective Vehicles that were untrue or misleading." Compl., ¶ 124.<br><br>With respect to the breach of express warranty of merchantability count, "at the time that Old G.M. and G.M. warranted, sold and leased the Defective Vehicles, it knew that the Defective Vehicles did not conform to the warranties and were inherently defective, and wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Vehicles." Compl., ¶ 142.<br><br>"G.M. has successor liability for Old G.M.'s acts and omissions in the marketing and sale of the Defective Vehicles during the Class Period because G.M. has continued the business enterprise of Old G.M., for the following reasons . . ." Compl., ¶ 60. |
| Grumet | Referencing the Saturn Ion and a 2007 advertisement that the car was "safe and sound", "G.M. knew this flaw existed from the moment the car hit dealers' floors . . . ." Compl., ¶ 45.<br><br>G.M. breached its express and implied warranties . . . by, among other things: selling and/or leasing the Defective Vehicles in an unmerchantable condition; selling and/or leasing the Defective Vehicles when they were not fit for the ordinary purposes for which vehicles are used, and which were not fully operational, safe or reliable." Compl., ¶ 88.<br><br>"Plaintiffs and the other members of the Class reasonably relied on G.M.'s statements in its marketing and advertising that the Defective Vehicles were safe, and would not have purchased or leased the Defective Vehicles had they known of the defects in the ignition switches, or would not have paid as much as they did." Compl., ¶ 106, 139.<br><br>Referencing the express warranty of merchantability, "[t]he Defective Vehicles are covered by Old G.M.'s and G.M.'s express warranties." Compl., ¶ 152. |

| | |
|---|---|
| | "Old G.M. and G.M. breached the implied warranty of merchantability by manufacturing and selling the Defective Vehicles with defective ignition switch systems."  Compl., ¶ 168.<br><br>"G.M. has successor liability for Old G.M.'s acts and omissions in the marketing and sale of the Defective Vehicles during the Class Period because G.M. has continued the business enterprise of Old G.M., for the following reasons . . ."  Compl., ¶ 65. |
| Hamid | "Had Plaintiff known of the ignition problem, he would not have purchased his Cobalt or, at a minimum, would have paid less than he did."  Compl., ¶ 10.<br><br>With respect to consumer protection act count, "GM had a statutory duty to refrain from misleading and confusing unfair or deceptive acts in the manufacture, marketing and/or sale or leasing of the recalled vehicles . . . ."  Compl., ¶ 16.<br><br>"GM expressly warranted that the recalled vehicles were safe and were merchantable and fit for use for particular purposes at the time of purchase and sale."  Compl., ¶ 21.<br><br>"GM implicitly warranted that the recalled vehicles were safe and were merchantable and fit for use for particular purposes at the time of purchase and sale."  Compl., ¶ 26. |
| Henry | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects."  Compl., ¶ 12; *see also* Compl., ¶ 86.<br><br>Alleging Named Plaintiffs own a 2004 Saturn Ion and a 2005 Chevrolet Cobalt and that Plaintiffs would not have purchased their vehicle if they knew about the defect.  Compl., ¶¶ 30, 31.<br><br>Alleging that Old GM promoted the Defective Vehicles as safe and reliable.  Compl., ¶¶ 71-75.<br><br>Two Class questions are:  (i) "Whether GM's practices in connection with the promotion, marketing, advertising, packaging, labeling and sale of the Defective Vehicles unjustly enriched GM at the expense of, and to the detriment of, Plaintiffs and the other members of the Class" (Compl., ¶ 97(i)), and (ii) "Whether GM breached implied warranties in its sale and lease of the Defective Vehicles, thereby causing harm to Plaintiffs and the other members of the Class" (Compl., ¶ 97(j)).<br><br>Count IV concerns breach of implied warranty. |
| Heuler | Alleging Named Plaintiff owns a 2006 Chevy Cobalt and that Plaintiffs would not have purchased the vehicle if they knew about the defect.  Compl., ¶ 31.<br><br>"GM is liable through successor liability for the deceptive and unfair acts and omissions of GM Corp., as alleged in the Compliant."  Compl., ¶ 35; *see also* Compl., ¶ 87.  One of the Class questions is "[w]hether, and to what extent, GM has successor liability for the acts and omissions of Old GM."  Compl., ¶ 99(k). |

| | |
|---|---|
| | Alleging that Old GM promoted the Defective Vehicles as safe and reliable.  Compl., ¶¶ 70-75 |
| Hurst | "On information and belief, in marketing and advertising materials, Old GM consistently promoted the Defective Vehicles as safe and reliable."  Compl., ¶ 39. |
| | "Purchasers and lessees paid more for the Defective Vehicles, through a higher purchase price or higher lease payments, than they would have had the ignition switch defects been disclosed, or they would not have purchased or leased the vehicle at all had they known the truth."  Compl., ¶ 51. |
| | "Old GM and Defendant's nondisclosure about safety considerations of the Defective Vehicles while selling and advertising the products were material."  Compl., ¶ 92. |
| | "GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM . . ."  Compl., ¶ 62. |
| Jawad | In the negligence count, stating "GM designed, manufactured, tested, inspected, marketed, labeled and sold the Defective Vehicles . . . ." Compl., ¶ 30. |
| | "GM owed Plaintiff a duty of care in the design, manufacture, testing, inspecting, marketing, labeling and sale of its product." Compl., ¶ 31. |
| | "The Defective GM Vehicles was [sic] defective at the time it left GM's control . . . . Compl., ¶ 37. |
| | "GM breached its implied warranty in the design of the Defective GM Vehicles . . . . Compl., ¶ 41. |
| | "GM breached its implied warranty in the manufacturing of Defective GM Vehicles . . . ." Compl., ¶ 42. |
| | "An implied term of the sale . . . ."  Compl., ¶ 53. |
| | "GM knew at the time they sold the vehicles to the Plaintiffs that such vehicles would be used for" a specific purpose.  Compl., ¶ 59. |

| Jones | Asserting that if Plaintiff and others knew about the defect, she would not have purchased the vehicle (a 2006 Saturn Ion). Compl., ¶ 10. |
|---|---|
| | Referencing advertisements and promotion of the vehicles at issue which, according to the complaint were all manufactured prior to the closing of the 363 Sale. Compl., ¶¶ 2, 11. |
| | An advertisement for a 2006 Saturn Ion was attached to the Complaint as Exhibit "B." Plaintiff also references advertisements from 2003 through 2007. Compl., ¶ 29. |
| | Allegations that "GM has successor liability for GM Corp.'s acts and omissions in the marketing and sale of" the vehicles. Compl., ¶ 77. |
| | A question common to the class is "[w]hether GM and its predecessor breached its express or implied warranties." Compl., ¶ 87; *see also* ¶¶ 97, 101-106 (breach of express warranty), 107-166 (breach of contract and implied warranty). |
| | Alleging that Defendant "engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices with respect to the sale of" the vehicles in violation of statutes in numerous States. Compl., ¶¶ 132-177. |
| Letterio | "In addition to the liability arising out of the statutory obligations assumed by GM, it is also subject to successor liability for the deceptive and unfair acts and omissions of Old GM because, as described below, Defendant has continued the business enterprise of Old GM with full knowledge of the ignition switch defects. In light of this continuing course of business, GM and Old GM together will be referred to as "GM" hereafter, unless noted otherwise." Compl., ¶ 8; *see also* Compl., ¶ 114. |
| | "GM designed, manufactured, marketed, advertised, and warranted that all of its Vehicles were safe and reliable and fit for the ordinary purpose such Vehicles are used for, and were free from defects in materials and workmanship." Compl., ¶ 11. |
| | Named Plaintiff purchased a new 2007 Pontiac Solstice on November 30, 2007, and asserts that had "Defendants disclosed the ignition switch defect, Plaintiff would not have purchased her 2007 Pontiac Solstice." Compl., ¶ 15. |
| | A Class question includes "[w]hether Defendants were negligent in the design, manufacturing, and distribution of the Vehicles." Compl., ¶ 119(c). |
| | "Such misconduct materially affected the purchasing decisions of Plaintiff and the members of the Pennsylvania Subclass as Plaintiff and the Pennsylvania Subclass relied on Defendants' misstatements and omissions regarding the Vehicles' safety and/or reliability when purchasing or leasing the Vehicles." Compl., ¶ 156. |
| | "GM breached these express and implied warranties as described in more detail above . . . ." Compl., ¶ 165. |
| Leval | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the |

| | |
|---|---|
| | ignition switch defects." Compl., ¶ 12, *see also* Compl., ¶¶ 33, 84. |
| | The Named Plaintiff owns a 2007 Chevy HHR which was purchased "in part because she [sic] wanted a safely designed and manufactured vehicle. Plaintiff saw advertisements for Old GM vehicles before he purchased the HHR . . . ." Compl., ¶ 30. |
| | "Had Old GM disclosed the ignition switch defects, Plaintiff would not have purchased his HHR, or would have paid less than he did, and would not have retained the vehicle." Compl., ¶ 30. |
| | Allegations that Old GM promoted the Defective Vehicles as safe and reliable, referring to advertisements from 2001, 2003 and 2006. Compl., ¶¶ 70-75. |
| | A Class question is "[w]hether GM breached implied warranties in its sale and lease of the Defective Vehicles, thereby causing harm to Plaintiffs and the other members of the Class." Compl., ¶ 94(j). |
| | GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Defective Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7). GM breached these warranties as described in more detail above." Compl., ¶¶ 107-108. |
| | "While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007." Compl., ¶ 123. |
| | Count IV is based on a "breach of implied warranty." |
| | "Defendants, as manufacturer of the defective vehicle, are responsible for damages caused by the failure of its product to conform to well-defined standards." Compl., ¶ 148. |
| | "The vehicle as sold and promoted by Defendants possessed a redhibitory defect because it was not manufactured and marketed in accordance with industry standards and/or was unreasonably dangerous as described above, which rendered the vehicle useless or its use so inconvenient that it must presumed that a buyer would not have bought the vehicle had she known of the defect." Compl., ¶ 151. |
| Lewis | Plaintiffs 2007 Chevrolet HHR "was manufactured, sold, distributed, advertised, marketed, and warranted by GM . . . ." Compl., ¶ 12. |
| | "At all relevant times herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 18. |
| | A Class question is "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle." Compl., ¶ 87(c). |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase Class Vehicles at |

| | |
|---|---|
| | a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 107. |
| Maciel | Certain of the Named Plaintiffs purchased a subject vehicle prior to the closing of the 363 Sale, and assert that they would not have purchased the vehicle if they knew about the defect. See, e.g., Compl., ¶¶ 23, 36, 48.

"GM, which is the successor GM entity resulting from the GM chapter 11 bankruptcy proceeding, contractually assumed liability for the claims in this lawsuit and "is liable under theories of successor liability in addition to, or in the alternative to, other bases of liability." Compl., ¶¶ 70, 80.

"[N]ew GM, the Defendant here, is the owner of all 'vehicles' and 'finished goods' (such as cars) of old GM, 'wherever [they are] located,' and including any such vehicles or finished goods in the 'possession of' 'customers.'" Compl., ¶ 74.

Allegations regarding breaches of express warranties. See, e.g., Compl., ¶¶ 212, 213.

"By failing to disclose these material facts, GM intended to induce Plaintiffs and other Class members to purchase or lease the Defective Vehicles." Compl., ¶ 223. |
| Malaga | Referencing the 2006 Chevrolet Cobalt, ". . . Plaintiff bought a dangerous vehicle that was not of the quality that was advertised. . . . If GM had disclosed the nature and extent of its problems, Plaintiff would not have purchased a vehicle from GM, or would not have purchased that the vehicle for the price paid." Compl., ¶ 18, 21.

"In leasing and/or purchasing the vehicles . . . Plaintiffs and the Class . . . reasonably believed and/or depended on the material false and/or misleading information . . . with respect to the safety and quality of the vehicles manufactured and sold by Defendant. . . . Defendant induced Plaintiffs and the Class to purchase the Defective Vehicles . . ." Compl., ¶ 136.

"Defendant engaged in the advertising and the failure to disclose the defects and design flaws in its products herein alleged with the intent to induce Plaintiffs and the Class to purchase Defendant's products." Compl., ¶ 142.

"Plaintiffs and the Class were exposed to Defendant's advertising and its false and misleading statements and were affected by the advertising in that Plaintiffs and the Class believed it to be true and/or relied on it when making purchasing decisions." Compl., ¶ 145.

"At the time of the sale, Defendant had knowledge of the purpose for which its products were purchased and impliedly warranted the same to be, in all respects, fit and proper for this purpose." Compl., ¶ 167.

With respect to the negligence count, "[d]efendant breached that duty by designing, manufacturing, and selling products to Plaintiffs and the Class that had a serious ignition switch defect without disclosing . . ." Compl., ¶ 187.

"GM also has successor liability for GM Corporation's acts and omissions in the marketing and sale of the Defective Vehicles . . ." Compl., ¶ 117. |

| | |
|---|---|
| Mazzocchi | Named Plaintiff's vehicle is a 2003 Saturn Ion which "was manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl., ¶ 17.

"At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 21.

Two Class question are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle" (Compl., ¶ 110(c)), and (ii) "whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability" (Compl., ¶ 110(i)).

"In furtherance of its scheme to defraud, GM issued the February 28, 2005 Service Bulletin. It instructed GM's dealers to disseminate false and misleading information about the dangerous and defective condition of the Defective Vehicles to customers, including Plaintiff and other members of the Class." Compl., ¶ 127.

"In June of 2005, GM issued a public statement through the mail and wires in furtherance of its scheme to defraud." Compl., ¶ 128.

"GM is liable to Plaintiffs and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(l), because it breached the implied warranty of merchantability." Compl., ¶ 155.

"GM breached its implied warranty of merchantability to Plaintiffs and the Nationwide Class because the Class Vehicles were not fit for the ordinary purposes for which they are used~namely, as a safe passenger motor vehicle." Compl., ¶ 156.

The Fourth Claim for Relief is based on a "breach of implied warranty." |
| McCarthy | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 20.

Two Class questions are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle" (Compl., ¶ 100(c)), and (ii) "whether GM concealment of the true defective nature of the Class Vehicles induced Plaintiff and Class Members to act to their detriment by purchasing the Vehicles" (Compl., ¶ 100(f)).

"Defendants designed, manufactured, sold and distributed the Class Vehicles which Defendants placed into the stream of commerce. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520." Compl., ¶ 108. |

| | |
|---|---|
| | Allegations that GM breached the implied warranty of merchantability." Compl., ¶¶ 117-121.<br><br>The Third Claim for Relief is based on a "breach of implied warranties of merchantability and fitness," and the Fourth Claim for Relief is based on a "breach of warranty of fitness for ordinary use." |
| McConnell | "GM . . . has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defect." Compl., ¶ 12; *see also* Compl., ¶ 87.<br><br>With reference to a 2007 Saturn Ion Coupe, "Plaintiff saw advertisements for Old GM vehicles before she purchased the Saturn" and would not have purchased it if she knew about the defect. Compl., ¶ 31.<br><br>"On information and belief, in marketing and advertising materials, Old GM consistently promoted the Defective Vehicles as safe and reliable." Compl., ¶ 70.<br><br>Referencing the "sale of the Defective Vehicle" in the cause of action alleging violations of the Michigan Consumer Protection Act. Compl., ¶ 108. |
| Phillip | "[H]ad Old GM or GM disclosed the ignition switch defects and safety risks presented sooner . . . Plaintiffs and members of the Class . . . would not have purchased the vehicles they did; would have paid less than they did. . ." Compl., ¶ 26.<br><br>"Although it had actual knowledge of the ignition switch defects that it was concealing, Old GM continued to sell hundreds of thousands of Defective Vehicles . . ." Compl., ¶ 80.<br><br>"GM and Old GM also expressly warranted through statements and advertisements that the Defective Vehicles were of high quality, and at a minimum, would actually work properly and safety." Compl., ¶ 292.<br><br>"Contrary to the applicable implied warranties, Old GM's and GM's Defective Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose." Compl., ¶ 319.<br><br>"GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 11.<br><br>"Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability . . . ." Compl., ¶ 50. |
| Ponce | The Named Plaintiff purchased a 2007 Chevrolet HHR in "2007 or 2008" and, based on Chevrolet's reputation, representations and advertising," he alleges that had "he known about the defect, he would not have purchased this vehicle, would not have paid a premium price, and would not have retained the vehicle." Compl., ¶ 9; *see also* Compl., ¶¶ 35-36, 40. |

|  | "GM is liable for both its own acts and omissions, and the acts and omissions of Old GM, as alleged in the Complaint." Compl., ¶ 14.<br><br>Class questions include: (i) Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sale of the Subject Vehicles" violated certain statutes. Compl., ¶¶ 46(e), 46(f)<br><br>Count one asserts a breach of express and implied warranties with respect to the Subject Vehicles (which are various models manufactured from 2003 through 2007). *See* Compl., ¶¶ 56-62. |
|---|---|
| Ramirez | "Defendants intended that Plaintiffs and Class Members rely on their misrepresentations and omissions, so that Plaintiffs and other Class Members would purchase or lease the Class Vehicles . . ." Compl., ¶ 110(h).<br><br>Defendant engaged in deceptive business practices in violation of California's Consumer Legal Remedies Act by, among other things, "advertising Class Vehicles with the intent not to sell or lease them as advertised . . ." Compl., ¶ 147(c).<br><br>"Had Plaintiff and other Class Members known that the Class Vehicles had the Ignition Switch Defect, they would not have purchased a Class Vehicle." Compl., ¶ 150(f).<br><br>"Defendants made express warranties to Plaintiffs and Class Members both in its warranty manual and advertising . . ." Compl., ¶ 190.<br><br>Defendants allegedly violated the Maryland Consumer Protection Act "when it falsely represented, throughout its advertising, warranties and other express representations, that the Class Vehicles were of certain quality or standard when they were not." Compl., ¶ 210.<br><br>Mentions that New GM expressly assumed certain liabilities, including statutory requirements, citing the MSA. *See* Compl., ¶ 27.<br><br>"At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 29. |
| Roach | "In addition to the liability arising out of the statutory obligations assumed by GM, it is also subject to successor liability for the deceptive and unfair acts and omissions of Old GM because, as described below, Defendant has continued the business enterprise of Old GM with full knowledge of the ignition switch defects. In light of this continuing course of business, GM and Old GM together will be referred to as "GM" hereafter, unless noted otherwise." Compl., ¶ 8; *see also* Compl., ¶ 114.<br><br>"Had Defendants disclosed the ignition switch defect, Plaintiff would not have purchased his 2008 Chevy Malibu LS." Compl., ¶ 15.<br><br>Two Class Questions are (i) "Whether Defendants were negligent in the design, manufacturing, and distribution of the Vehicles" (Compl., ¶ 119(c)), and (ii) "Whether |

| | |
|---|---|
| | Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed defectively designed Vehicles into the stream of commerce in the United States" (Compl., ¶ 119(d)). |
| | "A reasonable consumer with knowledge of the defective nature of the defective GM Models ignition switch would not have purchased the defective GM Models equipped with a defective ignition switch or would have paid less for them." Compl., ¶ 158. |
| | "GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(6). The Vehicles' implied warranties are covered under 15 U.S.C. §2301(7). GM breached these express and implied warranties as described in more detail above . . . ." Compl., ¶ 169-170. |
| Robinson | Referencing alleged violation of the California False Advertising Law, "Defendants caused to be made or disseminated to consumers throughout California and the United States, advertising, marketing and other publications, statements about the Defective Vehicles that were untrue or misleading." Compl., ¶ 137. |
| | "Defendants violated Minn. Stat. § 325D.44(9) by advertising, marketing, and selling the Defective Vehicles as reliable and without a known defect while knowing those claims were false." Compl., ¶ 145. |
| | "GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 13. |
| | "Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint." Compl., ¶ 27. |
| Ross | With respect to alleged violations of the Michigan Consumer Protection Act, "Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the safety, performance, reliability, quality, and nature of the Class Vehicles . . . ." Compl., ¶114(b). |
| | "GM gave an implied warranty . . . namely, the implied warranty of merchantability." Compl., ¶ 124. |
| | "Defendants violated [New York's Deceptive Trade Practices Act] when they represented, through advertising, warranties, and other express representations, that the Class Vehicles had characteristics and benefits that they did not actually have." Compl., ¶ 161. |
| | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles . . . ." Compl., ¶ 22. |

| Roush | "Had Plaintiffs known of the defect, they would not have purchased the vehicle." Compl., ¶ 18. |
|---|---|
| | Referencing the alleged violation of Missouri's Merchandising Practices Act, "GM has used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of Class Vehicles." Compl., ¶ 48. |
| Ruff | Alleging Named Plaintiffs own a 2009 Chevrolet Cobalt or a 2006 Chevrolet Cobalt, each of which were purchased new. With respect to the 2006 Chevrolet Cobalt, Plaintiffs assert that it "was manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl. ¶ 16. |
| | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 21. |
| | A Class question is "whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability." Compl., ¶ 108(g). |
| | The second claim for relief asserts a breach of implied warranties. |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and Class Members to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 142. |
| Saclo | "GM breached these warranties as described in more detail above. Without limitation, the Defective Vehicles share a common design defect . . . ." Compl., ¶ 314. |
| | "By failing to disclose these material facts, GM intended to induce Plaintiffs and the other Class members to purchase or lease the Defective Vehicles." Compl., ¶ 325. |
| | Through advertising, marketing, and other publications, OM caused statements to be disseminated that were untrue or misleading, and that were known, or that by the exercise of reasonable care should have been known to GM, to be untrue and misleading to consumers, including Plaintiff Cohen and the other California State Class members." Compl., ¶ 346. |
| | "GM made express warranties to Plaintiff Cohen and the other California State Class members within the meaning of [California statutes] in its warranty, manual, and advertising, as described above." Compl., ¶ 359. |
| | "The Defective Vehicles are covered by GM's express warranties." Compl., ¶ 361. |
| | "GM breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles that are defective." Compl., ¶ 377. |

| | |
|---|---|
| | "GM has defectively designed, manufactured, sold, or otherwise placed in the stream of commerce Defective Vehicles as set forth above.  GM impliedly warranted that the Defective Vehicles were merchantable for the ordinary purpose for which they were designed, manufactured, and sold." Compl., ¶¶ 553-554. |
| Salerno | The Named Plaintiff alleges that she "owns a 2006 Saturn Ion," which was manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl., ¶ 15. |
| | One of the Class questions is "whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability." Compl., ¶ 101(g). |
| | "Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the safety, performance, reliability, quality, and nature of the Class Vehicles." Compl., ¶ 113(b). |
| | "Defendants intended that Plaintiff and Class Members rely on their misrepresentations and omissions, so that Plaintiff and other Class Members would purchase or lease the Class Vehicles." Compl., ¶ 113(h). |
| | "In connection with its sales of the Class Vehicles, GM gave an implied warranty as defined in IS U.S.C. § 2301(7); namely, the implied warranty of merchantability" (Compl., ¶ 123), and "GM is liable to Plaintiff and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(l), because it breached the implied warranty of merchantability" (Compl., ¶ 124). |
| | Count III concerns breach of implied warranty. |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 151. |
| Santiago | Alleging that New GM is liable under a successor liability theory, Plaintiffs allege: "Because GM is liable for the wrongful conduct of Old GM, there is no need to distinguish between the conduct of Old GM and GM, and the complaints will hereinafter simply refer to GM as the corporate actor when describing relevant facts." Compl., ¶ 16. |
| | Named Plaintiff bought a 2007 Saturn Ion Coupe new, and alleged that "[h]ad Plaintiffs and the Class known about the full extent of the Ignition Switch Defect, they would either not have purchased the vehicle at all or would have paid less for them . . . ." Compl., ¶ 102. |
| | "GM actively concealed and/or suppressed these material facts, in whole or in part, to induce Plaintiff and Class Members to purchase or lease the Defective Vehicles . . . ." Compl., ¶ 110. |

| Shollenberger | "GM expressly warranted that the Class Vehicles were of high quality and, at minimum, would actually work properly." Compl., ¶ 52. |
| --- | --- |
| | "Plaintiff relied on GM's express warranty when purchasing his Class Vehicles." Compl., ¶ 53. |
| | "GM breached this warranty by selling to Plaintiff and the Class members the Class Vehicles with known ignition switch defects . . ." Compl., ¶ 54. |
| | "GM manufactured and/or supplied the Class Vehicles, and prior to the time these goods were purchased by Plaintiff and the putative Class, GM impliedly warranted to Plaintiff that they would be merchantable." Compl., ¶ 60. |
| | "GM breached its contractual duties by, *inter alia*, selling Class Vehicles with a known safety defect and failing to timely recall them." Compl., ¶ 69. |
| Stafford | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 15; *see also* Compl., ¶ 104. |
| | Alleging that in connection with his purchase of a 2004 Saturn Ion, the Named Plaintiff "saw advertisements for Old GM vehicles before he purchased the Ion. Plaintiff does recall that safety and quality were consistent themes in the advertisements he saw. These representations about safety and quality influenced Plaintiff's decision to purchase the Ion." Compl., ¶ 35. |
| | "Had Old GM and/or Defendant disclosed the ignition switch defects, Plaintiff would not have purchased the Ion, or would have paid less than he did." Compl., ¶ 35. |
| | A Class question is "whether Defendant is liable for design defect." Compl., ¶ 114(f). |
| | "As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money because they purchased the Defective Vehicle and paid the price they paid believing it to be free of defects when it was not." Compl., ¶ 137. |
| | "At all times relevant, Defendant sold, marketed, advertised, distributed, and otherwise placed Defective Vehicles into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public." Compl., ¶ 143. |
| | The Fifth Cause of Action is premised on a design defect theory. |
| | "As a direct and proximate result of Defendant's breach of written warranties, Plaintiff and Class members sustained damages and other losses." Compl., ¶ 171. |
| | "Defendant breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing the ignition switch defects." Compl., ¶ 182. |