# **Exhibit B**

Hearing Date and Time:  To Be Determined
Objection Deadline:  To Be Determined
Reply Deadline:  To Be Determined

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:      (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

In re                                                  :          **Chapter 11**
                                                          :
**MOTORS LIQUIDATION COMPANY**, *et al.*,     :          **Case No.:  09-50026 (REG)**
        **f/k/a General Motors Corp.**, *et al.*  :
                                                          :
                    Debtors.                      :          **(Jointly Administered)**
                                                          :

------------------------------------------------------------------x

**MOTION OF GENERAL MOTORS LLC PURSUANT**
**TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE**
**COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION**
**(MONETARY RELIEF ACTIONS, OTHER THAN IGNITION SWITCH ACTIONS)**

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................. 1

BACKGROUND STATEMENT OF FACTS .......................................................... 7

I.  OLD GM FILED FOR PROTECTION UNDER THE BANKRUPTCY
    CODE IN JUNE 2009. ..................................................................................... 7

    A.  Objectors to the Sale Motion Argued that New GM Should Assume
        Additional Liabilities of the Type Plaintiffs Now Assert in the Monetary
        Relief Actions. ...................................................................................... 8

    B.  The Court Issued Its Sale Order And Injunction, And The Product
        Liability Claimants And Others Appealed Because They Objected To The
        Fact That New GM Was Not Assuming *Their* Liabilities. ..................... 9

    C.  Upon Approval Of The Sale Agreement And Issuance Of The Sale Order
        And Injunction, New GM Assumed Certain Narrowly Defined Liabilities,
        But The Bulk Of Old GM's Liabilities Remained With Old GM. ....... 11

    D.  The Court's Sale Order And Injunction Expressly Protects New GM From
        Litigation Over Retained Liabilities. .................................................. 13

II. NEW GM HAS RECALLED CERTAIN VEHICLES AND IN RESPONSE,
    PLAINTIFFS HAVE FILED MONETARY RELIEF ACTIONS. ............... 15

NEW GM'S ARGUMENT TO ENFORCE THE COURT'S SALE ORDER AND
INJUNCTION ..................................................................................................... 17

I.  THIS COURT'S SALE ORDER AND INJUNCTION SHOULD BE
    ENFORCED. ................................................................................................. 17

II. NEW GM CANNOT BE HELD LIABLE FOR OLD GM'S ALLEGED
    CONDUCT, EITHER DIRECTLY OR AS OLD GM'S ALLEGED
    "SUCCESSOR." ........................................................................................... 20

III. PLAINTIFFS' WARRANTY ASSERTIONS AND STATE LEMON LAW
     ALLEGATIONS DO NOT ENABLE THEM TO CIRCUMVENT THE
     COURT'S SALE ORDER AND INJUNCTION ........................................ 22

     A.  The Limited Glove Box Warranty is Not Applicable.  But As a Practical
         Matter, Plaintiffs Already Are Obtaining Such Relief As Part of the
         Recall. ............................................................................................... 22

**Page**

    B.     Any Purported State Lemon Law Claims Are Premature At Best, And Cannot Be Adequately Pled. ................................................................................. 24

**CONCLUSION** ........................................................................................................ **25**

**NOTICE AND NO PRIOR REQUESTS** ........................................................................ **27**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ayers v. Gen. Motors,*
234 F.3d 514 (11th Cir. 2000) ................................................12

*Back v. LTV Corp. (In re Chateaugay Corp.),*
213 B.R. 633 (S.D.N.Y. 1997)................................................18

*Burton v. Chrysler Group, LLC (In re Old Carco LLC),*
492 B.R. 392 (Bankr. S.D.N.Y. 2013).........................................22, 24, 25

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.),*
428 B.R. 43 (S.D.N.Y. 2010).................................................8, 11, 13

*In re Cont'l Airlines, Inc.,*
236 B.R. 318 (Bankr. D. Del. 1999) .........................................17

*In re Gen. Motors Corp.,*
407 B.R. 463 (Bankr. S.D.N.Y. 2009)..........................................9, 10

*In re Gen. Motors Corp.,*
No. M 47 (LAK), 2009 WL 2033079 (S.D.N.Y. July 9, 2009).................4

*In re Gruntz,*
202 F.3d 1074 (9th Cir. 2000) ...............................................20

*Handy v. Gen. Motors Corp.,*
518 F.2d 786 (9th Cir 1975) .................................................12

*In re McGhan,*
288 F.3d 1172 (9th Cir. 2002) ...............................................19

*In re Motors Liquidation Co.,*
No. 09-50026 (REG), 2011 WL 6119664 (Bankr. S.D.N.Y. 2011) ........................18

*Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.),*
430 B.R. 65 (S.D.N.Y. 2010)..................................................11

*Parker v. Motors Liquidation Company,*
Case No. 10-4882-bk (2d Cir. July 28, 2011)..................................11

*Pratt v. Ventas, Inc.,*
365 F.3d 514 (6th Cir. 2004) ................................................19

iv

**Page**

*Spartan Mills v. Bank of Am. Ill.,*
   112 F.3d 1251 (4th Cir. 1997) ...............................................................................20

*Travelers Indem. Co. v. Bailey,*
   557 U.S. 137 (2009) ..............................................................................................17

*U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.),*
   68 B.R. 690 (Bankr. S.D.N.Y. 1986) ...................................................................18

*In re Wilshire Courtyard,*
   729 F.3d 1279 (9th Cir. 2013) ..............................................................................17

## STATUTES

11 U.S.C. § 105(a) .......................................................................................................... 18

11 U.S.C. § 363 ...............................................................................................................10

11 U.S.C. § 363(m) ...........................................................................................................9

49 C.F.R. § 554.1 .............................................................................................................15

49 U.S.C. § 30119 ............................................................................................................15

# INTRODUCTION

In June 2009, General Motors LLC ("**New GM**") was a newly formed entity, created by the U.S. Treasury, to purchase substantially all of the assets of Motors Liquidation Company, formerly known as General Motors Corporation ("**Old GM**"). Through a bankruptcy-approved sale process, New GM acquired Old GM's assets, free and clear of all liens, claims, liabilities and encumbrances, other than liabilities that New GM expressly assumed under a June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("**Sale Agreement**").[1] The Bankruptcy Court approved the sale ("**363 Sale**") from Old GM to New GM and the terms of the Sale Agreement in its "**Sale Order and Injunction**," dated July 5, 2009.[2]

This Motion does not address the approximately 90 lawsuits ("**Ignition Switch Actions**") against New GM that seek monetary relief (*i.e.*, where there was no accident causing personal injury, loss of life, or property damage) relating to allegedly defective ignition switches ("**Ignition Switch**") in certain vehicle models. New GM previously filed a motion with this Court on April 21, 2014 ("**Ignition Switch Motion to Enforce**") seeking to enforce the Sale Order and Injunction with respect to the Ignition Switch Actions, the Court held Scheduling Conferences on May 2, 2014 and July 2, 2014 with respect to that Motion, and the initial phase of that contested proceeding is being governed by Scheduling Orders entered by the Court on May 16, 2014 and July 11, 2014 ("**Scheduling Orders**")[3]

---

[1] A copy of the Sale Agreement is annexed hereto as Exhibit "A."

[2] The full title of the Sale Order and Injunction is "Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief, entered by the Court on July 5, 2009." A copy of the Sale Order and Injunction is annexed hereto as Exhibit "B."

[3] As New GM did when it filed the Ignition Switch Motion to Enforce, New GM will seek a conference before the Court upon filing this Motion to Enforce to discuss procedural issues raised by the relief sought herein, including the possibility of consolidating this Motion with the Ignition Switch Motion to Enforce.

At the time the Ignition Switch Motion to Enforce was filed, New GM had recently instituted a recall ("**Ignition Switch Recall**") covering vehicles that had an allegedly defective Ignition Switch, and New GM subsequently was named as a defendant in numerous lawsuits that referenced the Ignition Switch Recall. New GM later instituted various other recalls regarding vehicles and/or parts designed, manufactured and/or sold by Old GM. Like the plaintiffs in the actions that are covered by the Ignition Switch Motion to Enforce, other plaintiffs have filed actions against New GM based on these later recalls. These lawsuits were served on New GM beginning in late May 2014, and could not have been included in the Ignition Switch Motion to Enforce.

The timing of the filing of this Motion is dictated by the Scheduling Orders which set forth specific deadlines for the development of agreed upon factual stipulations, and the briefing of Threshold Issues (as defined in the Scheduling Orders). Generally, the Plaintiffs' counsel related to this Motion are already involved in the Ignition Switch Motion to Enforce.[4] However, to the extent there is not complete overlap, and to ensure that all parties in interest have an opportunity to address common issues before the Court, this Motion is being filed now.

This Motion to Enforce also does not address any litigation involving an accident or incident causing personal injury, loss of life or property damage. Any such lawsuits against New GM that concern accidents or incidents that occurred prior to the closing of the 363 Sale are the subject of a separate motion filed by New GM at this time.[5]

---

[4]   It is significant, and unexplainable that, in connection with the Ignition Switch Actions, Plaintiffs' attorneys entered into Voluntary Stay Stipulations recognizing the Court's exclusive jurisdiction to decide issues relating to the Sale Order and Injunction. Yet the same counsel continue to file law suits against New GM in other courts for Retained Liabilities as if the Sale Order and Injunction does not exist (thus necessitating the filing of this Motion and other motions to enforce).

[5]   Liabilities related to accidents or incidents that occurred after the closing of the 363 Sale that allegedly caused personal injury, loss of life or property damage were assumed by New GM pursuant to the Sale Order and

Furthermore, New GM has committed to repairing (at no cost to the owners) such vehicles that are the subject of a recalls conducted by New GM under the supervision of the National Highway Traffic Safety Administration ("**NHTSA**"). This Motion does not involve those repairs or costs.

Instead, this Motion to Enforce involves *only* litigation in which Plaintiffs seek economic losses, monetary and other relief against New GM relating to an Old GM vehicle or part (other than the Ignition Switch). Like the Ignition Switch Actions, liabilities for these types of claims were never assumed by New GM and are barred by the Court's Sale Order and Injunction.[6]

Under the Sale Agreement approved by the Court, New GM assumed only three expressly defined categories of liabilities for vehicles and parts sold by Old GM: (a) post-sale accidents involving Old GM vehicles causing personal injury, loss of life or property damage; (b) repairs provided for under the "Glove Box Warranty"— a specific written warranty, of limited duration, that only covers repairs and replacement of parts; and (c) Lemon Law[7] claims essentially tied to the failure to honor the Glove Box Warranty. All other liabilities relating to vehicles and parts sold by Old GM were "Retained Liabilities" of Old GM. *See* Sale Agreement § 2.3(b).

New GM's assumption of just these limited categories of liabilities was based on the independent judgment of U.S. Treasury officials as to which liabilities, if paid, would best

---

Injunction, and the Sale Agreement. Lawsuits based on such circumstances are not the subject of this or any other motion filed by New GM with the Bankruptcy Court.

[6] To the extent the lawsuits that are the subject of this Motion to Enforce concern vehicles that were manufactured solely by New GM, and do not concern any allegedly defective parts manufactured by Old GM or concern Old GM conduct, those portions of such lawsuits are not implicated by this Motion to Enforce.

[7] *See* Sale Agreement § 1.1, at p. 11 (defining "Lemon Laws" as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute.").

position New GM for a successful business turnaround. It was an absolute condition of New GM's purchase offer that New GM not take on all of Old GM's liabilities. That was the bargain struck by New GM and Old GM, and approved by the Court as being in the best interests of Old GM's bankruptcy estate and the public.

The primary objections to the 363 Sale were made by prepetition creditors who essentially wanted New GM to assume their liabilities. But the Court found that, if not for New GM's purchase offer, which provided for a meaningful distribution to prepetition unsecured creditors, Old GM would have liquidated its assets and those unsecured creditors would have received nothing. Indeed, had the objectors been successful in opposing the Sale Order and Injunction, it would have been a pyrrhic victory, and disaster not only for them but for thousands of others who relied on the continued viability of the assets being sold to New GM. Judge Lewis Kaplan aptly summarized the point: "No sentient American is unaware of the travails of the automobile industry in general and of General Motors Corporation ([Old] GM) in particular. As the Bankruptcy Court found, [Old] GM will be forced to liquidate — with appalling consequences for its creditors, its employees, and our nation — unless the proposed sale of its core assets to a newly constituted purchaser is swiftly consummated." *In re Gen. Motors Corp.*, No. M 47 (LAK), 2009 WL 2033079, at *1 (S.D.N.Y. July 9, 2009).

One of the groups that objected most vigorously to the 363 Sale was a coalition representing Old GM vehicle owners. That group included State Attorneys General, individual accident victims, the Center for Auto Safety, Consumer Action, and other consumer advocacy groups. The gist of their objections was: as long as New GM was assuming any of Old GM liabilities, then it should assume *all* vehicle-owner liabilities as well. In particular, the objectors argued, unsuccessfully, that New GM should assume successor liability claims, all warranty

claims (express and implied), economic damages claims based upon defects in Old GM vehicles and parts, and tort claims, in addition to the limited categories of claims that New GM already agreed to assume.

A critical element of protecting the integrity of the bankruptcy sale process, however, was to ensure that New GM, as the good faith purchaser for substantial value, received the benefit of its Court-approved bargain. This meant that New GM would be insulated from lawsuits by Old GM's creditors based on Old GM liabilities it did not assume. The Sale Agreement and the Sale Order and Injunction were expressly intended to provide such protections. The Order thus enjoined such proceedings against New GM, and expressly reserved exclusive jurisdiction to this Court to ensure that the sale transaction it approved would not be undermined or collaterally attacked.

As this Court may be aware, New GM recently sent various recall notices to NHTSA concerning issues in certain vehicles and parts, many of which were manufactured by Old GM. Shortly after New GM issued these recall notices, various Plaintiffs sued New GM for claimed economic losses, monetary and other relief allegedly resulting from the issues addressed by the recalls. These lawsuits, in part, concern Old GM vehicles and/or parts—the very type of claims retained by Old GM for which New GM has no liability.

This Motion to Enforce, thus, presents the very same issue that the Court is addressing in the Ignition Switch Motion to Enforce:

> **May New GM be sued in violation of this Court's Sale Order and Injunction for economic losses, monetary and other relief relating to vehicles and parts manufactured and/or sold by Old GM?**

As is the case in the Ignition Switch Actions, Plaintiffs in the cases based on the later recalls assert claims, either in whole or in part, for liabilities that Old GM retained under the Sale

Order and Injunction.  Plaintiffs apparently decided to not appear in this Court to challenge the Sale Order and Injunction; and with good reason:  they know that this Court has previously enforced the Sale Order and Injunction, and they were seeking to evade this Court's injunction that bars them from suing New GM on account of liabilities retained by Old GM.

Simply put, Plaintiffs cannot ignore the Court's Sale Order and Injunction, and proceed in other courts as though it never existed.  The law is settled that persons subject to a Court's injunction do not have that option.  As the United States Supreme Court explained in *Celotex Corp. v. Edwards*, the rule is "well-established" that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'"  514 U.S. 300, 306 (1995).

Based on this Court's prior proceedings and Orders, New GM has brought this Motion to Enforce to require the plaintiffs (collectively, the "**Plaintiffs**") in the actions listed in Schedule 1 attached hereto ("**Monetary Relief Actions**") to comply with the Court's Sale Order and Injunction by directing Plaintiffs to (a) cease and desist from further prosecuting against New GM claims that are barred by the Sale Order and Injunction, (b) dismiss with prejudice those void claims brought in violation of the Sale Order and Injunction, and (c) specifically identify which claims against New GM they believe are not otherwise barred by the Sale Order and Injunction.[8]

---

[8]   At this time, the following Monetary Relief Actions have been commenced against New GM:  (i) *Yagman v. General Motors Company, et al.* (a copy of the *Yagman* Complaint is annexed hereto as Exhibit "C"); (ii) *Andrews v. General Motors LLC* (a copy of the *Andrews* Complaint is annexed hereto as Exhibit "D"); (iii) *Stevenson v. General Motors LLC* (a copy of the *Stevenson* Complaint is annexed hereto as Exhibit "E"); and (iv) *Jones v. General Motors LLC* (a copy of the *Jones* Complaint is annexed hereto as Exhibit "F").

New GM reserves the right to supplement the list of Monetary Relief Actions contained in Schedule 1 in the event additional cases are brought against New GM that implicate similar provisions of the Sale Order and Injunction.

## BACKGROUND STATEMENT OF FACTS

1.      In June 2009, in the midst of a national financial crisis, Old GM was insolvent with no alternative other than to seek bankruptcy protection to sell its assets.  New GM, a newly created, government-sponsored entity, was the only viable purchaser, but it would not purchase Old GM's assets unless the sale was free and clear of all liens and claims (except for the claims it expressly agreed to assume). The Court approved this sale transaction, which set the framework for New GM to begin its business operations.  During the last five years, New GM has operated its business based on the fundamental structure of the Sale Agreement and Sale Order and Injunction — a new business enterprise that would not be burdened with liabilities retained by Old GM.  The Monetary Relief Actions represent a collateral attack on this Court's Sale Order and Injunction.  The Plaintiffs may not rewrite, years later, the Court-approved sale to a good faith purchaser, which was affirmed on appeal, and which has been the predicate ever since for literally millions of transactions between New GM and third parties.

## I.      OLD GM FILED FOR PROTECTION UNDER THE BANKRUPTCY CODE IN JUNE 2009.

2.      On June 1, 2009, Old GM and certain of its affiliates filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  Old GM simultaneously filed a motion seeking approval of the original version of the Sale Agreement ("**Original Sale Agreement**"), pursuant to which substantially all of Old GM's assets were to be sold to New GM ("**Sale Motion**").  The Original Sale Agreement (like the Sale Agreement) provided that New GM would assume only certain specifically identified liabilities (*i.e.*, the "**Assumed Liabilities**"); all other liabilities would be retained by Old GM (*i.e.*, the "**Retained Liabilities**").

**A.**     **Objectors to the Sale Motion Argued that New GM Should Assume Additional Liabilities of the Type Plaintiffs Now Assert in the Monetary Relief Actions.**

3.      Many objectors, including various State Attorneys General, certain individual accident victims ("**Product Liability Claimants**"), the Center for Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association of Consumer Advocates, and Public Citizens (collectively, the "**Consumer Organizations**"), the Ad Hoc Committee of Consumer Victims, and the Official Committee of Unsecured Creditors challenged various provisions in the Original Sale Agreement relating to actual and potential tort and contract claims held by Old GM vehicle owners.  These objectors argued that the Court should not approve the Original Sale Agreement unless New GM assumed additional Old GM liabilities (beyond the Glove Box Warranty), including those now being asserted by the Plaintiffs in the Monetary Relief Actions.

4.      The Original Sale Agreement was amended so that New GM would assume Lemon Law claims, as well as personal injury, loss of life and property damage claims for accidents taking place after the closing of the 363 Sale.[9]  Product Liability Claimants and the Consumer Organizations were not satisfied and pressed their objections, arguing that New GM should assume broader warranty-related claims as well as successor liability claims.[10]  Representatives from the U.S. Treasury declined to make further changes.  *See* Hr'g Tr. 151:1 – 10, July 1, 2009.   The Court found that New GM would not have consummated the "[t]ransaction (i) if the sale . . . was not free and clear of all liens, claims, encumbrances, and

---

[9]     Assumption of the Glove Box Warranty was provided for in the Original Sale Agreement.

[10]    Numerous State Attorneys General also objected, seeking to expand the definition of New GM's Assumed Liabilities to include implied warranty claims. *Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–00509, 2012 WL 1339496, at *5 (Bankr. S.D.N.Y. April 17, 2012), *aff'd*, 500 B.R. 333 (S.D.N.Y. 2013).  The *Castillo* decision has been appealed to the Second Circuit and that appeal remains pending.

other interests . . . , including rights or claims based on any successor or transferee liability or (ii) if [New GM] would, or in the future could, be liable for any such liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability (collectively, the 'Retained Liabilities'), other than, in each case, the Assumed Liabilities." *See* Sale Order and Injunction ¶ DD. The Court ultimately overruled the objectors on these issues. *See id.*, ¶ 2.

**B.** **The Court Issued Its Sale Order And Injunction, And The Product Liability Claimants And Others Appealed Because They Objected To The Fact That New GM Was Not Assuming *Their* Liabilities.**

5. The Court held a three-day hearing on the Sale Motion, then issued its Sale Decision on July 5, 2009, finding that the only alternative to the immediate sale to New GM pursuant to the Sale Agreement was a liquidation of Old GM, in which case unsecured creditors, such as the Plaintiffs now suing New GM, would receive nothing. *See In re Gen. Motors Corp.*, 407 B.R. 463, 474 (Bankr. S.D.N.Y. 2009). The Court analyzed the law of successor liability at length (*see id.* at 499-506), and ruled that: "[T]he law in this Circuit and District is clear; the Court will permit [Old] GM's assets to pass to the purchaser [New GM] *free and clear of successor liability claims*, and in that connection, will issue the requested findings and associated injunction." *Id.* at 505-06 (emphasis added).

6. In approving the 363 Sale, the Court specifically found that New GM was a "good faith purchaser, for sale-approval purposes, and also for the purpose of the protections section 363(m) provides." *Id.* at 494 (citing 11 U.S.C. § 363(m)). The Sale Order and Injunction expressly enjoined parties (like the Plaintiffs in the Monetary Relief Actions) from proceeding against New GM with respect to Retained Liabilities at any time in the future. *See* Sale Order and Injunction, ¶¶ 8, 47. The Court recognized that if a Section 363 purchaser like New GM did not obtain protection from claims against Old GM, like successor liability claims, it would pay

less for the assets because of the risks of known and unknown liabilities. *Id.* at 500; *see* 11 U.S.C. § 363. The Court further recognized that, under the law, a Section 363 purchaser could choose which liabilities of the debtors to assume (*id.* at 496), and that the U.S. Treasury, on New GM's behalf, could rightfully condition its purchase offer on its refusal to assume the liabilities now being asserted by Plaintiffs in the Ignition Switch Actions.

7. Old GM, the proponent of the asset sale transaction, presented evidence establishing that if the Sale Agreement was not approved, Old GM would have liquidated. In a liquidation, objecting creditors seeking incremental recoveries would have ended up with nothing, given that the book value of Old GM's global assets was $82 billion, the book value of its global liabilities was $172 billion (s*ee Gen. Motors*, 407 B.R. at 475), and that, in a liquidation, the value of Old GM's assets was probably less than 10% of stated book value (*id.*).

8. Objectors also presented evidence that the book value of certain contingent liabilities was about $934 million. *Id.* at 483. The Court noted that contingent liabilities were "difficult to quantify." *Id.* And, if the book value of all contingent liabilities was understated, that simply meant Old GM was even more insolvent—an even greater reason for New GM to decline to assume the liabilities retained by GM.

9. Whether Old GM presented evidence regarding a particular claim or specific defect was not germane to this Court's approval of the Sale Order and Injunction. Indeed, as the Court found in the Sale Order and Injunction, the proper analysis for approving the asset sale was whether Old GM obtained the "highest or best" available offer for the Purchased Assets. *See* Sale Order and Injunction, ¶ G. In contrast, the quantification of liabilities left behind with Old GM (*i.e.*, the Retained Liabilities) was pertinent to a different phase of the bankruptcy case (the claims process) which did not involve New GM.

10.     New GM's refusal to assume a substantial portion of Old GM's liabilities was fundamental to the sale transaction and was widely disclosed by Old GM to all interested parties. Indeed, the Product Liability Claimants objected to and appealed the Sale Order and Injunction to specifically challenge this aspect of the sale. *See Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010). On appeal, although the District Court focused on the appellants' failure to seek a stay of the Sale and on equitable mootness principles, it also found that this Court had jurisdiction to enjoin successor liability claims. *See id. at* 59-60Indeed, the Sale Order and Injunction was affirmed on appeal by two different District Court Judges. *Id.* ; *Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65 (S.D.N.Y. 2010). There were no further appeals.[11]

**C.      Upon Approval Of The Sale Agreement And Issuance Of The Sale Order And Injunction, New GM Assumed Certain Narrowly Defined Liabilities, But The Bulk Of Old GM's Liabilities Remained With Old GM.**

11.     Under the Sale Agreement and the Sale Order and Injunction, New GM became responsible for "Assumed Liabilities." *See* Sale Agreement § 2.3(a). These included liability claims for post-sale accidents and Lemon Law claims, as well as the Glove Box Warranty—a written warranty of limited duration (typically three years or 36,000 miles, whichever comes first) provided at the time of sale for repairs and replacement of parts. The Glove Box Warranty expressly excludes economic damages. New GM assumed no other Old GM warranty obligations, express or implied:

> The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components

---

[11]     The Product Liability Claimants appealed the District Court's decision, but pursuant to a stipulation so-ordered by the Second Circuit Court of Appeals on September 23, 2010, the appeal was withdrawn. The *Parker* decision was also appealed, but that appeal was dismissed as equitably moot because the appellant had not obtained a stay pending appeal. *See Parker v. Motors Liquidation Company*, Case No. 10-4882-bk (2d Cir. July 28, 2011).

prior to the Closing of the 363 Transaction and specifically identified as a "warranty." ***The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials.***

Sale Order and Injunction, ¶ 56 (emphasis added).

12.     Independent of the Assumed Liabilities under the Sale Agreement, New GM covenanted to perform Old GM's recall responsibilities under federal law. *See* Sale Agreement ¶ 6.15(a). But there were no third party beneficiary rights granted under the Sale Agreement with respect to that covenant (*see* Sale Agreement § 9.11), and there is no private right of action for third parties to sue for a breach of a recall obligation. *See Ayers v. Gen. Motors*, 234 F.3d 514, 522-24 (11th Cir. 2000); *Handy v. Gen. Motors Corp.*, 518 F.2d 786, 787-88 (9th Cir 1975). Thus, New GM's recall covenant provides no basis for the Plaintiffs to sue New GM for economic losses, monetary or other relief relating to a vehicle or part sold by Old GM.

13.     All liabilities of Old GM not expressly defined as Assumed Liabilities constituted "Retained Liabilities" that remained obligations of Old GM. *See* Sale Agreement §§ 2.3(a), 2.3(b). Retained Liabilities include economic losses and other monetary relief relating to vehicles and parts manufactured by Old GM (the primary claims asserted by the Plaintiffs in the Monetary Relief Actions) such as:

(a)     liabilities "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers." Sale Agreement § 2.3(b)(xvi), *see also id.* ¶ 6.15(a). This would include liability based on state consumer statutes, except Lemon Law claims.

(b)     All liabilities (other than Assumed Liabilities) of Old GM based upon contract, tort or any other basis. Sale Agreement § 2.3(b)(xi). This covers claims based on negligence, concealment and fraud.

(c)     All liabilities relating to vehicles and parts sold by Old GM with a design defect.[12]

(d)     All Liabilities based on the conduct of Old GM including any allegation, statement or writing attributable to Old GM. This covers fraudulent concealment type claims. *See* Sale Order and Injunction, ¶ 56.

(e)     All claims based on the doctrine of "successor liability." *See, e.g.,* Sale Order and Injunction, ¶ 46.

## D. The Court's Sale Order And Injunction Expressly Protects New GM From Litigation Over Retained Liabilities.

14.     On July 10, 2009, the parties consummated the Sale. New GM acquired substantially all of the assets of Old GM free and clear of all liens, claims and encumbrances, except for the narrowly defined Assumed Liabilities. In particular, paragraphs 46, 9, and 8 of the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (except for Assumed Liabilities) relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009:

> Except for the Assumed Liabilities expressly set forth in the [Sale Agreement] . . . [New GM] . . . shall [not] have any liability for any claim that arose prior to the Closing Date, ***relates to the production of vehicles prior to the Closing Date***, or otherwise is assertable against [Old GM] . . . prior to the Closing Date . . . . Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity . . . and products . . . liability, ***whether known or unknown*** as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction, ¶ 46 (emphasis added); *see also id.,* ¶ 9(a) ("(i) no claims other than Assumed Liabilities, will be assertable against the Purchaser; (ii) the Purchased Assets [are] transferred to the Purchaser free and clear of all claims (other than Permitted Encumbrances) . . ."); and *id.,* ¶ 8 ("All persons and entities . . . holding claims against [Old GM]

---

[12]     *See* Sale Order and Injunction, ¶ AA; *see also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013).

or the Purchased Assets arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, ***the operation of the Purchased Assets*** prior to the Closing . . . are forever barred, estopped, and permanently enjoined . . . from asserting [such claims] against [New GM]. . . .") (emphasis added).

15.    Anticipating the possibility that New GM might be wrongfully sued for Retained Liabilities, the Sale Order and Injunction permanently enjoins claimants from asserting claims of the type made in the Monetary Relief Actions:

> [A]ll persons and entities . . . holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, ***matured or unmatured, contingent or noncontingent***, senior or subordinated), ***arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing . . . are forever barred, estopped, and permanently enjoined . . . from asserting against [New GM] . . . such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability***.

Sale Order and Injunction, ¶ 8 (emphasis added); *see also id.*, ¶ 47.

16.    The Court specifically found that the provisions of the Sale Order and Injunction, as well as the Sale Agreement, were binding on all creditors, ***known and unknown*** alike.  *See* Sale Order and Injunction, ¶ 6 ("This [Sale] Order and [Sale Agreement] "shall be binding in all respects upon the Debtors, their affiliates, ***all known and unknown creditors*** of, and holders of equity security interests in, any Debtor, including any holders of liens, claims, encumbrances, or other interests, including rights or claims based on any successor or transferee liability . . . ." (emphasis added)); *see also id.*, ¶ 46.  In short, except for Assumed Liabilities, claims based on Old GM vehicles and parts remained the legal responsibility of Old GM, and are not the responsibility of New GM.

17.     Finally, paragraph 71 of the Sale Order and Injunction makes this Court the gatekeeper to enforce its own Order. It provides for this Court's ***exclusive jurisdiction*** over matters and claims regarding the 363 Sale, including jurisdiction to protect New GM against any Retained Liabilities of Old GM:

> ***This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the [Sale Agreement],*** all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, . . ., in all respects, including, but not limited to, ***retaining jurisdiction to . . . (c) resolve any disputes arising under or related to the [Sale Agreement],*** except as otherwise provided therein, (d) ***interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities*** or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets . . . . (Emphasis added.)

## II.    NEW GM HAS RECALLED CERTAIN VEHICLES AND IN RESPONSE, PLAINTIFFS HAVE FILED MONETARY RELIEF ACTIONS.

18.     Consistent with its obligations under the Sale Order and Injunction, New GM, over the last several months, has informed NHSTA of certain issues in various vehicles and parts, including those manufactured by Old GM, and that New GM would conduct recalls to remedy the problems (at no cost to the owners).  New GM sent NHTSA-approved recall notices to all vehicle owners subject to the recalls.  All of the recalls are underway and New GM already has started to fix the vehicles identified by the recalls.  NHTSA, as the government agency responsible for overseeing the technical and highly-specialized domain of automotive safety defects and recalls, administers the rules concerning the content, timing, and means of delivering a recall notice to affected motorists and dealers.  *See* 49 C.F.R. § 554.1; 49 U.S.C. § 30119.

19.     Since the various recalls were announced, Monetary Relief Actions have been filed against New GM related to these recalls, including recalls of vehicles and parts sold or manufactured by Old GM (*see* Schedule 1, attached to this Motion); additional similar cases will likely be filed in the future.    At this time, these cases include four class actions.

20.    The non-ignition switch Monetary Relief Actions assert claims that are barred by the Sale Agreement and the Sale Order and Injunction.  The claims at issue that are the subject of this Motion to Enforce are for economic losses, monetary and other relief premised on alleged defects in vehicles and components manufactured and/or sold by Old GM, which are unrelated to any accident causing personal injury, loss of life or property damage.  In their complaints, the Plaintiffs, at times, conflate Old GM and New GM, but the Sale Order and Injunction is clear that New GM is a separate entity from Old GM (*see* Sale Order and Injunction, ¶ R), and is not liable for successor liability claims (*see, e.g.*, *id.*, ¶¶ 46, 47).  To be sure, the claims asserted by the Plaintiffs in the Monetary Relief Actions are varied, and in some instances, because of the imprecise factual allegations, it is unclear whether there might be a viable cause of action (of the many) being asserted against New GM.  What is clear, however, is that the crux of certain of the Plaintiffs' claims is a problem in vehicles and/or parts manufactured and/or sold by Old GM. Claims based on that factual predicate are Retained Liabilities and may not be brought against New GM.[13]

21.    This Court is uniquely situated to enforce its own Order and interpret what the parties to the Sale Agreement agreed to, and what issues were raised and resolved in connection with the 363 Sale.  This Motion to Enforce requests that the Court enforce the Sale Order and Injunction by directing Plaintiffs to cease and desist from pursuing claims against New GM for Retained Liabilities of Old GM, direct Plaintiffs to dismiss with prejudice those void claims that are barred by the Sale Order and Injunction, and direct Plaintiffs to specifically identify which

---

[13]    The allegations and claims asserted in the Monetary Relief Actions include Retained Liabilities, such as implied warranty claims, successor liability claims, and miscellaneous tort and statutory claims premised in whole or in part on the alleged acts or omissions of Old GM.  *See* Schedule 2 annexed hereto for a sample of such statements, allegations and/or causes of action.

claims they may properly pursue against New GM that are not in violation of the Court's Sale

Order and Injunction.

## NEW GM'S ARGUMENT TO ENFORCE THE COURT'S
## SALE ORDER AND INJUNCTION

22.     The Plaintiffs do not have the choice of simply ignoring the Court's Sale Order

and Injunction.  As the Supreme Court expressed in its *Celotex* decision:

> If respondents believed the Section 105 Injunction was improper, they should
> have challenged it in the Bankruptcy Court, like other similarly situated bonded
> judgment creditors have done . . .  Respondents chose not to pursue this course of
> action, but instead to collaterally attack the Bankruptcy Court's Section 105
> Injunction in the federal courts in Texas.  This they cannot be permitted to do
> without seriously undercutting the orderly process of the law.

514 U.S. at 313.  These settled principles bind Plaintiffs in the Monetary Relief Actions.  Those

who purchased vehicles or parts manufactured by Old GM, whether they were a known or

unknown creditor at the time, are subject to the terms of the Court's Sale Order and Injunction,

and are barred by this Court's Injunction from suing New GM on account of Old GM's Retained

Liabilities.

## I.     THIS COURT'S SALE ORDER AND INJUNCTION SHOULD BE ENFORCED.

23.     It is well settled that a "Bankruptcy Court plainly ha[s] jurisdiction to interpret

and enforce its own prior orders."  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009);

*In re Wilshire Courtyard*, 729 F.3d 1279, 1290 (9th Cir. 2013) (affirming bankruptcy court's

post-confirmation jurisdiction to interpret and enforce its orders; "[i]nterpretation of the Plan and

Confirmation Order is the only way for a court to determine the essential character of the

negotiated Plan transactions in a way that reflects the deal the parties struck in chapter 11

proceedings"); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("In the

bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court

retains jurisdiction, *inter alia*, to enforce its confirmation order."); *U.S. Lines, Inc. v. GAC*

*Marine Fuels, Ltd. (In re McClean Indus., Inc.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ("[a]ll courts, whether created pursuant to Article I or Article III, have inherent contempt power to enforce compliance with their lawful orders.  The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order.").  In addition, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions, and this section "codif[ies] the bankruptcy court's inherent power to enforce its own orders."  *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997); 11 U.S.C. § 105(a).

24.  Consistent with these authorities, this Court retained subject matter jurisdiction to enforce its Sale Order and Injunction.  Indeed, this is not the first time that this Court has been asked to enforce its injunction against plaintiffs improperly seeking to sue New GM for Old GM's Retained Liabilities.  *See In re Motors Liquidation Co.*, No. 09-50026 (REG), 2011 WL 6119664 (Bankr. S.D.N.Y. 2011) (ordering various plaintiffs to dismiss with prejudice civil actions in which they had brought claims against New GM that are barred by the Sale Order and Injunction); *Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-00509 (Bankr. S.D.N.Y.), Hr'g Tr. 9:3-9:14, May 6, 2010 ("when you are looking for a declaratory judgment on an agreement that I approved [*i.e.*, the Sale Agreement] that was affected by an order that I entered [*i.e.*, the Sale Order and Injunction], and with the issues permeated by bankruptcy law as they are, and which also raise issues as to one or more injunctions that I entered, ***how in the world would you have brought this lawsuit in Delaware Chancery Court.  I'm not talking about getting in personam jurisdiction or whether you can get venue over a Delaware corporation in Delaware.  I'm talking about what talks and walks and quacks like an intentional runaround of something that's properly on the watch of the***

*U.S. Bankruptcy Court for the Southern District of New York*.") (emphasis added); *Castillo*,

2012 WL 1339496 (entering judgment in favor of New GM) (affirmed by 500 B.R. 333, 335

(S.D.N.Y. 2013)); *see also Trusky*, 2013 WL 620281, at *2 (finding that "claims for design

defects [of 2007-2008 Chevrolet Impalas] may not be asserted against New GM and that "New

GM is not liable for Old GM's conduct or alleged breaches of warranty").

25.     This Court is also presently addressing New GM's Ignition Switch Motion to

Enforce, which raises issues that overlap and are indistinguishable from the issues raised herein.

Specifically, both this Motion to Enforce and the Ignition Switch Motion to Enforce concern

Retained Liabilities stemming from vehicles and/or parts manufactured and/or sold by Old GM.

This Court has exercised jurisdiction over the issues raised in the Ignition Switch Motion to

Enforce; the Court should do the same here.

26.     Contrary to New GM's bargained for rights under the Sale Agreement and the

Court's Sale Order and Injunction, Plaintiffs in the Monetary Relief Actions are suing New GM,

in part, for defects in Old GM vehicles and/or parts in various courts.  As in the Ignition Switch

Actions, Plaintiffs may not simply ignore the Court's injunction through these collateral attacks,

especially when the Sale Order and Injunction is a final order no longer subject to appeal.  *See*

*Celotex Corp.*, 514 U.S. at 306, 313  ("'persons subject to an injunctive order issued by a court

with jurisdiction are expected to obey that decree until it is modified or reversed'") (quoting *GTE*

*Sylvania, Inc. v. Consumers Union of U. S., Inc.*, 445 U.S. 375, 386 (1980)); *Pratt v. Ventas, Inc.*,

365 F.3d 514, 520 (6th Cir. 2004) (applying doctrine to dismiss suits filed in violation of

injunction in confirmation order entered by bankruptcy court); *In re McGhan*, 288 F.3d 1172,

1180-81 (9th Cir. 2002) (applying doctrine to enforce discharge order in favor of debtors and

holding that only the bankruptcy court could grant relief from the order); *see also In re Gruntz*,

202 F.3d 1074, 1082 (9th Cir. 2000) (applying this doctrine in the context of an automatic stay entered by the bankruptcy court); *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255 (4th Cir. 1997) (applying doctrine to bankruptcy court order approving sales of assets free and clear of liens).

## II.  NEW GM CANNOT BE HELD LIABLE FOR OLD GM'S ALLEGED CONDUCT, EITHER DIRECTLY OR AS OLD GM'S ALLEGED "SUCCESSOR."

27.     Many of the vehicles and parts at issue in the Monetary Relief Actions were manufactured, marketed, and sold by Old GM prior to the Sale Order and Injunction.  *See, e.g.*, *Yagman* Compl., ¶ 5 (alleging the named plaintiff owns a 2007 Buick Lucerne); *Andrews* Compl., ¶ 25 (alleging that the class includes all persons who own or lease any new or used GM-branded vehicle sold between July 10, 2009, and April 1, 2014); *Stevenson* Compl., ¶ 17 (alleging that the named plaintiff purchased a 2007 Saturn Ion in or around November 2007).

28.     Certain of the Monetary Relief Actions reflect an effort to plead around the Court's Sale Order and Injunction.  In fact they all generally assert the same underlying allegations made about Old GM:  that it manufactured and/or sold vehicles with some type of defect.  (*See* Schedules 1 and 2 attached hereto.)  And, they all seek, at least in part, to hold New GM liable for economic losses, monetary and other relief based on Old GM's conduct — claims that are prohibited by the Sale Order and Injunction.

29.     For example, in *Andrews*, the Plaintiffs seek to limit their class to people who purchased GM vehicles after July 10, 2009.  However, vehicles are not limited to only New GM vehicles; the "Affected Vehicles" as defined in the Andrews complaint encompasses all new and used GM vehicles subject to a recall (other than the Ignition Switch Recall).  The Complaint specifically excludes from the class "owners and lessors of model year 2005-2010 Chevrolet Cobalts, 2005-2011 Chevrolet HHRs, 2007-2010 Pontiac G5s, 2003-2007 Saturn Ions, and 2007-

2010 Saturn Skys, whose vehicles were recalled for an ignition switch defect." Id., ¶ 25. There are no other specific exclusions from the purported class of plaintiffs and, thus, such class necessarily includes vehicles manufactured by Old GM.

30.      In connection with the Ignition Switch Motion to Enforce, this Court addressed similar allegations by a group of plaintiffs (*i.e.*, the *Phaneuf* Plaintiffs) in an Ignition Switch Action.  The *Phaneuf* Plaintiffs argued that the Sale Order and Injunction did not apply to them because the class was also limited to individuals who purchased GM vehicles after July 10, 2009. However, because the vehicles in question were not limited to New GM vehicles, but included Old GM vehicles as well, this Court ruled

> that the sale order now applies, though it is possible, without prejudging any issues, that, after I hear from the other 87 litigants, I might ultimately rule that it does not apply to some kinds of claims and that, even if the sale order didn't apply, that New GM would be entitled to a preliminary injunction temporarily staying the Phaneuf plaintiffs' action from going forward, pending a determination by me on the other 87 litigants' claims under the standards articulated by the circuit in Jackson Dairy and its progeny.

Hr'g Tr. 91:12-21, July 2, 2014.  Accordingly, as was the case with the *Phaneuf* Plaintiffs, the Sale Order and Injunction applies to the *Andrews* Action in the first instances, subject to the rights of the *Andrews* Plaintiff – in this Court -- to argue that it should not apply.

31.      Similarly, as in the Ignition Switch Actions, certain Plaintiffs attempt to impose "successor" liability upon New GM, but New GM is not a successor to Old GM and did not assume any liabilities in connection with successor or transferee liability.  This is expressly provided by the Court's Sale Order and Injunction:

> ***The Purchaser shall not be deemed***, as a result of any action taken in connection with the [Sale Agreement] or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, ***to:  (i) be a legal successor***, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Purchased Assets from and after the Closing); ***(ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial***

*continuation of the Debtors or the enterprise of the Debtors*.  Without limiting the foregoing, the Purchaser (New GM) shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted, or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order and Injunction ¶ 46 (emphasis added); *see also id.*, ¶¶ AA, BB, DD, 6, 7, 8, 10 and 47; Sale Agreement § 9.19.

32.     Plaintiffs' successor liability allegations are simply a violation of this Court's Sale Order and Injunction.  But whether or not Plaintiffs' claims expressly allege successor liability, their claims against New GM based on Old GM's conduct are essentially successor liability claims cast in a different way and are precluded by that Order.

III.    **PLAINTIFFS' WARRANTY ASSERTIONS AND STATE LEMON LAW ALLEGATIONS DO NOT ENABLE THEM TO CIRCUMVENT THE COURT'S SALE ORDER AND INJUNCTION.**

  A.    **The Limited Glove Box Warranty is Not Applicable.  But As a Practical Matter, Plaintiffs Already Are Obtaining Such Relief As Part of the Recall.**

33.     The Glove Box Warranty is for a limited duration and many of the vehicles that are the subject of the Monetary Relief Actions were sold more than three years ago.  Thus, the Glove Box Warranty has expired for those vehicles.  In any event, the Glove Box Warranty provides only for repairs and replacement parts; the economic losses asserted by Plaintiffs in the Monetary Relief Actions are of an entirely different character and are expressly barred by the Glove Box Warranty.  This distinction is not unique to Old GM's 363 Sale.  In the Chrysler bankruptcy case, the court likewise found that the assumed liabilities were limited to the standard limited warranty of repair issued in connection with sales of vehicles.  *See*, *e.g.*, *Burton v. Chrysler Group, LLC (In re Old Carco LLC)*, 492 B.R. 392, 404 (Bankr. S.D.N.Y. 2013) ("New Chrysler did agree to honor warranty claims — the Repair Warranty.  None of the

statements attributed to New Chrysler state or imply that it assumed liability to pay consequential or other damages based upon pre-existing defects in vehicles manufactured and sold by Old Carco.").[14] Finally, as a practical matter, New GM will make the necessary repairs as part of the various on-going recalls, which is all that the Glove Box Warranty would have required. Hence, any claims, if they existed, are moot.

34. Similarly, the Sale Agreement and the Sale Order and Injunction provide that the implied warranty and other implied obligation claims that Plaintiffs assert here are Retained Liabilities for which New GM is not responsible. *See* Sale Order and Injunction, ¶ 56 (New GM "is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, ***including implied warranties*** and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs and point of purchase materials." (emphasis added)); *see also* Sale Agreement § 2.3(b)(xvi) (one of the Retained Liabilities of Old GM was any liabilities "arising out of, related to or in connection with any (A) ***implied warranty*** or other ***implied obligation arising under statutory or common law*** without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." (emphasis added)).

35. In short, any breach of warranty claims Plaintiffs pursue relating to Old GM vehicles or parts (whether express or implied) improperly seek damages against New GM in violation of the Sale Order and Injunction.

---

[14] *See also Tulacro v. Chrysler Group LLC, et al.*, Adv. Proc. No. 11-09401 (Bankr. S.D.N.Y. Oct. 28, 2011) [Dkt. No. 18] (Exhibit "G" annexed hereto); *Tatum v. Chrysler Group LLC*, Adv. Proc. No. 11-09411 (Bankr. S.D.N.Y. Feb. 15, 2012) [Dkt. No. 73] (Exhibit "H" annexed hereto).

**B.    Any Purported State Lemon Law Claims Are Premature At Best, And Cannot Be Adequately Pled.**

36.    In an apparent attempt to circumvent the Court's Sale Order and Injunction, certain of the Monetary Relief Actions purport to assert claims based on alleged violations of state Lemon Laws.  But merely referencing state Lemon Laws is not sufficient.  Plaintiffs must actually plead facts giving rise to Lemon Law liability as defined in the Sale Agreement.  Even a cursory review of the complaints reveals they have not done so.

37.    New GM agreed to assume Old GM's "obligations under state 'lemon law' statutes, which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable statute, after a ***reasonable number of attempts*** as further defined in the statute, and other related regulatory obligations under such statutes."  Sale Order and Injunction, ¶ 56 (emphasis added).  None of the Plaintiffs has alleged that New GM has not conformed the vehicle "after a reasonable number of attempts."  And, not only is New GM in the process of conforming the vehicles (through the various recalls), but the statutes of limitations on Lemon Law claims as defined in the Sale Agreement have expired for many of the Old GM vehicles referenced in the Monetary Relief Actions.

38.    As Judge Bernstein found in *Old Carco*, whether claimants can assert a valid Lemon Law claim "depends on the law that governs each plaintiff's claim and whether the plaintiff can plead facts that satisfy the requirements of the particular Lemon Law."  492 B.R. at 406.  He further held as follows:

> With some variation, the party asserting a Lemon Law claim must typically plead and ultimately prove that (1) the vehicle does not conform to a warranty, (2) the

nonconformity substantially impairs the use or value of the vehicle, and (3) the nonconformity continues to exist after a reasonable number of repair attempts.[15]

Judge Bernstein ultimately found that the claimants there did "not plead that any of the[m] brought their vehicles in for servicing, or that New Chrysler was unable to fix the problem after a reasonable number of attempts." *Id.* at 407. As was the case in *Old Carco*, none of the Plaintiffs here have pled that they brought their vehicles in to be fixed and, after a reasonable number of attempts, that they could not be fixed. They merely base their claims on the recall notices and letters to owners that New GM previously issued.

## CONCLUSION

39. New GM was created to purchase the assets of Old GM pursuant to the Sale Agreement. The limited category of liabilities that New GM agreed to assume as part of the purchase was the product of a  negotiated bargain, which was approved by this Court in July 2009. Plaintiffs in the Monetary Relief Actions have essentially ignored this; they wrongfully treat New GM and Old GM interchangeably and are pursuing Old GM claims that they cannot lawfully pursue against New GM.

40. Schedule 2 provides examples of allegations that on their face relate to the Retained Liabilities asserted by the Plaintiffs in the Monetary Relief Actions. Set forth below are illustrations of what Plaintiffs have improperly alleged in such Actions.

(a) **Implied Warranty**. *See, e.g.*, *See, e.g.*, *Yagman* Compl., ¶ 16 ("defendants and each of them violated the warranty of merchantability . . . ."); *id.*, ¶ 17 ("defendants violated the warranty of fitness for a particular use of their product"); *Stevenson* Compl., ¶ 185 ("Old GM breached the implied warranty of

---

[15] *Old Carco*, 492 B.R. at 406 (citing *Sipe v. Fleetwood Motor Homes of Penn., Inc.*, 574 F. Supp. 2d 1019, 1028 (D. Minn. 2008); *McLaughlin v. Chrysler Corp.*, 262 F. Supp. 2d 671, 679 (N.D.W. Va. 2002); *Baker v. Chrysler Corp.*, Civ. A. No. 91–7092, 1993 WL 18099, at *1–2 (E.D. Pa. Jan. 25, 1993); *Palmer v. Fleetwood Enterp., Inc.*, Nos. C040161, C040765, 2003 WL 21228864, at *4 (Cal. Ct. App. May 28, 2003); *Iams v. DaimlerChrysler Corp.*, 174 Ohio App. 3d 537, 883 N.E.2d 466, 470 (2007); *DiVigenze v. Chrysler Corp.*, 345 N.J. Super. 314, 785 A.2d 37, 48 (App. Div. 2001)).

merchantability by manufacturing and selling Defective Vehicles containing
defects leading to the potential safety issues during ordinary driving conditions.").

(b)   **Implied Obligations under Statute or Common Law**.  *See, e.g.*, *Andrews*
Compl. (asserting causes of action under California Consumer Legal Remedies
Act and California Unfair Competition Law); *Stevenson* Compl. (asserting causes
of action under California Consumer Legal Remedies Act and California Unfair
Competition Law); *Jones* Complaint (asserting causes of action under States'
consumer protection statutes).

(c)   **Successor Liability**.  *See, e.g.*, *Yagman* Compl. (not differentiating between Old
GM and New GM); *Andrews* Compl., ¶ 59 ("GM inherited from Old GM a
company that valued cost-cutting over safety . . . ."); *id.*, ¶ 24 (alleging that New
GM knew "[f]rom its inception" about many of the defects that existed in Old GM
vehicles); *Stevenson* Compl, ¶¶ 65, 72-74 (allegations discussing Old GM's
conduct).

(d)   **Design Defect**.  *See, e.g.*, *Yagman* Compl., ¶ 12 ("Defendant GM manufactured a
defective vehicle"); *id.*, ¶ 13 ("Defendant GM sold a defective vehicle.");
*Andrews* Compl., ¶¶ 17-21 (alleging that vehicles manufactured by Old GM were
sold with a defect); *id.*, ¶ 232 (asserting as a common class question "[w]hether
numerous GM vehicles suffer from serious defects").

(e)   **Tort, Contract or Otherwise**.  *See, e.g.*, *Andrews* Compl. (asserting a cause of
action based on fraudulent concealment); *Stevenson* Compl. (asserting causes of
action based on fraudulent concealment and tortious interference with contract);
*Jones* Complaint (asserting causes of action based on fraudulent concealment and
tortious interference with contract).

(f)   **The Conduct of Old GM**.  *See, e.g.*, *Yagman* Compl., ¶ 14 ("Defendant GM
knew the vehicle [*i.e.*, a 2007 Buick Lucerne] was defective at the time it was put
into the stream of commerce for sale and was sold); *Andrews* Compl., ¶ 3 ("GM
enticed Plaintiff and all GM vehicle purchasers [not differentiating between
purchasers who bought from Old GM and New GM] to buy vehicles that have
now diminished in value as the truth about the GM brand has come out, and a
stigma has attached to all GM-branded vehicles."); *Stevenson* Compl., ¶¶ 65, 72-
74 (allegations discussing Old GM's conduct); *Jones* Compl., ¶¶ 65, 72-74
(allegations discussing Old GM's conduct).

41.      New GM has no liability or responsibility for these Retained Liability claims and,

under the Sale Order and Injunction, Plaintiffs in the Monetary Relief Actions are enjoined from

bringing them against New GM, and their pursuit of these claims violates the Court's injunction.

*See, e.g.,* Sale Order and Injunction, ¶¶ 8, 47.  Accordingly, the Court should enforce the terms

09-50026-mg Doc 12882-6 Filed 11/05/14 Entered 11/05/14 17:31:28 Main Document Pg 32 of 33

of its Sale Order and Injunction by ordering Plaintiffs to promptly dismiss all of their claims that violate the provisions of that Order, to cease and desist from all efforts to assert such claims against New GM that are void because of the Sale Order and Injunction, and to specifically identify which claims, if any, they might have which are not barred by this Court's Sale Order and Injunction.

## NOTICE AND NO PRIOR REQUESTS

42.     Notice of this Motion to Enforce has been provided to (a) counsel for Plaintiffs in each of the Monetary Relief Actions, (b) Designated Counsel and other lead counsel involved in the Ignition Switch Motion to Enforce, (c) counsel for Motors Liquidation Company General Unsecured Creditors Trust, and (d) the Office of the United States Trustee.  New GM submits that such notice is sufficient and no other or further notice need be provided.

43.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court: (i) enter an order substantially in the form set forth as Exhibit "I" annexed hereto, granting the relief sought herein; and (ii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      August 1, 2014

Respectfully submitted,


  /s/ Arthur Steinberg

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*