# <u>Exhibit P</u>

Steve Jakubowski
Elizabeth Richert
THE COLEMAN LAW FIRM
77 West Wacker Dr., Suite 4800
Chicago, Illinois 60601
Telephone: (312) 606-8641
Facsimile: (312) 444-1028
sjakubowski@colemanlawfirm.com

Attorneys for Callan Campbell, Kevin Junso, *et al.,*
Edwin Agosto, Kevin Chadwick, *et al.,* and Joseph Berlingieri

Adina H. Rosenbaum
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Telephone: (202) 588-1000
arosenbaum@citizen.org

Attorneys for Center for Auto Safety, Consumer Action,
Consumers for Auto Reliability and Safety, National Association of
Consumer Advocates, and Public Citizen

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                            :

In re                      :     Chapter 11 Case No.
                            :

GENERAL MOTORS CORP., *et al.,*  :     09-50026 (REG)
                            :

           Debtors.       :     (Jointly Administered)
                            :

------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF THE LIMITED OBJECTION OF
CALLAN CAMPBELL, KEVIN JUNSO, *ET AL.*, EDWIN AGOSTO, KEVIN CHADWICK,
*ET. AL.*, JOSEPH BERLINGIERI, AND THE CENTER FOR AUTO SAFETY, *ET AL.*, TO
THE DEBTORS' 363 MOTION FOR THE SALE OF THE "PURCHASED ASSETS"
FREE AND CLEAR OF POTENTIAL SUCCESSOR LIABILITY CLAIMS**

**Dated: June 19, 2009**
(as amended technically on June 22, 2009)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ii

PRELIMINARY STATEMENT ......................................................................1

STATEMENT OF FACTS............................................................................3

ARGUMENT ...............................................................................................3

I.      Neither the language of § 363(f) nor the policy underlying it
authorize a sale "free and clear" of a product liability claimant's
potential successor liability claims .................................................3

        A.     § 363(f)'s plain meaning does not extend to successor
liability choses in action...................................................3

        B.     The Court should decline to follow the *Chrysler* court's
opinion authorizing a sale "free and clear" of successor
liability choses in action...................................................9

II.     The Court lacks subject matter jurisdiction to enjoin post-closing
disputes between products liability claimants and the
successor Purchaser ......................................................................16

III.    The Purchased Assets cannot be sold "free and clear"
of successor liability for future tort and product
liability claims.............................................................................19

CONCLUSION ...........................................................................................24

# TABLE OF AUTHORITIES

ARGUMENT ..........................................................................................................3

I.    Neither the language of § 363(f) nor the policy underlying it
      authorize a sale "free and clear" of a product liability claimant's
      potential successor liability claims ...........................................................3

      A.    § 363(f)'s plain meaning does not extend to successor
            liability choses in action..................................................................3

## *Cases:*

*Barnhill v. Johnson,* 503 U.S. 393 (1992) ...........................................................8,9

*Butner v. United* States, 440 U.S. 48 (1979)..........................................................8

*City of Chicago v. Environmental Defense Fund,* 511 U.S. 328 (1994)................4

*Cohen v. de la Cruz,* 523 U.S. 213 (1998) .............................................................4

*Conn. Nat'l Bank v. Germain,* 503 U.S. 249 (1992).............................................6

*Dewsnup v. Timm,* 502 U.S. 410, 419 (1992) ........................................................6

*Duncan v. Walker,* 533 U.S. 167 (2001)................................................................5

*Forde v. Kee-Lox Mfg. Co., Inc.,* 584 F.2d 4 (2d Cir. 1978) ................................7

*Greene v. United States,* 79 F.3d 1348 (2d Cir. 1996)..........................................5

*Keene Corp. v. United States,* 508 U.S. 200 (1993) ..............................................4

*MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville)*
837 F.2d 89 (2d Cir. 1988)......................................................................................6

*Midlantic Nat'l Bank v. New Jersey Dep't of Environ. Protection,*
474 U.S. 494 (1986) ................................................................................................6

*N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513 (1984) ..........................................4

*Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*
*(In re Qualitech Steel Corp.),* 327 F.3d 537 (7th Cir. 2003) ................................4

*Ratzlaff v. United States,* 510 U.S. 135 (1994) .....................................................4

*Pennsylvania Public Welfare Dep't v. Davenport*, 495 U.S. 552 (1990) .............................6

*Shearson Lehman Hutton, Inc. v. Schulman (In re Schulman)*,
196 B.R. 688 (Bankr. S.D.N.Y. 1996)...................................................................................6

*TRW, Inc. v. Andrews*, 534 U.S. 19 (2001)............................................................................5

*In re TWA*, 322 F.3d 283 (3d Cir. 2003).................................................................................4

*United Savings Assn. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,
484 U.S. 365 (1988).............................................................................................................9

*United States v. Ron Pair Enters., Inc.,* 489 U.S. 235 (1989). .............................................3

**_Statutes:_**

11 U.S.C. § 363(f)..............................................................................................................3-8

11 U.S.C. § 362(d)(2) ..........................................................................................................9

11 U.S.C. § 1141(c) ...........................................................................................................4,5

**_Legislative Reports:_**

H.R. Doc. No. 93-137, 93rd Cong., 1st Sess .......................................................................7

H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong. 1st Sess. (1977).....................7

S. Rep No. 2266, 95th Cong 1st Sess. (1977)....................................................................7

**_Other:_**

ABSTRACT OF SUBMISSIONS MADE TO NATIONAL BANKRUPTCY REVIEW COMM., National
Bankruptcy Review Commission (Jan. 12, 1998) *available at* http://www.abiworld.org/AM/
Template.cfm?Section=Submission_Abstract&Template=/CM/ContentDisplay.cfm&
ContentID=36636 (last visited, June 17, 2009).....................................................................5

Appx. Vol. B, COLLIER ON BANKRUPTCY, at App. Pt. 4-764
(15th ed. rev. 2008))..............................................................................................................7

Appx. Vol. C, COLLIER ON BANKRUPTCY, at App. Pt. 4-1478
(15th ed. rev. 2008))..............................................................................................................7

Appx. Vol. D, COLLIER ON BANKRUPTCY, at App. Pt. 4-1996
(15th ed. rev. 2008))..............................................................................................................7

**B.**     The Court should decline to follow the *Chrysler* court's
opinion authorizing a sale "free and clear" of successor
liability choses in action................................................................9

*Cases:*

*American Living Sys. v. Bonapfel (In re All Am. Of Ashburn, Inc.),*
56 B.R. 186 (Bankr. N.D. Ga.1986) ..................................................10

*Anderson v. J.A. Interior Applications, Inc.,* No. 97-4552, 1
998 WL 708851 (N.D. Ill. 1998) ......................................................14

*BFP v. Resolution Trust Corp.,* 511 U.S. 531 (1994)............................13

*Butner v. United States,* 440 U.S. 48 (1979)......................................13

*Chicago Truck Drivers, Helpers and Warehouse Workers
Union Pension Fund v. Tasemkim,* 59 F.3d 48 (7th Cir. 1995) .............13

*In re Chrysler,* 405 B.R. 84 (Bankr. S.D.N.Y. May 31, 2009)........................9-11,13-4

*In re Eveleth Mines, LLC,* 312 B.R. 634 (Bankr. D. Minn. 2004)......................10,12-3

*Fairchild Aircraft Corp. v. Cambell (In re Fairchild Aircraft Corp.),*
184 B.R. 910 (Bankr. W.D. Tex. 1995), *vacated as moot on equitable grounds,*
220 B.R. 909 (W.D. Tex. 1998)..................................................10, 15

*Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV,*
209 F.3d 252 (3d Cir. 2000).......................................................... 11

*Gross v. Trustees of Columbia Univ.,* 816 N.Y.S. 2d 695
(N.Y. Sup. Ct. 2006) ...................................................................10

*Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),*
517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds, Travelers Indemnity Co. v.
Bailey,* No. 08–295, 2009 WL 1685625 (June 18, 2009) ......................14,16-7

*In re Karta Corp.,* 342 B.R. 45 (S.D.N.Y. 2006) .................................14

*Kattula v. Republic Bank (In re LWD, Inc.),* No. 5:08-CV-121-R,
2009 WL 367738 (W.D. Ky. Feb. 12, 2009)......................................10

*Kattula v. Republic Bank,* 2008 WL 4606076
(Mich. App.  Oct. 7, 2008).............................................................10

*In re Leckie Smokeless Coal Co.,* 99 F.3d 573 (4th Cir. 1996) ...............10-13

*Lefever v. K.P. Hovnanian Enters., Inc.* 160 N.J. 307 (N.J. 1999) ........................................10

*Michigan Empl. Sec. Comm. v. Wolverine Radio Co., Inc.*
*(In re Wolverine Radio Co.)*, 930 F.2d 1132 (6th Cir. 1991) ................................................10

*Miller v. Level 3 Comms., LLC,* No. 03-4451,
2005 WL 1529419 (D.N.J. June 29, 2005) .........................................................................10

*Qualitech Steel,* 327 F.3d 537 (7th Cir. 2003) ...............................................................10-11

*Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15 (2000) .................................................15

*Rubinstein v. Alaska Pacific Consortium (In re New England Fish Co.),*
19 B.R. 323 (Bankr. W.D. Wash. 1982) .......................................................................9,13-4

*In re TWA, Inc.,* 322 F.3d 283 (3d Cir.2003) ...............................................................10-14

*In re White Motor Credit Corp.,* 75 B.R. 944 (Bankr. N.D. Ohio 1987)............................9-10,14

*Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159 (7th Cir. 1992) .....................................11, 15

**Statutes**

11 U.S.C. § 363(f).............................................................................................................9-14

11. U.S.C. § 541(a)(3), (4), (5), (7).....................................................................................11

**Other:**

BLACK'S LAW DICTIONARY, 816 (7th ed. 1999) ...................................................................11

II.    **The Court lacks subject matter jurisdiction to enjoin post-closing**
**disputes between products liability claimants and the**
**successor Purchaser** ........................................................................................**16**

**Cases:**

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),*
372 F.3d 154 (3d Cir. 2004).................................................................................................17

*Cable Television Ass'n of New York v. Finneran,* 954 F.2d 91
(2nd Cir. 1992).....................................................................................................................17

*Celotex Corp. v. Edwards,* 514 U.S. 300 (1995) ...............................................................16

*Coffin v. Malvern Fed. Sav. Bank,* 90 F.3d 851 (3d Cir. 1996)..........................................17

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004)........................17

*Feld v. Zale Corp.* (*In re Zale Corp.*), 62 F.3d 746 (5th Cir. 1995) ....................16

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982)................................................................................17

*In re Johns-Manville Corp.*, 517 F.3d 52 (2nd. Cir. 2008)
*rev'd on other grounds*.......................................................................16-17

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,*
 458 U.S. 50 (1982)................................................................................18

*Marshall v. Marshall*, 547 U.S. 293, 303 (2006) ....................................19

*Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ................................16, 18

*Travelers Indemnity Co. v. Bailey*, No. 08–295, 2009 WL 1685625
(June 18, 2009)..................................................................................16-18

*Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1992)..............17

**<u>Statutes:</u>**

28 U.S.C. § 1334(b) ................................................................................16

28 U.S.C. § 157(a) ..................................................................................16

28 U.S.C. § 157(c)(1)..........................................................................18-19

28 U.S.C. § 157(b)(5) ..............................................................................19

11 U.S.C. § 363(f)....................................................................................16

**<u>Other</u>**

Michael H. Reed, *Successor Liability and Bankruptcy Sales Revisited—*
*A New Paradigm*, 61 Bus. Law. 179, 184 (2005) ..................................18

III.    **The Purchased Assets cannot be sold "free and clear"
        of successor liability for future tort and product
        liability claims**................................................................................**19**

_Cases:_

_In re Chateaugay_, 944 F.2d 997 (2d Cir. 1991)................................................21,23

_Epstein v. Official Comm. Of Unsecured Creditors of Estate of Piper Aircraft Corp.
(In re Piper Aircraft Corp.)_, 58 F.3d 1573 (11th Cir. 1995) ...............................20

_Fogel v. Zell_, 221 F.3d 955 (7th Cir. 2000) ......................................................20

_Lemelle v. Universal Mfg. Corp._, 18 F.3d 1268 (5th Cir. 1994)...........................20

_Kewanee Boiler Corp. v. Smith (In re Kewanee Boiler Corp.)_,
198 B.R. 519 (Bankr. N.D. Ill. 1996) ................................................................23

_Mooney Aircraft Corp. v. Foster (In re Mooney Aircraft, Inc.)_,
730 F.2d 367 (5th Cir. 1984) ..........................................................................23

_In re Pettibone Corp._, 151 B.R. 166 (Bankr. N.D. Ill. 1993) ...............................22

_Schweitzer v. Consolidated Rail Corp._, 758 F.2d 936 (3d Cir. 1985) ....................21

_Schwinn Cycling & Fitness, Inc. v. Benonis (In re Schwinn Bicycle Co.)_,
210 B.R. 747 (Bankr. N.D. Ill. 1997) ...............................................................22

_Stephenson v. Dow Chem. Co._, 273 F.3d 249 (2d Cir. 2001) ...............................23

_In re UNR Indus., Inc._, 725 F.2d 1111 (7th Cir. 1984)......................................23

_Statutes:_

11 U.S.C. § 101(5)(A)....................................................................................20

11 U.S.C. § 363(f).....................................................................................19-21

11 U.S.C. § 363(f)(5)......................................................................................21

Callan Campbell ("Campbell"), Kevin Junso, *et al.* ("Junso"), Edwin Agosto ("Agosto"),

Kevin Chadwick, *et al.* ("Chadwick"), and Joseph Berlingieri ("Berlingieri," together with

Campbell, Junso, Agosto, and Chadwick, the "Products Liability Claimants"), and the Center for

Auto Safety, Consumer Action, Consumers for Auto Reliability and Safety, National Association

of Consumer Advocates, and Public Citizen (collectively, the "Consumer Organizations," and

together with the Product Liability Claimants, the "Products Liability Claimant Advocates"), by

and through their respective attorneys, submit this Memorandum of Law in support of their

limited objection to the motion (the "363 Motion") of General Motors and certain of its

subsidiaries (collectively, "GM" or "Debtors") for an order authorizing the sale of certain assets,

including its Continuing Brands, to Vehicle Acquisition Holdings LLC, a U.S. Treasury-

sponsored purchaser (the "Purchaser").[1]

## PRELIMINARY STATEMENT

More than 69 million GM passenger vehicles are on American roads today.  In 2007,

according to the National Highway Traffic Safety Administration's Fatal Analysis Reporting

System, 9,985 occupants of GM vehicles were killed in fatal accidents; and a total of 14,828

people were killed that year as a result of motor vehicle crashes involving GM vehicles.  Many

thousands more are injured each year in GM vehicles.  Many of these vehicles contain certain

defects that have and will continue to be the subject of product liability lawsuits, including due to

injuries and deaths from crushed roofs, exploding "side saddle" gas tanks, and collapsing seat

backs.[2]

---

[1]   Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Product Liability
Claimant Advocates' limited objection, the Debtors' 363 Motion, or the Master Purchase Agreement ("MPA")
attached to the 363 Motion.

[2]   Extensive background information on the nature of, and litigation associated with, design defects on these
particular design defects can be found at http://www.autosafety.org/general-motors-roof-crush-

1

GM states in the 363 Motion that the sale "must be free and clear" of "rights or claims based on any successor or transferee liability." (363 Motion at 32-33). No business justification has been articulated, however, as to why the Purchaser is entitled to such relief, particularly when the "New GM" will look and operate much like the "Old GM" in the Continuing Brand businesses, and thus potentially satisfy the "mere continuation," "continuity of enterprise," or "product line exception" tests for successor liability under the laws of various states.

Although shedding potential successor liability claims provides expediency, it's not permitted under Bankruptcy Code section 363(f), which authorizes the sale of property free and clear only of "interests in" property to be sold, not *in personam* claims against the Purchaser under theories of successor liability. And while the *Chrysler* court authorized such relief in the sale of Chrysler's assets in the transaction with Fiat, if the Court undertakes its own independent analysis of *Chrysler's* reasoning, it will conclude that *Chrysler* was wrongly decided on this point of law and that the cases it relied upon were flawed.

The Court should not approve the sale free and clear of successor liability claims for two additional reasons. First, this Court lacks jurisdiction to enjoin actions between non-debtor product liability claimants and the Purchaser post-closing since resolution of these claims will not affect the Debtors' estates. Second, due process does not permit debtors and purchasers to use a Section 363 sale to extinguish future claims that have not yet accrued because the injuries on which they will be based have not yet occurred. People who will one day have such claims cannot have received meaningful notice that the bankruptcy proceeding was resolving their rights or a meaningful opportunity to protect those rights, which otherwise might allow a state law cause of action for their injuries.

---

lawsuits (crushed roof cases), http://www.autosafety.org/general-motors-ck-fuel-fed-fire-litigation ("side saddle" gas tank cases), and http://www.autosafety.org/general-motors-seat-back-collapse-litigation-0 (seat back collapse cases).

Foreclosing the ability to hold the successor Purchaser liable under state successor

liability laws will harm thousands of people who have been or will be injured in vehicles

represented by the Continuing Brands.  Victims of vehicle accidents attributable to defects are

injured in often life-changing ways.  They may have incurred staggering medical bills because of

the physical injuries they have suffered, lost income because of the time they could not work,

and/or suffered the loss of family members in devastating accidents.  They should not be

deprived of the opportunity, because of expediency, to have their day in court as to whether the

Purchaser, under the laws of the several states, remains liable for the injuries, pain, and suffering

they endure.

## STATEMENT OF FACTS

The Product Liability Claimant Advocates refer the Court to, and incorporate herein, the

background facts set forth in their limited objection to the 363 Motion, filed contemporaneously

herewith.

## ARGUMENT

**I.    Neither the language of § 363(f) nor the policy underlying it authorize a sale "free and clear" of a product liability claimant's potential successor liability claims.**

### A.   § 363(f)'s plain meaning does not extend to successor liability choses in action.

Code section 363(f) provides, in relevant part, that "the trustee may sell property ... free

and clear of any interests in such property."  Analyzing whether § 363(f) authorizes a sale "free

and clear" of a products liability claimant's state law successor liability claims "begins where all

such inquiries must begin: with the language of the statute itself."  *United States v. Ron Pair*

*Enters., Inc.,* 489 U.S. 235, 241 (1989).

The issue here turns on the phrase "*interests in such property*," the statutory language

that describes what is released as part of a "free and clear" sale under § 363(f).  In considering

3

the meaning of this phrase, the Court should presume that "equivalent words have equivalent meaning when repeated in the same statute." *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998) (*citing Ratzlaff v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears.")). As set forth in the attached **Exhibit A**, the phrase "interest(s) in property" appears 40 times in the Code. Notably, not once can the phrase "interest in property" be substituted with the word "claim" and make any sense. In this regard, the Seventh Circuit's opinion in *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC (In re Qualitech Steel Corp.)*, 327 F.3d 537 (7th Cir. 2003), is instructive. There, after citing to other times the phrase "interest in property" is used in the Code, the Court held that a leasehold was an "interest in property" because it was "not simply a right that is connected to or arising from the property, ... but a (limited) right to the property itself." *Id.* at 545-46 (7th Cir. 2003) (disagreeing with the 3rd Circuit's holding in *In re TWA*, 322 F.3d 283 (3d Cir. 2003)).

Notably, § 363(f) does not mention the word "claim." In contrast, § 1141(c) of the Bankruptcy Code provides that "property dealt with by the plan is free and clear of all *claims and interests ... in* the debtor." (Emphasis added). Section 363 and 1141(c) are two mechanisms for transfer of estate property (one through a sale, the other through a plan). The difference between the words chosen by Congress in these two closely related sections shows that Congress did not intend a sale under § 363(f) to be free and clear of "*claims*," but only of "*interests in such property*" because "'it is generally presumed that Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another.'" *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 338 (1994) (*quoting Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)); *see also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (where language in one provision shows that Congress knows how to draft to effect a

4

particular outcome, its failure to use that language elsewhere indicates that Congress intended

not to effect that outcome); *Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996) ("The

ancient maxim *expression unius est exclusio alterius* (mention of one impliedly excludes others)

cautions us against engrafting an additional exception to what is an already complex [statutory

scheme]."). Moreover, interpreting the term "interest" to include "claim" would render the term

"claim" in § 1141(c) superfluous. "'It is a cardinal principle of statutory construction,' that 'a

statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence,

or word shall be superfluous, void or insignificant.'" *TRW, Inc. v. Andrews*, 534 U.S. 19, 31

(2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

In addition, Congress had the opportunity to change the Code in considering the National

Bankruptcy Review Commission's 1997 recommendation that the differences between § 363(f)

and § 1141(c) be reconciled by expanding the "free and clear" language of § 363(f) to mirror the

language of § 1141(c).[3] Yet, Congress chose not to do so. Notably, in making this

recommendation, the Commission explained that "the difference in language between [the] two

sections raises a concern that the scope of protection regarding transfers pursuant to asset sales is

narrower than the protection afforded to transfers pursuant to a plan of reorganization."[4] Yet in

2005, when Congress enacted massive revisions to the Code, both technical and substantive, it

did not amend § 363 to expand the "free and clear" language to encompass "claims" generally

---

[3]   *See* ABSTRACT OF SUBMISSIONS MADE TO NATIONAL BANKRUPTCY REVIEW COMM., National Bankruptcy
Review Commission (Jan. 12, 1998), *at*  http://www.abiworld.org/AM/Template.cfm?Section=
Submission_Abstract&Template=/CM/ContentDisplay.cfm&ContentID=36636 (last visited, June 17, 2009).

[4]   *Id.* (*see* ID NRBC-0189, recommendation of Marcia L. Goldstein on behalf of the NYC Bar Ass'n, Comm. on
Bankr. and Corp. Reorg., *identifying* the "PROBLEM REFERENCED" ("Sections 1141(c) and 363(f) contain
incompatible language with regard to asset sales…. The difference in language between [363(f) and 1141(c)] raises
a concern that the scope of protection regarding transfers pursuant to asset sales is narrower than the protection
afforded to transfers pursuant to a plan of reorganization.") *and* the "PROPOSED SOLUTION" ("Section 363(f) should
be amended to provide that property can be sold under this section 'free and clear of all claims and interests of
creditors, equity security holders, and of general partners in the debtor.'")).

that might have some connection with the property sold. *See Conn. Nat'l Bank v. Germain,* 503

U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a

legislature says in a statute what it means and means in a statute what it says there.").

The Court also should look to pre-Code practice for guidance in interpreting § 363(f)'s

reference only to "interests in property" and not to "claims" generally. *Dewsnup v. Timm,* 502

U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a

clean slate.'"). As noted by the late Chief Judge Brozman in *Shearson Lehman Hutton, Inc. v.*

*Schulman (In re Schulman),* 196 B.R. 688 (Bankr. S.D.N.Y. 1996):

> The normal rule of statutory construction is that if Congress intends for
> legislation to change the interpretation of a judicially created concept, it makes
> that intent specific. *Midlantic Nat'l Bank v. New Jersey Dep't of Environ.*
> *Protection,* 474 U.S. 494, 501 (1986). This rule is followed with particular care
> in construing the Bankruptcy Code [which] should not be read to abandon past
> bankruptcy practice absent a clear indication that Congress intended to do so.
> *Pennsylvania Public Welfare Dep't v. Davenport,* 495 U.S. 552, 563 (1990).
> Thus, where the text of the Code does not unambiguously abrogate the pre-Code
> practice, court should presume Congress intended it to continue unless the
> legislative history dictates a contrary result. *Dewsnup v. Timm,* 502 U.S. 410,
> 418-20.

*Schulman,* 196 B.R at 697 n.10.

In *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville),* 837 F.2d 89 (2d Cir.

1988), the Second Circuit expounded on the pre-Code authority of a bankruptcy court "to

approve settlements and to channel claims arising under the [insurance] policies to the proceeds

of the settlement." *Id.* at 93. Notably, in each of the four examples given, the property was

transferred free of true interests or encumbrances, but not of *in personam* claims. *Id.* Moreover,

in the only case cited in which assets were sold free and clear of simple claims (civil rights

claims, in particular), the Second Circuit affirmed the lower court's ruling *not* on the basis that a

bankruptcy trustee has authority to sell assets free and clear of claims, but rather because there

was in fact "no basis for plaintiff's claim" to hold the successor employer liable under the

"substantial continuity of identity" test for successor liability. *Forde v. Kee-Lox Mfg. Co., Inc.*,

584 F.2d 4, 5-6 (2d Cir. 1978). In sum, therefore, nothing in pre-Code practice establishes the

notion that bankruptcy sales can be effectuated free and clear of claims against the purchaser

based on theories of successor liability.

The legislative history to § 363(f) is also instructive in two ways. First, it establishes,

consistent with the judicial presumptions and pre-Code practice described above, that the new

proposed Code section on "sales free of interests of third persons" "codifies case law insofar as it

recognizes the right of the trustee to sell property of the estate free and clear of liens and other

interests that can be reduced to dollars." H.R. Doc. No. 93-137, 93rd Cong., 1st Sess., § 5-203

(Sale of Property of the Estate), note 2 (*available at* Appx. Vol. B, COLLIER ON BANKRUPTCY, at

App. Pt. 4-764 (15th ed. rev. 2008)). The legislative history makes no reference to such sales

being washed free of *in personam* claims for successor liability. Second, the legislative history

cannot sensibly be read to include the notion that a bankruptcy sale can be ordered free and clear

of *in personam* claims. Both the final House and Senate Reports on Section 363 provide:

> At a sale free and clear of other interests, any holder of any interest in the property being
> sold will be permitted to bid. If that holder is the high bidder, he will be permitted to
> offset the value of his interest against the purchase price of the property.

H.R. 8200, 9th Cong., 1st Sess., § 363 (1977) (*available at* Appx. Vol. C, COLLIER ON

BANKRUPTCY, at App. Pt. 4-1478 (15th ed. rev. 2008)); S. 2266, 95th Cong., 1st Sess., § 363

(1977) (*available at* Appx. Vol. D, COLLIER ON BANKRUPTCY, at App. Pt. 4-1996 (15th ed. rev.

2008)). One cannot substitute "claims against" for "interest in" and make any sense of the rights

of such holder; it would be absurd to argue that a holder of a general unsecured claim has a right

to credit bid its claims in an auction and "offset the value of his [claims] against the purchase price of the property."

Further support that § 363(f)'s use of the term "interests in property" does not include *in personam* claims for successor liability is found in *Butner v. United* States, 440 U.S. 48 (1979), which is best known for the proposition that—except where Congress has specifically chosen to exercise its power to fashion applicable rules of bankruptcy law—"Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner* states:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Id.* at 55 (citation omitted).

*Barnhill v. Johnson,* 503 U.S. 393 (1992), took *Butner* one step further. In holding that the "transfer" of an "interest in property" had occurred at the time the debtor's check was honored, not at the time the check was delivered, *Barnhill* establishes that a "nebulous right to bring suit" is not an "interest in property":

> There is thus some force in petitioner's claim that he did, in fact, gain something when he received the check. But at most, what petitioner gained was a chose in action against the debtor. Such a right, however, cannot fairly be characterized as a conditional right to "property … or an interest in property," where the property in this case is the account maintained with the drawee bank. For as noted above, until the moment of honor the debtor retains full control over disposition of the account and the account remains subject to a variety of actions by third parties. **To treat petitioner's nebulous right to bring suit as a "conditional transfer" of the property would accomplish a near-limitless expansion of the term "conditional." In the absence of any right against the bank or the account, we think the fairer description is that petitioner had received no interest in debtor's property, not that his interest was "conditional."**

8

*Id.* at 400-401 (emphasis added).  Also instructive is *United Savings Assn. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988), which held that "the 'interest in property' protected by § 362(d)(1) does not include a secured party's right to immediate foreclosure." *Id.* at 371.

Reading "interest in property" as broadly as the Debtors request in their Motion, however, would contravene the holdings of *Barnhill* and *Timbers* each of those cases involved the same kind of "nebulous right" or "chose in action" that the Debtors here are seeking to enjoin through its proposed "free and clear" sale, yet in neither of those cases were those rights considered "interests in property."

**B.   The Court should decline to follow the *Chrysler* court's opinion authorizing a sale "free and clear" of successor liability choses in action.**

In the recent decision in *In re Chrysler,* 405 B.R. 84 (Bankr. S.D.N.Y. May 31, 2009), the court held that tort claims are "interests in such property" under § 363(f).  As explained below, that decision was incorrect for several reasons.  First, a narrower reading that would exclude *in personam* choses in action from the coverage of "interests in property" under § 363(f) is amply supported by a long line of cases, including *In re White Motor Credit Corp.,* 75 B.R. 944 (Bankr. N.D. Ohio 1987), and *Rubinstein v. Alaska Pacific Consortium (In re New England Fish Co.),* 19 B.R. 323 (Bankr. W.D. Wash. 1982).  The *Chrysler* decision cited these cases as authority for extending § 363(f)'s coverage to *in personam* choses in action, but in fact, these cases support the *opposite* conclusion.  *See White Motor,* 75 B.R. 948 ("General unsecured claimants, including tort claimants, have no specific interest in a debtor's property.  Therefore, section 363 is inapplicable for sales free and clear of such claims."); *Rubinstein,* 19 B.R. at 326 (Title VII claimants are general unsecured creditors who lack "an interest in the specific property of the estate being sold" under § 363(f)).

9

*American Living Sys. v. Bonapfel (In re All Am. Of Ashburn, Inc.)*, 56 B.R. 186 (Bankr. N.D. Ga. 1986), upon which the *Chrysler* court also relied, did not conclude that *in personam* claims are "interests in property" for purposes of § 363(f). Rather, like *White Motor* and *Rubinstein*, that case was decided without a single reference to the section's "interest in property" language. *Id.* at 190.

In fact, almost every case that has closely examined the language, history, and policies of § 363(f) has concluded that the section does not authorize sales "free and clear" of *in personam* choses in action for successor liability.[5] *In re TWA*, 322 F.3d 283 (3d Cir. 2003), on which the *Chrysler* court relied, is one of the few exceptions. *See also United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal)*, 99 F.3d 573 (4th Cir. 1996) (upon which *TWA* relies).

For example, in the Seventh Circuit case of *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC (In re Qualitech Steel Corp.)*, 327 F.3d 537 (7th Cir. 2003), Judge Posner, writing for a unanimous panel, held that § 363(f)'s reference to "any interest" was "sufficiently broad to

---

[5]    Federal cases include *Michigan Empl. Sec. Comm. v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n. 23 (6th Cir. 1991) (relying upon *White Motor* to "reject Wolverine's argument that general unsecured interests fall within the scope of those interests that can be discharged pursuant to section 363(f)"); *Kattula v. Republic Bank (In re LWD, Inc.)*, No. 5:08-CV-121-R, 2009 WL 367738 at *4 (W.D. Ky. Feb. 12, 2009) (free and clear language of § 363 sale order enjoining successor liability claims "applies only to estate property ... and does not contemplate protection against personal liability claims"); *Miller v. Level 3 Comms., LLC*, No. 03-4451, 2005 WL 1529419 at *9 (D.N.J. June 29, 2005) ("the Bankruptcy Court [free and clear sale] Order may not defeat application of the eight factors set forth by the Secretary of Labor [for evaluating whether an employer qualifies as a successor in interest for purposes of the Act"); In *re Eveleth Mines, LLC*, 312 B.R. 634 , 654 (Bankr. D. Minn. 2004) ("In the last instance, the reasoning of the [*TWA* and *Leckie*] opinions fails on an alternate basis: they do not take the inquiry back to where it belongs, the governance of state law in the defining of 'interest."); *Fairchild Aircraft Corp. v. Cambell (In re Fairchild Aircraft Corp.)*, 184 B.R. 910, 918 (Bankr. W.D. Tex. 1995), *vacated as moot on equitable grounds,* 220 B.R. 909 (W.D. Tex. 1998) ("Were we to allow 'any interests' to sweep up *in personam* claims ... we would render the words 'in such property' a nullity.  No one can seriously argue that *in personam* claims have, of themselves, an *interest in property.*").

State cases include: *Kattula v. Republic Bank*, 2008 WL 4606076 (Mich. App.  Oct. 7, 2008) ("Section 363(f) is not intended to extinguish *in personam* liabilities."); *Lefever v. K.P. Hovnanian Enters., Inc.* 160 N.J. 307, 320 (N.J. 1999) (products liability claimant had no "interest" in the sense of a lien or encumbrance on the property); *Gross v. Trustees of Columbia Univ.,* 816 N.Y.S. 2d 695 (N.Y. Sup. Ct. 2006) (follows *Lefever* in case applying NJ law).

include Precision's possessory interest as lessee." In rejecting *TWA*'s more expansive definition

of "any interest" as meaning "a right that is connected to or arising from the property," he stated:

> The Bankruptcy Code does not define "any interest," and in the course of
> applying section 363(f) to a wide variety of rights and obligations related to estate
> property, courts have been unable to formulate a precise definition. *Folger Adam
> Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258 (3d Cir. 2000)....
> [We] conclude that the term "any interest" as used in section 363(f) is sufficiently
> broad to include Precision's possessory interest as a lessee. BLACK'S defines
> "interest" to mean "[a] legal share in something; all or part of a legal or equitable
> claim to or right in property." BLACK'S LAW DICTIONARY, 816 (7th ed. 1999).
> The right that a leasehold confers upon the lessee is one to possess property for
> the term of the lease. **It is, therefore, not simply a right that is connected to or
> arising from the property,** *see In re Trans World Airlines, Inc.*, 322 F.3d 283,
> 289-90 (3d Cir.2003), **but a (limited) right to the property itself.** That right
> readily may be understood as an "interest" in the property. This inclusive
> interpretation of the phrase "any interest" is consistent with the expansive use of
> that same phrase in other provisions of the Code. *See, e.g.,* 11. U.S.C. §
> 541(a)(3), (4), (5), and (7) (identifying various interests comprising property of
> the estate).

*Qualitech Steel.*, 327 F.3d at 545-46 (emphasis added); *see also Zerand-Bernal Group, Inc. v.*

*Cox*, 23 F.3d 159, 163 (7th Cir. 1994) (in holding that bankruptcy court had no jurisdiction over

post-confirmation products liability claim, stating: "It is true that [the debtor's] assets were sold

to [the purchaser] free from all liens and other encumbrances. And such a cleansing of the assets

in the bankruptcy sale is a valid power of a bankruptcy court, 11 U.S.C. §§ 363(f), 1141(c). But

the [claimants] are not attempting to enforce a lien.").

Thus, the *Chrysler* court erred in following *TWA* and authorizing the sale of Chrysler's

assets free and clear of potential *in personam* or successor liability claims against New Chrysler.

In *TWA*, the Third Circuit affirmed a bankruptcy court's order that a 363 sale to American

Airlines of TWA's operating assets would be "free and clear" of both pending employment

discrimination claims and rights under a travel voucher program established in settlement of a

sex discrimination action initiated by TWA's flight attendants. However, not only did *TWA*

11

misinterpret the phrase "interests in property" in § 363, but it —and *Leckie Smokeless Coal*,[6] the

case upon which it primarily relies—failed to articulate coherent policy grounds authorizing such

sales "free and clear" of all such claims.

As explained in *In Eveleth Mines, LLC*, 312 B.R. 634 (Bankr. D. Minn. 2004), the

problem with both *TWA* and *Leckie* is that they "are built on an amorphously inclusive

rationalization [that] posits a loose sort of 'but-for' causality that is thrown up to identify the

straw-built 'interest' that then is vanquished." *Id.* at 654.

*TWA* and *Leckie* adopt tortured reasoning to shoehorn the claim at issue into an "interest

in property" that can be wiped out in a "free and clear" sale under § 363(f). They both reason

that the successor liability claims at issue were an "interest in" the property transferred because

had the debtor not deployed the assets sold in the particular manner that subjected it to the

particular claim at issue, then the claimants would have had no claim upon which the successor

could be liable. *See TWA,* 322 F.3d at 290 ("Had TWA not invested in airline assets, which

required the employment of the EEOC claimants, those successor liability claims would not have

arisen. Further, TWA's investment in commercial aviation is inextricably linked to its

employment of the … claimants … and its ability to distribute travel vouchers as part of the

settlement agreement."); *Leckie Smokeless Coal*, 99 F.3d 573, 582 ("[I]f Appellees had never

elected to put their assets to use in the coal-mining industry, and had taken up business in an

altogether different area, the Plan and Fund would have no right to seek premium payments from

them.").

---

[6]   *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie
Smokeless Coal)*, 99 F.3d 573 (4th Cir. 1996) (debtor's assets could be sold "free and clear" of
obligations under the Coal Industry Retiree Health Benefit Act of 1992, which imposed joint and
several liability on any "successor in interest" to a covered coal producer).

This interpretation of "interest in such property," however, would render the phrase meaningless as it would be all-encompassing. After all, hardly any claim arises other than as a result of the debtor's particular use of the assets. And as Justice Scalia warned in writing for the majority in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), a court should not "torture [the text] into meaning" for "such word-gaming would deprive the criterion of all meaning." *Id.* at 538 n.4.

Moreover, the *Eveleth Mines* court rightly stated, the reasoning of *TWA* and *Leckie Smokeless Coal* fails because "they do not take the inquiry back to where it belongs, the governance of state law in the defining of 'interest'." *Eveleth Mines*, 312 B.R. at 654. "As recognized in *Butner*," the *Eveleth Mines* court concluded, "this is a matter of federalism." *Id.* (*citing Butner*, 440 U.S. at 52-56).

Equally flawed are the policy considerations relied upon by *TWA* and *Chrysler* in permitting sales free and clear of successor liability claims against the purchaser. According to *TWA*, "allowing the claimants to seek a recovery from the successor entity while creditors which were accorded higher priority by the Bankruptcy Code obtained their recovery from the limited assets of the bankruptcy estate would 'subvert the specific priorities which define Congressional policy for bankruptcy distribution to creditors.'" *TWA*, 322 F.3d at 292 (*quoting New England Fish Co.*, 19 B.R. at 329). Such a *per se* rule, however, was rejected by the Seventh Circuit in *Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Tasemkim,* 59 F.3d 48 (7th Cir. 1995), which stated:

> What imposition of successor liability would accomplish, and what the district court objected to, would be a second opportunity for a creditor to recover on liabilities after coming away from the bankruptcy proceeding empty-handed. But a second chance is precisely the point of successor liability, and it is not clear why an intervening bankruptcy proceeding, in particular, should have a *per se* preclusive effect on the creditor's chances…. Instead of being dispositive, however, the availability of relief

from the predecessor is a factor to be considered along with other facts in a particular case. Here, those facts include the apparent nature of the acquisition of Old Tasemkin by New Tasemkin-which clearly had the effect, intended or not, of frustrating unsecured creditors while resurrecting virtually the identical enterprise.

*Id.* at 51. *Cf. Anderson v. J.A. Interior Applications, Inc.*, No. 97-4552, 1998 WL 708851 (N.D. Ill. 1998) (rejecting concerns that successor claimants will elevate their priority rights by noting that "[c]reditors ahead of plaintiffs in the bankruptcy proceedings are thus entitled to the same distribution of assets regardless of whether plaintiffs recover anything from [the debtor's] successor").

*TWA* and *Chrysler* also rely on the notion that "the policy underlying section 363(f) is to allow a purchaser to assume only the liabilities that promote its commercial interests." *Chrysler,* 405 B.R. at 111 (citing *New England Fish Co.* and *White Motor Credit*); *TWA,* 322 F.3d at 292-93 ("Absent entry of the Bankruptcy Court's order providing for a sale of TWA's assets free and clear of the successor liability claims at issue, American may have offered a discounted bid."). But here, the proposed sale is being effected primarily through a credit bid by GM's senior secured lender of its debt, and no less consideration would flow to the estate if product liability claims were allowed to go forward in states that allow such actions to be pursued against successor purchasers of the assets. Regardless, it is inappropriate to release claims against a non-debtor just because of its contributions to the debtor's estate. *See Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),* 517 F.3d 52, 65 (2d Cir. 2008) (*citing In re Karta Corp.,* 342 B.R. 45, 55 (S.D.N.Y. 2006) ("[C]onditioning of financial participation by non-debtors on releases ... is subject to ... abuse.")), *rev'd on other grounds, Travelers Indemnity Co. v. Bailey,* No. 08–295, 2009 WL 1685625 (June 18, 2009).[7]  *cf., Tasemkim,* 59

---

[7]  On June 18, 2009, the Supreme Court reversed the Second Circuit's 2008 decision in *Johns-Manville*, but only based on the "narrow" grounds that once the bankruptcy court's orders of 1986 became final on direct review, they became *res judicata* as to the parties. *Bailey,* 2009 WL 1685675, at *11. The narrowness of the holding, coupled

F.3d at 50-51 ("[T]he potential for chilling does not vary as a function of a company's precise degree of distress, and there is no reason to accord the purchasers of formally bankrupt entities some special measure of insulation from liability that is unavailable to ailing but not yet defunct entities."); *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1992) (extinguishing state law rights in order to increase the value of the debtors' property "would not only [] harm [] third parties…, but [would provide an] incentive to enter bankruptcy for reasons that have nothing to do with bankruptcy").

In sum, the Code's plain meaning does not support the result sought by GM here. Although the proposed sale is presented as a needed step to preserve a company important to the U.S. economy, "it was and is for the legislature to pass on [these] policy choice[s] … [for] the job of the courts is limited to ascertaining what policy choice Congress *did* make, not what policy choice Congress *should have* made."[8] *Fairchild Aircraft*, 184 B.R. at 919 (emphasis in original); *see also Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 24-25 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides.").

---

with the absence of any disagreement by the majority with the categorical statement in Justice Stevens' dissent that "the bankruptcy court has no authority … to adjudicate, settle, or enjoin claims against nondebtors that do not affect the debtor's estate," strongly suggests that were the issue on the bankruptcy court's authority to enjoin actions between—and release claims against—non-debtors again presented to the Second Circuit, its holding and rationale on this issue would not change. *See Bailey,* 2009 WL 1685675, at *14 (Stevens, J., *dissenting*).

[8]  As noted by the *Ad Hoc* Committee of Tort Claimants, however, "New GM's viability is not dependent on New GM avoiding its liability for tort claims.  If it was, GM and the U.S. Treasury would not have consented to an out-of-court reorganization under which tort claims would have survived." (Docket No. 1997, ¶ 35).  The Debtors agree, noting that these cases are not "asbestos-driven" (or, presumably, "tort claim-driven") cases. (Docket No. 1915, ¶ 27).

## II.  The Court lacks subject matter jurisdiction over post-closing disputes between products liability claimants and the successor Purchaser.

Bankruptcy courts are courts of limited jurisdiction.  Under § 1334(b), district courts have original jurisdiction over civil proceedings "arising under" title 11 or "arising in" or "related to" a case under title 11.  The district courts may in turn refer such cases to the bankruptcy judges for that district.  28 U.S.C. § 157(a).

GM is asking the Court to exercise jurisdiction to enjoin product liability claimants from bringing successor liability claims against the Purchaser after the § 363 sale closes.  This Court, however, does not have the subject-matter jurisdiction under 28 U.S.C. § 1334 to enjoin such suits because the outcomes of such actions are unrelated to this bankruptcy proceeding.  "Related to" jurisdiction exists when:

> [T]he *outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* . . . .  An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the bankrupt estate.

*Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (emphasis in original) (*quoting Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  Although "any effect" may appear to sanction a broad grant of authority, the *Celotex* Court warned that "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Id.* at 308.

Generally, courts find "related to" jurisdiction exists over a third-party action when "the subject of the third-party dispute is property of the estate" or "the dispute over the asset would have an effect on the estate." *Johns-Manville*, 517 F.3d at 65 (*quoting Feld v. Zale Corp. (In re Zale Corp.*), 62 F.3d 746, 753-54 (5th Cir. 1995)), *rev'd on other grounds, Bailey, supra,* note 7.  Conversely, courts will not find "related to" jurisdiction exists over third-party actions "when the asset in question is not property of the estate and the dispute has no effect on the estate." *Johns-*

*Manville Corp.*, 517 F.3d at 65.  Additionally, that an action between non-debtor third-parties shares facts or other similarities with the debtor-creditor relationship is insufficient to establish "related to" jurisdiction over the third-party action.  *Id.*

Here, the product liability claimants' successor liability claims—to the extent they exist under applicable state law—will be asserted solely against the non-debtor Purchaser and thus will not diminish the Debtors' estates.  *See Zerand-Bernal Group*, 23 F.3d at 162 (in holding that product liability claim brought under state law theory of successor was not "related to" and did not "arise under" the Bankruptcy Code, explaining that the claimants' action was "neither by nor against the Debtor").  Further, such suits will not affect the Purchaser's offered acquisition price because the Purchaser is obtaining the assets largely through a credit bid.  Therefore, the Court does not have "related to" jurisdiction over such claims, and cannot enjoin them.

Moreover, "[s]ubject matter jurisdiction cannot be 'conferred by consent' of the parties." *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 161 (3d Cir. 2004) (*quoting Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir. 1996)); *Cable Television Ass'n of New York v. Finneran*, 954 F.2d 91, 94 (2d Cir. 1992) ("[T]he parties may not confer subject matter jurisdiction on the court by consent.") (*citing Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).  As such, the fact that the 363 sale is contingent upon entry of an order that enjoins successor liability claims is insufficient to establish "related to" jurisdiction, for "a debtor [cannot] create subject matter jurisdiction over any non-debtor third party by structuring a plan in such a way that it depend[s] upon thirty-party contributions."  *In re Combustion Engineering, Inc.*, 391 F.3d 190, 228-29 (3d Cir. 2004); *cf., Johns-Manville*, 517 F.3d at 66 (it is "inappropriate for the bankruptcy court to enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial

17

contribution to a debtor's estate."), *rev'd on other grounds, Bailey, supra*, note 7.  The Debtors'

desire to facilitate a 363 sale "may not be used as a jurisdictional bootstrap when no jurisdiction

otherwise exists." *Id.* at 68.

Even the outside chance that allowing these claims to proceed after the sale might, if

successful, give rise to a claim by the Purchaser against the Debtors for breach of the MPA is not

in itself sufficient to establish "related to" jurisdiction.  *Cf., Pacor*, 743 F.2d at 995 (holding that

a potential indemnity claim against the debtor did not give rise to "related to" jurisdiction over a

third-party action because "[t]he fact remains that any judgment received by the [non-debtor

plaintiff] could not itself result in even a contingent claim against [the debtor], since [the third-

party defendant] would still be obligated to bring an entirely separate proceeding to receive

indemnification.").

Finally, the Court lacks jurisdiction to enter the proposed Sale Order because a

bankruptcy court does not have stand-alone powers to make determinations on common or state

law questions.  *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 84 (1982).

After *Marathon*, Congress amended the law in 28 U.S.C. § 157(c)(1) to provide that bankruptcy

judges may hear a non-core proceeding grounded in state law that is "*related to*" the bankruptcy

case.  The determination of whether the Purchaser is a successor (*e.g.,* under theories of "mere

continuation," "continuity of enterprise," or "product line exception") is a question of state law.

*See generally* Michael H. Reed, *Successor Liability and Bankruptcy Sales Revisited—A New

Paradigm*, 61 BUS. LAW. 179, 184 (2005) ("The rights of common law successor liability

claimants ... usually are 'created and defined' by state law and clearly appear to be substantive

rights").  Such traditional state law questions qualify under any measure as "non-core" matters as

to which this Court may only submit proposed findings of fact and conclusions of law to the

district court (*see* 28 U.S.C. § 157(c)(1)), assuming it can even hear the matter at all (*see* 28 U.S.C. § 157(b)(5) ("personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claims arose"). *See Marshall v. Marshall*, 547 U.S. 293, 303 (2006) ("A bankruptcy court may exercise plenary power only over core proceedings. In noncore matters, a bankruptcy court may not enter final judgment; it has authority to issue only proposed findings of fact and conclusions of law, which are reviewed *de novo* by the district court").

Regardless, consideration of such issues is premature and not ripe for adjudication since the facts needed to establish the purchaser's post-sale order conduct cannot possibly be considered before the sale has even been consummated.. *See e.g., Bes Enterprises, Inc. v. Natanzon*, No. 06-870, 2006 WL 3498419, at *5 (D. Md. Dec. 4. 2006) (motion to dismiss denied because more facts were needed to establish the purchaser's post-sale order conduct).

## III. The Purchased Assets cannot be sold "free and clear" of successor liability for future tort and product liability claims.

The Master Purchase Agreement and Proposed Sale Order contain language that purports to release the purchaser from successor liability for future product liability and tort claims. *See, e.g.*, MPA at 94 (stating that Purchaser will not have any successor liability "whether now existing or hereafter arising"). For two reasons, GM cannot be sold free and clear of claims that have not yet arisen. First, such future claims are not within the statutory language of § 363(f). Second, due process principles do not allow GM to eliminate rights of future claimants, who have not and could not have received meaningful notice that their rights in a future suit are being lost, and thus have had no opportunity to seek to preserve those rights.

To begin with, as discussed above, product liability claims in general are not "*interests in such property*" within the meaning of § 363(f). But even if such claims could be considered

"interests in such property" under that section, future claims cannot.  People who have not yet

suffered injury or loss because of GM's behavior cannot have an "interest in" GM's property

because the injuries that would lead them to have such an interest have not yet even occurred.

Moreover, even if § 363(f) applied to "claims" (as opposed to just "interests in such

property"), the future causes of actions of people who have not yet suffered a loss or injury due

to the defect in their vehicles would not be covered.  "The term 'claim' means . . . right to

payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

11 U.S.C. § 101(5)(A).  A person who has not yet suffered a loss or injury has no right to

payment of any kind from the debtor.  As the Seventh Circuit stated in *Fogel v. Zell*, 221 F.3d

955 (7th Cir. 2000), addressing a hypothetical remarkably similar to the case at hand:

> Suppose a manufacturer goes bankrupt . . . .  And suppose that ten million
> people own automobiles manufactured by it that may have the same defect that
> gave rise to [product liability] suits but, so far, only a thousand have had an
> accident caused by the defect.  Would it make any sense to hold that all ten
> million are tort creditors of the manufacturer and are therefore required, on pain
> of having their claims subordinated to early filer, to file a claim in the bankruptcy
> proceeding?  Does a pedestrian have a contingent claim against the driver of
> every automobile that might hit him?  We are not alone in thinking that the
> answer to these questions is "no."

*Id.* at 960.  *See also Epstein v. Official Comm. Of Unsecured Creditors of Estate of Piper

Aircraft Corp. (In re Piper Aircraft Corp.)*, 58 F.3d 1573 (11th Cir. 1995) (holding that

prepetition manufacture, design, sale, and distribution of airplanes was insufficient to establish a

"claim" for future victims in the bankruptcy proceeding because "there [was] no preconfirmation

exposure to a specific identifiable defective product or any other preconfirmation relationship

between [the manufacturer] and the broadly defined class of Future Claimants"); *Lemelle v.

Universal Mfg. Corp.,* 18 F.3d 1268, 1274 *(*5th Cir. 1994) (refusing to extend term "claimants" to

include people "whom the record indicates were completely unknown and unidentified at the time [the company] filed its petition and whose rights depended entirely on the fortuity of future occurrences"); *In re Chateaugay Corp.*, 944 F.2d at 1003-04 ("Accepting as claimants those future tort victims whose injuries are caused by pre-petition conduct but do not become manifest until after confirmation, arguably puts considerable strain not only on the Code's definition of 'claim,' but also on the definition of 'creditor.'"); *cf., Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 944 (3d Cir. 1985) (claims for personal injuries that developed after a bankruptcy not dischargeable "claims" or "interests" under prior version of Bankruptcy Act).

Furthermore, even if future claims were "interests in property" under § 363(f), GM's assets cannot be sold free and clear of them unless one of the five conditions set forth in § 363(f) is met. Here, GM is relying on § 363(f)(5), which allows sale free and clear of claims that can be "compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." Future claims—causes of action that have not yet even accrued—do not and cannot be made to fit within this section. People with no current claim do not have an interest that can be reduced to a monetary value; they have not yet been injured, so they cannot know the nature or extent of an injury yet to occur. It would be impossible for GM to bring a proceeding against any future claimant to compel him or her to accept money in exchange for a claim that has not yet arisen. The plain meaning of the statute thus forecloses GM's effort to make the sale free and clear of these future claims.

The sale of GM "free and clear" of tort and product liability claims that have yet to arise also violates due process. Because people who will, but have not yet, suffered injury from defects in GM vehicles do not know that they will be injured in the future, they cannot be given either meaningful notice that their rights are being adjudicated or a meaningful opportunity to be

heard. As the Third Circuit stated in *Schweitzer*, it would be "absurd" to expect a "person who

had no inkling" that he would be injured by the debtor's product years in the future to file a

claim in the debtor's bankruptcy proceedings to preserve his rights. *Schweitzer,* 758 F.2d at 943;

*see also In re Pettibone Corp.*, 151 B.R. 166, 172 (Bankr. N.D. Ill. 1993) ("[T]he argument

implies that *uninjured* persons who wish to protect themselves in event of future injuries have

the burden of monitoring national financial papers . . . to read notices about businesses they have

no claims against because they are on notice of claim bar dates affecting any future injuries

caused by such companies. Franz Kafka would have been able to accept such a legal principle in

one of his stories; the Bankruptcy Code and the Fifth Amendment to the United States

Constitution cannot.") (emphasis in original).

   In its motion to approve the sale, GM requests that publication notice be deemed

sufficient notice to those whose identities are unknown to the debtor. But the problem here is not

just that GM has been unable to provide individualized notice to people with future claims; the

problem is that people with future claims do not *themselves* know that they will be injured by

defects in GM's products. Even if they saw a notice in a newspaper, people who have not yet

been injured—some of whom may not even own a GM vehicle—would not know that the sale

would affect them. These individuals have neither claims against nor knowledge that they will

ever have a cause of action against GM. *See Schwinn Cycling & Fitness, Inc. v. Benonis (In re

Schwinn Bicycle Co.)*, 210 B.R. 747, 760 (Bankr. N.D. Ill. 1997), *aff'd,* 217 B.R. 790 (N.D. Ill.

1997) (holding that it would violate due process to bind future victims to terms of sale order

because "without knowing today who will be injured tomorrow, notice to particular individuals

who may be injured in the future cannot be given" and "it is "doubtful that any general warning

would have motivated future victims to participate actively in the bankruptcy proceeding");

*Kewanee Boiler Corp. v. Smith (In re Kewanee Boiler Corp.),* 198 B.R. 519, 538 ("Identifying persons who might come in close proximity to any of Kewanee's boilers that were manufactured imperfectly would have been impossible … [and] [w]hile a list could have been compiled of those who had purchased all the boilers, it is doubtful that notice to such parties and their employees could have reached all future victims of malfunctioning boilers or that anyone would have known what to do with notice of a bankruptcy as to which they then had no claim of injury.). And although some courts have sought to address the inability of people with future claims to be heard in court on those claims by providing for those people in the bankruptcy proceeding, GM has not done so here. *Cf., Stephenson v. Dow Chem. Co.,* 273 F.3d 249 (2d Cir. 2001) (holding that post-1994 asbestos claimants were not bound by settlement that purported to settle future claims but did not provide for recovery for injuries discovered after 1994).

Many courts have recognized the constitutional problem caused by attempting to discharge or foreclose future claims in a bankruptcy proceeding. *See In re Chateaugay*, 944 F.2d 997, 1003 (2d Cir. 1991) (recognizing the "enormous practical and perhaps constitutional problems" that would arise from considering future claims to be "claims" under the Bankruptcy Code); *Schweitzer*, 758 F.2d at 944 ("[A]n interpretation of 'interests' that included plaintiffs' future tort actions would raise constitutional questions."); *Mooney Aircraft Corp. v. Foster (In re Mooney Aircraft, Inc.)*, 730 F.2d 367, 375 (5th Cir. 1984) ("[L]ack of notice might well require us to find that the bankruptcy court's prior judgment was ineffective as to the [future claimants'] claims."); *In re UNR Indus., Inc.*, 725 F.2d 1111, 1119 (7th Cir. 1984) (stating that the difficulties of giving constitutionally adequate notice to the thousands of people exposed to asbestos sold by UNR but who had not yet developed asbestosis were "possibly insurmountable"). This Court should avoid the difficult constitutional questions that would arise from clearing the Purchaser of

liability for claims that do not yet exist, and make clear that the sale does not release the claims

of consumers who will be injured or suffer losses in the future as a result of defects in GM

vehicles.

## CONCLUSION

The limits of the Bankruptcy Court's power will be on display in this case as never

before. Through this objection, the Product Liability Claimant Advocates ask the Court to

respect the jurisdictional boundaries of the Court, the statutory directives of Congress, and the

due process requirements of the Constitution and deny the Debtors' request to bar present and

future product liability claimants from pursing claims against the Purchaser post-closing under

applicable state law theories of successor liability.

Dated: June 19, 2009 (as amended
       technically on June 22, 2009)

                      Respectfully submitted,

                      CALLAN CAMPBELL, KEVIN JUNSO, ET AL.,
                      EDWIN AGOSTO, KEVIN CHADWICK, ET AL., AND
                      JOSEPH BERLINGIERI

                      By:   /s/ Steve Jakubowski
                            One of Their Attorneys

                      Steve Jakubowski (IL ARDC# 6191960)
                      Elizabeth Richert (IL ARDC# 6275764)
                      THE COLEMAN LAW FIRM
                      77 West Wacker Drive, Suite 4800
                      Chicago, IL 60601
                      Tel:  (312) 606-8641
                      Fax: (312) 444-1028
                      sjakubowski@colemanlawfirm.com

                      Attorneys for Callan Campbell, Kevin Junso, *et al.,*
                      Edwin Agosto, Kevin Chadwick, *et al.* and Joseph
                      Berlingieri

CENTER FOR AUTO SAFETY, CONSUMER ACTION,
CONSUMERS FOR AUTO RELIABILITY AND SAFETY,
NATIONAL ASSOCIATION OF CONSUMER
ADVOCATES, AND PUBLIC CITIZEN


By:    /s/ Adina H. Rosenbaum
          One of Their Attorneys

Adina H. Rosenbaum
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Telephone: (202) 588-1000
arosenbaum@citizen.org

Attorneys for Center for Auto Safety, Consumer
Action, Consumers for Auto Reliability and Safety,
National Association of Consumer Advocates, and
Public Citizen

# EXHIBIT A

## "Interests in Property" as it Appears in the Bankruptcy Code

## Section 101

(37) The term "lien" means charge against or **interest in property** to secure payment of a debt or performance of an obligation.

(54) The term "transfer" means--
(A) the creation of a lien;
(B) the retention of title as a security interest;
(C) the foreclosure of a debtor's equity of redemption; or
(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
(i) property; or
(ii) **an interest in property.**

## Section 110

2)(A) A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B).

(B) The legal advice referred to in subparagraph (A) includes advising the debtor--

(vi) concerning how to characterize the nature of the debtor's **interests in property** or the debtor's debts; or

## Section 362

When adequate protection is required under section 362, 363, or 364 of this title of **an interest of an entity in property**, such adequate protection may be provided by--

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's **interest in such property**;
(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's **interest in such property**; or
(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's **interest in such property**.

## Section 362

(3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an **interest in property** to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

(1) for cause, including the lack of adequate protection of an **interest in property** of such party in interest;

## Section 363

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an **interest in property** used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any **interest in such property** of an entity other than the estate, only if--

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the **interest of any co-owner in property** in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if--

(1) partition in kind of such property among the estate and such co-owners is impracticable;
(2) sale of the estate's undivided **interest in such property** would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

(*l*) Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11, 12, or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's **interest in such property**.

(p) In any hearing under this section--

(1) the trustee has the burden of proof on the issue of adequate protection; and
(2) the entity asserting an **interest in property** has the burden of proof on the issue of the validity, priority, or extent of such interest.

## Section 506

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's **interest in such property**, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

## Section 522

(B) any **interest in property** in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law; and

(d) The following property may be exempted under subsection (b)(2) of this section:
(5) The debtor's aggregate **interest in any property**, not to exceed in value $1,075 plus up to $10,125 of any unused amount of the exemption provided under paragraph (1) of this subsection.

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--

(i) the lien;
(ii) all other liens on the property; and
(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's **interest in the property** would have in the absence of any

liens.

(q)(1) As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an **interest in property** described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) which exceeds in the aggregate $136,875  if--

(2) Paragraph (1) shall not apply to the extent the amount of an **interest in property** described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) is reasonably necessary for the support of the debtor and any dependent of the debtor.

## Section 541

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

 (3) Any **interest in property** that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.
(4) Any **interest in property** preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.
(5) Any **interest in property** that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--
(A) by bequest, devise, or inheritance;
(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or
(C) as a beneficiary of a life insurance policy or of a death benefit plan.
 (7) Any **interest in property** that the estate acquires after the commencement of the case.

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's **interest in property**.

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable **interest in such property** that the debtor does not hold.

## Section 546

(b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that--

(A) permits perfection of an **interest in property** to be effective against an entity that acquires rights in such property before the date of perfection; or
(B) provides for the maintenance or continuation of perfection of an **interest in property** to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

(2) If--

(A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an **interest in property**; and
(B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition;

such **interest in such property** shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement.

## Section 547

(d) The trustee may avoid a transfer of an **interest in property** of the debtor transferred to or for the benefit of a surety to secure reimbursement of such a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

## Section 548

(d)(1) For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an **interest in the property** transferred that is superior to the **interest in such property** of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

## Section 1123

(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall--
(5) provide adequate means for the plan's implementation, such as--
(A) retention by the debtor of all or any part of the property of the estate;
(B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;
(C) merger or consolidation of the debtor with one or more persons;
(D) sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an **interest in such property** of the estate;

09-50026-mg   Doc 12982-20   Filed 04/22/05   Entered 04/22/05 17:46:14   Exhibit A

Pg 40 of 40

## Section 1205

b) In a case under this chapter, when adequate protection is required under section 362, 363, or 364 of this title of an **interest of an entity in property**, such adequate protection may be provided by--

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of property securing a claim or of an entity's ownership **interest in property**;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of property securing a claim or of an entity's ownership **interest in property**;

(3) paying to such entity for the use of farmland the reasonable rent customary in the community where the property is located, based upon the rental value, net income, and earning capacity of the property; or

(4) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will adequately protect the value of property securing a claim or of such entity's ownership **interest in property**.

## Section 1222

(b) Subject to subsections (a) and (c) of this section, the plan may--

(8) provide for the sale of all or any part of the property of the estate or the distribution of all or any part of the property of the estate among those having an **interest in such property**;