# **<u>Exhibit R</u>**

Sale Approval Hearing Date: June 30, 2009 at 9:45 a.m.<br>
Sale Motion Objection Deadline: June 19, 2009 5:00 p.m.

Matthew F. Fitzsimmons, Esq.
STATE OF CONNECTICUT
OFFICE OF THE ATTORNEY GENERAL
110 Sherman Street
Hartford, CT 06105
Phone: (860) 808-5400
Fax: (860) 808-5593


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
In re:                                          :    CHAPTER 11
                                                :
**GENERAL MOTORS CORP.**, *et al.*,             :    Case No. 09-50026 (REG)
                                                :
                                                :    (Jointly Administered)
                    **Debtors.**                :
------------------------------------------------------------X

### JOINDER AND LIMITED OBJECTION OF THE STATES OF CONNECTICUT, KENTUCKY, MARYLAND, MINNESOTA, MISSOURI, NEBRASKA, NORTH DAKOTA AND VERMONT

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

THE STATES OF CONNECTICUT, KENTUCKY, MARYLAND, MINNESOTA, MISSOURI, NEBRASKA, NORTH DAKOTA, AND VERMONT (hereinafter the "States"), file this Joinder and Limited Objection (the "Limited Objection") to Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (a) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings

1

LLC, a. U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (b) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Other Relief; and (II) Schedule Sale Approval Hearing (the "Motion") [doc. no. 92] and in support hereof show:

## I. INTRODUCTION[1]

The States file this limited objection in addition to, and not in lieu of, any other objection in which the States join or have joined. The States respectfully submit that certain provisions of the Motion seek relief that is beyond the authority of this Court to order. Specifically, the Motion seeks to have the proposed Order enter and thus conclusively determine that a purchaser, Vehicle Acquisition Holdings LLC, a new entity created solely for the purpose of acquiring Debtors' assets (referred to herein as "Newco") pursuant to the Motion is not a successor or transferee and that no liabilities may be placed on it based on such a status. To this end, the Master Purchase Agreement ("MPA") expressly provides:

> *No Successor or Transferee Liability.* Except where expressly prohibited under applicable Law or otherwise expressly ordered by the Bankruptcy Court, upon the Closing, neither Purchaser nor any of its Affiliates or stockholders shall be deemed to *(a) be the successor of Sellers; (b) have, de facto, or otherwise, merged with or into Sellers; (c) be a mere continuation or substantial continuation of Sellers or the enterprise(s) of Sellers;* or (d) other than as set forth in this Agreement, be liable for any

---

[1] In the interest of brevity, the States assume the Court's familiarity with the facts of this matter and do not restate them herein.

09-50026-reg Doc 1928 Filed 06/19/09 Entered 06/19/09 12:19:10 Main Document Pg 3 of 16

> acts or omissions of Sellers in the conduct of Sellers' business or arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, ***neither Purchaser nor any of its Affiliates or stockholders shall be liable for any Claims against Sellers or any of their predecessors or Affiliates, and neither Purchaser nor any of its Affiliates or stockholders shall have any successor, transferee or vicarious Liability of any kind or character whether known or unknown as of the Closing, whether now existing or hereafter arising, or whether fixed or contingent,*** with respect to Sellers' business or any obligations of Sellers arising prior to the Closing, except as provided in this Agreement, including Liabilities on account of any Taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of Sellers' business prior to the Closing.

(Emphasis added.) MPA, Section 9.19. The Debtors thus seek a judicial determination, before any such claim is ever made, that it is not, among other things, a successor or transferee, or even the "mere continuation," of the Debtors.

In addition to this broad and unfounded declaration that the purchaser will never be a successor or transferee, and will purchase the assets with a judicial order stating just that, the MPA explicitly excludes from assumed liabilities, and defines as a "Retained Liability," several classes of liabilities including, but not limited to, the following:

    a) "all Product Liabilities arising out of products delivered to a consumer, lessee or other purchaser of products prior to the Closing." MPA, Section 2.3(b)(ix);

    b) "all Liabilities to third parties for Claims based upon Contract, tort or any other basis." MPA, Section 2.3(b)(xi); and

3

09-50026-reg    Doc 1928    Filed 06/19/09    Entered 06/19/09 12:15:10    Main Document
Pg 4 of 16

> c) "all Liabilities arising out of, related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers."  MPA, Section 2.3(b)(xvi).

All of these offensive provisions, taken as a whole, divest consumers of substantial legal rights, without any regard for state laws that may, when a claim is eventually made, be read to hold otherwise.

The States submit that this Court should not enter any order depriving purchasers of GM vehicles of legal rights to be compensated for death or serious injuries caused by defects in GM products.  Any such order would be unfair, in violation of due process, and inconsistent with the public assertions by the President of the United States and the Debtor that consumers who buy General Motors products have no cause for concern.  Specifically, President Obama stated:

> But just in case there's still nagging doubts, let me say it as plainly as I can: If you buy a car from Chrysler or General Motors, you will be able to get your car serviced and repaired, just like always. Your warranty will be safe. In fact, it will be safer than it's ever been, because starting today, the United States government will stand behind your warranty.

Remarks by the President on the American Automotive Industry, March 30, 2009.[2]

While the States recognize that the sale, in general, may be a worthwhile endeavor, the

4

09-50026-reg    Doc 1928    Filed 06/19/09    Entered 06/19/09 12:19:10    Main Document
Pg 5 of 16

States cannot countenance the Debtors' attempts to establish an unconscionable burden for injured consumers -- litigating whether this Court has the authority to approve the sale free and clear of product liability claims.  Moreover, the States object to any provision of the MPA or the proposed Order that would simply dictate that result without completing a specific analysis of the facts and law applicable to successor status.

Thus, the States submit this limited objection and request that this Court order that any sale cannot be approved without the deletion or significant alteration of these specific "Retained Liabilities."

## II.    LEGAL ARGUMENT

### A.    Joinder

The States join in the arguments raised by the Ad Hoc Committee of Consumer Victims of General Motors in its Objection to the Motion and incorporate those arguments as if fully set forth herein.

---

[2] Available at: http://www.whitehouse.gov/the_press_office/Remarks-by-the-President-on-the-American-Automotive-Industry-3/30/09/.

5

**B.  State Successor Liability Law May Not be Extinguished by this Court in Approving the § 363 Sale.**

The Motion seeks to have this Court permanently deprive presently unknown and unknowable future claimants of their rights to bring a future products liability claim against New GM premised on a theory of successor liability. This deprivation of rights is contrary to state laws concerning successor liability, and the bankruptcy court was not authorized to eviscerate such rights.

As the Second Circuit has recognized:

[t]he traditional common law rule states that a corporation acquiring the assets of another corporation only takes on its liabilities if any of the following apply: the successor expressly or impliedly agrees to assume them; the transaction may be viewed as a de facto merger or consolidation; the successor is a "mere continuation" of the predecessor; or the transaction is fraudulent.

*B.F. Goodrich v. Betkoski*, 99 F.3d 505, 519 (2d Cir. 1996). Some states recognize a fifth exception known as the product-line exception. *See, e.g., Ray v. Alad Corp.*, 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977); *Lefever v. K.P. Hovnanian Enters.*, 160 N.J. 307, 734 A.2d 290 (1999); *Martin v. Abbott Labs.*, 102 Wn.2d 581, 615, 689 P.2d 368 (Wash. 1984).

The product line exception holds that:

where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, . . . the purchasing corporation [may] be held strictly liable for injuries

6

09-50026-reg    Doc 1928   Filed 06/19/09   Entered 06/19/09 12:19:10   Main Document
Pg 7 of 16

caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation.

*In re Mooney Aircraft, Inc.*, 730 F.2d 367, 371 (5th Cir. 1984); *see also Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 353 (N.J. 1981).

Some federal cases have, rightly, questioned the bankruptcy courts' authority to override the application of the successor liability doctrines developed by state courts. *See* 3-363 Collier on Bankruptcy-15th Edition Rev. P 363.06 (and the cases cited therein). For example, the First Circuit held that when claimants did not receive adequate notice about the pendency of a bankruptcy proceeding, the bankruptcy court could be prohibited from granting injunctive relief barring future claims. *See In re Savage Industries, Inc.*, 43 F.3d 714 (1st Cir. 1994).

More germane to the issue in the instant matter is the Seventh Circuit's holding in *Zerand-Bernal Group v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994). There, the Seventh Circuit addressed the standard argument raised by parties attempting to sell or buy assets "free and clear" of future claims premised on the theory of successor liability. In essence, this argument posits that the price for which a purchaser is willing to purchase the debtor's assets will be depressed if the purchaser remains open to successor liability claims.

In rejecting this argument, Judge Posner explained:

[a]ll this is true, but proves too much. It implies, what no one believes, that by virtue of the arising-under jurisdiction a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale in order

7

to maximize the sale price: more, that the court could in effect immunize such buyers from all state and federal laws that might reduce the value of the assets bought from the bankrupt; in effect, that it could discharge the debts of nondebtors . . . as well as of debtors even if the creditors did not consent; that it could allow the parties to bankruptcy sales to extinguish the rights of third parties . . . without notice to them or (as notice might well be infeasible) any consideration of their interests. If the [bankruptcy] court could do all these nice things the result would indeed be to make the property of bankrupts more valuable than other property--more valuable to the creditors, of course, but also to the debtor's shareholders and managers to the extent that the strategic position of the debtor in possession in a reorganization enables the debtor's owners and managers to benefit from bankruptcy. ***But the result would not only be harm to third parties . . . but also a further incentive to enter bankruptcy for reasons that have nothing to do with the purposes of bankruptcy law.***

(Emphasis added; internal citation omitted.) *Zerand-Bernal Group* 23 F.3d at 162.

In Connecticut, as is surely the case elsewhere, the "issue of whether a purchaser is a mere continuation of the selling corporation is a question of fact." *Chamlink Corp. v. Merritt Extruder Corp.*, 96 Conn.App. 183, 187, 899 A.2d 90 (2006). Here, the MPA specifically provides that Newco shall not be deemed to "be a mere continuation or substantial continuation of Sellers or the enterprise(s) of Sellers." MPA, Section 9.19. Thus, the Debtors are asking this Court to decide a question of fact that may be raised in the future by a consumer injured by a defective GM vehicle. This is emphatically the province of the state court hearing that future claim, and this Court should not prospectively rule on that question, and foreclose the future claimants' ability to seek redress under state law.

8

Recently, the Supreme Court has recognized that bankruptcy courts do not enjoy an all encompassing power to supplant state laws. *See, e.g., Travelers v. PG & E*, 549 U.S. 443, 450-51 (2007) (the "'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law."); *Raleigh v. Illinois Dep't of Revenue*, 530 US 15, 25 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides.")  In accordance with the reasoning of the foregoing cases, this Court lacks the authority to discharge future claims premised on the state law theory of successor liability.

To allow Newco to purchase substantially all of the Debtors' assets, continue in the manufacture and sale of GM vehicles, enjoy the good will that comes along with the purchase of the GM name and brand, and still avoid any claims brought against it on the theory of successor liability contrary to state law is an unconscionable and wholly insupportable result that will harm innocent consumers.  Victims of future accidents who would otherwise be able to bring claims against Newco under the product-line successor liability theory would be, if this Court enters the proposed order, forever barred from seeking redress.

09-50026-reg Doc 1928 Filed 06/19/09 Entered 06/19/09 12:15:10 Main Document Pg 10 of 16

A victim of a future accident who purchases a vehicle a week after the sale closing, and suffers the same injury, from the same product defect, on the same date, as a future victim who bought pre-closing, will retain the right to seek redress from Newco, but the person who bought the vehicle the day before the sale closing will not. This result is indefensible when a successor company, as is the case here, is maintaining the same product line.

This Court should not countenance such an attempt to supplant state successor liability law in favor of irrational and unjust results.

### C. Public Policy Requires Allowing Future Claimants to Bring Product Liability Claims Premised on Nonbankruptcy Successor Liability Law.

As a matter of public policy and consumer safety, future product liability claims should not be treated as claims subject to discharge in bankruptcy. Under the Bankruptcy Act, "the term 'claim' means . . . right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101. A person who has not yet suffered a loss or injury, however, has no right to payment from the Debtors, and cannot fall within the definition of a holder of a claim.

In *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994), the plaintiff was injured in a fire caused by a defective mobile home manufactured by a company which had been

09-50026-reg Doc 1928 Filed 06/19/09 Entered 06/19/09 12:19:10 Main Document Pg 11 of 16

discharged in bankruptcy two years prior and sued the defendant, which had by then acquired the debtor-manufacturer. The court there held that "the absence of evidence [that would have permitted the debtor to identify, during the course of the bankruptcy proceedings, potential victims and thereby permit notice to those victims] precludes a finding that the claims now asserted by victim-plaintiff were discharged in the bankruptcy proceedings." *Id.* at 1277.

The *Lemelle* court also stated that the definition of a "claim" cannot be construed to include those of victims "whom the record indicates were completely unknown and unidentified" at the time the debtor/manufacturer filed the bankruptcy petition "and whose rights depended entirely on the fortuity of future occurrences." *Id.*; *see also, Fairchild Aircraft Inc. v. Campbell*, 184 B.R. 910 (Bankr. W.D. Tex. 1995) (holding that executors of persons killed in an airplane crash held future claims, not bankruptcy claims, and therefore were not precluded from seeking successor liability against the purchaser of the aircraft's debtor/manufacturer.); *Gross v. Trustees of Columbia Univ. in City of N.Y.*, 2006 NY Slip Op 50516U, 6 (N.Y. Sup. Ct. 2006) (where state trial found that the "product liability claim stemming from Plaintiffs' injury was not a bankruptcy "claim" within the meaning of Bankruptcy Code § 101(5), but rather a 'future claim,' because the claim came into existence on the day the product liability claim was actually filed.")

Thus, courts have recognized situations where successor liability claims against purchasers are permitted, and the rights of future GM accident victims are exactly the type of

11

claims in which *Zerand* and *Lemelle* held that a bankruptcy court cannot extinguish future successor liability.

Moreover, some courts and commentators have properly recognized that public policy requires that successor liability be available as redress for future claimants, notwithstanding a § 363 sale order purporting to hold otherwise. As stated in Collier, "[s]uccessor liability is a nonbankruptcy state law issue, and bankruptcy should not change the result that would otherwise obtain under nonbankruptcy law." 3-363 COLLIER ON BANKRUPTCY-15TH EDITION REV. § 363.06.

As the Supreme Court of New Jersey has held regarding the product line exception, "[p]ublic policy requires that having received the substantial benefits of the continuing manufacturing enterprise, the successor corporation should also be made to bear the burden of the operating costs that other established business operations must ordinarily bear." *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 353 (N.J. 1981). Thus, by "acquiring all of the Johnson assets and continuing the established business of manufacturing and selling Johnson presses, Amsted became an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products." *Id*.

Here, Newco, just like the purchaser in *Ramirez*, is acquiring substantially all of the operating assets of the Debtors and will continue the "established business of manufacturing and

12

selling" GM vehicles. Newco no doubt expects to profit from the continuation of the GM enterprise and the goodwill that enterprise has accumulated. To allow Newco to enjoy all the good that comes with operating the GM enterprise, and to shift the burden of accident costs to consumers, and ultimately the States, would be an unconscionable act.

In sum, as the *Ramirez* court stated, "because the manufacturer transfers to its successor corporation 'the resources that had previously been available to [the manufacturer] for meeting its responsibilities to persons injured by defects in [products] it had produced,' the successor rather than the user of the product is in the better position to bear accident-avoidance costs." *Ramirez v. Amsted Industries, Inc.*, 86 N.J. at 352 (*quoting Ray v. Alad Corp.*, 19 Cal.3d 22, 33, 560 P.2d 3, 136 Cal.Rptr. 574 (1977)).

Moreover, in the bankruptcy context generally, these important public policy protections require that future tort product liabilities should not be treated as claims subject to discharge. Because their claims have not yet arisen, and thus, they cannot know of them, future accident victims have not received and cannot receive meaningful notice that their rights in a future suit are being lost, and thus they have no opportunity to seek to preserve those rights, in violation of both sound policy and due process of law. *See*, e.g., *In re Mooney Aircraft, Inc.*, 730 F.2d 367-375 (5th Cir.1984) ("[L]ack of notice might well require us to find that the bankruptcy court's prior judgment was ineffective as to the [future claimants'] claims.")

09-50026-reg    Doc 1928    Filed 06/19/09    Entered 06/19/09 12:19:10    Main Document
Pg 14 of 16

Furthermore, public safety is significantly impacted by the discharge of product liability claims. The public safety risk is that unknowing citizens, perhaps not even owners of GM vehicles, could find themselves gravely injured by a defective GM vehicle. In this situation, the injured consumer could bear the entire, potentially overwhelming costs of medical care and associated expenses—an entirely unfair burden.

Newco's purchase of substantially all of the operating assets of the Debtors should not include an impenetrable shield which insulates Newco from all future product liability claims. To the contrary, public policy dictates that innocent and not yet injured consumers cannot and should not be compelled to bear the cost of future injuries caused by defective GM vehicles.

14

### III.  CONCLUSION

Wherefore, for the reasons stated above, the States respectfully object to the approval of the Motion or entry of the proposed Order in their current form and request that the Court grant relief only to the extent consistent with the positions taken herein.

Respectfully submitted,

| | |
|---|---|
| RICHARD BLUMENTHAL,<br>CONNECTICUT ATTORNEY GENERAL | JACK CONWAY<br>KENTUCKY ATTORNEY GENERAL |
| By:  */s/ Matthew F. Fitzsimmons*<br>Matthew F. Fitzsimmons<br>Assistant Attorney General<br>110 Sherman Street<br>Hartford, CT 06105<br>(860) 808-5400<br>Matthew.Fitzsimmons@po.state.ct.us | By: */s/ Todd E. Leatherman*<br>Todd E. Leatherman<br>Assistant Attorney General<br>1024 Capital Center Drive<br>Frankfort, KY 40601<br>(502) 696-5389<br>todd.leatherman@ag.ky.gov |
| CHRIS KOSTER<br>MISSOURI ATTORNEY GENERAL | JON BRUNING<br>NEBRASKA ATTORNEY GENERAL |
| By: */s/ Jeff Klusmeier*<br>JEFF KLUSMEIER<br>Assistant Attorney General<br>Missouri Bar No. 59601<br>P.O. Box 899<br>Jefferson City, MO  65102<br>(573) 751-0284<br>(573) 751-4254 Fax<br>Jeff.Klusmeier@ago.mo.gov | By: *Leslie C. Levy*<br>Chief, Consumer Protection/Anti-trust Division<br>Nebraska Attorney General's Office<br>2115 State Capitol Building<br>Lincoln NE 68509<br>P:  402.471.2811<br>F:  402.471.4725<br>leslie.levy@nebraska.gov |

| | |
|---|---|
| STATE OF MARYLAND<br>OFFICE OF THE ATTORNEY GENERAL | WILLIAM H. SORRELL<br>VERMONT ATTORNEY GENERAL |

By: */s/ Steven M. Sakamoto-Wengel*
Steven M. Sakamoto-Wengel, Assistant
Attorney General
Bar No. 04832-G (Maryland)
Consumer Protection Division
Office of the Attorney General of Maryland
200 St. Paul Place, 16th floor
Baltimore, MD 21202
(410) 576-6307
Fax: (410) 576-6566

By: */s/ Sarah E.B. London*
Sarah E.B. London
Assistant Attorney General
Vermont Attorney General's Office
Public Protection Division
109 State Street
Montpelier, VT 05609-1001

LORI SWANSON
MINNESOTA ATTORNEY GENERAL

By: */s/ Jeremy D. Eiden*
Jeremy D. Eiden
Assistant Attorney General
445 Minnesota Street, Suite 900
St. Paul, Minnesota 55101-2127
Phone: (651) 297-4392
FAX: (651) 297-8265
Email: jeremy.eiden@state.mn.us

WAYNE STENEHJEM
NORTH DAKOTA ATTORNEY GENERAL

By: */s/ Parrell D. Grossman*
Parrell D. Grossman, State ID No. 04684
Assistant Attorney General
Dir. Consumer Protection & Antitrust Div.
Office of Attorney General
4205 State Street
PO Box 1054
Bismarck, ND 58502-1054
(701) 328-5570
(701) 328-5568 (Fax)