# <u>Exhibit AA</u>

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

## FORM 10-K

---

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

### For the fiscal year ended March 31, 2014

or

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

### Commission File No. 001-00043

---

# Motors Liquidation Company GUC Trust
### (Exact name of registrant as specified in its charter)

---

| **Delaware** | **45-6194071** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification No.) |

**c/o Wilmington Trust Company,**
**as trust administrator and trustee**
**Attn: David A. Vanaskey Jr., Vice President**
**Rodney Square North**
**1100 North Market Street**
**Wilmington, Delaware**          **19890-1615**
(Address of principal executive offices)          (Zip Code)

### (302) 636-6019
(Registrant's telephone number, including area code)

(Former Name or Former Address, if Changed Since Last Report)

---

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☒   No ☐

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    Yes ☐    No ☒ *

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).    Yes ☒    No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐                                                                 Accelerated filer                    ☐

Non-accelerated filer  ☒  (Do not check if a smaller reporting company)        Smaller Reporting Company ☐

Indicate by checkmark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).
Yes ☐   No ☒

Indicate by check mark whether the registrant has filed all documents and reports required to be filed by Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934 subsequent to the distribution of securities under a plan confirmed by a court.
Yes ☐   No ☒ *

* The registrant is not required to file reports pursuant to Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934, but has filed all reports required pursuant to the relief granted to the registrant in a No Action Letter from the Division of Corporation Finance of the Securities and Exchange Commission to the registrant dated May 23, 2012.

**MOTORS LIQUIDATION COMPANY GUC TRUST**
**FORM 10-K TABLE OF CONTENTS**

Page

PART I

| | | |
|---|---|---:|
| Item 1. | Business. | 2 |
| Item 1A. | Risk Factors. | 18 |
| Item 1B. | Unresolved Staff Comments. | 21 |
| Item 2. | Properties. | 21 |
| Item 3. | Legal Proceedings. | 22 |
| Item 4. | Mine Safety Disclosures. | 22 |

PART II

| | | |
|---|---|---:|
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities. | 23 |
| Item 6. | Selected Financial Data. | 23 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations. | 23 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk. | 37 |
| Item 8. | Financial Statements and Supplementary Data. | 38 |
| | Report of Independent Registered Public Accounting Firm on the Financial Statements. | 39 |
| | Statements of Net Assets in Liquidation (Liquidation Basis), March 31, 2014 and 2013. | 40 |
| | Statements of Changes in Net Assets in Liquidation (Liquidation Basis), Years Ended March 31, 2014, 2013 and 2012. | 41 |
| | Statements of Cash Flows (Liquidation Basis), Years Ended March 31, 2014, 2013, and 2012. | 42 |
| | Notes to Financial Statements. | 43 |
| Item 9. | Changes in and Disagreements With Accountants on Accounting and Financial Disclosure. | 58 |
| Item 9A. | Controls and Procedures. | 58 |
| Item 9B. | Other Information. | 58 |

PART III

| | | |
|---|---|---:|
| Item 10. | Directors, Executive Officers and Corporate Governance. | 58 |
| Item 11. | Executive Compensation. | 59 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters. | 59 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence. | 59 |
| Item 14. | Principal Accounting Fees and Services. | 60 |

PART IV

| | | |
|---|---|---:|
| Item 15. | Exhibits, Financial Statement Schedules. | 61 |

## FORWARD-LOOKING STATEMENTS

This Annual Report on Form 10-K (the "Form 10-K") contains forward-looking statements about the assets, financial condition and prospects of the Motors Liquidation Company GUC Trust, or the GUC Trust. Actual results could differ materially from those indicated by the forward-looking statements because of various risks and uncertainties, including, without limitation, the resolution of the Disputed General Unsecured Claims (as defined below), the outcome of and the ultimate recovery on the Term Loan Avoidance Action (as defined below), any related incurrence of Allowed General Unsecured Claims (as defined below), the GUC Trust's incurrence of professional fees, tax liabilities and other expenses in connection with administration of the GUC Trust, economic conditions, changes in tax and other governmental rules and regulations applicable to the GUC Trust, fluctuations in the market price of the New GM Securities (as defined below) and other risks, as well as various risks and uncertainties associated with New GM (as defined below), as described in New GM's periodic and current reports filed under the Securities Exchange Act of 1934, as amended. Some of these risks and uncertainties are beyond the ability of the GUC Trust to control, and in many cases, risks and uncertainties that could cause actual results to differ materially from those indicated by the forward-looking statements cannot be predicted. When used in this Form 10-K, the words "believes," "estimates," "plans," "expects," "intends," and "anticipates" and similar expressions are intended to identify forward-looking statements.

## GLOSSARY

A glossary of defined terms used in this Form 10-K is provided beginning on page 14.

1

## PART I

**Item 1.      Business.**

The GUC Trust was formed on March 30, 2011 as a statutory trust under the Delaware Statutory Trust Act, as amended, or the Delaware Act, upon the execution of the Motors Liquidation Company GUC Trust Agreement, or the GUC Trust Agreement (a copy of which, as amended, is filed as Exhibit 3.1 hereto), by Motors Liquidation Company, or MLC, MLC of Harlem, Inc., MLCS, LLC, MLCS Distribution Corporation, Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc., Wilmington Trust Company, not in its individual capacity but solely in its capacity as trust administrator and trustee of the GUC Trust, or the GUC Trust Administrator, and FTI Consulting, Inc., solely in its capacity as trust monitor of the GUC Trust, or the GUC Trust Monitor, and upon the filing of the Certificate of Trust of Motors Liquidation Company GUC Trust with the Office of the Secretary of State of the State of Delaware.

The GUC Trust has no officers, directors or employees. The GUC Trust is administered by the GUC Trust Administrator, which is authorized by the GUC Trust Agreement to engage professionals, or GUC Trust professionals, to assist the GUC Trust Administrator in the administration of the GUC Trust. Accordingly, the GUC Trust and GUC Trust Administrator rely on receiving accurate information, reports and other representations from (i) the GUC Trust professionals, (ii) the GUC Trust Monitor, and (iii) other service providers to the GUC Trust. Notwithstanding such reliance, the GUC Trust Administrator is ultimately responsible for the disclosure provided in this Form 10-K. Among other rights and duties, pursuant and subject to the GUC Trust Agreement, the GUC Trust Administrator has the powers and authority as set forth in the GUC Trust Agreement, including, without limitation, the power and authority to hold, manage, sell, invest and distribute the assets comprising the corpus of the GUC Trust, prosecute and resolve objections to Disputed General Unsecured Claims (as defined below), take all necessary actions to administer the wind-down of the affairs of the Debtors (as defined below), and resolve and satisfy (to the extent allowed) any administrative expenses, priority tax claims, priority non-tax claims and secured claims, or collectively the Residual Wind-Down Claims. The activities of the GUC Trust Administrator are overseen by the GUC Trust Monitor. As further described below, the GUC Trust was formed for the purposes of implementing the Plan (as defined below) as a post-confirmation successor to MLC and resolving Disputed General Unsecured Claims against MLC and its affiliated debtors and debtors-in-possession, or the Debtors, and winding-down the Debtors' affairs, with no objective to engage in the conduct of a trade or business. The GUC Trust is a post-confirmation successor to MLC within the meaning of Section 1145 of title 11 of the United States Code, or the Bankruptcy Code.

*Background: The General Motors Corporation Bankruptcy*

General Motors Corporation, or Old GM, which is also known as MLC, and certain of its direct and indirect subsidiaries Chevrolet-Saturn of Harlem, Inc., n/k/a MLC of Harlem, Inc., Saturn, LLC, n/k/a MLCS, LLC and Saturn Distribution Corporation, n/k/a MLCS Distribution Corporation filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York, or the Bankruptcy Court, on June 1, 2009. On October 9, 2009, Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

On July 5, 2009, the Bankruptcy Court authorized the sale of substantially all of the assets of the Debtors to an acquisition vehicle principally formed by the United States Department of the Treasury, or the U.S. Treasury. On July 10, 2009, the acquisition vehicle, NGMCO, Inc., acquired substantially all of the assets and assumed certain liabilities of the Debtors pursuant to a Master Sale and Purchase Agreement, or, as amended, the MSPA, among Old GM and certain of its debtor subsidiaries and NGMCO, Inc., in a transaction under Section 363 of the Bankruptcy Code, or the 363 Transaction. In connection with the 363 Transaction, Old GM changed its name to Motors Liquidation Company and the acquisition vehicle pursuant to a holding company reorganization became General Motors Company, or (together with its consolidated subsidiaries) New GM.

The primary consideration provided by New GM to the Debtors under the MSPA was 150 million shares of common stock of New GM, or the New GM Common Stock, issued by New GM, amounting to approximately 10% of the outstanding New GM Common Stock at the time of the closing of the 363 Transaction, a series of warrants to acquire 136,363,635 newly issued shares of New GM Common Stock with an exercise price set at $10.00 per share, expiring July 10, 2016, or the New GM Series A Warrants, and another series of warrants to acquire 136,363,635 newly issued shares of New GM Common Stock with an exercise price set at $18.33 per share, expiring July 10, 2019, or the New GM Series B Warrants, and, collectively, the New GM Warrants. Together, the New GM Warrants constituted approximately 15% of the New GM Common Stock on a fully-diluted basis at the time of their issuance. Both the New GM Series A Warrants and the New GM Series B Warrants are subject to customary anti-dilution adjustments. The New GM Common Stock and both series of New GM Warrants are currently listed on the New York Stock Exchange, or the NYSE.

Additional consideration was also provided in the form of (i) the assumption of certain liabilities by New GM, (ii) a credit bid of certain outstanding obligations under (a) certain prepetition debt held by the U.S. Treasury and (b) a debtor-in-possession credit agreement, or the DIP Credit Agreement, held by, as lenders thereunder, the U.S. Treasury and the Governments of Canada and Ontario (through Export Development Canada), and together with the U.S. Treasury, the DIP Lenders, and (iii) the cancellation of certain warrant notes issued to the U.S. Treasury.

2

On March 18, 2011, the Debtors filed the Debtors' Second Amended Joint Chapter 11 Plan, or the Plan, with the Bankruptcy Court, and on March 29, 2011, or the Confirmation Date, the Bankruptcy Court entered an order confirming the Plan, or the Confirmation Order. The Plan became effective on March 31, 2011, or the Effective Date. On December 15, 2011, or the Dissolution Date, as required by the Plan, MLC filed a Certificate of Dissolution with the Secretary of State of the State of Delaware and MLC was dissolved as of such date. On April 18, 2013, the Bankruptcy Court entered an order granting the GUC Trust's request for entry of a final decree administratively closing each of the Debtors' chapter 11 cases other than that of MLC.

### The Plan and the Formation of the GUC Trust

The Plan treats all creditors and equity interest holders in accordance with their relative priorities under the Bankruptcy Code, and designates 6 distinct classes of claims or equity interests: secured claims, priority non-tax claims, general unsecured claims, property environmental claims, asbestos personal injury claims and equity interests in MLC. The GUC Trust is primarily tasked with the resolution and satisfaction of general unsecured claims. Under the terms of the Plan and following the Special Excess Distribution (as defined below), for each $1,000 in amount of allowed general unsecured claims against the Debtors, or the Allowed General Unsecured Claims, the holders of such claims are entitled to receive (upon delivery of any information required by the GUC Trust) approximately 4.19 shares of New GM Common Stock and approximately 3.81 warrants of each series of New GM Warrants, as well as one unit of beneficial interest in the GUC Trust, or a GUC Trust Unit, subject in each case to rounding under the Plan, the GUC Trust Agreement and/or the rules of any applicable clearing system, and exclusive of any securities received, or to be received, in respect of GUC Trust Units. Holders of disputed general unsecured claims against the Debtors, or the Disputed General Unsecured Claims, will receive subsequent distributions of New GM Common Stock and New GM Warrants (which are collectively called the New GM Securities) and GUC Trust Units, in respect of such claims, only if and to the extent that their Disputed General Unsecured Claims are subsequently allowed, or Resolved Disputed Claims.

The Plan provides for the formation of the GUC Trust to, among other duties, administer the prosecution, resolution and satisfaction of general unsecured claims and Residual Wind-Down Claims against the Debtors. As further described below, the GUC Trust is responsible for implementing the Plan, including distributing the New GM Securities and GUC Trust Units to holders of Allowed General Unsecured Claims in satisfaction of their claims, resolving (that is, seeking allowance or disallowance of all or part of such claims) Disputed General Unsecured Claims that were outstanding as of the Effective Date and distributing New GM Securities and GUC Trust Units in satisfaction of the Resolved Allowed Claims (as defined below).

Under the Plan, the Debtors were required to be dissolved no later than the Dissolution Date. Upon the dissolution of MLC, the GUC Trust assumed responsibility for the winding down of the affairs of the Debtors and resolving and satisfying the Residual Wind-Down Claims.

The GUC Trust had an initial stated term of three years from the Effective Date. On February 6, 2014, the Bankruptcy Court entered an order extending the duration of the GUC Trust to March 31, 2015. The duration of the GUC Trust may in the future be shortened or further extended upon application to and approval by the Bankruptcy Court as necessary to complete the claims resolution process and the wind-down of the Debtors' affairs. The GUC Trust will remain under the jurisdiction of the Bankruptcy Court throughout the term of its existence.

### The GUC Trust Assets

As of the Effective Date, the corpus of the GUC Trust consisted solely of approximately $52.7 million in cash contributed by the Debtors to fund the administrative fees and expenses (including certain tax obligations), or the Wind-Down Costs, incurred by the GUC Trust in administering its duties pursuant to the Plan and the GUC Trust Agreement, or the Administrative Fund. The cash comprising the Administrative Fund was obtained by MLC from the DIP Lenders and is subject to a lien held by the DIP Lenders pursuant to the DIP Credit Agreement, with any excess funds remaining in the Administrative Fund required to be returned to the DIP Lenders after (i) the satisfaction in full of all Wind-Down Costs and other liabilities of the GUC Trust (subject to the terms of the GUC Trust Agreement) and (ii) the winding up of the GUC Trust's affairs. As such, the Administrative Fund cannot be utilized for distributions to holders of Allowed General Unsecured Claims.

Moreover, the usage of the Administrative Fund for the payment of fees and expenses of the GUC Trust is subject to a budget, (the "Budget"), which must be submitted on an annual basis to the GUC Trust Monitor and the DIP Lenders for their approval and is updated quarterly as needed. The GUC Trust Agreement provides that any Wind-Down Costs incurred by the GUC Trust that exceed or are not covered by the Budget cannot be paid from the Administrative Fund, except with written consent of the DIP Lenders or Bankruptcy Court approval, in limited circumstances.

3

The GUC Trust Agreement provides that the Administrative Fund may not be utilized to fund certain specified costs, fees and expenses, which are referred to as Reporting Costs, including those directly or indirectly relating to (i) reports to be prepared and filed by the GUC Trust pursuant to applicable rules, regulations and interpretations of the Securities and Exchange Commission (the "SEC"), (ii) the transfer, registration for transfer and certification of GUC Trust Units, (iii) the application by the Committee (as defined below) to the Internal Revenue Service for a private letter ruling regarding the tax treatment of the GUC Trust and the holders of Allowed General Unsecured Claims in respect to the distribution of New GM Securities, which is discussed in more detail below under the heading "Income Tax Liabilities for Certain Capital Gains and Dividends on New GM Common Stock," and (iv) certain legal proceedings relating to the Term Loan Avoidance Action. In addition, the Administrative Fund cannot be used to fund any current or projected tax liabilities of the GUC Trust, other than those included in the Budget. However, the GUC Trust Agreement provides the GUC Trust Administrator with the authority to set aside from distribution and sell New GM Securities to fund such Reporting Costs (the proceeds of such sales, the "Reporting and Transfer Cash") and projected tax liabilities (other than those included in the Budget), with the approval of the Bankruptcy Court and/or the GUC Trust Monitor, in each case as described below.

The GUC Trust Agreement affords the GUC Trust Administrator, with the approval of the GUC Trust Monitor, the authority to set aside from distribution New GM Securities in numbers sufficient to satisfy (i) any current or projected Wind-Down Costs of the GUC Trust that exceed the amounts budgeted or were not budgeted in the Administrative Fund, including federal income taxes incurred in respect of dividends received by the GUC Trust on New GM Common Stock held by the GUC Trust ("Dividend Taxes"), (ii) any current or projected Reporting Costs that exceed the then current Reporting and Transfer Cash, or (iii) any current or projected Taxes on Distribution (as defined below). This process is not related to, and is separate from, the process of recording current and deferred income tax liabilities, as well as reserves for expected costs of liquidation in the Statement of Net Assets in Liquidation as a matter of financial reporting, which is only required for expected costs of liquidation for which there is a reasonable basis for estimation under applicable accounting standards. See "Critical Accounting Policies and Estimates—Reserves for Expected Costs of Liquidation" and "—Income Taxes" in Item 7 ("Management's Discussion and Analysis of Financial Condition and Results of Operations") below. The GUC Trust Administrator reevaluates, on a quarterly basis, the amount of New GM Securities needed to be set aside from distribution for purposes of funding projected liquidation and administrative costs (including projected Dividend Taxes) and potential Taxes on Distribution. The calculation converts estimates of projected liquidation and administrative costs and potential Taxes on Distributions into the number of New GM Securities to be set aside from distribution, using the trailing twelve month average closing prices for the New GM Securities since the Dissolution Date (the date record ownership of the New GM Securities was transferred to the GUC Trust from MLC). For additional information, see "Net Assets in Liquidation—New GM Securities Set Aside from Distribution" in Item 7 ("Management's Discussion and Analysis of Financial Condition and Results of Operations") below.

The GUC Trust Administrator may liquidate New GM Securities that have been set aside from distribution to fund (with the required approval of the Bankruptcy Court) the current or projected Wind-Down Costs (including Dividend Taxes) or Reporting Costs of the GUC Trust and (with the required approval of only the GUC Trust Monitor) current and projected Taxes on Distribution of the GUC Trust. The cash proceeds of such sales, and the marketable securities in which such cash proceeds are invested, are referred to as Other Administrative Cash. Pursuant to the GUC Trust Agreement, any cash or marketable securities constituting Other Administrative Cash which remain at the winding up and conclusion of the GUC Trust will be distributed to the holders of GUC Trust Units. The Bankruptcy Court has previously, in March 2012, and again in December 2012, approved the sale of New GM Securities to fund certain accrued and projected Wind-Down Costs which were in excess of the amounts budgeted in the Administrative Fund for such costs, and certain projected Reporting Costs which were in excess of the Reporting and Transfer Cash. Through March 31, 2014, sales of New GM Securities to fund projected Reporting Costs and Wind-Down Costs aggregated approximately $50.2 million. As of March 31, 2014, approximately $13.2 million remained in Other Administrative Cash and was recorded in cash and cash equivalents and marketable securities in the Statement of Net Assets in Liquidation as of March 31, 2014.

Prior to the dissolution of MLC, certain designated assets and the New GM Securities were maintained at MLC (the latter was retained by MLC to avoid federal income taxes that might have been payable by the GUC Trust upon distribution of the New GM Securities with respect to any appreciation of the securities while in possession of the GUC Trust, or Taxes on Distribution; see discussion below). As required by the Plan, MLC transferred to the GUC Trust on the Dissolution Date (i) record ownership of all remaining undistributed New GM Securities, which consisted of 30,967,561 shares of New GM Common Stock, 28,152,186 New GM Series A Warrants and 28,152,186 New GM Series B Warrants, (ii) approximately $2.0 million designated for Reporting Costs, (iii) approximately $1.4 million designated for reimbursing the indenture trustees and the fiscal and paying agents under the Debtors' prepetition debt issuances for costs associated with, among other things, administering distributions to registered holders of the Debtors' prepetition debt issuances, and (iv) certain rights and obligations. Separately, on the Dissolution Date, MLC transferred $500,000 to the Avoidance Action Trust (as defined below) for the purposes of funding any potential public reporting requirements of the Avoidance Action Trust, in which funds the GUC Trust holds a residual interest to the extent unused by the Avoidance Action Trust.

Further, upon the dissolution of MLC, the GUC Trust assumed responsibility for the winding down of the affairs of the Debtors and resolving and satisfying the Residual Wind-Down Claims. Under the Plan, upon the dissolution of MLC, the Debtors were directed to transfer to the GUC Trust, Residual Wind-Down Assets (as defined below) in an amount sufficient, based upon the Debtors' reasonable estimate, to satisfy the Residual Wind-Down Claims and the Residual Wind-Down Costs (as defined below). On the Dissolution Date, MLC transferred

4