# **Exhibit BB**

**EXECUTION VERSION**

# AMENDED AND RESTATED MOTORS LIQUIDATION COMPANY GUC TRUST AGREEMENT

This AMENDED AND RESTATED MOTORS LIQUIDATION COMPANY GUC TRUST AGREEMENT, dated as of June 11, 2012 (as it may be amended from time to time, this "Trust Agreement"), by and among Wilmington Trust Company, as trust administrator and trustee (together with any successor appointed under the terms hereof, the "GUC Trust Administrator") of the Motors Liquidation Company GUC Trust (the "GUC Trust") for the benefit of the general unsecured creditors of the Debtors (as defined below), and FTI Consulting, Inc., as trust monitor (together with any successor appointed under the terms hereof, the "GUC Trust Monitor") of the GUC Trust, amends and restates in its entirety the Second Amended Trust Agreement (as defined below). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Debtors' Second Amended Joint Chapter 11 Plan of liquidation pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code") dated March 18, 2011, as confirmed (including all exhibits thereto, as the same may be further amended, modified, or supplemented from time to time, the "Plan").

W I T N E S S E T H:

WHEREAS, the GUC Trust Administrator and the GUC Trust Monitor are party to the Motors Liquidation Company GUC Trust Agreement, dated as of March 30, 2011, by and among Motors Liquidation Company ("MLC"), MLC of Harlem, Inc., MLCS, LLC, MLCS Distribution Corporation, Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. (collectively, the "Debtors"), as debtors and debtors-in-possession, Wilmington Trust Company, as GUC Trust Administrator, and FTI Consulting, Inc., as GUC Trust Monitor (the "Original Trust Agreement"); and

WHEREAS, the Original Trust Agreement was amended pursuant to that certain amendment dated as of July 8, 2011 by and between the Debtors, the GUC Trust Administrator and the GUC Trust Monitor (the "First Amendment," and the Original Trust Agreement as amended, the "First Amended Trust Agreement"), and such First Amendment was approved by the Bankruptcy Court (as defined below) on July 6, 2011; and

WHEREAS, each of the Debtors has, on or prior to December 15, 2011, ceased to operate and dissolved; and

WHEREAS, the First Amended Trust Agreement was amended pursuant to that certain second amendment, dated as of January 3, 2012 by and between the GUC Trust Administrator and the GUC Trust Monitor (the "Second Amendment," and the First Amended Trust Agreement as amended, the "Second Amended Trust Agreement"), and such Second Amendment, because it served to rectify a defective and inconsistent provision of the First Amended Trust Agreement did not require the approval of the Bankruptcy Court; and

101290520.3

WHEREAS, the Second Amended Trust Agreement contemplates that the GUC Trust may issue Units (as defined below) in global form, provided that (i) the GUC Trust receives a favorable ruling from the Division of Corporation Finance of the SEC (as defined below), in a form acceptable to the GUC Trust Administrator in its sole discretion, which provides that, among other matters, the Division of Corporation Finance of the SEC would not recommend enforcement action if such Units are not registered under Section 12(g) of the Securities Exchange Act of 1934, and (ii) in addition to such favorable ruling from the Division of Corporation Finance of the SEC, the Divisions of Investment Management and Trading and Markets of the SEC formally or informally communicate that they have no objection to the issuance of Units and the establishment of the GUC Trust (collectively, the "No-Action Relief"); and

WHEREAS, on May 23, 2012 the GUC Trust received the No-Action Relief and the GUC Trust is prepared to issue Units in global form; and

WHEREAS, the definition of "Excess Distribution Record Date" as contained in the Second Amended Trust Agreement, following the receipt of the No-Action Relief, is defective in that the record date for distributions to holders of Units does not conform to certain regulatory requirements which may be applicable to the Units following their issuance in global form; and

WHEREAS, Section 3.4(a) and Section 5.6(b) of the Second Amended Trust Agreement, following the receipt of the No-Action Relief, are defective in that participants of DTC (as defined below) may round or sell fractional Units and/or fractional New GM Securities (as defined below) in accordance with their own client policies and procedures, which policies and procedures may conflict with the procedures governing fractional Units and fractional New GM Securities as set forth herein; and

WHEREAS, Section 5.4(b) of the Second Amended Trust Agreement is defective in that it fails to take into account all factors which may impact assets available for distribution in respect of the Units and, if not corrected, may impact the pro rata receipt of GUC Trust Distributable Assets (as defined below) in respect of the Units; and

WHEREAS, it is the intent of the parties hereto that this Trust Agreement amends and restates in its entirety the Second Amended Trust Agreement; and

WHEREAS, pursuant to Section 13.13(a) of the Second Amended Trust Agreement, the GUC Trust Administrator, with the approval of the GUC Trust Monitor, may amend the Second Amended Trust Agreement without notice to or consent of the Bankruptcy Court or any GUC Trust Beneficiary (as defined below) for the purpose of (in pertinent part) curing any inconsistency or correcting any defective provision; and

WHEREAS, the GUC Trust Monitor has approved this amendment and restatement of the Second Amended Trust Agreement as evidenced by its signature below; and

WHEREAS, this Trust Agreement, as it amends and restates the Second Amended Trust Agreement, shall become effective upon execution by the appropriate signatories to this amended and restated Trust Agreement.

2

101290520.3

NOW, THEREFORE, in accordance with Section 13.13(a) of the Second Amended Trust Agreement, the Second Amended Trust Agreement is hereby amended and restated as follows:

### Background

A.  Beginning on June 1, 2009, the Debtors filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of Title 11 of the Bankruptcy Code (the "Chapter 11 Cases").

B.  On or about August 31, 2010, the Debtors filed their Plan and Disclosure Statement in the Bankruptcy Court.  The Debtors filed an amended Plan and Disclosure Statement on December 7, 2010. The Debtors filed a second amended Plan on March 18, 2011.

C.  The Disclosure Statement was approved by the Bankruptcy Court on December 8, 2010.

D.  On or about March 29, 2011, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Plan.

E.  The Plan provides for the creation of the GUC Trust as a post-confirmation successor to MLC within the meaning of Section 1145(a) of the Bankruptcy Code, to hold and administer:

(i)  the common stock of General Motors Company ("New GM Common Stock") to be contributed to the GUC Trust under the Plan, including (x) any dividends declared thereon in the form of New GM Common Stock, whether prior to or on or after the Effective Date, (y) any additional shares of New GM Common Stock (the "Additional Shares") to be issued in respect of General Unsecured Claims pursuant to the MSPA, together with any dividends declared thereon in the form of New GM Common Stock, whether prior to or on or after the Effective Date, and (z) any capital stock or other property or assets into which such New GM Common Stock may be converted or for which it may be exchanged (including by way of recapitalization, merger, consolidation, reorganization or otherwise) (the "GUC Trust Common Stock Assets");

(ii)  the two series of warrants, each entitling the holder to acquire one share of New GM Common Stock, one series with an exercise price of $10.00 per share (subject to adjustment) and an expiration date of July 10, 2016 (the "New GM $10.00 Warrants") and the other with an exercise price of $18.33 per share (subject to adjustment) and an expiration date of July 10, 2019, (the "New GM $18.33 Warrants" and together with the New GM $10.00 Warrants, the "New GM Warrants" and, together with the New GM Common Stock, the "New GM Securities") to be contributed to the GUC Trust under the Plan, as such warrants may from time to time be modified or adjusted in accordance with their terms (the "GUC Trust Warrant Assets" and, together with the GUC Trust Common Stock Assets, the "GUC Trust Securities Assets");

(iii)  any dividends on the GUC Trust Common Stock Assets, whether in the form of Cash, securities or other property other than New GM Common Stock, declared prior to the Effective Date (the "Initial GUC Trust Dividend Assets") and any such dividends,

3

| | | |
|---|---|---|
| | Assets reserved for distribution to holders of Units (but not yet distributed or withheld from distribution) of—<br><br>   GUC Common Stock Assets<br>   GUC Trust Warrant Assets<br>   GUC Trust Dividend Assets<br>   other GUC Trust Distributable Cash<br><br>(whether held by MLC or the GUC Trust) | year. |
| I. | Additional Shares received<br><br>(whether held by MLC or the GUC Trust) | During (i) the relevant fiscal quarter or fiscal year; and (ii) the period beginning on the Effective Date and ending on the last day of the relevant fiscal quarter or fiscal year. |

        (ii)    The GUC Trust Reports shall also disclose such other information as the GUC Trust Administrator, in consultation with the Trust Professionals deems advisable or as the GUC Trust Monitor or DIP Lenders may reasonably request from time to time or as may be required by the Bankruptcy Court.

        (d)    The GUC Trust Administrator shall also timely prepare and file and/or distribute such additional statements, reports and submissions as may be necessary to cause the GUC Trust and the GUC Trust Administrator to be in compliance with applicable law, and shall prepare and deliver to the GUC Trust Monitor such statements, reports and other information as may be otherwise reasonably requested from time to time by the GUC Trust Monitor.

        (e)    The GUC Trust Administrator shall also provide quarterly reports to the DIP Lenders specifying the balance of the Residual Wind-Down Assets as of the last day of such quarter and as of the last day of the prior quarter.

        6.3.    <u>SEC Reporting</u>. The GUC Trust will file such reports as shall be required by the rules and regulations of the SEC, including pursuant to any no-action guidance issued to the GUC Trust by the staff of the SEC.

        6.4.    <u>Budget</u>. The GUC Trust Administrator shall prepare and submit to the GUC Trust Monitor and DIP Lenders for approval a reasonably detailed annual plan and budget (the "<u>Budget</u>") at least thirty (30) days prior to the commencement of each calendar year; *provided, however*, that the first such Budget shall be agreed to as of the Effective Date. Such annual plan and Budget shall set forth (on a quarterly basis) in reasonable detail: (A) the GUC Trust Administrator's anticipated actions to administer the GUC Trust Assets; and (B) the anticipated fees and expenses, including professional fees, associated with the administration of the GUC Trust, a separate amount representing the anticipated

45

fees and expenses of the GUC Trust Monitor and detail as to how the GUC Trust will budget and spend the Wind-Down Budget Cash.  Such Budget shall be updated and submitted to the GUC Trust Monitor and DIP Lenders for review on a quarterly basis, and each such quarterly update shall reflect the variances (with explanations) between (x) the Budget, (y) any updated Budget, and (z) the actual results for the same period.  For the avoidance of doubt, the DIP Lenders may object in the Bankruptcy Court with respect to any quarterly update that materially changes the Budget and the Bankruptcy Court shall resolve such dispute.  All actions by the GUC Trust Administrator shall be consistent with the Budget, (as updated).  The GUC Trust Administrator may obtain any required approval of the Budget on reasonable negative notice (which shall be not less than 15 days after receipt of the Budget) and approval of the Budget shall not be unreasonably withheld.   In the event of any dispute concerning the Budget (or the taking of actions consistent with the Budget), the GUC Trust Administrator, the GUC Trust Monitor or the DIP Lenders may petition the Bankruptcy Court to resolve such dispute. For the avoidance of doubt, the Reporting and Transfer Costs shall not be set forth in the Budget and shall not be paid for with the Wind-Down Budget Cash.

      6.5.    <u>Setoff</u>.  The GUC Trust Administrator may, but shall not be required to, setoff against or recoup from any payments to be made pursuant to the Plan in respect of any Allowed General Unsecured Claim, including in respect of any Units, any claims of any nature whatsoever that the GUC Trust, as successor to the Debtors, may have against the claimant, but neither the failure to do so nor the allowance of any General Unsecured Claim hereunder shall constitute a waiver or release by the Debtors or the GUC Trust Administrator of any such claim they may have against such claimant.

      6.6.    <u>Compliance with Laws</u>.  Any and all distributions of GUC Trust Assets shall be in compliance with applicable laws, including applicable federal and state tax and securities laws.

      6.7.    <u>Fiscal Year</u>.  Except for the first and last years of the GUC Trust, the fiscal year of the GUC Trust shall commence on April 1 and end on March 31 of the succeeding year.  The first year of the GUC Trust shall commence on March 31, 2011 and end on March 31, 2012.  For the last year of the GUC Trust, the fiscal year of the GUC Trust shall be such portion of the calendar year that the GUC Trust is in existence.

      6.8.    <u>Books and Records</u>.

      (a)    The GUC Trust Administrator shall maintain and preserve the Debtors' books, records and files that shall have been delivered to or created by the GUC Trust Administrator.

      (b)    The GUC Trust Administrator shall maintain books and records relating to the assets, liabilities, income and expense of the GUC Trust, all distributions made by the GUC Trust and the payment of fees and expenses of, and satisfaction of claims against or assumed by, the GUC Trust and the GUC Trust Administrator, in such detail and for such period of time as may be necessary to enable it to make full and proper

reports in respect thereof in accordance with the provisions of this Trust Agreement and otherwise to comply with applicable provisions of law, including tax law.

6.9.  Cash Payments.  All distributions of GUC Trust Cash required to be made by the GUC Trust Administrator may be made in Cash denominated in U.S. dollars by checks drawn on a United States domestic bank selected by the GUC Trust Administrator or, at the option of the GUC Trust Administrator, by wire transfer from a United States domestic bank selected by the GUC Trust Administrator or as otherwise required or provided in applicable agreements; *provided*, *however*, that cash payments to foreign persons may be made, at the option of the GUC Trust Administrator, in such funds as and by such means as are necessary or customary in a particular foreign jurisdiction.

6.10.  Insurance.  The GUC Trust shall maintain customary insurance coverage for the protection of the GUC Trust Administrator, the GUC Trust Monitor and any such other persons serving as administrators and overseers of the GUC Trust on and after the Effective Date, in all cases in accordance with the Budget.  The GUC Trust Administrator may also obtain such insurance coverage as it deems necessary and appropriate with respect to real and personal property which may become GUC Trust Assets, if any, in accordance with such Budget.

6.11.  Cooperation with and Indemnification of the Administrator of the Avoidance Action Trust.

(a)  The GUC Trust Administrator shall timely provide the Avoidance Action Trust Administrator with such information as the Avoidance Action Trust Administrator shall reasonably request.  Without limiting the foregoing, the GUC Trust Administrator shall provide to the Avoidance Action Trust Administrator copies of the GUC Trust Reports as soon as they become available, under appropriate arrangements of confidentiality to the extent the reports have at the time not yet been publicly disclosed.  The GUC Trust Administrator will also from time to time, upon reasonable request of the Avoidance Action Trust Administrator, provide the Avoidance Action Trust Administrator with the GUC Trust Administrator's most recent determination of all Resolved Allowed General Unsecured Claims, the Disputed General Unsecured Claims, the Maximum Amounts, the Aggregate Maximum Amount and the Current Total Amount, and any other information within the custody and control of the GUC Trust Administrator as the Avoidance Action Trust Administrator shall reasonably request to make any calculation or determination or otherwise to fulfill its responsibilities under the agreement governing the Avoidance Action Trust.  The provision of any such information shall be made under appropriate arrangements of confidentiality to the extent such information has at the time not been publicly disclosed.  In addition, neither the GUC Trust Administrator nor the GUC Trust Monitor shall be required to provide access to or disclose any information where such access or disclosure would give rise to a material risk of waiving any attorney-client privilege.  In the event that the GUC Trust Administrator or the GUC Trust Monitor does not provide access or information to the Avoidance Action Trust Administrator in reliance on the preceding sentence, the GUC Trust Administrator and/or the GUC Trust Monitor shall use its reasonable best efforts to communicate the applicable information to the Avoidance Action Trust Administrator in a way that would not violate such privilege.

47

101290520.3