# **Exhibit DD**

**Hearing Date:  April 4, 2013 at 10:00 a.m. (Eastern)**

Kenneth R. Puhala
Barry E. Bressler (admitted *pro hac vice*)
Richard A. Barkasy (admitted *pro hac vice*)
Eric A. Boden
SCHNADER HARRISON SEGAL & LEWIS LLP
140 Broadway, Suite 3100
New York, NY 10005-1101
Phone:  (212) 973-8000
Fax:  (212) 972-8798
*Attorneys for Plaintiffs*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------X
                                        :
In re:                                  :      Chapter 11
                                        :
OLD CARCO LLC, et al.,                  :      Case No. 09-50002 (SMB)
                                        :
                    Debtors.            :      (Jointly Administered)
-------------------------------------------------------------X
                                        :
AUTUMN BURTON, et al.                   :
                                        :
                    Plaintiffs,         :      Adv. Proc. No. 13-01109 (SMB)
                                        :
v.                                      :
                                        :
CHRYSLER GROUP, LLC                     :
                                        :
                    Defendant.          :
-------------------------------------------------------------X
```

## PLAINTIFFS' OPPOSITION TO CHRYSLER
## GROUP, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiffs, by and through their undersigned counsel, by way of opposition to Chrysler

Group, LLC's ("Chrysler Group") Motion to Dismiss Second Amended Complaint (the

"Motion"), hereby state:

PHDATA 4319102_1

# BACKGROUND

**A.** **Chrysler Group's Assumption of Warranty Claims and Lemon Law Liabilities.**

1.     On April 30, 2009, Chrysler, LLC (n/k/a Old Carco LLC) and 24 of its affiliated debtors (the "Debtors") filed voluntary petitions for relief under Chapter 11 in the United States Bankruptcy Code (11 U.S.C. § 101, *et seq.*) in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.     On June 1, 2009, the Bankruptcy Court entered an order approving the sale of substantially all of the Debtors' assets to Chrysler Group (the "Sale Order") [Docket No. 3232] pursuant to the terms and conditions of a Master Transaction Agreement dated as of April 30, 2009 (the "MTA") [Docket No. 3071-1].

3.     Pursuant to Section 2.08 of the MTA, Chrysler Group assumed, effective as of closing, the obligation to "timely perform and discharge in accordance with their respective terms" certain liabilities of the Debtors.

4.     Among the Debtors' obligations assumed by Chrysler Group were "**all Liabilities pursuant to product warranties, product returns and rebates on vehicles sold by Sellers prior to the Closing**."  MTA § 2.08(g) (emphasis added).

5.     "Liabilities," as used in § 2.08(g), are defined to include "all debts, liabilities and obligations of any kind whatsoever, whether asserted or unasserted, accrued or fixed, contingent or absolute, determined or determinable, or otherwise including those arising under any Law, Action or Government Order and those arising under any contract."  Definitions Addendum to MTA.

6.     Not only did Chrysler Group assume all of the Debtors' Liabilities pursuant to product warranties, but the Sale Order separately obligated Chrysler Group to make payment of

liabilities under "Lemon Laws" on vehicles manufactured by the Debtors in the five years prior to the sale closing.  Sale Order ¶ 19.

7.      Chrysler Group also expressly agreed to assume "**any Liabilities arising as a result of the operation of the Company Business after the Closing.**"  MTA § 2.08(l) (emphasis added)

8.      The sale closed on June 10, 2009.

9.      The United States Court of Appeals for the Second Circuit affirmed the Sale Order.  *Ind. State Police Pension Trust v. Chrysler LLC (In re Chrysler LLC)*, 576 F.3d 108 (2d Cir. 2009).

10.      The Sale Order, *inter alia*, extinguished successor liability claims for personal injuries against Chrysler Group arising from motor vehicle accidents occurring both before and after the sale involving Chrysler vehicles manufactured before the closing.

11.      Appellants, *inter alia*, challenged the provisions of the Sale Order which would have precluded claims against Chrysler Group for accidents not occurring until after the sale on due process and other grounds.  *Id*. at 127.

12.      In its opinion, the Second Circuit stated that "we decline to delineate the scope of the bankruptcy court's authority to extinguish future claims, until such time as we are presented with an actual claim for an injury that is caused by Old Chrysler that occurs after the Sale and is cognizable under state successor liability law."  *Id.*

13.      On November 19, 2009, the Bankruptcy Court entered an order approving an amendment to the MTA providing for Chrysler Group's assumption of products liability claims arising from motor vehicle accidents occurring after the sale involving Chrysler vehicles manufactured before the closing.   [Docket No. 5988]

PHDATA 4319102_1

09-50026-smb   Doc 12982-34   Filed 03/21/14   Entered 03/21/14 15:37:36   Main Document
Pg 5 of 93

14.     On December 14, 2009, the Supreme Court of the United States issued an opinion

granting a petition for writ of certiorari, vacating the judgment on the Sale Order and remanding

the case to the Second Circuit with instructions to dismiss the appeal as moot.  *Ind. State Police*

*Pension Trust v. Chrysler LLC (In re Chrysler LLC)*, 558 U.S. 1087 (2009).

> **B.     Plaintiffs' Class Action.**

15.     On November 29, 2011, Plaintiffs filed this action in the Superior Court of the

State of Delaware for the County of New Castle.

16.     On January 3, 2012, Chrysler Group removed this case to the United States

District Court for the District of Delaware (the "Delaware Court").

17.     On August 21, 2012, Plaintiffs filed their Second Amended Complaint, a true and

copy of which is attached as Exhibit A.

18.     On August 28, 2012, the Delaware Court entered an Order transferring this case

to the United States District Court for the Southern District of New York, for referral to the

Bankruptcy Court for a determination as to whether the claims set forth in the Second Amended

Complaint are barred by the Sale Order (the "Transfer Order").  A true and correct copy of the

Transfer Order is attached as Exhibit B.

19.     The Transfer Order provides that if the Bankruptcy Court determines that any of

the claims asserted in Plaintiffs' Second Amended Complaint are not barred by the Sale Order,

all remaining claims will be remanded to the Delaware Court.  Transfer Order ¶ 3.

20.     This is a class action arising from Chrysler Group's failure to fulfill its

obligations, including, but not limited to, warranty obligations, to remediate a dangerous and

defective condition in Chrysler vehicles.

PHDATA 4319102_1

13-01109-smb   Doc 1-2   Filed 01/11/14   Entered 01/11/14 17:16:14   Exhibit DD Pg 6 of 27

21.     Each of the named Plaintiffs owns a Chrysler vehicle which has a flaw that causes fuel to spill out of the filler tube during refueling.  This defect is known as a "fuel spit-back" problem.

22.     Plaintiffs seek: (a) an injunction requiring Chrysler Group to correct the fuel spit-back problem in Jeep Wrangler vehicles, model years 2005 through 2010, and Dodge Durango vehicles, model years 2005 through 2008; and (b) to recover the cost of the repair and replacement of necessary components in each Jeep Wrangler and Dodge Durango.  The Plaintiffs do not assert any claims for personal injury damages.

23.     The Second Amended Complaint contains breach of express and implied warranty claims, as well as negligence claims predicated upon from Chrysler Group's post-closing failure to properly notify consumers and remediate the fuel spit-back problem.

24.      In September, 2009, Chrysler Group issued a Technical Service Bulletin ("TSB") advising Chrysler dealers that customers were experiencing fuel spit-back problems and advising the dealers on various repair steps.  Second Amended Complaint ¶ 7.

25.     On February 11, 2011, Chrysler Group issued a TSB granting a lifetime warranty to the owners of 2007 and 2008 Jeep Wrangler vehicles.  The warranty covered the repair and replacement of certain components if and when a customer complained of a fuel spit-back problem.  A true and correct copy of the February 11, 2011 TSB is attached as Exhibit C.

26.     Although the U.S. Department of Transportation, National Highway Traffic Safety Administration (the "NTSA") found that the rate of fuel spit-back complaints on Jeep Wrangler vehicles "is higher than or similar to the rate experienced in previous investigations where safety recalls were conducted," it closed its investigation relying upon the lifetime warranty issued by Chrysler Group:

PHDATA 4319102_1

> In addition, Chrysler is initiating a lifetime warranty program, at
> no cost to the consumer, to address the fuel spit back problem in
> approximately 135,000 model year 2007-2008 Jeep Wrangler
> vehicles built from March 1, 2007 to March 31, 2008.  Chrysler
> will notify all affected vehicle owners of this action.  Consumers
> should refer to the warranty and service bulletins and sample
> owner notification letter available in the investigative file.  The
> vehicle build date can be found on the certification label located on
> the driver door or door jamb.

*See* NTSA ODI Resume, a true and correct copy of which is attached as <u>Exhibit D</u>.

27.     On January 20, 2012, Chrysler Group issued a TSB granting owners of 2006
through 2008 Dodge Durango vehicles a lifetime warranty due to the fuel spit-back problem.  A
true and correct copy of the January 20, 2012 TSB is attached as <u>Exhibit E</u>.

28.     In the Second Amended Complaint, Plaintiffs allege that, *inter alia*, Chrysler
Group failed to live up to the promises it made and obligations it assumed, when it issued these
lifetime warranties in 2011 and 2012.

29.     The Second Amended Complaint alleges that in each of the TSBs referenced
above, the defendant failed to reasonably and safely notify current owners to allow for the
prompt repair of all Chrysler products in the Class.

## <u>ARGUMENT</u>

30.     When deciding a motion to dismiss a complaint, the court views all facts and
inferences to be drawn from the pleadings in favor of the party against whom the motion is
sought.  *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999).  Indeed, "[t]he issue is not
whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to
support the claims." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).
Asking for plausible grounds to infer that something has occurred as alleged does not impose a
probability requirement at the pleading stage.  *Twombly*, 550 U.S. at 556 (footnote omitted).
When there are well-pleaded factual allegations, a court should assume their veracity and then

PHDATA 4319102_1

determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (citations omitted).

31.    Chrysler Group contends that Plaintiffs' Second Amended Complaint should be dismissed because all of Plaintiffs' claims are barred by the Sale Order.  The only issue to be addressed on Chrysler Group's Motion is whether the Sale Order prevents Plaintiffs from maintaining this action, not whether Plaintiffs will ultimately prevail on their claims.  For the reasons set forth below, Chrysler Group's Motion should be denied and this case should be remanded to the Delaware Court.

> **A.    The Sale Order Does Not Preclude Plaintiff's Claims Under the Lifetime Warranties Chrysler Group Issued in 2011 and 2012.**

32.     In the Second Amended Complaint, Plaintiffs allege that Chrysler Group has failed to live up to its obligations under the lifetime warranties it issued in 2011 and 2012.  There is nothing in the Sale Order which would relieve Chrysler Group from liability for failing to fulfill the lifetime warranty commitments it made **__after__** the sale was concluded.  To the contrary, Chrysler Group expressly assumed "any Liabilities arising as a result of the operation of the Company Business after the Closing."  MTA § 2.08(1).  As a result, Plaintiffs should be permitted to seek to enforce Chrysler Group's post-closing promises to Jeep Wrangler and Dodge Durango vehicle owners.

> **B.    The Sale Order Does Not Bar Plaintiffs' Negligence Claims Based Upon Chrysler Group's Post-Closing Conduct.**

33.    Plaintiffs' Second Amended Complaint also contains negligence claims arising from Chrysler Group's post-sale conduct.  Having issued the lifetime warranties in 2011 and 2012, Chrysler Group undertook the post-sale obligation to properly repair the fuel spit-back problem in the Jeep Wrangler and Dodge Durango vehicles.  *See Circle Land & Cattle Corp. v.*

*Amoco Oil*, 232 Kan. 482, 657 P.2d 532, 537 (1983) ("The law imposes an obligation upon

everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of

care and skill in the performance of what he has undertaken, for nonperformance of which an

action lies"); *Standifer v. Pate*, 291 Ala. 434, 282 So. 2d 261, 263 (Ala. 1973) ("where one

undertakes a duty requiring skill and care, reasonable care must be exercised in the performance

thereof even though there may be no consideration given therefor"); *H.R. Moch Co. v.

Rensselaer Water Co.*, 247 N.Y. 160, 167 (1928) ("It is ancient learning that one who assumes to

act, even though gratuitously, may thereby become subject to the duty of acting carefully");

Restatement (Second) of Torts §§ 323 and 324A.

34.     Further, a manufacturer has a duty to warn consumers of risks brought to the

attention of the manufacturer after the product is sold.  *Cover v. Cohen*, 61 N.Y.2d 261, 473

N.Y.S.2d 378 (1984) (finding triable question of fact as to duty to warn where GM issued TSB

acknowledging that vehicles may exhibit erratic idle speed and slow return to idle).

35.     "The responsibility to warn of known defects cannot be satisfied merely by

alerting participating service centers.  Because of the likelihood that a purchaser will have a

product serviced by its own technicians or by an unaffiliated service center, or possibly not

serviced at all, sellers must make reasonable attempts to warn the user or consumer directly."

*Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454, 459 (1992).

36.     An asset purchaser has an independent duty to warn when it has a continuing

relationship with customers of the seller.  *Patton v. TIC United Corp.*, 77 F.3d 1235, 1240 (10th

Cir. 1996), *cert. denied* 578 U.S. 1005 (1996); *Florom v. Elliott Mfg*, 867 F.2d 570, 577 (10th

Cir. 1989); Restatement (Third) of Torts: Products Liability, § 13.

PHDATA 4319102_1

37.     The asset purchaser's "liability stems not from its status as a successor, but from the establishment of a relationship with the customer that imposes certain duties and responsibilities." *Polius v. Clark Equipment Co.*, 802 F.2d 75, 84 (3d Cir. 1986).

38.     By issuing the TSBs relating to the fuel spit-back problem and the lifetime warranties in 2011 and 2012, and through its prior assumption of the product warranties for Chrysler vehicles in the MTA, Chrysler Group established its own post-closing relationship with the owners of Chrysler vehicles.  As a result, Chrysler Group had a post-sale duty to warn Chrysler vehicle owners of the fuel spit-back problem.  Since Chrysler Group's duty arose **after** the closing, the Sale Order does not preclude Plaintiffs' claims that Chrysler Group did not reasonably alert customers to the safety defect at issue and did not properly instruct owners to have their vehicles repaired.  Second Amended Complaint ¶¶ 16 and 71.

39.     Chrysler Group contends that Plaintiffs' negligence claims are precluded by the Sale Order because they are based on purported defects in vehicles manufactured and sold by the Debtors prior to the closing date.

40.     Chrysler Group's argument fails because the negligence claims arise from the post-closing operation of the business, the Liabilities for which were expressly assumed by Chrysler Group.  MTA § 2.08(l).

41.     In addition, Chrysler Group's assertion should be rejected because a Section 363 "free and clear" sale order may not extinguish a claim against a purchaser relating to a product manufactured by the debtor before the sale if the plaintiff's injury was not suffered until after the closing.  *In re Grumman Olson Industries, Inc.*, 467 B.R. 694 (S.D.N.Y. 2012).  To do otherwise would deny Plaintiffs "due process and violate the Bankruptcy Code's requirements of notice and opportunity to be heard for those affected by a bankruptcy court's rulings." *Id*. at 711.

PHDATA 4319102_1

Plaintiffs could not have known, before the sale was approved, that Chrysler Group would after

the closing negligently fail to warn Chrysler vehicle owners of the fuel spit-back problem and

negligently fail to remediate the fuel spit-back problem.  Consequently, Chrysler Group's Motion

should be denied.

### C.      Chrysler Group Assumed the Debtors' Warranty Obligations.

42.     Even if Chrysler Group had not issued its own lifetime warranties promising to

fix the fuel spit-back problem, Chrysler Group would not be permitted to escape from its

assumption of the Debtors' warranty obligations for Chrysler vehicles.

43.     Under the Sale Order and MTA, Chrysler Group clearly and unequivocally agreed

to assume "all Liabilities pursuant to product warranties, product returns and rebates on vehicles

sold by Sellers prior to the Closing."  MTA § 2.08(g).

44.     Chrysler Group's specific assumption of the Debtors' warranty obligations was a

critical part of the transaction.

45.     When it filed for bankruptcy protection, the Debtors represented that "to preserve

goodwill and the value of Chrysler's brands that are central to any going concern sale, Chrysler

must continue to honor warranties and related obligations that directly impact the purchasers of

Chrysler, Dodge and Jeep vehicles."  Declaration of Ronald E. Kolka [Docket No. 23] ¶ 90.  The

Debtors advised the Court that "[a]ny indication that Chrysler will not honor its warranty and

service contract obligations will cause a loss in consumer loyalty that would negatively and

perhaps irreparably impact Chrysler's ability to consummate a Sale Transaction, to the

significant detriment of its estates."  *Id*. at ¶2 0.

46.     As a result, when Chrysler announced the sale, Bob Nardelli, the Debtors'

Chairman and CEO, assured the public in an open letter to customers that "The company will

seamlessly honor all warranty claims." A true and correct copy of the open letter is attached as

Exhibit F.

47.     In the motion seeking approval of the sale (the "Sale Motion") [Docket No. 190],

the Debtors showcased that Chrysler Group was assuming:

- Liabilities for product warranties, product returns and rebates on vehicles sold pre-closing

- Warranty obligations and product recall liabilities related to vehicles sold pre-closing

Sale Motion at 26-27.

48.     The Debtors' CFO (and later President) Ronald Kolka testified during the sale

hearing that Chrysler Group "plans on paying the warranty claims." May 29, 2009 Hearing

Transcript 160:10-13; true and correct copies of the pertinent pages of the May 29, 2009 Hearing

Transcript are attached as Exhibit G.

49.     After the sale closed, Chrysler Group touted to Senator Richard Durbin that it had

assumed liability for warranty and lemon law claims:

> Today, Chrysler Group has a much better appreciation of the
> viability of our business than it did on June 10.  As a result, we
> will announce today that the company will accept product liability
> claims on vehicles manufactured by Old Carco before June 10 that
> are involved in accidents on or after that date.  **This is in addition
> to our previous commitment to honor warranty claims, lemon
> law claims and safety recalls regarding these vehicles**.

Chrysler Group letter to Senator Richard Durbin dated August 27, 2009 (emphasis added), a true

and correct copy of which is attached as Exhibit H.

50.     When he testified before Congress, Ronald Bloom of President Obama's Task

Force on the Automotive Industry explained that Chrysler Group assumed the warranty claims to

allow it to preserve its relationship with Chrysler customers:

**The companies also decided to honor the warranty claims of prior owners of their cars. Why, because on a commercial basis, the last buyer of a GM or Chrysler car is the most likely candidate to be the next buyer.**

Transcript of July 21, 2009 the Hearing before the Subcommittee on Commercial and Administrative Law of the Committee on the Judiciary of the House of Representatives at 31 (emphasis added); true and correct copies of the pertinent pages of the transcript are attached as Exhibit I.

51.     Under these circumstances, and given the clear language of § 2.08(g) of the MTA, it would be unjust and inequitable to permit Chrysler Group to now seek to evade the warranty obligations it specifically assumed.

52.     Chrysler Group's reliance on the Bankruptcy Court's unreported Opinion in *Tulacro v. Chrysler Group, LLC,* Adv. No. 11-09401 (AJG), is misplaced. In that case, the plaintiffs asserted claims under California's Lemon Law for a vehicle that was purchased more than five years prior to the closing date and, therefore, outside of the Sale Order provision regarding Chrysler Group's assumption of Lemon Law claims. In the *Tulacro* Opinion, although the Bankruptcy Court determined that Chrysler Group was not responsible for the claims under California's Lemon Law, the Bankruptcy Court noted that under Section 2.08(g) of the MTA, Chrysler Group assumed the obligation to cover the costs of all parts and labor needed to repair defective items in connection with the warranty issued for the vehicle. *Tularco* Opinion at 6.

53.     Chrysler Group's citation to the Bankruptcy Court's oral opinion in *Tatum v. Chrysler Group, LLC*, United States Bankruptcy Court for the Southern District of New York, Adv. No. 11-09411(AJG), is equally misguided. In that case, the Bankruptcy Court concluded that the plaintiff's New Jersey Consumer Fraud Act claim was barred by the Sale Order. However, in its oral ruling, the Bankruptcy Court explained that that Chrysler Group had

PHDATA 4319102_1

assumed the responsibility for parts and labor costs for repairing vehicles in connection with the vehicle warranties. Tr. at 26-27. True and correct copies of the pertinent pages of the February 14, 2012, 2009 Hearing Transcript are attached as Exhibit J.

54.     Indeed, in *Tatum*, Chrysler Group acknowledged that the plaintiffs' breach of warranty claims with regard to a braking defect in model-year 2009 and 2010 Dodge Journey vehicles were not precluded by the Sale Order. Although the plaintiffs' New Jersey Consumer Fraud Act claims were transferred to the Bankruptcy Court for a determination as to whether they were barred by the Sale Order, the United States District Court for the District of New Jersey denied Chrysler Group's venue transfer motion as to the plaintiffs' breach of warranty claims. In her Report and Recommendation on the venue transfer motion, which was adopted by the district court, the Magistrate Judge explained:

> The Court does not believe it appropriate to transfer Counts II-IV to the Bankruptcy Court because the remaining claims do not relate to the pending bankruptcy proceeding…These claims implicate no assumed liability issues. Instead, these claims focus exclusively on breach of warranty claims or rely entirely on allegations related to Chrysler's post-bankruptcy conduct. To that end, Chrysler conceded and stipulated on the record that it assumed the liabilities associated with breach of warranty claims arising out of the alleged defects in the vehicles at issue.

*Tatum v. Chrysler Group, LLC*, 2011 U.S. Dist. LEXIS 113503 at * 15 (D.N.J. Oct. 3, 2011), *adopted by Tatum v. Chrysler Group*, LLC, 2011 U.S. Dist. LEXIS 144831 (D.N.J. Dec. 16, 2011).

55.     In this case, Plaintiffs are seeking to enforce Chrysler Group's warranty obligations. This is not a products liability action. Plaintiffs do not seek to recover for personal injury damages. Rather, Plaintiffs seek injunctive relief and recovery of repair costs for violation of express and implied warranties applicable to Chrysler vehicles owned by Plaintiffs. Since

Chrysler Group assumed the Debtors' warranty obligations, Chrysler Group's motion to dismiss should be denied.

### D.   Chrysler Group Is Responsible For Payment of Lemon Law Claims.

56.     Plaintiffs' breach of express and implied warranty claims, and the facts set forth in the Second Amended Complaint, also constitute "Lemon Law" claims, the responsibility for payment for which Chrysler Group assumed in ¶ 19 of the Sale Order.

57.     Chrysler Group contends that Plaintiffs' claims for breach of express and implied warranties are not protected by ¶ 19 of the Sale Order because Plaintiffs do not identify any federal or state statutes in the Second Amended Complaint.  Chrysler Group's argument is belied by its previous admissions.

58.     In *Burton v. Chrysler Group, LLC*, United States District Court for the District of South Carolina, Civil Action No. 8:10-CV-00209-JMC, Chrysler Group acknowledged that: (a) breach of express and implied warranty claims were assumed by Chrysler Group in ¶ 19 of the Sale Order; and (b) such claims are not dependent upon proving a violation of any particular statute.  In that case, the plaintiffs, individually and on behalf of a putative class, asserted that there are certain defects in model-year 2007 through 2009 Dodge Ram vehicles and pled claims against Chrysler Group for breach of express and implied warranties.  Chrysler Group stipulated as follows:

> Chrysler Group acknowledges and agrees that, under Paragraph 19 of the Sale Order, it assumed the liabilities associated with claims for breach of express warranty and breach of implied warranty for model-year 2007 through 2009 Dodge Ram vehicles equipped with a 6.7 liter Cummins engine, *except for those liabilities associated with personal injuries and/or punitive, exemplary, special, consequential or multiple damages or penalties*.  Chrysler Group acknowledges that its assumption of these liabilities associated with breach of express warranty claims and breach of implied warranty claims is not dependent on a plaintiff/claimant alleging or

> proving facts which would meet the standards of any applicable
> "Lemon Law."

Consent Motion and Stipulation of Parties Regarding Filing of Second Amended Complaint and

Assumed Liabilities dated May 11, 2011 ¶ 2, a true and correct copy of which is attached as

Exhibit K (emphasis in original).

59.     Furthermore, "[d]ismissal without leave to amend is improper unless it is clear

that the complaint could not be saved by further amendment."  *See O'Brien v. U.S.*, 73 Fed.

Appx. 958, 959 (9th Cir. 2003).

60.     Accordingly, to the extent that the Court determines that Plaintiffs are required to

identify each state statute violated by Chrysler Group, Plaintiffs should be afforded an

opportunity to amend their pleadings to do so.  *Baptiste v. Cavendish Club, Inc.*, 670 F.Supp. 108

(S.D.N.Y. 1987) (denying motion to dismiss and granting motion to file amended complaint to

state claim under 42 U.S.C. § 1981).[1]

61.     Chrysler Group also now asserts that Plaintiffs' breach of express and implied

warranty claims should be dismissed because Plaintiffs seek to recover consequential damages,

which are not permitted under ¶ 19 of the Sale Order.  The only "consequential damages" that

Plaintiffs seek are damages for the loss of use of the vehicles while they are being repaired.  To

the extent that such damages are not covered by ¶ 19 of the Sale Order or otherwise recoverable,

only the consequential damages claims would be subject to dismissal, not Plaintiffs' claims for

repair and component part replacement costs or injunctive relief.

---

[1]     There would be no prejudice to Chrysler Group from permitting Plaintiffs to amend their
pleading because the Transfer Order already contemplates Plaintiffs filing a Third
Amended Complaint after the case is transferred back to the Delaware Court.  Transfer
Order ¶ 4.

E.    **The Sale Order Does Not Impact Claims Relating to Vehicles
Manufactured After the Sale.**

62.    Even if the provisions of the Sale Order and MTA relating to products liability

claims, rather than Chrysler Group's clear and unequivocal assumption of Debtors' warranty

obligations, were applicable, the Second Amended Complaint includes claims which would not

be precluded.  For example, the Second Amended Complaint also includes claims relating to

model year 2009 and 2010 Jeep Wrangler vehicles which would not have even been

manufactured until after the closing date.[2]

F.    **The Sale Order Does Not Extinguish Future Claims**

63.    The Sale Order would also not bar claims with respect to fuel spit-back problems,

not manifesting themselves until after the sale closing.

64.    As set forth above, the MTA was modified to cover "future" claims arising from

post-closing accidents involving vehicles manufactured before the closing date.

65.    A sale free and clear under 11 U.S.C. § 363(f) does not bar the claims arising after

the sale by defective product manufactured prior to the sale under a successor liability or other

---

[2]    Chrysler Group asserts that the named Plaintiffs do not have standing to bring claims for
model year 2009 and 2010 vehicles because they do not own model year 2009 or 2010
vehicles.  This is an argument on the merits of Plaintiffs' request for class certification
which is not to be adjudicated in the context of this Motion.  Nevertheless, Chrysler
Group is wrong.  The Plaintiffs have standing because the vehicles all have the same fuel
spit-back problem.  There is no requirement that there be at least one named plaintiff
owner for each model vehicle.  *See Wolin v. Jaguar Land Rover North America*, LLC,
617 F.3d 1168 (9th Cir. 2010) (class certification granted where named plaintiffs owned
model year 2005 Land Rover LR3s and class included owners and lessees of 2004, 2005
or 2006 Land Rover LR3s); *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)
(named plaintiff owned 1999 Mercury Villager minivan and certified class included all
1999 or 2000 Mercury Villager owners and lessees).

PHDATA 4319102_1

theory.  *In re Grumman Olson Industries, Inc.*, 445 B.R. 243 (Bankr. S.D.N.Y. 2011), *affirmed*

467 B.R. 694 (S.D.N.Y. 2012).  As the Bankruptcy Court explained in *Grumman*:

> [The plaintiffs] could not have identified as potential creditors
> prior to the sale or received adequate notice of the case, the sale,
> the confirmation or the deadline for filing a proof of claim.  Even if
> the [plaintiffs] knew about the case, the knowledge would be
> meaningless and it would be nothing for them to do.  They could
> not file a claim based on an accident that occurred years later.

*Id*. at 254.

66.    Consequently, the Sale Order does not bar the claims of any class member against

Chrysler Group, based upon a successor liability theory or otherwise, where the fuel spit-back

problem did not manifest itself until after the closing date or the class member did not receive

adequate notice of the bankruptcy.

## CONCLUSION

67.    For these reasons, Plaintiffs respectfully request that the Court enter an Order

denying Chrysler Group's Motion and for such other and further relief as the Court deems just

and equitable.

Dated: March 21, 2013                         SCHNADER HARRISON SEGAL & LEWIS LLP
       New York, New York

                                              By:  /s/ Kenneth R. Puhala
                                                   Kenneth R. Puhala
                                                   Eric A. Boden
                                                   140 Broadway, Suite 3100
                                                   New York, NY 10005-1101
                                                   Phone:  (212) 973-8000
                                                   Fax:  (212) 972-8798
                                                   kpuhala@schnader.com

                                                   Barry E. Bressler (admitted *pro hac vice*)
                                                   Richard A. Barkasy (admitted *pro hac vice*)
                                                   1600 Market Street, Suite 3600
                                                   Philadelphia, PA 19103
                                                   Phone:  (215) 751-2000
                                                   Fax: (215) 751-2205
                                                   *Attorneys for the Plaintiffs*

PHDATA 4319102_1

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AUTUMN BURTON, MATTHEW COX, :
 RODNEY LaFLEUR, DAN GULICK :  CLASS ACTION
JAMES SPITLER, MIKE BURKE, :
MIKE GASMAN, ERIC MALLOY and :
RYAN GILLETTE individually and in :
their representative capacity for all :
others similarly situated, :
        :  Case No. 12-cv-00005 LPS
   Plaintiffs,     :
         :
vs.         :
         :
CHRYSLER GROUP LLC,   :
         :
   Defendant.    :

## CLASS ACTION SECOND AMENDED COMPLAINT

The Plaintiffs, Autumn Burton, Matthew Cox, Rodney LaFleur, Dan Gulick, James Spitler, Mike Burke, Mike Gasman, Eric Malloy and Ryan Gillette individually and on behalf of all others similarly situated, sue the Defendant Chrysler Group, LLC (referred to as Chrysler) and state as follows:

## NATURE OF THE ACTION

1. This is an action seeking compensation and <u>injunctive relief requiring the repair</u> ~~remedial repairs~~ of a dangerous and defective condition in Plaintiffs' Chrysler vehicles. This action seeks remedial repairs of all vehicle models similarly situated, thus requesting that the case be certified as a Class Action.

2.     Each of the named Plaintiffs own a Chrysler product which has a design flaw that causes fuel to spill out of the filler tube during refueling. This problem has been referenced as a "fuel spit-back problem."

3.     Based upon information and belief, it is alleged that beginning in the fall of 2001, the ~~defendant~~ owners of some Chrysler products began ~~receiving field reports of customers~~ complaining of fuel spit back in certain ~~Chrysler products~~ vehicle models. As a result of these complaints, ~~Chrysler admitted that this problem constituted~~ a safety defect ~~and agreed to a product~~ recall occurred in 2002.

4.     In 2005, ~~the defendant conducted~~ a second safety recall of Chrysler vehicles ~~for the same type "fuel spit back problem"~~ took place for 2005 MY Durango vehicles having "fuel spit back problems".

5.     Based upon information and belief, in February of 2007, ~~Chrysler began receiving~~ a rising number of ~~field complaints of~~ customers' complaints about "fuel spit back problems" in other ~~products, including the~~ model year Jeep ~~Wrangler, that were experiencing "fuel spit back problems"~~ Wranglers.

6.     In January 2009, ~~the Defendant conducted~~ a further safety recall ~~of~~ was issued involving other Durango model vehicles because of ~~the safety problem created in 2005 MY Durangos with~~ "fuel spit back problems".

7.     In September, 2009, defendant Chrysler published and sent a Technical Service Bulletin ~~sent~~ to its dealership network advising them that consumers were continuing to experience "fuel spit back problems", and ~~voicing complaints about refueling, and advising~~ the defendant advised dealerships on various repair steps that may be required if a customer brings in his or her Chrysler product with this ~~type~~ complaint.

8.      In August, 2010, the National Highway Traffic Safety Administration opened an investigation regarding complaints of "fuel spit back problems" in 2007 and 2008 Jeep Wranglers. In communications with the Defendant, ~~the~~ NHTSA advised Chrysler that the same "fuel spit back problems" currently being investigated for 2007-2008 MY Wranglers were previously ~~received by the owners of~~ <u>found in</u> 2005 <u>and</u> 2006 Jeep Wranglers.

9.      In response to the NHTSA communications in August, 2010, ~~the~~ Chrysler <u>defendant</u> admitted that the 2005 through 2010 Jeep Wrangler model vehicles ~~include~~ <u>included</u> the same or similar fuel system components, including the fuel tank assembly and inlet check valve. Additionally, <u>the</u> Chrysler <u>defendant</u> admitted that the 2005 through 2008 Durango model vehicles were appropriate peer vehicles with the same or similar fuel tank assembly and inlet check valve.

10.      In its response to the NHTSA inquiry of August 2010, ~~the~~ Chrysler <u>defendant</u> admitted that there were 542,650 Jeep Wranglers with the same or similar fuel system assembly and inlet check valve. ~~Further, in this same response,~~ <u>And, the defendant</u> Chrysler admitted there were 266,315 Durangos with the same or similar fuel system assembly and inlet check valve.

11.      On February 11, 2011, the defendant issued and then delivered to its dealership network a Technical Service Bulletin granting a lifetime warranty to the owners of (approximately 135,000 vehicles) 2007 to 2008 Jeep Wranglers ~~only~~. <u>This warranty allowed for the repair and replacement of certain components if and when a customer complained of a "fuel spit-back problem"</u>. This TSB (referenced as Chrysler TSB 140001-11) was not a safety recall, it did not advise the owners of these vehicles that their vehicles contained a <u>flaw or</u> safety defect, and it did not appropriately notify current owners of the aforesaid hazard. This TSB

merely authorized Chrysler dealerships to inspect and repair ~~a limited number of~~ these Jeep Wranglers ~~that are brought~~ if an owner should happen to bring the vehicle into a dealership ~~with~~ complaining of "fuel spit back problems".

12. Despite the Defendant's awareness that the "fuel spit back problem" continued to exist in Jeep Wranglers for model years 2005 through 2010 and Durangos for model years 2005-2008, and despite the ~~Defendant's~~ earlier ~~admission~~ recognition that this refueling problem constituted a safety defect, the defendant ~~turned a blind eye~~ failed to ~~this issue. The Defendant, recognizing its duty~~ take necessary steps to rectify this ~~hazard, carelessly and wrongfully decided on February 11, 2011 to issue a silent recall (herein referenced as a TSB) for a limited number of the Wranglers and no Durango vehicles which contain this hazard. This negligent misconduct constituted an inadequate response to a continuing safety issue.~~ problem.

13. On February 11, 2011, the Defendant initiated a woefully inadequate procedure for the repair of ~~all~~ certain Jeep Wranglers ~~and Durangos~~ containing the same or similar hazards as those which were the subject of the aforementioned TSB.

14. ~~The~~ In 2011, the Defendant failed to conduct a proper ~~recall~~ and/~~or~~ necessary remedial program to remedy all Jeep Wranglers and Durangos containing the defective design that is responsible for the "fuel spit back problem".

15. In January 2012, the defendant sent a letter to the owners of certain Dodge Durangos advising them that because of the "fuel spit-back problem" these vehicles would now have a lifetime warranty for certain fuel system parts. And, in the event that their vehicle developed the problem, a Chrysler dealership would repair it.

4

16.     The January, 2012 letter did not reasonably alert customers to the safety defect at issue and did not properly and reasonably instruct owners to have their vehicles repaired.

17.     The Defendant is liable to the Plaintiffs and all other similarly situated Plaintiffs for the ~~defective design that causes~~ "fuel spit back problems" and because of its negligence, carelessness and other misconduct in initiating inadequate remedial action in 2011 and 2012 to rectify this hazard.  This liability is not predicated upon the assumption of any legal duty that arose in the Bankruptcy Court.

18.     The vehicle models identified below contain safety hazards, which result in the breach of applicable warranties.

19.     The 2005 through 2010 Jeep Wranglers and 2005 through 2008 Dodge Durangos all have, according to the Defendant, and upon information and belief, the same or similar design defect that produces "fuel spit back problems."

20.     The defendant Chrysler has sold 2009 and 2010 Jeep Wranglers after the Bankruptcy closing date that contain a design flaw that produces "fuel spit back problems".  The design flaw in these vehicles is the same or similar to those Wranglers that are the subject of the aforementioned TSB.  This design flaw has caused property damage or the loss of property, as well as the loss of value bargained for by the Plaintiffs.

21.     The aforementioned defect has manifested itself in each of the Plaintiffs' vehicles, causing fuel to spill out while refueling. This spillage causes a monetary loss and it poses a potential health and safety hazard.

22.     In the Bankruptcy proceedings, the defendant Chrysler did assume responsibility for the breach of product warranties (including but not limited to breach of implied warranties of merchantability, implied warranty of fitness for a particular purpose, and violation of other

5

consumer state laws for the marketing of unsafe products) extending back to vehicles sold five years prior to the Bankruptcy Closing date (e.g., 2004 model year vehicles) for products manufactured and sold by its predecessor.

23. The product models for which breach of warranty claims are asserted are identified below.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this action predicated upon CAFA, because the ~~defendant is incorporated in~~ parties are diverse and the ~~State~~ plaintiffs number more than 100 and the claim for damages exceeds $5,000,000.00 exclusive of ~~Delaware.  Defendant Chrysler's registered agent is Corporation Trust Company located at 1209 Orange Street, Wilmington, Delaware, 19801.~~ costs and attorneys fees and interest.

25. The Defendant has marketed and sold Jeep Wranglers and Dodge Durangos in the State of Delaware and the County of New Castle.

## PARTIES

26. Plaintiff Autumn Burton resides in Memphis, Tennessee.  In October, 2008, she purchased and currently owns a 2006 Dodge Durango [VIN 1D4HB48N86F164206].  Plaintiff has in the past and she continues to experience "fuel spit back problems" with this vehicle.  This problem has caused the loss of fuel and it poses a potential health and safety risk.  Plaintiff Burton was given/received express and/or implied warranties when she purchased the Durango.  In January, 2012, Plaintiff Burton received from the defendant Chrysler an extended life time warranty regarding the components at issue.  The defects in her vehicle and resulting "fuel spit-back problems" constitute a breach of warranties as described below.

27. Plaintiff Matthew Cox resides in Westminster, Colorado.  In March, 2011, he purchased and currently owns a 2005 Jeep Wrangler [VIN 1JFA64S25P357114].  Plaintiff has in the past

and he continues to experience "fuel spit back problems" with this vehicle. This problem has caused the loss of fuel and it poses a potential health and safety risk. <u>On March 30, 2011, Plaintiff Cox sent a notice to the National Highway Traffic Safety Administration and/or the defendant Chrysler notifying them of the defect in question.</u> <u>This defect in the product constitutes a breach of applicable warranties as set forth below.</u>

28.  Plaintiff Dan Gulick resides in Penn Yan, New York. In October, 2009, Mr. Gulick purchased and he currently owns a 2005 Jeep Wrangler [VIN 1JFA49S150342567]. Plaintiff has in the past and he continues to experience "fuel spit back problems" with this vehicle. This problem has caused the loss of fuel and it poses a potential health and safety risk. <u>Plaintiff Gulick sent a notice to the National Highway Traffic Safety Administration and/or the defendant Chrysler notifying them of the defect in question.</u> <u>This defect in the product constitutes a breach of applicable warranties as set forth below.</u>

29.  Plaintiff Rodney LaFleur resides in Chicago, Illinois. In 2009, Mr. LaFleur purchased and currently owns a 2005 Jeep Wrangler [VIN 1J4FA44S25P320052]. The Plaintiff has in the past and he continues to experience "fuel spit back problems" with this vehicle. This problem has caused the loss of fuel and it poses a potential health and safety risk. <u>Plaintiff LaFleur sent a notice to the National Highway Traffic Safety Administration and/or the defendant Chrysler notifying them of the defect in question.</u> <u>This defect in the product constitutes a breach of applicable warranties as set forth below.</u>

30.  Plaintiff James Spitler resides in Camden, North Carolina. In 2009, Mr. Spitler purchased and continues to own a 2006 Jeep Wrangler [VIN 1J4FA64SX6P762994]. The Plaintiff has in the past and he continues to experience "fuel spit back problems" with this vehicle. This problem has caused the loss of fuel and it poses a potential health and safety risk. <u>This</u>

defect in the product constitutes a breach of applicable warranties as set forth below. Plaintiff Spitler notified the defendant of this defect before filing this lawsuit.

31. Plaintiff Mike Burke resides in Wesley Chapel, Florida. Mr. Burke purchased and continues to own a 2007 Jeep Wrangler [VIN 1JFA49S46P750210]. The Plaintiff has in the past and he continues to experience "fuel spit back problems" with this vehicle. This problem has caused the loss of fuel and it poses a potential health and safety risk. This vehicle and the parts at issue have a lifetime warranty. This defect constitutes a breach of warranties as described below. The 2007 Wrangler has the same design flaws as the 2008 through 2010 Jeep Wranglers.

32. Plaintiff Eric Malloy resides in Fort Hood, Texas. Mr. Malloy purchased and continues to own a 2005 Dodge Durango [VIN 1J4FA64595P386741]. The Plaintiff has in the past and he continues to experience "fuel spit back problems" with this vehicle. This problem has caused the loss of fuel and it poses a potential health and safety risk. Plaintiff Malloy provided notice to Chrysler of the defects in his vehicle. These defects constitute a breach of applicable warranties as described below.

33. Plaintiff Mike Gasman resides in Appleton, Wisconsin. Mr. Gasman purchased and continues to own a 2005 Jeep Wrangler [VIN 1D4HB58D85F592207]. The Plaintiff has in the past and he continues to experience "fuel spit back problems" with this vehicle. This problem has caused the loss of fuel and it poses a potential health and safety risk. Plaintiff Gasman notified NHTSA/Chrysler of the defects in his vehicle. These defects constitute a breach of applicable warranties as described below.

34. Plaintiff Ryan Gillette resides in Robertsville, Missouri. Mr. Gillette purchased and continues to own a 2005 Jeep Wrangler [VIN 1J4FA39S15P376518]. The Plaintiff has in

the past and he continues to experience "fuel spit back problems" with this vehicle. This problem has caused the loss of fuel and it poses a potential health and safety risk. <u>The defendant Chrysler was fully aware of the defect in this model vehicle. These defects constitute a breach of applicable warranties as described below.</u>

35. Defendant Chrysler Group LLC is a limited liability company incorporated in the ~~state~~ State of Delaware.

## CLASS ACTION ALLEGATIONS

36. This action seeks to establish a nationwide class against the named Defendant for negligence and <u>breaches of warranties</u> ~~other wrongful conduct~~ alleged in this Complaint.

37. Certification under Rule 23(b) of the ~~Del. Super. Ct. R. Civ. P.~~ <u>Federal Rules of Civil Procedure</u> is proper.

38. The Plaintiffs and the Class seek <u>injunctive relief, and</u> compensatory <u>and incidental</u> damages in ~~the~~ <u>an</u> amount determined that is <u>for</u> the cost/value of the repair and replacement of <u>necessary components in</u> each Jeep Wrangler and Dodge Durango, <u>and any loss of the use of the vehicle, and if the condition cannot be rectified then a loss of the value of the vehicle due to the continuing loss of fuel</u> for each class member for the Defendant's wrongful conduct as alleged herein.

39. Plaintiffs seek certification of a nationwide class against the named Defendant with the class consisting of the following:

   a. "All current owners of Jeep Wranglers, model years 2005 through 2010 which include the design features responsible for the "fuel spit back problem" and which have not been <u>corrected</u> ~~recalled~~ or repaired in the past".

b. "All current owners of Dodge Durangos, model years 2005 through 2008 which include the design features responsible for the "fuel spit back problem" and which have not been <u>corrected</u> ~~recalled~~ or repaired in the past."

40. The class is further defined as follows: "The person does not have a pending action against the Defendant, on the Date of the Court's certification order, any individual action where in the recovery sought is based in whole or in part on the type of claims asserted herein, or has previously had his or her vehicle recalled or otherwise repaired to correct the safety hazard described herein." <u>Further, "the class members do not include those who own vehicles sold before the Bankrutpcy Sale Order date that are not subject to the assumption of warranty liabilities set forth in Paragraph 19 of the Sale Order".</u>

41. <u>The class is further defined into the following sub-classes:</u>

a. <u>All Jeep Wrangler products marketed by the defendant after the Closing Date of the Bankruptcy and which contain the defect that has or will cause the "fuel spit back problem" and have not been repaired (e.g., 2009 and 2010 model year vehicles).</u>

b. <u>All Jeep Wrangler products containing the defect in question and to which warranties described below were existent on the Closing Date of the Bankruptcy (eg., 2005 to 2009 model year vehicles), exclusive of those referenced in ¶ 42 a.)</u>

c. <u>All Dodge Durango products containing the defect described and to which warranties described below were existent on the Closing date of the Bankruptcy (2005 to 2009 models), exclusive of those 2006-2008 models that were the subject of the aforementioned TSB.</u>

10

d. All Dodge Durango vehicles that obtained a lifetime warranty via the January 20, 2012 letter issued by the defendant and which contain the defect described and which have not been remedied.

e. All 2007-2008 Jeep Wranglers that obtained a lifetime warranty via the February 2011 TSB issued by the defendant to repair these model vehicles which contain defects causing the "fuel spit-back problem" and which have not been remedied.

f. All Dodge Durango 2005 to 2008 model years that include the same or similar fuel system which has led to the "fuel spit-back problem" and which have not been repaired and which no longer have viable warranties, but have the defect in question, exclusive of those models that are the subject of the aforementioned TSB;

g. All Jeep Wranglers 2005 to 2010 model years that include the same or similar fuel system which has led to the "fuel spit-back problem" and which have not been repaired and which no longer have viable warranties, but have the defect in question, exclusive of those model years that are the subject of the aforementioned TSB.

42.  Rule 23(a) and Rule 23(b), requirements are met because:

a. Plaintiffs estimate that the proposed class ~~consists~~ and sub-classes consist of hundreds of thousands of Jeep Wrangler and Dodge Durango owners throughout the United States, and joinder of all members in this action is impracticable.

b. There are questions of law and fact common to the class.

c. The common questions predominate over any questions affecting only individual members.

d. The named Plaintiffs are adequate representatives of the class and sub-classes. The claims of the Plaintiffs as class representative are typical of those of the class

members in that they were subjected to the same unlawful treatment, and the named

Plaintiffs suffered the same type harm as suffered by other members of the class.

The class representatives will vigorously pursue the claims on behalf of the class,

and will fairly and adequately protect the interests of the class. Plaintiffs' counsel is

experienced and professionally able to properly represent the class.

e.   The claims of the representative parties are typical of the claims of each member of

the class, and are based on or arise out of similar facts constituting the wrongful

conduct of the Defendant.

f.   A class action is far superior to any other available method for the fair and efficient

adjudication of this controversy.

43.   Prerequisites to a Class Action – ~~Del~~ Fed. Civ. P. 23(a) and Fed. R. Civ. P.23(b)(2).  The

prerequisites to maintaining this action as a Class action are satisfied in this case as alleged

below.

a.   Numerosity, on information and belief, there are hundreds of thousands of Jeep

Wranglers and Dodge Durangos with the aforementioned safety defect that has not

been repaired.

b.   Because Defendant has exclusive control of such information, the Plaintiffs reserve

the right to amend their allegations following completion of discovery.  Given the

scope of the Defendant's business, it is clear that the members of the Class are so

numerous that joinder is impracticable and the disposition of their claims in a Class

action will provide substantial benefits to the parties and the Court.

c.   Commonality – Since the Plaintiffs and other members of the Class all own 2005

through 2010 Jeep Wranglers or 2005 through 2008 Dodge Durangos that include

the same or similar fuel system design, and they all suffer from the same hazardous "fuel spit back problem," there are questions of law and fact common to the Class. Such common questions of law and fact predominate over any individual questions affecting Class members.

d.  Typicality – Named Plaintiffs have the same interests in this matter as all the other members of the Class, and their claims are typical of all members of the Class. The named Plaintiffs' claims are typical of the claims of all Class members because the claims originate from the same design features.

e.  Adequacy of Representation – Plaintiffs' claims are aligned with the interests of the absent members of the Class such that the Class claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class. Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in the prosecution and successful resolution of Class litigation. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class. Plaintiffs' interests are antagonistic to the interests of the Defendant and Plaintiffs will vigorously pursue the claims of the Class.

f.  Class Actions Maintainable –Class action status is also appropriate because the common question of law and fact identified above predominate over questions affecting only individual members. A Class action is superior to other available methods for the fair and efficient adjudication of this litigation. It is desirable to concentrate the litigation of the claims in this Court. Plaintiffs and their counsel do not anticipate encountering any unique difficulties in the management of this action as a Class action.

g.  Injunctive relief is necessitated because of the defendant's refusal to act in accordance with the allegations set forth herein.

## COUNT I ~~: NEGLIGENCE~~

### NEGLIGENCE REGARDING POST-CLOSING DATE PRODUCTS.

44.  Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

45.  The Defendant has in the past acknowledged the inherent dangers associated with "fuel spit back" in its Jeep Wranglers and Dodge Durangos.

46.  The Defendant accepted its duty to rectify the "fuel spit back" problem ~~on several occasions in the past by conducting safety recalls.~~ by issuing Technical Service Bulletins.

47.  On February 11, 2011, the Defendant ~~again acknowledged the hazards associated with "fuel spit back" and~~ initiated a silent recall known as a Technical Service Bulletin (TSB) for a limited number of Jeep Wranglers ~~that were at that time past the warranty period for repairs and none of the relevant Dodge Durangos.~~, but that action did not include Wranglers sold after the Closing date and which contain the defect in question.  These 2009-2010 products contain the defect in question and the failure to remedy this defect in those vehicles constitutes actionable negligence.

48.  The defendant Chrysler's action on February 11, 2011 was a careless and negligent effort to rectify known hazards in Jeep Wrangler ~~and Dodge Durango model~~ vehicles.

49.  The defendant's action on February 11, 2011 failed to rectify known defects in Jeep Wranglers it sold in calendar years 2009 and 2010.  The TSB issued on February 11, 2011 did not provide reasonable notice to the owners of these vehicles.  These products remain unsafe and/or have defects constituting a breach of warranty as described below.

14

50. As a result of this negligence, the defendant is liable to those owners of Jeep Wranglers sold in 2009 and 2010 by the defendant and containing the defect in question and which have not been repaired.

## COUNT II

## NEGLIGENCE REGARDING JEEP WRANGLERS THAT THE DEFENDANT CHOSE TO REPAIR BUT FAILED TO DO SO CAREFULLY

51. The TSB issued by the defendant on February 11, 2011 was intended to repair some Jeep Wrangler model vehicles (2007-2008) that were sold by its predecessor. In doing so, the defendant assumed a duty toward the owners of these vehicles. Nevertheless, the defendant's action did not reasonably notify the ~~public~~ owners of the aforementioned Wranglers of the "fuel spit back problem" nor did it reasonably and carefully advise that the repair of this problem should promptly take place.

52. The Defendant's ~~actions~~ action on February 11, 2011 occurred because of ~~its~~ a duty to rectify known dangers associated with these vehicles.

53. The Defendant was negligent in its ~~vehicles~~ voluntary undertaking to repair the Jeep Wrangler models in question.

54. ~~The TSB was~~ The Defendant's negligent undertaking has failed to rectify a known defect and these Jeep Wranglers remain defective as described above. This conduct has caused the harm as described above.

## COUNT III

## NEGLIGENCE RELATED TO A GRATUITOUS UNDERTAKING AS TO ALL DODGE DURANGOS SUBJECT TO THE TECHNICAL SERVICE BULLETIN ISSUED IN JANUARY 20, 2012.

55. The Plaintiffs incorporate by reference all of the foregoing paragraphs as if they were set forth at length herein.

15

56.     On January 20, 2012, the defendant issued a TSB and then on January 25, 2012, the defendant sent a letter to the owners of Dodge Durangos, model years 2006 to 2008, advising that these vehicles may require the replacement of portions of their fuel system because of a defect causing "fuel spit-back problems", and providing these owners with a life-time warranty to obtain certain repairs for this defect.  That letter, which constituted an admission, did not provide for appropriate and necessary measures to remedy the defect or provide for the reimbursement of costs associated with this breach.

57.     Further this notification in January, 2012 was an inadequate remedial measure, constituting negligence on the part of the defendant in failing to take appropriate action to correct flaws in these vehicles.

58.     These omissions constitute negligence which is the proximate cause of damages suffered by the owners of these Dodge Durangos.

## COUNT IV

### NEGLIGENCE AS TO ALL APPLICABLE JEEP WRANGLERS SUBJECT TO THE FEBRUARY 11, 2011 TECHNICAL SERVICE BULLETIN

59.     The plaintiffs incorporate by reference all the paragraphs set forth above as though they were fully set forth herein.

60.     On February 11, 2011, the defendant issued a TSB extending to the owners of 2007-2008 Jeep Wranglers a lifetime warranty to remedy the defect causing fuel spit back, but it failed to reasonably and effectively notify all owners or to provide for effective remedies of this safety defect.  This TSB was inadequate to remedy the defect and constitutes negligence on the part of the defendant in failing to take appropriate action to correct flaws in these vehicles.

16

61.     Further this TSB was an inadequate remedial measure, constituting negligence on the part of the defendant in failing to take appropriate action to correct flaws in these vehicles.

62.     That TSB, which constituted an admission, did not provide for appropriate and necessary measures to remedy the defect or provide for the reimbursement of costs associated with this breach.

63.     These omissions constitute negligence and the proximate cause of damages suffered by the owners of these Jeep Wranglers.

## COUNT V

## GENERAL NEGLIGENCE CLAIM BASED UPON THE DEFENDANT'S GRATUITOUS/VOLUNTARY EXTENSION OF WARRANTIES TO SOME BUT NOT ALL APPLICABLE JEEP WRANGLERS AND DODGE DURANGOS

64.     The Plaintiffs incorporate by reference herein all of the foregoing relevant allegations as if they were set forth at length herein.

65.     The several referenced TSBs were limited in scope and did not ~~attempt to~~ notify all owners of the inherent ~~flaw~~ flaws in the fuel system of all Jeep Wranglers marketed between 2005 and 2010 and Dodge Durangos marketed between 2005 and 2008.

66.     This Count of negligence relates to those Jeep Wrangler and Dodge Durango model years that are not the subject of the Technical Service bulletins issued by the defendant on February 11, 2011 and January 20, 2012.

67.     Because the Defendant did, on February 11, 2011 and January 20, 2012, gratuitously elect to rectify a hazardous condition ~~in certain model Jeep Wranglers~~ that it knew existed in some but not all 2005 through 2010 Jeep Wranglers and 2005 through 2008 Dodge Durangos, ~~its failure to carefully undertake this task~~ this omission constitutes actionable negligence and

~~established~~ establishes the accrual of a cause of action ~~i.e., the running of the negligence statute of limitations as to these vehicles began on February 11, 2011.~~

68. ~~The 2005 through 2010 Jeep Wranglers and 2005 through 2008 Dodge Durangos all have, according to the Defendant and upon information and belief, the same design defect that produces "fuel spit back problems." This defect has manifested itself by causing fuel to spill out while refueling. This spillage causes a monetary loss and it continues to pose a potential health and safety hazard.~~ The Defendant has, in its prior action, acknowledged the appropriate repairs that are needed to eliminate the defect and the "fuel spit back problem."

69. ~~The Defendant assumed~~The Defendant has a duty to ~~the owners of Jeep Wranglers and Dodge Durangos to~~ keep abreast of performance problems that arise in association with the use of <u>all relevant</u> Jeep Wranglers and Dodge Durangos.

70. The Defendant assumed a duty to take necessary action to repair or otherwise correct flaws that ~~materialize in its vehicles~~ <u>have materialized in the model year Jeep Wranglers and Dodge Durangos identified above, but then it negligently selected to limit its extension of warranties and limit its notification to the owners of these vehicle models to obtain remedial repairs to eliminate the defect in question</u>.

71. The Defendant was generally careless and negligent in breaching the duty of due care it ~~assumed for~~ <u>owed to</u> the ~~benefit~~ <u>owners</u> of ~~the Plaintiffs and class members,~~ <u>all relevant vehicle models</u> both generally and in the following particular respects:

   a. Failing to properly and adequately warn of the hazards associated with "fuel spit back <u>problems;</u>"

b. Failing to conduct a full and complete repair of all Jeep Wranglers and Dodge Durangos ~~that~~ which were designed and included the same features that are the cause of "fuel spit back problems;"

c. Conducting a silent recall without alerting all owners of 2005 to 2010 Jeep Wranglers and all owners of 2005 through 2008 Dodge Durangos of the "fuel spit back problems" and failing to provide corrective action for all such vehicles;

d. Conducting an inadequate and incomplete notification to owners of the need to repair all 2005 to 2010 Jeep Wranglers and 2005 through 2008 Dodge Durangos to eliminate the "fuel spit back problem;"

e. Failing to carefully carry out proper and reasonable remedial remedies to eliminate the hazards and safety issues and loss of fuel associated with "fuel spit back problems" in the 2005 through 2010 Jeep Wranglers and 2005 through 2008 Dodge Durangos; and,

f. Other acts of negligence and carelessness that may materialize during the pendency of this action.

## COUNT VI

## BREACH OF WARRANTIES REGARDING ALL APPLICABLE VEHICLES

72. The Plaintiffs incorporate by reference all the foregoing paragraphs as set forth herein at length.

73. The defendant Chrysler assumed liabilities associated with claims for breach of express and implied warranties for model year 2005 through 2009 Jeep Wranglers and 2005 through 2008 Dodge Durangos except for those liabilities associated with personal injuries or other damage claims that are not asserted herein.

19

74.  The vehicles in question were sold and delivered with implied warranties of merchantability.

75.  As described below, these vehicles have defects that constitute material breaches of these implied warranties of merchantability.

76.  The defendant has received reasonable notice of the breach of warranties described herein.

77.  The vehicles in question were sold with implied warranties of merchantability that included, but are not limited to,

    a.  a promise that the vehicle will operate safely;

    b.  a promise that it can be used in a safe condition;

    c.  a promise that it will be free of defects; and,

    d.  a promise that the vehicle's components will function as intended.

78.  The vehicles in question contain defects as described above and failed to safely store fuel for usage as intended by its design.

79.  The "fuel spit-back problems" constitute a breach of implied warranties of merchantability.

80.  This breach has caused damages both direct and indirect including consequential damages.

81.  The vehicle models in question were sold with an implied warranty of fitness for a particular purpose.

82.  As described below, these vehicles have defects that constitute material breaches of this implied warranty of fitness of a particular purpose.

83.  The defendant has received reasonable notice of the breach of warranty described herein.

84.  The vehicles in question were sold with implied warranty of fitness for a particular purpose that included, but is not limited to,

    a.  a promise that the vehicle will operate safely;

    b.  a promise that it can be used in a safe condition;

    c.   a promise that it will be free of defects; and,

    d.   a promise that the vehicle's fuel system components would function as intended and provide a safe storage facility for fuel.

85.   The vehicles in question contain defects as described above and failed to safely store fuel for usage as intended by its design.

86.   The "fuel spit-back problems" constitute a breach of implied warranty of fairness for a particular purpose.

87.   This breach has caused damages both direct and indirect including consequential damages.

## COUNT VII

## BREACH OF WARRANTIES REGARDING JEEP WRANGLERS 2009-2010 MODEL YEARS

88.   The plaintiffs incorporate by reference here all the foregoing paragraphs as if they were set forth herein.

89.   The vehicles in question were sold and delivered with implied warranties of merchantability.

90.   As described herein, these vehicles have defects that constitute material breaches of these implied warranties of merchantability.

91.   The defendant has received reasonable notice of the breach of warranties described herein.

92.   The vehicles in question were sold with implied warranties of merchantability that included, but are not limited to,

    a.   a promise that the vehicle will operate safely;

    b.   a promise that it can be used in a safe condition;

    c.   a promise that it will be free of defects; and,

    d.   a promise that the vehicle's components will function as intended.

93. The vehicles in question contain defects as described above and failed to safely store fuel for usage as intended by its design.

94. The "fuel spit-back problems" constitute a breach of implied warranties of merchantability.

95. This breach has caused damages both direct and indirect including consequential damages.

96. The vehicle models in question were sold with an implied warranty of fitness for a particular purpose.

97. As described below, these vehicles have defects that constitute material breaches of this implied warranty of fitness of a particular purpose, and this breach accrued within less than 4 years before the date this action was commenced.

98. The defendant has received reasonable notice of the breach of warranty described herein.

99. The vehicles in question were sold with implied warranty of fitness for a particular purpose that included, but is not limited to,

    a. a promise that the vehicle will operate safely;

    b. a promise that it can be used in a safe condition;

    c. a promise that it will be free of defects; and,

    d. a promise that the vehicle's fuel system components would function as intended and provide a safe storage facility for fuel.

100. The vehicles in question contain defects as described above and failed to safely store fuel for usage as intended by its design.

101. The "fuel spit-back problems" constitute a breach of implied warranty of fitness for a particular purpose.

102. This breach has caused damages both direct and indirect including consequential damages.

**COUNT VIII**

**BREACH OF WARRANTIES REGARDING JEEP WRANGLERS MODEL YEARS 2007-2008 AND DODGE DURANGOS MODEL YEARS 2006-2008**

103. Plaintiffs incorporate by reference all the paragraphs set forth above as if they were set forth at length herein.

104. The vehicles in question were sold and delivered with implied warranties of merchantability.

105. As described herein, these vehicles have defects that constitute material breaches of these implied warranties of merchantability.

106. The defendant has received reasonable notice of the breach of warranties described herein.

107. The vehicles in question were sold with implied warranties of merchantability that included, but are not limited to,

    a. a promise that the vehicle will operate safely;

    b. a promise that it can be used in a safe condition;

    c. a promise that it will be free of defects; and,

    d. a promise that the vehicle's components will function as intended.

108. The vehicles in question contain defects as described above and failed to safely store fuel for usage as intended by its design.

109. The "fuel spit-back problems" constitute a breach of implied warranties of merchantability.

110. This breach has caused damages both direct and indirect including consequential damages.

111. The vehicle models in question were sold with an implied warranty of fitness for a particular purpose.

112. As described below, these vehicles have defects that constitute material breaches of this implied warranty of fitness of a particular purpose, and this breach accrued within less than 4 years before the date this action was commenced.

113. The defendant has received reasonable notice of the breach of warranties described herein.

114. The vehicles in question were sold with implied warranties of fitness for a particular purpose that included, but is not limited to,

    a.    a promise that the vehicle will operate safely;

    b.    a promise that it can be used in a safe condition;

    c.    a promise that it will be free of defects; and,

    d.    a promise that the vehicle's fuel system components would function as intended and provide a safe storage facility for fuel.

115. The vehicles in question contain defects as described above and failed to safely store fuel for usage as intended by its design.

116. The "fuel spit-back problems" constitute a breach of implied warranty of fitness for a particular purpose.

**DAMAGES**

117. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

118. The Plaintiffs individually and the Class members have in the past and/or will in the future suffer the loss of fuel and/or be exposed to potential health and safety hazards as a result of the Defendant's careless and negligent decision to conduct a woefully inadequate offer to repair a limited number of Jeep Wranglers and Dodge Durangos that all have the design flaws that cause "fuel spit-back problems."

119. Plaintiffs individually and the Class members have suffered damages because of the breach of warranties described above and they are entitled to recover damages recognized at law including repair and replacement costs plus consequential damages.

24

120. The Plaintiffs individually and the Class members are each entitled to the repair and replacement of all component parts that cause the "fuel spit back problems". These repairs and replacements must be made at the expense of the Defendant.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs individually and on behalf of the proposed Class, pray for judgment as follows:

a. Certification of the proposed Class pursuant to the Delaware Rules of Civil Procedure Rule 23(a), (b)(2) and (b)(3);

b. Designation of Plaintiffs as representatives of the proposed Class and designation of Plaintiffs' counsel as Class counsel;

c. An award of compensatory damages, the amount of which is to be determined at trial;

d. An award to the Plaintiffs and Class prejudgment interest, costs and attorneys fees;

e. An award to the Plaintiffs and Class of such other and further relief as the Court deems just and proper.

*/s/ Bartholomew J. Dalton*
Bartholomew J. Dalton (ID #808)
Laura J. Simon (ID #3644)
DALTON & ASSOCIATES, P.A.
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE 19806
(302) 652-2050
bdalton@bdaltonlaw.com
*Attorneys for Plaintiffs*

*Of Counsel:*
Larry Coben, Esquire

ANAPOL SCHWARTZ
8700 E Vista Bonita Drive
Scottsdale, AZ 85255
(480) 515-4745

Patrick Ardis, Esquire
ARDIS WOLF, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
(901) 763-3336

DATED:  August 21, 2012

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
AUTUMN BURTON, MATTHEW COX, RODNEY LaFLEUR, DAN GULICK, JAMES SPITLER, MIKE BURKE, MIKE GASMAN, ERIC MALLOY, RYAN GILLETTE, and all others similarly situated.

**DEFENDANTS**
CHRYSLER GROUP LLC, a Delaware Corporation

**(b)** County of Residence of First Listed Plaintiff  Shelby County, TN
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Dalton & Associates, Laura J. Simon and Bartholomew J. Dalton, 1106 West 10th Street, Wilmington, DE  19806

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability ☒ 365 Personal Injury - | of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Injury Product | ☐ 650 Airline Regs. | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability Liability | ☐ 660 Occupational | | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Class Action Product Liability filed in Superior Court, removed by Defendant.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE                    DOCKET NUMBER

DATE
08/21/2012

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

13-01109-smb    Doc 25-2    Filed 03/21/13    Entered 03/21/13 19:37:36    Exhibit B
Pg 47 of 93

# Exhibit B

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AUTUMN BURTON, MATTHEW COX, DAN GULICK RODNEY LaFLEUR, AND JAMES SPITLER, individually and in their representative capacity for all other similarly situated, | : : : : : | CLASS ACTION |
| Plaintiffs, | : : | C.A. No. 12-cv-00005-LPS |
| v. | : : | |
| CHRYSLER GROUP LLC, | : : | |
| Defendant. | : : : | |

## [PROPOSED] ORDER TO TRANSFER

Before the Court is Defendant Chrysler Group LLC's Motion to Transfer. Having reviewed the motion and related briefing and the arguments of counsel at the August 20, 2012, hearing, the Court finds good cause exists to grant the motion. Accordingly, IT IS HEREBY ORDERED THAT:

1.      Defendant Chrysler Group LLC's Motion to Transfer is GRANTED, and this matter is hereby transferred to the United States District Court for the Southern District of New York, for referral to the bankruptcy court.

2.      Chrysler Group LLC's time to respond to Plaintiffs' Second Amended Complaint filed on August 21, 2012, is hereby stayed. After transfer, the parties shall meet and confer with respect to a briefing schedule on the issue of whether the claims asserted in Plaintiffs' Second Amended Complaint are barred by the Sale Order, and shall work toward an agreement on the

timing for briefing. [Such agreement shall be made within twenty (20) days of when this action is transferred].[1]

3. If the bankruptcy court determines that any of the claims asserted in Plaintiffs' Second Amended Complaint are not barred by the Sale Order, Chrysler Group LLC shall abide by its representations made in this Court and stipulate that any remaining claims be remanded back to this Court for further proceedings.

4. No later than fourteen (14) days after this case is referred back to this Court, the parties shall provide the Court with a Joint Status Report. The Joint Status Report shall provide the timing of the filing of Plaintiffs' Third Amended Complaint and Chrysler Group LLC's response to the Third Amended Complaint.

5. Plaintiffs' Third Amended Complaint shall conform to the directions given by the Court at the August 20, 2012, hearing as well as any order of the bankruptcy court.

Date: _August 28, 2012_  _____
United States District Judge

---

[1] Chrysler Group's position: Plaintiffs demanded that this Proposed Order contain the bracketed language. Chrysler Group believes the bracketed language is not proper because counsel for Chrysler Group in this Court will not be representing Chrysler Group in the bankruptcy court. Similarly, it is uncertain who will be representing Plaintiffs in the bankruptcy court. And, obviously, the parties cannot control the timing of the bankruptcy court's docket. Accordingly, while Chrysler Group is willing to agree to a briefing schedule after transfer, it believes that the timing of a meet-and-confer on briefing, and the ultimate briefing scheduling, should be left to the bankruptcy court and the counsel of record in that Court. Plaintiffs' position: The Plaintiffs disagree with the inclusion of this editorial comment and feel certain that providing the parties with a prompt time period to submit a scheduling order to the Bankruptcy Court is a feature that this Honorable Court would consider appropriate.

# Exhibit C



**NUMBER:** 14-001-11

**GROUP:** Fuel System

**DATE:** February 11, 2011

*This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of Chrysler Group LLC.*

### SUBJECT:
Fuel Spit Back During Refueling (Unlimited Time And Mileage Warranty Extension)

### OVERVIEW:
This bulletin involves replacing the fuel tank if the condition occurs.

### MODELS:

| 2007 - 2008 | (JK) | Wrangler |
|---|---|---|

**NOTE: This Extended Warranty Bulletin applies to vehicles equipped with a 3.8L engine (sales code EGT) built between March 1, 2007 (MDH0301XX) and March 31, 2008 (MDH 0331XX).**

### SYMPTOM/CONDITION:
Some customers may experience a fuel spit back condition during a refueling event.

### DIAGNOSIS:
If the customer experiences the symptom/condition, proceed to the repair procedure.

### PARTS REQUIRED:

| Qty. | Part No. | Description |
|---|---|---|
| AR (1) | 52059729AG | Tank, Fuel (23 gallon) |
| AR (1) | 52059718AH | Tank, Fuel (18.6 gallon) |
| (1) | 55366298AA | O-ring, Fuel Pump and Level Unit |

### REPAIR PROCEDURE:
1. Replace the fuel tank, following the procedures in available in DealerCONNECT > TechCONNECT Service Info > 14 - Fuel System> Fuel Delivery > Tank, Fuel removal and installation procedures.

**NOTE: Be sure to install the new Fuel Pump and Level Unit O-ring.**



14-001-11                                        -2-

**POLICY:**
Reimbursable within the provisions of the warranty.

**NOTE: Vehicles included in this Service Bulletin have a lifetime coverage - Unlimited Time and Mileage warranty for this repair. See Warranty Bulletins; U.S. D-11-05, Canada SAB-2011-03 or International ID-11-01 for details associated with the extended warranty.**

**TIME ALLOWANCE:**

| Labor Operation No: | Description | Amount |
|---|---|---|
| 14-60-01-90 | Tank, Fuel Replace (C) | 1.1 Hrs. |

**FAILURE CODE:**

| ZZ | Service Action |
|---|---|

# Exhibit D

# ODI RESUME

OFFICE OF DEFECTS INVESTIGATION

**NHTSA**

*Authentic US Government information. National Highway Traffic Safety Administration uses a digital certificate to ensure the content has remained unchanged*

**U.S. Department of Transportation**

**National Highway Traffic Safety Administration**

| | |
|---|---|
| **Investigation:** PE 10-032 | |
| **Date Opened:** 08/23/2010 | **Date Closed:** 02/16/2011 |
| **Investigator:** Michael Lee | **Reviewer:** Scott Yon |
| **Approver:** Frank Borris | |
| **Subject:** Fuel Spill During Refueling | |

## MANUFACTURER & PRODUCT INFORMATION

| | |
|---|---|
| **Manufacturer:** | CHRYSLER GROUP LLC |
| **Products:** | 2007-2008 Jeep Wrangler |
| **Population:** | 223,036 |
| **Problem Description:** | Fuel spills out or spits back from the filler port during refueling. |

## FAILURE REPORT SUMMARY

| | ODI | Manufacturer | Total |
|---|---|---|---|
| **Complaints:** | 473 | 142 | 615 |
| **Crashes/Fires:** | 0 | 0 | 0 |
| **Injury Incidents:** | 0 | 0 | 0 |
| **Number of Injuries:** | 3 | 0 | 3 |
| **Fatality Incidents:** | 0 | 0 | 0 |
| **Other*:** | 0 | 895 | 895 |

**\*Description of Other:** Warranty Claims

## ACTION / SUMMARY INFORMATION

**Action:** Close this Preliminary Evaluation.

**Summary:**

ODI found the rate of warranty claims related to fuel spit back on the subject vehicles is lower than other vehicles previously recalled to correct defects related to fuel spit back. Although the rate of complaints reported to the agency on the subject vehicles is higher than or similar to the rates experienced in previous investigations where safety recalls were conducted, ODI suspects that the NHTSA safety complaints submitted by subject vehicles owners may have been influenced by internet related publicity both before and during this investigation.

A safety-related defect trend has not been identified at this time and further use of agency resources does not appear to be warranted. Accordingly, this investigation is closed. The closing of this investigation does not constitute a finding by NHTSA that no safety-related defect exists. The agency will monitor the issue and reserves the right to take future action if warranted by the circumstances. See attached report for additional information.

In addition, Chrysler is initiating a lifetime warranty program, at no cost to the consumer, to address the fuel spit back problem in approximately 135,000 model year 2007-2008 Jeep Wrangler vehicles built from March 1, 2007 to March 31, 2008. Chrysler will notify all affected vehicle owners of this action. Consumers should refer to the warranty and service bulletins and sample owner notification letter available in the investigative file. The vehicle build date can be found on the certification label located on the driver door or door jamb.

**PE10-032**                                                              Page 2 of 2

<u>Additional Information:</u>

The complaints allege that while refueling the vehicle, fuel can spill out or spit back from the filler port. Some of the complaints also allege the fuel can splash on the person fueling the vehicle. Three complaints reported minor injuries when fuel got in the eyes causing irritation or when fuel splashed on the foot causing a "gas burn," a form of skin irritation.

Chrysler states the fuel tank's inlet check valve, which is designed to close at the completion of refueling process, can stick in the open position and allow fuel to spit back from the filler port. According to Chrysler, testing showed the use of fuels with ethanol content greater than that found in E10 (10% ethanol) fuel can cause the inlet check valve's poppet to expand resulting in inadequate clearance between the valve's poppet and housing. According to Chrysler, the subject vehicles are designed for fuels such as E10 or regular unleaded and not for flexible fuel E85 (85% ethanol) or other ethanol blends. The types of fuel that are being used in the vehicles experiencing fuel spit back conditions in the field are not known.

Chrysler did not identify any specific root cause of fuel spit back nor any relevant design or manufacturing issues on model year 2005 through 2010 Jeep Wrangler vehicles. Nevertheless, ODI has identified a subset of the Wrangler vehicles – approximately 135,000 vehicles built between March 2007 and March 2008 – having higher rates of complaints and warranty claims than the model year 2007-2008 Wranglers built outside of the production period, as well as other model year Wranglers (2005-2006 and 2009-2010). ODI found the warranty claim rate of the suspect population is about 0.5 percent of vehicles, or a time exposure-adjusted rate of less than 0.2 percent per year, which is lower than the warranty rates experienced in previous investigations where safety recalls were conducted to correct defects related to fuel spit back.

NHTSA has received a high number of complaints (473) on model year 2007-2008 Jeep Wrangler vehicles. Significant reporting of complaints began on October 11, 2009 – the date that a Wrangler owner posted the internet link to the agency's safety complaint form on an internet forum (jk-forum.com), titled "The Ultimate Jeep JK Wrangler Bulletin Board." The complaint link was posted with a message urging other owners to file complaints with NHTSA. Several other Wrangler owners reposted the complaint link with similar messages. ODI found that many owners filed the complaints after seeing the internet messages. ODI believes the increased reporting of the complaints is the result of the internet related publicity, making the number of complaints artificially high.

# Exhibit E

 **SERVICE BULLETIN**

*NUMBER:*  14-001-12

*GROUP:*  Fuel System

*DATE:*  January 20, 2012

This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of Chrysler Group LLC.

**SUBJECT:**
Fuel Spit Back During Refueling Due To Faulty Inlet Check Valve X39 (Unlimited Time And Mileage Warranty Extension)

**OVERVIEW:**
This bulletin involves replacing the fuel filler tube if the condition occurs.

**MODELS:**

| 2006 - 2008 | (HB) | Durango |
| 2007 - 2008 | (HG) | Aspen |

**NOTE: This Extended Warranty Bulletin applies to vehicles equipped with a naturally aspirated gasoline engines.**

**SYMPTOM/CONDITION:**
Some customers may experience a fuel spit back condition during a refueling event.

**DIAGNOSIS:**
If the customer experiences the symptom/condition, proceed to the repair procedure.

**PARTS REQUIRED:**

| Qty. | Part No. | Description |
|------|----------|-------------|
| AR (1) | CNNZX390AA | Tube, Fuel Filler |
| (4) | 6500911 | Rivet, Splash Shield Attaching |

**REPAIR PROCEDURE:**
1. Hoist vehicle.
2. Remove Left rear wheel.
3. Remove the left quarter panel splash shield. There are 4 plastic retaining rivets.

**CAUTION: Protect Paint and Quarter panel medal during removal and installation.**

4. Replace the fuel filler tube, Following the detailed procedures found in DealerCONNECT>TechCONNECT Service Info > 14 - Fuel System> Fuel Delivery > Tube, Fuel Filler removal and installation procedures.
5. Install the left quarter panel splash shield. There are 4 plastic retaining rivets.
6. Install left rear wheel.

14-001-12                          -2-

**POLICY:**
Reimbursable within the provisions of the warranty.

**NOTE: Vehicles included in this Service Bulletin have a lifetime coverage - Unlimited
Time and Mileage warranty for this repair. See Warranty Bulletins; U.S.
D-12-07, Canada SAB 2012-03, International ID-12-02 or Mexico BG-01-12 for
details associated with the extended warranty.**

**TIME ALLOWANCE:**

| Labor Operation No: | Description | Amount |
|---|---|---|
| 14-60-15-92 | Tube, Fuel Filler Replace (C)<br>(Skill Level = B; Training Level = 3) | 0.6 Hrs. |

**FAILURE CODE:**

| ZZ | Service Action |
|---|---|

# Exhibit F

# Printed from AutoWeek.com

# Chrysler statement from Chairman and CEO Bob Nardelli

12:44 pm, March 30, 2009

Today marks an important milestone for Chrysler LLC. We are encouraged by the commitments of the Administration, U.S. Treasury and President's Auto Task Force to the American automobile industry and Chrysler's viability, with a Fiat alliance.

We are pleased that Chrysler, Fiat and Cerberus have reached agreement on a global alliance, supported by the U.S. Treasury. Chrysler has consistently said that the alliance with Fiat enhances its business model that expands its global competitiveness. We appreciate the willingness of the Task Force, along with industry and financial experts, to consult closely with us in order to achieve this significant step.

By providing Chrysler with product and platforms, technology cooperation and global distribution, Fiat strengthens Chrysler's ability to create and preserve U.S. jobs; gives U.S. consumers more choices for environmentally advanced vehicles; gives its dealers more of the products they need to be successful; helps stabilize the supplier base; and allows Chrysler to pay back government loans sooner.

Chrysler has had a series of very constructive discussions since our plan was submitted February 17, including weekly face-to-face meetings with the Task Force. We have been impressed by their speed, diligence, good faith and strong grasp of the difficult issues our industry faces in this financial crisis. This is evidenced by the U.S. government's initiatives to support consumer warranties and suppliers, as well as their appointment of Dr. Edward Montgomery, Director of Auto Recovery.

I want to personally assure all of our customers, dealers, suppliers and employees that Chrysler will operate 'business as usual' over the next 30 days. While we recognize that we still have substantial hurdles to resolve, Chrysler is committed to working closely with Fiat, the Administration, U.S. Treasury and the Task Force to secure the support of necessary stakeholders. If successful, the government will consider investing up to the additional $6 billion requested by Chrysler to help this partnership succeed.

PRINTED FROM: http://www.autoweek.com/apps/pbcs.dll/article?AID=/20090330/FREE/903309983&template=printart

Entire contents ©2013 Crain Communications, Inc.

# Exhibit G

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50002

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


CHRYSLER LLC, et al.



              Debtors.

- - - - - - - - - - - - - - - - - - - -x



          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          May 29, 2009

          9:03 AM



B E F O R E:

HON. ARTHUR J. GONZALEZ

U.S. BANKRUPTCY JUDGE

2

1

2      HEARING re Motion of Debtors and Debtors in Possession,

3      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code

4      and Bankruptcy Rules 2002, 6004 and 6006, for (I) An Order

5      (A)Approving Bidding Procedures and Bidder Protections for the

6      Sale of Substantially All of the Debtors' Assets; and

7      (B)Scheduling a Final Sale Hearing and Approving the Form and

8      Manner of Notice Thereof; and (II) an Order (A)Authorizing the

9      Sale of Substantially All of the Debtors' Assets, Free and

10     Clear of Liens, Claims, Interests and Encumbrances;

11     (B)Authorizing the Assumption and Assignment of Certain

12     Executory Contracts and Unexpired Leases in Connection

13     Therewith and Related Procedures; and (C)Granting Certain

14     Related Relief

15

16     HEARING re Motion of Debtor Alpha Holding LP, Pursuant to

17     Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy

18     Rules 2002, 6004 and 6006, for an Order (A) Authorizing the

19     Sale of Substantially All of Alpha Holding LP's Assets, Free

20     and Clear of Liens, Claims, Interests and Encumbrances; and (B)

21     Granting Certain Related Relief

22

23

24

25

3

1

2     HEARING re Motion of the Debtors for Entry of Agreed Interim

3     and Final Orders: (I)Authorizing Use of Cash Collateral;

4     (II)Granting Adequate Protection; and (III) Granting Related

5     Relief

6

7     HEARING re Motion of Debtors and Debtors in Possession for

8     Entry of an Order Authorizing Debtor Chrysler LLC to Enter Into

9     a Settlement on the Terms Set Forth in the Binding Term Sheet

10    Among Chrysler LLC, Chrysler Holding LLC, Daimler AG, Cerberus,

11    the DC Contributors, and the Pension Benefit Guaranty

12    Corporation Pursuant to Rule 9019 of Federal Rules of

13    Bankruptcy Procedure

14

15    HEARING re Motion of Debtors and Debtors in Possession for

16    Entry of an Order (A)Authorizing the Debtors to Implement Post

17    Closing Modifications to Chrysler LLC's Governance Structure;

18    (B)Approving the Release of Officers and Directors; and

19    (C)Authorizing the Debtors to Obtain Replacement Directors and

20    Officers Liability Insurance

21

22

23

24

25

4

1

2    HEARING re Motion of Debtors and Debtors in Possession for

3    Entry of an Order Approving the Tax Settlement Agreement Among

4    the DC Contributors, the CG Investment Group, LLC, Daimler,

5    Chrysler Holding, Chrysler and CCI Pursuant to Rule 9019 of the

6    Federal Rules of Bankruptcy Procedure

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

VERITEXT REPORTING COMPANY

212-267-6868                                        516-608-2400

160

1    A.    It's the way you look at it, yes.

2    Q.    A stakeholder?

3    A.    Yes.

4    Q.    Yes.  And you owe fiduciaries to those creditors and

5    stakeholders, correct?

6    A.    Yes.

7    Q.    And your fiduciary duties require you to try to maximize

8    value for them, correct?

9    A.    Yes.

10   Q.    So, let me ask you again.  Have you given any thought to

11   what the warranty creditors are going to get under the

12   transaction currently before the Court?

13   A.    I believe that NewCo plans on paying the warranty claims.

14   Q.    Were you interested in that?

15   A.    I would like, just from a personal standpoint I like to

16   see our customers taken care of for, yeah, so yes.

17   Q.    But you didn't really care?

18   A.    No, I do care.

19   Q.    You do care.  Like, as a fiduciary you care?

20   A.    I would say from a customer care perspective I care.

21   Q.    But as a fiduciary you didn't negotiate for that provision

22   to be in the agreement.

23   A.    NewCo will make the decision on who they pay warranty

24   claims.

25   Q.    Well, do you know who -- is OldCo a party to this

442

```
 1
 2                    C E R T I F I C A T I O N
 3
 4      I, Lisa Bar-Leib, certify that the foregoing transcript is a
 5      true and accurate record of the proceedings.
 6      Lisa Bar-Leib    Digitally signed by Lisa Bar-Leib
                          DN: cn=Lisa Bar-Leib, c=US
                          Reason: I am the author of this
 7                        document
                          Date: 2009.06.03 09:06:18 -04'00'
 8      LISA BAR-LEIB
 9      AAERT Certified Transcriber (CET**D-486)
10
11      Veritext LLC
12      200 Old Country Road
13      Suite 580
14      Mineola, NY 11501
15
16      Date:  June 2, 2009
17
18
19
20
21
22
23
24
25
```

# Exhibit H



August 27, 2009

John T Bozzella

The Honorable Richard Durbin
United States Senate
Washington, DC 20510

Dear Senator Durbin:

We very much appreciate the support you have given to the new Chrysler Group LLC,
and we understand the concerns you have raised about Chrysler Group's commitments
on product liability claims.

As you know, on June 10, 2009, Chrysler Group purchased substantially all of the assets
of the former Chrysler LLC (now known as "Old Carco LLC"). As part of the bankruptcy
court-approved sale transaction, Chrysler Group assumed product liability claims relating
solely to vehicles sold by Chrysler Group to its dealers.  Chrysler Group did not assume
product liability claims arising out of vehicles sold before June 10, 2009 (except to the
extent required by our sales and service agreements with sustained dealers).

Today, Chrysler Group has a much better appreciation of the viability of our business
than it did on June 10.  As a result, we will announce today that the company will accept
product liability claims on vehicles manufactured by Old Carco before June 10 that are
involved in accidents on or after that date.  This is in addition to our previous
commitment to honor warranty claims, lemon law claims and safety recalls regarding
these vehicles.  As a result of today's announcement, Chrysler Group's approach is
consistent with that taken by General Motors as part of its bankruptcy process.

While Chrysler Group still faces challenges, we are confident today that the future
viability of the company will not be threatened if we assume these obligations. We want
our customers to feel comfortable and confident buying, driving and enjoying one of our
vehicles. Chrysler Group vehicles meet or exceed all applicable federal safety standards
and have excellent safety records.

We appreciate your dedication to exploring this issue with us through hearings and
conversations with our key executives. We hope this decision alleviates your concerns
and assures you that we stand behind our products, our customers and our dealers.

Sincerely,

Cc:    Chairman Patrick Leahy
       Senator Arlen Specter
       Senator Herb Kohl

# Exhibit I

# RAMIFICATIONS OF AUTO INDUSTRY
# BANKRUPTCIES (PART II)

# HEARING

BEFORE THE

## SUBCOMMITTEE ON
## COMMERCIAL AND ADMINISTRATIVE LAW

OF THE

## COMMITTEE ON THE JUDICIARY
## HOUSE OF REPRESENTATIVES

ONE HUNDRED ELEVENTH CONGRESS

FIRST SESSION

JULY 21, 2009

## Serial No. 111–54

Printed for the use of the Committee on the Judiciary



Available via the World Wide Web: http://judiciary.house.gov

U.S. GOVERNMENT PRINTING OFFICE

51–224 PDF          WASHINGTON : 2010

For sale by the Superintendent of Documents, U.S. Government Printing Office
Internet: bookstore.gpo.gov   Phone: toll free (866) 512–1800; DC area (202) 512–1800
Fax: (202) 512–2104   Mail: Stop IDCC, Washington, DC 20402–0001

COMMITTEE ON THE JUDICIARY

JOHN CONYERS, JR., Michigan, *Chairman*

HOWARD L. BERMAN, California
RICK BOUCHER, Virginia
JERROLD NADLER, New York
ROBERT C. "BOBBY" SCOTT, Virginia
MELVIN L. WATT, North Carolina
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
MAXINE WATERS, California
WILLIAM D. DELAHUNT, Massachusetts
ROBERT WEXLER, Florida
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR.,
  Georgia
PEDRO PIERLUISI, Puerto Rico
MIKE QUIGLEY, Illinois
LUIS V. GUTIERREZ, Illinois
BRAD SHERMAN, California
TAMMY BALDWIN, Wisconsin
CHARLES A. GONZALEZ, Texas
ANTHONY D. WEINER, New York
ADAM B. SCHIFF, California
LINDA T. SANCHEZ, California
DEBBIE WASSERMAN SCHULTZ, Florida
DANIEL MAFFEI, New York

LAMAR SMITH, Texas
F. JAMES SENSENBRENNER, JR.,
  Wisconsin
HOWARD COBLE, North Carolina
ELTON GALLEGLY, California
BOB GOODLATTE, Virginia
DANIEL E. LUNGREN, California
DARRELL E. ISSA, California
J. RANDY FORBES, Virginia
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
JASON CHAFFETZ, Utah
TOM ROONEY, Florida
GREGG HARPER, Mississippi

PERRY APELBAUM, *Majority Staff Director and Chief Counsel*
SEAN MCLAUGHLIN, *Minority Chief of Staff and General Counsel*

———

SUBCOMMITTEE ON COMMERCIAL AND ADMINISTRATIVE LAW

STEVE COHEN, Tennessee, *Chairman*

WILLIAM D. DELAHUNT, Massachusetts
MELVIN L. WATT, North Carolina
BRAD SHERMAN, California
DANIEL MAFFEI, New York
ZOE LOFGREN, California
HENRY C. "HANK" JOHNSON, JR.,
  Georgia
ROBERT C. "BOBBY" SCOTT, Virginia
JOHN CONYERS, JR., Michigan

TRENT FRANKS, Arizona
JIM JORDAN, Ohio
HOWARD COBLE, North Carolina
DARRELL E. ISSA, California
J. RANDY FORBES, Virginia
STEVE KING, Iowa

MICHONE JOHNSON, *Chief Counsel*
DANIEL FLORES, *Minority Counsel*

# CONTENTS

JULY 21, 2009

Page

OPENING STATEMENTS

The Honorable Steve Cohen, a Representative in Congress from the State of Tennessee, and Chairman, Subcommittee on Commercial and Administrative Law ................................................................. 1

The Honorable Trent Franks, a Representative in Congress from the State of Arizona, and Ranking Member, Subcommittee on Commercial and Administrative Law ..................................................... 2

The Honorable John Conyers, Jr., a Representative in Congress from the State of Michigan, Chairman, Committee on the Judiciary, and Member, Subcommittee on Commercial and Administrative Law .................... 3

The Honorable Lamar Smith, a Representative in Congress from the State of Texas, and Ranking Member, Committee on the Judiciary ........................ 5

The Honorable Daniel Maffei, a Representative in Congress from the State of New York, and Member, Subcommittee on Commercial and Administrative Law ................................................................. 6

The Honorable Howard Coble, a Representative in Congress from the State of North Carolina, and Member, Subcommittee on Commercial and Administrative Law .............................................................. 7

The Honorable Henry C. "Hank" Johnson, Jr., a Representative in Congress from the State of Georgia, and Member, Subcommittee on Commercial and Administrative Law ............................................... 8

The Honorable Melvin L. Watt, a Representative in Congress from the State of North Carolina, and Member, Subcommittee on Commercial and Administrative Law .......................................................... 9

The Honorable Darrell E. Issa, a Representative in Congress from the State of California, and Member, Subcommittee on Commercial and Administrative Law ................................................................. 14

The Honorable Sheila Jackson Lee, a Representative in Congress from the State of Texas, and Member, Committee on the Judiciary ............................ 15

The Honorable William D. Delahunt, a Representative in Congress from the State of Massachusetts, and Member, Subcommittee on Commercial and Administrative Law ....................................................... 15

WITNESS

Mr. Ron Bloom, Senior Advisor, U.S. Department of the Treasury
Oral Testimony ........................................................................ 16
Prepared Statement .................................................................. 19

LETTERS, STATEMENTS, ETC., SUBMITTED FOR THE HEARING

Letter submitted by the Honorable Melvin L. Watt, a Representative in Congress from the State of North Carolina, and Member, Subcommittee on Commercial and Administrative Law ............................................ 11

IV

APPENDIX

MATERIAL SUBMITTED FOR THE HEARING RECORD

Response to Post-Hearing Questions from Ron Bloom, Senior Advisor, U.S.
Department of the Treasury .........................................................................    59

31

going out of business. They were desperate. They came and fortunately this Administration took a whole lot of concern, and they realized that to let the automobiles, two of the largest go under would not be worth it. It would be better for them to work out this agreement of creating new companies.

Now, maybe these other two dealers that were saved should have done what the Ford Motor Company did. They refused. They declined. They didn't want any part of it and so everybody had an opportunity to do that. They came to us on bended knee literally trying to stay in business.

And sure it was tough and sure they had to give up a lot of things but what about the workers that gave up their jobs? What about the plants that closed down? And I am investigating whether some of those factories moved overseas, which is going to leave me thinking about the North American Free Trade Agreement in a new light. So I just want you to feel as well as you can as a valuable Member of this Committee.

Mr. FRANKS. Would the gentleman yield for 1 minute?

Mr. CONYERS. Sure.

Mr. FRANKS. I just, I guess, because I take the gentleman's points and I appreciate the sincerity of it, but you still remain in a situation here where secured lenders got 29 cents on the dollar, unsecured lenders, in the case of, or unsecured creditors in the case of UAW were 55 cents on the dollar.

I realize everybody lost things and a lot of jobs were lost, but if this becomes the norm, secured lending will disappear and jobs will disappear far more than what has happened here, and it is a precedent Mr. Chairman.

So that is—I thank you for yielding.

Mr. CONYERS. Mr. Bloom, how should I answer that to make him feel better?

Mr. BLOOM. I am not sure I can him feel better but I can try to answer it again. It is in fact quite common for secured lenders to not be fully paid out in a bankruptcy. That is, unfortunately, there are many companies whose wherewithal is simply smaller than their secured loan, number one.

Number two, the idea that unsecured creditors of one sort of another receive a different treatment, again, is very common in a bankruptcy. For example, in the Chrysler bankruptcy is it true that the UAW had their health care benefits dramatically modified but not completely eliminated.

But the suppliers to these companies had their debts paid in the ordinary course. Why, because it was a commercial decision by the company to maintain relationships with their supply base because you can't make cars without having steering wheels.

The companies also decided to continue to honor the warranty claims of prior owners of their cars. Why, because on a commercial basis, the last buyer of a GM or Chrysler car is the most likely candidate to be the next buyer.

So the companies made a whole series of commercial decisions and their relationship with the UAW, which as people who know about it know is based on a very, while professional, a very arm's length, sophisticated relationship. They extracted all from the UAW that they felt possible.

32

And that was the basis on which that deal was done, and likewise their treatment of the secured lenders. So I believe, again, and I think the courts have affirmed this that this was in fact while it was much larger, while it was done under a microscope, this was, in fact, ordinary course treatment.

Mr. COHEN. Mr. Conyers, do you yield?

Mr. CONYERS. Yes sir, I return.

Mr. COHEN. Thank you, Senator.

Mr. CONYERS. Thank you for your generosity.

Mr. COHEN. All right, Mr. Jordan, do you seek recognition?

Mr. JORDAN. Yes.

Mr. COHEN. You are recognized for 5 minutes.

Mr. JORDAN. Thank you, Mr. Chairman.

Mr. Bloom in your opening statement you said that GM and Chrysler are operating as independent companies. You said that you were instructed as a member of the auto task force to refrain from intervening in the day-to-day decisions of these companies. Do you really believe those two statements?

Mr. BLOOM. Yes.

Mr. JORDAN. Well, let me ask you this. How do those statements square with the series of events and facts that we have seen play out in the last several months? How do they square with the fact that President Obama fired Rick Wagoner?

How do they square with the fact that the government task force, the taxpayers, have a 60 percent equity stake in GM, control the majority of the board? How do they square with the fact that 2 weeks ago in an interview Fritz Henderson said he is on a "short leash" when it comes to running General Motors?

How do those statements square with the fact that Barney Frank, as reported in the Wall Street Journal, can call up Mr. Henderson and get special treatment for a facility in his State? How do they square with the facts that Mr. Franks brought up where you have Mr. Lauria an attorney, a Democrat attorney, who stated publicly that he is willing to testify to threatening treatment his client got from the White House?

Let me put it in this context as well. Over the last 6 weeks, I have sat through hearings that question Mr. Ken Lewis, that question Mr. Ben Bernanke, questioned Mr. Hank Paulson about the treatments Ken Lewis and Bank of America got in their acquisition of Merrill Lynch, the threats and the intimidation and, frankly, in my judgment, the deception they received from members of our government in that dealing.

So to me it just—when you walk through these series of events and I will even say this, I remember the Sunday night before General Motors was going to announce, file for bankruptcy. We were on a conference call. Maybe some of the Members of this Committee, I assume Mr. Conyers was on that same conference, or maybe our Chairman.

In the intro to that conference call, Mr. Sperling, made this statement, he said, "We will only get involved in decisions with General Motors if they are a, quote, 'major event'." And so Mr. Rattner spoke, Mr. Sperling spoke, and it was time for questions and several Members got on and this and that, in fact the speaker

# Exhibit J

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 09-50002-ajg; Adv. Proc. No. 11-09411-ajg

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7    OLD CARCO LLC, f/k/a CHRYSLER LLC, ET AL.,

8              Debtors.

9    - - - - - - - - - - - - - - - - - - - - - -x

10    TATUM, ET AL.,

11              Plaintiffs,

12     - against -

13    CHRYSLER GROUP LLC,

14              Defendants.

15    - - - - - - - - - - - - - - - - - - - - - -x

16              United States Bankruptcy Court

17              One Bowling Green

18              New York, New York

19

20              February 14, 2012

21              3:35 PM

22

23    B E F O R E :

24    HON. ARTHUR J. GONZALEZ

25    CHIEF U.S. BANKRUPTCY JUDGE

1

2    Motion by Chrysler Group to dismiss Count 1 of the second

3    amended complaint.   Opposition filed.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  David Rutt

```
 1

 2    A P P E A R A N C E S :

 3    SULLIVAN & CROMWELL LLP

 4         Attorneys for Chrysler Group LLC

 5         125 Broad Street

 6         New York, NY 10004

 7

 8    BY:   BENJAMIN R. WALKER, ESQ.

 9

10

11    WILLIAM R. COWDEN, ATTORNEY AT LAW

12         Attorneys for Plaintiffs Gabriella Tatum and Jamie Meyer

13         2002 Massachusetts Avenue, NW

14         Suite 100

15         Washington, DC 20036

16

17    BY:   WILLIAM R. COWDEN, ESQ.

18

19

20    CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO

21         Attorneys for Plaintiffs Gabriella Tatum and Jamie Meyer

22         5 Becker Farm Road

23         Roseland, NJ 07068

24

25    BY:   LINDSEY H. TAYLOR, ESQ.
```

1  whether the vehicle purchase date was on or prior to the

2  closing date or after the closing date.

3        Thereafter, certain amendments were made that extended

4  Chrysler Group's liability for vehicles purchased by consumers

5  prior to the closing date within certain circumscribed

6  parameters.  Those liabilities related to certain types of

7  accident claims pursuant to Section 2.09(h)(2)(i) of the MTA

8  and liabilities under lemon laws pursuant to paragraph 19 of

9  the sale order.

10        Count I of the complaint alleges violations of the New

11  Jersey Consumer Fraud Act; therefore, Count I of the complaint

12  does not relate to accidents or to lemon law claims.  The

13  plaintiffs argue that the fraud act is a mechanism to enforce

14  lemon law claims.  That statute, however, does not conform to

15  the definition in the sale order of lemon law statutes that

16  were being assumed, which were statutes requiring a

17  manufacturer to provide a consumer remedy where the

18  manufacturer is unable to conform the vehicle to the warranty

19  after a reasonable number of attempts as defined in the

20  applicable statute.

21        With respect to vehicles sold to consumers prior to

22  the closing date, pursuant to Section 2.08(g), the Chrysler

23  Group's liability under the written warranties is limited to

24  the costs of repairing with parts and labor.  It does not

25  include any warranty-related cause of action.  In the Tulacro

1   decision, the Court set forth its interpretation of the

2   interplay of the various provisions of the MTA and the sale

3   order.

4         In addition to the written limited warranties under

5   Section 2.08(g) of the MTA, as noted, certain lemon law

6   liabilities were assumed under paragraph 19 of the sale order.

7   The Chrysler Group did not assume other warranty-related

8   liabilities.  The liability assumed was limited to the repair

9   costs, and the Chrysler cause (ph.) did not assume any other

10  breach of warranty for the vehicles.  To the extent that any

11  repair is not effective, that liability was not assumed.  Thus,

12  Chrysler Group did not assume liability for breach of warranty

13  claims.  Section 2.09(i) bars claims for breach of product

14  warranty.

15        Beyond labor and parts, the agreements were carefully

16  crafted to limit Chrysler Group's exposure to any product

17  liability causes of action that might be asserted, especially

18  included any effects to obtain punitive, exemplary, special,

19  consequential, or multiple damages or penalties or other

20  consequences.  Therefore, the Court grants the defendant's

21  motion with respect to Count I, and that count is dismissed,

22  and Chrysler Group should set an order consistent with this

23  Court's ruling.

24        Thank you.

25        MR. COWDEN:  Thank you, Your Honor.

1          THE COURT:  You're welcome.  Good night.

2       (Whereupon these proceedings were concluded at 5:23 PM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        I N D E X

3

4                        RULINGS

5                                          Page      Line

6   Pro hac vice motion for William          7         9

7   Cowden, Esq. granted.

8   Motion for dismissal of Count I          27        20

9   of the amended complaint granted

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1

2                        C E R T I F I C A T I O N

3

4        I, David Rutt, certify that the foregoing transcript is a true

5        and accurate record of the proceedings.

6

7

8
         David Rutt            Digitally signed by David Rutt
9                              DN: cn=David Rutt, o=Veritext, ou,
                               email=digital@veritext.com, c=US
                               Date: 2012.03.07 16:33:36 -05'00'

10       DAVID RUTT

11       AAERT Certified Electronic Transcriber CET**D-635

12

13       Veritext

14       200 Old Country Road

15       Suite 580

16       Mineola, NY 11501

17

18       Date:  March 6, 2012

19

20

21

22

23

24

25
```

# Exhibit K

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### GREENVILLE DIVISION

| | | |
|---|---|---|
| BRYCE BURTON, *et al.*, on behalf of themselves and all others similarly situated, | ) ) ) ) | C.A. No.: 8:10-CV-00209-JMC |
| Plaintiffs, | ) ) | **CONSENT MOTION AND** **STIPULATION OF PARTIES** |
| v. | ) ) | **REGARDING FILING OF** **SECOND AMENDED COMPLAINT** |
| CHRYSLER GROUP LLC, | ) ) | **AND ASSUMED LIABILITIES** |
| Defendant. | ) ) ) | |

Defendant Chrysler Group LLC ("Chrysler Group") and Plaintiffs Bryce Burton, Gioacchino DeBenedetto, Larry Easterly, Steve Faulkner, Eric Fisher, Edward Halvorson, John Hether, Lloyd Kay, Thomas Kelly, Jr., Thomas Koester, Louis Luckett, Humberto Ochoa, Lana Selby, Lange Thomas, Edward Vivian, and Joseph Wardlow ("Plaintiffs"), hereby move and stipulate, subject to the Court's approval, as follows:

WHEREAS Plaintiffs, individually and on behalf of a putative class, have filed their First Amended Class Action Complaint, wherein they allege that there are certain defects in model-year 2007 through 2009 Dodge Ram vehicles equipped with a 6.7 liter Cummins engine; and

WHEREAS Plaintiffs pleaded claims for: breach of express warranty (Count I); breach of implied warranty of merchantability (Count II); breach of implied warranty of fitness for a particular purpose (Count III); violation of the Magnuson-Moss Warranty Act (Count IV); and violation of consumer protection statutes (Count V); and

WHEREAS Plaintiffs have pleaded in the Complaint that Chrysler Group assumed the liabilities at issue under Paragraph 2.08 of a Master Transaction Agreement identified in the Complaint; and

WHEREAS Chrysler Group contends that it did not assume any of the liabilities at issue under Paragraph 2.08 of the Master Transaction Agreement; and

WHEREAS Chrysler Group has contemplated filing a motion seeking to transfer this case to United States District Court for the Southern District of New York, for referral to the Bankruptcy Court in that District; and

WHEREAS, at the present time, the parties desire to avoid the expenses associated with litigating the issues associated with any dispute over which liabilities were assumed by Chrysler Group and which were not;

### THE PARTIES HEREBY STIPULATE AND AGREE AS SET FORTH BELOW

1.      Plaintiffs will file a second amended complaint within 15 days of the Court's approval of this Stipulation, wherein they will allege that Chrysler Group assumed the liabilities associated with their warranty-based claims under Paragraph 19 of the "Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief," which was entered on June 1, 2009 in the case of In re Old Carco LLC (f/k/a Chrysler LLC), No. 09-50002 (Bankr. S.D.N.Y.) ("the Sale Order"). In their second amended complaint, Plaintiffs will withdraw their references to the assumption of any liabilities under Section 2.08 of the Master Transaction Agreement.

2.      Chrysler Group acknowledges and agrees that, under Paragraph 19 of the Sale Order, it assumed the liabilities associated with claims for breach of express warranty and breach of implied warranty for model-year 2007 through 2009 Dodge Ram vehicles equipped with a 6.7 liter Cummins engine, *except for those liabilities associated with personal injuries and/or*

- 2 -

*punitive, exemplary, special, consequential or multiple damages or penalties*. Chrysler Group acknowledges that its assumption of these liabilities associated with breach of express warranty claims and breach of implied warranty claims is not dependent on a plaintiff/claimant alleging or proving facts which would meet the standards of any applicable "Lemon Law".

3.     Plaintiffs acknowledge and agree that any consumer protection or fraud-based claims that they plead are intended to be based on the alleged acts and omissions of Chrysler Group only, and are not intended to be based on any assumed liability theory.

4.     Chrysler Group agrees that it will not seek to transfer this case to the Bankruptcy Court if:  (a) the warranty claims made in Plaintiffs' second amended complaint are limited to alleged defects in model-year 2007 through 2009 Dodge Ram vehicles equipped with a 6.7 liter Cummins engine; and (b) Plaintiffs do not seek damages for personal injuries and/or punitive, exemplary, special, consequential or multiple damages or penalties; and (c) the basis of any consumer protection statute or fraud claims are limited to acts and omissions committed by Chrysler Group after June 10, 2009 (the closing date of the transaction under the Sale Order) and are not based on any "assumed liability" theory.

5.     Nothing in this Stipulation is intended to prohibit or limit: (a) Plaintiffs' right to plead any non-warranty based claims now or in the future; (b) Chrysler Group's right to seek dismissal of, or to plead affirmative defenses to, any claims set forth in any amended complaint; (c) Chrysler Group's right to contest its assumption of liabilities for any non-warranty claims and/or claims for personal injuries or punitive, exemplary, special, consequential or multiple damages or penalties; (d) Chrysler Group's right to contest its liabilities for any and all consumer protection and fraud-based claims pleaded by Plaintiffs which involve vehicles manufactured and sold by Old Carco LLC; and/or (d) Chrysler Group's right to seek transfer of this case to the

- 3 -

Bankruptcy Court in the event any fraud-based claim implicates fraudulent acts or omissions allegedly attributable to Old Carco and/or which involve allegations that Chrysler Group assumed any type of fraud liabilities.

6.      The parties agree that the time for Chrysler Group to respond to Plaintiffs' First Amended Complaint shall be tolled. If this Stipulation is approved by the Court, Chrysler Group will not answer the First Amended Complaint, but will answer, move, or otherwise respond to the Second Amended Complaint within 14 days of being served with it. If the Court does not approve this Stipulation, Chrysler Group will answer, move, or otherwise respond to the First Amended Complaint within 14 days of the Court's rejection of the Stipulation.

Dated: May 11, 2011

Respectfully submitted,

| | |
|---|---|
| /s/ Michael S. Cashman | /s/ John B. White, Jr. |
| Michael S. Cashman (Fed. ID No. 9937) | John B. White, Jr. (Fed ID No. 5619) |
|   mcashman@wcsr.com |   jwhite@spartanlaw.com |
| Womble Carlyle Sandridge & Rice, PLLC | Harrison, White, Smith & Coggins, P.C. |
| 550 South Main Street, Suite 400 | 178 West Main Street |
| Greenville, South Carolina 29601 | P.O. Box 3547 |
| Telephone: (864) 255-5400 | Spartanburg, South Carolina 29304 |
| | Telephone: (864) 585-5100 |

*Attorneys for Defendant Chrysler Group LLC*

*Attorneys for Plaintiffs Bryce Burton, Gioacchino DeBenedetto, Larry Easterly, Steve Faulkner, Eric Fisher, Edward Halvorson, John Hether, Lloyd Kay, Thomas Kelly, Jr., Thomas Koester, Louis Luckett, Humberto Ochoa, Lana Selby, Lange Thomas, Edward Vivian, and Joseph Wardlow*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
|   |   |
|---|---|
| In re: | : |
| | : |
| OLD CARCO LLC, *et al.,* | : |
| | : |
| Debtors. | : |
-----------------------------------------------------------------X

|   |   |
|---|---|
| | : |
| AUTUMN BURTON, *et al.* | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| CHRYSLER GROUP, LLC | : |
| | : |
| Defendant. | : |
-----------------------------------------------------------------X

Chapter 11

Case No. 09-50002 (SMB)

(Jointly Administered)

Adv. Proc. No. 13-01109 (SMB)

**ORDER DENYING PLAINTIFFS' OPPOSITION TO CHRYSLER
GROUP, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

AND NOW, this _____ day of _____, 2013, upon

consideration of Chrysler Group, LLC's Motion to Dismiss Second the Amended Complaint

[Docket No. 6] (the "Motion") and Plaintiffs' opposition to the Motion; and the Court finding

that: (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and (b) this is

a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and after due deliberation thereon, it is

hereby:

**ORDERED**, that the Motion is **DENIED**.

New York, New York

Dated: _____, 2013

_____
Honorable Stuart M. Bernstein, U.S.B.J.

Kenneth R. Puhala
Barry E. Bressler (*pro hac vice*)
Richard A. Barkasy (*pro hac vice*)
Eric A. Boden
SCHNADER HARRISON SEGAL & LEWIS LLP
140 Broadway, Suite 3100
New York, NY 10005-1101
Phone:  (212) 973-8000
Fax:  (212) 972-8798
*Attorneys for Plaintiffs*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------X
                                        :
In re:                                  :        Chapter 11
                                        :
OLD CARCO LLC, et al.,                  :        Case No. 09-50002 (SMB)
                                        :
                    Debtors.            :        (Jointly Administered)
-----------------------------------------------------------X
                                        :
AUTUMN BURTON, et al.                   :
                                        :
                    Plaintiffs,         :        Adv. Proc. No. 13-01109 (SMB)
                                        :
v.                                      :
                                        :
CHRYSLER GROUP, LLC                     :
                                        :
                    Defendant.          :
-----------------------------------------------------------X
```

**CERTIFICATE OF SERVICE OF PLAINTIFFS' OPPOSITION TO CHRYSLER
GROUP, LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

I, Kenneth R. Puhala, hereby certify that on March 21, 2013, I caused the

foregoing Opposition of Plaintiffs to Chrysler Group, LLC's Motion to Dismiss Second

Amended Complaint to be served via first-class mail, postage prepaid, upon the following:

Steven L. Holley
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

Benjamin R. Walker
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

Kathy A. Wisniewski
Thompson Coburn LLP
One Us Bank Plaza
Saint Louis, MO 63101

Richard K. Herrmann
Morris James LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-230

Dated:  March 21, 2013
        New York, New York

SCHNADER HARRISON SEGAL & LEWIS LLP

By:  /s/ Eric A. Boden
      Kenneth R. Puhala
      Eric A. Boden
      140 Broadway, Suite 3100
      New York, NY 10005-1101
      Phone:  (212) 973-8000
      Fax:  (212) 972-8798
      kpuhala@schnader.com
      eboden@schnader.com

      and

      Barry E. Bressler (admitted *pro hac vice*)
      Richard A. Barkasy (admitted *pro hac vice*)
      1600 Market Street, Suite 3600
      Philadelphia, PA 19103
      Phone:  (215) 751-2000
      Fax: (215) 751-2205
      bbressler@schnader.com
      rbarkasy@schnader.com

      *Attorneys for the Plaintiffs*