UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                              :          Chapter 11
                                                   :
MOTORS LIQUIDATION COMPANY, *et al.*,   :          Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., *et al.*   :
                                                   :          (Jointly Administered)
                        Debtors.        :
------------------------------------------------------------x

DECISION WITH RESPECT TO NO STAY
PLEADING, AND RELATED MOTION FOR
ABSTENTION (SESAY PLAINTIFFS)

APPEARANCES:

KING & SPALDING LLP
*Attorneys for General Motors LLC*
1185 Avenue of the Americas
New York, New York 10036
By:     Arthur J. Steinberg, Esq.
        Scott I. Davidson, Esq.

KIRKLAND & ELLIS LLP
*Attorneys for General Motors LLC*
300 North LaSalle
Chicago, Illinois 60654
By:     Richard C. Godfrey, Esq.
        Andrew B. Bloomer, Esq.

GARY PELLER
*Attorney for Ishmail Sesay and Joanne Yearwood*
600 New Jersey Avenue, NW
Washington, DC 20001
By:     Gary Peller, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

        Once again—now for the fourth time, and for the second time by the same

counsel—a plaintiff group wishing to proceed ahead of all of the others has asked for

leave to go it alone.  This request, brought on behalf of plaintiffs Ishmail Sesay and

Joanne Yearwood (the "**Sesay Plaintiffs**"), by Gary Peller, Esq., the same counsel whose

-1-

contentions I rejected in my written opinion denying the second request, follows two written decisions[1] and an oral one, all holding that litigants with ignition switch monetary loss claims barred, in whole or in part, by my July 5, 2009 sale order (the "**Sale Order**") must await the conclusion of the now-ongoing briefing and argument before me in all of the other actions, whose number has now swollen to over 100.[2]  This request too is denied.  The great bulk of the contentions here do not differ from the contentions I rejected in *Phaneuf* and *Elliott,* the latter of which were made by this same counsel.  And the new contentions (asserted insufficient time to respond and other assertedly unfair procedures) and the new request (that I abstain from hearing this controversy) lack merit as well.

The Sesay Plaintiffs' action will be stayed along with the others.

My Findings of Fact (made solely with respect to the Sesay Plaintiffs' claims) and Conclusions of Law (truncated to limit discussion of matter previously set forth in *Phaneuf* and *Elliott*) follow.

<u>Facts</u>

In April 2014, New GM filed a motion (the "**Motion to Enforce**") to enforce the Sale Order with respect to ignition switch monetary loss civil actions ("**Ignition Switch Actions**").  In May, I held an on-the-record conference to discuss coordinated procedures to tee up the Motion to Enforce issues for judicial consideration in light of the growing number of Ignition Switch Actions—87 at the time, though the number has now swollen to over 100.  Counsel for New GM and Ignition Switch Actions plaintiffs conferred and

---

[1]     *See In re Motors Liquidation Co.*, 513 B.R. 467 (Bankr. S.D.N.Y. 2014) ("***Phaneuf***"); *In re Motors Liquidation Co.*, 514 B.R. 377 (Bankr. S.D.N.Y. 2014) ("***Elliott***").

[2]     At the time of *Phaneuf*, there were 87 other actions.  New GM advises that there are now over 100.  *See* New GM Response at 3.

-2-

negotiated a broad array of mechanisms to agree upon undisputed facts and identify key threshold issues ("**Threshold Issues**") whose determination would resolve or facilitate resolution of the Motion to Enforce.

As part of that effort—given that prosecution of many, if not most, of the Ignition Switch Actions claims at the time was barred by terms of the Sale Order (assuming that such terms were enforceable against Ignition Switch Actions plaintiffs—a matter yet to be decided, and which was included amongst the Threshold Issues)—the Ignition Switch Actions plaintiffs voluntarily put their actions on hold, pending determination of the Threshold Issues. Counsel for New GM and the great bulk of the Ignition Switch Actions plaintiffs who had filed suit as of that time established a procedure to move forward: Ignition Switch Actions plaintiffs would either (i) agree to enter into a stipulation with New GM staying their individual Ignition Switch Actions, or (ii) file with the Court a "No Stay Pleading" explaining why they believed their individual Ignition Switch Actions should not be stayed. I approved these procedures in a scheduling order (the "**Scheduling Order**"). All but a very few of the plaintiff groups agreed to the stay stipulations. The Sesay Plaintiffs are one of only seven plaintiff groups to object to staying the individual proceedings.[3] Their counsel, Peller, represents three of these groups.

---

[3]     The other six are the Phaneuf Plaintiffs, the Elliott Plaintiffs, Dori Powledge, Alejandro Alers, the Bloom Plaintiffs, and the Bledsoe Plaintiffs. I issued written decisions denying relief with respect to the Elliott and Phaneuf Plaintiffs. At a later conference in August, counsel for Ms. Powledge explained why he wished to proceed with his case, but I found that Ms. Powledge's situation was no different than any of the others. After the Sesay Plaintiffs filed their No Stay Pleading, three additional no stay pleadings were filed by Alejandro Alers, Karen Bloom, and the Bledsoe Plaintiffs. The Bledsoe Plaintiffs are once again represented by Peller, who previously filed No Stay Pleadings on behalf of the Elliott and Sesay Plaintiffs. The Bledsoe Plaintiffs group includes Celestine Elliott and Lawrence Elliott, two of the earlier Elliott Plaintiffs, with respect to whom I have already ruled.

In June 2014, New GM filed a motion to establish stay procedures for newly-filed Ignition Switch Actions, which I approved in an order dated July 8, 2014 (the **"Stay Procedures Order"**).[4]  That order requires plaintiffs in newly-filed Ignition Switch Actions, within three business days of receipt of a form stay stipulation, to either enter into a stay stipulation or file a "No Stay Pleading" with the Court.

In July 2014, I held another conference to address additional procedural issues that arose after the entry of the Scheduling Order.  At the July conference, I identified the four Threshold Issues that should be decided first in the contested proceedings, and entered an order (the "**Supplemental Scheduling Order**") with respect to a briefing schedule.[5]

The Phaneuf Plaintiffs filed a No Stay Pleading arguing that their claims related to New GM's conduct post-bankruptcy and they were therefore entitled to continue litigating their Ignition Switch Action.  I ruled against the Phaneuf Plaintiffs, finding that it made sense to address common issues at one time.  I initially issued an oral ruling, stating, among other things:

> [T]he sale order now applies, though it's possible, without prejudging any issues, that, after I hear from the other 87 litigants, I might ultimately rule that it does not apply to some kinds of claims and that, even if the sale order didn't apply, that New GM would be entitled to a preliminary injunction temporarily staying the Phaneuf plaintiffs' action from going forward, pending a determination by me on the other 87 litigants' claims under the standards articulated by the circuit in Jackson Dairy and its progeny.[6]

---

[4]    ECF No. 12764.

[5]    ECF No. 12770.

[6]    Hrg. Tr. 91:12-21, July 2, 2014.

I subsequently entered a written decision memorializing the *Phaneuf* oral ruling.[7]

After ruling on the Phaneuf No Stay Pleading, I had to address nearly identical contentions with respect to the Elliott No Stay Pleading. Additionally, however, the Elliott Plaintiffs surprisingly claimed that this Court did not have subject matter jurisdiction over the Motion to Enforce, focusing nearly entirely on the "related to" prong of 28 U.S.C. § 1334. In my second written decision, dealing with the Elliott Plaintiffs' claims, I stated:

> Once again, a plaintiff group wishing to proceed ahead of all of the others (only one week after I issued the written opinion memorializing my earlier oral ruling proscribing such an effort) has asked for leave to go it alone. Its request is denied. With a single exception, the issues raised by this group (the "**Elliott Plaintiffs**") don't differ from those addressed in *Phaneuf*. And as to that single exception—their claim that I don't have subject matter jurisdiction to construe and enforce the Sale Order in this case—their contention is frivolous . . . .[8]

I noted that bankruptcy courts "have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' '*arising in*' jurisdiction."[9] I continued:

> As in *Phaneuf*, I find that the Elliott Plaintiffs are asserting claims with respect to vehicles that were manufactured before the 363 Sale, and, although to a lesser extent than in *Phaneuf*, relying on conduct of Old GM. Thus I find as a fact, or mixed question of fact and law, that the threshold applicability of the Sale Order—and its injunctive provisions—has been established in the first instance.

---

[7]    *See Phaneuf*, n.1 above.

[8]    *Elliott*, 514 B.R. at 379 (bolding and italics in original).

[9]    *Id.* at 381.

> And once again, even if the Sale Order did not
> apply in the first instance, a preliminary injunction
> would also be appropriate here, for the reasons
> discussed at length in *Phaneuf*, which I will not
> repeat at comparable length here—other than to say
> that the prejudice to all of the other litigants, and to
> the case management concerns I had with respect to
> the Phaneuf Plaintiffs, is just as much a matter of
> concern here.
>
> As in *Phaneuf*, I will not allow the Elliott Plaintiffs
> to go it alone. The Elliott Plaintiffs' claims can be
> satisfactorily addressed—and will have to be
> addressed—as part of the coordinated proceedings
> otherwise pending before me.[10]

Peller, the same counsel whose contentions I rejected in *Elliott,* filed the Sesay

Plaintiffs' Ignition Switch Action on August 1, 2014. He sued on behalf of a class of

people "who, since the inception of [New] GM in October 2009, hold or have held a legal

or equitable interest in a GM vehicle with a dangerous ignition switch or steering

hazard."[11] The Sesay Plaintiffs' allegations concerned model years ranging from 2003 to

2011—addressing, significantly, both Old GM and New GM vehicles, and bringing their

claims within the express coverage of the Sale Order.

The Sesay Plaintiffs filed their action in the Southern District of New York and

designated it as related to MDL 2543.[12] Upon learning of their filing, New GM advised

the Sesay Plaintiffs' counsel Peller that his action was covered under the Sale Order,

enjoined under it, and subject to the Motion to Enforce. On August 7, New GM sent

---

[10]    *Id.* at 383-84.

[11]    Sesay Amended Cmplt. ¶ 41.

[12]    After a decision of the Judicial Panel on Multidistrict Litigation, *see In re Gen. Motors LLC Ignition Switch Litig.*, --- F.Supp.2d ---, 2014 U.S. Dist. LEXIS 79713, 2014 WL 2616819 (Jud. Panel on Multidistrict Litig. Jun. 9, 2014), the Ignition Switch Actions were consolidated for coordinated pretrial purposes, under 28 U.S.C. § 1407, and transferred to the Southern District of New York, where they are now pending before the Hon. Jesse Furman in that court. *See In re: Gen. Motors LLC Ignition Switch Litig.*, 1:14-md-02543-JMF.

Peller the Scheduling Order, the Supplemental Scheduling Order, the Stay Procedures

Order, and a form stay stipulation. The next day, Peller advised that he was unwilling to

enter into the proffered stay stipulation. Instead, he wrote New GM seeking additional

time to file a No Stay Pleading. The previously agreed on schedule had provided that the

Sesay Plaintiffs must file a No Stay Pleading by August 12, but New GM agreed to

extend the deadline to August 19, if Peller thought that his pleading could meet

Fed.R.Bankr.P. Rule 9011 standards.

Peller then filed another No Stay Pleading, arguing, once again, that the

bankruptcy court lacks subject matter jurisdiction over the Motion to Enforce—

notwithstanding my express rulings to the contrary in *Elliott*—and also making a number

of other contentions, addressed below.

Discussion

The Sesay Plaintiffs' submission is an amalgam of efforts to raise, once again,

contentions I already considered and rejected, and efforts to raise new points. Though

without lengthy discussion of matters I've already ruled on, I consider them in turn.

*1. Subject Matter Jurisdiction.*

Once again, the Sesay Plaintiffs' counsel argues, as he did in *Elliott*, that I lack

subject matter jurisdiction to hear the Motion to Enforce. This contention, as I held in

*Elliott* (and which also is now the law of the case), is frivolous.[13] Federal judges,

---

[13]    As I already addressed the same contention in *Elliott*, Peller should have known better—
particularly since he admitted that the action here is "not distinguishable from the *Elliott v. GM*
matter that the Court has already considered." Sesay Pl. No Stay Pleading at 22. If Peller wanted
to raise his subject matter jurisdiction contentions merely as a placeholder, as against the
possibility (which I regard as unlikely) that *Elliott* might be reversed on appeal, he should have
said so. I had previously cautioned Peller to file pleadings only if they would meet Rule 9011
standards, and it is highly likely, if not certain, that his subject matter jurisdiction contentions here
do not. And after filing the Sesay Plaintiffs' No Stay Pleading, Peller filed still another, for the

-7-

including bankruptcy judges, have subject matter jurisdiction to enforce their own orders.[14]  In the bankruptcy sphere, where the court less commonly has federal question or diversity jurisdiction under 28 U.S.C. § 1331 or 1332, the court's subject matter jurisdiction rests on the Judicial Code's bankruptcy subject matter jurisdiction provision, 28 U.S.C. § 1334, and in particular its "arising in" prong.[15]  It has been repeatedly held that bankruptcy judges have "arising in" jurisdiction to construe and enforce orders they had earlier signed.[16]

As I observed in *Elliott*, the Sesay Plaintiffs' continued focus on the "related to" prong of § 1334, inexplicably still pressed here,[17] misses the point.[18]  It is the "arising in" prong of § 1334 upon which district and bankruptcy judges' subject matter jurisdiction rests.

Nor is it an answer for the Sesay Plaintiffs to contend that because they believe their claims, in whole or in part, should not be found to be covered by my earlier order, or my earlier order should not have said what it did or was invalid, my subject matter

Bledsoe Plaintiffs, making the same contentions once again, and also covering two of the Elliott Plaintiffs, with respect to whom I had already ruled.

This has got to stop.  Peller is now on notice that further conduct of this character may subject him to a *Martin-Trigona* order, sanctions, or both.  And though I would prefer to spend no more time on Peller's repeated filings, turning instead to the much more important issues in this case and the others on my watch, New GM's rights to seek a finding of contempt with respect to his past and any future conduct are reserved.

[14]     *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("***Travelers***") ("[T]he only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order.  The answer here is easy: as the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *Elliott*, 514 B.R. at 379-380 & nn.4-9, and cases there cited.

[15]     *See Elliott*, 514 B.R. at 379 & nn.6-7, 381 & n.12.

[16]     *See, e.g., Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013) (Marrero, J.) ("***Lothian Cassidy***") ("'Arising in' claims may include '[m]atters involving the enforcement or construction of a bankruptcy court order . . . .'"); *Elliott*, 514 B.R. at 380 n.8, 381-82 (same, citing, among many other authorities, *Lothian Cassidy*.)

[17]     Sesay Pl. No Stay Pleading at 12 *et seq.*

[18]     *Elliott*, 514 B.R. at 381.

jurisdiction to decide those issues evaporates.  As in *Elliott*,[19] each contention assumes

the fact to be decided.  Despite the Sesay Plaintiffs' efforts to recast the issues, and to

discuss other issues not at all relevant, the simple fact is that New GM seeks construction

and enforcement of the Sale Order, and I have subject matter jurisdiction to do exactly

that.

### 2.  Alleged Denial of Due Process

As the first of their new contentions, the Sesay Plaintiffs then seek to be excused

from the briefing arrangements applicable to everyone else because they received "no

effective notice," nor any "reasonable opportunity to be heard," before entry of the Sale

Order.[20]  But assuming that to be true, it is equally true with respect to all or nearly all of

the parties in the other 100 or more cases.  The relevance of that, to the ultimate

enforceability of the Sale Order, is a matter that everyone else is now in the process of

briefing.  But it is not a basis for the Sesay Plaintiffs' efforts to be excused from the

ongoing processes to make that determination.

The issues associated with the underlying matters that the other parties are

briefing, and that apply to the Sesay Plaintiffs as well—whether appropriate notice was

given in 2009, and, if not, what the consequence should be—are serious ones.  But they

are not amenable to the "one-off" analysis the Sesay Plaintiffs would prefer.  The Sesay

Plaintiffs are now covered, at least in material part, by the Sale Order.  And under

familiar principles,[21] until it is determined that the Sale Order does not apply, or should

---

[19]     *Id.* at 382.

[20]     Sesay Pl. No Stay Pleading at 29.

[21]     *See, e.g., Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995) ("[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.").

be invalidated, in whole or in part, they must abide by it, until I or a higher court rule

otherwise.

*3. Preliminary Injunction*

New GM earlier made the point, with which I agreed in each of *Phaneuf* and

*Elliott*,[22] that litigants with vehicles and parts manufactured before the 363 Sale were

already bound by the Sale Order.  But I additionally found, in each of *Phaneuf* and

*Elliott*,[23] that New GM could also satisfy the requirements for a preliminary injunction

barring the plaintiffs in those actions from proceeding with their suits until I addressed

the issues with respect to all of the other plaintiff groups at the time.  The Sesay Plaintiffs

next ask me to revisit the latter conclusion.  This too is an effort to cause me to revisit

matters that I have already decided, and that are now law of the case.  The Sesay

Plaintiffs have brought nothing to my attention that I previously overlooked, and there is

no basis for me to modify my earlier rulings in this regard.

*4. Scheduling, Procedure & "Consolidation"*

The Sesay Plaintiffs further make a number of procedural contentions, objecting

to the three business days within which they were originally required to file a No Stay

Pleading;[24] to the procedural context in which their concerns are being addressed

(without an adversary proceeding, and, in their view, without a contested matter); and to

---

[22]     *See Phaneuf*, 513 B.R. at 478 ("Thus unless and until I rule, after hearing from counsel in the
other 87 Ignition Switch Actions, that I should not enforce the Sale Order, in whole or in part (or
that with respect to any particular matters, the Sale Order does not apply), the Phaneuf Plaintiffs
remain enjoined under it."); *Elliott*, 514 B.R. at 383-84 ("As in *Phaneuf*, I find that the Elliott
Plaintiffs are asserting claims with respect to vehicles that were manufactured before the 363 Sale,
and, although to a lesser extent than in *Phaneuf*, relying on the conduct of Old GM.  Thus I find as
a fact, or mixed question of fact and law, that the threshold applicability of the Sale Order—and its
injunctive provisions—has been established in the first instance.").

[23]     *See Phaneuf*, 513 B.R. at 470, 479-81; *Elliott*, 514 B.R. at 384.

[24]     Sesay Pl. No Stay Pleading at 36.

the "consolidation" of their issues with those of others similarly situated.  None of these

has merit.

The first contention is a non-issue.  While of course it is true that the Sesay

Plaintiffs were not consulted when the procedures were put in place under which parties

wishing to be exempted from the Sale Order would have to object (which procedures

included, among others, the 3-day time period for filing an objection), they were on

notice of the need to object, by a filing in this Court, going back at least to July 12 of this

year, when their counsel filed a nearly identical pleading for the Elliott Plaintiffs.  And in

any event, New GM agreed to a substantially longer, 14-day, period for the Sesay

Plaintiffs to respond.  Thus the Sesay Plaintiffs were never injured in fact by the original

3-day period of which they complain.

The second contention disregards the relevant facts.  As New GM has repeatedly

pointed out, most recently in its response to the Sesay Plaintiffs' motion,[25] New GM is

not seeking any new injunction against them.  It is simply seeking to enforce the

preexisting injunction set forth in the Sale Order, which covers Sesay Plaintiffs' claims,

and which, at least at this juncture, remains in effect.  Thus a separate adversary

proceeding is not required.  And New GM did request enforcement of the Sale Order by

motion, filed on April 21, 2014.  It thus ill suits the Sesay Plaintiffs to complain of the

absence of a separate motion addressed uniquely to them, when their counsel Peller

elected to disregard the existing injunction even when he was on notice of it.  They are

fortunate that New GM did not move against them—and especially their counsel—for

contempt.  What the Sesay Plaintiffs have been entitled to, on the Motion to Enforce, is

---

[25]    New GM Response at 19.

"reasonable notice and opportunity for hearing,"[26] which they most assuredly will receive.[27]

The third contention is likewise a non-issue.  What the Sesay Plaintiffs call a "de facto consolidation"[28] is nothing more than consideration of identical and similar issues in a coordinated way, which Article III and Article I federal judges routinely do.  The Sesay Plaintiffs are entitled to individualized consideration of any arguments they might put forward that weren't satisfactorily presented by others, and they will have that, to the extent necessary, in the proceedings that follow.

*5. Abstention*

Finally, the Sesay Plaintiffs, invoking the doctrine of discretionary abstention, codified in 28 U.S.C. § 1334(c)[29] and fleshed out in caselaw (but wholly failing to address in their No Stay Pleading the enumerated considerations that inform decisions as

---

[26]    Fed. R. Bankr. P. 9014(a).

[27]    Nor does it matter who has the burden of persuasion on the applicability of a continuing stay, another matter the Sesay Plaintiffs argue.  Sesay Pl. No Stay Pleading at 37.  Though the briefing now in process may persuade me that I should not enforce the existing injunction, or that I should limit its applicability, the Sesay Plaintiffs are now enjoined under the Sale Order, and the issues before me are not close enough to present a case where the burden of persuasion would matter.

[28]    Sesay Pl. No Stay Pleading at 37.

[29]    With an exception not applicable here, the discretionary abstention provision provides:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Mandatory abstention is addressed in a separate subsection, § 1334(c)(2,), but the Sesay Plaintiffs understandably do not contend that mandatory abstention would be applicable here.

to discretionary abstention),[30] ask me to abstain from considering whether the Sale Order

should continue to apply to them.  In the exercise of my discretion, I decline to do so.

Discretionary abstention, as its name implies, is within the discretion of the court

that is asked to abstain.  The factors relevant to exercising that discretion were listed by

Judge Drain in *Portrait Corp*, and by me in *GM-Trusky*, as:

> 1. The effect or lack thereof on the efficient administration of the bankruptcy estate if the court recommends abstention;
>
> 2. The extent to which issues of non-bankruptcy law predominate over bankruptcy issues;
>
> 3. The difficulty or unsettled nature of the applicable non-bankruptcy law;
>
> 4. The presence of a related proceeding commenced in state court or other non-bankruptcy court;
>
> 5. The jurisdictional basis, if any, other than 28 U.S.C. § 1334;
>
> 6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
>
> 7. The substance rather than form of an asserted "core" proceeding;
>
> 8. The feasibility of severing non-bankruptcy law claims from core bankruptcy matters to allow judgments to be entered in non-bankruptcy court with enforcement left to the bankruptcy court;
>
> 9. The burden of the bankruptcy court's docket;

---

[30]    Oddly, the Sesay Plaintiffs' counsel did so in connection with a similar motion he filed on behalf of the Elliott Plaintiffs.  Both abstention requests are being denied today, for the reasons set forth in this decision.

> 10. The likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;
>
> 11. The existence of a right to a jury trial; and
>
> 12. The presence in the proceeding of nondebtor parties.[31]

Each of Judge Drain and I has recognized that "federal courts should be sparing in the exercise of discretionary abstention."[32] Each of us has likewise recognized, nevertheless, that "in appropriate cases they should abstain."[33]

But for the reasons discussed below, this is hardly an appropriate case. New GM asks me to construe and enforce an order I previously entered. The Sesay Plaintiffs' action is one of over 100 involving that issue. The abstention issue, of course, is not whether I should abstain from hearing the Sesay Plaintiffs' *underlying* claims (which, unless they were assertable against Old GM, would be heard by a federal tribunal elsewhere, to the extent I would later decide that the Sesay Plaintiffs can still assert them notwithstanding the Sale Order), but whether I should abstain from a request to *construe and enforce my earlier order.*[34] That is not at all a difficult question.

---

[31] *In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641-42 (Bankr. S.D.N.Y. 2009) (Drain, J.) ("**Portrait Corp.**"); *Trusky v. Gen. Motors Co. (In re Motors Liquidation Co.)*, 2013 Bankr. LEXIS 620, at *28-29, 2013 WL 620281, at *10 (Bankr. S.D.N.Y. Feb. 19, 2013) (Gerber, J.) ("**GM–Trusky**").

[32] *Portrait Corp.*, 406 B.R. at 641; *GM-Trusky,* 2013 Bankr. LEXIS 620, at *29, 2013 WL 620281, at *10.

[33] *Portrait Corp.*, 406 B.R. at 641; *GM-Trusky,* 2013 Bankr. LEXIS 620, at *29, 2013 WL 620281, at *10.

[34] Though the Sesay Plaintiffs are vague in addressing who would construe and enforce my earlier order if I were to abstain, they seem to imply that it would be done, if by anyone, by Judge Furman, the district judge before whom they filed their action in violation of my earlier order. *See* Sesay Pl. No Stay Pleading at 39.

While § 1334(c)(1) speaks of interests of comity with state courts and respect for state law, it now is well established, by caselaw, that just as a bankruptcy court can abstain in favor of a state court, it can do likewise in favor of another federal court. *See, e.g., Portrait Corp.*, 406 B.R. at 639, 643;

-14-

To decide the matter, I consider, as I did in *GM-Trusky,* the applicable factors.

*Factor #1:*
*Effect on Efficient Administration of Estate*

In the strictest sense, the "estate" is that of Old GM, and this matter principally involves New GM. But in every other respect, the "effect on efficient administration" of matters on my watch is obvious, and it overwhelmingly favors a decision not to abstain. I have before me over 100 actions presenting identical issues—the construction, and enforceability, of a Sale Order that I personally entered. With respect to those many actions, the opening brief on the Threshold Issues has just been filed.[35] The notion of having those issues in over 100 of those actions decided by me, and those in a single action decided by another judge (especially where that other judge lacks my familiarity with the Sale Order and circumstances surrounding its entry), can hardly be considered to be in any way "efficient."

These considerations all strongly call for a decision not to abstain.

*Factor #2:*
*Extent to Which Issues of Non-Bankruptcy Law*
*Predominate Over Bankruptcy Issues*

This controversy is all about bankruptcy law—what a federal bankruptcy order provided; what it might have provided or should have provided; what kind of notice should have been provided before the earlier bankruptcy order was entered; and what we should do, as a matter of federal bankruptcy law, if there were any deficiencies in those

---

*GM-Trusky,* 2013 Bankr. LEXIS 620, at *28, 2013 WL 620281, at *10. Thus abstention is theoretically possible. But as each of Judge Drain held in *Portrait Corp.* and I held in *GM-Trusky,* abstention is appropriate, in favor of state and federal courts alike, where such is "in the interest of justice." *Id.* Whether it could possibly be in the "interest of justice" to facilitate, by abstention, the continued prosecution of an action knowingly brought in violation of a bankruptcy court order is a matter that is addressed in the discussion of abstention doctrine factors to follow.

[35]    *See* ECF No. 12981.

-15-

respects.  Though bankruptcy courts, like other federal courts, consider other issues or

aspects of federal law (such as requirements of due process) in considering matters of the

character of those here, those issues are a subset of the larger array of issues, which

principally involve bankruptcy law.  This case is diametrically opposite from those

historically warranting discretionary abstention, such as those predominantly involving

state law or even federal nonbankruptcy law (such as labor law, ERISA law, or

environmental law) where the non-bankruptcy law issues are difficult, or where

bankruptcy judges lack comparable expertise.

     This factor strongly calls for a decision not to abstain.

*Factor #3:*
*Difficulty or Unsettled Nature of*
*the Applicable Non-bankruptcy Law*

     The non-bankruptcy law here—principally, constitutional law with respect to due

process, as applied in bankruptcy cases and to bankruptcy orders—is one which

bankruptcy judges consider repeatedly.  And while difficult issues plainly exist in this

area, bankruptcy judges deal with them at least as often, and probably more often, than

nonbankruptcy judges do.  So while Factor #3 not uncommonly calls for decisions to

abstain, it here does not weigh in favor of such a result, and in fact calls for a decision not

to abstain.

     Conversely, it is the bankruptcy issues (and mixed issues of bankruptcy law and

constitutional law) that here are the difficult ones.  If we look at the issues from a broad

perspective, the typical bankruptcy judge would normally have more familiarity with

such bankruptcy issues than the typical nonbankruptcy judge.  And with a more focused

perspective, considering my personal familiarity with them, that is particularly true.  Here

I have more than 40 years of experience in bankruptcy law.  And I have more familiarity

than any other judge with the circumstances leading up to the entry of the Sale Order, and its underlying intent. Respectfully, I have considerably more tools to decide the relevant issues than any other judge might.

The latter concerns strongly call for a decision not to abstain.

*Factors #4 and 10:*
*Presence of Related Proceeding*
*Forum Shopping*

Here there is another proceeding—though not one involving the construction of the Sale Order. The other proceeding is one on the merits of claims that the Sesay Plaintiffs wish to assert, which Peller, while on notice of my earlier injunction, brought anyway, in knowing disregard of an order of this Court. Rather than asking for relief from the earlier order, he disregarded it. Rewarding such conduct is hardly in the interests of justice.

Peller says, remarkably, that:

> This Court should decline to exercise jurisdiction it may believe it has over the *Sesay* lawsuit because the federal Court before which the *Sesay* lawsuit is pending has indicated that Plaintiffs may commence prosecuting their claims before that Court despite any stay stipulation they many [*sic.*] have entered or this Court may have purported to impose.[36]

But this Court's Sale Order did not "purport[]" to impose anything. It *did* impose an unequivocal injunction against litigation against New GM involving vehicles manufactured by Old GM or involving Old GM parts. Whether I should relieve the Sesay Plaintiffs or others from that injunction is a matter that the plaintiffs in over 100

---

[36] Sesay Pl. No Stay Pleading at 39.

other actions are litigating by the rules.  Why I should abstain in favor of an action that

the Sesay Plaintiffs brought in knowing violation of that injunction is a mystery.

New GM's request for construction and enforcement of the Sale Order, sought in

the same court that entered the order, is hardly forum shopping.  Rather it is the *Sesay*

*Plaintiffs'* effort to litigate in another forum, rather than by seeking a ruling from the

Court that enjoined them, that is in fact forum shopping—seeking benefits from their

disregard of my earlier order, to secure rulings from a judge who, by definition, lacks

comparable familiarity with the prior proceedings in this Court, and the legal and factual

contexts in which they took place.

Matters get worse still when the Sesay Plaintiffs mischaracterize Judge Furman's

order.  It allowed nothing more than the filing of a complaint.  It did not in any way take

issues away from me.  Nor did it express the view that a nonbankruptcy court could

decide the matters pending before me better than I could.  The situation here is very much

like the situation I encountered in *GM-Trusky*, where I concluded that I should construe

my own order.  It was only after doing so that I transferred the remainder of the

controversy to a Michigan district judge who could decide the remaining issues as well as

I could.

These considerations all call, strongly, for a decision not to abstain.

*Factors #5, #6, and #7:*
*Jurisdictional Basis*
*Relatedness to Main Bankruptcy Case*
*Core Proceeding/Constitutional Authority to Decide*

We have been through this before.  The jurisdictional basis for the matters before

me is the "arising in" prong of 28 U.S.C. § 1334, which vests district courts (and hence

bankruptcy courts) with subject matter jurisdiction over matters important to bankruptcy

administration.  As noted above and in *Elliott*, New GM's motion invokes authority as high as the United States Supreme Court and the Second Circuit recognizing the subject matter jurisdiction of bankruptcy judges to construe and enforce their earlier orders.

The issues before me also are closely related to the main bankruptcy case.  Once again, they arise with respect to the construction and enforcement of an order entered in the main bankruptcy case.  They also affect needs and concerns of creditors of Old GM, who might legitimately fear that to the extent I rule that Ignition Switch Actions plaintiffs' claims may not be asserted against New GM, they should nevertheless be assertable against *somebody*—with the most likely candidate being the Old GM estate.  It was for exactly that reason that I gave the GUC Trust and Old GM creditors the right to appear and be heard on the Motion to Enforce.  A nonbankruptcy court might grant them the same standing, but it is more obviously appropriate in proceedings before me.

Earlier caselaw before *Stern v. Marshall*[37] had spoken in terms of whether or not the abstention request was made in connection with a "core proceeding."  After *Stern*, many bankruptcy judges (and I am one of them) consider the more important concern to be our constitutional authority to enter a final order with respect to the matter before the bankruptcy court.  New GM's Motion to Enforce—seeking enforcement of a sale order entered in connection with a section 363 sale—is indeed a "core matter" by statute, under 28 U.S.C. §§ 157(b)(2)(A),[38] (N),[39] and (O).[40]  But more fundamentally, it is a matter

---

[37]    131 S.Ct. 2594 (2011) ("***Stern***").

[38]    "[M]atters concerning the administration of the estate."

[39]    "[O]rders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate."

[40]    "[O]ther proceedings affecting the liquidation of the assets of the estate . . .", *i.e.*, the assets of the estate that were sold in exchange for cash and New GM stock incident to the 363 Sale, under the Sale Order New GM now wishes to enforce.

which bankruptcy judges have the constitutional power to decide and enter final orders, in furtherance of their *in rem* jurisdiction, as my earlier order authorizing the sale of property then owned by Old GM likewise was.

The construction and enforcement of bankruptcy court orders—however the chips might ultimately fall when the bankruptcy judge is asked to do so—is important to the bankruptcy system. That systemic concern, reinforced by the relatedness of the Sale Order to this case (each as relevant to Factors #5 and #6), calls for a decision *not* to abstain. The third factor, relating to the existence of a "core" matter and constitutional authority, does not necessarily suggest a decision not to abstain. But it does not favor the opposite conclusion either. (It applies most commonly when the bankruptcy court lacks the ability to enter a final order with respect to the matter in question, a concern that is not applicable here.) Effectively, it is a wash.

*Factor #8*
*Feasibility of Severing Non-Bankruptcy Claims*

This factor applies in instances where it is practical, and advisable, to sever non-bankruptcy claims and have them decided somewhere else. It is not applicable here. Effectively, then, it is a wash.

*Factor #9*
*Burden of Bankruptcy Court's Docket*

I am indeed burdened; the *General Motors* case is only one of many major matters on my watch. Nevertheless, I have the responsibility to do my job. My responsibilities include construing and enforcing my earlier orders (and, to the extent applicable, determining any limits on their enforceability), and I will be doing just that, with respect to all of the 100 or more cases presenting identical or nearly identical issues, *in any event*. Other than by reason of the need to rule on repeated filings that, after my

earlier rulings, should never have been brought, I will suffer no material incremental

burden in considering the Motion to Enforce with respect to the Sesay Plaintiffs here.

Factor #9 applies when the court asked to abstain is heavily burdened and another

court might hear the controversy just as well.  Under the facts here, this factor does not

call for a decision *not* to abstain, but it does not favor abstention either.  Once again, it is

a wash.

*Factor #11*
*Right to Jury Trial*

No court would hold a jury trial on the enforcement or construction of the Sale

Order at issue here.  Thus, while bankruptcy judges may conduct jury trials only under

limited circumstances and with litigant consent, this factor has no relevance here.

Factor #11 applies when a litigant has a right to a jury trial and the bankruptcy

court could not conduct one.  Here, because no litigant has such a right, this factor does

not apply.  Under the facts here, this factor does not call for a decision *not* to abstain, but

it does not favor abstention either.  Once again, it is a wash.

*Factor #12*
*Presence of Nondebtor Parties*

Factor #12 is sometimes misunderstood because of the breadth of the language by

which it is described.  Factor #12 applies when the bankruptcy court, by reason of the

presence of nondebtor parties, might have practical or constitutional limitations in

providing full relief.  It also may apply when the needs and concerns of the particular

parties involved are too divorced from the matters properly before the bankruptcy court.

Here, all of the parties are "nondebtor parties," but they share important needs and

concerns with respect to the bankruptcy court's determination of what the Sale Order

covers and what it does not, and whether and how it should be enforced in light of Ignition Switch Actions plaintiffs' concerns.

Under the facts here, this factor does not call for a decision *not* to abstain, but it does not favor abstention either.  Once again, it is a wash.

\* \* \*

Some of these factors do not materially affect the abstention decision one way or another.  But not a single one of them suggests a decision to abstain.  And those that are applicable overwhelmingly suggest the decision *not* to abstain.

The Sesay Plaintiffs' motion to abstain is denied.

<u>Conclusion</u>

For the reasons stated above, the Sesay Plaintiffs' action will be stayed along with the others.  They may, of course, proceed with their litigation to the extent that I later rule, with respect to all 100 plus actions, that the Sale Order does not bar any of their claims.  But they cannot do so now.

New GM is to settle an order consistent with these rulings.

Dated: New York, New York           ___*s/Robert E. Gerber*___
          November 10, 2014                United States Bankruptcy Judge