Endorsed Order:

The record is incomplete, but an evidentiary hearing to clarify it would be burdensome for the parties and an ill-advised use of judicial resources.

Counsel for New GM and Ms. Bloom are to exchange information and confer with each to other to ascertain the details with respect to any efforts by Ms. Bloom to get the ignition switch in her 2008 Cobalt fixed before April 2014, and whether after Ms. Bloom's Cobalt was repaired in April 2014 pursuant to the recall, she suffered further ignition switch problems with the car that New GM failed to remedy.  They are to do likewise with respect to any problems (other than with respect to the ignition switch) that Ms. Bloom brought to New GM's attention that New GM failed to remedy.

On this state of the record, it does not appear that Ms. Bloom has a Lemon Law Claim nor one under the Glove Box Warranty, and it appears that the remainder of her asserted claims are proscribed the Sale Order.  But the Court will defer final determination as to these matters pending clarification of the record.

The parties may take any reasonable time necessary to clarify the matter for the Court.  In the meantime, Ms. Bloom's action remains stayed, and both sides' rights with respect to any and all pending issues are reserved.

Dated: New York, New York             *s/Robert E. Gerber*
       November 10, 2014                United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No.: 09-50026(REG) |
| | : | |
| Motors Liquidation Company, et al. | : | **PLAINTIFF'S NO STAY PLEADING** |
| f/k/a General Motors Corp., et al. | : | |
| | : | |
| | : | |
| Debtors. | : | |
| | : | |

**PLAINTIFF'S NO STAY PLEADING**

TO:   The Judges of the United States Bankruptcy Court Southern District of New York.

Now comes Plaintiff, Karen Bloom ("Bloom"), and hereby files a No Stay Pleading, pursuant to the Scheduling Order issued by this Honorable Court on July 8, 2014 and submits the following in support thereof:

**PROCEDURAL HISTORY**

1. On September 5, 2014 Plaintiff Karen Bloom, filed a four-count Petition against the Defendant, General Motors, LLC in the Luzerne County Court of Common Pleas. The corresponding case number is 2014-102515-0.

2. Defendant filed a Notice of Removal in the Middle District of Pennsylvania on or about October 1, 2014.  The corresponding case number is Civil Action No.: 3:14-v-01903ARC.  Plaintiff responded with a Notice to Remand which was filed on October 10, 2014.

3. On October 14, 2014, the Defendant sent the Plaintiff the Order issued by this Court on July 8, 2014 requiring that all new ignition switch case plaintiffs either file a

stipulation and agree to stay the matter, or file a "No Stay Pleading" within three days. The Plaintiff then filed this pleading on October 17, 2014.

## BACKGROUND

1. On September 5, 2014, Plaintiff filed a four-count Petition against Defendant, GENERAL MOTORS, LLC, (hereinafter "Defendant"), in the Luzerne County Courts, alleging a violation of Pennsylvania Lemon Law, the Magnuson-Moss Warranty Act, the Pennsylvania Uniform Commercial Code and the Pennsylvania Unfair Trade Practices and Consumer Protect Act[1]. (See Plaintiff's Complaint attached hereto as Exhibit "A."). The case number for this matter is 2014-10215-0.

2. All of the laws the Plaintiff filed under compose Pennsylvania's Lemon Laws, which basically require a manufacturer fix a defect that arises during the warranty period within a reasonable amount of time. Each law has different caveats when determining if a vehicle qualifies, but the main crux of each claim is the same. See Meyers v. Volvo Cars of North America, Inc., 852 A.2d 1221, 1227 (Pa. 2004.); and Price v. Chevrolet Motor Div., 2000 Pa. Super. LEXIS 4213 (Pa. Super. Ct. December 29, 2000.)

3. In the complaint the Plaintiff alleges that her 2008 Chevrolet Cobalt, which was manufactured and warranted by the Defendant, violates Pennsylvania Lemon Laws as during her three year, thirty six thousand mile warranty, a defect arose related to the ignition switch that could not be fixed in a reasonable amount of time by the Defendant.

---

[1] Note: Plaintiff admits that under the Sale Agreement, which is discussed in depth further, does not include claims under the Unfair Trade Practices and Consumer Protection Act and therefore agrees to withdraw this claim.

4. A complaint was filed in the Court of Common Pleas in Luzerne County, that was later removed by the Defendant to the Middle District of Pennsylvania based on its relation to the Bankruptcy Code. See *Karen Bloom v. General Motors, LLC*; Case No. 2014-10215-0; See also Civil Action No.: 3:14-v-01903ARC (M.D. Pa.).

5. Defendant's claim that this case is related to the Bankruptcy Code is due to Old GM's filing for bankruptcy under Chapter 11 of the United States Bankruptcy Code in 2009. Through a bankruptcy-approved sale process pursuant to Section 363 of the Bankruptcy Code, New GM acquired many assets of Old GM along with certain delineated liabilities.

6. Section 2.3 of the Sale Agreement specifically outlines the liabilities accepted by New GM and are as follows:

   *Section 2.3 Assumed and Retained Liabilities.*

   (a) The "Assumed Liabilities" shall consist only of the following Liabilities of Sellers:

   (vii) (A) **all Liabilities arising under express written warranties** of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing **and (B) all obligations under Lemon Laws**.

(*See* excerpt from the MSPA filed on July 2, 2009, attached as Exhibit "B.") (emphasis added.)

7. As the Defendant, New GM, assumed all obligations under Lemon Laws, it is required that the Defendant fix any defects that arise within a reasonable amount of time and/or cover all of these repairs under the "Glove Box Warranty." A failure to comply with either of those prongs is a violation of the Lemon Laws.

8. The Plaintiff filed a complaint based on these assumed liabilities and the

Defendant is now attempting to remove this case to Bankruptcy Court stating that it is related to a case under the Bankruptcy Code. Upon remove of the claim, New GM intends to identify this case on a supplement scheduled in Bankruptcy Court as an Ignition Switch Action subject to a Motion to Enforce that was filed by the Defendant and is awaiting approval. This Motion to Enforce attempts to prevent plaintiffs in various cases alleging ignition switch defects from prosecuting their claims and to dismiss them with prejudice. New GM's basis for this motion is that these actions relate to actions of Old GM and do not fall within the purview of New GM's assumed liabilities under the Sale Agreement.

9. A Scheduling Order dated May 16, 2014 was issued by this Honorable Court allowing plaintiffs in ignition switch cases to enter into a voluntary stipulation with New GM to stay the proceedings while the Motion to Enforce is decided. The Order stated that if a Plaintiff chooses not to enter into a voluntary stay stipulation, it shall be required to file a pleading in this Court within three days of receiving the stipulation and attached documents from General Motors.

10. The Plaintiff received these documents from the Defendant on October 14, 2014 and hereby files a pleading requesting this Honorable Court not stay this claim as it is in no way related to the other ignition switch cases, nor is there a dispute as to whether New GM assumed liability for lemon law claims.

11. The Plaintiff also filed a Motion to Remand with the Middle District of Pennsylvania on October 10, 2014 requesting that the claim be remanded back to the Court of Common Pleas in Luzerne County as this claim is not related to the other ignition switch cases and there is no dispute as to whether New GM assumed

lemon law liabilities from Old GM in the Sale Agreement.

## ARGUMENT

**A. New GM expressly agreed to accept liability for lemon law claims in the Sale Agreement.**

12. The Defendant, New GM alleges that the Bankruptcy Court's Order and Injunction, which incorporated the Sale Agreement, relieved New GM of any liability relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009, with the exception of those liabilities expressly assumed. Based on this agreement, New GM filed a motion to enforce the injunction against a series of claims brought against them relating to a faulty ignition switch, as these defective vehicles were manufactured by Old GM and not part of the liabilities expressly assumed by New GM. The Defendant now states that the claim of Ms. Bloom, the Plaintiff in this matter, should be lumped in with these claims, removed to Bankruptcy Court, and stayed along with the other product liability actions while this motion is decided.

13. Plaintiff disagrees with this because the claim at hand is a lemon law claim, which is a liability expressly assumed by New GM in the Sale Agreement. The other ignition claims relate to obligations not expressly assumed, so staying these actions while this Honorable Court determines the liability, if any of New GM, in these matters is appropriate. Staying the matter at hand, however, is not appropriate for two main reasons: 1) the Sale Agreement expressly states that New GM is liable for all obligations under lemon laws; and 2) when this Honorable Court does come to a conclusion on New GM's liability, it will not be applicable to the Plaintiff

because this is not a product liability, wrongful death nor personal injury claim; this is a lemon law claim which is not intertwined or in any way related to these actions.

14. The Sale Agreement specifically stated that New GM assumed "all liabilities arising under express written warranties of Sellers," known as a "Glove Box Warranty," and "all obligations under Lemon Laws." (See Plaintiff's Exhibit "B.")

15. According to *Trusky*, this agreement means that New GM must honor any "Glove Box Warranty" that was issued with vehicles produced by Old GM. The "Glove Box Warranty" requires that a manufacture repair or replace any defective parts in a vehicle during the warranty period. <u>Trusky v. Gen. Motors Co. (In re Motors Liquidation Co.</u>), Adv. No. 12-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013.)

16. Here, the Plaintiff is alleging that New GM breached the "Glove Box Warranty" by failing to fix a defect that arose within the warranty period in a reasonable amount of time. This is supported by the Plaintiff returning to an authorized dealership no less than three times for repairs due to ignition defects. Whether this is a reasonable number of times is for a the trier of fact to decide, but what is important is the basis for the claim, which is the failure of New GM to honor the "Glove Box Warranty" as required by the Sale Agreement.

17. By failing to honor the "Glove Box Warranty," New GM violated Pennsylvania Lemon Laws, thus giving the Plaintiff standing to file a claim under these laws in the Luzerne County Court of Common Pleas.

18. Section 2.3 of the Sale Agreement unequivocally states that New GM accepts "**all obligations under Lemon Laws**."  (See Plaintiff's Exhibit "B.")

19. Additionally, the stayed matters include, but are not limited to, claims for product liability, personal injury and other tort-based actions.  Any decision by this Honorable Court relating to New GM's liability in these actions will be inapplicable to the Plaintiff because none of her causes of action overlap with the current pending cases.

20. Also, New GM already accepted liability for these actions as the Defendant has not objected to or contended that it did not assume liability for these actions since the 2009 bankruptcy proceeding.  The Plaintiff's law office's practice is focused on Pennsylvania and New Jersey Lemon Laws and this is the first time New GM has contended against liability since the bankruptcy proceeding in 2009.

21. Therefore, this action should not be stayed because, unlike the other pending product liability cases, the Sale Agreement expressly states that New GM accepts all liabilities under lemon laws, and GM has not contended this issue until now. Moreover, staying the motion would only prejudice the Plaintiff as the other claims are legally distinct from the Plaintiffs, and she would be forced to wait for a decision that is inapplicable to her claim.

B.  **Claim is distinguishable from Phaneuf Order**

22.  The basis of the Plaintiff's claim is simple – New GM breached the warranty by failing to fix a defect within a reasonable amount of time as required by the warranty and relevant lemon laws.  The Sale Agreement clearly states that New GM assumes all liability for obligations arising under lemon laws, so suit was

brought against this entity.

23. Currently, there are over one hundred product liability claims pending against New GM relating to faulty ignition switches that were manufactured by Old GM. These claims against New GM include, but are not limited to, products liability, wrongful death and personal injury. All of the actions were removed to federal court because it is in contention as to whether the Sale Agreement holds New GM liable for these types of tort actions. Therefore, since the Bankruptcy Court approved of the original Sale Agreement, it is now up to this Court to interpret the agreement and either agree that New GM is liable, or enforce an injunction against these claims.

24. Defendant alleges that the claim at hand should be lumped in with these claims, and stayed while the Bankruptcy Court decides whether New GM is liable for the ignition switch issues. Majority of the plaintiffs in these claims agreed to stay the matter until a decision is rendered. Two plaintiffs have attempted to distinguish themselves from the rest and asked that their suit not be stayed, but this motion was denied. The Defendant may attempt to use these two orders to show that the same should hold true for the Plaintiff.

25. The Phaneuf decision from In re Motors Liquidation Company is one of those orders. In this claim the plaintiffs attempted to distinguish their case by showing that the basis of their claim is only the actions of New GM, and is unrelated to Old GM's conduct. (See Plaintiff's Exhibit "C.") Honorable Judge Gerber rejected this contention stating that since the vehicle was manufactured prior to the Bankruptcy Sale, Plaintiff's material reliance on the alleged conduct of Old GM is

well established.  Therefore, the case must be stayed while the Bankruptcy Court decides which actions of Old GM are New GM's liability.

26. Defendant may attempt to draw a parallel between this case and the one at hand by showing that the vehicle at issue was manufactured by Old GM, and therefore, the basis of the complaint is on both the actions of Old and New GM, and the claim should be stayed.

27. Defendant's allegations, however, again miss the actual basis for the claim at hand. Unlike the Phaneuf plaintiffs, this claim falls under Pennsylvania Lemon Laws and not product liability.  Unlike product liability claims, which are not expressly assumed in the Sale Agreement, New GM did assume responsibility for obligations under lemon laws and cannot hide behind an injunction dealing with wholly separate issues.

28. Furthermore, a manufacturing defect is not the only requirement of lemon laws as a car must have more than a defect for a claim to be pursued.  Lemon Laws also require that a defect, which arises during the warranty period, be fixed in a reasonable amount of time.  The level of severity of the defect varies amongst the lemon laws, but the common thread is how quickly the defect was resolved.  This question is determined by evaluating the number of repair attempts to the same defect, which, in this case, were all performed after New GM was formed. Therefore, the main crux of the claim is based on the actions of New GM and whether their authorized dealerships were able to fix this defect in a reasonable amount of time.

29. It also cannot be overstated enough that the Sale Agreement clearly states that New

GM accepts all obligations under lemon laws, which is exactly the type of claim at hand here.

30. Therefore, Plaintiff's claim should not be combined with the pending liability claims and stayed as this claim is based on obligations clearly accepted by New GM in the sale agreement, unlike those claims asserted by the Phaneuf plaintiffs.

**C. Plaintiff's claim is distinguishable from the Elliott Plaintiffs**

31. The other order the Defendant may use in attempt to show that this claim must be stayed is the order from the Elliott Plaintiffs in <u>in Re Motors Liquidation Company</u>. In this case, the plaintiffs are again asserting product liability issues and alleging that Old GM committed unlawful concealment in relation to the ignition switch defect. (See Plaintiff's Exhibit "D.") Again, the type of liability that arises from these claims (ie. Wrongful death, personal injury, fraud…etc.) were not expressly assumed by New GM in the sale agreement. The Honorable Judge rejected the plaintiff's attempt to distinguish themselves from the rest and stayed the claim as it must be decided what liability, if any, New GM has in these claims.

32. The Plaintiff admits that whether New GM is liable for any tort claims is an issue solely for the Bankruptcy Court to decide, however, the Plaintiff here does not have a single overlapping legal claim with these other suits. Furthermore, New GM clearly accepted all obligations relating to lemon law in the sale agreement, and that is exactly the claim presented by the Plaintiff in this matter. The Defendant cannot attempt to hide behind products liability and other tort claims to avoid liability that was freely accepted as part of the Sale Agreement from 2009.

33. The Elliott Order states that:

    "The Sale Order provided, among other things, that **except for the assumed liabilities expressly set forth in the Sale Agreement,** GM would not have any liability for any claim that arose prior to the Closing date, relates to the production of vehicles prior to the Closing Date, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date."

    (See Plaintiff's Exhibit "D," pg. 8.)

    This paragraph clearly states that New GM is not liable for any claims that arose prior to the Sale Agreement on July 2, 2009 **unless** the claim falls into those liabilities expressly set forth in the sale agreement.

34. Section 2.3 of the Sale Agreement lists those claims which New GM accepts liability for, and the final liability listed is **"all obligations under lemon laws."** See Section 2.3 (B), attached hereto as Exhibit "C."

35. It cannot be more clearly written that New GM accepts all obligations under lemon laws and the Plaintiff's claim is no exception. There is no caveat included in this writing to exclude lemon law claims which may be similar to products liability suits or that are based on vehicles manufactured prior to the creation of New GM, evidencing that the Defendant cannot hide behind their current law suits to deny liability for this lemon law claim.

36. This also substantiates that the time in which the vehicle was manufactured is irrelevant. New GM accepted all obligations under lemon laws from Old GM, making the date of manufacture wholly irrelevant in this claim. This date is only important for claims which New GM did not expressly accept liability for under the Sale Agreement, which would be the current product liability cases at hand in Bankruptcy Court and MDL 2543.

37. Therefore, this claim should not be stayed, as the Plaintiff is in no way related to the other pending cases and New GM accepted liability for lemon law claims under the 2009 Sale Agreement.

## CONCLUSION

WHEREFORE, in light of the foregoing, the Plaintiff respectfully requests this Honorable Court agree not to stay this claim as it is based on liabilities clearly assumed by New GM and is in no way related to the ignition switch product liability suits awaiting this Court's decision on the Motion to Enforce.

Respectfully Submitted,

/s/ David J. Cohen, Esq.
David J. Cohen, Esq. (Id No. 74070)
Kolman Ely, P.C.
414 Hulmeville Avenue
Penndel, PA 19047
Phone: 215-750-3134
Fax: 215-750-3138
Email: dcohen@kolmanlaw.net

*Counsel for the Plaintiff, Karen Bloom*

Dated: October 17, 2014

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 17th day of October, 2014, a true and correct copy of the foregoing, No Stay Pleading on behalf of the Plaintiff, Karen Bloom, was served upon counsel of record through the electronic case file management system:

King & Spalding
Arthur Steinberg, Esq.
1185 Avenue of the Americas
New York, NY 10036
asteinberg@kslaw.com

King & Spalding
Scott Davidson, Esq.
1185 Avenue of the Americas
New York, NY 10036
sdavidson@kslaw.com

Kirkland & Ellis, LLP
Richard Godfrey, Esq.
300 North LaSalle, Chicago, IL 60654
rgodfrey@kirkland.com

Andrew Bloomer
Richard Godfrey, Esq.
300 North LaSalle, Chicago, IL 60654
abloomer@kirkland.com

Attorneys for the Defendant, General Motors, LLC

Dated:    October 10, 2014

BY: /s/ David J. Cohen, Esq.