UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re: : Chapter 11
:
MOTORS LIQUIDATION COMPANY, *et al.*, : Case No.: 09-50026 (REG)
    f/k/a General Motors Corp., *et. al.* :
: (Jointly Administered)
    Debtors. :
:
------------------------------------------------------------ x

**OMNIBUS REPLY BY ROGER DEAN GILLISPIE TO THE BRIEFS
CONCERING ROGER DEAN GILLISPIE'S MOTION TO PURSUE CLAIMS
AGAINST GENERAL MOTORS LLC, AND, ALTERNATIVELY,
TO FILE A POST-BAR-DATE PROOF OF CLAIM IN THE
<u>MOTORS LIQUIDATION COMPANY BANKRUPTCY</u>**

November 12, 2014

_____
David B. Owens
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, Illinois 60607
312-243-5900

*Attorneys for Roger Dean Gillispie*

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** .................................................................................................. ii

**INTRODUCTION** ................................................................................................................... 1

**ARGUMENT** .......................................................................................................................... 4

    I.    **Roger Dean Gillispie Had No "Claim" At the Time of the GM Bankruptcy and Entry of the Sale Order, Meaning Due Process Prohibits the Sale Order From Being Used To Bar His Post-Petition Claims** .............................................. 4

        A.  New GM's Efforts to Ignore Binding Precedent Should Be Rejected ................ 4

        B.  Under The Applicable Non-Bankruptcy Law, Mr. Gillispie Had No Claim At the Time of the Bankruptcy and Entry of the Sale Order ................................... 5

        C.  Mr. Gillispie's Claims Were Not "Contingent," "Unmatured," or "Unliquidated" Claims of the Bankruptcy Estate ............................................... 8

    II.   **Due Process Demands that Mr. Gillispie Be Allowed to Pursue His Claims Against Either New GM or In the Motors Liquidation Bankruptcy** ........................ 9

        A.  Mr. Gillispie Has Had Not Any Opportunity, Ever, To Pursue His Claims Against any GM Entity ........................................................................................ 9

        B.  Roger Dean Gillispie Did Not Receive Adequate Notice of the GM Bankruptcy ........................................................................................................ 10

    III.  **If The Court Were To Deem Mr. Gillispie's Claims to be "Pre-Sale Claims," Should Still Be Allowed To Assert His Claims Against Either New GM, in the Old GM Bankruptcy** ............................................................................................... 13

    **CONCLUSION** ............................................................................................................. 14

## **TABLE OF AUTHORITIES**

**Cases**

*In re Applied Theory Corp.*, 312 B.R. 223 (Bankr. S.D.N.Y. 2004) .................................................8

*Armendariz–Mata v. U.S. Dep't of Justice*, 82 F.3d 679 (5th Cir. 1996) .......................................12

*Armstrong v. Floyd Cnty.*, 2013 WL 8711442 (N.D. Ga. Dec. 3, 2013) ...........................................7

*Atkins v. Cory & Cory (In re Cory)*, 2008 WL 5157515 (W.D. Mo. 2008) ......................................7

*Austin v. BFW Liquidation, LLC (In re BFW Liquidation, LLC)*, 471 B.R. 654 (N.D. Ala. 2012) ............7

*Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296 (4th Cir. 2002) ..........................9

*In re Bennett*, 466 B.R. 422 (Bankr. S.D. Ohio 2012) ...................................................................10

*Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113 (D. N.J.1998) ................7

*Carroll v. Henry County, Georgia*, 336 B.R. 578 (N.D. Ga. 2006) ..................................................7

*In re Chrysler LLC*, 576 F.3d 108 (2d Cir. 2009) ...........................................................................10

*In re Chrysler LLC*, 592 F.3d 370 (2d Cir. 2010) ...........................................................................10

*In re Duplan Corp.*, 212 F.3d 144 (2d. Cir. 2000) ...........................................................................2

*Epstein v. Off. Com. of Unsecured Creditors of the Est. of Piper Aircraft*, 58 F.3d 1573 (11th Cir.1995) .........7

*Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437 (1st Cir. BAP 2009) ............................................10

*In re General Motors Corp*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) .................................................9

*Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ..................................................................................9

*In re Grossman's Inc*, 607 F.3d 114 (3d. Cir. 2010) .......................................................................9

*Grumman Olson Industries, Inc.*, 445 B.R. 243 (Bankr. S.D.N.Y 2011) .........................................5

*In re Grumman Olson Industs.*, 467 B.R. 694 (S.D.N.Y. 2012) .............................................. 2,10, 12

*Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701 (1884) .............................................................9

*Heck v. Humphrey*, 512 U.S. 477 (1994) ................................................................ 2, 6, 7, 11, 13, 14

*In re Hexcel Corp.*, 239 B.R. 564 (N.D. Cal. 1999) .......................................................................12

*In re Hudson*, 260 B.R. 421 (Bankr. W.D. Mich 2001) ............................................................ 10, 11

# TABLE OF AUTHORITIES CONTINUED

*In re Jenkins*, 410 B.R. 182 (W.D.Va.2008) .......................................................................................7

*In re Johns–Manville Corp.*, 600 F.3d 135 (2d Cir. 2010) ..............................................................2, 12

*Johnson v. Mitchell*, 2011 WL 1586069 (E.D. Cal. 2011) ....................................................................7

*Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir.1988) ..............................................................12

*In re Lear Corp.*, 2012 WL 443951 (Bankr. S.D. Feb. 10, 2012) ........................................................8

*LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478 (2d Cir. 1995) .................... 2, 5, 7, 8

*In re Lyondell Chem. Co.*, 445 B.R. 277 (S.D.N.Y. Bankr. 2011) .......................................................2

*In re Motors Liquidation Co.*, 2013 WL 110545 (S.D.N.Y Jan. 7, 2013) ...........................................2

*Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306 (1950) ............................... 10, 11

*In re National Gypsum Co.,* 139 B.R. 397 (N.D. Tex. 1992) ...............................................................5

*Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125 (2d Cir.2000) ...............2

*Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993) .........13

*Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) ..........................................................................6

*Stone v. Kmart Corp.*, 2007 WL 1034959 (M.D. Ala. 2007) ...............................................................7

*In re Texaco, Inc.*, 182 B.R. 937 (Bankr. S.D. N.Y. 1995) ..................................................................9

*United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.3d 9977 (2d Cir. 1991) ................. 4, 5, 8, 10

*United States v. Minor*, 228 F.3d 352 (4th Cir. 2000) .................................................................. 11, 12

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ......................................................9

*Wallace v. Kato*, 549 U.S. 384 (2007) ..................................................................................................7

*Zinermon v. Burch*, 494 U.S. 113 (1990) .............................................................................................9

**Statutes and Other Authorities**

42 U.S.C. § 1983 ............................................................................................................................ 1, 5, 6

Federal Bankruptcy Rule 9006(b)(1) ..................................................................................................12

Roger Dean Gillispie ("Mr. Gillispie") by his undersigned counsel, submits this omnibus reply to General Motors LLC's Objection (Dkt. 12863) and Reply (Dkt. 12892), and Wilmington Trust Company's Response (Dkt 12864) and Sur-Reply (Dkt. 12930), regarding Mr. Gillispie's *Motion For Leave To Pursue Claims Against General Motors LLC, And, Alternatively, To File A Post-Bar-Date Proof Of Claim In The Motors Liquidation Company Bankruptcy* (Dkt. 12727), and states as follows:

## INTRODUCTION

1. Roger Dean Gillispie spent nearly 20 years incarcerated for crimes he did not commit. In 2011 and 2012, Mr. Gillispie's conviction was called into question, respectively, by two courts, one federal and state. Thereafter, Mr. Gillispie brought an action under 42 U.S.C. § 1983 alleging that his wrongful conviction involved numerous violations of his constitutional rights; namely, that, in securing his conviction, his right to due process was violated by the suppression of exculpatory evidence, the use of suggestive identification procedures, the fabrication of evidence, and the destruction of other evidence. *See* Mot., Dkt., 12727, at Ex. A, (First Amended Complaint), at 19-22. Mr. Gillispie's § 1983 complaint also includes constitutional and state-law claims for malicious prosecution. *Id.* at 21-24. In addition to certain governmental individuals and entities, Mr. Gillispie alleges that the actions of his former colleagues at General Motors, and, ultimately, the company itself, are responsible for his wrongful conviction.

2. The question now before the Court is straightforward: whether Mr. Gillispie should be able to pursue his claims against New GM (General Motors LLC), Old GM (Motors Liquidation Company), or both. The question turns upon whether the *Sale Order* should be enforced against Mr. Gillispie, and whether that order can be constitutionally enforced against Mr. Gillispie at all. Specifically, if Mr. Gillispie did not have a "claim" at the time of the bankruptcy and sale, the *Sale Order* cannot be constitutionally applied to bar him from seeking relief from New GM. By contrast, if he did have a "claim" at the time of the sale and bankruptcy, the analysis turns on whether Mr.

1

Gillispie should be entitled to pursue a post-bar-date claim in the Old GM bankruptcy estate or whether, for other reasons, his claims should be properly directed at New GM.

3. Unfortunately for New GM, the binding law of the Second Circuit unambiguously directs the Court with the approach it must file when considering the issues presented by Mr. Gillispie's motion. In the Second Circuit, "it is clear that the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition." L*TV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995) (*Chateaugay II*). Thus, "[a] claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all the elements necessary to give rise to a legal obligation—a right to payment—under the relevant non-bankruptcy law." *Id.* Myriad cases have cited to and applied this basic rule. *See, e.g., In re Duplan Corp.*, 212 F.3d 144, at 151 (2d. Cir. 2000) (same); *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d Cir.2000); *see also, e.g., In re Motors Liquidation Co.*, 2013 WL 110545, at * 2 (S.D.N.Y Jan. 7, 2013); *In re Lyondell Chem. Co.*, 445 B.R. 277 (S.D.N.Y. Bankr. 2011) (Gerber, J.).

4. Unfortunately for New GM, under this law, it cannot be doubted that Mr. Gillispie did not have a "claim" at the time of the entry of the *Sale Order*, given that "all of the elements necessary to give rise to a legal obligation," under the relevant "non-bankruptcy law," were not in place until *after* the bankruptcy and sale. Specifically, because Mr. Gillispie's constitutional claims are for wrongful conviction and incarceration, *Heck v. Humphrey*, 512 U.S. 477 (1994), completely barred them at the time of the bankruptcy and sale. Nor did Mr. Gillispie have any constitutional tort at that time associated with his wrongful conviction; there was no constitutional tort until his conviction was called into question, which took place after the sale. Thus, given *Heck*, all of the elements necessary to give rise to a legal obligation were not in existence until after the bankruptcy and sale, meaning he did not have a "claim" at that time. As a consequence, applying the *Sale Order*

2

against Mr. Gillispie to bar his claims against New GM would violate his constitutional right to due process. S*ee In re Johns–Manville Corp.*, 600 F.3d 135, 151-58 (2d Cir. 2010); *In re Grumman Olson Industs.*, 467 B.R. 694, 706 (S.D.N.Y. 2012).

5. Tellingly, the Willmington Trust Company, as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust ("WTC"), agrees with this position: that Mr. Gillispie did not have a "claim" within the meaning of the Bankruptcy Code, and that applying the *Sale Order* to bar Mr. Gillispie's claims would violate due process. *See* WTC Response, Dkt. 12864, at 8-16; WTC Reply, Dkt. 12930, at 4-7.

6. Because New GM loses the argument if the Court were to apply the correct legal analysis, it engages in varied forms of obfuscation. That is, rather than accept the law of this Circuit, New GM asks Court to ignore it and attempts to distract this Court with pages and pages of citations to authorities that either approach the law differently than the Second Circuit, or that have no bearing on the issue presented in the instant motion. *See* Objection, Dtk. 12863, at 11-1, ¶¶33-35; New GM Reply, Dkt. 12892, at 3-6. New GM's approach is to invent a version of the world where its arguments, couched in jargon and meaningless distinction, lead to one conclusion: no claims can proceed against it. These attempts should be rejected.

7. Mr. Gillispie's motion includes an alternative basis: to allow Mr. Gillispie to file a post-bar-date proof of claim in the Motors Liquidation Company bankruptcy, and specifically the General Unsecured Creditors Trust. On this score, it should be uncontroversial that Mr. Gilllispie hould be entitled to at least file a proof of claim in the Motors Liquidation bankruptcy. The WTC's arguments on this aspect of the briefing ring hollow. The WTC admission, under *Heck*, Mr. Gillispie could not bring his claims before his conviction was called into question, should lead it to further admit that "excusable neglect" standard has been met here, thereby excusing his late filing. Mr. Gillispie lacked constitutionally adequate notice of the bankruptcy; publication was ineffective

3

because he was incarcerated, and the notice sent to a Roger Gillispie in Fairborn Ohio was his father (Roger Allen Gillispie) not to Roger Dean Gillispie, the movant here.

8.  In sum, the unique circumstances presented here amply demonstrate why he should be entitled to at least pursue his claims against General Motors to determine what, if any, responsibility the Company bears for his nearly 20 years of wrongful incarceration.

## ARGUMENT

**I. Roger Dean Gillispie Had No "Claim" At the Time of the GM Bankruptcy and Entry of the Sale Order, Meaning Due Process Prohibits the Sale Order From Being Used To Bar His Post-Petition Claims**

### *A. New GM's Efforts to Ignore Binding Precedent Should Be Rejected*

9.  Conspicuously absent from New GM's briefing is citation to binding Second Circuit law discussing what constitutes a "claim" for purposes of the Bankruptcy Code; namely the *Chateaugay* cases, and others faithfully applying them. Of course, a point emphasized by New GM, Mr. Gillispie does not dispute that the Bankruptcy Code's definition of a "claim" is "broad" or that it includes "contingent," "unmatured," and unliquidated claims. That fact, however, does not do anything to explain *what* a contingent claim is or *why* Mr. Gillispie's claims fall into that category. Instead, the Court must look at the issue from the lens mandated by the Second Circuit.

10. In *Chateaugay I*, the Second Circuit considered the difficult issue of tort-victims who have had pre-petition contact with the tort-feasor but whose injuries did not arise until sometime thereafter. In so doing, the Court explicitly distinguished between tort and contract claims, and rejected the reasoning employed by New GM in its brief—that the mere fact of pre-petition contact is sufficient, in itself, to make that claim "contingent" or "unmatured"—because the concepts of maturity and contingency "are not readily to the transfirable from the context of contracts to that of tort and statutory claims." *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.3d 9977, 1004-05 (2d Cir. 1991) (*Chateaugay I*). Ultimately, the *Chateaugay I* Court did not have to "decide how the

4

Pg 9 of 20

definition of "claim" applies to tort victims injured by pre-petition conduct," but emphasized that the "extreme case" is one where "pre-petition conduct that has not yet resulted in any tortious consequence to a victim." *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.3d 9977, 1003 (2d Cir. 1991) (*Chateaugay I*) (emphasis added). The implication of the Court's language was clear: cases of pre-petition conduct that have not resulted in a *tortuous consequence* should be treated as future claims, outside of the Bankruptcy Code's broad definition of "claims." *See Grumman Olson Industries, Inc.*, 445 B.R. 243 (Bankr. S.D.N.Y 2011).

11.     Four years later, the Second Circuit followed *Chateaugay I*, and set forth the rules now followed in this Circuit, stating:

> However broadly "claim" is understood, it is clear that the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition. … A claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts. 'A claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained <u>all of the elements necessary to give rise to a legal obligation—'a right to payment'— under the relevant non-bankruptcy law</u>." *In re National Gypsum Co.,* 139 B.R. 397, 405 (N.D. Tex. 1992).

*Chateaugay II*, 53 F.3d at 497 (emphasis added).

12.     New GM's assertion that treating Mr. Gillispie as a future claimant would eliminate the existence of contingent or unmatured claims for bankruptcy purposes is simply false. *See* New GM Reply, Dkt. 12892, at 5, ¶ 12. For one, New GM provides no authority for this assertion in light of *Chateaugay II*, or how that result would be inconsistent with *Chateaugay II;* New GM simply hopes the Court will just ignore this precedent rather than apply it. Indeed, it is undisputed that *Chateaugay II* sets for the applicable test with respect for defining a "claim" under the Bankruptcy Code, regardless of whether that claim can be considered a "future," "contingent," "unmatured" or something else. *See, e.g., In re Lear Corp.*, 2012 WL 443951, at *7 (Bankr. S.D. Feb. 10, 2012) (explaining that the *Chateaugay* cases are the leading decisions regarding the definition of a "claim" in

5

the second circuit, considering whether certain claims were "contingent"); *In re Applied Theory Corp.*, 312 B.R. 223, 246 n.87 (Bankr. S.D.N.Y. 2004) (citing *Chateaugay I* and collecting other cases applying *Chateaugay* in the context of contractual contingency claims").

13. Moreover, as the WTC has pointed out, New GM's position not only ignores, but is at odds, with *Chateaugay II*, because it ignores that the Court is required—in determining whether a "right to payment" existed pre-petition—to look at the "relevant non-bankruptcy law." See WTC Reply, Dkt. 12930, at 1. That relevant non-bankruptcy law can be contracts, torts, environmental harm, or, as here, constitutional torts under § 1983. Because it refuses to look at the relevant non-bankruptcy law, New GM misses the fact that there is a fundamental difference between cases where, for example, a promise is made but broken post-petition, or cases where tortuous harm is completed pre-petition or pre-sale but manifests in a later instance. In the contract case, "[i]t is basic bankruptcy law that a pre-petition promise to satisfy an obligation upon the happening of a later condition is not transmogrified into a post-petition obligation when the condition is satisfied post-petition. Instead, it is simply a pre-petition contingent claim." *Applied Theory Corp.*, 312 B.R. at 245; *see also id.* at 245 n.87 (collecting cases). In fact, *Chateaugay I* itself found contingent claims that arose pre-petition. There, the court "was faced with the issue of whether unincurred CERCLA response costs for pre-petition releases are "claims." The Court found that these costs are indeed claims, dischargeable in bankruptcy, regardless of when such costs were incurred, as long as such costs concerned pre-petition release or threatened release of hazardous waste." *In re Texaco, Inc.*, 182 B.R. 937 (Bankr. S.D. N.Y. 1995).

14. Similarly, asbestos or other latent disease cases have raised a number of difficult issues for the courts, in determining whether a technically completed, but undetectable, tort manifests years after a bankruptcy case. In certain instances, courts have recognized that such "future claimants" cannot be bound, consistent with due process, to a bankruptcy discharge

6

occurring well-before the bankruptcy. *See, e.g.*, *Chateaugay I*, 944 F.3d at 1004-05 (2d Cir. 1991); *In re Waterman S.S. Corp.,* 157 B.R. 220, 222 (S.D.N.Y. 1993).

15. Here, as explained below, while certain "future claims" cases help explain *why* Mr. Gillispie's claims cannot be, consistent with due process, barred by the *Sale Order*, under the relevant non-bankruptcy law, Mr. Gillispie did not have a "claim" at the time of the bankruptcy and entry of the *Sale Order*

### B. Under The Applicable Non-Bankruptcy Law, Mr. Gillispie Had No Claim At the Time of the Bankruptcy and Entry of the Sale Order

16. Here, the law relates to the constitutional and state-law tort claims advanced in Mr. Gillispie's lawsuit is *Heck v. Humphrey*, and the other elements of the constitutional and-state law claims that . Indeed, there is no dispute as to the choice of law that governs the claims in Mr. Gillispie's § 1983 complaint, and that the constitutional claims fall squarely within the Supreme Court's decision in *Heck*. *See* WTC Response, Dtk. 12864, at 10-11 & nn. 4-6. In *Heck*, the Supreme Court held that: "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Accordingly, *Heck* bars claims that are attempts to demonstrate the invalidity of a conviction, as federal habeas corpus is the manner to do that—not with a damages action. *Id.* at 485-86.

17. This is why New GM's claim that *Heck* "does not concern when a claim arises for bankruptcy purposes" falls flat. *Heck* is relevant because it determines whether "all of the elements necessary to give rise to a legal obligation—'a right to payment'—under the relevant non-bankruptcy law" existed pre-sale or not. *Chateaugay II,* 53 F.3d at 497. That is, *Heck* explains "under the relevant

7

non-bankruptcy law," when the constitutional claims Mr. Gillispie now asserts in his § 1983 action actually begin to exist.

18. A straightforward application of *Heck* demonstrates that Mr. Gillispie did not have a "right to payment" under § 1983 at the time of the bankruptcy because he could not sue for his constitutional torts—indeed, they were not yet constitutional torts—until his conviction was called into question, which happened after the bankruptcy and entry of the sale order. Put differently, *Heck's* bar to tort suits during an extant criminal conviction illustrates how, before that conviction is called into question, "all of the elements necessary to give rise to a legal obligation" were not in place for Mr. Gillispie. Indeed, the injury he suffered due to his incarceration was not tortuous at all—it was justified as a result of the extant criminal conviction. All of that changed when Mr. Gillispie's conviction was called into question. Then, and only then, could all of the elements necessary to give rise to the legal obligation asserted in his § 1983 suit (the constitutional violations inherent in his wrongful conviction) be satisfied. That was undoubtedly *after* the entry of the *Sale Order*. In other words, because there was no pre-tort, there was no pre-sale "claim," that could have been made in the bankruptcy.[1]

19. In addition to *Heck*, the law of malicious prosecution illustrates why New GM's attempts to distinguish away other cases involving malicious prosecution claims should fail. As explained by Mr. Gillispie and the WTC, an "element:" of the tort of malicious prosecution is that a criminal proceeding must terminate in the plaintiff's favor. When that happens *after* the petition or sale date, myriad cases have determined that such a malicious prosecution action cannot be part of the bankruptcy estate because, until the criminal proceeding terminates in favor of the plaintiff, there

---

[1] *Heck* demonstrates why Mr. Gillispie's subjective belief about his wrongful conviction was, for present purposes irrelevant—that subjective belief did not somehow transform Mr. Gillispie's conviction into a tort just because he believed he was wrongfully convicted. Instead, the constitutional claims he now presses with respect to that conviction are only torts because two courts have determined that, in some way, his conviction was *wrongful*.

8

is not a "claim" for bankruptcy purposes. *See* Motion, Dkt. 12727, at 12-13 (*citing Austin v. BFW Liquidation, LLC (In re BFW Liquidation, LLC)*, 471 B.R. 654, 667 (N.D. Ala. 2012),*Johnson v. Mitchell*, 2011 WL 1586069, at *7-*8 (E.D. Cal. 2011), *In re Jenkins*, 410 B.R. 182 (W.D.Va.2008), *Carroll v. Henry County, Georgia*, 336 B.R. 578 (N.D. Ga. 2006), *Brunswick Bank & Trust Co. v. Atanasov (In re Atanasov)*, 221 B.R. 113 (D. N.J.1998), and *Atkins v. Cory & Cory (In re Cory)*, 2008 WL 5157515, at *1 (W.D. Mo. 2008)); WTC Response, Dkt. 12864, at 11-12 (citing *Armstrong v. Floyd Cnty.*, 2013 WL 8711442, at *5 (N.D. Ga. Dec. 3, 2013), *Carrol*, 336 B.R. at 578, *Jenkins*, 410 B.R. at 193, and *Atanasov*, 221 B.R. at 117).

20.    New GM's weak attempt to distinguish these cases rests on a distinction that, for present purposes, is simply irrelevant. Specifically, New GM contends that the relevancy of the above cases depends on whether the malicious prosecution claim was made by or against the debtor, or by or against the seller. Objection, Dkt., at 14 & n.7. That point simply does not matter for present purposes: the question is whether, given the legal elements of a federal and state-law malicious prosecution claim, Mr. Gillispie had a right to payment at the time of the bankruptcy. The question turns on *when* the criminal prosecution ended in the plaintiff's favor, not *who* the plaintiff was. In the end, the near-unanimous body of law cited by Mr. Gillispie and the WTC stands for the proposition that a claim for malicious prosecution is not within the bankruptcy estate where the criminal process results in the favor of the accused *after* the bankruptcy.[2]

---

[2] For several reasons, the single case cited by New GM that departs from the body of law cited above—*Stone v. Kmart Corp.*, 2007 WL 1034959 (M.D. Ala. 2007)—should not be regarded as persuasive. First, because the plaintiff was never tried or convicted in that case, *Heck* never applied to bar the plaintiff's claims, as *Heck* did for almost 20 years with respect to Mr. Gillispie. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007) (explaining that *Heck* only applies to an "extant conviction" and not anticipated future convictions"). Second, and related, the claims advanced in Mr. Gillispie's § 1983 suit are not confined solely to state-law malicious prosecution, but involve a number of federal claims that had previously been barred by *Heck*. Third, *Kmart* was purportedly applying Eleventh Circuit law, *Epstein v. Off. Com. of Unsecured Creditors of the Est. of Piper Aircraft*, 58 F.3d 1573, 1576 (11th Cir.1995), not *Chateaguay II*, or the law of the Second Circuit. Fourth, as is evident from the number of cases *within* the Eleventh Circuit that have reached the opposite result, *Stone* is an outlier.

9

## II. Due Process Demands that Mr. Gillispie Be Allowed to Pursue His Claims Against Either New GM or In the Motors Liquidation Bankruptcy

21. In the Motion, Mr. Gillispie explained why due process must animate the Court's consideration of whether to enforce the *Sale Order* against Mr. Gillispe and prevent him from at least pursuing his claims against either New GM or Old GM (via the GUC Trust). *See* Mot. Dkt. 12727, at 4 (citing *Zinermon v. Burch*, 494 U.S. 113, 129-30 (1990); *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701 (1884), and *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)). Indeed, it cannot be doubted that, any determination of whether to enforce the *Sale Order* "cannot be divorced from fundamental principles of due process." *In re Grossman's Inc*, 607 F.3d 114, 125 (3d. Cir. 2010).

### A. Mr. Gillispie Has Had Not Any Opportunity, Ever, To Pursue His Claims Against any GM Entity

22. At the end of the day, this Court's obligation is to apply the Constitution to the circumstances at hand, even if that means not applying the *Sale Order* in this particular instance. Indeed, such orders loose their effect when they fail to comport with due process. *See Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296, 302 (4th Cir. 2002) ("We agree a bankruptcy court confirmation order generally is afforded a preclusive effect. But we cannot defer to such an order if it would result in a denial of due process ...." (footnote omitted) (emphasis added)), *abrogated on other grounds by United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)).

23. Here, as the Court's *Sale Opinion* itself recognized that baring certain future claimants may be "constitutionally suspect" *In re General Motors Corp*, 407 B.R. 463, 507 (Bankr. S.D.N.Y. 2009) (the "*Sale Opinion*"). New GM's position seems to be that the fact that the *Sale Opinion* only contemplates this issue for asbestos claimants somehow changes the constitutional analysis. Objection, Dkt. 12863, at 15. It does not. Instead, the constitution applies as equally to Mr. Gillispie's future claims issues as it does the asbestos claimants. *Cf. In re Bennett*, 466 B.R. 422, 426 (Bankr. S.D. Ohio 2012) (explaining that "the United States Constitution, and in particular the due

10

process requirement under the Fifth Amendment, trumps the Bankruptcy Code and Rules and those 'may not be used to circumvent constitutional due process requirements'" (quoting *Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437, 445, n. 11 (1st Cir. BAP 2009)); *In re Hudson*, 260 B.R. 421, 444 (Bankr. W.D. Mich 2001) ("[T]he Supreme Court has repeatedly held that the laws passed pursuant to the Bankruptcy Clause are subject to the requirements of due process." (citation omitted)); WTC Response, Dkt. 12930, at 8 and n.5 (collecting cases).

24. Indeed, the fact that there was no consideration of an individual in Mr. Gillispie's shoes, or a claims representative appointed to represent his interests, demonstrates that the due process concerns with respect to this claim deserve the upmost, individualized consideration by this Court.[3]

### B. Roger Dean Gillispie Did Not Receive Adequate Notice of the GM Bankruptcy

25. *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306 (1950), establishes that, to be consistent with Due Process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Id.* at 314. In elaborating on this standard, the Court emphasized that "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.

26. Indeed, "notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance," and it must give "due regard for the <u>practicalities and peculiarities of the case</u>." *Id.* (emphasis added); *see Hudson*, 250 B.R. at 442-43 (discussing instances where it is necessary to consider the practicalities and particularities of the case in determining whether due process has been satisfied").

---

[3] Tellingly, in affirming the pension fund aspect of the Chrysler bankruptcy, the Second Circuit explicitly declined to adopt Judge Gonzalez's decision with respect to future claimants, and did nothing to confine that determination to asbestos claims. See *In re Chrysler LLC*, 576 F.3d 108, 127 (2d Cir. 2009), vacated as moot in 592 F.3d 370 (2d Cir. 2010).

11

27.     Here, Mr. Gillispie *could not* have received constitutionally adequate notice because, as a future claimant, he had absolutely no way of knowing that his rights were at stake in the GM bankruptcy. Indeed, given *Heck*, at the time of the sale, Mr. Gillispie had no right to payment at all, making any notice (even personal delivery) constitutionally inadequate. On this score, the Court should accept WTC's admission that "Old GM could not have provided [Mr. Gillispie] with constitutionally sound notice" because he would have not have had any notice that he had any idea of the impact the proceedings would have had upon him at the time of the sale. *See* WTC Response, Dkt. 12864, at 16.

28.     In addition, for different reasons, constructive notice would not have been adequate in this case either. It is undisputed that Mr. Gillispie was incarcerated at the time of the GM notice, and that GM did not take any steps to publish notice of the bankruptcy and sale to prisons generally, let alone the Ohio prison where Mr. Gillispie was being held. In this circumstance, given the practicalities and peculiarities of the case, and consistent with other courts finding constructive notice an inadequate "mere gesture" for incarcerated individuals, Mr. Gillispie submits that notice via publication was constitutionally inadequate due to his incarceration. S*ee, e.g.*, *United States v. Minor*, 228 F.3d 352, 357–59 (4th Cir. 2000); *Armendariz–Mata v. U.S. Dep't of Justice*, 82 F.3d 679 (5th Cir. 1996) (publication and mailing to home not adequate where interested party was imprisoned).

29.     Put differently, while *Mullane* allows constructive notice to certain claimants, the constitution does not go so far as to allow constructive notice to be adequate for individuals who are not just unknown but who are, in many respects, unknowable as future claimants. As a consequence, courts and have also recognized that constructive notice to such unknown—and unknowing—future claimants fails to comport with the due process. *See, e.g.*, *Johns–Manville Corp.*, 600 F.3d at 151-58 (finding that individual's circumstances gave rise to due process problems even where notice was adequate for others, and finding that that creditor could not be bound to the terms of the orders to

09-50026-mg    Doc 12998    Filed 11/12/14    Entered 11/12/14 23:01:45    Main Document
Pg 17 of 20

which it played no part); *Grumman Olson*, 467 B.R. at 706; *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 639 (2d Cir.1988) (recognizing that future claims holders may be able to challenge a notice on due process grounds); *In re Hexcel Corp.*, 239 B.R. 564, 571 (N.D. Cal. 1999).

30.     New GM makes absolutely no effort whatsoever to account for the circumstance presented here—an unknown future creditor who was incarcerated at the time of the bankruptcy. Due process, in this circumstance, requires more than the publication that was provided.

31.     Finally, as part of their backup argument, the WTC takes a different tack: they suggest that Mr. Gillispie actually did receive notice of the New GM bankruptcy during his incarceration. WTC Response, Dkt. 12864, at 17-18. There are two factual problems with this approach. First, it overlooks that fact that Roger Dean Gillispie was incarcerated at the time of the notice having been sent in 2009. No notice was sent to his prison. Second, and perhaps more important, the notice was not sent to Roger **Dean** Gillispie, the Plaintiff in the lawsuit, but was instead sent to his father, Roger **Allen** Gillispie, who also worked for General Motors for many years, both before and after his son. *See* Ex. 1, (Declaration of Melinda Ek). Indeed, movant's father worked at GM from 1997 to 1996 and lived at the Fairborn, Ohio address that the banktruptcy notice was sent. *Id.* At the time, Roger **Dean** Gillispe was housed in the Ohio Department of Rehabilitation and Correction. The notice was to Movant's father, not Movant and GM never sent Movant any form of notice whatsoever.

32.     Accordingly, movant Roger **Dean** Gillispie did not receive adequate notice of the GM bankruptcy either through actual notice of via publication.

**III.    If The Court Were To Deem Mr. Gillispie's Claims to be "Pre-Sale Claims," HE Should Still Be Allowed To Assert His Claims Against Either New GM, in the Old GM Bankruptcy**

33.     If this Court were to find that Mr. Gillispie's claims are pre-sale claims, it would be presented with two viable options.

34.     First, the Court could nonetheless determine that, because any notice to Mr. Gillispie was inadequate, he should be able, due to due process, to press his claims against New GM. Put differently, given defective notice, the Court could determine that due process prevents Mr. Gillispie's claims from being discharged in bankruptcy or subject to the *Sale Order. See* WTC Response, Dtk. 12864, at 22-23; WTC Reply, Dkt. 12930, at 8.

35.     Second, were the Court to determine that Mr. Gillispie holds pre-sale claims, the Court could determine, for two independent reasons, that Mr. Gillispie should nonetheless be entitled to file a post-bar-date proof of claim in the Motors Liquidation Company bankruptcy. The first independent basis for reaching this conclusion is that due process, given the defective notice described above, demands such a result. Mr. Gillispie's incarceration made the notice in this case inadequate as applied to him.

36.     As a second independent basis, the Court should find that Mr. Gillispie has satisfied the excusable neglect standard of *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993), and Federal Bankruptcy Rule 9006(b)(1)). The WTC's resistance to this conclusion is unpersuasive. For one, the WTC is simply wrong about the notice provided to Mr. Gillispie, bringing Rule 9006(b)(1) back into play. In addition, the WTC's argument rests solely on conjecture about the potential consequences of opening the bankruptcy estate to Mr. Gillispie's claim. As the dearth of law applying *Heck v. Humphrey* to the bankruptcy context no doubt underscores, the sort of claim raised by Mr. Gillispie is beyond unique. There is no good reason to believe whatsoever that any "floodgates" will be open by allowing this claim to proceed.

## CONCLUSION

37. In sum, basic tenants of due process require that Mr. Gillispie be permitted to pursue his wrongful conviction claims against his former colleagues at General Motors. Given that, under *Heck* and its progeny, Mr. Gillispie had no cause of action until *after* GM entered bankruptcy, and *after* this Court entered the *Sale Order*, Mr. Gillispie did not have a "claim" at the time of the sale, and nor could he have been given adequate notice. As such, to enforce the dictates of due process, this Court should decline to enforce the *Sale Order* against Mr. Gillispie, which would violated his rights. At the very least, and in the alternative, Mr. Gillispie should be permitted to file a post-bar-date proof of claim in the Motors Liquidation Company bankruptcy.

Respectfully Submitted,

_____
David B. Owens
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, Illinois 60607
312-243-5900

*Attorney for Roger Dean Gillispie*

**CERTIFICATE OF SERVICE**

    I, David B. Owens, an attorney, certify that I served upon all parties, via the Court's electronic filing system and electronic mail, a copy of the foregoing brief on November 12, 2014.