1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   CASE NO. 09-50026(REG)

4   - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   MOTORS LIQUIDATION COMPANY, et al,

8   f/k/a GENERAL MOTORS CORP, et al,

9

10       Debtors.

11   - - - - - - - - - - - - - - - x

12

13                    U.S. Bankruptcy Court

14                    One Bowling Green

15                    New York, New York

16

17                    August 5, 2014

18                    9:49 PM

19

20   B E F O R E :

21   HON. ROBERT GERBER

22   U.S. BANKRUPTCY JUDGE

23

24

25   ECRO - T. BROWN

1    HEARING Re Plaintiffs Lawrence and Celestine Elliott's No

2    Stay Pleading Pursuant to the Court's Scheduling Orders and

3    Motion for Order of Dismissal for lack of Subject Matter

4    Jurisdiction Pursuant to Bankr. R. 7012(B) and for related

5    relief (technical corrections to Doc. 12772 with exhibits

6    attached) (ECF 12774)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sheila Orms

```
 1   A P P E A R A N C E S :

 2

 3   KING & SPALDING

 4        Attorneys for General Motors, LLC

 5        1185 Avenue of the Americas

 6        New York, NY   10036

 7

 8   BY:  ARTHUR STINBERG, ESQ.

 9        SCOTT DAVIDSON, ESQ.

10

11   KIRKLAND & ELLIS LLP

12        Attorneys for General Motors LLC

13        300 North LaSalle

14        Chicago, IL   60654

15

16   BY:  RICHARD GODFREY, ESQ.

17

18   BROWN RUDNICK

19        Attorneys for (Unknown)

20

21   BY:  EDWARD S. WEISFELNER, ESQ.

22

23

24

25
```

Page 4

1   AKIN GUMP STRAUSS HAUER & FELD LLP

2        Attorneys for Ad Hoc Group of GUC Trust Unit Holders

3        One Byrant Park

4        New York, NY  10036

5

6   BY:  NAOMI MOSS, ESQ.

7

8   HAGENS BERMAN SOBOL SHAPRIO LLP

9        Attorneys for (Unknown)

10       555 Fifth Avenue

11       Suite 1700

12       New York, NY  10017

13

14   BY:  JASON A. ZWEIG, ESQ.

15

16   OTHERS PRESENT:

17

18   GARY PELLER for LAWRENCE AND CELESTINE ELLIOTT

19

20   TELEPHONIC APPEARANCS:

21   BRIANA L. CIONI, STUTZMAN & BROMBERG

22   KENT COLLIER, REORG RESEARCH, INC.

23   EPHRAIM DIAMOND, DK PARTNERS

24   JODI W. FLOWERS, MOTLEY RICE LLC

25   KIMBERLY G. GIANIS, CONTRARIAN CAPITAL MANAGEMENT

Page 5

1    TELEPHONIC APPEARANCES, CONTD.:

2

3    ASHUTOSH HABBU, BARCLAYS PLC

4    BRENT HAZZARD, HAZZARD LAW, LLC

5    NAOMI MOSS, AKIN GUMP

6    LINDA SANDLER, BLOOMBERG LP

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE COURT:  Good morning.  Have seats.

3            All right.  We're here on General Motors, Motors

4    Liquidation, and in particular, the effort by the Elliott

5    plaintiffs to proceed on their own part from the other 87

6    plaintiff groups, who are going to be subject to the

7    coordinated briefing schedule that we established in prior

8    proceedings here.

9            I want to get appearances, then I want everybody

10   to sit down because I have some preliminary comments.

11           MR. STEINBERG:  Good morning, Your Honor, Arthur

12   Steinberg from -- and Scott Davidson from King & Spalding.

13           THE COURT:  Okay.  Thank you, Mr. Steinberg.

14           MR. GODFREY:  Richard Godfrey from Kirkland, Your

15   Honor, good morning.

16           THE COURT:  Okay.  Good morning.

17           MR. PELLER:  Gary Peller, Your Honor, I'm here for

18   Lawrence and Celestine Elliott.

19           THE COURT:  All right, Professor Peller.  And I

20   see Mr. Weisfelner for the other plaintiff groups, the

21   designated counsel.  Your Honor --

22           MR. PELLER:  We object to the other plaintiffs

23   being heard in this matter.  We believe that this matter is

24   between GM and the Elliotts regarding whether the motion to

25   enforce is applicable at all against the Elliotts because

Page 7

1    there's no subject matter jurisdiction over that matter, as

2    I think Your Honor is familiar.

3            THE COURT:  Professor Peller --

4            MR. PELLER:  We don't believe that any --

5            THE COURT:  Professor Peller, you can't interrupt

6    me.

7            I know you don't practice in bankruptcy court, in

8    fact, you pride yourself on that, you put that in your

9    brief.  Are you familiar with Section 1109 of the Bankruptcy

10   Code and the Second Circuit's decision in Term Loan Lenders

11   and Caldor?

12           MR. PELLER:  I'd be glad to review that, Your

13   Honor, I don't --

14           THE COURT:  Well --

15           MR. PELLER:  -- know it off the top of my head.

16           THE COURT:  -- you're not going to keep Mr.

17   Weisfelner from being heard.  These are basic cases that

18   anybody who practices in Bankruptcy Code knows, and a

19   section of the Bankruptcy Code that is familiar to any

20   person who ever practices in bankruptcy court.  Now, sit

21   down, please.

22           MR. PELLER:  May I be heard?

23           THE COURT:  I have my preliminary remarks.

24           MR. PELLER:  Yes, Your Honor.

25           THE COURT:  Professor Peller, I found your

Page 8

1    submissions to the Court, and particularly, your letter of

2    July 28 to be patronizing and below the standards of

3    civility that I expect from lawyers appearing in this court,

4    and that I've seen from every other lawyer, plaintiff,

5    defendant alike up to today.

6           When you say with respect to your subject matter

7    jurisdiction contentions, as you did in your letter of July

8    28, that most lawyers learn this early on, and go on to

9    speak in the tone that characterized both your two letters

10   and your brief that inconsistent with the type of advocacy

11   that's acceptable not just in the bankruptcy court, but in

12   any federal court, they may also be a little bit

13   hypocritical, since most lawyers learn early on about the

14   importance of citation to controlling authority, and there

15   appear to be at least three decisions representing

16   controlling authority that you failed to cite or to

17   otherwise address, one by the U.S. Supreme Court, and two by

18   the Second Circuit, which inform the determination of any

19   bankruptcy judge who's asked to consider the scope and

20   enforceability of a prior bankruptcy court order.

21          When it's your turn, I want you to address the

22   Supreme Court's decision in Travelers and the Second

23   Circuit's decisions in Petrie Retail and Millennium Sea

24   Carriers.

25          I also want you to address the four published

Page 9

```
 1    decisions I've issued on the subject matter jurisdiction of

 2    bankruptcy judges to enforce their earlier orders, and if

 3    you can, the additional decisions by Judges Marrero,

 4    Gropper, Drain, and Bernstein on point.

 5              There are suggestions, repeated suggestions in

 6    your motion papers that your clients are living under a sort

 7    of Damocles under which I might be putting them in contempt.

 8    I'm not looking to put anybody under a sort or otherwise for

 9    contempt.  I don't want to hold anybody, especially some

10    folks in their seventies in contempt.

11              The issue before me is whether your clients and

12    you will simply comply with orders that have already been

13    entered or that I may enter hereafter.  So the issue then is

14    the extent, if any, to which this case is different from

15    Finiff (ph) and if you believe that what I think are nearly

16    a dozen cases on point, vis a vis bankruptcy judge's subject

17    matter jurisdiction to enforce their earlier orders, you can

18    help me by distinguishing those cases.

19              All right.  Now, Professor Peller, I'll hear from

20    you.

21         (Pause)

22              MR. PELLER:  Your Honor, we --

23              THE COURT:  Oh, tell me if you prefer to be called

24    Professor Peller or Mr. Peller?

25              MR. PELLER:  I prefer to be called Mr. Peller,
```

Page 10

1     Georgetown University Law Center is not connected with this

2     litigation in any way, and I don't seek to trade off of my

3     honorific in any way, Your Honor.

4              THE COURT:  Okay.

5              MR. PELLER:  Before this Court is a motion to

6     dismiss for lack of subject matter jurisdiction, as you

7     know, Your Honor.  I am not prepared, nor has GM, I believe

8     ever raised many of the cases that Your Honor cited to me,

9     or let me start off by saying that we meant no disrespect in

10    our July 28th letter.

11             As the Court knows, the parties -- an attorney

12    making a representation before the Court that is frivolous

13    is subject to sanctions.  We would move for sanctions

14    because of the representations that Mr. Steinberg, because

15    they lack any basis in law.

16             The safe harbor provisions of Rule 11 do not

17    permit us time to notify Mr. Steinberg and then seek

18    sanctions from the Court.  So we would invite the Court, sue

19    sponte as the Court has power under Rule 11 to issue those

20    sanctions, particularly if Mr. Steinberg plans on repeating

21    arguments that are well established and have no merit in

22    American law.

23             So we meant no disrespect.  I believe that my tone

24    was proper.  I understand the Court's disagreement and I

25    respect that.

Page 11

1          The Court has asked us to justify what is

2     different about our case, the Elliotts' case than the other

3     case, and I'll get to that in a moment, Your Honor.  I do

4     want to introduce to the Court, Lawrence Elliott, my client,

5     he's right here.  He has come to the court today because the

6     Court expressed concern at the July 2nd hearing, as to the

7     motives for Mr. Elliott and Mrs. Elliott seeking to join

8     with others to sue GM.  And if the Court wishes, Mr. Elliott

9     is here to explain those motives.

10          Okay.  The plaintiffs believe this a pretty simple

11     case, Your Honor.  GM came into this court seeking to

12     enforce its 2009 sale order this Court issued against the

13     Elliotts' lawsuit.  It invoked the subject matter

14     jurisdiction of this court.

15          Once that subject matter jurisdiction is

16     challenged as the Elliotts have done repeatedly, GM has the

17     burden of establishing this Court's subject matter

18     jurisdiction.  It has wholly failed to do so.  It hasn't

19     said a single word except, because the Elliotts have a 2006

20     vehicle in which they claim injuries from, that this Court

21     simply has jurisdiction.  I think that the papers establish

22     that the Second Circuit's decision in Manfield (ph) makes

23     very clear that simply the factual overlap between claims is

24     not sufficient to give this Court subject matter

25     jurisdiction.  Rather the Court must examine the claims that

Page 12

1    are asserted and see if those claims actually implicate in

2    any way the (indiscernible) of the debtor.

3            The Elliotts' claims do not, regardless of the

4    fact that they drive a 2006 Cobalt, and a 2006 Trail Blazer,

5    in which Mrs. Elliott has already experienced dangerous and

6    traumatizing moving stalls, they don't make any allegations

7    regarding their purchase, regarding warranties, or anything

8    of the sort.

9            They assert that GM breached independent non-

10   derivative, non-successor duties that it owed to the

11   Elliotts to tell the Elliotts that their cars were

12   dangerous, to not permit the Elliotts or lead the Elliotts

13   to transport their loved ones in cars that GM knew posed

14   eminent risks of death or serious bodily injury.

15           What's different about the Elliotts than the other

16   lawsuits that are perhaps properly before this Court, and we

17   express no opinion on the subject, is that the other

18   lawsuits have all, as far as I'm aware, and I'm read the

19   Finiff opinion and the Court based its opinion --

20           THE COURT:  You've read which opinion?

21           MR. PELLER:  Finiff.

22           THE COURT:  Finiff in -- we're talking about --

23           MR. PELLER:  Yes.

24           THE COURT:  -- the opinion, the one that I orally

25   dictated on July 2nd and then I wrote on and published on

Page 13

1     last week?

2             MR. PELLER:  Yes, Your Honor.

3             THE COURT:  Okay.

4             MR. PELLER:  Okay.  Your Honor said that in that

5     -- in that case, the Finiff plaintiffs had asserted all

6     kinds of factual allegations about what Old GM did, I'm very

7     familiar with those allegations, and that the Finiff claims,

8     and the legal claim is what's important, Your Honor, not the

9     factual allegations, but the claims that they asserted were

10    claims at least in part, depending on the successor

11    liability, and the Finiff plaintiffs used the term successor

12    liability of New GM for the liabilities of Old GM.

13            We make no such claim and there's a good reason

14    for it, Your Honor.  When we drafted the complaint for the

15    Elliotts, the Elliotts were driving dangerous cars that

16    posed eminent risks of death or serious bodily injury.  We

17    knew, because we amended our complaint at the end of June,

18    after this Court had entered its May 16th scheduling order,

19    that if we implicated the jurisdiction of this court, all

20    courthouse doors in America would be closed to getting them

21    temporary and emergency relief, so they didn't have to

22    continue to transport their loved ones in these death traps.

23            That's why we --

24            THE COURT:  Pause, please.  Pause, please, Mr.

25    Peller.

Page 14

1          New GM asserts in its response to your motion that

2   the Chevy -- the 2006 Chevy Cobalt was fixed pursuant to the

3   recall program.  Is that matter now disputed?

4          MR. PELLER:  Four days after the alleged repair,

5   Mrs. Elliott was driving the car and experienced a moving

6   stall that was unbelievably traumatizing late at night as

7   she returned home from work from her job, as a bus driver

8   late at night for the Metro Axis System in Washington, D.C.

9          She was stuck in the middle of the night with a

10  car that would not turn on, in a crime ridden area of the

11  Maryland -- of the D.C. suburbs.  Yes, Your Honor, that

12  matter is in dispute.

13         THE COURT:  Dispute that the recall repair was

14  satisfactory or dispute that it was made?

15         MR. PELLER:  That it was satisfactory.

16         THE COURT:  Okay.  Continue.

17         MR. PELLER:  So when we drafted our complaint, we

18  knew that the Elliotts needed temporary relief from the

19  unsafe vehicles, and so we draft our complaint with the idea

20  to not assert claims that may have been available to the

21  Elliotts based on breach of implied warranty, and the same

22  claims the other 87 lawsuits have made.

23         The other -- I'm not going to talk about the

24  decisions, you know, I don't know why they decided to assert

25  those claims.  I assume that they didn't want leave any

Page 15

```
 1    money on the table.  They want to assert any possible claim,

 2    including those claims that might be paid by the dwindling

 3    sums in the GU Trust, and whatever else they could find.

 4              But we knew that if we triggered the jurisdiction

 5    of this Court, this Court had already closed all courthouse

 6    doors across America to those seeking emergency relief, and

 7    we wanted to keep those doors open.

 8              So it was more important to Celestine and Lawrence

 9    Elliott to not assert every conceivable claim that they

10    might have, but rather to assert claims carefully, so they

11    would not trigger the jurisdiction of this Court and

12    therefore could keep open avenues for seeking emergency

13    relief.

14              That's what we did.  GM nevertheless insists,

15    based on I think a premise that Your Honor has implicitly

16    already rejected in the Finiff ruling, that simply because

17    they're driving a 2006 vehicle, as I understand GM's

18    argument, GM has not just the protection of the legitimate

19    coverage of this Court's 2009 sale order, but actually

20    immunity, immunity from any wrong it might do so long as

21    that wrong is connected to a 2006 vehicle.  That

22    proposition, Your Honor, is of course, absurd.

23              The 2009 sale order didn't give New GM, if that's

24    what Your Honor prefers to be referred to as, did not give

25    New GM an immunity to keep secret risks that plaintiffs all
```

Page 16

1    over the country faced to keep secret from them, when New GM

2    failed to disclose those risks, (indiscernible) GM violated

3    duties that New GM owed to Lawrence and Celestine Elliott

4    and to the punitive class members that they seek to

5    represent.

6              In technical legal terms, Your Honor, as I'm sure

7    Your Honor is familiar in the Manville II case, excuse me,

8    because the Elliotts are third parties asserting claims

9    against a non-debtor that are based on independent non-

10   derivative, non-successor duties, and claiming that they've

11   suffered legally recognizable harm because of the breach of

12   those duties, this Court has no jurisdiction over their

13   claim.

14             It couldn't be clearer, and GM doesn't -- hasn't

15   said a word to the contrary that Manville II is not

16   controlling in this proceeding.  All GM has said is, don't

17   let them jump out of line, Your Honor.

18             Well, the Elliotts don't belong in any line here.

19   They're not subject to this Court's case management

20   discipline.

21             The case management discipline is not to be

22   imposed upon parties or excuse me, a lawsuit that this Court

23   lacks jurisdiction over.  It's just as simple as that, Your

24   Honor.

25             The grand stay power that Your Honor exercises

Page 17

1    under the bankruptcy laws of the United States of America

2    have as their basic intent to protect an ailing debtor in

3    need of this Court's solicitude to help survive.

4          GM is not an ailing debtor asking for this Court's

5    protection in order to help it survive to give it some time

6    to regroup under the threat of creditors.  We're not -- the

7    Elliotts are not creditors.  And GM is not an ailing debtor.

8    It is a non-debtor.  It is an accused criminal, accused in

9    our papers, of running a criminal racketeering enterprise to

10   conceal eminent risks to life and body from drivers of GM

11   vehicles.  It doesn't deserve the solicitude of the --

12   extraordinary stay power that this Court traditionally

13   exercises.

14         Let me move now to the particular Section 105

15   points that Your Honor has raised.

16         THE COURT:  Well, I'm not talking about 105

17   points.  When you talk about the subject matter jurisdiction

18   of the bankruptcy court, you normally start with 28 U.S.C.

19   1334.  Would you focus, please on 1334 and explain to me why

20   you believe that it's the relating to, as contrasted to the

21   rising end prong of 1334 that you consider so important?

22         MR. PELLER:  The -- I think our papers are clear

23   on this, Your Honor.  And as I said in my July 23rd letter

24   to the Court, GM has not contested any of these points.  I

25   appreciate Your Honor's concern and Your Honor's bringing

Page 18

1    cases to our attention that GM failed to cite, and I

2    understand that, you know, Your Honor's concern to follow

3    the law, but the law is really clear.

4         1334 requires that in order for this Court to have

5    subject matter jurisdiction over the Elliott's lawsuit, the

6    lawsuit must be related to something that this Court

7    actually does have subject matter jurisdiction over.

8         This Court has subject matter jurisdiction, of

9    course, to enforce its 2009 sale order and injunction.  The

10   problem, however, for the reasons that I've just said, Your

11   Honor, is that none, not one of the claims asserted by

12   Lawrence and Celestine Elliott have anything to do with that

13   sale order.

14        Section 105, your power, Your Honor, to interpret

15   your own owners, and to interpret that sale order, of

16   course, as the Court also in Manville made clear, does not

17   expand your original subject matter jurisdiction.  If the

18   Elliotts' claims do not implicate the sale order, this Court

19   lacks jurisdiction over them, and power to order the

20   Elliotts in any way whatsoever.

21        Would you like me to continue, Your Honor?

22        THE COURT:  I'd like you to finish your argument,

23   Mr. Peller.

24        MR. PELLER:  You asked that we distinguish the

25   case from the other 87 cases, and I believe I've said it as

Page 19

1    clearly as I can.  The arguments are all the same, whether

2    they're 1334 arguments, or whether they're arguments as to

3    whether the claims relate to the sale order, or whether you

4    have the jurisdiction under Section 105 to interpret your

5    own order, they all come down to the same thing.

6              The Second Circuit in Manville has made clear,

7    that the bankruptcy court must exercise extra care when a

8    non-debtor like GM is coming into this court seeking this

9    Court's protection and solicitude.  This Court should not

10   act like it's a typical proceeding involving a debtor where

11   you gather together all the creditors and keep each one from

12   jumping the line.

13             We're not seeking to jump any line, we're not in

14   this line.  But if the Elliotts were seeking to jump a line,

15   Your Honor, the reason they're seeking to jump the line, the

16   reason they're different from all the other lawsuits, is

17   they're not willing to put aside for months the safety of

18   the drivers of GM vehicles across America until this Court

19   might at some point decide the threshold issues.

20             Subject matter jurisdiction, Your Honor, is a

21   predicate for any exercise of any power over the Elliotts'

22   lawsuit.  If this Court lacks subject matter jurisdiction,

23   there is no doubt that this Court is obliged to let the

24   Elliotts' lawsuit go and dismiss the lawsuit.

25             The Elliotts have challenged the jurisdiction.  GM

Page 20

1    has come in saying that as long as they're driving a 2006

2    car, that's it.  The Second Circuit's really clear that

3    that's not enough, you've got to examine the claims.

4           This Court did examine the claims in its Finiff

5    ruling, and found that those claims did implicate successor

6    liability.  With all due respect, if the Court would do the

7    same for the Elliotts the Court will find that not one of

8    the Elliotts' claims implicate the bankruptcy court

9    jurisdiction.

10          What's different is that the Elliotts decided not

11   to assert all claims that they might have asserted, but

12   certainly no one can claim that this Court acquires

13   jurisdiction because of claims that the Elliotts might have,

14   but did not assert.

15          Your Honor, if I could reserve any remaining time

16   that you wish to hear from us to respond to GM's comments.

17          THE COURT:  Sure.  It's my practice to allow

18   people to reply and also to surreply though in the latter

19   two cases only with respect to new stuff.

20          Mr. Steinberg --

21          MR. PELLER:  May I then continue for one moment,

22   Your Honor?

23          THE COURT:  Yes, sure.

24          MR. PELLER:  Because Your Honor asked me to speak

25   to cases that I will admit that I'm not familiar with, but

Page 21

1    I'll be glad to submit papers, as soon as I get the

2    transcript and can correctly locate those cases to respond

3    to Your Honor.  But to the extent that I'm familiar with the

4    cases, in particular, Your Honor's prior decisions, there's

5    no decision that I'm aware of, Your Honor, that contradicts

6    the arguments that I have made here this morning.

7              THE COURT:  All right.  Thank you.  Mr. Steinberg.

8              MR. STEINBERG:  Your Honor, I didn't realize that

9    I was subject to a potential sanction motion, so I was glad

10   to hear that first part of that as the hearing.

11             Mr. Peller says --

12             THE COURT:  Pause please, Mr. Steinberg.  Both to

13   you and to Mr. Peller, and to Mr. Elliott and his wife, I'm

14   not looking to sanction anybody.  I'm not looking to hold

15   anybody in contempt.  I'm just trying to address the extent

16   to which my prior orders should be complied with, and to

17   give people a chance to do that, and to give lawyers who

18   know a little bit more about bankruptcy litigation the

19   opportunity to duke it out with you.  Continue, please.

20             MR. STEINBERG:  Your Honor, Mr. Peller said that

21   the decisions that Your Honor have cited were unfamiliar

22   with him, had not been cited by New General Motors in its

23   papers at all.  I call your attention to our motion to

24   enforce, paragraphs 25 and 26 and I'll read them into the

25   record, although they're a little lengthy.

1          Paragraph 25, "It is well settled that a

2    bankruptcy court plainly has jurisdiction to interpret and

3    enforce its own prior orders."  The citation there is to

4    Travelers and to Wilshire Courtyard, which is a Ninth

5    Circuit decision with a parenthetical citation to

6    Continental Airlines, which is a bankruptcy court decision

7    in Delaware, a citation to U.S. Lines, which is a Southern

8    District bankruptcy case, citation to Chateaugay, which is

9    another Southern District case.

10          Paragraph 26 says, "Consistent with these

11    authorities, this Court retains subject matter jurisdiction

12    to enforce its sale order and injunction.  Indeed this is

13    not the first time that this Court has asked to be asked to

14    enforce its injunction against plaintiffs improperly seeking

15    to sue New GM for Old GM's retained liabilities."  And

16    there's a citation to Castillo, to Trusky (ph), and then

17    lengthy quotes from those decisions where Your Honor had

18    specifically discussed your ability and your jurisdiction to

19    enforce your own orders.

20          So I start off with saying that to the extent that

21    Mr. Peller said that nothing has ever been cited, and that

22    we have not cited those cases, we indeed have cited these

23    cases from the very outset.

24          In fact, the two scheduling orders that Your Honor

25    entered to decide threshold issues is predicated on Your

Page 23

```
 1    Honor's jurisdiction to enforce your own order.  Something

 2    that was decided with the approbation of all the identified

 3    counsel, including the designated counsel and the second

 4    July 2 hearing scheduling conference which discussed how

 5    this matter would go forward, was done in the presence of

 6    Elliotts' counsel.  And Elliotts' counsel never said a word

 7    about Your Honor's subject matter jurisdiction.  And we had

 8    an argument on the Elliott motion on July 2 as well, too,

 9    and the jurisdictional issue was never mentioned before.

10           So I wanted to be able to point that out.  The

11    notion that they amended their complaint to purposely

12    identify how to avoid coming to this bankruptcy court for

13    the concern that there would be no other court that they can

14    go to if they had a safety issue, well clearly there was

15    nothing that prevented them from coming to this court, if

16    they thought they had a safety issue.

17           And certainly they have threatened New GM probably

18    every day for two weeks, that they were going to another

19    court to do that, and they have never done that.

20           And they -- I think he's basically admitted that

21    one of the reasons why this complaint was amended

22    notwithstanding that Mr. Elliott had signed a pro se stay

23    stipulation, a voluntarily stay stipulation, was that he

24    wanted to amend the complaint not to clarify the ramblings

25    of a pro se plaintiff, but he wanted to craft a complaint
```

Page 24

1    different than the other complaints that had been filed in

2    this case against New GM, in order to purposely avoid the

3    jurisdiction of this Court.

4            By the way, the issue about whether the ignition

5    switch was replaced in the Elliotts' cars, the answer to

6    Your Honor is yes, they did complain about the circumstance.

7    And without trying to get too much into a he said/she said

8    for at least a week, we've been trying to understand the

9    circumstances of it, and we've offered to pick up the car

10   from the Elliotts yesterday to examine the circumstances,

11   but they said that they had a court hearing today, and would

12   have to wait when they came back from the court hearing.

13           So New GM was trying to address whatever the

14   concerns are, to see whether it was related to something

15   else, or to examine the car overall.

16           Your Honor, this case is exactly the case where

17   Your Honor has rendered its decision.  Like the Finiff

18   plaintiffs, the Elliotts claims that they only are asserting

19   post 363 sale claims, which are not retained liabilities;

20   and therefore, there was no need for the Court to deal with

21   these issues.  And that argument did not prevail with Finiff

22   and should not prevail here.

23           And like the Finiff plaintiffs, the Elliotts

24   claims that they are uniquely situated.  That argument also

25   did not prevail.

1              Fairly many of the plaintiffs in the approximate

2       90 actions that have been filed against New GM --

3              THE COURT:  Pause, please, Mr. Steinberg.  What's

4       the current count if you know?

5              MR. STEINBERG:  I've seen --

6              THE COURT:  Is it more than the 88 as of the time

7       that I dealt with Finiff?

8              MR. STEINBERG:  It is more than the 88, Your

9       Honor, but if Your Honor -- if it would be helpful for Your

10      Honor when we'll get back, we'll count up the numbers on our

11      schedule.

12             THE COURT:  I don't think the incremental number

13      makes a whole lot of difference.  Continue, please.

14             MR. STEINBERG:  They are not uniquely situated.

15      Many of the other plaintiffs have asserted economic loss

16      claims emanating from the alleged fact that New GM should

17      have instituted the ignition switch recall earlier.

18             So all of those claims are in that type of claim,

19      which is the predicate of what the Elliotts have filed have

20      been in many, many of the complaints.

21             And like certain of the Finiff plaintiffs, the

22      Elliotts have made claims on their Old GM vehicle, and have

23      premised New GM's knowledge based on facts acquired while

24      working at Old GM.  This report properly held that those

25      facts by itself are outcome determinative as to whether it

Page 26

1    had jurisdiction to determine the issue.

2           Those facts are sufficient to trigger the

3    threshold applicability of the sale order and the injunction

4    provisions.

5           Paragraph 71 of the sale order provides that the

6    bankruptcy court will have exclusive jurisdiction to enforce

7    the sale order and the sale agreement to a) resolve disputes

8    arising under or related to the sale agreement; b) interpret

9    and enforce the sale order; and c) to protect purchaser, the

10   purchaser against retained liabilities.

11          The Elliotts are arguing that they're asserting

12   claims against New GM which they know New GM will claim or

13   retain liabilities.  That by itself triggers the injunction

14   provision, and the Court's exclusive jurisdiction over the

15   issue.

16          The Elliotts do not get to assume that they are

17   right, so they can ignore the Court's sale order and

18   injunction.  The teachings of the Seller Tech (ph) Supreme

19   Court decision case is that when it's implicated in a prior

20   decision, you have to start with the Court that rendered the

21   ruling.

22          That is not to say that if Your Honor determined

23   that these were not retained liabilities or were liabilities

24   that New GM had, that it would then determine what the

25   actual claim would be.

1             Once Your Honor determines whether it's an assumed

2    liability or a retained liability, then Your Honor, then the

3    decision tree will be that if it's an assumed liability, the

4    MDL Court will decide this issue.  And if it's a retained

5    liability, then there will be no claim against New GM.

6    That's Your Honor's decision, it's not to determine the

7    merits of the claim itself, other than to determine whether

8    it's an assumed liability or retained liability.

9             This Court in Finiff properly noted that it needed

10   to minimize piecemeal rulings at this juncture.  Since the

11   designated counsel will want to weigh in on the same issues

12   raised by the Finiff plaintiffs, and that same rationale

13   applies to the Elliott no stay motion.

14             The issue of whether something is an assumed

15   liability or retained liability is a threshold issue that

16   will be determined by this Court.  The Court, as a proper

17   exercise of its case management, needs to have a coordinated

18   disposition of that issue.  One plaintiff should not be

19   allowed to go it alone ahead of the others.  One plaintiff

20   should not be allowed to alter the coordinated procedures to

21   determine this issue that the Court has established on two

22   scheduling conferences on notice to the Elliotts.  The last

23   one attended by Elliotts' counsel and with the approval of

24   substantially all of the other parties in interest.

25             As a practical reality, New GM brief on the

Page 28

1    threshold issue as to whether it is an assumed liability or

2    retained liability asserted by the Elliotts and by all of

3    the other plaintiffs is due in 17 days.  So this is not

4    something that is necessarily back-burnered.

5            And I will note that in connection with this

6    hearing, at 4 o'clock yesterday, I got a request from Mr.

7    Peller to adjourn this hearing, which we refused to do, so

8    that the notion that they needed to get this thing promptly

9    determined right away, they had itself asked to adjourn this

10   hearing for the next scheduling conference.

11           The threshold issue of whether something is a

12   retained liability to be asserted against New GM should be

13   presented to the Court so that it's binding on all the

14   plaintiffs that have raised the issue, not just the

15   Elliotts.

16           Second, practical point.  The Elliotts have agreed

17   that the ignition switch claims that are asserted in their

18   action should be transferred to the MDL before Judge Furman.

19   When we were last here on July 2, that issue had not been

20   determined.  The Elliotts had not taken a position, and they

21   have agreed that there should be a partial transfer.  New GM

22   believes that it should be a full transfer, but at least the

23   ignition switch claims are now before Judge Furman.

24           Their no stay motion is really not about getting

25   ahead of the other plaintiffs.  It is really a transparent

1    effort to have the issue of whether their claims are

2    retained liabilities or not to be heard by someone other

3    than Your Honor.

4        The Elliotts' subject matter jurisdiction argument

5    is nothing more than a reformulation of the assumed

6    liability, retained liability issue.  The Elliotts' argument

7    assumes that they won the issue, and that therefore, this

8    Court has no jurisdiction to determine their claim because

9    it was not a retained liability.  But that begs the question

10   as to decides whether it's a retained liability.

11       The sale order reserved exclusive jurisdiction in

12   this Court to determine that issue, and the Court's

13   scheduling orders and substantially all of the other

14   plaintiffs have recognized that it will be this Court to

15   first determine that threshold issue.

16       The Elliotts were in court on July 2, and

17   apologized to the Court for not first filing a no stay

18   pleading in this court, instead of amending their complaint

19   in the DC action.  They never raised the Court's

20   jurisdiction to determine issues as part of that argument.

21   It is now well too convenient as part of their argument now

22   to raise it on their own motion.

23       The Elliotts have used the no subject matter

24   jurisdiction argument, as the reason why they can flout this

25   Court's order, and not withdrawing the motion to amend the

Page 30

1    complaint in the D.C. court.  In essence, they argued that

2    they are not bound to follow the Court's directive because

3    acting as their own appellate court, they determined it was

4    not proper to enter any order against them.

5            They have used the no subject matter jurisdiction

6    argument before Judge Furman in a letter that they sent to

7    Judge Furman yesterday.  They make the unsupported claim

8    that the bankruptcy court lacked subject matter jurisdiction

9    over their claims, "under applicable Second Circuit

10   authority that no party disputes."

11           Well, I think it should be obvious today that we

12   dispute this no subject matter jurisdiction argument, and

13   the authority that you've cited in your papers.

14           They characterize this Court's directive to them

15   to withdraw their motion to amend in the D.C. Court as "an

16   aggressive exercise by the bankruptcy court of its stay

17   power."

18           And what was the purpose of this letter to Judge

19   Furman?  It was to assert that they were differently

20   situated than the other plaintiffs because they, unlike the

21   other plaintiffs, purposely did not assert claims against

22   Old GM, and therefore, they should have a greater leadership

23   role in the MDL.

24           And that's a telling admission by the Elliotts.

25   They told Judge Furman they were differently situated

Page 31

1    because although their underlying facts were essentially the

2    same as the other plaintiffs' claims, they knew how to dress

3    up their claims differently.  They knew how to as to avoid

4    invoking the jurisdiction of the bankruptcy court.  A

5    classic case of form over substance.

6           They told Judge Furman that they drafted their

7    amended complaint, unlike the other plaintiffs, who

8    acknowledge of GM's bankruptcy contentions, and took care

9    not to trigger the bankruptcy forum.  In essence, they went

10   to school on the earlier filed complaints filed by the other

11   plaintiffs.  That appears to be the real reason why they

12   wanted to amend the Elliotts' pro se complaint, which had

13   the same alleged flaws as the other plaintiffs' complaints.

14          The purpose of the amendment was simply not to

15   clarify a pro se pleading.  It was their attempt to end run

16   this Court's jurisdiction.

17          But without getting into the substance because

18   that is what our brief on the retained liability threshold

19   issue will be about, our moving papers on the motion to

20   enforce did cite to provisions of the sale order which are

21   worth repeating now.

22          Paragraph 46 of the sale order states, "that

23   except for assumed liabilities, which New GM's position is

24   that it's the glove box warranty, the post-sale accidents

25   and the lemon law claims, except for those three categories,

Page 32

1    New GM shall not have any liability for any claim that arose

2    before the closing date that relates to the production of

3    vehicles prior to the closing date."

4            In our view, our interpretation what we will be

5    arguing before Your Honor, is that an Old GM vehicle that

6    does not fit within the category of a glove box warranty

7    claim, a post-sale accident claim, or a lemon law claim, and

8    the Elliotts have not asserted any of those claims, are

9    something that is a retained liability.

10           The Elliotts have an Old GM vehicle, and state

11   they have claims against Old GM, and they choose not to

12   assert it here.  We think that the paragraph 46 of the sale

13   order is implicated of what the Elliotts have done.

14           Paragraph 8 of the sale order says "that any

15   person holding a claim whether it's matured or unmatured,

16   contingent or noncontingent, arising under or out of, in

17   connection with, or in any way related to Old GM, the

18   purchased assets, or the operation of the purchased assets

19   prior to the closing are forever barred from asserting those

20   claims against New GM."

21           The Elliotts have tried to say they're different

22   from the other plaintiffs, but they didn't do the perfect

23   job.  So if you look at paragraph 9 of the Elliotts'

24   complaint, it says that "New GM's actions caused a

25   substantial diminution of the value of their vehicles."

1          New GM will argue in its papers that this type of

2     assertion is measured from the point of sale.  That's the

3     diminution in value, from when they originally bought the

4     car, and that implicates Old GM, not New GM.

5          Paragraph 92 of their complaint states that the

6     Elliotts relied on New GM to identify latent defects.  New

7     GM will argue in its papers that latent defects of a car

8     manufactured and sold by Old GM is a retained liability of

9     Old GM.

10          The Elliotts have asserted common law fraud count,

11     seeking the diminution damages.  Again, in our view, that's

12     the difference between the vehicle as represented and the

13     value when sold by Old GM.  That is an Old GM issue.

14          And the D.C. Consumer Protection statute which is

15     cited by the Elliotts is a claim based on a statute which

16     deals with trade practices arising from the consumer

17     merchant relationship.  We will be arguing in our brief that

18     it applies to merchants who provide the consumers with goods

19     and services.  That means the point of sale.  That means Old

20     GM.

21          THE COURT:  Pause, please, Mr. Steinberg.  I

22     assume you're saying this not because you're asking me to be

23     persuaded by the underlying merit of what you're saying, but

24     simply to say that this overlaps with what you're going to

25     be arguing with Mr. Weisfelner and Mr. Enselbuck and Mr.

Page 34

1    Wasserman (ph)?

2             MR. STEINBERG:  That is correct, Your Honor.  It's

3    to illustrate that this -- we believe that these issues in

4    their own complaint implicated retain liabilities.  We want

5    to have the opportunity to argue it in a coordinated

6    fashion, so that whatever Your Honor rules will be binding

7    on not just the Elliotts but everybody else, and this will

8    not be a stare decisis issue, it will be a collateral

9    estoppel issue.  And this train has left the station and the

10   first brief is going to be filed in 17 days.

11            In the end, the Elliotts are no different than the

12   Finiff plaintiffs.  They're no different from any of the

13   other plaintiffs.  Their claims implicate the sale order,

14   and they are embowed therefore by the injunction they're in.

15            Their arguments can be presented to the Court, and

16   the Court will consider them as part of the threshold

17   issues.  And the Court will make the determination of those

18   claims, but that's when it should happen not before.

19            There is one other thing that I will say, Your

20   Honor, as sort of a general category.  There was a lot of

21   heated rhetoric by Mr. Peller about criminal enterprises and

22   other things where there were pejorative terms used.  I will

23   not try to engage on a point-by-point basis, other than to

24   say that New GM refutes that, and will put that in their

25   papers if they are raised in the briefing.  Thank you.

Page 35

 1              THE COURT:  Okay.  Mr. Weisfelner, you have a

 2      right under 1109 in Caldor to be heard if you want to be.

 3              MR. WEISFELNER:  Your Honor, I think discretion --

 4              THE COURT:  Just pull a mic close to you for

 5      whatever you say or as little as you say even.

 6              MR. WEISFELNER:  Your Honor, I think discretion

 7      being the very part of valor suggests that we advised Your

 8      Honor that we're here in an observatory fashion only.

 9              I would point out, however, that I think GM has it

10      absolutely wrong when it draws the distinction between

11      retained liabilities and assumed liabilities.

12              As I think Second Circuit authority, Travelers,

13      Quigley made crystal clear, and as I think Mr. Peller is

14      arguing, although I think arguing out of turn, this Court

15      didn't have, couldn't have protected New GM from actions

16      that New GM took or violations that New GM is responsible

17      for.

18              The question isn't whether Your Honor has subject

19      matter jurisdiction, we would assert in the first instance

20      with regard to actionable conduct by New GM, we agree with

21      Mr. Peller in terms of the limitations of the bankruptcy

22      court's jurisdiction in that regard.  Where we seem to part

23      ways is over the question of whether or not Your Honor's

24      exclusive jurisdiction to interpret your own sale order

25      requires preliminary proceedings here before one reaches

Page 36

1    that second question.

2           Your Honor, I have nothing else to add.

3           THE COURT:  Okay.  Mr. Peller, reply.

4           MR. PELLER:  Many new issues were raised, and so

5    I'm just going to treat them in the order that I have

6    written them down.  I'm sorry if it's not the order they

7    were stated, Your Honor.

8           The question as to whether the Elliotts can amend

9    their complaint is over.  Judge Jackson granted their

10   amendment.  Judge Jackson's order very clearly expressed

11   concern with this Court's interference with Judge Jackson's

12   docket by purporting to require the Elliotts to withdraw

13   from that court's pending active consideration a pleading

14   before that Court.

15          With respect to the question of it retained and

16   assumed liabilities, Your Honor, our letter of July 23rd

17   makes clear that GM is operating a little shell game in

18   argument here.  There aren't just two kinds of claims here.

19   The claims that are either retained by Old GM or those

20   assumed by New GM.  There's three categories of claims.

21          The first category is those claims under the sale

22   order that Old GM retained.  The second category is the

23   claims under the sale older that New GM assumed, the lemon

24   law claims and what have you.  The third category of claims,

25   and those are exclusively and solely the claims that the

Page 37

```
 1    Elliotts are asserting.

 2              Those claims are based on independent, non-

 3    derivative duties that New GM owed to plaintiffs not to

 4    conceal information material to the issue of whether they

 5    would get in their cars in the morning and drive them.  New

 6    GM knew those cars were eminently and unreasonably dangerous

 7    and didn't tell anybody.

 8              The argument that Mr. Steinberg has presented to

 9    the Court today, the implications are, I'll say it a little

10    differently than Mr. Weisfelner, the implications are that

11    New GM is claiming an immunity for whatever wrongdoing it

12    might do, so long as the wrongdoing occurs with respect to a

13    2006 vehicle.

14              Can New GM put a bomb in a vehicle, a 2006

15    vehicle, blow people up?  According to Mr. Steinberg's

16    argument, we'll have to refer to the 2009 sale order and see

17    if New GM -- if that would be assumed or retained liability

18    of New GM.

19              Your Honor, the argument is absurd.

20              THE COURT:  Pause, please, Mr. Peller.  You're

21    saying if a New GM car blows up now, you're saying what?

22              MR. PELLER:  I'm saying that --

23              THE COURT:  I thought that New GM had always

24    acknowledged that if a GM car blows up now, it's addressing

25    that claim.
```

Page 38

```
 1            MR. PELLER:  If there's personal injury, Your
 2    Honor, not if there's property damage or what they call
 3    economic loss, which we understand more properly as claims
 4    asserted on behalf of those lucky enough not yet to have
 5    been killed or injured by the dangers that New GM has hidden
 6    from the American public.
 7            THE COURT:  Did you read my Deutsche opinion, Mr.
 8    Peller?
 9            MR. PELLER:  I'm sorry, Your Honor.  I didn't hear
10    you, Your Honor.
11            THE COURT:  In my GM Deutsche opinion when I
12    talked about what incidents means in the context of post-
13    sale events?
14            MR. PELLER:  I'm not recalling --
15            THE COURT:  It's where I said, the words of my
16    opinion, we'll deal with it most directly as would the words
17    of the sale order in the sale agreement, but I could swear
18    the issue was that since in Deutche was that since New GM
19    had agreed to address claims for accidents or incidents
20    after the sale date, and if a car blew up after the sale
21    date, that was an example of an incident, that was something
22    that New GM was prepared to address.
23            MR. PELLER:  Your Honor, this is not about any
24    assumed liabilities or anything under the sale order.  We're
25    talking about -- I was just trying to give an example of an
```

Page 39

1    independent duty that New GM has not to commit wrongdoing

2    vis a vis people.  And they can't -- they can't gain

3    immunity if they just happen to do the wrongdoing --

4              THE COURT:  I understand that --

5              MR. PELLER:  -- through a two thousand --

6              THE COURT:  -- argument.  Forgive me.  I

7    understand that argument.  I think Mr. Weisfelner was

8    reserving the right to make that argument too or giving me a

9    preview that I would be hearing from it from him.

10             The issue before me is the extent to which I

11   should let you argue it instead of people like Mr.

12   Weisfelner who know a little bit more about the case and a

13   little bit more about bankruptcy law.

14             MR. PELLER:  I appreciate the advice, Your Honor.

15   I'd like to continue my argument.

16             THE COURT:  Go ahead.

17             MR. PELLER:  With respect to the adjournment, we

18   asked for an adjournment because on August 11th, Judge

19   Furman will be considering whether to let a -- discovery

20   proceed in the consolidated proceedings before him.  GM is

21   arguing that the -- this Court's stays prevent that from

22   proceeding and Judge Furman will be hearing that argument on

23   August 11th.

24             We thought it might be advisable and this Court

25   might wish, given comity concerns, to hear from Judge Furman

Page 40

1    before it proceeded on this matter.  That was the reason we

2    asked for an adjournment.  GM opposed it.

3           The question of Section 9 of the sale order,

4    diminution of value, Mr. Steinberg argues that because we're

5    asking for a diminution of value we must be implicating the

6    retained liabilities of Old GM.  But that's not true, Your

7    Honor.  That's not the claim we're making.

8           GM is not permitted to say well, they could have

9    claimed this, and we think they're claiming this, and

10   therefore, you have subject matter over the jurisdiction

11   that GM -- it claims that GM asserts that we're asserting.

12   That's not the claims we're asserting.

13          The diminution in value is due to New GM, as the

14   complaint clearly said, since October 19th or what have you

15   of 2009, when New GM came into existence, the actions that

16   New GM took to diminish the value, interfere with the use,

17   impose increased risks, and other harm that New GM has

18   caused the Elliotts and other plaintiffs.

19          The question -- the assertion that the Elliotts'

20   claims are just like the claims of the other plaintiffs is,

21   I think at best, confusing, Your Honor.  The Elliotts make

22   solely and exclusively claims against New GM based on

23   independent duties that New GM owed that are not derivative

24   of or successor to duties that Old GM owed.

25          It is true that many of the other and I would

Page 41

1    venture to say maybe all of the other ones also make such

2    claims, but they make such claims in combination with

3    pleadings that arguably implicate the retained liabilities

4    of Old GM.

5            Because this Court may have related to

6    jurisdiction under Section 1334 over the claims with respect

7    to retained liability, there is possibly -- again, we

8    express no opinion on the matter.  There's possibly

9    supplemental jurisdiction over the claims that this Court

10   would otherwise have no jurisdiction over were they the only

11   claims.

12           The question of this Court's authority under the

13   sale order to interpret its own order is well settled.  I

14   believe that these are the responsive and controlling

15   precedents, Your Honor.  I again apologize, the Elliotts are

16   low income elderly and not able to retain specialized

17   bankruptcy counsel.  We're doing the best we can, Your

18   Honor, and we appreciate your patience.

19           While jurisdiction to enforce the sale order may

20   uncontroversially be exercised under Section 5, it's clear

21   that the broad powers to enforce the Court's own order, is

22   itself, and I'm quoting now, limited by the jurisdictional

23   limits of the order sought to be enforced.  That's the

24   Fairfield Aircraft (ph) case, it's the In Manner Mooney (ph)

25   case and as Mr. Weisfelner mentioned, the Quigley case

Page 42

1    discusses this issue at length and makes that clear.

2          This Court can't expand its subject matter

3    jurisdiction by claiming to have to consider whether

4    independent non-derivative claims might implicate the sale

5    order.  Of course it can.

6          As we mentioned earlier, the Manville II Court has

7    made ultra-clear that this Court is to use special care when

8    confronted with a non-debtor like GM who seeks the Court's

9    protection, given the risk of abuse of the Court's stay

10   power that plaintiffs will repeat and we believe has

11   occurred in the proceedings here.  Excuse me,

12   (indiscernible).

13         So the Elliotts' lawsuit is different than the

14   other lawsuits.  We didn't go for all the money on the

15   table.  We didn't assert every claim possible.  We asserted

16   claims that would ensure that there would be a vehicle

17   available, and pardon the pun, that there would be a vehicle

18   available to seek emergency relief if that was needed.

19         The other plaintiffs, for whatever reason, made a

20   different decision to enter voluntary stay stipulations.

21   Had the Elliotts been part of those discussions that led to

22   those decisions on the part of the group of plaintiffs, we

23   certainly would've expressed concern about entering any stay

24   in this court that did not include an exception for

25   emergencies.

Page 43

1          The lack of attention to the real world and human

2     needs of plaintiffs and punitive class members is

3     unfortunate.  Mr. Steinberger -- Mr. Steinberg, excuse me,

4     Mr. Steinberg has claimed that our rhetoric about how this

5     Court has closed every courthouse door in America to those

6     driving dangerous vehicles is overblown because we could've

7     come here to seek the loaner car that CEO Barra promised

8     those driving dangerous cars.

9          I believe -- I thought at first that this

10    suggestion was sarcastic on GM's part, but I now understand

11    GM to be actually asserting the claim with a straight face.

12    This Court's May 16th scheduling order, this Court's July

13    11th's scheduling order includes no exception for emergency

14    relief.  That's part of what makes it so clear, that this

15    kind of case doesn't belong in this court.

16          I want to speak to one other issue because GM

17    hasn't really engaged the Elliotts' jurisdictional argument.

18    They say, give us more time if you think we need to, this is

19    an assumed issue under threshold issues, et cetera, and, and

20    I just want to point out, Your Honor, that those who are

21    dragged before this Court and barred from prosecuting New GM

22    for its wrongdoing, my understanding is under the July 11th

23    scheduling order, given a mere three days to try to make

24    their arguments as to why this Court may not have

25    jurisdiction over them.

Page 44

1          New GM filed its motion I think April 21st or

2     22nd.  If it wasn't prepared to defend and establish the

3     subject matter jurisdiction of this Court, it shouldn't have

4     dragged the Elliott lawsuit here.

5          New GM -- I'm sorry, Mr. Steinberg has claimed

6     that through some kind of artful pleading we've carefully

7     put our way around this Court's jurisdiction.  It's not

8     artful pleading, Your Honor, it's just -- it's claims we

9     assert, you either have jurisdiction over them or you don't,

10    and our position is, of course, that you don't.

11         I'm happy to submit further papers, Your Honor, on

12    the cases that Your Honor mentioned, but I don't have the

13    cases off the top of my head, Your Honor, but I have read

14    them all.  And I'm very confident that not a single one of

15    those cases says that this Court has any jurisdiction over

16    the assertion of third party claims against a non-debtor

17    that assert issues of independent duties that that non-

18    debtor, GM, owed to plaintiffs and breaches of those duties.

19         In addition to the Travelers' case and the

20    Manville case, we also have the In Re Old Carco case, the In

21    Re Drewer (ph) case, the In Re Gorman (ph) case that you

22    discussed with the Finiff parties.  Each of those --

23         THE COURT:  You mean Grumman Olson.

24         MR. PELLER:  Pardon me?

25         THE COURT:  You mean Grumman Olson.

Page 45

1          MR. PELLER:  Yes, I'm sorry, Grumman Olson.

2          Each of those -- in each of those cases, the

3    relevant courts and particularly in the cases that reach the

4    Second Circuit, the Courts made clear that original

5    jurisdiction can't be expanded to grant immunity against new

6    wrongdoing by the reorganized entity emerging out of the

7    bankruptcy proceedings.

8          New GM is here claiming immunity for all its

9    wrongdoing that it did, not Old GM, it did in concealing

10   material safety risks from my clients, the punitive class

11   members, and consumers across America.

12         We believe that -- we've got fellow plaintiffs

13   here telling this Court don't hear their claims.  We've got

14   GM here telling the Court don't hear these claims.  We have

15   the Court here questioning why we are not complying with

16   this Court's order.  The Elliotts are somewhat isolated,

17   it's true.  Luckily, however, Your Honor, subject matter

18   jurisdiction is not a popularity contest.

19         And regardless of the weird conjunction of

20   interests that have put GM and our fellow parties in the

21   same position arguing that we should not be heard, we have

22   faith that we have one important ally on our side, and

23   that's the plain and clear rule of law.

24         This Court has no subject matter jurisdiction over

25   the Elliotts.  It's time to free them from this Court's

Page 46

1    orders, from GM's constant threats that they're going to

2    hold the Elliotts in contempt, and let us go on our way

3    before Judge Furman to try to prosecute our claims.

4            Again, I'll be submitting further papers speaking

5    to the cases that Your Honor asked me to speak to.  Thank

6    you.

7            THE COURT:  Mr. Steinberg.

8            MR. STEINBERG:  Your Honor, I'll be brief.  Just

9    to answer your question about whether if there was property

10   damages compared to an accident, where a personal injury was

11   caused on a post-sale incident or accident, the sale

12   agreement is pretty clear that property damage is also

13   covered.  Economic losses aren't a property damage.

14           THE COURT:  There's also coverage so that if a car

15   gets into a wreck and nobody is hurt, but the car is

16   wrecked, it is covered, that is New GM will write out a

17   check if it's otherwise liable.

18           MR. STEINBERG:  It is an assumed liability, yes,

19   Your Honor.

20           Second thing, I was surprised he wanted to talk

21   about Justice Jackson's ruling when he didn't comply with

22   Your Honor's order, but it should be pointed out that

23   Justice Jackson did stay all actions in that D.C. action,

24   pending Your Honor's rulings and Judge Furman's rulings.

25           So he allowed the amended complaint -- she allowed

Page 47

1    the amended complaint to be filed, but then stayed

2    everything as a way of dealing with the issue.

3             The -- Mr. Peller actually conceded the argument

4    that he was not uniquely situated.  He essentially said that

5    the other plaintiffs have raised his type of claim, but they

6    raise other claims as well too.  So there's clearly an

7    overlap, it's just not identical.  And once he's made that

8    concession that the other plaintiffs will be asserting his

9    claims as well as other types of claims as part of their

10   overall briefing on the threshold issue, then he's admitted

11   that he's not uniquely situated.  Only to the extent that he

12   hasn't asserted some of the other claims, but to the extent

13   that there's an overlap, he's conceded that issue.

14            The notion I just want to clarify one thing, is

15   that the notion that Your Honor's orders have foreclosed

16   anybody from seeking relief if there was a safety issue is

17   not true.  I had said that there was nothing that foreclosed

18   anybody coming to this court.  I'd also suggested that he

19   didn't seem to care whether he came to this Court or to the

20   D.C. Court anyway, when he was looking for something, that

21   he had threatened many times to go to another court and

22   hadn't done it.

23            But the real answer is there's a safety concern

24   relating to the recall, the person to address your concerns

25   were -- are with NHTSA, the National Highway Transportation

Page 48

```
 1    Safety Administration.  They're the ones who supervise the

 2    recall.  That is, you can't have courts administering a

 3    recall in different ways.  And the argument is that it has

 4    primary jurisdiction over this issue.  But he hasn't pressed

 5    any of it.

 6            He's gotten his ignition switch repaired, and to

 7    some extent, we've been trying more than they have, to try

 8    to access the car to see whether there are any other issues

 9    that are left.

10            The diminution in value, if he wants to argue that

11    his claim is that there was no accident or injury, but a car

12    which at the time of the sale had a defective ignition

13    switch, that post sale the failure to say that there was a

14    defective ignition switch in 2012 versus 2013 versus 2014,

15    which was then repaired, created a diminution in value of a

16    car that he had bought in 2006.  If he can try to figure out

17    what that articulation of that claim is, then I think that's

18    something to consider.  But then the claim doesn't exist

19    because there's no damages.

20            The -- finally, two final points.  One is the

21    three days to respond was a negotiated point with us and the

22    designated counsel, and it could've been five days, it

23    could've been three days.  The real point was, is that

24    everybody had said that they agreed that the Court had

25    jurisdiction.  They agreed that on the surface of these
```

Page 49

1    complaints the motion to enforce had applicability, and they

2    wanted to be able to brief the issue in an orderly fashion.

3            Anybody who was going to challenge it now which is

4    two months after, more than two months after these orders

5    were entered, will have the ability to understand why

6    they're going to challenge it, and they don't need more than

7    one day or two days to be able to assert why they think they

8    should be able to flout this Court's jurisdiction.

9            And finally, all of the precedents that counsel is

10   talking about with regard to non-debtor entities, do not

11   apply in the context where the non-debtor entity is a

12   purchaser, that in order to encourage 363 sales, the public

13   policy of protecting purchasers that they will get what they

14   bargained for in a bankruptcy auction process.  And that

15   those parties who bargained for the protection of the

16   bankruptcy court to get the deal that they had negotiated,

17   they're entitled to come back to the Court if they believe

18   they're not getting the deal that they had negotiated.  And

19   when the Court reserves jurisdiction to examine that issue,

20   that is not the same case, that is the Manville II case or

21   any of the other type cases.

22            THE COURT:  All right.  Everybody sit in place for

23   a moment.

24        (Pause)

25            THE COURT:  All right.  Ladies and gentlemen, I'll

Page 50

1     issue a written opinion on this in the next day or two, but

2     I'm going to summarize the bases for the ruling by a

3     dictated decision now.

4              Once again, a plaintiff group wishing to proceed

5     ahead of the 88 or more ignition switch plaintiffs whose

6     claims I've already addressed or will be addressing, has

7     asked for leave to go it alone.  That request is denied with

8     a single exception.

9              The contentions that are made here don't

10    materially differ from those I addressed in my oral and

11    written opinions in Finiff.  And as to that single

12    exception, the contention that I lack subject matter

13    jurisdiction to construe and enforce the sale order, that

14    contention is frivolous.

15             It disregards controlling decisions of the United

16    States Supreme Court in Travelers, the Second Circuit in

17    Petrie Retail and Millennium Sea Carriers, District Court

18    authority by Judge Marrero in Lothian Cassidy, four

19    decisions I personally issued in Sterling Optical, Ames

20    Department Stores, GM UAW and GM Trusky, three decisions by

21    other bankruptcy judges in this district by Judge Drain in

22    Portrait Corporation of America, Judge Gropper in General

23    Growth, and Judge Bernstein in Grumman Olson and, in fact,

24    the leading treatise in the area of Collier.

25             The Elliotts' motion to dismiss for lack of

Page 51

1    subject matter jurisdiction is likewise denied.

2            Turning first to the subject matter jurisdiction

3    contention.  The Elliott plaintiffs say at page 5 of their

4    brief, that because New GM's claims are not "related to" any

5    proceedings before this Court, this Court lacks jurisdiction

6    to stay their lawsuit or to restrict the Elliott plaintiffs

7    in any way.

8            I flatly disagree.  That argument misses the

9    point.  Related to jurisdiction has nothing to do with the

10   issues here.  Bankruptcy courts, and when it matters,

11   district courts, have subject matter jurisdiction to enforce

12   their own orders, or to construe them, under those court's

13   arising in jurisdiction.  There are nearly a dozen cases I

14   mentioned a moment ago expressly so hold.

15           As explained in many of those cases, Section 1334

16   of the Judicial Code, and I note for the avoidance of doubt,

17   that's the Judicial Code, not the Bankruptcy Code, we're

18   talking about 28 U.S.C., which immediately follows the

19   provisions of the Judicial Code addressing subject matter

20   jurisdiction in federal question cases, diversity cases, and

21   admiralty cases.  Addresses the subject matter jurisdiction

22   of the district courts and hence the bankruptcy courts in

23   matters relating to bankruptcy.

24           As relevant here, it provides that the district

25   courts shall have original but not exclusive jurisdiction of

1    all civil proceedings arise under Title 11 or arising in or

2    related to cases under Title 11.  The three types of

3    jurisdiction that district courts, and hence bankruptcy

4    courts have are thus colloquially referred to as arising

5    under jurisdiction, which is a species of federal question

6    jurisdiction, which is not asserted to be applicable here by

7    either side; arising in jurisdiction or related to

8    jurisdiction.

9            The middle one arising in jurisdiction, focuses on

10   whether the claim would or would not have any existence

11   outside of bankruptcy.  Matters involving the enforcement of

12   a -- or construction of a bankruptcy court order are in the

13   arising in category as I expressly held in Sterling Optical,

14   Judge Marrero held in Lothian Cassidy and most of the other

15   cases likewise held either expressly or by implication.

16           I dealt with the related two contention in Ames

17   Department Stores, because there too, I got a contention.

18   The contention is mainly raised in the brief, more so than

19   in oral argument, that the outcome of the sale order

20   interpretation would have no effect on the bankruptcy

21   estate.

22           But again, assuming that that's true, it misses

23   the point, because effect on the estate is the standard for

24   related to jurisdiction, and New GM is focusing on arising

25   in jurisdiction, as all of the other litigants who have

Page 53

1    dealt with the sale enforcement order cases have likewise

2    argued, some of those being New GM in earlier proceedings in

3    which I was asked to enforce the sale order, and in other

4    cases.

5              For instance, the Supreme Court whose opinions

6    state the obvious, they're binding on the lower courts in

7    the United States, said in Travelers, as the Second Circuit

8    recognized, the bankruptcy court plainly had jurisdiction to

9    interpret and enforce its own orders.

10             Second Circuit in Millennium Sea Carriers,

11   bankruptcy courts retain jurisdiction to enforce and

12   interpret their own orders.

13             Nor is it an answer for the Elliott plaintiffs to

14   premise jurisdictional arguments on the conclusion they

15   ultimately want me to reach.  That upon construction of the

16   sale order and the sale agreement, their claims would be

17   permissible under each.

18             That may or may not be true.  Lawyers with fairly

19   substantial knowledge of bankruptcy litigation will be

20   arguing some or maybe even all of those exact contentions.

21   But the argument that I got now that the procedures before

22   me can be sidestepped, assumes the fact to be decided in the

23   upcoming briefing in this court that the Elliott plaintiffs

24   wish to sidestep.

25             Their argument conflates, it mixes up the

Page 54

1    conclusion I might reach after analysis of the issues before

2    me, that certain claims ultimately might not be covered by

3    the sale order, with my jurisdiction to decide whether or

4    not they are.

5          So the subject matter jurisdiction argument is

6    rejected, the motion to dismiss for lack of subject matter

7    jurisdiction is denied.

8          Then I reach the issue that the plaintiffs in 86

9    other actions didn't bother to raise, and where in the only

10   exception of Finiff I addressed with the issue in greater

11   length than I'll do here.  Obviously, what I said in Finiff

12   will be part of this decision, the expression we use is

13   incorporating it by reference.

14         Like Finiff plaintiffs, Lisa Finiff, Adam Smith

15   and Catherine and Joseph Kabral (ph), the Elliott plaintiffs

16   purchased a car by Old GM.  In this case, it was a 2006

17   Chevy Cobalt.

18         The sale order provided, among other things, that

19   except for the assumed liabilities expressly set forth in

20   the sale agreement, New GM would not have any liability for

21   any claim that arose prior to the closing date or as

22   relevant here, relates to the production of vehicles prior

23   to the closing date, or otherwise is assertable against the

24   debtors, or is related to the purchased assets prior to the

25   closing date.

Page 55

1    I don't need to, and I'm not addressing the extent

2    to which most of the language in that paragraph applies.

3    For the purposes of this, it's sufficient to note that the

4    Elliotts' claim relates to the production of vehicles prior

5    to the closing date.

6    And while they disclaim reliance on Old GM acts,

7    the complaint doesn't bear that out.  Though obviously in a

8    lesser degree than in Finiff, the Elliott plaintiffs'

9    complaint also relies on the conduct of Old GM and asserting

10   claims against New GM by reason of Old GM's "unlawful

11   concealment."

12   The language in their complaint to which I'm

13   referring and stating in full, "New GM acquired all the

14   books, records, and accounts of Old GM, including records

15   that document the unlawful concealment of defects in

16   vehicles sold by Old GM prior to New GM's existence."

17   So as in Finiff, I find that the plaintiffs,

18   Elliott plaintiffs are asserting claims with respect to

19   vehicles that were manufactured before the 363 sale.  And

20   although to a lesser extent than in Finiff, relying on the

21   conduct of Old GM, the applicability of the sale order has

22   been established in the first instance.

23   Now, that isn't to say that when the bankruptcy

24   litigators who are carrying the sword for the plaintiff

25   community get to be heard in the proceedings in the upcoming

Page 56

1   weeks, they'll be unable to show areas in which the sale

2   order, after I exercise my sale order jurisdiction, doesn't

3   apply.  Or that to the extent it does apply, will be

4   unenforceable in whole or in part.

5        That's exactly why three of the best tort

6   bankruptcy litigation firms in the country were detailed to

7   carry the sword for the plaintiff community.  I express no

8   views today on who's going to win in the proceedings yet to

9   be heard in this court.

10        But that is also exactly why the sword will be

11  carried by people who know what they're doing and who are

12  capable of presenting these issues to me and respectfully,

13  don't make frivolous arguments on subject matter

14  jurisdiction.

15        Also, for the reasons that have been stated, even

16  if the sale order didn't apply in the first instance, I

17  would be issuing a preliminary injunction to keep this

18  controversy from proceeding ahead of all of the others for

19  the reasons I stated in the written decision in Finiff.

20        This ruling, to be clear, is without prejudice to

21  any of the arguments to be made on the applicability or

22  enforceability of the sale order and sale agreement in the

23  weeks to follow.  It's only about the ability of one

24  plaintiff group to get ahead of everybody else.  All of the

25  Elliott plaintiff rights to assert anything on the merits

Page 57

1    are reserved.  Reserved is the expression judges use to say

2    that they have the ability to argue down the road.  But the

3    Elliotts are not going to be allowed to raise them ahead of

4    everybody else.

5           Now, just by way of advice although I can't really

6    give legal advice, and not ruling, if as I heard New GM

7    said, it's willing to pick up the Elliotts' car and to look

8    at it and to fix anything that needs to be fixed, the

9    Elliotts might well served to take New GM up on that offer.

10          I'll expressly rule that if they do that, it will

11   be without prejudice to any proceedings before me.  Without

12   prejudice is kind of like another way of saying reserved.

13   That means that's not going to be held against them.  It's

14   in everybody's interests to get that car safe and running to

15   the extent it isn't safe or running yet.  But the Elliotts

16   can't get ahead of everybody else.

17          Mr. Peller, you said at the outset that you're not

18   appearing in any way or acting in your capacity in any way

19   vis a vis the Georgetown Law School.  I would appreciate it

20   if you would advise my law clerks of any alternate address

21   that should be placed with respect to your name on the

22   written opinion to follow.

23          New GM is to settle an order in accordance with

24   this ruling after the written opinion has come out.  It

25   should be drafted to conform in material respects to the one

1    that I ultimately entered in Finiff as contrasted to the one

2    that was originally provided to me as part of the original

3    notice of settlement.

4              For the avoidance of doubt, the time to appeal

5    from my determination will run from the time of entry of the

6    order to be entered and not from the time that I'm today

7    dictating this oral summary of decision.

8              Not by way of reargument, do we have any open

9    issues?  Mr. Peller?

10             MR. PELLER:  Your Honor, the plaintiffs would like

11   to be heard on the issue of the factors relevant to the

12   entry of the injunction.  You have made findings in the

13   Finiff in the July 2nd hearing with respect to the risk of

14   inconsistent litigation and findings, et cetera, but we

15   would wish to be heard on that.

16             THE COURT:  That's denied.  You've had full and

17   fair opportunity to be heard here, Mr. Peller.

18             MR. PELLER:  Okay.

19             THE COURT:  All right.  Mr. Steinberg?

20             MR. STEINBERG:  Nothing further from us, Your

21   Honor.

22             THE COURT:  All right.  We're adjourned.

23   (Proceedings concluded at 11:20 AM)

24                         *  *  *  *  *

25

1                                I N D E X

2

3                             R U L I N G S

4    IDENTIFICATION                                      PAGE

5    Plaintiffs Lawrence and Celestine Elliott's          49

6    No Stay Pleading Pursuant to the Court's

7    Scheduling Orders and Motion for Order of

8    Dismissal for lack of Subject Matter Jurisdiction

9    and for related relief (technical corrections

10   to Doc. 12772 with exhibits attached) (ECF 12774)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 60

CERTIFICATION

I, Sheila G. Orms, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated:  August 6, 2014

Shelia G. Orms

Digitally signed by Shelia G. Orms
DN: cn=Shelia G. Orms,
o=Veritext, ou,
email=digital@veritext.com, c=US
Date: 2014.08.06 09:55:22 -04'00'

Signature of Approved Transcriber

Veritext

330 Old Country Road

Suite 300

Mineola, NY 11501