Gary Peller
600 New Jersey Avenue, N.W.
Washington, DC 20001
(202) 662-9122
peller@law.georgetown.edu
Counsel for Celestine Elliott, Lawrence Elliott,
and Berenice Summerville

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re                                                              :   Chapter 11
                                                                   :
MOTORS LIQUIDATION COMPANY, *et al.*,                              :   Case No.: 09-50026 (REG)
      f/k/a General Motors Corp., *et al.*                :
                                                                   :
                Debtors.                                :
-----------------------------------------------------------------X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CELESTINE ELLIOTT, *et al*.                                            14-cv-8382 (JMF)
        Plaintiffs,
   v.
GENERAL MOTORS LLC, *et al*.
        Defendants.
-----------------------------------------------------------------X
-----------------------------------------------------------------X
In re:
GENERAL MOTORS LLC IGNITION                                            14-md-2543 (JMF)
SWITCH LITIGATION
-----------------------------------------------------------------X

### *ELLIOTT* PLAINTIFFS' MOTION FOR LEAVE TO APPEAL
### INJUNCTIVE ORDER OF THE BANKRUPTCY COURT

Pursuant to 28 U.S.C. § 158(a)(3), Lawrence Elliott, Celestine Elliott, and Berenice

Summerville (collectively "Plaintiffs"), co-plaintiffs in *Elliott et al v. General Motors LLC et al.*,

1:14-cv-8382 (JMF), seek leave to appeal the Bankruptcy Court's August 12, 2014 Order and

Decree Denying the Relief Requested by the Elliott Plaintiffs in their No Stay Pleading, denying

Plaintiffs' motion to dismiss for lack of subject matter jurisdiction, and enforcing the Bankruptcy

Court's 2009 Sale Order and Injunction to enjoin Plaintiffs from prosecuting their lawsuit against General Motors LLC ("New GM") (ECF No. 12834, hereafter the "August 12 Order"). The Bankruptcy Court explained its decision in an August 6, 2014, Decision With Respect To No Stay Pleading (ECF No. 12815), in the rulings rendered during the Bankruptcy Court's July 2, 2014, and August 5, 2014, hearings on this matter, and in related Orders and rulings (ECF 12740, 12763, 12771, 12792, 12993).

As explained below, because the Bankruptcy Court's August 12 Order involves controlling issues of law about which there is a substantial ground for difference of opinion, and because an immediate appeal will materially advance the litigation by making clear that Plaintiffs' claims--and those of millions of putative class members--are not subject to the Bankruptcy Court's jurisdiction, this appeal should be heard now.

## I. INTRODUCTION AND RELEVANT BACKGROUND

Starting in February 2014, and continuing in piecemeal fashion since, New GM has publicly admitted that its employees and lawyers knew about safety-related defects in millions of GM vehicles, including the vehicle models owned by Plaintiffs, and that New GM did not disclose those defects to Plaintiffs or to governmental officials, as it was legally required to do.

Plaintiffs seek leave to appeal the Bankruptcy Court's enforcement of its 2009 Sale Order and Injunction to enjoin prosecution of their lawsuit against New GM in which they assert claims for injuries Plaintiffs allege they and putative class members have suffered because of New GM's misconduct. The Bankruptcy Court's July 12 Order should be reversed because the Bankruptcy Court lacked subject matter jurisdiction over Plaintiffs' claims.

The Bankruptcy Court's assertion of subject matter jurisdiction is erroneous because Plaintiffs' claims against New GM, a non-debtor, are based exclusively on breaches of

2

independent, non-derivative duties that Plaintiffs allege that New GM owed Plaintiffs, causing them legally cognizable injury. Plaintiffs assert that New GM knew that Plaintiffs faced imminent risk of death or serious injury in driving their GM cars due to the cars' defective ignition switches and fuel pumps, that New GM had a duty to disclose these risks to them, and that New GM's breaches of its duty to disclose these risks caused Plaintiffs to suffer economic loss and an increased risk of death or serious injury.

Because their claims do not implicate any liability that the debtor, General Motors Corporation ("Old GM"), may have ever held, Plaintiffs' claims do not derive from any liability that Old GM may have had and therefore could have "no conceivable impact" on Old GM's estate. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy [sufficient to confer bankruptcy jurisdiction] is whether its outcome might have any conceivable effect on the bankrupt estate." (*internal quotation marks omitted*). Plaintiffs' claims are accordingly are not "related to" Old GM's Bankruptcy. *See In re Quigley Co., Inc.*, 676 F.3d 45 (2d Cir. 2012) ("'related to' jurisdiction to enjoin a third party dispute exists where the subject of the third party dispute is property of the estate, or the dispute would have an effect on the estate.") The Bankruptcy Court's 2009 Sale Order could not constitutionally have immunized New GM from such future claims for redress of its own, independent, wrongdoing, and likewise the Bankruptcy Court lacks jurisdiction now to enjoin Plaintiffs from asserting their claims against New GM. *See In re Johns Manville Corp.*, 517 F.3d 52, 65-66 (2d Cir. 2008) ("*Manville III*"), *vacated & remanded on other grounds*, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009), *aff'g in part & rev'g in part*, 600 F.3d 135 (2d Cir. 2010) ("*Manville IV*") (bankruptcy court has no subject matter

3

jurisdiction over third party claims against non-debtor based on breaches of independent, non-derivative duties allegedly owed by non-debtor to plaintiffs.)

    *1. The 2009 Sale Order and Injunction*

On June 1, 2009, Old GM and certain of its affiliates filed voluntary petitions for bankruptcy relief. Old GM presented a "pre-packaged" transaction in which it sought to move on an expedited basis through the bankruptcy process. Old GM did not provide actual notice of the Sale Procedures Motion to the Plaintiffs.[1] Notice of the application for the Sale Order and Injunction was mailed to various identified creditors.[2] "Unknown creditors" were accorded publication notice in select newspapers that appear to have been selected to target the financial community.[3] Following the hearing, on July 5, 2009, the Bankruptcy Court entered the Sale Order and Injunction, Doc. No. 2968, that is the subject of New GM's Motion to Enforce. The Sale closed on July 10, 2009.[4]

Pursuant to the Sale Order, New GM acquired substantially all of Old GM's assets but did not assume all of Old GM's liabilities. The Sale Order purports to bar claims against New GM "based on any successor or transferee liability." *See* Sale Order ¶¶ 10, 46, 48. The Sale order enjoins the pursuit of any claim asserting "successor or transferee liability" against New GM unless the claim is otherwise assumed. *See* Sale Order ¶ 8, 47.

---

[1] *See* Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006 (I) Approving Procedures For Sale Of Debtors' Assets Pursuant to Master Sale and Purchase Agreement with Vehicle Acquisition Holdings Llc, a U.S. Treasury-Sponsored Purchaser; (Ii) Scheduling Bid Deadline and Sale Hearing Date; (Iii) Establishing Assumption and Assignment Procedures; and (Iv) Fixing Notice Procedures And Approving Form Of Notice ("**the Sale Procedures Order**"), Doc. No. 274, at 2.
[2] Sale Procedures Order ¶ 9 (a- d).
[3] Sale Procedures Order ¶ 9 (e).
[4] *See* Decision on Debtors' Motion for Approval of (1) Sale of Assets to Vehicle Acquisition holdings LLC; (2) Assumption and Assignment of Related Executory Contracts; and (3) Entry into UAW Retiree Settlement Agreement available at *In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) (the "**Sale Decision**") Doc. No. 2967.

4

*2. GM's Motion to Enforce the Sale Order and Injunction*

On April 21, 2014, New GM moved the Bankruptcy Court to enforce its July 5, 2009, Sale Order by restraining the Elliotts and plaintiffs in 45 other lawsuits from suing New GM for claims related to "ignition switch defects" insofar as such claims were based on liability that Old GM retained under the Sale Order. By its Motion, GM seeks to

> require the plaintiffs (collectively, the 'Plaintiffs') in the actions listed in Schedule 1 attached hereto ('Ignition Switch Actions') to comply with the Court's Sale Order and Injunction by directing Plaintiffs to (a) cease and desist from further prosecuting against New GM claims that are barred by the Sale Order and Injunction, (b) dismiss with prejudice those void claims because they were brought by the Plaintiffs in violation of the Sale Order and Injunction, and (c) show cause whether they have any claims against New GM not otherwise already barred by the Sale Order and Injunction.[5]

New GM contends that it did not assume potential product liability, breach of warranty, negligence, successor liability, or other liabilities that Old GM might have had with respect to vehicles sold to consumers before the asset sale to New GM.[6]

*3. The Ellliott Lawsuit*

Celestine and Lawrence Elliott ("the Elliotts") are joint owners of a 2006 Chevrolet Cobalt which they purchased new in 2006 from a now-defunct dealership in Washington, D.C. Berenice Summerville is the owner of a 2010 Chevrolet Cobalt that she purchased new in December 2009 from a Chevrolet dealership in Maryland. They each allege that New GM knew, and had a duty to disclose, that their cars contained dangerous ignition switch and fuel pump hazards that placed them at unreasonable risk of death or serious bodily injury. They allege that New GM's breaches of its duty to disclose these risks has caused them and putative class

---

[5] *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order*, 09-50026-reg Doc. No. 12620, April 21, 2009, ¶1, 5. In the accompanying Schedule 1 to its motion, New GM listed the Elliott lawsuit as one of the actions it wished the Bankruptcy Court to enjoin. While an accompanying Schedule 2 contained sample allegations from other lawsuits against New GM, no allegations from the Elliotts' pleadings were included with New GM's motion papers.
[6] Id. at ¶11.

5

members economic harm and forced them to undergo increased risk of death or personal injury. In addition, Ms. Summerville asserts claims based on an implied warranty of merchantability againt New GM on behalf of herself and a subclass of post-petition purchasers of new cars.

In their pleading, the Elliott Plaintiffs explicitly disavow any claims based on New GM's potential liability under successor, transferee, or derivative theories of liability:

> "General Motors LLC is a limited liability company formed under the laws of Delaware with its principal place of business in Detroit, Michigan. …Plaintiffs' claims and allegations against GM refer solely to this entity. In this First Amended Complaint, Plaintiffs are not making any claim against Old GM (General Motors Corporation) whatsoever, and Plaintiffs are not making any claim against New GM based on its having purchased assets from Old GM or based on its having continued the business or succeeded Old GM. Plaintiffs disavow any claim based on the design or sale of vehicles by Old GM, or based on any retained liability of Old GM. Plaintiffs seek relief from New GM solely for claims that have arisen after October 19, 2009, and solely based on actions and omissions of New GM." First Amended Complaint (Doc. 12782, Ex. D ¶15) (hereafter "FAC").

The Class Periods for each of the proposed Classes and Subclasses for which the Plaintiffs seek certification do not begin until October 19, 2009. See FAC ¶ 42(a)-(d). The FAC alleges eight causes of action on behalf of the Plaintiffs and putative class members:

1) for violations of the Racketeering Influenced Corrupt organizations Act, ("RICO") related to the concealment and coverup of risks that driving GM vehicles entailed for Plaintiffs and a nationwide class of pre- and post-petition purchasers;

2) for common law fraud under the common law of the several states based on New GM's failure to disclose risks of death or serious bodily injury on behalf of Plaintiffs and a nationwide class of pre-and post-petition purchasers;

3) for common law fraud under the common law of the several states based on New GM's failure to disclose risk of death or serious bodily injury on behalf of Ms. Summerville and a nationwide class of post-petition purchasers;

4) for negligent infliction of increased risk and economic loss under the common law of the District of Columbia, Florida, Maryland, Ohio, and New Jersey, on behalf of Plaintiffs and a subclass of consumers in those states;

5) for violations of the District of Columbia Consumer Protection Procedures Act, brought by Mr. and Mrs. Elliott as a representative and class action on behalf of residents of the District;

6

6) for violations of the Maryland Consumer Protection Act, on behalf of Ms. Summerville and a subclass of Maryland residents;

7) for breaches of the implied warranty of merchantability, on behalf of Ms. Summerville and a multi-state subclass of post-petition purchasers residing in the thirty-one jurisdictions that do not require privity between a manufacturer and consumer with respect to enforcement of such warranty; and

8) an omnibus count for joint liability alleging joint action and civil conspiracy.

Each of these causes of action alleges liability only for acts and omissions by New GM and, where relevant, Delphi Automotive PLLC, that were committed after October 19, 2014.

    *4.     The Bankruptcy Court Rulings*

On May 16, 2014, the Bankruptcy Court issued a scheduling order requiring that Plaintiffs in the various lawsuits against which New GM sought enforcement of the Sale Order enter into "voluntary stay stipulations" with New GM to stay their lawsuits pending disposition of New GM's Motion to Enforce or file a "No Stay Pleading" setting forth why they should not be directed to stay their Ignition Switch Action.[7]

On July 11, 2014, the Elliotts filed a No Stay Pleading and moved for dismissal on the ground that the Bankruptcy Court lacked subject matter jurisdiction over their claims. New GM opposed the motion on the ground that the Elliotts should have moved for leave of the Court to submit the jurisdictional motion and requested leave to submit papers in opposition should the Court decide to entertain the motion.[8]

On August 5, 2014, the Bankruptcy Court heard oral argument and issued an oral ruling

---

[7] *See Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect Thereto, and (III) Adversary Proceeding No. 14-01929*, 09-50026-reg Doc. No. 12697, May 16, 2014, ¶5.
    The Elliotts, who had been acting *pro se* until June 17, 2014, were granted leave at the July 2, 2014, hearing to file a No Stay Pleading by July 11, 2014. *See Order Staying and Restraining Lawrence and Celestine Elliott, and their Counsel, From Further Proceeding with Their Ignition Switch Action, Except as Expressly Set Fourth Herein*, 09-50026-reg Doc. No. 12763, July 8, 2014.
[8] *Response by General Motors LLC to No Stay Pleading Filed by the Elliott Plaintiffs*, 09-50026-reg Doc. No. 12782, July 21, 2014.

7

from the bench, which it memorialized in writing the next day.[9] The Court stated that the Elliotts' motion to dismiss for lack of subject matter jurisdiction was "frivolous," *id*. at 2, because bankruptcy courts have "arising in" jurisdiction to interpret and enforce their own orders, and therefore the Elliotts' contentions based on lack of "related to" jurisdiction were irrelevant. "'Related to' jurisdiction has nothing to do with the issues here." *Id*. at 4. The Court stated that it found "puzzling" the Elliotts' citations to Second Circuit authority regarding "related to" jurisdiction over third party claims between non-debtors. *Id*. n.12. The Court found that the Elliott Plaintiffs are "asserting claims with respect to vehicles manufactured before the 363 sale and…relying on the conduct of Old GM." *Id*. at 9.[10]

On August 25, the Elliott Plaintiffs filed a Motion to Alter or Amend the Courts' August 12 Order, and a request for a clarifying order, asserting that the Court's enforcement of the Sale Order against Plaintiffs violated their due process rights to notice and an opportunity to be heard and that the Court had improperly included Ms. Summerville's claims and non-ignition switch claims of all Plaintiffs that were not the subject of New GM's Motion to Enforce. The Bankruptcy Court denied these motions on November 10, 2014.[11]

## II.    STANDARD FOR APPEALABILITY

28 U.S.C. § 158(a)(3) provides district courts with discretionary appellate jurisdiction over interlocutory orders from bankruptcy courts. *See In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003). In exercising that discretion, courts in this District use the same statutory standard used

---

[9] *Decision with Respect to No Stay Pleading and Related Motion to Dismiss for Lack of Subject Matter Jurisdiction (Elliott Plaintiffs)*, 09-50026-reg Doc. No. 12815, August 6, 2014, ¶2, 4; ¶1, 7.
[10] In a footnote, the Bankruptcy Court acknowledged that Ms. Summerville, a post-petition purchaser of a new car, may be asserting claims not encompassed by the Sale Order but nevertheless declined to "put this additional plaintiff in a different category." *Id*. n. 24.
[11] *Endorsed Order Denying (I) Plaintiffs' Motion to Alter or Amend Amend this Court's August 12, 2014 Order Pursuant to FRBP Rules 9023, 9024, and 7052, and For a Clarifying Order and (II) Plaintiff's Motion for an Order of Abstention*, 09-50026-reg Doc. No. 12993, November 10, 2014.

by court of appeals to determine whether to hear interlocutory appeals from the district court. "Leave to appeal an interlocutory order from the bankruptcy court will be granted only where the standard of 28 U.S.C. § 1292(b) is satisfied. Thus, an appeal may lie but the appellant must first demonstrate that the order '[1] involves a controlling issue of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *In re Chateaugay Corp.*, 213 B.R. 633, 636 (S.D.N.Y. 1997).

### III. ARGUMENT

*1. The Bankruptcy Court's Assertion of Subject Matter Jurisdiction Involves a Controlling Question of Law*

To be "controlling" under 1292(b), "the 'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record….[and 'controlling' in the sense that reversal of the bankruptcy court would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005). *See also Picard v. Estate of Estate of Madoff*, 464 B.R. 578 (S.D.N.Y 2011).

Courts regularly find challenges to a bankruptcy court's subject matter jurisdiction to issue an injunction to satisfy the "controlling" requirement because reversal of the bankruptcy court would terminate proceedings before it. "Courts in this Circuit and elsewhere have allowed interlocutory appeals of preliminary injunctions in cases where defendants have interposed jurisdictional challenges to the issuing court's authority." *In re Chateaugay Corp.*, 213 B.R. at 635-36 (S.D.N.Y. 1997) (citations omitted); *see, e.g., In re Fairfield Sentry Ltd.*, 458 B.R. 665 (SDNY 2011); *Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.),* 437 B.R. 88 (SDNY 2010); *North Fork Bank v. Abelson*, 207 B.R. 382 (EDNY 1997).

9

The Elliott Plaintiffs' jurisdictional challenge involves a pure issue of law whether the claims they assert implicate liability ever held by Old GM, a determination requiring review of the Plaintiffs' complaint and an application of relevant law. "Questions about the Bankruptcy Court's subject matter jurisdiction…are legal questions that are reviewed *de novo*." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 674 (S.D.N.Y. 2011).

2. *There Is Substantial Ground for Difference of Opinion Regarding the Bankruptcy Court's Assertion of Jurisdiction Over Third Party Claims Asserted Against a Non-Debtor*

This factor is satisfied where "genuine doubt [exists] as to the correct applicable legal standard relied on in the order." *Adelphia,* 333 B.R. at 658–59.

The errors of the Bankruptcy Court are categorical, and manifest on the face of its rulings. The Bankruptcy Court based its jurisdictional rulings exclusively on its unremarkable power, shared by all courts, to interpret and enforce its own orders. But the jurisdictional issue before it was whether it had jurisdiction to enjoin a third party lawsuit—the *Elliott* lawsuit— between nonparties to Old GM's bankruptcy. The Bankruptcy Court's authority to interpret and enforce its own orders cannot establish subject matter jurisdiction over a dispute between third party non-debtors. The binding Second Circuit authority is clear and unambiguous that a Bankruptcy Court has jurisdiction over such a lawsuit only if the litigation is "related to" assets of the debtor.

28 U.S.C. § 1334 provides for original jurisdiction in the district courts for "all cases under title 11" and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." The technical jurisdiction issue presented is whether the Plaintiffs' claims against New GM "relate to" any proceeding properly before the bankruptcy court. Their claims themselves, based on New GM's failure to disclose risks to them, assuredly do not "arise in" the

10

bankruptcy proceedings that Old GM initiated, as they depend on state common law, state consumer protection litigation, and federal RICO law.

Like most circuits, the Second Circuit has adopted the Third Circuit's *Pacor* test[12] for determining a bankruptcy court's jurisdiction over a lawsuit between third parties to the bankruptcy case. *See Travelers Co. v. Bailey*, 557 U.S. at 137, 146 (2009). The Court of Appeals has repeatedly warned lower courts to exercise particular care when healthy non-debtors seek to avail themselves of the protective power of the bankruptcy courts. It has made clear that a bankruptcy court's "related to" jurisdiction is limited to power over litigants in proceedings *only* when the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *See Manville III*, 517 F.3d at 66; *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy [sufficient to confer bankruptcy jurisdiction] is whether its outcome might have any conceivable effect on the bankrupt estate." (*internal quotation marks omitted*); *In re Quigley Co., Inc.*, 676 F.3d 45 (2d Cir. 2012) ("'related to' jurisdiction to enjoin a third party dispute exists where the subject of the third party dispute is property of the estate, or the dispute would have an effect on the estate.") (*internal quotation marks omitted*); *In re Grumman*, 445 B.R. 243 (Bankr. S.D.N.Y. 2011) ("§ 362(f) authorizes the Court to absolve the buyer of *in personam* liability for pre-confirmation claims in a chapter 11 case. The rule does not extend to potential future tort claims of the type now asserted by the Fredericos, and the Chrysler sale order did not grant the buyer this relief.").

Contrary to the Bankruptcy Court's analysis, the ancillary jurisdiction courts possess to enforce their own orders "is itself limited by the jurisdictional limits of the order sought to be

---

12 *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

11

enforced." *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 916 (Bankr. W.D. Tex. 1995) (*citations omitted*).

The Court of Appeals has recently summarized the Bankruptcy Court's jurisdiction to enjoin claims against a non-debtor third party such as New GM as follows:

> [A] bankruptcy court has jurisdiction over any suit that "might have any 'conceivable effect' on the bankruptcy estate." Section 105(a) of the Bankruptcy Code empowers a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Thus, we have held that a court has the power pursuant to section 105(a) to enjoin claims against a non-debtor third party where those claims are derivative, or otherwise "pose[] the specter of direct impact on the res of the bankrupt estate." The question is, essentially, "whether the direct result of a suit against a third party will be the removal of assets from the bankruptcy estate."

*Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 211 (2d Cir. 2014) (*citations omitted*). Bankruptcy Courts are not able to "write their own jurisdictional ticket," and, by the retention of exclusive jurisdiction to interpret and enforce their own orders, to bootstrap their reach to matters that have nothing to do with the bankruptcy case.[13] *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994).

Courts have held that lawsuits, even those alleging successor liability claims, against a non-debtor purchaser of assets in bankruptcy proceedings may not be enjoined if the claims arose after the bankruptcy proceedings concluded. *See In re Grumman*, *supra*; *Ninth Ave. Remedial Group v. Allis-Chalmers Corp*, 195 B.R. 716, 732 (N.D. Ind. 1996) (sales free and clear under the Bankruptcy Code cannot extinguish successor liability claims that arose after the bankruptcy

---

[13] Even the designation of this proceeding as "core" does not affect the subject matter jurisdiction analysis:
> We need not resolve whether this is a "core" proceeding for subject matter jurisdictional purposes because "[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction." *In re Marcus Hook*, 943 F.2d at 266. Under 28 U.S.C. § 157, a bankruptcy court might have jurisdiction over a proceeding but still might not be able to enter final judgments and orders. *Id.* Non-core "related to" jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction, so we need only determine whether a matter is at least "related to" the bankruptcy.

*In re Resorts Int'l*, 372 F.3d at 157.

proceedings had concluded). *Where no such successor liability claims are asserted, and instead, as here, plaintiffs assert claims based exclusively on breaches of non-derivative, independent duties that the non-debtor owed to plaintiffs, there is no doubt that bankruptcy courts have no jurisdiction to enjoin parties from asserting such claims.* See Manville III, supra. See generally *Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC),* 740 F.3d 81, 88 (2d Cir. 2014) (explaining the difference in the extensive asbestos litigation between claims deriving from the debtor's original liability to asbestos victims, over which the bankruptcy court may have jurisdiction, and non-derivative, direct action claims against the debtor's insurer for breaches of its independent duties to plaintiffs, over which the bankruptcy court has no jurisdiction).

Plaintiffs are aware of no authority in any jurisdiction to support the Bankruptcy Court's assertion of jurisdiction to enjoin their third party claims against non-debtor New GM based exclusively on breaches of its independent, non-derivative duties to them.

       3.     *Materially Advance Ultimate Termination of Litigation*

The third prong requires the movant to show a possibility that an appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This court has reasoned in a similar appeal that, "as the jurisdictional matter may dispose of the case, an immediate appeal may materially advance the ultimate resolution of the litigation." *In re Chateaugay Corp.*, 213 B.R. at 636 (S.D.N.Y. 1997). Here a ruling that the Bankruptcy Court lacks jurisdiction over Plaintiffs' claims would terminate the litigation before the Bankruptcy Court and clarify that the claims of Plaintiffs—and millions of putative class members—will proceed regardless of the disposition of other issues properly before the Bankruptcy Court involving distinct claims asserted by other parties.

**IV. CONCLUSION**

13

For all the foregoing reasons, the District Court should grant leave to appeal the Bankruptcy Court's August 12, 2014 Order.

DATED:      November 23, 2014            Respectfully submitted,

/s/_____
Gary Peller (phv)
600 New Jersey Avenue NW
Washington, DC 20001
(202) 662-9122
peller@law.georgetown.edu
Counsel for Celestine Elliott, Lawrence Elliott, and Berenice Summerville

14