KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
|     f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------x

### NOTICE OF FILING OF TWELFTH SUPPLEMENT TO SCHEDULE "2" TO THE MOTION OF GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION

**PLEASE TAKE NOTICE** that on December 1, 2014, General Motors LLC filed the

attached *Twelfth Supplement to Schedule "2" to the Motion of General Motors LLC Pursuant to*

*11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* with

the United States Bankruptcy Court for the Southern District of New York.

Dated: New York, New York
       December 1, 2014

Respectfully submitted,

/s/ Scott I. Davidson
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

TWELFTH SUPPLEMENT[1] TO SCHEDULE "2"

SAMPLE ALLEGATIONS/CAUSES OF ACTION IN IGNITION SWITCH
COMPLAINTS FILED AGAINST NEW GM NOT CONTAINED IN THE
PREVIOUS SUPPLEMENTS TO SCHEDULE "2" TO MOTION TO ENFORCE[2]

| Action | Allegations |
|---|---|
| State of Arizona[3] | "The term 'GM-branded vehicles' refers to vehicles manufactured and sold by both New GM, and its predecessor, 'Old GM.'" Compl., ¶ 5 n.1. <br><br> "Consequently, New GM intentionally enticed Arizona consumers to buy or lease new or used GM-branded vehicles that have now diminished in value as the truth about the New GM brand has come out and a stigma has attached to all GM branded vehicles." Compl., ¶ 10. <br><br> "Given the continuity of engineers, corporate counsel, and other key personnel from Old GM to New GM, New GM knew and was fully aware of the now infamous ignition switch defects (and many other serious defects in numerous models of GM-branded vehicles) *from the very date of its inception on July 11, 2009*. New GM was not born innocent." Compl., ¶ 19 (emphasis in original). <br><br> "Ever since its inception, New GM possessed vastly superior (if not exclusive) knowledge and information to that of consumers about the design and function of GM-branded vehicles and the existence of the defects in those vehicles." Compl., ¶ 81. <br><br> "In or around 2007-08, Old GM reduced the TREAD Reporting team from eight to three employees, and pared down the monthly data mining process." Compl., ¶ 93. <br><br> "It appears that the defects were concealed pursuant to a company policy that New GM inherited from Old GM." Compl., ¶ 102. <br><br> "[A training] document consists of slides from a 2008 Technical Learning Symposium for 'designing engineers,' 'company vehicle drivers,' and other employees at Old GM." Compl., ¶ 102. |

---

[1]  This schedule supplements the previous supplements and the original Schedule "2" previously filed with the Court in connection with the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*.

[2]  Due to space limitations, this chart contains only a ***sample*** of statements, allegations and/or causes of action contained in the complaint referenced herein.  This chart does ***not*** contain ***all*** statements and/or allegations that New GM believes violates the provisions of the Court's Sale Order and Injunction and the MSPA.

[3]  In addition to allegations regarding a defective ignition switch, the complaint in the State of Arizona Action also references many other alleged defects.  Accordingly, New GM is also filing simultaneously herewith supplemental schedules in connection with its Monetary Relief Motion to Enforce to address those allegations.

| **Action** | **Allegations** |
|---|---|
| | "On information and belief, a vast majority of employees who participated in this webinar presentation continued on in their same positions at New GM after July 10, 2009." Compl., ¶ 102. |
| | "Over the first ten months of 2014, New GM announced at least 60 recalls for more than 60 separate defects affecting over 27 million GM-branded vehicles sold in the United States from model years 1997-2014." Compl., ¶ 115. |
| | "The available evidence shows that, from its inception in 2009, New GM knew about an ever-growing list of serious safety defects in millions of GM-branded vehicles, but concealed them from consumers and regulators in order to cut costs, boost sales, and avoid the negative publicity of recalls." Compl., ¶ 117. |
| | "New GM inherited from Old GM a company that valued cost-cutting over safety, actively discouraged its personnel from taking a "hard line" on safety issues, avoided using 'hot' words like 'stall' that might attract the attention of NHTSA and suggest that a recall was required, and trained its employees to not use words such as 'defect' or 'problem' that might flag the existence of a safety issue. New GM did nothing to change these practices." Compl., ¶ 119. |
| | "Alarmingly, New GM knew of the deadly ignition switch defects and their dangerous consequences from the date of its inception on July 11, 2009, but concealed its knowledge from consumers and regulators." Compl., ¶ 132. |
| | "From its creation, New GM, which retained the vast majority of Old GM's senior level executives and engineers, knew that Old GM had manufactured and sold millions of vehicles afflicted with the ignition switch defects." Compl., ¶ 135. |
| | "The knowledge of Old GM is important and relevant because it is ***directly attributable*** to New GM." Compl., ¶ 136 (emphasis in original). |
| | "In part, New GM's knowledge of the ignition switch defects arises from the fact that key personnel with knowledge of the defects were employed by New GM when Old GM ceased to exist. Moreover, many of these employees held managerial and decision making authority in Old GM, and accepted similar positions with New GM." Compl., ¶ 137. |
| | "Other Old GM employees who were retained and given decision making authority in New GM include [listing employees and their title]." Compl., ¶ 138. |
| | "Indeed, on or around the day of its formation as an entity, New GM acquired notice and full knowledge of the facts set forth below." Compl., ¶ 139. |

| **Action** | **Allegations** |
|---|---|
| | Paragraphs 92, 93, 99, 102, 137-179, 253(a)-(c), 256-259, and 288-310 of the Complaint describe events that took place prior to the closing of the 363 Sale. |
| | The Complaint is based, at least in part, on vehicles manufactured and sold by Old GM. |
| | "New GM was aware of the ignition switch defect in these vehicles from the date of its inception on July 10, 2009, as it acquired on that date all of the knowledge possessed by Old GM given the continuity in personnel, databases, and operations from Old GM to New GM." Compl., ¶ 253. |
| | "Further, New GM acquired knowledge of the defects in these vehicles on the date of its inception on July 11, 2009. On that date, it acquired knowledge of the following facts: [listing numerous facts that occurred prior to the closing of the 363 Sale]." Compl., ¶ 288. |
| | "From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting many models and years of GM-branded vehicles, both because of the knowledge of Old GM personnel who remained at New GM, and continuous reports, investigations, and notifications from regulatory authorities." Compl., ¶ 499. |