

PLEASE PRESS FIRMLY

PLEASE PRESS FIRMLY

02 1P
0001916639 NOV 08 2014
MAILED FROM ZIP CODE 16263

UNITED STATES
PITNEY BOWES
$ 008.65⁰

TRY FLAT RATE
PRIORITY MAIL PRE-PAID!
• Built-in Tracking
• Postage rate locked forever
• No shipping label required
• Free Package Pickup
uspsstore.stamps.com/prepaid

Please Recycle

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F-P-PP © U.S. Postal Service; June 2012; All rights reserved.

NOV 1 3 2014

From:/Expéditeur:
KDM Law Firm PLLC
106 S. Armenia Ave
Tampa Fl 33609

To:/Destinataire:
General Motors LLC
300 Renaissance Center
Detroit MI 48265

Country of Destination:/Pays de destination:

PRIORITY
MAIL

UNITED STATES POSTAL SERVICE

Flat Rate Mailing Envelope

Visit us at usps.com

United States Postal Service®
SIGNATURE CONFIRMATION™

1590 0001 2032 0605

## Supreme Court of Pennsylvania

| **Court of Common Pleas** **Civil Cover Sheet** ERIE **County** | *For Prothonotary Use Only:* Docket No: 13108-2014 |
|---|---|

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

<table>
<tr><td colspan="2"><strong>Commencement of Action:</strong><br>☒ Complaint   ☐ Writ of Summons   ☐ Petition<br>☐ Transfer from Another Jurisdiction   ☐ Declaration of Taking</td></tr>
<tr><td>Lead Plaintiff's Name:<br>Danny E. Brochey</td><td>Lead Defendant's Name:<br>General Motors LLC</td></tr>
<tr><td>Are money damages requested? ☒ Yes   ☐ No</td><td>Dollar Amount Requested:<br>(check one)   ☒ within arbitration limits<br>☐ outside arbitration limits</td></tr>
<tr><td>Is this a <em>Class Action Suit?</em>   ☐ Yes  ☒ No</td><td>Is this an <em>MDJ Appeal?</em>   ☐ Yes  ☒ No</td></tr>
</table>

Name of Plaintiff/Appellant's Attorney: Kurt D. Mitchell PA License No.: 205917 106 S. Armenia Ave Tampa FL 33609

    ☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE.* If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
☐ Intentional
☐ Malicious Prosecution
☐ Motor Vehicle
☐ Nuisance
☐ Premises Liability
☐ Product Liability *(does not include mass tort)*
☐ Slander/Libel/ Defamation
☒ Other:
   Unfair Trades Practices and
   Consumer Protection law

**MASS TORT**
☐ Asbestos
☐ Tobacco
☐ Toxic Tort - DES
☐ Toxic Tort - Implant
☐ Toxic Waste
☐ Other:

**PROFESSIONAL LIABLITY**
☐ Dental
☐ Legal
☐ Medical
☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
☐ Buyer Plaintiff
☐ Debt Collection: Credit Card
☐ Debt Collection: Other

☐ Employment Dispute:
   Discrimination
☐ Employment Dispute: Other

☐ Other:

**REAL PROPERTY**
☐ Ejectment
☐ Eminent Domain/Condemnation
☐ Ground Rent
☐ Landlord/Tenant Dispute
☐ Mortgage Foreclosure: Residential
☐ Mortgage Foreclosure: Commercial
☐ Partition
☐ Quiet Title
☐ Other:

**CIVIL APPEALS**
Administrative Agencies
☐ Board of Assessment
☐ Board of Elections
☐ Dept. of Transportation
☐ Statutory Appeal: Other

☐ Zoning Board
☐ Other:

**MISCELLANEOUS**
☐ Common Law/Statutory Arbitration
☐ Declaratory Judgment
☐ Mandamus
☐ Non-Domestic Relations
   Restraining Order
☐ Quo Warranto
☐ Replevin
☐ Other:

*Updated 1/1/2011*

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY PENNSYLVANIA

Danny E. Brochey and his Wife  ) Case No. 13108-2014

Cheryl A. Brochey,            ) CIVIL ACTION

Daniel J. Matteo and his wife  )

Starleen E. Matteo            )

       Plaintiffs,          )

   vs.                       )

General Motors LLC

      Defendant.

---

### NOTICE TO DEFEND–CIVIL

### TO: GENERAL MOTORS LLC
###    300 RENAISSANCE CENTER
###    DETROIT MICHIGAN 48265

You have been sued in Court. If you wish to defend against the claim set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
ERIE COUNTY BAR ASSOCIATION
PO BOX 1792 ERIE, PA 16507
814-459-4411

1

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY PENNSYLVANIA

| | |
|---|---|
| Danny E Brochey and his wife | ) Case No.: |
| Cheryl A. Brochey, | ) CIVIL ACTION |
| Daniel J. Matteo and his wife | ) COMPLAINT AND JURY DEMAND |
| Starleen E. Matteo | ) |
| Plaintiffs, | ) |
| vs. | ) |
| General Motors LLC | |
| Defendant. | |

## INTRODUCTION

The Plaintiff(s), Danny E Brochey and Cheryl A Brochey and Daniel J. Matteo and Starleen E. Matteo (Hereinafter "PLAINTIFF or PLAINTIFFS"), through the undersigned counsel, files this complaint and sues defendant General Motors LLC (Hereinafter MANUFACTURER or DEFENDANT) for violations of the Unfair Trade Practices and Consumer Protection Law 73 P.S. 201-1 et seq. for defects associated with a 2011 Chevrolet Camaro VIN: 2G1FS1EW3B9160320 and a 2009 Chevrolet Impala VIN: 2G1WC57M991295813 (hereinafter "VEHICLE") warranted and placed into the stream of commerce by the Manufacturer.

1

## JURISDICTION AND PARTIES

1. Plaintiffs Danny and Cheryl Brochey are adult natural persons and are residents of the city of Erie, Erie County, Pennsylvania.

a. Plaintiffs Daniel and Starleen Matteo are adult natural persons and are residents of the city of Erie, Erie County, Pennsylvania

2. Upon information and belief MANUFACTURER is a Foreign Corporation with its principle place of business located at 300 Renaissance Center Detroit Michigan 48265 is authorized to do business in the State of Pennsylvania and, at all times relevant hereto, and was engaged in the business of selling and servicing automobiles in Erie County, Pennsylvania.

3. The transaction or occurrence giving rise to the causes of action alleged in this complaint occurred in Erie County, Pennsylvania.

## FACTS COMMON TO PLAINTIFFS DANNY AND CHERYL BROCHEY

4. On or about March 7 2014 PLAINTIFFS purchased the VEHICLE with an agreed upon price of $32,682.96. (See EX. A).

a. Along with the purchase of the VEHICLE, Plaintiff received express written warranties and implied warranties from the MANUFACTURER. (See EX. B).

i. Specifically, PLAINTIFFS received the

2

MANUFACTURER'S 3-YEAR 36,000 MILE BUMPER TO BUMPER WRITTEN
WARRANTY, warranting that the vehicle would be free from defects
in materials or workmanship. Along with various other express
written warranties of varying lengths of time and mileage.

ii. Further, pursuant to Pennsylvania Statutes
PLAINTIFFS received an implied warranty that the product would
be fit for its ordinary purpose.

5. The Plaintiffs bring this action for monetary damages,
because of the ignition switch of the vehicle is dangerous and
allows the vehicle to be turned off inadvertently.

6. Commencing during or around the 2010 model year,
Manufacturer began manufacturing, marketing, distributing and
selling the 5th Generation Camaro, all of which are equipped with
defective ignition switch. The Vehicles' ignition switches are
uniformly and inherently defective in materials, design or
workmanship, and exhibit the ability to be turned off
inadvertently. In the alternative the ignition condition is a
condition that the Manufacturer was aware of and a fact the
Plaintiffs should have been made aware prior to their purchase.

7. The ignition is a safety-related component if the
ignition is turned off during operation it can result in loss of
steering control, braking and air bags.

8. On or about June 20, 2014 the Defendant recalled the
Plaintiffs vehicle however, the Defendant has refused to take

3

corrective action at this time. Instead requiring that the
Plaintiffs wait for some unknown period of time before the
safety related component can be corrected.

9. The above referenced severe defects have shaken the
PLAINTIFFS faith and confidence in the VEHICLE irreparably.

### FACTS COMMON TO DANIEL AND STARLEEN MATTEO

10. On or about March 30 2011 PLAINTIFFS purchased the
VEHICLE with an agreed upon price of $21,705.60. (See EX. A).

   a. Along with the purchase of the VEHICLE, Plaintiff
received express written warranties and implied warranties from
the MANUFACTURER.

      i. Specifically, PLAINTIFFS received the
MANUFACTURER'S 3-YEAR 36,000 MILE BUMPER TO BUMPER WRITTEN
WARRANTY, warranting that the vehicle would be free from defects
in materials or workmanship. Along with various other express
written warranties of varying lengths of time and mileage.

      ii. Further, pursuant to Pennsylvania Statutes
PLAINTIFFS received an implied warranty that the product would
be fit for its ordinary purpose.

11. The Plaintiffs bring this action for monetary damages,
because of the ignition switch of the vehicle is dangerous and
allows the vehicle to be turned off inadvertently.

12. The 2009 model year Impala has been Manufactured and equipped with defective ignition switch. The Vehicles' ignition switches are uniformly and inherently defective in materials, design or workmanship, and exhibit the ability to be turned off inadvertently. In the alternative the ignition condition is a condition that the Manufacturer was aware of and a fact the Plaintiffs should have been made aware prior to their purchase.

13. The ignition is a safety-related component if the ignition is turned off during operation it can result in loss of steering control, braking and air bags.

14. On or about June 23, 2014 the Defendant recalled the Plaintiffs vehicle however, the Defendant still has not repaired the vehicle and it is unknown when the when or if the dangerous condition will be corrected.

15. The above referenced severe defects have shaken the PLAINTIFFS faith and confidence in the VEHICLE irreparably.

### COUNT I

## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### 73 P.S. 201-1 et seq.

#### PLAINTIFFS DANNY AND CHERYL BROCHEY

16. Plaintiffs Danny and Cheryl Brochey hereby sue Manufacturer for violation of the Pennsylvania Unfair Practices and Consumer Protection Law.

17. Plaintiff incorporates paragraphs 1-9 as though fully restated and realleged.

18. Plaintiffs are persons who purchased a good or a service primarily for personal, household or family uses such as transportation to and from work, household chores and for recreational trips.

19. Manufacturer is a person that recklessly, wantonly and willfully violated provisions of the Unfair Trade Practices and Consumer Protection Law by:

A. Failing to comply with the terms of a written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services was made. Specifically:

i. The Defect described herein is an extremely dangerous latent defect in materials or workmanship with the Plaintiffs' vehicle that the Defendant had been aware and yet chooses to ignore out of greed.

6

ii. Moreover, the Manufacturer provided an express warranty that the vehicle would be free from defects in materials and workmanship; despite knowing that the Plaintiff vehicle contained a latent defect.

B.   The Defendant was engaged in unfair or deceptive practices while engaged in commerce in the State of Plaintiff by placing into the stream of commerce the Plaintiffs' vehicle containing latent defects in materials or workmanship and not fit for its ordinary purpose of safe reliable transportation. Specifically:

i. Manufacturer knew the vehicle was flawed containing a safety defect.

ii. The Manufacturer marketed, sold and place the Plaintiffs' vehicle into the stream of commerce with latent defects in materials or workmanship and not fit for its ordinary purpose of safe reliable transportation despite knowing of the latent defects solely because of corporate greed and a desire to save money on producing the vehicle.

iii. The defects were actively concealed from the Plaintiffs and the Plaintiffs were never given a meaningful opportunity to negotiate in good faith because of the unfair and deceptive trade practices employed by the Manufacturer.

C. The Defendant violate 73 PS 201-2 (4)(viii) by

representing that the vehicle was of a particular standard,

quality or grade when in fact the vehicle was not.

Specifically:

i. The manufacturer represented the vehicle to

be safe and fit for its ordinary purpose of transportation when

in fact the vehicle was manufactured with a latent defect to the

ignition switch which renders the vehicle unsafe, dangerous and

not fit for its ordinary purpose.

D. Finally, the Defendant has committed an unfair and

deceptive act pursuant to 73 P.S. 201.2(4)(xxi) by:

i. Placing the Plaintiffs' vehicle into the

stream of commerce without informing the public/Plaintiffs that

the vehicle exhibited the severe and dangerous defect thereby

depriving Plaintiff of the opportunity to make an informed

vehicle purchase.

ii. The above referenced misrepresentations,

omissions and active concealment concerning the latent dangerous

defect was material to the transaction. The false

representations and material omissions were made with the intent

that Plaintiffs rely upon them.

iii. Plaintiff relied upon the

misrepresentations, omissions that the vehicle was safe and

without latent defects in materials in the purchase of the

Plaintiffs' vehicle. Moreover, Plaintiff changed their position by undertaking a large financial purchase and contracting for the Plaintiffs' vehicle they otherwise would not have done.

iv. Because of this unfair and deceptive practice the Manufacturer has been unjustly enriched.

v. Despite the clear evidence of the defect the Manufacturer has refused to stand behind its product and the warranties it provided. Instead the Manufacturer have forced Plaintiff to file suit to obtain relief that otherwise should have been provided by the Manufacturer willingly in light of the substantial nonconformities the Plaintiffs' vehicle contains and the laws of Pennsylvania.

a. Such behavior can only be described as reckless, wanton and willful.

20. Plaintiffs have suffered actual and ascertainable damages as result of the Manufacturer's actions in recklessly, willfully and wantonly violating the act. Specifically:

A. Plaintiff undertook the purchase and expended large sums of money on a vehicle that contains a dangerous defect.

B. Further, due to the nonconformities the residual value of the Plaintiffs vehicle has been substantially impaired.

C. Finally, the use and safety of the Plaintiffs vehicle has been substantially impaired.

WHEREFORE, Plaintiffs prays for judgment against Manufacturer:

A. In an amount not to exceed $74,999.00 exclusive of costs and interest for damages and actual attorneys' fees; pursuant to 73 P.S. 201-9.2(a).

B. Such other relief this Court deems appropriate.

## COUNT II

### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### 73 P.S. 201-1 et seq.

### PLAINTIFFS DANIEL AND STARLEEN MATTEO

21. Plaintiffs Daniel and Starleen Matteo hereby sue Manufacturer for violation of the Pennsylvania Unfair Practices and Consumer Protection Law.

22. Plaintiff incorporates paragraphs 1-3 and 10-15 as though fully restated and realleged.

23. Plaintiffs are persons who purchased a good or a service primarily for personal, household or family uses such as transportation to and from work, household chores and for recreational trips.

24. Manufacturer is a person that recklessly, wantonly and willfully violated provisions of the Unfair Trade Practices and Consumer Protection Law by:

A. Failing to comply with the terms of a written
guarantee or warranty given to the buyer at, prior to or after a
contract for the purchase of goods or services was made.
Specifically:

i. The Defect described herein is an extremely
dangerous latent defect in materials or workmanship with the
Plaintiffs' vehicle that the Defendant had been aware and yet
chooses to ignore out of greed.

ii. Moreover, the Manufacturer provided an
express warranty that the vehicle would be free from defects in
materials and workmanship; despite knowing that the Plaintiff
vehicle contained a latent defect.

B.  The Defendant was engaged in unfair or deceptive
practices while engaged in commerce in the State of Plaintiff by
placing into the stream of commerce the Plaintiffs' vehicle
containing latent defects in materials or workmanship and not
fit for its ordinary purpose of safe reliable transportation.
Specifically:

i. Manufacturer knew the vehicle was flawed
containing a safety defect.

ii. The Manufacturer marketed, sold and place the
Plaintiffs' vehicle into the stream of commerce with latent
defects in materials or workmanship and not fit for its ordinary
purpose of safe reliable transportation despite knowing of the

11

latent defects solely because of corporate greed and a desire to save money on producing the vehicle.

iii. The defects were actively concealed from the Plaintiffs and the Plaintiffs were never given a meaningful opportunity to negotiate in good faith because of the unfair and deceptive trade practices employed by the Manufacturer.

C. The Defendant violate 73 PS 201-2 (4)(viii) by representing that the vehicle was of a particular standard, quality or grade when in fact the vehicle was not.

Specifically:

i.   The manufacturer represented the vehicle to be safe and fit for its ordinary purpose of transportation when in fact the vehicle was manufactured with a latent defect to the ignition switch which renders the vehicle unsafe, dangerous and not fit for its ordinary purpose.

D. Finally, the Defendant has committed an unfair and deceptive act pursuant to 73 P.S. 201.2(4)(xxi) by:

i. Placing the Plaintiffs' vehicle into the stream of commerce without informing the public/Plaintiffs that the vehicle exhibited the severe and dangerous defect thereby depriving Plaintiff of the opportunity to make an informed vehicle purchase.

ii. The above referenced misrepresentations, omissions and active concealment concerning the latent dangerous

12

defect was material to the transaction. The false
representations and material omissions were made with the intent
that Plaintiffs rely upon them.

iii. Plaintiff relied upon the
misrepresentations, omissions that the vehicle was safe and
without latent defects in materials in the purchase of the
Plaintiffs' vehicle. Moreover, Plaintiff changed their position
by undertaking a large financial purchase and contracting for
the Plaintiffs' vehicle they otherwise would not have done.

iv. Because of this unfair and deceptive practice
the Manufacturer has been unjustly enriched.

v. Despite the clear evidence of the defect the
Manufacturer has refused to stand behind its product and the
warranties it provided. Instead the Manufacturer have forced
Plaintiff to file suit to obtain relief that otherwise should
have been provided by the Manufacturer willingly in light of the
substantial nonconformities the Plaintiffs' vehicle contains and
the laws of Pennsylvania.

a. Such behavior can only be described as
reckless, wanton and willful.

20. Plaintiffs have suffered actual and ascertainable
damages as result of the Manufacturer's actions in recklessly,
willfully and wantonly violating the act. Specifically:

13

A. Plaintiff undertook the purchase and expended large sums of money on a vehicle that contains a dangerous defect.

B. Further, due to the nonconformities the residual value of the Plaintiffs vehicle has been substantially impaired.

C. Finally, the use and safety of the Plaintiffs vehicle has been substantially impaired.

WHEREFORE, Plaintiffs prays for judgment against Manufacturer:

A. In an amount not to exceed $74,999.00 exclusive of costs and interest for damages and actual attorneys' fees; pursuant to 73 P.S. 201-9.2(a).

B. Such other relief this Court deems appropriate.

### JURY DEMAND

PLAINTIFFS hereby demands trial by jury on all counts so triable.

KURT D. MITCHELL J.D.
PA. I.D. No.: 205917
KDM Law Firm PLLC
106 S. Armenia Ave
Tampa FL 33609
Attorney for Plaintiffs

# EXHIBIT A

**PENNSYLVANIA**
**MOTOR VEHICLE INSTALLMENT SALE CONTRACT.**      Date: _____                                    **SIMPLE INTEREST**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ _____ |
|---|---|---|---|---|
| % | $ | $ | $ | $ |

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| $ | | Monthly, beginning |
| $ | | |

Filing Fees: $

Security: You are giving a security interest in the motor vehicle being purchased.

Prepayment: If you pay off early, you will not have to pay a penalty.

Filing Fees: $

Late Charge: If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.                                                                                                   a means estimate

In this Contract we are the SELLER. _____
Name _____ Address _____ Zip Code _____

You are the BUYER(S). _____
Name(s) _____ Address(es) _____ Zip Code(s) _____

IF YOU DO NOT MEET YOUR CONTRACT OBLIGATIONS, YOU MAY LOSE THE MOTOR VEHICLE AND PROPERTY THAT YOU BOUGHT WITH THIS CONTRACT. AND/OR MONEY ON DEPOSIT WITH THE ASSIGNEE.

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee.

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

TRADE-IN:
You have traded in the following vehicle: _____
Year and Make _____ Description _____

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the Itemization of Amount Financed as the "Lien Payoff."

PROPERTY INSURANCE: You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

CREDIT INSURANCE IS NOT REQUIRED: Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

| Itemization of Amount Financed |
|---|
| Cash Price $ |
| Cash Downpayment $ |
| Trade-In Value of Trade-In $ |
| Lien Payoff to : $ |
| Unpaid Cash Price Balance $ |

By signing, you select Single Credit Life Insurance. What is your age? _____ Years which costs $ _____

By signing, you select Single Credit Accident & Health Insurance, which costs $ _____ What is your age? _____ Years

Signature of Buyer to be insured for Single Credit Life Insurance

Signature of Buyer to be insured for Single Credit Accident & Health Insurance

By signing, you both select Joint Credit Life Insurance, which costs $ _____ What are your ages?

By signing, you both select Joint Credit Accident & Health Insurance, which costs $ _____ What are your ages? Percentage to be insured _____ %

1. _____

1. _____

2. _____
Signatures of both Buyers to be insured for Joint Credit Life Insurance

2. _____
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

Insurer: _____

VEHICLE: You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| | | | | | | |

Equipped ____ A.T. ____ P.S. ____ AM-FM Stereo ____ 5 Spd   Other _____
with ____ A.C. ____ P.W. ____ AM-FM Tape ____ Vinyl Top _____

Paid to Others on Your Behalf (We may retain a portion of amounts marked):

| To Credit Insurance Company $ |
| To Public Officials for: |
| License, Tags and Registration $ |
| Lien Fee $ |
| To _____ $ |
| To _____ $ |
| To _____ $ |
| To _____ $ |

Amount Financed $

Finance Charge $

Total of Payments (Time Balance) $

ASSIGNEE: We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

Payment Schedule - You agree to pay to us the Amount Financed plus interest in

together with all Co-Owner(s) and Buyer(s). to perform all agreements in the Security Agreement and all other parts of this Contract except the ... and ... the ... and ... the ... will be due on that same part of each month following.

TERMS: The terms shown in the boxes above are part of this Contract.

PROMISE TO PAY: You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-in, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

SELLER _____

By _____
                                          Date

SECURITY AGREEMENT: To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle ... all parts (called "accessories") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee or ... Assignee may do this without any prior notice to you.

ADDITIONAL TERMS AND CONDITIONS: THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

BUYER _____
                                          Date

BUYER _____
                                          Date

CO-SIGNER. YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.

CO-SIGNER'S AGREEMENT: You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

| Co-Signer's Signature | Address | Date |
|---|---|---|
| | | |
| Co-Signer's Signature | Address | Date |

CO-OWNER'S SECURITY AGREEMENT: You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a Security Interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

| Co-Owner's Signature | Address | Date |
|---|---|---|

BUYER, CO-SIGNER AND CO-OWNER, AS APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.

| BUYER | BUYER | CO-SIGNER | CO-SIGNER OR CO-OWNER |
|---|---|---|---|

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

b. You take the Vehicle outside the United States or Canada without our written consent; or ... you ... insolvency proceedings ... exposes you, or

No.

**MV-4ST (8-12)**

| | | | | I. TAX/FEES | 1ST ASSIGNMENT | 2ND ASSIGNMENT |
|---|---|---|---|---|---|---|

**A. VEHICLE PURCHASED**

| PLATE NUMBER (AS SHOWN ON ATTACHED TITLE) | MAKE OF VEHICLE | MODEL YEAR | PURCHASE PRICE -See Note on Reverse | | |
| VEHICLE IDENTIFICATION NUMBER | CONDITION ☐ GOOD ☐ FAIR ☐ POOR | | TAX TRADE-IN | | |

**B. SELLER**

| LAST NAME OR FULL BUSINESS NAME | FIRST NAME | MIDDLE NAME | TAXABLE AMOUNT | | |
| CO-SELLER | | | SALES TAX DUE | | |

**C.**

| LAST NAME OR FULL BUSINESS NAME FIRST NAME | TITLE NAME PURCHASED OR TRANS DR | DATE OF BIRTH | TAX EXEMPTION REASON CODE must | | |
| CO-PURCHASER LAST NAME | FIRST NAME | | 1B. FIRST ASSIGNMENT EXEMPT CO NO. | 1B. SECOND ASSIGNMENT EXEMPTION NO | |
| SELLER | | COUNTY CODE | | | |

| | STATE | ZIP CODE DATE ACQUIRED PURCHASED | REFER TO COUNTY CODES LISTING ON REVERSE SIDE OF YELLOW COPY | 2. TITLE FEE | | |
| LAST NAME OR FULL BUSINESS NAME FIRST NAME | TITLE NAME PURCHASED OR TR DATE OF BIRTH | | 3. USA FEE | | |

**D. 2ND PURCHASER**

| CO-PURCHASER LAST NAME | FIRST NAME | MIDDLE NAME | DATE OF BIRTH | 4. REGISTRATION OR PROCESSING FEE | | |
| STREET | | COUNTY CODE | FEE EXEMPT NUMBER AS ASSIGNED BY THE DEPARTMENT | | |
| CITY | STATE | ZIP CODE DATE ACQUIRED PURCHASED | REFER TO COUNTY CODES LISTING ON REVERSE SIDE OF YELLOW COPY | 5. DUPLICATE REG. FEE NO. OF CARDS ___ | | |
| | | | | 6. TRANSFER FEE | | |

**E. VEHICLE TRADED**

| MAKE OF VEHICLE | VEHICLE IDENTIFICATION NUMBER | | 7. INCREASE FEE | | |
| MODEL YEAR | BODY TYPE (CP, TK, ETC.) | CONDITION ☐ GOOD ☐ FAIR ☐ POOR | 9. REPLACEMENT FEE | | |

**F.**

| ☐ PLATE TO BE ISSUED BY DEPARTMENT (PROOF OF INSURANCE MUST BE ATTACHED.) ☐ EXCHANGE PLATE TO BE ISSUED BY DEPARTMENT ☐ TEMPORARY PLATE ISSUED BY FULL AGENT (from Time crate w/in force 90 days from date of issuance.) | ☐ TRANSFER OF PREVIOUSLY ISSUED PLATE ☐ TRANSFER & RENEWAL OF PLATE ☐ TRANSFER & REPLACEMENT OF PLATE ☐ TRANSFER OF PLATE & REPLACEMENT OF STICKER | | TOTAL PAID (ADD 1 THRU 9) | 8. | 10. |
| | | | 11. GRAND TOTAL (ADD 9 & 10) | SEND ONE CHECK IN THIS AMOUNT → | |

PLATE NO. | REASON FOR REPLACEMENT ☐ LOST ☐ DEFACED ☐ STOLEN ☐ NEVER RECEIVED (Lost in mail)

EXPIRES   Month       Year

TRANSFERRED FROM TITLE NO       VIN

NOTE: If "NEVER RECEIVED" block is checked, applicant must complete Form MV-44.

**APPLICATION FOR REGISTRATION**

TEMP. PLATE NO.

SIGNATURE OF PERSON FROM WHOM PLATE IS BEING TRANSFERRED (IF OTHER THAN APPLICANT)   SIGN HERE

RELATIONSHIP TO APPLICANT

| VEHICLE PURCHASED WEIGHT INFORMATION (IF APPLICABLE) | GVWR | UNLADEN WEIGHT | REG. REG. GROSS WT INCLUDING LOAD | | REG. REG. GROSS COMB. WT (IF APPLICABLE) | |
| INSURANCE COMPANY NAME | POLICY NO. (OR ATTACH BINDER) | | POLICY EFFECTIVE | DATE | POLICY EXPIRATION DATE |
| ISSUING AGENT | I CERTIFY THAT ON MONTH     DAY     YEAR, I HAVE CHECKED TO DETERMINE THAT THE VEHICLE IS INSURED AND ISSUED TEMPORARY REGISTRATION TO THE ABOVE APPLICANT IN COMPLIANCE WITH ALL APPLICABLE PROVISIONS OF THE VEHICLE CODE AND DEPARTMENT REGULATIONS | | ISSUING AGENT (PRINT NAME) | | AGENT NO | |
| INFORMATION | | | ISSUING AGENT SIGNATURE | | TELEPHONE NO. | |

**G. CERTIFICATION**

I/WE CERTIFY THAT I/WE HAVE EXAMINED AND SIGNED THIS APPLICATION AFTER ITS COMPLETION. I/WE FURTHER CERTIFY THAT ALL STATEMENTS HEREIN ARE TRUE AND CORRECT AND I/WE MAKE APPLICATION FOR CERTIFICATE OF TITLE FOR THE VEHICLE DESCRIBED IN SECTION A. IF ANY EXEMPTION IS CLAIMED, THE PURCHASER FURTHER CERTIFIES THAT HE/SHE IS AUTHORIZED TO CLAIM THIS EXEMPTION. I/WE ACKNOWLEDGE THAT I/WE MAY LOSE MY/OUR OPERATING PRIVILEGE(S) OR VEHICLE REGISTRATION FOR FAILURE TO MAINTAIN FINANCIAL RESPONSIBILITY ON THE CURRENTLY REGISTERED VEHICLE FOR THE PERIOD OF REGISTRATION. I/WE ACKNOWLEDGE THAT I/WE MAY BE SUBJECT TO A FINE NOT EXCEEDING $5 000 AND IMPRISONMENT OF NOT MORE THAN TWO YEARS FOR ANY FALSE STATEMENT THAT I/WE MAKE ON THIS APPLICATION.

| 1ST ASSIGNMENT | Signature of First Purchaser or Authorized Signer | Telephone No. |
| | Signature of Co-Purchaser/Title of Authorized Signer | ( ) |
| 2ND ASSIGNMENT | Signature of Second Purchaser or Authorized Signer | Telephone No. |
| | Signature of Co-Purchaser/Title of Authorized Signer | ( ) |

**H. ADDITIONAL TITLE INFORMATION**

NOTE: IF A CO-PURCHASER OTHER THAN YOUR SPOUSE IS LISTED AND YOU WANT THE TITLE TO BE LISTED AS "JOINT TENANTS WITH RIGHT OF SURVIVORSHIP" (ON DEATH OF ONE OWNER TITLE GOES TO SURVIVING OWNER) CHECK HERE ☐. OTHERWISE, THE TITLE WILL BE ISSUED AS "TENANTS IN COMMON" (ON DEATH OF ONE OWNER INTEREST OF DECEASED OWNER GOES TO HIS/HER HEIRS OR ESTATE.)

NOTE: IF THE VEHICLE IS TO BE USED AS A DAILY RENTAL OR LEASED VEHICLE, CHECK THIS BLOCK ☐. IF BLOCK IS CHECKED, COMPLETE AND ATTACH FORM MV-1L.

MESSENGER NO.

S APPLICANT'S COPY (TEMPORARY REGISTRATION) VALID FOR 90 DAYS

Oct. 20. 2014 2:23PM HALLMAN USED CARS 8144566035 No. 4869 P. 1

**PENNSYLVANIA MOTOR VEHICLE INSTALLMENT SALE CONTRACT,** Dated 03/30/2011 **SIMPLE INTEREST**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 3000.00 |
|---|---|---|---|---|
| 11.20 % | $ 5125.60 | $ 13580.00 | $ 18705.60 | $ 21705.60 |

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 259.80 | Monthly, beginning 04/29/2011 |
| | $ N/A | |

Security: You are giving a security interest in the motor vehicle being purchased.

Prepayment: If you pay off early, you will not have to pay a penalty.

Filing Fees: $ 5.00

Late Charge: If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties. e means estimate

In this Contract we are the SELLER, DAVE HALLMAN CHEVROLET, INC. 1925 STATE ST. ERIE PA 16501
Name Address Zip Code

You are the BUYER(S). DANIEL J MATTEO 5248 HEIDLER RD FAIRVIEW PA 16415
STARLEEN E MATTEO 5248 HEIDLER RD FARIVIEW PA 16415
Name(s) Address(es) Zip Code(s)

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

**TRADE-IN:** You have traded in the following vehicle: ______
Year and Make Description

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the Itemization of Amount Financed as the "Lien Payoff."

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

By signing, you select Single Credit Life Insurance, which costs $ N/A What is your age? ____ Years

Signature of Buyer to be insured for Single Credit Life Insurance

By signing, you select Single Credit Accident & Health Insurance, which costs $ N/A What is your age? ____ Years

Signature of Buyer to be insured for Single Credit Accident & Health Insurance

By signing, you both select Joint Credit Life Insurance, which costs $ N/A What are your ages?

1. ______
2. ______
Signatures of both Buyers to be insured for Joint Credit Life Insurance

By signing, you both select Joint Credit Accident & Health Insurance, which costs $ N/A What are your ages? Percentage to be insured

1. ______ %
2. ______ %
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

Insurer: ______

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| USED | 2009 CHEVROLET | IMPALA LT | SDN | | | 2G1WC57M991295813 |

Equipped with ___ A.T. ___ P.S. ___ AM-FM Stereo ___ 5 Spd. Other ______
___ A.C. ___ P.W. ___ AM-FM Tape ___ Vinyl Top

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an a[illegible] Received Time Oct. 20. 1:38PM

AMERICREDIT FINANCIAL SERVICES INC

IF YOU DO NOT MEET YOUR CONTRACT OBLIGATIONS, YOU MAY LOSE THE MOTOR VEHICLE AND PROPERTY THAT YOU BOUGHT WITH THIS CONTRACT, AND/OR MONEY ON DEPOSIT WITH THE ASSIGNEE.

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee.

**Itemization of Amount Financed**

| | |
|---|---|
| Cash Price INCL. TAX $928.5 | $ 16403.50 |
| Cash Downpayment | $ 3000.00 |
| Trade-In Value of Trade-In | $ N/A |
| Lien Payoff to: N/A | $ N/A |
| Unpaid Cash Price Balance | $ 13403.50 |
| Paid to Others on Your Behalf: To Credit Insurance Company | $ N/A |
| To Public Officials for: License, Tags and Registration | $ 66.50 |
| Lien Fee | $ 5.00 |
| To N/A | $ N/A * |
| To DOC FEE | $ 105.00 * |
| To N/A | $ N/A * |
| To N/A | $ N/A * |
| Amount Financed | $ 13580.00 |
| Finance Charge | $ 5125.60 |
| Total of Payments (Time Balance) | $ 18705.60 |

*We may retain a portion of amounts marked *.

Payment Schedule - You agree to pay to us the Amount Financed plus interest in 72

Seller "Oct. 20. 2014th 2:23PM reemen HALLMAN USED CARS 8144586659 the Assignee will notify you when No. 4869 moun P.   2nd plus interest in
and if Senan munna an assignmenu

AMERICREDIT FINANCIAL SERVICES INC
PO BOX 182673 ARLINGTON 76096-2673

payments of $      259.80
each, and a final payment of
$       N/A       . The first
payment will be due on   APR 29th
2011       , and then payments
will be due on that same day of each month
following.

72

CO-SIGNER: Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.

CO-OWNER: Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

TERMS: The terms shown in the boxes above are part of this Contract.

PROMISE TO PAY: You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-in, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

SECURITY AGREEMENT: To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

ADDITIONAL TERMS AND CONDITIONS: THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK, YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

SELLER  DAVE HALLMAN CHEVROLET, INC.

BUYER                                              03/30/2011

You have until Oct. 20, 2014  2:24PM    HALLMAN USED CARS 8144566635

PNo. 4869/mar/P. 3
$ 3000.00

| Year and Make | Description |
|---|---|

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the itemization of Amount Financed as the "Lien Payoff."

PROPERTY INSURANCE: You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

CREDIT INSURANCE IS NOT REQUIRED: Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your Insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

Trade-In
Value of Trade-In
$    N/A
Lien Payoff to : N/A
$    N/A
Unpaid Cash Price Balance
$ 13403.50

By signing, you select Single Credit Life Insurance.  What is your
which costs $ _____ N/A _____ age? _____ Years

By signing, you select Single Credit Accident &   What is your
Health Insurance, which costs $ _____ N/A _____ age? _____ Years

To Credit Insurance Company
$    N/A
To Public Officials for:
License, Tags and Registration
$ 66.50

Signature of Buyer to be insured for Single Credit Life Insurance

Signature of Buyer to be insured for Single Credit Accident & Health Insurance

By signing, you both select Joint     What are
Credit Life Insurance, which costs $ _____ N/A _____ your ages?

By signing, you both select Joint Credit     What are  Percentage
Accident & Health Insurance, which costs $ _____ N/A / your ages? to be
_____ insured:  %

Lien Fee
$    5.00
To N/A
$    N/A
To DOC FEE
$ 105.00
To N/A
$    N/A
To N/A
$    N/A

Signatures of both Buyers to be insured for Joint Credit Life Insurance

Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

Insurer:

VEHICLE: You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make 2009 CHEVROLET | Series | Body Style SDN | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| USED | | IMPALA LT | | | | 2G1WC57M991295813 |

Equipped ___ A.T. ___ P.S. ___ AM-FM Stereo ___ 5 Spd. Other ___
with ___ A.C. ___ P.W. ___ AM-FM Tape ___ Vinyl Top

Amount Financed
$ 13580.00
Finance Charge
$ 5125.60
Total of Payments (Time Balance)
$ 18705.60

ASSIGNEE: We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

AMERICREDIT FINANCIAL SERVICES INC
PO BOX 182673 ARLINGTON 76096-2673

Payment Schedule - You agree to pay to us the Amount Financed plus interest in

payments of $    72
259.80
each, and a final payment of
$    N/A    . The first
payment will be due on    APR 29th
2011    , and then payments
will be due on that same day of each month following.

CO-SIGNER: Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.

CO-OWNER: Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

TERMS: The terms shown in the boxes above are part of this Contract.

PROMISE TO PAY: You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-In, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

SECURITY AGREEMENT: To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

ADDITIONAL TERMS AND CONDITIONS: THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

SELLER  DAVE HALLMAN CHEVROLET, INC.

BUYER _____    03/30/2011
Date

BY: _____    03/30/2011
Date

BUYER _____ attco    03/30/2011
Date

CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.

CO-SIGNER'S AGREEMENT: You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

| Co-Signer's Signature | | Address | | Date |
|---|---|---|---|---|
| Co-Signer's Signature  Received Time Oct. 20.  1:38PM | | Address | | Date  [*] |

CO-OWNER'S SECURITY AGREEMENT: You the person signing below as "Co-Owner" to perform both the

CO-OWNER'S SECURITY AGREEMENT: You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a Security Interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

| Co-Owner's Signature | Address | Date |
|---|---|---|

BUYER, CO-SIGNER AND CO-OWNER, AS APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.

| BUYER | BUYER | CO-SIGNER | CO-SIGNER OR CO-OWNER |
|---|---|---|---|

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

Wolters Kluwer Financial Services © 2003, 2008         To Reorder Form: 1-800-552-8410         PA 21-SLC 3/26/2008

# EXHIBIT B

## 2    Warranty Coverage at a Glance

The warranty coverages are
summarized below.

### New Vehicle Limited Warranty

**Bumper-to-Bumper (includes
Tires)**

* Coverage is for the first 3 years
or 36,000 miles, whichever
comes first.

#### Powertrain

* Coverage is for the first 5 years
or 100,000 miles, whichever
comes first.

#### Sheet Metal

* Corrosion coverage is for the
first 3 years or 36,000 miles
whichever comes first

* Rust-through coverage is for the
first 6 years or 100,000 miles
whichever comes first.

### Emission Control System
Warranty

For light duty trucks, see How to
Determine the Applicable Emissions
Control Systems Warranty under
*Emission Control Systems Warranty*
on page 22 for more information.

#### Federal

* Gasoline Engines

  - Defects and performance
  for cars and light duty truck
  emission control systems are
  covered for the first 2 years or
  24,000 miles, whichever
  comes first. From the first
  2 years or 24,000 miles to
  5 years or 36,000 miles
  defects in material or

workmanship continue to
be covered under the New
Vehicle Limited Warranty
Bumper-to-Bumper coverage
explained previously. Specified
major components are
covered for the first 5 years or
80,000 miles, whichever
comes first.

- Defects and performance for
heavy duty truck emission
control systems are covered
for the first 5 years or
50,000 miles whichever
comes first

* 8.3L DURAMAX® Diesel
Engines are covered for the
first 5 years or 50,000 miles
whichever comes first.

## Warranty Coverage at a Glance   3

### Emissions

- Defects and performance for car, and truck light-duty systems or medium-duty systems control systems are covered for the first 3 years or 36,000 miles, whichever comes first.

- Specified components for cars or light-duty trucks equipped with light-duty or medium-duty truck emission control systems are covered for the first 7 years or 70,000 miles, whichever comes first.

### DURAMAX® Diesel Engines

- Defects and performance for the emission control systems are covered for the first 5 years or 50,000 miles, whichever comes first.

- Specified components for the emission control system are covered for the first 7 years or 70,000 miles, whichever comes first.

*Important:* Some California emission vehicles may have special coverages longer than those listed here. See "California Emission Control System Warranty" under Emission Control Systems Warranty on page 22.

### Noise Emissions

- Coverage is for applicable vehicles weighing over 10,000 lbs based on the Gross Vehicle Weight Rating (GVWR) only, for the entire life of the vehicle.

## 4. New Vehicle Limited Warranty

GM will provide for repairs to the vehicle during the warranty period in accordance with the following terms, conditions, and limitations.

### What Is Covered

This warranty is for GM vehicles registered in the United States and normally operated in the United States or Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

### Repairs Covered

The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

### No Charge

Warranty repairs, including towing, parts, and labor, will be made at no charge.

### Obtaining Repairs

To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs.

A reasonable time must be allowed for the dealer to perform necessary repairs.

### Warranty Period

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

### Bumper-to-Bumper Coverage

The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first, except for other coverages listed here under "What Is Covered" and those items listed under "What is Not Covered" later in this section.

### Powertrain Component Warranty Coverage

The powertrain is covered for 5 years or 100,000 miles, whichever comes first, except for other coverages listed here under "What is Covered" and those items listed under "What is Not Covered" later in this section.

**Engine Coverage includes:** All internally lubricated parts, engine oil cooling hoses, lines and radiators. Also included are all actuators and electrical components internal to the engine (i.e. Active Fuel Management Valve Lifter Oil Manifold, etc.) cylinder head, block, timing gears, timing chain, timing cover, oil pump/oil pump housing, OHC carriers, valve covers, oil pan, seals, gaskets, manifolds, flywheel, water pump, harmonic balancer, engine mount, turbocharger and supercharger. Timing belts are covered until the first scheduled maintenance interval.

New Vehicle Limited Warranty

Coolant is excluded from the powertrain coverage are sensors, wiring, connectors, engine radiator, radiant hoses, coolant and heater core. Coverage on the engine cooling system begins at the inlet to the water pump and ends with the thermostat housing and/or outlet that attaches to the return hose. Also excluded is the starter motor, entire pressurized fuel system (in-tank fuel pump, pressure lines, fuel rail(s), regulator, injectors and return line) as well as the Engine/Powertrain Control Module and/or module programming.

Transaxle/Transaxle Coverage includes: All internally lubricated parts, case, torque converter, mounts, seals and gaskets as well as any electrical components internal to the transmission/transaxle. Also covered are any sensors, directly connected to the transmission (slave cylinder, etc.)

Exclusions: Excluded from the powertrain coverage are transmission cooling lines, hoses, radiator, sensors, wiring and electrical connectors. Also excluded are the clutch and pressure plate as well as any Transmission Control Module and/or module programming.

Transfer Case Coverage includes: All internally lubricated parts, case, mounts, seals and gaskets as well as any electrical components internal to the transfer case. Also covered are any actuators directly connected to the transfer case as well as encoder motor.

Exclusions: Excluded from the powertrain coverage are transfer case cooling lines, hoses, radiator, sensors, wiring, electrical connectors as well as the transfer case control module and/or module programming.

**VERIFICATION**

The undersigned verifies that the Civil Action Complaint is based on information furnished to counsel in

the preparation of his Personal lawsuit. The language of the Civil Action Complaint is that of counsel and

not of signer. Signer verifies that the information supplied to counsel is true and correct to the best of

his knowledge, information and belief. This verification is made subject to the penalties of 18 Pa. C.S.

4904 relating to unsworn falsification to authorities.

X
Cheryl A. Brochey

Date: 11/7/14

## **VERIFICATION**

The undersigned verifies that the Civil Action Complaint is based on information furnished to counsel in the preparation of his Personal lawsuit. The language of the Civil Action Complaint is that of counsel and not of signer. Signer verifies that the information supplied to counsel is true and correct to the best of his knowledge, information and belief. This verification is made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

X _____

Daniel Matteo

Date: _____