# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION          14-MD-2543 (JMF)

*This Document Relates to All Actions*

-------------------------------------------------------------------------------x


### GENERAL MOTORS LLC'S MOTION AND MEMORANDUM IN SUPPORT TO DEFER ALL BRIEFING ON PLAINTIFFS' POST-SALE CONSOLIDATED COMPLAINT UNTIL AFTER THE BANKRUPTCY COURT DECIDES THE PENDING MOTIONS TO ENFORCE

## TABLE OF CONTENTS

Page

BACKGROUND .................................................................................................... 5

I.    PLAINTIFFS' POST-SALE COMPLAINT ................................................ 5

II.   THE BANKRUPTCY COURT'S SALE ORDER AND INJUNCTION AND
      NEW GM'S MOTIONS TO ENFORCE. ................................................... 6

ARGUMENT ......................................................................................................... 12

I.    ALL BRIEFING SHOULD BE STAYED PURSUANT TO PRIOR
      BANKRUPTCY COURT RULINGS. ........................................................ 12

II.   PROCEEDING WITH BRIEFING ON ANY SUBSET OF DISCRETE
      ISSUES OR CLAIMS IS IMPRACTICAL. ............................................... 16

      A.    Choice-Of-Law Briefing Should Await the Bankruptcy Court's Ruling. ........... 16

      B.    It Would Be Inappropriate to Brief the Substantive Law of Bellwether
            States Until The Bankruptcy Court Rules. ............................................. 18

CONCLUSION .................................................................................................... 20

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Blakely v. Wells,*
   209 F. App'x 18 (2d Cir. 2006) ................................................................. 13

*Browning Enter., Inc. v. Rex Iron & Mach. Products Co.,*
   504 F. Supp. 2d 1217 (N.D. Ala. 2007) ..................................................... 16

*Castillo v. Gen. Motors Co.,*
   No. 09-50026-reg, 2012 WL 1339496 (Bankr. S.D.N.Y. 2010) ................................ 12

*Celotex Corp. v. Edwards,*
   514 U.S. 300 (1995) ...................................................................... 8

*Ekberg v. United States,*
   117 F. 3d 1428 (10th Cir. 1997) ............................................................ 5

*Fitts v. Minnesota Min. & Mfg. Co.,*
   581 So. 2d 819 (Ala. 1991) ............................................................... 16

*Freedom Party of New York v. New York State Bd. of Elections,*
   77 F.3d 660 (2d Cir. 1996) ............................................................... 19

*Harshaw v. Bethany Christian Servs.,*
   714 F. Supp. 2d 751 (W.D. Mich. 2010) .................................................... 16

*In re Bridgestone/Firestone, Inc.,*
   288 F.3d 1012 (7th Cir. 2002) ............................................................ 18

*In re Gen. Motors Corp.,*
   407 B.R. 463 (Bankr. S.D.N.Y. 2009) ...................................................... 7

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
   218 F.R.D. 76 (S.D.N.Y. 2003) ........................................................... 13

*In re Motors Liquidation Co.,*
   428 B.R. 43 (S.D.N.Y. 2010) ............................................................. 7

*In re Motors Liquidation Co.,*
   430 B.R. 65 (S.D.N.Y. 2010) ............................................................. 7

*In re Rezulin Prods. Liab. Litig.,*
   390 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................. 3, 16, 17

i

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,
    785 F. Supp. 2d 925 (C.D. Cal. 2011) ....................................................................... 17

*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
    304 F.3d 223 (2d Cir. 2002) .................................................................................... 12

*Menowitz v. Brown*,
    991 F.2d 36 (2d Cir. 1993) ................................................................................. 3, 17

*Moody v. Ford Motor Co.*,
    No. 03-0784, 2006 WL 346433 (N.D. Okla. Feb. 13, 2006) ................................... 16

*Thompson v. Ford Motor Credit Co.*,
    550 F.2d 256 (5th Cir. 1977) ..................................................................................... 5

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009) ................................................................................................ 12

*Trusky v. Gen. Motors Co.*,
    No. 09-50026-reg, 2013 WL 620281 ....................................................................... 12

## SUMMARY OF ARGUMENT

All briefing on plaintiffs' Post-Sale Complaint should be stayed pending Judge Gerber's decision on New GM's Motions to Enforce the Bankruptcy Court's Sale Order and Injunction. Notwithstanding Lead Counsel's representations to this Court that they would file clearly-delineated Pre- and Post-Sale Complaints—"[o]ne will be post bankruptcy sale, one will be pre[-sale]"[1]—Lead Counsel instead filed a purported "Post-Sale" Complaint in which the overwhelming majority of claims concern vehicles manufactured by General Motors Corporation ("Old GM"), not General Motors LLC ("New GM"). Instead of structuring the complaints according to whether the vehicles at issue were manufactured by Old GM or New GM, Lead Counsel organized the two complaints by whether vehicles were purchased by the current owner before or after the bankruptcy sale. As a result, the Post-Sale Complaint is packed with plaintiffs who acquired used Old GM vehicles in third-party transactions having nothing to do with New GM. Only 9 of the 68 sets of named plaintiffs—across 7 states—definitively assert that they purchased vehicles manufactured by New GM.

The Bankruptcy Court expressly and repeatedly has held—in *Phaneuf, Elliott, Phillips,* and *Sesay*—that *all* vehicles manufactured by Old GM are subject to the Bankruptcy Court's jurisdiction to enforce its Sale Order and Injunction: "this Court's Sale Order . . . *did* impose an unequivocal injunction against litigation against New GM involving vehicles manufactured by Old GM or involving Old GM parts."[2] Thus, regardless of when an Old GM vehicle may have been acquired by a particular plaintiff, the Bankruptcy Court already has ruled that no such claim may proceed until the Bankruptcy Court resolves New GM's Motions to Enforce. In these same decisions, the Bankruptcy Court has held that plaintiffs' claims based on vehicles manufactured

---

[1]    Ex. A, Oct. 2, 2014 Hr'g. Tr. at 22-23.
[2]    Ex. B, Order Denying No Stay Pleading, *Sesay v. Gen. Motors LLC*, No. 09-50026-reg, ECF No. 12989, at 17 (Bankr. S.D.N.Y. Nov. 10, 2014) [hereinafter, "*Sesay* Order"].

by New GM—"those who purchased vehicles that conceivably could have been manufactured after the July 2009 363 Sale"—likewise cannot proceed until the Motions to Enforce are decided when, as here, such claims are intermingled in a single, common complaint with claims involving Old GM vehicles.[3] Moreover, the claims of each plaintiff in the Post-Sale Complaint—even the 9 with New GM vehicles—implicate the Sale Order and Injunction since they all rely on the conduct of Old GM for their claims and damages theories.

Not only has the Bankruptcy Court already ruled that claims substantively identical to those asserted in the Post-Sale Complaint must be stayed, the issues raised by Lead Counsel's assertion of claims based on Old GM vehicles, parts, and conduct in the Post-Sale Complaint are being litigated in the Bankruptcy Court right now. In connection with the Motions to Enforce, one of the "Threshold Issues" that the parties are briefing in the Bankruptcy Court is whether the claims asserted against New GM in the Post-Sale Complaint (as well as in the Pre-Sale Complaint) are Retained Liabilities of Old GM. New GM's opening brief on this Threshold Issue explicitly demonstrates that used Old GM vehicles sold in third-party transactions after the 363 Sale are a Retained Liability of Old GM.[4] New GM's opening brief also establishes that, even with respect to New GM vehicles, various other claims and damage theories in the Post-Sale Complaint relying on Old GM conduct are barred.[5] Lead Counsel's response is due in the Bankruptcy Court on December 16 and doubtless will take a contrary position. But the point is simply that these issues already are squarely before the Bankruptcy Court, and Lead Counsel long since have agreed by stipulation that the Bankruptcy Court should be the tribunal to first

---

[3]    Ex. C, Order Denying No Stay Pleading, *Elliott v. Gen. Motors LLC*, No. 09-50026-reg, ECF No. 12815, at 8 n.24 (Bankr. S.D.N.Y. Aug. 6, 2014) [hereinafter, "*Elliott* Order"]; *see also* Ex. D, Order Denying No Stay Pleading, *Phaneuf v. Gen. Motors LLC*, No. 09-50026-reg, ECF No. 12791 (Bankr. S.D.N.Y. July 30, 2014) (hereinafter, "*Phaneuf* Order")

[4]    Ex. E, Opening Brief by General Motors LLC On Threshold Issues Concerning Its Motions to Enforce the Sale Order and Injunction, No. 09-50026-reg, ECF No. 12981, at 12-22, 57-76 (Bankr. S.D.N.Y. Nov. 5, 2014).

[5]    *Id.*

2

decide this Threshold Issue.[6] Thus, consistent with this Court's mandate that "any order staying a case in light of General Motors' motion to enforce pending before the . . . Bankruptcy Court . . . remains in effect," all motion practice with respect to the Post-Sale Complaint should be deferred until the Bankruptcy Court rules.[7]

Given the Bankruptcy Court's prior rulings and the briefing currently before it, New GM does not believe that "there are any discrete issues on which motion practice can or should proceed."[8] Even putting aside this precedent, Lead Counsel have chosen to structure the Post-Sale Complaint in a way that is so intertwined with the issues before Judge Gerber that it precludes any discrete issues from being decided now. In particular, the Court has asked whether "choice-of-law issues" can be resolved while the Bankruptcy Court considers the Motions to Enforce.[9] The answer is no for the simple and dispositive reason that it is impossible to make a choice-of-law determination without knowing what claims, on behalf of what claimants, and arising in which jurisdictions are at issue. That is, the Post-Sale Complaint asserts that "Michigan law applies nationwide to Plaintiffs' claims for fraudulent concealment, unjust enrichment, breach of the implied warranty of merchantability, and the Magnuson-Moss Warranty Act."[10] But under well-settled law, "[w]hen an action is transferred as part of an MDL, the transferee court applies the choice of law rules of the state in which the action first was filed."[11] Before any choice-of-law analysis can proceed, therefore, the Court necessarily must have before it the universe of jurisdictions whose choice-of-law principles are to be considered.

---

[6]   *In re Gen. Motors Co.*, No. 09-50026-reg, ECF No. 12869 (Bankr. S.D.N.Y.), Aug. 22, 2014.
[7]   MDL Order No. 1, ECF No. 19, at 10-11.
[8]   MDL Order No. 22, ECF No. 399, at 2-4.
[9]   Ex. F, Nov. 1, 2014 Agenda Ltr., ECF No. 381 at 7.
[10]   Post-Sale Complaint ¶ 835; *see also id.* ¶ 21.
[11]   *See, e.g., In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 330 (S.D.N.Y. 2005); *see also Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) ("a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed")

The choice-of-law analysis will be dramatically different if the claims of 9 plaintiffs from 7 states are at issue as opposed to all 68 sets of plaintiffs named in the Post-Sale Complaint.[12]

Lead Counsel's proposal to brief the substantive law of three so-called "bellwether" states also is impractical.[13]  The Post-Sale Complaint expressly alleges that the common law claims of *every* state are pleaded "in the alternative" and only "[i]n the event the Court declines to certify a Nationwide Class under Michigan law."[14]  Thus, none of the state common law claims can be decided until the choice-of-law determination is made and, for the reasons set forth above, choice-of-law briefing cannot proceed until the Bankruptcy Court rules.  And although state statutory claims are brought by Lead Counsel irrespective of the choice-of-law determination, there would be no efficiency in briefing piecemeal individual state statutory claims that would not even resolve all of the claims brought with respect to a particular state.

Further, as this Court already has held in the personal injury context, "both sides should participate in the selection of the initial . . . bellwether trial pool," where the "ultimate goal is obviously to choose a representative sample to enable both sides to get meaningful data."[15] Instead, Lead Counsel's initial proposal unilaterally suggested three jurisdictions—California, Washington, D.C., and Oklahoma.[16]  Plaintiffs provide no explanation for how these three jurisdictions will provide a representative sample or yield meaningful data, especially given the relatively small number of vehicles registered in the latter two jurisdictions.  To the contrary, because it is not clear what claims will survive Judge Gerber's ruling, it simply is impossible at this point to determine what state might be an appropriate bellwether.

---

[12]    Although Lead Counsel represented to the Court that they would assert claims under the laws of each of the 50 states, in fact, the 68 sets of named plaintiffs alleged in the Post-Sale Complaint represent only 40 states and the District of Columbia. *See* Ex. H, Post-Sale Complaint Claim Chart.
[13]    Ex. F, Nov. 1, 2014 Agenda Ltr., ECF No. 381, at 7.
[14]    Post-Sale Complaint at ¶ 879; *see also* ¶¶ 865, 945.
[15]    Ex. G, Nov. 6, 2014 Hr'g. Tr. at 12-14.
[16]    Ex. F, Nov. 1, 2014 Agenda Ltr., ECF No. 381, at 3.

For all of these reasons, all briefing on the Post-Sale Complaint should be deferred until the Bankruptcy Court rules.

## BACKGROUND

### I.    PLAINTIFFS' POST-SALE COMPLAINT.

The 692-page, 3,200-paragraph "Post-Sale" Complaint purports to assert claims on behalf of 66 sets of named consumer plaintiffs and 2 used car dealerships. Of these:

- Only 9 sets of plaintiffs (or 13%) allege vehicles that were definitely manufactured by New GM (*i.e.*, model-year 2011 or later vehicles).[17] These 9 (8 consumers and one used car dealership) are alleged to be from 7 states.[18]

- The next 39 sets of plaintiffs (approximately 57%) allege vehicles that were definitely manufactured by Old GM (*i.e.*, model-year 2008 or earlier).[19]

- The remaining 20 sets of plaintiffs (approximately 30%) allege vehicles that could have been manufactured by either Old or New GM (model-years 2009, 2010, or unspecified).[20]

In the Post-Sale Complaint, the 68 sets of named plaintiffs purport to assert claims on behalf of three putative classes: (i) a Nationwide [Consumer] Class; (ii) a Nationwide Dealer Class; and (iii) 51 Statewide [Consumer] Classes (including the District of Columbia).[21] Each putative class includes in the definition of Affected Vehicles all "Old GM vehicles sold as used [between July 11, 2009 and July 3, 2014]."[22]

---

[17]    Ex. H, Post-Sale Complaint Claim Chart. Lead Counsel recently advised New GM that the vehicle owned by one of these 9 plaintiffs, Ms. Jennifer Reeder of Oklahoma, is being repossessed. It is unclear how a plaintiff can pursue a claim for diminution in value for a vehicle that has been repossessed, which would reduce the number of plaintiffs with New GM vehicles to 8. *See, e.g., Thompson v. Ford Motor Credit Co.*, 550 F.2d 256, 258 (5th Cir. 1977) ("Upon default title and the right to possession pass to the creditor."); *Ekberg v. United States*, 117 F. 3d 1428 (10th Cir. 1997) (holding that non-owner of property lacked standing to sue).

[18]    Ex. H, Post-Sale Complaint Claim Chart.

[19]    *Id.*

[20]    *Id. See also* Post-Sale Complaint, ¶¶ 27-93. Because plaintiffs have not provided vehicle identification numbers ("VINs") for their named plaintiffs, New GM is unable to determine whether the 2009 and 2010 model-year vehicles were manufactured by Old GM or New GM; *see also* Ex. H, Post-Sale Complaint Claim Chart.

[21]    Post-Sale Complaint ¶¶ 864-916. The Post-Sale Complaint also alleges claims with respect to Nationwide and Statewide Ignition Switch Subclasses. *Id.* at p. 264.

[22]    *Id.* at ¶ 848.

On behalf of the two putative nationwide classes, the Post-Sale Complaint purports to assert claims for fraudulent concealment (Count I), unjust enrichment (Count II), the Magnusson-Moss Warranty Act (Count III), and breach of implied warranty (Count IV).[23] Plaintiffs expressly assert that "Michigan law applies" to these nationwide claims.[24] Plaintiffs separately assert a variety of statutory and common law claims under the laws of each of the 50 states (even though the Complaint includes named plaintiffs from only 40 states and the District of Columbia).[25] The state common law claims are alleged "in the alternative" and only "[i]n the event the Court declines to certify a Nationwide Class under Michigan law."[26]

The Post-Sale Complaint not only asserts claims with respect to vehicles manufactured by Old GM and expressly incorporates Old GM vehicles into its class definitions, it relies throughout on allegations concerning Old GM conduct.[27] Lead Counsel's economic and punitive damage theories—premised on the recall of 27 million vehicles, most of which were manufactured by Old GM—also are premised on Old GM conduct.[28]

## II.    THE BANKRUPTCY COURT'S SALE ORDER AND INJUNCTION AND NEW GM'S MOTIONS TO ENFORCE.

In June 2009, Old GM filed for Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.    Through a bankruptcy-approved sale process, New GM acquired substantially all of Old GM's assets under a June 26, 2009 Amended and Restated

---

[23]    *Id.* at pp. 256, 258, 259, 263.

[24]    *Id.* ¶ 835; *see also id.* ¶ 21.  A fifth multi-state claim for negligence is asserted on behalf of Arkansas, Louisiana, Maryland, and Ohio subclasses only.  The individual plaintiffs named in the Post-Sale Complaint from each of these states assert claims only with respect to pre-Sale vehicles. *Id.* at p. 264 *et seq.*

[25]    *Id.* at pp. 9-51, 266-684.

[26]    *See,* footnote 14, *supra.*

[27]    By way of example only, and without limitation, *see, e.g.,* Post-Sale Complaint at ¶ 213 ("In 2001, [roughly eight years before the bankruptcy sale], GM engineers learned that the vehicle's ignition switch could unintentionally move. . . ."); *id.* ¶¶ 214-253 (discussing exclusively Old GM conduct from 2001 through the bankruptcy); *id.* ¶ 491 ("The problem apparently arose when Old GM made the change from using gold-plated terminals to connect its wire harnesses to cheaper tin terminals in 2007.").

[28]    *Id.* ¶¶ 3, 192; *see also id.* at p. 686.

Master Sale and Purchase Agreement ("Sale Agreement").[29] After extensive notice, discovery, and an evidentiary hearing, the Bankruptcy Court approved the Sale Agreement in its Sale Order and Injunction.[30] New GM's acquisition of Old GM's assets closed on July 10, 2009.[31] The Sale Order and Injunction was affirmed by two district court judges, and has been a final, non-appealable order for four years.[32]

Under the Sale Agreement, New GM acquired the assets of Old GM free and clear of all liens, claims, liabilities, and encumbrances of Old GM, other than liabilities expressly assumed by New GM.[33] New GM's liability for Old GM vehicles or parts was limited to only three categories of contractually-defined Assumed Liabilities, none of which are at issue in the Post-Sale Complaint: (a) post-sale accidents or incidents involving personal injury, loss of life, or property damage; (b) repairs or the replacement of parts provided for under the "glove box warranty;" and (c) Lemon Law claims (as defined in the Sale Agreement).[34] All other liabilities relating to Old GM vehicles or parts were legacy liabilities retained by Old GM.[35]

The Sale Order and Injunction explicitly provided that New GM would have no responsibility for any liabilities (except for Assumed Liabilities) relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009.[36] The 363 Sale Order therefore enjoined "[a]ll persons and entities . . . holding claims against [Old GM] or the Purchased Assets arising under or out of, in connection with, or in any way relating to [Old GM],

---

[29]   Ex. I, June 26, 2009 Amended and Restated Master Sale and Purchase Agreement.
[30]   *See In re Gen. Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009); (Ex. J, July 5, 2009 Order).
[31]   Ex. K, Motion to Enforce the Sale Order and Injunction, *In re Gen. Motors Corp.*, No. 09-50026-reg, ECF No. 12620, at ¶ 14 (Bankr. S.D.N.Y. Apr. 21, 2014).
[32]   *In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010); *Id.*, 430 B.R. 65 (S.D.N.Y. 2010).
[33]   Ex. J, July 5, 2009 Bankr. Sale Order & Inj. at 13.
[34]   *See* Sale Agreement § 2.3(a).
[35]   *See* Ex. J, July 5, 2009 Bankr. Sale Order & Inj. at 44–45; *see also In re Gen. Motors Corp.*, 407 B.R. 463, 481 (S.D.N.Y. 2009), *aff'd sub nom., In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65 (S.D.N.Y. 2010).
[36]   Ex. I, Sale Agreement ¶¶ 46, 9 & 8.

the Purchased Assets, the operation of the Purchased Assets prior to the Closing . . . from

asserting [such claims] against [New GM]. . . ."[37] This injunction expressly applied to rights or

claims "based on any successor or transferee liability."[38]

      On April 21, 2014, New GM filed a Motion to Enforce the Sale Order and Injunction in

the Bankruptcy Court with respect to economic loss actions arising from purportedly defective

ignition switch parts manufactured by Old GM ("Ignition Switch Actions Motion to Enforce").[39]

On August 1, 2014, New GM filed a Motion to Enforce the Sale Order and Injunction Against

Monetary Relief Actions, Other Than Ignition Switch Actions, covering economic loss claims

involving other Old GM vehicles and parts unrelated to the ignition switch ("Monetary Relief

Actions Motion to Enforce" and, collectively, the "Motions to Enforce").[40] As new complaints

have been filed, including the Pre- and Post-Sale Complaints, New GM has filed supplements to

the Motions to Enforce making such actions subject to those motions.[41] The Motions to Enforce

will be fully briefed in the Bankruptcy Court on January 16, 2015.[42]

      Given the threshold applicability of the Sale Order and Injunction to the Ignition Switch

Actions (and the Pre- and Post-Sale Complaints consolidating those claims),[43] on May 16, 2014,

the Bankruptcy Court entered an order directing Ignition Switch Action plaintiffs to voluntarily

stay their cases until the Bankruptcy Court could resolve the Motions to Enforce, or to show

---

[37]  Ex. J, July 5, 2009 Sale Order and Injunction ¶ 8.

[38]  *Id.* ¶ 46.

[39]  Ex. K, Apr. 21, 2014 Motion to Enforce.

[40]  Ex. L, *See* Mot. of Gen. Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5,
2009 Sale Order & Inj. (Monetary Relief Actions, Other Than Ignition Switch Actions (Bankr. Ct. Docket No.
12808)). On the same date, New GM filed a Motion to Enforce the Sale Order and Injunction Against Plaintiffs in
Pre-Closing Accident Lawsuits, although that motion is not applicable here given that the Post-Sale Complaint
asserts no personal injury claims.

[41]  *See, e.g., In re Gen. Motors Co.*, No. 09-50026-reg, ECF Nos. 12978-80 (Bankr. S.D.N.Y.).

[42]  *In re Gen. Motors Co.*, No. 09-50026-reg, ECF No. 12869 (Bankr. S.D.N.Y., Aug. 22, 2014).

[43]  Ex. K, Apr. 21, 2014 Motion to Enforce at 4 (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995))
(The rule is "well established" that "persons subject to an injunctive order issued by a court with jurisdiction are
expected to obey that decree until it is modified or reversed. . . .").

cause why their actions should not be stayed, by filing a "no stay pleading."[44]    These stay

procedures were applied to later-filed Ignition Switch and Monetary Relief Actions in

subsequent Bankruptcy Court orders.[45]    Nearly all plaintiffs stipulated to staying their claims.    A

handful of plaintiffs—including *Phaneuf, Elliott, Phillips,* and *Sesay*—filed no-stay pleadings,

seeking permission to prosecute their actions in other courts before the Bankruptcy Court ruled

on New GM's Motions to Enforce.[46]    The Bankruptcy Court has denied each no-stay pleading.

In *Phaneuf,* the nine named plaintiffs alleged, just as Lead Counsel do in the Post-Sale

Complaint, that their putative class action should be allowed to proceed because each named

plaintiff either acquired a used Old GM vehicle after the Sale date or a vehicle manufactured by

New GM and, as a result, sought to "assert only post-sale claims" against New GM.[47]    Judge

Gerber rejected this argument, holding that the *Phaneuf* plaintiffs' claims were subject to the

Bankruptcy Court's Sale Order and Injunction:

> I've found as a fact . . . that at least three [plaintiffs] purchased cars manufactured
> before the 363 Sale; that their complaint (apparently intentionally) merges pre-
> and post-sale conduct by Old GM and New GM; and that their complaint places
> express reliance on at least seven actions by Old GM, before New GM was
> formed—that at least much of the Phaneuf Plaintiffs' complaint seeks to impose
> liability on New GM based on Old GM's pre-sale acts.    Efforts of that character
> are expressly forbidden by the two [Sale Order] injunctive provisions. . . .[48]

Judge Gerber also rejected the *Phaneuf* plaintiffs' argument that, at a minimum, their claims

involving vehicles manufactured by New GM should be allowed to proceed: "***all of the Phaneuf***

---

[44]    Scheduling Order, No. 09-50026-reg, ECF No. 12697 (Bankr. S.D.N.Y., May 16, 2014).

[45]    *In re Gen. Motors Corp.,* No. 09-50026-reg, ECF Nos. 12764, 12897, 12898 (Bankr. S.D.N.Y.).

[46]    *See* Ex. D, *Phaneuf* Order; Ex. C, *Elliott* Order; Ex. M, Aug. 18, 2014 Bankr. Hr'g. Tr. at 81-83 (*Phillips* case); Ex. B, *Sesay* Order.    Additional No-Stay Pleadings were filed by the Orange County Plaintiff, *Alers, Bloom,* and *Bledsoe. In re Gen. Motors Co.,* No. 09-50026-reg, ECF Nos. 12990, 12991, and 12992 (Bankr. S.D.N.Y., Nov. 10, 2014).    Each time, the No-Stay Pleading was denied—in the case of the Orange County Plaintiff as moot and in the cases of *Alers* and *Bloom* as subject to further meet-and-confers and fact development.    Although not discussed further here, each further supports New GM's position.

[47]    Ex. N, *Phaneuf v. Gen. Motors LLC,* 1:14-cv-03298, ECF No. 2, at ¶¶ 8-15 (S.D.N.Y. 2014); *see also* Ex. D, *Phaneuf* Order at 7, 12-13.

[48]    Ex. D, *Phaneuf* Order at 16.

*Plaintiffs sue under a common complaint.* In the briefing [of the Threshold Issues] to follow, [the subset of Post-Sale plaintiffs] will be free to flesh out the facts with respect to the manufacture of their vehicles, and to point out any factual distinctions that might be warranted, and thus that their claims should be treated differently."[49] Judge Gerber stayed the action.

Like the *Phaneuf* plaintiffs, the *Elliott* plaintiffs argued that they should be permitted to proceed with claims arising solely from New GM's conduct, even though the claims were premised on a vehicle manufactured by Old GM.[50] The result was the same:

> As in *Phaneuf*, I find that the Elliott Plaintiffs are asserting claims with respect to vehicles that were manufactured before the 363 Sale and, although to a lesser extent than in *Phaneuf*, relying on the conduct of Old GM. Thus I find as a fact, or mixed question of fact and law, that the threshold applicability of the Sale Order—and its injunctive provisions—has been established in the first instance.[51]

The Bankruptcy Court also stayed the claims of an *Elliott* plaintiff who purchased a post-Sale vehicle manufactured by New GM:

> Assuming that the facts bear this out, this additional plaintiff seemingly is in the same category as some of the Phaneuf Plaintiffs—those who purchased vehicles that conceivably could have been manufactured after the July 2009 363 Sale. For the avoidance of doubt, I am not going to put this additional plaintiff in a different category than the Phaneuf Plaintiffs, or Lawrence and Celestine Elliott. . . .[52]

In *Phillips*, plaintiffs asserted tort claims purportedly arising from New GM conduct that took place after the 363 Sale, even though the vehicle at issue was manufactured by Old GM and the accident occurred pre-Sale. The Bankruptcy Court again stayed all such claims:

> . . . if you have a vehicle made by Old GM prepetition it's subject to at least one of the three categories of the sale order . . . [and] the chances of you being allowed to litigate them in another court before I've ruled on this issue are about the same as me playing for the Knicks. . . .[53]

---

[49] *Id.* at 13 n.26 (emphasis added).
[50] Ex. C, *Elliott* Order.
[51] *Id.* at 9.
[52] *Id.* at 8 n.24.
[53] Ex. M, Aug. 18, 2014 Bankr. Hr'g. Tr. at 81-83 (*Phillips* case).

Most recently, the *Sesay* plaintiffs asserted claims "concern[ing] model years ranging from 2003 to 2011," including used Old GM vehicles acquired after the Sale date and vehicles manufactured by New GM.[54]   Specifically, Sesay alleged that he owned "a 2007 Chevrolet Impala, purchased from a friend on December 20, 2012," while his co-plaintiff, Yearwood, purchased a 2010 Chevrolet Cobalt manufactured by New GM.[55]   The Bankruptcy Court found that both claims fell "within the express coverage of the Sale Order," holding that "this Court's Sale Order . . . *did* impose an unequivocal injunction against litigation against New GM involving vehicles manufactured by Old GM or involving Old GM parts."[56]   And again, even though the complaint included New GM vehicle claims, those claims too were stayed pending the Bankruptcy Court's ruling on the Motions to Enforce:

> New GM earlier made the point, with which I agreed in each of *Phaneuf* and *Elliott*, that litigants with vehicles and parts manufactured before the 363 Sale were already bound by the Sale Order.  But I additionally found, in each [case], that New GM could also satisfy the requirements for a preliminary injunction barring the plaintiffs in those actions from proceeding with their suits until I addressed the issues with respect to all of the other plaintiff groups at the same time . . . and there is no basis for me to modify my earlier rulings in this regard.[57]

In sum, the Bankruptcy Court repeatedly has ruled on the precise issue presented here: whether a complaint asserting claims based on used Old GM vehicles acquired after the Sale Date, or based on New GM vehicles comingled in a single complaint with Old GM vehicles, may proceed before the Bankruptcy Court rules on New GM's Motions to Enforce.  In each case, the Bankruptcy Court has been clear and unequivocal that such claims are *not* allowed to proceed until after Judge Gerber has ruled.  The same result should hold here.

---

[54]   Ex. B, *Sesay* Order at 6.
[55]   *Sesay v. Gen. Motors LLC*, 1:14-cv-06018-JMF, ECF No. 1, ¶¶ 1, 3 (S.D.N.Y. 2014).
[56]   Ex. B, *Sesay* Order at 17.
[57]   *Id.* at 10.

## ARGUMENT

This Court is *not* asked to decide whether claims in the Post-Sale Complaint (or even the Pre-Sale Complaint) are barred by the Sale Order and Injunction. As this Court recognized previously, the Motions to Enforce are already pending (and are currently being briefed) in the Bankruptcy Court, and the Bankruptcy Court has jurisdiction in the first instance to make such determinations.[58] The issue here is only whether any meaningful motion practice regarding the Post-Sale Complaint can or should go forward at this time, given that the substantial majority of the purported class plaintiffs and the claims alleged in the Post-Sale Complaint are subject to New GM's Motions to Enforce. It should not.

## I.  ALL BRIEFING SHOULD BE STAYED PURSUANT TO PRIOR BANKRUPTCY COURT RULINGS.

Pursuant to the Bankruptcy Court's rulings in *Phaneuf, Elliott, Phillips,* and *Sesay,* all briefing should be stayed with respect to the 59 sets of named plaintiffs in the Post-Sale Complaint whose vehicles were or might have been manufactured by Old GM.[59] With respect to such plaintiffs, the Bankruptcy Court has held that the "Sale Order . . . *did* impose an unequivocal injunction against litigation against New GM involving vehicles manufactured by Old GM or involving Old GM parts."[60] Moreover, under these same decisions, the claims of the

---

[58]  *See* MDL Order No. 1, ECF No. 19; Ex. C, *Elliott* Order at 2-3 ("And as to that single exception—their claim that I don't have subject matter jurisdiction to construe and enforce the Sale Order in this case—their contention is frivolous, disregarding controlling decisions of the United States Supreme Court and Second Circuit; district court authority in this District; four earlier decisions that I personally have issued; three decisions by other bankruptcy judges in the Southern District of New York, and the leading treatise in the area, *Collier*) (footnotes containing case authority omitted); *see also Trusky v. Gen. Motors Co.*, No. 09-50026-reg, 2013 WL 620281 ("I plainly have jurisdiction to construe my own orders"); *Castillo v. Gen. Motors Co.*, No. 09-50026-reg, 2012 WL 1339496 (Bankr. S.D.N.Y. 2010); *see also In re Motors Liquidation Co.*, 2011 WL 6119664 *see also, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) (bankruptcy court "plainly [has] jurisdiction to interpret and enforce its own prior orders"); *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.").

[59]  Ex. D, *Phaneuf* Order; Ex. C, *Elliott* Order; Ex. M, Aug. 18, 2014 Bankr. Hr'g. Tr. at 81-83 (*Phillips* case); Ex. B, *Sesay* Order.

[60]  Ex. B, *Sesay* Order at 17.

9 remaining sets of plaintiffs with New GM vehicles likewise should be stayed, both because they sue "under a common complaint" with plaintiffs whose claims arise from Old GM vehicles and because these claims too rely on Old GM conduct and, therefore, may be impacted by the Bankruptcy Court's decision on the Motions to Enforce.[61]

Lead Counsel argue that "[a]s to cars made by Old GM but purchased during New GM's existence, these claims are based on New GM's conduct and are not subject to the jurisdiction of the Bankruptcy Court."[62]  As a starting point, the argument is factually wrong.  The 692-page, 3,200-paragraph[63] "Post-Sale" Complaint is replete with allegations concerning the alleged conduct of Old GM.[64]  Moreover, Lead Counsel offer no explanation for why plaintiffs who purchased Old GM vehicles in third-party used car transactions after the Sale Date should be any different from (or better positioned than) plaintiffs who are the original owners of Old GM vehicles.  Lead Counsel admit that if Plaintiff *A* bought a new Chevrolet Cobalt from an Old GM dealer in 2005, his claim should be deferred.  But Lead Counsel assert that if Plaintiff *A* sells that same car to Plaintiff *B* in 2010, Plaintiff *B*'s claims should go forward.  This position makes no sense and New GM has argued in its opening brief to the Bankruptcy Court that this is nothing more than a dressed-up successor liability claim that is barred by the Sale Order and Injunction.[65]

---

[61]   Ex. D, *Phaneuf* Order at 12-13 and n.26; Ex. C, *Elliott* Order at 8.

[62]   Nov. 1, 2014 Agenda Ltr., ECF No. 381, at 3 (Nov. 1, 2014).

[63]   The size of the Post-Sale Complaint—and of the only slightly shorter Pre-Sale Complaint—violates Federal Rule of Procedure 8(a).  *See, e.g., Blakely v. Wells,* 209 F. App'x 18, 20 (2d Cir. 2006) ("The District Court acted within the bounds of permissible discretion in dismissing the second amended complaint for noncompliance with Rule 8(a). The pleading, which spanned 57 pages and contained 597 numbered paragraphs, was far from short or plain."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("The Amended Complaint in the present case spans 98 pages and 367 separate paragraphs. The prolix, discursive, [and] redundant . . . assertions contained therein are improper.").  Because the Bankruptcy Court's ruling ultimately may bar many of the claims asserted in the Post-Sale Complaint, briefing this threshold issue before the Bankruptcy Court rules likewise would not be an efficient use of the parties' or the Court's resources at this time.

[64]   *See* note 27, *supra.*

[65]   Ex. E, Opening Brief by General Motors LLC On Threshold Issues Concerning Its Motions to Enforce the Sale Order and Injunction, No. 09-50026-reg, ECF No. 12981, at 66 (Bankr. S.D.N.Y. Nov. 5, 2014). Because the claims and damages theories of even the 9 plaintiffs with New GM vehicles rely on Old GM conduct, those claims too may need to be further modified based on the Bankruptcy Court's ruling on the Motions to Enforce.

To the extent Lead Counsel have an argument to the contrary, the proper place for it to be resolved is in the Bankruptcy Court.

The Bankruptcy Court likewise has flatly rejected, time and again, Lead Counsel's argument that claims "based on New GM's conduct . . . are not subject to the jurisdiction of the Bankruptcy Court."[66] In *Phaneuf*, the plaintiffs argued that they were "asserting only post-sale claims" against New GM.[67] Nevertheless, the Bankruptcy Court held that the plaintiffs "repeatedly rely on alleged conduct of Old GM . . . [and] I do find the Phaneuf Plaintiffs' efforts to merge pre- and post-sale acts, and to place reliance on the alleged conduct of Old GM . . . [established] the threshold applicability of the Sale Order."[68] So too in *Elliott*, the Bankruptcy Court found that "while the Elliott Plaintiffs' brief disclaims reliance on Old GM acts, their complaint doesn't bear that out."[69] And again in *Sesay*, the plaintiff argued that he "asserts no claim whatsoever in connection with his [Old GM vehicle purchase], whether sounding in warranty, strict product liability, fraud, consumer protection, negligence or any other claim . . . [t]he gravamen of each claim the *Sesay* Plaintiffs *do* assert is that, since October 19, 2009, [New GM] knew but failed to disclose and actively concealed that their cars . . . are unsafe to drive."[70] As in *Phaneuf* and *Elliott*, the Bankruptcy Court held that "the Sesay Plaintiffs' allegations concerned model years ranging from 2003 to 2011—addressing, significantly, both Old GM and New GM vehicles, and bringing their claims within the express coverage of the Sale Order."[71]

Lastly, Lead Counsel mischaracterize the Bankruptcy Court's orders when they argue that the "Bankruptcy Court's primary motivation . . . was to prevent any of the ignition switch

---

[66] ECF No. 376, at 3.
[67] Ex. D, *Phaneuf* Order at 7.
[68] *Id.* at 13-15.
[69] Ex. C, *Elliott* Order at 8.
[70] *Sesay v. Gen. Motors Corp.*, No. 09-50026-reg, ECF No. 12883, at 8 (Bankr. S.D.N.Y. Sept. 5, 2014).
[71] Ex. B, *Sesay* Order at 6.

cases from 'cutting to the front of the line' ahead of the other ignition switch cases."[72]  At that time, Lead Counsel and the overwhelming majority of plaintiffs already had stipulated to stay their cases pending the Bankruptcy Court's decision on the Motions to Enforce, and those remarks merely reflected the Bankruptcy Court's concern that no single plaintiff gain an unfair advantage over other plaintiffs who had agreed to await the Bankruptcy Court's ruling on the Motions to Enforce.[73]  In fact, the Bankruptcy Court was addressing whether *any* claims—individually or in the aggregate—should proceed before the Bankruptcy Court ruled on the pending Motions to Enforce, and made a *prima facie* determination that they should not.[74]

In sum, the Bankruptcy Court expressly has held that *all* economic loss claims arising from a complaint involving Old GM vehicles (subject to the narrow categories of Assumed Liabilities, which are not implicated in the Post-Sale Complaint) should be stayed, regardless of when such vehicles were acquired, as should claims with respect to New GM vehicles comingled with Old GM vehicles in a single pleading.  These claims are precisely the type that Lead Counsel have chosen to allege in the Post-Sale Complaint, rather than limiting that Complaint to vehicles manufactured by New GM.  Accordingly, any resulting delay is of Lead Counsel's own making.  Consistent with the Bankruptcy Court's rulings, all briefing should be deferred until the Bankruptcy Court rules on the Motions to Enforce.

---

[72]  Ex. F, Nov. 1, 2014 Agenda Ltr., ECF No. 381 at 3.

[73]  When *Phaneuf* was decided, 87 out of 88 groups of plaintiffs had agreed to stay their cases. Ex. B, *Sesay* Order at 2 n.2.  In *Sesay,* the Bankruptcy Court reasoned that "the number has now swollen to over 100," but "[t]he Sesay Plaintiffs are one of only seven plaintiff groups to object to staying the individual proceedings." *Id.* at 2-3.

[74]  Ex. D, *Phaneuf* Order at 7 ("their complaint (apparently intentionally) merges pre- and post-sale conduct by Old GM and New GM . . . [and] seeks to impose liability on New GM based on Old GM's pre-Sale acts.  Efforts of that character are expressly forbidden by the two [Sale Order] injunctive provisions").

II.    **PROCEEDING WITH BRIEFING ON ANY SUBSET OF DISCRETE ISSUES OR CLAIMS IS IMPRACTICAL.**

This Court has directed the parties to brief whether "there are any discrete issues on which motion practice can or should proceed with respect to the Post-Sale Consolidated Complaint."[75] In particular, the Court has inquired whether briefing might go forward with respect to "choice-of-law issues."[76] Separately, Lead Counsel propose "that New GM should respond to the complaint in a few key bellwether states, such as California, D.C., and Oklahoma, where the plaintiff purchased a car manufactured and sold by New GM."[77] Given the structure of the Post-Sale Complaint, briefing any of these issues now is impractical and inefficient, as such issues likely would need to be briefed anew once the Bankruptcy Court decides the Motions to Enforce.

A.    **Choice-Of-Law Briefing Should Await the Bankruptcy Court's Ruling.**

When "an action is transferred as part of an MDL, the [MDL] court applies the choice of law rules of the state in which the action first was filed."[78] States vary significantly in the choice-of-law frameworks they use. For example, New York applies the "interests" analysis to choice-of-law questions.[79] Oklahoma employs the "significant relationship" test for tort claims, and for contract claims, applies the law of the place of performance or the place where the contract was made.[80] Michigan applies the "rational reason" test, although the location of the injury and residence of the plaintiff are often determinative.[81] Alabama follows the "traditional" choice-of-law test (*lex loci delicti* and *lex loci contractus*).[82] Moreover, even where states follow

---

[75]    MDL Order No. 22, ECF No. 399 at IV (Nov. 13, 2014).
[76]    Ex. F, Nov. 1, 2014 Agenda Ltr., ECF No. 381, at 7.
[77]    *Id.* at 3.
[78]    *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d at 329-30 (citations omitted).
[79]    *Id.* at 335.
[80]    *Moody v. Ford Motor Co.*, No. 03-0784, 2006 WL 346433, at *1 (N.D. Okla. Feb. 13, 2006).
[81]    *See Harshaw v. Bethany Christian Servs.*, 714 F. Supp. 2d 751, 760-761 (W.D. Mich. 2010).
[82]    *See Fitts v. Minnesota Min. & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991); *Browning Enter., Inc. v. Rex Iron & Mach. Products Co.*, 504 F. Supp. 2d 1217, 1226 (N.D. Ala. 2007).

16

the same general framework, how they apply choice-of-law principles will depend on both the particular claim at issue and each state's unique precedent.[83]

Here, the Post-Sale Complaint alleges that "Michigan law applies nationwide to Plaintiffs' claims for fraudulent concealment, unjust enrichment, breach of the implied warranty of merchantability, and the Magnuson-Moss Warranty Act."[84] New GM disputes plaintiffs' position and submits that the laws of all 50 states will apply once choice-of-law principles are analyzed. Notably, in the *Toyota Unintended Acceleration* MDL, plaintiffs asserted that California choice-of-law principles should apply nationwide, and that those principles dictated the use of California substantive law nationwide. The United States District Court for the Central District of California rejected this argument and held that non-California plaintiffs could not rely on California choice-of-law principles, reasoning that MDL plaintiffs had filed in a range of jurisdictions and that their cases would be returned to the transferor jurisdictions for trial.[85] Similarly, in this MDL, plaintiffs will not be able to rely on a single state's choice-of-law principles in an effort to have Michigan law apply nationwide.

Thus, any determination of substantive law will depend on which states' choice-of-law principles apply, which in turns depends on which plaintiffs named in the Post-Sale Complaint are able to bring claims and the jurisdictions from which those claims arise. If all 68 sets of plaintiffs named in the Post-Sale Complaint are able to bring claims across 50 states, then the choice-of-law principles for each of those 50 jurisdictions would need to be considered.[86] By contrast, if the Bankruptcy Court's decision prohibits all but 9 plaintiffs in 7 jurisdictions from proceeding, then the choice-of-law principles of only those 7 jurisdictions would need to be

---

[83]  *See, e.g.,* cases cited in notes 79-82, *supra.*
[84]  Post-Sale Complaint at ¶ 835.
[85]  785 F. Supp. 2d at 927-932.
[86]  *See, e.g., In re Rezulin Prods. Liab. Litig.,* 390 F. Supp. 2d at 335; *see also Menowitz,* 991 F.2d at 40.

taken into account.[87]   Therefore, knowing what plaintiffs remain after the Bankruptcy Court's

decision is critical to determining which states' choice-of-law principles apply and the resulting

choice-of-law analysis.   As a result, it is impractical to proceed with choice-of-law briefing until

the Bankruptcy Court rules on the Motions to Enforce.[88]

**B.      It Would Be Inappropriate to Brief the Substantive Law of Bellwether States
Until The Bankruptcy Court Rules.**

Lead Counsel suggest "that New GM should respond to the complaint in a few key

bellwether states, such as California, D.C., and Oklahoma, where the plaintiff purchased a car

manufactured and sold by New GM."[89] As a starting point, it is improper for Lead Counsel to

require New GM—and the Court—to parse through a 692-page pleading containing 3,200

enumerated paragraphs and 151 nationwide and alternate state counts in an attempt to identify a

subset of discrete claims that might survive the Bankruptcy Court's forthcoming decision on

New GM's Motions to Enforce the Sale Order and Injunction.   This issue could have been

avoided had Lead Counsel simply done what they promised: file two consolidated master

complaints where "[o]ne will be post bankruptcy sale, one will be pre[-sale]."[90]

---

[87]   *Id. See also In re Toyota Corp.,* 8:10-ml-02151-JVS-FMO (C.D. Cal.), Order Denying Plaintiffs' Mot. for
Application of Cal. Law, ECF No. 1478 (June 8, 2011) (noting far greater complexity of deciding choice-of-law
given "number of claims [], as well as the number of jurisdictions involved (and thus, the number of the potentially
applicable choice-of-law regimes), is exponentially greater" compared to case involving only six jurisdictions).

[88]   The Court also has inquired whether class certification briefing should proceed with respect to the Post-
Sale Complaint. MDL Order No. 22, ECF No. 399, at IV. Because the parties' briefing is intended to address initial
substantive motion practice on the Post-Sale Complaint, class certification briefing is not addressed here in detail.
Nevertheless, for substantially similar reasons, class certification briefing also should not proceed until the
Bankruptcy Court rules. Lead Counsel's putative class definitions for "Nationwide Class," "Nationwide Dealer
Class," and each "Statewide Class" all commingle Old GM and New GM vehicles. Post-Sale Complaint at pp. 256
and 258. Thus, the analyses with respect to each of the class certification factors required by Fed. R. Civ. P.
23(b)(3)—such as predominance, manageability, superiority, commonality, and typicality—may be impacted by
whether 9 sets of putative named plaintiffs (across 7 states) survive New GM's Motions to Enforce, versus 68 sets of
plaintiffs (across 41 jurisdictions).  Moreover, choice-of-law is a critical issue in class certification, and courts
regularly deny certification where the laws of many states would be applied. *See, e.g. In re Bridgestone/Firestone,*
288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal
rules.  Otherwise the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23").

[89]   Ex. F, Nov. 1, 2014 Agenda Ltr., ECF No. 381 at 3.

[90]   Ex. A, Oct. 2, 2014 Hr'g. Tr. at 22-23.

Briefing the substantive law of individual bellwether states suffers from an even more fundamental problem. In each state, Lead Counsel's common law claims are pleaded in the alternative "[i]n the event the Court declines to certify a Nationwide Class under Michigan law."[91] Thus, until choice-of-law issues are decided, any ruling with respect to Lead Counsel's common law claims under the substantive law of individual states necessarily would render an advisory opinion.[92] For the reasons set forth above, choice-of-law issues cannot be decided before the Bankruptcy Court rules. And although the state statutory claims are not pleaded in the alternative, it is difficult to imagine anything more inefficient than briefing a subset of state law claims that would not even complete motion practice for any individual state.[93]

The unilateral selection of three bellwether states in Lead Counsel's initial proposal is also inconsistent with this Court's existing mandate with respect to bellwether selection. As the Court already has held in the personal injury context, bellwether selections should meet two fundamental requirements: (i) "the ultimate goal is obviously to choose a representative sample to enable both sides to get meaningful data to facilitate a global settlement;" and (ii) "both sides

---

[91]    In California, Lead Counsel assert claims for Violations of the Consumer Legal Remedies Act (Count I), Violation of the California Unfair Competition Law (Count II), Fraud by Concealment (Count III), Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty (Count IV), and Negligent Failure to Recall (Count V). Post-Sale Complaint at pp. 296-311. The Fraud by Concealment and Song-Beverly claims expressly are brought "in the event the Court declines to certify a Nationwide Class under Michigan Law." *Id.* at ¶¶ 1133, 1147. In Washington, D.C., Lead Counsel assert claims for violation of the Consumer Protection Procedures Act (Count I), Fraud by Concealment (Count II), and Breach of Implied Warranty (Count III). *Id.* at pp. 338-345. The Fraud by Concealment (Count II) and Breach of Implied Warranty (Count III) claims are expressly brought "in the event the Court declines to certify a Nationwide Class under Michigan law." *Id.* at ¶¶ 1341, 1355. In Oklahoma, Lead Counsel assert claims for violation of Oklahoma Consumer Protection Act (Count I), Fraud by Concealment (Count II), and Breach of Implied Warranty (Count III). *Id.* at pp. 568-577. The Fraud by Concealment (Count II) and Breach of Implied Warranty (Count III) claims are expressly brought "in the event the Court declines to certify a Nationwide Class under Michigan law." *Id.* at ¶¶ 2591, 2605.

[92]    *See, e.g., Freedom Party of New York v. New York State Bd. of Elections,* 77 F.3d 660, 663 (2d Cir. 1996) (noting "the well-settled rule against issuing advisory opinions.")

[93]    Further, with respect to California and Oklahoma, the Post-Sale Complaint separately includes claims with respect to both plaintiffs who assert Old GM vehicle claims and those whose claims rely on vehicles manufactured by New GM. Post-Sale Complaint ¶¶ 33-37, 76-80. Whether Lead Counsel adequately state a claim for purposes of a motion to dismiss under California and Oklahoma statutory law cannot be decided in the abstract—it must be tied to the specific claims of particular plaintiffs. Thus, it appears that what Lead Counsel are proposing is that the parties brief California and Oklahoma statutory claims of some named plaintiffs (*i.e.*, those with New GM vehicles) but defer briefing on the exact same laws with respect to other plaintiffs (*i.e.*, those with Old GM vehicles).

should participate in the selection process[].["94]   Neither requirement is met with plaintiffs'

proposal here.   Lead Counsel do not and cannot explain how California, Washington D.C., and

Oklahoma are representative in any respect, least of all in terms of the number of vehicles,

volume of suits, or substantive law.   To the contrary, the only selection criterion for these

proposed bellwethers appears to be whatever remains when most named plaintiffs (*i.e.*, those

with Old GM vehicles) are eliminated.[95]   Until the Bankruptcy Court rules, making clear what

claims, claimants, and jurisdictions are at issue, economic loss bellwether selection and briefing

would be futile.

## CONCLUSION

For all of the foregoing reasons, New GM respectfully requests that this Court defer

briefing on Lead Counsels' Post-Sale Complaint pending a ruling by the Bankruptcy Court on

New GM's Motions to Enforce the Sale Order and Injunction.

Dated: November 25, 2014                                 Respectfully submitted,


                                               /s/ Andrew B. Bloomer, P.C.
                                               Richard C. Godfrey, P.C.
                                               Andrew B. Bloomer, P.C.
                                               KIRKLAND & ELLIS LLP
                                               300 North LaSalle St
                                               Chicago, IL 60654
                                               Tel:  (312) 862-2000
                                               Fax:  (312) 862-2200
                                               Email: rgodfrey@kirkland.com
                                                          abloomer@kirkland.com

                                               *Attorneys for Defendant General Motors LLC*

---

[94]  Ex. G, Nov. 6, 2014 Hr't. Tr. at 13-14, 50.
[95]  Indeed, the most logical bellwether to test the substantive law of any state would be Michigan, as Lead Counsel argue Michigan law should apply nationwide, and as was done in the *Toyota Unintended Acceleration* MDL, where initial motion practice was aimed at California choice-of-law and California substantive law. 8:10-ml-02151-JVS-FMO, ECF No. 845-2 (C.D. Cal., Mar. 16, 2011).  Here, however, both Michigan named plaintiffs own pre-Sale vehicles and, therefore, may not survive New GM's Motions to Enforce.

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2014, I electronically filed the foregoing Motion using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: /s/ *Andrew B. Bloomer*
Andrew B. Bloomer, P.C.