# **Exhibit 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------x

IN RE:                                            14-MD-2543 (JMF)

GENERAL MOTORS LLC IGNITION          **PLAINTIFFS' BRIEF RE: GENERAL**
SWITCH LITIGATION                    **MOTORS LLC'S OBLIGATION TO**
                                     **ANSWER OR OTHERWISE RESPOND**
*This Document Relates to: Consolidated*   **TO PLAINTIFFS' POST-SALE**
*Complaint Concerning All GM-Branded Vehicles*   **CONSOLIDATED COMPLAINT**
*That Were Acquired July 11, 2000 or Later (MDL*
*ECF No. 345)*

-----------------------------------------------x

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL BACKGROUND ...................................................................................... 3

       A.    The Post-Sale Complaint Brings Claims for which New GM is
             Solely and Directly Liable and Alleges Harms Resulting
             Exclusively from New GM's Conduct ......................................................... 3

       B.    The References to Old GM in the Post-Sale Complaint do Not
             Convert the Direct Claims in the Post-Sale Complaint into
             Successor Liability Claims ......................................................................... 6

III.   ARGUMENT ............................................................................................................... 7

       A.    The Sale Order Does Not Apply to Any of the Claims in the Post-
             Sale Complaint ............................................................................................ 7

       B.    The Bankruptcy Court Does Not Have The Power to Provide New
             GM With Immunity for Its Own Post-Sale Misconduct. .......................... 9

             1.    The Bankruptcy Court would not have jurisdiction to enjoin
                   the Post-Sale Complaint. ................................................................ 10

             2.    Enjoining Post-Sale Claims *before the Post-Sale Plaintiffs
                   had any reason to think they might have future claims
                   against New GM* would be an extreme violation of the
                   Post-Sale Plaintiffs' rights to Due Process. .................................. 12

       C.    Plaintiffs do not bring Successor Liability Claims in the Post-Sale
             Complaint .................................................................................................. 16

       D.    At a Minimum, this Court should Find that the Bankruptcy Sale
             Order does Not Apply to Claims on Behalf of Owners and Lessors
             of Vehicles Manufactured and Sold by New GM ...................................... 18

       E.    Ruling on these Issues Now is Consistent with Judge Gerber's
             Rulings, and Will Promote the Prompt and Efficient Resolution of
             this MDL .................................................................................................... 20

IV.    CONCLUSION .......................................................................................................... 20

010440-11 729524 V1

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re 1031 Tax Grp., LLC,*
    2011 U.S. Dist. LEXIS 33755 (S.D.N.Y. Mar. 29, 2011) ........................................................12

*Cantor v. American Banknote Corp.,*
    2007 WL 3084966 (S.D.N.Y. Oct. 22, 2007) .........................................................................9

*In re Chemtura Corp.,*
    505 B.R. 427 (S.D.N.Y. 2014).............................................................................13, 14, 15

*City of New York v. New York, N.H. & H.R. Co.,*
    344 U.S. 293 (1953).............................................................................................12

*In re Cuyahoga Equip. Corp.,*
    980 F.2d 110 (2d Cir. 1992).....................................................................................10

*In re Grumman Olson Indus.,*
    445 B.R. 243 (Bankr. S.D.N.Y. 2011)..........................................................................14

*In re Grumman Olson Indus.,*
    467 B.R. 694 (S.D.N.Y. 2012).............................................................................13, 14

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004).............................................................................................12

*In re Johns-Manville Corp.,*
    517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem.*
    *Co. v. Bailey,* 557 U.S. 137 (2009) ............................................................................10

*In re Johns-Manville Corp.,*
    600 F.3d 135 (2d Cir. 2010)................................................................................12, 15

*In re Motors Liquidation Co.,*
    513 B.R. 467 (Bankr. S.D.N.Y. 2014)..........................................................................20

*In re Motors Liquidation Co.,*
    514 B.R. 377 (Bankr. S.D.N.Y. 2014)..........................................................................20

*In re Old Carco LLC,*
    492 B.R. 392 (Bankr. S.D.N.Y. 2013)..........................................................................14

*Schwinn Cycling & Fitness Inc. v. Benonis,*
    217 B.R. 790 (N.D. Ill. 1997) ................................................................................14

*In re Waterman S.S. Corp.,*
    157 B.R. 220 (S.D.N.Y. 1993) ........................................................................................ 13, 15

*In re Wood,*
    825 F.2d 90 (5th Cir. 1987) ................................................................................................ 11

*Zerand-Bernal Grp. v. Cox,*
    23 F.3d 159 (7th Cir. 1994) .......................................................................................... 10, 11

## STATUTES

28 U.S.C. § 1334(b) ........................................................................................................................ 10

## OTHER AUTHORITIES

Fed. R. Civ. P. 1 ............................................................................................................................... 3

010440-11 729524 V1

## I.    INTRODUCTION

The efficient prosecution of direct claims against New GM for breaches of its own independent legal obligations should proceed without delay.[1] GM cannot offer any reason to stall, especially given the ongoing safety issues and the staggering number of GM-branded vehicles whose safety is compromised by defects that New GM chose to conceal. The Consolidated Complaint Concerning All GM-Branded Vehicles That Were Acquired July 11, 2009 or Later (the "Post-Sale Complaint") should be litigated in this Article III MDL transferee Court starting now. The Bankruptcy Court's Sale Order[2] does not enjoin any of the claims in the Post-Sale Complaint for three independent reasons. *First,* the Sale Order does not even purport to enjoin the Post-Sale claims. *See infra* at § III.A. and D. *Second,* the Bankruptcy Court would not have jurisdiction to enjoin the claims in the Post-Sale Complaint because the Post-Sale Complaint seeks to hold New GM liable only for post-Sale breaches of its own legal duties, and *not* for Old GM's conduct. *See infra* at III.B.1 and C. *Third,* enjoining the Post-Sale Plaintiffs' claims would violate Due Process since these Plaintiffs acquired their GM-branded vehicles *after* Old GM was defunct and New GM was up and running, and the Post-Sale Plaintiffs could not have suspected that their rights might be affected by the Sale Order. *See infra* at § III.B.2.

GM insists that all Plaintiffs' claims are successor liability claims, but in fact New GM bears responsibility for its independent acts and omissions – including the decisions *New GM* made regarding the concealment of safety defects, and the scope and timing of the recalls. Old GM ceased existence in exclusive possession of crucial facts regarding the defects that were

---

[1] Defendant General Motors LLC is referred to in this brief as both "GM" and "New GM," to distinguish it from General Motors Corporation ("Old GM").

[2] The "Sale Order" is the Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii) Granting Related Relief, entered by the Court on July 5, 2009." A copy of the Sale Order is attached as Exhibit A.

unknown to the government, the public, or to anyone *except* certain leaders and decision makers who transferred to New GM. What New GM did, and failed to do, with that knowledge, and New GM's alleged violation of its corresponding independent legal duties, is the subject matter of this MDL; those issues are presented in most concentrated form in the Post-Sale Complaint, which is unencumbered and should be unimpeded by any proceedings in Old GM's bankruptcy.[3]

While Judge Gerber has declined to rule on the question of whether the Sale Order bars claims predicated exclusively on the post-Sale conduct of New GM, he has done so for administrative reasons, to prevent any one defective ignition switch case from "cutting the line" ahead of others. *See infra* at III.E. That case management rationale no longer applies because the Post-Sale Complaint is *the* operative complaint in this MDL for GM-branded vehicles acquired Post-Sale. Thus this Court can and should reach the question of the propriety of New GM's attempt to delay the litigation of claims arising from New GM's post-Sale breaches of its own legal duties to Plaintiffs. Upon a finding that the Sale Order provides no impediment to the Post-Sale Complaint, the Court should set a schedule for the resolution of that Complaint.

In the alternative, Plaintiffs request that the Court at a minimum allow the Post-Sale Complaint to proceed on behalf of those Plaintiffs who purchased vehicles *manufactured and sold by New GM*. New GM has *already conceded*, as it must, that the Sale Order has no application to such claims.[4] Going forward with those indisputably Post-Sale claims will

---

[3] In the interests of moving forward, and given what Plaintiffs respectfully submit to be the straightforwardness of the issues in the Post-Sale Complaint, Plaintiffs have agreed to await Judge Gerber's rulings before litigating any issues in this Court in connection with the Consolidated Class Action Complaint Against New GM for Recalled Vehicles Manufactured by Old GM and Purchased Before July 11, 2009 ("Pre-Sale Complaint"). However, the Pre-Sale Complaint, like the Post-Sale Complaint, asserts claims against New GM for post-Sale breaches of its own independent legal obligations, *see, e.g.,* Pre-Sale Complaint, ¶¶ 3, 815, 834j, k, 871, and therefore implicates the same Due Process and subject matter jurisdiction concerns as does the Post-Sale Complaint. Unlike the Post-Sale Complaint, however, the Pre-Sale Complaint also pleads successor liability claims. *See, e.g., id.,* ¶¶ 779-815.

[4] *See* May 2, 2014 Hrg. Tr. at 36:24-37:4 (*Groman v. Gen. Motors LLC*, Adv. Pro. No. 14-01929 (REG) (Bankr. S.D.N.Y. 2014) (attached as Exhibit B).

- 2 -

promote the "just, speedy and inexpensive" resolution of this action regardless of Judge Gerber's

rulings on claims concerning vehicles made by Old GM. Fed. R. Civ. P. 1.

Accordingly, Plaintiffs request that this Court order GM to respond to the Post-Sale

Complaint.

## II.    FACTUAL BACKGROUND

### A.    The Post-Sale Complaint Brings Claims for which New GM is Solely and Directly Liable and Alleges Harms Resulting Exclusively from New GM's Conduct

As the Post-Sale Complaint alleges, after the 2009 Old GM bankruptcy, New GM

"repeatedly proclaimed that it was a company committed to innovation, safety and maintaining a

strong brand." ¶ 4.[5] The Complaint provides many examples of New GM's public statements

and marketing of its vehicles as safe, reliable and of high-quality. ¶¶ 100-150. As a result of

New GM's marketing efforts, "[s]ales of all New GM models went up," and the brand "stood

strong in the eyes of consumers." ¶ 5. Indeed, "[a] vehicle made by a reputable manufacturer of

safe and reliable vehicles" is worth more than one made by a subpar manufacturer, ¶ 7, and New

GM successfully branded itself as the former.

In reality, New GM failed to disclose, and affirmatively concealed, a staggering and ever-

growing number of safety defects in GM-branded vehicles—including the ignition switch-related

defects and dozens of other serious defects affecting a total of over 27 million vehicles sold in

the United States. ¶ 7. The Complaint further alleges that:

> The systematic concealment of known defects was deliberate, as
> New GM followed a consistent pattern of endless "investigation"
> and delay each time it became aware of a given defect. Recently
> revealed documents show that New GM valued cost-cutting over
> safety, trained its personnel to *never* use the word "defect," "stall,"
> or other words suggesting that any GM-branded vehicles are
> defective, routinely chose the cheapest part supplier without regard

---

[5] Except where otherwise noted, references to "¶ ___" are to the paragraphs of the Post-Sale Complaint (MDL ECF No. 345).

to safety, and discouraged employees from acting to address safety issues. [¶ 8 (emphasis in original).]

Now the truth has come out, as (i) New GM has belatedly disclosed scores of serious defects affecting GM-branded vehicles in a never-ending series of 2014 recalls affecting over 27 million vehicles (*see* ¶¶ 293-793); (ii) information about New GM's systemic de-valuing of safety and active discouragement of personnel who might otherwise flag safety issues has been publicized in a report by Anton Valukas commissioned by New GM (*see* ¶¶ 151-184); (iii) in a Consent Order with the National Highway Safety Administration ("NHTSA"), New GM admitted that it has violated its legal obligations to promptly disclose the existence of known safety defects, (*see* ¶ 17); and (iv) New GM has taken a steady beating in the press and on the airwaves across the country (*see* ¶¶ 794-815). Plaintiffs allege that, as a result of New GM's fraudulent omissions and extreme mishandling of safety issues, the value of *all* GM-branded vehicles sold on or after July 11, 2009 has diminished. *See, e.g.*, ¶¶ 817-825.

Plaintiffs bring two claims on behalf of a proposed Nationwide Class of persons who own or lease *any* GM-branded vehicle acquired between July 11, 2009 and July 3, 2014: (1) fraudulent concealment (¶¶ 864-877); and (2) Unjust Enrichment (¶¶ 878-883). Plaintiffs also bring claims on behalf of owners or lessors of Defective Ignition Switch Vehicles[6] that were sold or leased as a new vehicle by New GM between July 11, 2009 and July 3, 2014 (the "Ignition Switch Defect Subclass"),[7] including: (1) a Nationwide Ignition Switch Defect Subclass Claim for Breach of Implied Warranty under Michigan law (¶¶ 901-907); (2) Violations of the Magnuson-Moss Warranty Act, on behalf of Ignition Switch Defect Subclass members who are residents of 36 listed States (¶¶ 884-900); and (3) Negligence, on behalf of Ignition

---

[6] The "Defective Ignition Switch Vehicles" include "[m]ore than 13 million GM-branded vehicles" in which "the ignition switch is prone to fail during ordinary and foreseeable driving conditions...." ¶ 200. *See id* at ¶¶ 293-430 (detailing the serial recalls of these vehicles).

[7] *See* ¶ 850 (Defining Ignition Switch Defect Subclass).

Switch Defect Subclass members who are residents of Arkansas, Louisiana, Maryland, and Ohio (¶¶ 908-916). To the extent that the Court declines to apply Michigan law, Plaintiffs bring state-law claims of fraudulent concealment and breach of implied warranty.

Plaintiffs also bring State law class claims under the consumer protection laws of the various States, brought on behalf of all persons within a given State "who purchased or leased a GM-branded vehicle between July 11, 2009 and July 3, 2014 (the "'Affected Vehicles'") and (i) who still own or lease an Affected Vehicle; (ii) who sold an Affected Vehicle on or after February 14, 2014, and/or (iii) purchased or leased an Affected Vehicle that was declared a total loss after an accident on or after February 14, 2014." ¶ 852. In a number of States, the representative Plaintiffs purchased (or may have purchased) vehicles manufactured and sold by New GM:[8] namely, Plaintiff Courtney Williams of Arkansas, who purchased a 2011 Chevrolet Camaro (¶ 30);[9] Plaintiff Randall Pina of California, who purchased a 2011 Chevrolet HHR (¶ 37);[10] Plaintiff Pajja Jackson of the District of Columbia, who purchased a 2011 Buick Regal (¶ 39); Plaintiff Joni Ferden-Precht of Florida, who purchased a 2011 Chevrolet Traverse (¶ 41); Plaintiff Nykea Fox of Georgia, who purchased a 2010 Chevrolet HHR (¶ 42); Plaintiff Charles David Loterbour of Iowa, who purchased a 2010 Chevrolet HHR (¶ 47); Plaintiff Patrick Painter of Illinois, who purchased a 2010 Chevrolet Cobalt (¶ 44); Plaintiff Elizabeth Stewart of Kentucky, who purchased a 2010 Chevrolet Cobalt (¶ 50); Plaintiff Harry Albert of Maryland, who purchased a 2012 Chevrolet Camaro (¶ 53); Plaintiffs Cynthia Hawkins and Ronald Robinson of Missouri, who each purchased 2010 Chevrolets (¶ 61); Plaintiff Gene Reagan of

---

[8] The Plaintiffs who purchased GM-branded vehicles from model/year 2011 or later certainly purchased vehicles manufactured by New GM. Plaintiffs lack information pre-discovery to discern whether particular model/year 2010 vehicles were made by Old or New GM.

[9] Plaintiff Nettleton Auto Sales, Inc. of Arkansas purchased used 2009, 2010, and 2011 Chevrolet HHRS vehicles (¶ 32).

[10] Plaintiffs Anna Andrews, Maria Koppelman and David Padilla of California all purchased 2010 GM-branded vehicles (¶¶ 33-35).

- 5 -

New Jersey, who purchased a 2010 Chevrolet HHR (¶ 66); Plaintiffs Nicole Mason and Dawn

Teft of New York, who each purchased 2010 Chevrolet Cobalts (¶¶ 70, 72); Plaintiffs Bruce and

Denise Wright of Oklahoma, who purchased a 2011 Chevrolet Camaro, and Plaintiff Jennifer

Reeder of Oklahoma, who purchased a 2012 Chevrolet Impala (¶¶ 77-78); Plaintiff Ashlee Hall-

Abbott of Virginia, who purchased a 2014 Chevrolet Silverado (¶ 61); and Plaintiff Michael

Garcia of Washington, who purchased a 2010 Chevrolet Cobalt (¶ 87). These individuals likely

represent millions of consumers whose claims should not be delayed.

As demonstrated above, each claim in the Post-Sale Complaint arises exclusively from

the alleged acts and omissions of New GM in violation of its own independent legal duties.

**B.      The References to Old GM in the Post-Sale Complaint do Not Convert the Direct
         Claims in the Post-Sale Complaint into Successor Liability Claims**

GM has argued that the claims in the Post-Sale Complaint should be enjoined by the Sale

Order's prohibition on "successor liability" claims since the Complaint discusses Old GM.[11]

However, as the Complaint makes clear:

> In setting forth the knowledge of Old GM in connection with the
> ignition switch and other defects set forth herein, Plaintiffs do *not*
> seek to hold New GM liable for the actions of Old GM. Instead,
> the knowledge of Old GM is important and relevant because it is
> *directly attributable* to New GM. In light of its knowledge of the
> ignition switch defects, and the myriad other defects, New GM had
> (and breached) its legal obligations to Plaintiffs and the Class.
> [¶ 209 (emphasis in original).]

The Complaint goes on to point out that New GM's knowledge arises in part

> from the fact that key personnel with knowledge of the defects
> were employed by New GM when Old GM ceased to exist.
> Moreover, many of these employees held managerial and decision
> making authority in Old GM, and accepted similar positions with

---

[11] Although Plaintiffs have not brought successor liability claims in the Post-Sale Complaint, Plaintiffs in no way concede that successor liability claims are in any way barred by the Sale Order. In fact, Plaintiffs assert successor liability claims in the Pre-Sale Complaint. *See, e.g., id.* at ¶¶ 779-815. Plaintiffs' position is that both complaints should go forward, but in the interests of the efficient prosecution of the litigation have agreed to limit the scope of the current round of briefing to the Post-Sale Complaint.

New GM. For example, the design research engineer who was responsible for the rollout of the defective ignition switch in the Saturn Ion was Ray DeGiorgio. Mr. DeGiorgio continued to serve as an engineer at New GM until April 2014, when he was suspended (and ultimately fired) as a result of his involvement in the ignition switch crisis. [¶ 210.]

.... Other Old GM employees who were retained and given decision making authority in New GM include: current CEO Mary T. Barra; director of product investigations Carmen Benavides; Program Engineering Manager Gary Altman; engineer Jim Federico; vice presidents for product safety John Calabrese and Alicia Boler-Davise; vice president of regulatory affairs Michael Robinson; director of product investigations Gay Kent; general counsel and vice president Michael P. Milliken; and in-house product liability lawyer William Kemp. [¶ 211.]

Thus, the Complaint alleges, "on or around the day of its formation as an entity, New GM acquired notice and full knowledge of the facts" set forth in the Post-Sale Complaint. ¶ 93.

The Post-Sale Complaint does not plead any successor liability claims.

## III.   ARGUMENT

### A.   The Sale Order Does Not Apply to Any of the Claims in the Post-Sale Complaint

Even if the Bankruptcy Court had the power to enjoin the claims in the Post-Sale Complaint (which, as discussed in the next section, it does not), the Sale Order does not purport to do so. In arguing otherwise, New GM emphasizes that the Sale Order, which approved the Sale Agreement,[12] divides Old GM's liabilities into two categories: (i) liabilities that New GM agreed to assume (the "Assumed Liabilities"); and (ii) liabilities retained by Old GM (the "Retained Liabilities"). Based on this division, New GM takes the position that unless liabilities to the Post-Sale Class are "Assumed Liabilities," they must necessarily be "Retained Liabilities." But neither the Sale Agreement nor the Sale Order shelter New GM from a *third category* of liabilities: those arising from New GM's own misconduct. A review of the types of claims

---

[12] The "Sale Agreement" is the Amended and Restated Master Sale and Purchase Agreement, dated June 26, 2009 (attached as Exhibit C).

010440-11 729524 V1

specifically identified as Retained Liabilities makes clear that only claims arising from Old

GM's breaches or violations of its pre-Sale obligations are covered by the Sale Order. These

liabilities include:

i.    Liabilities of Old GM "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." Sale Agreement § 2.3(b)(xvi); *see also id.* at § 6.15. ***This does not bar any claims based on obligations of New GM that arise independent of Old GM's obligations***;

ii.    Liabilities of Old GM "to third parties for Claims based upon Contract, tort or any other basis." *Id.* at § 2.3(b)(xi). ***This does not bar claims predicated on New GM's own contracts, tortious acts or other conduct***; and

iii.    Claims based on the doctrine of "successor liability." Sale Order and Injunction, ¶ 46. ***This does not bar any claims asserting the direct, non-derivative liability of New GM.***

New GM cannot escape liability for its own misconduct simply because the claim could

not have arisen in the absence of ownership of an Old GM vehicle. Instead, each claim asserted

on behalf of the Post-Sale Class must be examined to determine whether the asserted liability is

direct or derivative. Indeed, this is precisely why New GM should be made to answer the Post-

Sale Complaint or move to dismiss—to test the viability of Plaintiffs' claims against New GM.

Once again, an examination of the Post-Sale Complaint demonstrates that each claim

asserted is based on New GM's conduct. *See* ¶¶ 864-3200. First, claims asserted by members of

the Post-Sale Class who purchased vehicles from New GM are rooted in New GM's conduct.

Second, Post-Sale Class claims for violation of deceptive trade and consumer protection statutes,

fraudulent concealment, and unjust enrichment are predicated on New GM's independent

statutory and common law duties. *See, e.g.,* ¶¶ 870, 880-889, 920-923. The Post-Sale Complaint

asserts that New GM violated these duties through a campaign of deception, which induced Post-

Sale purchasers to associate the GM brand with safety and led them to acquire overpriced, unsafe

GM-branded vehicles while New GM benefitted from avoiding and delaying the cost of a recall.
*See, e.g.,* ¶¶ 866-869, 871, 874, 880-881, 925-939. New GM's actions eroded consumer trust,
stigmatized the brand, and caused the value of GM-branded vehicles to plummet. *See* ¶¶ 794-
825. Thus, the harms to the Post-Sale Plaintiffs were caused by New GM's violation of its
independent obligations. New GM is not shielded from liability by the Sale Order.

**B.     The Bankruptcy Court Does Not Have The Power to Provide New GM With
         Immunity for Its Own Post-Sale Misconduct.**

        Even if the Sale Order had expressly purported to grant New GM immunity from claims
arising from New GM's post-Sale breaches of its own independent legal obligations, GM's
arguments would still fail.

        Contrary to GM's suggestion, a bankruptcy court does not have the authority to provide a
non-debtor (such as GM) with immunity from liability for post-bankruptcy breaches of its own
independent legal obligations. In fact, the Bankruptcy Court lacks subject matter jurisdiction
over claims by third parties (the Post-Sale Plaintiffs) against a non-debtor (New GM) based on
the non-debtor's post-sale misconduct. Moreover, it would be an extreme and unprecedented
violation of the Post-Sale Plaintiffs' Due Process rights to find their claims enjoined by the Sale
Order without notice and an opportunity to be heard—all *before* those claims even arose, and
before the Post-Sale Plaintiffs could have had any reason to think that they might have future
claims against New GM (especially claims that might be enjoined before they arose). It is
therefore not even necessary for this Court to interpret the Sale Order to find that it cannot bar
the Post-Sale Complaint. *See, e.g., Cantor v. American Banknote Corp.*, 2007 WL 3084966, at
*4 (S.D.N.Y. Oct. 22, 2007) (bankruptcy jurisdiction not invoked where "interpretation [of the
Reorganization Plan] is not, in fact, necessary").

1.    **The Bankruptcy Court would not have jurisdiction to enjoin the Post-Sale Complaint.**

While a bankruptcy court assuredly has jurisdiction to interpret and enforce its own § 363 sale orders, that ancillary jurisdiction exists only to the extent that the court has the jurisdiction to enter the § 363 order itself. *See Zerand-Bernal Grp. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) (affirming the bankruptcy court's holding that it "lacked jurisdiction" to enjoin a post-§ 363 sale claim against a non-debtor: "[T]he fact that the bankruptcy court, in the order approving the bankruptcy sale and later in the plan of reorganization, purported expressly to assume jurisdiction … could not confer jurisdiction. A court cannot write its own jurisdictional ticket."); *see also In re Johns-Manville Corp.*, 517 F.3d 52, 65 n.22 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ("The ancillary jurisdiction courts possess to enforce their own orders 'is itself limited by the jurisdictional limits of the order sought to be enforced.'").

Thus the Bankruptcy Court would not have had subject matter jurisdiction to protect the non-debtor New GM by limiting the rights of claimants to bring suit against New GM for New GM's own post-Sale misconduct in breach of New GM's own independent legal duties. Subject matter jurisdiction of bankruptcy courts is limited to "civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). Because the Post-Sale Plaintiffs' claims are based solely on the non-debtor New GM's post-sale conduct, the claims cannot be said to "arise in" or "under" Title 11. *See Zerand*, 23 F.3d at 162 ("arising under" jurisdiction "is limited to questions that arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor"). And the Post-Sale claims are not "related to" Title 11, since the outcome of the Post-Sale litigation can have no conceivable effect on the bankrupt estate. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114

- 10 -

(2d Cir. 1992). *See generally In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) ("For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', Title 11…. [I]t is necessary only to determine whether a matter is at least 'related to' the bankruptcy.").

The Post-Sale Complaint is not "related to" the bankruptcy because it cannot possibly have any effect on the estate. *See Zerand*, 23 F.3d at 162 (finding no bankruptcy jurisdiction over products liability suit against purchaser of debtor's assets because the "claim [was] neither by nor against the debtor"). This Court should reject GM's argument that it should get immunity for its own Post-Sale misconduct since anti-suit injunctions *always* impact the debtor's estate because immunity for the non-debtor increases the value of the estate. As the *Zerand* court reasoned in response to the argument that "the price received in a bankruptcy sale will be lower if a court is free to disregard a condition in the sale agreement enjoining claims against the purchaser based on the seller's misconduct," this argument "proves too much":

> It implies, what no one believes, that by virtue of the arising-under jurisdiction a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale in order to maximize the sale price; more, that the court could in effect immunize such buyers from all state and federal laws that might reduce the value of the assets bought from the bankrupt[.][13]

There is no sound reason to encourage non-debtors to pay a purchase price in a § 363 sale that reflects a belief that they are forever immunized from liability for breaches of their *own* independent legal duties. Courts should not provide such an "incentive to enter bankruptcy for reasons that have nothing to do with the purposes of bankruptcy law." *Id.*

---

[13] *Zerand*, 23 F.3d at 163 (citation omitted).

- 11 -

Thus, as the Second Circuit reiterated in *In re Johns-Manville Corp.*, 600 F.3d 135, 153 (2d Cir. 2010), bankruptcy courts do not have jurisdiction to enjoin "claims against non-debtor third parties" where those claims are based on the non-derivative misconduct of the non-debtor and the claims do not impact the bankruptcy estate. *See also, e.g., In re 1031 Tax Grp., LLC*, 2011 U.S. Dist. LEXIS 33755, at *7 (S.D.N.Y. Mar. 29, 2011) ("federal courts are without jurisdiction to enjoin actions against third-parties not in bankruptcy when those actions are premised upon an 'independent legal duty'"). Here, again, Plaintiffs' claims are based on New GM's fraudulent concealment of the scores of defects plaguing GM-branded vehicles and its culture which systematically devalued safety, and New GM's misrepresentations concerning the safety and reliability of GM-branded vehicles—all in violation of New GM's independent legal duties. The Bankruptcy Court simply did not have jurisdiction to enjoin such claims.

Accordingly, to the extent GM claims that the Sale Order bars the claims in the Post-Sale Complaint, GM asks Judge Gerber to exercise jurisdiction that he does not have. This Court therefore can and should find that the Sale Order cannot bar the claims in the Post-Sale Complaint, and need not wait for Judge Gerber to resolve the question.

2.   **Enjoining Post-Sale Claims** *before the Post-Sale Plaintiffs had any reason to think they might have future claims against New GM* **would be an extreme violation of the Post-Sale Plaintiffs' rights to Due Process.**

The core purpose of Due Process is well-known: "Parties whose rights are to be affected are entitled to be heard." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004). This requirement embodies a "basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights." *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297 (1953). As this Court has stated, "[C]ourts have long recognized that bankruptcy proceedings must comply with the strictures of the Due Process Clause, and that a discharge will not operate against claimants who were not provided with constitutionally adequate notice of the

proceedings." *In re Chemtura Corp.*, 505 B.R. 427, 430 (S.D.N.Y. 2014) (Furman, J.) (citing *In re Grumman Olson Indus.*, 467 B.R. 694, 706-07 (S.D.N.Y. 2012)). Here, where the Post-Sale Plaintiffs did not acquire their GM-branded vehicles until after the Sale Order was entered, and they had no notice either that they might have future claims or that their future claims were going to be affected by the Sale Order, their claims cannot be enjoined by the Sale Order consistent with Due Process.

It is a violation of the Due Process Clause to enforce a § 363 sale order against "the state law claims of third parties" where "no injury was caused until after the bankruptcy[.]" *In re Grumman Olson Indus.*, 467 B.R. at 696; *accord, e.g., In re Waterman S.S. Corp.*, 157 B.R. 220 (S.D.N.Y. 1993). The Post-Sale Plaintiffs all purchased their vehicles after the Sale Order, and suffered injuries in that they either overpaid for their GM-branded vehicles, or the value of their vehicles diminished as the result of New GM's fraudulent concealment of the scores of defects plaguing GM-branded vehicles arising from a culture that systematically devalued safety, and New GM's misrepresentations concerning the safety and reliability of GM-branded vehicles. *It is beyond dispute that these particular Plaintiffs all suffered their injuries after the bankruptcy, and none of them could have had any claim prior to the bankruptcy.*

In *Grumman*, because the future claimants did not receive adequate notice, the court refused to enforce a § 363 sale order barring personal injury claims under a state-law successor liability theory. 467 B.R. at 696. When the plaintiffs sued the § 363 purchaser for injuries suffered after the sale as a result of a defective vehicle manufactured by the debtor before the sale, the § 363 purchaser sought to enjoin the plaintiffs' suit. *Id.* at 697-98. The bankruptcy court held that the § 363 sale order did not bar plaintiffs' claim, since, "for reasons of practicality or due process, or both, ... a person injured after the sale (or confirmation) by a defective

- 13 -

product manufactured and sold prior to the bankruptcy does not hold a 'claim' in the bankruptcy case and *is not affected by either the § 363(f) sale order or the discharge under 11 U.S.C. § 1141(d)*." *In re Grumman Olson Indus.*, 445 B.R. 243, 254 (Bankr. S.D.N.Y. 2011) (emphasis added).[14] *See also Schwinn Cycling & Fitness Inc. v. Benonis*, 217 B.R. 790, 797 (N.D. Ill. 1997) (state law claims of persons who did not have claims at the time of bankruptcy proceedings could not be extinguished by a § 363 sale order because that would "deny them of their rights to due process"). Judge Oetken affirmed the Bankruptcy Court's ruling in *Grumman*, holding that "[b]ecause parties holding future claims cannot possibly be identified and, thus, cannot be provided notice of the bankruptcy, courts consistently hold that, for due process reasons, their claims cannot be discharged by the bankruptcy courts' orders." 467 B.R. at 707.

Plaintiffs anticipate that GM will rely on this Court's order in *Chemtura* to support the proposition that future claims can be enjoined by a bankruptcy court. But *Chemtura* is easily distinguishable. There, the bankruptcy court authorized a publication notice program through which unidentifiable tort plaintiffs who had been exposed to diacetyl, a toxic chemical manufactured by Chemtura, were notified of the bar date. 505 B.R. at 429. Later, tort plaintiffs claiming injury from diacetyl exposure that manifested after the bar date sought to bring actions

---

[14] In *In re Old Carco LLC*, 492 B.R. 392, 402-03 (Bankr. S.D.N.Y. 2013), the Bankruptcy Court held that a § 363 sale order was applicable to plaintiffs who bought Old Chrysler vehicles with a design defect post-sale. The court relied on the fact that Old Chrysler "had already issued at least two and possibly three recall notices" for the defect before the vehicles were purchased. *Id.* at 403. Thus, it was within plaintiffs' contemplation that the cars would need repair. *See id.* Here, Old GM and New GM concealed the defects for years and, as a result, Plaintiffs had no notice of their claims. Moreover, the court in *Old Carco* acknowledged that even if the sale order was applicable to the plaintiffs, it "obviously does not bar claims concerning vehicles manufactured or sold by New Chrysler after the closing *or* injuries resulting from the breach of any duties that arose under non-bankruptcy law after the closing." *In re Old Carco*, 492 B.R. at 395 (emphasis added). All of the claims in the Post-Sale Complaint result from New GM's breach of duties under non-bankruptcy law after the closing, and many of the Plaintiffs' vehicles were manufactured or sold by New GM after the Sale Order.

- 14 -

against the reorganized debtor on the grounds that their Due Process rights would be violated by enforcing the discharge injunction against them. *Id.* at 429-30. In upholding the sufficiency of publication notice, this Court stressed that the notice explained not only that Chemtura had manufactured diacetyl but that any person who had been exposed to the chemical "may have a claim under various legal theories for damages." *Id.* at 431. Accordingly, potential future claimants "could have anticipated that their substantive rights might be affected by the Bar Date and taken steps ... to protect their rights." *Id.* Here, in contrast, Old GM's published notices did not disclose that *New GM* devalued safety, concealed known defects, and made fraudulent misrepresentations, let alone that future buyers of GM-branded vehicles "may have a claim under various legal theories" against New GM. *Id.* at 429. *See also, e.g., In re Waterman S.S. Corp.*, 157 B.R. at 222 ("potential future claims of those who had not manifested any detectable signs of disease when notice of the bar date was given, were not discharged in the bankruptcy proceeding"); *Johns-Manville*, 600 F.3d at 158 (an insurer could not be bound by bankruptcy court's orders where "even if [the insurer] received the Notice document, it could not have anticipated ... that its ... claims ... would be enjoined").

Finally, the cases GM will likely rely on, and those that it has cited to date, are factually distinguishable from the circumstances of this MDL in a profound and pivotal way: none involves ongoing (and years-delayed) recalls of millions of vehicles to correct an ongoing threat to the lives and safety of the motoring public, and reflects decisions made exclusively by a non-debtor. None involves an MDL created specifically to facilitate the efficient and expeditions discovery and management of such claims under the independent statutory authority of 28 U.S.C. § 1407, *et seq.*, and none involves a scenario in which delay has, and will continue to have, safety consequences for millions.

In short, consistent with Due Process, the Sale Order could not provide New GM with

immunity from the claims in the Post-Sale Complaint.

**C.      Plaintiffs do not bring Successor Liability Claims in the Post-Sale Complaint**

In briefing before Judge Gerber, among GM's primary arguments is that the Sale Order

enjoins claims "predicated on a successor liability theory."[15]  Specifically, GM's argument on

why the Sale Order bars the claims in the Post-Sale Complaint, as set forth in its recent

bankruptcy filing, is as follows:

> [T]he alleged loss of value to New GM-sold vehicles based on the
> recall of 27 million vehicles (*see* Post-Sale Consolidated
> Complaint, ¶ 3), a substantial number of which were manufactured
> by Old GM between 1997 and 2009 (*see id.* at ¶ 192).  A damage
> calculation against New GM predicated on Old GM vehicles and
> parts, which does not relate to Assumed Liabilities, is barred by the
> Sale Order and Injunction.  That type of damage calculation is
> predicated on a successor liability theory which is barred by the
> Sale Order and Injunction.

> [R]emedies, such as punitive damages, based in large part, on the
> conduct of Old GM.  The Post-Sale Consolidated Complaint
> incorporates by reference all of the paragraphs which deal with Old
> GM events that took place before the 363 Sale.  Essentially,
> Plaintiffs are basing their damage demand, in large part, on Old
> GM's conduct, which is prohibited by the Sale Order and
> Injunction.[16]

In other words, aware that Plaintiffs have not actually brought successor liability claims, GM

nonetheless argues that the Post-Sale Complaint "essentially" seeks damages based on the

conduct of Old GM.  GM is simply wrong.[17]

---

[15] GM Threshold Issues Br. at 58 (Exhibit D).

[16] *Id.*

[17] Although not asserted in the Post-Sale Complaint, the Post-Sale Class could plead claims against New GM as
successor to Old GM without running afoul of the Sale Order.  Members of the Post-Sale Class who purchased used
Old GM cars during the Post-Sale Period were future claimants whose identities were not ascertainable at the time
of the Sale.  Principles of due process pertaining prohibit the discharge or bar of their future claims against the
debtor or its successor.  *See supra* at 13 (quoting *Grumman Olson Indus.*, 467 B.R. at 696).

- 16 -

As the Complaint explains, the information about Old GM and Old GM vehicles is *not* provided in an effort to hold New GM liable for the actions of Old GM.[18] ¶ 209.

> Instead, the knowledge of Old GM is important and relevant because it is *directly attributable* to New GM. In light of its knowledge of the ignition switch defects, and the myriad other defects, New GM had (and breached) its legal obligations to Plaintiffs and the Class. [*Id.* (emphasis in original).]

This is indisputably true, both because of continuity of personnel and New GM's possession of the books and records of Old GM documenting the defects. ¶¶ 210-212. The Post-Sale Complaint seeks to hold New GM liable for its own conduct, based, in part, on the fraudulent concealment of facts it has known from the date of its inception.

Tellingly, in making its argument that Plaintiffs' claims seek damages based on Old GM's conduct, GM *avoids* any discussion of the claims themselves. In fact, the claims very clearly seek only damages caused by New GM's misconduct. *See, e.g.,* ¶ 875 (the value of the Nationwide Class members' "vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues"; ¶ 877 ("New GM's conduct warrants an assessment of punitive damages …"); ¶ 883 ("As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged…"); ¶ 907 ("As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Nationwide Ignition Switch Defect Class have been damaged in an amount to be proven at trial"); ¶ 916 ("As a direct and proximate result of New GM's negligence, Plaintiffs and the other members of the Negligence Subclasses suffered damages"); ¶ 115 ("Under Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek monetary relief against New GM measured as

---

[18] Unlike the Post-Sale Complaint, the Pre-Sale Complaint does assert successor liability claims (in *addition* to direct liability claims). However, in order to seek damages based on the conduct of Old GM, the Pre-Sale Complaint contains detailed successor liability allegations demonstrating that New GM was a mere continuation of Old GM. *See* Pre-Sale Complaint, ¶¶ 779-815.

- 17 -

the diminution of value of their vehicles caused by New GM's violations of the CLRA as alleged

herein."). Of course, there is a mechanism by which New GM can challenge whether Plaintiffs

are merely seeking damages based on Old GM's conduct: by answering the Post-Sale Complaint

or moving to dismiss. If New GM wishes to contest the viability of Plaintiffs' claims, it should

welcome the opportunity to respond to the Complaint.

GM has erroneously characterized the Post-Sale claims as relating only to Old GM

conduct that ended when New GM began. The opposite is true.

**D.      At a Minimum, this Court should Find that the Bankruptcy Sale Order does Not
Apply to Claims on Behalf of Owners and Lessors of Vehicles Manufactured and
Sold by New GM**

In the event the Court declines to rule on the question of whether the Bankruptcy Court

has the authority to enjoin *any* of the claims in the Post-Sale Complaint, Plaintiffs request that, at

a minimum, the Court allow the Post-Sale Complaint to proceed on behalf of Plaintiffs who

purchased vehicles manufactured and sold by New GM. Because the claims do *not* concern

vehicles made by Old GM, the Sale Order cannot be read to bar the Post-Sale Complaint's

claims on behalf of purchasers of vehicles manufactured by New GM.

New GM has argued that it is has no liability for Post-Sale claims under paragraph 46 of

the Sale Order, which reads as follows:

> Except for the Assumed Liabilities expressly set forth in the [Sale
> Agreement]....[New GM]... shall [not] have any liability for *any
> claim that arose prior to the Closing Date, relates to the
> production of vehicles prior to the Closing Date, or otherwise is
> assertable against [Old GM] . . . prior to the Closing Date.....*
> Without limiting the foregoing, *[New GM] shall not have any
> successor, transferee, derivative, or vicarious liabilities of any
> kind* or character for any claims, including, but not limited to,
> under any theory of successor or transferee liability, de facto
> merger or continuity... and products ... liability, whether known or
> unknown as of the Closing, now existing or hereafter arising,
> asserted or unasserted, fixed or contingent, liquidated or
> unliquidated.

- 18 -

Sale Order ¶ 46. Plaintiffs' claims did not arise prior to the Closing, as the conduct of New GM

and the resultant diminution of value about which Plaintiff complains had not yet occurred, and

Plaintiffs did not even own their New GM vehicles. Nor do the claims on behalf of purchasers

or lessees of vehicles manufactured by New GM "relate[] to the production of vehicles prior to

the Closing Date," as Plaintiffs seek the diminution of value in cars made and sold by New GM

*after* the Closing Date. Finally, Plaintiffs' claims were never "assertable against Old GM," as

they are based on the conduct of New GM and did not arise until *after* Old GM ceased to exist.

Paragraph 46 cannot be read to bar Plaintiffs' claims.

New GM also asserts protection from claims based on Old GM's conduct through

paragraph 8 of the Sale Order:

> *[A]ll persons and entities…holding* liens, claims and
> encumbrances, and other interests of any kind or nature
> whatsoever, including *rights or claims based on any successor or
> transferee liability, against [Old GM]* or the Purchased Assets
> (whether legal or equitable, secured or unsecured, matured or
> unmatured, contingent or noncontingent, senior or subordinated),
> *arising under or in any way relating to [Old GM], the Purchased
> Assets, the operation of the Purchased Assets prior to the Closing
> . . . are forever barred, estopped, and permanently enjoined . . .
> from asserting against [New GM] . . . such persons' or entities'
> liens, claims, encumbrances, and other interests, including rights
> or claims based on any successor or transferee liability.*

Sale Order ¶ 8 (emphasis added).

The claims of the Post-Sale Plaintiffs who purchased vehicles manufactured by New GM

do not "arise under" or "relate to" the conduct of Old GM. Rather, they seek to hold New GM

liable solely for its own deceptive acts, omissions, and fraudulent concealment in connection

with the sale of vehicles manufactured and sold by New GM.

- 19 -

E.    **Ruling on these Issues Now is Consistent with Judge Gerber's Rulings, and Will Promote the Prompt and Efficient Resolution of this MDL**

GM has suggested that Judge Gerber has already ruled in the *Phaneuf* and *Elliot* cases that all the claims in the Post-Sale Complaint are enjoined by the Bankruptcy Sale Order, but that is false. In fact, Judge Gerber's rulings in those cases were grounded in case management concerns. *See, e.g., In re Motors Liquidation Co.*, 513 B.R. 467, 470 (Bankr. S.D.N.Y. 2014) ("I must determine whether one out of 88 Ignition Switch Actions—brought by ... the 'Phaneuf Plaintiffs'... should be allowed to proceed when the plaintiffs in every other Ignition Switch Action[] agreed to stay their actions ..."); *Id.* at 475 ("I don't now make any finding as to any respects in which New GM might be liable for its own post-sale conduct, or whether the Sale Order (or any part of it) should be invalidated ..."); *see also In re Motors Liquidation Co.*, 514 B.R. 377, 379 (Bankr. S.D.N.Y. 2014) ("Once again, a plaintiff group [the 'Elliot Plaintiffs'] wishing to proceed ahead of all of the others ... has asked for leave to go it alone. Its request is denied."); *Id.* at 384 ("As in *Phaneuf*, I will not allow the Elliot Plaintiffs to go it alone."). Because the Post-Sale Complaint is now the operative complaint on behalf of all the Post-Sale Plaintiffs in this MDL, Judge Gerber's concerns about case management and stray plaintiffs "going it alone" are simply not present. This Court can and should reach the question of whether the Bankruptcy Court had the power to bar the Post-Sale Complaint. There is nothing but delay to be gained by awaiting Judge Gerber's ruling on the same issue, followed by the inevitable appeal to this Court. In contrast, allowing the Post-Sale Complaint to proceed now will promote the prompt resolution of the action.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs request that this Court rule that the Post-Sale Complaint may proceed to motion practice.

DATED:  November 25, 2014          HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____ */s/ Steve W. Berman*_____
     Steve W. Berman
*steve@hbsslaw.com*
Sean R. Matt
*sean@hbsslaw.com*
Andrew M. Volk
*andrew@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

DATED:  November 25, 2014          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: _____ */s/ Elizabeth J. Cabraser*_____
     Elizabeth J. Cabraser
*ecabraser@lchb.com*
Steven E. Fineman
*sfineman@lchb.com*
Rachel Geman
*rgeman@lchb.com*
Annika K. Martin
*akmartin@lchb.com*
275 Battery St., 29th Floor
San Francisco, CA 94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Co-Lead Counsel with Primary Focus on Economic
Loss Cases*

DATED:  November 25, 2014          HILLIARD MUÑOZ GONZALES L.L.P.

By: _____ */s/ Robert Hilliard*_____
     Robert Hilliard
*bobh@hmglawfirm.com*
719 S Shoreline Blvd, Suite #500
Corpus Christi, TX 78401
Telephone:  (361) 882-1612

Facsimile: (361) 882-3015

*Co-Lead Counsel with Primary Focus on Personal Injury Cases*

WEITZ & LUXENBERG, PC
Robin L. Greenwald
James J. Bilsborrow
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500

*Liaison Counsel*

BOIES, SCHILLER & FLEXNER LLP
David Boies
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

THE COOPER FIRM
Lance A. Cooper
531 Roselane St., Suite 200
Marietta, GA 30060
Telephone: (770) 427-5588

OTTERBOURG, STEINDLER, HOUSTON & ROSEN
Melanie Cyganowski
230 Park Avenue
New York, NY 10169-0075
Telephone: (212) 661-9100

GRANT & EISENHOFER, P.A.
Adam J. Levitt
John Tangren
30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Telephone: (312) 214-0000

NAST LAW LLC
Dianne M. Nast
1101 Market St., Suite 2801
Philadelphia, PA 19107
Telephone: (215) 923-9300

PODHURST ORSECK, P.A.
Peter Prieto
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: (305) 358-2800

COTCHETT, PITRE & MCCARTHY, LLP
Frank Pitre
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000

MOTLEY RICE LLC
Joseph F. Rice
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9159

ROBINSON CALCAGNIE ROBINSON
  SHAPIRO DAVIS, INC.
Mark P. Robinson, Jr.
19 Corporate Plaza
Newport Beach, CA 92660
Telephone: (949) 720-1288

SUSMAN GODFREY, L.L.P.
Marc M. Seltzer
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067
Telephone: (310) 789-3102

*Executive Committee*

BARRIOS, KINGSDORF & CASTEIX, LLP
Dawn M. Barrios
701 Poydras St., Suite 3650
New Orleans, LA 70139
Telephone: (504) 524-3300

*Federal / State Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on November 25, 2014, which will send notification of such filing to the e-mail addresses registered.

*s/ Steve W. Berman*
Steve W. Berman