# Exhibit 4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION
SWITCH LITIGATION

*This Document Relates to: Consolidated*
*Complaint Concerning All GM-Branded Vehicles*
*That Were Acquired July 11, 2000 or Later (MDL*
*ECF No. 345)*

-----------------------------------------------x

14-MD-2543 (JMF)

**PLAINTIFFS' RESPONSE BRIEF RE:**
**GENERAL MOTORS LLC'S**
**OBLIGATION TO ANSWER OR**
**OTHERWISE RESPOND TO**
**PLAINTIFFS' POST-SALE**
**CONSOLIDATED COMPLAINT**

## TABLE OF CONTENTS

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION ................................................................................................1 |  |
| II. | ARGUMENT .......................................................................................................2 |  |
|  | A. | GM's Argument that the Post-Sale Claims have been Enjoined is Wrong and Provides no Reason to Further Stall the Progress of the Post-Sale Complaint...........................................................................................................2 |
|  | B. | Allowing the Post-Sale Complaint to Proceed is Consistent with Judge Gerber's Prior Rulings ....................................................................................4 |
|  | C. | GM's Merits-Based Arguments Provide no Reason for the Court to Stay the Post-Sale Complaint...................................................................................5 |
|  | D. | At a Minimum, Claims Based on Vehicles Manufactured and Sold by New GM After the Entry of the Sale Order Should Proceed Now..........................5 |
|  |  | 1. Postponing the choice-of-law analysis will not make that analysis less complex, and, in any case, GM overstates the complexity of that analysis. ........................................................6 |
|  |  | 2. Stays of litigation are disfavored, and GM's arguments illustrate why that is so. ...................................................................................8 |
|  |  | 3. GM's bellwether arguments are misplaced.................................................9 |
| III. | CONCLUSION...................................................................................................10 |  |

010440-11 734489 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Blakely v. Wells,*
   209 Fed. Appx. 18 (2d Cir. 2006) ...................................................................9

*Jock v. Sterling Jewelers, Inc.,*
   677 F. Supp. 2d 661 (S.D.N.Y. 2009) ............................................................8

*In re Johns-Manville Corp.,*
   517 F.3d 52 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers Indem.*
   *Co. v. Bailey,* 557 U.S. 137 (2009) ...........................................................4, 5

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936) ...................................................................................8, 9

*In re Mercedes-Benz Tele Aid Contract Litig.,*
   257 F.R.D. 46 (D.N.J. 2009) .........................................................................7

*In re Mercedes-Benz Tele Aid Contract Litig.,*
   267 F.R.D. 113 (D.N.J. 2010) .......................................................................7

*In re Motors Liquidation Co.,*
   2014 Bankr. LEXIS 4688 (Bankr. S.D.N.Y. Nov. 10, 2014) ........................4

*In re Motors Liquidation Co.,*
   513 B.R. 467 (Bankr. S.D.N.Y. 2014) ..........................................................4

*In re Motors Liquidation Co.,*
   514 B.R. 377 (Bankr. S.D.N.Y. 2014) ..........................................................4

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*
*Prods. Liab. Litig.,*
   785 F. Supp. 2d 925 (C.D. Cal. 2011) ........................................................7, 8

*Zerand-Bernal Grp. v. Cox,*
   23 F.3d 159 (7th Cir. 1994) ...........................................................................5

010440-11 734489 V1

## I.    INTRODUCTION

The motion practice on the Post-Sale Complaint should proceed without delay.

According to New GM, it has immunity, in perpetuity, for any and all of *its own* misconduct in connection with the vehicles made by Old GM.[1] This is without basis in the law, yet GM's arguments for additional stalling are predicated on exactly this premise. By concealing the defects in vehicles made by Old GM, churning out millions of dangerously defective vehicles itself and then concealing the defects in those vehicles as well, and actively misrepresenting the safety of its vehicles, New GM did its level best to ensure that millions of highly dangerous vehicles would continue to be sold to unsuspecting consumers and remain on the road. As Plaintiffs demonstrated in their opening brief, the Sale Order neither purported to nor could grant New GM immunity for its breaches of its own independent duties.

New GM is wrong to the extent it suggests that Judge Gerber has already held that the Post-Sale Complaint is enjoined by the Sale Order. While Judge Gerber declined to allow various ignition switch actions to proceed in advance of his ruling on GM's Motion to Enforce in the express interests of case management and given his characterization of the successor liability allegations in those actions, the Post-Sale Complaint is a very different action. Based on recent and developing evidence relating to New GM's conduct, the Post-Sale Complaint seeks to hold New GM (and only New GM) responsible for its own post-Sale unlawful conduct only, including conduct that diminished the value of all GM-branded vehicles. There is no other competing complaint, and GM has no tenable argument that the Sale Order did (or could lawfully) enjoin the Post-Sale Claims. There is no reason for this Court to abstain from finding that the Sale Order poses no bar to any of the claims in the Post-Sale Complaint.

---

[1] *See, e.g.,* GM Br. at 1 (arguing that "*all* vehicles manufactured by Old GM are subject to" the Sale Order) (emphasis supplied by GM).

- 1 -

Finally, building on its erroneous claim that only owners and lessees of vehicles made by New GM may proceed in advance of Judge Gerber's ruling, GM argues that it would be inefficient to proceed on behalf of only this subset of Plaintiffs. That argument will be obviated by a ruling that the entire Post-Sale Complaint may proceed; but even if the Court agrees with GM that only Plaintiffs with cars built by New GM may proceed, there are still significant efficiencies to be gained by allowing those Plaintiffs to proceed now. GM's assertions about the complexity of the choice-of-law analysis are overstated, and its assertions about the *implications* of any complexity are simply wrong. MDL transferee courts commonly conduct choice-of-law analysis. This case is no different, and, in any event, the complexity of the task will not be lessened by the delay GM seeks. Choice-of-law analysis can and should proceed without delay.

## II.    ARGUMENT

### A.    GM's Argument that the Post-Sale Claims have been Enjoined is Wrong and Provides no Reason to Further Stall the Progress of the Post-Sale Complaint

According to New GM, it can unilaterally delay any claims that may be brought against it simply by asserting that the claims are enjoined by the Sale Order. But, as Plaintiffs established in their opening brief, the Sale Order does not, and cannot, enjoin the claims in the Post-Sale Complaint because they are based solely on New GM's post-Sale breaches of its own independent duties. It cannot be seriously disputed that this Court has jurisdiction to make such a finding, the Bankruptcy Court does *not* have jurisdiction to grant New GM the immunity it seeks, and no court could grant that immunity consistent with Plaintiffs' Due Process rights.[2]

---

[2] *See* Plaintiffs' Brief Re: General Motors LLC's Obligation to Answer or Otherwise Respond to Plaintiffs' Post-Sale Sale Consolidated Complaint ("Pl. Br.") at 7-16. Notably absent in GM's Brief is any discussion of Due Process considerations.

010440-11 734489 V1

New GM argues that Old GM vehicles, even those sold to Plaintiffs *after* the Sale Order, are somehow a "Retained Liability" of Old GM.[3]  However, Old GM could *not* have had liability to *future* purchasers.  The liabilities at issue in the Post-Sale Complaint are neither "Retained Liabilities" *nor* "Assumed Liabilities."  They are instead the liabilities that *any* corporation has for breaching its own obligations – including New GM.

In a similarly telling fashion, New GM correctly notes that "[u]nder the Sale Agreement, New GM acquired the assets of Old GM free and clear of all liens, claims, liability and encumbrances *of Old GM*, other than the liabilities expressly assumed by New GM."[4]  Plaintiffs agree – and the Post-Sale Complaint does *not* seek to hold New GM responsible for *any* "liens, claims, liabilities, [or] encumbrances" of Old GM.  Instead, it seeks to hold New GM responsible only for its own post-Sale misconduct.

New GM asserts that the mere mention of Old GM in the Post-Sale Complaint necessarily means that the Complaint makes successor liability claims against Old GM.[5]  In fact, the Complaint does nothing of the sort.[6]  Instead, as New GM does not and cannot contest, the facts known to Old GM are directly attributable to New GM given the identity of personnel at the two entities; and New GM can properly be held liable for its own fraudulent concealment of those facts.[7]

While GM admonishes Plaintiffs for allegedly backtracking on their representation that they would file one "post-bankruptcy sale" complaint and one "pre[-sale]," complaint (which,

---

[3] GM Br. at 2.

[4] GM Br. at 7 (citing Sale Order) (emphasis added).

[5] GM Br. at 11.  Plaintiffs believe that well-pleaded successor liability claims, like those in the Pre-Sale Complaint (as one of the two distinct bases on which the Pre-Sale Complaint alleges claims against New GM) are viable, but this point is not at issue in the current round of briefing before this Court.

[6] *See, e.g.*, Pl. Br. at 16-17.

[7] *See id.*

- 3 -

even if true, has no relevance to the inquiry about whether there is any reason to stall this litigation),[8] Plaintiffs have done just what they pledged to do. The Post-Sale Complaint brings claims only on behalf of consumers who acquired their GM-branded vehicles (and their claims against New GM) *after* the bankruptcy sale was complete. Because the Sale Order does not – and could not – enjoin these claims, this Court should put an end to GM's stalling tactics and allow the Post-Sale Complaint to proceed.

### B.    Allowing the Post-Sale Complaint to Proceed is Consistent with Judge Gerber's Prior Rulings

GM devotes most of its brief to the argument that the Post-Sale Complaint should be "stayed" on the basis of Judge Gerber's prior rulings in a series of ignition switch cases in which a tiny minority of plaintiffs wanted to "jump the line" and pre-litigate issues before the MDL Consolidated Complaint was even filed, and before recent discovery further underscored the extent of New GM's own fraudulent conduct.[9] For these and other reasons (including that the *Phaneuf, et al.* actions were not sufficiently focused on New GM's own independent conduct), the Post-Sale Complaint is simply not within the scope of Judge Gerber's rulings.

Notably, Judge Gerber has in no way intimated that he has jurisdiction to address the specific issues presented by the Post-Sale Complaint, as distinct from jurisdiction to hear the motion to enforce. GM Br. Ex. B at 7 ("Once again, the Sesay Plaintiffs' counsel argues ... that I lack subject matter jurisdiction to hear the Motion to Enforce."); *see also, e.g., In re Johns-Manville Corp.*, 517 F.3d 52, 65 n.22 (2d Cir. 2008), *rev'd on other grounds sub nom. Travelers*

---

[8] GM Br. at 1 (quoting Oct. 2, 2014 Hr'g Tr. at 22-23).

[9] Further, the earliest cases, in contrast to the Post-Sale Complaint, did not involve vehicles with defects other than the ignition switch defects. *See, e.g., In re Motors Liquidation Co.*, 2014 Bankr. LEXIS 4688, at *8 (Bankr. S.D.N.Y. Nov. 10, 2014) (discussing "the Sesay Plaintiffs' Ignition Switch Action"); *In re Motors Liquidation Co.*, 514 B.R. 377, 383 (Bankr. S.D.N.Y. 2014) (discussing why, in the *Elliot* action, court would "[not] reach the issue that the plaintiffs in 86 other Ignition Switch actions did not bother to raise"); *In re Motors Liquidation Co.*, 513 B.R. 467, 470 (Bankr. S.D.N.Y. 2014) ("I rule that the Phaneuf Plaintiffs should be treated no differently than those in the 87 other Ignition Switch Actions who agreed to voluntary stays...").

*Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ("The ancillary jurisdiction courts possess to enforce

their own orders is itself limited by the jurisdictional limits of the order sought to be enforced.")

(internal quotations removed); *Zerand-Bernal Grp. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) ("A

court cannot write its own jurisdictional ticket."). This difference is important. The Post-Sale

Complaint focuses solely on New GM's *own* post-sale misconduct in breach of New GM's own

independent legal duties.[10]  GM overstates Judge Gerber's rulings.

C.    **GM's Merits-Based Arguments Provide no Reason for the Court to Stay the Post-Sale Complaint**

At bottom, New GM's claim that Post-Sale Plaintiffs who acquired vehicles made by Old

GM *necessarily* assert successor liability claims is grounded on the demonstrably incorrect

notion that neither statutory nor common law imposed *any* duties on New GM towards owners

of vehicles it did not manufacture. At the appropriate time, when New GM moves to dismiss,

Plaintiffs will demonstrate that claims for violations of consumer protection statutes, fraudulent

concealment, and unjust enrichment are all properly based on New GM's own tortious conduct

in violation of its independent legal duties.[11]  If GM believes its arguments against Plaintiffs'

claims will carry the day, it should welcome the chance to make them.

D.    **At a Minimum, Claims Based on Vehicles Manufactured and Sold by New GM After the Entry of the Sale Order Should Proceed Now**

In derogation of the mandate of the Federal Rules of Civil Procedure that litigation be

conducted in a "just" and "speedy" manner, Fed. R. Civ. P. 1, GM argues that this Court should

stay claims that even GM concedes *are not colorably intertwined with the bankruptcy court

proceedings.* Specifically, GM pushes to delay any consideration of claims against New GM

---

[10] *See* Pl. Br. at 10-12.

[11] The other claims in the Post-Sale Complaint – for violations of the Magnuson-Moss Warranty Act, breach of implied warranty, and negligence – are each brought only on behalf of purchasers and lessees of vehicles sold or leased as new vehicles by New GM, namely, members of the Ignition Switch Defect Subclass. *See* Post-Sale Complaint, ¶¶ 885 (Magnuson-Moss); 901 (Implied Warranty); 908 (Negligence). Even GM effectively concedes that these claims will go forward without impediment from the Sale Order.

brought by owners and lessees of cars manufactured by New GM, when such conduct only involves New GM. Notably, GM does not seriously argue that the Sale Order could possibly apply to claims concerning vehicles made and sold by New GM, or that any purchaser who first bought following the Sale Order had any notice of any potential claim against New GM. Instead, GM rests its argument exclusively on case management issues.

GM offers no compelling reason why millions of Class Members and numerous Plaintiffs[12] should await the resolution of the motion to enforce (and the likely appeals), and there are none. GM's proffered justifications for the proposed delay, relating to choice of law and bellwether selection, are red herrings. Even in instances where a pending future development – such as a Supreme Court ruling on a key issue – may have significant implications on a pending action, courts disfavor stays of litigation.

> **1.    Postponing the choice-of-law analysis will not make that analysis less complex, and, in any case, GM overstates the complexity of that analysis.**

GM argues that the alleged complexity of the choice-of-law analysis this Court must undertake counsels against proceeding on the claims of lessees and owners of vehicles made by New GM.[13] According to GM, that complexity arises from the fact that this Court must apply the choice-of-law rules of the State in which the action was filed.[14] *But GM does not (and cannot) explain how delaying the resolution of this issue will make it simpler.* If indeed GM is correct that the issue must be resolved on a State-by-State basis, then there is no reason for

---

[12] Plaintiffs' opening brief identified the 19 Named Plaintiffs who bought model year 2010 or later GM cars. Pl. Br. at 5-6. In its brief, GM acknowledges that even certain model year *2009* cars were manufactured by New GM (thus reflecting that Plaintiffs' estimate was conservative). Whether the number of Plaintiffs who purchased New GM manufactured cars is 20 or 40, and whether purchasers of New GM cars make up approximately half, one-third, or less of the current total Plaintiff (and perhaps Class Member) pool does not impact the analysis given the robust number of Plaintiffs here and the other considerations.

[13] GM Br. at 16-18.

[14] GM Br. at 16 (citing *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d at 328-30).

- 6 -

delaying its resolution in all those States in which Plaintiffs own or lease vehicles made by New GM.

In any event, as Plaintiffs will demonstrate more completely when briefing the choice-of-law issues, GM grossly overstates the complexity of the choice-of-law analysis. In reality, many (though not all) States apply the same choice-of-law principles, so resolving the issue in 10, 15 or 20 States with New GM vehicle owners will almost certainly resolve the issue in all the States. In fact, the choice-of-law exercise not only *can* be done properly and efficiently, it *has* been done in a recent MDL by the transferee Court. *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) (applying New Jersey law to a multi-state case after extensive choice-of-law analysis of unjust enrichment and consumer fraud claims, including analysis of the choice-of-law rules of the transferor jurisdictions); *id.*, 267 F.R.D. 113, 137-152 (D.N.J. 2010) (denying motion to decertify and rejecting defendant's claim that court had erred in choice of law analysis).

The choice-of-law determination will help structure the classes that may be certified to answer common questions regarding GM's knowledge, conduct, and duty by answering the question of whether class claims will proceed on an entirely statewide basis, or whether they will be accompanied by certain nationwide claims. Again, as described in Plaintiffs' opening brief, *all* the Plaintiffs who purchased New GM cars are seeking relief under their State's consumer protection statutes, and some are seeking relief under their State's common-law as well. Thus, many claims are pleaded only under the specific State law at issue, and require no choice-of-law analysis to test their sufficiency at the pleading stage.

While GM relies almost exclusively on *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 785 F. Supp. 2d 925 (C.D. Cal. 2011),

- 7 -

for its argument that the presence of choice-of-law issues to be decided by the Court requires

categorical delay, *Toyota* in fact supports Plaintiffs' position that litigation must go forward. In

*Toyota*, the court handled motion practice on the pleadings in a serial fashion in order to clarify

and narrow issues, just as will occur here. *Id.* at 932. GM quotes the *Toyota* court's statement

about the complexity of its choice-of-law analysis out of context: the court was distinguishing

the *Mercedes* decision that (in its opinion) had a simpler choice-of-law analysis with which to

grapple.[15] The *Toyota* case thus does not support delay of litigation.

2.   **Stays of litigation are disfavored, and GM's arguments illustrate why that is so.**

GM is incorrect to assert that no choice-of-law analysis (or apparently any other analysis

of the Post-Sale Complaint) can occur until later in the litigation. That is an untenable position

premised on the apparent assumption that a court needs to know everything about a case before it

can decide anything about the pleadings. In fact, parties conduct briefing and courts issue

rulings on substantive issues all the time, only to have a complaint amended, or any number of

other developments occur later. The briefing and resultant rulings are typically still applicable,

or, if not, simple supplementary briefs can typically address any new issues that arise. Parties

are added, parties are dropped, facts develop, the Supreme Court issues a controlling opinion, the

Supreme Court grants certiorari on a potentially dispositive question – and still litigation goes

forward. *See, e.g., Jock v. Sterling Jewelers, Inc.*, 677 F. Supp. 2d 661, 667-68 (S.D.N.Y. 2009)

(refusing to enter a stay, noting "[d]elay is the bane of the American legal system").

Only in "rare circumstances [should] a litigant in one [action] be compelled to stand aside

while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N.*

---

[15] While Plaintiffs respectfully disagree with Judge Selna's ruling, the case is simply inapposite to the point for which GM raises it. Utilizing the Post-Sale Consolidated Complaint as the only operative complaint for these claims should further simplify the choice-of-law analysis: because the Complaint was filed in the Southern District of New York, New York's choice-of-law rules should govern.

010440-11 734489 V1

*Am. Co.*, 299 U.S. 248, 255 (1936). Notably, GM does not seriously suggest that the decisions

relating to the Motion to Enforce will actually resolve the claims of any of the Plaintiffs who

bought New GM cars.[16] GM has requested a stay with no legal or factual basis. Its request

should be denied.

### 3.    GM's bellwether arguments are misplaced.

Finally, GM's arguments against briefing the substantive law of bellwether states turn

entirely on quibbles over bellwether selection rather than actual arguments that relate to the

issues before the Court in this briefing.

In claiming that it is premature to even discuss the testing of Plaintiffs' claims in certain

bellwether states (an issue largely mooted by the parties' agreement about how briefing should

occur),[17] in addition to restating the same failed arguments it made in its choice-of-law

discussion, GM argues that it cannot, or should not have to, parse through the Post-Sale

Complaint to determine what it needs to answer. This is nonsense. That the Post-Sale

Complaint goes into great detail about New GM's egregious fraudulent conduct presenting

ongoing safety issues, and carefully delineates the elements of the claims at issue in this

nationwide case, is not cause for criticism.[18]

---

[16] Plaintiffs assert that all claims should go forward now in addition to the subset discussed above, and submit that the arguments against a stay apply almost equally to all the claims at issue in the Post-Sale Complaint, but limit this section to GM's particular arguments directed at purchasers of New GM cars.

[17] Should the Court decide to take a bellwether approach, Plaintiffs note that deciding claims in some States would clarify and narrow the issues as to others. If, for example, the Court determines that Plaintiffs have adequately pleaded that New GM's material misstatements and/or omissions were factually false or likely to mislead reasonable consumers, this would be true for Plaintiffs in all States. There is no suggestion that New GM tailored its marketing and advertising to specific States, and, more important, the crux of this case is New GM's abhorrent cover-up of known facts about the safety defects. Both Old and New GM even sat idly by while a woman *pled guilty to negligent homicide* in the death of her then-fiancé and served time in prison, when both companies knew that the fatal crash was caused by a defective ignition switch. Rebecca R. Ruiz, *Woman Cleared in Death Tied to G.M.'s Faulty Ignition Switch*, N.Y. TIMES, Nov. 25, 2014, at A1.

[18] GM, in note 63 of its brief, also argues that Plaintiffs have violated Rule 8(a). Plaintiffs' thoroughly detailed Post-Sale Complaint may not be conventionally "short" but it is abundantly plain in its clear description of the degree of GM's alleged wrongdoing. GM cannot substantiate any assertion that it is not on notice of claims against it. The cases it relies on are inapposite. *See, e.g., Blakely v. Wells*, 209 Fed. Appx. 18, 20 (2d Cir. 2006) ("incoherent" pro se complaint gave defendant no notice of claims asserted). Moreover, as GM ignores, hundreds of

Consistent with the parties' agreement, the first round of motion practice on the Post-Sale Complaint should concern only the question of whether Michigan law will be applied to Plaintiffs' claims of fraudulent concealment, breach of implied warranty, and unjust enrichment. The choice of bellwether States is not now before the Court, and will not be resolved through this briefing.

### III.    CONCLUSION

For the reasons set forth above and in Plaintiffs' opening brief, Plaintiffs respectfully request that this Court allow the entire Post-Sale Complaint to proceed without further delay and without regard to the pending bankruptcy motion. In the alternative, at minimum, Plaintiffs should be entitled to pursue the claims for those Plaintiffs and Class Members who purchased cars manufactured by New GM and proceed to the agreed-upon briefing schedule.

DATED: December 10, 2014          HAGENS BERMAN SOBOL SHAPIRO LLP


By: _____ */s/ Steve W. Berman*_____
    Steve W. Berman
    *steve@hbsslaw.com*
    Sean R. Matt
    *sean@hbsslaw.com*
    Andrew M. Volk
    *andrew@hbsslaw.com*
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1918 Eighth Avenue, Suite 3300
    Seattle, WA  98101
    Telephone:  (206) 623-7292
    Facsimile:  (206) 623-0594

---

pages of the Complaint are necessarily devoted to the legal claims of the 50 States, which is unavoidable given the nature of this action.

010440-11 734489 V1

DATED:  December 10, 2014          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                                   By: _____ */s/ Elizabeth J. Cabraser*_____
                                          Elizabeth J. Cabraser
                                   *ecabraser@lchb.com*
                                   Steven E. Fineman
                                   *sfineman@lchb.com*
                                   Rachel Geman
                                   *rgeman@lchb.com*
                                   Annika K. Martin
                                   *akmartin@lchb.com*
                                   275 Battery St., 29th Floor
                                   San Francisco, CA 94111
                                   Telephone:  (415) 956-1000
                                   Facsimile:  (415) 956-1008

                                   *Co-Lead Counsel with Primary Focus on Economic
                                   Loss Cases*

DATED:  December 10, 2014          HILLIARD MUÑOZ GONZALES L.L.P.


                                   By: _____ */s/ Robert Hilliard*_____
                                          Robert Hilliard
                                   *bobh@hmglawfirm.com*
                                   719 S Shoreline Blvd, Suite #500
                                   Corpus Christi, TX 78401
                                   Telephone:  (361) 882-1612
                                   Facsimile:  (361) 882-3015

                                   *Co-Lead Counsel with Primary Focus on Personal
                                   Injury Cases*

010440-11 734489 V1

WEITZ & LUXENBERG, PC
Robin L. Greenwald
James J. Bilsborrow
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500

*Liaison Counsel*

BOIES, SCHILLER & FLEXNER LLP
David Boies
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

THE COOPER FIRM
Lance A. Cooper
531 Roselane St., Suite 200
Marietta, GA 30060
Telephone: (770) 427-5588

OTTERBOURG, STEINDLER, HOUSTON & ROSEN
Melanie Cyganowski
230 Park Avenue
New York, NY 10169-0075
Telephone: (212) 661-9100

GRANT & EISENHOFER, P.A.
Adam J. Levitt
John Tangren
30 N. LaSalle Street, Suite 1200
Chicago, IL 60602
Telephone: (312) 214-0000

NAST LAW LLC
Dianne M. Nast
1101 Market St., Suite 2801
Philadelphia, PA 19107
Telephone: (215) 923-9300

PODHURST ORSECK, P.A.
Peter Prieto
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: (305) 358-2800

COTCHETT, PITRE & MCCARTHY, LLP
Frank Pitre
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000

MOTLEY RICE LLC
Joseph F. Rice
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9159

ROBINSON CALCAGNIE ROBINSON
  SHAPIRO DAVIS, INC.
Mark P. Robinson, Jr.
19 Corporate Plaza
Newport Beach, CA 92660
Telephone: (949) 720-1288

SUSMAN GODFREY, L.L.P.
Marc M. Seltzer
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone: (310) 789-3102

*Executive Committee*

BARRIOS, KINGSDORF & CASTEIX, LLP
Dawn M. Barrios
701 Poydras St., Suite 3650
New Orleans, LA 70139
Telephone: (504) 524-3300

*Federal / State Liaison Counsel*

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on December 10, 2014, which will send notification of such filing to the e-mail addresses registered.

_s/ Steve W. Berman_

Steve W. Berman

010440-11 734489 V1