Hearing Date and Time:  To Be Determined
Response Deadline:  December 16, 2014
Reply Deadline:  January 16, 2015

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:      (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
**In re**                                                                   :        Chapter 11
                                                                              :
**MOTORS LIQUIDATION COMPANY,** *et al.*,        :        Case No.:  09-50026 (REG)
         f/k/a General Motors Corp., *et al.*                    :
                                                                              :
                               Debtors.                              :        (Jointly Administered)
                                                                              :
------------------------------------------------------------x

**RESPONSE BY GENERAL MOTORS LLC REGARDING**
**THE EQUITABLE MOOTNESS THRESHOLD ISSUE**

24567011v1

**TABLE OF CONTENTS**

**Page(s)**

A.   The Equitable Mootness Threshold Issue Is An Outlier Issue
     That Has Nothing To Do With The Sale Order And Injunction,
     New GM, Or The Motions To Enforce ........................................................................... 2

B.   The GUC Trust And Unitholders Raise Issues
     That Do Not Relate To The Equitable Mootness Issue,
     But Instead, Pertain To The Other Threshold Issues........................................................ 4

C.   The GUC Trust Beneficiaries Were Not Fixed
     As Of The Effective Date Of The Plan ............................................................................ 5

D.   The Equitable Mootness Threshold Issue Is Not Ripe For Adjudication......................... 7

CONCLUSION................................................................................................................................ 7

24567011v1

## TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page(s)**

*Campbell v. Motors Liquidation Co.* (*In re Motors Liquidation Co.*),
    428 B.R. 43 (S.D.N.Y. 2010) .......................................................................................... 8

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateauguy Corp.)*,
    10 F.3d 944 (2d. Cir. 1993) ........................................................................................... 7

*Parker v. Motors Liquidation Co.* (*In re Motors Liquidation Co.*),
    430 B.R. 65 (S.D.N.Y. 2010) .......................................................................................... 8

When the Equitable Mootness Threshold Issue (as herein defined) was raised by the Participating Unit Holders ("**Unitholders**") and Wilmington Trust Company, as Administrator of the Motors Liquidation Company GUC Trust ("**GUC Trust**"), as a potential, initial threshold issue for Court resolution several months ago, General Motors LLC ("**New GM**") did not oppose the request, because the issue is essentially one between Plaintiffs[1] on the one hand, and the Unitholders and GUC Trust on the other hand, and Plaintiffs already had agreed to its inclusion as a threshold issue. However, the Unitholders' and GUC Trust's opening brief on the Equitable Mootness Threshold Issue [Dkt. No. 12983] ("**GUC Trust Brief**") necessitates a response by New GM because their Brief conflates concepts that relate to the other threshold issues, and at times, misstates basic facts. Moreover, the Equitable Mootness Threshold Issue propounded by the Unitholders and the GUC Trust is built on an unsupportable construct. It is predicated on Plaintiffs having sought judicial relief against the GUC Trust, and that has never occurred. As a result, the Unitholders and GUC Trust are left with a vacuum, which they fill by hypothesizing a scenario, with self-serving assumptions, that they then seek to refute.

This brief is filed (a) to highlight the Unitholders' and GUC Trust's Equitable Mootness Threshold Issue as an outlier, theoretical issue, that is unrelated to the other Four Threshold Issues that relate to the Motions to Enforce, (b) to strip away the irrelevant and inaccurate contentions made by the GUC Trust, and (c) to demonstrate that the Equitable Mootness Threshold Issue is not ripe for adjudication because Plaintiffs have not sought any relief against the GUC Trust or the Unitholders, and, indeed, may never do so.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the *Opening Brief by General Motors LLC on Threshold Issues Concerning Its Motions to Enforce the Sale Order and Injunction*, dated November 5, 2014 [Dkt. No. 12981] ("**Opening Brief**").

1

A. **The Equitable Mootness Threshold Issue Is An Outlier Issue That Has Nothing To Do With The Sale Order And Injunction, New GM, Or The Motions To Enforce**

The Equitable Mootness Threshold Issue is defined in the July 11, 2014 Scheduling Order [Dkt. No. 12770] ("**Scheduling Order**") at page 3 as follows:

> If any or all of the claims asserted in the Ignition Switch Actions are or could be claims against the Old GM bankruptcy estate (and/or the GUC Trust), should such claims or the actions asserting such claims nevertheless be disallowed/dismissed on grounds of equitable mootness ("**Equitable Mootness Threshold Issue**").

Embedded in the Equitable Mootness Threshold Issue are the following material assumptions: (a) certain of the claims asserted by Plaintiffs are *Retained Liabilities* of Old GM (and *not* Assumed Liabilities of New GM), and (b) Plaintiffs can assert such claims against the Old GM bankruptcy estate, through the GUC Trust, unless the doctrine of "equitable mootness" applies.

The GUC Trust Brief properly cites to cases that hold the equitable mootness doctrine requires dismissal where some relief can be fashioned by a court, but implementation of such relief would be inequitable. These cases are premised on the notion that, with the passage of time after a judgment in equity is entered and implemented, effective relief becomes impractical, imprudent, and therefore inequitable. GUC Trust Brief, at 19.

The judgment that the Unitholders and GUC Trust refer to in order to invoke the equitable mootness doctrine is the Confirmation Order, dated March 29, 2011 ("**Confirmation Order**"). Essentially, the Unitholders and GUC Trust build their equitable mootness argument on a hypothetical: the argument Plaintiffs' hypothesize they would have to make in the event they were to seek to set aside, or partially revoke, the Confirmation Order. The Unitholders and GUC Trust then purport to debunk that hypothetical argument by discussing, in a non-specific way, creditor expectations arising from (i) Old GM's Second Amended Plan of Reorganization,

2

filed on March 18, 2011 ("**Plan**"), (ii) the Confirmation Order, and (iii) the GUC Trust Agreement (which was contained in the Plan Supplement). They then supplement their argument with a discussion as to how the generic Unitholder, after the Effective Date, may have relied on Quarterly Reports issued by the GUC Trust, in order to formulate their securities trading strategy. GUC Trust Brief, at 23.[2]

Plainly, the central event giving rise to the Equitable Mootness Threshold Issue (*i.e.*, confirmation of the Plan) took place well *after* the Sale Order and Injunction, and has nothing to do with New GM. Thus, the Equitable Mootness Threshold Issue is wholly unrelated to the first two of the Four Threshold Issues set forth in the Scheduling Order: (1) whether Plaintiffs' due process rights were violated in connection with the Sale Order and Injunction and (2) if so, what, if anything, should be the remedy for such violation.

Also, the Equitable Mootness Threshold Issue is unrelated to the determination of the third of the Four Threshold Issues (*i.e.*, whether Plaintiffs' claims are Assumed Liabilities of New GM or Retained Liabilities of Old GM ("**Old GM Claim Threshold Issue**")). The Equitable Mootness Threshold Issue *assumes* the answer to the Old GM Claim Threshold Issue is that at least some of Plaintiffs' claims are Retained Liabilities that can be asserted against the GUC Trust. The proper focus of the Equitable Mootness Threshold Issue is thus whether such Retained Liabilities are not enforceable against the GUC Trust *only* because of the equitable mootness doctrine. Viewed in this light, the Equitable Mootness Threshold Issue stands apart from the other threshold issues; it is based on a different set of facts and law.

---

[2]  Unsecured creditors did not have firm expectations as to their potential dividend from Old GM as of the time of the Sale Order and Injunction, other than to understand that instead of receiving no distributions from Old GM, the sale proceeds would allow Old GM to provide some distributions to them. At such time, no schedules had been filed, no claims bar order had been set, and no disclosure statement or plan had been filed. The proofs of claim ultimately filed against Old GM after the Sale Order and Injunction exceeded $270 billion. *See* Disclosure Statement, p. 33.

3

B.  **The GUC Trust And Unitholders Raise Issues That Do Not Relate To The Equitable Mootness Issue, But Instead, Pertain To The Other Threshold Issues**

The GUC Trust and Unitholders contend that New GM "pointed its finger at the GUC Trust," and also sought to "foist Plaintiffs' claims on the GUC Trust." GUC Trust Brief, at 2. Such contentions are entirely beside the point and irrelevant to the Equitable Mootness Threshold Issue. As stated, the fundamental assumption underlying the Equitable Mootness Threshold Issue is that the GUC Trust *may have liability* for certain of Plaintiffs' claims–unless the equitable mootness doctrine applies. Thus, Plaintiffs' liability is presumed when the Equitable Mootness Threshold Issue is considered.

To be clear, New GM has consistently stated that there was no due process violation relating to the Sale Order and Injunction. However, New GM has also consistently stated that even if there could have been such a violation: (a) the entity that would have committed the violation was Old GM, the debtor/seller under the Sale Agreement, which was responsible for the proper procedures, including proper notice, relating to the Sale Motion; (b) the entity that always had, and has, the liability for economic loss claims relating to Old GM vehicles or Old GM conduct, is Old GM; (c) the entities that received the sale proceeds, Old GM and its successor the GUC Trust, are responsible for paying Retained Liabilities under the Sale Agreement; and (d) the entity (Old GM) that stated at the Sale Hearing that various tort creditor issues relating to allocation of sale proceeds should be dealt with at the Plan stage, and not the Sale Order and Injunction phase of the case, should be responsible for dealing with the claims of such tort creditors.[3]

As expressly set forth in the Amended and Restated GUC Trust Agreement, dated as of June 11, 2012 (at Recital J): "The GUC Trust shall be responsible for administering the wind-

---

[3]  *See* Opening Brief, at 17-18.

4

down of the affairs of the Debtors." In short, if Plaintiffs are entitled to anything now, it should not be New GM's responsibility. The Sale Order and Injunction is explicit that New GM bought assets free and clear of Retained Liabilities (including successor liability claims). Old GM, and its successor (the GUC Trust), bear the ultimate responsibility (whatever that is) to Plaintiffs.

C. **The GUC Trust Beneficiaries Were Not Fixed As Of The Effective Date Of The Plan**

The Unitholders and GUC Trust argue that Plaintiffs cannot share in the sale proceeds held by the GUC Trust because such consideration is only available to creditors who filed claims as of the Effective Date of the Plan (March 31, 2011) ("**Late Claim Argument**"). GUC Trust Brief, at 2, 6. However, the Late Claim Argument is contrary to the express assumption in the Equitable Mootness Threshold Issue–*i.e.*, that Plaintiffs have claims against the GUC Trust unless the equitable mootness doctrine applies. As noted, the equitable mootness doctrine assumes that some relief could be fashioned, but that it would be inequitable to do so.

Notably, the Late Claim Argument is contradicted by the Court's February 8, 2012 *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims* [Dkt No. 11394] (attached hereto as Exhibit "A") ("**Late Claim Order**"). The GUC Trust Agreement preceded the Late Claim Order. That Order provides that "all claims filed against the Debtors on or after the date of entry of this Order shall be deemed disallowed (each, a 'Late Claim'), except any Late Claim . . . as to which this Court has entered an order deeming such Late Claim timely filed[.]" Late Claim Order, at 1-2. The Late Claim Order also provides that "nothing in this Order shall prevent any claimant submitting a Late Claim from filing a motion with the Court seeking to have its Late Claim deemed timely filed[.]" *Id.* at 2. If distributions by the GUC Trust were limited to only those creditors that filed claims against Old GM as of the Effective

5

Date, the Late Claim Order would have simply stated that "all claims filed against the Debtors on or after the Effective Date shall be deemed disallowed." The Late Claim Order, in fact, states the opposite.

The Late Claim Argument is also contradicted by the GUC Trust's own website that recognizes that a claim filed after the Effective Date (*i.e.*, March 31, 2011) would be allowed by the Bankruptcy Court after that date if the Court "entered an order deeming the claim as timely filed" and it was "allowed" by the Bankruptcy Court.[4]

Further, the Late Claim Argument is contradicted by the fact that certain claims have been filed *and allowed* against the GUC Trust after the Effective Date. *See, e.g.*: (i) DeLarosa claim–filed on April 14, 2011 and allowed in the amount of $10,000; (ii) Warner claim–filed on May 27, 2011 and allowed in the amount of $21,750; (iii) Mejia (six claims in total)–filed on June 17, 2011, allowed in an aggregate amount of $650,000; (iv) Straney Claim–filed on April 2, 2013 and allowed in the amount of $25,000; and (v) Helmer Martins Rice & Popham Co LPA – filed on December 19, 2013 and allowed in the amount of $2,500,000.[5]

The GUC Trust and Unitholders also argue that, under the terms of the Plan, the assets in the GUC Trust's possession "already have been allocated to specific parties." GUC Trust Brief at 2. This assertion is simply not the case. Neither disputed claims that are ultimately disallowed nor reserves for taxes or overhead that are not spent by the GUC Trust are "allocated to specific parties."

The GUC Trust and Unitholders further argue that permitting Plaintiffs to file claims against the GUC Trust would likely preclude the GUC Trust from making additional

---

[4] *See* https://www.mlcguctrust.com/FAQDocuments.aspx (last visited Dec. 15, 2014).

[5] *See* https://www.mlcguctrust.com/ClaimsRoom.aspx (last visited Dec. 15, 2014). Screen shots and documents from the GUC Trust's online "claims room" reflecting the claims referenced above are attached hereto as Exhibit "B."

6

distributions in the foreseeable future. GUC Trust Brief, at 4. Its conduct demonstrates otherwise: while expressing that concern, it did not stop the GUC Trust from making a $200 million distribution to the Unitholders just last month.[6]

D. **The Equitable Mootness Threshold Issue Is Not Ripe For Adjudication**

The GUC Trust anticipates that it may have to make an equitable mootness argument in the event that Plaintiffs ever seek relief against it, including, hypothetically, to vacate the Confirmation Order. The GUC Trust Brief goes through the *Chateaugay*[7] factors and how they would be applied if Plaintiffs ultimately seek to vacate, in whole or part, the Confirmation Order. However, at present, there is no such requested relief. And, it may well be that Plaintiffs never seek such relief. There is also no present request by Plaintiffs to file a late claim in the *Old GM* bankruptcy case.

Significantly, Lead counsel in the MDL filed two Consolidated Complaints on October 14, 2014; neither Old GM nor the GUC Trust are named as defendants in the Consolidated Complaints. Lead Counsel for Plaintiffs took no action to stop the GUC Trust from making further distributions to Unitholders in November 2014. The Equitable Mootness Threshold Issue is predicated upon Plaintiffs pursuing a claim against the GUC Trust, which has not happened. Accordingly, it appears that the Equitable Mootness Threshold Issue is not presently ripe for adjudication and may possibly never be ripe.

## CONCLUSION

The Equitable Mootness Threshold Issue, as framed by the GUC Trust, is premised on events that have not occurred, and may never occur. Moreover, this Issue is separate and distinct from the other Four Threshold Issues that the Court will decide. Therefore, New GM submits

---

[6] This distribution was publicly announced, and Lead Counsel for Plaintiffs was aware it would be made. GUC Trust Brief, at 18, n.17.

[7] *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944 (2d. Cir. 1993).

that the Equitable Mootness Threshold Issue is not ripe for adjudication and should not be ruled upon until the issue is properly framed–that is to say, only after Plaintiffs have in fact sought relief against the GUC Trust.

Although the GUC Trust's arguments are premature, the principles underlying equitable mootness continue to have relevance to a different Threshold Issue, that being the Due Process Remedies Threshold Issue. As the Court knows, the appeals of the Sale Order and Injunction were dismissed years ago as being equitably moot. *See Campbell v. Motors Liquidation Co.* (*In re Motors Liquidation Co.*), 428 B.R. 43, 60-64 (S.D.N.Y. 2010) (Buchwald, J.); *Parker v. Motors Liquidation Co.* (*In re Motors Liquidation Co.*), 430 B.R. 65, 80-83 (S.D.N.Y. 2010) (Sweet, J.). These rulings are even more compelling now in view of the passage of time since such dismissals (and the additional intervening events that have occurred).

Dated: New York, New York
December 16, 2014

        KING & SPALDING LLP

        By:   */s/ Arthur Steinberg*
            Arthur Steinberg
            Scott Davidson
        1185 Avenue of the Americas
        New York, New York 10036
        Telephone:  (212) 556-2100
        Facsimile:  (212) 556-2222

        KIRKLAND & ELLIS LLP
        300 North LaSalle
        Chicago, IL 60654
        Telephone:    (312) 862-2000
        Facsimile:    (312) 862-2200
        Richard C. Godfrey, P.C. (admitted *pro hac vice*)
        Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

        *Counsel to General Motors LLC*