# <u>EXHIBIT 5</u>

ROBERT W. SCHMIEDER II (*pro hac vice*)
MARK L. BROWN (*pro hac vice*)
THE LAKIN LAW FIRM, P.C.
300 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095
Telephone:    (618) 254-1127
Facsimile:    (916) 254-0193

C. BROOKS CUTTER (S.B. #121407)
KERSHAW, CUTTER & RATINOFF LLP
401 Watt Avenue
Sacramento, California 95864
Telephone:    (916) 448-9800
Facsimile:    (916) 669-4499

Attorneys for Plaintiffs

GREGORY R. OXFORD (S.B. #62333)
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California  90503
Telephone:    (310) 316-1990
Facsimile:    (310) 316-1330

Attorneys for Defendant
General Motors Corporation

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CASTILLO, NICHOLE BROWN, and BARBARA GLISSON, *Individually and on behalf of all others similarly situated*,<br><br>          Plaintiffs,<br><br>     v.<br><br>GENERAL MOTORS CORPORATION,<br><br>          Defendants. | Case No. 2:07-CV-02142 WBS-GGH<br><br>**FINAL JUDGMENT**<br><br>Honorable William B. Shubb |

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This matter having come before the Court on the application of Plaintiffs, individually and as representatives of a class of similarly situated persons (collectively, "Plaintiffs"), and General Motors Corporation ("Defendant") for approval of the settlement set forth in the Stipulation of Settlement and the exhibits thereto (collectively the "Agreement"), and the Court having considered all papers filed, all evidence submitted and proceedings had herein and otherwise being fully informed;

IT IS **HEREBY ORDERED, ADJUDGED AND DECREED:**

1.      The Court has jurisdiction over the subject matter of this litigation, and over all parties to the litigation, including all members of the proposed Class defined as all residents of the United States who as of January 13, 2009, own or have owned a model year 2002, 2003, 2004 or 2005 Saturn VUE or model year 2003 or 2004 Saturn ION equipped with a continuously variable VTi transmission ("Class Vehicle") excluding (i) any person, firm, trust, corporation, or other entity that purchased Class Vehicles from GM, or any entity related or affiliated with GM, for resale or fleet purposes (including without limitation any authorized Saturn Retailer) and (ii) any person who has instituted an action for damages for property damage or personal injury against GM related to the VTi transmission of a Class Vehicle ("Class").  Excluded from the Class are members of a Subclass consisting of persons otherwise falling within this Class definition but (1) to whom Notice of the Settlement inadvertently was not mailed prior to the Settlement Approval hearing and (2) who did not otherwise receive timely notice of the Settlement.

2.      Pursuant to Rule 23(a), Federal Rules of Civil Procedure, the Court finds that the members of the proposed Class are so numerous that joinder of all members is impracticable, that there are questions of law and fact common to the Class, that the claims of the named plaintiffs are typical of the claims of Class and that the named plaintiffs have fairly and adequately represented the Class and will continue to do so. Pursuant to Rule 23(b), Federal Rules of Civil Procedure, the Court further finds that questions of fact common to the Class predominate over factual questions affecting only

individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Accordingly, the Court certifies the Class as defined in paragraph 1 above.

        3.      The Court hereby finds that: (a) the settlement memorialized in the Stipulation of Settlement previously filed with the Court ("Agreement") has been entered into in good faith and was concluded after Class Counsel had conducted an extensive investigation concerning the issues raised by Plaintiffs' claims; (b) the settlement evidenced by the Agreement is fair, reasonable and adequate as to, and in the best interests of, the Class Members; (c) the settlement delivers benefits to the Class in a timely manner while resolving complex issues that would require expensive and long-lasting litigation; (d) the Agreement was the result of extensive arms' length negotiations among highly experienced counsel, with full knowledge of the risks inherent in this litigation; (e) there is no evidence of collusion or fraud in connection with the settlement; (f) the investigation conducted to date suffices to enable the parties and the Court to make an informed decision as to the fairness and adequacy of the settlement; (g) the case raised complex and vigorously contested issues of law and fact that would result in complex, expensive, and lengthy litigation; (h) the Plaintiffs faced significant risks in establishing liability and damages; and (i) the release is tailored to address the allegations in the case.

        4.      Accordingly, the Court hereby orders and declares (a) the Agreement is approved by the Court and shall be binding on all Class Members; and (b) the Agreement as approved by this final judgment is and shall be binding and preclusive in all pending and future lawsuits or other proceedings whether in state or federal court. Each and every term and condition of the Agreement as a whole (including its attached exhibits) is approved as proposed and is to be effective, implemented, and enforced as provided in the Agreement.

        5.      The Court finds that the Class Notice and methodology implemented pursuant to this Court's Preliminary Approval Order provided the best notice practicable

under the circumstances.  The Court further finds that the Class Notice advised each member of the Class, in plain easily understood language: (a) the nature of the suit; (b) the definition of the Class certified; (c) the class claims, issues, and defenses; (d) that a Class Member could enter an appearance through counsel if desired; (e) that the Court would exclude from the Class any member who timely requested exclusion by a specified date; and (f) that the judgment incorporating the settlement will fully release Defendant, dismiss this lawsuit with prejudice, and include and bind all members of the Class who did not timely request exclusion.  The Court finds that the Class Notice and methodology fully complied with all applicable legal requirements, including the Due Process Clause of the Constitution of the United States and the Federal Rules of Civil Procedure.

       6.     The Court also finds that the Final Notice and the post-settlement notice methodology to be implemented pursuant to the Agreement will provide the best practicable notice under the circumstances of the Judgment and Claim Form to all Class Members, and the Court further finds that the Final Notice and methodology constitute due, adequate and sufficient notice to all persons entitled to receive notice, and fully comply with all applicable requirements of law, including the Due Process Clause of the Constitution of the United States and the Federal Rules of Civil Procedure.

       7.     The Court finds that Class Counsel and the Class representatives adequately represented the Class for purposes of entering into and implementing the Agreement.

       8.     The terms of the Agreement as approved by this final judgment shall be forever binding on, and shall have *res judicata* effect and preclusive effect in, all pending and future lawsuits or other proceedings that may be maintained by or on behalf of the Plaintiffs or any Class Members, as well as their collective heirs, executors, administrators, successors and assigns, relating to the Action and/or the Released Claims (as defined in the Agreement).

       9.     The preceding paragraph of this Judgment covers, without limitation,

any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing Plaintiffs or the Class Members, or incurred by Plaintiffs or the Class Members, or any of them, in connection with or related in any manner to this Action, the settlement of this Action, the administration of the settlement and/or the Released Claims.

10.     All Class Members who did not timely exclude themselves from the Class are, from this day forward, hereby permanently barred and enjoined from:

(a)     filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit in any  jurisdiction based on or relating to: (i) the claims and causes of action asserted or that could have been asserted in this Action; (ii) the facts and circumstances relating to this Action; or (iii) the Released Claims, or

(b)     organizing Class Members, or soliciting the participation of Class Members, in a separate class for purposes of pursuing as a purported class action any other lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to: (i) the claims and causes of action asserted or that could have been asserted in this Action; (ii) the facts and circumstances relating to this Action; or (iii) the Released Claims.

11.     Class Representatives are each awarded $2,500 for their roles in this litigation ("Incentive Fees").  Class Counsel and Local Counsel are hereby awarded the total sum of $4,425,000 in attorneys' fees, costs and expenses ("Attorneys' Fees and Expenses").  Defendant shall pay the Incentive Fees and Attorneys' Fees and Expenses in accordance with the Settlement Agreement.  Defendant shall have no responsibility for and no liability with respect to the allocation of Attorneys' Fees to Class Counsel or any other person who may assert some claim thereto.

12.     Neither this Judgment nor the Agreement (nor any document referred to herein or any action taken to carry out this Final Judgment) is, may be construed as, or

5

may be used as an admission by Defendant of the validity of any claim, of actual or potential fault, wrongdoing or liability whatsoever. Entering into or carrying out the Agreement and any negotiations or proceedings relating to the settlement shall not in any event be construed as, or deemed to be evidence of, an admission or concession of the Defendant and shall not be offered or received into evidence in any action or proceeding against any party hereto in any court, judicial, administrative, regulatory hearing, arbitration, or other tribunal or proceeding for any purpose whatsoever, except in a proceeding to enforce the Agreement. This Final Judgment and the Agreement it approves (including exhibits thereto) may, however, be filed in any action against or by the Defendant to support a defense of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13. All individual claims by Class Members and all Class claims asserted or that could have been asserted herein by Class Members, are hereby DISMISSED WITH PREJUDICE, without fees, costs, or expenses to any party except as otherwise provided herein. Pursuant to Rule 54(b), Fed. R. Civ. P., the Court finds that there is no just reason for delay and expressly directs that this judgment be entered forthwith, without prejudice to the rights of members of the Subclass consisting of persons who otherwise fall within the Class definition but (a) to whom Notice of the Settlement inadvertently was not mailed prior to the Settlement Approval hearing and (b) did not otherwise receive timely notice of the Settlement.

DATED:  April 14, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

Robert W. Schmieder II (admitted *pro hac vice*)
Mark L. Brown (admitted *pro hac vice*)
THE LAKIN LAW FIRM, P.C.
300 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095
Telephone:  (618) 254-1127
Facsimile:  (618) 254-0193

C. Brooks Cutter, SBN, 121407
KERSHAW CUTTER & RATINOFF LLP
401 Watt Avenue
Sacramento, California 95864
Telephone:  (916) 448-9800
Facsimile:  (916) 669-4499

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CASTILLO, NICHOLE BROWN, BRENDA ALEXIS DIGIANDOMENICO, VALERIE EVANS, BARBARA ALLEN, STANLEY OZAROWSKI, and DONNA SANTI, *Individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS CORPORATION,<br><br>Defendants. | Case No.: 2:07-CV-02142 WBS-GGH<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER (1) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT; (2) PROVISIONALLY CERTIFYING SETTLEMENT CLASS; (3) APPROVING CLASS NOTICE, CLAIM FORM AND REQUEST FOR EXCLUSION PROCEDURE; (4) DIRECTING DISSEMINATION OF CLASS NOTICE; AND (5) SETTING A HEARING FOR FINAL APPROVAL OF THE SETTLEMENT**<br><br>Date:   September 2, 2008<br>Time:  2:00 p.m.<br>Ctrm:  5<br>Judge:  William B. Shubb |

## TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** ................................................................................ 1

**MEMORANDUM OF POINTS AND AUTHORITIES** .................................................. 1

**I.     INTRODUCTION** .................................................................................... 1

**II.    FACTUAL BACKGROUND** .................................................................. 2

**III.   DETAILED SUMMARY OF SETTLEMENT TERMS.** ..................................... 5

**IV.   CLASS ACTION SETTLEMENT APPROVAL PROCEDURE** ...................... 8

**V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE** ...................................................................................11

**VI.   THE PROPOSED CLASS NOTICE IS APPROPRIATE** .................................14

    **A. The Class Notice Satisfies Due Process Requirements** ....................................14

    **B. The Proposed Class Notice is Accurate and Informative** ...............................15

**VII.  PAYMENT TO THE NAMED PLAINTIFFS FOR THEIR SERVICE TO THE CLASS IS REASONABLE AND ROUTINELY AWARDED** ...........................16

**VIII. THE WORK PERFORMED BY PLAINTIFFS' COUNSEL SUPPORTS THE REQUEST FOR ATTORNEYS' FEES** ....................................................17

**IX.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED** ....................17

**X.    CONCLUSION** ...................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Alaniz v. California Processors, Inc.,* 73 F.R.D. 269, 273 (N.D. Cal. 1976) ……………..2, 9, 11

*Cartt v. Superior Court*, 50 Cal.App.3d 960, 973-74 (1975).................................................. 14, 15

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................................. 9, 11

*Coca-Cola*, 200 F.R.D. at 694 ........................................................................................ 16

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)............................................................ 12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)...................................................... 14, 15

*Hammon v. Berry*, 752 F. Supp. 1087 (D.D.C. 1990) .................................................................. 12

*Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir. 1998) ..................................................... 9

*Hanlon*, 150 F.3d at 1027 ............................................................................................ 12

*In re Traffic Executive Association - Eastern Railroads*, 627 F.2d 631, 633-634 (2d Cir. 1980).11

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)......................................... 16

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ............................ 17

*Potter v. Pacific Coast Lumber Co. of Cal.*, 37 Cal.2d 592, 602 (1951)..................................... 11

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)............. 17

*Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979)............................................................. 12

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ............................................ 11

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)................................ 16

**Rules**

Fed. R. Civ. P. 23[c][2]; 23[e] ........................................................................................ 15

Fed.R.Civ.P. 23(e) ....................................................................................................... 8

**Treatises**

3 Newberg, §§ 8.21, 8.39 .............................................................................................. 15

4 Newberg § 11.22 ...................................................................................................... 10

4 Newberg § 11.25 .................................................................................................. 9, 11, 12

4 Newberg § 11.26 ...................................................................................................... 10

4 Newberg § 11.41……………………………………………………………………………………11

4 Newberg on Class Actions 4th (2002) § 11.25 ........................................................... 2, 9

Manual for Complex Litigation § 21.31 (4th ed. 2004) ................................................... 15

Manual for Complex Litigation § 21.63 (4th ed. 2004) ................................................... 10

Manual for Complex Litigation § 30.42 n.763 (3d ed. 1995) .......................................... 16

Manual for Complex Litigation, § 30.41 (3d ed. 1995) ................................................... 12

Manual for Complex Litigation, §§ 21.311,  21.312 (4th ed. 2004) ................................ 15

Manual for Complex Litigation, Fourth (Fed. Judicial Center 2006) ("Manual"), § 21.63 ........... 8

Notice of Motion and Motion for Preliminary Approval of Settlement

## NOTICE OF MOTION AND MOTION FOR
## PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiffs Kelly Castillo, Nichole Brown, Brenda Alexis Digiandomenico, Valerie Evans, Barbara Allen ("Glisson"), Stanley Ozarowski, and Donna Santi ("Representative Plaintiffs") hereby submit their Motion for Preliminary Approval of Class Action Settlement to the Honorable William B. Shubb of the United States District Court for the Eastern District of California, and request an Order:

(1)    preliminarily approving the class action Settlement;

(2)    provisionally certifying the Settlement Class;

(3)    approving the Class Notice, Final Notice, Claim Form and request for exclusion procedure and directing dissemination thereof; and

(4)    setting a hearing for final approval of the Settlement.

This Motion is based upon the Memorandum of Points and Authorities attached hereto, the attached executed Joint Stipulation of Settlement and Release, the records, pleadings and papers filed in this action and such other oral argument and documentary evidence as may be presented to the Court at the hearing of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Representative Plaintiffs hereby seek preliminary approval of a proposed class action Settlement[1] with defendant General Motors Corporation ("GM").  Representative Plaintiffs filed this class action seeking to extend their vehicle warranties and obtain compensation for repairs

---

[1] A copy of the fully executed Joint Stipulation of Settlement and Release between Plaintiffs and Defendant is attached hereto as Exhibit 1.

– 1 –

because they and the Class had purchased certain Saturn vehicles with GM's VTi (variable

transmission intelligence) transmissions that Plaintiffs claim were defective.  Subject to the

Court's approval, the settlement resolves claims against GM in exchange for complete or partial

reimbursement of costs associated with transmission malfunctions, past and future, at odometer

readings through 125,000 miles.  GM will provide reimbursement for the following transmission

failure-related expenses:

1.  Transmission repair
2.  Transmission replacement
3.  Transmission inspection
4.  Towing
5.  Replacement vehicle rental during repair period
6.  Past trade-in loss

GM will reimburse owners (past and present) of both new and used Saturn vehicles containing

VTi transmissions at reimbursement rates of 100%, 75%, or 30%, depending on the mileage of

the vehicle at the time of malfunction and whether it was purchased new or used by the Class

Member.  This settlement provides substantial relief to the Class and should be preliminarily

approved because it easily satisfies the applicable "range of possible approval" test for

preliminary approval.  *Alaniz v. California Processors, Inc.,* 73 F.R.D. 269, 273 (N.D. Cal.

1976); 4 Newberg on Class Actions § 11.25 (4th ed. 2002) .

## II.    FACTUAL BACKGROUND

This case is a putative class action filed on October 10, 2007 by Representative Plaintiffs

on behalf of themselves and a class of current and former owners of Saturn vehicles with

allegedly defective transmissions.  More specifically, the vehicles at issue are Model Year 2002-

2005 Saturn Vues and Model Year 2003-2004 Saturn Ions equipped with GM's VTi (variable

transmission intelligence) transmission.  The VTi is a continuously variable transmission

("CVT") utilizing a belt-and-pulley system, rather than traditional gears, to transmit torque from the vehicle's engine to the transaxle. Plaintiffs allege in their Complaint essentially that the VTi transmissions were defective, that GM was aware but failed to disclose that they were defective, and that the defect made the transmissions extremely prone to premature failure, often rendering the vehicles completely immobile and frequently resulting in the need for transmission service or replacement costing thousands of dollars. GM denies these allegations and filed a motion to dismiss the complaint.

In April of 2007, an unhappy Saturn owner contacted The Lakin Law Firm, P.C. ("Class Counsel") about possible problems with the Saturn VTi transmission. *Schmieder Decl. ¶2, attached as Exhibit 2*. Unbeknownst to counsel, that same customer apparently shared counsels' contact information with other customers via an internet website for Saturn owners, and counsel soon were flooded with dozens of calls and e-mails from other unhappy Saturn customers reporting similar problems and circumstances. *Id.* For the next six months, counsel consulted extensively with Saturn customers, potential class representatives, and automotive industry consulting experts. *Id.* In addition, counsel obtained and analyzed technical service bulletins, general background literature regarding CVTs, and other documentation pertaining to the VTi. *Id.* Once counsel had completed an exhaustive pre-suit investigation and had an adequate understanding of the nature and scope of the problem, they ultimately filed this action in October of 2007 on behalf of Plaintiffs Nichole Brown, Kelly Castillo, Barbara Glisson, and the proposed Class. *Id.* Representative Plaintiffs Brenda Digiandomenico, Valerie Evans, Stanley Ozarowski, and Donna Santi were added upon filing of the First Amended Complaint on January 14, 2008. *Id.*

Since April of 2007, more than 250 Saturn owners reporting failures of their VTi transmissions have contacted Class Counsel's firm, which has interviewed many of the owners, collected documents from them, and often taken their recorded statements. *Ex. 2 at ¶3*. In addition, since filing this action, Plaintiffs have served GM with extensive written discovery

Notice of Motion and Motion for Preliminary Approval of Settlement

requests, thoroughly analyzed thousands of pages of documents produced by GM, deposed two

current GM executives familiar with the facts at issue, subpoenaed two of GM's third-party

vendors involved in manufacturing and testing the VTi, reviewed thousands of pages of

responsive third-party documents, interviewed numerous potential testifying experts, and read

numerous industry publications relating to CVT technology in general and the VTi in particular.

*Id.* Class Counsel have created an *Addendum* summarizing the results of their investigation and

discovery efforts pertinent to the negotiated relief for the Class. Class Counsel have requested

leave to file the *Addendum* under seal pursuant to the Court's Protective Order because it

contains information that GM considers proprietary and confidential. *See Doc. 46.*

        The proposed Settlement was the culmination of protracted discussions between counsel

for the parties, extensive consultation with their respective clients, and thorough analysis of the

pertinent facts and applicable law. Counsel first met in Chicago on March 13, 2008 to discuss

discovery matters and the possibility of a settlement. *Ex. 2 at ¶4.* That full-day meeting did not

result in a resolution, however, and the parties continued to engage in discovery while

simultaneously working to coordinate the formal mediation that ultimately took place with Judge

Sabraw in San Francisco on May 21. *Id.*

        The May 21 mediation took place before the Honorable Ronald Sabraw, former complex

litigation judge of Alameda County, California, from approximately 9:00 a.m. until

approximately 10:30 p.m. *Ex. 2 at ¶5.* The mediation, an arm's-length negotiation with

significant back-and-forth assistance from Judge Sabraw, resulted late in the day in agreement

regarding the substantial relief to the Class, and the signing of a term sheet memorializing the

basic terms of that agreement. *Id.* The term sheet provided, among other things, that incentive

awards to the Representative Plaintiffs, attorneys' fees and costs would be paid by GM in

– 4 –

Notice of Motion and Motion for Preliminary Approval of Settlement

addition to (i.e., without diminishing) the relief to the Class.  *Id.*  The parties then negotiated the

amount of the incentive awards for Representative Plaintiffs.  *Id.*  Finally, the parties began

negotiations regarding the issue of attorneys' fees and costs.  *Id.*  Unable to resolve this issue by

10:30 p.m. on the day of the mediation, the parties continued telephonic negotiations for the next

several days until ultimately reaching final agreement regarding attorneys' fees on June 5,

subject to this Court's approval.  *Id.*

## III.    DETAILED SUMMARY OF SETTLEMENT TERMS

The proposed Settlement is a nationwide class settlement.  The relief available to Class

Members consists of reimbursement by GM for both past and future out-of-pocket losses relating

to the VTi.  A loss relating to the VTi includes:

- Costs to inspect, repair or replace the VTi;

- Costs to rent a replacement vehicle or secure other transportation while the Saturn is/was being inspected or repaired;

- Costs to tow or transport the vehicle to inspect, repair or replace the VTi; and

- Past losses relating to trade-ins of vehicles with malfunctioning VTi transmissions.

GM agrees to reimburse Class Members who suffer a loss in accordance with the following

chart:

| Vehicle Mileage | GM Reimbursement (New Purchaser) | GM Reimbursement (Used Purchaser) |
| --- | --- | --- |
| 100,000 or less | 100 percent | 75 percent |
| 100,101-125,000 | 75 percent | 30 percent |

Notice of Motion and Motion for Preliminary Approval of Settlement

The 125,000 mile outer mileage limit represents 89,000 miles beyond the 36,000-mile warranty that came with the vehicles when they originally were sold.[2]  Counsel negotiated the mileage limits in accordance with what reasonable consumers generally expect transmissions to last—the primary premise underlying each of Plaintiffs' pleaded legal theories.  The thorough investigation of Class Counsel, industry experts, industry data, consultation with class members, and discovery obtained by Class Counsel all suggested that the average transmission lasts at least 100,000 miles and perhaps even 125,000 miles.  *See Addendum.*  GM, however, has argued that consumer expectations are legally irrelevant and that their legal rights are governed exclusively by the terms of the initial warranty, which in this case limited coverage to only 36,000 miles. *See Docs. 23, 29, 30 and 37.*  The negotiated 125,000 mile threshold represents, at the very least, a compromise extremely favorable to the Class.

Under the proposed Settlement, there is no cap—either per-incident, per-vehicle, per-class member, or otherwise in the aggregate—on the cost of reimbursable expenses.  A VTi transmission replacement costs thousands of dollars, with some replacement estimates reaching $8,000.

To be reimbursable under the Settlement, a loss must occur within 125,000 vehicle miles and within the time periods in the following chart:

---

[2] The 125,000 mile outer mileage limit also represents 50,000 miles beyond GM's voluntary extension of its manufacturer's warranty from 36,000 to 75,000 miles beginning in March of 2004.

Notice of Motion and Motion for Preliminary Approval of Settlement

| Model year | Coverage Limit | Date by Which Loss Must Occur |
|------------|----------------|-------------------------------|
| 2002 | 8 years | Jan. 1, 2010 |
| 2003 | 8 years | Jan. 1, 2011 |
| 2004 | 8 years | Jan. 1, 2012 |
| 2005 | 7 years | Jan. 1, 2012 |

These time limits last at least four (4) years beyond the maximum 3-year warranty that Class Members who purchased new vehicles expected when they purchased their vehicles. These limits give each Class Member approximately the same temporal opportunity to reach the negotiated mileage limits and take full advantage of the negotiated relief. Transmission repair and related expenses will be reimbursed for up to approximately eight years beyond the model year for all but Model Year 2005. Due to engineering improvements, the Settlement provides seven (7) years of coverage for the Model Year 2005 vehicles. For past reimbursable expenses, Class Members must submit claim forms within one year of the effective date of the settlement. For future reimbursable expenses, Class Members must submit claim forms by March 1 following the dates listed in the "Date by Which Loss Must Occur" column in the chart above for the model year of the class vehicle.

Even if a Class Member does not incur a future reimbursable expense, the settlement still provides substantial relief. Class Counsel estimate that if a Class Member were to purchase an extended warranty for the relatively high mileages covered by the reimbursement provisions of the settlement, it would cost well in excess of $1,000 per vehicle based on the cost of analogous

Notice of Motion and Motion for Preliminary Approval of Settlement

extended warranties.[3]  In other words, the proposed Settlement unquestionably provides

substantial relief to the Class.

GM will pay for all claims administration costs, including without limitation first class

direct mail notice to all Class Members, without in any way diminishing the class relief.  Subject

to Court approval, GM also will pay class representative incentive awards in the amount of

$2,500 per Representative Plaintiff, as well as attorneys' fees and costs in the amount of

$4,425,000.  Class representative incentive awards, attorneys' fees and costs will be paid in

addition to (i.e., without diminishing) the quite substantial relief to the Class.

## IV.   CLASS ACTION SETTLEMENT APPROVAL PROCEDURE

A class action may not be dismissed, compromised or settled without the approval of the

Court.  Fed.R.Civ.P. 23(e).  Judicial proceedings under Federal Rule of Civil Procedure 23 have

led to a defined procedure and specific criteria for settlement approval in class action

settlements, described in the Manual for Complex Litigation, Fourth (Fed. Judicial Center 2006)

("Manual"), § 21.63.  The Manual's settlement approval procedure describes the following steps:

1.   Preliminary fairness review of the proposed Settlement;

2.   Dissemination of mailed and/or published notice of the

Settlement and formal fairness review to all affected Class

members; and

---

[3] While GM offers certain extended warranties up to 100,000 miles, GM does not even offer any extended warranty options past 100,000 miles.  *Ex. 2 at ¶6.*  Moreover, to qualify for a GM extended warranty, an owner must purchase it within the initial manufacturer's warranty period (3 years / 36,000 miles) or at the time of vehicle purchase.  *Id.*  In order to obtain extended warranty coverage beyond 100,000 and up to 125,000 miles, Class Members would have to purchase costly third-party extended warranties.  For example, a Vue customer with 75,000 miles would have to purchase a 24 month / 24,000 mile powertrain-only warranty for $1,895, plus a 12 month / 12,000 mile warranty for $1,729, plus another 12 month / 12,000 mile warranty for $1,803 to take the vehicle through 125,000 miles at a total cost of $5,427.  *Id.at ¶7.*

Notice of Motion and Motion for Preliminary Approval of Settlement

3.    A "formal fairness hearing," or final settlement approval

hearing, at which Class members may be heard and evidence and

argument concerning the fairness, adequacy, and reasonableness of

the Settlement may be presented.

This procedure, commonly used by courts and endorsed by the leading class action commentator, Professor Newberg, safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See*, 4 Newberg on Class Actions 4th (2002) § 11.25.

The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir. 1998). Accordingly, a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion." *Id.*; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

With this Motion, Representative Plaintiffs request that the Court take the first step in the settlement approval process, and grant preliminary approval of the proposed Settlement. The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of possible approval," and whether the Class Notice setting forth the terms and conditions of the Settlement, and the scheduling of a formal fairness hearing, are worthwhile. *See Alaniz,* 73 F.R.D. at 273; 4 Newberg § 11.25.

Plaintiffs further request that the Court provisionally certify the proposed Settlement Class, for purposes of settlement only, at this time. Provisional class certification is appropriate at the preliminary approval stage where, as here, the proposed Settlement Class as defined in the parties' Settlement Agreement has not previously been certified by the Court, and the

– 9 –

Notice of Motion and Motion for Preliminary Approval of Settlement

requirements for certification are met. *See* 4 Newberg § 11.22. The practical purpose of provisional class certification is to facilitate dissemination to all members of the Settlement Class of Notice of the terms of the proposed Settlement, and the date and time of the final approval hearing. *See* Manual for Complex Litigation § 21.63 (4th ed. 2004). The additional rulings sought by this Motion — approving the content and dissemination of Class Notice and Claim Forms and scheduling a formal fairness hearing — facilitate the settlement approval process, and also are typically made at the preliminary approval stage. *See* 4 Newberg § 11.26. Neither formal notice nor a hearing is required for the Court to grant preliminary approval or provisional class certification; instead, the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *See* Manual for Complex Litigation § 21.63 (4th ed. 2004).

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming this Court grants preliminary approval of the proposed Settlement by September 2, 2008. This sequence is also outlined in the proposed Order submitted herewith.

| Date | Event |
|---|---|
| Within 90 days of Preliminary Approval | GM shall mail Notice to all class members |
| 40 days after mailing of Class Notice | Deadline for submission of request to be excluded from the Settlement |
| 40 days after mailing of Class Notice | Deadline for written objections to the Settlement |
| 20 days before final approval hearing | Deadline for any objectors to provide notice of intention to appear and be heard at the final approval hearing |

Notice of Motion and Motion for Preliminary Approval of Settlement

| 10 days before final approval hearing | Deadline for Plaintiffs to file and serve motion for final approval of Settlement, the request for incentive awards and the request for an award of attorneys' fees, costs and expenses |
|---|---|
| Date to Be Determined by the Court. Requested for the week of February 9, 2009, or earlier if the Court grants preliminary approval before September 2, 2008 | Final approval hearing before Judge Shubb in Courtroom 5 of the United States District Court for the Eastern District of California |
| One year from Effective date | Deadline for submission of Claim Forms for Past Expenses |
| March 1 following the dates listed in the chart on pages 7 above | Deadlines for submission of Claim Forms for Future Expenses |

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See*, 4 Newberg § 11.41, at pp. 87-88 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d at 1276; *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Potter v. Pacific Coast Lumber Co. of Cal.*, 37 Cal.2d 592, 602 (1951). These concerns apply with particular force in a case such as this, where the same product defect affected tens of thousands of people.

To grant preliminary approval of this class action Settlement, the Court need find only that the Settlement falls within the range of possible final approval, also described as "the range of reasonableness." *See, e.g.*, *In re Traffic Executive Association - Eastern Railroads*, 627 F.2d 631, 633-634 (2d Cir. 1980); *Alaniz*, 73 F.R.D. at 273; 4 Newberg § 11.25. To make this fairness determination, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

Notice of Motion and Motion for Preliminary Approval of Settlement

reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *See Hanlon*, 150 F.3d at 1027. Indeed, as "a settlement is the offspring of compromise;" the question upon preliminary approval "is not whether the final product could be prettier, smarter or snazzier, but whether is fair, adequate and free from collusion." *Id.* at 1027. *See also Hammon v. Berry*, 752 F. Supp. 1087 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (S.D.N.Y. 1979).

The Manual characterizes the preliminary approval stage as an "initial assessment" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. The Manual summarizes the preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*See* Manual for Complex Litigation, § 30.41 (3d ed. 1995), as quoted in 4 Newberg, § 11.25. Indeed, there is a "strong presumption" that an agreed upon settlement is fair. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). A preliminary review of the terms of the proposed Settlement leaves no doubt about its fairness.

Here, the Settlement accomplishes ***exactly*** what Representative Plaintiffs requested— reimbursement of VTi transmission repair and related expenses beyond the GM warranty. *See Doc. 27, Prayers for Relief* (requesting the "amount of actual monetary damages" and "striking

Notice of Motion and Motion for Preliminary Approval of Settlement

the durational limits of the warranties"). The Settlement provides significant relief for all Class Members—whether a new purchaser, a used purchaser, an owner who has paid out-of-pocket, an owner who has not paid out-of-pocket yet, or an owner who traded-in a vehicle as a result of a malfunctioning VTi transmission. In addition, the Settlement provides significant relief to all owners of class vehicles regardless of State of residence or purchase. The Settlement provides Class Members with as much as 100% of their out-of-pocket expenses, and in no case less than 30%, through 125,000 miles.

The risk, expense, complexity, and likely duration of further litigation also support approval of the Settlement. GM has asserted significant legal and factual defenses, *Docs.23, 29, 30 and 37*, has moved to dismiss the complaint, voluntarily extended the new vehicle warranty to 5 years / 75,000 miles, and has raised many other issues regarding the merits and class certification during negotiations. Even with a relatively expedited trial date of August 25, 2009, continued litigation would not result in relief to the Class until much later. Considering the financial hardship of those who have already spent thousands of dollars to repair their vehicles and of those who have been unable to afford repairs, the Settlement provides swift relief to alleviate those financial burdens. The availability of relatively expedited relief under the Settlement represents an intangible benefit of the Settlement that would be unavailable through the avenue of further litigation.

In light of the risks, the Settlement provides the Class with substantial relief. The Settlement provides substantial class relief (often thousands of dollars per Class Member), up to 100% of a Class Member's past and future out-of-pocket expense, including not only for transmission repair/replacement, but also for rental vehicles, towing expenses, and trade-in

Notice of Motion and Motion for Preliminary Approval of Settlement

1  losses.  The specific amount of relief varies equitably based on the relief requested in the

2  complaint, the strengths and weaknesses of the various claims depending on specific

3  circumstances, and the results of the investigation and discovery conducted by Class Counsel.

4  Especially considering that the Class could not be guaranteed any relief at all if the case were to

5  proceed to trial, much less the substantial relief afforded by the negotiated Settlement, the

6  Settlement is eminently fair, reasonable, and adequate.

7          Class Counsel also have made an effort to notify all Class Members who previously

8  contacted them to discuss the Settlement.  *Ex. 2 at ¶8.*  The response has been overwhelmingly

9  favorable. *Id.*  With knowledge of the strengths and weaknesses of this case, Class Counsel

10  believe that the Settlement provides substantial relief to the Class.  The views of Class Counsel,

11  who are skilled attorneys with significant class action experience, are further bolstered by Judge

12  Sabraw's endorsement of the Settlement, through his involvement as mediator and otherwise.

13  **VI.    THE PROPOSED CLASS NOTICE IS APPROPRIATE.**

14          **A.    The Class Notice Satisfies Due Process Requirements.**

15          Due process and judicial interpretation of the notice provisions under California and federal

16  law require that notice be provided to class members by the best reasonable method available.

17  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974); *Cartt v. Superior Court*, 50

18  Cal.App.3d 960, 973-74 (1975).  The notice plan here entails mailing the notice to all known and

19  reasonably ascertainable class members based on GM's records and DMV records in all 50 states

20  as available through Polk data.  The Class Notice is consistent with class certification notices

21  approved by numerous state and federal courts, and is, under the circumstances of this case, the

best notice practicable.  The proposed Class Notice and Claims Process satisfy all due process

requirements.  *See Eisen*, 417 U.S. 156; *Cartt*, 50 Cal.App.3d 960.

### B.    The Proposed Class Notice Is Accurate And Informative.

The proposed Class Notice provides: (1) information on the meaning and nature of the

proposed Settlement Class; (2) the terms and provisions of the Settlement; (3) the relief the

Settlement will provide Settlement Class members; (4) the amount requested by Class Counsel

for reimbursement of costs, attorneys' fees and for the Representative Plaintiffs' incentive

awards; (5) the date, time and place of the final Settlement approval hearing, and the procedure

and deadlines for submitting Claim Forms, Requests for Exclusion and comments and/or

objections.

The Class Notice also fulfills the requirement of neutrality in class notices.  *See* 3 Newberg

§ 8.39.  It summarizes the proceedings to date and the terms and conditions of the Settlement, in

an informative and coherent manner and in compliance with the Manual's statement that the

notice should state essential terms "concisely and clearly . . . in plain, easily understood

language."  *See* Manual for Complex Litigation § 21.31 (4th ed. 2004).  The Class Notice clearly

states that the Settlement does not constitute an admission of liability by GM, and recognizes that

the Court has not ruled on the merits of the action.  It also states that the final settlement approval

decision has yet to be made.  Accordingly, the Class Notice complies with the standards of

clarity, fairness, completeness, and objectivity required of a settlement class notice disseminated

under authority of the Court.  *See* Fed. R. Civ. P. 23[c][2]; 23[e]; 3 Newberg, §§ 8.21, 8.39;

Manual for Complex Litigation, §§ 21.311,  21.312 (4th ed. 2004).

– 15 –

VII.    **PAYMENT TO THE NAMED PLAINTIFFS FOR THEIR SERVICE TO THE CLASS IS REASONABLE AND ROUTINELY AWARDED.**

Enhancement payments to representative plaintiffs in class action settlements are intended to recognize their level of risk, the time expended and the efforts undertaken on behalf of the class. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $300,000 to each named plaintiff); *see also* Manual for Complex Litigation § 30.42 n.763 (3d ed. 1995) (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery"). S*ee also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) (approving a $50,000 participation award). The much smaller $2,500 incentive awards proposed in this case represent a small fraction of the value of the relief to the rest of the Class and are eminently reasonable.

VIII.    **THE WORK PERFORMED BY PLAINTIFFS' COUNSEL SUPPORTS THE REQUEST FOR ATTORNEYS' FEES.**

Only after the parties had reached agreement on the other settlement terms through a signed term sheet, Class Counsel then negotiated for their fees and costs to be paid by GM *in addition to* the class relief. The proposed notice will inform class members that Class Counsel will request an award of attorneys' fees and costs in the amount of $4,425,000. This amount is less than five percent (5%) of the value of the class relief, conservatively estimated by Class Counsel at more than $100 million. The notice also informs class members that this request, like the other terms of the settlement, will be subject to Court approval. The Ninth Circuit has established an attorneys' fees "benchmark" of twenty-five percent (25%) of the class relief. *See, e.g. Id.* at 297;

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  For purposes of preliminary approval of the Settlement, the requested fees in an amount far below the established Ninth Circuit benchmark are well within the range of reasonableness.  Class counsel will prepare and file a memorandum in support of the attorneys' fee request prior to the final approval hearing.

## IX.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed Settlement.  At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of Settlement approval, and members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlement.  Class Counsel request that the hearing be held during the week of February 9, 2009, or earlier if the Court grants preliminary approval before September 2, 2008.

## X.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval of the proposed Settlement, certify the Settlement Class, approve the proposed form of Class Notice, Final Notice and Claim Form, direct dissemination of Class Notice, set the deadline for Requests for Exclusion and any objections to the Settlement, and schedule the final approval hearing.

Notice of Motion and Motion for Preliminary Approval of Settlement

**Dated:  July 22, 2008**                    **Respectfully submitted,**

THE LAKIN LAW FIRM, P.C.

<u>s/ Robert W. Schmieder II</u>
THE LAKIN LAW FIRM, P.C.
Robert W. Schmieder II (admitted *pro hac vice*)
Mark L. Brown (admitted *pro hac vice*)
300 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095
Telephone:  (618) 254-1127
Facsimile:  (618) 254-0193

C. Brooks Cutter, SBN, 121407
KERSHAW CUTTER & RATINOFF LLP
401 Watt Avenue
Sacramento, California 95864
Telephone:  (916) 448-9800
Facsimile:  (916) 669-4499

– 18 –

Notice of Motion and Motion for Preliminary Approval of Settlement

Robert W. Schmieder II (admitted *pro hac vice*)
Mark L. Brown (admitted *pro hac vice*)
THE LAKIN LAW FIRM, P.C.
300 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095
Telephone:  (618) 254-1127
Facsimile:  (618) 254-0193

C. Brooks Cutter, SBN, 121407
KERSHAW CUTTER & RATINOFF LLP
401 Watt Avenue
Sacramento, California 95864
Telephone:  (916) 448-9800
Facsimile:  (916) 669-4499

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KELLY CASTILLO, NICHOLE BROWN, BRENDA ALEXIS DIGIANDOMENICO, VALERIE EVANS, BARBARA ALLEN, STANLEY OZAROWSKI, and DONNA SANTI, *Individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS CORPORATION, <br><br> Defendants. | Case No.: 2:07-CV-02142 WBS-GGH <br><br> **CERTIFICATE OF SERVICE** |

I hereby certify that on July 22, 2008, I electronically filed the Notice of Motion and Motion for Order (1) Preliminarily Approving Class Action Settlement; (2) Provisionally Certifying Settlement Class; (3) Approving Class Notice, Claim Form and Request for Exclusion Procedure; (4) Directing Dissemination of Class Notice; and (5) Setting a Hearing for Final Approval of the Settlement with the Clerk of Court using the CM/ECF system, which will send notification of such filings(s) to the following:

– 19 –

Notice of Motion and Motion for Preliminary Approval of Settlement

Gregory Oxford
goxford@icclawfirm.com; arobinson@icclawfirm.com

Respectfully submitted,

s/ Robert W. Schmieder II
THE LAKIN LAW FIRM, P.C.

300 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095
Telephone:  (618) 254-1127
Facsimile:   (618) 254-0193

– 20 –

Notice of Motion and Motion for Preliminary Approval of Settlement

1  ROBERT W. SCHMIEDER II (*pro hac vice*)
   MARK L. BROWN (*pro hac vice*)
2  THE LAKIN LAW FIRM, P.C.
   300 Evans Avenue
3  P.O. Box 229
   Wood River, Illinois 62095
4  Telephone:    (618) 254-1127
   Facsimile:    (916) 254-0193
5
   C. BROOKS CUTTER (S.B. #121407)
6  KERSHAW, CUTTER & RATINOFF LLP
   401 Watt Avenue
7  Sacramento, California 95864
   Telephone:    (916) 448-9800
8  Facsimile:    (916) 669-4499

9  Attorneys for Plaintiffs

10 GREGORY R. OXFORD (S.B. #62333)
   ISAACS CLOUSE CROSE & OXFORD LLP
11 21515 Hawthorne Boulevard, Suite 950
   Torrance, California  90503
12 Telephone:    (310) 316-1990
   Facsimile:    (310) 316-1330
13
   Attorneys for Defendant
14 General Motors Corporation

15

16

17              **UNITED STATES DISTRICT COURT**

18           **EASTERN DISTRICT OF CALIFORNIA**

19

20 KELLY CASTILLO, NICHOLE                  Case No. 2:07-CV-02142 WBS-GGH
   BROWN, and BARBARA GLISSON,
21 *Individually and on behalf of all others*   **STIPULATION OF SETTLEMENT**
   *similarly situated,*
22                                            Honorable William B. Shubb
                          Plaintiffs,
23
                    v.
24
   GENERAL MOTORS
25 CORPORATION,

26                          Defendant.

27

28
                                     1

EXHIBIT

1

1    This Stipulation of Settlement (the "Agreement") is made and entered into between

2    Plaintiffs Kelly Castillo, Nicole Brown, Barbara Glisson, Valerie Evans, Brenda Alexis

3    Digiandomenico, Stanley Ozarowski and Donna Santi, individually and as representatives

4    of the Class (as defined below), and General Motors Corporation on its own behalf and on

5    behalf of its subsidiaries and affiliates, including but not limited to Saturn Corporation and

6    Saturn Distribution Corporation (collectively "GM" or "Defendant"). The Agreement is

7    intended to fully, finally and forever resolve, discharge and settle the lawsuit styled *Kelly*

8    *Castillo, et al. v. General Motors Corporation*, Case No. 2:07-CV-02142 WBS-GGH,

9    pending in the United States District Court for the Eastern District of California (the

10   "Action") and all matters raised or that could have been raised therein, subject to the terms

11   and conditions hereof and approval by the Court.

12                                    **I. BACKGROUND**

13    1.    Plaintiffs Castillo, Brown and Glisson originally filed this Action

14   individually and on behalf of a proposed class of all residents of the states of California,

15   Florida, Georgia, Illinois, Massachusetts, Missouri, Michigan, New Jersey, New York,

16   North Carolina, Ohio or Oklahoma who own or have owned a 2002, 2003, 2004 or 2005

17   Saturn VUE or a 2003 and 2004 Saturn ION equipped with a continuously variable VTi

18   transmission (the "Class Vehicle" or "Vehicle"). These and four other plaintiffs (Ms.

19   Evans, Ms. Digiandomenico, Mr. Ozarowski and Ms. Santi) later filed a First Amended

20   Complaint which added residents of Virginia to the proposed class. Contemporaneously

21   herewith, plaintiffs are filing a Second Amended Complaint on behalf of a proposed

22   nationwide class which is further described below.

23    2.    Plaintiffs allege that the Vehicles are defective because the VTi transmission

24   is prone to "premature" failure. They claim that GM is liable to alleged class members for

25   damages under state consumer protection statutes and on breach of warranty and unjust

26   enrichment theories. GM denies that there is any defect or that it is liable to plaintiffs or

27   members of the proposed Class on any theory. In March 2004, however, GM voluntarily

28   extended the limited new vehicle warranty for the VTi transmission from 3 years or

1   36,000 miles, whichever comes first, to 5 years or 75,000 miles, whichever comes first.

2   GM contends that state consumer protection statutes do not apply in this case, that it is

3   satisfying all of its warranty obligations by performing its duties under the extended new

4   vehicle warranty and that plaintiffs' unjust enrichment theory cannot enlarge its legal

5   obligations beyond those provided by the warranty.

6        3.     Both before and after commencing the Action Class Counsel (as that term is

7   defined below) conducted an extensive examination and evaluation of the relevant law

8   and facts in order to assess the merits of Plaintiffs' claims and GM's defenses and to

9   determine how best to serve the interests of Plaintiffs and the proposed Class.  That

10  examination and evaluation included:  (i) interviews of hundreds of Class Members; (ii)

11  consultation with automotive and damages experts; (iii) research into various technical

12  issues; (iv) depositions of GM employees knowledgeable concerning the VTi

13  transmission; (v) review of thousands of pages of documents produced by GM; and (vi)

14  review of voluminous documents that Class Counsel subpoenaed from third parties.

15  Based on this investigation, Plaintiffs and Class Counsel are satisfied that the Agreement

16  is based upon an appropriate analysis of the facts and law and that this Agreement is in the

17  best interests of the Class.

18        4.     Plaintiffs and Class Counsel have agreed to settle the Action pursuant to the

19  provisions of the Agreement, and subject to court approval, after considering such factors

20  as:  (i) the benefits to Plaintiffs and the Class under the terms of the Agreement; (ii) the

21  uncertainty of being able to prove the allegations made in the Action, and the uncertainty

22  of being able to overcome the factual and legal defenses thereto; (iii) the inherent risks

23  and uncertainty of complex litigation such as the Action; (iv) the difficulties, risks and

24  delays inherent in such litigation; (v) the desirability of consummating the Agreement

25  promptly in order to provide expeditious relief to plaintiffs and the Class; (vi) the fact that

26  GM has consistently and vigorously disputed Plaintiffs' substantive legal and factual

27  allegations; and (vii) the significant expense and time necessary to prosecute the litigation

28  through trial and appeal.  Plaintiffs and Class Counsel believe that settlement in

3

1    accordance with the terms of the Agreement is desirable and in the best interests of the

2    Class and preferable to continuing with protracted and uncertain litigation and that the

3    settlement terms are fair and reasonable and provide substantial and immediate relief to

4    the Class. The Agreement has been reached after substantial, good faith, arms-length

5    negotiations, including mediation before the Honorable Ronald Sabraw, Judge of the

6    Alameda County Superior Court (Ret.) (the "Mediator").

7         5.     GM expressly denies any wrongdoing and does not admit or concede any

8    actual or potential fault, wrongdoing or liability in connection with any facts or claims

9    that have been or could have been alleged against it in the Action, and GM denies that

10    plaintiffs or any Class Members have suffered damage or were harmed by the conduct

11    alleged. GM has concluded, however, that it is desirable to settle the Action upon the

12    terms and conditions set forth herein because it will (i) fully resolve all claims that were or

13    could have been raised in the Action; (ii) avoid the expense, burdens and uncertainties of

14    continued litigation; and (iii) promote customer satisfaction with Saturn vehicles.

15         6.     Plaintiffs and GM therefore stipulate and agree that, subject to the approval

16    of the Court, the Action shall be compromised, settled, released, and dismissed with

17    prejudice upon and subject to the following terms and conditions:

18                          **II.  DEFINITIONS**

19         As used in this Agreement and the exhibits hereto the following terms have the

20    meanings specified below:

21         1.     "Action" means the lawsuit styled *Kelly Castillo, et al. v. General Motors*

22    *Corporation*, Case No. 2:07-CV-02142 WBS-GGH, pending in the United States District

23    Court for the Eastern District of California.

24         2.     "Class" or "Class Members" means all persons who are residents of the

25    United States and who as of the date of entry of the Preliminary Approval Order (as

26    defined in paragraph 5 below) own or have owned a Class Vehicle (as defined in

27    paragraph 3 below) except that the Class shall exclude (i) any person, firm, trust,

28    corporation, or other entity that purchased Class Vehicles from GM, or any entity related

4

1  or affiliated with GM, for resale or fleet purposes (including without limitation any

2  authorized Saturn Retailer) and (ii) any person who has instituted an action for damages

3  for property damage or personal injury against GM in connection with a VTi transmission.

4      3.     "Class Vehicles" and "Vehicles" mean 2002 through 2005 model year

5  Saturn VUEs equipped with VTi transmissions and 2003 through 2004 model year Saturn

6  IONs equipped with VTi transmissions.

7      4.     "Judgment" means the judgment, substantially in the form attached hereto

8  as Exhibit A, to be entered by the Court in the Action finally approving this Agreement

9  and dismissing the Action with prejudice.

10      5.     "Preliminary Approval Order" means the Court's order preliminarily

11  approving the terms of this Agreement as fair, adequate, and reasonable, including the

12  Court's approval of the form and manner of giving notice to Class Members, substantially

13  in the form attached hereto as Exhibit B.

14      6.     "Effective Date" means ten (10) business days after the later of (a) the date

15  upon which the time for seeking appellate review of the Judgment (by appeal or

16  otherwise) shall have expired; or (b) the date upon which the time for seeking appellate

17  review of any appellate decision affirming the Judgment (by appeal or otherwise) shall

18  have expired and all appellate challenges to the Judgment shall have been dismissed with

19  prejudice without any person having any further right to seek appellate review thereof (by

20  appeal or otherwise).

21      7.     "Class Notice" means the notice, substantially in the form attached hereto as

22  Exhibit C, provided to Class Members after issuance of the Preliminary Approval Order.

23      8.     "Final Notice" means the notice substantially in the form attached hereto as

24  Exhibit D that will be provided to Class Members after the Effective Date.

25      9.     "Claim Form" means the forms attached hereto as Exhibits E-1 and E-2, to

26  be sent to Class Members who purchased their Vehicles new or used, respectively, along

27  with the Final Notice.

28

10.    "Class Counsel" means The Lakin Law Firm, P.C., 300 Evans Avenue, P.O. Box 229, Wood River, Illinois 62095, who are the lead attorneys of record representing the interests of Plaintiffs and Class Members.

11.    "Local Counsel" means Kershaw, Cutter & Ratinoff, LLP, 401 Watt Avenue, Sacramento, California 95864, who are the local attorneys of record representing the interests of Plaintiffs and Class Members.

12.    "Defendant's Counsel" means Isaacs Clouse Crose & Oxford LLP, 21515 Hawthorne Boulevard, Suite 950, Torrance, California 90503, who are the attorneys of record representing GM.

13.    "Authorized Saturn Retailer" means any Saturn Retailer in the United States that is a signatory to an existing and effective Saturn Retailer Agreement.

14.    "Released Claims" means any and all past, present, and future claims, demands, causes of actions or liabilities, including but not limited to those for alleged violations of any state or federal statutes, rules or regulations, and all common law claims, including Unknown Claims as defined herein, based on or related in any way to (a) the operation, design, durability, reliability, repair, value or performance of VTi transmissions in Class Vehicles or (b) the factual allegations and legal claims that were made or could have been made in the Action. Released Claims do not include any claim, demand or cause of action against GM for property damage or personal injury in connection with a VTi transmission.

15.    "Unknown Claims" means any Released Claim that any plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release provided for herein, including without limitation those that, if known to him, her or it, might have affected his, her or its settlement and release pursuant to the terms of this Agreement, or might have affected his, her or its decision not to object to the settlement terms memorialized herein.

16.    "Attorneys' Fees and Expenses" means the amount awarded by the Court to Class and Local Counsel to compensate them, and any other attorneys for plaintiffs or the

6

1    Class, and is inclusive of all attorneys' fees, costs and expenses of any kind in connection

2    with the Action. Attorneys' Fees and Expenses will not under any circumstances exceed

3    the sum of $4,425,000.00.

4         17.   "Fairness Hearing" means the hearing at which the Court will consider and

5    approve the Agreement as fair, reasonable, and adequate, certify the Class, award

6    Attorneys' Fees and Expenses, enter the Final Judgment, and make such other final

7    rulings as are contemplated by this Stipulation.

8        **III.  CLASS RELIEF, ATTORNEYS' FEES AND COSTS**

9        1.   The relief available to Class Members under the terms of this Stipulation is

10    reimbursement for certain out-of-pocket expenses and losses relating to the VTi

11    transmissions of Class Vehicles. Reimbursable expenses include (a) costs to inspect,

12    repair or replace a malfunctioning VTi transmission ("repair costs"), (b) costs to rent a

13    replacement vehicle or secure other transportation while the malfunctioning VTi

14    transmission was or is being inspected, repaired or replaced ("rental costs"), (c) costs to

15    tow or transport the Class Vehicle to the place where the malfunctioning VTi transmission

16    was or is being inspected, repaired or replaced ("towing costs") and (d) documented

17    expenses relating to the trade-in of a Class Vehicle with a VTi transmission failure at time

18    of trade-in as further limited and defined below ("trade-in costs"). To be reimbursable,

19    repair, rental, towing and trade-in costs relating to the VTi transmission ("Reimbursable

20    Expenses") must be incurred by the Class Member within 125,000 miles after the original

21    retail sale or lease of the Class Vehicle or within the time limitations set forth in Chart A

22    below, whichever occurs first. The relief available to Class Members shall be personal to

23    each Class Member, and shall not under any circumstances be assignable to any other

24    person, third party or other entity and GM shall have no liability to provide any such relief

25    whatsoever to any third person whether based on a purported assignment, subrogation or

26    any other legal theory.

27

28

A.    <u>Past Reimbursable Expenses</u>

GM will reimburse Class Members who incur Reimbursable Expenses for repair, rental and towing costs relating to a VTi transmission on or before the date of Final Judgment ("Past Reimbursable Expenses") based on the percentages shown in Chart B below.  To obtain reimbursement, the Class Member must submit a Claim Form (*see* Exhibits E-1 and E-2) and submit as proof of the Reimbursable Expenses the Saturn Retailer or other repair shop bills showing the date, mileage and amount of the malfunctioning VTi transmission inspection, repair and/or replacement costs paid by the Class Member as well as receipts showing the rental and towing costs, if any, incurred by the Class Member.  All Past Reimbursable Expense claims must be submitted within one (1) year after the Effective Date.  GM shall use, or cause any claims administrator to use, its best efforts to issue Past Reimbursable Expense checks to the Class Member as soon as practicable, but in no event more than thirty (30) days from the date the Claim Form and proof of loss is received.

B.    Past <u>Trade-In With VTi Transmission Malfunction Reimbursement</u>

To claim reimbursement for  "trade-in expense," the Class Member must submit a Claim Form (*see* Exhibits E-1 and E-2) and provide contemporaneous dealer documentation including (1) a sales contract including the Vehicle Identification Number ("VIN") of the Class Vehicle that was traded in and (2) a contemporaneous repair estimate referencing the same VIN dated on or before the trade-in date showing a transmission malfunction.  The reimbursement shall equal the repair estimate multiplied by the appropriate percentage from Chart B based on the Vehicle's mileage and the Class Member being either a new or used Vehicle purchaser.  Class Members may seek reimbursement of trade-in losses only upon proof that the Class Vehicle was traded-in before the date Class Notice was mailed to potential Class Members.  All claims for reimbursement of trade-in expense must be submitted within one (1) year after the Effective Date.  GM shall use, or cause any claims administrator to use, its best efforts to issue Past <u>Trade-In With VTi Transmission Malfunction Reimbursement</u> checks to the

1  Class Member as soon as practicable, but in no event more than thirty (30) days from the

2  date the Claim Form and proof of loss is received.

3         C.    <u>Future Reimbursable Expenses</u>

4        GM will reimburse Class Members who incur an expense relating to a VTi

5  transmission after the date of Final Judgment (except trade-in expense) ("Future

6  Reimbursable Expenses") based on the percentages shown in Chart B below.  To obtain

7  reimbursement, the Class Member must submit a Claim Form (*see* Exhibits E-1 and E-2)

8  and submit as proof of the repair expense the Saturn Retailer or other repair shop bills

9  showing the date, mileage and amount of the malfunctioning VTI transmission inspection,

10  repair and/or replacement costs paid by the Class Member as well as receipts showing the

11  rental and  towing costs, if any, incurred by the Class Member.  GM shall use, or cause

12  any claims administrator to use, its best efforts to issue Future Reimbursable Expense

13  checks to the Class Member within ten (10) General Motors business days of the date the

14  Claim Form and proof of loss is received.  Upon written request by the Class Member,

15  GM shall also issue Future Reimbursable Expense checks payable jointly to the Class

16  Member and a Saturn Retailer or other repair shop.  All Future Expense Reimbursement

17  claims must be for expenses incurred by the Class Member before the dates set forth in

18  Chart A below and must be submitted no later than the first day of March following the

19  date specified in Chart A for the applicable model year Class Vehicle.

20  **CHART A**

| Model Year | Date Before Which Expense is Reimbursable |
|---|---|
| 2002 | January 1, 2010 |
| 2003 | January 1, 2011 |
| 2004 | January 1, 2012 |
| 2005 | January 1, 2012 |

## CHART B

| Vehicle Mileage[1] | GM Reimbursement (New) | GM Reimbursement (Used) |
|---|---|---|
| 100,000 or less | 100 percent | 75 percent |
| 100,101-125,000 | 75 percent | 30 percent |

3.    For each VTi transmission repair or replacement using genuine Saturn or GM parts, such replacement parts will be covered by the standard GM Service Parts Operations warranty for a period of 12 months or 12,000 miles, whichever comes first.

4.    For a claim involving a Past Reimbursable Expense, a Past Trade-in With Transmission Malfunction Expense, or a Future Reimbursable Expense incurred prior to the Effective Date, GM has the right to reduce the amount to be reimbursed by any amount previously paid by GM or any affiliate of GM for that same expense.  GM, however, has no right to reduce any other Future Reimbursable Expense claim incurred by the Class Member subject to appropriate verification of the amount of the expenses and the Class Member's Eligibility for reimbursement.  Notwithstanding the foregoing provisions, GM shall have the right to enforce fully the terms of any release, judgment, arbitration award or other adjudication obtained in connection with any Class Member's prior claim relating to the alleged malfunction of a VTi transmission.

5.    GM in addition to all other relief provided herein shall pay all costs of Class Notice and claims administration, which payments shall not diminish any relief provided to Class Members under paragraphs 1 through 3 above.  GM subject to the terms of the Preliminary Approval Order shall use its best efforts to direct or cause to be directed first-class mail notice to Class Members based on vehicle registration data to be obtained from The Polk Company ("Polk") and updated using the U.S. Postal Service's NCOA (National Change of Address) data base.  Within a reasonable time following the Effective Date, GM also agrees to provide appropriate notification to authorized Saturn Retailers.  GM may at its option select a Claims Administrator or process claims internally, in either case

---

[1]    Mileage at time Past or Future Reimbursable Expense is incurred.

1  subject to appropriate notice to and consultation with Class Counsel, who shall have the

2  right to monitor claims administration.  GM or its designee will process Claim Forms

3  submitted by Class Members and determine if the Class Member is eligible for any of the

4  relief available under the Agreement.  With respect to any claim denials that are disputed

5  by the Class Member or any disputes concerning reimbursement rates, GM and Class

6  Counsel will use reasonable efforts to resolve the dispute, but if no resolution is reached,

7  then the dispute will be submitted to the Mediator (or in his absence another JAMS

8  neutral approved by GM and Class Counsel), who the parties and Class Members agree

9  will have authority to render a binding and final decision in the nature of a non-appealable

10  arbitration award.

11       6.     GM agrees to provide appropriate notice to governmental officials pursuant

12  to the terms of the Class Action Fairness Act.

13       7.     After an agreement was reached as to the principal terms and conditions of

14  this Agreement, and with the assistance of the Mediator, the Parties entered into

15  discussions regarding incentive payments to the named plaintiffs in the Action ("Incentive

16  Fees") and Attorneys' Fees and Expenses for Class and Local Counsel, as described

17  herein.  Pursuant to those discussions, prior to the Fairness Hearing and entry of the

18  Judgment, Class Counsel agree to apply to the Court for an award of Incentive Fees to the

19  named Plaintiffs and for an award of Attorneys' Fees and Expenses.  GM agrees not to

20  oppose either application provided that Class Counsel do not request an award of

21  Incentive Fees in excess of $2,500 per Plaintiff and do not request a total and all-inclusive

22  Attorneys' Fees and Expenses award exceeding the sum of $4,425,000.00.  Subject to the

23  other terms of this Agreement, GM agrees to pay the Incentive Fees and Attorneys' Fees

24  and Expenses awarded by the Court provided that the awards do not exceed these

25  amounts.  Such payments will not reduce benefits available to Class Members nor will

26  Class Members be required to pay any portion of the Attorneys' Fees and Expenses.  The

27  Class Notice will advise the Class Members of Class Counsel's intent to seek awards of

28  Attorneys' Fees and Expenses and Incentive Fees for the named plaintiffs, including the

1   amounts thereof. The amounts awarded by the Court shall not affect the other terms of

2   the settlement which shall remain in full force and effect.

3       8.    The Incentive Fees and Attorneys' Fees and Expenses, as awarded by the

4   Court, shall be paid to Class Counsel by GM after the entry of the Judgment and within

5   ten (10) business days after the Effective Date, contingent on receipt of appropriate

6   taxpayer identification information. In no event shall GM pay or be required to pay any

7   other attorneys' fees, costs or expenses to Class Counsel, Local Counsel, or any other

8   attorney purporting to represent any plaintiff.

9       9.    Class Counsel will allocate and distribute the award of Attorneys' Fees and

10  Expenses among all other counsel of record and/or for Plaintiffs. GM shall have no

11  responsibility for and no liability with respect to the allocation of the Attorneys' Fees and

12  Expenses among Class Counsel, Local Counsel, or any counsel representing Plaintiffs,

13  and GM takes no position with respect to such matters. GM's sole obligation will be to

14  pay the Attorneys' Fees and Expenses to Class Counsel that are awarded by the Court and

15  that are not in excess of $4,250,000.00 and the Incentive Fees to the named Plaintiffs that

16  are not in excess of $2,500.00 per Plaintiff.

17      10.   GM shall have no liability or obligation to pay any fees, expenses, costs or

18  disbursements to, or incur any expense on behalf of, any person, either directly or

19  indirectly, in connection with this Action, the Agreement, or the proposed settlement,

20  other than the amounts expressly provided for in the Agreement.

21      11.   Promptly after execution, plaintiffs and GM shall submit this Agreement

22  and its exhibits to the Court and jointly apply for a Preliminary Approval Order which

23  contains substantially all of the terms and provisions in Exhibit B attached hereto,

24  including approving the Class Notice, Final Notice, Claim Form, notification procedure,

25  and the provisions for Class Members to opt out or object as set forth herein. The Parties

26  will request that the Court set a Fairness Hearing promptly after the necessary mailing

27  information is obtained by Polk and a schedule for mailing Class Notice is established.

28

12.    Each Plaintiff and Class Member stipulates and agrees that, upon the
Effective Date, he, she, or it shall be deemed to have, and by operation of the Judgment
shall have, released, waived and discharged his, her or its Released Claims as defined
herein and shall have expressly waived and relinquished, to the fullest extent permitted by
law, the provisions, rights, and benefits of section 1542 of the California Civil Code, and
of any similar law of any other state, which provides: "a general release does not extend
to claims which the creditor does not know or suspect to exist in his or her favor at the
time of executing the release, which if known by him or her must have materially affected
his or her settlement with the debtor." Upon entry of the Judgment, each Plaintiff and
Class Member shall be deemed to have, and by operation of the Judgment shall have,
expressly waived and relinquished, to the fullest extent permitted by law, any and all
provisions, rights, and benefits conferred by any law of the United States, or any state of
the United States, or principle of common law that is similar, comparable or equivalent to
section 1542 of the California Civil Code. Plaintiffs and Class Members may hereafter
discover facts in addition to or different from those which he or she now knows or
believes to be true with respect to the subject matter of the Released Claims, but each
Plaintiff and Class Member, upon entry of the Judgment, shall be deemed to have, and by
operation of law shall have, fully, finally and forever settled, released and discharged any
and all Released Claims, known or unknown, suspected or unsuspected, contingent or
non-contingent, whether or not concealed or hidden, that now exist or heretofor may have
existed upon any theory of law or equity now existing or coming into existence in the
future, including but not limited to, conduct that is negligent, reckless, intentional, with or
without malice, or a breach of any duty, law or rule, without regard to the subsequent
discovery or existence of such different or additional facts.

13.    Plaintiffs reserve the right to conduct reasonable confirmatory discovery.

## IV. REQUESTS FOR EXCLUSION

1.    Any putative Class Member who wishes to be excluded from the Class must
deliver a written request for exclusion to Class Counsel, and the same must be postmarked

13

1  within 40 days following the date of mailing of the Class Notice.  Copies of any requests

2  for exclusion received by Class Counsel shall be forwarded immediately to GM's counsel.

3  Class Counsel shall file with the Court a list of all Class Members who requested

4  exclusion at least five (5) business days before the Fairness Hearing.

5      2.    Any putative Class Member who does not file a timely written request for

6  exclusion shall be bound by all subsequent proceedings, orders and judgments in the

7  Action.

8      3.    Pending Court approval of this Agreement at the Fairness Hearing, all

9  potential Class Members who do not timely exclude themselves from the Class are

10  preliminarily enjoined and barred (i) from filing, commencing, prosecuting, intervening

11  in, or participating as class members in, any lawsuit in any jurisdiction based on or

12  relating to the claims and causes of action, or the facts and circumstances relating thereto,

13  in this Action and/or the Released Claims; and (ii) from filing, commencing or

14  prosecuting any other lawsuit as a class action on behalf of Class Members (including by

15  seeking to amend a pending complaint to include class allegations or seeking class

16  certification in a pending action) based on or relating to the claims and causes of action, or

17  the facts and circumstances relating thereto, in this Action and/or the Released Claims.

18  ## V. OBJECTIONS TO SETTLEMENT

19      1.    Any Class Member who has not submitted a timely written request for

20  exclusion and who wishes to object to the Agreement, the proposed settlement, or to the

21  request for Attorneys' Fees and Expenses, must serve a written objection that must be

22  postmarked no later than 40 days following the date of mailing of the Class Notice.

23  Written objections must include: (i) the objector's name, address and telephone number;

24  (ii) the Vehicle Identification Number of the vehicle that makes the objector a member of

25  the Class; (iii) the name of this case and the case number, (iv) a statement of each

26  objection; and (v) a statement of the specific reasons, if any, for each objection, including

27  any legal and factual support the objector wishes to bring to the Court's attention and any

28  evidence the objector wishes to introduce in support of the objection(s).  If the objection is

1   presented through an attorney, the written objection must also include: *(i)* the identity and

2   number of Class Members represented by objector's counsel; *(ii)* the number of such

3   represented Class Members who have opted out of the settlement; *(iii)* the number of such

4   represented Class Members who have remained in the settlement and have not objected;

5   *(iv)* the date the objector's counsel assumed representation for the objector, and *(v)* a list

6   of the names of all cases where the objector's counsel has objected to a class action

7   settlement in the last three years.  Objecting Class Members must also make themselves

8   available for deposition by Class Counsel and/or GM's counsel in their county of

9   residence, between the time the objection is filed and seven (7) days before the date of the

10   Fairness Hearing.

11          2.       Any Class Member who properly files and serves a written objection may

12   appear at the Fairness Hearing, either in person or through a personal counsel hired at the

13   Class Member's sole expense, to object to the fairness, reasonableness, or adequacy of the

14   Agreement or the proposed settlement, or to the request for Attorneys' Fees and Expenses.

15   Class Members, or their attorneys, intending to make an appearance at the Fairness

16   Hearing, must deliver to Class Counsel and Defendant's Counsel, and have file-stamped

17   by the Court, no later than 20 days before the Fairness Hearing or as the Court otherwise

18   may direct, a Notice of Intention to Appear.  The Notice of Intention to Appear must: *(i)*

19   state how much time the Class Member and/or their attorney anticipates needing to

20   present the objection; *(ii)* identify, by name, address, telephone number and detailed

21   summary of testimony, any witnesses the Class Member and/or their attorney intends to

22   present any testimony from; and *(iii)* identify all exhibits the Class Member and/or their

23   attorney intends to offer in support of the objection and attach complete copies of all such

24   exhibits.

25          3.       Any Class Member and/or their attorney who fails to comply with the

26   provisions of the foregoing paragraphs 1 and 2 shall be deemed to have waived and

27   forfeited any and all rights he or she may have to appear separately and/or object, and

28   shall be bound by all the terms of the Agreement.

## VI. GENERAL PROVISIONS

1.     The terms and provisions of the Agreement may only be amended, modified or expanded by written agreement signed on behalf of all Parties.

2.     The Agreement will terminate at the sole option and discretion of GM or plaintiffs if: *(i)* the Court, or any appellate court(s), rejects, modifies or denies approval of any material portion of the Agreement or the proposed settlement (except for the award of Attorneys' Fees and Expenses, as to which the provisions of paragraph III-7 shall control), including, without limitation, the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class and/or the scope or terms of the Released Claims; or *(ii)* the Court, or any appellate court(s), does not enter or affirm, or alters or expands, any material portion of the Final Judgment. The terminating party must exercise the option to withdraw from and terminate the Agreement, no later than 10 business days after receiving notice of the event prompting the termination.

3.     GM may elect to terminate the Agreement if it is required to pay any amount or take any action not agreed upon herein by the Parties, or if more than 5% of Class Members opt out of the Class.

4.     If the Agreement is terminated, then the Agreement shall be null and void and shall have no force or effect, and no party to the Agreement shall be bound by any of its terms, and:

    a.     The Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of GM, plaintiffs or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of the Agreement;

    b.     GM reserves all defenses, arguments and motions as to all claims that have been or might later be asserted in the Action, including (without limitation) any argument that the Action may not be litigated as a class action;

    c.     Plaintiffs reserve all claims that have been or might later be asserted in the Action, as well as all motions relating thereto and arguments in support thereof;

16

      d.      Neither the Agreement, nor the fact of its having been made, shall be admissible or entered into evidence for any purpose whatsoever, and the settlement negotiations shall remain confidential; and

      e.      Any order or judgment entered as a result of the Agreement will be deemed vacated and will be without force or effect, and shall be inadmissible into evidence for any purpose whatsoever.

5.      The Agreement shall be governed by and interpreted according to the laws of the State of California, notwithstanding its conflict of law provisions.

6.      If any disputes arise regarding the implementation or interpretation of this Agreement, the parties agree to use reasonable efforts to resolve the dispute, including consultation with the Mediator, and if no agreement can be reached, the dispute will be submitted to the Court, which will retain continuing jurisdiction to resolve such disputes.

7.      Whenever the Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by facsimile and/or next-day (excluding weekends and holidays) express delivery service as follows:

      a.      If to Defendant, then to:

| | |
|---|---|
| L. Joseph Lines, III | Gregory R. Oxford |
| General Motors Corporation | Isaacs Clouse Crose & Oxford LLP |
| Mail Code 482-026-601 | 21515 Hawthorne Boulevard, Suite 950 |
| 400 Renaissance Center | Torrance, California 90503 |
| P.O. Box 400 | (310) 316-1990 |
| Detroit, Michigan 48265-4000 | (310) 316-1330 (FAX) |

      b.      If to Plaintiffs, then to:

Robert W. Schmieder II
Mark L. Brown
The Lakin Law Firm
300 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095
(618) 254-1127
(618) 254-0193 (FAX)

8.      The Parties reserve the right, subject to the Court's approval, to agree upon any reasonable extensions of time that might be necessary to carry out any of the provisions of the Agreement.

9.     All parties agree that this Agreement was drafted jointly by counsel for the parties at arm's length and that the Agreement including its Exhibits constitutes the sole agreement between the parties concerning the subject matter hereof.  Further, the parties intend and agree that this Agreement including its Exhibits is a fully integrated agreement, that there are no other agreements, written or oral, between the parties concerning this subject matter, that this Agreement shall not be modified or amended except by a signed writing executed by or on behalf of all parties, and that no representations, warranties or inducements have been made to any party concerning the settlement, Agreement or exhibits thereto other than are contained in the Agreement and exhibits.

10.     In no event shall the Agreement, any of its provisions or any negotiations, statements, or court proceedings relating hereto in any way be construed as, offered as, received as, or used as an admission of liability in any judicial, administrative, regulatory, arbitration or other proceeding.  Further, this Agreement shall not be offered or admitted into evidence in any proceeding, except the proceeding to seek court approval of this settlement or in a proceeding to enforce the terms of the settlement.

11.     The parties, their successors and assigns, and their attorneys undertake to implement the terms of the Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of the Agreement.

12.     The parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of the Agreement and to use their best efforts to effect the prompt consummation of the Agreement and the proposed settlement.

13.     Each person executing this Agreement warrants that he or she has the authority to do so.

14.     The Agreement may be signed in counterparts, each of which shall constitute a duplicate original.

**APPROVED AND AGREED TO BY AND ON BEHALF OF PLAINTIFFS**

Date:  July 17, 2008

THE LAKIN LAW FIRM, P.C.


By: _____

Robert W. Schmieder II
Mark L. Brown
Class Counsel

**APPROVED AND AGREED TO BY AND ON BEHALF OF DEFENDANT**
**GENERAL MOTORS CORPORATION**

Date:  July 16, 2008

ISAACS CLOUSE CROSE & OXFORD LLP


By: _____

Gregory R. Oxford
Attorney for Defendant
General Motors Corporation

1  ROBERT W. SCHMIEDER II (*pro hac vice*)
   MARK L. BROWN (*pro hac vice*)
2  THE LAKIN LAW FIRM, P.C.
   300 Evans Avenue
3  P.O. Box 229
   Wood River, Illinois 62095
4  Telephone:    (618) 254-1127
   Facsimile:    (916) 254-0193
5
   C. BROOKS CUTTER (S.B. #121407)
6  KERSHAW, CUTTER & RATINOFF LLP
   401 Watt Avenue
7  Sacramento, California 95864
   Telephone:    (916) 448-9800
8  Facsimile:    (916) 669-4499
9  Attorneys for Plaintiffs
10 GREGORY R. OXFORD (S.B. #62333)
   ISAACS CLOUSE CROSE & OXFORD LLP
11 21515 Hawthorne Boulevard, Suite 950
   Torrance, California  90503
12 Telephone:    (310) 316-1990
   Facsimile:    (310) 316-1330
13
   Attorneys for Defendant
14 General Motors Corporation
15
16
17                    UNITED STATES DISTRICT COURT
18                    EASTERN DISTRICT OF CALIFORNIA
19
20 KELLY CASTILLO, NICHOLE            Case No. 2:07-CV-02142 WBS-GGH
   BROWN, and BARBARA GLISSON,
21 *Individually and on behalf of all others*   **STIPULATION AND [PROPOSED]**
   *similarly situated,*                         **ORDER PRELIMINARILY**
22                                               **APPROVING STIPULATION OF**
                    Plaintiffs,                  **SETTLEMENT AND DIRECTING**
23                                               **CLASS NOTICE**
          v.
24                                              Honorable William B. Shubb
   GENERAL MOTORS
25 CORPORATION,
26                    Defendants.
27
28
                                        1

**EXHIBIT**

tabbies®

A

1  WHEREAS, Plaintiffs and Defendant have entered into a Stipulation of Settlement

2 (the "Agreement") subject to the approval and determination of the Court as to fairness,

3 reasonableness, and adequacy of the settlement which, if approved, will result in dismissal

4 of the Action with prejudice; and

5  WHEREAS, terms defined in the Agreement filed by the parties herein will have

6 the same meaning in this Order,

7  IT IS HEREBY STIPULATED, by and among Plaintiffs and Defendant, that the

8 Court following its review of the Stipulation of Settlement and related documents

9 submitted by the parties, may enter its order as follows:

10  The Court based on its independent review of and due deliberation concerning the

11 Stipulation of Settlement and related documents hereby orders:

12  **1.** **Preliminary Approval and Provisional Certification.**  Based on the facts

13 and legal authorities presented to the Court, the proposed Agreement appears to be fair,

14 reasonable and adequate with respect to Class Members and the Class as defined in the

15 Stipulation of Settlement is provisionally certified for purposes of the proposed

16 settlement.

17  **2.** **Fairness Hearing.**  A hearing will be scheduled by the Parties at a date and

18 time approved by the Court pursuant to subsequent application of the parties to decide,

19 among other things: (a) whether the Class should be certified; (b) whether the Agreement

20 should be finally approved as fair, reasonable and adequate; (c) whether the Action should

21 be dismissed with prejudice pursuant to the terms of the Agreement; (d) whether Class

22 Members should be bound by the release set forth in the Agreement; (e) whether Class

23 Members should be subject to a permanent injunction that, among other things, enjoins

24 and bars Class Members from filing, commencing, prosecuting, intervening in, or

25 participating in (as class members or otherwise), any lawsuit in any jurisdiction based on

26 or relating to the claims and causes of action, or the facts and circumstances relating

27 thereto, in this Action and/or the Released Claims (as defined in the Agreement); and (f)

28

2

1  whether the application of Class Counsel for an award of Attorneys' Fees and Expenses

2  should be approved.

3      **3.    Pre-Hearing Notices.**

4          (a)    **Class Notice.**  Notice of the proposed class action settlement, in the

5  form filed with this Court as Exhibit C to the Agreement (the "Class Notice"), shall be

6  mailed by Defendant to Class Members within 90 days after the entry of this Preliminary

7  Approval Order, subject to any reasonable extension of this deadline that is agreeable to

8  the parties or ordered by the Court in the event that receipt of needed address information

9  for Class Members from state motor vehicle authorities is delayed.

10          (b)    **Proof of Mailing Class Notices.**  At or before the Fairness Hearing,

11  Defendant shall file with the Court proof of mailing the Class Notices.

12      **4.    Findings Concerning Notice.**  Having considered, among other factors, *(i)*

13  the cost of giving notice by various methods, *(ii)* the interests of each Class Member; *(iii)*

14  the likelihood that Class Members' current address can be obtained, and *(iv)* the likelihood

15  that each Class Member will receive actual notice, the Court expressly finds that notice

16  given in the form and manner provided in Paragraph 2(a) of this Order and as described in

17  the Agreement will provide the best notice practicable under the circumstances.  The

18  Court finds that the content and manner of the Class Notice: *(i)* is the best practicable

19  notice; *(ii)* is reasonably calculated, under the circumstances, to apprise Class Members of

20  the pendency of the Action and of their right to object to or exclude themselves from the

21  proposed settlement; *(iii)* is reasonable and constitutes due, adequate and sufficient notice

22  to all persons entitled to receive notice; and *(iv)* meets all applicable requirements of any

23  law, the Due Process Clause of the United States Constitution, and the Federal Rules of

24  Civil Procedure.  The Court further finds that the proposed manner and form of the Class

25  Notice reasonably advises potential members of the Class of the following: (a) the nature

26  of the Action and settlement relief, and that the relief is limited to that provided by the

27  Agreement and is contingent on the Court's final approval thereof; (b) that the Court will

28  exclude a member from the Class if requested by a specified date; (c) that the judgment

3

1    incorporating the settlement will include and bind all Class Members who do not request

2    exclusion by the specified date; and (d) that any Class Member who does not request

3    exclusion may, if he or she desires, object and enter an appearance through his or her

4    counsel.  In sum, the Court finds that the Class Notice and method of mailing to Class

5    Members provided in the Agreement is readily understandable, reasonable, constitutes

6    due, adequate and sufficient notice to all persons entitled to receive notice and meets all

7    the requirements of due process.

8         5.        **Exclusion From Class.**  Any potential Class Member who wishes to be

9    excluded from the Class must comply with Section IV of the Agreement and deliver a

10   written request for exclusion for receipt by Class Counsel no later than forty (40) days

11   after the date upon which Defendant mails Notice.  If the proposed settlement and

12   Agreement is approved, any Class Member who has not submitted a timely and complete

13   written request for exclusion from the Class shall be bound by all subsequent proceedings,

14   orders and judgments in this Action, even if he, she or it has previously initiated or

15   subsequently initiates litigation or other proceeding against the Defendant relating to the

16   Action or the Released Claims.  Class Counsel shall tabulate all communications from

17   Class Members requesting to be excluded from the Class and report the names and

18   addresses of such persons to the Court and General Motors no less than 10 days before the

19   Fairness Hearing.

20        6.        **Objections and Appearances.**

21             (a)      **Written Objections.**  Any Class Member who has not submitted a

22   timely written request for exclusion and who wishes to object to the fairness,

23   reasonableness or adequacy of the Agreement or the proposed settlement, or to the award

24   of Attorneys' Fees, may make a written objection, in compliance with Section V of the

25   Agreement, which must be received by Class Counsel and Defendant's Counsel and have

26   been file-stamped by the Court no later than forty (40) days after the date upon which

27   Defendant mails Notice.  Written objections must be verified by sworn affidavit and must

28   include: *(i)* the objector's name, address and telephone number; *(ii)* the name of the

4

1   Action and the case number, *(iii)* a statement of each objection; and *(iv)* a written brief

2   detailing the specific reasons, if any, for each objection, including any legal and factual

3   support the objector wishes to bring to the Court's attention and any evidence the objector

4   wishes to introduce in support of the objection(s).  If the objection is presented through an

5   attorney, the written objection must also include: *(i)* the identity and number of Class

6   Members represented by objector's counsel; *(ii)* the number of such represented Class

7   Members who have opted out of the settlement; *(iii)* the number of such represented Class

8   Members who have remained in the settlement and have not objected; *(iv)* the date the

9   objector's counsel assumed representation for the objector, and *(v)* a list of the names of

10  all cases where the objector's counsel has objected to a class action settlement in the last

11  three years.  Objecting Class Members who intend to testify in support of their objection

12  either in person or by affidavit must also make themselves available for deposition by

13  Plaintiffs' counsel or Defendant's counsel in their county of residence, between the time

14  the objection is filed and seven (7) days before the date of the Fairness Hearing.

15          **(b)    Appearance at Fairness Hearing.**  Any Class Member who files

16  and serves a written objection, as described in the preceding subsection, may appear at the

17  Fairness Hearing, either in person or through personal counsel hired at the Class

18  Member's expense, to object to the fairness, reasonableness, or adequacy of the Agreement

19  or the proposed settlement, or to the award of Attorneys' Fees and Expenses.  Class

20  Members, or their attorneys, intending to make an appearance at the Fairness Hearing,

21  must deliver to Class Counsel and Defendant's Counsel, and have file-marked by the

22  Court, no later than twenty (20) days before the Fairness Hearing or as the Court

23  otherwise may direct, a Notice of Intention to Appear.  The Notice of Intention to Appear

24  must: *(i)* state how much time the Class Member and/or their attorney anticipates needing

25  to present the objection; *(ii)* identify, by name, address, telephone number and detailed

26  summary of testimony any witnesses the Class Member and/or their attorney intends to

27  present any testimony from; and *(iii)* identify all exhibits the Class Member and/or their

28

5

1   attorney intends to offer in support of the objection and attach complete copies of all such

2   exhibits.

3          **(c)**      Any Class Member and/or their attorney who fails to comply with the

4   provisions of the preceding subsections shall waive and forfeit any and all rights he or she

5   may have to appear separately and/or object, and shall be bound by all the terms of the

6   Agreement and any orders entered by the Court.

7          **(d)**      Written objections and Notices of Intention to Appear (along with the

8   supporting brief, any evidence, and any other required materials) must be filed with the

9   Clerk of the Court *and* delivered to Plaintiffs' counsel and Defendant's counsel, for

10  receipt by all, no later than twenty (20) days prior to the Fairness Hearing, at the following

11  addresses:

12                 Robert W. Schmieder II
                   Mark L. Brown
13                 The Lakin Law Firm, P.C.
                   300 Evans Avenue
14                 P.O. Box 229
15                 Wood River, Illinois 62095
                   Counsel for Plaintiffs
16
17                 Gregory R. Oxford
                   Isaacs Clouse Crose & Oxford LLP
18                 21515 Hawthorne Boulevard
                   Suite 950
19                 Torrance, California 90503
20                 Counsel for Defendant

21          **7.      Final Approval Pleadings, Incentive Awards and <u>Fee Application</u>.** The

22  parties shall file all final approval pleadings no later than ten (10) days prior to the

23  Fairness Hearing.  The parties may file supplemental responses to any objections

24  involving a deposition of an objector at any time prior to the Fairness Hearing.  Class

25  Counsel shall file an Incentive Award Application along with an Attorneys' Fee and

26  Expense Application no later than ten (10) days prior to the Fairness Hearing.

27          **8.      <u>Preliminary Injunction</u>.**  All potential Class Members who do not timely

28  exclude themselves from the Class are preliminarily enjoined and barred (*i*) from filing,

1   commencing, prosecuting, intervening in, or participating as class members in, any

2   lawsuit in any jurisdiction based on or relating to the claims and causes of action, or the

3   facts and circumstances relating thereto, in this Action and/or the Released Claims; and

4   *(ii)* from filing, commencing or prosecuting any other lawsuit as a class action on behalf

5   of Class Members (including by seeking to amend a pending complaint to include class

6   allegations or seeking class certification in a pending action) based on or relating to the

7   claims and causes of action, or the facts and circumstances relating thereto, in this Action

8   and/or the Released Claims.

9        **9.**   **Service of Papers.**  Defendant's counsel and Class Counsel shall serve on

10  each other and on all other parties who have filed notices of appearance before the

11  Fairness Hearing, any further documents in support of the proposed settlement, including

12  responses to any papers filed by a Class Member.  Defendant's counsel and Class Counsel

13  shall promptly furnish each other with any and all objections or written exclusion requests

14  that may come into their possession before the Fairness Hearing.

15       **10.**   **Termination of Settlement.**  This Order shall become null and void, and

16  shall be without prejudice to the rights of the parties, all of whom shall be restored to their

17  respective positions existing immediately before this Court entered this Order, if (a) the

18  proposed settlement is not finally approved by the Court, or does not become final,

19  pursuant to the terms of the Agreement; or (b) the proposed settlement is terminated in

20  accordance with the Agreement or does not become effective as required by the terms of

21  the Agreement for any other reason.  In such event, the proposed settlement and

22  Agreement shall become null and void and be of no further force and effect, shall be

23  inadmissible into evidence for any purposes, and neither the Agreement nor this

24  Preliminary Approval Order shall be used or referred to for any purpose whatsoever.

25       **11.**   **Use of Order.**  This Preliminary Approval Order shall be of no force and

26  effect if the settlement is not approved or does not become final and shall not be construed

27  or used as an admission, concession or declaration by or against Defendant of any fault,

28  wrongdoing, breach or liability, or by or against Plaintiffs or the Class Members that their

1   claims lack merit or that the relief requested in the Action is inappropriate, improper or

2   unavailable, or as a waiver by any party of any defenses it may have, including defenses

3   or arguments opposing class certification.

4      **IT IS SO ORDERED.**

5      DATED: _____

6

7

8                                      _____
                                     United States District Judge

9

10   **APPROVED AS TO FORM:**

11   THE LAKIN LAW FIRM, P.C.

12   By: _____

13           Robert W. Schmieder II

14           Mark L. Brown
             Class Counsel

15   ISAACS CLOUSE CROSE & OXFORD LLP

16

17   By: _____

18           Gregory R. Oxford

19           Attorneys for Defendant
             General Motors Corporation

20

21

22

23

24

25

26

27

28

1   ROBERT W. SCHMIEDER II (*pro hac vice*)
    MARK L. BROWN (*pro hac vice*)
2   THE LAKIN LAW FIRM, P.C.
    300 Evans Avenue
3   P.O. Box 229
    Wood River, Illinois 62095
4   Telephone:    (618) 254-1127
    Facsimile:     (916) 254-0193
5
    C. BROOKS CUTTER (S.B. #121407)
6   KERSHAW, CUTTER & RATINOFF LLP
    401 Watt Avenue
7   Sacramento, California 95864
    Telephone:    (916) 448-9800
8   Facsimile:     (916) 669-4499

9   Attorneys for Plaintiffs

10  GREGORY R. OXFORD (S.B. #62333)
    ISAACS CLOUSE CROSE & OXFORD LLP
11  21515 Hawthorne Boulevard, Suite 950
    Torrance, California  90503
12  Telephone:    (310) 316-1990
    Facsimile:     (310) 316-1330
13
    Attorneys for Defendant
14  General Motors Corporation

15

16

17              UNITED STATES DISTRICT COURT

18             EASTERN DISTRICT OF CALIFORNIA

19

20  KELLY CASTILLO, NICHOLE              Case No. 2:07-CV-02142 WBS-GGH
    BROWN, and BARBARA GLISSON,
21  *Individually and on behalf of all others*   **FINAL JUDGMENT**
    *similarly situated,*
22                                        Honorable William B. Shubb
                   Plaintiffs,
23
            v.
24
    GENERAL MOTORS
25  CORPORATION,

26                 Defendants.

27

28
                                    1

EXHIBIT

B

1        This matter having come before the Court on the application of Plaintiffs,

2    individually and as representatives of a class of similarly situated persons (collectively,

3    "Plaintiffs"), and General Motors Corporation ("Defendant") for approval of the

4    settlement set forth in the Stipulation of Settlement and the exhibits thereto (collectively

5    the "Agreement"), and the Court having considered all papers filed, all evidence

6    submitted and proceedings had herein and otherwise being fully informed;

7                IT IS **HEREBY ORDERED, ADJUDGED AND DECREED:**

8        1.        The Court has jurisdiction over the subject matter of this litigation,

9    and over all parties to the litigation, including all members of the proposed Class defined

10   as all residents of the United States who as of [insert the date that notice was mailed to

11   Class Members] own or have owned a model year 2002, 2003, 2004 or 2005 Saturn VUE

12   or model year 2003 or 2004 Saturn ION equipped with a continuously variable VTi

13   transmission ("Class Vehicle") excluding (i) any person, firm, trust, corporation, or other

14   entity that purchased Class Vehicles from GM, or any entity related or affiliated with GM,

15   for resale or fleet purposes (including without limitation any authorized Saturn Retailer)

16   and (ii) any person who has instituted an action for damages for property damage or

17   personal injury against GM related to the VTi transmission of a Class Vehicle ("Class").

18       2.        Pursuant to Rule 23(a), Federal Rules of Civil Procedure, the Court

19   finds that the members of the proposed Class are so numerous that joinder of all members

20   is impracticable, that there are questions of law and fact common to the Class, that the

21   claims of the named plaintiffs are typical of the claims of Class and that the named

22   plaintiffs have fairly and adequately represented the Class and will continue to do so.

23   Pursuant to Rule 23(b), Federal Rules of Civil Procedure, the Court further finds that

24   questions of fact common to the Class predominate over factual questions affecting only

25   individual members and that a class action is superior to other available methods for the

26   fair and efficient adjudication of the controversy. Accordingly, the Court certifies the

27   Class as defined in paragraph 1 above.

28

1          3.     The Court hereby finds that: (a) the settlement memorialized in the

2  Stipulation of Settlement previously filed with the Court ("Agreement") has been entered

3  into in good faith and was concluded after Class Counsel had conducted an extensive

4  investigation concerning the issues raised by Plaintiffs' claims; (b) the settlement

5  evidenced by the Agreement is fair, reasonable and adequate as to, and in the best

6  interests of, the Class Members; (c) the settlement delivers benefits to the Class in a

7  timely manner while resolving complex issues that would require expensive and long-

8  lasting litigation; (d) the Agreement was the result of extensive arms' length negotiations

9  among highly experienced counsel, with full knowledge of the risks inherent in this

10  litigation; (e) there is no evidence of collusion or fraud in connection with the settlement;

11  (f) the investigation conducted to date suffices to enable the parties and the Court to make

12  an informed decision as to the fairness and adequacy of the settlement; (g) the case raised

13  complex and vigorously contested issues of law and fact that would result in complex,

14  expensive, and lengthy litigation; (h) the Plaintiffs faced significant risks in establishing

15  liability and damages; and (i) the release is tailored to address the allegations in the case.

16          4.     Accordingly, the Court hereby orders and declares (a) the Agreement

17  is approved by the Court and shall be binding on all Class Members; and (b) the

18  Agreement as approved by this final judgment is and shall be binding and preclusive in all

19  pending and future lawsuits or other proceedings whether in state or federal court. Each

20  and every term and condition of the Agreement as a whole (including its attached

21  exhibits) is approved as proposed and is to be effective, implemented, and enforced as

22  provided in the Agreement.

23          5.     The Court finds that the Class Notice and methodology implemented

24  pursuant to this Court's Preliminary Approval Order provided the best notice practicable

25  under the circumstances. The Court further finds that the Class Notice advised each

26  member of the Class, in plain easily understood language: (a) the nature of the suit; (b) the

27  definition of the Class certified; (c) the class claims, issues, and defenses; (d) that a Class

28  Member could enter an appearance through counsel if desired; (e) that the Court would

1    exclude from the Class any member who timely requested exclusion by a specified date;

2    and (f) that the judgment incorporating the settlement will fully release Defendant,

3    dismiss this lawsuit with prejudice, and include and bind all members of the Class who

4    did not timely request exclusion.  The Court finds that the Class Notice and methodology

5    fully complied with all applicable legal requirements, including the Due Process Clause of

6    the Constitution of the United States and the Federal Rules of Civil Procedure.

7          6.    The Court also finds that the Final Notice and the post-settlement

8    notice methodology to be implemented pursuant to the Agreement will provide the best

9    practicable notice under the circumstances of the Judgment and Claim Form to all Class

10    Members, and the Court further finds that the Final Notice and methodology constitute

11    due, adequate and sufficient notice to all persons entitled to receive notice, and fully

12    comply with all applicable requirements of law, including the Due Process Clause of the

13    Constitution of the United States and the Federal Rules of Civil Procedure.

14          7.    The Court finds that Class Counsel and the Class representatives

15    adequately represented the Class for purposes of entering into and implementing the

16    Agreement.

17          8.    The terms of the Agreement as approved by this final judgment shall

18    be forever binding on, and shall have *res judicata* effect and preclusive effect in, all

19    pending and future lawsuits or other proceedings that may be maintained by or on behalf

20    of the Plaintiffs or any Class Members, as well as their collective heirs, executors,

21    administrators, successors and assigns, relating to the Action and/or the Released Claims

22    (as defined in the Agreement).

23          9.    The preceding paragraph of this Judgment covers, without limitation,

24    any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or

25    any other counsel representing Plaintiffs or the Class Members, or incurred by Plaintiffs

26    or the Class Members, or any of them, in connection with or related in any manner to this

27    Action, the settlement of this Action, the administration of the settlement and/or the

28    Released Claims.

1          10.     All Class Members who did not timely exclude themselves from the

2 Class are, from this day forward, hereby permanently barred and enjoined from:

3          (a)     filing, commencing, prosecuting, intervening in, or participating in

4 (as class members or otherwise), any lawsuit in any jurisdiction based on or relating to:

5 (i) the claims and causes of action asserted or that could have been asserted in this Action;

6 (ii) the facts and circumstances relating to this Action; or (iii) the Released Claims, or

7          (b)     organizing Class Members, or soliciting the participation of Class

8 Members, in a separate class for purposes of pursuing as a purported class action any

9 other lawsuit (including by seeking to amend a pending complaint to include class

10 allegations, or seeking class certification in a pending action in any jurisdiction) based on

11 or relating to: (i) the claims and causes of action asserted or that could have been asserted

12 in this Action; (ii) the facts and circumstances relating to this Action; or (iii) the Released

13 Claims.

14          11.     Class Representatives are each awarded $_____ for their roles in

15 this litigation ("Incentive Fees"). Class Counsel and Local Counsel are hereby awarded

16 the total sum of $ _____ in attorneys' fees, costs and expenses ("Attorneys'

17 Fees and Expenses"). Defendant shall pay the Incentive Fees and Attorneys' Fees and

18 Expenses in accordance with the Settlement Agreement. Defendant shall have no

19 responsibility for and no liability with respect to the allocation of Attorneys' Fees to Class

20 Counsel or any other person who may assert some claim thereto.

21          12.     Neither this Judgment nor the Agreement (nor any document referred

22 to herein or any action taken to carry out this Final Judgment) is, may be construed as, or

23 may be used as an admission by Defendant of the validity of any claim, of actual or

24 potential fault, wrongdoing or liability whatsoever. Entering into or carrying out the

25 Agreement and any negotiations or proceedings relating to the settlement shall not in any

26 event be construed as, or deemed to be evidence of, an admission or concession of the

27 Defendant and shall not be offered or received into evidence in any action or proceeding

28 against any party hereto in any court, judicial, administrative, regulatory hearing,

1    arbitration, or other tribunal or proceeding for any purpose whatsoever, except in a

2    proceeding to enforce the Agreement.  This Final Judgment and the Agreement it

3    approves (including exhibits thereto) may, however, be filed in any action against or by

4    the Defendant to support a defense of *res judicata*, collateral estoppel, release, good faith

5    settlement, judgment bar or reduction, or any theory of claim preclusion or issue

6    preclusion or similar defense or counterclaim.

7            13.    Plaintiffs' Second Amended Complaint and this entire Action,

8    including all individual claims and Class claims asserted or that could have been asserted

9    herein, is hereby DISMISSED WITH PREJUDICE, without fees, costs, or expenses to

10    any party except as otherwise provided herein.

11    DATED: _____

12

13                                        _____
                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

<u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

**THIS NOTICE IS BEING SENT TO YOU BECAUSE YOU MAY CURRENTLY OWN OR MAY PREVIOUSLY HAVE OWNED**

<u>A 2002, 2003, 2004 OR 2005 MODEL YEAR SATURN VUE</u>

**OR**

<u>A 2003 OR 2004 MODEL YEAR SATURN ION</u>

**EQUIPPED WITH A CONTINUOUSLY VARIABLE VTi TRANSMISSION**

**THIS NOTICE MAY AFFECT YOUR RIGHTS,**

*SO PLEASE READ IT CAREFULLY*

**THIS NOTICE RELATES TO A PROPOSED SETTLEMENT OF A CLASS ACTION AND, IF YOU ARE A CLASS MEMBER, CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS REGARDING THE PROPOSED SETTLEMENT.**

*In the action styled <u>Kelly Castillo, et al. v. General Motors Corporation</u>, United States District Court for the Eastern District of California, plaintiffs and defendant General Motors Corporation ("GM") have negotiated the following proposed settlement which they believe will, if approved by the Court, benefit Class Members. The following is only a summary of the proposed settlement terms and background. Complete copies of the proposed settlement documents are on file with the Court.*

1.    **WHO IS IN THE CLASS**

The Class consists of all persons who are residents of the United States and who purchased a new or used 2002, 2003, 2004 or 2005 model year Saturn VUE or 2003 or 2004 model year Saturn ION equipped with a continuously variable VTi transmission ("Vehicles"). Excluded from the Class are (i) any person, firm, trust, corporation, or other entity that purchased Class Vehicles for resale or fleet purposes (including without limitation any authorized Saturn Retailer) and (ii) any person who has filed a lawsuit against GM seeking damages for alleged personal injury or property damage in connection with a VTi transmission.

**EXHIBIT**

C

tabbies®

## 2.    DESCRIPTION OF THE LAWSUIT

In October 2007, Plaintiffs filed this lawsuit styled *Kelly Castillo et al.*, v. *General Motors Corporation*, Case No. 2:07-CV-02142 WBS-GGH, in the United States District Court for the Eastern District of California (the "Action").  Plaintiffs on their own behalf and on behalf of the proposed Class allege that the continuously variable VTi transmissions of Class Vehicles are prone to premature failure.  They claim that GM by marketing and selling the Class Vehicles equipped with VTi transmissions violated state consumer protection statutes, breached express and implied warranties and was unjustly enriched.  GM denies Plaintiffs' legal allegations and contends that it is fully satisfying its warranty obligations to Vehicle owners after it voluntarily extended warranty repair coverage for the VTi transmission in March of 2004 from three years or 36,000 miles, whichever comes first, to five years or 75,000 miles, whichever comes first.  GM nonetheless believes that it is appropriate in the interests of customer satisfaction to provide the additional benefits to Class Members that would be made available if the proposed settlement is approved.

## 3.    REASONS FOR THE SETTLEMENT

Counsel for Plaintiffs and the proposed Class ("Class Counsel") have conducted a detailed investigation which included depositions and review of voluminous documents concerning the design, testing and marketing of the VTi transmissions, as well as consultation with independent automotive experts.  Based on this investigation Class Counsel have concluded that the proposed settlement, negotiated at arm's length with the assistance of a retired judge, is in the best interests of members of the proposed Class because it will provide immediate and substantial benefits to Class Members while avoiding the uncertainties, substantial delay and expense that would be incurred if litigation of the case continued.

In reaching this settlement, Class Counsel have fully assessed the risks associated with the claims asserted in the Action, including without limitation the requirements that Plaintiffs prove: (i) that the Action is appropriate for class certification treatment; (ii) that the Class Vehicles have a defect that GM was unable to effectively repair under warranty; (iii) that GM in connection with the marketing of the VTi-equipped Vehicles violated differing state consumer protection statutes in fifty states; and (iv) the fact and amounts of damage, if any, experienced by Class Members with respect to more than 90,000 Class Vehicles.  Class counsel have also assessed the significant delay in providing benefits to Class Members that would occur even if they were successful in litigating the case through class certification proceedings, trial and a possible appeal.  In light of these considerations, Class Counsel believe that the terms of the settlement are fair, adequate, and in the best interests of the Class.

GM vigorously denies any liability in this Action, but also considers it desirable in the interests of customer satisfaction with Saturn products and avoidance of the expense, inconvenience and distraction of litigation that the Action be compromised, settled and dismissed as set forth in the settlement agreement and proposed Final Judgment.

This notice does not express any opinion by the Court concerning the merits of the respective claims or defenses asserted in the Action. This notice is sent merely to advise you of the proposed settlement and of your rights in connection therewith.

## 4.    RELIEF AVAILABLE TO CLASS MEMBERS

If the Court approves the proposed settlement, the benefits available to Class Members will include the following:

(1) Reimbursement for out-of-pocket expenses relating to the previous inspection, repair, or replacement of a malfunctioning VTi transmission, including related towing and rental car expenses, subject to specific time and mileage limitations ("Past Reimbursable Expenses");

(2) Reimbursement for out-of-pocket expenses based on a previous trade-in of a Class Vehicle with VTi transmission malfunction at the time of trade-in ("Trade-In with Transmission Malfunction Reimbursement"), subject to specific time and mileage limitations; and

(3) Reimbursement for out-of-pocket expenses relating to the future inspection, repair or replacement of a malfunctioning VTi transmissions, including related towing and rental care expenses, subject to specific time and mileage limitations ("Future Reimbursable Expenses").

Under the terms of the proposed settlement, reimbursable expenses will include (a) costs to inspect, repair or replace a malfunctioning VTi transmission, (b) costs to rent a replacement vehicle or secure other transportation while the Class Vehicle's malfunctioning VTi transmission is/was being inspected, repaired or replaced, (c) costs to tow or transport the Class Vehicle to the place(s) where the VTi transmission is/was inspected, repaired or replaced, and (d) costs relating to the trade-in of a Class Vehicle with a malfunctioning VTi transmission at the time of trade-in, as further limited and defined below.

To be reimbursable, the expense must be incurred (1) within 125,000 miles of the original retail sale or lease of the Class Vehicle and (2) within the time limitations set forth in Paragraph B (if applicable) and Chart A below.

A.    Past Expense Reimbursement

GM will reimburse any Class Member who incurs Past Reimbursable Expenses on
or before the date of Final Judgment (*i.e.*, the date of final approval of the settlement by
the United States District Court) based on the percentages shown in Chart B below.  To
obtain reimbursement, the Class Member must submit a Claim Form and the Saturn
Retailer or other repair shop bills showing the date, mileage and amount of the repair
costs paid by the Class Member and, if applicable, receipts showing the rental car,
alternative transportation or towing costs incurred by the Class Member.

All claims for Past Expense Reimbursement will have to be submitted no later
than one year after the Effective Date of the proposed settlement, as more specifically
defined in the Stipulation of Settlement, but essentially the date upon which the Final
Judgment of the Court approving the settlement becomes final and is no longer subject to
any possible appeal.  This deadline will be clearly stated on the Claim Forms that Class
Members will receive after the Effective Date.

B.    Past Trade-In With Transmission Malfunction Reimbursement

To claim reimbursement if the Class Member traded in a Class Vehicle with a VTi
transmission malfunction, the Class Member must submit a Claim Form and provide
contemporaneous dealer documentation including (1) a sales contract including the
Vehicle Identification Number ("VIN") of the Class Vehicle that was traded in and (2) a
contemporaneous VTi transmission repair estimate referencing the same VIN dated on or
before the trade-in date.  The reimbursement to the Class Member shall equal the repair
estimate multiplied by the applicable percentage shown on Chart B based on the
Vehicle's mileage and the Class Member being either a New or Used Vehicle Purchaser.
*Class Members will be entitled to seek reimbursement of trade-in losses only upon
proof that the Class Vehicle was traded-in before [ insert date that this Class Notice is
mailed to potential Class Members].*

C.    Future Expense Reimbursement

GM will reimburse any Class Member who incurs Future Reimbursable Expenses
after the date of Final Judgment based on the percentages shown in Chart B below,
provided that the Class Member incurs the expense and submits the claim within the time
limits set forth in Chart A below.  To obtain reimbursement, the Class Member must
submit a Claim Form and the Saturn Retailer or other repair shop bills showing the date,
mileage and amount of the repair costs paid by the Class Member and, if applicable,
receipts showing the rental car, alternative transportation or towing costs incurred by the
Class Member.  GM shall use, or cause any claims administrator to use, its best efforts to
issue checks for Future Reimbursable Expense to Class Members within ten (10) General
Motors business days of receipt of the Claim Form with all required supporting

documentation. Upon written request by the Class Member, GM shall also issue checks for Future Expense Reimbursement payable jointly to the Class Member and a Saturn Retailer or other repair shop specified by the Class Member.

## CHART A

| Model Year | Date Before Which Expense is Reimbursable | Claim Submission Deadline for Future Service Expenses |
|---|---|---|
| 2002 | January 1, 2010 | March 1, 2010 |
| 2003 | January 1, 2011 | March 1, 2011 |
| 2004 | January 1, 2012 | March 1, 2012 |
| 2005 | January 1, 2012 | March 1, 2012 |

## CHART B

| Vehicle Mileage[1] | GM Reimbursement (New[2]) | GM Reimbursement (Used) |
|---|---|---|
| 100,000 or less | 100 percent | 75 percent |
| 100,101-125,000 | 75 percent | 30 percent |

For each VTi transmission repair or replacement using genuine Saturn or GM parts, such replacement parts will be covered by the standard GM Service Parts Operations warranty for a period of 12 months or 12,000 miles, whichever comes first.

For a claim involving a Past Reimbursable Expense, a Trade-in With Transmission Malfunction Expense Reimbursement or a Future Reimbursable Expense incurred before the Effective Date of the Settlement, GM will have the right to reduce the amount to be reimbursed by any amount previously paid by GM or any affiliate of GM for that same repair or trade-in expense. GM, however, will have no right to reduce the amount of any other claim for Future Reimbursable Expenses subject to appropriate verification of the amount of such expenses and the Class Member's eligibility for reimbursement. Notwithstanding the foregoing, GM shall have the right to enforce fully the terms of any

---

[1]   Mileage at time Past or Future Reimbursable Expense is incurred.

[2]   To qualify for reimbursement as a "new" vehicle purchaser, the Class Member must be the original retail purchaser or lessee of the Class Vehicle.

release, judgment, arbitration award or other adjudication obtained in connection with any Class Member's prior claim relating to the alleged malfunction or failure of a VTi transmission..

If the settlement is approved by the Court, you will receive another notice that will include the Claim Form and explain how you can claim benefits under the settlement.

## 5.    DISMISSAL AND RELEASE OF CLAIMS

If the proposed Settlement Agreement is approved by the Court, then all claims that were or could have been asserted in this Action will be dismissed with prejudice. None of those claims may thereafter be asserted by anyone who remains in the Class. If the Court does not approve the proposed settlement, the Settlement Agreement will terminate and shall be null and void, and this Action will remain before the Court.

## 6.    CHOICES OF CLASS MEMBERS

If you qualify to be a Class Member, you have the following choices: (a) you may remain in the Class and be eligible to request benefits under the proposed settlement if it is approved by the Court by submitting a Claim Form that will be mailed to you; (b) if you do not wish to remain in the Class, you may exclude yourself by sending a formal, written request for exclusion; or (c) you may remain in the Class and file with the Court a written objection to the proposed settlement. **If you wish to remain in the class, you do not need to take any action.**

## 7.    EXCLUSION FROM THE CLASS

To request exclusion, you must send a written request for exclusion to Class Counsel: The Lakin Law Firm, P.C., 300 Evans Avenue, P.O. Box 229, Wood River, Illinois 62095. You must include in your request for exclusion *(i)* your name, address, and telephone number, *(ii)* a statement that you want to be excluded from the Class, *(iii)* the name of the Action appearing in this Notice, and *(iv)* your signature. If you exclude yourself from the Class, you will not be eligible for any settlement relief or be permitted to participate in the proposed settlement. Your written request for exclusion must be received no later than [Date Certain], or you will lose your right to request exclusion and you will be bound by the settlement and by all orders and judgments in this Action.

## 8.    FAIRNESS HEARING, DATE AND LOCATION

The Court will hold a Fairness Hearing to consider and then decide whether to certify the proposed Class, approve the proposed Settlement Agreement and determine the amount of Incentive Fees to award to Class Representatives and Attorneys' Fees and Expenses to award to Class Counsel. The hearing is scheduled for [Date] at [Time], in

the United States District Court for the Eastern District of California, Courtroom 5 (Hon. William B. Shubb), 501 I Street, Sacramento, California 95814.

## 9.    PRELIMINARY INJUNCTION PENDING FAIRNESS HEARING

Pending the Fairness Hearing, all potential Class Members who do not timely exclude themselves from the Class are preliminarily enjoined and barred *(i)* from filing, commencing, prosecuting, intervening in, or participating as class members in, any lawsuit in any jurisdiction based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the Released Claims; and *(ii)* from filing, commencing or prosecuting any other lawsuit as a class action on behalf of Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the Released Claims.

## 10.    YOUR RIGHT TO OBJECT AND APPEAR

If you do not exclude yourself from the class, you may file a written objection to the proposed settlement. Your written objection must be verified by sworn affidavit and include: *(i)* the objector's name, address and telephone number; *(ii)* the name of the Action and the case number, *(iii)* a statement of each objection; and *(iv)* a written brief detailing the specific reasons, if any, for each objection, including any legal and factual support the objector wishes to bring to the Court's attention and any evidence the objector wishes to introduce in support of the objection(s). If the objection is presented through an attorney, the written objection must also include: *(i)* the identity and number of Class Members represented by objector's counsel; *(ii)* the number of such represented Class Members who have opted out of the settlement; *(iii)* the number of such represented Class Members who have remained in the settlement and have not objected; *(iv)* the date the objector's counsel assumed representation for the objector, and *(v)* a list of the names of all cases where the objector's counsel has objected to a class action settlement in the last three years. Objecting Class Members who intend to testify in support of their objection either in person or by affidavit must also make themselves available for deposition by Plaintiffs' counsel and/or Defendants' counsel in their county of residence, between the time the objection is filed and at least seven (7) days before the date of the Fairness Hearing. You must file your written objection with the Clerk of the Court and send copies to Class Counsel and Defendants' counsel for receipt no later than [Date], 2008, at the following addresses:

Robert W. Schmieder II
Mark L. Brown
The Lakin Law Firm, P.C.
300 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095

Gregory R. Oxford
Isaacs Clouse Crose & Oxford LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503

**As a Class Member, if you file and serve a written objection as described above, you may appear at the Fairness Hearing, either in person or through an attorney paid by you, to object to the proposed settlement. If you or your attorney intend to appear, you must file a Notice of Intention to Appear with the Clerk of the Court that includes *(i)* how much time you or your lawyer anticipates will be required to present the objection; *(ii)* the name, address and telephone number of all witnesses who will testify and a detailed summary of such testimony; *(iii)* identification of all exhibits to be offered in support of your objection and attach complete copies of all such exhibits. Notices of Intention to Appear must be filed with the Court and delivered to Class Counsel and Defendants' Counsel no later than [Date] in order to be allowed to appear at the Fairness Hearing.**

## 11.    ATTORNEYS' FEES, CLASS REPRESENTATIVE FEES, AND LITIGATION COSTS AND EXPENSES

Subject to Court approval, GM has agreed to pay up to $2,500.00 to each of the seven named plaintiffs in the Action for the time, effort and expense incurred by them in connection with the litigation. GM has also agreed, subject to Court approval, to pay a separate sum not to exceed $4,425,000.00 in full payment of the fees, costs and expenses of Class Counsel. In addition, GM shall pay the cost of notice and of the claims administration. These amounts do not reduce the relief available to Class Members and are in addition to and separate from all other benefits available to Class Members under the settlement. Class Members will have no personal liability for any attorneys' fees or costs associated with the Action.

## 12.    ADDITIONAL INFORMATION

This Notice is only a summary of the proposed settlement. The full proposed Agreement, along with the pleadings and other papers, are on file with the Clerk of the Court. If you have any questions regarding the proposed settlement, then you may contact Class Counsel at saturnvti.classaction@lakinlaw.com, (618) 254-xxxx, or at the above address.

PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.

## FINAL NOTICE OF APPROVAL OF SETTLEMENT AND CLAIM FORM

Dear Class Member:

    In _____ 200_, you were notified of a proposed settlement of a lawsuit styled *Kelly Castillo et al. v. General Motors Corporation*, Case No. 2:07-CV-02142 WBS-GGH pending in the United States District Court for the Eastern District of California. On _____, 200_, the Court after a hearing determined that the settlement was fair, reasonable and adequate and entered final judgment approving implementation of the settlement.

    The purpose of this Final Notice is to inform you of the Court's approval of the settlement and provide you with the enclosed Claim Form. The Class consists of all persons who are residents of the United States who as of the date of Final Judgment own or have owned a model year 2002, 2003, 2004 or 2005 Saturn VUE or a model year 2003 or 2004 Saturn ION equipped with a continuously variable VTi transmission, excluding (i) all persons, firms, corporations or other entities that purchased for resale or for fleet purposes (including authorized Saturn Retailers) and (ii) all persons (if any) who have filed an action for damages against defendant General Motors Corporation ("GM") based on alleged personal injury or property damage relating to a VTi transmission.

    If you are a Class Member and wish to submit a claim for reimbursement of VTi-related expenses covered by the settlement, then you must properly and timely complete and sign the enclosed Claim Form and return it and the required supporting documentation to the address indicated on the Claim Form. The deadlines for submitting Claim Forms, which may vary depending on the type of reimbursement you claim and the model year of your Saturn are clearly set forth on the Claim Form.

[For used owners only] The records have identified you as a purchaser of a **Used** model year 2002, 2003, 2004 or 2005 Saturn VUE or a **Used** model year 2003 or 2004 Saturn ION equipped with a continuously variable VTi transmission. If this is incorrect, then please indicate on the Claim Form and submit a copy of the sale contract, bill of sale, lease, title, or other document showing your purchase or lease of a new vehicle.

    If you have any questions, then you may contact Class Counsel (The Lakin Law Firm, P.C.) at **saturnvti.classaction@lakinlaw.com**, (618) 254-xxxx, or 300 Evans Avenue, PO Box 229, Wood River, Illinois 62095.

    Plaintiffs, Class Counsel, and GM worked hard to make the applicable reimbursement benefits available to you as promptly as possible and hope that the availability of these benefits will increase your level of satisfaction with your Saturn VUE or ION.



EXHIBIT

D

## CLAIM FORM – ORIGINAL RETAIL PURCHASE OR LEASE

To make a claim for reimbursement, complete and sign this Claim Form and mail it along with all required documents to:

VTi Transmission

P.O. Box ___

Detroit, Michigan [zip]

This Claim Form must be postmarked no later than [**one year after Effective Date**] for:

- reimbursement of repair, towing and rental expenses that you incurred before [date of final judgment]

- reimbursement of a trade-in loss that you incurred before [notice date].

For reimbursement of repair, towing and rental expenses after [date of Final Judgment] see the reverse side for any applicable deadlines.

PERSONAL INFORMATION

Name [Insert per Polk records]
Address [Insert per Polk records, updated by NCOA]
                       ☐ Check this box to update your name and/or address
                         on the reverse side of this Claim Form.
Vehicle Identification Number [from GM list given to Polk]

CLAIM INFORMATION

Check all boxes that apply to you. *See reverse side for reimbursement amount, mileage and date limitations, and claim submission deadlines.*

☐ **Repair, Towing and Car Rental Expense**

| Repair Date(s) | Vehicle Mileage(s) | Repair Cost(s) | Towing Cost(s) | Car Rental or Transportation Cost(s) | Total Amount Paid by You |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

You **must** submit documents (repair bills, towing bills, car rental or other alternative transportation bills) with this Claim Form to receive reimbursement under the Settlement which will be paid on a percentage basis per the schedule on the reverse side.

☐ Check this box to have the reimbursement check payable jointly to you and the authorized Saturn Retailer (or repair shop) that performed the repairs.
Saturn Retailer (or repair shop): _____
Street Address or P.O. Box    __ _____
City/State/Zip              _____

**EXHIBIT**

E-1

☐ **Past Trade-In with VTi Transmission Failure (incurred before [Notice date])**

| Trade-In Date | Vehicle Mileage | Repair Estimate Amount |
|---|---|---|
| | | |

You **must** submit:  (1) a sales contract showing the trade-in date, VIN, and mileage; and (2) a written VTI transmission repair estimate showing the same VIN and dated on or before the trade-in date.

I declare under penalty of perjury under the laws of the United States of America that all information provided on this Claim Form and any enclosed repair, towing or rental receipts, trade-in documents, repair estimates or other supporting documentation are true and correct.  I understand that my claim may be subject to audit, verification and review, including contacting dealers and repair facilities which inspected, repaired or replaced your VTi transmission, and I give my consent to GM or its representatives, employees or other designees to perform such audit, verification and review and to contact such repair facilities with respect to this claim.

Dated: _____, 200_    _____

_____
[Signature]

[REVERSE SIDE]

| Model Year | Date Before Which Expense is Reimbursable | Claim Submission Deadline for Future Repair, Towing and Rental Expenses |
| --- | --- | --- |
| 2002 | January 1, 2010 | March 1, 2010 |
| 2003 | January 1, 2011 | March 1, 2011 |
| 2004 | January 1, 2012 | March 1, 2012 |
| 2005 | January 1, 2012 | March 1, 2012 |

| Vehicle Mileage | GM Reimbursement |
| --- | --- |
| 100,000 or less | 100 percent |
| 100,101-125,000 | 75 percent |

For each VTi transmission repair or replacement using genuine Saturn or GM parts, such replacement parts will be covered by the standard GM Service Parts Operations warranty for a period of 12 months or 12,000 miles, whichever comes first.


Updated Address Information:

Name:        _____

Address:     _____

             _____

## CLAIM FORM – PURCHASE AS USED VEHICLE

To make a claim for reimbursement, complete and sign this Claim Form and mail it along with all required documents to:

VTi Transmission

P.O. Box ___

Detroit, Michigan [zip]

This Claim Form must be postmarked no later than [**one year after Effective Date**] for:

- reimbursement of repair, towing and rental expenses that you incurred before [date of final judgment]

- reimbursement of a trade-in loss that you incurred before [notice date].

For reimbursement of repair, towing and rental expenses after [date of Final Judgment] see the reverse side for any applicable deadlines.

## PERSONAL INFORMATION

Name [Insert per Polk records]
Address [Insert per Polk records, updated by NCOA]
                          ☐ Check this box to update your name and/or address
                          on the reverse side of this Claim Form.
Vehicle Identification Number [from GM list given to Polk]

## CLAIM INFORMATION

Check all boxes that apply to you. *See reverse side for reimbursement amount, mileage and date limitations, and claim submission deadlines.*

☐ **Repair, Towing and Car Rental Expense**

| Repair Date(s) | Vehicle Mileage(s) | Repair Cost(s) | Towing Cost(s) | Car Rental or Transportation Cost(s) | Total Amount Paid by You |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

You **must** submit documents (repair bills, towing bills, car rental or other transportation bills) with this Claim Form to receive reimbursement under the Settlement which will be paid on a percentage basis per the schedule on the reverse side.

    ☐ Check this box to have the reimbursement check payable jointly to you and the authorized Saturn Retailer (or repair shop) that performed the repairs.
Saturn Retailer (or repair shop): ___ _____
Street Address or P.O. Box        _____
City/State/Zip              _____

**EXHIBIT**

E-2

☐  **Past Trade-In with VTi Transmission Failure (incurred before [Notice date])**

| Trade-In Date | Vehicle Mileage | Repair Estimate Amount |
|---|---|---|
|  |  |  |

You **must** submit:  (1) a sales contract showing the trade-in date, VIN, and mileage; and (2) a written VTI transmission repair estimate showing the same VIN and dated on or before the trade-in date.

I declare under penalty of perjury under the laws of the United States of America that all information provided on this Claim Form and any enclosed repair, towing or rental receipts, trade-in documents, repair estimates or other supporting documentation are true and correct.  I understand that my claim may be subject to audit, verification and review, including contacting dealers and repair facilities which inspected, repaired or replaced your VTi transmission, and I give my consent to GM or its representatives, employees or other designees to perform such audit, verification and review and to contact such repair facilities with respect to this claim.

Dated: _____, 200_    _____

[Signature]

[REVERSE SIDE]

| Model Year | Date Before Which Expense is Reimbursable | Claim Submission Deadline for **Future** Repair, Towing and Rental Expenses |
|---|---|---|
| 2002 | January 1, 2010 | March 1, 2010 |
| 2003 | January 1, 2011 | March 1, 2011 |
| 2004 | January 1, 2012 | March 1, 2012 |
| 2005 | January 1, 2012 | March 1, 2012 |

| Vehicle Mileage | GM Reimbursement |
|---|---|
| 100,000 or less | 75 percent |
| 100,101-125,000 | 30 percent |

For each VTi transmission repair or replacement using genuine Saturn or GM parts, such replacement parts will be covered by the standard GM Service Parts Operations warranty for a period of 12 months or 12,000 miles, whichever comes first.


Updated Address Information:

Name:    _____

Address:    _____

_____

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CASTILLO, NICHOLE BROWN, BRENDA ALEXIS DIGIANDOMENICO, VALERIE EVANS, BARBARA ALLEN, STANLEY OZAROWSKI, and DONNA SANTI, *Individually and on behalf of all others similarly situated,* | Case No.: 2:07-CV-02142 WBS-GGH |
| Plaintiffs, | |
| v. | **DECLARATION OF** |
| GENERAL MOTORS CORPORATION, | **ROBERT W. SCHMIEDER II** |
| Defendants. | |

Declarant, Robert W. Schmieder II, in accordance with 28 U.S.C. § 1746, hereby attests as follows:

1.    I am an attorney at The Lakin Law Firm, P.C., counsel for Plaintiffs in the above-captioned class action litigation.  I have personal knowledge of the facts stated herein, except those matters stated upon information and belief.

2.    In April of 2007, an unhappy Saturn owner contacted us about possible problems with the Saturn VTi transmission.  Unbeknownst to us, that same customer apparently shared our contact information with other customers via an internet website for Saturn owners, and we soon were flooded with dozens of calls and e-mails from other unhappy Saturn customers reporting similar problems and circumstances.  For the next six months, we consulted extensively with Saturn customers, potential class representatives, and automotive industry consulting experts.  In addition, we obtained and analyzed technical service bulletins, general background literature regarding CVTs, and other documentation pertaining to the VTi.  Once we had completed an exhaustive pre-suit investigation and had an adequate understanding of the nature and scope of the problem, we ultimately filed this action in October of 2007 on behalf of Plaintiffs Kelly Castillo, Nichole Brown, Barbara Glisson, and the proposed Class.  Representative Plaintiffs Brenda Digiandomenico, Valerie Evans, Stanley Ozarowski, and Donna Santi

**EXHIBIT**

2

tabbies®

were added upon filing of the First Amended Complaint on January 14, 2008.

3.       Since April of 2007, more than 250 Saturn owners reporting failures of their VTi transmissions have contacted us. We have interviewed many of the owners, collected documents from them, and often taken their recorded statements. In addition, since filing this action, we have served GM with extensive written discovery requests, thoroughly analyzed thousands of pages of documents produced by GM, deposed two current GM executives familiar with the facts at issue, subpoenaed two of GM's third-party vendors involved in manufacturing and testing the VTi, reviewed thousands of pages of responsive third-party documents, interviewed numerous potential testifying experts, and read numerous industry publications relating to CVT technology in general and the VTi in particular.

4.       Counsel for the parties first met in Chicago on March 13, 2008 to discuss discovery matters and the possibility of a settlement. That full-day meeting did not result in a resolution, however, and the parties continued to engage in discovery while simultaneously working to coordinate the formal mediation that ultimately took place with Judge Sabraw in San Francisco on May 21.

5.       The May 21 mediation took place before the Honorable Ronald Sabraw, former complex litigation judge of Alameda County, California, from approximately 9:00 a.m. until approximately 10:30 p.m. The mediation, an arm's-length negotiation with significant back-and-forth assistance from Judge Sabraw, resulted late in the day in agreement regarding the relief to the Class, and the signing of a term sheet memorializing the basic terms of that agreement. The term sheet provided, among other things, that incentive awards to the Representative Plaintiffs, attorneys' fees and costs would be paid by GM in addition to (i.e., without diminishing) the relief to the Class. The parties then negotiated the amount of the incentive awards for Representative Plaintiffs. Finally, the parties began negotiations regarding the issue of attorneys' fees and costs. Unable to resolve this issue by 10:30 p.m. on the day of the mediation, the parties continued telephonic negotiations for the next several days until ultimately reaching final agreement

regarding attorneys' fees on June 5.

6.     Based upon our research and investigation, GM offers certain extended warranties up to 100,000 miles but, upon information and belief, GM does not offer any extended warranty options past 100,000 miles.  To qualify for a GM extended warranty, an owner must purchase it within the initial manufacturer's warranty period (3 years / 36,000 miles) or at the time of vehicle purchase.   The cost of GM "Basic Guard" extended warranty coverage from 75,000 miles through no more than 100,000 miles costs between $1,030 and $2,850 for Saturn vehicles equipped with the VTi transmission.  The deductibles range from $50 through $200 for each extended warranty claim.

7.     Based upon our research and investigation, at least one third-party company offers extended warranty coverage through 125,000 miles.   To purchase extended power-train warranty coverage between 75,000 and 100,000 miles on a Saturn vehicle equipped with the VTi transmission, the cost ranges between $1,584 and $1,895 for 24 months / 24,000 miles of coverage.  To purchase extended power-train warranty coverage between 100,000 and 110,000 miles on a Saturn vehicle equipped with the VTi transmission, the cost ranges between $1,530 and $1,729 for 12 months / 12,000 miles of coverage.  To purchase extended power-train warranty coverage between 110,000 and 125,000 miles on a Saturn vehicle equipped with the VTi transmission, the cost ranges between $1,554 and $1,803 for 12 months / 12,000 miles of coverage.  Therefore, power-train extended warranty coverage from 75,000 miles through 125,000 would require an owner of a Saturn vehicle equipped with the VTi transmission to purchase three (3) extended warranties at a cost exceeding $4,500.  In addition, there is a deductible for each extended warranty claim.

8.     After the parties executed the term sheet regarding class relief on May 21, 2008, we contacted all of the Representative Plaintiffs and made an effort to notify all Saturn owners who previously contacted us to discuss the proposed class relief.  The

-3-

response of the Representative Plaintiffs and those Saturn owners whom we reached was very favorable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 22, 2008.

Robert W. Schnieder II