**Hearing Date and Time: To Be Determined**
**Opposition Deadline: December 16, 2014**
**Reply Deadline: January 16, 2015**

Edward S. Weisfelner                    Sander L. Esserman
David J. Molton                         STUTZMAN, BROMBERG,
May Orenstein                           ESSERMAN & PLIFKA, A
Howard S. Steel                         PROFESSIONAL CORPORATION
Rebecca Fordon (*pro hac vice* pending)   2323 Bryan Street, Suite 2200
BROWN RUDNICK LLP                       Dallas, Texas 75201
Seven Times Square                      Telephone: 214-969-4900
New York, New York 10036                Email: esserman@sbep-law.com
Telephone: 212-209-4800
Email: eweisfelner@brownrudnick.com
Email: dmolton@brownrudnick.com
Email: morenstein@brownrudnick.com
Email: hsteel@brownrudnick.com
Email: rfordon@brownrudnick.com


*Designated Counsel for Certain Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
In re:                                    :    Chapter 11
                                          :
MOTORS LIQUIDATION COMPANY, *et al*.,     :    Case No.: 09-50026 (REG)
    f/k/a General Motors Corp., *et al*.,   :
                                          :
               Debtors.    :    (Jointly Administered)
----------------------------------------------------------------X

**DESIGNATED COUNSEL'S RESPONSE TO THE PARTICIPATING UNITHOLDERS'
AND GUC TRUST ADMINISTRATOR'S OPENING MEMORANDUM OF LAW
<u>RESPECTING THE EQUITABLE MOOTNESS THRESHOLD ISSUE</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .....................................................................................8

    A.  General Procedural Background. .....................................................8

    B.  New GM's Motions And The Development
       Of The Equitable Mootness Threshold Issue. ...............................10

    C.  Establishment And Funding Of The GUC Trust. ...........................12

    D.  The GUC Trust's Significant Current And Future Assets. .............13

ARGUMENT ...................................................................................................15

I.  Legal Standard. ......................................................................................15

II.  The Court Need Not and Should Not
    Address the Equitable Mootness Threshold Issue. ...............................17

III. Equitable Mootness Is Inapplicable. ....................................................17

    A.  The Court Can Still Order Some Effective Relief. ........................19

    B.  No Impact On Re-Emergence As A Revitalized Entity...................22

    C.  Relief Will Not Unravel Intricate Transactions So As To Knock The
       Props Out From Under The Authorization For Every Transaction
       And Create An Unmanageable, Uncontrollable Situation For The Court. .......................23

    D.  Third Parties Who Would Be Adversely Affected By The Appeal Have Adequate
       Notice And An Opportunity To Participate. ...................................25

    E.  Plaintiffs' Diligence In Pursuing A Stay Is
       Inapplicable And Under The Circumstances Plaintiffs Have Been Diligent...................27

CONCLUSION...................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),
    367 B.R. 84 (S.D.N.Y. 2007)............................................................5, 22

Bank of N.Y. Trust Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber
    Co.),
    584 F.3d 229 (5th Cir. 2009) ............................................................15, 16

Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.),
    Nos. 12 Civ. 7714, 12 Civ. 7715, 13 Civ. 0080, 2013 U.S. Dist. LEXIS 77740
    (S.D.N.Y. May 22, 2013) ("**BGI II**"), aff'd, BGI III .................................18, 19, 22

Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.),
    772 F.3d 102 (2d Cir. 2014) ("**BGI III**") .....................................................18, 22

Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.),
    428 B.R. 43 (S.D.N.Y. 2010)............................................................18, 19

Equinox Oil v. Anthill Constr. Co. (In re Equinox Oil Co.),
    No. Civ. A. 00-3320, 2001 WL 649806 (E.D. La. June 11, 2001), aff'd and remanded,
    300 F.3d 614 (5th Cir. 2002) ............................................................25

Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.),
    10 F.3d 944 (2d Cir. 1993)........................................2, 5, 6, 7, 16, 18, 19,  21, 22, 25, 27, 28

In re Calpine Corp.,  390 B.R. 508 (S.D.N.Y. 2008),
    aff'd, 354 F. App'x 479 (2d Cir. 2009)........................................................18, 22

In re Continental Airlines,
    91 F.3d 553 (3d Cir. 1996) ............................................................23

In re Enron Corp.,
    326 B.R. 497 (S.D.N.Y. 2005)............................................................22

In re Johns-Manville Corp.,
    600 F.3d 135 (2d Cir. 2010), cert. denied, 131 S. Ct. 644 (2010) ............................19

In re Paige,
    584 F.3d 1327 (10th Cir. 2009) ............................................................15

In re Polycel Liquidation, Inc.,
    Civ. No. 06-2183 (MLC), 2007 WL 77336 (D.N.J. Jan. 8, 2007)............................19

In re SemCrude, L.P.,
    728 F.3d 314 (3d Cir. 2013)..............................................................................15, 23, 24

In re Thomson McKinnon Secs., Inc.,
    130 B.R. 717 (Bankr. S.D.N.Y. 1991) ..............................................................18, 27

In re Thorpe Insulation Co.,
    677 F.3d 869 (9th Cir. 2012) ............................................................21, 23, 24, 27

Matter of Superior Offshore Int'l, Inc.,
    591 F.3d 350 (5th Cir. 2009) ...........................................................................24

MCI Telecommc'ns Corp. v. Credit Builders of Am., Inc.,
    2 F.3d 103 (5th Cir. 1993), cert. denied, 510 U.S. 978 (1993)..............................21

Morgenstein v. Motors Liquidation Co. (In re Motors Liquidation Co.),
    462 B.R. 494 (Bankr. S.D.N.Y. 2012)...................................................................22

Motor Veh. Mfr. Ass'n of the U.S., Inc. v. New York Dep't of Envtl. Conservation,
    79 F.3d 1298 (2d Cir. 1996)...............................................................................17

Nordhoff Invs., Inc. v. Zenith Elecs. Corp.,
    258 F.3d 180 (3d Cir. 2001)...............................................................................18

Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. Official
    Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.),
    988 F.2d 322 (2d Cir. 1993)...............................................................................18

Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.),
    430 B.R. 65 (S.D.N.Y. 2010)..............................................................................18

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,
    507 U.S. 380 (1993).......................................................................................4, 27

$R^2$ Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns),
    691 F.3d 476 (2d Cir. 2012), cert. denied sub nom. Law Debenture Trust Co. of N.Y.
    v. Charter Commc'ns, Inc., 133, S. Ct. 2021 (2013) .........................6, 15, 16, 19, 24

United States v. Broadcast Music, Inc.,
    275 F.3d 168 (2d Cir. 2001)...............................................................................17

Zazzali v. Eide Bailly LLP,
    No. 1:12-CV-349-S-MJP, 2013 WL 6045978 (D. Idaho Nov. 14, 2013) ...............18

Zazzali v. Hirschler Fleischer, P.C.,
    482 B.R. 495 (D. Del. 2012)..............................................................................18

Zients v. LaMorte,
    459 F.2d 628 (2d Cir. 1972)......................................................................................................4

Designated Counsel,[1] for and on behalf of certain Plaintiffs, file this brief in response (the "**Response**") to *The Participating Unitholders' and GUC Trust Administrator's Opening Memorandum of Law Respecting the Equitable Mootness Threshold Issue*, dated November 5, 2014 [ECF No. 12983] (the "**Participating Unitholders/GUC Trust Administrator's Brief**" or "**Br.**") and respectfully represent as follows:[2]

## PRELIMINARY STATEMENT

Despite New GM's ongoing efforts to deflect attention and liability for New GM's wrongdoing onto Old GM, this Court need not address the Equitable Mootness Threshold Issue. The basis for this result is set forth at length in the Plaintiffs' Opposition Brief, which is fully incorporated by reference into this Response.

The violation of Plaintiffs' procedural due process rights - to say nothing of the fact that the Sale Order does not encompass and could not bar Plaintiffs' specific claims against New GM here for its own Post-Sale conduct - prevents New GM from enforcing the Sale Order against the Plaintiffs as a matter of law. Accordingly, the appropriate remedy comes naturally from a

---

[1] Lead Counsel appointed in the General Motors LLC Ignition Switch Litigation Multidistrict Litigation in the United States District Court for the Southern District of New York, Judge Furman presiding, Case No. 14-MD-2543 (JMF) (the "**MDL Proceeding**"), have retained the undersigned Designated Counsel, pursuant to Lead Counsel's authority under *Order No. 13 (Organization of Plaintiffs' Counsel, Protocols for Common Benefit Work and Expenses)*, dated September 16, 2014 [MDL Proceeding ECF No. 304], to brief the Threshold Issues with respect to plaintiffs who have asserted actions consolidated for pre-trial purposes in the MDL Proceeding ("**Plaintiffs**"). See also *Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect Thereto, and (III) Adversary Proceeding No. 14-01929*, dated May 16, 2014 [ECF No. 12697] (the "**May 16, 2014 Scheduling Order**") (in which certain Plaintiffs appointed Designated Counsel to speak on Plaintiffs' behalf regarding the Threshold Issues); *Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect Thereto, and (III) Adversary Proceeding No. 14-01929*, dated July 11, 2014 [ECF No. 12770] (the "**Supplemental Scheduling Order**") (ordering Designated Counsel to, *inter alia*, file and serve a response to the Participating Unitholders/GUC Trust Administrator's Brief).

[2] Capitalized terms not otherwise defined in this Response shall have the meanings ascribed to them in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, dated July 11, 2014*, dated August 8, 2014 [ECF No. 12826] or *Designated Counsel's Opposition to the New GM Motions for Enforcement of Sale Order and Injunction*, dated December 16, 2014 [ECF No. 13025] (the "**Plaintiffs' Opposition Brief**").

determination of a violation of due process or that Plaintiffs' claims against New GM for its own

Post-Sale conduct are outside the scope of the Sale Order - the Consolidated Complaints should

proceed in the MDL Proceeding and this Court may, and should, refrain from addressing the

Equitable Mootness Threshold Issue.

However, given the Court's instruction to brief the Equitable Mootness Threshold Issue

now on the merits, as an "in the alternative" argument, see Aug. 18, 2014 Status Conference

Hr'g Tr. 58:22-25; 67:14-18, Plaintiffs submit this Response, without prejudice to Plaintiffs'

Opposition Brief and the Consolidated Complaints.

The Participating Unitholders' and GUC Trust Administrator's attempt to invoke

equitable mootness to deprive Plaintiffs of a potential remedy is profoundly inequitable.  In other

words, there is nothing remotely inequitable in considering Plaintiffs' claims on the merits,

whether they lie against New GM as set forth in the Consolidated Complaints, or are found to lie

against Old GM.

Each of the Chateaugay factors associated with equitable mootness arguments (or lack

thereof) is met and support resolution of the Plaintiffs' claims on the merits:[3]

**(1)  "the court can still order some effective relief":**  It would not be inequitable or

impossible for the Court to fashion relief for the Plaintiffs out of current and/or future GUC Trust

assets ("**GUC Trust Assets**").  The question before the Court is not whether every conceivable

form of relief for the Plaintiffs is available or even if *pari passu* treatment to other creditors of

the Old GM bankruptcy estate is feasible.  Rather, the question is whether "at least some

effective relief could be granted."  Chateaugay Corp., 10 F.3d at 954 ("Although the bankruptcy

---

[3]    See Frito-Lay, Inc. v. LTV Steel Co., (In re Chateaugay Corp.), 10 F.3d 944, 952-53 (2d Cir. 1993)
("**Chateaugay**").

court might determine that full relief is no longer available to [appellant] after substantial

consummation, we are convinced that at least some effective relief could be granted.").

Relief can be afforded to Plaintiffs against the Old GM bankruptcy estate and/or GUC

Trust without reversing the Confirmation Order, unraveling the Plan or creating an

unmanageable or uncontrollable situation for the Bankruptcy Court.

The Participating Unitholders and GUC Trust Administrator cannot, and do not, dispute

Plaintiffs' ability to file a motion seeking allowance of late proofs of claim against Old GM

and/or the GUC Trust or this Court's authority to find in connection with the Threshold Issues

that relief for the Plaintiffs appropriately lies against Old GM and/or the GUC Trust.[4]

Thereafter, Plaintiffs' claims may be adjudicated as Allowed General Unsecured Claims,

with Plaintiffs becoming GUC Trust Beneficiaries.

However, the Participating Unitholders and GUC Trust Administrator assert that even if

Plaintiffs' late filed claims were subsequently allowed, GUC Trust Assets cannot be used to

satisfy those claims, because those GUC Trust Assets are allegedly "contractually" earmarked

for other GUC Trust Beneficiaries and contingent Beneficiaries.  See Br. ¶ 44.  This restrictive

view of available relief for late filed claims is antithetical to binding precedent, the Plan, and the

---

[4]    Until resolution of the Threshold Issues, it would be premature for Plaintiffs to file a motion seeking allowance
of late proofs of claim against Old GM and/or the GUC Trust, as the Court has found the issue of "whether a claim
asserted in the Ignition Switch Actions is timely and/or meritorious against the Old GM  bankruptcy estate (and/or
the GUC Trust) is not a Threshold Issue."  See May 16, 2014 Scheduling Order at 4; Supplemental Scheduling
Order at 3.

Late Filed Claims Order.[5]  Simply put, there is no bar on Plaintiffs' claims being deemed timely filed, adjudicated as Allowed General Unsecured Claims, and Plaintiffs becoming GUC Trust Beneficiaries.

Plaintiffs not only have a viable procedural pathway to relief from the GUC Trust, there are sufficient assets to provide Plaintiffs with some effective relief, without manifest inequity to GUC Trust Beneficiaries and contingent Beneficiaries.

As of December 16, 2014, the GUC Trust has approximately $773.7 million dollars of GUC Trust Assets and $425.3 million dollars of "distributable assets."[6]  The GUC Trust Assets may be supplemented and increased by, *inter alia*:  (i) future dividends issued on the GUC Trust's New GM Common Stock holdings; (ii) trigger of the "accordion" feature in the *Amended and Restated Master Sale and Purchase Agreement*, dated June 26, 2009 [ECF No. 2968-2] (the "**MSPA**");[7] and (iii) the Court requiring New GM to contribute more money or New GM Common Stock to the GUC Trust.    Additional distributable value may be realized if Disputed Claims are disallowed, or upon certain resolution of the $1.5 billion dollar Term Loan Avoidance Action.

---

[5]    See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 385-86 (1993) (setting forth the "excusable neglect" factors for allowance of late filed claims, as timely filed) ("**Pioneer**"); Zients v. LaMorte, 459 F.2d 628, 630 (2d Cir. 1972) (noting court retains it "traditional equity powers" to allow late-filed proofs of claim); see also Plan § 1.79 (the Court may otherwise determine a claim to be an Allowed General Unsecured Claim); *Order Approving Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims*, dated February 8, 2012 [ECF No. 11394] (the "**Late Filed Claims Order**") at 2 ("nothing in [the Late Filed Claims Order] shall prevent any claimant submitting a Late claim from filing a motion with the Court seeking to have its Late Claim deemed timely filed.").

[6]    Unless otherwise stated herein, values of New GM Securities are calculated using the prices of New GM Common Stock and New GM Warrants according to Bloomberg Finance, L.P. as of 10:00 a.m. (ET) on December 16, 2014.  See Equitable Mootness Stipulated Facts ¶ 54.

[7]    Under the "accordion" provision in the MSPA, New GM must contribute tens of millions of New GM shares to the GUC Trust, if the aggregate amount of allowed unsecured claims against Old GM reaches certain threshold levels, which is likely to occur given the potential magnitude of Plaintiffs' claims.  See MSPA § 3.2(c).

**(2)    "such relief will not affect the re-emergence of the debtor as a revitalized corporate entity":**  It is undisputed that the second <u>Chateaugay</u> factor is inapplicable because Old GM has not reorganized.  <u>See</u> <u>ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)</u>, 367 B.R. 84, 96 (S.D.N.Y. 2007) (noting that where debtors have liquidated, "the second <u>Chateaugay</u> factor is inapposite"); <u>see also</u> Br. ¶ 4 n.3.

However, it is important to note that providing relief to Plaintiffs from GUC Trust Assets will not adversely affect New GM's financial condition or business operations.  New GM customers, suppliers and employees would not be affected.  It would not require New GM to unwind anything, cancel any new securities or reinstate pre-bankruptcy securities, reverse any changes to New GM's corporate structure, or clawback any distributions made to creditors. None of the numerous actions to consummate the Plan would be affected.

**(3)    "such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court":**  Plaintiffs do not dispute that tailoring economic relief for Plaintiffs against Old GM and/or the GUC Trust invariably impacts GUC Trust Beneficiaries and contingent Beneficiaries.

Indeed, the *Motors Liquidation Company GUC Trust, Annual Report for Fiscal Year Ended March 31, 2014 (Form 10-K)* (May 22, 2014) (the "**GUC Trust 2014 10K**") provides express warning of the potential impact of Plaintiffs' claims on recoveries from GUC Trust Assets, indicating that "no assurance may be given that personal injury, property damage and other claims relating to New GM's recalls involving General Motors vehicles manufactured or sold prior to the Closing Date . . . will not adversely affect the GUC Trust, its assets or the Plan." GUC Trust 2014 10K at 20.

However, granting relief to Plaintiffs from GUC Trust Assets would not "'knock the props out' from under the authorization of every transaction that has taken place," and would not require unwinding any transactions undertaken to consummate the Plan, or clawing back any distributions already made to creditors.

Ultimately, the appropriate question is not whether third-party interests are affected, but whether any effects on third parties would be inequitable. See R$^2$ Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns), 691 F.3d 476, 482, 484 (2d Cir. 2012) (noting that "if the . . . Settlement were unlawful, it would not be inequitable to require the parties to that agreement to disgorge their ill-gotten gains"), cert. denied sub nom. Law Debenture Trust Co. of N.Y. v. Charter Commc'ns, Inc., 133, S. Ct. 2021 (2013).

That there may be late filed claims that are subsequently deemed timely and allowed is a risk in any bankruptcy proceeding. It is certainly not inequitable. That is particularly so given the violation of Plaintiffs' procedural due process rights. The potential for dilution of future recoveries of Unitholders based on late filed claims subsequently allowed is not outside contemplation of the Plan and Unitholders' reasonable expectations and may be substantially mitigated, if not fully allayed by the additional consideration provided by New GM under the "accordion" feature and the Court requiring New GM to contribute more money or New GM Common Stock to the GUC Trust. Adjudicating the bona fides of a late filed claim under the Pioneer factors is not an unmanageable, uncontrollable situation for the Court.

**(4)  "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings":** Similar to the second Chateaugay factor, the fourth factor is inapplicable as the Plaintiffs are not appealing any relief. If the fourth factor is found applicable, it militates against equitable mootness. As active

participants in these proceedings, the Participating Unitholders and GUC Trust Administrator cannot, and do not, argue that they lack notice and an opportunity to fully participate in these proceedings.

**(5)** **"the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order":** Similar to the second and fourth <u>Chateaugay</u> factors, the fifth factor is inapplicable, as the Plaintiffs were not provided constitutionally adequate notice of, *inter alia,* the Sale Hearing, Bar Date, and Confirmation Hearing. Accordingly, the Plaintiffs were deprived of the ability to seek a stay of these Orders and/or they held "future claims" that could not be discharged by the Old GM bankruptcy.

Given the evolution of the Equitable Mootness Threshold Issue and its late addition to the slate of Threshold Issues, it is duplicitous that the Participating Unitholders and GUC Trust Administrator assert that Plaintiffs have not been diligent. <u>See</u> Br. ¶ 64.

Throughout these proceedings Plaintiffs had acted with extreme diligence and candor. The Participating Unitholders and GUC Trust Administrator have been keenly aware that the Threshold Issues include determination of whether any or all of the Plaintiffs' claims are claims against Old GM and whether an appropriate remedy for the violation of Plaintiffs' procedural due process rights may lie against the Old GM bankruptcy estate and/or GUC Trust. Any claim by the Participating Unitholders and the GUC Trust Administrator that they lack notice of the potential claims of the Plaintiffs against Old GM and/or the GUC Trust is fully belied by the GUC Trust's recent 10-K identifying that exact risk. <u>See</u> GUC Trust 2014 10K at 20.

Lastly, the Plaintiffs have not "sat on their rights" vis-à-vis the GUC Trust Administrator's cavalier effort to dissipate GUC Trust Assets prior to adjudication of the Threshold Issues. In fact, on November 4, 2014, over a week prior to the GUC Trust

Administrator's distribution of over $240 million of GUC Trust Assets on November 12, 2014 (the "**November 12, 2014 GUC Trust Distribution**"), counsel for certain Plaintiffs sent counsel for the GUC Trust a letter (copied to counsel to the Participating Unitholders) advising that Plaintiffs were "known potential contingent beneficiaries of the GUC Trust and the GUC Trust should not make any further distributions unless and until it demonstrates that adequate reserves ha[d] been established with respect to Plaintiffs' potential claims against Old GM and/or the GUC Trust that could be in the multiple billions of dollars."[8]

Undeterred, the GUC Trust Administrator made the November 12, 2014 GUC Trust Distribution (significantly depleting GUC Trust Assets potentially available to Plaintiffs), and now seeks to wrongfully wield equitable mootness as a sword rather than a shield.  These efforts must fail.  If the Court rules on the merits of the Equitable Mootness Threshold Issue, the Court should find that any of Plaintiffs' claims against Old GM and/or the GUC Trust are not equitably moot.

## STATEMENT OF FACTS

### A.    General Procedural Background.

On July 1, 2009, Old GM and certain of its affiliates filed for chapter 11 bankruptcy with this Court.  On July 5, 2009, the Court entered the Sale Order.  See ECF No. 2968.  On July 10, 2009, the 363 Sale was consummated.  See *New GM's Agreed-Upon Factual Stipulations, and Disputed Factual Stipulations*, dated August 8, 2014 [ECF No. 12826-1] ("**New GM Stipulated Facts**"), ¶ 56.

On March 29, 2011, the Court entered the Confirmation Order.  See *Agreed Upon and Disputed Stipulations of Fact Regarding the Equitable Mootness Threshold Issue*, dated August

---

[8]    A copy of the November 4, 2014 letter is attached hereto as **Exhibit A** (the "**November 4, 2014 Letter**").

8, 2014 [ECF No. 12826-4] (the "**Equitable Mootness Stipulated Facts**"), ¶ 15.  On March 31, 2011, the Plan became effective.  See id. ¶ 16.

On the Effective Date, the GUC Trust was established pursuant to the terms set forth in the Plan, Confirmation Order, and GUC Trust Agreement.  See id. ¶ 13.

On January 1, 2012, the GUC Trust filed its Late Filed Claims Motion.[9]

Pursuant to the Late Filed Claims Motion, the GUC Trust Administrator sought entry of an order disallowing all future late filed claims unless, among other things, the claimant filed a motion with the Court allowing it to file a late proof of claim.  According to the GUC Trust Administrator, entry of the proposed order would "not prejudice potential claimants because . . . it preserves a claimant's right to file a motion seeking to deem its Late Claim timely filed . . . ."  Late Filed Claims Motion ¶ 8.

On February 8, 2012, the Court entered the Late Filed Claims Order.

The Late Filed Claims Order explicitly states that "nothing in [the Late Filed Claims Order] shall prevent any claimant submitting a Late Claim from filing a motion with the Court seeking to have its Late Claim deemed timely filed."  Late Filed Claims Order at 2.

Likewise, the Plan, Confirmation Order, and GUC Trust Agreement do not prohibit or prejudice late filed claims.  Indeed, certain late filed claims have been allowed in the Old GM bankruptcy case both before and after the Effective Date. See Equitable Mootness Disputed Stipulated Facts ¶ 4.

Under the Plan, a late filed proof of claim may be subsequently adjudicated as an Allowed General Unsecured Claim.  See Plan § 1.79; see also Equitable Mootness Stipulated Facts ¶ 11.

---

[9]    See *Motion Pursuant to Bankruptcy Rule 3003 and Section 105(a) of the Bankruptcy Code for an Order Disallowing Certain Late Filed Claims*, dated January 26, 2012 [ECF No. 11351] (the "**Late Filed Claims Motion**").

At the beginning of each GUC Trust fiscal quarter, the GUC Trust Administrator assesses

whether to make a distribution to holders of Allowed General Unsecured Claims and GUC Trust

Units, respectively, in consideration of previously unknown potential Allowed General

Unsecured Claims.  See GUC Trust Agreement §5.4(d) ("[T]he GUC Trust Administrator may . .

. withhold distribution of Excess GUC Trust Distributable Assets to the holders of Units if the

GUC Trust Administrator becomes aware of previously unknown potential Allowed General

Unsecured Claims, in an amount that the GUC Trust Administrator . . . estimates to be the

maximum amount reasonably distributable on account of such Claims.").

### B.    New GM's Motions And The Development Of The Equitable Mootness Threshold Issue.

On April 21, 2014, New GM filed its *Motion Pursuant to 11 U.S.C. §§ 105 and 363 to

Enforce the Court's July 5, 2009 Sale Order and Injunction.*  See ECF No. 12620.[10]

On April 22, 2014, certain plaintiffs filed an Objection to the Motion.  See ECF No.

12629.

Also, on April 22, 2014, the Court ordered that a scheduling conference take place on

May 2, 2014.  See ECF No. 12627.

On April 30, 2014, New GM filed a letter raising the issue of whether any or all of

Plaintiffs' claims against New GM were actually claims against the Old GM bankruptcy estate

and/or the GUC Trust.  See ECF No. 12673.

New GM's attempt to deflect attention and liability for New GM's wrongdoing onto Old

GM catalyzed the Participating Unitholders' and GUC Trust Administrator's participation in

---

[10]    "**New GM's Motions**" also include:  (i) *Motion of General Motors LLC Pursuant to 11 U.S.C §§ 105 and 363 to Enforce this Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [ECF No. 12807]; and (ii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [ECF No. 12808].

these proceedings and drove their successful efforts to obtain the late addition of the Equitable

Mootness Threshold Issue to the slate of Threshold Issues.

The doctrine of equitable mootness was far outside the lines at the first status conference.

Rather, the GUC Trust Administrator was adamant that issues related to the GUC Trust and any

Plaintiffs' claims against the GUC Trust should not be addressed as a threshold issue.  See May

2, 2014 Hr'g Tr. 75:23-79:20.  Counsel for the Participating Unitholders was in agreement

claiming "we're frankly strangers to these proceedings."  Id. at 86:1-87:16.

The Court, in turn, found that the "matters involved in compliance with Pioneer are fact

intensive and are not appropriately threshold issues.  But any party will be free to assert that

claims now being asserted against New GM are prepetition and not post-petition claims."  Id. at

97:22-98:1.

On May 16, 2014, the Court entered a scheduling order designating five Threshold

Issues, including:  "whether any or all of the claims asserted in the Ignition Switch Actions are

claims against the Old GM bankruptcy estate (and/or the GUC Trust)."  See May 16, 2014

Scheduling Order at 4.  Equitable Mootness was not a Threshold Issue.  Further, the May 16,

2014 Scheduling Order provided that:  "[f]or the avoidance of doubt, the issue of whether a

claim asserted in the Ignition Switch Actions is timely and/or meritorious against the Old GM

bankruptcy estate (and/or the GUC Trust) is not a Threshold Issue."  Id.

Thereafter, equitable mootness crept onto the Threshold Issue chalkboard as a potential

affirmative defense to be wielded by the Participating Unitholders and GUC Trust Administrator.

At the July 2, 2014 status conference, the GUC Trust Administrator first raised equitable

mootness:  "whether or not these claims are or are not against [N]ew GM versus the GUC

[T]rust, that would not resolve the issue of whether the plaintiffs have excusable neglect under

11

the Pioneer standard and, conversely, whether those claims are equitably moot." July 2, 2014

Status Conference Hr'g Tr. 50:5-9.

Thereafter, the Supplemental Scheduling Order included the Equitable Mootness

Threshold Issue as an outgrowth of the Old GM Claim Threshold Issue.  See Supplemental

Scheduling Order at 3.  *Whether any Plaintiffs' claims against Old GM and/or the GUC Trust*

*are timely and/or meritorious against the Old GM bankruptcy estate and/or the GUC Trust*

*remained outside the Threshold Issues.* See id. at 3 n.4.

### C.    Establishment And Funding Of The GUC Trust.

Pursuant to the *Assignment and Assumption Agreement (GUC Trust)*, dated December

15, 2011, Old GM assigned to the GUC Trust certain assets and agreements, and the GUC Trust

assumed certain obligations of Old GM.    See New GM Stipulated Facts ¶ 65; see also

Assignment and Assumption Agreement (GUC Trust) § 1.

Among the assets transferred by Old GM to the GUC Trust was record ownership of:

(i) 30,967,561 shares of New GM Common Stock; (ii) 28,152,186 New GM Series A Warrants;

and (iii) 28,152,186 New GM Series B Warrants, as well as additional assets.  See Equitable

Mootness Stipulated Facts ¶ 31.

Under the MSPA, New GM agreed to provide additional consideration to Old GM if the

aggregate amount of Allowed General Unsecured Claims against Old GM exceeded $35 billion.

See id. ¶ 5.  In such case, New GM is required to issue additional shares of New GM Common

Stock to the GUC Trust.  Id.[11]

---

[11]    The amount of additional shares is calculated by multiplying:  (i) 30 million shares (adjusted to account for any
stock dividend, stock split, combination of shares, recapitalization, merger, consolidation, reorganization or similar
transaction that occurs after the 363 Sale is consummated); and (ii) a fraction, (A) the numerator of which is the
amount by which allowed general unsecured claims exceed $35 billion (up to $7 billion) and (B) the denominator of
which is $7 billion.  See MSPA § 3.2(c).

The GUC Trust Administrator is authorized to determine whether the GUC Trust is entitled to receive a distribution of additional New GM Common Stock as a result of this "accordion" feature of the MSPA. See id. ¶ 32. If the GUC Trust is so entitled, the GUC Trust Administrator may demand the prompt issuance of such additional shares by New GM. See id.

As of September 30, 2014, the GUC Trust Administrator reported that there were approximately $31.854 billion in Allowed General Unsecured Claims. See id. ¶ 43; see also *Motors Liquidation Company GUC Trust, Quarterly Report for Quarter Ended September 30, 2014 (Form 10-Q)* at 10 (the "**GUC Trust 3Q 2014 10Q**") (noting same figure as of September 30, 2014).

Accordingly, if Plaintiffs' claims are allowed against Old GM and/or the GUC Trust it is likely that New GM would be obligated under the "accordion" feature in the MSPA to issue additional shares of New GM Common Stock to the GUC Trust with potential value of upward of $900 million dollars.

### D.    The GUC Trust's Significant Current And Future Assets.

On November 12, 2014, the GUC Trust filed the GUC Trust 3Q 2014 10Q.

The GUC Trust 3Q 2014 10Q reflects that, as of September 30, 2014, the GUC Trust's total assets had a fair market value of approximately $1,045,876,000. See GUC Trust 3Q 2014 10Q at 11-12; see also Equitable Mootness Stipulated Facts ¶ 45.

Certain of these assets were defined by the GUC Trust Administrator as "distributable assets," with an estimated fair market value of approximately $703.174 million. See GUC Trust 3Q 2014 10Q at 30; see also Equitable Mootness Stipulated Facts ¶ 46.

On October 24, 2014, the GUC Trust Administrator disclosed, on page seven of a quarterly budget variance report, that it was planning on making the November 12, 2014 GUC Trust Distribution. See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(c)*

*Report and Budget Variance Report as of September 30, 2014*, dated October 24, 2014 [ECF No. 12963] at 7-8.

On November 4, 2014, counsel for certain of the Plaintiffs sent counsel for the GUC Trust a letter (copied to counsel to the Participating Unitholders) advising that Plaintiffs were "known potential contingent beneficiaries of the GUC Trust and the GUC Trust should not make any further distributions unless and until it demonstrates that adequate reserves ha[d] been established with respect to Plaintiffs' potential claims against Old GM and/or the GUC Trust that could be in the multiple billions of dollars."  See November 4, 2014 Letter at 2.

On November 5, 2014, counsel for the GUC Trust Administrator sent a letter in reply to the November 4, 2014 Letter, stating that it would not establish reserves with respect to Plaintiffs' claims and that it was going forward with the November 12, 2014 GUC Trust Distribution.[12]

Upon information and belief, the GUC Trust Administrator made the November 12, 2014 GUC Trust Distribution to all holders of record of Units as of November 4, 2014, without establishing any known reserves for Plaintiffs' claims.

Putting aside the propriety of the November 12, 2014 GUC Trust Distribution, as of December 16, 2014, the GUC Trust has total assets of approximately $773.7 million dollars, comprised of:  (i) 11,534,389 shares of New GM Common Stock (estimated fair market value of $351.8 million dollars); (ii) 10,485,565 New GM Series A Warrants (estimated fair market value of $219.5 million dollars); (iii) $10,485,565 New GM Series B Warrants (estimated fair market value of $138.6 million dollars); (iv) $35.2 million dollars of commercial paper and demand notes; and (v) $28.6 million dollars in cash equivalents.  See GUC Trust 3Q 2014 10Q at 1, 12.

---

[12]    A copy of the November 5, 2014 letter is attached hereto as **Exhibit B**.

As of December 16, 2014, the GUC Trust's reported "distributable assets" have a fair market value of approximately $425.3 million dollars.

The GUC Trust Assets stand to be augmented upon allowance of any Plaintiffs' claims against Old GM and/or the GUC Trust through the "accordion" feature in the MSPA and any order by the Court requiring New GM to contribute more money or New GM Common Stock to the GUC Trust. See Equitable Mootness Stipulated Facts ¶ 32.

## ARGUMENT

### I.    Legal Standard.

Equitable mootness is a judge-made "prudential doctrine" without basis in the Constitution that permits dismissal of appeals from unstayed orders and actions seeking to revoke substantially consummated bankruptcy plans. See In re Charter Commc'ns, Inc., 691 F.3d at 481. "[E]quitable mootness is 'a judicial anomaly' because it creates an exception to courts' 'virtually unflagging obligation to exercise jurisdiction.'" Id. (quoting Bank of N.Y. Trust Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.), 584 F.3d 229, 240 (5th Cir. 2009)).

Accordingly, the exception should be cautiously applied, balancing the importance of finality against the right to review and relief. See id.; see also In re SemCrude, L.P., 728 F.3d 314, 323-25 (3d Cir. 2013) ("Its judge-made origin, coupled with the responsibility of federal courts to exercise their jurisdictional mandate, obliges us, however, to proceed most carefully before dismissing an appeal as equitably moot.").[13]

---

[13]    Recent decisions reflect a growing hesitation by circuit courts to apply equitable mootness. See Pac. Lumber, 584 F.3d at 243 ("We hold these issue justiciable notwithstanding the tug of equitable mootness."); In re Paige, 584 F.3d 1327, 1348 (10th Cir. 2009) (remanding for consideration of an appeal's merits where the equitable mootness "factors certainly do not all point in one way or the other.").

"Before there is a basis to forego jurisdiction, granting relief on appeal must be almost certain to produce a 'perverse' outcome – 'chaos in the bankruptcy court' from a plan in tatters and/or significant 'injury to third parties' – only then is equitable mootness a valid consideration." Id. at 320 (internal citations omitted).

A Court should not reach a conclusion of equitable mootness simply because some forms of relief might not be feasible; equitable mootness must be applied "'with a scalpel rather than an axe.'" See In re Charter Commc'ns, Inc., 691 F.3d at 481 (quoting In re Pac. Lumber, 584 F.3d at 240-41).

The Second Circuit has noted that substantial consummation of a plan does not necessarily make it impossible or inequitable to grant effective relief and that a claim is not automatically equitably moot if the relief requested would require that a confirmed plan be altered. See Chateaugay, 10 F.3d at 952.

Rather, the Chateaugay factors mandate that substantial consummation of a plan does not lead to the application of equitable mootness if:

(1) "the court can still order some effective relief;"

(2) "such relief will not affect the 're-emergence of the debtor as a revitalized corporate entity;'"

(3) "such relief will not unravel intricate transactions so as to 'knock the props out from under the authorization for every transaction that has taken place' and 'create an unmanageable, uncontrollable situation for the Bankruptcy Court;'"

(4) "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings;" and

(5) "the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from[.]'"

Id. at 952-53 (internal citations omitted).

16

## II.    The Court Need Not and Should Not
Address the Equitable Mootness Threshold Issue.

Unless and until this Court finds that Plaintiffs' claims are against Old GM and/or the

GUC Trust or that the appropriate remedy for the violation of Plaintiffs' due process rights lies

against the Old GM bankruptcy estate and/or the GUC Trust, the Court need not, and should not,

address the Equitable Mootness Threshold Issue.[14]

This Court can, and should, make a complete ruling on the Threshold Issues without

reaching or considering the Equitable Mootness Threshold Issue because, as set forth in

Plaintiffs' Opposition Brief, the natural result of a finding of a violation of Plaintiffs' procedural

due process rights is that the Sale Order is inapplicable to and unenforceable against the

Plaintiffs' claims and the Sale Order does not encompass and could not bar Plaintiffs' claims

against New GM for its own Post-Sale conduct.   The inexorable conclusion must be that the

Participating Unitholders' and GUC Trust Administrator's defense of equitable mootness can be

put on ice, and the Consolidated Complaints proceed in the MDL Proceeding.

## III.    Equitable Mootness Is Inapplicable.

If the Court reaches the Equitable Mootness Threshold Issue, it should reject the

Participating Unitholders' and GUC Trust Administrator's request to expand the appellate

doctrine of equitable mootness to bar the Plaintiffs from relief.

---

[14]    See United States v. Broadcast Music, Inc., 275 F.3d 168, 178-79 (2d Cir. 2001) (whether consent was necessary for a broadcaster to license certain musical works was not ripe for adjudication and the district court lacked the power to render an advisory opinion); Motor Veh. Mfr. Ass'n of the U.S., Inc. v. New York Dep't of Envtl. Conservation, 79 F.3d 1298, 1306 (2d Cir. 1996) (whether vehicle testing programs would violate federal clean air regulations was not ripe for adjudication because programs had not yet been adopted).

The Participating Unitholders and GUC Trust Administrator ask this Court to expand the

scope of the doctrine of equitable mootness beyond any context in which it has been applied

before or should be applied.[15]

The Participating Unitholders and GUC Trust Administrator are correct that equitable

mootness has been applied "in a variety of contexts," see Br. ¶ 38, but all of those contexts are

appeals from bankruptcy court orders or actions to revoke an order confirming a substantially

consummated plan – neither of which is the case here.[16]

It is unsurprising then, that all of the cases cited by the Participating Unitholders and the

GUC Trust Administrator involve situations where the appellant had either appeared in the

proceedings or had been provided with adequate notice of the proceedings.[17]

In other words, the Participating Unitholders and GUC Trust Administrator do not cite to

a single case applying equitable mootness to bar a party's claims against a debtor where, as here,

---

[15]    See Nordhoff Invs., Inc. v. Zenith Elecs. Corp., 258 F.3d 180, 185 (3d Cir. 2001) (observing that the equitable mootness doctrine is "limited in scope and should be cautiously applied") (internal quotations and citations omitted); Zazzali v. Eide Bailly LLP, No. 1:12-CV-349-S-MJP, 2013 WL 6045978, at *15 (D. Idaho Nov. 14, 2013) (calling into question the applicability of equitable mootness where the case was not an appeal from a confirmation of a reorganization plan); Zazzali v. Hirschler Fleischer, P.C., 482 B.R. 495, 507 (D. Del. 2012) ("As Defendant emphasizes, the instant action is not an appeal from confirmation of a plan of reorganization—thus, it [is] unclear whether the doctrine of equitable mootness is even applicable here.").

[16]    See Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.), 772 F.3d 102, 109, nn. 10-12 (2d Cir. 2014) ("**BGI III**") (collecting cases applying equitable mootness doctrine only to appeals or attempts to revoke confirmation orders).

[17]    See, e.g., Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.), 988 F.2d 322, 326-27 (2d Cir. 1993) (all parties appeared and participated in the bankruptcy proceedings below); Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.), Nos. 12 Civ. 7714, 12 Civ. 7715, 13 Civ. 0080, 2013 U.S. Dist. LEXIS 77740, at *32-33 (S.D.N.Y. May 22, 2013) (appellants retained counsel prior to the confirmation hearing) ("BGI II"), aff'd, BGI III; Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.), 430 B.R. 65, 73-74 (S.D.N.Y. 2010) (all appellants appeared and participated in the bankruptcy proceedings relating to the Sale Order); Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.), 428 B.R. 43, 46 n.31 (S.D.N.Y. 2010) (same); Compania Internacional Financiera S.A. v. Calpine Corp. (In re Calpine Corp.), 390 B.R. 508, 515 (S.D.N.Y. 2008) (appellants failed to appear in confirmation process despite notice), aff'd, 354 F. App'x 479 (2d Cir. 2009). The GUC Trust's citation to Thomson McKinnon Secs., 133 B.R. 39, 41 (Bankr. S.D.N.Y. 1991), aff'd, 141 B.R. 31 (S.D.N.Y. 1992), is inapposite, as that case does not involve equitable mootness.

such party was denied a meaningful opportunity to participate in the debtor's bankruptcy proceedings.

Just like the Sale Order cannot function, and was not intended to be, a "get out of jail free" card for New GM, the doctrine of equitable mootness cannot be an absolute bar to providing Plaintiffs effective relief for their claims, particularly given the violation of Plaintiffs' procedural due process rights.[18]  Application of equitable mootness in this case would be the antithesis of equity.  Accordingly, the Court should find equitable mootness is inapplicable to bar the Plaintiffs from relief against the Old GM bankruptcy estate and/or the GUC Trust.

Further, consideration of the Chateaugay factors militates in favor of this Court finding equitable mootness is inapplicable:

## A.    The Court Can Still Order Some Effective Relief.

The first Chateaugay factor is satisfied as the Court can still order some effective relief based on the fact that the Plaintiffs' rights to seek allowance of late filed claims against Old GM and/or the GUC Trust are not foreclosed, or the Court may provide relief to Plaintiffs against the GUC Trust in connection with the Threshold Issues.[19]

The Participating Unitholders and GUC Trust Administrator do not challenge Plaintiffs' right to seek allowance of late filed claims against Old GM and/or the GUC Trust or this Court's

---

[18]   See In re Polycel Liquidation, Inc., Civ. No. 06-2183 (MLC), 2007 WL 77336, at *2-8 (D.N.J. Jan. 8, 2007) (affirming bankruptcy court's determination that equitable and statutory mootness did not require dismissal of Rule 60(b)(4) motion for relief from Sale Order where appellant had no notice of the sale motion); Campbell, 428 B.R. at 57 n.18 (noting in dicta that "due process concerns render[] mootness and res judicata doctrines inapplicable" by comparing an appeal from the Sale Order, which raised no due process issues, with In re Johns-Manville Corp., 600 F.3d 135, 158 (2d Cir. 2010), cert. denied, 131 S. Ct. 644 (2010), where the claimant "lacked adequate notice of the underlying channeling [injunction] and settlement orders").

[19]   See Late Filed Claims Order at 2; see also BGI II, 2013 U.S. Dist. LEXIS 77740, at *23-24 (first Chateaugay factor satisfied because it was theoretically possible to order reopening of claims filing period); Charter Commc'ns., 691 F.3d at 484 (first Chateaugay factor is satisfied where "it is not impossible to grant [appellants'] relief, in the sense that the appeals are not constitutionally moot (factor 1)").

19

authority to provide relief to Plaintiffs against the GUC Trust in connection with the Threshold

Issues.

Rather, the Participating Unitholders and GUC Trust Administrator argue equitable

mootness is applicable because "the assets remaining in the GUC Trust make it impossible to

grant Plaintiffs effective relief from the GUC Trust." Br. ¶ 54. This is not true.

First, though distributions under the Plan have commenced, not all of the GUC Trust

Assets have been transferred. Indeed, the GUC Trust's current total assets have a fair market

value of approximately $773.7 million dollars and its "distributable assets" have a fair market

value of approximately $425.3 million dollars.

Second, the GUC Trust regularly receives millions of dollars in dividends on its New GM

Common Stock and can reasonably anticipate future dividends.[20]

Third, there are approximately $1.6 billion in disputed claims pending against Old GM

that may result, upon claim disallowance, in additional value available for distribution to

Plaintiffs.[21]

Fourth, if the Plaintiffs' claims are found to be Allowed General Unsecured Claims, it is

highly likely to trigger the "accordion" feature under the MSPA, whereby New GM expressly

committed to contribute up to 30 million additional shares of New GM Common Stock to the

GUC Trust. See MSPA § 3.2(c).

---

[20]  See GUC Trust 3Q 2014 10-Q at 6 (noting that as of September 30, 2014, the GUC Trust has received dividends on the New GM Common Stock it holds aggregating $13.8 million and that New GM has declared a dividend of $.30 per share to holders of New GM Common Stock of record as of December 10, 2014).

[21]  Moreover, in the event that it is determined that the holders of Allowed General Unsecured Claims are entitled to proceeds (if any) of the JPM Action, then such proceeds (if any) will be contributed to the Avoidance Action Trust, for distribution to holders of Allowed General Unsecured Claims (following the reimbursement of certain fees and expenses to the DIP Lenders). See Equitable Mootness Stipulated Facts ¶ 26.

Finally, the Court may require New GM to contribute more money or New GM Common Stock to the GUC Trust.[22]

Although the amounts available from the foregoing sources may be insufficient to afford Plaintiffs a recovery *pari passu* to other holders of Allowed General Unsecured Claims under the Plan, the Second Circuit has recognized that "[a] claimant should not be out of court on grounds of mootness solely because its injury is too great for the debtor to satisfy in full." Chateaugay, 10 F.3d at 954; see also MCI Telecommc'ns Corp. v. Credit Builders of Am., Inc., 2 F.3d 103, 104 (5th Cir. 1993) ("[A] case is not mooted by the fact that an impecunious judgment debtor may lack the means to satisfy a judgment."), cert. denied, 510 U.S. 978 (1993).

Accordingly, the GUC Trust Assets could provide some effective relief to Plaintiffs.

Assuming GUC Trust Assets were available for relief to Plaintiffs, the Participating Unitholders and GUC Trust Administrator still argue equitable mootness is applicable by asserting that existing Unitholders have relied on reports that GUC Trust Beneficiaries consist of a finite universe of claimants and that expanding that universe to include Plaintiffs would be highly prejudicial to Unitholders. See Br. ¶ 46. That is not the case.

Unitholders, as sophisticated investors, are well aware of the risks of late filed claims that are subsequently allowed in bankruptcy proceedings. This is particularly so in this case given that: (i) the Late Filed Claims Order explicitly contemplates the potential for additional late filed claims, see Late Filed Claims Order at 2; (ii) GUC Trust Units represent only a contingent right to recovery, see Equitable Mootness Stipulated Facts ¶ 33; and (iii) through SEC filings and other publicly filed reports, the GUC Trust Administrator has repeatedly identified the risks of Plaintiffs' claims on future recoveries of Unitholders, see, e.g., GUC Trust 2014 10K at 20.

---

[22] See, e.g., In re Thorpe Insulation Co., 677 F.3d 869, 883 (9th Cir. 2012) (noting that district court, on appeal, could require Appellees to contribute more to the trust).

21

Each of the cases cited by the Participating Unitholders and GUC Trust Administrator for the proposition that it would be inequitable to grant Plaintiffs relief from GUC Trust Assets is inapposite to the facts here.[23]    Certainly none of the cases involved a manifest injustice approaching the magnitude of the violation of Plaintiffs' procedural due process rights.

Plaintiffs have established that effective relief can be afforded to Plaintiffs against the Old GM bankruptcy estate and/or the GUC Trust without reversing or vacating the Confirmation Order, unraveling the Plan or creating an unmanageable or uncontrollable situation for the Court. Accordingly, the first Chateaugay factor militates against application of equitable mootness.

### B.    No Impact On Re-Emergence As A Revitalized Entity.

The second Chateaugay factor - whether relief will affect the re-emergence of the Debtor - is inapplicable because Old GM did not reorganize.  See In re Adelphia Commc'ns Corp., 367 B.R. 84, 96 (S.D.N.Y. 2007) (where debtors have liquidated, "the second Chateaugay factor is inapposite"); see also Br. ¶ 4 n.3.

However, it is important to note that providing relief to Plaintiffs from GUC Trust Assets will not adversely affect New GM's financial condition or business operations.  New GM is well positioned financially to provide an appropriate remedy for Plaintiffs' claims.  If the Court determines that Plaintiffs hold any claims against Old GM and/or the GUC Trust or an appropriate remedy lies against the Old GM bankruptcy estate and/or the GUC Trust, New GM has the financial wherewithal to provide additional value to the GUC Trust under the MSPA's

---

[23]    See BGI II, 2013 U.S. Dist. LEXIS 77740, at *13-14, 34 (affirming, on equitable mootness grounds, bankruptcy court's holding that creditors who were provided adequate notice of the bar date and failed to demonstrate excusable neglect were prohibited from asserting priority and general unsecured claims against estate after bar date); BGI III, 772 F.3d at 103 (same); In re Enron Corp., 326 B.R. 497, 499, 503-05 (S.D.N.Y. 2005) (holding that it would be inequitable to revoke indemnification provisions in plan which parties relied on in good faith, and expressing concern that doing so would lead to the loss of key debtor employees); In re Calpine Corp., 390 B.R. at 519-22 (only way effective relief could be granted would be to recoup distributions already made, requiring tracing ownership which would be highly expensive and impracticable); Morgenstein v. Motors Liquidation Co. (In re Motors Liquidation Co.), 462 B.R. 494, 505 (Bankr. S.D.N.Y. 2012) (effective relief could only be granted by revoking the Confirmation Order; case was not decided on equitable mootness grounds).

09-50026-mg    Doc 13029    Filed 12/16/14    Entered 12/16/14 18:11:29    Main Document
Pg 28 of 34

"accordion" feature and in the form of additional funding or New GM Common Stock to the

GUC Trust.[24]

### C.    Relief Will Not Unravel Intricate Transactions So As To Knock The Props Out From Under The Authorization For Every Transaction And Create An Unmanageable, Uncontrollable Situation For The Court.

The Participating Unitholders and GUC Trust Administrator contend that granting any

relief to the Plaintiffs from the Old GM bankruptcy estate and/or the GUC Trust would unduly

impact third parties and require modifications to the Plan, Confirmation Order and GUC Trust

Agreement.  See Br. ¶ 59.  That is not the case or the appropriate legal standard.

The appropriate question is not whether third party interests are affected, but whether any

effects on third parties would be inequitable.  See Thorpe Insulation Co., 677 F.3d at 882 ("[T]he

question is not whether it is possible to alter a plan such that no third party interests are affected,

but whether it is possible to do so in a way that does not affect third party interests to such an

extent that the change is inequitable.").[25]

The relief Plaintiffs seek is a determination that the Sale Order is inapplicable to and

unenforceable against their claims relating to the Ignition Switch Defect because the violation of

their procedural due process rights, and that the Sale Order does not encompass, and could not

bar, Plaintiffs' claims against New GM for its own Post-Sale conduct.

If the Court finds that relief for the Plaintiffs appropriately lies against Old GM and/or

the GUC Trust, that relief could be fashioned through Plaintiffs' prosecution of late filed claims

against Old GM and effective relief could be provided Plaintiffs as set forth in this Response or

---

[24]    For example, as of September 30, 2014, New GM possessed assets totaling $176.9 billion, with liabilities of only $133.3 billion.  See General Motors Co., Quarterly Report (Form 10-Q), at 3 (Oct. 23, 2014).

[25]    See also Semcrude, 728 F.3d at 324-25 (noting that "[a]s then-Judge Alito explained, the feared consequences of a successful appeal are often more appropriately dealt with by fashioning limited relief at the remedial stage than by refusing to hear the merits of an appeal at its outset.") (citing In re Continental Airlines, 91 F.3d 553, 571-72 (3d Cir. 1996) (en banc) (Alito, J., dissenting)).

as otherwise ordered by the Court. Indeed, even where a confirmed plan needs to be altered in some manner, that does not by itself automatically lead to equitable mootness.[26]

Simply put, the Court can fashion remedies that would not inequitably impact Unitholders and would not require New GM to unwind anything, cancel any securities, change their corporate structure, or clawback any distributions. None of the numerous actions taken to consummate the Plan would be affected. Courts have consistently rejected equitable mootness arguments in cases with similar facts.[27]

The Participating Unitholders and GUC Trust Administrator also argue that providing Plaintiffs relief from GUC Trust Assets would be inequitable as it would materially alter the "potential" claims and liability mix disclosed in the Plan and Disclosure Statement and may significantly delay and "potentially" eviscerate additional distributions to Unitholders. See Br. ¶ 59.

However, the Disclosure Statement projections on "potential" claims, liabilities and recoveries are merely projections - they should not serve as a bar to Plaintiffs' relief. Further, the potential dilution of future distributions to Unitholders could be mitigated by the Court

---

[26]    See Charter Commc'ns, 691 F.3d at 482 ("Nor is a claim automatically equitably moot if the relief requested would require that a confirmed plan be altered."); see also Thorpe Insulation Co., 677 F.3d at 883 ("Where equitable relief, thought incomplete, is available, the appeal is not moot."); Matter of Superior Offshore Int'l, Inc., 591 F.3d 350, 353-54 (5th Cir. 2009) ("Although the Appellants seek reversal of the confirmation order . . . [r]emedies can be crafted for these deficiencies without completely undoing the Plan. Under the circumstances, equitable mootness does not apply."); see also Plan § 12.9 (Plan may be modified after confirmation so long as such action does not materially adversely affect the treatment of holders of Claims and Interests).

[27]    See SemCrude, 728 F.3d at 323-25 (holding appeal not equitably moot, despite substantial consummation of plan, where creditors were not afforded an opportunity to dispute the discharge of their claims in an adversary proceeding; reasoning that, inter alia, debtor's claims that relief was impossible were unsupported by evidence, amounts in dispute would not necessarily disrupt plan, and third parties, such as equity investors, would not be injured given the reorganized debtor's financial stability); Thorpe Insulation Co., 677 F.3d at 882 (holding appeal not equitably moot where, inter alia, equitable remedies were available on remand to the bankruptcy court, such as: requiring unsecured creditors and holders of future asbestos-related claims (the appellees in the action) to return certain funds received under the plan; amending the plan to provide that distributions from debtor's trust for asbestos claims would not bind direct suits against the objecting creditors; and/or modifying the trust distribution procedure).

requiring New GM to contribute more value to the GUC Trust, and the issuance of additional New GM shares to the GUC Trust through triggering of the "accordion" feature under the MSPA.

That there may be late filed claims that may delay and/or dilute future recoveries to Unitholders was not outside contemplation of the Plan and Unitholders' reasonable expectations and does not require revocation of the Plan or the clawback of distributions. It certainly does not affect any New GM customer or vendor, or send New GM back to bankruptcy. Adjudicating the bona fides of a late filed claim under the <u>Pioneer</u> factors is certainly not an unmanageable, uncontrollable situation for the Court.

### D.    Third Parties Who Would Be Adversely Affected By The Appeal Have Adequate Notice And An Opportunity To Participate.

Similar to the second <u>Chateaugay</u> factor, the fourth factor is inapplicable as the Plaintiffs are not appealing any relief, but rather seeking relief for the violation of their procedural due process rights and prosecution of their viable claims against New GM.

If the fourth <u>Chateaugay</u> factor is applicable, it militates against a finding of equitable mootness. The Participating Unitholders and GUC Trust Administrator are well aware of Plaintiffs' claims and their potential impact on the GUC Trust, and the GUC Trust Administrator and Participating Unitholders have actively participated in these proceedings. <u>See</u> <u>Equinox Oil v. Anthill Constr. Co. (In re Equinox Oil Co.)</u>, No. Civ. A. 00-3320, 2001 WL 649806, at *9-10 (E.D. La. June 11, 2001) (creditor's appeal was not moot where the parties most affected had been parties to the bankruptcy proceeding), <u>aff'd and remanded</u>, 300 F.3d 614 (5th Cir. 2002).

Despite the Participating Unitholders' and GUC Trust Administrator's assertion that neither Plaintiffs nor New GM have done anything to provide notice that Plaintiffs are seeking

recovery from the GUC Trust, see Br. ¶ 63, the Participating Unitholders and GUC Trust Administrator cannot deny their knowledge of Plaintiffs' claims.

Since the May 2, 2014 Status Conference, the Threshold Issues have included a determination of whether any or all of the claims asserted by the Plaintiffs are claims against Old GM and/or the GUC Trust, and if Plaintiffs' procedural due process rights were violated, whether a remedy can or should be fashioned as a result of such violation and, if so, against whom. In public reports, the GUC Trust Administrator has consistently acknowledged the risk of Plaintiffs' claims on the GUC Trust and GUC Trust Assets.[28]

Further, in advance of the November 12, 2014 GUC Trust Distribution, the Plaintiffs sent counsel for the GUC Trust (copied to counsel to the Participating Unitholders), the November 4, 2014 Letter advising that Plaintiffs are "known contingent beneficiaries of the GUC Trust." See November 4, 2014 Letter at 2.

There is no greater notice requirement on Plaintiffs, especially given that the scheduling orders for the Threshold Issues have consistently carved out from the slate of Threshold Issues whether Plaintiffs' claims are timely and/or meritorious against the Old GM bankruptcy estate and/or the GUC Trust.

Accordingly, the Participating Unitholders and GUC Trust Administrator have adequate notice of these proceedings and have actively participated on all fronts. To the extent the Court concludes that any of Plaintiffs' relief lies against Old GM and/or the GUC Trust, it is without

---

[28]  See Motors Liquidation Company GUC Trust, Current Report (Form 8-K), at 1-2 (May 19, 2014) ("**GUC Trust May 19, 2014 8-K**") (noting that the "[May 2014 Scheduling Order] provides that the threshold issues do not include whether any claims in the Class Actions are timely or meritorious as against the bankruptcy estate of Old GM or the GUC Trust (notwithstanding the Bar [Date] Order)" and that "no assurance may be given that personal injury, property damage and other claims relating to New GM's recalls involving GM vehicles manufactured or sold prior to the Closing Date and/or settlements previously reached with certain plaintiffs who asserted personal injury, property damage or other claims due to incidents or accidents that occurred prior to the Closing Date, will not adversely affect the GUC Trust, its assets or the Plan"); see also GUC Trust 2014 10K at 20-21 (noting same).

question that Unitholders and the GUC Trust Administrator will have notice and the ability to participate in subsequent proceedings relating to, *inter alia*, <u>Pioneer</u> factors and valuation of Plaintiffs' claims.

**E.    Plaintiffs' Diligence In Pursuing A Stay Is
Inapplicable And Under The Circumstances Plaintiffs Have Been Diligent.**

Similar to the second and fourth <u>Chateaugay</u> factors, the fifth factor is inapplicable, as the Plaintiffs were not provided constitutionally adequate notice with respect to, *inter alia*, the Sale Hearing, the Bar Date, and Confirmation Hearing, so that they could seek a stay of the related Orders, or they held "future claims" that could not be discharged by the Old GM bankruptcy.

"In such a circumstance, where a party has done nothing by its own inaction to encourage or permit developments to proceed without its participation, courts should be cautious about reaching a conclusion of equitable mootness.  To say that a party's claim, although diligently pursued, is equitably moot because of the passage of time, before the party had a chance to present [its claim] would alter the doctrine to be one of 'inequitable mootness.'"   <u>Thorpe Insulation Co.</u>, 677 F.3d 869 at 881.

Accordingly, it would be inequitable to find the fifth <u>Chateaugay</u> factor in favor of equitable mootness.  <u>See</u> <u>In re Thomson McKinnon Secs., Inc.</u>, 130 B.R. 717, 720 (Bankr. S.D.N.Y. 1991) ("[T]he debtor's estate should not reap the benefit of its failure to give [a creditor] actual notice of the bar date order.").

Indeed, the Participating Unitholders and GUC Trust Administrator acknowledge that Plaintiffs may be able to credibly argue that they could not have sought a stay.  <u>See</u> Br. ¶ 64.

However, the Participating Unitholders and GUC Trust Administrator argue that Plaintiffs have not taken sufficient steps to assert any claims against Old GM and/or the GUC Trust and to put GUC Trust Beneficiaries and contingent Beneficiaries on notice.  <u>See id.</u>  That is

patently false. As set forth above, it is without doubt that Plaintiffs have diligently pursued their claims, including, without limitation: (i) promptly filing law suits following the Ignition Switch Recall; (ii) immediately contesting New GM's Motions; (iii) actively participating in the Court conferences related to the Threshold Issues; and (iv) advising the GUC Trust that Plaintiffs were "known potential contingent beneficiaries of the GUC Trust." See November 4, 2014 Letter at 2.

The Threshold Issues are designed to establish whether any of Plaintiffs' claims or the appropriate remedy for the violation of Plaintiffs' due process rights lie against the Old GM bankruptcy estate and/or the GUC Trust. If the Court so finds, Plaintiffs will continue to diligently pursue all appropriate relief.

## CONCLUSION

Dismissal on grounds of equitable mootness should be rare, occurring only where there is sufficient justification to override the rights of the party seeking relief. The Participating Unitholders and GUC Trust Administrator fail to sufficiently support their contention that providing Plaintiffs relief from the Old GM bankruptcy estate and/or GUC Trust would collapse the Plan or undermine the reliance of third parties to their significant harm.

In the first instance, this is besides the issue, as the Court need not, and should not, decide the Equitable Mootness Threshold Issue. The only appropriate remedy for the total denial of the Plaintiffs' constitutional due process rights is to refuse to enforce the Sale Order against the Plaintiffs, and the Plaintiffs' claims against New GM for its own Post-Sale conduct are not encompassed by the Sale Order.

However, if the Court reaches the Equitable Mootness Threshold Issue, equitable mootness is inapplicable under a review of the applicable Chateaugay factors - all of which weigh against the application of equitable mootness to Plaintiffs' claims.

Dated:  New York, New York
       December 16, 2014

Respectfully submitted,

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner
David J. Molton
May Orenstein
Howard S. Steel
Rebecca L. Fordon (*pro hac vice* pending)
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
-and-
Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Ste. 2200
Dallas, Texas 75201

*Designated Counsel for Certain Plaintiffs,
Represented in the MDL Proceeding by Co-
Lead Counsel:*

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
-and-
555 Fifth Avenue, Suite 1700
New York, New York 10017

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
-and-
250 Hudson Street, 8th Floor
New York, New York 10013

Robert C. Hilliard
HILLIARD MUÑOZ GONZALES LLP
719 South Shoreline Boulevard, Suite 500
Corpus Christi, TX 78401