# **EXHIBIT 4**

**EXECUTION VERSION**

# AMENDED AND RESTATED MOTORS LIQUIDATION COMPANY GUC TRUST AGREEMENT

This AMENDED AND RESTATED MOTORS LIQUIDATION COMPANY GUC TRUST AGREEMENT, dated as of June 11, 2012 (as it may be amended from time to time, this "Trust Agreement"), by and among Wilmington Trust Company, as trust administrator and trustee (together with any successor appointed under the terms hereof, the "GUC Trust Administrator") of the Motors Liquidation Company GUC Trust (the "GUC Trust") for the benefit of the general unsecured creditors of the Debtors (as defined below), and FTI Consulting, Inc., as trust monitor (together with any successor appointed under the terms hereof, the "GUC Trust Monitor") of the GUC Trust, amends and restates in its entirety the Second Amended Trust Agreement (as defined below). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Debtors' Second Amended Joint Chapter 11 Plan of liquidation pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code") dated March 18, 2011, as confirmed (including all exhibits thereto, as the same may be further amended, modified, or supplemented from time to time, the "Plan").

W I T N E S S E T H:

WHEREAS, the GUC Trust Administrator and the GUC Trust Monitor are party to the Motors Liquidation Company GUC Trust Agreement, dated as of March 30, 2011, by and among Motors Liquidation Company ("MLC"), MLC of Harlem, Inc., MLCS, LLC, MLCS Distribution Corporation, Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. (collectively, the "Debtors"), as debtors and debtors-in-possession, Wilmington Trust Company, as GUC Trust Administrator, and FTI Consulting, Inc., as GUC Trust Monitor (the "Original Trust Agreement"); and

WHEREAS, the Original Trust Agreement was amended pursuant to that certain amendment dated as of July 8, 2011 by and between the Debtors, the GUC Trust Administrator and the GUC Trust Monitor (the "First Amendment," and the Original Trust Agreement as amended, the "First Amended Trust Agreement"), and such First Amendment was approved by the Bankruptcy Court (as defined below) on July 6, 2011; and

WHEREAS, each of the Debtors has, on or prior to December 15, 2011, ceased to operate and dissolved; and

WHEREAS, the First Amended Trust Agreement was amended pursuant to that certain second amendment, dated as of January 3, 2012 by and between the GUC Trust Administrator and the GUC Trust Monitor (the "Second Amendment," and the First Amended Trust Agreement as amended, the "Second Amended Trust Agreement"), and such Second Amendment, because it served to rectify a defective and inconsistent provision of the First Amended Trust Agreement did not require the approval of the Bankruptcy Court; and

101290520.3

NOW, THEREFORE, in accordance with Section 13.13(a) of the Second Amended Trust Agreement, the Second Amended Trust Agreement is hereby amended and restated as follows:

**Background**

A.  Beginning on June 1, 2009, the Debtors filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of Title 11 of the Bankruptcy Code (the "Chapter 11 Cases").

B.  On or about August 31, 2010, the Debtors filed their Plan and Disclosure Statement in the Bankruptcy Court. The Debtors filed an amended Plan and Disclosure Statement on December 7, 2010. The Debtors filed a second amended Plan on March 18, 2011.

C.  The Disclosure Statement was approved by the Bankruptcy Court on December 8, 2010.

D.  On or about March 29, 2011, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Plan.

E.  The Plan provides for the creation of the GUC Trust as a post-confirmation successor to MLC within the meaning of Section 1145(a) of the Bankruptcy Code, to hold and administer:

(i)  the common stock of General Motors Company ("New GM Common Stock") to be contributed to the GUC Trust under the Plan, including (x) any dividends declared thereon in the form of New GM Common Stock, whether prior to or on or after the Effective Date, (y) any additional shares of New GM Common Stock (the "Additional Shares") to be issued in respect of General Unsecured Claims pursuant to the MSPA, together with any dividends declared thereon in the form of New GM Common Stock, whether prior to or on or after the Effective Date, and (z) any capital stock or other property or assets into which such New GM Common Stock may be converted or for which it may be exchanged (including by way of recapitalization, merger, consolidation, reorganization or otherwise) (the "GUC Trust Common Stock Assets");

(ii)  the two series of warrants, each entitling the holder to acquire one share of New GM Common Stock, one series with an exercise price of $10.00 per share (subject to adjustment) and an expiration date of July 10, 2016 (the "New GM $10.00 Warrants") and the other with an exercise price of $18.33 per share (subject to adjustment) and an expiration date of July 10, 2019, (the "New GM $18.33 Warrants" and together with the New GM $10.00 Warrants, the "New GM Warrants" and, together with the New GM Common Stock, the "New GM Securities") to be contributed to the GUC Trust under the Plan, as such warrants may from time to time be modified or adjusted in accordance with their terms (the "GUC Trust Warrant Assets" and, together with the GUC Trust Common Stock Assets, the "GUC Trust Securities Assets");

(iii)  any dividends on the GUC Trust Common Stock Assets, whether in the form of Cash, securities or other property other than New GM Common Stock, declared prior to the Effective Date (the "Initial GUC Trust Dividend Assets") and any such dividends,

3

including New GM Common Stock, declared on or after the Effective Date (the "Subsequent GUC Trust Dividend Assets," and, together with the Initial GUC Trust Dividend Assets, "GUC Trust Dividend Assets");

(iv) Cash proceeds from the sale of fractional New GM Securities sold pursuant to Section 5.6 (the "Fractional Share Proceeds");

(v) any Cash proceeds from the sale of New GM Securities, from the sale of expiring New GM Warrants or otherwise, but excluding Fractional Share Proceeds and excluding Cash proceeds constituting Other GUC Trust Administrative Cash (the "GUC Trust Distributable Cash" and, collectively with the GUC Trust Dividend Assets and the GUC Trust Securities Assets, the "GUC Trust Distributable Assets");

(vi) Cash for purposes of funding the administrative expenses of the GUC Trust, contributed to the GUC Trust from MLC on or about the Effective Date in accordance with the terms of the Plan (the "Wind-Down Budget Cash"); and

(vii) other sources of Cash (other than the Residual Wind-Down assets) for the purposes of funding the administrative expenses of the GUC Trust, including (i) Cash obtained upon the sale or pledge, in whole or in part, of GUC Trust Distributable Assets reserved in the Additional Holdback, Reporting and Transfer Holdback and Protective Holdback and Taxes on Distribution Holdback pursuant to Sections 6.1(b), (c), (d), and (e), (ii) Cash received from the Debtors pursuant to Section 2.3(e) or (f) hereof, or (iii) Cash (other than GUC Trust Distributable Cash) otherwise obtained by the GUC Trust on or following the Effective Date (the "Other GUC Trust Administrative Cash" and together with the Wind-Down Budget Cash, the "GUC Trust Administrative Cash"),

(collectively, the "GUC Trust Assets") and distribute the GUC Trust Distributable Assets to the GUC Trust Beneficiaries (as hereafter defined), in accordance with the terms of the Plan, the Confirmation Order and this Trust Agreement.

F.    The GUC Trust is being created on behalf of, and for the benefit of, (i) the holders of General Unsecured Claims against the Debtors that are allowed as of the Initial Distribution Record Date (the "Initial Allowed General Unsecured Claims") and (ii) (a) the holders of General Unsecured Claims against the Debtors that are Disputed ("Disputed General Unsecured Claims") as of the Initial Distribution Record Date and that are allowed after the Initial Distribution Record Date in accordance with the claims resolution procedures administered under the Plan (to the extent so resolved); (b) the holders of the Term Loan Avoidance Action Claims, to the extent and in the amount collected by the Debtors or the Avoidance Action Trust against the respective defendants (including by way of settlement) in the underlying litigation; and (c) the holders of the Other Avoidance Action Claims, to the extent and in the amount collected against the respective defendants (including by way of settlement) in the underlying litigations (collectively, the "Resolved Allowed General Unsecured Claims" and, together with the Initial Allowed General Unsecured Claims, the "Allowed General Unsecured Claims").  The holders of Allowed General Unsecured Claims, and any holders of Units acquired, directly or indirectly, by transfer from holders of Allowed General Unsecured Claims, in their capacities as beneficiaries of the GUC Trust, are sometimes referred to as the "GUC Trust Beneficiaries."

4

101290520.3

G.  The GUC Trust Administrator shall have all powers necessary to implement the provisions of this Trust Agreement and administer the GUC Trust, including the power to: (i) prosecute for the benefit of the GUC Trust Beneficiaries, through counsel and other professionals selected by the GUC Trust Administrator, any causes of action that may from time to time be held by the GUC Trust, (ii) resolve Disputed General Unsecured Claims against the Debtors; (iii) preserve and maintain the GUC Trust Assets; (iv) distribute the GUC Trust Distributable Assets to the GUC Trust Beneficiaries in accordance with the Plan, the Confirmation Order and this Trust Agreement; (v) expend the GUC Trust Administrative Cash to cover fees and expenses of the GUC Trust; (vi) reserve and/or sell New GM Securities and convert the proceeds to Other GUC Trust Administrative Cash; and (vii) otherwise perform the functions and take the actions provided for in this Trust Agreement or permitted in the Plan and/or the Confirmation Order, or in any other agreement executed pursuant to the Plan, in each case subject to the provisions of Articles VI, VIII and XI hereof regarding the rights and powers of the GUC Trust Monitor and, to the extent so provided, the approval of the Bankruptcy Court.

H.  The GUC Trust is subject to the continuing jurisdiction of the Bankruptcy Court, whose approval is required to pay or distribute money or property to, or on behalf of, a GUC Trust Beneficiary, except as expressly provided in this Trust Agreement.

I.  The GUC Trust is intended to qualify as a "disputed ownership fund" under Treasury Regulations section 1.468B-9.

J.  The GUC Trust shall be responsible for administering the wind-down of the affairs of the Debtors.

K.  If the Residual Wind-Down Assets are transferred to the GUC Trust, the GUC Trust Administrator shall be responsible for administering and distributing any Residual Wind-Down Assets transferred to the GUC Trust pursuant to the Plan, in each case subject to Section 6.13 and 8.1(c) of this Trust Agreement.

## Agreement

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein the GUC Trust Administrator and the GUC Trust Monitor agree as follows:

## ARTICLE I
## DEFINED TERMS

1.1.  Definitions.  Whenever used in this Trust Agreement, unless the context otherwise requires, the following words and phrases shall have the respective meanings ascribed to them as follows:

(a)  "Additional Holdback" has the meaning set forth in Section 6.1(b).

(b)  "Additional Shares" has the meaning set forth in Background paragraph E(i).

5

words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities. All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Trust Agreement, and the words herein and words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section or subdivision of this Trust Agreement.  The term "including" shall mean "including, without limitation."

## ARTICLE II
## DECLARATION OF TRUST

2.1.     Creation of Trust.  The Debtors and the GUC Trust Administrator, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of chapter 11 of the Bankruptcy Code, hereby constitute and create the GUC Trust, in the form of a statutory trust under the Delaware Act, which shall bear the name "Motors Liquidation Company GUC Trust."  In connection with the exercise of the GUC Trust Administrator's power hereunder, the GUC Trust Administrator may use this name or such variation thereof as the GUC Trust Administrator sees fit.  The GUC Trust Administrator, as trustee of the GUC Trust, is hereby authorized and directed to execute and file a Certificate of Trust for the GUC Trust in the form attached hereto as Exhibit E.

2.2.     Purpose of GUC Trust.  The sole purpose of the GUC Trust is to implement the Plan on behalf, and for the benefit, of the GUC Trust Beneficiaries, to serve as a mechanism for distributing the GUC Trust Distributable Assets under the Plan and in accordance with Treasury Regulations section 1.468B-9, paying all expenses incident thereto (including with respect to the fees and expenses of the Trust Professionals and other professionals retained by the GUC Trust) and, following the dissolution of the Debtors, to wind-down the Debtors' affairs, with no objective to engage in the conduct of a trade or business.

2.3.     Transfer of GUC Trust Assets to the GUC Trust.

(a)     On the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors shall transfer, pursuant to Bankruptcy Code Sections 1123(a)(5)(B) and 1123(b)(3)(B), and in accordance with the Plan and the Confirmation Order, the GUC Trust Assets (other than the New GM Securities and the Indenture Trustee/Fiscal and Paying Agent Reserve Cash) to the GUC Trust, free and clear of any and all liens, claims, encumbrances of all other entities to the maximum extent contemplated by and permissible under Bankruptcy Code Section 1141(c), on behalf of holders of General Unsecured Claims; *provided*, *however* that notwithstanding anything to the contrary in the Plan, Disclosure Statement, Confirmation Order, this Trust Agreement or any other agreement, the DIP Lenders shall maintain their liens on the Wind-Down Budget Cash, *provided that* for the avoidance of doubt, the DIP Lenders shall not demand acceleration of their liens on the Wind-Down Budget Cash except in accordance with the provisions of section 7.2 of the DIP Credit Agreement.  After the Effective Date and from

15

2.4 of the Plan.  Notwithstanding the foregoing, a Trust Professional may receive payment for amounts in excess of the Budget from sources other than the Wind-Down Budget Cash in accordance with Section 6.1(d) of this Trust Agreement. For the avoidance of doubt, the Reporting and Transfer Costs shall not be set forth in the Budget and shall not be paid for with Wind-Down Budget Cash.

(f) The GUC Trust Administrator shall provide reports regarding the Residual Wind-Down Assets to the DIP Lenders as described in Section 6.2(e) of this Trust Agreement.  The GUC Trust Administrator, the GUC Trust Monitor or the DIP Lenders may petition the Bankruptcy Court to resolve any disputes concerning the use of the Residual Wind-Down Assets, as contemplated herein.

(g) Notwithstanding the foregoing, any remaining unspent Other GUC Trust Administrative Cash, other than Other GUC Trust Administrative Cash received by the GUC Trust pursuant to Section 7.7(d) hereof, shall not be distributed to the DIP Lenders, but rather shall be distributed to holders of Allowed General Unsecured Claims or holders of Units, as the case may be, pursuant to Article V.

2.7. Dissolution of the Debtors.  If any Residual Wind-Down Claims shall remain upon dissolution of the Debtors, which according to the Plan shall occur no later than December 15, 2011, then, on the GUC Trust Funding Date, the Debtors shall transfer to the GUC Trust (i) all remaining Residual Wind-Down Assets, free and clear of any and all liens, claims, encumbrances of all other entities to the maximum extent contemplated by and permissible under Bankruptcy Code Section 1141(c), and (ii) a complete list of all Residual Wind-Down-Claims, both Allowed and Disputed, reflected on the claims registry as of the date of transfer, including the names and addresses of all holders of such Residual Wind-Down Claims, whether such claims have been Allowed or are Disputed, and the details of all objections in respect of Disputed Residual Wind-Down Claims.  In such case, after such transfer, the GUC Trust Administrator shall have the exclusive right to object to any remaining Residual Wind-Down Claims, and shall administer the resolution of all Residual Wind-Down Claims, all in accordance with the terms of the Plan, the Confirmation Order and Section 8.1(c) of this Trust Agreement; *provided*, *however* that notwithstanding anything to the contrary in the Plan, Disclosure Statement, Confirmation Order, this Trust Agreement or any other agreement, the DIP Lenders shall maintain their liens on the Residual Wind-Down Assets, *provided that* for the avoidance of doubt, the DIP Lenders shall not demand acceleration of their liens on the Residual Wind-Down Assets except in accordance with the provisions of section 7.2 of the DIP Credit Agreement.

## ARTICLE III
## GUC TRUST BENEFICIARIES; UNITS

3.1. Rights of Beneficiaries.

(a) Except as otherwise provided in this Trust Agreement, the GUC Trust Beneficiaries shall be the sole beneficiaries of the GUC Trust Distributable Assets and of the GUC Trust; the GUC Trust Administrator shall retain only such incidents of

21

ownership as are necessary to undertake the actions and transactions authorized in the Plan, the Confirmation Order and this Trust Agreement, including those powers set forth in Articles VI and VIII hereof.

(b) The beneficial interest of a GUC Trust Beneficiary in the GUC Trust is hereby declared and shall be in all respects and for all purposes intangible personal property.

(c) Except as expressly provided herein, a GUC Trust Beneficiary shall have no title or right to, or possession, management or control of, the GUC Trust, or the GUC Trust Assets, or to any right to demand a partition or division of such assets or to require an accounting of the GUC Trust Administrator or the GUC Trust Monitor. The whole legal title to the GUC Trust Assets shall be vested in the GUC Trust as a separate legal entity under the Delaware Act or, if necessary, in the GUC Trust Administrator on behalf of the GUC Trust, and the sole beneficial interest of the GUC Trust Beneficiaries shall be as set forth in this Trust Agreement.

3.2. Limited Liability. No provision of the Plan, the Confirmation Order or this Trust Agreement, and no mere enumeration herein of the rights or privileges of any GUC Trust Beneficiary, shall give rise to any liability of such GUC Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, by creditors or employees of any Debtor, or by any other Person. GUC Trust Beneficiaries are deemed to receive the GUC Trust Distributable Assets in accordance with the provisions of the Plan, the Confirmation Order and this Trust Agreement in exchange for their Allowed General Unsecured Claims or on account of their Units, as applicable, without further obligation or liability of any kind, but subject to the provisions of this Trust Agreement.

3.3. Manner of Receipt of Distributions

(a) Except with respect to holders of Note Claims and Eurobond Claims, in order to receive a distribution from the GUC Trust of New GM Common Stock, New GM Warrants or Units, holders of Allowed General Unsecured Claims must designate a direct or indirect participant in DTC with whom such holder has an account and take such other ministerial actions (i) as specifically identified on Exhibit B hereto, and (ii) as the GUC Trust Administrator shall from time to time reasonably require by written communication to the holders of Allowed General Unsecured Claims. With respect to holders of Note Claims and Eurobond Claims, if the Units are freely negotiable and transferable pursuant to Section 3.6 of this Trust Agreement, the GUC Trust shall issue such Units to holders of Note Claims and Eurobond Claims through the applicable Indenture Trustees and Fiscal and Paying Agents, who will in turn distribute the Units to such holders in accordance with the procedures of DTC and its participants. If the Units are not freely negotiable and transferable pursuant to Section 3.6 of this Trust Agreement, the GUC Trust shall issue the Units, as entries on GUC Trust Administrator's books and records in accordance with Section 3.5(a) hereof, to the applicable Indenture Trustees and Fiscal and Paying Agents for the benefit of holders of Note Claims and Eurobond Claims. Any New GM Securities distributed to the applicable Indenture Trustees and Fiscal and Paying Agents on account of such Units shall in turn be distributed by such Indenture Trustees and Fiscal and Paying Agents to the holders of Note Claims and Eurobond Claims in accordance with the

22