# **EXHIBIT 14**

```
                                                              Page 1

 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3   - - - - - - - - - - - - - - - - - - - - - - - - - - - x
 4   In the Matter of:
 5                                         Chapter 11
 6   MOTORS LIQUIDATION COMPANY,           Case No.: 09-50026(REG)
 7   et al, f/k/a General Motors           (Jointly Administered)
 8   Corp., et al.,
 9
10           Debtors.
11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x
12   STEVEN GROMAN, ROBIN DELUCO,
13   ELIZABETH Y. GRUMET, ABC
14   FLOORING, INC., MARCUS
15   SULLIVAN, KATELYN SAXSON,             Adv. Pro. No.:
16   AMY C. CLINTON, AND ALLISON           14-01929(REG)
17   C. CLINTON, on behalf of
18   themselves, and all other
19   similarly situated,
20             Plaintiffs,
21         v.
22   GENERAL MOTORS LLC,
23             Defendant.
24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x
25
```

Page 2

1              U.S. Bankruptcy Court
2              One Boling Green
3              New York, New York
4
5              May 2, 2014
6              9:46 AM
7
8
9   B E F O R E :
10  HON ROBERT E. GERBER
11  U.S. BANKRUPTCY JUDGE
12
13
14  Hearing re:   Status Conference
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Dawn South and Sheila Orms

09-50026-mg Doc 13031-14 Filed 12/17/14 Entered 12/17/14 00:00:19 Exhibit 14 &lt;B&gt;(Corrupted PDF File)&lt;/B&gt; Pg 4 of 17

Page 3

```
 1  A P P E A R A N C E S :
 2  KING & SPALDING LLP
 3       Attorneys for General Motors LLC
 4       1185 Avenue of the Americas
 5       New York, NY 10036-4003
 6
 7  BY:  ARTHUR J. STEINBERG, ESQ.
 8       SCOTT DAVIDSON, ESQ.
 9
10  KIRKLAND & ELLIS
11       Attorney for New GM
12       300 North LaSalle
13       Chicago, IL 60654
14
15  BY:  RICHARD C. GODFREY, P.C., ESQ.
16
17  GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
18       Attorneys for the Plaintiffs
19       437 Madison Avenue
20       New York, NY 10022
21
22  BY:  JONATHAN FLAXER, ESQ.
23       S. PRESTON RICARDO, ESQ.
24
25
```

Page 4

1  GIBSON, DUNN & CRUTCHER LLP
2       Attorney for Motors Liquidation GUC Trust
3       200 Park Avenue
4       New York, NY 10166-0193
5
6  BY:   KEITH R. MARTORANA, ESQ.
7
8  ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.
9       Attorney for Ratzlaff, et al.
10      19 Corporate Plaza Drive
11      Newport Beach, CA 92660
12
13 BY:   MARK P. ROBINSON, JR., ESQ.
14
15 GOODWIN ROCTER LLP
16      Attorneys for the South Texas Plaintiffs
17      The New York Times Building
18      620 Eighth Avenue
19      New York, NY 10018
20
21 BY:   WILLIAM P. WEINTRAUB, ESQ.
22       EAMONN O'HAGAN, ESQ.
23
24
25

Page 5

1  BROWN RUDNICK LLP
2       Attorneys for Ratzlaff, et al.
3       Seven Times Square
4       New York, NY 10036
5
6  BY:  EDWARD WEISFELNER, ESQ.
7       DAVID J. MOLTON, ESQ.
8       HOWARD STEEL, ESQ.
9
10 AKIN GUMP STRAUSS HAUER & FELD LLP
11      Attorneys for Holders of Units in the GUC Trust
12      One Bryant Park
13      New York, NY 10036-6745
14
15 BY:  NAOMI MOSS, ESQ.
16      DANIEL GOLDEN, ESQ.
17
18 OTTERBOURG
19      230 Park Avenue
20      New York, NY 10169
21
22 BY:  DAVID M. POSNER, ESQ.
23
24
25

Page 6

1  LOWENSTEIN SANDLER LLP
2      Attorney for Plaintiffs Darby and Jones
3      65 Livingston Avenue
4      Roseland, NJ 07068
5
6  BY:  JOHN K. SHERWOOD, ESQ.
7
8  LOWENSTEIN SANDLER LLP
9      Attorney for Plaintiffs Darby and Jones
10     1251 Avenue of the Americas
11     New York, NY 10020
12
13 BY:  MICHAEL S. ETKIN, ESQ.
14
15 UNITED STATES DEPARTMENT OF JUSTICE
16     Attorney for the U.S. Trustee
17     U.S. Federal Office Building
18     201 Varick Street
19     Suite 1006
20     New York, NY 10014
21
22 BY:  BRIAN MASUMOTO, ESQ.
23
24
25

Page 7

1  CAPLIN & DRYSDALE, CHARTERED
2       One Thomas Circle, NW
3       Suite 1100
4       Washington, DC 20005
5
6  BY:   PETER VAN N. LOCKWOOD, ESQ.
7
8  CAPLIN & DRYSDALE, CHARTERED
9       600 Lexington Avenue
10      21st Floor
11      New York, NY 10022-7619
12
13 BY:   ELIHU INSELBUCH, ESQ.
14
15 STUZMAN, BROMBERG, ESSERMAN & PLIFKA
16      2323 Bryan Street
17      Suite 2200
18      Dallas, TX 75201-2689
19
20 BY:   SANDER L. ESSERMAN, ESQ.
21
22
23
24
25

Page 8

```
 1   KELLEY DRYE & WARREN LLP
 2        101 Park Avenue
 3        New York, NY 10178
 4
 5   BY:  BENJAMIN D. FEDER, ESQ.
 6
 7   PACHULSKI STANG ZIEHL & JONES
 8        Attorney for Plaintiffs
 9        780 Third Avenue
10        36th Floor
11        New York, NY 10017-2024
12
13   BY:  MARIA A. BOVE, ESQ.
14
15   BECNEL LAW FIRM, LLC
16        Attorney for Jomaka Coleman, et al.
17        425 West Airline Highway
18        Suite B
19        Laplace, LA 70068
20
21   BY:  DANIEL BECNEL, JR., ESQ. (TELEPHONIC)
22
23
24
25
```

09-50026-mg    Doc 13031-14    Filed 12/17/14    Entered 12/17/14 00:00:19    Exhibit 14
&lt;B&gt;(Corrupted PDF File)&lt;/B&gt;    Pg 10 of 17

Page 26

```
 1   the things like selection of lead counsel, the things that
 2   we can agree are purely administrative, and we should defer
 3   consideration of the amended complaint issue until the next
 4   status conference.
 5               THE COURT:  But matters of the character that the
 6   MDL could appropriately determine in your view could include
 7   whether the pretrial proceedings take place in say
 8   California on the one hand or New York on the other?
 9               MR. STEINBERG:  For the MDL I think the MDL should
10   be able to select which forum is going to go forward on
11   generally the MDL action to the extent that the MDL action
12   will ever go forward.
13               THE COURT:  Okay.  Continue, please.
14               MR. STEINBERG:  The -- Your Honor, with regard to
15   the -- your tentative ruling on the stipulated record and
16   that we don't do admissions, that is essentially what we
17   have been trying to urge on the plaintiffs.
18               One of the issues was that we had discussions
19   separately with one group versus another group and they had
20   differing views on certain issues.  And even with the group
21   that had a larger issue what we were getting to some extent
22   was the lowest common denominator.  When you have 15 people
23   having suggestions sometimes you get 15 suggestions because
24   no one really wants to whittle it down and they leave it up
25   to us to do it.
```

```
 1              We urge to do a stipulated record under the theory
 2     that it's too early to do admissions, it is a -- really just
 3     a cost shifting issue as Your Honor had identified, and it
 4     leads to a dialogue.  If they -- if they propose that they
 5     want us to agree to something instead of me answering as I
 6     would answer an admission I'd be sitting there saying I
 7     can't do that but I can do something different and then we
 8     would have an iterative dialogue to be able to try to
 9     present what the issues are and then I wouldn't have to try
10     to do the reflexive issue, which is that if you want
11     admissions then maybe I have admissions that I want to ask
12     of you.  Did you know of the bankruptcy proceeding?  Did you
13     know of a problem with your car?  Those things and try to
14     identify those issues, which may be relevant to certain of
15     the issues whether it's -- that they may tangentially relate
16     to the fraud on the Court issue, which may be off the table
17     now, but -- so I said stay with the stipulation and if we
18     can't agree to it we'll have a status conference in June and
19     we'll tell the judge this is as far as we could get and we
20     couldn't get all the way there, and if we couldn't agree on
21     everything then you could propose what kind of limited
22     discovery you think you need to conclude those facts that
23     are necessary to determine the purely legal issue.  We'll be
24     able to evaluate it.  And then if we can't agree with that
25     we'd be before Your Honor on something specific and
```

1  concrete.
2       And the problem that we were having between now
3  and May 2nd is that there was a lot of general propositions
4  that were asserted and many times the devil is in the
5  detail, and you need to know when someone says it's purely
6  administrative it's not substantive you really need to know
7  what they are talking about.  When people say we can agree
8  to some facts and it's not going to be big, it's going to be
9  narrowly tailored you need to know what someone means when
10 they say narrowly tailored, because when actually try to pin
11 it down it becomes a lot more difficult.
12      So what we were proposing -- and I think there was
13 a lot of receptivity on it from the other side -- was a walk
14 and then run, which is give us a chance to try to do an
15 exchange and we'll see how good we are, and give us a chance
16 if we can't fill in all the gaps to how to complete the
17 discovery and we'll see how good we are, and if we can't do
18 it then I know that you're going to bridge the gap for us
19 and then we'll both live with whatever Your Honor rules.
20 And we're only looking to defer that consideration where we
21 otherwise couldn't agree for like a six or seven-week
22 period.
23      And the reason why we think that time period going
24 a little longer versus shorter is better -- and I think Your
25 Honor eluded to that as one of your tentative rulings that

```
 1   sometimes things take a little longer and these serious
 2   issues -- is that until we know how they've organized -- and
 3   it's really their job to organize, but it's our burden to
 4   make sure that we're dealing with 2 groups of people,
 5   4 groups of people, or 20 groups of people, because it
 6   becomes harder to figure out briefing schedules, potential
 7   discovery, stipulation of facts if we don't know who the
 8   people are that we're dealing with you may need to have a
 9   little more time until they get better organized to be able
10   to do that.  That's why we actually suggest in our agenda
11   letter is just tell us if you formed a group.  That has the
12   salutary effect of at least we know who we're dealing with
13   and Your Honor will know whether they actually formed the
14   group, and those who decide they want to be outliers well
15   then they will have to stand up and tell Your Honor why they
16   need to be an outlier and the liaison groups couldn't
17   properly be formed.
18             But that's all we were trying to say on that
19   issue, which is give them an opportunity to get themselves
20   organized and let us know how successful you were, and where
21   you were not fully successful just let us know because we --
22   we on our side of the table procedurally have to deal if
23   they're not fully organized and then ultimately Your Honor
24   will have that same issue about how things are being
25   presented to Your Honor.
```

```
 1            With regard to -- so that's why we thought we
 2   needed a little more time.  And by the way, the dates that
 3   we selected in our letter were given to us by one of the
 4   plaintiff groups, and the other plaintiff group actually
 5   said, while they shortened our dates, they also said in
 6   their letter that they're flexible about the dates.  So I
 7   don't think ultimately at the end of the day we're going to
 8   disagree about dates, about when we're going to be here.
 9            I think the general proposition is that between
10   now and some time in mid to late June when we'll have
11   another status conference we're going to try to accomplish a
12   stipulated record for briefing the threshold issues and to
13   see whether there's any discovery that is it warranted or
14   not with regard to that stipulated record.
15            And I would suggest also, and this is off my
16   agenda letter, but picking off on the tentative ruling,
17   trying to identify during that period of time the other
18   issues which are not threshold issues, the other bankruptcy-
19   related issues that we'd ask Your Honor to consider, and
20   we'd be doing all of that presentation at the next status
21   conference.  And at that next status conference, to the
22   extent that the defendants are not fully organized, that we
23   would try to -- and it wouldn't be me, but it would be Your
24   Honor and the plaintiffs -- try to figure out how they can,
25   you know, get to the end to themselves more fully organized.
```

1                The tentative that you had about the GUC Trust,
2     late-filed claims, excusable neglect, we actually think that
3     this is an issue that should be dealt with.  It is not our
4     issue, but to the extent that they've raised or some of them
5     have raised a procedural due process issue relating to the
6     bar order, which was after the sale order had taken place
7     and they're saying that they don't have a remedy -- an
8     effective remedy against Old GM, well there is a GUC Trust,
9     there are a number of -- there's a number of values still
10    left in the GUC Trust.  Whether they actually are a
11    creditor, where they actually have excusable neglect I'm not
12    trying to prejudge it, but we were urging that they
13    shouldn't just assume that there was nothing there when
14    there is potentially something there and they should be able
15    to and should be almost in fact required to at least explore
16    that as an alternative to try to get a recovery, if they're
17    entitled to a recovery.  I wasn't trying to say that they
18    were or not.
19               As far as the suggestion of mediation, it is
20    always hard to say that you're against mediation.  The only
21    thing that I would say, Your Honor, is that New GM has hired
22    Ken Feinberg, who is a very well known person who tries to
23    figure out how to deal with circumstances and to how to
24    adjust situations on a non-legal base, but to try to
25    negotiate a resolution.

1              MR. MARTORANA:  Your Honor, I stand because you

2     had suggested at the outset of this hearing the possibility

3     that issues related to the GUC Trust and claims against the

4     GUC Trust might be better addressed as a threshold issue to

5     start.

6              Based upon what I'm hearing today, it sounds like

7     there's a consensus among the parties here at least, that

8     this is something that should not be addressed as a

9     threshold issue.

10             THE COURT:  Well, that depends on who you're

11    including within that consensus, Mr. Martorana.

12             MR. MARTORANA:  I meant just these parties over

13    here.  Don't -- you would like to have it addressed to the

14    threshold issue?

15             UNIDENTIFIED:  I'll address it later.

16             MR. MARTORANA:  Okay.  All right.  Then I guess

17    there is no consensus on that, but I will tell you that from

18    our perspective, we believe that it should not be addressed

19    as a threshold issue.

20             We do believe that first off it will require at

21    least some discovery, probably substantial discovery.  We

22    also believe, you know, particularly because as it relates

23    to issues of excusable neglect, which are fact sensitive.

24             We also believe that it's not dispositive of -- as

25    Mr. Weisfelner said the -- you know, the fundamental issue

09-50026-mg    Doc 13031-14    Filed 12/17/14    Entered 12/17/14 00:00:19    Exhibit 14
&lt;B&gt;(Corrupted PDF File)&lt;/B&gt;    Pg 17 of 17

Page 83

1   here which is whether or not claims can be asserted against
2   New GM.
3            Moving off it being a threshold issue, we also
4   don't believe that this is an issue frankly that needs to be
5   addressed at any point during this hearing -- during this
6   proceeding.
7            No claimants, none of the plaintiffs, no claimants
8   or potential claimants had raised this as a possibility. No
9   one has filed a motion to lift the bar date. The only
10  person that has raised it has been New GM, based upon, you
11  know, some statements of fact in some pleadings. But the
12  only person that has actually moved forward with it is New
13  GM, and frankly, you know, it's our view that this is
14  essentially a way to deflect liability away, and you know,
15  the attention away from New GM and put it on to a third
16  party.
17           To the extent that Your Honor is inclined to rule
18  against us and have it either be dealt with as a threshold
19  issue or as a -- I guess, a subsequent issue, we would
20  request to participate in any of the discovery that does
21  transpire. And then to the extent that there are any claims
22  against New GM to be resolved, we would also ask to
23  participate in any mediation.
24           THE COURT: Okay. Thank you.
25           MR. FLAXER: Thank you.