# **EXHIBIT 14**

Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4  In the Matter of:

5                                        Chapter 11

6  MOTORS LIQUIDATION COMPANY,           Case No.: 09-50026(REG)

7  et al, f/k/a General Motors           (Jointly Administered)

8  Corp., et al.,

9

10         Debtors.

11 - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12 STEVEN GROMAN, ROBIN DELUCO,

13 ELIZABETH Y. GRUMET, ABC

14 FLOORING, INC., MARCUS

15 SULLIVAN, KATELYN SAXSON,             Adv. Pro. No.:

16 AMY C. CLINTON, AND ALLISON           14-01929(REG)

17 C. CLINTON, on behalf of

18 themselves, and all other

19 similarly situated,

20            Plaintiffs,

21       v.

22 GENERAL MOTORS LLC,

23            Defendant.

24 - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

**Page 2**

1             U.S. Bankruptcy Court

2             One Boling Green

3             New York, New York

4

5             May 2, 2014

6             9:46 AM

7

8

9   B E F O R E :

10  HON ROBERT E. GERBER

11  U.S. BANKRUPTCY JUDGE

12

13

14  Hearing re:  Status Conference

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Dawn South and Sheila Orms

```
 1  A P P E A R A N C E S :
 2  KING & SPALDING LLP
 3      Attorneys for General Motors LLC
 4      1185 Avenue of the Americas
 5      New York, NY 10036-4003
 6
 7  BY:  ARTHUR J. STEINBERG, ESQ.
 8       SCOTT DAVIDSON, ESQ.
 9
10  KIRKLAND & ELLIS
11      Attorney for New GM
12      300 North LaSalle
13      Chicago, IL 60654
14
15  BY:  RICHARD C. GODFREY, P.C., ESQ.
16
17  GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
18      Attorneys for the Plaintiffs
19      437 Madison Avenue
20      New York, NY 10022
21
22  BY:  JONATHAN FLAXER, ESQ.
23       S. PRESTON RICARDO, ESQ.
24
25
```

```
 1  GIBSON, DUNN & CRUTCHER LLP
 2       Attorney for Motors Liquidation GUC Trust
 3       200 Park Avenue
 4       New York, NY 10166-0193
 5
 6  BY:  KEITH R. MARTORANA, ESQ.
 7
 8  ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.
 9       Attorney for Ratzlaff, et al.
10       19 Corporate Plaza Drive
11       Newport Beach, CA 92660
12
13  BY:  MARK P. ROBINSON, JR., ESQ.
14
15  GOODWIN ROCTER LLP
16       Attorneys for the South Texas Plaintiffs
17       The New York Times Building
18       620 Eighth Avenue
19       New York, NY 10018
20
21  BY:  WILLIAM P. WEINTRAUB, ESQ.
22       EAMONN O'HAGAN, ESQ.
23
24
25
```

Page 5

1  BROWN RUDNICK LLP
2       Attorneys for Ratzlaff, et al.
3       Seven Times Square
4       New York, NY 10036
5
6  BY:  EDWARD WEISFELNER, ESQ.
7       DAVID J. MOLTON, ESQ.
8       HOWARD STEEL, ESQ.
9
10 AKIN GUMP STRAUSS HAUER & FELD LLP
11      Attorneys for Holders of Units in the GUC Trust
12      One Bryant Park
13      New York, NY 10036-6745
14
15 BY:  NAOMI MOSS, ESQ.
16      DANIEL GOLDEN, ESQ.
17
18 OTTERBOURG
19      230 Park Avenue
20      New York, NY 10169
21
22 BY:  DAVID M. POSNER, ESQ.
23
24
25

Page 6

1  LOWENSTEIN SANDLER LLP
2       Attorney for Plaintiffs Darby and Jones
3       65 Livingston Avenue
4       Roseland, NJ 07068
5
6  BY:  JOHN K. SHERWOOD, ESQ.
7
8  LOWENSTEIN SANDLER LLP
9       Attorney for Plaintiffs Darby and Jones
10      1251 Avenue of the Americas
11      New York, NY 10020
12
13 BY:  MICHAEL S. ETKIN, ESQ.
14
15 UNITED STATES DEPARTMENT OF JUSTICE
16      Attorney for the U.S. Trustee
17      U.S. Federal Office Building
18      201 Varick Street
19      Suite 1006
20      New York, NY 10014
21
22 BY:  BRIAN MASUMOTO, ESQ.
23
24
25

```
 1  CAPLIN & DRYSDALE, CHARTERED
 2       One Thomas Circle, NW
 3       Suite 1100
 4       Washington, DC 20005
 5
 6  BY:  PETER VAN N. LOCKWOOD, ESQ.
 7
 8  CAPLIN & DRYSDALE, CHARTERED
 9       600 Lexington Avenue
10       21st Floor
11       New York, NY 10022-7619
12
13  BY:  ELIHU INSELBUCH, ESQ.
14
15  STUZMAN, BROMBERG, ESSERMAN & PLIFKA
16       2323 Bryan Street
17       Suite 2200
18       Dallas, TX 75201-2689
19
20  BY:  SANDER L. ESSERMAN, ESQ.
21
22
23
24
25
```

Page 8

```
 1   KELLEY DRYE & WARREN LLP
 2        101 Park Avenue
 3        New York, NY 10178
 4
 5   BY:  BENJAMIN D. FEDER, ESQ.
 6
 7   PACHULSKI STANG ZIEHL & JONES
 8        Attorney for Plaintiffs
 9        780 Third Avenue
10        36th Floor
11        New York, NY 10017-2024
12
13   BY:  MARIA A. BOVE, ESQ.
14
15   BECNEL LAW FIRM, LLC
16        Attorney for Jomaka Coleman, et al.
17        425 West Airline Highway
18        Suite B
19        Laplace, LA 70068
20
21   BY:  DANIEL BECNEL, JR., ESQ. (TELEPHONIC)
22
23
24
25
```

1   the things like selection of lead counsel, the things that
2   we can agree are purely administrative, and we should defer
3   consideration of the amended complaint issue until the next
4   status conference.
5              THE COURT:  But matters of the character that the
6   MDL could appropriately determine in your view could include
7   whether the pretrial proceedings take place in say
8   California on the one hand or New York on the other?
9              MR. STEINBERG:  For the MDL I think the MDL should
10  be able to select which forum is going to go forward on
11  generally the MDL action to the extent that the MDL action
12  will ever go forward.
13             THE COURT:  Okay.  Continue, please.
14             MR. STEINBERG:  The -- Your Honor, with regard to
15  the -- your tentative ruling on the stipulated record and
16  that we don't do admissions, that is essentially what we
17  have been trying to urge on the plaintiffs.
18             One of the issues was that we had discussions
19  separately with one group versus another group and they had
20  differing views on certain issues.  And even with the group
21  that had a larger issue what we were getting to some extent
22  was the lowest common denominator.  When you have 15 people
23  having suggestions sometimes you get 15 suggestions because
24  no one really wants to whittle it down and they leave it up
25  to us to do it.

1         We urge to do a stipulated record under the theory
2    that it's too early to do admissions, it is a -- really just
3    a cost shifting issue as Your Honor had identified, and it
4    leads to a dialogue.  If they -- if they propose that they
5    want us to agree to something instead of me answering as I
6    would answer an admission I'd be sitting there saying I
7    can't do that but I can do something different and then we
8    would have an iterative dialogue to be able to try to
9    present what the issues are and then I wouldn't have to try
10   to do the reflexive issue, which is that if you want
11   admissions then maybe I have admissions that I want to ask
12   of you.  Did you know of the bankruptcy proceeding?  Did you
13   know of a problem with your car?  Those things and try to
14   identify those issues, which may be relevant to certain of
15   the issues whether it's -- that they may tangentially relate
16   to the fraud on the Court issue, which may be off the table
17   now, but -- so I said stay with the stipulation and if we
18   can't agree to it we'll have a status conference in June and
19   we'll tell the judge this is as far as we could get and we
20   couldn't get all the way there, and if we couldn't agree on
21   everything then you could propose what kind of limited
22   discovery you think you need to conclude those facts that
23   are necessary to determine the purely legal issue.  We'll be
24   able to evaluate it.  And then if we can't agree with that
25   we'd be before Your Honor on something specific and

1  concrete.
2          And the problem that we were having between now
3  and May 2nd is that there was a lot of general propositions
4  that were asserted and many times the devil is in the
5  detail, and you need to know when someone says it's purely
6  administrative it's not substantive you really need to know
7  what they are talking about.  When people say we can agree
8  to some facts and it's not going to be big, it's going to be
9  narrowly tailored you need to know what someone means when
10 they say narrowly tailored, because when actually try to pin
11 it down it becomes a lot more difficult.
12         So what we were proposing -- and I think there was
13 a lot of receptivity on it from the other side -- was a walk
14 and then run, which is give us a chance to try to do an
15 exchange and we'll see how good we are, and give us a chance
16 if we can't fill in all the gaps to how to complete the
17 discovery and we'll see how good we are, and if we can't do
18 it then I know that you're going to bridge the gap for us
19 and then we'll both live with whatever Your Honor rules.
20 And we're only looking to defer that consideration where we
21 otherwise couldn't agree for like a six or seven-week
22 period.
23         And the reason why we think that time period going
24 a little longer versus shorter is better -- and I think Your
25 Honor eluded to that as one of your tentative rulings that

```
 1   sometimes things take a little longer and these serious
 2   issues -- is that until we know how they've organized -- and
 3   it's really their job to organize, but it's our burden to
 4   make sure that we're dealing with 2 groups of people,
 5   4 groups of people, or 20 groups of people, because it
 6   becomes harder to figure out briefing schedules, potential
 7   discovery, stipulation of facts if we don't know who the
 8   people are that we're dealing with you may need to have a
 9   little more time until they get better organized to be able
10   to do that.  That's why we actually suggest in our agenda
11   letter is just tell us if you formed a group.  That has the
12   salutary effect of at least we know who we're dealing with
13   and Your Honor will know whether they actually formed the
14   group, and those who decide they want to be outliers well
15   then they will have to stand up and tell Your Honor why they
16   need to be an outlier and the liaison groups couldn't
17   properly be formed.
18             But that's all we were trying to say on that
19   issue, which is give them an opportunity to get themselves
20   organized and let us know how successful you were, and where
21   you were not fully successful just let us know because we --
22   we on our side of the table procedurally have to deal if
23   they're not fully organized and then ultimately Your Honor
24   will have that same issue about how things are being
25   presented to Your Honor.
```

1              With regard to -- so that's why we thought we
2    needed a little more time.  And by the way, the dates that
3    we selected in our letter were given to us by one of the
4    plaintiff groups, and the other plaintiff group actually
5    said, while they shortened our dates, they also said in
6    their letter that they're flexible about the dates.  So I
7    don't think ultimately at the end of the day we're going to
8    disagree about dates, about when we're going to be here.
9              I think the general proposition is that between
10   now and some time in mid to late June when we'll have
11   another status conference we're going to try to accomplish a
12   stipulated record for briefing the threshold issues and to
13   see whether there's any discovery that is it warranted or
14   not with regard to that stipulated record.
15             And I would suggest also, and this is off my
16   agenda letter, but picking off on the tentative ruling,
17   trying to identify during that period of time the other
18   issues which are not threshold issues, the other bankruptcy-
19   related issues that we'd ask Your Honor to consider, and
20   we'd be doing all of that presentation at the next status
21   conference.  And at that next status conference, to the
22   extent that the defendants are not fully organized, that we
23   would try to -- and it wouldn't be me, but it would be Your
24   Honor and the plaintiffs -- try to figure out how they can,
25   you know, get to the end to themselves more fully organized.

```
 1            The tentative that you had about the GUC Trust,
 2   late-filed claims, excusable neglect, we actually think that
 3   this is an issue that should be dealt with.  It is not our
 4   issue, but to the extent that they've raised or some of them
 5   have raised a procedural due process issue relating to the
 6   bar order, which was after the sale order had taken place
 7   and they're saying that they don't have a remedy -- an
 8   effective remedy against Old GM, well there is a GUC Trust,
 9   there are a number of -- there's a number of values still
10   left in the GUC Trust.  Whether they actually are a
11   creditor, where they actually have excusable neglect I'm not
12   trying to prejudge it, but we were urging that they
13   shouldn't just assume that there was nothing there when
14   there is potentially something there and they should be able
15   to and should be almost in fact required to at least explore
16   that as an alternative to try to get a recovery, if they're
17   entitled to a recovery.  I wasn't trying to say that they
18   were or not.
19            As far as the suggestion of mediation, it is
20   always hard to say that you're against mediation.  The only
21   thing that I would say, Your Honor, is that New GM has hired
22   Ken Feinberg, who is a very well known person who tries to
23   figure out how to deal with circumstances and to how to
24   adjust situations on a non-legal base, but to try to
25   negotiate a resolution.
```

1           MR. MARTORANA:  Your Honor, I stand because you
2  had suggested at the outset of this hearing the possibility
3  that issues related to the GUC Trust and claims against the
4  GUC Trust might be better addressed as a threshold issue to
5  start.
6           Based upon what I'm hearing today, it sounds like
7  there's a consensus among the parties here at least, that
8  this is something that should not be addressed as a
9  threshold issue.
10          THE COURT:  Well, that depends on who you're
11 including within that consensus, Mr. Martorana.
12          MR. MARTORANA:  I meant just these parties over
13 here.  Don't -- you would like to have it addressed to the
14 threshold issue?
15          UNIDENTIFIED:  I'll address it later.
16          MR. MARTORANA:  Okay.  All right.  Then I guess
17 there is no consensus on that, but I will tell you that from
18 our perspective, we believe that it should not be addressed
19 as a threshold issue.
20          We do believe that first off it will require at
21 least some discovery, probably substantial discovery.  We
22 also believe, you know, particularly because as it relates
23 to issues of excusable neglect, which are fact sensitive.
24          We also believe that it's not dispositive of -- as
25 Mr. Weisfelner said the -- you know, the fundamental issue

1  here which is whether or not claims can be asserted against
2  New GM.
3       Moving off it being a threshold issue, we also
4  don't believe that this is an issue frankly that needs to be
5  addressed at any point during this hearing -- during this
6  proceeding.
7       No claimants, none of the plaintiffs, no claimants
8  or potential claimants had raised this as a possibility.  No
9  one has filed a motion to lift the bar date.  The only
10 person that has raised it has been New GM, based upon, you
11 know, some statements of fact in some pleadings.  But the
12 only person that has actually moved forward with it is New
13 GM, and frankly, you know, it's our view that this is
14 essentially a way to deflect liability away, and you know,
15 the attention away from New GM and put it on to a third
16 party.
17      To the extent that Your Honor is inclined to rule
18 against us and have it either be dealt with as a threshold
19 issue or as a -- I guess, a subsequent issue, we would
20 request to participate in any of the discovery that does
21 transpire.  And then to the extent that there are any claims
22 against New GM to be resolved, we would also ask to
23 participate in any mediation.
24      THE COURT:  Okay.  Thank you.
25      MR. FLAXER:  Thank you.