KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------x

**CONSOLIDATED OBJECTION BY GENERAL MOTORS LLC TO THE
*SESAY* PLAINTIFFS' AND *ELLIOT* PLAINTIFFS' MOTIONS FOR LEAVE
TO APPEAL PRELIMINARY STAY ORDERS OF THE BANKRUPTCY COURT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ............................................................................................................6

   A. The E/S Plaintiffs' Individual Ignition Switch Actions ...................................6

   B. The Motion To Enforce And Procedures
      Established By The Bankruptcy Court............................................................7

   C. E/S Plaintiffs' No Stay Pleadings And
      The Bankruptcy Court's Denial Of Same .....................................................8

   D. The MDL And The Consolidated Complaints ............................................11

CONSOLIDATED OBJECTION ....................................................................................12

   A. There Is Not Substantial Ground For A Difference Of Opinion..................14

   B. An Immediate Appeal Will Not Materially Advance The Litigation...........17

   C. The Bankruptcy Court's Decisions
      Do Not Involve A Controlling Question of Law............................................19

CONCLUSION ...........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
    428 B.R. 43 (S.D.N.Y. 2010) ................................................................. 16

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995) ........................................................................... 15

*Douglas v Stamco*,
    363 Fed. App'x 100 (2d Cir. 2010) ................................................. 15, 16

*Ellsworth v. Myers (In re Cross Media Mktg. Corp.)*,
    No. 03-13901(BRL), 2007 WL 2743577 (S.D.N.Y. Sept. 19, 2007) ....................... 14

*Enron Corp. v. Avenue Special Situations Fund II, L.P. (In re Enron Corp.)*,
    Adv. 05-010, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ................................ 12, 13

*In re Adelphia Comm'ns Corp.*,
    333 B.R. 649 (S.D.N.Y. 2005) .............................................................. 19

*In re Chateaugay Corp.*,
    213 B.R. 633 (S.D.N.Y. 1997) .............................................................. 17

*In re Futter Lumber Corp.*,
    473 B.R. 20 (E.D.N.Y. 2012) ............................................................... 13

*In re Oxford Health Plans, Inc.*,
    182 F.R.D. 51 (S.D.N.Y. 1998) ............................................................ 17

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02 CIV. 3288, 2003 WL 22953644 (S.D.N.Y. Dec. 16, 2003) ......................... 13

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996) ............................................................... 13

*Liebert v. Levine (In re Levine)*,
    No. 94-44257, 2004 WL 764709 (S.D.N.Y. Apr. 9, 2004) ................................ 13

*N. Fork Bank v. Abelson*,
    207 B.R. 382 (E.D.N.Y. 1997) .......................................................... 13, 14, 17

*Travelers Indemn. Co. v. Bailey*,
    557 U.S. 137 (2009) ........................................................................... 15

**Statutes**                                                                                          **Page(s)**

28 U.S.C. § 1292 ........................................................................................................ 12, 13, 17, 19

Fed. R. Bankr. P. 8003 ........................................................................................................ 18

General Motors LLC (f/k/a General Motors Company) ("**New GM**"), by and through its undersigned counsel, hereby submits this consolidated objection ("**Objection**") to (i) the *Elliott Plaintiffs' Motions For Leave To Appeal Injunctive Order Of The Bankruptcy Court*, dated November 24, 2014 [Dkt. No. 13005] ("**Elliott Motion**"), with respect to the Ignition Switch Action[1] ("**Ignition Switch Actions**") filed by Laurence and Celestine Elliott, and Berenice Summerville (collectively, the "**Elliott Plaintiffs**") and (ii) the *Sesay Plaintiffs' Motions For Leave To Appeal Injunctive Order Of The Bankruptcy Court*, dated November 24, 2014 [Dkt. No. 13007] ("**Sesay Motion**," and together with the Elliott Motion, collectively, the "**Motions**"), with respect to the Ignition Switch Action filed by Ishmail Sesay and Joanne Yearwood (collectively, the "**Sesay Plaintiffs**," and together with the Elliott Plaintiffs, the "**E/S Plaintiffs**").[2]  In support of this Objection, New GM respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      In order for the E/S Plaintiffs to be granted leave to appeal the E/S Orders, they must establish each of the following factors: (i) the issues sought to be appealed involve a controlling question of law, (ii) there is substantial ground for difference of opinion regarding such issues, and (iii) an appeal now will materially advance the ultimate termination of the litigation (collectively, the "**Leave to Appeal Test**").  As demonstrated below, the E/S Plaintiffs

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("**Motion to Enforce**"), dated April 21, 2014 [Dkt. No. 12620].

[2]     The Orders sought to be appealed by the E/S Plaintiffs are: (i) the *Order Denying The Relief Requested In Plaintiffs Lawrence And Celestine Elliott's No Stay Pleading Pursuant To The Court's Scheduling Orders And Motion For Order Of Dismissal For Lack Of Subject Matter Jurisdiction Pursuant To Bankr. R. 7012(b) And For Related Relief*, dated August 12, 2014 [Dkt. No. 12834] ("**Elliott Order**"), and (ii) the *Order Denying The Relief Requested In Plaintiffs' Amended No Stay Pleading, Motion For Order Of Dismissal For Lack Of Subject Matter And Personal Jurisdiction, Objections To GM's Motion To Enforce, Objections To The Court's Orders, And For Related Relief*, dated November 12, 2014 [Dkt. No. 12995] ("**Sesay Order**," and with the Elliott Order, the "**E/S Orders**").

cannot satisfy their burden of establishing the three elements of the Leave to Appeal Test, and, consequently, the Motions must be denied.

2.      Strikingly absent from the Motions is any mention of Multi-District Litigation ("**MDL**") 2543 (*In re General Motors LLC Ignition Switch Litigation*) pending in the United States District Court for the Southern District of New York ("**District Court**").   The E/S Plaintiffs' individual Ignition Switch Actions are part of the MDL.   In October 2014, at the direction of the MDL Court, Lead Counsel filed two consolidated complaints ("**Consolidated Complaints**") that were intended to subsume the claims that plaintiffs (including the E/S Plaintiffs) could fairly assert in the Ignition Switch Actions.   Lead Counsel was selected to act on behalf of all plaintiffs in the Ignition Switch Actions, including the E/S Plaintiffs.   Because the Consolidated Complaints filed by Lead Counsel are presently the operative pleadings for all plaintiffs, there is no reason to separately address the E/S Plaintiffs' Ignition Switch Actions or their individual contentions, through the context of the Motions.

3.      The District Court has procedures in place to address any concerns that plaintiffs have regarding the actions of Lead Counsel in respect of the Ignition Switch Actions.   The Bankruptcy Court similarly has procedures in place to address any concerns that plaintiffs have with Designated Counsel[3] in respect of the Motion to Enforce.   That is the appropriate context to address the subject matter jurisdiction issue raised by the E/S Plaintiffs in the Motions.   Anything different would undermine the role of Lead Counsel and Designated Counsel, and the streamlined and efficient case management procedures already in place in the District Court and the Bankruptcy Court.

---

[3]   Designated Counsel were selected by the Bankruptcy Court to litigate the Motion to Enforce on behalf of plaintiffs that are subject to the Motion to Enforce.   Designated Counsel coordinate their actions in the Bankruptcy Court with Lead Counsel.

2

4.      As a practical matter, Designated Counsel have entered into Stay Stipulations (as herein defined) in the Bankruptcy Court with respect to their Ignition Switch Actions so that the Motion to Enforce can be addressed by the Bankruptcy Court.  They have also agreed that the Bankruptcy Court will decide, in the first instance, the Four Threshold Issues (as herein defined).  Designated Counsel filed their brief in the Bankruptcy Court with respect to the Four Threshold Issues on December 16, 2014.   These actions plainly demonstrate Designated Counsel's acknowledgment that the Bankruptcy Court has subject matter jurisdiction to decide the Motion to Enforce.

5.      Also, as a practical matter, the District Court already has recognized that the Bankruptcy Court has subject matter jurisdiction to interpret the Sale Order and Injunction.  At the August 11, 2014 hearing in the MDL, Judge Furman stated:

> I am also going to be sensitive about stepping on the toes of Judge Gerber and the bankruptcy proceeding and ensuring an orderly process of the litigation of any issues before the Bankruptcy Court, mindful of the bankruptcy court's exclusive jurisdiction.[4]

Later at that same hearing, Judge Furman stated as follows:

> Judge Gerber is in a better position to interpret his prior orders and figure out what is and isn't subject to those orders and that it will just cause undue complications to withdraw the reference as to some subset of claims or proceedings.[5]

6.      More recently, on December 12, 2014, Judge Furman decided whether motion practice with regard to the Post-Sale Consolidated Complaint should go forward in the MDL

---

[4]   August 11, 2014 MDL Hr'g Tr. at 6:20-24.   Relevant excerpts from the August 11, 2014 MDL Hearing Transcript are annexed hereto as Exhibit "A."

[5]   *Id.* at 22:20-23.

before the Bankruptcy Court rules on the Motions to Enforce.  In Order No. 28 in the MDL,[6]

Judge Furman held that (with the limited exception of choice-of-law briefing):

> Upon review of the parties' briefs . . ., the Court concludes, with one possible exception, that all such briefing should be deferred until after Judge Gerber's decisions, substantially for the reasons provided by New GM in its memoranda of law. Plaintiffs may ultimately be proved right that the Sale Order "does not enjoin any of the claims in the Post-Sale Complaint" [citation omitted], but the Bankruptcy Court is tasked with deciding that question in the first instance—and Judge Gerber is in the process of doing just that with all deliberate speed.[7]

7.      In addition, the parties discussed the effect of the Consolidated Complaints at the MDL status conference held before the District Court on December 15, 2014.  The District Court ordered that the parties jointly submit a proposed order, pursuant to which each of the individual complaints alleging economic loss claims–including the individual Ignition Switch Actions brought by the E/S Plaintiffs–would be dismissed without prejudice, in favor of the Consolidated Complaints.  Although the joint order will provide for a mechanism by which individual litigants can object to the dismissal of their claims, it is anticipated that the end result of the process will be that all economic loss claims are incorporated in, and subsumed by, the Consolidated Complaints.

8.      In addition, while couched as a "subject matter jurisdiction" issue, the Motions essentially seek to litigate whether the E/S Plaintiffs' claims are appropriately asserted against New GM, or are barred by the Sale Order and Injunction.  The Motions assume the conclusion that the Sale Order and Injunction does not bar their claims and, based on that invalid foundation, the E/S Plaintiffs incorrectly assert that the Bankruptcy Court has no subject matter jurisdiction over them.  Significantly, however, the issue as to whether causes of action in the Consolidated

---

[6]    A copy of Order No. 28 entered in the MDL is annexed hereto as Exhibit "B."

[7]    The one exception noted in Order No. 28 was whether the District Court "should order briefing now on choice-of-law issues relating solely to claims brought by the nine sets of plaintiffs from seven states" where the vehicles at issue were manufactured by New GM (and not Old GM).

Complaints are barred by the Sale Order and Injunction was expressly made one of the "Four Threshold Issues"[8] by the Bankruptcy Court (*i.e.*, the Old GM Claim Threshold Issue). Resolution of the Old GM Claim Threshold Issue impacts all plaintiffs that have filed Ignition Switch Actions, not just the E/S Plaintiffs. In essence, the Motions improperly isolate the Old GM Claim Threshold Issue for separate resolution when that precise issue is currently being litigated by Designated Counsel in the Bankruptcy Court for all plaintiffs.

9.      The Bankruptcy Court did not permanently enjoin the E/S Plaintiffs from proceeding in their Ignition Switch Actions. Rather, the Bankruptcy Court determined that the Sale Order and Injunction *prima facie* applied to their claims and temporarily stayed these claims while giving the E/S Plaintiffs (and more than 100 other groups of plaintiffs), through the Designated Counsel, an opportunity to address the Four Threshold Issues. Thus, the Bankruptcy Court's procedural orders (the E/S Orders) are not final and are not decisions with respect to "a controlling question of law." As such, the first necessary prong for the Leave to Appeal Test is not met.

10.      The E/S Plaintiffs also fail the second necessary prong of the Leave to Appeal Test. There is no "substantial ground for difference of opinion" with respect to the Bankruptcy Court ruling that it has subject matter jurisdiction to interpret its prior Sale Order and Injunction. The Bankruptcy Court properly ruled in its Decisions[9] that the "no subject matter jurisdiction" argument advanced by the E/S Plaintiffs was contrary to overwhelming binding precedent from

---

[8]   The term "**Four Threshold Issues**" is defined in the Bankruptcy Court's July 11, 2014 Supplemental Scheduling Order ("**Supplemental Scheduling Order**"), as further supplemented by the Bankruptcy Court's Endorsed Order, dated August 22, 2014 ("**August 22 Order**").

[9]   The term "**Decisions**" refers to the: (i) *Decision with Respect to No Stay Pleading and Related Motion to Dismiss for Lack of Subject Matter Jurisdiction (Elliott Plaintiffs)*, dated August 6, 2014 [Dkt. No. 12815] ("**Elliot Decision**"), and (ii) *Decision with Respect to No Stay Pleading, and Related Motion for Abstention (Sesay Plaintiffs)*, dated November 10, 2014 [Dkt. No. 12989] ("**Sesay Decision**").

the United States Supreme Court, Second Circuit, the District Courts, and the Bankruptcy Courts. In a nutshell, the E/S Plaintiffs improperly framed the jurisdictional issue as one involving "related to" bankruptcy jurisdiction. The actual basis, according to the well-recognized case law, is "arising in" bankruptcy jurisdiction.

11.    And, the E/S Plaintiffs also fail the third prong of the Leave to Appeal Test. It is the resolution of the Motion to Enforce by the Bankruptcy Court, not these potential appeals of a short-term stay, that will materially advance the Ignition Switch Actions.

12.    Accordingly, the Motions fail to satisfy the Leave to Appeal Test, and they should be denied in their entirety.

## BACKGROUND

### A.    The E/S Plaintiffs' Individual Ignition Switch Actions

13.    The Elliott Plaintiffs, *pro se*, commenced their Ignition Switch Action against New GM on April 1, 2014. The Elliott Plaintiffs own a 2006 Chevrolet Cobalt purchased in 2006 from Old GM; Ms. Summerville owns a 2010 Chevrolet Cobalt purchased in December 2009. The 2010 Chevrolet Cobalt was recalled by New GM because there was a remote possibility that, after the vehicle was sold, a third party unrelated to New GM, during a repair of the vehicle, inserted a flawed ignition switch sold by Old GM. After retaining counsel, the Elliott Plaintiffs filed an amended complaint (which added Ms. Summerville as a named-plaintiff). The Sesay Plaintiffs commenced their Ignition Switch Action against New GM on August 1, 2014, and thereafter filed an amended complaint asserting the same or substantially similar causes of action as those asserted by the Elliott Plaintiffs. Mr. Sesay owns a 2007 Chevrolet Impala purchased used from a third party in December 2010; Ms. Yearwood owns a 2010 Chevrolet Cobalt purchased in April 2010.

14.     The complaints filed by the E/S Plaintiffs attempt to allege claims solely against New GM, and not Old GM, although both complaints concern vehicles and/or parts manufactured by Old GM and various allegations regarding Old GM's conduct.  The Ignition Switch Actions filed by the E/S Plaintiffs are similar to many other Ignition Switch Actions commenced against New GM that are the subject of the Motion to Enforce.

**B.      The Motion To Enforce And Procedures Established By The Bankruptcy Court**

15.     On April 21, 2014, New GM filed its Motion to Enforce, seeking to enforce the injunction provisions contained in the Sale Order and Injunction, against plaintiffs who had commenced lawsuits against New GM, asserting Retained Liabilities of Old GM.  The Elliott Ignition Switch Action was designated as being subject to the Motion to Enforce.  On April 22, 2014, the Bankruptcy Court issued an order scheduling a conference on the Motion to Enforce for May 2, 2014 ("**May Conference**").

16.     At the May Conference, various bankruptcy-related issues were discussed, and there was a general consensus reached between New GM and counsel speaking on behalf of nearly all of the plaintiffs that, as part of the process in which the Court would address bankruptcy-related issues, plaintiffs would either (i) enter into a stipulation ("**Stay Stipulation**") with New GM staying their individual Ignition Switch Actions, or (ii) file with the Bankruptcy Court a "No Stay Pleading" setting forth why they believed their individual Ignition Switch Actions should not be stayed (collectively, the "**Initial Stay Procedures**").

17.     The Initial Stay Procedures were set forth and approved in a Scheduling Order entered by the Bankruptcy Court on May 16, 2014 ("**May Scheduling Order**").    The overwhelming number of plaintiffs agreed to enter into Stay Stipulations with New GM.

18.     Thereafter, the Bankruptcy Court held another conference on July 2, 2014 ("**July Conference**") wherein it held that, in the context of deciding the Motion to Enforce, the Four

7

Threshold Issues should be addressed first. At least one of the Four Threshold Issues identified by the Bankruptcy Court at the July Conference is implicated by the Motions; that being the Old GM Claim Threshold Issue. A briefing schedule respecting the Four Threshold Issues was established in the Supplemental Scheduling Order, as amended by the August 22 Order. Reply briefs on the Four Threshold Issues are due to be filed with the Bankruptcy Court on January 16, 2015, and oral argument will be held shortly thereafter.

19.    Neither the May Scheduling Order, the Supplemental Scheduling Order nor the August 22 Order were appealed by the E/S Plaintiffs (or any other plaintiff).

20.    Because new Ignition Switch Actions were being filed against New GM almost on a daily basis, New GM needed to implement stay procedures to address those new Actions. Accordingly, on June 13, 2014, New GM filed with the Bankruptcy Court a motion to establish stay procedures for newly-filed Ignition Switch Actions [Dkt. No. 12725] ("**Tag-Along Motion**"). The relief requested in the Tag-Along Motion was granted by Order dated July 8, 2014 [Dkt. No. 12764] ("**Stay Procedures Order**"), which required, *inter alia*, plaintiffs in newly filed Ignition Switch Actions to either enter into a Stay Stipulation or file a "No Stay Pleading" with the Bankruptcy Court.

21.    As the Sesay Ignition Switch Action was filed after entry of the Stay Procedures Order, New GM designated that Action as being subject to the Motion to Enforce on a supplemental schedule filed with the Bankruptcy Court.

C.    **E/S Plaintiffs' No Stay Pleadings And The Bankruptcy Court's Denial Of Same**

22.    Both the Elliott Plaintiffs and the Sesay Plaintiffs filed No Stay Pleadings with the Bankruptcy Court, essentially making the same arguments. They both asserted that the Bankruptcy Court lacked "related to" jurisdiction to enjoin their individual Ignition Switch Actions against New GM because, according to their pleadings, they were asserting claims only

against New GM and not Old GM. New GM responded, arguing, among other things, that (i) the E/S Plaintiffs' claims were like the other plaintiffs' claims in other Ignition Switch Actions, (ii) certain of the vehicles at issue were manufactured by Old GM, and (iii) the E/S Plaintiffs' claims were based, in part, on Old GM's conduct. As such, at least some of their claims were Retained Liabilities and subject to the Motion to Enforce. New GM asserted that the E/S Plaintiffs were not uniquely situated and should be on the same schedule as the other plaintiffs in the more than 100 other Ignition Switch Actions that were subject to the Motion to Enforce.

23.     The Bankruptcy Court agreed with New GM, and denied the relief requested in the E/S Plaintiffs' No Stay Pleadings in two separate Decisions. Both Decisions are similar. In the Elliott Decision, the Bankruptcy Court aptly summarized its ruling as follows:

> Once again, a plaintiff group wishing to proceed ahead of all of the others (only one week after I issued the written opinion memorializing my earlier oral ruling proscribing such an effort) has asked for leave to go it alone. Its request is denied. With a single exception, the issues raised by this group (the "Elliott Plaintiffs") don't differ from those addressed in Phaneuf. And as to that single exception— their claim that I don't have subject matter jurisdiction to construe and enforce the Sale Order in this case— their contention is frivolous . . . .

Elliott Decision, at 2 (footnotes omitted). With respect to the Elliott Plaintiffs' argument regarding "related to" jurisdiction, the Court found that:

> "Related to" jurisdiction has nothing to do with the issues here. Bankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' "arising in" jurisdiction. The nearly a dozen cases cited above expressly so hold.

*Id.* at 4 (footnote omitted). The Court further found that the Elliott Plaintiffs' "argument conflates the conclusion I might reach after analysis of matters before me—that certain claims ultimately might not be covered by the Sale Order—with my jurisdiction to decide whether or not they are." *Id.* at 7. The Court, thus, denied the Elliott Plaintiffs' motion to dismiss.

9

24.     With respect to the Elliott "no stay" request, the Bankruptcy Court denied that as well, relying on a previous decision concerning a No Stay Pleading filed by another group of plaintiffs (*i.e.*, the Phaneuf Plaintiffs):[10]

> As in *Phaneuf*, I find that the Elliott Plaintiffs are asserting claims with respect to vehicles that were manufactured before the 363 Sale, and, although to a lesser extent than in *Phaneuf*, relying on the conduct of Old GM. Thus I find as a fact, or mixed question of fact and law, that the threshold applicability of the Sale Order—and its injunctive provisions—has been established in the first instance.

> And once again, even if the Sale Order did not apply in the first instance, a preliminary injunction would also be appropriate here, for the reasons discussed at length in *Phaneuf*, which I will not repeat at comparable length here—other than to say that the prejudice to all of the other litigants, and to the case management concerns I had with respect to the Phaneuf Plaintiffs, is just as much a matter of concern here.

> As in *Phaneuf*, I will not allow the Elliott Plaintiffs to go it alone. The Elliott Plaintiffs' claims can be satisfactorily addressed—and will have to be addressed—as part of the coordinated proceedings otherwise pending before me.

Elliott Decision, at 9.

25.     The Sesay Decision is similar to the Elliott Decision:

> Once again, the Sesay Plaintiffs' counsel argues, as he did in *Elliott*, that I lack subject matter jurisdiction to hear the Motion to Enforce. This contention, as I held in Elliott (and which also is now the law of the case), is frivolous. Federal judges, including bankruptcy judges, have subject matter jurisdiction to enforce their own orders. In the bankruptcy sphere, where the court less commonly has federal question or diversity jurisdiction under 28 U.S.C. § 1331 or 1332, the court's subject matter jurisdiction rests on the Judicial Code's bankruptcy subject matter jurisdiction provision, 28 U.S.C. § 1334, and in particular its "arising in" prong. It has been repeatedly held that bankruptcy judges have "arising in" jurisdiction to construe and enforce orders they had earlier signed.

> As I observed in *Elliott*, the Sesay Plaintiffs' continued focus on the "related to" prong of § 1334, inexplicably still pressed here, misses the point. It is

---

[10]  While the Phaneuf Plaintiffs initially filed a notice of appeal and a motion seeking leave to appeal the order denying their No Stay Pleading, the Phaneuf Plaintiffs have extended New GM's answer date to respond to the motion until 30 days after the Bankruptcy Court rules on the Four Threshold Issues. New GM requested a similar extension from the E/S Plaintiffs, but that request was denied.

the "arising in" prong of § 1334 upon which district and bankruptcy judges' subject matter jurisdiction rests.

Nor is it an answer for the Sesay Plaintiffs to contend that because they believe their claims, in whole or in part, should not be found to be covered by my earlier order, or my earlier order should not have said what it did or was invalid, my subject matter jurisdiction to decide those issues evaporates. As in Elliott, each contention assumes the fact to be decided. Despite the Sesay Plaintiffs' efforts to recast the issues, and to discuss other issues not at all relevant, the simple fact is that New GM seeks construction and enforcement of the Sale Order, and I have subject matter jurisdiction to do exactly that.

Sesay Decision, at 7-9.

D.    **The MDL And The Consolidated Complaints**

26.    On June 9, 2014, the Judicial Panel on Multidistrict Litigation established the MDL and designated the District Court as the MDL court. Currently, more than 140 cases are pending in the MDL. Many, like the Elliott and Sesay Ignition Switch Actions, involve economic loss claims based on vehicles with allegedly defective parts.

27.    At an August 11, 2014 initial case conference, the District Court discussed the filing by Lead Counsel of a consolidated master complaint for all economic loss actions. Pursuant to Order No. 8 § III entered in the MDL,[11] the District Court ordered Lead Counsel to prepare, circulate for comment among plaintiffs' counsel, and file a "Consolidated Complaint with respect to all claims alleging economic loss," with provision for plaintiffs who were dissatisfied with the consolidated complaint to file objections. This followed Order No. 7 issued in the MDL,[12] in which the District Court stated that "sooner rather than later [Lead Counsel should] review all existing complaints (and the facts already in the public record . . . ) and file a

---

[11]    A copy of Order No. 8 entered in the MDL is annexed hereto as Exhibit "C."
[12]    A copy of Order No. 7 entered in the MDL is annexed hereto as Exhibit "D."

consolidated or master complaint with the claims on behalf of the class or classes, as appropriate."

28.      The District Court further stated in Order No. 7 (§ I) that "having a consolidated or master complaint sooner rather than later would streamline and clarify the claims and help eliminate those that are duplicative, obsolete, or unreflective of developing facts or current law. That would not only help advance this litigation, but would also presumably facilitate litigation of the issues currently pending before the Bankruptcy Court."  The District Court, thereafter, established a process for the filing of the Consolidated Complaints whereby all plaintiffs would have an opportunity to review and comment on the Consolidated Complaints before they were filed as well as the ability to file objections after they were filed.  *See* MDL Order No. 8 § III.

29.      On October 14, 2014, Lead Counsel filed the two Consolidated Complaints.  The E/S Plaintiffs did not file any objections to the Consolidated Complaints.  The Consolidated Complaints subsume plaintiffs who commenced an individual Ignition Switch Action that has been transferred to the MDL.  The Elliott Ignition Switch Action was transferred to the MDL on October 15, 2014.  The Sesay Ignition Switch Action was transferred to the MDL on August 7, 2014.  Accordingly, the E/S Plaintiffs are bound by the procedures in the MDL and the claims set forth in the Consolidated Complaints.  It is anticipated that the E/S Plaintiffs' Ignition Switch Actions will shortly be dismissed without prejudice.

## CONSOLIDATED OBJECTION

30.      The Court should deny the E/S Plaintiffs leave to appeal the Orders denying their No Stay Pleadings because they completely fail to satisfy the required test for such extraordinary relief.  The Leave to Appeal Test was set forth in *Enron Corp. v. Avenue Special Situations Fund II, L.P. (In re Enron Corp.)*, Adv. 05-010, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) as follows: "[i]n order to permit an interlocutory appeal pursuant to section 1292(b), the order being

appealed must '(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion,' and the movant must also show that '(3) an immediate appeal would materially advance the ultimate termination of the litigation.'" *Id.* at *3 (quoting 28 U.S.C. § 1292(b)). Each of these three requirements "must be met for a Court to grant leave to appeal." *In re Futter Lumber Corp.*, 473 B.R. 20, 26-27 (E.D.N.Y. 2012); *see also N. Fork Bank v. Abelson*, 207 B.R. 382, 390 (E.D.N.Y. 1997) ("Because Abelson's appeal meets only two of the three requirements as enunciated in 28 U.S.C. § 1292(b), the Court declines to grant leave to bring an Interlocutory Appeal.").

31.    The standard under Section 1292(b) "is strictly applied as interlocutory appeals from bankruptcy courts' decisions are 'disfavored' in the Second Circuit." *Enron*, 2006 WL 2548592, at *3. As further explained by the court in *Enron*:

> leave to appeal is warranted only when the movant demonstrates the existence of "exceptional circumstances" to overcome the "general aversion to piecemeal litigation" and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Interlocutory appeal "is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation,' ... and is not intended as a vehicle to provide early review of difficult rulings in hard cases." The decision whether to grant an interlocutory appeal from a bankruptcy court order lies with the district court's discretion.

*Id.* (footnotes and citations omitted); *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (an interlocutory appeal is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals"); *Liebert v. Levine (In re Levine)*, No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) ("The Second Circuit has repeatedly 'urged the district courts to exercise great care in making a § 1292(b) certification.'").

32.    "One of the chief concerns of Section 1292 is the efficiency of the federal court system, and efficiency is of particular concern in large complex cases." *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV. 3288, 2003 WL 22953644, at *4 (S.D.N.Y. Dec. 16, 2003); *see also*

*Ellsworth v. Myers (In re Cross Media Mktg. Corp.)*, No. 03-13901(BRL), 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007) ("[T]he party seeking an interlocutory appeal has the burden of showing exceptional circumstances, to overcome the general aversion to piecemeal litigation and to show that the circumstances warrant a departure from the basic policy of postponing appellate review until after entry of a final judgment.")(internal citation omitted)).

33.    The Motions should be denied because the E/S Plaintiffs have failed to establish any of the three elements of the Leave to Appeal Test.  In addition, the E/S Plaintiffs cannot show, nor do they even attempt to show, that exceptional circumstances exist to grant the Motions.  Indeed, to the contrary, allowing the appeals to proceed would disrupt the carefully crafted litigation procedures enacted by the District Court and the Bankruptcy Court.  Accordingly, as shown below, the situation here does not justify a departure from the rule postponing appellate review of interlocutory orders.

## A.    There Is Not Substantial Ground For A Difference Of Opinion

34.    The E/S Plaintiffs fail to demonstrate that a substantial ground exists for a difference of opinion with regard to the issues sought to be appealed.  To find that there is a substantial grounds for dispute, it must be shown that there is a genuine doubt as to the correct applicable legal standard relied upon by the bankruptcy court in denying a motion, *Ellsworth*, 2007 WL 2743577, at *2, and it must involve more than strong disagreement between the adversary parties.  *See N. Fork Bank*, 207 B.R. at 390. "Merely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion." *Ellsworth*, 2007 WL 2743577, at *2.

35.    The Supreme Court has held squarely that a bankruptcy court has subject matter jurisdiction to interpret and enforce its prior orders:

> Given the Clarifying Order's correct reading of the 1986 Orders, the only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order. ***The answer here is easy***:  as the Second Circuit recognized, and respondents do not dispute, ***the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders***. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S. Ct. 695, 78 L. Ed. 1230 (1934). ***What is more, when the Bankruptcy Court issued the 1986 Orders it explicitly retained jurisdiction to enforce its injunctions***.

*Travelers Indemn. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (emphasis added); *accord Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (stating that litigants cannot be permitted to collaterally attack preexisting court orders "without seriously undercutting the orderly process of the law").

36.    In the Elliott Decision, in addition to citing to *Travelers Indemnity*, the Bankruptcy Court cited to numerous other cases from the Second Circuit, this District Court, and the Bankruptcy Court for the Southern District of New York that unequivocally establish that the Bankruptcy Court has subject matter jurisdiction to interpret and, if appropriate, enforce the Sale Order and Injunction. *See* Elliott Decision, at 1-2; *see also* Sesay Decision, at 7-9. The District Court in the MDL has also agreed that the Bankruptcy Court should rule on issues related to its own orders. *See* MDL Order No. 7, at 3 ("the Court is inclined to believe that the Bankruptcy Court should rule, in the first instance, on matters relating to its prior orders and the bankruptcy generally").

37.    In *Douglas v Stamco*, 363 Fed. App'x 100 (2d Cir. 2010), the Second Circuit rejected an argument identical to the E/S Plaintiffs that a bankruptcy court lacked authority to enforce "free and clear" provisions in a sale agreement in favor of a purchaser of a debtor's assets. In doing so, the Second Circuit recognized that enforcement of such free and clear provisions necessarily would affect the bankruptcy estate:

> [T]o the extent that the "free and clear" nature of the sale (as provided for in the Asset Purchase Agreement ("APA") and § 363(f)) was a crucial inducement in the

15

sale's successful transaction, it is evident that the potential chilling effect of allowing a tort claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors.

*Id.* at 102-03.

38.     Likewise, substantially similar claims to those advanced by the E/S Plaintiffs were rejected in *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010) (Buchwald, J.), a prior appeal from the Sale Order and Injunction:

> The jurisdictional issue here, if any, is the Bankruptcy Court's "core" or "arising under" jurisdiction to approve the 363 Transaction and issue the Sale Order. It is well-settled that bankruptcy courts have core jurisdiction to approve section 363 sales, *see* 28 U.S.C. § 157(b)(2)(N) ("[C]ore proceedings include ... orders approving the sale of property."), and corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a); *cf. also* 28 U.S.C. § 1651 ("All Writs Act"). Moreover, courts have characterized the injunctive authority of bankruptcy courts as "core" when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the "free and clear" authority of section 363(f).

428 B.R. at 56-57 (collecting cases).

39.     The E/S Plaintiffs do not seriously contest these legal principles.  In explaining the alleged "substantial ground for difference of opinion" regarding the Bankruptcy Court's assertion of jurisdiction, the E/S Plaintiffs state that the "Bankruptcy Court based its jurisdictional rulings exclusively on its ***unremarkable power, shared by all courts, to interpret and enforce its own orders***.  But the jurisdictional issue before it was whether it had jurisdiction to enjoin a third party lawsuit . . . between nonparties to Old GM's bankruptcy."  Elliott Motion, at 10 (emphasis added).  However, as stated by the Bankruptcy Court, the E/S Plaintiffs "argument conflates the conclusion I might reach after analysis of matters before me—that

certain claims ultimately might not be covered by the Sale Order—with my jurisdiction to decide whether or not they are."  Elliott Decision, at 7.[13]

40.    The E/S Plaintiffs' thus failed to satisfy the second prong of the Leave to Appeal Test.  There simply is no ground for a difference of opinion on the issue of whether the Bankruptcy Court has "subject matter jurisdiction" to interpret and enforce its prior orders, including the Sale Order and Injunction.  The plain answer is that the Bankruptcy Court can exercise "arising in" subject matter jurisdiction over the Motion to Enforce.

**B.    <u>An Immediate Appeal Will Not Materially Advance The Litigation</u>**

41.    In addition, the E/S Plaintiffs cannot demonstrate that granting the Motions will advance the litigation between the parties as required by the Section 1292(b) standard.  "[A]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial."  *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998) (internal quotation omitted).

42.    Here, an immediate appeal will not advance the time for trial or shorten the time required for trial.  In fact, an immediate appeal will have no salutary effect on the Ignition Switch Actions.  As stated above, all of E/S Plaintiffs' claims have been subsumed in the Consolidated Complaints, and their individual Ignition Switch Actions will shortly be dismissed without prejudice.  Thus, even if the E/S Plaintiffs were successful and granted leave to appeal, and even if that appeal was ultimately successful, Lead Counsel in the MDL would still be prosecuting the

---

[13]    Cases cited in the Motions to support permission of interlocutory appeals of preliminary injunctions in cases where defendants have brought jurisdictional challenges to the issuing court's authority are misleading because they are based on "related to" jurisdiction, which is not applicable here.  *See In re Chateaugay Corp*., 213 B.R. 633 (S.D.N.Y. 1997) (granting leave to appeal issue relating to court's "related to" jurisdiction).  Counsel also cites to *N. Fork Bank v. Abelson*, 207 B.R. 382 (E.D.N.Y. 1997), to support this proposition, but in that case, the court denied the motion for leave to pursue interlocutory appeal on the disputed jurisdictional issue.

Consolidated Complaints, and the E/S Plaintiffs' individual Ignition Switch Actions would not be going forward at this time.

43.    The District Court overseeing the MDL has also agreed that the Bankruptcy Court should decide the Four Threshold Issues in the first instance.  As stated by the District Court:

> [T]he Court is preliminarily disinclined to withdraw the reference with respect to any claims or proceedings currently pending before the Bankruptcy Court. The Court recognizes that some claims may not ultimately be subject to the Sale Agreement or Sale Order, but given the complexities involved, and the interrelated nature of the different claims, the Court is inclined to believe that the Bankruptcy Court should rule, in the first instance, on matters relating to its prior orders and the bankruptcy generally.  Withdrawing the reference as to any of the claims or proceedings before the Bankruptcy Court risks prejudging complicated issues and may result in undue complications later in the litigation.

MDL Order No. 7, at 3.

44.    In addition, the procedures for ruling on the Four Threshold Issues have been fixed for months.  The E/S Plaintiffs neither objected to those procedures nor appealed the orders that established them.  Through those procedures, the Four Threshold Issues will be fully briefed by the middle of January, 2015–approximately one month from the date hereof–and the Bankruptcy Court will likely decide those issues within a few months thereafter.

45.    In contrast, the pleadings regarding the Motions will first need to be transmitted to the District Court to be ruled upon.  *See* Fed. R. Bankr. P. 8003.  Even assuming the District Court rules on the Motions expeditiously and even assuming the E/S Plaintiffs can somehow satisfy the other elements of the Leave to Appeal Test (which they cannot), that would only mean that the E/S Plaintiffs could then proceed with their appeal.  Any appeal (if permitted to proceed in the District Court) will likely take several months to brief and decide; this timeline also does not take into account any further appeals.  Thus, it is highly unlikely that the issues on appeal will be finally decided before the Bankruptcy Court decides the Four Threshold Issues.

46.    Accordingly, the E/S Plaintiffs have failed to demonstrate that an immediate appeal will materially advance the ultimate termination of their Ignition Switch Actions.

## C.    The Bankruptcy Court's Decisions Do Not Involve A Controlling Question of Law

47.    In order to satisfy the first prong of the Section 1292(b) standard, the "question must . . . be 'controlling' in the sense that reversal of the bankruptcy court would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome."  *In re Adelphia Comm'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005). Here, the E/S Orders do no more than temporarily stay the underlying Ignition Switch Actions filed by the E/S Plaintiffs; they do not deal with a "controlling question of law" relating to the Ignition Switch Actions.

48.    The validity of the E/S Plaintiffs' claims against New GM has not yet been decided by the Bankruptcy Court.  That Court has simply found that the Sale Order and Injunction *prima facie* applies to the E/S Plaintiffs until the Bankruptcy Court has an opportunity to address the Four Threshold Issues–issues that affect not only the E/S Plaintiffs but more than 100 other groups of plaintiffs who are subject to the Motion to Enforce.  The question at issue in this requested appeal is, thus, not "controlling," as the E/S Plaintiffs have not been permanently enjoined from asserting their claims against New GM.

49.    Accordingly, as the substance of the E/S Plaintiffs' claims have not been decided, there is no controlling question of law at issue in these appeals.  Thus, the E/S Plaintiffs have failed to establish this element of the Leave of Appeal Test.

## CONCLUSION

50.    Based on the foregoing, the E/S Plaintiffs have failed to establish any of the required elements of the Leave to Appeal Test and, thus, their Motions seeking leave to appeal the E/S Orders should be denied in their entirety.

WHEREFORE, New GM respectfully requests that the Court (i) deny the relief requested

in the Motions, and (ii) grant it such other and further relief as is just and proper.

Dated: New York, New York
      December 17, 2014               KING & SPALDING LLP


                              By:  _/s/ Arthur Steinberg____
                                    Arthur Steinberg
                                    Scott Davidson
                1185 Avenue of the Americas
                New York, New York 10036
                Telephone:  (212) 556-2100
                Facsimile:  (212) 556-2222

                KIRKLAND & ELLIS LLP
                300 North LaSalle
                Chicago, IL 60654
                Telephone:    (312) 862-2000
                Facsimile:     (312) 862-2200
                Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

                *Counsel to General Motors LLC*

20