# Exhibit 5

## Fronk, Casey R.

| | |
|---|---|
| **From:** | Fronk, Casey R. |
| **Sent:** | Tuesday, December 23, 2014 1:54 PM |
| **To:** | 'Kurt D. Mitchell' |
| **Cc:** | Feller, Leonid; James Johnson |
| **Subject:** | Brochey v. GM |
| **Attachments:** | GM - Ignition Switch - Scheduling Order - As Entered.pdf; 2014_07_01 BANKR Supp Scheduling Order re Sale Order Enforcement - ECF 1....pdf; GM - Ignition Switch - Order Approving Motion to Establish Procedures fo....pdf; 14 12 08 -13016  GM - 13th Supplement Schedule 1 for Motion (With Ex. A)....pdf; 14 12 08 -13017  GM - 13th Supplement Schedule 2 for Motion.pdf; Brochey Stipulation Staying Action.doc |

Kurt,

Please see the following, which corrects the email I sent you on December 15, 2014.  As stated below, the *Brochey* action is subject to the Ignition Switch Motion to Enforce in the Bankruptcy Court, rather than the Monetary Relief Motion to Enforce. I apologize for any confusion.  As set out below, pursuant to the procedures implemented by the Bankruptcy Court, you are required to either agree to the attached stay stipulation or file a no-stay pleading within 3 business days, which is Monday, December 29.  If you fail to do so, we will seek appropriate relief in the Bankruptcy Court.  I will be happy to discuss if you have any questions.

-Casey

\*        \*        \*

We are co-counsel for General Motors LLC ("New GM").  You previously commenced an Action against New GM asserting certain claims based on an alleged defect in ignition switches in certain vehicles.  In connection therewith, on April 21, 2014, New GM filed the Ignition Switch Motion to Enforce the Sale Order and Injunction with the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").  On May 16, 2014, the Bankruptcy Court issued a Scheduling Order ("Scheduling Order") establishing certain procedures for addressing issues raised in the Motion to Enforce.  A Supplemental Scheduling Order ("Supplemental Scheduling Order") was entered by the Bankruptcy Court on July 11, 2014.  The Brochey Action was made subject to the Ignition Switch Motion to Enforce pursuant to the Thirteenth Supplements to Schedules 1 and 2 of the Ignition Switch Motion to Enforce, which were filed on December 8, 2014.  Copies of the Scheduling Order, Supplemental Scheduling Order, and the Thirteenth Supplements are attached hereto.

The form of the Scheduling Order and Supplemental Scheduling Order presented to the Bankruptcy Court were negotiated with and approved by counsel representing certain of the Plaintiffs who have filed Actions against New GM ("Designated Counsel").  Designated Counsel appeared at the May 2, 2014 Bankruptcy Court hearing and spoke on behalf of the clear majority of Plaintiffs. They have agreed to try and coordinate the efforts of Plaintiffs' counsel in this matter.  Contact information for Designated Counsel is as follows:

1. Edward Weisfelner – email: eweisfelner@brownrudnick.com; phone: 212-209-4900
2. Howard Steel – e-mail: hsteel@brownrudnick.com; phone: 212-209-4917
3. Sander Esserman – e-mail: esserman@sbep-law.com; phone: 214-969-4910
4. Peter Lockwood – e-mail: plockwood@capdale.com; phone: 202-862-5065

On July 8, 2014, the Bankruptcy Court issued an Order to Establish Procedures for Newly-Filed Ignition Switch Actions ("Newly-Filed VIS Action Procedures Order").  A copy of the Newly-Filed VIS Action Procedures Order is attached hereto.

Pursuant to the Newly-Filed VIS Action Procedures Order, all Plaintiffs that have commenced Actions against New GM after the filing of the notice of settlement of the Scheduling Order have three (3) business days from receipt of a Stay Stipulation and Scheduling Order to (a) enter into a Stay Stipulation by executing the same and returning it to New GM's counsel, or (b) file a No Stay Pleading with the Bankruptcy Court.  Please review the attached Stay Stipulation and, if you agree to its terms, please sign where indicated and e-mail or fax a copy back to each of the following counsel representing New GM by December 29, 2014:

1. Arthur Steinberg – email:  asteinberg@kslaw.com; facsimile: 212-556-2222; phone: 212-556-2158
2. Scott Davidson – e-mail: sdavidson@kslaw.com; facsimile: 212-556-2222; phone: 212-556-2164
3. Richard Godfrey – e-mail: rgodfrey@kirkland.com; facsimile: 312-862-2200; phone: 312-862-2391
4. Andrew Bloomer – e-mail; abloomer@kirkland.com; facsimile: 312-862-2200; phone: 312-862-2482

If you choose not to enter into a Stay Stipulation, pursuant to the Newly-Filed VIS Action Procedures Order, you are required to file a pleading in the Bankruptcy Court by no later than December 29, 2014, setting forth why you should not be directed to stay your Action ("No Stay Pleading").  New GM will file a response to the No Stay Pleading and the Bankruptcy Court will hold a hearing on a date set by the Bankruptcy Court.

Please be advised, pursuant to the terms of the Newly-Filed VIS Action Procedures Order, if any plaintiff chooses not to (i) execute a Stay Stipulation, or (ii) file a No Stay Pleading, the terms of the Stay Stipulation shall automatically be binding on such plaintiff.

To the extent you have previously entered into an agreed stay or extension of time in the court where you commenced your Action, those stipulations and extensions of time remain in effect.  However, the Bankruptcy Court's Order supersedes any prior agreement between the parties.  You are therefore required to either execute a Stay Stipulation or file a No Stay Pleading irrespective of any prior agreed stay or extension of time.

If you have any questions, you can contact the above-referenced counsel for New GM, or any of the Designated Counsel.

**Casey R. Fronk** | Kirkland & Ellis LLP
300 North LaSalle | Chicago, Illinois  60654
P 312.862.3084 | F 312.862.2200

*************************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*************************************************************

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re                                                      :        Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.*,                      :        Case No.: 09-50026 (REG)
          f/k/a General Motors Corp., *et al.*             :
                                                           :
                                  Debtors.                 :        (Jointly Administered)
-----------------------------------------------------------------x
STEVEN GROMAN, ROBIN DELUCO,                               :
ELIZABETH Y. GRUMET, ABC FLOORING,                         :
INC., MARCUS SULLIVAN, KATELYN                             :
SAXSON, AMY C. CLINTON, AND ALLISON                        :        Adv. Pro. No.: 14-01929 (REG)
C. CLINTON, on behalf of themselves, and all              :
others similarly situated,                                 :
                                                           :
                                  Plaintiffs,              :
                                                           :
                      -v-                                  :
                                                           :
GENERAL MOTORS LLC,                                        :
                                                           :
                                  Defendant.               :
-----------------------------------------------------------------X

## SCHEDULING ORDER REGARDING (I) MOTION OF GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION, (II) OBJECTION FILED BY CERTAIN PLAINTIFFS IN RESPECT THERETO, AND (III) ADVERSARY PROCEEDING NO. 14-01929[1]

Upon the Court's Order, dated April 22, 2014 ("**April 22 Order**"), scheduling a

conference for May 2, 2014 ("**Conference**") to address procedural issues respecting the Motion,

dated April 21, 2014 ("**Motion**"), of General Motors LLC ("**New GM**"),[2] pursuant to Sections

105 and 363 of the Bankruptcy Code, seeking to enforce the Sale Order and Injunction, the

Objection, dated April 22, 2014 to the Motion filed by certain Plaintiffs [Dkt. No. 12629]

---

[1]    Blacklined to show differences from Order as proposed by Counsel for the Identified Parties.

[2]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

("**Objection**"), and the adversary proceeding, Adv. Proc. No. 14-01929 (REG) ("**Adversary Proceeding**") filed by Steven Groman *et al.* ("**Groman Plaintiffs**"); and due and proper notice of the Conference having been provided to counsel for the Plaintiffs, counsel for the Motors Liquidation Company GUC Trust ("**GUC Trust**"), counsel for certain holders of GUC Trust units that appeared at the Conference ("**Unitholders**"), and the Office of the United States Trustee, and it appearing that no other or further notice need be given; and it appearing that the April 22 Order encouraged Plaintiffs' counsel to band together, to the extent possible, to avoid repetition and duplicative arguments, and the Plaintiffs have made a good faith attempt to do so;[3] and the Court having considered the letters filed with the Court regarding the proposed agenda for the Conference; and the Conference having been held on May 2, 2014; and upon the record of the Conference, and the prior proceedings had herein, the Court having issued directives from the bench, which are memorialized in this Order. Accordingly, it is hereby

ORDERED that no discovery shall take place with respect to the Motion, the Objection or the Adversary Proceeding until further order of this Court; and it is further

ORDERED that the contested matter for the Motion, the Objection and the Adversary Proceeding shall be jointly administered by this Court and, for ease of this Court and all parties, all pleadings and other documents shall only be required to be filed on the main docket for the Chapter 11 case (Case No. 09-50026); and it is further

ORDERED that the Groman Plaintiffs shall have until May 21, 2014 to file any amendment as of right to their complaint in the Adversary Proceeding, *provided, however*, that any such amendment shall not affect the procedures set forth in this Order, absent further order of this Court; and it is further

---

[3]   Certain Plaintiffs designated the law firms Brown Rudnick, LLP; Caplin & Drysdale, Chartered; and Stutzman, Bromberg, Esserman & Plifka, PC (collectively "**Designated Counsel**") to speak on their behalf at the Conference.

ORDERED that the time for New GM to answer or move with respect to the Adversary

Proceeding is adjourned *sine die*; and it is further

ORDERED that the question of whether Court-ordered mediation may be useful to

resolve issues in these proceedings is deferred without prejudice to any party's rights to request

Court-ordered mediation at a later time; and it is further

ORDERED that the GUC Trust agrees that it shall not assert a timeliness objection to any

claims that the Plaintiffs may attempt to assert against the Old GM bankruptcy estate and/or the

GUC Trust,  based directly or indirectly on the ignition switch issue, as a result of the Plaintiffs'

delay in asserting such claims during the "Interval."  For purposes hereof, (a) the "Interval" shall

commence on the date of this Order and shall end 30 days after a Final Order is entered with

respect to an adjudication of the Threshold Issues (as defined in this Order), and (b) "Final

Order" shall mean the entry of an order by a court of competent jurisdiction, and there are no

pending appeals, and the time period to file an appeal of such order has expired; and it is further

ORDERED that Wilmington Trust Company ("**WTC**"), as the GUC Trust Administrator,

and the Unitholders, subject to WTC and such Unitholders coordinating their efforts in these

proceedings to the extent reasonably practicable, shall be considered parties in interest in the

contested matter concerning the Motion, the Objection, and the Adversary Proceeding, and shall

have standing to appear and be heard on all issues regarding the Motion, the Objection, and the

Adversary Proceeding.  WTC and the Unitholders, subject to the coordination of efforts as

discussed above, shall be permitted to participate in any discovery that may later be authorized

by the Court; and it is further

ORDERED that the following initial case schedule shall apply to the Motion, the

Objection and the Adversary Proceeding:

3

1.    The threshold issues to be addressed by the parties ("**Threshold Issues**") are presently determined to be as follows:

    a.    Whether procedural due process in connection with the Sale Motion and the Sale Order and Injunction was violated as it relates to the Plaintiffs;

    b.    If procedural due process was violated as described in 1(a) above, whether a remedy can or should be fashioned as a result of such violation and, if so, against whom;

    c.    Whether a fraud on the Court was committed in connection with the Sale Motion and Sale Order and Injunction based on the alleged issues regarding the ignition switch defect ("**Fraud on the Court Threshold Issue**");

    d.    Whether New GM may voluntarily provide compensation to pre-petition accident victims that allege that their accident was caused by a defective ignition switch, while seeking to enforce the Sale Order and Injunction against claims asserted in the Ignition Switch Actions; and

    e.    Whether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust).[4]

2.    The following schedule shall apply to the Threshold Issues:

    a.    by May 28, 2014, Designated Counsel, counsel for the Groman Plaintiffs, counsel for the GUC Trust and counsel for the Unitholders collectively, are to provide New GM with proposed stipulations of facts regarding the Threshold Issues;

    b.    by June 11, 2014, New GM is to respond to the parties set forth in Section 2(a) by stating which proposed fact stipulations can be agreed to and which cannot, and which additional proposed fact stipulations should be considered by such parties;

    c.    during the period from June 11, 2014 through and including June 30, 2014, New GM and the parties in Section 2(a) (collectively, the "**Counsel for the Identified Parties**") are to "meet and confer" on the proposed fact stipulations and attempt to narrow any remaining fact issues that may exist;

---

[4]    For the avoidance of doubt, the issue of whether a claim asserted in the Ignition Switch Actions is timely and/or meritorious against the Old GM bankruptcy estate (and/or the GUC Trust) is not a Threshold Issue.

d.    by July 1, 2014, the parties are to deliver to this Court the agreed upon stipulations of facts, and jointly identify for this Court any facts that could not be stipulated to; and

e.    a further status conference shall be held on July 2, 2014 at 9:45 a.m. (Eastern) ("**July Conference**") so that this Court can address any remaining disputes that may exist among the parties in respect of the Threshold Issues, including how such issues should affect further proceedings, either by way of authorizing limited discovery on such issues, or by adding other issues to the list of Threshold Issues, or by removing such issues from the list of Threshold Issues at that time. The briefing schedule for the Threshold Issues will be set at the July Conference.

3.    With respect to the Fraud on the Court Threshold Issue, Counsel for the Identified Parties are to meet and confer to attempt to determine the appropriate scope of discovery for such issue. If, after good faith discussions among the Counsel for the Identified Parties they are unable to agree on the appropriate scope of discovery for the Fraud on the Court Threshold Issue, any of the Counsel for the Identified Parties shall be permitted to request that the Court remove the Fraud on the Court Threshold Issue from the list of Threshold Issues, and to defer the consideration of such issue until a later time, *provided, however*, that the Counsel for the Identified Parties to jointly identify for the Court the area(s) of disagreement so that it can be reviewed by the Court and, if appropriate, addressed by the Court at the July Conference.

4.    This Order shall not interfere with the hearing scheduled for May 29, 2014 before the Judicial Panel on Multidistrict Litigation ("**JPML**") in *In re General Motors LLC Ignition Switch Litigation*, MDL 2543, and any order by the JPML regarding whether to consolidate and transfer the Ignition Switch Actions for coordinated or consolidated pretrial proceedings and, if so, the District Court and District Judge ("**Transferee Court**") before whom the Ignition Switch Actions will be centralized for that purpose.

5.    (a)    Plaintiffs shall be given until May 23, 2014 to enter into voluntary stipulations with New GM [proposed addition intentionally omitted] staying all proceedings in their Ignition Switch Action against New GM (including General Motors Holdings LLC and/or General Motors Company) other than the JPML proceedings set forth in paragraph 4 above and, if the Transferee Court so chooses, proceedings in the Transferee Court for the appointment of plaintiff and defendant liaison counsel and the formation of a plaintiffs' steering committee or other committee of plaintiffs' counsel.[5] The Order is without prejudice to the rights of any party to request that this Court stay the Plaintiff(s) from further proceedings before the Transferee Court or for any party to oppose such relief.

---

[5]    The issue of whether Plaintiffs may file a consolidated complaint in the Transferee Court shall be addressed at the July Conference.

(b)    If a Plaintiff chooses not to enter into a voluntary stay stipulation, it shall be required to file a pleading in this Court by no later than May 27, 2014 setting forth why it should not be directed to stay its Ignition Switch Action ("**No Stay Pleading**").  New GM will file a response to the No Stay Pleading by June 13, 2014, and the Court shall hold a hearing on a date set by the Court.  Nothing set forth in this Order shall change the burden of proof as to whether there has been a violation of the Sale Order and Injunction by Plaintiffs who do not enter into a voluntary stay stipulation.  This Order is without prejudice to any party, after September 1, 2014, requesting that this Court modify the stay for cause shown, including based on any rulings in this case, or any perceived delay in the resolution of the Threshold Issues.

6.    Counsel for the Identified Parties are to identify, prior to the July Conference, all issues (other than the issues identified in paragraph 1 hereof) that the Court will be asked to determine in connection with the Motion, the Objection and the Adversary Proceeding, and to state whether or not such issues are to be added to the list of Threshold Issues.  Prior to the July Conference, Counsel for the Identified Parties are to "meet and confer" as to when any such issues are best decided.

7.    Consideration of non-Threshold Issues shall be deferred to a later time, and all parties shall reserve their rights with respect to such issues.

ORDERED that to the extent reasonably practicable, Designated Counsel shall consult and coordinate with other bankruptcy counsel who have filed a notice of appearance on behalf of any Plaintiff(s) in connection with the matters set forth in paragraphs 2, 3 and 6 above.

ORDERED that nothing in this Order is intended to or shall preclude any other Plaintiff's counsel from taking a position in connection with any of the matters set forth in paragraphs 2, 3 and 6 above, PROVIDED that any other counsel who wishes to be heard orally with respect to such position at the Conference on July 2 shall submit and electronically file, no later than noon on July 1, a letter to the Court (with copies to all Identified Parties) summarizing the points he or she will wish to make; and PROVIDED FURTHER that any counsel who has failed to do so will not be heard orally at the July 2 Conference.

ORDERED that this Court shall retain exclusive jurisdiction to interpret and enforce this

Order.

Dated: May 16, 2014
       New York, New York

_____s/Robert E. Gerber_____

UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------x

| | | |
|---|---|---|
| STEVEN GROMAN, ROBIN DELUCO, | : | |
| ELIZABETH Y. GRUMET, ABC FLOORING, | : | |
| INC., MARCUS SULLIVAN, KATELYN | : | |
| SAXSON, AMY C. CLINTON, AND ALLISON | : | Adv. Pro. No.: 14-01929 (REG) |
| C. CLINTON, on behalf of themselves, and all | : | |
| others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -v- | : | |
| | : | |
| GENERAL MOTORS LLC, | : | |
| | : | |
| Defendant. | : | |

---------------------------------------------------------------X

**SUPPLEMENTAL SCHEDULING ORDER REGARDING (I) MOTION OF
GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363
TO ENFORCE THE COURT'S JULY 5, 2009 SALE ORDER AND
INJUNCTION, (II) OBJECTION FILED BY CERTAIN PLAINTIFFS IN
RESPECT THERETO, AND (III) ADVERSARY PROCEEDING NO. 14-01929**

Upon the Court's Order, dated May 16, 2014 ("**May 16 Scheduling Order**") [Dkt. No.

12697] establishing procedures to address certain issues respecting (i) the Motion, dated April

21, 2014 [Dkt. No. 12620] ("**Motion**"), of General Motors LLC ("**New GM**"),[1] pursuant to

Sections 105 and 363 of the Bankruptcy Code, seeking to enforce the Sale Order and Injunction,

(ii) the Objection, dated April 22, 2014 to the Motion filed by certain Plaintiffs [Dkt. No. 12629]

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

("**Objection**"), and (iii) the adversary proceeding, Adv. Proc. No. 14-01929 (REG) [Dkt. No.

12619] ("**Adversary Proceeding**") filed by Steven Groman *et al.* ("**Groman Plaintiffs**"); and

upon counsel for New GM, Designated Counsel,[2] counsel for the Groman Plaintiffs, counsel for

the Motors Liquidation Company GUC Trust ("**GUC Trust**"), and counsel for certain holders of

GUC Trust units that appeared at the conference on May 2, 2014 ("**Unitholders**")[3] having met

and conferred regarding certain procedural issues set forth in the May 16 Scheduling Order, and

Counsel for the Identified Parties having agreed to modify certain procedures and dates set forth

in the May 16 Scheduling Order as set forth herein, subject to the Court's review and approval

thereof; and each of (i) counsel for New GM and Designated Counsel, (ii) counsel for the GUC

Trust and the Unitholders, and (iii) counsel for the Groman Plaintiffs having submitted their own

proposed supplemental scheduling orders for the Court's consideration; and upon a conference

("**Conference**") being held before the Court on July 2, 2014 to, among other things, consider the

proposed supplemental scheduling orders submitted by Counsel for the Identified Parties; and

upon the record of the Conference, and the prior proceedings had herein, the Court having issued

directives from the bench, which are memorialized in this Order; it is hereby

ORDERED that, except as specifically set forth herein, the May 16 Scheduling Order

remains in full force and effect, and is binding on all parties; and it is further

ORDERED subject to any of the Counsel for the Identified Parties' right to file a

Threshold Issue Letter, as defined and as set forth below, the threshold issues to be initially

addressed by Counsel for the Identified Parties ("**Four Threshold Issues**") are presently

determined to be as follows:

---

[2]    Designated Counsel are the law firms Brown Rudnick, LLP; Caplin & Drysdale, Chartered; and Stutzman, Bromberg, Esserman & Plifka, PC (collectively "**Designated Counsel**").

[3]    Designated Counsel and counsel for New GM, the Groman Plaintiffs, the GUC Trust and the Unitholders are collectively referred to herein as "**Counsel for the Identified Parties**."

a.    Whether Plaintiffs' procedural due process rights were violated in connection with the Sale Motion and the Sale Order and Injunction, or alternatively, whether Plaintiffs' procedural due process rights would be violated if the Sale Order and Injunction is enforced against them ("**<u>Due Process Threshold Issue</u>**");

b.    If procedural due process was violated as described in (a) above, whether a remedy can or should be fashioned as a result of such violation and, if so, against whom ("**<u>Remedies Threshold Issue</u>**");

c.    Whether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust) ("**<u>Old GM Claim Threshold Issue</u>**");[4] and

d.    If any or all of the claims asserted in the Ignition Switch Actions are or could be claims against the Old GM bankruptcy estate (and/or the GUC Trust), should such claims or the actions asserting such claims nevertheless be disallowed/dismissed on grounds of equitable mootness ("**<u>Equitable Mootness Threshold Issue</u>**"); and it is further

ORDERED that, subject to the next paragraph relating to the Fraud on the Court Threshold Issue (as defined in the May 16 Scheduling Order), the identification and consideration of all other issues that the Court will be asked to determine in connection with the Motion, the Objection and the Adversary Proceeding (other than the Four Threshold Issues), shall be deferred until the Court resolves the Four Threshold Issues, and all parties reserve their rights with respect to such issues; and it is further

ORDERED that Counsel for the Identified Parties, as part of the briefing on the Four Threshold Issues, shall also brief the legal standard applicable to the Fraud on the Court Threshold Issue ("**<u>Fraud on the Court Standard Briefing</u>**"); and it is further

ORDERED that Designated Counsel, the Groman Plaintiffs, the GUC Trust and the Unitholders are hereby deemed to have released and waived any argument or claim that their

---

[4]    For the avoidance of doubt, the issue of whether a claim asserted in the Ignition Switch Actions is timely and/or meritorious against the Old GM bankruptcy estate (and/or the GUC Trust) is not a Threshold Issue.

clients may have that New GM will violate any legal principle, theory or rule of law arising

under, in or related to the Bankruptcy Code in the event New GM voluntarily compensates pre-

sale accident victims that allege that their accident was caused by a defective ignition switch (the

Threshold Issue set forth in Paragraph 1(d) of the May 16 Scheduling Order); *provided, however*,

that any of the Counsel for the Identified Parties may raise the fact of New GM's voluntary

compensation of pre-sale accident victims (and others reserve the right to contend that said facts

are irrelevant) in any further litigation of the Threshold Issues; and it is further

ORDERED that the following schedule shall apply to the Four Threshold Issues:

a.  by July 18, 2014, (i) New GM, Designated Counsel, and counsel for the Groman Plaintiffs are to exchange proposed stipulations of fact concerning the Due Process Threshold Issue, the Remedies Threshold Issue, and the Old GM Claim Threshold Issue with Counsel for the Identified Parties, and (ii) counsel for the GUC Trust and counsel for the Unitholders are to exchange proposed stipulations of fact concerning the Equitable Mootness Threshold Issue with Counsel for the Identified Parties;

b.  by July 22, 2014, (i) counsel for the GUC Trust and counsel for the Unitholders, collectively, are to exchange any additional proposed stipulations of fact concerning the Due Process Threshold Issue, the Remedies Threshold Issue, and the Old GM Claim Threshold Issue with Counsel for the Identified Parties, and (ii) New GM, Designated Counsel, and counsel for the Groman Plaintiffs are to exchange any additional proposed stipulations of fact concerning the Equitable Mootness Threshold Issue with Counsel for the Identified Parties;

c.  between July 23, 2014 and August 4, 2014, Counsel for the Identified Parties shall "meet and confer" on the proposed fact stipulations and attempt to narrow any remaining fact issues that may exist;

d.  by August 8, 2014, the parties are to deliver to this Court the agreed upon stipulations of fact, and jointly identify for this Court any facts that could not be stipulated to with respect to the Four Threshold Issues;

e.  unless otherwise further ordered by the Court, no discovery shall be authorized in this matter, *provided, however*, if any Counsel for the Identified Parties believes that resolution of any of the Four Threshold Issues is premature and/or would require discovery to resolve, such

4

Counsel may file with the Court and serve upon all other Counsel for the Identified Parties a letter ("**Threshold Issues Letter**") on or before August 8, 2014 requesting that (i) the Court remove an issue(s) from the list of the Four Threshold Issues, and/or (ii) discovery be authorized for one or more of the Four Threshold Issues. Responses to any Threshold Issues Letter shall be filed and served by August 15, 2014.

f.    subject to subsection (e) above, the briefing schedule for the Four Threshold Issues shall be as follows:

i.    on August 22, 2014, (i) New GM shall file and serve its opening brief ("**New GM Opening Brief**") respecting the Due Process Threshold Issue, the Remedies Threshold Issue, the Old GM Claim Threshold Issue, and the Fraud on the Court Standard Briefing, and (ii) the Unitholders and, if it deems it advisable, the GUC Trust ("**Unitholder/GUC Trust Opening Briefs**") shall file and serve their opening briefs respecting the Equitable Mootness Threshold Issues;

ii.   on September 12, 2014, (i) Designated Counsel, the Groman Plaintiffs, the GUC Trust and the Unitholders shall file and serve their responses to the New GM Opening Brief, and (ii) Designated Counsel, the Groman Plaintiffs and New GM shall file and serve their responses to the Unitholder/GUC Trust Opening Briefs;

iii.  on September 30, 2014, (i) New GM shall file and serve its reply brief to the responses filed in connection with the New GM Opening Brief, and (ii) the Unitholders and, if it deems it advisable, the GUC Trust, shall file and serve their replies to the responses to the Unitholder/GUC Trust Opening Briefs; and

iv.   The Court shall hold a hearing thereon on a date set by the Court on or after October 10, 2014;

v.    In their briefs, all parties may rely on the agreed upon stipulations of fact, and, also, any factual materials that would be considered by the Court pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure and all parties may offer for that purpose any materials which they would wish considered part of the record, and any party reserves the right to oppose the consideration of such materials;

vi.   Counsel for the Identified Parties shall propose page limitations for briefs in a joint letter to the Court on or before August 1, 2014. If Counsel for the Identified Parties are unable to agree on page limitations, the Court shall hold a telephonic conference and impose page limitations on Counsel for the Identified Parties;

g.    the Court shall conduct a hearing on any Threshold Issues Letter(s), if necessary, and a status conference on August 18, 2014 at 9:45 a.m. ("**August Conference**"); and it is further

ORDERED that, if the Court finds at the August Conference that certain disputed facts are germane to its resolution of the Four Threshold Issues, discovery may take place as further ordered by the Court; and it is further

ORDERED that this Court shall retain exclusive jurisdiction to interpret and enforce this Order.

Dated: July 11, 2014
        New York, New York

                    ___s/ Robert E. Gerber_____
                    UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                      :        Chapter 11
                                           :
**MOTORS LIQUIDATION COMPANY, *et al.*,**  :        Case No.: 09-50026 (REG)
     **f/k/a General Motors Corp., *et al.***  :
                                           :
                        Debtors.           :        (Jointly Administered)
------------------------------------------------------------x

## ORDER GRANTING MOTION OF GENERAL
## MOTORS LLC TO ESTABLISH STAY PROCEDURES
## FOR NEWLY-FILED IGNITION SWITCH ACTIONS

Upon the Motion, dated June 13, 2014 ("**Motion**"), of General Motors LLC ("**New**

**GM**"),[1] to establish Stay Procedures for newly-filed Ignition Switch Actions; and due and proper

notice of the Motion having been provided to counsel for the Plaintiffs that negotiated the

Scheduling Order and the Stay Stipulation, and counsel for plaintiffs who have filed Ignition

Switch Actions after the filing of the notice of settlement of the Scheduling Order who have not

entered into Stay Stipulations or filed No Stay Pleadings, and it appearing that no other or further

notice need be given; and a hearing (the "**Hearing**") having been held with respect to the Motion

on July 2, 2014; and upon the record of the Hearing, the Court having found and determined that

the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED that the Motion is GRANTED as set forth herein; and it is further

ORDERED that the following procedures shall apply to all Ignition Switch Actions

commenced after the filing of the notice of settlement of the Scheduling Order (unless the

---

[1]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the
       Motion.

plaintiff in such Ignition Switch Action has previously executed a Stay Stipulation or filed a No

Stay Pleading):

(i)     Plaintiffs in any Ignition Switch Action commenced after the filing of the notice of settlement of the Scheduling Order shall have three (3) business days from receipt of a Stay Stipulation and Scheduling Order from counsel to New GM (a) to enter into a Stay Stipulation by executing same and returning it to New GM's counsel, or (b) to file a No Stay Pleading with the Court.  The Court shall hold a hearing on any such No Stay Pleadings on a date to be set by the Court;

(ii)    If a plaintiff in any such Ignition Switch Action fails to either enter into a Stay Stipulation with New GM or file a No Stay Pleading with the Court within three (3) business days of receipt of a Stay Stipulation and Scheduling Order, the terms of the Stay Stipulation shall automatically be binding on such plaintiff; and

(iii)   The Scheduling Order shall apply in all other respects to all plaintiffs who have filed an Ignition Switch Action, no matter when commenced against New GM; and it is further

ORDERED that the Bankruptcy Court shall retain exclusive jurisdiction to interpret and

enforce this Order.

Dated: New York, New York
       July 8, 2014

                                    _s/ Robert E. Gerber_____
                                    UNITED STATES BANKRUPTCY JUDGE

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

--------------------------------------------------------------x

## NOTICE OF FILING OF THIRTEENTH SUPPLEMENT TO SCHEDULE "1" TO THE MOTION OF GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION

   **PLEASE TAKE NOTICE** that on December 8, 2014, General Motors LLC filed the

attached *Thirteenth Supplement to Schedule "1" to the Motion of General Motors LLC Pursuant*

*to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* with

the United States Bankruptcy Court for the Southern District of New York.

Dated: New York, New York
      December 8, 2014

    Respectfully submitted,

    /s/ Scott I. Davidson
    Arthur Steinberg
    Scott Davidson
    KING & SPALDING LLP
    1185 Avenue of the Americas
    New York, New York  10036
    Telephone:  (212) 556-2100
    Facsimile:  (212) 556-2222

    Richard C. Godfrey, P.C. (admitted *pro hac vice*)
    Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
    KIRKLAND & ELLIS LLP
    300 North LaSalle
    Chicago, IL 60654
    Telephone: (312) 862-2000
    Facsimile: (312) 862-2200

    *Attorneys for General Motors LLC*

**THIRTEENTH SUPPLEMENT[1] TO SCHEDULE "1"**

**CHART OF ADDITIONAL IGNITION SWITCH ACTIONS
COMMENCED AGAINST NEW GM NOT LISTED IN THE
PREVIOUS SUPPLEMENTS TO SCHEDULE "1" TO MOTION TO ENFORCE**

|   | <u>Name</u> | <u>Class Models</u> | <u>Plaintiffs' Model</u> | <u>Court</u> | <u>Filing Date</u> |
|---|---|---|---|---|---|
| 1 | Brochey[2] | N/A | 2009 Chevy Impala[3] | Court of Common Pleas of Erie County Pennsylvania<br><br>13108-2014[4] | 11/7/14 |

---

[1]   This schedule supplements the previous supplements and the original Schedule "1" previously filed with the Court in connection with the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("**Motion to Enforce**").

[2]   A copy of the complaint filed in the Brochey Action is attached hereto as Exhibit "A."

[3]   While the Brochey Action also concerns a 2011 Chevy Camaro, the claims regarding that vehicle do not implicate the Motion to Enforce.

[4]   The Brochey Action was removed by New GM to the United States District Court for the Western District of Pennsylvania (No.: 1:14-cv-00304-JFM) on December 3, 2014.

3



09-50026-reg    Doc 13016-1    Filed 12/08/14    Entered 12/08/14 15:58:34    Exhibit A
Pg 2 of 32

## Supreme Court of Pennsylvania

**Court of Common Pleas**
**Civil Cover Sheet**

ERIE _____ **County**

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | 13108-2014 |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

| | |
|---|---|
| **S** | **Commencement of Action:** ☒ Complaint  ☐ Writ of Summons  ☐ Petition  ☐ Transfer from Another Jurisdiction  ☐ Declaration of Taking |
| **E** | |
| **C** | Lead Plaintiff's Name:  Danny E. Brochey / Lead Defendant's Name:  General Motors LLC |
| **T** | |
| **I** | **Are money damages requested?** ☒ Yes  ☐ No / Dollar Amount Requested: (check one)  ☒ within arbitration limits  ☐ outside arbitration limits |
| **O** | |
| **N** | **Is this a *Class Action Suit*?**  ☐ Yes  ☒ No / **Is this an *MDJ Appeal*?**  ☐ Yes  ☒ No |
| **A** | Name of Plaintiff/Appellant's Attorney:  Kurt D. Mitchell PA License No.: 205917 106 S. Armenia Ave Tampa FL 33609  ☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant) |

**Nature of the Case:**    Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☒ Other:
  Unfair Trades Practices and
  Consumer Protection law

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:

*(Section markers: S E C T I O N B)*

*Updated 1/1/2011*

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY PENNSYLVANIA

Danny E. Brochey and his Wife   ) Case No. 13108-2014

Cheryl A. Brochey,          ) CIVIL ACTION

Daniel J. Matteo and his wife   )

Starleen E. Matteo         )

       Plaintiffs,      )

   vs.               )

General Motors LLC

       Defendant.

---

### NOTICE TO DEFEND–CIVIL

**TO: GENERAL MOTORS LLC**
    **300 RENAISSANCE CENTER**
    **DETROIT MICHIGAN 48265**

      You have been sued in Court. If you wish to defend against the claim set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by an attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

               LAWYER REFERRAL SERVICE
           ERIE COUNTY BAR ASSOCIATION
            PO BOX 1792 ERIE, PA 16507
                814-459-4411

A TRUE COPY ATTEST
PROTHONOTARY

1

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY PENNSYLVANIA

| | |
|---|---|
| Danny E Brochey and his wife | ) Case No.: |
| Cheryl A. Brochey, | ) CIVIL ACTION |
| Daniel J. Matteo and his wife | ) COMPLAINT AND JURY DEMAND |
| Starleen E. Matteo | ) |
| Plaintiffs, | ) |
| vs. | ) |
| General Motors LLC | |
| Defendant. | |

## INTRODUCTION

The Plaintiff(s), Danny E Brochey and Cheryl A Brochey and
Daniel J. Matteo and Starleen E. Matteo (Hereinafter "PLAINTIFF
or PLAINTIFFS"), through the undersigned counsel, files this
complaint and sues defendant General Motors LLC (Hereinafter
MANUFACTURER or DEFENDANT) for violations of the Unfair Trade
Practices and Consumer Protection Law 73 P.S. 201-1 et seq. for
defects associated with a 2011 Chevrolet Camaro VIN:
2G1FS1EW3B9160320 and a 2009 Chevrolet Impala VIN:
2G1WC57M991295813 (hereinafter "VEHICLE") warranted and placed
into the stream of commerce by the Manufacturer.

1

## JURISDICTION AND PARTIES

1. Plaintiffs Danny and Cheryl Brochey are adult natural persons and are residents of the city of Erie, Erie County, Pennsylvania.

   a. Plaintiffs Daniel and Starleen Matteo are adult natural persons and are residents of the city of Erie, Erie County, Pennsylvania

2.    Upon information and belief MANUFACTURER is a Foreign Corporation with its principle place of business located at 300 Renaissance Center Detroit Michigan 48265 is authorized to do business in the State of Pennsylvania and, at all times relevant hereto, and was engaged in the business of selling and servicing automobiles in Erie County, Pennsylvania.

3. The transaction or occurrence giving rise to the causes of action alleged in this complaint occurred in Erie County, Pennsylvania.

### FACTS COMMON TO PLAINTIFFS DANNY AND CHERYL BROCHEY

4. On or about March 7 2014 PLAINTIFFS purchased the VEHICLE with an agreed upon price of $32,682.96. (See EX. A).

   a. Along with the purchase of the VEHICLE, Plaintiff received express written warranties and implied warranties from the MANUFACTURER. (See EX. B).

      i. Specifically, PLAINTIFFS received the

2

MANUFACTURER'S 3-YEAR 36,000 MILE BUMPER TO BUMPER WRITTEN WARRANTY, warranting that the vehicle would be free from defects in materials or workmanship. Along with various other express written warranties of varying lengths of time and mileage.

ii. Further, pursuant to Pennsylvania Statutes PLAINTIFFS received an implied warranty that the product would be fit for its ordinary purpose.

5. The Plaintiffs bring this action for monetary damages, because of the ignition switch of the vehicle is dangerous and allows the vehicle to be turned off inadvertently.

6. Commencing during or around the 2010 model year, Manufacturer began manufacturing, marketing, distributing and selling the 5th Generation Camaro, all of which are equipped with defective ignition switch. The Vehicles' ignition switches are uniformly and inherently defective in materials, design or workmanship, and exhibit the ability to be turned off inadvertently. In the alternative the ignition condition is a condition that the Manufacturer was aware of and a fact the Plaintiffs should have been made aware prior to their purchase.

7. The ignition is a safety-related component if the ignition is turned off during operation it can result in loss of steering control, braking and air bags.

8. On or about June 20, 2014 the Defendant recalled the Plaintiffs vehicle however, the Defendant has refused to take

corrective action at this time. Instead requiring that the Plaintiffs wait for some unknown period of time before the safety related component can be corrected.

9. The above referenced severe defects have shaken the PLAINTIFFS faith and confidence in the VEHICLE irreparably.

### FACTS COMMON TO DANIEL AND STARLEEN MATTEO

10. On or about March 30 2011 PLAINTIFFS purchased the VEHICLE with an agreed upon price of $21,705.60. (See EX. A).

a. Along with the purchase of the VEHICLE, Plaintiff received express written warranties and implied warranties from the MANUFACTURER.

i. Specifically, PLAINTIFFS received the MANUFACTURER'S 3-YEAR 36,000 MILE BUMPER TO BUMPER WRITTEN WARRANTY, warranting that the vehicle would be free from defects in materials or workmanship. Along with various other express written warranties of varying lengths of time and mileage.

ii. Further, pursuant to Pennsylvania Statutes PLAINTIFFS received an implied warranty that the product would be fit for its ordinary purpose.

11. The Plaintiffs bring this action for monetary damages, because of the ignition switch of the vehicle is dangerous and allows the vehicle to be turned off inadvertently.

12. The 2009 model year Impala has been Manufactured and equipped with defective ignition switch. The Vehicles' ignition switches are uniformly and inherently defective in materials, design or workmanship, and exhibit the ability to be turned off inadvertently. In the alternative the ignition condition is a condition that the Manufacturer was aware of and a fact the Plaintiffs should have been made aware prior to their purchase.

13. The ignition is a safety-related component if the ignition is turned off during operation it can result in loss of steering control, braking and air bags.

14. On or about June 23, 2014 the Defendant recalled the Plaintiffs vehicle however, the Defendant still has not repaired the vehicle and it is unknown when the when or if the dangerous condition will be corrected.

15. The above referenced severe defects have shaken the PLAINTIFFS faith and confidence in the VEHICLE irreparably.

### COUNT I

### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### 73 P.S. 201-1 et seq.

### PLAINTIFFS DANNY AND CHERYL BROCHEY

16. Plaintiffs Danny and Cheryl Brochey hereby sue Manufacturer for violation of the Pennsylvania Unfair Practices and Consumer Protection Law.

17. Plaintiff incorporates paragraphs 1-9 as though fully restated and realleged.

18. Plaintiffs are persons who purchased a good or a service primarily for personal, household or family uses such as transportation to and from work, household chores and for recreational trips.

19. Manufacturer is a person that recklessly, wantonly and willfully violated provisions of the Unfair Trade Practices and Consumer Protection Law by:

A. Failing to comply with the terms of a written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services was made. Specifically:

i. The Defect described herein is an extremely dangerous latent defect in materials or workmanship with the Plaintiffs' vehicle that the Defendant had been aware and yet chooses to ignore out of greed.

6

ii. Moreover, the Manufacturer provided an express warranty that the vehicle would be free from defects in materials and workmanship; despite knowing that the Plaintiff vehicle contained a latent defect.

B. The Defendant was engaged in unfair or deceptive practices while engaged in commerce in the State of Plaintiff by placing into the stream of commerce the Plaintiffs' vehicle containing latent defects in materials or workmanship and not fit for its ordinary purpose of safe reliable transportation.

Specifically:

i. Manufacturer knew the vehicle was flawed containing a safety defect.

ii. The Manufacturer marketed, sold and place the Plaintiffs' vehicle into the stream of commerce with latent defects in materials or workmanship and not fit for its ordinary purpose of safe reliable transportation despite knowing of the latent defects solely because of corporate greed and a desire to save money on producing the vehicle.

iii. The defects were actively concealed from the Plaintiffs and the Plaintiffs were never given a meaningful opportunity to negotiate in good faith because of the unfair and deceptive trade practices employed by the Manufacturer.

C. The Defendant violate 73 PS 201-2 (4)(viii) by representing that the vehicle was of a particular standard, quality or grade when in fact the vehicle was not.

Specifically:

i. The manufacturer represented the vehicle to be safe and fit for its ordinary purpose of transportation when in fact the vehicle was manufactured with a latent defect to the ignition switch which renders the vehicle unsafe, dangerous and not fit for its ordinary purpose.

D. Finally, the Defendant has committed an unfair and deceptive act pursuant to 73 P.S. 201.2(4)(xxi) by:

i. Placing the Plaintiffs' vehicle into the stream of commerce without informing the public/Plaintiffs that the vehicle exhibited the severe and dangerous defect thereby depriving Plaintiff of the opportunity to make an informed vehicle purchase.

ii. The above referenced misrepresentations, omissions and active concealment concerning the latent dangerous defect was material to the transaction. The false representations and material omissions were made with the intent that Plaintiffs rely upon them.

iii. Plaintiff relied upon the misrepresentations, omissions that the vehicle was safe and without latent defects in materials in the purchase of the

8

Plaintiffs' vehicle. Moreover, Plaintiff changed their position by undertaking a large financial purchase and contracting for the Plaintiffs' vehicle they otherwise would not have done.

iv. Because of this unfair and deceptive practice the Manufacturer has been unjustly enriched.

v. Despite the clear evidence of the defect the Manufacturer has refused to stand behind its product and the warranties it provided. Instead the Manufacturer have forced Plaintiff to file suit to obtain relief that otherwise should have been provided by the Manufacturer willingly in light of the substantial nonconformities the Plaintiffs' vehicle contains and the laws of Pennsylvania.

a. Such behavior can only be described as reckless, wanton and willful.

20. Plaintiffs have suffered actual and ascertainable damages as result of the Manufacturer's actions in recklessly, willfully and wantonly violating the act. Specifically:

A. Plaintiff undertook the purchase and expended large sums of money on a vehicle that contains a dangerous defect.

B. Further, due to the nonconformities the residual value of the Plaintiffs vehicle has been substantially impaired.

C. Finally, the use and safety of the Plaintiffs vehicle has been substantially impaired.

WHEREFORE, Plaintiffs prays for judgment against Manufacturer:

A. In an amount not to exceed $74,999.00 exclusive of costs and interest for damages and actual attorneys' fees; pursuant to 73 P.S. 201-9.2(a).

B. Such other relief this Court deems appropriate.

## COUNT II

### UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### 73 P.S. 201-1 et seq.

### PLAINTIFFS DANIEL AND STARLEEN MATTEO

21. Plaintiffs Daniel and Starleen Matteo hereby sue Manufacturer for violation of the Pennsylvania Unfair Practices and Consumer Protection Law.

22. Plaintiff incorporates paragraphs 1-3 and 10-15 as though fully restated and realleged.

23. Plaintiffs are persons who purchased a good or a service primarily for personal, household or family uses such as transportation to and from work, household chores and for recreational trips.

24. Manufacturer is a person that recklessly, wantonly and willfully violated provisions of the Unfair Trade Practices and Consumer Protection Law by:

A. Failing to comply with the terms of a written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services was made. Specifically:

i. The Defect described herein is an extremely dangerous latent defect in materials or workmanship with the Plaintiffs' vehicle that the Defendant had been aware and yet chooses to ignore out of greed.

ii. Moreover, the Manufacturer provided an express warranty that the vehicle would be free from defects in materials and workmanship; despite knowing that the Plaintiff vehicle contained a latent defect.

B. The Defendant was engaged in unfair or deceptive practices while engaged in commerce in the State of Plaintiff by placing into the stream of commerce the Plaintiffs' vehicle containing latent defects in materials or workmanship and not fit for its ordinary purpose of safe reliable transportation. Specifically:

i. Manufacturer knew the vehicle was flawed containing a safety defect.

ii. The Manufacturer marketed, sold and place the Plaintiffs' vehicle into the stream of commerce with latent defects in materials or workmanship and not fit for its ordinary purpose of safe reliable transportation despite knowing of the

11

latent defects solely because of corporate greed and a desire to save money on producing the vehicle.

        iii. The defects were actively concealed from the Plaintiffs and the Plaintiffs were never given a meaningful opportunity to negotiate in good faith because of the unfair and deceptive trade practices employed by the Manufacturer.

    C. The Defendant violate 73 PS 201-2 (4)(viii) by representing that the vehicle was of a particular standard, quality or grade when in fact the vehicle was not.

        Specifically:

        i.    The manufacturer represented the vehicle to be safe and fit for its ordinary purpose of transportation when in fact the vehicle was manufactured with a latent defect to the ignition switch which renders the vehicle unsafe, dangerous and not fit for its ordinary purpose.

    D. Finally, the Defendant has committed an unfair and deceptive act pursuant to 73 P.S. 201.2(4)(xxi) by:

        i. Placing the Plaintiffs' vehicle into the stream of commerce without informing the public/Plaintiffs that the vehicle exhibited the severe and dangerous defect thereby depriving Plaintiff of the opportunity to make an informed vehicle purchase.

        ii. The above referenced misrepresentations, omissions and active concealment concerning the latent dangerous

defect was material to the transaction. The false
representations and material omissions were made with the intent
that Plaintiffs rely upon them.

      iii. Plaintiff relied upon the
misrepresentations, omissions that the vehicle was safe and
without latent defects in materials in the purchase of the
Plaintiffs' vehicle. Moreover, Plaintiff changed their position
by undertaking a large financial purchase and contracting for
the Plaintiffs' vehicle they otherwise would not have done.

      iv. Because of this unfair and deceptive practice
the Manufacturer has been unjustly enriched.

      v. Despite the clear evidence of the defect the
Manufacturer has refused to stand behind its product and the
warranties it provided. Instead the Manufacturer have forced
Plaintiff to file suit to obtain relief that otherwise should
have been provided by the Manufacturer willingly in light of the
substantial nonconformities the Plaintiffs' vehicle contains and
the laws of Pennsylvania.

      a. Such behavior can only be described as
reckless, wanton and willful.

20. Plaintiffs have suffered actual and ascertainable
damages as result of the Manufacturer's actions in recklessly,
willfully and wantonly violating the act. Specifically:

A. Plaintiff undertook the purchase and expended large sums of money on a vehicle that contains a dangerous defect.

B. Further, due to the nonconformities the residual value of the Plaintiffs vehicle has been substantially impaired.

C. Finally, the use and safety of the Plaintiffs vehicle has been substantially impaired.

WHEREFORE, Plaintiffs prays for judgment against Manufacturer:

A. In an amount not to exceed $74,999.00 exclusive of costs and interest for damages and actual attorneys' fees; pursuant to 73 P.S. 201-9.2(a).

B. Such other relief this Court deems appropriate.

### JURY DEMAND

PLAINTIFFS hereby demands trial by jury on all counts so triable.

KURT D. MITCHELL J.D.
PA. I.D. No.: 205917
KDM Law Firm PLLC
106 S. Armenia Ave
Tampa FL 33609
Attorney for Plaintiffs

14

# EXHIBIT A

PENNSYLVANIA
MOTOR VEHICLE INSTALLMENT SALE CONTRACT.    Date: _____    SIMPLE INTEREST

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ _____ |
|---|---|---|---|---|
| ____ % | $ | $ | $ | $ |

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| | $ | Monthly, beginning |
| | $ | |

Security: You are giving a security interest in the motor vehicle being purchased

Prepayment: If you pay off early, you will not have to pay a penalty.

Filing Fees: $ _____

Late Charge: If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

IF YOU DO NOT MEET YOUR CONTRACT OBLIGATIONS, YOU MAY LOSE THE MOTOR VEHICLE AND PROPERTY THAT YOU BOUGHT WITH THIS CONTRACT, AND/OR MONEY ON DEPOSIT WITH THE ASSIGNEE.

In this Contract we are the SELLER.

| Name | Address | Zip Code |
|---|---|---|

You are the BUYER(S).

| Name(s) | Address(es) | Zip Code(s) |
|---|---|---|

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee.

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

TRADE-IN:
You have traded in the following vehicle: _____

| Year and Make | Description |
|---|---|

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the Itemization of Amount Financed as the "Lien Payoff."

PROPERTY INSURANCE: You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

CREDIT INSURANCE IS NOT REQUIRED: Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of Insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

By signing, you select Single Credit Life Insurance, which costs $ _____    What is your age? _____ Years

By signing, you select Single Credit Accident & Health Insurance, which costs $ _____    What is your age? _____ Years

Signature of Buyer to be insured for Single Credit Life Insurance

Signature of Buyer to be insured for Single Credit Accident & Health Insurance

By signing, you both select Joint Credit Life Insurance, which costs $ _____    What are your ages?

By signing, you both select Joint Credit Accident & Health Insurance, which costs $ _____    What are your ages?    Percentage to be insured

1. _____

1. _____ %

2. _____

2. _____ %

Signatures of both Buyers to be insured for Joint Credit Life Insurance

Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

Insurer: _____

VEHICLE: You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|

Equipped with    ____ A.T.  ____ P.S.  ____ AM-FM Stereo  ____ 5 Spd   Other _____
____ A.C.  ____ P.W.  ____ AM-FM Tape   ____ Vinyl Top

ASSIGNEE: We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

### Itemization of Amount Financed

Cash Price
$

Cash Downpayment
$

Trade-In Value of Trade-In

Lien Payoff to : _____

Unpaid Cash Price Balance

Paid to Others on Your Behalf / We may retain a portion of amounts marked

To Credit Insurance Company
$ ____ *
To Public Officials for:
License, Tags and Registration
$
Lien Fee
$
To _____
$ ____ *
To _____
$ ____ *
To _____
$
To _____
$ ____ *

Amount Financed
$

Finance Charge
$

Total of Payments (Time Balance)
$

Payment Schedule - You agree to pay to us the Amount Financed plus interest in

together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and other parts of the Contract except the "Promise to Pay" section.

will be due at that same date of each month.

TERMS: The terms shown in the boxes above are part of this Contract.

following.

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-in, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

**SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle. It also parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

**ADDITIONAL TERMS AND CONDITIONS: THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.**

NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

SELLER _____

BY _____ Date

BUYER _____ Date

BUYER _____ Date

**CO-SIGNER. YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.**

**CO-SIGNER'S AGREEMENT:** You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

Co-Signer's Signature _____ Address _____ Date

Co-Signer's Signature _____ Address _____ Date

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a Security Interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

Co-Owner's Signature _____ Address _____ Date

**BUYER, CO-SIGNER AND CO-OWNER, AS APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

BUYER _____ BUYER _____ CO-SIGNER _____ CO-SIGNER OR CO-OWNER _____

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

Wolters Kluwer Financial Services © 2003, 2008    To Reorder Form: 1-800-552-9410    PA 23-SLC 3/28/2008

No.

MV-4ST (8-12)

09-50026-reg    Doc 13016-1    Filed 12/08/14    Entered 12/08/14 15:58:34    Exhibit A
Oct. 20. 2014  2:23PM   HALLMAN USED CARS 8179402532   Pg 22 of 32                    No. 4869   P. 1

**PENNSYLVANIA**
**MOTOR VEHICLE INSTALLMENT SALE CONTRACT,**    Dated ___03/30/2011___    **SIMPLE INTEREST**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 3000.00 |
|---|---|---|---|---|
| 11.20 % | $ 5125.60 | $ 13580.00 | $ 18705.60 | $ 21705.60 |

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 259.80 | Monthly, beginning 04/29/2011 |
| | $ N/A | |

**Security:** You are giving a security interest in the motor vehicle being purchased.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

Filing Fees: $ ___5.00___

Late Charge: If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.    e means estimate

In this Contract we are the SELLER.   DAVE HALLMAN CHEVROLET, INC.  1925 STATE ST.  ERIE PA 16501
Name                              Address                              Zip Code

You are the BUYER(S).   DANIEL J MATTEO 5248 HEIDLER RD FAIRVIEW PA 16415
                         STARLEEN E MATTEO 5248 HEIDLER RD FARIVIEW PA 16415
Name(s)                          Address(es)                          Zip Code(s)

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

IF YOU DO NOT MEET YOUR CONTRACT OBLIGATIONS, YOU MAY LOSE THE MOTOR VEHICLE AND PROPERTY THAT YOU BOUGHT WITH THIS CONTRACT, AND/OR MONEY ON DEPOSIT WITH THE ASSIGNEE.

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee.

**TRADE-IN:**
You have traded in the following vehicle: _____
        Year and Make                    Description

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the Itemization of Amount Financed as the "Lien Payoff."
**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.
**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

By signing, you select Single Credit Life Insurance, which costs $ N/A
What is your age? ____ Years

Signature of Buyer to be insured for Single Credit Life Insurance
_____

By signing, you both select Joint Credit Life Insurance, which costs $ N/A
What are your ages?

1. _____
2. _____
Signatures of both Buyers to be insured for Joint Credit Life Insurance

By signing, you select Single Credit Accident & Health Insurance, which costs $ N/A
What is your age? ____ Years

Signature of Buyer to be insured for Single Credit Accident & Health Insurance
_____

By signing, you both select Joint Credit Accident & Health Insurance, which costs $ N/A
What are your ages? Percentage to be insured?

1. _____ %
2. _____ %
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

**Insurer:** _____

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| USED | 2009 CHEVROLET | IMPALA LT | SDN | | | 2G1WC57N991295813 |

Equipped with: ___ A.T., ___ P.S., ___ AM-FM Stereo ___ 5 Spd. Other _____
___ A.C., ___ P.W., ___ AM-FM Tape ___ Vinyl Top

**Itemization of Amount Financed**

| | |
|---|---|
| Cash Price INCL. TAX $928.5 | $ 16403.50 |
| Cash Downpayment | $ 3000.00 |
| Trade-In Value of Trade-In | $ N/A |
| Lien Payoff to : N/A | $ N/A |
| Unpaid Cash Price Balance | $ 13403.50 |
| To Credit Insurance Company | $ N/A |
| To Public Officials for: License, Tags and Registration | $ 66.50 |
| Lien Fee | $ 5.00 |
| To N/A | $ N/A |
| To DOC FEE | $ 105.00 |
| To N/A | $ N/A |
| To N/A | $ N/A |
| Amount Financed | $ 13580.00 |
| Finance Charge | $ 5125.60 |
| Total of Payments (Time Balance) | $ 18705.60 |

Paid to Others on Your Behalf — We may retain a portion of amounts marked *

Payment Schedule - You agree to pay to us the Amount Financed plus interest in

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.   Received Time Oct. 20. at 1:58PM

AMERICREDIT FINANCIAL SERVICES INC.

Seller Oct. 20. 2014th 2:23PM Agreement HALLMAN USED CARS 8179566053 e Assignee will notify you when No. 4869 P. 2nd plus interest in and it s...

AMERICREDIT FINANCIAL SERVICES INC
PO BOX 182673 ARLINGTON 76096-2673

payments of $    259.80
each, and a final payment of
$    N/A    . The first
payment will be due on    APR 29th
2011    , and then payments
will be due on that same day of each month
following.

CO-SIGNER: Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.

CO-OWNER: Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

TERMS: The terms shown in the boxes above are part of this Contract.

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-In, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

**SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

**ADDITIONAL TERMS AND CONDITIONS:** THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK, YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

SELLER  DAVE HALLMAN CHEVROLET, INC.

BUYER

03/30/2011

Received Time Oct. 20.   1:38PM

You have t Oct. 20. 2014 2:24PM    HALLMAN USED CARS 8174588655    No. 4869/mour P. 3
the following.

| Year and Make | Description |
| --- | --- |

$ 3000.00

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the Itemization of Amount Financed as the "Lien Payoff."

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your Insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

Trade-In
Value of Trade-In
$ N/A
Lien Payoff to : N/A
$ N/A
Unpaid Cash Price Balance
$ 13403.50

| By signing, you select Single Credit Life Insurance, | What is your age? ___ Years | By signing, you select Single Credit Accident & Health Insurance, which costs $ N/A | What is your age? ___ Years |
| --- | --- | --- | --- |
| which costs $ N/A | | | |

Signature of Buyer to be insured for Single Credit Life Insurance

Signature of Buyer to be insured for Single Credit Accident & Health Insurance

| By signing, you both select Joint Credit Life Insurance, which costs $ N/A | What are your ages? | By signing, you both select Joint Credit Accident & Health Insurance, which costs $ N/ | What are your ages? | Percentage to be insured: ___% |
| --- | --- | --- | --- | --- |

1. 

2. 
Signatures of both Buyers to be insured for Joint Credit Life Insurance

1. 

2. 
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

To Credit Insurance Company
$ N/A
To Public Officials for:
License, Tags and Registration
$ 66.50
Lien Fee
$ 5.00
To N/A
$ N/A
To DOC FEE
$ 105.00
To N/A
$ N/A
To N/A
$ N/A

Insurer:

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
| --- | --- | --- | --- | --- | --- | --- |
| USED | 2009 CHEVROLET | IMPALA LT | SDN | | | 2G1WC57M991295813 |

Amount Financed
$ 13580.00

Finance Charge
$ 5125.60

Total of Payments (Time Balance)
$ 18705.60

| Equipped with | ___ A.T. ___ P.S. ___ AM-FM Stereo ___ A.C. ___ P.W. ___ AM-FM Tape | ___ 5 Spd. ___ Vinyl Top | Other _____ |
| --- | --- | --- | --- |

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

AMERICREDIT FINANCIAL SERVICES INC
PO BOX 182673 ARLINGTON 76096-2673

**CO-SIGNER:** Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.

**CO-OWNER:** Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

**TERMS:** The terms shown in the boxes above are part of this Contract.

Payment Schedule - You agree to pay to us the Amount Financed plus interest in 72 payments of $ 259.80 each, and a final payment of $ N/A . The first payment will be due on APR 29th 2011 , and then payments will be due on that same day of each month following.

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-In, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

**SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

**ADDITIONAL TERMS AND CONDITIONS:** THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

SELLER DAVE HALLMAN CHEVROLET, INC.

BY: _____ 03/30/2011
Date

BUYER _____ 03/30/2011
Date

BUYER _____ 03/30/2011
Date

**CO-SIGNER:** YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.
**CO-SIGNER'S AGREEMENT:** You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

Co-Signer's Signature _____ Address _____ Date _____

Co-Signer's Signature Received Time Oct. 20. 1:38PM Address _____ Date _____ [✱]

CO-OWNER'S SECURITY AGREEMENT: You, the person signing below as "Co-Owner," ...

Co-Signer    Oct. 20. 2014   2:24PM    HALLMAN USED CARS 8142566632    No. 4869    P. 4/16   [2]

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a Security Interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

Co-Owner's Signature _____ Address _____ Date _____

**BUYER, CO-SIGNER AND CO-OWNER, AS APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

BUYER _____    BUYER _____   CO-SIGNER _____   CO-SIGNER OR CO-OWNER _____

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

Wolters Kluwer Financial Services © 2003, 2008    To Reorder Form: 1-800-552-8410    PA 21-SLC 3/28/2008

Received Time Oct. 20.   1:38PM

# EXHIBIT B

## 2    Warranty Coverage at a Glance

The warranty coverages are summarized below.

### New Vehicle Limited Warranty

**Bumper-to-Bumper (Includes Tires)**

* Coverage is for the first 3 years or 36,000 miles, whichever comes first.

**Powertrain**

* Coverage is for the first 5 years or 100,000 miles, whichever comes first.

**Sheet Metal**

* Corrosion coverage is for the first 3 years or 36,000 miles whichever comes first.

* Rust-through coverage is for the first 6 years or 100,000 miles whichever comes first.

### Emission Control System Warranty

For light duty trucks, see How to Determine the Applicable Emissions Control Systems Warranty under *Emission Control Systems Warranty* on page 22 for more information.

**Federal**

* Gasoline Engines

  - Defects and performance for cars and light duty truck emission control systems are covered for the first 2 years or 24,000 miles, whichever comes first. From the first 2 years or 24,000 miles to 5 years or 36,000 miles defects in material or workmanship continue to be covered under the New Vehicle Limited Warranty Bumper-to-Bumper coverage explained previously. Specified major components are covered for the first 5 years or 80,000 miles, whichever comes first.

  - Defects and performance for heavy duty truck emission control systems are covered for the first 5 years or 50,000 miles whichever comes first

* 6.6L DURAMAX® Diesel Engines are covered for the first 5 years or 50,000 miles whichever comes first.

## Warranty Coverage at a Glance   3

### Noise Emissions

- Coverage is for applicable vehicles weighing over 10,000 lbs based on the Gross Vehicle Weight Rating (GVWR) only, for the entire life of the vehicle.

### DURAMAX™ Diesel Engines

- Defects and performance for the emission control systems are covered for the first 5 years or 50,000 miles, whichever comes first.

- Specified components for the emission control system are covered for the first 7 years or 70,000 miles, whichever comes first.

*Important:* Some California emission vehicles may have special coverage longer than those listed here. See "California Emission Control System Warranty" under *Emission Control Systems Warranty* on page 22.

### Gasoline Engines

- Defects and performance for the emission control systems with light-duty and medium-duty emission control systems are covered for the first 3 years or 50,000 miles, whichever comes first.

- Specified components for cars or light-duty trucks equipped with light-duty or medium-duty truck emission control systems are covered for the first 7 years or 70,000 miles, whichever comes first.

## New Vehicle Limited Warranty

GM will provide for repairs to the vehicle during the warranty period in accordance with the following terms, conditions, and limitations.

### What Is Covered?

### Warranty Applies

This warranty is for GM vehicles registered in the United States and normally operated in the United States or Canada, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

### Repairs Covered

The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new or remanufactured parts.

### No Charge

Warranty repairs, including towing, parts, and labor, will be made at no charge.

### Obtaining Repairs

To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs. A reasonable time must be allowed for the dealer to perform necessary repairs.

### Warranty Period

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

### Bumper-to-Bumper Coverage

The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first, except for other coverages listed here under "What Is Covered" and those items listed under "What Is Not Covered" later in this section.

### Powertrain Component Warranty Coverage

The powertrain is covered for 5 years or 100,000 miles, whichever comes first, except for other coverages listed here under "What is Covered" and those items listed under "What is Not Covered" later in this section.

**Engine Coverage includes:** All internally lubricated parts, engine oil cooling hoses, lines and radiators. Also included are all actuators and electrical components internal to the engine (i.e.: Active Fuel Management Valve Lifter Oil Manifold, etc.), cylinder head, block, timing gears, timing chain, timing cover, oil pump/oil pump housing, OHC carriers, valve covers, oil pan, seals, gaskets, manifolds, flywheel, water pump, harmonic balancer, engine mount, turbocharger and supercharger. Timing belts are covered until the first scheduled maintenance interval.

## New Vehicle Limited Warranty

| | | |
|---|---|---|
| ...coverage...excluded from the powertrain coverage are sensors, wiring, connectors, engine radiator, coolant hoses, coolant and heater core. Coverage on the engine cooling system begins at the inlet to the water pump and ends with the thermostat housing and/or outlet that attaches to the starter motor, entire pressurized fuel system (in-tank fuel pump, pressure lines, fuel rail(s), regulator, injectors and return line) as well as the Engine Control Module and/or module programming. | Transmission/Transaxle Coverage Includes: All internally lubricated parts, case, torque converter, mounts, seals and gaskets; as well as any electrical components internal to the transmission/transaxle. Also covered are any actuators directly connected to the transmission (slave cylinder, etc.). Exclusions: Excluded from the powertrain coverage are transmission cooling lines, hoses, radiator, sensors, wiring and electrical connectors. Also excluded are the clutch and pressure plate as well as any Transmission Control Module and/or module programming. | Transfer Case Coverage Includes: All internally lubricated parts, case, mounts, seals and gaskets; as well as any electrical components internal to the transfer case. Also covered are any actuators directly connected to the transfer case as well as encoder motor. Exclusions: Excluded from the powertrain coverage are transfer case cooling lines, hoses, radiator, sensors, wiring, electrical connectors as well as the transfer case control module and/or module programming. |

## VERIFICATION

The undersigned verifies that the Civil Action Complaint is based on information furnished to counsel in the preparation of his Personal lawsuit.  The language of the Civil Action Complaint is that of counsel and not of signer.  Signer verifies that the information supplied to counsel is true and correct to the best of his knowledge, information and belief. This verification is made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

X _____

Cheryl A.  Brochey

Date: _____

**VERIFICATION**

The undersigned verifies that the Civil Action Complaint is based on information furnished to counsel in

the preparation of his Personal lawsuit.  The language of the Civil Action Complaint is that of counsel and

not of signer.  Signer verifies that the information supplied to counsel is true and correct to the best of

his knowledge, information and belief. This verification is made subject to the penalties of 18 Pa. C.S.

4904 relating to unsworn falsification to authorities.

X _____
Daniel Matteo

Date: _____

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : |  |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------x

### NOTICE OF FILING OF THIRTEENTH SUPPLEMENT TO SCHEDULE "2" TO THE MOTION OF GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION

**PLEASE TAKE NOTICE** that on December 8, 2014, General Motors LLC filed the

attached *Thirteenth Supplement to Schedule "2" to the Motion of General Motors LLC Pursuant*

*to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* with

the United States Bankruptcy Court for the Southern District of New York.

24521328 1

Dated: New York, New York
December 8, 2014

Respectfully submitted,

/s/ Scott I. Davidson
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

THIRTEENTH SUPPLEMENT[1] TO SCHEDULE "2"

SAMPLE ALLEGATIONS/CAUSES OF ACTION IN IGNITION SWITCH
COMPLAINTS FILED AGAINST NEW GM NOT CONTAINED IN THE
PREVIOUS SUPPLEMENTS TO SCHEDULE "2" TO MOTION TO ENFORCE[2]

| Action | Allegations |
|---|---|
| Brochey | One of the vehicles at issue in the Brochey Action is a 2009 Chevrolet Impala, that was manufactured by Old GM.[3] Compl., at 1.

"The 2009 model year Impala has been Manufactured and equipped with defective ignition switch. The Vehicles' ignition switches are uniformly and inherently defective in material s, design or workmanship, and exhibit the ability to be turned off inadvertently . In the alternative the ignition condition is a condition that the Manufacturer was aware of and a fact the Plaintiffs should have been made aware prior to their purchase." Compl., ¶ 12.

"The Defect described herein is an extremely dangerous latent defect in materials or workmanship with the Plaintiffs' vehicle that the Defendant had been aware and yet chooses to ignore out of greed" Compl., ¶ 24(A)(i).

"Moreover, the Manufacturer provided an express warranty that the vehicle would be free from defects in materials and workmanship; despite knowing that the Plaintiff vehicle contained a latent defect." Compl., ¶ 24(A)(ii).

"The Defendant was engaged in unfair or deceptive practices while engaged in commerce in the State of Plaintiff by placing into the stream of commerce the Plaintiffs' vehicle containing latent defects in materials or workmanship and not fit for its ordinary purpose of safe reliable transportation." Compl., ¶ 24(B).

"The Manufacturer marketed, sold and place the Plaintiffs' vehicle into the stream of commerce with latent defects in materials or workmanship and not fit for its ordinary purpose of safe reliable transportation despite knowing of the latent defects solely because of corporate greed and a desire to save money on producing the vehicle." Compl., ¶ 24(B)(ii). |

---

[1]   This schedule supplements the previous supplements and the original Schedule "2" previously filed with the Court in connection with the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("**Motion to Enforce**").

[2]   Due to space limitations, this chart contains only a ***sample*** of statements, allegations and/or causes of action contained in the complaint referenced herein.  This chart does ***not*** contain ***all*** statements and/or allegations that New GM believes violates the provisions of the Court's Sale Order and Injunction and the MSPA.

[3]   While the Brochey Action also concerns a 2011 Chevrolet Camaro, the claims regarding that vehicle do not implicate the Motion to Enforce.

| Action | Allegations |
|---|---|
| | "The defects were actively concealed from the Plaintiffs and the Plaintiffs were never given a meaningful opportunity to negotiate in good faith because of the unfair and deceptive trade practices employed by the Manufacturer." Compl., ¶ 24(B)(iii).<br><br>"The manufacturer represented the vehicle to be safe and fit for its ordinary purpose of transportation when in fact the vehicle was manufactured with a latent defect to the ignition switch which renders the vehicle unsafe, dangerous and not fit for its ordinary purpose." Compl., ¶ 24(C)(i).<br><br>"Finally, the Defendant has committed an unfair and deceptive act pursuant to 73 P.S. 201.2(4) (xxi) by:<br><br>    i. Placing the Plaintiffs' vehicle into the stream of commerce without informing the public/Plaintiffs that the vehicle exhibited the severe and dangerous defect thereby depriving Plaintiff of the opportunity to make an informed vehicle purchase." Compl., ¶ 24(D)(i).<br><br>"Moreover, Plaintiff changed their position by undertaking a large financial purchase and contracting for the Plaintiffs' vehicle they otherwise would not have done." Compl., ¶ 24(D)(iii). |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DANNY E. BROCHEY, CHERYL BROCHEY, DANIEL J. MATTEO, and STARLEEN E. MATTEO, | ) ) ) | **CASE NO. 1:14-CV-00304-JFM (W.D. Pa.).** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **STIPULATION STAYING ACTION** |
| | ) | |
| GENERAL MOTORS LLC,, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

WHEREAS, the above-referenced plaintiff(s) ("**Plaintiff(s)**") commenced this action ("**Action**") against General Motors LLC ("**New GM**")[1] seeking, among other things, economic damages against New GM related to an alleged defect in certain vehicles or parts, and the recall instituted by New GM with respect thereto;

WHEREAS, on April 21, 2014, New GM filed the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction* ("**Motion to Enforce**") in the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**") asserting, *inter alia*, that (i) the Action violates the Order of the Bankruptcy Court, dated July 5, 2009 ("**Sale Order and Injunction**") approving the sale of substantially all of the assets from General Motors Corp. (n/k/a Motors Liquidation Company) ("**Old GM**") to New GM, and the injunction contained therein, and (ii) the Bankruptcy Court has exclusive jurisdiction to interpret and enforce the Sale Order and Injunction;

WHEREAS, by Order of the Bankruptcy Court dated May 16, 2014 ("**Scheduling Order**"), the Bankruptcy Court established certain procedures to address the issues raised in the Motion to Enforce and the objections thereto;

WHEREAS, the Judicial Panel on Multidistrict Litigation ("**JPML**") in *In re General Motors LLC Ignition Switch Litigation*, has established MDL 2543 and has transferred over one-hundred forty (140) similar economic loss and personal injury actions (collectively, the "**Ignition Switch Actions**") for coordinated or consolidated pretrial proceedings to the United States District Court for the Southern District of New York ("**Transferee Court**") before whom the Ignition Switch Actions will be centralized for that purpose;

---

[1]    For purposes of this Stipulation, New GM shall also include General Motors Holdings LLC and General Motors Company.

WHEREAS, by Order of the Bankruptcy Court dated July 8, 2014 ("**Stay Procedure Order**"), the Bankruptcy Court established certain stay procedures for newly-filed Ignition Switch Actions commenced after the filing of the notice of settlement of the Scheduling Order. One of the procedures set forth in the Stay Procedure Order provides that Plaintiff(s) shall have three (3) business days from receipt of a Stay Stipulation and Scheduling Order (a) to enter into a stay stipulation with New GM or (b) to file a No Stay Pleading with the Court; and

WHEREAS, subject to the terms hereof, and any further order of the Bankruptcy Court, the Plaintiff(s) have agreed to voluntarily stay this Action and any proceeding before the Transferee Court pending a resolution by the Bankruptcy Court of the issues raised in the Motion to Enforce, and the objections thereto, or as otherwise set forth herein.

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and between the Plaintiff(s) and New GM (collectively, the "**Parties**"), as follows:

1.      Subject to paragraph 5 hereof, the Parties have agreed to enter into this Stipulation to stay the Action against New GM, and that Plaintiff(s), subject to further order of the Bankruptcy Court, shall not seek to further prosecute this Action during the "Interval" against New GM.  For purposes hereof, (a) the "**Interval**" shall commence on the date of this Stipulation and shall end 30 days after a Final Order(s) is entered resolving all issues raised in the Motion to Enforce, and (b) "**Final Order**" shall mean the entry of an order by the Bankruptcy Court, and the time period to file an appeal of such order has expired.

2.      The Parties will continue to abide by this Stipulation in the Transferee Court during the Interval.

3

3.      This Stipulation is without prejudice to the rights of New GM to request that the Bankruptcy Court stay the Plaintiff(s) from any further proceedings before the Transferee Court, or for the Plaintiff(s) to oppose such relief.

4.      The Parties agree that this Stipulation terminates when, and only to the extent that, the Bankruptcy Court grants relief from the stay of this Action as agreed to by this Stipulation; provided however if a plaintiff in a different Ignition Switch Action (as defined in the Motion to Enforce) does not sign a stipulation similar to this Stipulation, and obtains a ruling from the Bankruptcy Court which permits that plaintiff to go forward in its Ignition Switch Action, the Plaintiff who signed this Stipulation reserves the right to promptly seek the same relief from the Bankruptcy Court as it applies to this Action but only if the same factual and/or legal predicate on which the other plaintiff obtained relief applies to the Plaintiff in this Action as it did to the plaintiff in the other Ignition Switch Action who obtained such relief.

5.      Any Party may request that the Bankruptcy Court modify or terminate the stay agreed to herein for cause shown, including without limitation based on any rulings by the Bankruptcy Court, or any perceived delay in the resolution of the Threshold Issues (as such term is defined in the Scheduling Order).

6.      The Parties each agree to execute such documents as may be reasonably necessary to carry out the terms of this Stipulation, including but not limited to any documents required by the Court in which this Action is pending or by the Transferee Court to effectuate the implementation of this Stipulation.

7.      The Parties each acknowledge that they have been represented by counsel, have jointly negotiated and prepared this Stipulation and are fully satisfied with its terms.  In the event an ambiguity or question of intent or interpretation arises with respect to this Stipulation, this

4

Stipulation shall be construed as if drafted by all Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Stipulation.

8.    This Stipulation shall be governed by and construed in accordance with the substantive laws of the State of New York, without regard to the conflict of laws principles thereof.

9.    This Stipulation constitutes the entire agreement and understanding between the Parties regarding the subject matter herein, and supersedes any Party's promises to or agreements with any other Party with respect to the subject matter herein.  No waiver or modification of any term or condition contained herein shall be valid or binding unless in writing and executed by the Parties hereto.

10.    Nothing set forth herein is intended to modify the terms of the Scheduling Order, the Stay Procedures Order or any subsequent Supplemental Scheduling Order entered by the Bankruptcy Court.  If there are any inconsistencies or conflicts between the terms of this Stipulation and the terms of the Scheduling Order, the Stay Procedures Order or any Supplemental Scheduling Order, the terms of the Scheduling Order, Stay Procedures Order or any Supplemental Scheduling Order shall control.

11.    This Stipulation may, but is not required to, be filed by either Party in the Action and in the Bankruptcy Court.

12.    This Stipulation may be executed in counterparts, any of which may be transmitted by facsimile or e-mail transmission, and each of which shall be deemed an original.

DATED:  December 23, 2014

Respectfully submitted,

/s/ Scott I. Davidson
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendants General Motors LLC*

DATED:  December __, 2014

_____
Kurt D. Mitchell (PA ID No. 205917)
KDM Law Firm PLLC
106 S. Armenia Ave.
Tampa, FL 33609
Telephone: 941-465-9253
kmitchell@hoglaw.com

*Attorney for Plaintiffs*

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December __, 2014, a copy of the forgoing **STIPULATION STAYING ACTION** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.


DATED:        December __, 2014                _____