**Hearing Date and Time:  February 4, 2015 at 9:45 a.m. (Eastern)**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Daniel H. Golden
Deborah J. Newman
Jamison A. Diehl
Naomi Moss

*Attorneys for the Participating Unitholders*

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone:  (212) 351-4000
Facsimile:  (212) 351-6391
Matthew J. Williams
Lisa H. Rubin
Keith Martorana

*Attorneys for Wilmington Trust Company, as*
*Trustee for and Administrator of the Motors*
*Liquidation Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------x

**THE PARTICIPATING UNITHOLDERS' AND GUC TRUST**
**ADMINISTRATOR'S REPLY MEMORANDUM OF LAW**
**<u>RESPECTING THE EQUITABLE MOOTNESS THRESHOLD ISSUE</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.....................................................................................................1

ARGUMENT ................................................................................................................................4

I.     PLAINTIFFS' CLAIMS ARE EQUITABLY MOOT AS AGAINST THE GUC
TRUST BECAUSE PLAINTIFFS CANNOT SATISFY ANY OF THE
*CHATEAUGAY* FACTORS ...............................................................................................4

     A.    Plaintiffs Have Not Diligently Pursued Claims Against The GUC Trust ...............4

     B.    Plaintiffs Have Not Provided Notice Of Their Claims To Affected Third
Parties.......................................................................................................................8

     C.    The Court Cannot Equitably Fashion Relief For Plaintiffs Out Of GUC
Trust Assets ...........................................................................................................10

     D.    Allowing Plaintiffs To File Their Claims Against The GUC Trust Would
Unravel Intricate Transactions And Create An Unmanageable,
Uncontrollable Situation For The Court ................................................................15

II.    THE DOCTRINE OF EQUITABLE MOOTNESS BARS PLAINTIFFS'
CLAIMS AGAINST THE GUC TRUST EVEN IF A PROCEDURAL DUE
PROCESS VIOLATION HAS OCCURRED ...................................................................17

III.   THE EQUITABLE MOOTNESS THRESHOLD ISSUE IS RIPE FOR
ADJUDICATION .............................................................................................................18

CONCLUSION...........................................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.)*,
  772 F.3d 102 (2d Cir. 2014)......................................................1, 2, 4, 5, 8, 10, 12, 17

*Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.)*,
  Nos. 12 Civ. 7714, 12 Civ. 7715, 13 Civ. 0080, 2013 U.S. Dist. LEXIS 77740
  (S.D.N.Y. May 22, 2013)........................................................................4, 8, 10, 12

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
  428 B.R. 43 (S.D.N.Y. 2010).........................................................................7, 18

*Compania Internacional Financiera S.A. v. Calpine Corp. (In re Calpine Corp.)*,
  390 B.R. 508 (S.D.N.Y. 2008), *aff'd*, 354 F. Appx. 479 (2d Cir. 2009) .....................8, 10, 12

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*,
  416 F.3d 136 (2d Cir. 2005).............................................................................10

*Drawbridge Special Opportunities Fund, L.P. v. Shawnee Hills, Inc. (In re Shawnee Hills, Inc.)*,
  125 F. Appx. 466 (4th Cir. 2005).......................................................................17

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  411 F.3d 384 (2d Cir. 2005).............................................................................19

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*,
  10 F.3d 944 (2d Cir. 1993)...................................................................1, 8, 10, 15, 16

*In re Superior Offshore Int'l, Inc.*,
  591 F.3d 350 (5th Cir. 2009) ...........................................................................16

*In re Semcrude, L.P.*,
  728 F.3d 314 (3rd Cir. 2013) ...........................................................................16

*In re Thomson McKinnon Securities Inc.*,
  130 B.R. 717 (S.D.N.Y. 1991).............................................................................6

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270 (1941) ....................................................................................19

*Morgenstein v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
  462 B.R. 492 (Bankr. S.D.N.Y. 2012)...........................................................3, 11, 13, 15, 16

*Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*,
   677 F.3d 869 (9th Cir. 2012) .......................................................................................6, 15, 16

*O'Connor v. Pan Am Corp. (In re Pan Am Corp.)*,
   No. 98CIV7838RDCLE, 2000 WL 254010 (S.D.N.Y. Mar. 7, 2000), *aff'd*, 5 F. Appx.
   48 (2d Cir. 2001)..................................................................................................................4, 7

*Parker v. Motor Liquidation Co. (In re Motors Liquidation Co.)*,
   430 B.R. 65 (S.D.N.Y. 2010)....................................................................................................15

*Polycel Structural Foam, Inc. v. Pool Builders Supply of the Carolinas, Inc. (In re
   Polycel Liquidation, Inc.)*,
   No. 06-2183 (MLC), 2007 WL 77336 (D.N.J. 2007)...............................................................18

*R2 Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns, Inc.)*,
   691 F.3d 476 (2d Cir. 2012) ....................................................................................................16

*Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
   600 F.3d 135 (2d. Cir. 2010)....................................................................................................18

*Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*,
   652 F.2d 793 (9th Cir. 1981)  ..................................................................................................16

*United States v. Broadcast Music, Inc.*,
   275 F.3d 168 (2d Cir. 2001).....................................................................................................19

*Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*,
   326 B.R. 497 (S.D.N.Y. 2005)............................................................................................10, 12

*Varde Invs. Partners, L.P. v. Comair, Inc. (In re Delta Airlines, Inc.)*
   386 B.R. 518 (Bankr. S.D.N.Y. 2008) .......................................................................................4

## STATUTES

11 U.S.C. § 101 *et seq*...............................................................................................................16

11 U.S.C. § 1123(a)(4)...............................................................................................................11

Pursuant to the Scheduling Order, the Participating Unitholders and GUC Trust Administrator[1] hereby submit this reply memorandum of law in opposition to *Designated Counsel's Response to the Participating Unitholders' and GUC Trust Administrator's Opening Memorandum of Law Respecting the Equitable Mootness Threshold Issue* (Docket No. 13029) (the "**Pl. Br.**") and *Response by General Motors LLC Regarding the Equitable Mootness Threshold Issue* (Docket No. 13024) (the "**New GM Br.**"), and in further support of their *Opening Memorandum of Law respecting the Equitable Mootness Threshold Issue* (Docket No. 12983) (the "**Opening Brief**").[2]

## PRELIMINARY STATEMENT

1.      The law in this Circuit is clear.  Where, as here, a plan of liquidation has been substantially consummated, a party seeking relief that materially modifies the terms of that plan must satisfy ***all*** of the factors articulated in *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)* in order to overcome the presumption that its claim is equitably moot.[3]  10 F.3d 944, 952-53 (2d Cir. 1993) ("***Chateaugay II***"); *see also BGI III,* 772 F.3d at 108.  Plaintiffs cannot satisfy ***any***, let alone ***all***, of these factors.

2.      The Second Circuit's recent decision in *BGI III* is highly instructive.  In *BGI III,* a group of unredeemed gift card holders argued that they had received insufficient notice of the bar date, and filed a motion for class certification and to file late claims against a liquidating trust. *Id*. at 106.  The gift card holders appealed the bankruptcy court's decision denying their motion,

---

[1]    Notwithstanding anything to the contrary set forth herein, the GUC Trust Administrator takes no position with respect to any of the factual assertions or arguments set forth herein, in the Opening Brief, or in the *Declaration of Deborah J. Newman* (Docket No. 12984) (the "**Newman Decl.**") filed in support of the Opening Brief regarding the historical trading levels of GUC Trust Units and any related secondary market activity.

[2]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Opening Brief.

[3]    As set forth in the Opening Brief, the second *Chateaugay* Factor does not apply here, given that the Debtors have liquidated rather than reorganized.  *See, e.g., Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.*), 772 F.3d 102, 110 n.15 (2d Cir. 2014) ("***BGI III***").

and the district court dismissed the appeal as equitably moot.  *Id*. at 106-107.  The Second

Circuit affirmed the dismissal, finding that the gift card holders had "failed to satisfy at least the

fourth and fifth *Chateaugay* Factors," which require, respectively, that a party seeking to

overcome the presumption of equitable mootness must demonstrate that it has provided actual

notice of its claims to all parties that may be adversely affected by them, and that it has pursued

its claims with diligence.  *Id*. at 110.  Specifically, the Second Circuit found that the gift card

holders had not provided notice of their appeal to general unsecured creditors who could be

stripped of their recoveries if the proposed class was certified, and that "the fact that no stay was

sought by Appellants until almost a year after they entered the bankruptcy litigation . . .

indicate[d] the lack of diligence with which [they] moved."  *Id*.  The court also found

"persuasive" the district court's ruling that the gift card holders had failed to satisfy the third

*Chateaugay* Factor—that the relief that they sought would not unravel complex transactions

undertaken after the plan was consummated—because "allowing Appellants to file late claims

and certifying a class of gift card holders would have 'a disastrous effect' on the remainder of the

liquidated estate and distributions under the Plan."  *Id*. at 110 n.15.

3.      The facts here are strikingly similar to those in *BGI III*, and present an even

stronger case for equitable mootness.  As in *BGI III*, almost a year has passed since Plaintiffs

became aware of their claims, and yet they have neither sought a stay of trust distributions, nor

sought to assert claims against the GUC Trust.  Similarly, Plaintiffs have done nothing to provide

actual notice of their claims to GUC Trust Beneficiaries whose recoveries could be drastically

reduced, or completely eviscerated, if Plaintiffs are permitted to proceed against the GUC Trust.

And permitting Plaintiffs to file their claims against the GUC Trust would require the Court to

materially modify the GUC Trust Agreement, Plan, and Confirmation Agreement, to expand the

definition of "GUC Trust Beneficiaries" to include Plaintiffs and their alleged "multiple billions

of dollars" of claims.  *See* Nov. 4 Letter (as defined below) at 2.  Such a material modification

would require the Court to revoke the Plan in its entirety, and would severely prejudice

Unitholders that have bought or held GUC Trust Units over the last two-plus years based on their

understanding of the claims and expenses for which the GUC Trust could be liable, as well as

other GUC Trust Beneficiaries whose recoveries could be reduced or delayed by Plaintiffs'

claims.  *See* Plan § 12.9; *see also Morgenstein v. Motors Liquidation Co. (In re Motors

Liquidation Co.)*, 462 B.R. 492, 509 (Bankr. S.D.N.Y. 2012) ("***Morgenstein***").

4.       Both Plaintiffs and New GM fail to distinguish *BGI III* in any way, or to explain

why it is not dispositive of the Equitable Mootness Threshold Issue.  Instead, Plaintiffs argue that

equitable mootness does not apply where there has been a procedural due process violation in the

form of insufficient notice, and both Plaintiffs and New GM argue that the equitable mootness

issue is not ripe for adjudication.  *See* New GM Br. at 7; Pl. Br. at 17.  Plaintiffs' due process

argument is both unsupported by the case law they cite and expressly contradicted by *BGI III*,

where—like Plaintiffs—the gift card holders argued that they had received insufficient notice in

the bankruptcy proceeding.  Further, Plaintiffs agree that any due process violation must be

remedied by *New GM*—not the GUC Trust.  The ripeness argument also fails, as Plaintiffs have

demanded that the GUC Trust establish reserves to fund their claims, and New GM has

repeatedly alleged that if Plaintiffs are to have any remedy, it should come from the GUC Trust.

*See* Nov. 4 Letter (as defined below) at 2; New GM Br. at 4.  Thus, there is a real and substantial

controversy between Plaintiffs and New GM, on the one hand, and the GUC Trust Administrator

and Participating Unitholders, on the other, as to whether Plaintiffs may pursue claims against

the GUC Trust.  *See infra* ¶¶ 30-32.  Moreover, this Court has already stated that "dealing with

3

some issues without dealing with all of them is fundamentally unfair," and that the Threshold

Issues should not be considered piecemeal.  *See* Transcript of Hearing, *In re Motors Liquidation*

*Co.*, August 18, 2014 (the "**Aug. 18 Transcript**") at 66:19-20 and 67:14-18.[4]  Thus, as the Court

has acknowledged, the Equitable Mootness Threshold Issue should be decided now, so that all

parties have certainty respecting their rights going forward.

## ARGUMENT

I.    **PLAINTIFFS' CLAIMS ARE EQUITABLY MOOT AS AGAINST THE GUC TRUST BECAUSE PLAINTIFFS CANNOT SATISFY ANY OF THE *CHATEAUGAY* FACTORS**

   A.    ***Plaintiffs Have Not Diligently Pursued Claims Against The GUC Trust***

   5.    The fifth *Chateaugay* Factor, which requires Plaintiffs to "'pursue their claims

with all diligence,'" presents what may be Plaintiffs' most glaring failure to overcome the

presumption of equitable mootness.  *BGI III*, 772 F.3d at 110 (quoting *Beeman v. BGI Creditors'*

*Liquidating Trust (In re BGI, Inc.)*, Nos. 12 Civ. 7714, 12 Civ. 7715, 13 Civ. 0080, 2013 U.S.

Dist. LEXIS 77740, at *32 (S.D.N.Y. May 22, 2013) ("*BGI II*")).  In *BGI III,* the Second Circuit

held that where a party seeks to assert claims against a liquidating trust, its failure to seek a stay

of the trust's distributions constitutes a failure to satisfy this factor.  *Id.* at 110-11; *see also*

*O'Connor v. Pan Am Corp. (In re Pan Am Corp.)*, No. 98CIV7838RDCLE, 2000 WL 254010, at

*4 (S.D.N.Y. Mar. 7, 2000), *aff'd*, 5 F. Appx. 48 (2d Cir. 2001) (appellant failed to satisfy the

fifth *Chateaugay* Factor where she "never sought a stay of execution of the distribution order" or

"notif[ied] any of the holders of administrative claims of her intent to challenge" it).  Plaintiffs'

decision not to seek to assert claims against the GUC Trust also demonstrates that they have not

"pursu[ed] their claims with all diligence."  *BGI III*, 772 F.3d at 110; *see also Varde Invs.*

*Partners, L.P. v. Comair, Inc. (In re Delta Airlines, Inc.)*, 386 B.R. 518, 533 (Bankr. S.D.N.Y.

---

[4]    A copy of the relevant excerpts from the Aug. 18 Transcript is attached hereto as **Exhibit A**.

2008) ("it behooved the plaintiffs to move forward with a great sense of urgency. The plaintiffs'

delay in bringing this suit … compel[s] the conclusion that the plaintiffs' cause of action is

equitably moot.").

6.    Plaintiffs concede that they have not sought to assert claims against the GUC

Trust or obtain a stay of GUC Trust distributions, but argue that the fifth *Chateaugay* Factor is

inapplicable here, because "Plaintiffs were not provided constitutionally adequate notice [of the]

Sale Hearing, the Bar Date, and Confirmation Hearing," or "held 'future claims' that could not

be discharged by the Old GM bankruptcy." Pl. Br. at 27. But Plaintiffs fail to distinguish the

binding precedent of *BGI III*, where potential claims were barred on equitable mootness grounds

despite claimants' assertions that their due process rights were violated because they had

received insufficient notice of the bar date in the bankruptcy proceedings. *See BGI III*, 772 F.3d

at 110. Plaintiffs' argument also badly misconstrues the purpose and application of the fifth

*Chateaugay* Factor, which is designed to ensure that a movant seeking modification of a

substantially consummated plan takes all possible steps to mitigate harm that innocent third

parties may suffer as a result of the requested modification.

7.    Plaintiffs have failed to take any such steps here. Indeed, while Plaintiffs may not

have been able to diligently pursue their claims or seek a stay of GUC Trust distributions before

they became aware of their potential claims almost a year ago, they offer no explanation why

they have not done so since that time. During this intervening period, the inequity that would

result if Plaintiffs were permitted to pursue their claims against the GUC Trust now has been

exacerbated, as Unitholders have continued to trade GUC Trust Units without actual notice from

Plaintiffs that they intend to assert claims against the GUC Trust.

8.      In this regard, Plaintiffs' reliance on *Motor Vehicle Cas. Co. v. Thorpe Insulation Co., (In re Thorpe Insulation Co.)*, 677 F.3d 869 (9th Cir. 2012) ("***Thorpe***") is significantly misplaced.  In *Thorpe*, the Ninth Circuit held that an appellant's appeal of a plan that had not been substantially consummated was not barred by equitable mootness where, *inter alia*, the party sought but failed to obtain a stay.  *Id*. at 880.  The court also held, however, that where, as here, a party ***fails*** to seek a stay, it "has not fully pursued its rights," and thus cannot satisfy the fifth *Chateaugay* Factor.  *Id*. at 881.  Accordingly, even under the holding in *Thorpe*, Plaintiffs, who affirmatively determined not to seek a stay of distributions or pursue claims against the GUC Trust, cannot overcome the presumption of equitable mootness.  *Id.*

9.      *In re Thomson McKinnon Securities Inc.*, 130 B.R. 717 (S.D.N.Y. 1991) ("***Thomson McKinnon***") is also unpersuasive.[5]  Pl. Br. at 27.  In *Thomson McKinnon*, no party raised, and the court did not address, whether the doctrine of equitable mootness barred the creditor-movant there from asserting a late claim of approximately $10,000.  Indeed, there is no indication in the decision that the case involved a substantially consummated plan of reorganization or liquidation.  Moreover, given the minimal amount of the late claim sought to be asserted, it is highly unlikely that permitting the movant to file the claim would have resulted in a material modification to any plan.  Of course, the same cannot be said here, where it is undisputed that the Plan has been substantially consummated, and Plaintiffs allege that their claims could "be in the multiple billions of dollars."  *See* Exhibit A to Pl. Br. (the "**Nov. 4 Letter**").

---

[5]     Ironically, Plaintiffs criticize the Opening Brief's reliance on *Thomson McKinnon* for the proposition that liquidations should be administered expeditiously because the case "does not involve equitable mootness," but then proceed to cite to it in arguing that the fifth *Chateaugay* Factor should not apply to the equitable mootness analysis here.  *Compare* Pl. Br. at 18, n.17 *to* 27.

10.    Equally unavailing is Plaintiffs' alternative assertion that if the fifth *Chateaugay* Factor ***does*** apply, they have satisfied it by (i) filing lawsuits against ***New GM*** and contesting ***New GM's*** Motions to Enforce, and (ii) participating in Court conferences respecting the Threshold Issues that have occurred in connection with ***New GM's*** Motions to Enforce.  Pl. Br. at 28.  The fact that Plaintiffs have acted diligently to pursue claims ***against New GM,*** by filing claims against it, opposing the Motions to Enforce, and participating in related hearings, does nothing to mitigate the prejudice that would result if Plaintiffs were permitted to pursue claims ***against the GUC Trust***.

11.    Additionally, Plaintiffs' Nov. 4 Letter to the GUC Trust Administrator and Participating Unitholders alleging "that Plaintiffs [a]re 'known potential contingent beneficiaries of the GUC Trust,' and demand[ing] that the GUC Trust establish reserves for Plaintiffs' claims before making additional distributions" (Pl. Br. at 28), falls far short of the diligence necessary to satisfy the fifth *Chateaugay* Factor.  As the GUC Trust Administrator explained to Plaintiffs by letter the next day,[6] the GUC Trust Agreement required it to make the pending distribution, and it would not establish reserves for Plaintiffs' claims unless Plaintiffs sought judicial relief.  *See* Nov. 5 Response Letter at 1.  Plaintiffs' "deliberate failure" to seek such judicial relief shows that they have failed to "pursue their claims with all diligence," and "create[s] a situation rendering it inequitable" for them to obtain relief against the GUC Trust at this late date.  *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 62, n. 30 (S.D.N.Y. 2010) ("emphasiz[ing] that the Second Circuit has made it clear that an appellant is obligated to protect its ligation position by seeking a stay."); *In re Pan Am*, 2000 WL 254010 at *4 (finding that

---

6    The GUC Trust Administrator's letter dated November 5, 2014 was attached to Pl. Br. as Exhibit B (the "**Nov. 5 Response Letter**").

appellant failed to satisfy the fifth *Chateaugay* Factor where she "never sought a stay of execution of the distribution order").

> **B.** ***Plaintiffs Have Not Provided Notice Of Their Claims To Affected Third Parties***

12.    The fourth *Chateaugay* Factor—which requires Plaintiffs to show that the parties that would be adversely affected by the relief Plaintiffs are seeking have actual notice of their claims and an opportunity to participate in related proceedings—also presents a clear-cut failure by Plaintiffs. *See Chateaugay II*, 10 F.3d at 952-53. As Plaintiffs concede, the GUC Trust's future distributions may be "delay[ed and/or dilute[d]" by their claims (Pl. Br. at 25), which would adversely affect, at least, (i) the holders of Disputed Claims, who will be entitled to receive distributions from the GUC Trust if their claims are allowed, (ii) the JPM Defendants, who will be entitled to receive distributions from the GUC Trust if they are ultimately required to disgorge amounts paid to them by the Debtors, (iii) the holders of Allowed Claims who have not yet received distributions, and (iv) Unitholders that have purchased or held GUC Trust Units based on the publicly disclosed amounts of potential GUC Trust Liabilities.

13.    Plaintiffs must show that all of these potentially affected parties were provided with ***actual*** notice of these proceedings, as "[a]n assertion by [Plaintiffs] that [potentially affected parties] ***may*** have had constructive or actual notice is not sufficient to satisfy their burden of establishing that such [parties] had notice of" these proceedings and an opportunity to participate herein. *See Compania Internacional Financiera S.A. v. Calpine Corp. (In re Calpine Corp.)*, 390 B.R. 508**,** 522 (S.D.N.Y. 2008), *aff'd*, 354 F. Appx. 479 (2d Cir. 2009) (emphasis added). Plaintiffs do not even come close to satisfying their burden. *See BGI III*, 772 F.3d at 110 (affirming dismissal of appeal as equitably moot because "[a]ppellants did not establish that the general unsecured creditors … received notice of their appeal …"); *BGI II*, 2013 U.S. Dist.

LEXIS 77740 at \*30-31 (holding that an assumption that "the Trustee, counsel for the Trust, or the Official Committee of Unsecured Creditors notified the unsecured creditor class of the appeal" did not satisfy the fourth *Chateaugay* Factor). Rather, Plaintiffs argue a litany of irrelevant facts and erroneous assertions that have no bearing on the fourth *Chateaugay* Factor. For example, Plaintiffs argue that "the ***Participating Unitholders***," who consist of only a subset of Unitholders, *"and **GUC Trust Administrator**,*" have "adequate notice of these proceedings and have actively participated on all fronts"; that Plaintiffs sent the ***GUC Trust Administrator and Participating Unitholders*** the Nov. 4 Letter demanding that the GUC Trust establish reserves for Plaintiffs' claims before making any additional distributions; and that "the GUC Trust Administrator has consistently acknowledged the risk of Plaintiffs' claims on the GUC Trust and GUC Trust Assets."[7] Pl. Br. at 25-26 (emphasis added). But the Participating Unitholders and GUC Trust Administrator represent only a small portion of the numerous parties who may be adversely affected if Plaintiffs assert claims against the GUC Trust and who are therefore entitled to actual notice. And Plaintiffs cite no case law or other authority supporting their assertion that the GUC Trust Recall Disclosures satisfy *their* burden of delivering ***actual*** notice to these parties.

14. Plaintiffs also argue that "[s]ince the May 2, 2014 Status Conference," the Threshold Issues have included a determination of whether Plaintiffs' claims are claims against

---

[7] As discussed further below, since the filing of New GM's first Motion to Enforce, the GUC Trust Administrator has complied with SEC-mandated disclosures in its quarterly Form 10-Q and annual Form 10-K filings. Among other things, those disclosures (the "**GUC Trust Recall Disclosures**") have described the status and substance of the Motions to Enforce proceedings and have apprised the public of associated risk factors. *See* Form 8-K Current Report for Motors Liquidation Company GUC Trust filed May 19, 2014 at 1-2; *see also* Form 10-K Annual Report for General Motors Liquidation Company GUC Trust, filed May 22, 2014 at 21-22; Form 10-Q Quarterly Report for General Motors Liquidation Company GUC Trust, filed November 12, 2014 at 41-42 (the "**Nov. 12 Form 10-Q**"). Plaintiffs have not–and cannot–provide any support for the proposition that the GUC Trust's compliance with required regulatory disclosures satisfies Plaintiffs' own burden of providing actual notice of claims they may seek to assert to all parties that would be adversely affected, as required by applicable Second Circuit precedent.

Old GM and/or the GUC Trust, and whether a remedy can or should be fashioned against Old

GM and/or the GUC Trust if Plaintiffs' procedural due process rights have been violated, and

that "the Threshold Issues have consistently carved out from the slate of Threshold Issues

whether Plaintiffs claims are timely and/or meritorious against the Old GM bankruptcy estate

and/or the GUC Trust."  Pl. Br. at 25-26.  Again, however, these points fail to demonstrate the

***actual notice*** to ***all affected parties*** that is required by the fourth *Chateaugay* Factor.  *See*

*Calpine*, 390 B.R. at 522; *BGI II,* 2013 U.S. Dist. LEXIS 77740, at \*30-31; *BGI III*, 772 F.3d at

110.

15.     Plaintiffs also argue, as they do with the fifth *Chateaugay* Factor, that the fourth

*Chateaugay* Factor is "inapplicable," this time because "Plaintiffs are not appealing any relief."

Pl. Br. at 25.  Plainly, however, the procedural posture in which the Threshold Issues arise has no

bearing on Plaintiffs' obligation to provide actual notice and an opportunity to appear to all

parties who may be adversely affected if Plaintiffs are permitted to proceed against the GUC

Trust.

**C.      *The Court Cannot Equitably Fashion Relief For Plaintiffs Out Of GUC Trust Assets***

16.     Turning back to the first *Chateaugay* Factor, Plaintiffs also fail to show that the

Court will be able to equitably fashion effective relief for them in the event that they prevail on

their claims.  *See Chateaugay II*, 10 F.3d at 952-53; *Upstream Energy Servs. v. Enron Corp.* (*In*

*re Enron Corp.*), 326 B.R. 497, 502 (S.D.N.Y. 2005); *see also Deutsche Bank AG v. Metromedia*

*Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 145 (2d Cir. 2005)

("[T]he question is not solely whether we *can* provide relief . . .  but also whether we *should*

provide such relief in light of fairness concerns.") (emphasis in original) (citation omitted); *In re*

*Calpine*, 390 B.R. at 518-520.  Even if Plaintiffs concede (as they appear to) that they cannot

seek disgorgement of GUC Trust distributions that have already been made, it would still be

inequitable to allow them to recover from the remaining GUC Trust Assets.  These assets have

been contractually allocated to the holders of Disputed Claims, JPM Defendants, and holders of

Allowed Claims who have not yet received a distribution, or to fund GUC Trust costs and

expenses.[8]  *See* Stipulated Facts at ¶ 29; *see also* GUC Trust Agreement at 4; Plan § 12.14.  To

delay or reduce the recoveries of these GUC Trust Beneficiaries now (potentially drastically)

would be highly inequitable.  And to the extent such relief would result in holders of Disputed

Claims receiving different treatment than other general unsecured creditors, it would violate

section 1123(a)(4) of the Bankruptcy Code, requiring that all creditors of the same class receive

the same treatment unless they agree otherwise.  11 U.S.C. § 1123(a)(4).

17.    Moreover, in the event that there are excess GUC Trust Assets beyond these

contractual obligations as a result of "disputed claims that are ultimately disallowed" or

"reserves for taxes or overhead that are not spent by the GUC Trust," (New GM Br. at 6, *see also*

Pl. Br. at 20), equity demands that they be distributed to Unitholders.  Approximately 100 million

GUC Trust Units, with an aggregate trading value of $2.1 billion (based on daily closing prices),

have been bought and sold from June 2012 through November 2014.  *See* Schedule of GUC

Trust Unit Trading Information.[9]  As the Court has correctly surmised, and as the analyst reports

respecting the GUC Trust Units demonstrate, Unitholders have bought and sold GUC Trust Units

"based on estimates of Plan recoveries premised on the claims mix," and, in particular, based on

estimates of the aggregate amounts of remaining Disputed Claims and GUC Trust costs and

liabilities.  *Morgenstein*, 462 B.R. at 509; *see also CRT Capital Group, Research Update*, dated

---

[8]    As noted in the Pl. Br., the GUC Trust has approximately $770 million of GUC Trust Assets.  Pl. Br. at 4.  Of those assets, approximately $425 million has been reserved on account of the JPM Claims and Disputed General Unsecured Claims.  *See* Nov. 12 Form 10-Q at 30.  The remaining assets have primarily been reserved for GUC Trust administrative and reporting costs and potential tax liabilities.  *See id.*

[9]    A true and correct copy of this document is attached to the Newman Decl. as **Exhibit FF**.

October 22, 2013 (where investment analyst raised its valuation of the GUC Trust Units "to reflect downward revisions to [its] estimates for both claims … and the expected costs of liquidation …").[10]  If Plaintiffs are permitted to file claims against the GUC Trust, the pool of Disputed Claims could be increased by claims "in the multiple billions of dollars," (Nov. 4 Letter at 2), and additional distributions to Unitholders may be eviscerated.  Further, to the extent any additional distributions are to be made, they would be delayed pending both the resolution of Plaintiffs' claims, and a determination that no additional claims are forthcoming.[11]

18.    This is exactly the type of injustice that equitable mootness is designed to prevent.  *See, e.g., BGI II*, 2013 U.S. Dist. LEXIS 77740, at *25-26 (finding appeals equitably moot because, *inter alia*, appellants' claims "would have a *disastrous effect* on the remainder of the Debtors' estates and the final distributions of the Plan" and "would *drastically change* the estimated recovery for unsecured creditors and *warrant a modification of the Plan and a re-solicitation of votes*.") (emphasis added); *see also BGI III*, 772 F.3d at 110 n. 15 (referring to this reasoning as "persuasive[e]"); *In re Calpine*, 390 B.R. at 520 (finding that appellant had failed to satisfy the first *Chateaugay* Factor based, in part, on the court's view that "modifying the TEV in a consummated plan of reorganization that so many parties have relied upon in making at least some potentially irrevocable decisions would be inequitable."); *In re Enron,* 326 B.R. at 504 (holding that it would be "manifestly inequitable" to modify **even a single provision** of a

---

[10]    A true and correct copy of this document is attached as **Exhibit A** to the Newman Decl.

[11]    New GM's assertion that these additional claims would not preclude the GUC Trust from making additional distributions is wrong.  *See* New GM Br. at 6-7.  Section 5.5 of the GUC Trust Agreement requires the GUC Trust to retain "(a) sufficient GUC Trust Distributable Assets as the GUC Trust Administrator shall determine, with the approval of the GUC Trust Monitor, as would be distributable (I) to all holders of Disputed General Unsecured Claims at the time outstanding as if all Disputed General Unsecured Claims were allowed at the Maximum Amount . . . "  *See* GUC Trust Agreement § 5.5.  Thus, if the Court were to allow Plaintiffs to file late claims against the GUC Trust, Plaintiffs would become "holders of Disputed General Unsecured Claims," and the GUC Trust would be required to retain GUC Trust Assets on account of such claims.  New GM's assertion that the GUC Trust's November distribution demonstrates otherwise is disingenuous, as no such requirement currently exists, given that Plaintiffs have not even sought to assert claims against the GUC Trust.  *See* New GM Br. at 7.

substantially consummated plan "that so many parties have relied upon in making various,

potentially irrevocable, decisions."). Accordingly, as the Court observed even before the trading

data was before it, "[i]t is very possible that . . . all of the trading that took place after entry of the

Confirmation Order (in what probably was in reliance on the Plan and Confirmation Order as

then entered, and the related Disclosure Statement as then approved) *by itself* would support a

finding of equitable mootness." *Morgenstein*, 462 B.R. at 509 (emphasis added).

19.    Plaintiffs argue, however, that there is nothing inequitable about diverting

Unitholders' recoveries to Plaintiffs, because "Unitholders, as sophisticated investors, are well

aware of the risks of late filed claims that are subsequently allowed in bankruptcy proceedings."

Pl. Br. at 21. Plaintiffs argue further that this is "particularly so" here, given that (i) "the Late

Filed Claims Order explicitly contemplates the potential for additional late filed claims,"

(ii) "GUC Trust Units represent only a contingent right to recovery," and (iii) "the GUC Trust

Administrator has repeatedly identified the risks of Plaintiffs' claims on future recoveries of

Unitholders" in its publicly-filed reports. *Id.*

20.    These arguments are unavailing. The Plan provides that it "may be modified after

confirmation" only "so long as such action does not materially adversely affect the treatment of

holders of Claims and Interests." Plan § 12.9. Although the GUC Trust Units represent only "a

contingent right to payment," based on the terms of the GUC Trust Agreement, Plan, and

Confirmation Order, such payment is contingent only on potential liabilities that were identified

in the GUC Trust Agreement and the Plan. And the Plan and Confirmation Order are clear: the

only parties that may receive GUC Trust assets (other than those to whom the GUC Trust is

liable for its costs and expenses) are those that held Allowed Claims or Disputed Claims (to the

extent allowed) *as of the Effective Date*; those that are or may be subject to disgorgement

pursuant to an avoidance action brought on behalf of the Debtors' creditors (to the extent that

such disgorgement actually occurs); or those that hold units issued by the GUC Trust.

Expanding that universe to include holders of late claims in the "multiple billions of dollars"

would result in a material, and impermissible, modification of the Plan.  *See* Nov. 4 Letter at 2;

Plan § 12.9.

21.    Further, while the Late Claims Order contemplates the possibility that the Court

may allow late claims following substantial consummation of the Plan, the only late claims that

have been so allowed have had only an immaterial impact on GUC Trust Beneficiaries.  *See* New

GM Br. at 6 (noting that claims totaling approximately $3.2 million have been allowed after the

Effective Date).  There certainly is nothing in the Late Claims Order suggesting that the Court

would, or could, expand the definition of "GUC Trust Beneficiaries" to include holders of late

claims in the "multiple billions of dollars."  Nov. 4 Letter at 2.  Indeed, the Participating

Unitholders and GUC Trust Administrator are unaware of any bankruptcy case in which late

claims of this magnitude have been allowed following substantial consummation, and highly

doubt that any such case exists.

22.    Plaintiffs' assertion that their claims could be satisfied by New GM dividends

paid to the GUC Trust is also highly unrealistic.  Since the Effective Date, the GUC Trust has

received dividends on New GM Common Stock aggregating only approximately $13.8 million,

and approximately $4.3 million of these dividends have already been distributed by the GUC

Trust.  *See* Form 10-Q Quarterly Report for the General Motors Liquidation Company GUC

Trust filed September 30, 2014 at 6.  Plainly, these dividends are insufficient to fund the

"multiple billions of dollars" Plaintiffs are seeking.  *See* Nov. 4 Letter.

14

23.     Finally, there simply is no basis for Plaintiffs' conclusory assertion that the Court

can ameliorate the inequities that will result if Plaintiffs are permitted to proceed against the

GUC Trust by "requir[ing] New GM to contribute more money or New GM Common Stock to

the GUC Trust."  Pl. Br. at 25.  Plaintiffs fail to articulate the legal basis on which they believe

the Court could do so, but for their citation to *Thorpe*, 677 F.3d at 882.  The *Thorpe* case is

distinguishable, however, in that the plan there had not been substantially consummated, and

expressly provided "that it may be modified after confirmation with consent of the trust advisory

committee and Futures Representative …." *Thorpe* , 677 F.3d at 882.  Here, of course, the Plan

has been substantially consummated, and may not be materially modified without being fully

revoked.  *See* Plan § 12.9; *Morgenstein*, 462 B.R. at 504-505.  Of course, to the extent that the

Plan can be modified to require New GM to establish a fund to be allocated to Plaintiffs' claims,

thus preserving existing GUC Trust Assets for GUC Trust Beneficiaries, the GUC Trust

Administrator and Participating Unitholders have no objection.

**D.      *Allowing Plaintiffs To File Their Claims Against The GUC Trust Would
        Unravel Intricate Transactions And Create An Unmanageable,
        Uncontrollable Situation For The Court***

24.     The third and final *Chateaugay* Factor requires Plaintiffs to show that allowing

their claims against the GUC Trust would "not unravel intricate transactions so as to 'knock the

props out from under the authorization for every transaction that has taken place' and create an

unmanageable, uncontrollable situation for the Bankruptcy Court.'"  *Parker v. Motor Liquidation

Co. (In re Motors Liquidation Co.)*, 430 B.R. 65, 80 (S.D.N.Y. 2010) (*citing Chateaugay II*, 10

F.3d at 952-53).  Plaintiffs also fail to satisfy this factor.

25.     As discussed above and in the Opening Brief, expanding the GUC Trust

Agreement's and Plan's definition of GUC Trust Beneficiaries to include holders of late claims

totaling "multiple billions of dollars" would "materially adversely affect the treatment of holders

of Claims and Interests," and require amendment of the GUC Trust Agreement, Plan, and

Confirmation Order. *See* Opening Brief ¶¶ 59-60. As this Court observed in *Morgenstein*,

however, "modification of a contract only in part, without revoking it in whole, raises grave risks

of upsetting the expectations of those who provided the necessary assents," and is not permitted

under the Bankruptcy Code.[12] 462 B.R. at 504. Nor is there any basis, under the Bankruptcy

Code or any other applicable law, for revoking the Plan in its entirety. *See* 11 U.S.C. § 101 *et*

*seq*. Revocation of the Plan, moreover, would clearly "unravel intricate transactions so as to

'knock the props out from under the authorization for every transaction that has taken place,'"

and "'create an unmanageable, uncontrollable situation for the Bankruptcy Court.'" *Chateaugay*

*II*, 10 F.3d at 953 (quoting *Trone v. Roberts Farms, Inc. (In re Roberts Farm, Inc.)*, 652 F.2d 793,

797 (9th Cir. 1981)). Thus, this *Chateaugay* Factor, like the others, mandates a finding of

equitable mootness against Plaintiffs.

---

[12]   Plaintiffs' cite to the cases in footnotes 26 and 27 of their brief in purported support for their assertion that the
Court can fashion remedies for Plaintiffs from the GUC Trust without inequitably impacting Unitholders, and
that alteration of the Plan "in some manner" does not "automatically lead to equitable mootness." These cases,
however, present significantly different facts from those at issue here. For example, as noted above, in *Thorpe*,
the Plan was not yet substantially consummated, and expressly provided that it could be modified. *Thorpe*, 677
F.3d at 882. Moreover, in *In re Superior Offshore Int'l, Inc.*, 591 F.3d 350 (5th Cir. 2009), the court found that
although the appellants were seeking reversal of the confirmation order, their appeals centered only on a lack of
disclosure about the members of a post-confirmation equity committee and how certain classes of creditors
would share in recoveries. Thus, remedies to address these disclosure deficiencies could be crafted "without
completely undoing the Plan." Similarly, in *In re Semcrude, L.P.*, 728 F.3d 314 (3rd Cir. 2013), the amount in
question was less than 0.13% of the amount designated for distribution to similarly situated claimants, and thus
could be awarded to appellant without materially impacting other creditors. Here, however, the Plan has been
substantially consummated, and providing relief for Plaintiffs' claims of "multiple billions of dollars" out of
GUC Trust Assets most assuredly will materially impact Unitholders and unravel the Plan. Finally, *Charter*
contradicts, rather than supports, Plaintiffs' position, as the court there found that an appeal was moot, because
granting appellant's request to strike a release from a settlement agreement "would impact other terms of the
agreement and throw into doubt the viability of the entire Plan." *R2 Invs., LDC v. Charter Commc'ns, Inc. (In
re Charter Commc'ns, Inc.)*, 691 F.3d 476, 485 (2d Cir. 2012).

## II.  THE DOCTRINE OF EQUITABLE MOOTNESS BARS PLAINTIFFS' CLAIMS AGAINST THE GUC TRUST EVEN IF A PROCEDURAL DUE PROCESS VIOLATION HAS OCCURRED

26.    Unable to credibly argue that they satisfy the *Chateaugay* factors, Plaintiffs also assert that the equitable mootness doctrine does not apply "where, as here, a party was denied a meaningful opportunity to participate in the debtor's bankruptcy proceedings" and there has been a procedural due process violation.[13]  Pl. Br. at 18-19.  Plaintiffs' assertion, at minimum, is not supported by the cases they cite for it, and is belied by cases in which claims against a debtor's estate were dismissed as equitably moot notwithstanding an argument of insufficient notice or a procedural due process violation.  *See, e.g., BGI III,* 772 F.3d at 111 (dismissing appeal as equitably moot notwithstanding appellants' argument that "they had not received adequate notice of the bankruptcy proceedings or the Bar Date."); *Drawbridge Special Opportunities Fund, L.P. v. Shawnee Hills, Inc. (In re Shawnee Hills, Inc.)*, 125 F. Appx. 466, 469-70 (4th Cir. 2005) (affirming district court's decision to dismiss appeal as equitably moot "[r]ather than address[] the merits of the appellant's due process-based challenge").[14]

---

[13]    Plaintiffs' suggestion that the equitable mootness doctrine does not bar their claims because it has been applied only in the context of "appeals from bankruptcy court orders or actions to revoke an order confirming a substantially consummated plan" is misplaced.  Pl. Br. at 18.  As the Second Circuit recently noted, "the doctrine of equitable mootness has already been accorded broad reach, without apparent ill effect."  *BGI III,* 772 F.3d at 109.  Moreover, permitting Plaintiffs to pursue their claims against the GUC Trust would require a material modification of the Plan and Confirmation Order, which cannot be effectuated without revoking those documents in their entirety.  *See supra* ¶ 25.  Accordingly, Plaintiffs' attempt to assert their claims against the GUC Trust *is* "an action to revoke an order confirming a substantially consummated plan," regardless of the procedural context in which it arises.  *BGI III,* 772 F.3d at 109.

[14]    To the extent that this Court finds that Plaintiffs' due process rights either would be violated in the event that the Sale Order is enforced against them or have already been violated in connection with the Sale Process, the Participating Unitholders and the GUC Trust Administrator respectfully submit that the only appropriate remedy lies against New GM—not the GUC Trust.  *See Response of GUC Trust Administrator and Participating Unitholders to New GM's Opening Brief on Threshold Issues Concerning Its Motions to Enforce the Sale Order and Injunction* (Docket No. 13030) (the "**Threshold Issues Response Brief**") at 33-39.  Plaintiffs do not disagree.  They too have argued vigorously that where, as here, a purchaser "seek[s] to enforce Section 363 orders against persons who did not receive adequate notice consistent with due process," the appropriate remedy is to "simply deny the purchasers their requested relief and refuse to enforce the Section 363 sale order as to the objecting claimant who did not receive due process."  *Designated Counsel's Opposition to New GM's Motions for Enforcement of Sale Order and Injunction* (Docket No. 13025) at 62; *see also id.* at 62–64 & n.71 (collecting cases).

27.    For example, Plaintiffs point to a footnote in *Campbell v. Motors Liquidation Co.*, 428 B.R. at 63, n. 30, explaining, *inter alia*, that "the appellant-insurer in [*In re Johns-Mansville Corp.*] lacked adequate notice of the underlying channeling and settlement orders such that due process concerns rendered mootness and res judicata doctrines inapplicable." 428 B.R. at 63 n. 30 (discussing *Travelers Cas. & Sur. Co. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 600 F.3d 135 (2d. Cir. 2010) ("***Mansville IV***")).  *Mansville IV* is inapplicable here, however, because it addressed an appellant's ability to pursue property that was not part of the debtors' estate.  *See* 600 F.3d at 157.  Similarly, equitable mootness, as addressed in *Polycel Structural Foam, Inc. v. Pool Builders Supply of the Carolinas, Inc. (In re Polycel Liquidation, Inc.)*, has no bearing on the Equitable Mootness Threshold Issue because that case was decided on distinctly different facts involving no claims or even potential claims against a debtor's estate.  No. 06-2183 (MLC), 2007 WL 77336 (D.N.J. 2007) (holding that a sale order "may be void pursuant to Rule 60(b)(4)," thereby allowing a claimant to pursue its claims against the purchaser).

28.    In any event, where, as here, a claimant fails to diligently pursue a stay to minimize the potential impact of the relief it seeks on other parties, fairness considerations weigh against that claimant, notwithstanding any claimed violations of his or her procedural due process rights.  Having sat on their rights for close to a year, Plaintiffs cannot now be heard to argue that due process considerations immunize them from the results of their own inaction.

## III.    THE EQUITABLE MOOTNESS THRESHOLD ISSUE IS RIPE FOR ADJUDICATION

29.    In another effort to divert the Court's focus from the inescapable conclusion that Plaintiffs' claims, as against the GUC Trust, are equitably moot, Plaintiffs and New GM assert that the Equitable Mootness Threshold Issue is not ripe for adjudication.  *See* New GM Br. at 3, 7; Pl. Br. at 17.  This assertion is perplexing given that the Court has already addressed, and

18

rejected, Plaintiffs' request that the Court defer consideration of the Equitable Mootness Threshold Issue until after it has decided the other Threshold Issues.  As the Court held, "dealing with some issues without dealing with all of them is fundamentally unfair."  *See* Aug. 18 Transcript at 66:19-20.  Further, Plaintiffs' concern that the Court should "not [] address the Equitable Threshold Issue" "unless and until" it finds that Plaintiffs' claims or remedies lie against the GUC Trust is misplaced, given the Court's observation that "the chances of [it] deciding some issues without dealing with all of them . . . are remote."  *See* Aug. 18 Transcript at 67:4-7.

30.     In any event, the Equitable Mootness Threshold Issue is unquestionably ripe as a matter of law.  An issue is ripe for judicial resolution "if it presents a real, substantial controversy, not a mere hypothetical issue."  *United States v. Broadcast Music, Inc.*, 275 F.3d 168, 178 (2d Cir. 2001).  In assessing ripeness, a court may consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Id.* Additionally, the standard for ripeness in the context of declaratory judgment actions, which are procedurally similar to the Threshold Issues proceedings here, "is that 'there is a substantial controversy, between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  In making this determination, courts should examine: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Duane Reade*, 411 F.3d at 389.  If either prong is met, the action must be entertained.

31.    All of these considerations show that the Equitable Mootness Threshold Issue is ripe.  Plaintiffs and New GM both assert that Plaintiffs may recover from the GUC Trust, and Plaintiffs have demanded that the GUC Trust establish reserves to fund their claims before making further distributions, to protect against the possibility that Plaintiffs are precluded from pursuing New GM.  *See* Pl. Br. at 3; New GM Br. at 5; Nov. 4 Letter at 2.  Conversely, the GUC Trust Administrator and Participating Unitholders dispute that Plaintiffs may assert claims against the GUC Trust, or that the GUC Trust has any obligation to reserve funds on account of Plaintiffs' claims.  Accordingly, there is a "real, substantial controversy" between Plaintiffs and New GM, on the one side, and the GUC Trust Administrator and Participating Unitholders, on the other, the resolution of which will provide certainty to all parties (as well as the GUC Trust Beneficiaries).  Further, the Court has already ruled that the Threshold Issue should not be considered piecemeal, both for the parties' benefit as well as its own.  *See* Aug. 18 Transcript at 67:14-18.

## CONCLUSION

For the foregoing reasons, and those set forth in the Opening Brief, the Participating

Unitholders and GUC Trust Administrator respectfully request that the Court issue an Order

providing that, if any or all of the claims asserted in connection with the Recalls are or could be

claims against the Old GM bankruptcy estate (and/or the GUC Trust), such claims or the actions

asserting such claims must be disallowed/dismissed on grounds of equitable mootness.

Dated: New York, New York
      January 16, 2015

AKIN GUMP STRAUSS HAUER & FELD LLP

By:   */s/ Daniel H. Golden*
       Daniel H. Golden
       Deborah J. Newman
       Jamison A. Diehl
       Naomi Moss
       One Bryant Park
       New York, NY 10036
       (212) 872-1000 (Telephone)
       (212) 872-1002 (Facsimile)

*Attorneys for the Participating Unitholders*

GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Matthew J. Williams*
       Matthew J. Williams
       Lisa H. Rubin
       Keith Martorana
       200 Park Avenue
       New York, NY 10166-0193
       (212) 351-4000 (Telephone)
       (212) 351-6391 (Facsimile)

*Attorneys for Wilmington Trust Company,
as Trustee for and Administrator of the
Motors Liquidation Company GUC Trust*

**<u>Exhibit A</u>**
**Aug. 18 Transcript**

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4   In the Matter of:

5                                        Chapter 11

6   MOTORS LIQUIDATION COMPANY,          Case No.: 09-50026(REG)

7   et al, f/k/a General Motors          (Jointly Administered)

8   Corp., et al.,

9

10          Debtors.

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  U.S. Bankruptcy Court

14                  One Boling Green

15                  New York, New York

16

17                  August 18, 2014

18                  9:46 AM

19

20

21  B E F O R E :

22  HON ROBERT E. GERBER

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1    Hearing re:  Threshold Issues Letters, filed pursuant to the

2    Supplemental Scheduling Order, Dated July 11, 2014.

3

4    Hearing re:  Motion of General Motors LLC Pursuant to 11

5    U.S.C. § 105 And 363 To Enforce the Sale Order And

6    Injunction ("Motion to Enforce"), filed by General Motors

7    LLC (ECF 12620, 12621).

8

9    Hearing re:  Motion of General Motors LLC Pursuant to 11

10   U.S.C. §§ 105 and 363 to Enforce This Court's July 5, 2009

11   Sale Order And Injunction Against Plaintiffs In Pre-Closing

12   Accident Lawsuits ("Pre-Closing Accident Lawsuits Motion to

13   Enforce"), filed by General Motors LLC (ECF 12807).

14

15   Hearing re:  Motion of General Motors LLC Pursuant to 11

16   U.S.C. §§ 105 and 363 To Enforce This Court's July 5, 2009

17   Sale Order And Injunction (Monetary Relief Actions, Other

18   than Ignition Switch Actions)("Monetary Relief Actions

19   Motion to Enforce"), filed by General Motors LLC (ECF

20   12808).

21

22

23

24

25   Transcribed by:  Dawn South

Page 3

```
 1   A P P E A R A N C E S :

 2   KING & SPALDING LLP

 3        Attorneys for General Motors LLC

 4        1185 Avenue of the Americas

 5        New York, NY 10036-4003

 6

 7   BY:  ARTHUR J. STEINBERG, ESQ.

 8        SCOTT DAVIDSON, ESQ.

 9

10   KIRKLAND & ELLIS

11        Attorney for New GM

12        300 North LaSalle

13        Chicago, IL 60654

14

15   BY:  RICHARD C. GODFREY, P.C., ESQ.

16

17   STUZMAN, BROMBERG, ESSERMAN & PLIFKA

18        Attorney for the Plaintiffs

19        2323 Bryan Street

20        Suite 2200

21        Dallas, TX 75201-2689

22

23   BY:  SANDER L. ESSERMAN, ESQ.

24

25
```

Page 4

```
 1    BROWN RUDNICK LLP

 2         Attorneys for Plaintiffs

 3         Seven Times Square

 4         New York, NY 10036

 5

 6    BY:  EDWARD WEISFELNER, ESQ.

 7         DAVID J. MOLTON, ESQ.

 8         HOWARD S. STEEL, ESQ.

 9

10    GOODWIN ROCTER LLP

11         Attorneys for Hilliard, et al.

12         The New York Times Building

13         620 Eighth Avenue

14         New York, NY 10018

15

16    BY:  WILLIAM P. WEINTRAUB, ESQ.

17         EAMONN O'HAGAN, ESQ.

18

19    AKIN GUMP STRAUSS HAUER & FELD LLP

20         Attorney for Holders of Units in the GUC Trust

21         One Bryant Park

22         New York, NY 10036-6745

23

24    BY:  DANIEL H. GOLDEN, ESQ.

25
```

Page 5

1   CAPLIN & DRYSDALE, CHARTERED

2        Attorney for Holders of Units in the GUC Trust

3        600 Lexington Avenue

4        21st Floor

5        New York, NY 10022-7619

6

7   BY:  ELIHU INSELBUCH, ESQ.

8

9   GIBSON, DUNN & CRUTCHER LLP

10       Attorney for Motors Liquidation GUC Trust

11       200 Park Avenue

12       New York, NY 10166-0193

13

14   BY:  LISA H. RUBIN, ESQ.

15

16   GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

17       Attorneys for the Plaintiffs

18       437 Madison Avenue

19       New York, NY 10022

20

21   BY:  JONATHAN FLAXER, ESQ.

22

23

24

25

Page 6

1   LAW OFFICES OF JOSH DAVIS

2        Attorney for Dori Powledge

3        1010 Lamar

4        Suite 200

5        Houston, TX 77002

6

7   BY:  JOSH DAVIS, ESQ.

8

9   HAGENS BERMAN SOBOL SHAPIRO LLP

10        555 Fifth Avenue

11        Suite 1700

12        New York, NY 10017

13

14   BY:  JASON A. ZWEIG, ESQ.

15

16   WOLF HALDENSTEIN ADLER FREEMAN & HERBZ LLP

17        Attorney for the Groman Plaintiffs

18        270 Madison Avenue

19        New York, NY 10016

20

21   BY:  ALEXANDER H. SCHMIDT, ESQ.

22

23

24

25

1   GENERAL MOTORS COMPANY

2        Attorney for General Motors

3        400 Renaissance Center

4        P.O. Box 400

5        Detroit, MI 48265-4000

6

7   BY:  L. JOSEPH LINES III, ESQ.

8

9   OTTERBOURG

10       Bankruptcy Liaison Counsel

11       230 Park Avenue

12       New York, NY 10169

13

14   BY:  MELANIE L. CYGANOWSKI, ESQ.

15

16

17

18

19

20

21

22

23

24

25

1    alternative, but you can argue in the alternative with one

2    arm tied behind your back because you're not going to be

3    able to brief defensively in the context of the procedural

4    due process and remedies threshold, you're not going to be

5    argue equitable mootness.  That is inherently unfair.

6            We've heard a lot about the delay.  We've been at

7    this months just trying to get to a stipulation of facts.  I

8    just don't see how this 60 days when everybody acknowledges

9    that having a consolidated complaint in front of us will

10   inform everybody's decision and then we'll be able to brief

11   all four of the threshold issues simultaneously at the same

12   time as was always contemplated by the first scheduling

13   order and by the second scheduling order.

14           Thank you, Your Honor.

15           THE COURT:  All right.  Ladies and gentlemen, I'm

16   going to take a brief recess.  I would like you all back

17   here by 11:25 on the clock up there.  I can't guarantee you

18   that I'll be ready then, but please be back in the courtroom

19   at that point.  We're in recess.

20           (Recess at 11:15 a.m.)

21           THE CLERK:  All rise.

22           THE COURT:  Have seats, please.

23        (Pause)

24           THE COURT:  Ladies and gentlemen, I'm denying the

25   Groman plaintiffs request for a delay of the briefing to

Page 64

1   await the discovery that they wish at this point in time

2   without prejudice of course to their rights to get discovery

3   of that character or of any other character down the road.

4          And with respect to the schedule for the briefing

5   I am kicking the briefing out to await the filing of the

6   consolidated and amended complaint but with respect to all

7   five issues, or if you prefer all but the pure legal

8   standard for what it takes to somehow fraud on the Court,

9   and not just two of the four as was advocated by several of

10  the parties, most significantly designated counsel.

11         The basis for the exercise of my discretion in

12  this regard follow.

13         Turning first to the discovery aspect I

14  telegraphed much of my thinking with respect to that when I

15  discussed my tentative views, and after hearing the argument

16  nothing has caused me to change from those views.

17         The issue in my thinking is not whether discovery

18  of the type that's requested there ultimately will become of

19  significance and ultimately become necessary or desirable.

20  I assume without deciding that it ultimately will be one or

21  the other.

22         The issue now however is whether that discovery is

23  important enough at this point in time and how it presently

24  should be weighed as part of the balancing that all agree,

25  including Mr. Flaxer, is essential here in terms of meeting

Page 65

1  the needs and concerns of many parties and ultimately

2  reaching a just result on what all describe as threshold

3  issues, describing it as such because they are threshold

4  issues.

5          We decided to go with threshold reasons -- or

6  threshold issues -- excuse me -- for a reason or many

7  reasons, including the potential, if not certainty, that

8  discovery would slow the train down, to use a metaphor that

9  we've used several times today.

10          I think the price to be paid of having that

11  discovery now is too high, and that taking the discovery now

12  would too materially adversely affect the needs and concerns

13  of the bulk of the parties in the case.

14          Then we get to the briefing.  Nobody disputes the

15  benefits to you all and to me of having the amended

16  complaint as laying out specific matters that we all need to

17  address, and potentially, although I don't know if I have

18  complete optimism on this, vis-à-vis, taking issues off the

19  table.

20          Nobody disputes that at least two-fifths of the

21  threshold issues should be deferred, but then you differ

22  with respect to the remaining issues and your diverging

23  views as to whether I should decide two of them or perhaps

24  three of them before deciding them all, all of course in

25  this context being threshold issues fully understanding that

Page 66

1    threshold issues may not be the end of the story.

2            I can't help but come to the view that your

3    recommendations in that regard are colored by your own

4    clients' tactical needs and concerns.  That of course is

5    what lawyers are paid to do, and I find no fault with that,

6    but of course judges have agendas different than advocates

7    do.

8            The designated counsel and Mr. Weisfelner was the

9    most vigorous and if you will obvious in doing so would like

10   to get -- would like to litigate issues on their terms, and

11   conversely Mr. Golden would like to do the same, and in that

12   connection would prefer not to be thrown under the bus.

13           My agenda is to get a just result and to do so in

14   a way so that the teeing up of the issues doesn't come at

15   the price of material prejudice to any party.

16           As an analytic matter Mr. Weisfelner was right

17   that a subset of the issues don't require an amended

18   complaint, but Mr. Golden and Ms. Rubin made the stronger

19   point that dealing with some issues without dealing with all

20   of them is fundamentally unfair.

21           It may be that I'm going agree with parties on the

22   left side of the courtroom to a greater degree after all of

23   the issues are litigated or it may not be, but the important

24   thing is that at this point I can't put a thumb on the

25   scales of the mechanisms by which we're going to litigate

Page 67

1    these issues to allow certain parties' issue to be litigated

2    without allowing everybody's petitions to be litigated.  And

3    that is particularly so since as you were able to since from

4    our colloquy the chances of my deciding some issues without

5    dealing with all of them and of even hearing oral argument

6    with respect to some issues without hearing all of them are

7    remote.

8              Even assuming, as I do for the sake of this

9    discussion, that all of the issues aren't wholly related and

10   that some could, if you wanted to badly enough, be decided

11   in isolation without deciding the remainder.  The risks of

12   doing that in a way that isn't unfair to other parties are

13   too great for me to tolerate.

14             I have no doubt whatever that I would need to get

15   all of the threshold issues, all five of them briefed and

16   argued before I'd issue a ruling on any of them, and that

17   comes at a price to you all and it comes at a price to me

18   and it comes at a price to Judge Furman.

19             I was originally sympathetic to the need to get

20   the train moving, and I forgot whether I made the point

21   first or Mr. Weisfelner did, but certainly getting the train

22   moving is a laudable goal.  But the issue is not when the

23   train leaves but when it arrives, and given the needs to

24   maintain fairness to all I need to focus on the latter

25   concern, when the train arrives, and to insure that when it

Page 94

1                   C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6    Dawn South

     _____

7    Dawn South

     AAERT Certified Electronic Transcriber CET**D-408

8

9    Veritext

10   330 Old Country Road

11   Suite 300

12   Mineola, NY 11501

13

14   Date:  August 21, 2014

15

16

17

18

19

20

21

22

23

24

25