# Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------x
                                                    :
In re                                               :   Chapter 11
                                                    :
Chrysler LLC, et al.,                               :   Case No. 09-50002 (AJG)
                                                    :
                    Debtors.                        :   (Jointly Administered)
----------------------------------------------------------x
```

**ORDER, PURSUANT TO SECTIONS 105, 363 AND 365 OF
THE BANKRUPTCY CODE AND BANKRUPTCY
RULES 2002, 6004 AND 6006, (A) APPROVING BIDDING
PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL
OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS
TO PROVIDE CERTAIN BID PROTECTIONS, (C) SCHEDULING A FINAL
HEARING APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
 ASSETS AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF **

This matter coming before the Court on the motion (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") seeking, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Rules 2002-1, 6004-1, 6006-1 and 9006-1(b) of the Local Rules for the United States Bankruptcy Court of the Southern District of New York (the "Local Bankruptcy Rules"), entry of (i) an order (a) approving bidding procedures attached hereto as Exhibit A (the "Bidding Procedures") for the sale of substantially all of the Debtors' tangible, intangible and operating assets, defined as the "Purchased Assets" in Section 2.06 of the Purchase Agreement, including the Designated Agreements (as defined below), the assets related to the research, design, manufacturing, production, assembly and distribution of passenger cars, trucks and other

---

[1]    Capitalized terms used but not defined herein have the meanings given to such terms in the Motion and all Exhibits thereto.

vehicles (including prototypes) under brand names that include Chrysler, Jeep® and Dodge
(the "CarCo Business"), certain of the facilities related thereto and all rights including
intellectual property rights, trade secrets, customer lists, domain names, books and records,
software and other assets used in or necessary to the operation of the CarCo Business or related
thereto (collectively, as defined in the Purchase Agreement, the "Purchased Assets") to the
Purchaser (as defined below) and (b) scheduling a final hearing on the sale of the Purchased
Assets and the approval of the UAW Retiree Settlement Agreement (the "Sale Hearing") and
approving the form and manner of notice thereof; and (ii) after the Sale Hearing, an order
(the "Sale Order") (a) authorizing the sale of the Purchased Assets, free and clear all liens, claims
(as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights,
remedies, restrictions, interests, liabilities, and contractual commitments of any kind or nature
whatsoever, whether arising before or after the Petition Date, whether at law or in equity,
including all rights or claims based on any successor or transferee liability, all environmental
claims, all change in control provisions, all rights to object or consent to the effectiveness of the
transfer of the Purchased Assets to the Purchaser or to be excused from accepting performance
by the Purchaser or performing for the benefit of the Purchaser under any Assumed Agreement
and all rights at law or in equity, excluding any Designated Agreement, all as more specifically
set forth and defined in the Sale Motion and the proposed order approving the Sale Transaction
(as so defined therein, "Claims") to the Successful Bidder (as such term is defined in the Bidding
Procedures), (b) authorizing the assumption and assignment of certain executory contracts and
unexpired leases constituting part of the Purchased Assets and related procedures and
(c) granting certain related relief, including approval of the UAW Retiree Settlement Agreement;
the Court having conducted a hearing on the Motion on May 1, 4 and 5, 2009 (the "Bidding

Procedures Hearing") at which time all interested parties were offered an opportunity to be heard

with respect to the Motion; the Court having reviewed and considered (i) the Motion and the

exhibits thereto, (ii) the Bidding Procedures attached to hereto as Exhibit A, (iii) all objections to

the Bidding Procedures, (iv) the Affidavit of Ronald L. Kolka filed in support of the Debtors'

first day papers (Docket No. 23), (v) the Declaration of Scott R. Garberding (Docket No. 49),

(vi) the Declaration of Peter Grady (Docket No. 50), (vii) the Declaration of Frank Ewasyshyn

(Docket No. 48), (viii) the Declaration of Robert Manzo (Docket No. 52), (ix) the Declaration of

Tom W. LaSorda (Docket No. 51), (x) the Declaration of Bradley A. Robbins (Docket No. 173),

(xi) the Declaration of James J. Arrigo (Docket No. 53), (xii) the Declaration of John Schendon

(Docket No. 54), (xiii) the Supplemental Declaration of Robert Manzo (Docket No. 197)

(xiv) the testimony provided at the Bidding Procedures Hearing by the aforementioned

Declarants and Affiant, (xv) the Sale Notice attached hereto as Exhibit B, (xvi) the Publication

Notice attached hereto as Exhibit C, (xvii) the Assignment Notice attached hereto as Exhibit D,

(xviii) the UAW Retiree Notices attached hereto as Exhibit E and (ix) the arguments of counsel

made, and the evidence proffered or adduced, at the Bidding Procedures Hearing; and it

appearing that the relief requested in the Motion is reasonable and in the best interests of the

Debtors' bankruptcy estates, their creditors and other parties-in-interest; and after due

deliberation and sufficient cause appearing;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§ 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      As of the Petition Date, the CarCo Business has been idled and the

Debtors have advised the Court that they believe they lack the financing and liquidity to reopen

and restart the CarCo Business for the production of 2010 vehicles unless a sale is consummated.
The Sale Transaction is a multi-party arrangement that provides the financial wherewithal and
the technical expertise to implement accelerated changes in the Debtors' production platform so
as to reopen their domestic manufacturing facilities and domestic assembly plants in time to
permit the production of 2010 vehicles.

    C.  The Debtors have articulated good and sufficient reasons for, and the best
interests of their estates, creditors, employees, retirees and other parties in interest and
stakeholders will be served by, this Court granting certain of the relief requested in the Motion
relating to that certain Master Transaction Agreement, dated as of April 30, 2009 (the "Purchase
Agreement"),[2] between and among Fiat S.p.A ("Fiat"), New CarCo Acquisition LLC
(the "Purchaser"), a Delaware limited liability formed by Fiat, and Chrysler LLC and its Debtor
subsidiaries, which, together with certain ancillary agreements, contemplates a set of related
transactions (collectively, the "Sale Transaction") for the sale of the Purchased Assets to the
Purchaser and, in connection therewith, approval of the UAW Retiree Settlement Agreement,
including approval of:  (1) the Bidding Procedures, including the minimum overbid amount of
$100 million; (2) the procedures described below (the "Contract Procedures") for the
determination of the amounts necessary to cure defaults under the Designated Agreements
(the "Cure Costs") and to address any other disputes in connection with the assumption and
assignment of the Designated Agreements pursuant to section 365 of the Bankruptcy Code;
(3) the Breakup Fee described below and (4) the form, timing and manner of notice of the
proposed sale, the Bidding Procedures, the Contract Procedures and the other matters described

---

[2]  A copy of the Purchase Agreement, without its voluminous exhibits and schedules, is attached as Exhibit A to
the Motion.

herein, including the form of notice of the proposed sale attached hereto as <u>Exhibit B</u> (the "<u>Sale Notice</u>"), the form of publication notice of the sale attached hereto as <u>Exhibit C</u> (the "<u>Publication Notice</u>"), the form of notice of the proposed assumption and assignment of the Designated Agreements attached hereto as <u>Exhibit D</u> (the "<u>Assignment Notice</u>") and the form of (i) special notice to Debtors' retirees represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "<u>UAW</u>") and (ii) Cover Letter to UAW-Represented Retirees (as defined below) describing the proposed sale and the UAW Retiree Settlement Agreement, attached hereto collectively as <u>Exhibit E</u> (collectively, the "<u>UAW Retiree Notices</u>").

D.    Under the Purchase Agreement, Fiat is entitled to a fee in the amount of $35 million solely in the event that a bidder other than the Purchaser is selected as the Successful Bidder (as defined in the Bidding Procedures) for the Purchased Assets (the "<u>Breakup Fee</u>"). Other than the payment of the Breakup Fee, Fiat is not entitled to any other fees, expenses or compensation in the event that a bidder other than the Purchaser is selected as the Successful Bidder in the auction process described below. The payment of the Breakup Fee, as set forth herein, is an essential inducement and condition relating to the Purchaser's and Fiat's entry into, and continuing obligations under, the Purchase Agreement. The Breakup Fee (1) if triggered, shall be deemed to be an actual and necessary cost and expense of preserving these estates; (2) is reasonable and appropriate in light of the size and nature of the proposed transaction, the necessity to quickly consummate a sale for the Debtors and the considerable efforts and resources that have been and will be expended by the Purchaser pending the Sale Hearing; (3) has been negotiated by the parties and their respective advisors at arms' length and in good faith; and (4) is necessary to ensure that the Purchaser and Fiat will continue to pursue the

closing of the Sale.  The Breakup Fee represents less than 1.75% of the cash portion of the

purchase price to be paid by the Purchaser, is comparable to similar fees authorized in

comparable transactions in this District, represents approximately 35% of the minimum excess

value that would be realized by the Debtors' estates from a qualifying overbid under the Bidding

Procedures and is commensurate to the benefit conferred by the Purchaser and Fiat upon the

estates.

       E.      The Purchaser and the Debtors are relying on their mutual performance of

their obligations set forth in Articles V, VI and VII of the Purchase Agreement, subject for the

avoidance of doubt to the Debtors' right under Section 5.18 of the Purchase Agreement, to the

extent these obligations relate to the period prior to the termination of the Purchase Agreement or

the Closing Date (as defined in the Purchase Agreement and hereafter the "Closing Date"),

whichever shall first occur.  The Purchaser and the Debtors have entered into the Purchase

Agreement expecting all parties to perform these obligations to provide the each other with

reasonable assurances that they will be in the position to consummate the transactions

contemplated by the Purchase Agreement in the event that the Purchaser is selected as the

Successful Bidder.

       F.      Under the circumstances, and particularly in light of the extensive prior

marketing of the Purchased Assets, the Bidding Procedures constitute a reasonable, sufficient,

adequate and proper means to provide potential competing bidders with an opportunity to submit

and pursue higher and better offers for all or substantially all of the Purchased Assets.

       G.      The Purchased Assets are "wasting assets" that will not retain going

concern value over an extended period of time.  Given the wasting nature of the Purchased

Assets, the Debtors' estates will suffer immediate and irreparable harm if the relief requested in

the Motion is not granted on an expedited basis consistent with the provisions set forth herein and the Purchase Agreement.

H.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates and stakeholders will be served by, this Court scheduling a Sale Hearing on an expedited basis to consider granting the remaining relief requested in the Motion, including approval of the Sale Transaction and the transfer of the Purchased Assets to the Purchaser (or another Successful Bidder) free and clear of all Claims, pursuant to section 363(f) of the Bankruptcy Code.

I.      The Sale Notice is reasonably calculated to provide parties in interest with proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures, the Sale Hearing, the structure of the Sale Transaction and related implications on interested parties, including, without limitation, creditors, customers, suppliers and current and former employees.

J.      The Assignment Notice is reasonably calculated to provide all counterparties to the Designated Agreements with proper notice of the potential assumption and assignment of their executory contracts or unexpired leases, any Cure Costs relating thereto and the Contract Procedures.

K.      Publication of the Publication Notice as set forth herein is reasonably calculated to provide all potential warranty claimants and all unknown creditors and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures and the Sale Hearing.

L.      The UAW Retiree Notices are reasonably calculated to provide the Debtors' retirees and surviving spouses represented by the UAW, including members of

the "Class" as defined in the UAW Retiree Settlement Agreement (collectively, the "UAW-Represented Retirees") proper notice of the potential sale of the Purchased Assets, the related Bidding Procedures, the Sale Hearing, the structure of the Sale Transaction, including, but not limited to, (1) the sale of the Purchased Assets free and clear of any interest the UAW or UAW-Represented Retirees may have in such Purchased Assets, (2) the UAW CBA Assignment and (3) the UAW Retiree Settlement Agreement.

M.    The Motion and this Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Guidelines for the Conduct of Asset Sales adopted by this Court pursuant to General Order M-331.

N.    The Sale Transaction includes the transfer of "Personally Identifiable Information" (as defined in section 101(41A) of the Bankruptcy Code).  The transfer of Personally Identifiable Information shall not be effective until a Consumer Privacy Ombudsman is appointed, issues its findings and the Court has an opportunity to review the findings and issue any rulings that are appropriate.

O.    Due, sufficient and adequate notice of the relief granted herein has been given to parties in interest.

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED to the extent set forth herein.

2.    All objections to the relief requested in this Motion that have not been withdrawn, waived or settled as announced to the Court at the Bidding Procedures Hearing or by stipulation filed with the Court or the terms of this Order, are overruled except as otherwise set forth herein.

3.      The Bidding Procedures, which are attached hereto as <u>Exhibit A</u> and incorporated herein by reference, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Purchased Assets.

4.      The failure specifically to include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedure, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

5.      Any person wishing to submit a higher or better offer for the Purchased Assets, or any portion thereof, must do so in accordance with the terms of the Bidding Procedures.

6.      The deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be May 20, 2009 for all Potential Bidders (the "<u>Bidding Deadline</u>"), as further described in the Bidding Procedures.

7.      The deadline for objecting to the approval of the Sale Transaction (other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs), including the sale of the Purchased Assets free and clear of all Claims pursuant to section 363(f) of the Bankruptcy Code and approval of the UAW Retiree Settlement Agreement shall be May 19, 2009 at 4:00 p.m. (Eastern Time) (the "<u>Objection Deadline</u>") for all parties in interest, including, but not limited to the Debtors' prepetition senior secured lenders (the "<u>Senior Secured Lenders</u>"), the UAW and the official committee of unsecured creditors appointed in these cases (the "<u>Creditors' Committee</u>"); <u>provided</u>, <u>however</u>, that if a determination is made at the Sale Hearing that the Successful Bidder (as such term is

defined in the Bidding Procedures) is a bidder other than the Purchaser, parties in interest may

object solely to such determination at the Sale Hearing.

8.      The Purchaser shall constitute a Qualified Bidder (as defined in the

Bidding Procedures) for all purposes and in all respects with regard to the Bidding Procedures.

9.      As further described in the Bidding Procedures, if more than one Qualified

Bid is timely received, a Court-supervised auction may be conducted at the outset of the Sale

Hearing to determine the Successful Bidder.

10.     The Court shall conduct the Sale Hearing on May 27, 2009 at 10:00 a.m.

(Eastern Time) at which time the Court will consider approval of the Sale Transaction to the

Successful Bidder and approval of the UAW Retiree Settlement Agreement.  The Sale Hearing

may be adjourned or rescheduled without notice by an announcement of the adjourned date at the

Sale Hearing; provided, however, that the Sale Hearing shall not be deemed to have been held

until it is substantially complete.

11.     The Debtors are hereby authorized to conduct the Sale Transaction (or

other similar transaction, if the Successful Bidder is a party other than the Purchaser) without the

necessity of complying with any state or local bulk transfer laws or requirements.

12.     The Sale Notice, the Publication Notice and the UAW Retiree Notices,

substantially in the forms of Exhibit B, Exhibit C and Exhibit E to this Order, are hereby

approved.

13.     The manner of notice of the proposed sale, the Bidding Procedures and the

Sale Hearing and approval of the UAW Retiree Settlement Agreement at such Sale Hearing as

set forth in this paragraph 13 are approved in all respects.  In particular, no other or further notice

of the proposed sale, the Bidding Procedures, the Sale Hearing and approval of the UAW Retiree

Settlement Agreement at such Sale Hearing shall be required except as follows:

(a)      within two business days after entry of this Order (the "Mailing
Deadline"), the Debtors shall serve the Sale Notice by first-class mail, postage prepaid
upon:  (i) counsel to the U.S. Treasury; (ii) counsel to the UAW; (iii) counsel to the
Purchaser; (iv) counsel to the administrative agent for the Senior Secured Lenders;
(v) any party that, in the past year, expressed in writing to the Debtors an interest in
acquiring the Purchased Assets, directly or through a merger or alliance; (vi) non-Debtor
counterparties to all Designated Agreements; (vii) all parties who are known to assert
Claims upon the Assets; (viii) the Securities and Exchange Commission; (ix) the Internal
Revenue Service; (x) all applicable state attorneys general, local environmental
enforcement agencies and local regulatory authorities; (xi) all applicable state and local
taxing authorities; (xii) the U.S. Trustee; (xiii) Federal Trade Commission; (xiv) United
States Attorney General/Antitrust Division of Department of Justice; (xv) the U.S.
Environmental Protection Agency and similar state agencies;  (xvi) United States
Attorney's Office; (xvii) the entities set forth in the Special Service List and the General
Service List established in these cases; (xviii) counsel to Cerberus; (xix) counsel to
Daimler; (xx) counsel to Export Development Canada; (xxi) all entities that have
requested notice in these chapter 11 cases under Bankruptcy Rule 2002; and (xxii) any
other party identified on the creditor matrix in these cases.

(b)      On the Mailing Deadline, or as soon as practicable thereafter, the Debtors
shall submit the Publication Notice to be published one time in the national edition of
*USA Today*, *The Wall Street Journal* and *The New York Times*, as well as the Worldwide
Edition of *The Financial Times*.

(c)      On the Mailing Deadline, or as soon as practicable thereafter, the Debtors
shall cause the Publication Notice to be published on the website of the Debtors' claims
and noticing agent, Epiq Bankruptcy Solutions, LLC, at
http://www.chryslerrestructuring.com.

(d)      On the Mailing Deadline, the Debtors shall serve the UAW Retiree
Notices on all UAW-Represented Retirees by first-class mail, postage prepaid.  In
addition, on the Mailing Date, or as soon as practicable thereafter, the Debtors shall cause
this Order, the Sale Motion, the Purchase Agreement, the UAW Retiree Settlement
Agreement (including its exhibits) and that certain Equity Recapture Agreement executed
in connection with the UAW Retiree Settlement Agreement to be posted on the website
of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, at
http://www.chryslerrestructuring.com (together with the mailing of the UAW Retiree
Notices as set forth in this subparagraph, "Notice to UAW-Represented Retirees").

14.      The manner of notice of the proposed sale, the Bidding Procedures, the

Sale Hearing and approval of the UAW Retiree Settlement Agreement, including the Notice to

UAW-Represented Retirees is approved in all respects.  In particular, no other or further notice

of the proposed sale, the Bidding Procedures, the Sale Hearing or approval of  the UAW Retiree

Settlement Agreement shall be required other than effectuating the Notice to UAW-Represented

Retirees approved herein.

15.     To be considered, any objection to the Sale Transaction (other than an

objection to the proposed assumption and assignment of the Designated Agreements or to any

proposed Cure Costs), including any objection to approval of the UAW Retiree Settlement

Agreement, must (a) comply with the Bankruptcy Rules and the Local Bankruptcy Rules and

(b) be made in writing and filed with this Court and served upon the following parties

(collectively, the "Notice Parties") so as to be received by the Objection Deadline:  (i) the

Debtors, c/o Chrysler LLC, 1000 Chrysler Drive, CIMS# 485-14-96, Auburn Hills, Michigan

48326-2766 (Attn:  Holly E. Leese, Esq.); (ii) Jones Day, counsel to the Debtors, 222 East 41st

Street, New York, New York 10017 (Attn:  Corinne Ball, Esq. and Nathan Lebioda, Esq.) and

1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn:  Jeffrey B. Ellman,

Esq.); (iii) Capstone Advisory Group, LLC, Park 80 West, Plaza 1, Plaza Level, Saddle Brook,

NJ 07663 (Attn:  Robert Manzo); (iv) Kramer Levin Naftalis & Frankel LLP, counsel to the

Creditors' Committee, 1177 Avenue of the Americas New York, New York 10036

(Attn:  Thomas M. Mayer, Esq. and Kenneth H. Eckstein, Esq.); (v) Simpson Thacher & Bartlett

LLP, counsel to the administrative agent for the Senior Secured Lenders, 425 Lexington Avenue,

New York, New York 10017 (Attn:  Peter Pantaleo, Esq. and David Eisenberg, Esq.); (vi) the

U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn:  Brian S.

Masumoto, Esq.); (vii) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312

Washington, D.C. 20220 (Attn:  Matthew Feldman, Esq.); (viii) United States Attorney's Office,

Southern District of New York, Civil Division, Tax & Bankruptcy Unit, 86 Chambers Street, 3rd

Floor, New York, New York 10007 and Cadwalader, Wickersham & Taft LLP, Of counsel to the

Presidential Task Force on the Auto Industry, One World Financial Center, New York, New

York 10281 (Attn: John J. Rapisardi, Esq.); (ix) Vedder Price, P.C., counsel to Export

Development Canada, 1633 Broadway, 47th Floor New York, New York 10019 (Attn: Michael

J. Edelman, Esq.); (x) the Purchaser and Fiat, c/o Fiat S.p.A, Via Nizza n. 250, 10125 Torino,

Italy (Attn: Chief Executive Officer); (xi) Sullivan & Cromwell LLP, counsel to the Purchaser

and Fiat, 125 Broad Street, New York, New York 10004 (Attn: Scott D. Miller, Esq. and

Andrew Dietderich, Esq.) and 1888 Century Park East, 21st Floor, Los Angeles, CA 90067

(Attn: Hydee R. Feldstein, Esq.); (xii) International Union, UAW, 8000 East Jefferson Avenue,

Detroit, Michigan 48214 (Attn: Daniel Sherrick, Esq.); (xiii) Cleary Gottlieb Steen & Hamilton

LLP, counsel to the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L.

Bromley, Esq.); (xiv) Cohen, Weiss and Simon LLP, counsel to the UAW, 330 W. 42nd St.,

New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (xv) Togut, Segal & Segal, LLP,

conflicts counsel to the Debtors, One Penn Plaza, New York, New York 10119 (Attn: Albert

Togut, Esq.); and (xvi) counsel to any other statutory committees appointed in these cases.

16.     The failure of any objecting person or entity to timely file its objection

shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or

the consummation and performance of the sale of the Purchased Assets contemplated by the

Purchase Agreement or a Marked Agreement (as defined in the Bidding Procedures), if any

(including the transfer free and clear of all Claims of each of the Purchased Assets transferred as

part of the Sale Transaction) or to the approval of the UAW Retiree Settlement Agreement.

17.     The Minimum Overbid Purchase Price and Breakup Fee as set forth in the Purchase Agreement are hereby approved.  If Fiat or the Purchaser becomes entitled to receive the Breakup Fee in accordance with the terms of the Purchase Agreement, (a) the Debtors' obligation to pay the Breakup Fee under the Purchase Agreement shall be a joint and several obligation of the Debtors and shall survive termination of the Purchase Agreement; (b) Fiat or the Purchaser (as applicable) shall be, and hereby is, granted an allowed administrative claim in the Debtors' chapter 11 cases in an amount equal to the Breakup Fee, pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code and have priority over and be senior to all other claims against the Debtors to the extent of the proceeds realized from the sale of the Purchased Assets to a Successful Bidder other than the Purchaser; (c) such Breakup Fee shall be payable immediately on the third business day following entry of an order approving a Successful Bidder other than the Purchaser or Fiat on the conditions and in accordance with the terms of the Purchase Agreement; and (d) the Debtors are authorized and directed to pay the Breakup Fee to Fiat immediately upon its becoming due without further order of this Court.

18.     Other than Fiat's right to the Breakup Fee, no person or entity, shall be entitled to any expense reimbursement, break-up fees, "topping," termination or other similar fee or payment in connection with the Bidding Procedures.

19.     The following procedures (the "Contract Procedures") shall govern the assumption and assignment of Designated Agreements in connection with the sale of the Purchased Assets to the Purchaser:[3]

---

[3]     If a party other than the Purchaser is the Successful Bidder, or if a transaction other than the Sale Transaction is consummated for the sale of a substantial portion of the Debtors' operating assets, then these Contract Procedures may be modified if necessary by further order of this Court.

(a)      Initial Contract Designations.  Not fewer than 13 days prior to the Sale Hearing, the Debtors shall file with this Court and shall serve on each non-debtor counterparty to an executory contract or unexpired lease with any of the Debtors (each, a "Non-Debtor Counterparty") that the Debtors may assume and assign to the Purchaser (the "Initial Designated Agreements"), by overnight delivery service, a notice of assumption and assignment of executory contracts and unexpired leases in substantially the form of the Assignment Notice attached hereto as Exhibit D.  The Debtors shall attach to the Assignment Notice a list identifying the Non-Debtor Counterparties to the Initial Designated Agreements and the corresponding Cure Costs under the Initial Designated Agreements as of April 30, 2009; provided that such Assignment Notice shall in no way limit such Non-Debtor Counterparty's entitlement to Cure Costs accruing during the period after April 30, 2009.  In addition, the Debtors shall serve a copy of the Assignment Notice on a Non-Debtor Counterparty's counsel of record in these chapter 11 cases as of the date of the Assignment Notice ("Counsel of Record").

(b)      Information in Assignment Notice.  For each Designated Agreement, on the Assignment Notice, the Debtors shall either (i) indicate the proposed Cure Costs relating to such Designated Agreement or (ii) provide an amount representing the proposed Cure Costs for multiple Designated Agreements with the same Non-Debtor Counterparty, subject, upon request, to providing greater detail to a Non-Debtor Counterparty to identify on a contract-by-contract basis the proposed applicable Cure Costs to the extent reasonably available.  On an Assignment Notice, Designated Agreements may be listed individually or in groups of agreements with the Non-Debtor Counterparty, as long as the Non-Debtor Counterparty is provided with sufficient information to identify the contracts to be assumed.  The Assignment Notice also may identify any additional proposed terms or conditions of assumption and assignment.

(c)      Additional Contract Designations.  In accordance with Section 2.10 of the Purchase Agreement, the Debtors may, at the Purchaser's request or with the Purchaser's consent, designate, up to the Agreement Designation Deadline, additional executory contracts and unexpired leases as agreements to be assumed by the Debtors and assigned to the Purchaser pursuant to the Purchase Agreement (the "Additional Designated Agreements" and, together with the Initial Designated Agreements, the "Designated Agreements").  As used herein the "Agreement Designation Deadline" means, as applicable, (i) 30 days after the Closing Date with respect to the Dealer Agreements (as defined below), (ii) 60 days after the Closing Date for executory contracts and unexpired leases with the Debtors' production suppliers and (iii) 90 days after the Closing Date for all other agreements.  Upon determining that a specific executory contract or unexpired lease, or a group thereof, are Additional Designated Agreements, the Debtors, at the Purchaser's request, shall serve an Assignment Notice on each of the Non-Debtor Counterparties to such Additional Designated Agreements and their Counsel of Record, indicating (i) that the notice recipient is a Non-Debtor Counterparty to one or more executory contracts or unexpired leases with the Debtors that the Debtors intend to assume and assign to the Purchaser and (ii) the corresponding Cure Cost under the Additional Designated Agreements as of April 30, 2009; provided that such Assignment Notice shall in no way limit such Non-Debtor Counterparty's entitlement to Cure Costs accruing during the period after April 30, 2009.

(d)     Purchaser Confirmation Notice.  Prior to the Closing Date and no later than June 12, 2009 (the "Pre-Closing Deadline"), the Purchaser shall serve on all applicable Non-Debtor Counterparties a notice indicating those Designated Agreements with respect to which the Purchaser has made a final determination to take assignment of a Designated Agreement (a "Confirmation Notice"), subject only to Cure Costs not being established in an amount greater than the amounts in the Assignment Notice unless otherwise agreed upon in writing by the Purchaser.  Designated Agreements listed on a Confirmation Notice are referred to as "Confirmed Agreements."  The Purchaser may serve additional Confirmation Notices at any time through the Agreement Designation Deadline.  Until a Designated Agreement is listed on a Confirmation Notice, it shall not be considered to be either assumed or assigned and shall remain subject to assumption, rejection or redesignation hereunder.

(e)     UAW and GMAC Agreements.  Contingent upon the approval of the sale of the Purchased Assets to the Purchaser and concurrently with the consummation of the sale of the Purchased Assets (without prejudice to the conditions thereto set forth in the Purchase Agreement), (i) each of the UAW CBA Assignment and the GMAC MAFA Documents (as such term is defined in the Bidding Procedures attached hereto as Exhibit A) shall be deemed to be Confirmed Agreements as to which no Assignment Notice or Confirmation Notice shall be sent, (ii) the Debtors shall assign to Purchaser, and Purchaser shall be deemed to have assumed, each such agreement as of the Closing Date, and each non-Debtor party to each such agreement shall be deemed to have consented to such assumption and assignment and (iii) the Court order approving such sale shall reflect such assumption and assignment.

(f)     Direct Dealer Agreements.  Certain executory dealer agreements will be identified as Designated Agreements to be assumed and assigned.  Although most U.S. dealers have entered into standard uniform dealership agreements in the form of the Chrysler Corporation Sales and Service Agreement (the "Sales and Service Agreement"), some dealers are party to older agreements in the form of the Chrysler Direct Dealer Agreement (each, a "Direct Dealer Agreement").  If a Direct Dealer Agreement is identified as a Designated Agreement pursuant to the procedures above, then such Direct Dealer Agreement will only be assumed and assigned to the Purchaser if the counterparty to the Direct Dealer Agreement first agrees to modify such Direct Dealer Agreement and restate it in the form of the Sales and Service Agreement (each such modified Direct Dealer Agreement and Sales and Service Agreement, a "Dealer Agreement").  If the counterparty and the Debtors do not so modify and restate such Direct Dealer Agreement in the form of the Sales and Service Agreement, then notwithstanding any other provisions of these Contract Procedures, such Direct Dealer Agreement will not be assumed and assigned pursuant to these Contract Procedures.

(g)     Section 365 Objections.  Objections, if any ("Section 365 Objections"), to the proposed Cure Costs, or to the proposed assumption and assignment of the Designated Agreements, including, but not limited to, objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code, must be in

writing and filed with this Court and served on the Notice Parties so as to be received no later than ten days after service of an Assignment Notice (the "Section 365 Objection Deadline").  Where a Non-Debtor Counterparty to a Designated Agreement files a Section 365 Objection meeting the requirements of this subparagraph (g), objecting to the assumption by the Debtors and assignment to the Purchaser of such Designated Agreement (the "Disputed Designation") and/or asserting a cure amount higher than the proposed cure Costs listed on the Assignment Notice (the "Disputed Cure Costs"), the Debtors, the Purchaser and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention.

(h)     Section 365 Hearing.  If any of the Debtors, the Non-Debtor Counterparty or the Purchaser determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by the Court at an omnibus hearing established for such purpose that is on a date not less than ten days after the service of such objection or such other date as determined by the Court (a "Section 365 Hearing"), unless the Debtors, the Purchaser and the Non-Debtor Counterparty to the Designated Agreement in dispute agree otherwise.  Unless otherwise agreed by the parties, the Section 365 Hearing to consider objections relating to the Initial Designated Agreements shall be conducted on June 4, 2009 at 10:00 a.m., Eastern Time.  If the Court determines at a Section 365 Hearing that the Designated Agreement cannot be assumed and assigned, or establishes Cure Costs that the Purchaser is not willing to pay, then such executory contract or unexpired lease shall no longer be considered a Designated Agreement.

(i)     Consent to Assumption and Assignment.  Any Non-Debtor Counterparty to a Designated Agreement who fails to file timely Section 365 Objection to the proposed Cure Costs or the proposed assumption and assignment of a Designated Agreement by the Section 365 Objection Deadline is deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Agreement, and such party shall be forever barred from objecting to the Cure Costs or such assumption and assignment and from asserting any additional cure or other amounts against the Debtors, their estates or the Purchaser.

(j)     Resolution of Assumption/Assignment Issues.  If the Non-Debtor Counterparty to a Designated Agreement fails to timely assert a Section 365 Objection as described in subparagraph (g) above, or upon the resolution of any timely Section 365 Objection by agreement of the parties or order of the Court approving an assumption and assignment, such Designated Agreement shall be deemed to be assumed by the Debtors and assigned to the Purchaser and the proposed Cure Cost related to such Designated Agreement shall be established and approved in all respects, subject to the conditions set forth in subparagraph (k) below.

(k)     Conditions on Assumption and Assignment.  The Debtors' decision to assume and assign the Designated Agreements is subject to Court approval and consummation of the Sale Transaction.  Accordingly, subject to the satisfaction of conditions in subparagraph (j) above to address any cure or assignment disputes, the

Debtors shall be deemed to have assumed and assigned to the Purchaser each of the Designated Agreements as of the date of and effective only upon the Closing Date, and absent such closing, each of the Designated Agreements shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.  Assumption and assignment of the Designated Agreements also is subject to the Purchaser's rights set forth in subparagraphs (c) and (d) above.  The Purchaser shall have no rights in and to a particular Designated Agreement until such time as the particular Designated Agreement has been identified by the Purchaser as a Confirmed Agreement and is assumed and assigned in accordance with the procedures set forth herein.  Once assumed and assigned as a Confirmed Agreement under these Contract Procedures, a Designated Agreement is not subject to rejection under section 365 of the Bankruptcy Code.

(l)      Pre-Closing Assurance Letters.  From and after the Pre-Closing Deadline through the Closing Date, with respect to any Designated Agreement not listed in a Confirmation Notice that is a production supply contract or a dealer contract with respect to which the Non-Debtor Counterparty has determined that it must incur costs after the Pre-Closing Deadline to remain in a position to perform in accordance with the Designated Agreement upon assumption by the Purchaser, the Non-Debtor Counterparty may send a letter to the Debtors and to the Purchaser describing such additional costs under such agreement and seeking assurance of the Purchaser's intentions with respect to such agreement (an "Assurance Letter").  In response to an Assurance Letter, the Purchaser may either (i) provide a Confirmation Notice to the Non-Debtor Counterparty; (ii) elect not to deliver a Confirmation Notice at such time but to provide the Non-Debtor Counterparty with assurances that the Purchaser will advance the costs of any ongoing performance by the Non-Debtor Counterparty pending a final determination to assume the underlying Designated Agreement (such advances to be reflected by an appropriate credit against future payments to the Non-Debtor Counterparty under the Designated Agreement only in the event that such Designated Agreement becomes a Confirmed Agreement); or (iii) elect not to deliver a Confirmation Notice at such time but to agree in writing that the Non-Debtor Counterparty may temporarily suspend performance during this period without penalty (and, if applicable, upon assumption and assignment to the Purchaser, toll or delay subsequent deliveries as may be reasonably required to reflect the suspension of performance during such period).  If no response to an Assurance Letter is received within five business days, the Non-Debtor Counterparty may temporarily suspend performance of the agreement pursuant to clause (iii) above.  Any disputes relating to the foregoing shall be heard by the Bankruptcy Court.  For purposes of this paragraph, the Debtors and the Purchaser shall be contacted at the addresses identified in paragraph 15 above.

(m)      Post-Closing Assurances.  From and after the Closing Date through the applicable Agreement Designation Deadline, Non-Debtor Counterparties may serve a written request on the Debtors and the Purchaser for a final determination of the assumption or rejection of its executory contracts and unexpired leases.  Absent a favorable response within ten days, the Non-Debtor Counterparty may file a motion to compel assumption or rejection of such agreement, which may be heard on ten days' notice, subject to the Court's availability; provided, however, that in the event that  a

Non-Debtor Counterparty believes that it requires a more expeditious decision regarding assumption or rejection of its executory contract or unexpired lease, such Non-Debtor Counterparty shall be free to seek expedited relief from the Court, without regard to the ten-day periods referenced herein but subject to the legal standards and requirements applicable to requests for expedited consideration, provided further that in such event the counterparty shall give as much advance notice as reasonably practicable under the circumstances to the Debtors and the Purchaser.  For purposes of this paragraph, the Debtors and the Purchaser shall be contacted at the addresses identified in paragraph 15 above.

(n)     Cure Payments.  Except as may otherwise be agreed to by the parties to a Designated Agreement, the defaults under the Designated Agreements that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows:  the Purchaser shall pay all Cure Costs relating to an assumed executory contract or unexpired lease within ten days after the later of (i) the Closing Date, (ii) the date on which such executory contract or unexpired lease is deemed assumed and assigned, in accordance with subparagraph (k) of these Contract Procedures or (iii) with respect to Dispute Cure Costs, the date the amount thereof is finally determined.

(o)     Rights Pending Assumption or Rejection.  Nothing in these Contract Procedures limits, restricts or expands the rights of parties to executory contracts and unexpired leases pending assumption or rejection, including any rights to seek further relief from the Bankruptcy Court (including motions to compel a prompt final decision on assumption or rejection), or the rights of other parties in response to such requests.

(p)     Filing of Final List of Confirmed Agreements.  As soon as reasonably practicable after the Agreement Designation Deadline, the Debtors shall file with the Court a final schedule indicating all Confirmed Agreements and the proposed Cure Costs relating to each Confirmed Agreement scheduled therein.

20.     Subject to the Debtors' rights under Section 5.18 of the Purchase Agreement, the Debtors are authorized to and directed to comply with their obligations and undertakings in Articles V, VI and VII of the Purchase Agreement until the earlier of the termination of the Purchase Agreement or the Closing Date.  Furthermore, except with respect to the requirement pursuant to this Order that the Purchaser assume all GMAC MAFA Documents (as such term is defined in the Bidding Procedures attached hereto as Exhibit A) upon consummation of the sale of the Purchased Assets, nothing in this Order alters or amends the terms and conditions of, or the rights and obligations of the non-Debtor parties to, the Purchase Agreement, provided that all contracts that have not become Confirmed Contracts as of the

Closing Date shall constitute "Excluded Contracts" for purposes of the Purchase Agreement (without any requirement to update the Company Disclosure Letter) until such time, if any, as such contracts subsequently have become Confirmed Contracts in accordance herewith.

21.    The U.S. Trustee is directed to appoint a Consumer Privacy Ombudsman pursuant to sections 332 and 363(b)(1) of the Bankruptcy Code as soon as practicable.

22.    Unless expressly set forth herein all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

23.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

24.    The Debtors are authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established and relief granted in this Order.

25.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: New York, New York
       May 7, 2009

                                    **s/Arthur J. Gonzalez**
                                    UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

**[Bidding Procedures]**

## BIDDING PROCEDURES[1]

By a motion dated May 3, 2009 (the "Motion"), Chrysler LLC ("Chrysler") and 24 of its domestic direct and indirect subsidiaries, as debtors and debtors in possession (collectively with Chrysler, the "Debtors") sought, among other things, approval of the procedures for the sale of substantially all the CarCo Business (as defined below) and substantially all of the Purchased Assets (as defined below) related thereto.  On May 8, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered its order (the "Bidding Procedures Order"), authorizing the Debtors, among other things, to market the Purchased Assets through the bidding procedures described below (the "Bidding Procedures").  As part of the Bidding Procedures, the Bankruptcy Court has scheduled a hearing to consider approval of the sale of the Purchased Assets to the Successful Bidder (as defined below), to be conducted on May 27, 2009, at 10:00 a.m., Eastern Time, in Room 523 at the Bankruptcy Court, Alexander Hamilton U.S. Custom House, One Bowling Green, New York, New York 10004-1408 (the "Sale Hearing").

## I.        Stalking Horse Bid

The Debtors have executed a Master Transaction Agreement (collectively with all ancillary documents and agreements, the "Purchase Agreement") with Fiat S.p.A ("Fiat") and New CarCo Acquisition LLC (the "Purchaser"), a Delaware limited liability company formed by Fiat, dated as of April 30, 2009, which contemplates a set of related transactions (collectively, the "Sale Transaction") for the sale of the Purchased Assets to the Purchaser in consideration for $2 billion in cash (the "Cash Consideration") and the assumption of certain liabilities (the "Assumed Liabilities").

## II.       Important Dates for Potential Competing Bidders

These Bidding Procedures provide for an opportunity for interested parties to qualify and participate in the Auction and submit competing bids for all or substantially all of the Purchased Assets.  The Debtors shall, in consultation with the official creditors' committee appointed in the Debtors' chapter 11 cases (the "Creditors' Committee"), the United States Department of the Treasury (the "U.S. Treasury") and the UAW (as defined below):

> (a)      assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and accept Bids (as defined below) until 5:00 p.m., Eastern Time, on May 20, 2009;

---

[1]      Capitalized terms not otherwise defined herein shall have the respective meanings given to them in the Motion and all Exhibits thereto.

(b)     negotiate with any Qualified Bidders (as defined below) in advance of the Sale Hearing to be conducted on May 27, 2009;

(c)     if there are Qualified Bidders for all or substantially all of the Purchased Assets in addition to the Purchaser, identify one bid (or group of bids) as the Lead Bid (as defined below) for presentation to the Bankruptcy Court and, if necessary, conduct an in-court auction among Qualified Bidders at the Sale Hearing on May 27, 2009 to identify the Successful Bid; and

(d)     seek authority to sell all or substantially all of the Purchased Assets to the Successful Bidder(s) (as defined below) at the Sale Hearing to be conducted by the Bankruptcy Court on May 27, 2009.

## III.   Assets to Be Sold

The Debtors seek to sell substantially all of the Debtors' tangible, intangible and operating assets, defined as the "Purchased Assets" in Section 2.06 of the Purchase Agreement, including the Designated Agreements (as such term is defined in the Bidding Procedures Order), the assets related to the research, design, manufacturing, production, assembly and distribution of passenger cars, trucks and other vehicles (including prototypes) under brand names that include Chrysler, Jeep® and Dodge (the "CarCo Business"), certain of the facilities related thereto and all rights including intellectual property rights, trade secrets, customer lists, domain names, books and records, software and other assets used in or necessary to the operation of the CarCo Business or related thereto (collectively, as defined in the Purchase Agreement, the "Purchased Assets").

## IV.   The Bidding Process

The Debtors shall:  (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Purchased Assets; (b) with the assistance of their financial advisor, Capstone Advisory Group, LLC ("Capstone"), determine whether any person or entity is a Qualified Bidder (as defined below); (c) receive and evaluate bids from Qualified Bidders; and (d) negotiate any Qualified Bids.  The foregoing activities are referred to, collectively, as the "Bidding Process."  Any person or entity who wishes to participate in the Bidding Process must meet the participation requirements for Potential Bidders below and must thereafter submit a Qualified Bid to become a Qualified Bidder.  Except as provided by applicable law or court order, neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any person or entity who does not comply with the participation requirements below.

## V.   Participation Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person or entity (a "Potential Bidder") must deliver the following documents to the parties described below (the "Participation Materials"):

(a)     An executed confidentiality agreement in form and substance satisfactory to the Debtors; and

       (b)      A statement demonstrating to the Debtors' satisfaction a *bona fide* interest in purchasing the Purchased Assets, or a substantial portion thereof, from the Debtors.

    The Participation Materials must be transmitted by the Potential Bidder so as to be received no later than 4:00 p.m., Eastern Time, on May 15, 2009 by each of the following parties (collectively, the "Notice Parties"): (a) the Debtors, c/o Chrysler LLC, 1000 Chrysler Drive, CIMS# 485-14-96, Auburn Hills, Michigan 48326-2766 (Attn: Holly E. Leese, Esq.); (b) Jones Day, counsel to the Debtors, 222 East 41st Street, New York, New York 10017 (Attn: Corinne Ball, Esq. and Nathan Lebioda, Esq.) and 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn: Jeffrey B. Ellman, Esq.); (c) Capstone Advisory Group, LLC, Park 80 West, Plaza 1, Plaza Level, Saddle Brook, NJ 07663 (Attn: Robert Manzo); (d) Kramer Levin Naftalis & Frankel LLP, counsel to the Creditors' Committee, 1177 Avenue of the Americas New York, New York 10036 (Attn: Thomas M. Mayer, Esq. and Kenneth H. Eckstein, Esq.); (e) Simpson Thacher & Bartlett LLP, counsel to the administrative agent for the Debtors' prepetition senior secured lenders (the "Senior Secured Lenders"), 425 Lexington Avenue, New York, New York 10017 (Attn: Peter Pantaleo, Esq. and David Eisenberg, Esq.); (f) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian S. Masumoto, Esq.); (g) the U.S. Treasury, 1500 Pennsylvania Avenue NW, Room 2312 Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (h) United States Attorney's Office, Southern District of New York, Civil Division, Tax & Bankruptcy Unit, 86 Chambers Street, 3rd Floor, New York, New York 10007 and Cadwalader, Wickersham & Taft LLP, Of counsel to the Presidential Task Force on the Auto Industry, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (i) Vedder Price, P.C., counsel to Export Development Canada, 1633 Broadway, 47th Floor New York, New York 10019 (Attn: Michael J. Edelman, Esq.); (j) the Purchaser, c/o Fiat S.p.A, Via Nizza n. 250, 10125 Torino, Italy (Attn: Chief Executive Officer); (k) Sullivan & Cromwell LLP, counsel to the Purchaser and Fiat, 125 Broad Street, New York, New York 10004 (Attn: Scott D. Miller, Esq. and Andrew Dietderich, Esq.) and 1888 Century Park East, 21st Floor, Los Angeles, CA 90067 (Attn: Hydee R. Feldstein, Esq.); (l) the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn: Daniel Sherrick, Esq.); (m) Cleary Gottlieb Steen & Hamilton LLP, counsel to the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (n) Cohen, Weiss and Simon LLP, counsel to the UAW, 330 W. 42nd St., New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (o) Togut, Segal & Segal, LLP, conflicts counsel to the Debtors, One Penn Plaza, New York, New York 10119 (Attn: Albert Togut, Esq.); and (p) any other statutory committees appointed in these cases.

    If the Debtors determine, in consultation with the Creditors' Committee, the UAW and the U.S. Treasury, that a potential bidder has a *bona fide* interest in the Purchased Assets, or a substantial portion thereof, no later than two business days after the Debtors make that determination and have received from a Potential Bidder all of the materials required above, the Debtors will deliver to the Potential Bidder: (a) a confidential memorandum containing information and financial data with respect to the Purchased Assets (the "Confidential Memorandum"); (b) an electronic copy of the Purchase Agreement; and (c) access information for a confidential electronic data room concerning the Purchased Assets (the "Data Room").

## VI.   <u>Due Diligence</u>

Until the Bid Deadline (as defined below), the Debtors will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to Robert Manzo of Capstone at Park 80 West, Plaza 1, Plaza Level, Saddle Brook, NJ 07663, (201) 587-7100.  The Debtors, with the assistance of Capstone, shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  If the Debtors determine that due diligence material requested by a Potential Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Potential Bidder, the Debtors shall post such materials in the Data Room and provide email notice of such posting to all Potential Bidders, as well as to the Notice Parties.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease on the earlier of (a) the time that the Potential Bidder fails to become a Qualified Bidder, (b) the Bid Deadline or (c) the time that the Bidding Process is terminated in accordance with its terms.  Except as provided above with respect to the Confidential Memorandum and the copy of the Purchase Agreement provided by the Debtors to the Potential Bidders, and information in the Data Room, neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any party.

## VII.   <u>Bid Deadline</u>

A Potential Bidder that desires to make a bid shall deliver written and electronic copies of its bid to the Notice Parties so as to be received not later than 5:00 p.m., Eastern Time, on May 20, 2009 (the "<u>Bid Deadline</u>").  Electronic delivery information for bids will be posted in the Data Room.

## VIII.   <u>Bid Requirements</u>

To participate in the Auction, if any, a Qualified Bidder must deliver to the Debtors a written offer, which must provide, at a minimum, the items noted below to be deemed a "<u>Qualified Bid</u>:"

(a)     The Potential Bidder offers to purchase the Purchased Assets, or a substantial portion thereof, from the Debtors at the purchase price and upon the terms and conditions set forth in an executed agreement in substantially the form of the Purchase Agreement and submit the executed clean copy together with a market copy showing any proposed changes, amendments and modifications to the Purchase Agreement (the "<u>Marked Agreement</u>");

(b)     The bid is not subject to any due diligence or financing contingency, is not conditioned on bid protections, other than those contemplated in the Bidding Procedures for subsequent overbids and is irrevocable until one

business day following the closing of the Sale Transaction with the Successful Bidder;

(c)       The bid provides that (i) the Potential Bidder agrees to the assumption by the Debtors and assignment to such Potential Bidder of any collective bargaining agreements entered into by and between the Debtors and the UAW with the exception of (1) the Debtors' agreement to provide certain retiree medical benefits specified in the Memorandum of Understanding Post-Retirement Medical Care, dated October 12, 2007, between Chrysler and the UAW, (2) the Memorandum of Understanding Post-Retirement Medical Care, dated April 29, 2009, between Chrysler and the UAW and (3) the 2008 Settlement Agreement; and (ii) the Potential Bidder will enter into the UAW Retiree Settlement Agreement;

(d)       The purchase price in such bid is a higher and better offer for the Purchased Assets, and such offer shall not be considered a higher or better offer unless such bid provides for net consideration to the Debtors' estates of at least $100 million more than the $2 billion cash consideration provided by the Purchaser, such amount to be deemed to include the amount of the Breakup Fee (the "Minimum Overbid Purchase Price");

(e)       The bid provides for the assumption by the Potential Bidder (pursuant to assumption documentation reasonably acceptable to Chrysler LLC, said Potential Bidder (or Purchaser), the U.S. Treasury, Export Development Canada and GMAC) of all obligations of Chrysler LLC under the GMAC MAFA Term Sheet (the "GMAC Term Sheet") attached to the Purchase Agreement as Exhibit A, or, if executed, the definitive GMAC Master AutoFinance Agreement, which agreement shall be substantially on the same terms as the GMAC Term Sheet or the Annexes thereto, as well as any intellectual property licensing agreements entered into connection therewith and all the other agreements that are specified in the GMAC Term Sheet, including, without limitation, one or more repurchase agreements with substantially the same terms as set forth in Annex D to Exhibit A of the Purchase Agreement (collectively with the GMAC Term Sheet, the "GMAC MAFA Documents"); provided, however, that GMAC makes available to said Potential Bidder in accordance with Article VI of these Bidding Procedures, the terms and conditions upon which the GMAC MAFA Documents have been based, including, but not limited to, the GMAC Term Sheet subject to customary confidentiality provisions (which shall include, without limitation, restrictions on the use and disclosure of information) satisfactory to GMAC;

(f)       The bid is received by the Bid Deadline;

(g)       The bid does not entitle a bidder to any break-up fee, termination fee or similar type of payment or reimbursement; and

     (h)     The bid is accompanied by a list of any executory contracts or unexpired leases that are to be assumed and/or assigned under such bid and demonstrate the Qualified Bidder's commitment to pay all Cure Costs and provide adequate assurance of future performance under any such executory contracts or unexpired leases to be assumed and/or assigned pursuant to such bid.

A Potential Bidder shall accompany its bid with: (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment if selected as the Successful Bidder or the Backup Bidder (as defined below) and such other evidence of ability to consummate the Sale Transaction as the Debtors may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any pertinent factual information regarding the Potential Bidder's operations that would assist the Debtors in their analysis of issues arising with respect to any applicable antitrust laws or other aspects of the bid.

No later than the Bid Deadline, a Potential Bidder must transfer to a deposit agent selected by the Debtors (the "Deposit Agent") a cash deposit (the "Good Faith Deposit") equal to 10% of the purchase price set forth in the Marked Agreement. The Good Faith Deposit must be made by certified check or wire transfer and will be held by the Deposit Agent in accordance with the terms of the Escrow Agreement to be provided with the Purchase Agreement.

A bid received from a Potential Bidder will be considered a "Qualified Bid" if (a) it meets the above requirements or (b) after consultation with the Creditors' Committee, the U.S. Treasury and the UAW, it is determined by the Debtors in the exercise of their fiduciary duties to be a Qualified Bid. Each Potential Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." For purposes hereof, the Purchaser is a Qualified Bidder and the Purchase Agreement executed by the Purchaser is a Qualified Bid. A Qualified Bid will be valued based upon factors such as: (a) the purported amount of the Qualified Bid, including any benefit to the Debtors' bankruptcy estates from any assumption of liabilities of the Debtors; (b) the fair value to be provided to the Debtors under the Qualified Bid; (c) the ability to close the proposed Sale Transaction without delay and within the timeframes contemplated by the Purchase Agreement; (d) the ability to obtain all necessary antitrust or other regulatory approvals for the proposed transaction; and (e) any other factors the Debtors may deem relevant. Within one business day after the Debtors determine that a bid is a Qualified Bid, the Debtors shall distribute a copy of such bid to counsel to the Purchaser by e-mail, hand delivery or overnight courier. The Debtors also shall provide copies of all Qualified Bids to each of the other Qualified Bidders.

The Debtors reserve the right, after consultation with the Creditors' Committee, the U.S. Treasury and the UAW, to reject any bid if such bid:

     (i)     is on terms that are materially more burdensome or conditional than the terms of the Purchase Agreement;

     (ii)     requires any indemnification of such Qualified Bidder on terms that are materially more burdensome or conditional than the terms of the Purchase Agreement; or

(iii)  includes a non-cash instrument or similar consideration that is not freely marketable.

Any bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid.

## IX.  Determination of Lead Bid

After consultation with the Creditors' Committee, the U.S. Treasury and the UAW, the Debtors will review and evaluate each Qualified Bid on the basis of financial and contractual terms, including any benefit to the Debtors' bankruptcy estates from any proposal to assume liabilities of the Debtors, and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction.  The Debtors also may negotiate with Qualified Bidders to clarify or enhance their bids (the "Bid Negotiation Process").  Any such clarifications or enhancements shall be promptly provided by the Debtors to the other Qualified Bidders and to the Notice Parties.

After completing any Bid Negotiation Process, the Debtors, in their reasonable business judgment and after consultation with the Creditors' Committee, the U.S. Treasury and the UAW, shall designate the highest and best of the Qualified Bids received (including any improved bids obtained from Qualified Bidders as part of the Bid Negotiation Process) as the best offer, considering all of the factors mentioned above (collectively, the "Bid Determination Procedures").  That offer shall be designated as the "Lead Bid" and the Qualified Bidder making such bid, the "Lead Bidder."  The Debtors also will identify the second best offer in accordance with the Bid Determination Procedures, which shall be designated as the "Secondary Bid" and the Qualified Bidder making such bid, the "Secondary Bidder."  In no event shall the Purchaser be deemed the Secondary Bidder.  The Debtors shall notify all Qualified Bidders and other Notice Parties, prior to the Sale Hearing, of the designation of the Lead Bid and Secondary Bid, and the amount and other material terms of such bids.  The Debtors shall file a notice of the designation of the Lead Bid and the Secondary Bid with the Court, including a copy of such bids, no later than 12:00 p.m., Eastern Time, on May 26, 2009.

If no additional Qualified Bids are received by the Bid Deadline, then (a) no Lead Bid or Secondary Bid will be designated, (b) the Purchaser's Qualified Bid shall be designated as the Successful Bid consistent with Section XI below and (c) the Debtors shall file a notice of the foregoing promptly after the Bid Deadline.

## X.  The Potential Auction

If any additional Qualified Bids are received by the Bid Deadline, the Debtors shall identify the Lead Bid and Lead Bidder, and the Secondary Bid and Secondary Bidder, at the outset of the Sale Hearing.  The Debtors shall offer other Qualified Bidders to state on the record whether they wish to enhance their bids to top the Lead Bid (a "Topping Bid").  If any other Qualified Bidder, including the Secondary Bidder, expresses an interest in bidding against the Lead Bid by submitting a Topping Bid, the Debtors shall conduct a court-supervised auction (the "Auction").  If no other Qualified Bids are received in the Bid Process or if no Qualified Bidders express an interest in providing a Topping Bid, no Auction will be conducted.  In each

case, the designation of the Successful Bid and the Backup Bid (if any) will be made consistent with Section XI below.

Additional rules for the conduct of the Auction shall be determined by the Debtors in their business judgment, in consultation with the Creditors' Committee, the UAW and the U.S. Treasury, based on the number and nature of the Qualified Bidders participating in the Auction and the terms and conditions contained in their Qualified Bids. These additional auction rules will be announced on the record in the Bankruptcy Court at the outset of the Auction.

If the Purchase Agreement with the Purchaser and Fiat is the only Qualified Bid submitted by the Bid Deadline, the Debtors shall not hold an auction and instead shall request at the Sale Hearing that the Court approve the Purchase Agreement with the Purchaser and Fiat.

## XI.    The Successful Bid

At the conclusion of any Auction, the highest and best bid, as determined by the Debtors consistent with the Bidding Procedures, shall be designated as the "Successful Bid" and the second highest and best bid as the "Backup Bid." If additional Qualified Bids are received but no Auction is conducted, the Lead Bid shall be designated as the Successful Bid and the Secondary Bid shall be designated as the Backup Bid. If no Qualified Bids are received other than the Purchase Agreement, the Purchase Agreement shall be designated as the Successful Bid, and there shall be no Auction and no Backup Bid. The bidder making the Successful Bid is referred to as the "Successful Bidder" and the bidder making any Backup Bid is referred to as the "Backup Bidder." In no event shall the Purchaser be deemed the Backup Bidder.

## XII.    The Sale Hearing

The Successful Bid will be presented to the Bankruptcy Court for approval at the Sale Hearing. If no other Qualified Bid is received by the Debtors and the Purchaser's original Purchase Agreement is the Successful Bid, then the Debtors anticipate that they will seek entry of an order at the Sale Hearing substantially in the form of Exhibit C to the Motion, authorizing and approving the Sale Transaction, including the sale of the Purchased Assets to the Purchaser, pursuant to the terms and conditions set forth in the Purchase Agreement. If a different bid is the Successful Bid, then the Debtors anticipate that they will seek the entry of an order substantially in the form of Exhibit C to the Motion, modified as necessary to reflect the terms of the Successful Bid, authorizing and approving the sale of the applicable Purchased Assets to the Successful Bidder. The Sale Hearing may be adjourned or rescheduled without notice, other than by an announcement of such adjournment at the Sale Hearing.

Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on all matters relating to the proposed sale, and parties shall be prepared to present their evidence in support of or in opposition to the proposed sale at the Sale Hearing; *provided, however,* that issues relating to the assumption and assignment of executory contracts and unexpired leases shall be addressed on the schedule established by the Contract Procedures.

## XIII.    **The Backup Bid**

If, for any reason, the Successful Bidder fails to consummate the purchase of the Purchased Assets, the Backup Bid automatically will be deemed to be the highest and best bid and be treated as the Successful Bid.  The Debtors shall be authorized to effect the sale, assignment and transfer of the applicable Purchased Assets to the Backup Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court as if such bidder were deemed the Successful Bidder in accordance with Section XI above.

## XIV.    **"As Is, Where Is"**

The Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates, except to the extent expressly set forth in the Purchase Agreement or the Marked Agreement corresponding to the Successful Bid, as the case may be.  Except as otherwise provided in the Successful Bid or such other bid which may ultimately be consummated in the sale of the Purchased Assets or a substantial portion thereof, all of the Debtors' right, title and interest in and to the Purchased Assets shall be sold free and clear all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities, and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to the Purchaser or to be excused from accepting performance by the Purchaser or performing for the benefit of the Purchaser under any Assumed Agreement and all rights at law or in equity, excluding any Designated Agreement (as defined below), all as more specifically set forth and defined in the Sale Motion and the proposed order approving the Sale Transaction (as so defined therein, "Claims") as set forth in the Purchase Agreement and the Sale Order, with such Claims to attach to the proceeds of the sale.

## XV.    **Modification of Procedures**

If necessary to satisfy their fiduciary duties or address the facts and circumstances presented, the Debtors may, after consultation with the Creditors' Committee, the U.S. Treasury, the UAW, the Purchaser and Fiat and such other persons as the Debtors deem appropriate, amend these Bidding Procedures or the Bidding Process at any time in any manner that will best promote the goals of the Bidding Process, including extending or modifying any of the dates described herein.

## XVI.    **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders shall be held in escrow by the Deposit Agent and shall not become property of the Debtors' estates absent further order of the Bankruptcy Court.  If a Successful Bidder and/or a Backup Bidder are chosen, the Good Faith Deposit of the Successful Bidder and the Backup Bidder will be retained by the Deposit Agent, notwithstanding the Bankruptcy Court's approval of the Sale Transaction, until the earlier of (a) the Closing of the Sale Transaction or (b) the termination of the applicable purchase

09-50026-smb   Doc 4029-1   Filed 09/03/09   Entered 09/03/09 10:59:03   Exhibit A
Pg 11 of 54

agreement and withdrawal of the Purchased Assets for sale by the Debtors.  At the closing of the
Sale Transaction contemplated by the Successful Bid, any Backup Bidder's Good Faith Deposit
shall be returned to the Backup Bidder, and the Successful Bidder will be entitled to a credit for
the amount of its Good Faith Deposit in accordance with the Successful Bid or to substitute the
consideration called for by the applicable purchase agreement  and receive the return of the Good
Faith Deposit.  Upon the return of the Good Faith Deposits, their respective owners shall receive
any and all interest that may have accrued thereon.

09-50026-smb    Doc 492-2    Filed 09/08/09    Entered 09/08/09 10:59:10    Exhibit B
Pg 1 of 6

**<u>EXHIBIT B</u>**

**[Form of Sale Notice]**

Hearing Date and Time:  May 27, 2009 at 10:00 a.m. (Eastern Time)
Objection Deadline:  May 19, 2009 at 4:00 p.m. (Eastern Time)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
In re                                                        :    Chapter 11
                                                             :
Chrysler LLC, *et al.*,[1]                                   :    Case No. 09-50002 (AJG)
                                                             :
                              Debtors.                       :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x

**NOTICE OF PROPOSED SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS, FREE AND
CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
AND SCHEDULING FINAL SALE HEARING RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

          1.          On April 30, 2009 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  On the May 3, 2009, the Debtors filed a motion with the Bankruptcy Court (the "Sale Motion") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims, interests and encumbrances (the "Sale Transaction"); (b) approval of certain procedures (the "Bidding Procedures") for the solicitation of bids with respect to the Sale Transaction (the "Bidding Procedures Relief"); (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the Sale Transaction; (d) approval of that certain settlement agreement between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") to be executed at the closing of the Sale Transaction (the "UAW Retiree Settlement Agreement") and (e) scheduling

---

[1]      The Debtors and their respective Tax ID numbers are as follows:  Chrysler LLC, Tax ID No. 38-2673623; Chrysler Aviation Inc., Tax ID No. 38-3475417; Chrysler Dutch Holding LLC, Tax ID No. 26-1498515; Chrysler Dutch Investment LLC, Tax ID No. 26-1498838; Chrysler Dutch Operating Group LLC, Tax ID No. 26-1498787; Chrysler Institute of Engineering, Tax ID No. N/A; Chrysler International Corporation, Tax ID No. 38-2631697; Chrysler International Limited, L.L.C., Tax ID No. N/A; Chrysler International Services, S.A., Tax ID No. 38-0420030; Chrysler Motors LLC, Tax ID No. 38-3625541; Chrysler Realty Company LLC, Tax ID No. 38-1852134; Chrysler Service Contracts Inc., Tax ID No. 38-3382368; Chrysler Service Contracts Florida, Inc., Tax ID No. 26-0347220; Chrysler Technologies Middle East Ltd., Tax ID No. 75-2487766; Chrysler Transport Inc., Tax ID No. 38-2143117; Chrysler Vans LLC, Tax ID No. 31-1781705; DCC 929, Inc., Tax ID No. 38-2899837; Dealer Capital, Inc., Tax ID No. 38-3036138; Global Electric Motorcars, LLC, Tax ID No. 31-1738535; NEV Mobile Service, LLC, Tax ID No. 33-1024272; NEV Service, LLC, Tax ID No. 03-0501234; Peapod Mobility LLC, Tax ID No. 26-4086991; TPF Asset, LLC, Tax ID No. 74-3167035; TPF Note, LLC, Tax ID No. 74-3167038; and Utility Assets LLC, Tax ID No. 20-0874783.

of a final hearing with the Bankruptcy Court for approval of the Sale Transaction (the "Sale Hearing").

2.      Chrysler LLC and its Debtor subsidiaries; Fiat S.p.A ("Fiat"); and New CarCo Acquisition LLC (the "Purchaser"), a Delaware limited liability company formed by Fiat, have entered into a Master Transaction Agreement, dated as of April 30, 2009 (the "Purchase Agreement"), which, together with certain ancillary agreements, contemplates a set of related transactions for the sale of sale of substantially all of the Debtors' tangible, intangible and operating assets, defined as the "Purchased Assets" in Section 2.06 of the Purchase Agreement, including the Designated Agreements (as defined in the Bidding Procedures Order), the assets related to the research, design, manufacturing, production, assembly and distribution of passenger cars, trucks and other vehicles (including prototypes) under brand names that include Chrysler, Jeep® and Dodge (the "CarCo Business"), certain of the facilities related thereto and all rights including intellectual property rights, trade secrets, customer lists, domain names, books and records, software and other assets used in or necessary to the operation of the CarCo Business or related thereto (collectively, as defined in the Purchase Agreement, the "Purchased Assets") to the Purchaser, subject to higher and better offers made pursuant to the Bidding Procedures.

3.      A hearing on the Bidding Procedures Relief was held before the Bankruptcy Court on May 1, 4 and 5, 2009, after which the Bankruptcy Court entered an order, among other things, approving the Bidding Procedures Relief [**Docket No. ____**] (the "Bidding Procedures Order")

4.      A copy of the Bidding Procedures Order and the Bidding Procedures (attached to the Bidding Procedures Order as Exhibit A) are attached hereto as Annex 1. The Bidding Procedures Order establishes the Bidding Procedures that govern the manner in which the Purchased Assets are to be sold. All bids must comply with the Bidding Procedures and be submitted so as to be received not later than 5:00 p.m., Eastern Time, on May 20, 2009.

5.      The Sale Hearing currently is scheduled to be conducted on May 27, 2009 at 10:00 a.m. (Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, Room 523, One Bowling Green, New York, New York 10004, before the Honorable Arthur J. Gonzalez, United States Bankruptcy Judge, to consider the approval of the UAW Retiree Settlement Agreement and the approval of the Purchase Agreement or any higher and better offer by a Successful Bidder (as defined in the Bidding Procedures), and may include the conduct of a court-supervised auction (the "Auction") in accordance with the Bidding Procedures. If the Purchaser is the Successful Bidder, the Debtors anticipate seeking entry of a Sale Order substantially in the form of the order attached to the Sale Motion as Exhibit C (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

6.      A copy of the Purchase Agreement (without certain commercially sensitive attachments) and the Sale Motion (including the proposed Sale Order) may be obtained by (a) sending a written request to counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017, Facsimile: (212) 755-7306 (Attn: Nathan Lebioda, Esq.) or

(b) accessing the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, at http://www.chryslerrestructuring.com/.

7.     **OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES TO THE PURCHASER OR ANOTHER SUCCESSFUL BIDDER AND THE REQUEST FOR COURT APPROVAL OF THE UAW RETIREE SETTLEMENT (EACH, AN "OBJECTION"), MUST BE MADE IN WRITING, FILED WITH THE BANKRUPTCY COURT, AND SERVED SO AS TO BE ACTUALLY RECEIVED BY 4:00 P.M. (EASTERN TIME) ON MAY 19, 2009 FOR ALL PARTIES IN INTEREST; PROVIDED, HOWEVER, THAT IF A DETERMINATION IS MADE AT THE SALE HEARING THAT THE SUCCESSFUL BIDDER IS A BIDDER OTHER THAN THE PURCHASER, PARTIES IN INTEREST MAY OBJECT SOLELY TO SUCH DETERMINATION AT THE SALE HEARING.**

8.     **ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH PARAGRAPH 7 ABOVE ON EACH OF THE FOLLOWING PARTIES:** (a) the Debtors, c/o Chrysler LLC, 1000 Chrysler Drive, CIMS# 485-14-96, Auburn Hills, Michigan 48326-2766 (Attn: Holly E. Leese, Esq.); (b) Jones Day, counsel to the Debtors, 222 East 41st Street, New York, New York 10017 (Attn: Corinne Ball, Esq. and Nathan Lebioda, Esq.) and 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn: Jeffrey B. Ellman, Esq.); (c) Capstone Advisory Group, LLC, Park 80 West, Plaza 1, Plaza Level, Saddle Brook, NJ 07663 (Attn: Robert Manzo); (d) Kramer Levin Naftalis & Frankel LLP, counsel to the Official Committee of Unsecured Creditors', 1177 Avenue of the Americas New York, New York 10036 (Attn: Thomas M. Mayer, Esq. and Kenneth H. Eckstein, Esq.); (e) Simpson Thacher & Bartlett LLP, counsel to the administrative agent for the Debtors' prepetition senior secured lenders, 425 Lexington Avenue, New York, New York 10017 (Attn: Peter Pantaleo, Esq. and David Eisenberg, Esq.); (f) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian S. Masumoto, Esq.); (g) the U.S. Department of Treasury (the "U.S. Treasury"), 1500 Pennsylvania Avenue NW, Room 2312 Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (h) United States Attorney's Office, Southern District of New York, Civil Division, Tax & Bankruptcy Unit, 86 Chambers Street, 3rd Floor, New York, New York 10007 and Cadwalader, Wickersham & Taft LLP, Of counsel to the Presidential Task Force on the Auto Industry, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (j) the Purchaser and Fiat, c/o Fiat S.p.A, Via Nizza n. 250, 10125 Torino, Italy (Attn: Chief Executive Officer); (k) Sullivan & Cromwell LLP, counsel to the Purchaser and Fiat, 125 Broad Street, New York, New York 10004 (Attn: Scott D. Miller, Esq. and Andrew Dietderich, Esq.) and 1888 Century Park East, 21st Floor, Los Angeles, CA 90067 (Attn: Hydee R. Feldstein, Esq.); (l) International Union, UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn: Daniel Sherrick, Esq.); (m) Cleary Gottlieb Steen & Hamilton LLP, counsel to the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (n) Cohen, Weiss and Simon LLP, counsel to the UAW, 330 W. 42nd St., New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (o) Togut, Segal & Segal, LLP, conflicts counsel to the Debtors, One Penn Plaza, New York, New York 10119 (Attn: Albert Togut, Esq.); and (p) any other statutory committees appointed in these cases.

9.     The Purchase Agreement contemplates, and the Sale Order, if approved, shall authorize the assumption and assignment of various executory contracts and unexpired leases that are the property of the Debtors (collectively, the "Assumed Agreements").   In accordance with the Bidding Procedures Order, additional individual notices setting forth the specific Assumed Agreements (or groups thereof) to be assumed by the Debtors and assigned to the Purchaser and the proposed cure amounts for such contracts will be given to all counterparties to Assumed Agreements.

10.     Under the Purchase Agreement, the Purchaser will assume certain specified liabilities of the Debtors that fall within the definition of "Assumed Liabilities" under the Purchase Agreement, including (a) certain liabilities and obligations arising post-closing under Assumed Agreements; (b) certain trade and accounts payable other than those relating to excluded contracts; (c) certain environmental liabilities on owned and leased real property acquired by the Purchaser; (d) certain payroll obligations to transferred employees; (e) liabilities under certain assumed benefit plants, (f) certain liabilities for product warranties, product returns and rebates; and (g) transfer taxes.   The foregoing summary of certain Assumed Liabilities is limited in all respects by the terms and conditions set forth in the Purchase Agreement.

11.     The failure of any person or entity to file an Objection on or before the Objection Deadline shall be deemed a consent to the Sale Transaction contemplating the sale of the Purchased Assets to the Purchaser or another Successful Bidder and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bidding Procedures Relief, the Sale Motion, the Auction, the sale of the Purchased Assets, the Debtors' consummation and performance of the Purchase Agreement or other agreement with a different Successful Bidder (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all liens, claims and encumbrances) or to the approval of the UAW Retiree Settlement Agreement.

12.     This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict.   The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated:  **[May__]**, 2009                                          BY ORDER OF THE COURT
        New York, New York

09-50026-smb    Doc 492-2    Filed 09/03/09    Entered 09/03/09 10:59:03    Exhibit B
Pg 38 of 64

**ANNEX 1**

**[Bidding Procedures Order with Exhibits B through E thereto intentionally omitted]**

## **EXHIBIT C**

### **[Form of Publication Notice]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                       :

In re                                :    Chapter 11
                                         :

Chrysler LLC, *et al.*,[1]          :    Case No. 09-50002 (AJG)
                                         :

                    Debtors.      :    (Jointly Administered)
                                         :

-----------------------------------------------------------x

## NOTICE OF PROPOSED SALE OF SUBSTANTIALLY
## ALL OF THE DEBTORS' ASSETS, FREE AND
## CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
## AND SCHEDULING FINAL SALE HEARING RELATED THERETO

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

      1.     On April 30, 2009 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). On May 3, 2009, the Debtors filed a motion with the Bankruptcy Court (the "Sale Motion") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims, interests and encumbrances (the "Sale Transaction"); (b) approval of certain procedures (the "Bidding Procedures") for the solicitation of bids with respect to the Sale Transaction (the "Bidding Procedures Relief"); (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the Sale Transaction; (d) approval of that certain settlement agreement between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") to be executed at the closing of the Sale Transaction (the "UAW Retiree Settlement Agreement") and (e) scheduling of a final hearing with the Bankruptcy Court for approval of the Sale Transaction (the "Sale Hearing").

---

[1]    The Debtors and their respective Tax ID numbers are as follows: Chrysler LLC, Tax ID No. 38-2673623; Chrysler Aviation Inc., Tax ID No. 38-3475417; Chrysler Dutch Holding LLC, Tax ID No. 26-1498515; Chrysler Dutch Investment LLC, Tax ID No. 26-1498838; Chrysler Dutch Operating Group LLC, Tax ID No. 26-1498787; Chrysler Institute of Engineering, Tax ID No. N/A; Chrysler International Corporation, Tax ID No. 38-2631697; Chrysler International Limited, L.L.C., Tax ID No. N/A; Chrysler International Services, S.A., Tax ID No. 38-0420030; Chrysler Motors LLC, Tax ID No. 38-3625541; Chrysler Realty Company LLC, Tax ID No. 38-1852134; Chrysler Service Contracts Inc., Tax ID No. 38-3382368; Chrysler Service Contracts Florida, Inc., Tax ID No. 26-0347220; Chrysler Technologies Middle East Ltd., Tax ID No. 75-2487766; Chrysler Transport Inc., Tax ID No. 38-2143117; Chrysler Vans LLC, Tax ID No. 31-1781705; DCC 929, Inc., Tax ID No. 38-2899837; Dealer Capital, Inc., Tax ID No. 38-3036138; Global Electric Motorcars, LLC, Tax ID No. 31-1738535; NEV Mobile Service, LLC, Tax ID No. 33-1024272; NEV Service, LLC, Tax ID No. 03-0501234; Peapod Mobility LLC, Tax ID No. 26-4086991; TPF Asset, LLC, Tax ID No. 74-3167035; TPF Note, LLC, Tax ID No. 74-3167038; and Utility Assets LLC, Tax ID No. 20-0874783.

2.      Chrysler LLC and its Debtor subsidiaries; Fiat S.p.A ("Fiat"); and New CarCo Acquisition LLC (the "Purchaser"), a Delaware limited liability company formed by Fiat, have entered into a Master Transaction Agreement, dated as of April 30, 2009 (the "Purchase Agreement"), which, together with certain ancillary agreements, contemplates a set of related transactions for the sale of sale of substantially all of the Debtors' tangible, intangible and operating assets, defined as the "Purchased Assets" in Section 2.06 of the Purchase Agreement, including the Designated Agreements (as defined in the Bidding Procedures Order), the assets related to the research, design, manufacturing, production, assembly and distribution of passenger cars, trucks and other vehicles (including prototypes) under brand names that include Chrysler, Jeep® and Dodge (the "CarCo Business"), certain of the facilities related thereto and all rights including intellectual property rights, trade secrets, customer lists, domain names, books and records, software and other assets used in or necessary to the operation of the CarCo Business or related thereto (collectively, as defined in the Purchase Agreement, the "Purchased Assets") to the Purchaser, subject to higher and better offers made pursuant to the Bidding Procedures.

3.      A hearing on the Bidding Procedures Relief was held before the Bankruptcy Court on May 1, 4 and 5, 2009, after which the Bankruptcy Court entered an order, among other things, approving the Bidding Procedures Relief **[Docket No. ____]** (the "Bidding Procedures Order"). The Bidding Procedures Order establishes the Bidding Procedures that govern the manner in which the Purchased Assets are to be sold.  All bids must comply with the Bidding Procedures and be submitted so as to be received not later than 5:00 p.m., Eastern Time, on May 20, 2009.

4.      The Sale Hearing currently is scheduled to be conducted on May 27, 2009 at 10:00 a.m. (Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, Room 523, One Bowling Green, New York, New York 10004, before the Honorable Arthur J. Gonzalez, United States Bankruptcy Judge, to consider the approval of the UAW Retiree Settlement Agreement and the approval of the Purchase Agreement or any higher and better offer by a Successful Bidder (as defined in the Bidding Procedures), and may include the conduct of a court-supervised auction (the "Auction") in accordance with the Bidding Procedures.  If the Purchaser is the Successful Bidder, the Debtors anticipate seeking entry of a Sale Order substantially in the form of the order attached to the Sale Motion as Exhibit C (the "Sale Order").  The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

5.      A copy of the Bidding Procedures Order (including the Bidding Procedures), the Sale Motion, the Purchase Agreement (without certain commercially sensitive attachments) and the Sale Motion (including the proposed Sale Order) may be obtained by (a) sending a written request to counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York 10017, Facsimile: (212) 755-7306 (Attn:  Nathan Lebioda, Esq.) or (b) accessing the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, at http://www.chryslerrestructuring.com/.

6.      **OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES TO THE PURCHASER OR ANOTHER SUCCESSFUL BIDDER AND THE REQUEST FOR COURT APPROVAL OF THE UAW RETIREE SETTLEMENT (EACH, AN "OBJECTION"), MUST BE MADE IN WRITING, FILED WITH THE**

**BANKRUPTCY COURT, AND SERVED SO AS TO BE <u>ACTUALLY</u> <u>RECEIVED</u> BY 4:00 P.M. (EASTERN TIME) ON MAY 19, 2009 FOR ALL PARTIES IN INTEREST; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT IF A DETERMINATION IS MADE AT THE SALE HEARING THAT THE SUCCESSFUL BIDDER IS A BIDDER OTHER THAN THE PURCHASER, PARTIES IN INTEREST MAY OBJECT SOLELY TO SUCH DETERMINATION AT THE SALE HEARING.**

7.     **ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH PARAGRAPH 6 ABOVE ON EACH OF THE FOLLOWING PARTIES:**  (a) the Debtors, c/o Chrysler LLC, 1000 Chrysler Drive, CIMS# 485-14-96, Auburn Hills, Michigan 48326-2766 (Attn: Holly E. Leese, Esq.); (b) Jones Day, counsel to the Debtors, 222 East 41st Street, New York, New York 10017 (Attn: Corinne Ball, Esq. and Nathan Lebioda, Esq.) and 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn: Jeffrey B. Ellman, Esq.); (c) Capstone Advisory Group, LLC, Park 80 West, Plaza 1, Plaza Level, Saddle Brook, NJ 07663 (Attn: Robert Manzo); (d) Kramer Levin Naftalis & Frankel LLP, counsel to the Official Committee of Unsecured Creditors', 1177 Avenue of the Americas New York, New York 10036 (Attn: Thomas M. Mayer, Esq. and Kenneth H. Eckstein, Esq.); (e) Simpson Thacher & Bartlett LLP, counsel to the administrative agent for the Debtors' prepetition senior secured lenders, 425 Lexington Avenue, New York, New York 10017 (Attn: Peter Pantaleo, Esq. and David Eisenberg, Esq.); (f) the Office of the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"), 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian S. Masumoto, Esq.); (g) the U.S. Department of Treasury (the "<u>U.S. Treasury</u>"), 1500 Pennsylvania Avenue NW, Room 2312 Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (h) United States Attorney's Office, Southern District of New York, Civil Division, Tax & Bankruptcy Unit, 86 Chambers Street, 3rd Floor, New York, New York 10007 and Cadwalader, Wickersham & Taft LLP, Of counsel to the Presidential Task Force on the Auto Industry, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (i) Vedder Price, P.C., counsel to Export Development Canada, 1633 Broadway, 47th Floor New York, New York 10019 (Attn: Michael J. Edelman, Esq.); (j) the Purchaser and Fiat, c/o Fiat S.p.A, Via Nizza n. 250, 10125 Torino, Italy (Attn: Chief Executive Officer); (k) Sullivan & Cromwell LLP, counsel to the Purchaser and Fiat, 125 Broad Street, New York, New York 10004 (Attn: Scott D. Miller, Esq. and Andrew Dietderich, Esq.) and 1888 Century Park East, 21st Floor, Los Angeles, CA 90067 (Attn: Hydee R. Feldstein, Esq.); (l) International Union, UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn: Daniel Sherrick, Esq.); (m) Cleary Gottlieb Steen & Hamilton LLP, counsel to the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (n) Cohen, Weiss and Simon LLP, counsel to the UAW, 330 W. 42nd St., New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (o) Togut, Segal & Segal, LLP, conflicts counsel to the Debtors, One Penn Plaza, New York, New York 10119 (Attn: Albert Togut, Esq.); and (p) any other statutory committees appointed in these cases.

8.     The Purchase Agreement contemplates, and the Sale Order, if approved, shall authorize the assumption and assignment of various executory contracts and unexpired leases that are the property of the Debtors (collectively, the "<u>Assumed Agreements</u>").  In accordance with the Bidding Procedures Order, additional individual notices setting forth the specific Assumed Agreements (or groups thereof) to be assumed by the Debtors and assigned to the Purchaser and the proposed cure amounts for such contracts will be given to all counterparties to Assumed Agreements.

9.      Under the Purchase Agreement, the Purchaser will assume certain specified liabilities of the Debtors that fall within the definition of "Assumed Liabilities" under the Purchase Agreement, including (a) certain liabilities and obligations arising post-closing under Assumed Agreements; (b) certain trade and accounts payable other than those relating to excluded contracts; (c) certain environmental liabilities on owned and leased real property acquired by the Purchaser; (d) certain payroll obligations to transferred employees; (e) liabilities under certain assumed benefit plants, (f) certain liabilities for product warranties, product returns and rebates; and (g) transfer taxes. The foregoing summary of certain Assumed Liabilities is limited in all respects by the terms and conditions set forth in the Purchase Agreement.

10.     The failure of any person or entity to file an Objection on or before the applicable Objection Deadline shall be deemed a consent to the Sale Transaction contemplating the sale of the Purchased Assets to the Purchaser or another Successful Bidder and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bidding Procedures Relief, the Sale Motion, the Auction, the sale of the Purchased Assets, the Debtors' consummation and performance of the Purchase Agreement or other agreement with a different Successful Bidder (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all liens, claims and encumbrances) or to the approval of the UAW Retiree Settlement Agreement.

11.     This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated:  **[May__]**, 2009                                          BY ORDER OF THE COURT
        New York, New York

09-50002-smb    Doc 492-4    Filed 09/03/09    Entered 09/03/09 10:59:10    Exhibit D
Pg 1 of 10

# EXHIBIT D

## [Form of Assignment Notice]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11
                                            :
Chrysler LLC, *et al.*,[1]                  :    Case No. 09-50002 (AJG)
                                            :
                            Debtors.        :    (Jointly Administered)
                                            :
----------------------------------------------------------------x

## NOTICE OF (I) DEBTORS' INTENT
## TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES AND (II) CURE COSTS RELATED THERETO

### PLEASE TAKE NOTICE OF THE FOLLOWING:

　　　　1.　　On May 3, 2009, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Sale Motion")[2] with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims and encumbrances; (b) approval of certain procedures (the "Bidding Procedures") for the solicitation of bids with respect to the Sale Transaction (the "Bidding Procedures Relief"); (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the Sale Transaction; (d) approval of that certain settlement agreement between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") to be executed at the closing of

---

[1]　　The Debtors and their respective Tax ID numbers are as follows:  Chrysler LLC, Tax ID No. 38-2673623; Chrysler Aviation Inc., Tax ID No. 38-3475417; Chrysler Dutch Holding LLC, Tax ID No. 26-1498515; Chrysler Dutch Investment LLC, Tax ID No. 26-1498838; Chrysler Dutch Operating Group LLC, Tax ID No. 26-1498787; Chrysler Institute of Engineering, Tax ID No. N/A; Chrysler International Corporation, Tax ID No. 38-2631697; Chrysler International Limited, L.L.C., Tax ID No. N/A; Chrysler International Services, S.A., Tax ID No. 38-0420030; Chrysler Motors LLC, Tax ID No. 38-3625541; Chrysler Realty Company LLC, Tax ID No. 38-1852134; Chrysler Service Contracts Inc., Tax ID No. 38-3382368; Chrysler Service Contracts Florida, Inc., Tax ID No. 26-0347220; Chrysler Technologies Middle East Ltd., Tax ID No. 75-2487766; Chrysler Transport Inc., Tax ID No. 38-2143117; Chrysler Vans LLC, Tax ID No. 31-1781705; DCC 929, Inc., Tax ID No. 38-2899837; Dealer Capital, Inc., Tax ID No. 38-3036138; Global Electric Motorcars, LLC, Tax ID No. 31-1738535; NEV Mobile Service, LLC, Tax ID No. 33-1024272; NEV Service, LLC, Tax ID No. 03-0501234; Peapod Mobility LLC, Tax ID No. 26-4086991; TPF Asset, LLC, Tax ID No. 74-3167035; TPF Note, LLC, Tax ID No. 74-3167038; and Utility Assets LLC, Tax ID No. 20-0874783.

[2]　　You may obtain a copy of the Sale Motion and the Purchase Agreement (without certain commercially sensitive attachments) by accessing the website established by the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC at http://www.chryslerrestructuring.com/.

NYI-4178467v4

the Sale Transaction (the "<u>UAW Retiree Settlement Agreement</u>") and (e) scheduling of a final hearing with the Bankruptcy Court for approval of the Sale Transaction (the "<u>Sale Hearing</u>").

      2.     Chrysler LLC and its Debtor subsidiaries; Fiat S.p.A ("<u>Fiat</u>"); and New CarCo Acquisition LLC (the "<u>Purchaser</u>"), a Delaware limited liability company formed by Fiat, have entered into a Master Transaction Agreement, dated as of April 30, 2009 (the "<u>Purchase Agreement</u>"), which, together with certain ancillary agreements, contemplates a set of related transactions for the sale of substantially all of the Debtors' tangible, intangible and operating assets, defined as the "Purchased Assets" in Section 2.06 of the Purchase Agreement, including the Designated Agreements (as defined below) the assets related to the research, design, manufacturing, production, assembly and distribution of passenger cars, trucks and other vehicles (including prototypes) under brand names that include Chrysler, Jeep® and Dodge (the "<u>CarCo Business</u>"), certain of the facilities related thereto and all rights including intellectual property rights, trade secrets, customer lists, domain names, books and records, software and other assets used in or necessary to the operation of the CarCo Business or related thereto (collectively, as defined in the Purchase Agreement, the "<u>Purchased Assets</u>") to the Purchaser, subject to higher and better offers made pursuant to the Bidding Procedures.

      3.     This Notice is provided to inform you of the Debtors' intent to assume and assign to the Purchaser certain executory contracts and/or unexpired leases. The following procedures (the "<u>Contract Procedures</u>") govern the assumption and assignment of these agreements in connection with the sale of the Purchased Assets to the Purchaser:[3]

(a)    <u>Contract Designations</u>. The Purchase Agreement contemplates, and the Sale Order, if approved, shall authorize the assumption and assignment to the Purchaser of certain executory contract(s) and unexpired lease(s). Attached hereto as **<u>Exhibit A</u>** is a list of certain executory contracts and unexpired leases that the Debtors intend to assume and assign to the Purchaser (collectively, the "<u>Designated Agreements</u>" and, each, a "<u>Designated Agreement</u>"), pursuant to section 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

(b)    <u>Cure Costs</u>. The Debtors have listed on **<u>Exhibit A</u>** annexed hereto the amounts that the Debtors believe must be paid to cure all prepetition defaults under the Designated Agreements as of April 30**,** 2009, in accordance with section 365(b) of the Bankruptcy Code (in each instance, the "<u>Cure Costs</u>"). Cure Costs may be listed on **<u>Exhibit A</u>** on an agreement-by-agreement basis or in the aggregate for multiple Designated Agreements.

(c)    <u>Agreement to Assumption and Assignment</u>. If you agree with the Cure Costs indicated on **<u>Exhibit A</u>**, and otherwise do not object to the Debtors' assumption and assignment of your lease or contract, you are not required take any further action.

---

[3]    This Notice is subject to the full terms and conditions of the Sale Motion, the Bidding Procedures Order and the Contract Procedures set forth in the Bidding Procedures Order, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

(d)     <u>Section 365 Objections</u>.  Objections, if any, to the proposed assumption and assignment of the Designated Agreements, including, but not limited to, objections related to adequate assurance of future performance, or objections relating to whether applicable law excuses the non-debtor counterparty to such Designated Agreement (the "<u>Non-Debtor Counterparty</u>") from accepting performance by, or rendering performance to, Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code, or to the proposed Cure Costs (a "<u>Section 365 Objection</u>"), must be made in writing and filed with the Bankruptcy Court so as to be **received no later than ten days after the date of this Notice** (the "<u>Section 365 Objection Deadline</u>") by the Bankruptcy Court and the following parties:  (i) the Debtors, c/o Chrysler LLC, 1000 Chrysler Drive, CIMS# 485-14-96, Auburn Hills, Michigan 48326-2766 (Attn:  Holly E. Leese, Esq.); (ii) Jones Day, counsel to the Debtors, 222 East 41st Street, New York, New York 10017 (Attn:  Corinne Ball, Esq. and Nathan Lebioda, Esq.) and 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn:  Jeffrey B. Ellman, Esq.); (iii) Capstone Advisory Group, LLC, Park 80 West, Plaza 1, Plaza Level, Saddle Brook, NJ 07663 (Attn:  Robert Manzo); (iv) Kramer Levin Naftalis & Frankel LLP, counsel to the Official Committee of Unsecured Creditors', 1177 Avenue of the Americas New York, New York 10036 (Attn:  Thomas M. Mayer, Esq. and Kenneth H. Eckstein, Esq.); (v) Simpson Thacher & Bartlett LLP, counsel to the administrative agent for the Debtors' prepetition senior secured lenders, 425 Lexington Avenue, New York, New York 10017 (Attn: Peter Pantaleo, Esq. and David Eisenberg, Esq.); (vi) the Office of the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"), 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn:  Brian S. Masumoto, Esq.); (vii) the U.S. Department of Treasury (the "<u>U.S. Treasury</u>"), 1500 Pennsylvania Avenue NW, Room 2312 Washington, D.C. 20220 (Attn:  Matthew Feldman, Esq.); (viii) United States Attorney's Office, Southern District of New York, Civil Division, Tax & Bankruptcy Unit, 86 Chambers Street, 3rd Floor, New York, New York 10007 and Cadwalader, Wickersham & Taft LLP, Of counsel to the Presidential Task Force on the Auto Industry, One World Financial Center, New York, New York 10281 (Attn:  John J. Rapisardi, Esq.); (ix) Vedder Price, P.C., counsel to Export Development Canada, 1633 Broadway, 47th Floor New York, New York 10019 (Attn: Michael J. Edelman, Esq.); (x) the Purchaser and Fiat, c/o Fiat S.p.A, Via Nizza n. 250, 10125 Torino, Italy (Attn: Chief Executive Officer); (xi) Sullivan & Cromwell LLP, counsel to the Purchaser and Fiat, 125 Broad Street, New York, New York 10004 (Attn:  Scott D. Miller, Esq. and Andrew Dietderich, Esq.) and 1888 Century Park East, 21st Floor, Los Angeles, CA 90067 (Attn:  Hydee R. Feldstein, Esq.); (xii) International Union, UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn:  Daniel Sherrick, Esq.); (xiii) Cleary Gottlieb Steen & Hamilton LLP, counsel to the UAW, One Liberty Plaza, New York, New York 10006 (Attn:  James L. Bromley, Esq.); (xiv) Cohen, Weiss and Simon LLP, counsel to the UAW, 330 W. 42nd St., New York, New York 10036 (Attn:  Babette Ceccotti, Esq.); (xv) Togut, Segal & Segal, LLP, conflicts counsel to the Debtors, One Penn Plaza, New York, New York 10119 (Attn:  Albert Togut, Esq.); and (xvi) any other statutory committees appointed in these cases.

(e)     <u>Resolution of Objections; Section 365 Hearing</u>.  Upon the filing of a Section 365 Objection (i) challenging the ability of the Debtors to assume or assign the Designated Agreement (a "<u>Disputed Designation</u>") or (ii) asserting a cure amount higher than the

proposed Cure Costs indicated on **Exhibit A** annexed hereto (the "Disputed Cure Costs"), the Debtors, the Purchaser and the objecting Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Bankruptcy Court intervention.  If any of the Debtors, the Non-Debtor Counterparty or the Purchaser determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Disputed Designation and/or the amount to be paid under section 365 of the Bankruptcy Code with respect to the Disputed Cure Costs will be determined by the Bankruptcy Court at an omnibus hearing established for such purpose that is on a date not less than ten days after the service of such objection or such other date as determined by the Bankruptcy Court (the "Section 365 Hearing"), unless the Debtors, the Purchaser and the Non-Debtor Counterparty to the Designated Agreement in dispute agree otherwise.  Unless otherwise agreed by the parties, the Section 365 Hearing to consider objection relating to the Designated Agreement shall be conducted on **June 4, 2009 at 10:00 a.m., Eastern Time** at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, Room 523, One Bowling Green, New York, New York 10004, before the Honorable Arthur J. Gonzalez, United States Bankruptcy Judge.  If the Bankruptcy Court determines at a Section 365 Hearing that the Designated Agreement cannot be assumed and assigned, or establishes Cure Costs that the Purchaser is not willing to pay, then such executory contract or unexpired lease shall no longer be considered a Designated Agreement.

(f)    Failure to Object; Consent to Assumption and Assignment.  Unless a Section 365 Objection is filed and served before the Section 365 Objection Deadline, all parties shall be deemed to have consented to such Cure Costs and the assumption and assignment of such Designated Agreements, and such party shall be forever barred from objecting to the Cure Costs or such assumption and assignment and from asserting any additional cure or other amounts against the Debtors, their estates or the Purchaser.

(g)    Resolution of Assumption/Assignment Issues.  If the Non-Debtor Counterparty to a Designated Agreement fails to timely assert a Section 365 Objection as described in paragraph (d) above, or upon the resolution of any timely Section 365 Objection by agreement of the parties or order of the Bankruptcy Court approving an assumption and assignment, such Designated Agreement shall be deemed to be assumed by the Debtors and assigned to the Purchaser and the proposed Cure Cost related to such Designated Agreement shall be established and approved in all respects, subject to the conditions set forth in paragraph (j) below.

(h)    Additional Contract Designations.  In accordance with Section 2.10 of the Purchase Agreement, the Debtors may, at the Purchaser's request or with the Purchaser's consent, designate, up to the Agreement Designation Deadline, additional executory contracts and unexpired leases as agreements to be assumed by the Debtors and assigned to the Purchaser pursuant to the Purchase Agreement (the "Additional Designated Agreements").  As used herein the "Agreement Designation Deadline" means, as applicable, (i) 30 days after the Closing Date (as defined in the Purchase Agreement) with respect to the Dealer Agreements (as defined below), (ii) 60 days after the Closing Date for executory contracts and unexpired leases with the Debtors' production suppliers

and (iii) 90 days after the Closing Date for all other agreements.  Upon determining that a specific executory contract or unexpired lease, or a group thereof, are Additional Designated Agreements, the Debtors, at the Purchaser's request, shall serve notice on each of the Non-Debtor Counterparties to such Additional Designated Agreements and their Counsel of Record, indicating (i) that the notice recipient is a Non-Debtor Counterparty to one or more executory contracts or unexpired leases with the Debtors that the Debtors intend to assume and assign to the Purchaser and (ii) the corresponding Cure Cost under the Additional Designated Agreements as of April 30, 2009; provided, that such Assignment Notice shall in no way limit such Non-Debtor Counterparty's entitlement to Cure Costs accruing during the period after April 30, 2009

(i)    Purchaser Confirmation Notice.  Prior to the Closing Date and no later than June 12, 2009 (the "Pre-Closing Deadline"), the Purchaser shall serve on all applicable Non-Debtor Counterparties a notice indicating those Designated Agreements (including Additional Designated Agreements) with respect to which the Purchaser has made a final determination to take assignment of a Designated Agreement (a "Confirmation Notice"), subject only to Cure Costs not being established in an amount greater than the amounts set forth in **Exhibit A** unless otherwise agreed upon in writing by the Purchaser. Designated Agreements (including Additional Designated Agreements) listed on a Confirmation Notice are referred to as "Confirmed Agreements."  The Purchaser may serve additional Confirmation Notices at any time through the Agreement Designation Deadline.  Until a Designated Agreement is listed on a Confirmation Notice, it shall not be considered to be either assumed or assigned and shall remain subject to assumption, rejection or redesignation hereunder.

(j)    Conditions on Assumption and Assignment.  Please read **Exhibit A** carefully.  In some cases, **Exhibit A** identifies additional terms or conditions of assumption and assignment with respect to a particular Designated Agreement.  The Debtors' decision to assume and assign the Designated Agreements is subject to Bankruptcy Court approval and consummation of the Sale Transaction.  Accordingly, subject to the satisfaction of conditions in paragraph (g) above to address any cure or assignment disputes, the Debtors shall be deemed to have assumed and assigned to the Purchaser each of the Designated Agreements as of the date of and effective only upon the Closing Date, and absent such closing, each of the Designated Agreements shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code.  Assumption and assignment of the Designated Agreements also is subject to the Purchaser's rights set forth in paragraphs (h) and (i) above.  The Purchaser shall have no rights in and to a particular Designated Agreement until such time as the particular Designated Agreement has been identified by the Purchaser as a Confirmed Agreement and is assumed and assigned in accordance with the procedures set forth herein.  Once assumed and assigned as a Confirmed Agreement under these Contract Procedures, a Designated Agreement is not subject to rejection under section 365 of the Bankruptcy Code.

(k)    Pre-Closing Assurance Letters.  From and after the Pre-Closing Deadline through the Closing Date, with respect to any Designated Agreement not listed in a Confirmation Notice that is a production supply contract or a dealer contract with respect to which the

Non-Debtor Counterparty has determined that it must incur costs after the Pre-Closing Deadline to remain in a position to perform in accordance with the Designated Agreement upon assumption by the Purchaser, the Non-Debtor Counterparty may send a letter to the Debtors and to the Purchaser describing such additional costs under such agreement and seeking assurance of the Purchaser's intentions with respect to such agreement (an "Assurance Letter").  In response to an Assurance Letter, the Purchaser may either (i) provide a Confirmation Notice to the Non-Debtor Counterparty; (ii) elect not to deliver a Confirmation Notice at such time but to provide the Non-Debtor Counterparty with assurances that the Purchaser will advance the costs of any ongoing performance by the Non-Debtor Counterparty pending a final determination to assume the underlying Designated Agreement (such advances to be reflected by an appropriate credit against future payments to the Non-Debtor Counterparty under the Designated Agreement only in the event that such Designated Agreement becomes a Confirmed Agreement); or (iii) elect not to deliver a Confirmation Notice at such time but to agree in writing that the Non-Debtor Counterparty may temporarily suspend performance during this period without penalty (and, if applicable, upon assumption and assignment to the Purchaser, toll or delay subsequent deliveries as may be reasonably required to reflect the suspension of performance during such period).  If no response to an Assurance Letter is received within five business days, the Non-Debtor Counterparty may temporarily suspend performance of the agreement pursuant to clause (iii) above.  Any disputes relating to the foregoing shall be heard by the Bankruptcy Court.  For purposes of this paragraph, the Debtors and the Purchaser shall be contacted at the addresses identified in paragraph (d) above.

(l)     Post-Closing Assurances.  From and after the Closing Date through the applicable Agreement Designation Deadline, Non-Debtor Counterparties may serve a written request on the Debtors and the Purchaser for a final determination of the assumption or rejection of its executory contracts and unexpired leases.  Absent a favorable response within ten days, the Non-Debtor Counterparty may file a motion to compel assumption or rejection of such agreement, which may be heard on ten days' notice, subject to the Court's availability; provided, however, that in the event that a Non-Debtor Counterparty believes that it requires a more expeditious decision regarding assumption or rejection of its executory contract or unexpired lease, such Non-Debtor Counterparty shall be free to seek expedited relief from the Court, without regard to the ten day periods referenced herein but subject to the legal standards and requirements applicable to requests for expedited consideration, provided further that in such event the counterparty shall give as much advance notice as reasonably practicable under the circumstances to the Debtors and the Purchaser.  For purposes of this paragraph, the Debtors and the Purchaser shall be contacted at the addresses identified in paragraph (d) above.

(m)     Cure Payments.  Except as may otherwise be agreed to by the parties to a Designated Agreement, the defaults under the Designated Agreements that must be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured as follows:  the Purchaser shall pay all Cure Costs relating to an assumed executory contract or unexpired lease within ten days after the later of (i) the Closing Date or, (ii) the date on which such executory contract or unexpired lease is deemed assumed and assigned, in accordance

with subparagraph (j) of these Contract Procedures or (iii) with respect to Dispute Cure Costs, the date the amount thereof is finally determined.

(n)     <u>Rights Pending Assumption or Rejection.</u>  Nothing in these Contract Procedures limits, restricts or expands the rights of parties to executory contracts and unexpired leases pending assumption or rejection, including any rights to seek further relief from the Bankruptcy Court (including motions to compel a prompt final decision on assumption or rejection), or the rights of other parties in response to such requests.

(o)     <u>Filing of Final List of Confirmed Agreements</u>.  As soon as reasonably practicable after the Agreement Designation Deadline, the Debtors shall file with the Court a final schedule indicating all Confirmed Agreements and the proposed Cure Costs relating to each Confirmed Agreement scheduled therein.

(p)     <u>Direct Dealer Agreements</u>.  Certain executory dealer agreements will be identified as Designated Agreements to be assumed and assigned.  Although most U.S. dealers have entered into standard uniform dealership agreements in the form of the Chrysler Corporation Sales and Service Agreement (the "<u>Sales and Service Agreement</u>"), some dealers are parties to older agreements in the form of the Chrysler Direct Dealer Agreement (each, a "<u>Direct Dealer Agreement</u>").  If a Direct Dealer Agreement is identified as a Designated Agreement in the attached **<u>Exhibit A</u>**, then such Direct Dealer Agreement will only be assumed and assigned to the Purchaser if the counterparty to the Direct Dealer Agreement first agrees to modify such Direct Dealer Agreement and restate it in the form of the Sales and Service Agreement (each such modified Direct Dealer Agreement and Sales and Service Agreement, a "<u>Dealer Agreement</u>").  If the counterparty and the Debtors do not so modify and restate such Direct Dealer Agreement in the form of the Sales and Service Agreement, then notwithstanding any other provisions in this Notice or on the Bid Procedures Order, such Direct Dealer Agreement will not be assumed and assigned as set forth herein.

4.      The inclusion of any document on the list of Designated Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Purchaser that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto being expressly reserved.

5.      Any Section 365 Objection shall not constitute an objection to the relief generally requested in the Sale Motion (<u>e.g.</u>, the sale of the Purchased Assets by the Debtors to the Purchaser free and clear of claims, liens and encumbrances).  Parties wishing to object to the other relief requested in the Sale Motion (excluding the Bidding Procedures Relief) must file and serve a separate objection, stating with particularity such party's grounds for objection, in accordance with the objection procedures approved and set forth in the Bidding Procedures Order.

6.      If a party other than the Purchaser is the Successful Bidder for the Purchased Assets, you will receive a separate notice providing additional information regarding the treatment of your Designated Agreement; <u>provided</u>, <u>however</u>, that if the applicable Cure

09-50026-smb   Doc 492-2   Filed 09/03/09   Entered 09/03/09 10:59:10   Exhibit D
Pg 52 of 64

Costs has been established pursuant to these procedures, it shall not be subject to further dispute if the new purchaser seeks to acquire such agreement.

7.    **[Questions or inquiries relating to this Notice may be directed to:** [_____**].]**

Dated:  **[May__]**, 2009                                    BY ORDER OF THE COURT
         New York, New York

09-50002-smb    Doc 492-2    Filed 09/03/09    Entered 09/03/09 10:59:10    Exhibit D

# EXHIBIT A

**[Schedule of Designated Agreements and Proposed Cure Costs]**

## EXHIBIT E

### [Form of UAW Retiree Notices]

# A Message to UAW Chrysler Retirees

Dear Brothers and Sisters,

As we all know, the Chrysler Corporation -- along with the entire U.S. auto industry -- is engulfed in a severe crisis. Chrysler lost $8 billion in 2008 and is projected to sustain unprecedented losses again in 2009. The difficulty of the situation was highlighted when Chrysler filed for Bankruptcy on April 30. In this environment, we are fighting every day to preserve and protect to the greatest extent possible our hard-won gains, particularly for the retirees who helped build this industry with your years of loyal service.

After a lengthy process that included congressional hearings and petitioning the White House, Chrysler was granted an initial $4 billion loan by the Bush administration on Dec. 19, 2008. As part of that loan, Chrysler was required to submit a restructuring plan to the Treasury Department on February 17, 2009. On March 30, President Obama announced that the company's February 17 plan didn't go far enough in reducing costs and laying the groundwork for sustainability. He said Chrysler must form a partnership with Fiat or another automaker within 30 days to receive $6 billion in additional loans. The Treasury Department's auto task force also required deeper concessions from UAW members, retirees and other company stakeholders.

On April 30, President Obama announced that Chrysler, Fiat, the UAW and the Treasury Department had reached agreement on a broad restructuring plan, including the terms of a business alliance between Chrysler and Fiat. That agreement includes a new schedule of contributions to the trust fund that will provide continued retiree medical benefits. It also includes modifications to the collective bargaining agreement for active employees. The UAW active workforce ratified that agreement last week. Based on these agreements, the United States government will provide the $6 billion of additional loans to allow Chrysler to complete its restructuring.

In order to complete its restructuring process, President Obama also announced that Chrysler filed a petition under Chapter 11 of the United States Bankruptcy Code. The goal of the bankruptcy filing is to allow Chrysler, Fiat, the UAW and the Treasury Department to obtain swift court approval of the restructuring so that the company can move forward to implement the agreements between the parties.

## Proposed Sale

To complete the restructuring, a new company will be formed which will purchase the operating assets of Chrysler. If approved by the court, the new company will enter into the agreements with the UAW covering both active and retired workers. The new company will be funded with the new loans from the Treasury Department and will be owned by Fiat, the United States government and the retiree medical benefit Trust Fund.

Attached to this letter is a formal notice from the Bankruptcy Court regarding the proposed sale. As described in that notice, the Bankruptcy Court will soon hold a hearing to consider that

proposed sale.  As part of the approval of the sale, the court will also be asked to approve the new agreement regarding the retiree medical benefits program, as described below.

## Pension Plan Continues Without Change

The restructuring agreements provide that the new company will take over responsibility for the Chrysler UAW pension plan.  That plan will continue operations and pension benefits will be continued at their current level.

## Retiree Medical Benefits

Retiree medical benefits were one of the most significant issues addressed in 2007 bargaining. The 2007 National UAW-Chrysler Agreement established a new Trust Fund (called a "Voluntary Employee Beneficiary Association" or "VEBA"), which is responsible for retiree medical benefits starting on January 1, 2010.   The 2007 Agreement established a series of cash contributions by the Company to the VEBA, beginning on January 1, 2010.

In order for Chrysler to receive the new $6 billion government loan, we were required to support a series of changes to the retiree medical and VEBA agreements.

In this difficult situation, we were able to preserve the core medical benefit program for retirees. These were hard fought issues and the changes described below are certainly painful.  But if we had not agreed to support these changes, the U.S. Government would not have provided the additional loans to Chrysler, which would have lead to immediate liquidation of the company. In a liquidation, the VEBA funding would likely have been completely eliminated, which would have meant an immediate and permanent termination of all retiree medical coverage.

The following summarizes the principal features of the proposed agreement.

**New $4.587 Billion Note.**  The VEBA will receive a new Note from the new company, payable in cash, with a Principal Amount of $4.587 billion.  Annual cash payments under the new Note are $315 million in 2010; $300 million in 2011; $400 million in 2012; and $600 million in 2013. These payments then increase to $650 million per year for 2014 through 2017, and to $823 million per year for years 2018 through 2023.  In compliance with  the government loan agreement, the value of this new Note represents one-half of the value to be received by the VEBA.

**VEBA to own Significant  Stock.**  Another requirement of the Treasury Department loans was that half of the value received by the VEBA be in the form of stock.  To meet that requirement, the VEBA will receive 55 percent of the stock in the new Chrysler.  Fiat will eventually own 35 percent of the stock.  The remaining 10 percent will be owned by the U.S. and Canadian Governments in return for their financial support.

Since the new Chrysler will not be a publicly-traded company, the new VEBA agreement includes mechanisms for the VEBA to sell the stock under certain conditions to other parties. Once the stock becomes publicly traded, the VEBA will be able to sell its stock to the public in accordance with a Registration Rights Agreement.

The VEBA will have the right to designate a member of the new company's Board of Directors, with UAW consent. The VEBA will be required to vote its shares in accordance with the direction of the Independent Directors on the board of the new company.

If the VEBA sells this stock for more than $4.25 billion (increasing at 9% each year starting on January 1, 2010), any further stock still held by the VEBA will be transferred to the U.S. Government, as part of its consideration for the $6 billion in new government loans.

**Existing Internal VEBA Assets Transferred on January 1, 2010.** Along with this new payment structure, on January 1, 2010 the VEBA will receive the assets of an internal trust fund maintained at Chrysler (called the "Internal VEBA"). The approximate current value of the assets in that fund is $1.5 billion. The management of these assets will be transferred to the new company, which will continue to invest them during the balance of 2009. These funds will be transferred to the new VEBA on January 1, 2010.

**Pension Pass Through Eliminated.** One funding mechanism under the 2007 Agreement was called the "Pension Pass Through." Under that arrangement, the new VEBA was scheduled to impose an additional monthly contribution requirement, and the Chrysler pension benefits were to increase in a corresponding amount. This mechanism has been eliminated and its value is instead reflected in the new Note described above.

**VEBA Committee can adjust benefits beginning in 2010:** As provided under the 2007 Agreement, the VEBA will be governed by an 11-member Committee, including 5 members appointed by the UAW and 6 Independent Members. Under the 2007 Agreement, that Committee had the authority, starting on January 1, 2012, to adjust benefits so that benefit levels could be kept consistent with the assets in the Trust. Under the new agreement, the Committee will be allowed to make necessary benefit adjustments beginning when the VEBA assumes responsibility on January 1, 2010.

## Immediate Changes in Benefit Levels Required

Under the 2007 Agreement, Chrysler remained responsible for providing retiree medical benefits through the end of 2009, with the new VEBA taking over responsibility on January 1, 2010. In the discussions over the last several weeks, the company sought to pay these benefits out of the Internal VEBA assets discussed above. That approach would have depleted the assets in that trust, resulting in a much smaller contribution to the New VEBA on January 1, 2010.

We succeeded in avoiding this depletion of the Internal VEBA's assets during 2009. The new company will therefore provide retiree medical benefits for the balance of 2009 until the VEBA takes over responsibility. In exchange, however, the Treasury Department insisted that the benefits be immediately reduced to reflect Chrysler's difficult financial situation.

In order to maintain the support of the U.S. Government, therefore, we were required to agree to the changes in benefits described in the following chart. These changes will be effective on July 1, 2009 (or later if court approval is delayed beyond that date).

3

| Prescription Drug Co-Pays | Retail (34 day supply)<br>• $10 Generic<br>• $25 Brand<br><br>Mail Order (90 day supply)<br>• $20 Generic<br>• $50 Brand |
|---|---|
| Catastrophic Plan for retirees and surviving spouses who fail to pay required monthly contributions | No longer offered.  Retirees and surviving spouses currently in Catastrophic Plan will be given opportunity to join regular plan. |
| Coverage for Erectile Dysfunction (ED) medications (*e.g.*, Viagra, Cialis, Levitra) | No longer offered, except in prior authorized cases of Pulmonary Arterial Hypertension |
| Coverage for the Proton Pump Inhibitor drug class (*e.g.*, omeprazole, Prilosec, Zegerid, Nexium, Achiphex, Prevacid, Protonix) | No longer offered, except in prior authorized cases of Barrett's Esophagitis and Zoellinger-Ellison Syndrome |
| Vision Program | No longer offered |
| Dental Program | No longer offered |
| Emergency Room Co-Pay | $100 (waived if admitted) |
| Medicare Part B Special Benefit  ($76.20 per month for retirees enrolled in Medicare) | No longer offered by health plan.  This modification is not applicable to approximately 8,800 retirees and surviving spouses who retired or began receiving surviving spouse benefits before October 1979, and whose benefit is provided through the pension trust. The payments will continue for these pre-1979 retirees and surviving spouses. |
| "Low Income Retirees" (less than $8,000 annual pension and monthly basic benefit rate of less than $33.33) | Monthly contribution requirement of $11 (flat rate regardless of family status)<br><br>In all other respects, these retirees and surviving spouses will be included in the same plan as other retirees and surviving spouses. |
| Monthly Contribution Requirements (General Retirees) | No Change (currently $11/single and $23/ family) |
| Deductible and Co-Pay Requirements (General Retirees) | No Change (currently $164 annual deductible and $273 annual (single) out-of-pocket maximum) |

4

## The Future Outlook

 In the early years of the VEBA's existence, it is unlikely that the VEBA will be able to sell the stock of the new Chrysler.  The new VEBA will therefore be required to use the $1.5 billion in immediate contributions from the Internal VEBA, plus the annual cash contributions due in 2010 and 2011, to provide retiree medial benefits.

Because of the uncertainty regarding the long-term value of the  stock, the Committee will likely be required to make further adjustments in the benefit levels for 2010 and 2011.  The extent of those future adjustments will depend on many factors, including investment returns in the Internal VEBA during the remaining months of 2009.

If the  stock can be sold in 2012 or thereafter for significant value, the Committee will be able to take that new value into account and restore some or all of the benefits that are being reduced under these arrangements.

In other words, if the current restructuring efforts are successful and the company returns to viability, UAW retirees will benefit from that recovery through the VEBA's significant stock ownership.  If the restructuring succeeds, this mechanism will assure that UAW retirees are repaid for the sacrifices they are being forced to make today.

We urge your support for these proposed agreements.  In these difficult circumstances, we believe they provide the best possible protection for your retiree benefits.


In solidarity,

| Ron Gettelfinger | General Holiefield**, *Vice* | Bill Payne |
| *UAW President* | *and Director, UAW Chrysler Department* | *Counsel to the Class* |

---

**Important Notes**

For further information about the proposed agreement and the process for court review of the proposed agreements and the proposed sale, please refer to the enclosed legal notice.  Full and complete copies of the proposed retiree health agreement can be found on the website referred to in that notice.

**If you support the proposed agreement, you do not need to take any action at this time. Information about the modified medical plan will be sent to you following court approval.  If you wish to object to the proposed agreements, you must file a written objection as described in the enclosed legal notice.**

Counsel to the Class Representatives participated in negotiation of the 2007 retiree medical agreements which were approved by the District Court for the Eastern District of Michigan on July 31, 2008.  Although the Class Representatives are not formal parties to the new agreements described above, Counsel to the Class Representatives has reviewed the proposed agreements and is in full support of the efforts to obtain Bankruptcy Court approval of the new agreements.  Counsel for the Class has entered an appearance in the Bankruptcy case and will be supporting approval of the proposed agreements.

---

Hearing Date and Time:  May 27, 2009 at 10:00 a.m. (Eastern Time)
Objection Deadline:  May 19, 2009 at 4:00 p.m. (Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
In re                                                        :    Chapter 11
                                                             :
Chrysler LLC, *et al.*,[1]                                   :    Case No. 09-50002 (AJG)
                                                             :
                          Debtors.                           :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x

**SPECIAL NOTICE TO DEBTORS' RETIREES REPRESENTED BY**
**THE INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE**
**AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA OF**
**SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**
**AND APPROVAL OF UAW RETIREE SETTLEMENT AGREEMENT**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On April 30, 2009 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  On May 3, 2009, the Debtors filed a motion with the Bankruptcy Court (the "Sale Motion") seeking, among other things, (a) authority to sell substantially all of the Debtors' assets free and clear of all liens, claims and encumbrances (the "Sale Transaction"); (b) approval of certain procedures (the "Bidding Procedures") for the solicitation of bids with respect to the Sale Transaction (the "Bidding Procedures Relief"); (c) authority to assume and assign certain executory contracts and unexpired leases in connection with the Sale Transaction; (d) approval of that certain settlement agreement between the Purchaser and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") to be executed at the closing of the Sale Transaction (the "UAW Retiree Settlement Agreement") and (e) scheduling

---

[1]     The Debtors and their respective Tax ID numbers are as follows:  Chrysler LLC, Tax ID No. 38-2673623; Chrysler Aviation Inc., Tax ID No. 38-3475417; Chrysler Dutch Holding LLC, Tax ID No. 26-1498515; Chrysler Dutch Investment LLC, Tax ID No. 26-1498838; Chrysler Dutch Operating Group LLC, Tax ID No. 26-1498787; Chrysler Institute of Engineering, Tax ID No. N/A; Chrysler International Corporation, Tax ID No. 38-2631697; Chrysler International Limited, L.L.C., Tax ID No. N/A; Chrysler International Services, S.A., Tax ID No. 38-0420030; Chrysler Motors LLC, Tax ID No. 38-3625541; Chrysler Realty Company LLC, Tax ID No. 38-1852134; Chrysler Service Contracts Inc., Tax ID No. 38-3382368; Chrysler Service Contracts Florida, Inc., Tax ID No. 26-0347220; Chrysler Technologies Middle East Ltd., Tax ID No. 75-2487766; Chrysler Transport Inc., Tax ID No. 38-2143117; Chrysler Vans LLC, Tax ID No. 31-1781705; DCC 929, Inc., Tax ID No. 38-2899837; Dealer Capital, Inc., Tax ID No. 38-3036138; Global Electric Motorcars, LLC, Tax ID No. 31-1738535; NEV Mobile Service, LLC, Tax ID No. 33-1024272; NEV Service, LLC, Tax ID No. 03-0501234; Peapod Mobility LLC, Tax ID No. 26-4086991; TPF Asset, LLC, Tax ID No. 74-3167035; TPF Note, LLC, Tax ID No. 74-3167038; and Utility Assets LLC, Tax ID No. 20-0874783.

of a final hearing with the Bankruptcy Court for approval of the Sale Transaction (the "<u>Sale Hearing</u>").

2.        Chrysler LLC and its Debtor subsidiaries; Fiat S.p.A ("<u>Fiat</u>"); and New CarCo Acquisition LLC (the "<u>Purchaser</u>"), a Delaware limited liability company formed by Fiat, have entered into a Master Transaction Agreement, dated as of April 30, 2009 (the "<u>Purchase Agreement</u>"), which, together with certain ancillary agreements, contemplates a set of related transactions for the sale of substantially all of the Debtors' tangible, intangible and operating assets, defined as the "Purchased Assets" in Section 2.06 of the Purchase Agreement, including the Designated Agreements (as defined in the Sale Motion), the assets related to the research, design, manufacturing, production, assembly and distribution of passenger cars, trucks and other vehicles (including prototypes) under brand names that include Chrysler, Jeep® and Dodge (the "<u>CarCo Business</u>"), certain of the facilities related thereto and all rights including intellectual property rights, trade secrets, customer lists, domain names, books and records, software and other assets used in or necessary to the operation of the CarCo Business or related thereto (collectively, as defined in the Purchase Agreement, the "<u>Purchased Assets</u>") to the Purchaser, subject to higher and better offers made pursuant to the Bidding Procedures.

3.        A hearing on the Bidding Procedures Relief was held before the Bankruptcy Court on May 1, 4 and 5, 2009, after which the Bankruptcy Court entered an order, among other things, approving the Bidding Procedures Relief **[Docket No. ____]** (the "<u>Bidding Procedures Order</u>").   The Bidding Procedures Order establishes the Bidding Procedures that govern the manner in which the Purchased Assets are to be sold.   All bids must comply with the Bidding Procedures and be submitted so as to be received not later than 5:00 p.m., Eastern Time, on May 20, 2009.

4.        In addition, contingent upon the approval of the sale of the Purchased Assets to the Purchaser and concurrently with the sale of the Purchased Assets, the Debtors will assume and assign to the Purchaser any collective bargaining agreements entered into by and between the Debtors and the UAW (the "<u>UAW CBA Assignment</u>") with the exception of (a) the Debtors' agreement to provide certain retiree medical benefits specified in the Memorandum of Understanding Post-Retirement Medical Care, dated October 12, 2007, between Chrysler and the UAW, (b) the Memorandum of Understanding Post-Retirement Medical Care, dated April 29, 2009, between Chrysler and the UAW and (c) the 2008 Settlement Agreement (as defined below).

5.        Furthermore, contingent upon the approval of the sale of the Purchased Assets to the Purchaser, the Purchaser has agreed, among other things, to enter into the UAW Retiree Settlement Agreement, pursuant to which the Purchaser will make contributions to a VEBA in respect of non-pension retiree benefits to the Debtors' retirees and surviving spouses represented by the UAW, including the members of the "Class" as defined in the UAW Retiree Settlement Agreement (collectively, the "<u>UAW-Represented Retirees</u>") on terms and conditions that differ from those established by that certain Settlement Agreement, dated March 30, 2008 (the "<u>2008 Settlement Agreement</u>"), in the class action of <u>Int'l Union, UAW, et al. v. Chrysler, LLC</u>, Case No. 07-CV-14310 (E.D. Mich.) (the "<u>English Case</u>"), including, among other things, the funding of such benefits with a combination of an equity interest in the Purchaser and a new

$4.587 billion note.  Under the UAW Retiree Settlement Agreement, certain benefit reductions will take effect July 1, 2009, assuming consummation of the Sale Transaction.

6.      The Sale Hearing currently is scheduled to be conducted on May 27, 2009 at 10:00 a.m. (Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, Room 523, One Bowling Green, New York, New York 10004, before the Honorable Arthur J. Gonzalez, United States Bankruptcy Judge, to consider the approval of the Purchase Agreement or any higher and better offer by a Successful Bidder (as defined in the Bidding Procedures) and approval of the UAW Retiree Settlement Agreement, and may include the conduct of a court-supervised auction (the "Auction") in accordance with the Bidding Procedures.  If the Purchaser is the Successful Bidder, the Debtors anticipate seeking entry of a Sale Order substantially in the form of the order attached to the Sale Motion as Exhibit C (the "Sale Order").  The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

7.      A copy of the Purchase Agreement (without certain commercially sensitive attachments) and the Sale Motion (including the proposed Sale Order), the Bidding Procedures Order as entered by the Bankruptcy Court (with the Bidding Procedures attached), the UAW Retiree Settlement Agreement, including all exhibits thereto and an Equity Recapture Agreement between the U.S. Treasury and the UAW Retiree Benefits Medical Trust executed in connection with the UAW Retiree Settlement Agreement may be obtained on the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC at http://www.chryslerrestructuring.com.  Additionally, a copy of the Purchase Agreement (without certain commercially sensitive attachments) and the Sale Motion (including the proposed Sale Order) and the Bidding Procedures Order as entered by the Bankruptcy Court (with the Bidding Procedures attached) may be obtained by sending a written request to counsel to the Debtors, Jones Day, 222 East 41st Street, New York, NY 10017, Facsimile:  (212) 755-7306 (Attn:  Nathan Lebioda, Esq.).

8.      **OBJECTIONS TO ANY RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES TO THE PURCHASER OR ANOTHER SUCCESSFUL BIDDER AND THE REQUEST FOR COURT APPROVAL OF THE UAW RETIREE SETTLEMENT AGREEMENT (EACH, AN "OBJECTION"), MUST BE MADE IN WRITING, FILED WITH THE BANKRUPTCY COURT AT THE ADDRESS SET FORTH IN PARAGRAPH 6 ABOVE, AND SERVED SO AS TO BE ACTUALLY RECEIVED BY 4:00 P.M. (EASTERN TIME) ON MAY 19, 2009, PROVIDED, HOWEVER, THAT IF A DETERMINATION IS MADE AT THE SALE HEARING THAT THE SUCCESSFUL BIDDER IS A BIDDER OTHER THAN THE PURCHASER, PARTIES IN INTEREST MAY OBJECT SOLELY TO SUCH DETERMINATION AT THE SALE HEARING.**

9.      **ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH PARAGRAPH 8 ABOVE ON EACH OF THE FOLLOWING PARTIES:**  (a) the Debtors, c/o Chrysler LLC, 1000 Chrysler Drive, CIMS# 485-14-96, Auburn Hills, Michigan 48326-2766 (Attn:  Holly E. Leese, Esq.); (b) Jones Day, counsel to the Debtors, 222 East 41st Street, New

York, New York 10017 (Attn: Corinne Ball, Esq. and Nathan Lebioda, Esq.) and 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309-3053 (Attn: Jeffrey B. Ellman, Esq.); (c) Capstone Advisory Group, LLC, Park 80 West, Plaza 1, Plaza Level, Saddle Brook, NJ 07663 (Attn: Robert Manzo); (d) Kramer Levin Naftalis & Frankel LLP, counsel to the Official Committee of Unsecured Creditors', 1177 Avenue of the Americas New York, New York 10036 (Attn: Thomas M. Mayer, Esq. and Kenneth H. Eckstein, Esq.); (e) Simpson Thacher & Bartlett LLP, counsel to the administrative agent for the Debtors' prepetition senior secured lenders, 425 Lexington Avenue, New York, New York 10017 (Attn: Peter Pantaleo, Esq. and David Eisenberg, Esq.); (f) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian S. Masumoto, Esq.); (g) the U.S. Department of Treasury (the "U.S. Treasury"), 1500 Pennsylvania Avenue NW, Room 2312 Washington, D.C. 20220 (Attn: Matthew Feldman, Esq.); (h) United States Attorney's Office, Southern District of New York, Civil Division, Tax & Bankruptcy Unit, 86 Chambers Street, 3rd Floor, New York, New York 10007 and Cadwalader, Wickersham & Taft LLP, Of counsel to the Presidential Task Force on the Auto Industry, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (i) Vedder Price, P.C., counsel to Export Development Canada, 1633 Broadway, 47th Floor New York, New York 10019 (Attn: Michael J. Edelman, Esq.); (j) the Purchaser and Fiat, c/o Fiat S.p.A, Via Nizza n. 250, 10125 Torino, Italy (Attn: Chief Executive Officer); (k) Sullivan & Cromwell LLP, counsel to the Purchaser and Fiat, 125 Broad Street, New York, New York 10004 (Attn: Scott D. Miller, Esq. and Andrew Dietderich, Esq.) and 1888 Century Park East, 21st Floor, Los Angeles, CA 90067 (Attn: Hydee R. Feldstein, Esq.); (l) International Union, UAW, 8000 East Jefferson Avenue, Detroit, Michigan 48214 (Attn: Daniel Sherrick, Esq.); (m) Cleary Gottlieb Steen & Hamilton LLP, counsel to the UAW, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (n) Cohen, Weiss and Simon LLP, counsel to the UAW, 330 W. 42nd St., New York, New York 10036 (Attn: Babette Ceccotti, Esq.); (o) Togut, Segal & Segal, LLP, conflicts counsel to the Debtors, One Penn Plaza, New York, New York 10119 (Attn: Albert Togut, Esq.); and (p) any other statutory committees appointed in these cases.

10.     The failure of any person or entity to file an Objection on or before the applicable Objection Deadline shall be deemed a consent to the Sale Transaction contemplating the sale of the Purchased Assets to the Purchaser or another Successful Bidder and the other relief requested in the Sale Motion, including approval of the UAW Retiree Settlement Agreement, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Bidding Procedures Relief, the Sale Motion, the Auction, the sale of the Purchased Assets, approval of the UAW Retiree Settlement Agreement, the Debtors' consummation and performance of the Purchase Agreement or other agreement with a different Successful Bidder (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all liens, claims and encumbrances) or to the approval of the UAW Retiree Settlement Agreement.

11.     This Notice is subject to the full terms and conditions of the Purchase Agreement, the UAW Retiree Settlement Agreement, the Sale Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

BY ORDER OF THE COURT

Dated:  **[May___]**, 2009
      New York, New York