# Exhibit C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
                                                    :
In re:                                              :        Chapter 11
                                                    :
OLD CARCO LLC, f/k/a                                :        Case No. 09-50002 (AJG)
CHRYSLER LLC, *et al.*,                             :
                                                    :
                    Debtors.                        :        (Jointly Administered)
                                                    :
---------------------------------------------------------- x
                                                    :
BRADLEY E. WOLFF,                                   :        Adv. Proc. No. 10-05007 (AJG)
                                                    :
                    Plaintiff,                      :
                                                    :
     -against-                                      :
                                                    :
CHRYSLER GROUP LLC; and                             :
DOES 1-50, inclusive,                               :
                                                    :
                    Defendants.                     :
                                                    :
---------------------------------------------------------- x

## OPINION GRANTING DEFENDANT'S MOTION TO DISMISS

A P P E A R A N C E S

SULLIVAN & CROMWELL LLP
Attorneys for Chrysler Group LLC
125 Broad Street
New York, NY 10004

          By:    Steven L. Holley, Esq.
                 Michael J. Ushkow, Esq.

GATES, O'DOHERTY, GONTER & GUY, LLP
Attorneys for Chrysler Group LLC
15635 Alton Parkway, Suite 260
Irvine, CA 92618

          By:    Matthew M. Proudfoot, Esq.

CARONNA, JOHNSON & HODDICK, LLP
Attorneys for Bradley E. Wolff
71650 Sahara Road, Suite 2
Rancho Mirage, CA 92270

       By:   Larry Hoddick, Esq.

MCCOY, TURNAGE & ROBERTSON, LLP
Attorneys for Bradley E. Wolff
5469 Kearney Villa Road, Suite 206
San Diego, CA 92123

       By:   Lilys D. McCoy, Esq.


ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE

      Before this Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6) (the "Motion") by Chrysler Group LLC ("New Chrysler") against Bradley E. Wolff's

First Amended Complaint For Damages Based on Breach of Contract and Promissory Estoppel

(the "Complaint").  Mr. Wolff originated this proceeding in the Superior Court of Riverside,

California on December 4, 2009 with a prior version of the Complaint.  New Chrysler removed

this proceeding to the United States District Court for the Central District of California pursuant

to sections 1331, 1334, and 1452 of Title 28 of the United States Code.  On New Chrysler's

motion pursuant to section 1412 of Title 28 of the United States Code, the case was transferred to

the Southern District of New York on March 4, 2010 for referral to this Court based on this

Court's jurisdiction to interpret its own orders.  Mr. Wolff filed the Complaint on April 6, 2010.

New Chrysler filed the Motion on June 14, 2010.  Mr. Wolff filed an Opposition to the Motion

on July 8, 2010.  New Chrysler filed a Reply in support of the Motion on July 13, 2010.  This

Court conducted a hearing on July 15, 2010.  For the reasons outlined below, the Motion is

granted in its entirety.

# BACKGROUND

The following sets forth factual allegations found in the Complaint, which the Court must assume to be true on a Rule 12(b)(6) motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  Legal conclusions set forth in the Complaint have been excluded to the extent they are not intertwined with relevant facts, as they should not be presumed to be true or correct and do not bolster the factual sufficiency of a complaint on a motion to dismiss.  *See Starr v. Sony BMG,* 592 F.3d 314, 317 n.1 (2d Cir. 2010) (noting that a court "'considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumptions of truth.'") (quoting *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009)).

On November 17, 2003, Chrysler LLC (now known as "Old Carco") manufactured a 2004 Dodge Ram, which Bradley E. Wolff ("Mr. Wolff") later purchased.  After experiencing problems with the vehicle, Mr. Wolff filed a complaint against Old Carco in the Superior Court of Riverside County, California on April 16, 2006, alleging violations of the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act (the "Lemon Law(s)").  The parties negotiated a resolution of the suit and Old Carco sent Mr. Wolff a draft settlement agreement on April 21, 2009, under which Old Carco would agree to pay Mr. Wolff $16,000 in damages and reasonable costs, expenses, and attorney's fees[1] and Mr. Wolff would agree to dismiss his complaint (the "Settlement Agreement").  Mr. Wolff signed and returned this agreement to Old Carco, but neither party took any further action to settle the case at that time.

---

[1] Mr. Wolff claimed $124,894.02 regarding such amounts in the California state suit against Old Carco, but Old Carco's bankruptcy stayed the California suit before that court considered the request, and Mr. Wolff has dismissed that case.  Mr. Wolff requests the same amount plus additional costs, fees, and expenses in an amount according to proof in the First Amended Complaint.  Mr. Wolff also filed a Proof of Claim for $165,303.94 in the Old Carco Chapter 11 case.

Old Carco filed for Chapter 11 bankruptcy on April 30, 2009, before Old Carco or Mr.

Wolff had performed any obligations under the Settlement Agreement. Old Carco entered the

proceeding with an expectation that it would sell the bulk of its assets with court approval on an

expedited schedule. All parties in interest received notice and an opportunity to be heard. The

Ad Hoc Committee Seeking Fairness for Warranty and Lemon Law Claimants (the "Ad Hoc

Committee") filed an objection to the Debtor's Motion for an Order Authorizing the Sale of

Substantially All of Debtors' Assets Free and Clear of All Liens, Claim, Interests and

Encumbrances and Certain Related Relief (the "Sale Motion" requesting the "Sale Order"). Mr.

Wolff filed a proof of claim for his damages and expenses on May 14, 2009. The Ad Hoc

Committee reached an agreement with Old Carco and New Chrysler (the "Agreement on

Changes") regarding modifications to the proposed Sale Order and withdrew its objection.[2] Mr.

Wolff did not file an objection to the Sale Order.

The Sale Order, entered on June 1, 2009, is an order of this Court authorizing New

Chrysler and Old Carco to execute the Master Transaction Agreement. The Sale Order defines

those terms of the sale that are relevant to the bankruptcy sale approval and refers to the Master

Transaction Agreement for further details. The Sale Order directs that New Chrysler will

assume only certain Lemon Law liabilities and executory contracts from Old Carco.

Specifically, paragraph 19 states,

---

[2] Complaint, ¶¶ 18-25, Ex. 2-3. *See also* Ad Hoc Committee's Withdrawal of Objection to the Sale Order, Dock. No. 2916, Case 09-50002 (AJG), May 29, 2009. The Agreement on Changes included a comma between "prepetition" and "or" that the Sale Order did not include. At the hearing of July 15, 2010, Mr. Hoddick began his statement for Mr. Wolff by alleging, "Chrysler Group, in its Reply Brief that's before the Court has removed a critical comma from the paragraph 19 language that's before the court. This case may hinge on the meaning of that single comma. They have submitted a Reply Brief to the court removing critical punctuation from the Sale Order." Mr. Hoddick was mistaken; in fact, both parties have cited the correct Sale Order punctuation in their pleadings (although Mr. Wolff's pleadings occasionally conflate the Agreement on Changes and the Sale Order) and the comma's presence or absence does not affect the meaning of the Sale Order as it relates to this proceeding. *See* Compl. ¶26, Def.'s Memo. ¶6, Def.'s Reply ¶7. Because the variant comma is not material to the Court's conclusions, the Court will not resolve the issue in this opinion, although Mr. Hoddick's argument concerning the significance of the variation is considered in the Discussion.

Notwithstanding anything else contained herein or in the in the Purchase Agreement, in connection with the purchase of the Debtors' brands and related Assets, the Purchaser, from and after Closing, will recognize, honor and pay liabilities under Lemon Laws for additional repairs, refunds, partial refunds (monetary damages) or replacement of a defective vehicle (including reasonable attorney's fees, if any, required to be paid under such Lemon Laws and necessarily incurred in obtaining those remedies), and for any regulatory obligations under such Lemon Laws arising now, including but not limited to cases resolved prepetition or in the future, on vehicles manufactured by the Debtors in the five years prior to the Closing (without extending any statute of limitations provided under such Lemon Laws), but in any event not including punitive, exemplary, special, consequential or multiple damages or penalties and not including any claims for personal injury or other consequential damages that may be asserted in relationship to such vehicles under the Lemon Laws.

A corresponding amendment to the Master Transaction Agreement uses slightly different language to assume the same liabilities, but in the event of any conflict, the Sale Order's language controls. Additionally, regarding an issue not discussed specifically within the Sale Order, section 2.08(n)(1) of the Article II Company Disclosure Letter to the Master Transaction Agreement states that New Chrysler assumes certain "[l]iabilities under incentive programs offered to dealers and customers prior to closing." Other provisions of the Sale Order emphasize that New Chrysler assumes specific liabilities of Old Carco but does not become a successor to Old Carco; all non-assumed Old Carco claims are barred against New Chrysler. *See* Sale Order ¶¶ 12-17, 35, 38, 39, 42. The sale closed on June 10, 2009 and the Sale Order is now final.

On August 24, 2009, Matthew Proudfoot, counsel for New Chrysler, sent a letter to Larry Hoddick, counsel for Mr. Wolff (Pl.'s First Opp., Ex. E, the "Proudfoot Letter") serving court-approved Notice Regarding Treatment of Lemon Law Claims in Connection With Chrysler LLC Bankruptcy Cases and Sale of Assets to Chrysler Group with Exhibits (the "Lemon Law Notice"). The Lemon Law Notice generally directs those parties to whom New Chrysler assumed liabilities under paragraph 19 of the Sale Order to pursue their claim in one of the following ways:

5

(a) filing the appropriate papers in a Lemon Law Action (consistent with applicable procedural requirements in such action) to indicate that New Chrysler is being substituted for the Debtors as the defendant in the proceeding, *provided that* such papers contain an affirmative statement that only Assumed Lemon Law Liabilities are being pursued against New Chrysler, solely to the extent permitted by the Lemon Law Provision of the Sale Order, and that any additional pre-Closing liabilities will be pursued (if at all) only by filing a proof of claim in these cases; (b) dismissing the Lemon Law Action and filing a new action solely against New Chrysler, which seeks only relief with respect to the Assumed Lemon Law Liabilities; or (c) any other similar arrangement acceptable to the Debtors and New Chrysler in their sole discretion that results in no claims being pursued against the Debtors in any nonbankruptcy forum and no Excluded Liabilities being pursued against New Chrysler.

Compl. ¶37.

The Lemon Law Notice does not modify the Sale Order or any party's rights under the Sale Order; it only informs Lemon Law claimants of the effect of the Sale Order and New Chrysler's treatment of assumed liabilities.  The Proudfoot Letter specifically states New Chrysler's opinion regarding Mr. Wolff's claim: "based on our review of the relevant materials we have determined that none of the claims asserted therein [by Mr. Wolff] have been assumed by [New Chrysler]. We therefore are unwilling to consent to the substitution of [New Chrysler] in place of Old Carco . . . ."  This language most directly excludes options "(c)" of the Lemon Law Notice, but also expresses New Chrysler's belief that New Chrysler did not assume any liability to Mr. Wolff under the Sale Order, excluding options "(a)" and "(b)" unless Mr. Wolff can demonstrate that New Chrysler did assume the Settlement Agreement under the Sale Order.  Mr. Wolff alleges that he relied on the Lemon Law Notice to pursue option "(b)"; he voluntarily dismissed his state proceeding against Old Carco with prejudice on December 3, 2009 and now pursues breach of contract and promissory estoppel claims against New Chrysler in this proceeding.

Mr. Wolff alleges that New Chrysler assumed or should have assumed the Settlement Agreement under the language of paragraph 19 of the Sale Order and has now breached that contract.  Compl. ¶¶ 27-32, 46-47.  Mr. Wolff further alleges that New Chrysler assumed Old

6

Carco's settlement with him under the language of section 2.08(n)(1) of the Master Transaction
Agreement as integrated into the Sale Order and has now breached that contract. Compl. ¶¶ 33-
36, 46-47. Mr. Wolff also pleads a promissory estoppel claim based on the same facts. Citing
the legal deficiencies of Mr. Wolff's claims, New Chrysler has moved for dismissal of this
proceeding under Federal Rule of Civil Procedure 12(b)(6).

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334,
under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the
United States District Court for the Southern District of New York (Ward, Acting C.J.), and
under paragraph 59 of the Sale Order. Because this proceeding is ancillary to the Sale Order, it
is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N). Venue is proper pursuant to 28
U.S.C. §§ 1408 and 1409.

## DISCUSSION

*Motion to Dismiss Standard*

Federal Rule of Civil Procedure ("Rule") 12(b)(6) is incorporated into bankruptcy
procedure by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b). In
considering a Rule 12(b)(6) motion to dismiss for failure to state a claim for relief, the court
"must accept as true all of the factual allegations contained in the complaint." *Erickson v.
Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). In addition, the
court draws all reasonable inferences from the factual allegations in favor of the plaintiff.

7

*Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992); *Myvett v. Williams*, 638 F. Supp. 2d 59, 64 (D.D.C. 2009).

In considering such a motion, although a court accepts all the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L. Ed. 2d 209 (1986). Bare assertions, "devoid of 'further factual enhancement'[,]" are not sufficient to withstand a motion to dismiss. *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted).

"Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998); *see also Erickson*, 551 U.S. at 94, 127 S. Ct. at 2200 (noting that Rule 8(a)(2) sets forth "liberal pleading standards"). Pursuant to Rule 8(a), which is made applicable to adversary proceedings by Bankruptcy Rule 7008, in asserting a claim, the pleader need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of the statement is to provide "fair notice" of the claim and "the grounds upon which it rests." *Erickson*, 551 U.S. at 93, 127 S. Ct. at 2200 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting, in turn, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957). Thus, specific facts are not necessary. *Id.* 551 U.S. at 93, 127 S. Ct. at 2200.

While detailed factual allegations are not necessary, the need to provide the "grounds" for entitlement to relief requires "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65. The allegations must show that the right to relief is more than speculative. *Id.* at 553, 127 S. Ct.

at 1965. There must be a "reasonably founded hope" that the discovery process will uncover relevant evidence. *Id*. at 559, 563 n.8, 127 S. Ct. 1967, 1969 n.8.

To adequately support the claim, there must be sufficient facts identified to suggest that the legally vulnerable conduct is plausible. *Id*. at 556, 127 S. Ct. at 1965. A complaint meets the plausibility standard when factual content is pled "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1949. Once the plausibility threshold is met, the complaint survives even if the identified facts seem improbable or recovery is thought to be remote or unlikely. *Twombly*, 550 U. S. at 556, 127 S. Ct. at 1965. Although *Twombly* was decided in the context of an antitrust litigation, the plausibility standard to test the sufficiency of a complaint applies in all civil actions. *Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1953. The plausibility standard, however, does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. Thus, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563, 127 S. Ct. at 1969.

Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3, 127 S. Ct. at 1965 n.3. However, once the claim is adequately supported, specific facts beyond those needed to state the claim are not necessary. *Id*. at 570, 127 S. Ct. at 1973-74. Indeed, other sections of the Federal Rules of Civil Procedure support a simplified notice pleading standard, including Rule 8(f), which provides that technical forms of pleading or motions are not required, and Rule 8(e)(1), which provides that pleadings are to construed in a way that does substantial justice. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002). The simplicity required by the rule, in forgoing additional

factual detail, recognizes the ample opportunity afforded for discovery and other pre-trial

procedures, which permit the parties to obtain more detail as to the basis of the claim and as to

the disputed facts and issues.  *Id*. at 512-13, 122 S. Ct. at 998; *see also*, *Conley*, 355 U.S. at 47-

48, 78 S. Ct. at 103.  Based upon the liberal pleading standard established by Rule 8(a), even the

failure to cite a statute, or to cite the correct statute, will not affect the merits of the claim.

*Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997).  In considering a motion

to dismiss, it is not the legal theory but, rather, the factual allegations that matter.  *Id*.

To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove

them.  *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).  A court's role in ruling on a

motion to dismiss is to evaluate the legal feasibility of the complaint, not to weigh the evidence

which may be offered to support it.  *Cooper*, 140 F.3d at 440.  The determination is not whether

a claimant will ultimately prevail, but whether the claimant should be allowed to offer evidence

to support the claim.  *Swierkiewicz*, 534 U.S. at 511, 122 S. Ct. at 997.

*Distinction between Old Carco and New Chrysler*

The Complaint pleads allegations against Old Carco and New Chrysler almost

interchangeably, but for the purposes of this proceeding solely against New Chrysler, it is

essential to distinguish the two entities.  This Court's opinion approving the Sale Order and the

Sale Order itself define with a high degree of specificity which liabilities New Chrysler assumed

from Old Carco and which liabilities Old Carco retained.  *See In re Chrysler LLC*, 405 B.R. 84

(Bankr. S.D.N.Y. 2009).[3]

---

[3] The Second Circuit affirmed the sale opinion by summary order.  2009 U.S. App LEXIS 12351, at *2 (2d Cir.
2009).  The U.S. Supreme Court then denied objectors' motion for a stay of the Sale Order.  *Ind. State Police
Pension Trust v. Chrysler LLC (in re Chrysler LLC)*, 129 S. Ct. 2275 (2009).  After the sale was consummated, the
Second Circuit issued a full opinion affirming the sale opinion.  *In re Chrysler LLC*, 576 F.3d 108 (2d Cir. 2009).

Mr. Wolff alleges in the Complaint, "THE DEBTORS refused to honor all of their warranty obligations, including those to PLAINTIFF. Rather THE DEBTORS began picking and choosing which obligations they would uphold and which ones they would ignore." Compl. ¶15. This allegation and others like it in the pleadings contradict the documents Mr. Wolff has cited and do not lead logically to Mr. Wolff's requested relief. Old Carco, Debtors referenced in this case, did not choose which obligations to uphold and which to ignore, nor is it a party to the Complaint. New Chrysler is not a related debtor, nor is it responsible for all of Old Carco's obligations. Old Carco and New Chrysler are distinct entities against which different claims may be asserted. Any claims against New Chrysler based upon the purchase of Old Carco's assets are limited to those liabilities assumed under the Sale Order.

After receiving the Lemon Law Notice and the Proudfoot Letter, Mr. Wolff chose to dismiss his suit against Old Carco and pursue this proceeding against New Chrysler alone. Even if the Court accepts Mr. Wolff's claims against Old Carco as alleged, those claims do not determine the outcome of his action against New Chrysler. Because New Chrysler is a separate company that paid Old Carco adequate consideration for assets under the Sale Order, New Chrysler is not liable for all claims against Old Carco. Under the authority of sections 105 and 363, the Sale Order explicitly bars claims against New Chrysler based solely on Old Carco's liability; New Chrysler's liabilities are limited to those assumed under the Sale Order. Sale Order ¶¶ 12, 35. As discussed below, the terms of the Sale Order indicate that New Chrysler did not assume Old Carco's liability as to Mr. Wolff. [4]

---

The Supreme Court granted objectors' petition for certiorari and vacated the Second Circuit judgment, remanding the case to the Second Circuit "with instructions to dismiss the appeal as moot." 130 S. Ct. 1015 (2009). Because the appeal has been dismissed as moot, the Sale Order is now final and unappealable.

[4] Mr. Wolff alleges that New Chrysler has paid other claims similar to his, pointing to *Gualtieri v. Chrysler*, a case which is not attached, cited, or summarized in any of the pleadings thus far and which the Court has not located.

*Breach of Contract Claim*

Mr. Wolff alleges that New Chrysler breached a contract with him.  Under general

principles of contract law, a contract typically requires a bargain, consisting of mutual

manifestation of assent and mutual consideration**.**  *Bowsher v. Merck & Co.*, 460 U.S. 824, 862

(1983) (citing Restatement (Second) of Contracts § 17 (1981)).  Mr. Wolff alleges plausible facts

indicating that he reached such a bargain with Old Carco through the Settlement Agreement.[5]  In

the absence of any alleged separate agreement between Mr. Wolff and New Chrysler, it is also

necessary for him to allege that New Chrysler assumed the Settlement Agreement under the Sale

Order and the Master Transaction Agreement.[6]  Consequently, Mr. Wolff's breach of contract

claim rises or falls not on interpretation of a private contract, but on interpretation of the Sale

Order.

---

The Defendant's Opposition cites to the Declaration of Amy Benecoff to support the allegation, but the Declaration says nothing about *Gualtieri*.  Regardless of whether Mr. Wolff could produce more factual support, the allegation is not material to the matter at hand: New Chrysler's assumption of certain liabilities and non-assumption of other liabilities under the Sale Order.  New Chrysler may spend its financial and legal resources as it chooses; this Court only enforces those promises that New Chrysler made in connection with the Sale Order as part of the value it offered in exchange for Old Carco's assets.  Classification of claims and equal treatment of claims within a class is only relevant when Mr. Wolff seeks repayment from Old Carco under the confirmed plan.

[5] Ordinarily the Court applies the choice of law standards of its forum state, New York, unless the protection of a federal policy or interest requires the application of federal common law.  *See Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 606 (2d Cir. 2001).  New York ordinarily applies the law of the jurisdiction having the greatest interest in the litigation.  *Id.* at 607.  The Settlement Agreement cites the California Civil Code and would resolve a California state court lawsuit.  Mr. Wolff is a California resident.  Interpretation of the Settlement Agreement would most logically be governed by California law.  In any case, the Complaint does not allege any need to interpret the Settlement Agreement or any impact that choice of law would have on Mr. Wolff's claims.  For the purposes of this Motion only, the Court assumes that the Settlement Agreement is a valid and enforceable contract between Old Carco and Mr. Wolff under any applicable law.

[6] *See* n. 5, *supra*.  The Master Transaction Agreement is governed by New York law according to its terms, and the Sale Order was issued by this Court in a federal bankruptcy case in New York.  New York law would most logically govern interpretation of those documents except to the extent that it is necessary to apply federal law to protect the consistency and finality of bankruptcy law.  In any case, the Complaint does not allege any impact that choice of law would have on Mr. Wolff's claims related to the Sale Order and the Master Transaction Agreement.  In the absence of any alternative claim in the pleadings, the Court will interpret the Sale Order and the Master Transaction Agreement based on New York law and federal law.

*Interpretation of the Sale Order*

A court has special expertise regarding the meaning of its own order, and therefore its

interpretation is entitled to deference. *See Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2204,

n. 4 (2009). Furthermore, "[i]f it is black-letter law that the terms of an unambiguous private

contract must be enforced irrespective of the parties' subjective intent,…it is all the clearer that a

court should enforce a court order, a public governmental act, according to its unambiguous

terms." *Id.*

In a contract context, a court has the power to determine whether language is ambiguous

as a matter of law. *See Alexander & Alexander Servs., Inc. v. These Certain Underwriters at

Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998). The Second Circuit has summarized the

ambiguity standard for purposes of contract interpretation:

> In the past, we have defined ambiguous language as that which is "capable of more than
> one meaning when viewed objectively by a reasonably intelligent person who has
> examined the context of the entire integrated agreement and who is cognizant of the
> customs, practices, usages and terminology as generally understood in the particular trade
> or business." Conversely, language is not ambiguous when it has "a definite and precise
> meaning, unattended by danger of misconception in the purport of the [contract] itself,
> and concerning which there is no reasonable basis for a difference in opinion." The
> language of a contract is not made ambiguous simply because the parties urge different
> interpretations. Nor does ambiguity exist where one party's view "strain[s] the contract
> language beyond its reasonable and ordinary meaning." [citations omitted].
> *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992).

Although this ambiguity standard originates in the contract context, it draws on general

interpretive conventions that apply with equal force to the interpretation of an order authorizing

the parties to enter a contract. *See generally Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289

F.3d 63 (2d Cir. 2002). The Sale Order controls the major terms of the Master Transaction

Agreement and is a prerequisite to the effectiveness of that contract. The ambiguity or clarity of

the Sale Order with respect to New Chrysler's assumption of Lemon Law liabilities is

fundamental to Mr. Wolff's claims against New Chrysler.

If the Court finds as a matter of law that New Chrysler did not assume a contract with

Mr. Wolff under the plain meaning of the Sale Order, Mr. Wolff's breach of contract claim must

be dismissed, regardless of any factual allegations regarding the intent of the parties or New

Chrysler's payment of other claims.  The Court need not consider extrinsic evidence to interpret

an unambiguous order.  *See Alexander & Alexander*, 136 F.3d at 86.  On the other hand, if the

Sale Order were ambiguous with respect to New Chrysler's assumption of Lemon Law liabilities

to Mr. Wolff, the Court might require further proceedings for the parties to present evidence in

order for the Court to resolve their dispute.  *See Colonial Auto Ctr. v. Tomlin (in re Tomlin)*, 105

F.3d 933, 940-41 (4th Cir. 1997), *First Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 477

F.3d 616, 620 (8th Cir. 2007).  For the reasons set forth below, the Court finds that the Sale

Order unambiguously bars Mr. Wolff's claims.


*Assumption of Lemon Law Liabilities under the Paragraph 19 of the Sale Order*

Mr. Wolff interprets the Sale Order in light of the Agreement on Changes.  This reliance

is correct only to the extent that the Agreement on Changes directly affected the language of the

final Sale Order, which has legal effect based on its plain meaning, regardless of the intention of

the parties or course of negotiations.  The Ad Hoc Committee achieved the consent of Old Carco

and New Chrysler to three changes to the Sale Order: inclusion of partial refunds, inclusion of

settled cases, and inclusion of Magnuson Moss claims in conjunction with state breach of

warranty claims.  These changes protected the rights of certain Lemon Law claimants and led the

Ad Hoc Committee to withdraw its objection.  The changes clearly show that New Chrysler

14

assumed certain liabilities under the Sale Order similar in some respects to Mr. Wolff's settlement.  However, the changes did not modify or create an ambiguity about the phrase, "[comma] on vehicles manufactured by the Debtors in the five years prior to the closing."  This time limit is one example of the discretion exercised by New Chrysler to assume certain liabilities and exclude others based on its business judgment, in accord with the limitations of the Bankruptcy Code.

Mr. Wolff focuses on the addition of the clause, "including but not limited to cases resolved prepetition," which he interprets as an inclusion of all resolved cases in the assumed liabilities without regard for the time limit.  The inclusion clause must be interpreted in the context of the full sentence, not merely as a stand-alone provision.  The clause removes any ambiguity about assumption of otherwise-qualified claims by individuals who had already agreed to settlements with Old Carco.  However, the clause does not affect the later time limit, which existed before the Agreement on Changes, was not modified or rendered ambiguous, and remained intact in the Sale Order.  The key sentence of paragraph 19 has only one object: "liabilities under Lemon Laws."  All other clauses clarify *which* liabilities New Chrysler assumes.  Grammatically and logically, the time limit must relate back to the sole object of the sentence and govern all assumption of liabilities.

The determinant of whether New Chrysler assumed a Lemon Law settlement with Mr. Wolff is the consistently punctuated time limit in paragraph 19 of the Sale Order.  Perhaps because "or in the future" comes immediately before "[comma] on vehicles manufactured by the Debtors in the five years prior to the Closing," Mr. Wolff argues that the time limit only applies to obligations arising in the future and not already settled obligations.  At first glance, it might appear that one could justify this reading by the "rule of the last antecedent, according to which a

15

limiting clause or phrase. . . should ordinarily be read as modifying only the noun or phrase which it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 27-28 (2003). However, the rule of last antecedent does not control interpretation of this clause; a frequently cited grammatical corollary to the rule of last antecedent is that "use of a comma to set off a modifying phrase from other clauses indicates that the qualifying language is to be applied to all of the previous phrases and not merely the immediately preceding phrase." *United States v. Weisser*, 417 F.3d 336, 348 (2d Cir. 2005) (quoting *Elliot Coal Mining Co. v. Director, Office of Workers' Comp. Programs*, 17 F.3d 616, 630 (3d Cir. 1994). The comma setting off "on vehicles manufactured by the Debtors in the five years prior to the Closing" unambiguously applies the time limit to all liabilities assumed earlier in the sentence.

A Sale Order with the effect Mr. Wolff seeks would use different language. For instance, if the Sale Order instead stated that New Chrysler would assume "liabilities for repairs, cases resolved prepetition[,] and [other] regulatory obligations arising in the future on vehicles manufactured by the Debtor in five years prior to the Closing,"[7] Mr. Wolff would have at least a plausible argument under *Barnhart* and similar cases. 540 U.S. at 27-28, s*ee also In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 319 (S.D.N.Y. 2008) (interpreting the phrase "all indebtedness of [Enron] . . . evidenced by debentures, notes, bonds or other securities sold by [Enron]" to mean that "sold by Enron" only modified "other securities"). The District Court found that a condition included in the last item in a list, without additional punctuation, applied only to limit that item, and not the earlier list items. However, the District Court also noted that the rule of last antecedent only applies "where no contrary intention appears." *Id*. Regarding the Sale Order, paragraph 19 clearly expresses a contrary intention, according to the grammatical

---

[7] The bracketed words in the hypothetical are optional and might give rise to unrelated interpretive issues. The point of emphasis is the list structure and the scope of the final phrase.

corollary to the rule of last antecedent.  *Weisser*, 417 F.3d at 348.  Paragraph 19 always

concluded its list of assumed liabilities with the separate phrase, "[comma] on vehicles

manufactured by the Debtors in the five years prior to the Closing," which applies a time limit to

the assumption of Lemon Law liabilities.  According to Mr. Wolff's allegations, no one ever

sought or agreed to different language or punctuation in *this* portion of paragraph 19.  The

insertion of additional language earlier in the sentence ought not to cloud a clear condition that

pre-dated that addition and was not modified by it.

Mr. Wolff's factual allegations, including those raised subsequent to the Complaint, are

insufficient to overcome the plain meaning of paragraph 19 of the Sale Order.  At the hearing on

the Motion, Mr. Wolff asked the Court to add the comma between "prepetition" and "or in the

future," which was included in the Agreement on Changes but not contained in the Sale Order.

Mr. Wolff argues that the Ad Hoc Committee's withdrawal of its objection required the exact

language of the Agreement on Changes, including the comma.  Mr. Wolff further argues that the

comma separation could narrow the five-year limit to "[regulatory obligations under such Lemon

Laws arising] in the future," distinguishing those obligations from "regulatory obligations under

such Lemon Laws arising now, including . . . cases resolved prepetition," which would have no

time limit.  The absence of the comma before "or in the future" may be a clerical error, but it is

unnecessary to determine whether a clerical error correction is warranted, because the comma is

not material to the Complaint's allegations.  Additional commas in the sentence would not create

the distinction that Mr. Wolff asks the Court to find in the Sale Order, because commas do not

have the effect of periods or semicolons.  The structure of the sentence unambiguously applies

the time limit to the assumption of any Lemon Law liability, regardless of the inclusion of the

variant comma.

In further support of an interpretation of paragraph 19 under which New Chrysler
assumed a Lemon Law liability to him, Mr. Wolff has supplied a declaration from Amy
Benecoff, counsel for the Ad Hoc Committee.  She understands that counsels for the Ad Hoc
Committee, Old Carco, and New Chrysler "intended . . . that New Chrysler . . . would recognize,
honor any [sic] pay all cases resolved prepetition regardless of the age of the vehicle, and that the
five-year cut-off applied only to new lemon law claims brought after the petition date and cases
that were unresolved prior to the petition date."  Pl.'s Opp., Ex. C, ¶4.  This declaration aligns
with the Complaint's assertion that "it is clear from the exchange among the attorneys attached
hereto as Exhibit 3 that the parties intended that THE DEBTORS assume and honor all the
settlements in all <u>cases resolved prepetition</u>."  Compl. ¶ 21.  While the Complaint mistakenly
refers to "THE DEBTORS" rather than New Chrysler, the Court understands from the context of
the pleadings that Mr. Wolff alleges that the parties intended for New Chrysler to assume such
settlements.  However, the alleged intent of the parties is not material to interpretation of this
unambiguous court order.

Even if the Court were to consider extrinsic evidence as alleged in search of ambiguity,
none of Mr. Wolff's allegations would result in the Court finding any ambiguity in the Sale
Order.  In contrast to the detailed Sale Order, the emails among the Ad Hoc Committee, Old
Carco, and New Chrysler are brief and simply demonstrate intent to agree to the language that
became part of the Sale Order, while the Declaration of Amy Benecoff expresses a conclusory
legal opinion unsupported by specific reference to the language of the Sale Order.  One way to
achieve the Ad Hoc Committee's alleged intention would have been to write separate sentences
about the treatment of settled claims and unsettled claims.  Another choice would have been to
add language within the sentence explicitly stating that New Chrysler's obligations included

settled cases regardless of date of manufacture, but excluded unsettled obligations on vehicles manufactured in the last five years.  The Sale Order did not include these terms, yet now counsel for the Ad Hoc Committee, who had the opportunity to suggest different language, and Mr. Wolff, who did not participate in the negotiations although he was on notice that Old Carco had filed a bankruptcy petition, assert that all parties intended for a time limit to apply to the assumption of some liabilities but not others.  Such assertion is made without any grammatical theory regarding the structure of the sentence at issue and does not render the Sale Order ambiguous.

New Chrysler assumed only specific Lemon Law liabilities from Old Carco under the Sale Order, and Mr. Wolff's claim falls outside the specified time limit.  A ruling that the time limit only related to some preceding clauses in the same sentence would upset standard commercial expectations based on standard English grammar.  The length of the sentence, the variant comma before "or in the future," and the intention of certain parties to the negotiation do not create ambiguity or override the plain meaning of the Sale Order.  New Chrysler did not assume a contract with Mr. Wolff under paragraph 19 of the Sale Order and, therefore, could not have breached such a contract.

*Assumption of Incentive Programs under the Master Transaction Agreement*

Mr. Wolff further alleges that the settlement agreement was an incentive program that New Chrysler assumed as an executory contract under the Master Transaction Agreement as authorized by the Sale Order.  Even within the Master Transaction Agreement, this allegation is incompatible with the plain meaning of "incentive program."  The phrase Mr. Wolff relies on from the Master Transaction Agreement, "incentive programs offered to dealers and consumers,"

clearly describes car manufacturer programs that encourage transactions between dealers and

customers by offering cash bonuses or attractive financing terms on car purchases.  *See generally*

*Chrysler Credit Corp. v. J. Truett Payne, Inc.*, 607 F.2d 1133 (5th Cir. 1979) (discussing such a

program in an unrelated matter).  Incentive programs are designed to incentivize new sales, not

to resolve issues that arise based on past sales.  The plain meaning of the language opposes Mr.

Wolff's interpretation, which is a bare assertion of a legal conclusion unsupported by plausible

factual allegations.

Additionally, there is no need to define New Chrysler's assumption of Lemon Law

liabilities based on the Master Transaction Agreement's incentive program provision when the

Sale Order treats Lemon Law liabilities.  The Supreme Court has stated, "a document should be

read to give effect to all its provisions and to render them consistent with each other."

*Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63 (1995).  The Sale Order incorporates

the Master Transaction Agreement, "subject to the terms and conditions of this Sale Order to the

extent of any express conflict herewith."  Sale Order ¶4.  The Sale Order provides specifically

for Lemon Law liabilities, with a limit based on date of manufacture.  The Master Transaction

Agreement provides generally for incentive program liabilities, without a limit based on date of

manufacture.  "[I]t is a fundamental rule of contract construction that 'specific terms and exact

terms are given greater weight than general language.'"  *Aramony v. United Way of Am.*, 254

F.3d 403, 413 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c) (1981)).  No

reasonable interpreter of the Sale Order and Master Transaction Agreement would stretch the

definition of "incentive program" to describe Lemon Law settlements already addressed more

specifically in the Sale Order and render irrelevant the time limit in the more specific and

authoritative provision.  The provisions have independent and non-contradictory effects only if

20

one separates incentive programs from Lemon Law liabilities; the language of the Sale Order

unambiguously provides these distinct treatments, and this Court must enforce them.

*Due Process and Challenges to the Sale Order*

Mr. Wolff alleges in the alternative, if the Court does not find that New Chrysler assumed

an obligation to him under the Sale Order, that New Chrysler *should have* assumed an obligation

to him.[8]  He bases his request on the Bankruptcy Code (Compl. ¶ 30) and due process (Compl. ¶

28), arguing that New Chrysler "is required to assume" a liability to him or that a Sale Order

under which New Chrysler does not assume a liability to him is fundamentally unfair.  Putting

aside the issue of the timeliness of such assertions, these arguments are without merit; the

Complaint's factual allegations do not support a legal claim that the Sale Order was unfair or

otherwise must be modified.  Instead, the Complaint asserts objections to the Sale Order that are

similar to those that this Court overruled in the opinion accompanying the Sale Order.  *See*

*Chrysler*, 405 B.R. at 111.  For purposes of clarity and completeness, the Court will summarize

the reasons that such objections were overruled at that time and still must be overruled on this

Complaint.

Mr. Wolff requests modification of the Sale Order based on due process concerns

possibly related to the speed of the sale, but his legal argument would not have prevailed even

had he made a timely objection before entry of the Sale Order.  Other parties filed conceptually

similar objections to the Sale Order, many of which Old Carco and New Chrysler resolved

through negotiations, including the Ad Hoc Committee's Objection.  This Court overruled all

other objections because the sale complied with applicable law and provided the best available

---

[8]Mr. Wolff's initial complaint emphasized this allegation, while the amended Complaint places less emphasis on it
but still makes related allegations.  *See* Compl. ¶ 19, 28-31, 46-47, 55.

prospect of recoveries for creditors of Old Carco.  *See generally Chrysler*, 405 B.R. 84.

Adequate notice of the bankruptcy and the sale and opportunity to be heard were provided to

claimants.  *Id.* at 109-12.  The circumstances of the bankruptcy necessitated the form of the sale;

Old Carco could not meet all of its obligations and was rapidly losing value, New Chrysler was

the only bidder for Old Carco's assets, and New Chrysler would not make its value-adding bid if

it was required to assume all of Old Carco's liabilities.  *Id.* at 96-98.  The sale was a justifiable

business decision by the Debtors with authorization from the Court.  *Id.* at 96.  The sale was not

a plan of reorganization, did not implicate plan requirements such as section 1123, and complied

with bankruptcy sale requirements including section 363.  *Id.* at 94-96.  The purpose of the sale

was not to effect a plan of reorganization and set distributions to classes of claimants, but to

maximize the value of the estate and support the best possible recoveries under a separately

confirmed plan.  *Id.*  The sale did not discharge any liabilities; instead, it left some liabilities as

obligations of Old Carco for resolution under a plan.

     Although Mr. Wolff has not specified which sections of the Bankruptcy Code he believes

the Sale Order or New Chrysler's actions violated, his counsel argued at the hearing on the

Motion, "these claimants that are in the same class cannot be treated differently for the

bankruptcy to be fair and reasonable under the Bankruptcy Code."  This argument does not apply

correct legal principles.  Mr. Wolff is not seeking relief as a claimant or a class member against

Debtor Old Carco in this proceeding; the Complaint seeks payment in satisfaction of a contract

that New Chrysler allegedly should have assumed under the Sale Order.  This allegation must be

dismissed because Mr. Wolff has not formed a legal argument that New Chrysler was obliged to

assume *any* Lemon Law liabilities, that any correction to the Sale Order is necessary under

Federal Rule of Civil Procedure 60(a), or that he has grounds for relief from the Sale Order under Federal Rule of Civil Procedure 60(b).

The history of this bankruptcy and the pleadings indicate no legal theory under which New Chrysler could be a successor to Old Carco or be bound to assume all of Old Carco's liabilities. Mr. Wolff challenges the sale process on a general level, but absent New Chrysler's involvement in this case, Old Carco would have been in no better position to pay Mr. Wolff's claim than it is now. *See Chrysler*, 405 B.R. at 97 (noting that a liquidation of Old Carco rather than a sale would have generated less value and there were no competing offers for Old Carco's assets). Within certain limitations not relevant to this case, New Chrysler was free to apply its business judgment to assume certain liabilities and not others. *See id.* at 99, n. 18 ("New Chrysler has determined that, to effectively carry on its business, it should take over certain other of the Debtors' obligations. Any such assumption of liability reflects the purchaser's business judgment, the effect of which does not constitute a *sub rosa* plan because the obligation is negotiated directly with the counterparty."). On notice and hearing, after extensive negotiations, the Sale Order provided for a sale free and clear of liabilities other than those New Chrysler had agreed to assume. New Chrysler paid fair consideration for Old Carco assets and assumed certain liabilities, including Lemon Law liabilities only on vehicles manufactured by Old Carco within five years of the Closing. There exists no legal basis for this Court to compel New Chrysler to assume liability to Mr. Wolff.

*Promissory Estoppel Claim*

New York law applies the promissory estoppel standard of section 90 of the Restatement of Contracts: "[t]he elements of a claim for promissory estoppel are 'a clear and unambiguous

23

promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance.'" *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir. 1984) (citing *Ripple's of Clearview, Inc. v. LeHavre Assoc.*, 452 N.Y.S.2d 447, 449 (N.Y. App. Div. 1982).[9]  Promissory estoppel creates a binding promise under circumstances in which the parties did not agree to a standard contract with a bargained exchange of consideration, but justice still demands the enforcement of a promise.  *See Merex A.G. v. Fairchild Weston Sys.*, 29 F.3d 821, 824 (2d Cir. 1994).

Mr. Wolff's promissory estoppel claim is functionally identical to his breach of contract claim; the performance he rendered and the performance he seeks are the same that the Settlement Agreement requires and he does not allege any independent promises by New Chrysler.  As a result, promissory estoppel does not apply and the proper treatment of this case is under the standard contract theory discussed above.  *See Merex*, 29 F.3d at 824.  If New Chrysler had promised to pay Mr. Wolff, New Chrysler's promise would have been given in exchange for Mr. Wolff's promise to dismiss his lawsuit, creating a standard contract.

Even if the Court were to treat Mr. Wolff's factual allegations under a promissory estoppel theory, those allegations are legally insufficient for the same reasons that they were legally insufficient under a breach of contract theory.  Prior to Mr. Wolff's withdrawal of his California lawsuit, New Chrysler declined on multiple occasions to assume or create any obligation to Mr. Wolff because his vehicle was manufactured more than five years prior to the Closing.  Since New Chrysler did not assume Old Carco's contract with Mr. Wolff under the Sale

---

[9] The Court does not make a determination of choice of law at this time because there is no request in the pleadings for a particular choice of law and the deficiencies of Mr. Wolff's promissory estoppel claim are fundamental under the law of any state.  The standard does not differ significantly under California law.  *See Rosal v. First Federal Bank of California*, 671 F. Supp. 2d 1111, 1130 (N.D. Cal. 2009) (stating the same set of factors, but treating reliance as a separate factor from reasonability and foreseeability).

Order and Mr. Wolff makes no further allegations of a New Chrysler promise to him, it is clear

that New Chrysler did not promise to pay Mr. Wolff to settle his case against Old Carco.

Furthermore, after New Chrysler clearly had not promised to pay Mr. Wolff, his alleged

reliance on the existence of such a promise was not reasonable and foreseeable.  The Proudfoot

Letter and the Lemon Law Notice correctly quote and apply the Sale Order to state that the

option to assert his Old Carco claim against New Chrysler is not available to Mr. Wolff.  After

receipt of this information, there was no reason for Mr. Wolff to dismiss his suit against Old

Carco with the expectation that New Chrysler would pay him.  Regardless of Mr. Wolff's view

as to New Chrysler's contractual obligation to him under the Sale Order and the Settlement

Agreement, he was notified that New Chrysler did not promise to pay him.  Mr. Wolff has acted

according to a different interpretation of the Sale Order from New Chrysler's interpretation, not

in reasonable and foreseeable reliance on a clear promise by New Chrysler.  If he had any

remedy, it would be in breach of contract, not promissory estoppel.


**CONCLUSION**

The Court finds that Mr. Wolff's Complaint fails to state a claim upon which relief can be

granted.  The Court has no alternative but to enforce the Sale Order as unambiguously written to

exclude any liability from New Chrysler to Mr. Wolff.  Mr. Wolff's allegations concerning the

intent of the parties and promises Old Carco made to him do not suffice to state claims against

New Chrysler.  The breach of contract claim must be dismissed because Mr. Wolff's allegation

that New Chrysler assumed a contract with him is a legal conclusion unsupported by his factual

allegations and the unambiguous plain meaning of the Sale Order.  The promissory estoppel

claim must be dismissed because Mr. Wolff's allegation that New Chrysler promised to pay him

and he reasonably relied on such a promise is a legal conclusion unsupported by his factual

allegations and the unambiguous plain meaning of the Sale Order.

 For the reasons stated above, the motion to dismiss filed by New Chrysler is granted in its

entirety.  New Chrysler is directed to settle an order consistent with this opinion.

Dated: New York, New York
  July 30, 2010

       **s/Arthur J. Gonzalez**
       CHIEF UNITED STATES BANKRUPTCY JUDGE