# Exhibit G

09-11233-reg   Doc 31049-7   Filed 06/17/09   Entered 06/17/09 16:50:03   Main Document
Pg 2 of 40

Objection Deadline:  June __, 2009
Hearing Date:  June __, 2009

Richard M. Cieri
M. Natasha Labovitz
Craig A. Bruens
Michael A. Cohen.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

David J. Zott, P.C.
Alyssa A. Qualls
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Counsel to the Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CHEMTURA CORPORATION, *et al.*,[1] | ) Case No. 09-11233 (REG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712); Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC (0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348); CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc. (3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc. (8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of Indiana, Inc. (9136).

|  | ) |  |
| --- | --- | --- |
| CHEMTURA CORPORATION, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | Adversary No. _____ |
| -against- | ) |  |
|  | ) |  |
| Karen Smith, *et al.*, and John Does 1-1000, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**MEMORANDUM OF LAW IN SUPPORT OF CHEMTURA CORPORATION'S
MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION STAYING THE DIACETYL LITIGATION AND FUTURE DIACETYL
ACTIONS AGAINST CHEMTURA CANADA CORPORATION AND
CITRUS & ALLIED ESSENCES, LTD. AND IN OPPOSITION
TO MOTIONS FOR RELIEF FROM THE STAY**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS .....................................................................................................4

     A.     Nature of Claims ...............................................................................................5

     B.     Current Status of Diacetyl Litigation And Burden on Chemtura ....................6

     C.     Potential For Future Suits .................................................................................8

     D.     Potential Impact of Litigation On Estates........................................................8

           1.     High Potential Dollar Value of Diacetyl Judgments and
Settlements..........................................................................................8

           2.     Diversion of Key Employees ...............................................................8

           3.     Risk of Depleting Chemtura's Shared Insurance......................................12

           4.     Risk of Collateral Estoppel, Evidentiary Prejudice, and Stare
Decisis.................................................................................................13

ARGUMENT ........................................................................................................................13

I.     THIS COURT HAS JURISDICTION TO STAY THE DIACETYL LITIGATION
AS TO NON-DEBTORS.............................................................................................13

II.     THE DIACETYL LITIGATION AND FUTURE DIACETYL ACTIONS
SHOULD BE ENJOINED UNDER SECTIONS 362(a)(1) AND 362(a)(3) OR,
ALTERNATIVELY, UNDER SECTION 105(a) OF THE BANKRUPTCY
CODE...........................................................................................................................14

     A.     The Continuation Or Commencement Of Diacetyl Litigation Against
Chemtura Canada And Citrus Should Be Stayed Under Section 362(a)(1)
And (3) Of The Bankruptcy Code. ...................................................................14

           1.     The continuation of litigation against Chemtura Canada and Citrus
will have an immediate, adverse impact on the Debtors' estates. ............16

           2.     There is an identity of interest between Chemtura, Chemtura,
Canada, and Citrus..............................................................................17

     B.     Alternatively, This Court Should Enjoin The Continuation Or
Commencement Of Diacetyl Litigation Against Chemtura Canada And
Citrus Under Section 105(a) Of The Bankruptcy Code.........................................17

III.     NEITHER CITRUS NOR THE ORTIZ PLAINTIFFS HAVE
         DEMONSTRATED THE REQUISITE "CAUSE" FOR LIFTING THE STAY
         AS TO CHEMTURA..............................................................................................25

CONCLUSION..................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.*
     *(In re 48th St. Steakhouse, Inc.),*
     835 F.2d 427 (2d Cir. 1987), *cert. denied,* 485 U.S. 1035 (1988) .................................... 15

*A.H. Robins Co. v. Piccinin,*
     788 F.2d 994 (4th Cir.),
     *cert. denied*, 479 U.S. 876 (1986)) .................................................................... 3, 15, 16, 17

*Adelphia Comm'n Corp. v. The America Channel, LLC*
     *(In re Adelphia Comm'n Corp.),*
     345 B.R. 69 (Bankr. S.D.N.Y. 2006) ......................................................................... 15, 26

*American Film Techs., Inc. v. Taritero*
     *(In re American Film Techs., Inc.),*
     175 B.R. 847 (D. Del. 1994) ....................................................................................... 20, 21

*Beck v. Victor Equipment Co., Inc.,*
     277 B.R. 179 (S.D.N.Y. 2002) ............................................................................................ 29

*Betty Owen Schools, Inc. v. United States Dep't of Educ.*
     *(In re Betty Owen Schools, Inc.),*
     195 B.R. 23 (Bankr. S.D.N.Y. 1996) ................................................................................ 13, 14

*Calpine Corp. v. Nevada Power Co.*
     *(In re Calpine Corp.),*
     354 B.R. 45 (Bankr. S.D.N.Y. 2006),
     *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007) ................................................................... 18, 21, 23

*Capital Comm'n Fed. Credit Union v. Boodrow*
     *(In re Boodrow),*
     126 F.3d 43 (2d Cir. 1997), *cert. denied*, 522 U.S. 1117 (1998) ................................... 26

*Coker v. Pan American World Airways, Inc (In re Pan American Corp.),*
     950 F.2d 839 (2d Cir. 1991) ............................................................................................... 29

*Conn Res. Recovery Auth v. Lay,*
     292 B.R. 464 (D. Conn. 2003) .......................................................................................... 29

*Erti v. Paine Webber Jackson & Curtis, Inc.*
     *(In re Baldwin-United Corp. Litigation),*
     765 F.2d 343 (2d Cir. 1985) ................................................................................................ 18

*Garrity v. Leffler*
    *(In re Neuman)*,
    71 B.R. 567 (S.D.N.Y. 1987) ............................................................................ 18

*Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp.* ,
    No. 06 Civ. 5358, 2006 WL 3755175
    (S.D.N.Y. Dec. 20 2006) ........................................... 19, 20, 22, 23, 24, 25

*In re Adelphia Communications Corp.*
    298 B.R. 49 (S.D.N.Y. 2003) ........................................................................... 18

*In re Midway Airlines Corp.*
    283 B.R. 846 (E.D.N.C. 2002) .................................................................... 16, 17

*In re Northwest Airlines Corp.*,
    No. 05-17930, 2006 WL 2583647
    (Bankr. S.D.N.Y. Aug. 28, 2006) .................................................................... 27

*In re United Health Care Org.*
    210 B.R. 228 (S.D.N.Y. 1997); *appeal dismissed as moot*,
    147 F.3d 179 (2d Cir. 1998) ............................................................................ 25

*Lazarus Burman Assoc., L.B. v. Nat'l Westminster Bank USA*
    *(In re Lazarus Burman Assoc., L.B.)*,
    161 B.R. 891 (Bankr. E.D.N.Y. 1993) ....................................................... 24, 25

*Lindsey v. O'Brien*
    *(In re Dow Corning, Inc.)*,
    86 F.3d 483 (6th Cir. 1996),
    *cert. denied*, *Official Comm. of Tort Claimants v. Dow Corning Corp.*, 519 U.S.
    1071 (1997) ...................................................................................................... 24

*Lomas Fin. Corp. v. The N. Trust Co.*
    *(In re Lomas Fin. Corp.)*,
    117 B.R. 64 (S.D.N.Y. 1990),
    *remanded to bankruptcy court for clarification on finality of order*,
    932 F.2d 147 (2d Cir. 1991) ............................................................................ 17

*Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc.*
    *(In re Lyondell Chem. Co.)*,
    402 B.R. 571 (Bankr. S.D.N.Y. 2009) ........................................... 14, 15, 18, 19

*MacArthur v. Johns-Manville Corp.*
    837 F.2d 89 (2d Cir.), *cert. denied*, 488 U.S. 868 (1988) ......................... 16, 20

*Mazzeo v. Lenhart*
    *(In re Mazzeo)*,
    167 F.3d 139 (2d Cir. 1999) ............................................................................ 27

*Midlantic Nat'l Bank. v. New Jersey Dep't of Envtl. Prot.*,
    474 U.S. 494, *reh'g denied*, 475 U.S. 1090 (1986) ........................................ 14

*Murray v. Pan American World Airlines, Inc.*
    *(In re Pan Am Corp.)*,
    16 F.3d 513 (2d Cir. 1994) ........................................................................ 3

*Nevada Power Co. v. Calpine Corp.*
    *(In re Calpine Corp.)*,
    365 B.R. 401 (S.D.N.Y. 2007) .................................................... 19, 23, 24, 25

*North Star Contracting Corp. v. McSpedon*
    *(In re North Star Contracting Corp.)*,
    125 B.R. 368 (S.D.N.Y. 1991) ................................................................ 15, 17

*Podkolzin v. Amboy Bus Co., Inc.*,
    402 B.R. 539 (E.D.N.Y. 2009) ................................................................. 29

*Queenie, Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003) .................................................................. 15, 16

*Rosetta Resources v. Pogo Producing Co*
    *(In re Calpine Corp.)*,
    Bankr. No. 05-60200, Adversary No. 06-1757,
    2007 WL 1302604 (Bankr. S.D.N.Y.) ................................................ 21, 23, 24

*Securities and Exchange Commission v. Brennan*,
    230 F.3d 65 (2d Cir. 2000) .................................................................... 15, 26

*Smith v. Dominion Bridge Corp.*
    No. Civ. A. 96-7580, 1999 WL 111465
    (E.D. Pa. Mar. 2, 1999) ......................................................................... 17

*Sonnax Indus., Inc. v. Tri Component Prods. Corp.*
    *(In re Sonnax Indus., Inc.)*,
    907 F.2d 1280 (2d Cir. 1990) ........................................................... 26, 27, 29

*Sudbury, Inc. v. Escott*
    *(In re Sudbury, Inc.)*,
    140 B.R. 461 (N.D. Ohio 1992) ............................................................... 20

*T.A. Title Ins. Co. v. Lampl, Sable & Makoroff*
    *(In re Marcus Hook Dev't Park, Inc.)*,
    153 B.R. 693 (W.D. Pa. 1993) ............................................................... 29

*Tow v. Credit Suisse First Boston Corp.*,
    No. CIVA3:04CV560, 2004 WL1660576
    (D. Conn. July 20, 2004) ....................................................................... 29

## Statutes

11 U.S.C. § 105 ............................................................................................ 18

28 U.S.C. § 1334(b) ....................................................................................... 3

28 U.S.C. § 1334(c)(2) ................................................................................. 29

Bankruptcy Code Section §362(a) ............................................................... 16

Title 11 § 105(a) ........................................................................................... 14

Title 11: § 362(a) .......................................................................................... 14

Chemtura Corporation ("**Chemtura**") submits this memorandum of law in support of its motion for a temporary restraining order and preliminary injunction staying the commencement and continuation of the Diacetyl Litigation and Future Diacetyl Actions against Chemtura Canada Corporation[1] ("**Chemtura Canada**") and Citrus & Allied Essences, Ltd. ("**Citrus**") and in opposition to the motions of Citrus, dated May 19, 2009, and Irma Rose Ortiz, *et al.*, dated May 28, 2009, seeking relief from the automatic stay [Docket Nos. 424 & 456]. Neither Citrus nor Chemtura Canada oppose Chemtura's motion to extend the stay, and Citrus has conceded to Chemtura's counsel that the requested extension would obviate Citrus's need to lift the stay.

## INTRODUCTION

Chemtura seeks a temporary restraining order and preliminary injunction extending the automatic stay for diacetyl-related claims to Chemtura's wholly owned subsidiary, Chemtura Canada, and their exclusive reseller, Citrus. The diacetyl-related claims are potentially among the largest unsecured claims pending against the estate. Absent an immediate extension of the stay, Chemtura will be immediately forced to respond to pending third-party discovery requests from Citrus and from certain Defendants, as well as participate in the defense of both Citrus and Chemtura Canada at trials beginning this summer to protect itself from the risk of depleted insurance policies, indemnification obligations, collateral estoppel, evidentiary prejudice and/or stare decisis. Additionally, Chemtura will likely be faced with a growing number of diacetyl-related lift-stay motions in the wake of the two pending lift-stay requests. Forced to turn its efforts to defending the diacetyl litigation, key Chemtura employees—including Chemtura's General Counsel Billie Flaherty who is integral to both the Diacetyl Litigation and

---

[1]    Chemtura Canada is not a debtor in the United States and has not filed a petition for reorganization under the applicable laws of Canada.

reorganization—will be diverted from the reorganization effort in these critical early months of its bankruptcy.

This motion and objections arise out of series of product liability lawsuits against the debtor Chemtura, its non-debtor foreign subsidiary Chemtura Canada, and third-party Citrus. The lawsuits allege that exposure to a butter flavoring ingredient ("**diacetyl**") manufactured by Chemtura Canada and resold by Citrus caused respiratory illnesses in food industry factory workers ("**Diacetyl Litigation**").

Since Chemtura and its affiliated debtors (collectively, the "**Debtors**") filed for bankruptcy on March 18, 2009, plaintiffs in the Diacetyl Litigation (together with future John Doe litigants, Citrus (as third-party plaintiff) and Ungerer & Co.,[2] the "**Diacetyl Claimants**") have ceased the prosecution of their claims directly against Chemtura. However, the Diacetyl Claimants continue to litigate against Chemtura Canada and Citrus. This continued litigation against Chemtura Canada and Citrus is adversely impacting the Debtors' estates and threatens the Debtors with irreparable harm. As will be explained in more detail below, litigation against Chemtura Canada risks the depletion of Chemtura's insurance policies and litigation against Citrus risks subjecting Chemtura to indemnification obligations. Additionally, litigation against both Chemtura Canada and Citrus is diverting key personnel from the Debtors' reorganization efforts and threatens the Debtors with potential collateral estoppel, evidentiary prejudice, and stare decisis. The harm to Chemtura is imminent because the Diacetyl Claimants are *currently* seeking discovery from Chemtura and preparing for trial, thereby distracting Chemtura General

---

[2]   Ungerer & Co. is a defendant in the *Robinson* action and has brought a third-party complaint for indemnification against Citrus and Chemtura. This Motion also seeks to stay Ungerer & Co.'s claims against Citrus, which involve the same legal issues and factual allegations as Citrus's claims for indemnification against Chemtura in other suits.

Counsel Billie Flaherty and others from focusing on the reorganization during its critical, early months.

The requested stay will grant the Debtors much needed respite from the Diacetyl Litigation. This respite will allow them to focus on reorganization—thereby fulfilling the fundamental purpose of the automatic stay. The temporary stay will also afford Chemtura's counsel the opportunity to implement a consolidated strategy for resolving the Diacetyl Litigation. Using section 157(b)(5) of title 28, as well as the "related to" jurisdiction of 28 U.S.C. § 1334(b), counsel for Chemtura intends to use the stay to remove and transfer the Diacetyl Litigation to the District Court for the Southern District of New York.[3] This would permit all diacetyl-related claims against Chemtura, Chemtura Canada, and Citrus to be managed and resolved on a consolidated basis, thereby lessening the Debtors' litigation burdens, relieving costs to the estates, and saving judicial resources, with the ultimate goal of resolving the Diacetyl Litigation as effectively and expeditiously as possible. *See, e.g., Murray v. Pan American World Airlines, Inc. (In re Pan Am Corp.),* 16 F.3d 513 (2d Cir. 1994) (transferring personal injury claims from Florida state court to the Southern District of New York); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1011 (4th Cir.) (the purpose of § 157(b)(5) is "to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'"), *cert. denied*, 479 U.S. 876 (1986).

Consolidation under this process will confer on the far-flung claims associated with the Diacetyl Litigation similar benefits to an MDL proceeding, including common resolution of key

---

[3]    Chemtura has already initiated removal in one case, *Ortiz, et al. v. FEMA, et al.*, No. BC364831, pending in the Superior Court of California, Los Angeles County, California in order to obviate the plaintiffs' threatened objection to a motion to extend the removal deadline.

legal and factual issues that are otherwise subject to multiple and varying determinations; avoidance of the costs to the Debtors and to the judicial system associated with multiple proceedings in multiple jurisdictions; and an increased likelihood of global resolution through consolidation.  Extension of the stay will create breathing room to effectuate the consolidation in an orderly fashion.

Accordingly, Chemtura respectfully requests that this Court issue an order (1) declaring that section 362(a)'s automatic stay prohibits the commencement or continuation of the Diacetyl Litigation and Future Diacetyl Actions against Chemtura Canada and Citrus or, alternatively, enjoining the Diacetyl Claimants pursuant to section 105(a) from the commencement or continuation of Diacetyl Litigation and Future Diacetyl Actions against Chemtura Canada and Citrus; (2) declaring that the stay does not apply to Chemtura's efforts to remove and transfer the Diacetyl Litigation, including Diacetyl Litigation against Chemtura Canada and Citrus;[4] and (3) denying the motions of Citrus and the Ortiz plaintiffs to lift the automatic stay.

## STATEMENT OF FACTS

Diacetyl is a butter flavoring ingredient that was widely used in the food industry prior to 2005.  (Compl. ¶ 8.)  Chemtura Canada manufactured and sold diacetyl in the United States from 1982 through 2005.  (*Id.*)    Citrus was Chemtura Canada's primary customer and exclusive reseller in the United States.  (*Id.* ¶ 10.)  From 1982 to 1998, Chemtura Canada sold diacetyl directly to Citrus.  (*See id.* ¶ 11.)  After 1998, Chemtura, a debtor, acted as a "paper" intermediary.  (*Id.*)  Chemtura purchased from Chemtura Canada and sold to Citrus, but never

---

[4]    Chemtura believes that removal and transfer under 28 U.S.C. § 157(b)(2)(5) is a ministerial act not subject to the stay.  Chemtura requests this declaration only out of an abundance of caution, and not because such a declaration is required prior to removal  and transfer.

took possession or control of the diacetyl. (*Id.*) Instead, Chemtura's involvement was primarily for invoicing purposes. (*Id.*)

Beginning in 2004, food industry factory workers began alleging that exposure to diacetyl caused respiratory illness. Products liability actions were filed across the country, alleging that diacetyl was defectively designed and manufactured, and that diacetyl manufacturers and distributors had failed to properly warn the end-users of diacetyl's dangers. Currently, there are approximately 300 such suits pending nationally, thirteen of which involve Chemtura and twelve Chemtura Canada (for a total of fourteen cases that involve either Chemtura or Chemtura Canada). (*Id.* ¶¶ 12-25, 29.) Chemtura and Chemtura Canada were also named as defendants or third-party defendants in seven actions that have since been resolved. (*Id.* ¶ 29.)

### A.    Nature of Claims

The fourteen diacetyl actions pending against Chemtura and Chemtura Canada can be divided into two general categories: (i) direct claims against Chemtura, Chemtura Canada, or Citrus, as well as other companies involved in the manufacture, distribution, sale or use of diacetyl, for injury arising from exposure to diacetyl; and (ii) indirect claims against Chemtura or Chemtura Canada brought by Citrus (and in one instance Ungerer) seeking indemnification or contribution. (*Id.* ¶ 30.) (Attached as Exhibit A to the Complaint is a chart summarizing the litigation against Chemtura, Chemtura Canada, and Citrus.)

In the first category—direct claims—Chemtura has been named a direct defendant in ten of the pending actions, and Chemtura Canada has been named a direct defendant in five of the pending actions. (*Id.* ¶ 31.) Citrus has also been named as a direct defendant in all of the actions in which Chemtura or Chemtura Canada are named as a direct defendant. (*Id.*)

The Diacetyl Claimants' direct claims against Chemtura, Chemtura Canada, and Citrus turn on identical legal theories, factual allegations, and defenses, including:

- ***Causation.*** Whether diacetyl was the proximate cause of the alleged injury to the Diacetyl Claimants;

- ***Design Defect.*** Whether the diacetyl was defective as designed and when manufactured;

- ***Failure to Test.*** Whether Chemtura, Chemtura Canada, and Citrus had a duty to test diacetyl before selling it;

- ***Daubert Challenges.*** Whether the Diacetyl Claimants' experts on product defect, causation, and damages are qualified and/or basing their opinions on relevant and reliable methods and data; and

- ***Bulk-Supplier/Sophisticated User Defense.*** Whether the Diacetyl Claimants were sophisticated buyers and/or users of diacetyl thus relieving Citrus, Chemtura, and Chemtura Canada of any liability.

(*Id.* ¶ 32.)

In the second category—indirect claims—Citrus (and in one instance Ungerer) has brought indemnification and contribution claims, as a third- or fourth-party plaintiff, against Chemtura in three actions and against Chemtura Canada in seven actions. (*Id.* ¶ 33.) In these actions—where Chemtura and Chemtura Canada are alleged to share Citrus's liability for the Diacetyl Claimants' alleged harm caused by exposure to diacetyl—Citrus's potential liability turns on the same factors identified above. (*Id.*)

## B.  Current Status of Diacetyl Litigation And Burden on Chemtura

Of the fourteen suits pending against Chemtura and Chemtura Canada, only three have trial dates. (*Id.* ¶ 37.) *Campbell* is set for trial on August 31, 2009; *Millar* is set for trial on September 20, 2010; and *Solis* is set for trial on November 16, 2009. (*Id.*) The remaining eleven actions are all in various stages of discovery, and most of these are in the early stages of discovery. (*Id.* ¶ 38.) To date, Chemtura has produced documents in five of the thirteen cases

and, as of the date the automatic stay was entered, was awaiting requests in all others. (*Id.*) Chemtura Canada has produced documents in three cases. (*Id.* ¶ 40.) Neither Chemtura nor Chemtura Canada has produced witnesses for deposition in any of the fourteen cases. Chemtura Canada has not yet produced merits-related discovery, but only jurisdictional discovery. (*Id.*)

Nonetheless, the impending trials in the small minority of diacetyl-actions—*Campbell, Solis,* and *Millar*—threaten Chemtura with imminent, irreparable harm. (*Id.* ¶ 39.) Both Citrus and the plaintiffs in these actions are seeking third-party discovery from Chemtura in order to prepare for trial. (*Id.*) For example, on May 27, 2009, Citrus served a series of insurance interrogatories on Chemtura and requested that a number of depositions of Chemtura employees proceed despite the stay. (*Id.*) Citrus takes the position that it needs this discovery immediately in order to prepare for an August 2009 trial date. (Citrus Mtn. For Relief From Stay at 5-6.)

Furthermore, Chemtura anticipates that full merits discovery of Chemtura Canada in some suits remains likely, if not imminent, because several of Chemtura Canada's motions addressing these jurisdictional questions are close to resolution. (*Id.* ¶ 41.) For example, Chemtura Canada's motion in the *Campbell* case is fully-briefed and currently scheduled to be heard on June 23, 2009. (*Id.*) The parties intend to seek to postpone the hearing (and corresponding deposition discovery) until after the resolution of this motion. (*Id.*) If this motion is denied, the hearing will be rescheduled as quickly as possible, and merits discovery could commence shortly thereafter. (*Id.*) Indeed, given the August 31, 2009 trial date in the *Campbell* action, Citrus is likely to seek a fast-track discovery schedule. (*Id.*)

Counsel for Chemtura anticipates that such discovery could be extensive and would necessarily implicate the time and resources of Chemtura because, as explained below,

Chemtura's legal department oversees and coordinates Chemtura Canada's responses to discovery but is currently focused on Chemtura's reorganization efforts. *See infra* at 8-12.

### C.   Potential For Future Suits

In addition to the fourteen pending suits, there is a likelihood of new filings. Chemtura Canada stopped manufacturing diacetyl in 2005. (*Id.* ¶ 44.) Nonetheless, future litigants may argue that, although they were exposed to diacetyl prior to 2005, they did not learn of their injuries until later (the "**Future Diacetyl Actions**"). (*Id.*) The number of such claims is sure to increase as soon as a notice of bar date issues. (*Id.*)

### D.   Potential Impact of Litigation On Estates

The claims of the Diacetyl Claimants and Citrus's indemnification and contribution claims present a substantial threat to the Debtors' estates. (*Id.* ¶¶ 47-64.)

#### 1.   *High Potential Dollar Value of Diacetyl Judgments and Settlements*

To date, no actions against Chemtura, Chemtura Canada, or Citrus have proceeded to verdict. (*Id.* ¶ 35.) However, recovery in actions against other diacetyl manufacturers and distributors have been substantial, ranging from $2.7 to $20 million for a single claimant. (*Id.*) Settlements have also had a high dollar value. (*Id.* ¶ 36.) Upon information and belief, defendants of direct diacetyl-related claims have paid an average of $2 million per claimant. (*Id.*) The claims against Chemtura and Chemtura Canada represent forty-six individual claimants. (*Id.* ¶¶ 12-25; 29.) The claims of the Diacetyl Claimants and Citrus could be among the largest unsecured claims asserted against Chemtura's estate, and thus could have a substantial impact on Chemtura's estate and reorganization. (*Id.* ¶ 34.)

#### 2.   *Diversion of Key Employees*

The defense of the Diacetyl Litigation will also divert employees who are key to Chemtura's reorganization efforts. (*Id.* ¶¶ 48-59.) The same managers who are overseeing the

8

bankruptcy proceedings and Chemtura's reorganization have responsibility for the Diacetyl
Litigation and will likely testify in Chemtura Canada's defense.  (*Id.* ¶¶ 48-49.)

For example, Chemtura's General Counsel, Billie Flaherty, has been overseeing the
Diacetyl Litigation for both Chemtura and Chemtura Canada since its inception and has
remained responsible for the Diacetyl Litigation since her promotion to General Counsel.  (*Id.*
¶ 49.)  Ms. Flaherty is integral to developing the factual and legal defenses to the litigation; the
preparation of Chemtura and Chemtura Canada's responses to interrogatories relating to the
Diacetyl Litigation; the coordination of document collections from archives and numerous sites;
and the identification and preparation of fact witnesses and designees to testify as witnesses
under Federal Rule of Civil Procedure 30(b)(6) or state equivalents.  (*Id.*)  It is likely that
plaintiffs will seek to depose Ms. Flaherty.  (*Id.*)

But Ms. Flaherty's time and attention are essential to Chemtura's reorganization efforts.
(*Id.* ¶ 50.)  As General Counsel, Ms. Flaherty is overseeing the reorganization of Chemtura and
the other Debtors.  (*Id.*)  Among other things Ms. Flaherty is responsible for directing the
resolution of Chemtura's liabilities through the reorganization process.  (*Id.*)  These liabilities
may be divided into six general categories:

- ***Real Property***.  Ms. Flaherty runs a team of Chemtura personnel who are
reviewing over 350 of the Debtors' current leases for real property and
determining whether to assume or reject those leases.

- ***Environmental Litigation***.  Approximately 73 properties that are
currently, or were formerly, owned by various Debtors are subject to
environmental remediation.  Ms Flaherty has been coordinating these
remediation efforts, including negotiations with numerous state
governments and enforcement agencies.

- ***Pensions and Employee Benefits.***  Ms. Flaherty manages a team of
Chemtura personnel who are reviewing the Debtors' pension and
employee benefits programs.

- ***Utilities***.   Ms. Flaherty oversees a team that is reviewing the Debtors' utility contracts for purposes of determining whether to assume or reject those contracts.  Ms. Flaherty has also been involved in negotiations of adequate assurance payments to Debtors' utility providers.

- ***Executory Contracts***.   Ms. Flaherty runs a team of Chemtura in-house counsel and business persons who are resolving the status of over 12,000 executory contracts.

- ***General Litigation***.   In addition to the Diacetyl Litigation, over 11,000 individual litigants have claims against various Debtors.

(*Id.*)

Ms. Flaherty has primary and direct responsibility for each of these six areas of Chemtura's reorganization efforts.  (*Id.* ¶ 51.)  For the Debtors to have their best chances at a successful reorganization, Ms. Flaherty, the other attorneys in Chemtura's legal department, and its support personnel must remain focused on the reorganization.  (*Id.*)

If the litigation against Chemtura Canada and/or Citrus were to proceed, other employees of Chemtura would also be diverted from critical reorganization efforts.  (*Id.* ¶ 52.)  For example, the Diacetyl Claimants and Citrus noticed the depositions of Mr. Sean O'Connor and Dr. Mark Thomson, two employees of Chemtura.  (*Id.*)  Additionally, Mr. O'Connor and Dr. Thomson have been identified by Chemtura as potential Rule 30(b)(6) witnesses for Chemtura Canada on particular issues.  (*Id.*)  In order to prepare, they will be required to read numerous documents and interview a variety of people (including both counsel and other Chemtura employees).  (*Id.*)

The task of preparing Mr. O'Connor and Dr. Thomson to testify is complicated by the fact that Chemtura Canada ceased manufacturing diacetyl in 2005.  (*Id.* ¶ 53.)  Since then, several personnel with firsthand knowledge of these claims have left the company.  (*Id.*)  Thus, Mr. O'Connor's and Dr. Thomson's preparation to testify as 30(b)(6) witnesses will require significant time and attention.  (*Id.*)

Both Mr. O'Connor and Dr. Thomson, however, are currently focused on Chemtura's reorganization efforts.  (*Id.* ¶ 54.)  Mr. O'Connor is one of Chemtura's most senior business leaders.  (*Id.*)   He oversees the Petroleum Additives business segment of the Performance Products Group, an important, profitable business segment.  (*Id.*)   Maintaining the profitability of this business segment is essential to Chemtura's emergence from bankruptcy.  (*Id.*) Mr. O'Connor is also integral to the development and implementation of a five-year post-emergence business plan for the Petroleum Additives segment.  (*Id.*)

Dr. Thomson is the senior toxicologist in Chemtura's Environmental Health, Safety and Regulatory Affairs department.  (*Id.* ¶ 55.) He is currently overseeing Chemtura's efforts to comply with the European Union's directive on the Registration, Evaluation, Authorization and Restriction of Chemical substances ("REACH").  (*Id.*)  Chemtura must comply with REACH in order to sell its product in the EU.  Without the ability to sell product in the EU, Chemtura's reorganization will not be successful.  (*Id*.)

Overseeing the REACH efforts is time-consuming, and Dr. Thomson's attention should not be diverted.  (*Id.* ¶ 56.)   REACH requires chemical manufacturers, like Chemtura, to pre-register their products for sale in the European Union before the end of 2010.  (*Id.* ¶ 57.) This pre-registration process requires extensive data compilation and testing.  (*Id*.)  Dr. Thomson is coordinating dossier development and toxicological review of nearly 200 different chemical substances  (*Id*.)  He is also participates on a regular basis in a number of EU-based industry consortia and REACH-required "Substance Information and Exchange Fora," which are important activities in Chemtura's REACH compliance program.  (*Id.*)  Finally, Dr. Thomson is involved in performing the cost-benefit analysis as to which substances to Register under REACH, a key factor in Chemtura's business strategy for Europe.  (*Id.*)

Finally, the Diacetyl Litigation raises issues that can only be addressed by Chemtura's finance department, such as historical financial information on sales and production.  (*Id.* ¶ 58.) Chemtura's finance department, however, is directly engaged in reorganization efforts, such as preparing financial projections, financial analysis, and supporting efforts to develop business plans for the Debtors' product segments.  (*Id.*)

In sum, the prosecution of the Diacetyl Litigation will divide the attention of those witnesses and Chemtura's managers with responsibility for litigation, thus compromising their availability to the Debtors and impeding the Debtors' reorganization efforts.[5]  (*Id.* ¶ 59.)

### 3.    *Risk of Depleting Chemtura's Shared Insurance*

Chemtura shares insurance with Chemtura Canada.  Prior to the Petition Date, Chemtura secured general liability insurance that provides both Chemtura and Chemtura Canada coverage for diacetyl-related claims.  (*Id.* ¶ 45.)  These policies are underwritten by several different carriers, have varying limits and deductibles (or self insurance retentions) and have distinct terms of coverage.  (*Id.*)  Additionally, some policies are occurrence-based while others are claims-based.  (*Id.*)

The insurance is property of the Debtors' estates.  Chemtura intends to rely on the proceeds of these policies to fund its potential liabilities with regard to the diacetyl-related claims allowed pursuant to a chapter 11 plan of reorganization.  (*Id.* ¶¶ 45-46.)  Continued litigation against Chemtura Canada (and Citrus too because it seeks contribution and indemnification from

---

[5]    By contrast, Chemtura's plan to transfer the claims pursuant to § 157(b)(5) will allow the District Court to manage the litigation on a consolidated basis and thereby avoid the harm to Chemtura's reorganization that will occur if the Diacetyl Litigation goes forward in an uncontrolled manner in numerous courts around the country.

Chemtura and Chemtura Canada) will deplete property of Chemtura's estate and impair Chemtura's efforts to reorganize.  (*Id.*)

       4.     *Risk of Collateral Estoppel, Evidentiary Prejudice, and Stare Decisis.*

Continued prosecution of the Diacetyl Litigation against Chemtura Canada and Citrus will threaten Chemtura with the risk of collateral estoppel, evidentiary stare decisis, and evidentiary prejudice.  (*Id.* ¶¶ 62-63.)  The Diacetyl Claimants allege identical claims against Chemtura, Chemtura Canada, and Citrus, and intend to use the same experts against each entity as well.  (*Id.* ¶ 62.)  Rulings with respect to key issues in one jurisdiction therefore may be shopped to other jurisdictions.[6]  (*Id.*)  Even if Chemtura is not collaterally estopped, a finding that other defendants were liable on identical claims and facts could only severely prejudice the (currently stayed) litigation against Chemtura on those identical claims based on identical evidence.  (*Id.* ¶ 63.)

## **ARGUMENT**

## I.    **THIS COURT HAS JURISDICTION TO STAY THE DIACETYL LITIGATION AS TO NON-DEBTORS.**

It is beyond dispute that this Court has subject-matter jurisdiction to stay the Diacetyl Litigation as to non-debtors.  The relevant subject matter jurisdiction statute—Section 1334 of Title 28—"is very broad."  *Betty Owen Schools, Inc. v. United States Dep't of Educ. (In re Betty Owen Schools, Inc.)*, 195 B.R. 23, 28 (Bankr. S.D.N.Y. 1996) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995)), *aff'd in part*, 213 B.R. 633 (S.D.N.Y 1997).  It provides in part:  "the district courts shall have original but not exclusive jurisdiction of all civil proceedings ***arising under title 11***, or arising in ***or related to cases under title 11***."  *Lyondell Chem. Co. v.*

---

6    While Chemtura and Chemtura Canada intend to vigorously contest such claims, plaintiffs and other parties are likely to raise them.

*CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 586 (Bankr. S.D.N.Y. 2009) (quoting 28 U.S.C. § 1334(b)) (emphasis added). In this case, the Debtors' request for injunctive relief both "arises under" title 11 and is "related to" cases under title 11.

*First*, the Debtors' request for injunctive relief "arises under title 11." The Debtors are seeking relief pursuant to two separate sections of Title 11: § 362(a) and § 105(a). *Lyondell*, 402 B.R. at 586 (holding that an injunction request pursuant to section 105(a) invoked the bankruptcy court's arising under jurisdiction).

*Second*, the Debtors request for injunctive relief is "related to cases under title 11." In this Circuit, a request is "related to" a case under title 11 where "its outcome might have any 'conceivable effect' on the bankrupt estate." *Id.* at 586-87 (quoting *Publicker Indus., Inc. v. Untied States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992)); *Betty Owen Schools, Inc.*, 195 B.R. at 28. Where a debtor can show that actions sought to be enjoined would either affect their ability to reorganize or the value of their estate, the debtor's request for an injunction is "related to" a chapter 11 case. *Id.* The requested injunction will both assist the Debtors in reorganizing and protect the value of their estates.

## II. THE DIACETYL LITIGATION AND FUTURE DIACETYL ACTIONS SHOULD BE ENJOINED UNDER SECTIONS 362(a)(1) AND 362(a)(3) OR, ALTERNATIVELY, UNDER SECTION 105(a) OF THE BANKRUPTCY CODE.

### A. The Continuation Or Commencement Of Diacetyl Litigation Against Chemtura Canada And Citrus Should Be Stayed Under Section 362(a)(1) And (3) Of The Bankruptcy Code.

The automatic stay provided by section 362 of the Bankruptcy Code is "'one of the fundamental debtor protections provided by the bankruptcy laws.'" *Midlantic Nat'l Bank. v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (quoting S.Rep. No. 95-989, p. 54 (1978)), *reh'g denied*, 475 U.S. 1090 (1986). Its purpose is "to grant complete, immediate, albeit temporary relief to the debtor from creditors," "to prevent dissipation of the debtor's assets

before orderly distribution to creditors can be effected," and "to allow the bankruptcy court to centralize all disputes covering property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Securities and Exchange Commission v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) (internal quotations omitted).

Recognizing the stay's purpose, courts in this District and around the country will not permit creditors to end-run the stay by seeking relief against a debtor through a non-debtor entity. *North Star Contracting Corp. v. McSpedon (In re North Star Contracting Corp.),* 125 B.R. 368, 371 (S.D.N.Y. 1991). Section 362(a)'s protection extends to non-debtor third parties "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate" or "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-288 (2d Cir. 2003); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002-08 (4th Cir.) (citing *In re Johns-Manville Corp*., 26 B.R. 405, 410 (S.D.N.Y. 1983); *see also 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427 (2d Cir. 1987), *cert. denied,* 485 U.S. 1035 (1988); *Lyondell Chem. Co. v. CenterPoint Energy & Gas Servs., Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 588 n.35 (Bankr. S.D.N.Y. 2009); *Adelphia Comm'n Corp. v. The America Channel, LLC (In re Adelphia Comm'n Corp.)*, 345 B.R. 69, 76 (Bankr. S.D.N.Y. 2006) ("Bankruptcy Code section 362(a)(3) protects the *in rem* jurisdiction of the Court, and prohibits interference with the disposition of the assets that are under the Court's wing—whether or not the Debtor is named as a defendant as part of the effort.").

In this case, the continued litigation against Chemtura Canada and Citrus will have an immediate, adverse impact on the Debtors' estates and the Debtors have an identity of interest

15

with Chemtura Canada and Citrus.  Thus, section 362(a)'s stay should extend to both Chemtura Canada and Citrus.

1.      *The continuation of litigation against Chemtura Canada and Citrus will have an immediate, adverse impact on the Debtors' estates.*

An adverse judgment against Chemtura Canada will deplete the assets of the Debtors' estates.  Chemtura Canada is a wholly-owned subsidiary of Chemtura, a debtor in this action. *Queenie, Ltd.*, 321 F.3d at 288 (holding that 362(a) applied to wholly-owned subsidiary of debtor).  Chemtura Canada and the Debtors also share a number of insurance policies that it intends to use to cover the costs of, or liability resulting from, the Diacetyl Litigation.  These policies are an asset of the estates.  *See, e.g., MacArthur v. Johns-Manville Corp*., 837 F.2d 89, 91-92 (2d Cir.) (holding that an insurance policy is property of the estate), *cert. denied*, 488 U.S. 868 (1988).  Under the policies, joint liability coverage of the Debtors and Chemtura Canada share a fixed amount of liability coverage.  Thus, an adverse judgment against, or settlement on behalf of, Chemtura Canada would deplete estate assets.  *A.H. Robins Co.*, 788 F.2d at 1008 (holding that extension of the automatic stay to non-debtor codefendants was appropriate because any suit "against [the] co-defendants, if successful, would reduce and diminish the insurance fund or pool . . . and thereby affect the property of the debtor to the detriment of the debtor's creditors as a whole."); *In re Midway Airlines Corp.*, 283 B.R. 846, 852 (E.D.N.C. 2002) (holding that extension of the automatic stay to non-debtor codefendants was appropriate since the non-debtor codefendants were "covered by Debtor's corporate liability insurance policy").

Similarly, a judgment against Citrus threatens an immediate, adverse economic impact on the Debtors' estates.  Citrus claims that Chemtura is obligated to indemnify it for any diacetyl-related liability.  In such cases, courts routinely hold that section 362(a)'s stay extends

16

to the third-parties.  *In re Midway Airlines Corp.*, 283 B.R. at 852 (holding that extension of the automatic stay to non-debtor codefendants was appropriate where non-debtor codefendants could require debtor to indemnify them for their liability to plaintiff);  *Smith v. Dominion Bridge Corp.*, No. Civ. A. 96-7580, 1999 WL 111465, at *5 (E.D. Pa. Mar. 2, 1999) (same); *North Star Contracting Corp.*, 125 B.R. at 371 (same); *Lomas Fin. Corp. v. The N. Trust Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 68 (S.D.N.Y. 1990), *remanded to bankruptcy court for clarification on finality of order*, 932 F.2d 147 (2d Cir. 1991)

       2.     *There is an identity of interest between Chemtura, Chemtura Canada, and Citrus.*

There is also a close identity of interest between Chemtura, Chemtura Canada, and Citrus such that a judgment against either Chemtura Canada or Citrus would, in effect, be a judgment against the Debtors.  *A.H. Robins Co.*, 788 F.2d at 1002-08 (holding that 362(a) extends to third-parties where there is a close identity of interest).  **First**, Chemtura and Chemtura Canada share insurance policies, which will be depleted if continued litigation against Chemtura Canada results in settlements or adverse judgments against Chemtura Canada (and Citrus too because it seeks recovery from Chemtura and Chemtura Canada).  **Second**, Chemtura risks being forced to provide contribution to or indemnify Citrus if litigation continues against Citrus.  **Third**, Chemtura risks collateral estoppel, evidentiary prejudice, and stare decisis if litigation continues against Chemtura Canada or Citrus.  **Fourth,** Chemtura will be forced to divert senior management time and resources, and to participate in discovery, if litigation continues against Chemtura Canada and/or Citrus, thereby sapping the Debtors' resources and impeding the reorganization process.

      **B.**      **Alternatively, This Court Should Enjoin The Continuation Or Commencement Of Diacetyl Litigation Against Chemtura Canada And Citrus Under Section 105(a) Of The Bankruptcy Code.**

Apart from the automatic stay, the Diacetyl Litigation against Chemtura Canada and Citrus should be enjoined pursuant to section 105(a).  "[T]he Bankruptcy Court has authority under section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization."  *Lydonell Chem. Co.*, 402 B.R. at 587 n.33; *see also Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litigation )*, 765 F.2d 343, 348 (2d Cir. 1985).  In particular, "the Second Circuit, courts in this District, and courts in other circuits have 'construed [section 105] liberally to enjoin suits that might impede the reorganization process,'" *In re Adelphia Communications Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003) (quoting *Garrity v. Leffler (In re Neuman)*, 71 B.R. 567, 571 (S.D.N.Y. 1987)), including "suits by third parties against third parties," *Calpine Corp. v. Nevada Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) (collecting cases), *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007).

In determining to grant a stay under section 105(a), courts in this district apply a modified version of the preliminary injunction standard: (1) whether there is a likelihood of successful reorganization; (2) whether the action sought to be enjoined would embarrass, burden, delay, or otherwise impede the reorganization proceedings or deplete estate property;[7] (3) whether the balance of harms favors the moving party; and (4) whether the public interest weighs in favor of an injunction.  *Lyondell Chem. Co.*, 402 B.R. at 588-89; *Nevada Power Co. v. Calpine Corp. (In*

---

[7]  "Courts in the Second Circuit have recognized a limited exception to the irreparable harm requirement for issuance of a preliminary injunction in the bankruptcy context where the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to the case before it." *Lyondell Chem. Co.*, 402 B.R. at 590.  "Thus, where the movant shows 'that the action sought to be enjoined would embarrass, burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the Bankruptcy Court may issue injunctive relief.'"  *Id.* (internal citation omitted); *see also Rosetta Resources v. Pogo Producing Co. (In re Calpine Corp.)*, Bankr. No.05-60200, Adversary No. 06-1757, 2007 WL 1302604, at *3 (Bankr. S.D.N.Y.); *Calpine Corp.*, 354 B.R. at 48.

*re Calpine Corp.*), 365 B.R. 401, 409 (S.D.N.Y. 2007); *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp.*), No. 06 Civ. 5358, 2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20 2006). "In evaluating these factors, the court takes a 'flexible approach and no one factor is determinative.'" *Nevada Power Co.*, 365 B.R. at 409; *Hawaii Structural Ironworkers Pension Trust Fund*, 2006 WL 3755175, at *4. Here, all four factors weigh heavily in favor of granting the requested temporary restraining order and preliminary injunction.

**First**, the Debtors are reasonably likely to successfully reorganize. *Lyondell Chemical Co.*, 402 B.R. at 589 (inquiry is whether the debtor has a "reasonable likelihood of a successful reorganization'"). As this Court explained in *Lyondell*, debtors in the early states of bankruptcy need not show "detailed projections of the terms or anticipated feasibility of [a] plan of reorganization," *id.* at 590 n.44 (quoting *Steven P. Nelson, D.C. P.A. v. G.E. Capital Corp.*, 140 B.R. 814, 816-17 (Bankr. M.D. Fla. 1992)), but only that they are "'on track' and they have met the challenges that have faced so far." *id.* at 590. Here, the Debtors are in the early stages of bankruptcy and are undeniably "on track." After less than three months in bankruptcy, the Debtors have obtained final approval for $400 million in DIP financing, successfully stabilized their business, and substantially restored their supply chains. A committee of unsecured creditors has been established. And, most importantly, the Debtors are currently in the process of preparing a business plan that will form the foundation for a chapter 11 plan of reorganization. "[T]here is no reason to believe or suspect that their reorganization will fail—unless, of course, the acts sought to be enjoined *cause* it to fail." *Id.* (emphasis in original).

**Second**, the continuation of litigation against Chemtura Canada and Citrus will impede the Debtors' reorganization efforts, thereby causing the Debtors irreparable harm. Specifically, the continuation of the Diacetyl Litigation against Chemtura Canada and Citrus will  (1) deplete

estate assets; (2) divert key personnel from assisting reorganization efforts; and (3) result in collateral estoppel, evidentiary prejudice, and/or stare decisis.

### Depletion of Estate Assets

As explained above, the continuation of litigation against Chemtura Canada and Citrus will deplete estate assets. Chemtura Canada and the Debtors share insurance policies that cover defense costs and liability for the Diacetyl Litigation. The policies are assets of the estate. *See, e.g., MacArthur*, 837 F.2d at 91-92. Under these policies, joint recovery of Chemtura and Chemtura Canada is capped. Continued litigation against Chemtura Canada, therefore, will deplete the estate assets through recoveries via settlement or judgment. *Hawaii Structural Ironworkers Pension Trust Fund*, 2006 WL 3755175, at *6 (granting stay under section 105(a) where non-debtor co-defendant entity shared insurance policy with debtor).

Similarly, continuation of litigation against Citrus risks the depletion of estate assets. As explained above, Citrus claims that as a mere distributor of diacetyl its liability is derivative of Chemtura and Chemtura Canada. Citrus asserts the right to indemnification by operation of law under various state law theories. Although the Debtors contest Citrus's right to indemnification, there is nonetheless a risk Citrus will prevail on its indemnification claim. Because of this risk, Chemtura must spend resources defending its interests in the diacetyl litigation. *Sudbury, Inc. v. Escott (In re Sudbury, Inc.)*, 140 B.R. 461, 464 (N.D. Ohio 1992) (granting stay under section 105 based on debtor's obligation to indemnify certain co-defendants even though "indemnities may be unenforceable" because the risk of indemnification would force the debtor to litigate regardless of whether the debtor would later prevail on the indemnification issue); *American Film Techs., Inc. v. Taritero (In re American Film Techs., Inc.)*, 175 B.R. 847, 855 (D. Del. 1994) (same).

### *Risk of Collateral Estoppel, Evidentiary Prejudice, and Stare Decisis*

In addition to depleting of estate assets, the continued litigation against Chemtura Canada and Citrus will subject the Debtors to claims of collateral estoppel, evidentiary prejudice, and/or stare decisis. This is because the liability of Chemtura, Chemtura Canada, and Citrus to Diacetyl Claimants turns on identical legal theories, factual allegations, and defenses, including:

- *Causation.* Whether diacetyl was the proximate cause of the alleged injury to the Diacetyl Claimants;

- *Design Defect.* Whether the diacetyl was defective as designed and when manufactured;

- *Failure to Test.* Whether Chemtura, Chemtura Canada and Citrus had a duty to test diacetyl before selling it;

- *Daubert Challenges.* Whether the Diacetyl Claimants' experts on product defect, causation, and damages are qualified and/or basing their opinions on relevant and reliable methods and data; and

- *Bulk-Supplier/Sophisticated User Defense.* Whether the Diacetyl Claimants were sophisticated buyers and/or users of diacetyl thus relieving Citrus, Chemtura, and Chemtura Canada of any liability.

*Rosetta Resources v. Pogo Producing Co. (In re Calpine Corp.)*, Bankr. No. 05-60200, Adversary No. 06-1757, 2007 WL 1302604, at *3 (Bankr. S.D.N.Y. 2007) (holding that debtors had demonstrated a risk of irreparable harm where debtors' liability rested on same facts as co-defendant's liability, causing risk of collateral estoppel, and evidentiary prejudice); *Calpine Corp.*, 354 B.R. at 49-50 (same and collecting cases); *American Film Techs., Inc.*, 175 B.R. at 855 (same).

### *Diversion of Key Personnel*

Continued litigation against Chemtura Canada and Citrus will also sap the Debtors' resources by forcing personnel integral to the reorganization process to devote their time and energy to the Diacetyl Litigation.

Chemtura Canada and the Debtors share key personnel. Billie Flaherty, Chemtura's General Counsel, runs the Diacetyl Litigation for both Chemtura and Chemtura Canada. Ms. Flaherty has been running the Diacetyl Litigation for years and is the Chemtura employee with the most knowledge about the Diacetyl Litigation. If the litigation is not stayed as to Chemtura Canada, Ms. Flaherty will be forced to focus her efforts on the Diacetyl Litigation. As the Debtors' chief legal officer, Ms. Flaherty is also essential to the Debtors' reorganization effort. The Diacetyl Litigation is an unnecessary and time-consuming diversion, forcing Ms. Flaherty to focus on a multiplicity of suits pending all over the country. Ms. Flaherty is ultimately responsible for all aspects of the reorganization, including overseeing the resolution of all Chemtura's real property, environmental litigation, pension and employee benefit, utility, executory contract, and general litigation liabilities. *See supra* at 9-10.

The Debtors will also be forced to assist in Chemtura Canada's fact development and document discovery. Chemtura is in possession of some of Chemtura Canada's responsive documents—in particular, certain of Chemtura Canada's financial documents and invoices sent to Citrus—and will be forced to search for, and produce those documents if the stay is not extended to Chemtura Canada. *Hawaii Structural Ironworkers Pension Turst Fund*, 2006 WL 3755175, at *5 (granting stay where onus of discovery naturally fell on the debtors who had access to facts). Chemtura Canada's document discovery is in its early stages; there has been no merits discovery but only jurisdictional discovery. When merits discovery begins, Chemtura will almost certainly be forced to produce the financial and invoicing documents, regardless of whether the litigation is stayed as to Chemtura itself.

The Debtors will also be forced to assist in Chemtura Canada's defense through fact development, depositions, and testimony. Sean O'Connor and Mark Thomson, Chemtura

employees, have been identified as deponents by the Diacetyl Claimants.  Preparing them to

testify as a 30(b)(6) witness, as opposed to testifying to their personal knowledge, will require

extensive preparation, speaking with numerous employees, and reviewing voluminous

documents.  At the same time, both Mr. O'Connor and Dr. Thomson are essential to the

reorganization process.  Mr. O'Connor is integral to the preparation of Chemtura's five-year

reemergence plan.  He also oversees the Petroleum Additives business segment, an important,

profitable business segment.  Its continued success is vital to fund the reorganization.  Dr.

Thomson is the senior toxicologist in Chemtura's Environmental Health, Safety and Regulatory

Affairs department.  He is currently overseeing Chemtura's efforts to comply with REACH, and

to register over 200 substances for sale in the EU.  The registration process must be

accomplished by 2010 or Chemtura will be unable to sell its product in the EU.

Additionally, Citrus has served third-party document requests directly on the Debtors.

Complying with Citrus's discovery requests—and in all likelihood requests from other parties—

will unduly burden the Debtors.  *Calpine Corp.*, 354 B.R. at 50 (granting stay where plaintiff

sought third-party discovery from debtors); *Rosetta Resources*, 2007 WL 1302604, at *3-4

(same).

Even were the Debtors not subject to discovery obligations, a "prudent debtor" would

most certainly assist in litigation that, as explained above, could result in collateral estoppel,

evidentiary prejudice, or stare decisis.  *Nevada Power Co.*, 365 B.R. at 412 (noting that a prudent

debtor would assist in litigation regardless of whether it was forcibly required to participate

through discovery requests); *Rosetta Resources*, 2007 WL 1302604, at *4 (same); *Hawaii

Structural Ironworkers Pension Trust Fund*, 2006 WL 3755175, at *5 (recognizing "a prudent

debtor would devote managerial and financial resources to assisting in the defense against [such an action] because of the potential impact upon a claim or suit against the debtor").

The diversion of key personnel is irreparable harm, and is, by itself, grounds for granting the stay. *See, e.g., Nevada Power Co.*, 365 B.R. at 411-12 (holding that diversion of key personnel is grounds for injunction under section 105); *Rosetta Resources*, 2007 WL 1302604, at *3-4 (same); *Hawaii Structural Ironworkers Pension Trust Fund*, 2006 WL 3755175, at *5 (same); *Lazarus Burman Assoc., L.B. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assoc., L.B.)*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) (holding that diversion of key employees is irreparable harm).

***Third***, the balance of harms weighs decisively in favor of extending the stay. In balancing harms on a stay motion, courts weigh the harm to the Debtors against the harm (or lack thereof) to the plaintiffs whose suits would be subject to stay. *Rosetta Resources,* 2007 WL 1302604, at *4. As noted above, the Debtors risk diversion of key employees, depletion of estate assets, collateral estoppel, and evidentiary prejudice. In contrast, the Diacetyl Claimants would experience only a temporary stay in their ability to prosecute their lawsuits against Chemtura Canada and Citrus—of which only three have set trial dates. *Lazarus Burman Assoc., L.B.*, 161 B.R. at 901 (relevant harm is the delay in ability to enforce rights). Moreover, Chemtura's motion is part of a coordinated strategy to consolidate all Diacetyl Litigation pending against Chemtura, Chemtura Canada, and Citrus in this District for resolution. Therefore, extending the stay to Chemtura Canada and Citrus may well ***advance*** the global resolution of this litigation, not ***delay*** it. *See, e.g., Lindsey v. O'Brien (In re Dow Corning, Inc.),* 86 F.3d 483, 497 (6th Cir. 1996) (Consolidation pursuant to § 157(b)(5) "will further the prompt, fair and complete resolution of all claims 'related to' bankruptcy proceedings, and harmonize Section 1334(b)'s

24

broad jurisdictional grant with the oft-stated goal of centralizing the administration of a

bankruptcy case."), *cert. denied, Official Comm. of Tort Claimants v. Dow Corning Corp.,* 519

U.S. 1071 (1997) . In any event, the Diacetyl Claimants remain free to prosecute their claims

against the multiple remaining defendants in each case. *Hawaii Structural Ironworkers Pension*

*Trust Fund*, 2006 WL 3755175, at *6 (considering plaintiffs' ability to proceed against other

defendants).

*Fourth*, the public interest weighs in favor of extending the stay. Courts recognize that

there is an overriding public interest in successful reorganization. *Hawaii Structural Ironworkers*

*Pension Trust Fund*, 2006 WL 3755175, at *6; *Lazarus Burman Assoc., L.B.*, 161 B.R. at 901.

Thus, "[e]valuation of the public interest factor of the analysis requires a balancing of the public

interest in successful bankruptcy reorganizations with other competing societal interests."

*Nevada Power Co.*, 365 B.R. at 413 (internal citation omitted). Here, the only competing

societal interest is the immediate resolution of the Diacetyl Claimants' claims. However, given

that counsel for the Debtors in the Diacetyl Litigation will use the time afforded by this stay to

implement a coordinated strategy to consolidate and seek expedited resolution of the Diacetyl

Litigation, this factor also weighs in favor of, and not against, granting the stay. *In re United*

*Health Care Org.*, 210 B.R. 228 (S.D.N.Y. 1997) (holding that the conservation of judicial

resources was in the public interest and weighed in favor of granting a stay under section 105),

*appeal dismissed as moot*, 147 F.3d 179 (2d Cir. 1998).

## III.    NEITHER CITRUS NOR THE ORTIZ PLAINTIFFS HAVE DEMONSTRATED THE REQUISITE "CAUSE" FOR LIFTING THE STAY AS TO CHEMTURA.[8]

---

[8]    The Debtors will also file this memorandum in the bankruptcy court in the form of a formal opposition to both the Citrus and Ortiz plaintiffs' motions.

Section 362(a)'s automatic say is "one of the most critical elements of bankruptcy law since the enactment in 1987 of the modern Bankruptcy Code-and indeed, going back even further, to the days of the former Bankruptcy Act." *Adelphia Comm'n Corp.*, 345 B.R. at 75. In moving to lift the automatic stay, Citrus and the Ortiz plaintiffs ignore its very purpose—"to grant complete, immediate, albeit temporary relief to the debtor from creditors." *Brennan*, 230 F.3d at 70. The Debtors are only three months into their bankruptcy; they need to focus their attention on reorganization, not the over 2,400 suits currently pending against the Debtors in this and other litigation.

Section 362(d) permits a bankruptcy court to lift the automatic stay only upon a showing of "cause." And, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1284 (2d Cir. 1990); *see also Capital Comm'n Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause."), *cert. denied*, 522 U.S. 1117 (1998).

The Second Circuit has outlined a 12-factor test to determine whether good cause exists to lift the stay to allow the litigation to proceed (the "*Sonnax* factors"):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending [the action]; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to

equitable subordination; (9) whether movant's success in the other
proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and
economical resolution of litigation; (11) whether the parties are
ready for trial in the other proceeding; and (12) the impact of the
stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.  In a given case, however, not all of the factors will be relevant, and

the court may disregard irrelevant factors.  *See Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139,

143 (2d Cir. 1999).  For the reasons state above, the stay should be **extended** to Chemtura

Canada and Citrus, and not **lifted** as to Chemtura.  If the stay is extended to Citrus, it will

withdraw or adjourn indefinitely its stay relief motion, leaving only the Ortiz-plaintiffs stay

motion.  In addition, the relevant *Sonnax* factors weigh heavily against lifting the stay for the

Ortiz action.

 ***First***, lifting the stay would not result in complete resolution of the issues.  The pending

motions to lift the stay relate to only two of thirteen diacetyl lawsuits pending against Chemtura.

Twelve other actions remain stayed and unresolved, and more related litigation is a virtual

certainty.

 ***Second***, lifting the stay would interfere with the Debtors' reorganization efforts, diverting

key management from the paramount task of reorganizing during these early critical months.  If

the Motion is granted, other litigants asserting claims against the Debtors will similarly seek to

lift the automatic stay, opening the "floodgates"; these lawsuits are two of over 2,400 lawsuits

against the Debtors.  *See, e.g., In re Northwest Airlines Corp.*, No. 05-17930, 2006 WL 2583647

at *2 (Bankr. S.D.N.Y. Aug. 28, 2006) (denying a motion for relief from stay under the Sonnax

factors where lifting the automatic stay would open the floodgates for similar motions and cause

the Debtors to refocus their energies on litigation rather than emergence from chapter 11).

**Third**, no specialized tribunal has been established to hear this cause of action.  Courts in the District are well equipped to apply state law and adjudicate complex, products matters.

**Fourth**, the Debtors insurers have not assumed responsibility for litigating the Diacetyl Litigation.[9]  Instead, the burden and risks of this litigation falls on the Debtors themselves. The Ortiz plaintiffs' argument that the stay should be lifted because they will only seek recovery from Chemtura's insurers does nothing to relieve Chemtura of that burden.  Debtors would still be forced to focus their energies on defending the litigation, divert their personnel and resources, and risk collateral estoppel and evidentiary prejudice from an adverse judgment.  Moreover, it is far from clear that the Ortiz plaintiffs will be able to collect only from the insurers. There are significant self-insured retentions attached to Chemtura's policies that must be satisfied before any coverage is available.[10]  For example, the lowest self-insured retention asserted by any of Chemtura's insurers is $2.5 million per occurrence (which Chemtura contests) while the other potentially applicable policies have self-insured retention amounts as high as $10 million.  The insurers will only be liable for amounts above the self-insured retentions, and then, potentially only after Chemtura pays the self-insured retentions.  Thus, the Ortiz plaintiffs cannot pursue Chemtura's insurers without effectively pursuing Chemtura.

**Fifth**, the interests of judicial economy weigh against lifting the stay.  The extended stay is the first step in consolidating Diacetyl Litigation in this District for coordinated and expedited resolution.  Allowing the state courts to proceed piecemeal would waste judicial and party

---

[9]  Although an insurer has being paying the defense costs of a number of the diacetyl actions, it is unclear whether the insurer will continue to do so.

[10]  The Debtors reserve their rights as to the effect of Chemtura's chapter 11 filing on its obligation to satisfy the self-insured retention amounts and the insurers' respective obligations under the policies.

resources, defeat any prospect of global resolution, and undermine the core purpose of the automatic stay.

Importantly, neither Citrus's claim (based on section 157(b)(5)) nor the Ortiz plaintiffs' claims (based on mandatory abstention)[11] that state courts should hear their claims has any relevance to this stay motion.  Section 157(b)(5) mandates that the District Court "shall order" where the Citrus's and Ortiz plaintiffs' claims "shall be tried."  By asking this Court to permit the litigation to go forward in state court, Citrus and the Ortiz plaintiffs are attempting improperly to evade the District Court's exclusive responsibility to determine trial venue.  By contrast, Chemtura's proposal to consolidate the litigation in the District Court gives full effect to § 157(b)(5)'s mandate.

**Sixth**, the Diacetyl Litigation as a whole is in its procedural infancy.  Only three cases have trial dates, and those dates are unrealistic.

---

[11]  Similarly, The Ortiz plaintiffs' claim that mandatory abstention applies is both incorrect and irrelevant to their motion to lift the stay.  First, mandatory abstention does not apply to the liquidation of personal injury claims, like the plaintiffs' claims.  28 U.S.C. § 157(b)(4); *Coker v. Pan American World Airways, Inc. (In re Pan American Corp.)*, 950 F.2d 839 (2d Cir. 1991) ; *Lindsey v. O'Brien (In re Dow Corning Corp.)*, 86 F.3d 482, 497 (6th Cir. 1996); *Podkolzin v. Amboy Bus Co., Inc.*, 402 B.R. 539 (E.D.N.Y. 2009); *Beck v. Victor Equipment Co., Inc.*, 277 B.R. 179 (S.D.N.Y. 2002) (noting that mandatory abstention does not apply to personal injury tort claims as many result in "unpredictable and substantial verdicts that are often produced in personal injury tort and wrongful death claims . . . [which] could have potentially deleterious effects on a debtor's estate").  Second, mandatory abstention does not apply unless a movant can show that the state court action is capable of "timely adjudication."  28 U.S.C. § 1334(c)(2); *Tow v. Credit Suisse First Boston Corp.*, No. IIVA3:04CV560, 2004 WL 1660576, *83-4 (D. Conn. July 20, 2004)No. CIVA3:04CV560,  (citing *In re Worldcom, Inc. Sec. Litig.*, 293 B.R. 308, 471 (S.D.N.Y. 2003) (holding that a "naked assertion [of the likelihood of timely adjudication] is inadequate to carry the point").  In its motion, the Ortiz plaintiffs have done nothing to show that the state court will timely adjudicate their claims.  (Ortiz Br. ¶ 22, Docket No. 456.)  The case is a large, complex products case; there is no set trial date; expert discovery has not occurred; and it would be inefficient to adjudicate the Ortiz plaintiffs' claims separately from other claims against the Debtor.  *Conn. Res. Recovery Auth. v. Lay*, 292 B.R. 464, 471-72 (D. Conn. 2003) (noting that federal courts consider "the ramifications of the size and complexity of the litigation, and the judicial inefficiency of litigating common issues in courts across the country"); *T.A. Title Ins. Co. v. Lampl, Sable & Makoroff (In re Marcus Hook Dev't Park, Inc.*, 153 B.R. 693, 702 (W.D. Pa. 1993) (finding no timely adjudication where trial date not set).  Third, whether this court should abstain from hearing the merits of the Ortiz action is not determinative of whether the Court should lift (as opposed to extend) the stay.  Mandatory abstention is not one of the *Sonnex* factors.  This is because, regardless of which court adjudicates the Ortiz claims, adjudication of the claims at this time will interfere with the Debtors' reorganization efforts for all the reasons set forth above.

***Seventh***, the impact of the stay on the parties and the balance of the harms weigh against lifting the stay. The movants have demonstrated no real harm from the stay. At most, the stay would temporarily delay their ability to prosecute claims against the Debtors. While the Ortiz plaintiffs claim that they need the judgment proceeds for medical care, they are free to assert their claims against the remaining thirteen solvent defendants. Additionally, even were they permitted to pursue Chemtura, the Ortiz plaintiffs would not quickly recover a monetary judgment they could use for medical care; they are not near trial and it is unclear whether they will have anything more than an unsecured claim against the estate (which would be paid only after confirmation of a chapter 11 plan).

In contrast, the Debtors will be irreparably harmed by the stay. As explained above, requiring the Debtors to defend the Diacetyl Litigation will deplete the estates' assets, impair their reorganization, and potentially open the floodgates to hundreds or thousands of indistinguishable lawsuits. Put simply, the stay should be extended to Chemtura Canada and Citrus, not lifted.

***Finally***, Citrus does not object to the extension. If this Court extends the stay to Citrus then there is no need to grant Citrus's request for relief from the stay.

## CONCLUSION

For the reasons set forth above, the Debtors respectfully request that this Court extend the stay to Chemtura Canada and Citrus, declare the stay inapplicable and/or lifted as to Chemtura's efforts to remove and transfer the Diacetyl Litigation against Chemtura, Chemtura Canada and Citrus, and deny the motions of Citrus and the Ortiz plaintiffs to lift the automatic stay.

Dated: June 17, 2009

*/s/ David J. Zott, P.C.*
Richard M. Cieri
M. Natasha Labovitz
Craig A. Bruens
Michael A. Cohen
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

David J. Zott, P.C.
Alyssa A. Qualls
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

Counsel to the Debtors and Debtors in Possession