# Exhibit I

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                          :

In re                           :    Chapter 11
                          :

Chrysler LLC, *et al.*,        :    Case No. 09-50002 (AJG)
                          :

           Debtors.     :    (Jointly Administered)
                          :
---------------------------------------------------------------x

**ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY**
**ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL**
**LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING**
**THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH**
**AND RELATED PROCEDURES AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the motions, dated May 3, 2009 and

May 22, 2009 (Docket Nos. 190 and 1742) (collectively, the "Sale Motion")[1] filed by the above-

captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order

(the "Sale Order"), pursuant to sections 105, 363 and 365 of the United States Bankruptcy Code,

11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9008 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1,

6006-1 and 9006-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for

the Southern District of New York:  (i) authorizing and approving the entry into, performance

under and terms and conditions of the Master Transaction Agreement, dated as of April 30, 2009

(collectively with all related agreements, documents or instruments and all exhibits, schedules

and addenda to any of the foregoing, and as amended, the "Purchase Agreement"), substantially

---

[1]      Unless otherwise stated, all capitalized terms not defined herein shall have the meanings given to them in the Sale Motion and the Bidding Procedures Order (as defined below).

in the form attached hereto as <u>Exhibit A</u> (without all of its voluminous exhibits), between and among Fiat S.p.A. ("<u>Fiat</u>"), New CarCo Acquisition, LLC (the "<u>Purchaser</u>"), a Delaware limited liability company formed by Fiat, and the Debtors,[2] whereby the Debtors have agreed to sell, and the Purchaser has agreed to purchase the "<u>Purchased Assets</u>" (as such term is defined in Section 2.06 of the Purchase Agreement), which Purchased Assets include, without limitation, the Assumed Agreements (as defined below), substantially all of the Debtors' tangible, intangible and operating assets related to the research, design, manufacturing, production, assembly and distribution of passenger cars, trucks and other vehicles (including prototypes) under brand names that include Chrysler, Jeep[®] or Dodge (the "<u>Business</u>"), certain of the facilities related thereto and all rights, intellectual property, trade secrets, customer lists, domain names, books and records, software and other assets used in or necessary to the operation of the Business or related thereto to the Purchaser (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the Purchase Agreement, the "<u>Sale Transaction</u>"); (ii) authorizing and approving the sale by the Debtors of the Purchased Assets, free and clear of liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), liabilities, encumbrances, rights, remedies, restrictions and interests and encumbrances of any kind or nature whatsoever whether arising before or after the Petition

---

[2]     The following Debtors are "Sellers" under the Purchase Agreement:  Alpha Holding, LP ("<u>Alpha</u>"), Chrysler, LLC; Chrysler Aviation Inc.; Chrysler Dutch Holding LLC; Chrysler Dutch Investment LLC; Chrysler Dutch Operating Group LLC; Chrysler Institute of Engineering; Chrysler International Corporation; Chrysler International Limited, L.L.C.; Chrysler International Services, S.A.; Chrysler Motors LLC; Chrysler Realty Company LLC; Chrysler Service Contracts Florida, Inc.; Chrysler Service Contracts Inc.; Chrysler Technologies Middle East Ltd.; Chrysler Transport Inc.; Chrysler Vans LLC; DCC 929, Inc.; Dealer Capital, Inc.; Global Electric Motorcars, LLC; NEV Mobile Service, LLC; NEV Service, LLC; Peapod Mobility LLC; TPF Asset, LLC; TPF Note, LLC; and Utility Assets LLC.

any of their respective assets (including the Purchased Assets), and the transfer of the Purchased

Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or

assigns or any of their respective assets (including the Purchased Assets), to any liability for any

Claims, including, without limitation, for any successor liability or any products liability for the

sale of any vehicles by the Debtors or their predecessors or affiliates, except as expressly

identified as an Assumed Liability.

### <u>Assumption and Assignment of the Assumed Agreements</u>

CC.     The assumption and assignment of the Assumed Agreements are integral

to the Purchase Agreement, are in the best interests of the Debtors and their estates and represent

the reasonable exercise of the Debtors' sound business judgment.  (<u>See</u> May 27, 2009 Hearing

Tr. (Testimony of Alfredo Altavilla); May 28, 2009 Hearing Tr. (Testimony of David Curson);

May 28, 2009 Hearing Tr. (Testimony of Peter Grady); May 27, 2009 Hearing Tr. (Testimony of

Thomas Lasorda); May 28, 2009 Hearing Tr. (Testimony of Robert Nardelli); May 28, 2009

Hearing Tr. (Testimony of James Chapman)).

DD.     With respect to each of the Assumed Agreements, the Debtors have met

all requirements of section 365(b) of the Bankruptcy Code.  Further, the Purchaser has provided

all necessary adequate assurance of future performance under the Assumed Agreements in

satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code.  (<u>See</u> May 27, 2009 Hearing

Tr. (Testimony of Alfredo Altavilla)).  Accordingly, the Assumed Agreements can be assumed

by the Debtors and assigned to the Purchaser, as provided for in the Contract Procedures set forth

in the Bidding Procedures Order, the Sale Motion and the Purchase Agreement.  The Contract

Procedures are fair, appropriate and effective and, upon the payment by the Purchaser of all Cure

Costs (which costs are the sole obligation of the Purchaser under the Purchase Agreement) and

the payment of such other obligations assumed pursuant to this Sale Order and approval of the

assumption and assignment for a particular Assumed Agreement thereunder, the Debtors shall be forever released from any and all liability under the Assumed Agreement.

EE.    The Purchaser has acknowledged that it will be required to comply with the National Traffic and Motor Vehicle Safety Act, as amended and recodified ("NTMVSA"), as applicable to the business of the Purchaser after the Closing Date.  In addition, the Purchaser has agreed to assume as Assumed Liabilities under the Purchase Agreement and this Sale Order the Debtors' notification, remedy and other obligations under 49 U.S.C. §§ 30116 through 30120 of the NTMVSA relating to vehicles manufactured by the Debtors prior to the Closing Date that have a defect related to motor vehicle safety or do not to comply with applicable motor vehicle safety standards prescribed under the NTMVSA.  The Purchaser shall not otherwise be liable for any failure by the Debtors to comply with the provisions of the NTMVSA.

FF.    For the avoidance of doubt, and notwithstanding anything else in this Sale Order to the contrary:

- the Debtors are neither assuming nor assigning to the Purchaser the settlement agreement (the "2008 Settlement Agreement") between the Debtors, the UAW and certain of the Debtors' retirees, dated March 31, 2008, which was approved by the United States District Court for the Eastern District of Michigan on July 31, 2008, in the class action of *Int'l Union, UAW, et al. v. Chrysler, LLC*, Case No. 07-CV-14310 (E.D. Mich. filed Oct. 11, 2007) and established, among other things, an independent Voluntary Employee Beneficiary Association (the "VEBA") that would become responsible for retiree health care on behalf of current and future UAW retirees of the Debtors and their surviving spouses and eligible dependents (the "*English* Case VEBA") (DX 4; May 28, 2009 Hearing Tr. (Testimony of David Curson));

- the 2007 Chrysler-UAW National Agreement, including (1) the Production, Maintenance and Parts National Agreement, (2) the Engineering Office & Clerical National Agreement, (3) the Toledo Assembly Plant/Jeep Unit, Local 12 Agreement, (4) Daimler Chrysler Financial Services North America, LLC (Farmington) and (5) Daimler Chrysler Financial Services North America, LLC (Detroit), and all appendices, memoranda of understanding, supplemental agreements, local agreements and benefit plans, as modified effective April 30, 2009 (the "UAW CBA"), shall be assumed by the Debtors and assigned to the Purchaser pursuant to this Sale Order and section 365 of the Bankruptcy

Code.  Assumption and assignment of the UAW CBA is integral to the Sale Transaction and the Purchase Agreement, is in the best interests of the Debtors and their estates, creditors, employees and retirees and represent the reasonable exercise of the Debtors' sound business judgment (See May 28, 2009 Hearing Tr. (Testimony of David Curson));

- the UAW, as the exclusive collective bargaining representative of employees of the Purchaser and the "authorized representative" of UAW-represented retirees of the Debtors under section 1114(c) of the Bankruptcy Code, and the Purchaser engaged in good faith negotiations in conjunction with the Sale Transaction regarding the funding of retiree health benefits within the meaning of section 1114(a) of the Bankruptcy Code.  Conditioned upon the consummation of the Sale Transaction and the assumption and assignment of the UAW CBA, the UAW and the Purchaser have entered into a Retiree Settlement Agreement (the "UAW Retiree Settlement Agreement"), which, among other things, provides for the financing by the Purchaser of modified retiree health care obligations for the Class and Covered Group (as defined in the UAW Retiree Settlement Agreement) through contributions by the Purchaser to the *English* Case VEBA. The Debtors, the Purchaser and the UAW specifically intend that their actions in connection with the UAW Retiree Settlement Agreement and related undertakings incorporate the compromise of certain claims and rights and shall be deemed to satisfy the requirements of 29 U.S.C. § 186(c)(2) (See DX 4; May 28, 2009 Hearing Tr. (Testimony of David Curson)); and

- the Debtors' sponsorship of the Internal Existing VEBA (as defined in the UAW Retiree Settlement Agreement) shall be transferred to the Purchaser under the Purchase Agreement (See DX 64, at § 6.08).

## VALIDITY OF THE TRANSFER

GG.    As of the closing of the Sale Transaction (the "Closing"), the transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets, free and clear of all Claims other than Assumed Liabilities.

HH.    With the entry of this Sale Order, the Debtors (1) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors; (2) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement; (3) have taken all actions necessary to

Transaction on or after 12:00 noon, Eastern Time, on Friday June 5, 2009.[4]  Any party objecting

to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay or risk its

appeal being foreclosed as moot in the event Purchaser and the Debtors elect to close prior to this

Sale Order becoming a Final Order.

58.     Any amounts payable to the Purchaser shall be paid by the Debtors in the

manner provided in the Purchase Agreement without further order of this Court, shall be an

allowed administrative claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, shall

be protected as provided in the Bidding Procedures Order and shall not be altered, amended,

discharged or affected by any plan proposed or confirmed in these cases without the prior written

consent of the Purchaser.

59.     This Court retains jurisdiction to interpret, implement and enforce the

terms and provisions of this Sale Order including to compel delivery of the Purchased Assets, to

protect the Purchaser against any Claims and to enter any orders under sections 105, 363 or 365

(or other applicable provisions) of the Bankruptcy Code to transfer the Purchased Assets and the

Assumed Agreements to the Purchaser.

Dated:  New York, New York
        June 1, 2009

                                        **s/Arthur J. Gonzalez**
                                        UNITED STATES BANKRUPTCY JUDGE

---

[4]  The Court considered the Debtor's request for a waiver of the stay imposed, pursuant to Bankruptcy Rules 6004(h) and 6006(d), objections filed to that request, and Debtors' modified request as of June 1, 2009, whereby Debtors' sought a waiver of the stay imposed to permit a closing to take place on Thursday, June 4, 2009 at 9:00 a.m.  In their modified request, the Debtors reference the deposition testimony of Matthew Feldman, an advisor to the President's Auto Task Force, indicating that the Debtors are losing $100 million a day, and the other exigent circumstances facing Chrysler, including the continuing deterioration of its asset value, its supply chain, and its going-concern value.  The Court determines that a partial waiver of the stay is justified.  Any request to further modify the stay should be made to the appellate court.