# Exhibit A



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

null / ALL
Transmittal Number: 13389388
Date Processed: 01/23/2015

| | |
|---|---|
| **Primary Contact:** | Rosemarie Williams<br>General Motors LLC<br>Mail Code 48482-038-210<br>400 Renaissance Center<br>Detroit, MI 48265 |
| **Entity:** | General Motors LLC<br>Entity ID Number  3113523 |
| **Entity Served:** | General Motors, LLC |
| **Title of Action:** | Scott, Cindy vs. General Motors Company; General Motors LLC |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Personal Injury |
| **Court/Agency:** | Hillsborough County Circuit  Court, Florida |
| **Case/Reference No:** | 14-CA-012970 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 01/23/2015 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Dellecker Wilson King McKenna Ruffier & SOS A. Limited Liability Partnership (Orlando, FL)<br>407-244-3000 |
| **Client Requested Information:** | Year: 2007<br>Make: Chevrolet<br>Model: HHR<br>VIN: |
| **Notes:** | Dellecker Wilson King McKenna Ruffier & SOS A Limited Liability Partnership 719 Vassar Street, Orlando, FL 32804-4920<br>CSC Location document was served: Corporation Service Company 1201 Hays St. Tallahassee, FL 32301 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL
CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

CINDY SCOTT, Individually, and as　　　　　　　　CASE NO: 14-CA-012970
Administrator of the Estate of Thomas Scott,　　　Division D
deceased,

　　Plaintiff,

-vs-

　　　　　　　　　　　　　　　　　　　　　　Date 01·23·15 Time 950a
GENERAL MOTORS COMPANY, a　　　　　　　　MCN. No. 111
Delaware corporation and GENERAL　　　　　is a certified process server in the
MOTORS LLC, a Delaware　　　　　　　　　　Circuit and County Courts
corporation,　　　　　　　　　　　　　　　in and for the Second Judicial Circuit

　　Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA;

To Each Sheriff of the State:

　　YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the First Amended Complaint in this action on Defendant

　　General Motors, LLC
　　c/o Corporation Service Company, Registered Agent
　　1201 Hays Street,
　　Tallahassee, Florida 32301

Each Defendant is hereby required to serve written defenses to the Complaint on:

　　Kenneth J. McKenna
　　Florida Bar Number 0021024
　　**DELLECKER WILSON KING**
　　**McKENNA RUFFIER & SOS**
　　A Limited Liability Partnership
　　719 Vassar Street
　　Orlando, Florida 32804
　　(407) 244-3000
　　KJMeservice@dwklaw.com
　　Lguzman-ulate@dwklaw.com
　　Attorney for Plaintiff

within twenty (20) days after service of this Summons on that Defendant, exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

### AMERICAN DISABILITIES ACT OF 1990
### Administrative Order No. 10-18

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Hillsborough County Courthouse, 800 E. Twiggs Street, Room 604, Tampa, Florida 33602, TELEPHONE (813) 272-7040 AT LEAST (7) SEVEN days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing impaired, call 711.**

DATED on this 16 day of January, 2015.

CLERK OF THE COURT

BY: *David Anderson*
As Deputy Clerk

(COURT SEAL)

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

CINDY SCOTT, as Personal Representative
of the Estate of THOMAS SCOTT, deceased,

CASE NO: 14-CA-012970
Division D

**Plaintiff,**

vs.

GENERAL MOTORS COMPANY, a Delaware
corporation and GENERAL MOTORS LLC,
a Delaware corporation,

**Defendants.**

_____/

## FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, Cindy Scott, brings this action as Personal Representative of the Estate of Thomas Scott ("SCOTT"), against Defendants, General Motors Company and General Motors LLC, (collectively referred to as "GM") and alleges upon information and belief:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs, brought pursuant to the Florida Wrongful Death Act, Florida Statutes § 768.16 - .26.

2. Cindy Scott is a citizen of Florida and resides in Hillsborough County, Florida. She is the lawfully appointed Personal Representative of the Estate of Thomas Scott.

3. General Motors, LLC is a Delaware limited liability company doing business in all fifty states with its principal place of business in Detroit, Michigan. At all times material hereto, pursuant to Florida Statute § 48.193, General Motors LLC is subject to personal jurisdiction in Florida because it operates, conducts, engages in, or carries on a business or

First Amended Complaint for Damages and
Demand for Jury Trial
CASE NO: 14-CA-012970
Page 2
_____/

business venture within this State, and/or committed a tortious act within this State, and/or caused injury to a person within this State arising out of an act or omission outside this State at a time when products, materials or things processed, serviced or manufactured by General Motors LLC were used within this State.

4.  General Motors LLC is the successor corporation of the entity formerly known as General Motors Company which at all times material hereto was a foreign corporation doing business in all fifty states with its principal place of business in Detroit, Michigan. At all times material hereto, pursuant to Florida Statute s 48.193, General Motors Company is subject to personal jurisdiction in Florida because it operates, conduct, engages in, or carries on a business or business venture within this State, and/or committed a tortuous act within this State, and/or caused injury to a person within this State arising out of an act or omission outside this State at a time when products, materials, or things processed, serviced or manufactured by General Motors Company were used within this State.

5.  For the purposes of this claim and for the reasons alleged herein, General Motors LLC is responsible for and has an ongoing obligation for the wrongdoing alleged in this complaint.

## GENERAL ALLEGATIONS

A.  **Summary of Claims**

6.  This is an action for wrongful death, strict product liability and fraudulent concealment. Cindy Scott brings the action individually and as Administrator of the Estate of Thomas Scott, who was severely injured in the single vehicle crash of a 2007 Chevrolet HHR ("Chevrolet HHR") on May 5, 2009, and who died shortly thereafter.

**First Amended Complaint for Damages and
Demand for Jury Trial
CASE NO: 14-CA-012970
Page 3**

_____/

7. GM is one of the largest car and truck manufacturers in the United States. It designed and manufactured the 2007 Chevrolet HHR that is at issue in this case, along with over a million other similar cars. All of these cars contained the same safety-related defects, including, a faulty ignition switch.

8. More than eight years before SCOTT's injury and death, GM knew about the safety-related defects in the Chevrolet HHR, and did nothing to recall or fully remedy the defects or warn users about them. Rather, GM intentionally, purposely, fraudulently, and systematically concealed the defects from SCOTT, the National Highway Traffic Safety Administration ("NHTSA"), and the driving public.

9. GM's misconduct, fraudulent concealment, and systematic concealment of the safety-related defects toll the statute of limitations that might otherwise be applicable to this action.

**B.    The Wreck and SCOTTS's Injury and Death**

10. On May 5, 2009, SCOTT was driving the 2007 Chevrolet HHR southbound on Florida Highway 75. SCOTT changed lanes from the outside lane to the inside lane and his vehicle uncontrollably veered to the left and entered the grass median traveling in a southeasterly direction and continued southeast across Florida Highway 75 north. The front of the vehicle then struck a tree causing the vehicle to rotate in a counterclockwise direction. SCOTT was wearing his lap/shoulder belt.

11. The known safety-related ignition defects in the 2007 Chevrolet HHR caused the vehicle's power steering to shut off, and greatly reduced Scott's braking power and function. As a result, SCOTT lost control of the Chevrolet HHR.

**First Amended Complaint for Damages and**
**Demand for Jury Trial**
**CASE NO: 14-CA-012970**
**Page 4**

_____/

12.  Only 51 years old at the time, SCOTT was flown to Bayfront Medical center for treatment of life-threatening injuries and died the afternoon of the crash.

### C.  GM's Knowledge of Safety-Related Defects in the Chevrolet HHR and Its Concealment of Them

13.  In 2001, during developmental testing of its 2003 Saturn Ion, GM learned that the engines in those cars were stalling due to defects in the Key System. GM chose not to fix these defects:

14.  In 2002, GM began manufacturing and selling 2003 Saturn Ions with the defective Key System. It later began selling Chevrolet Cobalts with the same defective Key System.

15.  In 2004, GM engineers reported that the ignition switch on the Saturn Ion was so weak and so low on the steering column that the driver's knee could easily bump the key and turn off the car.

16.  This defect was sufficiently serious for a GM engineer, in January 2004, as part of GM's vehicle evaluation program, to affirmatively conclude, in writing, that "[t]his is a basic design flaw and should be corrected if we want repeat sales."

17.  In 2004, GM began manufacturing and selling its 2005 Chevrolet Cobalt. The Cobalt was a sister vehicle (essentially the same car with a different badge or name) of the Saturn Ion. GM installed the same Key System on the 2005 Cobalt as it did on the Saturn Ion.

18.  On October 29, 2004, around the time of GM's market launch of the 2005 Cobalt, Gary Altman ("Altman")- GM's program-engineering manager for the Cobalt- test drove the

**First Amended Complaint for Damages and**
**Demand for Jury Trial**
**CASE NO: 14-CA-012970**
**Page 5**
_____/

Cobalt with the standard key and key fob. During the test drive, when Altman's knee bumped the key, the engine turned off, causing the engine to stall. Altman reported this incident to GM.

19. In response to Altman's report, GM launched an engineering inquiry to investigate the potential for the key to move from the "run" to the "accessory/off" position during ordinary driving conditions. This inquiry is known within GM as a Problem Resolution Tracking System Inquiry ("PRTS"). The specific complaint which resulted in the PRTS was that the "the vehicle can be keyed off with knee while driving."

20. As part of the PRTS, GM engineers also began looking into ways to solve the problem of the key moving from the "run" to the "accessory/off" position during ordinary driving.

21. On February 18, 2005, GM engineers presented several possible solutions to the Cockpit Program Integration Team ("CPIT"). GM engineers determined the only "sure solution" to fixing the problem of the key inadvertently moving from the "run" to the "accessory/off" position required changing from a low mount to a high mount lock module, which would considerably reduce the possibility of the key/key fob being impacted by a driver.

22. According to GM engineers, this change in the key position on the lock module, combined with increasing the detent in the ignition switch, would be a "sure solution." GM, however, through Altman, rejected this "sure solution," in part, because the cost to implement the solution would be too high.

23. During this PRTS, GM also considered changing the key from a slot to a hole as a way to attempt to contain this problem, but not as a solution to the problem.

**First Amended Complaint for Damages and**
**Demand for Jury Trial**
**CASE NO: 14-CA-012970**
**Page 6**
_____/

24. Changing the key from a slot to a hole would reduce the lever arm of the key and the key chain. With the slot design, the key chain would hang lower on the key which would increase the torque force on the ignition switch when the chain was contacted or moved in any way. GM engineers determined this key change would significantly reduce the chance of the key inadvertently moving from the "run" to the "accessory/off" position during ordinary driving maneuvers.

25. A GM engineer conducted a cost analysis of this key change and determined that the cost to make this change would be less than one dollar per vehicle or around 0.57 cents per part.

26. GM, however, rejected this proposed key change and, on March 9, 2005, GM closed the PRTS without taking any steps to fix the defective Key System in Ions and Cobalts. The PRTS detailed the reasons why GM took no action.

> We are closing this PRTS with no action. The main reasons are the following: All possible solutions were presented to CPIT and V APIR: a. The lead-time for all the solutions is too long. b. The tooling cost and piece price are too high. c. None of the solutions seem to fully countermeasure the possibility of the key being turned (ignition turn off) during driving. Thus none of the solutions represents an acceptable business case.

27. On February 28, 2005, GM issued a bulletin to its dealers regarding engine-stalling incidents in 2005 Cobalts and 2005 Pontiac Pursuits (the Canadian version of the Pontiac G5).

28. The February 28, 2005, bulletin addressed the potential for drivers of these vehicles to inadvertently turn off the ignition due to low key ignition cylinder torque/effort.

**First Amended Complaint for Damages and
Demand for Jury Trial
CASE NO: 14-CA-012970
Page 7**

29. GM failed to disclose and, in fact, concealed, the February 28, 2005 bulletin- and/or the information contained therein, from vehicle owners, and sent affirmative representations to dealers that did not accurately describe the nature of the problem, the multiple design steps needed for a "sure solution" to the problem, and GM's knowledge of it.

30. Rather than disclosing this serious safety problem that uniformly affected its vehicles, GM, instead, concealed and obscured the problems, electing to wait until customers brought their cars to a dealership after an engine-stalling incident, and offered even its own dealers only an incomplete, incorrect, and insufficient description of the defects and the manner in which to actually remedy them.

31. Pursuant to 49 C.P.R. § 573.6, which requires an automobile manufacturer to "furnish a report to the NHTSA for each defect ... related to motor vehicle safety," GM had a duty, no later than February 2005, to disclose the safety-related defects in its vehicles.

32. Instead of complying with its legal obligations, however, GM fraudulently concealed the Key System defect from the public and continued to manufacture its vehicles with these known safety defects.

33. On July 29, 2005, Amber Marie Rose, a sixteen year old Clinton, Maryland resident, was driving a 2005 Cobalt when she drove off the road and struck a tree head-on. Amber died as a result of the injuries she sustained in the crash.

34. GM received notice of Amber's incident in September 2005 and opened an internal investigation file pertaining to this incident shortly thereafter.

**First Amended Complaint for Damages and
Demand for Jury Trial
CASE NO: 14-CA-012970
Page 8**

_____/

35. In December 2005, shortly after it commenced its internal investigation into the incident leading to Amber's death, GM issued a Technical Service Bulletin (05-02-35-007) (the "TSB").

36. The TSB, which GM affirmatively represented applied to 2005-2006 Chevrolet Cobalts, 2006 Chevrolet HHRs, 2005-2006 Pontiac Pursuit, 2006 Pontiac Solstices, and 2003-2006 Saturn Ions, provided, "Information on inadvertent Turning of Key Cylinder, Loss of Electrical System and no DTCs."

37. In October 2006, GM updated the TSB (05-02-35-007) to include additional model year including Plaintiff's vehicle, the 2007 Chevrolet HHR. These vehicles had the same safety-related defects in the Key System as the vehicles in the original TSB.

38. Throughout this entire time period, GM was selling the Defective Vehicles to consumers for full price, and consumers were purchasing them believing that the vehicles were non-defective, but all the while GM concealing the extent and nature of the defects in the Defective Vehicles.

39. In May 2012, GM engineers tested the torque on the ignition switches for 2005-2009 Cobalt, 2007, 2009 Pontiac G5, 2006-2009 HHR, and 2003-2007 Ion vehicles in a junkyard. The results of these tests showed that the torque required to turn the ignition switches in most of these vehicles from the "run" to the "accessory/off" position did not meet GM's minimum torque specification requirements. These results were reported to the members of the Field Performance Evaluation ("FPE").

40. Indeed, the GM engineers identified several additional ways to actually fix the problem. These ideas included adding a shroud to prevent a driver's knee from contacting the

**First Amended Complaint for Damages and
Demand for Jury Trial
CASE NO: 14-CA-012970
Page 9**

_____/

key, modifying the key and lock cylinder to orient the key in an upward facing orientation when in the run position, and adding a push button to the lock cylinder to prevent it from slipping out of run. GM rejected each of these ideas.

## COUNT I- STRICT PRODUCT LIABILITY

41.  All preceding statements and allegations of Plaintiff's Complaint are incorporated herein and realleged as if expressly set forth herein.

42.  GM designed, selected, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold the Chevrolet HHR, and its components.

43.  GM designed, selected, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold the ignition switch which was selected and installed in the Chevrolet HHR.

44.  The 2007 Chevrolet HHR was destroyed in the accident more than two years before the initiation of this action, but any statutes of limitation are tolled because of GM's fraud and fraudulent concealment, and conduct equivalent to that required to impose punitive damages against GM. In the alternative, GM is estopped from raising the defenses of statute of limitations and/or bankruptcy discharge by virtue of its conduct and knowing concealment.

45.  GM had a legal duty to design, inspect, test, manufacture and assemble the Chevrolet HHR so that it would be reasonably safe, reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

**First Amended Complaint for Damages and
Demand for Jury Trial
CASE NO: 14-CA-012970
Page 10**

_____/

46. Among other things, the 2005 Chevrolet HHR is not crashworthy, is defective, and is unreasonably dangerous and unsafe for foreseeable users and occupants in each of the following particulars:

(a) having a Key System that is inadequately designed and constructed, and located, which may result in the key moving from the run to accessory/off position during normal driving maneuvers;

(b) having a faulty ignition switch that allows the Chevrolet HHR to stall or lose engine power, and steering and/or full braking ability while driving;

(c) failing to adequately warn SCOTT, other consumers, or the public in general, about the unsafe and defective condition and design of the vehicle known to GM, so that individuals like SCOTT could make informed and prudent decisions regarding traveling or riding in such vehicles.

47. At all times material hereto, the Chevrolet HHR and its component parts were defective in design, manufacture and warning, causing the Chevrolet HHR and its component parts to be in a dangerous and defective condition that made them unsafe for their intended use.

48. The defective and dangerous condition of the Chevrolet HHR was a direct and proximate and legal cause of the incident which occurred on May 5, 2009, which resulted in the death of Thomas Scott.

49. As a further and direct proximate result of the defective and dangerous condition of the Chevrolet HHR, the Estate of Scott has incurred funeral and burial expenses and suffered the loss of future earnings and net accumulations, including future pensions and retirement benefits. Cindy Scott, the surviving spouse of Thomas Scott, has suffered damages including loss

**First Amended Complaint for Damages and
Demand for Jury Trial
CASE NO: 14-CA-012970
Page 11**

_____/

of support and services, companionship, comfort, attention, as well as mental anguish, pain and suffering.

50.  The conduct of Defendant, GM rises to a level sufficient to warrant imposition of punitive damages, which will be pled by Plaintiff at a later date following the statutorily required proffer.

WHEREFORE, Cindy Scott, as Personal Representative of the Estate of Thomas Scott demands judgment in excess of $15,000.00 against Defendants, General Motors Company and General Motors LLC for damages, costs, and interest allowable by law, and trial by jury.

## COUNT II-NEGLIGENCE- WRONGFUL DEATH

51.  All preceding statements and allegations of Plaintiff's Complaint are incorporated herein and realleged as if expressly set forth herein.

52.  At all times material hereto, GM owed a duty to Scott to design, inspect, test, manufacture and assemble the Chevrolet HHR so that it would be reasonably crashworthy and provide a reasonable degree of occupant safety for its expected use.

53.  GM breached its duty to the Plaintiff and was negligent in designing, inspecting, testing, manufacturing, assembling, marketing, selling and providing warnings for the Chevrolet HHR, as set out in the paragraphs above.

54.  The acts or omissions of GM, as aforesaid were a direct and proximate and legal cause of the incident which occurred on May 5, 2009, which resulted in the death of Thomas Scott.

55.  As a further and direct proximate result of the negligence of Defendant, the Estate of Scott has incurred funeral and burial expenses and suffered the loss of future earnings and net

**First Amended Complaint for Damages and**
**Demand for Jury Trial**
CASE NO: 14-CA-012970
Page 12

_____/

accumulations, including future pensions and retirement benefits. Cindy Scott, the surviving spouse of Thomas Scott, has suffered damages including loss of support and services, companionship, comfort, attention, as well as mental anguish, pain and suffering.

56. The conduct of Defendant, GM, rises to a level sufficient to warrant imposition of punitive damages, which will be pled by Plaintiff at a later date following the statutorily required proffer.

WHEREFORE, Cindy Scott, as Personal Representative of the Estate of Thomas Scott demands judgment in excess of $15,000.00 against Defendants, General Motors Company and General Motors LLC for damages, costs, and interest allowable by law, and trial by jury.

## COUNT III: BREACH OF IMPLIED WARRANTY

57. All preceding statements and allegations of Plaintiff's Complaint are incorporated herein and realleged as if expressly set forth herein.

58. GM breached its implied warranty of merchantability by selling the Chevrolet HHR when it was not fit for the ordinary purpose for which such goods are sold.

59. This breach of warranty was a direct and proximate and legal cause of the incident which occurred on May 5, 2009, which resulted in the death of Thomas Scott.

60. As a further and direct proximate result of Defendant's Breach of Warranty, the Estate of Scott has incurred funeral and burial expenses and suffered the loss of future earnings and net accumulations, including future pensions and retirement benefits. Cindy Scott, the surviving spouse of Thomas Scott, has suffered damages including loss of support and services, companionship, comfort, attention, as well as mental anguish, pain and suffering.

First Amended Complaint for Damages and
Demand for Jury Trial
CASE NO: 14-CA-012970
Page 13
_____/

WHEREFORE, Cindy Scott, as Personal Representative of the Estate of Thomas Scott demands judgment in excess of $15,000.00 against Defendants, General Motors Company and General Motors LLC for damages, costs, and interest allowable by law, and trial by jury.

### COUNT IV: FRAUD AND FRAUDULENT CONCEALMENT

61.	All preceding statements and allegations of Plaintiff's Complaint are incorporated herein and realleged as if expressly set forth herein.

62.	GM intentionally concealed material facts from SCOTT, the public, and NHTSA. GM knew that the Chevrolet HHR and other GM vehicles were designed and manufactured with Key System defects, but GM concealed those material facts. Although the defective GM vehicles contain safety-related defects that GM knew of, or should have known of, at the time of distribution, GM recklessly manufactured and distributed those vehicles to consumers in the United States. Those consumers had no knowledge of the safety related defects.

63.	GM had a duty to disclose the facts to SCOTT, the public who owned defective GM cars, and NHTSA, but failed to do so.

64.	GM knew that SCOTT had no knowledge of those facts and that neither Scott nor the public had an equal opportunity to discover the facts. GM was in a position of superiority over SCOTT. Indeed, SCOTT trusted GM not to sell a car that was defective or that violated federal law governing motor vehicle safety. SCOTT further trusted GM to warn of defects and to recall defective vehicles timely and before they caused injury.

65.	By failing to disclose these material facts, GM intended to induce Scott and the public to purchase the Chevrolet HHR and/or to continue to use and drive it. GM further

**First Amended Complaint for Damages and**
**Demand for Jury Trial**
**CASE NO: 14-CA-012970**
**Page 14**
_____/

intended to induce NHTSA not to recall SCOTT's vehicle, as well as the other defective GM vehicles in order to reduce its eventual financial exposure.

66. SCOTT reasonably relied on GM's nondisclosure, and reasonably but unknowingly continued to use the 2007 Chevrolet HHR until the date of the wreck.

67. SCOTT would not have continued to drive the Chevrolet HHR if he learned of these defects.

68.    As a direct and proximate result of GM's wrongful conduct and fraudulent concealment, the Chevrolet HHR was involved in the May 5, 2009 crash, which resulted in the death of Thomas Scott.

69.    As a further and direct proximate result of GM's wrongful conduct and fraudulent concealment, the Estate of Scott has incurred funeral and burial expenses and suffered the loss of future earnings and net accumulations, including future pensions and retirement benefits. Cindy Scott, the surviving spouse of Thomas Scott, has suffered damages including loss of support and services, companionship, comfort, attention, as well as mental anguish, pain and suffering.

70.    The conduct of Defendant, GM, rises to a level sufficient to warrant imposition of punitive damages, which will be pled by Plaintiff at a later date following the statutorily required proffer.

WHEREFORE, Cindy Scott, as Personal Representative of the Estate of Thomas Scott demands judgment in excess of $15,000.00 against Defendants, General Motors Company and General Motors LLC for damages, costs, and interest allowable by law, and trial by jury.

Dated at Orlando, Florida this 15th day of January, 2015.

**First Amended Complaint for Damages and
Demand for Jury Trial
CASE NO: 14-CA-012970
Page 15**

_____/

                                      **DELLECKER WILSON KING MCKENNA
RUFFIER & SOS
A Limited Liability Partnership**

                   BY: _/s/ Kenneth J. McKenna_
                          Kenneth J. McKenna
                          Florida Bar No. 0021024
                          719 Vassar Street
                          Orlando, FL 32804-4920
                          (407) 244-3000
                          KJMeservice@dwklaw.com
                          Kmckenna@dwklaw.com
                          Attorney for Plaintiff