**JOSH DAVIS LAW FIRM**
1010 Lamar, Suite 200
Houston, Texas 77002
Telephone: (713) 337-4100
Facsimile: (713) 337-4101
Joshua P. Davis

*Attorneys for Doris Phillips*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
In re                                    :        **Chapter 11**
                                         :
**MOTORS LIQUIDATION COMPANY,** *et al.,*  :        **Case No.: 09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*  :
                                         :        **(Jointly Administered)**
                **Debtors.**              :
                                         :
-------------------------------------------------------------x

**PLAINTIFFS' FIRST AMENDED RULE 60(b)(6) MOTION FOR RELIEF FROM**
**AUGUST 9, 2010 STIPULATION AND SETTLEMENT RESOLVING CLAIM**
**NO. [44614], OR ALTERNATIVELY, RULE 60(d) MOTION TO SET ASIDE**

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................ 1

II. FACTUAL BACKGROUND ..................................................... 4

    A.  Recalls specific to Phillips' Subject Vehicle ..................................... 4

    B.  The 2007 Litigation ..................................................... 5

    C.  Phillips' discovery requests in the 2007 Litigation are ignored by GM ........... 7

    D.  Recalls of 2014 as applied to Phillips' claim from the 2007 Litigation .......... 11

    E.  GM's Failure to adhere to the Texas and Federal Rules of Civil Procedure .... 13

III. SUMMARY OF THE ARGUMENT ........................................... 18

IV. STANDARD OF REVIEW ..................................................... 21

    A. Rule 60(b)(6) ........................................................... 21

V. ARGUMENT ................................................................. 25

    A.  The Court has the authority to grant Plaintiffs' Rule 60(b)(6) Motion given these extraordinary circumstances ........................................... 25

    B.  In the alternative, Phillips seek avoidance of the Settlement Agreement in accordance with Rule 60(b)(3)'s fraud provision ............................... 28

    C.  In the alternative, Phillips seek avoidance of the Settlement Agreement in accordance with Rule 60(d) ............................................... 30

VI. CONCLUSION ............................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Alpern v. UtiliCorp United, Inc.*,
84 F.3d 1525 (8th Cir.1996)........................................................................ 27

*Alvarado v. Farah Mfg. Co., Inc.*,
830 SW2d 911 (Tex. 1992), *reh'g denied* .................................................. 8, 9

*Armstrong v. Ablon*,
686 SW2d 194 (Tex. App. 1984) ................................................................ 15

*Atchison, Topeka & Santa Fe Ry. Co. v. Barrett*,
246 F.2d 846 (9th Cir. 1957)...................................................................... 29

*Branca v. Security Ben. Life Ins. Co.*,
789 F.2d 1511 (11th Cir. 1986).................................................................. 26

*Cavallo v. Agwilines, Inc.*,
2 F.R.D. 526 (S.D.N.Y. 1942) .................................................................... 24

*Centennial Ins. Co. v. Commercial Union Ins. Companies*,
803 SW2d 479 (Tex. App.—Houston [14th Dist.] 1991, no writ.) ................. 15

*Chilson v. Metro. Transit Auth.*,
796 F.2d 69 (5th Cir.1986)......................................................................... 27

*City of Shattuck, Oklahoma ex rel. Versluis v. Oliver*,
157 F.2d 150 (10th Cir. 1946), *superseded by rule*, All Writs Act, 28 U.S.C. 1651(a), *as recognized in Rawlins v. Kansas*, 714 F.3d 1189 (10th Cir. 2013) ................................. 24

*Dunlop v. Pan Am. World Airways, Inc.*,
672 F2d 1044 (2nd Cir. 1982)........................................................... 25, 27, 28

*Estate of Kraus v. Comm'r*,
875 F.2d 597 (7th Cir.1989) ...................................................................... 27

*Fraser v. Doing*,
130 F.2d 617 (D.C. Cir. 1942) ................................................................... 24

*Fustok v. Conticommodity Serv. Inc.*,
122 F.R.D. 151 (S.D.N.Y. 1988), *aff'd,* 873 F.2d 38 (2nd Cir. 1989).............. 22

*Gondeck v. Pan American World Airways, Inc.*,
382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21 (1965) (*per curiam*)........................................ 21

*Grace v Bank Leumi Trust Co. of NY*,
443 F3d 180 (2nd Cir. 2006), *cert. denied*, 549 U.S. 1114 (2007) ................................. 22

*Hand v. United States*,
441 F.2d 529 (5th Cir. 1971)........................................................................................ 29

*Hickman v. Taylor*,
329 U.S. 495, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947) ...................................................... 29

*Hopper v. Euclid Manor Nursing Home, Inc.*,
867 F.2d 291 (6th Cir. 1989)........................................................................................ 21

*In re Global Energies, LLC*,
763 F3d 1341 (11th Cir. 2014)................................................................................. 26, 27

*In re Indu Craft Inc.*,
11 CIV. 5996 JMF, 2012 WL 3070387 (S.D.N.Y. July 27, 2012),
*aff'd*, 580 Fed Appx 33 (2nd Cir. 2014) ..................................................................... 22

*In re Lawrence*,
293 F3d 615 (2nd Cir. 2002)..................................................................................... 23, 28

*In re Midlands Util., Inc.*,
251 BR 296 (Bankr. D.S.C. 2000) ............................................................................... 26

*In re Terrorist Attacks on September 11, 2001*,
741 F.3d 353 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 2875 (2014).................................. 21

*Jones v. Watts*,
142 F.2d 575 (5th Cir. 1944), *cert. denied*, 323 U.S. 787 (1944).................................... 24

*Keasler v. Natural Gas Pipeline Co. of Am.*,
569 F. Supp. 1180, 1186 (E.D. Tex. 1983) ................................................................... 29

*Keasler v. Natural Gas Pipeline Co.*,
741 F.2d 1380 (5th Cir. 1984)........................................................................................ 29

*Klapprott v. United States*,
335 U.S. 601, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949),
*reh'g denied*, 336 U.S. 949 (1949).............................................................................. 25

*Laughlin v. Berens,*
118 F.2d 193 (D.D.C. 1940) .......................................................................... 24

*Matter of Emergency Beacon Corp.,*
666 F2d 754 (2nd Cir. 1981)......................................................................... 21

*McGinn v. United States,*
2 F.R.D. 562 (D.C.Mass. 1942) ..................................................................... 24

*Menashe v. Sutton,*
90 F.Supp. 531 (S.D.N.Y. 1950)..................................................................... 22

*Nat'l Hockey League v. Metro. Hockey Club, Inc.,*
427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) ..................................... 15

*Nemaizer v. Baker,*
793 F.2d 58 (2nd Cir.1986)........................................................................... 21

*Ocean Ins. Co. v. Fields,*
18 F. Cas. 532 (C.C.D. Mass. 1841) ........................................................ 26, 27

*Olle v. Henry & Wright Corp.,*
910 F.2d 357 (6th Cir. 1990), *reh' denied* ..................................................... 21

*Pathare v. Klein,*
2012 WL 1353217 (S.D.N.Y. Apr. 17, 2012)................................................. 22

*Pearl Assurance Co. v. Williams,*
167 S.W.2d 808 (Tex. App.—Corpus Christi 1942) ....................................... 15

*PRC Harris. Inc. v. Boeing Co.,*
700 F.2d 894 (2nd Cir. 1983), *cert. denied,* 464 U.S. 936 (1983) .................... 22

*Preveden v. Hahn,*
36 F.Supp. 952 (S.D.N.Y. 1941)..................................................................... 24

*Reed v. South Atlantic Steamship Co. of Delaware,*
2 F.R.D. 475 (D.Del. 1942)........................................................................... 24

*Rozier v. Ford Motor Co.,*
573 F.2d 1332 (5th Cir. 1978), *reh'g denied,* 578 F.2d 871 (1978) ........... 29, 30

*Rufo v Inmates of Suffolk County Jail,*
502 US 367, 112 S Ct 748, 757, 116 L Ed 2d 867 (1992) ............................................... 24

*Serzysko v. Chase Manhattan Bank,*
461 F.2d 699 (2nd Cir.1972) (*per curiam*), *cert. denied*, 409 U.S. 883 (1972) ......... 22, 23

*Socialist Republic of Romania v. Wildenstein & Co. Inc.,*
147 F.R.D. 62 (S.D.N.Y. 1993) ...................................................................................... 22

*Stichting Mayflower Mtn. Fonds v City of Park City, Utah,*
441 Fed Appx 568 (10th Cir. 2011) .......................................................................... 15, 16

*TransAmerican Natural Gas Corp. v. Powell,*
811 S.W.2d 913 (Tex. 1991) ........................................................................................... 9

*United Airlines, Inc. v. Brien,*
588 F.3d 158 (2nd Cir. 2009) ................................................................................... 18, 22

*United States v. Beggerly,*
524 U.S. 38 (1998) ......................................................................................................... 30

*United States v. Cirami,*
563 F.2d 26 (2nd Cir. 1977) ......................................................................................... 25

*United States v. Proctor & Gamble Co.,*
356 U.S. 677, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) ............................................. 29

*Wallace v. United States,*
142 F.2d 240 (2nd Cir. 1944), *cert. denied*, 323 U.S. 712 (1944) ................................. 24

*Whiting v. Bank of the United States,*
38 U.S. 6, 10 L.Ed. 33 (1839) ....................................................................................... 25

*Yeschick v. Mineta,*
675 F.3d 622 (6th Cir. 2012) ......................................................................................... 23

## STATUTES & RULES

TEX. R. CIV. P. 1. .............................................................................................................. 8

TEX. R. CIV. P. 193.5-6 ..................................................................................................... 8

FED. RULES CIV. PRO. RULE 60(b)(6) ........................................................................ *passim*

FED. RULES CIV. PRO. RULE 60(b)(1)......................................................................... 22, 23

FED. RULES CIV. PRO. RULE 60(b)(2)......................................................................... 23, 26

FED. RULES CIV. PRO. RULE 60(b)(3)................................................................. 23, 28, 29

FED. RULES CIV. PRO. RULE 60(d)........................................................ 1, 4, 20, 25, 30, 31

FED. RULES CIV. PRO. RULE 60(e).................................................................................. 23


FED. RULES CIV. PRO. RULE 37(c)(1)(C)......................................................................... 16

TO THE HONORABLE COURT:

COME NOW Doris Powledge Phillips, f/k/a Doris Powledge, Plaintiff, Individually and as Representative of the Estate of Adam Powledge, deceased, the Estate of Rachel Powledge, deceased, the Estate of Isaac Powledge, deceased, the Estate of Christian Powledge, deceased, and the Estate of Jacob Powledge, deceased (collectively, "**Phillips**"), complaining of General Motors Corporation n/k/a Motors Liquidation GUC Trust ("**Old GM**"), Respondent-Defendant, and Defendant General Motors, LLC ("**New GM**") (collectively, "**GM**"), filing Plaintiffs' First Amended Rule 60(b)(6) Motion for Relief from the August 9, 2010 Stipulation and Settlement Resolving Claim No. [44614], or alternatively, Rule 60(d) Motion to Set Aside, and respectfully show the following:

## I. INTRODUCTION

1.    On October 18, 2005 Adam Powledge was driving his four children, Isaac, Rachel, Christian, and Jacob to school in the family's 2004 Chevrolet Malibu Classic, VIN 1G1ND52F34M598780 ("**Subject Vehicle**"). As Adam approached the 4600 Block of I-45 North in Houston, Texas, near the intersection of Holland Road, he lost control of the Subject Vehicle and drove onto a grassy median.[1] Witnesses described the Subject Vehicle traveling at a high rate of speed, even as other vehicles began slowing for approaching traffic. Unable to control the vehicle, the Subject Vehicle drove in an almost perfectly straight line until it was cut into two parts, down the middle, by a metal pole

---

[1] Exhibit 1, *Texas City Police Department Accident Report dated 10-18-2005.*

located at the center of the median.[2] The car caught fire.

2.      Adam, Rachel, Isaac, Christian and Jacob died at the scene. The wreckage was so severe that valuable evidence was lost, including the crash data retrieval ("CDR") system information.

3.      On September 6, 2007 Phillips filed suit against Old GM asserting that the crash was the result of an electrical malfunction ("**2007 Litigation**").[3] During the course of the 2007 Litigation the parties engaged in substantial discovery. Old GM blamed Adam for the crash—Old GM's primary legal defense was that Adam committed murder-suicide and acted purposefully. Phillips' case was substantially hindered by a lack of physical evidence, no crash data retrieval system information, and the limited documents produced by GM were insufficient to substantiate Phillips' theory of an electrical defect. On June 1, 2009 Old GM entered bankruptcy.

4.      On July 10, 2009, General Motors, LLC acquired substantially all of the assets and assumed certain liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the BANKRUPTCY CODE. New GM acquired substantially all of Old GM's employees, officers and management personnel, including those persons directly controlling Phillips' 2007 Litigation, as the litigation was ongoing. New GM also acquired Old GM's designs, tools, inventory, books, records, and its key contracts, among other essential assets.

5.      Phillips' new causes of action as outlined in their Second Amended

---

[2] *Id.* at 3.
[3] Exhibit 2, *Plaintiffs' Fourth Amended Petition, Powledge, et al v. General Motors Corp.,* Cause No. 07-CV-1040 (July 3, 2008).

Complaint, Dkt. No. [12807-4], are brought against New GM. These new claims are the subject of New GM's Motion to Enforce the July 5, 2009 Sale Order and Injunction Against Phillips in Pre-Closing Accident Lawsuits, Dkt. No. [12807].

6.      Phillips' Rule 60(b)(6) Motion concerns the August 9, 2010 Stipulation and Settlement Resolving Claim No. [44614] ("**Settlement Agreement**") with Old GM. Phillips require Rule 60(b)(6) relief. Phillips, to their knowledge, are the only pre-sale ignition switch plaintiffs that were actively litigating with Old GM prior to its June 1, 2009 bankruptcy. Due to the Settlement Agreement, Phillips require Rule 60(b)(6) extraordinary relief seeking to undo the Settlement Agreement.

7.      Regarding the 2007 Litigation, Phillips were previously ordered by the Court to mediate, and subsequently agreed to the Settlement Agreement based on a fundamental belief—that GM was litigating in good faith and adhering to due process by producing relevant, discoverable evidence. That belief was misplaced. Rather than conducting discovery in a forthright manner, GM was failing to produce responsive documents in accordance with the rules of civil procedure.

8.      Plaintiffs' Rule 60(b)(6) Motion and their need for this extraordinary relief is a direct result of GM's failure to adhere to the Rules. Whether intended or inadvertent, GM's failures to produce material, relevant documents and information severely prejudiced Phillips' ability to value their claim in bankruptcy. The extreme nature of GM's failures constitutes sufficient extraordinary circumstances to justify Plaintiffs' Rule 60(b)(6) Motion. Phillips moves the Court to relieve them of their obligations under the Settlement Agreement and allow Phillips' claim to proceed as pre-sale accident claims.

The extraordinary circumstances presented by GM's failure to adhere to the Rules compel the Court to exercise the necessary authority provided by Rule 60(b)(6) and GRANT Phillips' Motion.

9.      Alternatively, Phillips move for relief under Rule 60(d).

## II. FACTUAL BACKGROUND

### A. Recalls specific to Phillips' Subject Vehicle.

10.      On March 31, 2014 New GM notified the National Highway Traffic Safety Administration ("**NHTSA**") of a safety recall that New GM initiated due to a defect in certain power steering systems. Phillips' Subject Vehicle was included in the list of vehicles that were recalled. Then, on May 15, 2014 New GM recalled the Subject Vehicle concerning a "problem with the wiring harness associated with the brake lamp."[4] This can cause "the vehicles' brake lights to illuminate when the brakes aren't being engaged, or, on the other hand, prevent the lights from illuminating when the driver hits the brakes."[5] Importantly for Phillips' claim, the problem can also "disable important systems like electronic stability control, traction control, panic braking assist, and cruise control."[6] And on June 30, 2014 New GM made another recall concerning the Subject Vehicle regarding the ignition switch.

11.      Contrary to GM's allegations in the 2007 Litigation that Adam Powledge committed murder-suicide, Adam did nothing wrong—he was the innocent victim of

---

[4] Yahoo!News, "*Huge GM Recall: Chevrolet Corvette, Malibu, Silverado, Tahoe, Cadillac CTS, GMC Sierra, More,*" May 15, 2014, https://autos.yahoo.com/news/huge-gm-recall-chevrolet-corvette-141857653.html?soc_src=mediacontentsharebuttons (last visited 5-30-14).
[5] *Id.*
[6] *Id.*

GM's negligence and gross negligence. While making these accusations as part of GM's affirmative defense, GM failed to produce substantial evidence that demonstrates the Subject Vehicle was defective and that Adam Powledge did not murder his children.

### B. The 2007 Litigation.

12.    On September 6, 2007 Dori Powledge filed suit, *Powledge, et al. v. General Motors Corp.*, Cause No. 07-CV-1040, alleging that an electrical defect caused a loss of control of the Subject Vehicle.[7] During the 2007 Litigation GM dismissed Phillips' claims because "[her] theories require failures of both the cruise control and brake systems, as well as the inability to steer."[8] According to GM such a significant defect was implausible given that "[Phillips] cannot demonstrate any defect and any alleged 'recall'" of the Subject Vehicle that would have contributed to the accident.[9]

13.    GM argued that Phillips' claims "require an unexplained and electronic failure in the cruise control electronics ***and*** a complete failure of the brakes ***and*** a failure of the brake switch," generally arguing that Phillips' allegations of multiple electrical and mechanical failures is impossible.[10] GM's Mediation Statement was presented on July 7, 2010.[11]

14.    At the time GM made these statements—and during the pendency of the 2007 Litigation—GM was aware that the Subject Vehicle's Body Control Module

---

[7] Exhibit 3, *Powledge Original Petition dated September 6, 2007.*
[8] Exhibit 4, *Mediation Statement on Behalf of Motors Liquidation Company dated 7-27-2010*, 7.
[9] *Id.* at 8.
[10] *Id.* at 7.
[11] *Id.*

("**Control Module**") and ignition switch were defective.[12] According to GM, the Control

Module can cause the brake lamps to fail to illuminate when the brakes are applied, and

can disable cruise control, traction control, electronic stability control, and the panic

brake assist operation, greatly increasing the risk of a collision and injuries.[13] The

described Control Module risks associated with failure mimic Phillips' defect allegations

in the 2007 Litigation and as asserted by Phillips' expert, Stephen R. Syson.[14]

Additionally, the Subject Vehicle is a "Defective Ignition Switch Vehicle" as defined in

*In re: General Motors LLC Ignition Switch Litigation*, 1:14-MD-2543 (JMF). The

ignition switch defect results in the unexpected loss of engine power, power steering, and

power brakes, and the airbags are disabled.[15]

15.   Central to Mr. Syson's opinion was the Subject Vehicle's open throttle as

shown on page 19 of Syson's report.[16] This is significant given that "[i]ncreased

resistance can develop in the [Control Module]…and result in voltage fluctuations or

intermittency in the Brake Apply Sensor…"[17] In addition to increased resistance, the

Control Module failure can prevent the brake lights from illuminating when the brake is

pressed down and can "cause the vehicle to get stuck in cruise control if it is engaged []

and may also disable the traction control, electronic stability control, and panic-braking

---

[12] *See New GM Notification Campaign No. 14V-252 dated May 28, 2014* at 1.
[13] *Id.*
[14] Exhibit 5, *Expert Report of S. Syson dated July 14, 2008*; Exhibit 6, *deposition testimony of S. Syson*, (111:13 - 113:6).
[15] *MDL Consolidated and Amended Complaint Concerning all GM-Branded Vehicles*, Case 1:14-md-02543-JMF, Dkt. No. 345, at 89-90, ¶199-201.
[16] Ex. 5, at 19.
[17] *MDL Consolidated and Amended Complaint Concerning all GM-Branded Vehicles*, Case 1:14-md-02543-JMF, Dkt. No. 345, at 188-89, ¶563.

6

assist features."[18] In its recall notice New GM acknowledges that the Control Module defect "may increase the risk of a crash."[19]

16.     Based on photographic evidence we know that the Subject Vehicle's airbags did not deploy indicating causal evidence of the ignition switch defect contributing to the wreck.

17.     GM knew of these dangerous defects throughout the 2007 Litigation with Phillips, yet failed to provide documents and evidence in response to written discovery that demonstrate that knowledge. As stated in MDL Plaintiffs' *Consolidated and Amended Complaint*, "although the brake light defect has caused at least 13 crashes since 2008, New GM did not recall all 2.4 million vehicles with the defect until May 2014."[20] And GM knew the origins of the ignition switch defect in 2001.[21]

**C. Phillips' discovery requests in the 2007 Litigation are ignored by GM.**

18.     On April 11, 2008 Phillips served their Second Request for Production of Documents on Old GM, seeking "all complaints [] wherein any Chevrolet, Pontiac, Oldsmobile or Saturn vehicle that uses the 4 cylinder engine like that used in the [Subject Vehicle] was alleged to have experienced unwanted acceleration."[22] Additionally, Phillips sought "all recalls, service campaigns, service bulletins, dealer bulletins or by whatever name called involving the subject platform vehicle or any vehicle with the 4

---

[18] *Id. citing New GM Notification Campaign No. 14V-252 at 1.*
[19] *Id. quoting New GM Notification Campaign No. 14V-252 at 1.*
[20] *Id.* at 188, ¶562.
[21] *MDL Consolidated Master Complaint,* Dkt. No. 345, pp. 93 ¶213.
[22] Exhibit 7, at 3.

cylinder engine like that used in the [Subject Vehicle]."[23] Phillips also sought "all complaints from owners or dealers where a Saturn, Cobalt, Pontiac, Oldsmobile, or Chevrolet" was alleged to experience a stuck throttle or speed control issue.[24] GM failed to produce documents in its possession, or to supplement documents, responsive to these requests concerning GM's knowledge of the Control Module and ignition switch defects.

19.     At the time Phillips made these requests Old GM was required to adhere to the TEXAS RULES OF CIVIL PROCEDURE, as Phillips 2007 Litigation was then pending in state district court in Galveston County, Texas. Rule 1 states that it is "[t]he proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction." TEX. R. CIV. P. 1.

20.     Additionally, the Texas Rules compel a party's timely supplementation of discovery responses and allows for sanctions in the event a party fails to supplement, whether the result of inadvertence or malicious intent. *See* TEX. R. CIV. P. 193.5-6. The Texas Supreme Court holds that the Rule is not limited to "the exclusion of all evidence not properly identified in discovery; rather, as with other failures to comply with discovery, the trial court should have a range of sanctions available to it to enforce the rules without injustice. 'The punishment should fit the crime.'" *Alvarado v Farah Mfg.*

---

[23] Exhibit 8, *Plaintiffs' 3rd Set of Request for Production of Documents*, at 3.
[24] Exhibit 9, *Plaintiffs' 4th Set of Request for Production of Documents*, at 3.

*Co., Inc.*, 830 SW2d 911, 915 (Tex. 1992) (quoting *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991)).

21.    Phillips also sought documents related to "all claims or lawsuits where any vehicle that has a stepper motor cruise control was alleged to have experienced unwanted acceleration, sudden acceleration, uncontrolled acceleration...."[25]

22.    Then, on July 3, 2008 Phillips requested:

- "[A]ll documents [] related to any investigation conducted by [GM], or any of its subsidiaries, within the last ten (10) years, related to any vehicle that may have experienced a cruise control-related unwanted acceleration, sudden acceleration, uncontrolled acceleration, or by whatever name called.

- Furnish all testing [GM] has undertaken to determine if the Ecotec engine, at full throttle, will overpower the brakes.

- Furnish all testing to determine if any size engine will overpower a vehicle's brake capacity/capability.

- Furnish all DFMA, FMEA, fault tree analysis, or by whatever name called for the following components of the subject vehicle:

  a.  brake system;

  b.  throttle body;

  c.  cruise control.[26]

23.    GM failed to produce documents that we now know were in GM's possession and that are responsive to the above listed requests. GM's documents responsive to these requests substantially prove Phillips' allegations in the 2007

---

[25] Exhibit 10, *Plaintiffs' 5th Set of Request for Production of Documents*, at 3.
[26] Exhibit 11, *Plaintiffs' 6th Set of Request for Production of Documents*, at 3.

Litigation.

24.     In September 2008 the NHTSA opened an investigation for 2005-2007 Pontiac G6 vehicles related to the Control Module defect that can cause the cruise control to get stuck if it is engaged.[27] In that same year, GM's own investigation of the problem revealed elevated warranty claims for the Control Module defect for 2005 and 2006 Pontiac G6s built in 2005, and found that "fretting corrosion in the Control Module C2 connector was the root cause" of the problem.[28] None of these documents were produced to Phillips during the 2007 Litigation, even though Phillips specifically asked for documents related to Pontiac platforms like the G6, and specifically asked for documents regarding "all claims or lawsuits where any vehicle that has a stepper motor cruise control […]."

25.     Also, on December 4, 2008 GM issued a Technical Service Bulletin regarding the Control Module defect. This bulletin, subject to a specific request for "all recalls, service campaigns, **service bulletins**…" was never produced. Throughout this period—from September to December 2008—Phillips and GM were actively engaged in the 2007 Litigation and the above referenced discovery requests were outstanding. GM had a legal duty—*as significant as any duty to notify a creditor in bankruptcy*—to provide documents responsive to Phillips' written discovery requests. But GM failed to produce these documents and severely prejudiced Phillips ability to prove their claims.[29]

26.     Rather than timely producing documents that tend to prove Phillips' claims,

---

[27] *MDL Consolidated Complaint*, Dkt. No. 345, at 189, ¶564-66.
[28] *Id. citing New GM Notification Campaign No. 14V-252* at 2.
[29] TEX. R. CIV. P. 193.5.

GM argued that Adam Powledge was not the victim of a GM defect, but was a murderer and intended to kill himself and his children.[30] This defense was used throughout the 2007 Litigation as a means of undermining Phillips' case. GM's failure to produce documents prejudiced Phillips' ability to disprove GM's preposterous alternative theory of causation, and gave the theory an unwarranted shred of credibility. GM argued that "[Phillips] cannot demonstrate any defect and any alleged 'recall'" of the Subject Vehicle would have contributed to the accident and that Phillips' claims "require an unexplained and electronic failure in the cruise control electronics **and** a complete failure of the brakes **and** a failure of the brake switch."[31] The unexplained nature of the crash, combined with a lack of GM documents to substantiate Phillips' expert's opinion significantly undermined Phillips' case.

### D. Recalls of 2014 as applied to Phillips' claim from the 2007 Litigation.

27.    We now know that GM was aware that the power steering system of the Subject Vehicle—identical to the 2004-2007 Saturn Ion and part of the March 31, 2014 recall—could cause a loss of control. Additionally, the Control Module and ignition switch defects result in similar electrical-mechanical failures, mainly a loss of steering, braking, and airbag failure. As noted *supra*, these defects were likewise known for years to GM, but never disclosed in the 2007 Litigation.

28.    While the Cobalt/Ion/Saturn ignition switch recall in February has received

---

[30] Exhibit 4, *Mediation Statement on Behalf of Motors Liquidation Company dated July 27, 2010* at p. 7; Exhibit 5," *Expert Report of S. Syson* dated July 14, 2008, pp. 5 - 15; and Exhibit 12, *Rebuttal Assessment Report of S. Syson*, pp. 2, 5, and 6; *See also* Exhibit 13, *Report of B. Bowman* dated February 18, 2009, pp. 3.
[31] *Id.* at 8.

greater media attention, various Malibu iterations constitute the most recalled class of GM vehicles for 2014.[32] According to GM, the May 15, 2014 recall listed above is the result of a "problem with the wiring harness associated with the brake lamp."[33] This can cause "the vehicles' brake lights to illuminate when the brakes aren't being engaged, or, on the other hand, prevent the lights from illuminating when the driver hits the brakes."[34] Importantly for Phillips' claims, the problem can also "disable important systems like electronic stability control, traction control, panic braking assist, and cruise control."[35] These systems were the primary areas that we know Phillips' Subject Vehicle demonstrated a lack of control prior to the crash.[36]

29.    We also know that the reason why witnesses to the crash—whose testimony was heavily relied upon by GM to support its murder-suicide defense—testified that prior to the crash the Subject Vehicle's "brake lights never came on…."[37] The brake lights never came on because the "wiring harness associated with the brake lamp" can "prevent the lights from illuminating when the driver hits the brakes." Rather than producing responsive documents concerning this known electrical issue during the

---

[32] CNNMoney.com, "*Chevy Malibu tops GM's recall parade,*" May 23, 2014, http://features.blogs.fortune.cnn.com/2014/05/23/chevy-malibu-tops-gms-recall-parade/ (last visited 5-30-14).

[33] Yahoo!News, "*Huge GM Recall: Chevrolet Corvette, Malibu, Silverado, Tahoe, Cadillac CTS, GMC Sierra, More,*" May 15, 2014, https://autos.yahoo.com/news/huge-gm-recall-chevrolet-corvette-141857653.html?soc_src=mediacontentsharebuttons (last visited 5-30-14).

[34] *Id.*

[35] *Id.*

[36] Ex. 5, pp. 23. Plaintiffs' expert from the 2007 Lawsuit concluded a "mechanical/electrical or environmental failure in the design" was a contributing factor to the crash. Additionally, the expert concluded that the "brake system, throttle control, vehicle speed control and cruise control system is defectively designed…." These are the exact components that are impacted by GM's most recent Malibu recall and that effected Plaintiffs' 2004 Malibu.

[37] Exhibit 14," pp.2 (*citing* L. Gilman's deposition, 19:4-20).

2007 Litigation, GM used the lack of brake lights being observed as the basis for accusing Adam Powledge of murdering his children.

30.     Because of the overlapping electrical-mechanical failures described in GM's recall bulletin risk descriptions for the Control Module, ignition switch and power steering defects applicable to the Subject Vehicle, and given Phillips' theory of the case as described by their expert, GM had a duty to produce documents that demonstrate these defects during the 2007 Litigation, but did not.

**E.  GM's failure to adhere to the Texas and Federal Rules of Civil Procedure.**

31.     When did GM know about this potentially fatal flaw concerning the wiring harness? As shown *supra*, GM knew these facts in 2008 and 2009, during the height of the 2007 Litigation.[38] From USA Today:

> The documents, filed Thursday, show that [in 2009] GM recalled about 8,000 Pontiacs from the 2005 and 2006 model years because the brake lights might not work when the driver stepped on the brake pedal. But the company didn't recall later-model G6s or the Chevrolet Malibu and Saturn Aura until three weeks ago. The cars are nearly identical.

USA Today, "*Documents show another delayed GM recall,*" May 29, 2014.

32.     As previously discussed, GM also knew of the Pontiac Control Module defect as a result of its own investigation, a NHTSA investigation, and issued a service bulletin in December 2008.

33.     Notably, the Control Module problem not only impacts the brakes, but "can

---

[38] USA Today, "*Documents show another delayed GM recall,*" May 29, 2014, http://www.usatoday.com/story/money/cars/2014/05/29/another-delayed-gm-recall/9740545/ (last visited 5-30-14).

affect some of a car's other functions. If the cruise control is on, drivers may have to push harder on the brake pedal to get it to disengage…. Also, the cars' traction control, electronic stability control and panic braking assist features, all designed to prevent crashes or lessen their severity, could become disabled."[39] None of this information was provided to Phillips during the 2007 Litigation, even though their theory of the case—the Subject Vehicle was speeding out of control with a stuck throttle and inability to brake—mimic the risks of the defect.

34.    GM's own documents demonstrate that it was aware of the wiring harness issue in certain vehicles in July 2008. *MDL Consolidated Master Complaint,* Dkt. No. 345, pp. 173 ¶492. Then in November 2009, GM documents demonstrate it was aware of increased resistance as a result of the faulty wiring harness concerning the 2010 Malibu, but again failed to advise Phillips.

35.    As noted *supra*, the ignition switch recall hinders the braking and steering systems, and prohibits the airbags from deploying.[40] Phillips' Subject Vehicle did not deploy airbags at impact. While the wreck occurred in 2005, GM was first aware of possible problems concerning ignition switches in 2001.

36.    "In 2001, during pre-production testing of the 2003 Saturn Ion, GM engineers learned that the vehicle's ignition switch could unintentionally move from the

---

[39] *Id.*

[40] Wall Street Journal, *GM to Recall 8.45 Million More Vehicles in North America*, June 30, 2014, http://online.wsj.com/articles/gm-to-recall-7-6-million-more-vehicles-in-u-s-1404153705?cb=logged0.442486526677385 (last visited 7-6-14)("The proposed fix is the same one the company once considered using to repair older model Chevrolet Cobalt compact cars and other small cars, which later were found to have a defective ignition switch that when jarred could turn off power to air bags, power steering and power brakes.").

'run' to the 'accessory' or 'off' position. GM further learned that where the ignition switch moved from 'run' to 'accessory' or 'off,' the vehicle's engine would stall and/or lose power." *MDL Consolidated Master Complaint,* Dkt. No. 345, pp. 93 ¶213. The Saturn Ion ignition switch recall is substantially similar to the Subject Vehicle's. *Id.* at pp. 134.

37.    Phillips sought all of these documents from GM. GM had responsive documents in its possession and was under a legal duty to provide them to Plaintiffs, but failed to do so, prejudicing Phillips' ability to fairly value their claim.

38.    In Texas "[i]t is well established that the Texas Rules of Civil Procedure have the dignity of statutory provisions and must be observed as such." *Centennial Ins. Co. v Commercial Union Ins. Companies*, 803 SW2d 479, 482 (Tex. App. 1991)(*citing E.g., Pearl Assurance Co. v. Williams,* 167 S.W.2d 808, 810 (Tex. App. 1942)). As with the Federal Rules of Civil Procedure, a plaintiff's claim may be dismissed for failing to adhere to the Rules, thus imposing on themselves death-penalty sanctions. *See generally*, *Armstrong v. Ablon*, 686 SW2d 194, 196 (Tex. App. 1984)(imposing death-penalty sanctions for failing to respond to discovery).

39.    Like Texas, federal courts often dismiss a plaintiff's cause of action for failing to adhere to the Rules. "The Supreme Court has made clear that 'the most severe in the spectrum of sanctions ... must be available to the district court' to address such abuses when they arise." *Stichting Mayflower Mtn. Fonds v City of Park City, Utah*, 441 Fed Appx 568, 570 (10th Cir. 2011)(*quoting Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). In *Stichting*

*Mayflower* the 10th Circuit upheld the district court's dismissal of the plaintiff's cause of action as a sanction, and the case law is replete with this extraordinary remedy for a party's failure to adhere to the Rules and conduct meaningful discovery. Nothing about death-penalty sanctions require a showing of misconduct or fraud. Failing to adhere to the Rules is enough.

40.    But what of a defendant's failure to conduct meaningful discovery that prohibits a plaintiff from presenting their claim? Especially under circumstances in which the defendant controls the documents and evidence that might prove a plaintiff's claim or undermine a defendant's defense? In Phillips' 2007 Litigation GM had a continuing duty under both the Texas and Federal Rules of Civil Procedure to supplement its discovery responses.

41.    GM had an ongoing duty to abide by the FEDERAL RULES OF CIVIL PROCEDURE after seeking bankruptcy protection and to supplement its discovery with documents responsive to Phillips' requests. FED. RULES CIV PRO. RULE 37(c)(1)(C). The failure to supplement can lead to "appropriate sanctions." *Id.* Given the degree of GM's failures to engage in meaningful discovery during the 2007 Litigation, Plaintiffs' Rule 60(b)(6) Motion should be granted as appropriate extraordinary relief.

42.    As identified above, in 2014 GM finally disclosed relevant and material information that supports Phillips' theory of the case as described in the 2007 Litigation. Rather than a lack of evidence concerning "any defect and any alleged 'recall,'" GM had significant evidence that demonstrates its drive-by-wire electrical systems—including the power steering, cruise control, and braking systems—was harming thousands of GM

16

customers nationwide and caused the Subject Vehicle to malfunction and crash.

43.    As a final example of GM's failure to supplement its discovery, <u>Exhibit 13</u> is a report by Bruce Bowman, a GM expert and former GM engineer utilized by GM in the 2007 Litigation, dated February 18, 2009. In the report Mr. Bowman states that there is nothing wrong with the brake system of the subject Malibu. We know that that statement is not accurate and, according to the Rules GM had an affirmative duty to supplement that opinion and produce documents relevant to the 2007 Litigation. At the time GM offered this expert opinion GM had actual knowledge of the risks that the Control Module and ignition switch recalls create to "the cars' traction control, electronic stability control and panic braking assist features," and to the power steering, power braking and airbags.[41]

44.    Additionally, the USA Today article highlights that GM was aware of the Control Module product defect as early as 2009 when "GM recalled about 8,000 Pontiacs from the 2005 and 2006 model years" with "nearly identical" electrical systems to the subject Malibu.[42] But GM, when responding to Phillips' *Third Set of Requests for Production* in the 2007 Litigation, never mentioned anything related to the Pontiac recall or the Cobalt.[43] Responses to these requests were never amended to include the Pontiac recall, or disclose information GM had in its possession at the time the request was made,

---

[41] USA Today, "*Documents show another delayed GM recall*," May 29, 2014, http://www.usatoday.com/story/money/cars/2014/05/29/another-delayed-gm-recall/9740545/ (last visited 5-30-14).
[42] *Id.*
[43] <u>Exhibit 15</u>, *Defendant General Motors Corp.'s Amended Objections and Responses to Plaintiffs' Third Set of Requests for Production*, pp. 5-6.

but failed to produce this information.[44] Likewise with the ignition switch recall, a defect GM had actual knowledge of in 2001.

45.     Both Old and New GM failed to produce these crucial documents for years. And in Phillips' case, GM failed to adhere to the Rules and timely produce this information in response to Phillips' repeated discovery requests throughout the 2007 Litigation. GM's failure to disclose this information during the 2007 Litigation requires extraordinary relief.

### III. SUMMARY OF THE ARGUMENT

46.     Phillips are entitled to a do-over. FEDERAL RULE OF CIVIL PROCEDURE 60(b)(6) allows a party seek relief from a final judgment, order or proceeding for "any [] reason that justifies relief," so long as such motion is brought within a reasonable time. FED RULES CIV PRO RULE 60(b)(6). Phillips move for this extraordinary relief regarding GM's wrongfully obtained Settlement Agreement.[45] To avoid inconsistency with other pre-sale accident plaintiffs, the Court should grant Plaintiffs' Rule 60(b)(6) Motion concerning GM's failure to respond and supplement its discovery in the 2007 Litigation.[46] Phillips' claim valuation was significantly prejudiced as a result of GM's failures to produce discoverable, material evidence in the 2007 Litigation.

47.     Phillips'    Motion    presents    an    extraordinary    circumstance    and

---

[44] Reuters, "*Two GM lawyers, quality control executive among those pushed out over switch*," June 9, 2014,    http://www.reuters.com/article/2014/06/09/us-gm-recall-dismissed-idUSKBN0EK1XY20140609 (last visited 7-7-14).
[45] Fed. R. Civ. P. 60(b)(2)(3) & (6).
[46] *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2nd Cir 2009)(holding that "conflicting decisions in two separate lawsuits with substantial overlap in parties and substantial similarity in subject matter" is enough under Rule 60(b)(6)).

Rule 60(b)(6)'s catchall "any other reason that justifies relief" provision is appropriate. Phillips' Motion presents just grounds for relieving Phillips of the Settlement Agreement, namely that Phillips' Claim No. [44614] was substantially undervalued as a direct result of GM's failure to adhere to its discovery obligations in accordance with the Texas and Federal Rules of Civil Procedure.

48.    Phillips' Motion is timely. Phillips' Motion is filed within 10 months of being informed by New GM of documents and information in its possession that substantially impacted Phillips' Claim No. [44614] and that GM was required to produce during the 2007 Litigation. GM failed to adhere to the Rules; and Phillips could not have uncovered GM's failure, nor could Phillips have sought relief on appeal or within 1-year from August 9, 2010. Phillips are blameless for GM's failure to adhere to the Rules that so significantly undermined the presentation of Phillips' claim.

49.    Furthermore, GM is not unduly prejudiced by Plaintiffs' Rule 60(b) Motion. GM is presently engaged in substantial litigation concerning pre-sale vehicles in pre-sale accidents. Even the *GM Ignition Compensation Claims Fund* recognizes that fund eligible vehicles are entitled to additional compensation, even if the fund claimants previously accepted a cash settlement.[47] Phillips do not seek special treatment, but want to be treated like all other pre-sale accident plaintiffs—to receive the benefit of the Court's rulings concerning GM's failure to disclose documents and ensure Phillips' claim is fairly valued. Plaintiffs' Rule 60(b)(6) Motion is the appropriate procedural vehicle to

---

[47] *GM Ignition Compensation Claims Fund*, FAQs 3.11 ("Am I eligible to file a claim if I had a prior settlement with GM and received payment from that settlement? Yes. […]").

ensure that the Settlement Agreement concerning Phillips' Claim No. [44614] does not prejudice their right to relief afforded to all pre-sale claimants.

50.    GM failed to produce material evidence during the 2007 litigation. Now GM asks the Court to overlook these striking failures by prohibiting Phillips' claim based on the wrongfully obtained Settlement Agreement that significantly undervalued Phillips' claim. The documents GM failed to produce substantially support Phillips' theory of the case, and GM's conduct requires extraordinary relief. Our judicial system's credibility is at stake. If GM's conduct is excused through enforcement of the Settlement Agreement, a dangerous precedent is set. Litigants will be encouraged to be ignorant, ignore, suppress or misrepresent evidence, hoping to ride out litigation. Purposefully uninformed litigants will be routine and the discovery process will be turned on its head. If a party refuses to produce material evidence, what is the point of discovery?

51.    Unlike other pre-sale plaintiffs, Phillips were actively engaged in the 2007 Litigation with GM prior to bankruptcy and the Sale Order. GM had a clear, affirmative duty to supplement its discovery responses to enable Phillips an opportunity to properly value and present their claim. GM failed to meet that duty, ultimately prejudicing Phillips' legal rights and Plaintiffs' Rule 60(b)(6) Motion should be granted. Alternatively, Phillips move for relief under Rule 60(d).

## IV. STANDARD OF REVIEW

### A. Rule 60(b)(6).

52.      "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *In re Terrorist Attacks on September 11, 2001,* 741 F.3d 353, 357 (2nd Cir. 2013)*, cert. denied sub nom. Kingdom of Saudi Arabia v. Fed. Ins. Co.*, 134 S. Ct. 2875, 189 L. Ed. 2d 849 (2014) (*quoting Nemaizer v. Baker,* 793 F.2d 58, 61 (2nd Cir. 1986)). *In re Terrorist Attacks on September 11, 2001* is instructive. Quoting to the Supreme Court's decision in *Gondeck v. Pan American World Airways, Inc.*, "the interest in finality is outweighed by the interest in treating victims of the same tort consistently. *Id.* (*quoting Gondeck*, 382 U.S. 25, 26–27, 86 S.Ct. 153, 15 L.Ed.2d 21 (1965)(*per curiam*)). Phillips want equal treatment with those claimants now apprised of GM's documents and evidence that demonstrate the defects applicable to the Subject Vehicle. Without these documents Phillips' theory of the case in the 2007 Litigation was largely unsupported.

53.      In seeking Rule 60(b)(6) relief "[c]ourts [] must apply subsection (b)(6) only 'as a means to achieve substantial justice when "something more" than one of the grounds contained in Rule 60(b)'s first five clauses is present.'" *Olle v Henry & Wright Corp.*, 910 F2d 357, 365 (6th Cir. 1990)(*quoting Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir. 1989)). Phillips' Motion presents something more.

54.      In this circuit, "Rule 60(b) is properly invoked when there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship." *Matter of Emergency Beacon Corp.*, 666 F2d 754, 759 (2nd Cir. 1981) (citations omitted).

55.    While Rule 60(b)(6) does not contain a specified time limitation—only within a "reasonable time"—Phillips' Motion is filed within 10 months of New GM's first recalls applicable to the Subject Vehicle. *See Pathare v Klein*, 06 CIV. 2202 LTS, 2012 WL 1353217, at *2 (S.D.N.Y. Apr. 17, 2012)("Courts in this Circuit have routinely held that significant delay constitutes grounds for the denial of a Rule 60(b) (6) motion. *See, e.g., Socialist Republic of Romania v. Wildenstein & Co. Inc.,* 147 F.R.D. 62, 65 (S.D.N.Y.1993); *PRC Harris. Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2nd Cir.) (1983) (one year delay unreasonable under Rule 60(b)(6)); *Fustok v. Conticommodity Serv. Inc.,* 122 F.R.D. 151, 158 (S.D.N.Y.1988), *aff'd,* 873 F.2d 38 (2nd Cir.1989) (two year delay unreasonable); *Menashe v. Sutton,* 90 F.Supp. 531, 533 (S.D.N.Y.1950) (two year and four month delay unreasonable)"). This circuit has never held parties bringing a Rule 60(b)(6) motion within 1-year of the revelation of extraordinary conduct is unreasonable. Under certain circumstances, Judge Furman has held that three and half years is not reasonable. *In re Indu Craft Inc.*, 11 CIV. 5996 JMF, 2012 WL 3070387, at *7 (S.D.N.Y. July 27, 2012) aff'd, 580 Fed Appx 33 (2nd Cir. 2014). But the 2nd Circuit has also held that 10 years can be reasonable. *Grace v Bank Leumi Trust Co. of NY*, 443 F3d 180, 189 (2nd Cir. 2006).

56.    Phillips expect GM to argue that Plaintiffs' Rule 60(b)(6) Motion is crafted to avoid the 1-year time limitation of the other provisions of the Rule. "The two provisions [60(b)(1)&(6)] are exclusive and 'an appellant cannot circumvent the one-year limitation [of Rule 60(b)(1)] by invoking the residual clause (6) of Rule 60(b).'" *United Airlines, Inc. v Brien*, 588 F.3d 158, 175 (2nd Cir. 2009)(*quoting Serzysko v. Chase*

*Manhattan Bank,* 461 F.2d 699, 702 (2nd Cir.1972)(*per curiam*)). But that argument is unfounded and the other provisions of Rule 60(b) do not apply. As the *Brien* court noted, even though the movant sought to resolve two inconsistent judgments concerning substantially the same subject matter, in the court's view this was not a "mistake" or "inadvertence" under Rule 60(b)(1). *Id.*

57.     Phillips' Motion does not concern a mistake as described in the case law. *See Yeschick v. Mineta*, 675 F.3d 622, 628-29 (6th Cir. 2012)(attorney's failure to update his email address, thus preventing the delivery of electronic service of a dispositive motion, was not a mistake under 60(b)(2)). And Phillips' Motion is not about newly discovered evidence—such as an unknown witness—but evidence that was known to GM, but never produced. Finally, Phillips' Motion does not concern a fraud as described in 60(b)(3), because Phillips are not arguing GM's *intent*, only that GM had a legal duty to timely supplement its discovery and failed to adhere to that duty repeatedly, thus prejudicing the presentation of Phillips' claim. The 2nd Circuit and other circuits recognize the equitable intent of Rule 60(b), and case law provides support for appropriate Rule 60(b) motions within 1-year of discovering the circumstances subject of the motion, not the date of judgment. *See In re Lawrence*, 293 F3d 615, 620 (2nd Cir. 2002).

58.     Rule 60 was designed as an equitable procedural vehicle to replace bills of review. *See* FED. R. CIV. P. 60(e). But a bill of review as an equitable remedy can still

exist.[48] Rule 60(b) commentary centers upon the Rule's *procedural* purpose—Rule 60

does not constitute substantive law, but provides a rule-based approach to traditional

equitable remedies for relief from a judgment.[49] Given the Rules equitable intent, and the

desire to liberally apply the Rule when appropriate extraordinary circumstances dictate,

Phillips urge the Court to grant this relief given these unique circumstances.

59.    Like other pre-sale plaintiffs, GM failed to produce material documents

relevant to Phillips' claim for years. But unlike these pre-sale plaintiffs, Phillips must

avoid the Settlement Agreement in order to pursue their claim.[50] Phillips are the victims

of the same tort GM perpetrated on the other personal injury pre-sale plaintiffs, and

accordingly, the valuation of Phillips' claim should be treated on an equal basis with

these plaintiffs who have the benefit of substantial documentation that demonstrate the

merits of their claims. Phillips were not provided those documents—but should have

been—when they originally presented their claim, leading to the claim being substantially

---

[48] FED. RULES CIV. PRO. RULE 60, cmt. at Sub. (b) ("With reference to the question whether, as the rules now exist, relief by coram nobis, bills of review, and so forth, is permissible, **the generally accepted view is that the remedies are still available, although the precise relief obtained in a particular case by use of these ancillary remedies is shrouded in ancient lore and mystery.** See *Wallace v. United States,* 142 F.2d 240 (2nd Cir. 1944)(*cert. denied* 65 S.Ct. 37, 323 U.S. 712, 89 L.Ed. 573); *Fraser v. Doing,* 130 F.2d 617 (App. D.C. 1942); *Jones v. Watts,* 142 F.2d 575 (5th Cir. 1944); *Preveden v. Hahn,* 36 F.Supp. 952 (S.D.N.Y. 1941); *Cavallo v. Agwilines, Inc.,* 2 F.R.D. 526 (S.D.N.Y. 1942); *McGinn v. United States,* 2 F.R.D. 562 (D.C.Mass.1942); *City of Shattuck, Oklahoma ex rel. Versluis v. Oliver,* W.D.Okl.1945, *Reed v. South Atlantic Steamship Co. of Delaware,* 2 F.R.D. 475 (D.Del. 1942); *Laughlin v. Berens,* 73 W.L.R. 209 (D.D.C.1945))(certain citations omitted).

[49] *Id.* ("It should be noted that Rule 60(b) does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief.").

[50] *Rufo v Inmates of Suffolk County Jail,* 502 US 367, 378, 112 S Ct 748, 757, 116 L Ed 2d 867 (1992)("There is no suggestion in these cases that a consent decree is not subject to Rule 60(b). A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.").

undervalued. Therefore, in these extraordinary circumstances, Rule 60(b)(6) relief is appropriate.

60.     Alternatively, Phillips move for relief under Rule 60(d).

## V. ARGUMENT

61.     Rule 60(b)(6) "authorizes the court to act upon a showing of 'any other reason justifying relief from the operation of the judgment,' represents a "grand reservoir of equitable power (that should be) liberally applied." *United States v. Cirami*, 563 F.2d 26, 32 (2nd Cir. 1977)(citation omitted). As the Supreme Court stated in *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), "[Rule 60(b)(6)] 'vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" Accordingly, the one-year limitation of subsections (b) (1), (2), and (3) does not apply, and appellants' motion is time-barred only if it was not made "within a reasonable time." *Dunlop v Pan Am. World Airways, Inc.*, 672 F2d 1044, 1051 (2nd Cir. 1982). *Dunlop* notes that Rule 60(b)(6) is close cousins of a common law bill of review, as exists in Texas. *Id.* at 1052 (*citing Whiting v. Bank of the United States*, 38 U.S. 5, 10 L.Ed. 33 (1839)).

**A. The Court has the authority to grant Plaintiffs' Rule 60(b)(6) Motion given these extraordinary circumstances.**

62.     Rule 60(b) and its common law predecessors recognize the central tension between the purpose of litigation—a quest for truth—and the desire for terminable litigation. In 1841 Justice Story described the tension:

> Now, I agree that mere cumulative evidence to the fact of fraud or any other leading fact not discovered since the trial, will not

25

ordinarily constitute any just ground for the interference of a court of equity to grant relief, for the solid reason that it is for the public interest and policy to make an end to litigation, or, as was pointedly said by a great jurist, that suits may not be immortal, while men are mortal.

*Ocean Ins. Co. v Fields*, 18 F Cas 532, 539 (CCD Mass 1841).

63.    But Justice Story also recognized that "[w]hile the court would not be disposed lightly to interfere with the verdict of the jury, upon the point of fraud, it might well deem itself at liberty to look deeper into the case upon new evidence which might justly, if known at the time, have changed the verdict of the jury." *Id.* While Justice Story focused on fraud, a bill of review and its procedural successor, Rule 60, identifies a host of instances that require an equitable remedy in certain extraordinary circumstances such as Phillips'.

64.    Consistent throughout 60(b) case law in the *civil* context[51] is courts' willingness to craft appropriate equitable relief when an innocent litigant was harmed by an abuse of the litigation process, whether intentional or inadvertent. *See In re Global Energies, LLC*, 763 F3d 1341, 1350 (11th Cir. 2014)(reversing denial of Rule 60(b) relief, without regard to the a 1-year time limit given the nature of the fraud); *see also In re Midlands Util., Inc.*, 251 BR 296, 302 (Bankr. D.S.C. 2000).

> [P]arties who request relief under Rule 60(b)(2) are not barred from it simply because they rely on issues that had been litigated earlier. In fact, in the context of Rule 60(b)(2) motions, that is commonplace. *See, e.g., Branca,* 789 F.2d 1511 (granting Rule 60(b)(2) relief, where the movant offered new evidence on the previously litigated issue of whether an insured man had died);

---

[51] It should be noted that there is a plethora of 60(b) opinions in the *criminal* context from mostly *pro se* criminal litigants. These opinions are largely unhelpful.

26

> *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525 (8th Cir.1996) (same,
> where the previously litigated issue was whether a company had
> failed to make required disclosures); *Estate of Kraus v. Comm'r,* 875
> F.2d 597 (7th Cir.1989) (same, where the previously litigated issue
> was whether a drafting mistake had occurred in a trust document);
> *Chilson v. Metro. Transit Auth.,* 796 F.2d 69 (5th Cir.1986) (same,
> where the previously litigated issue was whether an employee had
> been unlawfully discharged).

*In re Global Energies, LLC*, 763 F3d at 1347-48.

65.    It is apparent from the flexible nature of Rule 60(b)'s application that courts

continue to use their equitable authority to ensure a proper case by case balancing as

outlined by Justice Story in *Fields*.

66.    In *Dunlop*, a 2nd Circuit opinion, the plaintiffs' class action was prejudiced

by circumstances completely outside the plaintiffs' control: "Moreover, in this case

extraordinary circumstances clearly warrant such post-judgment modification. Seven

years ago appellants first filed their state age discrimination complaints. Since then they

have been frustrated at every turn, through no fault of their own, in their efforts to have

these state claims adjudicated. All they seek now is an opportunity to litigate their state

claims free from any improper preclusive effects of the federal settlement." *Dunlop*, 672

F.2d at 1053. Likewise, Phillips only seek an opportunity to litigate their claim fairly and

with the documents necessary to prove the merits of their case that were not produced in

the 2007 Litigation.

67.    The 2nd Circuit recognizes the equitable importance of Rule 60(b), and its

necessary application under certain circumstances. "We begin by observing that

application of *res judicata* appears to produce an anomalous result under circumstances

such as these where the plaintiffs argue that they had no inkling of (and could not have discovered through due diligence) the facts underlying their fraud claims during the sale order proceedings in the Bankruptcy Court." *In re Lawrence*, 293 F.3d at 620. *In re Lawrence* is a 60(b)(3) fraud case, but the holding is instructive. The defendant in *Lawrence* argued that the plaintiffs' 60(b)(3) motion was untimely and outside the 1-year limitation, but the court rejected that view applying the discovery rule to the revelation of the fraud and the plaintiffs' ability to recast their requested relief as a Rule 60(b)(6) motion. *In re Lawrence*, 293 F.3d at 626. The court highlights the significant procedural conundrum, declining to determine the extent the discovery rule intertwines with Rule 60(b)(3)'s fraud provision—how can a plaintiff know to bring a 60(b)(3) motion within 1-year if the fraud goes undiscovered due to the defendants' concealment? *Id.* But the court's dicta clearly indicate a willingness to apply the discovery rule when certain circumstances warrant such extraordinary relief.

68.      Given the extraordinary circumstances present in Phillips' Motion, the Court has the legal authority to grant the Motion. We must ensure an innocent litigant can fairly present their claim "free from any improper preclusive effects" that stem from GM's failure to produce documents. *Dunlop*, 672 F.2d at 1053.

## B. In the alternative, Phillips seek avoidance of the Settlement Agreement in accordance with Rule 60(b)(3)'s fraud provision.

69.      In the alternative, Phillips move for Rule 60(b)(3) relief. GM fraudulently concealed evidence material to Phillips' 2007 Litigation for the express purpose of

undermining Phillips' ability to prove their case.[52] As a litigant, Phillips and the courts

*must rely on the process* and expect that parties in litigation will not abuse it.

> Our system of civil litigation cannot function if parties, in violation of court orders, suppress information called for upon discovery. 'Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.' *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). The FEDERAL RULES OF CIVIL PROCEDURE substitute the discovery process for the earlier and inadequate reliance on pleadings for notice-giving, issue-formulation, and fact-revelation. As the Supreme Court stated in *Hickman v. Taylor*, 'civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.' 329 U.S. at 501, 67 S.Ct. at 389. The aim of these liberal discovery rules is to 'make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

*Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1345-46 (5th Cir. 1978).

70.    In *Rozier*, the 5th Circuit granted a product liability plaintiff's 60(b)(3) motion for new trial due to Ford's wrongful withholding of a single document that tended to prove the plaintiff's product defect claim. *Id.* "Within a year of their entry, judgments obtained through fraud, misrepresentation or other misconduct may be set aside under Rule 60(b)(3). Although the granting of such relief is within the discretion of the trial court, *Hand v. United States*, 441 F.2d 529 (5th Cir. 1971), the rule 'is remedial and should be liberally construed'" *Rozier*, 573 F.2d at 1346 (*quoting Atchison, Topeka &*

---

[52] *Keasler v. Natural Gas Pipeline Co. of Am.*, 569 F. Supp. 1180, 1186 (E.D. Tex. 1983) *aff'd sub nom. Keasler v. Natural Gas Pipeline Co.*, 741 F.2d 1380 (5th Cir. 1984)("The concept of fraud includes acts of nondisclosure.")(citations omitted*).*

*Santa Fe Ry. Co. v. Barrett*, 246 F.2d 846, 849 (9th Cir. 1957)). Applying the *Rozier* case

to Phillips' claims, Phillips' Motion should be granted. Furthermore, given the degree of

GM's withholding of documents there was no way for Phillips to bring this Motion prior

to GM's revelations. Allowing GM's conduct to go on without accountability will only

encourage corporate defendants in the future—whatever they can get away with.

**C.   In the alternative, Phillips seek avoidance of the Settlement Agreement in accordance with Rule 60(d).**

71.     Rule 60(d) motions are "[i]ndependent actions [] reserved for those cases of

'injustices which, in certain instances, are deemed sufficiently gross to demand a

departure' from rigid adherence to the doctrine of *res judicata*." *U.S. v. Beggerly*,

524 U.S. 38, 46 (1998). Phillips' claims and the necessity to avoid the Settlement

Agreement for the reasons stated above constitute such an extraordinary circumstance.

There was no way Phillips could know the depth of GM's failure to respond to discovery.

Just as the public and U.S. regulators were unaware of GM's knowledge concerning

certain defects applicable to the Subject Vehicle for years, so too were Phillips. But GM

had a heighted duty to Phillips as litigants and failed to meet that duty, thus prejudicing

Plaintiffs' ability to present their claims.

72.     Additionally, Rule 60(d) also allows for modification based on a fraud on

the court. That issue has been well briefed and Phillips incorporate and defer to the

briefing as outlined in Designated Court's *Response Brief for Pre-Closing Accident

Plaintiffs on Threshold Issues Concerning New GM's Motion to Enforce Sale Order and

Injunction*, Dkt. No. [13021], pp. 23-24, and *Groman Plaintiffs' Response to that Part of*

*New GM's Opening Brief Regarding "Fraud on the Court,"* Dkt. No. [13028]. To the extent the Court determines GM's conduct constitutes a fraud on the court, Phillips seek equal application of that holding as applied to Phillips' requested relief to avoid the Settlement Agreement.

## VI. <u>CONCLUSION</u>

73.     For the forgoing reasons, Plaintiffs seek to avoid the Settlement Agreement and proceed with other pre-sale plaintiffs concerning their claims. Certainly Plaintiffs' due process rights have been prejudiced by GM's failure to produce documents in the 2007 Litigation and Plaintiffs are entitled to the extraordinary equitable relief available through Rule 60(b), or alternatively, Rule 60(d).

Respectfully submitted,

**JOSH DAVIS LAW FIRM**

By:___/s/ Joshua P. Davis_____
        Joshua P. Davis
        SDNY Bar No. JD6110
1010 Lamar, Suite 200
Houston, Texas 77002
(713) 337-4100/Phone
(713) 337-4101/Fax
josh@thejdfirm.com
*Attorney-in-Charge for Plaintiffs*