<u>UNITED STATES BANKRUPTCY COURT</u>

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | Chapter 11 |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, **f/k/a General Motors Corp.,** *et al.*, | Case No. 09-50026 (REG) |
| **Debtors.** | (Jointly Administered) |

**RESPONSE OF GUC TRUST ADMINISTRATOR TO MRS. PHILLIPS' AMENDED MOTION FOR RELIEF FROM, OR TO SET ASIDE, THE AUGUST 9, 2010 <u>STIPULATION AND SETTLEMENT RESOLVING CLAIM NO. 44614</u>**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone:  (212) 351-4000
Fax:  (212) 351-4035

*Attorneys for Wilmington Trust Company,*
*as Trustee for and Administrator of the*
*Motors Liquidation Company General*
*Unsecured Creditors Trust*

April 20, 2015

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

    I.    The 2007 Action ......................................................................................... 3

    II.    GM's Bankruptcy In 2009 .......................................................................... 5

    III.    In 2010, The Powledge Claimants Settle Their Claims And Transfer To Dover All Rights And Interest In Their Claims ................................... 6

    IV.    In 2011, The GUC Trust Is Formed .......................................................... 7

    V.    The 2014 Texas Action ............................................................................... 7

    VI.    The 2015 Rule 60 Motion ......................................................................... 10

ARGUMENT ..................................................................................................................... 11

    I.    Mrs. Phillips Does Not Have Standing To Bring This Motion ................... 11

    II.    Mrs. Phillips' Motion Is Time-Barred ...................................................... 12

        A.    The Substance Of Mrs. Phillips' Allegations Confirms That Her Motion Is A Rule 60(b)(3) Motion, Not A Rule 60(b)(6) Motion .................................... 13

        B.    Mrs. Phillips Did Not File Her Motion Within The One-Year Limitations Period For Rule 60(b)(3) Motions ....................................... 15

    III.    Mrs. Phillips Has Not Met Her Burden Of Showing That There Are "Exceptional Circumstances" Warranting Relief Under Rule 60(b) ........... 17

    IV.    As A Matter Of Law, Alleged Discovery Misconduct Does Not Warrant Relief Under Rule 60(d) ......................................................... 21

CONCLUSION ................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
888 F. Supp. 2d 478 (S.D.N.Y. 2012) ................................................. 1, 12

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
2009 WL 1110788 (S.D.N.Y. Apr. 23, 2009),
*aff'd*, 671 F.3d 140 (2d Cir. 2011) ....................................................... 12

*Barry v. Atkinson*,
193 F.R.D. 197 (S.D.N.Y. 2000) ......................................................... 19

*Boehner v. Heise*,
2009 WL 1360975 (S.D.N.Y. May 14, 2009) ...................................... 17

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
286 F. Supp. 2d 309 (S.D.N.Y. 2003) ................................................. 14

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, L.L.C.*,
433 F.3d 181 (2d Cir. 2005) ................................................................ 11

*Coe v. RJM, LLC*,
372 F. App'x 188 (2d Cir. 2010) ......................................................... 18

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) .............................. 1, 11, 12

*Cyber Fin. Network v. Lendingtree Inc.*,
2007 WL 623642 (E.D.N.Y. Feb. 22, 2007) ....................................... 14

*Dunlop v. Pan Am. World Airways, Inc.*,
672 F.2d 1044 (2d Cir. 1982) ............................................................. 16

*Esposito v. New York*,
2012 WL 5499882 (S.D.N.Y. Nov. 13, 2012) ..................................... 21

*Freedom, N.Y., Inc. v. United States*,
438 F. Supp. 2d 457 (S.D.N.Y. 2006) ................................................. 15

*Gleason v. Jandrucko*,
860 F.2d 556 (2d Cir. 1988) ......................................................... 22, 23

*Hazel–Atlas Glass Co. v. Hartford–Empire Co.*,
322 U.S. 238 (1944) ...................................................................... 21, 23

*Helene Curtis Indus. v. Dinerstein*,
17 F.R.D. 223 (E.D.N.Y. 1955) .......................................................... 19

*Hunter v. Citibank, N.A.*,
862 F. Supp. 902 (E.D.N.Y. 1994) ..................................................... 19

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
2010 WL 446529 (S.D.N.Y. Feb. 9, 2010) ............................................... 11, 12, 19

*In re Clinton St. Food Corp.*,
254 B.R. 523 (Bankr. S.D.N.Y. 2000) ..................................................... 15

*In re Emergency Beacon Corp.*,
666 F.2d 754 (2d Cir. 1981) ................................................................. 14

*In re Lawrence*,
293 F.3d 615 (2nd Cir. 2002) ............................................................... 16

*In re Motors Liquidation Co.*,
430 B.R. 65 (S.D.N.Y. 2010) ................................................................ 12

*In re Old Carco LLC*,
423 B.R. 40 (Bankr. S.D.N.Y. 2010),
*aff'd*, 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010),
*aff'd sub nom. Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir.
2011) ........................................................................................ 3, 17, 22

*Kuntz v. Pardo*,
160 B.R. 35 (S.D.N.Y. 1993) ................................................................ 2, 15

*Kupferman v. Consol. Research & Mfg. Corp.*,
459 F.2d 1072 (2d Cir. 1972) .............................................................. 21

*Lee v. Marvel Enters., Inc.*,
765 F. Supp. 2d 440 (S.D.N.Y. 2011) ..................................................... 21

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988) ........................................................................ 2, 13

*LinkCo, Inc. v. Akikusa*,
367 F. App'x 180 (2d Cir. 2010) ........................................................... 22

*LinkCo, Inc. v. Akikusa*,
615 F. Supp. 2d 130 (S.D.N.Y. 2009),
*aff'd on other grounds*, 367 F. App'x. 180 (2d Cir. 2010) ........................... 14

*Lujan v. Defenders of Wildlife*,
540 U.S. 555 (1992) ........................................................................ 11

*Motorola Credit Corp. v. Uzan*,
561 F.3d 123 (2d Cir. 2009) ............................................................... 17

*Paddington Partners v. Bouchard*,
34 F.3d 1132 (2d Cir. 1994) ............................................................... 17

*Pichardo v. Ashcroft*,
374 F.3d 46 (2d Cir. 2004) ................................................................. 21

*Rozier v. Ford Motor Co.*,
573 F.2d 1332 (5th Cir. 1978) ............................................................. 16

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009) ................................................. 19

*Travelers Cas. & Sur. Co. v. Crow & Sutton Assoc.*,
   228 F.R.D. 125 (N.D.N.Y. 2005) ...................................................... 14

*United States v. Beggerly*,
   524 U.S. 38 (1998).......................................................................... 23

*United States v. Int'l Bhd. of Teamsters*,
   247 F.3d 370 (2d Cir. 2001) ............................................................ 13

*Warren v. Garvin*,
   219 F.3d 111 (2d Cir. 2000) ............................................................ 15

*Wilson v. City of N.Y.*,
   2009 WL 3614612 (S.D.N.Y. Nov. 2, 2009)....................................... 16

### Rules

Fed. R. Civ. P. 6(b)(2)..................................................................... 15

Fed. R. Civ. P. 60(b) ...................................................................... 11

Fed. R. Civ. P. 60(b)(3)............................................................... 2, 13

Fed. R. Civ. P. 60(b)(6)................................................................... 13

Fed. R. Civ. P. 60(c) ................................................................... 2, 12

Fed. R. Civ. P. 60(c)(1)................................................................... 15

Fed. R. Civ. P. 60(d) ...................................................................... 21

Fed. R. Civ. P. 60(d)(1)................................................................... 22

Fed. R. Civ. P. 60(d)(3)................................................................... 22

Wilmington Trust Company ("**WTC**"), as Trustee for and Administrator of the Motors Liquidation Company General Unsecured Creditors Trust (the "**GUC Trust**"), respectfully submits this response to the amended motion of Doris Powledge Phillips ("**Mrs. Phillips**") for relief from, or to set aside, the August 9, 2010 Stipulation and Settlement Resolving Claim No. 44614.

## INTRODUCTION

In August 2010, Mrs. Phillips and others settled all claims relating to a car crash in October 2005 that resulted in the deaths of Adam Powledge, Mrs. Phillips' husband at the time, and four of their children.  As part of the settlement, Mrs. Phillips' claim, Claim No. 44614, was treated as an allowed general unsecured claim.  In exchange for a payment from Dover Master Fund II, L.P. ("**Dover**"), however, Mrs. Phillips agreed to "unconditionally and irrevocably" transfer to Dover "all rights, title and interest in and to" Claim No. 44614.  Although Mrs. Phillips acknowledged in August 2010 that Dover had become the "sole owner" of Claim No. 44614, Mrs. Phillips has now filed a motion seeking to be relieved from, or to set aside, the settlement of Claim No. 44614.  Mrs. Phillips' motion makes no reference to Dover.

Mrs. Phillips' motion should be denied for multiple independent reasons.  *First*, because she has "unconditionally and irrevocably" transferred to Dover "all rights, title and interest in" Claim No. 44614, Mrs. Phillips does not have standing to pursue relief from the settlement of Claim No. 44614.  *See, e.g., Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 478, 485 (S.D.N.Y. 2012) (holding "all rights, title, and interest" language conferred standing on assignee of fraud-based tort claim); *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 2006 WL 6217754, at *5 (S.D.N.Y. Mar. 31, 2006) ("[B]ecause plaintiff assigned all of its 'right, title and interest in and to' the work," the plaintiff "does not have standing to bring a claim.").

*Second*, even if Mrs. Phillips did have standing to bring this motion (and she does not),
her motion is untimely.  A motion for relief from a judgment, order, or proceeding under Rule
60(b)(1), (2), or (3) may not be filed "more than a year after the entry of the judgment or order or
the date of the proceeding."  Fed. R. Civ. P. 60(c).  In an attempt to evade this limitations period,
Mrs. Phillips has styled her motion as one under Rule 60(b)(6), which allows courts to grant
relief for "any other reason that justifies [it]."  As the Supreme Court has made clear, however, a
Rule 60(b)(6) motion cannot be "premised on one of the grounds for relief enumerated in clauses
(b)(1) through (b)(5)."  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 & n.11
(1988) (noting "clause (6) and clauses (1) through (5) are mutually exclusive").  Here, the
substance of Mrs. Phillips' allegations make clear that the ground upon which she is seeking
relief is Rule 60(b)(3) – *i.e.*, "fraud . . . misrepresentation, or misconduct by an opposing party."
Fed. R. Civ. P. 60(b)(3).  Indeed, the gravamen of Mrs. Phillips' motion is that "GM *fraudulently*
concealed evidence" during discovery for the claims that she settled.  Mot. ¶ 69 (emphasis
added).  Because "substance, rather than form, governs the consideration of a request as a motion
pursuant to Rule 60(b)," *Kuntz v. Pardo*, 160 B.R. 35, 38 (S.D.N.Y. 1993), Mrs. Phillips' motion
is properly viewed as a Rule 60(b)(3) motion subject to, and barred by, the one-year limitations
period for Rule 60(b)(3) motions.

*Third*, Mrs. Phillips has not met her burden of demonstrating "exceptional
circumstances" warranting relief under Rule 60(b).  "Inasmuch as the rule affords extraordinary
judicial relief, courts require a showing . . . that (i) the supporting evidence be highly convincing;
(ii) there be good cause for the movant's failure to act sooner; and (iii) application of the rule not
impose undue hardship on other parties."  *In re Old Carco LLC*, 423 B.R. 40, 45 (Bankr.
S.D.N.Y. 2010), *aff'd*, 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010), *aff'd sub nom. Mauro*

*Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir. 2011) (quotations and citations

omitted). Here, Mrs. Phillips has not satisfied any of these criteria, let alone all of them.

*Fourth*, courts in this Circuit—including this Court in its April 15, 2015 decision on the

Threshold Issues—have repeatedly held that alleged misconduct between parties is not a fraud

on the court. Thus, even if Mrs. Phillips' allegations of discovery misconduct were supported by

highly convincing evidence (and they are not), there would be no ground for setting aside the

settlement of Claim No. 44614 under Rule 60(d)(3).

For these and the other reasons set forth herein, Mrs. Phillips' motion should be denied.

## **FACTUAL BACKGROUND**

### I.    **The 2007 Action**

In October 2005, Adam Powledge and four of his children died in a car crash. Mrs.

Phillips was Mr. Powledge's wife and the mother of the four children.

On September 6, 2007, Mrs. Phillips, acting individually, on behalf of the family

members killed in the crash, and as next friend to Austin Powledge, Mr. Powledge's surviving

son,[1] and Amber Powledge, Mr. Powledge's surviving daughter, sued General Motors

Corporation ("**Old GM**"), alleging that the crash was caused by defects in the family's 2004

Chevrolet Malibu Classic (the "**2007 Action**"). Mot., Ex. 3 (Pls.' Original Pet. & Req. for

Disclosure, *Powledge v. Gen. Motors Corp.*, Cause No. 07-CV-1040 (Tex. Dist. Ct. Galveston

Cnty. 10th Jud. Dist. Sept. 6, 2007)). Mr. Powledge's mother, Mary Powledge (together with

Mrs. Phillips and Austin and Amber Powledge, the "**Powledge Claimants**"), later joined the suit

---

[1]    Connie McNeil later replaced Mrs. Phillips as Austin Powledge's next friend. *See* Dkt. 13090, Ex. 2
(Pls.' Fourth Am. Pet., *Powledge v. Gen. Motors Corp.*, Cause No. 07-CV-1040 (Tex. Dist. Ct.
Galveston Cnty. 10th Jud. Dist. July 3, 2008)).

as a plaintiff.  *See* Mot., Ex. 4 at 3 (Mediation Statement on Behalf of Motors Liquidation

Company (July 27, 2010) ("**Old GM Mediation Statement**")).

In 2008, the Powledge Claimants served Old GM with document requests, including

requests for:

- "[C]omplaints [] wherein any Chevrolet, Pontiac, Oldsmobile or Saturn vehicle that uses the 4 cylinder engine like that used in the [2004 Chevrolet Malibu Classic] was alleged to have experienced unwanted acceleration," Mot. ¶ 18; *see also* Mot., Ex. 7 (Plaintiffs' Second Set of Requests for Production);

- "[R]ecalls, service campaigns, service bulletins, dealer bulletins or by whatever name called" concerning the 2004 Chevrolet Malibu Classic or vehicles with the same four cylinder engine, Mot. ¶ 18; *see also* Mot., Ex. 8 (Plaintiffs' Third Set of Requests for Production);

- "[C]omplaints from owners or dealers where a Saturn, Cobalt, Pontiac, Oldsmobile, or Chevrolet was alleged to experience 'a stuck throttle or speed control issue,'" Mot. ¶ 18; *see also* Mot., Ex. 9 (Plaintiffs' Fourth Set of Requests for Production);

- "[C]laims or lawsuits" involving vehicles with "a stepper motor cruise control" having "unwanted acceleration, sudden acceleration, [or] uncontrolled acceleration," Mot. ¶ 21, *see also* Mot., Ex. 10 (Plaintiffs' Fifth Set of Requests for Production);

- "[D]ocuments [] related to any investigation conducted by [Old GM], or any of its subsidiaries, within the last ten (10) years" concerning any vehicle that may have "experienced cruise control-related" acceleration issues, Mot. ¶ 22; *see also* Mot., Ex. 11 (Plaintiffs' Sixth Set of Requests for Production);

- "Testing to determine" whether the " Ecotec engine" or "any size engine" will "overpower the brakes," Mot. ¶ 22; *see also* Mot., Ex. 11 (Plaintiffs' Sixth Set of Requests for Production); and

- "DFMA, FMEA, [or] fault tree analysis" for the brake system, throttle body, and cruise control.  Mot. ¶ 22; *see also* Mot., Ex. 11 (Plaintiffs' Sixth Set of Requests for Production).

Old GM did not agree to produce all of the documents requested by the Powledge

Claimants.  For example, in responding to a discovery request for all recalls, service bulletins,

and the like concerning any vehicle with a four-cylinder engine similar to that of the family's

2004 Chevrolet Malibu Classic (the "**Subject Vehicle**"), Old GM stated that the universe of

vehicles "using the same components as the subject vehicle would include 2004-2005 N-Cars

equipped with a 2.2L L61 4-cylinder engine that have been marketed as the Chevrolet Classic,

Pontiac Grand Am, and Oldsmobile Alero." Mot., Ex. 15 (Defendant General Motors

Corporation's Amended Objections and Responses to Plaintiffs' Third Set of Requests for

Production) at 3. Accordingly, rather than agreeing to produce all documents called for by the

Powledge Claimants' request, Old GM stated that it would search for and produce any recalls,

service campaigns, service bulletins, and dealer bulletins "relating to the throttle control system

and/or unwanted acceleration in 2004-2005 N-Cars equipped with a 2.2 L61 4-cylinder engine,"

meaning the Chevrolet Classic, Pontiac Grand Am, and Oldsmobile Alero for those years only.

*Id.* at 4. Citing Texas civil procedure rules, Old GM objected to producing any documents

relating to other vehicles. *Id.* at 5.

## II.    GM's Bankruptcy In 2009

On June 1, 2009, Old GM filed a Chapter 11 petition for bankruptcy and a motion

seeking approval to sell substantially all of its assets, pursuant to 11 U.S.C. § 363, to an entity

that became New GM. Dkts. 1, 92. On July 5, 2009, this Court entered an order approving the

sale (the "**Sale Order**"). Dkt. 2967. The sale closed on July 10, 2009. Following the sale, Old

GM changed its name to Motors Liquidation Company ("**MLC**"). *See* Dkt. 3090.

On October 6, 2009, the Court entered an order authorizing MLC to settle claims for an

Allowed Claim value of between $1 million and $50 million so long as the Creditors' Committee

did not object. Dkt. 4180. On November 24, 2009, each of the Powledge Claimants submitted a

separate proof of claim to the Bankruptcy Court for $250 million. Old GM Mediation Statement

at 4.

On February 23, 2010, the Court entered an order directing that all claims against MLC

for personal injury, wrongful death, tort, and product liability, among others, undergo alternative

dispute resolution procedures.  Dkt. 5037.  In June 2010, the parties commenced nonbinding

mediation.  Old GM Mediation Statement at 5.

### III.    In 2010, The Powledge Claimants Settle Their Claims And Transfer To Dover All Rights And Interest In Their Claims

On August 9, 2010, the Powledge Claimants settled their claims.  *See* Stipulation and

Settlement Resolving Claim Nos. 44614, 44615, 44616, 44617 (the "**Settlement**") (Rubin Decl.,

Ex. 1).  The Settlement stated that "after good-faith, arms'-length negotiations," the parties had

agreed that all four claims "shall be treated as allowed general unsecured claims against [MLC]"

for a combined total of $3,975,000.  *Id.* ¶ 1.  Mrs. Phillips' claim, Claim No. 44614, was treated

as an allowed general unsecured claim for $2,699,074.08.  *Id.*  The Settlement entitled Mrs.

Phillips and the other Powledge Claimants to "receive distributions on account of the Allowed

Claims in the form set forth in and pursuant to the terms of a confirmed chapter 11 plan" and

stated that "[u]pon receipt of such distributions . . . the Claims shall be deemed satisfied in full."

*Id.* ¶¶ 2, 3.

On August 20, 2010, Mrs. Phillips agreed to "unconditionally and irrevocably sell,

transfer and assign . . . *all rights, title and interest* in and to" Claim No. 44614 to Dover in

exchange for a payment of $521,000 from Dover.  Dkt. 6793 (Evidence of Transfer of Claim No.

44614) (emphasis added); Dkt. 12845 at 1 (Letter from Mrs. Phillips' counsel to this Court).  The

other Powledge Claimants also sold and transferred their claims to Dover.  *See* Dkts. 6794–96

(Evidence of Transfer of Claim for Amber, Austin and Mary Powledge).

In an Evidence of Transfer document filed with this Court on August 25, 2010, Mrs.

Phillips "waive[d] any objection to the transfer of [her] Claim to [Dover]" and "directed [the

6

Court and MLC] to make all future payments and distributions, and to give all notices and other communications, in respect of the Claim to [Dover]."  Dkt. 6793.

## IV.    In 2011, The GUC Trust Is Formed

On March 29, 2011, this Court entered an order confirming the second amended Chapter 11 Plan filed by MLC and the remaining debtors.  Dkt. 9941.  The Plan became effective on March 31, 2011, and MLC was dissolved on December 15, 2011.  *See, e.g.,* Dkt. 11278.

On March 30, 2011, as part of the Plan confirmation, the GUC Trust was formed.  GUC Trust Agreement § 2.1 (Rubin Decl., Ex. 2).  The GUC Trust is a statutory trust, and WTC is the trustee for and the administrator of the GUC Trust.  The GUC Trust is responsible for distributions to its beneficiaries, which include the holders of Allowed General Unsecured Claims against the Debtors that existed as of March 31, 2011, and holders of units of beneficial interest in the GUC Trust (the "**GUC Trust Units**").  *See* GUC Trust Agreement, Background § F (Rubin Decl., Ex. 2).

Because Mrs. Phillips and the other Powledge Claimants sold and transferred "all rights, title and interest in and to" their claims prior to the formation of the GUC Trust, they are not and have never been GUC Trust Beneficiaries.

## V.    The 2014 Texas Action

In January 2014, New GM issued its first of 84 vehicle recalls in 2014.  *See* Recalls Chart (Rubin Decl., Ex. 3).  Although none of the recalls issued between January and April 2014 covered the Subject Vehicle,[2] Mrs. Phillips filed a lawsuit in Texas state court on April 29, 2014

---

[2]    A search of the Subject Vehicle's Vehicle Identification Number ("VIN") through New GM's online database of the 2014 recalls reflects that the Subject Vehicle was not covered by any of the recalls that New GM issued between January and April 2014.  *Compare* Mot., Ex. 15 at 3 (listing Subject Vehicle's VIN), *with* GM Recall Center, https://recalls.gm.com/#/?vin=1G1ND52F34M598780 (last visited Apr. 15, 2015) (Rubin Decl., Ex. 4).

7

to vacate the Settlement (the "**2014 Texas Action**"), based on a March 31, 2014 recall related to a power steering system. *See* Original Pet. for Bill of Review and Original Pet., *Phillips v. Gen. Motors LLC*, Cause No. 14-CV-0477, at 4-6 (Tex. Dist. Ct. Galveston Cnty. 10th Jud. Dist. Apr. 29, 2014) (Rubin Decl., Ex. 5).

In her original petition for the 2014 Texas Action, Mrs. Phillips alleged that the Subject Vehicle is "identical" to the 2004-2007 Saturn Ion covered by the March 31, 2014 recall, asserted claims for fraud, intentional infliction of emotional distress, and racketeering, and averred that the Settlement should be vacated due to GM's discovery misconduct in connection with the 2007 Action. *See also id.* at 6 ("GM was committing fraud by withholding key documents"); *id.* at 7 ("GM wrongfully and fraudulently withheld evidence"); *id.* at 8 ("GM's extrinsic fraud . . . includes lying under oath and withholding key documents and evidence").

Mrs. Phillips subsequently amended her petition to include New GM's May 15, 2014 recall for "[i]ncreased resistance in the Body Control Module (BCM)." *See* First Am. Pet. for Bill of Review and First Am. Pet., *Phillips v. Gen. Motors LLC*, Cause No. 14-CV-0477, at 4-6 (Tex. Dist. Ct. Galveston Cnty. 10th Jud. Dist. May 30, 2014) (Rubin Decl., Ex. 6). The Subject Vehicle is not covered by the May 15, 2014 recall. *See* New GM Form 8-K, dated May 15, 2014, at 4 (Rubin Decl., Ex. 7).

On June 30, 2014, New GM issued a recall for "unintended ignition key rotation." *See* New GM Form 8-K, dated June 30, 2014, at 6 (Rubin Decl., Ex. 8); New GM Letter to NHTSA, July 7, 2014 (Rubin Decl., Ex. 9). New GM explained that if a covered vehicle's key ring is carrying added weight and the vehicle experiences a "jarring" event, like going off-road, "it may unintentionally move the key away from the 'run' position." GM Recall Center, https://recalls.gm.com/#/?vin=1G1ND52F3M598780 (Rubin Decl., Ex. 4). On July 7, 2014,

Mrs. Phillips filed a second amended petition to include the June 30, 2014 recall. *See* Second Am. Pet., *Phillips v. Gen. Motors LLC*, No. 14-cv-192, at 3-4 (S.D. Tex. July 7, 2014), ECF No. 15 (Rubin Decl., Ex. 10).[3]

In 2014, New GM filed three motions to enforce the Sale Order and enjoin certain lawsuits from proceeding against New GM. One of those motions, the "**Pre-Closing Accident Motion**," encompassed the 2014 Texas Action because the 2014 Texas Action seeks damages from New GM for personal injury and wrongful death arising from a pre-Sale accident. Dkt. 12807 at 19-20 (expressly listing *Phillips* as among the covered lawsuits).

Despite adding the June 30, 2014 "unintended ignition key rotation" recall to her second amended petition, Mrs. Phillips subsequently disavowed any relationship between the October 2005 Powledge car crash and any of the ignition switch-related recalls. In opposing the Pre-Closing Accident Motion and seeking relief from the Court's stay of any litigation implicated by New GM's motions to enforce, Mrs. Phillips argued that because the Powledge crash was "substantially caused by other recalls, not the ignition switch recall," she needed to conduct discovery "specific to *her* recalls." Dkt. 12845 at 2 (emphasis added). At a hearing where he sought to have Mrs. Phillips' case proceed ahead of those of other Pre-Closing Accident

---

[3]     The GUC Trust is not a general successor to the Old GM estate. Instead, the Plan, the Confirmation Order, and the GUC Trust Agreement each make clear that the GUC Trust is Old GM's successor solely within the meaning of Section 1145 of the Bankruptcy Code, which exempts the GUC Trust from the requirements of Section 5 of the Securities Act of 1933 in connection with its distribution of New GM Securities and GUC Trust units. *See* Dkt. 9836 § 6.6; Dkt. 9941 ¶ 13; GUC Trust Agreement, Background § E (Rubin Decl., Ex. 2); *see also* Dkt. 12930 at 9-12.

Nevertheless, in her amended pleadings, Mrs. Phillips named "General Motors Corporation n/k/a Motors Liquidation GUC Trust" as a defendant. First Am. Pet. (Rubin Decl., Ex. 5). Although the amended pleadings erroneously stated that the GUC Trust was the successor to Old GM, the GUC Trust agreed to accept service for the limited purpose of moving to dismiss the Second Amended Petition. Agreed Stipulation Regarding Service and Answer Deadline, *Phillips v. Gen. Motors LLC*, No. 3:14-cv-00192 (S.D. Tex. July 31, 2014), ECF No. 33-8 (Rubin Decl., Ex. 11).

plaintiffs, Mrs. Phillips' counsel reiterated that the "actual cause" of the October 2005 Powledge

car crash was not an ignition switch defect:

> With regard to *my client's specific recall* that we think is the actual cause of this
> wreck, which is a May 15th [sic] recall that *does not impact or implicate the
> ignition switch, but is solely about a brake wiring harness that has not been the
> subject of the Valukas report*, has not been the subject of multiple congressional
> hearings in which GM provided documents, and certainly would not be discussed
> significantly in what's already been ordered to be delivered . . . by the MDL, my
> client is prejudiced from being able to adequately brief the merits of her fraud
> claim that is specific to her and to the recall that we think most closely fits the
> facts as [we] know them in terms of what caused the upside lying wreck.

Hr'g Tr. Aug. 18, 2014, 78:3-15 (Rubin Decl., Ex. 12) (emphasis added).  Mrs. Phillips' counsel

asked for an expanded briefing schedule and discovery to ascertain "what GM knew or when it

knew or when it didn't disclose information or documents to either this Court or to [Mrs.

Phillips]."  *Id.* at 84:10-12.  After this request was denied, Mrs. Phillips entered into a stipulation

on September 4, 2014 that stays the 2014 Texas Action until the resolution of the Threshold

Issues.  Agreed Stay Stipulation, *Phillips v. Gen. Motors LLC*, No. 3:14-cv-00192 (S.D. Tex.

Sept. 4, 2014), ECF No. 45 (Rubin Decl., Ex. 13).  On October 21, 2014, the 2014 Texas Action

was transferred to the Southern District of New York and consolidated with MDL No. 2543 for

pre-trial purposes.  Transfer Order, *Phillips v. Gen. Motors LLC*, No. 3:14-cv-00192 (S.D. Tex.

Oct. 21, 2014), ECF No. 48 (Rubin Decl., Ex. 14).

## VI.    **The 2015 Rule 60 Motion**

On February 2, 2015, Mrs. Phillips filed a Rule 60 motion with this Court.  *See* Dkt.

13071.  On February 23, 2015, Mrs. Phillips filed an amended motion.  *See* Dkt. 13090.

Although Mrs. Phillips no longer holds any rights or interest in Claim No. 44614, Mrs. Phillips

asks the Court to relieve her of all obligations under the Settlement so that she can pursue Claim

No. 44614 as a pre-sale accident claim.  Mot. ¶¶ 6, 49.

# ARGUMENT

## I.    Mrs. Phillips Does Not Have Standing To Bring This Motion

Relief under Rule 60(b) is only available to "a party or a party's legal representative."

Fed. R. Civ. P. 60(b).  Although Mrs. Phillips *was* a party to the 2007 Action, and settled Claim

No. 44614, she "unconditionally and irrevocably" transferred "all rights, title and interest in and

to" her claim to Dover and recognized Dover as "the sole owner and holder of the Claim" in a

filing with this Court on August 20, 2010.  Dkt. 6793.[4]  As a result, Dover is the "sole owner" of

Claim No. 44614.  *See Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 2006 WL

6217754, at *5 (S.D.N.Y. Mar. 31, 2006) ("[B]ecause plaintiff assigned all of its 'right, title and

interest in and to' the work," the plaintiff "does not have standing to bring a claim").

Because neither Mrs. Phillips nor any of the other Powledge Claimants owns or holds any

rights to Claim No. 44614, she is not eligible for relief under Rule 60(b) as either "a party or a

party's legal representative."  *See In re Britannia Bulk Holdings Inc. Sec. Litig.*, 2010 WL

446529, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s he is neither a 'party' nor a 'legal representative'

of a party in this action, Wildes does not have standing to obtain Rule 60(b)(6) relief.").

Mrs. Phillips also lacks Article III standing because she does not, and cannot,

demonstrate a sufficiently particularized and concrete injury in fact, fairly traceable to the

challenged action, that would be redressed by a ruling in her favor.  *See Lujan v. Defenders of

Wildlife*, 540 U.S. 555, 560-61 (1992); *Cent. States S.E. & S.W. Areas Health & Welfare Fund v.

Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack

Article III standing, a court has no subject matter jurisdiction to hear their claim."); *In re Motors*

---

[4]    The other Powledge Claimants likewise "unconditionally and irrevocably" transferred "all rights, title
and interest in and to" Claim Nos. 44615, 44616, and 44617 to Dover and recognized Dover as "the
sole owner and holder of the Claim[s]."  Dkts. 6794-6796.

*Liquidation Co.*, 430 B.R. 65, 92 (S.D.N.Y. 2010) (applying constitutional standing requirements to bankruptcy courts, which operate under delegated authority of Article III courts).

Because Mrs. Phillips has assigned to Dover all of her rights to Claim No. 44614, she lacks the requisites for Article III standing.  Indeed, courts have repeatedly found the *exact* language used in the transfer agreements with Dover sufficient to confer standing on an assignee and strip the assignor of standing to assert tort-based claims.  *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 478, 485 (S.D.N.Y. 2012) (holding "all rights, title, and interest" language conferred standing on assignee of fraud-based tort claim); *Contractual Obligation Prods.*, 2006 WL 6217754, at *5 ("[B]ecause plaintiff assigned all of its 'right, title and interest in and to' the work," the plaintiff "does not have standing to bring a claim").

Given that Dover is the "sole owner" of Claim No. 44614, Mrs. Phillips has no standing to pursue relief from, or set aside, the Settlement of Claim No. 44614.  Accordingly, Mrs. Phillips' Rule 60 motion must be denied.  *See Britannia Bulk Holdings*, 2010 WL 446529, at *2; *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 2009 WL 1110788, at *1 (S.D.N.Y. Apr. 23, 2009), *aff'd*, 671 F.3d 140 (2d Cir. 2011) (denying Rule 60 relief for lack of standing).

## II.    <u>Mrs. Phillips' Motion Is Time-Barred</u>

Even if Mrs. Phillips had standing to bring this motion (and she does not), her motion is time-barred.  A motion for relief from a final judgment, order, or proceeding under Rule 60(b)(1), (2), or (3)—which concern mistakes, newly-discovered evidence, fraud, misrepresentations, and misconduct—may not be granted "more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c).  In an attempt to evade this one-year limitations period, Mrs. Phillips claims she is proceeding under Rule 60(b)(6), which allows courts to grant relief for "any other reason that justifies [it]."  Fed. R. Civ. P.

60(b)(6).  As explained below, however, it is the substance of Mrs. Phillips' motion, not how the
motion is styled, that governs.

### A. The Substance Of Mrs. Phillips' Allegations Confirms That Her Motion Is A Rule 60(b)(3) Motion, Not A Rule 60(b)(6) Motion

A Rule 60(b)(6) motion cannot be "premised on one of the grounds for relief enumerated
in clauses (b)(1) through (b)(5)."  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847,
863 & n.11 (1988) (noting "clause (6) and clauses (1) through (5) are mutually exclusive"); *see
also United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391-92 (2d Cir. 2001) ("[I]f the
reasons offered for relief from judgment can be considered in one of the more specific clauses of
Rule 60(b), such reasons will not justify relief under Rule 60(b)(6).").

Here, the substance of Mrs. Phillips' allegations make clear that the ground upon which
she is seeking relief is Rule 60(b)(3) – *i.e.*, "fraud . . . misrepresentation, or misconduct by an
opposing party."  Fed. R. Civ. P. 60(b)(3).  Indeed, the gravamen of Mrs. Phillips' motion is that
"GM *fraudulently* concealed evidence material" to the 2007 Action.[5]  Mot. ¶ 69 (emphasis
added).  Each of her filings and appearances in connection with the 2014 Texas Action similarly
frame the issue as one of discovery fraud.  *See, e.g.*, Aug. 18, 2014 Hr'g Transcript at 78
(seeking a stay in order to pursue "her fraud claim"); Dkt. 12845 at 1-2 (accusing GM of
"fraudulent concealment" and explaining "Phillips has brought suit for this fraud"); Dkt. 12847
¶¶ 11, 18, 20, 21 (objecting to motion to enforce and accusing GM of "fraudulently
conceal[ing]" information and "committing fraud"); Original Pet. at 3 (Rubin Decl., Ex. 5) ("GM
fraudulently concealed this information."), 6 ("GM was committing fraud by withholding key
documents."), 7 ("In the prior suit GM wrongfully and fraudulently withheld evidence."), 8

---

[5]  Mrs. Phillips expressly disavows seeking relief under Rule 60(b)(1) or Rule 60(b)(2).  *See* Mot. ¶ 57
("Phillips' Motion does not concern a mistake as described in the case law . . . [and] is not about
newly discovered evidence.").

("GM's extrinsic fraud . . . includes lying under oath and withholding key documents and

evidence."); First Am. Pet. (Rubin Decl., Ex. 6) at 6, 9, 10, 11 (making same allegations);

Second Am. Pet. (Rubin Decl., Ex. 10) at 6, 8, 10, 11.

Courts have made clear that Rule 60(b)(3) is the proper avenue for relief based on

allegations, such as Mrs. Phillips', that "material information has been withheld" by an adversary

during discovery. *In re Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir. 1981) (citing 7

Moore's Federal Practice P 60.24(5) (2d ed. 1979)); *LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d

130, 136-37 (S.D.N.Y. 2009), *aff'd on other grounds*, 367 F. App'x. 180, 182 (2d Cir. 2010);

*Travelers Cas. & Sur. Co. v. Crow & Sutton Assoc.*, 228 F.R.D. 125, 131-32 (N.D.N.Y. 2005);

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 313-14 (S.D.N.Y. 2003).

Moreover, to the extent that Mrs. Phillips now suggests that Old GM's discovery failures

may have been unintentional, *see* Mot. ¶¶ 8, 57, "[e]ven an accidental failure to disclose or

produce materials requested in discovery" falls "within the purview of Rule 60(b)(3)." *Catskill*,

286 F. Supp. 2d at 314 (collecting authorities so holding). Thus, courts in the Second Circuit

have repeatedly denied motions materially similar to Mrs. Phillips' motion—where one party

purports to qualify for "extraordinary" relief under Rule 60(b)(6) because its adversary allegedly

committed misconduct during discovery—as improperly pursuing Rule 60(b)(3) relief under the

guise of Rule 60(b)(6). *See, e.g.*, *LinkCo*, 615 F. Supp. 2d at 136 ("Because the instant action

alleges that Fujitsu acted fraudulently in *LinkCo I*, this action can only proceed under Rule

60(b)(3)" and not under Rule 60(b)(6)); *Cyber Fin. Network v. Lendingtree Inc.*, 2007 WL

623642, at *3 (E.D.N.Y. Feb. 22, 2007) (denying 60(b) motion filed later than one year after

judgment where "Plaintiff's claim [was] properly characterized as a claim for misrepresentation

14

of an adverse party under Rule 60(b)(3), rather than as a claim under the general residual

provision of Rule 60(b)(6).").

Because "substance, rather than form, governs the consideration of a request as a motion

pursuant to Rule 60(b)," *Kuntz v. Pardo*, 160 B.R. 35, 38 (S.D.N.Y. 1993), Mrs. Phillips' motion

is properly viewed as a Rule 60(b)(3) motion, rather than a Rule 60(b)(6) motion.

### B.    Mrs. Phillips Did Not File Her Motion Within The One-Year Limitations Period For Rule 60(b)(3) Motions

Rule 60(b)(3) motions "*must* be made . . . no more than a year after the entry of the

judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1) (emphasis added).

"This limitations period is 'absolute.'" *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000)

(quoting 12 James Wm. Moore, Moore's Federal Practice § 60.65[2][a], at 60-200 (3d ed.

1997)); *see* Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under . . . 60(b).").

Thus, Mrs. Phillips had until one year after the entry of the Stipulation and Settlement of Claim

No. 44614, or until August 9, 2011, to seek relief under Rule 60(b)(3). Because Mrs. Phillips did

not file her motion until several years later in February 2015, the motion is time-barred.

Mrs. Phillips argues that the one-year limitations period is subject to a discovery rule.

*See* Mot. ¶ 57. However, "the plain language of [Rule 60(b)(3)] creates no exception for

evidence or fraud discovered more than a year after judgment." *Freedom, N.Y., Inc. v. United

States*, 438 F. Supp. 2d 457, 465 (S.D.N.Y. 2006); *see also In re Clinton St. Food Corp.*, 254

B.R. 523, 532 (Bankr. S.D.N.Y. 2000) ("Further, the trustee has not pointed to any authority

suggesting that ignorance of the claims tolls the period of limitations under Fed. R. Civ. P.

60(b)(3). To the contrary, the one-year period is an absolute, outside limit, and a court lacks the

power to grant motions filed beyond that time."). Thus, the one-year limitations period is

"absolute," irrespective of any alleged discovery misconduct.  *See, e.g.*, *Wilson v. City of N.Y.*, 2009 WL 3614612, at \*1-2 (S.D.N.Y. Nov. 2, 2009).

Mrs. Phillips erroneously relies on *In re Lawrence*, 293 F.3d 615 (2d Cir. 2002).  In *Lawrence*, the Second Circuit did not, as Mrs. Phillips contends, "apply[] the discovery rule to the revelation of the fraud."  Mot. ¶ 67.  Instead, the Second Circuit expressly *rejected* tolling the one-year limitations period until the plaintiffs' discovery of the fraud and determined that the motion was timely because it was brought "on the last possible day" before the one-year time limit to move for relief from the applicable order under Rule 60(b)(3) expired.  *Id.* at 626 n.9.[6] Similarly, in *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978), the Fifth Circuit observed that the plaintiff's Rule 60(b)(3) motion been filed within one year after entry of the judgment in the proceeding.  *Id.* at 1337.  Unlike the movants in *Lawrence* and *Rozier*, Mrs. Phillips did not file her motion within the one-year limitations period.

Mrs. Phillips also mistakenly relies on *Dunlop v. Pan American World Airways, Inc.*, 672 F.2d 1044 (2d Cir. 1982).  The movants in *Dunlop* were *pro se* plaintiffs whose state-law claims had been inadvertently precluded by a federal settlement between the government and the plaintiffs' employer; the case involved no allegations of fraud, new evidence, or discovery misconduct.  *Id.* at 1051.  Because the plaintiffs' claims did "not fall within the specific terms of subsections (b)(1)-(5)," and therefore were not subject to the one-year time limit, *id.*, the court held that Rule 60(b)(6) relief was appropriate where plaintiffs were improperly prevented from bringing their underlying claims in any forum.  *Id.* at 1053.  Here, by contrast, Mrs. Phillips'

---

[6]    Mrs. Phillips also erroneously asserts that *Lawrence* condones "the plaintiffs' ability to recast their requested relief as a Rule 60(b)(6) motion."  Mot. ¶ 67.  *Lawrence* did not even address, much less condone, a plaintiff's attempt to recast a Rule 60(b)(3) motion as a Rule 60(b)(6) motion.  Instead, the *Lawrence* plaintiffs filed a fraud complaint that the Second Circuit determined was properly viewed as a Rule 60(b)(3) motion in light of the unique circumstances of the case.  293 F.3d at 617.

motion is grounded on alleged discovery misconduct and fraud that falls squarely within Rule 60(b)(3) and therefore is subject to the one-year limitations period applicable to Rule 60(b)(3) motions.

Mrs. Phillips has not cited, and the GUC Trust is unaware of, any case in which a court has tolled the one-year limitations period for Rule 60(b)(3) motions. Because Mrs. Phillips did not file her motion within one year after the Stipulation and Settlement of Claim No. 44614, her motion is time-barred.

### III. Mrs. Phillips Has Not Met Her Burden Of Showing That There Are "Exceptional Circumstances" Warranting Relief Under Rule 60(b)

Even if Mrs. Phillips' motion were timely (and it is not), it still must be denied because Mrs. Phillips has not met her burden of demonstrating "exceptional circumstances" warranting "extraordinary judicial relief" under Rule 60(b). *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994); *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009).

"Inasmuch as the rule affords extraordinary judicial relief, courts require a showing . . . that (i) the supporting evidence be highly convincing; (ii) there be good cause for the movant's failure to act sooner; and (iii) application of the rule not impose undue hardship on other parties." *In re Old Carco LLC*, 423 B.R. at 45 (quotations and citations omitted); *see also Boehner v. Heise*, 2009 WL 1360975, at *5 (S.D.N.Y. May 14, 2009) ("[T]he evidence in support of a 60(b)(6) motion must be highly convincing; there must be a showing that undue hardship will not result to other parties by granting the relief; and the movant must demonstrate that he possesses a meritorious claim or defense." ).

Here, Mrs. Phillips has not satisfied any of these criteria, let alone all of them. *First*, Mrs. Phillips has not provided "highly convincing" evidence to support her allegations. For example, although Mrs. Phillips contends that Old GM withheld the production of documents in

connection with the 2007 Action, she does not attach or even reference the bulk of Old GM's

responses and objections to the Powledge Claimants' document requests and makes no attempt

to compare what Old GM stated it would produce against what Old GM actually produced.  In

affirming the denial of a Rule 60(b) motion, the Second Circuit explained that "unsubstantiated

allegations" unsupported "by any affidavits or other evidence" will not satisfy a movant's

burden.  *Coe v. RJM, LLC*, 372 F. App'x 188, 190 (2d Cir. 2010) (summary order).  Yet Mrs.

Phillips repeatedly makes allegations unsupported by any evidence:

- Mrs. Phillips posits, without any supporting evidence, that the Subject Vehicle
  is "identical" to the 2004-2007 Saturn Ion and the 2005-2006 Pontiac G6s,
  which contain power steering and brake lamp defects allegedly concealed by
  Old GM during discovery in the 2007 Action and subject to related recalls
  issued in 2014.  Yet the Subject Vehicle is not included in the power steering
  and brake lamp recalls that cover the 2004-2007 Saturn Ion and the 2005-2006
  Pontiac G6s.  *Compare* Mot. ¶¶ 10, 27, 30–31, *with* New GM Form 8-K,
  dated Mar. 31, 2014, at 4 (Rubin Decl., Ex. 15) *and* New GM Form 8-K,
  dated May 15, 2014, at 4 (Rubin Decl., Ex. 7).[7]

- Mrs. Phillips posits, without any supporting evidence, that the Subject Vehicle
  is interchangeable with the 2004 Chevrolet Malibu, which was subject to the
  power steering and brake lamp recalls, but the evidence shows just the
  opposite.  *Compare* Mot. ¶ 10, *with* Anita Lienert, "Malibu Spiffs Up Image,
  Takes on Asian Rivals," *Detroit News*, Sept. 3, 2003 (noting that 2004
  Chevrolet Malibu was built on the Epsilon platform, as compared with "the
  old Malibu, renamed 'Chevy Classic'") (Rubin Decl., Ex. 16), *and* Fred
  Gregory, "Chevrolet Malibu: Just Don't Call It a Rental Car," *Car and Driver*,
  Oct. 2003 (Rubin Decl., Ex. 17) (contrasting 2004 Chevrolet Malibu, built on
  the Epsilon platform, with the "old model, which will continue to be produced
  under a new name, the Chevrolet Classic").[8]

---

[7] Mrs. Phillips erroneously asserts that the "Subject Vehicle was included in the list of vehicles that
were recalled" through the March 31, 2014 power steering recall.  Mot. ¶ 10.  Searches of the Subject
Vehicle's VIN through both New GM's and NHTSA's databases confirm that the Subject Vehicle
was not covered by that recall.  *See* GM Recall Center, https://recalls.gm.com/#/?vin=1G1ND52
F34M598780 (Rubin Decl., Ex. 4); Printout of NHTSA VIN Database Search (Rubin Decl., Ex. 18).

[8] Correspondence between New GM and NHTSA reflects that the 2004 Malibu Classic falls under a
different model series of vehicles than the 2004 Malibu and 2004 Malibu Maxx.  *Compare, e.g.*, New
GM Letter to NHTSA, dated Mar. 31, 2014 (Rubin Decl., Ex. 19) (listing 2004 Malibu and 2004
Malibu Maxx as Z model series) *with* New GM Letter to NHTSA, dated July 16, 2014 (Rubin Decl.,
Ex. 20) (listing 2004 Malibu Classic as N model series).

- Mrs. Phillips posits as fact unadjudicated allegations from the Post-Sale Consolidated Complaint in the MDL Action that "New GM" knew about the brake light defect "for years" before issuing the May 14, 2014 recall, but "paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009). Moreover, the allegations from the Post-Sale Consolidated Complaint that Mrs. Phillips cites make no allegation about when or how *Old GM* supposedly learned about the brake light defect. *See, e.g.*, Mot. ¶ 24 (citing Post-Sale Consolidated Complaint ¶¶ 564-66).[9]

*Second*, Mrs. Phillips has not demonstrated good cause for not filing her Rule 60 motion sooner. Mrs. Phillips filed her motion nearly *five years* after the challenged August 9, 2010 Stipulation and Settlement Resolving Claim No. 44614. Even if Rule 60(b)(6) motions are subject to a "discovery rule," as Mrs. Phillips contends, *see* Mot. ¶ 55, it is undisputed that Mrs. Phillips waited *ten months* after filing the Texas Action before filing her Rule 60 motion. *See, e.g., Barry v. Atkinson*, 193 F.R.D. 197, 198 (S.D.N.Y. 2000) (60(b)(6) motion untimely where movant waited nine months to take issue with the court's findings of fact); *Hunter v. Citibank, N.A.*, 862 F. Supp. 902, 906 (E.D.N.Y. 1994) (delay of seven months unreasonable); *Helene Curtis Indus. v. Dinerstein*, 17 F.R.D. 223, 225 (E.D.N.Y. 1955) (delay of 8 months unreasonable); *see also Britannia Bulk Holdings*, 2010 WL 446529, at *3 (Rule 60(b)(6) challenge "can hardly be construed as 'prompt' when it comes ten months after" the underlying order it challenges).

Rather than file her Rule 60 motion contemporaneously with, or promptly after, the filing of the 2014 Texas Action last April, Mrs. Phillips:

- Amended her pleadings once in state court and then again in federal court, after New GM removed the 2014 Action to the Southern District of Texas;

---

[9]    The Post-Sale Consolidated Complaint can be found at *In re General Motors LLC Ignition Switch Litig.*, Index. No. 14-MD-2543 (JMF), Dkt. 345 (S.D.N.Y. Oct. 14, 2014).

- Objected to New GM's motion to enforce the Pre-Closing Accident Lawsuits through her own brief;

- Filed a No-Stay Pleading in an effort to continue litigating the 2014 Action;

- Appeared, through counsel, at an August 2014 hearing, where she argued against the stay of the 2014 Texas Action and requested immediate discovery to demonstrate Old GM's knowing failure to disclose information concerning the brake wiring harness at the center of the May 14, 2014 recall; and

- Participated in the Threshold Issues briefing and related negotiations among counsel.

Thus, despite ample opportunities to raise her purported need for Rule 60 relief, Mrs. Phillips directed her focus to other litigation matters and allowed ten months to elapse before filing the Rule 60 motion in February 2015.  The failure of Mrs. Phillips' counsel to appreciate the continuing jurisdiction of this Court over the Settlement does not constitute "good cause" for her failure to bring this motion sooner.[10]

*Third*, any disruption of the Settlement would impose an undue hardship on the existing GUC Trust Beneficiaries, to whom WTC has an ongoing fiduciary duty to protect GUC Trust Assets.  Should Claim No. 44614 be excused from the Settlement, the GUC Trust will have to reopen litigation of that claim and reserve securities for an assumed $55 million claim (the previously agreed-upon cap per the court-ordered ADR procedures) pending allowance or disallowance.  Moreover, in addition to litigation expenses associated with the claim, the GUC Trust will need to withhold from distribution the value necessary to pay the ongoing fees and

---

[10]  Mrs. Phillips' ten-month delay in pursuing Rule 60 relief also underscores that any claim she might assert against the GUC Trust would be equitably moot.  In addition to belatedly seeking Rule 60 relief, Mrs. Phillips "fail[ed] to seek a stay of *additional* distributions to Old GM creditors and Unitholders after [she] learned, on October 24, 2014, that the GUC Trust announced that it was planning on making another distribution."  Threshold Issues Opinion at 119-20 (Dkt. 13109).  Because Mrs. Phillips has not "pursued with diligence all available remedies" (*id.* at 111), she cannot satisfy the five factors in *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 952-53 (2d Cir. 1993).  Thus, even if Mrs. Phillips were to obtain Rule 60 relief, any claim against the GUC Trust would be equitably moot.  *See* Threshold Issues Opinion at 110-11 (Dkt. 13109).

expenses of the Trust as the dispute progresses for potentially years (including, but not limited to, legal fees, SEC Reporting and Transfer Costs, insurance costs for the Trust and other costs of administration).   The delay and dilution of distributions to GUC Trust Beneficiaries caused by the relief sought on this motion would impose a substantial hardship on GUC Trust Beneficiaries and would be fundamentally unfair.

Because Mrs. Phillips has not met her burden of demonstrating "exceptional circumstances" warranting "extraordinary judicial relief" under Rule 60(b), her motion should be denied.  *See Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004); *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 448 (S.D.N.Y. 2011).

## IV.   As A Matter Of Law, Alleged Discovery Misconduct Does Not Warrant Relief Under Rule 60(d)

Mrs. Phillips' request for relief under Rule 60(d) should also be denied.  As the Court explained in its Threshold Issues Opinion, "'fraud on the court' under Fed. R. Civ. P. 60(d)(3) embraces 'only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.'"  Dkt. 13109 at 125-26 (quoting *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972)).  Therefore, relief under Rule 60(d)(3) "can be granted only where there has been not just an impact on the *accuracy of outcome* of the Court's adjudicative process, but also on the *integrity of the judicial process itself*, and then only where a denial of relief would be 'manifestly unconscionable.'"  Dkt. 13109 at 128-29 (quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238 (1944)); *see also Esposito v. New York*, 2012 WL 5499882, at *2 (S.D.N.Y. Nov. 13, 2012) (noting fraud on the court refers to "the most egregious conduct involving a corruption of the judicial process

itself," such as "bribing a judge, employing counsel to exert improper influence on the court, and

jury tampering" (quotation and citation omitted)).

Here, Mrs. Phillips does not identify any evidence of a fraud on the court.  Instead, she

contends that there was non-disclosure of information requested in discovery, which, under

Second Circuit law, is not a fraud on the court:  "[N]either perjury nor nondisclosure, by itself,

amounts to anything more than fraud involving injury to a single litigant."  *Gleason v.

Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988); *accord LinkCo, Inc. v. Akikusa*, 367 F. App'x. 180,

182 (2d Cir. 2010) (applying *Gleason* and rejecting relief despite allegations of "obstruction of

discovery and witness perjury").  As this Court explained in its Threshold Issues decision,

"'[o]bviously [Rule 60(d)(3)] cannot be read to embrace any conduct of an adverse party of

which the court disapproves; to do so would render meaningless the one-year limitation on

motions under F.R.Civ.P. 60(b)(3).'"  Dkt. 13109 at 126 (quoting *Kupferman*, 459 F.2d at 1078);

*see also In re Old Carco*, 423 B.R. at 52 ("[M]otions under 60(d)(3) for fraud on the court must

encompass conduct *other than that proscribed by Rule 60(b)(3)*.") (emphasis added).  Because

Mrs. Phillips alleges at most discovery misconduct as between the parties, she cannot, as a matter

of law, establish a fraud on the court for purposes of Rule 60(d)(3).[11]

Alleged discovery misconduct is also insufficient for relief under Rule 60(d)(1).

"Independent actions [under Rule 60(d)(1)] must, if Rule 60(b) is to be interpreted as a coherent

whole, be reserved for those cases of 'injustices which, in certain instances, are deemed

---

[11]    Mrs. Phillips's allegations of fraud on the court are also insufficient because she does not allege that
any lawyer communicating with the court as part of the litigation, mediation, or settlement of her
claim knew about any alleged fraud relating to the defects at issue.  *See* Threshold Issues Opinion at
131 (Dkt. 13109) ("There must be a direct nexus between the knowledge and intent of any wrongdoer
and communications to the court.  If the fraud has taken place elsewhere (and is unknown to those
actually communicating with the court), the requisite attempt to defile the Court itself and subvert the
legal process is difficult, if not impossible, to show.")

sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata."

*United States v. Beggerly*, 524 U.S. 38, 46 (1998) (citing *Hazel–Atlas*, 322 U.S. at 244).  That

standard is not met here, "where the most that may be charged . . . is a failure to furnish relevant

information that would at best form the basis for a[n] [untimely] Rule 60(b)(3) motion."  *Id.*; *see*

*also Gleason*, 860 F.2d at 559-60 ("[A]llegations of nondisclosure during pretrial discovery do

not constitute grounds for an independent action [under Rule 60(d)(1)].").

## **CONCLUSION**

For all these reasons, Mrs. Phillips' motion should be denied.


Dated:    New York, New York            Respectfully submitted,
          April 20, 2015

                                         GIBSON, DUNN & CRUTCHER LLP

                                         By:    /s/ Aric H. Wu
                                             Adam H. Offenhartz
                                             Matthew J. Williams
                                             Aric H. Wu
                                             Lisa H. Rubin

                                         200 Park Avenue
                                         New York, New York 10166
                                         Telephone:   (212) 351-4000
                                         Facsimile:   (212) 351-4035

                                         *Attorneys for Wilmington Trust Company,*
                                         *as Trustee for and Administrator of the*
                                         *Motors Liquidation Company General*
                                         *Unsecured Creditors Trust*