Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5                                        Chapter 11

6    MOTORS LIQUIDATION COMPANY,         Case No.: 09-50026(REG)

7    et al, f/k/a General Motors         (Jointly Administered)

8    Corp., et al.,

9

10            Debtors.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                    U.S. Bankruptcy Court

14                    One Boling Green

15                    New York, New York

16

17                    August 18, 2014

18                    9:46 AM

19

20

21   B E F O R E :

22   HON ROBERT E. GERBER

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1   Hearing re:  Threshold Issues Letters, filed pursuant to the

2   Supplemental Scheduling Order, Dated July 11, 2014.

3

4   Hearing re:  Motion of General Motors LLC Pursuant to 11

5   U.S.C. § 105 And 363 To Enforce the Sale Order And

6   Injunction ("Motion to Enforce"), filed by General Motors

7   LLC (ECF 12620, 12621).

8

9   Hearing re:  Motion of General Motors LLC Pursuant to 11

10  U.S.C. §§ 105 and 363 to Enforce This Court's July 5, 2009

11  Sale Order And Injunction Against Plaintiffs In Pre-Closing

12  Accident Lawsuits ("Pre-Closing Accident Lawsuits Motion to

13  Enforce"), filed by General Motors LLC (ECF 12807).

14

15  Hearing re:  Motion of General Motors LLC Pursuant to 11

16  U.S.C. §§ 105 and 363 To Enforce This Court's July 5, 2009

17  Sale Order And Injunction (Monetary Relief Actions, Other

18  than Ignition Switch Actions)("Monetary Relief Actions

19  Motion to Enforce"), filed by General Motors LLC (ECF

20  12808).

21

22

23

24

25  Transcribed by:  Dawn South

Page 3

1    A P P E A R A N C E S :

2    KING & SPALDING LLP

3         Attorneys for General Motors LLC

4         1185 Avenue of the Americas

5         New York, NY 10036-4003

6

7    BY:  ARTHUR J. STEINBERG, ESQ.

8         SCOTT DAVIDSON, ESQ.

9

10   KIRKLAND & ELLIS

11        Attorney for New GM

12        300 North LaSalle

13        Chicago, IL 60654

14

15   BY:  RICHARD C. GODFREY, P.C., ESQ.

16

17   STUZMAN, BROMBERG, ESSERMAN & PLIFKA

18        Attorney for the Plaintiffs

19        2323 Bryan Street

20        Suite 2200

21        Dallas, TX 75201-2689

22

23   BY:  SANDER L. ESSERMAN, ESQ.

24

25

Page 4

1   BROWN RUDNICK LLP

2        Attorneys for Plaintiffs

3        Seven Times Square

4        New York, NY 10036

5

6   BY:  EDWARD WEISFELNER, ESQ.

7        DAVID J. MOLTON, ESQ.

8        HOWARD S. STEEL, ESQ.

9

10  GOODWIN ROCTER LLP

11       Attorneys for Hilliard, et al.

12       The New York Times Building

13       620 Eighth Avenue

14       New York, NY 10018

15

16  BY:  WILLIAM P. WEINTRAUB, ESQ.

17       EAMONN O'HAGAN, ESQ.

18

19  AKIN GUMP STRAUSS HAUER & FELD LLP

20       Attorney for Holders of Units in the GUC Trust

21       One Bryant Park

22       New York, NY 10036-6745

23

24  BY:  DANIEL H. GOLDEN, ESQ.

25

Page 5

```
 1   CAPLIN & DRYSDALE, CHARTERED

 2        Attorney for Holders of Units in the GUC Trust

 3        600 Lexington Avenue

 4        21st Floor

 5        New York, NY 10022-7619

 6

 7   BY:  ELIHU INSELBUCH, ESQ.

 8

 9   GIBSON, DUNN & CRUTCHER LLP

10        Attorney for Motors Liquidation GUC Trust

11        200 Park Avenue

12        New York, NY 10166-0193

13

14   BY:  LISA H. RUBIN, ESQ.

15

16   GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

17        Attorneys for the Plaintiffs

18        437 Madison Avenue

19        New York, NY 10022

20

21   BY:  JONATHAN FLAXER, ESQ.

22

23

24

25
```

Page 6

1    LAW OFFICES OF JOSH DAVIS

2         Attorney for Dori Powledge

3         1010 Lamar

4         Suite 200

5         Houston, TX 77002

6

7    BY:  JOSH DAVIS, ESQ.

8

9    HAGENS BERMAN SOBOL SHAPIRO LLP

10        555 Fifth Avenue

11        Suite 1700

12        New York, NY 10017

13

14   BY:  JASON A. ZWEIG, ESQ.

15

16   WOLF HALDENSTEIN ADLER FREEMAN & HERBZ LLP

17        Attorney for the Groman Plaintiffs

18        270 Madison Avenue

19        New York, NY 10016

20

21   BY:  ALEXANDER H. SCHMIDT, ESQ.

22

23

24

25

Page 7

1  GENERAL MOTORS COMPANY

2       Attorney for General Motors

3       400 Renaissance Center

4       P.O. Box 400

5       Detroit, MI 48265-4000

6

7  BY:  L. JOSEPH LINES III, ESQ.

8

9  OTTERBOURG

10      Bankruptcy Liaison Counsel

11      230 Park Avenue

12      New York, NY 10169

13

14  BY:  MELANIE L. CYGANOWSKI, ESQ.

15

16

17

18

19

20

21

22

23

24

25

Page 77

1    New GM had already filed a 12(b)(6) motion, we were in the

2    midst of very active litigation, and at no time had they

3    indicated either to plaintiff, myself, my client, or to this

4    Court that they were going to be enforcing the sale order as

5    to personal injury claims, even those that predated the sale

6    order.  It was only on August 1st that that occurred.

7              So to the extent that New GM in its briefing in

8    its letter to the Court has somehow complained of

9    plaintiff's counsel ignoring the injunctive order of the

10   Court or the sale order we were simply operating on what was

11   already New GM's public statements concerning its

12   willingness or unwillingness to litigate these issues with

13   this Court.

14             THE COURT:  Pause, please, Mr. Davis.

15             I don't think anybody, or at least I'm not trying

16   to find fault with you in trying to represent your client up

17   to this point, I guess the issue that I have is can we weave

18   your needs and concerns into the scheduling orders that I've

19   previously entered and I'm about to enter, and can you join

20   the dialogue, and will you enter into a stay stip to tee

21   those issues up before me either in conjunction with or

22   shortly after the other guys?

23             MR. DAVIS:  With regard to the legal issues that

24   have already been discussed, due process, mootness, those

25   issues I think can adequately be addressed by myself on the

Page 78

```
 1    kind of extended timeline that the Court has already

 2    outlined.

 3              With regard to my client's specific recall that we

 4    think is the actual cause of this wreck, which is a May 15th

 5    recall that does not impact or implicate the ignition

 6    switch, but is solely about a brake wiring harness that has

 7    not been the subject of the Valucas report, has not been the

 8    subject of multiple congressional hearings in which GM

 9    provided documents, and certainly would not be discussed

10    significantly in what's already been ordered to be delivered

11    the redelivery materials by the MDL, my client is prejudiced

12    from being able to adequately brief the merits of her fraud

13    claim that is specific to her and to the recall that we

14    think most closely fits the facts as that know them in terms

15    of what caused the upside lying wreck.

16              THE COURT:  Well you're saying two separate

17    things, Mr. Davis, let's slice and dice them.

18              One you're saying that you don't have an ignition

19    switch issue but you have a separate issue, and then second

20    you're saying that although you enter into a stip you were

21    defrauded effectively in entering into that stip either by

22    things that were said to you or by discovery violations, if

23    I hear you right.

24              Although the offense -- alleged offense that New

25    GM entered into or engaged in doesn't involve an ignition
```

1    switch it at least seemingly has a lot of overlap with the

2    other issues that the other folks are litigating, except

3    that I guess whether there was failures of disclosure,

4    vis-à-vis, your problem, I think you said a harness in --

5              MR. DAVIS:  A brake wiring harness.

6              THE COURT:  Brake wiring harness.  And that's an

7    electro mechanical device that links the brake pedal with

8    the brakes actually operating or something different?

9              MR. DAVIS:  Yes, and there are associated problems

10   with the cruise control, power steering, other similar

11   effects that have been described by an ignition switch

12   defect, but given the fact that one of the -- one of the

13   side affects of this issue is that the brake lights fail to

14   come on when you're applying the brake.

15             Well GM as part of its murder, suicide,

16   affirmative defense specifically highlighted the fact that

17   witnesses testified they did not observe brake lights

18   leading up to impact.

19             THE COURT:  And your contention is that the reason

20   that the brake lights didn't light up is unrelated to

21   whether or not the driver put his foot on the brake pedal.

22             MR. DAVIS:  Well we know -- well, it's plaintiff's

23   position --

24             THE COURT:  You're saying that even though he

25   might have put his foot on the brake pedal the witnesses

Page 80

1    might have not seen brake lights because of the separate

2    issue that you're identifying.

3              MR. DAVIS:  Correct.  The brake wiring harness.

4              THE COURT:  I understand the issue.

5              MR. DAVIS:  Okay.

6              THE COURT:  Obviously I'm not dealing with the

7    merits.

8              MR. DAVIS:  And --

9              THE COURT:  But forgive me, I could swear that you

10   had a vehicle produced back in the Old GM era, like a 2007

11   or was that the time of the accident and the vehicle was

12   made even before that?

13             MR. DAVIS:  It was a 2004 Malibu, and the accident

14   occurred on October 18th, 2005.

15             THE COURT:  Oh, 2005.

16             MR. DAVIS:  But in -- I'll just quickly, Your

17   Honor, my delineation between what we can stipulate to and

18   what we can't is purely the legal arguments in which the

19   Court is going to be assessing due process violations and

20   legal arguments concerning, for example, the correct

21   standard for fraud on the Court that can certainly be

22   briefed absent some specific discovery regarding the brake

23   wiring harness recall that we think my client's underlying

24   case was caused by.

25             The thing that I think certainly my individual

Page 81

1    client needs to be provided discovery on is documents that

2    have never been produced to anyone and certainly haven't

3    been the subject of an internal GM report.

4           The Valucas report is going to provide and has

5    provided a lot of information and documents that are

6    applicable to the ignition switch recall that simply are not

7    going to be particularly helpful regarding the recall that

8    based on what we know seems to be most applicable to this

9    underlying crash.

10          THE COURT:  Okay.  Well, Mr. Davis, I'm not here

11   to play let's make a deal with you.  I can tell you if you

12   don't already know how I've ruled on people who are of a

13   mind to go it alone and who have made similar arguments to

14   you, and I encourage you to read my decisions in the Finuf

15   (ph) and Elliott matters.

16          You have the right if you want to file a no stay

17   pleading.  I guess it would have to come after New GM filed

18   something, which I'm not sure if it's fully filed yet or

19   not.  And if you do you'd have to -- or if you're thinking

20   about doing it you'd have to make a preliminary decision

21   first as to whether you can comply with Bankruptcy Rule 9011

22   which is like Federal Civil Rule 11, in light of the rulings

23   in that area.

24          I imagine you could enter into a stip with New GM

25   so you could go directly up on appeal if you wanted to

Page 82

1   without subjecting yourself to Rule 11 risks.

2          At some point your contentions will be heard

3   either as flowing from the matters that are already before

4   me or anything else you want to argue, but the chances of

5   you being allowed to go it alone ahead of the other -- I

6   thought there were 94 -- I thought I heard 104 at this point

7   -- others, practically everybody is making arguments that

8   their cases -- that's an exaggeration -- many people are

9   making arguments that their cases are special.

10         You also heard the back and forth on discovery

11  today.  If I'm not of a mind to allow discovery of the type

12  that Mr. Flaxer issued or desired, which had some legitimate

13  justification, albeit on balancing I ruled against him, I

14  have some great difficulty, I'll just at the start of every

15  argument I tell you what I need you to address and this is

16  what I'm going need you to address, why your claim that you

17  should get any discovery at this point is any different.  It

18  sounds like it's a lot worse.

19         MR. DAVIS:  Well, Your Honor --

20         THE COURT:  But here's what I'm telling you you

21  got to do.  You're to caucus with the other parties in this

22  case, get yourself bankruptcy counsel, because at least

23  seemingly if you have a vehicle made by Old GM prepetition

24  it's subject to at least one of the three categories of the

25  sale order that New GM has been relying upon and going

Page 83

1   against people like the Finufs and the Elliotts and most of

2   the others, and if you want to deal with it the mechanism is

3   going to be by a no stay pleading.

4           Sooner or later your concerns are going to be

5   heard, but the chances of you being allowed to litigate them

6   in another court before I've ruled on this issue are about

7   the same as me playing for the Knicks, or in your term it's

8   the Rockets.

9           MR. DAVIS:  And I understand Your Honor's

10  instruction regarding the stay.

11          THE COURT:  Okay.

12          MR. DAVIS:  It's not -- it's not my intent to file

13  something that is clearly so unnecessary based on Your

14  Honor's representations from the bench.

15          THE COURT:  I appreciate that.

16          I would encourage you to have a dialogue with the

17  other guys to see when and how your claim should be

18  addressed in the context of everything else that's being

19  addressed.

20          MR. DAVIS:  And I will certainly abide by the

21  Court's instruction on that issue as well.

22          That being said, with regard to discovery I don't

23  know how to make this any clearer.  Plaintiff's claims were

24  being actively litigated related to recalls that are

25  completely unrelated and were not addressed by the Valucas

Page 84

1   report or any documents that would be subject to the

2   redelivery material, and for that reason being able for my

3   client to demonstrate the due process prejudice that

4   occurred to her it's very difficult to say that we are

5   somehow going to be able to rely on these documents that

6   don't appear to be particularly relevant to her recall that

7   underlies her due process claim because there just hasn't

8   been much.

9           You know, the Valucas report doesn't address the

10  brake wiring harness recall or what GM knew or when it knew

11  or when it didn't disclose information or documents to

12  either this Court or to my client.

13          And it would seem that because my client's claims

14  are so intertwined on that specific recall that we would be

15  able to get some documents similar to those that have

16  already been produced by GM but specific to this recall.

17          Because at the end of the day, Your Honor, I

18  imagine I'm going to be left in a position where the Court

19  having the briefing from both sides is going to be looking

20  at the stipulations and certainly all the documents that are

21  being relied upon, moth significantly the Valucas report,

22  and I'm going to be left out in the cold because my claim

23  and the underlying prejudice relates to a recall that is

24  completely separate and not addressed by either the Valucas

25  report or any congressional hearing.  That's my issue.

Page 85

```
 1              THE COURT:  I understand your issue, Mr. Davis, I

 2      understood it the first time you told it to me.

 3              MR. DAVIS:  Okay.

 4              THE COURT:  The problem is as I articulated to

 5      you, that the sale order and related sale injunction don't

 6      mention ignition switches.  What they speak of is vehicles

 7      that were manufactured by Old GM.

 8              I am not going prejudge the ultimate outcome of

 9      any controversy between you and Mr. Steinberg on that issue,

10      and I don't rule out for half a second that sooner or later

11      you're going to get the discovery you're looking for.

12              But the procedural issue before me now is how in

13      the context of 104 or whatever individual and class actions,

14      mainly the latter, that are on my watch, the extent to which

15      I allow matters premised on the outcome of arguments to

16      govern how I manage them before I decide the underlying

17      issues.

18              And as I stated in the Finuf decision I am

19      unwilling to assume the outcome in determining my extent of

20      jurisdiction to decide the underlying issues.

21              MR. DAVIS:  I appreciate that.

22              THE COURT:  Thank you.

23              MR. DAVIS:  Again.

24              THE COURT:  Okay.  Anybody else wanting to be

25      heard at this point on the issue that I discussed with
```