**JOSH DAVIS LAW FIRM**
1010 Lamar, Suite 200
Houston, Texas 77002
Telephone: (713) 337-4100
Facsimile: (713) 337-4101
Joshua P. Davis

*Attorneys for Doris Phillips*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
In re                                                                          :        **Chapter 11**
                                                                                    :
**MOTORS LIQUIDATION COMPANY,** *et al.,*     :        Case No.: 09-50026 (REG)
      f/k/a General Motors Corp., *et al.*              :
                                                                                    :        **(Jointly Administered)**
                                                      Debtors.              :
                                                                                    :
-----------------------------------------------------------------x

**PLAINTIFFS' REPLY TO MOTORS LIQUIDATION GUC TRUST AND
GENERAL MOTORS, LLC'S RESPONSE TO PLAINTIFFS' FIRST AMENDED
RULE 60(b)(6) MOTION FOR RELIEF FROM AUGUST 9, 2010 STIPULATION
AND SETTLEMENT RESOLVING CLAIM NO. [44614], OR ALTERNATIVELY,
RULE 60(d) MOTION TO SET ASIDE**

**TABLE OF CONTENTS**

I. SUMMARY ................................................................................................................... 1

II. REPLY ........................................................................................................................ 4

    A. Phillips has standing ................................................................................... 4

    B. Phillips could not settle her claim because its *quality* was unknown due to GM's failures ................................................................................................ 7

    C. GM's failure to respond to Phillips' discovery prejudiced her claim, and the benefit GM derived from that failure constitutes an abuse of the process ......... 8

    D. Phillips' Rule 60(b) Motion is timely ................................................................ 10

III. CONCLUSION ........................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
888 F.Supp. 2d 478 (S.D.N.Y. 2012) ............................................................................. 5, 6

*ACLI Intern. Commodity Servs., Inc. v. Banque Populaire Suisse*,
609 F.Supp. 434 (S.D.N.Y. 1984) ...................................................................................... 6

*Alvarado v. Manhattan Worker Career Center*,
2003 WL 22462032 (S.D.N.Y. Oct. 30, 2003) .................................................................. 8

*Baker v. Nemaizer*,
793 F.2d 58 (2nd Cir.1986) ................................................................................................ 9

*Banque Arabe et Int'l D'Investissement v. Maryland National Bank*,
850 F.Supp. 1199 (S.D.N.Y. 1994) .................................................................................... 6

*Compagnie Noga d'Importation et d'Exportation S.A. v. Russian Fed'n*,
No. 00 Civ. 0632 (WHP), 2008 WL 3833257 (S.D.N.Y. Aug. 15, 2008) .......................... 5

*Congregation Mischknois Lavier Yakov, Inc. v. Bd. of Trustees for Vill. of Airmont*,
301 Fed. Appx. 14 (2d Cir. 2008) ...................................................................................... 7

*Contractual Obligation Productions LLC v. AMC Networks, Inc.*,
2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) .................................................................... 5

*Fox v. Hirschfeld*,
142 N.Y.S. 261 (1913) ........................................................................................................ 6

*Gleason v. Jandrucko*,
860 F.2d 556 (2d Cir. 1988) ............................................................................................. 10

*Grace v Bank Leumi Trust Co. of NY*,
443 F.3d 180 (2nd Cir. 2006), *cert. denied*, 549 U.S. 1114 (2007) ................................. 10

*Hazel-Atlas Glass Co., v. Hartford-Empire Co.*,
322 U.S. 238 (1944) .......................................................................................................... 10

*In re Indu Craft Inc.*,
11 CIV. 5996 JMF, 2012 WL 3070387 (S.D.N.Y. July 27, 2012) aff'd, 580 Fed Appx 33
(2nd Cir. 2014) .................................................................................................................. 10

*In re Lawrence*,
293 F3d 615 (2nd Cir. 2002) .......................................................................................... 12

*Lemon v. Kurtzman* ("*Lemon I*"),
403 U.S. 602, 91 S.Ct. 2105 (1971) ............................................................................... 11

*Lemon v. Kurtzman* ("*Lemon II*"),
411 U.S. 192, 93 S.Ct. 1463 (1973) ............................................................................... 11

*Marrama v. Citizens Bank of Massachusetts*,
549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007) ............................................. 10

*Pathare v Klein*,
06 CIV. 2202 LTS, 2012 WL 1353217 (S.D.N.Y. Apr. 17, 2012) ................................. 10

*Playboy Enterprises Intern., Inc. v. On Line Entm't, Inc.*,
CIV.A. CV006618DGT, 2004 WL 626807, (E.D.N.Y. Mar. 29, 2004), as amended (Apr. 1, 2004), aff'd, 135 Fed. Appx. 479 (2d Cir. 2005) .......................................................... 7

*Seneca Wire & Mfg. Co. v. A.B. Leach & Co.*,
247 N.Y. 1, 159 N.E. 700 (1928) ..................................................................................... 8

**STATUTES & RULES**

FED. RULES CIV. PRO. RULE 60(b)(6) ......................................................................... *passim*

FED. RULES CIV. PRO. RULE 60(b)(2) ........................................................................... 11, 12

FED. RULES CIV. PRO. RULE 60(b)(3) ....................................................................... 8, 11, 12

FED. RULES CIV. PRO. RULE 60(d) ........................................................................ 1, 3, 10, 13

**SECONDARY SOURCES**

*Restatement (Second) of Contracts* § 164 (1981) ................................................................ 7

TO THE HONORABLE COURT:

COME NOW Doris Powledge Phillips, f/k/a Doris Powledge, Plaintiff, Individually and as Representative of the Estate of Adam Powledge, deceased, the Estate of Rachel Powledge, deceased, the Estate of Isaac Powledge, deceased, the Estate of Christian Powledge, deceased, and the Estate of Jacob Powledge, deceased (collectively, "**Phillips**"), complaining of Motors Liquidation GUC Trust ("**GUC Trust**"), Respondent-Defendant, and Defendant General Motors, LLC ("**New GM**") (collectively, "**GM**"), filing Plaintiffs' Reply to GM's Responses to Plaintiffs' First Amended Rule 60(b)(6) Motion for Relief from the August 9, 2010 Stipulation and Settlement Resolving Claim No. [44614] ("**Settlement Agreement**"), or alternatively, Rule 60(d) Motion to Set Aside, and respectfully show the following:

## I. SUMMARY

As the Court rightly noted, a procedural due process violation that causes prejudice requires relief. GM's acts violated Phillips' right to due process and prejudiced her ability to present her claim. Phillips was an innocent litigant grasping at the value of her lawsuit. GM failed to meet its discovery obligations, keeping Phillips in the dark about the full value of Phillips' claim. Unlike every other plaintiff subject to New GM's Motion to Enforce, Phillips timely filed a contested unsecured claim, Claim No. 44614. Phillips seeks an equitable remedy to ensure justice is done. Absent an equitable remedy, GM's abuse of the Bankruptcy Code will work a horrible injustice specific to Phillips.

On September 6, 2007 Dori Powledge filed suit, *Powledge, et al. v. General*

1

*Motors Corp.*, Cause No. 07-CV-1040 ("**2007 Litigation**"), alleging that an electrical defect caused a loss of control of the Subject Vehicle and killed her husband and four children. Since that time Phillips has never enjoyed her constitutional right to procedural due process as she sought to hold GM civilly liable.

Phillips' case is different from the rest for these key reasons:

1. On November 24, 2009 Phillips filed a proof of claim concerning her pre-sale personal injury lawsuit;

2. For 21 months prior to GM's June 1, 2009 bankruptcy petition, Phillips pursued documents in discovery that, if produced, substantially support her claim;

3. Prior to and during this 21 month period, 24 business and in-house legal personnel at Old GM were aware that documents responsive to Phillips' discovery existed, but these documents were never produced;

4. New GM failed to make any recalls from July 5, 2009 through August 9, 2010 that would have alerted Phillips to the significant merit of her unsecured claim;

5. The same in-house attorneys at Old GM responsible for the 2007 Lawsuit continued to facilitate the litigation while employed by New GM; and,

6. The failure to produce documents and New GM's failure to issue recalls applicable to the Subject Vehicle caused individual, sustained prejudice to Phillips as she negotiated her contested claim.

General Motors, LLC's ("**Old GM**") duties to Phillips prior to its bankruptcy petition were clear—abide by the TEXAS RULES OF CIVIL PROCEDURE. Litigation by surprise has been disallowed for over half a century, and parties have a duty to disclose documents and information. GM attempts to ignore Phillips' unanswered discovery by (1) arguing that Old GM's objections insulate its failures to produce responsive

2

documents, and (2) its bankruptcy petition barred discovery. But GM's tortured logic demonstrates Phillips' need for equitable relief.

The documents GM failed to produce dramatically impact the merit of Phillips' claim. Important for our argument concerning Phillips' equitable motion is the timeline. Phillips filed the 2007 Litigation and propounded discovery far in advance of Old GM's bankruptcy. And Phillips' signing of the Settlement Agreement on August 9, <u>2010</u> occurred well after the Sale Order. For over a year New GM had acquired Old GM's designs, tools, inventory, books, records, and its key contracts, among other essential assets. Moreover, New GM had a legal duty to issue recalls specific to the Subject Vehicle.

GM generally argues Phillips' Motion should be denied because (1) Phillips lacks standing because she sold her liquidated allowed unsecured claim to Dover Master Fund II, L.P. ("**Dover**") 11 days after signing the Settlement Agreement; (2) the Settlement Agreement is binding on Phillips; (3) Phillips' Motion is untimely; and (4) Phillips' circumstances are insufficiently exceptional to warrant relief under Rule 60(d). For now Phillips will ignore New GM's argument that the Sale Order and Injunction are binding on Phillips. Because Phillips' Motion only concerns the undoing of the Settlement Agreement, not her separate claims against New GM that may be barred by the Court's April 15 Order, any discussion related to successor liability is premature. Phillips must void the Settlement Agreement first, and only then can she pursue New GM.

## II. REPLY

### A. Phillips has standing.

GM suggests that Dover is the holder of Phillips' claim. Phillips signed the Settlement Agreement on August 9, 2010, liquidating her contested unsecured claim to an allowed unsecured claim equivalent to $2,699,074.08.[1] On August 20, 2009 Phillips sold her unsecured claim to Dover for $521,000.00 as outlined in a one page Evidence of Transfer filed with the Court. Dkt. #6793.

First, Phillips does not complain that Dover's exchange of her allowed liquidated claim was wrongful. Rather, Phillips contends that the consideration provided by Old GM in the Settlement Agreement was insufficient, and that Phillips' ability to value her claim leading up to the Settlement Agreement was prejudiced by GM. At the time Phillips signed the Settlement Agreement, Phillips could not appreciate the evidentiary merit of her lawsuit given GM's failure to adhere to the Rules or New GM's failure to issue a recall concerning the Subject Vehicle. The merit of Phillips' claim was prejudiced due to GM's failures. Dover was never a party to the Settlement Agreement and has no personal interest in the underlying litigation. GM's Dover argument is like complaining that Duane Reade is the proper party to a 60(b) Motion if a plaintiff spent their settlement funds there.

Second, Dover has no interest in Phillips' claim today. Dover received exactly what it bargained for, an allowed unsecured claim in the amount $2,699,074.08. Dover did not pay Phillips for her *contested* lawsuit as it existed prior to the Settlement

---

[1] GUC Trust Response, Ex. 1.

4

Agreement. Dover paid for its right to an allowed unsecured claim. Dover received what it bargained for, compared to Phillips who could not know the merits of her claim. Both GUC Trust and New GM cite to several cases arguing that Phillips' sale to Dover constitutes a complete relinquishment of Phillips' claim. These cases are distinguishable.

GUC Trust cites *Contractual Obligation Productions LLC v. AMC Networks, Inc.*, 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) for the proposition that Phillips' selling of her approved unsecured claim amounts to assigning all rights related to 60(b) relief. Dkt. 13113 at 11. But *AMC Networks* concerned the assignment of copyrighted material and work product, and the plaintiff readily valued the assignment when he sold his own intellectual property. *AMC Networks, Inc.*, 2006 WL 6217754 at *3. The plaintiff sold the actual subject of the litigation—the intellectual property rights. *Id.* Phillips' Motion does not concern the transaction with Dover—and Dover could never complain that it was duped when it purchased the liquidated unsecured claim. Dover knew the value of the claim to the penny. The sale of the claim is not at issue, rather the Settlement Agreement.

Likewise, New GM cites *Compagnie Noga d'Importation et d'Exportation S.A. v. Russian Fed'n*, No. 00 Civ. 0632 (WHP), 2008 WL 3833257 (S.D.N.Y. Aug. 15, 2008) for the same proposition. But *Compagnie Noga*, similar to *AMC Networks*, dealt with consideration fairly valued by all parties to the assignment, a liquidated debt. The value of Phillips' Settlement Agreement was completely unknown to Phillips. Because of GM's failures, Phillips was not provided documents and information she had a constitutional right to possess to ensure her claim could be fairly valued.

Dover cannot seek avoidance of the transfer, as Dover knew what it was getting—

5

an allowed unsecured claim for a specific dollar amount. And Dover certainly cannot seek to overturn the Settlement Agreement, as it was not a party. But what was Phillips getting with the Settlement Agreement? At the time the Settlement Agreement was reached she could not know what was being withheld and could not fairly value her claim.

New GM also cites *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 888 F.Supp. 2d 478 (S.D.N.Y. 2012) for the proposition that fraud claims are always assigned, referencing the boilerplate language found in the Settlement Agreement. Dkt. #13113 at 6. This general statement of law is reductive—New GM ignores that *Abu Dhabi* assumes the intent of the parties to the assignment. *But see Banque Arabe et Int'l D'Investissement v. Maryland National Bank*, 850 F.Supp. 1199, 1207-9 (S.D.N.Y. 1994)("In short, this Court adopts the holding of *Fox v. Hirschfeld* and its progeny that the assignment of a contract does not automatically transfer related tort claims."). *Banque* outlines what has long been New York precedent—the assignment of fraud claims must be either (1) explicitly stated in the assignment, or (2) clearly evident by the parties' intent. *Id.* at 1210 (*citing Fox v. Hirschfeld*, 142 N.Y.S. 261, 264 (1913)). For example, in *ACLI Intern. Commodity Servs., Inc. v. Banque Populaire Suisse*, 609 F.Supp. 434, 444 (S.D.N.Y. 1984) the court concluded that the real party in interest did not intend to assign their fraud claims based on testimony from the principal officers of the assignor.

Who can argue that Phillips intended to assign Dover her right to pursue misrepresentation or fraud claims related to GM's obtaining her signature on the Settlement Agreement?

6

**B. Phillips could not settle her claim because its *quality* was unknown due to GM's failures.**

Phillips is seeking unique relief for her unique circumstances. Just as Phillips could seek relief from a judgment under Rule 60(b), she is entitled to relief from the Settlement Agreement. "To be sure, so-ordered settlements have been held to be void on a Rule 60(b)(4) motion where the settlement and the underlying proceedings were fraught with serious irregularities which did indeed amount to a violation of the due process rights of one of the parties." *Congregation Mischknois Lavier Yakov, Inc. v. Bd. of Trustees for Vill. of Airmont*, 301 Fed. Appx. 14, 16 (2d Cir. 2008). Like a judgment or other dispositive relief attacked via Rule 60(b), the Settlement Agreement is subject to attack. *Id.* Additionally, the Settlement Agreement is voidable by Phillips independent of 60(b) relief. When "'a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party, upon which the recipient is justified in relying, the contract is voidable by the recipient.'" *Playboy Enterprises Intern., Inc. v. On Line Entm't, Inc.*, CIV.A. CV006618DGT, 2004 WL 626807, at *4 (E.D.N.Y. Mar. 29, 2004), as amended (Apr. 1, 2004), aff'd, 135 Fed. Appx. 479 (2d Cir. 2005)(*quoting Restatement (Second) of Contracts § 164 (1981)*).

Additionally, "[i]t is not necessary, in order that a contract may be rescinded for fraud or misrepresentation, that the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient, and this rule applies to actions at law based upon rescission as well as to actions for rescission in equity." *Seneca Wire & Mfg. Co. v. A.B. Leach & Co.*, 247 N.Y. 1, 7-8, 159 N.E. 700, 702

7

(1928)(citations omitted). While *Seneca* is mature precedent, it was cited approvingly for this exact proposition in *Playboy Enterprises*. *See Playboy Enterprises Intern., Inc.*, 2004 WL 626807 at *4. GM accuses Phillips' Motion of requiring a fraud showing, generally arguing untimeliness under 60(b)(3) as well as referencing the Court's April 15 Order discussing fraud on the court. But Phillips need not show fraud to prevail—an innocent but woefully incompetent GM is sufficient to meet Phillips' burden. What is key is that Phillips' right to pursue and present her claim was dramatically prejudiced due to the individualized harm caused by GM's failure to produce documents and other failures, and these "innocent misrepresentations" mandate relief.

### C. GM's failure to respond to Phillips' discovery prejudiced her claim, and the benefit GM derived from that failure constitutes an abuse of the process.

New GM cites to *Alvarado v. Manhattan Worker Career Center*, 2003 WL 22462032 (S.D.N.Y. Oct. 30, 2003) arguing that Phillips' Motion exclusively seeks relief under 60(b)(3) despite being pled in the alternative. *Alvarado* was a racial discrimination case in which a *pro se* litigant sought 60(b) relief after his lawyer failed to respond to a motion for summary judgment and sanctions were awarded. *Id.* The holding focused on the excusable neglect doctrine concerning attorney conduct and that the plaintiff could not demonstrate a meritorious claim *even if* he was entitled to 60(b) relief. *Id.* at *2-3.

But as a preliminary matter the court recognized that we must "'strike a balance between serving the ends of justice and preserving the finality of judgments.'" *Id.* (*quoting Baker v. Nemaizer*, 793 F.2d 58, 61 (2nd Cir.1986)). Phillips argues that the Court should strike that balance and void the Settlement Agreement. There are no perfect

8

lawsuits and certainly some documents may go undiscovered or unproduced prior to a mediated settlement agreement. But Phillips' Motion is not based upon the discovery of a few errant documents gone missing. It is not the documents by themselves that warrant extraordinary relief, rather a host of harmful acts that prejudiced Phillips, including the numerous GM experts and expert reports that make Phillips' circumstances extraordinary. Certainly GM's accusation that Adam Powledge committed murder-suicide is extraordinary (a topic completely unremarked upon by either GUC Trust or New GM).

Given the Court's view of prejudice as requiring a party to be heard, how could Phillips be heard when she was unable to speak to GM's primary defense theories? The Court will recall that Old GM—and New GM lawyers acting on behalf of Old GM—defended against Phillips' claim arguing that "[Phillips'] theories require failures of both the cruise control and brake systems, as well as the inability to steer" and that "[Phillips] cannot demonstrate any defect and any alleged 'recall'" of the Subject Vehicle that would have contributed to the accident.[2] In July 2010 these statements were true, insofar as Phillips was concerned. But the statements were not in fact true, and Phillips' inability to attack these statements impaired her ability to be fairly heard.

The Court is given broad authority not just as it interprets Phillips' 60(b) Motion, but as an equity Court that must craft broad relief as the situation demands. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 374-75, 127 S. Ct. 1105, 1111-12, 166 L.

---

[2] Exhibit 4 to Phillips' Motion, *Mediation Statement on Behalf of Motors Liquidation Company dated 7-27-2010*, 7-8.

9

Ed. 2d 956 (2007). Absent equitable relief the Settlement Agreement works a substantial injustice that should not be tolerated. Whether the result of extreme incompetence or willfulness, the failure by GM to produce documents and provide honest expert witnesses requires that Phillips' Motion be granted.

GM's failure to provide evidence to Phillips was not an isolated event. The same GM legal department that was overseeing GM's discovery responses in the 2007 Litigation was aware of the true danger of Adam Powledge's vehicle. Withholding that information from Phillips was a "deliberately planned and carefully executed scheme" that affected "far more than an injury to a single litigant." *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988)(citing *Hazel-Atlas Glass Co., v. Hartford-Empire Co.*, 322 U.S. 238, 245-46 (1944)). It was a fraud on the court, and Phillips is entitled to relief under Rule 60(d).

### D. Phillips' Rule 60(b) Motion is timely.

Rule 60(b)(6) does not contain a specified time limitation—only within a "reasonable time." Phillips' Motion was filed within 10 months of New GM's first recalls applicable to the Subject Vehicle. *See Pathare v Klein*, 06 CIV. 2202 LTS, 2012 WL 1353217, at *2 (S.D.N.Y. Apr. 17, 2012)(citations omitted). This circuit has never held parties bringing a Rule 60(b)(6) motion within 1-year of the revelation of extraordinary conduct is unreasonable. Under certain circumstances, Judge Furman has held that three and half years is unreasonable. *In re Indu Craft Inc.*, 11 CIV. 5996 JMF, 2012 WL 3070387, at *7 (S.D.N.Y. July 27, 2012) aff'd, 580 Fed Appx 33 (2nd Cir. 2014). But the 2nd Circuit has also held that 10 years can be reasonable. *Grace v Bank Leumi Trust Co.*

10

*of NY*, 443 F3d 180, 189 (2nd Cir. 2006).

GM's arguments that Phillips' Motion is covered by 60(b)(2) or 60(b)(3), and therefore time barred, is certainly convenient to GM. Setting aside the hypocrisy of the tardiness argument (GM certainly took its time in issuing the recall), GM's view of 60(b) turns the procedural requirement for an equitable remedy into another game to be played. But equitable remedies are not and should not be dogmatic in light of constitutional hardship. *Lemon v. Kurtzman*, 411 U.S. 192, 201, 93 S.Ct. 1463,1469 (1973)("*Lemon II*"). "[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Id*. Additionally, "[i]t is well established that reliance interests weigh heavily in the shaping of an appropriate equitable remedy." *Id.* (citations omitted).

In *Lemon I, Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105 (1971), the Supreme Court invalidated Pennsylvania's statutory reimbursement of nonpublic sectarian schools and remanded the case for further proceedings. The district court subsequently awarded the sectarian schools financial relief for all secular programs provided by the schools up until the decision. *Lemon II* at 194. In *Lemon II* the Supreme Court upheld this accommodation as an equitable remedy because the schools had relied upon the reimbursements, and not receiving them would lead to financial ruin in certain cases. *Id.* at 201-2. Likewise, Phillips' reliance upon our judicial process mandates equitable relief. Every litigant must expect that their adversary is adhering to the rules of discovery, disclosing relevant documents, abiding by its statutory reporting obligations (in this case, to issue recalls), and producing valid expert reports and sworn testimony in accordance with our expert disclosure requirements. Adhering to the Rules constitutes a cornerstone

of procedural due process, the systematic violation of which (again whether inadvertent or not) must be remedied.

GM's argument turns an equitable rule designed to promote fairness into another procedural vehicle susceptible to manipulation. What if Phillips is forced to defend her Motion on 60(b)(2) or 60(b)(3) grounds? How can Phillips be expected to uncover the fraud or documents that remained concealed from this Court, U.S. regulators, and every other plaintiff prior to the fall of 2013? And what if Mr. Cooper and his expert did not discover the switched ignition switch part? It cannot be that in order for Phillips to assert the equitable relief of 60(b) she is required to confront GM with fraud and perjury within 1 year of the Settlement Agreement.

Finally, neither GUC Trust nor New GM addressed *In re Lawrence* and the 2nd Circuit's willingness to examine 60(b)(3) motions filed outside the 1-year limitation if a defendant's fraud causes the delay. *See In re Lawrence*, 293 F.3d 615, 620 (2nd Cir.2002). In *Lawrence* an adversarial proceeding based on fraud was brought well outside of the 1-year limitation and was converted to a 60(b) motion and allowed, despite the passage of time. *Id.* Certain investor plaintiffs had previously filed for 60(b)(3) relief within the 1-year period and reached a settlement, only to later seek adversarial relief and attack the prior settlements. *Id.* This case is significant for Phillips, and GM has no answer for its applicability.

### III. <u>CONCLUSION</u>

12

Is there a greater fear than being powerless to save your children from certain doom? Adam Powledge, in the moments before his own death, faced this fear. As much as the underlying litigation was about the cause of the crash, this Motion is about Adam's legacy. He did not murder his children as GM alleged, but was a victim. Phillips is entitled to her day in court with all the constitutional due process she rightly demands.

For the forgoing reasons, Plaintiffs seek to avoid the Settlement Agreement. Certainly Plaintiffs' due process rights have been prejudiced by GM's failure to produce documents in the 2007 Litigation and Plaintiffs are entitled to the extraordinary equitable relief available through Rule 60(b), or alternatively, Rule 60(d).

Respectfully submitted,

**JOSH DAVIS LAW FIRM**

By: /s/ Joshua P. Davis
    Joshua P. Davis
    SDNY Bar No. JD6110
1010 Lamar, Suite 200
Houston, Texas 77002
(713) 337-4100/Phone
(713) 337-4101/Fax
josh@thejdfirm.com
*Attorney-in-Charge for Plaintiffs*

13