# Exhibit A



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Rosemarie Williams<br>General Motors LLC<br>Mail Code 48482-038-210<br>400 Renaissance Center<br>Detroit, MI 48265 |

| | |
|---|---|
| **Entity:** | General Motors LLC<br>Entity ID Number  3113523 |
| **Entity Served:** | General Motors LLC |
| **Title of Action:** | Doerfler-Bashucky, Helen vs. General Motors LLC; Delphi Automotive Systems LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Personal Injury |
| **Court/Agency:** | Onondaga County Supreme Court, New York |
| **Case/Reference No:** | 2014EF4913 |
| **Jurisdiction Served:** | New York |
| **Date Served on CSC:** | 04/07/2015 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Sidney P. Cominsky, LLC (Syracuse, NY)<br>315-475-3425 |
| **Client Requested Information:** | Year: 2006<br>Make: Chevrolet<br>Model: Cobalt<br>VIN: 1G1AK15F567663770 |

| | |
|---|---|
| **Notes:** | Sidney P. Cominsky, LLC 1500 State Tower Building Syracuse, NY 13202<br>CSC Location document was served: Corporation Service Company 80 State Street Albany, NY 12207 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** ONONDAGA
--------------------------------------------------------------x

Helen Doerfler-Bashucky, individually & as
Administratrix of the Estate of Joseph Charles...

Plaintiff/Petitioner,

- against -                                    Index No. 2014EF4913

General Motors LLC, Delphi Automotive
Systems, LLC (f/k/a Eaton Corporation (a/k/a...

Defendant/Respondent.
--------------------------------------------------------------x

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent/Represent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment or (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov; mailing address: 60 Centre Street, New York, New York 10007).

Dated: 4/2/2015

_____ (Signature)

Jennifer Caggiano, Esq. _____ (Name)

Sidney P. Cominsky, LLC (Firm Name)

1500 State Tower Bldg. (Address)

Syracuse, NY 13202

315-475-3425 _____ (Phone)

jcaggiano.cominsky@gmail.com (E-Mail)

To:     General Motors LLC

c/o Corporation Svc Co.

80 State Street, Albany, NY 12207

6/4/14

FILED: ONONDAGA COUNTY CLERK 12/09/2014 02:42 PM    INDEX NO. 2014EF4913

NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 12/09/2014

STATE OF NEW YORK
SUPREME COURT   ONONDAGA COUNTY

---

HELEN DOERFLER-BASHUCKY, individually
and as Administratrix of the ESTATE OF
JOSEPH CHARLES DOERFLER, deceased,

Plaintiff,

-vs.-

GENERAL MOTORS, LLC,
DELPHI AUTOMOTIVE SYSTEMS, LLC
(f/k/a EATON CORPORATION) (a/k/a
DELPHI MECHATRONICS),

Defendants.

---

Plaintiff designates Onondaga
County as Place of Trial.

The basis for venue is Plaintiffs'
residence:  Onondaga County, NY.

**SUMMONS**

Index No.:

This Summons & Complaint was
filed in Onondaga County on the
___ day of _____, 2014.

To the above named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

DATED:  December 9, 2014

SIDNEY P. COMINSKY, LLC
By: Jennifer Caggiano
*Attorneys for Plaintiff*
1500 State Tower Building
Syracuse, New York 13202
Telephone: 315.475.3425

TO:    General Motors LLC
       c/o Corporation Service Company
       80 State Street
       Albany, New York 12207-2543

SIDNEY P. COMINSKY TRIAL LAWYERS, LLC STATE TOWER BUILDING SYRACUSE, NEW YORK 13202    TEL. 315.475.3425

Delphi Automotive Systems, LLC
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

STATE OF NEW YORK
SUPREME COURT   ONONDAGA COUNTY

---

HELEN DOERFLER-BASHUCKY, individually and
as Administratrix of the ESTATE OF JOSEPH
CHARLES DOERFLER, deceased,

                        Plaintiff,

    -vs.-

GENERAL MOTORS LLC,
DELPHI AUTOMOTIVE SYSTEMS, LLC
(f/k/a EATON CORPORATION) (a/k/a
DELPHI MECHATRONICS),

                        Defendants.

**COMPLAINT**

Index No.:

---

Plaintiff Helen Doerfler-Bashucky, individually and as Administratrix of the Estate of Joseph Charles Doerfler, deceased, by and through her attorneys, Sidney P. Cominsky, LLC, complaining of the Defendants herein, alleges as follows:

1.      Plaintiff is the natural mother of Joseph Charles Doerfler, deceased.  At all times herein mentioned, Plaintiff was and is a resident of Onondaga County, State of New York.

2.      Upon information and belief, at all times herein mentioned, Defendant General Motors LLC (hereinafter "Defendant GM") was and is a foreign limited liability company duly authorized to conduct business in the State of New York.

3.      Upon information and belief, at all times herein mentioned, Defendant GM conducted business in the State of New York via an agent.

4.      Upon information and belief, at all times herein mentioned, Defendant Delphi Automotive Systems, LLC (f/k/a Eaton Corporation) (a/k/a Delphi Mechatronics) was and is a foreign limited liability company duly organized in the State of Delaware.

SIDNEY P. COMINSKY TRIAL LAWYERS, LLC STATE TOWER BUILDING SYRACUSE, NEW YORK 13202

TEL.315.475.3425

5.    On June 28, 2006, Helen Doerfler-Bashucky was granted Letters of Administration for the Estate of Joseph C. Doerfler by the Surrogate's Court of Onondaga County and is duly authorized to maintain this action. A copy of the Letters of Administration is attached hereto at Exhibit "A".

6.    The limitations of liability set forth in CPLR § 1601 do not apply by reason of one or more of the exemptions set forth in CPLR § 1602, including but not limited to subsections 2, 5, 7, and 11.

## FACTUAL BACKGROUND

7.    Defendant GM designs, engineers, manufactures, tests, assembles, markets, advertises, sells, and distributes consumer motor vehicles that are sold throughout the United States and in numerous countries around the world.

8.    Upon information and belief, at all times herein mentioned, Defendant Delphi Automotive Systems, LLC (f/k/a Eaton Corporation) (a/k/a Delphi Mechatronics) designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and/or distributed an ignition switch to Defendant GM for incorporation into Defendant GM's consumer motor vehicles, including the 2006 Chevrolet Cobalt bearing VIN 1G1AK15F567663770. The ignition switch was defective.

9.    Sometime before May 4, 2006, Defendant GM designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and distributed a 2006 Chevrolet Cobalt bearing VIN 1G1AK15F567663770 to Daniel R. Perkins and/or his parents.

10.    The 2006 Chevrolet Cobalt bearing VIN 1G1AK15F567663770 contained a defective ignition switch that allowed the vehicle to unexpectedly shut off during normal operation. The ignition switch could inadvertently move from the "On" position to the

"Accessory" or "Off" position while the vehicle was in motion and without the operator of the vehicle turning the key.

11.    When the ignition switch inadvertently moved out of the "On" position, it caused disablement of the power steering, power brakes, and airbags and loss of control of the vehicle.

12.    The same defective ignition switch was incorporated into a number of models and model years designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and distributed by Defendant GM.

13.    As early as 2001, Defendant GM was aware of the defect in the ignition switch.

14.    In 2003, Defendant GM began receiving complaints from consumers about vehicles suddenly shutting off or stalling during operation.

15.    Despite this knowledge, Defendant GM continued to incorporate the defective ignition switch into its vehicles; failed to advise consumers, dealers, and regulators of the defect; and failed to repair, recall, or otherwise discontinue use of the defective ignition switch.

16.    It was not until February 2014 (13 years after Defendant GM first discovered the problem) that Defendant GM finally told the National Highway Traffic Safety Administration that it was aware of the major safety defect with its ignition switch.

17.    On February 13, 2014, Defendant GM issued a U.S. recall of 778,000 Chevrolet Cobalts and Pontiac G5 vehicles. This recall included the 2006 Chevrolet Cobalt that killed Joseph Doerfler.

### A. The Collision

18.    On May 4, 2006, Joseph Doerfler was a passenger in a 2006 Chevrolet Cobalt, VIN 1G1AK15F567663770, driven by Daniel R. Perkins on Breed Road in Camillus, New York.

19.     Upon information and belief, as Daniel R. Perkins was driving the 2006 Chevrolet Cobalt on Breed Road, the ignition switch failed, resulting in a loss of power to various vehicle systems, including but not limited to the power steering, power brakes, and airbags.

20.     Upon information and belief, after the 2006 Chevrolet Cobalt lost power, it became uncontrollable and exited the right side of the roadway, rolling over several times.

21.     As a result of the loss of control and subsequent collision, Joseph Doerfler sustained serious personal injuries and died.

22.     Unbeknownst to Plaintiff, the 2006 Chevrolet Cobalt contained a safety defect in the ignition switch that had been known by Defendants for many years, but intentionally concealed from Plaintiff and the public at large until February 2014.

23.     On May 4, 2006, this concealed safety defect caused the 2006 Chevrolet Cobalt in which Joseph Doerfler was riding to malfunction, leave the road, and kill him.

24.     Plaintiff did not learn of the ignition switch defect on the 2006 Chevrolet Cobalt until sometime in 2014, when Defendant GM initiated a recall.

25.     Because Defendants engaged in a decade-long conspiracy to fraudulently conceal this safety defect from its consumers, including Plaintiff, Plaintiff could not have discovered the defect any earlier than 2014 through the use of reasonable diligence.

### B. General Motors Bankruptcy

26.     On June 1, 2009, General Motors Corporation, the manufacturer of the 2006 Chevrolet Cobalt, filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York, Case No. 09-50026.

27.     Defendant GM was formed for the purpose of serving as the successor-in-interest for General Motors Corporation following the bankruptcy.

28.    As part of the bankruptcy reorganization process, the newly-created company, Defendant GM, acquired substantially all of the assets of General Motors Corporation ("Old GM") and assumed Old GM's business operations.

29.    Defendant GM also agreed to comply with all laws relating to the timely reporting of safety defects for its vehicles, including the 2006 Chevrolet Cobalt at issue. This agreement was memorialized in an Order issued by the Bankruptcy Court.

30.    Because Defendant GM was ordered by the Bankruptcy Court to comply with all of the reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, as they relate to the 2006 Chevrolet Cobalt at issue; acquired substantially all of Old GM's assets through the 363 Bankruptcy Sale; ran the new GM as a continuing enterprise of the Old GM; and was fully aware of, and took steps to conceal, a known safety defect in the 2006 Chevrolet Cobalt, it is liable to Plaintiff for the acts and omissions alleged in this Complaint.

## FIRST CAUSE OF ACTION – NEGLIGENCE

31.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

32.    On May 4, 2006, 19-year old Joseph Doerfler was killed while riding in a 2006 Chevrolet Cobalt that was designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and/or distributed by Old GM.

33.    At all times relevant hereto, Old GM and its successor-in-interest, Defendant GM, had a duty to use reasonable care in the engineering, design, manufacture, testing, assembly, marketing, advertising, sale, and/or distribution of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler, such that the vehicles would function safely when used for their intended purpose.

34.    Defendant GM breached this duty of care during and through the events described above. These breaches include, but are not limited to, the following:

a.    Manufacturing the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler with a defective ignition switch;

b.    Placing the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler, which was known by Defendant GM to be defective and unreasonably unsafe, into the stream of commerce;

c.    Failing to warn about the defects in the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler;

d.    Failing to recall and repair the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler after discovering the defect; and

e.    Concealing the defect from consumers, including Plaintiff and decedent, and lying about the safety of its products.

35.    Defendant GM's conduct showed such indifference to others, including Plaintiff and decedent, that it constituted an utter disregard of caution amounting to a complete neglect of the safety of another person.   Defendant GM acted with such indifference that its conduct constitutes gross negligence.

36.    On May 4, 2006, Joseph Doerfler was riding in a 2006 Chevrolet Cobalt, manufactured by Defendant GM and containing a defective ignition switch.   On that day, the vehicle inexplicably went off the road and rolled several times, killing Joseph Doerfler.   Joseph Doerfler was wearing his seatbelt, but as with so many of the recalled vehicles, the airbags fails to deploy.

37.    Now that Defendant GM's concealment has been revealed, Plaintiff believes that the collision was caused by a defective ignition switch installed on the vehicle, causing it to unexpectedly turn off while driving; disabling the power steering, power brakes, and airbags; and causing loss of control of the vehicle.

38.    Defendant GM owed a duty to use reasonable care in the design, engineering, testing, assembly, marketing, advertisement, inspection, maintenance, warning, sale, and/or distribution of the 2006 Chevrolet Cobalt, to avoid exposing the public and ultimate users, like Plaintiff and decedent, to a foreseeable risk of harm.

39.    Defendant GM breached said duty and is liable to Plaintiff for one or more of the following negligent acts and/or omissions:

a.    Failing to use due care in the design, engineering, testing, assembly, marketing, advertising, inspection, maintenance, sale, and/or distribution of the 2006 Chevrolet Cobalt and/or to utilize and/or implement reasonably safe designs in the manufacture of the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler.

b.    Placing the 2006 Chevrolet Cobalt into the stream of commerce knowing that it had a propensity to suddenly and unexpectedly shut off while being used in a reasonably foreseeable manner, rendering it hazardous and dangerous for its contemplated and intended use and thereby presenting an unreasonable risk of serious injury or death;

c.    Failing to provide adequate and proper warnings of the vehicle's propensity to suddenly and unexpectedly shut off while being used in the manner for which it was intended;

d.    Failing to incorporate or retrofit the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler with existing, reasonable safeguards and protections against ignition system

shut-offs and the consequences flowing therefrom when used in the manner for which it was intended;

    e.   Failing to adequately prevent, identify, mitigate, and fix defective designs and hazards associated with ignition system shut-offs in accordance with good engineering practices;

    f.   Failing to notify and warn consumers, including Plaintiff and decedent, of reported ignition system shut-offs and thus misrepresenting the safety of the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler and the model vehicle generally;

    g.   Failing to make adequate and timely corrections to the manufacture and design of the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler and to the model vehicle generally so as to prevent and/or minimize the effects and incidents of the ignition system shut-offs; and

    h.   Otherwise being careless and negligent.

   40.   Defendant GM's action and omissions alleged herein were a substantial factor in causing Plaintiff and decedent's harm.

   41.   As a result of Defendant GM's action and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

   42.   The aforementioned actions and omissions were committed by Defendant GM wilfully, wantonly, and with reckless disregard of the rights of consumers, including Plaintiff and decedent.

## AS AND FOR A SECOND CAUSE OF ACTION – NEGLIGENCE PER SE

43.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

44.    Pursuant to Code of Federal Regulations § 573.6, auto manufacturers are required to notify the National Highway Traffic Safety Administration within five (5) business days of a safety defect in its vehicles, or face a fine of up to $35 million.

45.    Defendant GM had a duty to adhere to this Federal Regulation and report to the National Highway Traffic Safety Administration any known safety defect in its vehicles within 5 days of its discovery.

46.    In mid-2013, Defendant GM engineers Gary Altman and Ray DeGorgio admitted under oath that Defendant GM knew of an ignition switch problem with its vehicles since 2004. Thus, pursuant to these federal regulations, Defendant GM was required to report the ignition switch defect to the National Highway Traffic Safety Administration at least as early as 2004, if not earlier.

47.    Defendant GM breached its duty to Plaintiff, and the public at large, when it waited until February 2014 - 13 years after it discovered the ignition switch problem – to inform the National Highway Traffic Safety Administration that it was aware of a major safety defect with its ignition switch.

48.    Code of Federal Regulations § 573.6 was enacted to protect a class of people to which Plaintiff belongs.

49.    Defendant GM's violation of Code of Federal Regulations § 573.6 was a substantial factor in causing Plaintiff and decedent's harm.

50.    As a result of Defendant GM's action and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

51.    The aforementioned actions and omissions were committed by Defendant GM wilfully, wantonly, and with reckless disregard of the rights of consumers, including Plaintiff and decedent.

## AS AND FOR A THIRD CAUSE OF ACTION – DESIGN DEFECT

52.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

53.    Defendant GM designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and/or distributed the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler.

54.    Defendant GM was under a duty to exercise ordinary care to design a product that was reasonably safe for the purpose for which it was intended.

55.    Defendant GM failed to exercise such duty.

56.    The 2006 Chevrolet Cobalt ridden in by Joseph Doerfler was defective at the time it left the hands of Defendant GM in that it was not reasonably safe and a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.

57.    The 2006 Chevrolet Cobalt ridden in by Joseph Doerfler, at the time it left the hands of Defendant GM, was so likely to harm the recipients that a reasonable manufacturer or person who had actual knowledge of its potential for producing injury would conclude that it should not have been placed into the stream of commerce in that fashion.

58.   In addition, the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler failed to conform to and/or fell below consumer expectations and/or failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

59.   Defendant GM's negligent design of the 2006 Chevrolet Cobalt was a substantial factor in causing Plaintiff and decedent's harm.

60.   As a result of Defendant GM's action and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

61.   The aforementioned actions and omissions were committed by Defendant GM wilfully, wantonly, and with reckless disregard of the rights of consumers, including Plaintiff and decedent.

## AS AND FOR A FOURTH CAUSE OF ACTION – FAILURE TO WARN

62.   Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

63.   Defendant GM designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and/or distributed the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler.

64.   Defendant GM knew or had reason to know that the 2006 Chevrolet Cobalt was, or was likely to be, dangerous for the use for which it was supplied.

65.   Defendant GM had no reason to believe that those for whose use the vehicle was supplied would realize its dangerous condition.

66.   Defendant GM failed to exercise reasonable care to inform unsuspecting consumers, including Plaintiff and decedent, of the dangerous condition or of the facts which made the vehicle likely to be dangerous.

67.    Defendant GM's failure to warn about the defective condition of the 2006 Chevrolet Cobalt was a substantial factor in causing Plaintiff and decedent's harm.

68.    As a result of Defendant GM's action and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

69.    The aforementioned actions and omissions were committed by Defendant GM wilfully, wantonly, and with reckless disregard of the rights of consumers, including Plaintiff and decedent.

## AS AND FOR A FIFTH CAUSE OF ACTION – FAILURE TO RECALL

70.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

71.    Defendant GM designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and/or distributed the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler.

72.    Defendant GM owed a continuing duty to use due care to remedy known defects affecting the safety of its vehicles.

73.    Defendant GM breached that duty by failing to conduct an adequate recall/retrofit campaign upon learning of the defects associated with the 2006 Chevrolet Cobalt.

74.    Defendant GM's failure to recall and retrofit the 2006 Chevrolet Cobalt was a substantial factor in causing Plaintiff and decedent's harm.

75.    As a result of Defendant GM's action and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

SIDNEY P. COMINSKY TRIAL LAWYERS, LLC STATE TOWER BUILDING SYRACUSE, NEW YORK 13202

TEL.315.475.3425

76.    The aforementioned actions and omissions were committed by Defendant GM wilfully, wantonly, and with reckless disregard of the rights of consumers, including Plaintiff and decedent.

## AS AND FOR A SIXTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY

77.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

78.    Defendant GM expressly warranted to the public, including Plaintiff and decedent, that the 2006 Chevrolet Cobalt could be used safely, for the purpose normally incident to its use, namely transportation.

79.    Plaintiff relied upon such warranties in allowing her son to ride in the subject vehicle.

80.    Decedent relied upon such warranties in riding in the subject vehicle.

81.    The 2006 Chevrolet Cobalt sold to Daniel Perkins was not as warranted as the vehicle was defective, contained a defective vehicle ignition system prone to shutting off during normal operations causing the steering and braking systems to malfunction and the airbags to become disabled.

82.    Defendant GM knew or should have known that the 2006 Chevrolet Cobalt did not operate as warranted.

83.    The failure of the 2006 Chevrolet Cobalt to be as represented was a substantial factor in causing Plaintiff and decedent's harm.

84.    As a result of the vehicle's failure to operate as warranted, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

85.    The aforementioned actions were committed by Defendant GM wilfully, wantonly, and with reckless disregard of the rights of consumers, including Plaintiff and decedent.

## AS AND FOR A SEVENTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

86.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

87.    Defendant GM designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and/or distributed the 2006 Chevrolet Cobalt.

88.    The 2006 Chevrolet Cobalt was sold and supplied to Daniel Perkins by and through Defendant GM.

89.    Defendant GM implied that the vehicle was fit for the ordinary purposes for which such goods are sued.

90.    The 2006 Chevrolet Cobalt sold by Defendant GM was not of merchantable quality in that:

    a.    The product was unreasonably dangerous; and

    b.    The unreasonably dangerous condition existed at the time the vehicle left the hands of Defendant GM.

91.    As a result of the failure of the 2006 Chevrolet Cobalt to have the expected quality and to be minimally safe for its intended purpose, Joseph Doerfler was killed while riding in the vehicle.

92.    The failure of the vehicle to have the expected quality and to be minimally safe for its intended purpose was a substantial factor in causing harm to Plaintiff and decedent.

SIDNEY P. COMINSKY TRIAL LAWYERS, LLC STATE TOWER BUILDING SYRACUSE, NEW YORK 13202

TEL 315.475.3425

93      As a result of Defendant GM's fraud, misrepresentations, and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

94.     The aforementioned actions were committed by Defendant GM wilfully, wantonly, and with reckless disregard of the rights of consumers, including Plaintiff and decedent.

**AS AND FOR AN EIGHTH CAUSE OF ACTION – COMMON LAW FRAUD**

95.     Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

96.     Defendant GM expressly, impliedly, falsely, and fraudulently represented to the general public, including Plaintiff and decedent, that the 2006 Chevrolet Cobalt was of merchantable quality, in compliance with federal laws and regulations, and safe for the use for which it was intended.

97.     Defendant GM knowingly or recklessly made material false representations to general public, including Plaintiff and decedent, with the intent that the public, including Plaintiff and decedent, would act and/or refrain from acting on its representations, including but not limited to the following:

a.      Defendant GM never disclosed that the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler had a propensity to suddenly and unexpectedly shut off during reasonable and foreseeable operation, rendering it hazardous and dangerous for its contemplated and intended use.

b.      Defendant GM never disclosed that the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler incorporated a defective ignition switch that caused the vehicle to suddenly

and unexpectedly shut off during reasonable and foreseeable operation, rending the vehicle hazardous and dangerous for its contemplated and intended use.

c.     Defendant GM never disclosed that it has received numerous complaints of incidents, collisions, serious injuries, and deaths related to the defective ignition switch incorporated into many of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler.

d.     Defendant GM never disclosed that it knew, or should have known, of the defective nature of the ignition switch incorporated into many of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler, but elected not to repair, retrofit, or recall the affected vehicles or to discontinue use of the defective ignition switch in new production vehicles.

e.     Defendant GM never disclosed that it failed to notify the National Highway Traffic Safety Administration of the defective ignition switch incorporated into many of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler.

f.     Defendant GM never disclosed that the defective ignition switch incorporated into the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler could cause the vehicle to shut-off, resulting in loss of control, power steering, power brakes and the disablement of the airbags.

g.     Defendant GM never disclosed that the defective ignition switch incorporated into many of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler, caused serious injuries and deaths to a number of consumers.

98.    Old GM knowingly or recklessly made material false representations to the Bankruptcy Court with the intent that the Bankruptcy Court would act and/or refrain from acting on its representations, including but not limited to the following:

a.    Old GM never disclosed that many of its vehicles had a propensity to suddenly and unexpectedly shut off during reasonable and foreseeable operation, rendering them hazardous and dangerous for their contemplated and intended use.

b.    Old GM never disclosed that many of its vehicles incorporated a defective ignition switch that caused the vehicle to suddenly and unexpectedly shut off during reasonable and foreseeable operation, rending the vehicles hazardous and dangerous for their contemplated and intended use.

c.    Old GM never disclosed that it has received numerous complaints of incidents, collisions, serious injuries, and deaths related to the defective ignition switch incorporated into many of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler.

d.    Old GM never disclosed that it knew, or should have known, of the defective nature of the ignition switch incorporated into many of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler, but elected not to repair, retrofit, or recall the affected vehicles or to discontinue use of the defective ignition switch in new production vehicles.

e.    Old GM never disclosed that it failed to notify the National Highway Traffic Safety Administration of the defective ignition switch incorporated into many of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler.

SIDNEY P. COMINSKY TRIAL LAWYERS, LLC   STATE TOWER BUILDING SYRACUSE, NEW YORK 13202

Tel. 315.475.3425

f.    Old GM never disclosed that the defective ignition switch incorporated into many of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler, could cause the vehicle to shut-off, resulting in loss of control, power steering, power brakes and the disablement of the airbags.

g.    Old GM never disclosed that the defective ignition switch incorporated into many of its vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler, caused serious injuries and deaths to a number of consumers.

99.    The representations of Defendant GM and Old GM were false and untrue in that their vehicles, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerlfer, were not in compliance with federal safety regulations and laws, were not safe for their intended use, and were not of merchantable quality or functional vehicles.

100.    Defendant GM and Old GM were aware that their vehicles containing the defective ignition switch had very dangerous properties and defects that could potentially cause serious injury and death.

101.    Defendant GM and Old GM knew, as a result of testing, research, complaints from consumers and dealers, and other information, that their vehicles containing the defective ignition switch were defectively designed and in violation of federal safety regulations and laws in that they had extremely dangerous properties and defects.

102.    Defendant GM and Old GM, despite the actual knowledge described above, intentionally suppressed the test results, complaints, research, and other information to keep such knowledge from regulators and the general public, including Plaintiff and decedent.

103.    As a result of Defendant GM and Old GM's fraud, misrepresentations, and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

104.    Defendant GM and Old GM's concealment was a substantial factor in decedent's harm.  Had Plaintiff and decedent been aware of the omitted information, decedent would not have been riding in the 2006 Chevrolet Cobalt with a defective ignition system prone to shutting off during normal operation and would be alive today.

105.    Defendant GM and Old GM's conduct, as set forth herein, was done with fraud and/or malice, and in conscious, willful, and reckless disregard of decedent's health, safety, and welfare.

## AS AND FOR A NINTH CAUSE OF ACTION – FRAUDULENT CONCEALMENT

106.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

107.    Old GM and Defendant GM actively concealed important facts from the public at large, including Plaintiff and decedent.  Specifically, for more than 13 years, Defendant GM actively concealed that millions of its vehicles, including the 2006 Chevrolet Cobalt driven by Daniel Perkins, contained a deadly safety defect.

108.    Defendant GM designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and/or distributed the 2006 Chevrolet Cobalt with a defective ignition switch system installed.

109.    Despite knowing that millions of their vehicles, including the 2006 Chevrolet Cobalt driven by Daniel Perkins, contained a deadly ignition switch defect, Defendant GM concealed the defect from the public at large, including Plaintiff and decedent, as follows:

a.    In September and October 2001, Defendant GM designed a fix to the deadly ignition switch defect. However, after designing the fix, Defendant GM rejected the redesign because of cost, allowing vehicles to continue to be built with the defective part, concealing the defect from the public, and knowingly putting a vehicle into the stream of commerce that it knew would unexpectedly shut off while in use.

b.    In 2003, Defendant GM began receiving complaints from consumers about their vehicles suddenly shutting off, yet did nothing to correct the problem.

c.    Defendant GM then began developing other low-cost vehicles using the same ignition switch, despite knowing that the switch was defective.

d.    In 2004, Defendant GM engineers again witnessed problems with their vehicles unexpectedly shutting off. As one engineer commented in a 2005 email, "I was very aware of an issue with 'inadvertent ignition offs' due to the low mounted ignition switch in the steering column and the low efforts required to rotate the ignition." Nevertheless, Defendant GM concealed the defect from the public and allowed vehicles to be built with the defective part and placed in the hands of unsuspecting consumers.

e.    On November 19, 2004, after its vehicles were already being sold in dealerships though the country, Defendant GM opened an engineering inquiry to further examine the ignition switch defect. Thereafter, Defendant GM engineers met to consider solutions to the ignition switch problem, but instead issue a directive to close the inquiry with no action.

f.    Following the decision to not fix the defective switch, Defendant GM continued to receive complaints from customers about their vehicles suddenly shutting off. As one internal email stated, "[t]here are many reports of that condition for 2005-2007."

g.    On May 24, 2005, Defendant GM opened another inquiry because of "[c]ustomer concern that the vehicle ignition will turn off while driving."

h.    Four months after the May 2005 engineering inquiry was opened, Defendant GM engineers designed yet another fix for the defective ignition switch. However, "[a]fter consideration of the lead time required, cost, and effectiveness of each of these solutions, the [investigation] was closed with no action."

i.    In September 2005, Defendant GM opened its first legal file on a fatality caused by the ignition key failure. This still did not compel Defendant GM to approve the part redesign. Instead, in December 2005, Defendant GM issued a one-page Service Bulletin to its dealers instructing them to install a snap-on key cover for customers who complained of the problem. Inexplicably, the Service Bulletin only related to *some* of the vehicles that contained the defective switch. It would take Defendant GM nearly another year – until October 2006 – to amend the Service Bulletin to include the additional affected models.

j.    By 2007, Defendant GM had knowingly and maliciously placed over one million vehicles on U.S. highways that were manufactured with the defective ignition switch. While the defect was well known to Defendant GM engineers and upper management, the company concealed it from the public. Hence, consumers such as Plaintiff and decedent never knew, nor could have known, of the deadly defect.

k.    During the 2000s, Defendant GM received at least 130 warranty claims from owners about their cars suddenly shutting off but did nothing to inform the public of Federal Safety Regulators, exposing the public to mortal danger.

l.      As consumers began to die or suffer serious injuries, Defendant GM systematically tracked the events, creating secret database files for ignition switch accidents. In these files, Defendant GM made notes regarding fatalities, paralysis, brain injury, and/or stitches.

m.      Incredibly, when consumers began asserting claims against Defendant GM for accidents caused by the faulty vehicles, Defendant GM uniformly told families that it had "no responsibility" for the deaths and injuries caused by its products.

110.    At the time of Joseph Doerfler's death, Defendant GM had still failed to notify the public, or the Plaintiff, of the deadly ignition switch defect contained in their vehicles.

111.    On or about September 26, 2006, Plaintiff contacted Defendant GM and inquired as to whether there had been other reports of the airbags not deploying in collisions, causing serious injury or death.

112.    Karen Adler of Defendant GM advised Plaintiff that they were not aware of any other reports and suggested that the airbags did not deploy because the sensor had not been activated during the collision.

113.    Upon information and belief, Defendant GM knew that the vehicle Joseph Doerfler had been riding in contained the faulty ignition switch, which could disable the airbags, and concealed this material information from Plaintiff.

114.    Upon information and belief, Defendant GM also knew that the circumstances surrounding the May 4, 2006 collision were patterns that it had seen in other vehicles with the defective ignition switch, yet it also concealed this information from Plaintiff.

115.    Instead, Defendant GM chose to remain silent, claiming no responsibility for the collision, and actively concealing from Plaintiff, and the public at large, material facts, including the fact that millions of its vehicles contained the deadly ignition switch defect.

116. Plaintiff did not know of these concealed facts, nor could she have reasonably discovered them through the use of due diligence.

117. Had decedent known of these concealed facts, he would not have ridden in the 2006 Chevrolet Cobalt.

118. Defendant GM intended to deceived Plaintiff, and the public at large, into believing that its vehicles were safe for driving by concealing these material facts.

119. Plaintiff and decedent reasonably relied upon Defendant GM's deception. Had the omitted information been disclosed, Plaintiff and decedent would have acted differently.

120. As a result of Defendant GM's fraud, misrepresentations, and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

121. Defendant GM's concealment was a substantial factor in decedent's harm. Had Plaintiff and decedent been aware of the omitted information, decedent would not have been riding in the 2006 Chevrolet Cobalt with a defective ignition system prone to shutting off during normal operation and would be alive today.

122. Defendant GM's conduct, as set forth herein, was done with fraud and/or malice, and in conscious, willful, and reckless disregard of decedent's health, safety, and welfare.

## AS AND FOR A TENTH CAUSE OF ACTION - DECEPTIVE BUSINESS PRACTICES UNDER GENERAL BUSINESS LAW § 349

123. Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

124. Defendant GM expressly, impliedly, falsely, and fraudulently represented to members of the general public, including Plaintiff and decedent, that the 2006 Chevrolet Cobalt

was of merchantable quality, in compliance with federal laws and regulations, and safe for the use for which it was intended.

125.    Defendant GM knowingly or recklessly made material false representations to consumers, including Plaintiff and decedent, with the intent that consumers, including Plaintiff and decedent, would act and/or refrain from acting on their representations, including but not limited to the following:

        a.    Defendant GM never disclosed that the 2006 Chevrolet Cobalt was subject to a stalling issue that was a safety hazard, and not just a "convenience" issue.

        b.    Defendant GM never disclosed that the 2006 Chevrolet Cobalt stalling issue could result in a sudden loss of control of the vehicle and disablement of the airbags.

        c.    Defendant GM never disclosed that the 2006 Chevrolet Cobalt was not safe for driving.

        d.    Defendant GM never disclosed that the 2006 Chevrolet Cobalt contained a faulty ignition switch.

126.    Consumers and the general public relied upon the representations of Defendant GM in the selection, purchase, and use of the 2006 Chevrolet Cobalt, and but for the falseness of those representations, use of the 2006 Chevrolet Cobalt would not have occurred.

127.    The representations by Defendant GM were false and untrue. The 2006 Chevrolet Cobalt was not in compliance with federal safety regulations and laws, was not of a merchantable quality, and was not safe for its intended use.

128.    Defendant GM was aware that the 2006 Chevrolet Cobalt had very dangerous properties and defects that could potentially cause injury and death to the users of the vehicle, including Plaintiff and decedent.

129.    At all times relevant to this action, prior to and at the time of the May 4, 2006 collision, Defendant GM knew, as a result of consumer complaints; reports of sudden shutting off of vehicles, collisions, injuries, and deaths; testing; research; and other information, that the 2006 Chevrolet Cobalt and its component parts were defectively designed and in violation of federal safety regulations and laws in that it had extremely dangerous properties and defects. Defendant GM further knew that the 2006 Chevrolet Cobalt had a propensity to suddenly shut off during operation.

130.    At all times relevant to this action, Defendant GM, despite the actual knowledge described herein above, intentionally suppressed the aforementioned information to keep such knowledge from the general public, including Plaintiff and decedent.

131.    Defendant GM's misrepresentations, along with its failure to warn and concealment of material information indicating that the 2006 Chevrolet Cobalt was defective and dangerous, constituted an act or practice that was deceptive or misleading in a material way.

132.    As a direct and proximate result of Defendant GM's deceptive business practices, Plaintiff and decedent were unaware of the latent dangers posed by the 2006 Chevrolet Cobalt and were unaware that the vehicle's defects were the cause of the decedent's death.

133.    As a result of Defendant GM's fraud, misrepresentations, and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

134.    Defendant GM's conduct, as set forth herein, was done with fraud and/or malice, and in conscious, willful, and reckless disregard of decedent's health, safety, and welfare.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION –
## FRAUDULENT MISREPRESENTATION

135.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

136.    Defendant GM misrepresented that the 2006 Chevrolet Cobalt had certain characteristics or benefits, namely that the vehicle was safe for use.

137.    Defendant GM misrepresented that the 2006 Chevrolet Cobalt was of a particular standard, quality, grade, style, or model, namely that the vehicle was safe for use.

138.    Defendant GM used deception, fraud, false pretenses, false promises, or misrepresentations in fraudulently representing and misrepresenting to the public that the 2006 Chevrolet Cobalt was safe for use, all the while knowing that the vehicle contained a deadly ignition switch defect.

139.    Upon information and belief, Defendant GM intended that consumers, including Plaintiff and decedent, rely upon the aforementioned misrepresentations and omissions.

140.    As a result of Defendant GM's fraud, misrepresentations, and omissions, Joseph Doerfler was fatally injured, suffered pre-impact terror, and died and Plaintiff has been damaged in an amount to be determined at trial.

141.    The aforementioned actions were committed by Defendant GM wilfully, wantonly, and with reckless disregard of the rights of consumers, including Plaintiff and decedent.

### AS AND FOR A TWELFTH CAUSE OF ACTION – DERIVATIVE CLAIMS OF PARENTS

142.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

143.    Joseph Doerfler's natural parents are entitled to his society, companionship, love, affection, and services and are liable for his medical and other expenses.

144.    Joseph Doerfler's natural parents were, are, and will be deprived of his society, companionship, love, affection, and services, and have been compelled to spend money for Joseph Doerfler's medical and funeral expenses, and thus have been damaged.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION – PUNITIVE DAMAGES

145.    Plaintiff hereby incorporates by reference all preceding paragraphs of Plaintiff's Complaint as if fully set forth herein.

146.    The wrongs done by Defendant GM were aggravated by malice, fraud, and reckless disregard for the rights of others, the public, Plaintiff, and decedent.

147.    Defendant GM was actually, subjectively aware of the risk involved in continuing to market its vehicles containing the defective ignition switch, including the 2006 Chevrolet Cobalt ridden in by Joseph Doerfler, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of consumers, including Plaintiff and decedent.

148.    Plaintiff asserts claims for exemplary and punitive damages in an amount allowed that would punish Defendant GM for its conduct and which would deter other manufacturers from engaging in such misconduct in the future.

149.    Plaintiff alleges that the conduct of multiple employees, officers, and managing agents of Defendant GM constituted malice, oppression, and/or fraud in that these persons wilfully designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, and/or distributed these vehicles, which were not fit for their intended purpose, with a knowing disregard of the rights and safety of consumers.

150.    Plaintiff alleges that the conduct of Defendant GM was "despicable" in that the conduct was motivated by monetary gain of the participants.

151.    Plaintiff alleges that the misconduct of Defendant GM was the direct, proximate, and legal cause of the injuries sustained by decedent and Plaintiff.

**WHEREFORE**, Plaintiff demands that she be awarded all of the damages and relief which exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction, along with punitive damages and the appropriate interest, costs, and disbursements of this action and such other and further relief as this Court may deem just and proper.

Dated: December 9, 2014

SIDNEY P. COMINSKY, LLC
By: Jennifer Caggiano
*Attorneys for Plaintiffs*
1500 State Tower Building
Syracuse, New York 13202

SIDNEY P. COMINSKY TRIAL LAWYERS, LLC STATE TOWER BUILDING SYRACUSE, NEW YORK 13202

TEL 315.475.3425

# EXHIBIT A

FILED: ONONDAGA COUNTY CLERK 12/09/2014 02:42 PM

INDEX NO. 2014EF4913

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 12/09/2014

Certificate# 31309

# Surrogate's Court of the State of New York
## Onondaga County
### Certificate of Appointment of Administrator

File #: 06-1031

IT IS HEREBY CERTIFIED that Letters in the estate of the Decedent named below have been granted by this court, as follows:

Name of Decedent: **Joseph C. Doerfler**  Date of Death: **May 4, 2006**

Domicile: **803 Granger Road Syracuse NY 13219**

Fiduciary Appointed: **Helen Bashucky**

Mailing Address: 803 Granger Road Syracuse NY 13219

Type of Letters Issued: **LETTERS OF ADMINISTRATION**

Letters Issued On: **June 28, 2006**

**Limitations:  L1 L2 L3**

and such Letters are unrevoked and in full force as of this date.

**Dated: October 23, 2014**

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Onondaga County Surrogate's Court at Syracuse, New York.

WITNESS, Hon. Ava S. Raphael, Judge of the Onondaga County Surrogate's Court.

_____
Ellen S. Weinstein, Esq., Chief Clerk
Onondaga County Surrogate's Court

*This Certificate is Not Valid Without the Raised Seal of the Onondaga County Surrogate's Court*