# Exhibit A



# CORPORATION SERVICE COMPANY®

**null / ALL**
**Transmittal Number: 13637696**
**Date Processed: 04/01/2015**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Rosemarie Williams<br>General Motors LLC<br>Mail Code 48482-038-210<br>400 Renaissance Center<br>Detroit, MI 48265 |

| | |
|---|---|
| **Entity:** | General Motors LLC<br>Entity ID Number  3113523 |
| **Entity Served:** | General Motors, LLC |
| **Title of Action:** | Brightbill, Joel; Payeur, Patricia vs. General Motors LLC; Takata Corp |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | U.S. District Court Northern District, California |
| **Case/Reference No:** | 15-cv-00741 LB |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 03/31/2015 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Law Offices of Bonner & Bonner (Sausalito, CA)<br>415-331-3070 |
| **Client Requested Information:** | Year:<br>Make:<br>Model:<br>VIN: |

| | |
|---|---|
| **Notes:** | Law Offices of Bonner & Bonner 475 Gate Five Rd, Suite 212, Sausalito, CA 94965<br>CSC Location document was served: Corporation Service Company which will do business in California as<br>Csc-Lawyers Incorporating Service 2710 Gateway Oaks Drive Suite 150N Sacramento, CA 95833 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### NORTHERN District of CALIFORNIA

| | |
|---|---|
| JOEL BRIGHTBILL, ON BEHALF OF HIMSELF AND ALL THOSE SIMILARLY SITUATED, PATRICIA PAYEUR<br>_Plaintiff(s)_<br><br>v.<br><br>GENERAL MOTORS, LLC., TAKATA CORPORATION, AND DOES 1-100<br>_Defendant(s)_ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.    15-cv-00741 SC

### AMENDED    SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_
GENERAL MOTORS, LLC.,
TAKATA CORPORATION, AND DOES 1-100

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
CHARLES A. BONNER
LAW OFFICES OF BONNER & BONNER
475 GATE FIVE ROAD, SUITE 212
SAUSALITO, CA 94965

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

_Richard W. Wieking_



Date: ___03/31/2015___

_Signature of Clerk or Deputy Clerk_

CHARLES A. BONNER, ESQ. SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES FEDERAL DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOEL BRIGHTBILL, ON BEHALF OF HIMSELF AND ALL THOSE SIMILARLY SITUATED, and PATRICIA PAYEUR<br><br>Plaintiffs,<br><br>vs.<br><br>GENERAL MOTORS, LLC., TAKATA CORPORATION, AND DOES 1-100,<br><br>Defendants. | Case No.: CV 15-00741 SC<br><br>**AMENDED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>CAUSES OF ACTION:<br>1.VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT<br>2.DECEPTIVE ACTS IN VIOLATION OF CALIFORNIA CONSUMER PROTECTION LAW<br>3.BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY<br>4.FRAUD BY CONCEALMENT<br>5.STRICT LIABILITY MANUFACTURING DEFECT<br>6.STRICT LIABILITY DESIGN DEFECT<br>7.STRICT LIABILITY-FAILURE TO WARN<br>8.INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>9.NEGLIGENCE-FAILURE TO WARN<br>10.NEGLIGENCE-RECALL, RETROFIT<br>11.EXPRESS WARRANTY<br>12.UNJUST ENRICHMENT<br>13.LOSS OF CONSORTIUM |

**JURY TRIAL DEMANDED**

# Contents

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. NATURE OF CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V. DOE DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    1. Mr. Joel Brightbill Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    2. Allegations against Takata Corporation . . . . . . . . . . . . . . . . . . . . . . . . 11

    3. Allegations against General Motors Corporation . . . . . . . . . . . . . . . . . . 18

VII. NUMEROSITY OF CLASS MEMBERS' COMPLAINTS . . . . . . . . . . . . . . 19

VIII. EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS . . . . . . . . . . 30

    1. Fraudulent concealment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

IX. CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    1. The Nationwide Consumer Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    2. The State Consumer Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    3. Numerosity and Ascertainability . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    4. Predominance of Common Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    5. Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    6. Adequate Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    7. Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

X. FIRST CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XI. SECOND CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

XII. THIRD CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

XIII. FOURTH CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

XIV. FIFTH CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

XV. SIXTH CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  48

XVI. SEVENTH CAUSE OF ACTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  49

XVII. NINTH CAUSE OF ACTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  50

XVIII. TENTH CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

XIX. ELEVENTH CAUSE OF ACTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  52

XX. TWELFTH CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53

XXI. THIRTEENTH CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . .  53

XXII. PRAYER FOR RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  54

Plaintiffs allege as follows:

## I. INTRODUCTION

1. This case is about Plaintiff JOEL BRIGHTBILL who suffered severe and permanent injuries, and scores of SIMILARLY SITUATED CLASS MEMBERS, who have sustained injuries and even deaths, caused by the failure of the Takata airbags installed in General Motors, LLC. vehicles which failed to deploy on impact. This is a lawsuit brought by Plaintiff Joel Brightbill and his Wife Patricia Payeur on behalf of themselves for personal and permanent injuries caused by the defective seat belt and defective airbag system in Mr. Brightbill's 2002 Chevrolet Trailblazer vehicle. Defendants' airbag system failed to deploy during an impact with a tree at a speed of approximately 45 mph, causing Mr. Brightbill severe injuries including, but not limited to, broken ankles, broken left femur, punctured lung, and face fractures. In addition, the GM seat belt failed to restrain Mr. Brightbill. [1]

## II. NATURE OF CLAIM

2. Plaintiff JOEL BRIGHTBILL brings this action on behalf of himself and on behalf of all persons similarly situated who purchased or leased Defective Vehicles manufactured, distributed, or sold by General Motors, which contain airbags manufactured by Defendant Takata, for claims under federal and state law. Plaintiff, based on personal knowledge as to his own acts, and upon information and belief as to all other matters, alleges as follows:

3. "Defective Vehicles" refers to all vehicles manufactured by GM, purchased or leased in the United States which have been installed with airbags manufactured by Defendant Takata and have been subject to an airbag-related warning or recall, including, but not limited to, the following: the 2002 Chevy Blazer, Buick LeSabre, Years 2002-2003; Buick Rendezvous, Years 2002-2003; Cadillac Deville, Years 2002-2003; Chevrolet Trailblazer, Years 2002-2003; Chevrolet Impala, Years 2002-2003; Chevrolet Monte Carlo, Years 2002-2003; Chevrolet Ventura, Years 2002-2003; GMC Envoy, Years 2002-2003; Oldsmobile Bravada, Years 2002-2003; Oldsmobile Aurora, Years 2002-2003; Oldsmobile Silhouette, Years 2002-2003; Pontiac

---

[1] SEE EXHIBIT 1, PHOTO OF PLAINTIFF 2002 CHEVY TRAILBLAZER SHOWING AIRBAG FAILED TO DEPLOY.[ATTACHED]

Bonneville, Years 2002-2003; Pontiac Vibe, Years 2002-2003. These "Defective Vehicles" are manufactured by General Motors United States which have airbags manufactured by Defendant Takata and are recalled at any point after the filing date of this Complaint for a reason relating to airbag defects and seatbelt defects.

4. This case flows directly from the admitted fact that Takata's airbag systems were defectively manufactured since at least 2001, and perhaps earlier. On Tuesday, November 18, 2014, the U.S. Department of Transportation's National Highway Traffic Safety Administration (NHTSA) announced the following:

> "[A]nnounced it is calling for a national recall of vehicles with certain driver's side frontal air bags made by Takata. 'By demanding this national recall, NHTSA has demonstrated once again that it will follow data and evidence to protect the lives of Americans on the road and to hold manufacturers accountable,' said Secretary Anthony Foxx.
> NHTSA contacted Takata and the vehicle manufacturers this week to call for the national recall of these vehicles after evaluating a recent incident that involved a failure in a driver's side air bag inflator outside an area of high absolute humidity.... As part of these efforts and its ongoing investigation into both the defect and the scope of the recalls, the agency also issued a General Order to Takata and all ten of the vehicle manufacturers that use Takata air bag inflators – BMW, Chrysler, Ford, General Motors, GM, Mazda, Mitsubishi, Nissan, Subaru, and Toyota – requiring each manufacturer to file, under oath, a detailed report and produce all related documents about completed, ongoing or planned testing of Takata inflators outside the current regional recall areas."[2]

5. GM, as the manufacturer of the subject vehicles, and Takata, as the manufacturer and seller of the subject defective airbags, have a duty under law to take all necessary steps to ensure that their products function as warranted, as the difference between life and possible death or severe injuries lies in the adherence to these legal duties. Defendants' airbags must function in an accident as represented, and for the intended purpose. Defendants, and each of them, placed profits before safety in the manufacturing of their passenger restraint system.

6. On April 28, 2004 NHTSA announced that the GM model "Chevrolet Trailblazer 2002 campaign ID number: 04v201000 [had a defective] component: seat belts [and the] potential

---

[2]    http://www.nhtsa.gov/About+NHTSA/Press+Releases/DOT-calls-for-national-recall-of-takata-driver-air-bags

number of units affected was 261,801, [involving] certain light duty pickup trucks and sport utility vehicles, which failed to conform to federal motor vehicle safety standard No. 209: "seat belt assemblies." "Consequently, the safety belt may not restrain the occupant as intended during a crash, and could result in injury to the occupant".

7. In 2002, Takata's airbag manufacturing plant in Mexico allowed a defect rate "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped. Takata cut corners to build cheaper airbags, and GM bought its airbags from Takata to save money. Takata and GM put profits ahead of safety. Instead of saving lives, faulty Takata airbags in GM automobiles are seriously injuring, killing and maiming drivers and passengers involved in otherwise minor and survivable accidents. Rather than take immediate remedial action to recall the defective airbags in order to prevent further injury and loss of life, Takata and GM have engaged in a ten-year pattern of deception, fraud, and concealment of this known deadly danger of its defective passenger restraint system.

8. Airbags are meant to inflate rapidly during an automobile collision. The airbag's purpose is to cushion occupants during a crash and provide protection to their bodies when they strike objects in the vehicle, such as the steering wheel, dash board, or windshield. When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those motor vehicles to make those vehicles safe. And one of the central safety features of any motor vehicle is the airbag.

9. Seatbelts are meant to restrain the occupant, preventing foreseeable injuries from being exacerbated and aggravated by protecting the occupant from impacting potentially dangerous objects in the vehicle, such as the steering wheel, dash board, or windshield. When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of the motor vehicles to make these vehicles safe. And two of the central safety features of any motor vehicle are the airbag and the seatbelt.

10. Airbags must deploy effectively on impact and the seatbelt must restrain effectively at the time of a vehicle accident, such as a collision. To accomplish the immediate deployment, airbag triggers and wires are connected to the airbag systems with highly conductive metals, and

1  the airbag systems use small explosive charges to immediately inflate the airbags upon being

2  triggered.

3      11. The defective Takata airbags do not deploy on impact. This failure to deploy has

4  resulted in injuries and deaths across the United States. Defendants Takata and GM, and each of

5  them, knew of the deadly airbag defect at least 13 years ago, but did nothing to prevent ongoing

6  injury and loss of life. Takata's first airbag defect recall stemmed from defective manufacturing

7  in 2000, but was limited (by Takata) to a recall of select Isuzu vehicles. Takata kept

8  manufacturing defective airbags; and GM kept installing them in their vehicles, marketing the

9  airbags as highly safe and of high quality.

10      12. On April 28, 2004, NHTSA announced that the GM model "Chevrolet Trailblazer 2002

11  campaign ID number: 04v201000 [had a defective] component: seat belts [and the] potential

12  number of units affected was 261,801, [involving] certain light duty pickup trucks and sport

13  utility vehicles, which failed to conform to federal motor vehicle safety standard No. 209: "seat

14  belt assemblies." GM seatbelts do not restrain the occupants upon impact, resulting in thousands

15  of injuries and deaths.GM has known of this defect in its seatbelts but has failed and continues

16  to fail to remedy the defective seatbelts in its vehicles.

17  ### III. JURISDICTION AND VENUE

18      13. The jurisdiction of this Court over the subject matter in this action is predicated upon

19  Diversity Jurisdiction, 28 U.S.C. §1332. The amount in controversy exceeds $75,000, exclusive

20  of interest and costs.  (2) The district courts shall have original jurisdiction of any civil action in

21  which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest

22  and costs, and is a class action in which-(A) any member of a class of plaintiffs is a citizen of a

23  State different from any defendant;(B) any member of a class of plaintiffs is a foreign state or a

24  citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member

25  of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or

26  subject of a foreign state. Jurisdiction is also proper in this Court pursuant to the Class Action

27  Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens

28

1  of states different from Defendants' home states, and the aggregate amount in controversy

2  exceeds $5,000,000, exclusive of interest and costs.

3  14. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the

4  Court's jurisdiction. This Court has personal jurisdiction over Defendants because they conduct

5  substantial business in this District, some of the actions giving rise to the Complaint took place

6  in this District, and some of Plaintiff's claims arise out of Defendants operating, conducting,

7  engaging in, or carrying on a business or business venture in this state or having an office or

8  agency in this state; committing a tortious act in this state; and causing injury to property in this

9  state arising out of Defendants' acts and omissions outside this state and at or about the time of

10  such injuries Defendants were engaged in solicitation or service activities within this state or

11  products, materials, or things processed, serviced, or manufactured by the defendant anywhere

12  were used or consumed within this state in the ordinary course of commerce, trade, or use.

13  15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part

14  of the events or omissions giving rise to these claims occurred in this District, the Defendants

15  have caused harm to Class Members residing in this District, and the Defendants are residents

16  of this District under 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in

17  this district.

18  ## IV. PARTIES

19  16. Plaintiff, Mr. Joel Brightbill, (herein after "Mr. Brightbill"), at all relevant times, owned

20  and was operating a 2002 Chevrolet Trailblazer, VIN# 1GNDT13S022112906.

21  17. Plaintiff, Mrs. Patricia Payeur, (herein after "Mrs. Payeur") at all times relevant is and

22  was the wife of Mr. Brightbill.

23  18. Defendant General Motors, LLC. (herein after "GM" & "Defendants") was and is a

24  corporation doing business within the County of Sonoma, in the State of California, with its

25  principal place of business in Detroit, Michigan.

26  19. At all times relevant hereto, Defendant General Motors, LLC. has operated and

27  manufactured and distributed vehicles in and around the County of Sonoma in the State of

28  California.

20. Defendant Takata Corporation ("Takata") is a foreign for-profit corporation, with its principal place of business and headquarters at 2500 Takata Drive, Auburn Hills, MI 48326 and in Tokyo, Japan. Takata is a specialized supplier of automotive safety systems which designs, manufactures, tests, markets, distributes, and sells airbags. Takata is a vertically-integrated company and manufactures component parts in its own facilities.

21. Takata also is headquartered and does business in Washington DC, specifically at "288 16th Street, NW, Suite 800, Washington DC, 20006 USA"

22. TAKATA CORPORATION, legal "person", is duly constituted and maintains its head office at ARK Hills South Tower, 4-5 Roppongi 1-Chome, Minato-ku, Tokyo, 106-8488, Japan.

23. TK HOLDINGS, INC., legal "person", is duly constituted and maintains its head office at 2500 Takata Drive, City of Auburn Hills, State of Michigan, 48326, U.S.A.

24. Each of the Defendants was an agent to the remaining Defendants, and in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining Defendants.

### V. DOE DEFENDANTS

25. The true names and capacities, whether individual, corporation, associate or otherwise, of Defendants named herein as Does 1 through 100, inclusive, are unknown to Plaintiffs and therefore said Defendants are sued under fictitious names. Defendants are informed and believe and based thereon allege that said unknown Defendants, and each of them, individually and collectively, is responsible for the wrongful acts alleged herein and, therefore, liable to Plaintiffs as alleged herein. Unless otherwise indicated, each Defendant was acting in the course and scope of said agency and /or employment, with the knowledge and/or consent of said Defendant. Plaintiffs will seek to amend this complaint to allege the true names and capacities of these Doe Defendants when they are ascertained.

# VI. STATEMENT OF FACTS

26. On or about February 16, 2014, Mr. Brightbill was driving Eastbound on Guerneville Road west of Forestview Dr., at approximately 45 mph, in an unincorporated area in the City of Santa Rosa after leaving a Sweat Lodge.

27. On or about February 16, 2014 at approximately 2:40 p.m., Mr. Brightbill drifted off the roadway and ran off the shoulder of Guerneville Road, drove into a dirt ditch and hit a tree head on, approximately .3 miles from Fulton Rd.

28. Mr. Brightbill had to be extricated from the 2002 Chevrolet Trailblazer at approximately 2:49 p.m., having incurred severe injuries. Mr. Brightbill was wearing his seatbelt at the time of his accident.

29. The Takata airbag installed in the 2002 Chevrolet Trailblazer, manufactured by GM, failed to deploy. The GM seatbelt was defective and failed to restrain Mr. Brightbill. The design and manufacturing defects of Defendants' passenger restraint system directly and proximately caused severe injuries to Mr. Brightbill. Mr. Brightbill suffered broken ankles, a broken left femur, a punctured lung, and facial fractures. He was transported to Santa Rosa Memorial Hospital. He subsequently underwent a series of treatments including multiple surgeries at Kaiser in Santa Rosa and Kaiser in Oakland.

## 1. Mr. Joel Brightbill Damages

30. Defendant's acts and omissions were the legal cause of the following damages and injuries to Plaintiff, Mr. Joel Brightbill,

   a. Bodily physical injuries; Multiple lacerations to head, nose unstable, complicated facial fractures, bilateral open ankle fractures, left femur fracture, multiple lacerations;

   b. Emotional pain and suffering, emotional distress, and anxiety;

   c. Permanent physical injuries;

   d. Loss of enjoyment of life, humiliation, shame, suffering and misery.

   e. Costs of medical treatment; and other economic and non-economic damages.

## 2. Allegations against Takata Corporation

31. An airbag is a vehicle safety device that is built into steering wheels and dashboards, and into the sides of some vehicles. It is an occupant restraint system consisting of a flexible fabric envelope or cushion. The Takata airbags contained in the Defective 2002 Chevrolet Trailblazer cannot be relied upon to provide the expected safety.

32. Airbags are designed to inflate or "launch" rapidly with nitrogen gas when there is very fast deceleration in the event of an accident. Its purpose is to cushion occupants during a crash and to provide protection to their bodies from collision with objects inside the vehicle, such as the steering wheel or windshield; unfortunately, there are thousands of reported accidents in which the Takata airbags failed in GM vehicles, including the accident in which Mr. Brightbill was injured.

33. Takata is one of the largest manufacturers and suppliers of airbags in the world, accounting for approximately one-fifth of the global market. As such, millions of drivers and passengers have come to rely on its airbags for safety.

34. This case arises from the recent string of recalls and the Defendants' deceptive and unlawful actions associated with the fatally defective airbags manufactured by the Takata Defendants and installed by the Vehicle Manufacturer Defendants in nearly eight million (8,000,000) vehicles. The Defendants manufactured or installed defective airbags in millions of vehicles, actively concealing the defects from federal regulators and from the public.

35. The manufacturing defects in Takata's airbags date back to at least 2001, when some airbags produced by Takata between April 2000 and September 2002 were said to contain manufacturing defects. Takata was aware of the potential defect as early as 1999 and had learned at least by 2001 that the defect had manifested, when the dangers associated with its airbags came to light in Isuzu vehicles and the first recall was issued. Additional recalls were announced by the Vehicle Manufacturer Defendants from 2008 to 2011.

36. Since at least 2001, Takata airbags have failed to deploy and have killed and horrifically injured scores of people. The Takata Defendants and the GM Defendants knew of the airbag defects for possibly over a decade, yet they failed to swiftly take proper safety measures or even

report this crucial information to federal regulators. It has been over a decade, and the Defendants are still purportedly grappling with the severity of the problem.

37. Although Takata at the time reported to GM that it was unable to find a cause, according to two former Takata employees, Takata had secretly tested 50 airbags at its Michigan facility and determined there was a startling defect with the steel inflators that rendered them vulnerable to rupture. Two (2) of the airbag inflators which were tested showed cracks and "rapid disassembly" (or exploded) and Takata engineers theorized that a welding problem with the inflator's canister, which holds the airbag's explosives, made the airbags vulnerable to split or rupture. In response, Takata engineers attempted to design prototypes to remedy the issue. The former employees, one of whom was the Vice-President for Engineering, reported that three (3) months later, Takata's management ordered the testing to be stopped and all the testing data and test results to be deleted and destroyed. "All the testing was hush-hush," one former employee said. "Then one day, it was, 'Pack it all up, shut the whole thing down.' It was not standard procedure.'" Instead of acknowledging and addressing the dangerous defect, Takata chose to continue manufacturing and selling millions of airbags with a known potentially fatal defect. This fact was published in a New York Times article entitled "Takata Saw and Hid Risk in Airbags in 2004, Former Workers Say" dated November 6, 2014.[3]

38. In addition, Takata faced a series of quality control problems related to its airbags. In particular, airbags were being delivered to automakers wet or damaged. Airbags were not always properly inspected and checks and balances which had been introduced to keep airbags in the appropriate condition were being ignored, Id.

39. Takata was aware that the mishandling of airbags and airbag inflators created a danger. A Takata local manager noted in October 2005 that "[t]he propellant arrangement inside is what can be damaged when the airbags are dropped," which is "why it is important to handle our product properly" Id.

---

[3]    http://www.nytimes.com/2014/11/07/business/airbag-maker-takata-is-said-to-have-conducted-secret-tests.html?_r=0

40. Nonetheless, even after stricter quality controls were introduced, Takata's production facilities did not adhere to Takata's internal safety rules and resisted taking back damaged or wet airbags, in an effort to keep up with the demand of automakers Id.

41. Only as late as 2008 did U.S. safety regulators finally become apprised of the serious dangers posed by the Takata airbags, and even then, federal officials lacked a complete and accurate understanding of the risks to consumers, due to the Defendants' obfuscation and destruction of relevant documents.

42. Takata has offered five different explanations for the defective airbags which failed to deploy on many occasions or other occasions deployed with an explosion like a hand grenade. Takata's five explanations for the defective airbags are as follows: (1) "between late 2001 and late 2002, workers at a Takata factory in Monclova, Mexico, had left moisture-sensitive explosives used in airbag inflators on the plant floor, making them prone to "overly energetic combustion"; (2) "Takata engineers next linked the defect to its factory in Moses Lake, Wash. Between 2000 and 2002, a flaw in a machine that presses air bag explosives into wafers had made the explosives unstable"; (3) "Takata engineers came up with yet another explanation for the ruptures by asserting that, beginning in September 2001, machine operators at the Moses Lake plant could have inadvertently switched off an "auto reject" function that weeded out poorly made explosives that can become unstable..."; (4) "To make matters worse, plant workers had kept crucial records in unreliable, handwritten notes, making it difficult to identify which batches might contain defective parts..."[4]; and (5): The fifth explanation comes from a New Times article dated June 23, 2014, Takata's admission that it had "improperly stored chemicals and had mishandled the manufacture of explosive propellants used in the air bags, at its plant in Mexico. The manufacturer had also failed to keep adequate records of quality control, making it difficult to identify vehicles with potentially defective air bags."[5]

---

[4] http://www.nytimes.com/2014/09/12/business/air-bag-flaw-long-known-led-to-recalls.html
[5] http://www.nytimes.com/2014/06/24/business/international/honda-nissan-and-mazda-join-recall-over-faulty-air-bags.html

43. It wasn't until its April 2013 "Direct Information Report" to the Federal NHTSA that Takata finally admitted that its affected inflators were installed as original equipment in vehicles manufactured by car manufacturers other than GM.[6]

44. Despite this shocking record of callous disregard for consumer safety, Defendants Takata and GM have been slow to report the full extent of the danger to drivers and passengers and failed to issue appropriate recalls. Defendants GM and the Takata Defendants provided contradictory and inconsistent explanations to regulators for the defects in Takata's airbags, leading to more unnecessary confusion and delay. The risks of dangerous, defective airbags and the number of vehicles affected were not disclosed for several years. Takata's airbags, which failed to deploy upon impact, present a potentially and actually lethal danger. Takata and GM repeatedly failed to fully investigate the problem and to issue proper and timely recalls, allowing the danger problem to proliferate and to cause numerous injuries. At least 134 injuries and 4 deaths have been reported over the last 13 years on the NHTSA website.

45. On October 22, 2014, the NHTSA issued a press release, urging affected individuals to "act immediately," and that "[r]esponding to these recalls, whether old or new, is essential to personal safety", the whole as appears more fully from a copy of the NHTSA Press Release entitled "Consumer Advisory: Vehicle Owners with Defective Airbags Urged to Take Immediate Action" dated October 22, 2014 and from a copy of the Reuters article entitled "U.S. regulator to Takata. This class action is urgent and necessary to provide notice and remedies for the affected class members because the full scope of the defects has yet to be determined. More information about Takata's defective airbags continues to be uncovered to date.

46. On October 29, 2014, the NHTSA's Deputy Administrator sent a letter to Takata in follow-up to NHTSA's "ongoing investigation into defective Takata air bags, and to express a number of serious concerns that must be resolved to ensure public safety." The NHTSA's letter further stated: Takata has supplied tens of millions of air bag inflators to various vehicle manufacturers over the last fifteen years that, when functioning as designed, save lives and

---

[6] NHTSA Website. Takata Defect Information Report, 5 page transmittal letter dates April 11, 2013

AMENDED COMPLAINT FOR DAMAGES - 14

reduce or prevent serious injuries in crashes. Actual and potential inflator failures have led to a large number of recalls in the last eighteen months.... I am deeply troubled by this situation because of the potential risk for death and injury as well as the erosion of public confidence in a proven life-saving technology."

47. At the December 3, 2014, Congressional hearing, Takata's representative, Vice-President Hiroshi Shimizu, continued to testify falsely that the known airbag incidents were "anomalies," although admitting the existence of manufacturing and design defects. Takata testified that the "root causes" for the airbag failures include: (1) age of the unit, (2) persistent exposure over time to conditions of high absolute humidity, and (3) potential production issues.

48. As recently as 2011, supervisors at Takata's Monclova plant were reporting potentially lethal defects in the manufacturing process. Based on internal Takata documents, Takata was unable to meet its own standards for safety up until at least 2011, the whole as appears more fully from a copy of the Reuters article entitled "Exclusive: Takata engineers struggled to maintain air bag quality, documents reveal" dated October 17, 2014.

49. In advertisements and promotional materials, GM maintained that their vehicles were safe and reliable. Purchasers and/or lessees of the Defective Vehicles were led to believe that their vehicles were safe and reliable. Millions of vehicles which contained defective Takata-manufactured airbags were sold by GM and other automakers. Vehicles with defective airbag systems are not "safe" and "reliable", as the Defective Vehicles were advertised and promoted to be.

50. To date, over 14,000,000 vehicles with Takata airbags have been recalled worldwide and there are reports that additional vehicles which have not yet been disclosed by the Defendants could join the list of recalls. The large majority of those recalls have occurred within the last year despite the fact that many of the vehicles were manufactured with potentially defective and dangerous airbags over a decade ago.

51. According to NHTSA, as of October 22, 2014, more than five (5) million GM and Acura vehicles are potentially affected by Takata-manufactured airbags; 2.7 million BMW, Chrysler, Ford, GM, Mazda, Mitsubishi, Nissan, Subaru and Toyota vehicles are affected.

52. A vehicle purchased or leased under the reasonable assumption that it is "safe" and "reliable" as advertised is worth more than a vehicle known to be subject to the risk of a possibly life-threatening failure of an airbag system. A vehicle purchased or leased under the assumption that it was produced in conformity with high safety standards is worth more than a vehicle produced in a system that promotes expedience over quality and safety and hides known defects. Vehicle owners and/or lessees have a reasonable expectation that automakers will abide by federal, statutory, and civil law obligations to affirmatively disclose known defects in a timely manner.

53. Unfortunately, this did not happen and, as a result, all purchasers and/or lessees of the Defective Vehicles overpaid for their vehicles at the time of purchase. As news of the dangerous and defective airbag systems, and the Defendants' quality control issues surfaced in 2014, the value of the Defective Vehicles has plummeted and will continue to do so.

54. Takata and GM knew or should have known that the Takata airbags installed in millions of vehicles were defective. Defendants Takata and GM, by concealing their knowledge of the nature and extent of the defects from the public, have shown a blatant disregard for public welfare and safety.

55. Takata is one of the world's leading suppliers of airbag systems, supposedly helping to protect people who ride in all types of vehicles. Takata airbags are supposed to be high-performance and meet or exceed the legal regulations of countries around the world and the stringent requirements of the automakers.

56. Takaya claims the following: "In 1976, Takata became the first company in Japan to begin R&D related to airbags. In 1987, Takata began to supply airbags to the rest of the world. Today, Takata is one of the few manufacturers of airbags with fully integrated development, design, and manufacturing capabilities for airbag systems. Our lineup of products consists of: airbag operating control units, impact sensing devices, airbag modules (covering all aspects from cushion materials to bag inflation technology) and several other related products."

57. Takata makes the following representation to consumers: "One technology that is an absolute must for airbag manufacturers: the technology for sensing collision impact severity and

performing all functions successfully to inflate the airbag within .005 seconds. To do this, we must have high-precision technology that ensures systems performing operations in time intervals of milliseconds (.0001 seconds). Going forward, Takata will continue to accept the challenge of developing the next generation of safety technologies and airbag systems."[7]

58. Takata airbags were distributed to multiple vehicle manufacturers and installed in millions of vehicles in the United States during the last 13 years. Contrary to their promises, Takata airbags have repeatedly failed to deploy on impact, failing in the exact purpose for which they were designed. Takata airbags are now the subject of a massive National Highway Traffic Safety Administration ("NHTSA") recall that affects millions of vehicles. Defendants were aware of the serious nature and extent of the defects and concealed their knowledge from the public in blatant disregard for public welfare and safety.

59. Takata Corporation has, since at least 2007, claimed to prioritize driver safety as its "dream." Based on that "dream," they claimed to be "motivated by the preciousness of life" and pledged to "communicate openly and effectively." Takata has failed to live up to its dream by: (1) manufacturing, distributing, and selling airbags that can cause serious bodily injury or death by their failure to deploy; and (2) by hiding the fact of its defective airbags from U.S. regulators and from the public at large. Takata has engaged in breaches of the implied warranty of merchantability, violations of consumer protection statutes, and common law fraudulent concealment claims.

60. Defendant TK Holdings, Inc. (hereinafter "TK Holdings") is an American holding corporation with its head office in Michigan. It is a subsidiary of Defendant Takata Corp. that designs, manufactures, tests, markets, distributes, supplies, and sells airbags. TK Holdings both directly and through subsidiaries, owns, and operates fifty-six manufacturing plants in twenty countries.

61. Defendants' despicable, intentional, reckless, and grossly negligent conduct amounts to a willful and conscious disregard for the rights and safety of the public, including Plaintiffs.

_____

[7] http://www.takata.com/en/products/airbag.html

AMENDED COMPLAINT FOR DAMAGES - 17

1  Defendants acted with oppression, malice, and fraud. Plaintiffs seek to recover damages against

2  Defendants in order to make Plaintiffs whole as well as to ensure future safety for drivers of

3  Defective Vehicles and public safety as a whole.

4  **3. Allegations against General Motors Corporation**

5  62. Defendant General Motors Corporation (hereinafter "GM") is an American corporation

6  with its head office in Detroit. It is the parent company of Defendant GM Canada and it is one

7  of the "Big Three" in the United States Automotive Industry. GM develops, manufactures,

8  distributes, and services vehicles, parts, and accessories worldwide.

9  63. GMC Vehicles that are sold all over the World and contain airbags manufactured by the

10  Takata Defendants. To date, GM Vehicles which are not in the high humidity areas have not

11  been recalled in the U.S. for having the Defective Takata airbags, including the 2002 Chevrolet

12  Trailblazer.

13  64. The Owner's Manual represents:

14  "When should an air bag inflate?

15  The driver's and right front passenger's frontal air bags are designed to inflate in
   moderate to severe frontal or near-frontal crashes. But they are designed to inflate

16  only if the impact speed is above the system's designed 'threshold level.'
   If your vehicle goes straight into a wall that doesn't move or deform, the threshold

17  level is about 9 to 16 mph (14 to 26 km/h). The threshold level can vary, however,
   with specific vehicle design, so that it can be somewhat above or below this range.

18  If your vehicle strikes something that will move or deform, such as a parked car, the

19  threshold level will be higher. The driver's and right front passenger's frontal air
   bags are not designed to inflate in rollovers, side impacts, or rear impacts, because

20  inflation would not help the occupant."

21  65. Contrary to the representation in the Owner's Manual for the 2002 Chevrolet

22  Trailblazer, Mr. Brightbill was driving at approximately 45 mph when he impacted the tree and

23  the airbags did not deploy. Further, the seatbelt failed to restrain Mr. Brightbill.

24  66. On April 28, 2004, NHTSA announced that the GM model "Chevrolet Trailblazer 2002

25  campaign ID number: 04v201000 [had a defective] component: seat belts [and the] potential

26  number of units affected was 261,801, [involving] certain light duty pickup trucks and sport

27  utility vehicles, which failed to conform to federal motor vehicle safety standard No. 209: "seat

28  belt assemblies." One of the two sensors in the driver's and front passenger's seat belt retractors

could be inoperative. The seat belt retractors will lock when the belt webbing is extracted during a crash; however, the mechanism that locks the seat belt retractor when the vehicle decelerates quickly, such as heavy braking, may not operate as intended. Consequently, if this were to occur, the safety belt may not restrain the occupant as intended during a crash, and could result in injury to the occupant."[8]

## VII. NUMEROSITY OF CLASS MEMBERS' COMPLAINTS

67. Citizens across the United States have made their concerns about the airbag and restraint systems publicly known to the National Highway Traffic Safety Administration (NHTSA). NHTSA is a governmental agency designed to keep our roads safe. The following are just a sampling of scores of Class Members who have complained about the failure of the Takata Airbags to deploy upon impact, often resulting in serious and severe injuries:

68. Date Complaint Filed: 02/05/2015 Component(s): AIR BAGS, SEAT BELTS
Date of Incident: 01/24/2015 NHTSA ID Number: 10681428
2003 Chevrolet Trailblazer
Crash: Yes Number of Injuries: 1
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S132...
Summary: While Driving Approximately 35 Mph, The Vehicle Slid On Ice And Crashed Into A Cement Wall. **The Air Bags Did Not Deploy And The Seat Belt Did Not Restrain The Contact.** The Contact Sustained Chest, Neck, And Knee Injuries That Required Medical Attention. A Police Report Was Filed. The vehicle was driven to the contact's residence.

69. Date Complaint Filed: 11/25/2014 Component(s): AIR BAGS
Date of Incident: 11/23/2014 NHTSA ID Number: 10660781
2003 Chevrolet Trailblazer
Crash: Yes Number of Injuries: 1
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S432...
Summary: The contact owned a 2003 Chevrolet trailblazer. While driving approximately 70 mph, a deer jumped in front of the vehicle causing the contact to crash. **The air bags failed to deploy.** The contact sustained a neck and back injury that required medical attention. A police report was filed. The vehicle was destroyed. The manufacturer was notified of the failure. The failure mileage was 170,000.

70. Date Complaint Filed: 08/19/2014 Component(s): AIR BAGS
Date of Incident: 07/13/2014 NHTSA ID Number: 10626246

---

[8]http://www.odi.nhtsa.dot.gov/cars/problems/recalls/results.cfm?SearchType=QuickSearch&rcl_ID=04V201000&summary=true

2003 PONTIAC VIBE
Crash:Yes Number of Injuries:1
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 5Y2SL64803Z...
Summary: My 2003 Pontiac vibe received over $10000 in damages and was judged totaled
due to a collision with a Lincoln Towncar on July 13, 2014. The Lincoln struck the front of
my car at an angle while making a left turn into my path from oncoming traffic. I was
traveling approximately 40-45 mph and had little time to react and brake prior to the
impact. The impact drove the front bumper into the radiator and the radiator into the engine
doing a considerable amount of damage under the hood. There was no obvious physical
damage to the passenger compartment but **my concern is that the air bags did not deploy
to prevent me from being injured.** The police officer responding to the incident also
indicated surprise that the air bags would not deploy in this type of accident. there had been
prior recalls on my vehicle that were air bag related and I had responded to all of them by
taking the car in for servicing.

71. Date Complaint Filed: 12/07/2013 Component(s): AIR BAGS
Date of Incident: 11/29/2013 NHTSA ID Number: 10555192
2003 PONTIAC VIBE
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 5Y2SM64863Z...
Summary: I was in an accident on 11/29/2013 on crow canyon, San Ramon, CA and the
individual in front of me slammed on there brakes and in turn I did the same and my
vehicle hit the vehicle in front of me and totaled my front end. **The airbags did not deploy**
and my body slammed into the steering wheel which in turn hurt my chest badly.

72. Date Complaint Filed: 11/07/2013 Component(s): AIR BAGS, STRUCTURE
Date of Incident: 09/26/2013 NHTSA ID Number: 10551243
2003 Chevrolet Trailblazer
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S832...
Summary: Driving approximately 40 to 43 mph when another vehicle turned directly in
front of me. Total frontal damage buckling up hood of my car as I hit other vehicle in front-
end passenger side. **Their airbag deployed but mine didn't**, even with total front end
damage to my car. Had seatbelt on, but due to impact still pulled my whole body forward
(like crash test dummy). This was a very hard crash totaling my car.

73. Date Complaint Filed: 10/19/2012 Component(s): AIR BAGS
Date of Incident: 10/17/2012 NHTSA ID Number: 10481117
2003 PONTIAC VIBE
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
Summary: Had A Drunk Driver Hit Me Head-On (He May Have Been Doing 40mph..) I
Was Doing Maybe 25 mph Down A Major Blvd. **The Airbags Did Not Deploy.** Drunk
Was Arrested At The Scene. Both Cars Totaled. His Airbag Went Off.

74. Date Complaint Filed: 09/09/2012 Component(s): AIR BAGS
Date of Incident: 09/08/2012 NHTSA ID Number: 10474420
2003 PONTIAC VIBE
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 5Y2SL62883Z...

Summary: I was driving south on Nottingham dr. at the intersection of north Westover blvd ( if had a green light ) when a white Lexus turned left on to n. Westover blvd in front of me. The Lexus was too close to avoid and the front passenger-side corner of my car impacted the rear passenger-side door and rear wheel of the Lexus, turning it 180 degrees clockwise. **The side air curtains of the lexus deployed but the air bags in my car did not deploy.** I Believe The Air Bags In My Car Should Have Deployed.

75. Date Complaint  Filed: 01/21/2009 Component(s): AIR BAGS
Date of Incident: 01/19/2009 NHTSA ID Number: 10255916
2003 PONTIAC VIBE
Manufacturer: General Motors LLC Vehicle Identification No. (VIN):  Not Available
Summary: 19 Jan 2009, 2003 Pontiac Vibe was involved in a front end collision. **Air bags failed to deploy upon impact.** Three People Were In The Vibe.

76. Date Complaint Filed: 06/05/2014 Component(s): AIR BAGS
Date of Incident: 11/11/2007 NHTSA ID Number: 10596289
2003 Chevrolet Trailblazer
Crash: Yes Number of Injuries: 1
Manufacturer: General Motors LLC Vehicle Identification No. (VIN):  Not Available
Summary: The contact stated that while driving an unknown speed, the contact abruptly applied the brakes to avoid a crash. The contact lost control of the vehicle and crashed into a cement barrier. **The driver's side air bag failed to deploy.** The contact suffered injuries to the neck and a broken leg.

77. Date Complaint Filed: 02/21/2006 Component(s): AIR BAGS
Date of Incident: 02/17/2006 NHTSA ID Number: 10150755
2002 Buick LaSabre
Crash: Yes Number of Injuries: 2
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1G4HR54K22U...
Summary: The contact stated while driving 35 mph the vehicle went out of control, hit a ditch and ran into a tree on the passenger side door. **The Air Bags Did Not Deploy.** The two occupants of the vehicle sustained injuries and a police report was filed. Updated 3/9/2006

78. Date Complaint Filed: 01/07/2005 Component(s): AIR BAGS
Date of Incident: 11/04/2004 NHTSA ID Number: 10103806
2002 Buick LaSabre
Manufacturer: General Motors LLC Vehicle Identification No. (VIN):  1G4HP54KX24...
Summary: The consumer's vehicle was hit on the side by a motorist who was driving at 50 mph, **and the side air bags did not deploy.**

79. Date Complaint Filed: 01/20/2004 Component(s): AIR BAGS
Date of Incident: 09/25/2003 NHTSA ID Number: 10048063
2002 Buick LaSabre
Manufacturer: General Motors LLC Vehicle Identification No. (VIN):  1G4HP54KX24...

Summary: The vehicle was involved in a frontal collision while driving at 25 mph. Upon impact, **neither the driver side nor the passenger side air bags deployed.**

80. Date Complaint Filed: 12/01/2014 Component(s): AIR BAGS
Date of Incident: 10/26/2002 NHTSA ID Number: 10654364
2003 Chevrolet Trailblazer
Crash: Yes Number of Deaths: 1
Manufacturer: General Motors LLC Vehicle Identification No. (VIN):  Not Available
Summary: Consumer stated her husband was involved in an accident, and **the air bags did not deploy.** Consequently, he died from his injuries. UPDATED 02/09/15.

81. Date Complaint Filed: 06/04/2002 Component(s): AIR BAGS
Date of Incident: 06/01/2002 NHTSA ID Number: 8011040
2002 Buick LaSabre
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1G4HR54K31U...
SUMMARY: While driving at 35 mph vehicle went off the side of road on an incline, hit left front of vehicle, and went into a tree. **Upon impact, none of the air bags deployed.**

82. Date Complaint Filed: 04/20/2004 Component(s): AIR BAGS
Date of Incident: 03/16/2002 NHTSA ID Number: 10064651
2002 Buick LaSabre
Manufacturer: General Motors LLC Vehicle Identification No. (VIN):  1G4HP54K724...
Summary: While driving 30-35 mph consumer's vehicle was involved in a rear end collision. **Upon impact, air bags failed to deploy.**

83. Date Complaint Filed: 02/27/2002 Component(s): AIR BAGS
Date of Incident: 11/27/2001 NHTSA ID Number: 758708
2002 Buick LaSabre
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1G4HP54K424...
Summary: My Wife Arlene L Holmquist was driving home went across the middle line and onto the opposite side of the road. Fractured nose facial cuts and bruises as well as bruises on her upper and lower body. **None of the air bags deployed/** car was hit in the center of the front of the car also major damage on the left front of the car.

84. Date Complaint Filed: 08/20/2014 Component(s): AIR BAGS
Date of Incident: 03/10/2008 NHTSA ID Number: 10626676
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S622...
Summary: I struck a vehicle broadside when he ran a stop sign. I was going approximately 30 to 35 mph when I struck his vehicle. The air bags did not deploy. I was taken away in an ambulance and had damage to my cervical spine, stomach and mid spine. I did inquire where I had the vehicle repaired, about $8k in damages, about why **the airbags didn't deploy.**

85. Date Complaint Filed: 03/10/2014 Component(s): AIR BAGS

Date of Incident: 02/14/2008 NHTSA ID Number: 10568108
2003 Chevrolet Trailblazer
Crash: Yes Number of Injuries: 1
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S132...
Summary: The Contact was driving 40 mph, and crashed into the side of another vehicle.
**The air bags failed to deploy.** The contact sustained injuries to the right shoulder, spinal
stenosis and fractured knees. The contact stated that she had also been involved in two prior
crashes in which the air bags failed to deploy.

86.  Date Complaint Filed: 05/12/2014 Component(s): AIR BAGS, WHEELS
Date of Incident: 05/10/2014 NHTSA ID Number: 10587773
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
Summary: I was driving and a guy in a car came over in my lane and hit me head on causing
me to flip my vehicle 4 times, **my airbags didn't come out** and the guy that hit me was
under the influence, my vehicle was totaled.

87. Date Complaint Filed: 03/07/2011 Component(s): AIR BAGS
Date of Incident: 03/06/2007 NHTSA ID Number: 10386658
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S622...
Summary: The contact owns a 2002 chevrolet trailblazer. While driving approximately 70
mph in rainy weather, the contact drove over a puddle of water and lost control of the
vehicle. She then engaged the brakes and the vehicle swerved abnormally. The vehicle spun
around and crashed into the outer median. **The air bags did not deploy** and the contact
sustained a shoulder injury.

88. Date Complaint Filed: 01/22/2011 Component(s): AIR BAGS
Date of Incident: 01/19/2011 NHTSA ID Number: 10378297
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S122...
Summary: **Airbags didn't deploy**

89. Date Complaint Filed: 07/19/2010 Component(s): AIR BAGS
Date of Incident: 12/04/2009 NHTSA ID Number: 10343917
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
Summary:The contact owns a 2002 Chevrolet Trailblazer. While driving approximately 70
mph the vehicle was involved in a crash in which **the air bags did not deploy**.

90. Date Complaint Filed: 06/21/2010 Component(s): AIR BAGS
Date of Incident: 06/19/2010 NHTSA ID Number: 10339285

CHEVROLET TRAILBLAZER 2002
Crash: Yes
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
Summary: The contact owns a 2002 Chevrolet Trailblazer. The contact was driving in rainy
weather when he lost control of the vehicle and rolled over approximately fifteen feet. **The air
bags did not deploy.**

91. Date Complaint Filed: 02/26/2010 Component(s): AIR BAGS
Date of Incident: 01/07/2010 NHTSA ID Number: 10314643
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S022...
SUMMARY: I observed a GM odyssey minivan traveling northbound too fast for the icy,
snowy road conditions. The minivan driver lost control of her vehicle and struck my 2002
trailblazer head-on in the southbound lane. At the time of impact, my trailblazer was completely
stopped with my right foot pressed firmly on the brake pedal. The gm odyssey airbags fully
deployed. **My trailblazers airbags did not deploy.**

92. Date Complaint Filed: 02/26/2010 Component(s): AIR BAGS
Date of Incident: 09/22/2006 NHTSA ID Number: 10314629
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Number of Injuries: 2
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S022...
Summary: I Was Traveling At Approx 44 Mph Southbound On Blankenbaker Ln
(Louisville Ky) When Vehicle 1 Failed To Yield Right Of Way At Intersection And Made A
Left Hand Turn Eastbound I Struck Vehicle 1 (A 1991 Cadillac Brougham). I Fractured My
Sternum And Bruised My Heart. **The Airbags Did Not Deploy.**

93. Date Complaint Filed: 12/07/2009 Component(s): AIR BAGS
Date of Incident: 11/20/2009 NHTSA ID Number: 10294686
CHEVROLETTRAILBLAZER2002
Crash: Yes
Number of Injuries: 4
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S022...
Summary: Hit head on by another car totaling my car, **Airbags Did Not Deploy.**

94. Date Complaint Filed: 04/01/2009 Component(s): AIR BAGS
Date of Incident: 03/26/2009 NHTSA ID Number: 10263896
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Number of Injuries: 1
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S122...
Summary: I was in a car accident, where I was traveling at about 35 mph. I hit the tree at a
speed of about 28-30 mph. After initial impact I was rushed to the hospital due to unconscious

and facial contusions. During the first moments after the accident, one of the first things officers, EMTS and witnesses said was **" I can't believe the airbags didn't go off"**.

95. Date Complaint Filed: 01/08/2009 Component(s): AIR BAGS
Date of Incident: 01/08/2009 NHTSA ID Number: 10254230
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S822...
Summary: The contact owns a 2002 Chevrolet Trailblazer. While driving approximately 15 mph, the contact struck a patch of ice and the vehicle crashed into a light pole. The vehicle was completely destroyed and **none of the air bags deployed.**

96. Date Complaint Filed: 11/03/2008 Component(s): AIR BAGS
Date of Incident: 10/26/2008 NHTSA ID Number: 10247593
CHEVROLET TRAILBLAZER 2002
Crash: Yes
Number of Injuries: 1
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
Summary: The contact owns a 2002 chevrolet trailblazer. While driving approximately 35 mph on normal road conditions, the vehicle swayed across the road and across an embankment. During the massive rollover crash, **the air bags failed to deploy.** The contact sustained severe injuries.

97. Date Complaint Filed: 07/03/2007 Component(s): AIR BAGS
Date of Incident: 05/30/2007 NHTSA ID Number: 10195216
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S922...
SUMMARY: **The air bags failed to deploy.**

98. Date Complaint Filed: 05/14/2007 Component(s): AIR BAGS
Date of Incident: 05/02/2007 NHTSA ID Number: 10190637
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S822...
SUMMARY: **The air bags failed to deploy.**

99. Date Complaint Filed: 11/03/2006 Component(s): AIR BAGS
Date of Incident: 10/31/2006 NHTSA ID Number: 10172555
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S122...
SUMMARY: **Upon impact the air bag did not inflate.**

100.     Date Complaint Filed: 11/03/2006 Component(s): AIR BAGS
Date of Incident: 07/01/2006 NHTSA ID Number: 10172513
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S522...
SUMMARY: **The air bags did not deploy.**

101.      Date Complaint Filed: 08/25/2006 Component(s): AIR BAGS
Date of Incident: 08/20/2006 NHTSA ID Number: 10166565
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S022...
SUMMARY: **Vehicle had side and front air bags that did not operate.**

102.      Date Complaint Filed: 05/15/2006 Component(s): AIR BAGS
Date of Incident: 05/15/2006 NHTSA ID Number: 10157599
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S622...
SUMMARY: **The airbags did not deploy when this occurred.**

103.      Date Complaint Filed: 12/02/2005 Component(s): AIR BAGS
Date of Incident: 11/08/2005 NHTSA ID Number: 10144322
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S422...
SUMMARY: **The airbags did not deploy.**

104.      Date Complaint Filed: 10/27/2005 Component(s): AIR BAGS
Date of Incident: 10/23/2005NHTSA ID Number: 10141086
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S922...
SUMMARY: **Passenger side airbag failed to deploy,** DESPITE MAJOR DAMAGE AS
RESULT FROM DIRECT IMPACT TO PASSENGER SIDE FRONT DOOR. **Drivers side
airbag failed to deploy.**

105.      Date Complaint Filed: 09/19/2005 Component(s): AIR BAGS
Date of Incident: 09/15/2005 NHTSA ID Number: 10136929
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13SX22...
SUMMARY: **Upon impact, none of the air bags deployed.**

106.      Date Complaint Filed: 06/20/2005 Component(s): AIR BAGS
Date of Incident: 06/11/2005NHTSA ID Number: 10125904
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13SX22...
SUMMARY: **The air bags didn't deploy.**

107.      Date Complaint Filed: 07/22/2005 Component(s): AIR BAGS
Date of Incident: 05/24/2005 NHTSA ID Number: 10122088
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S722...
SUMMARY: **Air bag did not deploy** IN A OFF CENTER FRONTAL COLLISION.

108.      Date Complaint Filed: 05/02/2005 Component(s): AIR BAGS

Date of Incident: 04/22/2005 NHTSA ID Number: 10118790
CHEVROLET TRAILBLAZER 2002
Fire: No
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S022...
SUMMARY: **Both front airbags and both side airbags failed to deploy.**

109.    Date Complaint Filed: 03/16/2005 Component(s): AIR BAGS
Date of Incident: 02/09/2005 NHTSA ID Number: 10115232
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S522...
SUMMARY: DURING A 30 MPH VEHICLE FRONTAL COLLISION FRONT **Air bags
did not deploy.**

110.    Date Complaint Filed: 03/27/2005 Component(s): AIR BAGS
Date of Incident: 03/24/2005 NHTSA ID Number: 10114818
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S722...
SUMMARY: CRASH AT 35 MPH (FRONT END SQUARE) DRIVER AND
PASSENGER **The air bags failed to deploy.**

111.    Date Complaint Filed: 02/28/2005 Component(s): AIR BAGS
Date of Incident: 12/12/2004 NHTSA ID Number: 10113109
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
SUMMARY: VEHICLE WAS INVOLVED IN A FRONTAL COLLISION WHILE
DRIVING BETWEEN 50-55MPH. UPON IMPACT, **The air bags failed to deploy.**

112.    Date Complaint Filed: 01/18/2005 Component(s): AIR BAGS
Date of Incident: 12/16/2004 NHTSA ID Number: 10107456
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNET16SX26...
SUMMARY: WHILE BRAKING AT 30-35 MPH, THE VEHICLE CONTINUED TO
ROLL AND HIT THE REAR BUMPER OF SUV TRUCK AND **The air bags did deploy.**

113.    Date Complaint Filed: 09/17/2004 Component(s): AIR BAGS
Date of Incident: 08/24/2004 NHTSA ID Number: 10092583
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
SUMMARY: UPON IMPACT, **Front air bags did not deploy.**

114.    Date Complaint Filed: 08/18/2004 Component(s): AIR BAGS
Date of Incident: 08/08/2004 NHTSA ID Number: 10088151
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S322...
SUMMARY: **None of the air bags deployed, front nor side.**

115.    Date Complaint Filed: 04/28/2004 Component(s): AIR BAGS, SEAT BELTS
Date of Incident: 04/25/2004 NHTSA ID Number: 10071752
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNET16S726...
SUMMARY: ALSO, **None of the airbags deployed.**

116.    Date Complaint Filed: 05/07/2004 Component(s): AIR BAGS
Date of Incident: 04/06/2004 NHTSA ID Number: 10071517
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNET16S626...
SUMMARY: **The air bag also failed to deploy during the accident.**

117.    Date Complaint Filed: 03/08/2004 Component(s): AIR BAGS
Date of Incident: 03/08/2004 NHTSA ID Number: 10061633
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S722...
SUMMARY: **Both air bags did not deploy.**

118.    Date Complaint Filed: 12/30/2003 Component(s): AIR BAGS
NHTSA ID Number: 10052092
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): FILL IN...
SUMMARY: **The passenger side air bag failed to deploy upon impact.**

119.    Date Complaint Filed: 11/05/2003 Component(s): AIR BAGS, SUSPENSION
NHTSA ID Number: 10046388
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
SUMMARY: **Upon impact, airbags did not deploy.**

120.    Date Complaint Filed: 10/22/2003 Component(s): AIR BAGS
NHTSA ID Number: 10044550
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
SUMMARY: **Upon impact, frontal air bags failed to deploy.**

121.    Date Complaint Filed: 10/01/2003 Component(s): AIR BAGS
Date of Incident: 09/02/2003 NHTSA ID Number: 10038023
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GN3S165626...
SUMMARY: UPON IMPACT **Neither the front or side air bags deployed.**

122.    Date Complaint Filed: 08/22/2003 Component(s): AIR BAGS
Date of Incident: 07/12/2003 NHTSA ID Number: 10027280
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S222...

SUMMARY: THE VEHICLE WAS INVOLVED IN A COLLISION, AND **The air bags failed to deploy.**

123.    Date Complaint Filed: 06/09/2003 Component(s): AIR BAGS
Date of Incident: 04/02/2003 NHTSA ID Number: 10015367
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S622...
SUMMARY: **Neither the frontal or side air bags deployed.**

124.    Date Complaint Filed: 04/16/2003 Component(s): AIR BAGS
Date of Incident: 02/05/2003 NHTSA ID Number: 10014453
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S722...
SUMMARY: MY CHIN HIT THE STEERING WHEEL **But no airbag deployed.**

125.    Date Complaint Filed: 04/02/2003 Component(s): AIR BAGS
Date of Incident: 03/19/2003 NHTSA ID Number: 10013828
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S122...
SUMMARY:
HYDROPLANED HEAD ON INTO A TREE DOING ABOUT 40 MPH. **The air bags did not deploy.**

126.    Date Complaint Filed: 03/10/2003 Component(s): AIR BAGS
Date of Incident: 03/04/2003 NHTSA ID Number: 10011300
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): PLEASE FILL...
SUMMARY: THE VEHICLE WAS INVOLVED IN A COLLISION, AND **The air bags did not deploy.**

127.    Date Complaint Filed: 02/14/2003 Component(s): AIR BAGS
Date of Incident: 11/26/2002 NHTSA ID Number: 10005832
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
SUMMARY: WE WHERE HIT **And no air bags deployed side or front**

128.    Date Complaint Filed: 11/07/2002 Component(s): AIR BAGS
Date of Incident: 11/01/2002 NHTSA ID Number: 8022437
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): Not Available
SUMMARY: WHILE TRAVELING ABOUT 40MPH THE VEHICLE WAS INVOLVED WITH A FRONTAL COLLISION. **Neither airbag deploy.**

129.    Date Complaint Filed: 11/01/2002 Component(s): AIR BAGS
Date of Incident: 09/20/2001 NHTSA ID Number: 8022077
CHEVROLET TRAILBLAZER 2002

Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDS13S622...
SUMMARY: **The air bags also failed to deploy during the accident.**

130.    Date Complaint Filed: 08/14/2002 Component(s): AIR BAGS
Date of Incident: 08/07/2002 NHTSA ID Number: 8016381
CHEVROLET TRAILBLAZER 2002
Manufacturer: General Motors LLC Vehicle Identification No. (VIN): 1GNDT13S122...
SUMMARY: VEHICLE WAS INVOLVED IN A COLLISION WHERE IT CRASHED
INTO A TREE ON DRIVER'S SIDE AT APPROXIMATELY 30MPH. **Upon impact, side
airbags did not deploy.**

## VIII. EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS

### 1. Fraudulent concealment

131.    Defendant Takata and GM have known of the defects in its airbags since at least
2001. Defendant GM has known of the defects in the seatbelt since 2004. Defendants knew this
well before Plaintiff and Class Members purchased the Defective Vehicles, and have concealed
from or failed to notify Plaintiff and Class Members, and the public of the full and complete
nature of the defects and have failed to correct and remedy the defective conditions of the seat
belt and airbag restraint system.

132.    Defendants have now acknowledged to safety regulators that Takata's airbags
have been defective for years but did not fully investigate or disclose the seriousness of the
issue and in fact downplayed and concealed the widespread severity of the problem.

133.    As a result of the active misrepresentations and the concealment of the defective
nature of the airbags and the defective seat belt, any applicable statute of limitation has
therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts
alleged herein, all of which is behavior ongoing to date.

## IX. CLASS ACTION ALLEGATIONS

### 1. The Nationwide Consumer Class

134.    The claims of this Class Action are derived directly from a single course of
conduct by Takata and GM. This case is about the responsibility of Takata and GM, at law and
in equity, for their knowledge, their conduct, and their products. Takata and GM have engaged
in uniform and standardized conduct toward the Plaintiff and the Class Members. They did not

differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions, between individual Class Members. The objective facts on these subjects are the same for all Class Members. The same legal standards control each Claim for Relief asserted by Plaintiff and Class Members. Many states share the same legal standards and elements of proof, facilitating the certification of multi-state classes for some or all claims. Plaintiff brings this lawsuit as a class action on his own behalf and on behalf of all other persons similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

135.    Plaintiff brings this action and seeks to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and a Nationwide Consumer Class defined as follows: All persons who entered into a lease or purchased one or more Defective Vehicles in the United States.

**2. The State Consumer Classes**

136.    Plaintiff alleges statewide class action claims on behalf of the following classes in the following states and the Commonwealth of Puerto Rico ("State Classes"). Each of these State Consumer Classes is initially defined as follows: All persons who entered into a lease or purchased one or more of the Defective Vehicles.

137.    The Nationwide Consumer Class, the State Consumer Classes, and their members are sometimes referred to herein as the "Class" or "Classes."

138.    Excluded from each Class are Takata and GM, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Takata and GM; and the judicial officers and their immediate family members and associated court staff assigned to this case.

**3. Numerosity and Ascertainability**

139.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Plaintiff is informed and believes that there are millions of Defective Vehicles nationwide, and thousands

of Defective Vehicles in each of the States.    Individual joinder of all Class Members is impracticable.

140.    Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by Takata and GM or third-parties in the usual course of business and within their control. Plaintiff anticipates providing appropriate notice to each certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**4. Predominance of Common Issues**

141.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers which are the same for each of the respective Classes predominate over questions affecting only individual Class Members. These include, without limitation, the following:

(a) Whether the Defective Vehicles suffer from airbag and seatbelts defects;

(b) Whether the Defective Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the airbags and seatbelts at issue;

(c) Whether Defendants knew or should have known about the airbag and seatbelts defects, and, if yes, how long Defendants have known of the defects;

(d) Whether the defective nature of the Defective Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Defective Vehicle;

(e) Whether Defendants had a duty to disclose the defective nature of the Defective Vehicles to Plaintiff and Class Members;

(f) Whether Defendants omitted and failed to disclose material facts about the Defective Vehicles;

(g) Whether Defendants' concealment of the true defective nature of the Defective Vehicles induced Plaintiff and Class Members to act to their detriment by purchasing the Defective Vehicles;

(h) Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppels;

(i) Whether Defendants misrepresented that the Defective Vehicles were safe;

(j) Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective airbag and seatbelts;

(k) Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

(1) Whether Defendants' statements, concealments and omissions regarding the Defective Vehicles are material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

(m) Whether Defendants violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

(n) Whether the Defective Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

(o) Whether Plaintiff and the Classes are entitled to a declaratory judgment stating that the airbag inflators in the Defective Vehicles are defective and/or not merchantable;

(p) Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiff and the Classes;

(q) Whether Defendants have been unjustly enriched by their conduct;

(r) Whether Plaintiff and the Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

(s) Whether Defendants should be declared responsible for notifying all Class Members of the defects and ensuring that all vehicles with the airbag and seatbelt defects are promptly recalled and repaired;

(t) What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy; and

(u) How such penalties should be most equitably distributed among Class Members.

### 5. Typicality

142.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class Members, and arise from the same course of conduct by Takata and GM. The relief Plaintiff seeks is typical of the relief sought for the absent Class Members.

### 6. Adequate Representation

143.    Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with experience in prosecuting consumer class actions and mass actions.

144.    Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has interests adverse to those of the Classes.

### 7. Superiority

145.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by the individual Class Members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class Members, which would establish incompatible standards of conduct for Takata and GM; and because adjudication with respect to individual Class Members would be dispositive of the interests of other Class Members, or impair substantially or impede their ability to protect their interests.

146.    Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

147.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants Takata and GM have acted and refused to act on grounds generally applicable to

each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

148.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The common questions of law and of fact regarding Takata's and GM's conduct and responsibility predominate over any questions affecting only individual Class Members.

149.    Because the damages suffered by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually, such that most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

150.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class Member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P.23(b)(3)(D).

151.    Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multi state classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

152.     Plaintiff is informed and believes that injuries suffered in crashes as a result of the defective airbags implicate the Defective Vehicles and are continuing to occur because of Defendants' delays and inaction regarding the commencement and completion of recalls. The increased risk of injury from the airbag defects serves as an independent justification for the relief sought by Plaintiff and the Classes.

## X. FIRST CAUSE OF ACTION

### ON BEHALF PLAINTIFF BRIGHTBILL
### And  The Nationwide Class

### Violation Of The Magnuson-Moss Warranty Act 15 U.S.C.§ 2301, Et. seq.

### (Against All Defendants)

153.     Plaintiff incorporates by reference herein the preceding paragraphs of the complaint as though set forth here in full.

154.     Plaintiff brings this Count on behalf of members of the Nationwide Class. In the event a nationwide class cannot be maintained on this Claim, this Claim is asserted by each statewide class asserting claims related to a breach of warranty.

155.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d). The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

156.     Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

157.     Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5). 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

158.     Defendants provided Plaintiff and Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a

part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled. Mich. Compo Laws § 440.2314(2)(a), (c), and (e); U.C.C. § 2-314.

159.    Defendants breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(I). Without limitation, the Defective Vehicles share common design defects in that they are equipped with defective airbags that fail to deploy upon impact, and defective seatbelts which fail to lock and restrain the Plaintiff and class members and occupants of the defective vehicles, leaving occupants of the Defective Vehicles vulnerable to serious injury and death. Defendants have admitted that the Defective Vehicles are defective in issuing its recalls, but the recalls are woefully insufficient to address each of the defects.

160.    In their capacity as warrantors, as Defendants had knowledge of the inherent defects in the Defective Vehicles, any efforts to limit the implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void.

161.    The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants and Plaintiff and the other Class Members, as, at the time of purchase and lease, Plaintiff and the other Class Members had no other options for purchasing warranty coverage other than directly from Defendants.

162.    The limitations on the warranties are substantively unconscionable. Defendants knew that the Defective Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired. Defendants failed to disclose these defects to Plaintiff and the other Class Members. Thus, Defendants' enforcement of the durational limitations on those warranties is unconscionable.

163.    Plaintiff and each of the other Class Members have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract. Nonetheless,

privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Defendants and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

164.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

165.    Furthermore, affording Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Defective Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

166.    Plaintiff and the other Class Members would suffer economic hardship if they returned their Defective Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class Members have not re-accepted their Defective Vehicles by retaining them.

167.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff,

1  individually and on behalf of the other Class Members, seeks all damages permitted by law,

2  including diminution in value of their vehicles, in an amount to be proven at trial. In addition,

3  pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class Members are entitled to

4  recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees

5  based on actual time expended) determined by the Court to have reasonably been incurred by

6  Plaintiff and the other Class Members in connection with the commencement and prosecution of

7  this action.

8      168.    Further, Plaintiff and the Class are also entitled to equitable relief under 15

9  U.S.C. § 2310(d)(I). Based on Defendants' continuing failures to fix the known dangerous

10  defects, Plaintiff seeks a declaration that Defendants have not adequately implemented their

11  recall commitments and requirements and general commitments to fix its failed processes, and

12  injunctive relief in the form of judicial supervision over the recall process is warranted. Plaintiff

13  also seeks the establishment of a Defendant funded program for Plaintiff and Class Members to

14  recover out of pocket costs incurred, as discussed above.

15     169.    Plaintiff also requests, as a form of equitable monetary relief, re-payment of the

16  out-of-pocket expenses and costs they have incurred in attempting to rectify the airbags in their

17  vehicles. Such expenses and losses will continue as Plaintiff and Class Members must take time

18  off from work, pay for rental cars or other transportation arrangements, child care, and the

19  myriad expenses involved in going through the recall process.

20     170.    The right of Class Members to recover these expenses as an equitable matter to

21  put them in the place they would have been but for Defendants' conduct presents common

22  questions of law. Equity and fairness requires the establishment by Court decree and

23  administration under Court supervision of a program funded by the Defendants, using

24  transparent, consistent, and reasonable protocols, under which such claims can be made and

25  paid.

26         Wherefore, Plaintiffs request relief as hereinafter provided.

27                        ## XI. SECOND CAUSE OF ACTION

28                     **ON BEHALF OF PLAINTIFF BRIGHTBILL**


AMENDED COMPLAINT FOR DAMAGES - 39

### And The California Statewide Consumer Class
#### (Deceptive Acts In Violation Of California Consumer Protection Law)
#### (CAL. Business & Professions Code § 17200, et seq. "Unfair Competition Law")
#### (Against All Defendants)

171.    Plaintiffs incorporate by reference herein the preceding paragraphs of the complaint as though set forth here in full.

172.    California Business and Professions Code § 17200 ("UCL") provides:"...unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...."

173.    This claim is brought on behalf of Plaintiff Joel Brightbill and the California Statewide Consumer Class (the "California Class") against Takata and GM.

174.    Defendants are "persons" under B & P §17201, providing "...the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons.

175.    Members of the California Class are "consumer[s]" protected by B & P §17200, et seq who purchased or leased one or more Defective Vehicles.

176.    Defendants' acts or practices as set forth above and below occurred in the conduct of trade or commerce.

177.    The UCL, B & P §17200, prohibits "unfair competition, unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising  By failing to disclose and actively concealing the dangerous deficiencies of the Defective Vehicles, Takata defective airbags and GM defective seatbelts, Defendants engaged in unfair and deceptive trade practices prohibited by the UCL.

178.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbags and GM defective seatbelts in the Defective Vehicles as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

1  suppression or omission of any material fact with intent that others rely upon such concealment,

2  suppression or omission, in connection with the sale or lease of Defective Vehicles.

3      179.      As alleged above, Defendants knew of the dangers and risks posed by the Takata

4  defective airbags, and GM defective seatbelts while the California Class was deceived by the

5  Defendants' omissions into believing the Defective Vehicles were safe, and the information

6  could not have reasonably been known by the consumers.

7      180.      Defendants knew or should have known that their conduct violated the

8  California's UCL.

9      181.      As alleged above, the Defendants made material statements about the safety and

10  reliability of Defective Vehicles that were false and misleading.

11      182.      Defendants engaged in a deceptive trade practice when they failed to disclose

12  material information concerning the Defective Vehicles, Takata defective airbags and defective

13  seatbelts, which they knew about at the time of the sale/lease. Defendants knew of and

14  deliberately withheld the information about the propensity of Takata airbags to fail to deploy

15  upon impact; and Defendants knew the GM seatbelts failed to restrain the occupants, and knew

16  of other malfunctions in the restraint systems. Defendants suppressed and concealed this

17  knowledge of these life threatening defects in order to ensure that consumers would purchase

18  their vehicles and to induce the consumer to enter into a transaction. To protect their profits and

19  to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers

20  and risks posed by the Takata airbags, GM seatbelts, and their tragic consequences. They

21  allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective

22  Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous

23  vehicles.

24      183.      Defendants each owed the California Class Members a duty to disclose the

25  defective nature of Defective Vehicles and/or dangers and risks posed by the Takata airbags and

26  the defective seatbelts, including the dangerous risk that the Takata airbags will fail to deploy

27  upon impact, because Defendants: a. Possessed exclusive knowledge of the defects rendering

28  Defective Vehicles and Takata airbags and GM seatbelts inherently more dangerous and

unreliable than similar vehicles; b. Intentionally concealed the hazardous situation with Defective Vehicles and Takata airbags through their deceptive marketing campaign and recall program that they designed to hide the life threatening problems from the California Class; and/ c. Made incomplete representations about the safety and reliability of Defective Vehicles and Takata airbags, and GM seatbelts while purposefully withholding material facts from the California Class that contradicted these representations.

184.    The Defective Vehicles, Takata airbags and GM seatbelts pose an unreasonable risk of death or serious bodily injury to the California Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to failure to deploy on impact, and GM seatbelts are susceptible to failure to restrain the occupants.

185.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the California Class, about the true safety and reliability of the Defective Vehicles, Takata airbags and GM seatbelts.

186.    The propensity of the Defective Vehicles' Takata airbags to fail to deploy upon impact and GM'S seatbelts to fail to restrain the occupants or otherwise malfunction was material to the California Class. Had the California Class known that their vehicles had these serious safety dangers, risks and/or defects, they either would not have purchased their Defective Vehicles containing Takata airbags and GM'S seatbelts, or would have paid less for them than they did.

187.    All members of the California Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. The California Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags and seatbelts that did not pose safety risks. As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and GM seatbelts and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles was and is diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light and the California Class owns and leases unsafe vehicles.

188.     Plaintiff Brightbill and members of the California Class have been proximately and directly damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags and GM seatbelts in the Defective Vehicles. They own and lease vehicles whose value has greatly diminished. The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags and GM seatbelts. Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no reasonable consumer would purchase them-let alone pay what would otherwise be fair market value for the vehicles.

189.     Mr. Brightbill and the California Class Members risk irreparable injury as a result of the Defendants' acts and omissions in violation of the California UCL, and these violations present a continuing risk to the California Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

190.     The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and other vehicles with Takata airbags GM seatbelts susceptible to the malfunctions described herein.

191.     As a direct and proximate result of the Defendants' violations of the California UCL, Plaintiff Brightbill and the California Class have suffered injury-in-fact and actual damage.

192.     Pursuant to California UCL, the California Class seeks monetary relief against Defendants measured as actual damages in an amount to be determined according to proof at trial.

193.     Pursuant to California UCL, the California Class seeks an additional award against Defendants of up to the maximum allowed by law for elders. Defendants should have known that their conduct was directed to one or more Class Members who are elders. Defendants' conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder. One or more California Class Members who are elders are

substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendants' conduct.

Wherefore, Plaintiffs request relief as hereinafter provided.

## XII. THIRD CAUSE OF ACTION

### ON BEHALF OF PLAINTIFF BRIGHTBILL AND
### The California Statewide Consumer Class
### (Breach Of The Implied Warranty Of Merchantability)
### (Against All Defendants)

194.    Plaintiffs incorporate by reference herein the preceding paragraphs of the complaint as though set forth here in full.

195.    This claim is brought under California law on behalf of Plaintiff Brightbill and the California Class against Takata and GM.

196.    California Civil Code section §1794(a) provides: "Any buyer of consumer goods who is damaged by a failure to comply with any obligation . . . under an implied . . . warranty . . . may bring an action for the recovery of damages and other legal and equitable relief."

197.    California Civil Code section §1791.1(a) provides: "Implied warranty of merchantability" . . . means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

198.    Defendant Takata airbags and GM seatbelts did not have the quality that a buyer would reasonably expect. This is a "breach of an implied warranty."

199.    Plaintiff Brightbill bought his 2002 Chevy Trailblazer manufactured by Defendant GM, equipped with a defective seatbelt manufactured by GM, and defective airbags manufactured by Takata.

200.    At the time of Plaintiff's purchase of his 2002 Chevy Trailblazer, Defendants GM and Takata were in the business of selling cars with seatbelts and airbags to consumers.

201.    Defendants airbags and seatbelts were not of the same quality as those generally acceptable in the trade; were not fit for the ordinary purposes for which such goods are used; and did not measure up to the promises or facts stated in the expressed warranty.

202.    A warranty that the Defective Vehicles and Takata airbags and GM seatbelts therein were in merchantable condition was implied by law in the transactions when Plaintiff and the California Class purchased their Defective Vehicles containing Takata airbags and GM seatbelts.

203.    These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags and GM seatbelts therein are at risk of failing to deploy and failing to restrain the occupant upon impact, or otherwise malfunctioning.

204.    Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and others, and internal investigations. Notice of these issues is being given by the California Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

205.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Brightbill and California Class Members have been damaged in an amount to be proven at trial.

Wherefore, Plaintiffs request relief as hereinafter provided.

## XIII. FOURTH CAUSE OF ACTION

**ON BEHALF OF PLAINTIFF BRIGHTBILL AND**
**The California Statewide Consumer Class**
**(FRAUD BY CONCEALMENT)**
**(Against All Defendants)**

206.    Plaintiffs incorporate by reference herein the preceding paragraphs of the complaint as though set forth here in full.

207.    This claim is brought under California law on behalf of Plaintiff Brightbill and the California Class against Takata and GM.

208.    As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and Takata airbags and GM seatbelts.

209.    The Defendants knew these representations were false when made.

210.    The vehicles purchased or leased by Plaintiff Brightbill and the California Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags and GM seatbelts were subject to failure to deploy and failure to restrain the occupant upon impact or other malfunctions.

211.    The Defendants had a duty to disclose that these vehicles and the Takata airbags and GM seatbelts therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to failure to deploy and failure to restrain the occupant upon impact, or other malfunctions. Plaintiff Brightbill and the California Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

212.    The aforementioned concealment was material because if it had been disclosed, Plaintiff Brightbill and the California Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

213.    The aforementioned representations were also material because they were facts that would typically be relied on by a person· purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

214.    Plaintiff Brightbill and the California Class relied on the Defendants' reputations, in addition to their failure to disclose the Takata airbag's dangerous problems and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements, in purchasing, leasing or retaining the Defective Vehicles.

215.    As a result of their reliance, Mr. Brightbill and the California Class have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

216.    The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Mr. Brightbill and the California Class. Plaintiffs are therefore entitled to an award of punitive damages.

Wherefore, Plaintiffs request relief as hereinafter provided.

## XIV. FIFTH CAUSE OF ACTION
### PRODUCT LIABILITY
### ON BEHALF OF PLAINTIFF BRIGHTBILL AND
### The California Statewide Consumer Class
### Strict Liability Manufacturing Defect
### (Against All Defendants)

217.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

218.    Mr. Brightbill and Class Members were harmed by Defendants' defective airbags and seat belts, products distributed, manufactured, and sold by Defendants GM and Takata. Defendants' airbags and seat belts contained a manufacturing and design defect. Defendants negligently failed to provide any warning, or any sufficient warning of potential safety hazards from their products.

219.    As a further direct and proximate result of Defendants' negligence, manufacturing and design defects, Plaintiffs incurred losses and damages for personal injury and property damage, loss of use and enjoyment of life and their property, the need for periodic medical examination and treatment, and economic losses, including wage loss, and the expenditure of time and money, and will continue to incur losses and damages in the future.

220.    The Defendants' conduct was willful, wanton, reckless, malicious and/or exhibited a gross indifference to, and a callous disregard for human life, safety and the rights of others, and more particularly, the rights, life and safety of the Plaintiffs; and was motivated by consideration of profit, financial advantage, monetary gain, economic aggrandizement and/or cost avoidance, to the virtual exclusion of all other considerations. Defendants' defective airbags and seat belts were substantial factors in causing Plaintiffs' injuries, damages, and losses. Defendants engaged in conduct amounting to malice, fraud, and oppression entitling Plaintiffs to punitive damages.

221.    Due to Defendants' negligence, manufacturing and design defects, each of the Plaintiffs is entitled to compensatory damages in a sum to be determined by the jury, plus punitive damages in a sum equal to a multiplier of damages determined to be adequate by the jury.

Wherefore, Plaintiffs request relief as hereinafter provided.

## XV. SIXTH CAUSE OF ACTION

### Strict Liability Design Defect
### ON BEHALF OF PLAINTIFF BRIGHTBILL AND
### The California Statewide Consumer Class
### (Against All Defendants)

222.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

223.    Mr. Brightbill and Class Members were harmed by Defendants' defective airbags and seat belts, products distributed, manufactured, and sold by Defendants GM and Takata. Defendants' airbags and seat belts contained manufacturing and design defects. Defendants' airbags and seat belts failed to perform as Mr. Brightbill and a reasonable consumer would expect the driver passenger restraint system to perform when used or misused in an intended or reasonably foreseeable way. Defendants negligently failed to provide any warning, or any sufficient warning of potential safety hazards with their products.

224.    As a further direct and proximate result of Defendants' negligence, manufacturing and design defects, Plaintiffs incurred losses and damages for personal injury and property damage, loss of use and enjoyment of life and their property, the need for periodic medical examination and treatment, and economic losses, including wage loss, and the expenditure of time and money, and will continue to incur losses and damages in the future. Defendants' defective airbag and seat belt were substantial factor in causing Plaintiffs' injuries, damages, and losses.

225.    The Defendants' conduct was willful, wanton, reckless, malicious and/or exhibited a gross indifference to, and a callous disregard for human life, safety and the rights of others, and more particularly, the rights, life and safety of the Plaintiffs; and was motivated by

1    consideration of profit, financial advantage, monetary gain, economic aggrandizement and/or

2    cost avoidance, to the virtual exclusion of all other considerations. Defendants engaged in

3    conduct amounting to malice, fraud, and oppression entitling Plaintiffs to punitive damages.

4    226.    Due to Defendants' negligence, manufacturing and design defect each of the

5    Plaintiffs is entitled to compensatory damages in a sum to be determined by the jury, plus

6    punitive damages in a sum equal to multiplier of damages determined to be adequate by the

7    jury.

8    Wherefore, Plaintiffs request relief as hereinafter provided.

9    **XVI. SEVENTH CAUSE OF ACTION**

10    **Strict Liability Failure to Warn**
    **ON BEHALF OF PLAINTIFF BRIGHTBILL AND**
11    **The California Statewide Consumer Class**
    **(Against All Defendants)**

12    227.    Plaintiffs hereby incorporate the allegations contained in the preceding

13    paragraphs, as though fully set forth herein.

14    228.    Defendants, and each of them, failed to provide sufficient instructions and

15    warning of potential risks of failure of the airbags and seat belts. Defendants GM and Takata

16    manufactured, distributed, and sold the defective airbags and seat belts. The defective airbags

17    and seat belts had potential risks, including the proclivity, propensity, and predisposition to fail

18    upon impact. These defective characteristics of the defective airbags and seat belts were known

19    to the Defendants, and each of them, and knowable in light of the scientific knowledge that was

20    generally accepted in the scientific community at the time of manufacture, distribution, and sale

21    of the defective airbags and seat belts.

22    229.    The defective airbags and seat belts had potential risks, including the proclivity,

23    propensity, and predisposition to fail upon impact, presenting a substantial danger when the

24    defective restraint system was used or misused in an intended or reasonably foreseeable way.

25    Mr. Brightbill, as an ordinary consumer, did not recognize the potential risks, proclivity,

26    propensity, and predisposition of the airbags and seat belts to fail upon impact. The Defendants

27

28

1  GM and Takata failed to warn and failed to adequately warn or instruct of the potential risks of

2  the failure to restrain Mr. Brightbill.

3      230.      As a further direct and proximate result of Defendants' negligence,

4  manufacturing and design defects, Plaintiffs incurred losses and damages for personal injury

5  and property damage, loss of use and enjoyment of life and their property, the need for periodic

6  medical examination and treatment, and economic losses, including wage loss, and the

7  expenditure of time and money, and will continue to incur losses and damages in the future. The

8  lack of sufficient instructions and warnings were a substantial factor in causing Plaintiffs'

9  injuries, damages, and losses. Defendants' defective airbags and seat belts lack of sufficient

10  instructions and warnings were a substantial factor in causing Plaintiffs' injuries, damages, and

11  losses.

12      Wherefore, Plaintiffs request relief as hereinafter provided.

13                  **XVII. NINTH CAUSE OF ACTION**

14              **Negligence – Negligent Failure to Warn**
                **ON BEHALF OF PLAINTIFF BRIGHTBILL AND**
15              **The California Statewide Consumer Class**
                **(Against All Defendants)**
16

17      231.      Plaintiffs hereby incorporate the allegations contained in the preceding

18  paragraphs, as though fully set forth herein.

19      232.      Mr. Brightbill was harmed by Defendants' negligence. Defendants negligently

20  designed, manufactured, supplied, installed, and inspected the airbag and seat belt in his car.

21      233.      Defendant Takata manufactured, distributed, and sold the defective airbag and

22  Defendant GM manufactured, distributed, and sold the defective seat belt. Defendants knew or

23  reasonably should have known that the airbag and seat belt were dangerous or was likely to be

24  dangerous when used or misused in a reasonably foreseeable manner.

25      234.      Defendants knew or reasonably should have known that users would not realize

26  the danger. Defendants failed to adequately warn of the danger or instruct on the safe use of the

27  airbags and seat belt. Defendants negligently failed to conduct their businesses as a reasonable

28  manufacturer, distributor, or seller under the same or similar circumstances. A reasonable

1  manufacturer, distributor, seller would have warned of the danger or instructed on the safe use

2  of the airbags and seat belt.

3  235.    As a further direct and proximate result of Defendants' negligence,

4  manufacturing and design defects, Plaintiffs incurred losses and damages for personal injury

5  and property damage, loss of use and enjoyment of life and their property, the need for periodic

6  medical examination and treatment, and economic losses, including wage loss, and the

7  expenditure of time and money, and will continue to incur losses and damages in the future.

8  Defendants' defective airbag and seat belt were substantial factor in causing Plaintiffs' injuries,

9  damages, and losses.

10  Wherefore, Plaintiffs request relief as hereinafter provided.

## XVIII. TENTH CAUSE OF ACTION

### NEGLIGENCE - RECALL/RETROFIT
### ON BEHALF OF PLAINTIFF BRIGHTBILL AND
### The California Statewide Consumer Class
### (Against All Defendants)

15  236.    Plaintiffs hereby incorporate the allegations contained in the preceding

16  paragraphs, as though fully set forth herein.

17  237.    Defendants, and each of them, intended to cause Mr. Brightbill severe emotional

18  distress and acted with reckless disregard of the probability that Mr. Brightbill would suffer

19  severe emotional distress, knowing that Mr. Brightbill was the registered owner of the subject

20  2002 Chevrolet Trailblazer. Defendants could have contacted Mr. Brightbill and warned him of

21  the risk of failure of the defective restraint system product. Defendants recklessly and

22  intentionally failed to notify Mr. Brightbill of the known danger of their restraint system. The

23  Defendants knew of the dangers of their restraint system because of numerous prior accidents,

24  resulting in serious injuries, deaths, and lawsuits against Defendants due to the defective nature

25  of the subject restraint system.

26  238.    The Defendants, and each of them, knew or reasonably should have known that

27  the subject passenger restraint system was dangerous and was likely to be dangerous when used

28

1  in a reasonably foreseeable manner. The Defendants, and each of them, became aware of this

2  defect after the subject restraint system was sold.

3  239.    The Defendants, and each of them, failed to recall or retrofit or warn of the

4  danger of the defective restraint system. A reasonable manufacturer, distributor, and seller under

5  the same or similar circumstances would have recalled and retrofitted the defective passenger

6  restraint system.

7  240.    As a further direct and proximate result of Defendants' negligence,

8  manufacturing and design defects, Plaintiffs incurred losses and damages for personal injury

9  and property damage, loss of use and enjoyment of life and their property, the need for periodic

10  medical examination and treatment, and economic losses, including wage loss, and the

11  expenditure of time and money, and will continue to incur losses and damages in the future.

12  Defendants' defective airbag and seat belt were substantial factor in causing Plaintiffs' injuries,

13  damages, and losses.

14  241.    The Defendants' failure to recall and retrofit the defective passenger restraint

15  system was a substantial factor in causing Mr. Brightbill's harm.

16  Wherefore, Plaintiffs request relief as hereinafter provided.

17  ### XIX. ELEVENTH CAUSE OF ACTION

18  **Express Warranty**
**ON BEHALF OF PLAINTIFF BRIGHTBILL AND**

19  **The California Statewide Consumer Class**

20  **(Against All Defendants)**

21  242.    Plaintiffs hereby incorporate the allegations contained in the preceding

22  paragraphs, as though fully set forth herein.

23  243.    As alleged above, Defendants, and each of them, made a written statement of

24  fact and promises, received by Plaintiff Brightbill and Class Members, that Takata airbags and

25  GM seatbelts were safe and would save lives.

26  244.    Takata airbag and GM seatbelts did not perform as stated and promised, nor did

27  the airbags and seatbelts meet the quality of the expressed warranty.

28

245.    Plaintiff Brightbill and Class Members were harmed by the breach of the expressed warranty, which was a substantial factor in causing Plaintiff and Class members harm.

Wherefore, Plaintiffs request relief as hereinafter provided

## XX. TWELFTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### ON BEHALF OF PLAINTIFF BRIGHTBILL AND
### The California Statewide Consumer Class
### (Against All Defendants)

246.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

247.    The faulty Airbags and seatbelts and related quality concerns have caused and will continue to cause the values of the Defective Vehicles to plummet.

248.    Defendants had knowledge of the airbag and seatbelt defects, which they concealed from, and failed to disclose to Plaintiffs and Members of the Class and the public.

249.    As a result of their wrongful acts and omissions as set forth above, Defendants were able to sell or lease the Defective Vehicles for more than they were worth, and when Defective Vehicles were sold in used condition, the vehicles were sold at a higher resale price than they were worth, all of which allowed Defendants to wrongfully receive a benefit from Plaintiffs and members of the classes. It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

250.    Plaintiff Brightbill and Class Members seek to have Defendants disgorge the ill-gotten profits.

Wherefore, Plaintiffs request relief as hereinafter provided.

## XXI. THIRTEENTH CAUSE OF ACTION

### LOSS OF CONSORTIUM
### On behalf of Plaintiff Patricia Payeur
### (Against All Defendants)

251.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

AMENDED COMPLAINT FOR DAMAGES - 53

252.    Plaintiff Patricia Payeur, wife of Plaintiff Brightbill, has been and is harmed by the injury to her husband. She is entitled under the law to damages which will reasonably compensate her for the loss she has suffered, including the loss of her husband's companionship and services, the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support; and the loss of the enjoyment of sexual relations.

## XXII. PRAYER FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

A. An order certifying the proposed Classes, designating Plaintiff as the named representative of the Classes, and designating the undersigned as Class Counsel;

B. A declaration that the airbags in Defective Vehicles are defective;

C. A declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Defective Vehicles;

D. An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Defective Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Defective Vehicles to eliminate the defective airbags;

E. An award to Plaintiff and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, in an amount to be proven at trial;

F. A declaration that the Defendants must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Defective Vehicles, or make full restitution to Plaintiff and Class Members;

G. An award of attorneys' fees and costs, as allowed by law;

H. An award of pre-judgment and post-judgment interest, as provided by law;

I. Leave to amend this Complaint to conform to the evidence produced at trial; and

J. Such other relief as may be appropriate under the circumstances.

1

2     **Dated: February 16, 2015**                 **RESPECTFULLY SUBMITTED,**

3                                           **LAW OFFICES OF BONNER & BONNER**

4

5                                   /S/*Charles A. Bonner*

6                                     Charles A. Bonner

                                    Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



