KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                                           :    Chapter 11
                                                                                     :
MOTORS LIQUIDATION COMPANY, *et al.*,    :    Case No.: 09-50026 (REG)
    f/k/a General Motors Corp., *et al.*            :
                                                                                     :
               Debtors.               :    (Jointly Administered)
------------------------------------------------------------x

### NOTICE OF FILING OF FIFTH SUPPLEMENT TO SCHEDULE "2" TO THE MOTION OF GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION (MONETARY RELIEF ACTIONS, OTHER THAN IGNITION SWITCH ACTIONS)

**PLEASE TAKE NOTICE** that on April 28, 2015, General Motors LLC filed the attached *Fifth Supplement to Schedule "2" to the Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)* (the "**Motion to Enforce**") with the United States Bankruptcy Court for the Southern District of New York.

Dated: New York, New York
April 28, 2015

                                       Respectfully submitted,

                                       /s/ Scott I. Davidson
                                       Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

2

**FIFTH SUPPLEMENT[1] TO SCHEDULE "2"**

**SAMPLE ALLEGATIONS/CAUSES OF ACTION
IN MONETARY RELIEF COMPLAINTS FILED AGAINST NEW GM
NOT CONTAINED IN THE PREVIOUS SUPPLEMENT TO
SCHEDULE "2" to MOTION TO ENFORCE[2]**

| Plaintiff | Allegations |
|---|---|
| Brightbill[3] | "Plaintiff JOEL BRIGHTBILL brings this action on behalf of himself and on behalf of all persons similarly situated who purchased or leased Defective Vehicles manufactured, distributed, or sold by General Motors, which contain airbags manufactured by Defendant Takata, for claims under federal and state law." Compl., ¶ 2.<br><br>"'Defective Vehicles' refers to all vehicles manufactured by GM, purchased or leased in the United States which have been installed with airbags manufactured by Defendant Takata and have been subject to an airbag-related warning or recall, including, but not limited to, the following: the 2002 Chevy Blazer, Buick LeSabre, Years 2002-2003; Buick Rendezvous, Years 2002-2003; Cadillac Deville, Years 2002-2003; Chevrolet Trailblazer, Years 2002-2003; Chevrolet Impala, Years 2002-2003; Chevrolet Monte Carlo, Years 2002-2003; Chevrolet Ventura, Years 2002-2003; GMC Envoy, Years 2002-2003; Oldsmobile Bravada, Years 2002- 2003; Oldsmobile Aurora, Years 2002-2003; Oldsmobile Silhouette, Years 2002-2003; Pontiac Bonneville, Years 2002-2003; Pontiac Vibe, Years 2002-2003." Compl., ¶ 3.<br><br>Paragraph 5: "GM, as the manufacturer of the subject vehicles [which are all manufactured by Old GM] . . . ." Compl., ¶ 5.<br><br>"On April 28, 2004, NHTSA announced that the GM model Chevrolet Trailblazer 2002 campaign ID number: 04v201000 [had a defective] component . . . ." Compl., ¶ 6. (*See also* ¶¶ 12 and 66, which contain the same allegations.)<br><br>". . .Takata and GM have engaged in a ten-year pattern of deception, fraud and concealment of this known deadly danger of its defective passenger restraint system." Compl, ¶ 7. |

---

[1] This schedule supplements the previous supplements and the original Schedule "2" previously filed with the Court in connection with the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)* on August 1, 2014.

[2] Due to space limitations, this chart contains only a ***sample*** of statements, allegations and/or causes of action contained in the complaint referenced in the chart above. This chart does ***not*** contain ***all*** statements, allegations and/or causes of action that New GM believes violate the provisions of the Court's Sale Order and Injunction and the Sale Agreement.

[3] The complaint in the Brightbill Action references a post-363 Sale accident. To the extent the Brightbill Action asserts a cause(s) of action based on Product Liabilities (as defined in the Sale Agreement) in connection with the post-363 Sale accident, the Motion to Enforce does not seek to bar such Product Liability cause(s) of action. However, New GM disputes liability for such cause(s) of action.

3

"Defendants Takata and GM, and each of them, knew of the deadly airbag defect at least 13 years ago, but did nothing to prevent ongoing injury and loss of life. Takata's first airbag defect recall stemmed from defective manufacturing in 2000, but was limited (by Takata) to a recall of select Isuzu vehicles." Compl., ¶ 11.

"GM has known of this defect in its seatbelts but has failed and continues to fail to remedy the defective seatbelts in its vehicles." Compl. ¶ 12.

"Plaintiff, Mr. Joel Brightbill, (herein after 'Mr. Brightbill'), at all relevant times, owned and was operating a 2002 Chevrolet Trailblazer . . . ." Compl., ¶ 16.

The term "GM" is defined twice in the Complaint, first in paragraph 18 as "General Motors, LLC" (*i.e.*, New GM), and then again in paragraph 62 as "General Motors Corporation" (*i.e.*, Old GM).

"The Takata Defendants and the GM Defendants knew of the airbag defects for possibly over a decade, yet they failed to swiftly take proper safety measures or even report this crucial information to federal regulators." Compl., ¶ 36.

"In advertisements and promotional materials, GM maintained that their vehicles were safe and reliable. Purchasers and/or lessees of the Defective Vehicles were led to believe that their vehicles were safe and reliable. Millions of vehicles which contained defective Takata-manufactured airbags were sold by GM and other automakers. Vehicles with defective airbag systems are not 'safe' and 'reliable', as the Defective Vehicles were advertised and promoted to be." Compl., ¶ 49.

"A vehicle purchased or leased under the reasonable assumption that it is 'safe' and 'reliable' as advertised is worth more than a vehicle known to be subject to the risk of a possibly life-threatening failure of an airbag system. A vehicle purchased or leased under the assumption that it was produced in conformity with high safety standards is worth more than a vehicle produced in a system that promotes expedience over quality and safety and hides known defects." Compl., ¶ 52.

"[A]ll purchasers and/or lessees of the Defective Vehicles overpaid for their vehicles at the time of purchase." Compl., ¶ 53.

"Defendant Takata and GM have known of the defects in its airbags since at least 2001. Defendant GM has known of the defects in the seatbelt since 2004." Compl., ¶ 131.

Putative class questions include (i) "Whether the defective nature of the Defective Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Defective Vehicle" Compl., ¶ 141 (d)); (ii) "Whether Defendants' concealment of the true defective nature of the Defective Vehicles induced Plaintiff and Class Members to act to their detriment by purchasing the Defective Vehicles"; (*id.,* ¶ 141(g)); and (iii) "Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective airbag and seatbelts" (*id.*, ¶ 141(j)).

4

|   | The First Cause of Action is based on "Violation Of The Magnuson-Moss Warranty Act 15 U.S.C.§ 2301, Et. seq."
"As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled. Mich. Compo Laws § 440.2314(2)(a), (c), and (e); U.C.C. § 2-314." Compl., ¶ 158.
"Without limitation, the Defective Vehicles share common design defects in that they are equipped with defective airbags that fail to deploy upon impact, and defective seatbelts which fail to lock and restrain the Plaintiff and class members and occupants of the defective vehicles . . . ." Compl., ¶ 159.
"In their capacity as warrantors, as Defendants had knowledge of the inherent defects in the Defective Vehicles, any efforts to limit the implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable . . . ." Compl., ¶ 160.
"At the time of sale or lease of each Defective Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design." Compl., ¶ 165.
"As alleged above, the Defendants made material statements about the safety and reliability of Defective Vehicles that were false and misleading." Compl., ¶ 181.
The Third Cause of Action is based on "Breach Of The Implied Warranty Of Merchantability."
"These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags and GM seatbelts therein are at risk of failing to deploy and failing to restrain the occupant upon impact, or otherwise malfunctioning." Compl., ¶ 203.
The Fifth and Sixth Causes of Action are based on "Strict Liability Manufacturing Defect" and "Strict Liability Design Defect", respectively.
"Mr. Brightbill and Class Members were harmed by Defendants' defective airbags and seat belts, products distributed, manufactured, and sold by Defendants GM and Takata." Compl., ¶ 218.
"Defendant Takata manufactured, distributed, and sold the defective airbag and Defendant GM manufactured, distributed, and sold the defective seat belt." Compl., ¶ 233.
The Eleventh Cause of Action is based on "Express Warranty." |
|---|---|

5