**BROWN**RUDNICK

EDWARD S. WEISFELNER
direct dial: (212) 209-4900
fax: (212) 202-4800
eweisfelner@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

May 12, 2015

**VIA E-MAIL**
**AND ECF FILING**

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

RE:   **In re Motors Liquidation Company, et al., Case No. 09-50026 (REG)**

Dear Judge Gerber:

We write jointly as Co-Designated Counsel and Counsel for Economic Loss Plaintiffs and Designated Counsel and Counsel for Ignition Switch Pre-Closing Accident Plaintiffs (together, the "**Ignition Switch Plaintiffs**") in response to the direction set forth in the April 15 Decision and May 5 Endorsed Order. Despite extensive efforts, the parties have not reached a fully consensual form of judgment. Accordingly, we hereby submit the Ignition Switch Plaintiffs' proposed form of judgment attached hereto as **Exhibit A**. Attached hereto as **Exhibit B** is a blackline comparing the Ignition Switch Plaintiffs' proposal to New GM's form. The following highlights the substantive points of disagreement, and why the Court should approve the Ignition Switch Plaintiffs' proposed form.

1) **Permissible Claims Against New GM.**

Paragraph 4 of the Ignition Switch Plaintiffs' proposed judgment provides that "[f]or the reasons set forth in the Decision, the Ignition Switch Plaintiffs established prejudice and thus a due process violation with respect to the Independent Claims. The Sale Order shall be deemed modified to permit the assertion and continued prosecution of Independent Claims." New GM cannot dispute this conforms to the Decision.

The Ignition Switch Plaintiffs and New GM generally agree on the definition of **"Independent Claims"** with the Ignition Switch Plaintiffs proposing in paragraph 4 of their proposal that "Independent Claims" shall mean "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM, whether or not involving Old GM vehicles or parts, that are based solely on New GM's own, independent, post-Closing acts or conduct." See In re Motors Liquidation Co., 2015 Bankr. LEXIS 1296, at *222 (Bankr. S.D.N.Y. Apr. 15, 2011).

However, New GM, in paragraph 9 of its form improperly attempts to limit the definition of Independent Claims by proposing that any claims that Ignition Switch Plaintiffs may have against New GM "concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are forever barred and enjoined pursuant to the Sale Order." This undercuts the agreed definition of Independent Claims as well as the Decision which provide that the Ignition

Switch Plaintiffs may assert and continue to prosecute claims against New GM involving Old GM vehicles or parts.  See id. at *22.

Accordingly, the Court should adopt the Ignition Switch Plaintiffs' proposed paragraph 8 which provides:  "Except for the Independent Claims and Assumed Liabilities, any claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM based on successor liability are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment."

**2)   Status of Ignition Switch Plaintiffs' Lawsuits.**

The Ignition Switch Plaintiffs intend to appeal, *inter alia*, that portion of the Decision upholding the Sale Order's bar on successor liability claims.  Accordingly, Plaintiffs request that the successor liability claims be stayed pending appeal.  If the Decision is ultimately affirmed, only then should the successor liability claims be dismissed with prejudice.

This Court should adopt the Ignition Switch Plaintiffs' proposed judgment as faithful to the Decision and sound judicial administration.  Rather than compelling plaintiffs with actions pending in other jurisdictions to file papers in this Court as to why their lawsuits should not be dismissed with prejudice as New GM suggests (necessitating this Court to dive into the merits of plaintiffs' claims), the Ignition Switch Plaintiffs provide an administratively balanced and non-prejudicial pathway forward as follows:

(i)     Independent Claims proceed in the jurisdictions where they are pending with those courts reviewing same with care to ensure they are not "dressed up" successor liability claims prohibited under the Sale Order.  Id. at *26;

(ii)    claims or causes of action that Ignition Switch Plaintiffs may have against New GM sounding in the nature of successor liability are stayed pending appeal; and

(iii)   claims of Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs remain subject to the Sale Order, provided that to the extent an issue shall arise in the future as to whether they were known or unknown creditors of the Debtors or were otherwise bound by the Sale Order, such plaintiffs shall be required to first seek resolution of such issues from this Court before proceeding any further against New GM.

New GM's proposed judgment improperly would dismiss the Ignition Switch Plaintiffs' lawsuits with prejudice now despite the stated intention to appeal and the fact that many of the lawsuits assert Independent Claims.  Paragraphs 8, 10, 11 and 13 of New GM's proposed judgment would provide an inefficient labyrinth of cumbersome procedures impacting a wide array of actions pending against New GM in various jurisdictions.  Adopting New GM's proposed procedures unduly prejudices plaintiffs, raises extra-jurisdictional concerns, and would unnecessarily congest this Court's docket.

The Ignition Switch Plaintiffs submit that the Decision did not direct the substantive actions or extra-jurisdictional procedures set forth in New GM's proposed judgment.  Indeed, New GM's proposed cumbersome procedure for dismissing cases with prejudice is inconsistent with the heavily negotiated and carefully crafted provisions of MDL Order No. 50 (attached hereto as **Exhibit C** and which provides that certain actions that are subsumed by the Amended Consolidated Complaint are dismissed, without prejudice).

Under New GM's proposed judgment, this Court would be faced with deciding whether the merits of the underlying claims in numerous plaintiff actions, including those currently pending and scheduled to be

amended in the MDL, raise Independent Claims, or claims barred by the Sale Order and the Decision. Such a result was not contemplated by the Decision which correctly left it to reviewing courts to analyze the claims to determine whether they are in substance successor liability claims "dressed up to look like something else." Id. at *26. New GM's proposed procedure would eviscerate the work to be done in the MDL and replace Judge Furman's jurisdiction over these exact matters, all on an untenable time line and playing field.

New GM's proposed procedures effectuating immediate dismissals with prejudices in cases pending in other courts are inefficient and inconsistent with sound principles of judicial management and the procedures set forth in the MDL and other courts. See Donovan v. City of Dallas, 377 U.S. 408, 412 (1964) (noting general rule that courts will not interfere with or try to restrain each other's proceedings). New GM's proposed procedure could provide imperfect protection if the appeal is successful, plus force plaintiffs to incur costs in re-filing fees. See Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) ("Dismissal with prejudice is a harsh remedy to be utilized only in extreme situations."). Any dismissals with prejudice are premature. If New GM wants to move to dismiss in the home courts, the home court judge may decide whether to dismiss and on what terms, in light of the anticipated appeals. Staying the actions pending appeal provides more administrative convenience and procedural equity and no undue prejudice to New GM. See Greenidge v. Allstate Ins. Co., No. 02 Civ. 9796 (JCF), 2003 WL 22871905, at *3 (S.D.N.Y. Dec. 3, 2003) (deferral of determination of summary judgment motion pending appeal of intervention motion is not prejudicial).

More fundamentally, Plaintiffs' Second Amended Consolidated Complaint will not be filed until June 12, 2015. All other actions and complaints in the MDL will remain stayed or dismissed without prejudice and the Second Amended Consolidated Complaint will be the only operative pleading in the MDL. It will not assert any successor liability claims to avoid proceedings inconsistent with the Decision, pending resolution of the appeal. Once it is filed, New GM will have the opportunity to move to dismiss the claims pled. At that time, upon full briefing, Judge Furman can rule on the viability of those claims – and that review will no doubt include the question of whether the claims (or any of them) improperly seek to hold New GM liable on a successor liability theory. Dismissal with prejudice now is premature.

**3)  The Judgment Should Not Unduly Affect The Interests Of Non-Ignition Switch Plaintiffs.**

New GM's proposed judgment improperly seeks to expand the Decision beyond its parameters as it relates to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs.

Specifically, the Decision was confined to plaintiffs that owned or leased a vehicle that contained the "Ignition Switch Defect" as defined therein. See In re Motors Liquidation Co., 2015 Bankr. LEXIS 1296 at *5. The other category of Plaintiffs later coming into the picture ("Non-Ignition Switch Plaintiffs") brought actions asserting Economic Loss Claims as to GM branded vehicles that did not have Ignition Switch Defects, including cars made by New GM and Old GM alike. While New GM brought another motion to enforce the Sale Order with respect to them, this additional motion "has been deferred pending the determination of the issues here." Id. at *8-9.

Accordingly, the Decision is limited to the Ignition Switch Defect and does not extend to pre-closing accident plaintiffs whose incident or accident related to a vehicle with a defect other than the Ignition Switch Defect or to plaintiffs with economic loss claims that relate to vehicles that do not contain the Ignition Switch Defect. Of course, this makes sense, because, as the Court itself noted, the "common set of stipulated facts" was developed with respect to the Ignition Switch Defect and not any other defect. Id. Those plaintiffs remain stayed and the Sale Order is still fully applicable to those parties, but any effort to give the Decision preclusive effect as to them would be ironic given the due process issues addressed in the Decision.

New GM's proposed judgment places unnecessary hurdles and administrative burdens on these plaintiffs by compelling them to file No Dismissal Pleadings within 17 business days of receipt of a notice of the claims or causes of action that New GM itself determines violates the Decision and Sale Order. Forcing these claimants to litigate now on New GM's terms is administratively inefficient and prejudicial. The Decision yields no such result. Accordingly, the Court should strike New GM's proposed procedures in paragraphs 13(b) – (e) as unduly burdensome and premature.

**4) <u>Status of Attorney General Actions.</u>**

The Decision holds that claims against New GM based solely on the conduct of New GM can proceed, even if those claims involve cars and parts made by Old GM. <u>Id.</u> at *222. There are two pending State law enforcement actions that assert solely Independent Claims and accordingly the Sale Order, as modified by the Decision, poses no impediment to their advancement. <u>See People of California v. General Motors LLC</u>, No 30-2014-00731038-CU-BT-CXC (Orange County, Cal.); <u>State of Arizona v. General Motors, LLC</u>, No. CV2014-014090 (Maricopa County, Ariz.) (collectively, the "**<u>State Actions</u>**").

Accordingly, paragraph 9 of the Ignition Switch Plaintiffs' proposed judgment provides that the State Actions "shall be subject to the appropriate motion practice in the courts where those proceedings are pending, consistent with the Decision and this Judgment." Conversely, in paragraph 12 of its proposed judgment, New GM provides that the State Actions should remain stayed without prejudice to the plaintiffs seeking relief from the stay in this Court.

New GM's proposal is inconsistent with the Decision and seeks to impose additional delay on actions that consist entirely of Independent Claims. The State Actions assert law enforcement claims for injunctive relief, civil penalties and other available relief against New GM solely for its post-Sale violations of the State consumer protection laws at issue -  respectively, Arizona's Consumer Fraud Act (A.R.S. § 44-1521, *et seq.*), and California's Unfair Competition Law ("**<u>UCL</u>**") (Cal. Bus. Code § 17200) and False Advertising Law ("**<u>FAL</u>**") (Cal Bus. Code § 17500).

For example, the Arizona Complaint (a copy of which is attached hereto as **<u>Exhibit D</u>**) alleges that "New GM's false representations and/or omissions concerning the safety and reliability of its vehicles, and its concealment of a plethora of known safety defects plaguing its vehicles and its brand, caused Arizona residents to purchase GM-branded vehicles under false pretenses." Arizona Complaint, ¶ 22, and that New GM's conduction violated A.R.S. § 44-1522(A). <u>See id.</u> ¶¶ 497-498. As the Arizona Complaint makes clear, the unlawful practices at issue are those committed by New GM "in connection with the sale and lease of GM-branded vehicles on or after July 11, 2009." <u>Id.</u> ¶¶ 498, 503. Likewise, in the Prayer for Relief, all the remedies are targeted at New GM's conduct, as the State (A) seeks to enjoin New GM from "engaging in the unlawful acts and practice as alleged in this Complaint;" (B) seeks an Order that New GM disgorge its profits or gains from its unlawful practices; and (C) seeks an Order that New GM pay penalties for each of its willful violations of the Consumer Fraud Act.

Similarly, the California Complaint (a copy of which is attached hereto as **<u>Exhibit E</u>**) alleges that post-Sale conduct by New GM violated, *inter alia*, the prohibitions on unfair and deceptive conduct embodied in California's UCL and FAL. <u>See</u> <u>Cal.</u>, <u>Compl.</u>, ¶¶ 253-274. The Prayer for Relief seeks to (A) enjoin New GM from committing further acts of unfair competition; and (B) obtain civil penalties from New GM for its violations of the UCL and FAL.

Significantly, in his decision remanding the California action to state court, Judge Furman recognized that New GM might be held liable for post-Sale violations of its own independent duties under State law: "[A]s Plaintiff notes, the claims for violations of the UCL and FAL are premised on various allegedly

deceptive practices by New GM." In re General Motors LLC Ignition Switch Litig., 2014 WL 6655796, at \*7 (S.D.N.Y. Nov. 24, 2014).  The same is true of the Arizona action.

New GM wrongfully attempts to encroach on the jurisdiction of the State Action courts.  Clearly, the Decision does not countenance such a result as it cautions other courts to consider whether actions properly assert Independent Claims during the administration of matters pending before them.  Moreover, the Decision does not suggest that additional litigation relating to stay relief on these matters should proceed before this Court.  New GM may argue that the State Actions are somehow "dressed-up" successor liability claims, but under the Decision, those arguments should be addressed to the State Action courts.  Accordingly, the Court should adopt paragraph 9 of the Ignition Switch Plaintiffs' proposed judgment.

**5)   Equitable Mootness.**

There is disagreement between the Ignition Switch Plaintiffs on the one hand, and New GM, the GUC Trust and the Unit Holders, on the other, on two substantive issues relating to the equitable mootness findings.  First, in paragraph 6 of its proposed judgment, the Ignition Switch Plaintiffs propose that "based on the doctrine of equitable mootness, in no event shall *GUC Trust Assets (as defined in the Decision)* be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims."

Conversely, New GM, the GUC Trust and the Unit Holders seek to expand the findings by adding language that based on the doctrine of equitable mootness, in no event shall the assets of the GUC Trust "*held at any time in the past, now, or in the future*" be used to satisfy any claims of the Ignition Switch Plaintiffs.

The Ignition Switch Plaintiffs believe their proposed language is more in faith with the Decision since it did not address whether Plaintiffs may have the exclusive benefit of, or share in, the proceeds of triggering the accordion provision under the Plan and Sale Agreement.  The Ignition Switch Plaintiffs submit that because the proceeds of the accordion provision can only be triggered by allowance of the Ignition Switch Plaintiffs' claims against the Old GM bankruptcy estate and the Decision focused on Unit Holders' expectation that the universe of claims could only go down (see Id. at \*194-95), the judgment should adopt the Ignition Switch Plaintiffs' proposed language.  Any other formulation may prejudice the Ignition Switch Plaintiffs' rights going forward.

The Second substantive issue relates to paragraphs 13(d) and (e) of New GM's proposed judgment. Those paragraphs would compel the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs to file a pleading within 17 business days of entry of the judgment setting forth the basis it believes that any GUC Trust Assets may be used to satisfy late proofs of claim.

The Ignition Switch Plaintiffs propose that Court should not adopt these procedures as the Decision did not address the claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs, and such procedures add unnecessary administrative and judicial burdens and costs.

**6)   Miscellaneous Language Disagreements.**

There are several other points of disagreement between the competing proposed judgments reflected in the Ignition Switch Plaintiffs' blackline, attached hereto as **Exhibit B**.  They are equally substantive and important as those issues in dispute highlighted above.  However, for the sake of brevity, the Ignition Switch Plaintiffs believe that this Court will ably see that the Ignition Switch Plaintiffs' proposed language is more faithful to the plain meaning and spirit of the Decision and should be adopted in its entirety.

Respectfully submitted,

| | | |
|---|---|---|
| /s/ *Edward S. Weisfelner* | /s/ *Sander L. Esserman* | /s/ *William P. Weintraub* |
| Edward S. Weisfelner | Sander L. Esserman | William P. Weintraub |
| David J. Molton | **STUTZMAN, BROMBERG,** | Gregory W. Fox |
| Howard S. Steel | **ESSERMAN & PLIFKA** | **GOODWIN PROCTER** |
| **BROWNN RUDNICK LLP** | 2323 Bryan Street, Suite 2200 | The New York Times Bldg. |
| 7 Times Square | 2323 Bryan Street, Suite 2200 | 620 Eighth Avenue |
| New York, NY 10036 | Dallas, Texas 75201 | New York, NY 10018 |

cc:  Arthur Steinberg
     Scott Davidson
     Richard C. Godfrey, P.C.
     Andrew B. Bloomer, P.C.
     Leonid Feller
     Matt Williams
     Lisa H. Rubin
     Daniel Golden
     Deborah J. Newman
     Alex Schmidt
     Jonathan L. Flaxer
     Garry Peller