ASSIGNMENT OF CLAIM

1. Identification of the parties:
Seller:
DORIS POWLEDGE
c/o Faubus & Scarborough LLP
1010 Lamar, Suite 1020
Houston, TX 77002
Tel:   (713) 222-6400
Fax:   (713) 222-7240
Attn:  Dax Faubus

Buyers (collectively, "Buyer"):
DOVER MASTER FUND, L.P. and DOVER MASTER FUND II, L.P.
810 Seventh Avenue, 33rd Floor
New York, NY 10019
Tel :  212-259-4305
Fax :  212-259-4343
Attn : Vladimir Jelisavcic

2. By this Assignment of Claim ("Assignment"), Seller, its successors and assigns, for good and valuable consideration, the sufficiency of which is hereby acknowledged by Seller, absolutely and unconditionally sells, transfers and assigns unto Buyer, its successors and assigns, all rights, title and interest in and to the claim(s) and any reclamation claim(s) as more fully defined below (the "Claim") of Seller against IN RE MOTORS LIQUIDATION COMPANY, ET AL (F/K/A GENERAL MOTORS CORP., ET AL) ("Debtor"), the debtor-in-possession in the Chapter 11 reorganization case, Case No. 09-50026 (the "Case"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The consideration paid by Buyer to Seller for the Claim is set forth on Exhibit A annexed hereto and made a part hereof. The Claim is defined as, without limitation, all of Seller's right, title and interest in and to any Proofs of Claim (defined below) if filed, or the claims listed on the Schedule (defined below) if no proofs of claim have been filed; all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing, or referred to in, such claim(s) or the Proofs of Claim; all cure amounts paid by Debtor in connection with the assumption of contracts related to such claims(s) or the Proofs of Claim; all rights to receive principal, interest, all rights of stoppage in transit, replevin and reclamation, fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing; and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Seller's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

3. Seller represents and warrants the following:

[X] YES, PROOF(S) OF CLAIM HAVE been duly and timely filed in the Case in the aggregate amount of $250,000,000.00 (the "Proof of Claim Amount") and a true and complete copy of each such proof of claim is attached to this Assignment (collectively, the "Proof of Claim"). The Proof of Claim has not been revoked, withdrawn, or otherwise retracted or modified and no right thereunder has been waived, and all statements in such Proof of Claim are true and correct as of the date hereof. Buyer shall be deemed to be the owner of the Claim in the amount set forth in such Proof of Claim, subject to the terms of this Assignment, and shall be entitled to identify itself as the owner of the Proof of Claim on the records of the Bankruptcy Court.

[ ] NO, a PROOF OF CLAIM HAS NOT been filed in the Case. The agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing the Claims support the filing of a proof of claim against the Debtor in the amount of <Size> (the "Proof of Claim Amount").

4. Seller further represents and warrants that: (a) the Claim is a valid, liquidated and undisputed and non-contingent claim in at least the amount of $2,699,074.08 (the "Minimum Claim Amount") and is or will be listed by the Debtor on its schedule of liabilities and/or any amendments thereto ("Schedule") as such; (b) the Claim is a valid, enforceable claim against the Debtor; (c) no consent, approval, filing or corporate, partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Assignment by Seller; (d) this Assignment has been duly authorized, executed and delivered by Seller and Seller has the requisite power and authority to execute, deliver and perform this Assignment; (e) this Assignment constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms; (f) it has not filed a petition seeking protection under the Bankruptcy Code, or admitted its inability to, or failed to, pay its debts generally as they become due; (g) no payment or other distribution has been received by Seller, or by any third party on behalf of Seller, in full or partial satisfaction of, or in connection with, the Claim; (h) no portion of the Claim has been sold, assigned or pledged to any third party in whole or in part; (i) the Claim is not subject to any factoring agreement; (j) Seller owns and has and is hereby selling to Buyer good and sole legal and beneficial title to the Claim free and clear of any and all liens, security interests, encumbrances or claims of any kind or nature whatsoever; (k) the basis for the Claim is amounts due and owing by the Debtor arising from the Wrongful Death claim filed in the 10th District Court, Galveston County TX as Cause No. 07-cv-1040 and settled in accordance with Stipulation and Settlement Resolving Claim No. [44614, 44615, 44616, 44617] executed on August 9, 2010; (l) true and complete copies of all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing or relating to the Claim will be, at Buyer's option, delivered to Buyer prior to closing of this Assignment and/or maintained in good condition by Seller until the Bankruptcy Court enters a final decree closing the Case and delivered to Buyer within 5 business days of Buyer's request; (m) Seller has no liability or obligation related to or in connection with the Claim or the Case; (n) other than the Proof of Claim, no proof of claim has been or will be filed by or on behalf of Seller in the Case or any related proceeding; (o) no objection to the Claim has been filed or threatened; and (p) the Claim is not subject to any defense, claim or right of setoff, reduction, impairment, avoidance, disallowance, subordination or preference action, in whole or in part, whether on contractual, legal or equitable grounds, that have been or may be asserted by or on behalf of the Debtor or any other party to reduce the amount of the Claim or affect its validity, priority or enforceability.

5. Seller is aware that the consideration being paid by Buyer hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Claim pursuant to any plan of reorganization confirmed for the Debtor. Seller represents that it has adequate information concerning the financial condition of the Debtor and the Case to make an informed decision regarding the sale of the Claim and that it has independently and without reliance on Buyer, and based on such information as Seller has deemed appropriate, made its own decision to enter into this Assignment. Seller is aware that information which may be pertinent to Seller's decision to transfer the Claim is available to Seller and can be obtained from the Bankruptcy Court's files. Seller further represents that it is not and has never been an "insider" of the Debtor (as defined in Section 101(31) of the Bankruptcy Code) or a member of any official or unofficial committee in respect of the Case.

6. Seller acknowledges and agrees that: (a) Buyer currently may have, and later may come into possession of, information relating to the Debtor that is not known to Seller and that such information may be material to Seller's decision to assign the Claim to Buyer ("Seller Excluded Information"); (b) Seller has determined to assign the Claim notwithstanding its lack of knowledge of the Seller Excluded Information;

and (c) Buyer shall have no liability to Seller, and Seller waives and releases any claims that it might have against Buyer with respect to the non-disclosure of the Seller Excluded Information.

7. In the event all or any part of the Claim is either (a) objected to; (b) impaired by the commencement or notice from Debtor of any action or proceeding including, but not limited to any proceeding which seeks to reduce all or part of the Minimum Claim Amount or provide less favorable treatment to the Claim than other unsecured claims, including the timing of payments or distributions; (c) offset, disallowed, subordinated, or otherwise impaired, in whole or in part, in the Case for any reason whatsoever, including, without limitation, pursuant to an order of the Bankruptcy Court (whether or not such order is appealed), or (d) if the Claim is not listed on the Schedule, or listed on the Schedule as unliquidated, contingent or disputed, or listed on the Schedule in a lesser amount than the Minimum Claim Amount (collectively, an "Disallowance"), Seller agrees to immediately repay, on demand of Buyer (which demand shall be made at Buyer's sole option), an amount equal to the portion of the Minimum Claim Amount subject to the Disallowance multiplied by the Purchase Rate, plus interest thereon at 8% per annum from the date hereof to the date of repayment, provided, however, that such a demand by Buyer shall not be deemed an election of remedies or any limitation on any other rights that Buyer may have hereunder or under applicable law. In the event an order is entered in the Bankruptcy Court disapproving the transfer of the Claim, or in the event that the Bankruptcy Court does not substitute Buyer for Seller, Seller agrees to immediately repay, upon demand of Buyer, the consideration paid by Buyer hereunder, plus interest thereon at 8% per annum from the date hereof to the date of repayment.

8.    (a) Seller agrees that in the event Seller receives any payments or distributions or notices with respect to or relating to the Claim, Seller shall (i) accept the same as Buyer's agent, (ii) hold the same in trust on behalf of and for the sole benefit of Buyer, (iii) notify Buyer, at the address identified in paragraph 1 of this Assignment, of receipt of the payments or distributions or notices; and (iv) in the case of cash ("Cash Distribution"), promptly deliver the same forthwith to Buyer (free of any withholding, set-off, claim or deduction of any kind), within 2 business days via Federal Funds Wire to:

. In the event Seller fails to deliver the Cash Distribution to Buyer within 2 business days of Seller's receipt, Seller shall be obligated to pay Buyer interest on the Cash Distribution at 8% per annum, from the date of Seller's receipt to the date of Buyer's receipt. Moreover, in the event Seller receives a Cash Distribution prior to or at the time of the funding of the consideration to be paid under this Assignment, Buyer shall have the right (at their option) to offset (in whole or in part) the Cash Distribution against the consideration by instructing Seller to retain all or a portion of the Cash Distribution.
(b) In the case of distributions in the form of securities ("Securities Distribution"), Seller shall (i) immediately notify Buyer, at the address identified in paragraph 1 of this Assignment, of Seller's receipt of such distributions and (ii) immediately deposit such securities in Seller's brokerage account and (iii) instruct the broker to immediately deliver such securities in electronic form to
("Buyer Account"). In the event Seller (or Seller's broker) fails to deliver the Securities Distribution to Buyer Account within 5 business days of Seller's receipt, Seller shall be obligated to pay Buyer interest, from the date of Seller's receipt to the date of delivery to Buyer Account, computed as follows: (i) in the case of debt Securities Distributions – at 8% per annum on the face value of the securities; (ii) in the case of equity Securities Distributions – at 8% per annum on the value of the securities stated in the Debtor's disclosure statement.
(c) Seller agrees to promptly provide Buyer, with copies of all correspondence with respect to the Claim, including but not limited to any cure notices received from Debtor. Seller agrees to promptly and fully follow Buyer's instructions regarding any cure notices. All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger, email or telecopy at or if duly deposited in the mails

by certified or registered mail, postage prepaid, return receipt requested to the Buyer at the address specified in paragraph 1 of this Assignment.

9. Seller agrees to indemnify Buyer from all losses, damages and liabilities, including attorneys' fees and expenses, which result from Seller's breach of any representation, warranty or covenant set forth herein, or any Disallowance of the Claim, including, but not limited to, any action, proceeding, objection or investigation relating to any attempt or threatened attempt to avoid, disallow, reduce, subordinate or otherwise impair the Claim or otherwise delay payments or distributions in respect of the Claim. Buyer does not assume and shall not be responsible for any obligations or liabilities of Seller related to or in connection with the Claim or the Case. In the event Seller has sold or assigned the Claim or any portion thereof to any other person or entity, Seller shall, immediately upon demand by Buyer, pay Buyer liquidated damages in an amount equal to twice the sum of the purchase price paid hereunder and Buyer's costs and expenses (including, without limitation, attorneys' fees and expenses) relating to this Assignment or the Claim.

10. Seller hereby irrevocably appoints Buyer with full power of substitution as its true and lawful attorney and authorizes Buyer to act in Seller's name, place and stead, to demand, sue for, compromise, recover, and transfer to Buyer all such sums of money and securities which now are, or may hereafter become due and payable for, or on account of the Claim herein assigned. Seller grants unto Buyer full authority to do all things necessary to enforce or compromise the Claim and Seller's rights thereunder or related thereto pursuant to this Assignment. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer. Buyer shall have no obligation to take any action to prove, defend, demand or take any action with respect to the Claim or otherwise in the Case. Seller agrees to execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be necessary or appropriate to effect assignment of the Claim and all interests therein to Buyer, to fully assist Buyer in enforcing the Claim and to otherwise effectuate the intent of this Assignment. Seller agrees that Buyer may sell, transfer or assign the Claim, or any portion thereof, together with all right, title and interest of Buyer and all obligations of Buyer in and to this Assignment (the purchaser or transferee of the Claim from the Buyer is defined as the "Beneficial Owner"). In the event Buyer sells, transfers or assigns the Claim, or any portion thereof: (i) Buyer shall have no further obligations to Seller under this Assignment; (ii) Seller shall deal only with the Beneficial Owner of the Claim; (iii) Seller shall only enforce its rights under this Assignment against the Beneficial Owner of the Claim; and (iv) the Beneficial Owner shall have all of the Buyer's rights under this Assignment and related documents.

11. Buyer and Seller irrevocably agree that any action to enforce, interpret, or construe any provision of this Assignment will be brought and determined only in a state or Federal court located in the City of New York, except in the Bankruptcy Court ("New York Courts"). Seller irrevocably and unconditionally consents to personal jurisdiction over Seller by the New York Courts in any action to enforce, interpret or construe any provision of this Assignment, and also hereby irrevocably waives: (a) trial by jury; (b) any defense of improper venue; or (c) forum non conveniens, to any such action brought in the New York Courts. Seller consents to service of process by certified mail at its address listed above. This Assignment shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law principles thereof.

12. The document attached hereto as Exhibit B and incorporated herein by reference may be filed by Buyer with the Bankruptcy Court as evidence of this transfer. Seller grants Buyer the right to: (a) make any corrections to Exhibit B necessary to effect assignment of the Claim; and (b) execute other evidences of transfer that may be necessary to transfer other proofs of claim filed by Seller in the Case. Seller hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Buyer

herein as the valid owner of the Claim. Seller acknowledges and agrees that Dover Master Fund II, L.P. shall be the holder of record of the Claim and shall identify itself as such on the records of the Bankruptcy Court.

13. All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Assignment and the purchase and sale of the Claim and shall inure to the benefit of, be binding upon and enforceable by the parties hereto and Buyer's successors and assigns. A facsimile copy of this executed Assignment shall constitute an original and shall bear the same binding effect as any original signatures. This Assignment may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall constitute one and the same document. This Assignment shall be read and interpreted according to its plain meaning and an ambiguity shall not be construed against either party. It is expressly agreed by the parties that the judicial rule of construction that a document should be more strictly construed against the draftsperson thereof shall not apply to any provision of this Assignment. This Assignment (including the Exhibits attached hereto, the provisions of the Claim Sale Agreement and other documents incorporated into this Assignment by express reference) constitutes the entire understanding between Buyer and Seller and supersedes any previous agreement, verbal or written, between the parties.

14. The parties hereto acknowledge that (i) each entity identified as Buyer in paragraph 1 shall be deemed to have made such representations, warranties, covenants, and agreements set forth herein for as to itself only in the Ownership Percentages set forth on Exhibit A, (ii) the obligations of each Buyer entity herein shall be several (and not joint), and (iii) notwithstanding anything to the contrary in this Assignment, the parties hereby agree that all obligations and liabilities of a party hereunder are enforceable solely against such party and such party's assets and not against any officer, director, trustee, member or limited or general partner of such party or against any assets of any officer, director, trustee, member or limited or general partner of such party.

**[SIGNATURES ON FOLLOWING PAGE]**

## CONSIDERATION PAID TO SELLER

### Exhibit A

Upon settlement of this transaction, subject to Buyer's verification of Seller's representations and warranties made herein, payment of the Consideration shall be made as follows:

Minimum Claim Amount:

x Purchase Rate:    _____

Consideration:      ══════════════════════

Ownership Percentages shall be as follows:

| Buyer: | Percentages: | Consideration: |
|---|---|---|
|   |   |   |

Total               100.00%