Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 09-50026(REG)

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    MOTORS LIQUIDATION COMPANY,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   U.S. Bankruptcy Court

13                   One Bowling Green

14                   New York, New York

15

16                   May 7, 2015

17                   9:47 AM

18

19

20   B E F O R E :

21   HON ROBERT E. GERBER

22   U.S. BANKRUPTCY JUDGE

23

24

25

1    Hearing re:  Motion Filed by Doris Phillips for Relief from

2    August 9, 2010 Stipulation and Settlement Resolving Claim

3    No. 44614, or Alternatively, Motion to Set Aside

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South and Sherri L. Breach

Page 3

1    A P P E A R A N C E S :

2    GIBSON, DUNN & CRUTCHER

3         Attorney for the Motors Liquidation Company

4         200 Park Avenue

5         New York, NY 10166-0193

6

7    BY:   LISA H. RUBIN, ESQ.

8

9    KING & SPALDING LLP

10        Attorneys for General Motors LLC

11        1185 Avenue of the Americas

12        New York, NY 10036-4003

13

14   BY:   ARTHUR J. STEINBERG, ESQ.

15        SCOTT DAVIDSON, ESQ.

16

17   GOODWIN PROCTER LLP

18        Attorney for Ms. Powledge

19        The New York Times Building

20        620 Eighth Avenue

21        New York, NY 10018-1405

22

23   BY:   WILLIAM P. WEINTRAUB, ESQ.

24

25

Page 4

1   LAW OFFICES OF OSH DAVIS

2        Attorney for Ms. Phillips and Ms. Powledge

3        1010 Lamar, Suite 200

4        Houston, TX 77002

5

6   BY:  JOSH DAVIS, ESQ.

7

8   AKIN GUMP STRAUSS HAUER & FELD LLP

9        Attorneys for Participating Unit Holders

10        One Bryant Park

11        New York, NY 10036-6745

12

13   BY:  DANIEL GOLDEN, ESQ.

14        NAOMI MOSS, ESQ.

15

16   WOLD HALDENSTEIN ADLER FREEMAN & HERZ LLP

17        Attorney for the Gruman Plaintiffs

18        270 Madison Avenue

19        New York, NY 10016

20

21   BY:  ALEXANDER H. SCHMIDT, ESQ.

22

23

24

25

Page 5

1    BROWN RUDNICK

2          Attorney for Economic Loss Plaintiffs

3          Seven Times Square

4          New York, NY 10036

5

6    BY:   HOWARD S. STEEL, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 6

```
 1              P R O C E E D I N G S
 2              THE COURT:  Good morning, have seats, please.
 3              Okay, we're here on General Motor's Liquidation
 4    Company.  I'd like to get appearances, please, and then
 5    thereafter ask you all to sit down.  First for Mrs. Phillips
 6    and Ms. Powledge?
 7              MR. DAVIS:  Josh Davis, Your Honor, along with
 8    William Weintraub.
 9              THE COURT:  Okay.  Mr. Davis and Mr. Weintraub, of
10    course.
11              MR. STEINBERG:  Arthur Steinberg and Scott
12    Davidson from King & Spalding on behalf of New General
13    Motors.
14              THE COURT:  Okay, thank you, Mr. Steinberg.
15              MS. RUBIN:  Good morning, Your Honor, Lisa Rubin
16    of Gibson Dunn for the Motors Liquidation Company.
17              THE COURT:  Right, Ms. Rubin.
18              MR. GOLDEN:  Good morning, Your Honor, Dan Golden,
19    Akin Gump Strauss Hauer & Feld on behalf of the unit
20    holders.
21              THE COURT:  Okay, thank you, folks.
22              Mr. Davis, I feel very, very badly for
23    Mrs. Phillips, especially with the loss of the kids, but
24    obviously I'm a court of law and required to comply with the
25    requirements of law.
```

Page 7

1              I've read your papers four times, and I still

2       don't understand the basis of your claims -- or your claims

3       for relief from me.

4              Mrs. Phillips and the kids had prepetition claims,

5       they were sold to a hedge fund, the family got the money for

6       it, and unless I'm missing something you're looking to

7       recover again on the same claims that were sold away to

8       somebody else and that were released.

9              As I see it the matters before me today don't

10      involve the matters that Mr. Weintraub argued back in

11      February and as to which I ruled about three weeks ago.

12             You haven't stated in your papers that those

13      rulings are wrong, and of course I assume that Mr. Weintraub

14      would take them up the street and the appellate courts, the

15      Second Circuit if it chooses to, or decide whether I was

16      mistaken in that regard or not.

17             But your opponents raise much more fundamental

18      issues, starting with whether you have a standing, and at

19      least one of them, if not both -- I certainly saw it in

20      Ms. Rubin's brief, points out -- and if I flip-flop the

21      parties forgive me -- I'm trying to understand the order

22      you're asking me to vacate under 60(b).

23             I would like you to explain for me in terms that I

24      can understand how you have standing to assert a claim that

25      you're assigned away, that you've sold to someone else, and

Page 8

1    how you can get a second recovery on that claim.  And I use

2    the claim in the singular, although it's my understanding

3    that the Longacre Fund, or Dover Fund, which I guess was

4    managed by the Longacre, which I understand to be a hedge

5    fund manager, how you have standing to assert rights under a

6    claim or claims that were assigned away.

7           Also I need you to help me, what is the order you

8    need me to vacate or modify under 60(b)?  I entered an order

9    before that authorized Old GM to settle claims in various

10   amounts with varying levels of Court involvement.  Claims

11   below a certain amount without anybody's approval, those

12   (indiscernible) amount, which this claim having been settled

13   for so much falls within (indiscernible) without Court

14   approval but with the consent of the creditors' committee.

15          Unless I totally missed something in lieu of the

16   briefs there is no Court involvement in the ultimate

17   settlement approval -- or the settlement agreement, there

18   wasn't any judicial approval, and I don't understand you to

19   be saying that I acted wrongly when I authorized Old GM to

20   settle claims with the creditors' committee consent.

21          So that causes me to scratch my head and say what

22   am I asked to do under 60(b) even before I (indiscernible)

23   focus on whether your 60(b) request is timely or whether

24   there's a fraud on the Court that would make the timing

25   inapplicable.  And then of course if there is a claim of

Page 9

1    fraud on the Court you have to help me understand why

2    there's a fraud on my court, on me, and nobody ever came to

3    me.

4           So -- usually when I have questions of this

5    character I aim it at both sides, in this case frankly it

6    seems to me kind of one sided, so help if you can.

7           Come on up first, please, Mr. Davis.

8           MR. DAVIS:  Thank you, Your Honor, good morning.

9    And I will just probably spend most of my time talking about

10   assignment for now, but I think when we talk about

11   assignment the timeline leading up to the sale of the claim

12   is most important.

13          The Powledge/Phillips plaintiffs had a lawsuit

14   that was ongoing for almost two years prior to the petition

15   of bankruptcy.  During the course of that litigation

16   Powledge had submitted numerous discovery requests seeking

17   documents that we now know exist that it's our position

18   should have been produced, but they were not.  Of course

19   bankruptcy petition is filed, and we appreciate any

20   discovery and any ongoing litigation is abated at that time,

21   but given the length of time leading up to the petition the

22   fact that certain documents were not provided to Powledge as

23   they then move into bankruptcy become a claimant file before

24   the bar date and then attempt to value their claim in the

25   bankruptcy court, we're saying that those -- the failure to

1    provide those documents substantially prejudiced her ability

2    to value her claim.

3              And what is the claim?  It is a lawsuit first.  It

4    is an unsecured contested claim based on a tort.

5              So the Court mentioned the order concerning the

6    ADR procedures and that was in February of 2010, and as part

7    of that order -- and I've got a copy, but I'm sure the Court

8    is aware of it -- claimants with wrongful death and other

9    torts were required to provide a capping letter to the -- at

10   that time it was just the debtor -- within 30 days of the

11   order.  Powledge plaintiffs did that and agreed to cap their

12   $250 million claim that was filed to -- in Ms. Powledge's

13   case, now Ms. Phillips' case -- $55 million.

14             THE COURT:  And I think they were 250 million

15   bucks each weren't they?

16             MR. DAVIS:  Yes, Your Honor, but --

17             THE COURT:  For an aggregate $250 million times

18   four.

19             MR. DAVIS:  I think the --

20             THE COURT:  That's a billion?

21             MR. DAVIS:  One billion, correct.

22             THE COURT:  Okay.

23             MR. DAVIS:  So Ms. Phillips' particular claim was

24   250 million and she agreed to cap it at 55 million and sent

25   a letter to that effect in accordance with the Court's order

Page 11

1    to ADR.

2              That capping letter triggered the ADR procedures.

3    As part of those procedures the parties agreed to attend

4    mediation and they went to mediation and obtained a

5    settlement for their lawsuit.  And the settlement is dated

6    August 9th, 2010.  The settlement is between the debtor and

7    Ms. Phillips, her stepchildren, and the mother of the

8    deceased husband, Adam Powledge.

9              THE COURT:  By the way there were four kids, if

10   I'm not mistaken, and not three?

11             MR. DAVIS:  There were four kids in the car.  Two

12   of Mr. Powledge's children from another woman were not in

13   the car and survived, and they were older children, and so

14   he had the four children that were in the car and he had two

15   other children that were not in the car.

16             THE COURT:  So when they computed the aggregate

17   claim to billion I should have said 1,250,000?

18             MR. DAVIS:  No, Your Honor --

19             THE COURT:  Well 1,250,000?

20             MR. DAVIS:  No, Your Honor, you were correct, it's

21   one billion in the aggregate.

22             THE COURT:  Oh, okay.

23             MR. DAVIS:  Ms. Powledge, the two children, and

24   then the mom, four times 250-, you were correct.

25             THE COURT:  Okay.

Page 12

1          MR. DAVIS:  Now the settlement, and it's in the

2     record, but I brought a copy of it and highlighted a couple

3     portions for discussion purposes.  If I may approach?

4          THE COURT:  I'll take yours.  I have my own, but

5     if you have highlighted it just show it to your opponents,

6     and if they have no objection I'll take what you hand up to

7     me.  It's Exhibit D to somebody's filing?

8          MR. DAVIS:  Yes, Your Honor.

9          MR. STEINBERG:  Your Honor, I don't have any

10    objections to the highlight.  Obviously there are things in

11    the stipulation that we would have highlighted that are not

12    highlighted.

13         THE COURT:  Somehow I think you know how to bring

14    it to my attention when it's your turn.

15         Come on up, Mr. Davis.

16         MR. DAVIS:  I'm just going to turn to the second

17    page, Your Honor.  We've identified the effective date of

18    the settlement which is August 9th, 2010.  Now --

19         THE COURT:  Bear with me a second.

20         MR. DAVIS:  Okay.

21         THE COURT:  Should I be looking at something you

22    highlighted or something in the remainder of the document?

23         MR. DAVIS:  If you look on page 2 you'll see the

24    $55 million cap and the resolution, and the resolution is on

25    page 3, and the settlement for --

1          THE COURT:  Just a shade under four million bucks.

2          MR. DAVIS:  In the aggregate.

3          THE COURT:  Four million, nine hundred seventy-

4     five thousand?

5          MR. DAVIS:  In the aggregate.

6          THE COURT:  Yes.

7          MR. DAVIS:  For Ms. Powledge individually it's

8     2.7 million rough and change.  She's at the top and you'll

9     see that figure, there's a scratch out and it's off to the

10    side.

11         And what the claim becomes is rather than a

12    contested unsecured it becomes an allowed unsecured but with

13    that cap of two six nine nine and seventy-four dollars

14    (sic).  The -- and of course it's signed on August 9th,

15    2010.

16         It's our position that when Ms. Powledge attended

17    the settlement conference she was attending to resolve a

18    contested claim without the kind of information that we now

19    have that she should have had as a litigant.

20         Imagine if you will, Your Honor, Ms. Powledge just

21    filing the claim before the petition in bankruptcy in which

22    no discovery had been conducted outside of the bankruptcy

23    court.  She then gets to the bankruptcy court, I would hope

24    that some discovery would have been allowed both for the

25    benefit of the debtor as well as the litigant -- the

Page 14

1    plaintiff, and that discovery would have need to have led to

2    in this particular case the very documents that we know GM

3    was not producing related to other prior defects that are

4    certainly applicable to the claim, the underlying litigation

5    that Powledge was bringing for two years prior to the

6    bankruptcy.

7              THE COURT:  Forgive me, Mr. Davis, I'm not called

8    upon to decide today what I would do if there had been a

9    judicial proceeding before me and I had entered an order.

10   I'm not called upon today to decide what I would do if your

11   clients owned the claim.  And I'm not called upon today if

12   you had alleged that Old GM's lawyers lied to me in bringing

13   something to my attention or spirited away a witness or did

14   any of the things that would pass muster under my April 15th

15   decision.

16             I'm prepared to assume for the purpose of this

17   discussion that there may well have been or even were

18   discovery violations, but your opponents aren't arguing

19   that.  They're saying you don't own the claim, there wasn't

20   a judicial order, and that your position now isn't timely.

21   That's what I need you to focus on, that's where I need your

22   help.

23             MR. DAVIS:  And I guess I certainly am, Your

24   Honor, I'm trying to do that, and I'm just I guess taking a

25   path to that discussion that may be a little bit more

1       cumbersome than what the Court would like.

2               But if -- the important point for your 60(b)

3       question is down at the bottom of page 3.

4               "This stipulation and settlement may not be

5       modified other than my signed writing executed by the

6       parties hereto or by or the of the Court."

7               And we cited in our briefing Second Circuit

8       opinions that establish that settlement agreements are

9       suggest to attack under 60(b), and that's -- and I can

10      provide the cite if --

11              THE COURT:  Whether or not they've been previously

12      approved by the court?

13              MR. DAVIS:  Yes, Your Honor, that's correct, that

14      was what the holding was in that opinion.

15              And in this particular case, given that the Court

16      was ordering ADR in the bankruptcy, and this settlement

17      agreement is the result of that order, I would say that even

18      if we're going to limit the ability to attack a settlement

19      agreement on 60(b) grounds that that is sufficient to meet

20      that standard of Court involvement in the parties'

21      settlement of a claim.

22              I think the other thing I would point out to the

23      Court is on page 2 it says, "Where after, after good faith

24      arms length negotiations."  I mean I know it's a preamble,

25      but certainly -- and we've discussed this -- Powledge takes

Page 16

1    issue with the good faith nature leading up to the

2    settlement agreement concerning her ability to value what

3    was being settled, to provide the consideration, the release

4    of her lawsuit of her claim in litigation for consideration.

5    How can that be valued if the defendant is undermining that

6    position for a variety of reasons while not giving documents

7    that would tend to support that claim, that argument?

8              THE COURT:  The contention is that she sold it to

9    the Dover firm for too little money?

10             MR. DAVIS:  She settled for too little money.  It

11   has nothing to do -- because -- and I'm getting to the

12   assignment, Your Honor, I've got it right here -- if you

13   look at the assignment -- and again, I brought a copy and it

14   has much less highlighted portions, I've got copies for you

15   as well if you just don't have it.

16             MR. STEINBERG:  It's attached to our paper.  Oh,

17   the assignment.

18             THE COURT:  You're talking about the assignment

19   itself and not the evidence of the transfer of claims.

20             MR. DAVIS:  The claim sale agreement, the

21   assignment.  I have copies.

22             MS. RUBIN:  Your Honor, I just want to point out

23   that this particular -- Your Honor --

24             THE COURT:  To a microphone, please, Ms. Rubin.

25             MS. RUBIN:  Sure, I'd be happy to, Your Honor.

Page 17

1    Give me one moment, please, to get (indiscernible).

2              The document that Mr. Davis, Your Honor, is

3    presenting the Court with now is not a document that was

4    previously attached to any of the parties' submissions on

5    this motion.  There id an evidence of the transfer of claim

6    that was filed publicly on this docket, it's also I believe

7    an exhibit to at least New GM's brief here and cited in the

8    GUC Trust's brief.

9              But to the extent that Mr. Davis now wants to

10   submit to the Court a highlighted version of a transfer

11   agreement between Longacre and his client I just want to

12   point out to the Court this is not a document that I full on

13   have seen, I can't speak for Mr. Steinberg, I'd like to

14   moment to reflect on it before Mr. Davis continues.

15             THE COURT:  All right.  Well you're certainly

16   allowed to see it and reflect on it.

17             I would have thought that from what he's described

18   it as it's further evidence of something that supports your

19   position that the claimants sold away their claim --

20             MS. RUBIN:  That (indiscernible).

21             THE COURT:  -- but if you want to look at it

22   that's plainly your right.

23        (Pause)

24             THE COURT:  Do I have an objection?  Oh,

25   Mr. Steinberg is reading it now.

Page 18

1           MS. RUBIN:  We're sometimes confused as being one

2    in the same, but I'm sure Mr. Steinberg would say we are not

3    the same party.

4           THE COURT:  I can tell the difference between the

5    two of you and your clients.

6           MR. STEINBERG:  Your Honor, I've read it now.  I

7    assume that there's a disclosure paragraph and he's gotten

8    the consent of the buyer to actually present this.

9           THE COURT:  Mr. Steinberg, you can lift up that

10   nearby microphone Oprah Winfrey style, but I didn't hear

11   what you have to say.

12          MR. STEINBERG:  The assignment has a disclosure

13   paragraph which basically says it's not to be disclosed to

14   anybody, so I assume he's gotten some kind of approval to do

15   what he's about to do.

16          MR. DAVIS:  Your Honor, the actual language of the

17   disclosure does not say to anybody, just to any other

18   creditors or debtors for the prospective purchasers of the

19   claim, so -- excuse me -- any other creditors of debtor or

20   prospective purchasers of the claim.

21          THE COURT:  I assume the purpose of a provision of

22   that character is to protect the hedge fund from the loss of

23   the advantage it has when people sell their claims to it and

24   it wants to buy people's claims up as cheaply as possible.

25          MR. DAVIS:  That's --

                                                            Page 19

1              THE COURT:  To me do we know if Dover or Longacre

2     or anybody else is still buying up GM claims?

3              MR. DAVIS:  Your Honor, I cannot offer any opinion

4     as to that question, but I will say that GM both knew and

5     the trust their own pleadings have at this point stated how

6     much money Powledge received in exchange for the settlement

7     amount that we've already talked about.  So it seems like

8     the contents of the document concerning the transaction are

9     known in the pleadings.

10             THE COURT:  So in other words, Mr. Davis, you're

11    saying that on a most important point in the whole agreement

12    from the perspective of a claims buyer the cats already out

13    of the bag?

14             MR. DAVIS:  Yes, Your Honor, anybody could do the

15    percentage of, you know, what the claim -- you know, settled

16    for based on the settlement agreement and how much --

17             THE COURT:  You divide 3,975,000 bucks by the

18    amount of the settlement?

19             MR. STEINBERG:  Your Honor, I don't believe we

20    knew about what the actual converse price was.

21             The only thing I wanted to point out, this is a

22    private agreement between the purchaser and the seller,

23    which has a disclosure provision.  If he's now going to hand

24    it to Your Honor it does become a public record.  I was just

25    pointing out to counsel whether he's violating a private

Page 20

1    disclosure arrangement that his clients have.  It doesn't

2    pertain to me, it pertains to him and his obligations under

3    the agreement, and that's all I was trying to say.

4              THE COURT:  All right.

5              MS. RUBIN:  Your Honor, may I --

6              THE COURT:  Yeah, go ahead, Ms. Rubin.

7              MS. RUBIN:  Your Honor, at page 6 of the GUC

8    Trust's brief we cite docket number 12845 at 1, it's

9    actually a letter from Mr. Davis to this Court in

10   anticipation of an August 18th, 2014 hearing in this court.

11             THE COURT:  Pull that mic closer to you, please.

12             MS. RUBIN:  Sure.  It was through that letter that

13   Mr. Davis disclosed to the Court and thereby to counsel

14   associated here what amount Mrs. Powledge or Mrs. Phillips

15   rather received from Dover Master Fund in respect of her

16   claim.  Were it not for that letter that information would

17   not have been available to us.

18             MR. DAVIS:  And respectfully, Your Honor --

19             THE COURT:  Uh-huh.

20             MR. DAVIS:  -- that's not accurate.  In the

21   Southern District of Texas prior to this case's removal to

22   this case court the GUC Trust filed a 12(b)(6) motion to

23   dismiss in which the amounts were made apparent in those

24   documents, and those pleadings were included in the removal.

25             So my letter was actually at that time doing

Page 21

1   nothing but parroting the amounts provided by counsel in

2   response -- or excuse me -- in their 12(b)(6) motion,

3   because frankly, Your Honor, at that point when I wrote that

4   letter other than the motion to dismiss I did not know the

5   figure that my client actually received.

6           THE COURT:  All right, here's what we're going to

7   do ladies and gentlemen.  You having presented it to

8   Mr. Steinberg and Ms. Rubin and what you're giving me

9   (indiscernible) after the hearing to give them hard copies

10  of what we're talking about.  Can you hand it up to me and

11  what will be deemed to be an in camera submission.

12          Frankly, I think the only relevant legal issue is

13  that there was an assignment of the claim or claims.

14          If you want to argue the amount that the claim

15  sold for your opponents may be right that that's a violation

16  of your claims agreement with Dover, but that's an issue

17  between you and Dover, and if you want to argue I will let

18  you at your own risk, and you should understand that if

19  Longacre or Dover sues you for some kind of a

20  (indiscernible) against their trading strategies -- their

21  confidential trading strategies that's a dispute between two

22  (indiscernible) as to which this Court can't protect you

23  because it doesn't have subject matter jurisdiction.

24          If you want to argue the relevance of the amount

25  that your client sold it for you can do that at your own

Page 22

1    risk.  Of course if the cat is already out of the bag then

2    this incremental disclosure results in no additional harm to

3    Longacre, and assuming Longacre is the decision maker for

4    the Dover Fund II, (indiscernible) for anybody who's doing a

5    transcript.

6           So if you want to hand it up to me -- generally

7    what Ms. Rubin said and Mr. Steinberg said to be an

8    objection, which it wasn't quite, but I'll overrule that.

9    If you want to give it to me at your own risk, vis-à-vis,

10   your exposure to Longacre or Dover Fund II I'll permit you

11   to do it.  And for the time being I'll take it in camera.

12   Of course anything you say in open court (indiscernible)

13   open court proceeding is going to stay that way is at your

14   own risk.

15          MR. WEINTRAUB:  Your Honor, if I --

16          THE COURT:  Mr. Weintraub, yes, go ahead.

17          MR. WEINTRAUB:  Thank you.

18          I think, Your Honor, there's a difference between

19   the amount that Mrs. Powledge reduced her claim to, which I

20   don't think is confidential, and the payment rate under the

21   agreement with Longacre, which might be confidential, and I

22   think Mr. Davis could make his point without disclosing the

23   payment rate.

24          His point is that the claim was liquidated in an

25   amount and then sold to Longacre, and I think that the

Page 23

1    purchase rate, which is the percentage times the allowed

2    amount of the claim, is not something that's necessary for

3    Mr. Davis to make his point that Mrs. Powledge reduced her

4    claim from $55 million to a much lower amount based upon a

5    lack of information.

6            So I think we can thread this needle by not

7    disclosing the payment rate, because I haven't heard anyone

8    say that the amount to which the claim was reduced is

9    confidential.  That's the allot amount of the claim.  What

10   somebody paid for the claim is a different question.

11           THE COURT:  I don't follow you, Mr. Weintraub, and

12   I'm going need either you or Mr. Davis to help me.

13           MR. WEINTRAUB:  Sure.

14           THE COURT:  I thought that the claims were

15   resolved, vis-à-vis, the Old GM estate in the aggregate

16   amount of 3,975,000 bucks.  I assume that on account of that

17   Dover Fund II paid Mrs. Phillips some dollar amount that's

18   disclosed in the document that Mr. Davis is about to give

19   me.

20           MR. WEINTRAUB:  Right.  And I think, Your Honor,

21   that Mr. Davis does not have to disclose the payment rate

22   that Longacre paid for an allowed claim of $3.9 million.

23           His point is that claims that started at a billion

24   dollars and then were reduced to $55 million and then again

25   were reduced to $3.9 million, those reductions were done

Page 24

1      based upon a lack of information.

2               THE COURT:  I understood that contention from the

3      start and that was why I interrupted Mr. Davis to say that I

4      need him to talk about standing and I need him to talk about

5      timing.

6               MR. WEINTRAUB:  Right, and I think the reason he

7      wants to show you that agreement is not to show you the

8      payment rate that was paid by Longacre, he wants to refer to

9      some of the other provisions in that agreement.

10              So we can address the confidentiality by not

11     getting into the payment rate and just talking about the

12     highlighted provisions.

13              THE COURT:  Okay, Mr. Weintraub, but can't most of

14     the people in this room if not in my kid's tenth grade class

15     engage in a division exercise and divide two numbers and

16     come up with a percentage?

17              MR. DAVIS:  Yes, Your Honor, and that's something

18     that they can do with the documents that GM has already

19     filed.

20              So again, with regard to the actual contents of

21     what Longacre would want to maintain confidentiality on,

22     those figures are already out there and you can certainly do

23     that division to identify that rate.

24              I think what Mr. Weintraub is saying is that the

25     claim sale agreement and the assignment itself in no way

Page 25

1   assigned my client's right to attack the settlement

2   agreement -- not the claim, the settlement agreement --

3   because it was obtained through misrepresentations that were

4   unknown to her at the time that she provided the

5   consideration she did for the settlement agreement.

6           And, Your Honor, I think I'll pivot at this point

7   because we're not --

8           THE COURT:  We spent a lot of time on this

9   discussion.  Are you asking for a ruling from me?  Are you

10  asking to hand me a document or are you withdrawing that

11  request?

12          MR. DAVIS:  I'm fine to withdraw that request at

13  this point, Your Honor.

14          THE COURT:  Okay.  Move on with your argument.

15          MR. DAVIS:  Great.

16          Enron, the court cited it favorably, Judge

17  Gonzales' opinion in footnote 210 of the Court's April 15th

18  order.  That case, it basically disallowed the whitewashing

19  of sold claims by claimants that were -- that had unclean

20  hands.  And the court agreed with that opinion strongly

21  based on the --

22          THE COURT:  I think the word he used was

23  laundering rather than -- like the Mafia does rather than

24  whitewashing.

25          MR. DAVIS:  And -- that's fine, Your Honor.

Page 26

1           I think that the opinion stands for the

2     proposition that claimants that are engaged in any sort of

3     fraud or do not have a -- that have essentially a wrongful

4     claim cannot turn around and either assign or transfer their

5     claim to a third party and then have that third party demand

6     that that claim be paid or that that assignment be honored.

7           And Judge Gonzales' opinion was willing to look

8     back at the underlying transaction, the I understand lying

9     merits of the original claimant and say that I'm not going

10    to allow that sort of purchase of that kind of claim.

11          THE COURT:  Pause please, Mr. Davis.  Wasn't the

12    underlying concept of Judge Gonzales' Enron decision that

13    the assignee of a claim can have no greater rights than the

14    assignor?  And wasn't that the same principal that when the

15    Third Circuit decided its KB Toys decision to the same

16    effect and it rejected Judge Sheindlin's analyze which had

17    reversed Judge Gonzales with the underpinning of the Third

18    Circuit's view as well?

19          MR. DAVIS:  Well, Your Honor, and of course you

20    talked about that case.  I was actually referring to the --

21    not the KB Toys and that Enron decision that was reversed, I

22    was referring to Judge Gonzales' opinion out of this

23    Southern District of New York concerning Enron and that the

24    court cited favorably in that footnote in which those things

25    are all true and the court agreed with that Third Circuit

1    opinion, and I appreciate that, but what the court also

2    agreed with was the bankruptcy court's decision in another

3    Enron case, which I think you cited as Enron II, that a

4    claim does not become somehow cleaner for a subsequent

5    purchaser or a subsequent assignee in the event that the

6    underlying claim and the merits of the underlying claimant's

7    claim is wrongful, fraudulent, or if there's some other

8    arguments concerning the merits of that claim.

9           The assignee cannot avoid those arguments because

10   of the assignment, and they don't get the automatic right to

11   present that claim as assigned and not have the merits of

12   the underlying claim assessed, and certainly any defenses

13   that the debtor may allege concerning that claim that would

14   have applied to the original claimant, they can make those

15   same arguments to the assignee of the claim.  Even if --

16          THE COURT:  Yeah, I understand that.  That walks

17   and talks and quacks like what I was just talking about.

18          MR. DAVIS:  Okay.

19          THE COURT:  Are you --

20          MR. DAVIS:  And I'm saying --

21          THE COURT:  -- making reference -- give me both

22   cites to both of Judge Gonzales' bankruptcy court Enron

23   decisions and I'll see whether you're bringing anything to

24   the table beyond what I thought you were saying.

25          MR. DAVIS:  I'm sorry, it's footnote 208 of Your

Page 28

1    Honor's April 15th opinion.

2              THE COURT:  Okay.

3              MR. DAVIS:  You cite the KB Toys case there, you

4    cite Enron District, and that cite is 379 B.R. 425.

5              THE COURT:  That's Sheindlin I assume.

6              MR. DAVIS:  Correct.  And then you cite Judge

7    Gonzales' opinion, and I'm, it wasn't Enron II, but Enron

8    Bankruptcy is how you referred to it subsequently, and

9    that's 340 B.R. 180.

10             And I'm bringing up that case because the Court's

11   focus on assignment to Longacre to Dover suggests that

12   somehow Powledge's settlement, which we allege was based on

13   misrepresentation, and can somehow -- and the conduct by GM

14   leading up to that settlement can somehow be whitewashed by

15   the assignment of what became an allowed liquidated claim as

16   opposed to what she had leading up to the settlement

17   agreement which was an unliquidated contested claim.

18             And so those equitable arguments can work in

19   reverse for Powledge because she did not know the value of

20   her lawsuit which represents releasing that lawsuit, becomes

21   the consideration for the allowed claim of -- you know, for

22   her, 2.7 million.

23             Now that 2.7 million of course did become -- those

24   warrants were assigned to Dover, but Powledge nowhere in her

25   assignment of claim and nowhere in the document I was going

1   to present the Court with does she assign the settlement

2   agreement, she assigns the allowed liquidated claim that

3   became the consideration underlying the settlement

4   agreement.

5            THE COURT:  Why isn't the remedy then for her to

6   go to Dover, so give us back the -- how much did she get for

7   those four claims?

8            MR. DAVIS:  Well it's in the record, and if I -- I

9   mean we've had a long discussion about that.

10           THE COURT:  We're not talking about percentages --

11           MR. DAVIS:  Gotcha.

12           THE COURT:  -- we're talking about how much she

13   got for those claims?

14           MR. WEINTRAUB:  Your Honor, that was --

15           THE COURT:  I thought you said that's already in

16   the record.

17           MR. DAVIS:  It is in the record, I just --

18           THE COURT:  Then tell me.

19           MR. DAVIS:  Okay.  The total gross consideration

20   for the 3.9 million was $1,172,625.

21           THE COURT:  One million one hundred seventy-two

22   thousand.  Okay.

23           MR. DAVIS:  So --

24           THE COURT:  And then my question to you is why

25   doesn't she ask Dover to give her back the 1.17 million

Page 30

1    (sic) bucks and then say that I'm willing to waive the

2    earlier allowance of my claim and give me a do over?  Kind

3    of like I've said or implied would often be the remedy for a

4    denial of due process in other circumstances.

5              MR. DAVIS:  Well --

6              THE COURT:  It sounds to me like she's trying to

7    keep the 1,172,000 and then go back to the GUC Trust for

8    even more.

9              MR. DAVIS:  No, Your Honor, I think we've at some

10   point stated that in the event we obtain relief would be

11   fine to produce that amount for the trust and continue to

12   litigate that.

13             I would respectfully suggest that in response to

14   Your Honor's decision a person's ability to attack a

15   settlement agreement cannot be dependent upon getting them

16   to agree to reverse an assignment in which the merits of the

17   settlement agreement or the underlying lawsuit that resulted

18   in the settlement agreement were never part of the

19   consideration for the assignment itself.

20             I mean the Court is essentially suggesting just

21   have this transaction, undo it, certainly if Dover would

22   ever agree to this, which who knows and I doubting that they

23   would, but they would certainly expect some return on that

24   investment in addition to what is the consideration that was

25   provided in August of 2010.

Page 31

```
 1              But Dover never obtained the right to the lawsuit

 2    that represents the settlement agreement, and the assignment

 3    was not about the lawsuit, the assignment was about what the

 4    claim became as a result of the settlement, which was an

 5    allowed claim for a set liquidated amount.

 6              So, I don't know -- and again, I point this out, I

 7    mean essentially Powledge had her settlement and all she had

 8    was warrants and she sold those warrants, which was just an

 9    allowed claim, and investors like they do --

10              THE COURT:  The settlement didn't give her stock

11    and warrants like every other -- I mean didn't allowed

12    claims in the Old GM case give prepetition unsecureds stock

13    and warrants?

14              MR. DAVIS:  The settlement agreement is silent to

15    that, Your Honor, and frankly I wasn't counsel --

16              THE COURT:  Doesn't the settlement agreement

17    provide in rules or substance that in exchange for an

18    allowed claim of this amount the selling party, which is the

19    family, will get the treatment under Old GM's plan?

20              MR. DAVIS:  Yes.

21              THE COURT:  And didn't Old GM's plan give

22    unsecureds -- general unsecureds a bundle of stock and two

23    types of warrants?

24              MR. DAVIS:  Yes.

25              THE COURT:  So are you saying something different
```

Page 32

1   -- that she got something different than all of other

2   general unsecured claims got?

3               MR. DAVIS:  No, Your Honor.

4               THE COURT:  So had she not sold her claim, she

5   would have got on account of allowed claims in the aggregate

6   of just under $4 million, whatever any other general

7   unsecured creditor who had a claim of just under 4 million

8   bucks would get.

9               MR. DAVIS:  Yes.

10              THE COURT:  Okay.  But now you're trying to tell

11  me something different than that.

12              MR. DAVIS:  I'm saying that when she had those

13  allowed unsecured claims like everything else the fact that

14  she turned them into cash so that she didn't have to

15  maintain debt in a company that she believed killed her

16  family is not unreasonable, and that transaction --

17              THE COURT:  I didn't understand your opponents to

18  be saying that it was unreasonable.

19              MR. DAVIS:  Okay.  Well --

20              THE COURT:  All they're saying is that she sold

21  it.

22              MR. DAVIS:  Well the -- but the transaction, that

23  is selling that claim, does not in any way implicate the

24  settlement agreement and the lead up to the settlement

25  agreement and the valuation of what her claim was prior to

Page 33

1    the settlement agreement.  And that is where -- you know,

2    what is what we're attacking.

3              Now, I think that the argument here is it's just

4    very convenient that GM can make the argument that she then

5    turned her settlement and the warrants that were provided as

6    consideration for that settlement for her lawsuit into cash

7    in a secondary market and somehow loses the right to

8    complain about GM's bad acts leading up to the settlement

9    agreement.  That is the core of the argument against the

10   assignment issue and certainly what we're saying concerning

11   this standing issue.

12             Now we've cited in our brief the Court is not

13   required to provide 60(b) relief to say that there were

14   misrepresentations leading up to the settlement agreement

15   and it should be void.  The question just becomes how do we

16   resolve the fact that the void settlement agreement was

17   subsequently turned into an assignment to Dover and that

18   those warrants were eventually I'm sure cashed by Dover at

19   some later point or negotiated by Dover at some later point?

20   But the fact that that transaction occurred I'm sure GM --

21   the Trust doesn't want the cash that was exchanged in 2010

22   between Powledge and Dover.  If this were to happen I would

23   expect that they would want the value of $2.7 million worth

24   of warrants as best as those can be valued in today's

25   dollars to go back to it -- to go back to the Trust so that

Page 34

```
 1    Powledge gets to go on, get the discovery documents she was

 2    entitled to so that she can fairly value the claim prior to

 3    reaching a settlement.  That's the argument.

 4            And the assignment and the nature of the

 5    assignment just being a liquidated allowed claim -- and,

 6    Your Honor, I was here for the two days of argument and I

 7    heard certain the Powledge's case brought up multiple times,

 8    but I also heard the Court's concern, and it shows up in the

 9    April 15th order, that the plaintiffs were only seeking

10    relief for themselves as opposed to other claimants within

11    the trust, and that was a concern.

12            This relief that we're seeking it does benefit

13    other claimants.  And how does it do that?  It insures that

14    when claimants are conducting these transactions that if the

15    claim that they are subsequently selling in the secondary

16    market is the result of fraud or misrepresentation and is

17    significantly unvalued, that they're going to be able to

18    make that case later on down the road and not -- and

19    certainly those purchasers want to be able to know that too,

20    because that's the only way that the --

21            THE COURT:  So there can be double dips in --

22            MR. DAVIS:  No, Your Honor.

23            THE COURT:  -- claims against the estate?  One by

24    the hedge fund and one by the underlying assignor of the

25    claim?
```

1          MR. DAVIS:  No, so that the risk regarding the

2    value or the lack of value of the underlying consideration

3    remains with the debtor and is not shifted on those

4    conducting the transaction, those providing liquidity.

5          Because if the Court -- let's say hypothetically

6    that the assignment issue is dispositive for the Court and

7    you say, nope, she assigned her claim, what does that tell

8    future, for example, wrongful death claimants or future

9    litigants that are brought into bankruptcy and subsequently

10   reach some sort of settlement and then settle their claim?

11   It tells them that they should not do that at all.  They

12   should not negotiate in the secondary market certainly

13   making it easier for this Court to conduct its business as

14   it negotiates claims by having -- you know, by dealing with

15   financial people as opposed to aggrieved families, something

16   that is, you know, going to lead to -- well, I mean imagine

17   if all of the claimants that had wrongful death or tort

18   claims and had those resolved through the ADR process, did

19   not sell their warrants in the secondary market because they

20   felt like I better hold onto this, because if I don't I'm

21   not going to have a right to attack the value of my

22   settlement agreement in the future if I was duped and I

23   don't know it.  That holding would undermine the secondary

24   markets, because all of these wrongful death and tort

25   plaintiffs based on that holding will hold their warrants,

Page 36

1    will hold their claims, will not sell them, and will ride

2    out the bankruptcy arguing for the most value that they

3    possibly can and insure that when they do exchange their

4    warrants it's with the trust itself and not on the secondary

5    market.

6              THE COURT:  Mr. Davis, like many people I don't

7    like to see people duped, but couldn't the parade of horrors

8    that you're discussing be addressed by instead of entering

9    into a settlement agreement with the content that we had

10   here say in the clause right after the one that says I am

11   releasing all claims, known or unknown, provided however

12   that if there has been material non-disclosure or false

13   statement of fact that this release will be negatory?

14             MR. DAVIS:  And, Your Honor, I certainly wish that

15   that's what that said.

16             THE COURT:  That isn't what it said does it?

17             MR. DAVIS:  It's not, but at the same time the

18   case law doesn't require that to attack a settlement

19   agreement, and in fact in New York it's not just that the

20   misrepresentation must be intentional, an unintentional

21   misrepresentation is sufficient to toss out a settlement

22   agreement, even with the kind of boilerplate language that

23   Your Honor references.  And the Court will know that when

24   you issued your ADR procedures and that order you provided

25   as an exhibit a sample settlement agreement and it mirrors

Page 37

1   exactly the settlement agreement that Ms. Powledge was --

2   did sign.

3            So when the Court talks about the involvement of

4   Your Honor in terms of how we got here and that particular

5   language you're citing we are talking about a unilateral

6   boilerplate language -- release language regarding that

7   claim that Ms. Powledge had no ability to negotiate over.

8   All she could do was do the very best that at the time she

9   could have done given the lack of documents in valuing her

10  claim.

11           She valued her claim, she settled her claim, she

12  was given the settlement agreement as it reads just like all

13  of the other, you know, people that had litigation matters

14  that were subject to that ADR order, and she signed it with

15  that boilerplate language.

16           The State of New York and the Second Circuit do

17  not require that a misrepresentation leading to a settlement

18  agreement must be intentionally misrepresented.  Unintended

19  misrepresentations are sufficient to void a settlement

20  agreement.

21           Sort of continuing on.  Since we're talking about

22  the settlement agreement as opposed to the assignment, and I

23  think the equitable mootness arguments I've tried to address

24  by saying, you know, other claimants are benefited if

25  Powledge gets relief because they will know that their

09-50026-mg   Doc 13151   Filed 05/08/15   Entered 05/20/15 14:53:01   Main Document
Pg 38 of 142

Page 38

1  claims are not going to be undermined if GM rides out

2  bankruptcy, not providing documents that would provide

3  evidence of the value of their claim that it will not get

4  off.

5          THE COURT:  Forgive me, Mr. Davis.  That was

6  totally upside down.  I have tens of thousands of Old GM

7  creditors represented by Ms. Rubin whose claims have already

8  been allowed in fixed amounts, and you're saying that

9  they're going to be benefited by additional claims tapping

10 whatever cash is available for them, or for that matter the

11 traders in GUC Trust units represented by Mr. Golden who

12 invested on the premise that the claims totally allowed

13 against the estate could only go down and not up?  And

14 you're saying they would benefit by exactly the opposite?

15         MR. DAVIS:  By insuring fairness for the process,

16 yes.  Because what happens if those other claimants --

17         THE COURT:  Go ahead and make your next point,

18 Mr. Davis, that one is insulting my intelligence.

19         MR. DAVIS:  Okay.  I looked very hard for a case

20 that was very on point for the particular facts of this case

21 regarding the settlement agreement.  Spaulding v. Zimmerman

22 is the closest I could find.  It's in no way -- it's a

23 Supreme Court case from Minnesota, it's the Supreme Court of

24 Minnesota, certainly not binding on the Court, but the facts

25 are very, very similar to these facts, and I have the cite.

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

1    It's 263 Minn, M-I-N-N 346.

2              In that particular case the plaintiff came back

3    and they made a 60(b) -- excuse me -- a 60.02 argument of

4    their civil rules that that provision of their civil rules

5    mimics exactly the language of 60(b) in the federal rules,

6    trying to attack a settlement agreement that was obtained as

7    a result of the plaintiff not being able to fairly value

8    their claim.

9              I have copies for opposing counsel.

10             THE COURT:  Were they cited in your briefs?

11             MR. DAVIS:  No, Your Honor, I found this case as I

12   was preparing for argument.

13             THE COURT:  You understand that when guys like me

14   do their jobs they do their preparation based on briefs?

15             MR. DAVIS:  Yes, Your Honor.

16             THE COURT:  And am I also correct that you filed

17   both an original brief and two replies?

18             MR. DAVIS:  One was a --

19             THE COURT:  One reply affixing the other reply I

20   gather or amending it, but --

21             MR. DAVIS:  That's correct, Your Honor.

22             THE COURT:  -- you're -- let's not count it as

23   three briefs, you gave me two?

24             MR. DAVIS:  An original motion and a reply brief,

25   yes, Your Honor.

Page 40

1          THE COURT:  Mr. Steinberg and Ms. Rubin, do you

2     care if he gives me one now that was not submitted earlier

3     and to which you had no earlier opportunity to respond?

4          MS. RUBIN:  Subject to our ability to respond.

5          THE COURT:  Can't hear you, Ms. Rubin, pull the

6     mic closer to you.

7          MS. RUBIN:  Subject to the Trust's ability to

8     respond at a later time if appropriate, no, Your Honor, I

9     don't mind.

10          THE COURT:  You're on the same page with

11     Ms. Rubin, Mr. Steinberg?

12          MR. STEINBERG:  Yes, Your Honor, as long as we

13     have an opportunity to read this case, see whether it's ever

14     been overruled since 1962, and other things like that, then

15     as long as we reserve our rights he can say what he wants to

16     say.

17          THE COURT:  All right.  I'm going allow you to

18     submit it, Mr. Davis.  I'm simultaneously giving anybody

19     else in the case the opportunity to file a written response

20     addressing that case, and don't ever do this to me again.

21          MR. DAVIS:  Yes, Your Honor.  May I approach with

22     the case?

23          THE COURT:  Yes.  For the record he handed me

24     Spaulding versus Zimmerman, 263 Minn 346, a decision of the

25     Minnesota Supreme Court from 1962.

Page 41

1          Go ahead, Mr. Davis.

2          MR. DAVIS:  It is a dated case, Your Honor, but

3     it's just very on point, and I've got some highlighted

4     provisions here.

5          The case concerns a lawsuit in which a minor

6     reached a settlement agreement from a car wreck.  The

7     defendant and the defendant's lawyer in that case were

8     provided an opportunity to evaluate that plaintiff and they

9     discovered that the injuries that the plaintiff was

10    suffering was potentially much greater than what the

11    plaintiff was aware of.

12         The court, in evaluating the plaintiff's 60(b)

13    motion -- and kind of a little bit more factual background

14    -- the plaintiff joined the military or attempted to join

15    the military when he was older and it was at that time that

16    a physician identified the more serious brain injury that

17    could have possibly been the result of the car wreck.  And

18    the -- whether or not it was or it was not was not

19    dispositive for the 60(b) motion.  And I'm calling it a

20    60(b) motion even though it's not because it's identical to

21    the federal rule.

22         But the court essentially said that because of the

23    inability for the minor and the court's involvement in the

24    case to approve the settlement to be aware of the

25    significance or potential significance of the injury and

Page 42

1   because the defendants and defense counsel failed to

2   disclose what they knew, which was that it was much more --

3   potentially much more serious, the court was willing to set

4   aside that settlement agreement and allow the plaintiff to

5   proceed with the claim with his newfound knowledge

6   concerning his aneurysm.

7           Certain the court relies heavily on the fact that

8   it was a minor and the fact that the settlement agreement

9   itself was -- had to be approved by the court, and when the

10  defendants and the plaintiffs came for the approval the

11  defendants had the duty to disclose that information at that

12  time.

13          I would say though and respectfully suggest that

14  that involvement is in my view certainly analogous to the

15  Court's ordered ADR, the form of this -- you know,

16  boilerplate language that Your Honor mentioned, and the

17  language concerning the equitable arguments for setting

18  aside the settlement agreement are certainly -- is certainly

19  language that we see in the Second Circuit and Your Honor's

20  aware of it.

21          I mean the April 15th order demonstrates that the

22  Court is aware that when there is a constitutional due

23  process violation that results in unique prejudice that

24  courts are bound to step in and craft a solution for that

25  litigant.

Page 43

1          It's our position that Ms. Powledge, as she was

2     trying to grasp out the value of her claim before the

3     settlement, was doing just that, but she could not because

4     of the lack of documents that would have tended to prove her

5     claim.

6          Now, I haven't brought it up yet because I don't

7     want to appear aggrandizing, but the -- GM's arguments

8     concerning the wreck were that he did it on purpose, okay?

9     And the only reason why you would make that argument is

10    because the nature of the underlying wreck itself lends to

11    only one of two things.  That he did it on purpose or there

12    was a massive failure in the vehicle.

13         Of course my client would never, never has, and

14    never will believe that her husband did this on purpose, and

15    that's what led her to believe that it was GM, certainly

16    what led her to file a lawsuit.  But because of the

17    destruction of the vehicle she had no evidence really to go

18    off of to attempt to value or prove her claim because GM was

19    holding all the documents.

20         Now whether purposefully or the result of

21    corporate incompetence GM had the documents that if they

22    would have produced them would have allowed her to know the

23    real merit of her underlying lawsuit.

24         She, you know, filed a claim for 250 million, she

25    agreed in a capping letter to bring that down to 55 million.

09-50026-mg    Doc 13151    Filed 05/08/15    Entered 05/20/15 14:53:01    Main Document
                              Pg 44 of 142

Page 44

1    Would she have done that if had a bunch of evidence that

2    demonstrated the likelihood that the wreck really was caused

3    by a product defect and she could prove it in court?  That's

4    unlikely.  Would she have at 55 million gone down to

5    2.7 million, just for her claim, if she had really great

6    documentation to demonstrate the merits and value of her

7    lawsuit?  No, she would not.

8              And what the Spaulding case says and as we apply

9    it to this case is, of course, she would not, and we know

10   that, and of course this plaintiff, if provided that

11   evidence that the defendants had, would not have settled his

12   case for I think it was $6,500.

13             They would require more if they're negotiating

14   based on that knowledge.  Certainly, my client would have,

15   in negotiating in accordance with the ADR order, required

16   more than 2.7 million worth of warrants that she then

17   converted for a much lesser amount for the loss of her

18   family.

19             And so -- and now we're onto the -- you know,

20   talking about the settlement agreement and the merit of the

21   argument that we get the benefit of the settlement

22   agreement.  We get to avoid Powlege's  attempt to undo the

23   settlement agreement.  Well, the Second Circuit says that

24   you do not; that -- I mean, and that is independent of 60(b)

25   and that is also a separate claim that Powlege has made

Veritext Legal Solutions
212-267-6868              www.veritext.com              516-608-2400

Page 45

1    against the trust; that the settlement agreement was

2    attained through misrepresentation and she gets to avoid it.

3            Now 60(b) is a vehicle for attacking the

4    settlement agreement and certainly the settlement agreement

5    says that this Court can change it, modify it, upon your

6    order.  We are not going to pay back Dover and Dover is

7    probably not going to even want to deal with us.  I would

8    expect that even if we did that and the Court provides a

9    relief to Powlege, she wouldn't have to pay back what she

10   got from Dover to the trust.  She would have to pay back the

11   value of the warrants as they existed in 2010 to the trust.

12           So I think -- and for the record and for counsels'

13   benefit, the Spaulding case was cited by the Supreme Court

14   of New Jersey as recently as 1998 for the very -- for the

15   very holdings that are contained within.  And so, certainly,

16   at least the New Jersey Supreme Court -- and I've got that

17   cite as 154 NJ 437 and it's Kernan, K-E-R-N-A-N, v. 1

18   Washington Park, Urban Renewal Associates.

19           There's plenty of case law that doesn't follow

20   Spaulding.  In fact, there's a very -- there's a long

21   opinion by the Fifth Circuit that takes issue with Spaulding

22   for a variety of reasons.  But for -- I believe that the

23   Court's April 15th order and any relief provided to Powlege

24   can be -- can coexist easily.

25           The Court is -- has all the authority it wants to

Page 46

1    be able to decide the 60(b) motion or to decide it on other

2    grounds, as the Court did in the April 15th order for the

3    economic loss plaintiffs.  And certainly Your Honor went

4    into that; that you are entitled to do that.

5           I think that we do not dispute the assignment or

6    the sale of the claim at all, but the assignment itself --

7    and I have those documents and we talked about them, and

8    perhaps if the Court would like we could submit them for in

9    camera inspection.  There's nothing about the documents that

10   would prohibit me from producing them if I was ordered to by

11   the court.

12          But nothing in the assignment documents, other

13   than the amount that the allowed claims were for, which is

14   public record, there's nothing in the assignment documents

15   that says we are being assigned your rights under the

16   settlement agreement.  We, like as in all rights rather than

17   just the settlement amount for this now allowed claim is X

18   and you are assigning us that claim for that allowed amount.

19          And, of course, the transfer claim identifies the

20   capping amount, but everyone knew that the claim itself had

21   already been reduced based on the settlements and

22   stipulation agreement that was filed with the Court.

23          So I think she -- the point of the entire motion

24   and certainly of me being here is that she never got an

25   actual day in court in the sense that she was provided what

Page 47

1    we would think of as a litigant's right to due process under

2    our rules of discovery, under our rules of civil procedure.

3    She did not get any documents.  I mean -- and I cite to GM's

4    position in their mediation statement.  Certainly, I've made

5    the point that GM accused Mr. Powlege of being a murderer of

6    his children because they did.  That was their position.

7    And the only reason why they were able to take that position

8    was because they weren't producing the documents that would

9    have demonstrated the merit of her lawsuit in and her

10   product defect case.

11          I do not have to prove that underlying case today.

12   The GUC Trust in their briefing certainly makes it sound

13   like I do.  That's not what is required.  All I have to do

14   is prove to you that she was prejudiced by the conduct; that

15   there was some misrepresentations leading to the settlement

16   agreement, and that it needs to be voided for those facts.

17   And when we talk about prejudice we are talking about a

18   constitutional due process violation that specifically

19   prejudices her.

20          And, frankly, not -- and that's what -- and I'm

21   sorry to have offended Your Honor about the issue of the

22   other claimants, but if any claimant were to be in this

23   position, they should feel comfortable that they could come

24   to Your Honor and say, this is what happened to me and my

25   claim was undervalued because I didn't know this that they

Page 48

1    knew.  I should be able to get my claim back and to be able

2    to do it over with documents that should have been given to

3    me, but were not.

4           When we talk about, you know, certainly the

5    Bankruptcy Code and its provision, certainly a 393 sale,

6    those are incredibly beneficial provisions for a lot of

7    reasons.  And we -- I mean, I'm not a bankruptcy attorney,

8    but I understand why they're there.  But the tradeoff is

9    that the debtor must disclose, the debtor must say this is

10   what I'm coming to the Court with.  I need -- I need Chapter

11   13, I need Chapter 11 help.  I need this sale to be

12   effectuated, but here's all the stuff related to these

13   people that are going to be put out because they are

14   accepting lesser of what they would otherwise deserve if I

15   wasn't seeking bankruptcy protection.

16           In Ms. Powlege's case, for her claim, that

17   disclosure never occurred.  For a lawsuit she never got

18   documents to prove her case.  I mean, if it were a contract

19   dispute would she be entitled to --

20           THE COURT:  Mr. Davis, I've let you talk for an

21   hour --

22           MR. DAVIS:  Okay.

23           THE COURT:  -- ten minutes.  If you have anything

24   to tell me that you haven't already told me at least once

25   you can say it.  But don't repeat things for the third or

Page 49

1    fourth time, please.

2              MR. DAVIS:  I don't.  Not at this time.

3              THE COURT:  Thank you.

4              All right.  Who will I hear from next?

5              Ms. Rubin.

6              MS. RUBIN:  Thank you, Your Honor.

7              And given Your Honor's comments earlier this

8    morning about your review of the briefs, I'm going to try

9    and keep my own comments brief, subject to any questions

10   that you have.

11             First, I would be remiss, Your Honor, if I didn't

12   say, as Your Honor has, to Mr. Davis and to Mr. Weintraub

13   how profoundly sorry I am for the tragedy that their client

14   suffered.  As a parent, as a lawyer I think the

15   circumstances are unimaginable and certainly she has my

16   sympathies.

17             I will say, Your Honor, however, that that's not

18   what's at issue here.  And what I would like to do is to try

19   and scale back on the rhetoric and the hyperbole and get

20   down to facts and law, if I may.

21             Your Honor, Mr. Davis was asked by you to talk

22   about the settlement and the transfer, and I would like to

23   concentrate most of my energy this morning on both of them.

24   And in particular a statement that Mr. Davis made about what

25   the impact was of the transfer and the impact of the

Page 50

```
 1    settlement, and I would like to look at both documents with

 2    Your Honor if we may.

 3              The first thing that Mr. Davis said was that the

 4    transfer that was made by his client to Dover Master Fund

 5    was essentially not everything that she had; that she had an

 6    unliquidated, contested litigation claim and that what she

 7    transferred to Dover Master Fund was just the reduction of

 8    that claim to an allowed general unsecured claim.

 9              And respectfully, Your Honor, based on my reading

10    of the documents that's simply not the case.  So let's look

11    to the documents, Your Honor, if we may.

12              The settlement itself, on page 2 of the settlement

13    --

14              THE COURT:  Pause for a second.  Let me find it

15    again.

16         (Pause)

17              THE COURT:  This is the stipulation and settlement

18    resolving claim number, and then there are --

19              MS. RUBIN:  A series of --

20              THE COURT:  -- four separate claims.

21              MS. RUBIN:  Yeah.  And, Your Honor, let me pause

22    there actually for one moment because I would like to

23    correct the record as to one misapprehension that I believe

24    the Court may have.

25              You see here listed four separate claim numbers.
```

Page 51

1     Those four claims do not correspond to each of the deceased

2     Powlege children.  Rather, they correspond to the claimants

3     themselves.  Ms. Powlege, or Ms. Phillips, is the holder of

4     claim number 44614, which was filed in the amount of $250

5     million and then subject to the agreed upon cap of $55

6     million through the ADR procedures that Your Honor

7     referenced earlier.

8             That claim of $250 million was in respect of her

9     wrongful death claims for the accident that killed her

10    husband and their four children together.  The three

11    remaining claims that are referenced in the settlement here

12    are claims that belong, as Mr. Davis pointed out, to Mr.

13    Powlege's two adult children from a prior relationship and

14    to his mother.

15            And Your Honor will note that the claim amount

16    caps for those three remaining claims are only $5 million as

17    compared with Ms. Phillips' claim, 44614, in the amount of

18    $55 million.

19            It's my understanding, Your Honor, that Mr. Davis,

20    in coming before the Court with his Rule 60 motion, is

21    seeking to represent Ms. Phillips, but not the other adult

22    Powlege claimants.  And I just want to clarify that for the

23    record.  If I misunderstand that, certainly I hope Mr. Davis

24    will correct me and the record at a later point in time.

25            But going back, Your Honor, to the point I was

 1      going to make, which is the whereas clause on page 2 of the

 2      settlement agreement says, whereas claimants filed the

 3      following proofs of claim, which it defines, therefore, as

 4      the claims.  And it refers to claim number 44614 in the

 5      amount of $250 million.

 6              In the submissions that have been made to the

 7      Court, one of the other parties it was -- it was not the GUC

 8      Trust, actually submitted the proof of claim.  That proof of

 9      claim, 44614, is a reference to Ms. Powlege's lawsuit in

10      Texas.  It's her wrongful death lawsuit in respect of the

11      death of her husband and her four minor children.

12              Your Honor, you know from the briefing and I won't

13      belabor this too much, that although the claims are then

14      settled, the claims meaning the proofs of claim with the

15      filed amounts listed and the claim amount caps listed, would

16      be settled as allowed general unsecured claims in specific

17      amounts that are written on page 3.

18              Paragraph 3 of the settlement then says -- I'm

19      sorry.  Let me read paragraphs 2 and 3 because it will clear

20      up another issue.  Your Honor asked Mr. Davis what happened

21      as the impact of the settlement, what distributions his

22      client would have been entitled to receive had he not

23      transferred the claim.  And here's the answer, Your Honor.

24      The claimant shall receive distributions on account of the

25      allowed claims in the form set forth in and pursuant to the

Page 53

1      terms of a confirmed Chapter 11 plan or plans in these

2      Chapter 11 cases.

3              So to answer Your Honor's question, had Ms.

4      Phillips not transferred her claim, yes, she would have been

5      entitled under the plan to become a GUC Trust beneficiary

6      and receive a distribution of new GM securities and to

7      receive GUC Trust units.

8              Now paragraph 3 of the settlement then says, upon

9      receipt of such distributions on account of the allowed

10     claims as set forth in the plan, the claims, not the allowed

11     claims, but the claims -- again, defined on page 2 as the

12     proofs of claim with the unliquidated final amount of $250

13     million and the agreed upon cap of $55 million in Ms.

14     Phillips' case, that claim shall be deemed to be satisfied

15     in full.

16             The briefing, Your Honor, that my client has

17     filed, that Mr. Steinberg's client has filed talks further

18     then about the impact of the release by reference to the

19     language in paragraph 4.  I'll just mention that here and

20     move on to the evidence of the transfer of the claim.

21             Before today I personally had not seen the claim

22     sale agreement that was subject of a colloquy between you

23     and Mr. Davis, and I won't reference it further here except

24     to say that there is, in the public record, the evidence of

25     a transfer of a claim.  I understand that document to have

Page 54

1     been filed on the record in this case and something that all

2     the parties can refer to openly.

3              And let's -- let's go to the transfer of that

4     claim because Mr. Davis's contention is that by executing

5     this transfer, his client was somehow transferring away

6     something less than the whole of what she had prior to the

7     bankruptcy of General Motors.

8              And respectfully, Your Honor, I'll disagree.  Ms.

9     Powlege is transferring here all rights, title and interest

10    in and to the claim of seller, including all rights of

11    stoppage and transit replevin (sic) and reclamation in the

12    principal amount of $55 million defined as the claim.  I

13    don't see that language anywhere to limit what is being

14    transferred to the allowed general unsecured claim amount

15    arrived at through the settlement agreement.

16             Rather, Your Honor, that is a wholesale transfer

17    of the agreed upon claim amount of $55 million subject to

18    Your Honor's ADR procedures, which Mr. Davis has

19    acknowledged he is not challenging here.  Your Honor asked

20    him specifically that question.

21             Further, in the next paragraph, Your Honor, the

22    seller acknowledges, understands and agrees and hereby

23    stipulates that an order of the Bankruptcy Court may be

24    entered without further notice to seller transferring to

25    buyer -- meaning Dover Master Fund -- the claim, the claim

Page 55

1    in the amount of $55 million, Your Honor, and recognizing

2    the buyer, Dover Master Fund, as the sole owner and holder

3    of the claim.

4          Now, Your Honor, in his brief, his reply brief in

5    particular, Mr. Davis takes issue with our characterization

6    of two cases and in particular cites the Bunk Arvay (ph)

7    case -- and I apologize if I'm bumbling the pronunciation in

8    the Southern District.  He says those cases stand for the

9    proposition that under New York law one has to be specific

10   about the desire to transfer claims in tort, including fraud

11   claims.

12         Your Honor, the Abudabi (ph) case that's cited in

13   our brief does recite the rule of Fox versus Rothschild,

14   that's the New York case that I believe Mr. Davis is

15   referring to.  But right after citing that general

16   principal, goes on to say that language transferring all

17   rights, title and interest to a claim is sufficient to

18   transfer to the assignee claims that lie in tort including

19   fraud.

20         Similarly, the Bunk Arvay case that Mr. Davis

21   cites, he cites a 1994 decision of the Southern District of

22   New York in which an assignee did not establish standing

23   according to Judge Ward because the language, similar to

24   that in this evidence of transfer of claim and similar to

25   that of the Abudabi case -- it's a Southern District case in

Page 56

1    2012.  According to Judge Ward in 1994, that was not

2    sufficient to transfer claims that lie in tort.

3            However, the Second Circuit disagreed a year

4    later.  And while it did not find for the assignee on the

5    merits, it reversed the holding that Mr. Davis cited to you

6    on standing principals.

7            So, Your Honor, to circle back, while I am

8    certainly sympathetic to Mr. Davis's client and her plight,

9    indeed it is an unimaginable one for almost all of us in

10   this courtroom, as purely a matter of standing law, purely

11   on the basis of consultation to the documents and the case

12   law of this circuit and the district, I still fail to

13   understand Mr. Davis's position that his client has retained

14   something that she once had prior to GM's bankruptcy.

15           Your Honor, if I can continue for a moment.  You

16   asked some questions about timing and I'm prepared to rest

17   on our briefs on the question of timing unless Your Honor

18   would like me to address that issue.

19           THE COURT:  No.  I don't think you need to, Ms.

20   Rubin.

21           MS. RUBIN:  Okay.  Your Honor, the one thing I

22   would say here is Mr. Davis said this morning that he's not

23   saying anything about intent and, respectfully, Your Honor,

24   we would disagree.  Throughout his motion papers on this

25   motion, as well as papers he's filed in other courts it's

Page 57

1    quite evident to the GUC Trust that Mr. Davis and his

2    client's submissions are all about fraud.  You can see

3    paragraph 69 of his moving brief or even the transcript of

4    the October -- I'm sorry -- the August 18th, 2014 hearing

5    before this Court where Mr. Davis came before you and in

6    connection with the no stay pleading that he had filed told

7    the Court that he didn't want a stay so that his client

8    could pursue her fraud claim.

9              And I -- you know, from our perspective that

10   speaks for itself.  The motion that he's making here as a

11   Rule 60(b)(3) motion, the law of the Supreme Court is clear

12   that where one submits a 60 motion -- a Rule 60 motion

13   that's premised on one of the grounds for relief enumerated

14   in clauses (b)(1) through (b)(5), one can't circumvent the

15   timing dictates of Rule 60(c) by characterizing one's motion

16   as a Rule 60(b)(6) motion.  That's the -- again, the

17   Liljeberg case.  I'll spell it, L-I-L-J-E-B-E-R-G at 486

18   U.S. 847.  The pin cite is 863 and Note 11.

19             Mr. Davis says in his brief, Your Honor, and he

20   says it both, I believe, in his moving brief and again in

21   his reply that the Second Circuit has never held that a

22   60(b)(6) motion -- that's his preferred grounds for relief

23   -- it's never held that that kind of motion is untimely if

24   it's made within a year.

25             Mr. Davis is or may be technically accurate that

Page 58

1    the circuit has never so far held, but there are a number of

2    lower court opinions in this circuit that hold even if Rule

3    60(b)(6) were the appropriate grounds for relief here -- and

4    respectfully, Your Honor, it's not for the reasons set forth

5    in the GUC Trust brief -- there are a number of cases, we

6    cite four of them on page 19 of the GUC Trust's brief,

7    suggesting that where a party sits on its rights for nine

8    months, ten months, periods time under a year it's still

9    appropriate to deny Rule 60(b)(6) relief.

10           And then the final thing, Your Honor, that I would

11   say here is that Mr. Davis keeps acting as if there is a

12   demonstrated discovery misconduct here.  He keeps saying

13   that our client or GM -- and he refers to GM loosely, Your

14   Honor.  You'll note he refers to my client and Mr.

15   Steinberg's client repeatedly and collectively as General

16   Motors.  I assure you Mr. Steinberg and I would both submit

17   to the Court that we are not one in the same.  As Your Honor

18   noted, I represent creditors of old GM.  I represent people

19   who in some circumstances may not be all that differently

20   situated, at least in terms of what happened prior to the

21   bankruptcy than Ms. Phillips herself.  And I have a

22   fiduciary duty to them.

23           And as part of that duty I would like to point out

24   to the Court that in a Rule 60(b)(6) motion -- again, that's

25   Mr. Davis's avenue for preferred relief here -- this circuit

1    requires a showing of exceptional circumstances.  He has a

2    burden of proof on that.  It's not enough to make bald

3    assertions that there has been discovery misconduct.

4            Your Honor said earlier that you didn't believe

5    that either of Mr. Davis's opponents were taking issue with

6    the discovery misconduct.  And, Your Honor, I'll refer you

7    to the GUC Trust brief because the back end of our brief

8    does, in fact, discuss the exceptional circumstances --

9            THE COURT:  You're thinking I said what?

10           MS. RUBIN:  I'm sorry.  Your Honor, I understood

11   you to say that neither of Mr. Davis's opponents had said

12   anything --

13           THE COURT:  No.  What I said I -- was that I was

14   prepared to assume for the purpose of --

15           MS. RUBIN:  I see.

16           THE COURT:  -- the analysis that.  I don't think I

17   can decide a disputed issue of fact of that character on

18   today's motion.

19           MS. RUBIN:  Well, Your Honor, we would agree with

20   -- we would -- we might agree with that except to say, Your

21   Honor, that the burden of proof belongs with Mr. Davis.  And

22   Mr. Davis very conveniently for him conflates in some

23   instances facts that this Court may have found with respect

24   to the ignition switch defect, with his theory of -- his

25   client's theory of liability on the underlying accident.

Page 60

1           And what I would say is, Your Honor, Mr. Davis

2     came before the Court on August 18th of 2014 -- and, again,

3     in reference to the no stay pleading he told Your Honor that

4     it was inappropriate for his client to wait in line because

5     his client wasn't affected by the ignition switch recall.

6     He told Your Honor that the recall that he believed impacted

7     his client's husband's vehicle was the completely different

8     recall and that there was no Volucus (ph) report.  There

9     were no congressional hearings.  There was no public record

10    that would establish what --

11           THE COURT:  That's the part you quote on page 9 of

12    your brief?

13           MS. RUBIN:  That's correct.  And, Your Honor, I

14    would also refer you to that same transcript at page 83.

15    Mr. Davis continues and reiterates many of those same themes

16    on page 83 of the transcript.  The quote on page 9 of our

17    brief is from page 78 of the transcript.

18           But he told Your Honor that he needed that

19    discovery to pursue Ms. Phillips' fraud claim because it

20    wasn't clear what GM knew and when.  Well, if that's the

21    case then Mr. Davis can hardly establish the exceptional

22    circumstances needed for Rule 60(b)(6) relief because, Your

23    Honor, that test as enunciated in the Old Carco decision and

24    many others of this circuit requires three things.

25           First, it requires supporting evidence that is

Page 61

1    highly convincing.  And the Second Circuit in the Coe

2    decision cited in our brief makes clear that unsubstantiated

3    allegations are not enough for Rule 60(b) relief.  You have

4    to point to actual evidence, affidavits, documents.

5           And, respectfully, Your Honor, what Mr. Davis has

6    presented the Court with here are a series of discovery

7    requests, but with one exception:  He never shows Your Honor

8    how Motors Liquidation Company or Old GM responded to those.

9    And, in fact, the one objection and response that he does

10   provide to the Court shows that Old GM took issue with the

11   relevance of the request that he was positing.

12          So Mr. Davis can stand up here, Your Honor, and

13   say GM didn't -- Old GM didn't comply with discovery

14   requests.  MLC didn't comply with discovery requests.  But

15   he hasn't put anything before Your Honor to suggest that

16   that was a knowing failure, a willful failure; that it was,

17   in fact, any failure at all.  There could have been disputes

18   between the parties about what discovery requests were even

19   appropriate in the underlying litigation.  But Mr. Davis

20   hasn't allowed the Court to make that determination.

21          The final thing I'll say, Your Honor, is Mr. Davis

22   seems to understand now that Rule 60 is not going to be the

23   panacea (ph) for what ails his client and has submitted in

24   his reply and in argument today that instead it was a due

25   process violation.  Again, Your Honor, I fail to see how Mr.

Page 62

1    Davis has established that his client's due process rights,

2    if his client is even still a party or party in interest to

3    the settlement, were violated.  It's not clear to us how he

4    has satisfied that burden.

5           And, again, to the question of exceptional

6    circumstances and the supporting evidence, I would refer

7    Your Honor to our brief.  We also point out, as Your Honor

8    has, that there's a prong of the exceptional circumstances

9    test that deals with undue hardship to others.  For the same

10   reasons that we believe Mr. Davis's client's claim are

11   equitably moot, so, too, would reopening the settlement

12   cause an undue hardship to the existing creditors of the GUC

13   Trust.

14          I'm sure that Mr. Golden and others who stand in

15   position like his clients would take issue with the

16   characterization that they would be better off, for example,

17   if the settlement were reopened and folks like Ms. Phillips

18   were permitted to further litigate against the trust.

19          It's our position, Your Honor, as stated in our

20   brief in a footnote on pages 119 to 120 of the threshold

21   issues decision and again page 108 which makes clear that

22   the equitable mootness holding pertains to the pre-closing

23   accident plaintiffs applies equally to Ms. Phillips.

24   Indeed, Mr. Weintraub, in representing the pre-closing

25   accident plaintiffs at the threshold issues briefing

Page 63

1    represented a class of people that included Ms. Phillips.

2           And then finally, Your Honor, with respect to the

3    Spaulding v Zimmerman case, I certainly will reserve our

4    right to further make a submission to the Court on that

5    case.  I'll just say, Your Honor, even on the face of it, on

6    the basis of the very cursory review I was able to do while

7    listening to Mr. Davis's argument I'll say three things

8    about it.

9           Let's put aside its age for a second and accept

10   that it's still good law, which as Mr. Steinberg noted we

11   don't know.  There are three things about that case that

12   make it wholly and opposite here.

13          One, there's no assignment.

14          Two, there is proof in this decision that the

15   defendants knew something that the plaintiffs did not.

16   Respectfully, Your Honor, there's a mismatch in Mr. Davis's

17   theory.  Mr. Davis's client, as pointed out by both the GUC

18   Trust and New GM in their briefs, their vehicle at issue was

19   subject to one and only one recall.  Mr. Powlege was driving

20   a 2004 Chevrolet Malibu Classic.  That is not the same car

21   as the 2004 Chevrolet Malibu.  It is a continuation of the

22   2003 Chevrolet Malibu, which was then discontinued, renamed

23   as the classic.  The vehicle that from 2004 on forward

24   became the Chevrolet Malibu was a different car entirely

25   with a different model series designation.  I'll refer to

Page 64

1    the Court to Exhibits 19 and 20 to my declaration which

2    point that out,

3              There's no proof here that Old GM or MLC knew

4    something with respect to the specific requests posed to

5    them by Mr. Davis's client that it did not disclose.

6              And then third, unlike the Spaulding v Zimmerman

7    decision, the motion that Mr. Davis has made here

8    appropriately fits into Rule 60(b)(3), and I don't know what

9    the law of Minnesota is, Your Honor.  I'll confess to you

10   I'm not an expert in Minnesota law by any stretch of the

11   imagination.  But I do know enough to know that in this

12   circuit Rule 60(b)(3) has a time limit that's absolute.  It

13   does not admit of any exception.  It does not have a

14   discovery rule.  We cite cases in our brief including the

15   Second Circuit's decision in Garvin that make that

16   absolutely clear.  Spaulding versus Zimmerman, on the other

17   hand, deals with a 60(b)(6) motion.

18             And so for all three of those reasons it's not

19   clear to me why this decision, which is obviously not

20   binding precedent on this Court, even should have any

21   instructive impact.

22             And with that, Your Honor, I'll rest unless Your

23   Honor has any questions for the trust.

24             THE COURT:  No.  Thank you.

25             Mr. --

Page 65

1          MS. RUBIN:  Thank you.

2          THE COURT:  -- Steinberg.

3          MR. STEINBERG:  Your Honor, it's not often that I

4    can say this, but I'm sure I'm going to be the briefest one

5    here, and maybe it's because I'm last.

6          I did point out that with respect to the

7    settlement agreement that in the highlighted provisions that

8    Mr. Davis showed you that there were other provisions that I

9    would highlight to you.

10          Ms. Rubin went through some of the provisions of

11    the settlement agreement, but other were a couple of others

12    that I would like to be able to just point out to you.

13          One is the absence of any representations under

14    the settlement agreement at all with regard to any

15    substantive other than the parties had the authority to

16    execute the agreement.  So there is no representations that

17    someone could say was a fundamental element of the

18    settlement that someone breached, at least as far as a

19    contractual matter.

20          Ms. Rubin pointed out paragraphs 3 and referred to

21    paragraph 4.  I will note that -- and I think Your Honor in

22    its colloquy noted that the release provisions of paragraph

23    4 say they're releasing known and unknown claims.  And I

24    will call Your Honor's attention to page 5 of Mr. Davis's

25    reply brief that says that the value of the settlement

Page 66

1    agreement was completely unknown to Phillips.  He basically

2    used the same words that are in the --

3              THE COURT:  Forgive me.  What was the second thing

4    you said after known and unknown --

5              MR. STEINBERG:  On page 5 of the reply brief Mr.

6    Davis wrote the value of the settlement agreement was

7    completely unknown to Phillips.  So he actually uses the

8    word unknown which was the specific thing that was released

9    in paragraph 4.

10             Paragraph 6 of the settlement agreement says that

11   the stipulation and settlement contains the entire agreement

12   between the parties as to the subject matter hereof and

13   supersedes all prior agreements and undertakings between the

14   parties relating thereto.

15             Well, what -- while that may be boiler plate

16   language, it is important language that everybody puts in

17   the settlement agreement so that the settlement is a self-

18   contained document.

19             Paragraph 8 says that each person who executes

20   this stipulation and settlement represents that he/she is

21   duly authorized to do so on behalf of the respective parties

22   hereto and that each such party had full knowledge and has

23   consented to this stipulation and settlement.

24             So there was another provision that basically said

25   that they're voluntarily doing it with full knowledge, and

Page 67

1    then in bold at the end of the settlement agreement it says

2    that the undersigned's warrant that they have read the terms

3    of the stipulation and settlement, had the advice of counsel

4    or the opportunity to obtain such advice in connection with

5    reading, understanding and executing the agreement, and had

6    full knowledge of the terms, conditions and effects of this

7    stipulation and settlement.

8              THE COURT:  Pause, please, Mr. Steinberg.  What

9    about Mr. Davis's contention that New York Courts ignore

10   provisions of that character and let you blow away

11   settlements notwithstanding language of that character.

12             MR. STEINBERG:  I'm not familiar with that law

13   that he was referring to.

14             THE COURT:  All right.

15             MR. STEINBERG:  The other thing that I would point

16   out to Your Honor on the assignment -- and I think Ms. Rubin

17   highlighted the relevant points.  I would just point out

18   that the lead in to the assignment says that the assignment

19   is unconditional and irrevocable.

20             With regard to the settlement itself, it stands --

21   you know, I think it goes almost without saying that the

22   settlement was voluntary.  And that the one thing that Mr.

23   Davis kept on saying about what Your Honor has to consider

24   for the broader aspects of this case, the one thing that he

25   didn't say, which I think is obviously relevant and

                                                          Page 68

1    important, is that he was expounding a postulate that would

2    mean that no one would ever settle a case, meaning that I'll

3    settle now for whatever it is that I think I know and if I

4    come up with something or if there's a new fact or there's a

5    new development of the law or something else that I didn't

6    contemplate, then I'm going to ask for more.

7              And the reason why courts promote settlements is

8    for finality.  And that's what parties achieved here,

9    finality of the transaction.

10             The -- I think Your Honor was clear and correct on

11   the Enron decision not being applicable here.  I think when

12   Your Honor reads the Spaulding case you'll see that the

13   element of Spaulding that's most significant, it was a

14   settlement of a minor child and, therefore, there's a

15   different standard when new events take place that may

16   affect the minority of the child.  And I think they were

17   citing to the law that relates to the minority of children.

18   So -- and the ability to look past the settlement if a minor

19   had had settled that turned out to be inappropriate for

20   other reasons.  So we obviously don't have a minority child

21   here.

22             If Your Honor believes that further briefing is

23   necessary on this point, then we'll be happy to give it.

24   Mr. Davis himself said that the case that he was giving to

25   you, while maybe cited by a New Jersey court -- and I'm not

Page 69

1    sure for what purpose with approval -- he was clearly saying

2    that there were cases that were criticizing this case as

3    well, including a Fifth Circuit opinion.

4            THE COURT:  Ms. Powlege obviously isn't a minor,

5    but especially with the benefit of the clarification that

6    Ms. Rubin gave me, is part of the consideration that she

7    received, part of the bundle of the consideration that she

8    received in substance or at least in substance in part

9    compensation to her for the lost children or -- so I don't

10   know whether I should be looking at a recovery for a child

11   in terms of what it takes to take care of a child until the

12   child gets older or whether it's for the loss of the child.

13   I don't know exactly how to deal with that without further

14   clarification.

15           MR. STEINBERG:  Your Honor, I don't know what the

16   underlying complaint said, but the settlement was the

17   underlying complaint.  So whatever were the allegations

18   raised in Texas in 2007, that was the essence of the proof

19   of claim.  It was they filed a proof of claim that

20   referenced the litigation and slapped the complaint on in

21   the back.  What was settled was that claim.  Whatever they

22   were asserting as a basis for a recovery for $250 million,

23   that was what was settled.

24           THE COURT:  Okay.

25           MR. STEINBERG:  And there was no pointing out of

Page 70

1    anything else but that.

2           THE COURT:  I'm just confused.  If I had -- it's

3    hard to talk about such personal tragedies in such

4    antiseptic terms.

5           But if you have a child who is injured but not

6    killed in a car wreck and part of an award is for the

7    benefit of the maintenance of the child, the kid's support,

8    the kid's education, the kid's inability to earn money once

9    he or she becomes an adult, I can see that as one kind of

10   claim.  And if you're talking about the compensation to a

11   full adult for the loss of minors, that seems to me

12   potentially different.  And I don't know how to analyze this

13   Minnesota case in terms of whether it's in one category or

14   the other or both.

15          But I guess if you can respond by a supplemental

16   submission you can clarify that distinction if it applies.

17          MR. STEINBERG:  I can, Your Honor, but I think Ms.

18   Rubin has something to add on this.

19          THE COURT:  Are you okay with yielding to her for

20   a second?

21          MR. STEINBERG:  Yes, I am, Your Honor.

22          MS. RUBIN:  Your Honor, certainly I was not

23   involved in representing Motors Liquidation Company at the

24   time of these proceedings, and my understanding is Mr. Davis

25   did not represent Ms. Phillips at the time of these

Page 71

1   proceedings either.  So I'm just solely going after -- on

2   the basis of documents.

3           However, Your Honor, Ms. Phillips, then Powlege's,

4   petitions in Galveston County, Texas, in seeking damages she

5   sought damages for physical injury and mental anguish to her

6   husband and her children saying that their injury survived

7   their death through their estates, and then also sued for

8   damages to herself with respect to her own loss of

9   companionship, loss of consortium, mental anguish, and loss

10  of inheritance of assets that each of them would have earned

11  had they survived the accident.

12          I don't see any of her claims, however, Your

13  Honor, to be claims that are in respect of what the costs of

14  caring for them, for example, through their reaching the age

15  of majority would be.

16          Is that responsive to your question, Your Honor?

17          THE COURT:  Yeah.  I think it does.  Go ahead, Mr.

18  Steinberg.

19          MR. STEINBERG:  Your Honor, just one final point,

20  and Ms. Rubin will -- talked about it and it is in her brief

21  and in our brief as well, too.  The thrust of the entire

22  papers that Mr. Davis had as to what he thought went wrong

23  was a citation to a recall that didn't apply to her car.

24  And that they cited to the Chevrolet Malibu and not the

25  Chevrolet Malibu Classic.  And the recall for the Malibu was

1    for a totally different part and a totally different type of

2    problem.

3            The only recall that applied to the Malibu Classic

4    was an ignition switch issue, not a brake failure or an

5    electrical failure, and it wasn't even the same ignition

6    switch type issue that applied to the earlier recalls which

7    were the subject of the factual stipulations.

8            So when you actually parse through the litany of

9    papers that Mr. Davis has filed in this court, it has

10   inconsistent theories based an obvious mistake of fact.  And

11   the only reason why I point that out to Your Honor is I

12   think Your Honor was correct that there is no real order for

13   you to vacate because no one asked you to do anything.  But

14   under 60(b)(6) the three part test as to what the Court has

15   to look to is whether he's presented convincing evidence,

16   and he -- the issue is, is that I don't think he's presented

17   any coherent theory, but certainly not convincing evidence

18   that merits as the exceptional circumstances of --

19           THE COURT:  You said the ignition switch issue was

20   a different issue.  Is it the same ignition switch that was

21   put --

22           MR. STEINBERG:  No.

23           THE COURT:  -- in the -- the -- I think it was --

24   at the outset of the April 15th opinion I talked about the

25   models that I understood to be the subject of the main

Page 73

1      ignition switch controversy.  This is a different --

2                MR. STEINBERG:  This --

3                THE COURT:  -- ignition switch in a different car?

4                MR. STEINBERG:  Yes.  The ignition switch that

5      involved with the Malibu Classic, the recall was because of

6      -- was caused primarily because of the location of the

7      ignition switch, not because of the torque, which was the

8      underlying part of the original, and that the fix that was

9      done in the recall was a totally different fix.  It wasn't

10     the replacement of the ignition switch itself.  It was to

11     change -- it was a systems issue that changed the insertion

12     for the key, but not the replacement of the switch itself.

13                So it's a different -- different issue at all and

14     it was a different basis for the recall.

15                THE COURT:  All right.  Thank you.

16                Mr. Davis, I'll take reply, but you want to yield

17     to Mr. Weintraub for a minute.

18                MR. WEINTRAUB:  For just one minute, Your Honor.

19                THE COURT:  Come to the -- a mic that I can hear

20     you better on, please, Mr. Weintraub.

21                MR. WEINTRAUB:  Just briefly, Your Honor, I was

22     reading something else, but I thought I heard Ms. Rubin say

23     at one point that I had represented a group of which Ms.

24     Powlege --

25                THE COURT:  Mr. Davis's clients were one of your

Page 74

1    guys.

2            MR. WEINTRAUB:  Right.  And that is not the case

3    to the extent that Ms. Powlege is not claiming an ignition

4    switch defect as defined in the stipulated facts and as

5    addressed in the Court's decision.  There were no arguments

6    made and no stipulated facts with respect to anything other

7    than the ignition switch as defined in the stipulated facts.

8            THE COURT:  Would the corollary of that be and the

9    reason you got up be, other than as -- generally as an

10   officer of the court, are we not talking about res judicata

11   on Ms. Powlege?  It's just stare decisis.

12           MR. WEINTRAUB:  To the extent it is stare decisis,

13   yes, it's not res judicata and I'm not sure that anything in

14   the Court's decision addressed the due process issues with

15   respect to any presale accident claimants other than people

16   who complained of the ignition switch defect as defined in

17   the stipulated facts.

18           THE COURT:  Fair enough.  Okay.

19           MR. STEINBERG:  Your Honor, just on that point,

20   just very briefly, that is a -- an issue that may come up

21   when the judgment is presented.  I conserved all that.

22           THE COURT:  Okay.

23           MS. RUBIN:  Your Honor, to --

24           THE COURT:  Pull the mic again close to you --

25   you, please, Ms. Rubin.

Page 75

```
1              MS. RUBIN:  I'm sorry.  I'm very seldomly the most

2      soft-spoken person in the courtroom or at least soft-spoken.

3              Your Honor, just to clarify my earlier comments,

4      it's my understanding as the GUC Trust presents in its brief

5      that the vehicle that was being driven by Ms. Phillips'

6      husband, Mr. Powlege, is subject to one recall and one

7      recall only.  We have presented Your Honor with evidence as

8      exhibits to my declaration in response to -- to Ms.

9      Phillips' brief demonstrating that when you run the vehicle

10     ID number through both GM's site and the NHTSA site the only

11     vehicle recall that is pertinent to that vehicle is one, as

12     Mr. Steinberg pointed out, dealing with the ignition switch.

13             It had long been my understanding that to the

14     extent that Mr. Weintraub represents pre-closing accident

15     plaintiffs with ignition switch issues, and Ms. Powlege

16     mentions the ignition switch defect in her underlying

17     lawsuit that she seeks to pursue should her settlement be

18     vacated, that Mr. Weintraub does, in fact, represent Ms.

19     Phillips in that regard.  There can be a debate, I guess,

20     about what Ms. Phillips' claims are.  That's obviously for

21     Mr. Davis to clarify and not for me.  But it had long been

22     my understanding that to the extent that she is alleging

23     claims based on the ignition switch defect, she was, in

24     fact, represented by Mr. Weintraub in the threshold issues

25     briefing and hearing.
```

Page 76

1           Thank you, Your Honor.

2           MR. WEINTRAUB:  Your Honor, I need to respond to

3    that.  I'm sorry.

4           THE COURT:  I could let you and ultimately, if you

5    push me I will let you, Mr. Weintraub.

6           But doesn't this ultimately involve the extent, if

7    any, to which there is a res judicata claim or for that

8    matter a stare decisis claim with respect to an issue that

9    hasn't been put before me, which is whether she's the victim

10   of an ignition switch problem and of the old type, if I can

11   call it that, and isn't today's show all about standing and

12   60(b) relief?

13          MR. WEINTRAUB:  That's correct, Your Honor.  And I

14   was not the one that wandered into this area during oral

15   argument, but I happen to be sitting here and since I was

16   the attorney referred to by name I need to respond.

17          THE COURT:  Let me ask everybody in the room, can

18   I skim the snatches (ph) by giving you guys reservations of

19   rights on an issue that may or may not come up down the

20   road?

21          MR. WEINTRAUB:  That's fine, Your Honor.

22          THE COURT:  How about for you, Mr. Steinberg?

23          MR. STEINBERG:  That would be fine.

24          THE COURT:  Or for you, Ms. Rubin?

25          MS. RUBIN:  Yes, Your Honor.  Thank you.

Page 77

1            THE COURT:  Okay.  Let's get back to your reply,

2       Mr. Davis.

3            MR. DAVIS:  Thank you, Your Honor.

4            With regard -- I'm going to try to work backwards.

5            Concerning the ignition switch, the control module

6       and the cruise control defects a couple of things.

7            Number one, counsel's incorrect.  It was discussed

8       in the underlying litigation in multiple depositions, which

9       I have but have not provided to the Court because of the

10      stay discussion we had in August of last year in which no

11      discovery was to be done.  So I'm happy to supplement with

12      those depositions from experts, both GM and plaintiff's

13      expert concerning the underlying vehicle, the Malibu, the

14      Malibu Classic, and whether it had a control module

15      applicable or similar to the one that is the subject of

16      multiple recalls or not.

17           The same with the cruise control.  In fact, it

18      did.  It is generally true and it was understood at the time

19      that it was generally true that the 2003 Malibu became the

20      Classic.  This particular Classic did have these control

21      modules as opposed to a drive by wire system, something I

22      didn't know until I actually got documents from former

23      counsel of Ms. Powlege.  So contrary to counsel's

24      representations, I am happy to provide that deposition in

25      which the control module was discussed, certainly the cruise

Page 78

1    control.

2            But setting that aside; that is, what is the

3    underlying vehicle, product defect cases of this kind are

4    circumstantial.  The fact that there were defects that

5    result in occurrences of the kind that the Powlege vehicle

6    we know produced, i.e. no brake lights, uncontrolled speed,

7    an inability to brake, if you're going to assume that the --

8    that the driver did not intend to crash the vehicle, then we

9    would draw from all of the documents related to similar

10   makes and models and what those documents and recalls say

11   about the potential for those recalls and the known defects

12   to have been applicable to the subject vehicle in this

13   particular crash on this particular day.

14           I didn't want to get into the discussion of the

15   underlying wreck simply because we're not there yet.  I'm

16   just saying she should have gotten these documents.  And

17   it's very difficult to appreciate counsel's argument that --

18           THE COURT:  Well, pause, please because Ms. Rubin,

19   as I understood her argument, especially when she flushed it

20   out orally, was arguing something a little different.

21           If -- she corrected me on my original statement --

22   nicely corrected me, but corrected me that I said I was

23   prepared to assume there was a discovery violation.  She has

24   raised the issue, not so fast, Judge.  Don't necessarily

25   assume that.

Page 79

1           It may be that whether or not I assume it I have

2    to assume that there's at least an issue of fact on whether

3    there was a discovery violation or not.  But she's saying

4    something different.  She's saying that in order to get

5    60(b)(6) relief, or for that matter 60(b)(3) relief, you

6    have to at least put something on the table that suggests

7    that there was a fraud, and she's accusing you -- accusing

8    you also nicely, but saying that you failed to put forward

9    any facts from which the inference of fraud could be

10   inferred and admittedly asking for discovery as to whether

11   or not there was a fraud is insufficient.

12          And I would like you to respond to that aspect of

13   her argument on two levels:  One, whether she's right on the

14   law and, two, whether, assuming she's right on the law, that

15   you have shown facts from which I could draw an inference of

16   fraud on your vehicle as contrasted to anything that might

17   be found with respect to vehicles subject to the April 15th

18   decision.

19          MR. DAVIS:  Sure.  First, and it's quick, she's

20   correct on the law.  Okay.

21          Number two, while being right on the law she's

22   incorrect in terms of how she characterizes the documents in

23   -- and this is, Your Honor, respectfully, why I was saying

24   at the time in August I wanted to be able to conduct some

25   discovery was to help me make this motion or certainly make

Page 80

1    this issue easier.

2              But even if we only look to the report that we

3    have and the documents that are now publicly available, we

4    know that there were -- and we in the motion certainly go

5    through all of the instances in which GM, well prior to

6    August 2010, certainly well prior to June 2009, was aware of

7    a number of product defects for cars similar to or have

8    certain components that are identical with this subject

9    vehicle, and that those documents existed for many years

10   preceding June 9th, 2013 -- excuse me -- 2009, and that had

11   been sought through the specific discovery requests that we

12   made.

13             And, you know, Counsel references the objections

14   that were offered by GM at the time, Old GM at the time.

15   Without addressing those particular objections or the merits

16   of those objections, I would just respectfully offer to the

17   Court that if a plaintiff is making a product defect claim

18   in which they are assessing -- they are arguing that the car

19   was uncontrolled in terms of speed and they seek documents

20   related to cruise control, that it couldn't brake, and they

21   seek documents related to braking and they then seek

22   documents related to the ignition switch, for those -- for

23   that particular model vehicle and those within its class,

24   and the documents that we know about are not then produced

25   by GM at the time, but then rather than producing those

Page 81

1    documents GM takes the affirmative defense that the driver

2    committed murder/suicide, I would just respectfully say that

3    that is pretty extreme.

4             And, of course, so -- and she's not wrong on the

5    law, but I'm saying that with our particular facts we've

6    demonstrated requests that were really made, and we provided

7    all of those requests for the Court.  Certainly, litigants

8    make objections.  But there's still an affirmative duty to

9    produce responsive documents, setting aside your objections,

10   so long as those documents are relevant and discoverable.

11            We know that documents were relevant and

12   discoverable.  We know, despite counsel's representation

13   about and the, you know, VIN number, all of that was

14   discussed and I'm happy to provide the Court with those

15   depositions and those expert reports if it's going to

16   ameliorate any concern the Court has about the specifics of

17   the discovery request being applicable to this subject

18   vehicle.

19            THE COURT:  You know, I'm thinking that might be

20   useful, Mr. Davis, because if you and she agree on the law,

21   then either under those cases or in addition Bell Atlantic

22   and Ashcroft, the question that arises to a judge is do I

23   have a showing of evidentiary facts from which I can get

24   into the satisfaction of that requirement.

25            If you can show me that either by stuff that

Page 82

1    you've already pleaded or stuff that you could plead in

2    reliance on the depositions, and after your opponent has had

3    chance to respond to that, that would help me in doing my

4    job.

5            MR. DAVIS:  I will absolutely do that, Your Honor.

6            THE COURT:  It goes without saying that your

7    opponents would have to have the opportunity to reply --

8            MR. DAVIS:  Absolutely.

9            THE COURT:  -- or respond.  I don't think I need a

10   three-way back and forth.  But I would -- I think that would

11   help me because if I heard her right you haven't yet shown

12   that.  And if I heard you right, you disagree with her.

13           MR. DAVIS:  Well, I would say that our pleadings

14   are sufficient in terms of the allegations.  And she

15   references some transcript testimony.  I -- I don't know

16   yet, because I haven't gotten to get real discovery done,

17   what we --

18           THE COURT:  The --

19           MR. DAVIS:  Right.

20           THE COURT:  But the problem is that there is a

21   zillion cases in the Rule 8 and Rule 9 area that say you

22   can't put out a complaint and say I hope to later prove it

23   by discovery.

24           MR. DAVIS:  No.

25           THE COURT:  You've got to have shown something

Page 83

1    from the get go.

2            MR. DAVIS:  I -- I absolutely agree with you, Your

3    Honor.  But given that this is a product defect case -- if

4    we're talking about the underlying case it's a product

5    defect case based on negligence.  Rule 9 doesn't apply, not

6    that -- the underlying case is not a fraud case.  The

7    underlying case is a negligence case based on a product

8    defect.  So the -- those particular rules are not going to

9    be applicable to being -- to saying I was prejudiced in

10   presenting my product defect negligence claim because I

11   didn't get documents that if I had them would have allowed

12   me to prove my claim and disprove your affirmative defense.

13           THE COURT:  I hope you didn't misunderstand me.

14   You're asking for relief from a settlement agreement based

15   on an allegation of fraud.  And what I need from you is --

16           MR. DAVIS:  I understand.

17           THE COURT:  -- what you have alleged to give me a

18   foundation upon which I can find --

19           MR. DAVIS:  Okay.

20           THE COURT:  -- the existence of a fraud.

21           MR. DAVIS:  I'm sorry.  I did -- I did

22   misunderstand, but now I understand.  Thank you, Your Honor.

23           THE COURT:  Okay.

24           MR. DAVIS:  And then working back from New GM's

25   arguments regarding the Second Circuit's, I just want to

1    provide the Court the actual cites that we do cite into in

2    our reply brief.

3            First is the Playboy Enterprises case from 2004.

4    It's 2004 Westlaw 626807 and the page cite is at page 4.

5            THE COURT:  What was the page cite on that 2004

6    Westlaw?

7            MR. DAVIS:  Page 4.  And that case cites to a much

8    dated case, but the case is directly on point and is citing

9    to this case approvingly.  And that case is the Seneca Wire

10   and Manufacturing Company v AB Letch (ph) case, 247 N.Y. 1

11   and it's page cite 7 through 8.

12           THE COURT:  What -- I practiced law in New York

13   long enough to know that if it's a 247 New York it may have

14   -- might be long in the -- what year is it?

15           MR. DAVIS:  It's 1928, Your Honor, and I

16   respectfully call it mature precedent.  I had the

17   unfortunate occasion where I called precedent old and the

18   judge --

19           THE COURT:  Not if it's from the --

20           MR. DAVIS:  -- in that particular case was born in

21   the same year so --

22           THE COURT:  -- New York Court of Appeals.  If it's

23   not overruled I'll recognize it that it's still --

24           MR. DAVIS:  Well --

25           THE COURT:  -- rule authority.  I just wanted to

Page 85

1    get some better context.

2              MR. DAVIS:  So the quote from Playboy Enterprises,

3    which is a 2004 case, is -- and it was affirmed, by the way,

4    by the Second Circuit and that affirmance is 135 Fed. Appx.

5    479.

6              UNIDENTIFIED SPEAKER:  Summary opinion.

7              MR. DAVIS:  Correct.  Parties -- "A party's

8    manifest" -- and this is quoting from the second restatement

9    of contracts -- "A party's manifestation of ascent -- when a

10   party's manifestation of ascent is induced by either a

11   fraudulent or a material misrepresentation by the other

12   party upon which the recipient is justified in relying, the

13   contract is voidable by that recipient."

14             And that's just exactly what we're saying in the

15   lead up to the settlement agreement; that there was a

16   misrepresentation.  And then with regard to it -- it just

17   needs to be a misrepresentation as opposed to --

18             THE COURT:  Well, pause, please, Mr. Davis.

19             You learn that in the first year of contracts or

20   torts or both.  But the question that's the more

21   sophisticated and difficult one for a guy like me is whether

22   that generalized principal applies when you have disclaimed

23   reliance, when you have said in baby talk that you're giving

24   away claims known and unknown, and whether you have stated

25   at least once, perhaps twice in the agreement, that you know

1       everything you need to know to enter into the agreement.

2               I would find it more helpful if you called my

3       attention to cases that apply the restatement in a more

4       generalized principal that you articulated to me to

5       situations of the latter category where you have two or

6       three or four of those disclaimers.

7               MR. DAVIS:  Sure.  That case is -- well, here's

8       one, Congregation -- and I'm going to really mispronounce

9       this name so I'm just going to spell it, M-I-S-C-H-K-N-O-I-S

10      Leviere Yackoff (ph), Inc. v Board of Trustees, and it's 301

11      Fed Appx. 14 at page 6, and that's a Second Circuit opinion

12      from 2008.  And the quote is simply, "To be sure so ordered

13      settlements have been held to be void on a Rule 60(b)(4)

14      motion where the settlement under the -- in the underlying

15      proceedings were fraught with serious irregularities which

16      indeed amount to a violation of the due process rights of

17      one of the parties.

18              That is that case, Your Honor.  And in -- and that

19      quote I think effectively summarizes our position, which is

20      the underlying proceedings were fraught with irregularities.

21      We can only discover and have good litigation if the party

22      we are engaged in with discovery is adhering to the rules,

23      and we are saying the documents we were seeking were not

24      produced.  Certainly, it follows a pattern that was in

25      existence prior to 2014.  And we should have had those

Page 87

1    documents in order to value the case before it was settled.

2    And that cite that I provided the Court and is in our reply

3    brief says that when -- when you do not have that, you can

4    void the settlement agreement.

5            With regard to the timeline and timeliness, I

6    don't want to get into a discussion of the -- certainly

7    there's allegations of fraud, but for purposes of this

8    motion we are just offering in the alternative that we are

9    saying documents were not produced that should have been.

10           The original filing that begat all of the filings

11   that came after was actually a petition for a bill of review

12   filed in Texas State Court.  So counsel's argument about

13   sitting on this --

14           THE COURT:  Forgive me.  I'm not that familiar

15   with Texas civil procedure.  What's a bill of review?

16           MR. DAVIS:  It's a -- it's an equitable bill of

17   review.  We still have them.  Rule 60(b) was designed to

18   replace bills of review.  In Texas we still have just a bill

19   of review.  But it is essentially seeking the same relief to

20   undo a judgment order or settlement because of usually new

21   -- newly discovered evidence or something, fraud, something

22   to that effect.

23           But the original petition and bill of review in

24   State Court was filed very shortly after New GM began to

25   make its disclosures regarding the recalls.  And so

Page 88

1    counsel's suggestion that somehow we sat on our 60(b) motion

2    for nine or ten months and there are cases that say even

3    under 60(b)(6) that that's -- that's not okay, from the get

4    go both New GM and the trust were aware that Phillips was

5    seeking to undo the settlement agreement.  And her petition

6    certainly identified that and sought that -- and sought that

7    legal relief.

8         Also on timeliness, I will point out the In re:

9    Lawrence decision from 2001, a Second Circuit opinion.  That

10   case is very -- it's very good for our position.  The

11   plaintiffs in that case originally sought 60(b)(3) relief

12   and got it.  Then some years later, and I think based on the

13   timeline of the opinion it looks like over two, maybe three

14   years later, we brought a new affirmative action concerning

15   that prior settlement and the 60(b) relief.

16        The Second Circuit in In re: Lawrence completely

17   -- did not even address the gap in time that was apparent

18   from the recitation of the facts when it converted their

19   petition to a 60(b) motion and clearly found for the

20   plaintiffs based on fraud.

21        Now it is an opinion that -- I'm very aware of the

22   opinions in the Second Circuit that creates an absolute bar

23   after one year.  But In re: Lawrence does not do that.  It

24   did find in that particular case sufficient circumstances to

25   not apply that -- or to not take issue with that timeliness

Page 89

1    argument.

2              I will just say that 60(b) as a procedural rule is

3    procedural.  It's not substantive.  But the rule was

4    designed to replace equitable bills of review and certainly

5    the equity arguments of this motion are what we rely upon.

6    There are a million ways in which the Court could find in

7    favor of the trust, in favor of New GM regarding plaintiff's

8    motions legally.

9              But there are very real ways and real authority

10   the Court has to find for Phillips and Powlege based on the

11   facts that we're presenting here, based on the authority you

12   have as an equitable court under 105, based on the equitable

13   remedy that we just seek under 60(b), based on the Court's

14   inherent ability to remedy what -- what was been a due

15   process violation that prejudiced Powlege's ability to

16   assess her claim.

17             And, Your Honor, I'm almost done.  I -- one of the

18   undercurrents of the argument that the loan -- Loanacre

19   assignment argument creates is that somehow Loanacre would,

20   in being assigned the lawsuit, somehow have the ability to

21   step into Phillips' shoes today to try to undo the

22   settlement based on our arguments, and that's illegal.  You

23   can't do that.

24             So we can't read the assignment as doing that

25   because that would be, you know, a -- a person cannot sell

Page 90

1    in New York and in Texas you cannot sell your right to a

2    tort or a claim of fraud to another or have them finance

3    that case and have them obtain a -- obtain the benefit from

4    that lawsuit.  And there are obvious public policy reasons

5    for that, but that sort of assignment argument does get into

6    that and -- and that's illegal.

7         So I would respectfully suggest that perhaps if

8    the Court's going to rule against Phillips, that may not be

9    the effective -- effective way to go because it's illegal.

10   You can't do that.

11        And then I heard counsel say she gave away what

12   she had.  The whole argument is about what she didn't know

13   she had.  And there is -- there was no way for her to know

14   because -- and you saw this in some of the documents that

15   are part of the record.  GM was making the case that there

16   are absolutely zero recalls applicable to this car, any

17   other car like it that could have created the defects that

18   she's complaining of.

19        Well, they couldn't make -- they could make those

20   statements in 2010, but they simply cannot make those

21   statements today.  As much as they might not be aware of the

22   particular make up of the -- of this -- of this subject

23   vehicle, I think everyone can agree that there were --

24   there's been plenty of recalls for Malibu's that resulted in

25   defects of the nature that Powlege's petition complained of,

Page 91

1    certainly of even other cars, the Pontiac's G6 for example,

2    other vehicles within the class that Powlege was seeking

3    discovery of.   We didn't get those documents.   So how can

4    she know what she's -- what she has and what's she settling

5    if she does not have those documents.

6         And I'm -- I'm almost done, Your Honor.   I -- if

7    the Court -- and I know that the Court asked what relief

8    would we actually be seeking, what could you do.   I'm

9    actually going to defer to Mr. Weintraub because I think he

10   could probably explain with a better specificity than I can

11   what the Court could actually do in order to provide

12   Phillips with relief.

13        THE COURT:   Well, I probably know as well as Mr.

14   Weintraub what I can do.   I -- you can help me in telling me

15   what you want me to do.

16        MR. DAVIS:   Okay.   To void the settlement

17   agreement and if that means that Phillips is ordered to

18   compensate the trust for some amount equivalent to the

19   figure that she resolved her claim for in the settlement

20   agreement, of course, and, I mean, I would hope that we

21   could get some time to --

22        THE COURT:   Are you tendering back a payment on

23   behalf of a person who I'm sure is not one of the one

24   percent in this country of over a million bucks?

25        MR. DAVIS:   No, Your Honor.   I -- without getting

Page 92

1    into how that payment might be made, I can appreciate that

2    the Court, in voiding the settlement agreement, would want

3    to -- or you could say that in the likelihood that there's

4    some subsequent or future settlement or judgment in the

5    future, it would be treated as a credit and if there's not,

6    at that point it would need to be paid.  I don't know.

7            But that the settlement agreement would be void;

8    that Phillips could have her adversarial proceeding, be able

9    to conduct discovery.  And I would point out in the

10   practicalities of this, Your Honor, that the trust and/or

11   New GM, whatever entity is going to be required to pay some

12   amount of money in the future, the cap on their exposure is

13   35 million.  After 35 million there is coverage, insurance,

14   that the claim would be subject to that would provide a

15   backstop with respect to what impact is this particular

16   claim going to have on other claimants and all of that.

17           There is a backstop so that it -- in the event

18   that it's above 35 million, that is the most that any GM --

19   that the GM trust would be exposed to or any other party

20   would be exposed to because of that umbrella policy of

21   insurance.

22           But that's really it, Your Honor, that we would be

23   able to avoid that settlement agreement and -- and get an

24   opportunity to litigate her case fairly, get documents and

25   present evidence.  And if nothing else -- and if nothing

Page 93

```
 1    else comes of this to put an end once and for all to the

 2    idea that the wreck could have been anything other than the

 3    car malfunctioning, like Mr. Powlege killing his children.

 4             And I -- I emphasize that only because I know that

 5    that is my client's supreme personal interest; that she be

 6    given the opportunity to demonstrate legally that that --

 7    that affirmative defense is not correct; that there are

 8    documents to demonstrate he didn't do it on purpose; and

 9    that it was a product defect.  And, certainly, that doesn't

10    involve any money.

11             But that's what we would like from the 60(b).

12             THE COURT:  All right.  Does that complete your

13    argument?  I do have one question.  Have a seat for a

14    second, Mr. Weintraub.

15             Does that complete your argument, Mr. Davis?

16             MR. DAVIS:  Yes, Your Honor.

17             THE COURT:  I do have one question.  Relevant to

18    something I said before, we're -- I'm not sure whether or

19    not I was too accommodating too quickly.

20             If you had deposition testimony that you thought

21    could support the requirement under 60(b) doctrine that you

22    present court -- facts to a court indicating the presence of

23    flawed and you didn't already rely on them in the papers you

24    submitted to me, what is the basis upon which I should take

25    them now?  You've given your opponents a moving target.
```

Page 94

1          MR. DAVIS:  Well, I -- respectfully, Your Honor,

2     having been here for the two days worth of argument in

3     February and certainly having appreciated the Court's April

4     15th order, the Court laid out what is a fair assumption;

5     that documents were withheld for many years by many people.

6          THE COURT:  That was with respect to something

7     where there was a stipulation entered into by very capable

8     lawyers as to what 24 people knew with respect to a

9     different defect.

10          Now --

11          MR. DAVIS:  I did not --

12          THE COURT:  -- but to what extent do you have

13     stipulations from your opponents vis-à-vis the failure that

14     you're basing your claim for relief on?

15          MR. DAVIS:  Frankly, Your Honor, our pleading and

16     certainly our motion, we are asserting what is accurate

17     which is that the control module, the cruise control and the

18     particular ignition switch already referenced, that all of

19     those things were present in the vehicle.  I, in their

20     response, appreciate that they're disputing that now.  But

21     there is -- appreciating there was not going to be any

22     discovery based on the prior, you know, discussion in August

23     of 2014, I -- this is not an evidentiary hearing.  If the

24     Court would like this evidence --

25          THE COURT:  Of course it's not an evidentiary

1     hearing, but the way evidentiary hearings work in the

2     federal courts on contested matters subject to Rule 9014 as

3     an adversary proceedings that go by the federal rules, and

4     specifically Rules 8 and 9, is that you get to an

5     evidentiary hearing if and only if there are material issues

6     of fact and the Court takes allegations as true only if they

7     comply with the obligation to put forth some factual

8     allegations of underlying evidentiary facts from which a

9     Court can make a non-conclusory finding.  We learned this --

10    well, we didn't learn it in our first years of law school,

11    but this was long after I went to law school.  But it's

12    pretty (indiscernible) or am I missing something?

13              MR. DAVIS:  Your Honor, I -- our motion lays out

14    -- I believe that the motion lays out the contentions for

15    the plaintiffs concerning the subject vehicle.  I -- when

16    the Court brings up Rule 9, for example, the Court presumes

17    the facts to be true in the plaintiff's complaint.  Rule --

18              THE COURT:  The non-conclusory allegations.  It

19    takes evidentiary facts to be true.  This is Ashcroft.  It

20    says it in baby talk.

21              MR. DAVIS:   I appreciate that, Your Honor.  I

22    just -- to the -- well, I didn't know that -- I am happy to

23    provide the documents I previously referenced to demonstrate

24    that I am being correct, that I am correct when I make a

25    representation about the subject vehicle having a control

Page 96

1    module.

2              So I would hope as an officer of the court that

3    these statements that are based in fact are taken for what

4    they are.  I truly didn't know that -- I was -- I did not

5    see this as a motion designed to argue the underlying case,

6    just about whether or not she should get another shot

7    because of the settlement agreement being obtained --

8              THE COURT:  Whether you're not entitled to Rule

9    60(b) relief based on fraud, either upon an appointment or

10   (indiscernible).

11             MR. DAVIS:  But the fraud that we're complaining

12   of is the litigation and not getting documents in the

13   litigation.

14             THE COURT:  Yeah.  I understand that.

15             MR. DAVIS:  Right.  And so again, I -- it seems

16   that -- I'm trying to appreciate the Court's discussion

17   about the underlying lawsuit and the subject vehicle from

18   that lawsuit impacting the question of whether or not the

19   discovery requests that had been provided to the Court were

20   not responded to appropriately as they should have been in

21   order for Phillips to value her claim prior to settlement.

22             THE COURT:  Okay.  Mr. Weintraub, did you have

23   something you wanted to add briefly?

24             MR. WEINTRAUB:  Yes, Your Honor.  I only wanted to

25   make the point that I think Mr. Davis was deferring to me

Page 97

1    on.  The Court had asked whether or not there -- there's an

2    order of judgment that would be the subject of the Rule

3    60(b) motion and we think that there is.  There's an

4    overarching order in the case with respect to settlements.

5    That order was activated or implemented with respect to

6    Powlege at the point in time that she entered into the

7    settlement agreement, and that settlement agreement was

8    entered into pursuant to authority granted by that order.

9              THE COURT:  Well, you're surely -- you're not

10   telling me that I should (indiscernible) the authority?

11             MR. WEINTRAUB:  Yes, I am, Your Honor.  I think --

12             THE COURT:  It did say that New GM doesn't have

13   authority to enter into settlements?

14             MR. WEINTRAUB:  It doesn't have authority to enter

15   into this settlement agreement because this settlement

16   agreement was based upon --

17             THE COURT:  I said New GM.  I meant Old GM.

18             MR. WEINTRAUB:  I'm sorry, Your Honor.  I heard

19   some commentary --

20             THE COURT:  Well, I should have -- maybe I should

21   have said the GUC Trust.  But you're saying that I should

22   deny Old GM's authority or the GUC Trust's authority to

23   enter into settlements or I should deny it the authority to

24   enter into settlements only with respect to Ms. Powlege?

25             MR. WEINTRAUB:  Neither, Your Honor.  What I'm

Page 98

1    saying is that authority should be revoked upon the showings

2    made that there was fraud in connection with the entry into

3    this settlement.

4              THE COURT:  Revoked with respect to who and what?

5              MR. WEINTRAUB:  With respect to the authority --

6    revoke the authority of General Motors to enter into this

7    settlement because this settlement was based upon either

8    intentional or negligent fraud.

9              THE COURT:  All right.  Thank you.

10             Given all the new stuff I will allow very brief, I

11   guess it's reply or surreply or whatever we're up to.

12             MS. RUBIN:  Thank you so much.

13             Your Honor, there's been a lot of discussion

14   between -- well, it's no longer this morning.  I guess this

15   afternoon between you and Mr. Davis about the requirements

16   of Rule 8 and Rule 9.  And I want to take a step back

17   because I'm not sure that that's the applicable standard

18   that applies to a Rule 60 motion.

19             Mr. Davis has not interposed an adversary

20   proceeding or a complaint.  That's not what's at issue here.

21   It's a Rule 60 motion.  And, Your Honor, I want to refer you

22   to the Second Circuit's decision in Coe versus RJM, LLC.

23   The citation is 372 Fed. Appx. 188.

24             THE COURT:  Another summary opinion?

25             MS. RUBIN:  It is a summary order, Your Honor, of

Page 99

1    the Second Circuit in 2010.  And I mentioned Coe earlier as

2    the basis for my statement that Rule 60(b) motions, in

3    addition to meeting the test that I enunciated earlier, that

4    Coe puts the meat on that bones and says that it can't be

5    unsubstantiated allegations.

6            Let me tell you a little bit more about the Coe

7    case, Your Honor, if I might.

8            The Coe case is a Rule 60 motion that was made to

9    the Bankruptcy Court originally as the basis for a motion

10   for reconsideration of a denial of a motion to lift the

11   automatic stay.  And the Court didn't say there that Rule 60

12   motions are governed by Rule 8 or Rule 9 or the plausibility

13   standard in Ashcroft.

14           Rather, the Court is saying the following, Your

15   Honor.  In reviewing the denial of the motion for

16   reconsideration under Rule 60, the Second Circuit says as

17   follows:  "As the Bankruptcy Court properly determined,

18   appellant made only substantiated allegations that she did

19   not receive the appellee's objections to her claim."  And he

20   goes on to say "her allegations are unsupported by any

21   affidavits or other evidence.  Appellant, therefore, failed

22   to meet her burden under Rule 60(b)."

23           THE COURT:  Pause, then.  You're saying, then,

24   that not even plausible allegations are enough, but you have

25   to come forward with some evidentiary showing either by

Page 100

1    affidavit or documentary evidence --

2              MS. RUBIN:  Yes, I am, Your Honor.

3              THE COURT:  -- or something of that character?

4              MS. RUBIN:  Yes, I am, Your Honor.  And certainly

5    Mr. Davis or Mr. Weintraub hasn't cited any cases to the

6    contrary holding that Rule 60(b) motions are subject to the

7    lesser standard of pleading on Rule 8 and Rule 9.

8              So, Your Honor, I believe that the time for Mr.

9    Davis to have come forward with evidence was in his moving

10   brief.  He didn't do that in his moving brief.  He didn't do

11   that in his reply.  He didn't do that when he came before

12   the Court with a no stay pleading or in his corresponding

13   oral presentation to Your Honor on August 18th.  He didn't

14   do that in the complaint that was filed originally in Texas

15   Court and then was removed to Federal Court.

16             Your Honor, there are -- there's a mismatch here

17   between what Mr. Davis is saying.  So his allegations in his

18   complaint are as follows:

19             One, here are all the things that my client asked

20   for in discovery requests in the underlying litigation and,

21   two, here are all the things that I think we now know

22   General Motors knew at the time.  But there's a fundamental

23   mismatch between those two things and what actually might be

24   missing.

25             And, you know, as someone here quipped this

Page 101

```
 1    morning to me, Mr. Davis doesn't connect the dots for his

 2    client, for the Court, and certainly not for my client or

 3    Mr. Steinberg.  You were right to observe this is a

 4    constantly moving target.  He doesn't say this is the

 5    document that was missing.  This is the document that was

 6    withheld.  Let me identify for the Court what I know today

 7    that General Motors had in hand prior to my client's

 8    settlement with Motors Liquidation Company in August 2010.

 9            Instead he just says, here are the things we asked

10    for.  Here are the things we now think GM knew and it's not

11    clear that the things GM is now perceived to know -- which,

12    by the way, are documented by citations to plaintiff's pre-

13    sale consolidated complaint, for example.  It's not even by

14    reference to hard evidence in terms of what GM knows.  It's

15    a series of -- a litany of media articles, paragraphs and

16    pre-sale consolidated complaint.

17            But the two things never come together.  He

18    doesn't identify, much less provide the Court with the

19    documents or information that he alleges was withheld from

20    his client.  Instead, he uses the venire of the ignition

21    switch defect and what the public and the Court now

22    understand was withheld to say there was some sort of

23    discovery misconduct.  And that, Your Honor, I would submit

24    to you is not enough to satisfy his client's burden on a

25    Rule 60 motion.
```

Page 102

1           I would encourage Your Honor, for example, to look

2    at paragraph 31 of his moving brief, which I think is a good

3    illustration of this.  Okay.  The car that Mr. Davis's

4    client's husband was driving is as we've discussed already a

5    2004 Chevrolet Malibu Classic.  In paragraph 31 of the

6    moving brief he says, when did GM know about this

7    potentially fatal flaw concerning the wiring harness.  He

8    says, as shown GM knew these facts in 2008-2009 during the

9    height of the 2007 litigation.  The citation is to a USA

10   Today article.

11          He then continues, citing that article, the

12   documents show that in 2009 GM recalled about 8,000 Pontiacs

13   from the 2005 and 2006 model years because the brake lights

14   might not work when the driver stepped on the brake pedal.

15   The company did not recall later model G6's or the Chevrolet

16   Malibu or Saturn Aura until three weeks ago.  The cars are

17   nearly identical.

18          He goes on from there to make the assumption that

19   the cars that are recalled as discussed in this USA Today

20   article are, in fact, identical to the car that his client

21   was driving.  But there's no proof of that, Your Honor.

22   There's no submission of that.

23          And certainly, as Your Honor pointed out, to the

24   extent that the deposition transcripts that he was

25   referencing earlier would have provided that proof, they

Page 103

1   haven't been provided to the Court.  They haven't been

2   provided to our client.  I don't know as I sit here today

3   whether or not these 2005 and 2006 model year Pontiac G6's,

4   there's any resemblance whatsoever to the 2004 Chevrolet

5   Malibu Classic that is, in fact, at issue.

6           And so I hate to run too far afield on the merits

7   of this case because, Your Honor, as I submitted to you

8   before and Mr. Steinberg did amply as well, this case should

9   be decided on standing alone.  The settlement agreement and

10  the transfer together I would submit establish that the

11  relief that Mr. Davis is asking for from this Court is

12  inappropriate at this juncture as sympathetic and tragic as

13  his client's circumstances are.

14          But even if we were to overcome the standing

15  threshold, Your Honor, even if we were to overcome the

16  timing issues that are discussed in much greater detail in

17  our brief and in New GM's brief, the law that's applicable

18  here is Rule 60.  And even if Mr. Davis is entitled to

19  proceed under Rule 60(b)(6), which we would submit he is

20  not.  This is a 60(b)(3) motion.  Even if that's the

21  applicable rule, he hasn't met his client's burden of proof

22  and he doesn't get to come into this court and make bald

23  unsubstantiated allegations based on an inflamed public

24  record and say that he gets a do over with the GUC Trust,

25  particularly when, Your Honor, the question of whether he's

Page 104

1    an ignition switch plaintiff or not seems to be an open one.

2              I'll just -- I'll submit to Your Honor that

3    Exhibit 10 to my declaration and response is the complaint

4    that Mr. Davis filed in Texas Court.  And in that complaint

5    he identifies the ignition switch defect as one of the

6    things that he believes led to or possibly led to the

7    accident that killed Ms. Phillips' husband and four

8    children.

9              If Mr. Davis is, in fact, a pre-closing accident

10   plaintiff with ignition switch defect related claims, then

11   he is not only represented by Mr. Weintraub, which as I

12   understand in dispute, but he's also subject to Your Honor's

13   threshold issues decision and he's subject to the equitable

14   mootness holding there.  And maybe that's the end of the --

15   a separate end of the story.  We would encourage Your Honor

16   to look at page 10 -- Exhibit 10 to my declaration at page

17   4.

18             And then the final thing I want to say, and I've

19   let this go unanswered a number of times.  It's an

20   inflammatory accusation, the question of what MLC and Old GM

21   said in litigating the claim.  Certainly, Your Honor, I

22   wasn't there at the time.  My firm was not there at the

23   time.  But I'll just submit to Your Honor Exhibit 11, I

24   believe, to New GM's brief, is the mediation submission of

25   Motors Liquidation Company with Ms. Phillips.  And -- I'm

Page 105

1    sorry.  It's Exhibit 4, I believe.  And on page 11 there's a

2    footnote there where Motors Liquidation Company clarifies

3    that it's not proceeding on a theory of murder/suicide.

4              And so to the extent that that continues to be

5    made a part of the record today, I certainly wanted to

6    clarify for the record that it's not my understanding that

7    at the end of the day the mediation was --

8              THE COURT:  And you're saying that --

9              MS. RUBIN:  -- an allegation.

10              THE COURT:  -- that mediation statement -- you're

11    not saying, but you would say the mediation statement isn't

12    hearsay because it's a statement independently -- simply of

13    its position and it's not asserted for the truth on this

14    event?

15              MS. RUBIN:  That's correct, Your Honor.  Again,

16    you know, I haven't -- not thinking through the panaplea of

17    evidentiary issues that might arise here, Your Honor, I just

18    simply wanted to correct the record in terms of the

19    submissions that were made.

20              THE COURT:  You're saying that when somebody says

21    something to a court as to somebody else and it has

22    independent significance it doesn't matter whether it's true

23    or not.  They said they were not relying on it.

24              MS. RUBIN:  They said to the mediator that to the

25    extent that there were previous -- to the extent there were

Page 106

1    previous statements made in the course of the litigation for

2    purposes of the mediation and for purposes of resolving the

3    case through a settlement they were no longer relying on

4    that theory.

5                THE COURT:  All right.

6                MS. RUBIN:  They acknowledged that Mr. Powlege,

7    for example, could have had a major health event or could

8    have suffered -- could have inadvertently -- I believe the

9    footnote says could have inadvertently put his foot on one

10   pedal when he meant to press another.

11               And, obviously, Your Honor, I wasn't there at the

12   time.  I just would like to clear the name of those who were

13   involved in the mediation to say that wasn't their theory,

14   at least on submission in writing to the mediation.

15               Thank you --

16               THE COURT:  All right.

17               MS. RUBIN:  -- Your Honor.

18               THE COURT:  Okay.  For the only matter that must

19   be done today, which is whether I should reopen the record

20   to allow still another opportunity to add evidence to the

21   60(b) record by introduction of depositions, I am denying

22   that request.

23               When a Court deals with matters of this character,

24   the Court cannot, consist with appropriate judicial

25   administration, authorize such moving targets and repeated

Page 107

1    efforts to put more material into a record that could have

2    and should have been presented earlier.

3            As I indicated earlier, if there were facts from

4    those depositions, which putting aside whether plausible

5    allegations are sufficient or more robust evidentiary proof

6    such as by affidavit, deposition testimony is required under

7    60(b) as to which I will confirm through the cases that Ms.

8    Rubin is correct in her assertion, either way that

9    opportunity existed previously and it -- nothing has been

10   brought to my attention to show that it couldn't have been

11   put in earlier.

12           So the only remaining issue, then, is how long,

13   assuming it's reasonable, new GM and the GUC Trust desire to

14   respond to the late submission of the Minnesota case,

15   Spaulding, because by reason of its eleventh hour production

16   they're entitled to an opportunity to put in something if

17   they choose.

18           The fact that I need to provide that opportunity

19   coupled with the fact that both sides brought to my

20   attention decisions that I need to read means that I can't

21   rule today from the bench.

22           So, Mr. Steinberg, Ms. Rubin, how long do you need

23   to either put in a response on Spaulding or to tell me that

24   you waive your opportunity?

25           MR. STEINBERG:  Your Honor, I think today's

Page 108

1    Thursday.  We could do it by Tuesday, the close of business

2    on Tuesday.

3                 THE COURT:  Is that equally true of you, Ms.

4    Rubin?

5                 MS. RUBIN:  Sure.

6                 THE COURT:  Okay.

7                 MR. STEINBERG:  Your Honor, if I may, if I had

8    been given an opportunity there was --

9                 THE COURT:  Pull a mic close to you, please.

10                MR. STEINBERG:  I'm sorry.

11                If I had been given the opportunity I would have

12   wanted to say something about the Playboy case that was

13   cited first in the reply and on the Lawrence case.  May I

14   include that very briefly via paragraph or two in the letter

15   that I file by Tuesday?

16                THE COURT:  If they were submitted in the reply,

17   I'm going to give Mr. Davis the choice.

18                Do you want their response in writing or do you

19   want to give them a chance to be heard now?

20                MR. DAVIS:  I will defer to counsel.

21                THE COURT:  You can do whichever you prefer, Mr.

22   Steinberg.

23                MR. STEINBERG:  Your Honor, I think I could do it

24   in two minutes so that it will save you some reading.

25                THE COURT:  Okay.

Page 109

1              MR. STEINBERG:  With regard to the Lawrence case,

2     which was the issue about whether the one-year statute of

3     limitation for 60(b)(3) applied, I just wanted to point out

4     to Your Honor that there is a footnote, Footnote 9 of that

5     decision where the Second Circuit said that they -- people

6     have been counting the time period on the wrong start point,

7     and that actually this thing was timely filed within the one

8     year.

9              So this decision doesn't really stand for any

10    other proposition other than this was a timely filed

11    60(b)(3) application.  So that was -- that was all I had

12    wanted to say on the Lawrence point.

13             With regard to the Playboy case where there was a

14    reference to the New York law and it was as to what New York

15    law would hold about setting aside a settlement agreement,

16    in that particular case the argument was whether there was a

17    breach of a particular term of the settlement agreement

18    which would justify a vacating it on the grounds of fraud

19    and misrepresentation.

20             The particular term was that the settlement

21    agreement provided that there should be no reference to an

22    injunction that had been executed -- entered into as part of

23    the settlement, so they couldn't introduce the injunction in

24    the context of a later trial.

25             And the Court was then deciding whether the cross-

Page 110

1    examination of a witness turned out to be the introduction

2    of evidence and the Court said it wasn't, denied 60(b)

3    relief.  But it was all in the context of a breach of a

4    particular representation or really in this case a covenant

5    in a settlement agreement.  And that's obviously not the

6    circumstance here.

7              THE COURT:  All right.  Thank you, folks.

8              The matter will be submitted and we're adjourned.

9              MR. WEINTRAUB:  Your Honor, could I be heard on

10   one -- one last thing, Your Honor?

11             The Court had asked --

12             THE COURT:  Is it something new that -- all right.

13   Come on up, Mr. Weintraub.

14             MR. WEINTRAUB:  It's revisiting something.

15             The assignment of claims, which was something that

16   --

17             THE COURT:  Wait.  Is this something -- rearguing

18   something that came up almost literally hours ago?

19             MR. WEINTRAUB:  I don't know if it was hours ago,

20   Your Honor, but this seemed the most opportune time rather

21   than to interrupting the flow of everything else that was

22   going on.

23             THE COURT:  You realize if I hear what you have to

24   say now I've got to give your opponents a comparable

25   opportunity.

Page 111

1            MR. WEINTRAUB:  I understand, Your Honor.  It's

2    just with respect to submitting it to the Court.  I could

3    not find the confidentiality provision in there.  So I would

4    like to confer with counsel and see if they can point me to

5    the confidentiality provision.  I think we could put in the

6    assignment of claim which is part -- which is the agreement

7    that Ms. Powlege signed without the --

8        (Pause)

9            MR. WEINTRAUB:  May I confer with counsel?

10           THE COURT:  No.  This is what I want you to do

11   since I can't decide it today anyway, and I don't want to

12   hear more oral argument, and the only issue is whether or

13   not I see a document.

14           I want you to meet and confer with Mr. Steinberg

15   and Ms. Rubin and determine, (a) whether it's relevant; (b)

16   whether it's violative of a confidentiality obligation; and

17   (c) whether they agree to it, its consideration, object to

18   its consideration or agree to its consideration subject to

19   their ability to comment on it.

20           And I want any further submissions on this solely

21   in writing.

22           MR. WEINTRAUB:  Understood.  Thank you, Your

23   Honor.

24           THE COURT:  Okay.  We're adjourned.

25           MR. STEINBERG:  Your Honor -- Your Honor --

Page 112

1          THE COURT:  Yes.

2          MR. STEINBERG:  -- I hate to be the one -- to be

3     the one to stand up for the parties, but there was a letter

4     that we had written to Your Honor with regard to the April

5     29th letter that was submitted to Judge Ferman and we hoped

6     that the letter that we had submitted by the counsel here

7     was satisfactory to Your Honor.

8          I will note that there was a short colloquy at the

9     April 24th hearing with regard to that issue.  And to the

10    extent that Your Honor has not seen that, we would be

11    prepared to hand up the three pages in the transcript for

12    that as well, too, so you would have the complete issue that

13    related to that.

14         And Judge Ferman had entered an order on April

15    16th, the day after your decision, asking for the parties to

16    address the issue that they would otherwise brief in the

17    April 29th letter to be prepared to say that at the April --

18    address that at the April 24th hearing to the extent they

19    wanted to say something.

20         And so I have that one page order from Judge

21    Ferman.  If you don't have it and you would like to see it I

22    could hand it up.  I told the other side that I had that.  I

23    just want to make sure, and maybe I'm leaning too far -- too

24    much the other way, but to make sure that Your Honor has

25    everything that --

Page 113

1           THE COURT:  I don't have it.  And if my endorsed

2     order did not make it clear, it is a matter of concern to me

3     when the District Court hears about the progress of

4     compliance with one of my orders before I do and, in fact,

5     before -- unless I take corrective action without me hearing

6     about it at all.

7           I mean, when I discovered of the existence of it,

8     so everybody knows something, I asked Judge Ferman's

9     chambers to provide me with a copy of the letter, which it

10    did.  But there was no reason why -- by which I needed to

11    contact Judge Ferman to hear about compliance with one of my

12    orders and how it could possibly be that anybody in the

13    world might think it appropriate to communicate with Judge

14    Ferman without copying me on something that talks about

15    compliance of the undertaking that I had required.

16          Now I understood that at least once and perhaps

17    twice in that letter there was an apology for that.  Fine.

18    Apology accepted.  But it better not happen again.

19          MR. STEINBERG:  Understood, Your Honor.  And I was

20    standing to rise not to sort of to raise an issue that I --

21    that I assumed had -- had hoped we had put to bed because we

22    had all agreed that we would do that, but because I thought

23    that there may be a couple of other things relevant to what

24    Your Honor should see and I wanted to be able to present

25    that.  So --

Page 114

1            THE COURT:  I understand and appreciate that.

2            MR. STEINBERG:  Okay.

3            THE COURT:  My endorsed order should now be deemed

4    to have been complied with.

5            MR. STEINBERG:  So --

6            THE COURT:  Or at least it will be assuming I get

7    something under the time limit that was promised to me.

8            MR. STEINBERG:  So I --

9            THE COURT:  But I also assumed that people

10   understood the import of that order and there will not be

11   further instance -- instances of that kind of thing.

12           MR. STEEL:  Your Honor, if I may for --

13           THE COURT:  Yes, come up, please.

14           MR. STEEL:  -- sort of for good conscious for the

15   record.  It's Howard Steel of --

16           THE COURT:  Yes, Mr. Steel.

17           MR. STEEL:  -- Brown Rudnick on -- designated

18   counsel on behalf of the economic loss plaintiffs.

19           Mr. Weisfelner is out of the country.  We

20   appreciate Your Honor's acceptance of our letter and I

21   appreciate the opportunity to express our collective regret

22   for the oversight not submitting the joint letter.  It won't

23   happen again, Your Honor.

24           THE COURT:  Thank you, Mr. Steel.

25           MR. STEINBERG:  If I could hand this to your

Page 115

1    clerk, Your Honor, the --

2            THE COURT:  Yes.  To my clerk, please, Mr.

3    Steinberg.

4            MR. STEINBERG:  And the relevant excerpt is only

5    on pages 33 through 35, but we did give you the full

6    transcript.

7            THE COURT:  Thank you.

8            All right.  Do we have any further business?

9            Hearing none, we're adjourned.

10           COURTCALL OPERATOR:  Your Honor, may I disconnect?

11           THE COURT:  Yes, you may, Courtcall.

12           COURTCALL OPERATOR:  Thank you.

13       (Whereupon, these proceedings concluded at 12:30 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        I N D E X

 2

 3                      R U L I N G

 4                                      PAGE      LINE

 5   Motion to reopen the record to allow still

 6   another opportunity to add evidence to the

 7   60(b) record by introduction of depositions   106       18

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 117

```
 1                    C E R T I F I C A T I O N

 2

 3    We, Dawn South and Sherri L. Breach, certify that the

 4    foregoing transcript is a true and accurate record of the

 5    proceedings.

 6    Dawn South

 7    _____

 8    Dawn South

 9    AAERT Certified Electronic Transcriber CET**D-408

10    Sherri L

11    Breach
      _____

12    Sherri L. Breach

13    AAERT Certified Electronic Reporter & Transcriber CERT*D-397

14

15    Date:  May 8, 2015

16

17

18

19

20

      Veritext Legal Solutions

21

      330 Old Country Road

22

      Suite 300

23

      Mineola, NY 11501

24

25
```

Digitally signed by Dawn South
DN: cn=Dawn South, o, ou,
email=digital1@veritext.com, c=US
Date: 2015.05.08 15:01:15 -04'00'

Digitally signed by Sherri L Breach
DN: cn=Sherri L Breach, o, ou,
email=digital1@veritext.com, c=US
Date: 2015.05.08 15:01:51 -04'00'

**&**

**&**   3:2,9 4:8,16 6:12
  6:19 117:13

**0**

**09-50026**   1:3

**1**

**1**   20:8 45:17 57:14
  84:10
**1,172,000**   30:7
**1,172,625**   29:20
**1,250,000**   11:17,19
**1.17**   29:25
**10**   104:3,16,16
**10016**   4:19
**10018-1405**   3:21
**10036**   5:4
**10036-4003**   3:12
**10036-6745**   4:11
**1010**   4:3
**10166-0193**   3:5
**105**   89:12
**106**   116:7
**108**   62:21
**11**   48:11 53:1,2
  57:18 104:23 105:1
**11501**   117:23
**1185**   3:11
**119**   62:20
**12**   20:22 21:2
**120**   62:20
**12845**   20:8
**12:30**   115:13
**13**   48:11
**135**   85:4
**14**   86:11
**154**   45:17
**15th**   14:14 25:17
  28:1 34:9 42:21
  45:23 46:2 72:24
  79:17 94:4
**16th**   112:15
**18**   116:7
**180**   28:9
**188**   98:23
**18th**   20:10 57:4
  60:2 100:13

**19**   58:6 64:1
**1928**   84:15
**1962**   40:14,25
**1994**   55:21 56:1
**1998**   45:14

**2**

**2**   12:23 15:23 50:12
  52:1,19 53:11
**2.7**   13:8 28:22,23
  33:23 44:5,16
**20**   64:1
**200**   3:4 4:3
**2001**   88:9
**2003**   63:22 77:19
**2004**   63:20,21,23
  84:3,4,5 85:3 102:5
  103:4
**2005**   102:13 103:3
**2006**   102:13 103:3
**2007**   69:18 102:9
**2008**   86:12
**2008-2009**   102:8
**2009**   80:6,10 102:12
**2010**   2:2 10:6 11:6
  12:18 13:15 30:25
  33:21 45:11 80:6
  90:20 99:1 101:8
**2012**   56:1
**2013**   80:10
**2014**   20:10 57:4
  60:2 86:25 94:23
**2015**   1:16 117:15
**208**   27:25
**210**   25:17
**24**   94:8
**247**   84:10,13
**24th**   112:9,18
**250**   10:12,14,17,24
  11:24 43:24 51:4,8
  52:5 53:12 69:22
**263**   39:1 40:24
**270**   4:18
**29th**   112:5,17

**3**

**3**   12:25 15:3 52:17
  52:18,19 53:8 57:11

64:8,12 65:20 79:5
  88:11 103:20 109:3
  109:11
**3,975,000**   19:17
  23:16
**3.9**   23:22,25 29:20
**30**   10:10
**300**   117:22
**301**   86:10
**31**   102:2,5
**33**   115:5
**330**   117:21
**340**   28:9
**346**   39:1 40:24
**35**   92:13,13,18
  115:5
**372**   98:23
**379**   28:4
**393**   48:5
**397**   117:13

**4**

**4**   32:6,7 53:19 65:21
  65:23 66:9 84:4,7
  86:13 104:17 105:1
**408**   117:9
**425**   28:4
**437**   45:17
**44614**   2:3 51:4,17
  52:4,9
**479**   85:5
**486**   57:17

**5**

**5**   51:16 57:14 65:24
  66:5
**55**   10:13,24 12:24
  23:4,24 43:25 44:4
  51:5,18 53:13 54:12
  54:17 55:1

**6**

**6**   20:7,22 21:2 57:16
  57:22 58:3,9,24
  60:22 64:17 66:10
  72:14 79:5 86:11
  88:3 103:19
**6,500**   44:12

**60**   7:22 8:8,22,23
  15:2,9,19 33:13
  39:3,5 41:12,19,20
  44:24 45:3 46:1
  51:20 57:11,12,12
  57:15,16,22 58:3,9
  58:24 60:22 61:3,22
  64:8,12,17 72:14
  76:12 79:5,5 86:13
  87:17 88:1,3,11,15
  88:19 89:2,13 93:11
  93:21 96:9 97:3
  98:18,21 99:2,8,11
  99:16,22 100:6
  101:25 103:18,19
  103:20 106:21
  107:7 109:3,11
  110:2 116:7
**60.02**   39:3
**620**   3:20
**626807**   84:4
**69**   57:3

**7**

**7**   1:16 84:11
**77002**   4:4
**78**   60:17

**8**

**8**   66:19 82:21 84:11
  95:4 98:16 99:12
  100:7 117:15
**8,000**   102:12
**83**   60:14,16
**847**   57:18
**863**   57:18

**9**

**9**   2:2 60:11,16 82:21
  83:5 95:4,16 98:16
  99:12 100:7 109:4
**9014**   95:2
**9:47**   1:17
**9th**   11:6 12:18
  13:14 80:10

**a**

**aaert**   117:9,13

**ab** 84:10
**abated** 9:20
**ability** 10:1 15:18
16:2 30:14 37:7
40:4,7 68:18 89:14
89:15,20 111:19
**able** 34:17,19 39:7
46:1 47:7 48:1,1
63:6 65:12 79:24
92:8,23 113:24
**absence** 65:13
**absolute** 64:12
88:22
**absolutely** 64:16
82:5,8 83:2 90:16
**abudabi** 55:12,25
**accept** 63:9
**acceptance** 114:20
**accepted** 113:18
**accepting** 48:14
**accident** 51:9 59:25
62:23,25 71:11
74:15 75:14 104:7,9
**accommodating**
93:19
**account** 23:16 32:5
52:24 53:9
**accurate** 20:20
57:25 94:16 117:4
**accusation** 104:20
**accused** 47:5
**accusing** 79:7,7
**achieved** 68:8
**acknowledged**
54:19 106:6
**acknowledges**
54:22
**acted** 8:19
**acting** 58:11
**action** 88:14 113:5
**activated** 97:5
**acts** 33:8
**actual** 18:16 19:20
24:20 46:25 61:4
84:1
**adam** 11:8

**add** 70:18 96:23
106:20 116:6
**addition** 30:24
81:21 99:3
**additional** 22:2
38:9
**address** 24:10 37:23
56:18 88:17 112:16
112:18
**addressed** 36:8 74:5
74:14
**addressing** 40:20
80:15
**adhering** 86:22
**adjourned** 110:8
111:24 115:9
**adler** 4:16
**administration**
106:25
**admit** 64:13
**admittedly** 79:10
**adr** 10:6 11:1,2
15:16 35:18 36:24
37:14 42:15 44:15
51:6 54:18
**adult** 51:13,21 70:9
70:11
**advantage** 18:23
**adversarial** 92:8
**adversary** 95:3
98:19
**advice** 67:3,4
**affect** 68:16
**affidavit** 100:1
107:6
**affidavits** 61:4
99:21
**affirmance** 85:4
**affirmative** 81:1,8
83:12 88:14 93:7
**affirmed** 85:3
**affixing** 39:19
**afield** 103:6
**afternoon** 98:15
**age** 63:9 71:14
**aggrandizing** 43:7

**aggregate** 10:17
11:16,21 13:2,5
23:15 32:5
**aggrieved** 35:15
**ago** 7:11 102:16
110:18,19
**agree** 30:16,22
59:19,20 81:20 83:2
90:23 111:17,18
**agreed** 10:11,24
11:3 25:20 26:25
27:2 43:25 51:5
53:13 54:17 113:22
**agreement** 8:17
15:17,19 16:2,20
17:11 19:11,16,22
20:3 21:16 22:21
24:7,9,25 25:2,2,5
28:17 29:2,4 30:15
30:17,18 31:2,14,16
32:24,25 33:1,9,14
33:16 35:22 36:9,19
36:22,25 37:1,12,18
37:20,22 38:21 39:6
41:6 42:4,8,18
44:20,22,23 45:1,4
45:4 46:16,22 47:16
52:2 53:22 54:15
65:7,11,14,16 66:1
66:6,10,11,17 67:1
67:5 83:14 85:15,25
86:1 87:4 88:5
91:17,20 92:2,7,23
96:7 97:7,7,15,16
103:9 109:15,17,21
110:5 111:6
**agreements** 15:8
66:13
**agrees** 54:22
**ahead** 20:6 22:16
38:17 41:1 71:17
**ails** 61:23
**aim** 9:5
**akin** 4:8 6:19
**alexander** 4:21
**allegation** 83:15
105:9

**allegations** 61:3
69:17 82:14 87:7
95:6,8,18 99:5,18
99:20,24 100:17
103:23 107:5
**allege** 27:13 28:12
**alleged** 14:12 83:17
**alleges** 101:19
**alleging** 75:22
**allot** 23:9
**allow** 26:10 40:17
42:4 98:10 106:20
116:5
**allowance** 30:2
**allowed** 13:12,24
17:16 23:1,22 28:15
28:21 29:2 31:5,9
31:11,18 32:5,13
34:5 38:8,12 43:22
46:13,17,18 50:8
52:16,25 53:9,10
54:14 61:20 83:11
**alternative** 87:8
**alternatively** 2:3
**ameliorate** 81:16
**amending** 39:20
**americas** 3:11
**amount** 8:11,12
19:7,18 20:14 21:14
21:24 22:19,25 23:2
23:4,8,9,16,17
30:11 31:5,18 44:17
46:13,17,18,20 51:4
51:15,17 52:5,15
53:12 54:12,14,17
55:1 86:16 91:18
92:12
**amounts** 8:10 20:23
21:1 38:8 52:15,17
**amply** 103:8
**analogous** 42:14
**analysis** 59:16
**analyze** 26:16 70:12
**aneurysm** 42:6
**anguish** 71:5,9
**answer** 52:23 53:3

anticipation 20:10
antiseptic 70:4
anybody 18:14,17
  19:2,14 22:4 40:18
  113:12
anybody's 8:11
anyway 111:11
apologize 55:7
apology 113:17,18
apparent 20:23
  88:17
appeals 84:22
appear 43:7
appearances 6:4
appellant 99:18,21
appellate 7:14
appellee's 99:19
applicable 14:4
  68:11 77:15 78:12
  81:17 83:9 90:16
  98:17 103:17,21
application 109:11
applied 27:14 72:3
  72:6 109:3
applies 62:23 70:16
  85:22 98:18
apply 44:8 71:23
  83:5 86:3 88:25
appointment 96:9
appreciate 9:19
  27:1 78:17 92:1
  94:20 95:21 96:16
  114:1,20,21
appreciated 94:3
appreciating 94:21
approach 12:3
  40:21
appropriate 40:8
  58:3,9 61:19 106:24
  113:13
appropriately 64:8
  96:20
approval 8:11,14
  8:17,18 18:14 42:10
  69:1
approve 41:24

approved 15:12
  42:9
approvingly 84:9
appx 85:4 86:11
  98:23
april 14:14 25:17
  28:1 34:9 42:21
  45:23 46:2 72:24
  79:17 94:3 112:4,9
  112:14,17,17,18
area 76:14 82:21
argue 21:14,17,24
  96:5
argued 7:10
arguing 14:18 36:2
  78:20 80:18
argument 16:7
  25:14 33:3,4,9 34:3
  34:6 39:3,12 43:9
  44:21 61:24 63:7
  76:15 78:17,19
  79:13 87:12 89:1,18
  89:19 90:5,12 93:13
  93:15 94:2 109:16
  111:12
arguments 27:8,9
  27:15 28:18 37:23
  42:17 43:7 74:5
  83:25 89:5,22
arises 81:22
arms 15:24
arrangement 20:1
arrived 54:15
arthur 3:14 6:11
article 102:10,11,20
articles 101:15
articulated 86:4
arvay 55:6,20
ascent 85:9,10
ashcroft 81:22
  95:19 99:13
aside 2:3 42:4,18
  63:9 78:2 81:9
  107:4 109:15
asked 8:22 49:21
  52:20 54:19 56:16
  72:13 91:7 97:1

100:19 101:9
  110:11 113:8
asking 7:22 25:9,10
  79:10 83:14 103:11
  112:15
aspect 79:12
aspects 67:24
assert 7:24 8:5
asserted 105:13
asserting 69:22
  94:16
assertion 107:8
assertions 59:3
assess 89:16
assessed 27:12
assessing 80:18
assets 71:10
assign 26:4 29:1
assigned 7:25 8:6
  25:1 27:11 28:24
  35:7 46:15 89:20
assignee 26:13 27:5
  27:9,15 55:18,22
  56:4
assigning 46:18
assignment 9:10,11
  16:12,13,17,18,21
  18:12 21:13 24:25
  26:6 27:10 28:11,15
  28:25 30:16,19 31:2
  31:3 33:10,17 34:4
  34:5 35:6 37:22
  46:5,6,12,14 63:13
  67:16,18,18 89:19
  89:24 90:5 110:15
  111:6
assignor 26:14
  34:24
assigns 29:2
associated 20:14
associates 45:18
assume 7:13 14:16
  18:7,14,21 23:16
  28:5 59:14 78:7,23
  78:25 79:1,2
assumed 113:21
  114:9

assuming 22:3
  79:14 107:13 114:6
assumption 94:4
  102:18
assure 58:16
atlantic 81:21
attached 16:16 17:4
attack 15:9,18 25:1
  30:14 35:21 36:18
  39:6
attacking 33:2 45:3
attained 45:2
attempt 9:24 43:18
  44:22
attempted 41:14
attend 11:3
attended 13:16
attending 13:17
attention 12:14
  14:13 65:24 86:3
  107:10,20
attorney 3:3,18 4:2
  4:17 5:2 48:7 76:16
attorneys 3:10 4:9
august 2:2 11:6
  12:18 13:14 20:10
  30:25 57:4 60:2
  77:10 79:24 80:6
  94:22 100:13 101:8
aura 102:16
authority 45:25
  65:15 84:25 89:9,11
  97:8,10,13,14,22,22
  97:23 98:1,5,6
authorize 106:25
authorized 8:9,19
  66:21
automatic 27:10
  99:11
available 20:17
  38:10 80:3
avenue 3:4,11,20
  4:18 58:25
avoid 27:9 44:22
  45:2 92:23
award 70:6

[aware - car]                                                                    Page 4

**aware**  10:8 41:11
41:24 42:20,22 80:6
88:4,21 90:21

**b**

**b**  1:20 7:22 8:8,22
8:23 15:2,9,19
20:22 21:2 33:13
39:3,5 41:12,19,20
44:24 45:3 46:1
57:11,14,14,16,17
57:22 58:3,9,24
60:22 61:3 64:8,12
64:17 72:14 76:12
79:5,5 86:13 87:17
88:1,3,11,15,19
89:2,13 93:11,21
96:9 97:3 99:2,22
100:6 103:19,20
106:21 107:7 109:3
109:11 110:2
111:15 116:7

**b.r.**  28:4,9

**baby**  85:23 95:20

**back**  7:10 26:8 29:6
29:25 30:7 33:25,25
39:2 45:6,9,10 48:1
49:19 51:25 56:7
59:7 69:21 77:1
82:10 83:24 91:22
98:16

**background**  41:13

**backstop**  92:15,17

**backwards**  77:4

**bad**  33:8

**badly**  6:22

**bag**  19:13 22:1

**bald**  59:2 103:22

**bankruptcy**  1:1,12
1:22 9:15,19,23,25
13:21,22,23 14:6
15:16 27:2,22 28:8
35:9 36:2 38:2 48:5
48:7,15 54:7,23
56:14 58:21 99:9,17

**bar**  9:24 88:22

**based**  10:4 19:16
23:4 24:1 25:21

28:12 35:25 39:14
44:14 46:21 50:9
72:10 75:23 83:5,7
83:14 88:12,20
89:10,11,12,13,22
94:22 96:3,9 97:16
98:7 103:23

**basically**  18:13
25:18 66:1,24

**basing**  94:14

**basis**  7:2 56:11 63:6
69:22 71:2 73:14
93:24 99:2,9

**bear**  12:19

**bed**  113:21

**began**  87:24

**begat**  87:10

**behalf**  6:12,19
66:21 91:23 114:18

**belabor**  52:13

**believe**  17:6 19:19
43:14,15 45:22
50:23 55:14 57:20
59:4 62:10 95:14
100:8 104:24 105:1
106:8

**believed**  32:15 60:6

**believes**  68:22
104:6

**bell**  81:21

**belong**  51:12

**belongs**  59:21

**bench**  107:21

**beneficial**  48:6

**beneficiary**  53:5

**benefit**  13:25 34:12
38:14 44:21 45:13
69:5 70:7 90:3

**benefited**  37:24
38:9

**best**  33:24 37:8

**better**  35:20 62:16
73:20 85:1 91:10
113:18

**beyond**  27:24

**bill**  87:11,15,16,18
87:23

**billion**  10:20,21
11:17,21 23:23

**bills**  87:18 89:4

**binding**  38:24
64:20

**bit**  14:25 41:13 99:6

**blow**  67:10

**board**  86:10

**boiler**  66:15

**boilerplate**  36:22
37:6,15 42:16

**bold**  67:1

**bones**  99:4

**born**  84:20

**bottom**  15:3

**bound**  42:24

**bowling**  1:13

**brain**  41:16

**brake**  72:4 78:6,7
80:20 102:13,14

**braking**  80:21

**breach**  2:25 109:17
110:3 117:3,12

**breached**  65:18

**brief**  7:20 17:7,8
20:8 33:12 39:17,24
49:9 55:4,4,13 57:3
57:19,20 58:5,6
59:7,7 60:12,17
61:2 62:7,20 64:14
65:25 66:5 71:20,21
75:4,9 84:2 87:3
98:10 100:10,10
102:2,6 103:17,17
104:24 112:16

**briefest**  65:4

**briefing**  15:7 47:12
52:12 53:16 62:25
68:22 75:25

**briefly**  73:21 74:20
96:23 108:14

**briefs**  8:16 39:10,14
39:23 49:8 56:17
63:18

**bring**  12:13 43:25

**bringing**  14:5,12
27:23 28:10

**brings**  95:16

**broader**  67:24

**brought**  12:2 16:13
34:7 35:9 43:6
88:14 107:10,19

**brown**  5:1 114:17

**bryant**  4:10

**bucks**  10:15 13:1
19:17 23:16 30:1
32:8 91:24

**building**  3:19

**bumbling**  55:7

**bunch**  44:1

**bundle**  31:22 69:7

**bunk**  55:6,20

**burden**  59:2,21
62:4 99:22 101:24
103:21

**business**  35:13
108:1 115:8

**buy**  18:24

**buyer**  18:8 19:12
54:25 55:2

**buying**  19:2

**c**

**c**  3:1 6:1 57:15 86:9
111:17 117:1,1

**call**  65:24 76:11
84:16

**called**  14:7,10,11
84:17 86:2

**calling**  41:19

**camera**  21:11 22:11
46:9

**cap**  10:11,24 12:24
13:13 51:5 53:13
92:12

**capable**  94:7

**capping**  10:9 11:2
43:25 46:20

**caps**  51:16 52:15

**car**  11:11,13,14,15
41:6,17 63:20,24
70:6 71:23 73:3
80:18 90:16,17 93:3
102:3,20

carco   60:23
care   40:2 69:11
caring   71:14
cars   80:7 91:1
  102:16,19
case   1:3 9:5 10:13
  10:13 14:2 15:15
  20:22 25:18 26:20
  27:3 28:3,10 31:12
  34:7,18 36:18 38:19
  38:20,23 39:2,11
  40:13,19,20,22 41:2
  41:5,7,24 44:8,9,12
  45:13,19 47:10,11
  48:16,18 50:10
  53:14 54:1 55:7,12
  55:14,20,25,25
  56:11 57:17 60:21
  63:3,5,11 67:24
  68:2,12,24 69:2
  70:13 74:2 83:3,4,5
  83:6,6,7,7 84:3,7,8
  84:8,9,9,10,20 85:3
  86:7,18 87:1 88:10
  88:11,24 90:3,15
  92:24 96:5 97:4
  99:7,8 103:7,8
  106:3 107:14
  108:12,13 109:1,13
  109:16 110:4
case's   20:21
cases   53:2 55:6,8
  58:5 64:14 69:2
  78:3 81:21 82:21
  86:3 88:2 100:5
  107:7
cash   32:14 33:6,21
  38:10
cashed   33:18
cat   22:1
category   70:13 86:5
cats   19:12
cause   62:12
caused   44:2 73:6
causes   8:21
cert   117:13

certain   8:11 9:22
  34:7 42:7 80:8
certainly   7:19 14:4
  14:23 15:25 17:15
  24:22 27:12 30:21
  30:23 33:10 34:19
  35:12 36:14 38:24
  42:14,18,18 43:15
  44:14 45:4,15 46:3
  46:24 47:4,12 48:4
  48:5 49:15 51:23
  56:8 63:3 70:22
  72:17 77:25 79:25
  80:4,6 81:7 86:24
  87:6 88:6 89:4 91:1
  93:9 94:3,16 100:4
  101:2 102:23
  104:21 105:5
certified   117:9,13
certify   117:3
cet   117:9
challenging   54:19
chambers   113:9
chance   82:3 108:19
change   13:8 45:5
  73:11
changed   73:11
chapter   48:10,11
  53:1,2
character   9:5 18:22
  59:17 67:10,11
  100:3 106:23
characterization
  55:5 62:16
characterizes   79:22
characterizing
  57:15
cheaply   18:24
chevrolet   63:20,21
  63:22,24 71:24,25
  102:5,15 103:4
child   68:14,16,20
  69:10,11,12,12 70:5
  70:7
children   11:12,13
  11:14,15,23 47:6
  51:2,10,13 52:11

68:17 69:9 71:6
  93:3 104:8
choice   108:17
choose   107:17
chooses   7:15
circle   56:7
circuit   7:15 15:7
  26:15,25 37:16
  42:19 44:23 45:21
  56:3,12 57:21 58:1
  58:2,25 60:24 61:1
  64:12 69:3 85:4
  86:11 88:9,16,22
  99:1,16 109:5
circuit's   26:18
  64:15 83:25 98:22
circumstance   110:6
circumstances   30:4
  49:15 58:19 59:1,8
  60:22 62:6,8 72:18
  88:24 103:13
circumstantial   78:4
circumvent   57:14
citation   71:23 98:23
  102:9
citations   101:12
cite   15:10 20:8 28:3
  28:4,4,6 38:25
  45:17 47:3 57:18
  58:6 64:14 84:1,4,5
  84:11 87:2
cited   15:7 17:7
  25:16 26:24 27:3
  33:12 39:10 45:13
  55:12 56:5 61:2
  68:25 71:24 100:5
  108:13
cites   27:22 55:6,21
  55:21 84:1,7
citing   37:5 55:15
  68:17 84:8 102:11
civil   39:4,4 47:2
  87:15
claim   2:2 7:24 8:1,2
  8:6,12,25 9:11,24
  10:2,3,4,12,23
  11:17 13:11,18,21

14:4,11,19 15:21
  16:4,7,20 17:5,19
  18:19,20 19:15
  20:16 21:13,14
  22:19,24 23:2,4,8,9
  23:10,22 24:25 25:2
  26:4,5,6,10,13 27:4
  27:6,7,8,11,12,13
  27:15 28:15,17,21
  28:25 29:2 30:2
  31:4,5,9,18 32:4,7
  32:23,25 34:2,5,15
  34:25 35:7,10 37:7
  37:10,11,11 38:3
  39:8 42:5 43:2,5,18
  43:24 44:5,25 46:6
  46:17,18,19,20
  47:25 48:1,16 50:6
  50:8,8,18,25 51:4,8
  51:15,17 52:3,4,8,9
  52:14,15,23 53:4,12
  53:14,20,21,25 54:4
  54:10,12,14,17,25
  54:25 55:3,17,24
  57:8 60:19 62:10
  69:19,19,21 70:10
  76:7,8 80:17 83:10
  83:12 89:16 90:2
  91:19 92:14,16
  94:14 96:21 99:19
  104:21 111:6
claimant   9:23 26:9
  27:14 47:22 52:24
claimant's   27:6
claimants   10:8
  17:19 25:19 26:2
  34:10,13,14 35:8,17
  37:24 38:16 47:22
  51:2,22 52:2 74:15
  92:16
claiming   74:3
claims   7:2,2,4,7 8:6
  8:9,10,20 16:19
  18:23,24 19:2,12
  21:13,16 23:14,23
  25:19 29:7,13 31:12
  32:2,5,13 34:23

[claims - contract]                                                                 Page 6

35:14,18 36:1,11
38:1,7,9,12 46:13
50:20 51:1,9,11,12
51:16 52:4,13,14,16
52:25 53:10,10,11
53:11 55:10,11,18
56:2 65:23 71:12,13
75:20,23 85:24
104:10 110:15
**clarification** 69:5
69:14
**clarifies** 105:2
**clarify** 51:22 70:16
75:3,21 105:6
**class** 24:14 63:1
80:23 91:2
**classic** 63:20,23
71:25 72:3 73:5
77:14,20,20 102:5
103:5
**clause** 36:10 52:1
**clauses** 57:14
**cleaner** 27:4
**clear** 52:19 57:11
60:20 61:2 62:3,21
64:16,19 68:10
101:11 106:12
113:2
**clearly** 69:1 88:19
**clerk** 115:1,2
**client** 17:11 21:5,25
43:13 44:14 49:13
50:4 52:22 53:16,17
54:5 56:8,13 57:7
58:13,14,15 60:4,5
61:23 62:2 63:17
64:5 100:19 101:2,2
101:20 102:20
103:2
**client's** 25:1 57:2
59:25 60:7 62:1,10
93:5 101:7,24 102:4
103:13,21
**clients** 14:11 18:5
20:1 62:15 73:25
**close** 74:24 108:1,9

**closer** 20:11 40:6
**closest** 38:22
**closing** 62:22,24
75:14 104:9
**code** 48:5
**coe** 61:1 98:22 99:1
99:4,6,8
**coexist** 45:24
**coherent** 72:17
**collective** 114:21
**collectively** 58:15
**colloquy** 53:22
65:22 112:8
**come** 9:7 12:15
24:16 47:23 68:4
73:19 74:20 76:19
99:25 100:9 101:17
103:22 110:13
114:13
**comes** 93:1
**comfortable** 47:23
**coming** 48:10 51:20
**comment** 111:19
**commentary** 97:19
**comments** 49:7,9
75:3
**committed** 81:2
**committee** 8:14,20
**communicate**
113:13
**companionship**
71:9
**company** 1:7 3:3
6:4,16 32:15 61:8
70:23 84:10 101:8
102:15 104:25
105:2
**comparable** 110:24
**compared** 51:17
**compensate** 91:18
**compensation** 69:9
70:10
**complain** 33:8
**complained** 74:16
90:25
**complaining** 90:18
96:11

**complaint** 69:16,17
69:20 82:22 95:17
98:20 100:14,18
101:13,16 104:3,4
**complete** 93:12,15
112:12
**completely** 60:7
66:1,7 88:16
**compliance** 113:4
113:11,15
**complied** 114:4
**comply** 6:24 61:13
61:14 95:7
**components** 80:8
**computed** 11:16
**concentrate** 49:23
**concept** 26:12
**concern** 34:8,11
81:16 113:2
**concerning** 10:5
16:2 19:8 26:23
27:8,13 33:10 42:6
42:17 43:8 77:5,13
88:14 95:15 102:7
**concerns** 41:5
**concluded** 115:13
**conclusory** 95:9,18
**conditions** 67:6
**conduct** 28:13
35:13 47:14 79:24
92:9
**conducted** 13:22
**conducting** 34:14
35:4
**confer** 111:4,9,14
**conference** 13:17
**confess** 64:9
**confidential** 21:21
22:20,21 23:9
**confidentiality**
24:10,21 111:3,5,16
**confirm** 107:7
**confirmed** 53:1
**conflates** 59:22
**confused** 18:1 70:2
**congregation** 86:8

**congressional** 60:9
**connect** 101:1
**connection** 57:6
67:4 98:2
**conscious** 114:14
**consent** 8:14,20
18:8
**consented** 66:23
**conserved** 74:21
**consider** 67:23
**consideration** 16:3
16:4 25:5 28:21
29:3,19 30:19,24
33:6 35:2 69:6,7
111:17,18,18
**consist** 106:24
**consolidated**
101:13,16
**consortium** 71:9
**constantly** 101:4
**constitutional**
42:22 47:18
**consultation** 56:11
**contact** 113:11
**contained** 45:15
66:18
**contains** 66:11
**contemplate** 68:6
**content** 36:9
**contention** 16:8
24:2 54:4 67:9
**contentions** 95:14
**contents** 19:8 24:20
**contested** 10:4
13:12,18 28:17 50:6
95:2
**context** 85:1 109:24
110:3
**continuation** 63:21
**continue** 30:11
56:15
**continues** 17:14
60:15 102:11 105:4
**continuing** 37:21
**contract** 48:18
85:13

**contracts** 85:9,19
**contractual** 65:19
**contrary** 77:23
  100:6
**contrasted** 79:16
**control** 77:5,6,14,17
  77:20,25 78:1 80:20
  94:17,17 95:25
**controversy** 73:1
**convenient** 33:4
**conveniently** 59:22
**converse** 19:20
**converted** 44:17
  88:18
**convincing** 61:1
  72:15,17
**copies** 16:14,21
  21:9 39:9
**copy** 10:7 12:2
  16:13 113:9
**copying** 113:14
**core** 33:9
**corollary** 74:8
**corporate** 43:21
**correct** 10:21 11:20
  11:24 15:13 28:6
  39:16,21 50:23
  51:24 60:13 68:10
  72:12 76:13 79:20
  85:7 93:7 95:24,24
  105:15,18 107:8
**corrected** 78:21,22
  78:22
**corrective** 113:5
**correspond** 51:1,2
**corresponding**
  100:12
**costs** 71:13
**counsel** 19:25 20:13
  21:1 31:15 39:9
  42:1 67:3 77:23
  80:13 90:11 108:20
  111:4,9 112:6
  114:18
**counsel's** 77:7,23
  78:17 81:12 87:12
  88:1

**counsels** 45:12
**count** 39:22
**counting** 109:6
**country** 91:24
  114:19 117:21
**county** 71:4
**couple** 12:2 65:11
  77:6 113:23
**coupled** 107:19
**course** 6:10 7:13
  8:25 9:15,18 13:14
  22:1,12 26:19 28:23
  43:13 44:9,10 46:19
  81:4 91:20 94:25
  106:1
**court** 1:1,12 6:2,9
  6:14,17,21,24 8:10
  8:13,16,24 9:1,2,25
  10:5,7,14,17,20,22
  11:9,16,19,22,25
  12:4,13,19,21 13:1
  13:3,6,23,23 14:7
  15:1,6,11,12,15,20
  15:23 16:8,18,24
  17:3,10,12,15,21,24
  18:4,9,21 19:1,10
  19:17 20:4,6,9,10
  20:11,13,19,22 21:6
  21:22 22:12,13,16
  23:11,14 24:2,13
  25:8,14,16,20,22
  26:11,24,25 27:1,16
  27:19,21,22 28:2,5
  29:1,5,10,12,15,18
  29:21,24 30:6,20
  31:10,16,21,25 32:4
  32:10,17,20 33:12
  34:21,23 35:5,6,13
  36:6,16,23 37:3
  38:5,17,23,23,24
  39:10,13,16,19,22
  40:1,5,10,17,23,25
  41:12,22 42:3,7,9
  42:22 44:3 45:5,8
  45:13,16,25 46:2,8
  46:11,22,25 48:10
  48:20,23 49:3 50:14

50:17,20,24 51:20
  52:7 54:23 56:19
  57:5,7,11 58:2,17
  58:24 59:9,13,16,23
  60:2,11 61:6,10,20
  63:4 64:1,20,24
  65:2 66:3 67:8,14
  68:25 69:4,24 70:2
  70:19 71:17 72:9,14
  72:19,23 73:3,15,19
  73:25 74:8,10,18,22
  74:24 76:4,17,22,24
  77:1,9 78:18 80:17
  81:7,14,16,19 82:6
  82:9,18,20,25 83:13
  83:17,20,23 84:1,5
  84:12,19,22,22,25
  85:18 87:2,12,14,24
  89:6,10,12 91:7,7
  91:11,13,22 92:2
  93:12,17,22,22 94:4
  94:6,12,24,25 95:6
  95:9,16,16,18 96:2
  96:8,14,19,22 97:1
  97:9,12,17,20 98:4
  98:9,24 99:9,11,14
  99:17,23 100:3,12
  100:15,15 101:2,6
  101:18,21 103:1,11
  103:22 104:4 105:8
  105:10,20,21 106:5
  106:16,18,23,24
  108:3,6,9,16,21,25
  109:25 110:2,7,11
  110:12,17,23 111:2
  111:10,24 112:1
  113:1,3 114:1,3,6,9
  114:13,16,24 115:2
  115:7,11
**court's** 10:25 25:17
  27:2 28:10 34:8
  41:23 42:15 45:23
  74:5,14 89:13 90:8
  94:3 96:16
**courtcall** 115:10,11
  115:12

**courtroom** 56:10
  75:2
**courts** 7:14 42:24
  56:25 67:9 68:7
  95:2
**covenant** 110:4
**coverage** 92:13
**craft** 42:24
**crash** 78:8,13
**created** 90:17
**creates** 88:22 89:19
**credit** 92:5
**creditor** 32:7
**creditors** 8:14,20
  18:18,19 38:7 58:18
  62:12
**criticizing** 69:2
**cross** 109:25
**cruise** 77:6,17,25
  80:20 94:17
**crutcher** 3:2
**cumbersome** 15:1
**cursory** 63:6

### d

**d** 6:1 12:7 116:1
  117:9,13
**damages** 71:4,5,8
**dan** 6:18
**daniel** 4:13
**date** 9:24 12:17
  117:15
**dated** 11:5 41:2
  84:8
**davidson** 3:15 6:12
**davis** 4:1,6 6:7,7,9
  6:22 9:7,8 10:16,19
  10:21,23 11:11,18
  11:20,23 12:1,8,15
  12:16,20,23 13:2,5
  13:7 14:7,23 15:13
  16:10,20 17:2,9,14
  18:16,25 19:3,10,14
  20:9,13,18,20 22:22
  23:3,12,18,21 24:3
  24:17 25:12,15,25
  26:11,19 27:18,20
  27:25 28:3,6 29:8

29:11,17,19,23 30:5
30:9 31:14,20,24
32:3,9,12,19,22
34:22 35:1 36:6,14
36:17 38:5,15,18,19
39:11,15,18,21,24
40:18,21 41:1,2
48:20,22 49:2,12,21
49:24 50:3 51:12,19
51:23 52:20 53:23
54:18 55:5,14,20
56:5,22 57:1,5,19
57:25 58:11 59:21
59:22 60:1,15,21
61:5,12,19,21 62:1
64:7 65:8 66:6
67:23 68:24 70:24
71:22 72:9 73:16
75:21 77:2,3 79:19
81:20 82:5,8,13,19
82:24 83:2,16,19,21
83:24 84:7,15,20,24
85:2,7,18 86:7
87:16 91:16,25
93:15,16 94:1,11,15
95:13,21 96:11,15
96:25 98:15,19
100:5,9,17 101:1
103:11,18 104:4,9
108:17,20
**davis's**  54:4 56:8,13
58:25 59:5,11 62:10
63:7,16,17 64:5
65:24 67:9 73:25
102:3
**dawn**  2:25 117:3,8
**day**  46:25 78:13
105:7 112:15
**days**  10:10 34:6
94:2
**deal**  45:7 69:13
**dealing**  35:14 75:12
**deals**  62:9 64:17
106:23
**death**  10:8 35:8,17
35:24 51:9 52:10,11
71:7

**debate**  75:19
**debt**  32:15
**debtor**  1:9 10:10
11:6 13:25 18:19
27:13 35:3 48:9,9
**debtors**  18:18
**deceased**  11:8 51:1
**decide**  7:15 14:8,10
46:1,1 59:17 111:11
**decided**  26:15 103:9
**deciding**  109:25
**decision**  14:15 22:3
26:12,15,21 27:2
30:14 40:24 55:21
60:23 61:2 62:21
63:14 64:7,15,19
68:11 74:5,14 79:18
88:9 98:22 104:13
109:5,9 112:15
**decisions**  27:23
107:20
**decisis**  74:11,12
76:8
**declaration**  64:1
75:8 104:3,16
**deemed**  21:11 53:14
114:3
**defect**  44:3 47:10
59:24 74:4,16 75:16
75:23 78:3 80:17
83:3,5,8,10 93:9
94:9 101:21 104:5
104:10
**defects**  14:3 77:6
78:4,11 80:7 90:17
90:25
**defendant**  16:5 41:7
**defendant's**  41:7
**defendants**  42:1,10
42:11 44:11 63:15
**defense**  42:1 81:1
83:12 93:7
**defenses**  27:12
**defer**  91:9 108:20
**deferring**  96:25
**defined**  53:11 54:12
74:4,7,16

**defines**  52:3
**demand**  26:5
**demonstrate**  44:6
93:6,8 95:23
**demonstrated**  44:2
47:9 58:12 81:6
**demonstrates**  42:21
**demonstrating**  75:9
**denial**  30:4 99:10
99:15
**denied**  110:2
**deny**  58:9 97:22,23
**denying**  106:21
**dependent**  30:15
**deposition**  77:24
93:20 102:24 107:6
**depositions**  77:8,12
81:15 82:2 106:21
107:4 116:7
**described**  17:17
**deserve**  48:14
**designated**  114:17
**designation**  63:25
**designed**  87:17 89:4
96:5
**desire**  55:10 107:13
**despite**  81:12
**destruction**  43:17
**detail**  103:16
**determination**
61:20
**determine**  111:15
**determined**  99:17
**development**  68:5
**dictates**  57:15
**difference**  18:4
22:18
**different**  23:10
31:25 32:1,10 60:7
63:24,25 68:15
70:12 72:1,1,20
73:1,3,9,13,13,14
78:20 79:4 94:9
**differently**  58:19
**difficult**  78:17
85:21

**dips**  34:21
**directly**  84:8
**disagree**  54:8 56:24
82:12
**disagreed**  56:3
**disallowed**  25:18
**disclaimed**  85:22
**disclaimers**  86:6
**disclose**  23:21 42:2
42:11 48:9 64:5
**disclosed**  18:13
20:13 23:18
**disclosing**  22:22
23:7
**disclosure**  18:7,12
18:17 19:23 20:1
22:2 36:12 48:17
**disclosures**  87:25
**disconnect**  115:10
**discontinued**  63:22
**discover**  86:21
**discoverable**  81:10
81:12
**discovered**  41:9
87:21 113:7
**discovery**  9:16,20
13:22,24 14:1,18
34:1 47:2 58:12
59:3,6 60:19 61:6
61:13,14,18 64:14
77:11 78:23 79:3,10
79:25 80:11 81:17
82:16,23 86:22 91:3
92:9 94:22 96:19
100:20 101:23
**discuss**  59:8
**discussed**  15:25
77:7,25 81:14 102:4
102:19 103:16
**discussing**  36:8
**discussion**  12:3
14:17,25 25:9 29:9
77:10 78:14 87:6
94:22 96:16 98:13
**dismiss**  20:23 21:4
**dispositive**  35:6
41:19

disprove 83:12
dispute 21:21 46:5
  48:19 104:12
disputed 59:17
disputes 61:17
disputing 94:20
distinction 70:16
distribution 53:6
distributions 52:21
  52:24 53:9
district 1:2 20:21
  26:23 28:4 55:8,21
  55:25 56:12 113:3
divide 19:17 24:15
division 24:15,23
docket 17:6 20:8
doctrine 93:21
document 12:22
  17:2,3,12 19:8
  23:18 25:10 28:25
  53:25 66:18 101:5,5
  111:13
documentary 100:1
documentation
  44:6
documented 101:12
documents 9:17,22
  10:1 14:2 16:6
  20:24 24:18 34:1
  37:9 38:2 43:4,19
  43:21 46:7,9,12,14
  47:3,8 48:2,18 50:1
  50:10,11 56:11 61:4
  71:2 77:22 78:9,10
  78:16 79:22 80:3,9
  80:19,21,22,24 81:1
  81:9,10,11 83:11
  86:23 87:1,9 90:14
  91:3,5 92:24 93:8
  94:5 95:23 96:12
  101:19 102:12
doing 20:25 22:4
  43:3 66:25 82:3
  89:24
dollar 23:17
dollars 13:13 23:24
  33:25

don't 110:19
doris 2:1
dots 101:1
double 34:21
doubting 30:22
dover 8:3 16:9 19:1
  20:15 21:16,17,19
  22:4,10 23:17 28:11
  28:24 29:6,25 30:21
  31:1 33:17,18,19,22
  45:6,6,10 50:4,7
  54:25 55:2
draw 78:9 79:15
drive 77:21
driven 75:5
driver 78:8 81:1
  102:14
driving 63:19 102:4
  102:21
due 30:4 42:22 47:1
  47:18 61:24 62:1
  74:14 86:16 89:14
duly 66:21
dunn 3:2 6:16
duped 35:22 36:7
duty 42:11 58:22,23
  81:8

e

e 1:20,20,21 3:1,1
  6:1,1 45:17 57:17
  57:17 116:1 117:1
earlier 30:2 40:2,3
  49:7 51:7 59:4 72:6
  75:3 99:1,3 102:25
  107:2,3,11
earn 70:8
earned 71:10
easier 35:13 80:1
easily 45:24
economic 5:2 46:3
  114:18
education 70:8
effect 10:25 26:16
  87:22
effective 12:17 90:9
  90:9

effectively 86:19
effects 67:6
effectuated 48:12
efforts 107:1
eighth 3:20
either 23:12 26:4
  59:5 71:1 81:21,25
  85:10 96:9 98:7
  99:25 107:8,23
electrical 72:5
electronic 117:9,13
element 65:17
  68:13
eleventh 107:15
emphasize 93:4
encourage 102:1
  104:15
endorsed 113:1
  114:3
energy 49:23
engage 24:15
engaged 26:2 86:22
enron 25:16 26:12
  26:21,23 27:3,3,22
  28:4,7,7 68:11
enter 86:1 97:13,14
  97:23,24 98:6
entered 8:8 14:9
  54:24 94:7 97:6,8
  109:22 112:14
entering 36:8
enterprises 84:3
  85:2
entire 46:23 66:11
  71:21
entirely 63:24
entitled 34:2 46:4
  48:19 52:22 53:5
  96:8 103:18 107:16
entity 92:11
entry 98:2
enumerated 57:13
enunciated 60:23
  99:3
equally 62:23 108:3
equitable 28:18
  37:23 42:17 62:22

87:16 89:4,12,12
  104:13
equitably 62:11
equity 89:5
equivalent 91:18
especially 6:23 69:5
  78:19
esq 3:7,14,15,23 4:6
  4:13,14,21 5:6
essence 69:18
essentially 26:3
  30:20 31:7 41:22
  50:5 87:19
establish 15:8 55:22
  60:10,21 103:10
established 62:1
estate 23:15 34:23
  38:13
estates 71:7
evaluate 41:8
evaluating 41:12
event 27:5 30:10
  92:17 105:14 106:7
events 68:15
eventually 33:18
everybody 66:16
  76:17 113:8
evidence 16:19 17:5
  17:18 38:3 43:17
  44:1,11 53:20,24
  55:24 60:25 61:4
  62:6 72:15,17 75:7
  87:21 92:25 94:24
  99:21 100:1,9
  101:14 106:20
  110:2 116:6
evident 57:1
evidentiary 81:23
  94:23,25 95:1,5,8
  95:19 99:25 105:17
  107:5
exactly 37:1 38:14
  39:5 69:13 85:14
examination 110:1
example 35:8 62:16
  71:14 91:1 95:16
  101:13 102:1 106:7

exception  61:7
  64:13
exceptional  59:1,8
  60:21 62:5,8 72:18
excerpt  115:4
exchange  19:6
  31:17 36:3
exchanged  33:21
excuse  18:19 21:2
  39:3 80:10
execute  65:16
executed  15:5
  109:22
executes  66:19
executing  54:4 67:5
exercise  24:15
exhibit  12:7 17:7
  36:25 104:3,16,23
  105:1
exhibits  64:1 75:8
exist  9:17
existed  45:11 80:9
  107:9
existence  83:20
  86:25 113:7
existing  62:12
expect  30:23 33:23
  45:8
expert  64:10 77:13
  81:15
experts  77:12
explain  7:23 91:10
exposed  92:19,20
exposure  22:10
  92:12
expounding  68:1
express  114:21
extent  17:9 74:3,12
  75:14,22 76:6 94:12
  102:24 105:4,25,25
  112:10,18
extreme  81:3

**f**

f  1:20 117:1
face  63:5
fact  9:22 32:13
  33:16,20 36:13,19

42:7,8 45:20 59:8
59:17 61:9,17 68:4
72:10 75:18,24
77:17 78:4 79:2
95:6 96:3 102:20
103:5 104:9 107:18
107:19 113:4
facts  38:20,24,25
  47:16 49:20 59:23
  74:4,6,7,17 79:9,15
  81:5,23 88:18 89:11
  93:22 95:8,17,19
  102:8 107:3
factual  41:13 72:7
  95:7
fail  56:12 61:25
failed  42:1 79:8
  99:21
failure  9:25 43:12
  61:16,16,17 72:4,5
  94:13
fair  74:18 94:4
fairly  34:2 39:7
  92:24
fairness  38:15
faith  15:23 16:1
falls  8:13
false  36:12
familiar  67:12
  87:14
families  35:15
family  7:5 31:19
  32:16 44:18
far  58:1 65:18
  103:6 112:23
fast  78:24
fatal  102:7
favor  89:7,7
favorably  25:16
  26:24
february  7:11 10:6
  94:3
fed  85:4 86:11
  98:23
federal  39:5 41:21
  95:2,3 100:15

feel  6:22 47:23
feld  4:8 6:19
felt  35:20
ferman  112:5,14,21
  113:11,14
ferman's  113:8
fiduciary  58:22
fifth  45:21 69:3
figure  13:9 21:5
  91:19
figures  24:22
file  9:23 40:19
  43:16 108:15
filed  2:1 9:19 10:12
  17:6 20:22 24:19
  39:16 43:24 46:22
  51:4 52:2,15 53:17
  53:17 54:1 56:25
  57:6 69:19 72:9
  87:12,24 100:14
  104:4 109:7,10
filing  12:7 13:21
  87:10
filings  87:10
final  53:12 58:10
  61:21 71:19 104:18
finality  68:8,9
finally  63:2
finance  90:2
financial  35:15
find  38:22 50:14
  56:4 83:18 86:2
  88:24 89:6,10 111:3
finding  95:9
fine  25:12,25 30:11
  76:21,23 113:17
firm  16:9 104:22
first  6:5 9:7 10:3
  49:11 50:3 60:25
  79:19 84:3 85:19
  95:10 108:13
fits  64:8
five  13:4
fix  73:8,9
fixed  38:8
flaw  102:7

flawed  93:23
flip  7:20
flop  7:20
flow  110:21
flushed  78:19
focus  8:23 14:21
  28:11
folks  6:21 62:17
  110:7
follow  23:11 45:19
following  52:3
  99:14
follows  86:24 99:17
  100:18
foot  106:9
footnote  25:17
  26:24 27:25 62:20
  105:2 106:9 109:4,4
foregoing  117:4
forgive  7:21 14:7
  38:5 66:3 87:14
form  42:15 52:25
former  77:22
forth  52:25 53:10
  58:4 82:10 95:7
forward  63:23 79:8
  99:25 100:9
found  39:11 59:23
  79:17 88:19
foundation  83:18
four  7:1 10:18 11:9
  11:11,14,24 13:1,3
  13:13 29:7 50:20,25
  51:1,10 52:11 58:6
  86:6 104:7
fourth  49:1
fox  55:13
frankly  9:5 21:3,12
  31:15 47:20 94:15
fraud  8:24 9:1,2
  26:3 34:16 55:10,19
  57:2,8 60:19 79:7,9
  79:11,16 83:6,15,20
  87:7,21 88:20 90:2
  96:9,11 98:2,8
  109:18

**fraudulent** 27:7
  85:11
**fraught** 86:15,20
**freeman** 4:16
**full** 17:12 53:15
  66:22,25 67:6 70:11
  115:5
**fund** 7:5 8:3,3,5
  18:22 20:15 22:4,10
  23:17 34:24 50:4,7
  54:25 55:2
**fundamental** 7:17
  65:17 100:22
**further** 17:18 53:17
  53:23 54:21,24
  62:18 63:4 68:22
  69:13 111:20
  114:11 115:8
**future** 35:8,8,22
  92:4,5,12

**g**

**g** 6:1 57:17 116:3
**g6** 91:1
**g6's** 102:15 103:3
**galveston** 71:4
**gap** 88:17
**garvin** 64:15
**gather** 39:20
**general** 3:10 6:3,12
  31:22 32:2,6 50:8
  52:16 54:7,14 55:15
  58:15 98:6 100:22
  101:7
**generalized** 85:22
  86:4
**generally** 22:6 74:9
  77:18,19
**gentlemen** 21:7
**gerber** 1:21
**getting** 16:11 24:11
  30:15 91:25 96:12
**gibson** 3:2 6:16
**give** 17:1 21:9 22:9
  23:18 27:21 29:6,25
  30:2 31:10,12,21
  68:23 83:17 108:17
  108:19 110:24

115:5
**given** 9:21 15:15
  37:9,12 48:2 49:7
  83:3 93:6,25 98:10
  108:8,11
**gives** 40:2
**giving** 16:6 21:8
  40:18 68:24 76:18
  85:23
**gm** 8:9,19 14:2 19:2
  19:4 23:15 24:18
  28:13 31:12 33:4,20
  38:1,6 43:15,18,21
  47:5 53:6 58:13,13
  58:18 60:20 61:8,10
  61:13,13 63:18 64:3
  77:12 80:5,14,14,25
  81:1 87:24 88:4
  89:7 90:15 92:11,18
  92:19 97:12,17,17
  101:10,11,14 102:6
  102:8,12 104:20
  107:13
**gm's** 14:12 17:7
  31:19,21 33:8 43:7
  47:3 56:14 75:10
  83:24 97:22 103:17
  104:24
**go** 20:6 22:16 29:6
  30:7 33:25,25 34:1
  38:13,17 41:1 43:17
  54:3 71:17 80:4
  83:1 88:4 90:9 95:3
  104:19
**goes** 55:16 67:21
  82:6 99:20 102:18
**going** 12:16 15:18
  19:23 21:6 22:13
  23:12 26:9 28:25
  34:17 35:16,21 38:1
  38:9 40:17 45:6,7
  48:13 49:8 51:25
  52:1 61:22 65:4
  68:6 71:1 77:4 78:7
  81:15 83:8 86:8,9
  90:8 91:9 92:11,15
  94:21 108:17

110:22
**golden** 4:13 6:18,18
  38:11 62:14
**gonzales** 25:17 26:7
  26:12,17,22 27:22
  28:7
**good** 6:2,15,18 9:8
  15:23 16:1 63:10
  86:21 88:10 102:2
  114:14
**goodwin** 3:17
**gotcha** 29:11
**gotten** 18:7,14
  78:16 82:16
**governed** 99:12
**grade** 24:14
**granted** 97:8
**grasp** 43:2
**great** 25:15 44:5
**greater** 26:13 41:10
  103:16
**green** 1:13
**gross** 29:19
**grounds** 15:19 46:2
  57:13,22 58:3
  109:18
**group** 73:23
**gruman** 4:17
**guc** 17:8 20:7,22
  30:7 38:11 47:12
  52:7 53:5,7 57:1
  58:5,6 59:7 62:12
  63:17 75:4 97:21,22
  103:24 107:13
**guess** 8:3 14:23,24
  70:15 75:19 98:11
  98:14
**gump** 4:8 6:19
**guy** 85:21
**guys** 39:13 74:1
  76:18

**h**

**h** 3:7 4:21 86:9
**haldenstein** 4:16
**hand** 12:6 19:23
  21:10 22:6 25:10
  64:17 101:7 112:11

112:22 114:25
**handed** 40:23
**hands** 25:20
**happen** 33:22 76:15
  113:18 114:23
**happened** 47:24
  52:20 58:20
**happens** 38:16
**happy** 16:25 68:23
  77:11,24 81:14
  95:22
**hard** 21:9 38:19
  70:3 101:14
**hardship** 62:9,12
**harm** 22:2
**harness** 102:7
**hate** 103:6 112:2
**hauer** 4:8 6:19
**head** 8:21
**health** 106:7
**hear** 18:10 40:5
  49:4 73:19 110:23
  111:12 113:11
**heard** 23:7 34:7,8
  73:22 82:11,12
  90:11 97:18 108:19
  110:9
**hearing** 2:1 20:10
  21:9 57:4 75:25
  94:23 95:1,5 112:9
  112:18 113:5 115:9
**hearings** 60:9 95:1
**hears** 113:3
**hearsay** 105:12
**heavily** 42:7
**hedge** 7:5 8:4 18:22
  34:24
**height** 102:9
**held** 57:21,23 58:1
  86:13
**help** 8:7 9:1,6 14:22
  23:12 48:11 79:25
  82:3,11 91:14
**helpful** 86:2
**hereof** 66:12
**hereto** 15:6 66:22

**herz** 4:16
**highlight** 12:10
  65:9
**highlighted** 12:2,5
  12:11,12,22 16:14
  17:10 24:12 41:3
  65:7 67:17
**highly** 61:1
**hold** 35:20,25 36:1
  58:2 109:15
**holder** 51:3 55:2
**holders** 4:9 6:20
**holding** 15:14 35:23
  35:25 43:19 56:5
  62:22 100:6 104:14
**holdings** 45:15
**hon** 1:21
**honor** 6:7,15,18 9:8
  10:16 11:18,20 12:8
  12:9,17 13:20 14:24
  15:13 16:12,22,23
  16:25 17:2 18:6,16
  19:3,14,19,24 20:5
  20:7,18 21:3 22:15
  22:18 23:20 24:17
  25:6,13,25 26:19
  29:14 30:9 31:15
  32:3 34:6,22 36:14
  36:23 37:4 39:11,15
  39:21,25 40:8,12,21
  41:2 42:16 46:3
  47:21,24 49:6,11,12
  49:17,21 50:2,9,11
  50:21 51:6,15,19,25
  52:12,20,23 53:16
  54:8,16,19,21 55:1
  55:4,12 56:7,15,17
  56:21,23 57:19 58:4
  58:10,14,17 59:4,6
  59:10,19,21 60:1,3
  60:6,13,18,23 61:5
  61:7,12,15,21,25
  62:7,7,19 63:2,5,16
  64:9,22,23 65:3,21
  67:16,23 68:10,12
  68:22 69:15 70:17
  70:21,22 71:3,13,16

71:19 72:11,12
  73:18,21 74:19,23
  75:3,7 76:1,2,13,21
  76:25 77:3 79:23
  82:5 83:3,22 84:15
  86:18 89:17 91:6,25
  92:10,22 93:16 94:1
  94:15 95:13,21
  96:24 97:11,18,25
  98:13,21,25 99:7,15
  100:2,4,8,13,16
  101:23 102:1,21,23
  103:7,15,25 104:2
  104:15,21,23
  105:15,17 106:11
  106:17 107:25
  108:7,23 109:4
  110:9,10,20 111:1
  111:23,25,25 112:4
  112:7,10,24 113:19
  113:24 114:12,23
  115:1,10
**honor's** 28:1 30:14
  42:19 49:7 53:3
  54:18 65:24 104:12
  114:20
**honored** 26:6
**hope** 13:23 51:23
  82:22 83:13 91:20
  96:2
**hoped** 112:5 113:21
**horrors** 36:7
**hour** 48:21 107:15
**hours** 110:18,19
**houston** 4:4
**howard** 5:6 114:15
**huh** 20:19
**hundred** 13:3 29:21
**husband** 11:8 43:14
  51:10 52:11 71:6
  75:6 102:4 104:7
**husband's** 60:7
**hyperbole** 49:19
**hypothetically** 35:5

**i**

**i.e.** 78:6
**idea** 93:2
**identical** 41:20 80:8
  102:17,20
**identified** 12:17
  41:16 88:6
**identifies** 46:19
  104:5
**identify** 24:23 101:6
  101:18
**ignition** 59:24 60:5
  72:4,5,19,20 73:1,3
  73:4,7,10 74:3,7,16
  75:12,15,16,23
  76:10 77:5 80:22
  94:18 101:20 104:1
  104:5,10
**ignore** 67:9
**ii** 22:4,10 23:17
  27:3 28:7
**illegal** 89:22 90:6,9
**illustration** 102:3
**imagination** 64:11
**imagine** 13:20
  35:16
**impact** 49:25,25
  52:21 53:18 64:21
  92:15
**impacted** 60:6
**impacting** 96:18
**implemented** 97:5
**implicate** 32:23
**implied** 30:3
**import** 114:10
**important** 9:12
  15:2 19:11 66:16
  68:1
**inability** 41:23 70:8
  78:7
**inadvertently** 106:8
  106:9
**inapplicable** 8:25
**inappropriate** 60:4
  68:19 103:12
**include** 108:14

**included** 20:24 63:1
**including** 54:10
  55:10,18 64:14 69:3
**incompetence** 43:21
**inconsistent** 72:11
**incorrect** 77:7
  79:22
**incredibly** 48:6
**incremental** 22:2
**independent** 44:24
  105:22
**independently**
  105:12
**indicated** 107:3
**indicating** 93:22
**indiscernible** 8:12
  8:13,22 17:1,20
  21:9,20,22 22:4,12
  95:12 96:10 97:10
**individually** 13:7
**induced** 85:10
**inference** 79:9,15
**inferred** 79:10
**inflamed** 103:23
**inflammatory**
  104:20
**information** 13:18
  20:16 23:5 24:1
  42:11 101:19
**inherent** 89:14
**inheritance** 71:10
**injunction** 109:22
  109:23
**injured** 70:5
**injuries** 41:9
**injury** 41:16,25
  71:5,6
**insertion** 73:11
**inspection** 46:9
**instance** 114:11
**instances** 59:23
  80:5 114:11
**instructive** 64:21
**insufficient** 79:11
**insulting** 38:18
**insurance** 92:13,21

insure 36:3
insures 34:13
insuring 38:15
intelligence 38:18
intend 78:8
intent 56:23
intentional 36:20
  98:8
intentionally 37:18
interest 54:9 55:17
  62:2 93:5
interposed 98:19
interrupted 24:3
interrupting 110:21
introduce 109:23
introduction
  106:21 110:1 116:7
invested 38:12
investment 30:24
investors 31:9
involve 7:10 76:6
  93:10
involved 70:23 73:5
  106:13
involvement 8:10
  8:16 15:20 37:3
  41:23 42:14
irregularities 86:15
  86:20
irrevocable 67:19
issue 16:1 21:12,16
  33:10,11 35:6 45:21
  47:21 49:18 52:20
  55:5 56:18 59:5,17
  61:10 62:15 63:18
  72:4,6,16,19,20
  73:11,13 74:20 76:8
  76:19 78:24 79:2
  80:1 88:25 98:20
  103:5 107:12 109:2
  111:12 112:9,12,16
  113:20
issued 36:24
issues 7:18 62:21,25
  74:14 75:15,24 95:5
  103:16 104:13
  105:17

**j**

j 3:14 57:17
jersey 45:14,16
  68:25
job 82:4
jobs 39:14
join 41:14
joined 41:14
joint 114:22
josh 4:6 6:7
judge 1:22 25:16
  26:7,12,16,17,22
  27:22 28:6 55:23
  56:1 78:24 81:22
  84:18 112:5,14,20
  113:8,11,13
judgment 74:21
  87:20 92:4 97:2
judicata 74:10,13
  76:7
judicial 8:18 14:9
  14:20 106:24
juncture 103:12
june 80:6,10
jurisdiction 21:23
justified 85:12
justify 109:18

**k**

k 45:17 86:9
kb 26:15,21 28:3
keep 30:7 49:9
keeps 58:11,12
kept 67:23
kernan 45:17
key 73:12
kid's 24:14 70:7,8,8
kids 6:23 7:4 11:9
  11:11
killed 32:15 51:9
  70:6 104:7
killing 93:3
kind 9:6 13:18
  18:14 21:19 26:10
  30:2 36:22 41:13
  57:23 70:9 78:3,5
  114:11

king 3:9 6:12
knew 19:4,20 42:2
  46:20 48:1 60:20
  63:15 64:3 94:8
  100:22 101:10
  102:8
know 9:17 12:13
  14:2 15:24 19:1,15
  19:15 21:4 28:19,21
  31:6 33:1 34:19
  35:14,16,23 36:23
  37:13,24,25 42:15
  43:22,24 44:9,19
  47:25 48:4 52:12
  57:9 63:11 64:8,11
  64:11 67:21 68:3
  69:10,13,15 70:12
  77:22 78:6 80:4,13
  80:24 81:11,12,13
  81:19 82:15 84:13
  85:25 86:1 89:25
  90:12,13 91:4,7,13
  92:6 93:4 94:22
  95:22 96:4 100:21
  100:25 101:6,11
  102:6 103:2 105:16
  110:19
knowing 61:16
knowledge 42:5
  44:14 66:22,25 67:6
known 19:9 36:11
  65:23 66:4 78:11
  85:24
knows 30:22 101:14
  113:8

**l**

l 2:25 57:17,17
  116:3 117:3,12
lack 23:5 24:1 35:2
  37:9 43:4
ladies 21:7
laid 94:4
lamar 4:3
language 18:16
  36:22 37:5,6,6,15
  39:5 42:16,17,19
  53:19 54:13 55:16

55:23 66:16,16
  67:11
late 107:14
laundering 25:23
law 4:1 6:24,25
  36:18 45:19 49:20
  55:9 56:10,12 57:11
  63:10 64:9,10 67:12
  68:5,17 79:14,14,20
  79:21 81:5,20 84:12
  95:10,11 103:17
  109:14,15
lawrence 88:9,16
  88:23 108:13 109:1
  109:12
lawsuit 9:13 10:1
  11:5 16:4 28:20,21
  30:17 31:1,3 33:6
  41:5 43:16,23 44:7
  47:9 48:17 52:9,10
  75:17 89:20 90:4
  96:17,18
lawyer 41:7 49:14
lawyers 14:12 94:8
lays 95:13,14
lead 32:24 35:16
  67:18 85:15
leading 9:11,21
  16:1 28:14,16 33:8
  33:14 37:17 47:15
leaning 112:23
learn 85:19 95:10
learned 95:9
led 14:1 43:15,16
  104:6,6
legal 21:12 88:7
  117:20
legally 89:8 93:6
lends 43:10
length 9:21 15:24
lesser 44:17 48:14
  100:7
letch 84:10
letter 10:9,25 11:2
  20:9,12,16,25 21:4
  43:25 108:14 112:3
  112:5,6,17 113:9,17

114:20,22
**levels** 8:10 79:13
**leviere** 86:10
**liability** 59:25
**lie** 55:18 56:2
**lied** 14:12
**lieu** 8:15
**lift** 18:9 99:10
**lights** 78:6 102:13
**likelihood** 44:2 92:3
**liljeberg** 57:17
**limit** 15:18 54:13
  64:12 114:7
**limitation** 109:3
**line** 60:4 116:4
**liquidated** 22:24
  28:15 29:2 31:5
  34:5
**liquidation** 1:7 3:3
  6:3,16 61:8 70:23
  101:8 104:25 105:2
**liquidity** 35:4
**lisa** 3:7 6:15
**listed** 50:25 52:15
  52:15
**listening** 63:7
**litany** 72:8 101:15
**literally** 110:18
**litigant** 13:19,25
  42:25
**litigant's** 47:1
**litigants** 35:9 81:7
**litigate** 30:12 62:18
  92:24
**litigating** 104:21
**litigation** 9:15,20
  14:4 16:4 37:13
  50:6 61:19 69:20
  77:8 86:21 96:12,13
  100:20 102:9 106:1
**little** 14:25 16:9,10
  41:13 78:20 99:6
**llc** 3:10 98:22
**llp** 3:9,17 4:8,16
**loan** 89:18
**loanacre** 89:18,19

**location** 73:6
**long** 29:9 40:12,15
  45:20 75:13,21
  81:10 84:13,14
  95:11 107:12,22
**longacre** 8:3,4
  17:11 19:1 21:19
  22:3,3,10,21,25
  23:22 24:8,21 28:11
**longer** 98:14 106:3
**look** 12:23 16:13
  17:21 26:7 50:1,10
  68:18 72:15 80:2
  102:1 104:16
**looked** 38:19
**looking** 7:6 12:21
  69:10
**looks** 88:13
**loosely** 58:13
**loses** 33:7
**loss** 5:2 6:23 18:22
  44:17 46:3 69:12
  70:11 71:8,9,9
  114:18
**lost** 69:9
**lot** 25:8 48:6 98:13
**lower** 23:4 58:2
**lying** 26:8

**m**

**m** 39:1 86:9
**madison** 4:18
**mafia** 25:23
**main** 72:25
**maintain** 24:21
  32:15
**maintenance** 70:7
**major** 106:7
**majority** 71:15
**maker** 22:3
**making** 27:21 35:13
  57:10 80:17 90:15
**malfunctioning**
  93:3
**malibu** 63:20,21,22
  63:24 71:24,25,25
  72:3 73:5 77:13,14
  77:19 102:5,16

103:5
**malibu's** 90:24
**managed** 8:4
**manager** 8:5
**manifest** 85:8
**manifestation** 85:9
  85:10
**manufacturing**
  84:10
**market** 33:7 34:16
  35:12,19 36:5
**markets** 35:24
**massive** 43:12
**master** 20:15 50:4,7
  54:25 55:2
**material** 36:12
  85:11 95:5 107:1
**matter** 1:5 21:23
  38:10 56:10 65:19
  66:12 76:8 79:5
  105:22 106:18
  110:8 113:2
**matters** 7:9,10
  37:13 95:2 106:23
**mature** 84:16
**mean** 15:24 29:9
  30:20 31:7,11 35:16
  42:21 44:24 47:3
  48:7,18 68:2 91:20
  113:7
**meaning** 52:14
  54:25 68:2
**means** 91:17 107:20
**meant** 97:17 106:10
**meat** 99:4
**media** 101:15
**mediation** 11:4,4
  47:4 104:24 105:7
  105:10,11 106:2,13
  106:14
**mediator** 105:24
**meet** 15:19 99:22
  111:14
**meeting** 99:3
**mental** 71:5,9
**mention** 53:19

**mentioned** 10:5
  42:16 99:1
**mentions** 75:16
**merit** 43:23 44:20
  47:9
**merits** 26:9 27:6,8
  27:11 30:16 44:6
  56:5 72:18 80:15
  103:6
**met** 103:21
**mic** 20:11 40:6
  73:19 74:24 108:9
**microphone** 16:24
  18:10
**military** 41:14,15
**million** 10:12,13,14
  10:17,24,24 12:24
  13:1,3,8 23:4,22,24
  23:25 28:22,23
  29:20,21,25 32:6,7
  33:23 43:24,25 44:4
  44:5,16 51:5,6,8,16
  51:18 52:5 53:13,13
  54:12,17 55:1 69:22
  89:6 91:24 92:13,13
  92:18
**mimics** 39:5
**mind** 40:9
**mineola** 117:23
**minn** 39:1 40:24
**minnesota** 38:23,24
  40:25 64:9,10 70:13
  107:14
**minor** 41:5,23 42:8
  52:11 68:14,18 69:4
**minority** 68:16,17
  68:20
**minors** 70:11
**minute** 73:17,18
**minutes** 48:23
  108:24
**mirrors** 36:25
**misapprehension**
  50:23
**misconduct** 58:12
  59:3,6 101:23

**mismatch** 63:16
100:16,23
**mispronounce** 86:8
**misrepresentation**
28:13 34:16 36:20
36:21 37:17 45:2
85:11,16,17 109:19
**misrepresentations**
25:3 33:14 37:19
47:15
**misrepresented**
37:18
**missed** 8:15
**missing** 7:6 95:12
100:24 101:5
**mistake** 72:10
**mistaken** 7:16
11:10
**misunderstand**
51:23 83:13,22
**mlc** 61:14 64:3
104:20
**model** 63:25 80:23
102:13,15 103:3
**models** 72:25 78:10
**modified** 15:5
**modify** 8:8 45:5
**module** 77:5,14,25
94:17 96:1
**modules** 77:21
**mom** 11:24
**moment** 17:1,14
50:22 56:15
**money** 7:5 16:9,10
19:6 70:8 92:12
93:10
**months** 58:8,8 88:2
**moot** 62:11
**mootness** 37:23
62:22 104:14
**morning** 6:2,15,18
9:8 49:8,23 56:22
98:14 101:1
**moss** 4:14
**mother** 11:7 51:14
**motion** 2:1,3 17:5
20:22 21:2,4 39:24

41:13,19,20 46:1,23
51:20 56:24,25
57:10,11,12,12,15
57:16,22,23 58:24
59:18 64:7,17 79:25
80:4 86:14 87:8
88:1,19 89:5 94:16
95:13,14 96:5 97:3
98:18,21 99:8,9,10
99:15 101:25
103:20 116:5
**motions** 89:8 99:2
99:12 100:6
**motor's** 6:3
**motors** 1:7 3:3,10
6:13,16 54:7 58:16
61:8 70:23 98:6
100:22 101:7,8
104:25 105:2
**move** 9:23 25:14
53:20
**moving** 57:3,20
93:25 100:9,10
101:4 102:2,6
106:25
**multiple** 34:7 77:8
77:16
**murder** 81:2 105:3
**murderer** 47:5
**muster** 14:14

**n**

**n** 3:1 6:1 39:1,1
45:17,17 86:9 116:1
116:3 117:1
**n.y.** 84:10
**name** 76:16 86:9
106:12
**naomi** 4:14
**nature** 16:1 34:4
43:10 90:25
**nearby** 18:10
**nearly** 102:17
**necessarily** 78:24
**necessary** 23:2
68:23
**need** 8:7,8 14:1,21
14:21 23:12 24:4,4

48:10,10,11,11
56:19 76:2,16 82:9
83:15 86:1 92:6
107:18,20,22
**needed** 60:18,22
113:10
**needle** 23:6
**needs** 47:16 85:17
**negatory** 36:13
**negligence** 83:5,7
83:10
**negligent** 98:8
**negotiate** 35:12
37:7
**negotiated** 33:19
**negotiates** 35:14
**negotiating** 44:13
44:15
**negotiations** 15:24
**neither** 59:11 97:25
**never** 30:18 31:1
43:13,13,14 46:24
48:17,17 57:21,23
58:1 61:7 101:17
**new** 1:2,14,14 3:5
3:12,19,21 4:11,19
5:4 6:12 17:7 26:23
36:19 37:16 45:14
45:16 53:6 55:9,14
55:22 63:18 67:9
68:4,5,15,25 83:24
84:12,13,22 87:20
87:24 88:4,14 89:7
90:1 92:11 97:12,17
98:10 103:17
104:24 107:13
109:14,14 110:12
**newfound** 42:5
**newly** 87:21
**nhtsa** 75:10
**nicely** 78:22 79:8
**nine** 13:3,13,13
58:7 88:2
**nj** 45:17
**non** 36:12 95:9,18
**nope** 35:7

**note** 51:15 57:18
58:14 65:21 112:8
**noted** 58:18 63:10
65:22
**notice** 54:24
**notwithstanding**
67:11
**number** 20:8 50:18
51:4 52:4 58:1,5
75:10 77:7 79:21
80:7 81:13 104:19
**numbers** 24:15
50:25
**numerous** 9:16
**ny** 3:5,12,21 4:11
4:19 5:4 117:23

**o**

**o** 1:20 6:1 86:9
117:1
**object** 111:17
**objection** 12:6
17:24 22:8 61:9
**objections** 12:10
80:13,15,16 81:8,9
99:19
**obligation** 95:7
111:16
**obligations** 20:2
**observe** 101:3
**obtain** 30:10 67:4
90:3,3
**obtained** 11:4 25:3
31:1 39:6 96:7
**obvious** 72:10 90:4
**obviously** 6:24
12:10 64:19 67:25
68:20 69:4 75:20
106:11 110:5
**occasion** 84:17
**occurred** 33:20
48:17
**occurrences** 78:5
**october** 57:4
**offended** 47:21
**offer** 19:3 80:16
**offered** 80:14

**offering** 87:8
**officer** 74:10 96:2
**offices** 4:1
**oh** 11:22 16:16
    17:24
**okay** 6:3,9,14,21
    10:22 11:22,25
    12:20 24:13 25:14
    27:18 28:2 29:19,22
    32:10,19 38:19 43:8
    48:22 56:21 69:24
    70:19 74:18,22 77:1
    79:20 83:19,23 88:3
    91:16 96:22 102:3
    106:18 108:6,25
    111:24 114:2
**old** 8:9,19 14:12
    23:15 31:12,19,21
    38:6 58:18 60:23
    61:8,10,13 64:3
    76:10 80:14 84:17
    97:17,22 104:20
    117:21
**older** 11:13 41:15
    69:12
**once** 48:24 56:14
    70:8 85:25 93:1
    113:16
**one's** 57:15
**ongoing** 9:14,20
**open** 22:12,13
    104:1
**openly** 54:2
**operator** 115:10,12
**opinion** 15:14 19:3
    25:17,20 26:1,7,22
    27:1 28:1,7 45:21
    69:3 72:24 85:6
    86:11 88:9,13,21
    98:24
**opinions** 15:8 58:2
    88:22
**opponent** 82:2
**opponents** 7:17
    12:5 14:18 21:15
    32:17 59:5,11 82:7
    93:25 94:13 110:24

**opportune** 110:20
**opportunity** 40:3
    40:13,19 41:8 67:4
    82:7 92:24 93:6
    106:20 107:9,16,18
    107:24 108:8,11
    110:25 114:21
    116:6
**opposed** 28:16
    34:10 35:15 37:22
    77:21 85:17
**opposing** 39:9
**opposite** 38:14
    63:16
**oprah** 18:10
**oral** 76:14 100:13
    111:12
**orally** 78:20
**order** 7:21 8:7,8
    10:5,7,11,25 14:9
    14:20 15:17 25:18
    34:9 36:24 37:14
    42:21 44:15 45:6,23
    46:2 54:23 72:12
    79:4 87:1,20 91:11
    94:4 96:21 97:2,4,5
    97:8 98:25 112:14
    112:20 113:2 114:3
    114:10
**ordered** 42:15
    46:10 86:12 91:17
**ordering** 15:16
**orders** 113:4,12
**original** 26:9 27:14
    39:17,24 73:8 78:21
    87:10,23
**originally** 88:11
    99:9 100:14
**osh** 4:1
**outset** 72:24
**outside** 13:22
**overarching** 97:4
**overcome** 103:14
    103:15
**overrule** 22:8
**overruled** 40:14
    84:23

**oversight** 114:22
**owned** 14:11
**owner** 55:2

**p**

**p** 3:1,1,23 6:1
**p.m.** 115:13
**page** 12:17,23,25
    15:3,23 20:7 40:10
    50:12 52:1,17 53:11
    58:6 60:11,14,16,16
    60:17 62:21 65:24
    66:5 84:4,4,5,7,11
    86:11 104:16,16
    105:1 112:20 116:4
**pages** 62:20 112:11
    115:5
**paid** 23:10,17,22
    24:8 26:6 92:6
**panacea** 61:23
**panaplea** 105:16
**paper** 16:16
**papers** 7:1,12 56:24
    56:25 71:22 72:9
    93:23
**parade** 36:7
**paragraph** 18:7,13
    52:18 53:8,19 54:21
    57:3 65:21,22 66:9
    66:10,19 102:2,5
    108:14
**paragraphs** 52:19
    65:20 101:15
**parent** 49:14
**park** 3:4 4:10 45:18
**parroting** 21:1
**parse** 72:8
**part** 10:6 11:3
    30:18 58:23 60:11
    69:6,7,8 70:6 72:1
    72:14 73:8 90:15
    105:5 109:22 111:6
**participating** 4:9
**particular** 10:23
    14:2 15:15 16:23
    37:4 38:20 39:2
    49:24 55:5,6 77:20
    78:13,13 80:15,23

    81:5 83:8 84:20
    88:24 90:22 92:15
    94:18 109:16,17,20
    110:4
**particularly** 103:25
**parties** 7:21 11:3
    15:6,20 17:4 52:7
    54:2 61:18 65:15
    66:12,14,21 68:8
    85:7 86:17 112:3,15
**party** 18:3 26:5,5
    31:18 58:7 62:2,2
    66:22 85:12 86:21
    92:19
**party's** 85:7,9,10
**pass** 14:14
**path** 14:25
**pattern** 86:24
**pause** 17:23 26:11
    50:14,16,21 67:8
    78:18 85:18 99:23
    111:8
**pay** 45:6,9,10 92:11
**payment** 22:20,23
    23:7,21 24:8,11
    91:22 92:1
**pedal** 102:14
    106:10
**people** 18:23 24:14
    35:15 36:6,7 37:13
    48:13 58:18 63:1
    74:15 94:5,8 109:5
    114:9
**people's** 18:24
**perceived** 101:11
**percent** 91:24
**percentage** 19:15
    23:1 24:16
**percentages** 29:10
**period** 109:6
**periods** 58:8
**permit** 22:10
**permitted** 62:18
**person** 66:19 75:2
    89:25 91:23
**person's** 30:14

**personal** 70:3 93:5
**personally** 53:21
**perspective** 19:12
  57:9
**pertain** 20:2
**pertains** 20:2 62:22
**pertinent** 75:11
**petition** 9:14,19,21
  13:21 87:11,23 88:5
  88:19 90:25
**petitions** 71:4
**ph** 55:6,12 60:8
  61:23 76:18 84:10
  86:10
**phillips** 2:1 4:2 6:5
  6:23 7:4 9:13 10:13
  10:23 11:7 20:14
  23:17 51:3,17,21
  53:4,14 58:21 60:19
  62:17,23 63:1 66:1
  66:7 70:25 71:3
  75:5,9,19,20 88:4
  89:10,21 90:8 91:12
  91:17 92:8 96:21
  104:7,25
**physical** 71:5
**physician** 41:16
**pin** 57:18
**pivot** 25:6
**place** 68:15
**plainly** 17:22
**plaintiff** 14:1 39:2,7
  41:8,9,11,14 42:4
  44:10 80:17 104:1
  104:10
**plaintiff's** 41:12
  77:12 89:7 95:17
  101:12
**plaintiffs** 4:17 5:2
  9:13 10:11 34:9
  35:25 42:10 46:3
  62:23,25 63:15
  75:15 88:11,20
  95:15 114:18
**plan** 31:19,21 53:1
  53:5,10

**plans** 53:1
**plate** 66:15
**plausibility** 99:12
**plausible** 99:24
  107:4
**playboy** 84:3 85:2
  108:12 109:13
**plead** 82:1
**pleaded** 82:1
**pleading** 57:6 60:3
  94:15 100:7,12
**pleadings** 19:5,9
  20:24 82:13
**please** 6:2,4 9:7
  16:24 17:1 20:11
  26:11 49:1 67:8
  73:20 74:25 78:18
  85:18 108:9 114:13
  115:2
**plenty** 45:19 90:24
**plight** 56:8
**point** 15:2,22 16:22
  17:12 19:5,11,21
  21:3 22:22,24 23:3
  23:23 25:6,13 30:10
  31:6 33:19,19 38:17
  38:20 41:3 46:23
  47:5 51:24,25 58:23
  61:4 62:7 64:2 65:6
  65:12 67:15,17
  68:23 71:19 72:11
  73:23 74:19 84:8
  88:8 92:6,9 96:25
  97:6 109:3,6,12
  111:4
**pointed** 51:12 63:17
  65:20 75:12 102:23
**pointing** 19:25
  69:25
**points** 7:20 67:17
**policy** 90:4 92:20
**pontiac** 103:3
**pontiac's** 91:1
**pontiacs** 102:12
**portions** 12:3 16:14
**posed** 64:4

**positing** 61:11
**position** 9:17 13:16
  14:20 16:6 17:19
  43:1 47:4,6,7,23
  56:13 62:15,19
  86:19 88:10 105:13
**possible** 18:24
**possibly** 36:3 41:17
  104:6 113:12
**postulate** 68:1
**potential** 41:25
  78:11
**potentially** 41:10
  42:3 70:12 102:7
**powledge** 3:18 4:2
  6:6 9:13,16,22
  10:11 11:8,23 13:7
  13:16,20 14:5 15:25
  19:6 20:14 22:19
  23:3 28:19,24 31:7
  33:22 34:1 37:1,7
  37:25 43:1
**powledge's** 10:12
  11:12 28:12 34:7
**powlege** 44:25 45:9
  45:23 47:5 51:2,3
  51:22 54:9 63:19
  69:4 73:24 74:3,11
  75:6,15 77:23 78:5
  89:10 91:2 93:3
  97:6,24 106:6 111:7
**powlege's** 44:22
  48:16 51:13 52:9
  71:3 89:15 90:25
**practicalities** 92:10
**practiced** 84:12
**pre** 62:22,24 75:14
  101:12,16 104:9
**preamble** 15:24
**precedent** 64:20
  84:16,17
**preceding** 80:10
**prefer** 108:21
**preferred** 57:22
  58:25
**prejudice** 42:23
  47:17

**prejudiced** 10:1
  47:14 83:9 89:15
**prejudices** 47:19
**premise** 38:12
**premised** 57:13
**preparation** 39:14
**prepared** 14:16
  56:16 59:14 78:23
  112:11,17
**preparing** 39:12
**prepetition** 7:4
  31:12
**presale** 74:15
**presence** 93:22
**present** 18:8 27:11
  29:1 92:25 93:22
  94:19 113:24
**presentation**
  100:13
**presented** 21:7 61:6
  72:15,16 74:21 75:7
  107:2
**presenting** 17:3
  83:10 89:11
**presents** 75:4
**press** 106:10
**presumes** 95:16
**pretty** 81:3 95:12
**previous** 105:25
  106:1
**previously** 15:11
  17:4 95:23 107:9
**price** 19:20
**primarily** 73:6
**principal** 26:14
  54:12 55:16 85:22
  86:4
**principals** 56:6
**prior** 9:14 14:3,5
  20:21 32:25 34:2
  51:13 54:6 56:14
  58:20 66:13 80:5,6
  86:25 88:15 94:22
  96:21 101:7
**private** 19:22,25
**probably** 9:9 45:7
  91:10,13

[problem - record]                                                      Page 18

**problem**  72:2 76:10
82:20
**procedural**  89:2,3
**procedure**  47:2
87:15
**procedures**  10:6
11:2,3 36:24 51:6
54:18
**proceed**  42:5
103:19
**proceeding**  14:9
22:13 92:8 98:20
105:3
**proceedings**  70:24
71:1 86:15,20 95:3
115:13 117:5
**process**  30:4 35:18
38:15 42:23 47:1,18
61:25 62:1 74:14
86:16 89:15
**procter**  3:17
**produce**  30:11 81:9
**produced**  9:18
43:22 78:6 80:24
86:24 87:9
**producing**  14:3
46:10 47:8 80:25
**product**  44:3 47:10
78:3 80:7,17 83:3,4
83:7,10 93:9
**production**  107:15
**profoundly**  49:13
**progress**  113:3
**prohibit**  46:10
**promised**  114:7
**promote**  68:7
**prong**  62:8
**pronunciation**  55:7
**proof**  52:8,8 59:2
59:21 63:14 64:3
69:18,19 102:21,25
103:21 107:5
**proofs**  52:3,14
53:12
**properly**  99:17
**proposition**  26:2
55:9 109:10

**prospective**  18:18
18:20
**protect**  18:22 21:22
**protection**  48:15
**prove**  43:4,18 44:3
47:11,14 48:18
82:22 83:12
**provide**  10:1,9
15:10 16:3 31:17
33:13 38:2 61:10
77:24 81:14 84:1
91:11 92:14 95:23
101:18 107:18
113:9
**provided**  9:22 21:1
25:4 30:25 33:5
36:11,24 41:8 44:10
45:23 46:25 77:9
81:6 87:2 96:19
102:25 103:1,2
109:21
**provides**  45:8
**providing**  35:4 38:2
**provision**  18:21
19:23 39:4 48:5
66:24 111:3,5
**provisions**  24:9,12
41:4 48:6 65:7,8,10
65:22 67:10
**public**  19:24 46:14
53:24 60:9 90:4
101:21 103:23
**publicly**  17:6 80:3
**pull**  20:11 40:5
74:24 108:9
**purchase**  23:1
26:10
**purchaser**  19:22
27:5
**purchasers**  18:18
18:20 34:19
**purely**  56:10,10
**purpose**  14:16
18:21 43:8,11,14
59:14 69:1 93:8
**purposefully**  43:20

**purposes**  12:3 87:7
106:2,2
**pursuant**  52:25
97:8
**pursue**  57:8 60:19
75:17
**push**  76:5
**put**  48:13 61:15
63:9 72:21 76:9
79:6,8 82:22 93:1
95:7 106:9 107:1,11
107:16,23 111:5
113:21
**puts**  66:16 99:4
**putting**  107:4

**q**

**quacks**  27:17
**question**  15:3 19:4
23:10 29:24 33:15
53:3 54:20 56:17
62:5 71:16 81:22
85:20 93:13,17
96:18 103:25
104:20
**questions**  9:4 49:9
56:16 64:23
**quick**  79:19
**quickly**  93:19
**quipped**  100:25
**quite**  22:8 57:1
**quote**  60:11,16 85:2
86:12,19
**quoting**  85:8

**r**

**r**  1:20 3:1 6:1 45:17
57:17 116:3 117:1
**raise**  7:17 113:20
**raised**  69:18 78:24
**rate**  22:20,23 23:1,7
23:21 24:8,11,23
**reach**  35:10
**reached**  41:6
**reaching**  34:3 71:14
**read**  7:1 18:6 40:13
52:19 67:2 89:24
107:20

**reading**  17:25 50:9
67:5 73:22 108:24
**reads**  37:12 68:12
**real**  43:23 72:12
82:16 89:9,9
**realize**  110:23
**really**  43:17 44:2,5
81:6 86:8 92:22
109:9 110:4
**rearguing**  110:17
**reason**  24:6 43:9
47:7 68:7 72:11
74:9 107:15 113:10
**reasonable**  107:13
**reasons**  16:6 45:22
48:7 58:4 62:10
64:18 68:20 90:4
**recall**  60:5,6,8
63:19 71:23,25 72:3
73:5,9,14 75:6,7,11
102:15
**recalled**  102:12,19
**recalls**  72:6 77:16
78:10,11 87:25
90:16,24
**receipt**  53:9
**receive**  52:22,24
53:6,7 99:19
**received**  19:6 20:15
21:5 69:7,8
**recipient**  85:12,13
**recitation**  88:18
**recite**  55:13
**reclamation**  54:11
**recognize**  84:23
**recognizing**  55:1
**reconsideration**
99:10,16
**record**  12:2 19:24
29:8,16,17 40:23
45:12 46:14 50:23
51:23,24 53:24 54:1
60:9 90:15 103:24
105:5,6,18 106:19
106:21 107:1
114:15 116:5,7
117:4

**recover** 7:7
**recovery** 8:1 69:10
  69:22
**reduced** 22:19 23:3
  23:8,24,25 46:21
**reduction** 50:7
**reductions** 23:25
**refer** 24:8 54:2 59:6
  60:14 62:6 63:25
  98:21
**reference** 27:21
  52:9 53:18,23 60:3
  101:14 109:14,21
**referenced** 51:7,11
  69:20 94:18 95:23
**references** 36:23
  80:13 82:15
**referencing** 102:25
**referred** 28:8 65:20
  76:16
**referring** 26:20,22
  55:15 67:13
**refers** 52:4 58:13,14
**reflect** 17:14,16
**reg** 1:3
**regard** 7:16 24:20
  65:14 67:20 75:19
  77:4 85:16 87:5
  109:1,13 112:4,9
**regarding** 35:1 37:6
  38:21 83:25 87:25
  89:7
**regret** 114:21
**reiterates** 60:15
**rejected** 26:16
**related** 14:3 48:12
  78:9 80:20,21,22
  104:10 112:13
**relates** 68:17
**relating** 66:14
**relationship** 51:13
**release** 16:3 36:13
  37:6 53:18 65:22
**released** 7:8 66:8
**releasing** 28:20
  36:11 65:23

**relevance** 21:24
  61:11
**relevant** 21:12
  67:17,25 81:10,11
  93:17 111:15
  113:23 115:4
**reliance** 82:2 85:23
**relief** 2:1 7:3 30:10
  33:13 34:10,12
  37:25 45:9,23 57:13
  57:22 58:3,9,25
  60:22 61:3 76:12
  79:5,5 83:14 87:19
  88:7,11,15 91:7,12
  94:14 96:9 103:11
  110:3
**relies** 42:7
**rely** 89:5 93:23
**relying** 85:12
  105:23 106:3
**remainder** 12:22
**remaining** 51:11,16
  107:12
**remains** 35:3
**remedy** 29:5 30:3
  89:13,14
**remiss** 49:11
**removal** 20:21,24
**removed** 100:15
**renamed** 63:22
**renewal** 45:18
**reopen** 106:19
  116:5
**reopened** 62:17
**reopening** 62:11
**repeat** 48:25
**repeated** 106:25
**repeatedly** 58:15
**replace** 87:18 89:4
**replacement** 73:10
  73:12
**replevin** 54:11
**replies** 39:17
**reply** 39:19,19,24
  55:4 57:21 61:24
  65:25 66:5 73:16
  77:1 82:7 84:2 87:2

98:11 100:11
  108:13,16
**report** 60:8 80:2
**reporter** 117:13
**reports** 81:15
**represent** 51:21
  58:18,18 70:25
  75:18
**representation**
  81:12 95:25 110:4
**representations**
  65:13,16 77:24
**represented** 38:7,11
  63:1 73:23 75:24
  104:11
**representing** 62:24
  70:23
**represents** 28:20
  31:2 66:20 75:14
**request** 8:23 25:11
  25:12 61:11 81:17
  106:22
**requests** 9:16 61:7
  61:14,14,18 64:4
  80:11 81:6,7 96:19
  100:20
**require** 36:18 37:17
  44:13
**required** 6:24 10:9
  33:13 44:15 47:13
  92:11 107:6 113:15
**requirement** 81:24
  93:21
**requirements** 6:25
  98:15
**requires** 59:1 60:24
  60:25
**res** 74:10,13 76:7
**resemblance** 103:4
**reservations** 76:18
**reserve** 40:15 63:3
**resolution** 12:24,24
**resolve** 13:17 33:16
**resolved** 23:15
  35:18 91:19
**resolving** 2:2 50:18
  106:2

**respect** 20:15 51:8
  52:10 59:23 63:2
  64:4 65:6 71:8,13
  74:6,15 76:8 79:17
  92:15 94:6,8 97:4,5
  97:24 98:4,5 111:2
**respectfully** 20:18
  30:13 42:13 50:9
  54:8 56:23 58:4
  61:5 63:16 79:23
  80:16 81:2 84:16
  90:7 94:1
**respective** 66:21
**respond** 40:3,4,8
  70:15 76:2,16 79:12
  82:3,9 107:14
**responded** 61:8
  96:20
**response** 21:2 30:13
  40:19 61:9 75:8
  94:20 104:3 107:23
  108:18
**responsive** 71:16
  81:9
**rest** 56:16 64:22
**restatement** 85:8
  86:3
**result** 15:17 31:4
  34:16 39:7 41:17
  43:20 78:5
**resulted** 30:17
  90:24
**results** 22:2 42:23
**retained** 56:13
**return** 30:23
**reverse** 28:19 30:16
**reversed** 26:17,21
  56:5
**review** 49:8 63:6
  87:11,15,17,18,19
  87:23 89:4
**reviewing** 99:15
**revisiting** 110:14
**revoke** 98:6
**revoked** 98:1,4
**rhetoric** 49:19

[ride - settlement]                                                                            Page 20

ride   36:1
rides   38:1
right   6:17 16:12
    17:15,22 20:4 21:6
    21:15 23:20 24:6
    25:1 27:10 31:1
    33:7 35:21 36:10
    40:17 47:1 49:4
    55:15 63:4 67:14
    73:15 74:2 79:13,14
    79:21 82:11,12,19
    90:1 93:12 96:15
    98:9 101:3 106:5,16
    110:7,12 115:8
rights   8:5 26:13
    40:15 46:15,16 54:9
    54:10 55:17 58:7
    62:1 76:19 86:16
rise   113:20
risk   21:18 22:1,9,14
    35:1
rjm   98:22
road   34:18 76:20
    117:21
robert   1:21
robust   107:5
room   24:14 76:17
rothschild   55:13
rough   13:8
rubin   3:7 6:15,15
    6:17 16:22,24,25
    17:20 18:1 20:5,6,7
    20:12 21:8 22:7
    38:7 40:1,4,5,7,11
    49:5,6 50:19,21
    56:20,21 59:10,15
    59:19 60:13 65:1,10
    65:20 67:16 69:6
    70:18,22 71:20
    73:22 74:23,25 75:1
    76:24,25 78:18
    98:12,25 100:2,4
    105:9,15,24 106:6
    106:17 107:8,22
    108:4,5 111:15
rubin's   7:20

rudnick   5:1 114:17
rule   41:21 51:20
    55:13 57:11,12,15
    57:16 58:2,9,24
    60:22 61:3,22 64:8
    64:12,14 82:21,21
    83:5 84:25 86:13
    87:17 89:2,3 90:8
    95:2,16,17 96:8
    97:2 98:16,16,18,21
    99:2,8,11,12,12,16
    99:22 100:6,7,7
    101:25 103:18,19
    103:21 107:21
ruled   7:11
rules   31:17 39:4,4,5
    47:2,2 83:8 86:22
    95:3,4
ruling   25:9
rulings   7:13
run   75:9 103:6

s

s   3:1 5:6 6:1 86:9,9
sale   9:11 16:20
    24:25 46:6 48:5,11
    53:22 101:13,16
sample   36:25
sat   88:1
satisfaction   81:24
satisfactory   112:7
satisfied   53:14 62:4
satisfy   101:24
saturn   102:16
save   108:24
saw   7:19 90:14
saying   8:19 9:25
    14:19 19:11 24:24
    27:20,24 31:25
    32:12,18,20 33:10
    37:24 38:8,14 56:23
    58:12 67:21,23 69:1
    71:6 78:16 79:3,4,8
    79:23 81:5 82:6
    83:9 85:14 86:23
    87:9 97:21 98:1
    99:14,23 100:17
    105:8,11,20

says   15:23 18:13
    36:10 44:8,23 45:5
    46:15 52:2,18 53:8
    55:8 57:19,20 65:25
    66:10,19 67:1,18
    87:3 95:20 99:4,16
    101:9 102:6,8
    105:20 106:9
scale   49:19
schmidt   4:21
school   95:10,11
scott   3:15 6:11
scratch   8:21 13:9
seat   93:13
seats   6:2
second   7:15 8:1
    12:16,19 15:7 37:16
    42:19 44:23 50:14
    56:3 57:21 61:1
    63:9 64:15 66:3
    70:20 83:25 85:4,8
    86:11 88:9,16,22
    93:14 98:22 99:1,16
    109:5
secondary   33:7
    34:15 35:12,19,23
    36:4
securities   53:6
see   7:9 12:23 13:9
    17:16 27:23 36:7
    40:13 42:19 50:25
    54:13 57:2 59:15
    61:25 68:12 70:9
    71:12 96:5 111:4,13
    112:21 113:24
seek   80:19,21,21
    89:13
seeking   9:16 34:9
    34:12 48:15 51:21
    71:4 86:23 87:19
    88:5 91:2,8
seeks   75:17
seen   17:13 53:21
    112:10
seldomly   75:1
self   66:17

sell   18:23 35:19
    36:1 89:25 90:1
seller   19:22 54:10
    54:22,24
selling   31:18 32:23
    34:15
seneca   84:9
sense   46:25
sent   10:24
separate   44:25
    50:20,25 104:15
series   50:19 61:6
    63:25 101:15
serious   41:16 42:3
    86:15
set   2:3 31:5 42:3
    52:25 53:10 58:4
setting   42:17 78:2
    81:9 109:15
settle   8:9,20 35:10
    68:2,3
settled   8:12 16:3,10
    19:15 37:11 44:11
    52:14,16 68:19
    69:21,23 87:1
settlement   2:2 8:17
    8:17 11:5,5,6 12:1
    12:18,25 13:17 15:4
    15:8,16,18,21 16:2
    19:6,16,18 25:1,2,5
    28:12,14,16 29:1,3
    30:15,17,18 31:2,4
    31:7,10,14,16 32:24
    32:24 33:1,5,6,8,14
    33:16 34:3 35:10,22
    36:9,18,21,25 37:1
    37:12,17,19,22
    38:21 39:6 41:6,24
    42:4,8,18 43:3
    44:20,21,23 45:1,4
    45:4 46:16,17 47:15
    49:22 50:1,12,12,17
    51:11 52:2,18,21
    53:8 54:15 62:3,11
    62:17 65:7,11,14,18
    65:25 66:6,10,11,17
    66:17,20,23 67:1,3,

67:7,20,22 68:14,18
69:16 75:17 83:14
85:15 86:14 87:4,20
88:5,15 89:22 91:16
91:19 92:2,4,7,23
96:7,21 97:7,7,15
97:15 98:3,7,7
101:8 103:9 106:3
109:15,17,20,23
110:5
**settlements** 46:21
67:11 68:7 86:13
97:4,13,23,24
**settling** 91:4
**seven** 5:3
**seventy** 13:3,13
29:21
**shade** 13:1
**sheindlin** 28:5
**sheindlin's** 26:16
**sherri** 2:25 117:3
117:12
**shifted** 35:3
**shoes** 89:21
**short** 112:8
**shortly** 87:24
**shot** 96:6
**show** 12:5 24:7,7
76:11 81:25 102:12
107:10
**showed** 65:8
**showing** 59:1 81:23
99:25
**showings** 98:1
**shown** 79:15 82:11
82:25 102:8
**shows** 34:8 61:7,10
**sic** 13:14 30:1 54:11
**side** 13:10 112:22
**sided** 9:6
**sides** 9:5 107:19
**sign** 37:2
**signed** 13:14 15:5
37:14 111:7
**significance** 41:25
41:25 105:22

**significant** 68:13
**significantly** 34:17
**silent** 31:14
**similar** 38:25 55:23
55:24 77:15 78:9
80:7
**similarly** 55:20
**simply** 50:10 78:15
86:12 90:20 105:12
105:18
**simultaneously**
40:18
**singular** 8:2
**sit** 6:5 103:2
**site** 75:10,10
**sits** 58:7
**sitting** 76:15 87:13
**situated** 58:20
**situations** 86:5
**six** 13:13
**skim** 76:18
**slapped** 69:20
**snatches** 76:18
**soft** 75:2,2
**sold** 7:5,7,25 16:8
17:19 21:15,25
22:25 25:19 31:8
32:4,20
**sole** 55:2
**solely** 71:1 111:20
**solution** 42:24
**solutions** 117:20
**somebody** 7:8 23:10
105:20,21
**somebody's** 12:7
**sophisticated** 85:21
**sorry** 27:25 47:21
49:13 52:19 57:4
59:10 75:1 76:3
83:21 97:18 105:1
108:10
**sort** 26:2,10 35:10
37:21 90:5 101:22
113:20 114:14
**sought** 71:5 80:11
88:6,6,11

**sound** 47:12
**sounds** 30:6
**south** 2:25 117:3,8
**southern** 1:2 20:21
26:23 55:8,21,25
**spalding** 3:9 6:12
**spaulding** 38:21
40:24 44:8 45:13,20
45:21 63:3 64:6,16
68:12,13 107:15,23
**speak** 17:13
**speaker** 85:6
**speaks** 57:10
**specific** 52:16 55:9
64:4 66:8 80:11
**specifically** 47:18
54:20 95:4
**specificity** 91:10
**specifics** 81:16
**speed** 78:6 80:19
**spell** 57:17 86:9
**spend** 9:9
**spent** 25:8
**spirited** 14:13
**spoken** 75:2,2
**square** 5:3
**stand** 55:8 61:12
62:14 109:9 112:3
**standard** 15:20
68:15 98:17 99:13
100:7
**standing** 7:18,24
8:5 24:4 33:11
55:22 56:6,10 76:11
103:9,14 113:20
**stands** 26:1 67:20
**stare** 74:11,12 76:8
**start** 24:3 109:6
**started** 23:23
**starting** 7:18
**state** 37:16 87:12,24
**stated** 7:12 19:5
30:10 62:19 85:24
**statement** 36:13
47:4 49:24 78:21
99:2 105:10,11,12

**statements** 90:20,21
96:3 106:1
**states** 1:1
**statute** 109:2
**stay** 22:13 57:6,7
60:3 77:10 99:11
100:12
**steel** 5:6 114:12,14
114:15,16,17,24
**steinberg** 3:14 6:11
6:11,14 12:9 16:16
17:13,25 18:2,6,9
18:12 19:19 21:8
22:7 40:1,11,12
58:16 63:10 65:2,3
66:5 67:8,12,15
69:15,25 70:17,21
71:18,19 72:22 73:2
73:4 74:19 75:12
76:22,23 101:3
103:8 107:22,25
108:7,10,22,23
109:1 111:14,25
112:2 113:19 114:2
114:5,8,25 115:3,4
**steinberg's** 53:17
58:15
**step** 42:24 89:21
98:16
**stepchildren** 11:7
**stepped** 102:14
**stipulated** 74:4,6,7
74:17
**stipulates** 54:23
**stipulation** 2:2
12:11 15:4 46:22
50:17 66:11,20,23
67:3,7 94:7
**stipulations** 72:7
94:13
**stock** 31:10,12,22
**stoppage** 54:11
**story** 104:15
**strategies** 21:20,21
**strauss** 4:8 6:19
**street** 7:14

**stretch**  64:10
**strongly**  25:20
**stuff**  48:12 81:25
  82:1 98:10
**style**  18:10
**subject**  21:23 37:14
  40:4,7 49:9 51:5
  53:22 54:17 63:19
  66:12 72:7,25 75:6
  77:15 78:12 79:17
  80:8 81:17 90:22
  92:14 95:2,15,25
  96:17 97:2 100:6
  104:12,13 111:18
**submission**  21:11
  63:4 70:16 102:22
  104:24 106:14
  107:14
**submissions**  17:4
  52:6 57:2 105:19
  111:20
**submit**  17:10 40:18
  46:8 58:16 101:23
  103:10,19 104:2,23
**submits**  57:12
**submitted**  9:16 40:2
  52:8 61:23 93:24
  103:7 108:16 110:8
  112:5,6
**submitting**  111:2
  114:22
**subsequent**  27:4,5
  92:4
**subsequently**  28:8
  33:17 34:15 35:9
**substance**  31:17
  69:8,8
**substantially**  10:1
**substantiated**  99:18
**substantive**  65:15
  89:3
**sued**  71:7
**sues**  21:19
**suffered**  49:14
  106:8
**suffering**  41:10

**sufficient**  15:19
  36:21 37:19 55:17
  56:2 82:14 88:24
  107:5
**suggest**  15:9 30:13
  42:13 61:15 90:7
**suggesting**  30:20
  58:7
**suggestion**  88:1
**suggests**  28:11 79:6
**suicide**  81:2 105:3
**suite**  4:3 117:22
**summarizes**  86:19
**summary**  85:6
  98:24,25
**supersedes**  66:13
**supplement**  77:11
**supplemental**  70:15
**support**  16:7 70:7
  93:21
**supporting**  60:25
  62:6
**supports**  17:18
**supreme**  38:23,23
  40:25 45:13,16
  57:11 93:5
**sure**  10:7 16:25
  18:2 20:12 23:13
  33:18,20 62:14 65:4
  69:1 74:13 79:19
  86:7,12 91:23 93:18
  98:17 108:5 112:23
  112:24
**surely**  97:9
**surreply**  98:11
**survived**  11:13 71:6
  71:11
**switch**  59:24 60:5
  72:4,6,19,20 73:1,3
  73:4,7,10,12 74:4,7
  74:16 75:12,15,16
  75:23 76:10 77:5
  80:22 94:18 101:21
  104:1,5,10
**sympathetic**  56:8
  103:12

**sympathies**  49:16
**system**  77:21
**systems**  73:11

**t**

**t**  117:1,1
**table**  77:24 79:6
**take**  7:14 12:4,6
  22:11 47:7 62:15
  68:15 69:11 73:16
  88:25 93:24 98:16
  113:5
**taken**  96:3
**takes**  15:25 45:21
  55:5 69:11 81:1
  95:6,19
**talk**  9:10 24:4,4
  47:17 48:4,20 49:21
  70:3 85:23 95:20
**talked**  19:7 26:20
  46:7 71:20 72:24
**talking**  9:9 16:18
  21:10 24:11 27:17
  29:10,12 37:5,21
  44:20 47:17 70:10
  74:10 83:4
**talks**  27:17 37:3
  53:17 113:14
**tapping**  38:9
**target**  93:25 101:4
**targets**  106:25
**technically**  57:25
**tell**  18:4 29:18
  32:10 35:7 48:24
  99:6 107:23
**telling**  91:14 97:10
**tells**  35:11
**ten**  48:23 58:8 88:2
**tend**  16:7
**tended**  43:4
**tendering**  91:22
**tens**  38:6
**tenth**  24:14
**term**  109:17,20
**terms**  7:23 37:4
  53:1 58:20 67:2,6
  69:11 70:4,13 79:22
  80:19 82:14 101:14

105:18
**test**  60:23 62:9
  72:14 99:3
**testimony**  82:15
  93:20 107:6
**texas**  20:21 52:10
  69:18 71:4 87:12,15
  87:18 90:1 100:14
  104:4
**thank**  6:14,21 9:9
  22:17 49:3,6 64:24
  65:1 73:15 76:1,25
  77:3 83:22 98:9,12
  106:15 110:7
  111:22 114:24
  115:7,12
**themes**  60:15
**theories**  72:10
**theory**  59:24,25
  63:17 72:17 105:3
  106:4,13
**thereto**  66:14
**thing**  15:22 19:21
  50:3 56:21 58:10
  61:21 66:3,8 67:15
  67:22,24 104:18
  109:7 110:10
  114:11
**things**  12:10 14:14
  26:24 40:14 43:11
  48:25 60:24 63:7,11
  77:6 94:19 100:19
  100:21,23 101:9,10
  101:11,17 104:6
  113:23
**think**  9:10 10:14,19
  12:13 15:22 21:12
  22:18,20,22,25 23:6
  23:20 24:6,24 25:6
  25:22 26:1 27:3
  30:9 33:3 37:23
  44:12 45:12 46:5,23
  47:1 49:14 56:19
  59:16 65:21 67:16
  67:21,25 68:3,10,11
  68:16 70:17 71:17
  72:12,16,23 82:9,10

**times** 3:19 5:3 7:1
10:17 11:24 23:1
34:7 104:19
**timing** 8:24 24:5
56:16,17 57:15
103:16
**title** 54:9 55:17
**today** 7:9 14:8,10
14:11 47:11 53:21
61:24 89:21 90:21
101:6 102:10,19
103:2 105:5 106:19
107:21 111:11
**today's** 33:24 59:18
76:11 107:25
**told** 48:24 57:6 60:3
60:6,18 112:22
**top** 13:8
**torque** 73:7
**tort** 10:4 35:17,24
55:10,18 56:2 90:2
**torts** 10:9 85:20
**toss** 36:21
**total** 29:19
**totally** 8:15 38:6,12
72:1,1 73:9
**toys** 26:15,21 28:3
**tradeoff** 48:8
**traders** 38:11
**trading** 21:20,21
**tragedies** 70:3
**tragedy** 49:13
**tragic** 103:12
**transaction** 19:8
26:8 30:21 32:16,22
33:20 35:4 68:9
**transactions** 34:14
**transcribed** 2:25
**transcriber** 117:9
117:13
**transcript** 22:5 57:3
60:14,16,17 82:15
112:11 115:6 117:4
**transcripts** 102:24
**transfer** 16:19 17:5
17:10 26:4 46:19
49:22,25 50:4 53:20

**times** / **transfer** column ends above; continuing first column:

**86:19 88:12 90:23**
91:9 96:25 97:3,11
100:21 101:10
102:2 107:25
108:23 111:5
113:13
**thinking** 59:9 81:19
105:16
**third** 26:5,5,15,17
26:25 48:25 64:6
**thought** 17:17
23:14 27:24 29:15
71:22 73:22 93:20
113:22
**thousand** 13:4
29:22
**thousands** 38:6
**thread** 23:6
**three** 7:11 11:10
39:23 51:10,16
60:24 63:7,11 64:18
72:14 82:10 86:6
88:13 102:16
112:11
**threshold** 62:20,25
75:24 103:15
104:13
**thrust** 71:21
**thursday** 108:1
**time** 9:9,20,21
10:10 20:25 22:11
25:4,8 36:17 37:8
40:8 41:15 42:12
49:1,2 51:24 58:8
64:12 70:24,25
77:18 79:24 80:14
80:14,25 88:17
91:21 97:6 100:8,22
104:22,23 106:12
109:6 110:20 114:7
**timeline** 9:11 87:5
88:13
**timeliness** 87:5 88:8
88:25
**timely** 8:23 14:20
109:7,10

**53:25 54:3,5,16**
55:10,18,24 56:2
103:10
**transferred** 50:7
52:23 53:4 54:14
**transferring** 54:5,9
54:24 55:16
**transit** 54:11
**treated** 92:5
**treatment** 31:19
**trial** 109:24
**tried** 37:23
**triggered** 11:2
**true** 26:25 77:18,19
95:6,17,19 105:22
108:3 117:4
**truly** 96:4
**trust** 19:5 20:22
30:7,11 33:21,25
34:11 36:4 38:11
45:1,10,11 47:12
52:8 53:5,7 57:1
58:5 59:7 62:13,18
63:18 64:23 75:4
88:4 89:7 91:18
92:10,19 97:21
103:24 107:13
**trust's** 17:8 20:8
40:7 58:6 97:22
**trustees** 86:10
**truth** 105:13
**try** 49:8,18 77:4
89:21
**trying** 7:21 14:24
20:3 30:6 32:10
39:6 43:2 96:16
**tuesday** 108:1,2,15
**turn** 12:14,16 26:4
**turned** 32:14 33:5
33:17 68:19 110:1
**twice** 85:25 113:17
**two** 9:14 11:11,14
11:23 13:13 14:5
18:5 21:21 24:15
29:21 31:22 34:6
39:17,23 43:11
51:13 55:6 63:14

**79:13,14,21 86:5**
88:13 94:2 100:21
100:23 101:17
108:14,24
**tx** 4:4
**type** 72:1,6 76:10
**types** 31:23

## u

**u** 116:3
**u.s.** 1:12,22 57:18
**uh** 20:19
**ultimate** 8:16
**ultimately** 76:4,6
**umbrella** 92:20
**unanswered** 104:19
**unclean** 25:19
**unconditional**
67:19
**uncontrolled** 78:6
80:19
**undercurrents**
89:18
**underlying** 14:4
26:8,12 27:6,6,12
29:3 30:17 34:24
35:2 43:10,23 47:11
59:25 61:19 69:16
69:17 73:8 75:16
77:8,13 78:3,15
83:4,6,7 86:14,20
95:8 96:5,17 100:20
**undermine** 35:23
**undermined** 38:1
**undermining** 16:5
**underpinning**
26:17
**undersigned's** 67:2
**understand** 7:2,21
7:24 8:4,18 9:1
21:18 26:8 27:16
32:17 39:13 48:8
53:25 56:13 61:22
83:16,22 96:14
101:22 104:12
111:1 114:1
**understanding** 8:2
51:19 67:5 70:24

75:4,13,22 105:6
**understands** 54:22
**understood** 24:2
  59:10 72:25 77:18
  78:19 111:22
  113:16,19 114:10
**undertaking** 113:15
**undertakings** 66:13
**undervalued** 47:25
**undo** 30:21 44:22
  87:20 88:5 89:21
**undue** 62:9,12
**unfortunate** 84:17
**unidentified** 85:6
**unilateral** 37:5
**unimaginable**
  49:15 56:9
**unintended** 37:18
**unintentional** 36:20
**unique** 42:23
**unit** 4:9 6:19
**united** 1:1
**units** 38:11 53:7
**unknown** 25:4
  36:11 65:23 66:1,4
  66:7,8 85:24
**unliquidated** 28:17
  50:6 53:12
**unreasonable** 32:16
  32:18
**unsecured** 10:4
  13:12,12 32:2,7,13
  50:8 52:16 54:14
**unsecureds** 31:12
  31:22,22
**unsubstantiated**
  61:2 99:5 103:23
**unsupported** 99:20
**untimely** 57:23
**unvalued** 34:17
**upside** 38:6
**urban** 45:18
**usa** 102:9,19
**use** 8:1
**useful** 81:20
**uses** 66:7 101:20

**usually** 9:4 87:20

### v

**v** 38:21 45:17 63:3
  64:6 84:10 86:10
**vacate** 7:22 8:8
  72:13
**vacated** 75:18
**vacating** 109:18
**valuation** 32:25
**value** 9:24 10:2
  16:2 28:19 33:23
  34:2 35:2,2,21 36:2
  38:3 39:7 43:2,18
  44:6 45:11 65:25
  66:6 87:1 96:21
**valued** 16:5 33:24
  37:11
**valuing** 37:9
**variety** 16:6 45:22
**various** 8:9
**varying** 8:10
**vehicle** 43:12,17
  45:3 60:7 63:18,23
  75:5,9,11,11 77:13
  78:3,5,8,12 79:16
  80:9,23 81:18 90:23
  94:19 95:15,25
  96:17
**vehicles** 79:17 91:2
**venire** 101:20
**veritext** 117:20
**version** 17:10
**versus** 40:24 55:13
  64:16 98:22
**victim** 76:9
**view** 26:18 42:14
**vin** 81:13
**violated** 62:3
**violating** 19:25
**violation** 21:15
  42:23 47:18 61:25
  78:23 79:3 86:16
  89:15
**violations** 14:18
**violative** 111:16
**vis** 22:9,9 23:15,15
  94:13,13

**void** 33:15,16 37:19
  86:13 87:4 91:16
  92:7
**voidable** 85:13
**voided** 47:16
**voiding** 92:2
**volucus** 60:8
**voluntarily** 66:25
**voluntary** 67:22

### w

**wait** 60:4 110:17
**waive** 30:1 107:24
**walks** 27:16
**wandered** 76:14
**want** 16:22 17:11
  17:21 21:14,17,24
  22:6,9 24:21 33:21
  33:23 34:19 43:7
  45:7 51:22 57:7
  73:16 78:14 83:25
  87:6 91:15 92:2
  98:16,21 104:18
  108:18,19 111:10
  111:11,14,20
  112:23
**wanted** 19:21 79:24
  84:25 96:23,24
  105:5,18 108:12
  109:3,12 112:19
  113:24
**wants** 17:9 18:24
  24:7,8 40:15 45:25
**ward** 55:23 56:1
**warrant** 67:2
**warrants** 28:24
  31:8,8,11,13,23
  33:5,18,24 35:19,25
  36:4 44:16 45:11
**washington** 45:18
**way** 11:9 22:13
  24:25 32:23 34:20
  38:22 82:10 85:3
  90:9,13 95:1 101:12
  107:8 112:24
**ways** 89:6,9
**we've** 12:17 15:25
  19:7 29:9 30:9

33:12 81:5 102:4
**weeks** 7:11 102:16
**weintraub** 3:23 6:8
  6:9 7:10,13 22:15
  22:16,17 23:11,13
  23:20 24:6,13,24
  29:14 49:12 62:24
  73:17,18,20,21 74:2
  74:12 75:14,18,24
  76:2,5,13,21 91:9
  91:14 93:14 96:22
  96:24 97:11,14,18
  97:25 98:5 100:5
  104:11 110:9,13,14
  110:19 111:1,9,22
**weisfelner** 114:19
**went** 11:4 46:3
  65:10 71:22 95:11
**westlaw** 84:4,6
**whatsoever** 103:4
**whichever** 108:21
**whitewashed** 28:14
**whitewashing**
  25:18,24
**wholesale** 54:16
**wholly** 63:12
**willful** 61:16
**william** 3:23 6:8
**willing** 26:7 30:1
  42:3
**winfrey** 18:10
**wire** 77:21 84:9
**wiring** 102:7
**wish** 36:14
**withdraw** 25:12
**withdrawing** 25:10
**withheld** 94:5 101:6
  101:19,22
**witness** 14:13 110:1
**wold** 4:16
**woman** 11:12
**word** 25:22 66:8
**words** 19:10 66:2
**work** 28:18 77:4
  95:1 102:14
**working** 83:24

**[world - à]**                                                    Page 25

| | à |
|---|---|
| **world**  113:13 | **à**   22:9 23:15 94:13 |
| **worth**  33:23 44:16 | |
| 94:2 | |
| **wreck**  41:6,17 43:8 | |
| 43:10 44:2 70:6 | |
| 78:15 93:2 | |
| **writing**  15:5 106:14 | |
| 108:18 111:21 | |
| **written**  40:19 52:17 | |
| 112:4 | |
| **wrong**  7:13 71:22 | |
| 81:4 109:6 | |
| **wrongful**  10:8 26:3 | |
| 27:7 35:8,17,24 | |
| 51:9 52:10 | |
| **wrongly**  8:19 | |
| **wrote**  21:3 66:6 | |

| x |
|---|
| **x**   1:4,10 46:17 116:1 |

| y |
|---|
| **yackoff**  86:10 |
| **yeah**  20:6 27:16 |
| 50:21 71:17 96:14 |
| **year**  56:3 57:24 |
| 58:8 77:10 84:14,21 |
| 85:19 88:23 103:3 |
| 109:2,8 |
| **years**  9:14 14:5 |
| 80:9 88:12,14 94:5 |
| 95:10 102:13 |
| **yield**  73:16 |
| **yielding**  70:19 |
| **york**  1:2,14,14 3:5 |
| 3:12,19,21 4:11,19 |
| 5:4 26:23 36:19 |
| 37:16 55:9,14,22 |
| 67:9 84:12,13,22 |
| 90:1 109:14,14 |

| z |
|---|
| **zero**  90:16 |
| **zillion**  82:21 |
| **zimmerman**  38:21 |
| 40:24 63:3 64:6,16 |