# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel:  (212) 556-2100
Fax:  (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial:  212-556-2158
asteinberg@kslaw.com

May 22, 2015

**VIA E-MAIL TRANSMISSION**
**AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York  10004

Re:    In re Motors Liquidation Company, *et al.*
       Case No. 09-50026 (REG)

**Letter Regarding Update on Related Proceedings**

Dear Judge Gerber:

King & Spalding LLP is co-counsel with Kirkland & Ellis LLP for General Motors LLC ("**New GM**") in the above-referenced matter.  Pursuant to Your Honor's Endorsed Order dated May 5, 2015 [Dkt. No. 13131], we write to update the Court regarding developments in proceedings relating to New GM's Motions to Enforce.  Specifically, today, May 22, 2015, counsel to New GM and Lead and Liaison Counsel filed a joint letter addressed to Judge Furman to advise matters of possible significance in proceedings related to MDL 2543, which includes updates on: (i) the *Phillips-Powledge* matter being heard by Your Honor, (ii) the competing draft proposed judgments filed in connection to Your Honor's April 15, 2015 Decision, and (iii) the correspondence filed in connection to Your Honor's Endorsed Order dated May 15, 2015 [Dkt. No. 13147] regarding the letter dated May 13, 2015 from Gary Peller, Esq. ("**May 22, 2015 Joint Letter**").  A copy of the *May 22, 2015 Joint Letter* is attached hereto.

Respectfully submitted,

*/s/ Arthur Steinberg*

Arthur Steinberg

Honorable Robert E. Gerber
May 22, 2015
Page 2

AJS/sd
Encl.

cc:    Edward S. Weisfelner
       Howard Steel
       Sander L. Esserman
       Jonathan L. Flaxer
       S. Preston Ricardo
       Matthew J. Williams
       Lisa H. Rubin
       Keith Martorana
       Daniel Golden
       Deborah J. Newman
       Jamison Diehl
       William Weintraub
       Steve W. Berman
       Elizabeth J. Cabraser
       Robert C. Hilliard

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, Illinois 60654

Andrew B. Bloomer, P.C.
To Call Writer Directly:
(312) 862-2482
andrew.bloomer@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

May 22, 2015

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:  *In re: General Motors LLC Ignition Switch Litigation,*
> 14-MD-2543 (JMF)

Dear Judge Furman:

Pursuant to this Court's Order No. 8 § V, Lead and Liaison Counsel and counsel for General Motors LLC ("New GM") submit this joint written update to advise the Court of matters of possible significance in proceedings related to MDL 2543.

First, on April 22 and April 23, 2015, the United States District Court for the Southern District of Texas entered, respectively, a one-sentence order denying New GM's motion to stay pending JPML determination and a two-sentence order granting plaintiffs' motion to remand to the 152nd Judicial District Court of Harris County, Texas, in *Stevens, et al. v. General Motors LLC, et al.*, No. 2015-04442 (Harris County, Tex.). On May 18, 2015, the *Stevens* plaintiffs filed a motion for sanctions against New GM arising from the removal of the action. Copies of the remand order and order denying a stay are attached hereto as Exhibits 1–2, respectively, and a copy of plaintiffs' motion is attached hereto as Exhibit 3. New GM's response is due on June 16, 2015. The Honorable Robert Schaffer (to whom the case was assigned after the case was remanded and consolidated with the Texas MDL), will hear argument on the motion on **June 19, 2015**.

Second, on May 7, 2015, the Honorable Robert E. Gerber heard argument on the Rule 60(b)(6) Motion filed in the Bankruptcy Court by plaintiff in *Phillips-Powledge* (MDL No. 1:14-cv-08540), which was the subject of the parties' April 23, 2015 joint letter to the Court. (*See* Doc. No. 863.) On May 12, 2015, New GM and Motors Liquidation Company GUC Trust ("GUC Trust") jointly filed a letter with the Bankruptcy Court addressing a case cited by counsel for the *Phillips-Powledge* plaintiff at the May 7, 2015 hearing. A copy of the joint letter is attached hereto as Exhibit 4. Also on May 12, 2015, the *Phillips-Powledge* plaintiff filed a letter in the Bankruptcy Court regarding an assignment agreement concerning plaintiff's claim, and on May 13, 2015, New GM and the GUC Trust jointly filed a letter response to plaintiff's letter.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
May 22, 2015
Page 2

Copies of plaintiff's letter, the assignment agreement referenced therein, and New GM and the GUC Trust's joint letter are attached hereto as Exhibits 5–7, respectively.

Third, on May 11, 2015, the Honorable Lisa Rau denied New GM's unopposed motion for entry of the MDL 2543 Coordination Order in *Gilbert v. General Motors LLC, et al.*, No. 140500140 (Philadelphia County, Pa.), a personal injury action alleging ignition switch defects in a 2010 Chevrolet Cobalt. A copy of the order is attached hereto as Exhibit 8. The order encourages the parties "to work to ensure an efficient, nonburdensome and nonduplicative discovery process" but states that the court intends "to maintain and control its own docket, discovery process, and case management deadlines." The order also confirms deadlines set out out in the court's prior case management order, which provides for a trial readiness date of June 6, 2016. A copy of the case management order is attached hereto as Exhibit 9.

Fourth, on May 12, 2015, the parties filed competing draft proposed judgments and letter briefs in the Bankruptcy Court regarding Judge Gerber's April 15, 2015 Decision on New GM's Motions to Enforce. Copies of the papers filed by New GM, the GUC Trust and Participating Unitholders, plaintiffs in *Groman v. General Motors LLC*, No. 14-01929 (Bankr. S.D.N.Y.), and Designated Counsel are attached hereto as Exhibits 10–13, respectively.

Fifth, on May 13, 2015, New GM served amended and supplemental responses to plaintiffs' discovery requests in *Felix, et al. v. General Motors LLC*, No. 1422-CC09472 (City of St. Louis, Mo.). A copy of New GM's responses is attached hereto as Exhibit 14. On May 20, 2015, counsel for the *Felix* plaintiffs notified New GM of their intention to file a motion for sanctions against New GM related to New GM's amended and supplemental responses, as previously suggested in an April 23, 2015 letter to counsel for New GM. The *Felix* plaintiffs' letter sent April 23, 2015 was sent in response to New GM's correspondence confirming that the *Felix* plaintiffs had access to documents in the MDL Document Depository. Copies of New GM's letter and the *Felix* plaintiffs' letter are attached hereto as Exhibits 15–16, respectively. A hearing on the motion has not been scheduled, though may take place as early as **June 2, 2015**. On May 18, 2015, counsel for the *Felix* plaintiffs served a cross-notice of deposition for six of the MDL 2543 deponents and have appeared at certain of those depositions via telephone. A copy of the notice is attached hereto as Exhibit 17. New GM will update the Court promptly of any developments in *Felix*, including whether this Court's assistance will be necessary.

Sixth, on May 14, 2015, plaintiff filed a notice of hearing on his motion for an expedited trial date in *Miller v. General Motors LLC, et al.*, No. CACE-15-002297 (Broward County, Fla.), which was the subject of the parties' April 10, 2015 joint letter to the Court. (*See* Doc. No. 833.) A copy of the notice is attached hereto as Exhibit 18. The motion is currently set for submission on **June 2, 2015**. Today, New GM filed both an opposed motion for entry of the MDL 2543 Coordination Order and a response to plaintiff's motion for an expedited trial setting. Copies of

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
May 22, 2015
Page 3

New GM's motion and response to plaintiff's motion are attached hereto as Exhibits 19–20, respectively.  The parties will request the motions be set for oral argument at a mutually agreeable date.

Seventh, on May 15, 2015, Judge Gerber issued an endorsed order directing New GM to respond to a May 13, 2015 letter filed by counsel for plaintiffs in *Bledsoe* (MDL No. 1:14-cv-07631), *Elliott* (MDL No. 1:14-cv-08382), and *Sesay* (MDL No. 1:14-cv-06018), regarding non-Threshold Issues objections to New GM's Motions to Enforce.  A copy of plaintiffs' letter and Judge Gerber's endorsed order are attached hereto as Exhibits 21–22, respectively.  On May 21, 2015, New GM filed a response to plaintiffs' letter.  Counsel for plaintiffs' subsequently filed a request for leave to file a reply to New GM's response.  Copies of New GM's response and plaintiffs' request for leave are attached hereto as Exhibits 23–24, respectively

Eighth, on May 18, 2015, the Honorable Victor Ludwig heard argument on New GM's motions for entry of the MDL 2543 Coordination Order and a protective order in *Mathes v. General Motors LLC*, No. CL12001623-00 (Augusta County, Va.), which was the subject of the parties' January 30 and February 13, 2015 joint letters to the Court.  (*See* Doc. Nos. 565, 588.)  Judge Ludwig requested supplemental briefing regarding his authority to order coordination and how coordination would operate in practice.  The parties' briefing is to be complete by June 15, 2015.  No further argument has been scheduled.  Judge Ludwig has deferred ruling on New GM's motion for a protective order until after ruling on the coordination issue.

Ninth, on May 19, 2015, the Honorable Guy Tomlinson entered the MDL 2543 Coordination Order in *Licardo v. General Motors LLC*, No. 03236 (Fulton County, N.Y.).  A copy of the order is attached hereto as Exhibit 25.

Tenth, on May 28, 2015, the Honorable Melodie Clayton will hear argument on plaintiffs' and New GM's separate motions for leave to serve discovery in *Pate, et al. v. General Motors LLC, et al.*, No. 14A-2712-1 (Cobb County, Ga.).  Copies of plaintiffs' motion, New GM's response, and plaintiffs' reply are attached hereto as Exhibits 26–28, respectively.  In their reply brief, plaintiffs—represented by MDL Executive Committee member Lance Cooper—challenge and attack for the first time coordination under this Court's Joint Coordination Order.  Copies of New GM's first and second motions are attached hereto as Exhibits 29–30, respectively.

Eleventh, pursuant to Order No. 1 § X.8, the Defendants' July 21, 2014 Status Letter (Doc. No. 73) included an Exhibit A listing cases consolidated to date in MDL 2543, as well as an Exhibit B listing related cases pending in state and federal court, together with their current status.  For the Court's convenience, updated versions of Exhibits A and B are attached hereto as Exhibit 31.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
May 22, 2015
Page 4

      Finally, the parties continue to work to ensure that the Court is provided with current and correct contact information for presiding judges in actions listed in the aforementioned Exhibit B.  To that end, the Federal/State Liaison Counsel intends to shortly submit to the Court updates, if any, to the e-mail addresses of the presiding judges in Related Actions.

                          Respectfully submitted,

                          /s/ Richard C. Godfrey, P.C.
                          /s/ Andrew B. Bloomer, P.C.

                          *Counsel for Defendant General Motors LLC*

cc:    The Honorable Robert E. Gerber
       Lead Counsel for Plaintiffs
       Federal/State Liaison Counsel
       Plaintiff Liaison Counsel
       Counsel of Record for Defendants

# Exhibit 1

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Pg 8 of 588
Case 1:14-md-02543-JMF   Document 979-1   Filed 05/22/15   Page 2 of 2

Case 4:15-cv-00628   Document 27   Filed in TXSD on 04/23/15   Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ZACHARY  STEVENS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-628 |
| | § | |
| GENERAL MOTORS LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING**
**PLAINTIFFS' MOTION TO REMAND**

The Court, having considered the plaintiffs Motion for Remand (Dkt. No. 6), the

evidence, any response by the defendants, and arguments of counsel, concludes that the plaintiffs

Motion should be granted. The Court lacks diversity jurisdiction because the DDH Investments

of South Texas, Inc. d/b/a Saturn of Houston is an appropriate defendant.

It is therefore ORDERED that Plaintiffs' Motion to Remand this action to the 152nd

Judicial District Court of Harris County, Texas is **GRANTED**.

It is so ORDERED.

SIGNED on this 23rd day of April, 2015.

_____
Kenneth M. Hoyt
United States District Judge

# Exhibit 2

09-50026-mg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Pg 10 of 588
Case 1:14-md-02543-JMF    Document 979-2    Filed 05/22/15    Page 2 of 2

Case 4:15-cv-00628    Document 26    Filed in TXSD on 04/22/15    Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ZACHARY  STEVENS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-628 |
| | § | |
| GENERAL MOTORS LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING THE DEFENDANT GENERAL MOTIORS LLC'S
MOTION TO STAY**

The Court, having considered the defendant, General Motors LLC's Motion to Stay (Dkt.

No. 17), the evidence, the plaintiffs' response, and arguments of counsel, concludes that the

defendant's Motion should be denied.

It is therefore **ORDERED** that defendant General Motors LLC's Motion to Stay is

**DENIED**.

It is so **ORDERED**.

SIGNED on this 22nd day of April, 2015.

_____
Kenneth M. Hoyt
United States District Judge

# Exhibit 3

**CAUSE NO. 2015-04442**

| | | |
|---|---|---|
| ZACHARY STEVENS, LISA STEVENS, MARK STEVENS, MARIA LANDAVERDE, Individually, on behalf of the ESTATE OF MARIANO ELIAS LANDAVERDE, and on behalf of JANELLY LANDAVERDE, SAUL LANDAVERDE, AND MARIANA LANDAVERDE, Minors, SONIA LANDAVERDE, YESENIA MARQUEZ, AND ALFREDA ELIAS RESENDIZ, | § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| GENERAL MOTORS, LLC, DDH INVESTMENTS OF SOUTH TEXAS, INC. d/b/a SATURN OF HOUSTON, INC., AND MANUEL FERNANDEZ, | § § § § § § | |
| *Defendants.* | § | **152nd  DISTRICT COURT** |

## PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT GENERAL MOTORS, LLC

COME NOW Plaintiffs, Zachary Stevens, Lisa Stevens, Mark Stevens (hereinafter, "Stevens Plaintiffs"), Maria Landaverde, Individually, on behalf of the Estate of Mariano Elias Landaverde, and on behalf of Janelly Landaverde, Saul Landaverde, and Mariana Landaverde, Minors, Sonia Landaverde, Yesenia Marquez, and Alfreda Elias Resendiz (hereinafter "Landaverde Plaintiffs")(collectively referred to as "Plaintiffs"), filing this Motion for Sanctions against General Motors, LLC ("New GM"), respectfully showing the Court as follows:

# I.
# **BACKGROUND**

1. On July 12, 2006 Stevens Plaintiffs purchased their 2007 Saturn Sky, VIN 1G8MB35B57Y103556 ("Subject Vehicle") from Defendant DDH Investments of South Texas, Inc. d/b/a Saturn of Houston, Inc. ("Saturn of Houston").[1]

2. On November 15, 2011 Zachary Stevens was driving the Subject Vehicle on FM 1485 when he lost control of the vehicle and crashed into Mariano Landaverde. Mr. Landaverde died.

3. After New GM's 2014 recalls, on January 27, 2015 Plaintiffs filed their Original Petition and Request for Disclosure in the 334th District Court in Harris County, Texas.

4. On March 6, 2015 there was an email discussion between counsel for New GM, Saturn of Houston and Plaintiffs' counsel concerning whether Stevens Plaintiffs' Subject Vehicle was purchased from Saturn of Houston and whether Saturn of Houston was a proper party.[2]

5. As part of this email discussion Plaintiffs' counsel provided the original sales receipt for the Subject Vehicle showing that the Subject Vehicle was in fact purchased at Saturn of Houston's dealership. The sales receipt demonstrates that Saturn of Houston is a proper party and that there is diversity jurisdiction.

6. Despite receiving Exhibit A, Stevens Plaintiffs' sales receipt, New GM filed a Notice of Removal on March 10, 2015.[3] New GM's basis for removal solely relied upon **fraudulent** joinder.[4]

7. New GM argued that Saturn of Houston was fraudulently joined for the express purpose of avoiding complete diversity and was not a proper party. "Because Saturn of Houston did not sell, inspect, repair, alter, or maintain the subject vehicle."[5] This statement was false and New GM had the document to demonstrate its falsity prior to its March 10, 2015 filing.

---

[1] Exhibit "A."
[2] Exhibit "B."
[3] Exhibit "C."
[4] *Id.*, New GM's Exhibit "A," attached to its *Notice of Removal*, at 4-5.
[5] *Id.*

2

## II.
## RULES

### A. Texas Rules of Professional Conduct.

A lawyer **shall not knowingly** make a **false statement** of material fact to a tribunal.[6] Moreover in the course of litigation, a lawyer shall not take a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter.[7]

### B. TEX. R. CIV. P. 13 and TEX CIV. PRAC. & REM. CODE § 10.001.

The signing of a pleading or motion as required by the TEXAS RULES OF CIVIL PROCEDURE constitutes a certificate by the attorney that to the attorney's best knowledge, information, and belief, formed after reasonable inquiry, that the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation.[8]

## III.
## ARGUMENT

New GM violated Rule 3.02 and 3.03 of the TEXAS DISCIPLINARY RULES FOR PROFESSIONAL CONDUCT as well as §10.001 of the TEXAS CIVIL PRACTICE & REMEDIES CODE. As evidenced by the above timeline, New GM made false statements of material fact to both this Court and the United States District Court for the Southern District of Texas, Houston Division.

Four days before New GM filed for removal it was in possession of Stevens Plaintiffs' receipt showing they purchased the Subject Vehicle from Saturn of Houston.

---

[6] TEX. DISCIPLINARY RULES FOR PROF'L CONDUCT R. 3.03(a)(1).
[7] TEX. DISCIPLINARY RULES FOR PROF'L CONDUCT R. 3.02.
[8] TEX. CIV. PRAC. & REM. CODE 10.001.

New GM knew that this receipt destroyed its diversity jurisdiction argument and prevented the case from being removed to federal court. New GM didn't care and removed the case anyways. Following its removal New GM also attempted to issue a tag-along notice that would transfer Plaintiffs' case to the federal MDL pending in the Southern District of New York.[9] New GM's tag-along attempt further cost Plaintiffs' time and money.

**A. New GM's willingness to ignore the Rules cost Plaintiffs time and money.**

As a result of New GM's willingness to ignore the Rules and proceed with its fraudulent joinder removal Plaintiffs were forced to file the following documents:

**Filings in SDTX:**

1.  Plaintiffs' Motion for Remand[10];

2.  Plaintiffs' Certificate of Interested Parties[11];

3.  Plaintiffs' Reply to New GM's Response in Opposition to Plaintiffs' Motion for Remand[12];

4.  Plaintiffs' Response to New GM's Motion to Stay[13];

**Filings in MDL:**

5.  Plaintiffs' Opposition to Conditional Transfer Order[14];

6.  Plaintiffs' Motion to Reinstate[15];

7.  Plaintiffs' Motion to Vacate[16]; and

---

[9] Exhibit "D."
[10] Exhibit "E."
[11] Exhibit "F."
[12] Exhibit "G."
[13] Exhibit "H."
[14] Exhibit "I."
[15] Exhibit "J."

8.  Plaintiffs' Brief in Support of their Motion to Vacate.[17]

Each of the above listed filings contained exhibits, proposed orders, and are original to this case. These are not generic or "form" filings easily formatted, but required much time and effort by undersigned and his staff. And they were completely unnecessary. Judge Hoyt granted Plaintiffs' Motion for Remand after the substantial briefing outlined above.[18]

### B.  The Court has jurisdiction to impose sanctions.

The Court is free to impose sanctions concerning the above statements in New GM's Notice of Removal and its conduct and intent in seeking a removal based in bad faith. In *Boyaki v. John M. O'Quinn & Associates, PLLC*, 01-12-00984-CV, 2014 WL 4855021, at *19 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, pet. filed) the First Court of Appeals upheld the 190th District Court, J. Kerrigan, for sanctioning lawyers that removed an action in bad faith.[19] The sanctioned lawyers appealed, arguing that the state court lacked jurisdiction over their removal, and that only the SDTX (as in our case, J. Hoyt) could sanction their conduct. *Boyaki*, 2014 WL 4855021, at *19. The lawyers made the same arguments to the trial court, but Judge Kerrigan disagreed and sanctioned the lawyers.[20] The *Boyaki* court upheld the sanctions:

> Similarly, here the court found in its sanctions order that Boyaki, Hernandez and Ramos 'filed their Notices of Removal in the U.S. District Court for the purposes of harassment and/or delay and to prevent this Court from proceeding with a scheduled hearing on a Temporary Injunction request.' While the federal district court was in the best position to determine if federal jurisdiction existed—

---

[16] Exhibit "K."
[17] Exhibit "L."
[18] Exhibit "M."
[19] Exhibit "N."
[20] Exhibit "O."

> which it found did not—the state court may determine if the
> circumstances surrounding a removal indicate that it a filing was
> made for the purpose of disruption and delay in the state court.

*Boyaki*, 2014 WL 4855021, at \*19.

The *Boyaki* court also cited *In re Bennett,* 960 S.W.2d 35, 40 (Tex.1997) (orig.proceeding) (per curiam) for the proposition that state courts *do retain* jurisdiction after removal for assessing pre-removal conduct that is sanctionable. ("[W]e conclude that state courts retain jurisdiction after removal of a case to federal court to sanction lawyers for pre-removal conduct so long as the sanction does not operate upon the merits of the underlying action.").

New GM's conduct is sanctionable, and the Court should impose appropriate sanctions.

## VI.
## EXPENSES AND ATTORNEY'S FEES

The Court may award to a party prevailing on a motion under Section 10.001 of the TEXAS RULES OF CIVIL PROCEDURE the reasonable expenses and attorney's fees incurred in presenting or opposing the motion, and all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation.[21] As a result of New GM's attempted removal Plaintiffs' have incurred $10,587.50 in attorneys' fees. These fees are solely the result of New GM's wrongful removal.

Without sanctions New GM will continue to make false misrepresentations of material fact to the Court with no fear of reprimand. Sanctions are imposed to secure the parties' compliance with the rules, punish those that violate the rules, and deter other

---

[21] TEX. CIV. PRAC. & REM. CODE 10.001.

6

litigants from violating the rules.[22] New GM's conduct is a textbook example of behavior that is sanction worthy. There is no doubt that New GM's statements to the Court in its Notice of Removal were false and intended to inconvenience and harass Plaintiffs.

## V.
### CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiffs move for appropriate sanctions and costs in an amount equal to the time and effort Plaintiffs' counsel spent on these matters, and for such other and further relief Plaintiffs may be justly entitled.

Respectfully submitted,

**JOSH DAVIS LAW FIRM**

By: ___/s/ Joshua P. Davis_____
        Joshua P. Davis
        State Bar No. 24055379
1010 Lamar, Suite 200
Houston, Texas 77002
(713) 337-4100/Phone
(713) 337-4101/Fax
josh@thejdfirm.com
*Attorney for Plaintiffs*

---

[22] *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992); *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986); Tidrow v. Roth, 189 S.W.3d 408, 412 (Tex.App.--Dallas 2006, no pet.).

7

## CERTIFICATE OF CONFERENCE

I certify that on March 6, 2015 at 4:42 I advised counsel that I intended to seek Rule 13 sanctions relief in the event Defendants did not submit to this case being brought in the 152nd District Court, Hon. R. Schaffer presiding because Saturn of Houston was a proper party.

<div style="text-align: right;">

_____/s/ Joshua P. Davis_____
Joshua P. Davis

</div>

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing has been served on all parties and/or counsel of record in accordance with the TEXAS RULES OF CIVIL PROCEDURE on May 18, 2015 as follows:

***Via E-Service via ProDoc2***
Kyle H. Dreyer
Giovanna Tarantino Bingham
Pryce G. Tucker
HARTLINE DACUS BARGER DREYER LLP
8750 North Central Expressway, Suite 1600
Dallas, Texas 75206
Fax (214) 369-2118
e-mail: kdryer@hdbdlaw.com
         gtarantino@hdbdlaw.com
         ptucker@hdbdlaw.com

***Via E-Service via ProDoc2***
Darrell L. Barger
HARTLINE DACUS BARGER DREYER LLP
1980 Post Oak Blvd., Suite 1800
Houston, Texas 77056
Fax (713) 652-2419
e-mail: dbarger@hdbdlaw.com

***Via E-Service via ProDoc2***
Thomas J. Leibowitz
One Sugar Creek Cntr. Blvd., Ste. 880
Sugar Land, Texas 77478
Fax (281) 565-6465
e-mail: tombear99@aol.com
         elmocarter@sbcglobal.net

<div style="text-align: right;">

_____/s/ Joshua P. Davis_____
Joshua P. Davis

</div>

# Exhibit 4

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Lisa H. Rubin
Direct: +1 212.351.2390
Fax: +1 212.716.0790
LRubin@gibsondunn.com

May 12, 2015

VIA ECF AND ELECTRONIC MAIL

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

Re:     *In re Motors Liquidation Co.,* et al., Case No. 09-50026 (REG)
        Amended Motion of Doris Powledge Phillips for Relief from, or to Set Aside, the
        August 9, 2010 Stipulation and Settlement Resolving Claim No. 44614

Dear Judge Gerber:

At the May 7, 2015 hearing on the amended motion of Doris Powledge Phillips for relief
from, or to set aside, the August 9, 2010 Stipulation and Settlement Resolving Claim No.
44614, Mrs. Phillips's counsel raised for the first time a 1962 decision from the Supreme
Court of Minnesota, *Spaulding v. Zimmerman,* 263 Minn. 346 (1962). Because that case had
not been cited in any of Mrs. Phillips's multiple, written submissions, Your Honor granted
any interested parties "the opportunity to file a written response addressing th[e] case."
5/7/15 Hearing Transcript ("Tr.") at 40:18-20. Wilmington Trust Company, as trustee for
and trust administrator of the Motors Liquidation Company GUC Trust (the "GUC Trust"),
and General Motors LLC ("New GM") respectfully submit this joint response.

*Spaulding* does not remotely support Mrs. Phillips's amended motion. *Spaulding* is limited
to its unique facts involving a personal injury settlement on behalf of a minor, which required
court approval.[1] *See Crowe v. Smith,* 151 F.3d 217, 237 n.30 (5th Cir. 1998) (explaining that
*Spaulding* was "an unusual case with a narrow range of factual applicability"); *C.M. ex rel.
P.M. v. Syosset Cent. School Dist.,* No. CV 11–1402 (MKB) (GRB), 2013 WL 5799908, at
*6 (E.D.N.Y. October 25, 2013) ("Because minor plaintiffs 'are wards of [the] court,' . . .
parties must seek judicial approval of the Court before settling an action by or on behalf of a
minor, which approval must be embodied in an order, judgment or decree.").

---

[1]     The lower court in *Spaulding* stated that if the plaintiff was not a minor, the motion to vacate would likely
have been denied. *See Spaulding,* 263 Minn. at 351 ("Except for the character of the concealment in the
light of plaintiff's minority, the Court would, I believe, be justified in denying plaintiff's motion to vacate,
leaving him to whatever questionable remedy he may have against his doctor and against his lawyer.").

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Hong Kong • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

The Honorable Robert E. Gerber
May 12, 2015
Page 2

In *Spaulding*, the minor was injured in an automobile accident and, unbeknownst to him and
his medical team, suffered from an aorta aneurysm that may have been caused by the
accident. Defendants' medical examiner discovered the aneurysm, but neither defendants
nor their counsel disclosed the aneurysm to the plaintiff or his counsel, who agreed to settle
the claim on the eve of trial. 263 Minn. at 349. Nor did defendants reveal the aneurysm to
the court that approved the settlement. Upon discovering his injury years later, the plaintiff
filed a second personal injury suit and moved to vacate the settlement. *Id.* at 350-51. The
Minnesota Supreme Court held that the settlement of the minor's lawsuit was properly
vacated because it had been "shown that in the accident the minor sustained separate and
distinct injuries which were not known or considered by the court at the time settlement was
approved." *Id.* at 353 (citations omitted).

*Spaulding* has absolutely no application here.

- *First*, *Spaulding* did not involve an assignment or transfer of the claim at
  issue. By contrast, it is undisputed here that Mrs. Phillips agreed to transfer
  "all rights, title, and interest" in Claim No. 44614 to Dover Master Fund II,
  L.P. *See* Dkt. 13112, Ex. F (evidence of transfer of claim). Claim No. 44614
  subsumed the lawsuit that was settled. Simply put, Mrs. Phillips has no
  remaining interest in the Claim and has no standing to raise these issues now.
  Mrs. Phillips's lack of standing to challenge the settlement because of the
  assignment disposes of the Amended Motion and renders *Spaulding* irrelevant
  to this case.

- *Second*, unlike *Spaulding*, which turned on "the court's authority to vacate
  settlements made on behalf of minors," 263 Minn. at 352-53, Mrs. Phillips's
  settlement was made on her own behalf for her own alleged losses. *See* Tr. at
  70:22-71:18.

- *Third*, in *Spaulding*, defendants' counsel's concealment of the aneurysm was
  "undisputed." 263 Minn. at 352. Here, by contrast, Mrs. Phillips has been
  given numerous chances, but has not proffered any evidence, much less the
  "highly convincing" evidence required for Rule 60(b) relief, that Old GM
  failed to respond appropriately to discovery requests. Instead, Mrs. Phillips's
  motion is based on unsubstantiated allegations of discovery misconduct. *See
  Coe v. RJM, LLC*, 372 F. App'x 188, 190 (2d Cir. 2010) (summary order)
  (affirming denial of Rule 60(b) motion and explaining that "unsubstantiated
  allegations" unsupported by "affidavits or other evidence" are insufficient).

- *Fourth*, the withheld information in *Spaulding* meaningfully changed the
  plaintiff's understanding of his injuries. *See* 263 Minn. at 351 (describing a

**GIBSON DUNN**

The Honorable Robert E. Gerber
May 12, 2015
Page 3

> doctor's recommendation of "immediate surgery" and his later lawsuit due to
> "the more serious injuries" he discovered). Here, by contrast, Mrs. Phillips
> does not contend that there was any injury to the decedents that was unknown
> to her.

- *Fifth*, no federal court has ever adopted *Spaulding* to grant a Rule 60(b)
  motion. In addition, no court has applied *Spaulding* in the expansive fashion
  that Mrs. Phillips has urged—a view that, if adopted, would vitiate the public
  policy promoting the settlement of cases. *See, e.g.*, *In re Sony Corp. SXRD*,
  448 F. App'x 85, 87 (2d Cir. 2011) ("Public policy favors settlement.").

- *Sixth*, as the settlement in *Spaulding* was with a minor, court approval was
  required, and a main focus of the case was on what *the Court* was told about
  the minor's claim so that the court could properly assess the settlement. Here,
  by virtue of prior orders of the Court, court approval was not required for Mrs.
  Phillips's settlement, and unlike *Spaulding*, there was no Court involvement
  with respect to the settlement.

Thus, far from being "very on point," as Mrs. Phillips's counsel argued at the May 7, 2015
hearing, Tr. at 38:20, *Spaulding* is wholly inapposite. Accordingly, the GUC Trust and New
GM respectfully request that the Court deny Mrs. Phillips's motion.

Respectfully submitted,                              Respectfully submitted,

Lisa H. Rubin                                        Arthur Steinberg

cc: Josh Davis, Esq.
    William Weintraub, Esq.

# Exhibit 5

09-50026-mg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 979-9    Filed 05/27/15    Page 2 of 9
Pg 25 of 588

09-50026-reg    Doc 13142    Filed 05/12/15    Entered 05/12/15 19:40:18    Main Document
Pg 1 of 2



# LAW

<table>
<tr><td>713.337.4100<br>TELEPHONE</td><td>1010 LAMAR, SUITE 200<br>HOUSTON, TEXAS 77002</td><td>713.337.4101<br>FACSIMILE</td></tr>
</table>

JOSH DAVIS
josh@thejdfirm.com
*Board Certified in Personal Injury Trial Law*
*By the Texas Board of Legal Specialization*

May 12, 2015

The Honorable Robert E. Gerber                    ***Via Email and ECF Filing***
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

RE:    In re: Motors Liquidation Company, et al; Case No. 09-50026 (REG); Chapter 11

Plaintiffs' First Amended Rule 60(b)(6) Motion for Relief From August 9, 2010 Stipulation and Settlement Resolving Claim No. [44614], or Alternatively, Rule 60(d) Motion to Set Aside [Doc. No. 13090]

Civil Action No. 3:14-cv-00192; *Doris Powledge, et al. vs. General Motors Corp. et al.;* In the United States District Court for the Southern District of Texas, Galveston Division

Dear Honorable Judge Gerber:

Please find attached a redacted copy of the <u>Assignment</u> that was referenced during our Thursday, May 7, hearing concerning *Plaintiffs' First Amended Rule 60(b)(6) Motion for Relief From August 9, 2010 Stipulation and Settlement Resolving Claim No. [44614], or Alternatively, Rule 60(d) Motion to Set Aside.*

After consultation with counsel for New GM and GUC Trust, the parties have consented and agreed to submit this Assignment but have reserved the right to comment. With the concurrence of the other parties, the Assignment has been redacted to remove the pricing information and certain account information. On that basis, the Assignment is hereby submitted to be part of the record of the May 7 hearing.

JOSH DAVIS LAW FIRM

Honorable Robert E. Gerber
May 12, 2015
Page -2-

      New GM and GUC Trust will send a short letter to the Court regarding the Assignment by close of business tomorrow.

      Thank you.

                  Sincerely,

                  /s/ *Joshua P. Davis*

                  Joshua P. Davis

JPD/kam
Enclosure

cc:    Robert C. Hilliard
       Scott Davidson
       Arthur Steinberg
       Richard C. Godfrey
       Andrew B. Bloomer
       Leonid Feller
       Matt Williams
       Lisa H. Rubin
       Arthur Steinberg
       William Weintraub
       Daniel Golden
       Deborah J. Newman
       Alex Schmidt
       Jonathan L. Flaxe
       Garry Peller

## ASSIGNMENT OF CLAIM

1. Identification of the parties:

Seller:
DORIS POWLEDGE
c/o Faubus & Scarborough LLP
1010 Lamar, Suite 1020
Houston, TX 77002
Tel:    (713) 222-6400
Fax:    (713) 222-7240
Attn:   Dax Faubus

Buyers (collectively, "Buyer"):
DOVER MASTER FUND, L.P. and DOVER MASTER FUND II, L.P.
810 Seventh Avenue, 33rd Floor
New York, NY 10019
Tel :   212-259-4305
Fax :   212-259-4343
Attn :  Vladimir Jelisavcic

2. By this Assignment of Claim ("Assignment"), Seller, its successors and assigns, for good and valuable consideration, the sufficiency of which is hereby acknowledged by Seller, absolutely and unconditionally sells, transfers and assigns unto Buyer, its successors and assigns, all rights, title and interest in and to the claim(s) and any reclamation claim(s) as more fully defined below (the "Claim") of Seller against IN RE MOTORS LIQUIDATION COMPANY, ET AL (F/K/A GENERAL MOTORS CORP., ET AL) ("Debtor"), the debtor-in-possession in the Chapter 11 reorganization case, Case No. 09-50026 (the "Case"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The consideration paid by Buyer to Seller for the Claim is set forth on Exhibit A annexed hereto and made a part hereof. The Claim is defined as, without limitation, all of Seller's right, title and interest in and to any Proofs of Claim (defined below) if filed, or the claims listed on the Schedule (defined below) if no proofs of claim have been filed; all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing, or referred to in, such claim(s) or the Proofs of Claim; all cure amounts paid by Debtor in connection with the assumption of contracts related to such claims(s) or the Proofs of Claim; all rights to receive principal, interest, all rights of stoppage in transit, replevin and reclamation, fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing; and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Seller's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

3. Seller represents and warrants the following:

[X] YES, PROOF(S) OF CLAIM HAVE been duly and timely filed in the Case in the aggregate amount of $250,000,000.00 (the "Proof of Claim Amount") and a true and complete copy of each such proof of claim is attached to this Assignment (collectively, the "Proof of Claim"). The Proof of Claim has not been revoked, withdrawn, or otherwise retracted or modified and no right thereunder has been waived, and all statements in such Proof of Claim are true and correct as of the date hereof. Buyer shall be deemed to be the owner of the Claim in the amount set forth in such Proof of Claim, subject to the terms of this Assignment, and shall be entitled to identify itself as the owner of the Proof of Claim on the records of the Bankruptcy Court.

[ ] NO, a PROOF OF CLAIM HAS NOT been filed in the Case. The agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing the Claims support the filing of a proof of claim against the Debtor in the amount of <Size> (the "Proof of Claim Amount").

4. Seller further represents and warrants that: (a) the Claim is a valid, liquidated and undisputed and non-contingent claim in at least the amount of $2,699,074.08 (the "Minimum Claim Amount") and is or will be listed by the Debtor on its schedule of liabilities and/or any amendments thereto ("Schedule") as such; (b) the Claim is a valid, enforceable claim against the Debtor; (c) no consent, approval, filing or corporate, partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Assignment by Seller; (d) this Assignment has been duly authorized, executed and delivered by Seller and Seller has the requisite power and authority to execute, deliver and perform this Assignment; (e) this Assignment constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms; (f) it has not filed a petition seeking protection under the Bankruptcy Code, or admitted its inability to, or failed to, pay its debts generally as they become due; (g) no payment or other distribution has been received by Seller, or by any third party on behalf of Seller, in full or partial satisfaction of, or in connection with, the Claim; (h) no portion of the Claim has been sold, assigned or pledged to any third party in whole or in part; (i) the Claim is not subject to any factoring agreement; (j) Seller owns and has and is hereby selling to Buyer good and sole legal and beneficial title to the Claim free and clear of any and all liens, security interests, encumbrances or claims of any kind or nature whatsoever; (k) the basis for the Claim is amounts due and owing by the Debtor arising from the Wrongful Death claim filed in the 10th District Court, Galveston County TX as Cause No. 07-cv-1040 and settled in accordance with Stipulation and Settlement Resolving Claim No. [44614, 44615, 44616, 44617] executed on August 9, 2010; (l) true and complete copies of all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing or relating to the Claim will be, at Buyer's option, delivered to Buyer prior to closing of this Assignment and/or maintained in good condition by Seller until the Bankruptcy Court enters a final decree closing the Case and delivered to Buyer within 5 business days of Buyer's request; (m) Seller has no liability or obligation related to or in connection with the Claim or the Case; (n) other than the Proof of Claim, no proof of claim has been or will be filed by or on behalf of Seller in the Case or any related proceeding; (o) no objection to the Claim has been filed or threatened; and (p) the Claim is not subject to any defense, claim or right of setoff, reduction, impairment, avoidance, disallowance, subordination or preference action, in whole or in part, whether on contractual, legal or equitable grounds, that have been or may be asserted by or on behalf of the Debtor or any other party to reduce the amount of the Claim or affect its validity, priority or enforceability.

5. Seller is aware that the consideration being paid by Buyer hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Claim pursuant to any plan of reorganization confirmed for the Debtor. Seller represents that it has adequate information concerning the financial condition of the Debtor and the Case to make an informed decision regarding the sale of the Claim and that it has independently and without reliance on Buyer, and based on such information as Seller has deemed appropriate, made its own decision to enter into this Assignment. Seller is aware that information which may be pertinent to Seller's decision to transfer the Claim is available to Seller and can be obtained from the Bankruptcy Court's files. Seller further represents that it is not and has never been an "insider" of the Debtor (as defined in Section 101(31) of the Bankruptcy Code) or a member of any official or unofficial committee in respect of the Case.

6. Seller acknowledges and agrees that: (a) Buyer currently may have, and later may come into possession of, information relating to the Debtor that is not known to Seller and that such information may be material to Seller's decision to assign the Claim to Buyer ("Seller Excluded Information"); (b) Seller has determined to assign the Claim notwithstanding its lack of knowledge of the Seller Excluded Information;

and (c) Buyer shall have no liability to Seller, and Seller waives and releases any claims that it might have against Buyer with respect to the non-disclosure of the Seller Excluded Information.

7. In the event all or any part of the Claim is either (a) objected to; (b) impaired by the commencement or notice from Debtor of any action or proceeding including, but not limited to any proceeding which seeks to reduce all or part of the Minimum Claim Amount or provide less favorable treatment to the Claim than other unsecured claims, including the timing of payments or distributions; (c) offset, disallowed, subordinated, or otherwise impaired, in whole or in part, in the Case for any reason whatsoever, including, without limitation, pursuant to an order of the Bankruptcy Court (whether or not such order is appealed), or (d) if the Claim is not listed on the Schedule, or listed on the Schedule as unliquidated, contingent or disputed, or listed on the Schedule in a lesser amount than the Minimum Claim Amount (collectively, an "Disallowance"), Seller agrees to immediately repay, on demand of Buyer (which demand shall be made at Buyer's sole option), an amount equal to the portion of the Minimum Claim Amount subject to the Disallowance multiplied by the Purchase Rate, plus interest thereon at 8% per annum from the date hereof to the date of repayment, provided, however, that such a demand by Buyer shall not be deemed an election of remedies or any limitation on any other rights that Buyer may have hereunder or under applicable law. In the event an order is entered in the Bankruptcy Court disapproving the transfer of the Claim, or in the event that the Bankruptcy Court does not substitute Buyer for Seller, Seller agrees to immediately repay, upon demand of Buyer, the consideration paid by Buyer hereunder, plus interest thereon at 8% per annum from the date hereof to the date of repayment.

8.     (a) Seller agrees that in the event Seller receives any payments or distributions or notices with respect to or relating to the Claim, Seller shall (i) accept the same as Buyer's agent, (ii) hold the same in trust on behalf of and for the sole benefit of Buyer, (iii) notify Buyer, at the address identified in paragraph 1 of this Assignment, of receipt of the payments or distributions or notices; and (iv) in the case of cash ("Cash Distribution"), promptly deliver the same forthwith to Buyer (free of any withholding, set-off, claim or deduction of any kind), within 2 business days via Federal Funds Wire to:

                                                                . In the event Seller fails to deliver the Cash Distribution to Buyer within 2 business days of Seller's receipt, Seller shall be obligated to pay Buyer interest on the Cash Distribution at 8% per annum, from the date of Seller's receipt to the date of Buyer's receipt. Moreover, in the event Seller receives a Cash Distribution prior to or at the time of the funding of the consideration to be paid under this Assignment, Buyer shall have the right (at their option) to offset (in whole or in part) the Cash Distribution against the consideration by instructing Seller to retain all or a portion of the Cash Distribution.

         (b) In the case of distributions in the form of securities ("Securities Distribution"), Seller shall (i) immediately notify Buyer, at the address identified in paragraph 1 of this Assignment, of Seller's receipt of such distributions and (ii) immediately deposit such securities in Seller's brokerage account and (iii) instruct the broker to immediately deliver such securities in electronic form to
                                                                ("Buyer Account"). In the event Seller (or Seller's broker) fails to deliver the Securities Distribution to Buyer Account within 5 business days of Seller's receipt, Seller shall be obligated to pay Buyer interest, from the date of Seller's receipt to the date of delivery to Buyer Account, computed as follows: (i) in the case of debt Securities Distributions – at 8% per annum on the face value of the securities; (ii) in the case of equity Securities Distributions – at 8% per annum on the value of the securities stated in the Debtor's disclosure statement.

         (c) Seller agrees to promptly provide Buyer, with copies of all correspondence with respect to the Claim, including but not limited to any cure notices received from Debtor. Seller agrees to promptly and fully follow Buyer's instructions regarding any cure notices. All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger, email or telecopy at or if duly deposited in the mails

by certified or registered mail, postage prepaid, return receipt requested to the Buyer at the address specified in paragraph 1 of this Assignment.

9. Seller agrees to indemnify Buyer from all losses, damages and liabilities, including attorneys' fees and expenses, which result from Seller's breach of any representation, warranty or covenant set forth herein, or any Disallowance of the Claim, including, but not limited to, any action, proceeding, objection or investigation relating to any attempt or threatened attempt to avoid, disallow, reduce, subordinate or otherwise impair the Claim or otherwise delay payments or distributions in respect of the Claim. Buyer does not assume and shall not be responsible for any obligations or liabilities of Seller related to or in connection with the Claim or the Case. In the event Seller has sold or assigned the Claim or any portion thereof to any other person or entity, Seller shall, immediately upon demand by Buyer, pay Buyer liquidated damages in an amount equal to twice the sum of the purchase price paid hereunder and Buyer's costs and expenses (including, without limitation, attorneys' fees and expenses) relating to this Assignment or the Claim.

10. Seller hereby irrevocably appoints Buyer with full power of substitution as its true and lawful attorney and authorizes Buyer to act in Seller's name, place and stead, to demand, sue for, compromise, recover, and transfer to Buyer all such sums of money and securities which now are, or may hereafter become due and payable for, or on account of the Claim herein assigned. Seller grants unto Buyer full authority to do all things necessary to enforce or compromise the Claim and Seller's rights thereunder or related thereto pursuant to this Assignment. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer. Buyer shall have no obligation to take any action to prove, defend, demand or take any action with respect to the Claim or otherwise in the Case. Seller agrees to execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be necessary or appropriate to effect assignment of the Claim and all interests therein to Buyer, to fully assist Buyer in enforcing the Claim and to otherwise effectuate the intent of this Assignment. Seller agrees that Buyer may sell, transfer or assign the Claim, or any portion thereof, together with all right, title and interest of Buyer and all obligations of Buyer in and to this Assignment (the purchaser or transferee of the Claim from the Buyer is defined as the "Beneficial Owner"). In the event Buyer sells, transfers or assigns the Claim, or any portion thereof: (i) Buyer shall have no further obligations to Seller under this Assignment; (ii) Seller shall deal only with the Beneficial Owner of the Claim; (iii) Seller shall only enforce its rights under this Assignment against the Beneficial Owner of the Claim; and (iv) the Beneficial Owner shall have all of the Buyer's rights under this Assignment and related documents.

11. Buyer and Seller irrevocably agree that any action to enforce, interpret, or construe any provision of this Assignment will be brought and determined only in a state or Federal court located in the City of New York, except in the Bankruptcy Court ("New York Courts"). Seller irrevocably and unconditionally consents to personal jurisdiction over Seller by the New York Courts in any action to enforce, interpret or construe any provision of this Assignment, and also hereby irrevocably waives: (a) trial by jury; (b) any defense of improper venue; or (c) forum non conveniens, to any such action brought in the New York Courts. Seller consents to service of process by certified mail at its address listed above. This Assignment shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law principles thereof.

12. The document attached hereto as Exhibit B and incorporated herein by reference may be filed by Buyer with the Bankruptcy Court as evidence of this transfer. Seller grants Buyer the right to: (a) make any corrections to Exhibit B necessary to effect assignment of the Claim; and (b) execute other evidences of transfer that may be necessary to transfer other proofs of claim filed by Seller in the Case. Seller hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Buyer

herein as the valid owner of the Claim. Seller acknowledges and agrees that Dover Master Fund II, L.P. shall be the holder of record of the Claim and shall identify itself as such on the records of the Bankruptcy Court.

13. All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Assignment and the purchase and sale of the Claim and shall inure to the benefit of, be binding upon and enforceable by the parties hereto and Buyer's successors and assigns. A facsimile copy of this executed Assignment shall constitute an original and shall bear the same binding effect as any original signatures. This Assignment may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall constitute one and the same document. This Assignment shall be read and interpreted according to its plain meaning and an ambiguity shall not be construed against either party. It is expressly agreed by the parties that the judicial rule of construction that a document should be more strictly construed against the draftsperson thereof shall not apply to any provision of this Assignment. This Assignment (including the Exhibits attached hereto, the provisions of the Claim Sale Agreement and other documents incorporated into this Assignment by express reference) constitutes the entire understanding between Buyer and Seller and supersedes any previous agreement, verbal or written, between the parties.

14. The parties hereto acknowledge that (i) each entity identified as Buyer in paragraph 1 shall be deemed to have made such representations, warranties, covenants, and agreements set forth herein for as to itself only in the Ownership Percentages set forth on Exhibit A, (ii) the obligations of each Buyer entity herein shall be several (and not joint), and (iii) notwithstanding anything to the contrary in this Assignment, the parties hereby agree that all obligations and liabilities of a party hereunder are enforceable solely against such party and such party's assets and not against any officer, director, trustee, member or limited or general partner of such party or against any assets of any officer, director, trustee, member or limited or general partner of such party.

[SIGNATURES ON FOLLOWING PAGE]

## CONSIDERATION PAID TO SELLER

### Exhibit A

Upon settlement of this transaction, subject to Buyer's verification of Seller's representations and warranties made herein, payment of the Consideration shall be made as follows:

Minimum Claim Amount:

 x Purchase Rate:   _____

Consideration:   _____

Ownership Percentages shall be as follows:

Buyer:   Percentages:   Consideration:

Total   100.00%

# Exhibit 6

## ASSIGNMENT OF CLAIM

1.  Identification of the parties:

Seller:

DORIS POWLEDGE
c/o Faubus & Scarborough LLP
1010 Lamar, Suite 1020
Houston, TX 77002
Tel:    (713) 222-6400
Fax:    (713) 222-7240
Attn:   Dax Faubus

Buyers (collectively, "Buyer"):

DOVER MASTER FUND, L.P. and DOVER MASTER FUND II, L.P.
810 Seventh Avenue, 33rd Floor
New York, NY 10019
Tel :   212-259-4305
Fax :   212-259-4343
Attn :  Vladimir Jelisavcic

2. By this Assignment of Claim ("Assignment"), Seller, its successors and assigns, for good and valuable consideration, the sufficiency of which is hereby acknowledged by Seller, absolutely and unconditionally sells, transfers and assigns unto Buyer, its successors and assigns, all rights, title and interest in and to the claim(s) and any reclamation claim(s) as more fully defined below (the "Claim") of Seller against IN RE MOTORS LIQUIDATION COMPANY, ET AL (F/K/A GENERAL MOTORS CORP., ET AL) ("Debtor"), the debtor-in-possession in the Chapter 11 reorganization case, Case No. 09-50026 (the "Case"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The consideration paid by Buyer to Seller for the Claim is set forth on Exhibit A annexed hereto and made a part hereof. The Claim is defined as, without limitation, all of Seller's right, title and interest in and to any Proofs of Claim (defined below) if filed, or the claims listed on the Schedule (defined below) if no proofs of claim have been filed; all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing, or referred to in, such claim(s) or the Proofs of Claim; all cure amounts paid by Debtor in connection with the assumption of contracts related to such claims(s) or the Proofs of Claim; all rights to receive principal, interest, all rights of stoppage in transit, replevin and reclamation, fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing; and all other claims, causes of action and voting and other rights arising under or relating to any of the foregoing, including, without limitation, all of Seller's rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case.

3.  Seller represents and warrants the following:

[X] YES, PROOF(S) OF CLAIM HAVE been duly and timely filed in the Case in the aggregate amount of $250,000,000.00 (the "Proof of Claim Amount") and a true and complete copy of each such proof of claim is attached to this Assignment (collectively, the "Proof of Claim"). The Proof of Claim has not been revoked, withdrawn, or otherwise retracted or modified and no right thereunder has been waived, and all statements in such Proof of Claim are true and correct as of the date hereof. Buyer shall be deemed to be the owner of the Claim in the amount set forth in such Proof of Claim, subject to the terms of this Assignment, and shall be entitled to identify itself as the owner of the Proof of Claim on the records of the Bankruptcy Court.

[ ] NO, a PROOF OF CLAIM HAS NOT been filed in the Case. The agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing the Claims support the filing of a proof of claim against the Debtor in the amount of <Size> (the "Proof of Claim Amount").

4. Seller further represents and warrants that: (a) the Claim is a valid, liquidated and undisputed and non-contingent claim in at least the amount of $2,699,074.08 (the "Minimum Claim Amount") and is or will be listed by the Debtor on its schedule of liabilities and/or any amendments thereto ("Schedule") as such; (b) the Claim is a valid, enforceable claim against the Debtor; (c) no consent, approval, filing or corporate, partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Assignment by Seller; (d) this Assignment has been duly authorized, executed and delivered by Seller and Seller has the requisite power and authority to execute, deliver and perform this Assignment; (e) this Assignment constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms; (f) it has not filed a petition seeking protection under the Bankruptcy Code, or admitted its inability to, or failed to, pay its debts generally as they become due; (g) no payment or other distribution has been received by Seller, or by any third party on behalf of Seller, in full or partial satisfaction of, or in connection with, the Claim; (h) no portion of the Claim has been sold, assigned or pledged to any third party in whole or in part; (i) the Claim is not subject to any factoring agreement; (j) Seller owns and has and is hereby selling to Buyer good and sole legal and beneficial title to the Claim free and clear of any and all liens, security interests, encumbrances or claims of any kind or nature whatsoever; (k) the basis for the Claim is amounts due and owing by the Debtor arising from the Wrongful Death claim filed in the 10th District Court, Galveston County TX as Cause No. 07-cv-1040 and settled in accordance with Stipulation and Settlement Resolving Claim No. [44614, 44615, 44616, 44617] executed on August 9, 2010; (l) true and complete copies of all agreements, instruments, invoices, purchase orders, proofs of delivery and other documents evidencing or relating to the Claim will be, at Buyer's option, delivered to Buyer prior to closing of this Assignment and/or maintained in good condition by Seller until the Bankruptcy Court enters a final decree closing the Case and delivered to Buyer within 5 business days of Buyer's request; (m) Seller has no liability or obligation related to or in connection with the Claim or the Case; (n) other than the Proof of Claim, no proof of claim has been or will be filed by or on behalf of Seller in the Case or any related proceeding; (o) no objection to the Claim has been filed or threatened; and (p) the Claim is not subject to any defense, claim or right of setoff, reduction, impairment, avoidance, disallowance, subordination or preference action, in whole or in part, whether on contractual, legal or equitable grounds, that have been or may be asserted by or on behalf of the Debtor or any other party to reduce the amount of the Claim or affect its validity, priority or enforceability.

5. Seller is aware that the consideration being paid by Buyer hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Claim pursuant to any plan of reorganization confirmed for the Debtor. Seller represents that it has adequate information concerning the financial condition of the Debtor and the Case to make an informed decision regarding the sale of the Claim and that it has independently and without reliance on Buyer, and based on such information as Seller has deemed appropriate, made its own decision to enter into this Assignment. Seller is aware that information which may be pertinent to Seller's decision to transfer the Claim is available to Seller and can be obtained from the Bankruptcy Court's files. Seller further represents that it is not and has never been an "insider" of the Debtor (as defined in Section 101(31) of the Bankruptcy Code) or a member of any official or unofficial committee in respect of the Case.

6. Seller acknowledges and agrees that: (a) Buyer currently may have, and later may come into possession of, information relating to the Debtor that is not known to Seller and that such information may be material to Seller's decision to assign the Claim to Buyer ("Seller Excluded Information"); (b) Seller has determined to assign the Claim notwithstanding its lack of knowledge of the Seller Excluded Information;

and (c) Buyer shall have no liability to Seller, and Seller waives and releases any claims that it might have against Buyer with respect to the non-disclosure of the Seller Excluded Information.

7. In the event all or any part of the Claim is either (a) objected to; (b) impaired by the commencement or notice from Debtor of any action or proceeding including, but not limited to any proceeding which seeks to reduce all or part of the Minimum Claim Amount or provide less favorable treatment to the Claim than other unsecured claims, including the timing of payments or distributions; (c) offset, disallowed, subordinated, or otherwise impaired, in whole or in part, in the Case for any reason whatsoever, including, without limitation, pursuant to an order of the Bankruptcy Court (whether or not such order is appealed), or (d) if the Claim is not listed on the Schedule, or listed on the Schedule as unliquidated, contingent or disputed, or listed on the Schedule in a lesser amount than the Minimum Claim Amount (collectively, an "Disallowance"), Seller agrees to immediately repay, on demand of Buyer (which demand shall be made at Buyer's sole option), an amount equal to the portion of the Minimum Claim Amount subject to the Disallowance multiplied by the Purchase Rate, plus interest thereon at 8% per annum from the date hereof to the date of repayment, provided, however, that such a demand by Buyer shall not be deemed an election of remedies or any limitation on any other rights that Buyer may have hereunder or under applicable law. In the event an order is entered in the Bankruptcy Court disapproving the transfer of the Claim, or in the event that the Bankruptcy Court does not substitute Buyer for Seller, Seller agrees to immediately repay, upon demand of Buyer, the consideration paid by Buyer hereunder, plus interest thereon at 8% per annum from the date hereof to the date of repayment.

8. (a) Seller agrees that in the event Seller receives any payments or distributions or notices with respect to or relating to the Claim, Seller shall (i) accept the same as Buyer's agent, (ii) hold the same in trust on behalf of and for the sole benefit of Buyer, (iii) notify Buyer, at the address identified in paragraph 1 of this Assignment, of receipt of the payments or distributions or notices; and (iv) in the case of cash ("Cash Distribution"), promptly deliver the same forthwith to Buyer (free of any withholding, set-off, claim or deduction of any kind), within 2 business days via Federal Funds Wire to:

. In the event Seller fails to deliver the Cash Distribution to Buyer within 2 business days of Seller's receipt, Seller shall be obligated to pay Buyer interest on the Cash Distribution at 8% per annum, from the date of Seller's receipt to the date of Buyer's receipt. Moreover, in the event Seller receives a Cash Distribution prior to or at the time of the funding of the consideration to be paid under this Assignment, Buyer shall have the right (at their option) to offset (in whole or in part) the Cash Distribution against the consideration by instructing Seller to retain all or a portion of the Cash Distribution.

(b) In the case of distributions in the form of securities ("Securities Distribution"), Seller shall (i) immediately notify Buyer, at the address identified in paragraph 1 of this Assignment, of Seller's receipt of such distributions and (ii) immediately deposit such securities in Seller's brokerage account and (iii) instruct the broker to immediately deliver such securities in electronic form to

("Buyer Account"). In the event Seller (or Seller's broker) fails to deliver the Securities Distribution to Buyer Account within 5 business days of Seller's receipt, Seller shall be obligated to pay Buyer interest, from the date of Seller's receipt to the date of delivery to Buyer Account, computed as follows: (i) in the case of debt Securities Distributions – at 8% per annum on the face value of the securities; (ii) in the case of equity Securities Distributions – at 8% per annum on the value of the securities stated in the Debtor's disclosure statement.

(c) Seller agrees to promptly provide Buyer, with copies of all correspondence with respect to the Claim, including but not limited to any cure notices received from Debtor. Seller agrees to promptly and fully follow Buyer's instructions regarding any cure notices. All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger, email or telecopy at or if duly deposited in the mails

by certified or registered mail, postage prepaid, return receipt requested to the Buyer at the address specified in paragraph 1 of this Assignment.

9. Seller agrees to indemnify Buyer from all losses, damages and liabilities, including attorneys' fees and expenses, which result from Seller's breach of any representation, warranty or covenant set forth herein, or any Disallowance of the Claim, including, but not limited to, any action, proceeding, objection or investigation relating to any attempt or threatened attempt to avoid, disallow, reduce, subordinate or otherwise impair the Claim or otherwise delay payments or distributions in respect of the Claim. Buyer does not assume and shall not be responsible for any obligations or liabilities of Seller related to or in connection with the Claim or the Case. In the event Seller has sold or assigned the Claim or any portion thereof to any other person or entity, Seller shall, immediately upon demand by Buyer, pay Buyer liquidated damages in an amount equal to twice the sum of the purchase price paid hereunder and Buyer's costs and expenses (including, without limitation, attorneys' fees and expenses) relating to this Assignment or the Claim.

10. Seller hereby irrevocably appoints Buyer with full power of substitution as its true and lawful attorney and authorizes Buyer to act in Seller's name, place and stead, to demand, sue for, compromise, recover, and transfer to Buyer all such sums of money and securities which now are, or may hereafter become due and payable for, or on account of the Claim herein assigned. Seller grants unto Buyer full authority to do all things necessary to enforce or compromise the Claim and Seller's rights thereunder or related thereto pursuant to this Assignment. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer. Buyer shall have no obligation to take any action to prove, defend, demand or take any action with respect to the Claim or otherwise in the Case. Seller agrees to execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be necessary or appropriate to effect assignment of the Claim and all interests therein to Buyer, to fully assist Buyer in enforcing the Claim and to otherwise effectuate the intent of this Assignment. Seller agrees that Buyer may sell, transfer or assign the Claim, or any portion thereof, together with all right, title and interest of Buyer and all obligations of Buyer in and to this Assignment (the purchaser or transferee of the Claim from the Buyer is defined as the "Beneficial Owner"). In the event Buyer sells, transfers or assigns the Claim, or any portion thereof: (i) Buyer shall have no further obligations to Seller under this Assignment; (ii) Seller shall deal only with the Beneficial Owner of the Claim; (iii) Seller shall only enforce its rights under this Assignment against the Beneficial Owner of the Claim; and (iv) the Beneficial Owner shall have all of the Buyer's rights under this Assignment and related documents.

11. Buyer and Seller irrevocably agree that any action to enforce, interpret, or construe any provision of this Assignment will be brought and determined only in a state or Federal court located in the City of New York, except in the Bankruptcy Court ("New York Courts"). Seller irrevocably and unconditionally consents to personal jurisdiction over Seller by the New York Courts in any action to enforce, interpret or construe any provision of this Assignment, and also hereby irrevocably waives: (a) trial by jury; (b) any defense of improper venue; or (c) forum non conveniens, to any such action brought in the New York Courts. Seller consents to service of process by certified mail at its address listed above. This Assignment shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law principles thereof.

12. The document attached hereto as Exhibit B and incorporated herein by reference may be filed by Buyer with the Bankruptcy Court as evidence of this transfer. Seller grants Buyer the right to: (a) make any corrections to Exhibit B necessary to effect assignment of the Claim; and (b) execute other evidences of transfer that may be necessary to transfer other proofs of claim filed by Seller in the Case. Seller hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Buyer

herein as the valid owner of the Claim. Seller acknowledges and agrees that Dover Master Fund II, L.P. shall be the holder of record of the Claim and shall identify itself as such on the records of the Bankruptcy Court.

13. All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Assignment and the purchase and sale of the Claim and shall inure to the benefit of, be binding upon and enforceable by the parties hereto and Buyer's successors and assigns. A facsimile copy of this executed Assignment shall constitute an original and shall bear the same binding effect as any original signatures. This Assignment may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall constitute one and the same document. This Assignment shall be read and interpreted according to its plain meaning and an ambiguity shall not be construed against either party. It is expressly agreed by the parties that the judicial rule of construction that a document should be more strictly construed against the draftsperson thereof shall not apply to any provision of this Assignment. This Assignment (including the Exhibits attached hereto, the provisions of the Claim Sale Agreement and other documents incorporated into this Assignment by express reference) constitutes the entire understanding between Buyer and Seller and supersedes any previous agreement, verbal or written, between the parties.

14. The parties hereto acknowledge that (i) each entity identified as Buyer in paragraph 1 shall be deemed to have made such representations, warranties, covenants, and agreements set forth herein for as to itself only in the Ownership Percentages set forth on Exhibit A, (ii) the obligations of each Buyer entity herein shall be several (and not joint), and (iii) notwithstanding anything to the contrary in this Assignment, the parties hereby agree that all obligations and liabilities of a party hereunder are enforceable solely against such party and such party's assets and not against any officer, director, trustee, member or limited or general partner of such party or against any assets of any officer, director, trustee, member or limited or general partner of such party.

[SIGNATURES ON FOLLOWING PAGE]

## CONSIDERATION PAID TO SELLER

### Exhibit A

Upon settlement of this transaction, subject to Buyer's verification of Seller's representations and warranties made herein, payment of the Consideration shall be made as follows:

Minimum Claim Amount:

 x Purchase Rate:

Consideration:

Ownership Percentages shall be as follows:

| Buyer: | Percentages: | Consideration: |
|--------|--------------|----------------|
|        |              |                |

| Total | 100.00% |
|-------|---------|

# Exhibit 7

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Lisa H. Rubin
Direct: +1 212.351.2390
Fax: +1 212.716.0790
LRubin@gibsondunn.com

May 13, 2015

VIA ECF AND E-MAIL

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

Re:    *In re Motors Liquidation Co.,* et al., Case No. 09-50026 (REG)
       Amended Motion of Doris Powledge Phillips for Relief from, or to Set Aside, the
       August 9, 2010 Stipulation and Settlement Resolving Claim No. 44614

Dear Judge Gerber:

Last night and pursuant to an agreement among the parties, counsel for Mrs. Phillips
submitted to the Court a copy of Mrs. Phillips's Assignment of Claim to Dover Master Fund
II, L.P. (the "Assignment"), a document that was not previously referenced in or attached to
any of Mrs. Phillips's written submissions on the above-captioned motion. *See* Dkt. 13142;
5/7/15 Hearing Transcript ("Tr.") at 110:15-111:21.

The GUC Trust and New GM now jointly submit this letter to demonstrate that the
Assignment unequivocally supports their position. The Assignment, by its own terms,
clearly establishes that Mrs. Phillips does not have standing to seek to vacate the Settlement
nearly five years after its execution. In particular, under the Assignment, Mrs. Phillips
unconditionally assigned all rights to her Claim, which subsumed her prepetition lawsuit
against Old GM. There was no part of or interest in her Claim that was retained by her. In
fact, she expressly agreed (a) not to file any other claims against Old GM, (b) to assign any
other claim she may have against Old GM to Dover, and (c) to distribute any future
recoveries on account of her Claim to Dover. The relevant parts of the Assignment are as
follows:

- Mrs. Phillips "absolutely and unconditionally sells, transfer and assigns unto [Dover],
  its successors and assigns, all rights, title and interest in and to the claim(s) . . . as
  more fully defined below (the 'Claim') of [Mrs. Phillips] against . . . the debtor-in-
  possession in the Chapter 11 reorganization case." Assignment, Paragraph 2.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

The Honorable Robert E. Gerber
May 13, 2015
Page 2

- The term "Claim" includes, "without limitation," "all of [Mrs. Phillips's] right, title and interest in and to any Proofs of Claim if filed . . . ," "all rights to receive principal, interest, . . . fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing," and "all other claims, causes of action . . . and other rights arising under or relating to any of the foregoing, including, without limitation, all of [Mrs. Phillips's] rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing or the Case," which is a defined term referring to the above-captioned case in this Court. *Id.*

- Mrs. Phillips acknowledges that she filed a $250 million Proof of Claim, as attached to the Assignment, and agrees that "[Dover] shall be deemed to be the owner of the Claim in the amount set forth in such Proof of Claim, subject to the terms of this Assignment . . . ." *Id.*, Paragraph 3. The Proof of Claim specifically lists her pre-petition lawsuit against Old GM as the basis for her Claim. *See* Dkt. 13112, Ex. C (Proof of Claim).

- Mrs. Phillips represents and warrants that she "is hereby selling to [Dover] *good and sole legal beneficial title to the Claim free and clear of any and all* liens, security interests, encumbrances or *claims of any kind or nature whatsoever*," and that "the basis for the Claim is amounts due and owing by Debtor arising from the Wrongful Death claim filed in the 10th Judicial Court, Galveston County TX as Cause No. 07-cv-1040 and settled in accordance with [the Settlement]." Assignment, Paragraph 4(j) & (k) (emphasis added).

- Mrs. Phillips "acknowledges and agrees that Dover Master Fund II, L.P. shall be the holder of record of the Claim . . . ." *Id.*, Paragraph 12.

- Mrs. Phillips "irrevocably appoints [Dover] with *full power* of substitution as [her] true and lawful attorney and authorizes [Dover] to act in [her] name, plead, and stead, *to* demand, *sue for,* compromise, recover, *and transfer to [Dover] all such sums of money and securities which . . . may hereafter become due and payable for, or on account of the Claim herein assigned.*" *Id.*, Paragraph 10 (emphasis added).

In addition to clarifying Mrs. Phillips's lack of standing, as reflected in the provisions quoted above, the Assignment also indicates that even if Mrs. Phillips had any valid basis to attempt to vacate the Settlement (which she does not), she is not entitled to seek or recover any additional funds in relation to her Claim for herself.

**GIBSON DUNN**

The Honorable Robert E. Gerber
May 13, 2015
Page 3

- The Assignment contains her representation and warranty—which, per Paragraph 13, survives the Assignment's execution and the sale of the Claim—that "other than the Proof of Claim, no proof of claim has been *or will be* filed by or on [her] behalf . . . in the Case or any related proceeding." *Id.*, Paragraph 4(n).

- More significantly, pursuant to Paragraphs 8(a) and (b), in the event that Mrs. Phillips receives any "payments or distributions . . . with respect to or relating to the Claim," she is obligated to accept such payments and distributions as Dover's agent, hold them in trust for Dover's "sole benefit," and deposit any distributions of cash or securities in specific accounts belonging to Dover within 2 business days and 5 business days respectively with interest due and owing for any delay. *See id.*, Paragraph 8(a) (discussing deposit of cash distributions); 8(b) (discussing securities distributions).

- Finally, the Assignment authorizes Dover to file "other evidences of transfer that may be necessary to transfer other proofs of claim filed by [Mrs. Phillips] in the Case." *Id.*, Paragraph 12(b).

For all of the reasons outlined above, the GUC Trust and New GM respectfully submit that the Assignment conclusively establishes Mrs. Phillips's lack of standing to seek to vacate or set aside the Settlement, pursue any other claim or cause of action relating to or arising from her Proof of Claim and the underlying Texas state court litigation, or recover any additional funds in respect of the Claim.

We thank Your Honor in advance for allowing us to comment on the Assignment.

Respectfully submitted,

Lisa H. Rubin

Respectfully submitted,

Arthur Steinberg

cc: Josh Davis, Esq.
    William Weintraub, Esq.

# Exhibit 8

| | | |
|---|---|---|
| **JACQUELINE GILBERT** | : | COURT OF COMMON PLEAS |
| Plaintiff | : | PHILADELPHIA COUNTY |
| v. | : | MAY TERM, 2014 |
| | : | NO.:00140 |
| **GENERAL MOTORS LLC, et al** | : | |
| | : | |
| Defendants | : | |
| | : | |

## ORDER

And now, this ____11th____ day of ____May____, 2015, upon consideration

of Defendant General Motors LLC's Motion to Adopt the Joint Coordination Order, and

Plaintiff's response thereto, it is hereby ORDERED and DECREED that the Motion is
DENIED. This Court will cooperate with due consideration to In Re General Motors
LLC Ignition Switch Litigation, MDL Docket No. 2543, as this Court has consistently
done with other MDL litigation historically. This Court encourages the parties to
work to ensure an efficient, nonburdensome and nonduplicative discovery process.
However, this Court will continue to maintain and control its own docket, discovery
process, and case management deadlines. It is FURTHER ORDERED that all case
management deadlines entered by this Court remain in effect and the parties with
leave of Court may be permitted to engage in discovery outside the confines of the
MDL's Joint Coordination Order.

DOCKETED

MAY 1 1 2015

F. CLARK
DAY FORWARD

BY THE COURT:

_Lisa M. Rau_

Lisa M. Rau, J.

Gilbert Vs General Moto-ORDER

14050014000083

Case ID: 140500140
Control No.: 15031547

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  F. BROWN-CLARK  05/13/2015

# Exhibit 9



**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**



DOCKETED
COMPLEX LIT CENTER

AUG 15 2014

A. GIAMPAOLO

|  |  |
|---|---|
| *GILBERT* | *May Term 2014* |
| *VS* | *No. 00140* |
| *GENERAL MOTORS COMPANY LLC ETAL* | |

***CASE MANAGEMENT ORDER***
***COMPLEX TRACK***

Gilbert Vs General Moto-CMOIS

14050014000048

AND NOW, 15-AUG-2014 , it is Ordered that:

1.  The case management and time standards adopted for complex track cases shall be applicable to this case and are hereby incorporated into this Order.

2.  All *discovery* on the above matter shall be completed not later than *07-DEC-2015.*

3.  *Plaintiff* shall identify and submit *curriculum vitae and expert reports* of all expert witnesses intended to testify at trial to all other parties not later than *04-JAN-2016.*

4.  *Defendant and any additional defendants* shall identify and submit curriculum vitae and expert reports of all expert witnesses intended to testify at trial not later than *01-FEB-2016.*

5.  All *pre-trial motions* shall be filed not later than *01-FEB-2016.*

6.  A *settlement conference* may be scheduled at any time after *07-MAR-2016.* Prior to the settlement conference all counsel shall serve all opposing counsel and file a settlement memorandum containing the following:

    (a).  A concise summary of the nature of the case if plaintiff or of the defense if defendant or additional defendant;

    (b).  A statement by the plaintiff or all damages accumulated, including an itemization of injuries and all special damages claimed by categories and amount;

    (c).  Defendant shall identify all applicable insurance carriers, together with applicable limits of liability.

7.  A *pre-trial conference* will be scheduled any time after *02-MAY-2016.* Fifteen days prior to pre-trial conference, all counsel shall serve all opposing counsel and file a pre-trial memorandum containing the following:

    (a).  A concise summary of the nature of the case if plaintiff or the defense if defendant or

additional defendant;

(b).     A list of all witnesses who may be called to testify at trial by name and address.  Counsel should expect witnesses not listed to be precluded from testifying at trial;

(c).     A list of all exhibits the party intends to offer into evidence.  All exhibits shall be pre-numbered and shall be exchanged among counsel prior to the conference.  Counsel should expect any exhibit not listed to be precluded at trial;

(d).     Plaintiff shall list an itemization of injuries or damages sustained together with all special damages claimed by category and amount.  This list shall include as appropriate, computations of all past lost earnings and future lost earning capacity or medical expenses together with any other unliquidated damages claimed; and

(e).     Defendant shall state its position regarding damages and shall identify all applicable insurance carriers, together with applicable limits of liability;

(f).     Each counsel shall provide an estimate of the anticipated length of trial.

8.     *It is expected that the case will be ready for trial 06-JUN-2016*, and counsel should anticipate trial to begin expeditiously thereafter.

9.     All counsel are under a continuing obligation and are hereby ordered to serve a copy of this order upon all unrepresented parties and upon all counsel entering an appearance subsequent to the entry of this Order.

*BY THE COURT:*

*LISA RAU, J.*
*TEAM LEADER*

\\AYG19240 (Rev 11/04)

# Exhibit 10

09-50026-reg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 571-19 Filed 05/22/15 Page 2 of 90
Pg 50 of 588

09-50026-reg Doc 13136 Filed 05/12/15 Entered 05/12/15 17:00:31 Main Document
Pg 1 of 7

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial: 212-556-2158
asteinberg@kslaw.com

May 12, 2015

**VIA E-MAIL TRANSMISSION**
**AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

> Re: **In re Motors Liquidation Company,** *et al.*
> **Case No. 09-50026 (REG)**
> **Letter Regarding Proposed Judgment for the Court's**
> **April 15, 2015 Decision On New GM's Motions to Enforce ("Decision")** [1]

Dear Judge Gerber:

King & Spalding LLP is co-counsel with Kirkland & Ellis LLP for General Motors LLC ("**New GM**") in the above-referenced matter. The parties have exchanged numerous drafts of a proposed judgment memorializing the Decision, and have met and conferred several times over the past few weeks in an attempt to reach agreement as to the form of judgment. While the parties' efforts have resulted in substantive agreement on many provisions and narrowed the areas of disagreement, the parties have been unable to agree completely on the form of proposed judgment.[2] The principal remaining areas of disagreement are as follows:

> 1. **Dismissal with Prejudice v. Stay of Cases**: New GM believes that, with two exceptions,[3] the lawsuits commenced by (i) the Pre-Closing Accident Plaintiffs and (ii) the

---

[1] The Decision is published at *In re Motors Liquidation Co.*, Case No. 09-50026, 2015 WL 1727285 (Bankr. S.D.N.Y. April 15, 2015).

[2] Attached as **Exhibit "1"** is the proposed form of judgment prepared by New GM ("**New GM Proposed Judgment**"), and (ii) attached as **Exhibit "2"** is a redline comparing the New GM Proposed Judgment with the proposed judgment ("**Designated Counsel Proposed Judgment**") submitted by Designated Counsel. While the subject matter areas of disagreement are discussed in this letter, the Designated Counsel Proposed Judgment also contains certain language changes that were made at the "eleventh hour", that New GM finds objectionable for the reasons set forth in **Exhibit "3"** attached hereto.

[3] The two exceptions are *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-

09-50026-reg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 975-16    Filed 05/22/15    Page 8 of 90
Pg 51 of 588

09-50026-reg    Doc 13136    Filed 05/12/15    Entered 05/12/15 17:00:31    Main Document
Pg 2 of 7

Honorable Robert E. Gerber
May 12, 2015
Page 2

Ignition Switch Plaintiffs (or certain claims contained in such lawsuits) should be dismissed with prejudice (or claims that violate the Sale Order should be stricken). The filing of those lawsuits (or claims contained therein) violated the injunction contained in the Sale Order and the lawsuits never should have been brought against New GM in the first place. The Plaintiffs agreed to stay their lawsuits until the Court ruled on the Four Threshold Issues. Now that the Court has ruled, the result should be a dismissal with prejudice, which is the standard form of relief to dispose of a lawsuit brought improperly following confirmation of an injunction that bars that lawsuit. *See e.g., In re Motors Liquidation Co.*, No. 09-50026 (REG), 2011 WL 6119664 (Bankr. S.D.N.Y. Nov. 29, 2011) (ordering various plaintiffs to dismiss New GM "with prejudice"); *see also In re Escarent Entities, L.P.*, 519 Fed. App'x 895, 897-98 (5th Cir. Apr. 18, 2013); *New Jersey Transit Corp. v. Am. Premier Underwriters, Inc.*, No. CIV.A.05-CV-06614-JF, 2006 WL 3004893, at *2 (E.D. Pa. Oct. 19, 2006); *In re Residential Capital, LLC*, 508 B.R. 838, 842 (Bankr. S.D.N.Y. 2014).

Designated Counsel's argument that New GM's dismissal procedures are unnecessary and cumbersome is without merit. Dismissals with prejudice can be quickly and cleanly executed. For example, in MDL 2543, by virtue of the filing of Consolidated Complaints by Lead Counsel, over 120 separate cases (or causes of action therein) that were brought against New GM throughout the country were dismissed,[4] and the dismissal relief was supported by Lead Counsel as being efficient, and not too cumbersome to implement.

A dismissal will eliminate confusion and uncertainty regarding the status of the remaining cases that were brought in violation of the Sale Order. A dismissal will also eliminate the possibility that plaintiffs in the proscribed cases will seek relief precluded by the Decision from the court in which their action is docketed or otherwise engage in time-consuming and unnecessary motion practice. Moreover, in the dismissal context, unlike in the stay situation, the parties will not have to deal with the potential circumstance of other courts modifying the stay in the name of managing the docket of their active cases. Having fully litigated this matter, New GM should not have to incur the potential expense, disruption, and risk of inconsistent rulings attendant to a stay. Dismissal of the cases avoids these problems.[5]

For ease of administration, New GM has categorized the lawsuits and claims affected by the Decision on Exhibits A-D attached to its proposed judgment, and proposes the following relief for each.

---

CXC (Orange County, Cal.)("**California Action**") and *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.)("**Arizona Action**," and with the California Action, the "**State Lawsuits**"). As discussed in Point 2, New GM believes that the State Lawsuits should be stayed until all appeals of the Decision have been decided.

[4]    The dismissals in MDL 2543 were without prejudice because class certification issues have not yet been decided. That circumstance is different than here, where the Four Threshold Issues have been decided.

[5]    These problems are not hypothetical. In the *Elliott* case, after plaintiff's counsel had been ordered by this Court to withdraw his pending motion to amend the complaint, he refused to do so, and the court where the *Elliott* lawsuit was originally brought by plaintiffs (in violation of the Sale Order) thereafter rendered a decision on plaintiff's motion to amend.

Honorable Robert E. Gerber
May 12, 2015
Page 3

Exhibit "A" to the New GM Proposed Judgment identifies a dozen Ignition Switch pre-363 Sale accident cases that should be dismissed with prejudice. As this Court recognized in the Decision, "[t]he Pre–Closing Accident Plaintiffs suffered the injury or death underlying their claims in Old GM cars, and with Old GM parts. Any actionable conduct causing that injury or death took place before the 363 Sale—and necessarily was by Old GM, not New GM, and indeed before New GM could have done anything wrong. . . . The Pre–Closing Accident Plaintiffs did not suffer the prejudice that is an element to a denial of due process claim." 2015 WL 1727285, at *45-*46. Accordingly, dismissal with prejudice for the cases on Exhibit A is necessary and appropriate at this time.

Exhibit "B" to the New GM Proposed Judgment identifies for dismissal with prejudice two Ignition Switch economic loss cases. The first is the Pre-Sale Consolidated Complaint filed in the MDL. As this Court recognized in its Decision, the claims contained in the Pre-Sale Consolidated Complaint "would all be barred under the Sale Order and Injunction, to the extent it is enforceable." *Id.* at *17 n. 63. Having found that the Sale Order and Injunction *is* enforceable (with the exception of claims arising exclusively from New GM conduct), the dismissal with prejudice of the Pre-Sale Consolidated Complaint is the necessary outcome of the Decision. The second case is *Hailes*. That case was just recently filed in state court and therefore is not yet in the MDL or subject to the dismissal procedures in MDL 2543 for individual economic loss complaints not included in the Consolidated Complaints. *Hailes* alleges Old GM conduct related to an Old GM vehicle, and expressly asserts a theory of successor liability. Accordingly, it should also be dismissed with prejudice as a result of the Decision.

Exhibit "C" to the New GM Proposed Judgment generally identifies Ignition Switch post-363 Sale accident wrongful death/personal injury lawsuits that include additional allegations of discrete economic loss arising from Old GM vehicles and conduct. While the wrongful death/personal injury claims may be Assumed Liabilities because they arise from post-363 Sale accidents, the economic loss claims contained therein arising from Old GM vehicles and conduct are barred. The plaintiffs prosecuting these claims should be required to dismiss the economic loss allegations and claims as being in violation of the Sale Order and Decision. The post-363 Sale accident claims contained in these complaints can proceed. The other cases on Exhibit "C" are the Post-Sale Consolidated Complaint, and three cases brought by Mr. Peller. The Post-Sale Consolidated Complaint will be amended on or about June 12, 2015 pursuant to an order in MDL 2543. Presumably, that amendment will be in conformity with the Decision. The complaints brought by Mr. Peller contain a mix of allegations with regard to Old GM and New GM vehicles and conduct. While those actions are presently stayed pursuant to MDL procedures, the claims therein that are proscribed by the Decision should be dismissed now.

Exhibit "D" to the New GM Proposed Judgment identifies for dismissal with prejudice mostly non-Ignition Switch pre-363 Sale accident lawsuits.[6] The Decision generally deferred issues on non-Ignition Switch Cases. However, the Court's "no prejudice" ruling and its ruling

---

[6]    The one exception is a non-Ignition Switch economic loss case asserting Old GM conduct arising from an Old GM vehicle that is not in MDL 2543 (and thus not otherwise dismissed already).

09-50026-reg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 575-1    Filed 05/22/15    Page 6 of 90
Pg 53 of 588

09-50026-reg    Doc 13136    Filed 05/12/15    Entered 05/12/15 17:00:31    Main Document
Pg 4 of 7

Honorable Robert E. Gerber
May 12, 2015
Page 4

on pre-363 Sale accidents for Ignition Switch cases should apply equally to non-Ignition Switch cases. The Sale Agreement makes no distinction between pre-sale accident or economic loss claims based on the nature of the defect alleged in the complaint. Likewise, the objections to the Sale Motion and arguments at the Sale Hearing did not make those distinctions either. The New GM Proposed Judgment contains a summary procedure to address this issue, providing notice to each of these plaintiffs and an opportunity to challenge the dismissal New GM believes necessarily arises from the Decision. The failure to include this type of provision could lead to potentially more complex litigation in this Court relating to the Non-Ignition Switch Motion to Enforce.

Importantly, New GM's dismissal procedures preserve the rights of plaintiffs therein if the Decision is reversed on appeal, including tolling the statute of limitations and providing that plaintiffs should be returned to the identical position they were in prior to dismissal. It also allows plaintiffs to challenge the dismissal/strike pleading remedy if they have a good faith basis to do so. New GM understands that, while Designated Counsel are proposing a "stay" resolution for cases affected by the Decision, plaintiffs do not object to the procedures New GM has proposed if the Court agrees with New GM's "dismissal" resolution.

    **2.**     <u>**Disposition of State Lawsuits**</u>: The New GM Proposed Judgment provides that the State Lawsuits continue to be stayed, subject to the right of plaintiffs to seek relief from this Court for good cause shown. The State Lawsuits were brought after the Motion to Enforce was filed (in violation of the Sale Order), and counsel therein immediately agreed to stay their lawsuits pending the Court's resolution of the Four Threshold Issues. That *status quo* should be preserved.

While the State Lawsuits are not part of MDL 2543, the complaints in the State Lawsuits assert many of the same allegations and claims found in the Consolidated Complaints. That is not surprising since counsel for the plaintiffs in the State Lawsuits are also Co-Lead Counsel and members of the Executive Committee in MDL 2543.

The basis for Designated Counsels' argument that the State Lawsuits should proceed in the state courts is their allegation that the State Lawsuits assert claims based only on New GM conduct. However, if that were the case, the plaintiffs in the State Lawsuits would never have entered into Stay Stipulations while waiting for this Court to decide the Motions to Enforce. Moreover, a cursory review of the complaints in the State Lawsuits demonstrates that they have pled Old GM conduct. The complaint in the California Action includes at least 18 paragraphs specifically alleging events that took place prior to the 363 Sale; the complaint in the Arizona Action similarly includes at least 75 paragraphs asserting pre-363 Sale conduct. Such allegations are expressly proscribed by the Decision, and the Sale Order is binding on the plaintiffs in the State Lawsuits.[7]

It is true that the State Lawsuits are similar in nature to the lawsuits contained in Exhibit "C" to the New GM Proposed Judgment (in that both sets of cases assert a mix of claims

---

[7]    *See* Sale Order, ¶ 8 (making injunction applicable to governmental authorities).

Honorable Robert E. Gerber
May 12, 2015
Page 5

involving Old GM and New GM conduct).  Unlike the cases on Exhibit "C," however, New GM believes that the State Lawsuits should continue to be stayed as opposed to requiring the plaintiffs to amend their complaint by striking the offending claims (which is the treatment sought for the lawsuits set forth in Exhibit "C").  The State Lawsuits should be treated differently because the plaintiffs in the State Lawsuits already have stated they will not amend their complaints to eliminate the claims that New GM believes violate the Decision.

Based on that representation, motion practice may well ensue on the issue of whether the State Lawsuit complaints can go forward as currently pled.  That issue should be decided first by this Court because of its exclusive jurisdiction over the Sale Order.  That would have been the result (and should be the result now) if the plaintiffs had filed a No-Stay Pleading instead of agreeing to a Stay Stipulation.[8]  Designated Counsel should not be permitted to end-run this Court's jurisdiction by asking that these two cases—unlike *every* other case in the country —be permitted to go forward in disparate state courts to decide core bankruptcy issues in potentially inconsistent ways.  New GM should be given a full opportunity to address this issue in this Court, which is what would occur if the States moved to modify the stay here, should they choose to do so.

     **3.**    **Language Regarding Barred Claims**:  In its Proposed Judgment, New GM contends that "any claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery, are forever barred and enjoined pursuant to the Sale Order."  The Designated Counsel Proposed Judgment seeks to limit the types of claims that are barred to just claims "based on successor liability[.]"  But the Decision was not so limiting.  Specifically, the Court found that "it is plain that to the extent the Plaintiffs seek to impose successor liability, ***or to rely, in suits against New GM, on any wrongful conduct by Old GM***, these are actually claims against Old GM, and not New GM."  2015 WL 1727285, at *8; *see also id.* at *68 ("The Economic Loss Plaintiffs (but not the Pre-Closing Sale Claimants) may, however, assert otherwise viable claims against New GM for any causes of action that might exist arising solely out of New GM's own independent, post-Closing acts, so long as those Plaintiffs' claims  do not in any way rely on any acts of  or conduct by Old GM.").  The language proposed in the New GM Proposed Judgment is consistent with the Decision; the Designated Counsel Proposed Judgment is not.

     **4.**    **Language Regarding GUC Trust Assets**:  The language in the New GM Proposed Judgment incorporates the GUC Trust/Unitholders views, and is consistent with the Decision.  Both New GM and the GUC Trust/Unitholders read the Decision as forbidding any of the assets of the GUC Trust, whenever obtained, to be used to satisfy any claims not yet filed by the parties opposing the Motions to Enforce.  The Court succinctly stated in the Decision that

---

[8]    The plaintiffs in the California Action filed a "limited" no-stay pleading, seeking to litigate a remand motion in the Central District of California, but otherwise agreed to accept this Court's jurisdiction for all purposes.  *See "Limited" No Stay Pleading*, dated August 19, 2014 [Dkt. No. 12862], at 2 ("the [plaintiff] merely asks that it be given the opportunity to oppose JPML transfer and to proceed with a motion to remand this action back to the California Orange County Superior Court where it was originally filed, where the [plaintiff] agrees it will be stayed pending further proceedings before this Court").

Honorable Robert E. Gerber
May 12, 2015
Page 6

"[t]he Plaintiffs may file late claims, and to the extent otherwise appropriate such late claims may hereafter be allowed—***but the assets of the GUC Trust may not be tapped to satisfy them, nor will Old GM's Plan be modified in this or any other respect***." 2015 WL 1727285, at *68. (emphasis added).   There is no qualification in this statement, and there are no temporal limitations. Designated Counsel's definition of GUC Trust Assets seeks to change that fundamental finding.

Also, in order to ensure that the Court's equitable mootness finding is binding on all parties to the Motions to Enforce (and not just the Plaintiffs' cases), a result that New GM and the GUC Trust/Unitholders believe is compelled by the Decision, there are summary procedures included in the Proposed Judgment to afford non-Ignition Switch parties to the Motions to Enforce an opportunity to challenge that conclusion. The failure to include this type of provision could lead to potentially more complex litigation in this Court on the equitable mootness ruling.

5.      **Language Regarding Disputed Facts**:   Designated Counsel request that language be included in their proposed judgment regarding the disputed facts submitted by the parties in connection with the Four Threshold Issues.  They ask this Court to make a finding that such disputed facts did not raise any "genuine issue of material fact as to any of the Four Threshold Issues, and that treating any of the disputed facts as part of the undisputed stipulated record would not have affected the Decision."  This alleged "finding" is found nowhere in the Decision and, in fact, is inconsistent with the Decision.   The Court specifically stated in the Decision that it "asked the parties to agree on stipulated facts, and they did so. By analogy to motions for summary judgment, ***the Court has relied only on undisputed facts***."  2015 WL 1727285, at *9 n. 17.  The Court never mentions the "disputed facts" in the Decision, let alone that they did not raise any issues or would have affected the ruling.  Designated Counsel's proposed language is not part of the Decision and should be rejected.

Also, Designated Counsel has removed a critical sentence in Paragraph 15 of the New GM Proposed Judgment that ensures that the Court's ruling on the Four Threshold Issues, and the actions proscribed and to be taken on account thereof pursuant to the Decision and Proposed Judgment, are enforceable.

Based on the foregoing, New GM respectfully requests that the New GM Proposed Judgment be entered.

Respectfully submitted,

*/s/ Arthur Steinberg*

Arthur Steinberg

AJS/sd
Encl.

Honorable Robert E. Gerber
May 12, 2015
Page 7

cc:     Edward S. Weisfelner
        Howard Steel
        Sander L. Esserman
        Jonathan L. Flaxer
        S. Preston Ricardo
        Matthew J. Williams
        Lisa H. Rubin
        Keith Martorana
        Daniel Golden
        Deborah J. Newman
        Jamison Diehl
        William Weintraub
        Steve W. Berman
        Elizabeth J. Cabraser
        Robert C. Hilliard

# Exhibit 1

09-50026-mg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 978-10 Filed 05/22/15 Page 60 of 90
Pg 58 of 588

09-50026-reg Doc 13136-1 Filed 05/12/15 Entered 05/12/15 17:00:31 Exhibit 1
Pg 2 of 19

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                        :    Chapter 11
                                             :
MOTORS LIQUIDATION COMPANY, *et al.*,        :    Case No.: 09-50026 (REG)
          f/k/a General Motors Corp., *et al.*         :
                                             :
                  Debtors.            :    (Jointly Administered)
-------------------------------------------------------------x

### JUDGMENT

     For the reasons set forth in the Court's *Decision on Motion to Enforce Sale Order*,

entered on April 15, 2015 ("**Decision**"),[1] it is hereby ORDERED AND ADJUDGED as follows:

     1.    For the reasons set forth in the Decision, the Ignition Switch Plaintiffs and the

Ignition Switch Pre-Closing Accident Plaintiffs (collectively, the "**Plaintiffs**") were "known

creditors" of the Debtors. The Plaintiffs did not receive the requisite notice from Old GM of the

sale of substantially all of the assets of Old GM to New GM ("**363 Sale**").

     2.    Subject to the sole exception of the Independent Claims (as herein defined), for

the reasons set forth in the Decision, the Ignition Switch Plaintiffs have not established a due

process violation with respect to the 363 Sale.

     3.    For the reasons set forth in the Decision, the Ignition Switch Pre-Closing

Accident Plaintiffs have not established a due process violation with respect to the 363 Sale.

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision. For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt. No. 12826], at 3); (ii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred prior to the closing of the 363 Sale; (iii) "**Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles; (iv) "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of Pre-Closing Accident Plaintiffs that are not Ignition Switch Pre-Closing Accident Plaintiffs; and (v) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM vehicle.

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-10   Filed 05/22/15   Page 11 of 90
Pg 59 of 588

09-50026-reg   Doc 13136-1   Filed 05/12/15   Entered 05/12/15 17:00:31   Exhibit 1
Pg 3 of 19

4.       The Ignition Switch Plaintiffs were prejudiced by the failure of Old GM to give them the requisite notice of the 363 Sale with respect to the Independent Claims.  For the reasons set forth in the Decision, the Ignition Switch Plaintiffs established a due process violation with respect to the Independent Claims.  The Sale Order shall be deemed modified to permit the assertion of Independent Claims.  For purposes of this Judgment, "**Independent Claims**" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM involving Old GM vehicles or parts that are based solely on New GM's own, independent, post-Closing acts or conduct.  Nothing set forth herein should be construed to imply whether or not Ignition Switch Plaintiffs have viable Independent Claims against New GM.

5.       Except for the modification to permit the assertion of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.

6.       For the reasons set forth in the Decision, the Plaintiffs were prejudiced by the failure of Old GM to give them the requisite notice of the deadline ("**Bar Date**") to file proofs of claim against the Old GM bankruptcy estate.  The Plaintiffs who did not file a proof of claim prior to the Bar Date may petition the Bankruptcy Court (on motion and notice) for authorization to file late proofs of claim against the Old GM bankruptcy estate.  The Court has not determined whether any late proof of claim will ultimately be allowed.  However, based on the doctrine of equitable mootness, in no event shall the assets of the GUC Trust held at any time in the past, now, or in the future (collectively, the "**GUC Trust Assets**") be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims.  The preceding sentence shall not apply to any Plaintiffs that had a claim previously allowed by the Court, but in no event shall they be entitled to increase the amount of such allowed claim without the prior

authorization of the Bankruptcy Court or an appellate court following an appeal from the Bankruptcy Court.

7.    Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs against New GM that seek to hold it liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM.

8.    (a)    Subject to the other provisions of this paragraph 8, the Ignition Switch Pre-Closing Accident Plaintiffs, including without limitation the Ignition Switch Pre-Closing Accident Plaintiffs identified in Exhibit "A" attached hereto, shall each dismiss, with prejudice, within 17 business days after the entry of this Judgment, any lawsuit commenced by them against New GM and, within 22 business days after the entry of this Judgment, each of the Ignition Switch Pre-Closing Accident Plaintiffs shall file with the Clerk of this Court evidence of the dismissal of such lawsuit.

(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "A," by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 8 of the Judgment."

(c)    If counsel for an Ignition Switch Pre-Closing Accident Plaintiff identified on Exhibit "A" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be dismissed, it shall file a pleading

3

with this Court within 17 business days of this Judgment ("**No Dismissal Pleading**"). The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment. If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)     For any lawsuit filed by Ignition Switch Pre-Closing Accident Plaintiffs that is dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Pre-Closing Accident Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Pre-Closing Accident Plaintiffs' rights against New GM that existed as of the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

9.     Except for Independent Claims and Assumed Liabilities, if any, all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery, are barred and enjoined pursuant to the Sale Order.

10.     (a)     Subject to the other provisions of this paragraph 10 and unless already dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch Plaintiffs shall each dismiss, with prejudice, on or before June 12, 2015, any lawsuit commenced by them against New GM. Exhibit "B" is a list of the lawsuits to be dismissed with prejudice. The lawsuits identified on Exhibit "B" include the Pre-Sale Consolidated Complaint. On or before June 15, 2015, the Ignition Switch Plaintiffs, other than those whose complaints already

have been dismissed by operation of orders entered in MDL 2543, shall file with the Clerk of this Court evidence of the dismissal of such lawsuits that are required to be dismissed pursuant to this Judgment.

(b)      Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "B", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 10 of the Judgment."

(c)      If a counsel listed on Exhibit "B" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be dismissed, it shall file a No Dismissal Pleading with this Court within 17 business days of this Judgment.  The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)      For any lawsuit of the Ignition Switch Plaintiffs listed on Exhibit "B" that is dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

5

09-50026-reg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 978-16 Filed 05/22/15 Page 18 of 90
Pg 63 of 588

09-50026-reg    Doc 13136-1    Filed 05/12/15    Entered 05/12/15 17:00:31    Exhibit 1
Pg 7 of 19

11.    (a)    Subject to the other provisions of this paragraph 11 and unless already dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch Plaintiffs shall each amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled.  Exhibit "C" is a list of the lawsuits that are to be amended by the Ignition Switch Plaintiffs.  The lawsuits identified on Exhibit "C" include the Post-Sale Consolidated Complaint.

(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "C", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 11 of the Judgment."

(c)    If a counsel listed in the lawsuits on Exhibit "C" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its allegations, claims or causes of action against New GM, should not be stricken, it shall file a pleading with this Court within 17 business days of this Judgment ("**No Strike Pleading**").  The No Strike Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a No Strike Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)    If an Ignition Switch Plaintiff fails to either (i) amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled, or (ii) timely file a No Strike Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("**Strike Order**") that directs the Ignition Switch Plaintiff to strike specifically-identified allegations, claims and/or causes of action contained in their complaint that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Strike Order.

(e)    For any allegations, claims or causes of action of the Ignition Switch Plaintiffs listed on Exhibit "C" that are stricken pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of the amended complaint to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the claims or causes of action against New GM heretofore stricken pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the striking of such claims or causes of action pursuant to this Judgment shall be reinstated as if the striking of such claims or causes of action never occurred.

12.    The lawsuits captioned *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) and *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.) shall remain stayed without prejudice to the

09-50026-smg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-16   Filed 05/22/15   Page 1 of 90
Pg 65 of 588

09-50026-reg   Doc 13136-1   Filed 05/12/15   Entered 05/12/15 17:00:31   Exhibit 1
Pg 9 of 19

plaintiffs in such lawsuits seeking relief from the stay in this Bankruptcy Court for good cause shown.

13.    (a)    To the fullest extent permissible, the rulings set forth herein and in the Decision that proscribe claims and actions being taken against New GM or the GUC Trust shall apply equally to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs including those identified on Exhibit "D" attached hereto.  As a result, the Sale Order remains unmodified and in full force and effect with respect to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs.  To the extent an issue shall arise in the future as to whether (i) the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs were known or unknown creditors of the Debtors, (ii) the doctrine of equitable mootness bars the use of any GUC Trust Assets to satisfy late-filed claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs, or (iii) the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale Order, the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs shall be required to first seek resolution of such issues from this Court before proceeding any further against New GM and/or the GUC Trust.

(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel for the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs identified on Exhibit "D", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 13 of the Judgment."

(c)     If a counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit, or certain claims or causes of action contained therein, against New GM should not be dismissed or stricken, it shall file a No Dismissal Pleading with this Court within 17 business days of this Judgment.  If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)     If counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or a Non-Ignition Switch Plaintiff believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to believe that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court, it shall file a pleading with this Court within 17 business days of this Judgment ("**GUC Trust Asset Pleading**").  The GUC Trust Asset Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a GUC Trust Asset Pleading is timely filed, the GUC Trust, the GUC Trust Unitholders and/or New GM shall have 17 business days to respond to such pleading.  The Court will schedule a hearing thereon if it believes one is necessary.

(e)     If a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" fails to timely file a No Dismissal Pleading with the Court within the time period set forth in paragraphs 13(c) and (d) above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("**Dismissal Order**") that directs the Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff to dismiss with prejudice its lawsuit, or certain claims or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as

modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order. For any lawsuit, or any claims or causes of action contained therein, of the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs that are dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal, such that the appellate court finds that the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs can maintain the lawsuit or claims or causes of action against New GM heretofore dismissed or stricken pursuant to this Judgment, all of the Non-Ignition Switch Pre-Closing Accident Plaintiffs' or Non-Ignition Switch Plaintiffs' rights against New GM that existed prior to the dismissal of their lawsuit or the striking of claims or causes of action pursuant to this Judgment shall be reinstated as if the dismissal or the striking of such claims or causes of action never occurred.

14.     The Court adopts the legal standard for "fraud on the court" as set forth in the Decision.

15.     By agreement of New GM, Designated Counsel for the Ignition Switch Plaintiffs, the GUC Trust, and the GUC Trust Unitholders, and approved by the Court, no discovery in the Bankruptcy Court was conducted in connection with the resolution of the Four Threshold Issues. The Ignition Switch Pre-Closing Accident Plaintiffs did not challenge the earlier decision not to seek discovery in the Bankruptcy Court in connection with the Bankruptcy Court's determination of the Four Threshold Issues. New GM, Designated Counsel, the Groman Plaintiffs, the GUC Trust, and the GUC Trust Unitholders developed and submitted to the Court a set of agreed upon stipulated facts. Such parties also submitted to the Bankruptcy Court certain disputed facts and exhibits. The Court decided the Four Threshold Issues on the agreed upon stipulated facts only.

The Groman Plaintiffs requested discovery with respect to the Four Threshold Issues but the other parties opposed the discovery request, and the Court denied the Groman Plaintiffs' discovery request. For these reasons (and others), the findings of fact in the Decision shall apply only for the purpose of this Court's resolution of the Four Threshold Issues and shall have no force or applicability in any other legal proceeding or matter, including without limitation, MDL 2543. Notwithstanding the foregoing, in all events, however, the Decision and Judgment shall apply with respect to (a) the Court's interpretation of the enforceability of the Sale Order, and (b) the actions of the affected parties that are authorized and proscribed by the Decision and Judgment.

16.    The Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based.

17.    Pursuant to Bankruptcy Rule 8006(e)(1), for the reasons stated in the Decision, the Court hereby certifies this Judgment for direct appeal to the Circuit Court ("**Appeal**"). The Ignition Switch Plaintiffs, the Pre-Closing Accident Plaintiffs, the Non-Ignition Switch Plaintiffs, New GM, the GUC Trust, the GUC Trust Unitholders and the Groman Plaintiffs each reserve all of their rights with respect to the Appeal, including the right to challenge any of the factual and legal findings made by the Court in the Decision and to challenge certification for direct appeal.

18.    The parties have stipulated that they shall not file any voluntary supplemental statements regarding the Court's certification of the Appeal as allowed pursuant to Bankruptcy Rule 8006(e)(2), and shall submit all statements either in support or against certification of the Appeal in the Circuit Court.

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02573-JMF   Document 9-8-10   Filed 05/22/15   Page 21 of 90
Pg 69 of 588

09-50026-reg    Doc 13136-1    Filed 05/12/15    Entered 05/12/15 17:00:31    Exhibit 1
Pg 13 of 19

19.     Count One of the amended complaint ("**Groman Complaint**") filed in *Groman et al v. General Motors LLC* (Adv. Proc. No. 14-01929 (REG)) is dismissed with prejudice. The remaining counts of the Groman Complaint that deal with the "fraud on the court" issue are deferred and stayed until 30 days after all appeals of the Decision and Judgment are decided. With respect to Count One of the Groman Complaint, (i) the statute of limitations shall be tolled from the date of dismissal of Count One to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Groman Plaintiffs can maintain the cause of action in Count One of the Groman Complaint heretofore dismissed pursuant to this Judgment, the Groman Plaintiffs' rights against New GM that existed as of the dismissal of Count One shall be reinstated as if the dismissal of Count One never occurred.

20.     New GM is hereby authorized to serve this Judgment and the Decision upon any additional party (and/or their attorney) (each, an "**Additional Party**") that commences a lawsuit and/or is not otherwise on Exhibits "A" through "D" hereto (each, an "**Additional Lawsuit**") against New GM that would be proscribed by the Sale Order (as modified by the Decision and Judgment). Any Additional Party shall have 17 business days upon receipt of service by New GM of the Decision and Judgment to dismiss, with prejudice, such Additional Lawsuit or the allegations, claims or causes of action contained in such Additional Lawsuit that would violate the Decision, this Judgment, and the Sale Order (as modified by the Decision and Judgment). If any Additional Party has a good faith basis to maintain that the Additional Lawsuit or certain allegations, claims or causes of action contained in such Additional Lawsuit should not be dismissed with prejudice, such Additional Party shall, within 17 business days upon receipt of the Decision and Judgment, file with this Court a No Dismissal Pleading explaining why such

12

Additional Lawsuit or certain claims or causes of action contained therein should not be dismissed with prejudice. The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment.  New GM shall file a response to the No Dismissal Pleading within 17 business days of service of the No Dismissal Pleading.  The Court will schedule a hearing thereon if it believes one is necessary.  If an Additional Party fails to either (i) dismiss with prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that New GM asserts violates the Decision, Judgment, and/or Sale Order (as modified by the Decision and Judgment), or (ii) timely file a No Dismissal Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached Dismissal Order that directs the Additional Party to dismiss with prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order.  With respect to any lawsuit that is dismissed pursuant to this Paragraph, (i) the statute of limitations shall be tolled from the date of dismissal of such lawsuit to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Additional Party can maintain the lawsuit heretofore dismissed pursuant to this Judgment, the Additional Party's rights against New GM that existed as of the dismissal of the lawsuit shall be reinstated as if the dismissal of the lawsuit never occurred.  For the avoidance of doubt, nothing in this Paragraph 20 shall apply to the Amended Consolidated Complaint to be filed in MDL 2543 on or before June 12, 2015.

Dated: New York, New York
      May __, 2015

                                                   _____
                                                   UNITED STATES BANKRUPTCY JUDGE

**Exhibit "A": Complaints Alleging Pre-Closing Ignition Switch Accidents To Be Dismissed**

Bachelder, et al. v. General Motors LLC, MDL No. 1:15-cv-00155-JMF (S.D.N.Y.)[2]

Betancourt Vega v. General Motors LLC, et al., No. 3:15-cv-01245-DRD (D.P.R.)
(MDL No. 1:15-cv-02638)

Bledsoe, et al. v. General Motors LLC, MDL No. 1:14-cv-07631-JMF (S.D.N.Y.)[3]

Boyd, et al. v. General Motors LLC, No. 4:14-cv-01205-HEA (E.D. Mo.)
(MDL No. 1:14-cv-08385)[4]

Doerfler-Bashucky v. General Motors LLC, et al., No. 5:15-cv-00511-GTS-DEP (N.D.N.Y.)

Edwards, et al. v. General Motors LLC, MDL No. 1:14-cv-06924-JMF (S.D.N.Y.)[5]

Johnston-Twining v. General Motors LLC, et al., No. 3956 (Philadelphia County, Pa.)

Meyers v. General Motors LLC, No. 1:15-cv-00177-CCC (M.D. Pa.)

Occulto v. General Motors Co., et al., No. 15-cv-1545 (Lackawanna County, Pa.)

Scott v. General Motors Company, et al., No. 8:15-cv-00307-JDW-AEP (M.D. Fla.)
(MDL No. 1:15-cv-01790)

Vest v. General Motors LLC, et al., No. 1:14-cv-24995-DAF (S.D. W.Va.)
(MDL No. 1:14-cv-07475)

---

[2] The *Bachelder* complaint includes both Ignition Switch and non-Ignition Switch Pre-Closing Accident vehicles subject to the Judgment. Accordingly, it is listed both on Exhibits "A" and "D."

[3] The *Bledsoe* complaint includes both Ignition Switch and non-Ignition Switch Pre-Closing Accident vehicles subject to the Judgment. Accordingly, it is listed both on Exhibits "A" and "D." In addition, the *Bledsoe* complaint includes economic loss claims regarding Old GM conduct and vehicles and, therefore, also appears on Exhibit "C."

[4] The *Boyd* complaint contains allegations regarding both a Pre-Closing ignition switch accident and one or more Post-Closing ignition switch accidents. To the extent the complaint concerns one or more Post-Closing ignition switch accidents, those portions of the *Boyd* complaint that assert Product Liabilities (as defined in the Sale Agreement) based on a Post-Closing ignition switch accident are not subject to the Judgment.

[5] The *Edwards* complaint includes both Ignition Switch and non-Ignition Switch Pre-Closing Accident vehicles subject to the Judgment. Accordingly, it is listed both on Exhibits "A" and "D."

### Exhibit "B": Economic Loss Complaints To Be Dismissed

Hailes, et al. v. General Motors LLC, et al., No. 15PU-CV00412 (Pulaski County, Mo.)

In re General Motors LLC Ignition Switch Litigation, 14-MD-2543, *Consolidated Class Action Complaint Against New GM For Recalled Vehicles Manufactured By Old GM and Purchased Before July 11, 2009*

**Exhibit "C": Complaints Containing Particular Allegations
And/Or Claims Barred By Sale Order To Be Stricken**

Post-Sale Personal Injury/Wrongful Death Complaints With Economic Loss Claims To Be Stricken:

Ackerman v. General Motors Corp., et al., No. MRS-L-2898-14 (Morris County, N.J.)

Austin, et al. v. General Motors LLC, No. 2015-L- 000026 (St. Clair County, Ill.)

Berger, et al. v. General Motors LLC, No. 9241/2014 (Kings County, N.Y.)

Casey, et al. v. General Motors LLC, et al., No. 2014-54547 (Texas MDL)

Colarossi v. General Motors, et al., No. 14-22445 (Suffolk County, N.Y.)

Dobbs v. General Motors LLC, et al., No. 49D051504PL010527 (Marion County, Ind.)

Felix, et al. v. General Motors LLC, No. 1422-CC09472 (City of St. Louis, Mo.)

Gable, et al. v. Walton, et al., No. 6737 (Lauderdale County, Tenn.)

Goins v. General Motors LLC, et al., No. 2014-CI40 (Yazoo County, Miss.)

Grant v. General Motors LLC, et al., No. 2014CV02570MG (Clayton County, Ga.)

Green v. General Motors LLC, et al., No. 15-144964-NF (Oakland County, Mich.)

Hellems v. General Motors LLC, No. 15-459-NP (Eaton County, Mich.)

Hinrichs v. General Motors LLC, et al., No. 15-DCV-221509 (Texas MDL)

Jackson v. General Motors LLC, et al., No. 2014-69442 (Texas MDL)

Largent v. General Motors LLC, et al., No. 14-006509-NP (Wayne County, Mich.)

Licardo v. General Motors LLC, No. 03236 (Fulton County, N.Y.)

Lincoln, et al. v. General Motors LLC, No. 2015-0449-CV (Steuben County, N.Y.)

Lucas v. General Motors LLC, et al., No. 15-CI-00033 (Perry County, Ky.)

Miller v. General Motors LLC, et al., No. CACE-15-002297 (Broward County, Fla.)

Mullin, et al. v. General Motors LLC, et al., No. BC568381 (Los Angeles County, Cal.)

Nelson v. General Motors LLC, et al., No. D140141 (Texas MDL)

Petrocelli v. General Motors LLC, et al., No. 14-17405 (Suffolk County, N.Y.)

Polanco, et al. v. General Motors LLC, et al., No. CIVRS1200622 (San Bernardino County, Cal.)

Quiles v. Catsoulis, et al., No. 702871/14 (Queens County, N.Y.)

Quintero v. General Motors LLC, et al., No. 15-995 (Orleans Parish, La.)

Shell, et al. v. General Motors LLC, No. 1522-CC00346 (City of St. Louis, Mo.)

Solomon v. General Motors LLC, No. 15A794-1 (Cobb County, Ga.)

Spencer v. General Motors LLC, et al., No. D-1-GN-14-001337 (Texas MDL)

Szatkowski, et al. v. General Motors LLC, et al., No. 2014-08274-0 (Luzerne County, Pa.)

Tyre v. General Motors LLC, et al., No. GD-14-010489 (Allegheny County, Pa.)

Wilson v. General Motors LLC, et al., No. 2014-29914 (Texas MDL)

Post-Sale Economic Loss Complaints With Old GM Allegations/Claims To Be Stricken:

Bledsoe, et al. v. General Motors LLC, MDL No. 1:14-cv-07631-JMF (S.D.N.Y.)

Elliott, et al. v. General Motors LLC, No. 1:14-cv-00691-KBJ (D.D.C.)
(MDL No. 1:14-cv-08382)

Sesay, et al. v. General Motors LLC, et al., MDL No.1:14-cv-06018-JMF (S.D.N.Y.)

In re General Motors LLC Ignition Switch Litigation, 14-MD-2543, *Consolidated Complaint Concerning All GM-Branded Vehicles That Were Acquired July 11, 2009 or Later*

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-16   Filed 05/22/15   Page 12 of 90
Pg 75 of 588

09-50026-reg   Doc 13136-1   Filed 05/12/15   Entered 05/12/15 17:00:31   Exhibit 1
Pg 19 of 19

**Exhibit "D": Non-Ignition Switch Complaints Subject to the Judgment**

Personal Injury/Wrongful Death Complaints:

Abney, et al. v. General Motors LLC, MDL No. 1:14-cv-05810-JMF (S.D.N.Y.)[6]

Bachelder, et al. v. General Motors LLC, MDL No. 1:15-cv-00155-JMF (S.D.N.Y.)

Bacon v. General Motors LLC, MDL No. 1:15-cv-00918-JMF (S.D.N.Y.)

Bledsoe, et al. v. General Motors LLC, MDL No. 1:14-cv-07631-JMF (S.D.N.Y.)

Edwards, et al. v. General Motors LLC, MDL No. 1:14-cv-06924-JMF (S.D.N.Y.)

Phillips-Powledge v. General Motors LLC, No. 3:14-cv-00192 (S.D. Tex.)
(MDL No. 1:14-cv-08540)

Pillars v. General Motors LLC, No. 1:15-cv-11360-TLL-PTM (E.D. Mich.)

Williams, et al. v. General Motors LLC, No. 5:15-cv-01070-EEF-MLH (W.D. La.)
(MDL No. 1:15-cv-03272)

Economic Loss Complaints:

Watson, et al. v. General Motors LLC, et al., No. 6:14-cv-02832 (W.D. La.)

---

[6]   The *Abney* complaint includes a non-Ignition Switch Pre-Closing Accident vehicle subject to the Judgment.

# Exhibit 2

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 1478-10   Filed 05/22/15   Page 29 of 90
Pg 77 of 588

09-50026-reg   Doc 13136-2   Filed 05/12/15   Entered 05/12/15 17:00:31   Exhibit 2
Pg 2 of 16

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                                    :    Chapter 11
                                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,                    :    Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., *et al.*             :
                                                         :
                                Debtors.                 :    (Jointly Administered)
-------------------------------------------------------------x

## JUDGMENT

For the reasons set forth in the Court's *Decision on Motion to Enforce Sale Order*, entered on April 15, 2015 ("**Decision**"),[1] it is hereby ORDERED AND ADJUDGED as follows:

1.      For the reasons set forth in the Decision, the Ignition Switch Plaintiffs and the Ignition Switch Pre-Closing Accident Plaintiffs (collectively, the "**Plaintiffs**") were "known creditors" of the Debtors.  The Plaintiffs did not receive the requisite notice *from Old GM* of the sale of substantially all of the assets of Old GM to New GM ("**363 Sale**").

2.      Subject to the sole exception of the Independent Claims (as herein defined), for the reasons set forth in the Decision, the Ignition Switch Plaintiffs have not ~~demonstrated that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish~~**established** a due process violation with respect to the 363 Sale.

_____

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision.  For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt. No. 12826], at 3); (ii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred prior to the closing of the 363 Sale; (iii) "**Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles; (iv) "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of Pre-Closing Accident Plaintiffs that are not Ignition Switch Pre-Closing Accident Plaintiffs; and (v) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM vehicle.

3.      For the reasons set forth in the Decision, the Ignition Switch Pre-Closing Accident Plaintiffs have not ~~demonstrated that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish~~**established** a due process violation with respect to the 363 Sale.

4.      **The Ignition Switch Plaintiffs were prejudiced by the failure of Old GM to give them the requisite notice of the 363 Sale with respect to the Independent Claims.**  For the reasons set forth in the Decision, the Ignition Switch Plaintiffs established ~~prejudice and thus~~ a due process violation with respect to the Independent Claims.  The Sale Order shall be deemed modified to permit the assertion ~~and continued prosecution~~ of Independent Claims.  For purposes of this Judgment**,** "**Independent Claims**" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM~~, whether or not~~ involving Old GM vehicles or parts~~,~~ that are based solely on New GM's own, independent, post-Closing acts or conduct.  Nothing set forth herein ~~shall~~**should** be construed to imply whether or not Ignition Switch Plaintiffs have viable Independent Claims against New GM.

5.      Except for the modification to permit the assertion ~~and continued prosecution~~ of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.

6.      For the reasons set forth in the Decision, the Plaintiffs were prejudiced by the failure **of Old GM** to ~~receive~~**give them** the requisite notice of the deadline ("**Bar Date**") to file proofs of claim against the Old GM bankruptcy estate.  The Plaintiffs **who did not file a proof of claim prior to the Bar Date** may petition the Bankruptcy Court (on motion and notice) for authorization to file late ~~or amended~~ proofs of claim against the Old GM bankruptcy estate.  **The Court has not determined whether any late proof of claim will ultimately be allowed.**  However, based on the doctrine of equitable mootness, in no event shall **the assets of the GUC**

2

09-50026-smg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 978-16    Filed 05/22/15    Page 81 of 90
Pg 79 of 588

09-50026-reg    Doc 13136-2    Filed 05/12/15    Entered 05/12/15 17:00:31    Exhibit 2
Pg 4 of 16

**Trust held at any time in the past, now, or in the future (collectively, the "GUC Trust Assets** (as defined in the Decision**")**) be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims.  The preceding sentence shall not apply to any ~~Ignition Switch Plaintiff, Pre-Closing Accident Plaintiff, or Non-Ignition Switch Plaintiff~~**Plaintiffs** that had a claim previously allowed by the Court, but in no event shall they be entitled to increase the amount of such allowed claim without the prior authorization of the Bankruptcy Court or an appellate court following an appeal from the Bankruptcy Court.

7.    Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs against New GM that seek to hold it liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM.

**8.    (a)    Subject to the other provisions of this paragraph 8, the Ignition Switch Pre-Closing Accident Plaintiffs, including without limitation the Ignition Switch Pre-Closing Accident Plaintiffs identified in Exhibit "A" attached hereto, shall each dismiss, with prejudice, within 17 business days after the entry of this Judgment, any lawsuit commenced by them against New GM and, within 22 business days after the entry of this Judgment, each of the Ignition Switch Pre-Closing Accident Plaintiffs shall file with the Clerk of this Court evidence of the dismissal of such lawsuit.**

**(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "A," by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy**

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-10   Filed 05/22/15   Page 82 of 90
Pg 80 of 588

09-50026-reg   Doc 13136-2   Filed 05/12/15   Entered 05/12/15 17:00:31   Exhibit 2
Pg 5 of 16

Court. Please review the Judgment, including without limitation, the provisions of paragraph 8 of the Judgment."

(c)     If counsel for an Ignition Switch Pre-Closing Accident Plaintiff identified on Exhibit "A" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be dismissed, it shall file a pleading with this Court within 17 business days of  this Judgment ("No Dismissal Pleading").  The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading.  The Court will schedule a hearing thereon if it believes one is necessary.

(d)     For any lawsuit filed by Ignition Switch Pre-Closing Accident Plaintiffs that is dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Pre-Closing Accident Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Pre-Closing Accident Plaintiffs' rights against New GM that existed as of the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

9.     8. Except for the Independent Claims and Assumed Liabilities, if any, all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM based on concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery, are  barred and enjoined pursuant to

the Sale Order~~, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment~~.

**10.    (a)    Subject to the other provisions of this paragraph 10 and unless already dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch Plaintiffs shall each dismiss, with prejudice, on or before June 12, 2015, any lawsuit commenced by them against New GM. Exhibit "B" is a list of the lawsuits to be dismissed with prejudice. The lawsuits identified on Exhibit "B" include the Pre-Sale Consolidated Complaint. On or before June 15, 2015, the Ignition Switch Plaintiffs, other than those whose complaints already have been dismissed by operation of orders entered in MDL 2543, shall file with the Clerk of this Court evidence of the dismissal of such lawsuits that are required to be dismissed pursuant to this Judgment.**

**(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "B", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 10 of the Judgment."**

**(c)    If a counsel listed on Exhibit "B" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be dismissed, it shall file a No Dismissal Pleading with this Court within 17 business days of this Judgment. The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment. If a No Dismissal Pleading**

is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)    For any lawsuit of the Ignition Switch Plaintiffs listed on Exhibit "B" that is dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

11.    (a)    Subject to the other provisions of this paragraph 11 and unless already dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch Plaintiffs shall each amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled. Exhibit "C" is a list of the lawsuits that are to be amended by the Ignition Switch Plaintiffs. The lawsuits identified on Exhibit "C" include the Post-Sale Consolidated Complaint.

(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "C", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy

Court. Please review the Judgment, including without limitation, the provisions of paragraph 11 of the Judgment."

(c)     If a counsel listed in the lawsuits on Exhibit "C" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its allegations, claims or causes of action against New GM, should not be stricken, it shall file a pleading with this Court within 17 business days of this Judgment ("No Strike Pleading").  The No Strike Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a No Strike Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)     If an Ignition Switch Plaintiff fails to either (i) amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled, or (ii) timely file a No Strike Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("Strike Order") that directs the Ignition Switch Plaintiff to strike specifically-identified allegations, claims and/or causes of action contained in their complaint that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Strike Order.

(e)     For any allegations, claims or causes of action of the Ignition Switch Plaintiffs listed on Exhibit "C" that are stricken pursuant to this Judgment, (i) the statute

of limitations shall be tolled from the date of the amended complaint to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the claims or causes of action against New GM heretofore stricken pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the striking of such claims or causes of action pursuant to this Judgment shall be reinstated as if the striking of such claims or causes of action never occurred.

12. 9. The lawsuits captioned *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) and *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.) shall be subject to appropriate motion practice in the courts where those proceedings are currently pending, consistent with the Decision and this Judgment. **remain stayed without prejudice to the plaintiffs in such lawsuits seeking relief from the stay in this Bankruptcy Court for good cause shown.**

13. 10. (a) To the fullest extent permissible, the rulings set forth herein and in the Decision that proscribe claims and actions being taken against New GM **or the GUC Trust** shall apply equally to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs **including those identified on Exhibit "D" attached hereto**. As a result, the Sale Order remains unmodified and in full force and effect with respect to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs. To the extent an issue shall arise in the future as to whether (i) the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs were known or unknown creditors of the Debtors, or (ii) **(ii) the doctrine of equitable mootness bars the use of any GUC Trust Assets to satisfy late-filed claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and**

Non-Ignition Switch Plaintiffs, or (iii) the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale Order, the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs shall be required to first seek resolution of such issues from this Court before proceeding any further against New GM and/or the GUC Trust.

(b)     Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel for the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs identified on Exhibit "D", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 13 of the Judgment."

(c)     If a counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit, or certain claims or causes of action contained therein, against New GM should not be dismissed or stricken, it shall file a No Dismissal Pleading with this Court within 17 business days of this Judgment. If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)     If counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or a Non-Ignition Switch Plaintiff believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to believe that any of the GUC Trust Assets may be

used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court, it shall file a pleading with this Court within 17 business days of this Judgment ("GUC Trust Asset Pleading"). The GUC Trust Asset Pleading shall not reargue issues that were already decided by the Decision and Judgment. If a GUC Trust Asset Pleading is timely filed, the GUC Trust, the GUC Trust Unitholders and/or New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(e) If a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" fails to timely file a No Dismissal Pleading with the Court within the time period set forth in paragraphs 13(c) and (d) above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("Dismissal Order") that directs the Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff to dismiss with prejudice its lawsuit, or certain claims or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order. For any lawsuit, or any claims or causes of action contained therein, of the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs that are dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal, such that the appellate court finds that the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs can maintain the lawsuit or claims or causes of action against New GM heretofore dismissed or stricken

10

**pursuant to this Judgment, all of the Non-Ignition Switch Pre-Closing Accident Plaintiffs'**
**or Non-Ignition Switch Plaintiffs' rights against New GM that existed prior to the dismissal**
**of their lawsuit or the striking of claims or causes of action pursuant to this Judgment shall**
**be reinstated as if the dismissal or the striking of such claims or causes of action never**
**occurred.**

**14.**      11.    The Court adopts the legal standard for "fraud on the court" as set
forth in the Decision.

**15.**      12.    (a)    By agreement of New GM, Designated Counsel for the
Ignition Switch Plaintiffs, the GUC Trust, and the GUC Trust Unitholders, and approved by the
Court, no discovery **in the Bankruptcy Court** was conducted in connection with the resolution
of the Four Threshold Issues.  The Ignition Switch Pre-Closing Accident Plaintiffs did not
challenge the earlier decision barring**not to seek** discovery in **the Bankruptcy Court in**
connection with the **Bankruptcy Court's determination of the** Four Threshold Issues.  Instead,
New GM, Designated Counsel, the Groman Plaintiffs, the GUC Trust, and the GUC Trust
Unitholders developed and submitted to the Court a set of agreed upon stipulated facts.  Such
parties also submitted to the Bankruptcy Court certain disputed facts and exhibits.

(b)    The Court finds that the agreed upon factual stipulations were sufficient for
purposes of determining**The Court decided** the Four Threshold Issues, that none of the disputed
factual stipulations raised a genuine issue of material fact as to any of the Four Threshold Issues,
and that treating any of the disputed facts as part of the undisputed stipulated record would not
have affected the Decision **on the agreed upon stipulated facts only**.                                        (c)

The Groman Plaintiffs requested discovery with respect to the Four Threshold Issues but
the other parties opposed the **discovery** request**,** and the Court denied said request.  The**the**

09-50026-reg   Doc 13157-3   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Pg 88 of 588
Case 1:14-md-02543-JMF   Document 978-10   Filed 05/22/15   Page 40 of 90

09-50026-reg   Doc 13136-2   Filed 05/12/15   Entered 05/12/15 17:00:31   Exhibit 2
Pg 13 of 16

Groman Plaintiffs' ~~continuing request for such~~ discovery ~~is also denied~~**request**.                    ~~(d)~~

For these reasons (and others), the findings of fact in the Decision shall apply only for the purpose of this Court's resolution of the Four Threshold Issues and shall have no force or applicability in any other legal proceeding or matter, including without limitation, MDL 2543. **Notwithstanding the foregoing, in all events, however, the Decision and Judgment shall apply with respect to (a) the Court's interpretation of the enforceability of the Sale Order, and (b) the actions of the affected parties that are authorized and proscribed by the Decision and Judgment.**

**16.**            ~~13.~~     The Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based.

**17.**      ~~14.~~ Pursuant to Bankruptcy Rule 8006(e)(1), for the reasons stated in the Decision, the Court hereby certifies this Judgment for direct appeal to the Circuit Court ("**Appeal**").  The Ignition Switch Plaintiffs, the Pre-Closing Accident Plaintiffs, the Non-Ignition Switch Plaintiffs, New GM, the GUC Trust, the GUC Trust Unitholders and the Groman Plaintiffs each reserve all of their rights with respect to the Appeal, including the right to challenge any of the factual and legal findings made by the Court in the Decision and to challenge certification for direct appeal.

**18.**      ~~15.~~ The parties have stipulated that they shall not file any voluntary supplemental statements regarding the Court's certification of the Appeal as allowed pursuant to Bankruptcy Rule 8006(e)(2), and shall submit all statements either in support or against certification of the Appeal in the Circuit Court.

09-50026-reg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 978-16    Filed 05/22/15    Page 41 of 90
Pg 89 of 588

09-50026-reg    Doc 13136-2    Filed 05/12/15    Entered 05/12/15 17:00:31    Exhibit 2
Pg 14 of 16

**19.**    16. Count One of the amended complaint ("**Groman Complaint**") filed in

*Groman et al v. General Motors LLC* (Adv. Proc. No. 14-01929 (REG)) is dismissed with

prejudice.  The remaining counts of the Groman Complaint that deal with the "fraud on the

court" issue are deferred and stayed until 30 days after all appeals of the Decision and Judgment

are decided. With respect to Count One of the Groman Complaint, (i) the statute of limitations

shall be tolled from the date of dismissal of Count One to 30 days after all appeals of the

Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal

such that the appellate court finds that the Groman Plaintiffs can maintain the cause of action in

Count One of the Groman Complaint heretofore dismissed pursuant to this Judgment, the

Groman  Plaintiffs' rights against New GM that existed as of the dismissal of Count One shall be

reinstated as if the dismissal of Count One never occurred.

**20.**    17. New GM is hereby authorized to serve this Judgment and the Decision upon

any additional party (and/or their attorney) (each, an "**Additional Party**") that commences a

lawsuit **and/or is not otherwise on Exhibits "A" through "D" hereto** (each, an "**Additional

Lawsuit**") against New GM that would be proscribed by the Sale Order (as modified by the

Decision and Judgment).  Any Additional Party shall have 17 business days upon receipt of

service by New GM of the Decision and Judgment to dismiss, without**with** prejudice, such

Additional Lawsuit or the allegations, claims or causes of action contained in such Additional

Lawsuit that would violate the Decision, this Judgment, and the Sale Order (as modified by the

Decision and Judgment).  If any Additional Party has a good faith basis to maintain that the

Additional Lawsuit or certain allegations, claims or causes of action contained in such Additional

Lawsuit should not be dismissed without**with** prejudice, such Additional Party shall, within 17

business days upon receipt of the Decision and Judgment, file with this Court a pleading ("No

13

09-50026-smg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF   Document 978-10   Filed 05/22/15   Page 42 of 90
Pg 90 of 588

09-50026-reg    Doc 13136-2    Filed 05/12/15    Entered 05/12/15 17:00:31    Exhibit 2
Pg 15 of 16

Dismissal Pleading") explaining why such Additional Lawsuit or certain claims or causes of action contained therein should not be dismissed ~~without~~**with** prejudice. The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment.  New GM shall file a response to the No Dismissal Pleading within 17 business days of service of the No Dismissal Pleading.  The Court will schedule a hearing thereon if it believes one is necessary. If an Additional Party fails to either (i) dismiss ~~without~~**with** prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that New GM asserts violates the Decision, Judgment, and/or Sale Order (as modified by the Decision and Judgment), or (ii) timely file a No Dismissal Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached Dismissal Order that directs the Additional Party to dismiss ~~without~~**with** prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order.  With respect to any lawsuit that is dismissed pursuant to this Paragraph, (i) the statute of limitations shall be tolled from the date of dismissal of such lawsuit to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Additional Party can maintain the lawsuit heretofore dismissed pursuant to this Judgment, the Additional Party's rights against New GM that existed as of the dismissal of the lawsuit shall be reinstated as if the dismissal of the lawsuit never occurred.  For the avoidance of doubt, nothing in this Paragraph ~~17~~**20** shall apply to the Amended Consolidated Complaint to be filed in ~~the~~ MDL ~~proceeding~~**2543** on or before June 12, 2015.

Dated: New York, New York
      May __, 2015

14

_____

UNITED STATES BANKRUPTCY JUDGE

# Exhibit 3

09-50026-mg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Pg 93 of 588
Case 1:14-md-02543-JMF Document 1108-10 Filed 05/22/15 Page 48 of 90

09-50026-reg Doc 13136-3 Filed 05/12/15 Entered 05/12/15 17:00:31 Exhibit 3
Pg 2 of 15

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
In re                                                   :      Chapter 11
                                                        :
MOTORS LIQUIDATION COMPANY, *et al.*,                   :      Case No.: 09-50026 (REG)
          f/k/a General Motors Corp., *et al.*          :
                                                        :
                                  Debtors.              :      (Jointly Administered)
-------------------------------------------------------x

### JUDGMENT

For the reasons set forth in the Court's *Decision on Motion to Enforce Sale Order*, entered

on April 15, 2015 ("**Decision**"),[1] it is hereby ORDERED AND ADJUDGED as follows:

1.       For the reasons set forth in the Decision, the Ignition Switch Plaintiffs and the

Ignition Switch Pre-Closing Accident Plaintiffs (collectively, the "**Plaintiffs**") were "known

creditors" of the Debtors.   The Plaintiffs did not receive the requisite notice ~~from Old GM~~ of the

sale of substantially all of the assets of Old GM to New GM ("**363 Sale**").

2.       Subject to the sole exception of the Independent Claims (as herein defined), for the

reasons set forth in the Decision, the Ignition Switch Plaintiffs have not ~~established~~demonstrated

~~that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish~~ a due

process violation with respect to the 363 Sale.

**Comment [DS1]:** The strikethrough language in this redline is from New GM's version of the Judgment, and the additional underlined language is from Designated Counsel's version of the Judgment

**Comment [DS2]:** The 363 Sale notice came from Old GM and the deleted clause is accurate  To strike it is to imply that someone else was responsible for the 363 Sale notice, which clearly is not true

**Comment [DS3]:** The parties agreed that the Court could use its knowledge of the 2009 bankruptcy proceedings in ruling on the Four Threshold Issues  The Court's due process findings were not simply based on what the Ignition Switch Plaintiffs "failed to demonstrate"  The clause "for the reasons set forth in the Decision" was intended to subsume all of the Court's findings on this point

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision   For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt No  12826], at 3); (ii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred prior to the closing of the 363 Sale; (iii) "**Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles; (iv) "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of Pre-Closing Accident Plaintiffs that are not Ignition Switch Pre-Closing Accident Plaintiffs; and (v) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM vehicle

25598126v~5~1

3.      For the reasons set forth in the Decision, the Ignition Switch Pre-Closing Accident Plaintiffs have not ~~established~~demonstrated that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish a due process violation with respect to the 363 Sale.

> **Comment [DS4]:** Same as comment for paragraph 2

4.      ~~The Ignition Switch Plaintiffs were prejudiced by the failure of Old GM to give them the requisite notice of the 363 Sale with respect to the Independent Claims.~~   For the reasons set forth in the Decision, the Ignition Switch Plaintiffs established prejudice and thus a due process violation with respect to the Independent Claims.   The Sale Order shall be deemed modified to permit the assertion and continued prosecution of Independent Claims.   For purposes of this Judgment, "**Independent Claims**" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM, whether or not involving Old GM vehicles or parts, that are based solely on New GM's own, independent, post-Closing acts or conduct.   Nothing set forth herein ~~should~~shall be construed to imply whether or not Ignition Switch Plaintiffs have viable Independent Claims against New GM.

> **Comment [DS5]:** This was the Court's finding The Designated Counsel formulation does not tie the "prejudice" issue to the 363 Sale

> **Comment [DS6]:** Continued prosecution assumes that Independent Claims have been asserted and the Court did not make this finding

> **Comment [DS7]:** The Independent Claims issue was a modification of the Sale Order that dealt with Old GM vehicles and parts It did not deal with anything else, including New GM conduct for New GM vehicles To suggest otherwise is to take this finding out of the context that it was made

5.      Except for the modification to permit the assertion and continued prosecution of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.

> **Comment [DS8]:** Same comment as in paragraph 4

6.      For the reasons set forth in the Decision, the Plaintiffs were prejudiced by the failure ~~of Old GM~~ to ~~give them~~receive the requisite notice of the deadline ("**Bar Date**") to file proofs of claim against the Old GM bankruptcy estate.   The Plaintiffs ~~who did not file a proof of claim prior to the Bar Date~~ may petition the Bankruptcy Court (on motion and notice) for authorization to file late or amended proofs of claim against the Old GM bankruptcy estate.   ~~The Court has not determined whether any late proof of claim will ultimately be allowed.~~  However, based on the doctrine of equitable mootness, in no event shall ~~the assets of the GUC Trust held at~~

> **Comment [DS9]:** Point 4 of Letter

> **Comment [DS10]:** Same comment as paragraph 1 as to Old GM being responsible for sending out the Bar Date notice

> **Comment [DS11]:** The Court did not deal with the concept of amended claims  Rather, it discussed the possibility of late filed claims only

> **Comment [DS12]:** This statement is true and to take it out, implies the opposite

any time in the past, now, or in the future (collectively, the "GUC Trust Assets" (as defined in the Decision) be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims. The preceding sentence shall not apply to any Plaintiff Ignition Switch Plaintiff, Pre-Closing Accident Plaintiff, or Non-Ignition Switch Plaintiff that had a claim previously allowed by the Court, but in no event shall they be entitled to increase the amount of such allowed claim without the prior authorization of the Bankruptcy Court or an appellate court following an appeal from the Bankruptcy Court.

> **Comment [DS13]:** The Decision dealt with GUC Trust Assets in terms of what the Plan says That is why the Court noted that the Plan cannot be modified

7. Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs against New GM that seek to hold it liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM.

8. (a) Subject to the other provisions of this paragraph 8, the Ignition Switch Pre-Closing Accident Plaintiffs, including without limitation the Ignition Switch Pre-Closing Accident Plaintiffs identified in Exhibit "A" attached hereto, shall each dismiss, with prejudice, within 17 business days after the entry of this Judgment, any lawsuit commenced by them against New GM and, within 22 business days after the entry of this Judgment, each of the Ignition Switch Pre-Closing Accident Plaintiffs shall file with the Clerk of this Court evidence of the dismissal of such lawsuit.

> **Comment [DS14]:** Point 1 in the Letter

(b) Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "A," by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note

09-50026-mg  Doc 13157  Filed 05/22/15  Entered 05/22/15 17:06:01  Main Document
Case 1:14-md-02543-JMF  Document 848-10  Filed 05/22/15  Page 48 of 90
Pg 96 of 588

09-50026-reg  Doc 13136-3  Filed 05/12/15  Entered 05/12/15 17:00:31  Exhibit 3
Pg 5 of 15

that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 8 of the Judgment."

(c)    If counsel for an Ignition Switch Pre-Closing Accident Plaintiff identified on Exhibit "A" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be dismissed, it shall file a pleading with this Court within 17 business days of this Judgment (**"No Dismissal Pleading"**). The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment. If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)    For any lawsuit filed by Ignition Switch Pre-Closing Accident Plaintiffs that is dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Pre-Closing Accident Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Pre-Closing Accident Plaintiffs' rights against New GM that existed as of the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

8.    9. Except for the Independent Claims and Assumed Liabilities, if any, all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a based on successor liability theory of recovery, are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment.

> **Comment [DS15]:** Point 3 in the Letter

> **Comment [DS16]:** Point 1 in the Letter

10.    (a)    Subject to the other provisions of this paragraph 10 and unless already
dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch
Plaintiffs shall each dismiss, with prejudice, on or before June 12, 2015, any lawsuit commenced
by them against New GM.    Exhibit "B" is a list of the lawsuits to be dismissed with prejudice.
The lawsuits identified on Exhibit "B" include the Pre-Sale Consolidated Complaint.    On or
before June 15, 2015, the Ignition Switch Plaintiffs, other than those whose complaints already
have been dismissed by operation of orders entered in MDL 2543, shall file with the Clerk of this
Court evidence of the dismissal of such lawsuits that are required to be dismissed pursuant to this
Judgment.

(b)    Within two (2) business days of the entry of this Judgment, New GM shall
serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "B", by e-mail,
facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note
that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the
Judgment, including without limitation, the provisions of paragraph 10 of the Judgment."

(c)    If a counsel listed on Exhibit "B" believes that, notwithstanding the
Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM
should not be dismissed, it shall file a No Dismissal Pleading with this Court within 17 business
days of this Judgment.    The No Dismissal Pleading shall not reargue issues that were already
decided by the Decision and Judgment.    If a No Dismissal Pleading is timely filed, New GM shall
have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it
believes one is necessary.

(d)    For any lawsuit of the Ignition Switch Plaintiffs listed on Exhibit "B" that is
dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of

**Comment [DS17]:** Point 1 in the Letter

5

dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

11.    (a)    Subject to the other provisions of this paragraph 11 and unless already dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch Plaintiffs shall each amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled.   Exhibit "C" is a list of the lawsuits that are to be amended by the Ignition Switch Plaintiffs.   The lawsuits identified on Exhibit "C" include the Post-Sale Consolidated Complaint.

(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "C", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 11 of the Judgment."

(c)    If a counsel listed in the lawsuits on Exhibit "C" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its allegations, claims or causes of action against New GM, should not be stricken, it shall file a pleading with this Court within 17 business days of this Judgment ("**No Strike Pleading**").   The No Strike Pleading shall not reargue issues that were already decided by the Decision and

**Comment [DS18]:** Point 1 in the Letter

6

~~Judgment. If a No Strike Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.~~

~~(d) If an Ignition Switch Plaintiff fails to either (i) amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled, or (ii) timely file a No Strike Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("**Strike Order**") that directs the Ignition Switch Plaintiff to strike specifically identified allegations, claims and/or causes of action contained in their complaint that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Strike Order.~~

~~(e) For any allegations, claims or causes of action of the Ignition Switch Plaintiffs listed on Exhibit "C" that are stricken pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of the amended complaint to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the claims or causes of action against New GM heretofore stricken pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the striking of such claims or causes of action pursuant to this Judgment shall be reinstated as if the striking of such claims or causes of action never occurred.~~

**9.** ~~12.~~ The lawsuits captioned *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) and *State of Arizona v. General Motors*

7

09-50026-smg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 5780-10   Filed 05/22/15   Page 92 of 90
Pg 100 of 588

09-50026-reg   Doc 13136-3   Filed 05/12/15   Entered 05/12/15 17:00:31   Exhibit 3
Pg 9 of 15

*LLC*, No. CV2014-014090 (Maricopa County, Ariz.) shall ~~remain stayed without prejudice to the plaintiffs in such lawsuits seeking relief from the stay in this Bankruptcy Court for good cause shown~~. be subject to appropriate motion practice in the courts where those proceedings are currently pending, consistent with the Decision and this Judgment. —

**Comment [DS19]:** Point 2 in the Letter

10.   ~~13.  (a)~~ To the fullest extent permissible, the rulings set forth herein and in the Decision that proscribe claims and actions being taken against New GM ~~or the GUC Trust~~ shall apply equally to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs ~~including those identified on Exhibit "D" attached hereto~~.   As a result, the Sale Order remains unmodified and in full force and effect with respect to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs.   To the extent an issue shall arise in the future as to whether (i) the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs were known or unknown creditors of the Debtors, ~~(ii) the doctrine of equitable mootness bars the use of any GUC Trust Assets to satisfy late-filed claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs, or (iii)~~or (ii) the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale Order, the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs shall be required to first seek resolution of such issues from this Court before proceeding any further against New GM ~~and/or the GUC Trust~~.

~~(b)     Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel for the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs identified on Exhibit "D", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states:~~

**Comment [DS20]:** Point 1 in the Letter

8

09-50026-mg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 1784-10    Filed 05/22/15    Page 88 of 90
Pg 101 of 588

09-50026-reg    Doc 13136-3    Filed 05/12/15    Entered 05/12/15 17:00:31    Exhibit 3
Pg 10 of 15

"The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 13 of the Judgment."

(c)    If a counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit, or certain claims or causes of action contained therein, against New GM should not be dismissed or stricken, it shall file a No Dismissal Pleading with this Court within 17 business days of this Judgment.    If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)    If counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or a Non-Ignition Switch Plaintiff believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to believe that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court, it shall file a pleading with this Court within 17 business days of this Judgment ("**GUC Trust Asset Pleading**").    The GUC Trust Asset Pleading shall not reargue issues that were already decided by the Decision and Judgment.    If a GUC Trust Asset Pleading is timely filed, the GUC Trust, the GUC Trust Unitholders and/or New GM shall have 17 business days to respond to such pleading.    The Court will schedule a hearing thereon if it believes one is necessary.

(e)    If a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" fails to timely file a No Dismissal Pleading with the Court within the time period set forth in paragraphs 13(c) and (d) above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("**Dismissal Order**") that directs the Non-Ignition Switch Pre-Closing Accident Plaintiff or

9

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-10   Filed 05/22/15   Page 84 of 90
Pg 102 of 588

09-50026-reg   Doc 13136-3   Filed 05/12/15   Entered 05/12/15 17:00:31   Exhibit 3
Pg 11 of 15

~~Non-Ignition Switch Plaintiff to dismiss with prejudice its lawsuit, or certain claims or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order. For any lawsuit, or any claims or causes of action contained therein, of the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs that are dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal, such that the appellate court finds that the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs can maintain the lawsuit or claims or causes of action against New GM heretofore dismissed or stricken pursuant to this Judgment, all of the Non-Ignition Switch Pre-Closing Accident Plaintiffs' or Non-Ignition Switch Plaintiffs' rights against New GM that existed prior to the dismissal of their lawsuit or the striking of claims or causes of action pursuant to this Judgment shall be reinstated as if the dismissal or the striking of such claims or causes of action never occurred.~~

~~14.~~ 11.  The Court adopts the legal standard for "fraud on the court" as set forth in the Decision.

~~15.~~   12.   (a)   By agreement of New GM, Designated Counsel for the Ignition Switch Plaintiffs, the GUC Trust, and the GUC Trust Unitholders, and approved by the Court, no discovery ~~in the Bankruptcy Court~~ was conducted in connection with the resolution of the Four Threshold Issues. The Ignition Switch Pre-Closing Accident Plaintiffs did not challenge the earlier decision ~~not to seek~~ barring discovery in ~~the Bankruptcy Court in~~ connection with the ~~Bankruptcy Court's determination of the~~ Four Threshold Issues. Instead, New GM, Designated

> **Comment [DS21]:** The parties (other than the Groman Plaintiffs) agreed to no discovery and the Court agreed with that determination. It did not enter an order "barring discovery."

10

09-50026-mg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 978-10 Filed 05/22/15 Page 53 of 90
Pg 103 of 588

09-50026-reg Doc 13136-3 Filed 05/12/15 Entered 05/12/15 17:00:31 Exhibit 3
Pg 12 of 15

Counsel, the Groman Plaintiffs, the GUC Trust, and the GUC Trust Unitholders developed and

submitted to the Court a set of agreed upon stipulated facts. Such parties also submitted to the

Bankruptcy Court certain disputed facts and exhibits.

(b)    The Court ~~decided~~finds that the agreed-upon factual stipulations were

sufficient for purposes of determining the Four Threshold Issues ~~on the agreed upon stipulated~~

~~facts only~~, that none of the disputed factual stipulations raised a genuine issue of material fact as to

any of the Four Threshold Issues, and that treating any of the disputed facts as part of the

undisputed stipulated record would not have affected the Decision.

> **Comment [DS22]:** Point 5 in the Letter

(c)    The Groman Plaintiffs requested discovery with respect to the Four

Threshold Issues but the other parties opposed the ~~discovery~~ request~~,~~ and the Court denied ~~the~~said

request. ~~The~~ Groman Plaintiffs' continuing request for such discovery ~~request~~is also denied.

> **Comment [DS23]:** This last sentence implies there has been a new request after the Decision which is not true

(d)    For these reasons (and others), the findings of fact in the Decision shall

apply only for the purpose of this Court's resolution of the Four Threshold Issues and shall have no

force or applicability in any other legal proceeding or matter, including without limitation, MDL

2543. ~~Notwithstanding the foregoing, in all events, however, the Decision and Judgment shall~~

~~apply with respect to (a) the Court's interpretation of the enforceability of the Sale Order, and (b)~~

~~the actions of the affected parties that are authorized and proscribed by the Decision and Judgment.~~

> **Comment [DS24]:** The Court's ruling on the Four Threshold Issues is relevant to the actions authorized and proscribed by the Judgment    This point should be made explicit    The deletion creates an ambiguity

~~16.~~13.   The Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, to

construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based.

14.    ~~17.~~Pursuant to Bankruptcy Rule 8006(e)(1), for the reasons stated in the Decision,

the Court hereby certifies this Judgment for direct appeal to the Circuit Court ("**Appeal**"). The

Ignition Switch Plaintiffs, the Pre-Closing Accident Plaintiffs, the Non-Ignition Switch Plaintiffs,

New GM, the GUC Trust, the GUC Trust Unitholders and the Groman Plaintiffs each reserve all of

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 5783-16   Filed 05/22/15   Page 58 of 90
Pg 104 of 588

09-50026-reg   Doc 13136-3   Filed 05/12/15   Entered 05/12/15 17:00:31   Exhibit 3
Pg 13 of 15

their rights with respect to the Appeal, including the right to challenge any of the factual and legal findings made by the Court in the Decision and to challenge certification for direct appeal.

15.   ~~18.~~ The parties have stipulated that they shall not file any voluntary supplemental statements regarding the Court's certification of the Appeal as allowed pursuant to Bankruptcy Rule 8006(e)(2), and shall submit all statements either in support or against certification of the Appeal in the Circuit Court.

16.   ~~19.~~ Count One of the amended complaint ("**Groman Complaint**") filed in *Groman et al v. General Motors LLC* (Adv. Proc. No. 14-01929 (REG)) is dismissed with prejudice.   The remaining counts of the Groman Complaint that deal with the "fraud on the court" issue are deferred and stayed until 30 days after all appeals of the Decision and Judgment are decided. With respect to Count One of the Groman Complaint, (i) the statute of limitations shall be tolled from the date of dismissal of Count One to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Groman Plaintiffs can maintain the cause of action in Count One of the Groman Complaint heretofore dismissed pursuant to this Judgment, the Groman  Plaintiffs' rights against New GM that existed as of the dismissal of Count One shall be reinstated as if the dismissal of Count One never occurred.

17.   ~~20.~~ New GM is hereby authorized to serve this Judgment and the Decision upon any additional party (and/or their attorney) (each, an "**Additional Party**") that commences a lawsuit ~~and/or is otherwise on Exhibits "A" through "D" hereto~~ (each, an "**Additional Lawsuit**") against New GM that would be proscribed by the Sale Order (as modified by the Decision and Judgment).  Any Additional Party shall have 17 business days upon receipt of service by New GM of the Decision and Judgment to dismiss, ~~with~~without prejudice, such

Comment [DS25]: A new action commenced after the Judgment is a violation of the Decision and the dismissal should be with prejudice

12

Additional Lawsuit or the allegations, claims or causes of action contained in such Additional

Lawsuit that would violate the Decision, this Judgment, and the Sale Order (as modified by the

Decision and Judgment).  If any Additional Party has a good faith basis to maintain that the

Additional Lawsuit or certain allegations, claims or causes of action contained in such Additional

Lawsuit should not be dismissed ~~with~~without prejudice, such Additional Party shall, within 17

business days upon receipt of the Decision and Judgment, file with this Court a pleading ("**No**

**Dismissal Pleading"**) explaining why such Additional Lawsuit or certain claims or causes of

action contained therein should not be dismissed ~~with~~without prejudice. The No Dismissal

Pleading shall not reargue issues that were already decided by the Decision and Judgment.   New

GM shall file a response to the No Dismissal Pleading within 17 business days of service of the No

Dismissal Pleading.   The Court will schedule a hearing thereon if it believes one is necessary.   If

an Additional Party fails to either (i) dismiss ~~with~~without prejudice the Additional Lawsuit or the

claims and/or causes of action contained therein that New GM asserts violates the Decision,

Judgment, and/or Sale Order (as modified by the Decision and Judgment), or (ii) timely file a No

Dismissal Pleading with the Court within the time period set forth above, New GM shall be

permitted to file with this Court a notice of presentment on five (5) business days' notice, with an

attached Dismissal Order that directs the Additional Party to dismiss ~~with~~without prejudice the

Additional Lawsuit or the claims and/or causes of action contained therein that violate the

Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within

17 business days of receipt of the Dismissal Order.   With respect to any lawsuit that is dismissed

pursuant to this Paragraph, (i) the statute of limitations shall be tolled from the date of dismissal of

such lawsuit to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the

Decision and Judgment are reversed on appeal such that the appellate court finds that the

13

Additional Party can maintain the lawsuit heretofore dismissed pursuant to this Judgment, the

Additional Party's rights against New GM that existed as of the dismissal of the lawsuit shall be

reinstated as if the dismissal of the lawsuit never occurred.   For the avoidance of doubt, nothing in

this Paragraph 2017 shall apply to the Amended Consolidated Complaint to be filed in the MDL

2543 proceeding on or before June 12, 2015.

Dated: New York, New York
       May __, 2015

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

14

**Amended and Restated Exhibits 2 and 3
to  the Letter Regarding Proposed Judgment In
Connection To Decision On Motion To Enforce Sale
Order (related document(s) 13136)**

# Exhibit 2

09-50026-mg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 978-10    Filed 05/22/15    Page 81 of 90
Pg 109 of 588

09-50026-reg    Doc 13139-1    Filed 05/12/15    Entered 05/12/15 17:52:19    Exhibit 2
Pg 2 of 16

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
In re                                             :    Chapter 11
                                                  :
MOTORS LIQUIDATION COMPANY, *et al.*,             :    Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., *et al.*      :
                                                  :
                                Debtors.          :    (Jointly Administered)
----------------------------------------------------------------x

## JUDGMENT

For the reasons set forth in the Court's *Decision on Motion to Enforce Sale Order*, entered on April 15, 2015 ("**Decision**"),[1] it is hereby ORDERED AND ADJUDGED as follows:

1.      For the reasons set forth in the Decision, the Ignition Switch Plaintiffs and the Ignition Switch Pre-Closing Accident Plaintiffs (collectively, the "**Plaintiffs**") were "known creditors" of the Debtors.  The Plaintiffs did not receive the requisite notice *from Old GM* of the sale of substantially all of the assets of Old GM to New GM ("**363 Sale**").

2.      Subject to the sole exception of the Independent Claims (as herein defined), for the reasons set forth in the Decision, the Ignition Switch Plaintiffs have not ~~demonstrated that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish~~**established** a due process violation with respect to the 363 Sale.

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision.  For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt. No. 12826], at 3); (ii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred prior to the closing of the 363 Sale; (iii) "**Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles; (iv) "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of Pre-Closing Accident Plaintiffs that are not Ignition Switch Pre-Closing Accident Plaintiffs; and (v) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM vehicle.

09-50026-reg  Doc 13157-1  Filed 05/22/15  Entered 05/22/15 17:06:01  Main Document
Case 1:14-md-02543-JMF  Document 9718-16  Filed 05/22/15  Page 82 of 90
Pg 110 of 588

09-50026-reg  Doc 13139-1  Filed 05/12/15  Entered 05/12/15 17:52:19  Exhibit 2
Pg 3 of 16

3.      For the reasons set forth in the Decision, the Ignition Switch Pre-Closing Accident Plaintiffs have not ~~demonstrated that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish~~**established** a due process violation with respect to the 363 Sale.

4.      **The Ignition Switch Plaintiffs were prejudiced by the failure of Old GM to give them the requisite notice of the 363 Sale with respect to the Independent Claims.**  For the reasons set forth in the Decision, the Ignition Switch Plaintiffs established ~~prejudice and thus~~ a due process violation with respect to the Independent Claims.  The Sale Order shall be deemed modified to permit the assertion ~~and continued prosecution~~ of Independent Claims.  For purposes of this Judgment**,** "**Independent Claims**" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM**,** ~~whether or not~~ involving Old GM vehicles or parts~~,~~ that are based solely on New GM's own, independent, post-Closing acts or conduct.  Nothing set forth herein ~~shall~~**should** be construed to imply whether or not Ignition Switch Plaintiffs have viable Independent Claims against New GM.

5.      Except for the modification to permit the assertion ~~and continued prosecution~~ of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.

6.      For the reasons set forth in the Decision, the Plaintiffs were prejudiced by the failure **of Old GM** to ~~receive~~**give them** the requisite notice of the deadline ("**Bar Date**") to file proofs of claim against the Old GM bankruptcy estate.  The Plaintiffs **who did not file a proof of claim prior to the Bar Date** may petition the Bankruptcy Court (on motion and notice) for authorization to file late ~~or amended~~ proofs of claim against the Old GM bankruptcy estate.  **The Court has not determined whether any late proof of claim will ultimately be allowed.**  However, based on the doctrine of equitable mootness, in no event shall **the assets of the GUC**

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-16   Filed 05/22/15   Page 63 of 90
Pg 111 of 588

09-50026-reg   Doc 13139-1   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 2
Pg 4 of 16

Trust held at any time in the past, now, or in the future (collectively, the "**GUC Trust Assets** (as defined in the Decision"") be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims.  The preceding sentence shall not apply to any Ignition Switch Plaintiff, Pre Closing Accident Plaintiff, or Non Ignition Switch Plaintiff**Plaintiffs** that had a claim previously allowed by the Court, but in no event shall they be entitled to increase the amount of such allowed claim without the prior authorization of the Bankruptcy Court or an appellate court following an appeal from the Bankruptcy Court.

7.     Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs against New GM that seek to hold it liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM.

**8.     (a)     Subject to the other provisions of this paragraph 8, the Ignition Switch Pre-Closing Accident Plaintiffs, including without limitation the Ignition Switch Pre-Closing Accident Plaintiffs identified in Exhibit "A" attached hereto, shall each dismiss, with prejudice, within 17 business days after the entry of this Judgment, any lawsuit commenced by them against New GM and, within 22 business days after the entry of this Judgment, each of the Ignition Switch Pre-Closing Accident Plaintiffs shall file with the Clerk of this Court evidence of the dismissal of such lawsuit.**

**(b)     Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "A," by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy**

3

Court. Please review the Judgment, including without limitation, the provisions of paragraph 8 of the Judgment."

(c)      If counsel for an Ignition Switch Pre-Closing Accident Plaintiff identified on Exhibit "A" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be dismissed, it shall file a pleading with this Court within 17 business days of  this Judgment ("No Dismissal Pleading").  The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading.  The Court will schedule a hearing thereon if it believes one is necessary.

(d)      For any lawsuit filed by Ignition Switch Pre-Closing Accident Plaintiffs that is dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Pre-Closing Accident Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Pre-Closing Accident Plaintiffs' rights against New GM that existed as of the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

9.      8. Except for the Independent Claims and Assumed Liabilities, if any, all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM based on concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery, are barred and enjoined pursuant

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 5748-10   Filed 05/22/15   Page 68 of 90
Pg 113 of 588

09-50026-reg   Doc 13139-1   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 2
Pg 6 of 16

to the Sale Order, ~~and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment~~.

10.      (a)      Subject to the other provisions of this paragraph 10 and unless already dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch Plaintiffs shall each dismiss, with prejudice, on or before June 12, 2015, any lawsuit commenced by them against New GM.  Exhibit "B" is a list of the lawsuits to be dismissed with prejudice.  The lawsuits identified on Exhibit "B" include the Pre-Sale Consolidated Complaint.  On or before June 15, 2015, the Ignition Switch Plaintiffs, other than those whose complaints already have been dismissed by operation of orders entered in MDL 2543, shall file with the Clerk of this Court evidence of the dismissal of such lawsuits that are required to be dismissed pursuant to this Judgment.

(b)      Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "B", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court.  Please review the Judgment, including without limitation, the provisions of paragraph 10 of the Judgment."

(c)      If a counsel listed on Exhibit "B" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be dismissed, it shall file a No Dismissal Pleading with this Court within 17 business days of this Judgment.  The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a No Dismissal Pleading

5

is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)    For any lawsuit of the Ignition Switch Plaintiffs listed on Exhibit "B" that is dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

11.    (a)    Subject to the other provisions of this paragraph 11 and unless already dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch Plaintiffs shall each amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled. Exhibit "C" is a list of the lawsuits that are to be amended by the Ignition Switch Plaintiffs. The lawsuits identified on Exhibit "C" include the Post-Sale Consolidated Complaint.

(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "C", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy

Court. Please review the Judgment, including without limitation, the provisions of paragraph 11 of the Judgment."

(c)     If a counsel listed in the lawsuits on Exhibit "C" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its allegations, claims or causes of action against New GM, should not be stricken, it shall file a pleading with this Court within 17 business days of this Judgment ("No Strike Pleading"). The No Strike Pleading shall not reargue issues that were already decided by the Decision and Judgment. If a No Strike Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)     If an Ignition Switch Plaintiff fails to either (i) amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled, or (ii) timely file a No Strike Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("Strike Order") that directs the Ignition Switch Plaintiff to strike specifically-identified allegations, claims and/or causes of action contained in their complaint that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Strike Order.

(e)     For any allegations, claims or causes of action of the Ignition Switch Plaintiffs listed on Exhibit "C" that are stricken pursuant to this Judgment, (i) the statute

7

of limitations shall be tolled from the date of the amended complaint to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the claims or causes of action against New GM heretofore stricken pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the striking of such claims or causes of action pursuant to this Judgment shall be reinstated as if the striking of such claims or causes of action never occurred.

**12.** 9. The lawsuits captioned *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) and *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.) shall be subject to appropriate motion practice in the courts where those proceedings are currently pending, consistent with the Decision and this Judgment. **remain stayed without prejudice to the plaintiffs in such lawsuits seeking relief from the stay in this Bankruptcy Court for good cause shown.**

**13.** 10. The **(a)** **To the fullest extent permissible, the** rulings set forth herein and in the Decision that proscribe claims and actions being taken against New GM **or the GUC Trust** shall apply to the "Identified Parties"[2] who were heard during the proceedings regarding the Four Threshold Issues. They shall also apply to other plaintiffs in these proceedings, subject to any objection ("**Objection Pleading**") submitted by any such party within 17 business days of the entry of this Judgment. New GM shall file a response to any such Objection Pleading within 17 business days of service. The Court will schedule a hearing thereon if it believes one is necessary. The rulings set forth herein are without prejudice to the submission of other objections to New GM's Motions to Enforce **equally to the Non-Ignition Switch Pre-Closing**

---

[2] "**Identified Parties**" as defined in the Court's Scheduling Order entered on May 16, 2014 (ECF No. 12697), and persons that have asserted Pre-Closing personal injury and wrongful death claims against New GM based on the Ignition Switch Defect (as defined in the Decision).

**Accident Plaintiffs and the Non-Ignition Switch Plaintiffs including those identified on Exhibit "D" attached hereto. As a result, the** Sale Order **remains unmodified and in full force and effect with respect to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs**. To the extent an issue shall arise in the future as to whether (i) the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs were known or unknown creditors of the Debtors, ~~or (ii)~~ **(ii) the doctrine of equitable mootness bars the use of any GUC Trust Assets to satisfy late-filed claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs, or (iii)** the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale Order, the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs shall be required to first seek resolution of such issues from this Court before proceeding any further against New GM **and/or the GUC Trust**.

> (b) **Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel for the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs identified on Exhibit "D", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 13 of the Judgment."**

> (c) **If a counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit, or certain claims or causes of action contained therein, against New GM should not be dismissed or**

9

09-50026-mg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 978-10    Filed 05/22/15    Page 40 of 90
Pg 118 of 588

09-50026-reg    Doc 13139-1    Filed 05/12/15    Entered 05/12/15 17:52:19    Exhibit 2
Pg 11 of 16

stricken, it shall file a No Dismissal Pleading with this Court within 17 business days of this Judgment.  If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)    If counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or a Non-Ignition Switch Plaintiff believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to believe that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court, it shall file a pleading with this Court within 17 business days of this Judgment ("GUC Trust Asset Pleading").  The GUC Trust Asset Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a GUC Trust Asset Pleading is timely filed, the GUC Trust, the GUC Trust Unitholders and/or New GM shall have 17 business days to respond to such pleading.  The Court will schedule a hearing thereon if it believes one is necessary.

(e)    If a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" fails to timely file a No Dismissal Pleading with the Court within the time period set forth in paragraphs 13(c) and (d) above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("Dismissal Order") that directs the Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff to dismiss with prejudice its lawsuit, or certain claims or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order.  For any lawsuit,

10

09-50026-reg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-10   Filed 05/22/15   Page 41 of 90
Pg 119 of 588

09-50026-reg   Doc 13139-1   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 2
Pg 12 of 16

**or any claims or causes of action contained therein, of the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs that are dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal, such that the appellate court finds that the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs can maintain the lawsuit or claims or causes of action against New GM heretofore dismissed or stricken pursuant to this Judgment, all of the Non-Ignition Switch Pre-Closing Accident Plaintiffs' or Non-Ignition Switch Plaintiffs' rights against New GM that existed prior to the dismissal of their lawsuit or the striking of claims or causes of action pursuant to this Judgment shall be reinstated as if the dismissal or the striking of such claims or causes of action never occurred.**

**14.**   ~~11.~~   The Court adopts the legal standard for "fraud on the court" as set forth in the Decision.

**15.**   ~~12.~~   ~~(a)~~   By agreement of New GM, Designated Counsel for the Ignition Switch Plaintiffs, the GUC Trust, and the GUC Trust Unitholders, and approved by the Court, no discovery **in the Bankruptcy Court** was conducted in connection with the resolution of the Four Threshold Issues.  The Ignition Switch Pre-Closing Accident Plaintiffs did not challenge the earlier decision ~~barring~~**not to seek** discovery in **the Bankruptcy Court in** connection with the **Bankruptcy Court's determination of the** Four Threshold Issues.  ~~Instead,~~ New GM, Designated Counsel, the Groman Plaintiffs, the GUC Trust, and the GUC Trust Unitholders developed and submitted to the Court a set of agreed upon stipulated facts.  Such parties also submitted to the Bankruptcy Court certain disputed facts and exhibits.

09-50026-reg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-10   Filed 05/22/15   Page 12 of 90
Pg 120 of 588

09-50026-reg   Doc 13139-1   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 2
Pg 13 of 16

(b)   The Court finds that the agreed upon factual stipulations were sufficient for purposes of determining**The Court decided** the Four Threshold Issues, that none of the disputed factual stipulations raised a genuine issue of material fact as to any of the Four Threshold Issues, and that treating any of the disputed facts as part of the undisputed stipulated record would not have affected the Decision.   (c)   **on the agreed upon stipulated facts only.**  The Groman Plaintiffs requested discovery with respect to the Four Threshold Issues but the other parties opposed the **discovery** request**,** and the Court denied said request.  The**the** Groman Plaintiffs' continuing request for such discovery is also denied**request**.   (d)   For these reasons (and others), the findings of fact in the Decision shall apply only for the purpose of this Court's resolution of the Four Threshold Issues and shall have no force or applicability in any other legal proceeding or matter, including without limitation, MDL 2543.  **Notwithstanding the foregoing, in all events, however, the Decision and Judgment shall apply with respect to (a) the Court's interpretation of the enforceability of the Sale Order, and (b) the actions of the affected parties that are authorized and proscribed by the Decision and Judgment.**

**16.**   13.   The Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based.

**17.**   14. Pursuant to Bankruptcy Rule 8006(e)(1), for the reasons stated in the Decision, the Court hereby certifies this Judgment for direct appeal to the Circuit Court ("**Appeal**").  The Ignition Switch Plaintiffs, the Pre-Closing Accident Plaintiffs, the Non-Ignition Switch Plaintiffs, New GM, the GUC Trust, the GUC Trust Unitholders and the Groman Plaintiffs each reserve all of their rights with respect to the Appeal, including the right to

challenge any of the factual and legal findings made by the Court in the Decision and to challenge certification for direct appeal.

**18.** ~~15.~~ The parties have stipulated that they shall not file any voluntary supplemental statements regarding the Court's certification of the Appeal as allowed pursuant to Bankruptcy Rule 8006(e)(2), and shall submit all statements either in support or against certification of the Appeal in the Circuit Court.

**19.** ~~16.~~ Count One of the amended complaint ("**Groman Complaint**") filed in *Groman et al v. General Motors LLC* (Adv. Proc. No. 14-01929 (REG)) is dismissed with prejudice. The remaining counts of the Groman Complaint that deal with the "fraud on the court" issue are deferred and stayed until 30 days after all appeals of the Decision and Judgment are decided. With respect to Count One of the Groman Complaint, (i) the statute of limitations shall be tolled from the date of dismissal of Count One to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Groman Plaintiffs can maintain the cause of action in Count One of the Groman Complaint heretofore dismissed pursuant to this Judgment, the Groman Plaintiffs' rights against New GM that existed as of the dismissal of Count One shall be reinstated as if the dismissal of Count One never occurred.

**20.** ~~17.~~ New GM is hereby authorized to serve this Judgment and the Decision upon any additional party (and/or their attorney) (each, an "**Additional Party**") that commences a lawsuit **and/or is not otherwise on Exhibits "A" through "D" hereto** (each, an "**Additional Lawsuit**") against New GM that would be proscribed by the Sale Order (as modified by the Decision and Judgment). Any Additional Party shall have 17 business days upon receipt of service by New GM of the Decision and Judgment to dismiss, ~~without~~**with** prejudice, such

13

09-50026-mg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 978-16    Filed 05/22/15    Page 124 of 90
Pg 122 of 588

09-50026-reg    Doc 13139-1    Filed 05/12/15    Entered 05/12/15 17:52:19    Exhibit 2
Pg 15 of 16

Additional Lawsuit or the allegations, claims or causes of action contained in such Additional Lawsuit that would violate the Decision, this Judgment, and the Sale Order (as modified by the Decision and Judgment). If any Additional Party has a good faith basis to maintain that the Additional Lawsuit or certain allegations, claims or causes of action contained in such Additional Lawsuit should not be dismissed ~~without~~**with** prejudice, such Additional Party shall, within 17 business days upon receipt of the Decision and Judgment, file with this Court a ~~pleading ("~~No Dismissal Pleading~~")~~ explaining why such Additional Lawsuit or certain claims or causes of action contained therein should not be dismissed ~~without~~**with** prejudice. The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment. New GM shall file a response to the No Dismissal Pleading within 17 business days of service of the No Dismissal Pleading. The Court will schedule a hearing thereon if it believes one is necessary. If an Additional Party fails to either (i) dismiss ~~without~~**with** prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that New GM asserts violates the Decision, Judgment, and/or Sale Order (as modified by the Decision and Judgment), or (ii) timely file a No Dismissal Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached Dismissal Order that directs the Additional Party to dismiss ~~without~~**with** prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order. With respect to any lawsuit that is dismissed pursuant to this Paragraph, (i) the statute of limitations shall be tolled from the date of dismissal of such lawsuit to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-16   Filed 05/22/15   Page 78 of 90
Pg 123 of 588

09-50026-reg   Doc 13139-1   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 2
Pg 16 of 16

that the Additional Party can maintain the lawsuit heretofore dismissed pursuant to this

Judgment, the Additional Party's rights against New GM that existed as of the dismissal of the

lawsuit shall be reinstated as if the dismissal of the lawsuit never occurred.  For the avoidance of

doubt, nothing in this Paragraph 17**20** shall apply to the Amended Consolidated Complaint to be

filed in ~~the~~ MDL ~~proceeding~~**2543** on or before June 12, 2015.

Dated: New York, New York
          May __, 2015

                                         _____
                                         UNITED STATES BANKRUPTCY JUDGE

# Exhibit 3

09-50026-mg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 748-10 Filed 05/22/15 Page 7 of 90
Pg 125 of 588

09-50026-reg Doc 13139-2 Filed 05/12/15 Entered 05/12/15 17:52:19 Exhibit 3
Pg 2 of 15

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
In re                                                    :    Chapter 11
                                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,                    :    Case No.: 09-50026 (REG)
    f/k/a General Motors Corp., *et al.*                 :
                                                         :
              Debtors.  :    (Jointly Administered)
-------------------------------------------------------x

**JUDGMENT**

    For the reasons set forth in the Court's *Decision on Motion to Enforce Sale Order*, entered

on April 15, 2015 ("**Decision**"),[1] it is hereby ORDERED AND ADJUDGED as follows:

    1.    For the reasons set forth in the Decision, the Ignition Switch Plaintiffs and the

Ignition Switch Pre-Closing Accident Plaintiffs (collectively, the "**Plaintiffs**") were "known

creditors" of the Debtors.   The Plaintiffs did not receive the requisite notice ~~from Old GM~~ of the

sale of substantially all of the assets of Old GM to New GM ("**363 Sale**").

    2.    Subject to the sole exception of the Independent Claims (as herein defined), for the

reasons set forth in the Decision, the Ignition Switch Plaintiffs have not ~~established~~demonstrated

~~that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish~~ a due

process violation with respect to the 363 Sale.

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision  For
purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs
that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition
Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to
the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt No 12826], at
3); (ii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM
based on an accident or incident that occurred prior to the closing of the 363 Sale; (iii) "**Ignition Switch
Pre-Closing Accident Plaintiffs**" shall mean that subset of the Pre-Closing Accident Plaintiffs that had the
Ignition Switch in their Subject Vehicles; (iv) "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" shall
mean that subset of Pre-Closing Accident Plaintiffs that are not Ignition Switch Pre-Closing Accident Plaintiffs;
and (v) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM
asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM
vehicle

**Comment [DS1]:** The strikethrough language in this redline is from New GM's version of the Judgment, and the additional underlined language is from Designated Counsel's version of the Judgment

**Comment [DS2]:** The 363 Sale notice came from Old GM and the deleted clause is accurate  To strike it is to imply that someone else was responsible for the 363 Sale notice, which clearly is not true

**Comment [DS3]:** The parties agreed that the Court could use its knowledge of the 2009 bankruptcy proceedings in ruling on the Four Threshold Issues  The Court's due process findings were not simply based on what the Ignition Switch Plaintiffs "failed to demonstrate"  The clause "for the reasons set forth in the Decision" was intended to subsume all of the Court's findings on this point

3.  For the reasons set forth in the Decision, the Ignition Switch Pre-Closing Accident Plaintiffs have not ~~established~~demonstrated that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish a due process violation with respect to the 363 Sale.

> **Comment [DS4]:** Same as comment for paragraph 2

4.  ~~The Ignition Switch Plaintiffs were prejudiced by the failure of Old GM to give them the requisite notice of the 363 Sale with respect to the Independent Claims.~~ For the reasons set forth in the Decision, the Ignition Switch Plaintiffs established prejudice and thus a due process violation with respect to the Independent Claims.  The Sale Order shall be deemed modified to permit the assertion and continued prosecution of Independent Claims.  For purposes of this Judgment, "**Independent Claims**" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM, whether or not involving Old GM vehicles or parts, that are based solely on New GM's own, independent, post-Closing acts or conduct.  Nothing set forth herein ~~should~~shall be construed to imply whether or not Ignition Switch Plaintiffs have viable Independent Claims against New GM.

> **Comment [DS5]:** This was the Court's finding The Designated Counsel formulation does not tie the "prejudice" issue to the 363 Sale

> **Comment [DS6]:** Continued prosecution assumes that Independent Claims have been asserted and the Court did not make this finding

> **Comment [DS7]:** The Independent Claims issue was a modification of the Sale Order that dealt with Old GM vehicles and parts  It did not deal with anything else, including New GM conduct for New GM vehicles  To suggest otherwise is to take this finding out of the context that it was made

5.  Except for the modification to permit the assertion and continued prosecution of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.

> **Comment [DS8]:** Same comment as in paragraph 4

6.  For the reasons set forth in the Decision, the Plaintiffs were prejudiced by the failure ~~of Old GM~~ to ~~give them~~receive the requisite notice of the deadline ("**Bar Date**") to file proofs of claim against the Old GM bankruptcy estate.  The Plaintiffs ~~who did not file a proof of claim prior to the Bar Date~~ may petition the Bankruptcy Court (on motion and notice) for authorization to file late or amended proofs of claim against the Old GM bankruptcy estate.  ~~The Court has not determined whether any late proof of claim will ultimately be allowed.~~  However, based on the doctrine of equitable mootness, in no event shall ~~the assets of the GUC Trust held at~~

> **Comment [DS9]:** Point 4 of Letter

> **Comment [DS10]:** Same comment as paragraph 1 as to Old GM being responsible for sending out the Bar Date notice

> **Comment [DS11]:** The Court did not deal with the concept of amended claims  Rather, it discussed the possibility of late filed claims only

> **Comment [DS12]:** This statement is true and to take it out, implies the opposite

09-50026-reg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 878-10   Filed 05/22/15   Page 131 of 90
Pg 127 of 588

09-50026-reg   Doc 13139-2   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 3
Pg 4 of 15

any time in the past, now, or in the future (collectively, the "GUC Trust Assets" (as defined in the Decision) be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims.   The preceding sentence shall not apply to any Plaintiffs Ignition Switch Plaintiff, Pre-Closing Accident Plaintiff, or Non-Ignition Switch Plaintiff that had a claim previously allowed by the Court, but in no event shall they be entitled to increase the amount of such allowed claim without the prior authorization of the Bankruptcy Court or an appellate court following an appeal from the Bankruptcy Court.

> **Comment [DS13]:** The Decision dealt with GUC Trust Assets in terms of what the Plan says   That is why the Court noted that the Plan cannot be modified

7.      Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs against New GM that seek to hold it liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM.

8.      (a)     Subject to the other provisions of this paragraph 8, the Ignition Switch Pre-Closing Accident Plaintiffs, including without limitation the Ignition Switch Pre-Closing Accident Plaintiffs identified in Exhibit "A" attached hereto, shall each dismiss, with prejudice, within 17 business days after the entry of this Judgment, any lawsuit commenced by them against New GM and, within 22 business days after the entry of this Judgment, each of the Ignition Switch Pre-Closing Accident Plaintiffs shall file with the Clerk of this Court evidence of the dismissal of such lawsuit.

> **Comment [DS14]:** Point 1 in the Letter

(b)     Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "A," by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note

09-50026-mg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 878-10 Filed 05/22/15 Page 80 of 90
Pg 128 of 588

09-50026-reg Doc 13139-2 Filed 05/12/15 Entered 05/12/15 17:52:19 Exhibit 3
Pg 5 of 15

that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 8 of the Judgment."

(c) If counsel for an Ignition Switch Pre-Closing Accident Plaintiff identified on Exhibit "A" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be dismissed, it shall file a pleading with this Court within 17 business days of this Judgment ("**No Dismissal Pleading**"). The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment. If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d) For any lawsuit filed by Ignition Switch Pre-Closing Accident Plaintiffs that is dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Pre-Closing Accident Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Pre-Closing Accident Plaintiffs' rights against New GM that existed as of the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

8. 9. Except for the Independent Claims and Assumed Liabilities, if any, all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or abased on successor liability theory of recovery, are barred and enjoined pursuant to the Sale Order., and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment.

> **Comment [DS15]:** Point 3 in the Letter

> **Comment [DS16]:** Point 1 in the Letter

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 5784-16   Filed 05/22/15   Page 81 of 90
Pg 129 of 588

09-50026-reg   Doc 13139-2   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 3
Pg 6 of 15

10.    (a)    Subject to the other provisions of this paragraph 10 and unless already dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch Plaintiffs shall each dismiss, with prejudice, on or before June 12, 2015, any lawsuit commenced by them against New GM.    Exhibit "B" is a list of the lawsuits to be dismissed with prejudice. The lawsuits identified on Exhibit "B" include the Pre-Sale Consolidated Complaint.    On or before June 15, 2015, the Ignition Switch Plaintiffs, other than those whose complaints already have been dismissed by operation of orders entered in MDL 2543, shall file with the Clerk of this Court evidence of the dismissal of such lawsuits that are required to be dismissed pursuant to this Judgment.

(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "B", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 10 of the Judgment."

(c)    If a counsel listed on Exhibit "B" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be dismissed, it shall file a No Dismissal Pleading with this Court within 17 business days of this Judgment.    The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment.    If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)    For any lawsuit of the Ignition Switch Plaintiffs listed on Exhibit "B" that is dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of

**Comment [DS17]:** Point 1 in the Letter

5

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-16   Filed 05/22/15   Page 82 of 90
Pg 130 of 588

09-50026-reg   Doc 13139-2   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 3
Pg 7 of 15

dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the lawsuit against New GM heretofore dismissed pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the dismissal of their lawsuit shall be reinstated as if the dismissal never occurred.

11.   (a)   Subject to the other provisions of this paragraph 11 and unless already dismissed without prejudice pursuant to an order(s) entered in MDL 2543, the Ignition Switch Plaintiffs shall each amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled.   Exhibit "C" is a list of the lawsuits that are to be amended by the Ignition Switch Plaintiffs.   The lawsuits identified on Exhibit "C" include the Post-Sale Consolidated Complaint.

> **Comment [DS18]:** Point 1 in the Letter

(b)   Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "C", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 11 of the Judgment."

(c)   If a counsel listed in the lawsuits on Exhibit "C" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its allegations, claims or causes of action against New GM, should not be stricken, it shall file a pleading with this Court within 17 business days of this Judgment ("**No Strike Pleading**").   The No-Strike Pleading shall not reargue issues that were already decided by the Decision and

6

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 578-10   Filed 05/22/15   Page 83 of 90
Pg 131 of 588

09-50026-reg   Doc 13139-2   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 3
Pg 8 of 15

Judgment. If a No Strike Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)   If an Ignition Switch Plaintiff fails to either (i) amend their respective complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are stricken, and only Independent Claims are pled, or (ii) timely file a No Strike Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("**Strike Order**") that directs the Ignition Switch Plaintiff to strike specifically identified allegations, claims and/or causes of action contained in their complaint that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Strike Order.

(e)   For any allegations, claims or causes of action of the Ignition Switch Plaintiffs listed on Exhibit "C" that are stricken pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of the amended complaint to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can maintain the claims or causes of action against New GM heretofore stricken pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the striking of such claims or causes of action pursuant to this Judgment shall be reinstated as if the striking of such claims or causes of action never occurred.

**9.**   ~~12.~~ The lawsuits captioned *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) and *State of Arizona v. General Motors*

7

09-50026-mg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 878-10 Filed 05/22/15 Page 84 of 90
Pg 132 of 588

09-50026-reg Doc 13139-2 Filed 05/12/15 Entered 05/12/15 17:52:19 Exhibit 3
Pg 9 of 15

*LLC*, No. CV2014-014090 (Maricopa County, Ariz.) shall ~~remain stayed without prejudice to the plaintiffs in such lawsuits seeking relief from the stay in this Bankruptcy Court for good cause shown.~~ be subject to appropriate motion practice in the courts where those proceedings are currently pending, consistent with the Decision and this Judgment.

**Comment [DS19]:** Point 2 in the Letter

    10. ~~13. (a) To the fullest extent permissible, the~~The rulings set forth herein and in the Decision that proscribe claims and actions being taken against New GM ~~or the GUC Trust~~ shall apply ~~equally to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs including those identified on Exhibit "D" attached hereto. As a result, the Sale Order remains unmodified and in full force and effect with respect to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs~~to the "Identified Parties"[2] who were heard during the proceedings regarding the Four Threshold Issues. They shall also apply to other plaintiffs in these proceedings subject to any objection ("Objection Pleading") submitted by any such party within 17 business days of the entry of this Judgment. New GM shall file a response to any such Objection Pleading within 17 business days of service. The Court will schedule a hearing thereon if it believes one is necessary. The rulings set forth herein are without prejudice to the submission of other objections to New GM's Motions to Enforce Sale Order. To the extent an issue shall arise in the future as to whether (i) the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs were known or unknown creditors of the Debtors, ~~(ii) the doctrine of equitable mootness bars the use of any GUC Trust Assets to satisfy late-filed claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs, or (iii)or~~ (ii) the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale Order, the

**Comment [DS20]:** This term is vague The purpose of this paragraph is to deal with Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs

**Comment [DS21]:** This sentence does not belong in the Judgment

**Comment [DS22]:** Point 4 in the Letter

---

[2] "Identified Parties" as defined in the Court's Scheduling Order entered on May 16, 2014 (ECF No. 12697) and persons that have asserted Pre-Closing personal injury and wrongful death claims against New GM based on the Ignition Switch Defect (as defined in the Decision)

**Formatted:** Indent: Left: 0", Hanging: 0.25"

09-50026-reg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-10   Filed 05/22/15   Page 89 of 90
Pg 133 of 588

09-50026-reg   Doc 13139-2   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 3
Pg 10 of 15

Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs shall be required to first seek resolution of such issues from this Court before proceeding any further against New GM ~~and/or the GUC Trust~~.

~~(b)     Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel for the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs identified on Exhibit "D", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 13 of the Judgment."~~

> **Comment [DS23]:** Point 1 in the Letter

~~(c)     If a counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit, or certain claims or causes of action contained therein, against New GM should not be dismissed or stricken, it shall file a No Dismissal Pleading with this Court within 17 business days of this Judgment.   If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading.  The Court will schedule a hearing thereon if it believes one is necessary.~~

> **Comment [DS24]:** Point 1 in the Letter

~~(d)     If counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or a Non-Ignition Switch Plaintiff believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to believe that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court, it shall file a pleading with this Court within 17 business days of this Judgment ("**GUC Trust Asset Pleading**").   The GUC Trust Asset Pleading shall not reargue issues that were already decided by the Decision and Judgment.   If a GUC Trust Asset Pleading is timely filed, the GUC Trust, the GUC Trust~~

> **Comment [DS25]:** Point 4 in the Letter

9

09-50026-mg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 578-10    Filed 05/22/15    Page 88 of 90
Pg 134 of 588

09-50026-reg    Doc 13139-2    Filed 05/12/15    Entered 05/12/15 17:52:19    Exhibit 3
Pg 11 of 15

~~Unitholders and/or New GM shall have 17 business days to respond to such pleading. The Court~~
~~will schedule a hearing thereon if it believes one is necessary.~~

~~(e)    If a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition~~ ····  | Comment [DS26]: Point 1 in the Letter |
~~Switch Plaintiff listed on Exhibit "D" fails to timely file a No Dismissal Pleading with the Court~~
~~within the time period set forth in paragraphs 13(e) and (d) above, New GM shall be permitted to~~
~~file with this Court a notice of presentment on five (5) business days' notice, with an attached order~~
~~("**Dismissal Order**") that directs the Non-Ignition Switch Pre-Closing Accident Plaintiff or~~
~~Non-Ignition Switch Plaintiff to dismiss with prejudice its lawsuit, or certain claims or causes of~~
~~action contained therein that violate the Decision, this Judgment and/or the Sale Order (as~~
~~modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal~~
~~Order. For any lawsuit, or any claims or causes of action contained therein, of the Non-Ignition~~
~~Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs that are dismissed~~
~~pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to~~
~~30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and~~
~~Judgment are reversed on appeal, such that the appellate court finds that the Non-Ignition Switch~~
~~Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs can maintain the lawsuit or~~
~~claims or causes of action against New GM heretofore dismissed or stricken pursuant to this~~
~~Judgment, all of the Non-Ignition Switch Pre-Closing Accident Plaintiffs' or Non-Ignition Switch~~
~~Plaintiffs' rights against New GM that existed prior to the dismissal of their lawsuit or the striking~~
~~of claims or causes of action pursuant to this Judgment shall be reinstated as if the dismissal or the~~
~~striking of such claims or causes of action never occurred.~~

~~14.~~  11.    The Court adopts the legal standard for "fraud on the court" as set forth in the
Decision.

10

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-18   Filed 05/22/15   Page 8 of 90
Pg 135 of 588

09-50026-reg   Doc 13139-2   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 3
Pg 12 of 15

15.      12.   (a)      By agreement of New GM, Designated Counsel for the Ignition Switch

Plaintiffs, the GUC Trust, and the GUC Trust Unitholders, and approved by the Court, no

discovery in the Bankruptcy Court was conducted in connection with the resolution of the Four

Threshold Issues.   The Ignition Switch Pre-Closing Accident Plaintiffs did not challenge the

earlier decision not to seekbarring discovery in the Bankruptcy Court in connection with the

Bankruptcy Court's determination of the Four Threshold Issues.   Instead, New GM, Designated

Counsel, the Groman Plaintiffs, the GUC Trust, and the GUC Trust Unitholders developed and

submitted to the Court a set of agreed upon stipulated facts.   Such parties also submitted to the

Bankruptcy Court certain disputed facts and exhibits.

> **Comment [DS27]:** The parties (other than the Groman Plaintiffs) agreed to no discovery and the Court agreed with that determination. It did not enter an order "barring discovery."

(b)      The Court decidedfinds that the agreed-upon factual stipulations were

sufficient for purposes of determining the Four Threshold Issues on the agreed-upon stipulated

facts only, that none of the disputed factual stipulations raised a genuine issue of material fact as to

any of the Four Threshold Issues, and that treating any of the disputed facts as part of the

undisputed stipulated record would not have affected the Decision.

> **Comment [DS28]:** Point 5 of the Letter

(c)      The Groman Plaintiffs requested discovery with respect to the Four

Threshold Issues but the other parties opposed the discovery request, and the Court denied thesaid

request.   The Groman Plaintiffs' continuing request for such discovery requestis also denied.

> **Comment [DS29]:** This last sentence implies there has been a new request after the Decision which is not true

(d)      For these reasons (and others), the findings of fact in the Decision shall

apply only for the purpose of this Court's resolution of the Four Threshold Issues and shall have no

force or applicability in any other legal proceeding or matter, including without limitation, MDL

2543.   Notwithstanding the foregoing, in all events, however, the Decision and Judgment shall

11

09-50026-reg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 5780-10 Filed 05/22/15 Page 88 of 90
Pg 136 of 588

09-50026-reg Doc 13139-2 Filed 05/12/15 Entered 05/12/15 17:52:19 Exhibit 3
Pg 13 of 15

~~apply with respect to (a) the Court's interpretation of the enforceability of the Sale Order, and (b)~~

~~the actions of the affected parties that are authorized and proscribed by the Decision and Judgment.~~

~~16.~~ 13.    The Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, to

construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based.

> **Comment [DS30]:** The Court's ruling on the Four Threshold Issues is is relevant to the actions authorized and proscribed by the Judgment   This point should be made explicit   The deletion creates an ambiguity

14.    ~~17.~~ Pursuant to Bankruptcy Rule 8006(e)(1), for the reasons stated in the Decision,

the Court hereby certifies this Judgment for direct appeal to the Circuit Court ("**Appeal**").    The

Ignition Switch Plaintiffs, the Pre-Closing Accident Plaintiffs, the Non-Ignition Switch Plaintiffs,

New GM, the GUC Trust, the GUC Trust Unitholders and the Groman Plaintiffs each reserve all of

their rights with respect to the Appeal, including the right to challenge any of the factual and legal

findings made by the Court in the Decision and to challenge certification for direct appeal.

15.    ~~18.~~ The parties have stipulated that they shall not file any voluntary supplemental

statements regarding the Court's certification of the Appeal as allowed pursuant to Bankruptcy

Rule 8006(e)(2), and shall submit all statements either in support or against certification of the

Appeal in the Circuit Court.

16.    ~~19.~~ Count One of the amended complaint ("**Groman Complaint**") filed in *Groman*

*et al v. General Motors LLC* (Adv. Proc. No. 14-01929 (REG)) is dismissed with prejudice.    The

remaining counts of the Groman Complaint that deal with the "fraud on the court" issue are

deferred and stayed until 30 days after all appeals of the Decision and Judgment are decided. With

respect to Count One of the Groman Complaint, (i) the statute of limitations shall be tolled from

the date of dismissal of Count One to 30 days after all appeals of the Decision and Judgment are

decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court

finds that the Groman Plaintiffs can maintain the cause of action in Count One of the Groman

Complaint heretofore dismissed pursuant to this Judgment, the Groman   Plaintiffs' rights against

12

New GM that existed as of the dismissal of Count One shall be reinstated as if the dismissal of Count One never occurred.

17. ~~20.~~ New GM is hereby authorized to serve this Judgment and the Decision upon any additional party (and/or their attorney) (each, an "**Additional Party**") that commences a lawsuit ~~and/or is not otherwise on Exhibits "A" through "D" hereto~~ (each, an "**Additional Lawsuit**") against New GM that would be proscribed by the Sale Order (as modified by the Decision and Judgment). Any Additional Party shall have 17 business days upon receipt of service by New GM of the Decision and Judgment to dismiss, ~~with~~without prejudice, such Additional Lawsuit or the allegations, claims or causes of action contained in such Additional Lawsuit that would violate the Decision, this Judgment, and the Sale Order (as modified by the Decision and Judgment). If any Additional Party has a good faith basis to maintain that the Additional Lawsuit or certain allegations, claims or causes of action contained in such Additional Lawsuit should not be dismissed ~~with~~without prejudice, such Additional Party shall, within 17 business days upon receipt of the Decision and Judgment, file with this Court a pleading ("**No Dismissal Pleading**") explaining why such Additional Lawsuit or certain claims or causes of action contained therein should not be dismissed ~~with~~without prejudice. The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and Judgment. New GM shall file a response to the No Dismissal Pleading within 17 business days of service of the No Dismissal Pleading. The Court will schedule a hearing thereon if it believes one is necessary. If an Additional Party fails to either (i) dismiss ~~with~~without prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that New GM asserts violates the Decision, Judgment, and/or Sale Order (as modified by the Decision and Judgment), or (ii) timely file a No Dismissal Pleading with the Court within the time period set forth above, New GM shall be

**Comment [DS31]:** A new action commenced after the Judgment is a violation of the Decision and the dismissal should be with prejudice

13

09-50026-mg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 978-16   Filed 05/22/15   Page 90 of 90
Pg 138 of 588

09-50026-reg   Doc 13139-2   Filed 05/12/15   Entered 05/12/15 17:52:19   Exhibit 3
Pg 15 of 15

permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached Dismissal Order that directs the Additional Party to dismiss ~~with~~ without prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order.   With respect to any lawsuit that is dismissed pursuant to this Paragraph, (i) the statute of limitations shall be tolled from the date of dismissal of such lawsuit to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Additional Party can maintain the lawsuit heretofore dismissed pursuant to this Judgment, the Additional Party's rights against New GM that existed as of the dismissal of the lawsuit shall be reinstated as if the dismissal of the lawsuit never occurred.   For the avoidance of doubt, nothing in this Paragraph ~~2017~~ shall apply to the Amended Consolidated Complaint to be filed in the MDL ~~2543~~ proceeding on or before June 12, 2015.

Dated: New York, New York
        May __, 2015

_____
UNITED STATES BANKRUPTCY JUDGE

14

# Exhibit 11

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Lisa H. Rubin
Direct: +1 212.351.2390
Fax: +1 212.716.0790
LRubin@gibsondunn.com

May 12, 2015

VIA ECF AND ELECTRONIC MAIL

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

Re:    *In re Motors Liquidation Co.*, Case No. 09-50026 (REG)

Dear Judge Gerber:

We write jointly on behalf of Wilmington Trust Company, as trustee for and trust
administrator of the Motors Liquidation Company GUC Trust (the "GUC Trust"), and
certain participating GUC Trust Unitholders (the "Unitholders").

In keeping with the Court's April 15 Decision on the Motions to Enforce the Sale Order (the
"Decision") [Docket No. 13109] and Your Honor's May 5, 2015 endorsed order [Docket No.
13131], counsel for the GUC Trust and the Unitholders have participated in extensive
negotiations regarding a proposed form of judgment memorializing the Court's Decision.
Unfortunately, the parties' meet-and-confer process did not produce an agreed-upon form of
judgment, and other parties have now submitted competing proposals to Your Honor.

The dispute between Plaintiffs and New GM primarily concerns issues to which the GUC
Trust and Unitholders are peripheral, and for the sake of judicial economy, we have not
submitted our own proposed form of judgment. However, we object to Plaintiffs' proposed
language concerning the equitable mootness issue. Among other problems, that language
seeks to circumvent the Court's equitable mootness holding in the Decision. Specifically,
Plaintiffs' proposed form of judgment is intended to, and would, allow Plaintiffs to seek to
recover from the GUC Trust any assets that the GUC Trust obtains now or in the future,
including by operation of the so-called "accordion feature" of the MSPA. It also would
exempt from the equitable mootness holding any Ignition Switch Plaintiff, Non-Ignition
Switch Plaintiff, or Pre-Closing Accident Plaintiff who has already filed a proof of claim,
such as Doris Powledge Phillips, whose Rule 60(b) motion to vacate her August 2010
settlement with Motors Liquidation Company is pending before this Court, so that such

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

The Honorable Robert E. Gerber
May 12, 2015
Page 2

plaintiff may seek to amend his or her claim and/or obtain increased distributions from the
GUC Trust.

In our view, Plaintiffs' proposed language on equitable mootness does not accurately reflect
the Decision, or appropriately consider the briefing and argument that was submitted to the
Court by Designated Counsel for the Ignition Switch Plaintiffs, counsel for the GUC Trust,
and counsel for the Unitholders on this matter. *See, e.g.*, Docket No. 13029 at 13, 20; Tr. at
89:11-21; 123:12-22; 149:11-150:19.

Although we take no position on the other issues in dispute, we respectfully request that the
Court incorporate paragraphs 6 and 13 of New GM's proposal into the ultimate judgment it
enters. This language faithfully reflects the Court's Decision respecting equitable mootness,
while providing an opportunity for any Non-Ignition Switch Plaintiff or Non-Ignition Switch
Pre-Closing Accident Plaintiff to demonstrate to the Court why that ruling should not apply
to that plaintiff.

We would be happy to answer any questions the Court may have. In the meantime, we thank
the Court in advance for considering our position.

Respectfully submitted,

Lisa H. Rubin

Deborah J. Newman

# Exhibit 12

**GOLENBOCK EISEMAN
ASSOR BELL & PESKOE** LLP

Attorneys at Law I 437 Madison Ave., New York, NY 10022-7020
T (212) 907-7300 I F (212) 754-0330 I www.golenbock.com

DIRECT DIAL NO.: (212) 907-7327
DIRECT FAX NO.: (212) 754-0777
EMAIL ADDRESS: JFLAXER@GOLENBOCK.COM

May 12, 2015

*Via Email & ECF Filing*
Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
One Bowling Green
New York, New York 10004

Re:  *In re Motors Liquidation Company (Case No. 09-50026 (REG))*
     *Groman v. General Motors LLC (Adv. Pro. No. 14-01929 (REG))*

Dear Judge Gerber:

    We write as co-counsel to the Groman Plaintiffs, together with Wolf Haldenstein Adler Freeman & Herz LLP, in response to the direction set forth in the April 15 Decision and May 5 Endorsed Order. The Groman Plaintiffs participated fully in the "meet and confer" sessions and exchange of drafts pertaining to the proposed Judgment. Our reason for writing to the Court independently -- and at this hour -- is explained below.

    As an initial point of information, the Groman Plaintiffs endorse and support the Court's execution of the form of Judgment that was submitted by Designated Counsel, rather than the competing form submitted by New GM, largely for the reasons expressed by Designated Counsel. As the Court recognized in its April 15 Decision, the matters to be addressed on appeal "are important, difficult," and require the application of "conflicting" authorities that "came nowhere close to addressing" a factual situation similar to that presented here. Dec. at 17, 133. Under such circumstances, and given the gravity and public importance of this case, staying all the pending pre-sale related litigations pending appeal would be prudent and less procedurally cumbersome for all parties involved than ordering dismissals with prejudice at this time.

    Of principal importance to our clients is that Designated Counsel's proposed Judgment, but not New GM's, includes provisions that go to the Groman Plaintiffs' repeated requests for discovery on the Four Threshold Issues and to the Court's consideration and disposition of the parties' collectively numerous disputed facts, which were submitted along with the undisputed facts. *See* Plaintiffs' Proposed Judgment at ¶ 12. The Groman Plaintiffs were the party that asked for these provisions to be included in any proposed Judgment. New GM refused to include them without explanation (despite being asked for one) during the negotiation process. We just learned its reasons for that refusal at 5 p.m. today, when we read Point 5 of

2284589.1

**GOLENBOCK EISEMAN**
**ASSOR BELL & PESKOE** LLP

Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
May 12, 2015
Page 2

New GM's letter to the Court. Accordingly, we are compelled to address it ourselves.

We submit that the Court's rulings on the immateriality of the disputed facts are necessarily implicit in the decision. First, the penultimate paragraph of the Decision states that the Court "has canvassed" *every* contention raised by the parties' briefing "and satisfied itself that no material points other than those it has specifically addressed were raised and have merit." Second, as New GM correctly points out, the Court ruled based on the undisputed facts in a process that was akin to a "motion[] for summary judgment." GM Ltr. at 6 (quoting Decision at n. 17). The inherent implication of conducting a summary judgment-like inquiry is that the Court must have found that there were *no disputed facts sufficient to raise a genuine issue of material fact precluding summary judgment.* If the Court found that any of the disputed facts were material such that, if proved, they would have potentially altered the Court's decision on any issue, the Court could not have ruled definitively as a matter of law as to every issue as it did, and the Court would have instead set aside for discovery and trial any issues affected by the material disputed facts.

Making the Court's implicit rulings pertaining to the disputed facts express in the Judgment will help crystallize and frame the issues that our clients may ultimately elect to appeal. New GM, we believe, is improperly attempting to remove issues pertaining to the materiality of the disputed facts from the permissible scope of appeal, to the substantial prejudice of both the Groman Plaintiffs and the Ignition Switch Plaintiffs generally.

Accordingly, we urge the Court to adopt Designated Counsel's proposed Judgment, or, alternatively, to incorporate paragraph 12 thereof into any final Judgment the Court prepares and executes.

Respectfully submitted,

/s/ Jonathan L. Flaxer

Jonathan L. Flaxer

cc: (via e-mail)
Arthur Steinberg, Esq.
Scott Davidson, Esq.
Richard C. Godfrey, P.C.

2284589.1

**GOLENBOCK EISEMAN**
**ASSOR BELL & PESKOE** LLP

Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
May 12, 2015
Page 3

     Andrew B. Bloomer, P.C.
     Leonid Feller, Esq.
     Edward S. Weisfelner, Esq.
     Howard Steel, Esq.
     Sander L. Esserman, Esq.
     Matt Williams, Esq.
     Lisa H. Rubin, Esq.
     Keith Martorana, Esq.
     Daniel H. Golden, Esq.
     Deborah J. Newman, Esq.
     Alexander H. Schmidt, Esq.
     William P. Weintraub, Esq.

Case 1:14-md-02543-JMF   Document 978-13   Filed 05/22/15   Page 1 of 7

# Exhibit 13

09-50026-mg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 979-19 Filed 05/22/15 Page 2 of 7
Pg 147 of 588

09-50026-reg Doc 13137 Filed 05/12/15 Entered 05/12/15 17:01:20 Main Document
Pg 1 of 6

**BROWN**RUDNICK

EDWARD S  WEISFELNER

direct dial: (212) 209-4900

fax: (212) 202-4800

eweisfelner@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

May 12, 2015

**VIA E-MAIL**
**AND ECF FILING**

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

**RE:** **In re Motors Liquidation Company, et al., Case No. 09-50026 (REG)**

Dear Judge Gerber:

We write jointly as Co-Designated Counsel and Counsel for Economic Loss Plaintiffs and Designated Counsel and Counsel for Ignition Switch Pre-Closing Accident Plaintiffs (together, the "**Ignition Switch Plaintiffs**") in response to the direction set forth in the April 15 Decision and May 5 Endorsed Order. Despite extensive efforts, the parties have not reached a fully consensual form of judgment. Accordingly, we hereby submit the Ignition Switch Plaintiffs' proposed form of judgment attached hereto as **Exhibit A**. Attached hereto as **Exhibit B** is a blackline comparing the Ignition Switch Plaintiffs' proposal to New GM's form. The following highlights the substantive points of disagreement, and why the Court should approve the Ignition Switch Plaintiffs' proposed form.

1)  **Permissible Claims Against New GM.**

Paragraph 4 of the Ignition Switch Plaintiffs' proposed judgment provides that "[f]or the reasons set forth in the Decision, the Ignition Switch Plaintiffs established prejudice and thus a due process violation with respect to the Independent Claims. The Sale Order shall be deemed modified to permit the assertion and continued prosecution of Independent Claims." New GM cannot dispute this conforms to the Decision.

The Ignition Switch Plaintiffs and New GM generally agree on the definition of "**Independent Claims**" with the Ignition Switch Plaintiffs proposing in paragraph 4 of their proposal that "Independent Claims" shall mean "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM, whether or not involving Old GM vehicles or parts, that are based solely on New GM's own, independent, post-Closing acts or conduct." See In re Motors Liquidation Co., 2015 Bankr. LEXIS 1296, at *322 (Bankr. S.D.N.Y. Apr. 15, 2011).

However, New GM, in paragraph 9 of its form improperly attempts to limit the definition of Independent Claims by proposing that any claims that Ignition Switch Plaintiffs may have against New GM "concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are forever barred and enjoined pursuant to the Sale Order." This undercuts the agreed definition of Independent Claims as well as the Decision which provide that the Ignition

The Honorable Robert E. Gerber
May 12, 2015
Page 2

Switch Plaintiffs may assert and continue to prosecute claims against New GM involving Old GM vehicles or parts. See id. at *22.

Accordingly, the Court should adopt the Ignition Switch Plaintiffs' proposed paragraph 8 which provides: "Except for the Independent Claims and Assumed Liabilities, any claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM based on successor liability are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment."

**2) Status of Ignition Switch Plaintiffs' Lawsuits.**

The Ignition Switch Plaintiffs intend to appeal, *inter alia*, that portion of the Decision upholding the Sale Order's bar on successor liability claims. Accordingly, Plaintiffs request that the successor liability claims be stayed pending appeal. If the Decision is ultimately affirmed, only then should the successor liability claims be dismissed with prejudice.

This Court should adopt the Ignition Switch Plaintiffs' proposed judgment as faithful to the Decision and sound judicial administration. Rather than compelling plaintiffs with actions pending in other jurisdictions to file papers in this Court as to why their lawsuits should not be dismissed with prejudice as New GM suggests (necessitating this Court to dive into the merits of plaintiffs' claims), the Ignition Switch Plaintiffs provide an administratively balanced and non-prejudicial pathway forward as follows:

(i)     Independent Claims proceed in the jurisdictions where they are pending with those courts reviewing same with care to ensure they are not "dressed up" successor liability claims prohibited under the Sale Order. Id. at *26;

(ii)    claims or causes of action that Ignition Switch Plaintiffs may have against New GM sounding in the nature of successor liability are stayed pending appeal; and

(iii)   claims of Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs remain subject to the Sale Order, provided that to the extent an issue shall arise in the future as to whether they were known or unknown creditors of the Debtors or were otherwise bound by the Sale Order, such plaintiffs shall be required to first seek resolution of such issues from this Court before proceeding any further against New GM.

New GM's proposed judgment improperly would dismiss the Ignition Switch Plaintiffs' lawsuits with prejudice now despite the stated intention to appeal and the fact that many of the lawsuits assert Independent Claims. Paragraphs 8, 10, 11 and 13 of New GM's proposed judgment would provide an inefficient labyrinth of cumbersome procedures impacting a wide array of actions pending against New GM in various jurisdictions. Adopting New GM's proposed procedures unduly prejudices plaintiffs, raises extra-jurisdictional concerns, and would unnecessarily congest this Court's docket.

The Ignition Switch Plaintiffs submit that the Decision did not direct the substantive actions or extra-jurisdictional procedures set forth in New GM's proposed judgment. Indeed, New GM's proposed cumbersome procedure for dismissing cases with prejudice is inconsistent with the heavily negotiated and carefully crafted provisions of MDL Order No. 50 (attached hereto as **Exhibit C** and which provides that certain actions that are subsumed by the Amended Consolidated Complaint are dismissed, without prejudice).

Under New GM's proposed judgment, this Court would be faced with deciding whether the merits of the underlying claims in numerous plaintiff actions, including those currently pending and scheduled to be

The Honorable Robert E. Gerber
May 12, 2015
Page 3

amended in the MDL, raise Independent Claims, or claims barred by the Sale Order and the Decision. Such a result was not contemplated by the Decision which correctly left it to reviewing courts to analyze the claims to determine whether they are in substance successor liability claims "dressed up to look like something else." Id. at *26. New GM's proposed procedure would eviscerate the work to be done in the MDL and replace Judge Furman's jurisdiction over these exact matters, all on an untenable time line and playing field.

New GM's proposed procedures effectuating immediate dismissals with prejudices in cases pending in other courts are inefficient and inconsistent with sound principles of judicial management and the procedures set forth in the MDL and other courts. See Donovan v. City of Dallas, 377 U.S. 408, 412 (1964) (noting general rule that courts will not interfere with or try to restrain each other's proceedings). New GM's proposed procedure could provide imperfect protection if the appeal is successful, plus force plaintiffs to incur costs in re-filing fees. See Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) ("Dismissal with prejudice is a harsh remedy to be utilized only in extreme situations."). Any dismissals with prejudice are premature. If New GM wants to move to dismiss in the home courts, the home court judge may decide whether to dismiss and on what terms, in light of the anticipated appeals. Staying the actions pending appeal provides more administrative convenience and procedural equity and no undue prejudice to New GM. See Greenidge v. Allstate Ins. Co., No. 02 Civ. 9796 (JCF), 2003 WL 22871905, at *3 (S.D.N.Y. Dec. 3, 2003) (deferral of determination of summary judgment motion pending appeal of intervention motion is not prejudicial).

More fundamentally, Plaintiffs' Second Amended Consolidated Complaint will not be filed until June 12, 2015. All other actions and complaints in the MDL will remain stayed or dismissed without prejudice and the Second Amended Consolidated Complaint will be the only operative pleading in the MDL. It will not assert any successor liability claims to avoid proceedings inconsistent with the Decision, pending resolution of the appeal. Once it is filed, New GM will have the opportunity to move to dismiss the claims pled. At that time, upon full briefing, Judge Furman can rule on the viability of those claims – and that review will no doubt include the question of whether the claims (or any of them) improperly seek to hold New GM liable on a successor liability theory. Dismissal with prejudice now is premature.

**3)   The Judgment Should Not Unduly Affect The Interests Of Non-Ignition Switch Plaintiffs.**

New GM's proposed judgment improperly seeks to expand the Decision beyond its parameters as it relates to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs.

Specifically, the Decision was confined to plaintiffs that owned or leased a vehicle that contained the "Ignition Switch Defect" as defined therein. See In re Motors Liquidation Co., 2015 Bankr. LEXIS 1296 at *5. The other category of Plaintiffs later coming into the picture ("Non-Ignition Switch Plaintiffs") brought actions asserting Economic Loss Claims as to GM branded vehicles that did not have Ignition Switch Defects, including cars made by New GM and Old GM alike. While New GM brought another motion to enforce the Sale Order with respect to them, this additional motion "has been deferred pending the determination of the issues here." Id. at *8-9.

Accordingly, the Decision is limited to the Ignition Switch Defect and does not extend to pre-closing accident plaintiffs whose incident or accident related to a vehicle with a defect other than the Ignition Switch Defect or to plaintiffs with economic loss claims that relate to vehicles that do not contain the Ignition Switch Defect. Of course, this makes sense, because, as the Court itself noted, the "common set of stipulated facts" was developed with respect to the Ignition Switch Defect and not any other defect. Id. Those plaintiffs remain stayed and the Sale Order is still fully applicable to those parties, but any effort to give the Decision preclusive effect as to them would be ironic given the due process issues addressed in the Decision.

09-50026-mg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 918-19 Filed 05/22/15 Page 3 of 7
Pg 150 of 588

09-50026-reg Doc 13137 Filed 05/12/15 Entered 05/12/15 17:01:20 Main Document
Pg 4 of 6

The Honorable Robert E. Gerber
May 12, 2015
Page 4

New GM's proposed judgment places unnecessary hurdles and administrative burdens on these plaintiffs by compelling them to file No Dismissal Pleadings within 17 business days of receipt of a notice of the claims or causes of action that New GM itself determines violates the Decision and Sale Order. Forcing these claimants to litigate now on New GM's terms is administratively inefficient and prejudicial. The Decision yields no such result. Accordingly, the Court should strike New GM's proposed procedures in paragraphs 13(b) – (e) as unduly burdensome and premature.

**4) Status of Attorney General Actions.**

The Decision holds that claims against New GM based solely on the conduct of New GM can proceed, even if those claims involve cars and parts made by Old GM. Id. at *222. There are two pending State law enforcement actions that assert solely Independent Claims and accordingly the Sale Order, as modified by the Decision, poses no impediment to their advancement. See People of California v. General Motors LLC, No 30-2014-00731038-CU-BT-CXC (Orange County, Cal.); State of Arizona v. General Motors, LLC, No. CV2014-014090 (Maricopa County, Ariz.) (collectively, the "**State Actions**").

Accordingly, paragraph 9 of the Ignition Switch Plaintiffs' proposed judgment provides that the State Actions "shall be subject to the appropriate motion practice in the courts where those proceedings are pending, consistent with the Decision and this Judgment." Conversely, in paragraph 12 of its proposed judgment, New GM provides that the State Actions should remain stayed without prejudice to the plaintiffs seeking relief from the stay in this Court.

New GM's proposal is inconsistent with the Decision and seeks to impose additional delay on actions that consist entirely of Independent Claims. The State Actions assert state law enforcement claims for injunctive relief, civil penalties and other available relief against New GM solely for its post-Sale violations of the State consumer protection laws at issue - respectively, Arizona's Consumer Fraud Act (A.R.S. § 44-1521, *et seq.*), and California's Unfair Competition Law ("**UCL**") (Cal. Bus. Code § 17200) and False Advertising Law ("**FAL**") (Cal Bus. Code § 17500).

For example, the Arizona Complaint (a copy of which is attached hereto as **Exhibit D**) alleges that "New GM's false representations and/or omissions concerning the safety and reliability of its vehicles, and its concealment of a plethora of known safety defects plaguing its vehicles and its brand, caused Arizona residents to purchase GM-branded vehicles under false pretenses." Arizona Complaint, ¶ 22, and that New GM's conduction violated A.R.S. § 44-1522(A). See id. ¶¶ 497-498. As the Arizona Complaint makes clear, the unlawful practices at issue are those committed by New GM "in connection with the sale and lease of GM-branded vehicles on or after July 11, 2009." Id. ¶¶ 498, 503. Likewise, in the Prayer for Relief, all the remedies are targeted at New GM's conduct, as the State (A) seeks to enjoin New GM from "engaging in the unlawful acts and practice as alleged in this Complaint;" (B) seeks an Order that New GM disgorge its profits or gains from its unlawful practices; and (C) seeks an Order that New GM pay penalties for each of its willful violations of the Consumer Fraud Act.

Similarly, the California Complaint (a copy of which is attached hereto as **Exhibit E**) alleges that post-Sale conduct by New GM violated, *inter alia*, the prohibitions on unfair and deceptive conduct embodied in California's UCL and FAL. See Cal., Compl., ¶¶ 253-274. The Prayer for Relief seeks to (A) enjoin New GM from committing further acts of unfair competition; and (B) obtain civil penalties from New GM for its violations of the UCL and FAL.

Significantly, in his decision remanding the California action to state court, Judge Furman recognized that New GM might be held liable for post-Sale violations of its own independent duties under State law: "[A]s Plaintiff notes, the claims for violations of the UCL and FAL are premised on various allegedly

09-50026-reg   Doc 13157   Filed 05/22/15   Entered 05/22/15 17:06:01   Main Document
Case 1:14-md-02543-JMF   Document 1715-19   Filed 05/22/15   Page 8 of 7
Pg 151 of 588

09-50026-reg   Doc 13137   Filed 05/12/15   Entered 05/12/15 17:01:20   Main Document
Pg 5 of 6

The Honorable Robert E. Gerber
May 12, 2015
Page 5

deceptive practices by New GM." In re General Motors LLC Ignition Switch Litig., 2014 WL 6655796, at *7 (S.D.N.Y. Nov. 24, 2014). The same is true of the Arizona action.

New GM wrongfully attempts to encroach on the jurisdiction of the State Action courts. Clearly, the Decision does not countenance such a result as it cautions other courts to consider whether actions properly assert Independent Claims during the administration of matters pending before them. Moreover, the Decision does not suggest that additional litigation relating to stay relief on these matters should proceed before this Court. New GM may argue that the State Actions are somehow "dressed-up" successor liability claims, but under the Decision, those arguments should be addressed to the State Action courts. Accordingly, the Court should adopt paragraph 9 of the Ignition Switch Plaintiffs' proposed judgment.

### 5)   Equitable Mootness.

There is disagreement between the Ignition Switch Plaintiffs on the one hand, and New GM, the GUC Trust and the Unit Holders, on the other, on two substantive issues relating to the equitable mootness findings. First, in paragraph 6 of its proposed judgment, the Ignition Switch Plaintiffs propose that "based on the doctrine of equitable mootness, in no event shall *GUC Trust Assets (as defined in the Decision)* be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims."

Conversely, New GM, the GUC Trust and the Unit Holders seek to expand the findings by adding language that based on the doctrine of equitable mootness, in no event shall the assets of the GUC Trust "*held at any time in the past, now, or in the future*" be used to satisfy any claims of the Ignition Switch Plaintiffs.

The Ignition Switch Plaintiffs believe their proposed language is more in faith with the Decision since it did not address whether Plaintiffs may have the exclusive benefit of, or share in, the proceeds of triggering the accordion provision under the Plan and Sale Agreement. The Ignition Switch Plaintiffs submit that because the proceeds of the accordion provision can only be triggered by allowance of the Ignition Switch Plaintiffs' claims against the Old GM bankruptcy estate and the Decision focused on Unit Holders' expectation that the universe of claims could only go down (see Id. at *194-95), the judgment should adopt the Ignition Switch Plaintiffs' proposed language. Any other formulation may prejudice the Ignition Switch Plaintiffs' rights going forward.

The Second substantive issue relates to paragraphs 13(d) and (e) of New GM's proposed judgment. Those paragraphs would compel the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs to file a pleading within 17 business days of entry of the judgment setting forth the basis it believes that any GUC Trust Assets may be used to satisfy late proofs of claim.

The Ignition Switch Plaintiffs propose that Court should not adopt these procedures as the Decision did not address the claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs, and such procedures add unnecessary administrative and judicial burdens and costs.

### 6)   Miscellaneous Language Disagreements.

There are several other points of disagreement between the competing proposed judgments reflected in the Ignition Switch Plaintiffs' blackline, attached hereto as **Exhibit B**. They are equally substantive and important as those issues in dispute highlighted above. However, for the sake of brevity, the Ignition Switch Plaintiffs believe that this Court will ably see that the Ignition Switch Plaintiffs' proposed language is more faithful to the plain meaning and spirit of the Decision and should be adopted in its entirety.

**BR**  The Honorable Robert E. Gerber
May 12, 2015
Page 6

Respectfully submitted,

| /s/ Edward S. Weisfelner | /s/ Sander L. Esserman | /s/ William P. Weintraub |
|---|---|---|
| Edward S. Weisfelner | Sander L. Esserman | William P. Weintraub |
| David J. Molton | **STUTZMAN, BROMBERG,** | Gregory W. Fox |
| Howard S. Steel | **ESSERMAN & PLIFKA** | **GOODWIN PROCTER** |
| **BROWNN RUDNICK LLP** | 2323 Bryan Street, Suite 2200 | The New York Times Bldg. |
| 7 Times Square | 2323 Bryan Street, Suite 2200 | 620 Eighth Avenue |
| New York, NY 10036 | Dallas, Texas 75201 | New York, NY 10018 |

cc: Arthur Steinberg
    Scott Davidson
    Richard C. Godfrey, P.C.
    Andrew B. Bloomer, P.C.
    Leonid Feller
    Matt Williams
    Lisa H. Rubin
    Daniel Golden
    Deborah J. Newman
    Alex Schmidt
    Jonathan L. Flaxer
    Garry Peller

# Exhibit 14

# IN THE 22ND JUDICIAL CIRCUIT COURT
## OF THE CITY OF ST. LOUIS, MISSOURI

| | | |
|---|---|---|
| SKYESHA FELIX; ANNETTE | § | |
| FITZPATRICK; SUMIRIA FITZPATRICK; | § | |
| STEPHANIE BURTON; LADONNA | § | |
| CARTWRIGHT; CHERYL FUNSTON; | § | |
| JOSEPH GIANCERELLI; GERALD | § | |
| LYTLE; ANGELA MCINTYRE; | § | |
| RAYMOND MOYE; DALE and | § | |
| KRISTA SALYER; BONNIE | § | |
| SIMPSON; LIONEL STEWART; | § | |
| STEPHANIE WILLIAMS; MARVIN | § | Case No. 1422-CC09472 |
| WOODBERRY; and MELISSA | § | |
| HOLCOMB, Individually and as | § | |
| Personal Representative of the Estate | § | |
| of PAIGE UNDERWOOD, Deceased, et al, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| GENERAL MOTORS LLC, | § | |
| | § | |
| Defendant. | § | |

## GENERAL MOTORS LLC'S SUPPLEMENTAL AND AMENDED
## RESPONSES AND OBJECTIONS TO
## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION

TO:   Plaintiffs, by and through their attorneys of record, Robert Langdon of LANGDON & EMISON, 911 Main Street, P.O. Box 220, Lexington, MO, 64067, and James G. Onder, James D. O'Leary, and James T. Corrigan of ONDER SHELTON O'LEARY & PETERSON, LLC, 110 E. Lockwood, 2nd Floor, St. Louis, MO, 63119.

Defendant General Motors LLC ("GM") serves these Supplemental and Amended Responses and Objections to Plaintiffs' First Request for Production.  As the discovery process in this case continues, GM reserves the right to supplement and/or amend its responses in accordance with Mo. R. Civ. P. 56.01(e).

1

# I.
## PRELIMINARY STATEMENT

1.    GM has not completed its investigation of all of the facts relating to this litigation. GM reserves the right to produce information based on its continuing investigation.  GM also reserves the right to assert additional privileges warranted by any new documents or information discovered at a later date.

2.    Most, if not all, of Plaintiffs' Requests below are exact duplicates of discovery requests previously served upon GM by the plaintiffs in another case entitled *Melton v. General Motors, LLC, et al.*, Georgia State Court of Cobb County, Civil Action No. 14-A-1197-4 ("*Melton II*").  Counsel for the parties in *Melton II* conferred on multiple occasions by phone and in person to refine the scope of these requests and GM's responses to same.  Following this extensive meet-and-confer process, GM served written responses, produced documents responsive to the requests into the MDL Document Depository, and prepared multiple privilege logs.  GM objects to producing more information and/or documents than what the parties negotiated in *Melton II*.  As mentioned below, the privilege logs are accessible to the MDL Document Depository.

3.    In connection with investigations by the National Highway Traffic Safety Administration ("NHTSA"), the House Committee on Energy and Commerce (the "House Committee"), and the Senate Commerce, Science, and Transportation Committee (the "Senate Committee," and, together with the House Committee, the "Congressional Committees") concerning, among other things, GM's recall of certain model year Cobalt, HHR, Solstice, Sky, Ion, and G5 vehicles subject to GM Recall Numbers 13454 and 14063 (the "Subject Vehicles") related to the recall condition described in the February 7 and February 25, 2014, letters sent by GM to NHTSA pursuant to 49 CFR 573.6 (the "Recall Condition"), GM has collected tens of

millions of documents from multiple sources, including over 300 individuals identified as potentially having information relating to the Recall Condition in the Subject Vehicles, as well as other data sources within GM (the "Collected Documents"). The Collected Documents were searched to identify information related to, among other things, the Recall Condition in the Subject Vehicles.

4.        Between March 25, 2014, and August 14, 2014, GM produced to NHTSA over 1.6 million pages of non-privileged information, along with several hard drives containing over 300,000 files, in response to two NHTSA Special Orders, dated March 4, 2014, and April 4, 2014 (the "NHTSA Special Orders"), in connection with its investigation into the timeliness of GM's recall of the Subject Vehicles for the Recall Condition. On August 14, 2014, pursuant to the terms of a Consent Order executed between GM and NHTSA on May 16, 2014 (the "GM/NHTSA Consent Order"), GM satisfied its document-production obligations in response to the NHTSA Special Orders. As of August 18, 2014, GM had produced over 1.6 million pages of non-privileged information, and several hard drives containing over 300,000 files, in response to requests made by the Congressional Committees relating to, among other things, GM's recall of the Subject Vehicles for the Recall Condition. On October 2, 2014, GM produced these prior productions to NHTSA and the Congressional Committees[1] into an electronic document depository established in MDL 2543, *In re Gen. Motors LLC Ignition Switch Litig.* (the "MDL Document Depository"). Counsel representing plaintiffs in Coordinated Actions are entitled to access the MDL Document Depository, provided that they agree to the terms of the MDL

---

[1] Given the broad parameters of the NHTSA and/or Congressional Committees' requests, some of the information contained in these productions does not relate to the Recall Condition in the Subject Vehicles.

Discovery Orders.  Counsel for Plaintiffs have agreed to the MDL Protective Order, which was entered in this case on April 21, 2015.

5.     GM produced and continues to produce documents into the MDL Document Depository on a rolling basis.  Each production is given a Volume Number.  Inside each volume, the documents are organized by MDL Bates Number.  Plaintiffs download the Volumes they want to review and use their chosen document review tool software to search and review the documents.  As noted above, Plaintiffs have been provided unfettered access to all documents in the MDL Document Depository, not just the documents responsive to these Requests.  To assist Plaintiffs in locating the documents responsive to Plaintiffs' Requests, GM provides the following Volume Numbers.

    a.  GM's production to NHTSA and Congress can be found in Volumes: GM-MDL-2543-VOL-00001 through GM-MDL-2543-VOL-00015, GM-MDL-2543-VOL-00023 through GM-MDL-2543-VOL-00026, GM-MDL-2543-VOL-00068, GM-MDL-2543-VOL-00074, GM-MDL-2543-VOL-00102, GM-MDL-2543-VOL-00141, GM-MDL-2543-VOL-00144, GM-MDL-2543-VOL-00147.

    b.  Additional documents produced in *Melton II* in response to identical RFP's can be found in Volumes: GM-MDL-2543-VOL-00016 through GM-MDL-2543-VOL-00022, GM-MDL-2543-VOL-00027 through GM-MDL-2543-VOL-00030, GM-MDL-2543-VOL-00032 through GM-MDL-2543-VOL-00036, GM-MDL-2543-VOL-00038, GM-MDL-2543-VOL-00098, GM-MDL-2543-VOL-00099 and GM-MDL-2543-VOL-00101.

4

6.     There is no document-by-document or comprehensive index for the vast majority of GM's prior productions to NHTSA and the Congressional Committees.  In some instances, GM provided letters to NHTSA and/or Congress listing the Bates numbers of certain categories of documents, and those letters are contained in GM's production on the MDL Document Depository. For Plaintiffs' convenience, attached as **Exhibits B and C** are indices of the letters sent to NHTSA and Congress, respectively, with the corresponding MDL Bates number or range. These letters and produced documents represent the entirety of the indexing provided to NHTSA and Congress and satisfied GM's obligations to those entities.  Where possible, GM will reasonably endeavor to provide examples of NHTSA and/or Congressional Bates ranges where we believe some responsive documents may be located in those productions.  For Plaintiffs' convenience, attached are **Exhibits D and E**, searchable spreadsheets that provide the corresponding MDL Bates ranges to the NHTSA and/or Congressional (HEC) Bates ranges, respectively, identified in Responses below.  Also, please note that the prior productions to NHTSA and Congress are available on the MDL Document Depository in a searchable format such that you may conduct your own searches within those documents for particular materials that may be responsive to your requests.  Because there is no comprehensive list of categories for the prior productions to NHTSA and Congress, it is not reasonably possible for GM to identify every Request to which each document produced to NHTSA and/or the Congressional Committees may be responsive, and any attempt to do so would be unduly burdensome.

7.     References to documents that GM has produced into the MDL Document Depository include those documents described in GM's Response to Plaintiffs' Request No. 1 below, as well as any supplemental production of relevant, non-privileged materials that GM has made or may make to the Congressional Committees in response to the Congressional Committees' requests outstanding as of August 22, 2014, regarding the Recall Condition in the

Subject Vehicles.  Any such supplemental production of relevant, non-privileged materials that GM has made or may make to the Congressional Committees have not, cannot and will not be produced into the MDL Document Depository simultaneously.  Instead, any such supplemental production to the Congressional Committees has been and will be produced into the MDL Document Depository within a reasonable time after GM's production to the Congressional Committees.  GM will not produce documents provided to NHTSA, or that will be provided to NHTSA in the future, in performance of continuing compliance obligations under the terms of the GM/NHTSA Consent Order (as opposed to documents GM produced in response to the NHTSA Special Orders) or in connection with other federal regulatory reporting obligations, subject to the limitations described below.

8.      GM has agreed to produce into the MDL Document Depository certain non-privileged documents produced to NHTSA and/or the Congressional Committees in connection with their investigations into, among other things, the timeliness of the recall of the Subject Vehicles for the Recall Condition.  These documents were identified after a substantial search and review process.  GM cannot and does not, however, represent that these documents represent "each," "every," "any," or "all" documents that relate to the Recall Condition or that may be responsive to the Requests.

9.      To fulfill its obligations to obtain documents that may be responsive to the *Melton II* requests seeking information from GM's outside counsel, GM sent a notice to King & Spalding, GM's outside counsel in *Melton I*, requesting that it provide any documents responsive to certain requests in King & Spalding's possession.  In response to that notice, King & Spalding provided to GM: (1) communications between GM and King & Spalding lawyers related to certain matters, including *Melton I*; (2) the depositions, pleadings, and written discovery from

6

*Melton I*; (3) the set of documents that were produced to plaintiffs in *Melton I*; and (4) communications between King & Spalding and third parties related to certain matters, including *Melton I*.  King & Spalding has advised GM that it will not provide GM with purely internal King & Spalding communications and work product that were not sent to or shared with GM. GM produced into the MDL Document Depository responsive, non-privileged materials that it received from King & Spalding, consistent with GM's objections and responses to the *Melton II* requests.

10.    To the extent GM references any privilege logs in its responses to Plaintiffs' Requests below, such logs have been provided in accordance with the terms of any protective order and/or Federal Rule of Evidence 502(d) order entered in MDL 2543.  These privilege logs have been provided to Plaintiffs through their access to the MDL Document Depository in a separate folder in the MDL Document Depository.

11.    GM interprets the phrase "ignition switch recalls" as used in these Requests to mean the ignition switch recalls as stated in GM's letters to NHTSA dated February 24 and 25, 2014, GM Recall Nos. 13454 and 14063 (the "Subject Recalls"), which pertain to the 2005-2007 Chevrolet Cobalt, 2006-2007 Chevrolet HHR and Pontiac Solstice, 2003-2007 Saturn Ion, and 2007 Pontiac G5 and Saturn Sky vehicles.

12.    In some of its responses to Plaintiffs' Requests below, GM refers Plaintiffs to documents that it produced into the MDL Document Depository.  Pursuant to the terms of the MDL Protective Order, Plaintiffs' counsel has received an invitation for ShareVault access.  This access is the same that is provided to the MDL plaintiffs, and is not merely limited to documents that may be responsive to these Requests.  As such, GM is producing a courtesy copy of its production letters of documents made in the MDL Document Depository, which is attached as

7

**Exhibit F**.  In some instances, these letters list the Bates numbers of certain categories of documents.

13.    When GM produced documents in response to the identical Requests for Production in *Melton II,* GM provided a field in the production load file ("RFP field") indicating what documents were identified by reviewers as responsive to a particular request.  GM included this information in its production load file to Plaintiffs pursuant to Order 11 (the "ESI protocol").  GM cannot, however, represent that information in the RFP field identifies all documents that may be responsive to the requests or all requests to which a document may be responsive.  Using any standard electronic document review tool (Relativity, Concordance, etc.), Plaintiffs can search for responsive documents in GM's production and filter documents based on the information in the RFP field to view those documents that were identified in response to the Request for Production.  Additionally, the vast majority of the production will be the NHTSA/Congressional and MDL 2543 Phase I Discovery productions, which do not contain this tagging information. Further and as mentioned above, as a general matter, the prior productions to NHTSA and Congress were not indexed.

14.    To further assist Plaintiffs in locating documents responsive to individual Requests for Production, GM attaches **Exhibit G**, a searchable spreadsheet that can be filtered by Request for Production that provides the starting and ending Bates numbers for documents responsive to most of the Requests.  This spreadsheet reflects the fields described in Paragraph 13 that are included in the electronic load files provided as part of GM's production on the MDL Document Depository.

15.    Although Plaintiffs' Requests for Production are identical to those served in *Melton II*, the RFP numbering does not correspond number-by-number.  The fields described in Paragraph 13, and the Exhibit G searchable spreadsheet, correspond to the RFP numbers in

*Melton II* and not to the Request for Production numbering in this case.  GM attaches **Exhibit H** – Felix and Melton Conversion Chart, which provides Plaintiffs with the RFP number in this case and the corresponding Request for Production number in the *Melton II* case.

16.     GM objects to various Requests to the extent they seek information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  Pursuant to MDL 2543 Order Nos. 10, 23 and 48 and Federal Rule of Evidence 502(d), GM has agreed to produce certain of these documents on the condition that, among other things, the production will not waive the attorney-client privilege or the work product protection with respect to any undisclosed communications or information including opinion work product that New GM may redact ("Undisclosed Information").  By producing these documents, New GM has not waived the attorney-client privilege or work product protection with respect to any Undisclosed Information or Redacted Information and its subject matter, in accordance with Order Nos. 10, 23 and 48 and Federal Rule of Evidence 502(d).

17.     GM objects to these Requests to the extent they seek documents that were generated by affiliated entities outside the United States and that were not considered by GM in connection with the Subject Recalls.

## II.
## RESPONSES AND SPECIFIC OBJECTIONS

**REQUEST FOR PRODUCTION NO. 1:**    Please produce all documents requested by the Congressional committees and the National Highway Traffic Safety Administration ("NHTSA") regarding their investigations of GM ignition switches.

**RESPONSE:**

As of August 18, 2014, GM had produced to both NHTSA and the Congressional Committees, in connection with their investigations of the Recall Condition in the Subject Vehicles, more than 1.6 million pages of information, along with several hard drives containing over 300,000 files.  (The vast majority of the productions to NHTSA and the Congressional Committees consist of the same materials.)  These documents have been produced into the MDL Document Depository subject to the MDL Protective Order and the exceptions noted below.  GM continues to provide the Congressional Committees with relevant, non-privileged documents on a rolling basis and, subject to the provisos herein, GM has produced into the MDL Document Depository supplemental production to the Congressional Committees' requests outstanding as of August 22, 2014, regarding the Recall Condition in the Subject Vehicles.

By way of background, between March 25, 2014, and August 14, 2014, GM made a series of rolling productions of documents and data to NHTSA in response to the NHTSA Special Orders.  As stated in the GM/NHTSA Consent Order, these productions satisfied GM's document-production obligations in response to the two NHTSA Special Orders.

Further, beginning on March 25, 2014, GM also made a series of rolling productions of documents and data in response to:  (i) a March 11, 2014 letter from the House Committee; and (ii) additional communications from House Committee staff (*e.g.*, communications clarifying, narrowing, or supplementing the original requests), including certain requests pertaining to the 2008–2011 model year vehicles that were the subject of the March 28, 2014 recall.

10

In April 2014, GM began providing to the Senate Committee a copy of documents produced to either NHTSA and/or the House Committee in connection with their investigations concerning GM's recall of the Subject Vehicles for the Recall Condition. GM has also provided at least one document to the Senate Committee in response to a Question for the Record from a Senator, which GM will produce in this case.

Additionally, following GM's announcement of the February 7, 2014 recall of approximately 780,000 vehicles, GM retained Anton R. Valukas and his firm, Jenner & Block LLP ("Jenner"), to investigate issues relating to the recall and related ignition-switch issues. GM's Board of Directors received a report by Anton Valukas on May 29, 2014 ("Initial Valukas Report"). The Initial Valukas Report was submitted to the GM Board of Directors as a privileged attorney-client communication and as protected attorney work-product. On June 1, 2014, GM received an amended report that corrected certain citations and modified some details for clarification or accuracy ("First Amended Valukas Report"). The First Amended Valukas Report was submitted to GM as a privileged attorney-client communication and as protected attorney work-product. The First Amended Valukas Report was not shared with GM's Board of Directors. On June 4, 2014, GM received a second amended report that corrected additional citations and modified additional details for clarification or accuracy ("Second Amended Valukas Report"). The second amended report was submitted to GM as a privileged attorney-client communication and as protected attorney work-product. The second amended report was shared with GM's Board of Directors. Pursuant to the GM/NHTSA Consent Order, GM provided to NHTSA a complete copy of the second amended report, which still is dated May 29, 2014 (the "Valukas Report"), as well as a copy with personal privacy information redacted. The Valukas Report was also provided to the Congressional Committees.

Case 1:14-md-02543-JMF    Document 978-4    Filed 05/22/15    Page 13 of 77

Subject to the MDL Protective Order, and without waiving any applicable privileges or protections, on October 2, 2014, GM produced an unredacted copy of the Second Amended Valukas Report into the MDL Document Depository. Later, an unredacted copy of the First Amended Valukas Report was produced into the MDL Document Depository pursuant to MDL 2543 Order 23 and without waving any applicable privileges or protections. *See* GM-MDL2543-400247347 – GM-MDL2543-400247671.

In addition to producing the responsive, non-privileged documents and data provided to the House and Senate Committees, as described herein, GM has also produced into the MDL Document Depository, subject to the MDL Protective Order, certain other materials that it provided to the House Committee related to its investigation of the Recall Condition, such as:  (i) a copy of certain non-privileged documents pertaining to certain individuals specified by the House Committee; (ii) an index of certain privileged materials produced to the House Committee; and (iii) an attorney-generated index of certain customer complaint materials produced to NHTSA and the Congressional Committees pursuant to the GM/NHTSA Consent Order.  Additionally, GM has produced into the MDL Document Depository cover letters to NHTSA and the Congressional Committees that accompanied the document productions referenced herein and any related claw-back letters sent to NHTSA or the Congressional Committees.  GM also has produced to the MDL Document Depository the narrative responses to:  (i) the NHTSA Special Orders; (ii) "Questions for the Record" posed by Members of Congress relating to their investigation of the Recall Condition in the Subject Vehicles; and (iii) House staff questions to which responses were submitted on May 30, 2014, and June 11, 2014. In addition, GM has produced into the MDL Document Depository corrections to transcripts of GM witness testimony submitted to Congress after the hearings on ignition-switch issues.

Further, GM has produced into the MDL Document Depository responses to "Questions for the Record" submitted by Anton Valukas relating to the House Committee's investigation of the Recall Condition in the Subject Vehicles; corrections to Mr. Valukas' testimony submitted to Congress after the hearings on ignition-switch issues; and a letter dated August 25, 2014, regarding certain issues raised during Mr. Valukas' testimony at the July 18, 2014 Senate hearing.

To the extent this Request seeks additional documents, GM objects because the Request is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent it seeks all documents "requested" by NHTSA and the Congressional Committees in connection with their investigations of GM's recall of the Subject Vehicles for the Recall Condition. GM conferred with NHTSA and the Congressional Committees over the scope of their requests and produced documents in accordance with the agreed-upon scope.

GM further objects to this Request to the extent it seeks all correspondence between GM and NHTSA or Congress, because any such request would be overly broad and relate to information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law, including certain privileged and redacted materials that were provided to NHTSA and/or Congress for *in camera* review but were withheld from production on the grounds of privilege. GM refers Plaintiffs to the privilege logs that GM already produced

for any responsive but privileged documents that were previously withheld from production to NHTSA and/or the Congressional Committees subject to the provisos contained herein.

In addition, some privileged and/or non-responsive documents were inadvertently produced to NHTSA and/or the Congressional Committees by GM and are or may be the subject of claw-back requests. GM objects to producing in this case any privileged and/or non-responsive documents that are or may be the subject of claw-back requests.

**REQUEST FOR PRODUCTION NO. 2:** All documents relating to the suspension of Ray DeGiorgio and Gary Altman.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced responsive, non-privileged documents into the MDL Document Depository. The search terms and parameters used to conduct this search are detailed in Exhibit A. Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G. In addition, GM refers Plaintiffs to the production GM made pursuant to Order 26 of MDL 2543 at:

GM-MDL2543-400257042 through GM-MDL2543-400258082
GM-MDL2543-400269124 through GM-MDL2543-400269248

GM objects to this Request to the extent it seeks the personnel files of Ray DeGiorgio and/or Gary Altman beyond the scope of Order No. 26.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

14

**REQUEST FOR PRODUCTION NO. 3:**    Please produce all documents relating to the decision by Brian Stouffer and Jim Federico to leave GM.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced responsive, non-privileged documents into the MDL Document Depository.  The search terms and parameters used to conduct this search are detailed in Exhibit A.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

In addition, GM refers Plaintiffs to the production GM made pursuant to Order 26 of MDL 2543 at:

GM-MDL2543-400257042 through GM-MDL2543-400258082
GM-MDL2543-400269124 through GM-MDL2543-400269248

Documents responsive to this Request may also be included within the documents that GM has produced into the MDL Document Depository in response to Request No. 1.  Examples of such documents include, but are not limited to:

GMNHTSA000002881; GMNHTSA000223575;
GMNHTSA000223653; GMNHTSA000223747;
GMNHTSA000223767; and GMNHTSA100043850.

GM objects to this Request on the grounds that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent it seeks information unrelated to the Recall Condition in the Subject Vehicles.

GM further objects to this Request to the extent it seeks the personnel files of Brian Stouffer and/or Jim Federico beyond the scope of Order No. 26.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from

disclosure provided by law.  GM refers Plaintiffs to the privilege logs that GM has already

produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 4:**    Please produce all documents relating to the
investigation of any incident or event in which it is alleged and/or thought that the key in a GM
car moved from RUN to ACCESSORY/OFF when the driver did not intend it to move.

**RESPONSE:**

GM understands this Request to seek documents relating to the Recall Condition in the

Subject Vehicles.  Documents responsive to this Request are included within the documents that

GM has produced into the MDL Document Depository in response to Request No. 1, and

include, but are not limited to:

> GMNHTSA000200564-218054; GMNHTSA000198612-623;
> GMNHTSA000149621-197570; GMNHTSA000253372-57776;
> GMNHTSA000292899-2983; GMNHTSA000293110-3764;
> GMNHTSA000294758-0316136; GMNHTSA000447152-65;
> GMNHTSA000000003-01990; GMNHTSA000002824-848;
> GMNHTSA000248070-253371; GMNHTSA000263554-271821;
> GMNHTSA000258205-263553; GMNHTSA000002688-2734;
> GMNHTSA000246684-48069; GMNHTSA000218132-36;
> GMNHTSA000002735-2822; and GMNHTSA000002853-877.

Documents responsive to this Request also are included within the documents that GM

has produced and will produce into the MDL Document Depository pursuant to Orders 23 and

48 of MDL 2543.  In addition, Bates ranges and RFP field information described in Paragraphs

13-14 of the Preliminary Statement are contained in Exhibit G.

GM anticipates that it will be serving discovery responses and supplemental document

production in the MDL Proceeding.  GM will seasonably supplement its Response to this

Request pursuant to the Missouri Rules of Civil Procedure.

GM objects to this Request to the extent it seeks information prepared in anticipation of

litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product

doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 5:**    Please produce the personnel files of Jim Federico, Ray DeGiorgio, Gary Altman, David Trush, Brian Stouffer, Craig St. Pierre, Peter Judis, Brian Chase, Brian Everestt, Victor Hakim, Steven Oakley, Bill Thompson and Ebram Handy.

**RESPONSE:**

Documents responsive to this Request are included within the documents that GM has produced into the MDL Document Depository pursuant to Order 26 of MDL 2543 at:

> GM-MDL2543-400257042 through GM-MDL2543-400258082
> GM-MDL2543-400269124 through GM-MDL2543-400269248

Beyond the scope of Order No. 26, GM objects to producing personnel files. *See State ex rel. Crowden v. Dandurand*, 970 S.W.2d 340, 343 (Mo. 1998) ("Employees have a fundamental right of privacy in employment records").  Any discovery of confidential personnel records must be "limited to information that relates to matters put at issue in the pleadings, especially in relation to sensitive personal information." *State ex rel. Madlock v. O'Malley*, 8 S.W.3d 890, 891 (Mo. 1999).  Plaintiffs have made no showing that the material sought is (1) relevant and (2) reasonably tailored (*i.e.*, "limited to information that relates to matters put at issue in the pleadings").  GM further objects because this Request seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 6:**    Please produce all documents sent by GM to attorneys at the firm of King & Spalding about the existence of safety-related defects in the cars covered in the Recall.

**RESPONSE:**

GM understands this Request to seek documents relating to the Recall Condition in the Subject Vehicles.  GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced into the MDL Document Depository responsive, non-privileged documents to the extent they relate to the Recall Condition in Subject Vehicles. The search terms and parameters used to conduct this search are detailed in Exhibit A.  GM also has produced into the MDL Document Depository responsive, non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement. Documents responsive to this Request also are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

GM further objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 7:**      Please produce all documents, including attorney's notes, created by GM and/or any of its attorneys in connection with Ray DeGiorgio's April 29, 2013 deposition.  If you contend any document is privileged, please provide a suitable Privilege Log.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced responsive, non-privileged documents into the MDL Document Depository.  The search terms and parameters used to conduct this search are detailed in Exhibit A.  GM also has produced into the MDL Document Depository responsive, non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement.  In addition, although not "created by GM and/or any of its attorneys," GM has produced into the MDL Document Depository the Ray DeGiorgio deposition transcript.  *See* GMNHTSA000138592.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

In addition, documents responsive to this Request are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543, including but not limited to:

> GM-MDL2543-400147692; GM-MDL2543-000958869;
> GM-MDL2543-400256568; GM-MDL2543-400262898;
> GM-MDL2543-400256576; GM-MDL2543-000958894;
> GM-MDL2543-400251418; GM-MDL2543-400262624;
> GM-MDL2543-400262626; GM-MDL2543-400262629;
> GM-MDL2543-003574456.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  GM refers Plaintiffs to the privilege logs that GM already produced into the MDL 2543

Document Depository.  GM further objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 8:**     Please produce all documents, including attorney's notes, created by GM and/or any of its attorneys in connection with Ebram Handy's February 1, 2013 deposition.  If you contend any document is privileged, please provide a suitable Privilege Log.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced responsive, non-privileged documents into the MDL Document Depository.  The search terms and parameters used to conduct this search are detailed in Exhibit A.  GM also has produced into the MDL Document Depository responsive, non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement.  In addition, although not "created by GM and/or any of its attorneys," GM has produced into the MDL Document Depository the Ebram Handy deposition transcript.  *See* GMNHTSA300144823.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

In addition, documents responsive to this Request are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543, including but not limited to:

> GM-MDL2543-400260477; GM-MDL2543-400260478;
> GM-MDL2543-400147692; GM-MDL2543-400174517;
> GM-MDL2543-400031033; GM-MDL2543-400147732;
> GM-MDL2543-000958869; GM-MDL2543-400256568.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by

law.  GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543

Document Depository.  GM further objects to this Request to the extent it seeks documents that

are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 9:**    Please    produce    all    documents,    including
attorney's notes, created by GM and/or any of its attorneys in connection with Gary Altman's
June 12, 2013 deposition. If you contend any document is privileged, please provide a suitable
Privilege Log.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to

this Request, and has produced into the MDL Document Depository responsive, non-privileged

documents.  The search terms and parameters used to conduct this search are detailed in Exhibit

A.  GM also has produced into the MDL Document Depository responsive, non-privileged

documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary

Statement.  In addition, although not "created by GM and/or any of its attorneys," GM has

produced into the MDL Document Depository the Gary Altman deposition transcript.  *See*

GMNHTSA000137573.   Bates ranges and RFP field information described in Paragraphs 13-14

of the Preliminary Statement are contained in Exhibit G.

In addition, documents responsive to this Request are included within the documents that

GM has produced and will produce into the MDL Document Depository pursuant to Orders 23

and 48 of MDL 2543, including but not limited to:

> GM-MDL2543-400262964; GM-MDL2543-400175013;
> GM-MDL2543-003519265; GM-MDL2543-003542991;
> GM-MDL2543-000713577; GM-MDL2543-000669411;
> GM-MDL2543-000669411; GM-MDL2543-003542992;
> GM-MDL2543-003514303.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository. GM further objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 10:** Please produce all documents, including attorney's notes, created by GM and/or any of its attorneys in connection with Brian Stouffer's May 1, 2013 deposition. If you contend any document is privileged, please provide a suitable Privilege Log.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced into the MDL Document Depository responsive, non-privileged documents. The search terms and parameters used to conduct this search are detailed in Exhibit A. GM also has produced into the MDL Document Depository responsive, non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement. In addition, although not "created by GM and/or any of its attorneys," GM has produced to the MDL Document Depository the Brian Stouffer deposition transcript. *See* GMNHTSA000146686. Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

In addition, documents responsive to this Request are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543, including but not limited to:

GM-MDL2543-400147692; GM-MDL2543-400147732;
GM-MDL2543-000958869; GM-MDL2543-400256568;

GM-MDL2543-400262624; GM-MDL2543-400262626;
GM-MDL2543-400262629; GM-MDL2543-400262631;
GM-MDL2543-000902481; GM-MDL2543-000902482;
GM-MDL2543-000861011; GM-MDL2543-003518276.

GM objects to this Request to the extent it seeks information prepared in anticipation of

litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product

doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by

law.  GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543

Document Depository.  GM further objects to this Request to the extent it seeks documents that

are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 11:**    Please   produce   all   documents,   including
attorney's notes, created by GM and/or any of its attorneys, including in-house counsel as well as
outside counsel, in connection with its investigation into safety related defects in the Key
System, which includes the ignition switch, of the Chevrolet Cobalt or any other GM vehicle
with the similar Key System, which includes the ignition switch.  If you contend any document is
privileged, please provide a suitable Privilege Log.

**RESPONSE:**

GM understands this Request to seek documents relating to the Recall Condition in the

Subject Vehicles.  GM further understands this Request to seek the same information sought in

response to Request Nos. 33 and 34 below.  GM has produced into the MDL Document

Depository non-privileged documents responsive to this Request to the extent they relate to the

Recall Condition in the Subject Vehicles, examples of which include, but are not limited to:

GMNHTSA000200564-218054; GMNHTSA000198612-623;
GMNHTSA000149621-97570; GMNHTSA000253372-57776;
GMNHTSA000292899-2983; GMNHTSA000293110-3764;
GMNHTSA000294758-0316136; and GMNHTSA000447152-65.

Documents responsive to this Request also are included within the documents that GM

has produced and will produce into the MDL Document Depository pursuant to Orders 23 and

48 of MDL 2543. In addition, Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. GM further objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 12:**    Please produce all documents in which GM or anyone on its behalf, including attorneys for GM, both in-house and outside counsel, told GM to recall the cars with the defective ignition switch covered in the Recall. If you contend any document is privileged, please provide a suitable Privilege Log.

**RESPONSE:**

GM understands this Request to seek documents relating to the Recall Condition in the Subject Vehicles. GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced into the MDL Document Depository responsive, non-privileged documents. The search terms and parameters used to conduct this search are detailed in Exhibit A. GM also has produced into the MDL Document Depository responsive, non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement. Documents responsive to this Request may also be included within the documents that GM has produced in response to Request No. 1. Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request as vague and ambiguous, particularly to the extent that it purports to seek documents in which "GM . . . told GM to recall" the Subject Vehicles. GM

further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  GM further objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 13:**    Please produce all documents in which GM or anyone on its behalf, including attorneys for the GM, both in-house and outside counsel, told GM not to recall the cars with the defective ignition switch covered in the Recall.  If you contend any document is privileged, please provide a suitable Privilege Log.

**RESPONSE:**

GM understands this Request to seek documents relating to the Recall Condition in the Subject Vehicles.  GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced into the MDL Document Depository responsive, non-privileged documents.  The search terms and parameters used to conduct this search are detailed in Exhibit A.  GM also has produced into the MDL Document Depository responsive, non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement.  Documents responsive to this Request may also be included within the documents that GM has produced in response to Request No. 1.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request as vague and ambiguous, particularly to the extent that it purports to seek documents in which "GM . . . told GM not to recall" the Subject Vehicles. GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product

doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. GM further objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 14:** Please produce all documents from which it can be determined that GM or anyone acting on its behalf ever had possession of any cars or their components that contained the defects set out in the Recall.

**RESPONSE:**

Documents responsive to this Request may be included within the documents that GM has produced into the MDL Document Depository in response to Request No. 1. Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request on the grounds that it is vague and ambiguous, particularly to the extent that it seeks documents related to GM's "possession" of the Subject Vehicles or components thereof. General Motors Corporation or GM LLC has possessed every Subject Vehicle at some point during its manufacture and/or distribution, and numerous documents unrelated to the issues in this litigation may reflect that possession. It is not reasonably possible for GM to identify "all documents from which it can be determined that GM . . . ever had possession" of the Subject Vehicles, and any attempt to do so would be unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 15:**    Please produce all documents that pertain to the cars in Response to Request No. 14 from which it can be determined what GM or anyone acting on its behalf did with the cars or components from those cars.

**RESPONSE:**

Documents responsive to this Request may be included within the documents that GM has produced into the MDL Document Depository in response to Request No. 1.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request on the grounds that it is vague and ambiguous, particularly to the extent that Request No. 14 purportedly includes all of the Subject Vehicles.  It is not reasonably possible for GM to identify "all documents" from which it can be determined what GM "did with" the Subject Vehicles, and any attempt to do so would be unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 16:**    Please produce all documents that pertain in any way to any studies, inspections, CAD, analysis and any examination (as those terms are most broadly defined) of the ignition systems and/or components of any of the cars identified in Request No. 14.

**RESPONSE:**

Documents responsive to this Request may be included within the documents that GM has produced into the MDL Document Depository in response to Request No. 1.  Bates ranges

and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request on the grounds that it is vague and ambiguous, particularly to the extent that Request No. 14 purportedly includes all of the Subject Vehicles.  It is not reasonably possible for GM to identify "all documents" related to, among other things, "analysis" of any component of the Subject Vehicles, and any attempt to do so would be unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 17:**     Please produce all letters, emails and all other documents in which GM or anyone acting on its behalf authorized and/or acquiesced in the disposal of any of the cars or components identified in Request No. 14.

**RESPONSE:**

Documents responsive to this Request may be included within the documents that GM has produced to the MDL Document Depository in response to Request No. 1.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request on the grounds that it is vague and ambiguous, particularly to the extent that Request No. 14 purportedly includes all of the Subject Vehicles.  It is not reasonably possible for GM to identify "all documents" related to "the disposal" of the Subject Vehicles, and any attempt to do so would be unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

28

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 18:**   Please produce all documents sent by GM to attorneys at any law firm about the existence of safety-related defects in the cars covered in the Recall.

**RESPONSE:**

GM understands this Request to seek documents relating to the Recall Condition in the Subject Vehicles.  GM has produced into the MDL Document Depository non-privileged documents responsive to this Request that were created as of October 16, 2013, including non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement.  Documents responsive to this Request also are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543. GM also refers Plaintiffs to Paragraph 16 of the Preliminary Statement for information concerning GM's productions made pursuant to Orders Nos. 23 and 48 of MDL 2543.  Documents responsive to this Request may also be included within the documents that GM has produced in response to Request No. 1.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

GM further objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 19:**    Please produce all documents received back from King & Spalding and/or other lawyers that pertain to the existence of safety-related defects in the cars covered in the Recall.

**RESPONSE:**

GM understands this Request to seek documents relating to the Recall Condition in the Subject Vehicles.  GM has produced into the MDL Document Depository non-privileged documents responsive to this Request that were created as of October 16, 2013, including non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement.  Documents responsive to this Request also are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543.  GM also refers Plaintiffs to Paragraph 16 of the Preliminary Statement for information concerning GM's productions made pursuant to Orders Nos. 23 and 48 of MDL 2543.  Documents responsive to this Request may also be included within the documents that GM has produced in response to Request No. 1.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

GM further objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

30

**REQUEST FOR PRODUCTION NO. 20:**     Please produce all documents reflecting any work done by GM's in-house counsel, and/or outside counsel, relating to the Key System, including the ignition switch.

**RESPONSE:**

GM understands this Request to seek documents relating to the Recall Condition in the Subject Vehicles.   GM has produced into the MDL Document Depository non-privileged documents responsive to this Request that were created as of October 16, 2013, including non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement.   Documents responsive to this Request also are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543.   GM also refers Plaintiffs to Paragraph 16 of the Preliminary Statement for information concerning GM's productions made pursuant to Orders Nos. 23 and 48 of MDL 2543.   Documents responsive to this Request may also be included within the documents that GM has produced in response to Request No. 1.   Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

GM further objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 21:**   Please produce all experts' reports, including any tests, supporting data, calculations, or photographs, factual observations and reports or facts on which such experts intend to rely.

**RESPONSE:**

GM has not yet determined what experts it may call to testify in this case.  When it does, it will provide the discovery required by the Missouri rules and in compliance with any scheduling order of this Court.

To the extent this Request seeks documents beyond those required to be produced by the Missouri rules and any scheduling order of this Court, GM objects. GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law, including but not limited to information prepared by any consulting experts retained by GM, which remain privileged absent a showing of substantial need and otherwise unavailable.

**REQUEST FOR PRODUCTION NO. 22:**   Please produce a copy of all Pugh Analyses (sometimes called Pugh Matrix Analysis) performed by you on various criteria and choices for the GM ignition switches chosen and/or considered for use in the recalled Defective Vehicles.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced into the MDL Document Depository responsive, non-privileged documents that were created as of March 11, 2014, to the extent they relate to the Subject Vehicles.  The search terms and parameters used to conduct this search are detailed in Exhibit A. Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

Documents responsive to this Request are also included within the documents that GM has produced into the MDL Document Depository in response to Request No. 1, examples of which include, but are not limited to:

GMNHTSA200004267; GMNHTSA000481022; GMNHTSA000481007; GMNHTSA000077226; and GMNHTSA000247502.

**REQUEST FOR PRODUCTION NO. 23:**     Please produce a copy of all RAMSIS Analyses performed by you on various criteria and ergonomics design choices that were to accompany the GM ignition switches chosen and/or considered for use in the recalled Defective Vehicles.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced into the MDL Document Depository responsive, non-privileged documents that were created as of March 11, 2014, to the extent they relate to the Subject Vehicles.  The search terms and parameters used to conduct this search are detailed in Exhibit A. Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

Documents responsive to this Request are also included within the documents that GM has produced to the MDL Document Depository in response to Request No. 1, examples of whiuch  include, but are not limited to:

GMNHTSA000334388; GMNHTSA000277987; GMNHTSA000283479; GMNHTSA300039461; and GMNHTSA000218710-722

GM objects to this Request to the extent that design choices are not affected by post-production RAMSIS studies.

**REQUEST FOR PRODUCTION NO. 24:**     Please produce a list or documents evidencing or relating to all GM vehicles that used the ignition switch design used in the 2006 Cobalt, including years of production.

**RESPONSE:**

GM has produced into the MDL Document Depository documents sufficient to identify the GM vehicles that used the ignition switch design used in the 2006 Cobalt, including years of production.  The following documents, which GM has produced into the MDL Document Depository, identify the make and model year vehicles that used, or may have used, the ignition switch design used in the 2006 Chevrolet Cobalt:

    1.   Recall bulletins and attached chronology related to GM Recall No. 13454 at GM-MDL2543-400540020; GM-MDL2543-400541186; GM-MDL2543-004735440;

    2.   Recall bulletins and attached chronology related to GM Recall No. 14063 at GM-MDL2543-400540030; GM-MDL2543-000767944;GM-MDL2543-002172802;GM-MDL2543-001136895;GM-MDL2543-002618686; GM-MDL2543-400275690; and and

    3.   Recall bulletins and attached chronology related to GM Recall No. 14092 at GM-MDL2543-301550649; GM-MDL2543-300702248; GM-MDL2543-300702227.

Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

**REQUEST FOR PRODUCTION NO. 25:**     Please produce documents evidencing when GM started producing vehicles with the updated ignition switch design, including documents that show what model vehicle received the newer switch designs and when.

**RESPONSE:**

*See* GM's Response and Objections to Request No. 24, including but not limited to the chronologies related to GM Recall Nos. 13454, 14063, and 14092.  Documents responsive to this Request are also be included within the documents that GM has produced into the MDL

Document Depository in response to Request No. 1, examples of which include, but are not limited to:

GMNHTSA000316167-GMNHTSA000316220, and GMNHTSA000257867-GMNHTSA000257869.

In addition, Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

**REQUEST FOR PRODUCTION NO. 26:**     Please produce an unredacted version of the report prepared by Anton Valukas and Jenner & Block ("Valukas Report") dated May 29, 2014, and presented to the Board of Directors of General Motors Co. regarding ignition switch recalls. (A redacted version of the report was filed with NHTSA).

**RESPONSE:**

Documents responsive to this Request are included within the documents that GM has produced into the MDL Document Depository without waving any applicable privileges or protections:

GM-MDL2543-400247347 – GM-MDL2543-400247671.

**REQUEST FOR PRODUCTION NO. 27:**     Please produce unredacted copies of all documents, witness interviews, reports, tests or other documents, however designated, that were referenced as footnotes in the "Valukas Report", i.e., footnotes 1 through 1355.

**RESPONSE:**

As referenced in its Response to Request No. 1 above, GM has produced into the MDL Document Depository the non-privileged documents cited in the footnotes to the Valukas Report to the extent any such documents were not otherwise publicly available.  Documents responsive to this Request also are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543.  GM's prior productions to NHTSA and the Congressional Committees have been produced into the MDL

Document Depository in a searchable format such that you may conduct your own searches within those documents. GM has also agreed to produce any non-privileged documents cited in the Valukas Report to the extent any such documents have not been produced to the Congressional Committees or NHTSA, and are not otherwise publicly available. If after a reasonable search, Plaintiffs are unable to locate particular document(s) responsive to this Request, GM will make reasonable efforts in assisting Plaintiff with same.

GM objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control. GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. GM further objects to this Request to the extent it seeks information the Court in MDL 2543 found "[is] protected by both the attorney-client privilege and the attorney work product doctrine." (*See* MDL 2543 January 15, 2015 Order.) GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 28:**    Please produce an index evidencing all documents or information provided to or made available to Antone (sic) Valukas and/or Jenner & Block with respect to its investigation into the GM ignition switch recalls.

**RESPONSE:**

GM states that there is no index evidencing all documents provided to Jenner. Moreover, GM states that there is no specific set of materials provided to the investigative team led by Anton Valukas. In connection with its work on the Valukas Report, Jenner had access to a significant number of documents and data, which include over 23 terabytes of data constituting over 41 million documents. Included in this material were entire hard drives of multiple

Case 1:14-md-02543-JMF   Document 975-4   Filed 05/22/15   Page 88 of 97

employees, which were "made available" to Jenner without any culling of non-responsive information.  Accordingly, this collection included documents and information that had nothing to do with the ignition switch issues that are the subject of the Valukas Report.

The documents that GM has produced into the MDL Document Depository in response to Request No. 1 are among those made available to Anton Valukas in connection with his investigation as set forth in the Valukas Report and are thus responsive to this Request.  *See also* GM's Response and Objections to Request No. 27 above.

To the extent this Request seeks additional documents beyond those that GM has produced into the MDL Document Depository, GM objects because the Request is overly broad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence.

GM objects to this Request to the extent that it seeks documents relating to recalls other than with respect to the Recall Condition in the Subject Vehicles.  GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  GM further objects to this Request to the extent it seeks information the Court in MDL 2543 found "[is] protected by both the attorney-client privilege and the attorney work product doctrine."  (*See* MDL 2543 January 15, 2015 Order.)  As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.  GM has agreed to produce any non-privileged documents cited in the Valukas Report to the extent any such documents have not been produced to the Congressional Committees or NHTSA, and are not otherwise publicly available.

**REQUEST FOR PRODUCTION NO. 29:**    Produce a copy of all bills, billing statements, and raw billing sheets sent to you by Jenner & Block in connection with any work done to research and prepare the Valukas Report.

**RESPONSE:**

GM objects to producing any "bills, billing statements, and raw billing sheets sent to you by Jenner & Block."  The information contained therein is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 30:**    Please produce the spreadsheet of ignition switch problems and/or air bag non-deployments maintained by field performance assessment engineer, John Sprague, as referenced in the "Valukas Report."

**RESPONSE:**

Documents that GM has produced into the MDL Document Depository in response to Request No. 1 are responsive to this Request.  Versions of the requested spreadsheet found in John Sprague's files bear Bates nos.

> GMHEC000636998; GMNHTSA000385018; GMNHTSA000391908;
> GMNHTSA000391944; GMNHTSA000398112; GMNHTSA000597828;
> GMNHTSA000585825; GMNHTSA000474323; and GMNHTSA000607034.

In addition, Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

**REQUEST FOR PRODUCTION NO. 31:** Please produce the personnel files of any person fired by GM as a result of the investigation in the ignition switch defect issue, except for those in Request No.5 of Plaintiffs' First Document Requests, as those have already been asked for.

**RESPONSE:**

*See* GM's Response and Objections to Request No. 5 above.

**REQUEST FOR PRODUCTION NO. 32:** Please produce the personnel files of any person censured, reprimanded, re-assigned, and/or retired by GM as a result of the investigation in the ignition switch defect issue.

**RESPONSE:**

*See* GM's Response and Objections to Request No. 5 above.

**REQUEST FOR PRODUCTION NO. 33:** Please produce GM's files for the 54 frontal impact crashes identified by GM as being related to the faulty ignition switch recalls.

**RESPONSE:**

In connection with the NHTSA and Congressional investigations, GM conducted a search which identified documents that may be responsive to this Request. GM has produced into the MDL Document Depository documents responsive to this Request located in that search, including, but not limited to:

> GMNHTSA000200564-218054; GMNHTSA000198612-623;
> GMNHTSA000149621-197570; GMNHTSA000253372-57776;
> GMNHTSA000292899-2983; GMNHTSA000293110-3764;
> GMNHTSA000294758-0316136; and GMNHTSA000447152-65.

GM further provides **Exhibit I** that Plaintiffs may use to conduct searches for documents that may potentially be responsive to this Request. Exhibit I is included in General Motors LLC's Supplemental, Restated, and Consolidated Response to March 4, 2014, Special Order, Request Number 5.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 34:**    Please produce GM's files on the 13 deaths that General Motors claims are related to the faulty ignition switch recalls.

**RESPONSE:**

GM objects to this Request because it mischaracterizes GM's prior statements. In connection with the NHTSA and Congressional investigations, GM conducted a search which identified documents that may be responsive to this Request. GM has produced into the MDL Document Depository documents responsive to this Request located in that search. *See* Response to Request No. 33 above. GM further provides Exhibit I that Plaintiffs may use to conduct searches for documents that may potentially be responsive to this Request. Exhibit I is included in General Motors LLC's Supplemental, Restated, and Consolidated Response to March 4, 2014, Special Order, Request Number 5.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 35:**     Please produce a copy of the Wisconsin Safety Patrol Accident Reconstruction Report on a Cobalt fatality that was published in April 2007 and referenced in the "Valukas Report."

**RESPONSE:**

GM states that the Valukas Report does not refer to a "Wisconsin Safety Patrol Reconstruction Report" related to a fatality that was published in April 2007.  However, in the spirit of cooperation, GM states that documents it has produced into the MDL Document Depository in response to Request No. 1, are responsive to this Request at:

1.     On-Site Airbag Non-Deployment Investigation, Case No. IN-06-033 dated April 25, 2007, and modified March 31, 2008, Bates nos. GMNHTSA000223985-4014; and

2.     The Collision Analysis & Reconstruction Report dated February 14, 2007, Bates nos. GMNHTSA000284395-424.

**REQUEST FOR PRODUCTION NO. 36:**     Please produce any and all emails, memos, correspondence or other documents to or from GM employee Ray DeGiorgio related to the model ignition switch made the basis of this suit, including any communications with suppliers related to the approval and subsequent changes made to the ignition switch over its history.

**RESPONSE:**

In connection with the NHTSA and Congressional investigations, GM conducted a search which identified documents that may be responsive to this Request.  GM has produced into the MDL Document Depository documents responsive to this Request located in that search.  These documents were identified as related to, among other issues, the Recall Condition in the Subject Vehicles, including Ray DeGiorgio's communications with suppliers about the ignition switch.  GM's prior productions to NHTSA and the Congressional Committees have been produced into the MDL Document Depository in a searchable format such that you may conduct your own searches within those documents.   Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

In addition, documents responsive to this Request are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543, including but not limited to:

GM-MDL2543-003512156; GM-MDL2543-003574456.

To the extent this Request seeks additional documents beyond those GM has produced into the MDL Document Depository, GM objects because the Request is overly broad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 37:**     Please produce a copy of any and all SDM download documents in GM's possession related to vehicles it has downloaded for vehicles within the scope of any 2014 ignition switch recalls.

**RESPONSE:**

In connection with the NHTSA and Congressional investigations, GM conducted a search reasonably calculated to identify documents related to certain frontal impact crashes in which the recall condition may have caused or contributed to airbag non-deployment.  GM has produced into the MDL Document Depository documents responsive to this Request located in that search, including, but not limited to:

GMNHTSA000200564-218054; GMNHTSA000149621-197570;
GMNHTSA000253372-57776; GMNHTSA000293110-3764;
GMNHTSA000294758-0316136; and GMNHTSA000662298-662562.

Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary

Statement are contained in Exhibit G.

In addition, on September 29, 2014, counsel for GM and MDL Lead Counsel notified the

MDL Court through joint letter, *see* Dkt. No. 325, that GM had agreed, subject to clarification

with MDL Lead Counsel on certain subparts, to use its best efforts to collect and produce non-

privileged documents in GM's possession, custody, and control, responsive to the criteria set

forth in Request No. 415 of Plaintiffs' Requests for Production dated September 23, 2014 ("RFP

415"), for vehicles that MDL Lead Counsel provided GM a valid Vehicle Identification Number

("VIN"). On December 4, 2014, GM produced documents pursuant to meet-and-confers between

the parties on RFP 415, specifically item No. 48 of New GM's Phase I discovery proposal. This

production was limited to documents collected as of October 2, 2014, for the VINs in

Attachment A to Plaintiffs' September 23, 2014 Requests for Production. Documents produced

pursuant to this agreement, which are referred to as the "RFP 415 Documents," may be

responsive to this Request and include GM-MDL2543-300083996 through GM-MDL2543-

300127019.

To the extent this Request seeks additional documents beyond those that GM has

produced into the MDL Document Depository, including in response to Request No. 1 and in

response to RFP 415, GM objects because the Request is overly broad, unduly burdensome, and

seeks information that is irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence, particularly to the extent that it seeks information unrelated to the Recall

Condition in the Subject Vehicles.

**REQUEST FOR PRODUCTION NO. 38:**     Please produce any and all tests reports showing that subject model ignition switch or subsequent versions of the switch that failed to meet the torque requirement of GM's specifications.

**RESPONSE:**

In connection with the NHTSA and Congressional investigations, GM conducted a search which identified documents that may be responsive to this Request.  GM has produced into the MDL Document Depository documents responsive to this Request located in that search, including, but not limited to:

> GMHEC000258080-507; GMHEC0004411115-443061;
> GMHEC000759176-619; and GMHEC000841489-GMHEC000845210.

Additionally, GM has conducted hundreds of tests which were designed to determine whether and under what conditions the ignition switch in the Subject Vehicles may inadvertently move out of the "run" position to the "accessory" position.  Those documents have been produced to the MDL Document Depository, including, but not limited to:

> GMNHTSA000221125-26; GMNHTSA000692523-25;
> GMNHTSA000668329-53; GMNHTSA100081284-307;
> GMNHTSA100089010-GMNHTSA100091109;
> GMNHTSA100084128; GMNHTSA100092026-483; and
> GMNHTSA100096344-6799.

The above referenced tests produced to NHTSA in response to the NHTSA Special Orders and re-produced in the MDL Document Depository, as well as additional relevant documents relating to this testing may be found in the MDL Document Depository at:

GM-MDL2543-003316306 - GM-MDL2543-003316306; Volume: GM-MDL-2543-VOL-00011
GM-MDL2543-003316307 - GM-MDL2543-003316307; Volume: GM-MDL-2543-VOL-00012
GM-MDL2543-003316308 - GM-MDL2543-003316308; Volume: GM-MDL-2543-VOL-00013
GM-MDL2543-003316309 - GM-MDL2543-003316309; Volume: GM-MDL-2543-VOL-00014
GM-MDL2543-004692979 - GM-MDL2543-004692979; Volume: GM-MDL-2543-VOL-00153
GM-MDL2543-003683701 - GM-MDL2543-003683701; Volume: GM-MDL-2543-VOL-00122
GM-MDL2543-300874836 - GM-MDL2543-300910690; Volume: GM-MDL-2543-VOL-00131
GM-MDL2543-301369351- GM-MDL2543-301433501; Volume: GM-MDL-2543-VOL-00138
GM-MDL2543-301684504 - GM-MDL2543-301703057; Volume: GM-MDL-2543-VOL-00196

In addition, Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

Moreover, GM's prior productions to NHTSA and the Congressional Committees have been produced into the MDL Document Depository in a searchable format such that you may conduct your own searches within those documents.

To the extent this Request seeks additional documents beyond those produced into the MDL Document Depository, GM objects because it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  GM further objects to the extent this Request seeks information or materials outside of its possession, custody or control.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 39:**      Please produce any and all documents received from Delphi as a result of GM's investigation into the ignition defect recall issue.

**RESPONSE:**

Documents that GM has produced into the MDL Document Depository in response to Request No. 1 include documents from Delphi that relate to the ignition switch in the Subject Vehicles, including, but not limited to:

> GMHEC000258080-507; GMHEC0004411115-443061;
> GMHEC000759176-619; GMHEC000841489-GMHEC000845210.

In addition, Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

To the extent this Request seeks additional documents beyond those produced into the MDL Document Depository, GM objects because the Request seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 40:**     Please produce any and all final engineering drawings related to the ignition switch used in the subject model vehicles from 2001 through 2010.

**RESPONSE:**

In connection with the NHTSA and Congressional investigations, GM conducted a search which identified documents that may be responsive to this Request.  GM has produced into the MDL Document Depository documents responsive to this Request located in that search, including, but not limited to, copies of technical specifications, diagrams, and engineering drawings, at the following Bates nos.

> GMNHTSA000276054-082; GMNHTSA000276114-134;
> GMNHTSA000276264-6324; GMNHTSA000279449-9538;
> GMNHTSA000279671-280567; GMNHTSA000280568-586;
> GMNHTSA000280589-0684; GMNHTSA000197571-77;
> GMNHTSA000327902-942; GMNHTSA000327944-979;
> GMNHTSA00328280-81; GMNHTSA000328308- 311;
> GMHEC000759305-361; GMHEC000759379-391;
> GMHEC000759541-597; GMHEC000759618-630;
> GMHEC000759676-684; GMHEC000759745-754;
> GMHEC000759819-829; and GMHEC000759861-874.

In addition, Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

**REQUEST FOR PRODUCTION NO. 41:**    Please produce any and all correspondence, emails or other communications from GM's attorneys King & Spalding regarding Ray DeGiorgio, including but not limited to emails about, before, and after his deposition testimony in Melton v. GM.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced into the MDL Document Depository responsive, non-privileged documents that were created as of March 11, 2014.  The search terms and parameters used to conduct this search are detailed in Exhibit A.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

Certain non-privileged documents that GM has produced to the MDL Document Depository in response to Request Nos. 1 and 7 may also be responsive to this Request.  GM has also produced into the MDL Document Depository responsive, non-privileged documents that it received from King & Spalding, as described in Paragraph 9 of the Preliminary Statement. Documents responsive to this Request also are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543.

GM objects to this Request to the extent it seeks documents that are outside GM's possession, custody, or control.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 42:**     Please produce any and all consumer complaints within the scope of vehicles set forth in the ignition switch recalls wherein it was alleged that the vehicle stalled and/or air bags failed to deploy.

**RESPONSE:**

In connection with the NHTSA and Congressional investigations, GM conducted a search which identified documents that may be responsive to this Request.  GM has produced into the MDL Document Depository documents responsive to this Request located in that search, including, but not limited to:

> GMNHTSA600000000-014687; GMNHTSA610000000-01270; GMNHTSA620000000-05765; and GMNHTSA630000000-0246320.

These documents include the results of a search that GM conducted of the GM locations where customer complaints and field reports that relate, or may relate, to the Recall Condition in the Subject Vehicles would ordinarily be expected to be found.  Specifically, GM searched the following nine GM data sources:

1.  CAC.  Customer Assistance Center, which contains information relating to customer complaints.

2.  TAC.  Technical Assistance Center, which contains information relating to field reports from GM dealers.

3.  CTF.  Captured Test Fleet, which contains information relating to reports from drivers of GM company cars.

4.  CVEP.  Company Vehicle Evaluation Program, which also contains information relating to reports from drivers of GM company cars.

5.  EQF.  Early Quality Feedback, which contains information relating to telephone surveys of new vehicle owners conducted within 45 days of purchase of the vehicle.

6.  GM Overdrive.  This data source contains information relating to reports regarding GM vehicles received from GM employees through an internal GM website.

7.  J.D. Power.  This data source contains information relating to surveys of new vehicle owners soliciting information regarding their vehicles.

8.     FPR-PRTS.  Field Performance Reports - Problem Resolution Tracking System, which contains information captured for, among other things, TREAD reporting purposes.

9.     Other Field Reports.   Third-party field reports collected for TREAD reporting purposes.

Not all of the customer complaint and field report records that GM identified reflect the Recall Condition in the Subject Vehicles, and the quantity of records is substantially greater than the number of customer complaint and field report records related to the Recall Condition.  By producing this information, GM is not suggesting that any consumer complaint, claim, or lawsuit is substantially similar to the crash described in Plaintiffs' Complaint.

Additionally, GM provided to NHTSA and the Congressional Committees an index of certain customer complaint materials that GM has produced to those entities.  In its Response to Request No. 1, GM indicated that it has produced a copy of that index into the MDL Document Depository.  This index was created by GM's outside counsel in accordance with the provisions of the GM/NHTSA Consent Order as an aid to NHTSA to quickly find documents related to a particular complaint.  This index was not created by GM in the ordinary course of business.  By producing this index, GM does not waive its objections to the admissibility of this index into evidence.   Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

To the extent this Request seeks additional documents beyond those that GM has produced into the MDL Document Depository, GM objects because it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, particularly to the extent it seeks information unrelated to the Recall Condition in the Subject Vehicles.  In light of the scope and quantity of documents that have been produced into the MDL Document Depository, and the resources expended by GM to collect, review and produce those

documents, it would be unduly burdensome to conduct additional searches to identify and review additional documents potentially relating to "consumer complaints" involving the Recall Condition.

**REQUEST FOR PRODUCTION NO. 43:**     Please produce any documents produced to the United States Congress regarding the ignition switch recalls.

**RESPONSE:**

*See* GM's Response and Objections to Request No. 1 above.

**REQUEST FOR PRODUCTION NO. 44:**     Any documents produced to the NHSTA regarding the ignition switch recalls.

**RESPONSE:**

*See* GM's Response and Objections to Request No. 1 above.

**REQUEST FOR PRODUCTION NO. 45:**     Please produce documents evidencing or relating to whether the new design ignition switch met GM's torque requirements.

**RESPONSE:**

*See* GM's Responses and Objections to Request Nos. 1, 27, and 38.  In connection with the NHTSA and Congressional investigations, GM conducted a search which identified documents that may be responsive to this Request.  GM has produced into the MDL Document Depository documents responsive to this Request located in that search.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.  In addition and subject to the MDL Protective Order, the responsive, non-privileged materials previously produced to NHTSA and/or Congressional Committees have been produced into the MDL Document Depository in a searchable format such that you may conduct your own searches within those documents.

GM objects to this Request to the extent it seeks information prepared in anticipation of

litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product

doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by

law.  As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that

GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 46:**    Produce copies of all hard drives of documents
that were gathered in connection with the investigation GM and the preparation of the Valukas
Report (encompasses 23 TB of data and 41 million documents). The documents should be
produced in a format that may be searched by Plaintiff's counsel.

**RESPONSE:**

*See* GM's Responses and Objections to Request Nos. 27, 28, and 50.  GM states that

there is no specific set of materials provided to the investigative team led by Anton Valukas.  In

connection with its work on the Valukas Report, Jenner had access to a significant number of

documents and data, which include over 23 terabytes of data constituting over 41 million

documents.  This collection included documents and information that had nothing to do with the

ignition switch issues that are the subject of the Valukas Report.  Nevertheless, documents that

GM has produced into the MDL Document Depository in response to Request No. 1 are among

those made available to Anton Valukas in connection with his investigation as set forth in the

Valukas Report and are thus responsive to this Request.  This material has been produced into

the MDL Document Depository in a searchable format such that you may conduct your own

searches within those documents for particular materials.

To the extent this Request seeks additional documents beyond those that GM produced

into the MDL Document Depository, GM objects because the Request is overly broad, unduly

burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  GM further objects to this Request to the extent it seeks information the Court in MDL 2543 found "[is] protected by both the attorney-client privilege and the attorney work product doctrine."  (*See* MDL 2543 January 15, 2015 Order.)  As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 47:**    An exact mirrored (and unaltered) copy of the hard drive that contains the 23 TB of data mentioned in the Valukas Report.

**RESPONSE:**

*See* GM's Response and Objections to Request No. 46.  GM states that there is no single hard drive that contains the 23 TB of data mentioned in the Valukas Report.  To the extent this Request seeks additional documents beyond those that GM has produced into the MDL Document Depository, GM objects because the Request is overly broad, unduly burdensome, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence.  GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  GM further objects to this Request to the extent it

seeks information the Court in MDL 2543 found "[is] protected by both the attorney-client privilege and the attorney work product doctrine." (*See* MDL 2543 January 15, 2015 Order.)

**REQUEST FOR PRODUCTION NO. 48:**     Produce a copy of all documents authored by, received by, and sent to Mary Barras about the GM ignition switch issues that pertain to the Subject Recall and Defective Vehicles, as well as any 2014 ignition switch recalls.

**RESPONSE:**

In connection with the NHTSA and Congressional investigations, GM conducted a search which identified documents that may be responsive to this Request.  GM has produced into the MDL Document Depository documents responsive to this Request located in that search, including, but not limited to:

> GMHEC200012964-78; GMHEC000691670-74; GMHEC000611287-88;
> GMHEC000475675-77; GMHEC000695810-12; GMHEC000221311;
> GMHEC100105525-30; GMHEC200030089-90; GMHEC200003466-68;
> GMHEC100097373-74; GMHEC200022081-90; GMHEC000325207;
> GMHEC000613597-604; GMHEC200000163; GMHEC200000164-71;
> GMHEC100091189-92; and GMHEC100098904-06

In addition, Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

Documents responsive to this Request also are included within the documents that GM has produced and will produce into the MDL Document Depository pursuant to Orders 23 and 48 of MDL 2543, including but not limited to:

> GM-MDL2543-001446341; GM-MDL2543-001445982;
> GM-MDL2543-001445978; GM-MDL2543-001445974;
> GM-MDL2543-001445964; GM-MDL2543-001448724;
> GM-MDL2543-001445309; GM-MDL2543-003475060;
> GM-MDL2543-001192884; GM-MDL2543-003912421;
> GM-MDL2543-003912419; GM-MDL2543-002487424;
> GM-MDL2543-400533452.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 49:** Produce a copy of all documents authored by, received by, and sent to GM's Board of Directors about the GM ignition switch issues that pertain to the Subject Recall and Defective Vehicles, as well as any 2014 ignition switch recalls.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced into the MDL Document Depository responsive, non-privileged documents that were created between January 2001 and March 11, 2014, to the extent they relate to the Recall Condition in the Subject Vehicles. GM has produced into the MDL Document Depository only the responsive portions of non-privileged minutes, books and presentation material prepared in connection with meetings of the GM Board of Directors and certain Board committees, including the Audit Committee, the Public Policy Committee, the Finance and Risk Committee, and the Directors and Corporate Governance Committee, to the extent they relate to the Recall Condition in the Subject Vehicles. Documents produced into the MDL Document Depository that are responsive to this Request have been redacted to the extent the information contained therein does not relate to the Recall Condition in the Subject Vehicles, and include the following:

> GM-MDL2543-000852860;GM-MDL2543-002257083;
> GM-MDL2543-400241739; GM-MDL2543-004200888;
> GM-MDL2543-400242874 - GM-MDL2543-400242881;
> GM-MDL2543-004300666 - GM-MDL2543-004300673;
> GM-MDL2543-400241746 - GM-MDL2543-400241887;

GM-MDL2543-004299800 - GM-MDL2543-004299941;
GM-MDL2543-200038740 - GM-MDL2543-200038743;
GM-MDL2543-003914797 - GM-MDL2543-003914800;
GM-MDL2543-00159439 - GM-MDL2543-0015944610;
GM-MDL2543-002971460 - GM-MDL2543-002971531.

Documents responsive to this Request also are included within the documents that GM

has produced and will produce into the MDL Document Depository pursuant to Orders 23 and

48 of MDL 2543, including but not limited to:

GM-MDL2543-001057659; GM-MDL2543-001057691;
GM-MDL2543-001057694; GM-MDL2543-001057703;
GM-MDL2543-001057690; GM-MDL2543-001057695;
GM-MDL2543-001057692; GM-MDL2543-001057660;
GM-MDL2543-001057693; GM-MDL2543-001057718;
GM-MDL2543-003468523; GM-MDL2543-001057699;
GM-MDL2543-001057696; GM-MDL2543-003468325;
GM-MDL2543-003468004.

To the extent this Request seeks additional documents beyond those described above,

GM objects because the Request is overly broad, unduly burdensome, and seeks information that

is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in

anticipation of litigation, or protected from disclosure by the attorney-client privilege, the

attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from

disclosure provided by law.  As provided in its Response to Request No. 1, GM refers Plaintiffs

to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 50:**     If not already produced, please produce a copy
of each and every document referred to directly or indirectly in the Valukas Report.

**RESPONSE:**

*See* GM's Responses and Objections to Request Nos. 1, 27, 28, and 46.  GM has

produced into the MDL Document Depository a substantial number of relevant, non-privileged

documents and other data, which include the non-privileged documents cited in the footnotes to the Valukas Report, to the extent any such documents are in GM's possession, custody, and control, and are not otherwise publicly available.

GM objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  GM further objects to this Request to the extent it seeks information the Court in MDL 2543 found "[is] protected by both the attorney-client privilege and the attorney work product doctrine." (*See* MDL 2543 January 15, 2015 Order.)  GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.  GM has also agreed to produce any non-privileged documents cited in the Valukas Report to the extent any such documents have not been produced to the Congressional Committees or NHTSA, and are not otherwise publicly available.

**REQUEST FOR PRODUCTION NO. 51:**    Please produce a copy of all notes, transcripts, and tapes (audio or video) of any person interviewed by Jenner & Block for the Valukas investigation and Report, including any of those not cited in the final Valukas Report.

**RESPONSE:**

GM understands that there are no transcripts or tapes (audio or video) of any interview conducted by Jenner in connection with its investigation.  To the extent this Request seeks notes taken by GM's outside counsel or third parties, GM objects to the extent that the Request seeks material outside of GM's possession, custody or control.  GM further objects to the Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.  GM further objects to this

Request to the extent it seeks information the Court in MDL 2543 found "[is] protected by both the attorney-client privilege and the attorney work product doctrine." (*See* MDL 2543 January 15, 2015 Order.) GM further objects because the Request is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 52:**    Please produce copies of all drafts of the Valukas Report sent to you.

**RESPONSE:**

*See* GM's Response and Objections to Request No. 1 above.

**REQUEST FOR PRODUCTION NO. 53:**    Please produce any internal GM correspondence relating to the Valukas investigation.

**RESPONSE:**

GM objects to producing internal GM correspondence relating to the Valukas investigation on the grounds that the Request is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 54:**     Please produce any internal GM correspondence relating to the Congressional investigation of the ignition switch.

**RESPONSE:**

GM objects to producing internal GM correspondence relating to the Congressional investigation of the Recall Condition on the grounds that the Request is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 55:**     Please produce any internal GM correspondence relating to the production of documents to Congress.

**RESPONSE:**

GM objects to producing internal GM correspondence relating to the production of documents to Congress on the grounds that the Request is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 56:**     Please produce any internal GM correspondence relating to the production of documents to the Department of Justice.

**RESPONSE:**

GM objects to producing internal GM correspondence relating to the production of documents to the Department of Justice on the grounds that this Request seeks information related to the confidential federal grand jury subpoena issued to GM by the SDNY as part of its confidential and ongoing criminal investigation. GM further objects because the Request is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 57:**     Please produce all documents and materials relating to any communications between GM, Opel, and Daewoo which address the Subject Recall and Defective Vehicles, as well as any 2014 ignition switch recalls.

**RESPONSE:**

GM has conducted a search reasonably calculated to identify documents responsive to this Request, and has produced into the MDL Document Depository responsive, non-privileged documents that were created as of March 11, 2014, to the extent they relate to the Recall Condition in the Subject Vehicles. The search terms and parameters used to conduct this search are detailed in Exhibit A. Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

Documents responsive to this Request may also be included within the documents that GM has produced into the MDL Document Depository in response to Request No. 1, including

communications between GM, Opel, and Daewoo relating to the ignition switch in the Subject

Vehicles.  Examples of such documents include, but are not limited to:

> GMNHTSA300083522-27; GMNHTSA300006611-16;
> GMNHTSA000270277-282; GMHEC000677781-82;
> GMHEC300162652-54; GMNHTSA000443437-41;
> GMNHTSA000669376-381; GMNHTSA000223434-35;
> GMNHTSA000275186-88; GMNHTSA000473593; and
> GMHEC000665467-68.

Documents responsive to this Request also are included within the documents that GM

has produced and will produce into the MDL Document Depository pursuant to Orders 23 and

48 of MDL 2543, including but not limited to:

> GM-MDL2543-000871419.

To the extent this Request seeks additional documents beyond those identified by the

searches described in Exhibit A or produced into the MDL Document Depository, GM objects

because the Request is overly broad, unduly burdensome, and seeks information that is irrelevant

and not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in

anticipation of litigation, or protected from disclosure by the attorney-client privilege, the

attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from

disclosure provided by law.  As provided in its Response to Request No. 1, GM refers Plaintiffs

to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 58:**     Please produce the minutes of every meeting
where the Key System in the Defective Vehicles was discussed.

**RESPONSE:**

Written minutes do not exist for every meeting at which the ignition switch in the Subject

Vehicles may have been discussed.   In connection with the NHTSA and Congressional

investigations, GM conducted a search which identified documents that may be responsive to this Request.  GM has produced into the MDL Document Depository documents responsive to this Request located in that search.  These documents include minutes, agendas, presentations and reports created in connection with certain meetings at which the ignition switch in the Subject Vehicles may have been discussed, including meetings of the Current Product Improvement Team, Vehicle And Process Integration Review, Product Development Team, Field Performance Evaluation group, and the Executive Field Action Decision Committee. Examples of such documents include, but are not limited to:

> GMNHTSA000019812; GMNHTSA000481040-41; GMNHTSA000227763;
> GMNHTSA000227772, GMNHTSA000227774; GMNHTSA000227788;
> GMNHTSA000227793; GMNHTSA000462694; GMNHTSA000462884;
> GMNHTSA000463028; GMNHTSA000551599; GMNHTSA000337485-89;
> GMNTSA000220995; GMNHTSA000220996; GMNHTSA000221027;
> GMNHTSA300013189; GMNHTSA000258485; GMNHTSA000218132-36; and
> GMNHTSA000002735-2822.

*See* GM's Response and Objections to Request No. 49.  GM has also produced into the MDL Document Depository responsive, non-privileged minutes prepared in connection with meetings of the GM Board of Directors and certain Board committees to the extent they were created between January 2001 and March 11, 2014 and relate to the Recall Condition in the Subject Vehicles.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

To the extent this Request seeks additional documents beyond those described above or produced into the MDL Document Depository , GM objects because the Request is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the

09-50026-smg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Pg 215 of 588

Case 1:14-md-02543-JMF    Document 978-4    Filed 05/22/15    Page 63 of 60?

attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 59:**    All documents which identify the committees (and the members of those committees) that would have reviewed the Key System in the Defective Vehicles and the Safety Recall.

**RESPONSE:**

Documents that GM has produced into the MDL Document Depository in response to Request No. 1 may be responsive to this Request, including, but not limited to:

> GMNHTSA000019812; GMNHTSA000481040-41; GMNHTSA000227763; GMNHTSA000227772, GMNHTSA000227774; GMNHTSA000227788; GMNHTSA000227793; GMNHTSA000462694, GMNHTSA000462884; GMNHTSA000463028; GMNHTSA000551599; GMNHTSA000337485-89; GMNTSA000220995; GMNHTSA000220996; GMNHTSA000221027; GMNHTSA300013189; GMNHTSA000258485; GMNHTSA000218132-36; and GMNHTSA000002735-2822.

In addition, Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

To the extent this Request seeks additional documents beyond those produced into the MDL Document Depository, GM objects because the Request is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 60:**     All documents and materials which identify every internal database GM is using to search for documents requested in Plaintiffs' First Request for Production.

**RESPONSE:**

For purposes of this case, GM is currently storing information electronically in four different databases that contain over 20 terabytes of data—this equates to over 40 million documents.  Information contained in these four databases was collected from multiple sources, including over 300 individuals identified as potentially having information relating to the Recall Condition in the Subject Vehicles, as well as other data sources within GM.  GM objects to producing "all documents and materials which identify" these databases on the grounds that the Request is overly broad and unduly burdensome.  GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law.

**REQUEST FOR PRODUCTION NO. 61:**     All documents and materials relating to the policies and procedures used by in-house counsel to inform Michael Milliken of developments in any lawsuits, claims and complaints brought against GM.

**RESPONSE:**

GM objects to this Request because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  GM further objects to the extent that documents responsive to this Request are likely privileged and beyond the scope of permissible discovery.  Without waiving that objection, GM is aware of certain documents responsive to this Request contained on the privilege logs that GM has produced into the MDL Document Depository in response to Request No. 1.  Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

GM further objects to this Request to the extent it seeks information prepared in anticipation of litigation, or protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privilege, rule of confidentiality, or protection from disclosure provided by law. As provided in its Response to Request No. 1, GM refers Plaintiffs to the privilege logs that GM has already produced into the MDL 2543 Document Depository.

**REQUEST FOR PRODUCTION NO. 62:**    All documents received from Delphi relating to the Key System in the Defective Vehicles and the Safety Recall.

**RESPONSE:**

*See* GM's Response and Objections to Request No. 39. Documents that GM has produced into the MDL Document Depository in response to Request No. 1 include documents from Delphi that relate to the ignition switch in the Subject Vehicles, including, but not limited to:

GMHEC000258080-507; GMHEC0004411115-443061;
GMHEC000759176-619; and GMHEC000841489-GMHEC000845210.

In addition, Bates ranges and RFP field information described in Paragraphs 13-14 of the Preliminary Statement are contained in Exhibit G.

To the extent this Request seeks additional documents beyond those GM has produced into the MDL Document Depository, GM objects because the Request seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

DATED:  May 13, 2015                    Respectfully submitted,

                                        TURNER, REID, DUNCAN, LOOMER &
                                        PATTON, P.C.
                                        1355 East Bradford Parkway, Suite A
                                        Springfield, MO  65804
                                        P.O. Box 4043
                                        Springfield, MO  65808-4043
                                        Phone: 417-883-2102
                                        Fax:    417-883-5024
                                        rloomer@trdlp.com
                                        srozell@trdlp.com

                                            /s/ Rodney E. Loomer
                                        By _____
                                            Rodney E. Loomer, Mo. Bar #24013
                                            Sherry A. Rozell, Mo. Bar #34131

                                        and

                                        Peter B. Hoffman, Mo. Bar #25645
                                        BAKER STERCHI COWDEN & RICE
                                        1010 Market Street
                                        Suite 950
                                        St. Louis, Missouri 63101
                                        Phone: 314-231-2925
                                        Fax: 314-231-4857
                                        hoffman@bscr-law.com

                                        and

                                        Kyle H. Dreyer, TX Bar #06119500
                                        Giovanna T. Bingham, TX Bar #24042613
                                        HARTLINE DACUS BARGER
                                        DRYER LLP
                                        8750 N. Central Expressway, Suite 1600
                                        Dallas, Texas 75231

                                        *Admitted Pro Hac Vice*

                                        **ATTORNEYS FOR DEFENDANT
                                        GENERAL MOTORS LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was mailed, in the United States Mail, at Springfield, Missouri, postage prepaid, duly addressed to:

Robert L. Langdon
Adam W. Graves
LANGDON & EMISON
911 Main Street
P.O. Box 220
Lexington, MO  64067
Phone: 660-259-6175
Fax:    660-259-4571

James G. Onder
James D. O'Leary
ONDER, SHELTON, O'LEARY & PETERSON, LLC
110 E. Lockwood, 2nd Floor
St. Louis, MO  63119
Phone: 314-963-9000
Fax:    314-963-1700

this 13th day of May, 2015.

/s/ Rodney E. Loomer

Rodney E. Loomer, Mo. Bar #24013
Attorney for Defendant
TURNER, REID, DUNCAN, LOOMER & PATTON
P.O. Box 4043
Springfield, MO  65808-4043
Phone: 417-883-2102

# Exhibit 15



Giovanna Tarantino Bingham
gtarantino@hdbdlaw.com
direct dial: 214- 346-3784
direct fax: 214-267-4284

April 23, 2015

**VIA EMAIL AND FACSIMILE**
Robert Langdon
Langdon & Emison
911 Main Street, P.O. Box 220
Lexington, Missouri 64067

      Re:    *Skyesha Felix et al. v. General Motors LLC*, Case No. 1422-CC09472, in the 22nd
             Judicial Circuit Court of the City of St. Louis, Missouri.

Dear Bob:

      Pursuant to the terms of the MDL Protective Order entered April 21, 2015, the *Felix* plaintiffs have been given access to the MDL 2543 Document Repository hosted by ShareVault. We understand an invitation for ShareVault access has been sent to your email at Bob@lelaw.com.  Such access is the same that is provided to the MDL plaintiffs.

      Should you have any questions, please do not hesitate to contact me.

             Very truly yours,

             Giovanna Tarantino Bingham

GTB/aeb

cc:    Kyle H. Dreyer – *via email*
       Peter B. Hoffman – *via email*
       Rodney E. Loomer – *via email*

# Exhibit 16



Robert L. Langdon
J. Kent Emison
Michael W. Manners
Brett A. Emison

— • —

Adam W. Graves
David A. Brose
Mark A. Emison
Lindsey N. Scarcello
Michael J. Serra
Brennan B. Delaney

April 23, 2015

## LANGDON AND EMISON
*Attorneys at Law*

Please reply to:
The Eagle Building
P.O. Box 220
911 Main Street
Lexington, MO  64067
Telephone: (660) 259-6175
Facsimile: (660) 259-4571
www.LangdonEmison.com

**Via email and US Mail**
Giovanna Tarantino Bingham
HARTLINE DACUS BARGER DREYER LLP
6688 N. Central Expy, Suite 1000
Dallas, Texas  75206

Re:  *Skyesha Felix, et al., v. General Motors LLC.*
     *In the District Court of the City of St. Louis, MO*
     Case No. 1422-CC09472

Dear Ms. Bingham:

We are in receipt of your correspondence today regarding access to the MDL Document Repository.  As you know the Court entered an Order on April 15, 2015 wherein it determined that GM had waived its objection to Plaintiff's discovery by not submitting a privilege log and failing to answer a single request.  "The Court finds that Plaintiffs are entitled to have their discovery requests fully responded to without reference to the MDL discovery."

Further the Court ordered GM to "provide full and complete responses to Plaintiff's First Request for Production of Documents within twenty-one (21) days of the date of this Order".  We expect GM to answer Plaintiffs' discovery requests served in this matter and not just give us access to millions of documents.  If Plaintiffs have not received complete answers to their discovery requests from GM by May 6, 2015, we plan to seek further relief from the Court.

Very truly yours,

LANGDON & EMISON

Robert L. Langdon

Cc:   Kyle Dreyer-via email
      Peter B. Hoffman-via email
      Rodney E. Loomer-via email
      Adam W. Graves-via email
      James G. Onder-via email
      James D. O'Leary-via email

| Kansas City | Lexington | St. Louis | Chicago |
|---|---|---|---|
| (816) 421-8080 | (660) 259-6175 | (314) 638-1500 | (312) 855-0700 |
| | | *by appointment* | *by appointment* |

# Exhibit 17

Electronically Filed - City of St. Louis - May 18, 2015 - 10:51 PM

# IN THE 22ND JUDICIAL CIRCUIT COURT
## OF THE CITY OF ST. LOUIS, MISSOURI

| | | |
|---|---|---|
| SKYESHA FELIX, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.:    1422-CC09472 |
| v. | ) | |
| | ) | |
| GENERAL MOTORS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## CROSS NOTICE OF VIDEOTAPED DEPOSITIONS

COMES NOW Plaintiff, pursuant to Rule 57.03(b)(4) of the Missouri Rules of Civil Procedure, and hereby gives notice that Plaintiffs will take the videotaped depositions of the witnesses set forth in the table below.  Unless otherwise indicated, the depositions will take place at Dykema Gossett, PLLC, 400 Renaissance Center, 23rd Floor, Detroit, MI  and commence at 8:30 a.m. local time on the correspondence dates set forth in the table below.

| Date of Deposition | Name of Deponent |
|---|---|
| May 19, 2015 | Jaclyn Palmer |
| May 20, 2015 | Neil Skaar |
| May 21, 2015 | Elizabeth Kiihr |
| May 22, 2015 | Jonathan Weber |
| May 27, 2015 | Vipul Modi |
| May 28, 2015 | William Chase |

Electronically Filed - City of St. Louis - May 18, 2015 - 10:51 PM

These depositions will be taken before a notary public or some other person duly qualified to administer oath.  The deposition will continue day to day until complete.

Respectfully submitted,

**LANGDON & EMISON**

/s/Robert L. Langdon
Robert L. Langdon   MO Bar #23233
Adam W. Graves   MO Bar #55190
Michael W. Manners MO Bar #25394
911 Main St., P.O. Box 220
Lexington, Missouri 64067
Tele:  (660) 259-6175
Fax:   (660) 259-4571
Email: bob@lelaw.com
Email: adam@le.com
Email: mike@lelaw.com

James G. Onder                #38049
James D. O'Leary            #45964
James T. Corrigan           #45127
ONDER, SHELTON O'LEARY &
PETERSON, LLC
110 E. Lockwood, 2nd Floor
St. Louis, Missouri 63119
(314) 963-9000
(314) 963-1700 FAX
onder@onderlaw.com
oleary@onderlaw.com

**ATTORNEYS FOR PLAINTIFF**

Electronically Filed - City of St. Louis - May 18, 2015 - 10:51 PM

## CERTIFICATE OF SERVICE

I hereby certify that on 18th day of May 2015, I electronically filed the foregoing with the clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following:

Rodney E. Loomer
Sherry A. Rozell
**TURNER, REID, DUNCAN, LOOMER & PATTON PC**
PO Box 4043
1355 E Bradford Pkwy, Suite A
Springfield, MO  65808-4043
Phone: 417-883-2102
Fax:   417/883-5024
rlomer@trdlp.com
srozell@trdlp.com
**ATTORNEYS FOR DEFENDANT GENERAL MOTORS LLC**

Peter Hoffman
**BAKER STERCHI COWDEN & RICE**
1010 Market Street
Suite 950
St. Louis, MO  63101
Phone: 314-231-2925
Fax: 314-231-4857
Hoffman@bscr-law.com
**ATTORNEYS FOR DEFENDANT GENERAL MOTORS LLC**

Pryce G. Tucker, Esq.
Kyle H. Dreyer, Esq.
Giovanno Tarantino Bingham, Esq.
**HARTLINE DACUS BARGER DREYER, LLP**
8760 N. Central Expressway
Suite 1600
Dallas, TX  75231
**ATTORNEYS FOR DEFENDANT GENERAL MOTORS LLC**

/s/Robert L. Langdon    _____
Attorney for Plaintiff

# Exhibit 18

Filing # 27295308 E-Filed 05/14/2015 01:50:54 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. 15-002297 DIV. 14

WALTER MILLER

        Plaintiff,

vs.

GENERAL MOTORS, LLC, GARBER
CHEVROLET-BUICK-PONTIAC-GMC
TRUCK, INC., LOU BACHRODT
CHEVROLET, INC., and AUTONATION,
INC.

        Defendants.

_____/

## NOTICE OF HEARING

**YOU ARE HEREBY NOTIFIED** that we will call up for hearing before the **Honorable Carlos A. Rodriguez,** Judge of the above-styled Court, at the Broward County Courthouse, **Tuesday, June 2, 2015, at 8:45 a.m.,** the following:

### *PLAINTIFF'S MOTION TO ADVANCE TRIAL ON DOCKET*

**KOCH PARAFINCZUK & WOLF, P.A.**
*Attorneys for Defendant*
110 East Broward Boulevard
Suite 1630
Ft. Lauderdale, FL 33301
Telephone (954) 462-6700
Facsimile (954) 462-6567
By:   */s/Marcus J. Susen*
     JUSTIN PARAFINCZUK, ESQ.
     Fla. Bar No. 039898
     Parafinczuk@kpwlaw.com
     MARCUS J. SUSEN
     Fla. Bar No. 70789
     Susen@kpwlaw.com
     **Service:** pleadings@kpwlaw.com

KOCH PARAFINCZUK & WOLF, P. A.
110 EAST BROWARD BOULEVARD, SUITE 1630, FT. LAUDERDALE, FLORIDA 33301 • TEL: (954) 462-6700 • FAX: (954) 462-6567
3195 PONCE DE LEON BOULEVARD, SUITE 200,  MIAMI, FLORIDA  33134 • TEL: (305) 460-9007
www.KPWlaw.com

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Email

on this 28th day of May, 2014 to:

**SERVICE LIST**

ERNEST H. EUBANKS, JR., ESQUIRE
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
seubanks@rumberger.com (primary)
docketingorlando@rumberger.com and
mbegey@rumberger.com (primary)

By:    __*/s/ Marcus J. Susen*_____
       MARCUS J. SUSEN
       Fla. Bar No. 70789
       Susen@kpwlaw.com

cc:    Judge Carlos A. Rodriguez (w/copy of Motion)

KOCH PARAFINCZUK & WOLF, P. A.
110 EAST BROWARD BOULEVARD, SUITE 1630, FT. LAUDERDALE, FLORIDA 33301 • TEL: (954) 462-6700 • FAX: (954) 462-6567
3195 PONCE DE LEON BOULEVARD, SUITE 200,  MIAMI, FLORIDA  33134 • TEL: (305) 460-9007
www.KPWlaw.com

# Exhibit 19

Filing # 27635719 E-Filed 05/22/2015 02:10:09 PM

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

WALTER MILLER,

        Plaintiff,

vs.                                     CASE NO.:  CACE 15-002297 (14)

GENERAL MOTORS LLC, GARBER
CHEVROLET-BUICK-PONTIAC-GMC
TRUCK, INC., LOU BACHRODT
CHEVROLET, INC., and MAROONE
CHEVROLET, LLC,

        Defendants.

_____/

**DEFENDANT GENERAL MOTORS LLC'S
MOTION TO ADOPT JOINT COORDINATION ORDER**

      Defendant General Motors LLC ("GM LLC") files this Motion to Adopt Joint Coordination Order, and in support thereof, avers the following:

**I.**
**SUMMARY OF MOTION**

      This product liability action arises from a two-vehicle collision involving Plaintiff Walter Miller's 2010 Chevrolet HHR (the "subject vehicle").  Plaintiff alleges that a defect in the subject vehicle's ignition switch and electric power steering caused the crash and that the injuries Plaintiff allegedly sustained in the accident were intensified because the airbag failed to deploy. The issues surrounding the subject vehicle's alleged ignition switch and electric power steering defects substantially overlap with a federal multidistrict litigation ("MDL") pending in the Southern District of New York.  To encourage coordination between the MDL Court and courts presiding over related cases nationwide, the MDL Court issued a Joint Coordination Order,

1

which is designed to prevent duplicative discovery, prevent undue burden on courts, parties, and nonparties, avoid substantial expense, and conserve judicial resources. It would be more efficient, more convenient, less burdensome, and less expensive to the parties and this Court for Plaintiff to obtain discovery regarding the subject vehicle's ignition switch through coordination with the MDL. This Court can facilitate that process by adopting the MDL Court's Joint Coordination Order.

In fact, the MDL Court has pushed the MDL Proceeding forward with an ambitious discovery and bellwether trial schedule, repeatedly stressing to the parties in the MDL Proceeding that the cases proceed at a reasonable yet aggressive pace. This Court can adopt the Joint Coordination Order while still maintaining a reasonable yet aggressive trial schedule in this litigation. In that regard, Plaintiff is seeking advancement of a trial setting, citing his age and alleged injuries sustained in the accident. To address Plaintiff's concerns regarding his age and health, while working within the confines of the Joint Coordination Order and also being mindful of the MDL Court's carefully crafted discovery and bellwether trial schedule, GM LLC proposes the parties proceed with case specific discovery, including promptly scheduling Plaintiff's trial deposition to preserve his testimony.[1]

For the reasons stated herein, GM LLC respectfully requests the Court enter the Joint Coordination Order, which will allow the parties to develop their claims and defenses, while still taking advantage of the efficiencies provided through coordinating and consolidating pretrial and discovery proceedings in the MDL.

---

[1] *See* GM LLC's Response to Plaintiff's Motion to Advance Trial on Docket, to be filed concurrently with this motion.

2

## II.
### FACTUAL AND PROCEDURAL HISTORY

This product liability action arises from a two-vehicle crash that occurred on or about November 2, 2013, in Fort Lauderdale, Florida.  *See* Am. Compl. ¶¶ 21-22.  Plaintiff Walter Miller ("Plaintiff"), who was operating a 2010 Chevrolet HHR ("subject vehicle"), "was in the process of making a left-hand turn and was 'T-Boned' by another vehicle."  *Id*. ¶ 22.  Plaintiff's Complaint alleges that he was unable to avoid the collision because of a "malfunction in the [subject vehicle's] power steering" and his injuries were allegedly "intensified due to the air bag which failed to deploy."  *Id.* ¶¶ 22-23.  Plaintiff claims the subject vehicle was defective based on the issuance of three "three recalls for the Vehicle, including recalls for its ignition switch, power steering, and airbag."  *Id.* ¶ 27.

On March 25, 2014, the United States Judicial Panel on Multidistrict Litigation ("JPML") established MDL 2543, *In re Gen. Motors LLC Ignition Switch Litig.* ("MDL Proceeding").  On June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL Court and assigned the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings in the ignition switch actions.  *See* Transfer Order, *In re Gen. Motors LLC Ignition Switch Litig.*, MDL No. 2543 (J.P.M.L. June 9, 2014) (attached as Exhibit A).  The JPML transferred an initial group of fifteen cases pending in six federal districts to the Southern District of New York after concluding that it was "undisputed" that cases alleging a defect in the ignition switches of certain GM vehicles satisfied the requirements for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.  *Id.* at 2.  More than 185 additional actions have since been filed in, or transferred to, the MDL Court, including

claims to recover both for alleged economic losses and alleged personal injuries.  *See generally In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y.).[2]

In addition to the more than 200 cases pending in the MDL, numerous other related actions involving the same or substantially similar subject matter as the MDL Proceeding are pending in state and federal courts nationwide ("Related Actions").  *See* Joint Coordination Order at 1, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. Sept. 24, 2014) (attached as Exhibit B).  Recognizing that discovery in the MDL Proceeding and Related Actions, like this one, "will substantially overlap," the MDL Court entered a Joint Coordination Order.  *See generally id.*  The purposes of the Joint Coordination Order are to "prevent duplication of discovery and undue burden on courts, parties, and nonparties in responding to discovery requests, save substantial expense by the parties and nonparties, and produce substantial savings in judicial resources."  *Id.* at 2.  Among other

---

[2] There are numerous other actions involving 2006–2011 MY Chevrolet HHR vehicles currently pending in the MDL proceeding.  *See, e.g.*, *Abney, et al. v. Gen. Motors LLC*, No. 1:14-cv-05810 (S.D.N.Y.); *Arnold, et al. v. Gen. Motors LLC, et al.*, 1:14-cv-05325 (S.D.N.Y.); *Ashworth v. Gen. Motors LLC*, No. 2:14-cv-00607 (S.D.N.Y.); *Bedford Auto Wholesale, Inc. v. Gen. Motors LLC*, No. 1:14-cv-05356 (S.D.N.Y.); *Belt v. Gen. Motors LLC*, No. 1:14-cv-08883 (S.D.N.Y.); *Bledsoe, et al. v. Gen. Motors LLC*, No. 1:14-cv-07631 (S.D.N.Y.); *Boyd, et al. v. Gen. Motors LLC*, No. 1:14-cv-07631 (S.D.N.Y.); *Brown, et al. v. Gen. Motors LLC*, No. 1:14-cv-04715 (S.D.N.Y.); *Camlan, Inc., et al. v. Gen. Motors LLC*, No. 1:14-cv-04741 (S.D.N.Y.); *Chaplin v. Gen. Motors LLC, et al.*, No. 1:14-cv-07474 (S.D.N.Y.); *Darby v. Gen. Motors LLC*, No. 1:14-cv-04692 (S.D.N.Y.); *Dinco v. Gen. Motors LLC*, No. 1:14-cv-04727 (S.D.N.Y.); *Forthun v. Gen. Motors LLC*, No. 1:15-cv-02640 (S.D.N.Y.); *Groman v. Gen. Motors LLC*, No. 2:14-cv-02458 (S.D.N.Y.); *Grumet v. Gen. Motors LLC*, No. 1:14-cv-04690 (S.D.N.Y.); *Holliday, et al. v. Gen. Motors LLC*, No. 1:14-cv-05506 (S.D.N.Y.); *Jackson, et al. v. Gen. Motors LLC*, No. 1:15-cv-00713 (S.D.N.Y.); *Kelley v. Gen. Motors LLC*, No. 1:14-cv-04272 (S.D.N.Y.); *Lannon, et al. v. Gen. Motors LLC, et al.*, No. 1:14-cv-04676 (S.D.N.Y.); *LaReine, et al. v. Gen. Motors LLC, et al.*, No. 1:14-cv-04717 (S.D.N.Y.); *Leval v. Gen. Motors LLC*, No. 1:14-cv-04802 (S.D.N.Y.); *Lewis v. Gen. Motors LLC, et al.*, No. 1:14-cv-04720 (S.D.N.Y.); *Maciel, et al. v. Gen. Motors LLC*, No. 4:14-cv-04339 (S.D.N.Y.); *McCormick, et al. v. Gen. Motors LLC*, No. 1:14-cv-08892 (S.D.N.Y.); *Mullins v. Gen. Motors LLC*, No. 1:14-cv-08885 (S.D.N.Y.); *Nettleton Auto. Sales, Inc. v. Gen. Motors LLC, et al.*, No. 1:14-cv-04760 (S.D.N.Y.); *Phaneuf, et al. v. Gen. Motors LLC*, No. 1:14-cv-3298 (S.D.N.Y.); *Phillip, et al. v. Gen. Motors LLC*, No. 1:14-cv-04630 (S.D.N.Y.); *Ponce v. Gen. Motors LLC*, No. 1:14-cv-04265 (S.D.N.Y.); *Ramirez, et al. v. Gen. Motors LLC et al.*, No. 1:14-cv-04267 (S.D.N.Y.); *Robinson, et al. v. Gen. Motors LLC, et al.*, No. 1:14-cv-04699 (S.D.N.Y.); *Rollins, et al. v. Gen. Motors LLC, et al.*, No. 1:14-cv-07242 (S.D.N.Y.); *Saclo, et al. v. Gen. Motors LLC, et al.*, No. 1:14-cv-04751 (S.D.N.Y.); *Salazar v. Gen. Motors LLC, et al.*, No. 1:14-cv-04859 (S.D.N.Y.); *Scott v. Gen. Motors LLC, et al.*, No. 1:15-cv-01790 (S.D.N.Y.); *Smith v. Gen. Motors LLC*, No. 1:14-cv-02493 (S.D.N.Y.); *Spangler v. Gen. Motors LLC*, No. 1:14-cv-04755 (S.D.N.Y.); *Stafford-Chapman v. Gen. Motors LLC, et al.*, No. 1:14-cv-05345 (S.D.N.Y.); *Turpyn, et al. v. Gen. Motors LLC, et al.*, No. 1:14-cv-05328 (S.D.N.Y.); *Villa, et al. v. Gen. Motors LLC, et al.*, No. 1:14-cv-04801 (S.D.N.Y.); *Ward v. Gen. Motors LLC*, No. 1:14-cv-08317 (S.D.N.Y.); *Woodward v. Gen. Motors LLC, et al.*, No. 1:14-cv-04226 (S.D.N.Y.).

benefits described below, entry of the Joint Coordination Order will allow Plaintiff immediate access to more than five million pages of ignition switch-related and electric power steering documents that have already been produced into an electronic document depository established in the MDL Proceeding (the "MDL Document Depository"), along with scores of additional materials being produced on a rolling basis.

State courts around the country already have adopted the Joint Coordination Order to govern discovery of ignition switch and electric power steering issues that overlap with the MDL ("Coordinated Actions").[3]  Indeed, with limited exceptions,[4] the Joint Coordination Order has been adopted by every state court where it has been proposed.

---

[3] *See, e.g.*, Order at 1, *Melton v. Gen Motors LLC*, No. 14-1197-4 (State Ct. of Cobb Cnty., Ga. Sept. 30, 2014) (attached as Exhibit C) (this case is now settled); Agreed Order Regarding Joint Coordination, *In re Gen. Motors Ignition Switch Litig.*, No. 2014-51871 (152nd Jud. Dist. Ct. of Harris Cnty., Tex. Oct. 24, 2014) (attached as Exhibit D); MDL Coordination Order, *Largent v. Gen. Motors LLC*, No. 14-006509-NP (Cir. Ct. for Wayne Cnty., Mich. Nov. 10, 2014) (attached as Exhibit E); Agreed Order, *Smith v. Gen. Motors LLC*, No. 41-CV-2014-900140.00 (Cir. Ct. for Lauderdale Cnty., Ala. Nov. 12, 2014) (attached as Exhibit F); Agreed Order, *Bogle v. Gen. Motors LLC*, No. 16-2014-CA-002731 (Cir. Ct. of 4th Jud. Cir., Duval Cnty., Fla. Nov. 18, 2014) (attached as Exhibit G) (this case is now settled); Agreed Order, *Cull v. Gen. Motors LLC*, No. 10C02-1404-CT060 (Cir. Ct. of Clark Cnty., Ind. Nov. 20, 2014) (attached as Exhibit H); Agreed Order, *Homer v. Gen. Motors LLC*, No. 14/7662 (S. Ct. of Monroe Cnty., N.Y. Nov. 21, 2014) (attached as Exhibit I); Agreed Order Regarding Joint Coordination, *Pate v. Gen. Motors LLC*, No. 14A2712-1 (S. Ct. of Cobb Cnty., Ga. Nov. 25, 2014) (attached as Exhibit J); *Gable v. Gen. Motors LLC*, Case No. 6737 (Cir. Ct. of Tenn., 25th Jud. Dist. Ct. at Ripley, Lauderdale Cnty., Jan. 15, 2015) (attached as Exhibit K); Order to Join MDL, *Goins v. Gen. Motors LLC*, Civil Action No. 2014-CI40 (Miss. Cir. Ct. of Yazoo Cnty. Jan. 7, 2015) (attached as Exhibit L); Agreed Order Regarding Joint Coordination, *Beckwith v. Gen. Motors LLC*, Case No. 13CECG03298 DSB (Sup. Ct. of Calif., Fresno Cnty., Jan. 29, 2015) (attached as Exhibit M) (plaintiff has now dismissed his ignition switch claim); MDL Coordination Order, *Green v. Gen. Motors LLC*, Case No. 15-144964-NF (Mich. Cir. Ct. for Oakland Cnty. Feb. 19, 2015) (attached as Exhibit N); Order Regarding Joint Coordination, *Tyre v. Gen. Motors LLC*, No. GD 14-010489 (Ct. of Common Pleas, Allegheny Cnty., Pa. Feb. 27, 2015) (attached as Exhibit O); Agreed Order, *Worthington v. Gen. Motors LLC, et al.*, No. 14-A-3063-3 (State Ct. of Cobb Cnty., Ga. Feb. 27, 2015) (attached as Exhibit P); *Tyre v. Watson Chevrolet, et al.*, No. GD 14-010813 (Ct. of Common Pleas, Allegheny Cnty., Pa. Mar. 27, 2015) (attached as Exhibit Q);Agreed Order Regarding Joint Coordination, *21st Century indemnity Ins. Co. a/s/o Thomas Boccard v. Gen. Motors LLC*, No. 159602/14 (Supreme Court, Cnty. Of N.Y. Apr. 8, 2015) (attached as Exhibit R); Correspondence from court that Joint Coordination Order need not be "signed" by the court to be entered, *Grant v. Gen. Motors LLC*, No. 6:14-cv-02132-PGB-GJK (M.D. Fla. April 24, 2015) (attached as Exhibit S); Order Granting Motion to Adopt Joint Coordination Order and Motion to Modify Existing Deadlines, *Cimaglia, et al. v. Royal Pontiac Buick GMC, Inc., et al.*, No. MER-L-2890-10 (Superior Ct. of N.J., Mercer Cnty. Apr. 10, 2015) (attached as Exhibit T); Order, *Licardo v. Gen. Motors LLC*, No. 03236 (Supreme Court, Cnty. Of Fulton May 15, 2015) (attached as Exhibit U).

[4] *See Szatkowski v. Gen. Motors LLC*, No. 2014-08274-0 (Ct. of Common Pleas, Luzerne County, Pa. Dec. 29, 2014); *Felix, et al. v. Gen. Motors LLC*, No. 1422-CC09472 (22nd Judicial Circuit Ct., City of St. Louis, Mo. Apr. 15, 2015); *Gilbert v. Gen. Motors LLC*, No. 00140 (Ct. of Common Pleas, Philadelphia County, Pa. May 11, 2015).

5

Despite this overwhelming precedent, and the substantially overlapping issues that will be presented in this case and in the MDL Proceeding, Plaintiff's counsel here has refused to agree to the entry of the Joint Coordination Order. Thus, GM LLC moves this Court to enter an Order adopting the MDL Court's Joint Coordination Order to govern discovery with respect to the vast majority of issues that overlap with MDL 2543. To the extent Plaintiff seeks discovery unique to this matter, Plaintiff can do so by leave of this Court—either by consent or through a contested motion—under the express terms of the Joint Coordination Order.[5]

## III.
### ARGUMENT & AUTHORITIES

For good cause shown, the court in which an action is pending "may make any order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense that justice requires." Fla. R. Civ. P. 1.280(c). This rule authorizes the Court to issue a Protective Order limiting the scope of discovery to certain matters, requiring that discovery be had only on specified terms and conditions, or requiring that discovery be had only by a particular method. Fla. R. Civ. P. 1.280(c)(2), (3), (4). Pursuant to this rule, the Court should adopt the Joint Coordination Order to govern discovery related to the recalls that are the subject of the MDL Proceeding; *i.e.* the ignition switch, key-pullout, and electric power steering recalls.

### A. *Coordination among the MDL Court and Related Actions in State Court Is Highly Encouraged and Beneficial to All Parties and Courts Involved.*

This Court should adopt the Joint Coordination Order to prevent duplicative discovery, avoid undue burden on the courts, parties, and nonparties, avoid substantial expense, and

---

[5] GM LLC has regularly consented to case-specific discovery in other state court actions where the Joint Coordination Order has been adopted. *See, e.g.*, Consent Order Granting General Motors LLC Leave to Serve Discovery on Plaintiffs, *Melton v. Gen. Motors LLC*, No. 14A-1197-4 (St. Ct. of Cobb Cnty., Ga. Oct. 21, 2014) (attached as Exhibit V); Consent Order Granting Plaintiffs Leave to Serve Requests for Admissions on General Motors LLC, *Melton v. Gen. Motors LLC*, No. 14A-1197-4 (St. Ct. of Cobb Cnty., Ga. Jan. 21, 2015) (attached as Exhibit W).

conserve judicial resources.  When state court judges preside over cases related to a pending

MDL, coordination with the MDL Court is often utilized "'to reduce costs, delays, and [the]

duplication of effort.'"  *Dunlavey v. Takeda Pharms. Am., Inc.*, No. 6:12-CV-1162, 2012 U.S.

Dist. LEXIS 120897, at *6 (W.D. La. Aug. 23, 2012) (alteration in original) (quoting MANUAL

FOR COMPLEX LITIGATION (Fourth) §§ 20.31, 22.4 (2004)); *see also* TEN STEPS TO BETTER CASE

MANAGEMENT: A GUIDE FOR MULTIDISTRICT LITIGATION TRANSFEREE JUDGES § VII (2009);

MANAGING MULTIDISTRICT LITIGATION IN PRODUCTS LIABILITY CASES: A POCKET GUIDE FOR

TRANSFEREE JUDGES § 6 (2011); MANUAL FOR COOPERATION BETWEEN STATE AND FEDERAL

COURTS (2009); MANAGING MASS TORT CASES: A RESOURCE BOOK FOR STATE TRIAL COURT

JUDGES § 3.4 (1994).

Courts around the country have recognized the desirability of coordinating pretrial

proceedings in this context to reduce costs, delays, and duplication of effort, and to conserve

judicial resources:

> Historically, <u>coordination by and among both federal and the
> multiple state courts is common in MDL and mass tort litigation</u> as
> is evidenced by the plethora of cases where coordination has been
> utilized.   Academics have studied both the advantages and
> disadvantages of coordination, which aspects benefit most from
> coordination, and which do not.   <u>Coordination, cooperation,
> discussion and interaction between and among the federal courts
> and the state courts</u> is not a novel thing; it is not improper; rather, it
> <u>is advised, encouraged and welcomed by both the federal and state
> courts</u>.
>
> <div align="center">***</div>
>
> Additionally, as noted, *Managing Mass Tort Cases: A Resource
> Book for State Trial Court Judges* recommends state court judges
> coordinate with federal judges in mass tort cases.  Section 3.4
> titled, "Coordinating with the Federal Courts" notes that
> "[c]oordination between state and federal courts has proven to be
> highly advantageous to the courts in [a number of mass torts
> cases]".  The State Manual goes as far as to note, "[i]f the federal
> cases already have been assigned to a coordinating judge, whether
> of [sic] not he or she is in your jurisdiction you should contact the

<div align="center">7</div>

> judge to advise him or her that you are handling some of these
> cases and *to learn what coordination is underway and possible.*"
> (emphasis added) Indeed, the State Manual, also, recommends
> coordination of pretrial proceedings and approaches it from the
> perspective of benefit to the state court.

*Dunlavey*, 2012 U.S. Dist. LEXIS 120897, at *7–8, 11–12 (alteration in original) (underline emphasis added) (footnotes omitted).[6]

Consistent with this overwhelming weight of authority, this Court should adopt the Joint Coordination Order to facilitate efficient resolution of this case, avoid duplication of efforts, and conserve judicial resources. Doing so would be consistent with what state courts around the country hearing MDL related cases have already done.[7] For example, in *Goins*, the Circuit Court of Yazoo County, Mississippi found:

> [B]y joining the MDL Joint Coordination Order, the parties, as
> well as the Court, will avoid undue burden and expense as it relates
> to discovery.

Exhibit L. As in those other state court cases, this Court can avoid undue burden and expense by adopting the Joint Coordination Order.

---

[6] *See also In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1009 (5th Cir. 2007) (noting that, even before federal cases were transferred to the Southern District of Florida for consolidated or coordinated discovery, state and federal courts presiding over related actions had already coordinated their discovery efforts); *Hood ex rel. Miss. v. Eli Lilly Co. (In re Zyprexa Prods. Liab. Litig.)*, 671 F. Supp. 2d 397, 403 (E.D.N.Y. 2009) (noting that cooperation between federal and state courts had been encouraged at all stages of the MDL involving the drug Zyprexa); *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 307 (E.D.N.Y. 2010) (noting that "[i]t is the policy of the federal courts to encourage coordination of pending state and federal cases concerning the same and closely related transactions"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 202 (D. Me. 2003) (acknowledging that entry of the Joint Coordination Order was designed to minimize duplicative discovery and undue burden on the parties and to permit other state courts to join this process); *In re WorldCom, Inc. Sec. Litig.*, 315 F. Supp. 2d 527, 535 (S.D.N.Y. 2004) (same); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 225 F.R.D. 62, 63 (D. Me. 2004) (noting that the court previously entered a Joint Coordination Order that permitted state court plaintiffs access to federal discovery, which several state courts with parallel lawsuits adopted); *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 917 (D. Nev. 1983) (noting that "[i]n a spirit of cooperation . . . it was agreed between the respective courts in Nevada and the parties that the discovery developed in [the MDL] could be used in the suits pending before the Nevada state courts"); *In re Ohio Asbestos Litig.*, 1990 U.S. Dist. LEXIS 15032, at *4–5 (N.D. Ohio July 16, 1990) (issuing an interim order establishing a national class of plaintiffs with claims for asbestos-related injuries and defendants against whom those claims would be asserted, to facilitate "a coordinated and cooperative undertaking among the federal and state judges of this country working together with the parties to these lawsuits, both plaintiffs and defendants, and their lawyers").

[7] *See supra* note 3.

8

**B. *Adoption of the Joint Coordination Order Will Avoid the Undue Burden and Expense Associated with Producing Millions of Pages of Documents Separately in Multiple Cases and Avoid Inconsistent Rulings Regarding Discovery Issues.***

On October 2, 2014, GM LLC began producing documents into the MDL Document Depository.  To date, more than five million pages of documents already have been produced and would be available to Plaintiff here immediately upon entry of the Joint Coordination Order. GM LLC has collected and produced hundreds of thousands of additional pages of materials on a rolling basis, including approximately 47 different categories of documents and materials that relate to the 2010 Chevrolet HHR's ignition switch and electric power steering systems.  *See* Order No. 12 Regarding the September 4, 2014 Status Conference ¶ I, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. Sept. 10, 2014) (attached as Exhibit X); Order No. 20 Regarding the Phase One Discovery Plan ¶¶ 1–3, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. Nov. 3, 2014) (attached as Exhibit Y) (discussing the scope of Phase One discovery in the MDL Proceeding).  Once the Joint Coordination Order is entered by this Court, Plaintiff will be granted immediate access to all materials collected and produced in the MDL Proceeding.

The MDL Document Depository is a more convenient, less burdensome, and less expensive source for Plaintiff to obtain these documents regarding the ignition switch issues in the subject vehicle.  Adopting the Joint Coordination Order will prevent the substantial burden and expense that GM LLC would otherwise incur by re-reviewing these millions of pages of documents for production here.  Furthermore, many discovery issues that may arise here have already been decided by the MDL Court, including issues regarding the privileged and confidential nature of certain documents.  Adoption of the Joint Coordination Order will prevent inconsistent rulings on these issues, avoid unnecessary delays caused by re-litigating these

issues, and, if necessary, re-reviewing, re-designating, and re-labeling these documents for production separately here.

Specifically, the documents that have been produced into the MDL Document Depository are governed by a protective order, Federal Rule of Evidence 502(d) order(s), and other discovery orders entered by the MDL Court. *See* Exhibit B at 3–4, 13; Order No. 10 Protecting Confidentiality and Privileged Materials, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. Sept. 10, 2014) (attached as Exhibit Z); Order No. 23 Protecting Privileged Materials Under Federal Rule of Evidence 502(d), *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. Nov. 14, 2014) (attached as Exhibit AA); Order No. 46 Governing Deposition Privilege Issues Under Federal Rule of Evidence 502(d), *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. April 6, 2014) (attached as Exhibit BB); Order No. 48 Protecting Privileged Materials Under Federal Rule of Evidence 502(d), *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. April 17, 2014) (attached as Exhibit CC). More than 1,950 plaintiffs collectively in the MDL and Coordinated Actions have agreed to be bound by these orders, and there is no reason to revisit these issues here.

In contrast, if this Court rejects the Joint Coordination Order, and it is subsequently necessary for the parties to negotiate and the Court to enter a Protective Order pursuant to Florida law governing confidentiality that differs from that issued by the MDL Court, GM LLC will be required to re-review the millions of pages of documents that have been produced in the MDL Proceeding to ensure compliance with the new order governing confidentiality. GM LLC has already produced more than 5.8 million pages of documents into the MDL Document Depository, and will continue its document production on a rolling basis. To re-review the

documents that have already been produced would require thousands of man-hours and would cost GM LLC hundreds of thousands of dollars to accomplish. *See* Declaration of Kyle H. Dreyer (attached as Exhibit DD). The reproduction of the documents that have already been and will be produced into the MDL Document Depository would, therefore, impose an undue burden on GM LLC.

Accordingly, to avoid conflicting rulings regarding the privileged and confidential nature of the documents that have been produced in the MDL Document Depository, to avoid undue prejudice to GM LLC that would result from conflicting discovery orders, to avoid the time and expense of re-litigating issues that the MDL Court has already resolved, and to avoid the undue burden and expense of re-reviewing, re-designating, and re-labeling millions of pages of documents separately in this case, this Court should adopt the Joint Coordination Order.

### C. Adopting the Joint Coordination Order Will Not Prejudice Plaintiff Because He May Participate in the Ignition Switch Discovery Conducted in the MDL Proceeding and Seek Leave of This Court to Obtain Any Non-Duplicative, Case-Specific Discovery.

Adopting the Joint Coordination Order would cause no prejudice to Plaintiff. To the contrary, if the Court were to adopt the Joint Coordination Order, Plaintiff would have the benefit of all discovery that is conducted in the MDL proceeding, and she will be able to use that discovery in the prosecution of her claims here. *See* Exhibit B at 4–5. The Joint Coordination Order expressly states that "Plaintiffs in the Coordinated Actions and their counsel shall be entitled to participate in discovery in the MDL Proceeding." *Id.* at 3. Thus, Plaintiff will have access to the millions of pages of documents that have already been produced into the MDL Document Depository, as well as scores of additional materials that are being produced on a rolling basis. *Id.* at 3, 13. Indeed, Plaintiff will have access to these voluminous materials far more quickly under the Joint Coordination Order than if discovery were to proceed on a separate

11

track in this case alone.  Furthermore, this Court can designate Plaintiff's counsel to work with Plaintiff Liaison Counsel and Federal/State Liaison Counsel in the MDL Proceeding to facilitate coordination of discovery in this case and the MDL Proceeding.  *Id.* at 6.  Once designated, Plaintiff's counsel will have input regarding written discovery that is conducted in the MDL Proceeding.  *Id.* at 11.

Additionally, Plaintiff's counsel "shall be permitted to attend any deposition scheduled in the MDL Proceeding."  *Id.* at 9.  The MDL Court has issued an Amended Deposition Protocol Order that allows for counsel for Coordinated Actions to participate during depositions that take place in the MDL Proceeding.  *See* Order No. 36, Amended Deposition Protocol Order ¶ 43, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. Feb. 23, 2015) (attached as Exhibit EE).  Accordingly, Plaintiff's counsel will have the opportunity to meaningfully participate in depositions in the MDL Proceeding if the Court adopts the Joint Coordination Order.  Indeed, depositions of GM LLC witnesses have just begun in the MDL Proceeding of which Plaintiff may take full advantage.

Plaintiff will be able to obtain non-duplicative, case-specific discovery by leave of this Court.  *Id.* at 5, 12.  And GM LLC has cooperated with other similarly situated plaintiffs in other Coordinated Actions, stipulating to the entry of orders permitting service of non-duplicative, case-specific discovery requests.  *See, e.g.*, Exhibit V; Exhibit W.  In short, Plaintiff will suffer no prejudice if this Court were to adopt the Joint Coordination Order.

### D.  Adoption of the Joint Coordination Order Will Promote Efficient Discovery of Plaintiff's Claims.

Plaintiff's claims will proceed quickly and efficiently if the Court adopts the Joint Coordination Order.  Lead Counsel for the plaintiffs in the MDL Proceeding have acknowledged

that discovery in the MDL Proceeding is moving forward at a "brisk pace," and the parties are

making meaningful and quick progress with discovery:

> I think part of the resistance or reluctance on certain plaintiffs
> counsels' part may be due to either experience with pr[ior] MDLs
> or rumors about other's experience with prior MDLs where the
> MDL discovery process moves more slowly than can be achieved
> in state courts.  Here I think the opposite is likely true.  We are
> moving at a brisk pace, per your Honor's orders, with discovery,
> and we have a personal injury bell weather [sic] trial date, which is
> not the case in these other actions.  So the interest -- which is a
> legitimate interest on all plaintiff's part -- in access to meaningful
> discovery as quickly as practicable, is achievable and is being
> achieved through the MDL here.

Jan. 20, 2015 Status Conference Tr. 23:21–24:7 (attached as Exhibit FF) (statement of

Ms. E. Cabraser) (emphasis added).  Additionally, the MDL Judge has repeatedly stressed to the

parties in the MDL Proceeding the importance of staying on schedule and ensuring that the MDL

Proceeding moves forward at a reasonable yet aggressive pace:

> What I have tried to do -- I think I've tried to make this clear, and
> probably have made it clear -- is to set an aggressive but
> reasonable schedule, and to use that as a means to persuade courts
> to sign on and essentially treat the MDL as the lead case.  In order
> to do that, it's incumbent upon everybody here to do what needs to
> be done to make sure we stick to that schedule, because if it falls
> by the wayside, and if deadlines are missed -- which I will do
> everything in my power to ensure they're not -- it becomes harder
> and harder for me to persuade other courts to defer, if you will, to
> what we're doing.  So, that's just a word of caution.

*Id.* at 25:5–15.  The MDL Court has set the first bellwether trial for January 2016.  *See* Order No.

25 Regarding Selection of Personal Injury & Wrongful Death Bellwether Cases & Early Trial

Scheduling ¶ 7, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF

(S.D.N.Y. Nov. 19, 2014) (attached as Exhibit GG).

In sum, the MDL Judge is working diligently to ensure that the plaintiffs' claims in the MDL Proceeding and in Coordinated Actions proceed quickly and efficiently, and adoption of the Joint Coordination Order will promote those purposes here.

### E.  This Court Will Retain Jurisdiction Over This Case.

This Court will retain jurisdiction over this case after the Joint Coordination Order is adopted.  The Joint Coordination Order expressly states that "each Court entering this Order is mindful of the jurisdiction of each of the other Courts in which other Coordinated Actions are pending and does not wish to interfere with the jurisdiction or discretion of those Courts." Exhibit B at 2.  The Joint Coordination Order also expressly states that this Court will "retain jurisdiction to modify, rescind, and/or enforce the terms" of the Joint Coordination Order.  *Id.* at 14.  Additionally, this Court would retain the power to control case-specific discovery.  *See id.* at 4.

Moreover, the procedures adopted by the MDL Judge provide for this Court to stay apprised of new developments and issues in the MDL, if it chooses to do so.  The MDL Judge has required the parties in the MDL to provide him with bi-weekly updates regarding related actions pending in state courts, as well as contact information for the judges, ordered the creation of an MDL website, and created a dedicated telephone line for state court judges to participate in MDL status conferences.[8]  The purpose of the Joint Coordination Order is to permit cooperation

---

[8] *See*, *e.g.*, Order No. 18 Regarding the Oct. 2, 2014 Status Conference at 1, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. Oct. 7, 2014) (attached as Exhibit HH) (requiring the parties to meet and confer about the logistics of the MDL website); Order No. 19 Regarding Telephonic Access to Court Conferences at 1, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. Oct. 15, 2014) (attached as Exhibit II) (providing information about calling in to Court Conferences); Order No. 8, § V, *In re Gen. Motors LLC Ignition Switch Litig.*, 2:14-cv-02458-JMF, ECF No. 249 (S.D.N.Y. August 15, 2014) (attached as Exhibit JJ) (noting the importance of coordination with state courts overseeing related actions); Sept. 4, 2014 Status Conference Tr. 47:23–49:13 (attached as Exhibit KK) (discussing telephone and email communication between the MDL Judge and state-court judges overseeing related actions); Nov. 6, 2014 Status Conference Tr. 3:4–20 (attached as Exhibit LL) (discussing the call-in number judges in related actions may use to participate in MDL status conferences).

between the MDL Court and state courts presiding over Related Actions during pretrial proceedings—the Order does not substitute the MDL judge for the state court judge for any purpose. Adoption of the Joint Coordination Order would not deprive this Court of jurisdiction or control over this case.

Accordingly, pursuant to Rule 1.280 of the Florida Rules of Civil Procedure, GM LLC respectfully requests the Court to adopt the Joint Coordination Order so that discovery may proceed in an organized, coordinated, and efficient manner.

### F. Adoption of the Joint Coordination Order Will Not Delay Trial.

Pending before this Court is not only this motion to adopt the Joint Coordination Order, but also Plaintiff's Motion to Advance Trial on Docket. Plaintiff requests an expedited trial setting based upon his age and health concerns. Entry of the Joint Coordination Order will not unreasonably delay trial in this matter. To address Plaintiff's concerns regarding his age and health, while also being mindful of the MDL Court's carefully crafted discovery and bellwether trial schedule, GM LLC proposes to promptly schedule Plaintiff's trial deposition to preserve Plaintiff's testimony. The Joint Coordination Order provides that discovery may proceed on matters that cannot be obtained through the MDL; i.e. case specific discovery. The Parties can begin to issue subpoenas to both the relevant state agencies that investigated the subject accident and Plaintiff's medical providers, and exchange other written discovery related to the subject accident, subject vehicle, and Plaintiff's alleged damages.

Accordingly, GM LLC respectfully requests that this Court grant GM LLC's Motion to Adopt the Joint Coordination Order, and set this case for trial on a date that would be reasonable in light of Plaintiff's claims and defect allegations.

## IV.
### CONCLUSION

WHEREFORE, Defendant GM LLC respectfully requests this Court to adopt the MDL Court's Joint Coordination Order and grant GM LLC such other and further relief to which it may show itself to be justly entitled.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by e-mail to **Justin Parafinczuk, Esquire** at parafincuk@kpwlaw.com; **Jason B. Wolf, Esquire** at pleadings@kpwlaw.com, dasilva@kpwlaw.com, and legalassistant@kpwlaw.com; and **Marcus Susen, Esquire** at susen@kpwlaw.com (Counsel for Plaintiff), this 22nd day of May, 2015.

*s/ Michael D. Begey*

ERNEST H. EUBANKS, JR., TRIAL COUNSEL
Florida Bar No. 0612091
E-mail:  seubanks@rumberger.com (primary)
        docketingorlando@rumberger.com and
        seubankssecy@rumberger.com (secondary)
MICHAEL D. BEGEY
Florida Bar No. 0120928
E-mail:  mbegey@rumberger.com (primary)
        docketingorlando@rumberger.com and
        mbegeysecy@rumberger.com (secondary)
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

KYLE H. DREYER
*Pro Hac Vice* Admission Pending
E-mail:   kdreyer@hdbdlaw.com
HARTLINE DACUS BARGER DREYER LLP
8750 North Central Expressway, Suite 1600
Dallas, Texas  75231
Telephone:  (214) 369-2100

16

*Attorneys for Defendants, General Motors LLC, BCSS, Ltd. d/b/a Lou Bachrodt Chevrolet, Garber Chevrolet-Buick-Pontiac-GMC Truck, Inc., and Maroone Chevrolet, LLC (d/b/a AutoNation Chevrolet Pembroke Pines f/d/b/a Maroone Chevrolet Pembroke Pines)*

17

# Exhibit 20

Filing # 27635719 E-Filed 05/22/2015 02:10:09 PM

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

WALTER MILLER,

     Plaintiff,

vs.                                   CASE NO.:  CACE 15-002297 (14)

GENERAL MOTORS LLC, GARBER
CHEVROLET-BUICK-PONTIAC-GMC
TRUCK, INC., LOU BACHRODT
CHEVROLET, INC., and MAROONE
CHEVROLET, LLC,

     Defendants.

_____/

**DEFENDANTS' RESPONSE TO**
**PLAINTIFF'S MOTION TO ADVANCE TRIAL ON DOCKET**

Defendants General Motors LLC ("GM LLC"), Garber Chevrolet-Buick-Pontiac-GMC

Truck, Inc., BCSS, Ltd. d/b/a Lou Bachrodt Chevrolet, and Maroone Chevrolet d/b/a AutoNation

Chevrolet Pembroke Pines f/d/b/a Maroone Chevrolet Pembroke Pines (collectively

"Defendants"), file this Response to Plaintiff's Motion to Advance Trial on Docket, and in

support thereof, aver the following:

**I.**

**SUMMARY OF ARGUMENT**

This is a product liability action involving a 2010 Chevrolet HHR (the "subject vehicle").

Plaintiff alleges that defects in the subject vehicle's ignition switch and electric power steering

caused the crash and that the injuries he sustained in the accident were intensified because the

airbag failed to deploy.  Plaintiff seeks recovery under theories of negligence, strict products

liability, misrepresentation, breach of warranty, and fraud against GM LLC.  As against each of

1

the three dealer Defendants, Plaintiff asserts claims of negligence for failing to exercise reasonable care in inspecting, testing and/or repairing the subject vehicle.

Plaintiff filed suit on February 6, 2015. That same day, Plaintiff also filed his Motion to Advance Trial on Docket. His motion identifies Plaintiff's age and includes a short statement of his alleged medical condition. It is silent as to the date Plaintiff desires to try this lawsuit, although Defendants believe Plaintiff will request a trial setting during the 2015 calendar year, less than ten months from the date suit was initiated.

As detailed below, Defendants do not object to advancing a trial date that would be reasonable in light of the claims made, complexity of the alleged defects asserted, and the time that would be necessary to complete fact and expert discovery. A trial date should also be considered with due deference to the objectives set forth in the federal multidistrict litigation, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF, pending in the United States District Court for the Southern District of New York (MDL Proceeding), which concern substantially overlapping issues as the present litigation. Accordingly, Defendants respectfully request this Court set this matter for trial no sooner than summer 2016.

## II.
### FACTUAL AND PROCEDURAL HISTORY

This lawsuit arises from a two-vehicle crash that occurred on or about November 2, 2013, in Fort Lauderdale, Florida. *See* Am. Compl. ¶¶ 21-22. Plaintiff Walter Miller ("Plaintiff"), who was operating the subject vehicle, "was in the process of making a left-hand turn and was 'T-Boned' by another vehicle." *Id*. ¶ 22. Plaintiff's Amended Complaint alleges that he was unable to avoid the collision because of a "malfunction in the [subject vehicle's] power steering" and his injuries were allegedly "intensified due to the air bag which failed to deploy." *Id.* ¶¶ 22-23.

2

Plaintiff seeks recovery against GM LLC and three servicing dealers under theories of negligence, strict liability, breach of warranty, misrepresentation, and fraud.

Plaintiff claims the subject vehicle was defective based on the "three recalls for the Vehicle, including recalls for its ignition switch, power steering, and airbag." *Id.* ¶ 27.[1]    The

---

[1] On March 28, 2014, GM LLC submitted a letter to the National Highway Traffic Safety Administration pursuant to 49 C.F.R. § 573.6 that provides ("Ignition Switch Recall Condition"):

> 573.6(c)(2)(iii), (5): General Motors has decided that a defect which relates to motor vehicle safety exists in the GM Parts and ACDelco Ignition & Start Switch service part number 10392423, and the following Ignition & Start Switch Housing Kits that contain or may contain part number 10392423: GM Parts and ACDelco service part numbers 10392737, 15857948, 15854953, 15896640, and 25846762. GM records indicate these service parts may have been installed during repairs in some 2008-2010 MY Chevrolet Cobalt, 2008-2011 MY Chevrolet HHR, 2008-2010 MY Pontiac Solstice, 2008-2010 MY Pontiac G5, and 2008-2010 MY Saturn Sky vehicles.
>
> The ignition switch torque performance on vehicles repaired with GM Parts and ACDelco Ignition & Start Switch part number 10392423 or assemblies that contain part number 10392423 may not meet General Motors' specification. If the torque performance is not to specification, the ignition switch may unintentionally move from the "run" position to the "accessory" or "off" position with a corresponding reduction or loss of power. This risk may be increased if the key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event. The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.

GM LLC submitted to NHTSA the following information in a letter dated March 31, 2014, pursuant to 49 C.F.R. § 573.6 ("Electric Power Steering Recall Condition"):

> 573.6(c)(5): General Motors has decided that a defect, which relates to motor vehicle safety, exists in the vehicles identified above. The subject vehicles equipped with electric power steering (EPS) may experience a sudden loss of power steering assist that could occur at any time while driving. If the power steering assist is lost, a message is displayed on the Driver Information Center and a chime sounds to inform the driver. Steering control can be maintained, as the vehicle will revert to a manual steering mode, but would require greater driver effort at low vehicle speeds, which could result in an increased risk of a crash.

And GM LLC submitted a letter to NHTSA dated April 23, 2014, pursuant to 49 C.F.R. § 573.6 that provides ("Key Pull Out Condition"):

> 573.6(c)(5): General Motors has decided that a defect which relates to motor

3

issues surrounding the subject vehicle's alleged ignition switch and electric power steering defects substantially overlap with the MDL Proceeding. The MDL Court has set forth a discovery and bellwether trial schedule that the Court describes as "aggressive but reasonable" with the first bellwether trial set for January 2016. In that regard, GM LLC has produced documents in the MDL Document Depository that relate to the ignition switch and electric power steering systems in the 2010 Chevrolet HHR. Depositions of both GM LLC witnesses and fact discovery for the bellwether trials are also proceeding. Defendants respectfully request this Court consider the objectives of the MDL Proceeding in scheduling trial in the present matter.

Moreover, Defendants request a trial setting that would allow all parties sufficient time to develop their claims and defenses. Suit in this case has just begun. Defendants filed their respective answers to the 42 page complaint at the end of March 2015. Case specific discovery has yet to be exchanged. Defendants are still in the process of attempting to locate the subject vehicle in order to perform a visual and photographic inspection and retrieve any electronic data from the vehicle's Sensing and Diagnostic Module ("SDM").[2] Expert testimony will also be needed on the issue of defect and causation. Given the complexity of the claims involved, Defendants request not less than fifteen months between the initiation of suit and any trial

---

vehicle safety exists in all 2005-2010 (MY) Chevrolet Cobalt, 2006-2011 MY Chevrolet HHR, 2007-2010 MY Pontiac G5, 2006-2010 MY Pontiac Solstice, 2003-2007 MY Saturn Ion, and 2007-2010 MY Saturn Sky vehicles. Some of these vehicles may have a condition in which the ignition key may be removed when the ignition is not in the "Off" position. If the ignition key is removed when the ignition is not in the "Off" position, unintended vehicle motion may occur: (a) for an automatic transmission, if the transmission is not in "Park"; or (b) for a manual transmission, if the parking brake is not engaged and the transmission is not in reverse gear. This could result in a vehicle crash and occupant or pedestrian injuries.

[2] Plaintiff's counsel has advised counsel for Defendants that Plaintiff no longer possesses the subject vehicle.

4

setting.

## III.

### ARGUMENT

A.    **Advancing the Trial Docket in This Case Will Conflict with the Objectives of the MDL Court's Coordinated Discovery and Bellwether Trial Schedule.**

The defect claims Plaintiff asserts in this case are the subject of the MDL Proceeding.  To encourage coordination between the MDL Court and courts presiding over related cases nationwide, the MDL Court issued a Joint Coordination Order, which is designed to prevent duplicative discovery, prevent undue burden on courts, parties, and nonparties, avoid substantial expense, and conserve judicial resources.

The Joint Coordination Order—which the Honorable Jesse M. Furman issued in the United States District Court for the Southern District of New York on September 24, 2014, in *In Re General Motors LLC Ignition Switch Litigation*, MDL Docket No. 2543 ("MDL Proceeding")—provides in relevant part as follows:

> The MDL Proceeding and the Related Actions involve many of the same factual allegations and circumstances and many of the same parties, and discovery in those various proceedings will substantially overlap. . . .

Joint Coordination Order at 1, *In re Gen. Motors LLC Ignition Switch Litig.*, Case No. 1:14-md-02543-JMF (S.D.N.Y. Sept. 24, 2014), ECF No. 315 (attached as Exhibit A). Because it would be more efficient, more convenient, less burdensome, and less expensive to the parties and this Court for Plaintiff to obtain discovery regarding the subject vehicle's ignition switch through coordination with the MDL, GM LLC has filed a motion requesting that this Court facilitate that

5

process by adopting the MDL Court's Joint Coordination Order.[3]

The Joint Coordination Order envisions that the MDL Proceeding will be the lead case in the GM ignition switch litigation:

> All discovery and pretrial scheduling in the Coordinated Actions will be coordinated to the fullest extent possible with the discovery and pretrial scheduling in the MDL Proceeding. The MDL Proceeding shall be used as the lead case for discovery and pretrial scheduling in the Coordinated Actions.

*Id.* at ¶ 1.  The MDL Court has pushed the MDL Proceeding forward with an ambitious discovery and bellwether trial schedule, repeatedly stressing to the parties in the MDL Proceeding the importance of staying on schedule and ensuring that the MDL Proceeding moves forward at a reasonable yet aggressive pace:

> What I have tried to do -- I think I've tried to make this clear, and probably have made it clear -- is to set an aggressive but reasonable schedule, and to use that as a means to persuade courts to sign on and essentially treat the MDL as the lead case.  In order to do that, it's incumbent upon everybody here to do what needs to be done to make sure we stick to that schedule, because if it falls by the wayside, and if deadlines are missed -- which I will do everything in my power to ensure they're not -- it becomes harder and harder for me to persuade other courts to defer, if you will, to what we're doing.  So, that's just a word of caution.

Jan. 20, 2015 Status Conference Tr. 25:5–15 (attached as Exhibit B).

Judge Furman has also set an aggressive discovery schedule precisely so that the first MDL bellwether trial can take place as soon as practicable:

> I will set the first bellwether trial of that category for January 11, 2016, which is more than a month before Melton 2, and I think will assist in making sure the MDL remains sort of in the lead and other judges are inclined to . . . coordinate and defer to the MDL

---

[3] *See* GM LLC's Motion to Adopt Joint Coordination Order, to be filed concurrently with this pleading.

6

> knowing that we're going to push forward pretty quickly given
> what is at stake here.

Transcript of Status Conference at 82, *In Re Gen. Motors LLC Ignition Switch Litig.*, MDL

Docket No. 2543 (S.D.N.Y. Nov. 6, 2014) (attached as Exhibit C); *see also* Order No. 25,

Regarding the Selection of Personal Injury and Wrongful Death Bellwether Cases and Early

Trial Scheduling, at ¶ 50, *In Re Gen. Motors LLC Ignition Switch Litig.*, MDL Docket No. 2543,

(S.D.N.Y. Nov. 19, 2014), ECF No. 422 (attached as Exhibit D) (setting the first bellwether trial

for January 11, 2016).

   Judge Furman established the MDL bellwether trial plan after careful consideration of the

arguments of the parties, bellwether trial orders from other federal courts handling MDL

proceedings, and literature discussing the use of bellwether trials in litigation. In his bellwether

trial order, Judge Furman found that:

> [B]ellwether trials will further the goal of effective and efficient
> case management in this MDL. Among other things, such trials
> will help the Court and the parties to (a) evaluate the claims and
> defenses related to common issues in the proceeding; and (b) better
> understand the costs and burdens of subsequent litigation.

Order No. 25 at ¶ 4. Should this Court grant Plaintiff's Motion to Advance Trial on Docket, and

set this case for trial before the first bellwether trial on January 11, 2016, that will conflict with

the objectives of the MDL Court's coordinated discovery and bellwether trial schedule: to ensure

that all of the plaintiffs' claims in the MDL Proceeding <u>and</u> Coordinated Actions proceed quickly

and efficiently.

   Instead, Defendants believe that with entry of the Joint Coordination Order, the Parties

can achieve the goals of the MDL Proceeding while still proceeding forward with discovery in

this matter.  The Joint Coordination Order specifically provides that discovery may be conducted

if it could not have been obtained in coordinated discovery in the MDL Proceeding; *i.e.* case specific discovery. Thus, the Parties can begin to issue subpoenas to both the relevant state agencies that investigated the subject accident and Plaintiff's medical providers, and exchange other written discovery related to the subject accident, subject vehicle, and Plaintiff's alleged damages.

Accordingly, GM LLC respectfully requests that this Court grant GM LLC's Motion to Adopt the Joint Coordination Order, and set this case for trial on a date following the completion of the first MDL bellwether trial currently set for January 11, 2016.

**B.     Plaintiff Has Not Met His Burden to Show That the Disclosure Obligations of Civil Discovery are Largely Finished.**

To take advantage of section 415.1115, Plaintiff has the burden to show that he is "largely finished with the disclosure obligations of civil discovery." *Intramed, Inc. v. Guider*, 93 So. 3d 503, 506 (Fla. Dist. Ct. App. 2012). As the court observed in *Guider*, that requirement is analogous to the requirements for a speedy trial demand in a criminal case:

> A party's request to advance the trial under [section 415.1115] is akin to a defendant's demand for a speedy trial under Florida Rule of Criminal Procedure 3.191, where a defendant is deemed to have represented that he "has diligently investigated the case" and is "timely prepared for trial." Fla. R. Crim. P. 3.191(g). Where a party seeks to take advantage of section 415.1115, she should be largely finished with the disclosure obligations of civil discovery.

*Id.* Plaintiff cannot show that the disclosures in this case are largely complete. Plaintiff has not served a single request for production or interrogatory in this case, has not produced any documents, and there have been no depositions, let alone any discussion of potential depositions. And expert discovery cannot even begin until fact discovery is substantially complete.

By contrast, the parties in the MDL proceeding, and parties in coordinated actions that

8

have adopted the Joint Coordination Order, have made significant progress in discovery on the very issues that are the subject Plaintiff's claims here. As set forth in GM LLC's Motion to Adopt Joint Coordination Order, <u>more than five million</u> pages of ignition switch and electric power steering-related documents have already been produced into an electronic document depository established in the MDL Proceeding, along with scores of additional materials being produced on a rolling basis; and key fact witness depositions in eighteen MDL bellwether cases are currently underway.

The *Guider* court also cautioned that, "[a] party may not use section 415.1115 as a . . . sword to cut off the opposition's ability to prepare for trial." But that's exactly what Plaintiff's motion would do here. There is no conceivable way for Plaintiff and Defendants to complete the necessary discovery and preparation for an earlier trial date than the first MDL bellwether trial, which the MDL Court scheduled based on an ambitious discovery and pretrial timetable. The MDL Court established and set in motion its discovery and pretrial timetable months ago, while the parties here would be starting from scratch. The most efficient way for Plaintiff to complete the necessary fact and expert discovery in this case would be through this Court's adoption of the Joint Coordination Order. This Court could then set this case for trial after the first MDL bellwether trial in January 2016. However, to address Plaintiff's concerns regarding his age and health, while also being mindful of the MDL Court's carefully crafted discovery and bellwether trial schedule, GM LLC proposes to promptly schedule Plaintiff's trial deposition to preserve Plaintiff's testimony for trial and begin other case-specific discovery.

     **C.**     **A Trial Setting Less than a Year from the Date of Filing of Suit is Insufficient Time to Complete Discovery and Ready For Trial.**

In this case, Plaintiff filed suit against GM LLC, claiming the following defects in the subject vehicle: (1) defective ignition switch; (2) defective electric power steering; and (3) defective key pull-out condition. To support its defenses, Defendants will need the opportunity to locate the subject vehicle in order to conduct a visual and photographic inspection as well as attempt to download the vehicle's SDM data. Defendants will also require time to review Plaintiff's medical history and his current medical condition, including any life care plan Plaintiff may advance. Depositions of fact witnesses, including Plaintiff, the passenger in the subject vehicle at the time of the collision, investigating officers, and medical providers are needed.

Moreover, expert testimony will be offered on issues related to whether the subject vehicle was defective, whether any defect was manifested at the time of the subject accident, and whether any defect caused or contributed to causing the accident and/or Plaintiff's injuries. It would be unreasonable to expect that fact and expert discovery can be completed and this case ready to be ready for trial in six months, especially in light of the complexity of the defect allegations, the claims of fraud and misrepresentation, and the nature of the injuries allegedly sustained. Such a hasty trial setting prejudices the ability of Defendants to adequately prepare their defenses. Accordingly, Defendants respectfully request this Court set this matter for trial no sooner than summer 2016.

**IV.**

**CONCLUSION**

WHEREFORE, Defendant GM LLC respectfully requests the Court to adopt the Joint

Coordination Order so that discovery may proceed in an organized, coordinated, and efficient manner, set a trial date that would be reasonable in light of the claims made, and grant GM LLC such other and further relief to which it may show itself to be justly entitled.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by e-mail to **Justin Parafinczuk, Esquire** at parafincuk@kpwlaw.com; **Jason B. Wolf, Esquire** at pleadings@kpwlaw.com, dasilva@kpwlaw.com, and legalassistant@kpwlaw.com; and **Marcus Susen, Esquire** at susen@kpwlaw.com (Counsel for Plaintiff), this 22nd day of May, 2015.

*s/ Michael D. Begey*
ERNEST H. EUBANKS, JR., TRIAL COUNSEL
Florida Bar No. 0612091
E-mail:seubanks@rumberger.com (primary)
       docketingorlando@rumberger.com and
       seubankssecy@rumberger.com (secondary)
MICHAEL D. BEGEY
Florida Bar No. 0120928
E-mail:mbegey@rumberger.com (primary)
       docketingorlando@rumberger.com and
       mbegeysecy@rumberger.com (secondary)
RUMBERGER, KIRK & CALDWELL
A Professional Association
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

KYLE H. DREYER
*Pro Hac Vice* Admission Pending
E-mail:   kdreyer@hdbdlaw.com
HARTLINE DACUS BARGER DREYER LLP
8750 North Central Expressway, Suite 1600
Dallas, Texas  75231
Telephone:  (214) 369-2100

11

*Attorneys for Defendants, General Motors LLC, BCSS, Ltd. d/b/a Lou Bachrodt Chevrolet, Garber Chevrolet-Buick-Pontiac-GMC Truck, Inc., and Maroone Chevrolet, LLC (d/b/a AutoNation Chevrolet Pembroke Pines f/d/b/a Maroone Chevrolet Pembroke Pines)*

12

7916739.1

# Exhibit 21

Gary Peller
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
(202) 662-9122
(202) 662-9680 (facsimile)

May 13, 2015

**VIA E-MAIL TRANSMISSION
AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004-1408
gerber.chambers@nysb.uscourts.gov

> **Re: In re Motors Liquidation Company, et al., Case No. 09-50026 (REG);**
> *Sesay et al v. General Motors et al, 1:14-06018 (JMF); Elliott, et al. v.. General
> Motors LLC, et al., 1:14-cv-8382-JMF; Sesay et al. v. General Motors LLC et al.,
> 1:14-cv- 0618-JMF; Bledsoe et al. v. General Motors LLC, 1:14-cv-7631-JMF*

Your Honor:

    I represent Counsel Celestine Elliott, Lawrence Elliott, Berenice Summerville,
Ishmail Sesay, Joanne Yearwood, Sharon Bledsoe, Tina Farmer, Paul Fordham, Momoh
Kanu, Tynesia Mitchell, Dierra Thomas and James Tibbs, plaintiffs in the above
captioned actions. Ms. Bledsoe is a pre-closing accident victim. On their behalf, I write to
request that the Court set a schedule for consideration of additional objections Plaintiffs
wish to submit in response to New GM's Motions to Enforce the Sale Order.

    The May 16, 2014, Scheduling Order, provides that "consideration of non-
Threshold Issues shall be deferred to a later time, and all parties shall reserve their rights
with respect to such issues." The Court having ruled upon the Threshold issues, and the
Identified Parties having proposed "judgments," Plaintiffs thought it prudent to alert the
Court that they intend to submit "non-Threshold Issues" objections to GM's motions
directed against them, and accordingly that the entry of any "judgment" purporting to
resolve issues raised by New GM's motions may be premature.  In addition, Ms. Bledsoe
intends to argue that the same reasons that the Court found the 2009 Sale Order
"overbroad" with respect to independent economic loss claims against New GM on
behalf of pre-closing purchasers should apply to independent claims against New GM on
behalf of pre-closing accident victims, an issue that was not presented to the Court during
its consideration of the Threshold Issues.

Honorable Robert E. Gerber
May 13, 2015
Page 2

Because they were not Identified Parties who were heard regarding the Threshold Issues, the *Elliott*, *Sesay*, and *Bledsoe* Plaintiffs cannot be bound by the Court's rulings without first being accorded an opportunity to be heard. The proposed judgments submitted by New GM and Designated counsel each recognize that requirement and accordingly provide an opportunity for plaintiffs who were not Identified Parties to object to the application of the Court's rulings regarding the Threshold Issues to them. Plaintiffs respectfully suggest that efficiency in judicial administration may be served by coordinating any such objections to the application of the Threshold Issues rulings with the submission of objections relating to non-Threshold Issues. Any entry of "judgment" regarding New GM's Motions to Enforce would be premature until all such objections were disposed of.

In light of the Court's references to possible contemptible conduct in its rulings disposing of the *Sesay* and *Bledsoe* No Stay Pleading, Plaintiffs wish to make clear that they seek to protect their rights and appropriately to preserve issues for appeal. Because coordinated proceedings are not representative actions, and the disposition of issues in a single contested matter between New GM and a particular set of plaintiffs cannot become the "law of the case" applicable to distinct contested matters between New GM and different sets of plaintiffs, representation may require presentation of identical legal positions in these distinct matters. Plaintiffs would be happy to follow the Court's preferences regarding how such issues, common to several distinct matters, should be presented.

Please feel free to contact me if you have any questions.

Respectfully submitted,

/s/ *Gary Peller*

Gary Peller

cc:    Arthur Steinberg, Esq.

Case 1:14-md-02543-JMF   Document 978-22   Filed 05/22/15   Page 1 of 9

# Exhibit 22

*Endorsed Order:*
*New GM is to*
*respond to this*
*letter on or*
*before May 22,*
*2015.*

*/ REG, USBJ*
*5/15/15*

Gary Peller
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
(202) 662-9122
(202) 662-9680 (facsimile)

May 13, 2015

**VIA E-MAIL TRANSMISSION
AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004-1408
gerber.chambers@nysb.uscourts.gov

**Re: In re Motors Liquidation Company, et al., Case No. 09-50026 (REG);
*Sesay et al v. General Motors et al,* 1:14-06018 (JMF); *Elliott, et al.. v.. General
Motors LLC, et al.,* 1:14-cv-8382-JMF; *Sesay et al. v. General Motors LLC et al.,*
1:14-cv- 0618-JMF; *Bledsoe et al. v. General Motors LLC,* 1:14-cv-7631-JMF**

Your Honor:

    I represent Counsel Celestine Elliott, Lawrence Elliott, Berenice Summerville,
Ishmail Sesay, Joanne Yearwood, Sharon Bledsoe, Tina Farmer, Paul Fordham, Momoh
Kanu, Tynesia Mitchell, Dierra Thomas and James Tibbs, plaintiffs in the above
captioned actions. Ms. Bledsoe is a pre-closing accident victim. On their behalf, I write to
request that the Court set a schedule for consideration of additional objections Plaintiffs
wish to submit in response to New GM's Motions to Enforce the Sale Order.

    The May 16, 2014, Scheduling Order, provides that "consideration of non-
Threshold Issues shall be deferred to a later time, and all parties shall reserve their rights
with respect to such issues." The Court having ruled upon the Threshold issues, and the
Identified Parties having proposed "judgments," Plaintiffs thought it prudent to alert the
Court that they intend to submit "non-Threshold Issues" objections to GM's motions
directed against them, and accordingly that the entry of any "judgment" purporting to
resolve issues raised by New GM's motions may be premature. In addition, Ms. Bledsoe
intends to argue that the same reasons that the Court found the 2009 Sale Order
"overbroad" with respect to independent economic loss claims against New GM on
behalf of pre-closing purchasers should apply to independent claims against New GM on
behalf of pre-closing accident victims, an issue that was not presented to the Court during
its consideration of the Threshold Issues.

Honorable Robert E. Gerber
May 13, 2015
Page 2

Because they were not Identified Parties who were heard regarding the Threshold Issues, the *Elliott*, *Sesay*, and *Bledsoe* Plaintiffs cannot be bound by the Court's rulings without first being accorded an opportunity to be heard. The proposed judgments submitted by New GM and Designated counsel each recognize that requirement and accordingly provide an opportunity for plaintiffs who were not Identified Parties to object to the application of the Court's rulings regarding the Threshold Issues to them. Plaintiffs respectfully suggest that efficiency in judicial administration may be served by coordinating any such objections to the application of the Threshold Issues rulings with the submission of objections relating to non-Threshold Issues. Any entry of "judgment" regarding New GM's Motions to Enforce would be premature until all such objections were disposed of.

In light of the Court's references to possible contemptible conduct in its rulings disposing of the *Sesay* and *Bledsoe* No Stay Pleading, Plaintiffs wish to make clear that they seek to protect their rights and appropriately to preserve issues for appeal. Because coordinated proceedings are not representative actions, and the disposition of issues in a single contested matter between New GM and a particular set of plaintiffs cannot become the "law of the case" applicable to distinct contested matters between New GM and different sets of plaintiffs, representation may require presentation of identical legal positions in these distinct matters. Plaintiffs would be happy to follow the Court's preferences regarding how such issues, common to several distinct matters, should be presented.

Please feel free to contact me if you have any questions.

Respectfully submitted,

/s/ *Gary Peller*

Gary Peller

cc:     Arthur Steinberg, Esq.

# Exhibit 23

09-50026-mg    Doc 13157    Filed 05/22/15    Entered 05/22/15 17:06:01    Main Document
Case 1:14-md-02543-JMF    Document 1118-29    Filed 05/22/15    Page 2 of 7
Pg 269 of 588

09-50026-reg    Doc 13153    Filed 05/21/15    Entered 05/21/15 15:17:10    Main Document
Pg 1 of 6

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel:  (212) 556-2100
Fax:  (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial:  212-556-2158
asteinberg@kslaw.com

May 21, 2015

**VIA E-MAIL TRANSMISSION**
**AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York  10004

> Re:    **In re Motors Liquidation Company,** *et al.*
> **Case No. 09-50026 (REG)**
>
> **Letter Responding to Letter Filed by Gary Peller,**
> **dated May 13, 2015 [Dkt. No. 13143]**

Dear Judge Gerber:

King & Spalding LLP is co-counsel with Kirkland & Ellis LLP for General Motors LLC ("**New GM**") in the above-referenced matter.  New GM submits this letter pursuant to Your Honor's Endorsed Order dated May 15, 2015 [Dkt. No. 13147], and in response to the letter dated May 13, 2015, from Gary Peller, Esq. ("**Peller Letter**"), which requests that the Court delay entry of judgment with respect to the Decision, and that "the Court set a schedule for consideration of additional objections Plaintiffs wish to submit in response to New GM's Motions to Enforce."  As explained below, the relief sought in the Peller Letter should be denied.

> 1.    **Mr. Peller's Clients are Bound by the Rulings in the Decision.**

Mr. Peller asserts that his clients are not bound by the Court's *Decision on Motion to Enforce Sale Order*, dated April 15, 2015 [Dkt. No. 13109] ("**Decision**"), because the rulings on the Four Threshold Issues are only binding on the "Identified Parties" (as defined in this Court's Scheduling Order dated May 16, 2014), and not his clients.  That conclusion is wrong—Mr. Peller's clients are bound by the Decision and any judgment entered in connection therewith. This Court has never limited the proceedings relating to the Four Threshold Issues to only the Identified Parties.  Indeed, all plaintiffs whose complaints were the subject of the Motions to

25688777v1

09-50026-reg   Doc 13153   Filed 05/21/15   Entered 05/21/15 15:17:10   Main Document
Pg 2 of 6

Honorable Robert E. Gerber
May 21, 2015
Page 2

Enforce and who were served with those Motions, including Mr. Peller's clients, had the opportunity to file a brief and present oral argument on the Four Threshold Issues. The only caveat for them was that they had to comply with the administrative directives of the Court to first consult with the Designated Counsel and not make repetitive arguments. The Court made this point at the very first conference in this matter:

> I don't want repetition, and that includes making the same point in different ways. I need to hear from anybody who thinks those three firms [*i.e.*, Designated Counsel] aren't good enough why that's so, or conversely why they're not raising issues that need to be addressed. That's not to say that anybody who thinks up anything those firms couldn't can't be heard, but I need to know why and what's the problem.

May 2, 2014 Transcript, at 13:1-13:8.

The ability of all parties to participate in proceedings relating to the Motions to Enforce was confirmed in the May 16 Scheduling Order, as follows:

> nothing in this Order is intended to or shall preclude any other Plaintiff's counsel from taking a position in connection with any of the matters set forth in paragraphs 2, 3 and 6 above, PROVIDED that any other counsel who wishes to be heard orally with respect to such position at the Conference on July 2 shall submit and electronically file, no later than noon on July 1, a letter to the Court (with copies to all Identified Parties) summarizing the points he or she will wish to make; and PROVIDED FURTHER that any counsel who has failed to do so will not be heard orally at the July 2 Conference.

*Id.*, p. 6.[1] Thus, contrary to Mr. Peller's assertion that the Motions to Enforce only affected "a particular set of plaintiffs," the Motions to Enforce and the resolution of the Four Threshold Issues affected **all plaintiffs** whose complaints were the subject of the Motions to Enforce and who were served with those Motions, including Mr. Peller's clients.

The argument that the Decision is not binding on Mr. Peller's clients is particularly unavailing given that he and his co-counsel (for the Elliotts) filed pleadings and letters in connection with this contested matter,[2] and they made appearances before the Court in

---

[1]    Paragraph 2 of the May 16 Scheduling Order concerned the schedule for the Threshold Issues; Paragraph 3 concerned the process for the "fraud on the court" issue; and Paragraph 6 concerned the identification of non-Threshold Issues.

[2]    *See, e.g.*, Dkt. No. 12737 (Endorsed Order Regarding Letter by Mr. Peller's co-counsel, Daniel Hornal); Dkt. Nos. 12761, 12766, 12769, 12777, 12783 (Letters filed by Mr. Hornal); Dkt. No. 12774 (Motion to Dismiss Party filed by Mr. Hornal); Dkt. No. 12788 (Response filed by Mr. Peller); Dkt. Nos. 12821, 12830 (Letters filed by Mr. Peller); Dkt. No. 12822 (Notice of filing Counter-Order by Mr. Peller); Dkt. No. 12828 (Supplemental Notice of Counter-Order filed by Mr. Peller); Dkt. No. 12839 (Notice of Appeal filed by Mr. Peller); Dkt. No. 12870 (Motion to Dismiss Party filed by Mr. Peller); Dkt. No. 12871 (Motion to Amend filed by Mr. Peller); Dkt. No. 12872 (Motion for an Order of Abstention filed by Mr. Peller); Dkt. No. 12883

Honorable Robert E. Gerber
May 21, 2015
Page 3

connection therewith.[3]  The fact that Mr. Peller ultimately decided not to file a brief, or request oral argument in connection with the hearing on the Four Threshold Issues, was his choice to make.  But that choice does not exempt his clients from the rulings in the Decision.

Mr. Peller's statement that he has the right to re-litigate matters already decided by the Decision has no basis and should be rejected out of hand.[4]  The Court's prior orders were intended to avoid this precise result.  *See, e.g.*, Endorsed Order, dated April 22, 2014 [Dkt. No. 12627] ("As at the original June 2009 sale hearing, those with the same or substantially similar positions are to band together and to designate one of their number who will speak for the group."); Administrative Order, dated January 13, 2015 [Dkt. No. 13044] ("Counsel other than New GM counsel, Designated Counsel and GUC Trust Counsel are to consult with counsel for the entity most aligned with their interests to ascertain whether their oral argument needs can be satisfied by counsel for the most closely aligned entity. If, after such consultation, any other party wishes oral argument, that party will be heard orally only if (a) that party has filed a brief (other than an unqualified joinder) and (b) writes the Court, no later than noon on Tuesday, January 27, (i) requesting time for oral argument; (ii) stating the amount of time requested; and, most importantly, (iii) stating the reasons why argument by one of the most closely aligned counsel would be insufficient . . . .").

In all events, Mr. Peller's clients should not be permitted to raise issues (in the guise of non-Threshold Issues) that were previously decided by the Court in connection with his clients' No Stay Pleadings and motions to dismiss.  Issues such as the Court's subject matter jurisdiction to decide the Motions to Enforce, and procedural issues such as whether the Motions to Enforce should have been brought by adversary proceeding, were all raised previously by Mr. Peller and rejected by the Court.[5]

Finally, Mr. Peller is wrong when he asserts that New GM's proposed judgment "recognizes" that his clients are not bound by the Decision.  New GM's proposed judgment

---

(Amended Motion to Dismiss Party filed by Mr. Peller); Dkt. No. 12948 (Memorandum of Law Regarding No Stay Pleading filed by Mr. Peller); Dkt. No. 13002 (Amended Notice of Appeal filed by Mr. Peller); Dkt. No. 13004 (Notice of Appeal filed by Mr. Peller); Dkt. Nos. 13005 and 13007 (Motions Seeking Leave to Appeal filed by Mr. Peller).

[3]    *See* Dkt. No. 12741 (Order Admitting Mr. Hornal to Practice *Pro Hac Vice*); Transcript of July 2 Conference (appearance by Mr. Hornal); Dkt. No. 12858 (Order Admitting Mr. Peller to Practice *Pro Hac Vice*); Transcript of August 5, 2014 Hearing (appearance by Mr. Peller).

[4]    *See* Peller Letter, at 2 ("Because coordinated proceedings are not representative actions, and the disposition of issues in a single contested matter between New GM and a particular set of plaintiffs cannot become the 'law of the case' applicable to distinct contested matters between New GM and different sets of plaintiffs, representation may require presentation of **identical legal positions** in these distinct matters." (emphasis added)).

[5]    *See Decision with Respect to No Stay Pleading, and Related Motion for Abstention (Sesay Plaintiffs)*, dated November 11, 2014 [Dkt. No. 12989]; *Decision with Respect to No Stay Pleading and Related Motion to Dismiss for Lack of Subject Matter Jurisdiction (Elliott Plaintiffs)*, dated August 6, 2014 [Dkt. No. 12815]. Mr. Peller's requests to take interlocutory appeals of Your Honor's decisions with respect to No Stay Pleadings were denied by District Judge Furman pursuant to his Order dated May 18, 2015.

Honorable Robert E. Gerber
May 21, 2015
Page 4

submitted to the Court on May 12, 2015 provided that, *inter alia*, lawsuits (either in whole or in part) should be dismissed with prejudice to the extent they violated the injunction provisions contained in the Sale Order as modified by the Decision. *See* Letter Regarding Proposed Judgment In Connection To Decision On Motion To Enforce Sale Order, filed May 12, 2014 [Dkt. No 13136]. The lawsuits commenced by Mr. Peller's clients are expressly set forth in Exhibits "A," "C" and "D" to New GM's proposed judgment, indicating that such complaints should be dismissed (either in whole or in part) with prejudice. Thus, New GM's proposed judgment plainly applies to Mr. Peller's clients.

The procedures included in New GM's proposed judgment allowed Mr. Peller's clients to oppose the dismissal relief if they in good faith believed that (a) their economic loss claims are solely based on independent, post-363 Sale conduct of New GM, or (b) there were special circumstances relating to their Pre-Sale Accident Lawsuit that distinguished it from the rulings on that issue in the Decision. Significantly, however, New GM's proposed judgment stated that such pleading "shall not reargue issues that were already decided by the Decision and Judgment."

### 2.   <u>Mr. Peller's Request to Delay Entry of Judgment is Inappropriate.</u>

Mr. Peller does not specify in his letter what the "non-Threshold Issues" are that he contends were not addressed by the Decision. Because Mr. Peller failed to list them, neither the Court nor New GM can know specifically what he is referring to.

The Peller Letter refers to paragraph 7 in the May 16 Scheduling Order that stated "[c]onsideration of non-Threshold Issues shall be deferred to a later time, and all parties shall reserve their rights with respect to such issues." However, that paragraph must be read in conjunction with the preceding decretal paragraph in the May 16 Scheduling Order, which stated that the "non-Threshold Issues" should be identified for the Court before the determination of the Four Threshold Issues. Specifically, the May 16 Scheduling Order provided:

> Counsel for the Identified Parties are to identify, prior to the July Conference, all issues (other than the issues identified in paragraph 1 hereof) that the Court will be asked to determine in connection with the Motion, the Objection and the Adversary Proceeding, and to state whether or not such issues are to be added to the list of Threshold Issues. Prior to the July Conference, Counsel for the Identified Parties are to "meet and confer" as to when any such issues are best decided.

May 16 Scheduling Order, at 6, ¶ 6.

Mr. Peller's co-counsel was at the July 2 Conference and argued that his clients had different legal theories from those that were being asserted:

> MR. HORNAL: Your Honor, our legal theories are considerably different from the Phaneufs and the other 87 plaintiffs and I believe we would be filing a no stay.

Honorable Robert E. Gerber
May 21, 2015
Page 5

THE COURT: You think you thought of something that 87 other lawyers didn't?

MR. HORNAL: I'm quite confident we did, Your Honor.

Transcript of July 2 Conference, at 103:2-103:8.  Mr. Peller's clients never stated what those legal theories were.  It is too late for the plaintiffs in the Peller lawsuits to raise other arguments now.  After fully contested litigation pursuant to this Court's Scheduling Orders and procedures, in which Mr. Peller and his co-counsel participated, the Decision has been rendered, and Mr. Peller's clients are bound by the rulings therein.  The Court should enter the proposed judgment without the further hearing requested by Mr. Peller.

### 3.     The "Overbreadth" Finding in the Decision Does Not Apply to Pre-Closing Accident Plaintiffs.

Mr. Peller's contention that the "overbreadth" finding in the Decision somehow applies to pre-closing accident plaintiffs, and that such issue was not presented to, and thus not decided by, the Court is flatly wrong.  Specifically, the Court found as follows:

> The arguments as to Sale Order breadth that the Economic Loss Plaintiffs might have asserted would not be relevant to the Pre–Closing Accident Plaintiffs.  To the extent the Sale Order was overbroad, it was so as to any claims that might arise *solely by reason of New GM's conduct*.  The Pre–Closing Accident Plaintiffs suffered the injury or death underlying their claims in Old GM cars, and with Old GM parts.  Any actionable conduct causing that injury or death took place before the 363 Sale—and necessarily was by Old GM, not New GM, and indeed before New GM could have done anything wrong.

2015 WL 1727285, at *45 (emphasis in original).  In short, this issue was presented and determined in the Decision, and Mr. Peller's clients are bound by the adverse ruling therein.

Based on the foregoing, New GM believes that the relief requested in the Peller Letter should be denied, and Judgment should be entered at this time.

Respectfully submitted,

*/s/ Arthur Steinberg*

Arthur Steinberg

AJS/sd

cc:   Gary Peller
      Edward S. Weisfelner
      Howard Steel

Honorable Robert E. Gerber
May 21, 2015
Page 6

     Sander L. Esserman
     Jonathan L. Flaxer
     S. Preston Ricardo
     Matthew J. Williams
     Lisa H. Rubin
     Keith Martorana
     Daniel Golden
     Deborah J. Newman
     Jamison Diehl
     William Weintraub
     Steve W. Berman
     Elizabeth J. Cabraser
     Robert C. Hilliard

# Exhibit 24

09-50026-reg Doc 13157 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 918-24 Filed 05/22/15 Page 2 of 3
Pg 276 of 588

09-50026-reg Doc 13154 Filed 05/21/15 Entered 05/21/15 16:17:23 Main Document
Pg 1 of 2

Gary Peller
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
(202) 662-9122
(202) 662-9680 (facsimile)

May 21, 2015

**VIA E-MAIL TRANSMISSION
AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004-1408
gerber.chambers@nysb.uscourts.gov

> **Re: In re Motors Liquidation Company, et al., Case No. 09-50026 (REG);**
> ***Sesay et al v. General Motors et al, 1:14-06018 (JMF); Elliott, et al. v.. General
> Motors LLC, et al., 1:14-cv-8382-JMF; Sesay et al. v. General Motors LLC et al.,
> 1:14-cv- 0618-JMF; Bledsoe et al. v. General Motors LLC, 1:14-cv-7631-JMF***

Your Honor:

      I represent Counsel Celestine Elliott, Lawrence Elliott, Berenice Summerville,
Ishmail Sesay, Joanne Yearwood, Sharon Bledsoe, Tina Farmer, Paul Fordham, Momoh
Kanu, Tynesia Mitchell, Dierra Thomas and James Tibbs, plaintiffs in the above
captioned actions.

      On their behalf, I write to request that the Court grant leave for Plaintiffs to
submit a response to Mr. Steinberg's letter submitted to the Court earlier today regarding
the Court's consideration of additional objections from parties other than the "Identified
Parties" to New GM's Motion to Enforce. In the event the Court denies this leave,
Plaintiffs respectfully alternatively request an opportunity to submit objections to the
proposed judgments that Designated Counsel and New GM have submitted, each of
which purport to affect their interests. Plaintiffs propose that such response or objections
be submitted by May 28, 2015.

      Plaintiffs seek an opportunity to make clear that they do not seek to relitigate any
issue upon which the Court has ruled, but rather the opportunity to present distinct and
additional grounds for the denial of New GM's Motions, in whole or part, to present
reasons that have not been brought to the Court's attention why this Court lacks the
constitutional authority to enter the judgment that GM proposes, and appropriately to
preserve their full grounds for appeal.

Honorable Robert E. Gerber
May 21, 2015
Page 2

Please feel free to contact me if you have any questions.

Respectfully submitted,

/s/ *Gary Peller*

Gary Peller

cc:   Arthur Steinberg, Esq.

# Exhibit 25

# THORN GERSHON TYMANN AND BONANNI, LLP

ARTHUR H. THORN
JEFFREY J. TYMANN
MAUREEN S. BONANNI
PAUL D. JURELLER
KATHLEEN M. RYAN
KYLE N. KORDICH
MATTHEW H. McNAMARA
MANDY McFARLAND

BRENDAN S. McGRATH
ANN KHANNA

ATTORNEYS AND COUNSELLORS AT LAW

5 WEMBLEY COURT, NEW KARNER ROAD
P.O. BOX 15054
ALBANY, NY 12212-5054
TELEPHONE (518) 464-6770
TELECOPIER (518) 464-6778
www.tglawyers.com
PLEASE RESPOND TO ALBANY OFFICE

RICHARD M. GERSHON
RETIRED
JOHN T. MITCHELL
RETIRED

OF COUNSEL
ROBERT F. DORAN
ERIN MEAD
ARETE SPRIO

May 19, 2015

Fulton County Clerk
2232 West Main Street
Johnstown, NY 12095

RE:  Licardo v. General Motors, LLC
     Our File No.: GM 8046
     Index No.: 03236

Dear County Clerk:

I enclose herein for filing the original executed Agreed Order Regarding Joint Coordination regarding the above referenced litigation, "So Ordered" by Justice Tomlinson on May 15th.

Kindly enter this document under the above referenced index number, noting the date and time of such filing, and return same to my attention in the enclosed self-addressed, stamped envelope so that I may effect service on counsel.

By copy of this correspondence, all counsel have been provided with our communication with the Court. Thank you for your assistance.

Very truly yours,
THORN GERSHON TYMANN AND BONANNI, LLP

Arthur H. Thorn, Esq.
arthur.thorn@tglawyers.com
**signed in this writer's absence to expedite service**

AHT/kc
enc.

cc:  Robert Abdella, Esq.
     Abdella Law Offices
     8 West Fulton Street
     PO Box 673
     Gloversville, NY 12078

cc:    Giovanna Tarantino Bingham
        Hartline Dacus Barger Dreyer LLP
        Central Expressway - Suite 1600
        Dallas, TX 75231

STATE OF NEW YORK
SUPREME COURT: COUNTY OF FULTON

# ORIGINAL

ROSE LICARDO,                                    Index No. 03236

                    Plaintiff,

v.

GENERAL MOTORS LLC,

                    Defendant.              **AGREED ORDER REGARDING**
                                            **JOINT COORDINATION**

 

 

Upon consideration of the entire record of this matter, and with due consideration to *In Re General Motors LLC Ignition Switch Litigation*, MDL Docket No. 2543, the Court hereby adopts the attached "Joint Coordination Order," which was entered into by the Honorable Jesse M. Furman in the United States District Court for the Southern District of New York on September 24, 2014. Pursuant to the attached Order, parties in the present action may participate in coordinated discovery to the extent authorized by the Order, and this Court hereby retains jurisdiction to modify, rescind, and/or enforce the terms of said Order.

SO ORDERED this 15th day of May, 2015.

 

_____
Acting Judge Presiding
HON. GUY P. TOMLINSON

ENTER!

1

# Exhibit 26

Case 1:14-md-02543-JMF   Document 5    Filed 05/22/15   Page 1 of 30

# IN THE STATE COURT OF COBB COUNTY
# STATE OF GEORGIA

| | |
|---|---|
| **MICHAEL E. PATE and BARBARA**<br>**J. PATE, Individually, and as**<br>**Administrators of the Estate of**<br>**MICHAEL ERIC PATE,**<br>**MELTON,** deceased,<br><br>        Plaintiffs,<br><br>v.<br><br>**GENERAL MOTORS LLC and**<br>**VICTORIA NICOLE JONES,**<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **CIVIL ACTION**<br>) **FILE NO. 14-A-2712-1**<br>)<br>)<br>)<br>)<br>) |

## <u>PLAINTIFFS' MOTION FOR LEAVE TO SERVE DISCOVERY</u>

**COME NOW** Plaintiffs in the above-styled action and move this Court for

leave to serve discovery on Defendant General Motors LLC ("GM"), and shows

the Court as follows:

1.      On September 29, 2014, Plaintiffs filed their Complaint for Damages

in this case.

2.      On November 25, 2014, the parties entered into an Agreed Order

Regarding Joint Coordination.  Under the terms of the Agreed Order, the parties

are to participate in coordinated discovery in conjunction with the MDL.

3.      On January 16, 2015, the parties entered into a Scheduling Order which provides for a trial date of October 24, 2016 and sets forth deadlines leading up to the trial date.

4.      Under the Scheduling Order, Plaintiffs are to identify their expert witnesses by July 29, 2015.

5.      The discovery related to the Pate vehicle has not yet been responded to in the MDL and the documents related to the Pate vehicle have not yet been produced in the MDL. Certain responsive documents have been produced, but the bulk of the responsive documents are still forthcoming.

6.      In order for Plaintiffs' experts to be prepared for their depositions which are to be taken in August 2015, Plaintiffs move for leave to serve discovery on GM related to the Pate vehicle. Plaintiffs are attaching as Exhibit A, a copy of the proposed Interrogatories and as Exhibit B, a copy of the proposed Requests for Production.

7.      GM agreed to the Scheduling Order and is now required to respond to discovery.

WHEREFORE, Plaintiffs move the Court to allow them to serve the attached discovery on Defendant GM.

-2-

**RESPECTFULLY SUBMITTED** this 27th day of April 2015.

**THE COOPER FIRM**

**LANCE A. COOPER**
Georgia State Bar No. 186100
**Attorneys for Plaintiff**

531 Roselane Street
Suite 200
Marietta, GA 30060
770/427-5588

**PRESTON & MALCOM**

**R. MICHAEL MALCOM**
Georgia State Bar No. 467025
**PAUL L. ROSENTHAL**
Georgia State Bar No. 614904

110 Court Street
P. O. Box 984
Monroe, Georgia 30655
770/267-2503

-3-

## CERTIFICATE OF SERVICE

This is to certify that I have this day served true and accurate copies of the within and foregoing to counsel of record by email as follows:

| | |
|---|---|
| Robert Ingram<br>Ryan Ingram<br>Jeffrey Daxe<br>Carey Olson<br>**MOORE INGRAM JOHNSON &<br>STEELE**<br>326 Roswell Road<br>Marietta, GA 30060<br>**Counsel for General Motors** | Brian D. Sieve<br>Nicholas F. Wasdin<br>Jeffrey S. Bramson<br>Leonid Feller<br>**KIRKLAND & ELLIS**<br>300 North LaSalle<br>Chicago, IL 60654<br>**Counsel for General Motors** |
| W. Dale Ellis, Jr.<br>**SHARON WARE & ASSOCIATES**<br>2400 Century Parkway, N.E.<br>Suite 200<br>Atlanta, GA 30359<br>**Counsel for Jones** | |

This 27th day of April 2015.

**THE COOPER FIRM**

**LANCE A. COOPER**
Georgia Bar No. 186100
**Attorney for Plaintiff**

531 Roselane Street
Suite 200
Marietta, GA 30060
770/427-5588
lance@thecooperfirm.net

-4-

# EXHIBIT A

# IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **MICHAEL E. PATE and BARBARA J. PATE, Individually, and as Administrators of the Estate of MICHAEL ERIC PATE, MELTON,** deceased, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CIVIL ACTION FILE NO. 14-A-2712-1** |
| **GENERAL MOTORS LLC and VICTORIA NICOLE JONES,** | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT GENERAL MOTORS LLC

**COME NOW** Plaintiffs in the above-styled action and require that Defendant

General Motors LLC ("GM"), answer the following interrogatories, pursuant to the

Georgia Rules of Civil Procedure, separately and fully in writing, under oath, and to

serve a copy of said answers within thirty (30) days after the date of service of these

Interrogatories.

Each interrogatory is addressed to the knowledge and information of the

defendant's attorneys, investigators, agents, employees, officers, and other

representatives. When a question is directed to the defendant, it is also directed to the

aforementioned persons.

These interrogatories shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these interrogatories are addressed obtain further information between the time the initial answers are served and the time of trial. The supplemental responses shall be served promptly upon discovery or receipt of the new information.

### DEFINITIONS

As used herein, the terms listed below are defined as follows:

1.

"Document" means every writing or record of every type and description that is or has been in your possession, custody or control or of which you have knowledge, including, but not limited to, letters, correspondence, telegrams, mailgrams, appointment books, diaries, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, drawings and photographs, videos, films, microfilms, voice and/or sound recordings, maps, reports, surveys, minutes or statistical compilations, agreements, contracts, corporate records of corporate meetings, books of accounts, ledger books, bank checks, cashiers checks, canceled checks, wire transfer documents, bills, receipts, invoices or any other reported or graphic material in whatever form, including copies, drafts, and reproductions. "Document" also refers to any other

data compilations from which information can be obtained and translated, if necessary, by you through computers or detection devices in to reasonably useful form.

### 2.

"Person" means any natural person, corporation, partnership, proprietorship, association, governmental entity, agency, group, organization or group of persons.

### 3.

To "identify" a "document" means to provide the following information irrespective of whether the document is deemed privileged or subject to any claim of privilege:

    (a)    The title or other means of identification or each such document;

    (b)    The date of each such document;

    (c)    The author of each such document;

    (d)    The recipient or recipients of each such document, including, but not limited to, GM or anyone who purports to represent GM;

    (e)    The present location of any and all copies of each such document in the care, custody, or control of GM;

    (f)    The names and current addresses of any and all persons who have custody or control of each such document or copies thereof; and

    (g)    If all copies of the document have been destroyed, the names and

-3-

current addresses of the person or persons authorizing the destruction of the document

and the date the document was destroyed.

In lieu of "identifying" any document, it shall be deemed a sufficient compliance

with these interrogatories to attach a copy of each such document to the answers hereto

and reference said document to the particular interrogatory to which the document is

responsive.

## 4.

To "identify" a natural person means to state that person's full name, title, or

affiliation, and last known address and telephone number.  To "identify" a person that is

a business, organization, or group of persons, means to state the full name of such

business, organization, or group of persons, the form of business, organization or group

of persons (e.g., government agency, corporation, partnership, joint venture, etc.) and to

"identify" the natural person who would have knowledge of the information sought by

the interrogatory.

## 5.

"Complaint" refers to the Complaint filed by Plaintiffs in this action.

## 6.

Terms in the singular shall be deemed to include the plural and terms in the plural

shall be deemed to include the singular.

-4-

7.

"Specific Product" is defined as the 2005 Cadillac CTS, Vehicle Identification Number 1G6DP567X50103015.

8.

"Product" is defined as every motor vehicle manufactured, designed distributed or sold by GM possessing a similar or equivalent platform, chassis/body or suspension as the 2005 Cadillac CTS, including the Specific Product, and including but not limited to any pre-prototype, prototype, pre-production and production models.   This term should encompass but not necessarily be limited to NHTSA's definition as found in the Code of Federal Regulations, 49 CFR § 583.4.

9.

"Safety Recall" is defined as Safety Recall 14V-394.

10.

The terms "you," "your," and "GM" shall mean Defendant General Motors LLC and each of its present or former agents, employees, and representatives, and each person who, with respect to the subject matter of the category of the Request is or was acting on its behalf or under its direction or control.

-5-

11.

The term "Subject Incident" shall mean the incident which is described in the Complaint.

## INTERROGATORIES

1.

Identify all persons who have knowledge about the facts of the Subject Incident.

2.

Identify each person from whom GM has written or recorded statements concerning the Subject Incident, or any other matters relevant to this case. State the full name, current (or last known) address, and phone number of each individual with custody of each written or recorded statement.

3.

Identify each person who has investigated this Subject Incident on GM's behalf and state the beginning and ending dates of each such person's investigation. This interrogatory applies, but is not limited to, insurance adjusters, persons employed by private adjusting firms and private investigators.

4.

Please state whether or not GM carried casualty or liability insurance to insure against the Subject Incident, if GM carried casualty and/or liability insurance, please state for each coverage:

    (a)    The full name of the insuring company;

    (b)    The policy limits;

    (c)    The effective date of the policy; and

    (d)    The issuing agent.

5.

If you contend that anyone else's acts caused or contributed to this Subject Incident, identify such persons or entities, the specific act(s) you complain of, and each person or entity with knowledge of facts regarding this contention.

6.

What are the names, business and home addresses and business and home telephone numbers, places of employment, job titles or capacities and present whereabouts of all experts whom you expect to call as an expert witness at the trial of this lawsuit?

For each such expert, please state in detail the following, as provided by O.C.G.A. Section 9-11-26 (4)(A)(I):

(a)  The subject matter upon which each expert is expected to testify, designating which experts will testify upon which subject matter;

(b)  The substance of all facts and opinions to which each such expert is expected to testify; and

(c)  A detailed summary of the facts for each such opinion set forth in the preceding subparagraph "(b)."

7.

Please state whether GM has ever discarded or destroyed any documents or things that have information about electronic power steering which is the subject of the Safety Recall, and if the answer if "yes", please identify all such documents and state the dates on which said documents were discarded or destroyed.

8.

Identify every lawsuit, claim, complaint, or incident relating to 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles, which resulted in death, injury or property damage due to the problems identified in the Safety Recall.

9.

Identify by Bates No. the documents produced in response to Plaintiffs' First Set of Consolidated Requests for Production of Documents to Defendant General Motors, LLC Nos. 61-87 which was filed in the MDL on January 30, 2015.

-8-

**RESPECTFULLY SUBMITTED** this _____ day of April 2015.

**THE COOPER FIRM**

_____

**LANCE A. COOPER**
Georgia State Bar No. 186100
**Attorneys for Plaintiff**

531 Roselane Street
Suite 200
Marietta, GA 30060
770/427-5588

**PRESTON & MALCOM**

_____

**R. MICHAEL MALCOM**
Georgia State Bar No. 467025
**PAUL L. ROSENTHAL**
Georgia State Bar No. 614904

110 Court Street
P. O. Box 984
Monroe, Georgia 30655
770/267-2503

## CERTIFICATE OF SERVICE

This is to certify that I have this day served true and accurate copies of the within and foregoing to counsel of record by email as follows:

| | |
|---|---|
| Robert Ingram<br>Ryan Ingram<br>Jeffrey Daxe<br>Carey Olson<br>**MOORE INGRAM JOHNSON & STEELE**<br>326 Roswell Road<br>Marietta, GA 30060<br>**Counsel for General Motors** | Brian D. Sieve<br>Nicholas F. Wasdin<br>Jeffrey S. Bramson<br>Leonid Feller<br>**KIRKLAND & ELLIS**<br>300 North LaSalle<br>Chicago, IL 60654<br>**Counsel for General Motors** |
| W. Dale Ellis, Jr.<br>**SHARON WARE & ASSOCIATES**<br>2400 Century Parkway, N.E.<br>Suite 200<br>Atlanta, GA 30359<br>**Counsel for Jones** | |

This _____ day of April 2015.

**THE COOPER FIRM**

_____
**LANCE A. COOPER**
Georgia Bar No. 186100
**Attorney for Plaintiff**

701 Whitlock Avenue
Suite J-43
Marietta, GA 30064
770/427-5588
lance@thecooperfirm.net

-10-

# EXHIBIT B

## IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| MICHAEL E. PATE and BARBARA<br>J. PATE, Individually, and as<br>Administrators of the Estate of<br>MICHAEL ERIC PATE,<br>MELTON, deceased,<br><br>Plaintiffs,<br><br><br>GENERAL MOTORS LLC and<br>VICTORIA NICOLE JONES,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **CIVIL ACTION**<br>) **FILE NO. 14-A-2712-1**<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
## TO DEFENDANT GENERAL MOTORS LLC

**COME NOW** Plaintiffs and pursuant to O.C.G.A. § 9-11-34 hereby request

that Defendant, General Motors LLC ("GM"), produce for inspection and

photocopying the originals or, if the originals are unavailable, copies of the

documents and materials described in Part III, which documents and materials are

in the possession, custody, or control of GM, or their present or former employees,

agents, or representatives, including, but not limited to, their attorneys of record

herein, at the offices of The Cooper Firm, 531 Roselane Street, Suite 200, Marietta,

Georgia 30064, within thirty (30) days or at such other place and time as agreeable

between counsel.

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

1.

"Document" means every writing or record of every type and description
that is or has been in your possession, custody or control or of which you have
knowledge, including, but not limited to, letters, correspondence, telegrams,
mailgrams, appointment books, diaries, memoranda, tapes, stenographic or
handwritten notes, studies, publications, books, pamphlets, pictures, drawings and
photographs, videos, films, microfilms, voice and/or sound recordings, maps,
reports, surveys, minutes or statistical compilations, agreements, contracts,
corporate records of corporate meetings, books of accounts, ledger books, bank
checks, cashiers checks, canceled checks, wire transfer documents, bills, receipts,
invoices or any other reported or graphic material in whatever form, including
copies, drafts, and reproductions.  "Document" also refers to any other data
compilations from which information can be obtained and translated, if necessary,
by you through computers or detection devices in to reasonably useful form.

2.

"Person" means any natural person, corporation, partnership, proprietorship,
association, governmental entity, agency, group, organization or group of persons.

-2-

3.

To "identify" a "document" means to provide the following information irrespective of whether the document is deemed privileged or subject to any claim of privilege:

(a)    The title or other means of identification or each such document;

(b)    The date of each such document;

(c)    The author of each such document;

(d)    The recipient or recipients of each such document, including, but not limited to, GM or anyone who purports to represent GM;

(e)    The present location of any and all copies of each such document in the care, custody, or control of GM;

(f)    The names and current addresses of any and all persons who have custody or control of each such document or copies thereof; and

(g)    If all copies of the document have been destroyed, the names and current addresses of the person or persons authorizing the destruction of the document and the date the document was destroyed.

In lieu of "identifying" any document, it shall be deemed a sufficient compliance with these interrogatories to attach a copy of each such document to

the answers hereto and reference said document to the particular interrogatory to which the document is responsive.

<div align="center">4.</div>

To "identify" a natural person means to state that person's full name, title, or affiliation, and last known address and telephone number. To "identify" a person that is a business, organization, or group of persons, means to state the full name of such business, organization, or group of persons, the form of business, organization or group of persons (e.g., government agency, corporation, partnership, joint venture, etc.) and to "identify" the natural person who would have knowledge of the information sought by the interrogatory.

<div align="center">5.</div>

"Complaint" refers to the Complaint filed by Plaintiffs in this action.

<div align="center">6.</div>

Terms in the singular shall be deemed to include the plural and terms in the plural shall be deemed to include the singular.

<div align="center">7.</div>

"Specific Product" is defined as the 2005 Cadillac CTS, Vehicle Identification Number 1G6DP567X50103015.

<div align="center">-4-</div>

8.

"Product" is defined as every motor vehicle manufactured, designed

distributed or sold by GM possessing a similar or equivalent platform,

chassis/body or suspension as the 2005 Cadillac CTS, including the Specific

Product, and including but not limited to any pre-prototype, prototype, pre-

production and production models.   This term should encompass but not

necessarily be limited to NHTSA's definition as found in the Code of Federal

Regulations, 49 CFR § 583.4.

9.

"Safety Recall" is defined as Safety Recall 14V-394.

10.

"EWO" is defined as Engineering Work Order DYKMHB.

11.

The terms "you," "your," and "GM" shall mean Defendant General Motors

LLC and each of its present or former agents, employees, and representatives, and

each person who, with respect to the subject matter of the category of the Request

is or was acting on its behalf or under its direction or control.

12.

The term "Subject Incident" shall mean the incident which is described in the Complaint.

## II. **INSTRUCTIONS**

1. No category specified herein is intended to, nor shall, supersede, exclude, or restrict the scope of any other category.

2. To the extent that any documents and materials are furnished by GM in connection with any numbered document category set forth in Part III below, they may be omitted by GM in responding to any subsequent document category.

3. If GM claims privilege or attorney work product protection for any document, GM is hereby requested to identify each such document and, with respect to each such document, state the specific basis for the claim of privilege or work product protection, providing the following information:

    (a)  The subject matter of the document;

    (b)  The title, heading, or caption of the document, if any;

    (c)  The identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s), or combination thereof;

(d)  The date appearing on the document or, if no date appears thereon, the date or approximate date on which the document was prepared;

(e)  The general nature or description of the document (i.e., whether it is a letter, memorandum, minutes of a meeting, etc.) and the number of pages of which it consists;

(f)  The identity of the person who signed the document and, if it was not signed, the identity of each person who prepared it;

(g)  The identity of each person to whom the document was addressed and the identity of each person to whom a copy thereof was sent; and

(h)  The identity of each person who has custody of each such document.

4.  In producing the documents and materials requested herein, GM may omit unmarked copies of the pleadings filed in this action.

5.  In producing the documents and materials requested herein, GM is requested to produce such documents and materials as they are kept in the usual course of business or organized and labeled to correspond with the document category of Part III to which they are responsive.

6. In producing the documents and materials requested herein, GM is required to produce documents and materials located at any of its offices, storage units, or other facilities.

### III. DOCUMENTS AND MATERIALS TO BE PRODUCED

1.

All photographs, videotapes, movie films, drawings, diagrams and measurements of the Subject Incident, the scene of the Subject Incident, the Specific Product, and Michael Eric Pate.

2.

All written or recorded statements which relate to the Subject Incident.

3.

All documents and materials relating to the investigation of the Subject Incident made the basis of this suit and of the injuries and damages sustained by Michael Eric Pate.

4.

Correspondence, reports, documents and materials of any kind providing information about the Subject Incident and its cause received by GM from any other party or entity (exclusive of employees, agents, servants, attorneys and

-8-

09-50026-smg : 1 Pg 1 Prd 1031573 -JMF Filed 05/22/15 Document 978-26 Entered 05/22/15 17:06:01 Page 28 of 27 Main Document

Pg 307 of 588

investigators of GM) or sent by GM to any other person or entity (exclusive of
employees, agents, servants, attorneys and investigators of GM).

5.

All experts' reports, including any tests, supporting data, calculations, or
photographs, factual observations and reports or facts on which such experts intend
to rely.

6.

All documents, films, computer recreations, test results, graphic evidence,
demonstrative evidence, compilations of data, statistics, books, treatises or any
other type of evidence whatsoever that support GM's defense of this lawsuit. This
includes items that are impeaching in nature.

7.

Statements of witnesses, whether written, recorded or otherwise
memorialized, which support GM's defense of this lawsuit. This includes items
that are impeaching in nature.

8.

Please produce all owner's manuals (original, not copies, if possible),
documents, written instructions or warnings that accompanied the Specific Product
when it was first distributed or sold.

9.

All documents relating to any experiments, studies, or tests conducted by GM or by an independent individual or entity at the request of GM that were intended to reasonably approximate the circumstances of the incident that is the subject of this litigation.

10.

All documents associated with or otherwise relating to GM's document retention and/or destruction policy, including without limitation, the policy itself, and documents modifying, suspending or interpreting the policy.

11.

All insurance agreements or policies under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment which may be rendered in this action or to indemnify or reimburse for payments made to satisfy any judgment.

12.

All insurance policies, whether basic, umbrella or excess, which may pay any judgment in this case or provide any defense in this case.

-10-

13.

All recall notices applicable to any and all Products and the Specific

Product.

14.

Please produce all documents relating to the Safety Recall recalling the

2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles.   Included within

this request are:

a)      Documents reviewing or discussing any data, field research, or

information of any nature evaluating the need or rationale for a recall;

b)      Documents stating or reflecting the testing and research that formed

the basis of the decision to recall, including testing and research.

c)      Documents of any kind submitted to NHTSA and other regulatory

agencies concerning the decision to recall;

d)      Documents reviewing or discussing the potential and most appropriate

modifications to the 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX

vehicles  to be offered to customers, owners and users of that vehicle in connection

with the recall;

e)      Documents reviewing or discussing the potential and most appropriate

methods by which the existence of the recall would be communicated to

customers, owners and users of the 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles;

  f)   Documents reviewing or discussing the probable cost of the recall to GM;

  g)   Documents reviewing or discussing reviewing or discussing the implementation of the recall procedure from 2010 to the present date; and

  h)   Documents received by GM from any source, including present and former customers, owners and users of the 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles, responding to the announcement of the recall.

<div align="center">15.</div>

Copies of all documents communicating the fact of the Safety Recall to Michael Eric Pate.

<div align="center">16.</div>

All training or informational documents and materials sent by GM to include all brochures, pamphlets, cassette or other audio recordings to GM dealerships about the Safety Recall.

<div align="center">-12-</div>

17.

All documents and materials relating to other similar incidents, being identified as incidents which allegedly occurred as a result of the defective conditions identified in the Safety Recall.

18.

All documents and materials for every lawsuit, claim, or complaint that has been made against GM relating to the Safety Recall.

19.

All documents and materials relating to any incidents where there was allegedly a loss of power when a GM employee, or any other person, was driving a prototype or production level 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicle.

20.

All documents and materials related to the Safety Recall.

21.

All documents and materials relating to communications between NHTSA and GM relating to the Safety Recall.

22.

All emails, including emails to and from suppliers, relating to the following

issues:

a)   The inadvertent turning of the key in 2003-2014 Cadillac CTS and

     2004-2006 Cadillac SRX vehicles from run to accessory or off

     positions;

b)   Engine stalling on 2003-2014 Cadillac CTS and 2004-2006 Cadillac

     SRX vehicles;

c)   Non-deployment of frontal or side airbags in crashes involving 2003-

     2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles;

d)   The performance of ignition switches on 2003-2014 Cadillac CTS and

     2004-2006 Cadillac SRX vehicles;

e)   Changes made to the ignition switches in 2003-2014 Cadillac CTS

     and 2004-2006 Cadillac SRX vehicles;

f)   The EWO; and

g)   The Safety Recall.

23.

All documents and materials relating to the design, development and testing of the ignition switch in 2003-2007 Cadillac CTS and 2004-2006 Cadillac SRX vehicles.

24.

All documents and materials relating to the design, development and testing of the ignition switch in 2007-2009 Cadillac SRX vehicles.

25.

All documents and materials relating to the design, development and testing of the ignition switch in 2008-2014 Cadillac CTS vehicles.

26.

All documents and materials relating to any presentations prepared during the investigation which resulted in the Safety Recall.

27.

All documents and materials relating to the EWO.

28.

All documents and materials relating to any presentations prepared during the investigation which resulted in the EWO.

29.

All documents relating to the design of the replacement parts as described in the EWO.

30.

All documents relating to the testing of the replacement parts as described in the EWO.

31.

All documents and materials relating to GM's buyback of any 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles, including but not limited to, the complete file for the buyback of each vehicle.

32.

All documents and materials relating to any CPIT meetings from 2002 to the present where there was a discussion of the following issues:

a)     The inadvertent turning of the key in 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles from run to accessory or off positions;

b)     Engine stalling on 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles;

-16-

    c)      Non-deployment of frontal or side airbags in crashes involving 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles;

    d)      The performance of ignition switches on 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles.

<div align="center">33.</div>

All documents and materials relating to any VAPIR meetings from 2002 to the present, where there was a discussion of the following issues:

    a)      The inadvertent turning of the key in 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles from run to accessory or off positions;

    b)      Engine stalling on 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles;

    c)      Non-deployment of frontal or side airbags in crashes involving 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles;

    d)      The performance of ignition switches on 2003-2014 Cadillac CTS and 2004-2006 Cadillac SRX vehicles.

<div align="center">34.</div>

All documents and materials relating to the decision to involve the Red X team in the CTS/SRX ignition switch investigation.

<div align="center">-17-</div>

35.

All documents and materials related to any meetings held by the Red X team during the CTS/SRX ignition switch investigation.

36.

All Problem Resolution Tracking System (PRTS) reports relating to the CTS/SRX ignition switch investigation.

37.

Please produce a copy of Human Vehicle Interface (HVI) 266.

38.

The documents and materials GM gathered from its databases, including TREAD, warranty, customer satisfaction, engineering analysis databases and NHTSA's VOQ database relating to the CTS/SRX ignition switch investigation.

39.

Any and all documents and reports prepared by the Investigation Status Review (ISR) committee related to the CTS/SRX ignition switch investigation.

40.

All documents and materials relating to the testing conducted on CTS and SRX vehicles at Milford Proving Grounds in June 2014.

**RESPECTFULLY SUBMITTED** this _____ day of April 2015.

**THE COOPER FIRM**

**LANCE A. COOPER**
Georgia State Bar No. 186100

531 Roselane Street
Suite 200
Marietta, Georgia 30060
770/427-5588
lance@thecooperfirm.com

**PRESTON & MALCOM**

**R. MICHAEL MALCOM**
Georgia State Bar No. 467025
**PAUL L. ROSENTHAL**
Georgia State Bar No. 614904
**Attorneys for Plaintiffs**

110 Court Street
P. O. Box 984
Monroe, Georgia 30655
770/267-2503
rmm@prestonmalcom.com
plr@prestonmalcom.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served true and accurate copies of the within and foregoing to counsel of record by email as follows:

| | |
|---|---|
| Robert Ingram<br>Ryan Ingram<br>Jeffrey Daxe<br>Carey Olson<br>**MOORE INGRAM JOHNSON & STEELE**<br>326 Roswell Road<br>Marietta, GA 30060<br>**Counsel for General Motors** | Brian D. Sieve<br>Nicholas F. Wasdin<br>Jeffrey S. Bramson<br>Leonid Feller<br>**KIRKLAND & ELLIS**<br>300 North LaSalle<br>Chicago, IL 60654<br>**Counsel for General Motors** |
| W. Dale Ellis, Jr.<br>**SHARON WARE & ASSOCIATES**<br>2400 Century Parkway, N.E.<br>Suite 200<br>Atlanta, GA 30359<br>**Counsel for Jones** | |

This _____ day of April 2015.

**THE COOPER FIRM**

**LANCE A. COOPER**
Georgia Bar No. 186100
**Attorney for Plaintiff**

701 Whitlock Avenue
Suite J-43
Marietta, GA 30064
770/427-5588
lance@thecooperfirm.net

-20-

# Exhibit 27

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

MICHAEL E. PATE and BARBARA )
J. PATE, Individually, and as )
Administrators of the Estate of )
MICHAEL ERIC PATE, )
deceased, )
 )
Plaintiffs, )       CIVIL ACTION
 )       FILE NO. 14-A-2712-1
v. )
 )
GENERAL MOTORS LLC, and )
VICTORIA NICOLE JONES, )
 )
Defendants. )
 )

## GENERAL MOTORS LLC'S RESPONSE TO PLAINTIFFS' MOTION TO SERVE DISCOVERY

This Court has entered a Joint Coordination Order (with plaintiffs' consent) mandating that all discovery that can be obtained within the consolidated MDL Proceeding *must be sought* within that forum. Only case-specific discovery that cannot be obtained in the MDL is properly sought in this case. Plaintiffs' counsel fully understands this process, both because he is a member of the Plaintiffs' Executive Committee in the MDL, and because he expressly agreed at the first status conference to entry of the Coordination Order in this case.

Despite the fact that discovery in this case is therefore limited to information and testimony that cannot be obtained in the MDL, twenty-nine of plaintiffs' forty proposed document requests seek documents regarding defendant General Motors LLC's ("New GM") ignition switch investigation and recall. Those documents already have been produced in the MDL, are in the process of being produced, or could be obtained in the MDL. Accordingly, New GM objected to plaintiffs' service of those twenty-nine document requests.

New GM has no objection to the remainder of plaintiffs' document requests, nor to their proposed interrogatories. Accordingly, this Court should deny Plaintiffs' Motion to Serve Discovery (the "Motion"), served on April 27, 2015, in part, and rule that plaintiffs may serve all of their proposed discovery *except* Requests Nos. 8, 10, 13, 14, and 16–40. In further support of its position, New GM states as follows.

## Background

1.     The Complaint in the above-referenced litigation was filed in this Court on September 29, 2014.

2.     As plaintiffs note in their Motion, the parties entered into an Agreed Order Regarding Joint Coordination in the MDL Proceeding (the "Joint Coordination Order"), which this Court entered on November 25, 2014. A copy of the order is attached as Exhibit A. This case is a "Coordinated Action" under the terms of that Order.

3.     According to the Joint Coordination Order, "[t]he parties in a Coordinated Action [such as this case] may take discovery (whether directed to the merits or class certification) in a Coordinated Action *only* upon leave of the Court in which the Coordinated Action is pending. Such leave shall be obtained on noticed motion for good cause shown, including why the discovery sought could not have been obtained in coordinated discovery in the MDL Proceeding." (Ex. A ¶ 5, emphasis added.)

4.     On February 6, 2015, plaintiffs' counsel sent to New GM their proposed First Set of Interrogatories (which included nine interrogatories), and their proposed First Request for Production of Documents (which included five requests). Plaintiffs sought New GM's consent to serve these requests, and the parties met and conferred regarding the proper scope of discovery to be served on New GM in this Coordinated Action.

5.      On February 11, 2015, New GM informed plaintiffs' counsel it would consent to service of all five document requests, and to six of the nine interrogatories. (*See* Sieve 2/11/15 email, attached as Ex. B.)

6.      New GM heard nothing in response from plaintiffs' counsel until March 23, when Mr. Dawson sent an email thanking New GM for its prior consent, but asking New GM to reconsider its objection to the three disputed interrogatories. (*See* Dawson 3/23/15 email, attached as Ex. C.)

7.      During a telephonic meet and confer on April 6, plaintiffs' counsel asked New GM to provide a list of documents produced in the MDL that related to the vehicle make and model at issue in this case. New GM's counsel understood that if New GM provided the requested list, plaintiffs would withdraw the three disputed interrogatories. The next day, New GM provided plaintiffs' counsel with a list, by Bates number, of documents produced in the MDL that pertain to the vehicle make and model at issue here. (*See* Sieve 4/7/15 email, attached as Ex. D.)

8.      On April 7, 2015, plaintiffs' counsel Lance Cooper sent New GM's counsel an email objecting to the list provided by New GM, and demanding that New GM produce additional documents "responsive to our discovery." (*See* Cooper 4/7/15 email and Sieve 4/8/15 response, attached as Ex. E.) But plaintiffs had not served any discovery as of that date. Accordingly, on April 8, 2015, New GM's counsel responded to Mr. Cooper, explaining that he appeared to be confused about the status of discovery in both the MDL and this case. (*See* Ex. E.) New GM's counsel also urged plaintiffs' counsel to agree that both parties could serve discovery to which there was no objection:

> I suggest, as I discussed with Doreen earlier this week, the parties agree on a
> consent order that allows plaintiffs to serve their document requests and

interrogatories (Nos. 1 – 6), New GM to serve its document request and interrogatories, and New GM to serve the third party subpoenas. We should get that process going now. Let's go ahead and serve the discovery to which neither party objects.

(*See* Ex. E.)

9.  On April 20, 2015, plaintiffs abandoned their request that New GM consent to the first set of discovery. Instead, they sent New GM an email asking it to consent to service of new interrogatories and new document requests. The new First Set of Interrogatories included six of the nine interrogatories from plaintiffs' original draft, with no additions. Plaintiffs' amended First Request for Production of Documents included not only their five original requests, but also an additional thirty-five requests. That discovery is attached to plaintiffs' Motion.

10.  On April 24, 2015, New GM's counsel responded to plaintiffs' counsel, consenting to the service of all six interrogatories. New GM also consented to all of the proposed document requests that related specifically to the facts and circumstances of the instant case: Requests Nos. 1–7, 9, 11–12, and 15. (*See* Bramson 4/24/15 email, attached as Ex. F.)

11.  New GM objected to the remainder of the proposed document requests—i.e., Requests Nos. 8, 10, 13, 14, and 16–40—because they violate the terms of the Joint Coordination Order. Specifically, these Requests seek documents or materials that were already produced into the MDL 2543 Document Depository pursuant to document requests in the MDL Proceeding, or requested materials that could be obtained in coordinated discovery in the MDL Proceeding. These include requests regarding, for example, "All documents and materials related to the Safety Recall" (Request No. 20); "All documents and materials relating to the design, development and testing of the ignition switch in 2008-2014 Cadillac CTS vehicles" (Request No. 25); "All documents and materials relating to the testing conducted on CTS and SRX vehicles at Milford Proving Grounds in June 2014" (Request No. 40); and so forth.

**Argument**

12.     Plaintiffs' Motion should be denied as to the disputed Requests Nos. 8, 10, 13, 14, and 16–40, for three reasons.

13.     *First*, under the terms of the Joint Coordination Order, plaintiffs have the burden of establishing that the documents they seek in the disputed requests cannot be obtained in the MDL Proceeding.  Plaintiffs made no effort to make such a showing, nor could they.

14.     It is undisputed that documents relating both to the general investigation of the ignition switch and more specifically to the Cadillac CTS model have been and are being produced in the MDL 2543 Document Depository, pursuant to MDL Order No. 20.  To date, New GM has produced more than 935,000 documents (totaling over 5.25 million pages), including 5,448 documents specifically relating to the recall of the Cadillac CTS.  Although they had no obligation to do so, New GM provided plaintiffs with a list identifying by Bates numbers the many documents produced in the MDL 2543 Document Depository that relate to the vehicle make and model at issue in this case.  Thus, plaintiffs can easily identify, download, and review the relevant documents already produced in the MDL.

15.     To the extent plaintiffs seek additional technical documents relating to the vehicle at issue in this case, they can obtain them in the MDL.  Mr. Cooper is on the MDL Executive Committee, and thus he can work with MDL lead counsel to seek additional documents.

16.     Simply put, *all* the technical documents plaintiffs seek have been produced in the MDL, are being produced, or could be produced.  Under the terms of the Joint Coordination Order, plaintiffs *must* obtain those documents in the MDL.

17.     *Second*, to the extent plaintiffs are suggesting they will not get relevant documents prior to their expert disclosure date, they are incorrect.  New GM has already

Case 1:14-md-02543-JMF Document 578-23 Filed 05/22/15 Page 7 of 7

produced nearly a million documents into the MDL 2543 Document Depository, many of which may be relevant in this case. And because plaintiffs' expert disclosures are not due until July 29, 2015, they still have three months to seek additional documents in the MDL Proceeding.

18.      *Third*, contrary to plaintiffs' insinuations, New GM is in no way holding up the discovery process. GM has timely responded to the plaintiffs' requests for leave on multiple occasions, but plaintiffs have failed to follow up and seek a consent order concerning leave to serve the agreed-upon discovery (which could have been served almost three months ago). Plaintiffs also contend in their Motion that "discovery related to the Pate vehicle has not yet been responded to." (Motion at ¶ 5.) But of course, *none* of that discovery has even been served, either in the MDL Proceeding or in this action. Plaintiffs cannot serve the discovery until this Court enters an order allowing service.

19.      Once the discovery is served, New GM will timely respond. Indeed, New GM has already consented to the service of all Requests relating to the Pate vehicle and the specific facts and circumstances of the motor vehicle accident at issue in this litigation—i.e., Requests Nos. 1–7, 9, 11–12, and 15. New GM consented to service of that discovery even though plaintiffs' counsel have still not consented to New GM's service of *any* of its own discovery, requiring New GM to file a separate Motion to seek leave from the Court to serve those requests on plaintiffs.

<div align="center">*      *      *</div>

For the foregoing reasons, New GM respectfully requests that the Court deny plaintiffs' Motion for leave to serve Document Requests Nos. 8, 10, 13, 14, and 16–40.

Dated: May 5th, 2015

Respectfully submitted,

**MOORE INGRAM JOHNSON & STEELE, LLP**
Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

*Attorneys for Defendant*
*GENERAL MOTORS LLC*

IN THE STATE COURT OF COBB COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually, and as Administrators of the Estate of MICHAEL ERIC PATE, deceased | ) | |
| Plaintiffs, | ) | Civil Action File No.: 14A2712-1 |
| v. | ) | |
| GENERAL MOTORS, LLC and VICTORIA NICOLE JONES, | ) | |
| Defendants. | ) | |

**AGREED ORDER REGARDING JOINT COORDINATION**

Upon consideration of the entire record of this matter, and with due consideration to *In Re General Motors LLC Ignition Switch Litigation*, MDL Docket No. 2543, the Court hereby adopts the attached "Joint Coordination Order," which was entered into by the Honorable Jesse M. Furman in the United States District Court for the Southern District of New York on September 24, 2014. Pursuant to the attached Order, parties in the present action may participate in coordinated discovery to the extent authorized by the Order, and this Court hereby retains jurisdiction to modify, rescind, and/or enforce the terms of said Order.

SO ORDERED this 25 day of November, 2014.

Hon. Melodie H. Clayton
Judge, State Court of Cobb County

... IN THIS OFFICE
25 ... OF NOV, 2014
... Court of Cobb County

[signatures continue on following page]

EXHIBIT A

**AGREED:**

_____

LANCE A. COOPER (Ga. Bar No. 186100)
**The Cooper Firm**
**Attorneys for Plaintiffs**
531 Roselane Street, Suite 200
Marietta, Georgia  30060
Tel: 770-427-5588

R. MICHAEL MALCOM (Ga Bar No.: 467025)
PAUL L. ROSENTHAL   (Ga Bar No.: 614904)
**Preston & Malcom**
**Attorneys for Plaintiffs**
110 Court Street
Monroe, Georgia  30655

MOORE INGRAM JOHNSON & STEELE, LLP

_____

Robert D. Ingram (Ga. Bar No. 383400)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA  30060
Telephone:  (770) 429-1499
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com
**Attorneys for Defendant General Motors LLC**

SHARON W. WARE & ASSOCIATES

_____

W. Dale Ellis Jr. (Ga. Bar No. 244926)
2400 Century Pkwy NE, Ste. 200
Atlanta, GA 30345-3136
(404)728-5400
**Attorney for Defendant Victoria Nicole Jones**

# IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

KENNETH DAVID MELTON and )
MARY ELIZABETH MELTON, )
Individually, and as Administrators of the )
Estate of JENNIFER BROOKE MELTON, )
Deceased, )
          )
    Plaintiffs, )      CIVIL ACTION
          )      NO. 14-1197-4
v. )
          )
GENERAL MOTORS LLC and )
THORNTON CHEVROLET, INC., )
          )
    Defendants. )

## ORDER

    Upon consideration of the entire record of this matter, and with due consideration to *In Re General Motors LLC Ignition Switch Litigation*, MDL Docket No. 2543, the Court hereby adopts the attached "Joint Coordination Order", which was entered into by the Honorable Jesse M. Furman in the United States District Court for the Southern District of New York on September 24, 2014. Pursuant to the attached Order, parties in the present action may participate in coordinated discovery to the extent authorized by the Order and this Court hereby retains jurisdiction to modify, rescind, and/or enforce the terms of said Order.

    SO ORDERED this **30** day of September, 2014

                         _Kathryn J. Tanksley_
                         Honorable Kathryn Tanksley
                         State Court Judge, Cobb County, GA

Case 1:14-md-02543-JMF    Document 378-21    Filed 05/22/15    Page 12 of 71

Case 1:14-md-02543-JMF    Document 315    Filed 09/24/14    Page 1 of 46

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to All Actions*

-------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  09/24/2014

14-MD-2543 (JMF)
14-MC-2543 (JMF)

ORDER NO. 15

JESSE M. FURMAN, United States District Judge:

[Joint Coordination Order]

WHEREAS, a federal proceeding captioned *In re General Motors LLC Ignition Switch Litigation*, MDL Docket No. 2543 (the "MDL Proceeding"), is pending before the Hon. Jesse M. Furman in the United States District Court for the Southern District of New York (the "MDL Court");

WHEREAS, several other actions involving the same subject matter as the MDL Proceeding have been filed in the courts of a number of states and in federal courts (the "Related Actions");[1]

WHEREAS, the MDL Proceeding and the Related Actions involve many of the same factual allegations and circumstances and many of the same parties, and discovery in those various proceedings will substantially overlap;

WHEREAS, in order to achieve the full benefits of this MDL proceeding, the MDL Court has and will continue to encourage coordination with courts presiding over related cases, to the extent that those courts so desire, up to and including issuance of any joint orders that might allow full cooperation as between and among the courts and the parties. As the MDL Court indicated at the initial case management conference, and has been reiterated thereafter, the MDL Court intends to work actively to reach out to any court that is interested in coordinating discovery activities. The MDL Court expects counsel for parties in the MDL

---

[1]    "Related Actions" shall not include shareholder derivative suits and securities class actions.

proceeding to help ensure that such coordination is achieved wherever it is practicable and desired by a given court or courts;

WHEREAS, coordination of pretrial proceedings in the MDL Proceeding and the Related Actions will likely prevent duplication of discovery and undue burden on courts, parties, and nonparties in responding to discovery requests, save substantial expense by the parties and nonparties, and produce substantial savings in judicial resources;

WHEREAS, each Court adopting this Order (collectively, the "Courts") finds that coordination of discovery and pretrial scheduling in the MDL Proceeding and the Related Actions will further the just and efficient disposition of each proceeding and believes that the circumstances presented by these proceedings warrant the adoption of certain procedures to manage these litigations;

WHEREAS, the Courts and the parties wish and anticipate that other courts in which Related Actions are now pending may join this Joint Coordination Order (this "Order");

WHEREAS, a Related Action in which this Order has been entered by the Court in which the action is pending is referred to herein as a "Coordinated Action" or, collectively as the "Coordinated Actions"; and

WHEREAS, each Court entering this Order is mindful of the jurisdiction of each of the other Courts in which other Coordinated Actions are pending and does not wish to interfere with the jurisdiction or discretion of those Courts.

NOW, THEREFORE, IT IS ORDERED that the parties are to work together to coordinate discovery to the maximum extent feasible in order to avoid duplication of effort and to promote the efficient and speedy resolution of the MDL Proceeding and the Coordinated Actions and, to that end, the following procedures for discovery and pretrial proceedings shall be adopted:

A.    **Discovery and Pretrial Scheduling**

1.    All discovery and pretrial scheduling in the Coordinated Actions will be coordinated to the fullest extent possible with the discovery and pretrial scheduling in the MDL Proceeding. The MDL Proceeding shall be used as the lead case for discovery and pretrial scheduling in the Coordinated Actions.  This Order does not operate to vacate discovery or pretrial scheduling in a Coordinated Action that predates its entry; such is left to the judgment and discretion of the Court in that Action.

2.    Lead Counsel shall create a single electronic document depository for use of all MDL counsel as well as counsel in Coordinated Actions, subject to provision by the MDL Court of an order for the equitable spreading of depository costs among users.

3.    New GM shall apprise the MDL Court, Lead Counsel, Plaintiff Liaison Counsel and Federal-State Liaison Counsel every two weeks of matters of significance (including hearings, schedules, deadlines, and trial dates) in Related Actions to enable the MDL Court and the parties to effectuate appropriate coordination, including discovery coordination, with these cases.

4.    Plaintiffs in the Coordinated Actions and their counsel shall be entitled to participate in discovery in the MDL Proceeding as set forth in this Order and in accordance with the terms of the MDL Order No. 10 Protecting Confidentiality and Privileged Materials (ECF No. 294), the MDL Order No. 11 Regarding Production of Documents and Electronic Data ("ESI Order") (ECF No. 295), and any subsequent order entered in the MDL Proceeding governing the conduct of discovery (collectively, the "MDL Discovery Orders"), copies of which are attached hereto as Exhibit A or shall be made available pursuant to the terms of this Order.  Each Court that adopts this Joint Coordination Order thereby also adopts the MDL Discovery Orders which, except as amended by separate order of the Coordinated Action Court, shall govern the use and dissemination of all documents and information produced in

3

coordinated discovery conducted in accordance with the terms of this Order. Discovery in the MDL Proceeding will be conducted in accordance with the Federal Rules of Civil Procedure and the Local Rules and Orders of the MDL Court, including the MDL Discovery Orders, all as interpreted by the MDL Court. Parties in the MDL Proceeding and their counsel may also participate in discovery in any Coordinated Action as set forth in this Order. Counsel in any Coordinated Action may, at the appropriate time and following the appropriate Orders, submit time and expenses expended for the common benefit pursuant to the MDL Order (ECF No. 13 (14-MD-2543, Docket No. 304)).[2] Specifically, and not by way of limitation, any lawyer seeking recovery of time or expenses as common benefit work in this MDL for time or expenses spent on work in a Related Case must contact the MDL Lead Counsel before conducting such work or incurring such expenses, and must comply with the authorization and reporting requirements set forth in this Order. Should there be an assessment in a Coordinated Action, any attorney will be subject to only one assessment order. MDL Lead Counsel should work with counsel in a Coordinated Action to resolve any issue related to multiple jurisdictions' assessments.

5.      The parties in a Coordinated Action may take discovery (whether directed to the merits or class certification) in a Coordinated Action only upon leave of the Court in which the Coordinated Action is pending. Such leave shall be obtained on noticed motion for good cause shown, including why the discovery sought could not have been obtained in coordinated discovery in the MDL Proceeding.

**B.      Use of Discovery Obtained in the MDL Proceeding**

6.      Counsel representing the plaintiff or plaintiffs in a Coordinated Action will be entitled to receive all discovery taken in the MDL Proceeding, provided that such discovery

---

[2]      Nothing herein is intended to presume that any judgment of liability shall be entered now or in the future against any defendant or that any common benefit fund shall ever be created. Defendants expressly reserve all rights in this regard.

4

responses and documents shall be used or disseminated only in accordance with the terms of the MDL Discovery Orders. Counsel representing a party in the MDL Proceeding shall be entitled to receive all discovery taken in any Coordinated Action; any such discovery responses and documents shall be used or disseminated only in accordance with the terms of the MDL Discovery Orders.

      7.    Requests for documents, interrogatories, depositions on written questions, and requests for admission propounded in the MDL Proceeding will be deemed to have been propounded and served in the Coordinated Actions as if they had been propounded under the applicable civil discovery rules of the respective jurisdictions. Requests for documents, interrogatories, depositions on written questions, and requests for admission propounded in the Coordinated Actions will be deemed to have been propounded and served in the MDL Proceeding as if they had been propounded under the applicable discovery rules of the MDL Court. The parties' responses to such requests for documents, interrogatories, depositions on written questions, and requests for admission will be deemed to be made in the MDL Proceeding and in the Coordinated Actions and may be used in the MDL Proceeding and in the Coordinated Actions, subject to and in accordance with the terms of the MDL Discovery Orders, as if they had been taken under the applicable civil discovery rules of the respective jurisdictions.

      8.    Depositions taken in the MDL Proceeding may be used in the Coordinated Actions, subject to and in accordance with the terms of the MDL Discovery Orders, as if they had been taken under the applicable civil discovery rules of the respective jurisdictions. Depositions taken in a Coordinated Action may be used in the MDL Proceeding, subject to and in accordance with the terms of the MDL Discovery Orders, as if they had been taken under the applicable discovery rules of the MDL Court.

C.    **Service and Coordination Among Counsel**

9.    The MDL Court has previously appointed Lead Counsel for Plaintiffs, Plaintiff Liaison Counsel, and Federal/State Liaison Counsel in the MDL Proceeding (those counsel are identified in the attached Exhibit B). Defendants shall file with the MDL Court and serve upon Lead Plaintiff Counsel, Plaintiff Liaison Counsel, and Federal/State Liaison Counsel in the MDL Proceeding copies of all Complaints, Coordination Orders, Protective Orders, ESI Orders or other Discovery Orders, and Orders designating plaintiffs' liaison counsel that are entered in the Coordinated Actions on the first of every month. Service may be made by electronic means.[3]

10.    Any Court in a Coordinated Action wishing to grant the parties before it access to coordinated discovery may do so by joining this Order pursuant to paragraph 32 and appointing one Plaintiffs' Liaison Counsel or designating one plaintiffs' counsel from the Coordinated Action to work with Plaintiff Liaison Counsel and Federal/State Liaison Counsel to facilitate coordination of discovery in the Coordinated Action and discovery in the MDL Proceeding.

11.    Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding shall promptly serve upon Plaintiffs' Liaison Counsel (if any) or designated plaintiffs' counsel in each Coordinated Action all discovery requests (including requests for documents, interrogatories, depositions on written questions, requests for admission, and subpoenas *duces tecum*), responses and objections to discovery requests; deposition notices; correspondence or other papers modifying discovery requests or schedules; and discovery motions (*i.e.*, motions under Rules 26 through 37 or Rule 45 of the Federal Rules of Civil Procedure) or requests for hearing on discovery disputes regarding coordinated discovery matters that are served upon the parties

---

[3]    All forms of service made under this Joint Coordination Order shall be deemed mailed in accordance with Rule 6 of the Federal Rules of Civil Procedure.

6

in the MDL Proceeding. Service may be made by electronic means upon Plaintiffs' Liaison Counsel in each Coordinated Action. Deposition notices shall be served by e-mail, facsimile or other electronic means. Plaintiffs' Liaison Counsel in the Coordinated Actions shall be responsible for distributing such documents to other counsel for plaintiffs in their respective actions.

12.     Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding shall maintain a log of all Orders entered in the MDL Proceeding and all discovery requests and responses sent and received in the MDL Proceeding and shall transmit a copy of said log by e-mail or other electronic means to Plaintiffs' Liaison Counsel in each Coordinated Action by the seventh (7th) day of each month, or on a more frequent basis upon written request. Plaintiffs' Federal/State Liaison Counsel in the MDL Proceeding will promptly transmit a copy of each Order entered in the MDL Proceeding to Plaintiffs' Liaison Counsel in the Coordinated Actions.

13.     In order to facilitate the dissemination of information and Orders in the MDL, the MDL Court — or the parties if the MDL Court so prefers — will create and maintain a website devoted solely to this MDL.[4]  The site will contain sections through which the parties, counsel, and the public may access Court Orders, Court opinions, Court minutes, Court calendars, frequently asked questions, court transcripts, the MDL docket, current developments, information about leadership in the MDL, and appropriate contact information.

14.     To encourage communication between this Court and any Coordinated Action Court, one section of the website may be accessible only to judges in any Coordinated Action

---

[4] *See, e.g.,* Website for *In re Actos (Pioglitazone) Prods. Liab. Litig.,* MDL No. 2299, *available at* http://www.lawd.uscourts.gov/welcome-web-site-mdl-no-2299; Website for *In re Oil Spill by the Oil Rig "Deepwater Horizon",* MDL 2179, *available at* http://www.laed.uscourts.gov/OilSpill/OilSpill.htm.

7

and Judge Furman. Additionally, each status conference will be open to the judge in any Coordinated Action, who will be provided a separate call-in number from the general public to allow Coordination Action judges to listen to, if not participate in, the status conference. Plaintiffs' Federal-State Liaison Counsel will notify all Coordinated Action Courts of each status conference and provide the appropriate call-in number. Plaintiffs' Federal-State Liaison Counsel will also promptly transmit a copy of each Order entered in the MDL Proceeding to the judges in all Coordinated Actions.

**D.  Participation in Depositions in the MDL Proceeding**

15.  All counsel are expected to cooperate with and be courteous to each other and deponents in both scheduling and conducting depositions. Counsel may agree to use videoconferencing or other technology to conduct depositions remotely, in order to reduce the time and cost burden of travel for the deponent and counsel. Lead Counsel and counsel for the Defendants shall further meet and confer in good faith to propose a more detailed deposition protocol for depositions in the Coordinated Actions. The detailed deposition deposition protocol shall be entered by separate Order.

16.  Each deposition taken in the MDL Proceeding shall, absent leave of the MDL Court: (i) be conducted on reasonable written notice, to be served, electronically or otherwise, on Plaintiffs' Liaison Counsel in each Coordinated Action in accordance with the provisions of paragraph 9 above; (ii) be subject to the time limits prescribed by Rule 30(d)(1) of the Federal Rules of Civil Procedure; and (iii) be conducted pursuant to the Federal Rules of Civil Procedure and under the terms of the MDL Discovery Orders, all as interpreted by the MDL Court.

17.  At least one Lead Counsel for the MDL Plaintiffs, or their designee, and MDL Plaintiffs' Federal/State Liaison Counsel or Plaintiffs' Liaison Counsel, shall confer with Plaintiffs' Liaison Counsel in the Coordinated Actions, or their designees, in advance of each

8

deposition taken in the MDL Proceeding, taking such steps to cooperate on selecting a mutually convenient date and location, and taking such steps as may be necessary to avoid multiple interrogatories and duplicative questions, and to avoid to the extent practicable additional depositions in the Coordinated Actions.

18.     Counsel representing the plaintiff or plaintiffs in a Coordinated Action shall be permitted to attend any deposition scheduled in the MDL Proceeding.  One Plaintiffs' Counsel from each Coordinated Action shall be permitted a reasonable amount of time to question the deponent in those depositions following questioning by Lead Counsel for the MDL Plaintiffs, or their designee, and shall be permitted to make objections during examination by other counsel, in accordance with the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, and the Orders of the MDL Court entered in the MDL Proceeding, and in accordance with the terms and procedures set forth in subparts (a) through (c) below providing that:

    (a)     the court in which the Coordinated Action is pending has adopted the MDL Discovery Orders or has entered a Protective Order, ESI Order or other Discovery Order substantially similar to the MDL Discovery Orders;

    (b)     Plaintiffs' Counsel from the Coordinated Action shall make best efforts to ask questions that are non-duplicative of questions already asked at the deposition; and

    (c)     participation of Plaintiffs' Counsel from the Coordinated Actions shall be arranged so as not to delay discovery or other proceedings as scheduled in the MDL Proceeding.

19.     Counsel representing any party to any Coordinated Action may obtain from the MDL 2543 Document Depository or directly from the court reporter, at its own expense, a

transcript of any deposition taken in the MDL Proceeding or in any other Coordinated Action.
The transcript of any deposition taken in the MDL Proceeding shall not be used or disseminated
except in accordance with the terms of this Order and the MDL Discovery Orders.

20.    Depositions in addition to those taken in the MDL Proceeding (whether directed
to the merits or class certification) may be taken in a Coordinated Action only upon leave of
the court in which the Coordinated Action is pending, obtained on noticed motion for good
cause shown, including why the discovery sought could not have been obtained in coordinated
discovery in the MDL Proceeding.  The transcript of any such deposition shall not be used or
disseminated except in accordance with the terms of the MDL Discovery Orders.

21.    If depositions in addition to those taken in the MDL Proceeding are permitted
in a Coordinated Action, the noticing party shall provide reasonable written notice, by e-mail
or other electronic means, to Plaintiff Liaison Counsel and Plaintiffs' Federal/State Liaison
Counsel in the MDL Proceeding and all Liaison Counsel in the other Coordinated Actions.
Counsel representing parties in the MDL Proceeding and counsel representing plaintiffs in each
other Coordinated Action shall be entitled to attend the deposition of any witness whose
deposition is taken in a Coordinated Action and, following questioning by Plaintiffs' Counsel
in the Coordinated Action, one counsel representing the MDL Plaintiffs, one counsel
representing each MDL Defendant, and one Plaintiffs' Counsel from each Coordinated Action
shall each be permitted a reasonable amount of time to ask non-duplicative additional questions
and shall be permitted to make objections during examination by other counsel.

22.    If the MDL Plaintiffs, through Plaintiff Liaison Counsel or Plaintiffs'
Federal/State Liaison Counsel, or the MDL Defendants have been provided with reasonable
notice of and opportunity to participate in a deposition taken in any Coordinated Action, no
MDL Plaintiff or MDL Defendant shall be permitted to re-depose that deponent without first
obtaining an Order of the MDL Court upon a showing of good cause therefor. Any party or

10

witness receiving notice of a deposition which it contends is not permitted by the terms of this
Order shall have seven (7) days from receipt of the notice within which to serve the noticing
party with a written objection to the deposition. In the event of such an objection, the
deposition shall not go forward until the noticing party applies for and receives an order from
the MDL Court, if the notice was issued in the MDL proceeding, or in the Coordinated Action
Court, if the notice was issued in a Coordinate Action, granting leave to take the deposition.

23.     If the MDL Plaintiffs or MDL Defendants and their respective Counsel in any
Coordinated Action have received reasonable notice of a deposition in either the MDL
Proceeding or any Coordinated Action, such deposition may be used in the MDL Proceeding
and each Coordinated Action for all purposes permitted under the jurisdiction's applicable rules
without regard to whether any MDL Plaintiffs' Counsel or any MDL Defendants' Counsel or
any counsel representing plaintiffs or defendants in any Coordinated Action attend or cross-
examine at the noticed deposition.

E.     **Participation in Written Discovery in the MDL Proceeding**

24.     At least one Co-Lead Counsel for the MDL Plaintiffs, or their designee, and
Plaintiffs' Federal/State Liaison Counsel, shall confer with Plaintiffs' Liaison Counsel in the
Coordinated Actions, or their designees, in advance of the service of requests for written
discovery in the MDL Proceeding, taking such steps as may be necessary to avoid additional
interrogatories, depositions on written questions, requests for admission and requests for
documents in the Coordinated Actions.

25.     Plaintiffs' Liaison Counsel in any Coordinated Action may submit requests
for documents, interrogatories, depositions on written questions and requests for admission
to MDL Co-Lead Counsel for Plaintiffs and Plaintiffs' Federal/State Liaison Counsel for
inclusion in the requests for documents, interrogatories, depositions on written questions,

11

and requests for admission to be propounded in the MDL Proceeding.  Such requests shall

be included in the requests propounded in the MDL Proceeding, provided that:

> (a)  the requests for documents, interrogatories, depositions on written questions
> and/or requests for admission are submitted to MDL Plaintiff Liaison Counsel
> and Plaintiffs' Federal/State Liaison Counsel within ten (10) calendar days after
> MDL Plaintiff Liaison Counsel have notified Plaintiffs' Liaison Counsel in the
> Coordinated Actions of MDL Plaintiffs' intent to serve such discovery; and

> (b)  the requests are non-duplicative of requests proposed by MDL Plaintiffs' Co-
> Lead Counsel.

The number of interrogatories permitted in the MDL Proceeding will be subject to such

limitations as are imposed by Rule or Order of the MDL Court.

26.     Requests for documents, interrogatories, depositions on written questions and

requests for admission in addition to those served in the MDL Proceeding (whether directed to

the merits or class certification) may be propounded in a Coordinated Action only upon leave

of the court in which the Coordinated Action is pending, obtained on noticed motion for good

cause shown, including why the discovery sought could not have been obtained in coordinated

discovery in the MDL Proceeding.  A motion for leave to serve additional document requests,

interrogatories, depositions on written questions and/or requests for admission which were

proposed by Plaintiffs' Liaison Counsel in a Coordinated Action in accordance with paragraph

25 and which were not included in the discovery requests served by Lead Counsel in the MDL

Proceeding shall be filed in the court on notice within twenty-one (21) calendar days of service

of the Lead Counsel's discovery request from which those requests for documents,

interrogatories, depositions on written questions and/or requests for admission were omitted.

27.     All parties to the MDL Proceeding shall be entitled to receive copies of

responses to interrogatories, responses to depositions on written questions, responses to

requests for admission, and documents produced in any Coordinated Action. Any party or counsel otherwise entitled under this order to receive copies of discovery from other parties or counsel shall reimburse the producing party for actual out-of-pocket costs incurred in connection with the copying and shipping of such discovery (including but not limited to document productions) and shall use such materials only in accordance with the terms of the MDL Discovery Orders.

28.    Any counsel representing a plaintiff in a Coordinated Action shall, in accordance with any Orders of the MDL Court entered in the MDL Proceeding and subject to the terms of the MDL Discovery Orders, have access to any document depository that may be established by the parties to the MDL Proceeding.

**F.    Discovery Dispute Resolution**

29.    Prior to any party in the MDL filing a discovery motion, the parties must first attempt to resolve the dispute in good faith and in accordance with the procedures and requirements outlined in the Court's Individual Rules and Practices in Civil Cases and the Court's standard Case Management Plan and Scheduling Order, both of which are available at http://www.nysd.uscourts.gov/judge/Furman.

30.    In the event that the parties are not able to resolve any disputes that may arise in the coordinated pretrial discovery conducted in the MDL Proceeding, including disputes as to the interpretation of the MDL Discovery Orders, such disputes will be presented to the MDL Court.  Resolution of such disputes shall be pursuant to the applicable federal or state law, as required, and such resolution may be sought by any party permitted by this Order to participate in the discovery in question.  In the event that additional discovery is sought in a Coordinated Action and the parties to that action are not able to resolve any discovery disputes that may arise in connection with that additional discovery, such disputes will be presented to the Court

13

in which that Coordinated Action is pending in accordance with that jurisdiction's rules and procedures.

31.     Nothing contained herein shall constitute or be deemed to constitute a waiver of any objection of any defendant or plaintiff to the admissibility at trial, of any documents, deposition testimony or exhibits, or written discovery responses provided or obtained in accordance with this Order, whether on grounds of relevance, materiality or any other basis, and all such objections are specifically preserved. The admissibility into evidence in any Coordinated Action of any material provided or obtained in accordance with this Order shall be determined by the Court in which such action is pending.

**G.     Implementing This Order**

32.     Any court before which a Coordinated Action is pending may join this Order, thereby authorizing the parties to that Coordinated Action to participate in coordinated discovery as and to the extent authorized in this Order.

33.     Each Court that joins this Order shall retain jurisdiction to modify, rescind, and/or enforce the terms of this Order.

SO ORDERED.

Date:   September 24, 2014
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

Attachments:

Exhibit A:     MDL Discovery Orders
Exhibit B:     MDL Co-Lead Counsel, Plaintiff Liaison Counsel, and Federal/State
               Liaison Counsel

14

# EXHIBIT A

Case 1:14-md-02543-JMF  Document 3254  Filed 09/10/14  Page 1 of 25

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/10/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*
-----------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

ORDER NO. 10

JESSE M. FURMAN, United States District Judge:

**[Protecting Confidentiality and Privileged Materials]**

Defendants and Lead Counsel for the Multidistrict Litigation ("MDL") 2543 Plaintiffs having consented thereto, and for good cause shown,

WHEREAS, the Court has advised all Parties that there is a presumption in favor of public access, particularly in a case of this nature, and that unless the Court determines — based on a written application — that there is a reason justifying something be filed in redacted form or under seal, any filings are public and publicly available to the press and the public alike; and

WHEREAS, it is the Court's sole province to authorize a pleading and/or document to be filed under seal; the Court grants this protective order recognizing that Defendants intend to include "blanket confidential designations" so as to immediately provide bulk production of millions of pages of documents. Plaintiffs will be allowed to challenge any specific document designation as discovery proceeds within the framework of this Order;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the documents and other information, including the substance and content thereof, designated by any party as confidential and proprietary, and produced by that party in response to any formal or informal request for discovery in any of the cases consolidated in the above-captioned MDL 2543, shall be subject to the terms of this Consent Protective Order ("Protective Order" or "Order"), as set forth below:

The purpose of this Order is to expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, and protect material to be kept confidential or privileged, pursuant to the Court's inherent authority, its authority under Federal Rule of Civil Procedure 26(c) and Federal Rule of Evidence 502(d), and the judicial opinions interpreting such Rules.

## I.   CONFIDENTIALITY.

1.   *Information.*  "Information" includes the contents of documents and other data, any data and information associated with documents (whether physical or in electronic format), oral and written testimony, answers to interrogatories, admissions, and data and information derived from objects other than documents, produced or disclosed in these proceedings by any party to the above-captioned litigation or by any third party (the "Producing Party") to any other party or parties, subject to the provisions in Paragraphs 5 and 6 of this Order (the "Receiving Party").

2.   *Confidentiality Designations.*  This Order covers Information that the Producing Party designates "Confidential" or "Highly Confidential."  Information may be designated as Confidential when (i) the Producing Party reasonably believes that the Information constitutes, reflects, discloses or contains Information subject to protection under Federal Rule of Civil Procedure 26(c) or other confidential, non-public information, or (ii) the Producing Party reasonably believes that the documents or information includes material protected by federal, state, or foreign data protection laws or other privacy obligations, including (but not limited to) consumer and third-party names, such as the first and last names of persons involved in an accident or of other individuals not directly involved in an accident but included in documents related to an accident; Social Security Numbers; health information relating to the past, present or future physical or mental health or condition of an individual; the provision of health care to an

2

individual, or the past, present or future payment for the provision of health care to an individual;
driver's license or other identification numbers; personal financial information such as tax
information, bank account numbers, and credit card numbers; insurance claim numbers; insurance
policy numbers; VIN numbers; or the personal email addresses or other contact information of
GM board members and employees ("Personal Information"). Information may be designated as
Highly Confidential when: (i) the Producing Party reasonably believes that the documents or
information contain competitively sensitive information regarding future product designs or
strategies, commercial or financial information, or other sensitive information, the disclosure of
which to third party competitors may result in commercial harm; or (ii) the Producing Party
reasonably believes that the documents or information includes Personal Information. Subject to
provisions of Paragraph 3(b), the parties shall make Confidential and Highly Confidential
designations in good faith to ensure that only those documents that merit Confidential or Highly
Confidential treatments are so designated.

3.     *Procedure for Confidentiality Designations.*

(a)     *Designation.*   To designate Information as Confidential or Highly
Confidential, a Producing Party must mark it or identify it on the record as such. Either
designation may be withdrawn by the Producing Party.

(b)     *Bulk Designation.*   To expedite production of potentially voluminous
materials — such as the productions referenced in Paragraph 11(d) — a Producing Party
may, but is not required to, produce materials without a detailed confidentiality review,
subject to the "clawback" procedures in Paragraphs 3(f) and 10 of this Order or as
otherwise agreed to. In so doing, the Producing Party may designate those collections of
documents that by their nature contain "Confidential" or "Highly Confidential"

3

Information with the appropriate designation notwithstanding that some of the documents within the collection may not qualify for such designation. The materials that may be so designated shall be limited to the types or categories of documents that the Producing Party reasonably believes may contain Highly Confidential Information, as defined in Paragraph 2 of this Order. Notwithstanding the foregoing, a Receiving Party may at any time challenge the designation of one or more particular documents as Confidential or Highly Confidential on the grounds that it does not or they do not qualify for such protection. If the Producing Party agrees, it must promptly notify all Receiving Parties that it is withdrawing or changing the designation.

(c) *Marking*. All or any part of a document, tangible object, discovery response, or pleading disclosed, produced, or filed by a Producing Party may be designated Confidential or Highly Confidential by marking the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL") on the face of the document and each page so designated. With respect to tangible items or electronically stored Information produced in native format, the appropriate legend shall be marked on the face of the tangible item or media containing electronically stored Information, if practicable, or by written notice to the Receiving Party at the time of disclosure, production or filing that such tangible item or media is Confidential or Highly Confidential or contains such Information.

(d) *Redaction*. Any Producing Party may redact from the documents and things it produces any Highly Confidential Information, as defined in Paragraph 2, or any matter that the Producing Party claims is subject to attorney-client privilege, work-product protection, a legal prohibition against disclosure, or any other privilege or immunity. The

4

Producing Party shall mark each thing where matter has been redacted with a legend stating "REDACTED," "CBI," "PRIVACY," "PII," "NON-RESPONSIVE," "PRIVILEGED," or a comparable notice. Where a document consists of more than one page, each page on which Information has been redacted shall be so marked. The Producing Party shall preserve an unredacted version of each such document. The process for challenging the designation of redactions shall be the same as the process for challenging the designation of Confidential Material and Highly Confidential Material set forth in Paragraph 6. If counsel for the Producing Party agrees that Information initially redacted shall not be subject to redaction or shall receive alternative treatment, or if the Court orders that those materials shall not be subject to redaction or shall receive alternative treatment, and the Information is subsequently produced in unredacted form, then that unredacted Information shall bear the legend "Highly Confidential" and shall continue to receive the protections and treatment afforded to documents bearing the Highly Confidential designation.

(e)    *Timing*. Subject to the provisions of Paragraphs 3(f) and 10, documents and other objects must be designated as Confidential or Highly Confidential, and redactions must be applied to Highly Confidential Information, before disclosure. In the event that a Producing Party designates some or all of a witness's deposition testimony as Confidential or Highly Confidential, the specific page and line designations over which confidentiality is claimed must be provided to the Receiving Party within thirty (30) days of receipt of the final transcript, provided, however, that the Receiving Party will consider reasonable requests for an extension of the deadline. Deposition testimony shall be treated as Highly Confidential pending the deadline.

(f)    *Errors.* Disclosure of Confidential or Highly Confidential Information does not waive the confidential status of such Information.  In the event that Confidential or Highly Confidential Information is disclosed without a marking or designation of it as such, the Producing Party may thereafter assert a claim or designation of confidentiality, and promptly provide replacement media.  Thereafter, the Receiving Party must immediately return the original Confidential or Highly Confidential Information and all copies of the same to the Producing Party and make no use of such Information.

4.    *Challenges to Confidentiality Designations.*  Any party may object to the propriety of the designation of specific material as Confidential or Highly Confidential by serving a written objection upon the Producing Party's counsel. The Producing Party or its counsel shall thereafter, within ten calendar days, respond to such objection in writing by either: (i) agreeing to remove the designation; or (ii) stating the reasons for such designation.  If the objecting party and the Producing Party are subsequently unable to agree upon the terms and conditions of disclosure for the material(s) in issue, the objecting party may move the Court for an order withdrawing the designation as to the specific designation on which the Parties could not agree. Counsel may agree to a reasonable extension of the ten-day period, if necessary.  On such a motion, the Producing Party shall have the burden of proving that "good cause" exists for the designation at issue and that the material is entitled to protection as Confidential or Highly Confidential Information under applicable law.  In the event a motion is filed by the objecting party, the Information at issue shall continue to be treated in the manner as designated by the Producing Party until the Court orders otherwise.  A Receiving Party does not waive its right to challenge a Confidential or Highly Confidential designation by electing not to raise a challenge promptly after the original designation is disclosed and may challenge a designation at such time as the Receiving Party deems

appropriate. Each party shall bear its own fees and costs related to any challenges of confidentiality designations under this Protective Order.

5.   *Access to Confidential Information.*   The Receiving Party may share Confidential Information with only the following persons and entities related to each of the cases consolidated in the above-captioned MDL 2543:

(a)   The Court and its staff;

(b)   Parties to any of the actions consolidated in the above-captioned MDL 2543;

(c)   Parties' counsel;

(d)   Counsel (and their staff) for parties to any of the federal or state court actions alleging injuries related to the ignition switch and/or other parts in vehicles recalled by General Motors LLC that are the subject of MDL 2543 ("Related Litigation"), provided that (i) the proposed recipient agrees to be bound by this Order and signs the certificate attached hereto as Appendix A; (ii) the proposed recipient agrees to be bound by any discovery-related or protective Orders, including Federal Rule of Evidence 502(d) Orders, that may be entered in MDL 2543; (iii) counsel for the party that supplies the Confidential Information to such recipient maintains copies of the certificates and a log identifying each such recipient; and (iv) upon a showing by a party that Confidential Information has been used in violation of this Order, counsel shall provide copies of the log and certificate to the Court for *in camera* review;

(e)   Court reporters (including audio and video), interpreters, translators, copy services, graphic support services, document imaging services, and database or coding services retained by counsel, provided that these individuals or an appropriate company

7

official with authority to do so on behalf of the company executes a certification attached hereto as Appendix A;

  (f)  Special masters;

  (g)  Mediators;

  (h)  The direct staff of those identified in Paragraphs 5(c), 5(f), and 5(g);

  (i)  Deponents and trial witnesses during a deposition or trial who have a reasonable need to see the Confidential Information in order to provide testimony, provided such witness executes a certification in the form attached hereto as Appendix A;

  (j)  Any expert or consultant, and his, her or its staff, hired by a party for litigation purposes who agrees to be bound by this Order and signs the certificate attached hereto as Appendix A; and

  (k)  Any other person to whom the Producing Party, in writing, authorizes disclosure.

6.  *Access to Highly Confidential Information.* The Receiving Party may share Highly Confidential Information with only the following persons and entities related to each of the cases consolidated in the above-captioned MDL 2543:

  (a)  The Court and its staff;

  (b)  Court reporters (including audio and video), interpreters, translators, copy services, graphic support services, document imaging services, and database or coding services retained by counsel, provided that these individuals or an appropriate company official with authority to do so on behalf of the company executes a certification attached hereto as Appendix A;

8

    (c)     Mediators and their staff, provided that such persons execute a certification attached hereto as Appendix A;

    (d)     Co-lead counsel, executive committee members, and liaison counsel in the above-captioned MDL 2543, as well as counsel for parties in Related Litigation, the Receiving Party's external counsel, and a Receiving Party's internal counsel whose primary responsibilities include overseeing litigation in the above-captioned MDL 2543, and their direct staff, provided that (i) the proposed recipient agrees to be bound by this Order and signs the certificate attached hereto as Appendix A; (ii) the proposed recipient agrees to be bound by any discovery-related or protective Orders, including Federal Rule of Evidence 502(d) Orders, that may be entered in MDL 2543; (iii) counsel for the party that supplies the Highly Confidential Information to such recipient maintains copies of the certificates and a log identifying each such recipient; and (iv) upon a showing by a party that Highly Confidential Information has been used in violation of this Order, counsel shall provide copies of the log and certificate to the Court for *in camera* review;

    (e)     Persons who prepared, received, or reviewed the Highly Confidential Information prior to its production and who execute a certification in the form attached hereto as Appendix A;

    (f)     A witness during a hearing, a deposition, or preparation for a deposition who is a current employee of the Party that produced the applicable document(s) or who appears, based upon the document itself or testimony in a deposition, to have specific knowledge of the contents of the documents designated "HIGHLY CONFIDENTIAL," provided such witness executes a certification in the form attached hereto as Appendix A;

(g)     Outside experts, consultants, or other agents retained by a party for litigation purposes, provided such expert, consultant, or agent executes a certification in the form attached hereto as Appendix A; and

(h)     Any other person to whom the Producing Party, in writing, authorizes disclosure.

7.     *Use of Confidential and Highly Confidential Information.*

(a)     *Restricted to This Proceeding and Related Litigation.*   Confidential Information and Highly Confidential Information must be used only in this proceeding, or in any Related Litigation, except that nothing in this Protective Order shall be construed as limiting any party from disclosing a potential safety defect to an appropriate government agency.

(b)     *Acknowledgement.* Subject to the restrictions contained in Paragraphs 5 and 6, the persons identified in Paragraphs 5 and 6 may receive or review Confidential or Highly Confidential Information.  All persons specifically designated in Paragraphs 5 and 6 must execute the certificate attached hereto as Appendix A or affirm on the record that he or she will not disclose Confidential or Highly Confidential Information revealed during a deposition and will keep the transcript confidential.

(c)     *Filings.* All parties shall make reasonable efforts to avoid requesting the filing of Confidential or Highly Confidential Information under seal by, for example, redacting or otherwise excluding from a submission to the Court any such Information not directly pertinent to the submission.  Where not reasonably possible, any Party wishing to file a document or paper containing Confidential or Highly Confidential Information may request by motion that such Information be filed under seal.

(d)    *Hearings.* In the event that a Receiving Party intends to utilize Confidential
or Highly Confidential Information during a pre-trial hearing, such Receiving Party shall
provide written notice no less than five days prior to the hearing, to the Producing Party
and to the Court, except that shorter notice may be provided if the Receiving Party could
not reasonably anticipate the need to use the document at the hearing five days in advance,
in which event notice shall be given immediately upon identification of that need. The use
of such Confidential or Highly Confidential Information during the pre-trial hearing shall
be determined by agreement of the parties or by Order of the Court.

(e)    *Trial.* The use of Confidential or Highly Confidential Information during
the trial shall be determined by Order of the Court.

(f)    *Subpoena by Other Courts or Agencies.* If another court or an
administrative agency subpoenas or otherwise orders production of Confidential or Highly
Confidential Information that any Party or other person has obtained under the terms of
this Order, the Party or other person to whom the subpoena or other process is directed
must notify the Producing Party in writing within five days of all of the following: (a) the
discovery materials that are requested for production in the subpoena; (b) the date by which
compliance with the subpoena is requested; (c) the location at which compliance with the
subpoena is requested; (d) the identity of the party serving the subpoena; and (e) the case
name, jurisdiction and index, docket, complaint, charge, civil action or other identification
number or other designation identifying the litigation, administrative proceeding or other
proceeding in which the subpoena or other process has been issued. Confidential or Highly
Confidential Information shall not be produced prior to the receipt of written notice by the
Producing Party and after a reasonable opportunity to object has been offered. Further, the

party or person receiving the subpoena or other process will cooperate with the Producing

Party in any proceeding related thereto. The Producing Party will bear the burden and all

costs of opposing the subpoena on grounds of confidentiality.

8.    *Return of Discovery Materials.*  Within ninety days of the termination of any party

from all proceedings in this proceeding, that party, its employees, attorneys, consultants and

experts must destroy or return (at the election of the Receiving Party) all originals and/or copies

of documents with Confidential Information or Highly Confidential Information, provided

however, that the obligation to destroy or return such documents that is imposed on counsel,

consultants and experts representing multiple parties shall not occur until the last of their

represented parties has been terminated from the foregoing referenced proceedings.  At the written

request of the Producing Party, any person or entity having custody or control of recordings, notes,

memoranda, summaries or other written materials, and all copies thereof, related to or containing

discovery materials produced by the Producing Party (the "Discovery Materials") shall deliver to

the Producing Party an affidavit certifying that reasonable efforts have been made to assure that

all Discovery Materials (except for privileged communications, work product and court-filed

documents as stated above) have been destroyed or delivered to the Producing Party in accordance

with the terms of this Protective Order. A Receiving Party is permitted to retain a list of the

documents by Bates Number that are produced by a Producing Party under this Protective Order.

## II.    PRIVILEGES.

9.    *No Waiver by Disclosure.*

(a)    This Order is entered, *inter alia*, pursuant to Rule 502(d) of the Federal

Rules of Evidence.  If a Producing Party discloses information in connection with the

pending litigation that the Producing Party thereafter claims to be privileged or protected

12

by the attorney-client privilege or attorney work product protection ("Disclosed Protected Information"), the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Protected Information and its subject matter in this proceeding or in any other federal or state proceeding.

(b)     A Producing Party may assert in writing attorney-client privilege or work product protection with respect to Disclosed Protected Information. The Receiving Party must—unless it contests the claim of attorney-client privilege or work product protection in accordance with sub-paragraph (c)—within five business days of receipt of that writing, (i) return or destroy all copies of the Disclosed Protected Information, and (ii) provide a certification of counsel that all of the Disclosed Protected Information has been returned or destroyed. Within five business days of receipt of the notification that the Disclosed Protected Information has been returned or destroyed, the Producing Party must produce a privilege log with respect to the Disclosed Protected Information.

(c)     If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must — within five business days of receipt of the claim of privilege or protection — move the Court for an Order compelling disclosure of the Disclosed Protected Information (a "Disclosure Motion"). The Receiving Party must seek to file the Disclosure Motion under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure, and may not disclose, rely on or refer to any of the Disclosed Protected Information. Pending resolution of the Disclosure Motion, the Receiving Party must sequester the Disclosed Protected Information and not

13

use the Disclosed Protected Information or disclose it to any person other than as required by law.

(d)     The parties may stipulate to extend the time periods set forth in sub-paragraphs (ii) and (iii).

(e)     Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

(f)     The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information.  Nothing in this paragraph shall limit the right of any party to petition the Court for an *in camera* review of the Disclosed Protected Information.

10.     *Receiving Party's Obligation.*  Nothing in this Order shall relieve counsel for any Receiving Party of any existing duty or obligation, whether established by case law, rule of court, regulation or other source, to return, and not to review, any privileged or work product materials without being requested by the Producing Party to do so.  Rather, in the event a Receiving Party becomes aware that it is in possession of what appears to be privileged documents or materials, then counsel for the Receiving Party shall immediately: (i) cease any further review or use of that document or material and (ii) notify the Producing Party of the apparent production of Disclosed Protected Information, requesting whether the documents or materials are Disclosed Protected Information.  In the event the Producing Party confirms the documents or material are Disclosed Protected Information, the Receiving Party shall (i) promptly return or destroy all copies of the

14

Disclosed Protected Information in its possession and (ii) take reasonable steps to retrieve all copies of the Disclosed Protected Information distributed to other counsel or non-parties.

11.     *Privilege Log Production.*

(a)     Unless otherwise provided in this Order, any document falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party on a privilege log, which the Producing Party shall produce in an electronic format that allows text searching. For administrative purposes, an e-mail thread contained within a single document need only be recorded once on the Producing Party's privilege log, even if a privilege is asserted over multiple portions of the thread. Redacted documents need not be logged as long as (a) for emails, the bibliographic information (i.e. to, from, cc, bcc, recipients, date and time) is not redacted, and the reason for the redaction is noted on the face of the document; and (b) for non-email documents, the reason for the redaction is noted on the face of the document. Documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

(b)     Privilege log identification is not required for work product created by counsel, or by an agent of counsel other than a party, after January 31, 2014, or for post-January 31, 2014 communications exchanged between or among: (i) the Producing Party and their counsel; (ii) counsel for the Producing Party; (iii) counsel for Plaintiffs; and/or (iv) counsel for Defendants. Privilege log identification is also not required for: (i) communications between a Producing Party and its counsel in proceedings other than MDL 2543; (ii) work product created by a Producing Party's counsel, or by an agent or contractor

15

of counsel other than the Producing Party, in proceedings other than MDL 2543; (iii) internal communications within: (a) a law firm representing a party or (b) a legal department of a party that is a corporation or another organization.

(c)     In order to avoid unnecessary cost, the parties are encouraged to identify categories of privileged information that may be logged categorically rather than document-by-document. (*See* Advisory Committee Note to Fed. R. Civ. P. 26(b)(5) (1993).) The parties shall meet and confer on this issue and raise with the Court either: (i) agreements reached with respect to documents that the parties have agreed to log by category, or (ii) proposals for logging other than document-by-document that have been proposed by one or more Producing Parties, but which have not been agreed to by the Receiving Parties. The parties should keep in mind that the Court's intention is to enable the parties to minimize the cost and resources devoted to privilege logging, while enabling the Court and Receiving Party to assess the assertions of privilege made by the Producing Party.

(d)     The Defendants, where applicable, will post to the MDL 2543 Document Depository privilege logs relating to (i) the productions made in response to the plaintiffs' requests for production in any Related Litigation (as defined in Paragraph 5(d)) at the same time these logs are due in the Related Litigation; (ii) the productions made in response to the National Highway Traffic Safety Administration's pre-August 22, 2014 requests at the same time these logs are due in *Melton v. General Motors LLC*, No. 14A-1197-4 (Ga. Cobb Cnty. St.) (*"Melton"*); and (iii) certain productions made in response to Congressional Committees' pre-August 22, 2014 requests at the same time these logs are due in *Melton*. Thereafter, a Producing Party shall produce privilege logs no later than thirty (30) days

16

after withholding from production documents pursuant to a claim of privilege, but in any event the Defendants are not required to produce supplemental privilege logs any earlier than sixty (60) days after the initial document production deadline in *Melton*.

## III.   MISCELLANEOUS.

12.    *Violations of the Protective Order by a Receiving Party.*  In the event that any person or party violates the terms of this Protective Order, the aggrieved Producing Party should apply to the Court to obtain relief against any such person or party violating or threatening to violate any of the terms of this Protective Order.  In the event that the aggrieved Producing Party seeks injunctive relief, it must direct the petition for such relief to this Court.  To the extent the same document or categories of documents are at issue in both the above-captioned MDL 2543 and in any Related Litigation, the Parties will attempt first to resolve the issue in the MDL and before this Court.  The parties and any other person subject to the terms of this Protective Order agree that this Court shall retain jurisdiction over it and them for the purpose of enforcing this Protective Order.

13.    *Violations of the Protective Order by Disclosure of Personal Information.*  In the event that any person or party violates the terms of this Protective Order by disclosing Confidential Personal Information or Highly Confidential Information relating to an individual third party, as defined in Paragraph 2 of this Order, or in the event that any person or party breaches the terms of the Protective Order in a manner that requires disclosure to a third party under pertinent privacy laws or otherwise, it shall be the responsibility of the breaching party to contact that third party and to comply with any laws or regulations involving breaches of Personal Information.

14.    *Protective Order Remains In Force:*  This Protective Order shall remain in force and effect until modified, superseded, or terminated by order of the Court made upon reasonable

written notice. Unless otherwise ordered, or agreed upon by the parties, this Protective Order shall

survive the termination of this action. The Court retains jurisdiction even after termination of this

action to enforce this Protective Order and to make such amendments, modifications, deletions

and additions to this Protective Order as the Court may from time to time deem appropriate.

      SO ORDERED.

Date:   September 10, 2014
        New York, New York

                                           JESSE M. FURMAN
                                 United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
IN RE:
GENERAL MOTORS LLC IGNITION SWITCH       14-MD-2543 (JMF)
LITIGATION       14-MC-2543 (JMF)
*This Document Relates to All Actions*
------------------------------------------------------------------x

## APPENDIX A TO PROTECTIVE ORDER - AGREEMENT

      I hereby certify that I have read the Order Protecting Confidentiality ("Order") entered in

the above-captioned action and that I understand the terms thereof. I agree to be bound by the

Order. If I receive documents or information designated as Confidential or Highly Confidential,

as those terms are defined in the Order, I understand that such information is provided to me

pursuant to the terms and restrictions of the Order. I agree to hold in confidence and not further

disclose or use for any purpose, other than as permitted by the Order, any information disclosed to

me pursuant to the terms of the Order. I further agree to submit to the jurisdiction of this Court for

purposes of enforcing the Order and agree to accept service of process in connection with this

action or any proceedings related to enforcement of the Order by certified letter, return receipt

requested, at my principal residence, in lieu of personal service or other methods of service.

      I understand that these certifications are strictly confidential, that counsel for each party

are maintaining the certifications without giving copies to the other side, and that the parties

expressly agreed and the Court ordered that except in the event of a violation of this Order, the

parties will make no attempt to seek copies of the certifications or to determine the identities of

persons signing them. I further understand that if the Court should find that any disclosure is

necessary to investigate a violation of this Order, the disclosure will be limited to outside counsel

only, and outside counsel shall not disclose any information to their clients that could tend to

identify any certification signatory unless and until there is specific evidence that a particular

signatory may have violated the Order, in which case limited disclosure may be made with respect
to that signatory.

_____

(signature)

_____

(print name)

Sworn to and subscribed before me this ____day of
_____, 2014.

_____

Notary Public

Case 1:14-md-02543-JMF   Document 8295   Filed 09/10/14   Page 1 of 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to All Actions*

----------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  09/10/2014

14-MD-2543 (JMF)
14-MC-2543 (JMF)

ORDER NO. 11

JESSE M. FURMAN, United States District Judge:

**[Regarding Production of Documents and Electronic Data]**

WHEREAS, Defendants and Lead Counsel for the Plaintiffs have met and conferred on the procedures and format relating to the production of documents and things, and having agreed on a format for all such productions, it is SO ORDERED:

1.    **General Format of Production.**    The parties agree to produce documents (including Hard Copy scanned images) in the electronic format described herein.  Production to the MDL 2543 Document Depository by a party (the "Producing Party") shall be deemed sufficient to constitute production to all parties (the "Receiving Party").

2.    **Hard Copy Scanned Images.**    To the extent practicable, Hard Copy scanned images shall be produced in the manner in which those documents were kept in the ordinary course of business.  Where Hard Copy scanned images have identification spines, "post-it notes," or any other labels, the information on the label shall be scanned and produced to the extent practicable. The parties will utilize reasonable best efforts to ensure that Hard Copy scanned images in a single production are produced in consecutive Bates number order.

3.    **Images.**    Images will be produced as Single Page Group IV, 300 DPI, when reasonably practicable, Black and White TIF images named as the Bates number.  Page level Bates numbers will be branded in the lower right of the image and additional legends applied to the lower

left or lower center (if applicable). If the Receiving Party encounters a document where color is needed to comprehend the content, the Producing Party will re-produce that document in a color format upon reasonable request. Common file types that will likely require color will be produced in native format as noted below. The following formatting will be applied to Microsoft Office documents:

> (a)     Word Documents will be imaged showing Track Changes.

> (b)     Excel files with redactions will be imaged un-hiding any hidden rows and/or columns and/or sheets.

> (c)     PowerPoint files will be imaged in Notes Pages.

4.     **Native Files.** In addition to TIF images, native files will be provided for PowerPoint, and JPG when corresponding images and any embedded items are not redacted. For files that cannot be imaged (e.g., .wav, .mpeg and .avi) or become unwieldy when converted to TIF (e.g., source code, large diagrams, etc.), the producing party will produce a placeholder (a single-page TIF slipsheet indicating that the native item was produced) along with the file itself in native format. Excel and CSV files will only be provided in native format with a placeholder, unless they have redactions. Redacted documents will be produced in TIF format. The native file will be named as the first Bates number of the respective document. The corresponding load file shall include native file link information for each native file that is produced.

5.     **Agreed File Types Other Than Database Records.** The Producing Party will process the file types listed in Appendix B, unless processing is disproportionate, or overly broad or unduly burdensome, in which case the parties will meet and confer. The Producing Party will also meet and confer in good faith with the Receiving Party regarding requests to modify the file types listed in Appendix B

2

6.     **Metadata.** A standard Concordance delimited load file (.DAT), with field header information added as the first line of the file, will be provided with each production. Documents will be produced with related metadata (to the extent it exists) as described in the attached Appendix A specifications, unless as otherwise provided herein.

7.     **Image Cross Reference.** A standard Opticon (.OPT) file will be provided with each production that contains document boundaries.

(a)     **Format:**

<Bates Number>,<Not Required >,<Relative Path to TIF Image>,<Y if First Page of Document, Else Blank>,,,<If First Page of Document, Total Page Count>

(b)     **Example:**

GM000000001,,\IMAGES\001\GM00000001.TIF,Y,,,,2
GM000000002,,\IMAGES\001\GM00000002.TIF,Y,,,,
GM000000003,,\IMAGES\001\GM00000003.TIF,Y,,,,1

8.     **Text.** Document level text files (.TXT) will be provided for each document produced. Text files will be named the first Bates number of the respective document. Extracted text will be provided when it exists for non-redacted documents. OCR Text will be provided for documents when no extracted text exists or when the document is redacted.

9.     **De-Duplication.** Data will be de-duplicated across custodians following industry standard de-duplication algorithms. Additional custodians who had a copy prior to de-duplication will be populated in the ALL_CUSTODIANS field.

10.     **Related Documents.** Email attachments will be extracted and related back to the respective email via the ATTACH_BEGIN field referenced in Appendix A. Embedded ESI documents (e.g., a spreadsheet embedded within a word processing document) will be extracted and related back to the respective top level parent document (e.g., standalone file, email message,

3

etc.) via the ATTACH_BEGIN field referenced in Appendix A. Related documents will be produced within a continuous Bates range.

11. **Confidentiality Designations**. If a particular document has a confidentiality designation, the designation shall be stamped on the face of all TIF images pertaining to such document, in the lower left-hand corner of the document, or as close thereto as possible while preserving the underlying image. If the receiving party believes that a confidentiality stamp obscures the content of a document, then the Receiving Party may request that the document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including the Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any document produced by any Producing Party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the document.

12. **Specialized Databases**. The parties agree to meet and confer regarding the production of reasonably accessible enterprise database-application files (e.g., SQL and SAP) and non-standard ESI responsive to the parties' requests to determine the most reasonable form of production based on the specific circumstances.

13. **Metadata Of Redacted Or Withheld Documents**. When a document or email is redacted or withheld, all metadata on a family level is excluded from the metadata DAT file.

14. **Encoding Format**. Text files, concordance load files, and Opticon image reference files will be provided in UTF-8 encoding.

15. **Search Terms**. Other than the document production referenced in the parties' proposed September 4, 2014 status conference letter (ECF No. 272 § 1), a Producing Party will

4

produce ESI in its possession according to agreed-upon search term criteria (including custodians and date ranges), except in instances where the parties agree that an alternative reasonable search would be more appropriate. Documents identified by search term criteria may be reviewed for privilege, confidentiality, redactions, and relevance or responsiveness prior to production.

16. **Not Reasonable Accessible Sources.** The parties have taken reasonable steps to identify and/or collect potentially relevant ESI stored on reasonably accessible sources. On or before October 1, 2014, the parties shall provide a description of sources of electronic data which may have potentially relevant information, but which the parties do not intend to search on the basis that such data is alleged to be not reasonably accessible due to burden or cost (in accordance with Rule 26(b)(2)(B)).

17. **ESI Discovery Dispute Resolution.** Prior to bringing any discovery dispute to the Court, the parties must attempt to resolve the dispute on their own, in good faith, and in accordance with the procedures and requirements outlined in the Court's Individual Rules and Practices in Civil Cases and the Court's standard Case Management Plan and Scheduling Order, both of which are available at http://www.nysd.uscourts.gov/judge/Furman.

18. **Disclosed Protected Information And/Or Otherwise Privileged Information.** Information produced pursuant to this Order that is subject to a claim of privilege shall be treated in a manner consistent with any order entered in this matter pursuant to Federal Rule of Civil Procedure 502(d).

5

19.   **Costs of MDL 2543 Production.**  The parties shall share the cost of the MDL 2543

Document Depository.  Each party shall bear its own costs of production to the MDL 2543

Document Depository.

SO ORDERED.

Dated: September 10, 2014
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

09-50026-smg Doc 13157-3 Filed 05/22/15 Entered 05/22/15 17:06:01 Main Document
Case 1:14-md-02543-JMF Document 892 Filed 05/22/15 Page 53 of 67
Pg 371 of 588

Case 1:14-md-02543-JMF Document 295 Filed 09/10/14 Page 42 of 96

Appendix A

| | | | | |
|---|---|---|---|---|
| BATES_BEGIN | First bates number assigned to the first page of the document. | X | X | X |
| BATES_END | Last bates number assigned to the last page of the document. | X | X | X |
| ATTACH_BEGIN | First bates number assigned to parent. | X | X | X |
| ATTACH_END | Last bates number assigned to the last child. | X | X | X |
| PAGE_COUNT | Number of images provided for the document | X | X | X |
| CUSTODIAN | Individual/Source assigned to the record at collection time | X | X | X |
| ALL_CUSTODIANS | Additional custodians who had a copy prior to de-duplication. | | X | X |
| DOC_TITLE | File property Title | | | X |
| DOC_SUBJECT | File property Subject | | | X |
| CREATED_DATE | File system create date (YYYYMMDD) [Normalized to UTC] | | | X |
| CREATED_TIME | File system create time (24 HR) [Normalized to UTC] | | | X |
| LAST_MODIFY_DATE | File system last modify date (YYYYMMDD) [Normalized to UTC] | | | X |
| LAST_MODIFY_TIME | File system last modify time (24 HR) [Normalized to UTC] | | | X |
| LAST_SAVED_BY | File property Last Saved By | | | X |
| DOC_TYPE | Category of file (e.g. MSG, ATTACH, USERFILE) | X | X | X |
| FILE_TYPE | Type of file (e.g. Word, Excel) | | | X |
| FILE_NAME | Name of file. | | | X |
| FULL_PATH | Path to file as collected. | | | X |
| FILE_EXT | Extension of the file. | | | X |
| AUTHOR | Email FROM value. | | X | |
| CC | Email CC value. | | X | |
| BCC | Email BCC value. | | X | |
| RECIPIENT | Email TO value. | | X | |
| DATE_SENT | Date email sent (YYYYMMDD) [Normalized to UTC] | | X | |
| TIME_SENT | Time email sent (24 HR) [Normalized to UTC] | | X | |
| DATE_RECIEVED | Date email received (YYYYMMDD) [Normalized to UTC] | | X | |
| TIME_RECIEVED | Time email received (24 HR) [Normalized to UTC] | | X | |
| DATE_APPT_START | Date email calendar item start (24 HR) [Normalized to UTC]. | | X | |
| TIME_APPT_START | Time email calendar item end (24 HR) [Normalized to UTC] | | X | |
| EMAIL_FOLDER | Folder where email resided within email container. | | X | |
| SUBJECT | Email Subject value. | | X | |
| TEXT_LINK | Relative path to the document level text file (e.g. \TEXT\0001\GM000000001.TXT) | X | X | X |
| NATIVE_LINK | Relative path to native file (if produced). (.e.g. \NATIVES\001\GM000000001.XLS) | | | X |
| MD5_HASH | Hash of native file. | | X | X |

## APPENDIX B

123
7Z
ACCDB
ADP
ARJ
BAK
BMP
CSV (to be processed as Microsoft Excel)
DBF
DBX
DOC
DOCX
DOT
DOTM
DOTX
DWG
EML
EXE (only for self-extracting archives)
GIF (will only be processed if it is an attachment to a parent email)
GZ
GZIP
HTM
HTML
ID
JPG
MDB
MHT
MHTML
MPP
MSG
NSF
ODT
OTT
OTH
ODM
ODP
ODG
OTP
ODS
OTS
OST
PDF
PNG (will only be processed if it is an attachment to a parent email)
POT
POTX
POTM

PPD
PPS
PPSM
PPSX
PPT
PPTM
PPTX
PS
PSD
PST
PUB
RAR
RM
RTF
SDW
SHTML
SWF
TAR
TC
TIF
TXT
UOP
UOF
UOS
VMDK
VHD
VSD
WAV
WK1
WKS
WK3
WK4
WPC
WPD
XLS
XLW
XLSB
XLSM
XLSX
XLT
XLTM
XLTX
XPS
Z
ZIP

# EXHIBIT B

**Contact Information for Court-Appointed Counsel**

**Co-Lead Counsel:**

Steve Berman

Email: steve@hbsslaw.com

Office: 206-268-9320

Elizabeth Cabraser

Email: ecabraser@lchb.com

Office: 415-956-1000 x 2275

Bob Hilliard

Email: Bobh@hmglawfirm.com

Office: 361-882-1612

**Plaintiff Liaison Counsel:**

Robin Greenwald

Email: rgreenwald@weitzlux.com

Office: 212-558-5802

**Federal/State Liaison Counsel:**

Dawn Barrios

Email: barrios@bkc-law.com

Office: 504-524-3300

## CERTIFICATE OF SERVICE

I hereby certify that I have this day mailed true and exact copies of the foregoing

## ORDER

(through the Cobb County Mail system), to the following:

Lance A. Cooper, Esq.
THE COOPER FIRM
531 Roselane Street, Suite 200
Marietta, Georgia  30060

Robert D. Ingram, Esq.
Jeffrey A. Daxe, Esq.
MOORE INGRAM JOHNSON & STEELE, LLP
326 Roswell Street
Marietta, Georgia  30060

Kyle H. Dreyer, Esq.
HARTLINE DACUS BARGER DREYER LLP
6688 N. Central Expressway, Suite 1000
Dallas, TX  75206

Brian D. Sieve, Esq.
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL  60654

Kenneth R. Bernard, Jr., Esq.
8470 Price Avenue
P.O. Box 1154
Douglasville, Georgia  30133-1154

Jere L. Beasley, Esq.
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL  36104

John E. Hall, Esq.
HALL BOOTH SMITH, P.C.
191 Peachtree Street
Atlanta, Georgia 30303

This _____30th_____ day of September, 2014.

_Ericka Kemp_
Ericka Kemp, Judicial Administrative Specialist
to Kathryn J. Tanksley, Judge, State Court of Cobb
County, Cobb Judicial Circuit

---

**Bramson, Jeffrey S.**

| | |
|---|---|
| **From:** | Sieve, Brian D. |
| **Sent:** | Wednesday, February 11, 2015 10:49 AM |
| **To:** | Doreen Lundrigan |
| **Cc:** | Dale Ellis; *Daxe,Jeffrey; Lance Cooper; Paul Rosenthal; R. Michael Malcom; Regina Auchenbacher; *RIngram@mijs.com; Smith, Renee D. |
| **Subject:** | Re: Pate v. General Motors, et al. |

Lance and Doreen:

New GM has reviewed the draft document requests and interrogatories you sent.  New GM will consent to plaintiffs serving the document requests in this case.  New GM will also consent to plaintiffs serving Interrogatory Nos. 1-6 in this case.  By consenting to service of this discovery, New GM does not waive and expressly reserves all objections it may have to the document requests and interrogatories.

New GM objects to plaintiffs serving Interrogatory Nos. 7-9 in this case because that discovery is more appropriately served in the MDL.   Interrogatory Nos. 7 and 9 pertain to ongoing document production in the MDL, so for consistency Judge Furman should address issues relating to that discovery.

As for Interrogatory No. 8, which deals with OSIs, MDL lead counsel have served discovery requests that seek the same information.  Example RFPs in the Consolidated Discovery Requests that call for same information include:

**No. 77:**

**To the extent not already produced, produce all consumer complaints and reports of incidents, including, but not limited to, reports of crashes, injuries, deaths, accidents, and other incidents or complaints involving airbag non-deployment, loss of speed control, loss of power steering, loss of braking control and other problems, in which it was claimed, alleged, suspected, believed, reported or found to be caused or associated with the concern(s), problem(s), defect(s) or condition(s) that ultimately led to, or were the subject of, Recall Nos. 14v400 and 14v394**

1

EXHIBIT
B

**No. 61:**

**To the extent not already produced, produce all documents, including, but not limited to, any engineering analyses, engineering drawings, design drawings, correspondence with vendors or suppliers, incident reports, change orders, internal testing, any vehicle component level testing, failure mode effect analyses, or cost-benefit analyses, related to any complaint(s), concern(s), problem(s), defect(s) or condition(s) that ultimately led to, or were the subject of, Recall Nos. 14v400 and 14v394.**

Please let me know if we can reach agreement on these issues.  If so, I'll ask Robert or Jeff to prepare a consent order for your review.

Please call me if you want to discuss these issues.

Brian

Sent from my iPad

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone:  312-862-2197
Mobile:  708-732-0192
Fax:  312-862-2200

On Feb 6, 2015, at 2:00 PM, Doreen Lundrigan <doreen@thecooperfirm.com> wrote:

Per the attached Coordination Order, paragraph 26, Plaintiffs seek your consent to serve the attached discovery to General Motors.  Please let me know by next Wednesday if we can submit the attached consent order to Judge Clayton permitting our service of the attached discovery, otherwise per the Coordination Order, we shall move the Court for leave to serve same.

**Doreen Lundrigan**
**The Cooper Firm**
**531 Roselane Street**
**Suite 200**
**Marietta, GA 30060**
**P: 770.427.5588 | F: 770.427.0010**

doreen@thecooperfirm.com | www.thecooperfirm.com
*Follow our blog*
*Marietta Accident Attorney*

<image001.jpg>

<1st Rogs to GM (00069960x7AD86).docx>

<1st RPDs to GM (00069959x7AD86).docx>

<Consent Order (GM Discovery_) (00069901x7AD86).docx>

**Bramson, Jeffrey S.**



On Mar 23, 2015, at 12:50 PM, Pat Dawson <pat@thecooperfirm.com> wrote:

Hi Brian:



EXHIBIT

C

I am following up on your email of February 11, 2015 @ 11:50 a.m. about some of the discovery in Pate.

Thank you for consenting to the service of the RPDs.

We ask, however, that GM also consent to the service of all the interrogatories. First, even if they are "served" in the MDL, we should still serve them in the local Pate case, so that our record is complete. GM can use its MDL answers, and if we think they are insufficient, we can take it up with Judge Clayton.

Also, in response to some of the ROGs, GM has said basically, "see the MDL response. But, those responses do not direct us to specific Bates Numbers. The MDL GM document batch is what? About 41 million? That's a large haystack. If GM is going to answer our ROGS in the Pate case, then we ask that GM give us specific Bates Numbers. The existence of the MDL is supposed to make discovery easier, and not result in us being told to look through a 41,000,000 document haystack in the MDL to work on our Pate case.

Please confirm that we can serve the discovery we have requested, that GM will defer to the MDL responses, and that GM will gives us the Bates Numbers that respond to our discovery requests in Pate.

Please let me know soon, as we may need to take this up with Judge Clayton.

Best regards.

Sincerely,

Patrick A. Dawson
Of Counsel

<image001.png>

531 Roselane Street | Suite 200 | Marietta, GA 30060-6970
(770) 427-5588 | (770) 427-0100 Fax

**CONFIDENTIAL PRIVILEGED CONTENT:** This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 770 427 5588, and destroy the original transmission and its attachments without reading or saving in any manner.

"What the Israelites saw, from high on the ridge, was an intimidating giant. In reality, the very thing that gave the giant his size was also the source of his greatest weakness. There is an important lesson in that for battles with all kinds of giants. The powerful and the strong are not always what they seem."

— Malcolm Gladwell, *David and Goliath: Underdogs, Misfits, and
the Art of Battling Giants*

## Bramson, Jeffrey S.

| | |
|---|---|
| **From:** | Sieve, Brian D. |
| **Sent:** | Tuesday, April 07, 2015 10:45 AM |
| **To:** | Doreen Lundrigan; David, Geoffrey |
| **Cc:** | Lance Cooper; *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson |
| **Subject:** | Pate:  CTS documents in the MDL repository |
| **Attachments:** | GM - Documents Produced For CTS Recalls.xlsx; ATT00001.txt |

Doreen:  per our discussion yesterday morning, attached is a spreadsheet that identifies by Bates numbers the documents GM produced into the MDL repository that GM believes relate generally to the Cadillac CTS.

The attached reflects what was identified as related to the CTS recall as the documents were loaded in the repository. GM is not representing that the attached spreadsheet identifies each and every document in the repository that relates to the CTS.  As you know, the productions in the repository are searchable, and thus plaintiffs are free to conduct their own searches of the productions for additional documents that may relate to the CTS.

Please let Geoff David or me know if you have any questions.

Brian

Sent from my iPad

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone:  312-862-2197
Mobile:  708-732-0192
Fax:  312-862-2200



EXHIBIT
D

1

## Bramson, Jeffrey S.

| | |
|---|---|
| **From:** | Sieve, Brian D. |
| **Sent:** | Wednesday, April 08, 2015 4:38 PM |
| **To:** | Lance Cooper; Doreen Lundrigan; David, Geoffrey |
| **Cc:** | *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson |
| **Subject:** | RE: Pate:  CTS documents in the MDL repository |

Lance:  I do not understand your email.  There appears to be a miscommunication here.

First, plaintiffs have not served any discovery requests in this case.  We are waiting for a consent order that allows plaintiffs (and defendants) to serve their document requests and interrogatories.  Once we agree on a consent order and the discovery is served,  we will respond under the rules.

Second, the five document requests you intend to serve all seek accident specific information.  We will respond to each of those and identify responsive documents.  I do not believe any of those requests implicate the production in the MDL.

Third, Interrogatory Nos. 1-6 that you intend to serve also seek accident specific information.  We will respond to each of those.   I do not believe any of those interrogatories implicate the production in the MDL.

Fourth, Interrogatory No. 9, to which we objected, requests that New GM identify by Bates numbers documents produced in response to Plaintiffs' First Set of Consolidated Request Nos. 61-87.  I assume that when you say "responsive to our discovery" in your email below you are referring to RFPs Nos. 61-87 in the MDL.  (If that is not the case, please let me know.)  Those document requests are no longer operative in the MDL, and New GM has no obligation to search for documents responsive to those specific requests.  After plaintiffs' served the First Set of RFPs, the parties engaged in a series of "meet and confer" conferences to narrow the scope of document production.  After the February status conference, plaintiffs agreed to narrow their document requests.  Plaintiffs then served 112 document requests that superseded the First Set of document requests served on January 30, 2015.  In MDL Order No. 44, the Court ordered New GM to serve written responses to 50 of those 112 requests, all of which related to Phase 1 discovery.  New GM's responses will be served next week.  The parties are then required to meet and confer on further document requests, and unresolved issues will be raised at the April status conference.  Thus, New GM has not identified documents responsive to what you refer to as RFP Nos. 61-87, and it has **no obligation** to do so in the MDL.

However, in an effort to be cooperative, we did identify for you approximately 1,700 documents New GM reasonably believes relate to the Cadillac CTS.  Those documents were identified on the spreadsheet I provided to Doreen earlier this week.  I would also reiterate that the entire production in the repository is searchable, so you have the ability to search for documents on any topic you desire.

In sum, we have gone above and beyond in an effort to help you identify documents that may be potentially relevant in this case.  Because you have no discovery outstanding, and because RFP Nos. 61-87 were withdrawn, GM is not withholding (or failing to identify) documents "responsive to [your] discovery."  With that said, we cannot and will not go back and run new searches for document requests that have been withdrawn by MDL lead counsel.

I trust this addresses your concerns and clears up some confusion.  I suggest that, as I discussed with Doreen earlier this week, the parties agree on a consent order that allows plaintiffs to serve their document requests and interrogatories (Nos. 1-6), New GM to serve its document requests and interrogatories, and New GM to serve the third party subpoenas.  We should get that process going now.  Let's go ahead and serve the discovery to which neither party objects.

1

EXHIBIT
E
Blumberg No. 5119

As always, I'm available to discuss these issues with you. Please let Jeff Daxe and me know if we can agree on a consent order. Jeff will work with you to get that on file promptly. If not, we'll file a motion with the Court seeking consent to serve our discovery and the third-party subpoenas.

Thanks. Brian

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone: 312-862-2197
Mobile: 708-732-0192
Fax: 312-862-2200

-----Original Message-----
From: Lance Cooper [mailto:lance@thecooperfirm.com]
Sent: Tuesday, April 07, 2015 6:31 PM
To: Sieve, Brian D.; Doreen Lundrigan; David, Geoffrey
Cc: *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: RE: Pate: CTS documents in the MDL repository

Brian,

That will not work.

GM needs to identify every document it has produced which is responsive to our discovery. We do not accept GM's position that we need to find the needles in the haystack. Furthermore, if GM has additional documents which are responsive to our discovery which it has not produced in the MDL, it needs to identify those documents and produce them to us separately.

Let me know by Friday what GM intends to do. Thanks.

lance

_____
From: Sieve, Brian D. [bsieve@kirkland.com]
Sent: Tuesday, April 07, 2015 3:46 AM
To: Doreen Lundrigan; David, Geoffrey
Cc: Lance Cooper; *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: Pate:  CTS documents in the MDL repository

Doreen:  per our discussion yesterday morning, attached is a spreadsheet that identifies by Bates numbers the documents GM produced into the MDL repository that GM believes relate generally to the Cadillac CTS.

The attached reflects what was identified as related to the CTS recall as the documents were loaded in the repository. GM is not representing that the attached spreadsheet identifies each and every document in the repository that relates to the CTS.  As you know, the productions in the repository are searchable, and thus plaintiffs are free to conduct their own searches of the productions for additional documents that may relate to the CTS.

Please let Geoff David or me know if you have any questions.

Brian

Sent from my iPad

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone: 312-862-2197
Mobile: 708-732-0192
Fax: 312-862-2200

*************************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*************************************************************

## Bramson, Jeffrey S.

| | |
|---|---|
| **From:** | Bramson, Jeffrey S. |
| **Sent:** | Friday, April 24, 2015 8:54 AM |
| **To:** | 'lance@thecooperfirm.com'; 'doreen@thecooperfirm.com'; 'plr@prestonmalcom.com'; 'rmm@prestonmalcom.com'; 'rca@prestonmalcom.com'; 'dale.ellis.sqvj@statefarm.com' |
| **Cc:** | Sieve, Brian D.; Smith, Renee D.; *RIngram@mijs.com; *Daxe,Jeffrey |
| **Subject:** | Pate v. GM: Discovery Requests |

Lance:

I am writing in response to your proposed interrogatories and RFPs in the *Pate* matter. We consent to service of all of the interrogatories, and to RFP Nos. 1–7, 9, 11–12, and 15.

We object to the remainder of your proposed document requests because they seek documents that are more appropriately obtained in the MDL.  As you know, discovery in the Coordinated Actions (including *Pate*) is proper only to the extent "the discovery sought could not have been obtained in coordinated discovery in the MDL Proceeding." (MDL Order. No. 16 ¶ 5). Most of the documents you seek can be obtained in the MDL Proceeding.  For example, Request No. 8 is covered by category 2 in Attachment A of MDL Order No. 20; Request No. 13 is covered by category 1 of the same; Request No. 40 is covered by category 18 of the same; and so forth. Other requests bear no specific relation to the subject incident in *Pate*, and are therefore beyond the scope of permissible discovery in this Coordinated Action.

I suggest we draft a consent order for the Court that permits plaintiffs to serve their interrogatories, RFP Nos. 1–7, 9, 11–12, and 15, and GM's proposed discovery.  Robert and Jeff can work with you on that consent order.

As always, please call me if you want to discuss these issues.

Jeffrey S. Bramson

Kirkland & Ellis LLP
300 North LaSalle  Chicago, IL 60654
Tel +1-312-862-3424  Fax +1-312-862-2200

jeffrey.bramson@kirkland.com



EXHIBIT
F

1

## CERTIFICATE OF SERVICE

This hereby certifies that a true and correct copy of GENERAL MOTORS LLC'S

RESPONSE TO PLAINTIFFS' MOTION TO SERVE DISCOVERY was served upon counsel

of record by U.S. Postal Service First Class Mail, postage prepaid, as follows:

THE COOPER FIRM
Lance A. Cooper (Ga. Bar No. 186100)
531 Roseland Street, Suite 200
Marietta, GA 30060
Telephone:    (770) 427-5588
Email:        lance@thecooperfirm.com

PRESTON & MALCOM
R. Michael Malcom (Ga. Bar No. 467025)
Paul L. Rosenthal (Ga. Bar No. 614904)
110 Court Street
P. O. Box 984
Monroe, GA 30655
Telephone:    (770) 267-2503
Email:        rmm@prestonmalcom.com
Email:        plr@prestonmal.com

*Attorneys for Plaintiffs*

SHARON WARE & ASSOCIATES
W. Dale Ellis, Jr.
2400 Century Parkway, N.E.
Suite 200
Atlanta, GA 30359
Telephone:    (404) 728-5400
Email:        dale.ellis@statefarm.com

*Attorneys for Victoria Nicole Jones*

This ___5th___ day of May, 2015.

Jeffrey A. Daxe

326 Roswell St.
Marietta, GA 30060
Tel: (770) 429-1499
Fax: (770) 429-8631

# Exhibit 28

Case 1:14-md-02543-JMF   Document 876-29   Filed 05/22/15   Page 2 of 8

## IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA<br>J. PATE, Individually, and as<br>Administrators of the Estate of<br>MICHAEL ERIC PATE,<br>MELTON, deceased,<br><br>Plaintiffs,<br><br><br>GENERAL MOTORS LLC and<br>VICTORIA NICOLE JONES,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>FILE NO. 14-A-2712-1 |

## PLAINTIFFS' REPLY TO DEFENDANT GENERAL MOTORS LLC'S RESPONSE TO PLAINTIFFS' MOTION TO SERVE DISCOVERY

Defendant General Motors LLC's (the same old "GM") theory here is that the Joint Coordination Order ("JCO") "mandates" that the Pates not get the discovery they need by the time they need it.   That surely would suit GM's needs.   But, as Chateaubriand (or some such wordsmith) once said, "There is nothing so ugly as the murder of a beautiful theory by an ugly gang of facts."   Here, the facts are not so much ugly, as completely overlooked by GM.

First, the JCO was to work to everyone's advantage.   Where it does not, the JCO left untouched, as it should have, the inherent power of this Court to

control the discovery that takes place in this case, over which the MDL has no

jurisdiction.    Per the JCO, this Court "retains jurisdiction to modify, rescind,

and/or enforce the terms of" the JCO.    Agreed Order Regarding Joint

Coordination (entered November 25, 2014).    As part of the JCO, when the parties

cannot reach agreement about certain additional discovery, "such disputes will be

presented to the Court in which the Coordinated Action is pending in accordance

with that jurisdiction's rules and procedures." JCO at ¶ 30.

Second, the various MDL orders set up a system where there are two

phases of discovery.    That too has led to a rolling production, according to GM

lawyers.    Some documents, which may or may not be responsive to Pate's

requests *might or might not* be in the depository now.    Others might be deposited

there sometime by the end of summer.    Thus, if GM's reading of the JCO

discovery orders stands, then the Pates are forced to participate in discovery

without the documents they need to prove their case.    Oh, and the MDL permits

only one deposition.    MDL Deposition Protocol Order at ¶ 3.    Thus, the GM

depositions will be over and done, at least in part, before the Pates ever get all the

documents they want.    Pate's counsel attended a deposition on May 19 of a key

witness, but has yet to get any Cadillac CTS documents responsive to his requests.

GM claims there are some CTS documents in amongst the other millions, but again

Pate does not know if they are in fact responsive.    Or they just somehow

2

tangentially relate to the CTS and the switch issue.   It is not a valid response to targeted document requests to say "go look in the millions of documents, and maybe some of them are about the CTS."   And, too, it is not clear how many there even are.   Earlier, GM said there 1,700 potentially responsive.   Other conversations suggest 5,000.   GM may not know.   Pate does not know if any are responsive to the requests.   And all Pate wants is for GM to send his counsel the documents, whether they are 5,000 or 1,700.   That does not, at least to Pate's counsel, seem to be too much to ask.   The MDL document depository were supposed to help streamline and quicken discovery, instead it is a slick morass of documents and the basis on which GM can avoid really answering any discovery.  In a word, GM grabbed "opportunity" out of "chaos" to increase the chaos and avoid producing documents—they very thing that got them into so much trouble in the *Melton* case in the first place.[1]

Third, the Pates' experts are going to be forced to finish their work and be disclosed by late July.   Again, the Pates will not have the Cadillac CTS documents they need.   Nor will their experts.   GM knows this, as it signed the Scheduling Order in this case.   Absent vigilant oversight by courts such as this

---

[1] One can almost imagine a team of highly-creative GM lawyers who are tasked with turning every consumer benefit on its head, and asking themselves:  "How can we use this thing—ostensibly bad for GM—to further hide documents, delay litigation, and make it even harder for consumers to prosecute their cases against GM."

3

one, the MDL briar patch will serve GM well in preventing adequate discovery in this and other cases.   And preventing full reports by experts when they are due. That will increase effort, cost, and depositions.   None of that is consistent with Rule 1 of the Federal Rules of Civil Procedure or Rule one of the Georgia Civil Practice Act, both of which focus on justice, speed, and efficiency.

Fourth, while ostensibly helpful, the MDL is not sacrosanct, especially to those Coordinated Actions that voluntarily joined it, swayed by the promise of coordinated and useful discovery.   There has been little of those two goals.   GM has been using the existence of the GM MDL to slow discovery in cases around the country, even those not involved in the ignition switch defects. But, coordinated actions have seen this and are fighting back.   In at least two cases, the state courts have permitted discovery notwithstanding the JCO.   At least one court has declined not to join the JCO in the first place.   Whether in or out, one thing is true:   the MDL does not have jurisdiction over this action absent the Pates' consent.   The Pates consented to that jurisdiction so long as the MDL goals benefited them.   They did not consent, however, for GM to use the MDL to prevent them from gathering the facts and using them in depositions.

Fifth, and to reiterate, there are some Cadillac CTS documents in the MDL multi- million document haystack.   There is, however, nothing to show that they are actually responsive to the documents the Pates asked for.   Rather, they are

4

somehow Cadillac CTS documents that ended up in the MDL patch, and not

because they were really responsive to the Pates' documents requests. They just

got caught up in the net with all the other documents, and might be about paint or

windshield wipers as far as any one knows yet.

Sixth, GM is not going to send out written responses to the Pates'

discovery until near the end of summer. Then, and only then, will the Pates be

able to determine once and for all what they got and what they did not get. They

will, if they are stiffed in discovery—something GM is expert at doing—then be

forced to file a Motion To Compel at the near close of discovery and after experts

are deposed.

In short, the JOC, at least as it relates to this case before this Court, is

not workable. It will in fact stymie discovery. It will force the Pates' counsel in

depositions without documents, something no plaintiffs' lawyer ever wants. It

will prevent the Pates from focusing the small time they have in the ongoing

depositions on any aspect of this case. It will force the Pates' experts to be

disclosed before they have reviewed key documents. It will duplicate the work for

the experts, cause second or third expert depositions, and generally conflict with

the Scheduling Order. All this is well and good for GM, but could be fatal to the

Pates' case. The MDJ and JCO was to help the plaintiffs, not severely prejudice

them—and GM's vision of the MDL and JCO does just that.

5

For the foregoing reasons, Plaintiffs Pate ask the Court to order GM to

respond specifically and fully to all of their discovery, and to produce the

responsive documents to plaintiffs' counsel at their office in a timely and prompt

manner.

**RESPECTFULLY SUBMITTED** this 20th day of May 2015.

**THE COOPER FIRM**

**LANCE A. COOPER**
Georgia State Bar No. 186100
**Attorneys for Plaintiff**

531 Roselane Street
Suite 200
Marietta, GA 30060
770/427-5588

**PRESTON & MALCOM**

**R. MICHAEL MALCOM**
Georgia State Bar No. 467025
**PAUL L. ROSENTHAL**
Georgia State Bar No. 614904

110 Court Street
P. O. Box 984
Monroe, Georgia 30655
770/267-2503

6

## CERTIFICATE OF SERVICE

This is to certify that I have this day served true and accurate copies of the within and foregoing to counsel of record by email as follows:

| | |
|---|---|
| Robert Ingram<br>Ryan Ingram<br>Jeffrey Daxe<br>Carey Olson<br>**MOORE INGRAM JOHNSON &<br>STEELE**<br>326 Roswell Road<br>Marietta, GA 30060<br>**Counsel for General Motors** | Brian D. Sieve<br>Nicholas F. Wasdin<br>Jeffrey S. Bramson<br>Leonid Feller<br>**KIRKLAND & ELLIS**<br>300 North LaSalle<br>Chicago, IL 60654<br>**Counsel for General Motors** |
| W. Dale Ellis, Jr.<br>**SHARON WARE & ASSOCIATES**<br>2400 Century Parkway, N.E.<br>Suite 200<br>Atlanta, GA 30359<br>**Counsel for Jones** | |

This 20th day of May 2015.

**THE COOPER FIRM**

**LANCE A. COOPER**
Georgia Bar No. 186100
**Attorney for Plaintiff**

701 Whitlock Avenue
Suite J-43
Marietta, GA 30064
770/427-5588
lance@thecooperfirm.net

# Exhibit 29

# IN THE STATE COURT OF COBB COUNTY

## STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually, and as Administrators of the Estate of MICHAEL ERIC PATE, deceased, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 14-A-2712-1 |
| GENERAL MOTORS LLC, and VICTORIA NICOLE JONES, | § § § | |
| Defendants. | § § | |

## GENERAL MOTORS, LLC'S MOTION FOR
## LEAVE TO SERVE CASE-SPECIFIC PARTY DISCOVERY

COMES NOW Defendant General Motors, LLC ("New GM"), by and through its undersigned counsel, and hereby files this Motion for Leave to Serve Case-Specific Party Discovery, and relies upon its Brief in Support filed contemporaneously herewith, and all other pleadings of record.

DATED: May 4th, 2015          Respectfully submitted,

MOORE INGRAM JOHNSON & STEELE, LLP

Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843680)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone:   (770) 429-1499
Facsimile:   (770) 429-8631
Email:  ringram@mijs.com
Email:  jad@mijs.com
Email:  colson@mijs.com
Email:  rmingram@mijs.com

MOORE INGRAM
JOHNSON & STEELE
Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

COBB COUNTY GA
FILED IN OFFICE
15 MAY -4 PM 2:29
ANGIE T. DAVIS
STATE COURT CLERK-13

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing **General Motors LLC's Motion for Leave to Serve Case-Specific Party Discovery** was served by hand delivery to:

> **THE COOPER FIRM**
> Lance A. Cooper (Ga. Bar No. 186100)
> 531 Roseland Street, Suite 200
> Marietta, GA 30060
> Telephone:   (770) 427-5588
> E-mail: lance@thecooperfirm.com

A copy of the foregoing **General Motors LLC's Motion for Leave to Serve Case-Specific Party Discovery** was also served by depositing in the U.S. mail a copy of same in a properly addressed envelope with adequate postage thereon to:

**PRESTON & MALCOM**
R. Michael Malcom (Ga. Bar No. 467025)
Paul L. Rosenthal (Ga. Bar No. 614904)
110 Court Street
P. O. Box 984
Monroe, GA 30655
Telephone:   (770) 267-2503
E-mail: rmm@prestonmalcom.com
E-mail: plr@prestonmal.com

**SHARON WARE & ASSOCIATES**
W. Dale Ellis, Jr.
2400 Century Parkway, N.E., Suite 200
Atlanta, GA 30359
Telephone:   (404) 728-5400
E-mail: dale.ellis@statefarm.com

*Attorneys for Victoria Nicole Jones*

*Attorneys for Plaintiffs*

This ___4th___ day of May, 2015.

Jeffrey A. Daxe

326 Roswell St.
Marietta, GA 30060
Tel: (770) 429-1499
Fax: (770) 429-8631
jad@mijs.com

MOORE INGRAM
JOHNSON & STEELE
Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

2

# IN THE STATE COURT OF COBB COUNTY

## STATE OF GEORGIA

MICHAEL E. PATE and BARBARA J. PATE,   §
Individually, and as Administrators of the   §
Estate of MICHAEL ERIC PATE, deceased,   §
  §
    Plaintiffs,   §
  §
    v.   §
  §
GENERAL MOTORS LLC, and VICTORIA   §
NICOLE JONES,   §
  §
    Defendants.   §

Civil Action No. 14-A-2712-1

## BRIEF IN SUPPORT OF GENERAL MOTORS LLC'S MOTION FOR LEAVE TO SERVE CASE-SPECIFIC PARTY DISCOVERY

Defendant General Motors LLC ("New GM"), by and through its undersigned counsel, submits this Brief in Support of its Motion for Leave to Serve Case-Specific Party Discovery, and shows the Court the following:

## INTRODUCTION

This is a lawsuit in which Plaintiffs Michael E. Pate and Barbara J. Pate ("Plaintiffs") seek recovery from General Motors, LLC and Victoria Nicole Jones for the death of their son Michael Eric Pate resulting from a motor vehicle collision on June 6, 2014. (Compl. ¶¶ 1, 11–14, September 29, 2014.) This action is related to *In re General Motors, LLC Ignition Switch Litigation*, MDL Docket No. 2543 ("MDL Proceeding"), which is pending in the U.S. District Court for the Southern District of New York. As this Court is aware, the Parties in this case agreed to coordinate discovery efforts with the MDL Proceeding, and this Court entered an Order accepting that agreement and requiring that discovery proceed pursuant to the Joint Coordination Order. (Agreed

MOORE INGRAM
JOHNSON & STEELE
A Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

Order Regarding Joint Coordination, November 25, 2014; Joint Coordination Order ("Coordination Order"), September 24, 2014.)

Generally, the Coordination Order requires that all discovery be handled through the MDL Proceeding; however, due to the fact-specific nature of coordinated cases, the parties in a coordinated action may seek leave of Court to serve case-specific discovery requests, which would not be addressed in the MDL Proceeding.  (See Section A., infra.) New GM drafted case-specific Interrogatories to Plaintiffs and Requests for Production of Documents to Plaintiffs.  (See Section B., infra.)  New GM then requested Plaintiffs' consent to obtain leave from the Court to serve its case-specific party discovery requests, but Plaintiffs have refused to consent, or even substantively to respond.  Therefore, in accord with the Coordination Order, New GM seeks leave from this Court to serve its case-specific discovery requests on Plaintiffs.  (See Section C., infra.)

## A. The Coordination Order

The MDL Court entered the Coordination Order to provide for a "just and efficient disposition of each proceeding" because "many of the . . . factual allegations and circumstances and many of the . . . parties" are the same in the MDL Proceeding and the Coordinated Action, and discovery "will substantially overlap." (Coordination Order 1–2.)  On November 25, 2014, this Court entered an Order adopting the MDL's Coordination Order, thereby mandating that discovery in the present litigation should proceed pursuant to the terms of the Coordination Order.

Under the Coordination Order, the Parties are ordered to "work together to coordinate discovery to the maximum extent feasible in order to avoid duplication of effort and to promote the efficient and speedy resolution of the MDL Proceeding and the Coordinated Actions." (Coordination Order 2.)  This coordination process is facilitated

MOORE INGRAM
JOHNSON & STEELE
A Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

2

where the Parties consent to case-specific discovery requested and where the Parties then seek leave of Court to serve case-specific discovery by consent. Where one party fails to agree to the other party's request for consent to seek leave to serve case-specific discovery requests, the requesting party is forced to file a motion and seek leave from the Court.

> Requests for documents, interrogatories, depositions on written questions[,] and requests for admissions in addition to those served in the MDL Proceeding . . . may be propounded in a Coordinated Action only upon leave of the court in which the Coordinated Action is pending, obtained on noticed motion for good cause shown, including why the discovery sought could not have been obtained in coordinated discovery in the MDL Proceeding.

(Coordination Order ¶ 26.)

## B. The Case-Specific Discovery Sought by New GM Complies with the Coordination Order.

New GM provided draft party discovery requests to Plaintiff on April 1, 2015. (See e-mail from Jeffrey A. Daxe to Lance Cooper, April 1, 2015 at 2:39 p.m., attached hereto as Exhibit "A"; Draft of Def.'s First Interrogs. to Pls.; Draft of Def.'s First Req. for Prod. of Docs. to Pls.) Every request drafted by New GM is case-specific because every request relates specifically to the facts and circumstances of the subject incident, the decedent, or the basis for Plaintiffs' claims in this lawsuit. Specifically, New GM drafted sixty-six (66) Interrogatories. Thirty-five (35) of these Interrogatories request case-specific information regarding the decedent, Michael Eric Pate. For example:

INTERROG. NO. 3:   State the **decedent's** social security number.

INTERROG. NO. 4:   State any prior names or aliases used by the **decedent**.

INTERROG. NO. 5:   State the **decedent's** driver's license number and the state of issuance.

MOORE INGRAM
JOHNSON & STEELE
A Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

INTERROG. NO. 6:     State whether the **decedent's** driver's license has ever been suspended or revoked, and describe the circumstances of such suspension or revocation, including the date and the reason.

INTERROG. NO. 11:    State the name and address of the **decedent's** employers for the five-year period immediately preceding the Subject Incident, and, for each job that the decedent held, include the decedent's position or title, the dates the decedent held those positions or titles, the decedent's salary or compensation, and the reason the decedent left.

INTERROG. NO. 12:    State the **decedent's** total annual gross income for each of the five years preceding the Subject Incident, and identify each source of income.

INTERROG. NO. 13:    Identify each physician, osteopath, chiropractor, or other practitioner of any of the healing arts, who examined or treated the **decedent** in the ten year period preceding the Subject Incident.

(Def.'s First Interrogs. to Pls. Nos. 3–6, 11–13 (emphasis added); see also Def.'s First Interrogs. to Pls. Nos. 7–9, 14–18, 22, 31, 35–42, 46–53, 57–58.)   Nineteen (19) Interrogatories relate specifically to the subject incident, Plaintiffs, Plaintiffs' basis for their claims in this action, Plaintiffs' alleged injuries, and Plaintiffs' identity of witnesses in this lawsuit.  For instance:

INTERROG. NO. 43:    Identify all Persons alleged to have **witnessed the Subject Incident**.

INTERROG. NO. 44:    State whether You have investigated the **Subject Incident**, and, if so, describe the investigation by stating the date of the investigation, identifying all Documents that relate to the investigation, identifying each person who conducted the investigation, and by identifying each person who was interviewed and stating whether a statement was obtained from each such person.

MOORE INGRAM
JOHNSON & STEELE
A Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

(Def.'s First Interrogs. to Pls. Nos. 43–44 (emphasis added); see also Def.'s First Interrogs. to Pls. Nos. 1, 2, 10, 29–30, 34, 43–44, 54–56, 59–66.) Twelve (12) Interrogatories relate specifically to the subject vehicle driven by decedent, such as:

> INTERROG. NO. 19: Identify the person who purchased the **Subject Vehicle**.

> INTERROG. NO. 20: Identify all current and prior owners of the **Subject Vehicle**.

> INTERROG. NO. 21: Identify the owner of the **Subject Vehicle** on the date of the Subject Incident.

> INTERROG. NO. 23: Identify every dealership, automotive repair or service provider or other Person that has: (a) performed any service, repair, or maintenance action on the **Subject Vehicle**; (b) performed any modification, alteration, or addition of accessories to the Subject Vehicle at the time the Subject Vehicle was purchased and up to the present; or (c) performed any recall repair on the Subject Vehicle. For each such dealership, provider or Person identified, provide the address, a description of the work performed and the date it was performed.

> INTERROG. NO. 24: If the **Subject Vehicle** was modified in any way after the time of its original sale and before the Subject Incident, describe each modification and identify all persons or places of business making such modification(s) and all persons having knowledge of the modification(s).

(Def.'s First Interrogs. to Pls. Nos. 19–21, 23–24 (emphasis added); see also Def.'s First Interrogs. to Pls. Nos. 25–28, 32–33, 45.) These Interrogatories, which address the particular facts about the decedent, the subject incident, and the basis for Plaintiffs' claims in this lawsuit, request case-specific information that cannot be obtained in the MDL Proceeding. Similarly, New GM's Request for Production of Documents seeks case-specific documents related to this litigation, the decedent, the subject vehicle, or

MOORE INGRAM
JOHNSON & STEELE
A Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

the subject incident, and these documents also cannot be obtained in the MDL Proceeding.  (See Draft of Def.'s First Req. for Prod. of Docs. to Pls.)

### C. This Court Should Grant New GM Leave to Serve Plaintiffs with Its Case-Specific Interrogatories and Request for Production of Documents Because the Requested Information and Documents Cannot Be Obtained in the MDL Proceeding.

This Court's Coordination Order permits case-specific discovery, which is not handled in the MDL Proceeding.  In an attempt to facilitate this discovery process, New GM requested consent from Plaintiffs regarding its case-specific party discovery.[1]  (See Exhibit A.)  Having not received a response from Plaintiffs, Counsel for New GM followed up regarding a consent order on agreed-upon case-specific discovery:

> I suggest, as I discussed with Doreen earlier this week, the parties agree on a consent order that allows plaintiffs to serve their document requests and interrogatories (Nos. 1 – 6), **New GM to serve its document requests and interrogatories, and New GM to serve the third party subpoenas**.  We should get that process going now.  Let's go ahead and serve the discovery to which neither party objects.

(E-mail from Brian Sieve to Lance Cooper, et. al., April 8, 2015 at 5:38 p.m. (emphasis added), attached hereto as Exhibit "C.")  Plaintiffs stated that they would "discuss" and get back to New GM's counsel on these discovery issues that day.  (E-mail from Doreen

---

[1] New GM also sought Plaintiffs' consent to serve non-party discovery on April 6, 2015. (E-mail from Jeffrey A. Daxe to Lance Cooper, et. al., April 6, 2015 at 1:25 p.m., attached hereto as Exhibit "B.")  Plaintiffs not only failed to respond to New GM's request regarding service of non-party discovery requests, but Plaintiffs also failed to adhere to the Coordination Order by serving their own non-party discovery without consent and without leave of Court.  (E-mail from Jeffrey A. Daxe to Doreen Lundrigan, et. al., April 22, 2015 at 11:00 a.m., attached hereto as Exhibit "G.")  After recognizing the mistake, Plaintiffs quickly consented to New GM's requests to serve non-party discovery and both parties submitted a Proposed Order regarding same to the Court.  (See e-mail exchange between Doreen Lundrigan to Jeffrey A. Daxe, et. al., April 22, 2015, attached hereto as Exhibit "I"; see also Proposed Consent Order Granting Parties' Leave to Serve Non-Party Disc., April 23, 2015.)

MOORE INGRAM
JOHNSON & STEELE
A Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

Lundrigan to Jeffrey A. Daxe, April 13, 2015 at 11:06 a.m., attached hereto as Exhibit "D.")

Another three days passed without Plaintiffs consenting or substantively responding to New GM's request for consent to obtain leave to serve its discovery requests, so Counsel for New GM then sent another e-mail requesting a response from Plaintiffs: "We really need to get moving on the case specific discovery in Pate. Can you please get us a decision by the end of the week concerning whether or not you will consent to the party and non-party discovery, which we previously forwarded to you?" (E-mail from Jeffrey A. Daxe to Doreen Lundrigan, April 16, 2015 at 5:13 p.m., attached hereto as Exhibit "E.") Although Plaintiffs requested consent to Plaintiffs' drafted party discovery, and Plaintiffs acknowledged that New GM's party and non-party discovery requests were sitting on Plaintiffs' counsel's desk, (e-mail exchange between Doreen Lundrigan and Jeffrey A. Daxe, et. al., April 20, 2015, attached hereto as Exhibit F), Plaintiffs still failed to consent to or substantively address New GM's party discovery requests.

To date, more than four weeks have lapsed since New GM's request to serve party discovery, and Plaintiffs have not substantively addressed or consented to same.[2]

---

[2] In contrast, on April 20, 2015, Plaintiffs requested New GM's consent to seek leave and serve their party discovery, including mostly requests that New GM had not previously seen. (See e-mail from Doreen Lundrigan to Brian Sieve et. al., April 20, 2015 at 4:05 p.m., attached hereto as Exhibit "F.") Three days later, on April 23, 2015, Plaintiffs' counsel sent an e-mail again regarding their request: "[W]hen will you be able to get back to us regarding the discovery we want to serve on New GM, which was sent out earlier this week? We would like to get this matter before the Court if we can't agree." (E-mail from Doreen Lundrigan to Jeffrey A. Daxe, et. al., April 23, 2015 at 10:06 p.m., attached hereto as Exhibit "H.") This e-mail regarding Plaintiffs' requested consent to party discovery omitted any response to New GM's party discovery requests, which were sent twenty-one (21) days prior. (E-mail from Jeffrey A. Daxe to Doreen Lundrigan, April 23, 2015 at 10:13 a.m., attached hereto as Exhibit "H.") New GM responded to

MOORE INGRAM
JOHNSON & STEELE
A Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

Plaintiffs' failures and this unnecessary delay have necessitated the filing of the instant motion for New GM to seek leave from the Court to engage in its case-specific party discovery as permitted by the Coordination Order. In light of its showing of good cause and good faith, New GM requests that this Court grant New GM leave to serve Plaintiffs with its Interrogatories to Plaintiffs and Request for Production of Documents to Plaintiffs.

DATED: May 4th, 2015                    Respectfully submitted,

                                        MOORE INGRAM JOHNSON & STEELE, LLP

                                        Robert D. Ingram (Ga. Bar No. 383405)
                                        Jeffrey A. Daxe (Ga. Bar No. 213701)
                                        Carey E. Olson (Ga. Bar No. 843080)
                                        Ryan M. Ingram (Ga. Bar No. 394318)
                                        326 Roswell Street
                                        Marietta, GA  30060
                                        Telephone:   (770) 429-1499
                                        Facsimile:   (770) 429-8631
                                        Email:  ringram@mijs.com
                                        Email:  jad@mijs.com
                                        Email:  colson@mijs.com
                                        Email:  rmingram@mijs.com

MOORE INGRAM
JOHNSON & STEELE
A Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

Plaintiffs' Request for consent for Plaintiffs' drafted party discovery; however, Plaintiffs objected and, without any good faith attempt to resolve the issue, Plaintiffs stated that they would "be sending a motion to Judge Clayton asking her to order that [Plaintiffs] be permitted to serve this discovery on [New] GM." (E-mail from Doreen Lundrigan and Lance Cooper to Jeffrey Bramson, et. al., April 24, 2015 at 2:00 p.m., attached hereto as Exhibit "J.")

## Jeffrey A. Daxe

| | |
|---|---|
| **From:** | Jeffrey A. Daxe |
| **Sent:** | Wednesday, April 01, 2015 2:39 PM |
| **To:** | Lance Cooper (lance@thecooperfirm.com) |
| **Cc:** | Robert D. Ingram; Brian Sieve; R D. Smith; dale.ellis@statefarm.com; 'Doreen Lundrigan' |
| **Subject:** | FW: Pate v. GM |
| **Attachments:** | Pate v. GM_Draft First Interrogatories.pdf; Pate v. GM_Draft First RFPs.pdf |

Lance,

Attached are draft discovery requests to your clients. Per the coordination order, GM seeks your consent to serve these on you. Please let us know if you approve, and we will draft the appropriate consent and present same to the Court.

Thank you, Jeff

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP



| | MIJS Profile | Practice Areas | Events | Locations |

Main: 770-429-1499
Fax: 770-429-8631

JAD@mijs.com
Attorney Biography

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

**Confidentiality Notice**
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.



EXHIBIT
A

# IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

MICHAEL E. PATE and BARBARA J.    )
PATE,    )
Individually, and as Administrators    )
Of the Estate of    )
MICHAEL ERIC PATE, deceased,    )
    )
    Plaintiffs,    )    CIVIL ACTION
    )    FILE NO. 14A-2712-1
v.    )
    )
GENERAL MOTORS LLC, and    )
VICTORIA NICOLE JONES,    )
    )
    Defendants.    )

## DEFENDANT GENERAL MOTORS' FIRST REQUEST
## FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS

Pursuant to O.C.G.A. § 9-11-34, Defendant General Motors LLC ("New GM") hereby requests that Plaintiffs respond to the following Requests for Production within thirty (30) days and produce the following Documents and things for inspection and copying at the offices of Moore Ingram Johnson & Steele, LLP, Emerson Overlook, 326 Roswell Street, Marietta, Georgia 30060.

## DEFINITIONS

1.    "Communication" means all documents reflecting, constituting, or concerning communications between or among two or more persons or entities, including, but not limited to, any oral or written utterance, notation, memorandum, notes of meetings or conferences, calendar entries, correspondence, documents, conversations, dialogues, e-mails, interviews, consultations, telegrams, teletypes, telexes, telecopies, texts, chats, instant messages, agreements, and other understandings, or statements of any nature whatsoever.

2.    "Complaint" means the complaint You filed in this action.

3.     "Concerning" means constituting, containing, comprising, embodying, underlying, evidencing, mentioning, indicating, supporting, proving, showing, relating to, or referring to, in any way, in whole or in part.

4.     "Counsel" means The Cooper Firm, and their agents, experts working under their direction, employees, attorneys, partners, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, and successors.

5.     "Documents" means all materials encompassed by O.C.G.A. § 9-11-34, including, without limitation, the originals (or copies when originals are not available), or any non-identical copies or drafts (whether different from the original because of notes made on such copies or otherwise), of every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, films, voice recordings, reports, financial statements, applications, e-mails, tests, drawings, graphs, charts, photographs, videotapes, sound recordings, images, and any other electronic medium by which information is stored or communicated.

6.     "Ignition-Switch Related Event" means an incident during which the ignition switch in the Subject Vehicle moved from the run position to accessory or otherwise moved out of the run position resulting in a partial loss of electrical power, turning off the engine, a loss of power steering and/or caused the airbags not to deploy.

7.     "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

8.     "Subject Incident" means the incident giving rise to this litigation, described in Paragraphs 11-14 of Your Complaint.

9.    "Subject Vehicle" means the 2005 Cadillac CTS defined as "CTS" in Paragraph 10 of Your Complaint.

10.    "You" or "Your" means Michael E. Pate and Barbara J. Pate, Individually, and as Administrators of the Estate of Michael Eric Pate, and all Your agents, employees, representatives, predecessors and/or successors.

11.    Whenever the singular is used, it shall also be taken to include the plural, and vice versa. The use of terms "and," "or," or "and/or" shall be construed as encompassing "and," "or," and "and/or," so as to bring within the scope of the response all information that might otherwise be construed to be outside its scope.

12.    The term "all" includes the word "any" and vice versa; and "each" includes the word "all" and vice versa.

13.    The past tense of a verb shall be construed to include the present tense and vice versa.

## INSTRUCTIONS

1.    You are required to search for all Documents and Communications within Your possession, custody, or control, wherever located, including, without limitation, any Documents and Communications placed in storage facilities or in the possession of Counsel, any other employee, agent, representative, attorney, investigator, or other Person acting or purporting to act on Your behalf (whether located at his/her residence or place(s) of business), in order to fully respond to these requests.

2.    All Documents and Communications that are responsive, in whole or in part, to any of the requests herein shall be produced in full, without abridgement, abbreviation, or expurgation of any sort.

3. If You claim that any Document or Communication responsive to any of the numbered requests below is privileged or immune from discovery as work product, or that any request is unanswerable in full for any reason, You shall respond to the request to the extent to which it is not objected and explain the grounds upon which the objection is based by providing the full identification of the withheld Document or Communication, or portion thereof, including:

    (a)    its date;

    (b)    the identity of all Persons who prepared, signed, sent, received, and/or were involved with the Document or Communication;

    (c)    the general nature of the Document or Communication (e.g., letter, photograph, etc.);

    (d)    a summary of its contents or its general subject matter;

    (e)    the identities of all Persons to whom the Document or Communication or copies thereof were circulated or its contents communicated; and

    (f)    the specific grounds for not responding in full, including the nature of the privilege (e.g., attorney client privilege, work product) or other rule of law relied upon to withhold the Document or Communication, and the facts supporting those grounds.

4. Any purportedly privileged Document or Communication containing non-privileged matter must be produced, with the purportedly privileged portion excised.

5. You shall supplement Your production if You come into possession, custody, or control of responsive Documents or Communications between the time of initial production and the time of the trial herein, by promptly producing such Documents and Communications.

6. Unless otherwise stated, these Requests cover the time period June 6, 2009 to present.

## DOCUMENT REQUESTS

1. All Documents and Communications, from 2004 to present, Concerning the allegations in Your Complaint or this lawsuit.

2. All diaries, calendars, journals, or other writings, drawings, depictions, or blogs kept or made by You or on Your behalf, from 2004 to present, Concerning the Subject Vehicle, the Subject Incident, and/or Your alleged injuries.

3. All Documents You believe establish that You were not at fault for the Subject Incident.

4. All Documents and Communications Concerning the probate of the decedent's estate.

5. All Documents You produce to Defendant Jones' in connection with this litigation.

6. All expert reports related to this litigation.

7. All Documents relied on by Your experts in connection with forming any opinion related to this litigation.

8. All Documents and Communications Concerning Your purchase of the Subject Vehicle.

9. Copies of any extended warranty or extended service contract purchased for the Subject Vehicle.

10. All Documents and Communications, from 2004 to present, Concerning any service, repair, inspection or modification of the Subject Vehicle, including Documents sufficient to show the Person who performed same, where it was performed and on what date.

11. All Documents and Communications, from 2004 to present, Concerning any accidents involving the Subject Vehicle prior to the date of the Subject Incident.

12. All Documents and Communications Concerning vehicular accidents involving the decedent prior to the Subject Incident.

13. All Documents and Communications, from 2004 to present, Concerning any Ignition Switch-Related Event that You or any other Person claims to have experienced in the Subject Vehicle other than the Subject Incident.

14. All Documents and Communications Concerning the Subject Incident.

15. All drawings, photographs, videos, diagrams, or renderings, from 2004 to present, depicting the Subject Vehicle or the Subject Incident.

16. All writings, drawings, photographs, videos, charts, sketches, diagrams, blueprints, plats, samples, maps, plans, or renderings You or someone on Your behalf made which depict the location or area where the Subject Incident occurred (other than Documents created by Your counsel or at Your counsel's request).

17. All Documents or technical data, from 2004 to present, supporting any allegation made by You that: (a) the Subject Vehicle's ignition switch moved out of the run position in connection with the Subject Incident or any other Ignition-Switch Related Event; (b) the Subject Vehicle experienced a "moving stall" or otherwise lost engine power and that this caused a loss of vehicle control during the Subject Incident or any other Ignition-Switch Related Event; (c) a loss of power steering occurred because the Subject Vehicle's ignition switch moved out of the run position during the Subject Incident or any other Ignition-Switch Related Event; (d) a loss of power assist brakes occurred because the Subject Vehicle's ignition switch moved out of the run position during the Subject Incident or any other Ignition-Switch Related Event; (e) any of the

Page 6

airbag systems in the Subject Vehicle failed to deploy during the Subject Incident or any other

Ignition-Switch Related Event because the Subject Vehicle's ignition switch moved out of the

run position.

18.    All Documents and Communications, from 2004 to present, Concerning

inadvertent ignition switch movement in any New GM vehicle, including, but not limited to, the

Subject Vehicle.

19.    Copies of any Tech II download conducted for the Subject Vehicle.

20.    All documentation, photographs, videos or recordings of any testing or

measurements of the torque related to the Subject Vehicle's ignition switch.

21.    All documentation, photographs, videos, or recordings of the cycling of the

Subject Vehicle's ignition switch since the Subject Incident.

22.    All Documents and Communications, from 2004 to present, Concerning the

existence of any safety-related defect in any Cadillac CTS vehicle, including, but not limited to,

the Subject Vehicle.

23.    All medical records Concerning any injury resulting from the Subject Incident.

24.    All medical and pharmacy records, charts, reports, notes and billing records for

medical treatment received by the decedent during the ten year period immediately preceding the

Subject Incident.

25.    All Documents and Communications Concerning any treatment or consultation

for any alcohol or chemical dependency condition the decedent experienced, was diagnosed

with, or was treated for during the five year period immediately preceding the Subject Incident.

26.    All Documents sufficient to identify the name and policy number of any

insurance, including medical, disability or vehicle insurance, in effect at the time of the Subject

Incident that covered or may cover any medical expenses, property damage or other expenses incurred as a result of the Subject Incident.

27. Documents Concerning all insurance claims, including medical, disability or vehicle insurance claims, submitted by You in connection with or as a result of the Subject Incident, including all correspondence to and from the insurance company, Documents reflecting the total amount claimed or paid, and all estimates or appraisals of vehicle damage or repair work obtained in connection with any claim.

28. All Documents reflecting charges billed to any insurance carrier by any medical professional or treating facility that rendered medical services for injuries You allege to have resulted from the Subject Incident, including Documents sufficient to show (a) the amount paid by each insurance carrier, (b) the amount of discounts, write-offs, or adjustments by each carrier or by Medicaid or Medicare, (c) the total charges allowed by Medicaid or Medicare, (d) the amount paid by Medicaid or Medicare, (e) the amount paid by You, and (f) the amount still owed by You, the insurance carrier, or Medicaid or Medicare.

29. All Documents relating to the decedent's Social Security and/or Social Security Disability applications and/or earnings.

30. All Documents relating to monetary payments received by You from any Person as a result of the injuries or medical conditions claimed as a result of the Subject Incident.

31. All Documents and Communications Concerning any damages or claims arising from the Subject Incident.

32. All reports related to alleged economic losses prepared as a result of injuries sustained from the Subject Incident.

33.     All pleadings, depositions, and correspondence relating to any claims or lawsuits filed by You or against You for personal injuries Concerning the Subject Incident, aside from this lawsuit, excluding Documents that are publicly available and privileged correspondence with an attorney.

34.     A copy of the decedent's driver's license.

35.     All Documents and Communications Concerning any suspension or revocation of the decedent's driver's license, including Documents and Communications describing the reason for the suspension or revocation and the date and duration of any suspension or revocation.

36.     A copy of the motor vehicle registration for the Subject Vehicle.

37.     All Documents and Communications Concerning traffic citations issued to the decedent during the ten year period immediately preceding the Subject Incident.

38.     The decedent's cell phone bills for the period June 6, 2014.

39.     All Communications sent by or to the decedent during the 24 hour period immediately preceding the Subject Incident.

40.     Documents sufficient to identify all schools the decedent attended and training received by the decedent since high school, including any medical training or education, automotive mechanical training or education, or engineering-related training or education, and to identify the dates during which the decedent attended such schools or received such training and the degree, certificate or professional license received.

41.     All employment records for the decedent for the ten year period immediately preceding the Subject Incident, including evaluations, disciplinary records, testing data, employment and personnel files, pay stubs, and other income records.

42.     All Documents evidencing the decedent's income during the ten year period immediately preceding the Subject Incident.

43.     All Documents sufficient to identify the decedent's service, if any, in any branch of the military, the branch and dates of such service, and the official reason for any discharge.

44.     All Communications Concerning New GM, New GM vehicles, this litigation, or the Subject Incident sent to or by any expected witness identified in Your response to Interrogatory No. 2 of New GM's First Interrogatories.

45.     A complete copy of any settlement agreement, release, or other agreement or understanding with any Person with respect to any injuries, damages, or medical conditions claimed as a result of the Subject Vehicle or in connection with or arising out of the Subject Incident.

46.     A signed and notarized copy of the authorization for release of the following:

    (a)     the decedent's medical records;

    (b)     the decedent's educational records;

    (c)     the decedent's employment records;

    (d)     the decedent's insurance records;

    (e)     the decedent's motor vehicle records;

    (f)     the decedent's tax records;

    (g)     the decedent's cell phone records.

47.     The Subject Vehicle.

48.     The ignition key used in the Subject Vehicle at the time of the Subject Incident.

49.     The key ring attached to the ignition key used in the Subject Vehicle at the time of the Subject Incident.

50.     All items on the key ring attached to the ignition key used in the Subject Vehicle at the time of the Subject Incident.

51.     All Documents You believe demonstrate that an Ignition-Switch Related Event caused the Subject Incident.

52.     All Documents and Communications provided by You or on Your behalf or by Your counsel Concerning the Subject Vehicle, the Subject Incident, Your claims, and/or Your alleged injuries to the following: (a) any state government or state regulatory body or any departments, divisions, staff members, or technical experts or personnel of the state government or any state regulatory body; or (b) any federal government or regulatory body including but not limited to members of Congress, members of the Senate, the National Highway Traffic Safety Administration, or any departments, divisions, staff members, or technical experts or personnel of the federal government or any federal regulatory body.

53.     All Documents You have received, from 2004 to present, from Persons other than New GM in this above-entitled cause number that relate to the design, performance, manufacture, testing, inspection, marketing, and/or distribution of any Subject Vehicle component for which You claim is defective.

54.     All Documents You intend to use at trial.

55.     All Documents You believe support a claim for punitive damages, including, but not limited to, those related to New GM's finances or capitalization.

56.     All Documents and Communications You identified, reviewed, relied on, consulted, used, or referenced, in preparing or finalizing Your responses to New GM's First Interrogatories.

57.    All Documents and Communications You identified, reviewed, relied on, consulted, used, or referenced, in preparing or finalizing Your responses to Defendant Jones' First Interrogatories.

DATED: April ___, 2015                    Respectfully submitted,

                                          MOORE INGRAM JOHNSON & STEELE, LLP

                                          _____
                                          Robert D. Ingram (Ga. Bar No. 383405)
                                          Jeffrey A. Daxe (Ga. Bar No. 213701)
                                          Carey E. Olson (Ga. Bar No. 843080)
                                          Ryan M. Ingram (Ga. Bar No. 394318)
                                          326 Roswell Street
                                          Marietta, GA  30060
                                          Telephone:    (770) 429-1499
                                          Facsimile:    (770) 429-8631
                                          Email:  ringram@mijs.com
                                          Email:  jad@mijs.com
                                          Email:  colson@mijs.com
                                          Email:  rmingram@mijs.com

## CERTIFICATE OF SERVICE

I certify that on this __ day of April 2015, a true and correct copy of DEFENDANT

GENERAL MOTORS LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO

PLAINTIFFS was served upon Counsel of record by U.S. Postal Service First Class Mail,

postage prepaid, as follows:

<table>
<tr><td>Lance A. Cooper</td><td>William Dale Ellis Jr.</td></tr>
<tr><td>THE COOPER FIRM</td><td>Sharon Ware & Associates</td></tr>
<tr><td>531 Roseland Street, Suite 200</td><td>2400 Century Pkwy NE, Ste. 200</td></tr>
<tr><td>Marietta, GA 30060</td><td>Atlanta, GA 30345-3136</td></tr>
</table>

R. Michael Malcom, Esq.
Paul L. Rosenthal, Esq.
Preston & Malcom
110 Court Street
Monroe, Georgia 30655

*Attorneys for Defendant Victoria Jones*

*Attorney for Plaintiffs*

MOORE INGRAM JOHNSON & STEELE, LLP

_____

Jeffrey A. Daxe

326 Roswell Street
Marietta, GA 30060
Telephone:    (770) 429-1499
Facsimile:    (770) 429-8631

# IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually, and as Administrators Of the Estate of MICHAEL ERIC PATE, deceased, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 14A-2712-1 |
| v. | ) ) | |
| GENERAL MOTORS LLC, and VICTORIA NICOLE JONES, | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT GENERAL MOTORS' FIRST INTERROGATORIES TO PLAINTIFFS

Pursuant to O.C.G.A. § 9-11-33, Defendant General Motors LLC ("GM") hereby requests that Plaintiffs answer, separately and fully in writing, under oath, the following Interrogatories (each an "Interrogatory" and collectively the "Interrogatories") within thirty (30) days of service upon you.

## DEFINITIONS

1.      "Complaint" means the complaint You filed in this action.

2.      "Counsel" means The Cooper Firm and its agents, experts working under its direction, employees, attorneys, partners, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, and successors.

3.      "Documents" means all materials encompassed by O.C.G.A. § 9-11-34, including, without limitation, the originals (or copies when originals are not available), or any non-identical copies or drafts (whether different from the original because of notes made on such copies or otherwise), of every writing or record of every type and description, including letters, correspondence, diaries, memoranda, tapes, electronic data or storage, stenographic or

handwritten notes, studies, publications, books, pamphlets, pictures, films, voice recordings, reports, financial statements, applications, e-mails, tests, drawings, graphs, charts, photographs, videotapes, sound recordings, images, and any other electronic medium by which information is stored or communicated.

4.      "Ignition-Switch Related Event" means an incident during which the ignition switch in the Subject Vehicle moved from the run position to accessory or otherwise moved out of the run position resulting in a partial loss of electrical power, turning off the engine, a loss of power steering and/or caused the airbags not to deploy.

5.      "Identify" when referring to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

6.      "Identify" when referring to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified once in accordance with this definition, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

7.      "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

8.      "State" means to state, to the extent known, all relevant facts discoverable under O.C.G.A. § 9-11-34.  When used in reference to a contention, "State" shall include all facts, Documents, and communications negating as well as supporting the contention.

9.      "Subject Incident" means the incident giving rise to this litigation, described in Paragraphs 11-14 of Your Complaint.

10. "Subject Vehicle" means the 2005 Cadillac CTS defined as "CTS" in Paragraph 10 of Your Complaint.

11. "You" or "Your" means Michael E. Pate and Barbara J. Pate, Individually, and as Administrators of the Estate of Michael Eric Pate, and all Your agents, experts, employees, attorneys, representatives, predecessors and/or successors.

12. Whenever the singular is used, it shall also be taken to include the plural, and vice versa. The use of terms "and," "or," or "and/or" shall be construed as encompassing "and," "or," and "and/or," so as to bring within the scope of the response all information that might otherwise be construed to be outside its scope.

13. The term "all" includes the word "any" and vice versa; and "each" includes the word "all" and vice versa.

14. The past tense of a verb shall be construed to include the present tense and vice versa.

## INSTRUCTIONS

1. State the Interrogatory in full before giving the answer.

2. Each interrogatory shall be answered fully, in writing and under oath, unless it is objected to, in which event You or Your representative shall state the reason(s) for objection and shall answer the interrogatory to the extent the interrogatory is not objected to.

3. The response to each Interrogatory shall include all responsive knowledge or information within Your possession, custody, or control, including, without limitation, any responsive knowledge or information in the possession of Counsel, any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on Your behalf, in order to fully respond to these requests.

4.     If You cannot answer the following interrogatories in full after exercising due diligence to secure the full information to do so, state an answer to the extent possible, specifying Your inability to answer the remainder, and stating whatever information or knowledge You have concerning the unanswered portion.

5.     If in responding to these interrogatories You or Your representative encounters any alleged ambiguity, set forth the matter deemed ambiguous and the construction used in responding.

6.     If a claim of privilege is asserted in objecting to any interrogatory, or sub-part thereof, furnish the following information with respect to that portion of the interrogatory as to which the claim of privilege is asserted:  (a) the basis on which the privilege is claimed; (b) the type of information withheld; (c) the general subject matter of the information withheld.

7.     State all grounds for objection to an interrogatory with specificity.

8.     The responses to the interrogatories are to be signed by the Person making them, and the objections are to be signed by the attorney making them.

9.     If You respond to any Interrogatory by referring to business records produced pursuant to O.C.G.A. § 9-11-33(c), identify by bates number and date of production the document(s) or data from which You contend that the answer may be derived.

10.     You shall supplement Your responses if You come into possession, custody, or control of responsive knowledge or information between the time of the initial response and the time of the trial herein, by promptly amending Your responses.

## **INTERROGATORIES**

INTERROGATORY NO. 1: For each Person identified in Your Response No. 2 to Defendant Jones's First Interrogatories, state the facts and/or knowledge believed to be in each person's possession.

INTERROGATORY NO. 2:  Identify each and every Person You may call as a witness in this lawsuit, including each Person's name, last known address, telephone number, employer, title or job description, the anticipated testimony of each Person, and whether You have contacted the Person in connection with this litigation.

INTERROGATORY NO. 3:  State the decedent's social security number.

INTERROGATORY NO. 4:  State any prior names or aliases used by the decedent.

INTERROGATORY NO. 5:  State the decedent's driver's license number and the state of issuance.

INTERROGATORY NO. 6:  State whether the decedent's driver's license has ever been suspended or revoked, and describe the circumstances of such suspension or revocation, including the date and the reason.

INTERROGATORY NO. 7:  Identify all traffic citations or tickets issued to the decedent as a driver in the last ten years, including the date of each citation and the vehicle the decedent was driving, and explain how the citation or ticket was resolved.

INTERROGATORY NO. 8:  Identify all vehicular accidents the decedent has been involved in as a driver in the last ten years (other than the Subject Incident), including the date of each accident, the make, model and year of the vehicle the decedent was driving, the general circumstances of each accident, who was found to be at fault, if anyone, and any injuries sustained by the decedent or any other Person (including whether hospitalization was required).

INTERROGATORY NO. 9:  Identify all Persons who resided with the decedent at the time of the Subject Incident and their relationship to the decedent.

INTERROGATORY NO. 10: Identify every Person with a financial interest in this lawsuit.

INTERROGATORY NO. 11: State the name and address of the decedent's employers for the five-year period immediately preceding the Subject Incident, and, for each job that the decedent held, include the decedent's position or title, the dates the decedent held those positions or titles, the decedent's salary or compensation, and the reason the decedent left.

INTERROGATORY NO. 12: State the decedent's total annual gross income for each of the five years preceding the Subject Incident, and identify each source of income.

INTERROGATORY NO. 13: Identify each physician, osteopath, chiropractor, or other practitioner of any of the healing arts, who examined or treated the decedent in the ten year period preceding the Subject Incident.

INTERROGATORY NO. 14: Identify each physician, osteopath, chiropractor, or other practitioner of any of the healing arts, who examined or treated the decedent in connection with the Subject Incident.

INTERROGATORY NO. 15: State the nature and extent of any physical or mental disability, impairment, or handicap of any kind the decedent possessed at the time of the Subject Incident, and Identify (a) the condition, (b) the date of onset, (c) the current status of the condition, (d) all medications the decedent took for the condition, (e) all treatment or therapy the decedent received for the condition, and (f) all treating agencies, hospitals or physicians who treated the decedent for such condition.

INTERROGATORY NO. 16: State the decedent's sitting height and body size (chest, waist, inseam and hip measurements).

INTERROGATORY NO. 17: State the decedent's visual acuity at the time of the Subject Incident, including the decedent's corrected and uncorrected vision, and identify the person who performed the decedent's last eye exam and state the date of that exam.

INTERROGATORY NO. 18: State whether the decedent made a claim for bodily injury or disability during the fifteen years preceding the Subject Incident, and, if so, describe each injury or disability and how it occurred and state the date and place of onset.

INTERROGATORY NO. 19: Identify the person who purchased the Subject Vehicle.

INTERROGATORY NO. 20: Identify all current and prior owners of the Subject Vehicle.

INTERROGATORY NO. 21: Identify the owner of the Subject Vehicle on the date of the Subject Incident.

INTERROGATORY NO. 22: State the frequency with which the decedent drove the Subject Vehicle prior to the Subject Incident.

INTERROGATORY NO. 23: Identify every dealership, automotive repair or service provider or other Person that has: (a) performed any service, repair, or maintenance action on the Subject Vehicle; (b) performed any modification, alteration, or addition of accessories to the Subject Vehicle at the time the Subject Vehicle was purchased and up to the present; or (c) performed any recall repair on the Subject Vehicle. For each such dealership, provider or Person identified, provide the address, a description of the work performed and the date it was performed.

INTERROGATORY NO. 24: If the Subject Vehicle was modified in any way after the time of its original sale and before the Subject Incident, describe each modification and identify all persons or places of business making such modification(s) and all persons having knowledge of the modification(s).

INTERROGATORY NO. 25: If the Subject Vehicle has been involved in any accident or has been damaged in any way, other than the Subject Incident, describe each accident and each item of damage, and identify all persons having knowledge of the accident or damage.

INTERROGATORY NO. 26: Identify each person who inspected the Subject Vehicle or any part thereof prior to or subsequent to the Subject Incident and identify anyone who removed any parts from the Subject Vehicle, explain exactly which parts were removed and how they were removed, and provide the chain of custody from the date of removal until present (listing the dates each custodian had the removed parts in his/her possession).

INTERROGATORY NO. 27: State the present location of the Subject Vehicle and identify all custodians of the Subject Vehicle and each part thereof since the Subject Incident and state for each the time periods during which the custodian had custody of the Subject Vehicle or part and where the Subject Vehicle or part was located.

INTERROGATORY NO. 28: Identify all items on the key ring attached to the ignition key of the Subject Vehicle at the time of the Subject Incident, and state the configuration of those items on the key ring at the time of the Subject Incident.

INTERROGATORY NO. 29: Identify all Documents You believe demonstrate that an Ignition-Switch Related Event caused the Subject Incident.

INTERROGATORY NO. 30: Identify any Ignition Switch-Related Event that You or any other Person claims to have experienced in the Subject Vehicle other than the Subject Incident, the number of such incidents, and, for each such incident, identify the driver and any passengers in the Subject Vehicle at that time.

INTERROGATORY NO. 31: State whether Michael E. Pate, Barbara J. Pate, or Michael Eric Pate, prior to the date of the Subject Incident, had knowledge of any Cadillac CTS turning

off inadvertently while in operation and, for any such incident, state the facts known to each person and the date on which they were learned.

INTERROGATORY NO. 32: State whether the Subject Vehicle's ignition switch has been cycled at any time since the Subject Incident, Identifying when, by whom, and how many times.

INTERROGATORY NO. 33: If You contend that any component of the Subject Vehicle was defectively manufactured or designed, please provide the following information for each: name or type of part, the alleged defect or defects, and the identity of each expert upon whose opinion the contention of defect is based.

INTERROGATORY NO. 34: Identify the alternative design (including make and model) You contend should have been utilized by GM in place of any purportedly defective component(s) of the Subject Vehicle and identify all information and/or testing on which You rely in contending that: (1) the proposed alternative design was available to GM at the time the Subject Vehicle was manufactured; (2) the utility of the proposed alternative design outweighed the utility of the design used in the Subject Vehicle; and (3) the proposed alternative design would have reduced or eliminated Your injuries.

INTERROGATORY NO. 35: Describe the decedent's activities during the 24-hour period immediately preceding the Subject Incident.

INTERROGATORY NO. 36: Identify all Persons with knowledge of the decedent's activities during the 24-hour period immediately preceding the Subject Incident, and, for each, describe the knowledge or information believed to be in each Person's possession.

INTERROGATORY NO. 37: State where the decedent had been immediately prior to the Subject Incident, including the address of the location and the time the decedent left.

INTERROGATORY NO. 38: State where the decedent was traveling to at the time of the Subject Incident, including the address of the destination, the decedent's intended route, and the time the decedent was due there.

INTERROGATORY NO. 39: State whether the decedent consumed any alcoholic beverage or any controlled substance (e.g., marijuana, cocaine, heroin, etc) in the 24-hour period immediately preceding the Subject Incident. If the answer is affirmative, please identify the place where the alcoholic beverage(s) and/or controlled substance(s) were purchased, the time when and location where such alcoholic beverage(s) and/or controlled substance(s) were consumed, any person(s) present, and the amount of alcoholic beverage(s) and/or controlled substance(s) consumed.

INTERROGATORY NO. 40: State all facts forming the basis for Your answer to Interrogatory No. 39.

INTERROGATORY NO. 41: Identify all alcohol or chemical dependency conditions that the decedent experienced, was diagnosed with, or was treated for during the past ten years, and Identify (a) the condition, (b) the date of onset, (c) the current status of the condition, (d) all medications the decedent took for the condition, (e) all treatment or therapy the decedent received for the condition, and (f) all treating agencies, hospitals or physicians who treated the decedent for such condition.

INTERROGATORY NO. 42: Identify all medications (prescription or over-the-counter) taken by the decedent in the last five years for conditions unrelated to the Subject Incident, including dosage, frequency of use, dates of uses, the condition for which it was taken, the prescribing physician, and the name and address of the pharmacy where the prescription was filled for prescription medications.

INTERROGATORY NO. 43: Identify all Persons alleged to have witnessed the Subject Incident.

INTERROGATORY NO. 44: State whether You have investigated the Subject Incident, and, if so, describe the investigation by stating the date of the investigation, identifying all Documents that relate to the investigation, identifying each person who conducted the investigation, and by identifying each person who was interviewed and stating whether a statement was obtained from each such person.

INTERROGATORY NO. 45: State whether the Subject Vehicle has been powered on at any time since the Subject Incident, Identifying when, by whom, and how many times.

INTERROGATORY NO. 46: State all facts forming the basis for the following statement made in Your Response No. 16 to Defendant Jones's First Interrogatories: "Mr. Pate had his three-point seatbelt (shoulder and lap belt) securely fastened."

INTERROGATORY NO. 47: State the decedent's 10-digit cellular telephone number(s) at the time of the Subject Incident, and, for each, include the name and address of the service provider and the account holder.

INTERROGATORY NO. 48: State all e-mail addresses used by the decedent during the five years preceding the Subject Incident, and, for each, list the dates during which the decedent used to account, and identify the name and address of the service provider(s) and the account holder(s).

INTERROGATORY NO. 49: Identify each social networking site that the decedent used during the five years preceding the Subject Incident (e.g., Facebook, Twitter, Instagram, LinkedIn, etc), and, for each, include the name and address of the service provider and account holder, the decedent's user name or avatar, the internet address where the account is/was

available, the dates during which the decedent used the account, whether the account is presently

active, and, if not, when the account was deactivated and by whom.

INTERROGATORY NO. 50: State whether the decedent had a cellular telephone in the

Subject Vehicle at the time of the Subject Incident, and, if so, identify the brand, model, serial

number and current location.

INTERROGATORY NO. 51: State whether the decedent used a cellular telephone for

any purpose (e.g., phone, camera, text, email, or other data usage) in the 15 minutes prior to the

Subject Incident and, if so, describe the use.

INTERROGATORY NO. 52: State whether there was a global positioning system

("GPS") unit (whether an individual GPS unit, a smartphone with GPS capabilities, or any other

vehicle tracking technology) in the decedent's vehicle on the date of the Subject Incident, and, if

so, identify the brand, model, serial number and current location, and state whether it was on at

the time of the Subject Incident.

INTERROGATORY NO. 53: State whether the decedent has ever testified under oath

(e.g., in court, by deposition, by affidavit, otherwise), and, if so, state the case style and number,

the court or administrative body where the action of proceeding was pending, the nature of the

case, and the decedent's role or capacity in the case.

INTERROGATORY NO. 54: List the full style, action number, court, and court term of

any lawsuit or other claims filed, other than the present action, in connection with the Subject

Incident.

INTERROGATORY NO. 55: If You have received any type of payment from any source

in connection with or arising from the Subject Incident, identify the source and amount of each

payment, and identify any Documents executed in connection with each payment, including, but not limited to, any settlement agreements or releases.

INTERROGATORY NO. 56: Identify all mental or emotional injuries that You claim resulted from the Subject Incident, and Identify (a) the injury, (b) the date of onset, (c) the current status of the injury, (d) all medications You have taken for the injury, (e) all treatment or therapy You have received for the injury, and (f) all treating agencies, hospitals or physicians who have treated You for such injuries.

INTERROGATORY NO. 57: State whether decedent ever served in the military, and, if so, identify each branch of the military, the dates of entry and discharge, the type of discharge (i.e., honorable or dishonorable), and decedent's military serial number.

INTERROGATORY NO. 58: Beginning with high school (or ninth grade equivalent), identify each school that decedent attended, including but not limited to educational, vocational, and technical training programs, and, for each, include the name and address, dates of attendance, course of study, and degrees or certificates received.

INTERROGATORY NO. 59: Identify any written or oral statement about the Subject Incident given by You or Your representative, and for each such statement Identify the Person to whom the statement was made, when the statement was made, and whether the statement was written or oral.

INTERROGATORY NO. 60: Identify all vehicles You or a member of Your household currently own or lease, including make, model, model year, and trim level.

INTERROGATORY NO. 61: Identify all evidence You will rely on to support any claim that New GM acted recklessly with respect to the design, manufacture or recall of the Subject Vehicle.

INTERROGATORY NO. 62: Identify all evidence You will rely on to support any claim for punitive damages, including, but not limited to, evidence related to New GM's finances or capitalization.

INTERROGATORY NO. 63: Identify all Documents You relied on or referred to in responding to these interrogatories.

INTERROGATORY NO. 64: Identify each person who assisted in preparing Your responses to these interrogatories.

INTERROGATORY NO. 65: Identify all Documents You relied on or referred to in responding to Defendant Jones' First Interrogatories.

INTERROGATORY NO. 66: Identify each person who assisted in preparing Your responses to Defendant Jones' First Interrogatories.

DATED: April ___, 2015       Respectfully submitted,

MOORE INGRAM JOHNSON & STEELE, LLP

_____

Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone:    (770) 429-1499
Facsimile:    (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

## CERTIFICATE OF SERVICE

I certify that on this __ day of April, 2015, a true and correct copy of DEFENDANT

GENERAL MOTORS LLC'S FIRST INTERROGATORIES TO PLAINTIFFS was served upon

Counsel of record by U.S. Postal Service First Class Mail, postage prepaid, as follows:

Lance A. Cooper                          William Dale Ellis Jr.
THE COOPER FIRM                          Sharon Ware & Associates
531 Roseland Street, Suite 200           2400 Century Pkwy NE, Ste. 200
Marietta, GA  30060                      Atlanta, GA 30345-3136

R. Michael Malcom, Esq.                  *Attorneys for Defendant Victoria Jones*
Paul L. Rosenthal, Esq.
Preston & Malcom
110 Court Street
Monroe, Georgia  30655

*Attorney for Plaintiffs*

MOORE INGRAM JOHNSON & STEELE, LLP

_____

Jeffrey A. Daxe

326 Roswell Street
Marietta, GA  30060
Telephone:    (770) 429-1499
Facsimile:    (770) 429-8631

## Jeffrey A. Daxe

| | |
|---|---|
| **From:** | Jeffrey A. Daxe |
| **Sent:** | Monday, April 06, 2015 1:25 PM |
| **To:** | 'Doreen Lundrigan'; Lance Cooper (lance@thecooperfirm.com) |
| **Cc:** | Brian Sieve; Robert D. Ingram; R D. Smith; dale.ellis@statefarm.com |
| **Subject:** | GM adv Pate |
| **Attachments:** | Non-Party Walmart.pdf; Non-Party Tim Stewart Funeral Home.pdf; Non-Party Rockdale Medical Center.pdf; Non-Party National EMS.pdf; Non-Party Maloy's Auto Serv.pdf; Non-Party Haver Filling Systems, Inc.pdf; Non-Party Diagnostic Imaging Specialist.pdf; Non-Party Chancey's Wrecker Service.pdf; Non-Party Atlanta Medical Center.pdf |

Lance,

Attached are 9 non-party rfpd we would like to serve.  These pertain primarily to former employers, treating physicians, and facilities which performed vehicle maintenance.

Please let us know if you will consent to same, so we can include reference to these requests in the consent order currently underway.

Please let me know if you have any questions.

Thanks, Jeff

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP

M I J S
MOORE INGRAM JOHNSON & STEELE

| MIJS Profile | Practice Areas | Events | Locations |

| | |
|---|---|
| Main: | 770-429-1499 |
| Fax: | 770-429-8631 |

JAD@mijs.com
Attorney Biography

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

**Confidentiality Notice**
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.


EXHIBIT
B

April 2, 2015

*Certified Mail #7007 3020 0000 7767 3548*
Tim Stewart Funeral Home, Inc.
670 Tom Brewer Road
Post Office Box 65
Loganville, Georgia 30052

*Certified Mail #7007 3020 0000 7767 3555*
Timothy L. Stewart
Registered Agent for Tim Stewart Funeral Home, Inc.
300 Simonton Road
Lawrenceville, Georgia 30245

Re:   Michael E. Pate & Barbara J. Pate, individually and as administrators of
the estate of Michael Eric Pate, deceased, v. General Motors LLC,
State Court of Cobb County, Civil Action No. 14-A-2712-1

|   |   |
|---|---|
| **Decedent:** | **Michael Eric Pate** |
| **DOB:** | **August 22, 1989** |
| **DOD:** | **June 7, 2014** |
| **SSN:** | **XXX-XX-3605** |

To Timothy L. Stewart & Tim Stewart Funeral Home & Crematory:

        This firm represents General Motors LLC in the above-referenced lawsuit.
Pursuant to O.C.G.A. § 9-11-34, please forward to this office a copy of any records or any
other documentation regarding your association with Michael Eric Pate. This request
encompasses all records regarding your association with Mr. Pate and/or the family of
Mr. Pate at any time, without limitation.

        We will promptly pay your reasonable copying costs upon receipt of the
documents with the Response and Verification fully executed, and your billing

- 1 -

Tim Stewart Funeral Home
April 2, 2015
Page 2

statement.  Should you have any questions regarding this request, please do not hesitate to contact me at your convenience.  Thank you in advance for your attention to this request, and we look forward to receiving your response within thirty (30) days as required by O.C.G.A. § 9-11-34.

Sincerely yours,

MOORE INGRAM JOHNSON & STEELE, LLP

JAD                                    Jeffrey A. Daxe
Encl.
cc:      Brian D. Sieve, Esq.

- 2 -

# AFFIDAVIT AND VERIFICATION

STATE OF _____

COUNTY OF _____

|  |  |
|---|---|
| **Decedent:** | **Michael Eric Pate** |
| **DOB:** | **August 22, 1989** |
| **DOD:** | **June 7, 2014** |
| **SSN:** | **XXX-XX-3605** |

1. We are a Georgia business that has a professional association or relationship with the above-referenced individual and/or the family of the above-referenced individual.

2. The attached response to Request for Production of Documents is a true and correct copy of all records or other documentation which has either been generated by us as a result of our professional association or employment relationship with the above-referenced individual or received from other persons or entities as a result of said association.

3. The attached records are kept in the normal course of business.

4. The facts represented in any written records contained in the attached response were entered upon the records shortly after the occurrence of the incidents which they purport to represent or reference and as a part of the normal course of business.

5. The attached response is a copy of all records relating to the above-referenced individual.

6. The attached documents include <u>ALL</u> documents within our control or possession which are requested in the Request for Production of Documents served upon us.

_____
Records Custodian
Tim Stewart Funeral Home, Inc.

Print Name:_____
Date:         _____

Sworn to and subscribed before me

this _____ day of _____, 2015.

_____
NOTARY PUBLIC
My Commission Expires:

- 1 -

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA | ) | |
| J. PATE, Individually and as | ) | |
| Administrators of the Estate of | ) | |
| MICHAEL ERIC PATE, deceased | ) | |
| | ) | Civil Action |
| *Plaintiffs,* | ) | File No.: 14-A-2712-A |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAL MOTORS LLC and | ) | 12 Person Jury Trial Demanded |
| VICTORIA NICOLE JONES, | ) | |
| | ) | |
| *Defendants.* | ) | |

## GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS TO NON-PARTY TIM STEWART FUNERAL HOME, INC.

TO:    Tim Stewart Funeral Home, Inc.
       670 Tom Brewer Road
       Post Office Box 65
       Loganville, Georgia 30052
       *Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3548*

       Timothy L. Stewart
       300 Simonton Road
       Lawrenceville, Georgia 30245
       *Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3555*

I herewith serve upon you the following Request for Production of Documents pursuant to O.C.G.A. § 9-11-34(c). You are requested to produce the documents and materials hereinafter requested herein within thirty (30) days after service of this request pursuant to O.C.G.A. § 9-11-34, at the offices of Moore Ingram Johnson & Steele, LLP, 326 Roswell Street, Marietta, Georgia 30060, where facilities are available for proper copying. In lieu of production of the original of such documents, legible photocopies may be substituted and produced to the undersigned by mail. Please

- 1 -

complete the attached Affidavit and Verification form and return it with copies of the documents, or bring it with you at the time the documents are produced.

## **DEFINITIONS**

1.

"You" or "Your" means  Tim Stewart Funeral Home & Crematory, Inc., its subsidiaries or affiliates, and/or any acting on its behalf.

2.

"Document" includes, without limitation, the following items, whether printed, recorded, or reproduced by any other mechanical means or process, or written or produced by hand:  agreements; contracts; orders; purchase orders; communications; correspondence; letters; electronic information; e-mails (including those that have been deleted but which are nonetheless recoverable); telegrams; tape recordings; memoranda, summaries, notes or other recordings of telephone conversations, personal conversations or meetings; agenda of meetings; notices; records; interoffice memoranda, personal memoranda; photographs; photographic slides; motion picture film; charts; graphs; diagrams; drawings; bookkeeping entries; bills; invoices; orders; receipts; canceled checks; vouchers; ledger sheets; computer data (including data contained in or on hard drives, backup files, floppy disks or any other manner of storage), reports; statements of witnesses; findings of investigations; files; records of negotiations; reports of experts; reports of consultants; papers; books; records; objects; summaries; video tape; maps; posters; pamphlets; flyers; and any and every other writing or other graphic means by which human intelligence is in any way transmitted or reported.

- 2 -

Case 1:14-md-02543-JMF Document 9 Filed 04/22/13 Page 4 of 106

3.

Pursuant to O.C.G.A. § 9-11-26(e), this request shall be deemed continuing so as to require further and supplemental production of documents in the event You obtain or discover additional documents within the scope of this request between the time of initial production and the time of hearing or trial.

## DOCUMENTS REQUESTED

1.

Any and all documents which describe or document the services provided for **MICHAEL ERIC PATE** and/or the family of **MICHAEL ERIC PATE**, including but not limited to cremation and funeral services.

2.

Any and all documents or materials of any kind related to **MICHAEL ERIC PATE** and/or the family of **MICHAEL ERIC PATE**, including but not limited to correspondences, records, receipts, invoices, estimates, bills or other tangible items.

3.

Any other document in your possession or control relating to **MICHAEL ERIC PATE** and/or the family of **MICHAEL ERIC PATE**.

[Signature on next page]

- 3 -

Respectfully submitted this _____ day of April, 2015.

**MOORE INGRAM JOHNSON & STEELE, LLP**

_____

Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

Attorneys for Defendant General Motors LLC

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the foregoing **GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENT TO NON-PARTY TIM STEWART FUNERAL HOME, INC.** was duly served upon all parties in this matter by mailing a copy of same postage pre-paid via First Class U.S. Mail, addressed as follows:

LANCE A. COOPER
**The Cooper Firm**
531 Roselane Street, Suite 200
Marietta, Georgia 30060

R. MICHAEL MALCOM
PAUL L. ROSENTHAL
**Preston & Malcom**
110 Court Street
Monroe, Georgia 30655

*Attorneys for Plaintiffs*

WILLIAM DALE ELLIS JR.
**Sharon Ware & Associates**
2400 Century Pkwy NE, Ste. 200
Atlanta, GA 30345-3136
Attorneys for Defendant Victoria Jones

This _____ day of April, 2015.

MOORE INGRAM JOHNSON & STEELE, LLP

_____
Jeffrey A. Daxe

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Telephone: (770) 429-1499
Facsimile: (404) 429-8631
jad@mijs.com

1

April 2, 2015

**Certified Mail #7007 3020 0000 7767 3654**
National EMS
Post Office Box 1289
Conyers, Georgia 30012

      RE:   <u>Michael E. Pate & Barbara J. Pate, individually and as administrators of
            the estate of Michael Eric Pate, deceased, v. General Motors LLC,</u>
            State Court of Cobb County, Civil Action No. 14-A-2712-1

            **Decedent:**  **Michael Eric Pate**
            **DOB:**       **August 22, 1989**
            **SSN:**       **XXX-XX-3605**

TO WHOM IT MAY CONCERN:

      This firm has been retained to represent the interest of General Motors LLC in
the above-referenced civil action.

      Please forward to this office a copy of <u>all medical records</u> or any other
documentation regarding your professional association or treatment of **Michael Eric
Pate.**  We would also appreciate your providing us with an itemized list of all expenses
incurred by **Michael Eric Pate.**

      To comply with the HIPAA Privacy Rule set forth in 45 C.F.R. § 164.512
(e)(1)(ii)(A), copies of the attached Request for Production of Documents have been
served on all parties to this action, including the individual whose information is being
requested.  Furthermore, Georgia law requires that you copy your records and forward
them to us.  The law <u>DOES NOT REQUIRE</u> us to provide an authorization or release
from **Michael Eric Pate.**  <u>See</u> O.C.G.A. § 9-11-34.  If you have objections to producing
the requested documents, your objections must be made within twenty (20) days of your

National EMS
April 2, 2015
Page 2

receipt of this request. Also, other parties to this action have the right to object to producing the requested documents, but their objection must be made within twenty (20) days of their receipt of the request in accordance with O.C.G.A. § 9-11-34(b)(2). If you do not receive a written objection within 20 days, the law requires you to produce your records at that time. See O.C.G.A. §§ 9-11-34(b)(2) and 9-11-34(c)(1). Please have someone **reproduce all files pertaining to any treatment at any time**, including the file folders and/or files jackets and all items listed in the attached Request for Production concerning Michael Eric Pate, sign the attached verification certifying that it is true and complete, and forward the documents to us along with the **original verification.**

If you require a pre-payment, please fax a bill or statement to 770-429-8631 along with your **tax identification number** and the number of pages included in your records. **If that payment exceeds $50.00, please notify us of the cost prior to billing**, and whether an abstract is available. We will remit payment accordingly. We pay the reasonable cost for duplicating the records and postage only. Please do not prepare any special reports, summaries, or transcriptions, other than those which are already contained in the patient's records. If you require additional information in order to locate this party in your records, please forward a list of the needed information, and we will try to assist you in your search. If you are unable to locate this party in your records, please notify us in writing.

Thank you very much for your assistance in this matter. Please feel free to call should you have any questions.

Sincerely yours,

MOORE INGRAM JOHNSON & STEELE, LLP

Jeffrey A. Daxe

JAD
Encl.
cc:     Brian D. Sieve, Esq.

# AFFIDAVIT AND VERIFICATION

STATE OF _____

COUNTY OF _____

|  |  |
|---|---|
| **Decedent:** | **Michael Eric Pate** |
| **DOB:** | **August 22, 1989** |
| **SSN:** | **XXX-XX-3605** |

1.  We are a health care provider who has rendered treatment to the above-referenced patient.

2.  The attached response to Request for Production of Documents is a true and correct copy of all records or other documentation which has either been generated by us as a result of my treatment or received from other health care providers regarding their treatment of the above referenced patient.

3.  The attached records are kept in the normal course of business.

4.  The facts represented in the written records were entered upon the records shortly after the occurrence of the incidents which they purport to represent or reference as a part of the normal course of business.

5.  The attached response is a copy of the complete file regarding the above-referenced patient.

6.  The attached documents include <u>ALL</u> documents within our control or possession which are requested in the Request for Production of Documents served upon us.

_____
Records Custodian
National EMS

Print Name:_____
Date: _____

Sworn to and subscribed before me

this _____ day of _____, 2015.

_____
NOTARY PUBLIC

My Commission Expires:

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually and as Administrators of the Estate of MICHAEL ERIC PATE, deceased | ) ) ) ) ) | |
| *Plaintiffs,* | ) ) | Civil Action File No.: 14-A-2712-1 |
| v. | ) ) ) | |
| GENERAL MOTORS LLC and VICTORIA NICOLE JONES, | ) ) ) | 12 Person Jury Trial Demanded |
| *Defendants.* | ) ) | |

## GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS TO NON-PARTY NATIONAL EMS

TO:    National EMS
      Post Office Box 1289
      Conyers, Georgia 30012
      ***Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3654***

      **COMES NOW** General Motors LLC, Defendant in the above-styled action, and serves upon you this Request for Production of Documents, pursuant to O.C.G.A. § 9-11-34.

      You are hereby required to promptly produce **CERTIFIED COPIES** of the documents, designated below which are in your possession, custody or control unless an objection is filed within twenty-three (23) days from the date of this request. You may do so by mailing copies of said documents to **MOORE INGRAM JOHNSON & STEELE, LLP**, Emerson Overlook, 326 Roswell Street, Marietta, Georgia 30060.

      The requested documents are as follows:

- 1 -

(1)     Copies of each and every record, report, correspondence or writing of each and every kind or nature pertaining to or in any way connected with your treatment, examination, evaluation or professional association with **MICHAEL ERIC PATE.**

(2)     Copies of all reports by any other physicians or other practitioners of the healing arts, hospital records and evidence of expenses incurred, including copies of any statements rendered by you concerning **MICHAEL ERIC PATE** which are a part of your records.

(3)     Any and all other documents in your possession related to your professional treatment of **MICHAEL ERIC PATE.**

(4)     Initial patient questionnaire form and any other document wherein **MICHAEL ERIC PATE** responded to questions during office visits regarding her medical history or circumstances regarding his injury.

(5)     Itemized bill for all services rendered by you to **MICHAEL ERIC PATE.**

(6)     Copies of any booklets and/or brochures regarding your professional practice which have been distributed to any of your patients within one year before or after your treatment of **MICHAEL ERIC PATE.**

(7)     Copies of any correspondence, memos or other documents reflecting or regarding communication between you or anyone else in your office and **MICHAEL ERIC PATE** or any representative of **MICHAEL ERIC PATE** including his attorney.

[Signature on next page]

- 2 -

Respectfully submitted this ____ day of April, 2015.

**MOORE INGRAM JOHNSON & STEELE, LLP**

_____

Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

Attorneys for Defendant General Motors LLC

**CERTIFICATE OF SERVICE**

The undersigned attorney does hereby certify that a true and correct copy of the foregoing **GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENT TO NON-PARTY NATIONAL EMS** was duly served upon all parties in this matter by mailing a copy of same postage pre-paid via First Class U.S. Mail, addressed as follows:

LANCE A. COOPER
**The Cooper Firm**
531 Roselane Street, Suite 200
Marietta, Georgia 30060

R. MICHAEL MALCOM
PAUL L. ROSENTHAL
**Preston & Malcom**
110 Court Street
Monroe, Georgia 30655

WILLIAM DALE ELLIS JR.
**Sharon Ware & Associates**
2400 Century Pkwy NE, Ste. 200
Atlanta, GA 30345-3136
Attorneys for Defendant Victoria Jones

*Attorneys for Plaintiffs*

This _____ day of April, 2015.

MOORE INGRAM JOHNSON & STEELE, LLP

_____
Jeffrey A. Daxe

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Telephone: (770) 429-1499
Facsimile: (404) 429-8631
jad@mijs.com

4

April 2, 2015

***Certified Mail # 7007 3020 0000 7767 3609***
Chancey's Wrecker Service, Inc.
539 McDaniel Mill Rd., SW
Conyers, GA 30012

***Certified Mail # 7007 3020 0000 7767 3616***
Chancey's Wrecker Service, Inc.
c/o Joanne Chancey, Registered Agent
539 McDaniel Mill Rd., SW
Conyers, GA 30012

      RE:    <u>Michael E. Pate & Barbara J. Pate, individually and as administrators of</u>
             <u>the estate of Michael Eric Pate, deceased, v. General Motors LLC,</u>
             State Court of Cobb County, Civil Action No. 14-A-2712-1

| | |
|---|---|
| **Decedent:** | **Michael Eric Pate** |
| **Vehicle:** | **2005 Cadillac C/T CTS Hi Feature** |
| **Vin Number:** | **1G6DP567X50103015** |
| **Date of Incident:** | **June 6, 2014** |
| **Location of Wreck:** | **Ga 20 and Zincara Road in Rockdale County** |

To Joanne Chancey and Chancey Wrecker Service, Inc.:

      This firm represents General Motors LLC in the above-referenced lawsuit. Pursuant to O.C.G.A. § 9-11-34, please forward to this office a copy of <u>any records</u> or any other documentation regarding your association with Michael Eric Pate or the above-referenced vehicle. This request encompasses <u>all records</u> regarding your association with the vehicle or Mr. Pate at any time, without limitation.

Chancey's Wrecker Service, Inc.
April 2, 2015
Page 2

     We will promptly pay your reasonable copying costs upon receipt of the documents with the Response and Verification fully executed, and your billing statement. Should you have any questions regarding this request, please do not hesitate to contact me at your convenience. Thank you in advance for your attention to this request, and we look forward to receiving your response within thirty (30) days as required by O.C.G.A. § 9-11-34.

            Sincerely yours,

            MOORE INGRAM JOHNSON & STEELE, LLP

            Jeffrey A. Daxe

JAD
Encl.
cc:    Brian D. Sieve, Esq.

# AFFIDAVIT AND VERIFICATION

STATE OF _____

COUNTY OF _____

|  |  |
|---|---|
| **Decedent:** | **Michael Eric Pate** |
| **Vehicle:** | **2005 Cadillac C/T CTS Hi Feature** |
| **Vin Number:** | **1G6DP567X50103015** |
| **Date of Incident:** | **June 6, 2014** |
| **Location of Wreck:** | **Ga 20 and Zincara Road in Rockdale County** |

1.  We are a Georgia business that has a professional association or relationship with the above-referenced individual or the family of the above-referenced individual.

2.  The attached response to Request for Production of Documents is a true and correct copy of all records or other documentation which has either been generated by us as a result of our professional association or employment relationship with the above-referenced individual or received from other persons or entities as a result of said association.

3.  The attached records are kept in the normal course of business.

4.  The facts represented in any written records contained in the attached response were entered upon the records shortly after the occurrence of the incidents which they purport to represent or reference and as a part of the normal course of business.

5.  The attached response is a copy of all records relating to the above-referenced individual or vehicle.

6.  The attached documents include <u>ALL</u> documents within our control or possession which are requested in the Request for Production of Documents served upon us.

 

 

_____
Records Custodian
Chancey's Wrecker Service, Inc.
Print Name:_____
Date:        _____

Sworn to and subscribed before me

this _____ day of _____, 2015.

_____
NOTARY PUBLIC
My Commission Expires:

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

MICHAEL E. PATE and BARBARA )
J. PATE, Individually and as )
Administrators of the Estate of )
MICHAEL ERIC PATE, deceased )
                           )     Civil Action
       *Plaintiffs,* )    File No.: 14-A-2712-1
                           )
v.                        )
                           )
GENERAL MOTORS LLC and )    12 Person Jury Trial Demanded
VICTORIA NICOLE JONES, )
                           )
       *Defendants.* )

## GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS TO NON-PARTY CHANCEY'S WRECKER SERVICE, INC.

TO:    Chancey's Wrecker Service, Inc.
        539 McDaniel Mill Rd., SW
        Conyers, GA 30012
        *Via Certified Mail Return Receipt Requested # 7007 3020 0000 7767 3609*

        Chancey's Wrecker Service, Inc.
        c/o Joanne Chancey, Registered Agent
        539 McDaniel Mill Rd., SW
        Conyers, GA 30012
        *Via Certified Mail Return Receipt Requested # 7007 3020 0000 7767 3616*

      I herewith serve upon you the following Request for Production of Documents

pursuant to O.C.G.A. § 9-11-34(c). You are requested to produce the documents and

materials hereinafter requested herein within thirty (30) days after service of this

request pursuant to O.C.G.A. § 9-11-34, at the offices of Moore Ingram Johnson &

Steele, LLP, 326 Roswell Street, Marietta, Georgia 30060, where facilities are available

for proper copying. In lieu of production of the original of such documents, legible

photocopies may be substituted and produced to the undersigned by mail. Please

- 1 -

complete the attached Affidavit and Verification form and return it with copies of the documents, or bring it with you at the time the documents are produced.

## **DEFINITIONS**

1.

"You" or "Your" means Chancey's Wrecker Service, Inc. and its subsidiaries or affiliates, or any persons acting on your behalf.

2.

"Document" includes, without limitation, the following items, whether printed, recorded, or reproduced by any other mechanical means or process, or written or produced by hand: agreements; contracts; orders; purchase orders; communications; correspondence; letters; electronic information; e-mails (including those that have been deleted but which are nonetheless recoverable); telegrams; tape recordings; memoranda, summaries, notes or other recordings of telephone conversations, personal conversations or meetings; agenda of meetings; notices; records; interoffice memoranda, personal memoranda; photographs; photographic slides; motion picture film; charts; graphs; diagrams; drawings; bookkeeping entries; bills; invoices; orders; receipts; canceled checks; vouchers; ledger sheets; computer data (including data contained in or on hard drives, backup files, floppy disks or any other manner of storage), reports; statements of witnesses; findings of investigations; files; records of negotiations; reports of experts; reports of consultants; papers; books; records; objects; summaries; video tape; maps; posters; pamphlets; flyers; and any and every other writing or other graphic means by which human intelligence is in any way transmitted or reported.

- 2 -

3.

Pursuant to O.C.G.A. § 9-11-26(e), this request shall be deemed continuing so as to require further and supplemental production of documents in the event You obtain or discover additional documents within the scope of this request between the time of initial production and the time of hearing or trial.

## DOCUMENTS REQUESTED

1.

Any and all documents or materials of any kind related to **MICHAEL ERIC PATE or the family of MICHAEL ERIC PATE** or vehicle VIN 1G6DP567X50103015, including but not limited to correspondences, records, receipts, invoices, estimates, bills or other tangible items.

2.

Any other document in your possession or control relating to your association with **MICHAEL ERIC PATE or the family of MICHAEL ERIC PATE** or vehicle VIN 1G6DP567X50103015.

3.

Any other document in your possession or control relating to automobile service or work performed on 2005 Cadillac CTS, Georgia License Plate BGA7543, VIN 1G6DP567X50103015.

[Signature on next page]

- 3 -

Respectfully submitted this _____ day of April, 2015.

**MOORE INGRAM JOHNSON & STEELE, LLP**

_____

Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

Attorneys for Defendant General Motors LLC

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the foregoing **GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENT TO NON-PARTY CHANCEY'S WRECKER SERVICE, INC.** was duly served upon all parties in this matter by mailing a copy of same postage pre-paid via First Class U.S. Mail, addressed as follows:

|  |  |
|---|---|
| LANCE A. COOPER | WILLIAM DALE ELLIS JR. |
| **The Cooper Firm** | **Sharon Ware & Associates** |
| 531 Roselane Street, Suite 200 | 2400 Century Pkwy NE, Ste. 200 |
| Marietta, Georgia 30060 | Atlanta, GA 30345-3136 |
|  | Attorneys for Defendant Victoria Jones |
| R. MICHAEL MALCOM |  |
| PAUL L. ROSENTHAL |  |
| **Preston & Malcom** |  |
| 110 Court Street |  |
| Monroe, Georgia 30655 |  |
| Attorneys for Plaintiffs |  |

This _____ day of April, 2015.

MOORE INGRAM JOHNSON & STEELE, LLP

_____

Jeffrey A. Daxe

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Telephone: (770) 429-1499
Facsimile: (404) 429-8631
jad@mijs.com

April 2, 2015

***Certified Mail #7007 3020 0000 7767 3586***
Haver Filling Systems, Inc.
460 Gees Mill Business Court
Conyers, Georgia 30013

***Certified Mail # 7007 3020 0000 7767 3593***
J. Wayne Moulton
Registered Agent for Haver Filling Systems, Inc.
925 Railroad Street
Conyers, Georgia 30012

Re:    Michael E. Pate & Barbara J. Pate, individually and as administrators of
       the estate of Michael Eric Pate, deceased, v. General Motors LLC,
       State Court of Cobb County, Civil Action No. 14-A-2712-1

       **Former Employee:    Michael Eric Pate**
       **DOB:                August 22, 1989**
       **SSN:                XXX-XX-3605**

To J. Wayne Moulton and Haver Filling Systems, Inc.:

This firm represents General Motors LLC in the above-referenced lawsuit. Pursuant to O.C.G.A. § 9-11-34, please forward to this office a copy of <u>any records</u> or any other documentation regarding your association with Michael Eric Pate. This request encompasses <u>all records</u> regarding your association with Mr. Pate and/or the family of Mr. Pate at any time, without limitation.

We will promptly pay your reasonable copying costs upon receipt of the documents with the Response and Verification fully executed, and your billing statement. Should you have any questions regarding this request, please do not hesitate to contact me at your convenience. Thank you in advance for your attention to this

Case 1:14-md-02543-JMF   Document 9F   Filed 05/22/15   Page 06 of 106

Haver Filing Systems, Inc.
April 2, 2015
Page 2

request, and we look forward to receiving your response within thirty (30) days as
required by O.C.G.A. § 9-11-34.

Sincerely yours,

MOORE INGRAM JOHNSON & STEELE, LLP

JAD                                          Jeffrey A. Daxe
Encl.
cc:      Brian D. Sieve, Esq.

# AFFIDAVIT AND VERIFICATION

STATE OF _____

COUNTY OF _____

|                      |                        |
|----------------------|------------------------|
| **Former Employee:** | **Michael Eric Pate**  |
| **DOB:**             | **August 22, 1989**    |
| **SSN:**             | **XXX-XX-3605**        |

1.  We are a Georgia business that has a professional association or employment relationship with the above-referenced individual.

2.  The attached response to Request for Production of Documents is a true and correct copy of all records or other documentation which has either been generated by us as a result of our professional association or employment relationship with the above-referenced individual or received from other persons or entities as a result of said association.

3.  The attached records are kept in the normal course of business.

4.  The facts represented in any written records contained in the attached response were entered upon the records shortly after the occurrence of the incidents which they purport to represent or reference and as a part of the normal course of business.

5.  The attached response is a copy of the complete file regarding the above-referenced individual.

6.  The attached documents include <u>ALL</u> documents within our control or possession which are requested in the Request for Production of Documents served upon us.

_____
Records Custodian
Haver Filling Systems, Inc.

Print Name:_____
Date:          _____

Sworn to and subscribed before me

this _____ day of _____, 2015.

_____
NOTARY PUBLIC
My Commission Expires:

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

MICHAEL E. PATE and BARBARA    )
J. PATE, Individually and as         )
Administrators of the Estate of      )
MICHAEL ERIC PATE, deceased    )
                                 )   Civil Action
    *Plaintiffs*,             )   File No.: 14-A-2712-1
                                 )
v.                            )
                               )
GENERAL MOTORS LLC and       )   12 Person Jury Trial Demanded
VICTORIA NICOLE JONES,        )
                               )
    *Defendants*.          )

## GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS TO NON-PARTY HAVER FILLING SYSTEMS, INC.

TO:   Haver Filling Systems, Inc.
      460 Gees Mill Business Court
      Conyers, Georgia 30013
      ***Via Certified Mail Return Receipt Requested # 7007 3020 0000 7767 3586***

      J. Wayne Moulton
      Registered Agent for Haver Filling Systems, Inc.
      925 Railroad Street
      Conyers, Georgia 30012
      ***Via Certified Mail Return Receipt Requested # 7007 3020 0000 7767 3593***

     I herewith serve upon you the following Request for Production of Documents pursuant to O.C.G.A. § 9-11-34(c). You are requested to produce the documents and materials hereinafter requested herein within thirty (30) days after service of this request pursuant to O.C.G.A. § 9-11-34, at the offices of Moore Ingram Johnson & Steele, LLP, 326 Roswell Street, Marietta, Georgia 30060, where facilities are available for proper copying. In lieu of production of the original of such documents, legible photocopies may be substituted and produced to the undersigned by mail. Please

- 1 -

complete the attached Response form and return it with copies of the documents, or bring it with you at the time the documents are produced.

## DEFINITIONS

1.

"You" or "Your" means  Haver Filling Systems, Inc., its subsidiaries or affiliates, and/or any acting on its behalf.

2.

"Document" includes, without limitation, the following items, whether printed, recorded, or reproduced by any other mechanical means or process, or written or produced by hand:  agreements; contracts; orders; purchase orders; communications; correspondence; letters; electronic information; e-mails (including those that have been deleted but which are nonetheless recoverable); telegrams; tape recordings; memoranda, summaries, notes or other recordings of telephone conversations, personal conversations or meetings; agenda of meetings; notices; records; interoffice memoranda, personal memoranda; photographs; photographic slides; motion picture film; charts; graphs; diagrams; drawings; bookkeeping entries; bills; invoices; orders; receipts; canceled checks; vouchers; ledger sheets; computer data (including data contained in or on hard drives, backup files, floppy disks or any other manner of storage), reports; statements of witnesses; findings of investigations; files; records of negotiations; reports of experts; reports of consultants; papers; books; records; objects; summaries; video tape; maps; posters; pamphlets; flyers; and any and every other writing or other graphic means by which human intelligence is in any way transmitted or reported.

- 2 -

3.

Pursuant to O.C.G.A. § 9-11-26(e), this request shall be deemed continuing so as to require further and supplemental production of documents in the event You obtain or discover additional documents within the scope of this request between the time of initial production and the time of hearing or trial.

## DOCUMENTS REQUESTED

1.

Any and all documents or materials of any kind related to **MICHAEL ERIC PATE**, including but not limited to time sheets, disciplinary actions, wage verification, correspondences, receipts, invoices, or any other documents concerning **MICHAEL ERIC PATE**.

2.

The complete employee or personnel file for **MICHAEL ERIC PATE**, including his employment application and the results of any background checks/screenings.

3.

Any and all pay stubs, tax forms, and other documentation of payments made or owed to **MICHAEL ERIC PATE**, including all W-2 forms.

4.

Any other document in your possession or control relating to **MICHAEL ERIC PATE**, including any workers' compensation claim files.

5.

Any and all documents which describe or document the work **MICHAEL ERIC PATE** was required to perform as part of his employment.

6.

Any and all documents or materials of any kind concerning employee benefits, bonuses, pensions, or other gratuities offered to or available to **MICHAEL PATE** during his employment.

Respectfully submitted this _____ day of April, 2015.

---

**MOORE INGRAM JOHNSON & STEELE, LLP**
Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

Attorneys for Defendant General Motors LLC

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the foregoing **GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENT TO NON-PARTY HAVER FILLING SYSTEMS, INC.** was duly served upon all parties in this matter by mailing a copy of same postage pre-paid via First Class U.S. Mail, addressed as follows:

LANCE A. COOPER
**The Cooper Firm**
531 Roselane Street, Suite 200
Marietta, Georgia 30060

R. MICHAEL MALCOM
PAUL L. ROSENTHAL
**Preston & Malcom**
110 Court Street
Monroe, Georgia 30655
Attorneys for Plaintiffs

WILLIAM DALE ELLIS JR.
**Sharon Ware & Associates**
2400 Century Pkwy NE, Ste. 200
Atlanta, GA 30345-3136
Attorneys for Defendant Victoria Jones

This _____ day of April, 2015.

_____
Jeffrey A. Daxe

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Telephone: (770) 429-1499
Facsimile: (404) 429-8631
jad@mijs.com

April 2, 2015

***Certified Mail #7007 3020 0000 7767 3685***
Maloy's Auto Service, Inc.
1741 Highway 138 East Walnut Grove
Covington, Georgia 30014

***Certified Mail #7007 3020 0000 7767 3692***
Susan S. Maloy
Registered Agent for Maloy's Auto Service, Inc.
2871 Wagnon Mill Road
Bishop, Georgia 30621

RE:    <u>Michael E. Pate & Barbara J. Pate, individually and as administrators of</u>
<u>the estate of Michael Eric Pate, deceased, v. General Motors LLC,</u>
State Court of Cobb County, Civil Action No. 14-A-2712-1

| | |
|---|---|
| **Decedent:** | **Michael Eric Pate** |
| **Vehicle:** | **2005 Cadillac C/T CTS Hi Feature** |
| **Vin Number:** | **1G6DP567X50103015** |
| **Date of Incident:** | **June 6, 2014** |
| **Location of Wreck:** | **Ga 20 and Zincara Road in Rockdale County** |

To Susan S. Maloy and Maloy's Auto Service, Inc.:

    This firm represents General Motors LLC in the above-referenced lawsuit. Pursuant to O.C.G.A. § 9-11-34, please forward to this office a copy of <u>any records</u> or any other documentation regarding your association with Michael Eric Pate or the above-referenced vehicle. This request encompasses <u>all records</u> regarding your association with the vehicle or Mr. Pate at any time, without limitation.

Maloy's Auto Service, Inc.
April 2, 2015
Page 2

        We will promptly pay your reasonable copying costs upon receipt of the documents with the Response and Verification fully executed, and your billing statement.  Should you have any questions regarding this request, please do not hesitate to contact me at your convenience.  Thank you in advance for your attention to this request, and we look forward to receiving your response within thirty (30) days as required by O.C.G.A. § 9-11-34.

                                Sincerely yours,

                                MOORE INGRAM JOHNSON & STEELE, LLP

                                Jeffrey A. Daxe

JAD
Encl.
cc:     Brian D. Sieve, Esq.

## AFFIDAVIT AND VERIFICATION

STATE OF _____

COUNTY OF _____

| | |
|---|---|
| **Decedent:** | **Michael Eric Pate** |
| **Vehicle:** | **2005 Cadillac C/T CTS Hi Feature** |
| **Vin Number:** | **1G6DP567X50103015** |
| **Date of Incident:** | **June 6, 2014** |
| **Location of Wreck:** | **Ga 20 and Zincara Road in Rockdale County** |

1. We are a Georgia business that has a professional association or relationship with the above-referenced individual.

2. The attached response to Request for Production of Documents is a true and correct copy of all records or other documentation which has either been generated by us as a result of our professional association or employment relationship with the above-referenced individual or received from other persons or entities as a result of said association.

3. The attached records are kept in the normal course of business.

4. The facts represented in any written records contained in the attached response were entered upon the records shortly after the occurrence of the incidents which they purport to represent or reference and as a part of the normal course of business.

5. The attached response is a copy of all records related to the above-referenced individual or vehicle.

6. The attached documents include <u>ALL</u> documents within our control or possession which are requested in the Request for Production of Documents served upon us.

_____

Records Custodian
Maloy's Auto Service, Inc.
Print Name:_____
Date:         _____

Sworn to and subscribed before me

this _____ day of _____, 2015.

_____

NOTARY PUBLIC
My Commission Expires:

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually and as Administrators of the Estate of MICHAEL ERIC PATE, deceased | ) ) ) ) | |
| *Plaintiffs,* | ) ) | Civil Action File No.: 14-A-2712-1 |
| v. | ) ) | |
| GENERAL MOTORS LLC and VICTORIA NICOLE JONES, | ) ) ) | 12 Person Jury Trial Demanded |
| *Defendants.* | ) ) | |

## GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS TO NON-PARTY MALOY'S AUTO SERVICE, INC.

TO:  Maloy's Auto Service, Inc.
1741 Highway 138 East Walnut Grove
Covington, Georgia 30014
***Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3685***

Susan S. Maloy
Registered Agent for Maloy's Auto Service, Inc.
2871 Wagnon Mill Road
Bishop, Georgia 30621
***Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3692***

I herewith serve upon you the following Request for Production of Documents pursuant to O.C.G.A. § 9-11-34(c). You are requested to produce the documents and materials hereinafter requested herein within thirty (30) days after service of this request pursuant to O.C.G.A. § 9-11-34, at the offices of Moore Ingram Johnson & Steele, LLP, 326 Roswell Street, Marietta, Georgia 30060, where facilities are available for proper copying. In lieu of production of the original of such documents, legible photocopies may be substituted and produced to the undersigned by mail. Please

1

complete the attached Affidavit and Verification form and return it with copies of the documents, or bring it with you at the time the documents are produced.

## **DEFINITIONS**

1.

"You" or "Your" means  Maloy's Auto Service, Inc. and its subsidiaries or affiliates, or any persons acting on your behalf.

2.

"Document" includes, without limitation, the following items, whether printed, recorded, or reproduced by any other mechanical means or process, or written or produced by hand:  agreements; contracts; orders; purchase orders; communications; correspondence; letters; electronic information; e-mails (including those that have been deleted but which are nonetheless recoverable); telegrams; tape recordings; memoranda, summaries, notes or other recordings of telephone conversations, personal conversations or meetings; agenda of meetings; notices; records; interoffice memoranda, personal memoranda; photographs; photographic slides; motion picture film; charts; graphs; diagrams; drawings; bookkeeping entries; bills; invoices; orders; receipts; canceled checks; vouchers; ledger sheets; computer data (including data contained in or on hard drives, backup files, floppy disks or any other manner of storage), reports; statements of witnesses; findings of investigations; files; records of negotiations; reports of experts; reports of consultants; papers; books; records; objects; summaries; video tape; maps; posters; pamphlets; flyers; and any and every other writing or other graphic means by which human intelligence is in any way transmitted or reported.

3.

Pursuant to O.C.G.A. § 9-11-26(e), this request shall be deemed continuing so as to require further and supplemental production of documents in the event You obtain or discover additional documents within the scope of this request between the time of initial production and the time of hearing or trial.

## DOCUMENTS REQUESTED

1.

Any and all documents or materials of any kind related to **MICHAEL ERIC PATE** or vehicle VIN 1G6DP567X50103015, including but not limited to correspondences, records, receipts, invoices, estimates, bills or other tangible items.

2.

Any other document in your possession or control relating to your association with **MICHAEL ERIC PATE** or vehicle VIN 1G6DP567X50103015.

3.

Any other document in your possession or control relating to, documenting, or describing automobile service or work performed on 2005 Cadillac CTS, Georgia License Plate BGA7543, VIN 1G6DP567X50103015.

[Signature on next page]

3

Respectfully submitted this _____ day of April, 2015.

**MOORE INGRAM JOHNSON & STEELE, LLP**

_____
Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

Attorneys for Defendant General Motors LLC

4

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the foregoing **GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENT TO NON-PARTY MALOY'S AUTO SERVICE, INC.** was duly served upon all parties in this matter by mailing a copy of same postage pre-paid via First Class U.S. Mail, addressed as follows:

LANCE A. COOPER
**The Cooper Firm**
531 Roselane Street, Suite 200
Marietta, Georgia 30060

R. MICHAEL MALCOM
PAUL L. ROSENTHAL
**Preston & Malcom**
110 Court Street
Monroe, Georgia 30655

*Attorneys for Plaintiffs*

WILLIAM DALE ELLIS JR.
**Sharon Ware & Associates**
2400 Century Pkwy NE, Ste. 200
Atlanta, GA 30345-3136
Attorneys for Defendant Victoria Jones

This _____ day of April, 2015.

MOORE INGRAM JOHNSON & STEELE, LLP

_____
Jeffrey A. Daxe

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Telephone: (770) 429-1499
Facsimile: (404) 429-8631
jad@mijs.com

April 2, 2015

***Certified Mail #7007 3020 0000 7767 3562***
Diagnostic Imaging Specialists, PA
Attn: Medical Records
Post Office Box 591
Columbus, GA 31902-4236

***Certified Mail #7007 3020 0000 7767 3579***
Diagnostic Imaging Specialists, PA
c/o National Registered Agents, Inc.
1201 Peachtree Street, N.E.
Atlanta, Georgia 30361

      RE:    <u>Michael E. Pate & Barbara J. Pate, individually and as administrators of</u>
               <u>the estate of Michael Eric Pate, deceased, v. General Motors LLC</u>,
               State Court of Cobb County, Civil Action No. 14-A-2712-1

              **Decedent:**  **Michael Eric Pate**
              **DOB:**       **August 22, 1989**
              **SSN:**       **XXX-XX-3605**

TO WHOM IT MAY CONCERN:

    This firm has been retained to represent the interest of General Motors LLC in the above-referenced civil action.

    Please forward to this office a copy of <u>all medical records</u> or any other documentation regarding your professional association or treatment of **Michael Eric Pate.** We would also appreciate your providing us with an itemized list of all expenses incurred by **Michael Eric Pate.**

Diagnostic Imaging Specialists
April 2, 2015
Page 2

To comply with the HIPAA Privacy Rule set forth in 45 C.F.R. § 164.512 (e)(1)(ii)(A), copies of the attached Request for Production of Documents have been served on all parties to this action, including the individual whose information is being requested. Furthermore, Georgia law requires that you copy your records and forward them to us. The law <u>DOES NOT REQUIRE</u> us to provide an authorization or release from **Michael Eric Pate**. <u>See</u> O.C.G.A. § 9-11-34. If you have objections to producing the requested documents, your objections must be made within twenty (20) days of your receipt of this request. Also, other parties to this action have the right to object to producing the requested documents, but their objection must be made within twenty (20) days of their receipt of the request in accordance with O.C.G.A. § 9-11-34(b)(2). If you do not receive a written objection within 20 days, the law requires you to produce your records at that time. <u>See</u> O.C.G.A. §§ 9-11-34(b)(2) and 9-11-34(c)(1). Please have someone **reproduce all files pertaining to any treatment at any time**, including the file folders and/or files jackets and all items listed in the attached Request for Production concerning Michael Eric Pate, sign the attached verification certifying that it is true and complete, and forward the documents to us along with the **original verification**.

If you require a pre-payment, please fax a bill or statement to 770-429-8631 along with your **tax identification number** and the number of pages included in your records. **If that payment exceeds $50.00, please notify us of the cost prior to billing**, and whether an abstract is available. We will remit payment accordingly. We pay the reasonable cost for duplicating the records and postage only. Please do not prepare any special reports, summaries, or transcriptions, other than those which are already contained in the patient's records. If you require additional information in order to locate this party in your records, please forward a list of the needed information, and we will try to assist you in your search. If you are unable to locate this party in your records, please notify us in writing.

Thank you very much for your assistance in this matter. Please feel free to call should you have any questions.

Sincerely yours,

MOORE INGRAM JOHNSON & STEELE, LLP

Jeffrey A. Daxe

JAD
Encl.
cc:    Brian D. Sieve, Esq.

2

## AFFIDAVIT AND VERIFICATION

STATE OF _____

COUNTY OF _____

      **Decedent:**  **Michael Eric Pate**
      **DOB:**       **August 22, 1989**
      **SSN:**       **XXX-XX- 3605**

1. We are a health care provider who has rendered treatment to the above-referenced patient.

2. The attached response to Request for Production of Documents is a true and correct copy of all records or other documentation which has either been generated by us as a result of my treatment or received from other health care providers regarding their treatment of the above referenced patient.

3. The attached records are kept in the normal course of business.

4. The facts represented in the written records were entered upon the records shortly after the occurrence of the incidents which they purport to represent or reference as a part of the normal course of business.

5. The attached response is a copy of the complete file regarding the above-referenced patient.

6. The attached documents include <u>ALL</u> documents within our control or possession which are requested in the Request for Production of Documents served upon us.

           _____
           Records Custodian
           Diagnostic Imaging Specialists, PA

           Print Name:_____
           Date:     _____

Sworn to and subscribed before me

this _____ day of _____, 2015.

_____
NOTARY PUBLIC

My Commission Expires:

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

MICHAEL E. PATE and BARBARA ) 
J. PATE, Individually and as )
Administrators of the Estate of )
MICHAEL ERIC PATE, deceased )
                                )       Civil Action
        *Plaintiffs,*           )       File No.: 14-A-2712-1
                                )
v.                              )
                                )
GENERAL MOTORS LLC and          )       12 Person Jury Trial Demanded
VICTORIA NICOLE JONES,          )
                                )
        *Defendants.*           )

## GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS TO NON-PARTY DIAGNOSTIC IMAGING SPECIALISTS, PA

TO:     Diagnostic Imaging Specialists, PA
        Post Office Box 591
        Columbus, GA 31902-4236
        Attn:  Medical Records
        *Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3562*

        Diagnostic Imaging Specialists, PA
        c/o National Registered Agents, Inc.
        1201 Peachtree Street, N.E.
        Atlanta, Georgia 30361
        *Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3579*

**COMES NOW** General Motors LLC, Defendant in the above-styled action, and

serves upon you this Request for Production of Documents, pursuant to O.C.G.A. § 9-11-

34.

You are hereby required to promptly produce **CERTIFIED COPIES** of the

documents, designated below which are in your possession, custody or control unless an

objection is filed within twenty-three (23) days from the date of this request.  You may

- 1 -

do so by mailing copies of said documents to **MOORE INGRAM JOHNSON & STEELE, LLP**, Emerson Overlook, 326 Roswell Street, Marietta, Georgia 30060.

The requested documents are as follows:

(1)     Copies of each and every record, report, correspondence or writing of each and every kind or nature pertaining to or in any way connected with your treatment, examination, evaluation or professional association with **MICHAEL ERIC PATE.**

(2)     Copies of all reports by any other physicians or other practitioners of the healing arts, hospital records and evidence of expenses incurred, including copies of any statements rendered by you concerning **MICHAEL ERIC PATE** which are a part of your records.

(3)     Any and all other documents in your possession related to your professional treatment of **MICHAEL ERIC PATE.**

(4)     Initial patient questionnaire form and any other document wherein **MICHAEL ERIC PATE** responded to questions during office visits regarding her medical history or circumstances regarding his injury.

(5)     Itemized bill for all services rendered by you to **MICHAEL ERIC PATE.**

(6)     Copies of any booklets and/or brochures regarding your professional practice which have been distributed to any of your patients within one year before or after your treatment of **MICHAEL ERIC PATE.**

(7)     Copies of any correspondence, memos or other documents reflecting or regarding communication between you or anyone else in your office and **MICHAEL ERIC PATE** or any representative of **MICHAEL ERIC PATE** including his attorney.

[Signature on Following Page]

- 2 -

Respectfully submitted this ____ day of April, 2015.

**MOORE INGRAM JOHNSON & STEELE, LLP**

_____

Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

Attorneys for Defendant General Motors LLC

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the foregoing **GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENT TO NON-PARTY DIAGNOSTIC IMAGING SPECIALISTS, PA** was duly served upon all parties in this matter by mailing a copy of same postage pre-paid via First Class U.S. Mail, addressed as follows:

LANCE A. COOPER
**The Cooper Firm**
531 Roselane Street, Suite 200
Marietta, Georgia 30060

R. MICHAEL MALCOM
PAUL L. ROSENTHAL
**Preston & Malcom**
110 Court Street
Monroe, Georgia 30655

*Attorneys for Plaintiffs*

WILLIAM DALE ELLIS JR.
**Sharon Ware & Associates**
2400 Century Pkwy NE, Ste. 200
Atlanta, GA 30345-3136
Attorneys for Defendant Victoria Jones

This _____ day of April, 2015.

MOORE INGRAM JOHNSON & STEELE, LLP

_____
Jeffrey A. Daxe

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Telephone: (770) 429-1499
Facsimile: (404) 429-8631
jad@mijs.com

April 2, 2015

***Certified Mail #7007 3020 0000 7767 3623***
Atlanta Medical Center
Attn: Medical Records
303 Parkway Drive, N.E.
Atlanta, Georgia 30312-1289

***Certified Mail #7007 3020 0000 7767 3630***
Atlanta Medical Center
Attn: Billing Department
Post Office Box 66046
Anaheim, California 92816

***Certified Mail #7007 3020 0000 7767 3647***
Atlanta Medical Center
c/o CT Corporation System
1201 Peachtree Street, N.E., Ste. 1240
Atlanta, Georgia 30361

     RE:    <u>Michael E. Pate & Barbara J. Pate, individually and as administrators of</u>
               <u>the estate of Michael Eric Pate, deceased, v. General Motors LLC,</u>
               State Court of Cobb County, Civil Action No. 14-A-2712-1

          **Decedent:  Michael Eric Pate**
          **DOB:       August 22, 1989**
          **SSN:       XXX-XX- 3605**

TO WHOM IT MAY CONCERN:

     This firm has been retained to represent the interest of General Motors LLC in the above-referenced civil action.

Atlanta Medical Center
April 2, 2015
Page 2

Please forward to this office a copy of all medical records or any other documentation regarding your professional association or treatment of **Michael Eric Pate.** We would also appreciate your providing us with an itemized list of all expenses incurred by **Michael Eric Pate.**

To comply with the HIPAA Privacy Rule set forth in 45 C.F.R. § 164.512 (e)(1)(ii)(A), copies of the attached Request for Production of Documents have been served on all parties to this action, including the individual whose information is being requested. Furthermore, Georgia law requires that you copy your records and forward them to us. The law DOES NOT REQUIRE us to provide an authorization or release from **Michael Eric Pate.** See O.C.G.A. § 9-11-34. If you have objections to producing the requested documents, your objections must be made within twenty (20) days of your receipt of this request. Also, other parties to this action have the right to object to producing the requested documents, but their objection must be made within twenty (20) days of their receipt of the request in accordance with O.C.G.A. § 9-11-34(b)(2). If you do not receive a written objection within 20 days, the law requires you to produce your records at that time. See O.C.G.A. §§ 9-11-34(b)(2) and 9-11-34(c)(1). Please have someone **reproduce all files pertaining to any treatment at any time,** including the file folders and/or files jackets and all items listed in the attached Request for Production concerning Michael Eric Pate, sign the attached verification certifying that it is true and complete, and forward the documents to us along with the **original verification.**

If you require a pre-payment, please fax a bill or statement to 770-429-8631 along with your **tax identification number** and the number of pages included in your records. **If that payment exceeds $50.00, please notify us of the cost prior to billing,** and whether an abstract is available. We will remit payment accordingly. We pay the reasonable cost for duplicating the records and postage only. Please do not prepare any special reports, summaries, or transcriptions, other than those which are already contained in the patient's records. If you require additional information in order to locate this party in your records, please forward a list of the needed information, and we will try to assist you in your search. If you are unable to locate this party in your records, please notify us in writing.

Thank you very much for your assistance in this matter. Please feel free to call should you have any questions.

Sincerely yours,

MOORE INGRAM JOHNSON & STEELE, LLP

Jeffrey A. Daxe

JAD
Encl.
cc:    Brian D. Sieve, Esq.

## AFFIDAVIT AND VERIFICATION

STATE OF _____

COUNTY OF _____

          **Decedent:**  **Michael Eric Pate**
          **DOB:**       **August 22, 1989**
          **SSN:**       **XXX-XX-3605**

1.     We are a health care provider who has rendered treatment to the above-referenced patient.

2.     The attached response to Request for Production of Documents is a true and correct copy of all records or other documentation which has either been generated by us as a result of my treatment or received from other health care providers regarding their treatment of the above referenced patient.

3.     The attached records are kept in the normal course of business.

4.     The facts represented in the written records were entered upon the records shortly after the occurrence of the incidents which they purport to represent or reference as a part of the normal course of business.

5.     The attached response is a copy of the complete file regarding the above-referenced patient.

6.     The attached documents include <u>ALL</u> documents within our control or possession which are requested in the Request for Production of Documents served upon us.

                    _____
                    Records Custodian
                    Atlanta Medical Center

                    Print Name:_____
                    Date:      _____

Sworn to and subscribed before me

this _____ day of _____, 2015.

_____
NOTARY PUBLIC

My Commission Expires:

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually and as Administrators of the Estate of MICHAEL ERIC PATE, deceased<br><br>*Plaintiffs,*<br><br>v.<br><br>GENERAL MOTORS LLC and VICTORIA NICOLE JONES,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action<br>File No.: 14-A-2712-1<br><br>12 Person Jury Trial Demanded |

## <u>GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS TO NON-PARTY ATLANTA MEDICAL CENTER</u>

TO:   Atlanta Medical Center
303 Parkway Drive, N.E.
Atlanta, Georgia 30312-1289
Attn:  Medical Records
***Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3623***

Atlanta Medical Center
Post Office Box 66046
Anaheim, California 92816
Attn: Billing Department
***Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3630***

Atlanta Medical Center
c/o CT Corporation System
1201 Peachtree Street, N.E., Ste. 1240
Atlanta, Georgia 30361
***Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3647***

**COMES NOW** General Motors LLC, Defendant in the above-styled action, and

serves upon you this Request for Production of Documents, pursuant to O.C.G.A. § 9-11-

34.

- 1 -

You are hereby required to promptly produce **CERTIFIED COPIES** of the documents, designated below which are in your possession, custody or control unless an objection is filed within twenty-three (23) days from the date of this request. You may do so by mailing copies of said documents to **MOORE INGRAM JOHNSON & STEELE, LLP**, Emerson Overlook, 326 Roswell Street, Marietta, Georgia 30060.

The requested documents are as follows:

(1)     Copies of each and every record, report, correspondence or writing of each and every kind or nature pertaining to or in any way connected with your treatment, examination, evaluation or professional association with **MICHAEL ERIC PATE.**

(2)     Copies of all reports by any other physicians or other practitioners of the healing arts, hospital records and evidence of expenses incurred, including copies of any statements rendered by you concerning **MICHAEL ERIC PATE** which are a part of your records.

(3)     Any and all other documents in your possession related to your professional treatment of **MICHAEL ERIC PATE.**

(4)     Initial patient questionnaire form and any other document wherein **MICHAEL ERIC PATE** responded to questions during office visits regarding her medical history or circumstances regarding his injury.

(5)     Itemized bill for all services rendered by you to **MICHAEL ERIC PATE.**

(6)     Copies of any booklets and/or brochures regarding your professional practice which have been distributed to any of your patients within one year before or after your treatment of **MICHAEL ERIC PATE.**

- 2 -

(7)     Copies of any correspondence, memos or other documents reflecting or regarding communication between you or anyone else in your office and **MICHAEL ERIC PATE** or any representative of **MICHAEL ERIC PATE** including his attorney.

Respectfully submitted this ____ day of April, 2015.

**MOORE INGRAM JOHNSON & STEELE, LLP**

_____
Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

Attorneys for Defendant General Motors LLC

**CERTIFICATE OF SERVICE**

The undersigned attorney does hereby certify that a true and correct copy of the foregoing **GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENT TO NON-PARTY ATLANTA MEDICAL CENTER** was duly served upon all parties in this matter by mailing a copy of same postage pre-paid via First Class U.S. Mail, addressed as follows:

LANCE A. COOPER
**The Cooper Firm**
531 Roselane Street, Suite 200
Marietta, Georgia 30060

R. MICHAEL MALCOM
PAUL L. ROSENTHAL
**Preston & Malcom**
110 Court Street
Monroe, Georgia 30655
Attorneys for Plaintiffs

WILLIAM DALE ELLIS JR.
**Sharon Ware & Associates**
2400 Century Pkwy NE, Ste. 200
Atlanta, GA 30345-3136
Attorneys for Defendant Victoria Jones

This _____ day of April, 2015.

MOORE INGRAM JOHNSON & STEELE, LLP

_____
Jeffrey A. Daxe

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Telephone: (770) 429-1499
Facsimile: (404) 429-8631
jad@mijs.com

April 2, 2015

*Certified Mail #7007 3020 0000 7767 3708*
Wal-Mart Stores, Inc.
c/o Corporation Process Company
2180 Satellite Blvd., Suite 400
Duluth, Georgia 30097

RE:   <u>Michael E. Pate & Barbara J. Pate, individually and as administrators of
       the estate of Michael Eric Pate, deceased, v. General Motors LLC,</u>
       State Court of Cobb County, Civil Action No. 14-A-2712-1

              **Decedent:**           **Michael Eric Pate**
              **Vehicle:**            **2005 Cadillac C/T CTS Hi Feature**
              **Vin Number:**         **1G6DP567X50103015**
              **Date of Incident:**   **June 6, 2014**
              **Location of Wreck:**  **Ga 20 and Zincara Road in Rockdale County**

To whom it may concern:

        This firm represents General Motors LLC in the above-referenced lawsuit.
Pursuant to O.C.G.A. § 9-11-34, please forward to this office a copy of <u>any records</u> or any
other documentation regarding your association with the above-referenced vehicle or
Michael Eric Pate.  This request encompasses <u>all records</u> regarding your association
with the vehicle or Mr. Pate at any time, without limitation.

        We will promptly pay your reasonable copying costs upon receipt of the
documents with the Response and Verification fully executed, and your billing
statement.  Should you have any questions regarding this request, please do not hesitate

Case 1:14-md-02543-JMF Document 9 Filed 05/22/15 Page 9 of 100

Wal-Mart Stores, Inc.
April 2, 2015
Page 2

to contact me at your convenience. Thank you in advance for your attention to this
request, and we look forward to receiving your response within thirty (30) days as
required by O.C.G.A. § 9-11-34.

                    Sincerely yours,

                    MOORE INGRAM JOHNSON & STEELE, LLP

                    Jeffrey A. Daxe

JAD
Encl.
cc:     Brian D. Sieve, Esq.

Case 14-ng-02543-JMH    Document 9    Filed 04/22/19    Page 7 of 106

# AFFIDAVIT AND VERIFICATION

STATE OF _____

COUNTY OF _____

|  |  |
|---|---|
| **Decedent:** | **Michael Eric Pate** |
| **Vehicle:** | **2005 Cadillac C/T CTS Hi Feature** |
| **Vin Number:** | **1G6DP567X50103015** |
| **Date of Incident:** | **June 6, 2014** |
| **Location of Wreck:** | **Ga 20 and Zincara Road in Rockdale County** |

1.  We are a Georgia business that has a professional association or relationship with the above-referenced individual.

2.  The attached response to Request for Production of Documents is a true and correct copy of all records or other documentation which has either been generated by us as a result of our professional association or employment relationship with the above-referenced individual or received from other persons or entities as a result of said association.

3.  The attached records are kept in the normal course of business.

4.  The facts represented in any written records contained in the attached response were entered upon the records shortly after the occurrence of the incidents which they purport to represent or reference and as a part of the normal course of business.

5.  The attached response is a copy of all records relating to the above-referenced individual or vehicle.

6.  The attached documents include <u>ALL</u> documents within our control or possession which are requested in the Request for Production of Documents served upon us.

_____
Records Custodian
Wal-Mart Stores, Inc.
Print Name:_____
Date:        _____

Sworn to and subscribed before me

this _____ day of _____, 2015.

_____
NOTARY PUBLIC
My Commission Expires:

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually and as Administrators of the Estate of MICHAEL ERIC PATE, deceased | ) ) ) ) | |
| | ) | Civil Action |
| *Plaintiffs*, | ) | File No.: 14-A-2712-1 |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAL MOTORS LLC and VICTORIA NICOLE JONES, | ) ) | 12 Person Jury Trial Demanded |
| | ) | |
| *Defendants*. | ) | |

## GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS TO NON-PARTY WAL-MART STORES, INC.

TO:   Wal-Mart Stores, Inc.
c/o Corporation Process Company
2180 Satellite Blvd., Suite 400
Duluth, Georgia 30097

***Via Certified Mail Return Receipts Requested #7007 3020 0000 7767 3708***

I herewith serve upon you the following Request for Production of Documents pursuant to O.C.G.A. § 9-11-34(c). You are requested to produce the documents and materials hereinafter requested herein within thirty (30) days after service of this request pursuant to O.C.G.A. § 9-11-34, at the offices of Moore Ingram Johnson & Steele, LLP, 326 Roswell Street, Marietta, Georgia 30060, where facilities are available for proper copying. In lieu of production of the original of such documents, legible photocopies may be substituted and produced to the undersigned by mail. Please complete the attached Affidavit and Verification form and return it with copies of the documents, or bring it with you at the time the documents are produced.

- 1 -

## DEFINITIONS

1.

"You" or "Your" means Wal-Mart Stores, Inc. and its subsidiaries or affiliates, or any persons acting on your behalf.

2.

"Document" includes, without limitation, the following items, whether printed, recorded, or reproduced by any other mechanical means or process, or written or produced by hand: agreements; contracts; orders; purchase orders; communications; correspondence; letters; electronic information; e-mails (including those that have been deleted but which are nonetheless recoverable); telegrams; tape recordings; memoranda, summaries, notes or other recordings of telephone conversations, personal conversations or meetings; agenda of meetings; notices; records; interoffice memoranda, personal memoranda; photographs; photographic slides; motion picture film; charts; graphs; diagrams; drawings; bookkeeping entries; bills; invoices; orders; receipts; canceled checks; vouchers; ledger sheets; computer data (including data contained in or on hard drives, backup files, floppy disks or any other manner of storage), reports; statements of witnesses; findings of investigations; files; records of negotiations; reports of experts; reports of consultants; papers; books; records; objects; summaries; video tape; maps; posters; pamphlets; flyers; and any and every other writing or other graphic means by which human intelligence is in any way transmitted or reported.

3.

Pursuant to O.C.G.A. § 9-11-26(e), this request shall be deemed continuing so as to require further and supplemental production of documents in the event You obtain or discover additional documents within the scope of this request between the time of initial production and the time of hearing or trial.

## DOCUMENTS REQUESTED

1.

Any and all documents or materials of any kind related to **MICHAEL ERIC PATE** or vehicle VIN 1G6DP567X50103015, including but not limited to correspondences, records, receipts, invoices, estimates, bills or other tangible items.

2.

Any other document in your possession or control relating to your association with **MICHAEL ERIC PATE** or vehicle VIN 1G6DP567X50103015.

3.

Any other document in your possession or control relating to, documenting, or describing automobile service or work performed on 2005 Cadillac CTS, Georgia License Plate BGA7543, VIN Number 1G6DP567X50103015.

[Signature on next page]

- 3 -

Respectfully submitted this _____ day of April, 2015.

MOORE INGRAM JOHNSON & STEELE, LLP

_____

Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

Attorneys for Defendant General Motors LLC

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the foregoing **GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENT TO NON-PARTY WAL-MART STORES, INC.** was duly served upon all parties in this matter by mailing a copy of same postage pre-paid via First Class U.S. Mail, addressed as follows:

LANCE A. COOPER
**The Cooper Firm**
531 Roselane Street, Suite 200
Marietta, Georgia 30060

R. MICHAEL MALCOM
PAUL L. ROSENTHAL
**Preston & Malcom**
110 Court Street
Monroe, Georgia 30655
Attorneys for Plaintiffs

WILLIAM DALE ELLIS JR.
**Sharon Ware & Associates**
2400 Century Pkwy NE, Ste. 200
Atlanta, GA 30345-3136
Attorneys for Defendant Victoria Jones

This _____ day of April, 2015.

MOORE INGRAM JOHNSON & STEELE, LLP

_____
Jeffrey A. Daxe

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Telephone: (770) 429-1499
Facsimile: (404) 429-8631
jad@mijs.com

April 2, 2015

*Certified Mail #7007 3020 0000 7767 3661*
Rockdale Medical Center
Attn: Medical Records
1412 Milstead Avenue
Conyers, Georgia 30012

*Certified Mail #7007 3020 0000 7767 3678*
Rockdale Medical Center
c/o Laura French, Registered Agent
1892 Ga. Hwy. 138 S.E.
Conyers, Georgia 30012

RE:   Michael E. Pate & Barbara J. Pate, individually and as administrators of
the estate of Michael Eric Pate, deceased, v. General Motors LLC,
State Court of Cobb County, Civil Action No. 14-A-2712-1

**Decedent:   Michael Eric Pate**
**DOB:        August 22, 1989**
**SSN:        XXX-XX-3605**

TO WHOM IT MAY CONCERN:

This firm has been retained to represent the interest of General Motors LLC in
the above-referenced civil action.

Please forward to this office a copy of <u>all medical records</u> or any other
documentation regarding your professional association or treatment of **Michael Eric
Pate.**  We would also appreciate your providing us with an itemized list of all expenses
incurred by **Michael Eric Pate.**

Rockdale Medical Center
April 2, 2015
Page 2

To comply with the HIPAA Privacy Rule set forth in 45 C.F.R. § 164.512 (e)(1)(ii)(A), copies of the attached Request for Production of Documents have been served on all parties to this action, including the individual whose information is being requested. Furthermore, Georgia law requires that you copy your records and forward them to us. The law DOES NOT REQUIRE us to provide an authorization or release from **Michael Eric Pate.** See O.C.G.A. § 9-11-34. If you have objections to producing the requested documents, your objections must be made within twenty (20) days of your receipt of this request. Also, other parties to this action have the right to object to producing the requested documents, but their objection must be made within twenty (20) days of their receipt of the request in accordance with O.C.G.A. § 9-11-34(b)(2). If you do not receive a written objection within 20 days, the law requires you to produce your records at that time. See O.C.G.A. §§ 9-11-34(b)(2) and 9-11-34(c)(1). Please have someone **reproduce all files pertaining to any treatment at any time**, including the file folders and/or files jackets and all items listed in the attached Request for Production concerning Michael Eric Pate, sign the attached verification certifying that it is true and complete, and forward the documents to us along with the **original verification**.

If you require a pre-payment, please fax a bill or statement to 770-429-8631 along with your **tax identification number** and the number of pages included in your records. **If that payment exceeds $50.00, please notify us of the cost prior to billing,** and whether an abstract is available. We will remit payment accordingly. We pay the reasonable cost for duplicating the records and postage only. Please do not prepare any special reports, summaries, or transcriptions, other than those which are already contained in the patient's records. If you require additional information in order to locate this party in your records, please forward a list of the needed information, and we will try to assist you in your search. If you are unable to locate this party in your records, please notify us in writing.

Thank you very much for your assistance in this matter. Please feel free to call should you have any questions.

Sincerely yours,

MOORE INGRAM JOHNSON & STEELE, LLP

Jeffrey A. Daxe

JAD
Encl.
cc:     Brian D. Sieve, Esq.

# AFFIDAVIT AND VERIFICATION

STATE OF _____

COUNTY OF _____

|  |  |
|---|---|
| **Decedent:** | **Michael Eric Pate** |
| **DOB:** | **August 22, 1989** |
| **SSN:** | **XXX-XX-3605** |

1.  We are a health care provider who has rendered treatment to the above-referenced patient.

2.  The attached response to Request for Production of Documents is a true and correct copy of all records or other documentation which has either been generated by us as a result of my treatment or received from other health care providers regarding their treatment of the above referenced patient.

3.  The attached records are kept in the normal course of business.

4.  The facts represented in the written records were entered upon the records shortly after the occurrence of the incidents which they purport to represent or reference as a part of the normal course of business.

5.  The attached response is a copy of the complete file regarding the above-referenced patient.

6.  The attached documents include <u>ALL</u> documents within our control or possession which are requested in the Request for Production of Documents served upon us.

_____

Records Custodian
Rockdale Medical Center

Print Name:_____
Date:           _____

Sworn to and subscribed before me

this _____ day of _____, 2015.

_____
NOTARY PUBLIC

My Commission Expires:

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually and as Administrators of the Estate of MICHAEL ERIC PATE, deceased | ) ) ) ) | |
| | ) | |
| *Plaintiffs,* | ) ) | Civil Action File No.: 14-A-2712-1 |
| v. | ) ) | |
| GENERAL MOTORS LLC and VICTORIA NICOLE JONES, | ) ) ) | 12 Person Jury Trial Demanded |
| *Defendants.* | ) ) | |

### GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENTS TO NON-PARTY ROCKDALE MEDICAL CENTER

TO:    Rockdale Medical Center
        Attn: Medical Records
        1412 Milstead Avenue
        Conyers, Georgia 30012
        *Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3661*

        Rockdale Medical Center
        c/o Laura French, Registered Agent
        1892 Ga. Hwy. 138 S.E.
        Conyers, Georgia 30012
        *Via Certified Mail Return Receipt Requested #7007 3020 0000 7767 3678*

**COMES NOW** General Motors, LLC, Defendant in the above-styled action, and

serves upon you this Request for Production of Documents, pursuant to O.C.G.A. § 9-11-

34.

You are hereby required to promptly produce **CERTIFIED COPIES** of the

documents, designated below which are in your possession, custody or control unless an

objection is filed within twenty-three (23) days from the date of this request. You may

- 1 -

do so by mailing copies of said documents to **MOORE INGRAM JOHNSON &
STEELE, LLP**, Emerson Overlook, 326 Roswell Street, Marietta, Georgia 30060.

The requested documents are as follows:

(1)     Copies of each and every record, report, correspondence or writing of each
and every kind or nature pertaining to or in any way connected with your treatment,
examination, evaluation or professional association with **MICHAEL ERIC PATE.**

(2)     Copies of all reports by any other physicians or other practitioners of the
healing arts, hospital records and evidence of expenses incurred, including copies of any
statements rendered by you concerning **MICHAEL ERIC PATE** which are a part of
your records.

(3)     Any and all other documents in your possession related to your
professional treatment of **MICHAEL ERIC PATE.**

(4)     Initial patient questionnaire form and any other document wherein
**MICHAEL ERIC PATE** responded to questions during office visits regarding her
medical history or circumstances regarding his injury.

(5)     Itemized bill for all services rendered by you to **MICHAEL ERIC PATE.**

(6)     Copies of any booklets and/or brochures regarding your professional
practice which have been distributed to any of your patients within one year before or
after your treatment of **MICHAEL ERIC PATE.**

(7)     Copies of any correspondence, memos or other documents reflecting or
regarding communication between you or anyone else in your office and **MICHAEL
ERIC PATE** or any representative of **MICHAEL ERIC PATE** including his attorney.

[Signature on Following Page]

- 2 -

Respectfully submitted this ____ day of April, 2015.

**MOORE INGRAM JOHNSON & STEELE, LLP**

_____

Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone: (770) 429-1499
Facsimile: (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

**KIRKLAND & ELLIS LLP**
Brian D. Sieve (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
300 N. LaSalle Street
Chicago, IL 60654

Attorneys for Defendant General Motors LLC

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the foregoing **GENERAL MOTORS LLC'S REQUEST FOR PRODUCTION OF DOCUMENT TO NON-PARTY ROCKDALE MEDICAL CENTER** was duly served upon all parties in this matter by mailing a copy of same postage pre-paid via First Class U.S. Mail, addressed as follows:

LANCE A. COOPER
**The Cooper Firm**
531 Roselane Street, Suite 200
Marietta, Georgia 30060

R. MICHAEL MALCOM
PAUL L. ROSENTHAL
**Preston & Malcom**
110 Court Street
Monroe, Georgia 30655

*Attorneys for Plaintiffs*

WILLIAM DALE ELLIS JR.
**Sharon Ware & Associates**
2400 Century Pkwy NE, Ste. 200
Atlanta, GA 30345-3136
Attorneys for Defendant Victoria Jones

This _____ day of April, 2015.

MOORE INGRAM JOHNSON & STEELE, LLP

_____

Jeffrey A. Daxe

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Telephone: (770) 429-1499
Facsimile: (404) 429-8631
jad@mijs.com

**Jeffrey A. Daxe**

| | |
|---|---|
| **From:** | Sieve, Brian D. <bsieve@kirkland.com> |
| **Sent:** | Wednesday, April 08, 2015 5:38 PM |
| **To:** | Lance Cooper; Doreen Lundrigan; Geoffrey David |
| **Cc:** | Robert D. Ingram; Jeffrey A. Daxe; R D. Smith; Pat Dawson |
| **Subject:** | RE: Pate:  CTS documents in the MDL repository |

Lance:  I do not understand your email.  There appears to be a miscommunication here.

        First, plaintiffs have not served any discovery requests in this case.
We are waiting for a consent order that allows plaintiffs (and defendants) to serve their
document requests and interrogatories.  Once we agree on a consent order and the
discovery is served,  we will respond under the rules.

        Second, the five document requests you intend to serve all seek accident
specific information.  We will respond to each of those and identify responsive
documents.  I do not believe any of those requests implicate the production in the MDL.

        Third, Interrogatory Nos. 1-6 that you intend to serve also seek accident
specific information.  We will respond to each of those.   I do not believe any of those
interrogatories implicate the production in the MDL.

        Fourth, Interrogatory No. 9, to which we objected, requests that New GM
identify by Bates numbers documents produced in response to Plaintiffs' First Set of
Consolidated Request Nos. 61-87.  I assume that when you say "responsive to our
discovery" in your email below you are referring to RFPs Nos. 61-87 in the MDL.  (If that
is not the case, please let me know.)  Those document requests are no longer operative in
the MDL, and New GM has no obligation to search for documents responsive to those
specific requests.  After plaintiffs' served the First Set of RFPs, the parties engaged
in a series of "meet and confer" conferences to narrow the scope of document production.
After the February status conference, plaintiffs agreed to narrow their document
requests.  Plaintiffs then served 112 document requests that superseded the First Set of
document requests served on January 30, 2015.  In MDL Order No. 44, the Court ordered New
GM to serve written responses to 50 of those 112 requests, all of which related to Phase
1 discovery.  New GM's responses will be served next week.  The parties are then required
to meet and confer on further document requests, and unresolved issues will be raised at
the April status conference.  Thus, New GM has not identified documents responsive to
what you refer to as RFP Nos. 61-87, and it has no obligation to do so in the MDL.

        However, in an effort to be cooperative, we did identify for you
approximately 1,700 documents New GM reasonably believes relate to the Cadillac CTS.
Those documents were identified on the spreadsheet I provided to Doreen earlier this
week.  I would also reiterate that the entire production in the repository is searchable,
so you have the ability to search for documents on any topic you desire.

        In sum, we have gone above and beyond in an effort to help you identify
documents that may be potentially relevant in this case.  Because you have no discovery
outstanding, and because RFP Nos. 61-87 were withdrawn, GM is not withholding (or failing
to identify) documents "responsive to [your] discovery."  With that said, we cannot and
will not go back and run new searches for document requests that have been withdrawn by
MDL lead counsel.

        I trust this addresses your concerns and clears up some confusion.  I
suggest that, as I discussed with Doreen earlier this week, the parties agree on a
consent order that allows plaintiffs to serve their document requests and interrogatories
(Nos. 1-6), New GM to serve its document requests and interrogatories, and New GM to
serve the third party subpoenas.  We should get that process going now.  Let's go ahead
and serve the discovery to which neither party objects.



EXHIBIT

As always, I'm available to discuss these issues with you.  Please let Jeff Daxe and me know if we can agree on a consent order.  Jeff will work with you to get that on file promptly.  If not, we'll file a motion with the Court seeking consent to serve our discovery and the third-party subpoenas.

Thanks.  Brian

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone:  312-862-2197
Mobile:  708-732-0192
Fax:  312-862-2200

-----Original Message-----
From: Lance Cooper [mailto:lance@thecooperfirm.com]
Sent: Tuesday, April 07, 2015 6:31 PM
To: Sieve, Brian D.; Doreen Lundrigan; David, Geoffrey
Cc: *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: RE: Pate: CTS documents in the MDL repository

Brian,

That will not work.

GM needs to identify every document it has produced which is responsive to our discovery. We do not accept GM's position that we need to find the needles in the haystack. Furthermore, if GM has additional documents which are responsive to our discovery which it has not produced in the MDL, it needs to identify those documents and produce them to us separately.

Let me know by Friday what GM intends to do. Thanks.

lance

_____
From: Sieve, Brian D. [bsieve@kirkland.com]
Sent: Tuesday, April 07, 2015 3:46 AM
To: Doreen Lundrigan; David, Geoffrey
Cc: Lance Cooper; *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: Pate:  CTS documents in the MDL repository

Doreen:  per our discussion yesterday morning, attached is a spreadsheet that identifies by Bates numbers the documents GM produced into the MDL repository that GM believes relate generally to the Cadillac CTS.

The attached reflects what was identified as related to the CTS recall as the documents were loaded in the repository.  GM is not representing that the attached spreadsheet identifies each and every document in the repository that relates to the CTS.  As you know, the productions in the repository are searchable, and thus plaintiffs are free to conduct their own searches of the productions for additional documents that may relate to the CTS.

Please let Geoff David or me know if you have any questions.

Brian

Sent from my iPad

Brian D. Sieve, P.C.
Kirkland & Ellis LLP

300 N. LaSalle Street
Chicago, IL 60654
Phone:  312-862-2197
Mobile:  708-732-0192
Fax:  312-862-2200

*************************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful. If you have received this communication in
error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.
*************************************************************

*************************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful. If you have received this communication in
error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.
*************************************************************

## Jeffrey A. Daxe

| | |
|---|---|
| **From:** | Doreen Lundrigan <doreen@thecooperfirm.com> |
| **Sent:** | Monday, April 13, 2015 11:06 AM |
| **To:** | Jeffrey A. Daxe |
| **Cc:** | Robert D. Ingram; R D. Smith; Pat Dawson; Brian Sieve; Lance Cooper; Geoffrey David |
| **Subject:** | RE: Pate: CTS documents in the MDL repository |

Let me discuss with Lance and I'll get back to you today.

-----Original Message-----
From: Jeffrey A. Daxe [mailto:JAD@mijs.com]
Sent: Monday, April 13, 2015 10:20 AM
To: Doreen Lundrigan
Cc: Robert D. Ingram; R D. Smith; Pat Dawson; Brian Sieve; Lance Cooper; Geoffrey David
Subject: RE: Pate: CTS documents in the MDL repository

Doreen,

We called last week to discuss the below.  I am around to discuss if you, Pat or Lance
have some time.

Thanks, Jeff

Jeffrey A. Daxe
Partner
Moore Ingram Johnson & Steele, LLP

Main: 770-429-1499
Fax: 770-429-8631

mailto:JAD@mijs.com
http://www.mijs.com/attorney_bios/jadaxe.html

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Confidentiality Notice
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as
identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended
recipient, your receipt of this email and its attachments is the result of an inadvertent
disclosure or unauthorized transmittal. Sender reserves and asserts all rights to
confidentiality, including all privileges which may apply. Pursuant to those rights and
privileges, immediately DELETE and DESTROY all copies of the email and its attachments,
in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT
review, copy, or rely on in any way the contents of this email and its attachments. All
rights of the sender for violations of the confidentiality and privileges applicable to
this email and any attachments are expressly reserved. This E-mail (including
attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections
2510-2521, is confidential and may be legally privileged.

-----Original Message-----
From: Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
Sent: Monday, April 13, 2015 10:02 AM
To: Brian Sieve; Lance Cooper; Geoffrey David
Cc: Robert D. Ingram; Jeffrey A. Daxe; R D. Smith; Pat Dawson
Subject: RE: Pate: CTS documents in the MDL repository

Thanks Brian, we will look to hear back from you.


EXHIBIT
D

-----Original Message-----
From: Sieve, Brian D. [mailto:bsieve@kirkland.com]
Sent: Wednesday, April 08, 2015 5:39 PM
To: Lance Cooper; Doreen Lundrigan; David, Geoffrey
Cc: *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: RE: Pate: CTS documents in the MDL repository

Lance:  I do not understand your email.  There appears to be a miscommunication here.

First, plaintiffs have not served any discovery requests in this case. We are waiting for a consent order that allows plaintiffs (and defendants) to serve their document requests and interrogatories.  Once we agree on a consent order and the discovery is served,  we will respond under the rules.

Second, the five document requests you intend to serve all seek accident specific information.  We will respond to each of those and identify responsive documents.  I do not believe any of those requests implicate the production in the MDL.

Third, Interrogatory Nos. 1-6 that you intend to serve also seek accident specific information.  We will respond to each of those.   I do not believe any of those interrogatories implicate the production in the MDL.

Fourth, Interrogatory No. 9, to which we objected, requests that New GM identify by Bates numbers documents produced in response to Plaintiffs' First Set of Consolidated Request Nos. 61-87.  I assume that when you say "responsive to our discovery" in your email below you are referring to RFPs Nos. 61-87 in the MDL.  (If that is not the case, please let me know.)  Those document requests are no longer operative in the MDL, and New GM has no obligation to search for documents responsive to those specific requests.  After plaintiffs' served the First Set of RFPs, the parties engaged in a series of "meet and confer" conferences to narrow the scope of document production. After the February status conference, plaintiffs agreed to narrow their document requests.  Plaintiffs then served 112 document requests that superseded the First Set of document requests served on January 30, 2015.  In MDL Order No. 44, the Court ordered New GM to serve written responses to 50 of those 112 requests, all of which related to Phase 1 discovery.  New GM's responses will be served next week.  The parties are then required to meet and confer on further document requests, and unresolved issues will be raised at the April status conference.  Thus, New GM has not identified documents responsive to what you refer to as RFP Nos. 61-87, and it has no obligation to do so in the MDL.

However, in an effort to be cooperative, we did identify for you approximately 1,700 documents New GM reasonably believes relate to the Cadillac CTS. Those documents were identified on the spreadsheet I provided to Doreen earlier this week.  I would also reiterate that the entire production in the repository is searchable, so you have the ability to search for documents on any topic you desire.

In sum, we have gone above and beyond in an effort to help you identify documents that may be potentially relevant in this case.  Because you have no discovery outstanding, and because RFP Nos. 61-87 were withdrawn, GM is not withholding (or failing to identify) documents "responsive to [your] discovery."  With that said, we cannot and will not go back and run new searches for document requests that have been withdrawn by MDL lead counsel.

I trust this addresses your concerns and clears up some confusion.  I suggest that, as I discussed with Doreen earlier this week, the parties agree on a consent order that allows plaintiffs to serve their document requests and interrogatories (Nos. 1-6), New GM to serve its document requests and interrogatories, and New GM to serve the third party subpoenas.  We should get that process going now.  Let's go ahead and serve the discovery to which neither party objects.

As always, I'm available to discuss these issues with you.  Please let Jeff Daxe and me know if we can agree on a consent order.  Jeff will work with you to get

that on file promptly. If not, we'll file a motion with the Court seeking consent to
serve our discovery and the third-party subpoenas.

        Thanks. Brian

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone: 312-862-2197
Mobile: 708-732-0192
Fax: 312-862-2200

-----Original Message-----
From: Lance Cooper [mailto:lance@thecooperfirm.com]
Sent: Tuesday, April 07, 2015 6:31 PM
To: Sieve, Brian D.; Doreen Lundrigan; David, Geoffrey
Cc: *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: RE: Pate: CTS documents in the MDL repository

Brian,

That will not work.

GM needs to identify every document it has produced which is responsive to our discovery.
We do not accept GM's position that we need to find the needles in the haystack.
Furthermore, if GM has additional documents which are responsive to our discovery which
it has not produced in the MDL, it needs to identify those documents and produce them to
us separately.

Let me know by Friday what GM intends to do. Thanks.

lance
_____
From: Sieve, Brian D. [bsieve@kirkland.com]
Sent: Tuesday, April 07, 2015 3:46 AM
To: Doreen Lundrigan; David, Geoffrey
Cc: Lance Cooper; *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: Pate: CTS documents in the MDL repository

Doreen: per our discussion yesterday morning, attached is a spreadsheet that identifies
by Bates numbers the documents GM produced into the MDL repository that GM believes
relate generally to the Cadillac CTS.

The attached reflects what was identified as related to the CTS recall as the documents
were loaded in the repository. GM is not representing that the attached spreadsheet
identifies each and every document in the repository that relates to the CTS. As you
know, the productions in the repository are searchable, and thus plaintiffs are free to
conduct their own searches of the productions for additional documents that may relate to
the CTS.

Please let Geoff David or me know if you have any questions.

Brian

Sent from my iPad

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654

Phone:  312-862-2197
Mobile:  708-732-0192
Fax:  312-862-2200

*********************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful. If you have received this communication in
error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.
*********************************************************

*********************************************************
The information contained in this communication is confidential, may be attorney-client
privileged, may constitute inside information, and is intended only for the use of the
addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International
LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is
strictly prohibited and may be unlawful. If you have received this communication in
error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including
all attachments.
*********************************************************

**Jeffrey A. Daxe**

| | |
|---|---|
| **From:** | Jeffrey A. Daxe |
| **Sent:** | Thursday, April 16, 2015 5:13 PM |
| **To:** | 'Doreen Lundrigan' |
| **Cc:** | Lance Cooper (lance@thecooperfirm.com); Brian Sieve; Robert D. Ingram; Kyle Dreyer; Deron Wade; Giovanna Tarantino Bingham; R D. Smith |
| **Subject:** | RE: Pate: CTS documents in the MDL repository |

Doreen,

I was expecting our call shortly after we spoke?

We really need to get moving on the case specific discovery in Pate. Can you please get us a decision by the end of the week concerning whether or not you will consent to the party and non-party discovery which we previously forwarded to you?

As it concerns Worthington, a letter is being prepared in response to your request, wherein GM will agree to the case specific discovery you sought, but not that which overlaps the discovery already being sought on the same topics in the MDL. The delay in our response is the detailed review necessary to show you where some of your requests have already been dealt with through the MDL. In addition, the letter will address your requested inspection protocol. Thank you for your patience on that.

Thanks, Jeff

Jeffrey A. Daxe
Partner
Moore Ingram Johnson & Steele, LLP

Main: 770-429-1499
Fax: 770-429-8631

mailto:JAD@mijs.com
http://www.mijs.com/attorney_bios/jadaxe.html

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Confidentiality Notice
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.
-----Original Message-----
From: Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
Sent: Monday, April 13, 2015 11:09 AM
To: Brian Sieve; Jeffrey A. Daxe
Cc: Robert D. Ingram; R D. Smith; Pat Dawson; Lance Cooper; Geoffrey David
Subject: RE: Pate: CTS documents in the MDL repository

Brian, I'll get back with you this morning to see what we can work out.



1

-----Original Message-----
From: Sieve, Brian D. [mailto:bsieve@kirkland.com]
Sent: Monday, April 13, 2015 11:07 AM
To: *Daxe,Jeffrey; Doreen Lundrigan
Cc: *RIngram@mijs.com; Smith, Renee D.; Pat Dawson; Lance Cooper; David, Geoffrey
Subject: RE: Pate: CTS documents in the MDL repository

Doreen:  are you asking us to send over an agreed Consent Order?  If so, Jeff can send
you that.

I know Robert and Jeff were trying to schedule a call with you and Lance to discuss
resolving these issues.  But I am also available if you need to speak with me.

Thanks.  Brian

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone:  312-862-2197
Mobile:  708-732-0192
Fax:  312-862-2200

-----Original Message-----
From: Jeffrey A. Daxe [mailto:JAD@mijs.com]
Sent: Monday, April 13, 2015 9:19 AM
To: 'Doreen Lundrigan'
Cc: *RIngram@mijs.com; Smith, Renee D.; Pat Dawson; Sieve, Brian D.; Lance Cooper; David,
Geoffrey
Subject: RE: Pate: CTS documents in the MDL repository

Doreen,

We called last week to discuss the below.  I am around to discuss if you, Pat or Lance
have some time.

Thanks, Jeff

Jeffrey A. Daxe
Partner
Moore Ingram Johnson & Steele, LLP

Main: 770-429-1499
Fax: 770-429-8631

mailto:JAD@mijs.com
http://www.mijs.com/attorney_bios/jadaxe.html

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060
Confidentiality Notice
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as
identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended
recipient, your receipt of this email and its attachments is the result of an inadvertent
disclosure or unauthorized transmittal. Sender reserves and asserts all rights to
confidentiality, including all privileges which may apply. Pursuant to those rights and
privileges, immediately DELETE and DESTROY all copies of the email and its attachments,
in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT
review, copy, or rely on in any way the contents of this email and its attachments. All

rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

-----Original Message-----
From: Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
Sent: Monday, April 13, 2015 10:02 AM
To: Brian Sieve; Lance Cooper; Geoffrey David
Cc: Robert D. Ingram; Jeffrey A. Daxe; R D. Smith; Pat Dawson
Subject: RE: Pate: CTS documents in the MDL repository

Thanks Brian, we will look to hear back from you.

-----Original Message-----
From: Sieve, Brian D. [mailto:bsieve@kirkland.com]
Sent: Wednesday, April 08, 2015 5:39 PM
To: Lance Cooper; Doreen Lundrigan; David, Geoffrey
Cc: *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: RE: Pate: CTS documents in the MDL repository

Lance: I do not understand your email. There appears to be a miscommunication here.

First, plaintiffs have not served any discovery requests in this case. We are waiting for a consent order that allows plaintiffs (and defendants) to serve their document requests and interrogatories. Once we agree on a consent order and the discovery is served, we will respond under the rules.

Second, the five document requests you intend to serve all seek accident specific information. We will respond to each of those and identify responsive documents. I do not believe any of those requests implicate the production in the MDL.

Third, Interrogatory Nos. 1-6 that you intend to serve also seek accident specific information. We will respond to each of those. I do not believe any of those interrogatories implicate the production in the MDL.

Fourth, Interrogatory No. 9, to which we objected, requests that New GM identify by Bates numbers documents produced in response to Plaintiffs' First Set of Consolidated Request Nos. 61-87. I assume that when you say "responsive to our discovery" in your email below you are referring to RFPs Nos. 61-87 in the MDL. (If that is not the case, please let me know.) Those document requests are no longer operative in the MDL, and New GM has no obligation to search for documents responsive to those specific requests. After plaintiffs' served the First Set of RFPs, the parties engaged in a series of "meet and confer" conferences to narrow the scope of document production. After the February status conference, plaintiffs agreed to narrow their document requests. Plaintiffs then served 112 document requests that superseded the First Set of document requests served on January 30, 2015. In MDL Order No. 44, the Court ordered New GM to serve written responses to 50 of those 112 requests, all of which related to Phase 1 discovery. New GM's responses will be served next week. The parties are then required to meet and confer on further document requests, and unresolved issues will be raised at the April status conference. Thus, New GM has not identified documents responsive to what you refer to as RFP Nos. 61-87, and it has no obligation to do so in the MDL.

However, in an effort to be cooperative, we did identify for you approximately 1,700 documents New GM reasonably believes relate to the Cadillac CTS. Those documents were identified on the spreadsheet I provided to Doreen earlier this week. I would also reiterate that the entire production in the repository is searchable, so you have the ability to search for documents on any topic you desire.

In sum, we have gone above and beyond in an effort to help you identify documents that may be potentially relevant in this case. Because you have no discovery outstanding, and because RFP Nos. 61-87 were withdrawn, GM is not withholding (or failing

to identify) documents "responsive to [your] discovery." With that said, we cannot and
will not go back and run new searches for document requests that have been withdrawn by
MDL lead counsel.

      I trust this addresses your concerns and clears up some confusion. I
suggest that, as I discussed with Doreen earlier this week, the parties agree on a
consent order that allows plaintiffs to serve their document requests and interrogatories
(Nos. 1-6), New GM to serve its document requests and interrogatories, and New GM to
serve the third party subpoenas. We should get that process going now. Let's go ahead
and serve the discovery to which neither party objects.

      As always, I'm available to discuss these issues with you. Please let
Jeff Daxe and me know if we can agree on a consent order. Jeff will work with you to get
that on file promptly. If not, we'll file a motion with the Court seeking consent to
serve our discovery and the third-party subpoenas.

      Thanks. Brian

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone:  312-862-2197
Mobile:  708-732-0192
Fax:  312-862-2200

-----Original Message-----
From: Lance Cooper [mailto:lance@thecooperfirm.com]
Sent: Tuesday, April 07, 2015 6:31 PM
To: Sieve, Brian D.; Doreen Lundrigan; David, Geoffrey
Cc: *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: RE: Pate: CTS documents in the MDL repository

Brian,

That will not work.

GM needs to identify every document it has produced which is responsive to our discovery.
We do not accept GM's position that we need to find the needles in the haystack.
Furthermore, if GM has additional documents which are responsive to our discovery which
it has not produced in the MDL, it needs to identify those documents and produce them to
us separately.

Let me know by Friday what GM intends to do. Thanks.

lance

_____
From: Sieve, Brian D. [bsieve@kirkland.com]
Sent: Tuesday, April 07, 2015 3:46 AM
To: Doreen Lundrigan; David, Geoffrey
Cc: Lance Cooper; *RIngram@mijs.com; *Daxe,Jeffrey; Smith, Renee D.; Pat Dawson
Subject: Pate:  CTS documents in the MDL repository

Doreen:  per our discussion yesterday morning, attached is a spreadsheet that identifies
by Bates numbers the documents GM produced into the MDL repository that GM believes
relate generally to the Cadillac CTS.

The attached reflects what was identified as related to the CTS recall as the documents
were loaded in the repository. GM is not representing that the attached spreadsheet
identifies each and every document in the repository that relates to the CTS. As you
know, the productions in the repository are searchable, and thus plaintiffs are free to

conduct their own searches of the productions for additional documents that may relate to the CTS.

Please let Geoff David or me know if you have any questions.

Brian

Sent from my iPad

Brian D. Sieve, P.C.
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Phone:  312-862-2197
Mobile:  708-732-0192
Fax:  312-862-2200

**********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
**********************************************************

**********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
**********************************************************

**********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
**********************************************************

## Jeffrey A. Daxe

| | |
|---|---|
| **From:** | Jeffrey A. Daxe |
| **Sent:** | Monday, April 20, 2015 4:14 PM |
| **To:** | 'Doreen Lundrigan' |
| **Subject:** | RE: Pate v. GM |

Ok, thanks.

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP



M I J S
MOORE INGRAM JOHNSON & STEELE
A LIMITED LIABILITY PARTNERSHIP

| | |
|---|---|
| **Main:** | 770-429-1499 |
| **Fax:** | 770-429-8631 |

JAD@mijs.com
Attorney Biography

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

| MIJS Profile | Practice Areas | Events | Locations |
|---|---|---|---|

**Confidentiality Notice**
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

**From:** Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
**Sent:** Monday, April 20, 2015 4:13 PM
**To:** Jeffrey A. Daxe; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** R D. Smith
**Subject:** RE: Pate v. GM

Jeff, I have those on my desk, so no need to resend.

**From:** Jeffrey A. Daxe [mailto:JAD@mijs.com]
**Sent:** Monday, April 20, 2015 4:12 PM
**To:** Doreen Lundrigan; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** R D. Smith
**Subject:** RE: Pate v. GM

Doreen,

Thanks for sending this over.

While we are reviewing, we would appreciate your analysis of the party and non-party requests we previously sent over so we can do a single consent order addressing all discovery about which there is no objection. Please let me know if you need me to send those over again so you have them in one place.

We hope to be back in touch with you tomorrow.

EXHIBIT
F
Blumberg No. 5119

Thank you, Jeff

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP

| Main: | 770-429-1499 |
| Fax: | 770-429-8631 |

JAD@mijs.com
Attorney Biography

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

M I J S
MOORE INGRAM JOHNSON & STEELE

| MIJS Profile | Practice Areas | Events | Locations |

**Confidentiality Notice**
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

**From:** Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
**Sent:** Monday, April 20, 2015 4:05 PM
**To:** Brian Sieve; Dale Ellis; Jeffrey A. Daxe; Lance Cooper; Paul Rosenthal; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Subject:** Pate v. GM

Per the attached Coordination Order, paragraph 26, Plaintiffs seek your consent to serve the attached discovery to General Motors. Please let me know if we can submit the attached consent order to Judge Clayton permitting our service of the attached discovery, otherwise per the Coordination Order, we shall move the Court for leave to serve same.

**Doreen Lundrigan**
**The Cooper Firm**
**531 Roselane Street**
**Suite 200**
**Marietta, GA 30060**
**P: 770.427.5588 | F: 770.427.0010**
doreen@thecooperfirm.com | www.thecooperfirm.com
*Follow our blog*
*Marietta Accident Attorney*


THE
COOPER
FIRM

*Relentlessly Pursuing Justice*

## Jeffrey A. Daxe

| | |
|---|---|
| **From:** | Doreen Lundrigan <doreen@thecooperfirm.com> |
| **Sent:** | Wednesday, April 22, 2015 2:10 PM |
| **To:** | Jeffrey A. Daxe; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram |
| **Cc:** | Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith |
| **Subject:** | RE: Pate v. GM |

Jeff, I apologize for the confusion. There was some confusion between counsel on our end. Lance suggests that we agree to your non-party requests and see if you will agree to ours. If so, we can do a consent order to allow those to be served.

On the discovery you want to serve on our clients and the discovery we want to serve on GM, once we hear from you as to whether or not you will agree to this discovery, we can do a separate Consent Order on that discovery, or alternatively seek leave of the Court for filing of same.

Please review this and give me a call to discuss. Thanks.

**From:** Jeffrey A. Daxe [mailto:JAD@mijs.com]
**Sent:** Wednesday, April 22, 2015 11:00 AM
**To:** Doreen Lundrigan; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM
**Importance:** High

Pate Counsel:

I am a tad confused. A few weeks ago, we sent <u>draft</u> non-party requests to your attention for your review and approval so we could then seek leave of court for the service of same. We have been awaiting your approval on that and have been informed several times lately that we would hear back from you soon. Nonetheless, I have just received service copies of discovery you have <u>sent</u> to several non-parties absent our consent and absent court-required permission. You also seem to have filed a 5.2 service certificate although I do not see it among the stack of papers we received.

Given what I have received, I have a few questions:

1. Since your non-party discovery largely mirrors our own, please confirm you have no objection to our service of same so we can file a joint consent motion today as to ours <u>and yours</u>.
2. Was a 5.2 certificate filed? If so, please serve same. And,
3. Given that your discovery is dated 4/14 and served 4/15, why have we been informed several times since then by both Lance & Doreen that our request to serve similar (if not identical) discovery on non-parties is still being reviewed?

I look forward to hearing from you.

Thanks, Jeff

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP

| | |
|---|---|
| Main: | 770-429-1499 |
| Fax: | 770-429-8631 |

JAD@mijs.com
Attorney Biography



EXHIBIT
**G**

## Jeffrey A. Daxe

| | |
|---|---|
| **From:** | Jeffrey A. Daxe |
| **Sent:** | Thursday, April 23, 2015 10:13 AM |
| **To:** | 'Doreen Lundrigan'; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram |
| **Cc:** | Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith |
| **Subject:** | RE: Pate v. GM |

Doreen,

I believe Brian Sieve is planning to send a detailed response later today (only 3 days after receipt of your proposed requests sent late Monday). However, GM needed the time to review around 40 RPD you sent over, many of which were new. On the other hand, when can we expect <u>your</u> response on the case specific party discovery which we proposed and sent to you <u>three weeks ago</u>? We, too, would like to get those issues resolved either via consent or through a motion but we are still awaiting your response.

Thanks, Jeff

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP

M I J S
MOORE INGRAM JOHNSON & STEELE

| | |
|---|---|
| Main: | 770-429-1499 |
| Fax: | 770-429-8631 |

JAD@mijs.com
Attorney Biography

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

| MIJS Profile | Practice Areas | Events | Locations |
|---|---|---|---|

**Confidentiality Notice**
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

**From:** Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
**Sent:** Thursday, April 23, 2015 10:06 AM
**To:** Jeffrey A. Daxe; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM

Jeff, when will you be able to get back to us regarding the discovery we want to serve on GM, which was sent out earlier this week? We would like to get this matter before the Court if we can't agree.

**From:** Jeffrey A. Daxe [mailto:JAD@mijs.com]
**Sent:** Thursday, April 23, 2015 9:33 AM
**To:** Doreen Lundrigan; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM


EXHIBIT
H

Thank you.  I still need to hear from Dale Ellis.

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP

M I J S
MOORE INGRAM JOHNSON & STEELE

| MIJS Profile | Practice Areas | Events | Locations |

| Main: | 770-429-1499 |
| Fax: | 770-429-8631 |

JAD@mijs.com
Attorney Biography

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

**Confidentiality Notice**
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

**From:** Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
**Sent:** Thursday, April 23, 2015 8:47 AM
**To:** Jeffrey A. Daxe; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM

Jeff, the Consent Order is fine, you may sign Lance's name and submit.

**From:** Jeffrey A. Daxe [mailto:JAD@mijs.com]
**Sent:** Wednesday, April 22, 2015 3:48 PM
**To:** Doreen Lundrigan; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM

Lance & Dale,

Attached please find a consent order encompassing all of the non—party discovery you have served, and that which GM seeks leave to serve.

Please confirm your consent and I will have this delivered to Judge Clayton with your express permission.

Thanks, Jeff

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP

| Main: | 770-429-1499 |
| Fax: | 770-429-8631 |

JAD@mijs.com
Attorney Biography



Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

| MIJS Profile | Practice Areas | Events | Locations |

**Confidentiality Notice**

This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

**From:** Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
**Sent:** Wednesday, April 22, 2015 2:10 PM
**To:** Jeffrey A. Daxe; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM

Jeff, I apologize for the confusion. There was some confusion between counsel on our end. Lance suggests that we agree to your non-party requests and see if you will agree to ours. If so, we can do a consent order to allow those to be served.

On the discovery you want to serve on our clients and the discovery we want to serve on GM, once we hear from you as to whether or not you will agree to this discovery, we can do a separate Consent Order on that discovery, or alternatively seek leave of the Court for filing of same.

Please review this and give me a call to discuss. Thanks.

**From:** Jeffrey A. Daxe [mailto:JAD@mijs.com]
**Sent:** Wednesday, April 22, 2015 11:00 AM
**To:** Doreen Lundrigan; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM
**Importance:** High

Pate Counsel:

I am a tad confused. A few weeks ago, we sent <u>draft</u> non-party requests to your attention for your review and approval so we could then seek leave of court for the service of same. We have been awaiting your approval on that and have been informed several times lately that we would hear back from you soon. Nonetheless, I have just received service copies of discovery you have <u>sent</u> to several non-parties absent our consent and absent court-required permission. You also seem to have filed a 5.2 service certificate although I do not see it among the stack of papers we received.

Given what I have received, I have a few questions:

1. Since your non-party discovery largely mirrors our own, please confirm you have no objection to our service of same so we can file a joint consent motion today as to ours <u>and yours</u>.
2. Was a 5.2 certificate filed? If so, please serve same. And,
3. Given that your discovery is dated 4/14 and served 4/15, why have we been informed several times since then by both Lance & Doreen that our request to serve similar (if not identical) discovery on non-parties is still being reviewed?

I look forward to hearing from you.

Thanks, Jeff

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP

| Main: | 770-429-1499 |
| Fax: | 770-429-8631 |

JAD@mijs.com
Attorney Biography



MOORE INGRAM JOHNSON & STEELE

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

| MIJS Profile | Practice Areas | Events | Locations |

### Confidentiality Notice

This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

**From:** Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
**Sent:** Monday, April 20, 2015 4:05 PM
**To:** Brian Sieve; Dale Ellis; Jeffrey A. Daxe; Lance Cooper; Paul Rosenthal; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Subject:** Pate v. GM

Per the attached Coordination Order, paragraph 26, Plaintiffs seek your consent to serve the attached discovery to General Motors. Please let me know if we can submit the attached consent order to Judge Clayton permitting our service of the attached discovery, otherwise per the Coordination Order, we shall move the Court for leave to serve same.

**Doreen Lundrigan**
The Cooper Firm
531 Roselane Street
Suite 200
Marietta, GA 30060
P: 770.427.5588 | F: 770.427.0010
doreen@thecooperfirm.com | www.thecooperfirm.com
*Follow our blog*
*Marietta Accident Attorney*



THE COOPER FIRM

*Relentlessly Pursuing Justice*

## Patrice A. Garnier

| | |
|---|---|
| **From:** | Doreen Lundrigan <doreen@thecooperfirm.com> |
| **Sent:** | Wednesday, April 22, 2015 2:18 PM |
| **To:** | Jeffrey A. Daxe; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram |
| **Cc:** | Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith |
| **Subject:** | RE: Pate v. GM |
| **Attachments:** | 2015-04-15 Rule 5.2 Certificate.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Jeff, if you want to put together and send over that would be fine. Attached is a copy of the 5.2 Certificate for your records.

**From:** Jeffrey A. Daxe [mailto:JAD@mijs.com]
**Sent:** Wednesday, April 22, 2015 2:15 PM
**To:** Doreen Lundrigan; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM

Doreen, thanks for your response.

We agree. Let's do a consent order as to the non-party discovery served thus far and that which we intend to serve. Do you want to do that or may I?

A separate later order can be done to address the party discovery which both sides are still reviewing.

Finally, please send me the 5.2 if indeed it was filed and mistakenly not served with the other docs I received.

Thanks, Jeff

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP

| | |
|---|---|
| **Main:** | 770-429-1499 |
| **Fax:** | 770-429-8631 |

JAD@mijs.com
Attorney Biography

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

M I J S
MOORE INGRAM JOHNSON & STEELE

| MIJS Profile | Practice Areas | Events | Locations |
|---|---|---|---|

**Confidentiality Notice**
This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

**From:** Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
**Sent:** Wednesday, April 22, 2015 2:10 PM


EXHIBIT
I

**To:** Jeffrey A. Daxe; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM

Jeff, I apologize for the confusion. There was some confusion between counsel on our end. Lance suggests that we agree to your non-party requests and see if you will agree to ours. If so, we can do a consent order to allow those to be served.

On the discovery you want to serve on our clients and the discovery we want to serve on GM, once we hear from you as to whether or not you will agree to this discovery, we can do a separate Consent Order on that discovery, or alternatively seek leave of the Court for filing of same.

Please review this and give me a call to discuss. Thanks.

---

**From:** Jeffrey A. Daxe [mailto:JAD@mijs.com]
**Sent:** Wednesday, April 22, 2015 11:00 AM
**To:** Doreen Lundrigan; Brian Sieve; Dale Ellis; Lance Cooper; Paul Rosenthal; Pat Dawson; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Cc:** Ryan M. Ingram; Kimberly Thompson; Carey E. Olson; R D. Smith
**Subject:** RE: Pate v. GM
**Importance:** High

Pate Counsel:

I am a tad confused. A few weeks ago, we sent <u>draft</u> non-party requests to your attention for your review and approval so we could then seek leave of court for the service of same. We have been awaiting your approval on that and have been informed several times lately that we would hear back from you soon. Nonetheless, I have just received service copies of discovery you have <u>sent</u> to several non-parties absent our consent and absent court-required permission. You also seem to have filed a 5.2 service certificate although I do not see it among the stack of papers we received.

Given what I have received, I have a few questions:

1. Since your non-party discovery largely mirrors our own, please confirm you have no objection to our service of same so we can file a joint consent motion today as to ours <u>and yours</u>.
2. Was a 5.2 certificate filed? If so, please serve same. And,
3. Given that your discovery is dated 4/14 and served 4/15, why have we been informed several times since then by both Lance & Doreen that our request to serve similar (if not identical) discovery on non-parties is still being reviewed?

I look forward to hearing from you.

Thanks, Jeff

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP

Main: 770-429-1499
Fax: 770-429-8631

JAD@mijs.com
Attorney Biography

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

M I J S
MOORE INGRAM JOHNSON & STEELE

| MIJS Profile | Practice Areas | Events | Locations |

Confidentiality Notice

2

This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

**From:** Doreen Lundrigan [mailto:doreen@thecooperfirm.com]
**Sent:** Monday, April 20, 2015 4:05 PM
**To:** Brian Sieve; Dale Ellis; Jeffrey A. Daxe; Lance Cooper; Paul Rosenthal; R. Michael Malcom; Regina Auchenbacher; Robert D. Ingram
**Subject:** Pate v. GM

Per the attached Coordination Order, paragraph 26, Plaintiffs seek your consent to serve the attached discovery to General Motors.  Please let me know if we can submit the attached consent order to Judge Clayton permitting our service of the attached discovery, otherwise per the Coordination Order, we shall move the Court for leave to serve same.

**Doreen Lundrigan**
**The Cooper Firm**
531 Roselane Street
Suite 200
Marietta, GA 30060
P: 770.427.5588 | F: 770.427.0010
doreen@thecooperfirm.com | www.thecooperfirm.com
*Follow our blog*
*Marietta Accident Attorney*



*Relentlessly Pursuing Justice*

IN THE STATE COURT OF COBB COUNTY

STATE OF GEORGIA

MICHAEL E. PATE and BARBARA J. PATE,                    )
Individually, and as Administrators of the Estate of  )
MICHAEL ERIC PATE, deceased,                           )
                                                       )
        Plaintiffs,                                    )
                                                       )
v.                                                     )        CAFN: 14A2092-2
                                                       )
GENERAL MOTORS, LLC and,                               )
VICTORIA NICOLE JONES,                                 )
                                                       )
        Defendants.                                    )

## RULE 5.2 CERTIFICATE OF SERVICE

COME NOW MICHAEL E. PATE and BARBARA J. PATE, Individually, and as
Administrators of the Estate of MICHAEL ERIC PATE, deceased, Plaintiffs in the above-styled
action, and pursuant to Superior Court and State Court Uniform Rule 5.2, certifies that the
following discovery pleading(s) was/were on this date served upon the Defendants the following
documents:

Plaintiffs' Request for Production of Documents to Non-Party Atlanta Medical Radiology
Center; Plaintiffs' Request for Production of Documents to Non-Party Rockdale County
Coroner; Plaintiffs' Request for Production of Documents to Non-Party Georgia Department of
Public Safety; and Plaintiffs' Request for Production of Documents to Non-Party Rockdale
Medical Radiology Center and addressed as follows:

**P&M**

Preston & Malcom
ATTORNEYS AT LAW

110 Court Street
Post Office Box 984
Monroe, Georgia 30655
770.267.2503

Robert Ingram, Esq.              Nicholas F. Wasdin, Esq.
Ryan Ingram, Esq.                Brian D. Sieve, Esq.
Jeffrey Daxe, Esq.               Jeffrey S. Bramson, Esq.
Carey Olson, Esq.                Leonid Feller, Esq.
Moore, Ingram Johnson & Steele   Kirkland & Ellis, LLP
326 Roswell Road                 300 North LaSalle
Marietta, GA 30060               Chicago, IL 60654

W. Dale Ellis Jr., Esq.
Sharon W. Ware & Associates
2400 Century Parkway NE, Suite 200
P.O. Box 29200
Atlanta, GA  30359

RESPECTFULLY SUBMITTED this ___ day of April, 2015.

PRESTON & MALCOM, P. C.
Attorneys for the Plaintiffs

PAUL L. ROSENTHAL
Georgia State Bar No. 614904



Preston & Malcom
ATTORNEYS AT LAW

110 Court Street
Post Office Box 984
Monroe, Georgia 30655
770.267.2503

## Sarah Cannedy

| | |
|---|---|
| **From:** | Doreen Lundrigan <doreen@thecooperfirm.com> |
| **Sent:** | Friday, April 24, 2015 2:00 PM |
| **To:** | Jeffrey Bramson; Lance Cooper; plr@prestonmalcom.com; rmm@prestonmalcom.com; rca@prestonmalcom.com; dale.ellis.sqvj@statefarm.com |
| **Cc:** | Brian Sieve; R D. Smith; Robert D. Ingram; Jeffrey A. Daxe |
| **Subject:** | RE: Pate v. GM: Discovery Requests |

Dear Jeffrey:

Our document requests do not include documents that are more appropriately obtained in the MDL since GM will not be producing all of the documents in the MDL until after our expert witnesses must be identified. In other words, given the scheduling order entered in *Pate*, GM needs to produce the requested documents within 30 days or so, so that our experts can adequately prepare to offer their opinions. As it is, GM has produced a limited number of documents relating to the Cadillac CTS in such a way that we are forced to hunt and peck through the database to find the relevant documents. This, of course, is unacceptable but no doubt is the reason why GM wants to continue make it difficult for us to efficiently review the relevant documents. Therefore, on Monday, we will be sending a motion to Judge Clayton asking her to order that we be permitted to serve this discovery on GM.

If you have any questions, please call me.

-- Lance

---

**From:** Bramson, Jeffrey S. [mailto:jeffrey.bramson@kirkland.com]
**Sent:** Friday, April 24, 2015 9:56 AM
**To:** Lance Cooper; Doreen Lundrigan; plr@prestonmalcom.com; rmm@prestonmalcom.com; rca@prestonmalcom.com; dale.ellis.sqvj@statefarm.com
**Cc:** Sieve, Brian D.; Smith, Renee D.; *RIngram@mijs.com; *Daxe,Jeffrey
**Subject:** Pate v. GM: Discovery Requests

Lance:

I am writing in response to your proposed interrogatories and RFPs in the *Pate* matter. We consent to service of all of the interrogatories, and to RFP Nos. 1–7, 9, 11–12, and 15.

We object to the remainder of your proposed document requests because they seek documents that are more appropriately obtained in the MDL. As you know, discovery in the Coordinated Actions (including *Pate*) is proper only to the extent "the discovery sought could not have been obtained in coordinated discovery in the MDL Proceeding." (MDL Order. No. 16 ¶ 5). Most of the documents you seek can be obtained in the MDL Proceeding. For example, Request No. 8 is covered by category 2 in Attachment A of MDL Order No. 20; Request No. 13 is covered by category 1 of the same; Request No. 40 is covered by category 18 of the same; and so forth. Other requests bear no specific relation to the subject incident in *Pate*, and are therefore beyond the scope of permissible discovery in this Coordinated Action.

I suggest we draft a consent order for the Court that permits plaintiffs to serve their interrogatories, RFP Nos. 1–7, 9, 11–12, and 15, and GM's proposed discovery. Robert and Jeff can work with you on that consent order.



EXHIBIT
J

As always, please call me if you want to discuss these issues.

Jeffrey S. Bramson

Kirkland & Ellis LLP
300 North LaSalle   Chicago, IL 60654
Tel +1-312-862-3424  Fax +1-312-862-2200

jeffrey.bramson@kirkland.com

**********************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
**********************************************************

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing **Brief in Support of General Motors LLC's Motion for Leave to Serve Case-Specific Party Discovery** was served by hand delivery to:

**THE COOPER FIRM**
Lance A. Cooper (Ga. Bar No. 186100)
531 Roseland Street, Suite 200
Marietta, GA 30060
Telephone:   (770) 427-5588
E-mail:          lance@thecooperfirm.com

A copy of the foregoing **Brief in Support of General Motors LLC's Motion for Leave to Serve Case-Specific Party Discovery** was also served by depositing in the U.S. mail a copy of same in a properly addressed envelope with adequate postage thereon to:

**PRESTON & MALCOM**
R. Michael Malcom (Ga. Bar No. 467025)
Paul L. Rosenthal (Ga. Bar No. 614904)
110 Court Street
P. O. Box 984
Monroe, GA 30655
Telephone:   (770) 267-2503
E-mail:         rmm@prestonmalcom.com
E-mail:         plr@prestonmal.com

*Attorneys for Plaintiffs*

**SHARON WARE & ASSOCIATES**
W. Dale Ellis, Jr.
2400 Century Parkway, N.E., Suite 200
Atlanta, GA 30359
Telephone:   (404) 728-5400
E-mail:          dale.ellis@statefarm.com

*Attorneys for Victoria Nicole Jones*

This _____ day of May, 2015.

_Jeffrey A. Daxe_

MOORE INGRAM
JOHNSON & STEELE
A Limited Liability Partnership
Emerson Overlook
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
FAX (770) 429-8631

326 Roswell St.
Marietta, GA 30060
Tel: (770) 429-1499
Fax: (770) 429-8631
jad@mijs.com

# Exhibit 30

# IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

COBB COUNTY, GA
FILED IN OFFICE

15 MAY 15 AM 10: 01

ANGIE T. DAVIS
STATE COURT CLERK-13

| | |
|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually, and as Administrators of the Estate of MICHAEL ERIC PATE, deceased, §§§§§ | |
| Plaintiffs, § | |
| v. § | Civil Action No. 14-A-2712-1 |
| GENERAL MOTORS LLC, and VICTORIA NICOLE JONES, §§§§ | |
| Defendants. | |

## GENERAL MOTORS, LLC'S SECOND MOTION FOR
## LEAVE TO SERVE CASE-SPECIFIC PARTY DISCOVERY

COMES NOW Defendant General Motors, LLC ("New GM"), by and through its undersigned counsel, and hereby files this Second Motion for Leave to Serve Case-Specific Party Discovery, and relies upon its Brief in Support filed contemporaneously herewith, and all other pleadings of record.

DATED: May 15th, 2015          Respectfully submitted,

MOORE INGRAM JOHNSON & STEELE, LLP

Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
326 Roswell Street
Marietta, GA 30060
Telephone:    (770) 429-1499
Facsimile:    (770) 429-8631
Email: ringram@mijs.com
Email: jad@mijs.com
Email: colson@mijs.com
Email: rmingram@mijs.com

KIRKLAND & ELLIS LLP
Brian Sieve (Pro Hac Vice)
Leonid Feller (Pro Hac Vice)
Renee D. Smith (Pro Hac Vice)
Jeffrey S. Bramson (Pro Hac Vice)
Nicholas F. Wasdin (Pro Hac Vice)
300 North LaSalle Street
Chicago, Illinois 60654

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing

**General Motors LLC's Second Motion for Leave to Serve Case-Specific Party**

**Discovery** was served by email and US Mail (in a properly addressed envelope with

adequate postage thereon) to:

**THE COOPER FIRM**
Lance A. Cooper (Ga. Bar No. 186100)
531 Roseland Street, Suite 200
Marietta, GA 30060
Telephone: (770) 427-5588
E-mail: lance@thecooperfirm.com

**PRESTON & MALCOM**
R. Michael Malcom (Ga. Bar No. 467025)
Paul L. Rosenthal (Ga. Bar No. 614904)
110 Court Street
P. O. Box 984
Monroe, GA 30655
Telephone: (770) 267-2503
E-mail: rmm@prestonmalcom.com
E-mail: plr@prestonmal.com

*Attorneys for Plaintiffs*

**SHARON WARE &
ASSOCIATES**
W. Dale Ellis, Jr.
2400 Century Parkway, N.E.,
Suite 200
Atlanta, GA 30359
Telephone: (404) 728-5400
E-mail:
dale.ellis@statefarm.com

*Attorneys for Victoria Nicole Jones*

This _15th_ day of May, 2015.

Jeffrey A. Daxe

326 Roswell St.
Marietta, GA 30060
Tel: (770) 429-1499
Fax: (770) 429-8631
jad@mijs.com

IN THE STATE COURT OF COBB COUNTY

STATE OF GEORGIA

|  |  |  |
|---|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually, and as Administrators of the Estate of MICHAEL ERIC PATE, deceased, | § § § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 14-A-2712-1 |
| GENERAL MOTORS LLC, and VICTORIA NICOLE JONES, | § § § § | |
| Defendants. | § | |



## BRIEF IN SUPPORT OF GENERAL MOTORS LLC'S SECOND MOTION FOR LEAVE TO SERVE CASE-SPECIFIC PARTY DISCOVERY

Defendant General Motors LLC ("New GM"), by and through its undersigned counsel, submits this Brief in Support of its Second Motion for Leave to Serve Case-Specific Party Discovery, and shows the Court the following:

### INTRODUCTION

This is a lawsuit in which Plaintiffs Michael E. Pate and Barbara J. Pate ("Plaintiffs") seek recovery from General Motors, LLC and Victoria Nicole Jones for the death of their son Michael Eric Pate resulting from a motor vehicle collision on June 6, 2014. (Compl. ¶¶ 1, 11–14, September 29, 2014.) This action is related to *In re General Motors, LLC Ignition Switch Litigation*, MDL Docket No. 2543 ("MDL Proceeding"), which is pending in the U.S. District Court for the Southern District of New York. As this Court is aware, the Parties in this case agreed to coordinate discovery efforts with the MDL Proceeding, and this Court entered an Order accepting that agreement and requiring that discovery proceed pursuant to the Joint Coordination Order. (Agreed

Order Regarding Joint Coordination, November 25, 2014; Joint Coordination Order
("Coordination Order"), September 24, 2014.)

Generally, the Coordination Order requires that all discovery be handled through
the MDL Proceeding; however, due to the fact-specific nature of coordinated cases, the
parties in a coordinated action may seek leave of Court to serve case-specific discovery
requests, which would not be addressed in the MDL Proceeding. (See Section A., infra.)
New GM drafted case-specific Interrogatories to Plaintiffs and Requests for Admissions
to Plaintiffs. (See Section B., infra.) New GM then requested Plaintiffs' consent to
obtain leave from the Court to serve its case-specific party discovery requests, but
Plaintiffs have refused to consent, or even to respond. Therefore, in accord with the
Coordination Order, New GM seeks leave from this Court to serve its case-specific
discovery requests on Plaintiffs. (See Section C., infra.)

## A. The Coordination Order

The MDL Court entered the Coordination Order to provide for a "just and
efficient disposition of each proceeding" because "many of the . . . factual allegations and
circumstances and many of the . . . parties" are the same in the MDL Proceeding and the
Coordinated Action, and discovery "will substantially overlap." (Coordination Order 1–
2.)  On November 25, 2014, this Court entered an Order adopting the MDL's
Coordination Order, thereby mandating that discovery in the present litigation should
proceed pursuant to the terms of the Coordination Order.

Under the Coordination Order, the Parties are ordered to "work together to
coordinate discovery to the maximum extent feasible in order to avoid duplication of
effort and to promote the efficient and speedy resolution of the MDL Proceeding and the
Coordinated Actions." (Coordination Order 2.) This coordination process is facilitated

where the Parties consent to case-specific discovery requested and where the Parties then seek leave of Court to serve case-specific discovery by consent.  Where one party fails to agree to the other party's request for consent to seek leave to serve case-specific discovery requests, the requesting party is forced to file a motion and seek leave from the Court.

> Requests for documents, interrogatories, depositions on written questions[,] and requests for admissions in addition to those served in the MDL Proceeding . . . may be propounded in a Coordinated Action only upon leave of the court in which the Coordinated Action is pending, obtained on noticed motion for good cause shown, including why the discovery sought could not have been obtained in coordinated discovery in the MDL Proceeding.

(Coordination Order ¶ 26.)

## B. The Case-Specific Discovery Sought by New GM Complies with the Coordination Order.

New GM provided draft party discovery requests to Plaintiffs on May 12, 2015. (See e-mail from Jeffrey A. Daxe to Lance Cooper, May 12, 2015 at 9:55 a.m., attached hereto as Exhibit "A"; Draft of Def.'s Second Interrogs. to Pls.; Draft of Def.'s First Req. for Admissions.)  Every request drafted by New GM is case-specific because every request relates specifically to the facts and circumstances of the subject incident, and more particularly the SDM download from the subject vehicle being driven by Mr. Pate at the time of the incident which forms the basis for this action, and the nature of the expert inspection therewith.

## C. This Court Should Grant New GM Leave to Serve Plaintiffs with Its Case-Specific Second Interrogatories and Request for Admissions Because the Requested Information Cannot Be Obtained in the MDL Proceeding.

This Court's Coordination Order permits case-specific discovery, which is not handled in the MDL Proceeding.  The discovery sought with this motion pertains solely

to issues outside of those being addressed by MDL discovery; and those topics concern the inspection of the subject vehicle and the SDM download of the subject vehicle. In an attempt to facilitate this discovery process, New GM requested consent from Plaintiffs regarding its case-specific party discovery. (See Exhibit A.)

In light of its showing of good cause and good faith, New GM requests that this Court grant New GM leave to serve Plaintiffs with its Second Interrogatories to Plaintiffs and Request for Admissions.

DATED: May 15th, 2015                 Respectfully submitted,

                                      MOORE INGRAM JOHNSON & STEELE, LLP

                                      Robert D. Ingram (Ga. Bar No. 383405)
                                      Jeffrey A. Daxe (Ga. Bar No. 213701)
                                      Carey E. Olson (Ga. Bar No. 843080)
                                      Ryan M. Ingram (Ga. Bar No. 394318)
                                      326 Roswell Street
                                      Marietta, GA 30060
                                      Telephone:  (770) 429-1499
                                      Facsimile:  (770) 429-8631
                                      Email: ringram@mijs.com
                                      Email: jad@mijs.com
                                      Email: colson@mijs.com
                                      Email: rmingram@mijs.com

                                      KIRKLAND & ELLIS LLP
                                      Brian Sieve (Pro Hac Vice)
                                      Leonid Feller (Pro Hac Vice)
                                      Renee D. Smith (Pro Hac Vice)
                                      Jeffrey S. Bramson (Pro Hac Vice)
                                      Nicholas F. Wasdin (Pro Hac Vice)
                                      300 North LaSalle Street
                                      Chicago, Illinois 60654

## Angela Flowers

| | |
|---|---|
| **From:** | Jeffrey A. Daxe |
| **Sent:** | Tuesday, May 12, 2015 9:55 AM |
| **To:** | 'Lance Cooper (lance@thecooperfirm.com)' |
| **Cc:** | Robert D. Ingram; Brian Sieve; R D. Smith; 'dale.ellis@statefarm.com'; 'Doreen Lundrigan' |
| **Subject:** | RE: Pate v. GM |
| **Attachments:** | Pate v GM_Draft Second Interrogatories_(36031630_3).pdf; Pate v GM_Draft Requests for Admission_(36031624_4).pdf; Exhibit A_Pate v GM RFAs_CDR Report.pdf; Exhibit A_Pate v GM Rogs_Ignition Cylinder Cover Photo.jpg |

Lance,

Attached are another set of draft discovery requests to your clients. Per the coordination order, GM seeks your consent to serve these on you. Please let us know if you approve, and we will draft the appropriate consent and present same to the Court. Please get back to me by the end of the day on Thursday, otherwise we will file a motion with the Court on Friday.

Thank you, Jeff

---

**Jeffrey A. Daxe**
Partner
Moore Ingram Johnson & Steele, LLP



| Main: | 770-429-1499 |
|---|---|
| Fax: | 770-429-8631 |

JAD@mijs.com
Attorney Biography

Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

| MIJS Profile | Practice Areas | Events | Locations |
|---|---|---|---|

### Confidentiality Notice

This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

**From:** Jeffrey A. Daxe
**Sent:** Wednesday, April 01, 2015 2:39 PM
**To:** Lance Cooper (lance@thecooperfirm.com)
**Cc:** Robert D. Ingram; Brian Sieve; R D. Smith; dale.ellis@statefarm.com; 'Doreen Lundrigan'
**Subject:** FW: Pate v. GM

Lance,

Attached are draft discovery requests to your clients. Per the coordination order, GM seeks your consent to serve these on you. Please let us know if you approve, and we will draft the appropriate consent and present same to the Court.

Thank you, Jeff



EXHIBIT
A

1

**Jeffrey A. Daxe**

Partner

Moore Ingram Johnson & Steele, LLP

| | |
|---|---|
| Main: | 770-429-1499 |
| Fax: | 770-429-8631 |

JAD@mijs.com
Attorney Biography



Emerson Overlook
326 Roswell Street
Marietta, Georgia 30060

| MIJS Profile | Practice Areas | Events | Locations |
|---|---|---|---|

### Confidentiality Notice

This email and all attachments are CONFIDENTIAL and intended SOLELY for the recipients as identified in the "To", "Cc" and "Bcc" lines of this email. If you are not an intended recipient, your receipt of this email and its attachments is the result of an inadvertent disclosure or unauthorized transmittal. Sender reserves and asserts all rights to confidentiality, including all privileges which may apply. Pursuant to those rights and privileges, immediately DELETE and DESTROY all copies of the email and its attachments, in whatever form, and immediately NOTIFY the sender of your receipt of this email. DO NOT review, copy, or rely on in any way the contents of this email and its attachments. All rights of the sender for violations of the confidentiality and privileges applicable to this email and any attachments are expressly reserved. This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged.

# IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

MICHAEL E. PATE and BARBARA J.    )
PATE,    )
Individually, and as Administrators    )
Of the Estate of    )
MICHAEL ERIC PATE, deceased,    )
    )
    Plaintiffs,    )    CIVIL ACTION
    )    FILE NO. 14A-2712-1
v.    )
    )
GENERAL MOTORS LLC, and    )
VICTORIA NICOLE JONES,    )
    )
    Defendants.    )

## GENERAL MOTORS LLC'S
## SECOND SET OF INTERROGATORIES TO PLAINTIFFS

Pursuant to O.C.G.A. § 9-11-33, Defendant General Motors LLC ("GM") hereby requests that Plaintiffs answer, separately and fully in writing, under oath, the following Interrogatories (each an "Interrogatory" and collectively the "Interrogatories") within thirty (30) days of service upon you.

## DEFINITIONS

1.    "Identify" when referring to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

2.    "Identify" when referring to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified once in accordance with this definition, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

3.     "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

4.     "State" means to state, to the extent known, all relevant facts discoverable under O.C.G.A. § 9-11-34.  When used in reference to a contention, "State" shall include all facts, Documents, and communications negating as well as supporting the contention.

5.     "Subject Incident" means the incident giving rise to this litigation, described in Paragraphs 11-14 of Your Complaint.

6.     "Subject Vehicle" means the 2005 Cadillac CTS defined as "CTS" in Paragraph 10 of Your Complaint.

7.     "You" or "Your" means Michael E. Pate and Barbara J. Pate, Individually, and as Administrators of the Estate of Michael Eric Pate, and all Your agents, experts, employees, attorneys, representatives, predecessors and/or successors.

8.     Whenever the singular is used, it shall also be taken to include the plural, and vice versa.  The use of terms "and," "or," or "and/or" shall be construed as encompassing "and," "or," and "and/or," so as to bring within the scope of the response all information that might otherwise be construed to be outside its scope.

9.     The term "all" includes the word "any" and vice versa; and "each" includes the word "all" and vice versa.

10.    The past tense of a verb shall be construed to include the present tense and vice versa.

## INSTRUCTIONS

1.     State the Interrogatory in full before giving the answer.

2

2.      Each Interrogatory shall be answered fully, in writing and under oath, unless it is objected to, in which event You or Your representative shall state the reason(s) for objection and shall answer the Interrogatory to the extent the Interrogatory is not objected to.

3.      The response to each Interrogatory shall include all responsive knowledge or information within Your possession, custody, or control, including, without limitation, any responsive knowledge or information in the possession of Counsel, any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on Your behalf, in order to fully respond to these requests.

4.      If You cannot answer the following Interrogatories in full after exercising due diligence to secure the full information to do so, state an answer to the extent possible, specifying Your inability to answer the remainder, and stating whatever information or knowledge You have concerning the unanswered portion.

5.      If in responding to these Interrogatories You or Your representative encounters any alleged ambiguity, set forth the matter deemed ambiguous and the construction used in responding.

6.      If a claim of privilege is asserted in objecting to any Interrogatory, or sub-part thereof, furnish the following information with respect to that portion of the Interrogatory as to which the claim of privilege is asserted: (a) the basis on which the privilege is claimed; (b) the type of information withheld; (c) the general subject matter of the information withheld.

7.      State all grounds for objection to an Interrogatory with specificity.

8.      The responses to the Interrogatories are to be signed by the Person making them, and the objections are to be signed by the attorney making them.

3

9.    If You respond to any Interrogatory by referring to business records produced pursuant to O.C.G.A. § 9-11-33(c), Identify by bates number and date of production the document(s) or data from which You contend that the answer may be derived.

10.    You shall supplement Your responses if You come into possession, custody, or control of responsive knowledge or information between the time of the initial response and the time of the trial herein, by promptly amending Your responses.

## INTERROGATORIES

INTERROGATORY NO. 1: Identify each Person who inspected, tested, or disassembled the ignition switch in the Subject Vehicle after the Subject Incident, and describe the nature of any inspection, testing or disassembly performed.

INTERROGATORY NO. 2: State whether the ignition switch in the Subject Vehicle has been altered in any way from its condition at the time of the Subject Incident, and, if so, Identify each Person who altered the switch, how it was altered, and the date(s) on which it was altered.

INTERROGATORY NO. 3: State whether the ignition key has been removed from the ignition cylinder in the Subject Vehicle since the Subject Incident, and, if so, Identify each Person who removed the ignition key and the date(s) on which it was removed.

INTERROGATORY NO. 4: Identify the Person who attached the tag ("2005 Cadillac Pate, Michael") to the key ring attached to the ignition key in the Subject Vehicle and the date on which it was attached.

INTERROGATORY NO. 5: Are the ignition key and ignition switch in the Subject Vehicle currently in the same positions they were in at the time of the Subject Incident?

INTERROGATORY NO. 6: State whether the ignition key in the Subject Vehicle has been turned, twisted, and/or rotated by any Person since the Subject Incident, and, if so, Identify

4

each Person who has turned, twisted, and/or rotated the key and the date(s) on which the key was turned, twisted, and/or rotated.

INTERROGATORY NO. 7: State the current location of the cover to the ignition cylinder in the Subject Vehicle (see photograph attached as **Exhibit A**) and the date on which it was removed.

INTERROGATORY NO. 8: Identify all evidence You believe supports Your answer to General Motors LLC's First Requests for Admission No. 7.

DATED: May ___, 2015                    Respectfully submitted,

                                        _____
                                        Robert D. Ingram (Ga. Bar No. 383405)
                                        Jeffrey A. Daxe (Ga. Bar No. 213701)
                                        Carey E. Olson (Ga. Bar No. 843080)
                                        Ryan M. Ingram (Ga. Bar No. 394318)
                                        MOORE INGRAM JOHNSON & STEELE LLP
                                        327 Roswell Street
                                        Marietta, GA  30060
                                        Telephone: (770) 429-1499
                                        Facsimile: (770) 429-8631
                                        Email:  ringram@mijs.com
                                        Email:  jad@mijs.com
                                        Email:  colson@mijs.com
                                        Email:  rmingram@mijs.com

## CERTIFICATE OF SERVICE

I certify that on this ___ day of May 2015, a true and correct copy of DEFENDANT

GENERAL MOTORS LLC'S FIRST INTERROGATORIES TO PLAINTIFFS was served upon

Counsel of record by U.S. Postal Service First Class Mail, postage prepaid, as follows:

Lance A. Cooper
THE COOPER FIRM
531 Roseland Street, Suite 200
Marietta, GA  30060

*Attorney for Plaintiffs*

By: _____
        Jeffrey A. Daxe

## IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| MICHAEL E. PATE and BARBARA J. PATE, Individually, and as Administrators Of the Estate of MICHAEL ERIC PATE, deceased, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 14A-2712-1 |
| v. | ) ) | |
| GENERAL MOTORS LLC, and VICTORIA NICOLE JONES, | ) ) ) | |
| Defendants. | ) | |

### GENERAL MOTORS LLC'S FIRST REQUESTS FOR ADMISSION

Pursuant to O.C.G.A. § 9-11-36, General Motors LLC ("GM") hereby requests that Plaintiffs answer the following Requests for Admission within thirty (30) days of service.

### DEFINITIONS

1.      "Subject Incident" means the incident giving rise to this litigation, described in Paragraphs 11-14 of Your Complaint.

2.      "Subject Vehicle" means the 2005 Cadillac CTS defined as "CTS" in Paragraph 10 of Your Complaint.

3.      "You" or "Your" means Michael E. Pate and Barbara J. Pate, Individually, and as Administrators of the Estate of Michael Eric Pate, and all Your agents, experts, employees, attorneys, representatives, predecessors and/or successors.

4.      Whenever the singular is used, it shall also be taken to include the plural, and vice versa. The use of terms "and," "or," or "and/or" shall be construed as encompassing "and," "or," and "and/or," so as to bring within the scope of the response all information that might otherwise be construed to be outside its scope.

5.      The term "all" includes the word "any" and vice versa; and "each" includes the word "all" and vice versa.

6.      The past tense of a verb shall be construed to include the present tense and vice versa.

## INSTRUCTIONS

1.      State the Request for Admission in full before giving the answer.

2.      If in responding to these Requests for Admission You or Your representative encounters any alleged ambiguity, set forth the matter deemed ambiguous and the construction used in responding.

3.      State all grounds for objection to a Request for Admission with specificity.

4.      The responses to the Request for Admission are to be signed by the Person making them, and the objections are to be signed by the attorney making them.

## REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION NO. 1:  Admit that Exhibit A is a true and accurate printout of Sensing and Diagnostic Module (SDM) data from the Subject Vehicle, dated July 21, 2014.

REQUEST FOR ADMISSION NO. 2:  Admit that Exhibit A states "YES" in the "Event Recording Complete" field.

REQUEST FOR ADMISSION NO. 3:  Admit that the notation "YES" in the "Event Recording Complete" field in Exhibit A means there is a complete record of SDM data for the Subject Incident.

REQUEST FOR ADMISSION NO. 4:  Admit that the notation "YES" in the "Event Recording Complete" field in Exhibit A means that data from the Subject Incident has been fully written to the SDM memory.

2

REQUEST FOR ADMISSION NO. 5: Admit that the existence of fully written SDM data for the Subject Incident means that the ignition switch was in the "run" position at the time of the Subject Incident.

REQUEST FOR ADMISSION NO. 6: Admit that the existence of fully written SDM data for the Subject Incident means that the ignition switch did not move to the "accessory" or "off" position at the time of the Subject Incident.

REQUEST FOR ADMISSION NO. 7: Admit that You have identified no evidence that the ignition switch in the Subject Vehicle was not in the "run" position at the time of the Subject Incident.

REQUEST FOR ADMISSION NO. 8: Admit that the ignition switch in the Subject Vehicle was in the "run" position at the time of the Subject Incident.

REQUEST FOR ADMISSION NO. 9: Admit that the ignition switch in the Subject Vehicle was in the "run" position throughout the Subject Incident.

DATED: May ___, 2015                    Respectfully submitted,

_____
Robert D. Ingram (Ga. Bar No. 383405)
Jeffrey A. Daxe (Ga. Bar No. 213701)
Carey E. Olson (Ga. Bar No. 843080)
Ryan M. Ingram (Ga. Bar No. 394318)
MOORE INGRAM JOHNSON & STEELE LLP
327 Roswell Street
Marietta, GA  30060
Telephone:    (770) 429-1499
Facsimile:    (770) 429-8631
Email:  ringram@mijs.com
Email:  jad@mijs.com
Email:  colson@mijs.com
Email:  rmingram@mijs.com

## CERTIFICATE OF SERVICE

I certify that on this ⸻ day of May 2015, a true and correct copy of DEFENDANT

GENERAL MOTORS LLC'S FIRST INTERROGATORIES TO PLAINTIFFS was served upon

Counsel of record by U.S. Postal Service First Class Mail, postage prepaid, as follows:

Lance A. Cooper
THE COOPER FIRM
531 Roseland Street, Suite 200
Marietta, GA 30060

*Attorney for Plaintiffs*

By: _____
Jeffrey A. Daxe

 **BOSCH**   **CRASH DATA RETRIEVAL**

IMPORTANT NOTICE: Robert Bosch LLC and the manufacturers whose vehicles are accessible using the CDR System urge end users to use the latest production release of the Crash Data Retrieval system software when viewing, printing or exporting any retrieved data from within the CDR program. Using the latest version of the CDR software is the best way to ensure that retrieved data has been translated using the most current information provided by the manufacturers of the vehicles supported by this product.

## CDR File Information

| User Entered VIN | 1G6DP567X50103015 |
|---|---|
| User | RYAN JAHR ESIS/GM |
| Case Number | 783828 |
| EDR Data Imaging Date | 07/21/2014 |
| Crash Date | 06/06/2014 |
| Filename | 1G6DP567X50103015_ACM.CDRPATE.CDRX |
| Saved on | Monday, July 21 2014 at 11:54:31 |
| Collected with CDR version | Crash Data Retrieval Tool 12.3 |
| Reported with CDR version | Crash Data Retrieval Tool 12.3 |
| EDR Device Type | Airbag Control Module |
| Event(s) recovered | Non-Deployment |

## Comments

CONNECTION: SDM FUSE SLOT.

MILEAGE: UNKNOWN

LOCATION: ATS MARIETTA GA.

PRESENT: DAVE PAUL ATS ENGINEER.

## Data Limitations

**Recorded Crash Events:**
There are two types of Recorded Crash Events. The first is the Non-Deployment Event. A Non-Deployment Event records data but does not deploy the air bag(s). It contains Pre-Crash and Crash data. The SDM can store up to one Non-Deployment Event. This event can be overwritten by an event that has a greater SDM recorded vehicle longitudinal velocity change. This event will be cleared by the SDM, after approximately 250 ignition cycles. This event can be overwritten by a second Deployment Event, referred to as a Deployment Level Event, if the Non-Deployment Event is not locked. The data in the Non-Deployment Event file will be locked, if the Non-Deployment Event occurred within five seconds before a Deployment Event. A locked Non Deployment Event cannot be overwritten or cleared by the SDM.
The second type of SDM recorded crash event is the Deployment Event. It also contains Pre-Crash and Crash data. The SDM can store up to two different Deployment Events, if they occur within five seconds of one another. If multiple Non-Deployment Events occur within five seconds prior to a Deployment Event, then the most severe Non-Deployment Event will be recorded and locked. If multiple Non-Deployment Events precede a Deployment Event, and occur within five seconds of each other (but not necessarily all within five seconds of the Deployment Event), then the most severe of the Non-Deployment Events (which may have occurred more than five seconds prior to the Deployment Event) will be recorded and locked. If a Deployment Level Event occurs within five seconds after the Deployment Event, the Deployment Level Event will overwrite any non-locked Non-Deployment Event. If multiple Non-Deployment Events occur within five seconds prior to a Deployment Event, and one or more of those events was a Pretensioner Deployment Event, then the most recent Pretensioner Deployment Event will be recorded and locked. Deployment Events cannot be overwritten or cleared by the SDM. Once the SDM has deployed an air bag, the SDM must be replaced.

**Data:**
-SDM Recorded Vehicle Longitudinal Velocity Change reflects the change in longitudinal velocity that the sensing system experienced during the recorded portion of the event. SDM Recorded Vehicle Longitudinal Velocity Change is the change in velocity during the recording time and is not the speed the vehicle was traveling before the event, and is also not the Barrier Equivalent Velocity. For Deployment Events, the SDM will record 100 milliseconds of data after Deployment criteria is met and up to 50 milliseconds before Deployment criteria is met. For Non-Deployment Events, the SDM can record up to the first 150 milliseconds of data after algorithm enable. Velocity Change data is displayed in SAE sign convention.
-Event Recording Complete will indicate if data from the recorded event has been fully written to the SDM memory or if it has been interrupted and not fully written.
-SDM Recorded Vehicle Speed accuracy can be affected by various factors, including but not limited to the following:
     -Significant changes in the tire's rolling radius
     -Final drive axle ratio changes
     -Wheel lockup and wheel slip
-Brake Switch Circuit Status indicates the open/closed state of the brake switch circuit.
-Pre-Crash data is recorded asynchronously. The 1.0 second Pre-crash data value (most recent recorded data point) is the

 **BOSCH**

 **CDR** CRASH DATA RETRIEVAL

data point last sampled before AE. That is to say, the last data point may have been captured just before AE but no more than 1.0 second before AE. All subsequent Pre-crash data values are referenced from this data point.

-Pre-Crash Electronic Data Validity Check Status indicates "Data Invalid" if:

    -The SDM receives a message with an "invalid" flag from the module sending the pre-crash data

    -No data is received from the module sending the pre-crash data

    -No module present to send the pre-crash data

-Engine Speed is reported at two times the actual value in the following vehicles, if the vehicle is equipped with a 6.6L Duramax diesel engine (RPO LB7, LBZ, LLY, or LMM):

    -2001-2006 Chevrolet Silverado

    -2007 Chevrolet Silverado Classic

    -2001-2006 GMC Sierra

    -2007 GMC Sierra Classic

    -2006-2007 Chevrolet Express

    -2006-2007 GMC Savana

    -2003-2009 Chevrolet Kodiak

    -2003-2009 GMC Topkick

-Driver's and Passenger's Belt Switch Circuit Status indicates the status of the seat belt switch circuit. If the vehicle's electrical system is compromised during a crash, the state of the Driver's Belt Switch Circuit may be reported other than the actual state.

-The Time between Non-Deployment to Deployment Events is displayed in seconds. If the time between the two events is greater than 25.4 seconds, "N/A" is displayed in place of the time.

-If power to the SDM is lost during a crash event, all or part of the crash record may not be recorded.

-Multiple Events will indicate whether one or more associated events preceded the recorded event.

-Multiple Events Not Recorded can be used in the following scenarios:

    -If a single event is recorded, this parameter will indicate whether one or more associated events prior to the recorded event was not recorded due to insufficient record space (because there were more events than there were available event records).

    -If two associated events are recorded, this parameter for the first event will indicate whether one or more associated events prior to the first event was not recorded due to insufficient record space.

    -If two associated events are recorded, this parameter for the second event will indicate whether one or more associated events between the first and second events was not recorded due to insufficient record space.

-All data should be examined in conjunction with other available physical evidence from the vehicle and scene.

**Data Source:**

All SDM recorded data is measured, calculated, and stored internally, except for the following:

-Vehicle Speed, Engine Speed, and Percent Throttle data are transmitted by the Powertrain Control Module (PCM), via the vehicle's communication network, to the SDM.

-Brake Switch Circuit Status data is transmitted by either the ABS module or the PCM, via the vehicle's communication network, to the SDM.

-The Belt Switch Circuit is wired directly to the SDM.

**Hexadecimal Data:**

Data that the vehicle manufacturer has specified for data retrieval is shown in the hexadecimal data section of the CDR report. The hexadecimal data section of the CDR report may contain data that is not translated by the CDR program. The control module contains additional data that is not retrievable by the CDR tool.

01027_SDMGF_r006

 **BOSCH** **CDR** CRASH DATA RETRIEVAL

## System Status At Non-Deployment

| | |
|---|---|
| SIR Warning Lamp Status | OFF |
| Driver's Belt Switch Circuit Status | BUCKLED |
| Passenger's Belt Switch Circuit Status | UNBUCKLED |
| Ignition Cycles At Non-Deployment | 16399 |
| Ignition Cycles At Investigation | 16402 |
| Maximum SDM Recorded Velocity Change (MPH) | -19.90 |
| Algorithm Enable to Maximum SDM Recorded Velocity Change (msec) | 207.5 |
| Crash Record Locked | No |
| Event Recording Complete | Yes |
| Multiple Events | No |
| Multiple Events Not Recorded | No |

| Seconds Before AE | Vehicle Speed (MPH) | Engine Speed (RPM) | Percent Throttle |
|---|---|---|---|
| -5 | 62 | 2176 | 20 |
| -4 | 63 | 2176 | 20 |
| -3 | 57 | 1728 | 0 |
| -2 | 40 | 1344 | 0 |
| -1 | 1 | 640 | 0 |

| Seconds Before AE | Brake Switch Circuit State |
|---|---|
| -8 | OFF |
| -7 | OFF |
| -6 | OFF |
| -5 | OFF |
| -4 | OFF |
| -3 | ON |
| -2 | ON |
| -1 | ON |

**BOSCH**

**CDR** CRASH DATA RETRIEVAL



**1G6DP567X50103015 Non-Deployment Data**

- SDM Recorded Velocity Change (MPH)

| Time (milliseconds) | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 | 110 | 120 | 130 | 140 | 150 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Recorded Velocity Change (MPH) | 0.00 | -0.93 | -2.79 | -3.10 | -4.65 | -7.44 | -8.37 | -10.23 | -10.85 | -12.09 | -13.33 | -14.88 | -15.81 | -16.43 | -17.05 |

BOSCH

CDR CRASH DATA RETRIEVAL

## Hexadecimal Data

Data that the vehicle manufacturer has specified for data retrieval is shown in the hexadecimal data section of the CDR report. The hexadecimal data section of the CDR report may contain data that is not translated by the CDR program.  The control module contains additional data that is not retrievable by the CDR system.

```
$01   F0 3C E3 42 B3 7D
$02   CA 00 0F 0F D1 00
$03   41 53 34 31 33 35
$04   4B 34 4B 4A 38 32
$05   39 52 50 35 36 35
$06   10 37 65 27 00 00
$07   32 31 33 38 00 00
$08   41 44 43 08 58 41
$09   13 41 30 31 45 58
$0A   00 00 00 00 00 00
$0B   00 00 00 00 00 00
$0C   41 55 43 07 58 41
$0D   20 41 30 35 33 59
$0E   41 55 43 07 58 41
$0F   18 41 30 31 4D 30
$10   F7 FD FC 00 00 00
$11   85 84 85 7D 7C 7D
$12   A0 00 00 50 51 00
$13   FF 02 00 00 00 00
$14   1D 00 05 05 64 00
$15   36 FA 44 FA FA FA
$16   FA 47 FA 44 FA FA
$17   FA FA 00 00 00 00
$18   03 FF 51 EC 05 00
$19   09 01 5A 00 00 64
$1A   00 00 00 00 00 00
$1B   00 00 00 00 00 00
$1C   00 00 00 00 00 00
$1D   00 00 00 00 00 00
$1F   FF 00 00 00 00 00
$20   12 FD 00 00 FF FF
$21   FF FF FF FF FF FF
$22   FF FF FF FF FF FF
$23   FF FF FF FF FF FF
$24   00 04 02 64 53 7C
$25   44 00 00 03 FF FF
$26   00 03 09 0A 0F 18
$27   1B 21 23 27 2B 30
$28   33 35 37 00 F7 FE
$29   80 A5 FF FF FF FF
$2A   FF FF FF FF FF FF
$2B   FF FF FF FF FF FF
$2C   FF FF FF FF FF FF
$2D   FF FF 00 00 00 00
$30   FF FF FF FF FF FF
$31   FF FF FF FF FF FF
$32   FF FF FF FF FF FF
$33   FF FF FF FF FF FF
$34   FF FF FF FF FF FF
$35   FF FF FF FF FF FF
$36   FF FF FF FF FF FF
$37   FF FF FF FF FF FF
$38   FF FF FF FF FF FF
$39   FF FF FF FF FF FF
$3A   FF FF FF FF FF FF
$3B   FF FF FF FF FF FF
```

**BOSCH**

**CDR** CRASH DATA RETRIEVAL

```
$3C   FF  FF  FF  FF  FF  FF
$3D   FF  FF  00  00  00  00
$40   02  18  02  41  5C  00
$41   F8  00  63  63  00  00
$42   00  00  00  0B  0A  15
$43   1B  00  7D  80  00  00
$44   02  41  5C  66  63  00
$45   E0  00  00  00  00  32
$46   32  00  0A  15  1B  22
$47   22  00  7D  80  00  00
$48   FF  FF  FF  FF  FF  FF
$49   FF  FF  FF  FF  FF  FF
$4A   FF  FF  FF  FF  FF  FF
$4B   FF  FF  FF  FF  00  00
$4C   FF  FF  FF  FF  FF  FF
$4D   FF  FF  FF  FF  FF  FF
$4E   FF  FF  FF  FF  FF  FF
$4F   FF  FF  FF  FF  00  00
$50   FF  FF  FF  FF  FF  FF
$51   FF  FF  FF  FF  FF  FF
$52   FF  FF  FF  FF  FF  FF
$53   FF  FF  FF  FF  FF  FF
$54   FF  FF  FF  FF  FF  FF
```

## Disclaimer of Liability

The users of the CDR product and reviewers of the CDR reports and exported data shall ensure that data and information supplied is applicable to the vehicle, vehicle's system(s) and the vehicle ECU. Robert Bosch LLC and all its directors, officers, employees and members shall not be liable for damages arising out of or related to incorrect, incomplete or misinterpreted software and/or data. Robert Bosch LLC expressly excludes all liability for incidental, consequential, special or punitive damages arising from or related to the CDR data, CDR software or use thereof.



## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing **Brief in Support of General Motors LLC's Second Motion for Leave to Serve Case-Specific Party Discovery** was served by email and by depositing in the U.S. mail a copy of same in a properly addressed envelope with adequate postage thereon to:

**THE COOPER FIRM**
Lance A. Cooper (Ga. Bar No. 186100)
531 Roseland Street, Suite 200
Marietta, GA 30060
Telephone: (770) 427-5588
E-mail: lance@thecooperfirm.com

**PRESTON & MALCOM**
R. Michael Malcom (Ga. Bar No. 467025)
Paul L. Rosenthal (Ga. Bar No. 614904)
110 Court Street
P. O. Box 984
Monroe, GA 30655
Telephone: (770) 267-2503
E-mail: rmm@prestonmalcom.com
E-mail: plr@prestonmal.com

*Attorneys for Plaintiffs*

**SHARON WARE & ASSOCIATES**
W. Dale Ellis, Jr.
2400 Century Parkway, N.E., Suite 200
Atlanta, GA 30359
Telephone: (404) 728-5400
E-mail: dale.ellis@statefarm.com

*Attorneys for Victoria Nicole Jones*

This _15_ day of May, 2015.

Jeffrey A. Daxe

326 Roswell St.
Marietta, GA 30060
Tel: (770) 429-1499
Fax: (770) 429-8631
jad@mijs.com

# Exhibit 31

# Exhibit A

Case 1:14-md-02543-JMF Document 575-33 Filed 05/22/15 Page 3 of 20

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Abney, et al. v. General Motors LLC, No. 1:14-cv-05810-JMF (S.D.N.Y.) [*]

Ackerman v. General Motors, No. 3:14-cv-00921-DRH-DGW (S.D. Ill.) [*]

Ma. Adams, et al. v. General Motors LLC, No. 1:15-cv-00186-JMF (S.D.N.Y.) [*]

Me. Adams v. General Motors LLC, No. 1:15-cv-02339-JMF (S.D.N.Y.) [*]

Alers v. General Motors LLC, No. 2:14-cv-07258-JVS-AN (C.D. Cal.)

Andrews v. General Motors LLC, No. 5:14-cv-01239-ODW-AJW (C.D. Cal.)

Arnold, et al. v. General Motors LLC, et al., No. 1:14-cv-02882-RMD (N.D. Ill.)

Ashbridge v. General Motors LLC, et al., No. 2:14-cv-00463-RCM (W.D. Pa.)

Ashworth, et al. v. General Motors LLC, No. 2:14-cv-00607-JHE (N.D. Ala.)

Bachelder, et al. v. General Motors LLC, No. 1:15-cv-00155-JMF (S.D.N.Y.) [*]

Bacon v. General Motors LLC, No. 1:15-cv-00918-JMF (S.D.N.Y.) [*]

Balls, et al. v. General Motors LLC, No. 2:14-cv-02475-JVS-AN (C.D. Cal.)

Barros v. General Motors LLC, et al., No. 2:15-cv-00101-SPC-DNF (M.D. Fla.) [*]

Bedford Auto v. General Motors LLC, No. 2:14-cv-11544-GCS-DRG (E.D. Mich.)

Belt v. General Motors LLC, et al, No. 1:14-cv-26520 (S.D. W.Va.)

Bender v. General Motors LLC, No. 1:14-cv-00134-TLS-RBC (N.D. Ind.)

Bendermon, et al. v. General Motors LLC, No. 1:15-cv-01354-JMF (S.D.N.Y.) [*]

Benton v. General Motors LLC, No. 5:14-cv-00590-JVS-AN (C.D. Cal.)

Bermudez, et al. v. General Motors LLC, No. 4:15-cv-00634 (S.D. Tex.) [*]

Bersano, et al. v. General Motors LLC, No. 1:15-cv-00550-JMF (S.D.N.Y.) [*]

Betancourt Vega v. General Motors LLC, et al., No. 3:15-cv-01245-DRD (D.P.R.) [*]

Biggs v. General Motors LLC, et al., No. 2:14-cv-11912-PDB-MKM (E.D. Mich.)

Bledsoe, et al. v. General Motors LLC, No. 1:14-cv-07631-JMF (S.D.N.Y.) [*]

Bloom v. General Motors LLC, No. 3:14-cv-01903-ARC (M.D. Pa.)

---

[*] Action asserts personal injury or wrongful death claims.

1

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Bolden, et al. v. General Motors LLC, No. 1:15-cv-01316-JMF (S.D.N.Y.) [*]

Boyd, et al. v. General Motors LLC, No. 4:14-cv-01205-HEA (E.D. Mo.) [*]

Boynes v. General Motors LLC, No. 1:15-cv-01857-JMF (S.D.N.Y.) [*]

Brands, et al. v. General Motors LLC, No. 2:15-cv-01931-R-PLA (C.D. Cal.) [*]

Brandt, et al. v. General Motors LLC, No. 2:14-cv-00079 (S.D. Tex.)

Brown, et al. v. General Motors LLC, No. 2:14-cv-02828-JVS-AN (C.D. Cal.)

Burton v. General Motors LLC, et al., No. 5:14-cv-00396-R (W.D. Okla.)

Camlan, Inc., et al. v. General Motors LLC, No. 8:14-cv-00535-JVS-AN (C.D. Cal.)

Carroll v. General Motors LLC, et al., No. 1:14-cv-01869-TSC (D.D.C.) [*]

Carter v. General Motors LLC, No. 1:15-cv-00738-JMF (S.D.N.Y.) [*]

Chaplin v. General Motors Corp., et al, No. 2:14-cv-03366-MDL (D.S.C.) [*]

Childre v. General Motors LLC, et al., No. 2:14-cv-01320-KDE-MBN (E.D. La.)

Cibula v. General Motors LLC, et al., No. 1:15-cv-02935-JMF (S.D.N.Y.) [*]

Coleman v. General Motors LLC, No. 3:14-cv-00220-BAJ-SCR (M.D. La.)

Corbett, et al. v. General Motors LLC, No. 7:14-cv-00139-D (E.D.N.C.)

Cox v. General Motors LLC, et al., No. 2:14-cv-02608-JVS-AN (C.D. Cal.)

Dandridge v. General Motors LLC, et al., No. 2:15-cv-02059-SHL-TMP (W.D. Tenn.) [*]

Darby v. General Motors LLC, et al., No. 5:14-cv-00676-JVS-AN (C.D. Cal.)

Davidson v. General Motors LLC, et al., No. 2:15-cv-00029-KS-MTP (S.D. Miss.) [*]

Davis, et al. v. General Motors LLC, et al., 2:15-cv-01282-MLCF-MBN (E.D. La.) [*]

Dawson v. General Motors LLC, No. 1:14-cv-01459-DCN (N.D. Ohio) [*]

Deighan v. General Motors LLC, et al., No. 2:14-cv-00458-RCM (W.D. Pa.)

DeLuco v. General Motors LLC, No. 1:14-cv-02713-JMF (S.D.N.Y.)

DePalma, et al. v. General Motors LLC, et al., No. 1:14-cv-00681-YK (M.D. Pa.)

DeSutter, et al. v. General Motors LLC, No. 9:14-cv-80497-DMM (S.D. Fla.)

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Detton, et al. v. General Motors LLC, et al., No. 3:14-cv-00500-MJR-PMF (S.D. Ill.)

Deushane v. General Motors LLC, et al., No. 8:14-cv-00476-JVS-AN (C.D. Cal.)

Dinco, et al. v. General Motors LLC, No. 2:14-cv-03638-JVS-AN (C.D. Cal.)

Ditcharo v. General Motors LLC, et al., No. 2:15-cv-00271-ILRL-DEK (E.D. La.)

Doerfler-Bashucky v. General Motors LLC, et al., No. 5:15-cv-00511-GTS-DEP (N.D.N.Y.) [*]

Doup, et al. v. General Motors LLC, No. 1:15-cv-00145 (E.D. Tex.) [*]

Dowling v. General Motors LLC, et al. No. 1:15-cv-00445-KLM (D. Colo.) [*]

Duarte v. General Motors LLC, et al., No. 1:14-cv-21815-JAL (S.D. Fla.)

Duncan v. General Motors LLC, No. 4:14-cv-00597-ODS (W.D. Mo.) [*]

Dunn v. General Motors LLC, No. 1:14-cv-10006-JMF (S.D.N.Y.) [*]

C. Edwards, et al. v. General Motors LLC, et al., No. 1:14-cv-21949-MGC (S.D. Fla.)

P. Edwards, et al. v. General Motors LLC, No. 1:14-cv-06924-JMF (S.D.N.Y.) [*]

C. Elliott v. General Motors LLC, et al., No. 1:14-cv-11982-WGY (D. Mass.)

L. Elliott, et al. v. General Motors LLC, No. 1:14-cv-00691-KBJ (D.D.C.)

Emerson, et al. v. General Motors LLC, et al., No. 1:14-cv-21713-UU (S.D. Fla.)

Espineira v. General Motors LLC, et. al., No. 1:14-cv-21417-FAM (S.D. Fla.)

Ewing v. General Motors LLC, No. 1:14-cv-09965-JMF (S.D.N.Y.) [*]

Farrow v. General Motors LLC, No. 1:14-cv-08248 (S.D.N.Y.) [*]

Favro v. General Motors LLC, No. 8:14-cv-00690-JVS-AN (C.D. Cal.)

Fleck, et al., v. General Motors LLC, No. 1:14-cv-08176-JMF (S.D.N.Y.) [*]

Forbes v. General Motors LLC, No. 2:14-cv-02018-GP (E.D. Pa.)

Forthun v. General Motors LLC, et al., No. 3:15-cv-00623-MMA-WVG (S.D. Cal.)

Foster v. General Motors LLC, et al., No. 1:14-cv-00844-SO (N.D. Ohio)

Frank v. General Motors LLC, No. 1:14-cv-21652-MGC (S.D. Fla.)

Fugate v. General Motors LLC, No. 7:14-cv-00071-ART (E.D. Ky.)

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Gambill, et al. v. General Motors LLC, No. 7:15-cv-00017-ART-EBA (E.D.Ky.) [*]

Gebremariam v. General Motors LLC, No. 8:14-cv-00627-JVS-AN (C.D. Cal.)

Green, et al. v. General Motors LLC, et al., No. 1:14-cv-00107 (M.D. Tenn.) [*]

Greenroad v. General Motors LLC, No. 3:15-cv-00028 (S.D. Tex.) [*]

Groman v. General Motors LLC, No. 1:14-cv-02458-JMF (S.D.N.Y.)

Grumet, et al. v. General Motors LLC, No. 3:14-cv-00713-JM-BGS (S.D. Cal.)

Hamilton, et al. v. General Motors LLC, No. 1:14-cv-02219-PAB (D. Colo.) [*]

Hammatt, et al. v. General Motors Co., et al., No. 5:15-cv-00184-VAP-DTB (C.D. Cal.) [*]

Harris, et al. v. General Motors LLC et al., No. 1:14-cv-21919-JAL (S.D. Fla.)

Hayes, et al. v. General Motors LLC, No. 1:14-cv-10023-JMF (S.D.N.Y.) [*]

Henry, et al. v. General Motors LLC, et al., No. 4:14-cv-00218-DDB (E.D. Tex.)

Heuler v. General Motors LLC, No. 8:14-cv-00492-JVS-AN (C.D. Cal.)

Higginbotham v. General Motors LLC, et al., No. 4:14-cv-00306-JM (E.D. Ark.)

Hofling v. General Motors LLC, No. 8:15-cv-00123-JFB-TDT (D. Neb.) [*]

Holliday, et al. v. General Motors LLC, et al., No. 1:14-cv-00271-ZJH (E.D. Tex.)

Hoskins v. General Motors LLC, et al., No. 5:14-cv-00460-JMH (E.D. Ky.) [*]

Hurst v. General Motors Co., No. 2:14-cv-02619-JVS-AN (C.D. Cal.)

Ibanez, et al. v. General Motors LLC, No. 2:14-cv-05238-JVS-AN (C.D. Cal.)

Irvin v. General Motors LLC, et al., No. 1:14-cv-00090-JAR (E.D. Mo.) [*]

Jackson, et al. v. General Motors LLC, No. 1:15-cv-00713-JMF (S.D.N.Y.) [*]

Jawad v. General Motors LLC, No. 4:14-cv-11151-MAG-DRG (E.D. Mich.)

Johnson v. General Motors LLC, No. 3:14-cv-477 HTW-LRA (S.D. Miss.)

D. Jones v. General Motors LLC, No. 1:14-cv-05850-JMF (S.D.N.Y.)

P. Jones v. General Motors LLC, No. 4:14-cv-11197-MAG-DRG (E.D. Mich.)

Kandziora v. General Motors LLC, et al., No. 2:14-cv-00801-WED (E.D. Wis.)

Case 1:14-md-02543-JMF Document 975-33 Filed 05/22/15 Page 4 of 20

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Kelley, et al. v. General Motors Co., et al., No. 8:14-cv-00465-JVS-AN (C.D. Cal.)

Kessenger v. General Motors LLC, No. 1:15-cv-00977-JMF (S.D.N.Y.) [*]

Kirchinger v. General Motors LLC, No. 1:15-cv-02588-JMF (S.D.N.Y.) [*]

Klingensmith, et al. v. General Motors LLC, No. 1:14-cv-09110 (S.D.N.Y.) [*]

Kluessendorf v. General Motors LLC, et al., No. 1:14-cv-05035 (S.D.N.Y.)

Knetzke v. General Motors LLC, et al., No. 1:14-cv-21673-JAL (S.D. Fla.)

Kosovec v. General Motors LLC, et al., No. 3:14-cv-00354-RS-EMT (N.D. Fla.)

Krause v. General Motors LLC, No. 2:14-cv-13412-DPH-DRG (E.D. Mich.)

Lambert v. General Motors LLC, No. 1:15-cv-02591-JMF (S.D.N.Y.) [*]

Lambeth v. General Motors LLC, No. 1:14-cv-00546-WO-LPA (M.D.N.C.) [*]

Lannon, et al. v. General Motors LLC, et al., No. 1:14-cv-21933-KMM (S.D. Fla.)

LaReine, et al. v. General Motors LLC, et al., No. 2:14-cv-03112-JVS-AN (C.D. Cal.)

Letterio v. General Motors LLC, et al., No. 2:14-cv-00488-RCM (W.D. Pa.)

Leval v. General Motors LLC, No. 2:14-cv-00901-KDE-DEK (E.D. La.)

Levine v. General Motors LLC, No. 1:14-cv-21752-JAL (S.D. Fla.)

Lewis v. General Motors LLC, et al., No. 1:14-cv-00573-WTL-DKL (S.D. Ind.)

Lowe v. General Motors LLC, No. 2:14-cv-00330-RLJ (E.D. Tenn.) [*]

Lyon-Schmidt v. General Motors LLC, et al., No. 4:14-cv-01102-FJG (W.D. Mo.) [*]

Maciel, et al. v. General Motors LLC, No. 4:14-cv-01339-JSW (N.D. Cal.)

Malaga et al. v. General Motors LLC, No. 8:14-cv-00533-JVS-AN (C.D. Cal.)

Mangiapane v. General Motors LLC, 1:15-cv-01081-JMF (S.D.N.Y.) [*]

Marcum v. General Motors LLC, et al., No. 5:14-cv-00353-KKC (E.D. Ky.) [*]

Maresca, et al. v. General Motors LLC, No. 4:15-cv-01057 (S.D. Tex.) [*]

Markle v. General Motors LLC, et al., No. 1:14-cv-21788-FAM (S.D. Fla.)

Matteo, et al. v. General Motors LLC, No. 1:14-cv-00304-CB-LPL (W.D. Pa.)

Case 1:14-md-02543-JMF  Document 578-88  Filed 05/22/15  Page 6 of 20

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Mazzocchi v. General Motors LLC, et al., No. 7:14-cv-02714-NSR (S.D.N.Y.)

McCarthy v. General Motors LLC, et al., No. 2:14-cv-00895-MLCF-KWR (E.D. La.)

McConnell v. General Motors LLC, No. 8:14-cv-00424-JVS-AN (C.D. Cal.)

McCormick, et al. v. General Motors LLC, No. 1:14-cv-00483 (E.D. Tex.) *

Morgan, et al. v. General Motors LLC, No. 1:15-cv-02844-JMF (S.D.N.Y.) *

Mullins v. General Motors LLC, No. 1:14-cv-26740 (S.D. W.Va.)

Nava v. General Motors LLC, et al., No. 8:14-cv-00755-JVS-AN (C.D. Cal.)

Nettleton Auto Sales, Inc. v. General Motors LLC, et al., No. 4:14-cv-00318-DPM (E.D. Ark.)

O'Neill, et al. v. General Motors LLC, No. 4:14-cv-01611-AGF (E.D. Mo.) *

Patterson v. General Motors LLC, No. 1:15-cv-02089-JMF (S.D.N.Y.) *

Phaneuf, et al. v. General Motors LLC, No. 1:14-cv-03298-JMF (S.D.N.Y.)

Phillip, et al. v. General Motors LLC, No. 3:14-cv-08053-DGC (D. Ariz.)

Phillips-Powledge v. General Motors LLC, No. 3:14-cv-00192 (S.D. Tex.) *

Pittman v. General Motors LLC, No. 1:15-cv-03330-JMF (S.D.N.Y.) *

Ponce v. General Motors LLC, No. 2:14-cv-02161-JVS-AN (C.D. Cal.)

A. Powell v. General Motors LLC, No. 1:14-cv-00963-DAP (N.D. Ohio)

G. Powell v. General Motors LLC, No. 5:14-cv-03488-SMH-MLH (W.D. La.)

Precht v. General Motors LLC, No. 1:14-cv-20971-PAS (S.D. Fla.)

Proctor v. General Motors LLC, No. 8:14-cv-02403 (M.D. Fla.) *

Ramirez, et al. v. General Motors LLC, et al., No. 2:14-cv-02344-JVS-AN (C.D. Cal.)

Ratzlaff, et al. v. General Motors LLC, No. 2:14-cv-02424-JVS-AN (C.D. Cal.)

Roach v. General Motors LLC, et al., No. 3:14-cv-00443-DRH-DGW (S.D. Ill.)

Robinett v. General Motors LLC, et al., No. 3:14-cv-01716-HZ (D. Or.) *

Robinson, et al. v. General Motors LLC, et al., No. 2:14-cv-02510-JVS-AN (C.D. Cal.)

Rollins, et al. v. General Motors LLC, et al., No. 2:14-cv-13051-RHC-RSW (E.D. Mich.)

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

J. Ross, et al. v. General Motors LLC, et al., No. 1:14-cv-02148-KAM-JO (E.D.N.Y.)

W. Ross v. General Motors LLC, et al., No. 2:14-cv-03670-ADS-ARL (E.D.N.Y.)

Roush, et al. v. General Motors LLC, No. 2:14-cv-04095-NKL (W.D. Mo.)

Ruff, et al. v. General Motors LLC, et al., No. 3:14-cv-02375-PGS-DEA (D.N.J.)

Rukeyser v. General Motors LLC, No. 1:14-cv-05715-JMF (S.D.N.Y.)

Saclo et al. v. General Motors LLC, et al., No. 8:14-cv-00604-JVS-AN (C.D. Cal.)

Salazar v. General Motors LLC, et al., No. 5:14-cv-00362-FB (W.D. Tex.)

Salerno v. General Motors LLC, et al., No. 2:14-cv-02132-JD (E.D. Pa.)

Santiago v. General Motors LLC, No. 1:14-cv-21147-KMW (S.D. Fla.)

Satele, et al. v. General Motors LLC, No. 8:14-cv-00485-JVS-AN (C.D. Cal.)

Sauer, et al. v. General Motors, et al., No. 2:14-cv-04080-SDW-MCA (D.N.J.)

Scott v. General Motors Company, et al., No. 8:15-cv-00307-JDW-AEP (M.D. Fla.) [*]

Seiderer, et al. v. General Motors LLC, No. 1:14-cv-09431 (S.D.N.Y.) [*]

Sesay, et al. v. General Motors LLC, et al., No.1:14-cv-06018-JMF (S.D.N.Y.)

Shollenberger v. General Motors LLC, No. 1:14-cv-00582-YK (M.D. Pa.)

Shotwell v. General Motors LLC, No. 2:14-cv-00094-KS-MTP (S.D. Miss.) [*]

Silvas v. General Motors LLC, No. 2:14-cv-00089 (S.D. Tex.)

Singleton v. Unidentified Party, et al., No. 2:15-cv-00828-MLCF-JCW (E.D. La.) [*]

Skillman v. General Motors LLC, et al., No. 1:14-cv-03326-UA (S.D.N.Y.)

A. Smith v. General Motors LLC, et al., No. 2:14-cv-02761-SSV-DEK (E.D. La.) [*]

D. Smith v. General Motors LLC, No. 1:15-cv-02493-JMF (S.D.N.Y.) [*]

M. Smith v. General Motors LLC, No. 1:14-cv-03521-DDD-JDK (W.D. La.) [*]

V. Smith v. General Motors LLC, et al., No. 3:14-cv-00120-SA-SAA (N.D. Miss.)

Spangler v. General Motors LLC, No. 8:14-cv-00816-PSG-RNB (C.D. Cal.)

Stafford v. General Motors LLC, No. 3:14-cv-01702-THE (N.D. Cal.)

**Exhibit A: Cases Whose Transfer To MDL 2543 Has Been Finalized**

Stafford-Chapman v. General Motors LLC, et al., No. 1:14-cv-00474-MRB (S.D. Ohio)

Stevenson v. General Motors LLC, No. 1:14-cv-05137-UA (S.D.N.Y.)

Stidham v. Stidham, et al., No. 6:14-cv-00226-GFVT (E.D. Ky.) [*]

Sumners, et al. v. General Motors LLC, et al., No. 1:14-cv-00070 (M.D. Tenn.) [*]

Symonds-Williams v. General Motors LLC, No. 1:15-cv-03215-JMF (S.D.N.Y.) [*]

Taylor v. General Motors Company, No. 9:14-cv-80618-DMM (S.D. Fla.)

Tucker, et al. v. General Motors LLC, No. 1:15-cv-03641-JMF (S.D.N.Y.) [*]

Turpyn, et al. v. General Motors LLC, et al., No. 1:14-cv-5328-JMF (S.D.N.Y.)

Unseul v. General Motors LLC, et al., No. 2:15-cv-00102-JES-CM (M.D. Fla.) [*]

Vest v. General Motors LLC, et al., No. 1:14-cv-24995-DAF (S.D. W.Va.) [*]

Villa, et al. v. General Motors LLC, et al., No. 2:14-cv-02548-JCJ (E.D. Pa.)

Ward v. General Motors LLC, No. 1:14-cv-08317 (S.D.N.Y.) [*]

Weaver v. General Motors Company, et al., No. 1:15-cv-00479-NYW (D. Colo.) [*]

J. Williams, et al. v. General Motors LLC, No. 5:15-cv-01070-EEF-MLH (W.D. La.) [*]

W. Williams v. General Motors LLC, et al. No. 2:14-cv-02069-JCZ-KWR (E.D. La.)

M. Wilson, et al. v. General Motors LLC, 1:14-cv-02898-TWT (N.D. Ga.) [*]

Witherspoon v. General Motors LLC, et al., No. 4:14-cv-00425-HFS (W.D. Mo.)

Wood v. General Motors LLC, et al., No. 2:15-cv-00697-SJO-AS (C.D. Cal.) [*]

Woodward v. General Motors LLC, et al., No. 1:14-cv-01877 (N.D. Ill.)

Wren v. General Motors LLC, No. 3:15-cv-00023-JHM-DW (W.D. Ky.) [*]

Yagman v. General Motors Company, et al., No. 2:14-cv-04696-MWF-AGR (C.D. Cal.)

Yingling, et al. v. General Motors LLC, No. 3:14-cv-00116-KRG (W.D. Pa.) *

Yohe v. General Motors LLC, No. 1:14-cv-09864-JMF (S.D.N.Y.) [*]

Zegarra v. General Motors LLC, No. 1:15-cv-00266-WTL-TAB (S.D. Ind.) [*]

Zehner, et al. v. General Motors Co. LLC, et al., No. 3:15-cv-00193-NJR-PMF (S.D. Ill.) [*]

# Exhibit B

Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

**(8)** A list (updated May 21, 2015) of all related cases pending in state or federal court, together with their current status, including (a) discovery taken to date and pending motions, to the extent known; and (b) whether the cases have been stayed pending a decision on New GM's Motion to Enforce filed in the United States Bankruptcy Court for the Southern District of New York on April 21, 2014.

## I. Related Ignition Switch Civil Actions

- *21st Century Indem. Ins. Co. v. General Motors LLC*, No. 159602/2014 (New York County, N.Y.) [α][β]
  (No Judge Assigned)
  - Subrogation action by automotive insurer alleging ignition switch defect in 2007 Pontiac Solstice.
    - MDL 2543 Coordination Order entered April 9.

- *Ackerman (Dennis) v. General Motors Corp., et al.*, No. MRS-L-2898-14 (Morris County, N.J.) [β]
  (Hon. Stephen J. Taylor, 973-656-4049)
  - Wrongful death action alleging ignition switch and other defects in 2006 Chevrolet Cobalt.
    - No pending motions.
    - On January 30, co-defendant served New GM with notice of corporate representative deposition scheduled for June 17, but has since indicated indefinite adjournment of deposition.

- *Austin, et al. v. General Motors LLC*, No. 2015L000026 (St. Clair County, Ill.) [β]
  (Hon. Vincent Lopinot, 618-277-7325)
  - Wrongful death and personal injury action alleging ignition switch defects in accidents involving one death and twenty-two personal injuries relating to certain vehicles that are subject to ignition switch recall campaign and to certain vehicles that are not.
    - No discovery taken to date.
    - Hearing on New GM's motion to dismiss held on April 29. Pursuant to court's order, Plaintiff filed amended complaint on May 5.

- *Bartram, et al. v. General Motors LLC, et al.*, No. 15-CI-00200 (Shelby County, Ky.) [α][β]
  (No Judge Assigned)
  - Personal injury action alleging ignition switch defect in 2007 Chevrolet Cobalt.

---

[α]    No discovery taken to date and no pending motions.
[β]    Not currently subject to a New GM Motion to Enforce the Sale Order and Injunction.

### Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *Beckwith v. General Motors Company, et al.*, No. 13CECG03298 (Fresno County, Cal.) [αβ]
  (Hon. Alan Simpson, 559-457-6320)
  - Personal injury action alleging power steering defect in 2008 Chevrolet Cobalt.
    - Stipulation dismissing ignition switch allegations entered May 4.
    - MDL 2543 Coordination Order entered January 29.

- *Berger, et al. v. General Motors LLC*, No. 9241/2014 (Kings County, N.Y.) [β]
  (No Judge Assigned)
  - Personal injury action alleging defect due to airbag non-deployment in 2005 Cadillac DeVille.  Complaint amended November 24, 2014 to include ignition switch allegation.
    - No pending motions.
    - New GM served discovery prior to amendment of complaint.  Plaintiffs' responses due May 30.

- *Bernard, et al. v. Schnittker, et al.*, No. 13-CI-00098 (Estill County, Ky.) [αβ]
  (Hon. Thomas P. Jones, 606-464-2648)
  - Wrongful death and personal injury action alleging ignition switch defect in 2007 Chevrolet Cobalt.
    - New GM intends shortly to file opposed motion for entry of MDL 2543 Coordination Order.

- *Cimaglia v. Royal Pontiac Buick GMC Inc., et al.*, No. MER-L-2890-10 (Mercer County, N.J.) [β]
  (Hon. Paul Innes, 609-571-4460)
  - Personal injury action against New GM dealership, alleging electric power steering defect in 2005 Pontiac G6.
    - No pending motions.
    - Dealer served responses on January 23 to plaintiff's discovery related to electric power steering.
    - Status conference scheduled for June 1.
    - MDL 2543 Coordination Order entered April 10.

- *Clark (Jennifer) v. General Motors LLC*, No. 6:14-cv-03413, (W.D. Mo.) [αβ]
  (Hon. David Rush, 417-865-3761)
  - Wrongful death action alleging ignition switch defect in 2005 Chevrolet Cobalt.
    - Remanded from MDL 2543 pursuant to the Court's April 1, 2015 Suggestion of Remand (14-MD-2543, Doc. No. 780).
    - Settlement hearing scheduled for May 29.  Judge Rush has requested supplemental briefing from plaintiff regarding statutory notice compliance and settlement terms.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Clark (William), et al. v. General Motors LLC, et al.*, No. 15-C-134-2, (Harrison County, W.Va.) [αβ]
  (No Judge Assigned)
  - Personal injury action alleging ignition switch defect in 2010 Chevrolet Impala.

- *Colarossi v. General Motors LLC, et al.,* No. 14-22445 (Suffolk County, N.Y.) [αβ]
  (No Judge Assigned)
  - Wrongful death action alleging ignition switch defect in 2007 Chevrolet Cobalt.

- *Cull, et al. v. General Motors LLC, et al.*, No. 10C02-1404-CT-60 (Clark County, Ind.) [β]
  (Hon. Jerry Jacobi, 812-285-6333)
  - Personal injury action alleging ignition switch defect in 2006 Chevrolet Cobalt.
    - No pending motions.
    - New GM's responses to Plaintiffs' requests for admission served September 22, 2014.
    - Protective order and MDL 2543 Coordination Order entered November 20, 2014.
    - Scheduling order entered February 18, setting trial for November 2016.

- *Danley, et al. v. General Motors LLC*, No. 4:15-cv-01354 (S.D. Tex.) [αβ]
  (Hon. David Hittner, 713-250-5511)
  - Wrongful death and personal injury action alleging ignition switch defects in accidents involving one death and twenty-eight personal injuries relating to certain vehicles that are subject to ignition switch recall campaign and to certain vehicles that are not.

- *Davis (Ernestine) v. General Motors LLC,* No. 41-CV-2014-900462.00 (Lauderdale County, Ala.) [αβ]
  (Hon. Mike Jones, 256-760-5831)
  - Personal injury action alleging airbag defect in 2009 Chevrolet Cobalt.

- *DeLeon, et al. v. General Motors LLC*, No. 2014-51871 (Harris County, Tex.) [αβ]
  (No Judge Assigned)
  - Personal injury action alleging airbag defect in 2006 Chevrolet Cobalt.
    - Plaintiffs improperly filed action directly in Texas MDL. Upon re-filing in proper venue, New GM intends to file notice of tag-along action for Texas MDL.

- *Dobbs v. General Motors LLC,* No. 49D051504PL010527 (Marion County, Ind.) [αβ]
  (Hon. Robert Altice, Jr., 317-327-3939)
  - Personal injury action alleging ignition switch defect in 2006 Chevrolet Cobalt.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Felix, et al. v. General Motors LLC*, No. 1422-CC09472 (City of St. Louis, Mo.) [β]
  (Hon. David L. Dowd (motion and discovery judge), 314-622-4372)
  - Wrongful death and personal injury action alleging ignition switch defects in accidents involving five deaths and thirty-three personal injuries relating to certain vehicles that are subject to ignition switch recall campaign and to certain vehicles that are not.
    - Plaintiffs have indicated intention to file motion for sanctions against New GM.
    - New GM served responses on November 14, 2014 to Plaintiffs' requests for production.  New GM served amended and supplemental responses on May 13.
    - Judge Dowd entered MDL 2543 Protective Order on April 21.
    - Counsel for Plaintiffs have requested time during New GM depositions scheduled in MDL 2543.

- *Fuselier v. General Motors LLC*, No. 128349-C (St. Mary Parish, La.) [αβ]
  (Hon. Vincent Borne, 337-828-4100)
  - Personal injury action alleging ignition switch defect in 2005 Chevrolet Cobalt.

- *Gable, et al. v. Walton, et al.*, No. 6737 (Lauderdale County, Tenn.) [αβ]
  (Hon. Joe Walker, 731-635-0763)
  - Personal injury action alleging ignition switch defect in 2006 Pontiac Grand Prix.
    - MDL 2543 Coordination Order entered January 15.

- *Gilbert v. General Motors LLC, et al.*, No. 140500140 (Philadelphia County, Pa.) [β]
  (Hon. Lisa Rau, 215-686-3768)
  - Personal injury action alleging ignition switch defect in 2010 Chevrolet Cobalt.
    - No discovery taken to date.
    - Case management order entered providing for June 2016 trial readiness date.
    - On May 11 Judge Rau denied New GM's unopposed motion for entry of the MDL 2543 Coordination Order.

- *Goins v. General Motors LLC, et al.*, No. 2014-CI40 (Yazoo County, Miss.) [β]
  (Hon. Jannie M. Lewis, 662-834-1452)
  - Wrongful death and personal injury action alleging ignition switch defect in 2006 Saturn Ion.
    - New GM served responses to Plaintiff's interrogatories and requests for production on November 12, 2014 and responses to Cross-Plaintiff's interrogatories and requests for production on December 4, 2014.
    - Protective order and MDL 2543 Coordination Order entered January 7.
    - Briefing complete on Plaintiff's motion for partial summary judgment against New GM.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Grant (Charon) v. General Motors LLC, et al.*, No. 2014CV02570MG (Clayton County, Ga.) [αβ]
  (Hon. Michael Garrett, 777-477-3354)
  - Personal injury action alleging power steering defect in 2004 Cadillac SRX.
    - Dealer's discovery responses served April 24.

- *Grant (Courtney) v. General Motors LLC*, No. 6:14-cv-02132 (M.D. Fla.) [β]
  (Hon. Paul Byron, 407-835-4321)
  - Personal injury action alleging power steering defect in 2007 Saturn Ion.
    - Plaintiff served first set of discovery on December 31, 2014. New GM served responses on March 9.
    - Case management conference held February 2. Scheduling order entered setting September 6, 2016 trial date.
    - JPML denied New GM's motion to transfer on April 2. Panel to reconsider motion without oral argument at May 28 hearing.
    - Counsel for plaintiff consented to MDL 2543 Coordination Order and executed MDL 2543 Protective Order on April 16.

- *Green (Arlita) v. General Motors LLC, et al.*, No. 15-144964-NF (Oakland County, Mich.) [αβ]
  (Hon. Leo Bowman, 248-452-2005)
  - Personal injury action alleging ignition switch defect in 2006 Chevrolet Impala.
    - MDL 2543 Coordination Order entered February 19.

- *Green (Jordan) v. General Motors LLC, et al.*, No. 2015-24496 (Harris County, Tex.) [αβ]
  - Personal injury action alleging ignition switch defect in 2002 Oldsmobile Alero.
    - New GM intends to file a notice of tag-along action for the Texas MDL.

- *Hellems v. General Motors LLC*, No. 15-459-NP (Eaton County, Mich.) [αβ]
  (Hon. Jeffrey Sauter, 517-543-4325)
  - Personal injury action alleging ignition switch defect in 2001 Cadillac Deville.

- *Homer v. General Motors LLC, et al.*, No. 14/7662 (Monroe County, N.Y.) [αβ]
  (Hon. Ann Marie Taddeo, 585-371-3719)
  - Wrongful death action alleging ignition switch defect in 2006 Chevrolet Cobalt.
    - Protective order and MDL 2543 Coordination Order entered December 2, 2014.

## Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *In re General Motors Ignition Switch Litigation* (Texas MDL), No. 2014-51871 (Harris County, Tex.) [β]
  (Hon. Robert Schaffer, 713-368-6040)
  - Consolidated personal injury and wrongful death actions alleging ignition switch defect in multiple New GM models. MDL 2543 Coordination Order entered October 24, 2014.
    - On March 23, Judge Schaffer entered an agreed order regarding completion of Plaintiff Fact Sheet, which is in same form as that used in MDL 2543.
    - Completed Plaintiff Fact Sheets were due April 24.
    - Status conference rescheduled from May 1 to June 12.

- *Johnston-Twining v. General Motors LLC, et al.*, No. 3956 (Philadelphia County, Pa.) [α]
  (No Judge Assigned)
  - Personal injury action alleging ignition switch defect in 2006 Chevrolet Cobalt.
    - Action will be included in and subject to New GM's Pre-Closing Accident Motion to Enforce.

- *Largent v. General Motors LLC, et al.*, No. 14-006509-NP (Wayne County, Mich.) [αβ]
  (Hon. Edward Ewell, Jr., 313-224-5195)
  - Personal injury action alleging ignition switch defect in 2006 Saturn Ion.
    - MDL 2543 Coordination Order entered November 10, 2014.

- *Lelonek v. General Motors LLC*, No. 1:15-cv-03641 (S.D.N.Y.) [αβ]
  (No Judge Assigned)
  - Wrongful death action alleging ignition switch defect in 2010 Chevrolet HHR.

- *Licardo v. General Motors LLC*, No. 03236 (Fulton County, N.Y.) [β]
  (Hon. Guy P. Tomlinson (discovery and motion judge), 518-853-8108)
  - Personal injury action alleging ignition switch defect in 2003 Oldsmobile Alero.
    - No discovery taken to date. The parties are currently working to schedule plaintiff's deposition.
    - MDL 2543 Coordination Order entered May 19, 2015.

- *Lincoln, et al. v. General Motors LLC*, No. 2015-0449-CV (Steuben County, N.Y.) [αβ]
  (No Judge Assigned)
  - Personal injury action alleging inadvertent turning of the ignition switch caused the subject accident involving a 2007 Pontiac Solstice.

- *Linder v. Jim Taylor Chevrolet, LLC, et al.*, No. 43,703c (Franklin Parish, La.) [αβ]
  (Hon. Glynn D. Roberts, 318-728-4111)
  - Personal injury action alleging electrical system defect in 2011 Chevrolet Silverado.

## Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *Little, et al. v. General Motors LLC*, No. 14-CI-00926 (Floyd County, Ky.) [β]
  (Hon. Thomas Smith, 606-889-1900)
  - Personal injury action alleging electric power steering defect in 2004 Chevrolet Malibu Maxx.
    - No pending motions.
    - New GM served responses on February 23 to Plaintiffs' discovery requests.

- *Lucas v. General Motors LLC, et al.*, No. 15-CI-00033 (Perry County, Ky.) [αβ]
  (Hon. Alison Wells, 606-435-6004)
  - Personal injury action alleging ignition switch defect in 2009 Chevrolet Cobalt.
    - New GM intends shortly to file opposed motion for entry of MDL 2543 Coordination Order.

- *Mathes v. General Motors LLC,* No. CL12001623-00 (Augusta County, Va.) [β]
  (Hon. Victor Ludwig, 540-245-5321, and Hon. Charles Ricketts (Ret.), 540-332-3870)
  - Wrongful death action alleging airbag and seat belt defects in 2002 Chevrolet Impala.
    - Hearing held May 18 on New GM's motion for entry of MDL 2543 Coordination Order and motion for protective order regarding Plaintiff's notice of corporate representative deposition regarding Valukas Report. Judge Ludwig requested supplemental briefing, to be complete by June 15.

- *Meyers v. General Motors LLC*, No. 1:15-cv-00177 (M.D. Pa.) [α]
  (Hon. Christopher Conner, 717-221-3945)
  - Wrongful death action alleging stalling condition in 2003 Saturn Ion.
    - Judge Conner stayed action pursuant to stipulation on February 9.
    - Action subject to New GM's Pre-Closing Accident Motion to Enforce.

- *Miller v. General Motors LLC, et al.*, No. CACE-15-002297 (Broward County, Fla.) [β]
  (Hon. Carlos Rodriguez, 954-831-0667)
  - Personal injury action alleging ignition switch and electric power steering defects in 2010 Chevrolet HHR.
    - Plaintiff moved for expedited trial on February 6 and noticed a hearing on the motion for June 2. On May 22, New GM filed opposed motion for entry of the MDL 2543 Coordination Order and response to plaintiff's motion for expedited trial setting.
    - No discovery taken to date.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Morgan, et al. v. General Motors LLC*, No. 5:14-cv-01058 (W.D. La.) [β]
  (Hon. S. Maurice Hicks, 318-676-3055)
  - Putative class action filed on behalf of Chevrolet Cruze owners seeking economic loss damages arising out of New GM's alleged concealment of ignition switch and other defects.
    - Judge Hicks denied New GM's motion to dismiss on March 16.
      Plaintiffs filed motion to extend time to move for class certification on March 30. Briefing on motion complete.

- *Mullin, et al. v. General Motors LLC, et al.*, No. BC568381 (Los Angeles County, Cal.) [β]
  (Hon. Elia Weinbach, 213-633-1092)
  - Wrongful death and personal injury action alleging ignition switch defects in accidents involving one death and five personal injuries relating to certain vehicles that are subject to ignition switch recall campaign and to certain vehicles that are not.
    - No discovery taken to date.
    - New GM filed motion to dismiss based on *forum non conveniens* on February 5. Hearing on motion scheduled for June 16.

- *Occulto v. General Motors Co., et al.*, No. 15-cv-1545 (Lackawanna County, Pa.) [α]
  (No Judge Assigned)
  - Wrongful death action alleging ignition switch defect in 2003 Saturn Ion.
    - Action will be included in and subject to New GM's Pre-Closing Accident Motion to Enforce.

- *Pate, et al. v. General Motors LLC, et al.*, No. 14A-2712-1 (Cobb County, Ga.) [β]
  (Hon. Melodie Clayton, 770-528-1741)
  - Wrongful death action alleging ignition switch defect in 2005 Cadillac CTS.
    - Plaintiffs and New GM filed separate motions for leave to take case-specific discovery. Hearing on motions scheduled for May 28.
    - Plaintiff served interrogatories and requests for production with complaint.
    - MDL 2543 Coordination Order entered November 25, 2014.
    - Scheduling order entered January 16, setting October 24, 2016 trial date.

- *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) [α]
  (Hon. Kim Dunning, 657-622-5304)
  - Civil action filed by Orange County District Attorney alleging New GM fraudulently concealed ignition switch and other defects.
    - Judge Dunning stayed action on February 17.
    - MDL 2543 Coordination Order entered March 6.
    - Subject to New GM's Ignition Switch Motion to Enforce.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Perez (Gladys) v. General Motors LLC, et al.*, No. 1:15-cv-00240 (N.D.N.Y.) [αβ]
  (Hon. Glenn Suddaby, 315-234-8580)
  - *Pro se* personal injury action alleging ignition switch defect in 2007 Chevrolet Malibu.
    - Conditionally transferred in MDL 2543 CTO-43.
      - Opposition filed by co-defendant. Briefing to be complete by June 19.

- *Perez (Saulo) v. General Motors LLC, et al.*, No. 14-23368-CA-10 (Miami-Dade County, Fla.) [αβ]
  (No Judge Assigned)
  - *Pro se* personal injury action alleging ignition switch defect in 2008 Cadillac CTS.

- *Petrocelli v. General Motors LLC, et al.,* No. 14-17405 (Suffolk County, N.Y.) [αβ]
  (No Judge Assigned)
  - Wrongful death action alleging ignition switch defect in 2006 Chevrolet Cobalt.

- *Pillars v. General Motors LLC*, No. 1:15-cv-11360 (E.D. Mich.)
  (Hon. Thomas Ludington, 989-894-8810)
  - Wrongful death action alleging airbag defect in 2004 Pontiac Grand Am.
    - No discovery taken to date.
    - Conditionally transferred in MDL 2543 CTO-38. Plaintiff's notice of opposition filed April 23. Briefing to be complete by May 28.
    - Plaintiff filed motion to remand on May 6. Briefing to be complete by June 2. Hearing on motion scheduled for August 19.
    - Action subject to New GM's Pre-Closing Accident Motion to Enforce.

- *Polanco, et al. v. General Motors LLC, et al.*, No. CIVRS1200622 (San Bernardino County, Cal.) [αβ]
  (Hon. Gilbert Ochoa, 909-708-8815)
  - Wrongful death action alleging ignition switch defect in 2006 Chevrolet Cobalt.

- *Pope, et al. v. General Motors LLC, et al.*, No. CJ-2014-467 (Muskogee County, Ok.) [β]
  (Hon. Weldon Stout, 918-684-1611)
  - Wrongful death action alleging airbag defect in 2001 Cadillac Deville.
    - No pending motions.
    - Plaintiffs served discovery with complaint. New GM served responses on February 23.
    - Plaintiffs' counsel purports not to intend to seek discovery related to ignition switch or New GM recalls.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Popwell v. General Motors Company, Inc., et al.*, No. 03-CV-2014-901703.00 (Montgomery County, Ala.) [αβ]
  (Hon. William Shashy, 334-832-5370)
  o Individual action filed on behalf of owner of 2010 Chevrolet Cobalt seeking economic damages arising from ignition switch defect.

- *Quiles v. Catsoulis, et al.*, No. 702871/14 (Queens County, N.Y.) [β]
  (Hon. Howard Lane, 718-298-0674)
  o Personal injury action alleging ignition switch defect in 2006 Cadillac DTS.
    - Case management order entered, providing for December 11 trial readiness date.
    - New GM intends shortly to file motion for entry of MDL 2543 Coordination Order with consent of Plaintiff and over Co-Defendant's objection.
    - New GM's responses to co-defendant's demand for particulars due May 27.

- *Quintero v. General Motors LLC, et al.*, No. 15-995 (Orleans Parish, La.) [αβ]
  (Hon. Clare Jupiter, 504-407-0240)
  o Personal injury action alleging ignition switch defect in 2007 Saturn Ion.

- *Ratcliff v. General Motors LLC*, No. 1:15-cv-00808 (D. Md.) [β]
  (Hon. George R. Russell III, 410-962-4055)
  o Personal injury action alleging airbag defect in 2010 Chevrolet Cobalt.
    - No discovery taken to date.
    - Briefing complete on New GM's motion to dismiss.

- *Shell, et al. v. General Motors LLC*, No. 1522-CC00346 (City of St. Louis, Mo.) [αβ]
  (Hon. David L. Dowd (motion and discovery judge), 314-622-4372)
  o Wrongful death and personal injury action alleging ignition switch defect in accidents involving two deaths and twenty-eight personal injuries relating to vehicles subject to ignition switch or ignition key rotation recall campaigns.
    - On April 28, Judge Dowd granted plaintiffs leave to amend complaint and join additional plaintiffs.

- *Shumate, et al. v. General Motors LLC, et al.*, No. CV-2015-073 (Conway County, Ark.) [αβ]
  (No Judge Assigned)
  o Wrongful death action alleging ignition switch and power steering defects in 2010 Chevrolet Cobalt.

## Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *Smith (Steve) v. General Motors LLC, et al.*, No. 41-CV-2014-900140.00 (Lauderdale County, Ala.) [β]
  (Hon. Gilbert P. Self, 256-760-5822)
  - Wrongful death action alleging ignition switch defect in 2006 Chevrolet Cobalt.
    - No pending motions.
    - New GM served responses and amended responses to Plaintiff's June 2014 discovery and requests for admission in September 2014.
    - Protective order and MDL 2543 Coordination Order entered November 12, 2014.
    - On April 22, upon the parties' joint motion for continuance, Judge Self vacated Order of Mediation and Setting Trial, which ordered parties to mediate by June 30 and set trial for November 16, 2015.

- *Solomon v. General Motors LLC*, No. 1:15-cv-01698 (N.D. Ga.) [αβ]
  (Hon. Orinda Evans, 404-215-1490)
  - Personal injury action alleging ignition switch and electric power steering defects in 2007 Chevrolet Silverado.
    - Conditionally transferred in MDL 2543 CTO-44.

- *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.) [α]
  (Hon. Robert Oberbillig, 602-506-2194)
  - Civil action filed by Arizona Attorney General alleging New GM fraudulently concealed ignition switch and other defects.
    - The Honorable Randall Warner stayed the action on February 25.
    - Action subject to New GM's Ignition Switch Motion to Enforce.

- *Szatkowski, et al. v. General Motors LLC, et al.*, No. 2014-08274-0 (Luzerne County, Pa.) [β]
  (No Judge Assigned)
  - Personal injury action alleging ignition switch defect in 2006 Pontiac Solstice.
    - New GM served responses on Plaintiffs' first and second discovery requests on November 24, 2014, and March 9, respectively.
    - On March 26, the Honorable David Lupas entered a stipulation and order regarding coordination with and discovery in MDL 2543 and setting trial date on or after August 1, 2016. On March 31, Plaintiffs signed MDL Protective Order and Rule 502(d) Order.

- *Tyre v. General Motors LLC, et al.*, No. GD-14-010489 (Allegheny County, Pa.) [αβ]
  (No Judge Assigned)
  - Wrongful death action alleging ignition switch defect in 2005 Chevrolet Cobalt.
    - MDL 2543 Coordination Order entered February 27.
    - MDL 2543 Coordination Order entered March 27 in companion action filed against dealer, *Tyre v. Watson Chevrolet, et al.*, No. GD-14-010813 (Allegheny County, Pa.), which incorporates all dealer-related allegations from original action.

## Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *Vargas Ortiz v. General Motors Co., et al.*, No. 3:15-cv-01587 (D.P.R.) [αβ]
  (Hon Jay Garcia-Gregory, 787-772-3170)
  - Personal injury action alleging ignition switch defect in 2001 Chevrolet Malibu.
    - Conditionally transferred in MDL 2543 CTO-44.

- *Watson, et al. v. General Motors LLC, et al.*, No. 6:14-cv-02832 (W.D. La.)
  (Hon. Richard T. Haik, Sr., 337-593-5100)
  - Individual action seeking economic loss damages related to unspecified defects in 2009 Chevrolet Corvette.
    - JPML Clerk determined action inappropriate for transfer to MDL 2543.
    - Plaintiffs served interrogatories and requests for disclosure and production with complaint.
      The Honorable Robert E. Gerber stayed action pending resolution of New GM's Non-Ignition Switch Motion to Enforce.

- *Worthington v. General Motors LLC, et al.*, No. 14A-3063-3 (Cobb County, Ga.) [β]
  (Hon. Irma Glover, 770-528-1711)
  - Personal injury action alleging power steering defect in 2004 Chevrolet Malibu.
    - No pending motions.
    - Plaintiff is currently requesting consent to serve discovery.
    - Protective order and MDL 2543 Coordination Order entered February 27.

## II.   Related Ignition Switch Securities And Derivative Actions

- *New York State Teachers' Retirement System v. General Motors Company et al.*,
  No. 4:14-cv-11191 (E.D. Mich.)
  (Hon. Linda V. Parker, 313-234-5105)
  - Securities class action under §10(b) of Securities Exchange Act of 1934, alleging violation of federal securities laws by New GM and damages for purchasers of New GM securities between November 17, 2010 and July 24, 2014.
    - Amended complaint filed January 15.

- *In re: General Motors Company Shareholder Derivative Litigation*,
  No. 2:14-cv-11277 (E.D. Mich.)
  (Hon. Robert H. Cleland, 313-234-5525)
  - Shareholder derivative action alleging breaches of fiduciary duties, corporate waste, and unjust enrichment by current and former officers and directors of Company.
    - Cases were consolidated on May 27, 2014; Plaintiffs filed consolidated complaint on August 21, 2014; New GM and individual defendants' motion to dismiss fully briefed.
    - On January 11, 2015, the Court held motion to dismiss in abeyance in deference to pending derivative action in Delaware, and administratively closed case, subject to request by any party to reopen case in the future.

## Exhibit B: Pending Related Cases Not Consolidated In MDL 2543

- *In re: General Motors Company Shareholder Derivative Litigation*,
  No. 2014-004611-CZ (Wayne County, Mich.)
  (Hon. Brian R. Sullivan, 313-224-2447)
  - Shareholder derivative action alleging breaches of fiduciary duties, corporate waste and aiding and abetting breaches of fiduciary duties by current and former officers and directors of Company.
    - Cases were consolidated on June 18, 2014; all deadlines extended until resolution of motion to dismiss shareholder derivative action pending in Eastern District of Michigan.

- *In re: General Motors Derivative Litigation*, No. 9627-VCG (Del. Court of Chancery)
  (Hon. Sam Glasscock, 302-856-5424)
  - Shareholder derivative action alleging breaches of fiduciary duties, corporate waste and aiding and abetting breaches of fiduciary duties by current and former officers and directors of Company.
    - Cases were consolidated on June 20 and July 18, 2014; Plaintiffs filed amended consolidated complaint on October 13, 2014; New GM filed motion to dismiss on December 5, 2014.

## III.    Unrelated Actions Seeking Ignition Switch-Related Discovery

- *Boekamp, et al. v. General Motors LLC*, No. 37-2010-00069017-CU-PL-EC (San Diego County, Cal.)
  (Hon. Joel Wohlfeil, 619-450-7073)
  - Action for economic damages arising from house fire alleging unspecified defect in 2005 Chevrolet Corvette.
    - Plaintiffs amended complaint to include allegations of fraudulent conduct by New GM in relation to defects subject to recall in 2014.
      - Plaintiffs have indicated intent to stay discovery on new allegations until after ruling on New GM's first challenge to the complaint.
    - New GM's demurrer filed April 10.

- *Buckley, et al. v. General Motors LLC*, No. 2-622-14 (Knox County, Tenn.)
  (Hon. William Ailor, 865-215-2395)
  - Wrongful death action alleging crashworthiness defects in 2007 Chevrolet Aveo.
    - Plaintiffs seek unredacted copy of the Valukas Report, including any and all attachments and any and all documents referenced in the Report.
      - New GM served responses on May 18, objecting to request.

- *Butcher v. General Motors Company, et al.*, No. 2:14-cv-00353 (W.D. Pa.)
  (Hon. Mark. R. Hornak, 412-208-7433)
  - Personal injury action alleging airbag defects in 2008 Saturn Astra.
    - Plaintiff's interrogatories seek Cobalt/Ion ignition switch related discovery.
    - New GM served responses on October 21, 2014 limited to issues of personal jurisdiction pending New GM's motion to dismiss.

13

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Comer, et al. v. Schmitt, et al.*, No. 14CV013 (Licking County, Ohio)
  (Hon. David Branstool, 740-670-5770)
  - Personal injury action alleging crashworthiness defects in 2009 Chevrolet Cobalt.
    - Plaintiffs seek unredacted copy of the Valukas Report, including any and all attachments and any and all documents referenced in the Report.
      - New GM served responses on May 14, objecting to request.

- *Davidson v. General Motors LLC, et al.*, No. CT-003414-14 (Shelby County, Tenn.)
  (Hon. Felicia Corbin Johnson, 901-222-3802)
  - Wrongful death action alleging driver's seat defects in 2012 Chevrolet Malibu.
    - Plaintiffs seek unredacted copy of the Valukas Report, including any and all attachments and any and all documents referenced in the Report.
      - New GM served responses on May 18, objecting to request.

- *Kokalichev v. General Motors LLC, et al.*, No. 12-25369 (Broward County, Fla.)
  (Hon. John J. Murphy III, 954-831-1648)
  - Personal injury action alleging unspecified defects in 2003 Chevrolet Blazer caused airbag non-deployment.
    - Plaintiff requests production of materials and information related to other incidents of airbag non-deployment in Cobalt/Ion vehicles.

- *Prospere, et al. v. Michelin North America, Inc., et al.*, No. 12-CA-045273 (Brevard County, Fla.)
  (Hon. Charlie Crawford, 321-617-7258)
  - Personal injury action alleging design defects related to handling and crashworthiness in 2002 Chevrolet TrailBlazer.
    - Plaintiffs seek corporate representative deposition regarding Valukas Report.
      - New GM filed motion for protective order on November 19, 2014.
        - The Honorable Charles Holcomb entered order prohibiting inquiry into content of Valukas Report, but permitting questions concerning New GM's culture as it relates to design and manufacture of 2002 Chevrolet TrailBlazer.

- *Smith (Sean), et al. v. General Motors LLC, et al.*, No. 10-CV-2013-900029.00 (Butler County, Ala.)
  (Hon. Terri Bozeman Lovell, 334-382-3621)
  - Wrongful death and personal injury action alleging design defects related to handling and crashworthiness in 2000 Chevrolet Blazer.
    - Plaintiffs seek corporate representative deposition regarding Valukas Report.
      - New GM filed motion for protective order on November 18, 2014.

- *Spurgeon, et al. v. Cain, et al.*, No. 64-CV-2013-900191.00 (Walker County, Ala.)
  (Hon. Doug Farris, 205-384-7268)
  - Personal injury action alleging seatback defect in 2010 Pontiac G6.
    - Plaintiffs' requests for production seek ignition switch-related discovery.

**Exhibit B: Pending Related Cases Not Consolidated In MDL 2543**

- *Synovus Trust Company, N.A. v. General Motors LLC*, No. 1:14-CV-02976 (N.D. Ga.)
  (Hon. Willis B. Hunt, Jr., 404-215-1450)
  - o Wrongful death action alleging defect in location of fuel tank in 1983 Chevrolet C/K.
    - ▪ Plaintiff served requests for admissions regarding statements made by New GM and New GM CEO Mary Barra regarding 2014 safety recalls.
      - • New GM served responses on February 23, objecting to requests.

- *Williams v. General Motors LLC*, No. 1:14-cv-02908 (N.D. Ga.)
  (Hon. Willis B. Hunt, Jr., 404-215-1450)
  - o Wrongful death action alleging defect in location of fuel tank in 1983 Chevrolet C/K.
    - ▪ Plaintiff served requests for admissions regarding statements made by New GM and New GM CEO Mary Barra regarding 2014 safety recalls.
      - • New GM served responses on February 23, objecting to requests.