UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                              :    Chapter 11
                                                   :
MOTORS LIQUIDATION COMPANY, *et al.*,              :    Case No.: 09-50026 (REG)
    f/k/a General Motors Corp., *et al.*    :
                                                   :    (Jointly Administered)
                       Debtors.       :
-------------------------------------------------------------x

## DECISION RE FORM OF JUDGMENT

APPEARANCES:

KING & SPALDING LLP
*Counsel for General Motors LLC (New GM)*
1185 Avenue of the Americas
New York, New York 10036
By:    Arthur J. Steinberg, Esq.

BROWN RUDNICK
*Designated Counsel and Counsel for Economic Loss Plaintiffs*
Seven Times Square
New York, New York 10036
By:    Edward S. Weisfelner, Esq.

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.
*Designated Counsel and Counsel for Economic Loss Plaintiffs*
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
By:    Sander L. Esserman, Esq.)

GOODWIN PROCTER, LLP
*Designated Counsel and Counsel for Pre-Sale Accident Victim Plaintiffs*
The New York Times Building
620 Eighth Avenue
New York, New York 10018
By:    William P. Weintraub, Esq.

GOLENBOCK, EISEMAN, ASSOR, BELL & PESKOE, LLP
Counsel for Groman Plaintiffs
437 Madison Avenue
New York, New York 10022
BY:    Jonathan L. Flaxer, Esq.

-1-

GIBSON, DUNN & CRUTCHER, LLP
Counsel for Wilmington Trust Company as
*GUC Trust Administrator*
200 Park Avenue
New York, New York 10166
BY:    Lisa H. Rubin, Esq.

AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
*Counsel for Participating GUC Trust Unit Trust Holders*
One Bryant Park
New York, New York 10036
BY:    Deborah J. Newman, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

The parties' inability to agree on a form of judgment to implement the Court's *Decision on Motion to Enforce Sale Order*[1] requires this Court to decide the disputed matters. The Court will be entering a judgment, consistent with its rulings on the disputed matters, within a few days.[2]  The Court's reasoning on the disputed matters follow.

1. *Request for Delay in Entry of Judgment*

Gary Peller, Esq., counsel for the *Elliott* and *Sesay* Plaintiffs (and an additional plaintiff, Sharon Bledsoe, a pre-petition accident victim) (collectively, the "**Peller Plaintiffs**")—whose insistence on prosecuting their complaints ahead of all of the other plaintiffs similarly situated (and that this Court lacks the jurisdiction to enforce its own orders) necessitated two written opinions by this Court[3]—now argues that entry of

---

[1] *See In re Motors Liquidation Co.,* 2015 Bankr. LEXIS 1296, 2015 WL 1727285 (Bankr. S.D.N.Y. Apr. 15, 2015) (Bankr. S.D.N.Y. Apr. 15, 2015) (the "**Decision**"), familiarity with which is assumed.  Defined terms (such as the Court's reference to "**Designated Counsel**," the bankruptcy counsel for many of the Ignition Switch Plaintiffs) are as set forth the Decision and in the proposed forms of judgment.

[2] By separate order, entered today, the Court is inviting comments on *technical* matters relating to the form of judgment.  The entry of the judgment will await the submission of any such technical comments, but nothing else.

[3] *See In re Motors Liquidation Co.*, 514 B.R. 377 (Bankr. S.D.N.Y. 2014) (Elliott Plaintiffs); *In re Motors Liquidation Co.*, 422 B.R. 13 (Bankr. S.D.N.Y. 2014) ("*Sesay*") (Sesay Plaintiffs), *leave to appeal denied,* No. 15-CV-772 and 15-CV-776 (S.D.N.Y. May 18, 2015) (Furman, J.).

-2-

judgment is premature. He argues, effectively, that the entry of a judgment as desired by all of the other parties in this case (and the prompt appellate review that all of the other parties also desire) should await the consideration of additional arguments he wishes to present.

He further argues, on behalf of the Peller Plaintiffs, that the Court's rulings in the Decision are not binding on them. The Court disagrees. The Peller Plaintiffs had more than ample opportunity to raise contentions Designated Counsel did not raise. And though Mr. Peller's filings were so numerous and frivolous that the Court warned him of the entry of a *Martin-Trigona* order,[4] he still had the right, under the Court's orders establishing the mechanisms for determination of the Motion to Enforce, to make any points others had not.

Under these circumstances, there is no good reason for delaying the entry of a judgment that all of the other parties in this case need. Judgment will be entered now. The only fairly debatable issue is exactly how it will be framed.

2. *Dismissal With Prejudice v. Stay of Cases*

In its proposed form of judgment, New GM provides for the outright dismissal, with prejudice, of the complaints embodying claims that continue to be barred by the Sale Order. In their proposed form of judgment, Designated Counsel argue that such complaints should merely be stayed. Though the matter is close—as neither side would be materially prejudiced by the other's approach—the Court believes it should provide, for the time being, for no more than a stay.

---

[4] *See Sesay*, 522 B.R. at 20 n.13.

-3-

Of course it is true, as New GM has argued, that many plaintiffs' counsel filed plenary action complaints, in both state and federal courts, in knowing disregard of the prohibitions of the Sale Order. And whether those counsel did so out of arrogance; ignorance; their own perceptions of when orders should be complied with; or an apparent notion that orders of a United States Bankruptcy Court are unworthy of respect, is of no moment. Compliance with the Court's Sale Order was required, unless and until the Sale Order was vacated or modified by this or a higher court.[5] With this Court having declined to vacate or modify the Sale Order with respect to successor liability claims, New GM is right in its contention that the normal remedy for the filing of a complaint in violation of a court order—now determined, in respects relevant here, to be fully valid— would be an order mandating that complaint's dismissal.

The real issue, however, is *when—*and whether merely staying the actions pending the completion of appellate proceedings would suffice. Designated Counsel argue that full dismissal "would provide an inefficient labyrinth of cumbersome procedures impacting a wide array of actions pending against New GM in various jurisdictions." That is true, but it is largely a problem of Ignition Switch Plaintiffs' making—resulting from their filing of many actions that they knew or should have known were barred by the Sale Order, and apparently intentional efforts to intermingle permitted and impermissible claims in common complaints.

Nevertheless, though many of New GM's proposed procedures would have to remain in any event (to provide mechanisms for relief from the stays, and for determining whether curative measures were sufficient), New GM's dismissal procedures would be

---

[5] *See*, *e.g.*, *Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995) ("Persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.")(internal citations omitted).

cumbersome, and could result in additional expense in refiling fees if any complaints now to be dismissed later turn out, after appeal, to assert claims that could properly be presented. And while New GM offers mechanisms (such as a tolling of the statute of limitations and restoration of the *status quo ante*) to protect Ignition Switch Plaintiffs in the event of a reversal or modification of the Decision, there is no need for quite so many measures so complex, nor for the additional burdens on the Court that would result from New GM's approach. New GM would not be prejudiced, much less materially so, if complaints embodying claims proscribed by the Sale Order are simply stayed for the time being.

The Court gave substantial thought to the issues addressed in the Decision and believes, not surprisingly, that it got them right. But as the Court noted when it certified the Decision for direct appeal to the Circuit, available authorities, while helpful to a point, came nowhere close to addressing a factual situation of this nature. Staying the actions embodying barred claims more than satisfactorily protects New GM's legitimate needs and concerns for now. If, as the Court believes, its conclusions on the issues to be appealed were right, New GM can then come back to the Court for full dismissals after the appellate process has taken its course.

3. *State Court Attorney General Actions*

After the filing of the Motion to Enforce, actions in California and Arizona state court (the "**State Actions**") were filed on behalf of the Attorneys General of California and Arizona (the "**State Plaintiffs**") seeking injunctive relief, civil penalties and "other available relief." New GM's form of judgment provides for those actions to be stayed. Designated Counsel object to that, contending that the two State Actions assert claims

based only on New GM conduct—which, if true, would be permissible under the Decision.

But the Court does not believe that to be true. On their face, the State Plaintiffs, like many Ignition Switch Plaintiffs, intermix claims involving pre- and post-sale conduct. The California complaint includes at least 18 paragraphs alleging events that took place prior to the 363 Sale,[6] and the Arizona complaint includes at least 60 paragraphs alleging pre-363 Sale conduct.[7] Reliance on allegations of that character was expressly prohibited under the Court's decision. And the State Actions' prayers for monetary relief (as contrasted to injunctive relief, which is forward looking, and much less prone to rest on Old GM conduct), in reliance on pre-sale allegations aggravate the problem.

The Court has included within the Judgment, however, provisions allowing the State Plaintiffs to choose between maintaining the complaints in their State Actions as they originally drafted them, pending any appeal they might bring, or pruning their complaints of allegations relating conduct to Old GM conduct. If either elects the latter, and New GM does not agree that claims and allegations only of a permissible nature remain, the State Plaintiffs may seek a ruling from this Court. But in the meantime, the prosecution of the state lawsuits will remain stayed.[8]

---

[6] *See* ECF No. 13137, Exhibit E.

[7] *See id.*, Exhibit D.

[8] According to New GM, the State Plaintiffs have indicated that they will not amend their complaints to eliminate reliance on Old GM conduct. The Court does not know that to be true. But assuming that it is, a decision of that character comes with a price—and that price is a stay of the State Action for as long as appropriate as the federal appellate process takes its course. Compliance with the Sale Order, or with the Decision and Judgment, is not a matter for the State Plaintiffs, or the state courts, to decide. The issues addressed in the Decision were issues properly before the federal courts, and this Court in particular. On matters properly within its purview, the Court cannot permit a disregard of its orders and judgments, or end-runs on its jurisdiction.

*4. Language Re Barred Claims*

In its form of judgment, New GM proposes to continue the injunction against claims against New GM "concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery." Designated Counsel's form of judgment limits the barred claims to those "based on successor liability." But the latter's formulation is unduly narrow, distorting the Court's intent. The Court cannot accept Designated Counsel's language.

Successor liability theories are the paradigmatic example of claims that must be barred under a Free and Clear Order, but they are not the only ones. The Sale Order was intended to bar claims *of any type* that might be asserted against the asset buyer New GM that would be based on the asset seller Old GM's wrongful conduct—including, but not limited to, successor liability claims.[9] Acquirers of assets cannot be placed at risk of liability for claims based on seller conduct premised on the notion that the claims are not exactly for "successor liability." Any sale order that did not protect purchasers of assets from the sellers' wrongful acts would not do its job. And when the Court issued the Decision (having rejected the Ignition Switch Plaintiffs' contentions, except insofar as they involved alleged wrongful conduct by New GM alone), its intent was to leave all of the protective provisions intact.[10]

---

[9] *See Sale Opinion*, 407 B.R. at 500 n. 92 (Sale Order would provide that except for Assumed Liabilities, assets would be transferred "free and clear of all liens, claims, encumbrances, and other interests *of any kind or nature whatsoever ... including* rights or claims based on any successor or transferee liability...." (quoting Proposed Sale Order at ¶ 7) (emphasis added)). *See also id.* (noting that injunction would bar persons and entities holding claims "*of any kind or nature whatsoever, including* rights or claims based on any successor or transferee liability, against or in a Seller or the Purchased Assets … arising under or out of, in connection with, or in any way relating to, the Sellers, the Purchased Assets, the operation of the Purchased Assets prior to the Closing, or the 363 Transaction…." (quoting Proposed Sale Order at ¶ 8) (emphasis added)).

[10] *See* Decision, 2015 Bankr. LEXIS 1296 at *26; 2015 WL 1727285 at *8 ("[I]t is plain that to the extent the Plaintiffs seek to impose successor liability, *or to rely, in suits against New GM, on any*

The Court's judgment will stay true to the original Sale Order and the language in the Decision.

5. *Language Re Non-Ignition Switch Plaintiffs*

As both sides recognize, after New GM filed the Motion to Enforce, still another category of Plaintiffs came into the picture—the "Non-Ignition Switch Plaintiffs." Though New GM brought still another motion—a third one—to enforce the Sale Order with respect to Non-Ignition Switch Plaintiffs, this third motion could not easily be melded into the earlier stipulation and briefing schedule. Thus it was deferred pending the determination of the issues addressed in the Decision.

The Non-Ignition Switch Plaintiffs' claims remain stayed, and properly so; those Plaintiffs have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them. And unless and until they do so, the provisions of the Sale Order, including its injunctive provisions, remain in effect. Similar considerations (and also mootness points) may apply with respect to the allowance of late Non-Ignition Switch Plaintiffs' claims.

Yet as Designated Counsel properly observe, the Non-Ignition Switch Plaintiffs are still entitled to a fair opportunity to be heard in this Court as to whether there are any reasons to excuse them from the Sale Order, or the Court's mootness conclusions with respect to tapping GUC Trust assets. The Decision will be *stare decisis* for the Non-Ignition Switch Plaintiffs (subject to the usual right of any litigant to show that a judicial

---

*wrongful conduct by Old GM,* these are actually claims against Old GM, and not New GM"); *id.,* 2015 WL 1727285 at *8 ("*Claims premised in any way on Old GM conduct* are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand."); *id.* at 2015 WL 1727285 at *68 (Economic Loss Plaintiffs could assert otherwise viable claims against New GM arising "solely out of New GM's own, independent, post-Closing acts," *so long as those Plaintiffs' claims do not in any way rely on any acts or conduct by Old GM*") (emphasis added in each case).

opinion is distinguishable), but it will not be *res judicata*. The Court agrees with New GM, the GUC Trust and the Unitholders that it is time to come to closure on whether there is any basis to excuse the Non-Ignition Switch Plaintiffs from the provisions of the Sale Order and the Court's mootness conclusions. And fairness to the MDL Court requires that this Court timely provide the MDL Court with any rulings that the MDL Court may require. The Court's Judgment balances the Non-Ignition Switch Plaintiffs' need for opportunity now to be heard with others' needs for expeditious closure on these additional claims.

*6. Language Re GUC Trust Assets*

New GM and, particularly, the GUC Trust and the Unitholders, on the one hand, and Designated Counsel, on the other, disagree on the language in the judgment appropriate to implement the Court's mootness conclusions. The Court generally agrees with the GUC Trust, Unitholders and New GM. But it believes, consistent with the rationale of the Decision, that the guiding standard should the reasonable expectations of GUC Trust and acquirors of GUC Trust Units under the Plan—a matter not fully addressed by either side.

It is necessary, in the Court's view, to include different provisions in the Judgment with respect to new claims and reconsideration of old ones. When Old GM creditors received distributions under the Plan, and when Unitholders—even if as aftermarket acquirors of GUC Trust Units—acquired their units, they had a reasonable expectation that the total universe of claims filed against Old GM would not increase. And while they knew that there was an accordion feature, they also knew that claims exposure would result, with exceptions exceedingly difficult to show, only from

previously filed claims. The Decision respected those concerns. The Court's Judgment will stay true to the principles articulated in the Decision, and will not allow GUC Trust assets to be tapped for claims not previously filed.

But as noted, the situation is different with respect to claims that were already filed, and previously allowed or disallowed. Bankruptcy Code section 502(j) provides, in relevant part:

> A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.[11]

Creditors receiving distributions under the Plan, and owners of GUC Trust units acquiring such units after confirmation of the Plan, were on notice that the Bankruptcy Code includes a section 502(j). Just as they had the justifiable expectation that the Court would apply provisions of the Bankruptcy Code or caselaw that would bolster their rights, they had (or should have had) the same expectation that the Court might apply provisions of the Bankruptcy Code or caselaw that could dilute their recoveries. Each assumed the risk that the Court might apply section 502(j) with respect to any claims that previously had been allowed or disallowed.

---

[11] It goes on to say that:

> Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder.

This provides other creditors with a considerable measure of protection, but does not go to all of the concerns the GUC Trust and Unitholders voiced that were thereafter addressed in the Decision. Importantly, section 502(j) applies, by its terms, only to claims that were previously allowed or disallowed.

The Court expresses no view now as to whether or how it would apply section 502(j) to the claim of any plaintiff who previously filed a claim that was allowed or disallowed, but has added a proviso to its Judgment to provide that nothing in the judgment impairs any rights under section 502(j).

*7. Language Re Disputed Facts*

Designated Counsel and New GM also joust over the extent to which the Court should address, in the judgment, disputed facts that did not affect the Court's Decision. Designated Counsel ask the Court to provide that disputed facts did not raise any "genuine issue of material fact as to any of the Four Threshold Issues, and that treating any of the disputed facts as part of the undisputed stipulated record would not have affected the Decision." New GM opposes such a provision, stating that this "is found nowhere in the Decision and, in fact, is inconsistent with the Decision."

New GM is right that the language Designated Counsel want to add is found nowhere in the Decision. But New GM is mistaken when it says that the language "is inconsistent with the Decision." Such language—or at least language to the same general effect—is implicit. The Court expressly stated that "[b]y analogy to motions for summary judgment, the Court has relied only on undisputed facts."[12] Both sides agree, or should, that the Plaintiffs did indeed put forward additional facts which New GM disputed, but which the Court found unnecessary to decide to reach the conclusions it did. If the Court considered any disputed fact to have the potential to change the outcome (or even its analysis on the way to the outcome), the Court would have said so—just as it would, if necessary, on a motion for summary judgment.

---

[12] Decision, 2015 Bankr. LEXIS 1296 at *30 n.17, 2015 WL 1727285 at *9 n.17.

*8. Enforcement Authority*

New GM's proposed form of judgment provides, in Paragraph 15:

> Notwithstanding the foregoing, in all events, however, the Decision and Judgment shall apply with respect to (a) the Court's interpretation of the enforceability of the Sale Order, and (b) the actions of the affected parties that are authorized and proscribed by the Decision and Judgment.

The Plaintiffs want this language taken out. The Court declines to do so.

New GM has expressed an understandable concern that plaintiffs in actions whose prosecution is barred by the Sale Order cases will seek to have this Court's Sale Order or Judgment vacated or modified by courts in which plaintiffs' underlying actions are docketed. This Court cannot not tolerate efforts of that character. Wholly apart from the additional expertise that Bankruptcy Courts have with respect to the orders they enter and the bankruptcy matters they decide, the interpretation of this Court's Sale Order is a matter for this Court. Subject to the power, of course, of federal courts exercising appellate jurisdiction over this Court, so is the interpretation of the Decision and the Judgment. This Court's determinations with respect to each of those matters are reviewable by the federal appellate courts alone; they cannot be subject to collateral attack. And this last point is so important that the Court is adding even more language to the Judgment to make that clear.

*8. Other Matters*

In several places, New GM has proposed that the judgment state that notice of the 363 sale came from Old GM, fearing that omitting reference to Old GM would imply that someone else was responsible for the 363 sale notice, "which clearly is not true." Of course the notice came from Old GM. But leaving it out does not result in the

-12-

implication New GM fears. Consistent with the Court's practice here to minimize unnecessary matter, and to point readers to the Decision to understand its rationale, the Court leaves that and other nonessential matter out.

Certification to the Second Circuit Court of Appeals is more appropriately handled by a separate order.[13] The parties' stipulation with respect to voluntary supplemental statements will be included in that separate order as well.

In many places, the Court has pruned language from the proposed forms of judgment to reduce verbosity. Where changes were meant to be substantive, they have been explained in the discussion above.

Dated:  New York, New York                _s/Robert E. Gerber_____
        May 27, 2015                      United States Bankruptcy Judge

---

[13] *See* Fed.R.Bankr.P. 8006(e)(1).