# <u>Exhibit 5</u>

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BENJAMIN W. PILLARS, as
Personal Representative for the
Estate of KATHLEEN ANN PILLARS,
Deceased,

               Plaintiff,

v.

GENERAL MOTORS LLC,

               Defendant.

Honorable Thomas J. Ludington
Case:  1:15-cv-11360-TLL-PTM

---

| | |
|---|---|
| Victor J. Mastromarco, Jr. (P35464) | Thomas P. Branigan (P41774) |
| Russell C. Babcock (P57662) | Elizabeth A. Favaro (P69610) |
| The Mastromarco Firm | Bowman and Brooke LLP |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 1024 N. Michigan Avenue | 41000 Woodward Avenue, Suite 200 East |
| Saginaw,  MI  48602 | Bloomfield Hills, MI  48304 |
| 989.752.1414 / 989.752.6202 fx | 248.205.3300 ph / 248.205.3399 fx |
| Vmastromar@aol.com | tom.branigan@bowmanandbrooke.com |
| russellbabcock@aol.com | elizabeth.favaro@bowmanandbrooke.com |

---

**DEFENDANT GENERAL MOTORS LLC'S BRIEF IN SUPPORT OF ITS
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

12164144v2

# **Table of Contents**

Table of Contents ................................................................................ i

Table of Authorities..................................................................... ii

Concise Statement of the Issues Presented ............................................ iv

Introduction..............................................................................5

Argument and Authorities ...........................................................6

    I.    This Court Should Stay Proceedings to Allow the MDL Court to Decide Plaintiff's Motion for Remand Consistent With Other, Similar Motions to Remand.....................................................7

    II.   If This Court Reaches the Merits of Plaintiff's Remand Motion, It Should Deny the Motion. .......................................................13

        A.    The Bankruptcy Court has core and exclusive jurisdiction to determine whether this action is barred by the Bankruptcy Court's Sale Order and Injunction. ..............13

        B.    Plaintiff's permissive abstention and equitable remand arguments should be rejected. ......................................17

Conclusion................................................................................19

12164144v2

## Table of Authorities

**Cases**

*Baron v. Merck & Co., Inc.*, 2006 WL 2521615, at *1 (E.D. Mo. Aug. 30, 2006) ........................................................................................... 9

*Benton v. Gen. Motors LLC,* No. 14-590, ECF No. 35 (C.D. Cal. Apr. 16, 2014) ............................................................................................ 8

*Buie v. Blue Cross & Blue Shield of Kan. City, Inc,* No. 05-0534, 2005 WL 2218461, at *1 (W.D. Mo. Sept. 13, 2005) ................................. 8

*D's Pet Supplies, Inc. v. Microsoft Corp,* No. 99-76202, 2000 U.S. Dist. LEXIS 16482 (E. D. Mich. Feb. 7, 2000) .................................... 9

*Emerson v. Gen. Motors LLC,* No. 14-21713, ECF No. 4 (S.D. Fla. May 12, 2014) ............................................................................................ 8

*Green v. Gen. Motors LLC,* No. 1:14-cv-0107, (M.D. Tenn. June 17, 2014 .................................................................................................... 11

*In re Darvocet Prods. Liab. Litig.,* MDL No. 2226, 2012 WL 7764151, at *1 (J.P.M.L. 2012) ...................................................................... 9

*In re Facebook, Inc., IPO Securities and Derivative Litig.,* 899 F. Supp. 2d 1374, 1376 (J.P.M.L. 2012) ........................................... 9

*In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.*, 229 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) ......................................... 10

*In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Mar. 17, 2015) ..................................................................... 12

*In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. May 12, 2015) ................................................................... 12, 18

*In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. May 6, 2015) ...................................................................... 12

*In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Nov. 24, 2014 ...................................................................... 11

*In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Sept. 17, 2014) ................................................................... 12

*In re Motors Liquidation Co.,* 447 B.R. 142, 143-44 (Bankr. S.D.N.Y. 2011) .................................................................................................. 15

*In re Motors Liquidation Co.,* No. 09-50026 (REG), 2015 Bankr. LEXIS 1296 (Bankr. S.D.N.Y. Apr. 15, 2015) .............................................. 17

*In re New Eng. Mut. Life Ins. Co. Sales Practices Litig.*, 324 F. Supp. 2d 288, 291-92 (D. Mass. 2004) ............................................... 9

*In re Western States Wholesale Natural Gas Antitrust Litig.*, 290
   F. Supp. 2d 1376, 1378 (J.P.M.L. 2003) ................................................. 10

*Kelley v. Gen. Motors Co,* No. 14-465, ECF No. 38 (C.D. Cal. Apr. 16,
   2014) ................................................................................................................. 8

*Lannon v. Gen. Motors LLC,* No. 14-21933, ECF No. 3 (S.D. Fla. May 28,
   2014) ................................................................................................................. 8

*Luan Investment S.E. v. Franklin 145 Corp.*, 304 F.3d 223, 229-30 (2d Cir.
   2002) ................................................................................................................. 6

*Maciel v. Gen. Motors LLC,* No. 14-1339, ECF No. 36 (N.D. Cal. Apr. 22,
   2014) ................................................................................................................. 8

*People of the State of California v. Gen. Motors LLC,* No. 8:14-cv-01238,
   (C.D. Cal. Sept. 19, 2014) .......................................................................... 11

*Sanchez v. DePuy Orthopaedics Inc.*, 2011 WL 7092289, at *2 (C.D. Cal.
   No. 21, 2011) ................................................................................................. 9

*Shamieh v. HCB Financial Corp.,* No. 2:14-cv-02215, 2014 WL 5365452
   (W.D. La. Oct. 21, 2014) ..................................................................... 18, 19

*Sumners v. Gen. Motors LLC,* 1:14-cv-00070, ECF No. 8 (M.D. Tenn. Jun.
   17, 2014) ...................................................................................................... 10

## Statutes

28 U.S.C. § 1334(c) ................................................................................................ 6
28 U.S.C. § 1334(c)(1) ......................................................................................... 17
28 U.S.C. § 1441 ..................................................................................................... 6
28 U.S.C. § 1446 ..................................................................................................... 6
28 U.S.C. § 1452(a) .......................................................................................... iv, 6
28 U.S.C. § 1452(b) ............................................................................. 6, 17, 18

## Rules

FRCP 9027 ........................................................................................................ iv, 6

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1.      Whether the Court should stay this case pending final determination by the Judicial Panel on Multidistrict Litigation whether this action should be transferred to the MDL court in the Southern District of New York.

2.      Whether removal was proper based on the exclusive and continuing jurisdiction of the Bankruptcy Court for the Southern District of New York to enforce its Sale Order and Injunction pursuant to 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027.

3.      Whether the Court should permissively abstain and/or equitably remand based on an alleged due process violation.

12164144v2

## **INTRODUCTION**

This Court need not and should not decide Plaintiff's Motion for Remand. Instead, this action should be stayed pending final determination by the Judicial Panel on Multidistrict Litigation ("JPML") whether this action should be transferred to the MDL court in the Southern District of New York alongside more than 200 other Ignition Switch Actions for coordinated or consolidated pretrial proceedings, as set forth in New GM's pending Motion to Stay. *See* ECF No. 9. As discussed therein and below, the overwhelming weight of authority holds that it is the MDL court that is best-positioned to decide pending remand motions in individual actions in a uniform and consistent matter.

Should this Court choose to proceed to the merits of Plaintiff's remand motion, it should be denied. Pursuant to the Sale Order and Injunction entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), all of Plaintiff's claims here are expressly barred. The Bankruptcy Court reserved exclusive and continuing jurisdiction to enforce its injunction and to resolve all controversies concerning the interpretation and enforcement of its Sale Order and Injunction, giving rise to federal question jurisdiction pursuant to

5

28 U.S.C. § 1441, 1452(a), and 1446, and Rule 9027 of the Federal Rules of Bankruptcy Procedure.   Plaintiff's erroneous assertion to the contrary notwithstanding, this case is subject to the core and exclusive jurisdiction of the Bankruptcy Court.   *See, e.g., Luan Investment S.E. v. Franklin 145 Corp.*, 304 F.3d 223, 229-30 (2d Cir. 2002) (Disputes concerning Bankruptcy Court's sale order fall within "core" jurisdiction.).   Consequently, this case was removable to this Court under 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.   In addition, because Plaintiff's claims are subject to the exclusive and continuing jurisdiction of the Bankruptcy Court, any due process challenge belongs there.   And Plaintiff's unsupported, one-paragraph discussion invoking the abstention provisions of 28 USC § 1334(c) and the equitable remand provision of 28 U.S.C. § 1452(b) is baseless and should be rejected.

Plaintiff's remand motion should be denied.

## **ARGUMENT AND AUTHORITIES**

This Court need not and should not decide Plaintiff's motion for remand.   This case should be stayed pending rulings by other judicial bodies that may eliminate the need for further proceedings in any Michigan

6

court, state or federal.  If this Court does reach the merits of Plaintiff's remand motion, it should be denied.

## I.   THIS COURT SHOULD STAY PROCEEDINGS TO ALLOW THE MDL COURT TO DECIDE PLAINTIFF'S MOTION FOR REMAND CONSISTENT WITH OTHER, SIMILAR MOTIONS TO REMAND.

As described more fully in New GM's Motion to Stay (ECF No. 9), this Court need not and should not decide Plaintiff's motion for remand.  United States District Court Judge Jesse Furman in the Southern District of New York is currently presiding over MDL No. 2543, *In re: General Motors LLC Ignition Switch Litigation*.  The MDL proceedings include approximately 200 personal injury and economic loss cases alleging claims arising from a purportedly defective ignition switch, the exact same type of claims Plaintiff brings in his Complaint.[1]  *See* ECF No. 5-4.  New GM gave notice to the JPML of this case as a tag-along action pursuant to Panel Rule 7.1.  *See* MDL No. 2543, ECF No. 684.  Just days later, the JPML promptly issued an order conditionally transferring this case ("CTO-38") to the MDL court. *See* MDL No. 2543, ECF No. 686, attached hereto as Exhibit A.  Although Plaintiff has filed an objection to CTO-38, the JPML has set a briefing

---

[1] Plaintiff acknowledges in his remand motion that "reference to the amended complaint is not necessary since the changes/additions made in the amendment are not material to the limited issue before this Court."  *See* ECF No. 5 at 7 n.1.

schedule, with briefing to be closed on May 28, 2015, and a decision expected shortly thereafter.  *Id.,* ECF No. 692.

In other Ignition Switch cases, federal courts have imposed stays to permit the JPML to finalize transfer to the MDL court, either *sua sponte—see, e.g.*, *Benton v. Gen. Motors LLC*, No. 14-590, ECF No. 35 (C.D. Cal. Apr. 16, 2014) (entering stay, finding that "it is virtually certain that the actions asserting class claims on the basis of alleged defects in the ignition switch system in certain General Motors vehicles will be transferred to a single forum for pretrial proceedings"); *Kelley v. Gen. Motors Co.*, No. 14-465, ECF No. 38 (C.D. Cal. Apr. 16, 2014) (same); *Emerson v. Gen. Motors LLC*, No. 14-21713, ECF No. 4 (S.D. Fla. May 12, 2014) (same); *Lannon v. Gen. Motors LLC*, No. 14-21933, ECF No. 3 (S.D. Fla. May 28, 2014) (same)—or after contested briefing.  *See Maciel v. Gen. Motors LLC*, No. 14-1339, ECF No. 36 (N.D. Cal. Apr. 22, 2014).

The fact that Plaintiff has moved to remand this action does not change the result.  The substantial weight of federal authority supports that the MDL court should decide jurisdictional issues, including motions to remand.  *See Buie v. Blue Cross & Blue Shield of Kan. City, Inc.*, No. 05-0534, 2005 WL 2218461, at *1 (W.D. Mo. Sept. 13, 2005) ("[P]laintiffs'

8

pending remand motion can be presented to and decided by the transferee judge."); *In re Facebook, Inc., IPO Securities and Derivative Litig.*, 899 F. Supp. 2d 1374, 1376 (J.P.M.L. 2012) ("Plaintiffs in the removed derivative actions can present their pending motions for remand to state court to the transferee court.") (citations omitted); *In re Darvocet Prods. Liab. Litig.*, MDL No. 2226, 2012 WL 7764151, at *1 (J.P.M.L. 2012) ("The transferee judge can rule on plaintiffs' pending remand motion."); *D's Pet Supplies, Inc. v. Microsoft Corp.,* No. 99-76202, 2000 U.S. Dist. LEXIS 16482 (E. D. Mich. Feb. 7, 2000) (granting stay applicable to motions to remand until the JPML "decides whether to transfer the action"); *Sanchez v. DePuy Orthopaedics Inc.*, 2011 WL 7092289, at *2 (C.D. Cal. No. 21, 2011) (granting stay pending transfer decision by the JPML "promotes judicial economy . . . avoid[s] duplicative discovery and pretrial management efforts," and "avoids the risk of inconsistent rulings"); *Baron v. Merck & Co., Inc.*, 2006 WL 2521615, at *1 (E.D. Mo. Aug. 30, 2006) (recognizing that MDL transferee court could consider whether to remand); *In re New Eng. Mut. Life Ins. Co. Sales Practices Litig.*, 324 F. Supp. 2d 288, 291-92 (D. Mass. 2004) ("The [JPML] has concluded repeatedly that pending motions to remand MDL-transferred actions to their respective

state courts can be presented to and decided by the transferee judge.");
*In re Western States Wholesale Natural Gas Antitrust Litig.*, 290
F. Supp. 2d 1376, 1378 (J.P.M.L. 2003) ("Plaintiffs in the actions to be
centralized have suggested that a decision in their favor on pending
motions to remand to state court may obviate the need for transfer.  We
note, however, that such motions can be presented to and decided by the
transferee judge."); *In re Ford Motor Co. Crown Victoria Police Interceptor
Prods. Liab. Litig.*, 229 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) ("We note
that any pending motions to remand these actions to their respective state
courts can be presented to and decided by the transferee judge.").

This is precisely the procedure followed in another pending Ignition
Switch Action, *Sumners v. Gen. Motors LLC*, where following New GM's
removal and a motion to remand, the Tennessee district court
administratively closed the case pending final determination by the JPML:
"[i]f the Judicial Panel on Multidistrict Litigation does not enter a final
transfer order in this action, then either party may move to reopen this
action." 1:14-cv-00070, ECF No. 8 (M.D. Tenn. Jun. 17, 2014), Ex. F to
Motion to Stay.  *See* ECF No. 9.[2]  So too in *Green v. Gen. Motors LLC,* No.

_____

[2] Consistent with its Order administratively closing the case, the district court in

1:14-cv-0107, (M.D. Tenn. June 17, 2014) and *People of the State of California v. Gen. Motors LLC,* No. 8:14-cv-01238, (C.D. Cal. Sept. 19, 2014), the presiding courts stayed those actions, notwithstanding pending remand motions, pending JPML determination.  New GM respectfully submits that this Court should do the same here.[3]

The bankruptcy issues presented by Plaintiff here have been—and likely will continue to be—raised time and again in MDL No. 2543.  Judge Furman—who already has decided three remand motions in MDL No. 2543—is well-equipped to decide plaintiff's motion.  *See* Opinion & Order, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Nov. 24, 2014) (ECF No. 431) (granting remand); Memo. Opinion & Order,

---

*Sumners* proceeded to deny the plaintiffs' motion to remand "without prejudice to renew before the [JPML]'s designated District Court." *Id.*, 1:14-cv-00070, ECF No. 31 (M.D. Tenn. July 21, 2014), Ex. F to Motion to Stay. *See* ECF No. 9.

[3] In three other cases, courts in Ignition Switch Actions have proceeded to decide remand, notwithstanding the substantial weight of authority to the contrary.  In *Witherspoon v. Gen. Motors LLC and Gen. Motors Co.*, No. 4:14-cv-00425-HFS (W.D. Mo. June 09, 2014, ECF No. 15), in which the plaintiff challenged Article III standing, the court upheld federal jurisdiction, while in *Melton v. Gen. Motors LLC et al.,* No. 1:14-cv-1815-TWT (N.D. Ga. July 18, 2014, ECF No. 45), and *Stevens et al. v. Gen. Motors LLC et al.,* No. 4:15-cv-00628 (S.D. Tex. April 22, 2015, ECF Nos. 26-27), involving the fraudulent misjoinder/joinder of a co-defendant dealerships, the courts granted remand.  In neither case, however, was the core and exclusive jurisdiction of the Bankruptcy Court at issue in the plaintiffs' remand motions, as it is here.  Because this issue is common to many of the 200 pending Ignition Switch Actions (*i.e.* excluding only those few cases that allege exclusively post-Bankruptcy accidents), and was not at issue in either *Witherspoon*, *Melton*, or *Stevens*, it is that much more important here that remand be decided consistently and uniformly by the MDL court.

12164144v2

*In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y.
Sept. 17, 2014) (ECF No. 307) (denying remand); Memo. Opinion & Order,
*In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y.
May 6, 2015) (ECF No. 937) (denying remand).  Judge Furman also has
recently invited plaintiffs to file renewed motions to remand, should they
choose to do so, in all six other cases where motions to remand were filed
before transfer to MDL No. 2543.  *See* Order, *In re Gen. Motors LLC
Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Mar. 17, 2015) (ECF
No. 662); Order No. 54, *In re Gen. Motors LLC Ignition Switch Litig.*, No.
1:14-md-02543 (S.D.N.Y. May 6, 2015) (ECF No. 93) ("Order No. 54");
Order, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543
(S.D.N.Y. May 12, 2015) (ECF No. 956).  Judge Furman has also ordered
New GM to advise him of any motion to remand filed in a case prior to its
transfer to MDL 2543 within two weeks of the case's transfer to the MDL,
and presumably he will invite renewed motions to remand in such cases as
well, including this one should it be transferred.  *See* Order No. 54.  There
is, therefore, every reason to believe that Judge Furman will decide
Plaintiff's remand motion promptly and efficiently should this case be

12

transferred to MDL No. 2543, and will do so uniformly and consistently with the 200 other cases pending there, preventing inconsistent results.

Under the authorities above and the arguments in New GM's pending Motion to Stay, this case should be stayed to allow the MDL Court to decide Plaintiff's Motion for Remand.

## II.   IF THIS COURT REACHES THE MERITS OF PLAINTIFF'S REMAND MOTION, IT SHOULD DENY THE MOTION.

### A.   The Bankruptcy Court has core and exclusive jurisdiction to determine whether this action is barred by the Bankruptcy Court's Sale Order and Injunction.

Contrary to Plaintiff's assertion that federal subject matter jurisdiction is lacking, this action implicates the core and exclusive jurisdiction of the Bankruptcy Court because it requires judicial construction and/or interpretation of the Bankruptcy Court's Sale Order and Injunction governing the sale of Old GM's assets to New GM.

On June 1, 2009 ("Petition Date"), Motors Liquidation Company, f/k/a General Motors Corporation ("Old GM") filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.  On July 5, 2009, the Bankruptcy Court issued a Sale Order and Injunction approving the sale of substantially all of Old GM's assets to New GM.  *See* ECF No. 1-4.  Under the terms of the

13

Sale Order and Injunction, and the Bankruptcy-Court-approved Amended and Restated Master Sale and Purchase Agreement ("Sale Agreement"), New GM acquired Old GM's assets free and clear of all liens, claims, liabilities and encumbrances, other than certain limited Assumed Liabilities that New GM expressly assumed. *Id.* ¶ 7. The Bankruptcy Court's Sale Order and Injunction explicitly provides that New GM has no responsibility for any liabilities (except for Assumed Liabilities) relating to the operation of Old GM's business, or the production of vehicles and parts before July 2009. *Id.* ¶¶ 8, 9, and 46.

Assumed Liabilities expressly excluded, among other things, "all Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date [July 10, 2009]." *See* ECF No. 1-4 at 89 § 2.3(b)(ix). The Sale Order and Injunction also enjoins "all persons and entities" holding claims against Old GM "or the Purchased Assets arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets . . ., the operation of the Purchased Assets prior to the Closing . . . from asserting [such claims] against [New GM]. . . ." *Id.* at 23 ¶ 8. This injunction expressly applies to rights or claims "under any theory of successor or transferee liability." *Id.*

14

¶ 46.   The Assumed Liabilities included, among other things, liability for death, personal injury, or damage to property

> caused by motor vehicles designed for operation on public roadways or by the component parts of such motors vehicles . . . , which arise directly out of death, personal injury or other injury to Persons or damage to property ***caused by accidents or incidents first occurring on or after the Closing Date*** and arising from such motor vehicles' operation or performance[.]

ECF No. 1-4 at 165 (emphasis added).

The Bankruptcy Court has already considered the question of whether New GM assumed "the liabilities associated with a tort action in which a car accident took place before the [Closing Date] upon which New GM acquired the business of Old GM, but the accident victim died thereafter." *See* Decision on New GM's Motion to Enforce Section 363 Order With Respect to Product Liability Claim of Estate of Beverly Deutsch, *In re Motors Liquidation Co.,* 447 B.R. 142, 143-44 (Bankr. S.D.N.Y. 2011) (copy attached hereto as Exhibit B) ("*Deutsch* Decision").   In its *Deutsch* Decision, the Bankruptcy Court held that the post-Closing-Date death was <u>not</u> "an 'incident[] first occurring on or after the Closing Date,' as that term was used in the [Sale Agreement]." *Id.* at 145.   Thus, the Bankruptcy Court has already rejected Plaintiff's argument that a post-Closing-Date death

15

resulting from a pre-Closing-Date accident is a liability assumed by New GM under the Sale Order and Injunction.

In any event, the Sale Order and Injunction itself explicitly provides that the Bankruptcy Court for the Southern District of New York

> retains exclusive jurisdiction to enforce and implement the terms and provisions of this [Sale] Order [and Injunction], the [Master Purchase Agreement], [and] all amendments thereto . . . in all respects, including, but not limited to, retaining jurisdiction to . . . (c) resolve any disputes arising under or relating to the [], . . . (d) interpret, implement, and enforce the provisions of this Order, [and] (e) protect [New GM] against any of the Retained Liabilities or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets[.]

ECF No. 1-4 ¶ 71.  Plaintiff's remand motion requests an interpretation of certain terms in the Sale Order and Injunction, thus indisputably implicating the Bankruptcy Court's core and exclusive jurisdiction.   Therefore, this action is removable to this Court under 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027.

New GM has informed the Bankruptcy Court of this action (alongside many dozens of others alleging ignition-switch related claims) and filed a motion to enforce the Bankruptcy Court's Sale Order and Injunction with respect to lawsuits, like this one, alleging purported liability against New

16

GM arising from pre-Closing-Date accidents.[4]    On April 15, 2015, the Bankruptcy Court confirmed that claims against New GM based on pre-Closing accidents (*i.e.*, accidents occurring prior to July 10, 2010) are barred.    *In re Motors Liquidation Co.,* No. 09-50026 (REG), 2015 Bankr. LEXIS 1296 (Bankr. S.D.N.Y. Apr. 15, 2015).    The Bankruptcy Court certified its ruling for direct appeal to the Second Circuit.    *Id.* at *29.    The Bankruptcy Court is currently reviewing competing judgments to memorialize its order, and under either version, Plaintiff's claims here will either be dismissed with prejudice or stayed, pending Second Circuit review.    Because plaintiff's arguments can and should be decided there, New GM's removal was entirely proper.

### B.    Plaintiff's permissive abstention and equitable remand arguments should be rejected.

In the alternative, Plaintiff argues for abstention or equitable remand under 28 U.S.C. §§ 1334(c)(1) and 1452(b).    28 U.S.C. section 1334(c)(1) permits a district court to "abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11" if it

---

[4] *See* Notice of Filing of Fifth Supplement to the Chart of Pre-Closing Accident Lawsuits Set Forth in the Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits, *In re Motors Liquidation Co.,* No. 09-50026 (REG), ECF No. 13108 (Bankr. S.D.N.Y. Apr. 15, 2015), attached hereto as Exhibit C.

17

finds that abstention would be "in the interest of justice, or in the interest of comity with State courts or respect for State law." Similarly, subsection 1452(b) allows a district court to which a case has been removed to "remand such claim or cause of action on any equitable ground." In support, Plaintiff argues that the decedent's due process rights were violated because she was incapacitated at the time of Old GM's arguments. But for all of the reasons set forth above, that argument necessarily belongs before the Bankruptcy Court, so that it can be decided uniformly and consistently with all other claimants. There would be nothing equitable in allowing this Plaintiff, unlike all others, to litigate uniquely federal bankruptcy issues in a single state court.[5]

In support of abstention or remand, Plaintiff cites a single, unpublished Louisiana case, *Shamieh v. HCB Financial Corp.,* No. 2:14-cv-02215, 2014 WL 5365452 (W.D. La. Oct. 21, 2014), which has no connection to the circumstances here. There, the court equitably abstained

---

[5] Moreover, the Bankruptcy Court has already addressed the arguments of claimants identically situated to Plaintiff here and determined that those claimants had not established a due process violation. *In re Motors Liquidation,* 2015 Bankr. LEXIS 1296 at *20-21 (noting that the claimants asserting against New GM liability for pre-Closing Date accidents could not establish a due process violation because the Bankruptcy Court had previously heard, considered, and rejected the same arguments brought by those claimants).

12164144v2

and remanded the case to state court after determining, among other things, that the case was not a core proceeding. *Shamieh,* 2014 WL 5366452 at *3-4 (acknowledging that district courts have original but not exclusive jurisdiction over non-core proceedings, but that district courts and their bankruptcy units "have both original and exclusive jurisdiction" over core proceedings). The present action, by contrast, involves a core proceeding, as set forth above. *See, supra,* II.A. Therefore, the Court should reject Plaintiff's argument to remand this case on the basis of equitable remand and/or permissive abstention because this case is subject to the original and exclusive jurisdiction of the Bankruptcy Court.

## CONCLUSION

For all the foregoing reasons, General Motors LLC respectfully requests that this Court grant its Motion to Stay. *See* ECF No. 9. In the

alternative, should this Court reach the merits of Plaintiff's Motion for Remand, it should deny Plaintiff's Motion.

Respectfully submitted,

Bowman and Brooke LLP

By:  /s/ Thomas P. Branigan
Thomas P. Branigan (P41774)
Elizabeth A. Favaro (P69610)
Attorneys for Defendant
41000 Woodward Avenue
Suite 200 East
Bloomfield Hills, MI  48304
248.205.3300 ph / 248.205.3399 fx
tom.branigan@bowmanandbrooke.com
elizabeth.favaro@bowmanandbrooke.com

12164144v2

## CERTIFICATE OF SERVICE

I certify that on May 26, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

        Victor J. Mastromarco, Jr. (P35464)
        Russell C. Babcock (P57662)
        The Mastromarco Firm
        Attorneys for Plaintiff
        1024 N. Michigan Avenue
        Saginaw, MI  48602
        989.752.1414 / 989.752.6202 fx
        Vmastromar@aol.com
        russellbabcock@aol.com

        Bowman and Brooke LLP

By:   /s/ Thomas P. Branigan
        Thomas P. Branigan (P41774)
        Elizabeth A. Favaro (P69610)
        Attorneys for Defendant
        41000 Woodward Avenue
        Suite 200 East
        Bloomfield Hills, MI  48304
        248.205.3300 ph / 248.205.3399 fx
        tom.branigan@bowmanandbrooke.com
        elizabeth.favaro@bowmanandbrooke.com

12164144v2

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BENJAMIN W. PILLARS, as
Personal Representative for the
Estate of KATHLEEN ANN PILLARS,
Deceased,

                         Honorable Thomas J. Ludington

        Plaintiff,           Case:  1:15-cv-11360-TLL-PTM

v.

GENERAL MOTORS LLC,

        Defendant.


**DEFENDANT GENERAL MOTORS LLC'S BRIEF IN SUPPORT OF ITS
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

**<u>INDEX OF EXHIBITS</u>**

A.  Conditional Transfer Order

B.  In Re Motors Liquidation Co. , 447 B.R. 142

C.  Notice of Filing of Fifth Supplement to the Chart of Pre-Closing Accident Lawsuits

12178290v1

# EXHIBIT A

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: GENERAL MOTORS LLC IGNITION
SWITCH LITIGATION**                                    MDL No. 2543

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO −38)

On June 9, 2014, the Panel transferred 15 civil action(s) to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 26 F.Supp.3d 1390 (J.P.M.L. 2014). Since that time, 140 additional action(s) have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable Jesse M Furman.

It appears that the action(s) on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of New York and assigned to Judge Furman.

Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, the action(s) on the attached schedule are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of June 9, 2014, and, with the consent of that court, assigned to the Honorable Jesse M Furman.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed 7 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 7−day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

1:15-cv-13001-TLL-PTM    Doc # 2    Filed 08/26/15    Pg 3 of 4    Pg ID 581

**IN RE: GENERAL MOTORS LLC IGNITION
SWITCH LITIGATION**

MDL No. 2543

### SCHEDULE CTO−38 − TAG−ALONG ACTIONS

| <u>DIST</u> | <u>DIV.</u> | <u>C.A.NO.</u> | <u>CASE CAPTION</u> |
|---|---|---|---|
| MICHIGAN EASTERN | | | |
| MIE | 1 | 15−11360 | Pillars v. General Motors LLC |
| NEBRASKA | | | |
| NE | 8 | 15−00123 | Hofling v. General Motors LLC |

1:15-cv-11360-TLL-PTM    Doc # 10-3    Filed 09/28/15    Pg 1 of 8    Pg ID 582

# EXHIBIT B

# *In re Motors Liquidation Co.*

United States Bankruptcy Court for the Southern District of New York

January 5, 2011, Decided

Chapter 11, Case No. 09-50026(REG), Jointly Administered

**Reporter**
447 B.R. 142; 2011 Bankr. LEXIS 11; 54 Bankr. Ct. Dec. 23

In re: Motors Liquidation Company, et al., f/k/a General Motors Corp., et al., Debtors.

**Counsel:** **[**1]** For General Motors, LLC: Stephen Karotkin, Esq. (argued), Harvey R. Miller, Esq., Joseph H. Smolinsky, Esq., WEIL, GOTSHAL & MANGES LLP, New York, New York.

For Sanford Deutsch, Plaintiff: Barry Novack, Esq. (argued), BARRY NOVACK, Beverly Hills, California.

For Sanford Deutsch: Melissa Pena, Esq., NORRIS MCLAUGHLIN & MARCUS, PA, New York, NY.

**Judges:** Robert E. Gerber, United States Bankruptcy Judge.

**Opinion by:** Robert E. Gerber

## Opinion

[*143] Jointly Administered

DECISION ON NEW GM'S MOTION TO ENFORCE SECTION 363 ORDER WITH RESPECT TO PRODUCT LIABILITY CLAIM OF ESTATE OF BEVERLY DEUTSCH

ROBERT E. GERBER

UNITED STATES BANKRUPTCY JUDGE

In this contested matter in the chapter 11 case of Motors Liquidation Company (formerly, General Motors Corp., and referred to here as "**Old GM**") and its affiliates, General Motors LLC ("**New GM**") seeks a determination from this Court that New GM did not assume the liabilities associated with a tort action in which a car accident took place before the date ("**Closing Date**") upon which New GM acquired the business of Old GM, but the accident [*144] victim died thereafter. [1] The issue turns on the construction of the documents under which New GM agreed to assume liabilities from Old GM—which provided that [**2] New GM would assume liabilities relating to "accidents or incidents" "first occurring on or after the Closing Date"—and in that connection, whether a liability of this character is or is not one of the types of liabilities that New GM thereby agreed to assume.

Upon consideration of those documents, the Court concludes that the liability in question was not assumed by New GM. However, if a proof of claim was not previously filed against Old GM with respect to the accident in question, the Court will permit one to be filed within 30 days of the entry of the order implementing this Decision, without prejudice to rights to appeal this determination.

The Court's Findings of Fact and Conclusions of Law in connection with this determination follow.

Findings of Fact

---

[1] Technically speaking, the motion is denominated as one to Enforce the 363 Sale Order, which protects New GM from liabilities it did not assume. The Court here speaks to the motion's substance.

447 B.R. 142, *144; 2011 Bankr. LEXIS 11, **2

In June 2007, Beverly Deutsch was severely injured in an accident while she was driving a 2006 Cadillac sedan. She survived the car accident, but in August 2009, she died from the injuries that she previously had sustained. [2]

In January 2010, the Estate of Beverly Deutsch, the Heirs of Beverly Deutsch, and Sanford Deutsch (collectively "**Deutsch Estate**") filed a Third Amended Complaint against New GM (and others) in a state court lawsuit in California (the "**Deutsch Estate Action**"), claiming damages arising from the accident, the injuries which Beverly sustained, and her wrongful death. The current complaint superseded the original complaint in the Deutsch Estate Action, which was filed in April 2008, before the filing of Old GM's chapter 11 case.

In July 2009, this Court entered its order (the "**363 Sale Order**") approving the sale of Old GM's assets, under *section 363 of the Bankruptcy Code*, to the entity now known as New GM. The 363 Sale Order, among other things, approved an agreement that was called an Amended and Restated Master Sale and Purchase Agreement (the "**MSPA**").

The MSPA detailed which liabilities would be assumed by New GM, and provided that all other liabilities would be retained by Old GM. The MSPA provided, in its § 2.3(a)(ix), that New GM would not assume any claims with respect to product liabilities (as such [**4] term was defined in the MSPA, "**Product Liability Claims**") of the Debtors except those that "arise directly out of death, personal injury or

other injury to Persons or damage to property caused by *accidents or incidents* first occurring on or after the Closing Date [July 10, 2009] ... " [3] Thus, those Product Liability Claims that arose from "accidents or incidents" occurring before July 10, 2009 would not be assumed by New GM, but claims arising from "accidents or incidents" occurring on or after July 10, 2009 would be.

Language in an earlier version of the MSPA differed somewhat from its final language, as approved by the Court. Before its amendment, the MSPA provided **[*145]** for New GM to assume liabilities except those caused by "accidents, incidents, *or other distinct and discrete occurrences*." [4]

The *363* Sale Order provides that "[t]his Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this **[**5]** Order" and the MSPA, including "to protect the Purchaser [New GM] against any of the Retained Liabilities or the assertion of any ... claim ... of any kind or nature whatsoever, against the Purchased Assets." [5]

Discussion

The issue here is one of contractual construction. As used in the MSPA, when defining the liabilities that New GM would assume, what do the words "accidents or incidents," that appear before "first occurring on or after the Closing Date," mean? It is undisputed that the accident that caused Beverly Deutsch's death took place in June 2007, more than two years prior to the closing. But her death took place after the closing. New GM argues that Beverly Deutsch's injuries

---

[2]   There is no contention **[**3]** by either side that her death resulted from anything other than the earlier accident.

[3]   Amended Master Sale and Purchase Agreement, at § 2.3(a)(ix) (as modified by First Amendment) (emphasis added).

[4]   Amended Master Sale and Purchase Agreement, at § 2.3(a)(ix) (prior to modification by First Amendment) (emphasis added) (typographical error corrected).

[5]   363 Sale Order ¶ 71.

arose from an "accident" and an "incident" that took place in 2007, and that her death did likewise. But the Deutsch Estate argues that while the "accident" took place in 2007, her death was a separate "incident"—and that the latter took place only in August 2009, after the closing of the sale to New GM had taken place.

Ultimately, while the Court respects the skill and fervor with which the point was argued, it cannot agree with the Deutsch Estate. Beverly Deutsch's death in 2009 was **[**6]** the *consequence* of an event that took place in 2007, which undisputedly, was an accident and which also was an incident, which is a broader word, but fundamentally of a similar type. The resulting death in 2009 was not, however, an "incident[] first occurring on or after the Closing Date," as that term was used in the MSPA.

As usual, the Court starts with textual analysis. The key provision of the MSPA, § 2.3(a)(ix), set forth the extent to which Product Liability Claims were assumed by New GM. Under that provision, New GM assumed:

> (ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), *which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date and arising from such motor vehicles' operation or performance* (for avoidance of doubt, Purchaser shall not assume or become liable to pay, perform or discharge,

**[**7]** any Liability arising or contended to arise by reason of exposure to materials utilized in the assembly or fabrication of motor vehicles manufactured by Sellers and delivered prior to the Closing Date, including asbestos, silicates or fluids, regardless of when such alleged exposure occurs). [6]

The key words, of course, are "accidents" and "incidents," neither of which are defined anywhere else in the MSPA, and whose interpretation, accordingly, must **[*146]** turn on their common meaning and any understandings expressed by one side to the other in the course of contractual negotiations. Also important are the words "first occurring on or after the Closing Date," which modify the words "accidents" and "incidents," and shed light on the former words' meaning.

The word "accidents," of course, is not ambiguous. "Accidents" has sufficiently clear meaning on its own, and in any event its interpretation is not subject to debate, as both sides agree that Beverly Deutsch's death resulted from an accident that took place in 2007, at a time when, if "accidents" were the only controlling word, liability **[**8]** for the resulting death would not be assumed by New GM. The ambiguity, if any, is instead in the word "incidents," which is a word that by its nature is more inclusive and less precise.

But while "incidents" may be deemed to be somewhat ambiguous, neither side asked for an evidentiary hearing to put forward parol evidence as to its meaning. Though it is undisputed that "incidents" remained in the MSPA after additional words "or other distinct and discrete occurrences," were deleted, neither side was able, or chose, to explain, by evidence, why the latter words were dropped, and what, if any relevance the dropping of the

---

[6]    Amended Master Sale and Purchase Agreement, at § 2.3(a)(ix) (as modified by First Amendment) (emphasis added).

447 B.R. 142, *146; 2011 Bankr. LEXIS 11, **8

additional words might have as to the meaning of the word "incidents" that remained. The words "or other distinct and discrete occurrences" could have been deleted as redundant, to narrow the universe of claims that were assumed, or for some other reason. Ultimately, the Court is unable to derive sufficient indication of the parties' intent as to the significance, if any, of deleting the extra words.

So the Court is left with the task of deriving the meaning of the remaining words "accidents or incidents" from their ordinary meaning, the words that surround them, canons **[**9]** of construction, and the Court's understanding when it approved the 363 Sale as to how the MSPA would deal with prepetition claims against Old GM. Ultimately these considerations, particularly in the aggregate, point in a single direction—that a death resulting from an earlier "accident[] or incident[]" was not an "incident[] first occurring" after the closing.

Starting first with ordinary meaning, definitions of "incident" from multiple sources are quite similar. They include, as relevant here, [7] "an occurrence of an action or situation felt as a separate unit of experience"; [8] "an occurrence of an action or situation that is a separate unit of experience"; [9] "[a] discrete occurrence or happening"; [10] "something that happens, especially a single event"; [11] "a definite and separate occurrence; an event"; [12] or, as proffered by the Deutsch Estate, "[a] separate **[*147]** and definite occurrence: EVENT." [13] In ways that vary only in immaterial respects, all of the definitions articulate the concept of a separate and identifiable event. And, and of course, from words that follow, "arising from such motor vehicles' operation or performance," the event must be understood to relate to be one that that **[**10]** involves a motor vehicle. Accidents, explosions or fires all fit comfortably within that description. Deaths or other consequences that result from earlier accidents, explosions or fires technically might fit as well, but such a reading is much less natural and much more strained.

Turning next to words that surround the words "accidents or incidents," these words provide **[**11]** an interpretive aid to the words they modify. The word "incident[]" is followed by the words "first occurring." In addition to defining the relevant time at which the incident must take place (*i.e.*, after the closing), that clause inserts the word "first" before "occurring." That suggests, rather strongly, that it was envisioned that some types of incidents could take place over time or have separate sub-occurrences, or that one incident might relate to an earlier incident, with the earliest incident being the one that matters. Otherwise it would be sufficient to simply say "occurring," without adding the word "first." This too

---

[7]   The word "incident" has other meanings, in other contexts, which most commonly follow definitions of the type quoted here. Particularly since the definition proffered by the Deutsch Estate is so similar to the others, the Court does not understand either side to contend that definitions of "incident" in other contexts are relevant here.

[8]   Webster's Third New International Dictionary Unabridged (1993) at 1142.

[9]   Merriam-Webster's Collegiate Dictionary (11th ed. 2003) at 629.

[10]   Black's Law Dictionary (8th ed. 2004) at 777.

[11]   Encarta Dictionary: English (North America), http://encarta.msn.com/encnet/features/dictionary/dictionaryhome.aspx (query word "incident" in search field).

[12]   American Heritage College Dictionary (4th ed. 2004) at 700.

[13]   Deutsch Estate Reply Br. at 4 (quoting Webster's II New College Dictionary (1999) at 559).

09-50026-mg   Doc 13188-5   Filed 06/05/15   Entered 06/05/15 17:40:44   Exhibit 5
1:15-cv-11380-FM   Doc 13188-5   Filed 06/05/15   Entered 06/05/15 17:40:44   ID 581
Pg 33 of 39
Page 5 of 7

447 B.R. 142, *147; 2011 Bankr. LEXIS 11, **11

suggests that the consequences of an incident should not be regarded as a separate incident, or that even if they are, the incident that first occurs is the one that controls.

Canons of construction tend to cut in opposite directions, though on balance they favor New GM. The Deutsch Estate appropriately points to the canon of construction against "mere surplusage," which requires different words of a contract or statute to be construed in a fashion that gives them separate meanings, so that no word is superfluous. [14] The Court would not go as far as to say that **[**12]** the words "accident" and "incident" cannot *ever* cover the same thing—or, putting it another way, that they *always* must be different. [15] But the Court agrees with the Deutsch Estate that they cannot *always* mean the same thing. "Incidents" must have been put there for a reason, and should be construed to add something in at least some circumstances.

But how different the two words "accidents" and "incidents" can properly **[**13]** be understood to be —and in particular, whether "incidents" can be deemed to separately exist [16] when they are a foreseeable consequence, or are the resulting injury, **[*148]** from the

accidents or incidents that cause them—is quite a different matter. A second canon of construction, "*noscitur a sociis,*" provides that "words grouped in a list should be given related meaning." [17] Colloquially, "a word is known by the company it keeps ." [18] For instance, in *Dole*, in interpreting a phrase of the Paper Work Reduction Act, the Supreme Court invoked *noscitur a sociis* to hold that words in a list, while meaning different things, should nevertheless be read to place limits on how broadly some of those words might be construed. The *Dole* court stated:

> [t]hat a more limited reading of the phrase "reporting and recordkeeping requirements" was intended derives some further support from the words surrounding it. The traditional canon of construction, *noscitur a sociis*, dictates that words grouped in a list should be given related meaning. [19]

Here application of the canon against surplusage makes clear, as the Deutsch Estate argues, that "incidents" must at least sometimes mean something different than "accidents"—but application of that canon

---

[14]   *See, e.g., Sprietsma v. Mercury Marine*, 537 U.S. 51, 63, 123 S. Ct. 518, 154 L. Ed. 2d 466 (2003) (a statute's preemption clause, which applied to "a [state or local] law or regulation" did not preempt common law tort claims, because if "law" were read that broadly, it might also be interpreted to include regulations, which would render the express reference to "regulation" in the preemption clause superfluous). *See also Gustafson v. Alloyd Co.*, 513 U.S. 561, 574, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995) ("*Alloyd*") (in statutory construction context, "the Court will avoid a reading which renders some words altogether redundant.").

[15]   As previously noted, "incident" is a word that is inherently broader than "accident." Every accident could fairly be described as an incident. But not every incident could fairly be described as an accident.

[16]   It is important to note that to prevail on this motion, the Deutsch Estate must show that the alleged "incident" that is the resulting death was a wholly separate "incident." **[**14]** Even if the death took place after the Closing Date, if the death was an incident that was part of an earlier incident, it could not be said to be "*first* occurring" after the Closing Date.

[17]   *Dole v. United Steelworkers of America*, 494 U.S. 26, 36, 110 S. Ct. 929, 108 L. Ed. 2d 23 (1990).

[18]   *Alloyd*, 513 U.S. at 575 (applying *noscitur a sociis* in context of statutory interpretation).

[19]   *Dole*, at 36. (internal quotations and citations omitted) (emphasis in original). *See also Massachusetts v. Morash*, 490 U.S. 107, 114-15, 109 S. Ct. 1668, 104 L. Ed. 2d 98 (1989) (quoting *Schreiber v. Burlington Northern Inc.*, 472 U.S. 1, 8, 105 S. Ct. 2458, 86 L. Ed. 2d 1 (1985)); *Alloyd*, 513 U.S. at 575 ("This rule we rely upon to avoid ascribing to one word a *meaning so broad that it is inconsistent with its accompanying words*, thus giving unintended breadth to the Acts of Congress." (emphasis added) (internal quotation marks deleted)).

Page 6 of 7

447 B.R. 142, *148; 2011 Bankr. LEXIS 11, **13

does not tell us when and how. The second canon, *noscitur a sociis*, does that, and effectively trumps the doctrine of surplusage because it tells us that "accidents" and "incidents" **[**15]** should be given related meaning.

The Deutsch Estate argues that the Court should construe a death resulting from an earlier "accident" or "incident" to be a separate and new "incident" that took place at a later time. But ultimately, the Court concludes that it cannot do so. While it is easy to conclude that "accidents" and "incidents," as used in the MSPA, will not necessarily be the same in all cases, they must still be somewhat similar. "Incidents" cannot be construed so broadly as to cover what are simply the consequences of earlier "accidents" or other "incidents."

Applying *noscitur a sociis* in conjunction with the canon against "mere surplusage" tells us that the two words "accidents" and "incidents" must be understood as having separate meanings in at least some cases, but that these meanings should be conceptually related. At oral argument, the Court asked counsel for New GM an important question: if an "incident" would not necessarily be an "accident," what would it be? What would it cover? Counsel for New GM came back with a crisp and very logical answer; he said that "incident" would cover a situation where a car caught fire or had blown up, or some problem had arisen by means **[**16]** other than a collision. [20]

 **[*149]** Conversely, the interpretation for which the Deutsch Estate argues—that "incidents"

refers to *consequences* of earlier accidents or incidents—is itself violative or potentially violative, of the two interpretive canons discussed above. It is violative of *noscitur a sociis*, since a death or other particular injury is by its nature distinct from the circumstance—collision, explosion, fire, or other accident or incident—that causes the resulting injury in the first place. The Deutsch Estate interpretation also tends to run counter to the doctrine against mere surplusage **[**17]** upon which the Deutsch Estate otherwise relies, making meaningless the words "first occurring" which follow the words "accidents or incidents," in any cases where death or other particular injury is the consequence of an explosion, fire, or other non-collision incident that causes the resulting injury.

The simple interpretation, and the one this Court ultimately provides, is that "incidents," while covering more than just "accidents," are similar; they relate to fires, explosions, or other definite events that *cause* injuries and *result* in the right to sue, as contrasted to describing the *consequences* of those earlier events, or that relate to the resulting damages.

Finally, this Court's earlier understanding of the purposes of New GM's willingness to assume certain liabilities of Old GM is consistent with the Court's conclusion at this time as well. When the Court approved GM's 363 Sale, this Court noted, in its opinion, that New GM had chosen to broaden its

---

[20] Counsel for New GM answered:

 Now, what's the difference between an accident or an incident, if it were relevant with respect to product liability claims? And I think there's an easy answer. You could have a car accident. Or you could have a car catching on fire; that's not necessarily an accident; that's an incident. Or a car could blow up with someone in the car. Or something else could happen; some other malfunction could cause a fire or injury to someone, not an accident with another vehicle necessarily; or an accident where you ran off the road. So I think that's easily explained.

Transcript, at 31.

assumption of product liabilities. [21] The MSPA was amended to provide for the assumption of liabilities not just for product liability claims for motor vehicles and parts delivered after the Closing Date (as in the original formulation), [**18] but also, for "all product liability claims arising from *accidents or other discrete incidents* arising from operation of GM vehicles occurring subsequent to the closing of the 363 Transaction, regardless of when the product was purchased." [22] As reflected in the Court's decision at the time, the Court understood that New GM was undertaking to assume the liabilities for "accidents or other discrete incidents" that hadn't yet taken place.

Finally, the Deutsch Estate notes another interpretative canon, that ambiguities in a contract must be read against the drafter. [23] If the matter were closer, the Court might consider doing so. [24] But the language in question is not that ambiguous, [*150] and the relevant considerations, fairly decisively, all tip in the same direction. While it cannot be said that the Deutsch Estate's position is a frivolous one, the issues are not close enough to require reading the language against the drafter.

Conclusion

The Deutsch Estate's interpretation of "accident or incident" is not supportable. Thus, the Debtor's motion is granted, and the Deutsch Estate may not pursue this claim against New GM. [25] New GM is to settle an order consistent with this opinion. The time to appeal from this determination will run from [**20] the time of the resulting order, and not from the date of filing of this Decision.

Dated: New York, New York

January **5**, 2011

*/s/ Robert E. Gerber*

United States Bankruptcy Judge

---

[21]  See *In Re General Motors Corp.*, 407 B.R. 463, 481-82 (Bankr. S.D.N.Y. 2009). *appeal dismissed and aff'd*, 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65 (S.D.N.Y. 2010).

[22]  *Id.* (emphasis added and original emphasis deleted)

[23]  See *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 499 N.Y.S.2d 381 (N.Y. 1985) [**19] ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language"); *Cf. Aetna Casualty & Surety Co. v. General Time Corp.*, 704 F.2d 80, 85 (2d Cir. 1983) ("Since the insurer is assumed to have control over drafting the contract provisions, it is fair to hold it responsible for ambiguous terms, and accord the insured the benefit of uncertainties which the insurer could have, but failed to clarify").

[24]  In that event, the Court would then have to consider the specifics of the negotiating environment at the time. The Deutsch Estate was of course not a party to those negotiations at all. But there was little in the record at the time of the 363 Sale, and there is nothing in the record now, as to who, if anybody, had control over the drafting of any MSPA terms.

[25]  Under the circumstances, however, since the Deutsch Estate's issues were fairly debatable and plainly raised in good faith, the Court will provide the Deutsch Estate with 30 days from the resulting order to file a claim against Old GM if it has not already done so, without prejudice to its underlying position and any rights of appeal.

# EXHIBIT C

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                                               :          Chapter 11
                                                                    :
MOTORS LIQUIDATION COMPANY, *et al.*,      :          Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., *et al.*             :
                                                                    :
                                           Debtors.       :          (Jointly Administered)
-------------------------------------------------------------x

**NOTICE OF FILING OF FIFTH SUPPLEMENT TO THE CHART OF PRE-CLOSING
ACCIDENT LAWSUITS SET FORTH IN THE MOTION OF GENERAL
MOTORS LLC PURSUANT TO 11 U.S.C. §§ 105 AND 363 TO ENFORCE
THE COURT'S JULY 5, 2009 SALE ORDER AND INJUNCTION
AGAINST PLAINTIFFS IN PRE-CLOSING ACCIDENT LAWSUITS**

        **PLEASE TAKE NOTICE** that on April 15, 2015, General Motors LLC filed the

attached *Fifth Supplement to the Chart of Pre-Closing Accident Lawsuits Set Forth in the Motion*

*of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5,*

*2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits* with the

United States Bankruptcy Court for the Southern District of New York.

25374147.1

Dated: New York, New York
      April 15, 2015

Respectfully submitted,

/s/ Scott I. Davidson
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

**FIFTH SUPPLEMENT[1] TO CHART OF
PRE-CLOSING ACCIDENT LAWSUITS
COMMENCED AGAINST NEW GM NOT LISTED
IN MOTION TO ENFORCE**

|   | **Plaintiff** | **Date of Accident** | **Vehicle Year and Model** |
|---|---|---|---|
| 1 | Pillars[2] | November 23, 2005 | 2004 Pontiac Grand Am |
| 2 | Williams[3] | March 19, 2009 | 2003 Cadillac CTS |

---

[1]    Pursuant to the *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits* (the "**Motion to Enforce**") [Dkt. No. 12808-1], New GM reserved the right to supplement the list of Pre-Closing Accident Lawsuits set forth in the Motion to Enforce in the event additional cases were brought against New GM that implicate similar provisions of the Sale Order and Injunction. *See* Motion to Enforce, p. 7 n.6.

[2]    The Action identified in the chart above is captioned *Pillars v. General Motors LLC* pending in the United States District Court for the Eastern District of Michigan, Northern Division (the "**Pillars Action**"). A copy of the complaint filed in the Pillars Action is attached hereto as Exhibit "A."

[3]    The Action identified in the chart above is captioned *Williams v. General Motors, LLC* pending in the United States District Court for the Western District of Louisiana (the "**Williams Action**"). A copy of the complaint filed in the Williams Action is attached hereto as Exhibit "B."