# Exhibit 2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

BENJAMIN W. PILLARS,
as Personal Representative of the Estate of
KATHLEEN ANN PILLARS, deceased,

      Plaintiffs,                Case No. 1:15-cv-11360-TLL-PTM

v.                             Hon. Thomas L. Ludington

GENERAL MOTORS LLC,

      Defendant.

_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR.  (P34564)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan  48602
(989) 752-1414
vmastromar@aol.com

BOWMAN AND BROOKE LLP
THOMAS P. BRANIGAN (P41774)
Attorneys for Defendant
41000 Woodward Ave., Ste. 200 East
Bloomfield Hills, Michigan 48304
(248)205-3300
thomas.branigan@bowmanandbrooke.com

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY

NOW COMES the Plaintiff, BENJAMIN W. PILLARS, as Personal Representative of the Estate of KATHLEEN ANN PILLARS, deceased, by and through his attorneys, THE MASTROMARCO FIRM, and hereby submits his response to Defendant's motion and requests that this Honorable Court deny Defendant's motion for the reasons as set forth more fully in the brief filed in support of this response.

<div style="margin-left: 40%;">

Respectfully submitted,

THE MASTROMARCO FIRM

</div>

Dated: <u>June 9, 2015</u>    By: <u>*/s/ Victor J. Mastromarco, Jr.*</u>
Victor J. Mastromarco, Jr. (P34564)
Attorney for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
<u>vmastromar@aol.com</u>

THE MASTROMARCO FIRM, 1024 N. Michigan Ave., Saginaw, MI 48602 (989) 752-1414

## BRIEF IN SUPPORT OF
## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY

## INTRODUCTION

New GM in its response urges this Court to issue a stay and refrain from ruling on the motion for remand stating that allowing the Judicial Panel on Multidistrict Litigation  to the decide the issue of remand. New GM's argument is misplaced for at least two reasons.

First, a motion for remand has been filed with this Court rather than with the Multidistrict Litigation panel. The motion before the Multidistrict Litigation panel is a motion to vacate the Conditional Transfer Order rather than a motion for remand. A copy of the Multidistrict Litigation Docket Entry is attached as **Exhibit A**. Issues of remand should be decided before all other matters. See University of South Alabama v. American Tobacco Co., 68 F.3d 405, 410 (11th Cir. 1999).

Second, the issue raised by New GM in its notice of removal before this Court is unique as explained more fully in this response. New GM has not raised this issue in any other proceeding. Accordingly, this Court's addressing the issue raised before this Court will not result in an inconsistent ruling.[1]

---

[1] Even if an inconsistent ruling was possible, none of the cases cited by New GM are binding upon this Court and none of the cases cited by New GM stands for the proposition that this Court cannot decide issues of jurisdiction.

THE MASTROMARCO FIRM, 1024 N. Michigan Ave., Saginaw, MI 48602 (989) 752-1414

# ARGUMENT

New GM in its motion does not dispute the fact that it admitted in its notice

of removal that, in the context of Plaintiff's claims against it, it is responsible for

any "occurrences" that happen on or after the July 10, 2009, closing date. Again,

New GM made the following representation in its notice of removal:

> GM LLC admits it ultimately assumed a narrow band of certain liabilities,
> including the following as provided in Section 2.3(a)(ix) of the Sale Order
> and/or the Amended and Restated Master Sale and Purchase Agreement:
>
>> all Liabilities to third parties for death, personal injury, or other
>> injury to Persons or damage to property caused by motor vehicles
>> designed for operation on public roadways or by the component parts
>> of such motor vehicles and, in each case, manufactured, sold or
>> delivered by Sellers (collectively, "Product Liabilities"), which arise
>> directly out of accidents, incidents **_or other distinct and discreet_**
>> **_occurrences that happen on or after the Closing Date [July 10,_**
>> **_2009]_** and arise from such motor vehicles' operation or performance.
>> (Emphasis Added by Plaintiff).

(See page 4, footnote 1 of Notice of Removal - Exhibit 2 to Motion for Remand).

The Court should also note that New GM made the same representations in

paragraph seventeen (17) of its Answer to Plaintiff's Amended Complaint.[2]

Accordingly, New GM's answer to the complaint along with its response to

Plaintiff's motion further demonstrates that there is no dispute as to which version

---

[2] New GM attached a copy of the complaint to its notice of removal as Exhibit D.
The Court should note that the Plaintiff had already amended his complaint and
served said amendment on New GM at the time of removal. For the purpose of this
response, reference to the amended complaint is not necessary since the
changes/additions made in the amendment are not material to the limited issue
before this Court.

of the purchase agreement which New GM has chosen to rely upon in the context of Plaintiff's pending lawsuit before this Court.[3]

The position taken by New GM in the above-captioned lawsuit is significant, since, as the Bankruptcy Court has noted in its rulings, the Amended and Restated Master Sale and Purchase Agreement was superseded by subsequent amendments to said agreement wherein the phrase, "***or other distinct and discreet occurrences that happen on or after the Closing Date [July 10, 2009]***" was removed. A copy of the Bankruptcy Court's Decision is attached as **Exhibit B**.

The undersigned is not aware of a single case where New GM has chosen to rely upon the above-mention language which only appears in the original purchase agreement. In other words, the arguments raised by New GM in the present case are unique.

There is no reason why this Court should not decide the issue. See In re Consol. Fen-Phen Cases, No. 03 CV 3081 (JG), 2003 WL 22682440 (E.D.N.Y. Nov. 12, 2003). A copy of the District Court Decision is attached as **Exhibit C**. In its filings with the MultiDistrict Litigation Panel acknowledges that this Court has the ability to rule on the motion for remand:

---

[3] New GM in its response has not challenged the fact that it is bound by the clear and unequivocal admissions of its attorneys in its submissions to this Court. Barnes v. Owens-Corning Fiberglass Corp., 201 F.3d 815, 829 (6th Cir. 2000), MacDonald v. Gen. Motors Corp., 110 F.3d 337, 340 (6th Cir. 1997).

THE MASTROMARCO FIRM, 1024 N. Michigan Ave., Saginaw, MI 48602 (989) 752-1414

To the contrary, as the Panel also recognized in each of those cases, "under Panel Rule 2.1(d), the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending. Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on a remand motion if it chooses to do so." (12/12/14 Transfer Order (*Alers* and *Green*) at 1 n. 2; 2/5/15 Transfer Order (*Bloom*) at 1–2 n. 1; *accord* 10/15/14 Transfer Order (*Boyd*, *Kandziora*, and *Yagman*) at 1–2 n. 2.)

A copy of New GM's Response to the Motion to Vacate CTO38 is attached as

**Exhibit D**.

Furthermore, the bankruptcy court has never been asked by New GM to rule

upon the original purchase agreement or the language, "***or other distinct and***

***discreet occurrences that happen on or after the Closing Date [July 10, 2009]***".

(See **Exhibit B**, see also Exhibit 6 to Motion for Remand). This fact has been

noted by the bankruptcy court in at least two of its rulings:

> Though it is undisputed that "incidents" remained in the MSPA after additional words "or other distinct and discrete occurrences," were deleted, neither side was able, or chose, to explain, by evidence, why the latter words were dropped, and what, if any relevance the dropping of the additional words might have as to the meaning of the word "incidents" that remained.

(**Exhibit B**).

> The agreement under which the 363 Sale would take place, which had the formal name of "Amended and Restated Master Sale and Purchase Agreement," dated June 26, 2009 (often referred to by the parties as the "ARMSPA" but by this Court as the "Sale Agreement"), was originally filed with the Sale Motion on June 1, 2009. **It was thereafter amended—in respects relevant here (1) to incorporate an agreement with the AGs under which New GM would assume**

Page 6 of 10

> **liabilities under state Lemon Laws, and (2) to provide that New
> GM would assume responsibility for any and all accidents or
> incidents giving rise to death, personal injury, or property
> damage after the date of closing of the 363 Sale, irrespective of
> whether the vehicle was manufactured by Old GM or New GM.**

(Pages 23-24 Exhibit 6 to Motion for Remand). Again, it remains Plaintiff's

position that the phrase, "*or other distinct and discreet occurrences that happen*

*on or after the Closing Date [July 10, 2009]*"is significant.

This fact is further illustrated by a judgment which was recently entered by

the bankruptcy court wherein that court again relies upon the language "incident"

and "accident" on page three (3) of the judgment but makes no mention to the

phrase, "*or other distinct and discreet occurrences that happen on or after the*

*Closing Date [July 10, 2009]*" which only appears in the original version of the

agreement:

> Any claims and/or causes of action brought by the Ignition Switch
> Pre-Closing Accident Plaintiffs that seek to hold New GM liable for
> **accidents or incidents** that occurred prior to the closing of the 363
> Sale are barred and enjoined pursuant to the Sale Order. (Emphasis
> Added by Plaintiff).

A copy of the Bankruptcy Court's Judgment is attached as **Exhibit E**.

New GM also does not challenge in its response to the motion for remand

the proposition that courts are to give the words their ordinary meaning. The

definition of "occurrence" is, "the action, fact, or instance of occurring ...

'something that takes place; an event or incident.'" See the American Heritage

THE MASTROMARCO FIRM, 1024 N. Michigan Ave., Saginaw, MI 48602 (989) 752-1414

Dictionary of the English Language 1219 (5th ed. 2011). A copy of the American Heritage Dictionary definition was attached as Exhibit 6 to Plaintiff's motion for remand. Likewise, the Merriam–Webster's Collegiate Dictionary 858 (11th ed. 2003) defines "occurrence" as, "something that occurs... the action or instance of occurring". A copy of the Merriam–Webster's Dictionary definition was attached as Exhibit 7 to the motion for remand.

As pointed out in Plaintiff's motion for remand, the Plaintiff brought wrongful death causes of action on behalf of the estate. (See Exhibit 3 to Motion for Remand). The death of the decedent on March 24, 2012, occurred almost three (3) years after the bankruptcy closing date, is certainly a distinct and discreet occurrence as the term "occurrence" is defined by two (2) major dictionaries.[4] New GM in its response to the motion for remand does not dispute this fact.

As such, the Plaintiff again requests that this Court deny Defendant's motion for stay and find a lack of subject matter jurisdiction and remand Plaintiff's case back to the Bay County Circuit Court.

---

[4] Furthermore, the death of the decedent was the result of the injuries she sustained from her operation of a General Motors vehicle. (See Exhibit 3 to Motion for Remand).

THE MASTROMARCO FIRM, 1024 N. Michigan Ave., Saginaw, MI 48602 (989) 752-1414

# CONCLUSION

As such and as set forth more fully in the above-mentioned paragraphs, the Plaintiff respectfully requests that the Court deny Defendant's motion for a stay and remand the above-captioned case to the Bay County Circuit Court.

Respectfully submitted,

THE MASTROMARCO FIRM

Dated: June 9, 2015

By: /s/ Victor J. Mastromarco, Jr.
Victor J. Mastromarco, Jr. (P34564)
Attorney for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromar@aol.com

THE MASTROMARCO FIRM, 1024 N. Michigan Ave., Saginaw, MI 48602 (989) 752-1414

## PROOF OF SERVICE

I hereby certify that on **June 9, 2015**, I presented the foregoing papers to the Clerk of the Court for the filing and uploading to the CM/ECF system, which will send notification of such filing to the following: **Andrew Baker Bloomer & Thomas P. Branigan**.

THE MASTROMARCO FIRM

Dated: June 9, 2015

By: */s/ Victor J. Mastromarco, Jr.*
Victor J. Mastromarco, Jr.
Attorney for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromar@aol.com

THE MASTROMARCO FIRM, 1024 N. Michigan Ave., Saginaw, MI 48602 (989) 752-1414

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

BENJAMIN W. PILLARS,
as Personal Representative of the Estate of
KATHLEEN ANN PILLARS, deceased,

      Plaintiffs,                     Case No. 1:15-cv-11360-TLL-PTM

                                       Hon. Thomas L. Ludington
v.

GENERAL MOTORS LLC,

      Defendant.
_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR.  (P34564)
Attorneys for Plaintiff
1024 N. Michigan Avenue
 Saginaw, Michigan  48602
(989) 752-1414
vmastromar@aol.com

BOWMAN AND BROOKE LLP
THOMAS P. BRANIGAN (P41774)
Attorneys for Defendant
41000 Woodward Ave., Ste. 200 East
Bloomfield Hills, Michigan 48304
(248)205-3300
thomas.branigan@bowmanandbrooke.com

_____/

## EXHIBIT INDEX
## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY

| Exhibit A | Notice of Electronic Filing |
|---|---|
| Exhibit B | Decision on New GM's Motion to Enforce Section 363 |
| Exhibit C | Fen-Phen Case |
| Exhibit D | Defendant GM's Response to Plaintiff's Motion to Vacate CTO-38 |
| Exhibit E | Judgment |

From: JPMLCMECF <JPMLCMECF@jpml.uscourts.gov>
To: JPMLCMDECF <JPMLCMDECF@jpml.uscourts.gov>
Subject: Activity in Case MDL No. 2543 IN RE: General Motors LLC Ignition Switch Litigation Motion and Brief to Vacate Conditional Transfer Order
Date: Wed, May 6, 2015 1:55 pm

---

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

United States

United States Judicial Panel on Multidistrict Litigation

## Notice of Electronic Filing

The following transaction was entered by Mastromarco, Victor on 5/6/2015 at 1:55 PM EDT and filed on 5/6/2015
Case Name:      IN RE: General Motors LLC Ignition Switch Litigation
Case Number:    MDL No. 2543
Filer:
Document Number: 712

Docket Text:
MOTION TO VACATE CONDITIONAL TRANSFER ORDER WITH BRIEF IN SUPPORT (CTO-38) *re: pldg. (3 in MIE/1:15-cv-11360)* Filed by Plaintiff Benjamin W. Pillars (Attachments: # (1) Brief Brief in Support of Motion to Vacate CTO 38, # (2) Exhibit 1 - Schedule of Actions, # (3) Exhibit 2 - Defendant's Notice of Removal, # (4) Exhibit 3 - State Court Complaint, # (5) Exhibit 4 - American Heritage Dictionary Print out, # (6) Exhibit 5- Merriam Webster Dictionary Print out, # (7) Exhibit 6 - Shamieh v. HCB Financial, # (8) Exhibit 7 - Decision on Motion to Enforce Sale, # (9) Exhibit 8 - Westlaw Print Out, # (10) Exhibit 9 - State of Michigan Traffic Crash Report, # (11) Exhibit 10 - Affidavit of Russell C. Babcock, # (12) Exhibit 11 - Civil Docket Sheets, # (13) Proof of Service)

Associated Cases: MDL No. 2543, MIE/1:15-cv-11360 (Mastromarco, Victor)

Case Name:      Pillars v. General Motors LLC
Case Number:    MIE/1:15-cv-11360
Filer:          Benjamin W. Pillars
Document Number: 7



Docket Text:
MOTION TO VACATE CONDITIONAL TRANSFER ORDER WITH BRIEF IN SUPPORT (CTO-38) *re: pldg. (3 in MIE/1:15-cv-11360)* Filed by Plaintiff Benjamin W. Pillars (Attachments: # [1] Brief Brief in Support of Motion to Vacate CTO 38, # [2] Exhibit 1 - Schedule of Actions, # [3] Exhibit 2 - Defendant's Notice of Removal, # [4] Exhibit 3 - State Court Complaint, # [5] Exhibit 4 - American Heritage Dictionary Print out, # [6]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Motors Liquidation Company., *et al.*, | ) | Case No. 09-50026(REG) |
| f/k/a General Motors Corp., *et al.* | ) |  |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

DECISION ON NEW GM'S MOTION TO
ENFORCE SECTION 363 ORDER WITH
RESPECT TO PRODUCT LIABILITY CLAIM OF
ESTATE OF BEVERLY DEUTSCH

APPEARANCES:

WEIL, GOTSHAL & MANGES LLP
Counsel for General Motors, LLC
767 Fifth Avenue
New York, New York 10153
By:    Stephen Karotkin, Esq. (argued)
       Harvey R. Miller, Esq.
       Joseph H. Smolinsky, Esq.

BARRY NOVACK
Counsel for Plaintiff Sanford Deutsch
8383 Wilshire Blvd. Suite 830
Beverly Hills, California 90211-2407
By:    Barry Novack, Esq. (argued)

NORRIS MCLAUGHLIN & MARCUS, PA
Local Counsel for Sanford Deutsch
875 Third Ave., 8th Floor
New York, NY 10022
By:    Melissa Peña, Esq.


PLAINTIFF'S
EXHIBIT
B

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

In this contested matter in the chapter 11 case of Motors Liquidation Company
(formerly, General Motors Corp., and referred to here as "**Old GM**") and its affiliates,
General Motors LLC ("**New GM**") seeks a determination from this Court that New GM
did not assume the liabilities associated with a tort action in which a car accident took
place before the date ("**Closing Date**") upon which New GM acquired the business of
Old GM, but the accident victim died thereafter.[1] The issue turns on the construction of
the documents under which New GM agreed to assume liabilities from Old GM—which
provided that New GM would assume liabilities relating to "accidents or incidents" "first
occurring on or after the Closing Date"—and in that connection, whether a liability of
this character is or is not one of the types of liabilities that New GM thereby agreed to
assume.

Upon consideration of those documents, the Court concludes that the liability in
question was not assumed by New GM. However, if a proof of claim was not previously
filed against Old GM with respect to the accident in question, the Court will permit one
to be filed within 30 days of the entry of the order implementing this Decision, without
prejudice to rights to appeal this determination.

The Court's Findings of Fact and Conclusions of Law in connection with this
determination follow.

---

[1]    Technically speaking, the motion is denominated as one to Enforce the 363 Sale Order, which
protects New GM from liabilities it did not assume.  The Court here speaks to the motion's
substance.

1

<u>Findings of Fact</u>

In June 2007, Beverly Deutsch was severely injured in an accident while she was driving a 2006 Cadillac sedan. She survived the car accident, but in August 2009, she died from the injuries that she previously had sustained.[2]

In January 2010, the Estate of Beverly Deutsch, the Heirs of Beverly Deutsch, and Sanford Deutsch (collectively "**Deutsch Estate**") filed a Third Amended Complaint against New GM (and others) in a state court lawsuit in California (the "**Deutsch Estate Action**"), claiming damages arising from the accident, the injuries which Beverly sustained, and her wrongful death. The current complaint superseded the original complaint in the Deutsch Estate Action, which was filed in April 2008, before the filing of Old GM's chapter 11 case.

In July 2009, this Court entered its order (the "**363 Sale Order**") approving the sale of Old GM's assets, under section 363 of the Bankruptcy Code, to the entity now known as New GM. The 363 Sale Order, among other things, approved an agreement that was called an Amended and Restated Master Sale and Purchase Agreement (the "**MSPA**").

The MSPA detailed which liabilities would be assumed by New GM, and provided that all other liabilities would be retained by Old GM. The MSPA provided, in its § 2.3(a)(ix), that New GM would not assume any claims with respect to product liabilities (as such term was defined in the MSPA, "**Product Liability Claims**") of the Debtors except those that "arise directly out of death, personal injury or other injury to Persons or damage to property caused by *accidents or incidents* first occurring on or after

---

[2]    There is no contention by either side that her death resulted from anything other than the earlier accident.

2

the Closing Date [July 10, 2009] ... "[3]  Thus, those Product Liability Claims that arose

from "accidents or incidents" occurring before July 10, 2009 would not be assumed by

New GM, but claims arising from "accidents or incidents" occurring on or after July 10,

2009 would be.

　　　Language in an earlier version of the MSPA differed somewhat from its final

language, as approved by the Court.  Before its amendment, the MSPA provided for New

GM to assume liabilities except those caused by "accidents, incidents, *or other distinct*

*and discrete occurrence*s."[4]

　　　The 363 Sale Order provides that "[t]his Court retains exclusive jurisdiction to

enforce and implement the terms and provisions of this Order" and the MSPA, including

"to protect the Purchaser [New GM] against any of the Retained Liabilities or the

assertion of any ... claim ... of any kind or nature whatsoever, against the Purchased

Assets."[5]

<u>Discussion</u>

　　　The issue here is one of contractual construction.  As used in the MSPA, when

defining the liabilities that New GM would assume, what do the words "accidents or

incidents," that appear before "first occurring on or after the Closing Date," mean?  It is

undisputed that the accident that caused Beverly Deutsch's death took place in June 2007,

more than two years prior to the closing.  But her death took place after the closing.  New

GM argues that Beverly Deutsch's injuries arose from an "accident" and an "incident"

---

[3]　　　Amended Master Sale and Purchase Agreement, at § 2.3(a)(ix) (as modified by First Amendment) (emphasis added).

[4]　　　Amended Master Sale and Purchase Agreement, at § 2.3(a)(ix) (prior to modification by First Amendment) (emphasis added) (typographical error corrected).

[5]　　　363 Sale Order ¶ 71.

that took place in 2007, and that her death did likewise. But the Deutsch Estate argues

that while the "accident" took place in 2007, her death was a separate "incident"—and

that the latter took place only in August 2009, after the closing of the sale to New GM

had taken place.

Ultimately, while the Court respects the skill and fervor with which the point was

argued, it cannot agree with the Deutsch Estate. Beverly Deutsch's death in 2009 was the

*consequence* of an event that took place in 2007, which undisputedly, was an accident

and which also was an incident, which is a broader word, but fundamentally of a similar

type. The resulting death in 2009 was not, however, an "incident[] first occurring on or

after the Closing Date," as that term was used in the MSPA.

As usual, the Court starts with textual analysis. The key provision of the MSPA,

§ 2.3(a)(ix), set forth the extent to which Product Liability Claims were assumed by New

GM. Under that provision, New GM assumed:

> (ix) all Liabilities to third parties for death, personal
> injury, or other injury to Persons or damage to
> property caused by motor vehicles designed for
> operation on public roadways or by the component
> parts of such motor vehicles and, in each case,
> manufactured, sold or delivered by Sellers
> (collectively, "Product Liabilities"), *which arise
> directly out of death, personal injury or other injury
> to Persons or damage to property caused by
> accidents or incidents first occurring on or after the
> Closing Date and arising from such motor vehicles'
> operation or performance* (for avoidance of doubt,
> Purchaser shall not assume or become liable to pay,
> perform or discharge, any Liability arising or
> contended to arise by reason of exposure to
> materials utilized in the assembly or fabrication of
> motor vehicles manufactured by Sellers and
> delivered prior to the Closing Date, including

4

asbestos, silicates or fluids, regardless of when such
alleged exposure occurs).[6]

The key words, of course, are "accidents" and "incidents," neither of which are defined

anywhere else in the MSPA, and whose interpretation, accordingly, must turn on their

common meaning and any understandings expressed by one side to the other in the

course of contractual negotiations.  Also important are the words "first occurring on or

after the Closing Date," which modify the words "accidents" and "incidents," and shed

light on the former words' meaning.

The word "accidents," of course, is not ambiguous.  "Accidents" has sufficiently

clear meaning on its own, and in any event its interpretation is not subject to debate, as

both sides agree that Beverly Deutsch's death resulted from an accident that took place in

2007, at a time when, if "accidents" were the only controlling word, liability for the

resulting death would not be assumed by New GM.  The ambiguity, if any, is instead in

the word "incidents," which is a word that by its nature is more inclusive and less precise.

But while "incidents" may be deemed to be somewhat ambiguous, neither side

asked for an evidentiary hearing to put forward parol evidence as to its meaning.  Though

it is undisputed that "incidents" remained in the MSPA after additional words "or other

distinct and discrete occurrences," were deleted, neither side was able, or chose, to

explain, by evidence, why the latter words were dropped, and what, if any relevance the

dropping of the additional words might have as to the meaning of the word "incidents"

that remained.  The words "or other distinct and discrete occurrences" could have been

deleted as redundant, to narrow the universe of claims that were assumed, or for some

---

[6]       Amended Master Sale and Purchase Agreement, at § 2.3(a)(ix) (as modified by First Amendment)
(emphasis added).

other reason. Ultimately, the Court is unable to derive sufficient indication of the parties'
intent as to the significance, if any, of deleting the extra words.

So the Court is left with the task of deriving the meaning of the remaining words
"accidents or incidents" from their ordinary meaning, the words that surround them,
canons of construction, and the Court's understanding when it approved the 363 Sale as
to how the MSPA would deal with prepetition claims against Old GM. Ultimately these
considerations, particularly in the aggregate, point in a single direction—that a death
resulting from an earlier "accident[] or incident[]" was not an "incident[] first occurring"
after the closing.

Starting first with ordinary meaning, definitions of "incident" from multiple
sources are quite similar. They include, as relevant here,[7] "an occurrence of an action or
situation felt as a separate unit of experience";[8] "an occurrence of an action or situation
that is a separate unit of experience";[9] "[a] discrete occurrence or happening";[10]
"something that happens, especially a single event";[11] "a definite and separate
occurrence; an event";[12] or, as proffered by the Deutsch Estate, "[a] separate and definite
occurrence: EVENT."[13] In ways that vary only in immaterial respects, all of the

---

[7]    The word "incident" has other meanings, in other contexts, which most commonly follow
       definitions of the type quoted here. Particularly since the definition proffered by the Deutsch
       Estate is so similar to the others, the Court does not understand either side to contend that
       definitions of "incident" in other contexts are relevant here.

[8]    Webster's Third New International Dictionary Unabridged (1993) at 1142.

[9]    Merriam-Webster's Collegiate Dictionary (11th ed. 2003) at 629.

[10]   Black's Law Dictionary (8th ed. 2004) at 777.

[11]   Encarta Dictionary: English (North America),
       http://encarta.msn.com/encnet/features/dictionary/dictionaryhome.aspx (query word "incident" in
       search field).

[12]   American Heritage College Dictionary (4th ed. 2004) at 700.

[13]   Deutsch Estate Reply Br. at 4 (quoting Webster's II New College Dictionary (1999) at 559).

definitions articulate the concept of a separate and identifiable event. And, and of course, from words that follow, "arising from such motor vehicles' operation or performance," the event must be understood to relate to be one that that involves a motor vehicle. Accidents, explosions or fires all fit comfortably within that description. Deaths or other consequences that result from earlier accidents, explosions or fires technically might fit as well, but such a reading is much less natural and much more strained.

Turning next to words that surround the words "accidents or incidents," these words provide an interpretive aid to the words they modify. The word "incident[]" is followed by the words "first occurring." In addition to defining the relevant time at which the incident must take place (*i.e.*, after the closing), that clause inserts the word "first" before "occurring." That suggests, rather strongly, that it was envisioned that some types of incidents could take place over time or have separate sub-occurrences, or that one incident might relate to an earlier incident, with the earliest incident being the one that matters. Otherwise it would be sufficient to simply say "occurring," without adding the word "first." This too suggests that the consequences of an incident should not be regarded as a separate incident, or that even if they are, the incident that first occurs is the one that controls.

Canons of construction tend to cut in opposite directions, though on balance they favor New GM. The Deutsch Estate appropriately points to the canon of construction against "mere surplusage," which requires different words of a contract or statute to be construed in a fashion that gives them separate meanings, so that no word is superfluous.[14] The Court would not go as far as to say that the words "accident" and

---

[14]     *See, e.g., Sprietsman v. Mercury Marine*, 537 U.S. 51, 63 (2003) (a statute's preemption clause, which applied to "a [state or local] law or regulation" did not preempt common law tort claims,

"incident" cannot *ever* cover the same thing—or, putting it another way, that they *always* must be different.[15]  But the Court agrees with the Deutsch Estate that they cannot *always* mean the same thing.  "Incidents" must have been put there for a reason, and should be construed to add something in at least some circumstances.

But how different the two words "accidents" and "incidents" can properly be understood to be —and in particular, whether "incidents" can be deemed to separately exist[16] when they are a foreseeable consequence, or are the resulting injury, from the accidents or incidents that cause them—is quite a different matter.  A second canon of construction, "*noscitur a sociis,*" provides that "words grouped in a list should be given related meaning."[17]  Colloquially, "a word is known by the company it keeps …"[18]  For instance, in *Dole,* in interpreting a phrase of the Paper Work Reduction Act, the Supreme Court invoked *noscitur a sociis*  to hold that words in a list, while meaning different things, should nevertheless be read to place limits on how broadly some of those words might be construed.  The *Dole* court stated:

> [t]hat a more limited reading of the phrase
> "reporting and recordkeeping requirements" was
> intended derives some further support from the
> words surrounding it.  The traditional canon of

---

because if "law" were read that broadly, it might also be interpreted to include regulations, which would render the express reference to "regulation" in the preemption clause superfluous).  *See also* Gustafson v. Alloyd Co., 513 U.S. 561, 574 (1995) ("*Alloyd*") (in statutory construction context, "the Court will avoid a reading which renders some words altogether redundant.").

[15]   As previously noted, "incident" is a word that is inherently broader than "accident."  Every accident could fairly be described as an incident.  But not every incident could fairly be described as an accident.

[16]   It is important to note that to prevail on this motion, the Deutsch Estate must show that the alleged "incident" that is the resulting death was a wholly separate "incident."  Even if the death took place after the Closing Date, if the death was an incident that was part of an earlier incident, it could not be said to be "*first* occurring" after the Closing Date.

[17]   *Dole v. United Steelworkers of America,* 494 U.S. 26, 36 (1990).

[18]   *Alloyd,* 513 U.S. at 575 (applying *noscitur a sociis* in context of statutory interpretation).

construction, *noscitur a sociis*, dictates that words grouped in a list should be given related meaning.[19]

Here application of the canon against surplusage makes clear, as the Deutsch Estate argues, that "incidents" must at least sometimes mean something different than "accidents"—but application of that canon does not tell us when and how. The second canon, *noscitur a sociis*, does that, and effectively trumps the doctrine of surplusage because it tells us that "accidents" and "incidents" should be given related meaning.

The Deutsch Estate argues that the Court should construe a death resulting from an earlier "accident" or "incident" to be a separate and new "incident" that took place at a later time. But ultimately, the Court concludes that it cannot do so. While it is easy to conclude that "accidents" and "incidents," as used in the MSPA, will not necessarily be the same in all cases, they must still be somewhat similar. "Incidents" cannot be construed so broadly as to cover what are simply the consequences of earlier "accidents" or other "incidents."

Applying *noscitur a sociis* in conjunction with the canon against "mere surplusage" tells us that the two words "accidents" and "incidents" must be understood as having separate meanings in at least some cases, but that these meanings should be conceptually related. At oral argument, the Court asked counsel for New GM an important question: if an "incident" would not necessarily be an "accident," what would it be? What would it cover? Counsel for New GM came back with a crisp and very

---

[19]    *Dole*, at 36. (internal quotations and citations omitted) (emphasis in original). *See also Massachusetts v. Morash*, 490 U.S. 107, 114-15 (1989) (quoting *Schreiber v. Burlington Northern Inc.*, 472 U.S. 1, 8 (1985)); *Alloyd*, 513 U.S. at 575 ("This rule we rely upon to avoid ascribing to one word a *meaning so broad that it is inconsistent with its accompanying words*, thus giving unintended breadth to the Acts of Congress." (emphasis added) (internal quotation marks deleted)).

9

logical answer; he said that "incident" would cover a situation where a car caught fire or had blown up, or some problem had arisen by means other than a collision.[20]

Conversely, the interpretation for which the Deutsch Estate argues—that "incidents" refers to *consequences* of earlier accidents or incidents—is itself violative or potentially violative, of the two interpretive canons discussed above. It is violative of *noscitur a sociis*, since a death or other particular injury is by its nature distinct from the circumstance—collision, explosion, fire, or other accident or incident—that causes the resulting injury in the first place. The Deutsch Estate interpretation also tends to run counter to the doctrine against mere surplusage upon which the Deutsch Estate otherwise relies, making meaningless the words "first occurring" which follow the words "accidents or incidents," in any cases where death or other particular injury is the consequence of an explosion, fire, or other non-collision incident that causes the resulting injury.

The simple interpretation, and the one this Court ultimately provides, is that "incidents," while covering more than just "accidents," are similar; they relate to fires, explosions, or other definite events that *cause* injuries and *result* in the right to sue, as contrasted to describing the *consequences* of those earlier events, or that relate to the resulting damages.

---

[20]    Counsel for New GM answered:

> Now, what's the difference between an accident or an incident, if it were relevant with respect to product liability claims? And I think there's an easy answer. You could have a car accident. Or you could have a car catching on fire; that's not necessarily an accident; that's an incident. Or a car could blow up with someone in the car. Or something else could happen; some other malfunction could cause a fire or injury to someone, not an accident with another vehicle necessarily; or an accident where you ran off the road. So I think that's easily explained.

Transcript, at 31.

Finally, this Court's earlier understanding of the purposes of New GM's willingness to assume certain liabilities of Old GM is consistent with the Court's conclusion at this time as well. When the Court approved GM's 363 Sale, this Court noted, in its opinion, that New GM had chosen to broaden its assumption of product liabilities.[21] The MSPA was amended to provide for the assumption of liabilities not just for product liability claims for motor vehicles and parts delivered after the Closing Date (as in the original formulation), but also, for "all product liability claims arising from *accidents or other discrete incidents* arising from operation of GM vehicles occurring subsequent to the closing of the 363 Transaction, regardless of when the product was purchased."[22] As reflected in the Court's decision at the time, the Court understood that New GM was undertaking to assume the liabilities for "accidents or other discrete incidents" that hadn't yet taken place.

Finally, the Deutsch Estate notes another interpretative canon, that ambiguities in a contract must be read against the drafter.[23] If the matter were closer, the Court might consider doing so.[24] But the language in question is not

---

[21]    See *In Re General Motors Corp.*, 407 B.R. 463, 481-82 (Bankr. S.D.N.Y. 2009). *appeal dismissed and aff'd,* 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65 (S.D.N.Y. 2010).

[22]    *Id.* (emphasis added and original emphasis deleted)

[23]    See *Jacobson v. Sassower*, 66 N.Y.2d 991, 993 (N.Y. 1985) ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language"); *Cf. Aetna Casualty & Surety Co. v. General Time Corp.*, 704 F.2d 80, 85 (2d Cir. 1983) ("Since the insurer is assumed to have control over drafting the contract provisions, it is fair to hold it responsible for ambiguous terms, and accord the insured the benefit of uncertainties which the insurer could have, but failed to clarify").

[24]    In that event, the Court would then have to consider the specifics of the negotiating environment at the time. The Deutsch Estate was of course not a party to those negotiations at all. But there was little in the record at the time of the 363 Sale, and there is nothing in the record now, as to who, if anybody, had control over the drafting of any MSPA terms.

11

that ambiguous, and the relevant considerations, fairly decisively, all tip in the

same direction.  While it cannot be said that the Deutsch Estate's position is a

frivolous one, the issues are not close enough to require reading the language

against the drafter.

<div align="center">Conclusion</div>

The Deutsch Estate's interpretation of "accident or incident" is not

supportable.  Thus, the Debtor's motion is granted, and the Deutsch Estate may

not pursue this claim against New GM.[25]  New GM is to settle an order consistent

with this opinion.  The time to appeal from this determination will run from the

time of the resulting order, and not from the date of filing of this Decision.

Dated: New York, New York                     _s/Robert E. Gerber____
       January 5, 2011                     United States Bankruptcy Judge

---

[25]        Under the circumstances, however, since the Deutsch Estate's issues were fairly debatable and plainly raised in good faith, the Court will provide the Deutsch Estate with 30 days from the resulting order to file a claim against Old GM if it has not already done so, without prejudice to its underlying position and any rights of appeal.

<div align="center">12</div>

2003 WL 22682440
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

In re CONSOLIDATED FEN–PHEN CASES

No. 03 CV 3081(JG), CV–03–3082, CV–
03–3594, CV–03–3595, CV–03–3885, CV–
03–3886, CV–03–3887, CV–03–3889, CV–
03–3898, CV–03–4869.   |   Nov. 12, 2003.

Consumers sued manufacturer of diet drugs and its
subsidiaries in state court, seeking recovery under New
York law for personal injuries purportedly caused by use
of drugs, asserting claims for negligence, strict liability,
breach of warranty, fraud and misrepresentation, concert
of action, alternative liability, market share liability, and
enterprise liability. Manufacturer removed action to federal
court. Consumers moved to remand to state court. The
District Court, Gleeson, J., held that nondiverse subsidiary
was fraudulently joined to avoid removal.

Motion denied.

West Headnotes (4)

[1]    **Federal Courts**
       ⌦ Effect of transfer and subsequent
       proceedings
       District courts retain jurisdiction during
       pendency of conditional transfer to multidistrict
       litigation panel to decide motion to remand
       removed action to state court. 28 U.S.C.A. §
       1407.

       1 Cases that cite this headnote

[2]    **Removal of Cases**
       ⌦ Improper or collusive joinder of parties
       Nondiverse subsidiary of manufacturer of diet
       drugs was fraudulently joined as defendant
       to avoid removal to federal court of putative
       class action brought by consumers to recover
       for personal injuries allegedly caused by
       use of drugs; consumers could not possibly

recover from subsidiary, since subsidiary neither
marketed nor sold drugs in United States.

9 Cases that cite this headnote

[3]    **Negligence**
       ⌦ Necessity and Existence of Duty
       **Torts**
       ⌦ Duty and breach thereof in general
       Under New York law, defendant must owe duty
       to plaintiff, which is not merely general duty
       to society, but specific duty to injured person;
       without duty running directly to injured person
       there can be no liability.

       Cases that cite this headnote

[4]    **Negligence**
       ⌦ Contractual duty
       **Torts**
       ⌦ Contractual duty
       Contractual obligation will generally not give
       rise to tort liability in favor of third party under
       New York law.

       Cases that cite this headnote



**Attorneys and Law Firms**

Denise Rubin, Napoli, Kaiser, Bern & Associates, LLP, Great
River, New York, for Plaintiffs.

Mario D'Angelo, Hariton & D'Angelo, Great River, New
York, for Plaintiffs.

Michael D. Schissel, Pamela Miller, Arnold & Porter, New
York, NY, for Wyeth Defendants.

Raquel Millman, Bingham & McCutchen, New York, NY,
for Defendant Celltech.

*MEMORANDUM AND ORDER*

GLEESON, J.

**\*1** THIS DOCUMENT RELATES TO CV–03–3082, CV–
03–3594, CV–03–3595, CV–03–3885, CV–03–3886, CV–

03–3887, CV–03–3889, CV–03–3898, CV–03–3899, CV–03–3900, CV–03–3901, CV–03–3902, CV–03–3903, CV–03–3904, CV–03–3905, CV–03–3908, CV–03–3910, CV–03–3912, CV–03–3967, CV–03–3968, CV–03–4122, CV–03–4123, CV–03–4357, CV–03–4869.

In these twenty-five actions, plaintiffs [1] seek recovery under New York law for personal injuries purportedly arising from their use of the drugs Pondimin (fenfluramine) and Redux (dexfenfluramine) and/or phentermine, otherwise known collectively as the diet drug "Fen–Phen." Fen–Phen was manufactured, marketed and sold by Wyeth, formerly known as American Home Products Corp. ("Wyeth"), and other Wyeth affiliates (collectively the "Wyeth defendants"). [2] These actions were commenced in New York state court and removed by the Wyeth defendants on the basis of diversity citizenship. The plaintiffs now move to remand these actions back to state court on the ground that subject matter jurisdiction is lacking. In particular, they maintain that there is no diversity because one of the Wyeth defendants, Wyeth–Ayerst International, Inc. ("Wyeth International"), is a New York corporation and plaintiffs are citizens of New York. For the reasons set forth below, the motion is denied.

## BACKGROUND

Over six years ago, individuals who had allegedly ingested and suffered various heart injuries from Fen–Phen filed a class action in New York Supreme Court against the Wyeth defendants—*In Re: New York Diet Drug Litigation* (Index No. 700000/98) (the *"Diet Drug Litigation"* ). In the complaint (the "Master Complaint"), various New York causes of action were alleged against, among other entities, the Wyeth defendants that developed, marketed and sold Fen–Phen in New York. Wyeth International, a defendant in the cases before me, was not named in the Master Complaint. These causes of action included negligence, strict product liability, breach of express warranty, breach of implied warranty, fraud and misrepresentation, negligence per se, concert of action, alternative liability, market share liability and enterprise liability. (Master Compl. Sec. A.) Eventually, the parties in the *Diet Drug Litigation* reached settlement.

The non-settling plaintiffs exercised their right to file suit against the Wyeth defendants (in New York state court) by filing "opt-out" forms. The plaintiffs in the present case filed such forms in the *Diet Drug Litigation.* In their amended complaints, these plaintiffs adopted the ten causes of action listed above from the Master Complaint in the *Diet Drug*

*Litigation,* without any modification. (Amend.Compl.¶ 15.) Plaintiffs did modify the roster of defendants, however. In addition to the Wyeth entities who were named in the original suit, plaintiffs added Wyeth International, a New York corporation. (Amend Compl. ¶ 14.) Wyeth International is owned by a company that is a wholly-owned subsidiary of Wyeth. As noted earlier, plaintiffs are also citizens of New York.

*2 The Wyeth defendants removed the actions, notwithstanding the absence of complete diversity, and challenge what they perceive to be the "fraudulent joinder" of a diversity-destroying defendant—Wyeth International. Plaintiffs then filed motions to remand to state court.

The Wyeth defendants also notified the Judicial Panel on Multidistrict Litigation (the "MDL Panel") as to the existence of these cases (as well as related cases pending in the Southern District of New York). In so doing, they wish to facilitate the transfer of these cases to the Eastern District of Pennsylvania for consolidation (for pretrial purposes) with MDL No. 1203 (the "MDL Court"). The MDL Court has been handling the federal diet drug litigation since 1998. *See In re: Diet Drugs Products Liability Litig.,* 990 F.Supp. 834 (J.P.M.L.1998). Thereafter, on August 26, 2003, the MDL Panel issued an order that conditionally transferred these actions (as well as the related actions in the Southern District of New York) to the MDL Court. The plaintiffs here have challenged that order. The MDL Panel has announced that it will hear argument on that challenge on November 20, 2003.

## DISCUSSION

### A. *The Conditional Transfer to the MDL Court*
The Wyeth defendants request that I defer consideration of plaintiffs' remand motions until the MDL Panel has made the determination as to final transfer of these actions to the MDL Court. In particular, they believe that by doing so, I will "conserve judicial resources and ensure that similar issues of fraudulent joinder are decided uniformly and consistently by a court with intimate familiarity and experience in the diet drug cases." (Def.'s Mem. Law Opp. Pls' Mot. Remand at 5.)

[1]   I disagree. As plaintiffs point out, district courts retain jurisdiction during the pendency of a conditional transfer to decide remand orders. *See* Panel Rule 5.1, 199 F.R.D. 425, 427 (2001) ("The pendency of a ... conditional transfer order ... before the Panel concerning transfer ... of an action

pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court."). Moreover, the MDL Panel encouraged me to decide the issue: "If you have a motion pending before you in the action—-particularly a motion to remand to state court ... you are encouraged to rule on the motion unless you conclude that the motion raises issues likely to arise in other actions in the transferee court, should we order transfer, and would best be decided there." (Sept. 24, 2003 Ltr. from MDL Panel.)

While it is true that the MDL Court has previously decided fraudulent joinder issues, it has not determined the exact issue here—the joinder of an entity marketing Fen–Phen in foreign countries. Rather, the MDL Court dealt with the different issue of joinder of pharmacies under the "learned intermediate rule," as well as the joinder of physicians. See, e.g., In re Diet Drugs Prods. Liability Litig., 220 F.Supp.2d 414 (E.D.Pa.2002). Thus, the rationale of institutional competence is not strongly implicated here. As to uniformity, and whether this issue is likely to arise in other actions in the transferee court, I am aware that Judge Denny Chin in the Southern District of New York has heard argument on these cases, and to my knowledge has not decided to defer to the MDL Court. [3]

*3   In short, I do not conclude that the remand issue raised here would best be decided by the transferee court. The cases cited by the Wyeth defendants do not counsel otherwise. [4] Thus, I now proceed to the fraudulent joinder issue.

**B. Remand**

**1. The Standard for Fraudulent Joinder**
The Second Circuit set the standard for fraudulent joinder in *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459 (2d Cir.1998):

> In order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence ... that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. The defendant seeking removal bears a heavy burden

of proving fraudulent joiner (sic), and all factual and legal issues must be resolved in favor of the plaintiff.

*Pampillonia,* 138 F.3d at 460–61.

The language "no possibility" has been interpreted as meaning no "reasonable possibility" or "no reasonable basis." *See In re Rezulin Prods. Liability Litig.,* 133 F.Supp.2d 272, 280 & n. 4 (S.D.N.Y.2001) (explaining that "no possibility" language cannot be taken literally because then no case would meet the standard for fraudulent joinder). It has also been interpreted more strictly, as literally meaning "no possibility." *See Arseneault v. Congoleum Corp.,* No. 01 Civ. 10657, 2002 WL 472256, at *5 n. 4 (S.D.N.Y. Mar.26, 2002) (disagreeing with *In re Rezulin'* s interpretation and favoring literal "no possibility" standard); *see also Stan Winston Creatures, Inc. v. Toys "R" US, Inc.,* No. 02 Civ. 9809, 2003 WL 1907978, at *4 (S.D.N.Y. Apr.17, 2003) ("legally impossible"); *Nemazee v. Premier, Inc.,* 232 F.Supp.2d 172, 178 (S.D.N.Y.2002) ("Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted.") (citation omitted).

In making this inquiry, courts can look beyond the pleadings to determine if the pleadings can state a cause of action. *See Arseneault,* 2002 WL 472256, at *6 (in deciding fraudulent joinder issue, looking outside the pleadings to depositions and other evidence in the record because "[t]he Second Circuit ... has said that, on jurisdictional issues 'federal courts may look outside [the] pleadings to other evidence in the record[.]' ') (quoting *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Props. Meriden Square, Inc.,* 30 F.3d 298, 305 (2d Cir.1994)); *see also, e.g., Pampillonia,* 138 F.3d at 461–62 (looking to affidavits to determine if plaintiff's complaint alleged sufficient factual foundation to support his claims); *In re Rezulin,* 133 F.Supp.2d at 281–82 (same).

**2. Claims of Strict Liability, Breaches of Warranty and Negligence Per Se**
*4   [2]   Plaintiffs allege violations of New York law on the theory that the Wyeth defendants were "product defendants" who, among other things, manufactured, promoted and sold Fen–Phen in New York. [5]   Based on this theory, plaintiffs assert that because Wyeth International marketed Fen–Phen in New York, it is liable based on strict liability, breaches of

09-50026-mg    Doc 13195-2    Filed 06/14/15    Entered 06/11/15 16:31:25    Exhibit 2
1:25-cv-11300-TFM    Doc 13195-2    Filed 06/09/15    Pg 31 of 65    ID 658
Pg 31 of 65

In re Consolidated Fen-Phen Cases, Not Reported in F.Supp.2d (2003)

express and implied warranty, and negligence per se. (Master Compl. ¶¶ 17–26, 34–38); (Amend.Compl.¶ 15.)[6]

Under those theories, Wyeth International's products must have been the products causing plaintiffs' injuries or they must have been in the direct chain of distribution. *See Watson v. Sharp Air Freight Servs., Inc.*, 788 F.Supp. 722, 725 (E.D.N.Y.1992) (purported violation of statute not basis for claim of negligence per se where defendant not among class of companies regulated by statute); *Joseph v. Yenkin Majestic Paint Corp.*, 261 A.D.2d 512, 512, 690 N.Y.S.2d 611 (2d Dep't 1999) ("Liability may not be imposed for breach of warranty or strict products liability upon a party that is outside the manufacture, selling, or distribution chain.") (citations omitted); *Hymowitz*, 73 N.Y.2d at 504–05, 541 N.Y.S.2d 941, 539 N.E.2d 1069 ("In a products liability action, identification of the exact defendant whose conduct injured the plaintiff is, of course, generally required.")

Here, there is no possible recovery (reasonable or otherwise)[7] from Wyeth International because it did not market or sell Fen–Phen in New York. Thus, it could not be a "product defendant" and it could not be liable under theories of strict liability, breaches of express and implied warranty or negligence per se. I find that the evidence offered by the Wyeth defendants in this regard is clear and convincing. They presented affidavits of John M. Alivernini and Michael A. Donnella, assistant secretaries of Wyeth International. The affidavits state that Wyeth International neither marketed nor sold drugs in the United States. (*See* Alivernini Aff. ¶ 4; Donnella Aff. ¶ 4.) Furthermore, the Wyeth defendants introduced the deposition of Bernard Poussot, the former president of Wyeth International, in which he testified that Wyeth International did not market Redux and marketed only Pondimin in Canada and Mexico. (*See* Poussot Dep. at 30–31.)

Plaintiffs attempt to create an issue of fact on this issue with the so-called "Jenny Craig letter." This letter, from Leslie Koll of the Jenny Craig weight loss center to Robert Essner, dated February 22, 1996, documented a meeting between the two regarding the United States launch of Redux. Underneath Essner's name is Wyeth International. Plaintiffs assert that this letter establishes the possibility that they can state a cause of action against Wyeth International as a "product defendant." I disagree. The Wyeth defendants have clearly demonstrated that this letter was mistakenly addressed to Wyeth International. When that letter was written, Essner was the president of Wyeth–Ayerst Laboratories ("WALD")

(Essner Dep. at 21–23), and the president of Wyeth International was Poussot (Poussot Dep. at 30). Furthermore, as earlier noted, Wyeth International did not market or sell either of the two drugs in question in the United States, and did not sell or market Redux (the drug mentioned in the Jenny Craig letter) anywhere at all. I also note that plaintiffs' counsel conceded their position during oral argument before Judge Chin in *Hopping v. American Home Products Corp.*, Index No. 03 Civ. 3499(DC) (S.D.N.Y. July 24, 2003).[8]

 *5 Plaintiffs also contend that there is a receipt memorializing a donation by Wyeth International to the American Dietetic Association, and that this shows that they can possibly assert the claims discussed above against Wyeth International. But the Wyeth defendants have clearly shown that the donation came from WALD, by producing the pertinent receipts and letter documentation. (*See* Schissel Decl., Exs. O, P.) In any event, even assuming that Wyeth International did make such a contribution, it is unclear how that would support a theory that Wyeth International marketed Fen–Phen in New York, and plaintiffs have failed to articulate any such reason.[9] Accordingly, all of plaintiffs' claims that depend on Wyeth International being a product defendant fail. The only remaining claims are negligence, fraud and misrepresentation.

**3. Claims of Negligence, Fraud and Misrepresentation**
Perhaps in recognition of the frailties of their theory of liability premised on Wyeth International being a product defendant, plaintiffs also assert that Wyeth International is liable based on a strained, indirect theory of liability. Specifically, plaintiffs assert that Wyeth International

> was responsible for monitoring, gathering, and reporting on all adverse drug events and reports in foreign medical literature relative to injuries caused by Fen–Phen in markets outside the United States ... that [Wyeth International] had a duty to plaintiff[s] to faithfully perform these safety surveillance activities and that its failure to properly execute its obligations under Wyeth's internal [company] policy delayed Wyeth reporting the harmful effects of and injuries caused by fen-phen to the FDA [Food and Drug Administration].

> As a result defendants' dangerous
> and defective diet drugs remained
> on the market and were ingested by
> plaintiff[s] who suffered serious fen-
> phen related heard valve injuries.

(Pls' Reply Mem. Supp. Mot. Remand at 8.) This eleventh
hour claim fails to defeat federal jurisdiction.

Plaintiffs have neglected to allege their new theory in
the Master Complaint in state court or in their Amended
Complaints, before me. Although I believe that this lapse is
fatal to their position, *see Vera v. Saks & Co.,* 335 F.3d 109,
116 n. 2 (2d Cir.2003) ("we generally evaluate a defendant's
right to remove a case to federal court at the time the
removal notice is filed.") (citing *Pullman,* 305 U.S. at 537));
*In re Rezulin,* 133 F.Supp.2d at 284–285 & n. 35 (rejecting
plaintiffs' assertion that they can avoid removal by curing
their complaint's deficiencies by amendment and that this
possibility requires remand) (citing, e.g., *Pullman,* 305 U.S.
at 537–38)); *see also Pampillonia,* 138 F.3d at 461 (joinder
is to be determined "based on the pleadings"), I nonetheless
address the merits of this new theory.

Plaintiffs asserted at oral argument that Wyeth International
had independent liability to the New York plaintiffs based on
a violation of an internal company reporting policy, pursuant
to which it was obligated to report adverse drug events in
other countries to Wyeth. (*See* Oct. 24, 2003 Hr'g Tr. at 17–
18.) This is not so.

**\*6 [3]** Under New York law, a defendant must owe a
duty to the plaintiff. *See, e.g., Espinal v. Melville Snow
Contractors, Inc.,* 98 N.Y.2d 136, 138, 746 N.Y.S.2d 120,
773 N.E.2d 485 (2002). This duty is "not merely a general
duty to society but a specific duty to ... the injured person."
*Hamilton,* 96 N.Y.2d at 232, 727 N.Y.S.2d 7, 750 N.E.2d
1055 (2001). "Without a duty running directly to the injured
person there can be no liability....". *Lauer v. City of New
York,* 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112, 733 N.E.2d 184
(2000). Here, Wyeth International did not owe the plaintiffs
a duty to report or warn.

For example, in *Hamilton,* victims of gun violence, who
could not identify the manufacturer of the gun that injured
them, sued several gun makers on the theory that they caused
plaintiffs' harm by negligently marketing guns in a way that
created a market for criminals. The New York Court of
Appeals refused to impose a duty on the gun manufacturers
because the connection between the defendants and plaintiffs'

injuries was too attenuated, "running through several links in
a chain consisting of at least the manufacturer, the federally
licensed distributor or wholesaler, and the first retailer."
*Hamilton,* 96 N.Y.2d at 234, 727 N.Y.S.2d 7, 750 N.E.2d
1055. Here too, the connection between Wyeth International
and the plaintiffs' injury is remote: plaintiffs allege that (a)
Wyeth International failed to report adverse drug effects
to Wyeth; (b) if it had, Wyeth would have reported those
irregularities to the FDA; (c) if the FDA learned of these
problems, it would have pulled Fen–Phen from the market
sooner, and (d) if the FDA did that, then the plaintiffs would
not have ingested the harmful drugs.

**[4]** Moreover, it is well established that a contractual
obligation (let alone an obligation arising from a mere internal
company policy) "will generally not give rise to tort liability
in favor of a third party." *Espinal,* 98 N.Y.2d at 138, 746
N.Y.S.2d 120, 773 N.E.2d 485 (citation omitted). The New
York Court of Appeals has held that there are only

> three situations in which a party who enters into a
> contract to render services may be said to have assumed
> a duty of care—and thus be potentially liable in tort—to
> third persons: (1) where the contracting party, in failing
> to exercise reasonable care in the performance of his
> duties, "launche[s] a force or instrument of harm"; (2)
> where the plaintiff detrimentally relies on the continued
> performance of the contracting party's duties and (3) where
> the contracting party has entirely displaced the other party's
> duty to maintain the premises safely. These principles are
> firmly rooted in our case law, and have been generally
> recognized by other authorities.

*Espinal,* 98 N.Y.2d at 140, 746 N.Y.S.2d 120, 773 N.E.2d
485 (citations omitted). None of these factors is present here.
Indeed, in the present case, there is not even a bond as
significant as a contract—there is only an internal company
policy.

By way of illustration, in *Eaves Brooks Costume Co., Inc.
v. Y.B.H. Realty Corp.,* 76 N.Y.2d 220, 557 N.Y.S.2d 286,
556 N.E.2d 1093 (1990), the New York Court of Appeals
held that a commercial tenant could not recover property
damages against a sprinkler system maintenance company
and an alarm company (who were both under contract
with the building's owner) when the sprinkler and alarm
malfunctioned. The court reasoned that the plaintiff had a
right to seek damages directly from the building's owner,
who was in a much better position than the contractors to
insure against loss, and also stressed that the limited scope

09-50026-mg    Doc 13195-2    Filed 06/14/15    Entered 06/11/15 16:31:25    Exhibit 2
10-cv-11386-TJM    Doc 24-1    Filed 06/03/10    Pg 33 of 65
In re Consolidated Fen-Phen Cases, Not Reported in F.Supp.2d (2003)

of the contractors' undertakings were reflected in the low fees they were paid for their maintenance services. *Eaves Brooks,* 76 N.Y.2d at 227, 557 N.Y.S.2d 286, 556 N.E.2d 1093. Similarly, plaintiffs here presumably have a right to seek damages directly from the manufacturer/marketer of the drugs they ingested (*i.e.,* the Wyeth entities who sold Fen–Phen in New York), and indeed, those parties who directly manufactured/marketed the drugs at issue would be in a better position to insure against the harm alleged. In addition, the mere internal reporting policy upon which plaintiffs rely suggests the limited nature of Wyeth International's undertaking.

*\*7* Even if Wyeth International had been retained by Wyeth for the sole purpose of reporting the adverse drug events in other counties, it would have had no duty to these plaintiffs. The New York Court of Appeals has defined the duty of care to third parties in such situations "narrowly, more narrowly than other jurisdictions." *Ossining Union Free School Dist. v. Anderson LaRocca Anderson,* 73 N.Y.2d 417, 424, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989). Absent, at the very least, a showing that reliance by the plaintiffs on the data was the "very purpose" of Wyeth International's reporting requirement, there could be no duty. *Id.* at 424, 541 N.Y.S.2d 335, 539 N.E.2d 91. *See generally, General Motors*

*Corp. v. Villa Marin Chevrolet, Inc.,* No. 98–5206, 2000 WL 271965, at \*23–26 (E.D.N.Y. Mar.7,2000) (canvassing New York cases regarding privity requirement in negligent misrepresentation cases.) [10]

The fraud claim is equally without merit. *See Kaufman v. Cohen,* 307 A.D.2d 113, 119, 760 N.Y.S.2d 157 (1st Dep't 2003) ("To state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury .... [or] a fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information.") (citations omitted). In any event, at oral argument plaintiffs conceded this claim. (*See supra* Part B.2, note 6.)

## CONCLUSION

For the foregoing reasons, the motion to remand is denied as to all plaintiffs. [11]

So Ordered.

Footnotes

1    This opinion will refer to all plaintiffs collectively, as plaintiffs' counsel has informed me that all of their claims, and the pertinent facts of their cases, are the same, with the exception of those plaintiffs who have spouses that have filed loss of consortium claims. Plaintiffs are Ann Mattarelliano, Lewis and Hadar Barsky, Carla Adiansingh, Michael Edmonds, Nyesha and Aaron F. Hall, Kim M. Yancey, Celine Azoulay and Ross A. Lewin, Jennifer Merritt, Michele Schiavone, Deena M. Schiavone, Rachel R. Mosseri, Doris Weller, Alison Groia–Deangelis, Christine Miceli–Faber and Lance Faber, Michelle Gonzalez, Jennifer A. Broser, Joyce S. Cohen–Flaster, Chanda F. Hopkins, Tara T. Jones, Joseph and Carri L. DeBlasi, Gina Young, Anaflore V. Gourgue, Tonya Johnson, Laurie L. Cohen and Jack Simony.

2    The Wyeth affiliates named in the suit are Wyeth–Ayerst Laboratories; A.H. Robins Company, Inc.; Wyeth Labs, Inc.; Wyeth–Ayerst Pharmaceuticals Inc.; Wyeth–Ayerst Laboratories Company; Ayerst Laboratories, Inc.; Wyeth Pharmaceuticals; Wyeth Research and Wyeth–Ayerst International, Inc.

3    Judge Chin has not yet published a decision in those cases.

4    For instance, the Wyeth defendants cite *Moore v. Wyeth–Ayest Laboratories,* 236 F.Supp.2d 509 (D.Md.2002), where the court deferred to the MDL Court. That case is inapposite, however, because the MDL Court was familiar with the particular issue on remand—the fraudulent joinder of pharmacies. *See Moore,* 236 F.Supp.2d at 510–11. The Wyeth defendants also marshal *In re Ivy,* 901 F.2d 7 (2d Cir.1990), and *Medical Society of the State of New York v. Connecticut General Corp.,* 187 F.Supp.2d 89 (S.D.N.Y.2001), to their defense. In *Ivy,* the issue was whether the MDL Panel properly transferred a particular case to the MDL court when there was a jurisdictional objection pending. *Ivy,* 901 F.2d at 9. The Second Circuit held that the MDL Panel did have the power to transfer the case in that situation. *Id.* In so doing, the court noted that because the jurisdictional issue was capable of arising in hundreds of district courts, principles of economy and consistency counseled in favor of transfer. *Ivy,* 901 F.2d at 9. The court in *Medical Society* followed this rationale in *Ivy* to stay proceedings on a remand motion pending a transfer ruling by the MDL Panel. *See Medical Soc'y,* 187 F.Supp. at 90 ("[t]he Second Circuit has ... intimated that allowing the transferee court to resolve the jurisdictional question may be the preferable practice.") I find that *Ivy* does not control my decision here because I am dealing with the very different

09-50026-mg    Doc 13195-2    Filed 06/11/15    Entered 06/11/15 16:31:25    Exhibit 2
1:05-cv-11305-FM    Doc #: 06/14/15    Filed 06/09/15    Pg 1 of 65    ID 650
Pg 34 of 65
In re Consolidated Fen-Phen Cases, Not Reported in F.Supp.2d (2003)

question of whether I should defer to the MDL Court to which these cases may be transferred by the MDL Panel. Thus, I find these cases to be unconvincing.

5   This section of the Master Complaint states, in full:

> At all times relevant hereto, these products defendants were engaged in the business of supplying, manufacturing, labeling distributing, promoting, developing, testing and selling the drugs Pondimin (flenfluramine), Redux (dexflenfluramine) and/or phentermine. The product defendants do business in New York and, at all times relevant hereto, sold and/or supplied Pondimin (flenfluramine), Redux (dexflenfluramine) and/or phentermine in interstate commerce in New York.
>
> (Master Compl. ¶ 4.)

6   Plaintiffs also assert claims of alternate, market share, enterprise and concert-of-action liability. (Master Compl. ¶¶ 44–56; Amend Compl. ¶ 15.) These causes of actions are not proper where the plaintiff knows the identity of the manufacturer, however. *See, e.g., Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 240, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001) (explaining that market share liability is used where the plaintiff cannot identify the actual manufacturer that caused the injury) (citing *Hymowitz v. Eli Lilly & Co.,* 73 N.Y.2d 487, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (1989)). These claims are easily dismissed here, as plaintiffs do not allege that they do not know whose products they ingested. Indeed, plaintiffs have not challenged this argument in their papers. (*See* Pls' Reply Mot. Remand.) In any event, plaintiffs appear to have conceded these claims at oral argument.

> DEFENDANTS: In response to our argument, the way I read their papers, they've conceded that they can't state a claim as to six of those claims and there are only four left which would be negligence, strict product liability, breach of express warranty and breach of implied warranty.
>
> * * *
>
> THE COURT: Did he accurately describe your four theories?
>
> PLAINTIFFS: I believe in rather simplistic fashion. The four theories, however, do remain, as [defendants] concede[ ], even taking away the six that [t]he[y] talked about earlier....
>
> (Oct. 24, 2003 Hr'g Tr. at 7, 14–15); (*see also* Pls' Reply Mem. Law Supp. Mot. Remand at 7–9) (explaining how their claims for negligence, strict product liability, and breaches of warranty meet the *Pampillonia* standard, but failing to address how they have stated claims for the other six causes of action asserted in their amended complaints). Although plaintiffs appear to have conceded their negligence per se claim, too, I will address the merits of that count in text.

7   Whether I use the "no reasonable possibility" standard favored by *In re Rezulin* court or the stricter "no possibility" standard as elucidated in, for example, *Arseneault* (*see supra* Part B.1), the outcome is the same.

8   THE COURT: Do you agree that Mr. Essner was the president of Wyeth Ayerst Laboratory?

> PLAINTIFFS: Yes, your honor.
>
> THE COURT: And not Wyeth Ayerst International?
>
> PLAINTIFFS: Yes, your honor.
>
> (Hr'g Tr. at 28–29).

9   Plaintiffs' last ditch effort to resuscitate these "product defendant" claims is also unsuccessful. At the eleventh hour, plaintiffs introduced an entirely new theory of liability—that Wyeth International is the "alter ego" of one of the other Wyeth defendants who marketed and sold drugs in New York. To support that theory, they point to a decision in another litigation where the court held that the relationship between Wyeth International and another Wyeth entity was so close that they should be deemed a "single entity" for conflict of interest purposes regarding attorney representation. *See Discotrade, Ltd. v. Wyeth Ayerst Int'l, Inc.,* 200 F.Supp.2d 355, 358–59 (S.D.N.Y.2002). Plaintiffs failed to assert this theory in their complaint, which I find fatal to their claim. *See Pullman Co. v. Jenkins,* 305 U.S. 534, 537–38, 59 S.Ct. 347, 83 L.Ed. 334 (1939) (court should determine validity of removal based on pleadings in original complaint); *In re Rezulin,* 133 F.Supp.2d at 285 ("Although a defendant bears a heavy burden to establish a fraudulent joinder, it need not negate any possible theory that plaintiffs might allege in the future: Only [the] present allegations count") (quotations omitted, brackets in original). Moreover, plaintiffs did not even raise this theory in their motion for remand, or in their response to the Wyeth defendants' opposition papers. Instead, they have brought this new claim by way of a supplemental submission. (*See* Pls' Suppl. Reply Mot. Remand.) In any event, putting this timing problem aside, the argument has no merit. As the court noted in *Discotrade,* a conflict of interest analysis is "not nearly as rigorous as an 'alter ego' or 'piercing the corporate veil' analysis." 200 F.Supp.2d at 359 n. 8. Moreover, plaintiffs' counsel seemed to have backed off from this theory of liability at oral argument. (*See* Oct. 24, 2003 Hr'g Tr. at 18) ("THE COURT: I guess what I'm trying to figure out is if you're depending on [ ] a piercing the veil type of theory. PLAINTIFFS: No, I'm saying that Wyeth–Ayerst International standing alone ... had certain responsibilities, that their failure to perform those responsibilities was in itself a basis for liability....").

10    The fact that the New York courts have not decided this exact issue does not counsel otherwise, as it is clear that there is no chance that plaintiffs could state a claim on such theory. For instance, in *In re Rezulin,* (a fraudulent joinder case) the court held that pharmaceutical sales representatives do not have a duty to warn the public because, by analogy, under the "learned intermediary rule" the pharmaceutical manufacturer need only warn the prescribing physician. 133 F.Supp.2d at 282. In so holding, the court stated that, "[w]hile no Mississippi state court has resolved this precise issue, it does not follow that a 'possibility exists that plaintiff can establish any cause of action against [the] defendant[s]." *Id.* I find this reasoning persuasive here.

11    During oral argument, counsel for Celltech, formerly known as Medeva Pharmaceuticals, made a surprise appearance in which she argued against remand. (*See* Oct. 24, 2003 Hr'g Tr. at 20–23.) Apparently, defendant Celltech was named in the action in state court but counsel for plaintiffs forgot to serve Celltech. (*Id.* at 20–21, 23.) In any event, I do not need to address Celltech's argument since I hold that these actions will remain in federal court, as Celltech wishes.

---

End of Document                                          © 2015 Thomson Reuters. No claim to original U.S. Government Works.

BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GENERAL MOTORS LLC IGNITION SWITCH LITIGATION | MDL No. 2543 |

## DEFENDANT GENERAL MOTORS LLC'S RESPONSE
## TO PLAINTIFF'S MOTION TO VACATE CTO-38

Plaintiff Benjamin W. Pillars, as personal representative of the Estate of Kathleen Ann
Pillars, deceased, seeks to vacate a Conditional Transfer Order entered on April 17, 2015.
(5/6/15 Pl.'s Mot. to Vacate CTO-38 (ECF No. 712) (together with plaintiff's Brief in Support,
the "Motion to Vacate").)  Plaintiff does not dispute, nor can he, that his complaint alleges that a
November 23, 2005 accident was caused by a purported ignition switch defect in a 2004 Pontiac
Grand Am, and thus shares questions of fact with the actions at issue in MDL No. 2543.  (See
Compl. ¶¶ 4, 7, *Pillars v. General Motors LLC*, No. 1:15-cv-11360 (E.D. Mich. Apr. 14, 2015)
(ECF No. 1-5); ECF No. 684-3).)  Instead, in opposition to CTO-38, plaintiff primarily argues
that the transferor court should consider and decide his pending remand motion.  (See generally
Mot. to Vacate.)  The Panel has repeatedly heard—and rejected—this same argument in this
same MDL (and others).  (See 12/12/14 Transfer Order (*Alers* and *Green*) at 1 (ECF No. 537)
("Plaintiffs . . . argue that their actions were improperly removed.  The Panel often has held that
jurisdictional issues do not present an impediment to transfer, as plaintiffs can present these
arguments to the transferee judge.") (citing *In re: Prudential Ins. Co. of Am. Sales Practices
Litig.*, 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001)) ("12/12/14 Transfer Order (*Alers* and
*Green*)"); see also 2/5/15 Transfer Order (*Bloom*) at 1–2 (ECF No. 591) (similar) ("2/5/15
Transfer Order (*Bloom*)"); 10/15/14 Transfer Order (*Boyd, Kandziora,* and *Yagman*) at 1–2 (ECF
No. 495) (similar) ("10/15/14 Transfer Order (*Boyd, Kandziora,* and *Yagman*)").)  Plaintiff's



alternative argument, that transfer here will not make litigation more convenient for the parties and witnesses because his wrongful death complaint includes claims under Michigan law and will require testimony from case-specific witnesses, likewise has been rejected repeatedly by the Panel in this case and others. (*See* 10/15/14 Transfer Order (*Boyd*, *Kandziora*, and *Yagman*) at 2 (rejecting argument that action was unique because it involved Wisconsin state law claims); 12/12/14 Transfer Order (*Alers* and *Green*) at 2 (rejecting argument that transfer would be inconvenient; "while it might inconvenience some parties, transfer of a particular action often is necessary to further the expeditious resolution of the litigation taken as a whole under Section 1407"); 2/5/15 Transfer Order (*Bloom*) at 1 (similar).)   The result here should be the same. Plaintiff's Motion to Vacate should be denied.

## PROCEDURAL BACKGROUND

Because *Pillars* presents many of the same issues raised in MDL No. 2543, General Motors LLC ("New GM") filed a Notice of Tag-Along Action on April 16, 2015. (4/16/15 Not. of Tag-Along Action (ECF No. 684).)  On April 17, 2015, the Clerk of the Panel issued an order conditionally transferring the case to MDL No. 2543.    (4/17/15 Cond. Transfer Order ("CTO-38") (ECF No. 686).)  On April 23, 2015, plaintiff filed his Notice of Opposition to CTO-38.  (4/23/15 Notice of Opposition (CTO-38) (ECF No. 691).)  On May 6, 2015, plaintiff filed his Motion to Vacate. (Mot. to Vacate.) This response follows.

## ARGUMENT

Consolidation of *Pillars* is appropriate because the case shares a factual backdrop with the more than 200 cases already in MDL No. 2543 and because consolidation will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *See* 28 U.S.C. § 1407(a).  Here, plaintiff's claims are alleged to arise from a purported

ignition switch defect that is central to MDL No. 2543. Nor does plaintiff make any legitimate argument that his action should be permitted to proceed separately. *See In re Grain Shipments*, 319 F. Supp. 533, 534 (J.P.M.L. 1970) (explaining conditional transfer orders will be vacated only upon a showing of good cause). In particular, and plaintiff's arguments to the contrary notwithstanding, a pending remand motion simply is no bar to transfer, as this Panel repeatedly has held in this MDL. Moreover, plaintiff's argument that transfer would inconvenience the parties and witnesses is equally without merit. Accordingly, transfer of *Pillars* to MDL No. 2543 is proper under Section 1407.

**A.    *Pillars* Shares A Factual Backdrop With Existing MDL Cases.**

Plaintiff alleges that "the decedent lost control of her vehicle when the defective ignition switch in her vehicle went to the off position while the vehicle was being used by the decedent." (*Pillars* Compl. ¶ 7; *compare* Consolidated Class Action Complaint Against New GM for Recalled Vehicles Manufactured by Old GM and Purchased Before July 11, 2009 ¶ 9, *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Oct. 14, 2014) (ECF No. 347) ("Millions of vehicles designed, manufactured, and sold by Old GM have a safety defect such that the vehicle's ignition switch inadvertently moves from the 'run' position to the 'accessory' or 'off' position during ordinary driving conditions, resulting in a loss of power, vehicle speed control, and braking, as well as a failure of the vehicle's airbags to deploy") ("Pre-Sale Consol. Compl.").)[1] MDL No. 2543 presently contains at least 80 wrongful death and personal injury cases making substantially similar claims, involving at least 1500 plaintiffs.

---

[1]    Further, the precise model and model-year vehicle at issue in *Pillars*—the 2004 Pontiac Grand Am—is already at issue in multiple cases in MDL No. 2543. (*See e.g.*, Compl. ¶ 15, *Ibanez v. Gen. Motors Co., LLC*, No. 2:14-cv-05238 (C.D. Cal. July 7, 2014) (ECF No. 1) (transferred July 22, 2014, ECF No. 363) (listing 2004 Pontiac Grand Am as vehicle included in putative class); *see also* Compl. ¶ 18, *Abney v. General Motors, LLC*, No. 1:14-cv-05810 (S.D.N.Y. July 29, 2014) (ECF No. 1) (direct filed into MDL No. 2543) (named plaintiffs'

3

Plaintiff does not dispute that his action involves the same ignition switch defect that is at issue in MDL No. 2543. Instead, the Motion to Vacate largely focuses on plaintiff's motion to remand as a purported obstacle to transfer. But as this Panel routinely and repeatedly has held, pending remand motions "do not present an impediment to transfer, as plaintiffs can present such arguments to the transferee judge." (10/15/14 Transfer Order (*Boyd, Kandziora*, and *Yagman*) at 1 (footnote omitted); *accord* 12/12/14 Transfer Order (*Alers* and *Green*) at 1; 2/5/15 Transfer Order (*Bloom*) at 1–2.) To the contrary, as the Panel also recognized in each of those cases, "under Panel Rule 2.1(d), the pendency of a conditional transfer order does not limit the pretrial jurisdiction of the court in which the subject action is pending. Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court generally has adequate time to rule on a remand motion if it chooses to do so." (12/12/14 Transfer Order (*Alers* and *Green*) at 1 n. 2; 2/5/15 Transfer Order (*Bloom*) at 1–2 n. 1; *accord* 10/15/14 Transfer Order (*Boyd, Kandziora*, and *Yagman*) at 1–2 n. 2.)

So too here, plaintiff's remand motion will soon be fully briefed in the Eastern District of Michigan, as will New GM's concomitant motion to stay. (*See* Pl.'s Mot. to Remand, *Pillars v. Gen. Motors LLC*, No. 1:15-cv-11360 (E.D. Mich. May 6, 2015) (ECF No. 5); Def.'s Resp. in Opp'n to Mot. to Remand, *Pillars v. Gen. Motors LLC*, No. 1:15-cv-11360 (E.D. Mich. May 26, 2015) (ECF No. 10); Def.'s Mot. to Stay & Memo in Supp., *Pillars v. Gen. Motors LLC*, No. 1:15-cv-11360 (E.D. Mich. May 26, 2015) (ECF No. 9).)[2] Should the transferor court wish to

---

vehicles include 2004 Pontiac Grand Ams); Pre-Sale Consol. Compl. ¶ 828 (listing 2004 Pontiac Grand Am vehicles among "Defective Vehicles" for the putative nationwide class).)

[2]  Plaintiff's Reply in Support of his Motion to Remand is due on June 5, 2015, and briefing on New GM's Motion to Stay will also be complete shortly thereafter. (E.D. Mich. LR 7.1.(E)(2).) (setting default briefing schedule for non-dispositive motions).

decide plaintiff's remand motion before this Panel issues a final decision on transfer of this case, it will have every opportunity to do so.[3]

If not, Judge Furman—who already has decided three remand motions in MDL No. 2543—is well-equipped to decide plaintiff's motion. (*See* Memo. Opinion & Order, *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Sept. 17, 2014) (ECF No. 307) (denying remand); Opinion & Order, *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Nov. 24, 2014) (ECF No. 431) (granting remand); Memo. Opinion & Order, *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. May 6, 2015) (ECF No. 936) (denying remand).) Judge Furman also has recently invited plaintiffs to file renewed motions to remand, should they choose to do so, in six other cases where motions to remand were filed before transfer to MDL No. 2543. (*See* Order, *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Mar. 17, 2015) (ECF No. 662); Order No. 54, *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. May 6, 2015) (ECF No. 937) ("Order No. 54"); Order, *In re: Gen. Motors LLC Ignition Switch Litig.*, No.

---

[3]  To the extent that the substance of plaintiff's remand motion has any impact on this Panel's consideration of plaintiff's motion to vacate, which it should not, it is facially apparent that the remand motion is without merit, as set forth in New GM's briefing on the issue in the Eastern District of Michigan. (Def.'s Resp. in Opp'n to Mot. to Remand, *Pillars v. Gen. Motors LLC*, No. 1:15-cv-11360 (E.D. Mich. May 26, 2015) (ECF No. 10).) In particular, the Bankruptcy Court for the Southern District of New York has already held that claims arising from motor vehicle accidents prior to the bankruptcy of General Motors Corporation ("Old GM") are subject to its exclusive jurisdiction and are barred by that Court's Sale Order and Injunction. (Decision on Motion to Enforce Sale Order, *In re Motors Liquidation Co.*, No. 09-50026 (REG), ECF No. 13109 (Bankr. S.D.N.Y. Apr. 15, 2015).) The Bankruptcy Court also has held that the result is the same in circumstances such as those alleged by the plaintiff here, where a motor vehicle accident occurs before the Sale Date but the alleged accident victim died thereafter. (Decision on New GM's Motion to Enforce Section 363 Order With Respect to Product Liability Claim of Estate of Beverly Deutsch, *In re Motors Liquidation Co.*, 447 B.R. 142, 143–44 (Bankr. S.D.N.Y. 2011).) Indeed, the substance of plaintiff's remand motion makes clear that the claims made by plaintiff are intertwined with the bankruptcy issues presented in the vast majority of cases that have been transferred to MDL No. 2543.

1:14-md-02543 (S.D.N.Y. May 12, 2015) (ECF No. 956).)  Judge Furman also has ordered New

GM to advise him of any motion to remand filed in a case prior to its transfer to MDL No. 2543

within two weeks of the case's transfer to the MDL, and presumably he will invite renewed

motions to remand in such cases as well, including this one should it be transferred.  (*See* Order

No. 54.)

     In sum, because the plaintiff's allegations overlap significantly with those in existing

MDL cases and because a motion to remand is no impediment to transfer, the Motion to Vacate

should be denied.

     **B.**     **Consolidating *Pillars* Serves The Convenience Of The Parties, The Witnesses, And The Judiciary And Promotes The Just And Efficient Conduct Of This Litigation.**

     Transferring *Pillars* into MDL No. 2543 will not only avoid duplicative discovery, but

also extensive briefing, arguments, pretrial conferences, and rulings in different jurisdictions on

different schedules.  Given the factual overlap between the plaintiff's claims and the MDL, the

issues, events, and purported conduct at the heart of *Pillars* also are the focus of discovery in

MDL No. 2543.  Such discovery has been and continues to be time-consuming, expensive, and

complex, and transferring this case will ensure that such discovery only has to be taken once.

(*See* 10/15/14 Transfer Order (*Elliott*) at 1–2 (finding transfer would "promote efficiencies"

where discovery and pretrial proceedings in the action and the MDL "likely will overlap

concerning the ignition switch defect") (ECF No. 496); *In re: Keurig Green Mountain Single-*

*Serve Coffee Antitrust Litig.*, MDL No. 2542, 2014 WL 2547817, at *1–2 (J.P.M.L. June 3,

2014) (finding transfer would "offer the benefit of placing all related actions before a single

judge who can structure pretrial proceedings to accommodate all parties' discovery needs while

ensuring that common witnesses are not subjected to duplicative discovery demands" despite

some "individualized factual issues"); *In re Gen. Tire & Rubber Co. Secs. Litig.*, 429 F. Supp.

1032, 1034 (J.P.M.L. 1977) ("[P]lacing these actions under the control of a single judge will ensure that duplicative discovery on the complex factual questions will be prevented[.]").)

Plaintiff suggests that "[t]ransfer is not appropriate because issues common to the MDL do not predominate over individual issues of fact." (Mot. to Vacate at 13.) Predominance is not the standard for transfer; Section 1407 "does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re: Merscorp Inc., et al. Real Estate Settlement Procedures Act (RESPA) Litig.*, 560 F. Supp. 2d 1371, 1372 (J.P.M.L. 2008). Although plaintiff's action may present "some individual issues, that is true of products liability cases, generally. . . . Transferee judges can accommodate common and individual discovery tracks, gaining the benefits of centralization without delaying or compromising consideration of claims on their individual merits." *In re: Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011).

Plaintiff asserts that transfer is inappropriate because the witnesses to the accident and the health care providers that treated decedent are located in Michigan, and "transfer of the case will not further the convenience of the Plaintiff and the Michigan witnesses." (Mot. to Vacate at 13.) As the Panel already has explained in rejecting a similar argument, "while it might inconvenience some parties, transfer of a particular action often is necessary to further the expeditious resolution of the litigation taken as a whole under Section 1407." (*See* 12/12/14 Transfer Order (*Alers* and *Green*) at 2; *see also* 2/5/15 Transfer Order (*Bloom*) at 1 (similar).)

Moreover, plaintiff overstates the inconvenience to the witnesses here. Transfer to an MDL does not mean that all depositions will be taken in the MDL district; witnesses will instead generally be deposed in their home districts. *See In re A. H. Robins Co.*, 438 F. Supp. 942, 944 (J.P.M.L. 1977) ("Depositions of witnesses, of course, will probably occur in proximity to where

7

they reside."); *In re Plumbing Fixtures*, 311 F. Supp. 349, 352 n. 5 (J.P.M.L. 1970) ("Counsel seems concerned that all five hundred plaintiffs and countless other Oklahoma witnesses will be required to go to Philadelphia for depositions. . . . [D]epositions of Oklahoma parties and witnesses can be taken in Oklahoma.").  Judge Furman's order governing depositions provides that the parties shall cooperate on selecting a mutually convenient location and, "[i]n the absence of agreement, a deposition may take place within (a) the county in which the deponent resides, (b) the county in which the deponent is employed, or (c) the judicial district of the MDL Court." (Order No. 36 ¶ 15, *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 1:14-md-02543 (S.D.N.Y. Feb. 23, 2015) (ECF No. 604).)  Indeed, in connection with case-specific discovery related to Initial Discovery Pool Plaintiffs selected for bellwether trials to begin in January 2016, the parties in MDL No. 2543 are currently taking the depositions of first responders, eyewitnesses, and medical providers in their home districts all around the country.

In addition, plaintiff argues that his claims are "actionable under Michigan state law, and should be litigated in Michigan. . . ." (Mot. to Vacate at 13.)  As the Panel has found, such an argument is "not persuasive. . . . [M]any MDL No. 2543 actions bring state law claims. . . ." (*See* 10/15/14 Transfer Order (*Boyd*, *Kandziora*, and *Yagman*) at 2 (rejecting argument that action was unique because it brought Wisconsin state law claims).)[4]

In conclusion, transfer here will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.  Plaintiff's arguments to the contrary are without merit.

---

4    Plaintiff also make the conclusory assertion that "given the issuance of the Valukas Report, common issues of basic liability against General Motors are no longer contested, and transfer would be of no help." (Mot. to Vacate at 13 (internal footnote omitted).)  There is no merit to this assertion.  New GM does not concede that the Valukas Report is admissible and, regardless, the Report does not establish New GM's liability in this case or any other.

8

## CONCLUSION

For all these reasons, New GM respectfully requests that plaintiff's Motion to Vacate be denied.

DATED:  May 28, 2015

Respectfully submitted,

KIRKLAND & ELLIS LLP

By: /s/ Andrew B. Bloomer, P.C.
Andrew B. Bloomer, P.C.
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL  60654
Phone: (312) 862-2000
Fax: (312) 862-2200
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
In re                                            :      Chapter 11
                                                 :
MOTORS LIQUIDATION COMPANY, *et al.*,            :      Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., *et al.*     :
                                                 :
                        Debtors.                 :      (Jointly Administered)
------------------------------------------------x

## JUDGMENT

For the reasons set forth in the Court's *Decision on Motion to Enforce Sale Order*, entered on April 15, 2015 ("**Decision**"),[1] it is hereby ADJUDGED as follows:

1.      The Ignition Switch Plaintiffs and the Ignition Switch Pre-Closing Accident Plaintiffs (collectively, the "**Plaintiffs**") were "known creditors" of the Debtors. The Plaintiffs did not receive the notice of the sale of assets of Old GM to New GM ("**363 Sale**") that due process required.

2.      Except with respect to Independent Claims (as herein defined), the Ignition Switch Plaintiffs were not prejudiced by their lack of notice of the 363 Sale, and they thus failed to demonstrate a due process violation with respect to the 363 Sale.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision. For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt. No. 12826], at 3); (ii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred prior to the closing of the 363 Sale; (iii) "**Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles; (iv) "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of Pre-Closing Accident Plaintiffs that are not Ignition Switch Pre-Closing Accident Plaintiffs; and (v) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM vehicle.

-1-



PLAINTIFF'S
EXHIBIT
*E*

3.        The Ignition Switch Pre-Closing Accident Plaintiffs were not prejudiced by their lack of notice of the 363 Sale, and they thus failed to demonstrate a due process violation with respect to the 363 Sale.

4.        With respect to the Independent Claims, the Ignition Switch Plaintiffs were prejudiced by the failure to give them the notice of the 363 Sale that due process required.  The Ignition Switch Plaintiffs established a due process violation with respect to the Independent Claims.  The Sale Order shall be deemed modified to permit the assertion of Independent Claims.  For purposes of this Judgment, "**Independent Claims**" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct.  Nothing set forth herein shall be construed to set forth a view or imply whether or not Ignition Switch Plaintiffs have viable Independent Claims against New GM.

5.        Except for the modification to permit the assertion  of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.

6.        The Plaintiffs were prejudiced by the failure to receive the notice due process required of the deadline ("**Bar Date**") to file proofs of claim against the Old GM bankruptcy estate.  Any Plaintiff may petition the Bankruptcy Court (on motion and notice) for authorization to file a late or amended proof of claim against the Old GM bankruptcy estate.  The Court has not determined the extent to which any late or amended proof of claim will ultimately be allowed or allowed in a different amount.  But based on the doctrine of equitable mootness, in no event shall assets of the GUC Trust held at any time in the past, now, or in the future (collectively, the "**GUC Trust Assets**") (as defined in the Plan) be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims; *provided* that nothing in this

-2-

Judgment shall impair any party's rights with respect to the potential applicability of Bankruptcy Code section 502(j) to any claims that were previously allowed or disallowed by the Court. The constraints on recourse from GUC Trust Assets shall not apply to any Ignition Switch Plaintiff, Pre-Closing Accident Plaintiff, or Non-Ignition Switch Plaintiff who had a claim previously allowed or disallowed by the Court, but in no event shall he or she be entitled to increase the amount of any allowed claim without the prior authorization of the Bankruptcy Court or an appellate court following an appeal from the Bankruptcy Court.

7.    Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs that seek to hold New GM liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM.

8.    (a)    Subject to the other provisions of this paragraph 8, each Ignition Switch Pre-Closing Accident Plaintiff (including without limitation the Ignition Switch Pre-Closing Accident Plaintiffs identified on Exhibit "A" attached hereto) is stayed and enjoined from prosecuting any lawsuit against New GM.

(b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "A," by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 8 of the Judgment."

-3-

    (c)    If counsel for an Ignition Switch Pre-Closing Accident Plaintiff (including, but not limited to, one identified on Exhibit "A") believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be stayed, it shall file a pleading with this Court within 17 business days of this Judgment ("**No Stay Pleading**"). The No Stay Pleading shall not reargue issues that were already decided by the Decision, this Judgment, or any other decision, order, or judgment of this Court. If a No Stay Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

    9. Except for Independent Claims and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment.

    10.    (a)    The lawsuits stayed pursuant to the preceding paragraph shall include those on the attached Exhibit "B." The lawsuits identified on Exhibit "B" include the Pre-Sale Consolidated Complaint.

    (b)    Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "B", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 10 of the Judgment."

<div align="center">-4-</div>

(c)   If a counsel listed on Exhibit "B" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be stayed, it shall file a No Stay Pleading with this Court within 17 business days of this Judgment. The No Stay Pleading shall not reargue issues that were already decided by the Decision and this Judgment, or any other decision or order of this Court. If a No Stay Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

11.   (a)   The complaints in the lawsuits listed on the attached Exhibit "C" ("**Hybrid Lawsuits**") include claims and allegations that are permitted under the Decision and this Judgment and others that are not. Accordingly, until and unless the complaint in a Hybrid Lawsuit is (x) amended to assert solely claims and allegations permissible under the Decision and this Judgment (as determined by this or any higher court, if necessary), or (y) is judicially determined (by this or any higher court) not to require amendment, that lawsuit is and shall remain stayed. The Hybrid Lawsuits include the Post-Sale Consolidated Complaint. Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the Hybrid Lawsuits, by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 11 of the Judgment."

(b)   Notwithstanding the stay under the preceding subparagraph, however, the complaints in the actions listed in Exhibit "C" may, if desired, be amended in accordance with the subparagraphs that follow. Subject to the other provisions of this paragraph 11, and unless the applicable complaint already has been dismissed without prejudice pursuant to an order

entered in MDL 2543, each Plaintiff in a Hybrid Lawsuit wishing to proceed at this time may

amend his or her complaint on or before June 12, 2015, such that any allegations, claims or

causes of action concerning an Old GM vehicle or part seeking to impose liability or damages

based on Old GM conduct (including, without limitation, any successor liability theory of

recovery) are stricken, and only Independent Claims are pled.

      (c)    If a counsel listed in the lawsuits on Exhibit "C" believes that,

notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its

allegations, claims or causes of action against New GM should not be stricken, it shall file a

pleading with this Court within 17 business days of this Judgment ("**No Strike Pleading**").  The

No Strike Pleading shall not reargue issues that were already decided by the Decision and

Judgment.  If a No Strike Pleading is timely filed, New GM shall have 17 business days to

respond to such pleading.  The Court will schedule a hearing thereon if it believes one is

necessary.

      (d)    If an Ignition Switch Plaintiff fails to either (i) amend his or her respective

complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action

concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM

conduct (including, without limitation, any successor liability theory of recovery) are stricken,

and only Independent Claims are pled, or (ii) timely file a No Strike Pleading with the Court

within the time period set forth above, New GM shall be permitted to file with this Court a notice

of presentment on five (5) business days' notice, with an attached order ("**Strike Order**") that

directs the Ignition Switch Plaintiff to strike specifically-identified allegations, claims or

causes of action contained in his or her complaint that violate the Decision, this Judgment and/or

the Sale Order (as modified by the Decision and this Judgment), within 17 business days of

-6-

receipt of the Strike Order.

(e)    For any allegations, claims or causes of action of the Ignition Switch Plaintiffs listed on Exhibit "C" that are stricken pursuant to this Judgment (voluntarily or otherwise), (i) the statute of limitations shall be tolled from the date of the amended complaint to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch Plaintiffs can make the allegations, or maintain the claims or causes of action, against New GM heretofore stricken pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against New GM that existed prior to the striking of such claims or causes of action pursuant to this Judgment shall be reinstated as if the striking of such claims or causes of action never occurred.

(f)    Notwithstanding the foregoing, to the extent (but only the extent) acceptable to the MDL Court, the Plaintiff in any lawsuit listed on Exhibit "C" may elect not to amend his or her complaint and may await the outcome of appellate review of this Judgment.  If that plaintiff thereafter determines to proceed with his or her lawsuit, the plaintiff's counsel shall provide notice to New GM, and the procedures set forth above shall apply.

12.    (a)    The lawsuits captioned *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) and *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.)  (the "**State Lawsuits**") likewise include claims and allegations that are permitted under the Decision and this Judgment and others that are not.  Accordingly, until and unless the complaint in a State Lawsuit is (x) amended to assert solely claims and allegations permissible under the Decision and this Judgment (as determined by this or any higher court, if necessary), or (y) is judicially determined (by this or any higher court) not to require amendment, that lawsuit is and shall remain stayed.

-7-

Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the State Lawsuits, by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the Judgment, including without limitation, the provisions of paragraph 12 of the Judgment."

(b)       Notwithstanding the stay under the preceding subparagraph, however, the State Lawsuits may, if desired, be amended in accordance with the subparagraphs that follow. Subject to the other provisions of this paragraph 12, and unless the applicable complaint already has been dismissed without prejudice, each Plaintiff in a State Lawsuit ("**State Plaintiff**") wishing to proceed at this time may amend its complaint on or before June 12, 2015, such that any allegations, claims or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct (including, without limitation, any successor liability theory of recovery) are stricken, and only Independent Claims are pled.

(c)       If a counsel in a State Lawsuit believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its allegations, claims or causes of action against New GM should not be stricken, it shall file a No Strike Pleading with this Court within 17 business days of this Judgment. The No Strike Pleading shall not reargue issues that were already decided by the Decision and Judgment. If a No Strike Pleading is timely filed, New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(d)       If a State Plaintiff fails to either (i) amend its complaint, on or before June 12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct (including, without

-8-

limitation, any successor liability theory of recovery) are stricken, and only Independent Claims are pled, or (ii) timely file a No Strike Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached Strike Order that directs such State Plaintiff to strike specifically-identified allegations, claims and/or causes of action contained in its complaint that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Strike Order.

    (e)    For any allegations, claims or causes of action of a State Plaintiff that are stricken pursuant to this Judgment (voluntarily or otherwise), (i) the statute of limitations shall be tolled from the date of the amended complaint to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the State Plaintiff can make the allegations, or maintain the claims or causes of action, against New GM heretofore stricken pursuant to this Judgment, all of the State Plaintiff's rights against New GM that existed prior to the striking of such allegations, claims or causes of action pursuant to this Judgment shall be reinstated as if their striking never occurred.

    (f)    Notwithstanding the foregoing, a State Plaintiff may elect not to amend its complaint and may await the outcome of appellate review of this Judgment. If such plaintiff thereafter determines to proceed with its lawsuit, the plaintiff's counsel shall provide notice to New GM, and the procedures set forth above shall apply.

    13.    (a)    The rulings set forth herein and in the Decision that proscribe claims and actions being taken against New GM shall apply to the "Identified Parties"[2] who were heard

---

[2]    **Identified Parties**" as defined in the Court's Scheduling Order entered on May 16, 2014 (ECF No. 12697), and persons that have asserted Pre-Closing personal injury and wrongful death claims against New GM based on the Ignition Switch Defect (as defined in the Decision).

during the proceedings regarding the Four Threshold Issues and any other parties who had notice

of the proceedings regarding the Four Threshold Issues and the opportunity to be heard in

them—including, for the avoidance of doubt, the plaintiffs in the *Bledsoe*, *Elliott* and *Sesay*

lawsuits listed on Exhibit "C." They shall also apply to any other plaintiffs in these proceedings

(including, without limitation, the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-

Ignition Switch Plaintiffs identified on Exhibit "D" attached hereto), subject to any objection

("**Objection Pleading**") submitted by any such party within 17 business days of the entry of this

Judgment. New GM shall file a response to any such Objection Pleading within 17 business

days of service. The Court will schedule a hearing thereon if it believes one is necessary.   To

the extent an issue shall arise in the future as to whether (i) the Non-Ignition Switch Pre-Closing

Accident Plaintiffs and Non-Ignition Switch Plaintiffs were known or unknown creditors of the

Debtors, (ii) the doctrine of equitable mootness bars the use of any GUC Trust Assets to satisfy

late-filed claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition

Switch Plaintiffs, or (iii) the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-

Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale Order, the Non-

Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs shall be

required to first seek resolution of such issues from this Court before proceeding any further

against New GM and/or the GUC Trust.

      (b)     Within two (2) business days of the entry of this Judgment, New GM shall

serve a copy of this Judgment on counsel for the Non-Ignition Switch Pre-Closing Accident

Plaintiffs or Non-Ignition Switch Plaintiffs identified on Exhibit "D", by e-mail, facsimile,

overnight mail or, if none of the foregoing are available, regular mail, with a cover note that

states: "The attachment is the Judgment entered by the Bankruptcy Court.  Please review the

Judgment, including without limitation, the provisions of paragraph 13 of the Judgment."

(c)    If a counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit, or certain claims or causes of action contained therein, against New GM should not be dismissed or stricken, it shall file a pleading with this Court within 17 business days of this Judgment ("**No Dismissal Pleading**").  Such No Dismissal Pleading may request, as part of any good faith basis to maintain a lawsuit (or certain claims or causes of action contained therein) against New GM, (i) an opportunity to select one or more designated counsel from among the affected parties to address the Four Threshold Issues with respect to particular defects in the vehicles involved in the accidents or incidents that form the basis for the subject claims, and (ii) the establishment of appropriate procedures (including a briefing schedule and discovery, if appropriate) with respect thereto.  If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading.  The Court will schedule a hearing thereon if it believes one is necessary.

(d)    If counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or a Non-Ignition Switch Plaintiff believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to believe that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court, it shall file a pleading with this Court within 17 business days of this Judgment ("**GUC Trust Asset Pleading**").  The GUC Trust Asset Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a GUC Trust Asset Pleading is timely filed, the GUC Trust,

the GUC Trust Unitholders and/or New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

(e)    If a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" fails to timely file a No Dismissal Pleading or a GUC Trust Asset Pleading with the Court within the time period set forth in paragraphs 13(c) and (d) above, New GM, the GUC Trust and/or the GUC Trust Unitholders, as applicable, shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("**Dismissal Order**") that directs the Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff to dismiss with prejudice its lawsuit, or certain claims or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order. For any lawsuit, or any claims or causes of action contained therein, of the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs that are dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal, such that the appellate court finds that the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs can make the allegations, or maintain the lawsuit or claims or causes of action, against New GM and/or the GUC Trust heretofore dismissed or stricken pursuant to this Judgment, all of the Non-Ignition Switch Pre-Closing Accident Plaintiffs' or Non-Ignition Switch Plaintiffs' rights against New GM and/or the GUC Trust that existed prior to the dismissal of their lawsuit or the striking of claims or causes of action pursuant to this Judgment shall be reinstated as if the dismissal or the striking of such claims or causes of action never occurred.

-12-

(f)     Notwithstanding the provisions of this Paragraph 13, any plaintiff whose lawsuit would otherwise have to be dismissed, in whole or in part, under this Paragraph 13 may elect, by notice filed on ECF and served upon New GM and the GUC Trust (no later than 14 days after the entry of this judgment), to stay the lawsuit instead.  Except as the Court may otherwise provide by separate order (entered on stipulation or on motion), the provisions of Paragraph 13 shall then apply to any request for relief from that stay.

14.     The Court adopts the legal standard for "fraud on the court" as set forth in the Decision.

15.     (a)     By agreement of New GM, Designated Counsel for the Ignition Switch Plaintiffs, the GUC Trust, and the GUC Trust Unitholders, and as approved by the Court, no discovery in the Bankruptcy Court was conducted in connection with the resolution of the Four Threshold Issues.  The Ignition Switch Pre-Closing Accident Plaintiffs did not challenge the earlier decision not to seek discovery in the Bankruptcy Court in connection with the Bankruptcy Court's determination of the Four Threshold Issues.  New GM, Designated Counsel, the Groman Plaintiffs, the GUC Trust, and the GUC Trust Unitholders developed and submitted to the Court a set of agreed upon stipulated facts.  Such parties also submitted to the Bankruptcy Court certain disputed facts and exhibits.  The Court decided the Four Threshold Issues on the agreed upon stipulated facts only.

(b)     The Court has determined that the agreed-upon factual stipulations were sufficient for purposes of determining the Four Threshold Issues; that none of the disputed facts were or would have been material to the Court's conclusions as to any of the Four Threshold Issues; and that treating any disputed fact as undisputed would not have affected the outcome or reasoning of the Decision.

-13-

(c)    The Groman Plaintiffs requested discovery with respect to the Four Threshold Issues but the other parties opposed that request, and the Court denied that request. To the extent the Groman Plaintiffs' discovery request continues, it is denied without prejudice to renewal in the event that after appeal of this Judgment, the discovery they seek becomes necessary or appropriate.

(d)    For these reasons (and others), the findings of fact in the Decision shall apply only for the purpose of this Court's resolution of the Four Threshold Issues, and shall have no force or applicability in any other legal proceeding or matter, including without limitation, MDL 2543. Notwithstanding the foregoing, in all events, however, the Decision and Judgment shall apply with respect to (a) the Court's interpretation of the enforceability of the Sale Order, and (b) the actions of the affected parties that are authorized and proscribed by the Decision and Judgment.

16.    The Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based. For the avoidance of doubt, except as otherwise provided in this Judgment, the Sale Order remains fully enforceable, and in full force and effect. This Judgment shall not be collaterally attacked, or otherwise subjected to review or modification, in any Court other than this Court or any court exercising appellate authority over this Court.

17.    Count One of the amended complaint ("**Groman Complaint**") filed in *Groman et al v. General Motors LLC* (Adv. Proc. No. 14-01929 (REG)) is dismissed with prejudice. The remaining counts of the Groman Complaint that deal with the "fraud on the court" issue are deferred and stayed until 30 days after all appeals of the Decision and Judgment are decided. With respect to Count One of the Groman Complaint, (i) the statute of limitations shall be tolled

from the date of dismissal of Count One to 30 days after all appeals of the Decision and

Judgment are decided, and (ii) if the Decision and Judgment are reversed or modified on appeal

such that the appellate court finds that the Groman Plaintiffs can maintain the cause of action in

Count One of the Groman Complaint heretofore dismissed pursuant to this Judgment, the

Groman Plaintiffs' rights against New GM that existed as of the dismissal of Count One shall be

reinstated as if the dismissal of Count One never occurred.

18.   (a)   New GM is hereby authorized to serve this Judgment and the Decision

upon any additional party (or his or her attorney) (each, an "**Additional Party**") that commences

a lawsuit and/or is not otherwise on Exhibits "A" through "D" hereto (each, an "**Additional

Lawsuit**") against New GM that would be proscribed by the Sale Order (as modified by the

Decision and this Judgment). Any Additional Party shall have 17 business days upon receipt of

service by New GM of the Decision and Judgment to dismiss, without prejudice, such Additional

Lawsuit or the allegations, claims or causes of action contained in such Additional Lawsuit that

would violate the Decision, this Judgment, or the Sale Order (as modified by the Decision and

this Judgment).

(b)   If any Additional Party has a good faith basis to maintain that the

Additional Lawsuit or certain allegations, claims or causes of action contained in such Additional

Lawsuit should not be dismissed without prejudice, such Additional Party shall, within 17

business days upon receipt of the Decision and Judgment, file with this Court a No Dismissal

Pleading explaining why such Additional Lawsuit or certain claims or causes of action contained

therein should not be dismissed without prejudice. The No Dismissal Pleading shall not reargue

issues that were already decided by the Decision and Judgment. New GM shall file a response to

the No Dismissal Pleading within 17 business days of service of the No Dismissal Pleading. The

-15-

Court will schedule a hearing thereon if it believes one is necessary.

(c)    If an Additional Party fails to either (i) dismiss without prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that New GM asserts violates the Decision, Judgment, and/or Sale Order (as modified by the Decision and this Judgment), or (ii) timely file a No Dismissal Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached Dismissal Order that directs the Additional Party to dismiss without prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and this Judgment), within 17 business days of receipt of the Dismissal Order.  With respect to any lawsuit that is dismissed pursuant to this paragraph, (i) the statute of limitations shall be tolled from the date of dismissal of such lawsuit to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Additional Party can maintain the lawsuit heretofore dismissed pursuant to this Judgment, the Additional Party's rights against New GM that existed as of the dismissal of the lawsuit shall be reinstated as if the dismissal of the lawsuit never occurred.

(d)    For the avoidance of doubt, nothing in this paragraph 18 shall apply to the Amended Consolidated Complaint to be filed in MDL 2543 on or before June 12, 2015.

Dated: New York, New York
        June 1, 2015

        ___*s/ Robert E. Gerber*___
        United States Bankruptcy Judge

-16-

## Exhibit "A": Complaints Alleging Pre-Closing Ignition Switch Accidents To Be Stayed

Bachelder, et al. v. General Motors LLC, MDL No. 1:15-cv-00155-JMF (S.D.N.Y.)[3]

Betancourt Vega v. General Motors LLC, et al., No. 3:15-cv-01245-DRD (D.P.R.) (MDL No. 1:15-cv-02638)

Bledsoe, et al. v. General Motors LLC, MDL No. 1:14-cv-07631-JMF (S.D.N.Y.)[4]

Boyd, et al. v. General Motors LLC, No. 4:14-cv-01205-HEA (E.D. Mo.) (MDL No. 1:14-cv-08385)[5]

Doerfler-Bashucky v. General Motors LLC, et al., No. 5:15-cv-00511-GTS-DEP (N.D.N.Y.)

Edwards, et al. v. General Motors LLC, MDL No. 1:14-cv-06924-JMF (S.D.N.Y.)[6]

Johnston-Twining v. General Motors LLC, et al., No. 3956 (Philadelphia County, Pa.)

Meyers v. General Motors LLC, No. 1:15-cv-00177-CCC (M.D. Pa.)

Occulto v. General Motors Co., et al., No. 15-cv-1545 (Lackawanna County, Pa.)

Scott v. General Motors Company, et al., No. 8:15-cv-00307-JDW-AEP (M.D. Fla.) (MDL No. 1:15-cv-01790)

Vest v. General Motors LLC, et al., No. 1:14-cv-24995-DAF (S.D. W.Va.) (MDL No. 1:14-cv-07475)

---

[3] The *Bachelder* complaint includes both Ignition Switch and non-Ignition Switch Pre-Closing Accident vehicles subject to the Judgment. Accordingly, it is listed both on Exhibits "A" and "D."

[4] The *Bledsoe* complaint includes both Ignition Switch and non-Ignition Switch Pre-Closing Accident vehicles subject to the Judgment. Accordingly, it is listed both on Exhibits "A" and "D." In addition, the *Bledsoe* complaint includes economic loss claims regarding Old GM conduct and vehicles and, therefore, also appears on Exhibit "C."

[5] The *Boyd* complaint contains allegations regarding both a Pre-Closing ignition switch accident and one or more Post-Closing ignition switch accidents. To the extent the complaint concerns one or more Post-Closing ignition switch accidents, those portions of the *Boyd* complaint that assert Product Liabilities (as defined in the Sale Agreement) based on a Post-Closing ignition switch accident are not subject to the Judgment.

[6] The *Edwards* complaint includes both Ignition Switch and non-Ignition Switch Pre-Closing Accident vehicles subject to the Judgment. Accordingly, it is listed both on Exhibits "A" and "D."

-17-

## Exhibit "B": Economic Loss Complaints To Be Stayed

Hailes, et al. v. General Motors LLC, et al., No. 15PU-CV00412 (Pulaski County, Mo.)

In re General Motors LLC Ignition Switch Litigation, 14-MD-2543, *Consolidated Class Action Complaint Against New GM For Recalled Vehicles Manufactured By Old GM and Purchased Before July 11, 2009*

## Exhibit "C": Complaints Containing Particular Allegations And/Or Claims Barred By Sale Order To Be Stricken

### Post-Sale Personal Injury/Wrongful Death Complaints With Economic Loss Claims To Be Stricken:

Ackerman v. General Motors Corp., et al., No. MRS-L-2898-14 (Morris County, N.J.)

Austin, et al. v. General Motors LLC, No. 2015-L- 000026 (St. Clair County, Ill.)

Berger, et al. v. General Motors LLC, No. 9241/2014 (Kings County, N.Y.)

Casey, et al.  v. General Motors LLC, et al., No. 2014-54547 (Texas MDL)

Colarossi v. General Motors, et al., No. 14-22445 (Suffolk County, N.Y.)

Dobbs v. General Motors LLC, et al., No. 49D051504PL010527 (Marion County, Ind.)

Felix, et al. v. General Motors LLC, No. 1422-CC09472 (City of St. Louis, Mo.)

Gable, et al. v. Walton, et al., No. 6737 (Lauderdale County, Tenn.)

Goins v. General Motors LLC, et al., No. 2014-CI40 (Yazoo County, Miss.)

Grant v. General Motors LLC, et al., No. 2014CV02570MG (Clayton County, Ga.)

Green v. General Motors LLC, et al., No. 15-144964-NF (Oakland County, Mich.)

Hellems v. General Motors LLC, No. 15-459-NP (Eaton County, Mich.)

Hinrichs v. General Motors LLC, et al., No. 15-DCV-221509 (Texas MDL)

Jackson v. General Motors LLC, et al., No. 2014-69442 (Texas MDL)

Largent v. General Motors LLC, et al., No. 14-006509-NP (Wayne County, Mich.)

Licardo v. General Motors LLC, No. 03236 (Fulton County, N.Y.)

Lincoln, et al. v. General Motors LLC, No. 2015-0449-CV (Steuben County, N.Y.)

Lucas v. General Motors LLC, et al., No. 15-CI-00033 (Perry County, Ky.)

Miller v. General Motors LLC, et al., No. CACE-15-002297 (Broward County, Fla.)

Mullin, et al. v. General Motors LLC, et al., No. BC568381 (Los Angeles County, Cal.)

Nelson v. General Motors LLC, et al., No. D140141 (Texas MDL)

Petrocelli v. General Motors LLC, et al., No. 14-17405 (Suffolk County, N.Y.)

Polanco, et al. v. General Motors LLC, et al., No. CIVRS1200622 (San Bernardino County, Cal.)

Quiles v. Catsoulis, et al., No. 702871/14 (Queens County, N.Y.)

Quintero v. General Motors LLC, et al., No. 15-995 (Orleans Parish, La.)

Shell, et al. v. General Motors LLC, No. 1522-CC00346 (City of St. Louis, Mo.)

Solomon v. General Motors LLC, No. 15A794-1 (Cobb County, Ga.)

Spencer v. General Motors LLC, et al., No. D-1-GN-14-001337 (Texas MDL)

Szatkowski, et al. v. General Motors LLC, et al., No. 2014-08274-0 (Luzerne County, Pa.)

Tyre v. General Motors LLC, et al., No. GD-14-010489 (Allegheny County, Pa.)

Wilson v. General Motors LLC, et al., No. 2014-29914 (Texas MDL)

### Post-Sale Economic Loss Complaints With Old GM Allegations/Claims To Be Stricken:

Bledsoe, et al. v. General Motors LLC, MDL No. 1:14-cv-07631-JMF (S.D.N.Y.)

Elliott, et al. v. General Motors LLC, No. 1:14-cv-00691-KBJ (D.D.C.)
(MDL No. 1:14-cv-08382)

Sesay, et al. v. General Motors LLC, et al., MDL No.1:14-cv-06018-JMF (S.D.N.Y.)

In re General Motors LLC Ignition Switch Litigation, 14-MD-2543, *Consolidated Complaint Concerning All GM-Branded Vehicles That Were Acquired July 11, 2009 or Later*

## Exhibit "D": Non-Ignition Switch Complaints Subject to the Judgment

### Personal Injury/Wrongful Death Complaints:

Abney, et al. v. General Motors LLC, MDL No. 1:14-cv-05810-JMF (S.D.N.Y.)[7]

Bachelder, et al. v. General Motors LLC, MDL No. 1:15-cv-00155-JMF (S.D.N.Y.)

Bacon v. General Motors LLC, MDL No. 1:15-cv-00918-JMF (S.D.N.Y.)

Edwards, et al. v. General Motors LLC, MDL No. 1:14-cv-06924-JMF (S.D.N.Y.)

Phillips-Powledge v. General Motors LLC, No. 3:14-cv-00192 (S.D. Tex.)
(MDL No. 1:14-cv-08540)

Pillars v. General Motors LLC, No. 1:15-cv-11360-TLL-PTM (E.D. Mich.)

Williams, et al. v. General Motors LLC, No. 5:15-cv-01070-EEF-MLH (W.D. La.)
(MDL No. 1:15-cv-03272)

### Economic Loss Complaints:

Bledsoe, et al. v. General Motors LLC, MDL No. 1:14-cv-07631-JMF (S.D.N.Y.)

Elliott, et al. v. General Motors LLC, No. 1:14-cv-00691-KBJ (D.D.C.)
(MDL No. 1:14-cv-08382)

Sesay, et al. v. General Motors LLC, et al., MDL No.1:14-cv-06018-JMF (S.D.N.Y.)

Watson, et al. v. General Motors LLC, et al., No. 6:14-cv-02832 (W.D. La.)

---

[7]    The *Abney* complaint includes a non-Ignition Switch Pre-Closing Accident vehicle subject to the Judgment.