Gary Peller
600 New Jersey Avenue NW
Washington, DC 20001
(202) 662-9122
peller@law.georgetown.edu
Counsel for Plaintiffs

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                :        Chapter 11
                                                     :
MOTORS LIQUIDATION COMPANY, *et al.*,                :        Case No. 09-50026 (REG)
            f/k/a General Motors Corp., *et al.*     :
                                                     :
                                Debtors.             :        (Jointly Administered)
---------------------------------------------------------------x


---------------------------------------------------------------x
SHARON BLEDSOE et al.                                :        Case No. 1:14-cv-7631 (JMF)
                                                     :
            v.                                       :
                                                     :
GENERAL MOTORS LLC et al.                            :
---------------------------------------------------------------x


# *BLEDSOE* PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR RELIEF RELATED TO THE COURT'S JUDGMENT OF JUNE 1, 2015, AND NO STAY/NO STRIKE/OBJECTION PLEADING PURSUANT TO THE JUDGMENT

# Table of Contents

TABLE OF AUTHORITIES ........................................................................................ ii

I. PROCEDURAL BACKGROUND ......................................................................... 3

   A.   The SOI .......................................................................................................... 3

   B.   New GM's Motion to Enforce the SOI. ....................................................... 4

   C.   The "Threshold Issue" Scheduling Orders. ................................................ 6

   D.   The *Bledsoe* Lawsuit Proceedings .......................................................... 7

II. ARGUMENT ......................................................................................................... 8

   A.   Distinguishing the Court's §363 In Rem from Ancillary §105(a) In Personam Jurisdiction ................................................................................................ 8

   B.   The Limits Of *In Rem* Jurisdiction Over Successor Liability Claims ..... 13

   C.   The Distinct Due Process Regimes Applicable to *In Rem* and *In Personam* Proceedings .......................................................................................... 16

   D.   Relief the *Bledsoe* Plaintiffs Seek Regarding the Judgment ................. 19

     *1.*   *The Court's construction of the SOI to encompass Independent Claims is untenable, and the Court should amend its findings to construe the SOI not to encompass Independent Claims.* ................................................ 19

     *2.*   *Because they did not receive constitutionally required notice, and Court's construction of the SOI to encompass Independent Claims was not reasonably foreseeable even if they had, the Bledsoe Plaintiffs cannot be bound by the SOI, and the Judgment should be amended accordingly.* ........ 20

     *3.*   *The Judgment should be amended to permit Ms. Bledsoe, a pre-sale accident victim, to assert Independent Claims against New GM.* ................ 21

     *4.*   *The Judgment should be generally amended to exclude the Bledsoe Plaintiffs' Independent Claims from its reach.* ...................................... 21

     *5.*   *The Judgment should be amended to exclude successor liability claims based on New GM's unlawful operation of Old GM assets.* ................... 22

     *6.*   *The Judgment should be amended to deny New GM's MTE in its entirety.* ........... 22

     *7.*   *The Judgment should be amended so that it is limited to the construction of the SOI and denies New GM's MTE in all other respects.* ............... 22

     *8.*   *The Court has no power to order dismissal of or to censor the Bledsoe Plaintiffs' pleadings pending before an Article III Court.* ........................ 23

     *9.*   *The Bledsoe Plaintiffs cannot be bound by the Judgment because they were precluded from participating in the "threshold issues."* ............... 24

     *10.*   *The Bledsoe Plaintiffs are entitled to relief from the void provisions of the SOI.* 25

III. CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958 (11th Cir. 2012)...........................................23

Hansberry v. Lee, 311 U.S. 32 (1940)..................................................................................16

In re Colonial Realty Co., 980 F.2d 125 (2d Cir. 1992)........................................................12

In re Haemmerle, 529 B.R. 17 (Bankr. E.D.N.Y. 2015)................................................10, 23

In re Haven Eldercare, LLC, No. 07-32720, 2012 WL 1357054
(Bankr. D. Conn. Apr. 17, 2012) ........................................................................................12

In re HHG Corp., No. 01-B-11982 (ASH), 2006 WL 1288591
(Bankr. S.D.N.Y. May 2, 2006).........................................................................................11

In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008)..................................................10, 18

In re Johns-Manville Corp., 600 F.3d 135 (2 Cir. 2010)..................................................17, 18

In re Metromedia Fiber Network, Inc., 416 F.3d 136 (2d Cir. 2005)....................................10

In re Nassako, 405 B.R. 515 (Bankr.S.D.N.Y.2009)............................................................10

In re Old Carco LLC, 492 B.R. 392 (Bankr. S.D.N.Y. 2013)..............................................15

Marshall v. Picard 740 F.3d 81 (2d Cir. 2014).......................................................................3

Ninth Ave. Remedial Group v. Allis-Chalmers Corp, 195 B.R. 716 (N.D. Ind. 1996)...........13

Picard v. Fairfield Greenwich Ltd., 762 F.3d 199 (2d Cir. 2014).........................................13

Richards v. Jefferson County, 517 U.S. 793 (1996).............................................................16

Stern v. Marshall, 131 S.Ct. 2594 (2011).............................................................................23

Taylor v. Sturgell, 553 U.S. 880, 896-902 (2008)...........................................................16, 24

Teachers Ins. & Annuity Ass'n of Am. v. Bultur, 803 F.2d 61 (2d Cir. 1986)......................10

Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440 (2004)..................................2, 9

Travelers v. Bailey 557 U.S. 137 (2009)..............................................................................18

Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir. 2002)..........................................23

**Statutes**

11 U.S.C. § 105.........................................................................8, 12, 13, 14, 15

11 U.S.C. § 62.............................................................................................9, 11

11 U.S.C. § 363.......................................................................8, 11, 12, 13, 15

11 U.S.C. §524.........................................................................................................12

**Secondary Sources**

P. Corcoran, Why Successor Liability Claims Are Not "Interests in Property" Under Section
363(f), 18 Am. Bankr. Inst. L. Rev. 697 (2010).................................................................15

The *Blesdoe* Plaintiffs, through undersigned counsel, hereby submit this Brief in support of their Motion for relief related to the Court's Judgment of June 1, 2015, No. 13177 ("**Judgment**"), issued with respect to GM's Motions to Enforce ("**MTE**"), [1] and in support of their No Stay, No Strike and Objection Pleadings.

The *Bledsoe* Plaintiffs seek relief regarding those portions of the Judgment that construe the 2009 Sale Order and Injunction ("**SOI**")[3] to bar their independent, non-derivative state law claims against New GM for its own wrongdoing ("**Independent Claims**"), and that grant various forms of equitable relief pursuant to that construction, including some provisions enjoining the prosecution of many of their claims in their entirety[4] and other provisions censoring what they may or may not say to support the claims that they are permitted to assert. [6] As explained below, this Court has no constitutional power to grant New GM any of this relief with respect to the *Bledsoe* Plaintiffs' Independent Claims, *i.e.*, their non-successor liability causes of action. Moreover, because the successor liability claims that they assert and may wish to assert in the future turn on New GM's *unlawful* operation of Old GM's assets, rather than the mere continuation of the lawful business of a

---

[1] *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction,* 09-50026, No. 12620; *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 SOI and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits,* [Dkt. No. 12807]; *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 SOI and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions),* [Dkt. No. 12808].

[3] *Order Granting (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale; and (III) Granting Related Relief,* [Dkt. No. 2968].

[4] Under the Court's judgment, Ms. Bledsoe's Pre-Closing Accident claims are barred by the SOI. *Judgment* [Dkt. No. 13177], at ¶.7. Similarly, Non-Ignition Switch claims alleged by the Elliotts, Mr. Fordham, Miss Kanu and Mr. Tibbs are barred. *Id.* at ¶.7

[6]. Ms. Farmer, Mitchell, Thomas and Bledsoe allege Ignition Switch hazards in their vehicles. Under the Judgment, a number of their claims are proscribed and censored. *Id.* at ¶11(a). Ms. Farmer, Mr. Kanu and Mr. Tibbs were involved in post-sale accidents, for which New GM has claimed no SOI protection.

1

debtor, the Court's categorical bar against the prosecution of "successor liability" claims was erroneous. The Court has no jurisdictional authority to bar those successor liability claims based on a purchaser's own illegal conduct.

In addition, because Plaintiffs were never "creditors" of Old GM with respect to their *in personam* Independent Claims against New GM for its own wrongdoing, causes of action which never could have been asserted against Old GM or its estate, the due process standards relevant to determining whether the SOI binds them are the general, and significantly more stringent, notice and opportunity to be heard rules that apply to preclusion of absent parties' claims in class actions, a due process regime that does not turn on a showing of prejudice. The "threshold issues" proceedings, however, considered only the specialized remedial scheme of bankruptcy notice required to preclude claims of "creditors" of the debtor when the Bankruptcy Court exercises its *in rem* jurisdiction over the debtor's property. The Court and the Identified Parties[8] categorically erred by applying the wrong due process regime to determine whether the *Bledsoe* Plaintiffs were or are bound by the injunctive portions of the SOI with respect to their Independent Claims. *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447-50 (2004) (distinguishing between a bankruptcy court's *in rem* power and *in personam* jurisdiction).

The application of the correct due process rules demonstrates that, however the Court construes the SOI, the *Bledsoe* Plaintiffs are not bound by any injunctive provision of the SOI because they never received the notice and opportunity to be heard that are constitutional

---

[8] For example: "The method of notice necessary to satisfy due process depends on whether a creditor is "known" or "unknown" at the time the notice is to be given." *Responsive Brief of Designated Counsel for Pre-Closing Accidents Plaintiffs on Threshold Issues Concerning New GM's Motions to Enforce the Sale Order and Injunction,* [Dkt. No. 13021], at 13; "As known creditors with cognizable claims whose contact information was readily (and reasonably) ascertainable, the members of the Pre-Sale Class were entitled to actual, direct and meaningful notice of the proceeding." *Designated Counsel's Opposition to New GM's Motion for Enforcement of Sale Order and Injunction*, [Dkt. No. 13025], at 3.

prerequisites to precluding an absent party from pursuing such purely *in personam* claims

having no relationship to any property of any debtor before the Court. Whatever relevance

prejudice may have when a Court exercises its *in rem* jurisdiction, it is wholly irrelevant to

determining the preclusive effect of an *in personam* order on those who received no notice or

opportunity to be heard prior to its entry. Put another way, a purchaser such as New GM has

no legitimate reliance interest in being secure from lawsuits based on its own wrongdoing,

lawsuits this Court lacked the power to bar when it issued the SOI, based on claims nowhere

mentioned in the SOI and bearing no conceivable relationship to the property of Old GM.

Finality interests that may be relevant to the Court's consideration of the reach of its *in rem*

orders settling property rights are irrelevant to determining whether the *Bledsoe* Plaintiffs are

bound by any order barring the assertion of their Independent Claims against New GM for its

own wrongdoing.

## I.    PROCEDURAL BACKGROUND

### A.    The SOI.

The GM bankruptcy was a "pre-packaged" transaction and the Court approved the

sale on an unusually expedited basis. "Unknown creditors" were given publication notice in

select newspapers that appear to have been selected to reach the financial community but not

the *Bledsoe* Plaintiffs or putative class members in the mid-Atlantic region.[9] The parties'

discussion of the notice issues centered on notice to investors and others who might have

claims against Old GM. The form of the notice itself was not designed to be comprehensible,

---

[9] *Order Pursuant to 11 U.S.C. §§ 105(a), 342(a), and 521(a)(1), Fed. R. Bankr. P. 1007(a) and 2002(a), (d), (f), and (i), and Local Bankruptcy Rule 1007-1 (I) Waiving Requirement to File List of Creditors and Equity Security Holders and (II) Approving Form and Manner of Notifying Creditors of Commencement of Debtor's Chapter 11 Cases and First Meeting of Creditor*, [Dkt. No. 158], at 3-4.

or even noticeable to a reasonable consumer, even if they happened upon it.[10] The Sale closed on July 10, 2009.

Pursuant to the SOI, New GM acquired substantially all of Old GM's assets. The SOI was concerned exclusively with delineating *which of the liabilities of Old GM* would be assumed by New GM and which of those Old GM would retain. The entire transaction concerned liabilities originally incurred by Old GM. There was some mention of "future claims" for those who were exposed to asbestos before the SOI and might develop injuries afterward,[11] a cause of action that could not accrue until the injury manifest. Arguably, this might be a liability originally incurred by Old GM if it were liable for the exposure that caused symptoms years later. But the SOI did not address future claims that could be asserted against New GM based on *its own conduct* after the sale.

### B.    New GM's Motion to Enforce the SOI.

On April 21, 2014, New GM moved this Court to enforce the SOI by restraining various parties from suing New GM for claims related to "ignition switch defects" insofar as such claims were based on liability that Old GM retained under the SOI. Its Motion was aimed exclusively at liabilities once held by Old GM, and made no mention of Independent Claims whatsoever.

Under the SOI, New GM argues, "New GM would be insulated from lawsuits by *Old GM's creditors based on Old GM liabilities* [New GM] did not assume."[14] New GM filed

---

[10] To the contrary, notice was a very small font, densely worded, bankruptcy notice that was sent by mail to various known creditors, sophisticated parties who might know the import of the otherwise opaque notice. Sale Procedures Order. *Id.* Exhibit A.

[11] This Court recognized at the time the SOI was entered that it would be "constitutionally suspect" to bar the claims of those on whom "the notice given . . . was not fully effective, since without knowledge of an ailment that had not yet manifested itself, any recipient would be in no position to file a present claim." *In re GM Corp.*, 407 B.R. at 505-07; *see also* [Dkt. No. 12727], at 9.

[14] *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, [Dkt. No. 12620], at 3. (*emphasis added*)

two parallel motions to enforce the SOI, one against Pre-Closing Accident Plaintiffs and a second directed at Other Monetary Plaintiffs asserting non-ignition switch hazards in vehicles made by Old GM.[15]

On the same day that New GM filed its first MTE, the *Groman* Plaintiffs filed an adversary proceeding seeking a declaratory judgment that the Sale Order is void in its attempt to preclude Presale Plaintiffs without having provided them with notice required for "known creditors,"[17] a declaratory judgment that SOI is void due to Fraud on the Court; and an independent claim for equitable relief.[18]

One day after New GM's filed its Motion to Enforce, Plaintiffs in one of the 46 lawsuits that New GM had identified as subject to the SOI, submitted an Objection to the Motion to Enforce ("**Benton Objection**").[21] *The Benton* Plaintiffs claimed that New GM's payments to other parties were impermissible preferences, that as "known creditors" or "reasonably ascertainable creditors"[22] of Old GM, they were entitled to individual notice of the SOI, and that the SOI was unenforceable because of fraud on the court.[23] The *Benton* objection mentioned no independent, non-derivative claims based on New GM's own wrongdoing.

---

[15] *See n I, supra*

[17] "Pursuant to an Order of this Court dated June 2, 2009, Old GM was required to give notice to all known creditors of the 363 Sale." *Adversary Case 14-01929. Complaint against General Motors LLC.,* [Dkt. No. 12619] at 15

[18] *Adversary Case 14-01929. Complaint against General Motors LLC.,* [Dkt. No. 12619] 20-25..

[21] *Objection to Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce The Court's July 5, 2009 Sale Order and Injunction,* [Dkt. No. 12629]. The underlying *Benton* lawsuit contains successor liability claims against New GM for ignition switch defects in vehicles manufactured by Old GM, but no Independent Claims against New GM for its own wrongdoing.

[22] *Id.* at 37.

[23] *Id.* at 34-39.

C.    The "Threshold Issue" Scheduling Orders.

The Court entered its initial scheduling order on May 16, 2015.[32]  It provided that certain issues raised by the *Groman* Adversary Proceeding and the *Benton* Objections would be heard before any other issues ("**Threshold Issues**"). Furthermore, the Court established a collective of parties, ("**Identified Parties**"), comprised of Designated Counsel for Certain Plaintiffs (the counsel group that had spoken for plaintiffs at non-substantive scheduling hearing), counsel for the *Groman* Plaintiffs, counsel for the GUC Trust, and Counsel for the Unitholders. *These parties alone* were instructed to consider whether or not to include additional issues for a hearing to take place on July 2nd, in which the Threshold Issues would be further narrowed.[35]

The Court issued a subsequent Scheduling Order on July 7, 2014, that further narrowed the Threshold Issues, restricted participation in the proceedings to "counsel for the Identified Parties,"[41] and provided that non-Threshold issues would be identified and considered with all parties reserving rights with respect to such issues. The Order authorized only "Identified Parties" to submit briefs on the threshold issues. No later Order of the Court

---

[32] The Court scheduled a May 2, 2014, scheduling hearing and requested that Plaintiffs "with the same or substantially similar positions [were] to band together and to designate one of their number who [would] speak for the group" at the May 2nd hearing. *Endorsed Order Regarding Letter Dated 4/21/2014 Filed by Arthur Steinberg* [Dkt. No. 12627]. The Court also stated that "one of the matters to be addressed at the conference [would] be the extent to which, going forward, one or more representatives of those opposing New GM's motion [would] speak for others with similar views." The subject is not mentioned again in any of the Orders relating to these proceedings. The Court never imposed any obligations on Designated Counsel to represent the interests of plaintiffs generally, and Designated Counsel recognized none.  Edward Weisenfelner hosted a meeting on April 28th, at Brown Rudnick's office, and later represented to the Court that a majority of plaintiffs' counsel in attendance had designated himself and two other counsel to speak for plaintiffs *at the May 2 hearing*. That is the extent of the record regarding the selection of "Designated Counsel."

[35] *Scheduling Order Regarding (1) Motion to Enforce, (2) Objection and (Adversary Proceeding,* [Dkt. No. 12690]*, at 5. Other non-"Identified Parties," were provided with the opportunity to speak in the upcoming July 2014 hearing. The Order provided that "[c]onsideration of non-Threshold Issues shall be deferred to a later time, and all parties shall reserve their rights with respect to such issues."

[41] Other counsel were provided a sole avenue of participation, serving a letter with the purpose of either (1) requesting the Court remove an item from the Four Threshold Issues, or (2) discovery be authorized for one of the Four Threshold Issues. *Id.*

6

provided for any opportunity for the *Bledsoe* Plaintiffs to submit papers or otherwise be heard regarding the threshold issues. Their case was not filed until after the threshold issues had been identified and framed according to other parties' contentions regarding the SOI. Their case was dismissed without prejudice on December 18, 2014,[44] and not reinstated until March 13, 2015,[45] leaving them no standing to have participated in the hearing held in February 2015 on the threshold issues.

### D.    The *Bledsoe* Lawsuit Proceedings

The *Bledsoe* lawsuit was filed in the Southern District of New York on September 19, 2014. On October 6, 2014, GM listed it on a supplement to schedule 1 to the MTE.[57] The *Bledsoe* Plaintiffs entered a No Stay Pleading and Memorandum on October 13, 2014, contending *inter alia* that the Court lacked subject matter jurisdiction over their claims and that they were not precluded by the SOI because they did not receive the due process prerequisites to such preclusion.[59] *Via* endorsement, the Court denied relief on November 10, 2014, citing to the *Phaneuf*, *Elliott*, and *Sesay* decisions.[60]

In its *Elliott*[62] and *Sesay*[63] rulings the Court cited case management concerns, indicated its decisions were preliminary to its construction of the SOI, and assured those Plaintiffs that they would have an opportunity to be heard at a later time. Because it is not clear whether the Court intended its subject matter jurisdiction decisions in those cases to

---

[44] *See General Motors LLC Ignition Switch* MDL, 14-md-02543, Order No. 29, [Dkt. No. 477]

[45] *Id.* Order No. 50, [Dkt. No. 477].

[57] *Notice of Filing Ninth Supplement to Schedule "1"* [Dkt. No. 12938], at 4.

[59] *Bledsoe Plaintiffs' No Stay Pleading*, [Dkt. 12948], at 5.

[60] *Memorandum Endorsed Order* [Dkt. No. 12991].

[62] *Id.*

[63] *Written Opinion Re Decision with Respect to No Stay Pleading, and Related Motion for Abstention*, [Dkt. No. 12989], at 1, 22.

apply to its ultimate construction of the SOI, the *Bledsoe* Plaintiffs present these arguments

here to ensure that the issues are properly preserved for appeal. The Court also construed the

SOI "in the first instance" to encompass the Independent Claims made by the *Elliott*

Plaintiffs because the SOI "imposes an unequivocal injunction against litigation against New

GM involving vehicles manufactured by Old GM or involving Old GM parts."[65]

## II.      ARGUMENT

### A.  Distinguishing the Court's §363 In Rem from Ancillary §105(a) In Personam Jurisdiction

When this Court, pursuant to 11 U.S.C. §363, authorized the sale of assets "free and

clear" of any liability that might otherwise attach to them, it did not, and could not, thereby

sell New GM immunity from suit for New GM's own wrongdoing. Such immunity from suit

was not a part of any property Old GM possessed and could offer for sale--the only property

over which the Court had jurisdiction. Those who would be injured in the future by New

GM's own wrongdoing were not "creditors" of Old GM with respect to their claims against

New GM for such injuries, and they had no conceivable "interests" in the property of Old

GM by virtue of claims they would later acquire against New GM for its own wrongdoing.

The Sale could not have been "free and clear" of their claims, and therefore enjoining their

Independent Claims could not have been "necessary or appropriate" to the Court's exercise

of its ancillary power under 11 U.S.C. §105(a).

*By virtue of its jurisdiction over the property of a debtor and its power to authorize its*

*disposition, the bankruptcy court does not acquire the power to suspend the operation of*

*laws otherwise applicable to a purchaser, implicated by its own, unlawful, use of the*

_____

*purchased assets. The Court's contrary construction of the SOI effects a startling*

*nullification of the laws of the United States and the States with respect to civil liability for*

*injuries caused by New GM's own operation of Old GM assets. The Constitution, as*

*construed by controlling authority this Court has failed to consider appropriately, does not*

*grant the Court such despotic power.*

American bankruptcy law accords bankruptcy courts exceptional and extraordinary

power in furtherance of its overarching policy to protect an ailing insolvent, besieged by

creditors and soliciting the Bankruptcy Court's protection. The automatic stay provisions of

11 U.S.C. §362, triggered by the simple filing of a petition, are the most dramatic example

through which this Court acquires the power to enjoin ongoing civil proceedings, even those

in superior Article III courts. The bankruptcy court's obligation to preserve the property of

the debtor permits it to enjoin all lawsuits against the debtor, corral all its creditors together,

and then manage the parties brought before it to ensure all are treated equitably without

creditors attempting to "jumps ahead" of those similarly situated. Its extraordinary equitable

power to bind persons not before it, by extinguishing claims they might have to the debtor's

property, is based on its jurisdiction over the property of the debtor and its ultimate authority

to issue orders regarding that property, orders that will be, like all *in rem* orders establishing

clear title to property in Anglo-American jurisprudence, "good against the world." *Tennessee*

*Student Assistance Corp. v. Hood*, 541 U.S. at 448.

But New GM is not the debtor in this proceeding,[66] and none of the extraordinary

powers accorded the Court to protect the *res* of the debtor apply in this *in personam* matter.

---

[66] Because the potential for abuse is so much greater when non-debtors try to avail themselves of the extraordinary and exceptional equitable power of the Bankruptcy Court, the Second Circuit has repeatedly admonished lower courts to exercise caution, exercising the traditional powers of the Bankruptcy Court on behalf of non-debtors – like New GM – only in exceptional circumstances (none of which are presented here).

The power of the Bankruptcy Court is rooted in, and limited by, its *in rem* jurisdiction over the property of the debtor. It only has "ancillary" power to issue *in personam* orders that are "necessary or appropriate" to carry out that *in rem* jurisdiction. §105(a). *See In re Haemmerle*, 529 B.R. 17, 25-26 (Bankr. E.D.N.Y. 2015), *citing In re Nassako*, 405 B.R. 515, 520 (Bankr.S.D.N.Y.2009). Granting New GM immunity from suit for its own wrongdoing in its operation of the assets it purchased was not and is not "necessary or appropriate" to any legitimate purpose of the Sale.

The Independent Claims that the *Bledsoe* Plaintiffs assert are *in personam* claims against the assets of New GM. When New GM is found liable with respect to these claims, no property of Old GM will be called upon to pay judgments against New GM, and no creditors of Old GM will conceivably be prejudiced. With respect to their claims against New GM for its own wrongdoing—claims that never could have been asserted against Old GM--the *Bledsoe* Plaintiffs are decidedly not "creditors" of Old GM seeking to recover from New GM what Old GM owed them, to the possible prejudice of Old GM's other creditors. They are victims of New GM's independent wrongdoing, and they assert "direct claims" against New GM that in no way derive from the Old GM estate. *In re Johns-Manville Corp.*, 517 F.3d 52, 65 (2d Cir. 2008) ("*Manville* III"), *vacated and remanded on other grounds*, 557 U.S. 137, aff'g in part & rev'g in part, 600 F.3d 135 ("*Manville* IV") (bankruptcy court has no subject matter jurisdiction over "direct claims" against debtor's insurer for insurer's own alleged wrongdoing and fact that debtor may have also been liable

---

See *e.g., In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005); *see also Teachers Ins. & Annuity Ass'n of Am. v. Bultur*, 803 F.2d 61, 65 (2d Cir. 1986).

to plaintiffs for the same injuries did not render claims against insured "derivative" of those against the debtor's estate). [67]

This Court has based its subject matter jurisdiction over these proceedings on its *in rem* jurisdiction to issue the SOI under §363, and on its inherent power, shared by all courts, to construe and enforce its own orders.[68] Respectfully, that jurisdictional analysis is overly simplistic and manifestly in conflict with this Court's limited statutory authorization and controlling rulings of the Second Circuit construing that law.

As the Court has stated, it unquestionably had *in rem* jurisdiction to issue the SOI under §363. It also may have inherent power to construe and enforce its own orders. But that is the beginning, not the end, of the analysis. The authority to issue the SOI itself carries no self-executing consequences except, like all *in rem* orders, to establish clear title to the property that Old GM sold to New GM. The Court's authority to issue the SOI under §363 gave it no authorization to issue the *injunctive* portions of the Sale Order *and Injunction*. It simply established the terms of the sale of property from Old GM to New GM.[69]

Unlike the stay injunctions that issue automatically under 11 U.S.C. § 362 upon the filing of a petition, putting the debtor's property within the bankruptcy court's *in rem*

---

[67] The Court's suggestion that, if Plaintiffs can't recover from New GM, it makes it more likely they will seek compensation from the remaining assets of Old GM, does not suffice to establish *in rem* jurisdiction over the *Bledsoe* Plaintiffs' Independent Claims. Their rights to pursue the dwindling assets of Old GM are not legally affected by whether they succeed on their Independent Claims against New GM. In any event, the *Manville III* ruling precludes such a reading of a bankruptcy court's jurisdiction, as those parties were aligned the same way.

[68] *Decision with Respect to Sesay No Stay Pleading*, [Dkt. No. 12989], at 8.

[69] While §363 is jurisdictional authority for transferring title to the property in an order that, because based on the bankruptcy court's *in rem* jurisdiction over the debtor's property and its authority to make final disposition of such property, is "good against the world," including all those with "interests" in the property, it has been authoritatively construed to give rise to no cause of action on the part of a purchaser like New GM. *In re HHG Corp.*, No. 01-B-11982 (ASH), 2006 WL 1288591, at *2 (Bankr. S.D.N.Y. May 2, 2006). Like any other order establishing title to property based on a court's *in rem* jurisdiction, it may be deployed by the purchaser to prove ownership and as a defense to claims challenging its ownership.

jurisdiction,[70] and unlike the automatic injunctions that issue under 11 U.S.C. § 524 upon final discharge of the debtor from bankruptcy[71] --injunctions which are good against the world because they are issued pursuant to the bankruptcy court's exercise of its *in rem* powers—bankruptcy law provides no explicit authority for the issuance of any injunctions in connection with a §363 sale.[72] Such power must be located in the Court's ancillary power under §105 to issue *in personam* orders "necessary or appropriate" to effectuate the Bankruptcy Court's *in rem* jurisdiction. *In re Haven Eldercare, LLC*, No. 07-32720, 2012 WL 1357054, at *1 (Bankr. D. Conn. Apr. 17, 2012). So long as the specialized notice regime applicable to the extinguishment of *in rem* interests of "creditors" has been satisfied, bankruptcy courts commonly issue determinations of property that serve to permanently extinguish the rights of various creditors because, like *in rem* jurisdiction generally, its orders are based on jurisdiction over particular property rather than the persons who may be precluded by such *in rem* orders. [73]

However, the Court has no jurisdiction to enjoin Independent Claims against New GM; the holders of such claims are not creditors of Old GM subject to preclusion pursuant to the *in rem* jurisdiction of the Court, and therefore §105 grants it no power to

---

[70] *See*, *In re Colonial Realty Co.*, 980 F.2d 125, 137 (2d Cir. 1992) ("The stay imposed by § 362(a) is automatically "applicable to all entities" without any need for the intervention of any court or ruling").

[71] "A discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(2).

[72] The *Bledsoe* Plaintiffs do not contest ownership of New GM's assets in any way, the only issues resolved by the SOI itself.

[73] It is uncontroversial for bankruptcy courts to issue, along with its extinguishment of *in rem* interests in property, *in personam* injunctive orders against those holding liens and other security interests in the *res* of the debtor, restraining such persons from asserting any such interest against the property inconsistent with the bankruptcy court's final disposition of the property. Injunctive relief restraining those with interests in the property of the debtor from asserting such interests against the good faith purchaser of the debtor's property "free and clear" of such interests, is uncontroversially within the legitimate exercise of §105 powers. Such relief serves to extinguish the very *in rem* interests that are at the root of the court's jurisdiction to authorize the sale in the first place.

enjoin their claims. [74] The Court of Appeals has recently summarized the Bankruptcy

Court's jurisdiction to enjoin claims against a non-debtor third party such as New GM

under §105 in just this way:

> [A] bankruptcy court has jurisdiction over any suit that "might have any 'conceivable
> effect' on the bankruptcy estate." §105(a) of the Bankruptcy Code empowers a court
> to "issue any order, process, or judgment that is necessary or appropriate to carry out
> the provisions of this title." Thus, we have held that a court has the power pursuant to
> § 105(a) to enjoin claims against a non-debtor third party where those claims are
> derivative, or otherwise "pose[] the specter of direct impact on the *res* of the bankrupt
> estate." The question is, essentially, "whether the direct result of a suit against a third
> party will be the removal of assets from the bankruptcy estate."

*Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 211 (2d Cir. 2014) (*citations
omitted*). [75]

## B.    The Limits Of *In Rem* Jurisdiction Over Successor Liability Claims

Ms. Bledsoe, the only *Bledsoe* Plaintiff who asserts a "successor liability" claim for

pre-sale injury, also contends that, while a bankruptcy court in this Circuit is not

categorically without authority to enjoin any "successor liability" claims against good faith

purchasers in connection with a §363 Sale--even though such interests could not literally be

*in rem* interests of creditors, in that they are assertable only against the purchaser, not against

---

[74] Courts have held that lawsuits, even those alleging successor liability claims against a non-debtor purchaser
of assets in bankruptcy proceedings, may not be enjoined if the claims arose after the bankruptcy proceedings
concluded. *See In re* Grumman, *supra*; *Ninth Ave. Remedial Group v. Allis-Chalmers Corp*, 195 B.R. 716, 732
(N.D. Ind. 1996) (sales free and clear under the Bankruptcy Code cannot extinguish successor liability claims
that arose after the bankruptcy proceedings had concluded). Where no such successor liability claims are
asserted, and instead, as here, plaintiffs assert claims based exclusively on breaches of non-derivative,
independent duties that the non-debtor owed to plaintiffs, there is no doubt that bankruptcy courts have no
jurisdiction to enjoin parties from asserting such future claims. *See Manville III, supra. See generally Marshall
v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81, 88 (2d Cir. 2014) (explaining the difference in
the extensive asbestos litigation between claims deriving from the debtor's original liability to asbestos victims,
over which the bankruptcy court may have jurisdiction, and non-derivative, direct action claims against the
debtor's insurer for breaches of its independent duties to plaintiffs, over which the bankruptcy court has no
jurisdiction).
[75] When the Court issued the SOI, one year after *Manville II* was decided, the law applicable to those
proceedings unmistakably established that the Court had no subject matter jurisdiction to enjoin independent
non-derivative claims against New GM for its own wrongdoing.

the debtor[76]--the *in rem* basis of the Court's jurisdiction to issue an injunction in connection with such a sale requires it to distinguish between different types of successor liability claims. The Court must separate claims that could potentially affect legitimate interests in increasing the value of the debtor's property for the benefit of its creditors, and therefore possibly be "necessary or appropriate" to effectuate the Sale itself, from those successor liability claims that rest on the successor's own wrongdoing. With no relation to any legitimate interest of Bankruptcy law that is "necessary or appropriate" to effectuate the Sale, these latter claims do not fall within the Court's ancillary jurisdiction under §105(a).

As the Court explained in its 2009 decision approving the SOI and rejecting objections to the free and clear provisions,[77] the Bankruptcy Court's § 363 power to authorize the sale of the debtor's property "free and clear" of "interests" was not traditionally understood to include "successor liability" claims against the purchaser—such claims were by definition *in personam* claims, assertable against the purchaser but not against the debtor at any time. Commentators have suggested that, because state law requires more than mere ownership of the former property of the debtor, but instead affirmative acts trading on and benefiting from the debtors' property (good will consisting of consumer confidence in a brand name, for example), successor liability claims should not be interpreted as an "interest" in the property of the debtor for purposes of a free and clear sale.[78] While federal courts are

---

[76] *"[In] personam* claims, including any potential state successor or transferee liability claims against New Chrysler, as well as *in rem* interests, are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction" *Decision on Debtor's Motion for Approval of Sale,* [Dkt. No. 2967], at 58 (quoting *In re Chrysler LLC,* 405 B.R. 84, 111 (Bankr. S.D.N.Y.).

[77] "Viewed nationally, the case law is split in this area, both at the Circuit Court level and in the bankruptcy Courts. Some courts have held that section 363(f) provides a basis for selling free and clear of successor liability claims, and others have held that it does not." *Id,* at 503.

[78] "[T]he transfer of property alone will not impose state law successor liability on the purchaser of that property-- "successor liability is based on the actions of the purchaser and not merely the property itself."Rachel

currently split on the issue, Second Circuit authority makes clear that bankruptcy courts are not categorically precluded from enjoining successor liability claims in connection with § 363 sales. 405 B.R. 84, at 11. *See also In re Old Carco LLC*, 492 B.R. 392, 403 (Bankr. S.D.N.Y. 2013). Accordingly, the Court had authority on the basis of its jurisdiction over Old GM's property to authorize the Sale of the property under §363, and, pursuant to that *in rem* authority, to issue the SOI giving New GM title to that property free and clear of any other interest in the property, an order good against the world with respect to title. Under §105, it had the power to effectuate that Order to restrain any *creditors* of Old GM--those with claims that derived from Old GM's ownership—so long as the specialized notice and hearing requirements of the Court's *in rem* proceedings were observed.

The successor liability claim asserted by Ms. Bledsoe, a pre-petition accident victim, does not rest on the mere *lawful* continuation of the debtor's business—the exclusive "interest" in the property of the debtor that is of concern to the Bankruptcy Court--but rather on this purchaser's continuation of the debtor's *unlawful*—possibly criminal—practices with respect to safety and risk.[79] Part of these practices include New GM's continued concealment of imminent safety dangers unwittingly faced by Ms. Bledsoe in the years since New GM took over, and New GM's concealment from Ms. Bledsoe of the fact that the hazardous ignition switch in her car were the cause of her pre-petition accidents. Because Ms. Bledsoe's "successor liability" claim is based on New GM's own law-breaking, not the mere continuation of the lawful business of a debtor, it should also be construed as an independent, non-derivative, *in personam* claim that was and is beyond the power of the Court to enjoin.

---

P. Corcoran, *Why Successor Liability Claims Are Not "Interests in Property" Under Section 363(f)*, 18 Am. Bankr. Inst. L. Rev. 697, 716 (2010).

[79] *See, Id*. at 733.

In any event, because such successor liability claims are undoubtedly *in personam* and not *in rem* as a formal matter, as the Court has noted, the SOI could not bind the *Bledsoe* Plaintiffs even with respect to such successor liability claims, because the *Bledsoe* Plaintiffs did not receive the constitutionally required notice before they could be divested of *in personam* interests.

### C.    The Distinct Due Process Regimes Applicable to *In Rem* and *In Personam* Proceedings

"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. 880, 896-902 (2008), *quoting Hansberry v. Lee*, 311 U.S. 32, 40 (1940).

Bankruptcy proceedings reflect a limited exception to that principle. Bankruptcy law constitutes "a special [remedial] scheme…expressly [foreclosing] successive litigation by nonlitigants. ." and may terminate preexisting rights "[I]f the scheme is otherwise consistent with due process." *Taylor*, 553 U.S. at 881, 95, *citing Martin v Wilks*, 490 U.S. 755, 762, n.2 (1940); *see also Richards v. Jefferson County*, 517 U.S. 793, 798-99 (1996) (*same*). The reach of the special notice and opportunity to be heard rules of that "special remedial scheme," is limited, however, to orders "necessary or appropriate" to the bankruptcy court's exercise of *in rem* jurisdiction. Once the bankruptcy court no longer acts pursuant to its *in rem* jurisdiction over the property of the debtor, the due process rights generally applicable to preclusion of *in personam* interests described in *Hansberry v.* Lee, *supra*, apply.

The Court and the Identified Parties treated Plaintiffs owning cars manufactured by Old GM and asserting claims against New GM as if they were necessarily "creditors" of Old

16

GM, and considered whether notice accorded was sufficient according to bankruptcy law's

specialized remedial scheme of due process rights regarding the prerequisites to foreclose

creditors' *in rem* interests in the debtor's property —distinguishing, for example, between

"known" and "unknown" creditors.[80] In determining that prejudice was required to make out

a due process violation in these circumstances, the Court relied on finality interests[81] that are

relevant solely to orders issued pursuant to the Court's *in rem* jurisdiction. Because the

*Bledsoe* Plaintiffs assert non-successor liability claims that are wholly *in personam* against

New GM for breaches of independent, non-derivative duties New GM owed Plaintiffs, and

because with respect to such claims they never were "creditors" of Old GM, however, the

specialized remedial scheme applicable to the Court's exercise of its *in rem* jurisdiction does

not apply. Instead, the more stringent due process regime that generally governs the

preclusion of *in personam* claims—the same rules that determine preclusion of absent class

members under FRCP 23--determines whether the *Bledsoe* Plaintiffs are or ever were bound

by the SOI.  *See In re Johns-Manville Corp.*, 600 F.3d 135, 150-58 ("*Manville* IV")

(distinguishing between applicability of "special remedial scheme" applicable to preclusion

of *in rem* interests from those applicable to *in personam* interests and holding that party who

did not receive more stringent due process not bound by bankruptcy court order enjoining it

from asserting independent, non-derivative claims). The finality interests that pertain to the

---

[80] *Designated Counsel's Opposition to New GM's Motions for Enforcement of SOI and Injunction,* [Dkt. No. 13025], at 55: "As an abstract matter, that latter issue turns on whether those noticed (which in bankruptcy most commonly are creditors and those with ownership or security interests in estate property) are "known," on the one hand, or "unknown," on the other;" *see also Decision on Threshold Issues*, at 46-47.

[81] "But in bankruptcy, the interests [of finality] inherent in the enforceability of 363 orders (on which the buyers of assets should justifiably be able to rely, and the interests of creditors depending on the maximization of estate value likewise rest) are hugely important. And to the extent that courts can respect and enforce sale orders as written unless there is genuine prejudice, they should do so." *Order Pursuant to 27 U.S.C. § 158(d), and Fed.R.Bankr.P. 8006(e), Certifying Judgment for Direct Appeal to Second Circuit*, [Dkt. No. 13178], at 76.

preclusive effect of *in rem* orders are irrelevant to such an inquiry, and no showing of

prejudice is required. *Id.*[82]

Because there is no dispute that they were not accorded the constitutionally required

notice and opportunity to be heard before its entry, the *Bledsoe* Plaintiffs were never bound

by the SOI. Because the SOI never became final as to them, they are not precluded from

challenging the Court's subject matter jurisdiction to enjoin their claims by doctrines of

equitable mootness or interests in finality. *Id.* at 149, 158.[83]

Moreover, even with respect to successor liability claims themselves, the *Manville III*

holding dictates that, because they are formally *in personam* claims that could never have

---

[82] A purchaser of a bankrupt's assets has no legitimate expectation in, and no plausible basis to rely on, a supposed grant of immunity from the application of all laws otherwise applicable to its own wrongdoing in its operation of the purchased assets.

[83] *Travelers v. Bailey* 557 *U.S.* 137, 152-54 (2009), reversed in part the Second Circuit's ruling in *Manville III*, on the ground that, even if the bankruptcy court lacked subject matter jurisdiction to enjoin suits against the non-debtor insurer, the doctrine of equitable mootness precluded those who had been accorded constitutionally requisite notice and an opportunity to be heard from collaterally attacking the subject matter jurisdiction of the Bankruptcy Court to issue the injunction in question. While collateral attacks by those who had an opportunity but failed to raise the jurisdictional issue would be precluded in the interests of finality, the Court found that finality interests did not justify preclusion of the claims of those who did not receive notice and an opportunity to participate in the proceedings. The Court remanded the case to the Second Circuit to determine which, if any, of the plaintiffs asserting "direct action" claims against the non-debtor insurer of the debtor were thereby precluded from collateral attack on the subject matter jurisdiction of the bankruptcy court to enjoin their independent, non-derivative "direct action" claims.

    On remand, the Court in *Manville IV* reiterated its earlier holding that bankruptcy courts have no subject matter jurisdiction to enjoin lawsuits between non-debtors that assert independent, non-derivative claims against a non-debtor claiming protection form a bankruptcy court order. 600 F. 3d at 152 . The Court then had to decide what due process notice and opportunity to be heard requirements would have to be satisfied before *Travelers*' mandated preclusion would apply. The Court distinguished between the "specialized remedial scheme" embodied in the bankruptcy law for the preclusion of creditor interests in the debtor's property, rooted in the bankruptcy Court's *in rem* jurisdiction, and the general due process rules used to determine preclusion of claims of absent class members under FRCP 23. *Id.* at 153.The Court held that the due process standards that apply are those that apply to *in personam* judgments generally. The basis for the holding was that, because the direct action suits were independent and non-derivative claims, the injunction under which they were to be restrained rested on the Bankruptcy Court's *in personam* power only. Applying that standard, the Court held that some of the "direct action" claimants, those plaintiffs who had actually participated in the bankruptcy proceedings leading up to the injunctive order and failed to challenge the subject matter jurisdiction of the Court prior to its final entry, were precluded by the order of the bankruptcy court, even though entered without subject matter jurisdiction, under the authority of *Travelers*. But with respect to Chubb, another party with independent, non-derivative claims against the non-debtor, the earlier order was not preclusive—because Chubb, like the *Bledsoe* Plaintiffs, did not participate in the proceedings, and did not receive the notice that due process requires before a party may be divested of an *in personam* cause of action that is not derived from the property of a bankruptcy debtor.

18

been asserted against Old GM, the determination of whether Plaintiffs are bound by the

injunction against such claims in the SOI turns on the general due process rules applicable to

preclusion of absent parties, not the specialized remedial scheme this Court applied in its

Decision. As noted above, there is no question that *Bledsoe* Plaintiffs received no such

notice, and accordingly are not precluded by the SOI from asserting either *in personam*

successor liability or Independent Claims against New GM.

### D.    Relief the *Bledsoe* Plaintiffs Seek Regarding the Judgment

> 1.    *The Court's construction of the SOI to encompass Independent Claims is untenable, and the Court should amend its findings to construe the SOI not to encompass Independent Claims.*

The SOI is silent with respect to Independent Claims. Unlike explicit provisions

barring "successor," "transferee" and other forms of *vicarious* liability, there is no explicit

provision referring to Independent Claims at all. The Court has acknowledged that

Independent Claims were never considered in the proceedings, and that, had such claims

been brought to the Court's attention, it would have specifically excluded them from the SOI

coverage, as it had done on earlier occasions.[84] The Court nevertheless construed the SOI to

encompass Independent Claims, based on the indefinite residual language "other interests of

any kind or nature whatsoever," used in the context of listing the claims that Old GM would

retain.[85]

Given that injunctive measures barring Independent Claims against New GM for its

own wrongdoing would have violated controlling Second Circuit authority limiting this

Court's subject matter jurisdiction over Independent Claims, as explained above, there is

---

[84] "If the Economic Loss Plaintiffs had made the argument back in 2009, the Court would have agreed with them." *Order Certifying for Direct Appeal*, at 12.

[85] *Id.* at 26.

every reason to interpret the SOI's silence on the issue to mean that the Order did *not*

encompass such claims. As New GM has contended, the SOI was concerned with liabilities

originally owned by Old GM, and it divided such liabilities between those retained by Old

GM and those assumed by New GM.[86] The SOI simply was not concerned with Independent

Claims at all, and accordingly there is no basis to construe language, intended to cover any

residual claims that might have been asserted against Old GM but were not explicitly

delineated, to encompass Independent Claims that could never have been asserted against

Old GM. Such a reading illogically renders claims against New GM for its own wrongdoing

"retained liabilities" of Old GM. There is no basis for construing the SOI to encompass

Independent Claims that the Court had no subject matter jurisdiction to enjoin, in the face of

textual and contextual evidence that the indefinite language utilized was never intended or

understood to encompass such claims, and in face of the absurd power that such a

construction would accord this Court to suspend the laws otherwise applicable to New GM.

> 2. *Because they did not receive constitutionally required notice, and Court's construction of the SOI to encompass Independent Claims was not reasonably foreseeable even if they had, the Bledsoe Plaintiffs cannot be bound by the SOI, and the Judgment should be amended accordingly*.

Because the Court's contrary construction of the SOI to encompass Independent

Claims against New GM for its own wrongdoing was not reasonably foreseeable, even to

those who may have received notice of those proceedings, and because the specialized

remedial scheme governing notice to creditors pursuant to the Court's *in rem* power over

property does not determine the *Bledsoe* Plaintiffs' rights regarding their Independent

Claims, as explained above, the *Bledsoe* Plaintiffs did not receive constitutionally required

---

[86] "[T]here can only be two alternatives: either the resulting claim is an Assumed Liability (which Plaintiffs concede is not the case), or all other claims relating to Old GM vehicles or parts are Retained Liabilities of Old GM." *Reply Brief by General Motors LLC on Threshold Issues Concerning its Motion to Enforce the Sale Order and Injunction*, [Dkt. No. 13048], at 6.

20

notice that the SOI proceedings involved their Independent Claims against New GM. As such, the *Bledsoe* Plaintiffs are not bound by the SOI without needing to show prejudice, as purely *in personam* rather than *in rem* interests are at stake.

> 3. *The Judgment should be amended to permit Ms. Bledsoe, a pre-sale accident victim, to assert Independent Claims against New GM.*

The Judgment should be amended in any event because, even on the Court's analysis that prejudice is required to make out a due process violation, Ms. Bledsoe, a pre-Sale accident victim, was prejudiced in the same way as pre-Sale purchasers of Old GM cars alleging economic loss in that the SOI is "overbroad" with respect to her Independent Claims as well. The Court failed to consider the possibility that pre-Sale accident victims such as Ms. Bledsoe may have Independent Claims against New GM for its own wrongdoing. Ms. Bledsoe should be able to pursue these claims following the Court's own reasoning, as she was denied constitutionally required notice, similarly to economic loss plaintiffs, and was prejudiced because the Court would have narrowed the SOI's reach over Independent Claims, just as it ruled it would have with respect to Independent Claims asserted by economic loss plaintiffs. The provision of the Judgment barring Ms. Bledsoe from pursuing any claims against New GM related to her accident should be amended to permit her to pursue Independent Claims.

> 4. *The Judgment should be generally amended to exclude the Bledsoe Plaintiffs' Independent Claims from its reach.*

As explained above, the law is clear that the Court has no subject matter jurisdiction to enjoin the Bledsoe Plaintiffs from pursuing their Independent Claims against New GM. Even if the SOI is properly construed to have encompassed such claims, the *Bledsoe* Plaintiffs are not bound by the SOI because they did not receive the requisite notice and

opportunity to be heard that apply when determining whether their wholly *in personam* claims against non-debtor New GM are precluded. Because they did not participate in those proceedings nor received the requisite notice and opportunity to be heard, they are not precluded in any way by those proceedings, and are therefore free to challenge the subject matter of the Court without regard to whether they suffered "prejudice." Because the Court lacks subject matter jurisdiction over their Independent Claims, and because they are not precluded by the SOI from now challenging the Court's subject matter jurisdiction, the Judgment should be amended to exclude their claims.

> 5. *The Judgment should be amended to exclude successor liability claims based on New GM's unlawful operation of Old GM assets.*

The Judgment should also be amended to distinguish between successor liability claims based on a mere continuation of the lawful business of the debtor and successor liability claims alleging, as here, the continuation of unlawful business practices of the debtor, on the ground that the latter claims are beyond the legitimate interests of bankruptcy law and may not be extinguished by a SOI, when not enjoined in furtherance of a "free and clear" sale.

> 6. *The Judgment should be amended to deny New GM's MTE in its entirety.*

Because, as described above, the *Bledsoe* Plaintiffs did not receive the requisite notice and opportunity to be heard in order to enjoin any of their *in personam* claims, they were not bound by any of its provisions and the SOI is not enforceable against them. This principle applies to their Independent Claims as well as to their successor liability claims.

> 7. *The Judgment should be amended so that it is limited to the construction of the SOI and denies New GM's MTE in all other respects.*

22

The Court has no power to issue successive injunctions. *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 968 (11th Cir. 2012) ("The party seeking to enforce an injunction cannot, however, obtain a successive injunction—i.e., an injunction ordering compliance with an existing injunction"). New GM's exclusive remedy for alleged violations of the SOI is to seek enforcement through a contempt motion. *Walls v. Wells Fargo Bank*, N.A., 276 F.3d 502, 507 (9th Cir. 2002) (contempt is the appropriate remedy for violations of § 524, and no further remedy is necessary); *In re Haemmerle, 529 B.R. 17, 25-26 (Bankr. E.D.N.Y. 2015)* (("§105 of the Bankruptcy Code has been widely accepted as providing statutory authority to enforce the discharge injunction by holding a party who violates the injunction in contempt, and assessing appropriate punishment"). Because New GM failed to (and could not possibly) establish the requisite elements for holding the *Bledsoe* Plaintiffs in contempt of the SOI,[87] it is entitled no relief by way of its motion, and it was manifest error for the Court to impose injunctive measures in its Judgment.

8.   *The Court has no power to order dismissal of or to censor the Bledsoe Plaintiffs' pleadings pending before an Article III Court.*

Because the Court has no power to issue any final judgment on the *Bledsoe* Plaintiffs' state law claims against New GM, *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011), it may neither censor the contents of Plaintiffs' pleadings pending before other courts nor do indirectly what it cannot do directly by ordering plaintiffs to take action to their prejudice. *See Elliot et al. v General Motors LLC,* 1:14-cv-00691-KBJ [Dkt. No. 20] (mooting this Court's order to party to withdraw pleadings and expressing doubt that bankruptcy court has such power to interfere with Article III Court's docket in such a way). The Judgment should

---

[87] Before issuing a contempt order, a district court must find that the alleged contemnor had notice of the underlying order, that the terms of the order were clear and unambiguous, and that proof of noncompliance was clear and convincing. *See Perfect Fit Indus. v. Acme Quilting Co., Inc.,* 646 F.2d 800, 808 (2d Cir.1981); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, No. 13-1038-CV, 2015 WL 2214893, at *3 (2d Cir. May 13, 2015).

23

be amended to reflect the appropriate limits of the Court's power, to simply construe the SOI and, if appropriate, to grant contempt for violations of the SOI.

> 9.   *The Bledsoe Plaintiffs cannot be bound by the Judgment because they were precluded from participating in the "threshold issues."*

The *Bledsoe* Plaintiffs are entitled to have their legal interests represented by counsel of their choice who has appeared for them, and to preserve issues for appeal as they see fit. Even were this an *in rem* proceeding where concepts of virtual representation and representation by committee may be permissible, *see Taylor v. Sturgell*, 553 U.S. at 895, which it is not, the *Bledsoe* Plaintiffs' interests were not virtually represented by Designated Counsel, who had conflicting interests of which the Court was aware, and who failed to raise appropriate legal arguments on behalf of the *Bledsoe* Plaintiffs. Whether such virtual representation may satisfy due process in an *in rem* proceeding, over the objection and in the face of a manifest conflict between parties actually present before the Court, is doubtful.[88] However, there is no doubt  that in an *in personam* proceeding like this one, the *Bledsoe* Plaintiffs are entitled to have their own objections heard and considered, and to choose counsel to make those arguments on their behalf. The Parties' Proposed Judgments each recognized that the *Bledsoe* Plaintiffs were not Identified Parties heard during the "threshold issues" proceedings, and each provided an opportunity for them to object before the Judgment would be applied to their lawsuits.[89] Such an opportunity to object is required by the Due Process rights of distinct parties in consolidated proceedings, *See In re General Motors LLC Ignition Switch Litigation*, 1:14-md-02543. Order No 50 [Dkt. No. 1024].

---

[88] *See Taylor*, 553 U.S. at 904 (discussing conflicts in virtual representation)

[89] *Letter Regarding Proposed Judgment for the Court's April 15, 2015 Decision on New GM's Motions to Enforce*, [Dkt. No. 13136], at ¶ 13(a); *Letter Enclosing Proposed Judgment of Co-Designated Counsel and Counsel for Economic Loss Plaintiffs and Designated Counsel and Counsel for Ignition Switch Pre-Closing Accident Plaintiffs in Response to the April 15, 2015 Decision*, [Dkt. No. 13137], at ¶ 13(a).

   10. *The Bledsoe Plaintiffs are entitled to relief from the void provisions of the SOI.*

Because the Court's Judgment is void as applied to the *Bledsoe* Plaintiffs in that it exceeds the subject matter jurisdiction of the court,[90] enforces the SOI against them in violation of their due process rights,[91] and applies Judgment to them despite their lack of opportunity to participate and be heard in the "threshold issues" proceedings, the *Bledsoe* Plaintiffs are entitled to relief from the Judgment in its entirety.

## III.        CONCLUSION

For all the foregoing reasons, the *Bledsoe* Plaintiffs Motion seeking relief related to the Court's Judgment and Endorsed Order should be granted in its entirety.


                                          Respectfully submitted,

                                          */s/  Gary Peller*_____
                                          Gary Peller
                                          Counsel for the *Bledsoe* Plaintiffs
                                          600 New Jersey Ave. NW
                                          Washington, DC  20001
                                          (202) 662-9122
                                          peller@law.georgetown.edu


[90] Judgment is void under Rule 60(b) where the Court has usurped jurisdiction. *See, Estate of Shefner ex rel. Shefner v. Beraudiere*, 582 F. App'x 9, 12 (2d Cir. 2014).

[91] *See Sanchez v. MTV Networks*, 525 F. App'x 4, 6 (2d Cir. 2013) (quoting *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260 (2010) due process violation of fundamental rights to notice or opportunity to be heard render judgment void).