Jason A. Zweig (JZ-8107)
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email:  jasonz@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone:  206-623-7292
Email: steve@hbsslaw.com

*Counsel for the People of the State of
California, acting by and through Orange
County District Attorney Tony Rackauckas and
the State of Arizona*

Mark P. Robinson, Jr. (*pro hac vice*)
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
19 Corporate Plaza Drive
Newport Beach, California 92660
Telephone: 949-720-1288
Email: mrobinson@rcrlaw.net

*Counsel for the People of the State of
California, acting by and through Orange
County District Attorney Tony Rackauckas*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
|  | : |  |
| In re: | : | CHAPTER 11 |
|  | : | Case No.:  09-50026 (REG) |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : |  |
| f/k/a/ General Motors Corp., *et al.*, | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |
-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
## <u>WITHDRAW THE REFERENCE WITH REGARD TO NO STRIKE PLEADINGS</u>

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ......................................................................1

II.    BACKGROUND ...........................................................................................5

    A.    The Ignition Switch Defect and New GM's Parade of Recalls ..............5

        1.    The States' claims against New GM..............................................5

            a.    Arizona.................................................................................5

            b.    California. ............................................................................7

III.    THE DECISION AND JUDGMENT'S IMPACT ON THE STATES' CLAIMS..............8

    A.    The MDL Proceeding ...........................................................................9

IV.    STATEMENT OF JURISDICTION.................................................................10

V.    ARGUMENT ...............................................................................................11

    A.    Legal Standard for Withdrawal of the Reference .................................11

    B.    The Bankruptcy Court Lacks Final Authority to Adjudicate the No Strike Pleadings .................................................................................12

    C.    Withdrawal of the No Strike Pleadings Promotes the Efficient Use of Judicial Resources and Minimizes Cost and Delay .............................13

    D.    Withdrawal of the No Strike Pleadings Does not Interfere with the Uniform Administration of Bankruptcy Law ......................................16

    E.    The States are not Forum Shopping.....................................................18

VI.    CONCLUSION...........................................................................................19

010440-13  787989 V1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  2006 WL 337667 (S.D.N.Y. Feb. 10, 2006) .................................................................12, 18

*In re Burger Boys, Inc.*,
  94 F.3d 755 (2d Cir. 1996) .........................................................................................4, 11

*In re Complete Mgmt., Inc.*,
  2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002) .................................................................16

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
  462 B.R. 457 (S.D.N.Y. 2011) .......................................................................................17, 18

*In re EbaseOne Corp.*,
  2006 WL 2405732 (Bankr. S.D. Tex. June 14, 2006) ..........................................................19

*In re Ephedra Prods. Liab. Litig.*,
  329 B.R. 1 (S.D.N.Y. 2005) ..........................................................................................11

*In re Extended Stay, Inc.*,
  466 B.R. 188 (S.D.N.Y. 2011) .......................................................................................17

*In re G.M. Crocetti, Inc.*,
  2008 WL 4601278 (Oct. 15, 2008) .................................................................................14

*In re Houbigant, Inc.*,
  185 B.R. 680 (S.D.N.Y. 1995) .......................................................................................15

*In re Johns-Manville Corp.*,
  600 F.3d 135 (2d Cir. 2010) ..........................................................................................3

*In re Laventhol & Horwath*,
  139 B.R. 109 (S.D.N.Y. 1992) .......................................................................................11

*Mirant Corp. v. The S. Co.*,
  337 B.R. 107 (N.D. Tex. 2006) .......................................................................................18

*In re Motors Liquidation Co.*,
  529 B.R. 510 (Bankr. S.D.N.Y. 2015) ......................................................................... *passim*

*In re Oakwood Homes, Corp.*,
  2007 WL 2071730 (D. Del. July 17, 2007) ......................................................................4, 17

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993) ........................................................................ *passim*

*In re Pan Am. Corp.*,
   163 B.R. 41 (S.D.N.Y. 1993) ................................................................13, 14, 18

*In re Parmalat Finanziaria S.p.A.*,
   320 B.R. 46 (S.D.N.Y. 2005) ......................................................................13, 15

*In re Quebecor World (USA)*,
   2012 WL 5289919 (S.D.N.Y. Oct. 26, 2012) .............................................................4

*ResCap Liquidating Trust v. PHH Mortg. Corp.*,
   518 B.R. 259 (S.D.N.Y. 2014) .................................................................. *passim*

*In re Residential Cap. LLC*,
   519 B.R. 593 (S.D.N.Y. 2014) ......................................................................13, 18

*In re Residential Cap., LLC*,
   527 B.R. 865 (S.D.N.Y. 2014) ............................................................................16

*Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*,
   454 B.R. 307 (S.D.N.Y. 2011) ............................................................................11

*Solutia Inc. v. FMC Corp.*,
   2004 WL 1661115 (S.D.N.Y. July 27, 2004) .......................................................15

*Stern v. Marshall*,
   131 S. Ct. 2594 (2011) .........................................................................................3

*In re Wedtech Corp.*,
   81 B.R. 237 (S.D.N.Y. 1987) ..............................................................................13

*Wellness Int'l Network, Ltd. v. Sharif*,
   135 S. Ct. 1932 (2015) ..................................................................................11, 12

**Statutes**

28 U.S.C. § 157(a) ..................................................................................................10

28 U.S.C. § 157(b)(1) ............................................................................................12

28 U.S.C. § 157(b)(2) ............................................................................................12

28 U.S.C. § 157(c)(1) ............................................................................................12

28 U.S.C. § 157(c)(2) ............................................................................................12

28 U.S.C. § 157(d) ........................................................................................4, 10, 11

28 U.S.C. § 1334 ..................................................................................................................10

CAL. BUS. & PROF. CODE § 17208 .......................................................................................7

**Other Authorities**

Fed. R. Bankr. P. 9033 ........................................................................................................12

010440-13  787989 V1

The State of Arizona ("Arizona") *ex rel.* Mark Brnovich, the Attorney General, and the

People of the State of California ("California"), by and through Orange County District Attorney

Tony Rackauckas, respectfully submit this *Memorandum of Law* in support of the *Motion to*

*Withdraw the Reference*, pursuant to 28 U.S.C. § 157(d), Bankruptcy Rule 5001, Rule 5011-1 of

the Local Bankruptcy Rules (the "Motion"), filed contemporaneously herewith.[1]

## I.    PRELIMINARY STATEMENT

For nearly five years, General Motors LLC ("New GM") knowingly concealed the

Ignition Switch Defect, a dangerous safety defect that causes the loss of power, an inability to

control speed and braking functions, and the disablement of airbags.  New GM's blatant

disregard for safety resulted in tragic consequences, including more than a hundred deaths,

thousands of injuries, and billions of dollars of losses.  Numerous reports suggest that the

Department of Justice is considering criminal charges against New GM in connection with its

cover-up of the Ignition Switch Defect.[2]  New GM has already conceded that it violated the law

by failing to properly disclose the Ignition Switch Defect and conduct a timely recall in its

Consent Order with the National Highway Safety Administration.[3]

While continuing to hide the Ignition Switch Defect, New GM made numerous

misrepresentations to consumers in Arizona and California concerning the safety and reliability

of its vehicles and the integrity of the New GM brand.  In response to New GM's unconscionable

disregard for public safety and its blatant misrepresentations, Arizona and California each

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Decision on Motion to Enforce Sale Order, In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015) (the "*Decision*") or in the *Judgment*, dated June 1, 2015 [ECF No. 13177] (the "*Judgment*").

[2] *See, e.g.*, Christopher Matthews and Mike Spector, *U.S. Weighs Wire-Fraud Charges Against General Motors*, WALL STREET JOURNAL (June 9, 2015 2:45 p.m.), *available at* http://www.wsj.com/articles/u-s-weighs-wire-fraud-charge-against-general-motors-1433853283; Danielle Ivory, Ben Protess, and Bill Vlasic, *G.M. Inquiry Said to Find Criminal Wrongdoing*, N.Y. TIMES (May 22, 2015), *available at* http://www.nytimes.com/2015/05/23/business/gm-inquiry-said-to-find-criminal-wrongdoing.html?_r=0#.

[3] *See Consent Order, In re TQ14-001 NHTSA Recall No. 14V-047* (U.S. Dep't of Transp. May 16, 2014), *available at* http://www.nhtsa.gov/staticfiles/communications/pdf/May-16-2014-TQ14-001-Consent-Order.pdf, at 4.

commenced law enforcement actions against New GM seeking injunctive relief under state consumer protection statutes.

The Arizona action asserts that New GM's post-Sale conduct violated the Arizona Consumer Fraud Act, ARIZ. REV. STAT. § 44-1521, *et seq.*[4] The California action asserts that New GM's post-Sale conduct violated California's Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200, *et seq.*) and False Advertising Law (CAL. BUS. & PROF. CODE § 17500, *et seq.*).[5]

New GM's conduct has led to a fire storm of negative publicity, governmental investigations, and an avalanche of litigation. The Arizona and California actions are pending in the Superior Court in Arizona and California, respectively. This Court is presiding over the MDL Proceeding.[6] The Bankruptcy Court maintains jurisdiction over post-confirmation matters in the chapter 11 proceedings of General Motors Corporation ("Old GM"). Most recently, the Bankruptcy Court adjudicated four Threshold Issues in connection with New GM's contested Motions to Enforce the Sale Order[7] and entered the Decision and Judgment.[8]

---

[4] *See Complaint for Injunctive and Other Relief, State of Arizona v. General Motors LLC*, No. CV2014-014090 (Superior Court, Maricopa County, AZ) (the "*Arizona Complaint*"), attached hereto as Ex. A.

[5] *See First Amended Complaint for Violations of California Unfair Competition Law and False Advertising Law, People of California v. General Motors LLC*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) (the "California Complaint"), attached hereto as Ex. B.

[6] Over 150 class actions have been brought against New GM alleging economic loss damages, many of which are being jointly administered for pretrial purposes in a multi-district proceeding before Judge Jesse Furman in the District Court, Case No. 14-MD-2543 (JMF) (the "MDL Proceeding"). *See Motors Liquidation Co. GUC Trust, Annual Report* (Form 10-K), at 21 (May 22, 2015) ("GUC Trust 10-K").

[7] *See* Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, dated April 21, 2014 [ECF No. 12620]; Motion of General Motors LLC Pursuant to 11 U.S.C §§ 105 and 363 to Enforce this Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in *Pre-Closing Accident Lawsuits*, dated August 1, 2014 [ECF No. 12807]. Judgment on a third Motion to Enforce relating to the Non-Ignition Switch Plaintiffs was deferred pending determination of the other Motions to Enforce. *See In re Motors Liquidation Co.*, 529 B.R. at 523.

[8] The Decision and Judgment are on appeal and certain plaintiffs are seeking that the appeals be heard in the first instance before the District Court. *See Notice of Appeal*, dated June 2, 2015, ECF No. 13185; *Notice of Appeal*, dated June 10, 2015, ECF No. 13194.

In relevant part, the Decision found that "Independent Claims"[9] were not barred under the Sale Order and may proceed. *See In re Motors Liquidation Co.*, 529 B.R. at 598. The Arizona and California Complaints assert only Independent Claims. However, the Bankruptcy Court stayed the State actions after concluding that certain allegations contained therein somehow violate the Sale Order.[10]

The Bankruptcy Court's imposed stay is subject to the States' right to show a good faith basis to maintain their actions (a "No Strike Pleading"). *See* Judgment ¶ 12(c). Accordingly, the States have filed No Strike Pleadings setting forth the reasons why the Arizona and California Complaints should not be stayed or allegations contained therein stricken.[11] For the reasons set forth below, withdrawal of the reference of the No Strike Pleadings is necessary and proper.

Resolution of the No Strike Pleadings is properly before this Court under 28 U.S.C. § 157. Indeed, under *Manville IV*,[12] as well as *Stern v. Marshall*,[13] the Bankruptcy Court lacks jurisdiction to prospectively enjoin the State actions – law enforcement actions seeking injunctive relief, profit disgorgement and civil penalties against New GM based, not on any theory of successor liability, but solely on its own, non-derivative post-Sale acts and omissions.

The States are not seeking an "escape hatch" from Bankruptcy Court, but rather the District Court's determination of the following discrete legal issues:

(i)       whether the State actions raise Independent Claims;

---

[9] "Independent Claims" are defined as "claims against New GM for any causes of action that might exist arising solely out of New GM's own, independent, post-Closing acts." *In re Motors Liquidation Co.*, 529 B.R. at 598.

[10] *See Decision re Form of Judgment*, entered May 27, 2015 [ECF No. 13162] (the "Decision on Judgment"), at 6; Judgment ¶ 12(a).

[11] *See State of Arizona's "No-Strike" Pleading*, dated June 16, 2015, ECF No. 13211, attached hereto as Ex. C (exhibit omitted); *People of the State of California's "No-Strike" Pleading*, dated June 16, 2015, ECF No. 13210, attached hereto as Ex. D (exhibit omitted).

[12] *See In re Johns-Manville Corp.*, 600 F.3d 135 (2d Cir. 2010) ("*Manville IV*").

[13] 131 S. Ct. 2594 (2011).

(ii)    whether the Bankruptcy Court lacks jurisdiction to prospectively enjoin the State

actions; and

(iii)    whether factual allegations (as distinguished from legal claims) concerning Old

GM and its pre-Sale conduct in the State actions is somehow improper.

Since the No Strike Pleadings involve significant non-core matters and substantial

interpretation of non-bankruptcy law, the District Court should withdraw the reference "for

cause."[14]  Under longstanding Second Circuit precedent as set forth in *Orion Pictures* and

*Burger Boys*, the threshold test to determine whether "cause" exists is whether or not a cause of

action is essential to the administration of a bankruptcy estate, *i.e.*, whether the claim is "core" or

"non-core."[15]  The No Strike Pleadings require a determination of whether the State actions

assert Independent Claims arising under state statutes.  Thus, the No Strike Pleadings are

patently non-core.  Given that the States have not consented to the Bankruptcy Court's

adjudication of the dispute, these claims must be finally determined by an Article III court and

should be withdrawn.

Judicial economy supports withdrawal.  Withdrawal would allow this Court, which is

considering similar claims under the Economic Loss Plaintiffs' Amended Consolidated

Complaint,[16] to finally determine the merits of the No Strike Pleadings.  It is also likely that

other plaintiffs will file similar No Stay, No Strike and Objection Pleadings and seek withdrawal

---

[14] Withdrawal of the reference is mandatory when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  *See* 28 U.S.C. § 157(d).  The States are not seeking mandatory withdrawal because consideration of state, as opposed to federal, law does not mandate withdrawal.  *See In re Quebecor World (USA)*, 2012 WL 5289919, at *1 (S.D.N.Y. Oct. 26, 2012) ("This case raises no genuine conflict between Title 11 and other federal (as opposed to state) laws and, accordingly, does not qualify for mandatory withdrawal under Section 157(d)."); *In re Oakwood Homes, Corp.*, 2007 WL 2071730, at *2 (D. Del. July 17, 2007) (same).

[15] *See In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

[16] *See Second Amended Consolidated Complaint, In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-md-2543-JMF (filed June 12, 2015), ECF No. 1038 (the "Amended Consolidated Complaint").

of the reference.  Withdrawal here would promote judicial economy and uniformity, and minimize cost and delay to the parties.

Accordingly, the States respectfully request that this Court withdraw the reference of the No Strike Pleadings.

## II.    BACKGROUND

### A.    The Ignition Switch Defect and New GM's Parade of Recalls

Beginning in February and March 2014, New GM first disclosed the existence of the Ignition Switch Defect which, to date, has been linked to 111 deaths and 220 serious injuries.[17] Although New GM knew about the Ignition Switch Defect since its inception in 2009, it concealed its existence from the public for nearly five years.[18]

Following the February and March recalls, New GM issued numerous additional recalls for a series of additional defects, recalling approximately 26 million vehicles by early August 2014.[19]

### 1.    The States' claims against New GM.

#### a.    Arizona.

On November 19, 2014, the Attorney General of Arizona commenced the Arizona action, which alleges that New GM violated the Arizona Consumer Fraud Act.  *See* Arizona Compl. ¶¶ 494-511.  Through this law enforcement action Arizona seeks injunctive relief and civil penalties.  The Arizona action seeks to hold New GM liable for only its ***own*** acts and omissions ***after*** the Bankruptcy Court approved the 363 Sale.  The Arizona action is not predicated on a

---

[17] *See* Detailed Overall Program Statistics, GM Ignition Compensation Claims Resolution Facility (June 5, 2015), *available at* www.GMIgnitionCompensation.com/docs/program_Statistics1.pdf.

[18] As the Bankruptcy Court recognized, at least twenty-four (24) Old GM personnel, including engineers, senior managers, and attorneys, were informed or otherwise aware of the Ignition Switch Defect, all of whom were transferred to New GM.  *See In re Motors Liquidation Co.*, 529 B.R. at 538, 557.

[19] *See* Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014, *In re Motors Liquidation Co.*, Case No. 09-50026 (REG), dated August 8, 2014 [ECF No. 12826], Ex. D ¶ 77.

successor liability theory and does ***not*** seek to recover ***any*** damages resulting from the actions or conduct of Old GM.

The claims in the Arizona Complaint all relate to New GM's post-Sale conduct or omissions in:  (i) concealing the existence of the many known defects plaguing an astounding number of models and years of GM-branded vehicles; (ii) maintaining a corporate culture that valued cost-cutting over safety and actively discouraging New GM personnel from flagging or addressing safety issues; while (iii) falsely marketing its brand and its vehicles as safe and reliable.  *See, e.g.*, *id.* ¶¶ 8-10, 494-511.

As the Arizona Complaint alleges, after the 363 Sale, "New GM repeatedly proclaimed that it was a company committed to innovation, safety and maintaining a strong brand."  *See id.* ¶ 6.  The Complaint provides many examples of New GM's public statements to that effect, and New GM's marketing of its vehicles as safe, reliable and of high-quality.  *See id.* ¶¶ 35-78.  New GM made these misrepresentations in order "to boost vehicle sales while knowing that millions of GM-branded vehicles, across numerous models and years, were plagued with serious and concealed safety defects."  *See id.* ¶ 79.  The Arizona Complaint further alleges that New GM failed to disclose, and affirmatively concealed, both its own systemic devaluation of safety and a staggering and ever-growing number of safety defects in GM-branded vehicles – at least 60 separate defects affecting over 27 million vehicles according to recalls announced during the first ten months of 2014.  *See id.* ¶ 115.  New GM's conduct caused Arizona residents to purchase GM-branded vehicles under false pretenses and, as a result of the revelation of New GM's fraudulent omissions and extreme mishandling of safety issues, the value of ***all*** GM-branded vehicles diminished.  *See id.* ¶¶ 10, 22-23.

b.    **California.**

On June 27, 2014, Tony Rackauckas, Orange County District Attorney, filed the

California action against New GM asserting violations of California's Unfair Competition Law

and False Advertising Law.  *See* California Compl. ¶¶ 1, 25, 253-74.  The California Complaint

alleges that New GM has committed:  (i) acts or practices that constitute unfair competition

within the meaning of the Unfair Competition Law; and (ii) acts and or practices that constitute

false advertising within the meaning of the False Advertising Law.  *Id.* ¶¶ 254-71.

The California action is a law enforcement action for civil penalties and injunctive relief

against New GM based ***exclusively*** on New GM's independent violations of the California

Business and Professions Code §§ 17200 & 17500, *et seq.  Id.* ¶¶ 253-74.  The California action

seeks to hold New GM liable for only its own acts and omissions after the Bankruptcy Court

approved the 363 Sale and does not assert a successor liability claim.  *Id.*  Indeed, claims under

the Unfair Competition Law are subject to a four year statute of limitations period.  *See* CAL.

BUS. & PROF. CODE § 17208, so, by definition those claims did not arise until June 2010 – four

years prior to the filing of the California action.

The California action asserts that New GM is liable as a result of its post-Sale conduct or

omissions in:  (i) concealing, failing to disclose, and omitting important safety-related material

information that was known only to New GM and that could not reasonably have been

discovered by California consumers (including defects affecting the ignition, power steering,

airbags, brake lights, gear shift systems, and seatbelts in New GM vehicles (*see* California

Compl. ¶¶ 35, 179-211)); and (ii) repeatedly and knowingly making untrue and misleading

statements in California, including through advertising, marketing, and other publications,

regarding the purported reliability and safety of its vehicles and the importance of safety to New

GM – including repeated characterizations of New GM vehicles as "safe" and "reliable" and

assertions that "safety" and "product quality" were the key focuses of New GM's "new culture." *Id.* ¶¶ 225-252.

In sum, both the Arizona and California Complaints assert claims based ***solely*** on the post-Sale conduct of New GM. As such, the claims do not fall properly within the category of claims barred by the Sale Order as more fully described in the No Strike Pleadings.

## III.    THE DECISION AND JUDGMENT'S IMPACT ON THE STATES' CLAIMS

In April 2014, New GM sought to enjoin the prosecution of numerous actions against it asserting economic loss arising from the Ignition Switch Defect by filing the Motion to Enforce. New GM asserted, *inter alia*, that these actions asserted successor liability claims or claims seeking "to hold New GM liable for economic damages based on Old GM's conduct – claims that are prohibited by the Sale Order." Motion to Enforce ¶¶ 28-31. New GM asserted that the State actions were also subject to the Motion to Enforce.[20]

On April 15, 2015, the Bankruptcy Court entered its Decision.[21] The Bankruptcy Court found that the Ignition Switch Plaintiffs were "known creditors" who were denied the notice that due process requires, and were prejudiced by the overbreadth of the Sale Order. *See In re Motors Liquidation Co.*, 529 B.R. at 524-27. Therefore, the Ignition Switch Plaintiffs' due process rights were violated. *See id.* at 527. To remedy this due process violation, the Decision and Judgment permits the Ignition Switch Plaintiffs to pursue "claims against New GM for any causes of action that might exist arising solely out of New GM's own, independent, post-Closing acts." *Id.* at 598; Judgment ¶ 4 ("The Sale Order shall be deemed modified to permit the

---

[20] *See* Notice of Filing of Sixth Supplement to Schedule "1" to the Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, dated August 7, 2014 [ECF No. 12818]; Notice of Filing of Twelfth Supplement to Schedule "1" to the Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, dated December 1, 2014 [ECF No. 13009].

[21] The Decision and Judgment are subject to appeal by several parties. *See* ECF Nos. 13179, 13180, 13185, 13194, 13200.

assertion of Independent Claims.").  Accordingly, under the Decision, the States should be free to proceed with the State actions.

However, the Decision on Judgment determined that the Complaints "intermix claims involving pre- and post-sale conduct" and that "[r]eliance on allegations of that character was expressly prohibited under the Court's decision."  Decision on Judgment at 6.  The Bankruptcy Court then stayed the State actions pending appeal or until the Complaints were amended or "judicially determined (by this or any higher court) not to require amendment."  *See id.*; Judgment ¶ 12(a).  Under the Judgment, absent amendment, the States must make a showing of a good faith basis to maintain that the allegations, claims, and/or causes of action should not be stricken from the State Complaints because only Independent Claims are pled.  *See* Judgment ¶ 12(c)-(d).

On June 16, 2015, the States filed No Strike Pleadings, which contend that the States allege solely Independent Claims that should not be enjoined or stricken and over which the Bankruptcy Court lacks jurisdiction.

## A.    The MDL Proceeding

Since disclosure of the Ignition Switch Defect, over 250 class actions have been brought against New GM alleging economic loss damages, wrongful death and personal injury.  *See* GUC Trust 10-K at 21.  Many of these class actions are being jointly administered for pretrial purposes in the MDL Proceeding.  *See id.*  On June 12, 2015, Lead Counsel in the MDL Proceeding filed the Amended Consolidated Complaint.  The Amended Consolidated Complaint asserts numerous Independent Claims against New GM under various federal non-bankruptcy and state laws, including state consumer protection acts.

Like the State actions, the Amended Consolidated Complaint seeks to hold New GM liable for Independent Claims relating to New GM's concealment of defects in certain GM-

-9-

branded vehicles or parts and New GM's misrepresentations concerning the safety and reliability of certain of its vehicles and the integrity of the New GM brand. *See, e.g.*, Am. Compl. ¶¶ 4-12. For example, the Amended Consolidated Complaint alleges that post-Sale, New GM engaged in unlawful, unfair, and fraudulent acts and practices prohibited by California's Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200, *et seq.*), including, *inter alia*, by falsely asserting that GM-branded cars were safe and reliable in advertisements and other publications knowing the statements were false and likely to mislead consumers. *See, e.g.*, *id.* ¶¶ 191-226, 1493-1515.

## IV.    STATEMENT OF JURISDICTION

28 U.S.C. § 1334(b) vests in the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334.

Under 28 U.S.C. § 157(a), the district court may refer actions within its bankruptcy jurisdiction to the bankruptcy courts within its district. *See* 28 U.S.C. § 157(a). Under the *Amended Standing Order of Reference* signed by Acting Chief Judge Loretta A. Preska dated January 31, 2012, actions within the District Court's bankruptcy jurisdiction are automatically referred to the Bankruptcy Court for the Southern District of New York.

28 U.S.C. § 157(d) permits a district court to withdraw cases or proceedings from the bankruptcy court "for cause shown," and it mandates withdrawal of the reference when "resolution of the proceeding requires consideration of both [the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

# V.    ARGUMENT

## A.    Legal Standard for Withdrawal of the Reference

The District Court has broad authority to withdraw the automatic reference to the Bankruptcy Court of any proceeding "in whole or in part, … on its own motion or on timely motion of a party, for cause shown."[22]  *See* 28 U.S.C. § 157(d).[23]

Whether "cause" exists is determined by weighing various factors, known as the *Orion* factors, including:  "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors."  *In re Burger Boys, Inc.*, 94 F.3d at 762; *see also In re Orion Pictures Corp.*, 4 F.3d at 1101.

Following *Stern v. Marshall*, another factor has been identified – whether the bankruptcy court has final power to adjudicate the matter, including whether the parties knowingly and voluntarily consented to have the bankruptcy court adjudicate the claim.  *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1944-49 (2015); *ResCap Liquidating Trust v. PHH Mortg. Corp.*, 518 B.R. 259, 265-66 (S.D.N.Y. 2014) (noting that courts in this District have modified the *Orion* test to include final power to adjudicate the matter as a factor).

As set forth below, each of the *Orion* factors weigh in favor of withdrawal of reference.

---

[22] The States have timely moved to withdraw the reference by filing the Motion contemporaneously with the No Strike Pleadings.  Timeliness is a fact specific inquiry that has been interpreted to mean "as soon as possible after the moving party has notice of the grounds for withdrawing the reference."  *See Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*, 454 B.R. 307, 316-17 (S.D.N.Y. 2011) (citations omitted).  Further, given New GM's likely opposition to the No Strike Pleadings, the Motion is not premature.  *See In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5-6 (S.D.N.Y. 2005) (a matter becomes a "contested matter" even before a request is opposed if such opposition is reasonably foreseeable); *In re Laventhol & Horwath*, 139 B.R. 109, 113 (S.D.N.Y. 1992) (motion to withdraw the reference prior to objection by party in interest was timely given that the parties would be adversaries in near future).

[23] 28 U.S.C. § 157(d) requires withdrawal of the reference when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  As noted above, the States are not seeking mandatory withdrawal.

**B.      The Bankruptcy Court Lacks Final Authority to Adjudicate the No Strike Pleadings**

The threshold question in a permissive withdrawal analysis is whether a claim is "core" or "non-core" under title 28 and whether the bankruptcy court has final power to adjudicate the matter.[24]  This is so because it is generally most efficient to proceed before the court making final determinations.  *See ResCap Liquidating Trust*, 518 B.R. at 265-66; *Orion*, 4 F.3d at 1101. When non-core claims predominate the proceeding, "unnecessary costs could be avoided by a single proceeding" before the District Court where all issues can be finally adjudicated.  *See Orion*, 4 F.3d at 1101.

The No Strike Pleadings require a determination of, *inter alia*, whether the State actions assert Independent Claims[25] and does not involve the restructuring of debtor/creditor rights. Thus, the No Strike Pleadings raise non-core claims under 28 U.S.C. § 157(c)(1) and withdrawal is appropriate.  *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 337667, at *4-5 (S.D.N.Y. Feb. 10, 2006) (withdrawing non-core claims that were "not unique to a bankruptcy proceeding" and did not implicate "matters [with] which the bankruptcy court would ordinarily be expected to have greater familiarity").

Given that the States have not consented to final determination by the Bankruptcy Court, the Bankruptcy Court does not have final authority to adjudicate this matter and withdrawal is

---

[24] Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, which are referred from the District Court, and may enter appropriate orders and judgments, subject to review under section 158 of title 28.  *See* 28 U.S.C. § 157(b)(1).  For matters that are non-core under 28 U.S.C. § 157(b)(2), bankruptcy judges may only issue proposed findings of fact and conclusions of law to the District Court, and any final order or judgment must be entered by the District Court.  *See* 28 U.S.C. § 157(c)(1).  Upon timely and specific objection of any party, the District Court shall review proposed findings of fact and conclusions of law *de novo*.  *Id.; see also* Fed. R. Bankr. P. 9033.  Bankruptcy judges may enter final judgment on non-core issues only where all parties have consented to final determination.  *See* 28 U.S.C. § 157(c)(2); *see also Wellness Int'l Network*, 135 S. Ct. at 1944-49 (finding that bankruptcy courts have authority to finally adjudicate claims for which litigants are constitutionally entitled to an Article III adjudication upon "knowing and voluntary" consent).

[25] The Arizona action asserts that New GM's post-Sale conduct and omissions violated the Arizona Consumer Fraud Act, ARIZ. REV. STAT. § 44-1521, *et seq.*  In turn, the California action asserts that New GM's post-Sale conduct and omissions violated California's Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200, *et seq.*) and False Advertising Law (CAL. BUS. & PROF. CODE § 17500, *et seq.*).

-12-

appropriate under the first *Orion* factor. That the No Strike Pleadings require reference to the

Sale Order (as interpreted in the Decision and Judgment) does not transform the dispute into a

core matter. For example, in *Residential Funding Co.*, plaintiff argued that a breach of contract

action relating to an indemnification provision was a core matter because the dispute required

reference to a bankruptcy court order approving a settlement agreement under which the

indemnification obligation was incurred. *See In re Residential Cap. LLC*, 519 B.R. 593, 601

(S.D.N.Y. 2014). Judge Castel rejected that argument, noting that the bankruptcy court's

retention of jurisdiction to interpret and enforce its own orders is irrelevant to a core/non-core

determination. *See id*. Because the proceeding did not depend on bankruptcy law for its

existence, it was non-core. *See id.* at 600-02. Similarly, the State actions raise Independent

Claims against New GM based on its own Post-Sale conduct and omissions, and the reference to

the scope of the Sale Order fails to change the non-core nature of the No Strike Pleadings.

C.    **Withdrawal of the No Strike Pleadings Promotes the Efficient Use of Judicial Resources and Minimizes Cost and Delay**

Good cause to withdraw the reference exists when it leads to the efficient use of judicial

resources. *See In re Parmalat Finanziaria S.p.A.*, 320 B.R. 46, 50 (S.D.N.Y. 2005) (holding that

the "higher interest … of judicial efficiency" justified withdrawal of core proceeding under

predecessor statute to Chapter 15). This goal is particularly relevant where, as here, the

proceeding to be withdrawn shares common issues of fact or law with actions pending in the

District Court. *See In re Wedtech Corp.*, 81 B.R. 237, 239 (S.D.N.Y. 1987) (finding "good

cause" to withdraw the reference in the interests of fairness and judicial economy based on the

"overlapping of facts, transactions, and issues" with on-going District Court actions).

For example, in *In re Pan Am Corp.,* an adversary proceeding before the Bankruptcy

Court arose from the same factual context as two related actions before the District Court. *See In*

*re Pan Am. Corp.*, 163 B.R. 41, 42-44 (S.D.N.Y. 1993).  The adversary proceeding sought, *inter alia*, damages for Delta's bad faith refusal to participate in Pan Am's reorganization, while the related District Court actions sought wages that certain employees allegedly would have received from the reorganized Pan Am.  *See id.* at 42.  Withdrawal would allow the three cases to be consolidated and the overlapping issues of fact to be heard and decided in one forum.  *See id.* at 44.  Thus, the District Court held that "the higher interest … of promoting judicial efficiency" justified withdrawal even though the proceeding involved core claims.  *See id.* at 43.

Here, withdrawal of the No Strike Pleadings is particularly appropriate because the causes of action in the Amended Consolidated Complaint share common issues of fact and law with the issues to be determined in the No Strike Pleadings.  As it is likely additional plaintiffs will file and seek withdrawal of No Stay, No Strike and Objection Pleadings, withdrawal of the reference will ensure judicial economy and uniformity as these actions may be collectively decided by the District Court.  Judicial economy is further underscored if the appeal of the Decision and Judgment is heard in the first instance before the District Court (as several plaintiffs advocate).  *See ResCap Liquidating Trust*, 518 B.R. at 266-67 (finding "that this proceeding would be transferred to the District Court" where similar actions are pending "informs the Court's analysis" and favors withdrawal).  Moreover, the No Strike Pleadings and the Amended Consolidated Complaint also raise similar questions of statutory construction.  Indeed, claims for the violation of California's Unfair Competition Law and Arizona's Consumer Fraud Act are asserted in the Amended Consolidated Complaint.  *See* Am. Compl. ¶¶ 1297-1321, 1493-1515.

Proceeding in the forum that has familiarity with the issues will reduce costs and delay, further justifying withdrawal.  *See In re G.M. Crocetti, Inc.*, 2008 WL 4601278, at *6 (Oct. 15,

2008) (finding that when related District Court action was "proceeding apace; there [was] no undue delay and therefore no prejudice to [debtor] from the withdrawal"); *In re Houbigant, Inc.*, 185 B.R. 680, 686 (S.D.N.Y. 1995) (finding that "the resources of the [parties] will not be further taxed" by withdrawal because, *inter alia*, the District Court was "familiar with the facts of this case [and had] had the parties before it several times").

The District Court has, among other things, held many conferences with the parties regarding case management and pre-trial matters, ordered the production of documents by New GM, and instituted protocols to govern discovery.[26]  The District Court's familiarity with the facts and claims at issue in the No Strike Pleadings will help minimize costs and delay and supports withdrawal.

Accordingly, withdrawal will maximize efficiency and ensure that the MDL Proceeding fulfills its mandate to provide for the orderly administration of pretrial proceedings and avoidance of the cost and delay of a two-step process.  *See Parmalat Finanziaria*, 320 B.R. at 50-51 (withdrawing the reference because, *inter alia*, permitting the bankruptcy court to decide certain issues in the first instance would be inefficient and counterproductive to the goals of the multi-district litigation).

In addition, rather than have the Bankruptcy Court determine the issues in the No Strike Pleadings subject to *de novo* review by the District Court, judicial economy and efficiency are better served by withdrawal of the No Strike Pleadings now.  *See Orion*, 4 F.3d at 1101 (noting that "unnecessary costs could be avoided by a single proceeding in the district court" in non-core matters); *Solutia Inc. v. FMC Corp.,* 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004) ("By

---

[26] *See, e.g.*, MDL Order Nos. 7 [ECF No. 215]; 12 [ECF No. 296]; 14 [ECF No. 312]; 20 [ECF No. 383]; 31 [ECF No. 526]; 32 [ECF No. 529]; 36 [ECF No. 604]; 52 [ECF No. 926].

litigating this non-core matter in the district court, judicial resources will be conserved instead of having two courts administer two rounds of briefing and argument on the same issues.").

Finally, there are no countervailing efficiency considerations militating in favor of denying the motion.  In that regard, it should be noted that Judge Gerber has retired from the Bankruptcy Court, and it is unclear how long he will remain under recall status.  In addition, the Bankruptcy Court's expertise in bankruptcy law and familiarity with Old GM's chapter 11 proceedings is irrelevant to determining whether the States have properly asserted Independent Claims.  *See In re Residential Cap., LLC*, 527 B.R. 865, 872 (S.D.N.Y. 2014) (withdrawing non-core claim because, *inter alia*, the bankruptcy judge had no expertise in state law and resolution of the claim would not draw upon his "unparalleled depth of familiarity with the underlying bankruptcy case").

**D.    Withdrawal of the No Strike Pleadings Does not Interfere with the Uniform Administration of Bankruptcy Law**

Courts also consider whether withdrawal of the reference will undermine the uniform administration of bankruptcy law.  *See Orion Pictures*, 4 F.3d at 1101.  This factor weighs in favor of withdrawal when the proceeding concerns legal issues that are more commonly resolved in district courts.  *See In re  Complete Mgmt., Inc.*, 2002 WL 31163878, at *3 n.5 (S.D.N.Y. Sept. 27, 2002) (withdrawal of core matters warranted because, *inter alia*, the district court had familiarity with related securities litigation and the proceeding required determination of "legal issues more commonly resolved by [the district] court than the bankruptcy courts"); *ResCap Liquidating Trust*, 518 B.R. at 266-67 (withdrawing the reference because, *inter alia*, the district court had more familiarity with claims governed by state law and the claims did not involve "complicated questions of bankruptcy law").

By contrast, when the proceeding implicates complex and novel questions of bankruptcy law that are better decided by a bankruptcy court in the first instance, courts are less inclined to withdraw the reference. *See In re Extended Stay, Inc.*, 466 B.R. 188, 207 (S.D.N.Y. 2011) (denying withdrawal of the reference because, *inter alia*, "[a]llowing the bankruptcy courts to consider complex questions of bankruptcy law [such as questions related to § 546(e)] … promotes a more uniform application of bankruptcy law").

The District Court has the benefit of Judge Gerber's interpretation of the Sale Order in the Decision. The No Strike Pleadings require a determination of the "good faith basis" to maintain claims against New GM in light of the Decision – *i.e.*, whether the State actions raise Independent Claims. *See* Judgment ¶¶ 12(c). Thus, the No Strike Pleadings require the evaluation of the state law claims in the Arizona and California Complaints – not complex bankruptcy law issues – which favors withdrawal. *See ResCap Liquidating Trust*, 518 B.R. at 266-67.

Moreover, resolution of the No Strike Pleadings by the Bankruptcy Court is not necessary to ensure the uniform, expedited administration of Old GM's bankruptcy estate. Old GM's Chapter 11 Plan was confirmed over four years ago and has been substantially consummated. *See In re Motors Liquidation Co.*, 529 B.R. at 536. Resolution of the non-core No Strike Pleadings is not integral to the restructuring of debtor/creditor rights. *Cf. In re Oakwood Homes, Corp.,* 2007 WL 2071730, at *2 (D. Del. July 17, 2007) (uniformity in bankruptcy administration supports hearing core proceedings "integral to the restructuring of debtor-creditor rights" in the Bankruptcy Court); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 473 (S.D.N.Y. 2011) (withdrawal of claims under state law, the resolution of which will not deplete the bankruptcy estate, "have no impact that would require uniform, coordinated

-17-

adjudication before the Bankruptcy Court"). There are no concerns that withdrawal of the No

Strike Pleadings will interfere with the bankruptcy process or uniformity in the administration of

Old GM's estate. *See Mirant Corp. v. The S. Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006)

(expediting the bankruptcy process not a relevant factor on a motion to withdraw the reference

where bankruptcy judge had already confirmed the plan of reorganization).

Accordingly, withdrawal of the No Strike Pleadings is appropriate under this *Orion*

factor.

**E.      The States are not Forum Shopping**

In determining whether withdrawal is appropriate, courts seek to prevent forum shopping

by considering whether withdrawal is sought for legitimate reasons, such as promoting

efficiency, or rather sought to obtain an undue advantage. *See In re Residential Cap., LLC*, 519

B.R. at 605-06.

Where, as here, withdrawal of the reference would allow the proceeding to be heard in

the most efficient forum, forum shopping is not a concern. *See Pan Am*, 163 B.R. at 44 (finding

no forum shopping when party sought to have disputes arising from the same factual context

adjudicated in one forum); *Adelphia Commc'ns*, 2006 WL 337667, at *5 ("[T]he usual objectives

of 'forum-shopping' – finding a jurisdiction with more favorable law, and geographical

convenience – do not apply, both the bankruptcy court and the district court being bound to

follow Second Circuit law, and both courts being located in downtown Manhattan.").

Moreover, a motion to withdraw the reference for a non-core proceeding is by definition

not forum shopping because the movant is merely seeking to reduce time and expense by

requesting that the court that must finally adjudicate the proceeding hear and determine the

dispute in the first instance. *See Development Specialists*, 462 B.R. at 473 ("[I]nsofar as the

[Movants] are entitled to have their dispute … finally determined in this Court, the Court does

-18-

not condone forum shopping by allowing them to come here sooner rather than later."); *In re EbaseOne Corp.*, 2006 WL 2405732, at *4 (Bankr. S.D. Tex. June 14, 2006) (finding that moving to withdraw the reference does not constitute forum shopping when it is "nothing more than a reasonable effort to have a non-core proceeding litigated with a minimum of time and expense" by the court empowered "to adjudicate the dispute once and for all").  Given that purpose here, withdrawal is appropriate.

## VI.    CONCLUSION

In sum, all *Orion* factors favor withdrawal and this Court should exercise its discretion to withdraw the reference with regard to the No Strike Pleadings.

Dated:  New York, New York, June 16, 2015.

HAGENS BERMAN SOBOL SHAPIRO LLP


By:   /s/ Jason A. Zweig
　　　Jason A. Zweig (JZ-8107)
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
Email:  jasonz@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone:  206-623-7292
Email:  steve@hbsslaw.com

*Counsel for the People of the State of California, acting by and through Orange County District Attorney Tony Rackauckas and the State of Arizona*

Mark P. Robinson, Jr. (*pro hac vice*)
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
19 Corporate Plaza Drive
Newport Beach, California 92660
Telephone: 949-720-1288
Email: mrobinson@rcrlaw.net

*Counsel for the People of the State of California, acting by and through Orange County District Attorney Tony Rackauckas*

010440-13  787989 V1