**Hearing Date and Time: July 1, 2015 at 9:45 a.m. (Eastern Time)**
**Opposition Deadline: June 24, 2015 at 4:00 p.m. (Eastern Time)**

| | |
|---|---|
| Edward S. Weisfelner | Sander L. Esserman |
| David J. Molton | STUTZMAN, BROMBERG, |
| May Orenstein | ESSERMAN & PLIFKA, A |
| Howard S. Steel | PROFESSIONAL CORPORATION |
| BROWN RUDNICK LLP | 2323 Bryan Street, Suite 2200 |
| Seven Times Square | Dallas, Texas 75201 |
| New York, New York 10036 | Telephone: 214-969-4900 |
| Telephone: 212-209-4800 | Email: esserman@sbep-law.com |
| Email: eweisfelner@brownrudnick.com | |
| Email: dmolton@brownrudnick.com | |
| Email: morenstein@brownrudnick.com | |
| Email: hsteel@brownrudnick.com | |

*Designated Counsel for the Ignition Switch Plaintiffs*
*& Certain Non-Ignition Switch Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:                                                             : Chapter 11
                                                                   :
MOTORS LIQUIDATION COMPANY, *et al.*,                              : Case No.: 09-50026 (REG)
         f/k/a General Motors Corp., *et al.*,                     :
                                                                   :
                                         Debtors.                  : (Jointly Administered)
------------------------------------------------------------------X

**THE IGNITION SWITCH PLAINTIFFS' AND CERTAIN
NON-IGNITION SWITCH PLAINTIFFS' REQUEST FOR A STAY
OF DISTRIBUTIONS OF GUC TRUST ASSETS AND RESPONSE TO MOTION
OF WILMINGTON TRUST COMPANY, AS GUC TRUST ADMINISTRATOR
AND TRUSTEE, FOR AN ORDER GRANTING AUTHORITY (A) TO EXERCISE
NEW GM WARRANTS AND LIQUIDATE NEW GM COMMON STOCK AND (B)
TO MAKE CORRESPONDING AMENDMENTS TO THE GUC TRUST AGREEMENT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..............................................................................................................................4

I.      The Impact Of The Decision And Judgment On The Relief Requested And Plaintiffs' Claims. ....................................................................................................4

II.     The GUC Trust Assets. .............................................................................................6

III.    The GUC Trust Motion. ............................................................................................7

RESPONSE AND REQUEST FOR STAY OF DISTRIBUTIONS .................................................8

          A.     Plaintiffs Will Suffer Irreparable Harm Absent A Stay Of Distributions Of GUC Trust Assets. .................................................................................................9

          B.     Staying Distributions Of GUC Trust Assets Will Not Prejudice GUC Trust Beneficiaries. .........................................................................................................10

          C.     Plaintiffs Have Demonstrated A Substantial Possibility Of Success On The Merits. ..................................................................................................................12

          D.     The Public Interest Favors A Stay. ........................................................................13

          E.     Plaintiffs Should Not Be Required To Post A Bond. ............................................14

CONCLUSION ................................................................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),
 361 B.R. 337 (S.D.N.Y. 2007), appeal dismissed, No. 07-0279-BK, 2007 WL 7706743 (2d Cir. Feb. 9, 2007)..................................................................8, 9, 10, 12, 14

AT&T v. Winback & Conserve Program, Inc.,
 42 F.3d 1421 (3d Cir. 1994), cert. denied, 514 U.S. 1103 (1995) ..........................................13

Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.),
 504 B.R. 754 (S.D.N.Y. 2014)..........................................................................................8, 12

Biermann v. RHI Holdings, Inc. (In re Bidermann),
 No. M-47, 1994 WL 376090 (S.D.N.Y. July 18, 1994) ............................................................8

Cnty. Squire Assocs. of Carle Place, L.P. v. Rochester Cnty. Savings Bank (In re Cnty. Squire Assocs. of Carle Place, L.P.),
 203 B.R. 182 (2d Cir. 1996) ...................................................................................................10

Freeman v. Neisner Bros., Inc. (In re Neisner Bros., Inc.),
 10 B.R. 299 (Bankr. S.D.N.Y. 1981).................................................................................9, 14

Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),
 10 F.3d 944 (2d Cir. 1993).......................................................................................................5

In re Gen. Motors Corp.,
 409 B.R. 24 (Bankr. S.D.N.Y. 2009) .....................................................................................10

Goldstein v. Albert (In re Albert),
 No. 99-31520, 2002 WL 1432663 (Bankr. S.D.N.Y. June 20, 2002) .....................................8

Hamilton Watch Co. v. Benrus Watch Co.,
 206 F.2d 738 (2d Cir. 1953)...................................................................................................13

Hirschfeld v. Bd. of Elections in the City of New York,
 984 F.2d 35 (2d Cir. 1992)................................................................................................8, 12

In re Liggett,
 118 B.R. 219 (Bankr. S.D.N.Y. July 17, 1990) .......................................................................8

Lutin v. The U.S. Bankr. Court for the S. Dist. of N.Y. (In re Advanced Mining Sys., Inc.),
 173 B.R. 467 (S.D.N.Y. 1994)..........................................................................................10, 11

In re Motors Liquidation Co.,
    529 B.R. 510 (Bankr. S.D.N.Y. 2015) .................................................................1, 3, 5, 6, 9, 13, 14

In re Netia Holdings, S.A.,
    278 B.R. 344 (Bankr. S.D.N.Y. 2002) ....................................................................................9

OMC, Inc. v. Local Union 28 of the Sheet Metal Workers' Int'l Union (In re
    OMC, Inc.),
    No. 10-14864 MC, 2010 WL 4026097 (Bankr. S.D.N.Y. Oct. 13, 2010) ...............................8

In re Passover,
    No. 01 CIV. 0003 (NRB), 2001 WL 1204137 (S.D.N.Y. Oct. 11, 2001), aff'd,
    29 F. App'x 747 (2d Cir. 2002) ..............................................................................................8

Rubin v. Pringle (In re Focus Media, Inc.),
    387 F.3d 1077 (9th Cir. 2004), cert. denied, 544 U.S. 923 (2005) ..........................................9

In re St. Johnsbury Trucking Co., Inc.,
    185 B.R. 687 (S.D.N.Y. 1995) ..............................................................................................11

Texaco Inc. v. Pennzoil Co.,
    784 F.2d 1133 (2d Cir. 1986), rev'd on other grounds, 481 U.S. 1 (1987) ...........................14

U.S. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 44 F.3d 1082, 1091
    (2d Cir. 1995) ........................................................................................................................14

U.S. Sec. Exch. Comm. v. Citigroup Global Mkts. Inc.,
    673 F.3d 158 (2d Cir. 2012) ....................................................................................................8

**Statutes**

11 U.S.C. § 105(a) ...........................................................................................................................1

**Other Authorities**

Fed. R. Bankr. P. 8007 ..................................................................................................................14

Fed. R. Bankr. P. 8007(a) ...............................................................................................................1

Fed. R. Bankr. P. 8007(a)(1)(A) .....................................................................................................8

Fed. R. Bankr. P. 8007(a)(1)(C) .....................................................................................................8

Fed. R. Bankr. P. 8007(a)(1)(D) .....................................................................................................8

By and through undersigned Designated Counsel,[1] the Ignition Switch Plaintiffs[2] and certain Non-Ignition Switch Plaintiffs[3] (collectively, the "**Plaintiffs**") respectfully submit this: (I) request (the "**Request For Stay**"), pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 8007(a), for a stay of distributions of GUC Trust Assets pending resolution of the Ignition Switch Plaintiffs' appeal from the Decision and Judgment and (II) response (the "**Response**") to the *Motion of Wilmington Trust Company, as GUC Trust Administrator and Trustee, for an Order Granting Authority (A) to Exercise New GM Warrants and Liquidate New GM Common Stock and (B) to Make Corresponding Amendments to the GUC Trust Agreement*, dated June 3, 2015 [ECF No. 13186] (the "**Motion**"). In support of the Response and Request For Stay, the Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Plaintiffs do not object to the conversion of the GUC Trust's holdings of New GM Securities into cash and reserving such cash for future distributions. However, the Plaintiffs object to the GUC Trust Administrator's distribution of such cash prior to the resolution of the Ignition Switch Plaintiffs' appeal of the Bankruptcy Court's application of the doctrine of

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in In re Motors Liquidation Co., 529 B.R. 510 (Bankr. S.D.N.Y. 2015) (the "**Decision**"), the *Judgment*, dated June 1, 2015 [ECF No. 13177] (the "**Judgment**") or the Motion, as applicable.

[2] As defined in the Judgment, the term "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [ECF No. 12826], at 3). Because the Subject Vehicles in the Judgment are only those vehicles involved in the February and March Recalls (Recall No. 14-V-171000), the term Ignition Switch Plaintiffs as used in the pleading includes only Plaintiffs who own or lease those vehicles, and does not include those Plaintiffs who own or lease other vehicles with defective ignition switches (made by both Old and New GM) that were recalled in June and July of 2014.

[3] The term "**Non-Ignition Switch Plaintiffs**" shall mean all plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect in an Old GM vehicle other than the Ignition Switch in the vehicles subject to Recall No. 14-V-171000, or based on or arising from economic losses and diminution in value of their GM-branded vehicles based on the Ignition Switch Defect or other alleged defects in Old GM vehicles.

equitable mootness to their claims and determination of the Non-Ignition Switch Plaintiffs' rights to access GUC Trust Assets.[4]

2. The Plaintiffs requested that the GUC Trust Administrator agree to stay such distributions but it refused. Therefore, the Plaintiffs file this Response and Request for Stay to avoid the extreme prejudice and irreparable harm that would result from further distributions of GUC Trust Assets.

3. As set forth below, the Plaintiffs meet each of the factors required for a stay. Accordingly, the Bankruptcy Court, or the District Court upon withdrawal, should enjoin the GUC Trust Administrator from making distributions pending resolution of the appeal.

4. <u>First</u>, Plaintiffs will be irreparably harmed if further distributions of GUC Trust Assets are permitted. Additional distributions of GUC Trust Assets may effectively render the appeal moot as Assets are depleted. This prejudice is particularly acute prior to a determination of Plaintiffs' rights to the existing GUC Trust Assets and the proceeds of the accordion feature.

5. <u>Second</u>, a stay will not cause other interested parties to suffer substantial injuries. The GUC Trust Administrator states that the relief requested in the Motion is necessary to crystalize favorable tax attributes. <u>See</u> Motion ¶¶ 3, 24. That can be accomplished without making distributions of GUC Trust Assets prior to the resolution of the appeal. Moreover, any

---

[4] The Ignition Switch Plaintiffs will file a motion for leave to file a late proposed class proof of claim against Old GM and related relief and a corresponding motion to withdraw the reference in the near term. The Non-Ignition Switch Plaintiffs will file a "**Reservation of Rights / GUC Trust Asset Pleading**" under the Judgment seeking to reserve the right to, at a future date, file and seek allowance of late claims against Old GM, seek a recovery on such claims from the assets of the GUC Trust, and litigate issues (i) through (iii) identified in paragraph 13(a) of the Judgment. <u>See</u> *The Ignition Switch Plaintiffs' No Strike Pleading With Regard To The Second Amended Consolidated Complaint And The Non-Ignition Switch Plaintiffs' (I) Objection Pleading With Regard To The Second Amended Consolidated Complaint And (II) GUC Trust Asset Pleading*, dated June 24, 2015, filed contemporaneously herewith. Given the outcome of the appeal will be informative as to the Non-Ignition Switch Plaintiffs' rights on these issues, Plaintiffs seek to stay distributions of GUC Trust Assets pending resolution of the appeal, without prejudice to further requests to extend any stay.

2

prejudice to GUC Trust Beneficiaries resulting from a temporary delay in distributions will be minimal and is outweighed by the irreparable harm Plaintiffs will suffer if a stay is not granted.

6. <u>Third</u>, the Ignition Switch Plaintiffs have a substantial likelihood of success on the merits of the appeal. The Bankruptcy Court found that equitable mootness was a close-call and conjectured that it would have enjoined the November 2014 Distribution if Plaintiffs made such a request.

7. Despite those misgivings, the Bankruptcy Court applied the doctrine of equitable mootness to the Ignition Switch Plaintiffs' claims based on its view that the only sources of recovery for the Ignition Switch Plaintiffs were already reserved and the reasonable expectations of Unitholders would be unjustifiably altered should the amount of aggregate claims against the GUC Trust increase.

8. The Bankruptcy Court failed to appropriately address, *inter alia*, the impact of the accordion feature or the release of Tax Holdback reserves—possible recovery sources for Plaintiffs that would not overturn the Plan or upset Unitholders' reasonable expectations. Accordingly, the Bankruptcy Court's findings on equitable mootness may be subject to reversal on appeal and the Bankruptcy Court, or the District Court on withdrawal, may find the Non-Ignition Switch Plaintiffs are entitled to access GUC Trust Assets. Until these issues are resolved, the status quo should be maintained.

9. <u>Fourth</u>, the public interest supports a stay. The Bankruptcy Court identified its equitable mootness decision as a "matter of considerable public importance." <u>In re Motors Liquidation Co.</u>, 529 B.R. at 597. Absent a stay, the appeal of this key issue may become moot and additional higher court review sacrificed.

10. In sum, each of the relevant factors supports staying further distributions of GUC Trust Assets pending the outcome of the appeal.

3

**BACKGROUND**

**I.    The Impact Of The Decision And Judgment
On The Relief Requested And Plaintiffs' Claims.**

11.    By the Motion, the GUC Trust Administrator seeks authority to convert the GUC Trust's holdings of New GM Securities into cash in a purported effort to take advantage of certain alleged favorable tax attributes. See Motion ¶¶ 1, 20, 24. The GUC Trust Administrator states it will then distribute (or reserve) such cash. See id. ¶ 1.

12.    The backdrop to the Motion is the ongoing litigation between the Plaintiffs and New GM related to the Ignition Switch Defect and other safety defects in GM-branded vehicles. A corollary to such litigation is the open issue of Plaintiffs' rights to access GUC Trust Assets for their claims against Old GM.

13.    In April 2014, New GM sought to enjoin the prosecution of numerous class actions arising out of the Ignition Switch Defect by filing Motions to Enforce the Sale Order.[5]

14.    The Bankruptcy Court identified four threshold issues for the contested Ignition Switch Motion to Enforce (the "**Threshold Issues**").[6] Relevant here is the fourth Threshold Issue—whether any of the claims asserted by the Ignition Switch Plaintiffs were or could be against the Old GM bankruptcy estate (and/or the GUC Trust), and if so, whether such claims or the actions asserting such claims should be disallowed or dismissed on grounds of equitable mootness. See Supplemental Scheduling Order at 3.

15.    On April 15, 2015, the Bankruptcy Court entered its Decision. The Court found that the Ignition Switch Plaintiffs were prejudiced by the lack of proper notice of the Bar Date;

---

[5]    See *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [ECF No. 12620], ¶¶ 28-31.

4

therefore their due process rights were violated. See In re Motors Liquidation Co., 529 B.R. at 526, 574. To remedy this due process violation, the Decision provides that the Ignition Switch Plaintiffs may file late proofs of claim. Id. at 583.

16. However, after canvassing the five Chateaugay factors,[7] the Bankruptcy Court concluded that while "late claims filed by the Plaintiffs might still be allowed, assets transferred to the GUC Trust under the Plan could not now be tapped to pay them" under the doctrine of equitable mootness. Id. at 529.

17. On May 27, 2015, the Bankruptcy Court entered its *Decision RE Form of Judgment* in which it stated that "when Unitholders . . . acquired their units, they had a reasonable expectation that the total universe of claims filed against Old GM would not increase. And while they knew that there was an accordion feature, they also knew that claims exposure would result . . . only from previously filed claims." *Decision RE Form of Judgment*, dated May 27, 2015 [ECF No. 13162], at 9-10.

18. On June 1, 2015, the Bankruptcy Court entered its Judgment implementing the Decision. The Judgment provides that "based on the doctrine of equitable mootness, in no event shall assets of the GUC Trust held at any time in the past, now, or in the future . . . be used to satisfy any claims of the [Ignition Switch] Plaintiffs." Judgment ¶ 6.

---

[6] See *Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929*, dated May 16, 2014 [ECF No. 12697] (the "**Supplemental Scheduling Order**"), at 2-3.

[7] See Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 952-53 (2d Cir. 1993) (listing the following factors for an equitable mootness determination as whether: (i) the court can still order some effective relief; (ii) such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity;" (iii) such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court;" (iv) the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings;" and (v) the appellant "pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.").

5

19. On June 2, 2015, the Ignition Switch Plaintiffs filed a *Notice of Appeal* from the Decision and Judgment with the United States District Court for the Southern District of New York. See *Notice of Appeal*, dated June 2, 2015 [ECF No. 13185]. The issues on appeal include whether the Court erred in applying the doctrine of equitable mootness to the claims of the Ignition Switch Plaintiffs.[8]

20. In contrast, the Bankruptcy Court deferred consideration of the Motion to Enforce[9] relating to the Non-Ignition Switch Plaintiffs. See In re Motors Liquidation Co., 529 B.R. at 522.

21. As set forth above, on June 24, 2015, the Non-Ignition Switch Plaintiffs filed a Reservation of Rights / GUC Trust Asset Pleading seeking to reserve, without prejudice, the Non-Ignition Switch Plaintiffs' right to, at a future date, file and seek allowance of late claims, seek a recovery on such claims from the assets of the GUC Trust, and litigate issues (i) through (iii) identified in paragraph 13(a) of the Judgment.

**II.    The GUC Trust Assets.**

22. The GUC Trust holds GUC Trust Assets valued at approximately $935 million. See Motion ¶ 18 (valued as of March 31, 2015).

23. As of March 31, 2015, there were approximately $31.854 billion in Allowed General Unsecured Claims, a Disputed General Unsecured Claim in the amount of $20 million, and $1.5 billion in Term Loan Avoidance Claims. See Motors Liquidation Company GUC Trust, Annual Report for Year Ended March 31, 2015 (Form 10-K) (May 22, 2015) (the "**GUC Trust 2015 10-K**"), at 35; Motion ¶ 11.

---

[8]    See ECF No. 13219.
[9]    See ECF No. 12808.

24. The GUC Trust Assets may be increased by, *inter alia*, triggering the accordion feature in the Sale Agreement, wherein New GM must contribute up to 30 million shares of New GM Common Stock to the GUC Trust if the aggregate amount of Allowed General Unsecured Claims against Old GM exceeds $35 billion.[10]

25. Unless Plaintiffs' claims against Old GM are allowed, the accordion feature will remain unavailable. Conversely, given the quantum of Plaintiffs' claims (conservatively estimated at $10 billion), the allowance of such claims would trigger the accordion feature and result in significant value available to Plaintiffs.

### III. The GUC Trust Motion.

26. On June 3, 2015, the GUC Trust Administrator filed the Motion. See ECF No. 13186. Pursuant to the Motion, the GUC Trust Administrator "seeks authority to convert all of the New GM Securities it holds into cash, and then *distribute* (or reserve) such cash to or for the benefit of GUC Trust beneficiaries in lieu of the New GM Securities they would have otherwise received." Motion ¶ 1 (emphasis added).

27. Specifically, the GUC Trust Administrator seeks entry of an order "authorizing the GUC Trust Administrator to (A) (i) exercise the GUC Trust's holdings of New GM Warrants, and (ii) liquidate the GUC Trust's holdings of New GM Common Stock (including the New GM Common Stock received from the exercise of the New GM Warrants), and (B) make corresponding amendments to the GUC Trust Agreement." Motion ¶ 20.

---

[10] See Sale Agreement § 3.2(c); *Agreed Upon and Disputed Stipulations of Fact Regarding the Equitable Mootness Threshold Issue*, dated August 8, 2014 [ECF No. 12826-4], ¶¶ 5, 32. The amount of additional shares is calculated by multiplying: (i) 30 million shares (adjusted to account for any stock dividend, stock split, combination of shares, recapitalization, merger, consolidation, reorganization or similar transaction that occurs after the 363 Sale is consummated); and (ii) a fraction, (A) the numerator of which is the amount by which allowed general unsecured claims exceed $35 billion (up to $7 billion) and (B) the denominator of which is $7 billion. See Sale Agreement § 3.2(c).

7

**RESPONSE AND REQUEST FOR STAY OF DISTRIBUTIONS**

28. The Motion should be denied to the extent it seeks authority to distribute GUC Trust Assets. Moreover, for the reasons set forth below, the GUC Trust Administrator should be enjoined from making any such distributions until resolution of the appeal.

29. When determining whether to issue a stay or order an injunction, courts in the Second Circuit consider four factors:

(1) whether the stay applicant will be irreparably injured absent a stay;

(2) whether issuance of the stay will substantially injure the other parties interested in the proceeding;

(3) whether the stay applicant made a strong showing that he is likely to succeed on the merits; and

(4) whether the public interest supports issuing a stay.

See U.S. Sec. Exch. Comm. v. Citigroup Global Mkts. Inc., 673 F.3d 158, 162-63 (2d Cir. 2012) (quoting Hilton v. Braunskill, 481 U.S. 770, 770-71 (1987)).[11]

30. Courts employ a balancing test when considering the factors, and no one factor is dispositive. See Hirschfeld v. Bd. of Elections in the City of New York, 984 F.2d 35, 39 (2d Cir. 1992); Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.), 504 B.R. 754, 762 (S.D.N.Y. 2014); ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns

---

[11] In the Second Circuit, a stay pending appeal pursuant to Bankruptcy Rule 8007(a)(1)(A), an injunction pending appeal pursuant to Bankruptcy Rule 8007(a)(1)(C), and a temporary restraining order pursuant to Bankruptcy Rule 8007(a)(1)(D) are analyzed under the same standard. See In re Passover, No. 01 CIV. 0003 (NRB), 2001 WL 1204137, at *1 (S.D.N.Y. Oct. 11, 2001) (applying four-part stay pending appeal test to temporary restraining order), aff'd, 29 F. App'x 747 (2d Cir. 2002); Biermann v. RHI Holdings, Inc. (In re Bidermann), No. M-47, 1994 WL 376090, at *1 (S.D.N.Y. July 18, 1994) (no distinction between standard in Second Circuit for stay pending appeal or injunction pending appeal); OMC, Inc. v. Local Union 28 of the Sheet Metal Workers' Int'l Union (In re OMC, Inc.), No. 10-14864 MC, 2010 WL 4026097, at *2-3 (Bankr. S.D.N.Y. Oct. 13, 2010) (applying stay pending appeal test to temporary restraining order); Goldstein v. Albert (In re Albert), No. 99-31520, 2002 WL 1432663, at *2 (Bankr. S.D.N.Y. June 20, 2002) ("The standards for the grant of a stay pending appeal are the same as those governing the grant of an injunction."); In re Liggett, 118 B.R. 219, 221 (Bankr. S.D.N.Y. July 17, 1990) ("The standards for the grant of a stay pending appeal are those governing the grant of an injunction.").

8

Corp.), 361 B.R. 337, 346-47 & n.34 (S.D.N.Y. 2007) (citations omitted), appeal dismissed, No. 07-0279-BK, 2007 WL 7706743 (2d Cir. Feb. 9, 2007).

31.     A stay pending appeal is appropriate to "maintain the status quo." Freeman v. Neisner Bros., Inc. (In re Neisner Bros., Inc.), 10 B.R. 299, 300 (Bankr. S.D.N.Y. 1981).

### A. Plaintiffs Will Suffer Irreparable Harm Absent A Stay Of Distributions Of GUC Trust Assets.

32.     Plaintiffs will be irreparably harmed absent a stay. The Bankruptcy Court acknowledged that clawing back GUC Trust Assets post-distribution is a virtual impossibility. See In re Motors Liquidation Co., 529 B.R. at 528 ("Mootness doctrine already made a return of past distributions from all of Old GM's many thousands of creditors unthinkable."); In re Adelphia Commc'ns Corp., 361 B.R. at 351 ("Once the distributions are made pursuant to the Plan, it will become impracticable to ever fashion effective relief for the Appellants."). This is exactly why it is imperative to institute a stay of all distributions pending resolution of the appeal.

33.     Distributions of remaining GUC Trust Assets will eradicate any means for Plaintiffs to access existing and undistributed GUC Trust Assets. This clearly results in irreparable harm if Plaintiffs' rights to such Assets are validated under the appeal. See Rubin v. Pringle (In re Focus Media, Inc.), 387 F.3d 1077, 1086 (9th Cir. 2004) (upholding bankruptcy court's grant of a preliminary injunction where the "specter" of irreparable harm existed if funds were dissipated), cert. denied, 544 U.S. 923 (2005); In re Netia Holdings, S.A., 278 B.R. 344, 357 (Bankr. S.D.N.Y. 2002) ("If the funds leave State Street, they will be distributed to diverse parties and be difficult or impossible to recover. This is of course a concrete example exemplifying the well-established principle that piecemeal distribution of the debtor's estate constitutes irreparable harm.").

9

34.    Distributions of GUC Trust Assets may also prejudice Plaintiffs by rendering the appeal effectively moot because of the accelerated dissipation of GUC Trust Assets. Courts in this district have repeatedly held that the loss of appellate rights alone is sufficient to show irreparable injury to the movant.[12]

35.    The GUC Trust Administrator has refused to stay further distributions. Failure to grant a stay pending the Ignition Switch Plaintiffs' appeal would prevent Plaintiffs from receiving meaningful appellate review and due process. Accordingly, the first factor weighs in favor of granting a stay.

### B.    Staying Distributions Of GUC Trust Assets Will Not Prejudice GUC Trust Beneficiaries.

36.    In contrast to the irreparable injury faced by Plaintiffs, staying distributions of GUC Trust Assets pending the Ignition Switch Plaintiffs' appeal will not substantially prejudice GUC Trust Beneficiaries.

37.    The GUC Trust Administrator states that the relief requested is necessary to crystalize favorable tax attributes. See Motion ¶¶ 3, 24. The GUC Trust Administrator can take the necessary steps to accomplish this without additional distributions and prejudice to Plaintiffs' rights. See id. ¶ 41.

38.    The GUC Trust Beneficiaries will not be prejudiced by a limited delay pending resolution of the appeal. The District Court has held that any prejudice that a party may suffer

---

[12]    See Cnty. Squire Assocs. of Carle Place, L.P. v. Rochester Cnty. Savings Bank (In re Cnty. Squire Assocs. of Carle Place, L.P.), 203 B.R. 182, 183 (2d Cir. 1996) (granting stay where it was "apparent that absent a stay pending appeal . . . the appeal will be rendered moot," resulting in a "quintessential form of prejudice" to appellant) (citations omitted); Lutin v. The U.S. Bankr. Court for the S. Dist. of N.Y. (In re Advanced Mining Sys., Inc.), 173 B.R. 467, 468–69 (S.D.N.Y. 1994) (finding irreparable injury where, absent a stay, the distribution of assets to creditors would moot any appeal and thus quintessentially prejudice appellants); In re Gen. Motors Corp., 409 B.R. 24, 31 (Bankr. S.D.N.Y. 2009) ("[T]he threat of equitable mootness is enough to satisfy the requirement of showing *some* irreparable injury . . . .") (emphasis in original); In re Adelphia Commc'ns Corp., 361 B.R. at 348 ("[T]he fact is that loss of appellate rights is a 'quintessential form of prejudice.' Thus, where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied.") (citations omitted) (emphasis in original).

10

from the delay of distributions pending an appeal is outweighed by an appellant's right to pursue its appeal and preserve access to recoveries to which it may be entitled. See In re Advanced Mining Sys., Inc., 173 B.R. at 469.

39. In In re Advanced Mining, creditors awaiting distributions under a chapter 11 plan opposed another creditor's request for a stay of distributions pending appeal from the Bankruptcy Court's order denying the creditor's claim. See id. at 468. The District Court observed that if the stay pending appeal was denied, the debtors' assets would be distributed without any reserve for the moving creditor's claim, thereby denying that creditor any recovery. See id. The District Court granted the stay, holding that "[a]ny prejudice to the debtors and creditors if a stay is granted pales in insignificance in contrast to the prejudice the Affiliates would suffer if it is not." Id. at 469. Here, that same irreparable harm is present should the GUC Trust Administrator "blow out" additional GUC Trust Assets while Plaintiffs' rights to such Assets are being determined.

40. Moreover, where the possibility of delays in distributions is evident, courts are more inclined to maintain the status quo. See In re St. Johnsbury Trucking Co., Inc., 185 B.R. 687, 690 (S.D.N.Y. 1995) (delays in distributions given little weight where creditors were aware of potential delays, including notice of appeal).

41. GUC Trust Beneficiaries are fully aware that future distributions may be delayed by a number of factors, including the Ignition Switch Plaintiffs' appeal, determination of the Non-Ignition Switch Plaintiffs' rights to GUC Trust Assets and the ongoing Term Loan Avoidance Action. Indeed, the GUC Trust Administrator recently advised that "[i]t is currently anticipated that the GUC Trust will be required to seek approval to extend its term, because,

11

although it is uncertain at this time, it is anticipated that the distribution of assets and wind-down will not be completed prior to March 31, 2016." See GUC Trust 2015 10-K, at 13.[13]

42.     Accordingly, on balance, the irreparable harm to Plaintiffs by not granting a stay of distributions outweighs the potential prejudice of delayed distributions to GUC Trust Beneficiaries that would result if the stay is granted.

### C.     Plaintiffs Have Demonstrated A Substantial Possibility Of Success On The Merits.

43.     In seeking a stay pending appeal, "[t]he movant need not always show a 'probability of success' on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." In re Adelphia Commc'ns Corp., 361 B.R. at 349 (quoting LaRouche v. Kezer, 20 F.3d 68, 72-73 (2d Cir.1994)); see also Hirschfeld, 984 F.2d at 39.

44.     Probable success on the merits depends on an assessment of the other three factors analyzed in considering a stay pending appeal and is "inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." See In re BGI, Inc., 504 B.R. at 764 (citations omitted).

45.     The Ignition Switch Plaintiffs show a "substantial possibility" of success on the merits of their appeal and the Non-Ignition Switch Plaintiffs may make an equal showing of entitlement to access GUC Trust Assets.

46.     The Bankruptcy Court concluded that effective relief for the Ignition Switch Plaintiffs' claims against Old GM could not be fashioned, and that increasing the size of the

---

[13] Since April 2011, the GUC Trust Administrator has made just one quarterly distribution to all Unitholders and four subsequent "special" distributions to certain Unitholders. See *Motors Liquidation Company GUC Trust Quarterly Section 6.2(C) Report and Budget Variance Report as of March 31, 2015*, dated Apr. 22, 2015 [ECF No. 13118], Exhibit A, n.1.

12

claims pool against the GUC Trust would disrupt Unitholders' reasonable expectations that were focused on the claims pool only going down. See In re Motors Liquidation Co., 529 B.R. at 587-89.

47. Respectfully, the Bankruptcy Court's application of the doctrine of equitable mootness was in error. The Bankruptcy Court failed to consider the appropriate result should the amount of GUC Trust Assets go up by, *inter alia*, triggering the accordion feature—and thus providing an independent recovery source for Plaintiffs' claims that would not disturb the Plan or Unitholders' expectations.

48. The fact that the Bankruptcy Court sidestepped the accordion feature in applying the doctrine of equitable mootness to the Ignition Switch Plaintiffs' claims raises questions going to the merits of the appeal and a legitimate probability of success on appeal that militates in favor of a stay pending appeal. See Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).

49. For the same reasons the Ignition Switch Plaintiffs are likely to prevail on appeal as set forth above—the Non-Ignition Switch Plaintiffs should be equally entitled to access any proceeds of the accordion feature triggered by the allowance of their claims.

50. Accordingly, Plaintiffs have shown a "substantial possibility of success" on the merits that favors a stay.

**D.    The Public Interest Favors A Stay.**

51. "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994), cert. denied, 514 U.S. 1103 (1995). As set forth above, Plaintiffs meet this threshold.

13

52. The public interest favors a stay for the "preservation of procedural fairness." U.S. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 44 F.3d 1082, 1091 n. 11 (2d Cir. 1995). When considering public interest, courts in this district have held that "[p]arties objecting to [a] settlement and . . . distribution scheme have a right to appellate review . . . [and] [d]istribution of the challenged settlement award before its validity had been tested would deprive those parties of that right." See In re Adelphia Commc'ns Corp., 361 B.R. at 349-50 (quoting In re Agent Orange Prod. Liab. Litig., 804 F.2d 19, 20 (2d Cir. 1986)).

53. Here, the public interest and procedural fairness are best served protecting the status quo during adjudication of Plaintiffs' rights to GUC Trust Assets, and thus militates in favor of a stay. See In re Neisner Bros., Inc., 10 B.R. at 300.

54. The Bankruptcy Court acknowledged the "considerable public importance" of the findings in the Decision, including its equitable mootness holding that is subject to appeal. See In re Motors Liquidation Co., 529 B.R. at 597.

55. Absent a stay, Plaintiffs' rights may be lost, the appeal may be mooted and further guidance on important issues by higher courts may be lost. Under these circumstances, the public interest supports a stay.

E.      **Plaintiffs Should Not Be Required To Post A Bond.**

56. Bankruptcy Rule 8007 provides the Bankruptcy Court with discretion regarding the posting of a bond in connection with a stay request. See Fed. R. Bankr. P. 8007. The Second Circuit has held that a court "may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery." Texaco Inc. v. Pennzoil Co., 784 F.2d 1133, 1155 (2d Cir. 1986) (citations omitted), rev'd on other grounds, 481 U.S. 1 (1987).

14

57. Plaintiffs should not have to post a bond to obtain a stay as the GUC Trust Beneficiaries' position will not be diminished as a result of a stay. The GUC Trust Administrator can place the liquidation proceeds in an appropriate reserve as suggested in the Motion until the appeal is resolved. See Motion ¶ 1. Conversely, requiring Plaintiffs to post a bond may chill participation in the appeal and the Non-Ignition Switch Plaintiffs' pursuit of their rights to GUC Trust Assets given the economic positions of Plaintiffs vis-à-vis GUC Trust Beneficiaries.

58. Accordingly, Plaintiffs respectfully submit that a bond is unnecessary.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Plaintiffs seek entry of an Order: (i) enjoining the GUC Trust Administrator from distributing GUC Trust Assets until 14 days after resolution of the Ignition Switch Plaintiffs' appeal, without prejudice to further requests to extend any stay; and (ii) granting such other and further relief as is just and proper.

[*Remainder of page left intentionally blank*]

| | |
|---|---|
| Dated: New York, New York<br>June 24, 2015 | Respectfully submitted,<br><br>*/s/ Edward S. Weisfelner*<br>Edward S. Weisfelner<br>David J. Molton<br>May Orenstein<br>Howard S. Steel<br>BROWN RUDNICK LLP<br>Seven Times Square<br>New York, New York 10036<br>Telephone: 212-209-4800<br>Email: eweisfelner@brownrudnick.com<br>Email: dmolton@brownrudnick.com<br>Email: morenstein@brownrudnick.com<br>Email: hsteel@brownrudnick.com<br><br>-and-<br><br>Sander L. Esserman<br>STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, A PROFESSIONAL CORPORATION<br>2323 Bryan Street, Ste. 2200<br>Dallas, Texas 75201<br>Telephone: 214-969-4900<br>Email: esserman@sbep-law.com<br><br>*Designated Counsel for Ignition Switch Plaintiffs & Certain Non-Ignition Switch Plaintiffs* |

16