Edward S. Weisfelner
David J. Molton
May Orenstein
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800
Email: eweisfelner@brownrudnick.com
Email: dmolton@brownrudnick.com
Email: morenstein@brownrudnick.com
Email: hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900
Email: esserman@sbep-law.com

*Designated Counsel for the Ignition Switch Plaintiffs*
*& Certain Non-Ignition Switch Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                           :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, et al., | : | Case No.: 09-50026 (REG) |
|       f/k/a General Motors Corp., et al., | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------x

**THE IGNITION SWITCH PLAINTIFFS' NO STRIKE
PLEADING WITH REGARD TO THE SECOND AMENDED
CONSOLIDATED COMPLAINT; AND THE NON-IGNITION SWITCH
PLAINTIFFS' (I) OBJECTION PLEADING WITH REGARD TO THE SECOND
AMENDED CONSOLIDATED COMPLAINT AND (II) GUC TRUST ASSET PLEADING**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ..............................................................................................6

I.    The Ignition Switch Defect And New GM's Parade Of Recalls. ..........................6

II.   The Decision and Judgment. .....................................................................8

III.  The Independent Claims Against New GM Asserted By Plaintiffs. .....................9

    A.    The "Independent Claims" Of Ignition Switch  Plaintiffs And Non-Ignition
Switch Plaintiffs In The Second Amended Consolidated Complaint. ..................9

IV.   The Impact Of The Decision And Judgment On The Plaintiffs' Claims..............13

    A.    The Impact Of The Decision And  Judgment On The Ignition Switch
Plaintiffs' Claims..................................................................................13

    B.    The Impact Of The Decision And Judgment On The Non-Ignition Switch
Plaintiffs' Claims..................................................................................13

    C.    The Impact Of The Decision And Judgment On The Non-Ignition Switch
Plaintiffs' Ability To Access GUC Trust Assets.........................................15

RELIEF REQUESTED......................................................................................17

ARGUMENT .................................................................................................17

I.    The Bankruptcy Court Does Not Have Jurisdiction To Enforce The Sale Order With
Respect To Plaintiffs' Claims For New GM's Own, Independent, Post-Closing Acts
Or Conduct........................................................................................17

II.   The Plaintiffs' References To Pre-Bankruptcy Events Do Not Change The
Independent Nature Of The Claims Against New GM.....................................21

III.  The Plaintiffs' Claims Against New GM For Its Independent, Post-Sale Acts and
Conduct Should Not Be Dismissed, Stayed Or Stricken. ................................22

    A.    The Second Amended Consolidated Complaint. .........................................22

        i.    Fraudulent Concealment. ................................................................23

        ii.   Consumer Protection Statutes. .........................................................23

        iii.  Unjust Enrichment. ......................................................................24

        iv.   Implied Warranty of Merchantability. ...............................................25

        v.    Magnuson-Moss Warranty Act.........................................................25

        vi.   Negligence. ................................................................................26

        vii.  Fraudulent Concealment Of The Right To File A Claim Against Old GM
In Bankruptcy............................................................................27

        viii. Breach Of The Covenant To Comply With TREAD.................................27

      ix.     Violation Of The RICO Act.................................................................................28

IV.  The Decision And Judgment Should Not Apply To The Non-Ignition Switch
     Plaintiffs' Independent Claims. ..........................................................................28

V.   The Non-Ignition Switch Plaintiffs' Rights Should Be Reserved To File  Late Proofs
     Of Claim And Seek Recovery On Such Claims From GUC Trust Assets. .........................30

CONCLUSION..................................................................................................................31

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

In re 1031 Tax Grp., LLC,
No. 10 Civ. 2799 (RJH), 2011 U.S. Dist. LEXIS 33755 (S.D.N.Y. Mar. 29, 2011) ..............................................................................................................................19

Georgia Malone & Co., Inc. v. Rieder,
19 N.Y.3d 511 (N.Y. 2012) ..............................................................................................24

Hand v. Dayton-Hudson,
775 F.2d 757 (6th Cir. 1985) ...........................................................................................23

Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),
517 F.3d 52 (2d Cir. 2008), <u>rev'd on other grounds sub nom.</u> Travelers Indem.
Co. v. Bailey, 557 U.S. 137 (2009)..............................................................................19, 20

Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),
600 F.3d 135 (2d Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 644 (2010) ...........................................19

Michigan Ed. Employees Mut. Ins. Co. v. Morris,
596 N.W.2d 142 (Mich. 1999)..........................................................................................24

In re Motors Liquidation Co.,
529 B.R. 510 (Bankr. S.D.N.Y. 2015)...........................1, 2, 4, 6, 9, 13, 15, 16, 17, 22, 29, 30

Pelster v. Ray,
987 F.2d 514 (8th Cir. 1993) ............................................................................................23

Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.),
676 F.3d 45 (2d Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 2849 (2013) ....................................19, 20

Stanwood v. Mary Kay, Inc.,
941 F. Supp. 2d 1212 (C.D. Cal. 2012), <u>reconsideration denied</u>, 941 F. Supp.
2d 1212 (C.D. Cal. Nov. 13, 2012).......................................................................................23

Travelers Indem. Co. v. Bailey,
557 U.S. 137 (U.S. 2009), The Bankruptcy...........................................................................18

**Statutes**

28 U.S.C. § 1334(b) ...........................................................................................................18

6 Del. Code § 2513(a)........................................................................................................24

Mich. Comp. Laws § 440.2314...........................................................................................25

N.Y. U.C.C. Law § 2-314 ............................................................................................25

**Other Authorities**

Detailed Overall Program Statistics, GM Ignition Compensation Claims
Resolution Facility (June 19, 2015), <u>available at</u>
http://www.GMIgnitionCompensation.com/docs/programstatistics_.pdf ...............................7

GM 2014 Year-to-Date North American Recalls Including Exports, <u>available at</u>
http://media.gm.com/
content/dam/Media/images/US/Release_Images/2014/05-
2014/recalls/Recalls-Running-Total.jpg (last accessed June 20, 2015)....................................7

In re TQ14-001 NHTSA Recall No. 14V-047 (U.S. Dep't of Transp. May 16,
2014), <u>available at</u> http://www.nhtsa.gov/staticfiles/communications/pdf/May-
16-2014-TQ14-001-Consent-Order.pdf, at 4 ..........................................................................7

Restatement (Second) of Torts § 395...........................................................................26

By and through undersigned Designated Counsel,[1] the Ignition Switch Plaintiffs[2] respectfully submit this *No Strike Pleading With Regard to the Second Amended Consolidated Complaint*, and certain Non-Ignition Switch Plaintiffs[3] respectfully submit this *(I) Objection Pleading With Regard to the Second Amended Consolidated Complaint and (II) GUC Trust Asset Pleading*.[4] In support of this Omnibus Judgment Pleading, the Plaintiffs respectfully state as follows:

### PRELIMINARY STATEMENT

1.      On June 12, 2015, Lead Counsel in the MDL action filed the Second Amended Consolidated Complaint ("<u>SAC</u>") on behalf of Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs who were pre-Sale and post-Sale purchasers of Old GM and New GM vehicles.[5] The SAC amends and supersedes the Pre-Sale[6] and Post-Sale[7] Complaints, and asserts

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Decision on Motion to Enforce Sale Order*, <u>In re Motors Liquidation Co.</u>, 529 B.R. 510 (Bankr. S.D.N.Y. 2015) (the "<u>**Decision**</u>") or in the *Judgment*, dated June 1, 2015 [ECF No. 13177] (the "<u>**Judgment**</u>").

[2]     As defined in the Judgment, the term "<u>**Ignition Switch Plaintiffs**</u>" shall mean plaintiffs who have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014,* filed on August 8, 2014 [ECF No. 12826] (the "<u>**Stipulations of Fact**</u>"), at 3). Because the Subject Vehicles in the Judgment are *only* those vehicles involved in the February and March 2014 Recalls (Recall No. 14-V-171000), the term Ignition Switch Plaintiffs as used in this pleading includes only Plaintiffs who own or lease those vehicles, and does *not* include those Plaintiffs who own or lease other vehicles with defective ignition switches (made by both Old and New GM) that were recalled in June and July of 2014.

[3]     The term "<u>**Non-Ignition Switch Plaintiffs**</u>" shall mean all plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch in the vehicles subject to Recall No. 14-V-171000, or based on or arising from economic losses and diminution in value of their GM-branded vehicles based on the Ignition Switch Defect or other alleged defects in Old and New GM vehicles. The Non-Ignition Switch Plaintiffs together with the Ignition Switch Plaintiffs are defined herein as the "<u>**Plaintiffs**</u>."

[4]     Collectively, this pleading is referred to herein as the "<u>**Omnibus Judgment Pleading**</u>."

[5]     <u>See</u> *Second Amended Consolidated Complaint*, <u>In re General Motors LLC Ignition Switch Litigation</u>, No. 14-MD-2543 (JMF) (S.D.N.Y. June 12, 2015) (ECF No. 1038), as corrected June 22, 2015 (ECF No. 1061). A copy of the SAC is attached hereto as "<u>**Exhibit A**</u>."

exclusively, direct liability claims against New GM as sole Defendant based entirely upon New GM's own knowledge, conduct, duty, breach of that duty, and intentional and ongoing violation of federal and state law from the date of its inception onwards. It does not assert successor liability claims against New GM, which the Decision finds are barred under the Sale Order, subject to the Ignition Switch Plaintiffs' appeal.[8] This Omnibus Judgment Pleading raises the simple question of whether the Bankruptcy Court could, and did, provide the non-debtor New GM with immunity for its own independent violations of federal and state law. The Bankruptcy Court did not and lacks the jurisdiction to do so. Therefore, the SAC should be free to proceed, in its entirety, as part of the MDL action.

2. The Ignition Switch Plaintiffs file this "No Strike" pleading with regard to the SAC prophylactically for a judicial determination that it asserts only "Independent Claims"[9] permissible under the Decision and Judgment.[10] They do so in anticipation that New GM will

---

[6]    See *Consolidated Class Action Complaint Against New GM for Recalled Vehicles Manufactured By Old GM and Purchased Before July 11, 2009 or Later*, In re General Motors LLC Ignition Switch Litigation, No. 14-MD-2543 (JMF) (S.D.N.Y. Oct. 14, 2014) (ECF No. 347) (the "**Pre-Sale Complaint**"). Under the Judgment the Pre-Sale Complaint is stayed, see Judgment ¶ 10(a), but given that the SAC amends and supersedes the Pre-Sale Complaint the stay is of no effect as it relates to the claims asserted in both the Pre-Sale Complaint and the SAC. To the extent it is asserted otherwise, the arguments set forth herein relating to the SAC also apply to the common claims in the Pre-Sale Complaint.

[7]    See *Consolidated Complaint Concerning All GM-Branded Vehicles that were Acquired July 11, 2009 or Later*, In re General Motors LLC Ignition Switch Litigation, No. 14-MD-2543 (JMF) (S.D.N.Y. Oct. 14, 2014) (ECF No. 345) (the "**Post-Sale Complaint**"). Under the Judgment the Post-Sale Complaint is stayed, see Judgment ¶ 11(a), but given the SAC amends and supersedes the Post-Sale Complaint the stay is of no effect as it relates to the claims asserted in both the Post-Sale Complaint and the SAC. To the extent it is asserted otherwise, the arguments set forth herein relating to the SAC also apply to the common claims in the Post-Sale Complaint.

[8]    If the Ignition Switch Plaintiffs are successful on appeal, the Ignition Switch Plaintiffs will amend the SAC to include successor liability claims against New GM. With or without the successor liability claims, the Ignition Switch Plaintiffs' claims against New GM affect approximately 20 million owners or lessors of GM-branded vehicles, and conservatively seek approximately $10 billion in economic loss damages.

[9]    See In re Motors Liquidation Co., 529 B.R. at 598. For purposes of the Judgment, "**Independent Claims**" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct. Judgment ¶ 4.

[10]    Paragraph 18(d) of the Judgment exempts the SAC from the procedures by which New GM may seek to dismiss claims or causes of action contained therein, but does not otherwise prohibit New GM from seeking to enjoin or strike claims in the SAC as purportedly barred under the Sale Order.

seek a shield for its independent wrongdoing by artificially manufacturing challenges that the SAC contains claims that are not permitted under the Decision and Judgment.

3.      Respectfully, the "Independence" of the Ignition Switch Plaintiffs' claims in the SAC is not a close call, or for that matter, the Bankruptcy Court's call.   Rather, the reference to the Bankruptcy Court should be immediately withdrawn on a mandatory basis or "for cause."[11] Short of an agreement with New GM that the claims in the SAC are Independent Claims, further proceedings with respect to "no strike" pleadings, including this Omnibus Judgment Pleading, should be heard by the District Court.  There they can progress efficiently, without unnecessary delay, duplication and possible inconsistency resulting from the continued bifurcation of proceedings between the Bankruptcy Court and the District Court.

4.      In fact, as set forth below, the Bankruptcy Court is without jurisdiction to prospectively enjoin the Independent Claims set forth in the SAC—third party claims against a non-debtor that do not have an impact on or implicate property of the debtor's estate.

5.      Of equal importance, the Bankruptcy Court does not have license to censor the SAC by virtue of its reference to Old GM.  Accordingly, any attempts by New GM to enjoin claims or strike portions of the SAC because it contains references or factual allegations relating to "Old GM" must fail.  That Old GM personnel obtained knowledge of the Ignition Switch Defect and a host of other defects prior to the 363 Sale does not change the fact that the same personnel retained that knowledge—and, therefore, so did New GM, to whom their knowledge is imputed.

6.      Likewise the claims of Non-Ignition Switch Plaintiffs against New GM in the SAC should be free to proceed on their merits in the MDL action.  As set forth below, each claim

---

[11]   The Plaintiffs will file a motion to withdraw the reference for the Omnibus Judgment Pleading contemporaneously with this filing or shortly thereafter.

against New GM is for New GM's own independent post-Closing acts or conduct and is no less
"Independent" than the Ignition Switch Plaintiffs' claims in the SAC.

7.      The Bankruptcy Court also lacks jurisdiction to dismiss, stay or strike the Non-
Ignition Switch Plaintiffs' claims in the SAC because those claims do not impact Old GM, its
property or estate.  Accordingly, Plaintiffs seek an Order allowing the claims of the Non-Ignition
Switch Plaintiffs in the SAC to proceed in the MDL.

8.      Moreover, it is inappropriate to apply the rulings set forth in the Decision and
Judgment barring claims against New GM under the Sale Order to the Non-Ignition Switch
Plaintiffs.  The Bankruptcy Court deferred any ruling on the Non-Ignition Switch Motion to
Enforce[12] and did not address whether the Non-Ignition Switch Plaintiffs sustained a due process
violation with respect to the Sale Order.  The Stipulations of Fact[13] did not relate to defects other
than the Ignition Switch Defect and the Non-Ignition Switch Plaintiffs have not had an
opportunity to develop an appropriate record for a Threshold Issues-type review.

9.      Accordingly, to the extent the Bankruptcy Court, or District Court following
withdrawal, does not enter an order finding that the claims of the Non-Ignition Switch Plaintiffs
in the SAC may proceed in the MDL action, the reference for the Non-Ignition Switch Motion to
Enforce should be withdrawn and none of the claims of the Non-Ignition Switch Plaintiffs should
be proscribed under the Sale Order without further proceedings before the District Court.

---

[12]   See *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009
Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014
[ECF No. 12808] (the "**Non-Ignition Switch Motion to Enforce**"); In re Motors Liquidation Co., 529 B.R. at
523.

[13]   See Stipulations of Fact, Ex. D ¶ 77.

10.     Finally, the rulings set forth in the Decision and Judgment with respect to access to GUC Trust Assets should not apply to the Non-Ignition Switch Plaintiffs.[14]  Similarly, any claims the Non-Ignition Switch Plaintiffs may have to satisfy late-filed claims out of GUC Trust Assets should not be dismissed or prejudiced.  Accordingly, the Non-Ignition Switch Plaintiffs' file this Reservation of Rights / GUC Trust Asset Pleading seeking to reserve the right to, at a future date, file and seek allowance of late claims, seek a recovery on such claims from the assets of the GUC Trust, and litigate issues (i) through (iii) identified in paragraph 13(a) of the Judgment.

11.     The Bankruptcy Court deferred consideration of all issues relating to the Non-Ignition Switch Motion to Enforce (including access to GUC Trust Assets), and the Decision and Judgment do not address the Non-Ignition Switch Plaintiffs' due process rights in relation to the Bar Date.  Accordingly, the Non-Ignition Switch Plaintiffs are not party to the appeal of the Bankruptcy Court's equitable mootness finding.  Thus, even if the appeal is successful, the Non-Ignition Switch Plaintiffs' rights to access GUC Trust Assets would not be fully determined.

12.     Therefore, it is premature and inappropriate to bar the Non-Ignition Switch Plaintiffs from accessing GUC Trust Assets to satisfy any late proofs of claim they may seek authority to file and that are ultimately allowed.  Rather, it is appropriate given the current record to reserve the Non-Ignition Switch Plaintiffs' rights to access GUC Trust Assets (including tolling the time to file late proofs of claim) pending the outcome of the Ignition Switch Plaintiffs' appeal and additional discovery.  Reserving the Non-Ignition Switch Plaintiffs' rights pending the appeal is appropriate given that the allowance of any late-filed claims of the Plaintiffs would likely trigger New GM's obligation to pay new value into the GUC Trust under the Sale

---

[14]    The Ignition Switch Plaintiffs have appealed the Bankruptcy Court's application of the doctrine of equitable mootness to their claims.  The Ignition Switch Plaintiffs will file in the near term a motion seeking leave to file a late proposed class proof of claim and related relief and seek to withdraw the reference.

Agreement's accordion feature and such value should be exclusively available for the Plaintiffs.[15]

13.    Accordingly, this Court should find that the rulings set forth in the Decision and Judgment with respect to access to GUC Trust Assets do not apply to the Non-Ignition Switch Plaintiffs and reserve, without prejudice, the Non-Ignition Switch Plaintiffs' right to, at a future date, file and seek allowance of late claims, seek a recovery on such claims from the assets of the GUC Trust, and litigate issues (i) through (iii) identified in paragraph 13(a) of the Judgment.

## BACKGROUND

### I.    The Ignition Switch Defect And New GM's Parade Of Recalls.

14.    Since its inception on the backs of a multi-billion dollar taxpayer bailout, New GM has operated in direct contravention of the public's trust and safety.

15.    For nearly five years, New GM covered up the Ignition Switch Defect, a deadly safety defect impacting 2.1 million GM-branded vehicles, that causes the loss of power, an inability to control speed and braking functions, and the disablement of airbags.

16.    As the Bankruptcy Court recognized, at least twenty-four (24) Old GM personnel, including engineers, senior managers, and attorneys, were informed or otherwise aware of the Ignition Switch Defect, all of whom were transferred to New GM.  See In re Motors Liquidation Co., 529 B.R. at 538.

17.    New GM also concealed a litany of other safety defects to the detriment of public safety and the value of GM-branded vehicles.

18.    In February and March of 2014, New GM disclosed the existence of the Ignition Switch Defect and issued a recall.  In its Consent Order with the National Highway Safety

---

[15]    The Decision did not focus on the Ignition Switch Plaintiffs' rights to the proceeds of the accordion feature and deferred all consideration of the Non-Ignition Switch Plaintiffs' rights.  Thus, the Non-Ignition Switch Plaintiffs do not seek to re-argue issues decided by the Decision that are on appeal.

Administration, New GM has already conceded that it violated the law by failing to properly disclose the Ignition Switch Defect and conduct a timely recall.[16]  To date, the Ignition Switch Defect has been linked to 117 deaths and 237 injuries.[17]

19.    Following the February and March recall, New GM issued four additional recalls in June, July, and September 2014 affecting more than 11 million additional vehicles with defective ignition switches across various models of vehicles manufactured by Old and New GM.[18]  Because the Decision and Judgment concerned only the due process rights of the 2.1 million owners of the vehicles subject to the February and March recall (No. 14-V-171000), the Ignition Switch Plaintiffs include only those vehicle owners and lessors for the purposes of this pleading.  The owners of the 11 million vehicles subject to the June and July recalls suffered from a defect involving different ignition switches with different part numbers, and hence are ***not*** considered Ignition Switch Plaintiffs for the purposes of this pleading.

20.    New GM issued numerous other recalls throughout 2014 for defects that were not related to ignition switches, which pushed the aggregate number of recalled vehicles (for ignition switch-related and other defects) to 30.4 million.[19]  Many of those other defects were quite serious and the resultant recalls long overdue, and contributed to the brand-wide diminution of value that all Plaintiffs have suffered.

---

[16]    See Consent Order, In re TQ14-001 NHTSA Recall No. 14V-047 (U.S. Dep't of Transp. May 16, 2014), available at http://www.nhtsa.gov/staticfiles/communications/pdf/May-16-2014-TQ14-001-Consent-Order.pdf, at 4.

[17]    See Detailed Overall Program Statistics, GM Ignition Compensation Claims Resolution Facility (June 19, 2015), available at http://www.GMIgnitionCompensation.com/docs/programstatistics_.pdf.

[18]    See GM 2014 Year-to-Date North American Recalls Including Exports, available at http://media.gm.com/content/dam/Media/images/US/Release_Images/2014/05-2014/recalls/Recalls-Running-Total.jpg (last accessed June 20, 2015).

[19]    Id.; see also Stipulations of Fact, Ex. D ¶ 77 (noting that New GM recalled approximately 26 million vehicles by early August 2014).

II.    **The Decision and Judgment**.

21.    In response to New GM's disregard for public safety and blatant misrepresentations about the safety of its vehicles and the quality of its brand, Plaintiffs brought class actions against New GM asserting claims for New GM's post-closing conduct or omissions related to the Ignition Switch Defect and other safety defects (including other ignition switch defects in cars made by both New and Old GM).

22.    In April 2014, New GM sought to enjoin the prosecution of numerous class actions arising out of the Ignition Switch Defect by filing the Ignition Switch Motion to Enforce.[20]

23.    The Bankruptcy Court identified four threshold issues relating to the Ignition Switch Defect for subsequent judicial determination (the "**Threshold Issues**").[21]  The Court then directed certain parties to meet and confer to establish agreed and disputed stipulated facts in connection with the contested Ignition Switch Motion to Enforce.[22]

24.    On August 8, 2014, the parties filed the Stipulations of Fact.[23]  The Stipulations of Fact did not relate to defects other than the Ignition Switch Defect in the vehicles that were subject to the February and March 2014 recall (No. 14-V-17000).

25.    New GM subsequently filed two other Motions to Enforce with respect to the Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs in August 2014.[24]

---

[20]  See ECF No. 12620.

[21]  See *Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929*, dated May 16, 2014 [ECF No. 12697] (the "**Scheduling Order**"), at 4.

[22]  See Scheduling Order, at 4; *Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect thereto, and (III) Adversary Proceeding No. 14-01929*, dated July 11, 2014 [ECF No. 12770], at 4.

[23]  See ECF No. 12826.

26.     Thereafter, on September 15, 2014, the Bankruptcy Court entered a scheduling order with respect to the Non-Ignition Switch Motion to Enforce, which ordered that no discovery would take place with respect to such defects.[25]

27.     On April 15, 2015, the Bankruptcy Court entered its Decision.

28.     In relevant part, the Decision found that "Independent Claims" were not barred under the Sale Order and may proceed.  See In re Motors Liquidation Co., 529 B.R. at 598.[26]  In other words, under the rubric of the Decision, the Ignition Switch Plaintiffs' Independent Claims should not be dismissed, stayed or stricken.

29.     After soliciting proposed judgments from the parties, the Bankruptcy Court entered the Decision RE Form of Judgment, dated May 27, 2015 [ECF No. 13162] (the "**Decision on Judgment**").

30.     On June 1, 2015, the Bankruptcy Court entered the Judgment.

31.     The Decision and Judgment are subject to appeal by several parties.[27]

III.     **The Independent Claims Against New GM Asserted By Plaintiffs.**

A.     **The "Independent Claims" Of Ignition Switch Plaintiffs And Non-Ignition Switch Plaintiffs In The SAC.**

32.     The SAC asserts claims against New GM for its own, independent, post-Closing acts or conduct as follows:[28]

---

[24]   See ECF Nos. 12807, 12808.  Judgment on the third Motion to Enforce relating to the Non-Ignition Switch Plaintiffs was deferred pending determination of the other Motions to Enforce.  See In re Motors Liquidation Co., 529 B.R. at 523.

[25]   Scheduling Order Regarding Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 To Enforce The Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions), dated Sept. 15, 2014 [ECF No. 12898] (the "**Non-Ignition Switch Scheduling Order**").

[26]   Similarly, the Judgment states that "[t]he Sale Order shall be deemed modified to permit the assertion of Independent Claims."  Judgment ¶ 4.

[27]   See ECF Nos. 13179, 13180, 13185, 13194, 13200, 13209.

[28]   The charts included in this Omnibus Judgment Pleading are for illustrative purposes only and are fully qualified by the SAC which controls and is fully incorporated herein by reference.

| Claim | Allegations |
|---|---|
| **Fraudulent Concealment**[29] | • New GM had a duty to disclose because the existence of the Ignition Switch Defect and other material information was known and/or accessible only to New GM.  See, e.g., ¶¶ 15, 1161.[30]<br>• New GM was under a duty to disclose that scores of other defects plagued GM-branded vehicles and that New GM systematically devalued safety.  See ¶ 1161.<br>• New GM demonstrated a pattern of concealing dangerous known safety defects in GM-branded vehicles.  See, e.g., ¶ 10.<br>• New GM concealed material facts concerning New GM's culture that systematically devalued safety.  See, e.g., ¶¶ 524-30, 1158.<br>• New GM concealed these material facts to protect its profits and avoid the expense and negative publicity of a recall.  See, e.g., ¶ 1160.<br>• New GM still has not made full and adequate disclosures and continues to defraud Plaintiffs and conceal material information regarding the Ignition Switch Defect and other defects.  See, e.g., ¶¶ 1162.<br>• As a direct result of New GM's conduct and omissions, the value of the Plaintiffs' vehicles diminished drastically.  See, e.g., ¶ 8. |
| **Violation of Various Consumer Protection Statutes**[31] | • From the date of its inception on July 11, 2009, New GM knew of many serious defects affecting GM-branded vehicles, including, among others, the Ignition Switch Defect.  See, e.g., ¶¶ 15, 1136.<br>• New GM concealed information regarding these defects from the Plaintiffs.  See ¶¶ 8, 10, 1139.<br>• New GM actively discouraged its employees from finding and flagging known safety defects.  See ¶ 1216.<br>• New GM deceptively marketed its vehicles as safe and presented itself as a reputable manufacturer that valued safety.  See ¶¶ 171-226.<br>• New GM intended to and did mislead and deceive the Plaintiffs regarding the safety and reliability of vehicles with the Ignition Switch Defect and other defects.  See, e.g., ¶ 1221.<br>• As a direct result of New GM's deceptive, unfair, and/or unlawful business practices, conduct and omissions, the value of the Plaintiffs' vehicles diminished drastically.  See, e.g., ¶ 8. |

---

[29]    See, e.g., ¶¶ 1155-68.

[30]    Except where otherwise indicated, references to "¶__" are to the paragraphs of the SAC.

[31]    See, e.g., ¶¶ 1128-54.

| | |
|---|---|
| **Unjust Enrichment**[32] | • New GM benefitted by avoiding and delaying the effort and expenditures involved in recalling and repairing vehicles with the Ignition Switch Defect, and other defects, and improving sales of its vehicles. See, e.g., ¶ 226.<br><br>• It is inequitable for New GM to retain these profits because they arose from New GM's fraudulent concealment of the Ignition Switch Defect and other defects. See, e.g., ¶¶ 10, 1588, 1592. |
| **Breach of the Implied Warranty of Merchantability**[33] | • Various state statutes impose an implied warranty that goods sold by merchants are fit for the ordinary purpose for which those goods are used. See, e.g., ¶ 1251.<br><br>• New GM provided the Plaintiffs who purchased new or Certified Previously Owned vehicles with ignition switch defects from New GM with an implied warranty under these statutes that vehicles are fit for their ordinary purpose as safe passenger motor vehicles. See, e.g., ¶¶ 1250-52.<br><br>• New GM breached this warranty when it manufactured and/or sold vehicles with ignition switch defects. See ¶ 1252. |
| **Violation of the Magnuson-Moss Warranty Act** (15 U.S.C. § 2301 et seq.)[34] | • New GM provided the Plaintiffs who purchased new or Certified Previously Owned vehicles with ignition switch defects from New GM with an implied warranty that the vehicles sold by New GM were fit for their ordinary purpose as safe passenger motor vehicles. See, e.g., ¶¶ 1107, 1420.<br><br>• Vehicles with defective ignition switches share a common design defect in that they are equipped with a defective ignition switch system that can suddenly fail during normal operations. See, e.g., ¶¶ 1108.<br><br>• New GM breached its implied warranty by manufacturing and/or selling vehicles with ignition switch defects. See, e.g., ¶ 1108. |
| **Negligence**[35] | • New GM had a duty to design and manufacture a product that would be safe for intended and foreseeable uses. See, e.g., ¶ 1119.<br><br>• New GM had a continuing duty to warn and instruct intended and foreseeable users of the new and Certified Previously Owned vehicles it sold with ignition switch defects that these vehicles were not reasonably safe for their ordinary and intended purposes. See, e.g., ¶ 1125.<br><br>• New GM was negligent in the design, development, manufacture, inspection and testing of vehicles with ignition switch defects. See, e.g., ¶ 1119.<br><br>• New GM failed to warn users of vehicles with ignition switch defects that their vehicles were not reasonably safe. See, e.g., ¶ 1126.<br><br>• New GM knew or should have known that the vehicles with ignition switch defects posed an unreasonable risk of death or injury to the Plaintiffs and others. See, e.g., ¶ 1120. |

---

[32]  See ¶¶ 1201-10.

[33]  See ¶¶ 1248-54.

[34]  See ¶¶ 1100-16.

[35]  See ¶¶ 1117-27.

| | |
|---|---|
| **Fraudulent Concealment of the Right to File a Claim Against Old GM in Bankruptcy**[36] | • From the date of its inception, New GM knew about the Ignition Switch Defect.  <u>See, e.g.</u>, ¶¶ 15, 1171-72.<br>• New GM had a duty to disclose the Ignition Switch Defect based on its superior knowledge of the Ignition Switch Defect.  <u>See, e.g.</u>, ¶ 1186.<br>• New GM concealed the existence of the Ignition Switch Defect, preventing the Ignition Switch Plaintiffs from timely filing claims against Old GM's bankruptcy estate and accessing GUC Trust Assets.  <u>See, e.g.</u>, ¶¶ 1185, 1188. |
| **Breach of Covenant to Comply with TREAD**[37] | • New GM entered into a contract in which it covenanted to comply with the Transportation Recall Enhancement, Accountability and Documentation Act ("**TREAD**").  <u>See, e.g.</u>, ¶¶ 1193-94.<br>• New GM knew about the Ignition Switch Defect.  <u>See, e.g.</u>, ¶¶ 15, 1171-72.<br>• New GM failed to take immediate remedial action, and thereby breached its obligations under TREAD, as New GM admitted in its Consent Order with the National Highway and Traffic Safety Administration.  <u>See, e.g.</u>, ¶¶ 21, 1199. |
| **Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO")**<br>18 U.S.C. § 1961 <u>et seq.</u>[38] | • New GM, together with two separate entities, formed an illegal enterprise (the "**Enterprise**") designed to conceal information regarding the true nature and scope of the safety defects in GM-branded vehicles from the public and the government.  <u>See, e.g.</u>, ¶ 1019.<br>• The members of the Enterprise all had a common purpose: to misrepresent the safety and quality of GM-branded vehicles and conceal information regarding the nature and scope of all the defects plaguing GM vehicles.  <u>See</u> ¶ 1094.<br>• New GM conducted and participated in the Enterprise's affairs through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to execute a scheme to defraud by promoting and touting the safety, reliability, and quality of its vehicles.  <u>See, e.g.</u>, ¶ 1020.<br>• In support of the Enterprise, New GM submitted incomplete and misleading reports to government regulators.  <u>See, e.g.</u>, ¶ 1091. |

---

[36] <u>See</u> ¶¶ 1169-90.

[37] <u>See</u> <u>id.</u> ¶¶ 1191-1200.

[38] <u>See</u> <u>id.</u> ¶¶ 1015-1099.

**IV.**    **The Impact Of The Decision And Judgment On The Plaintiffs' Claims.**

    **A.**    **The Impact Of The Decision And
Judgment On The Ignition Switch Plaintiffs' Claims.**

33.    In the Decision, the Bankruptcy Court found that the Ignition Switch Plaintiffs were "known creditors" of the Debtor who were denied the notice that due process requires, and were prejudiced by the overbreadth of the Sale Order.  See In re Motors Liquidation Co., 529 B.R. at 523-27.  Therefore, the Ignition Switch Plaintiffs' due process rights were violated.  See id. at 527.

34.    To remedy this due process violation, the Decision and Judgment permit the Ignition Switch Plaintiffs to pursue "claims against New GM for any causes of action that might exist arising solely out of New GM's own, independent, post-Closing acts."  Id. at 598; Judgment ¶ 4 ("The Sale Order shall be deemed modified to permit the assertion of Independent Claims.").

35.    The Judgment further provides that:  "[e]xcept for Independent Claims and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and Judgment."  Judgment ¶ 9.

    **B.**    **The Impact Of The Decision And
Judgment On The Non-Ignition Switch Plaintiffs' Claims.**

36.    The Non-Ignition Switch Plaintiffs were not included in the Bankruptcy Court's ruling on *any* of the Threshold Issues and all issues relating to the enforcement of "the Sale Order with respect to them . . . ha[ve] been deferred pending the determination of the issues" presented by the first two Motions to Enforce.  In re Motors Liquidation Co., 529 B.R. at 523.

13

37.    However, in the Decision on Judgment, the Bankruptcy Court found that "[t]he Non-Ignition Switch Plaintiffs' claims remain stayed" under the Sale Order because they "have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of due process violation with respect to them." Decision on Judgment at 8.

38.    The Bankruptcy Court then extended "[t]he rulings set forth [in the Judgment] and in the Decision that proscribe claims and actions being taken against New GM . . . to any other plaintiffs in these proceedings," including the Non-Ignition Switch Plaintiffs. Judgment ¶ 13(a).[39]

39.    Under the Judgment, the Non-Ignition Switch Plaintiffs may: (i) object to the application of the rulings in the Decision and Judgment to them (an "**Objection Pleading**"), see Judgment ¶ 13(a); or (ii) make a showing of "a good faith basis to maintain that [their] . . . claims or causes of action . . . against New GM should not be dismissed or stricken" (a "**No Dismissal Pleading**"), id. ¶ 13(c).[40]

40.    The Judgment provides that:

> to the extent an issue shall arise in the future as to whether (i) the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs were known or unknown creditors of the Debtors, (ii) the doctrine of equitable mootness bars the use of any GUC Trust Assets to satisfy late-filed claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs, or (iii) the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale Order, the Non-Ignition Switch Pre-

---

[39]   The Bankruptcy Court acknowledged that "the Non-Ignition Switch Plaintiffs are still entitled to a fair opportunity to be heard in this Court as to whether there are any reasons to excuse them from the Sale Order," and thus "[t]he Decision will be *stare decisis* for [them] . . . but it will not be *res judicata*." Decision on Judgment at 8.

[40]   Paragraph 13(c) of the Judgment applies only to those lawsuits listed on Exhibit D to the Judgment. To the extent Paragraph 13(c) is applicable to the Non-Ignition Switch Plaintiffs, for the reasons set forth herein, it is not appropriate to stay or dismiss any claims of the Non-Ignition Switch Plaintiffs in the SAC.

> Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs shall
> be required to first seek resolution of such issues from this Court
> before proceeding any further against New GM and/or the GUC
> Trust.

Judgment ¶ 13(a).

### C.    The Impact Of The Decision And Judgment On The Non-Ignition Switch Plaintiffs' Ability To Access GUC Trust Assets.

41.    The Bankruptcy Court found that the Ignition Switch Plaintiffs were prejudiced by the lack of proper notice of the Bar Date; therefore their due process rights were violated. See In re Motors Liquidation Co., 529 B.R. at 526. To remedy this due process violation, the Decision provides that the Ignition Switch Plaintiffs may file late proofs of claim. Id. at 528-29.

42.    However, the Bankruptcy Court found that while "late claims filed by the Plaintiffs might still be allowed, assets transferred to the GUC Trust under the Plan could not now be tapped to pay them." Id. at 529.

43.    Thus, the Judgment provides that "based on the doctrine of equitable mootness, in no event shall assets of the GUC Trust held at any time in the past, now, or in the future (collectively, the "**GUC Trust Assets**") (as defined in the Plan) be used to satisfy any claims of the Plaintiffs." Judgment ¶ 6. This finding is subject to appeal by the Ignition Switch Plaintiffs.[41]

44.    Despite this prohibition, the Judgment permits Non-Ignition Switch Plaintiffs to make a showing of a good faith basis to maintain "that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed," provided that such "Pleading shall not reargue issues that were already decided by the Decision and Judgment" (a "**GUC Trust Asset Pleading**"). Judgment ¶ 13(d).

---

[41]    See *Appellants' Statement of Issues On Appeal And Designation Of Items To Be Included In The Record On Appeal*, dated June 16, 2015 [ECF No. 13219].

09-50026-mg    Doc 13247    Filed 06/24/15    Entered 06/24/15 16:15:03    Main Document
Pg 21 of 37

45.     The Decision acknowledged that "[t]he GUC Trust Assets stand to be augmented upon allowance of any Plaintiffs' claims against Old GM and/or the GUC Trust through an 'accordion feature' in the Sale Agreement."  In re Motors Liquidation Co., 529 B.R. at 538.

46.     The accordion feature requires New GM to pay new value into the GUC Trust if and when the aggregate amount of allowed unsecured claims against Old GM exceeds $35 billion.[42]  See Sale Agreement § 3.2(c).

47.     At present, there are approximately $31.85 billion in allowed claims against Old GM.  See Motors Liquidation Company GUC Trust, Annual Report for Year Ended March 31, 2015 (Form 10-K), at 6.

48.     The accordion feature will only be triggered by the allowance of any late claims allowed in a sufficient quantum (like the claims of the Plaintiffs).

49.     The Bankruptcy Court's equitable mootness holding was based on its finding that "[w]hen Old GM creditors received distributions under the Plan, and when Unitholders . . . acquired their units, they had a *reasonable expectation* that the total universe of claims filed against Old GM would not increase" and "while they knew that there was an accordion feature [in the Sale Agreement], they also knew that claims exposure would result . . . only from previously filed claims."  Decision on Judgment at 9-10 (emphasis added); see also In re Motors Liquidation Co., 529 B.R. at 587 (noting that purchasers of GUC Trust units after confirmation made their decision based on the "claims mix" at the time–a "then-known universe of claims that . . . *could only go down*.").

---

[42]    The amount of additional shares is calculated by multiplying:  (i) 30 million shares (adjusted to account for any stock dividend, stock split, combination of shares, recapitalization, merger, consolidation, reorganization or similar transaction that occurs after the 363 Sale is consummated); and (ii) a fraction, (A) the numerator of which is the amount by which allowed general unsecured claims exceeds $35 billion (up to $7 billion) and (B) the denominator of which is $7 billion.  See Sale Agreement § 3.2(c).

50.     Thus, while the Bankruptcy Court barred the Ignition Switch Plaintiffs from accessing GUC Trust Assets because Unitholders "could not be expected to foresee that the amount of claims would actually *go up*," it did not consider the appropriate result should the amount of assets in the GUC Trust *also* go up by triggering the accordion feature.  Id.

## RELIEF REQUESTED

51.     The Plaintiffs request that the Bankruptcy Court or the District Court following withdrawal, enter an Order finding that:  (i) the claims in the SAC shall not be dismissed, stayed or stricken and shall proceed immediately in the MDL action; and (ii) the Non-Ignition Switch Plaintiffs' rights are reserved to, at a future date, file and seek allowance of late claims, seek a recovery on such claims from the assets of the GUC Trust (in particular, assets contributed by New GM pursuant to the accordion feature), and litigate issues (i) through (iii) identified in paragraph 13(a) of the Judgment.

## ARGUMENT

I.    **The Bankruptcy Court Does Not Have Jurisdiction
To Enforce The Sale Order With Respect To Plaintiffs' Claims
For New GM's Own, Independent, Post-Closing Acts Or Conduct.**

52.     The Plaintiffs' claims in the SAC against New GM for New GM's own, independent, post-Closing acts and conduct cannot be enjoined under the Sale Order because the Bankruptcy Court lacks jurisdiction to effectuate such relief.

17

53. By the Decision, the Bankruptcy Court interpreted the scope of the Sale Order – a proper exercise of the Bankruptcy Court's jurisdiction under <u>Travelers Indem. Co. v. Bailey</u>, 557 U.S. 137, 151 (2009).[43]

54. However, the Bankruptcy Court did not address in the Decision its jurisdiction to enjoin independent, non-derivative, direct claims against New GM. Thus, the jurisdictional arguments previously asserted were only concerned with the Bankruptcy Court's ability to interpret and enforce its own Sale Order, not whether this Bankruptcy Court has jurisdiction to prospectively enjoin Independent Claims. Respectfully, as set forth below, it does not, and accordingly, the Plaintiffs are not rearguing issues already decided by the Decision and Judgment.

55. The Bankruptcy Court does not have jurisdiction to prospectively enjoin the claims in the SAC because they are for New GM's own, independent, post-Closing acts or conduct and do not seek to recover against, nor have any impact on, the Old GM bankruptcy estate.

56. The Bankruptcy Court's subject matter jurisdiction is limited to "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). A

---

[43] The Bankruptcy Court also properly considered the scope of the Sale Order in connection with various "no stay" pleadings. <u>See, e.g.</u>, *Decision with Respect to No Stay Pleading (Phaneuf Plaintiffs)*, dated July 30, 2014 [ECF No. 12791], at 16 (holding that it "need hardly be said" that the Bankruptcy Court had jurisdiction to interpret and enforce its own orders where complaint alleged claims against New GM based on successor liability, which were facially barred by the Sale Order); *Decision with Respect to No Stay Pleading and Related Motion to Dismiss for Lack of Subject Matter Jurisdiction (Elliott Plaintiffs)*, dated August 6, 2014 [ECF No. 12815], at 2 (dismissing the Elliott Plaintiffs' assertion that the Bankruptcy Court did not "have subject matter jurisdiction to construe and enforce the Sale Order" as "frivolous" and in disregard of "controlling decisions of the United States Supreme Court and Second Circuit[, and] district court authority in this District," among other authority); *Decision with Respect to No Stay Pleading, and Related Motion for Abstention (Sesay Plaintiffs)*, dated November 10, 2014 [ECF No. 12989], at 7-8 (dismissing Sesay Plaintiffs' arguments that the Bankruptcy Court lacked subject matter jurisdiction to hear the Motion to Enforce and finding that "[f]ederal judges including bankruptcy judges, have subject matter jurisdiction to enforce their own orders").

proceeding is "related to" a case under title 11 only if the outcome might have a "conceivable effect on the estate."[44]

57.    Where claims are asserted against a non-debtor, a bankruptcy court has no jurisdiction to stay, strike, or dismiss such claims "when [1] the asset in question is not property of the estate and [2] the dispute has no effect on the estate."[45]

58.    The Bankruptcy Court's jurisdiction is not expanded even if certain alleged "malfeasance" arose from the non-party's interaction with the debtor.  See Manville III, 517 F.3d at 67; see also In re 1031 Tax Grp., LLC, No. 10 Civ. 2799 (RJH), 2011 U.S. Dist. LEXIS 33755, at *7 (S.D.N.Y. Mar. 29, 2011) ("federal courts are without jurisdiction to enjoin actions against third-parties not in bankruptcy when those actions are premised upon an 'independent legal duty'").

59.    Here, the Bankruptcy Court lacks jurisdiction to enforce the Sale Order with respect to any of the claims in the SAC, and for this reason, all the claims should proceed against New GM in the MDL action on their merits without further delay.  The claims do not seek to recover against the assets of Old GM and the resolution of the claims will not impact the continued administration of Old GM's estate.  Thus, the Bankruptcy Court is without jurisdiction to dismiss, stay, or strike them.

---

[44]    Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.), 676 F.3d 45, 57 (2d Cir. 2012) ("[T]he touchstone for bankruptcy jurisdiction remains 'whether its outcome might have any conceivable effect' on the bankruptcy estate." (quoting Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992))), cert. denied, 133 S. Ct. 2849 (2013).

[45]    Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 517 F.3d 52, 66-68 (2d Cir. 2008) (holding that, despite a "common nucleus of operative facts involving" the debtor and the insurer, bankruptcy order enjoining actions unrelated to the res of the estate were outside the scope of the bankruptcy court's injunction power), rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey, 557 U.S. 137 (2009) ("**Manville III**"); see also In re Quigley Co., 676 F.3d at 61-62 (bankruptcy court lacks jurisdiction to enjoin a claim against a third party where such claim would not have an effect on the res of the bankruptcy estate); Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 600 F.3d 135, 152 (2d Cir. 2010) (court did not have subject matter jurisdiction to enjoin claims by third-party against non-debtor for contribution and indemnity which did not seek to collect from the res of the debtor's estate), cert. denied, 131 S. Ct. 644 (2010) ("**Manville IV**").

19

60.    <u>First</u>, the claims in the SAC seek only to recover against New GM, a non-debtor, for damages caused by its own, independent, post-Sale conduct, including without limitation concealing the Ignition Switch Defect while publicly touting its commitment to the safety and quality of its vehicles.[46]    Any damages and statutory penalties New GM may ultimately be required to pay should the claims prevail will not be paid out of any assets retained by the Old GM estate.    <u>Cf.</u> <u>In re Quigley Co.</u>, 676 F.3d at 54 (bankruptcy court had jurisdiction where adverse judgment against non-debtor could be satisfied from trust within debtor's estate).

61.    <u>Second</u>, the administration of Old GM's estate will not be adversely impacted by the claims.    Permitting the claims to proceed against New GM will not impair the distribution of assets to Old GM's creditors, nor threaten the successful administration of the estate.    <u>See, e.g.</u>, <u>id.</u> at 57 (finding that bankruptcy courts may have jurisdiction over actions against non-debtors in order to "'protect[] the assets of the estate' so as to ensure a fair distribution of those assets at a later point in time" (quoting <u>In re Zarnel</u>, 619 F.3d 156, 171 (2d Cir. 2010))).

62.    Finally, the fact that New GM's knowledge of the defects arises, in part, from the continuity of employees who gained knowledge in the course of their employment with Old GM and New GM's assumption of Old GM's books and records does not change the jurisdictional analysis.    <u>See</u> <u>Manville III</u>, 517 F.3d at 63, 67 (finding bankruptcy court had no jurisdiction over claims arising from a non-debtor's "independent legal duty in its dealings with plaintiffs, notwithstanding the factual background in which the duty arose").

63.    Therefore, the Bankruptcy Court lacks jurisdiction to prospectively enforce the Sale Order with respect to the claims in the SAC.    Accordingly, the SAC should proceed against New GM in the MDL action immediately.

---

[46]    <u>See, e.g.</u>, ¶¶ 302, 585, 1005.

II.     **The Plaintiffs' References To Pre-Bankruptcy Events Do Not
        <u>Change The Independent Nature Of The Claims Against New GM</u>.**

64.     The fact that the SAC contains factual allegations about Old GM does not mean that the causes of action asserted against New GM are somehow improperly based on Old GM's conduct.

65.     The Judgment *allows* Independent Claims "whether or not involving Old GM vehicles or parts" to proceed against New GM.  Judgment ¶ 4.  The same fundamentals should apply with respect to the claims of the Non-Ignition Switch Plaintiffs in the SAC.

66.     Further, while the Sale Order enjoins "claims" premised on successor or transferee liability, it should not be read to prohibit parties from including allegations regarding Old GM in support of otherwise valid claims against New GM.  <u>See</u> Sale Order ¶ 8 (barring the assertion of, *inter alia*, "rights or claims based on any successor or transferee liability"); ¶ 46 (providing that New GM "shall not have any successor, transferee, derivative, or vicarious liabilities . . . for any claims").

67.     The allegations in the SAC relating to the twenty-four Old GM employees that remained at New GM and New GM's retention of Old GM's books and records, only provide context for the claims.  <u>See, e.g.</u>, ¶¶ 171-90.  New GM's knowledge of the Ignition Switch Defect and all other pre-bankruptcy defects is the same regardless of its origin.  New GM's obligations to report and promptly recall its defective vehicles under the Safety Act give rise to its own post-Sale liability, despite the fact that Old GM and New GM maintained the same TREAD databases and records of accidents.  Because New GM was aware of the Ignition Switch Defect and scores of other defects, it had an independent legal obligation to inform drivers of the defects and take remedial action, which New GM never did until 2014.

68.     The fact that New GM's knowledge of the Ignition Switch Defect may be imputed from the knowledge of Old GM personnel it retained cannot insulate New GM from liability for its failure to act appropriately with that knowledge.  For example, New GM *chose* to retain as employees "a group large in size and relatively senior in position" of Old GM engineers, senior managers, and attorneys who knew of the Ignition Switch Defect.  In re Motors Liquidation Co., 529 B.R. at 558 n.154.

69.     In fact, New GM retained enough Old GM personnel "sufficient for [the Bankruptcy] Court to conclude that a 'critical mass' of Old GM personnel [within New GM] had the requisite knowledge—*i.e.*, were in a position to influence the noticing process" while Old GM was in bankruptcy.  Id. (emphasis added).

70.     Therefore, New GM cannot attempt to avoid liability under the Sale Order for its failure to act appropriately with the information *its own* employees possessed simply because they previously worked at Old GM.

71.     Accordingly, the claims seek to hold New GM liable for what it did, or failed to do, with the knowledge it acquired from Old GM.  The references to pre-bankruptcy events do not change the "independent" nature of such claims.

## III.    The Plaintiffs' Claims Against New GM For Its Independent Post-Sale Acts and Conduct Should Not Be Dismissed, Stayed Or Stricken.

### A.    The SAC.

72.     The SAC asserts class claims for Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs against New GM for its independent post-Sale conduct in violation of its statutory and common law duties as described below.  The Bankruptcy Court cannot and should not enjoin these claims under the Sale Order and the Plaintiffs should be free to proceed with these claims on their merits in the MDL action.

22

i.    **Fraudulent Concealment.**

73.    The SAC asserts fraudulent concealment claims against New GM for its post-Sale violation of its independent common law duty to disclose.  See, e.g., supra ¶ 32.  State common law uniformly prohibits the non-disclosure of material facts with the intent to deceive by an individual who has a duty to disclose, which can arise from a superior knowledge of the facts.  See, e.g., supra ¶ 32.[47]

74.    As demonstrated supra ¶ 32, the SAC alleges that New GM knew about the Ignition Switch Defect and many other safety defects in GM-branded vehicles, and knew that its corporate culture devalued safety.

75.    New GM concealed this material information with the intent to deceive Plaintiffs concerning the existence of the Ignition Switch Defect, other defects, the quality of the GM brand, and the integrity of New GM.  See id.  Therefore, the claim for fraudulent concealment in the SAC should proceed in the MDL action.

ii.    **Consumer Protection Statutes.[48]**

76.    The SAC asserts claims against New GM for its post-Sale violations of state consumer protection statutes.  See, e.g., supra ¶ 32.  Consumer protection statutes generally prohibit deceptive business practices that are likely to mislead a reasonable consumer, such as

---

[47]    Generally, a claim of fraudulent concealment requires that: (a) the defendant had a duty to disclose a material fact; (b) defendant failed to disclose that fact; (c) defendant intended to deceive the plaintiff, or was reckless; (d) plaintiffs relied on that deception; and (e) plaintiffs suffered damages as a result.  See, e.g., Hand v. Dayton-Hudson, 775 F.2d 757, 759 (6th Cir. 1985); Stanwood v. Mary Kay, Inc., 941 F. Supp. 2d 1212, 1220-21 (C.D. Cal. 2012), reconsideration denied, 941 F. Supp. 2d 1212 (C.D. Cal. Nov. 13, 2012).  A duty to disclose arises, inter alia, if the defendant had superior or exclusive knowledge of material facts not known to the plaintiff.  See, e.g., Hand, 775 F.2d at 759; Pelster v. Ray, 987 F.2d 514, 522-23 (8th Cir. 1993).

[48]    Some states also have companion statutes that expressly and specifically prohibit false advertising; Plaintiffs have brought such claims.

concealing or affirmatively misrepresenting material facts in connection with commerce.  See,
e.g., id.[49]

77.    As demonstrated supra ¶ 32, the SAC alleges that New GM engaged in deceptive
business practices intended to mislead and deceive consumers, including concealing the Ignition
Switch Defect, concealing many other safety defects, and falsely representing the quality of GM-
branded vehicles in advertising campaigns and other marketing materials.  Therefore, the claims
for New GM's violation of consumer protection statutes in the SAC should proceed in the MDL
action.

### iii.    Unjust Enrichment.

78.    The SAC asserts claims for unjust enrichment against New GM for its post-Sale
misconduct.  See, e.g., supra ¶ 32.  Under principles of unjust enrichment, a defendant who has
been unjustly enriched at a plaintiff's expense owes restitution to the plaintiff when it would be
against equity and good conscience to permit that defendant to retain the benefits.  See, e.g., id.[50]

79.    As demonstrated supra ¶ 32, the SAC alleges that New GM received a benefit
from its post-Sale conduct in concealing the Ignition Switch Defect and other safety defects and
making misleading representations about the safety and reliability of GM-branded vehicles—
namely "avoiding and delaying the effort and expenditures involved in recalling and repairing
the" vehicles impacted by the Ignition Switch Defect.  These benefits would be inequitable to
retain because they arose from New GM's own fraudulent course of conduct in concealing the

---

[49]    For example, the Delaware Consumer Fraud Act prohibits the:  "act, use or employment by any person of any
deception, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of
any material fact with intent that others rely on such concealment, suppression or omission, in connection with
the sale, lease or advertisement of any merchandise whether or not any person has in fact been misled, deceived
or damaged thereby.  See ¶ 1766 (citing 6 Del. Code § 2513(a)).

[50]    See, e.g., Georgia Malone & Co., Inc. v. Rieder, 19 N.Y.3d 511, 516 (N.Y. 2012); Michigan Ed. Employees
Mut. Ins. Co. v. Morris, 596 N.W.2d 142, 151 (Mich. 1999).

Ignition Switch Defect and other safety defects.   See id.   Therefore, the claims for unjust

enrichment against New GM in the SAC should proceed in the MDL action.

### iv.   Implied Warranty of Merchantability.

80.    The SAC asserts that New GM's post-Sale conduct violated New GM's implied

warranty of merchantability for purchasers of vehicles with defective ignition switches that were

sold or leased as new or Certified Previously Owned vehicles by New GM.  See, e.g., supra ¶ 32.

Under the U.C.C. a warranty that goods are in merchantable condition, meaning, *inter alia*, fit

for the ordinary purpose for which they are used, is implied by law in a contract for their sale.

See, e.g., id.[51]

81.    As demonstrated supra ¶ 32, the SAC alleges that New GM distributed, leased,

and sold new or Certified Previously Owned vehicles with defective ignition switches despite the

fact that New GM knew that these vehicles were defective and unfit for their ordinary purpose as

safe passenger vehicles.   See id.   Therefore, the claims for New GM's breach of the implied

warranty of merchantability in the SAC should proceed in the MDL action.

### v.   Magnuson-Moss Warranty Act.

82.    The SAC alleges that New GM's post-Sale conduct violated the Magnuson-Moss

Warranty Act with respect to post-Sale purchasers of vehicles sold or leased by New GM as new

or Certified Previously Owned vehicles with defective ignition switches.  See supra ¶ 32.  The

Magnuson-Moss Warranty Act provides consumers with a federal cause of action to remedy the

breach of the implied warranty of merchantability arising under state law, *i.e.*, to remedy the sale

of goods that are not fit for their ordinary purpose.  See, e.g., SAC ¶ 1107 (citing 15 U.S.C. §

2301(7)).

---

[51]   See, e.g., Mich. Comp. Laws § 440.2314; N.Y. U.C.C. Law § 2-314.

83.     As demonstrated <u>supra</u> ¶ 32, the SAC alleges that New GM manufactured and sold vehicles with defective ignition switches that were unfit for the ordinary purposes for which they were used—as a safe, reliable mode of transportation.  Therefore, the claims for New GM's violation of the Magnuson-Moss Warranty Act in the SAC should proceed in the MDL action.

### vi.    <u>Negligence.</u>

84.     The SAC asserts negligence claims against New GM solely for its post-Sale violation of its duties under the Restatement (Second) of Torts § 395 on behalf of certain residents of Arkansas, Louisiana, Maryland, and Ohio who purchased vehicles sold or leased by New GM.  <u>See, e.g.</u>, <u>supra</u> ¶ 32.  The Restatement as adopted by these states generally prohibits the violation of the duty to design and manufacture a product that is safe for its intended and foreseeable uses when that product poses an unreasonable risk of physical harm unless carefully made.  <u>See, e.g.</u>, <u>id.</u>[52]

85.     As demonstrated <u>supra</u> ¶ 32, the SAC alleges that New GM failed to exercise reasonable care in the manufacture of its vehicles, resulting in the sale of vehicles with defective ignition switches that carried an unreasonable risk of physical harm to the Plaintiffs.  Moreover, New GM failed to warn the Plaintiffs about the unreasonable risk of physical harm arising from their probable use of the defective vehicles, despite New GM's knowledge of the defective ignition switches.  <u>See</u> ¶ 32. Therefore, the claims for negligence against New GM in the SAC should proceed in the MDL action.

---

[52]    The Restatement (Second) of Torts § 395 provides that "[a] manufacturer who [1] fails to exercise reasonable care in the manufacture of a chattel which, [2] unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm [3] to those who use it for a purpose for which the manufacturer should expect it to be used and [4] to those whom he should expect to be endangered by its probable use, [5] is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied."

  
### vii. Fraudulent Concealment Of The Right To File A Claim Against Old GM In Bankruptcy.

86.     The SAC asserts that New GM's post-Sale conduct violated its independent duty to disclose the Ignition Switch Defect to Ignition Switch Plaintiffs who owned GM-branded vehicles between July 11, 2009 and November 30, 2009. See, e.g., supra ¶ 32.

87.     These claims are based on New GM's knowledge of the Ignition Switch Defect and failure to disclose that material information to Ignition Switch Plaintiffs and the resultant harm in depriving the Ignition Switch Plaintiffs of the ability to access GUC Trust Assets to satisfy claims against Old GM's bankruptcy estate stemming from New GM's concealment of the Ignition Switch Defect. See id.

88.     Therefore, these claims against New GM, like the fraudulent concealment claims in the SAC should proceed in the MDL action.

### viii. Breach Of The Covenant To Comply With TREAD.

89.     The SAC asserts claims for New GM's post-Sale conduct in breach of its covenant to comply with TREAD. See, e.g., supra ¶ 32. New GM entered into a valid contract, the Sale Agreement,[53] in which it promised to comply with TREAD with respect to Old GM vehicles. See id.

90.     The SAC asserts that New GM breached this contractual obligation by failing to "take *immediate* remedial action" despite New GM's knowledge of the Ignition Switch Defect in violation of TREAD to the detriment of third party beneficiaries, the Ignition Switch Plaintiffs. See id.

91.     Therefore, the claim for breach of the covenant to comply with TREAD asserted in the SAC should proceed in the MDL action.

---

[53]    See *Amended and Restated Master Sale and Purchase Agreement*, dated June 26, 2009 [ECF No. 2968-2].

<b>ix.      Violation Of The RICO Act.</b>

92.     The SAC asserts that New GM's post-Sale conduct violated the RICO Act. <u>See,</u> <u>e.g.</u>, supra ¶ 32. The RICO Act prohibits, *inter alia*, participation in an illegal enterprise through a pattern of racketeering activity, including the use of interstate mail and wire communications. <u>See, e.g.</u>, SAC ¶¶ 1020, 1031 (citing 18 U.S.C. §§ 1962(c), 1341, 1343).

93.     As described <u>supra</u> ¶ 32, the SAC alleges that New GM formed an illegal enterprise for the common purpose of misrepresenting the safety and quality of GM-branded vehicles and concealing the nature and scope of the Ignition Switch Defect and the many other safety defects through the use of interstate mail and wire communications.

94.     Therefore, the claim against New GM for the violation of the RICO Act should proceed in the MDL action.

95.     In sum, the Plaintiffs should be free to proceed with the SAC, *in toto*, in the MDL action because it only asserts claims against New GM for its own, independent post-Closing acts or conduct.

**IV.    The Decision And Judgment Should Not Apply To
The Non-Ignition Switch Plaintiffs' Independent Claims.**

96.     The Judgment provides that "[e]xcept for the modification to permit the assertion of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect." Judgment ¶ 5. The Judgment also provides that the rulings in the Decision that proscribe claims against New GM shall apply to the claims of the Non-Ignition Switch Plaintiffs if they do not file an Objection Pleading. <u>See id.</u> ¶ 13(a).

97.     Accordingly, the Non-Ignition Switch Plaintiffs file this Objection Pleading to establish that the claims of the Non-Ignition Switch Plaintiffs against New GM in the SAC should be free to proceed on their merits in the MDL action because: (i) as set forth above, they

28

assert claims for New GM's own independent post-Closing acts or conduct; and (ii) the

Bankruptcy Court lacks jurisdiction to dismiss, stay or strike such claims because they do not

impact the Old GM estate or its property.  Therefore, entry of an Order finding that the claims of

the Non-Ignition Switch Plaintiffs in the SAC shall proceed in the MDL action is appropriate.

98.    Because the Non-Ignition Switch Plaintiffs' claims are for New GM's post-

Closing acts or conduct, they should proceed immediately on the merits in the MDL action.  To

the extent further determination is required, the reference to the Bankruptcy Court for the Non-

Ignition Switch Motion to Enforce should be withdrawn and the rulings in the Decision and

Judgment should not apply to the Non-Ignition Switch Plaintiffs.

99.    The Bankruptcy Court expressly deferred consideration of the Non-Ignition

Switch Motion to Enforce and the record underpinning the Decision (the Stipulations of Fact)

only relates to the Ignition Switch Defect.  See In re Motors Liquidation Co., 529 B.R. at 523.

100.    Moreover, the Non-Ignition Switch Plaintiffs had no opportunity to develop their

own set of fact stipulations or to engage in discovery with respect to the defects in GM-branded

vehicles other than the Ignition Switch Defect.  See Non-Ignition Switch Scheduling Order at 2

(ordering "that no discovery shall take place with respect to the [Non-Ignition Switch] Motion to

Enforce until further order of this Court").

101.    Accordingly, applying the rulings in the Decision and Judgment barring claims

against New GM under the Sale Order to the Non-Ignition Switch Plaintiffs would be unfair and

a violation of due process.

102.    For these reasons, the Non-Ignition Switch Plaintiffs' claims in the SAC should

proceed immediately against New GM in the MDL action or otherwise the Decision and

Judgment should not apply to such claims.

**V.    The Non-Ignition Switch Plaintiffs' Rights Should Be Reserved To File
Late Proofs Of Claim And Seek Recovery On Such Claims From GUC Trust Assets.**

103.    The Decision and Judgment bar the Ignition Switch Plaintiffs from accessing GUC Trust Assets for any of their late filed proofs of claim that may be allowed based on the doctrine of equitable mootness.[54]  The Ignition Switch Plaintiffs have appealed.[55]

104.    The Decision and Judgment do not address the Non-Ignition Switch Plaintiffs' rights to access GUC Trust Assets as the Non-Ignition Switch Motion to Enforce was deferred. See In re Motors Liquidation Co., 529 B.R. at 523.  In fact, the definitions of "Plaintiffs" in both the Decision and Judgment exclude the Non-Ignition Switch Plaintiffs.[56]  While the Bankruptcy Court recognized that "[s]imilar considerations (and also mootness points) may apply with respect to the allowance of late Non-Ignition Switch Plaintiffs' claims[,]" neither the Decision nor the Judgment prevent the Non-Ignition Switch Plaintiffs from ultimately recovering from GUC Trust Assets.  See Decision on Judgment at 8.

105.    It is premature and inappropriate to bar the Non-Ignition Switch Plaintiffs from accessing GUC Trust Assets.  The Decision and Judgment do not address the Non-Ignition Switch Plaintiffs' due process rights as it relates to the Bar Date.  Therefore, the Non-Ignition Switch Plaintiffs are not party to the appeal of the Court's equitable mootness finding.  Thus, even if the appeal is successful, the Non-Ignition Switch Plaintiffs' rights to access GUC Trust Assets would not be fully determined, so it is inequitable to now bar the Non-Ignition Switch

---

[54]    See In re Motors Liquidation Co., 529 B.R. at 529; Judgment ¶ 6 ("[B]ased on the doctrine of equitable mootness, in no event shall assets of the GUC Trust held at any time in the past, now, or in the future . . . be used to satisfy any claims of the Plaintiffs.").

[55]    See Appellants' Statement of Issues On Appeal And Designation Of Items To Be Included In The Record On Appeal, June 16, 2015 [ECF No. 13219].

[56]    See In re Motors Liquidation Co., 529 B.R. at 523 n.8 (defining "Plaintiffs" as the Economic Loss Plaintiffs and Pre-Closing Accident Plaintiffs only); Judgment ¶ 1 (defining "Plaintiffs" as Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs only).

30

Plaintiffs from accessing GUC Trust Assets without the same opportunity that was afforded the Ignition Switch Plaintiffs.

106.    For these reasons the rights of Non-Ignition Switch Plaintiffs should be reserved to, at a future date, file and seek allowance of late claims, seek a recovery on such claims from the assets of the GUC Trust, and litigate issues (i) through (iii) identified in paragraph 13(a) of the Judgment.[57]

## **CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that the Bankruptcy Court, or District Court upon withdrawal, enter an Order finding:  (i) that the claims in the SAC shall not be dismissed, stayed or stricken and shall proceed immediately in the MDL action; (ii) finding that the Non-Ignition Switch Plaintiffs' rights should be reserved to, at a future date, file and seek allowance of late claims, seek a recovery on such claims from the assets of the GUC Trust, and litigate issues (i) through (iii) identified in paragraph 13(a) of the Judgment; and (iii) granting such other and further relief as is just and proper.

---

[57] This reservation is particularly appropriate in light of the good faith basis the Plaintiffs have to access GUC Trust Assets.  As opposed to clawing back distributions to GUC Trust Beneficiaries, the Plaintiffs should be permitted to access existing GUC Trust Assets and those GUC Trust Assets that result from the Plaintiffs' claims triggering the accordion feature.

31

Dated:  New York, New York
          June 24, 2015

Respectfully submitted,

*/s/  Edward S. Weisfelner*

Edward S. Weisfelner
David J. Molton
May Orenstein
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
dmolton@brownrudnick.com
morenstein@brownrudnick.com
hsteel@brownrudnick.com

-and-

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs & Certain Non-Ignition Switch
Plaintiffs*