Edward S. Weisfelner
David J. Molton
May Orenstein
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800
Email: eweisfelner@brownrudnick.com
Email: dmolton@brownrudnick.com
Email: morenstein@brownrudnick.com
Email: hsteel@brownrudnick.com

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900
Email: esserman@sbep-law.com

*Designated Counsel for the Ignition Switch Plaintiffs
& Certain Non-Ignition Switch Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                        :
In re:                                  :        Chapter 11
MOTORS LIQUIDATION COMPANY, et al.,     :        Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., et al.,  :
                                        :
                            Debtors.    :        (Jointly Administered)
-------------------------------------------------------------x
```

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO WITHDRAW THE REFERENCE FOR
THE IGNITION SWITCH PLAINTIFFS' NO STRIKE PLEADING
WITH REGARD TO THE SECOND AMENDED CONSOLIDATED
COMPLAINT; AND THE NON-IGNITION SWITCH PLAINTIFFS' (I)
OBJECTION PLEADING WITH REGARD TO THE SECOND AMENDED
CONSOLIDATED COMPLAINT AND (II) GUC TRUST ASSET PLEADING**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................2

BACKGROUND ........................................................................................................................7

I.      The Ignition Switch Defect And New GM's Parade Of Recalls. .......................................7

II.     The Impact Of The Decision And Judgment On Plaintiffs' Claims. ..................................8

III.    Plaintiffs' Claims Against New GM. ..............................................................................10

STATEMENT OF JURISDICTION...........................................................................................12

ARGUMENT ...........................................................................................................................13

I.      Legal Standard For Withdrawal Of The Reference. .........................................................13

II.     Withdrawal Of The Reference Is Mandatory For Certain Claims. ...................................14

III.    The District Court Should Exercise Its Discretion To Withdraw The Reference
        For The Omnibus Judgment Pleading...............................................................................16

        A.      The Bankruptcy Court Lacks Final Authority  To Adjudicate The Omnibus
                Judgment Pleading. ...............................................................................................16

        B.      Withdrawal Of The Omnibus Judgment Pleading Promotes The Efficient Use
                Of Judicial Resources And Minimizes Cost And Delay. .........................................19

        C.      Withdrawal Does Not Interfere With  The Uniform Administration Of
                Bankruptcy Law. ...................................................................................................22

        D.      Plaintiffs Are Not Forum Shopping. .....................................................................24

CONCLUSION.........................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Adelphia Commc'ns Corp. Secs. & Derivative Litig.,
    No. 03 MDL 1529(LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006)....................15, 21, 25

City of New York v. Exxon Corp.,
    932 F.2d 1020 (2d Cir. 1991)...................................................................................................14

Complete Mgmt., Inc. v. Arthur Andersen, LLP (In re Complete Mgmt., Inc.),
    No. 02 Civ. 1736, 2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002).........................................22

Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP,
    462 B.R. 457 (S.D.N.Y. 2011)...........................................................................................24, 25

In re Ephedra Prods. Liab. Litig.,
    329 B.R. 1 (S.D.N.Y. 2005)...................................................................................................13

In re G.M. Crocetti, Inc.,
    No. 08 Civ. 6239(DLC), 2008 WL 4601278 (Oct. 15, 2008).................................................21

Grant Thornton Int'l v. Parmalat Finanziaria S.p.A.
    (In re Parmalat Finanziaria S.p.A.), 320 B.R. 46 (S.D.N.Y. 2005) ..................................19, 20

Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.),
    185 B.R. 680 (S.D.N.Y. 1995).................................................................................................21

In re Ionosphere Clubs, Inc.,
    922 F.2d 984 (2d Cir. 1990)...............................................................................................13, 14

In re Johns-Manville Corp.,
    63 B.R. 600 (S.D.N.Y. 1986)...................................................................................................14

In re Laventhol & Horwath,
    139 B.R. 109 (S.D.N.Y. 1992).................................................................................................13

Mirant Corp. v. The S. Co.,
    337 B.R. 107 (N.D. Tex. 2006).................................................................................................23

In re Motors Liquidation Co.,
    529 B.R. 510 (Bankr. S.D.N.Y. 2015)...........................................................1, 2, 3, 4, 8, 9, 23

In re Oakwood Homes, Corp.,
    Civ. A. No. 06-436-JJF, 2007 WL 2071730 (D. Del. July 17, 2007)......................................24

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),
     4 F.3d 1095 (2d Cir. 1993)............................................................5, 6, 13, 16, 17, 19, 22, 24, 25

Pan Am. Corp. v. Delta Air Lines, Inc. (In re Pan Am. Corp.),
     163 B.R. 41 (S.D.N.Y. 1993)...............................................................................19, 20, 25

Picard v. Flinn Invs., LLC,
     463 B.R. 280 (S.D.N.Y. 2011)..................................................................................15

Picard v. HSBC Bank PLC,
     450 B.R. 406 (S.D.N.Y. 2011)..................................................................................14

Picard v. Kohn,
     No. 11 Civ. 1181(JSR), 2011 WL 10894857 (S.D.N.Y. Sept. 6, 2011)..................................15

ResCap Liquidating Trust v. PHH Mortg. Corp.,
     518 B.R. 259 (S.D.N.Y. 2014)......................................................13, 20, 21, 22, 23

ResCap Liquidating Trust v. Primary Cap. Advisors, LLC (In re Residential Cap.,
     LLC),
     527 B.R. 865 (S.D.N.Y. 2014)..................................................................................22

Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc. (In re
     Residential Cap. LLC),
     519 B.R. 593 (S.D.N.Y. 2000)..........................................................................18, 24

S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.),
     94 F.3d 755 (2d Cir. 1996)......................................................................5, 6, 7, 13, 16

Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff),
     454 B.R. 307 (S.D.N.Y. 2011)..................................................................................13

Solutia Inc. v. FMC Corp.,
     No. 04 Civ. 2842, 2004 WL 1661115 (S.D.N.Y. July 27, 2004) ...........................................17

Stern v. Marshall,
     131 S. Ct. 2594 (2011) ............................................................................................7, 16

Waldron v. Nat. Union Fire Ins. Co. of Pittsburgh (In re EbaseOne Corp.),
     Case No. 01-31527-H4-7, Adv. No. 06-3197, 2006 WL 2405732 (Bankr. S.D.
     Tex. June 14, 2006).................................................................................................25

Walker, Truesdell, Roth & Assoc. v. Blackstone Group, L.P. (In re Extended
     Stay, Inc.),
     466 B.R. 188 (S.D.N.Y. 2011)..................................................................................23

Wedtech Corp. v. London (In re Wedtech Corp.),
     81 B.R. 237 (S.D.N.Y. 1987)....................................................................................19

Weisfelner v. Blavatnik (In re Lyondell Chemical Co.),
    467 B.R. 712 (S.D.N.Y. 2012) ................................................................................................. 19

Wellness Int'l Network, Ltd. v. Sharif,
    No. 13-95, 2015 WL 2456619 (May 26, 2015) ................................................................ 16, 17

**Statutes**

28 U.S.C. § 157 ..................................................................................... 1, 12, 13, 14, 16, 17, 18

28 U.S.C. § 1334 ............................................................................................................................ 12

**Other Authorities**

Fed. R. Bankr. P. 5001 ................................................................................................................... 1

Fed. R. Bankr. P. 9033 ................................................................................................................ 17

Restatement (Second) of Torts § 395 ........................................................................................ 12

S.D.N.Y. L.B.R. 5011-1 .................................................................................................................. 1

By and through undersigned Designated Counsel,[1] the Ignition Switch Plaintiffs[2] and the Non-Ignition Switch Plaintiffs[3] respectfully submit this *Memorandum of Law* in support of the *Motion to Withdraw the Reference for the Ignition Switch Plaintiffs' No Strike Pleading with Regard to the Second Amended Consolidated Complaint; and the Non-Ignition Switch Plaintiffs' (I) Objection Pleading with regard to the Second Amended Consolidated Complaint and (II) GUC Trust Asset Pleading*, pursuant to 28 U.S.C. § 157(d), Rule 5001 of the Federal Rules of Bankruptcy Procedure, and Rule 5011-1 of the Local Bankruptcy Rules (the "Motion"), filed contemporaneously herewith.   In support of the Motion, the Plaintiffs respectfully state as follows:

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Decision on Motion to Enforce Sale Order*, In re Motors Liquidation Co., 529 B.R. 510 (Bankr. S.D.N.Y. 2015) (the "Decision") or in the *Judgment*, dated June 1, 2015 [ECF No. 13177] (the "Judgment").

[2]    As defined in the Judgment, the term "Ignition Switch Plaintiffs" shall mean plaintiffs who have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [ECF No. 12826] (the "Stipulations of Fact"), at 3).  Because the Subject Vehicles in the Judgment are only those vehicles involved in the February and March 2014 Recalls (Recall No. 14-V-171000), the term Ignition Switch Plaintiffs as used in the pleading includes only Plaintiffs who own or lease those vehicles, and does not include those Plaintiffs who own or lease other vehicles with defective ignition switches (made by both Old and New GM) that were recalled in June and July of 2014.

[3]    The term "Non-Ignition Switch Plaintiffs" shall mean all plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch in the vehicles subject to Recall No. 14-V-171000, or based on or arising from economic losses and diminution in value of their GM-branded vehicles based on the Ignition Switch Defect or other alleged defects in Old and New GM vehicles. The Non-Ignition Switch Plaintiffs together with the Ignition Switch Plaintiffs are defined herein as the "Plaintiffs."

## <u>PRELIMINARY STATEMENT</u>

The Bankruptcy Court's Judgment on New GM's contested Motions to Enforce the Sale Order (the "<u>Motions to Enforce</u>")[4] creates procedures for its implementation and to further define its scope as it bears upon claims asserted in the MDL action.  Pursuant to these procedures, pleadings in which claims are asserted against New GM in the MDL action are to be tested for compliance with the Sale Order as it has been held by the Bankruptcy Court to have been modified pursuant to the Decision.  Because this exercise will involve the consideration of complex issues under federal non-bankruptcy law, including the Magnuson-Moss Act and the Racketeer Influenced and Corrupt Organizations Act (the "<u>RICO Act</u>"), withdrawal is mandatory.  Furthermore, even if withdrawal is permissive rather than mandatory, the District Court should withdraw the reference now so that all further proceedings involving claims against New GM, including the proceedings contemplated by the Judgment, can progress efficiently, without unnecessary delay, duplication and possible inconsistency resulting from the continued bifurcation of proceedings between the Bankruptcy Court and the District Court.[5]  The reference should also be withdrawn so that all further proceedings relating to the Plaintiffs' claims against New GM will be presided over by a court with the power to enter final judgment.

---

[4]    <u>See</u> *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009Sale Order and Injunction*, dated April 21, 2014 [ECF No. 12620] (the "<u>Ignition Switch Motion to Enforce</u>"); *Motion of General Motors LLC Pursuant to 11 U.S.C §§ 105 and 363 to Enforce this Court's July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [ECF No. 12807] (the "<u>Pre-Closing Accident Motion to Enforce</u>"); *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [ECF No. 12808] ("<u>Non-Ignition Switch Motion to Enforce</u>").  The Non-Ignition Switch Motion to Enforce was deferred pending determination of the other Motions to Enforce.  <u>See</u> In re Motors Liquidation Co., 529 B.R. at 523.

[5]    The Decision and Judgment are on appeal by several parties.  <u>See</u> ECF Nos. 13179, 13180, 13185, 13194, 13200, 13204.  The Ignition Switch Plaintiffs are seeking that the appeal be heard in the first instance before the District Court.

As issued in 2009, the Sale Order enjoins certain claims against New GM arising from its own post-Sale conduct.[6]  Ruling on the Ignition Switch and Pre-Closing Accident Motions to Enforce, the Bankruptcy Court found that the Sale Order, as issued, was overbroad and that the owners of vehicles with the Ignition Switch Defect were prejudiced by the failure of Old GM to provide them notice of the proposed Sale Order insofar as it prevented them from challenging the scope of the Sale Order's injunctive provisions.  To implement this key ruling, the Judgment provides for the Sale Order to be modified to permit the assertion of "Independent Claims," defined as "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct."  Judgment ¶ 4.

The Judgment provides for the amendment of existing pleadings to conform to the Decision and for the filing of motions seeking a determination of the "independence" of Plaintiffs' claims against New GM.  Though the Second Amended Consolidated Complaint[7] ("SAC") is not stayed under the Judgment, in anticipation of a motion by New GM seeking to strike certain claims in the SAC based on the Sale Order (as modified by the Decision and Judgment), the Ignition Switch Plaintiffs have prophylactically filed a "No Strike" pleading with respect to the SAC.[8]

---

[6]    According to the Bankruptcy Court, the overbreadth of the Sale Order is attributable to the fact that "[n]obody . . . back in 2009" made the argument that the proposed Sale Order was overly broad to the extent it precluded claims "involving Old GM vehicles and parts so long as they were basing their claims solely on New GM conduct, and not based on any kind of successor liability or any other act by Old GM."  In re Motors Liquidation Co., 529 B.R. at 526-27.  The Bankruptcy Court added that, had the purchasers of defective vehicles "made that argument back in 2009, the [Bankruptcy] Court would have agreed with them."  Id. at 527.

[7]    See Second Amended Consolidated Complaint, In re General Motors LLC Ignition Switch Litigation, No. 14-MD-2543 (JMF) (S.D.N.Y. June 12, 2015) (ECF No. 1038), as corrected June 22, 2015 (ECF No. 1061).

[8]    See The Ignition Switch Plaintiffs' No Strike Pleading with Regard to the Second Amended Consolidated Complaint and the Non-Ignition Switch Plaintiffs' (I) Objection Pleading with Regard to The Second Amended Complaint; and (II) GUC Trust Asset Pleading filed contemporaneously herewith (the "Omnibus Judgment Pleading").

The Judgment also includes procedures for the filing of objections by the Non-Ignition Switch Plaintiffs to the application to them of the Decision and Judgment and allowing them to demonstrate the independence of claims they assert against New GM in the SAC. As part of the Omnibus Judgment Pleading, the Non-Ignition Switch Plaintiffs submit that withdrawal of the reference as to their objection is appropriate for the same reasons it is appropriate to withdraw the reference with respect to proceedings involving the "independence" of the Ignition Switch Plaintiffs' claims. The Bankruptcy Court also found that the lack of notice to the Ignition Switch Plaintiffs prejudiced them insofar as they were not provided notice of the Bar Date. See In re Motors Liquidation Co., 529 B.R. at 526. To remedy this due process violation, the Decision provides that the Ignition Switch Plaintiffs may file late proofs of claim, but that "based on the doctrine of equitable mootness, in no event shall assets of the GUC Trust held at any time in the past, now, or in the future (collectively, the "GUC Trust Assets") (as defined in the Plan) be used to satisfy any claims of the Plaintiffs." Judgment ¶ 6. This finding is subject to appeal by the Ignition Switch Plaintiffs.

The Bankruptcy Court deferred consideration of all issues relating to the Non-Ignition Switch Motion to Enforce (including access to GUC Trust Assets), and the Decision and Judgment do not address the Non-Ignition Switch Plaintiffs' due process rights in relation to the Bar Date. Accordingly, the Non-Ignition Switch Plaintiffs are not party to the appeal of the Bankruptcy Court's equitable mootness finding. Thus, even if the appeal is successful, the Non-Ignition Switch Plaintiffs' rights to access GUC Trust Assets would not be fully determined.

The Judgment permits Non-Ignition Switch Plaintiffs to make a showing of a good faith basis to maintain "that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed," provided that such "Pleading shall not reargue

issues that were already decided by the Decision and Judgment" (a "<u>GUC Trust Asset</u> <u>Pleading</u>"). Judgment ¶ 13(d).

Accordingly, as part of the Omnibus Judgment Pleading, the Non-Ignition Switch Plaintiffs' filed a "<u>Reservation of Rights / GUC Trust Asset Pleading</u>" seeking to reserve the right to, at a future date, file and seek allowance of late claims, seek a recovery on such claims from the assets of the GUC Trust, and litigate issues (i) through (iii) identified in paragraph 13(a) of the Judgment. As set forth below, withdrawal of the reference for the Reservation of Rights / GUC Trust Asset Pleading is also appropriate.

For the reasons stated below, the reference to the Bankruptcy Court should be immediately withdrawn so that all further proceedings with respect to the Omnibus Judgment Pleading are first heard by the District Court.

*First*, because the further proceedings required by the Decision and the Judgment involve "substantial and material" consideration of non-Bankruptcy Code federal statutes, withdrawal of the reference is mandatory.

*Second*, even if withdrawal is not mandatory, "cause" exists for withdrawal under longstanding Second Circuit precedent as set forth in <u>Orion Pictures</u> and <u>Burger Boys</u>.[9] The threshold test to determine whether "cause" exists to withdraw the reference is whether the resolution of a particular matter is "core" or "non-core." Here, according to the Decision, equitable mootness *absolutely* precludes the modification of the Old GM Plan or accessing the GUC Trust Assets to satisfy late-filed claims. Accordingly, the resolution of the Omnibus Judgment Pleading can have no possible impact on the administration of the bankruptcy estate of Old GM and thus cannot be "core."

*Third*, judicial economy, the second factor weighed under <u>Burger Boys</u>, strongly supports withdrawal. The MDL Court is responsible for examining the claims in the SAC to determine their legal sufficiency. While the Judgment differentiates between the determination to be made regarding the "independence" of a claim from a determination of its legal sufficiency, as a practical matter, these determinations are either entirely overlapping or, at minimum, dovetail. A determination of whether asserted facts form a basis for New GM's liability "independent" of liability of Old GM must, logically, be preceded by an identification of New GM conduct that could potentially be the predicate of New GM liability. Inquiry into legal sufficiency will tread this same ground, scrutinizing the pleadings for the sufficiency of factual allegations supporting some legally cognizable claim. Also relevant to issues of judicial economy is the likelihood that multiple parties will file similar No Stay, No Strike and Objection Pleadings and seek withdrawal of the reference.[10] Complete withdrawal here would promote judicial economy and uniformity, and minimize cost and delay to the parties.

*Fourth*, retention of the reference will result in delay, the avoidance of which is the third <u>Burger Boys</u> factor. Even if the "independence" determination is conceptually distinct from the determination of legal sufficiency, the maintenance of the reference will result in these determinations being made separately and sequentially rather than at the same time by the same court (the MDL Court) that will be adjudicating the claims themselves. If the reference is withdrawn, both determinations can occur concurrently thereby expediting the proceedings.

---

[9]    <u>See</u> <u>S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)</u>, 94 F.3d 755, 762 (2d Cir. 1996); <u>Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)</u>, 4 F.3d 1095, 1101 (2d Cir. 1993).

[10]    Indeed, a motion seeking withdrawal of the reference of two "No Strike" Pleadings has been filed by Attorney General Mark Brnovich on behalf of the State of Arizona and Orange County District Attorney Tony Rackauckas on behalf of the People of the State of California. <u>See</u> *Motion to Withdraw the Reference with Regard to No Strike Pleadings*, dated June 16, 2015 [ECF No. 13213].

*Fifth*, other Burger Boys factors, such as the promotion of uniformity of bankruptcy administration and the avoidance of forum shopping, are not implicated here where there is no question that the claims in the SAC are beyond the jurisdiction of the Bankruptcy Court.

*Sixth*, following Stern v. Marshall,[11] the District Court must also consider whether the Bankruptcy Court has final adjudicative power. Here, it is clear that the Bankruptcy Court has no final power to adjudicate a ruling on "independence" and Plaintiffs have not knowingly or voluntarily consented to have the Bankruptcy Court adjudicate their claims against New GM.

Accordingly, the Plaintiffs respectfully request that the District Court withdraw the reference to the Bankruptcy Court of the Omnibus Judgment Pleading.

## BACKGROUND

## I.    The Ignition Switch Defect And New GM's Parade Of Recalls.

In February and March of 2014, New GM disclosed the existence of the Ignition Switch Defect, a serious safety defect which causes the loss of power, an inability to control speed and braking functions, and the disablement of airbags, and issued a recall. In its Consent Order with the National Highway Safety Administration, New GM conceded that it violated the law by failing to properly disclose the Ignition Switch Defect and conduct a timely recall.[12] To date, the Ignition Switch Defect has been linked to 117 deaths and 237 serious injuries.[13] Although New GM knew about the Ignition Switch Defect since its inception in 2009, it concealed its existence from the public for nearly five years. As the Bankruptcy Court recognized, at least twenty-four (24) Old GM personnel, including engineers, senior managers, and attorneys, were informed or

---

[11]    See Stern v. Marshall, 131 S. Ct. 2594 (2011).

[12]    See Consent Order, In re TQ14-001 NHTSA Recall No. 14V-047 (U.S. Dep't of Transp. May 16, 2014), available at http://www.nhtsa.gov/staticfiles/communications/pdf/May-16-2014-TQ14-001-Consent-Order.pdf, at 4.

[13]    See Detailed Overall Program Statistics, GM Ignition Compensation Claims Resolution Facility (June 19, 2015), available at www.GMIgnitionCompensation.com/docs.programstatistics_.pdf.

otherwise aware of the Ignition Switch Defect, all of whom were transferred to New GM.  See In re Motors Liquidation Co., 529 B.R. at 538, 557.  Following the February and March recall, New GM issued numerous recalls for other defects, including ignition switch defects in an additional 11 million vehicles.  In all, New GM recalled approximately 26 million vehicles in the first seven months of 2014.[14]

## II.    The Impact Of The Decision And Judgment On Plaintiffs' Claims.

In April and August of 2014, New GM filed the Motions to Enforce, seeking to enjoin the prosecution of the numerous actions commenced as a result of the Ignition Switch Defect and other defects found in GM-branded vehicles.  According to New GM, the Sale Order foreclosed actions based on successor liability as well as other claims seeking to hold New GM liable for economic damages based on Old GM's conduct.  See Ignition Switch Motion to Enforce at ¶¶ 28-31; Non-Ignition Switch Motion to Enforce at ¶¶ 27-32.

On April 15, 2015, the Bankruptcy Court issued the Decision.  It held that the Ignition Switch Plaintiffs were "known creditors" of the Debtor who were entitled to notice and an opportunity to be heard in connection with the Old GM bankruptcy proceedings.  It further held that while the Ignition Switch Plaintiffs failed to show that they were prejudiced by that provision of the Sale Order enjoining successor liability claims, they had shown that they were prejudiced by the failure of New GM to provide them with an opportunity to object to the breadth of the Sale Order as it applied to New GM's own conduct.  See In re Motors Liquidation Co., 529 B.R. at 524-27.  The Bankruptcy Court also held that the Ignition Switch Plaintiffs' due process rights were violated by the failure to provide them with notice of the Bar Date.  See id. at 527.

---

[14]    See Stipulations of Fact, Ex. D ¶ 77.

To remedy the overbreadth of the Sale Order, the Decision and Judgment permit the Ignition Switch Plaintiffs to pursue "claims against New GM for any causes of action that might exist arising solely out of New GM's own, independent, post-Closing acts." Id. at 598; Judgment ¶ 4 ("The Sale Order shall be deemed modified to permit the assertion of Independent Claims."). However, the Judgment provides that "[e]xcept for the modification to permit the assertion of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect." Judgment ¶ 5. The Judgment then establishes various procedures for the determination of whether claims to be asserted in the MDL action, as well as other claims are "independent" and thus permissible under the Sale Order, as it has been deemed to have been modified. See Judgment ¶¶ 8-13, 18.

On June 24, 2015, Plaintiffs filed the Omnibus Judgment Pleading. Although Paragraph 18(d) of the Judgment exempts the SAC from the stay applicable to other litigation against New GM, Plaintiffs filed the No Strike Pleading with regard to the SAC in the Omnibus Judgment Pleading out of an abundance of caution and to show that the SAC includes only claims against New GM for its own independent, post-Closing acts or conduct.

Generally, the Omnibus Judgment Pleading establishes that the claims in the SAC are "independent" claims that should not be dismissed, enjoined or stricken pursuant to the Sale Order as it is deemed to have been modified by the Decision. In addition, Plaintiffs argue that the Bankruptcy Court does not have jurisdiction to prospectively enjoin the claims asserted in the SAC because the claims are asserted against non-Debtor New GM for its own independent acts, and neither seek to recover against, nor impact, the Old GM estate or its property.

III.   **Plaintiffs' Claims Against New GM.**

On October 14, 2014, Lead Counsel filed the Pre-Sale and Post-Sale Complaints.[15]  Both

the Pre-Sale and Post-Sale Complaints included claims against New GM.   These New GM

claims fell within two categories: first, claims asserted against New GM based on it having

succeeded to the liability of Old GM on a state law theory of successor liability; and second,

claims asserted against New GM based on its own post-Sale acts and omissions relative to GM-

branded vehicles, including Old GM cars and New GM cars ("Non-Successor Claims").

On June 12, 2015, Lead Counsel filed the SAC, amending and superseding the Pre-Sale

and Post-Sale Complaints on behalf of the same group of plaintiffs and a virtually identical list of

proposed class representatives.[16]  The SAC contains only Non-Successor Claims, and does not

assert claims based on any successor liability theory.

Facts forming the common basis for many of the Non-Successor Claims include:

- New GM knew about the Ignition Switch Defect and many other safety defects in

vehicles manufactured by Old GM and New GM (collectively "GM-Branded Vehicles");

- New GM concealed its knowledge of the Ignition Switch Defect and many other

safety defects in GM-Branded Vehicles even though it had a duty to disclose these facts;

---

[15]   *See Consolidated Class Action Complaint Against New GM for Recalled Vehicles Manufactured By Old GM and Purchased Before July 11, 2009 or Later*, In re General Motors LLC Ignition Switch Litigation, No. 14-MD-2543 (JMF) (S.D.N.Y. Oct. 14, 2014) (ECF No. 347) (the "Pre-Sale Complaint"); *Consolidated Complaint Concerning All GM-Branded Vehicles that were Acquired July 11, 2009 or Later*, In re General Motors LLC Ignition Switch Litigation, No. 14-MD-2543 (JMF) (S.D.N.Y. Oct. 14, 2014) (ECF No. 345) (the "Post-Sale Complaint").

[16]   Compare Pre-Sale Compl. ¶ 341 and Post-Sale Compl. ¶¶ 27-96, with SAC ¶¶ 35-168.  Except where otherwise indicated, all references hereinafter to "¶ __" are to the paragraphs of the SAC.

- New GM acted with the intent to deceive Plaintiffs concerning the existence of the Ignition Switch Defect, other safety defects, the quality of the GM brand, and the integrity of New GM;[17]

- New GM disseminated advertisements and marketing materials that represented GM-Branded Vehicles as safe and reliable, when it was well aware that millions of GM-Branded Vehicles contained the Ignition Switch Defect and other undisclosed serious safety defects;[18]

- New GM failed to recall defective GM-Branded Vehicles promptly, even though it had a duty to do so; and

- New GM manufactured and sold vehicles with known but undisclosed defects.[19]

The SAC exclusively asserts direct liability claims against New GM as sole Defendant based entirely upon New GM's own knowledge, conduct, duty, breach of that duty, and intentional and ongoing violation of federal and state law from the date of its inception onwards. Specifically, the SAC asserts claims for:

(i)   <u>fraudulent concealment</u> arising from New GM's concealment of material facts concerning the quality of its vehicles and the GM brand, its corporate culture that devalued safety, and the many serious defects plaguing GM-Branded Vehicles, despite its superior knowledge of the true facts that it had a duty to disclose. <u>See, e.g.</u>, ¶¶ 1155-68.

(ii)   <u>violation of consumer protection statutes</u> arising from New GM's deceptive, unfair, and/or unlawful business practices, including material false representations of the quality of GM-Branded Vehicles and concealment of the Ignition Switch Defect and many other dangerous defects. <u>See, e.g.</u>, ¶¶ 1128-54.

(iii)   <u>unjust enrichment</u> arising from New GM's inequitable retention of the benefits of its conduct and avoiding the costs and negative publicity of recalls, which New GM gained through deceptive conduct. <u>See, e.g.</u>, ¶¶ 1201-10.

---

[17]   <u>See, e.g.</u>, ¶¶ 10, 15, 524-30, 1161.
[18]   <u>See, e.g.</u>, ¶¶ 171-225.
[19]   <u>See, e.g.</u>, ¶ 1252.

(iv)    breach of the implied warranty of merchantability arising from New GM's breach of its implied warranty that its vehicles were merchantable and fit for their ordinary purpose by supplying new and Certified Previously Owned vehicles with defective ignition switches. See, e.g., ¶¶ 1248-54.

(v)    violation of the Magnuson-Moss Warranty Act arising from New GM's breach of its implied warranty that its vehicles were fit for their ordinary purpose as safe passenger motor vehicles by supplying new and Certified Previously Owned vehicles with defective ignition switches. See ¶¶ 1100-16.

(vi)    negligence under the Restatement (Second) of Torts § 395 arising from New GM's breach of its duty to design and manufacture a safe product by supplying vehicles with dangerously defective ignition switches and failing to warn purchasers of the ignition switch defects in its cars. See ¶¶ 1117-27.[20]

(vii)    fraudulent concealment of the right to file a proof of claim against Old GM arising from New GM's concealment of the Ignition Switch Defect in vehicles subject to the February and March 2014 recalls. See, e.g., ¶¶ 1424-45.

(viii)    breach of the covenant to comply with the TREAD Act based on third party beneficiary principles arising from New GM's failure to "take *immediate* remedial action" despite knowledge of the Ignition Switch Defect, which breached its covenant to comply with the TREAD Act with respect to Old GM vehicles. See, e.g., ¶¶ 1277-86.

(ix)    violation of the RICO Act arising from New GM's scheme to conceal the true scope and nature of the Ignition Switch Defect and many other defects in GM-Branded Vehicles, which it executed through use of a RICO Enterprise and through use of the telephone, internet, mailings and wire communication. See ¶¶ 1015-99.

## STATEMENT OF JURISDICTION

28 U.S.C. § 1334(b) vests in the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334.

Under 28 U.S.C. § 157(a), the district court may refer actions within its bankruptcy jurisdiction to the bankruptcy courts within its district. See 28 U.S.C. § 157(a). Under the *Amended Standing Order of Reference* signed by Acting Chief Judge Loretta A. Preska, dated

---

[20]    Like the implied warranty and Magnuson Moss claims, the negligence claims are only brought on behalf of members of the Statewide Post-Sale Ignition Switch Defect Subclasses. See ¶ 1117.

January 31, 2012, actions within the District Court's bankruptcy jurisdiction are automatically referred to the Bankruptcy Court for the Southern District of New York.

28 U.S.C. § 157(d) permits a district court to withdraw cases or proceedings from the bankruptcy court "for cause shown," and mandates withdrawal of the reference when "resolution of the proceeding requires consideration of both [the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

## ARGUMENT

### I.    Legal Standard For Withdrawal Of The Reference.

The District Court has broad authority to withdraw the automatic reference to the Bankruptcy Court of any proceeding on timely motion of a party.[21]  Where a case requires "substantial and material" consideration of non-Bankruptcy Code federal statutes, withdrawal of the reference is mandatory.  In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990). Withdrawal of the reference is also appropriate when "cause" exists, as determined by weighing various factors, known as the Burger Boys or Orion Pictures factors.  See In re Burger Boys, Inc., 94 F.3d at 762; Orion Pictures Corp., 4 F.3d at 1101; ResCap Liquidating Trust v. PHH Mortg. Corp., 518 B.R. 259, 265-66 (S.D.N.Y. 2014).

As set forth below, grounds for mandatory and permissive withdrawal exist for the Omnibus Judgment Pleading.

---

[21]    Plaintiffs have timely moved to withdraw the reference by filing the Motion contemporaneously with the Omnibus Judgment Pleading. Timeliness is a fact-specific inquiry that has been interpreted to mean "as soon as possible after the moving party has notice of the grounds for withdrawing the reference." See Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff), 454 B.R. 307, 316-17 (S.D.N.Y. 2011). Further, given New GM's likely opposition to the Omnibus Judgment Pleading, the Motion is not premature. See In re Ephedra Prods. Liab. Litig., 329 B.R. 1, 5-6 (S.D.N.Y. 2005) (a matter becomes a "contested matter" even before the request is opposed if such opposition is reasonably foreseeable); In re Laventhol & Horwath, 139 B.R. 109, 113 (S.D.N.Y. 1992) (motion to withdraw the reference prior to objection by party in interest was timely given that the parties would be adversaries in near future).

## II.    <u>Withdrawal Of The Reference Is Mandatory For Certain Claims</u>.

A district court must withdraw the reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." <u>See</u> 28 U.S.C. § 157(d).

Mandatory withdrawal of the reference occurs where the resolution of the proceeding requires "substantial and material consideration" of non-bankruptcy federal law. <u>See</u> <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d at 995; <u>City of New York v. Exxon Corp.</u>, 932 F.2d 1020, 1026 (2d Cir. 1991) (observing that consideration is deemed "substantial and material" where the proceeding requires "a bankruptcy judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes").

In a seminal decision decided under the withdrawal statute, <u>In re Johns-Manville Corp.</u>, 63 B.R. 600 (S.D.N.Y. 1986), the reference was withdrawn from the bankruptcy court on a mandatory basis where resolution of the claim required consideration of the Comprehensive Environmental Response, Compensation, and Liability Act ("<u>CERCLA</u>"). <u>Id.</u> at 603. At issue was whether claims against the debtor arose before or after if filed for bankruptcy. Withdrawal was required because CERCLA was a statute "rooted in the commerce clause" and was "precisely the type of law Congress had in mind when it enacted the statutory withdrawal provision." <u>Id.</u> at 602 (internal citations and textual modification omitted). Further, the court noted that CERCLA was a complex and important statute and that neither "the language of the statute nor existing interpretive precedents provide clear answers to this substantial issue." <u>Id.</u> at 603; <u>see also</u> <u>Picard v. HSBC Bank PLC</u>, 450 B.R. 406, 409 (S.D.N.Y. 2011) (holding that withdrawal was mandatory where federal non-bankruptcy law governed the bankruptcy's trustee's standing and where a significant, novel issue existed as to whether the trustee's action was subject to Securities Litigation Uniform Standards Act ("<u>SLUSA</u>").

14

Here, the further proceedings contemplated by the Judgment and precipitated by the Omnibus Judgment Pleading require consideration of issues under the Magnuson-Moss Warranty Act and the RICO Act.

A court reviewing the claims asserted in the SAC will examine various legal issues specific to the federal and other claims at issue, including, for example, available remedies under the RICO Act, the contours of New GM's conduct in its belated effectuation of the recalls, the measurement of damages, and issues of privilege related to the claims. The interpretation of the various elements of these complex and novel federal claims under the RICO Act requires withdrawal of the reference. See Picard v. Kohn, No. 11 Civ. 1181(JSR), 2011 WL 10894857, at *4 (S.D.N.Y. Sept. 6, 2011) (withdrawing the reference because, *inter alia*, substantial interpretation of federal non-bankruptcy law was required to determine if the complaint adequately alleged the structural elements of a RICO Act claim); In re Adelphia Commc'ns Corp. Secs. & Derivative Litig., No. 03 MDL 1529(LMM), 2006 WL 337667, at *2-3 (S.D.N.Y. Feb. 10, 2006) (finding that withdrawal was mandatory because, *inter alia*, substantial and material consideration of non-bankruptcy federal law was required to determine a RICO Act claim).

In addition to the federal statutory law implicated by the SAC and Omnibus Judgment Pleading, the Non-Ignition Switch Plaintiffs' Objection Pleading raises an issue of constitutional law—whether application of the Decision and Judgment to the Non-Ignition Switch Plaintiffs in the absence of any factual record relating thereto violates due process. Proceedings that require substantial consideration of constitutional law must be withdrawn. See Picard v. Flinn Invs., LLC, 463 B.R. 280, 287 n.3 (S.D.N.Y. 2011) ("If mandatory withdrawal protects litigants' constitutional interest in having Article III courts interpret federal statutes that implicate the

regulation of interstate commerce, then it should also protect, *a fortiori*, litigants' interest in having the Article III courts interpret the Constitution.").  Thus, the Objection Pleading raises several substantial and material issues of federal non-bankruptcy law that mandate withdrawal.

### III.    The District Court Should Exercise Its Discretion To Withdraw The Reference For The Omnibus Judgment Pleading.

28 U.S.C. § 157(d) provides for withdrawal of the reference "for cause shown."  <u>See</u> 28 U.S.C. § 157(d).  Whether "cause" exists is determined by weighing various factors, including: "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors."  <u>See</u> <u>In re Burger Boys, Inc.</u>, 94 F.3d at 762; <u>see also</u> <u>Orion Pictures Corp.</u>, 4 F.3d at 1101.

Following <u>Stern v. Marshall</u>, another factor has been identified—whether the bankruptcy court has final power to adjudicate the matter, including whether the parties knowingly and voluntarily consented to have the bankruptcy court adjudicate the claim.  <u>See, e.g.</u>, <u>Wellness Int'l Network, Ltd. v. Sharif</u>, 135 S. Ct. 1932, 1944-49 (2015).

These factors weigh in favor of withdrawal of the Omnibus Judgment Pleading as set forth below.

### A.    The Bankruptcy Court Lacks Final Authority To Adjudicate The Omnibus Judgment Pleading.

Under the <u>Burger Boys</u> framework, whether a claim is "core" or "non-core" under title 28 and thus whether the bankruptcy court has final power to adjudicate the matter are often determinative of permissive withdrawal since it is generally most efficient to proceed before the

district court in the first instance if the bankruptcy court cannot issue a final determination.[22] See

Orion, 4 F.3d at 1101 (noting that when non-core claims predominate "unnecessary costs could

be avoided by a single proceeding" before the District Court); Solutia Inc. v. FMC Corp., No. 04

Civ. 2842, 2004 WL 1661115, at *3 (S.D.N.Y. July 27, 2004) ("By litigating this non-core

matter in the district court, judicial resources will be conserved instead of having two courts

administer two rounds of briefing and argument on the same issues.").

The review of the Omnibus Judgment Pleading for the purpose of determining whether

such claims are "independent" and thus may be asserted in the MDL action does not involve the

restructuring of debtor/creditor rights, has no impact on the Old GM bankruptcy estate, and is,

accordingly, a non-core matter under 28 U.S.C. § 157(c)(1).  Indeed, none of the statutorily

identified "core" proceedings under 28 U.S.C. § 157(b)(2) are present.  See 28 U.S.C. §

157(b)(2).[23]  The court will be required to determine whether the claims asserted in the SAC are

---

[22]  Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, which are referred from the District Court, and may enter appropriate orders and judgments, subject to review under section 158 of title 28.  See 28 U.S.C. § 157(b)(1).  For matters that are non-core under 28 U.S.C. § 157(b)(2), bankruptcy judges may only issue proposed findings of fact and conclusions of law to the District Court, and any final order or judgment must be entered by the District Court. See 28 U.S.C. § 157(c)(1).  Upon timely and specific objection of any party, the District Court shall review proposed findings of fact and conclusions of law de novo.  Id.; see also Fed. R. Bankr. P. 9033.  Bankruptcy judges may enter final judgment on non-core issues only where all parties have consented to final determination.  See 28 U.S.C. § 157(c)(2); see also Wellness Int'l Network, 135 S. Ct. at 1944-49 (finding that bankruptcy courts have authority to finally adjudicate claims for which litigants are constitutionally entitled to an Article III adjudication upon "knowing and voluntary" consent).

[23]  "Core proceedings include, but are not limited to – (A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purpose of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (C) counterclaims by the estate against persons filing claims against the estate; (D) orders in respect to obtaining credit; (E) orders to turn over property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property, including the use of cash collateral; (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and (P) recognition of foreign proceedings and other matters under chapter 15 of title 11."  28 U.S.C. § 157(b)(2).

based on New GM's legal obligations and duties rather than on those imposed on its predecessor, Old GM.    The "independence" evaluation raised by the Omnibus Judgment Pleading has no connection to the Bankruptcy Code or any principles of bankruptcy jurisprudence.    See Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc. (In re Residential Cap. LLC), 519 B.R. 593, 601 (S.D.N.Y. 2000) (matter non-core where it did not rely on bankruptcy law). Moreover, since the Decision held that Ignition Switch Plaintiffs cannot share in the GUC Trust, there is no sense in which the "independence" involves the administration of the estate.    See 28 U.S.C. § 157(b)(2) (including matters concerning the administration of an estate as "core".)

That the Bankruptcy Court frames the independence inquiry as connected to the overbreadth of the Sale Order fails to transform this evaluation into a core matter.    For example, in Residential Capital, plaintiff argued that a breach of contract action relating to an indemnification provision was a core matter because the dispute required reference to a bankruptcy court order approving a settlement agreement under which the indemnification obligation was incurred.    See In re Residential Cap. LLC, 519 B.R. at 601.    Judge Castel rejected that argument, noting that the bankruptcy court's retention of jurisdiction to interpret and enforce its own orders is irrelevant to the core/non-core determination.    See id.    Rather, because the adversary proceeding did not depend on bankruptcy law for its existence, it was non-core.    See id. at 600-02.

Similarly, the Plaintiffs' claims in the SAC do not depend on bankruptcy law for their existence.    Reference to the Sale Order, Decision or Judgment does not change the non-core nature of the determination the Plaintiffs ask the District Court to make:  that the claims asserted in the SAC are "independent," beyond the jurisdictional authority of the Bankruptcy Court, and thus not subject to dismissal or injunction by the Bankruptcy Court.    Plaintiffs' claims against

New GM neither rely on bankruptcy law nor relate to Old GM's bankruptcy estate—they are claims against a non-debtor based on its own conduct.

Further, because non-core issues predominate the proceedings involving the Omnibus Judgment Pleading, withdrawal of the related issues subject to the GUC Trust Asset Pleading is appropriate. See Weisfelner v. Blavatnik (In re Lyondell Chemical Co.), 467 B.R. 712, 722-23 (S.D.N.Y. 2012) (finding that the threshold Orion factor favored withdrawal when non-core claims predominated the proceeding).

Accordingly, the threshold Orion factor favors withdrawal of the Omnibus Judgment Pleading.

### B.    Withdrawal Of The Omnibus Judgment Pleading Promotes The Efficient Use Of Judicial Resources And Minimizes Cost And Delay.

Good cause to withdraw the reference exists when it leads to the efficient use of judicial resources. See Grant Thornton Int'l v. Parmalat Finanziaria S.p.A. (In re Parmalat Finanziaria S.p.A.), 320 B.R. 46, 50 (S.D.N.Y. 2005) (holding that the "higher interest . . . of judicial efficiency" justified withdrawal of core proceeding under predecessor statute to Chapter 15). Issues of efficiency strongly favor withdrawal where, as here, the proceeding to is concurrent with an existing district court proceeding with which it shares common issues of fact or law with actions pending in the District Court. See Wedtech Corp. v. London (In re Wedtech Corp.), 81 B.R. 237, 239 (S.D.N.Y. 1987) (finding "good cause" to withdraw in the interests of fairness and judicial economy based on the "overlapping of facts, transactions, and issues" with on-going District Court actions).

For example, in In re Pan Am Corp., an adversary proceeding before the Bankruptcy Court arose from the same factual context as two related actions before the District Court. See Pan Am. Corp. v. Delta Air Lines, Inc. (In re Pan Am. Corp.), 163 B.R. 41, 42-44 (S.D.N.Y.

1993).  The adversary proceeding sought, *inter alia*, damages for Delta's bad faith refusal to participate in Pan Am's reorganization, while the related District Court actions sought wages that certain employees allegedly would have received from the reorganized Pan Am.  See id. at 42. Withdrawal would allow the three cases to be consolidated and the overlapping issues to be heard and decided in one forum.  See id. at 44.  Thus, the court held that "the higher interest . . . of promoting judicial efficiency" justified withdrawal even though the proceeding involved core claims.  See id.

Here, withdrawal of the reference of the Omnibus Judgment Pleading is particularly appropriate because of the overlapping factual and legal issues present in the MDL action.  See ResCap Liquidating Trust, 518 B.R. at 266-67.  The District Court is responsible for determining the legal sufficiency of the claims asserted in the SAC.  While the Bankruptcy Court attempts to split the determination regarding the "independence" of a claim from a determination of its legal sufficiency, as a practical matter, this distinction fails.  Both determinations require an inquiry into the asserted factual and legal basis of liability and accordingly, the elements of the claims and whether a factual basis for the assertion of those claims against New GM has been alleged. Withdrawal will ensure judicial economy and prevent delay by having these issues determined in a single proceeding before the District Court.[24]  See ResCap Liquidating Trust, 518 B.R. at 265-66 (finding that withdrawal of the reference was warranted to, *inter alia*, prevent duplicative work); Parmalat Finanziaria, 320 B.R. at 50 (withdrawing the reference because, *inter alia*, permitting the bankruptcy court to decide certain issues in the first instance would be inefficient and counterproductive to the goals of the multi-district litigation).

---

[24]   Moreover, other plaintiffs have filed pleadings related to the Judgment and seek withdrawal.  As previously noted, the State of Arizona and the People of the State of California have already moved to withdraw the reference of their No Strike Pleadings.  See supra note 10.  Judicial economy would be well-served by withdrawal so that the similar issues raised in these pleadings may all be resolved by the District Court.

The District Court has presided over the MDL Proceeding for over a year, gaining a familiarity with the facts and Plaintiffs' claims that renders it uniquely qualified to rule on which claims may proceed in light of the Decision and Judgment. The District Court has, among other things, held many conferences with the parties regarding case management and pre-trial matters, ordered the production of documents by New GM, and instituted protocols governing discovery.[25] This familiarity supports withdrawal because it reduces costs and delay. See In re G.M. Crocetti, Inc., No. 08 Civ. 6239(DLC), 2008 WL 4601278, at *6 (S.D.N.Y. Oct. 17, 2008) (finding that when related District Court action was "proceeding apace; there [was] no undue delay and therefore no prejudice to [debtor] from the withdrawal"); Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.), 185 B.R. 680, 686 (S.D.N.Y. 1995) (finding that "the resources of the [parties] will not be further taxed" by withdrawal because, *inter alia*, the District Court was "familiar with the facts of this case [and had] had the parties before it several times").

This is particularly relevant for the Non-Ignition Switch Plaintiffs' claims in the SAC. To the extent necessary for an "independence" evaluation of these claims, proceeding in the forum where discovery has already begun will promote efficiency and save costs. See ResCap Liquidating Trust, 518 B.R. at 267 (withdrawal appropriate when discovery will be coordinated in the District Court with other pending actions); In re Adelphia Commc'ns, 2006 WL 337667, at *5 ("[T]here will be great savings to the parties who are defendants both in the [the adversary proceeding] and in the multidistrict litigation if discovery can be consolidated in one court rather than having to proceed with duplicative discovery on two independent tracks.").

Finally, there are no countervailing efficiency considerations militating in favor of denying withdrawal. Given that Judge Gerber has retired and is on recall status, it is unclear how

---

[25]    See, e.g., MDL Order Nos. 7 [ECF No. 215]; 12 [ECF No. 296]; 14 [ECF No. 312]; 20 [ECF No. 383]; 31 [ECF No. 526]; 32 [ECF No. 529]; 36 [ECF No. 604]; 52 [ECF No. 926].

much longer he will be available to preside over the proceedings in the Bankruptcy Court.

Further, the Bankruptcy Court's experience regarding Old GM's bankruptcy proceedings and

bankruptcy law is irrelevant to the determination of whether the Plaintiffs assert "Independent

Claims" in the SAC. See ResCap Liquidating Trust v. Primary Cap. Advisors, LLC (In re

Residential Cap., LLC), 527 B.R. 865, 872 (S.D.N.Y. 2014) (withdrawing non-core claim

because, *inter alia*, the bankruptcy judge had no expertise in state law and resolution of the claim

would not draw upon his "unparalleled depth of familiarity with the underlying bankruptcy

case").

Accordingly, the second Orion factor favors withdrawal of the Omnibus Judgment

Pleading.

### C.    Withdrawal Does Not Interfere With The Uniform Administration Of Bankruptcy Law.

Courts also consider whether withdrawal of the reference will undermine the uniform

administration of bankruptcy law. See Orion Pictures, 4 F.3d at 1101. This factor weighs in

favor of withdrawal when the proceeding concerns legal issues that are more commonly resolved

in district courts. See Complete Mgmt., Inc. v. Arthur Andersen, LLP (In re Complete Mgmt.,

Inc.), No. 02 Civ. 1736, 2002 WL 31163878, at *3 n.5 (S.D.N.Y. Sept. 27, 2002) (withdrawal of

core matters warranted because, *inter alia*, the district court had familiarity with related

securities litigation and the proceeding required determination of "legal issues more commonly

resolved by [the district] court than the bankruptcy courts"); ResCap Liquidating Trust, 518 B.R.

at 266-67 (withdrawing the reference because, *inter alia*, the district court had more familiarity

with claims governed by state law and the claims did not involve "complicated questions of

bankruptcy law").

By contrast, when the proceeding implicates complex and novel questions of bankruptcy law that are better decided by a bankruptcy court in the first instance, courts are less inclined to withdraw the reference. See Walker, Truesdell, Roth & Assoc. v. Blackstone Group, L.P. (In re Extended Stay, Inc.), 466 B.R. 188, 207 (S.D.N.Y. 2011) (denying withdrawal of the reference because, *inter alia*, "[a]llowing the bankruptcy courts to consider complex questions of bankruptcy law [such as questions related to § 546(e)] . . . promotes a more uniform application of bankruptcy law").

The District Court has the benefit of Judge Gerber's interpretation of the Sale Order in the Decision and the Judgment. The Omnibus Judgment Pleading requires a determination of whether the SAC raises claims for New GM's own independent, post-Closing acts or conduct and whether the Bankruptcy Court has jurisdiction to prospectively enjoin such "independent" claims. Thus, the Omnibus Judgment Pleading requires evaluation of federal non-bankruptcy and state law claims in the SAC, not complex issues of bankruptcy law. This favors withdrawal. See ResCap Liquidating Trust, 518 B.R. at 266-67 (withdrawing the reference because, *inter alia*, the district court had more familiarity with claims governed by state law and the claims did not involve "complicated questions of bankruptcy law").

Moreover, resolution of the Omnibus Judgment Pleading by the Bankruptcy Court is not necessary to ensure the uniform, expedited administration of Old GM's bankruptcy estate. Old GM's Chapter 11 Plan was confirmed over four years ago and has been substantially consummated. See In re Motors Liquidation Co., 529 B.R. at 536. Therefore, withdrawal of the Omnibus Judgment Pleading will not interfere with the bankruptcy process or uniformity in the administration of Old GM's estate. See Mirant Corp. v. The S. Co., 337 B.R. 107, 122 (N.D. Tex. 2006) (expediting the bankruptcy process not a relevant factor on a motion to withdraw the

reference where bankruptcy judge had already confirmed the plan of reorganization).  Further, resolution of the Omnibus Judgment Pleading is not integral to the restructuring of debtor/creditor rights because the claims in the SAC are based solely on New GM's own, independent, post-Closing acts or conduct and neither seek to recover against, nor have any impact on, the Old GM bankruptcy estate.  Cf. In re Oakwood Homes, Corp., Civ. A. No. 06-436-JJF, 2007 WL 2071730, at *2 (D. Del. July 17, 2007) (finding that uniformity in bankruptcy administration supports hearing core proceedings "integral to the restructuring of debtor-creditor rights" in the Bankruptcy Court); see Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, 462 B.R. 457, 473 (S.D.N.Y. 2011) (withdrawal of claims under state law, the resolution of which will not deplete the bankruptcy estate, "ha[s] no impact that would require uniform, coordinated adjudication before the Bankruptcy Court").  That the Reservation of Rights / GUC Trust Asset Pleading seeking to reserve the Non-Ignition Switch Plaintiffs' right to, at a future date, file and seek allowance of late claims, seek a recovery on such claims from the assets of the GUC Trust, and litigate issues (i) through (iii) identified in paragraph 13(a) of the Judgment does not change this evaluation given it raises due process considerations and resolution of the Reservation of Rights / GUC Trust Asset Pleading by the District Court is supported by principles of judicial economy and uniformity as set forth herein.

Accordingly, withdrawal of the Omnibus Judgment Pleading is appropriate under this Orion factor.

### D.    **Plaintiffs Are Not Forum Shopping.**

In determining whether withdrawal is appropriate, courts seek to prevent forum shopping by considering whether withdrawal is sought for legitimate reasons, such as promoting efficiency, or rather sought to obtain an undue advantage.  See In re Residential Cap., LLC, 519 B.R. at 605-06.  Forum shopping is usually not a concern when withdrawal allows the

proceeding to be heard in the most efficient forum.  See Pan Am, 163 B.R. at 44 (finding no forum shopping when party sought to have disputes arising from the same factual context adjudicated in one forum); Adelphia Commc'ns, 2006 WL 337667, at *5 ("[T]he usual objectives of 'forum-shopping'—finding a jurisdiction with more favorable law, and geographical convenience—do not apply, both the bankruptcy court and the district court being bound to follow Second Circuit law, and both courts being located in downtown Manhattan.").

There are no forum shopping concerns in seeking to withdraw the Omnibus Judgment Pleading.  The Bankruptcy Court has already interpreted its Sale Order and the Plaintiffs are now merely seeking the most efficient forum for the advancement of their claims against New GM.

Moreover, a motion to withdraw the reference for a non-core proceeding is—by definition—not forum shopping because the movant is seeking to reduce time and expense by requesting that the District Court as the court that must finally adjudicate the proceeding, hear and determine the dispute in the first instance.  See Dev. Specialists, 462 B.R. at 473 ("[I]nsofar as the [Movants] are entitled to have their dispute . . . finally determined in this Court, the Court does not condone forum shopping by allowing them to come here sooner rather than later."); Waldron v. Nat. Union Fire Ins. Co. of Pittsburgh (In re EbaseOne Corp.), Case No. 01-31527-H4-7, Adv. No. 06-3197, 2006 WL 2405732, at *4 (Bankr. S.D. Tex. June 14, 2006) (finding that moving to withdraw the reference does not constitute forum shopping when it is "nothing more than a reasonable effort to have a non-core proceeding litigated with a minimum of time and expense" by the court empowered "to adjudicate the dispute once and for all").

Accordingly, this Orion factor favors withdrawal.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Plaintiffs respectfully request that the

District Court enter an Order withdrawing the reference for the Omnibus Judgment Pleading and

granting such other and further relief and is just and proper.

Dated:  New York, New York
          June 24, 2015

Respectfully submitted,

 /s/ Edward S. Weisfelner
Edward S. Weisfelner
David J. Molton
May Orenstein
Howard S. Steel
BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Tel: 212-209-4800
eweisfelner@brownrudnick.com
dmolton@brownrudnick.com
morenstein@brownrudnick.com
hsteel@brownrudnick.com

-and-

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA, A PROFESSIONAL
CORPORATION
2323 Bryan Street, Ste 2200
Dallas, Texas 75201
Tel: 214-969-4900
esserman@sbep-law.com

*Designated Counsel for the Ignition Switch
Plaintiffs & Certain Non-Ignition Switch
Plaintiffs, Represented in the MDL Proceeding
by Co-Lead Counsel:*

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

-and-

555 Fifth Avenue, Suite 1700
New York, New York 10017

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111

-and-

250 Hudson Street, 8th Floor
New York, New York 10013

Robert C. Hilliard
HILLIARD MUÑOZ GONZALES LLP
719 S. Shoreline Boulevard, Suite 500
Corpus Christi, Texas 78401