**HEARING DATE AND TIME: July 1, 2015 at 9:45 a.m. (Eastern Time)**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
Matthew J. Williams
Lisa H. Rubin
Keith R. Martorana

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                  :

**In re**                                 :          **Chapter 11 Case No.**
                                  :

**MOTORS LIQUIDATION COMPANY, *et al.*,** :          **09-50026 (REG)**
**f/k/a General Motors Corp., *et al.***       :

                                  :          **(Jointly Administered)**
                 **Debtors.**         :

                                  :
------------------------------------------------------------------x

**OMNIBUS REPLY OF WILMINGTON TRUST COMPANY, AS GUC TRUST
ADMINISTRATOR AND TRUSTEE, TO RESPONSES RECEIVED
IN RESPECT OF THE GUC TRUST ADMINISTRATOR'S MOTION FOR AN
ORDER GRANTING AUTHORITY (A) TO EXERCISE NEW GM WARRANTS
AND LIQUIDATE NEW GM COMMON STOCK AND (B) TO MAKE
<u>CORRESPONDING AMENDMENTS TO THE GUC TRUST AGREEMENT</u>**

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................ 1

OMNIBUS REPLY .......................................................................................................... 3

    I.    Framework for Analysis ................................................................................ 3

    II.   To the Extent That the Responses Seek Affirmative Relief Under
        Bankruptcy Rule 8007 or Sections 1127(b) or 1144 of the Bankruptcy
        Code, Requests for Such Relief Are Not Properly Before the Court.................. 4

    III.  The Relief Sought in the Responses Constitutes an Impermissible
        Request to Modify the Plan.................................................................................... 5

    IV.  The Relief Sought in the Responses Constitutes Impermissible Requests to
        Revoke the Confirmation Order…………………………………………………7

    V.   Even If a Request for a Stay of Distributions Pending Appeal Was
        Properly Before the Court, the Request Would Lack Merit. ............................... 9

     (i)   Plaintiffs Would Not Suffer Irreparable Injury If a Stay Was Denied…………10
     (ii)  Plaintiffs Face a Low Probability of Success on the Merits of their Appeal…...13
     (iii) Staying Distributions of GUC Trust Assets will Substantially Prejudice GUC
          Trust Beneficiaries………………………………………………………………..16
     (iv) Public Interest Concerns Militate Against a Stay Pending Appeal……………..18
     (v)  If a Stay is Granted, the Posting of a Substantial Bond Should be Required…...19

CONCLUSION................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*De la Fuente v. DCI Telecomm., Inc.*,
   269 F. Supp. 2d 237 (S.D.N.Y. 2003) ............................................................................21

*Hayes v. City of New York*,
   503 F.Supp. 946, 963 (S.D.N.Y. 1980),
   *aff'd*, 648 F.2d 110 (2d Cir. 1981) ...............................................................................15

*In re 473 W. End Realty Corp.*,
   14-cv-2321, 2014 WL 2213082 (S.D.N.Y. May 12, 2014)............................................13

*In re Adelphia Commc'ns Corp.*,
   333 B.R. 649 (S.D.N.Y. 2005) ......................................................................................15

*In re Adelphia Commc'ns Corp.*,
   361 B.R. 337 (S.D.N.Y. 2007) ..................................................................................13, 22

*In re Advanced Mining Sys., Inc.*,
   173 B.R. 467 (S.D.N.Y. 1994) ......................................................................................18

*In re Baker*,
   No. 1-01-24227(DEM), 2005 WL 2105802 (E.D.N.Y. Aug. 31, 2005) ........................20

*In re BGI, Inc.*,
   2012 WL 5392208 (Bankr. S.D.N.Y., Nov. 2, 2012)...........................3, 6, 8, 10, 15, 18

*In re BGI, Inc.*,
   504 B.R. 754 (S.D.N.Y. 2014) ..................................................................................11, 13

*In re BGI, Inc.*,
   772 F.3d 102 (2d Cir. 2014) ......................................................................................13, 16

*In re Boylan Int'l, Ltd.*,
   452 B.R. 43 (Bankr. S.D.N.Y. 2011) ...............................................................................6

*In re Calpine Corp.*,
   No. 05-60200 (BRL), 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008)...............11, 19

*In re Charter Commc'ns*,
   691 F.3d 482 (2d Cir. 2012) ......................................................................................13, 16

*In re Chemtura Corp.*,
   2010 WL 4638898 (Bankr. S.D.N.Y., Nov. 8, 2010)........................................10, 18, 20

*In re City of Bridgeport*,
   132 B.R. 81 (Bankr. D. Conn. 1991)...............................................................................11

*In re Doral Ctr., Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.)*,
208 B.R. 812 (S.D.N.Y. 1997) ................................................................................7

*In re Gen. Motors LLC Ignition Switch Litig.*,
14-md-2543 (S.D.N.Y. Jun. 12, 2015) ..................................................................14

*In re General Motors Corp.*,
409 B.R. 24 (Bankr. S.D.N.Y., 2009) ..............................................................10, 15

*In re Motors Liquidation Co.*,
529 B.R. 510 (Bankr. S.D.N.Y. 2015) .....................................................7, 12, 16, 17

*In re New York Skyline, Inc.*,
No. 09-10181 (SMB), 2013 WL 5487938 (Bankr. S.D.N.Y. Oct. 2, 2013) ............11, 15

*In re Northfield Labs. Inc.*,
467 B.R. 582 (Bankr. D. Del. 2010).....................................................................6, 8

*In re Perry H. Koplik & Sons, Inc.*,
No. 02-B-40648 REG, 2007 WL 781905 (Bankr. S.D.N.Y. Mar. 13, 2007)................11

*In re Planet Hollywood Int'l*,
274 B.R. 391 (Bankr. D. Del. 2001).........................................................................6

*In re Pulp Finish 1 Co.*,
No. 12-13774 (SMB), 2014 WL 201482 (Bankr. S.D.N.Y. Jan. 16, 2014)...................17

*In re St. Johnsbury Trucking Co., Inc.*,
185 B.R. 687 (S.D.N.Y. 1995) ..............................................................................19

*In re Tribune Co.*,
477 B.R. 465 (Bankr. D. Del. 2012).......................................................................22

*S.E.C. v. Daspin*,
No. 13-4622, 2014 WL 443645 (2d Cir. Feb. 5, 2014)..............................................13

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir. 1989) ................................................................................11

**Statutes**

11 U.S.C. § 1127(b) ...........................................................................................5, 7

11 U.S.C. § 1144.................................................................................................5, 8

**Rules**

Fed. R. Bankr. P. 8007(a) .......................................................................................5

Local Bankruptcy Rule 9006-1 .................................................................................2

TO:     THE HONORABLE ROBERT E. GERBER
        UNITED STATES BANKRUPTCY JUDGE

Wilmington Trust Company, not in its individual capacity and solely in its capacity as

trust administrator and trustee (the "**GUC Trust Administrator**") of the Motors Liquidation

Company GUC Trust (the "**GUC Trust**"), hereby files this omnibus reply to (i) Dr. Atul

Shah's ("**Dr. Shah**") Response and Objection [Docket No. 13244] (the "**Shah Response**") to

the motion of the GUC Trust Administrator seeking authority to exercise the GUC Trust's

holdings of New GM Warrants, liquidate the GUC Trust's holdings of New GM Common

Stock, and make corresponding amendments to the GUC Trust Agreement (the "**Motion**")[1]

[Docket No. 13186], (ii) the Ignition Switch Plaintiffs' and Certain Non-Ignition Switch

Plaintiffs' (the "**Economic Loss Plaintiffs**") Request for a Stay of Distributions of GUC

Trust Assets and Response to the Motion [Docket No. 13246] (the "**Economic Loss

Plaintiffs' Response**"), and (iii) Joinder of Ignition Switch Pre-Closing Accident Plaintiffs

(the "**Ignition Switch Pre-Closing Accident Plaintiffs**," and together with the Economic

Loss Plaintiffs, the "**Plaintiffs**") to the Economic Loss Plaintiffs' Response [Docket No.

13248] (the "**Pre-Closing Accident Plaintiffs' Response**," and together with the Shah

Response, and the Economic Loss Plaintiffs' Response, the "**Responses**").[2]   In support

thereof, the GUC Trust Administrator respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      Only three Responses were filed to the Motion.  But **_none_** of the respondents

objects to the actual relief sought—the conversion of the New GM Securities to cash—or the

efficacy thereof.  In fact, the only "objection" lodged by the Economic Loss Plaintiffs is to

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion.

[2] In addition, counsel for the GUC Trust received a phone call from Maggie Raby, a holder of an allowed general unsecured claim (approximate claim amount of $5,700), with respect to the Motion.   While Ms. Raby's call was triggered by her receipt of a service copy of the Motion, counsel understands Ms. Raby's concerns relate to the amount of her individual claim (and her belief that the claim should have been classified as secured), and not to the specific relief requested in the Motion.  Ms. Raby was advised to seek advice from an attorney, and personnel from Wilmington Trust Company have reached out to Ms. Raby to further understand and discuss her individual claim-related issues.

1

the GUC Trust's stated intention of making future interim distributions.  *Compare* Mot. ¶ 1 *with* Economic Loss Pl. Response ¶ 1.  ***But the GUC Trust is not asking this Court for authority to make distributions.***  The GUC Trust is already fully authorized—and is in fact required—by the Plan and GUC Trust Agreement to make interim distributions.  *See* Plan § 6.2(*l*); GUC Trust Agreement § 5.4.

2.      Given that none of the Responses challenges the GUC Trust's actual request for relief, the GUC Trust Administrator respectfully submits that the Responses should be disregarded and the Motion should be granted for that reason alone.

3.      Further, the Responses to the Motion are not "responses" at all.  Rather, they are procedurally improper motions to modify the Plan pursuant to Section 1127 of the Bankruptcy Code, revoke the Confirmation Order pursuant to Section 1144 of the Bankruptcy Code, and/or, in Plaintiffs' case, obtain a potentially indefinite stay of distributions pursuant to Bankruptcy Rule 8007 pending (a) the Ignition Switch Plaintiffs' appeal of this Court's equitable mootness holding in the *Decision on Motion to Enforce Sale Order* [Docket No. 13109] (the "**Decision**") *and* (b) "the determination of the Non-Ignition Switch Plaintiffs' rights to access GUC Trust Assets," which they concede will *not* be resolved by the appeal.  *See* Economic Loss Pl. Response ¶ 1 & n.4.  No matter how these requests are labeled or characterized, motions under any of those Bankruptcy Code sections or rules must be filed on at least *two weeks*' notice—and not, as is the case here, with *two days* for the GUC Trust to reply.  *See* Local Bankruptcy Rule 9006-1.

4.      More significantly, even if the requests for affirmative injunctive relief were procedurally proper (and they certainly are not), none of the respondents satisfies the standards for such relief.  Specifically, each of the respondents:

- Lacks standing to modify the Plan, and in any event, is too late as the Plan has been substantially consummated;

- Failed to seek revocation of the Confirmation Order within 180 days of its entry, which occurred more than *four years* ago; and

- Falls short of satisfying the four-factor test for a stay pending appeal, especially since the Economic Loss Plaintiffs (i) strategically avoided seeking relief against the GUC Trust for more than fourteen months, and still have not sought any such relief, (ii) acknowledge at least two other potential sources of assets (other than existing GUC Trust Assets) that would be available to satisfy any late-filed claims if they were ultimately permitted and allowed, and (iii) unfairly minimize the long-settled investment expectations—and potential lost investment opportunity costs—of GUC Trust beneficiaries.[3]

## OMNIBUS REPLY

### I.    Framework for Analysis

5.    Plaintiffs and Dr. Shah have each filed "objections," "responses" or "requests," to or in connection with the GUC Trust's Motion.  But, as noted above, they have not specifically objected to any relief requested by the GUC Trust.  As such, the Responses must be characterized as motions for affirmative relief, and a legal framework must be established to address these requests.

6.    *In re BGI, Inc.*, 2012 WL 5392208 (Bankr. S.D.N.Y., Nov. 2, 2012), is instructive.  In *BGI*, holders of gift cards of the former Borders Group, whose claims had been disallowed as late-filed, sought a stay of interim distributions from the BGI liquidating trust.  The gift card holders filed (i) an objection to a motion of the BGI liquidating trust for authority to make an interim distribution, and (ii) a motion for a stay pending appeal of the order disallowing their late-filed claims.  *Id.* at *1.  In analyzing the pleadings filed by the gift card holders, the *BGI* court ruled that any request for relief seeking a stay of distributions of a liquidating trust—whether styled as an objection or motion—constitutes a collateral attack on

---

[3]    Similar problems are evident in Dr. Shah's Response.  Rather than object to the authorization to convert New GM Securities to cash (the only relief being sought by the GUC Trust Administrator), Dr. Shah objects to the division of assets under the Plan, and seeks to impose his own distribution scheme on the estates and all creditors.  Like Plaintiffs, Dr. Shah's request is both procedurally improper and wholly irrelevant to the Motion before the Court.

3

the plan that must be analyzed under the standards of Bankruptcy Code Sections 1127(b) (plan modification) and 1144 (revocation of confirmation order). *Id.* at *3-4. For the sake of completeness, the *BGI* court also analyzed the gift card holders' pleadings under the stay pending appeal standards of Bankruptcy Rule 8005 (the predecessor to Bankruptcy Rule 8007). *Id.* at *5-6.

7.    Because Plaintiffs here similarly style their request for relief as both (i) a response to the Motion, and (ii) a request for a stay pending appeal, the legal framework set forth in *BGI* is eminently appropriate to guide this Court's analysis of the Economic Loss Plaintiffs' Response. In addition, while Dr. Shah does not seek a stay of distributions, his request to modify the distribution scheme also should be analyzed under Sections 1127(b) and 1144 of the Bankruptcy Code.

## II.    To the Extent That the Responses Seek Affirmative Relief Under Bankruptcy Rule 8007 or Sections 1127(b) or 1144 of the Bankruptcy Code, Requests for Such Relief Are Not Properly Before the Court

8.    While the Responses request relief more appropriately addressed as requests to modify the Plan or revoke the Confirmation Order as further discussed below, Plaintiffs unsurprisingly (given the inflexible standards governing Plan modification and revocation of the Confirmation Order) characterize their plea as a "request for a stay" pursuant to Bankruptcy Rule 8007. Regardless of Plaintiffs' efforts to circumvent the high bar for relief set forth in Sections 1127(b) and 1144 of the Bankruptcy Code through invocation of Bankruptcy Rule 8007, their request, like Dr. Shah's Response, is wholly undermined by their failure to satisfy the procedural and substantive requirements for any of these three avenues of relief.

9.    Specifically, Plaintiffs and Dr. Shah have failed to meet even the facial procedural requirements of the three relevant provisions. In pertinent part, Bankruptcy Rule 8007 states that "a party must *move* first in the bankruptcy court for the following relief . . .

(C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." Fed. R. Bankr. P. 8007(a) (emphasis added). Similarly, Sections 1127(b) and 1144 provide for modification of a confirmed plan and revocation of an order of confirmation, respectively, "after notice and a hearing . . . ." 11 U.S.C. §§ 1127(b); 1144.

10.    Local Bankruptcy Rule 9006-1(b) states that "[e]xcept as otherwise ordered by the Court, or required by the Bankruptcy Rules, all other motion papers shall be served at least fourteen (14) days before the return date." Because Bankruptcy Rule 8007 requires a motion, but does not specify the appropriate notice period, Local Bankruptcy Rule 9006-1 governs, and Plaintiffs' "request for a stay" can be heard no earlier than fourteen days following the filing of the Economic Loss Plaintiffs' Response. Similarly, because no rule sets forth a different notice requirement, Plaintiffs' and Dr. Shah's affirmative requests for relief under Sections 1127(b) and 1144 are subject to the same fourteen-day notice period.

11.    All of the respondents, however, have sought relief through "responses" that grant the GUC Trust less than two to three days to respond. Because they have failed to comply with the Bankruptcy Rules and the Local Bankruptcy Rules, these requests for affirmative relief, however construed, should be denied.

## III.    **The Relief Sought in the Responses Constitutes an Impermissible Request to Modify the Plan**

12.    Even if Plaintiffs had filed a procedurally proper request to modify the Plan, such a request would fail on substantive grounds because the Plan has already been substantially consummated and, in any event, Plaintiffs lack standing to seek a Plan modification.

13.    Pursuant to the Plan and the GUC Trust Agreement, the GUC Trust is not only authorized, it is *required* to make quarterly distributions to GUC Trust Unitholders to the extent that assets of the GUC Trust are available for distribution and exceed certain thresholds. *See* Plan § 6.2(*l*); GUC Trust Agreement § 5.4.

5

14.     Any attempt to enjoin a liquidating trustee from making a distribution to creditors as required by a plan and liquidating trust agreement constitutes a proposed plan modification that is governed by Section 1127(b) of the Bankruptcy Code. *See BGI*, 2012 WL 5392208 at *3. *See also In re Northfield Labs. Inc.*, 467 B.R. 582, 588 (Bankr. D. Del. 2010) (recharacterizing and rejecting a suit for equitable subordination under Section 510 of the Bankruptcy Code as an attempted circumvention of Sections 1127(b) and/or 1144); *In re Planet Hollywood Int'l*, 274 B.R. 391, 398 (Bankr. D. Del. 2001) (construing and rejecting a motion to compel distributions, where plan provided for a stay of such distributions, as a motion to modify the plan pursuant to Bankruptcy Code Section 1127(b)).   Because Plaintiffs' Responses seek to preclude the GUC Trust from making distributions required under the Plan, they must be evaluated under Section 1127(b) of the Bankruptcy Code.

15.     Similarly, Dr. Shah's attempt to modify the distribution scheme in order to re-divide the pie constitutes a request for Plan modification as contemplated by section 1127(b) of the Bankruptcy Code.  While not defined by the Bankruptcy Code, at least one court in this district has held that a "modification" under section 1127(b) occurs where there is "an alteration of 'the legal relationships among the debtor and its creditors and other parties in interest' or when the change to the plan affect[s] the legal relationships among them." *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011) quoting *In re Doral Ctr., Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.)*, 208 B.R. 812, 816 (S.D.N.Y. 1997). Given that the distribution scheme suggested by Dr. Shah would fundamentally alter the legal relationships among creditors, it too would constitute a "plan modification" under section 1127(b) of the Bankruptcy Code.

16.     Section 1127(b) of the Bankruptcy Code provides, in pertinent part, that:

> The *proponent* of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and *before substantial consummation* of such plan…

6

11 U.S.C. § 1127(b) (emphasis added).

17.    It is undisputed that neither Plaintiffs nor Dr. Shah were proponents of the Plan. This Court also has previously ruled—and the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs have also stipulated—that the Plan has been substantially consummated. *See, e.g.*, *In re Motors Liquidation Co.*, 529 B.R. 510, 536, (Bankr. S.D.N.Y. 2015). Accordingly, the Plan cannot be modified under Section 1127(b)— and even if it could, neither Plaintiffs nor Dr. Shah would have standing to do so.[4]

**IV.    The Relief Sought in the Responses Constitutes Impermissible Requests to Revoke the Confirmation Order**

18.    Even if Plaintiffs had filed a motion to revoke the Confirmation Order that complied with the 14-day notice required under Local Bankruptcy Rule 9006-1, such a request would be time-barred under Section 1144 of the Bankruptcy Code.

19.    Requests for affirmative relief that impact a chapter 11 plan must be carefully analyzed to ensure that the relief requested, even if characterized as independent actions, are not actually attempts to revoke the confirmation order. *See BGI*, 2012 WL 5392208 at *4 ("A court must look carefully at the facts and the requested relief to determine whether a party is attempting to revoke a confirmation order, focusing particularly on whether the relief sought would upset the confirmed plan, negatively affect innocent parties and creditors, and attempt to 'redivide the pie.'"). If a court determines that the requested relief is, in effect, a disguised attempt to revoke the confirmation order, the court must analyze the motion under the framework of Section 1144 of the Bankruptcy Code. *See, e.g.*, *id.* at *3 (holding that collateral attack on a confirmed plan necessitates analysis under Section 1144); *In re*

---

[4] As described in the Motion, the GUC Trust's request to convert the New GM Warrants and liquidate the New GM Securities does not constitute a modification to the Plan as contemplated by Section 1127(b) of the Bankruptcy Code. The distribution of "proceeds" of New GM Securities was expressly contemplated by the Plan, as were certain modifications to the GUC Trust Agreement with the approval of the GUC Trust Administrator and GUC Trust Monitor. *See* Motion ¶¶ 28-33. Moreover, even if the liquidation of the New GM Securities was not permitted by the Plan, the relief requested in the Motion would constitute merely a "minor change" to the Plan that does rise to the level of a "plan modification" as contemplated by Section 1127(b) of the Bankruptcy Code. *Id.* ¶¶ 34-41.

7

*Northfield*, 467 B.R. at 588 (same).

20.    Section 1144 of the Bankruptcy Code provides, in pertinent part, that:

On request of a party in interest *at any time before 180 days after the date of the entry of the order of confirmation*, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.

11 U.S.C. § 1144 (emphasis added).

21.    In *BGI*, the bankruptcy court considered whether the Borders gift card holders' motion to stay interim distributions of the liquidating trust (and their related objection to the liquidating trust's motion to make interim distributions) was a disguised collateral attack on the plan, requiring analysis under Section 1144 of the Bankruptcy Code.  *See BGI*, 2012 WL 5392208 at *4.  In finding that the gift card holders' motion and objection were effectively "an action to revoke the confirmed chapter 11 Plan," the *BGI* court held that:

Although the Gift-Card Claimants have not filed a motion specifically requesting this Court revoke the Confirmation Order, granting the Motion to Stay the Interim Distributions provided for in the Plan would do just that.  Granting the requested relief would necessarily interfere with the Liquidating Trustee's ability to carry out the provisions of the Plan requiring it to make scheduled interim distributions, and the Claimants' ultimate goal—allowing a class of gift-card holders to file untimely proofs of claims—would result in a substantial redistribution of the estate assets long after confirmation of the Plan.  The Court therefore considers the Gift-Card Claimants' Motion to be an action to revoke the confirmed chapter 11 Plan.

*Id.* at *4.

22.    The relief requested by Plaintiffs and Dr. Shah is no different.  Here, as in *BGI*, the Plan specifically requires the GUC Trust to make quarterly distributions to holders of Units to the extent that assets of the GUC Trust are available for distribution and exceed certain thresholds.  *See* Plan § 6.2(*l*).  The relief sought by Plaintiffs—a stay of interim distributions—would "necessarily interfere" with the GUC Trust's ability to satisfy that mandate.

8

23.    In addition, Plaintiffs, by appealing this Court's equitable mootness holding and in seeking to file late claims against the GUC Trust, have an "ultimate goal" of receiving distributions from the GUC Trust, whether or not the so-called accordion feature is triggered. If successful, their efforts would result in nothing less than a wholesale redistribution of the estate assets from Unitholders (who have long-held expectations that they will receive those assets to the extent they are not necessary for the satisfaction of disputed claims as of the Effective Date or the payment of administrative costs, such as taxes) to Plaintiffs.  Similarly, through his Objection, Dr. Shah seeks to "redistribute the wealth," a request that, if granted, would have the effect of undermining the entire distribution scheme set forth in the Plan.

24.    As the *BGI* court held, any attempt to redistribute estate assets post-confirmation must be treated as a motion seeking revocation of the Confirmation Order. Because more than 180 days has passed since the entry of the Confirmation Order, revocation under Section 1144 of the Bankruptcy Code is not permitted, and the requests set forth in the Responses must be denied.

**V.    Even If a Request for a Stay of Distributions Pending Appeal Was Properly Before the Court, the Request Would Lack Merit**

25.    Even if the Responses did not implicate Sections 1127(b) and 1144 of the Bankruptcy Code—which they do—and even assuming that any request for a stay pending appeal had been made on the required two weeks' notice—which it was not, Plaintiffs' motion for a stay of distributions pending appeal fails on the merits.

26.    The GUC Trust does not dispute that in order to obtain a stay pending appeal under Bankruptcy Rule 8007, the moving party must demonstrate that the following four factors are satisfied:  (i) it would suffer irreparable injury if a stay were denied; (ii) there is a substantial possibility, although less than a likelihood, of success on the merits of movant's appeal; (iii) other parties would suffer no substantial injury if the stay were granted; and (iv) the public interest favors a stay. *In re BGI, Inc.*, 2012 WL 5392208, *5 (Bankr. S.D.N.Y.,

9

Nov. 2, 2012); *In re Chemtura Corp.*, 2010 WL 4638898, *5 (Bankr. S.D.N.Y., Nov. 8, 2010); *In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y., 2009).

27.    The burden on the movant is a "heavy" one, and to obtain a stay, the movant must "show satisfactory evidence on all four criteria." *Chemtura*, 2010 WL 4638898 at *5; *General Motors*, 409 B.R. at 30. As set forth below, Plaintiffs fail to satisfy even one of the factors, much less all four, and thus, the relief they request must be denied.

(i)    <u>Plaintiffs Would Not Suffer Irreparable Injury if a Stay Were Denied</u>

28.    To establish irreparable harm, the movant must demonstrate "an injury that is neither remote nor speculative, but actual and imminent." *In re New York Skyline, Inc.*, No. 09-10181 (SMB), 2013 WL 5487938, at *7 (Bankr. S.D.N.Y. Oct. 2, 2013) (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)); *In re Perry H. Koplik & Sons, Inc.*, No. 02-B-40648 REG, 2007 WL 781905, at *1 (Bankr. S.D.N.Y. Mar. 13, 2007) (same); *In re City of Bridgeport*, 132 B.R. 81, 83 (Bankr. D. Conn. 1991) (same).

29.    Where a movant has failed to act with appropriate diligence to protect their rights in a proceeding, any harm that the movant would suffer absent a stay is not "actual and imminent." *See In re BGI, Inc.*, 504 B.R. 754, 767 (S.D.N.Y. 2014) (appellants' "four-month delay in seeking a stay of the Second Distribution Order alone undercuts any argument that they would suffer harm that was 'actual and imminent.'"); *In re Calpine Corp.*, No. 05-60200 (BRL), 2008 WL 207841, at *5 (Bankr. S.D.N.Y. Jan. 24, 2008) (holding that sophisticated party that could have (but failed to) participate in a plan confirmation process did not suffer "actual and imminent" harm when the seeking a stay of the confirmation order).

30.    Here, Plaintiffs plainly have failed to diligently protect their claimed interests in the GUC Trust's assets. First and most significantly, Plaintiffs concede that neither the Ignition Switch Plaintiffs nor the Non-Ignition Switch Plaintiffs have *ever* sought to file a late proof of claim, despite learning in spring 2014, "when New GM issued the recall notices . . .

10

that they might have legal rights of which they were previously unaware." *In re Motors Liquidation Co.*, 529 B.R. at 590. Instead, the Ignition Switch Plaintiffs represent only that they intend to do so "in the near term," while the Non-Ignition Switch Plaintiffs have sought, through Plaintiffs' "omnibus" pleading, dated June 24, 2015, to "reserve the right to, *at a future date*, file and seek allowance of late claims against Old GM." Economic Loss Pl. Response ¶ 1 n.4 (emphasis added).

31.    The Pre-Closing Accident Plaintiffs are no differently situated: Their joinder to the Economic Loss Plaintiffs' motion acknowledges that they have yet to seek leave to file late proofs of claim and that their counsel "plans to assist [those of them] who wish to assert late claims . . . in filing and seeking allowance of such claims." [Docket No. 13248 at 3]

32.    Second, as discussed in the Decision, Plaintiffs deliberately failed to seek an injunction of the distribution that the GUC Trust made to its beneficiaries in November 2014, despite their awareness of both the Ignition Switch Defect and of the GUC Trust's October 24, 2014 announcement that it planned to make such a distribution. *In re Motors Liquidation Co.*, 529 B.R. at 590. This admittedly "tactical choice" not only reflects Plaintiffs' lack of diligence, but highlights that whatever remorse Plaintiffs may have about their strategic decision to pursue relief from New GM first, they cannot establish "actual and imminent" harm now.

33.    Plaintiffs argue that they will suffer irreparable harm if the GUC Trust distributes its existing assets while their appeal is pending. Economic Loss Plaintiffs' Response ¶¶ 32-35. Yet as Judge Scheindlin recognized in denying a stay of distributions in the *BGI* case last year, "[a] majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." *BGI*, 504 B.R. at 763.[5]

---

[5]    Indeed, Judge Scheindlin recognized in *BGI* that while irreparable harm *could* exist where denying a stay risks mooting an appeal of "significant claims of error," that analysis is "inextricably related to the appellants' likelihood of success on the merits." *Id.* (citation omitted); *see also Adelphia*, 361 B.R. at 438 (acknowledging the majority view but stating that "where the denial of a stay pending appeal risks mooting any

34.     Moreover, any "harm" that would be suffered by Plaintiffs in the absence of a stay cannot be classified as "irreparable," where Plaintiffs allege that they can seek—and in fact are seeking—compensation for the "harm" from at least two alternate sources.  Plaintiffs' Response repeatedly invokes the so-called "accordion feature," through which the GUC Trust is entitled to receive up to 30 million shares of New GM Common Stock if the total amount of Allowed General Unsecured Claims exceeds $35 billion.  *See, e.g.*, Economic Loss Pl. Response ¶¶ 24-25 & n.10 (citing Sale Agreement § 3.2(c)).  Plaintiffs assert that given that their claims are "conservatively" estimated to be valued at $10 <u>billion</u>, such claims, if allowed, would trigger the so-called "accordion feature" and generate "significant value available to Plaintiffs." *Id.*  Indeed, based on the June 25, 2015 closing price of New GM Common Stock ($34.70 per share, as reported by Bloomberg), the accordion feature, if triggered, could more than double the value of the existing GUC Trust Assets.  *See* Mot. ¶ 18 (stating that the Trust held assets valued at $935 million as of March 31, 2015).

35.     Although the Judgment precludes Plaintiffs from tapping any GUC Trust Assets, whether past, present, or future, to satisfy any late-filed, allowed claims, Plaintiffs also do not dispute that the shares available under the accordion feature would be wholly unaffected by any GUC Trust distribution of *existing* GUC Trust Assets.  Plaintiffs also do not argue that any claims other than their own could trigger the accordion feature.  Put another way, Plaintiffs cannot argue that they would be "irreparably harmed" by future GUC Trust distributions while simultaneously arguing that a potential reservoir of up to 30 million shares of New GM common stock—worth more than 1 billion dollars—could be available to them pending appeal and allowance of their claims.

---

appeal of significant claims of error, the irreparable harm requirement is satisfied.").  Where, as here, on the other hand, an appeal is unlikely to succeed, the risk of mooting an appeal does not constitute irreparable injury. *In re 473 W. End Realty Corp.*, 14-cv-2321, 2014 WL 2213082, at *2 (S.D.N.Y. May 12, 2014) (quoting *S.E.C. v. Daspin*, No. 13-4622, 2014 WL 443645, at *2 (2d Cir. Feb. 5, 2014); *see also infra* at V(ii).  This is especially true here given that appeals of equitable mootness determinations are governed by the abuse of discretion standard.  *See In re BGI, Inc.*, 772 F.3d 102, 107 (2d Cir. 2014); *In re Charter Commc'ns*, 691 F.3d 482, 482-83 (2d Cir. 2012).

36.    Further, in their recently amended consolidated pleading in the MDL Proceeding, Plaintiffs assert fraudulent concealment claims against New GM, alleging that New GM's failure to disclose the Ignition Switch Defect prior to the Bar Date prevented them from "timely filing claims against the Old GM bankruptcy estate and recovering from the GUC Trust."  Plaintiffs therefore seek damages *from New GM* for Plaintiffs' "lost . . . chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature)."  *See, e.g.*, Second Amended Consolidated Complaint [Docket No. 1038] ¶¶ 1169-88, *In re Gen. Motors LLC Ignition Switch Litig.*, 14-md-2543 (S.D.N.Y. Jun. 12, 2015).  Plaintiffs' new fraudulent concealment claims—through which they seek to recover from New GM amounts they claim they otherwise would have obtained from the GUC Trust—underscore that any "irreparable harm" to them is a fiction.

(ii)    Plaintiffs Face a Low Probability of Success on the Merits of their Appeal

37.    To establish a likelihood of success on the merits, the movant must demonstrate a "substantial possibility of success" on appeal.  *General Motors*, 409 B.R. at 30. In addition, where—as here—a judge must assess likelihood of success on the merits in an appeal of that judge's own orders, he must "view the accuracy of his judgment based on objective factors, including 'the extent to which the challenged decision is supported by precedent [and] the standard of review that will govern the appeal . . . .'"  *In re New York Skyline, Inc.*, No. 09-10181 (SMB), 2013 WL 5487938, at *4 (Bankr. S.D.N.Y. Oct. 2, 2013) (quoting *Hayes v. City of New York*, 503 F.Supp. 946, 963 (S.D.N.Y. 1980), *aff'd*, 648 F.2d 110 (2d Cir. 1981)).

38.    Where the standard of review governing the appeal is deferential, rather than *de novo*, courts within this Circuit have determined that the movant failed to establish a "substantial possibility of success" on appeal.  *See, e.g. In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 665 (S.D.N.Y. 2005) (finding no substantial possibility of success on appeal where

"most, if not all" of sixteen issues on appeal "directly implicate the Bankruptcy Court's discretionary authority"); *BGI*, 2012 WL 5392208 at *5 (holding that movants failed to demonstrate a substantial likelihood of success on the merits where the appeals mainly involved factual findings that are subject to deferential review).

39.    In the Second Circuit, a court's dismissal of a claim on grounds of equitable mootness is subject to review under the deferential standard of abuse of discretion.  *In re BGI, Inc.*, 772 F.3d 107 (2d Cir. 2014).  A review for abuse of discretion standard examines conclusions of law *de novo* and findings of fact for clear error.  *Id.*  While the equitable mootness analysis in the Decision presented mixed questions of fact and law, this Court's equitable mootness holding is substantially rooted in the well-established *Chateaugay* factors and the Second Circuit's recent decision in the *BGI* case, as applied to facts that are not only entitled to deferential review, but were admitted by Plaintiffs.

40.    To overcome the presumption of equitable mootness, the party seeking to refute the presumption must satisfy all five of the *Chateauguay* factors.  *In re Charter Commcn's, Inc.*, 691 F.3d at 482.  In fact, in the Decision the Court found that "at least three of the five *Chateaugay* factors *cut against* overcoming the presumption in favour of mootness . . . ."  *In re Motors Liquidation Co.*, 529 B.R. at 592.  One of those five factors is the degree of diligence exercised by that party in preserving their rights.  *Id.*  Yet as discussed above, Plaintiffs admit that they strategically opted to forego actions to protect their rights in connection with the November Distribution.  *In re Motors Liquidation Co.*, 529 B.R. at 591.  Because Plaintiffs must make a showing that every *Chateauguay* factor has been satisfied in order to succeed in their appeal of the Decision, and because this admitted fact is fatal to one of those factors, it is highly unlikely that Plaintiffs can demonstrate a "substantial possibility of success" on appeal.

41.    Plaintiffs argue in their Response that this Court's failure to consider the accordion feature constituted an additional error that augments the likelihood of their success on appeal.  Economic Loss Plaintiffs' Response ¶¶ 47-48.  Plaintiffs are mistaken.  The accordion feature was discussed in the Decision, including through the Court's recognition that "[t]he GUC Trust Assets stand to be augmented upon allowance of any Plaintiffs' claims against Old GM and/or the GUC Trust."  *In re Motors Liquidation*, 529 B.R. at 538. Moreover, in the *Decision Re Form of Judgment* dated May 27, 2015 [Docket No. 13162], this Court plainly states that the accordion feature was a consideration in its ruling on the Equitable Mootness Threshold Issue:

> When Old GM creditors received distributions under the Plan, and when Unitholders—even if as aftermarket acquirors of GUC Trust Units— acquired their units, they had a reasonable expectation that the total universe of claims filed against Old GM would not increase.  And while they knew that there was an accordion feature, they also knew that claims exposure would result, with exceptions exceedingly difficult to show, only from previously filed claims. The Decision respected those concerns.

*Id.* at 9-10.

42.    Yet even if this Court had erroneously failed to consider the accordion feature—which it did not—such error would not enhance Plaintiffs' likelihood of success on the merits of their appeal.  Plaintiffs made a strategic "decision to allow further distributions to be made."  *See In re Motors Liquidation Co.*, 529 B.R. at 591 (noting Plaintiffs' "prefer[ences] to pursue claims against New GM first, and resort to the GUC Trust only if necessary" and describing cardholders' lack of diligence in *BGI* as "similar").  Such facts hardly demonstrate that the equitable mootness holding was, as Plaintiffs assert, a "close call," but reflect that with or without consideration of the accordion feature, their equitable mootness appeal is necessarily doomed.  *See also id.* at 592 (providing that three of the five *Chateaugay* factors "*cut against* overcoming the presumption in favor of mootness").

      (iii)    <u>Staying Distributions of GUC Trust Assets will Substantially Prejudice GUC
Trust Beneficiaries</u>

43.    Plaintiffs argue that a stay of distributions will not harm any party.  But it is
well established in this Circuit that a stay of distributions to holders of allowed claims is a
substantial injury that weighs heavily against a stay pending appeal.  *See, e.g.*, *In re Pulp
Finish 1 Co.*, No. 12-13774 (SMB), 2014 WL 201482, at \*10 (Bankr. S.D.N.Y. Jan. 16,
2014); *BGI*, 2012 WL 5392208 at \*6; *Chemtura*, 2010 WL 4638898 at \*7-8.

44.    For example, in *BGI*, a case with facts similar to those presented here (yet
ignored by Plaintiffs), the Bankruptcy Court considered whether a proposed stay of interim
distributions from a liquidating trust to holders of allowed claims constituted a significant
harm to such allowed claimholders.  *BGI*, 2012 WL 5392208 at \*6.  The *BGI* court held that
"the loss of valuable working capital for an indefinite period of time [and] lost opportunities
to invest the funds" substantially prejudiced the holders of allowed claims who would
otherwise receive the interim distributions.  *Id.*  Similarly, in *Chemtura*, this Court analyzed
whether a stay of distributions to equity holders during an appeal would substantially
prejudice them.  *Chemtura*, 2010 WL 4638898 at \*7-8.  Ultimately, this Court held that
"even with respect to the cash component of the requested reserve, equity holders will suffer
the opportunity cost of being delayed in their distributions.  *Id.*  Here too, the GUC Trust
beneficiaries—on whose behalf the contemplated distributions are required under the plan—
would be injured by a stay given the time value of money.

45.    The cases cited by Plaintiffs to the contrary are inapposite.  In *In re Advanced
Mining Sys., Inc.*, 173 B.R. 467 (S.D.N.Y. 1994), certain affiliates of the debtor sought a stay
of bankruptcy proceedings pending their appeal of the bankruptcy court's order expunging
their administrative claim.  While the district court granted a stay, it reached that result
primarily because reversal of the court's decision disallowing appellants' claim would have
entitled them to payment of their administrative expense claims in full *and* prior to any

16

distribution to holders of general unsecured claims. Under such circumstances, a stay (absent a reserve) might be warranted, as the satisfaction of general unsecured claims prior to payment in full of all administrative expense claims would violate the Bankruptcy Code.

46.    Here, by contrast, Plaintiffs have yet to assert *any* claim, much less an administrative expense claim. Under these very different circumstances, a balancing of the hardships tips considerably against the imposition of a stay. As discussed above, Plaintiffs here would suffer no harm (much less irreparable harm) absent a stay, while a stay would result in the GUC Trust Beneficiaries suffering substantial harm in the form of lost investment opportunity cost.

47.    Plaintiffs' reliance on *In re St. Johnsbury Trucking Co., Inc.*, 185 B.R. 687, 690 (S.D.N.Y. 1995), is similarly unavailing. There, the government sought a stay of distributions pending its appeal of the bankruptcy court's grant of a broad exculpation of the debtor's officers, employees, or agents from prospective environmental and tax liabilities. *Id.* at 688-89. While the *St. Johnsbury* court observed that prejudice to creditors (who would otherwise receive distributions) was perhaps lessened where distributions have already been substantially delayed, Plaintiffs ignore the court's express finding that only a "*brief* stay pending an *expedited* appeal" would be appropriate under those circumstances. Indeed, the court set an extremely expedited timeline for an appeal and stay—less than one month from the date of its ruling. *Id.* at 691. By contrast, Plaintiffs here seek a stay pending an appeal of unknown duration and where they oppose a direct appeal to the Second Circuit. *See* Joint Letter at 3 [Docket No. 909], *In re Gen. Motors LLC Ignition Switch Litig.*, 14-md-2543 (S.D.N.Y. Apr. 29, 2015). Plaintiffs also acknowledge that they may even seek an indefinite stay pending "determination of the Non-Ignition Switch Plaintiffs' rights to access GUC Trust Assets." See Economic Loss Plaintiffs' Response ¶ 1 & n. 4 ("Plaintiffs seek to stay distributions of GUC Trust Assets pending resolution of the appeal, without prejudice to

further requests to extend the stay."). This is meaningfully different from the "brief stay" granted in *St. Johnsbury*.

    (iv)    <u>Public Interest Concerns Militate Against a Stay Pending Appeal</u>

48.    The public policy concern of finality favors the denial of requests for stays of distributions to creditors. *In re Calpine Corp.*, 2008 WL 207841 at *7 ("There is a strong public 'need for finality of decisions, especially in a bankruptcy proceeding.'") (internal citations omitted). For example, in *Chemtura*, the Court denied a request for a stay of distributions, finding that "[t]he public interest favors the expeditious administration of bankruptcy cases, and also recognizes the desirability of implementing the legitimate expectations of creditors . . . to get paid." *Chemtura*, 2010 WL 4638898 at *8. Similarly, in *BGI*, the Bankruptcy Court found that a stay of interim distributions to creditors would not serve the public's interest pending an appeal because "Congress and the courts have stressed the need for parties to be able to rely on the finality of chapter 11 plans and related orders in conducting business and in dealing with the reorganized debtor." 2012 WL 5392208 at *6.

49.    Plaintiffs argue that the public interest favors a stay for the "preservation of procedural fairness," and protecting parties' rights to appellate review. Plaintiffs further state that the Decision is of "considerable public importance," and that absent a stay, the public ultimately may be denied important guidance from the Second Circuit on the issue of equitable mootness. Economic Loss Plaintiffs' Response ¶¶ 52-55. While theoretically valid, such concerns do not outweigh the more practical needs of avoiding frustrating creditors' long-held expectations, expediting bankruptcy proceedings, and reducing attendant administrative costs. Moreover, courts in this Circuit also have found that where, as here, the party seeking the stay is unlikely to succeed on the appeal, the public interest is better served by permitting distributions under a confirmed plan to proceed. *In re Baker*, No. 1-01-24227(DEM), 2005 WL 2105802, at *10 (E.D.N.Y. Aug. 31, 2005).

(v)    If a Stay is Granted, the Posting of a Substantial Bond Should be Required

50.    Pursuant to Bankruptcy Rule 8007(c), the court may condition a stay on the posting of a supersedeas bond.  As this Court noted in *Chemtura*, a movant seeking the application of a stay without a bond "has the burden of demonstrating why the court shold deviate from the ordinary full security requirement.  *Chemtura*, 2010 WL 4638898 at \*5; *see also De la Fuente v. DCI Telecomm., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) ("Because a supersedeas bond is designed to protect the appellee, the party seeking a stay without bond has the burden of providing *specific reasons* why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment. The bond requirement should not be eliminated or reduced unless doing so 'does not unduly endanger the judgment creditor's interest in ultimate recovery.'") (citations omitted & emphasis added).

51.    Plaintiffs have not satisfied this burden, or pointed to any specific reason to depart from this "standard requirement."  *Id.*   Rather, Plaintiffs argue generally (and erroneously) that the GUC Trust Beneficiaries' position will not be diminished as a result of a stay because the GUC Trust Administrator can simply place the funds in reserve.  Economic Loss Plaintiffs' Response ¶ 57.  This proposed solution, however, completely ignores the lost investment opportunity cost that will be borne by GUC Trust Beneficiaries during a stay of unknown, and potentially indefinite, duration.

52.    Specifically, pursuant to the GUC Trust Agreement, the GUC Trust is permitted only to invest free cash in "Permissible Investments" as defined therein.  *See* GUC Trust Agreement § 8.4(b).   "Permissible Investments" is narrowly defined to include government securities, certain AAA rated debt securities, certificates of deposit and other, similar investments that benefit from very low risk of loss—but offer very low returns on investment.

53.    Where the returns to appellees will be substantially diminished due to restrictions on investments while a stay is in effect, courts have held that the risk of substantial loss of investment opportunity mandates appellants' posting of a bond. *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 352 n.70 (S.D.N.Y. 2007) (finding "an inherent loss to the creditors in any delay because the interest on the proceeds from the Sale earned by Debtors accrues at a very low rate," whereas the creditors "could likely achieve much higher rates of return"); *In re Tribune Co.*, 477 B.R. 465, 480-81 (Bankr. D. Del. 2012) (requiring the posting of a $1.5 billion bond as a condition of granting a stay where "[t]he non-moving creditors could earn $272 million, while the funds sitting in the Debtors' hands, could earn only $383,000, due to investment restrictions imposed by Bankruptcy Code § 345").

54.    As in the foregoing cases, the lost opportunity costs to GUC Trust Beneficiaries here would be substantial, and cannot be cured by having the GUC Trust Administrator place the cash proceeds of the New GM Securities sale in reserve. In the event that this Court is inclined to grant a stay pending appeal, the GUC Trust requests an opportunity to present evidence with respect to the proper amount of such bond.[6]

### CONCLUSION

WHEREFORE, the GUC Trust Administrator respectfully requests that the Court (A) overrule or disregard the Responses as inappropriate, (B) enter an order substantially in the form attached to the Motion as Exhibit A, and (C) grant such other and further relief as may be deemed just and proper.

---

[6] While the proper amount of any bond is difficult to determine at this juncture, it would—in all scenarios—be substantial. In *Chemtura*, for example, this Court analyzed the lost opportunity cost to holders of equity interests whose plan distributions would have been potentially stayed during the pendency of an appeal. 2010 WL 4638898 (Bankr. S.D.N.Y., Nov. 8, 2010). While the evidentiary record in *Chemtura* was lacking, this Court estimated that lost opportunity costs might be as high as 8% per annum for each year in which the appeal were pending. *Id.* at *10.

Dated:  New York, New York
        June 26, 2015

GIBSON, DUNN & CRUTCHER LLP

By:    /s/  Matthew J. Williams      

Matthew J. Williams
Lisa H. Rubin
Keith R. Martorana
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for the Motors Liquidation Company
GUC Trust Administrator*