**Hearing Date and Time:  To be Determined
By Court if Necessary**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.:  09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------x

# RESPONSE BY GENERAL MOTORS LLC TO
# BLEDSOE PLAINTIFFS' MOTION TO AMEND
# AND NO STAY/NO STRIKE/OBJECTION PLEADING

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ....................................................................................................1

**BACKGROUND RELEVANT TO RESPONSE** ........................................................................4

    A.   The Elliott Case, the Scheduling Orders, and the Tag-Along Procedures ..................4

    B.   The Two Additional Motions to Enforce, The August Conference,
and the Court's Confirmation that the Sale Order And Injunction
Applies to the Actions in the First Instance ................................................................7

    C.   The Sesay Lawsuit....................................................................................................7

    D.   The Bledsoe Lawsuit ................................................................................................9

    E.   The Bankruptcy Court's Decision on the Four Threshold Issues ...........................10

    F.   The Court Denies the Bledsoe Plaintiffs' Counsel's
Additional Attempts to Circumvent Procedures .....................................................11

    G.   The Bankruptcy Court's Judgment...........................................................................12

    H.   Notice of Appeals Filed by the Elliott and Sesay Plaintiffs,
and the Motion Filed by the Bledsoe Plaintiffs .......................................................13

**RESPONSE** ...............................................................................................................................14

**THE RELIEF REQUESTED IN THE
BLEDSOE PLEADINGS SHOULD BE DENIED** ..................................................................14

    A.   Standards Applicable to the Bledsoe Pleadings ......................................................14

    B.   The Bledsoe Plaintiffs Have Not Complied with the Judgment ..............................15

    C.   As Previously Determined, the Court Had Subject Matter Jurisdiction
To Rule On the Four Threshold Issues and Enter the Judgment..............................16

    D.   As Currently Pled, the Bledsoe Plaintiffs Have No Independent Claims
and Their Lawsuit Should Remain Stayed Pending Appeal .....................................19

    E.   New GM Appropriately Sought to Enforce the Sale Order and Injunction ..............22

    F.   This Court Had the Power to Issue a
Final Judgment on the Motions To Enforce .............................................................23

    G.   The Bledsoe Plaintiffs Are Bound by the Judgment .................................................25

**CONCLUSION** ........................................................................................................................**28**

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alderwoods Grp., Inc. v. Garcia*,
   682 F.3d 958 (11th Cir. 2012) ............................................................................. 23

*Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*,
   No. 13 Civ. 1725(LGS), 2015 WL 2330066 (S.D.N.Y. May 14, 2015)................................ 15

*C & E Servs. , Inc. v. Ashland, Inc.*,
   498 F. Supp. 2d 242 (D.D.C. 2007) ...................................................................... 22

*Calvetti v. Antcliff*,
   346 F. Supp. 2d 92 (D.D.C. 2004) ........................................................................ 21

*Edmond v. Am. Educ. Servs.*,
   No. 10-0578, 2010 U.S. Dist. LEXIS 114834 (D.D.C. Oct. 28, 2010) ................................. 21

*In re Christ Hospital*,
   502 B.R. 158 (Bankr. D. N.J. 2013) ...................................................................... 24

*In re Eveleth Mines*, *LLC*,
   312 B.R. 634 (Bankr. D. Minn. 2004) ................................................................... 24

*In re Haemmerle*,
   529 B.R. 17 (Bankr. E.D.N.Y. 2015)...................................................................... 23

*In re Haven Eldercare, LLC*,
   No. 07-32720, 2012 WL 1357054 (Bankr. D. Conn. Apr. 17, 2012).............................. 16, 17

*In re Hereford Biofuels, L.P.*,
   466 B.R. 841 (Bankr. N.D. Tex. 2012)................................................................... 23

*In re Johns-Manville Corp.*,
   600 F.3d 135 (2d Cir. 2010)................................................................................ 18

*In re Motors Liquidation Co.*,
   428 B.R. 43 (S.D.N.Y. 2010).......................................................................... 17, 18

*In re Motors Liquidation Co.*,
   522 B.R. 13 (Bankr. S.D.N.Y. 2014) ..................................................................... 24

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015)........................................................ 11, 18, 19, 20

*In re Motors Liquidation Co.*,
   No 09-50026 (REG), 2015 WL 3398398 (Bankr. S.D.N.Y. May 27, 2015)......................... 28

**Page**

*In re Old Carco LLC,*
492 B.R. 392 (Bankr. S.D.N.Y. 2013) ................................................................. 22

*In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd,*
471 B.R. 331 (Bankr. S.D.N.Y. 2012) ................................................................. 22

*In re USA United Fleet Inc.,*
496 B.R. 79 (Bankr. E.D.N.Y. 2013) ................................................................. 23

*Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.),*
517 F.3d 52 (2d Cir. 2008) ................................................................................. 17

*Luan Investment S.E. v. Franklin 145 Corp.,*
304 F.3d 223 (2d Cir. 2002) ............................................................................... 23

*ResQnet.com, Inc. v. Lansa, Inc.,*
No. 01 Civ. 3578(RWS), 2008 WL 4376367 (S.D.N.Y. Sept. 25, 2008) .............. 14

*Shrader v. CSX Transp., Inc.,*
70 F.3d 255 (2d Cir. 1995) ................................................................................. 15

*Stern v Marshall,*
131 S.Ct. 2594 (2011) ........................................................................................ 24

*United Student Aid Funds, Inc. v. Espinosa,*
559 U.S. 260 (2010) ........................................................................................... 15

*Walls v. Wells Fargo Bank, N.A.,*
276 F.3d 502 (9th Cir. 2002) .............................................................................. 23

**Statutes and Rules**

Fed. R. Bankr. P. 7052 .......................................................................................... 14

Fed. R. Bankr. P. 9024 ...................................................................................... 14, 15

U.S. Bankr. Ct. Rules S.D.N.Y., Rule 9023-1 ....................................................... 14

Fed. R. Civ. P. 60 .................................................................................................. 15

District of Columbia Consumer Protection Act, D.C. Code § 28-3901 *et seq*. ...... 21, 22

DMSLIBRARY01\21600\162081\26102094.v1-7/3/15

General Motors LLC ("**New GM**"), by its undersigned counsel, respectfully submits this response ("**Response**") to (i) the Bledsoe Plaintiffs' Motion to Amend Findings Pursuant to FRBP 7052, for Reargument Pursuant to Local Bankruptcy Rule 9023.1, to Alter or Amend the Judgment Pursuant to FRBP 9023, and for Relief From the Judgment Pursuant to FRBP 9024 ("**Bledsoe Motion**"), and (ii) the Bledsoe Plaintiffs' Brief in Support of Their Motion for Relief Related to the Court's Judgment of June 1, 2015, and No Stay/No Strike/Objection Pleading Pursuant to the Judgment ("**Bledsoe Brief**," and with the Bledsoe Motion, the "**Bledsoe Pleadings**") each filed by Plaintiffs Sharon Bledsoe, et al. ("**Bledsoe Plaintiffs**").[1]  In support of this Response, New GM represents as follows:

## PRELIMINARY STATEMENT

1.     The Bledsoe Plaintiffs have essentially conceded that the Bledsoe Motion raises *no* new issues that the Court has not previously considered.  This admission is fatal to their re-argument request.  Without reference to newly discovered facts or overlooked legal principles, there is no basis to reargue the Judgment.

2.     Indeed, it was counsel for the Bledsoe Plaintiffs that made most of the arguments in the Bledsoe Pleadings for other clients.  Those arguments were soundly rejected by this Court.

3.     Apparently, counsel for the Bledsoe Plaintiffs was not sure whether the failed arguments were preserved for appeal for the Bledsoe Plaintiffs (as contrasted to his other

---

[1]     These proceedings relate to the following three Motions to Enforce: (i) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 [Dkt. No. 12620] ("**Ignition Switch Motion to Enforce**"), (ii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [Dkt. No. 12807] ("**Pre-Closing Accident Motion to Enforce**"), and (iii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 [Dkt. No. 12808] ("**Monetary Relief Motion to Enforce**").  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motions to Enforce.

1

09-50026-mg    Doc 13275    Filed 07/06/15    Entered 07/06/15 17:21:29    Main Document
Pg 6 of 33

clients).[2]  So, in order to improperly supplement the record, post-Judgment, counsel reintroduced the same arguments in the context of a re-argument motion.  That is not a proper or intended use of the re-argument procedure.

4.      What makes this improper litigation maneuver particularly egregious here is that it flies in the face of the carefully crafted, and widely noticed, administrative procedures adopted by this Court that required aligned parties to make their arguments at the same time in a coordinated fashion, so that New GM could thereafter respond, and the Court could then finally rule.  Counsel for the Bledsoe Plaintiffs failed even to align the pleadings filed on behalf of his own clients to make coordinated arguments to this court at one time.

5.      Moreover, this litigation maneuver has created unnecessary confusion relating to the appellate pleadings concerning the Judgment.  Counsel for the Bledsoe Plaintiffs has sought re-argument of the Judgment.  Notably, two of the Bledsoe Plaintiffs are Celestine and Lawrence Elliott (collectively, the "**Elliotts**").  The Elliotts are plaintiffs in a separate lawsuit against New GM, also brought by counsel for the Bledsoe Plaintiffs.  In the other *Elliott* lawsuit, counsel has prematurely filed a petition for direct appeal of the Judgment to the Second Circuit, notwithstanding the pendency of the Bledsoe Motion, which automatically delays the time to appeal the Judgment and petition the Second Circuit.

6.      What is more, the Bledsoe Pleadings seek authority from this Court to pursue the Bledsoe Lawsuit while the appeal of the Judgment is pending, without advising this Court that the Bledsoe Lawsuit is in MDL-2543 and has been stayed by the District Court.  *See* MDL Order No. 50 [MDL Dkt. No. 875], ¶ 11.

---

[2]      *See* Bledsoe Brief at 7-8.

2

7.      Finally, the Bledsoe Pleadings are written as if the Complaint in the Bledsoe Lawsuit does not exist. The Complaint therein involves Old GM vehicles, and raises claims predicated on pre-363 Sale accidents, economic loss, and successor liability, all of which are enjoined by the Sale Order and Injunction. The Complaint makes numerous allegations relating to Old GM conduct that are also proscribed by the Sale Order and Injunction.[3]

8.      The Bledsoe Pleadings frequently refer to the term "Independent Claims," but the Bledsoe Motion never states what they are and, more importantly, those claims are not clearly identified in the underlying Complaint.

9.      The Bledsoe Pleadings refer to different forms of successor liability claims (only one of which, according to the Bledsoe Plaintiffs, is proscribed by the Sale Order and Injunction).  However, the Bledsoe Complaint does not make this distinction, and the Bledsoe Pleadings cite no legal authority to support this newly minted proposition.  In the context of a re-argument motion, it is hollow to argue that legal precedent was overlooked, when no contrary legal authority is cited.

10.      And, the Bledsoe Pleadings incorrectly argue that, assuming the Bledsoe Lawsuit violated the Sale Order and Injunction (it did), this Court has no remedy other than to hold the Bledsoe Plaintiffs in contempt of Court, which they do not seem particularly concerned about.[4]

11.      The Court has shown great patience in dealing with the Bledsoe Plaintiffs' counsel's repetitious and rejected arguments. New GM urges the Court to firmly and promptly deny the relief sought in the Bledsoe Pleadings.

---

[3]      Certain Bledsoe Plaintiffs acquired their Old GM vehicle from third parties unrelated to New GM, after the 363 Sale.  Under the Judgment, such Used Car Purchasers are no different than owners who purchased their vehicles from Old GM dealers before the 363 Sale.

[4]      As discussed *infra*, the Elliotts previously failed to abide by an order of the Bankruptcy Court that required them to withdraw their amended pleading in another Court.  *See Order Staying And Restraining Lawrence And Celestine Elliott, And Their Counsel, From Further Proceeding With Their Ignition Switch Action, Except As Expressly Set Forth Herein*, dated July 8, 2014 [Dkt. No. 12763].

## BACKGROUND RELEVANT TO RESPONSE

12.     The Bledsoe Lawsuit was filed on September 19, 2014.[5]  The Bledsoe Plaintiffs' counsel has been involved in the Motions to Enforce since at least June 2014, having filed numerous letters and motions with the Court on behalf of other clients.  The relevant background on this matter is provided below.

**A.     The Elliott Case, the Scheduling
        Orders, and the Tag-Along Procedures**

13.     The Elliotts, *pro se*, commenced their Ignition Switch Action against New GM on April 1, 2014.  The original complaint concerned the *same* Chevrolet Trailblazer that is now at issue in the Bledsoe Lawsuit.  On April 21, 2014, New GM filed its Ignition Switch Motion to Enforce and listed the Elliott Ignition Switch Action on Schedule "1" annexed thereto.

14.     At a conference held by the Court in May 2014 regarding the Ignition Switch Motion to Enforce, various bankruptcy-related issues were discussed with the Court, and there was a general consensus reached between New GM and counsel speaking on behalf of almost all of the Plaintiffs that, as part of the process in which the Court would address bankruptcy-related issues, the Plaintiffs would either (i) agree to enter into a stipulation ("**Stay Stipulation**") with New GM staying their individual Ignition Switch Actions, or (ii) file with the Court a "No Stay Pleading" setting forth why they believed their individual Ignition Switch Actions should not be stayed (collectively, the "**Initial Stay Procedures**").

15.     The Initial Stay Procedures were set forth and approved in the Court's Scheduling Order dated May 16, 2014 ("**May Scheduling Order**").  The overwhelming number of Plaintiffs

---

[5]     A copy of the complaint filed in the Bledsoe Lawsuit is annexed hereto as Exhibit "A."  The Bledsoe Lawsuit contains allegations concerning five separate accidents, two that allegedly occurred (with respect to the same Plaintiff) prior to the closing of the 363 Sale, and three that allegedly occurred after the closing of the 363 Sale. The Judgment does not apply to the Bledsoe Lawsuit solely to the extent that it concerns "Product Liabilities" (as defined in the Sale Agreement) that relate to accidents that occurred after the closing of the 363 Sale.

agreed to enter into Stay Stipulations.  The Elliott Plaintiffs, *pro se*, received the Stay Stipulation and timely executed it.  However, once the Elliott Plaintiffs retained counsel (who also represents the Bledsoe Plaintiffs), they sought to undo their Stay Stipulation and to file an amended complaint, deleting all references to the Trailblazer that is now at issue in the Bledsoe Lawsuit, and seeking class action status.  New GM thereafter requested that the Court direct the Elliotts to withdraw the motion to amend as being a violation of the Sale Order and Injunction and Stay Stipulation, which the Court ordered, and the Elliotts' counsel then refused to follow.  If counsel had adhered to the Court's order, the Elliotts would not have been in the Bledsoe Litigation.

16.    The Court held a further conference in July 2014 ("**July Conference**") to address certain procedural issues that had arisen since entry of the May Scheduling Order.  At that time, the Court ruled on which issues should be decided first in this matter (*i.e.*, the "**Four Threshold Issues**").  A briefing schedule regarding the Four Threshold Issues was established in a Supplemental Scheduling Order, dated July 11, 2014 ("**Supplemental Scheduling Order**"), as amended by an August 22, 2014 Endorsed Order.[6]  On the same day as the July Conference, the Court heard argument on the Elliott matter.  The Court allowed the Elliott Plaintiffs to file a late No Stay Pleading to give them "the opportunity, if [they] can, to show that [their] action is any different than the other 87 [actions] . . . ."  Hr'g Tr. 99:19-20, July 2, 2014.

17.    The Elliott No Stay Pleading made the same argument as the Bledsoe Pleadings—that this Court did not have "related to" subject matter jurisdiction over the Elliott Plaintiffs.  New GM disagreed and a hearing was held on August 5, 2014, wherein the Court agreed with New GM.  It aptly summarized its ruling as follows:

---

[6]    The procedures set forth in the May Scheduling Order, as supplemented by the Supplemental Scheduling Order, were expanded to all Motions to Enforce by Scheduling Orders entered on September 15, 2014.

> Once again, a plaintiff group wishing to proceed ahead of all of the others (only one week after I issued the written opinion memorializing my earlier oral ruling proscribing such an effort) has asked for leave to go it alone. Its request is denied. With a single exception, the issues raised by this group (the "Elliott Plaintiffs") don't differ from those addressed in Phaneuf. And as to that single exception— their claim that I don't have subject matter jurisdiction to construe and enforce the Sale Order in this case— **their contention is frivolous . . . .**

*Id.* at 1 (emphasis added)(footnotes omitted). With respect to the Elliott Plaintiffs' argument regarding "related to" jurisdiction, the Court found that:

> "Related to" jurisdiction has nothing to do with the issues here. Bankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' "*arising in*" jurisdiction. The nearly a dozen cases cited above expressly so hold.

*Id.* at 4 (footnote omitted). The Court thus rejected the Elliott Plaintiffs' argument regarding this Court's subject matter jurisdiction.

18.    With respect to the Elliott Plaintiffs' "no stay" request, the Court held that the "injunctive provisions of Paragraphs 8 and 47 of the Sale Order (and that the Court may also impose by preliminary injunction) will remain in place" with respect to the Elliott Ignition Switch Action. *Id.* at 9-10.

19.    Because new Ignition Switch Actions were being filed against New GM (notwithstanding the procedures already put in place by this Court), New GM filed a motion to establish stay procedures for newly-filed Ignition Switch Actions [Dkt. No. 12725]. The Court granted the relief requested by Order dated July 8, 2014 [Dkt. No. 12764] ("**Stay Procedures Order**"), which required plaintiffs in newly filed Ignition Switch Actions to either enter into a Stay Stipulation or file a "No Stay Pleading" with the Court.

**B.      The Two Additional Motions to Enforce, The August
Conference, and the Court's Confirmation that the Sale
Order And Injunction Applies to the Actions in the First Instance**

20.      After recalling vehicles based on allegedly defective ignition switches in
February, 2014, New GM instituted various other recalls concerning Old GM and New GM
vehicles.   In response to these additional recalls, additional plaintiffs commenced lawsuits
against New GM based on allegedly defective parts (other than the ignition switch) in Old GM
vehicles.   Accordingly, on August 1, 2014, New GM filed with the Court the Monetary Relief
Motion to Enforce, seeking to enforce the Sale Order and Injunction against plaintiffs (including
certain of the Bledsoe Plaintiffs) who are improperly asserting economic loss claims against New
GM based on non-ignition switch defects in Old GM vehicles.

21.      In addition, allegedly premised on the various recalls that had been instituted by
New GM in 2014, certain other plaintiffs commenced lawsuits against New GM that are based
on accidents that occurred prior to the closing of the 363 Sale.  As claims against New GM based
on pre-closing accidents are clearly barred by the Sale Order and Injunction, New GM filed the
Pre-Closing Accident Motion to Enforce on August 1, 2014.

**C.      The Sesay Lawsuit**

22.      Despite being on notice that the Sale Order and Injunction is applicable to
Ignition Switch Actions in the first instance, counsel for the Elliott Plaintiffs—instead of seeking
relief in this Court—filed a new action on August 1, 2014 directly in the Southern District of
New York on behalf of another group of plaintiffs ("Sesay Plaintiffs").  On August 28, 2014, the
Sesay Plaintiffs filed an amended complaint.

23.      The Sesay Ignition Switch Action concerns both Old GM and New GM Vehicles,
with model years ranging from 2003 through 2011.  One of the named plaintiffs (Mr. Sesay)
owns a 2007 Chevrolet Impala which he bought from a friend.  The Class is defined in a manner

similar to that in the Bledsoe Lawsuit: people "who, since the inception of [New] GM in October

2009, hold or have held a legal or equitable interest in a GM vehicle with a dangerous ignition

switch or steering hazard." Sesay Amended Compl., ¶ 41. Thus, the purported class, as defined

by the Sesay Plaintiffs, encompasses anyone who owned a subject vehicle as of October 2009,

even if that person purchased the vehicle from Old GM.

24.     Upon learning of the Sesay Ignition Switch Action, New GM designated the

Action as being subject to the Ignition Switch Motion to Enforce by including it in its Sixth

Supplemental Schedules, which were filed with the Court on August 7, 2014 [Dkt. Nos. 12818

and 12819]. Counsel of record for the Sesay Plaintiffs (who is also counsel for the Elliott

Plaintiffs and the Bledsoe Plaintiffs) was served with the Sixth Supplements on August 7, 2014.

25.     As authorized by the Stay Procedures Order, New GM sent counsel for the Sesay

Plaintiffs the Scheduling Order, Supplemental Scheduling Order, the Stay Stipulation and the

Stay Procedures Order by e-mail transmission on August 7, 2014. The next day (August 8,

2014), counsel for the Sesay Plaintiffs filed a letter ("**August 8 Letter**") with the Court, among

other things, requesting additional time to file a No Stay Pleading. The Sesay Plaintiffs raised

many arguments going to the substance of the Ignition Switch Motion to Enforce, including

counsel's now familiar "lack of subject matter jurisdiction" refrain. New GM responded to the

August 8 Letter disputing much of what was stated in the August 8 Letter, but consented to an

extension of time to file a No Stay Pleading. Later in the day on August 12, 2014, the Court

entered an Endorsed Order regarding the relief requested in the August 8 Letter, which stated, in

relevant part, as follows:

***All requests denied***.  Notwithstanding the foregoing, the Sesay Plaintiffs may have an extension for a duration no longer than seven calendar days from the date of this order to file a No Stay Pleading if New GM is willing to so stipulate.  ***The Sesay Plaintiffs may file a No Stay Pleading if they think, consistent with the Court's earlier ruling, that such a pleading would meet FRBP 9011 standards***.

26.     The Sesay Plaintiffs ultimately filed a No Stay Pleading, and New GM responded. On November 11, 2014, the Court entered its *Decision With Respect To No Stay Pleading, And Related Motion For Abstention (Sesay Plaintiffs)* [Dkt. No. 12989] ("**Sesay No Stay Decision**"), in which the Court denied the Sesay No Stay Pleading because: "The great bulk of the contentions [therein did] not differ from the contentions [the Court] rejected in Phaneuf and Elliott, the latter of which were made by this same counsel. And the new contentions (asserted insufficient time to respond and other assertedly unfair procedures) and the new request (that [the Court] abstain from hearing this controversy) lack merit as well."  Sesay No Stay Decision, at 2. The Court highlighted that "[t]he Sesay Plaintiffs are one of only seven plaintiff groups to object to staying the individual proceedings. Their counsel, Peller, represents three of these groups" (*id.* at 3) and "[t]he [Sesay No Stay Pleading] is an amalgam of efforts to raise, once again, contentions [the Court] already considered and rejected" (*id.* at 7).  The Court made it clear in the Sesay No Stay Decision that the contention that the Court lacked subject matter jurisdiction to hear the Motion to Enforce was "frivolous" because "[f]ederal judges, including bankruptcy judges, have subject matter jurisdiction to enforce their own orders." *Id.* at 7-8.

### D.     The Bledsoe Lawsuit

27.     Notwithstanding the Elliott Written Decision, and that the Sale Order and Injunction is applicable to the actions in the first instance, counsel for the Bledsoe Plaintiffs— once again without seeking relief in this Court—filed the Bledsoe Lawsuit in the Southern District of New York on September 19, 2014.

28.     The named plaintiffs in the Bledsoe Lawsuit own only Old GM vehicles, with model years ranging from 2000 through 2008 (certain of the Old GM vehicles were purchased prior to the 363 Sale; certain others were purchased used in the resale market from third parties after the 363 Sale). The Bledsoe Plaintiffs claim to bring their lawsuit "on behalf of a proposed nationwide class" and the Class is defined as people "who, since the inception of [New] GM in October 2009, hold or have held a legal or equitable interest in a GM vehicle with an ignition switch hazard [*sic*], an ignition switch key hazard, a power steering hazard, a transmission cable hazard, a brake light failure hazard, and/or a master power door switch hazard." Bledsoe Compl., ¶ 85. Thus, the purported class, as defined by the Bledsoe Plaintiffs, encompasses anyone who owned a subject vehicle as of October 2009, even if that person purchased the vehicle before the 363 Sale.

29.     New GM designated the Bledsoe Lawsuit as being subject to all three Motions to Enforce on October 6, 2014 pursuant to the Supplemental Schedules.

30.     A week later (October 13, 2014) the Bledsoe Plaintiffs filed a No Stay Pleading, and again Plaintiffs' counsel contended that the Court lacked subject matter jurisdiction over the Bledsoe Plaintiff's claims.

31.     In a November 10, 2014 Endorsed Order [Dkt. No. 12991] ("**November 10 Order**"), the Court denied the Bledsoe No Stay Pleading, citing the denial of the similar (at times, identical) motions in, among others, the *Elliott* and *Sesay* cases. The Court also noted that: "Rights of New GM and other parties to seek a *Martin-Trigona* order, sanctions, and/or contempt are reserved." November 10 Order, at 1.

**E.      The Bankruptcy Court's Decision on the Four Threshold Issues**

32.     After extensive briefing and a two-day oral argument, the Bankruptcy Court rendered its *Decision on Motion to Enforce Sale Order* on April 15, 2015 ("**Decision**"). *See In re*

10

*Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).  With respect to due process, the Court found that, while publication notice in a 363 Sale is ordinarily satisfactory, it was not in this case enough for those whose cars had allegedly defective ignition switches.  *See* Decision, 529 B.R. at 525.

33.    The Court also found that Plaintiffs must demonstrate that they have sustained prejudice as a result of the allegedly insufficient notice.  The Ignition Switch Pre-Closing Accident Plaintiffs were not prejudiced, and the Ignition Switch Plaintiffs were found by the Court to be prejudiced, but only with respect to claims involving Old GM vehicles and parts that were based on New GM conduct, and not based on any kind of successor liability or any other act by Old GM (defined in the Judgment as "**Independent Claims**").  *See id.* at 526-27.  The Court held that the Sale Order and Injunction would be modified to allow the assertion of "Independent Claims" by Ignition Switch Plaintiffs Judgment ¶ 4.  The Court held that it will continue to enforce the prohibitions against successor liability and New GM is not liable for Old GM conduct.  "Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand."  Decision, 529 B.R. at 528.

**F.    The Court Denies the Bledsoe Plaintiffs' Counsel's
        Additional Attempts to Circumvent Procedures**

34.    On May 13, 2015, counsel for the Bledsoe, Elliott, and Sesay Plaintiffs, filed a letter ("**May 13 Letter**") with the Court requesting that the Court set a schedule to consider additional objections of the Bledsoe Plaintiffs that counsel claimed are "non-Threshold Issues." May 13 Letter, at 1.  Counsel declared (as he does again in the Bledsoe Pleadings) that the Bledsoe, Elliott, and Sesay Plaintiffs are not "Identified Parties" (as defined in the Court's Scheduling Order), and therefore cannot be bound by the Court's rulings because, as he claimed,

these parties have not had an opportunity to be heard.  The May 13 Letter requested that the Court delay entry of judgment with respect to the Decision, and that "the Court set a schedule for consideration of additional objections Plaintiffs wish to submit in response to New GM's Motions to Enforce."  *Id.* at 1-2.

35.    As instructed by the Court in its Endorsed Order dated May 15, 2015 [Dkt. No. 13147], New GM submitted a letter in response to the May 13 Letter on May 21, 2015 ("**Response Letter**") [Dkt. No. 13153].  The Response Letter outlined that the Elliott, Sesay and Bledsoe Plaintiffs are all bound by the Decision and any judgment entered in connection therewith.  Response Letter, at 1.  New GM asserted that the Court never limited the proceedings relating to the Four Threshold Issues to only the Identified Parties and that "all plaintiffs whose complaints were the subject of the Motions to Enforce and who were served with those Motions, including (the Elliott, Sesay and Bledsoe Plaintiffs), had the opportunity to file a brief and present oral argument on the Four Threshold Issues." The ability of all parties to participate in proceedings relating to the Motions to Enforce, as reiterated in the Response Letter, was confirmed in prior Orders entered by the Court.

36.    On May 27, 2015, the Court issued an Endorsed Order ("**May 27 Endorsed Order**") stating: "Requests denied. [Counsel for the Elliott, Sesay and Bledsoe Plaintiffs] already has had more than ample opportunity to be heard."

**G.    The Bankruptcy Court's Judgment**

37.    On June 1, 2015, the Court issued the Judgment, memorializing the rulings in its Decision.  Among other things, subject to various procedures set forth in the Judgment, (i) "Ignition Switch Pre-Closing Accident Plaintiffs . . . [are] stayed and enjoined from prosecuting any lawsuit against New GM" (*id.*, ¶ 8(a)); (ii) "[e]xcept for Independent Claims and Assumed Liabilities, all claims and/or causes of action that the Ignition Switch Plaintiffs may have against

12

New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment" (*id.*, ¶ 9); (iii) the rulings set forth in the Judgment applied to other plaintiffs, including Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs (*id.*, ¶ 13).

38.    Before the Judgment was entered, New GM, Designated Counsel, and the GUC Trust filed competing proposed judgments based on the mandates outlined in the Decision. Exhibits were attached to New GM's proposed judgment that categorized the lawsuits that would be effected by the Judgment.

39.    Pursuant to the procedures set forth in the Judgment, the Judgment was served on counsel for the Bledsoe Plaintiffs on June 2, 2015.

**H.    Notice of Appeals Filed by the Elliott and Sesay
Plaintiffs, and the Motion Filed by the Bledsoe Plaintiffs**

40.    On the same day the Judgment was entered, both the Elliott Plaintiffs and the Sesay Plaintiffs each filed Amended Notices of Appeal [Dkt. Nos. 13179 and 13180]. The Statement of Issues for each appeal were filed on June 15, 2015 [Dkt. Nos. 13207 and 13208]. The majority of the issues listed in both (nearly identical) Statement of Issues focus on the jurisdictional reach of the Court.

41.    On June 11, 2015, the Bledsoe Plaintiffs filed with the Court the Bledsoe Pleadings raising the same issues that are subject to appeals lodged by the Bledsoe Plaintiffs' counsel for other clients.

## RESPONSE

### THE RELIEF REQUESTED IN THE
### BLEDSOE PLEADINGS SHOULD BE DENIED

42.     As set forth above, counsel for the Bledsoe Plaintiffs makes (in some instances, for the fourth time) many of the same arguments that have been made before with respect to this Court's subject matter jurisdiction over the Motions to Enforce and the Four Threshold Issues. In addition, in this contested matter, other parties made the same arguments as the Bledsoe Plaintiffs make now and which were rejected by the Court in its Decision and Judgment. The principles of collateral estoppel and *stare decisis* mandate the same result again. As further explained below, all of the relief requested in the Bledsoe Pleadings should be denied.

**A.      Standards Applicable to the Bledsoe Pleadings**

43.     While the Bledsoe Pleadings assert that they are moving under Bankruptcy Rule 7052 and 9024, and Local Bankruptcy Rule 9023-1, they never set forth the standards for seeking such relief, or their burden of proof on the issues. "The standards governing motions for amendment of findings under Rule 52(b), motions to alter or amend a judgment pursuant to Rule 59(e), and motions for reconsideration pursuant to Local Rule 6.3 are the same." *ResQnet.com, Inc. v. Lansa, Inc.,* No. 01 Civ. 3578(RWS), 2008 WL 4376367, at *2 (S.D.N.Y. Sept. 25, 2008).[7] "A movant for reconsideration bears the heavy burden of demonstrating that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, No. 13 Civ. 1725(LGS), 2015 WL 2330066, at *2

---

[7]   Local Bankruptcy Rule 9023-1 and Local District Court Rule 6.3 are essentially the same. Local Bankruptcy Rule 9023-1 provides that the "motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered." Local District Court Rule 6.3 provides that "[t]here shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."

(S.D.N.Y. May 14, 2015). The Second Circuit has stated that "[t]he standard for granting such a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

44.      Bankruptcy Rule 9024 provides that Civil Rule 60 applies in bankruptcy cases, and Civil Rule 60(b)(4) provides that relief can be granted from a judgment if "the judgment is void." Civil Rule 60(b)(4) applies "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

45.      Based on the foregoing standards, the Bledsoe Plaintiffs did not even try, much less come close to satisfying their heavy burden, and all of the relief requested in the Bledsoe Pleadings should be denied.

**B.      The Bledsoe Plaintiffs Have Not Complied With The Judgment**

46.      In addition to being styled as a motion to amend or reconsider the Judgment, the Bledsoe Plaintiffs have filed a combined "No Stay/No Strike/Objection Pleading," allegedly pursuant to the Judgment. The Judgment provides that if a plaintiff has a good faith basis to believe that allegations, claims and/or causes of action should not be stayed or stricken, they may file an appropriately pleading with this Court. *See* Judgment, ¶¶ 8, 11, 13. However, such pleading shall "not reargue issues that were already decided by the Decision, this judgment, or any other decision, order or judgment of this Court." *See, e.g., id.*, ¶ 8(c).

47.      As counsel for the Bledsoe Plaintiffs has done in the past, and as demonstrated below, he is clearly attempting to reargue issues that this Court has previously decided, either in

15

connection with (i) the Bledsoe Plaintiffs' No Stay Pleading, (ii) other plaintiffs' No Stay Pleadings (that were filed by counsel for the Bledsoe Plaintiffs), or (iii) the Four Threshold Issues.  He should not be permitted to do so (again).

**C.    As Previously Determined, the Court Had Subject Matter Jurisdiction To Rule On the Four Threshold Issues and Enter the Judgment**

48.    The Bledsoe Plaintiffs themselves recognize in their pleadings that the Court has the "inherent power to construe and enforce its own orders."  Bledsoe Brief, at 11.  This is exactly what was done in the Decision and Judgment.  Moreover, as counsel for the Bledsoe Plaintiffs knows well, the Sale Order and Injunction unquestionably reserved exclusive jurisdiction to this Court to interpret and enforce the Sale Order and Injunction, as well as the terms of the Sale Agreement.  That is why the Motions to Enforce were filed in this Court, and that is why this Court was the only proper Court to hear and decide these issues.

49.    The Bledsoe Plaintiffs' current argument about a distinction between "*in rem*" jurisdiction and "*in personam*" jurisdiction is just a different formulation of the failed arguments they (and other plaintiffs who are represented by the same counsel) made in the past.  Like their previous argument that this Court lacked "related to" jurisdiction, the Bledsoe Plaintiffs' current argument misses the point.  As clearly and unambiguously found previously by the Court, "[b]ankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' "arising in" jurisdiction.  The nearly a dozen cases cited [in the first two pages of the Elliott Written Decision] expressly so hold."  Elliott Written Decision, at 4. (emphasis in original)(footnote omitted).

50.    *In re Haven Eldercare, LLC*, No. 07-32720, 2012 WL 1357054 (Bankr. D. Conn. Apr. 17, 2012), cited by the Bledsoe Plaintiffs (*see* Bledsoe Brief, at 12), does not support their

argument.  In that case, the bankruptcy court extensively quotes from the District Court's decision affirming the Sale Order and Injunction.  *Id.* at *1-*2 (quoting *In re Motors Liquidation Co.*, 428 B.R. 43, 56-57 (S.D.N.Y. 2010) for the propositions that (i) bankruptcy courts have core jurisdiction to enter sale orders and "corollary jurisdiction to interpret and enforce their own orders carrying out the provisions of the Bankruptcy Code" (ii) "courts have characterized the injunctive authority of bankruptcy courts as 'core' when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the 'free and clear' authority of section 363(f)," and (ii) "[t]he injunctive provisions in the Sale Order enjoining successor liability would thus be within the Bankruptcy Court's core jurisdiction to authorize and effectuate the 363 Transaction "free and clear" of Appellants' claims under section 363(f).").  The court in *Haven Eldercare* ultimately enforced its prior orders, finding that the purchaser was not liable for successor liability claims.  *Id.*, 2012 WL 1357054, at *8.

51.    Moreover, the Bledsoe Plaintiffs' argument is the same as that advanced by Designated Counsel in connection with the briefing on the Four Threshold Issues.  In Designated Counsel's brief, they argued:

> Subject matter jurisdiction in a bankruptcy proceeding over third-party claims (such as the non-derivative claims of the Post-Sale Class) can extend only to actions affecting the res of the bankruptcy estate.

Designated Counsel's Opposition to New GM's Motions for Enforcement of Sale Order and Injunction, at 70 (citing, as the Bledsoe Plaintiffs do in the Bledsoe Brief, *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 66-68 (2d Cir. 2008)).

52.    In the Decision, the Court noted that these arguments were all made in 2009 when Old GM sought approval of the Sale Order and Injunction, and were rejected:

> The Successor Liability Objectors argued that shedding potential successor liability was not permitted under Bankruptcy Code section 363(f). ***They further argued that section 363(f) "authorize[d] the sale of property free and clear only***

17

*of 'interests in' property to be sold, not in personam claims against the Purchaser under theories of successor liability."* They further argued that the Court "lack[ed] jurisdiction to enjoin actions between non-debtor product liability claimants and the Purchaser post-closing since resolution of these claims [would] not affect the Debtors' estates." And they argued that the Free and Clear Provisions would violate due process—asserting that individuals who might have future claims for injuries "cannot have received meaningful notice that the bankruptcy proceeding was resolving their rights or a meaningful opportunity to protect those rights, which otherwise might allow a state law cause of action for their injuries."

In the Sale Opinion, the Court considered, but ultimately rejected, those contentions and similar ones.

Decision, 529 B.R. at 533 (emphasis added).

53.    In addition, the argument that the Court did not have jurisdiction of *in personam* claims was also rejected by the District Court in an appeal of the Sale Order and Injunction. There, the appellants "challenge the Bankruptcy Court's 'colorable' jurisdiction on the grounds that the Bankruptcy Court lacked authority to enjoin their *in personam* successor liability claims under section 363(f)." *In re Motors Liquidation Co.*, 428 B.R. 43, 57 (S.D.N.Y. 2010).  In distinguishing *In re Johns-Manville Corp.*, 600 F.3d 135 (2d Cir. 2010) ("***Manville IV***") (which is relied on by the Bledsoe Plaintiffs), the District Court found that:

it is clear that the Bankruptcy Court had more than "colorable" jurisdiction to issue the Sale Order's injunctive provisions providing that the Purchased Assets would be transferred "free and clear of all liens, claims, encumbrances, and other interests ... including rights or claims based on any successor or transferee liability." Sale Order ¶ 7.  Indeed, to contend otherwise is simply not a "colorable" argument.

*Motors Liquidation Co.*, 428 B.R. at 58-59.

54.    The Bledsoe Plaintiffs argue that prejudice was not required to demonstrate a due process violation.  *See* Bledsoe Brief, at 17-18.  In support, the Bledsoe Plaintiffs rely on *Manville IV*.  But, again, this argument was advanced by Designated Counsel for both the Ignition Switch Plaintiffs and the Pre-Closing Accident Plaintiffs in connection with the Four

Threshold Issues. The Court discussed *Manville IV* in the Decision and, specifically, in the "prejudice" section, with the Court finding that in the *Manville IV* case, "the prejudice to the party that had received inadequate notice was obvious . . . ." Decision, 529 B.R. at 560 n. 161. The Bledsoe Plaintiffs have not asserted anything that should deviate from the Court's holding, "consistent with the ten other cases that have held likewise—that even where inadequate notice has been given, prejudice is an essential element for vacating or modifying an order implementing a 363 sale." *Id.* at 565.

55.    Ultimately, in the Decision, the Court found that, with respect to the Free and Clear Provisions (as defined in the Decision):

> [b]ack in 2009, the Court heard many others make the same arguments, and rejected them. The Court now has heard from both the Economic Loss Plaintiffs and Pre–Closing Accident Plaintiffs with respect to the Free and Clear Provisions and successor liability, with full and fair opportunity to be heard. And neither Plaintiff group has advanced any arguments on successor liability that were not previously made, and made exceedingly well before.

*Id.* at 527. Likewise, here, the Bledsoe Plaintiffs have advanced nothing new; all of their arguments have been made before (by both their counsel, multiple times, and by Designated Counsel).

56.    The Judgment is being appealed (including by other plaintiffs represented by the Bledsoe Plaintiffs' counsel), and parties can make their arguments on appeal. There is no reason to revisit these already decided issues in the context of re-argument when nothing new is alleged.

**D.    As Currently Pled, the Bledsoe Plaintiffs Have No Independent
    Claims and Their Lawsuit Should Remain Stayed Pending Appeal**

57.    The Judgment did modify the Sale Order and Injunction in one limited respect: Ignition Switch Plaintiffs may, at this time, assert against New GM "Independent Claims." Judgment, ¶ 4. But these claims may only be maintained by Ignition Switch Plaintiffs, and not

19

by other plaintiffs (such as many of the Bledsoe Plaintiffs) who allege different issues with their

vehicles or who were involved in accidents that took place prior to the 363 Sale.

58.    The only plaintiff specifically identified by the Bledsoe Plaintiffs in the Bledsoe

Pleadings is Ms. Bledsoe, who was involved in a pre-363 Sale accident.  This Court was clear

that:

> The arguments as to Sale Order breadth that the Economic Loss Plaintiffs might
> have asserted would not be relevant to the Pre–Closing Accident Plaintiffs. To the
> extent the Sale Order was overbroad, it was so as to any claims that might arise
> *solely by reason of New GM's conduct*. The Pre–Closing Accident Plaintiffs
> suffered the injury or death underlying their claims in Old GM cars, and with Old
> GM parts. Any actionable conduct causing that injury or death took place before
> the 363 Sale—and necessarily was by Old GM, not New GM, and indeed before
> New GM could have done anything wrong.

Decision, 529 B.R. at 573.  Just as the Court found that pre-363 Sale accident plaintiffs do not

have any Independent Claims against New GM, Ms. Bledsoe similarly has no Independent

Claims against New GM.

59.    Moreover, while all of the Bledsoe Plaintiffs own vehicles manufactured by Old

GM, it is alleged that a few of them purchased their vehicles after the closing of the 363 Sale.

These "Used Car Purchasers" are similarly bound by the Decision and Judgment.  *See id.* at 526

n.14 & 572 ("The Used Car Purchasers' contention that they deserve better treatment than other

GM vehicle owners is also illogical and unfair.  . . .  There is no basis in logic or fairness for a

different result.").  Nothing new has been advanced that would warrant a different result.

60.    The Bledsoe Plaintiffs have not set forth which of the allegations, claims and/or

causes of action contained in their Complaint should remain.  Instead they are essentially arguing

that their entire Complaint should remain intact, and that they should be allowed to proceed

against New GM unabated.  Yet, this Court has previously found that the Bledsoe Plaintiffs were

subject to the Motions to Enforce, and the Bledsoe Plaintiffs' lawsuit is set forth in the Exhibits

to the Judgment.  It was thus incumbent on the Bledsoe Plaintiffs to conform their Complaint to the rulings made in the Decision and Judgment.  They have refused to do so, and they bear the consequences of their inaction.

61.     The causes of action contained in the Bledsoe Plaintiffs are (i) common law fraud; (ii) violation of certain consumer protection statutes in Maryland and the District of Columbia; (iii) civil conspiracy, and negligence.  Each of these causes of action is premised on the point of sale of the vehicle (or, in the case of Used Car Purchasers, the original point of sale).  Thus, they do not arise out of any consumer transaction with New GM.  As New GM did not assume these types of liabilities from Old GM in connection with the Sale Agreement, they are retained liabilities of Old GM and may not be maintained against New GM.  *See, e.g.*, Sale Agreement § 2.3(b)(xi) (Retained Liabilities include "all Liabilities to third parties for Claims based upon Contract, tort or any other basis").

62.     For example, the Bledsoe Plaintiffs assert a cause of action under the District of Columbia Consumer Protection Act ("**DCCPPA**").  The DCCPPA "was designed to police trade practices arising only out of consumer-merchant relationships, and it has been interpreted to only supply consumers with a cause of action against merchants who provide them with goods or services." *Edmond v. Am. Educ. Servs.*, No. 10-0578, 2010 U.S. Dist. LEXIS 114834 (D.D.C. Oct. 28, 2010) (emphasis added) (citations and quotation marks omitted); *see also Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 103 (D.D.C. 2004) ("The CPPA has been interpreted to only supply consumers with a cause of action against merchants who provide them with goods or services."). Here, it is beyond dispute that New GM did not provide the goods or services; rather, the vehicles were all purchased from Old GM or third parties unrelated to New GM.  Accordingly,

21

the Bledsoe Plaintiffs' DCCPPA claim is barred by the Sale Order and Injunction.[8]    The

remainder of the Bledsoe Plaintiffs' claims are similar and all are barred by the Sale Order and

Injunction.

**E.    New GM Appropriately Sought to Enforce the Sale Order and Injunction**

63.    Resurrecting another argument previously made (and rejected), the Bledsoe

Plaintiffs assert, as they did in their No Stay Pleading,[9] that New GM may not obtain "successive

injunctions" and that its only remedy was a contempt motion.[10]    However, as explained in

response to the Bledsoe No Stay Pleading, New GM is not seeking to obtain a new or successive

injunction; rather, it is seeking to **enforce** a **preexisting** injunction, which is entirely appropriate

by means of the Motions to Enforce.    *See, e.g.*, *In re Ritchie Risk-Linked Strategies Trading*

*(Ireland), Ltd.*, 471 B.R. 331, 337 (Bankr. S.D.N.Y. 2012) (motion to enforce sale order was

appropriate and party was (i) directed to withdraw any asserted lien or interest of any kind in an

asset sold pursuant to a sale order, and (ii) enjoined from litigating, prosecuting or otherwise

pursuing its claim against the asset purchased pursuant to the court approved sale).

64.    Other courts addressing similar motions to enforce have also entered orders

similar to those entered here.    *See, e.g.*, *In re Old Carco LLC*, 492 B.R. 392 (Bankr. S.D.N.Y.

2013) ("[T]he plaintiffs have not asserted any assumed products liability claims, and the Sale

---

[8]    As the basis for their DCCPPA claim, the Bledsoe Plaintiffs specifically cite D.C. Code 28-3904(1), which prohibits the "fail[ure] to state a material fact if such failure tends to mislead."  Under the DCCPA, however, "a representation is material if it reasonably influences a plaintiff to take an action he or she may have refrained from taking if aware of the actual facts." *C & E Servs. , Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 258 (D.D.C. 2007).  New GM cannot be liable for failing to state a material fact because New GM did not even exist when the vehicles at issues were sold.  Therefore any action that could have been taken or refrained from taking would be due to Old GM's conduct.

[9]    The Bledsoe Plaintiffs asserted in their No Stay Pleading filed in 2014 that, "to the extent that [New GM] seeks to enforce an existing injunction, its exclusive remedy is to seek to hold plaintiffs in contempt in appropriate proceedings."   Bledsoe No Stay Pleading, at 6.  As noted, the Court rejected all of the Bledsoe Plaintiffs' arguments made in their No Stay Pleading.

[10]    While New GM does not now seek to hold the Bledsoe Plaintiffs in contempt, it nonetheless reserves all of its rights to do so.

Order bars all other pre-closing claims except Repair Warranty claims and Lemon Law claims relating to vehicles manufactured within five years of the Closing Date. Accordingly, the breach of implied warranty claims asserted in Counts VI, VII and VIII with respect to vehicles manufactured and sold before the closing are dismissed, as are the claims asserted on behalf of the same owners in Counts I and V that New Chrysler failed to extend the TSBs to these owners or breached a duty to warn."); *In re USA United Fleet Inc.*, 496 B.R. 79, 80 (Bankr. E.D.N.Y. 2013) (the court concluded that "(i) it has subject-matter jurisdiction to interpret and enforce the sale order; (ii) the DOL has an interest in the assets purchased by Reliant within the meaning of Section 363(f); and (iii) this interest was subject to the "free and clear" provisions of the sale order and Section 363(f)").[11]

65.    Accordingly, the relief sought by New GM in its Motions to Enforce was clearly appropriate and the Court committed no "manifest error" in ruling on same.

**F.    This Court Had the Power to Issue a Final Judgment on the Motions To Enforce**

66.    The relief requested in the Motions to Enforce is fundamentally a "core" matter as they required the Court to determine whether dozens of complaints (including the Bledsoe Plaintiffs' complaint), either in whole or in part, violated the Sale Order and Injunction.  *See, e.g., In re Hereford Biofuels, L.P.,* 466 B.R. 841, 844 (Bankr. N.D. Tex. 2012) (post-confirmation dispute regarding interpretation and enforcement of a sale order was a core proceeding); *Luan Investment S.E. v. Franklin 145 Corp.*, 304 F.3d 223, 229-30 (2d Cir. 2002) (disputes concerning

---

[11]    The cases the Bledsoe Plaintiffs rely on are all inapposite.  For example, in *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 968 (11th Cir. 2012), the debtors sought to enforce their discharge in a different court from where they obtained their discharge.  The Eleventh Circuit specifically held that the second court lacked jurisdiction and did "not reach the other issues on appeal." *Id.* at 961.  *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002), was another discharge case, where the Ninth Circuit found that the remedy for a violation of Section 524 of the Bankruptcy Court could only be obtained under the Bankruptcy Code (through a contempt motion) and not through claim for money damages based on the Fair Debt Collections Practices Act.  *In re Haemmerle*, 529 B.R. 17 (Bankr. E.D.N.Y. 2015), is another Section 524 discharge case.  None of these cases concern the interpretation and enforcement of a sale order by the bankruptcy court.  As stated above, the Court unequivocally had the power to issue the Judgment.

Bankruptcy Court's sale order fall within "core" jurisdiction); *In re Eveleth Mines, LLC*, 312 B.R. 634, 644-45 and n.14 (Bankr. D. Minn. 2004) ("A purchaser that relies on the terms of a bankruptcy court's order, and whose title and rights are given life by that order, should have a forum in the issuing court.").

67.    The Court's jurisdiction to enter final orders interpreting and enforcing its prior orders, decisions and judgments is not impacted by *Stern v Marshall*, 131 S.Ct. 2594 (2011). This Court was previously confronted with this precise issue in connection with a "no stay pleading" filed by another plaintiff represented by counsel for the Bledsoe Plaintiffs.  There, the Court found as follows:

> Earlier caselaw before *Stern v. Marshall* had spoken in terms of whether or not the abstention request was made in connection with a "core proceeding." After *Stern,* many bankruptcy judges (and I am one of them) consider the more important concern to be our constitutional authority to enter a final order with respect to the matter before the bankruptcy court. New GM's Motion to Enforce—seeking enforcement of a sale order entered in connection with a section 363 sale—is indeed a "core matter" by statute, under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O). But more fundamentally, it is a matter which bankruptcy judges have the constitutional power to decide and enter final orders, in furtherance of their *in rem* **jurisdiction**, as my earlier order authorizing the sale of property then owned by Old GM likewise was.

*In re Motors Liquidation Co.*, 522 B.R. 13, 26-27 (Bankr. S.D.N.Y. 2014) (emphasis in original); *see also In re Christ Hospital*, 502 B.R. 158, 185 (Bankr. D. N.J. 2013) ("This court's jurisdiction to interpret and enforce its sale and confirmation orders is historic and unimpeded by *Stern v. Marshall* or other recent developments in the law.").

68.    Accordingly, the resolution of the Motions to Enforce is a core matter, and the Court unquestionably had jurisdiction to enter the Judgment.  Any relief sought by the Bledsoe Plaintiffs in this regard should be denied.

### G.     The Bledsoe Plaintiffs Are Bound by the Judgment

69.     The Bledsoe Plaintiffs assert, just as counsel did in his May 13 Letter (and which relief was summarily denied), that they are not bound by the Judgment because they were "precluded from participating in the 'threshold issues[.]'" Bledsoe Brief, at 24.  They are, once again, wrong—the Bledsoe Plaintiffs are bound by the Judgment.  At no time was any party prohibited from using counsel of their choice in this matter.  In addition, this Court has never limited the proceedings relating to the Four Threshold Issues to only the Identified Parties.  Indeed, all plaintiffs whose complaints were the subject of the Motions to Enforce and who were served with those Motions, including the Bledsoe Plaintiffs, had the opportunity to file a brief and present oral argument on the Four Threshold Issues.  The only caveat for them was that they had to comply with the administrative directives of the Court to first consult with Designated Counsel and not make repetitive arguments.  The Court made this point at the very first conference in this matter:

> I don't want repetition, and that includes making the same point in different ways.  I need to hear from anybody who thinks those three firms [*i.e.*, Designated Counsel] aren't good enough why that's so, or conversely why they're not raising issues that need to be addressed.  That's not to say that anybody who thinks up anything those firms couldn't can't be heard, but I need to know why and what's the problem.

May 2, 2014 Transcript, at 13:1-13:8.

70.     The ability of all parties to participate in proceedings relating to the Motions to Enforce was likewise confirmed in the May Scheduling Order:

> nothing in this Order is intended to or shall preclude any other Plaintiff's counsel from taking a position in connection with any of the matters set forth in paragraphs 2, 3 and 6 above, PROVIDED that any other counsel who wishes to be heard orally with respect to such position at the Conference on July 2 shall submit and electronically file, no later than noon on July 1, a letter to the Court (with copies to all Identified Parties) summarizing the points he or she will wish to make; and PROVIDED FURTHER that any counsel who has failed to do so will not be heard orally at the July 2 Conference.

*Id.*, p. 6.[12]  Thus, contrary to the Bledsoe Plaintiffs' assertions, the Motions to Enforce and the

resolution of the Four Threshold Issues affected ***all plaintiffs*** whose complaints were the subject

of the Motions to Enforce and who were served with those Motions, including the Bledsoe

Plaintiffs.

71.    The argument that the Judgment is not binding on the Bledsoe Plaintiffs is

particularly unavailing given that their counsel (and his prior co-counsel) filed pleadings and

letters in connection with this contested matter,[13] and counsel made appearances before the Court

in connection therewith.[14]  The fact that the Bledsoe Plaintiffs ultimately decided not to file a

brief, or request oral argument in connection with the hearing on the Four Threshold Issues, was

their choice to make.  But that choice does not exempt the Bledsoe Plaintiffs from the rulings in

the Judgment.

72.    The Bledsoe Plaintiffs appear to argue in their pleadings that they have the right

to re-litigate matters already decided by the Court; this argument has no basis and should be

rejected out of hand.  The Court's prior orders were intended to avoid this precise result.  *See,*

*e.g.*, *Endorsed Order*, dated April 22, 2014 [Dkt. No. 12627] ("As at the original June 2009 sale

---

[12]    Paragraph 2 of the May Scheduling Order concerned the schedule for the Threshold Issues; Paragraph 3
concerned the process for the "fraud on the court" issue; and Paragraph 6 concerned the identification of non-
Threshold Issues.

[13]    *See, e.g.*, Dkt. No. 12737 (Endorsed Order Regarding Letter by Mr. Peller's co-counsel, Daniel Hornal); Dkt.
Nos. 12761, 12766, 12769, 12777, 12783 (Letters filed by Mr. Hornal);  Dkt. No. 12774 (Motion to Dismiss
Party filed by Mr. Hornal); Dkt. No. 12788 (Response filed by Mr. Peller); Dkt. Nos. 12821, 12830 (Letters
filed by Mr. Peller); Dkt. No. 12822 (Notice of filing Counter-Order by Mr. Peller); Dkt. No. 12828
(Supplemental Notice of Counter-Order filed by Mr. Peller); Dkt. No. 12839 (Notice of Appeal filed by Mr.
Peller); Dkt. No. 12870 (Motion to Dismiss Party filed by Mr. Peller); Dkt. No. 12871 (Motion to Amend filed
by Mr. Peller); Dkt. No. 12872 (Motion for an Order of Abstention filed by Mr. Peller); Dkt. No. 12883
(Amended Motion to Dismiss Party filed by Mr. Peller); Dkt. No. 12948 (Memorandum of Law Regarding No
Stay Pleading filed by Mr. Peller); Dkt. No. 13002 (Amended Notice of Appeal filed by Mr. Peller); Dkt. No.
13004 (Notice of Appeal filed by Mr. Peller); Dkt. Nos. 13005 and 13007 (Motions Seeking Leave to Appeal
filed by Mr. Peller).

[14]    *See, e.g.,* Dkt. No. 12858 (Order Admitting Mr. Peller to Practice *Pro Hac Vice*); Transcript of August 5, 2014
Hearing (appearance by Mr. Peller).

hearing, those with the same or substantially similar positions are to band together and to designate one of their number who will speak for the group."); *Administrative Order*, dated January 13, 2015 [Dkt. No. 13044] ("Counsel other than New GM counsel, Designated Counsel and GUC Trust Counsel are to consult with counsel for the entity most aligned with their interests to ascertain whether their oral argument needs can be satisfied by counsel for the most closely aligned entity. If, after such consultation, any other party wishes oral argument, that party will be heard orally only if (a) that party has filed a brief (other than an unqualified joinder) and (b) writes the Court, no later than noon on Tuesday, January 27, (i) requesting time for oral argument; (ii) stating the amount of time requested; and, most importantly, (iii) stating the reasons why argument by one of the most closely aligned counsel would be insufficient . . . .").

73.     Moreover, the Bledsoe Plaintiffs are wrong when they assert that New GM's proposed judgment "recognized" that they are not bound by the Judgment.  New GM's proposed judgment submitted to the Court on May 12, 2015 provided that, *inter alia*, lawsuits (either in whole or in part) should be dismissed with prejudice to the extent they violated the injunction provisions contained in the Sale Order and Injunction as modified by the Decision. *See Letter Regarding Proposed Judgment In Connection To Decision On Motion To Enforce Sale Order, filed May 12, 2014* [Dkt. No 13136].  The lawsuit commenced by the Bledsoe Plaintiffs was expressly set forth in exhibits to New GM's proposed judgment (and they are included in Exhibits "A," "C" and "D" of the Judgment).

74.     Moreover, this Court previously rejected this exact contention:

He further argues, on behalf of the Peller Plaintiffs, that the Court's rulings in the Decision are not binding on them. The Court disagrees. The Peller Plaintiffs had more than ample opportunity to raise contentions Designated Counsel did not raise. And though Mr. Peller's filings were so numerous and frivolous that the Court warned him of the entry of a *Martin–Trigona* order, he still had the right,

under the Court's orders establishing the mechanisms for determination of the Motion to Enforce, to make any points others had not.

*In re Motors Liquidation Co.*, No 09-50026 (REG), 2015 WL 3398398, at *1 (Bankr. S.D.N.Y.

May 27, 2015).

75.    As this Court previously held, the Bledsoe Plaintiffs had a full and fair opportunity to participate in these proceedings.  They are thus bound by the Judgment.

## **CONCLUSION**

76.    The arguments made in the Bledsoe Pleadings have all been made before and rejected by the Court.  Nothing new has been asserted.  This Court warned counsel not to simply reargue issues that already have been decided.  The Bledsoe Plaintiffs' counsel has ignored that admonition.

WHEREFORE, New GM respectfully requests that this Court deny the relief requested in the Bledsoe Pleadings, and grant New GM such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
       July 6, 2015

                       Respectfully submitted,


                         /s/ Arthur Steinberg
                    Arthur Steinberg
                    Scott Davidson
                    KING & SPALDING LLP
                    1185 Avenue of the Americas
                    New York, New York  10036
                    Telephone:    (212) 556-2100
                    Facsimile:     (212) 556-2222

                    Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                    Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                    KIRKLAND & ELLIS LLP
                    300 North LaSalle
                    Chicago, IL 60654
                    Telephone: (312) 862-2000
                    Facsimile: (312) 862-2200

                    *Attorneys for General Motors LLC*