KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------x

**OMNIBUS RESPONSE BY GENERAL MOTORS LLC**
**TO THE NO STRIKE PLEADINGS FILED BY**
**THE STATES OF ARIZONA AND CALIFORNIA**

## TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................... 1

BACKGROUND FACTS ........................................................................................... 4

    **A.** Motions To Enforce Sale Order And Injunction ......................................... 4

    **B.** The State Lawsuits .................................................................................... 4

    **C.** The April 15 Decision and Judgment ......................................................... 5

    **D.** The Form of Judgment Decision ................................................................ 6

    **E.** The Judgment ............................................................................................ 7

ARGUMENT ............................................................................................................. 8

    **A.** The States' Jurisdictional Argument Should Be Rejected .......................... 8

    **B.** The States' Claims Are Predicated On Old GM Conduct, In Violation
          Of The Sale Order And Injunction And This Court's Other Rulings ................... 12

        **1.** The States' Allegations Concerning Old GM's Conduct Form
            The Basis Of Their Claims And Are Not Merely "Contextual" ....................... 12

        **2.** New GM Did Not Assume Any Duties Or Liabilities Relating
            To The Design Or Sale Of Old GM Vehicles Under
            The California And Arizona Consumer Protection Statutes ............................ 15

    **C.** The States Cannot Maintain Their Old GM Conduct
          Allegations Under The Guise Of Imputed Knowledge ............................................ 20

CONCLUSION ........................................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

<u>Case</u>                                                                                          <u>Page(s)</u>

*Ayres v. GMC*,
   234 F.3d 514, 522 (11th Cir. 2000) ....................................................................... 20

*Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*,
   428 B.R. 43 (S.D.N.Y. 2010)................................................................................... 10

*Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.)*,
   Adv. Proc. No. 09–00509, 2012 WL 1339496 (Bankr. S.D.N.Y. Apr. 17, 2012),
   *aff'd*, 500 B.R. 333 (S.D.N.Y. 2013),
   *aff'd*, No. 13-4223-BK, 2014 WL 4653066 (2d Cir. Sept. 19, 2014)..................... 15

*Enyart v. Transamerica Ins. Co.*,
   985 P.2d 556 (Ariz. Ct. App. 1998)........................................................................ 16

*Ferguson v. Corinthian Colleges, Inc.*,
   733 F.3d 928, 933 (9th Cir. 2013) .......................................................................... 17

*Fernandez v. Takata Seat Belts, Inc.*,
   108 P.3d 917 (Ariz. 2005) ...................................................................................... 16

*Handy v. Gen. Motors Corp.*,
   518 F.2d 786 (9th Cir. 1975) .................................................................................. 19

*In re 1031 Tax Grp. LLC*,
   No. 10-cv-2799, 2011 U.S. Dist. LEXIS 33755 (S.D.N.Y. Mar. 29, 2011)............ 11

*In re Cuyahoga Equip. Corp.*,
   980 F.2d 110 (2d Cir. 1992) ................................................................................... 12

*In re Gen. Motors Corp.*,
   407 B.R. 463 (Bankr. S.D.N.Y. 2009)..................................................................... 11

*In re Johns-Manville Corp.*,
   517 F.3d 52 (2d Cir. 2008),
   *rev'd and remanded sub nom. Travelers Indem. Co. v. Baile*y, 557 U.S. 137 (2009).............. 11

*In re Johns-Manville Corp.*,
   600 F.3d 135 (2d Cir. 2010) ................................................................................... 11

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015)............................................ 1, 3, 5, 6, 10, 11, 18, 20, 22

*In re Motors Liquidation Co.*,
   No. 09-50026, 2015 WL 3398398 (Bankr. S.D.N.Y. May 27, 2015) ............... 1, 2, 7, 9, 17, 21

*In re Motors Liquidation Company*,
    514 B.R. 377 (Bankr. S.D.N.Y. 2014) ........................................................................ 12

*In re Portrait Corp. of Am., Inc.*,
    406 B.R. 637 (Bankr. S.D.N.Y. 2009) ........................................................................ 11

*In re Quigley Co., Inc.*,
    676 F.3d 45 (2d Cir. 2012) ........................................................................................ 11

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (Cal. App. 2009) ................................................................... 19

*Martin Marietta Corp. v Gould, Inc.*,
    70 F.3d 768 (4th Cir 1995) ........................................................................................ 21

*Plumlee v. Pfizer, Inc.*,
    No. 13-CV-00414-LHK, 2014 U.S. Dist. LEXIS 23172 (N.D. Cal. Feb. 21, 2014) ............... 17

*Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*,
    327 F.3d 537 (7th Cir. 2003) ..................................................................................... 10

*Robinson v. HSBC Bank USA*,
    732 F. Supp. 2d 976, 988 (N.D. Cal. 2010) .............................................................. 17

*Smith v. LG Elecs. U.S.A., Inc.*,
    No. C 13-4361 PJH, 2014 U.S. Dist. LEXIS 31577 (N.D. Cal. 2014) .............................. 18, 22

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
    971 F.2d 401 (9th Cir. 1992) ..................................................................................... 16

*Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*,
    Adv. Proc. No. 09-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) ............... 14

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014) ........................................................................ 22

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) .............................................................................. 18, 22

*Zerand-Bernal Group Inc. v. Cox*,
    23 F.3d 159 (7th Cir. 1994) ....................................................................................... 10

## Statutes

49 U.S.C. § 30101 *et seq.* ............................................................................................ 19

49 U.S.C. § 30121(b) .................................................................................................... 19

49 U.S.C. § 30163 ................................................................................................................... 19

A.R.S. § 44-1521, *et seq.* ................................................................................................. 7, 15

A.R.S. § 44-1522 .................................................................................................................. 16

A.R.S. § 44-1522(A) ............................................................................................................ 16

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 7, 18

Cal. Bus. & Prof. Code § 17500 ........................................................................................ 7, 17

## INTRODUCTION[1]

The No Strike Pleadings filed by the States of Arizona and California (collectively, the

"**States**") ignore the Court's April 15, 2015 *Decision on Motion to Enforce Sale Order and*

*Injunction* [Dkt. No. 13109] ("**April 15 Decision**")[2] and the Judgment entered in connection

therewith.  These rulings by the Court substantially granted New GM's Motions to Enforce and,

in particular, upheld provisions of the Sale Order and Injunction (as well as the Sale Agreement)

which protect New GM from successor liability or other liability based on Old GM conduct.  The

underlying lawsuits filed by the States (collectively, the "**State Lawsuits**") improperly attempt to

do just that—they expressly allege and rely on Old GM conduct, including how and when Old

GM investigated vehicle issues, as well as Old GM's conduct in the design, manufacture and sale

of Old GM vehicles, in a futile attempt to transform Old GM conduct into New GM liability.

This Court stayed the State Lawsuits after reviewing the allegations about Old GM

conduct in the States' complaints.  In explaining its reasoning, the Court stated:

> Designated Counsel . . . contend[] that the two State Actions assert claims based
> only on New GM conduct—which, if true, would be permissible under the
> Decision. But the Court does not believe that to be true. On their face, the State
> Plaintiffs, like many Ignition Switch Plaintiffs, intermix claims involving pre-
> and post-sale conduct. The California complaint includes at least 18 paragraphs
> alleging events that took place prior to the 363 Sale, and the Arizona complaint
> includes at least 60 paragraphs alleging pre-363 Sale conduct. Reliance on
> allegations of that character was expressly prohibited under the Court's decision.
> And the State Actions' prayers for monetary relief (as contrasted to injunctive
> relief, which is forward looking, and much less prone to rest on Old GM
> conduct), in reliance on pre-sale allegations aggravate the problem.

Form of Judgment Decision, 2015 WL 3398398, at *3.

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Judgment dated June 1,
2015 [Dkt. No. 13177 ] ("**Judgment**") and the Decision Re Form of Judgment dated May 27, 2015 [Dkt. No.
13162] ("**Form of Judgment Decision**"), published as *In re Motors Liquidation Co.*, No. 09-50026, 2015 WL
3398398 (Bankr. S.D.N.Y. May 27, 2015). The "No Strike Pleadings" shall mean the essentially duplicative
filings by the People of the State of California [Dkt. No. 13210] (the "**Calif. No Strike Pldg.**") and the State of
Arizona [Dkt. No. 13211] (the "**Ariz. No Strike Pldg.**") both filed June 16, 2015.

[2]    Published as *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).

The Court advised the States that they had only two options available to them: (i) if they wanted to proceed while the appellate process continued, the States would need to amend their complaints by "pruning their State Lawsuits of allegations relating to Old GM conduct"; or (ii) if the States elected not to amend their complaints, the lawsuits would remain stayed and the States would be required to wait for the appellate process to conclude. Form of Judgment Decision, 2015 WL 3398398, at *3.

Finally, the Court advised the States of the consequences they would face if they chose not to amend their pleadings and attempted to move forward with their cases:

> According to New GM, the States have indicated that they will not amend their State Lawsuits to eliminate reliance on Old GM conduct. The Court does not know that to be true. But assuming that it is, a decision of that character comes with a price – and that price is a stay of the Lawsuit for as long as appropriate as the federal appellate process takes its course. Compliance with the Sale Order and Injunction, or with the Decision and Judgment, is not a matter for the States, or the state courts, to decide. The issues addressed in the Decision were issues properly before the federal courts, and this Court in particular. On matters properly within its purview, the Court cannot permit a disregard of its orders and judgments, or end-runs on its jurisdiction.

*Id.* at *3 n.8.

This Court could not have been clearer as to what the States needed to do. The States chose to ignore the Court's directives and instead, filed the No Strike Pleadings (along with motions to withdraw the reference).[3] The No Strike Pleadings also raise the same arguments that were rejected by this Court, thereby violating the Judgment's directive proscribing re-argument.

On the merits, the contention that the Old GM allegations in their complaints relating to pre-363 Sale conduct are mere "context" is belied by the pleadings themselves. New GM did not

---

[3]    Apparently trying to avoid having this Court decide these issues after having ignored its earlier admonitions, the States have filed motions to withdraw the reference with respect to their No Strike Pleadings. These filings completely contradict the States' earlier position that this Court would decide the issues relating to the Motions to Enforce, which subsumes all issues relating to the Sale Order and Injunction, the April 15 Decision, and the Judgment. This Omnibus Response replies only to the No Strike Pleadings. New GM will file a separate response opposing the motion to withdraw the reference with the District Court.

design or manufacture Old GM vehicles. New GM can be liable only for its own post-363 Sale conduct. That is what the Court held in the Judgment. While the States pretend that they are only alleging New GM conduct, the incorporation of and reliance upon allegations solely related to Old GM's pre-363 Sale conduct proves the opposite. It is only by blurring the critical distinctions between the conduct of separate legal entities (Old GM and New GM) that the States can cite to consumer protection statutes that look to point-of-sale conduct (*i.e.*, Old GM conduct) in an attempt to establish New GM liability for Old GM vehicles. The States tacitly acknowledge that the impermissible intertwining of allegations is necessary. Otherwise, they would have followed the Court's admonition and removed the Old GM allegations via an amended complaint.

Moreover, the States' attempt to import wholesale the allegations of Old GM conduct under the guise of imputing Old GM knowledge to New GM employees must fail because the Sale Order and Injunction is clear that New GM would not be liable for the pre-363 Sale conduct of Old GM employees except in the context of Assumed Liabilities. The April 15 Decision emphasized this point: New GM would not be liable for any claims relying "on the wrongful conduct by Old GM." *In re Motors Liquidation Co.*, 529 B.R. 510, 528 (Bankr. S.D.N.Y. 2015). And, the States have not asserted any claims against New GM based on Assumed Liabilities. The States' claims based on "imputation" ignores these principles; their claims rely on alleged wrongful Old GM conduct as a foundational predicate. Essentially, the imputation argument is a form of successor liability claim dressed up to look like something else (which is proscribed by the Sale Order and Injunction and the Judgment).

In sum, the No Strike Pleadings both violate this Court's directives to the States and lack substantive merit.  The State Lawsuits should remain stayed in their entirety pending the final outcome of the appellate process.

## BACKGROUND FACTS

### A.    Motions To Enforce Sale Order And Injunction

Starting in April 2014, New GM filed a motion to enforce provisions of the Sale Order and Injunction in response to a coordinated effort by various plaintiffs' counsel seeking to hold New GM liable for an alleged defective ignition switch designed and installed by Old GM in certain vehicles.  Those actions were filed throughout the country in violation of the Sale Order and Injunction shortly after New GM's nationwide recall of certain vehicles with the Old GM ignition switch.  The Ignition Switch Actions sought damages for "economic loss" (such as the alleged reduction in value of their several-years-old vehicles).

In response to the next wave of lawsuits related to Old GM recalls unrelated to the ignition switch, on August 1, 2014, New GM filed its second motion styled Monetary Relief Motion to Enforce.  On that same day, New GM filed its third motion styled Pre-Sale Accident Motion to Enforce to respond to the numerous lawsuits filed against it seeking damages for accidents involving Old GM vehicles that occurred prior to the closing of the 363 Sale.

The central question before the Court in the Motions to Enforce was whether the claims asserted against New GM were in violation of the Sale Order and Injunction.

### B.    The State Lawsuits

After the first Motion to Enforce was filed, the Court gave its preliminary view on the applicability of the Sale Order and Injunction to the Ignition Switch Actions.  Notwithstanding, the States thereafter filed the State Lawsuits in state court.  California filed its Lawsuit on June

27, 2014, and Arizona, represented by the same counsel, filed a substantially similar lawsuit in November 2014. The California Lawsuit asserts at least 18 paragraphs based on Old GM conduct. *See, e.g.*, Calif. Compl. ¶¶ 44-54, 56, 58-62, 71, 87, 96, 112-114, 149, 189-191, 196-206. These allegations are not mere background information or "context." Both of California's causes of action in its Lawsuit specifically "reallege[] and incorporate[] by reference all preceding paragraphs" as the foundation of their claims against New GM. *Id.* ¶¶ 253, 265.

The Arizona Lawsuit, in turn, alleges at least 60 paragraphs based on Old GM conduct. *See, e.g.*, Ariz. Compl. ¶¶ 92-94, 99-107, 135-179, 253(a)-(c), 256-259, 285, 288(a)-(l), 289-310. The single cause of action in the Arizona Lawsuit also "realleges and incorporates by reference all paragraphs as though fully set forth herein." *Id.* ¶ 494.

## C.    The April 15 Decision and Judgment

In connection with the Motions to Enforce, the parties and the Court agreed to address four threshold issues ("**Four Threshold Issues**").[4] After extensive briefing and a two-day oral argument, the Court rendered its *Decision on Motion to Enforce Sale Order and Injunction* on April 15, 2015 ("**April 15 Decision**"). *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015). With respect to due process relating to the 363 Sale notice, the Court found that, while publication notice in a 363 Sale is ordinarily satisfactory, it was not sufficient in this case for those consumers whose cars had Ignition Switch Defects. *See id.* at 525.

---

[4]    The Four Threshold Issues were: (1) whether Plaintiffs' procedural due process rights were violated in connection with the Sale Agreement and the Sale Order and Injunction, or alternatively, whether Plaintiffs' procedural due process rights would be violated if the Sale Order and Injunction is enforced against them; (2) if procedural due process was violated, whether a remedy can or should be fashioned as a result of such violation and, if so, against whom; (3) whether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust); and (4) if any or all of the claims asserted in the Ignition Switch Actions are or could be claims against the Old GM bankruptcy estate (and/or the GUC Trust), should such claims or the actions asserting such claims nevertheless be disallowed/dismissed on grounds of equitable mootness.

This Court also found that plaintiffs must demonstrate that they were prejudiced as a result of the allegedly insufficient 363 Sale notice. The Ignition Switch Pre-Closing Accident Plaintiffs were not prejudiced, and the Ignition Switch Plaintiffs were found to be prejudiced, but only with respect to claims based solely on New GM's own conduct, and not on any kind of successor liability or any other act by Old GM (defined in the Judgment as "**Independent Claims**"). *See id.* at 526-27.[5] This Court held that, because of a due process violation relating to the notice of the 363 Sale, the Sale Order and Injunction would be modified to allow the assertion by the Ignition Switch Plaintiffs of such "Independent Claims." Judgment ¶ 4. The Court made clear, however, that notwithstanding the possibility of Independent Claims, the Court would continue to enforce the prohibitions against successor liability and that New GM would not be liable for Old GM conduct: "Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order and Injunction, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand." April 15 Decision, 529 B.R. at 528.

D.    **The Form of Judgment Decision**

When the parties to the Motions to Enforce could not agree on a form of proposed judgment with respect to the April 15 Decision, letter briefs were submitted to the Court. While the States did not submit their own letter brief, Designated Counsel (who is affiliated with counsel representing the States) argued on their behalf that the State Lawsuits should go forward as pled notwithstanding the April 15 Decision because they asserted only Independent Claims. Specifically, in Designated Counsel's letter to the Court, dated May 12, 2015 ("**Designated**

---

[5]    Importantly, the States cannot avail themselves of the due process ruling relating to the 363 Sale notice (and the resulting modification to the Sale Order and Injunction) since they had actual notice of the 363 Sale, filed a timely objection to the Sale Motion, actively participated in the June 2009 Sale Hearings, and never appealed the Sale Order and Injunction.

**Counsel's Letter Brief**"), regarding a proposed form of judgment, they asserted, just as the States are re-arguing here, that "[t]he State Actions assert law enforcement claims for injunctive relief, civil penalties and other available relief against New GM solely for its post-Sale violations of the State consumer protection laws at issue - respectively, Arizona's Consumer Fraud Act (A.R.S. § 44-1521, *et seq.*), and California's Unfair Competition Law ("**UCL**") (Cal. Bus. Code § 17200) and False Advertising Law ("**FAL**") (Cal Bus. Code § 17500)." Designated Counsel's Letter Brief at 4.

On May 27, 2015, the Court entered its Form of Judgment Decision, in which it specifically rejected the position espoused by the States here. *See* Form of Judgment Decision, 2015 WL 3398398 at *3. The Court provided the States with the following options:

> The Court has concluded within the Judgment, however, provisions allowing the State Plaintiffs to choose between maintaining the complaints in their State Lawsuits as they originally drafted them, pending any appeal they might bring, or pruning their complaints of allegations relating . . . to Old GM conduct.

*Id.* While the Court permitted them to file the No Strike Pleadings, it was specifically conditioned on not rearguing issues already decided. The States have ignored this directive.

In its letter brief to the Court regarding a proposed form of judgment, New GM alerted the Court that the States had indicated they would not amend their State Lawsuits. The Court set forth its views and despite being forewarned, the States refused to amend their State Lawsuits to remove the intertwined allegations about Old GM conduct.

**E.    The Judgment**

On June 1, 2015, the Court issued the Judgment, memorializing its rulings set forth in the April 15 Decision. Relevant here, paragraph 12 of the Judgment is directed to the States. Specifically, the Court held that the State Lawsuits "include claims and allegations that are permitted under the [Sale Order and Injunction] Decision and this Judgment and others that are

not." Judgment, ¶ 12(a).  The State Lawsuits were stayed until they were amended, or the Court ("or any higher court, if necessary") determines that they need not be amended.  *Id.*  If the States wished to proceed, they were required to amend their State Lawsuits "on or before June 12, 2015, such that any allegations, claims or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct (including, without limitation, any successor liability theory of recovery) are stricken, and only Independent Claims are pled." *Id.*, ¶ 12(b).  To the extent the States believed that they had a good faith basis to maintain that allegations, claims, or causes of action should not be stricken from their State Lawsuits, they were to file a "No Strike Pleading" (as defined in the Judgment) with the Court, but such pleading "shall not reargue issues that were already decided by the [Sale Order and Injunction] Decision and Judgment." *Id.* ¶ 12(c).  On June 16, 2015, each of the States filed the No Strike Pleadings that, as noted above, reargue positions already rejected by the Court.

## ARGUMENT

### A.    The States' Jurisdictional Argument Should Be Rejected

The No Strike Pleadings assert that this Court does not have jurisdiction to provide "immunity" to New GM for its own post-Sale violations of New GM's own legal obligations. Of course, New GM has never claimed any such immunity, and this Court did not make that holding in its April 15 Decision, expressly modifying the Sale Order and Injunction to permit Independent Claims premised solely on New GM conduct.

Building on that false foundation, the States next assert that the Sale Order and Injunction only prohibits "claims," not allegations, ands argue that the only "claims" in their complaints are against New GM.  But the Court already has rejected this argument:

> Designated Counsel object to [New GM's form of judgment staying the State Lawsuits], contending that the two State Lawsuits assert claims based only on

New GM conduct – which, if true, would be permissible under the [Sale Order and Injunction] Decision.

But the Court does not believe that to be true.  On their face, the States, like many Ignition Switch Plaintiffs, intermix claims involving pre- and post-sale conduct. The California Lawsuit includes at least 18 paragraphs alleging events that took place prior to the 363 Sale, and the Arizona Lawsuit includes at least 60 paragraphs alleging pre-363 Sale conduct.   Reliance on allegations of that character was expressly prohibited under the Court's [Sale Order and Injunction] Decision.

Form of Judgment Decision, 2015 WL 3398398, at * 3.

Obviously, a claim or cause of action can only exist based on allegations that (if proven true) are relevant to both the defendant and the claim being asserted.  The States have purposely and improperly intermixed the pre-363 Sale allegations relating to Old GM conduct into the State Lawsuits because, as a matter of law, New GM cannot be liable under the cited consumer protection statutes for a product it did not design, manufacture and/or sell.  Thus, the States are forced to conflate Old GM with New GM in an attempt to state a viable cause of action against New GM.  Such intermixing of Old GM conduct, however, is exactly what the Court determined was prohibited.

The States argue that this Court *would* have lacked jurisdiction to enter the Sale Order and Injunction "*[i]f* the Sale Order and Injunction had purported to enjoin claims against New GM for its own post-Sale conduct."  Ariz. No Strike Pldg. at 9; Calif. No Strike Pldg. at 11 (emphasis added).  This contention is entirely beside the point. The Court agreed with this argument, and did not extend such protections.  Essentially, the States' jurisdictional argument boils down to a moot point:  the Court cannot do what the Court said it would not do.  The jurisdictional argument also presumes a conclusion regarding what the States' Complaints allege in spite of the fact that the Court already has considered and rejected that conclusion.

The only authority cited in the No Strike Pleadings addressing bankruptcy jurisdiction in the context of a bankruptcy sale is from the Seventh Circuit, and that case is both factually and legally inapposite. In *Zerand-Bernal Group Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994), the plaintiffs filed a products liability suit against the debtor's successor, alleging that the purchaser/successor was liable for a defect in a machine manufactured by the debtor/seller that caused an accident four years after the sale. *Id.* at 161. Were the States advancing a claim for a post-sale injury based on a products liability theory (as the plaintiffs in *Zerand-Bernal* were), their claims would not be barred under the Sale Order and Injunction because New GM assumed such liabilities under the Sale Agreement. In other words, whether New GM would assume responsibility for post-363 Sale accidents involving personal injuries (such as the situation in *Zerand-Bernal* ) was never in dispute. *In re Motors Liquidation Co.*, 529 B.R. at 521. Thus, the *Zerand-Bernal* holding is clearly distinguishable.

Moreover, the Seventh Circuit, in holding that the bankruptcy court exceeded its jurisdictional authority, adopted a limited definition of "interest" for the purposes of Section 363(f). *Zerand-Bernal*, 23 F.3d at 163. That holding is inapplicable for two reasons. First, the Seventh Circuit (in a case the States failed to cite) subsequently adopted a broader view of the meaning of "interest" under Section 363(f). *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003) ("[T]he Code itself does not suggest that 'interest' should be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation."). Second, and crucially, the States' reliance on *Zerand-Bernal* is misplaced because, as the court found in *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43 (S.D.N.Y. 2010), that case is not followed in this District. *See id* at 57 n.17 ("[W]e note that courts in this District have declined to follow the more 'restrictive'

interpretation of section 363(f) evinced in *Zerand–Bernal Group*[.]" (citing *In re Portrait Corp. of Am., Inc.,* 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009))).

The only other case authority the States cite for their jurisdictional arguments involves a channeling injunction.   *Johns-Manville* and its progeny all stand for the proposition that a bankruptcy court lacks the authority to enjoin claims against third parties where such claims either would not impact the bankruptcy estate or stem from the third party's independent wrongdoing to a non-debtor.   *In re Johns-Manville Corp.*, 517 F.3d 52, 65 (2d Cir. 2008), *rev'd and remanded sub nom. Travelers Indem. Co. v. Baile*y, 557 U.S. 137 (2009); *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010); *In re Quigley Co., Inc.*, 676 F.3d 45, 53 (2d Cir. 2012); *In re 1031 Tax Grp. LLC*, No. 10-cv-2799, 2011 U.S. Dist. LEXIS 33755, at *7 (S.D.N.Y. Mar. 29, 2011).   Again, that authority is clearly inapplicable here, as this Court held in its April 15 Decision:

> The Successor Liability Objectors argued that shedding potential successor liability was not permitted under Bankruptcy Code section 363(f). They further argued that section 363(f) "authorize[d] the sale of property free and clear only of 'interests in' property to be sold, not in personam claims against the Purchaser under theories of successor liability." ***They further argued that the Court "lack[ed] jurisdiction to enjoin actions between non-debtor product liability claimants and the Purchaser post-closing since resolution of these claims [would] not affect the Debtors' estates."***   And they argued that the Free and Clear Provisions would violate due process—asserting that individuals who might have future claims for injuries "cannot have received meaningful notice that the bankruptcy proceeding was resolving their rights or a meaningful opportunity to protect those rights, which otherwise might allow a state law cause of action for their injuries."

April 15 Decision, 529 B.R. at 532 (emphasis added).

Importantly, in the 2009 Sale Opinion, the Court considered, but clearly rejected, those contentions and similar ones.   *See generally In re Gen. Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009).   Accordingly, this Court has previously addressed and rejected the argument

that the *Johns-Manville* line of cases limit the Court's jurisdiction in enforcing the "free and clear" provisions of the Sale Order and Injunction.

Finally, the States cite *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)—a case involving a release of certain environmental liability claims—for the proposition that "related to" jurisdiction arises under Title 11 when the claim at issue would have a conceivable effect on the bankruptcy estate. However, this matter is not simply premised on "related to" jurisdiction. "Bankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' '*arising in*' jurisdiction." *In re Motors Liquidation Company*, 514 B.R. 377, 381 (Bankr. S.D.N.Y. 2014) (footnote omitted) (emphasis in original).

**B.    The States' Claims Are Predicated On Old GM Conduct, In Violation Of The Sale Order And Injunction And This Court's Other Rulings**

**1.    The States' Allegations Concerning Old GM's Conduct Form The Basis Of Their Claims And Are Not Merely "Contextual"**

In their No Strike Pleadings, the States acknowledge that they are intermingling Old GM vehicles and New GM vehicles in their underlying allegations and claims. In particular, "[t]he term 'GM vehicles' (or 'GM-branded vehicles') as used in the State Lawsuits is a generic term for GM vehicles—***regardless of whether they were sold by Old GM or New GM***." Calif. No Strike Pldg. at 2 n.4 (emphasis added); Ariz. No Strike Pldg. at 2 n.3 (same); *see also* Ariz. Compl. ¶ 5 n.1 ("The term 'GM-branded vehicles' refers to vehicles manufactured and sold by both New GM, and its predecessor, 'Old GM.'"); Calif. Compl. ¶ 2 (defining "GM-branded vehicles" as "vehicles sold by GM, and by its predecessor, 'Old GM'"). The California Lawsuit contains 33 paragraphs referencing "GM-branded vehicles," *i.e.*, cars manufactured and sold by both New GM *and* Old GM. *See* Calif. Compl. ¶¶ 2, 4-5, 7, 9, 11, 15, 17, 19-20, 22-23, 31-32, 81, 92, 106, 126, 138, 142, 179, 189, 196, 215-16, 223-26, 248, 255, 261, 269. Likewise, the

Arizona Lawsuit contains 47 paragraphs referencing similarly defined "GM-branded vehicles." *See* Ariz. Compl. ¶¶ 5, 8, 9-10, 12, 14, 18-19, 22-23, 48, 79, 81-82, 92, 99, 114-15, 117, 121, 124, 144, 275, 330, 333, 383, 463, 481-82, 485, 488-89, 491-93, 496, 498-501, 503-504, 506-510.

Thus, it is impossible on the face of the Complaints in the State Lawsuits to ferret out which acts or omissions concern Old GM conduct and vehicles and which concern New GM conduct and vehicles. Stated otherwise, nowhere do the allegations specify the claims that are founded solely on post-363 Sale conduct by New GM. It is not the Court's responsibility to identify and isolate the claims relating solely to New GM vehicles and parts, even assuming such necessary distinctions could be determined in the first place. More importantly, as noted, the causes of action incorporate the allegations regarding Old GM conduct by reference, and they form the basis for such claims. That is a violation of the Sale Order and Injunction.

The States' allegations are "dressed up" successor liability claims because, among other reasons, they cite to and rely on the point-of-sale conduct of Old GM. For example, the California Lawsuit alleges that consumers purchased or leased new or used Old GM vehicles without access to safety-related materials. *See* Calif. Compl. ¶ 255. This point of sale conduct is precisely an Old GM conduct allegation which is proscribed by the Sale Order and Injunction and the Judgment.

The State Lawsuits also allege that New GM became aware of the ignition switch defects and other defects in "GM-branded vehicles" "*from the very date of its inception on July 10, 2009*." Calif. Compl. ¶ 11 (emphasis in original); Ariz. Compl. ¶ 19. The States do not allege, however, any specific, independent New GM conduct to which these allegations are relevant, other than that Old GM assets were acquired pursuant to the 363 Sale itself. So too the State

13

Lawsuits allege that New GM "inherited" its knowledge, policies, and practices from Old GM without specifying what knowledge, policies, and products impacted particular New GM conduct that is the bases of the States' claims. *See* Calif. Compl. ¶¶ 33, 199; Ariz. Compl. ¶¶ 102, 119. The States cannot import whole cloth pages and pages of Old GM conduct allegations, then argue it is acceptable to do so—in the face of express prohibitions in the Sale Order and Injunction, and this Court's Judgment—because such Old GM conduct allegations are broadly and generically relevant to what came after. Rather, each of these allegations flout the Sale Order and Injunction's bar on successor liability claims.[6] Whether New GM may or may not have inherited "knowledge" or "practices" from its predecessor is not the pertinent question. Instead, the relevant inquiry is whether New GM assumed *liabilities* or *duties* under the Sale Agreement relating to Old GM vehicles and thereafter engaged in independent conduct that is proscribed by law. Knowledge and practices are only relevant to the extent of such assumed liabilities, duties, and independent conduct.

In sum, as long as their claims relate to and/or arise in whole or in part from the purchase of Old GM vehicles or depend in whole or in part on Old GM conduct, the States cannot escape the Sale Order and Injunction and Judgment. As this Court has already held, if the States truly wish to proceed against New GM they must disentangle their allegations against New GM from those that relate to Old GM conduct, and limit their claimed recovery to liabilities allegedly arising solely from New GM conduct. That the States have not already taken these steps in the face of this Court's clear guidance demonstrates that they cannot do so without negating their asserted claims.

---

[6]  *See* Sale Agreement, § 9.19; Sale Order and Injunction, ¶¶ AA, BB, DD, 6, 7, 8, 10, 46, 47; *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-09803, 2013 WL 620281, at *8 (Bankr. S.D.N.Y. Feb. 19, 2013) ("The Sale Order and Injunction, by which I approved the Sale Agreement, further ensures that New GM would acquire the assets free and clear of successor liability.").

**2.      New GM Did Not Assume Any Duties Or Liabilities Relating
To The Design Or Sale Of Old GM Vehicles Under
The California And Arizona Consumer Protection Statutes**

The No Strike Pleadings say very little about the actual elements of the claims the States

are asserting against New GM, or how proof of those claims would rely solely upon New GM

conduct as opposed to the conduct of Old GM in the design or sale of Old GM vehicles.  As

shown below, each cause of action in the State Lawsuits relates to *point-of-sale* conduct (*i.e.*,

misrepresentations/omissions made in connection with a consumer transaction), which

necessarily encompasses Old GM conduct for Old GM vehicles.

The States also do not allege that New GM manufactured or sold all (or any) of the Old

GM vehicles at issue in the State Lawsuits.  In addition, nowhere in the Sale Order and

Injunction or Sale Agreement did New GM assume any liability under the Arizona or California

consumer protection statutes relied on by the States here for claims allegedly arising from the

purchase by consumers of Old GM vehicles.  *See* Sale Agreement § 2.3(b)(xi) (providing that

Old GM would retain "all Liabilities to third parties for Claims based upon Contract, tort, or any

other basis").  The States argued for a different position at the Sale Hearing.[7]  They lost on that

point and never appealed the Sale Order and Injunction.

The State Lawsuits reflect precisely the type of pre-363 Sale and post-363 Sale claim-

lumping that this Court prohibited in its Judgment and Form of Judgment Decision.  For

example, Arizona seeks recovery under the Arizona Consumer Fraud Act, A.R.S. § 44-1521 *et*

*seq*., which prohibits "[t]he act, use or employment by any person of any deception, deceptive or

---

[7]      *See Castillo v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–00509, 2012 WL 1339496,
at *5 (Bankr. S.D.N.Y. Apr. 17, 2012), *aff'd,* 500 B.R. 333 (S.D.N.Y. 2013), *aff'd*, No. 13-4223-BK, 2014 WL
4653066 (2d Cir. Sept. 19, 2014) ("The AGs urged in argument before the Court that New GM take on
liabilities broader than those that would be undertaken under the Sale Agreement as initially proposed—
including implied warranties, additional express warranties, statutory warranties, and obligations under Lemon
Laws.").

unfair act or practice…*in connection with the sale or advertisement of any merchandise*….”
A.R.S. § 44-1522(A) (emphasis added).  Based on this statute’s plain language, courts have
interpreted the Act to supply consumers with a cause of action only against merchants who
provided them with goods or services.  *See Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 563
(Ariz. Ct. App. 1998) (“The purpose of the Arizona Consumer Fraud Act is to eliminate unlawful
practices *in merchant-consumer transactions*.” (emphasis added)); *Sutter Home Winery, Inc. v.
Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (“The clear intent of [A.R.S. § 44-
1522] is to protect unwary buyers from unscrupulous *sellers*.” (emphasis added)); *Fernandez v.
Takata Seat Belts, Inc.*, 108 P.3d 917, 919 (Ariz. 2005) (dismissing plaintiff’s Arizona Consumer
Fraud Act claim alleging defective seatbelts because defendants did not manufacture or sell
plaintiff’s vehicle).

The allegations in the Arizona Lawsuit, therefore, necessarily relate to and are based in
substantial part on Old GM’s sales of its vehicles—cars that were not designed, manufactured,
and/or sold by New GM.  As discussed above, the Arizona Lawsuit intentionally defines “GM-
branded vehicles” as “vehicles manufactured and sold by both New GM, and its predecessor,
‘Old GM.’”  Ariz. Compl. ¶ 5 n.1.  Indeed, out of the sixteen paragraphs of the Lawsuit that
specifically address the Arizona Consumer Fraud Act, twelve of those paragraphs contain
allegations concerning the conflated “GM-branded vehicles.”  *See id*. ¶¶ 496, 498-501, 503-504,
506-510.  For example, the Arizona Lawsuit alleges that, *“[f]rom the date of its inception in July
11, 2009*, New GM knew of many serious defects affecting many models and years of GM-
branded vehicles.”  *Id.* ¶ 499 (emphasis added).  By definition, this allegation solely concerns
Old GM vehicles, not vehicles sold by New GM.

By contrast, not a single allegation in the section addressing the Arizona Consumer Fraud Act deals exclusively with cars manufactured and sold by *New GM*.  Moreover, Arizona seeks disgorgement of profits and gross receipts for parts and vehicles sold by Old GM.  *See id.*, Prayer for Relief.  This request for relief magnifies and reinforces this Court's conclusion that the States impermissibly "intermix claims involving pre- and post-sale conduct" (Form of Judgment Decision, 2015 WL 3398398, at *3), since the profits and gross receipts from the sale of Old GM vehicles were obtained by Old GM, not New GM.

The claims in the California Lawsuit also depend on point-of-sale conduct and, therefore, suffer from the same infirmities as the Arizona Lawsuit.  For instance, California's False Advertising Law ("FAL") provides:

> It is unlawful for any…corporation…with intent directly or indirectly to dispose of real or personal property or to perform services…**to induce the public to enter into any obligation** relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state…any statement, concerning that real or personal property or those services…which is untrue or misleading….

Cal. Bus. Prof. § 17500 (emphasis added).  Construing this statutory language, the Ninth Circuit has held that the FAL "makes unlawful 'untrue or misleading statements' designed to induce the purchase of goods and services."  *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 933 (9th Cir. 2013); *see also Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 988 (N.D. Cal. 2010) ("The FAL seeks to prohibit false and misleading representations made in an effort to induce the public to buy goods or services."); *Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 U.S. Dist. LEXIS 23172, at *23 (N.D. Cal. Feb. 21, 2014) (observing that the "FAL proscribe[s] misleading, false, or otherwise deceptive practices or statements in transactions for the sale or lease of goods to consumers.").

This legal predicate is fatal to California's argument here because the California Lawsuit, like the Arizona Lawsuit, does not confine its allegations to New GM conduct or New GM

vehicles and parts. Instead, in the section addressing the FAL claim, the California Lawsuit purposefully refers to "GM-branded vehicles" as a collective whole covering both Old GM and New GM vehicles. Calif. Compl. ¶ 269.[8] Because New GM was a stranger to transactions involving Old GM vehicles and parts sold before the 363 Sale, it cannot be held liable under the FAL even if it possessed *post-sale* knowledge of a defect. *See Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 U.S. Dist. LEXIS 31577, at *36 (N.D. Cal. 2014) (dismissing FAL claim where plaintiff failed to "plead any facts showing that defendants were aware of the alleged defects or misstatements ***at the time of sale***" (emphasis added)). Nor did New GM undertake any duty or liability as a defined Assumed Liability pursuant to the Sale Agreement that Old GM may have had in connection with the sale of used Old GM vehicles on the secondary market. *In re Motors Liquidation Co.*, 529 B.R. at 570-572.

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Like the FAL, liability under the UCL is tied to the point of sale of goods or services. To recover under the UCL, a plaintiff must show—as with an FAL claim— that the defendant "was aware of the alleged defect ***at the time the [products] were sold***." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146 (9th Cir. 2012) (emphasis added). Again, because the California Lawsuit contains and relies upon allegations relating to Old GM's sale of its vehicles and parts, any UCL claim predicated upon an alleged misrepresentation or willful omission by Old GM to induce the purchase of those vehicles or parts is necessarily a claim predicated upon duties and obligations New GM (a non-seller) does not have and never assumed.

---

[8]    The California Lawsuit also refers to "used 'GM certified' Defective Vehicles," (*id.* ¶ 273), but does not allege that New GM sold such vehicles.

Additionally, a UCL plaintiff must "establish that members of the public were likely to be deceived by the advertising." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (Cal. App. 2009). This inquiry "focuses on a reasonable consumer who is *a member of the target population*," not "others to whom [the advertisement] is not primarily directed." *Id.* (emphasis added). Here, California's UCL claims are not confined to the sale and advertising of New GM vehicles—they concern "GM-branded vehicles" as a whole. *See* Calif. Compl. ¶¶ 255, 261.

Lastly, the States do not explain how any of the Arizona and California consumer protection statutes at issue impose a continuing legal duty upon New GM concerning Old GM vehicles and parts, nor do they identify what such a duty entails, how it came into being, and the cases supporting that duty. At best, the States contend generically that New GM had ongoing obligations under a federal statute, the National Traffic and Motor Vehicle Safety Act ("**Safety Act**"), 49 U.S.C. § 30101 *et seq.*, to "monitor" all GM-branded vehicles on the road. *See* Ariz. No Strike Pldg. at 13, 19 & n.1; Calif. No Strike Pldg. at 15, 20-22. Notably, they cite no legal authority imposing such a generic duty.

In fact, however, New GM agreed to certain reporting and recall-related obligations to the National Highway Traffic Safety Administration ("**NHTSA**") under the Safety Act. *See* Sale Agreement 6.15(a); Sale Order and Injunction ¶ 17. Any duty it undertook, however, was limited and owed to the federal government—not to private citizens or state governments purporting to act on behalf of private citizens. *See* 49 U.S.C. § 30121(b) (providing that manufacturers that violate Safety Act are "liable to the United States Government"); 49 U.S.C. § 30163 (authorizing *United States* Attorney General to enforce the Safety Act and notification obligations); *see also Handy v. Gen. Motors Corp.*, 518 F.2d 786, 788 (9th Cir. 1975) (*per*

*curium*) (stating that the Safety Act confers no private right of action); *Ayres v. GMC*, 234 F.3d

514, 522 (11th Cir. 2000) (same). The States offer no authority to the contrary, nor can they.[9]

**C.    The States Cannot Maintain Their Old GM Conduct
       Allegations Under The Guise Of Imputed Knowledge**

Although this Court has plainly held that Old GM conduct allegations and dressed-up

successor liability claims are barred, the States seek to end-run this holding and the Judgment by

arguing that each Old GM conduct allegation should be permitted to remain in their Complaints

because such knowledge should be imputed to New GM.  In doing so, the States fail to explain

(i) what particular knowledge is imputed to (ii) what specific employee for purposes of (iii)

which discrete claim, and then demonstrate (iv) why that allegation meets the standard for

imputed knowledge.  Among other problems, the States' dressed-up successor liability claim

premised upon this imputation argument ignores that the Sale Agreement contemplated that (a)

substantially all of Old GM's employees would be hired by New GM, a start-up, government-

sponsored entity (*see* Sale Agreement § 6.17(a)), and (b) the hiring of such employees would not

transform Retained Liabilities based on Old GM's knowledge and conduct into, essentially, a

new and unexpressed category of Assumed Liabilities of New GM.  Assumed Liabilities was

defined as only those liabilities specifically set forth in Section 2.3(a) of the Sale Agreement;

liabilities that were not specifically set forth were Retained Liabilities.  *See* Sale Agreement ¶

2.3(b).  As the Court reaffirmed in the April 15 Decision, "it is plain that to the extent the

Plaintiffs seek to impose successor liability, or to rely, in suits against New GM, on any

wrongful conduct by Old GM, these are actually claims against Old GM, and not New GM."

529 B.R. at 528.  Thus, allowing Old GM conduct to be pled whole cloth under the guise of

---

[9]    Furthermore, the Safety Act obligation is not contained in the Assumed Liability section of the Sale Agreement.
The Sale Agreement and the Sale Order and Injunction are explicit that the only exception to the "free and clear
of claims" language relates to Assumed Liabilities (which is a contractually defined term that does not include
the Safety Act covenant).

imputed New GM knowledge would eviscerate the restrictions imposed by the Sale Order and Injunction and the Judgment.

The States' legal imputation argument is in fact an admission that their alleged claims are based on Old GM's pre-363 Sale conduct. If the States were to solely rely on New GM's post-363 Sale conduct, as they contend, then there would be no Old GM knowledge that needs to be imputed to New GM. By making the imputation of knowledge argument, the States reveal their true cards, namely that they are pursuing claims against New GM based on Old GM pre-363 Sale conduct. Alleging imputed knowledge acquired by employees of Old GM is nothing but "alleging events that took place prior to the 363 Sale" and thus basing claims on allegations that the Court has already "expressly prohibited." Form of Judgment Decision, 2015 WL 3398398, at *3.

In addition to the foregoing, the States misstate the standard for the legal fiction of imputing knowledge in an agent-principal relationship where the alleged imputed knowledge arises from the agent's prior employment by a third party and thus prior to the establishment of the current agent-principal relationship. Those rules clearly do not apply in the context of a 363 Sale where the buyer is expressly held not responsible for the seller's actions, conduct and knowledge.[10]

Indeed, to the extent the April 15 Decision addressed imputed knowledge at all, the Court explicitly found that its conclusion that certain plaintiffs were known creditors was "based ***not*** (as the States argue) ***on any kind of automatic or mechanical imputation drawn from agency doctrine (which the Court would find to be of doubtful wisdom)***." April 15 Decision, 529 B.R.

---

[10]   The States erroneous reliance on imputation of alleged knowledge by employees of Old GM (seller) who failed to disclose material facts to New GM (as buyer) ignores established case law involving the adverse interest exception to imputation. *See Martin Marietta Corp. v Gould, Inc.*, 70 F.3d 768 (4th Cir 1995).

at 558 n.154 (emphasis added).[11]    In support, the Court cited *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 389 (Bankr. S.D.N.Y. 2014) (Gerber, J.), a case in which the Court previously rejected arguments of automatic imputation of a CEO's alleged intent under ordinary agency rules.    *Id*.    So too here, the States cannot simply rely on a theory of imputed knowledge from Old GM employees to end-run the Sale Order and Injunction's bar on successor liability claims and reliance on Old GM conduct.[12]

## **CONCLUSION**

For all the foregoing reasons, the States' No-Strike Pleadings should be denied and the State Lawsuits should remain stayed pending appeal.

---

[11]    In the same vein, the Court further held that automatic imputation alone is not sufficient for purposes of a claim of fraud on the court.  *April 15 Decision*, 529 B.R. at 597.  The Court also observed as a more general matter that a debtor typically has knowledge of contractual claims, but not of non-contractual claims (such as the ones asserted here by the States).  *Id.* at 545, n.100.

[12]    The States' imputation of knowledge argument suffers from other critical deficiencies which need not be decided at this time.  For example, their argument misses the mark because a later imputation of knowledge is simply irrelevant when, as here, the claims require knowledge *at the time of the sale* of the Old GM vehicle.  *See, e.g.*, *Wilson*, 668 F.3d at 1146; *Smith*, 2014 U.S. Dist. LEXIS 31577, at *36.  By way of further example, the States' imputation argument ignores the stricter *scienter* requirement of the claims they have asserted.  Ariz. Compl. ¶¶ 497, 498, 504, 507 (intent required); Calif. Compl. ¶¶ 5, 256, 261, 266, 272, 274 (intent required). The States also neglect to mention that the awareness of customer complaints about a product is not to be equated with having knowledge of a product defect.  *See, e.g.*, *Wilson*, 668 F.3d at 1147-48.  New GM reserves the right to fully brief these and related issues at a later time—should the Court reverse its prior orders and allow the States to proceed with their disguised successor liability claims.

Dated: New York, New York
      July 10, 2015

                    Respectfully submitted,

                    _____/s/ Arthur Steinberg_____
                    Arthur Steinberg
                    Scott Davidson
                    KING & SPALDING LLP
                    1185 Avenue of the Americas
                    New York, New York  10036
                    Telephone:     (212) 556-2100
                    Facsimile:      (212) 556-2222

                    Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                    Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                    KIRKLAND & ELLIS LLP
                    300 North LaSalle
                    Chicago, IL 60654
                    Telephone: (312) 862-2000
                    Facsimile: (312) 862-2200

                    *Attorneys for General Motors LLC*