UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re                                                          :    Chapter 11
                                                               :
MOTORS LIQUIDATION COMPANY, *et al.*,                          :    Case No.: 09-50026 (REG)
      f/k/a General Motors Corp., *et al.*                 :
                                                               :    (Jointly Administered)
             Debtors.                              :
---------------------------------------------------------------x

DECISION ON MOTION FOR 60(B) RELIEF (DORIS PHILLIPS)

APPEARANCES:

JOSH DAVIS LAW FIRM
*Counsel for Doris Phillips*
1010 Lamar, Suite 200
Houston, Texas 77002
By:    Joshua P. Davis (argued)

GOODWIN PROCTER, LLP
*Designated Counsel and Counsel for*
   *Pre-Sale Accident Victim Plaintiffs*
The New York Times Building
620 Eighth Avenue
New York, New York 10018
By:    William P. Weintraub, Esq. (argued)

KING & SPALDING LLP
*Counsel for General Motors LLC (New GM)*
1185 Avenue of the Americas
New York, New York 10036
By:    Arthur J. Steinberg, Esq. (argued)

GIBSON, DUNN & CRUTCHER, LLP
*Counsel for Wilmington Trust Company as*
   *GUC Trust Administrator*
200 Park Avenue
New York, New York 10166
BY:    Lisa H. Rubin, Esq. (argued)

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

In this contested matter in the chapter 11 case of Debtor Motors Liquidation Company, previously known as General Motors Corporation ("**Old GM**"), Doris Powledge Phillips—who had an allowed claim in Old GM's chapter 11 case after a settlement with Old GM, which she later sold to a hedge fund, after she lost her husband and four children in a tragic prepetition car accident in 2005—moves, pursuant to Fed. R. Civ. P. 60(b)(6), or alternatively Rules 60(b)(3) or 60(d),[1] to be relieved of her earlier settlement as a consequence of alleged Old GM fraud in complying with discovery obligations before she entered into her settlement. She thereby seeks to recover additional sums from Old GM's General Unsecured Creditors Trust (the successor to Old GM under Old GM's liquidating plan of reorganization, with whom she previously filed a claim) and, apparently (though the legal theory for doing so is never fleshed out), General Motors LLC ("**New GM**")—the acquirer of most of Old GM's assets in a section 363 sale back in July 2009—beyond the amount she already received when she sold her claim.

The GUC Trust and New GM oppose her motion, arguing that having sold and assigned away her claim (to an entity that has had its own rights to distributions on that claim), Mrs. Phillips no longer has standing to assert it, and that further relief would result in a double recovery on the claim. In additional points, they argue further that relief under Rule 60(b)(3) is barred by the passage of time and that relief under Rules 60(b)(6) and 60(d) is unavailable, and that Mrs. Phillips expressly released any additional claims, known or unknown, when she entered into her settlement.[2]

---

[1] With exceptions not relevant here, Fed. R. Civ. P. applies 60 applies in cases under the Bankruptcy Code. See Fed. R. Bankr. P. 9024.

[2] The GUC Trust additionally argues that mootness doctrine prevents tapping the assets of the GUC Trust to satisfy additional claims, and New GM argues that it remains protected from successor liability claims under the 363 Sale Order. Unless this Court's recent rulings to that effect are reversed, the GUC Trust and

-2-

Fully recognizing the tragedy of Mrs. Phillips' circumstances (and suspecting that no amount of money could fully provide recompense for her loss), the Court is constrained to agree with the GUC Trust and New GM on their first contention, without needing to reach any of the others. Thus (with the Court once again noting its sympathy for her loss), Mrs. Phillips' motion must be, and is, denied. The Court's Findings of Fact and Conclusions of Law in connection with its determination follow.

### Findings of Fact

The facts necessary to determine this controversy are undisputed, and there thus was no need to conduct an evidentiary hearing. Background facts involving Old GM's chapter 11 filing and its 363 sale, and the provisions of the 363 Sale Agreement and Sale Order, and related matters, likewise are undisputed. Those background facts are set forth in the *Motion to Enforce Decision*.

As additional facts the Court finds that Doris Phillips is the widow of Adam Powledge. Mr. Powledge died, along with their 4 children (Rachel, Isaac, Christian, and Jacob), in an accident involving a 2004 Chevy Malibu in October 2005. The vehicle was manufactured long before the 2009 filing Old GM's chapter case. The 2005 accident likewise took place well before Old GM's chapter 11 filing.

In September 2007, Mrs. Phillips (who then and at the time of most of the relevant events still had her earlier name, Mrs. Doris Powledge) filed a lawsuit relating to the accident, which Old GM defended until the time of its chapter 11 filing. Mrs. Phillips now alleges that Old GM failed to appropriately respond to her discovery requests during the course of the litigation. That

---

New GM are correct in each of those respects. *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015) ("***Motion to Enforce Decision***"). But Mrs. Phillips has not challenged those rulings at this time, and the parties here have focused solely on the threshold issues addressed above, which would bar upsetting the settlement, and securing any additional recovery, even if any of the Court's recent rulings were incorrect.

allegation is disputed, but the Court assumes it to at least represent an issue she wishes to pursue, which is sufficient for the purposes of this analysis.[3]

After Old GM's chapter 11 filing, Mrs. Phillips' lawsuit became subject to the automatic stay. Any claims arising from that accident were classic prepetition claims. Mrs. Phillips received actual notice of the 363 sale, and also received actual notice of the bar date. She filed a proof of claim (#44614, in the amount of $250 million) for her losses associated with the accident. Three other proofs of claim (##44615, 44616, and 44617, also for $250 million each), were filed by her three adult step-children, Amber, Austin, and Mary Powledge.

Old GM and Mrs. Phillips then engaged in mediation, and her action was settled in August 2010. New GM, which did not exist at the time of the accident, and which did not contractually assume liability for prepetition accidents, was not a party to the mediation.

Under the settlement (which was not presented to the Court for approval, nor, for that reason, approved by the Court),[4] all four claims would be treated as allowed general unsecured

---

[3] Though it ultimately does not matter, by reason of the particular issues here, it is unclear whether the accident was caused by an ignition switch defect. Mrs. Phillips added "unintended ignition key rotation" (which was the subject of a June 30, 2014 recall) to her Second Amended Complaint. But after the date of that recall, at a hearing before this Court on August 18, 2014, her counsel stated, in substance, something inconsistent with that:

> With regard to my client's specific recall that we think is the actual cause of the wreck, which is a May 15th [sic] recall that does not impact or implicate the ignition switch, but is solely about a brake wiring harness that has not been the subject of the Valukas report . . . .

Hr'g Tr. Aug. 18, 2014, 78:3-7, ECF #12899.

[4] Under an earlier order entered in this chapter 11 case, Old GM was authorized to settle disputes related to proofs of claims without Court approval if the settled amounts were within certain limits and the Creditors Committee consented. Claims settled for Allowed Claim amounts of between $1 million and $50 million were within those limits. Mrs. Phillips' settlement, which was within that range, met the requirements of that order and thus was not approved by this or any other Court.

claims against Old GM for a combined total of $3.975 million. Of that, Mrs. Phillips' claim was allowed in the amount of approximately $2.7 million.[5]

The settlement further provided for distributions on account of the allowed claims to be made in accordance with Old GM's chapter 11 plan, and provided that upon receipt of those distributions, the claims would be "deemed satisfied in full." The Settlement Agreement also provided, among other things, that Mrs. Phillips would have no further right to payment from Old GM, any other of the Debtors, the Old GM estate, or any of their successors, which were defined as "the Debtor Parties." It also provided that she waived any and all claims against any of the Debtor Parties, and was barred from asserting any claims then in existence, whether known or unknown, and whether or not asserted.

Eleven days thereafter, Mrs. Phillips sold her claim, assigning it to Dover Master Fund II ("**Dover Fund**"),[6] though oddly, that fact is never mentioned in her motion. The other Powledge claimants also sold and transferred their claims to Dover Fund.

In connection with the assignment of her claim, Mrs. Phillips signed two documents. In the first, the Assignment itself[7] (which was not previously referenced in or attached to any of Mrs. Phillips' written submissions on this motion, but was later provided in redacted form, at the Court's request), she stated:

- She "absolutely and unconditionally sells, transfer [*sic.*] and assigns unto [Dover Fund] its successors

---

[5] *See* Stipulation and Settlement Resolving Claim No. [44614, 44615, 44616, 44617], dated 8/9/10 (allowing Mrs. Phillips' claim #44614 in the amount of $2,699,074.08, and the others' claims ##44615, 44616, and 44617 in the amount of $490,740.74, $490,740.74 and $294,444.44, respectively).

[6] Dover Fund was managed by Longacre Management, LLC, a hedge fund investing in distressed debt, which acted on Dover Fund's behalf in acquiring Mrs. Phillips' claim. She sold her claim to Dover Fund for an amount that may be discerned in the record but may be regarded as proprietary by Longacre Management. If it mattered, the Court could disclose the purchase price here. But the Court does not need to. The fact that she sold her claim—assigning all of her rights to it—is what matters here, not the amount for which she sold it.

[7] Assignment of Claim to Dover Master Fund II, L.P. (the "**Assignment**").

-5-

and assigns, all rights, title and interest in and to the claim[s] ... as more fully defined below (the 'Claim') ...";

- The term "Claim" would include, "without limitation," "all of Mrs. Phillips' right, title and interest in and to any Proofs of Claim if filed,"[8] "all rights to receive principal, interest, ... fees, expenses, damages, penalties and other amounts in respect of or in connection with any of the foregoing," and "all other claims, causes of action ... and other rights arising under or relating to any of the foregoing, including without limitation, all of [her] rights to receive cash, securities, instruments and/or other property or distributions issued in connection with any of the foregoing ...";

- Dover Fund "shall be deemed to be the owner of the Claim" subject to the terms of the assignment;

- She was selling Dover Fund "good and sole legal beneficial title to the Claim free and clear of any ... claims of any kind or nature whatsoever";

- That the basis for her Claim was amounts owing from Old GM "arising from the Wrongful Death claim filed in the 10th Judicial Court, Galveston County TX as Cause No. 07-cv-1040 and settled in accordance with the [Settlement]";

- Dover Fund "shall be the holder of record of the Claim";

- "Other than the Proof of Claim, no proof of claims has been or will be filed by or on [her] behalf"; and

- If she thereafter received any "payments or distributions ... with respect to or relating to the Claim," she was obligated to accept them as Dover Fund's agent, hold them in trust for Dover Fund's "sole benefit," and to deposit them into Dover Fund accounts within prescribed time limits.

---

[8] Her proof of claim listed her prepetition lawsuit against Old GM as the basis for her claim.

In the second document, Mrs. Phillips countersigned an Evidence of Transfer of Claim ("**Evidence of Transfer**"), filed with the Court.[9] In the Evidence of Transfer, she stated, consistent with the Assignment just quoted, that she did "unconditionally and irrevocably, sell, transfer and assign" to Dover Fund, "all rights, title and interest in and to the claim of Seller . . . ."

Several distributions have already been made to Dover Fund on Mrs. Phillips' claim.

Discussion

New GM and the GUC Trust argue that Mrs. Phillips' lack of standing, by reason of the assignment away of the entirety of her claims, prevents the Court from reaching the remainder of Mrs. Phillips' arguments. The Court must agree.[10]

Mrs. Phillips' ability to seek Rule 60(b) relief with respect to her earlier filed claim,[11] and to recover on that claim—all in the context of her having assigned away all of her rights with respect to the claim—present related, but analytically distinct, issues. As the text of Rule 60(b) makes clear, relief is available only to "a party or a party's legal representative."[12] Although Mrs. Phillips was a party to the 2007 Action, and was a party to a previously unresolved and

---

[9]    Evidence of Transfer of Claim, ECF #6793.

[10]   In neither Mrs. Phillips' motion nor her reply was a legal basis articulated upon which New GM, which came into existence long after the accident, would be liable for her loss. Presumably her counsel envisioned a theory based on a species of successor liability or other theory under which New GM would be responsible for Old GM's acts. But theories of this character cannot be asserted under the Court's recent opinions in *the Motion to Enforce Decision*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015), and *In re Motors Liquidation Co.*, --- B.R. ---, 2015 Bankr. LEXIS 1751, 2015 WL 3398398 (Bankr. S.D.N.Y. May 27, 2015) For this additional reason, apart from those applying to both the GUC Trust and New GM, the Court cannot grant Mrs. Phillips relief vis-à-vis New GM.

[11]   Because the allowed claim Mrs. Phillips previously received was below the level for which Court approval was required, the Court never issued any actual order that might be vacated or modified if 60(b) relief were granted. And Mrs. Phillips expressly disclaims seeking an order from this Court undoing either earlier allowance of her claim or clawing back distributions to Dover Fund on account of the allowed claim. *See* Hr'g Tr. May 7, 2015, 29-30, ECF #13151. But the GUC Trust and New GM have not raised either of these as a defense (other than to argue that distributions to both Dover Fund and Mrs. Phillips would result in double liability and a double recovery), and the Court assumes, without deciding, that they do not necessarily result in additional impediments to Rule 60(b) relief.

[12]   Fed. R. Civ. P. 60(b).

undisputed Claim No. 44614, she no longer is a party in the Old GM chapter 11 case. She "unconditionally and irrevocably" transferred "all rights, title and interest in and to" that claim (her only claim in Old GM's chapter 11 case) to Dover Fund, and recognized Dover Fund as "the sole owner and holder of the Claim" in a filing with this Court on August 20, 2010.[13] The party with respect to that claim is no longer Mrs. Phillips; it now is Dover Fund.

Under those circumstances, Mrs. Phillips can no longer obtain 60(b) relief with respect to her former claim. In the *Brittania Bulk* securities litigation,[14] Judge Cote encountered a situation in which a class member in a securities litigation (whose name was Wildes), who had unsuccessfully sought to be the lead plaintiff (and where an alternative plaintiff chosen as lead plaintiff (whose name was Wahl) thereafter dismissed it), filed a 60(b) motion to reopen the case, to choose the movant Wildes as the lead plaintiff, and to grant leave for Wildes to file an amended complaint. In her decision, later affirmed by the Circuit, she denied the motion. One of the reasons was that "[Wildes] is neither a 'party' nor a 'legal representative' of a party in this action."[15] While she recognized that the principles governing standing under Rule 60 are sufficiently flexible to permit a finding of standing where a non-party was "sufficiently connected and identified with the suit,[16] the "general principle remains that non-parties may not obtain relief from judgment pursuant to Rule 60(b)."[17] Here it cannot be said that having sold

---

[13] ECF # 6793.

[14] *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 11254, 2010 WL 446529 (S.D.N.Y. Feb. 9, 2010) (Cote, J.).

[15] 2010 WL 446529, at *2, 2010 U.S. Dist. LEXIS 11254, at *7.

[16] *Id.*

[17] *Id.* She recognized that the Second Circuit had extended standing under Rule 60 to non-parties, but had done so only twice, and each time had expressly limited its holding to the facts. She found that the circumstances of the litigation before her did not resemble those in either of those cases, *see id.*, and the facts here do not either.

away her claim, Mrs. Phillips is at all connected and identified with that claim, or the lawsuit on which it was based—much less sufficiently so.

Secondly—and more importantly—just as Mrs. Phillips is no longer a party for Rule 60(b) purposes, she no longer owns the right of action she wishes to continue to assert. "An unequivocal and complete assignment extinguishes all rights against the obligor . . . and leaves the assignor . . . without standing to sue."[18] Mrs. Phillips is asking this Court's assistance in prosecuting a claim she no longer owns. That leaves her without a substantive right to enforce, for the reasons just noted, and, additionally, without the Article III standing that is essential to bring a claim in the federal courts.[19]

Worse yet, if Mrs. Phillips were to prevail in her argument, there would be two separate recoveries, in favor of two separate claimants, on the same claim, with respect to the same accident. Understandably, Mrs. Phillips has not asked the Court to recapture the earlier distributions to Dover Fund, nor to interfere, in any way, with future distributions that might go to Dover Fund. Nor has she asked for a rescission of the assignment, nor an unwinding of the sale. She has not offered to return the money she received from Dover Fund back to that entity, nor has she indicated that she has the ability to do so. Effectively, she wishes to keep the money

---

[18] *Macondo's Profit Corp. v. Motorola Commc'ns & Elec., Inc.*, 863 F. Supp. 148, 149 (S.D.N.Y. 1994) (Carter, J.) (citing *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A*, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor.")); *Compagnie Noga D'Importation Et D'Exportation S.A. v. Russian Fed'n*, 2008 U.S. Dist. LEXIS 62925, at *16, 2008 WL 3833257, at *6 (S.D.N.Y. Aug. 15, 2008) (Pauley, J.) ("A party that has assigned its entire interest in a claim lacks standing to bring suit on that claim."), *aff'd by summary order*, 350 Fed. Appx. 476 (2d Cir. N.Y. 2009).

[19] *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (requiring that a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) 'actual or imminent, not "conjectural" or "hypothetical"'"; that there "be a causal connection between the injury and the conduct complained of"; and that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"). Having given up that legally protected interest, Mrs. Phillips likewise gave up any Article III standing she otherwise might have.

she received on the sale, and to keep Dover Fund as the claimant of record, and then to recover more, on the same claim, with respect to the same accident, on her own.

This is as illogical, and without basis in the law, as it sounds. It also runs squarely contrary to the terms of the Assignment, by which, among other things, she sold her entire interest in the claim to Dover Fund; agreed not to file any other claims with respect to the subject matter of the claim she had sold; and agreed that anything she recovered with respect to the claim would be turned over to the new claim owner, Dover Fund.

Mrs. Phillips argues that the cases cited above are distinguishable, but the Court relies on them for their underlying principles, as contrasted to their application by reason of similar facts. Significantly, Mrs. Phillips cites no precedent for the contention that one having sold "all rights, title, and interest in and to [a] claim" has the continuing ability to recover on it or otherwise invoke rights by reason of it.[20]

The Court thus must find that Mrs. Phillips lacks standing, both to seek Rule 60(b) relief and to recover on the underlying claim.[21] While the Court, once again, expresses its sympathy for her loss, the Court is compelled to, and does, deny her motion for 60(b) relief.

The GUC Trust is to settle an order consistent with this Decision.

Dated: New York, New York                       _s/Robert E. Gerber_
       June 8, 2015                                      United States Bankruptcy Judge

---

[20] At best, the cases Mrs. Phillips cites stand for the proposition that *the language of an assignment agreement* is the determinative factor in deciding whether, and the extent to which, an assignment of claims will transfer standing to bring a claim. But that helps her opponents far more than it helps her. As the language quoted on page 5 and thereafter makes clear, under the language of the Assignment she assigned the rights with respect to her lawsuit and related claim in every way imaginable.

[21] The Court likewise is unpersuaded that a distinction should be made between the claim that Mrs. Phillips filed and any other rights she might have to recover from Old GM (and now the GUC Trust) with respect to the underlying accident. All of her rights to recover by reason of that accident were prepetition claims, and she assigned all of them to Dover Fund. *See* page 5 et seq. above (assigning all rights in the claims to Dover Fund; the basis for her claim was amounts owing from Old GM arising from the wrongful death claim she had filed in Galveston Co., Texas; and she would file no other proofs of claim).