**Hearing Date and Time:**
**To be Determined by Court if Necessary**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

---------------------------------------------------------------x

# RESPONSE BY GENERAL MOTORS LLC TO NO STRIKE MOTION PURSUANT TO JUDGMENT BY DOLLY WALTON

26158309v1

# TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ...................................................................................................1

**BACKGROUND RELEVANT TO RESPONSE** ........................................................................4

    A.    **The 363 Sale and Assumed Liabilities**............................................................................4

    B.    **The Chrysler Bankruptcy Sale and Punitive Damages**................................................5

    C.    **The 363 Sale and Claims Based on Old GM Conduct**.................................................6

    D.    **The Motions to Enforce, and the Bankruptcy Court's Decision and Judgment on the Four Threshold Issues**............................................7

    E.    **The Walton Lawsuit** ..........................................................................................................8

**RESPONSE** ...................................................................................................................................9

    **THE COMPLAINT IN THE WALTON LAWSUIT MUST BE AMENDED TO DELETE THE CLAIM FOR PUNITIVE DAMAGES BASED ON OLD GM CONDUCT** ....................................9

    A.    **Punitive Damages in General**........................................................................................10

    B.    **Punitive Damages Claims Do Not Fit Within The Category of Assumed Product Liability Claims**............................................11

    C.    **New GM Only Assumed Product Liabilities of The Sellers, Who, At the Time, Were Debtors in a Bankruptcy Case, and Could Not be Liable for Punitive Damages**......................12


# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Castillo v. General Motors Co. (In re Motors Liquidation Co.)*,
   Adv. Proc. No. 09-00509, 2012 WL 1339496 (Bankr. S.D.N.Y. Apr. 17, 2012) ...................... 3

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*,
   532 U.S. 424 (2001) ............................................................................................................. 10

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ............................................................................................................. 10

*In re Best Payphones, Inc.*,
   523 B.R. 54 (Bankr. S.D.N.Y. 2015) .................................................................................... 13

*In re Ephedra Products Liability Litigation*,
   329 B.R. 1 (S.D.N.Y. 2005) .................................................................................................. 12

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015) ............................................................................. 7, 12

*Molzof v. U.S.*,
   502 U.S. 301 (1992) ............................................................................................................. 10

*Newport v. Fact Concerts, Inc.*,
   453 U.S. 247 (1981) ............................................................................................................. 10

*Richardson v. GlaxoSmithKline*,
   412 F. Supp. 2d 863 (W.D. Tenn. 2006) ................................................................................ 1

*Trusky v. General Motors LLC (In re Motors Liquidation Co,)*,
   Adv. Proc. No. 12-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) .............. 3, 6, 12

*Virgilio v. City of New York*,
   407 F.3d 105 (2d Cir. 2005) ................................................................................................. 10


**Statutes**

11 U.S.C. § 1129(a)(7) .................................................................................................................. 13

11 U.S.C. § 726(a) ................................................................................................................. 12, 13

11 U.S.C. § 726(a)(4) .................................................................................................................... 12


General Motors LLC ("**New GM**"), by its undersigned counsel, respectfully submits this response ("**Response**") to the *No Strike Motion Pursuant to Judgment by Dolly Walton* [Dkt. No. 13228] ("**Walton No Strike Pleading**"), filed by Dolly Walton ("**Movant**") on June 18, 2015. In support of this Response, New GM represents as follows:

## PRELIMINARY STATEMENT

1. Pursuant to the Amended and Restated Master Sale and Purchase Agreement (as amended) ("**Sale Agreement**"), approved by this Court by Order dated July 5, 2009 ("**Sale Order and Injunction**"), New GM purchased substantially all of the assets of Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**"), and agreed to assume certain specifically-defined liabilities. One of such Assumed Liabilities was "Product Liabilities" (as defined in the Sale Agreement).

2. The Walton No Strike Pleading concerns a lawsuit ("**Walton Lawsuit**") against New GM that arises from an accident involving an Old GM vehicle that took place after the closing of the 363 Sale. New GM assumed Product Liabilities relating to that accident, to the extent they can be established at trial.[1] However, the Walton Lawsuit is not limited to claims based on Product Liabilities, but also seeks punitive damages against New GM based on Old GM conduct.[2] The Sale Order and Injunction is clear that New GM is not liable for such punitive damages.

---

[1] New GM contests that it is liable to Movant for Product Liabilities relating to the accident, but the resolution of those issues will be determined by the state court overseeing the Walton Lawsuit.

[2] The Walton Lawsuit also contains a claim for "breach of implied warranty." Complaint ¶¶ 118-120. New GM did not assume economic loss claims related to breach of implied warranty claims (*see* Sale Order and Injunction, ¶ 56; Sale Agreement, § 2.3(b)(xvi)). In Tennessee (where the Walton Lawsuit is pending), however, a plaintiff may bring a breach of warranty claim as a product liability claim. *See, e.g.*, *Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 868 (W.D. Tenn. 2006) (acknowledging the Tennessee Products Liability Act of 1978 applies to actions including strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever). Accordingly, based on Tennessee law, New GM is not seeking to strike Movant's breach of implied warranty claim since it does not seek economic loss

1

3. The complaint ("**Complaint**") in the Walton Lawsuit is littered with allegations regarding Old GM conduct, and the request for punitive damages is specifically based on such conduct. It thus violates the Sale Order and Injunction in this respect.

4. The Judgment defines Hybrid Lawsuits as lawsuits that "include claims and allegations that are permitted under the Decision and this Judgment and others that are not" (Judgment ¶ 11(a)).[3] To the extent punitive damages are asserted against New GM based on Old GM conduct, those claims and allegations in the Hybrid Lawsuits are proscribed by the Judgment.

5. The term "Product Liabilities" is a type of "Liabilities" which is defined in Section 1.1 of the Sale Agreement. The term Liabilities is a type of "Losses,"[4] which is also defined in Section 1.1 of the Sale Agreement. The term Losses is a type of "Damages" that is defined in Section 1.1 of the Sale Agreement to be "any and all Losses *other than punitive damages*." (emphasis supplied). Thus, the terms of the Sale Agreement make clear that New GM did not assume Damages that are punitive damages attributable to Old GM conduct.

6. This conclusion is reinforced by the definition of Product Liabilities which specifies that the Liabilities must arise *directly* from an accident involving Old GM vehicles that took place after the sale ("**363 Sale**") from Old GM to New GM. The word *directly* has a critical

---

damages. However, New GM reserves the right to object to implied warranty claims (and other claims) asserted by other plaintiffs in post-363 Sale accident cases, if the facts and law of the particular jurisdiction warrant such action.

[3] The Walton Lawsuit actually concerns a cross-claim by the Movant in a lawsuit commenced by William Gamble. As such, Movant herein is not the primary plaintiff in the Walton Lawsuit, but is a "defendant and cross-party plaintiff." While Paragraph 11(a) of the Judgment directed New GM to serve counsel in Hybrid Lawsuits with a copy of the Judgment within two business days of its entry, New GM inadvertently failed to serve the Movant with the Judgment because she was not the primary plaintiff (whose counsel was served with the Judgment). Nonetheless, it is clear that the Movant received the Judgment based on her timely filing of the Walton No Strike Pleading.

[4] "Losses" is defined in the Sale Agreement as "any and all Liabilities, losses, damages, fines, amounts paid in settlement, penalties, costs and expenses (including reasonable and documented attorneys', accountants', consultants', engineers' and experts' fees and expenses)." *Id.*, p. 11.

2

importance. It signifies that New GM agreed to compensatory damages relating to an accident involving an Old GM vehicle. New GM did not agree to assume punitive damages relating to Old GM's conduct. Punitive damages are treated differently in bankruptcy because they are not intended to compensate a tort victim for actual loss. Rather, they are awarded in rare instances, outside of bankruptcy, to punish a wrongdoer for egregious conduct. Under the Sale Agreement, New GM only agreed to assume those liabilities that it deemed were commercially necessary for its new business.[5] That meant, in certain instances, assuming liabilities that compensated Old GM creditors that were deemed important for New GM's new business. It certainly did not mean paying non-compensatory awards that are designed to *punish* Old GM, as a wrongdoer, for allegedly egregious pre-363 Sale conduct. Those type of special liabilities were unquestionably not commercially necessary for New GM's new business and were retained by Old GM.

7. In reality, in the context of Old GM, a debtor of a widely known insolvent estate, such punitive liabilities are never paid pursuant to applicable bankruptcy law. Clearly, New GM never would have agreed to assume punitive damages claims that Old GM itself, based on its dire financial circumstance known as of the 363 Sale, would never have been required to pay.

8. Accordingly, as more fully discussed below, Movant should be directed to amend her Complaint to delete the claim for punitive damages based on Old GM's conduct. Such claim was simply never assumed by New GM.

---

[5] *See Castillo v. General Motors Co. (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-00509, 2012 WL 1339496, at *4 (Bankr. S.D.N.Y. Apr. 17, 2012) ("In short, by the end of the 363 Sale hearing it was clear not only to Old GM and Treasury, but also to the Court and to the public, that the goal of the 363 Sale was to pass on to Old GM's purchaser—what thereafter became New GM—only those liabilities that were commercially necessary to the success of New GM."); *Trusky v. General Motors LLC (In re Motors Liquidation Co,)*, Adv. Proc. No. 12-09803, 2013 WL 620281, at *8 (Bankr. S.D.N.Y. Feb. 19, 2013) ("Nor did New GM assume liability for Old GM's failures under other theories. As I noted in *Castillo,* the intent of the parties was to pass on only those liabilities that were commercially necessary to the success of New GM.").

3

**BACKGROUND RELEVANT TO RESPONSE**

**A.      The 363 Sale and Assumed Liabilities**

9.      With respect to vehicles and/or parts manufactured by Old GM, New GM agreed to assume only three categories of liabilities: (a) post-363 Sale accidents or incidents involving Old GM vehicles causing personal injury, loss of life, or property damage ("**Assumed Product Liability Claims**"); (b) repairs or the replacement of parts provided for under the "glove box warranty"—a specific written warranty, of limited duration, that only covers repairs and replacement of parts (and not monetary damages); and (c) Lemon Law claims (as defined in the Sale Agreement), essentially tied to the failure to honor the glove box warranty.  All other liabilities relating to vehicles and/or parts manufactured by Old GM are Retained Liabilities.  *See* Sale Agreement § 2.3(b).

10.      Assumed Product Liability Claims are:

all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date and arising from such motor vehicles' operation or performance . . .

Sale Agreement (as amended), § 2.3(a)(ix).  This provision was added to the Sale Agreement, as part of a June 26, 2009 amendment, to address specific objections made to the 363 Sale by objectors (such as certain States' Attorneys General).[6]  Those objections discussed the necessity

---

[6] The original version of the Sale Agreement provided that New GM would only assume Product Liabilities "arising out of products delivered to a consumer, lessee or other purchaser of products at or after the Closing." Original Sale Agreement, § 2.3(a)(ix) [Dkt. No. 92-1].

4

of paying compensatory damages to future tort victims. They did not argue for the need to assume punitive damage awards.[7]

11. The term "punitive damages" is not used in the Sale Order and Injunction. It is used once in the Sale Agreement—in the definition of "Damages."

### B. The Chrysler Bankruptcy Sale and Punitive Damages

12. In the *Chrysler* bankruptcy case, the sale agreement did not originally provide that New Chrysler would assume liabilities based on accidents occurring post-sale concerning Old Chrysler vehicles.[8] The Chrysler Sale Order was entered before the Sale Agreement in the *Old GM* bankruptcy case was amended to provide for New GM's assumption of post-363 Sale, personal injury claims relating to Old GM vehicles. An amendment to the Chrysler Sale Agreement was later entered into (in November 2009, after the Sale Order and Injunction was entered) that provided that New Chrysler would assume liabilities based on accidents that occurred post-sale concerning Old Chrysler vehicles.[9] The Chrysler amendment expressly provided that New Chrysler was not assuming any product liability claims that included exemplary or punitive damages. This was all done to make the assumed obligations of New

---

[7] *See, e.g.*, *Joinder And Limited Objection Of The States Of Connecticut, Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Dakota And Vermont*, filed on June 19, 2009 [Dkt. No. 1926] ("The States submit that this Court should not enter any order depriving purchasers of GM vehicles of legal rights to be compensated for death or serious injuries caused by defects in GM products."); *Memorandum Of Law In Support Of The Limited Objection Of Callan Campbell, Kevin Junso, Et Al., Edwin Agosto, Kevin Chadwick, Et. Al., Joseph Berlingieri, And The Center For Auto Safety, Et Al., To The Debtors' 363 Motion For The Sale Of The "Purchased Assets" Free And Clear Of Potential Successor Liability Claims*, filed June 22, 2009 [Dkt. No. 2177] ("People who have not yet suffered injury or loss because of GM's behavior cannot have an "interest in" GM's property because the injuries that would lead them to have such an interest have not yet even occurred.").

[8] A copy of the Chrysler sale agreement is attached hereto as Exhibit "A."

[9] A copy of the amendment to the Chrysler sale agreement is attached hereto as Exhibit "B."

5

Chrysler consistent with the assumed obligations of New GM, and New GM's definition of "Damages" which excluded punitive damages.[10]

### C. The 363 Sale and Claims Based on Old GM Conduct

13. The Sale Order and Injunction provides that, except for Assumed Liabilities, New GM shall not be liable for Old GM's conduct. Specifically, Paragraph AA of the Sale Order and Injunction provides, in relevant part:

> The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and, except for the Assumed Liabilities, will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of liens, claims, encumbrances, and other interests (other than Permitted Encumbrances), including rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code) based on any successor or transferee liability, including, but not limited to . . . all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor or transferee liability.

*See also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09–09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013) ("New GM is not liable for Old GM's conduct or alleged breaches of warranty.").

14. Various provisions of the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (except for Assumed Liabilities) predicated on Old GM conduct, relating to the operation of Old GM's business, or the production of vehicles and parts before the closing of the 363 Sale, and that creditors and other parties in interest were barred and

---

[10] *See* http://www.autosafety.org/chrysler-accept-more-product-liability-claims (last visited July 14, 2015) ("John Bozzella, Chrysler Group LLC's senior vice president for external affairs and public policy, said the company was confident 'that the future viability of the company will not be threatened if we accept these claims.' He said the new company's approach was 'consistent with that taken by General Motors as part of its bankruptcy process.'").

6

enjoined from asserting such liabilities, including successor liability claims, against New GM. *See, e.g.*, Sale Order and Injunction, ¶¶ 8, 9, 46.

D.   **The Motions to Enforce, and the Bankruptcy Court's
     Decision and Judgment on the Four Threshold Issues**

15.     In 2014, New GM filed three motions ("**Motions to Enforce**") with the Court seeking to enforce the provisions of the Sale Order and Injunction. The Motions to Enforce did not concern lawsuits that are based on "Product Liabilities" (as defined in the Sale Agreement) arising from accidents that occurred after the closing of the 363 Sale. However, to the extent such lawsuits—like the Walton Lawsuit—contain other claims that constitute Retained Liabilities, the relief requested in the Motions to Enforce becomes applicable.

16.     In connection with the Motions to Enforce, the parties and the Court ultimately agreed to address four threshold issues ("**Four Threshold Issues**"). After extensive briefing and a two day oral argument, the Court rendered its *Decision on Motion to Enforce Sale Order* on April 15, 2015 ("**Decision**"). *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015). For purposes herein, the Court held that it will continue to enforce the prohibitions against successor liability and New GM is not liable for Old GM conduct. "Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand." *Id.* at 528.

17.     On June 1, 2015, the Court issued the Judgment, memorializing its rulings set forth in the Decision.[11] For purposes herein, the Judgment provides, in relevant part, as follows:

> Except for Independent Claims[12] and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New

---

[11]  Notices and cross-notices of appeal have been filed with respect to the Judgment. On the same day that the Judgment was entered, the Court certified the Judgment for direct appeal to the Second Circuit.

7

> GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment.

Judgment ¶ 9.

18. Paragraph 11 of the Judgment concerns "Hybrid Lawsuits," and, with respect to such lawsuits, the Judgment provides as follows:

> until and unless the complaint in a Hybrid Lawsuit is (x) amended to assert solely claims and allegations permissible under the Decision and this Judgment (as determined by this or any higher court, if necessary), or (y) is judicially determined (by this or any higher court) not to require amendment, that lawsuit is and shall remain stayed.

*Id.* If the plaintiff in a Hybrid Lawsuit "has a good faith basis to maintain that its allegations, claims or causes of action against New GM should not be stricken, it shall file" a No Strike Pleading with this Court within the time period set forth in the Judgment. *Id.* ¶ 11(c). However, the "No Strike Pleading shall not reargue issues that were already decided by the Decision and Judgment." *Id.*

**E.   The Walton Lawsuit**

19. The Walton Lawsuit concerns an accident that occurred after the closing of the 363 Sale, and asserts claims for Product Liabilities against New GM which are permitted to proceed under the Sale Order and Injunction and Sale Agreement. However, the Walton Lawsuit contains numerous misstatements and allegations regarding Old GM conduct, as well as a claim for punitive damages, which violates the Sale Order and Injunction, the Decision and Judgment.

---

[12] "Independent Claims" are defined in the Judgment as "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct." Judgment ¶ 4.

8

20.   For example, the Complaint asserts:

   i.   New GM "designed and manufactured the 2006 Pontiac Grand Prix that is at issue in this case, along with over a million other similar cars." Complaint ¶ 2. This is not true as New GM did not design the vehicle at issue; Old GM did.

   ii.  New GM "is the successor corporation to General Motors ('GMC'), which underwent bankruptcy in 2009" Complaint ¶ 6. While New GM did assume certain Assumed Liabilities, it was found not to be a successor to Old GM. *See* Sale Order and Injunction, ¶ 46.

   iii. At least 60 paragraphs in the Complaint (almost half of the 130-paragraph Complaint) contain allegations based on events and Old GM conduct that took place prior to the closing of the 363 Sale. *See, e.g.*, Complaint ¶¶ 16-76.

21.   Count 4 of the Complaint seeks punitive damages. Movant specifically states that "[a]ll preceding statements and allegations of Dolly Walton's Complaint are incorporated herein and re-alleged as if expressly set forth herein." Complaint ¶ 121. She also asserts that Old GM's "conduct in designing, testing, manufacturing, assembling, marketing, selling and failing to adequately repair the Pontiac Grand Prix, demonstrates a malicious want to care, evidencing a reckless indifference and disregard to the consequences of their actions." *Id.* ¶ 122 (emphasis added).

### RESPONSE

### THE COMPLAINT IN THE WALTON LAWSUIT
### MUST BE AMENDED TO DELETE THE CLAIM
### FOR PUNITIVE DAMAGES BASED ON OLD GM CONDUCT

22.   Pursuant to the Judgment, the Decision and the Sale Order and Injunction, Movant cannot sue New GM for punitive damages based on Old GM conduct. Accordingly, as explained below, any request for such punitive damages must be stricken from the Complaint.

9

**A.** **Punitive Damages in General**

23. As stated by the United States Supreme Court,

> Although compensatory damages and punitive damages are typically awarded at the same time by the same decision maker, they serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. [citations omitted]. The latter, which have been described as "quasi-criminal," [citation omitted] operate as "private fines" intended to punish the defendant and to deter future wrongdoing.

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001); *see also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974) ("[Punitive damages] are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence"); *Virgilio v. City of New York*, 407 F.3d 105, 116 (2d Cir. 2005) ("While compensatory damages recompense for one's injuries, punitive damages under New York law serve an entirely different purpose. Punitive damages are invoked to punish egregious, reprehensible behavior.").

24. "The common-law definition of 'punitive damages' focuses on the nature of the defendant's conduct. As a general rule, the common law recognizes that damages intended to compensate the plaintiff are different in kind from 'punitive damages.'" *Molzof v. U.S.*, 502 U.S. 301, 307 (1992). Moreover, "juries assess punitive damages in reference to the enormity of defendant's offense rather than the measure of compensation to the plaintiff." *Id.* at 306. "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor . . ., and to deter him and others from similar extreme conduct." *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–67 (1981). A claim for punitive damages is, therefore, not based on a specific accident or incident involved in a personal injury/product liability action, but is based on the totality of the alleged misconduct of the defendant. Stated otherwise, a punitive damages claim does not arise *directly* from the injury incurred.

10

**B.     Punitive Damages Claims Do Not Fit Within
        The Category of Assumed Product Liability Claims**

25.    As a starting point, the Sale Agreement expressly precluded an award of punitive damages against New GM for Old GM conduct—"Damages" is defined as "any and all Losses, *other than* punitive damages." Sale Agreement, p. 5 (emphasis added). This should end the inquiry of whether punitive damages were included in the Sale Agreement as an Assumed Liability; they were not.

26.    More broadly, even in the absence of this plain text, the language used in the Sale Agreement to describe Assumed Product Liability Claims demonstrates that punitive damages were not meant to be part of this category of Assumed Liabilities. In order for a liability to be an Assumed Product Liability Claim, it must be a liability:

　　　i.   to a third party "for death, personal injury, or other injury to Persons or damage to property;"

　　　ii.  "caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles;"

　　　iii. related to a motor vehicle or part "in each case, manufactured, sold or delivered by Sellers;"

　　　iv.  that "arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date;"

　　　v.   and "arising from such motor vehicles' operation or performance . . . ."

27.    Thus, an Assumed Product Liability Claim must satisfy each of the foregoing five components. Clearly, each element deals with compensatory damages arising from a single, specific incident and not a liability based on punitive damages. Stated otherwise, punitive damages do not arise "*directly*" out of the death, personal injury or other injury that is caused by an accident or incident. Thus, the request for punitive damages in the Walton Lawsuit arises from the totality of Old GM's alleged misconduct unrelated to the accident in question.

11

28.     Accordingly, based on the definition of Damages, that excludes punitive damages, and the language used to define Assumed Product Liability Claims, New GM only agreed to assume compensatory damages related to post-363 Sale accidents involving Old GM vehicles and/or parts, and was not agreeing to assume punitive damages related to pre-363 Sale Old GM conduct. This interpretation is also consistent with the Chrysler sale agreement amendment, and the basis for the June 26, 2009 amendment to the Sale Agreement that added in Assumed Product Liability Claims, as well as this Court's prior Orders, Decisions and Judgments that (a) recognized New GM was only assuming liabilities that were commercially necessary for its operations, and (b) prohibited claims against New GM based on Old GM conduct. *See, e.g.*, Judgment ¶ 9; Decision, 529 B.R. at 528; *Trusky*, 2013 WL 620281, at *2.

**C.    New GM Only Assumed Product Liabilities of
The Sellers, Who, At the Time, Were Debtors in a
Bankruptcy Case, and Could Not be Liable for Punitive Damages**

29.     The Sale Order and Injunction was entered, and the Sale Agreement was approved, post-petition, and thus, the "Sellers" under the Sale Agreement and Sale Order and Injunction were debtors in bankruptcy. Thus, any liabilities assumed by New GM would be limited to liabilities that could have been asserted against the Debtors at the time of the closing.

30.     Pursuant to Section 726(a) of the Bankruptcy Code, general unsecured claims (either timely filed or tardily filed) are paid in full before an allowed claim "for any fine, penalty, or forfeiture, or for multiple, exemplary or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim[.]" 11 U.S.C. § 726(a)(4); *see also In re Ephedra Products Liability Litigation*, 329 B.R. 1, 9 (S.D.N.Y. 2005) ("in bankruptcy punitive damages and penalties are given a low priority of

12

distribution so that general creditors are paid in full before any estate assets are used to pay penalties").

31.     While the Debtors' cases were Chapter 11 cases, Section 726 is applicable pursuant to the "best interest of creditors" test, *i.e.*, that holders of claims in a Chapter 11 case must receive on account of their claims at least as much as they would receive in a Chapter 7 case. *See, e.g.*, *In re Best Payphones, Inc.*, 523 B.R. 54, 75 (Bankr. S.D.N.Y. 2015) ("Section 11 U.S.C. § 1129(a)(7) requires a creditor to receive or retain at least as much property under the plan as it would in a hypothetical chapter 7 liquidation. It is the lowest point below which a proposed distribution may not fall, and must be read together with 11 U.S.C. § 726(a), which governs the priority of distribution in a chapter 7 case.").

32.     At oral argument on the Four Threshold Issues, the Bankruptcy Court recognized that punitive damages claims would not have received a distribution from the Debtors. *See* Transcript of Hearing, February 18, 2015, at 89 ("But in the claims process, you don't get punitive damages, you don't get RICO damages, because there's well-established authority. I think I held this earlier in GM in the [apartheid] opinion, that punitives in the claims context, in a liquidating plan, penalized the wrong guys. They penalized the innocent unsecured Creditors.").[13]

33.     Similarly, penalizing New GM (with punitive damages) for the conduct of Old GM would be penalizing the "wrong guys," and was not part of the bargain struck in the Sale Agreement.

---

[13] In this Court's *Bench Decision on Apartheid Claimant's Motion for Class Certification, and on Debtor's Objection to Apartheid Claimants' Underlying Claims*, dated January 28, 2011, it noted (page 19) as follows: "And the deterrence class actions often provide would be of little utility in a case like this one, where Old GM is liquidating, and any punishment for any wrongful Old GM conduct would be borne by Old GM's innocent creditors." None of the claims by the Apartheid Claimants were allowed against the Old GM bankruptcy estate.

13

34. As understood when the 363 Sale was entered into, unsecured creditors were not going to receive payment in full on their claims from the Debtors' estates, and because unsecured claims have a higher priority than punitive damages claims, any claims for punitive damages against the Debtors would have been denied. Accordingly, as the Debtors would not have been required to pay any claims for punitive damages, New GM did not intend to, nor did it, assume any responsibility to pay these claims which even the Debtors could not be required to pay.

WHEREFORE, New GM respectfully requests that this Court (i) deny the relief requested in the Walton No Strike Pleading, (ii) direct the Movant to amend her Complaint to conform to the rulings set forth in the Judgment, Decision and Sale Order and Injunction, by deleting any claims for punitive damages based on Old GM conduct, and (iii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      July 14, 2015

Respectfully submitted,

/s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

14