# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003

Tel: (212) 556-2100
Fax: (212) 556-2222
www.kslaw.com

Arthur Steinberg
Direct Dial: 212-556-2158
asteinberg@kslaw.com

July 15, 2015

**VIA E-MAIL TRANSMISSION
AND ECF FILING**
The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

    Re: **In re Motors Liquidation Company,** *et al.*
       **Case No. 09-50026 (REG)**

      **Letter Regarding Update on Related Proceedings**

Dear Judge Gerber:

  King & Spalding LLP is co-counsel with Kirkland & Ellis LLP for General Motors LLC ("**New GM**") in the above-referenced matter. Pursuant to Your Honor's Endorsed Order dated May 5, 2015 [Dkt. No. 13131], we write to update the Court regarding developments in proceedings relating to New GM's Motions to Enforce. Specifically, today, July 15, 2015, Judge Furman entered a *Memo Endorsed Order* in MDL 2543 with regard to motion practice in connection with the Second Amended Consolidated Complaint filed in MDL 2543. A copy of the *Memo Endorsed Order* is attached hereto.

            Respectfully submitted,

            */s/ Arthur Steinberg*

            Arthur Steinberg

AJS/sd
Encl.

26175878v1

Honorable Robert E. Gerber
July 15, 2015
Page 2

cc:    Edward S. Weisfelner
       Howard Steel
       Sander L. Esserman
       Jonathan L. Flaxer
       S. Preston Ricardo
       Matthew J. Williams
       Lisa H. Rubin
       Keith Martorana
       Daniel Golden
       Deborah J. Newman
       Jamison Diehl
       William Weintraub
       Steve W. Berman
       Elizabeth J. Cabraser
       Robert C. Hilliard

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Andrew B. Bloomer, P.C.
To Call Writer Directly:
(312) 862-2482
andrew.bloomer@kirkland.com

300 North LaSalle
Chicago, Illinois 60654

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

June 30, 2015

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/15/2015
```

The Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   *In re: General Motors LLC Ignition Switch Litigation,*
>        14-MD-2543 (JMF)

Dear Judge Furman:

      Pursuant to Order No. 60 [Regarding the June 16, 2015 Status Conference], New GM submits this letter brief to address "the timing and scope of motion practice on the amended consolidated complaint." (ECF No. 1064 at 2.) New GM respectfully submits that motion practice on the Second Amended Consolidated Complaint ("SACC") (ECF No. 1038) should be deferred until issues arising from the Bankruptcy Court's June 1, 2015 Judgment (Bankr. ECF No. 13177)—pending before three different courts—are resolved. With the possible exception of briefing whether the SACC violates Fed. R. Civ. P. 8, proceeding with motion practice on the SACC before these issues are decided would not advance this litigation.

### 1. The SACC Violates The Bankruptcy Court's Judgment In At Least Three Respects, All Of Which Must Be Resolved Before Motion Practice Can Proceed.

      The SACC violates the Bankruptcy Court's Judgment in at least three different ways.[1] ***First***, the SACC names as plaintiffs 63 individuals who were named as plaintiffs in the ***Pre***-Sale Consolidated Complaint, all of whom purchased Old GM vehicles before the Sale Date. Lead Counsel have acknowledged that these plaintiffs' claims are premised on a theory of successor liability. (ECF No. 440 at 2 n.3 ("Unlike the Post-Sale Complaint, [ ] the Pre-Sale Complaint also pleads successor liability claims.").) Thus, despite the Bankruptcy Court's express holding that "all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability

---

[1] Given the SACC's length (1,205 pages) New GM continues to review its allegations. Accordingly, although New GM has identified the violations of the Judgment addressed herein, New GM reserves the right to supplement this discussion as appropriate in response to plaintiffs' No-Strike Pleading.

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
June 30, 2015
Page 2

theory of recovery) are barred and enjoined pursuant to the Sale Order," (Judgment ¶ 9), plaintiffs now purport to include these Pre-Sale claims and plaintiffs in the SACC.[2] Moreover, in the Judgment, the Bankruptcy Court expressly stayed all litigation relating to the Pre-Sale Consolidated Complaint pending the outcome of any appeal. *Id.* ¶ 10(a). Plaintiffs' attempt to side-step the directives of the Judgment by merging the Pre-Sale allegations into the SACC is improper and, by taking this proscribed action, plaintiffs have tainted their ability to move forward on the SACC as a whole.

***Second***, the SACC includes more than 275 paragraphs concerning Old GM conduct. (*See, e.g.*, SACC ¶¶ 253-297.)[3] In some of the SACC's paragraphs, plaintiffs preface their allegations by adding the words "New GM knew that . . ." before the Old GM conduct allegation. But the Bankruptcy Court clearly and unequivocally ruled that "[c]laims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand." (Bankr. ECF No. 13109 at 15; *see also* Judgment ¶ 9.)"[4] Plaintiffs cannot circumvent the Bankruptcy Court's Judgment simply by adding a four-word preface to allegations asserted in prior iterations of the SACC.

***Third***, the SACC purports to allege, under a variety of state laws, that *New* GM committed fraud in connection with *Old* GM's bankruptcy. Specifically, plaintiffs assert under the laws of all 50 States and the District of Columbia that, "[b]ut for New GM's fraudulent concealment of the ignition switch defects, [putative class members] would have filed claims against Old GM before the Bar Date." (*E.g.*, SACC ¶ 1182.) But the Bankruptcy Court Judgment specifically precludes "all claims and/or causes of action . . . seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery)." (Judgment ¶ 9.) It is difficult to conceive of a more axiomatic successor liability claim than that New GM purportedly committed fraud in

---

[2] Although the Judgment does not bar Assumed Liabilities or "Independent Claims"—"claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are ***based solely on New GM's own, independent, post-Closing acts or conduct***," *id.* ¶ 4, 9—none of the claims asserted by the Pre-Sale plaintiffs in the SACC fall within these exceptions, despite plaintiffs' hollow claims that the SACC "asserts exclusively [ ] direct liability claims against New GM." (Bankr. ECF No. 13247 at 1-2.)

[3] In determining that complaints filed by Arizona and California should be stayed, the Bankruptcy Court similarly noted that the States' complaints contained, respectively, 60 and 18 paragraphs alleging pre-Sale conduct. (Bankr. ECF No. 13162 at 6.)

[4] *See also* Decision on Motion for 60(B) Relief (Doris Phillips), Bankr. ECF No. 13190 at 7 n.10 ("Presumably her counsel envisioned a theory based on a species of successor liability or other theory under which New GM would be responsible for Old GM's acts. But theories of this character cannot be asserted under the Court's recent opinions. . . .").

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
June 30, 2015
Page 3

connection with Old GM's establishment of the bar date for filing claims against Old GM after the 363 Sale closed. This type of claim, which involves a bar date notice that the Bankruptcy Court approved at the request of Old GM and solely Old GM conduct in connection with its creditors, is for the Bankruptcy Court to resolve in connection with Old GM's bankruptcy estate.

### 2. Consistent With The Judgment, Proceedings Are Underway In The Bankruptcy Court, And Elsewhere, To Test The SACC.

In addition to filing the SACC on June 12, 2015, plaintiffs have challenged the validity of the Judgment and tried to have courts confirm the propriety of the SACC's allegations. ***First***, consistent with the Bankruptcy Court's certification of the Judgment for direct appeal to the Second Circuit, multiple notices of appeal and cross-appeal have been filed.[5] The Second Circuit's decision concerning the Bankruptcy Court Judgment ultimately will control which claims may be pled in the SACC.

***Second***, on June 24, 2015, plaintiffs filed a No-Strike Pleading (and for the Non-Ignition Switch Plaintiffs, an "Objection Pleading") in the Bankruptcy Court, describing it as follows: "The Ignition Switch Plaintiffs file[d] th[eir] 'No Strike' pleading with regard to the SAC[C] prophylactically for a judicial determination that it asserts only 'Independent Claims' permissible under the Decision and Judgment." (Bankr. ECF No. 13247, at ¶ 2.)[6] That pleading asks the Bankruptcy Court to determine, among other things, whether New GM may seek "to enjoin

---

[5] Bankr. ECF Nos. 13179, 13180, 13185, 13194, 13200, 13204, 13209.

[6] The Judgment provides a mechanism for determining whether a complaint, post-amendment, still violates its terms. Specifically, the Judgment identified "Hybrid Lawsuits" that contained both "claims and allegations that are permitted under the Decision and this Judgment and others that are not." (Judgment at ¶ 11(a).) "The Hybrid Lawsuits include the [MDL] Post-Sale Consolidated Complaint." *Id*. Hybrid Lawsuits remain stayed unless and until either the complaints were "amended to assert solely claims and allegations permissible under Decision and this Judgment" or the lawsuit was "judicially determined (by [the Bankruptcy Court] or any higher court) not to require amendment." *Id*. Plaintiffs seeking to avoid the stay must either (i) amend their complaint "such that any allegations, claims or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct . . . are stricken," or (ii) file a No Strike Pleading explaining why they had "a good faith basis to maintain that [their] allegations, claims or causes of action against New GM should not be stricken." *Id*. ¶ 11(b), (c). Plaintiffs purported to amend the Post-Sale Consolidated Complaint but also filed a No-Strike Pleading to test the validity of the SACC's claims.

The Judgment also stayed certain lawsuits asserting "claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery)." *Id*. ¶ 9.) Such lawsuits included the Pre-Sale Consolidated Complaint. As plaintiffs have conceded, the SACC "amend[s] and supersed[es] the Pre-Sale *and* Post Sale Complaints." (Bankr. ECF No. 13251 at 10 (emphasis added).) To the Extent the SACC supersedes the Pre-Sale Consolidated Complaint, the Judgment's stay procedures apply to the SACC as a whole. (Judgment ¶ 10.)

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
June 30, 2015
Page 4

claims or strike portions of the SAC[C] because it contains references or factual allegations relating to 'Old GM' . . . ." *Id.* ¶ 5. Lead Counsel also filed a Motion to Withdraw the Reference to the Bankruptcy Court. (Bankr. ECF Nos. 13250, 13251.)

New GM will shortly file oppositions to plaintiffs' No-Strike Pleading and Motion to Withdraw the Reference. For present purposes, the point is that it would be futile for the parties to attempt motion practice on plaintiffs' RICO claims, or as to a series of bellwether states, until the appropriate tribunal—the Bankruptcy Court, this Court, or the Second Circuit—decides (i) who can be named as plaintiffs, (ii) which claims may be pled, and (iii) what allegations can be asserted in support of those claims. For example, if either the Bankruptcy Court or this Court were to deny plaintiffs' No-Strike Pleading and hold that Old GM conduct allegations may not be pled even under the guise of purported New GM knowledge, then Plaintiffs would have to withdraw or strike more than 275 paragraphs from the SACC. Similarly, a final decision regarding who may be named as plaintiffs in the SACC, including the 63 individuals lifted from the Pre-Sale Consolidated Complaint, will dictate whether a particular state can serve as a bellwether candidate for motion practice. Moreover, if the Second Circuit were to reverse some aspect of the Bankruptcy Court Judgment, New GM would likely assert different or additional grounds for dismissing the SACC.

Accordingly, this Court should defer motion practice until after the appropriate tribunals have decided whether the plaintiffs named, claims pled, and allegations asserted in the SACC violate the Sale Order and the Judgment.[7] Nor will plaintiffs suffer any prejudice if this Court adopts New GM's position. New GM has already produced more than ***nine million*** pages of documents in discovery. Plaintiffs have deposed 20 Category I witnesses (*i.e.*, current and former New GM employees) and have scheduled or are scheduling another 60-plus witnesses. The first bellwether case will be tried in January 2016, with several additional cases to follow. New GM has timely fulfilled, and will continue to fulfill, all of its discovery obligations.

Any delay in the resolution of the issues concerning the plaintiffs, claims, and allegations in the SACC is a product of plaintiffs' own making. In December 2014, this Court addressed substantially the same issue presented here, whether motion practice could proceed on the Post-

---

[7] Although New GM will address the question of which court is best positioned to resolve these issues in its opposition to plaintiffs' Motion to Withdraw the Reference, this Court has recognized that it is "the Bankruptcy Court [that] is tasked with deciding [such] questions in the first instance." (ECF No. 474 at 1.) The processes established in the Bankruptcy Court Judgment will permit these issues to be resolved "with all deliberate speed." *Id.* Indeed, what this Court previously said with regard to interpretation of the Sale Order and Injunction remains true with regard to the Judgment: "I am also going to be sensitive about stepping on the toes of Judge Gerber and the bankruptcy proceeding and ensuring an orderly process of the litigation of any issues before the bankruptcy court, mindful of the bankruptcy court's exclusive jurisdiction." (Aug. 11, 2014 MDL 2543 Hr'g Tr. at 6; *see also id.* at 22-23.)

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
June 30, 2015
Page 5

Sale Consolidated Complaint. Because Lead Counsel "assert[ed] claims with respect to vehicles manufactured by Old GM[,] expressly incorporate[d] Old GM vehicles into its class definition, [and] relie[d] throughout on allegations concerning Old GM conduct," (ECF No. 439 at 6), this Court "conclude[d], with one possible exception [as to limited choice of law briefing[8]], that all such [motion practice] briefing [directed to the Post-Sale Consolidated Complaint] should be deferred until after Judge Gerber's decisions [on the Motions to Enforce], substantially for the reasons provided by New GM in its Memorandum of Law." (ECF No. 474 at 1.) Thus, plaintiffs have long been on notice to steer far clear of the Bankruptcy Court Judgment and focus solely on New GM vehicles and alleged New GM conduct. By failing to do so, and by choosing instead to plead Old GM conduct, to include plaintiffs with Old GM vehicles purchased pre-Sale, and to pursue claims of fraud purportedly connected to Old GM's bankruptcy, plaintiffs have unnecessarily burdened the parties and the Court with premature requests to engage in motion practice on unresolved issues that would likely have to be re-litigated after the bankruptcy issues are resolved.

### 3. Only Rule 8 Motion Practice May Be Appropriate Now.

If the Court wishes to proceed with any motion practice on the SACC at this time, then it should limit its review to whether the SACC violates Fed. R. Civ. P. 8. As the Court noted on the record, at 649 and 686 pages, respectively, the Pre-Sale and Post-Sale Consolidated Complaints were "already pushing the envelope on the 'short and plain statement' requirements of Rule 8." (ECF No. 1024 at 17.) The SACC, at 1,205 pages, shreds the envelope altogether.

Even if the Plaintiffs were to strip all the individual plaintiffs, claims, and allegations that run afoul of the Bankruptcy Court Judgment, the SACC would still likely run several hundred pages. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Even after allegations and claims barred by the Judgment are removed, there will be nothing short or plain about the SACC.[9]

---

[8] Although plaintiffs alleged that Michigan law should govern the claims alleged in the Post-Sale Consolidated Complaint, Lead Counsel conceded following briefing that the law of each plaintiff's home jurisdiction must govern their claims. The parties' stipulation to that effect was entered by the Court on March 24, 2015. (ECF No. 697.)

[9] *See, e.g., Blakely v. Wells*, 209 F. App'x 18, 20 (2d Cir. 2006) ("The District Court acted within the bounds of permissible discretion in dismissing the second amended complaint for noncompliance with Rule 8(a). The pleading, which spanned 57 pages and contained 597 numbered paragraphs, was far from short or plain."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("The Amended Complaint in the present case spans 98 pages and 367 separate paragraphs. The prolix, discursive, [and] redundant . . . assertions contained therein are improper.").

# KIRKLAND & ELLIS LLP

The Honorable Jesse M. Furman
June 30, 2015
Page 6

                                                 Respectfully submitted,

                                                 /s/ Richard C. Godfrey, P.C.
                                                 /s/ Andrew B. Bloomer, P.C.

                                                 *Counsel for Defendant General Motors LLC*

cc:     Lead Counsel for Plaintiffs
          Counsel of Record for Defendants

Upon review of this letter and the letter from Lead Counsel (14-MD-2543 Docket No. 1100), the Court concludes that it is premature to engage in motion practice with respect to the SACC at this time. As much as the Court wants to continue to move the MDL proceedings forward aggressively, it agrees with New GM that motion practice with respect to the SACC should be deferred --- at least until after the question of whether the SACC is consistent with the Bankruptcy Court's judgment of June 1, 2015, is resolved. (In the meantime, of course, discovery continues to proceed on the aggressive-but-reasonable schedule that the Court has set, and the bellwether trial process for personal injury and wrongful death cases is underway, with the first trial scheduled to begin in under six months.)

The Court will revisit the issue after the question of whether the SACC is consistent with the Bankruptcy Court's judgment is resolved, at which point it will decide whether motion practice should also await resolution of the appeals from the Bankruptcy Court's judgment --- a decision that may turn on whether the Second Circuit agrees to hear the appeal directly (which would presumably expedite matters considerably, as any decision by this Court on an appeal from the Bankruptcy Court would presumably be appealed, in turn, to the Second Circuit anyway --- resulting in a delay of months, if not years) and, if so, on whether the parties agree to seek expedited treatment of the appeal from the Second Circuit.

The Clerk of Court is directed to docket this endorsed letter in 14-MD-2543 and 14-MC-2543.

                                                 SO ORDERED.

                                                 July 15, 2015