# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BENJAMIN W. PILLARS, as
Personal Representative for the
Estate of KATHLEEN ANN PILLARS,
Deceased,

                Plaintiff,

v.

GENERAL MOTORS LLC,

                Defendant.

Honorable Thomas J. Ludington
Case: 1:15-cv-11360-TLL-PTM

| | |
|---|---|
| Victor J. Mastromarco, Jr. (P35464) | Thomas P. Branigan (P41774) |
| Russell C. Babcock (P57662) | Elizabeth A. Favaro (P69610) |
| The Mastromarco Firm | Bowman and Brooke LLP |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 1024 N. Michigan Avenue | 41000 Woodward Avenue, Suite 200 East |
| Saginaw, MI 48602 | Bloomfield Hills, MI 48304 |
| 989.752.1414 / 989.752.6202 fx | 248.205.3300 ph / 248.205.3399 fx |
| Vmastromar@aol.com | tom.branigan@bowmanandbrooke.com |
| russellbabcock@aol.com | elizabeth.favaro@bowmanandbrooke.com |

**DEFENDANT GENERAL MOTORS LLC'S MOTION FOR LEAVE TO
FILE AMENDED NOTICE OF REMOVAL AND AMENDED ANSWER**

1

NOW COMES the Defendant, General Motors LLC ("GM LLC"), and hereby moves this Honorable Court pursuant to Federal Rule of Civil Procedure 15(a)(2) for an order granting GM LLC leave to file an amended Notice of Removal and an amended Answer for the reasons set forth more fully in the brief filed in support of this motion, and requests an expedited hearing.

Respectfully submitted,

Bowman and Brooke LLP

By:   /s/Thomas P. Branigan
     Thomas P. Branigan (P41774)
     Elizabeth A. Favaro (P69610)
     Attorneys for Defendant
     41000 Woodward Avenue
     Suite 200 East
     Bloomfield Hills, MI  48304
     248.205.3300 ph / 248.205.3399 fx
     tom.branigan@bowmanandbrooke.com
     elizabeth.favaro@bowmanandbrooke.com

# <u>TABLE OF CONTENTS</u>

I.    Introduction........................................................................................1

II.    Argument and Authorities ................................................................4

III.    Conclusion.........................................................................................7

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)
(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ..................................5

*In re Kattouah*, 452 B.R. 604, 608 (E.D. Mich. 2011) ..................................6

*Sec. Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc.*, 64 F.3d
1001, 1009 (6th Cir. 1995) ......................................................................5

*Wade v. Knoxville Utilities Bd.*, 259 F.3d 458-59 ......................................5

*Wade v. Cavalry Portfolio Servs., LLC*, No. 3:08-CV-479-S, 2010 WL
3395690 (W.D. Ky. Aug. 25, 2010) .........................................................6

**Statutes**

28 U.S.C. § 1452(a) ....................................................................................1

**Rules**

Fed.R.Civ.P. 15(a)(2) ..............................................................................2, 4

12388985v1

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

Whether this Court should grant General Motors LLC leave to amend its

Notice of Removal and Answer to Plaintiff's Amended Complaint?

General Motors LLC answers:  **YES**.

12388985v1

## BRIEF IN SUPPORT

## I.    Introduction

Although this Court granted General Motors LLC's ("GM LLC's") motion to stay this case pending a transfer decision by the Judicial Panel on Multidistrict Litigation after the Panel's July 30 hearing (ECF No. 14), GM LLC is compelled to file this motion to correct the same inadvertent factual error made in two prior submissions in this case.  Specifically, on April 14, 2015, GM LLC removed this action from the Circuit Court for Bay County, Michigan pursuant to bankruptcy court jurisdiction under 28 U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure. (ECF No. 1.)  Three weeks later, on May 5, 2015, New GM answered the amended complaint.  (ECF No. 2.)

In both its Notice of Removal and in its Answer, GM LLC quoted from an Amended Master Sale and Purchase Agreement ("Sale Agreement") in General Motors Corporation's ("Old GM's") bankruptcy case, dated June 26, 2009.  In particular, GM LLC's Notice of Removal and its Answer inadvertently quoted the following language from Section 2.3(a)(ix) of the Sale Agreement, which states:

> (ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to

1

property caused by motor vehicles designed for
operation on public roadways or by the component
parts of such motor vehicles and, in each case,
manufactured, sold or delivered by Sellers
(collectively, "Product Liabilities"), which arise
directly out of **accidents, incidents or other
distinct and discreet occurrences that happen**
on or after the Closing Date [July 10, 2009] and
arise from such motor vehicles' operation or
performance. . . .

(ECF No. 1 at ¶11, n. 1; ECF No. 2 at ¶ 17) (emphasis added).

In fact, on June 30, 2009, prior to the time that the Bankruptcy Court
approved the 363 Sale transaction, a First Amendment to the Sale
Agreement (the "First Amendment") was executed, which amended Section
2.3(a)(ix) as follows:

(ix) all Liabilities to third parties for death, personal
injury, or other injury to Persons or damage to
property caused by motor vehicles designed for
operation on public roadways or by the component
parts of such motor vehicles and, in each case,
manufactured, sold or delivered by Sellers
(collectively, "Product Liabilities"), which arise
directly out of **death, personal injury or other
injury to Persons or damage to property caused
by accidents incidents first occurring on** or after
the Closing Date [July 10, 2009] and arising from
such motor vehicles' operation or performance. . . .

(Exhibit 1 at pg. 2). The Sale Agreement, as amended by the First
Amendment, was approved by the Bankruptcy Court for the Southern

2

District of New York ("Bankruptcy Court") in an order dated July 5, 2009 ("Sale Order and Injunction"). There is no dispute, nor can there be, that the language in the First Amendment is the governing provision, and that the language quoted above superseded the text inadvertently quoted by GM LLC in its Answer and Notice of Removal.

Nonetheless, plaintiff is attempting to take unfair advantage of GM LLC's inadvertent error by arguing to the Bankruptcy Court that GM LLC is bound by the original language in the Sale Agreement—language everyone knows was superseded by the First Amendment to the Sale Agreement— because GM LLC inadvertently included the original language in its Answer and Notice of Removal in this case. At a July 16, 2015 Bankruptcy Court hearing, the Bankruptcy Judge attached significance to the fact that GM LLC's pleadings in this Court had not been amended. As a result, GM LLC seeks immediate relief to amend the pleadings of this otherwise stayed case to correct the obvious scrivener's error so that GM LLC's obligations are properly stated to what it had agreed to; that being, the language in the First Amendment of the Sale Agreement. GM LLC requested Plaintiff's consent to amend these pleadings to correct this inadvertent error, but Plaintiff has refused. GM LLC therefore needs urgent relief on this issue

3

from this Court in order to prevent Plaintiff from continuing to take unfair advantage on this issue. In all other respects, the case should remain stayed.

Accordingly, pursuant to Federal Rule of Civil Procedure 15(a)(2), GM LLC respectfully requests that leave be immediately given to amend its Notice of Removal and Answer to correctly reflect the language of Section 2.3(a)(ix) of the First Amendment to the Sale Agreement. (*See* Exhibits 2 and 3, Proposed Amended Notice of Removal and Proposed Amended Answer; both in redlined and non-redlined versions.) With those amendments made, GM LLC will then make a request in the Bankruptcy Court to grant it further relief based on the application of the governing provision in the First Amendment of the Sale Agreement.

## II. Argument and Authorities

Under Federal Rule of Civil Procedure 15.2(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave. *The court should freely give leave when justice so requires.*" Fed.R.Civ.P. 15(a)(2) (emphasis added). In determining whether to grant a party leave to amend a pleading, courts in this circuit consider the following factors: "[u]ndue delay in filing, lack of notice to the opposing party, bad

4

faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Hageman v. Signal L. P. Gas, Inc*., 486 F.2d 479, 484 (6th Cir. 1973) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Delay alone, however, does not justify the denial of leave to amend." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Associates, Inc*., 64 F.3d 1001, 1009 (6th Cir. 1995). Rather, "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted. *Wade v. Knoxville Utilities Bd*., 259 F.3d 458-59.

Here, all of the factors militate in favor of granting GM LLC's motion to amend. *First*, Plaintiff already has amended his complaint. GM LLC is seeking to amend its pleadings for the first time. *Second*, this case is in its infancy. GM LLC moved to stay this case shortly after it filed its Answer. A stay was granted approximately two weeks thereafter. Nothing of substance has transpired in this case. *Third*, the amendment is minimal and relates to nothing more than correcting a reference in one document from an earlier version, to the governing final version. *Fourth*, Plaintiff is already on notice of the inadvertent error and the proposed amendments therefore work no prejudice against Plaintiff. *Fifth*, GM LLC quoted the

5

12388985v1

correct language from the First Amendment in its opposition to Plaintiff's remand motion. (ECF No. 10.) Therefore, the inadvertent error is obvious, and the pleadings should be conformed to the indisputable governing document.

In reality, it is GM LLC that would be prejudiced if Plaintiff were permitted to continue to use this scrivener's error as an unintended admission against GM LLC in the parallel proceedings in the Bankruptcy Court. *See In re Kattouah*, 452 B.R. 604, 608 (E.D. Mich. 2011) ("Even if a statement is an admission, the trial court has broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases. For example, the court may relieve a party from its admission if it was the result of inadvertence or mistake.") (internal quotations and citation omitted); Ex. 4, *Wade v. Cavalry Portfolio Servs., LLC*, No. 3:08-CV-479-S, 2010 WL 3395690 (W.D. Ky. Aug. 25, 2010) (granting motion to amend answer where original answer included inadvertent mistakes).

In sum, there is no reason for New GM to have referred to an earlier draft of an agreement that is not controlling except for the fact that it was an inadvertent error. At this very early stage of these proceedings, GM LLC

12388985v1

should be allowed to amend these relevant pleadings to correct this error in order to prevent a manifest injustice from occurring.

## III.    Conclusion

For all the foregoing reasons, General Motors LLC respectfully moves for leave to amend its Notice of Removal and Answer to Plaintiff's Amended Complaint and for an expedited hearing.

Respectfully submitted,

Bowman and Brooke LLP

By:    /s/Thomas P. Branigan
       Thomas P. Branigan (P41774)
       Elizabeth A. Favaro (P69610)
       Attorneys for Defendant
       41000 Woodward Avenue
       Suite 200 East
       Bloomfield Hills, MI  48304
       248.205.3300 ph / 248.205.3399 fx
       tom.branigan@bowmanandbrooke.com
       elizabeth.favaro@bowmanandbrooke.com

12388985v1

## CERTIFICATE OF SERVICE

I certify that on July 17, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> Victor J. Mastromarco, Jr. (P35464)
> Russell C. Babcock (P57662)
> The Mastromarco Firm
> Attorneys for Plaintiff
> 1024 N. Michigan Avenue
> Saginaw, MI  48602
> 989.752.1414 / 989.752.6202 fx
> Vmastromar@aol.com
> russellbabcock@aol.com

> Bowman and Brooke LLP

> By:    /s/Thomas P. Branigan
> Thomas P. Branigan (P41774)
> Elizabeth A. Favaro (P69610)
> Attorneys for Defendant
> 41000 Woodward Avenue
> Suite 200 East
> Bloomfield Hills, MI  48304
> 248.205.3300 ph / 248.205.3399 fx
> tom.branigan@bowmanandbrooke.com
> elizabeth.favaro@bowmanandbrooke.com

12388985v1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BENJAMIN W. PILLARS, as
Personal Representative for the
Estate of KATHLEEN ANN PILLARS,
Deceased,

                                     Honorable Thomas J. Ludington

          Plaintiff,              Case:  1:15-cv-11360-TLL-PTM

v.

GENERAL MOTORS LLC,

          Defendant.

## DEFENDANT GENERAL MOTORS LLC'S MOTION FOR LEAVE TO FILE AMENDED NOTICE OF REMOVAL AND AMENDED ANSWER

### INDEX OF EXHIBITS

1. First Amendment to Amended and Restated Master Sale and Purchase Agreement;
2. Proposed Amended Notice of Removal (both redlined and non-redlined versions);
3. Proposed General Motors LLC's First Amended Answer to Plaintiff's Amended Complaint (both redlined and non-redlined versions); and
4. Wade v. Cavalry Portfolio Servs., LLC, No. 3:08-CV-479-S, 2010 WL 3395690 (W.D. Ky. Aug. 25, 2010).

1:15-cv-11300-TLL-PTM    Doc # 75-2    Filed 07/17/15    Pg 15 of 51    Pg ID 732

# Exhibit 1

# FIRST AMENDMENT TO AMENDED AND RESTATED MASTER SALE AND PURCHASE AGREEMENT

THIS FIRST AMENDMENT TO AMENDED AND RESTATED MASTER SALE AND PURCHASE AGREEMENT, dated as of June 30, 2009 (this "Amendment"), is made by and among General Motors Corporation, a Delaware corporation ("Parent"), Saturn LLC, a Delaware limited liability company ("S LLC"), Saturn Distribution Corporation, a Delaware corporation ("S Distribution"), Chevrolet-Saturn of Harlem, Inc., a Delaware corporation ("Harlem," and collectively with Parent, S LLC and S Distribution, "Sellers," and each a "Seller"), and NGMCO, Inc., a Delaware corporation and successor-in-interest to Vehicle Acquisition Holdings LLC, a Delaware limited liability company ("Purchaser").

WHEREAS, Sellers and Purchaser have entered into that certain Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009 (the "Purchase Agreement"); and

WHEREAS, the Parties desire to amend the Purchase Agreement as set forth herein.

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements contained in this Agreement, and for other good and valuable consideration, the value, receipt and sufficiency of which are acknowledged, the Parties hereby agree as follows:

Section 1.    *Capitalized Terms.*  All capitalized terms used but not defined herein shall have the meanings specified in the Purchase Agreement.

Section 2.    *Amendments to Purchase Agreement.*

(a)    **Section 2.3(a)(v)** of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

> (v)    all Liabilities of Sellers (A) arising in the Ordinary Course of Business during the Bankruptcy Cases through and including the Closing Date, to the extent such Liabilities are administrative expenses of Sellers' estates pursuant to Section 503(b) of the Bankruptcy Code and (B) arising prior to the commencement of the Bankruptcy Cases, to the extent approved by the Bankruptcy Court for payment by Sellers pursuant to a Final Order (and for the avoidance of doubt, Sellers' Liabilities in clauses (A) and (B) above include all of Sellers' Liabilities for personal property Taxes, real estate and/or other ad valorem Taxes, use Taxes, sales Taxes, franchise Taxes, income Taxes, gross receipt Taxes, excise Taxes, Michigan Business Taxes and Michigan Single Business Taxes and other Liabilities mentioned in the Bankruptcy Court's Order - Docket No. 174), in each case, other than (1) Liabilities of the type described in **Section 2.3(b)(iv)**, **Section 2.3(b)(vi)**, **Section 2.3(b)(ix)** and **Section 2.3(b)(xii)**, (2) Liabilities arising under any dealer sales and service Contract and any Contract related thereto, to the extent such Contract has been designated as

a Rejectable Executory Contract, and (3) Liabilities otherwise assumed in this **Section 2.3(a)**;

(b)    **Section 2.3(a)(ix)** of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

(ix)    all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date and arising from such motor vehicles' operation or performance (for avoidance of doubt, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability arising or contended to arise by reason of exposure to materials utilized in the assembly or fabrication of motor vehicles manufactured by Sellers and delivered prior to the Closing Date, including asbestos, silicates or fluids, regardless of when such alleged exposure occurs);

(c)    **Section 2.3(b)(xii)** of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

(xii)    all workers' compensation Claims with respect to Employees residing or employed in, as the case may be and as defined by applicable Law, (A) the states set forth on **Exhibit G** and (B) if the State of Michigan (1) fails to authorize Purchaser and its Affiliates operating within the State of Michigan to be a self-insurer for purposes of administering workers' compensation Claims or (2) requires Purchaser and its Affiliates operating within the State of Michigan to post collateral, bonds or other forms of security to secure workers' compensation Claims, the State of Michigan (collectively, "Retained Workers' Compensation Claims");

(d)    **Section 6.6(d)** of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

(d)    All Assumable Executory Contracts shall be assumed and assigned to Purchaser on the date (the "Assumption Effective Date") that is the later of (i) the date designated by the Purchaser and (ii) the date following expiration of the objection deadline if no objection, other than to the Cure Amount, has been timely filed or the date of resolution of any objection unrelated to Cure Amount, as provided in the Sale Procedures Order; provided, however, that in the case of each (A) Assumable Executory Contract identified on Section 6.6(a)(i) of the Sellers' Disclosure Schedule, (2) Deferred Termination Agreement (and the related Discontinued Brand Dealer Agreement or Continuing Brand Dealer Agreement)

designated as an Assumable Executory Contract and (3) Participation Agreement (and the related Continuing Brand Dealer Agreement) designated as an Assumable Executory Contract, the Assumption Effective Date shall be the Closing Date and (B) Assumable Executory Contract identified on Section 6.6(a)(ii) of the Sellers' Disclosure Schedule, the Assumption Effective Date shall be a date that is no later than the date set forth with respect to such Executory Contract on Section 6.6(a)(ii) of the Sellers' Disclosure Schedule.  As soon as reasonably practicable following a determination that an Executory Contract shall be designated as an Assumable Executory Contract hereunder, Sellers shall use reasonable best efforts to notify each third party to such Executory Contract of their intention to assume and assign such Executory Contract in accordance with the terms of this Agreement and the Sale Procedures Order.  On the Assumption Effective Date for any Assumable Executory Contract, such Assumable Executory Contract shall be deemed to be a Purchased Contract hereunder.  If it is determined under the procedures set forth in the Sale Procedures Order that Sellers may not assume and assign to Purchaser any Assumable Executory Contract, such Executory Contract shall cease to be an Assumable Executory Contract and shall be an Excluded Contract and a Rejectable Executory Contract. Except as provided in **Section 6.31**, notwithstanding anything else to the contrary herein, any Executory Contract that has not been specifically designated as an Assumable Executory Contract as of the Executory Contract Designation Deadline applicable to such Executory Contract, including any Deferred Executory Contract, shall automatically be deemed to be a Rejectable Executory Contract and an Excluded Contract hereunder.  Sellers shall have the right, but not the obligation, to reject, at any time, any Rejectable Executory Contract; provided, however, that Sellers shall not reject any Contract that affects both Owned Real Property and Excluded Real Property (whether designated on **Exhibit F** or now or hereafter designated on Section 2.2(b)(v) of the Sellers' Disclosure Schedule), including any such Executory Contract that involves the provision of water, water treatment, electric, fuel, gas, telephone and other utilities to any facilities located at the Excluded Real Property, whether designated on **Exhibit F** or now or hereafter designated on Section 2.2(b)(v) of the Sellers' Disclosure Schedule (the "Shared Executory Contracts"), without the prior written consent of Purchaser.

Section 3.    *Effectiveness of Amendment.*  Upon the execution and delivery hereof, the Purchase Agreement shall thereupon be deemed to be amended and restated as set forth in Section 2, as fully and with the same effect as if such amendments and restatements were originally set forth in the Purchase Agreement.

Section 4.    *Ratification of Purchase Agreement; Incorporation by Reference.*  Except as specifically provided for in this Amendment, the Purchase Agreement is hereby confirmed and ratified in all respects and shall be and remain in full force and effect in accordance with its terms.  This Amendment is subject to all of the terms, conditions and limitations set forth in the Purchase Agreement, including **Article IX** thereof, which sections are hereby incorporated into this Amendment, mutatis mutandis, as if they were set forth in their entirety herein.

1:15-cv-11360  Doc 13308-1  Doc #: 075-9  Filed 07/16/15  Pg 4 of 5  Pg ID 736

    *Section 5.    Counterparts.* This Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same agreement.  All signatures of the Parties may be transmitted by facsimile or electronic delivery, and each such facsimile signature or electronic delivery signature (including a pdf signature) will, for all purposes, be deemed to be the original signature of the Party whose signature it reproduces and be binding upon such Party.

[Remainder of page intentionally left blank]

**IN WITNESS WHEREOF,** each of the Parties hereto has caused this Amendment to be executed by its duly authorized officer, in each case as of the date first written above.

GENERAL MOTORS CORPORATION

By: _____
    Name: Frederick A. Henderson
    Title:   President and Chief Executive
           Officer

SATURN LLC

By: _____
    Name: Jill Lajdziak
    Title:   President

SATURN DISTRIBUTION CORPORATION

By: _____
    Name: Jill Lajdziak
    Title:   President

CHEVROLET-SATURN OF HARLEM, INC.

By: _____
    Name: Michael Garrick
    Title:   President

NGMCO, INC.

By: _____
    Name: Sadiq Malik
    Title:   Vice President and Treasurer

IN WITNESS WHEREOF, each of the Parties hereto has caused this Amendment to be executed by its duly authorized officer, in each case as of the date first written above.

GENERAL MOTORS CORPORATION

By: _____
    Name: Frederick A. Henderson
    Title: President and Chief Executive
           Officer

SATURN LLC

By: _____
    Name: Jill Lajdziak
    Title: President

SATURN DISTRIBUTION CORPORATION

By: _____
    Name: Jill Lajdziak
    Title: President

CHEVROLET-SATURN OF HARLEM, INC.

By: _____
    Name: Michael Garrick
    Title: President

NGM CO, INC.

By: _____
    Name: Sadiq Malik
    Title: Vice President and Treasurer

IN WITNESS WHEREOF, each of the Parties hereto has caused this Amendment to be executed by its duly authorized officer, in each case as of the date first written above.

GENERAL MOTORS CORPORATION

By: _____
    Name: Frederick A. Henderson
    Title:  President and Chief Executive
           Officer

SATURN LLC

By: _____
    Name: Jill Lajdziak
    Title:  President

SATURN DISTRIBUTION CORPORATION

By: _____
    Name: Jill Lajdziak
    Title:  President

CHEVROLET-SATURN OF HARLEM, INC.

By: _____
    Name: Michael Garrick
    Title:  President

NGMCO, INC.

By: _____
    Name: Sadiq Malik
    Title:  Vice President and Treasurer

**IN WITNESS WHEREOF,** each of the Parties hereto has caused this Amendment to be executed by its duly authorized officer, in each case as of the date first written above.

GENERAL MOTORS CORPORATION

By: _____
    Name:  Frederick A. Henderson
    Title:   President and Chief Executive
           Officer

SATURN LLC

By: _____
    Name:  Jill Lajdziak
    Title:   President

SATURN DISTRIBUTION CORPORATION

By: _____
    Name:  Jill Lajdziak
    Title:   President

CHEVROLET-SATURN OF HARLEM, INC.

By: _____
    Name:  Michael Garrick
    Title:   President

NGMCO, INC.

By: _____
    Name:  Sadiq Malik
    Title:   Vice President and Treasurer

# Exhibit 2

# Redlined Version

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

| | | |
|---|---|---|
| BENJAMIN W. PILLARS, | § | |
| as Personal Representative of the Estate of | § | |
| KATHLEEN ANN PILLARS, deceased, | § | CIVIL ACTION NO. 1:15-cv-11360 |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| GENERAL MOTORS LLC, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S AMENDED NOTICE OF REMOVAL

Defendant General Motors LLC ("New GM") removes this action from the Circuit Court of Bay County, Michigan to the United States District Court for the Eastern District of Michigan, Northern Division, pursuant to 28 U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), based on the following facts:

## BACKGROUND

1.    On March 24, 2015, New GM was served with a Summons and Complaint (the "Complaint") in an action styled *Benjamin W. Pillars, as Personal Representative of the Estate of Kathleen Ann Pillars, deceased, v. General Motors LLC,* Case No. 15-3159, filed March 23, 2015, in the Circuit Court for Bay County, Michigan (the "Action").

2.    The Complaint alleges claims arising out of a motor vehicle accident that allegedly occurred on November 23, 2005, when Kathleen Ann Pillars ("Pillars") was operating a 2004 Pontiac Grand Am. Compl. ¶ 4. The Complaint alleges that Pillars "lost control of her vehicle when the defective ignition switch in her vehicle went to the off position[.]" *Id.* ¶ 7. The Complaint further contends that Pillars sustained incapacitating injuries that eventually led to her death. *Id.* ¶ 9.

3.    Plaintiff Benjamin W. Pillars ("Plaintiff") brings this Action as Personal Representative of the Estate of Kathleen Ann Pillars. *Id.* ¶ 10.  Plaintiff seeks recovery under theories of (1) products liability; (2) negligence; (3) Michigan Consumer Protection Act; (4) misrepresentation; (5) breach of contract, (6) promissory estoppel; (7) fraud; (8) fraudulent concealment; and (9) gross negligence. *Id.* ¶¶ 13-87.

4.    This Action is one of more than 185 actions (the "Ignition Switch Actions") filed in, or removed to, federal court since February 2014 that assert factual allegations involving defective ignition switches, including in Pontiac Grand Am vehicles.  The Ignition Switch Actions have been brought in at least 38 federal district courts, including in Alabama, Arizona, Arkansas, California, Colorado, the District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, and Texas.

5.    On March 25, 2014, the Judicial Panel on Multidistrict Litigation ("JPML") established MDL 2543, *In re: General Motors LLC Ignition Switch Litigation*.  Subsequently, on June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL Court and assigned the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings in the Ignition Switch Actions.  *In re Gen. Motors LLC Ignition Switch Litig.*, MDL No. 2543, ECF No. 266 (J.P.M.L. June 9, 2014), attached as <u>Exhibit A</u>.  The JPML transferred an initial group of fifteen actions pending in six federal districts to the Southern District of New York after concluding that it was "undisputed" that cases alleging a defect in the vehicle ignition switch of certain New GM vehicles satisfied the requirements for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.  *Id.* at 2.

6.      More than 170 additional Ignition Switch Actions have since been filed in, or transferred to, the MDL Court, including claims to recover both for alleged economic losses and alleged personal injuries.  *See generally* MDL No. 2543; *e.g.* ECF Nos. 207, 358, and 424, attached as Exhibit B (*Abney, et al. v. Gen. Motors LLC*, 14-CV-5810 (S.D.N.Y.) (alleging personal injury claims related to Pontiac Grand Am vehicles, among others); *Klingensmith v. General Motors LLC,* 14-cv-9110 (S.D.N.Y.) (alleging wrongful death and personal injury claims involving a 2000 Pontiac Grand Am and a 2002 Pontiac Grand Am); *Fleck v. Gen. Motors LLC*, 14-08176 (S.D.N.Y.) (involving more than 300 personal injury plaintiffs allegedly involved in accidents in various model vehicles, including the Pontiac Grand Am)).

7.      As soon as the Clerk assigns this case a docket number, New GM will notify the JPML that this case is a tag-along action pursuant to Panel Rule 7.1.  Because the ignition switch allegations in this case share "one or more common questions of fact" with the other Ignition Switch Actions, this case is appropriate for MDL transfer and consolidation with the other Ignition Switch Actions pending in the Southern District of New York.  *See* 28 U.S.C. § 1407(a).

## BASIS FOR REMOVAL

8.      On June 1, 2009, Motors Liquidation Company, f/k/a General Motors Corporation ("Old GM") filed a petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court").

9.      On July 5, 2009, the New York Bankruptcy Court issued an order ("Sale Order and Injunction") approving the sale ("363 Sale") of substantially all of Old GM's assets to the Purchaser, defined as "NGMCO, Inc., a Delaware corporation and successor-in-interest to Vehicle Acquisition Holdings LLC, a Delaware limited liability company."  The sale of assets was free and clear of all liens, claims, and encumbrances, except for certain limited exceptions not applicable here.  *See* Sale

3

Order and Injunction attached as <u>Exhibit C</u>, ¶ 7.  The 363 Sale was consummated on July 10, 2009.  Ultimately, New GM was transferred Old GM's assets and also assumed certain limited liabilities, as outlined in the Sale Order and Injunction and Amended and Restated Master Sale and Purchase Agreement ("Sale Agreement").

10.     The Sale Order and Injunction is a final order and no longer subject to any appeal.

11.     Under the terms of the Sale Order and Injunction, and the Sale Agreement that it approved, all liabilities relating to vehicles and parts sold by Old GM (subject to limited exceptions not applicable here) were legacy liabilities retained by Old GM.  *See* <u>Exhibit C,</u> ¶¶ 44-45; *see also In re Gen. Motors Corp.*, 407 B.R. 463, 481 (Bankr. S.D.N.Y. 2009), *aff'd sub nom., In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65 (S.D.N.Y. 2010).  The Bankruptcy Court's Sale Order and Injunction explicitly provides that New GM would have no responsibility for any liabilities (except for Assumed Liabilities[1]) relating to the operation of Old GM's business, or the production of vehicles and parts before July 10, 2009.  *See* <u>Exhibit C,</u> ¶¶ 46, 9 & 8.  This limitation provides~~includes~~, in particular, that New GM is not liable for "all Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date [July 10, 2009]."  Sale Agreement § 2.3(b)(ix).  The Order also enjoins "[a]ll persons and entities . . . holding . . . claims against . . . [Old GM] or the Purchased Assets . . . arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation

---

[1] GM LLC admits it ultimately assumed a narrow band of certain liabilities, including the following as provided in Section 2.3(a)(ix) of the Sale Order and/or the Amended and Restated Master Sale and Purchase Agreement:

all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or~~,~~ incidents ~~or other distinct and discreet occurrences that happen on or~~first occurring on or after the Closing Date [July 10, 2009] and aris~~ing~~ from such motor vehicles' operation or performance . . . .

4

of the Purchased Assets prior to the Closing [July 10, 2009]. . . from asserting [such claims] against

[New GM]. . . ."  *See* <u>Exhibit C</u> ¶ 8.  This injunction expressly applies to rights or claims "based on

any successor or transferee liability."  *Id.* ¶ 46.

12.     The New York Bankruptcy Court reserved exclusive and continuing jurisdiction to

enforce its injunction and to address and resolve all controversies concerning the interpretation and

enforcement of the Sale Order and Injunction.  *Id.* ¶ 71.  Old GM's bankruptcy case is still pending

in the New York Bankruptcy Court, and that Court has previously exercised its exclusive and

continuing jurisdiction to enforce the Sale Order and Injunction to actions filed against New GM,

including cases based on alleged defects in Old GM vehicles.  *See Trusky v. Gen. Motors Co. (In re*

*Motors Liquidation Co.)*, Adv. No. 12-09803, 2013 Bankr. LEXIS 620 (Bankr. S.D.N.Y. Feb. 19,

2013); *Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. No. 09-00509, 2012 Bankr.

LEXIS 1688 (Bankr. S.D.N.Y. Apr. 17, 2012), *aff'd*, 500 B.R. 333 (S.D.N.Y. 2013); *see also In re*

*Motors Liquidation Co.*, 2011 WL 6119664 (Bankr. S.D.N.Y. 2010).

13.     Under 28 U.S.C. §§ 157(b) and 1334(b), the New York Bankruptcy Court had core

jurisdiction to approve the 363 Sale and enter the Sale Order and Injunction.  Thus, this Action and

any dispute concerning the Sale Order and Injunction, and the Sale Agreement, are subject to the

core jurisdiction of the New York Bankruptcy Court.  *See In re Hereford Biofuels, L.P.*, 466 B.R.

841, 844 (Bankr. N.D. Tex. 2012) (post-confirmation dispute regarding interpretation and

enforcement of a sale order was a core proceeding); *Luan Investment S.E. v. Franklin 145 Corp.*, 304

F.3d 223, 229-30 (2d Cir. 2002) (disputes concerning Bankruptcy Court's sale order fall within

"core" jurisdiction); *In re Eveleth Mines, LLC*, 312 B.R. 634, 644-45 and n.14 (Bankr. D. Minn.

2004) ("A purchaser that relies on the terms of a bankruptcy court's order, and whose title and rights are given life by that order, should have a forum in the issuing court.").

14.     On August 1, 2014, New GM filed a "Motion to Enforce the Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits" ("Pre-Closing Accident Motion to Enforce"), requesting that the New York Bankruptcy Court enforce the injunction contained in the Sale Order and Injunction against plaintiffs who were involved in accidents that pre-date the closing of the 363 Sale, and who are asserting liabilities not assumed by New GM from Old GM. Specifically, because Plaintiff's claims are based on a vehicle and parts manufactured by Old GM, and a motor vehicle accident predating the closing of the 363 Sale, the Amended Complaint necessarily requires judicial construction and/or interpretation of the Sale Order and Injunction. The Complaint, therefore, is subject to the Sale Order and Injunction. Accordingly, immediately upon removal, New GM will identify this case on a supplemental schedule in the New York Bankruptcy Court as being subject to the Pre-Closing Accident Motion to Enforce.

15.     As such, the Action implicates the New York Bankruptcy Court's core and exclusive jurisdiction, and is therefore removable to this Court under 28 U.S.C. §§ 1452(a) and Bankruptcy Rule 9027.

## REMOVAL IS TIMELY

16.     This Notice of Removal is timely because it is being filed within 30 days after New GM was served with the Summons and Complaint. 28 U.S.C. § 1446(b). Plaintiff filed suit on March 23, 2015, and New GM was served with the Summons and Complaint on March 24, 2015. *See* Exhibit D.

## VENUE

6

17.    The United States District Court for the Eastern District of Michigan, Northern Division, is the United States district and division embracing the Circuit Court for Bay County, Michigan, where this action was filed and is pending.  *See* 28 U.S.C. § 89(b).  Therefore, venue of this removed action is proper in this Court.

## CONSENT

18.    New GM is the only defendant named in the underlying suit.  Consent is therefore not necessary to remove this Action.

## NOTICE TO THE STATE COURT

19.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on all adverse parties and filed with the Circuit Court for Bay County, Michigan, where this case was originally filed.

## STATE COURT FILINGS

20.    New GM files as Exhibit D copies of all process served upon it in this action as a part of this Notice, such being the Summons and Complaint.

WHEREFORE, Defendant General Motors LLC respectfully requests that this action in the Circuit Court for Bay County, Michigan be removed to this Court, and that no further proceedings be had in the Michigan state court.

Respectfully submitted,

_____

Thomas P. Branigan (P41774)
BOWMAN AND BROOKE LLP
41000 Woodward Ave., Ste. 200 East
Bloomfield Hills, Michigan 48304
248.205.3300 / 248.205.3399 Fax
thomas.branigan@bowmanandbrooke.com

Attorney for General Motors LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by e-mail to Victor J. Mastromarco, Jr. (Counsel for Plaintiff) at Vmastromar@aol.com, this 13th 16th day of July, 2015.

_____

Thomas P. Branigan (P41774)
BOWMAN AND BROOKE LLP
41000 Woodward Ave., Ste. 200 East
Bloomfield Hills, Michigan 48304
248.205.3300 / 248.205.3399 Fax
thomas.branigan@bowmanandbrooke.com

Attorney for General Motors LLC

# Non-Redlined Version

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | | |
|---|---|---|
| BENJAMIN W. PILLARS, | § | |
| as Personal Representative of the Estate of | § | |
| KATHLEEN ANN PILLARS, deceased, | § | CIVIL ACTION NO. 1:15-cv-11360 |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| GENERAL MOTORS LLC, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S AMENDED NOTICE OF REMOVAL

Defendant General Motors LLC ("New GM") removes this action from the Circuit Court of Bay County, Michigan to the United States District Court for the Eastern District of Michigan, Northern Division, pursuant to 28 U.S.C. § 1452(a) and Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), based on the following facts:

## BACKGROUND

1.      On March 24, 2015, New GM was served with a Summons and Complaint (the "Complaint") in an action styled *Benjamin W. Pillars, as Personal Representative of the Estate of Kathleen Ann Pillars, deceased, v. General Motors LLC,* Case No. 15-3159, filed March 23, 2015, in the Circuit Court for Bay County, Michigan (the "Action").

2.      The Complaint alleges claims arising out of a motor vehicle accident that allegedly occurred on November 23, 2005, when Kathleen Ann Pillars ("Pillars") was operating a 2004 Pontiac Grand Am. Compl. ¶ 4. The Complaint alleges that Pillars "lost control of her vehicle when the defective ignition switch in her vehicle went to the off position[.]" *Id. ¶* 7. The Complaint further contends that Pillars sustained incapacitating injuries that eventually led to her death. *Id.* ¶ 9.

3.      Plaintiff Benjamin W. Pillars ("Plaintiff") brings this Action as Personal
Representative of the Estate of Kathleen Ann Pillars.  *Id. ¶* 10.  Plaintiff seeks recovery under
theories of (1) products liability; (2) negligence; (3) Michigan Consumer Protection Act; (4)
misrepresentation; (5) breach of contract, (6) promissory estoppel; (7) fraud; (8) fraudulent
concealment; and (9) gross negligence.  *Id. ¶¶* 13-87.

4.      This Action is one of more than 185 actions (the "Ignition Switch Actions") filed in,
or removed to, federal court since February 2014 that assert factual allegations involving defective
ignition switches, including in Pontiac Grand Am vehicles.  The Ignition Switch Actions have been
brought in at least 38 federal district courts, including in Alabama, Arizona, Arkansas, California,
Colorado, the District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana,
Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma,
Pennsylvania, and Texas.

5.      On March 25, 2014, the Judicial Panel on Multidistrict Litigation ("JPML")
established MDL 2543, *In re: General Motors LLC Ignition Switch Litigation*.  Subsequently, on
June 9, 2014, the JPML designated the United States District Court for the Southern District of New
York as the MDL Court and assigned the Honorable Jesse M. Furman to conduct coordinated or
consolidated proceedings in the Ignition Switch Actions.  *In re Gen. Motors LLC Ignition Switch
Litig.*, MDL No. 2543, ECF No. 266 (J.P.M.L. June 9, 2014), attached as Exhibit A.  The JPML
transferred an initial group of fifteen actions pending in six federal districts to the Southern District
of New York after concluding that it was "undisputed" that cases alleging a defect in the vehicle
ignition switch of certain New GM vehicles satisfied the requirements for coordinated or
consolidated pretrial proceedings under 28 U.S.C. § 1407.  *Id.* at 2.

6.      More than 170 additional Ignition Switch Actions have since been filed in, or transferred to, the MDL Court, including claims to recover both for alleged economic losses and alleged personal injuries.  *See generally* MDL No. 2543; *e.g.* ECF Nos. 207, 358, and 424, attached as <u>Exhibit B</u> (*Abney, et al. v. Gen. Motors LLC*, 14-CV-5810 (S.D.N.Y.) (alleging personal injury claims related to Pontiac Grand Am vehicles, among others); *Klingensmith v. General Motors LLC,* 14-cv-9110 (S.D.N.Y.) (alleging wrongful death and personal injury claims involving a 2000 Pontiac Grand Am and a 2002 Pontiac Grand Am); *Fleck v. Gen. Motors LLC*, 14-08176 (S.D.N.Y.) (involving more than 300 personal injury plaintiffs allegedly involved in accidents in various model vehicles, including the Pontiac Grand Am)).

7.      As soon as the Clerk assigns this case a docket number, New GM will notify the JPML that this case is a tag-along action pursuant to Panel Rule 7.1.  Because the ignition switch allegations in this case share "one or more common questions of fact" with the other Ignition Switch Actions, this case is appropriate for MDL transfer and consolidation with the other Ignition Switch Actions pending in the Southern District of New York.  *See* 28 U.S.C. § 1407(a).

## BASIS FOR REMOVAL

8.      On June 1, 2009, Motors Liquidation Company, f/k/a General Motors Corporation ("Old GM") filed a petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court").

9.      On July 5, 2009, the New York Bankruptcy Court issued an order ("Sale Order and Injunction") approving the sale ("363 Sale") of substantially all of Old GM's assets to the Purchaser, defined as "NGMCO, Inc., a Delaware corporation and successor-in-interest to Vehicle Acquisition Holdings LLC, a Delaware limited liability company."  The sale of assets was free and clear of all liens, claims, and encumbrances, except for certain limited exceptions not applicable here.  *See* Sale

Order and Injunction attached as <u>Exhibit C</u>, ¶ 7.  The 363 Sale was consummated on July 10, 2009.
Ultimately, New GM was transferred Old GM's assets and also assumed certain limited liabilities, as
outlined in the Sale Order and Injunction and Amended and Restated Master Sale and Purchase
Agreement ("Sale Agreement").

10.     The Sale Order and Injunction is a final order and no longer subject to any appeal.

11.     Under the terms of the Sale Order and Injunction, and the Sale Agreement that it
approved, all liabilities relating to vehicles and parts sold by Old GM (subject to limited exceptions
not applicable here) were legacy liabilities retained by Old GM.  *See* <u>Exhibit C</u>, ¶¶ 44-45; *see also In
re Gen. Motors Corp.*, 407 B.R. 463, 481 (Bankr. S.D.N.Y. 2009), *aff'd sub nom., In re Motors
Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65 (S.D.N.Y. 2010).  The Bankruptcy
Court's Sale Order and Injunction explicitly provides that New GM would have no responsibility for
any liabilities (except for Assumed Liabilities[1]) relating to the operation of Old GM's business, or
the production of vehicles and parts before July 10, 2009.  *See* <u>Exhibit C</u>, ¶¶ 46, 9 & 8.  This
limitation provides, in particular, that New GM is not liable for "all Product Liabilities arising in
whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing
Date [July 10, 2009]."  Sale Agreement § 2.3(b)(ix).  The Order also enjoins "[a]ll persons and
entities . . . holding . . . claims against . . . [Old GM] or the Purchased Assets . . . arising under or out
of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the

---

[1] GM LLC admits it ultimately assumed a narrow band of certain liabilities, including the following as provided
in Section 2.3(a)(ix) of the Sale Order and/or the Amended and Restated Master Sale and Purchase Agreement:

all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to
property caused by motor vehicles designed for operation on public roadways or by the component
parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively,
"Product Liabilities"), which arise directly out of death, personal injury or other injury to Persons or
damage to property caused by accidents or incidents first occurring on or after the Closing Date [July
10, 2009] and arising from such motor vehicles' operation or performance . . . .

4

Purchased Assets prior to the Closing [July 10, 2009]. . .  from asserting [such claims] against [New GM]. . . ."  *See* Exhibit C ¶ 8.  This injunction expressly applies to rights or claims "based on any successor or transferee liability."  *Id.* ¶ 46.

12.     The New York Bankruptcy Court reserved exclusive and continuing jurisdiction to enforce its injunction and to address and resolve all controversies concerning the interpretation and enforcement of the Sale Order and Injunction.  *Id.* ¶ 71.  Old GM's bankruptcy case is still pending in the New York Bankruptcy Court, and that Court has previously exercised its exclusive and continuing jurisdiction to enforce the Sale Order and Injunction to actions filed against New GM, including cases based on alleged defects in Old GM vehicles.  *See Trusky v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. No. 12-09803, 2013 Bankr. LEXIS 620 (Bankr. S.D.N.Y. Feb. 19, 2013); *Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. No. 09-00509, 2012 Bankr. LEXIS 1688 (Bankr. S.D.N.Y. Apr. 17, 2012), *aff'd*, 500 B.R. 333 (S.D.N.Y. 2013); *see also In re Motors Liquidation Co.*, 2011 WL 6119664 (Bankr. S.D.N.Y. 2010).

13.     Under 28 U.S.C. §§ 157(b) and 1334(b), the New York Bankruptcy Court had core jurisdiction to approve the 363 Sale and enter the Sale Order and Injunction.  Thus, this Action and any dispute concerning the Sale Order and Injunction, and the Sale Agreement, are subject to the core jurisdiction of the New York Bankruptcy Court.  *See In re Hereford Biofuels, L.P.,* 466 B.R. 841, 844 (Bankr. N.D. Tex. 2012) (post-confirmation dispute regarding interpretation and enforcement of a sale order was a core proceeding); *Luan Investment S.E. v. Franklin 145 Corp.*, 304 F.3d 223, 229-30 (2d Cir. 2002) (disputes concerning Bankruptcy Court's sale order fall within "core" jurisdiction); *In re Eveleth Mines*, *LLC*, 312 B.R. 634, 644-45 and n.14 (Bankr. D. Minn. 2004) ("A purchaser that relies on the terms of a bankruptcy court's order, and whose title and rights are given life by that order, should have a forum in the issuing court.").

1:15-cv-13600-TLL-PTM    Doc # 13-3    Filed 07/17/15    Pg 5 of 15    Pg ID 97

14.    On August 1, 2014, New GM filed a "Motion to Enforce the Sale Order and
Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits" ("Pre-Closing Accident Motion to
Enforce"), requesting that the New York Bankruptcy Court enforce the injunction contained in the
Sale Order and Injunction against plaintiffs who were involved in accidents that pre-date the closing
of the 363 Sale, and who are asserting liabilities not assumed by New GM from Old GM.
Specifically, because Plaintiff's claims are based on a vehicle and parts manufactured by Old GM,
and a motor vehicle accident predating the closing of the 363 Sale, the Amended Complaint
necessarily requires judicial construction and/or interpretation of the Sale Order and Injunction. The
Complaint, therefore, is subject to the Sale Order and Injunction. Accordingly, immediately upon
removal, New GM will identify this case on a supplemental schedule in the New York Bankruptcy
Court as being subject to the Pre-Closing Accident Motion to Enforce.

15.    As such, the Action implicates the New York Bankruptcy Court's core and exclusive
jurisdiction, and is therefore removable to this Court under 28 U.S.C. §§ 1452(a) and Bankruptcy
Rule 9027.

## REMOVAL IS TIMELY

16.    This Notice of Removal is timely because it is being filed within 30 days after New
GM was served with the Summons and Complaint. 28 U.S.C. § 1446(b). Plaintiff filed suit on
March 23, 2015, and New GM was served with the Summons and Complaint on March 24, 2015.
*See* Exhibit D.

## VENUE

17.    The United States District Court for the Eastern District of Michigan, Northern
Division, is the United States district and division embracing the Circuit Court for Bay County,

Michigan, where this action was filed and is pending.  *See* 28 U.S.C. § 89(b).  Therefore, venue of this removed action is proper in this Court.

## CONSENT

18.     New GM is the only defendant named in the underlying suit.  Consent is therefore not necessary to remove this Action.

## NOTICE TO THE STATE COURT

19.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on all adverse parties and filed with the Circuit Court for Bay County, Michigan, where this case was originally filed.

## STATE COURT FILINGS

20.     New GM files as Exhibit D copies of all process served upon it in this action as a part of this Notice, such being the Summons and Complaint.

WHEREFORE, Defendant General Motors LLC respectfully requests that this action in the Circuit Court for Bay County, Michigan be removed to this Court, and that no further proceedings be had in the Michigan state court.

Respectfully submitted,

_____
Thomas P. Branigan (P41774)
BOWMAN AND BROOKE LLP
41000 Woodward Ave., Ste. 200 East
Bloomfield Hills, Michigan 48304
248.205.3300 / 248.205.3399 Fax
thomas.branigan@bowmanandbrooke.com

Attorney for General Motors LLC


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by e-mail to Victor J. Mastromarco, Jr. (Counsel for Plaintiff) at Vmastromar@aol.com, this 16th day of July, 2015.

_____
Thomas P. Branigan (P41774)
BOWMAN AND BROOKE LLP
41000 Woodward Ave., Ste. 200 East
Bloomfield Hills, Michigan 48304
248.205.3300 / 248.205.3399 Fax
thomas.branigan@bowmanandbrooke.com

Attorney for General Motors LLC

# Exhibit 3

# Redlined Version

# UNTED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | | |
|---|---|---|
| BENJAMIN W. PILLARS, | § | |
| as Personal Representative of the Estate of | § | |
| KATHLEEN ANN PILLARS, deceased, | § | CIVIL ACTION NO. 1:15-cv-11360 |
| | § | |
| Plaintiffs, | § | Hon. Thomas L. Ludington |
| | § | |
| v. | § | Magistrate Judge Patricia T. Morris |
| | § | |
| GENERAL MOTORS LLC, | § | |
| | § | |
| Defendant. | § | |

## GENERAL MOTORS LLC'S FIRST AMENDED ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Defendant General Motors LLC ("GM LLC"), by and through its attorneys, files this First Amended Answer to Plaintiff's Amended Complaint, and would show as follows:

## RESPONSE TO COMMON ALLEGATIONS

1.      GM LLC is without sufficient information to admit or deny the allegations in Paragraph 1 of the Amended Complaint, and therefore denies same.

2.      GM LLC admits that it is a limited liability company organized under the laws of Delaware with its principal place of business in Michigan.  GM LLC does not contest this Court's exercise of personal jurisdiction over it.  GM LLC denies the remaining allegations in Paragraph 2 of the Amended Complaint.

3.      GM LLC denies the allegations in Paragraph 3 of the Amended Complaint.

4.      GM LLC admits that according to the State of Michigan Traffic Crash Report (the "crash report"), Kathleen Ann Pillars ("Decedent") was driving a 2004 Pontiac Grand Am in Arenac County, Michigan on November 23, 2005 and was involved in an automobile accident.

1

GM LLC admits that it submitted to NHTSA the following information in a letter dated July 3, 2014, pursuant to 49 C.F.R. § 573.6, and subsequently amended the letter on July 16, 2014, pertaining to the recall of approximately 6,729,742 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, 1999-2005 MY Pontiac Grand Am and 2004-2008 MY Pontiac Grand Prix vehicles ("NHTSA Recall No. 14V400"). The July 16, 2014 letter provides as follows ("Recall Condition"):

> 573.6(c)(5): General Motors has decided that a defect which relates to motor vehicle safety exists in 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, 1999-2005 MY Pontiac Grand Am, and 2004-2008 MY Pontiac Grand Prix vehicles. If the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the "run" position. If this occurs, engine power, power steering and power braking may be affected, increasing the risk of a crash. The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.
>
> Until the recall has been performed, it is _very_ important that customers remove all items from their key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from the key ring.

GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 4 of the Amended Complaint.

5.      GM LLC is without sufficient information to admit or deny the allegations in Paragraph 5 of the Amended Complaint, and therefore denies same.

2

6.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 6 of the Amended Complaint.

7.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC admits that the crash report provides as follows:

> Driver veh 2 going straight.  Witness states veh #1 [Pontiac Grand Am] turned out from drive, loss control and had collision w/#2.

GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 7 of the Amended Complaint, and therefore denies same.

8.    GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 8 of the Amended Complaint, and therefore denies same.

9.    GM LLC admits the subject 2004 Pontiac Grand Am was equipped with a front driver and passenger airbag system, as well as a 3-point lap and shoulder belt, continuous loop design that incorporates a free-falling latch plate in those seating positions.  GM LLC further admits the subject 2004 Pontiac Grand Am was equipped with a Sensing and Diagnostic Module ("SDM").  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 9 of the Amended Complaint, and therefore denies same.

3

10.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 10 of the Amended Complaint.

11.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 11 of the Amended Complaint, and therefore denies same.

12.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 12 of the Amended Complaint, and therefore denies same.

13.     GM LLC admits that Plaintiff purports to allege an amount in controversy within the jurisdiction of this Court and that Plaintiff seeks recovery in excess of $25,000.  GM LLC denies the remaining allegations in Paragraph 13 of the Amended Complaint.

14.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 14 of the Amended Complaint, and therefore denies same.

15.     GM LLC admits in September 2014, it sent a letter to vehicle owners advising of NHTSA Recall No. 14V400.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 15 of the Amended Complaint, and therefore denies same.

## COUNT I

16.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

17.     GM LLC admits that prior to July 10, 2009, General Motors Corporation (not GM LLC) design in part, manufactured in part, assembled into final form, marketed and distributed various motor vehicles, including the 2004 Pontiac Grand Am, to independent authorized

4

dealers.

GM LLC admits that General Motors Corporation underwent bankruptcy in 2009. GM LLC admits that the United States Bankruptcy Court for the Southern District of New York issued the Sale Order and Injunction approving the sale of substantially all of Motors Liquidation Company f/k/a General Motors Corporation's assets to NGMCO, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (defined in the Sale Order and Injunction as the "Purchaser"). This Sale Order and Injunction was consummated on July 10, 2009. GM LLC admits it ultimately did acquire substantially all of Motors Liquidation Company f/k/a General Motors Corporation's assets, free and clear of all liens, claims, and encumbrances, except for certain limited exceptions as provided under the Sale Order and Injunction and Amended and Restated Master Sale and Purchase Agreement ("Sale Agreement"). GM LLC admits it ultimately did assume certain liabilities, including the following as provided in Section 2.3(a)(ix) of the Sale Agreement (as amended):

> (ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents, or incidents first occurring or other distinct and discreet occurrences that happen on or after the Closing Date [July 10, 2009] and arising from such motor vehicles' operation or performance. . . .

GM LLC denies the subject accident is an assumed liability pursuant to the Sale Order and Injunction, and denies the remaining allegations in Paragraph 17 of the Amended Complaint.

18.    GM LLC admits the subject Pontiac Grand Am at issue in this litigation should have been delivered to the purchaser with a written Limited New Vehicle Warranty by General

Motors Corporation.  GM LLC denies the remaining allegations in Paragraph 18 of the Amended Complaint.

19.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 19 of the Amended Complaint.

20.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC denies the remaining allegations in Paragraph 20 of the Amended Complaint.

21.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC admits that a vehicle with an ignition switch that is not in the "run" position will have the engine off.  GM LLC is without sufficient knowledge or information necessary to form a belief as to the truth of the allegations related to whether a key in "most vehicles" must be "intentionally turn[ed]," and therefore denies same. GM LLC denies the remaining allegations in Paragraph 21 of the Amended Complaint.

22.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC admits that it sent a letter to NHTSA dated February 25, 2014, pursuant to 49 C.F.R. § 573.6, pertaining to the ignition switch recall of approximately 748,024 2006-2007 MY Chevrolet HHR and Pontiac Solstice, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles ("NHTSA Recall 14V047"). GM LLC admits that Delphi Packard Electrical/Electronic Architecture was identified as a supplier pursuant to 49 C.F.R. § 573.6(c)(2)(iv) in the letters to NHTSA related to NHTSA Recall 14V047.  GM LLC admits

6

that Delphi prepared certain Analysis/Development/Validation Plan Reports dated January 10, 2002 and May 21, 2002, which documented the results of component-level validation tests required by General Motors Corporation's component technical specifications related to the Saturn Ion. These tests included a test to determine whether the torque required to rotate the switch from Run to Accessory complied with those specifications. According to these Analysis/Development/Validation Plan Reports, certain of the ignition switches tested related to the Saturn Ion had a torque measurement that fell below the specifications' minimum requirement. GM LLC denies Delphi Packard Electrical/Electronic Architecture was the supplier of the ignition switch for vehicles affected by NHTSA Recall No. 14V400.

GM LLC admits the July 16, 2014 letter to NHTSA related to NHTSA Recall No. 14V400 provides as follows:

> **2003**
> In 2003, GM learned of a customer complaint of intermittent vehicle shut offs in a MY 2003 Grand Am from a Michigan dealership. Despite multiple attempts, the dealership could not duplicate the condition. GM's Brand Quality Manager for the Grand Am personally visited the dealership and requested that the customer demonstrate the problem. The customer had an excess key ring and mass (containing approximately 50 keys and a set of brass knuckles), and was able to recreate the shut off upon driving over a speed bump at approximately 30-35 mph. On January 7, 2003, GM opened PRTS 0084/2003. On May 22, 2003, GM issued a voicemail to dealerships describing the condition and identifying the relevant population of vehicles as 1999 through 2003 MY Chevrolet Malibu, Oldsmobile Alero, and Pontiac Grand Am. The notice directed dealers to pay attention to the key size and mass of the customer's key ring in order to better diagnose the customer's complaint. On July 24, 2003, Engineering Work Order (EWO) 211722 was initiated to increase the detent plunger force on the ignition switch replacing P/N 22688239 with P/N 22737173. This was a running change made in 2004 to the Malibu, Grand Am and the Alero. The production and service stock disposition for P/N 22688239 was designated "use", so it is possible that P/N 22688239 was used to service vehicles.

7

**2004**

On March 17, 2004, EWO 317693 was initiated to increase the detent plunger force on the ignition switch on the Grand Prix in order to maintain commonality between the Grand Prix and the Malibu, Grand Am and the Alero. The old Grand Prix part number, P/N -10310896, was not changed to a new part number when the detent plunger force was changed, rather P/N 10310896 remained the part number for the new ignition switch. The service stock disposition was designated "use", so it is possible that the old switch was used to service vehicles.

**2014**

On May 22, 2014, NHTSA forwarded to GM Director of Global Policy and GM Director of Field Product Investigations and Evaluations a link to Service Bulletin No. 052203, issued in 2003, for the 1999-2003 MY Malibu, Alero and Grand Am. On June 4, 2014, a Product Investigations Engineer was assigned to investigate ignition switches used on the 1999-2003 MY Malibu, Grand Am and Alero; the investigation expanded to include a number of additional model vehicles. Between June 6, 2014 and June 24, 2014, the investigator worked with GM subject matter experts to gather and analyze data relating to the ignition switches used on the Malibu, Grand Am and Alero vehicles, as well as to identify other vehicles in which the relevant ignition switches were used. GM also collected and reviewed information from GM's databases, including its TREAD, warranty, customer satisfaction, and Engineering Analysis databases, and NHTSA's Vehicle Owners' Questionnaire (VOQ) database relating to vehicles using the ignition switch parts under review. From approximately June 13 through June 24, 2014, cars identified in the investigation were evaluated at the Milford Proving Ground. The road testing on the recall population indicated that, when the slotted key with a ring is carrying added weight, the torque performance of the ignition system may be insufficient to resist energy generated when a vehicle goes off road or experiences some other jarring event, potentially resulting in the unintentional movement of the key away from the "run" position.

On June 26, 2014, the investigator made a presentation to the Safety and Field Action Decision Authority (SFADA), which decided to conduct a Safety Recall of 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue,

> 1999-2005 MY Pontiac Grand Am and 2004-2008 MY Pontiac
> Grand Prix vehicles.

GM LLC denies the remaining allegations in Paragraph 22 of the Amended Complaint.

23.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 23 of the Amended Complaint.

24.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC denies the remaining allegations in Paragraph 24 of the Amended Complaint.

25.     GM LLC admits that on February 24, 2014, it sent a letter to NHTSA pursuant to the requirements of 49 C.F.R. § 573.6 with an attached chronology related to NHTSA Recall No. 14V047 that provides as follows:

> Between 2005 and the date of this submission, GM is currently aware
> of 23 frontal-impact crashes involving 2005 to 2007 Chevrolet Cobalts
> and 2007 Pontiac G5s in which the recall condition may have caused
> or contributed to the airbags' non-deployment.  During that same
> timeframe, of these crashes, GM is currently aware of six that resulted
> in eight fatalities of frontal occupants.  GM employees became aware
> of many of these crashes within a month of the dates on which they
> occurred.  As GM learned of these crashes, employees undertook to
> investigate the underlying facts and circumstances to determine,
> among other things, why the airbags had not deployed.  With respect
> to 22 of the 23 frontal-impact crashes referenced above, the data
> retrieved from the vehicles' SDMs indicated that the ignition switches
> were in the "run" position in nine of the crashes, in the "accessory"
> position in twelve of the crashes, and in the "off" position in one of the
> crashes.  Throughout this period, GM was involved in claims and
> lawsuits in which allegations were made regarding the ignition switch
> issue that is the subject of the recall.  These 23 crashes are out of a
> total U.S. population of 619,122 vehicles subject to the pending recall.

9

GM LLC further admits that the chronology attached to its March 11, 2014 letter to NHTSA

related to NHTSA Recall No. 14V047 provided:

> Based on the data and information collected, reviewed, and analyzed
> to date, GM has identified eight frontal-impact crashes in the United
> States involving 2003 to 2007 model year Saturn Ion vehicles in which
> the recall condition may have caused or contributed to the airbags'
> nondeployment.    Of these eight crashes, GM is currently aware of
> four involving the Saturn Ion that resulted in four fatalities (all of
> which involved 2004 model year vehicles) and six injuries of frontal
> occupants (which involved 2004, 2005, 2006 & 2007 model year
> vehicles).  GM is currently aware of three frontal-impact crashes in the
> United States involving 2006 to 2007 model year Chevrolet HHR
> vehicles in which the recall condition may have caused or contributed
> to the airbags' non-deployment.  These three crashes resulted in three
> injuries to frontal occupants.   GM is not currently aware of any
> frontal-impact crashes in the United States involving 2006-2007 model
> year Pontiac Solstice or 2007 model year Saturn Sky vehicles in which
> the recall condition may have caused or contributed to the airbags'
> non-deployment.  It is important to emphasize that GM continues to
> review data and information relating to the recalled vehicles in order to
> evaluate, among other things, whether there were any other crashes
> involving the recalled vehicles in which the recall condition may have
> caused or contributed to the airbags' non-deployment.

> GM employees became aware of most of the aforementioned crashes
> within two weeks of the dates on which they occurred.  As GM learned
> of these crashes, employees undertook to investigate the underlying
> facts and circumstances to determine, among other things, why the
> airbags had not deployed.  Throughout this period, GM was involved
> in claims and lawsuits with respect to the Ion and HHR vehicles where
> the non-deployment of airbags may have been caused by the ignition
> switch condition.  These eleven crashes in the United States are out of
> a total U.S. population of 748,024 vehicles subject to the Ion, HHR,
> Solstice and Sky recall. GM's review of data and information relating
> to the recalled vehicles continues.

GM LLC is without sufficient information to admit or deny the allegations in related to

allegations of "independent safety regulators," and therefore denies same.  GM LLC denies the

remaining allegations in Paragraph 25 of the Amended Complaint.

    26.    GM LLC incorporates by reference its admissions and averments as provided in

Paragraph 4 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 26 of the Amended Complaint.

27.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above. GM LLC admits that, as part of certain marketing campaigns, General Motors Corporation advertised the safety of General Motors Corporation vehicles, including the subject vehicle at issue. GM LLC denies the remaining allegations in Paragraph 27 of the Amended Complaint, and specifically denies it failed to disclose or actively concealed a defect.

28.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 28 of the Amended Complaint.

29.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 29 of the Amended Complaint.

30.     No response to Paragraph 30 is required by GM LLC as such as a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits that General

11

Motors Corporation had a duty imposed under operation of law related to the design, manufacture, testing, and assembly of motor vehicles. GM LLC denies the remaining allegations in Paragraph 30 of the Amended Complaint.

31.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 31 of the Amended Complaint.

32.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, 17, and 22 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 32 of the Amended Complaint, including subparagraphs (a) through (h), and specifically denies it acted with willful disregard.

33.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 33 of the Amended Complaint.

34.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC

denies the remaining allegations in Paragraph 34 of the Amended Complaint.

35.     GM LLC admits that Plaintiff purports to seek in excess of $25,000.00 in this action.  GM LLC denies the remaining allegations in Paragraph 35 of the Amended Complaint.

36.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC denies the remaining allegations in Paragraph 36 of the Amended Complaint, and specifically denies its acts and/or omissions were reckless, in reckless disregard for the public's safety and/or well-being, and/or constituted gross negligence.

37.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC denies the remaining allegations in Paragraph 37 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT II

38.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

39.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 27 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 39 of the Amended Complaint, and specifically denies it was grossly negligent.

40.     GM LLC incorporates by reference its admissions and averments as provided in

Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 40 of the Complaint, and specifically denies it was grossly negligent.

41.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 41 of the Amended Complaint, and specifically denies it was grossly negligent.

42.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, 17, and 27 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 42 of the Amended Complaint.

43.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 43 of the Amended Complaint.

44.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether

14

the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 44 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT III

45.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

46.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 27 above. GM LLC denies the remaining allegations in Paragraph 46 of the Amended Complaint.

47.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 27 above. GM LLC denies the remaining allegations in Paragraph 47 of the Amended Complaint.

48.     GM LLC admits that on June 13, 2005, in response to a New York Times inquiry, General Motors Corporation manager for safety communications Alan Adler issued a statement entitled "GM Statement on Chevrolet Cobalt Inadvertent Shutoffs," which states:

> In rare cases when a combination of factors is present, a Chevrolet Cobalt driver can cut power to the engine by inadvertently bumping the ignition key to the accessory or off position while the car is running.
>
> When this happens, the Cobalt is still controllable. The engine can be restarted after shifting to neutral.
>
> GM has analyzed this condition and believes it may occur when a driver overloads a key ring, or when the driver's leg moves amid factors such as steering column position, seat height and placement. Depending on these factors, a driver can

15

> unintentionally turn the vehicle off.
>
> Service advisers are telling customers they can virtually eliminate this possibility by taking several steps, including removing non-essential material from their key rings.

GM LLC denies the remaining allegations in Paragraph 48 of the Amended Complaint.

49.    GM LLC denies the allegations in Paragraph 49 of the Amended Complaint.

50.    GM LLC denies the allegations in Paragraph 50 of the Amended Complaint.

51.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 51 relating to the knowledge or alleged reliance of any individual consumer, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 51 of the Complaint.

52.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 52 of the Amended Complaint.

53.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 53 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

**COUNT IV**

16

54.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

55.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 30 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 55 of the Amended Complaint.

56.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC denies the remaining allegations in Paragraph 56 of the Amended Complaint, and specifically denies it intended to mislead or deceive Decedent or the public.

57.    GM LLC incorporates reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the allegations in Paragraph 57 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT V

58.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

59.    GM LLC admits the allegations in Paragraph 59 of the Amended Complaint.

60.    GM LLC admits that the GM Ignition Compensation Claims Resolution Facility

17

(the "Facility") states the following with respect to the Facility's purpose:

> [GM LLC] issued safety recalls identifying a defect in the ignition switch of certain vehicles in which the ignition switch may unintentionally move from the "run" position to the "accessory" or "off" position ("the Ignition Switch Defect"). This Protocol outlines the eligibility and process requirements for individual claimants to submit and settle claims alleging that the Ignition Switch Defect caused a death or physical injury in an automobile accident.

GM LLC denies the remaining allegations in Paragraph 50 of the Complaint.

61.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above. GM LLC admits in September 2014, it sent a letter to vehicle owners advising of NHTSA Recall No. 14V400. GM LLC admits that the Facility's website (section 1.3 of the Frequently Asked Questions) provides that:

> To be eligible to file a claim with the Facility you must meet the following criteria: You must have been a driver, passenger, pedestrian or an occupant of another vehicle involved in an accident resulting in physical injury or death allegedly as a result of an Ignition Switch Defect involving one of the following categories of vehicles ("Eligible Vehicle'):
>
> Production Part Vehicles
> (Ignition Switch Recall Repair was not Performed Prior to the Accident)
> - Chevrolet Cobalt (Model Years 2005-2007)
> - Chevrolet HHR (Model Years 2006-2007)
> - Daewoo G2X (Model Year 2007)
> - Opel/Vauxhall GT (Model Year 2007)
> - Pontiac G4 (Model Years 2005-2006)
> - Pontiac G5 (Model Year 2007)
> - Pontiac Pursuit (Model Years 2005-2006)
> - Pontiac Solstice (Model Years 2006-2007)
> - Saturn Ion (Model Years 2003-2007)
> - Saturn Sky (Model Year 2007)
>
> Service Part Vehicles
> (Ignition Switch was Replaced by a Dealer or Independent Service Center with an Ignition Switch bearing Part Number 10392423 and the accident occurred after such replacement of the Ignition Switch

18

and prior to the Ignition Switch Recall Repair (as defined in the Protocol))

- Chevrolet Cobalt (Model Years 2008-2010)
- Chevrolet HHR (Model Years 2008-2011)
- Daewoo G2X (Model Years 2008-2009)
- Opel/Vauxhall GT (Model Years 2008-2010)
- Pontiac G5 (Model Years 2008-2010)
- Pontiac Solstice (Model Years 2008-2010)
- Saturn Sky (Model Years 2008-2010)

GM LLC denies the vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 61 of the Amended Complaint.

62.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 62 of the Amended Complaint, and therefore denies same.

63.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 63 of the Amended Complaint.

64.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies the remaining allegations in Paragraph 64 of the Amended Complaint.

65.    GM LLC denies the allegations in Paragraph 65 of the Amended Complaint.

66.    GM LLC denies the allegations in Paragraph 66 of the Amended Complaint.

67.    GM LLC denies the allegations in Paragraph 67 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

**COUNT IV**

19

68.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

69.     GM LLC admits the allegations in Paragraph 69 of the Amended Complaint.

70.     GM LLC incorporates by references its admission and averments as provided in Paragraph 60 above.  GM LLC denies the remaining allegations in Paragraph 70 of the Amended Complaint.

71.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 15 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 71 of the Amended Complaint.

72.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 72 of the Amended Complaint, and therefore denies same.

73.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.   GM LLC denies the remaining allegations in Paragraph 73 of the Amended Complaint.

74.     GM LLC denies the allegations in Paragraph 74 of the Amended Complaint.

75.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.   GM LLC denies the remaining allegations in Paragraph 75 of the Complaint.

76.     GM LLC denies the allegations in Paragraph 76 of the Amended Complaint.

77.     GM LLC denies the allegations in Paragraph 77 of the Amended Complaint.

78.     GM LLC denies the allegations in Paragraph 78 of the Amended Complaint.

79.     GM LLC denies the allegations in Paragraph 79 of the Amended Complaint.

GM LLC denies the remaining allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## <u>COUNT VII</u>

80.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

81.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 17 and 27 above.  GM LLC denies the remaining allegations in Paragraph 81 of the Amended Complaint.

82.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 82 of the Amended Complaint.

83.     GM LLC incorporates by reference its admissions and averments as provides in Paragraphs 4, 17, 22, and 27 above.  GM LLC denies the remaining allegations in Paragraph 83 of the Amended Complaint, and specifically denies it failed to disclose or actively concealed a defect.

84.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 17 and 27 above.  GM LLC denies the remaining allegations in Paragraph 84 of the Amended Complaint.

85.     GM LLC incorporates by reference its admissions and averments in Paragraph 48

21

above.  GM LLC denies the remaining allegations in Paragraph 85 of the Amended Complaint.

86.     GM LLC denies the allegations in Paragraph 86 of the Amended Complaint.

87.     GM LLC denies the allegations in Paragraph 87 of the Amended Complaint.

88.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 88 relating to the knowledge or alleged reliance of any individual consumer, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 88 of the Amended Complaint.

89.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 89 of the Amended Complaint.

90.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 90 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT VIII

91.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

92.     No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC admits that § 30118 of the TREAD Act, among other things, provides as follows:

> (b) Defect and Noncompliance Proceedings and Orders.—
>
>> (2) If the Secretary decides under paragraph (1) of this subsection that the vehicle or equipment contains the defect or does not comply, the Secretary shall order the manufacturer to—
>>
>>> (A) give notification under section 30119 of this title to the owners, purchasers, and dealers of the vehicle or equipment of the defect or noncompliance; and
>>>
>>> (B) remedy the defect or noncompliance under section 30120 of this title.
>
>                     * * *
>
> (c) Notification by Manufacturer.— A manufacturer of a motor vehicle or replacement equipment shall notify the Secretary by certified mail, and the owners, purchasers, and dealers of the vehicle or equipment as provided in section 30119(d) of this section, if the manufacturer—
>
>> (1) learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety; or
>>
>> (2) decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter.

GM LLC denies the remaining allegations of Paragraph 92 of the Amended Complaint.

93.     No response to Paragraph 93 is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is required, GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC admits section 6.15 of the Sale Agreement provides:

> From and after the Closing, Purchaser shall comply with the
> certification, reporting and recall requirements of the National
> Traffic and Motor Vehicle Safety Act, the Transportation Recall
> Enhancement, Accountability and Documentation Act, the Clean
> Air Act, the California Health and Safety Code and similar Laws,
> in each case, to the extent applicable in respect of vehicles and
> vehicle parts manufactured or distributed by Seller.

GM LLC denies the remaining allegations in Paragraph 93 of the Amended Complaint.

94.     GM LLC incorporates by reference its admissions and averments as provided in

Paragraph 92 above.  GM LLC denies the remaining allegations in Paragraph 93 of the Amended

Complaint.

95.     No response is required by GM LLC as such is a question of law for the Court to

decide.  To the extent a response is required, GM LLC admits that 49 C.F.R. § 573.6 provides:

> Each manufacturer shall furnish a report to the NHTSA for each
> defect in his vehicles or in his items of original or replacement
> equipment that he or the Administrator determines to be related to
> motor vehicle safety, and for each noncompliance with a motor
> vehicle safety standard in such vehicles or items of equipment
> which either he or the Administrator determines to exist.  Each
> report shall be submitted not more than 5 working days after a
> defect in a vehicle or item of equipment has been determined to be
> safety related, or a noncompliance with a motor vehicle safety
> standard has been determined to exist.

GM LLC denies the remaining allegations in Paragraph 95 of the Amended Complaint.

96.     GM LLC incorporates by reference its admissions and averments as provided in

Paragraph 92 above.  GM LLC admits 49 C.F.R. § 573.6(c) provides the information to be

provided to the NHTSA for each defect in a vehicle or original or replacement equipment, which

includes the manufacturer's name, identification of the vehicles or items of motor vehicle

equipment potentially containing the defect or noncompliance, a description of the

manufacturer's basis for its determination of the recall population, a description of how the

vehicles or items of equipment to be recalled differ from similar vehicles or items of equipment

that the manufacturer has not included in the recall, the total number of vehicles or items of equipment potentially containing the defect or noncompliance, the percentage of vehicles or items of equipment specified pursuant to paragraph (c)(2) of this section estimated to actually contain the defect or noncompliance, a description of the defect or noncompliance, a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, a description of the manufacturer's program for remedying the defect or noncompliance, a representative copy of all notices, bulletins, and other communications that relate directly to the defect or noncompliance and are sent to more than one manufacturer, distributor, dealer or purchaser, and the manufacturer's campaign number, if not identical to the identification number assigned by NHTSA.   GM LLC denies the remaining allegations in Paragraph 96 of the Amended Complaint.

97.     GM LLC incorporates by reference its admission and averments in Paragraphs 4, 17, and 22 above.  GM LLC admits that in 2001, General Motors Corporation was conducting pre-development testing of the Saturn Ion, and according to Issue Reports A-83ZA-81205, A-83ZA-81060 and A-83ZA-81254, there was an electrical concern with the ignition switch assembly.  GM LLC admits the detent problem addressed in these early reports was separate and distinct from the problem that led to NHTSA Recall No. 14V047.  GM LLC further admits that Issue Report A-83ZA-81205 reflects that "the problem does not exist anymore."  GM LLC further admits that on March 11, 2014, it sent a letter to NHTSA pursuant to the requirements of 49 C.F.R. § 573.6 with an attached chronology related to NHTSA Recall No. 14V047 that provides as follows:

> **2014.**     Additional analyses were conducted in February 2014 relating specifically to the Ion, HHR, Solstice and Sky vehicles. These analyses included a collection and review of data regarding crashes involving these vehicles and allegations of airbag non-

deployment.  The analyses also included a search for and review of FPR and PRTS reports relating to these vehicles, regardless of model year; a number of these, initiated in 2003 and 2006, addressed complaints of stalling in Ion vehicles.  One report initiated in 2001, during pre-production development of the Ion, addressed an issue relating to the ignition switch's "passlock" system.  The report stated that the causes of the problem included "low detent plunger force" in the ignition switch, and stated that an ignition switch design change had resolved the problem.  A 2003 report documented an instance in which the service technician observed a stall while driving, noted that "[t]he owner had several keys on the key ring," and stated that "[t]he additional weight of the keys had worn out the ignition switch."  In that instance, the technician replaced the ignition switch and the FPR was closed. Other reports primarily addressed customer complaints of not being able to start their Ions' engines, but the warranty and technical assistance data collected in support of these reports included complaints of stalling.

GM LLC denies the ignition switch subject to NHTSA Recall No. 14V400 is substantially similar to the ignition switch subject to NHTSA Recall No. 14V047.  GM LLC denies the remaining allegations contained in Paragraph 97 of the Amended Complaint.

98.    GM LLC admits NHTSA ID Number: 10134303 states as follows:

WHILE DRIVING MY 2004 PONTIAC GRAND AM THE CAR FAILED AT 30 MPH. IT COMPLETELY SHUT OFF LEAVING ME WITH NO POWER STEERING AND NO WAY TO REGAIN CONTROL OF THE CAR UNTIL COMING TO A COMPLETE STOP TO RESTART IT. ONCE I HAD STOPPED IT DID RESTART WITHOUT INCIDENT. ONE WEEK LATER THE CAR FAILED TO START AT ALL NOT EVEN TURNING OVER. WHEN THE PROBLEM WAS DIAGNOSED AT THE GARAGE IT WAS FOUND TO BE A FAULTY "IGNITION CONTROL MODULE" IN THE CAR. AT THIS TIME THE PART WAS REPLACED ONLY TO FAIL AGAIN WITHIN 2 MONTHS TIME AGAIN WHILE I WAS DRIVING THIS TIME IN A MUCH MORE HAZARDOUS CONDITION BEING THAT I WAS ON THE HIGHWAY AND WAS TRAVELING AT 50 MPH AND HAD TO TRAVEL ACROSS TWO LANES OF TRAFFIC TO EVEN PULL OVER TO TRY TO RESTART IT. THE CAR CONTINUED TO START AND SHUT OFF ALL THE WAY TO THE SERVICE GARAGE WHERE IT WAS AGAIN FOUND TO BE A FAULTY "IGNITION CONTROL

> MODULE". IN ANOTHER TWO WEEKS TIME THE CAR
> FAILED TO START AND WHEN DIAGNOSED THIS TIME IT
> WAS SAID TO HAVE "ELECTRICAL PROBLEMS" POSSIBLE
> THE "POWER CONTROL MODULE". AT THIS TIME THE
> CAR IS STILL UNDRIVEABLE AND UNSAFE FOR TRAVEL.
> *JB

GM LLC is not admitting the truth or the accuracy of this incident. GM LLC denies the

remaining allegations in Paragraph 98 of the Amended Complaint.

99.   GM LLC denies that the vehicles subject to NHTSA Recall Nos. 14V400 and

14V047 share a common ignition switch design.  GM LLC denies the remaining allegations in

Paragraph 99 of the Amended Complaint.

100.   GM LLC is without sufficient information to admit or deny the allegations

concerning alleged statements by the administrator of NHTSA, and therefore denies same.  GM

LLC denies the remaining allegations in Paragraph 100 of the Amended Complaint.

101.   GM LLC denies the allegations in Paragraph 101 of the Amended Complaint.

102.   GM LLC admits that on February 24, 2014, it sent a letter to NHTSA pursuant to

the requirements of 49 C.F.R. § 573.6 with an attached chronology related to NHTSA Recall No.

14V047 that provides as follows:

> **2005.**  GM employees received new field reports of Cobalts losing
> engine power, including instances in which the key moved out of
> the "run" position when a driver inadvertently contacted the key or
> steering column.  Further PRTS's were opened to re-assess this
> issue.  During the course of a PRTS opened in May 2005, an
> engineer proposed that GM redesign the key head from a "slotted"
> to a "hole" configuration.  That proposal was initially approved,
> but later cancelled.  The PRTS process led to GM's issuing an
> Information Service Bulletin 05-02-35-007 in December 2005.
> This Service Bulletin provided "Information on Inadvertent
> Turning of Key Cylinder, Loss of Electrical System and No
> DTCs," and applied to 2005-06 Chevrolet Cobalts, 2006 Chevrolet
> HHRs, 2005-06 Pontiac Pursuits (Canada only), 2006 Pontiac
> Solstices, and 2003-06 Saturn Ions.  These vehicles were all
> equipped with the same ignition switch.  The Service Bulletin

informed dealers that: "there is potential for the driver to inadvertently turn off the ignition due to low ignition key cylinder torque/effort"; "[t]he concern is more likely to occur if the driver is short and has a large and/or heavy key chain"; and "the customer should be advised of this potential and should take steps to prevent it-such as removing unessential items from their key chain." In addition, the Service Bulletin advised that "Engineering has come up with an insert for the key ring so that it goes from a 'slot' design to a hole design. As a result, the key ring cannot move up and down in the slot any longer-it can only rotate on the hole." The Service Bulletin further stated that, "[i]n addition, the previous key ring has been replaced with a smaller, 13 mm design. This will result in the keys not hanging as low as in the past."

GM LLC denies the remaining allegations in Paragraph 102 of the Amended Complaint.

103.    GM LLC admits that Anton R. Valukas's Report to the Board of Directors of General Motors Company Regarding Ignition Switch Recalls ("the Valukas Report") states:

According to Oakley, the term "stall" is a "hot" word that GM generally does not use in bulletins because it may raise a concern about vehicle safety, which suggests GM should recall the vehicle, not issue a bulletin. Others agreed that GM is sensitive to using the word "stall" in a service bulletins and closely scrutinizes any bulletin that does include "stalls" as a symptom. Others at GM confirmed that there was concern about the use of "stall" in a TSB because such language might draw the attention of NHTSA.

GM LLC denies the remaining allegations in Paragraph 103 of the Amended Complaint.

104.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 27 above. GM LLC denies the remaining allegations in Paragraph 104 of the Amended Complaint.

105.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits General Motors Corporation's 2004 Product Information release stated:

The sleek, new Grand Prix embodies this direction, with more horsepower as well as a clean body design that sets the standard for performance sedans. And the new GTO, with its thundering 340-

> horsepower (254-kw) V-8, will get the adrenaline pumping
> through the veins of any enthusiast. Pontiac's Bonneville GXP
> model, coming in the first quarter of 2004, will feature new styling,
> a V-8 engine and considerable horsepower.  Enhanced handling
> and acceleration are always paramount for Pontiac enthusiasts, and
> these, plus added safety and comfort measures, make the 2004
> Pontiac lineup one of the most exciting in the division's history.

GM LLC denies the remaining allegations in Paragraph 105 of the Amended Complaint.

106.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 106 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of October 4, 2003, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 106 of the Amended Complaint.

107.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC admits that General Motors Corporation's 2004 Annual Report stated as follows:

> The "Only GM" campaign began by highlighting our plans to
> equip all our cars and trucks sold to retail customers in the United
> States and Canada with OnStar and StabiliTrak, GM's electronic
> stability control system.  We want to bring this kind of safety,
> security and peace-of-mind to all of our customers because it's the
> right thing to do, and because only GM can do it.  We also want
> potential customers to know that GM offers them great value, and
> that buying GM matters. (For more details, go to *onlygm.com.*)

GM LLC denies the remaining allegations in Paragraph 107 of the Amended Complaint.

108.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC admits that General Motors Corporation's 2004 Annual Report stated as follows:

> Only GM can offer its customers the assurance that someone is
> looking out for them and their families when they're on the road.
> Twenty-four hours a day, seven days a week, OnStar by GM offers

29

> real-time personalized help.  Since 1996, OnStar has had more than
> 50 million interactions with subscribers, who now total more than
> three million.
>
> As America's leading in-vehicle safety, security and
> communications system, OnStar is also an important must-have
> service that distinguishes GM vehicles in the crowded and highly
> competitive marketplace.  In response to the growing importance
> consumers are placing on this lifesaving safety technology, GM
> will include OnStar as standard equipment on all U.S. and
> Canadian retail vehicles by the end of 2007.  This commitment to
> safety makes GM the only automotive manufacturer able to offer a
> full range of cars, trucks and SUVs that provide safety protection
> before, during and after vehicle collisions.

GM LLC denies the remaining allegations in Paragraph 108 of the Amended Complaint.

109.    GM LLC incorporates by reference its admissions and averments as provided in
Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny
the allegations in Paragraph 109 of the Amended Complaint related to alleged statements on
General Motors Corporation's website as of May 10, 2004, and therefore denies same.  GM LLC
denies the remaining allegations in Paragraph 109 of the Amended Complaint.

110.    GM LLC incorporates by reference its admissions and averments as provided in
Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny
the allegations in Paragraph 110 of the Amended Complaint related to alleged statements on
General Motors Corporation's website as of June 4, 2004, and therefore denies same.  GM LLC
denies the remaining allegations in Paragraph 110 of the Amended Complaint.

111.    GM LLC incorporates by reference its admissions and averments as provided in
Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny
the allegations in Paragraph 111 of the Amended Complaint related to alleged statements on
General Motors Corporation's website as of June 4, 2004, and therefore denies same.  GM LLC
denies the remaining allegations in Paragraph 111 of the Amended Complaint.

112.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC admits that General Motors Corporation's 2005 Annual Report stated as follows:

> We are driving quality and productivity even further.
>
> Lasting quality. Consumers are looking for lasting quality when choosing their next car or truck.  Having an appealing exterior is nice, but equally as important is what is underneath.  After all, what good is a great-looking vehicle that seats them in a service waiting room more than behind the wheel?  That is why restoring confidence in quality is just as important as design in rebuilding our brands.  But perception lags reality. GM vehicles place high in quality rankings such as J.D. Power and Associates, ABIAUTO and *AutoBild*.  The challenge is to bridge the gap between perception and reality.  GM's performance has steadily and consistently improved. We are focused on providing our customers with the best quality experience over the lifetime of GM ownership. And, we're getting there…one vehicle at a time.

GM LLC denies the remaining allegations in Paragraph 112 of the Amended Complaint.

113.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 113 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of September 9, 2005, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 113 of the Amended Complaint.

114.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 114 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of September 9, 2005, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 114 of the Amended Complaint.

31

115.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 115 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of August 9, 2006, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 115 of the Amended Complaint.

116.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 116 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of September 6, 2006, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 116 of the Amended Complaint.

117.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 117 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of October 29, 2006, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 117 of the Amended Complaint.

118.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 118 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of January 6, 2007, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 118 of the Amended Complaint.

119.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC admits that General Motors Corporation's 2007 Annual Report stated as follows:

POLICY, WARRANTY AND RECALLS

Provisions for estimated expenses related to policy and product warranties are made at the time products are sold. These estimates are established using historical information on the nature, frequency, and average cost of claims. We actively study trends of claims and take action to improve vehicle quality and minimize claims. Actual experience could differ from the amounts estimated requiring adjustments to these liabilities in future periods.

GM LLC denies the remaining allegations in Paragraph 119 of the Amended Complaint.

120.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 120 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of January 15, 2008, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 120 of the Amended Complaint.

121.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 121 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of March 2008, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 121 of the Amended Complaint.

122.    GM LLC admits that a news release issued January 18, 2011 provided as follows:

Chevrolet sold 4.26 million vehicles globally in 2010, an average of one every 7.4 seconds. As a result, Chevrolet's share of global vehicle industry sales grew by 0.35 points as the brand accounted for about 5.8 percent of all vehicles sold worldwide in 2010. Of the top five global vehicle brands, only Chevrolet grew its total market share last year.

***

"Chevrolet's dedication to compelling designs, quality, durability and great value is a winning formula that resonates with consumers around the world," said Joel Ewanick, GM global chief marketing officer. "We will continue to listen to our customers and do our

33

          utmost to deliver what it takes to bring them into the Chevrolet family."

GM LLC denies the remaining allegations in Paragraph 122 of the Amended Complaint.

      123.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 27 above.  GM LLC denies the remaining allegations in Paragraph 123 of the Amended Complaint.

      124.   GM LLC admits the allegations in Paragraph 124 of the Amended Complaint.

      125.   At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 125 of the Amended Complaint related to alleged statements made during radio ad, and therefore denies same.

      126.   GM LLC admits the allegations in Paragraph 126 of the Amended Complaint.

      127.   GM LLC admits that on December 27, 2011, Gay Kent made the following statements:

**Q:  What should customers know about GM's commitment to vehicle safety?**

A:  Our safety strategy is about providing continuous protection for our customers before, during and after a crash. For example, the crash-avoidance system features of forward collision alert and lane departure warning offered on the 2012 GMC Terrain crossover is designed to help the driver avoid a crash before it happens. The industry-first front center air bag coming to our midsize crossovers in 2013 is an example of GM's newest safety technology that may provide additional protection during side crashes and rollovers. And OnStar enables occupants to get help from emergency services after a crash through Automatic Crash Response.

Another recent example of our commitment to providing safety 'after' the crash is first responder training. For the Chevrolet Volt, GM worked with the National Fire Protection Association to develop and deliver a comprehensive training program for first responders. We believe our approach to vehicle safety and occupant protection is one of the most comprehensive in the industry.

GM LLC denies the remaining allegations in Paragraph 127 of the Amended Complaint.

128.    GM LLC admits that a January 3, 2012 media release entitled "2012 Chevrolet Sonic Models Get Top Safety," provided:

> "We developed Sonic to exceed customer expectations of subcompacts in terms of segment-leading safety features," said Gay Kent, GM executive director of vehicle safety. "From the largest vehicles in our lineup to the smallest, we are putting overall crashworthiness and state-of-the-art safety technologies at the top of the list of must-haves."

GM LLC denies the remaining allegations in Paragraph 128 of the Amended Complaint.

129.    At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 129 of the Amended Complaint, and therefore denies same.

130.    At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 130 of the Amended Complaint, and therefore denies same.

131.    At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 131 of the Amended Complaint, and therefore denies same.

132.    GM LLC admits its website provides:

> At General Motors, we are passionate about earning customers for life. This vision unites us as a team each and every day and is the hallmark of our customer-driven culture.

GM LLC denies the remaining allegations in Paragraph 132 of the Amended Complaint.

133.    GM LLC admits its website provides:

> At GM, it's about getting everything right for our customers – from the way we design, engineer and manufacture our vehicles, all the way through the ownership experience.

GM LLC denies the remaining allegations in Paragraph 133 of the Amended Complaint.

134.    GM LLC further admits it has stated:

> **Safety and Quality First:** Safety will always be a priority at GM. We continue to emphasize our safety-first culture in our facilities, and as

we grow our business in new markets. Our safety philosophy is at the heart of the development of each vehicle. In addition to safety, delivering the highest quality vehicles is a major cornerstone of our promise to our customers.  That is why our vehicles go through extreme testing procedures in the lab, on the road and in our production facilities prior to being offered to customers.

GM LLC denies the remaining allegations in Paragraph 134 of the Amended Complaint.

135.    GM LLC admits its website provides:

Leading the way is our seasoned leadership team who set high standards for our company so that we can give you the best cars and trucks. This means that we are committed to delivering vehicles with compelling designs, flawless quality and reliability, and leading safety, fuel economy and infotainment features.  All are intended to create that special bond that can only happen between a driver and their vehicle.

GM LLC further admits it has stated:

**Safety and Quality First:** Safety will always be a priority at GM. We continue to emphasize our safety-first culture in our facilities, and as we grow our business in new markets. Our safety philosophy is at the heart of the development of each vehicle. In addition to safety, delivering the highest quality vehicles is a major cornerstone of our promise to our customers.  That is why our vehicles go through extreme testing procedures in the lab, on the road and in our production facilities prior to being offered to customers.

GM LLC denies the remaining allegations in Paragraph 135 of the Amended Complaint.

136.    GM LLC denies the allegations in Paragraph 136 of the Amended Complaint.

137.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 22 above.  GM LLC denies the remaining allegations in Paragraph 137 of the Amended Complaint.

138.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 60 and 61 above.  GM LLC denies the vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 138

36

of the Amended Complaint.

139.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 22 above.  GM LLC denies the remaining allegations in Paragraph 139 of the Amended Complaint, and specifically denies it concealed any defect from Decedent or the public.

140.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC denies the remaining allegations in Paragraph 140 of the Amended Complaint.

141.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 22 above.  GM LLC admits that it submitted to NHTSA the following information in a letter dated February 7, 2014, pursuant to 49 C.F.R. § 573.6, pertaining to NHTSA Recall No. 14V047, of approximately 619,122 2005-2007 model year (MY) Chevrolet Cobalt and 2007 Pontiac G5 vehicles:

> 573.6(c)(5): General Motors has decided that a defect, which relates to motor vehicle safety, exists in 2005-2007 model year Chevrolet Cobalt and 2007 Pontiac G5 vehicles. The ignition switch torque performance may not meet General Motors' specification. If the torque performance is not to specification, and the key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event, the ignition switch may inadvertently be moved out of the "run" position.  The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.
>
> Until this correction is performed, customers should remove non-essential items from their key ring.

GM LLC further admits that it submitted to NHTSA the following information in a letter dated March 27, 2014, pursuant to 49 C.F.R. § 573.6, and subsequently amended the letter on

37

March 28, 2014, pertaining to NHTSA Recall No. 14V047, of approximately 823,788 vehicles

with Ignition & Start Switches:

> 573.6(c)(5): General Motors has decided that a defect which relates
> to motor vehicle safety exists in the following GM Parts and
> ACDelco Ignition & Start Switch service part number 10392423,
> and Ignition & Start Switch Housing Kits that contain or may
> contain part number 10392423: GM Parts and ACDelco service
> part numbers 10392737, 15857948, 15854953, 15896640, and
> 25846762. GM records indicate these service parts may have been
> installed during repairs in some 2008-2010 MY Chevrolet Cobalt,
> 2008-2011 MY Chevrolet HHR, 2008-2010 MY Pontiac Solstice,
> 2008-2010 MY Pontiac G5, and 2008-2010 MY Saturn Sky
> vehicles . . .

GM LLC denies the remaining allegations in Paragraph 141 of the Amended Complaint.

142.    GM LLC denies that the vehicles subject to NHTSA Recall Nos. 14V400 and

14V047 share a common ignition switch design.  GM LLC denies the remaining allegations in

Paragraph 142 of the Amended Complaint.

143.    GM LLC incorporates its admissions and averments as provided in Paragraph 22

above.  GM LLC denies the remaining allegations in Paragraph 143 of the Amended Complaint.

144.    GM LLC denies the allegations in Paragraph 144 of the Amended Complaint, and

specifically denies it made fraudulent statements regarding the quality and safety of its vehicles.

145.    No response to Paragraph 145 is required by GM LLC as such is a question of law

for the Court to decide.  To the extent a response is required, GM LLC denies the allegations in

Paragraph 145 of the Amended Complaint, and specifically denies it concealed material facts.

146.    GM LLC incorporates by reference its admissions and averments as provided in

Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether

the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4

above at the time of the subject accident, and therefore denies same.  GM LLC denies the

38

remaining allegations in Paragraph 146 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT IX

147.    GM incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

148.    No response to Paragraph 148 is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is required, GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 17 and 22 above.  GM LLC denies the remaining allegations in Paragraph 148 of the Amended Complaint.

149.    GM LLC denies the allegations in Paragraph 149 of the Amended Complaint, and specifically denies it actively concealed or made knowing misrepresentations about the characteristics of its vehicles.

150.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 150 of the Amended Complaint relating to the knowledge or alleged reliance of any individual consumer, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 150 of the Amended Complaint, and specifically denies it made knowing and/or affirmative misrepresentations and/or actively concealed facts.

151.    GM LLC denies the allegations in Paragraph 151 of the Amended Complaint.

## COUNT X

152.    GM incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

153.    No response to Paragraph 153 is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is required, GM LLC denies the allegations in Paragraph 153 of the Amended Complaint.

154.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 154 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

WHEREFORE, General Motors LLC requests that this Court dismiss Plaintiff's Complaint with prejudice and award General Motors LLC its costs, expenses, attorney fees, interest, and all other relief as the Court and jury may deem proper.

## AFFIRMATIVE DEFENSES

1.    The accident, injuries, and/or damages complained of may have been proximately caused by the misuse of the product, including but not limited to other intervening superseding culpable acts of third persons or entities other than GM LLC.  Therefore, Plaintiff is not entitled to recovery against GM LLC in this action.

2.    Any and all damages sustained by Plaintiff and/or Decedent may have been caused solely and proximately by the negligence and/or comparative negligence of persons other than GM LLC, including but not limited to Decedent, Kathleen Ann Pillars, and others of whom/which are not known at this time but who will be identified according to applicable court rules.

3.     Any and all of the damages and injuries sustained by Plaintiff and/or Decedent may have been caused solely and proximately by the negligence of persons other than GM LLC, including non-parties that have not yet been identified.

4.     GM LLC relies on the presumptions and defenses set forth in applicable Michigan statutes that bar Plaintiff's claims in whole or in part, including but not limited to MCLA 600.2945, .2946, .2946a, .2947, .2948, .2955, .2957, .2960, and .6304.

5.     GM LLC is entitled to a set-off from any recovery against it to the extent of any and all benefits paid or payable to or on behalf of Plaintiff from any and all collateral sources to the extent such a set-off is permissible under the laws applicable to this case.

6.     GM LLC states Plaintiff's claims and causes of action are barred by the applicable statute of limitations.

7.     Any damages to Plaintiff are limited for all claims of non-economic loss as set forth in MCLA 600.2946a.

8.     Plaintiff may have failed to mitigate damages by failing to take all reasonable care to minimize injuries and the consequences therefrom.

9.     To the extent that Plaintiff failed to maintain or preserve the subject vehicle referenced in Plaintiff's Complaint in its immediate post-incident condition, Plaintiff is guilty of spoliation of evidence and may not maintain any action against GM LLC.

10.    The 2004 Pontiac Grand Am referenced in the Complaint should have been delivered to the purchaser with a written Limited New Vehicle Warranty by General Motors Corporation.  The Limited New Vehicle Warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period.  Needed repairs will be performed using new or remanufactured parts.  The warranty period for all coverages begins

on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period. The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first. Moreover, as provided in the Limited New Vehicle Warranty, the implied warranties of merchantability or fitness for a particular purpose applicable to this vehicle are limited in duration to the duration of this written warranty. Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty. There shall be no liability for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty. GM LLC pleads the limitations contained in the warranty.

11.     GM LLC states Plaintiff's claims may be preempted by or precluded by applicable federal law including but not limited to Orders of the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court") entered in the bankruptcy case captioned *In re Motors Liquidation Company, et al.*, Case No. 09-50026, which is pending before the New York Bankruptcy Court.

## RESERVATION OF RIGHTS

12.     GM LLC reserves the right to list additional affirmative defenses if it learns of additional information through investigation and discovery.

## JURY DEMAND

13.     GM LLC demands a trial by jury.

WHEREFORE, General Motors LLC requests that this Court dismiss Plaintiff's Complaint with prejudice and award General Motors LLC its costs, expenses, attorney fees, interest, and all other relief as the Court and jury may deem proper.

Dated:  ~~May 5~~July 16, 2015                    Respectfully submitted,

                                   BOWMAN AND BROOKE LLP


                        By:      */s/ Thomas P. Branigan*          
                                 Thomas P. Branigan (P41774)
                                 BOWMAN AND BROOKE LLP
                                 41000 Woodward Ave., Ste. 200 East
                                 Bloomfield Hills, Michigan 48304
                                 248.205.3300 / 248.205.3399 Fax
                                 thomas.branigan@bowmanandbrooke.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on ~~May 5~~July 16, 2015, I electronically filed and served via U.S. Mail the foregoing paper with the Clerk of the Court using the E-Filing system which will send notification of such filing to the following:

Victor J. Mastromarco, Jr.
1024 N. Michigan Ave.
Saginaw, Michigan 48602


                          BOWMAN AND BROOKE LLP

          By:       */s/ Thomas P. Branigan*
                          Thomas P. Branigan (P41774)
                          BOWMAN AND BROOKE LLP
                          41000 Woodward Ave., Ste. 200 East
                          Bloomfield Hills, Michigan 48304
                          248.205.3300 / 248.205.3399 Fax
                          thomas.branigan@bowmanandbrooke.com

# Non-Redlined Version

**UNTED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| BENJAMIN W. PILLARS, | § | |
| as Personal Representative of the Estate of | § | |
| KATHLEEN ANN PILLARS, deceased, | § | CIVIL ACTION NO. 1:15-cv-11360 |
| | § | |
| Plaintiffs, | § | Hon. Thomas L. Ludington |
| | § | |
| v. | § | Magistrate Judge Patricia T. Morris |
| | § | |
| GENERAL MOTORS LLC, | § | |
| | § | |
| Defendant. | § | |

**GENERAL MOTORS LLC'S FIRST AMENDED ANSWER**
**TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant General Motors LLC ("GM LLC"), by and through its attorneys, files this

First Amended Answer to Plaintiff's Amended Complaint, and would show as follows:

**RESPONSE TO COMMON ALLEGATIONS**

1.       GM LLC is without sufficient information to admit or deny the allegations in

Paragraph 1 of the Amended Complaint, and therefore denies same.

2.       GM LLC admits that it is a limited liability company organized under the laws of

Delaware with its principal place of business in Michigan.  GM LLC does not contest this

Court's exercise of personal jurisdiction over it.  GM LLC denies the remaining allegations in

Paragraph 2 of the Amended Complaint.

3.       GM LLC denies the allegations in Paragraph 3 of the Amended Complaint.

4.       GM LLC admits that according to the State of Michigan Traffic Crash Report (the

"crash report"), Kathleen Ann Pillars ("Decedent") was driving a 2004 Pontiac Grand Am in

Arenac County, Michigan on November 23, 2005 and was involved in an automobile accident.

GM LLC admits that it submitted to NHTSA the following information in a letter dated July 3, 2014, pursuant to 49 C.F.R. § 573.6, and subsequently amended the letter on July 16, 2014, pertaining to the recall of approximately 6,729,742 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, 1999-2005 MY Pontiac Grand Am and 2004-2008 MY Pontiac Grand Prix vehicles ("NHTSA Recall No. 14V400"). The July 16, 2014 letter provides as follows ("Recall Condition"):

> 573.6(c)(5): General Motors has decided that a defect which relates to motor vehicle safety exists in 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, 1999-2005 MY Pontiac Grand Am, and 2004-2008 MY Pontiac Grand Prix vehicles. If the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the "run" position. If this occurs, engine power, power steering and power braking may be affected, increasing the risk of a crash. The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.
>
> Until the recall has been performed, it is _very_ important that customers remove all items from their key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from the key ring.

GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 4 of the Amended Complaint.

5.      GM LLC is without sufficient information to admit or deny the allegations in Paragraph 5 of the Amended Complaint, and therefore denies same.

6.      GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 6 of the Amended Complaint.

7.      GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC admits that the crash report provides as follows:

> Driver veh 2 going straight.  Witness states veh #1 [Pontiac Grand Am] turned out from drive, loss control and had collision w/#2.

GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 7 of the Amended Complaint, and therefore denies same.

8.      GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 8 of the Amended Complaint, and therefore denies same.

9.      GM LLC admits the subject 2004 Pontiac Grand Am was equipped with a front driver and passenger airbag system, as well as a 3-point lap and shoulder belt, continuous loop design that incorporates a free-falling latch plate in those seating positions.  GM LLC further admits the subject 2004 Pontiac Grand Am was equipped with a Sensing and Diagnostic Module ("SDM").  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 9 of the Amended Complaint, and therefore denies same.

3

10.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 10 of the Amended Complaint.

11.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 11 of the Amended Complaint, and therefore denies same.

12.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 12 of the Amended Complaint, and therefore denies same.

13.     GM LLC admits that Plaintiff purports to allege an amount in controversy within the jurisdiction of this Court and that Plaintiff seeks recovery in excess of $25,000.  GM LLC denies the remaining allegations in Paragraph 13 of the Amended Complaint.

14.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 14 of the Amended Complaint, and therefore denies same.

15.     GM LLC admits in September 2014, it sent a letter to vehicle owners advising of NHTSA Recall No. 14V400.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 15 of the Amended Complaint, and therefore denies same.

## COUNT I

16.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

17.     GM LLC admits that prior to July 10, 2009, General Motors Corporation (not GM LLC) design in part, manufactured in part, assembled into final form, marketed and distributed various motor vehicles, including the 2004 Pontiac Grand Am, to independent authorized

dealers.

GM LLC admits that General Motors Corporation underwent bankruptcy in 2009. GM LLC admits that the United States Bankruptcy Court for the Southern District of New York issued the Sale Order and Injunction approving the sale of substantially all of Motors Liquidation Company f/k/a General Motors Corporation's assets to NGMCO, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (defined in the Sale Order and Injunction as the "Purchaser"). This Sale Order and Injunction was consummated on July 10, 2009. GM LLC admits it ultimately did acquire substantially all of Motors Liquidation Company f/k/a General Motors Corporation's assets, free and clear of all liens, claims, and encumbrances, except for certain limited exceptions as provided under the Sale Order and Injunction and Amended and Restated Master Sale and Purchase Agreement ("Sale Agreement"). GM LLC admits it ultimately did assume certain liabilities, including the following as provided in Section 2.3(a)(ix) of the Sale Agreement (as amended):

> (ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date [July 10, 2009] and arising from such motor vehicles' operation or performance. . . .

GM LLC denies the subject accident is an assumed liability pursuant to the Sale Order and Injunction, and denies the remaining allegations in Paragraph 17 of the Amended Complaint.

18.    GM LLC admits the subject Pontiac Grand Am at issue in this litigation should have been delivered to the purchaser with a written Limited New Vehicle Warranty by General Motors Corporation. GM LLC denies the remaining allegations in Paragraph 18 of the Amended

Complaint.

19.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 19 of the Amended Complaint.

20.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC denies the remaining allegations in Paragraph 20 of the Amended Complaint.

21.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC admits that a vehicle with an ignition switch that is not in the "run" position will have the engine off.  GM LLC is without sufficient knowledge or information necessary to form a belief as to the truth of the allegations related to whether a key in "most vehicles" must be "intentionally turn[ed]," and therefore denies same. GM LLC denies the remaining allegations in Paragraph 21 of the Amended Complaint.

22.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC admits that it sent a letter to NHTSA dated February 25, 2014, pursuant to 49 C.F.R. § 573.6, pertaining to the ignition switch recall of approximately 748,024 2006-2007 MY Chevrolet HHR and Pontiac Solstice, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles ("NHTSA Recall 14V047"). GM LLC admits that Delphi Packard Electrical/Electronic Architecture was identified as a supplier pursuant to 49 C.F.R. § 573.6(c)(2)(iv) in the letters to NHTSA related to NHTSA Recall 14V047.  GM LLC admits that Delphi prepared certain Analysis/Development/Validation Plan Reports dated January 10,

2002 and May 21, 2002, which documented the results of component-level validation tests required by General Motors Corporation's component technical specifications related to the Saturn Ion.  These tests included a test to determine whether the torque required to rotate the switch from Run to Accessory complied with those specifications.   According to these Analysis/Development/Validation Plan Reports, certain of the ignition switches tested related to the Saturn Ion had a torque measurement that fell below the specifications' minimum requirement.   GM LLC denies Delphi Packard Electrical/Electronic Architecture was the supplier of the ignition switch for vehicles affected by NHTSA Recall No. 14V400.

GM LLC admits the July 16, 2014 letter to NHTSA related to NHTSA Recall No. 14V400 provides as follows:

> **2003**
> In 2003, GM learned of a customer complaint of intermittent vehicle shut offs in a MY 2003 Grand Am from a Michigan dealership.  Despite multiple attempts, the dealership could not duplicate the condition.  GM's Brand Quality Manager for the Grand Am personally visited the dealership and requested that the customer demonstrate the problem. The customer had an excess key ring and mass (containing approximately 50 keys and a set of brass knuckles), and was able to recreate the shut off upon driving over a speed bump at approximately 30-35 mph.  On January 7, 2003, GM opened PRTS 0084/2003.  On May 22, 2003, GM issued a voicemail to dealerships describing the condition and identifying the relevant population of vehicles as 1999 through 2003 MY Chevrolet Malibu, Oldsmobile Alero, and Pontiac Grand Am.  The notice directed dealers to pay attention to the key size and mass of the customer's key ring in order to better diagnose the customer's complaint.  On July 24, 2003, Engineering Work Order (EWO) 211722 was initiated to increase the detent plunger force on the ignition switch replacing P/N 22688239 with P/N 22737173.  This was a running change made in 2004 to the Malibu, Grand Am and the Alero.  The production and service stock disposition for P/N 22688239 was designated "use", so it is possible that P/N 22688239 was used to service vehicles.

7

**2004**

On March 17, 2004, EWO 317693 was initiated to increase the detent plunger force on the ignition switch on the Grand Prix in order to maintain commonality between the Grand Prix and the Malibu, Grand Am and the Alero. The old Grand Prix part number, P/N -10310896, was not changed to a new part number when the detent plunger force was changed, rather P/N 10310896 remained the part number for the new ignition switch. The service stock disposition was designated "use", so it is possible that the old switch was used to service vehicles.

**2014**

On May 22, 2014, NHTSA forwarded to GM Director of Global Policy and GM Director of Field Product Investigations and Evaluations a link to Service Bulletin No. 052203, issued in 2003, for the 1999-2003 MY Malibu, Alero and Grand Am. On June 4, 2014, a Product Investigations Engineer was assigned to investigate ignition switches used on the 1999-2003 MY Malibu, Grand Am and Alero; the investigation expanded to include a number of additional model vehicles. Between June 6, 2014 and June 24, 2014, the investigator worked with GM subject matter experts to gather and analyze data relating to the ignition switches used on the Malibu, Grand Am and Alero vehicles, as well as to identify other vehicles in which the relevant ignition switches were used. GM also collected and reviewed information from GM's databases, including its TREAD, warranty, customer satisfaction, and Engineering Analysis databases, and NHTSA's Vehicle Owners' Questionnaire (VOQ) database relating to vehicles using the ignition switch parts under review. From approximately June 13 through June 24, 2014, cars identified in the investigation were evaluated at the Milford Proving Ground. The road testing on the recall population indicated that, when the slotted key with a ring is carrying added weight, the torque performance of the ignition system may be insufficient to resist energy generated when a vehicle goes off road or experiences some other jarring event, potentially resulting in the unintentional movement of the key away from the "run" position.

On June 26, 2014, the investigator made a presentation to the Safety and Field Action Decision Authority (SFADA), which decided to conduct a Safety Recall of 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, 1999-2005 MY Pontiac Grand Am and 2004-2008 MY Pontiac Grand Prix vehicles.

GM LLC denies the remaining allegations in Paragraph 22 of the Amended Complaint.

23.      GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 23 of the Amended Complaint.

24.      GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC denies the remaining allegations in Paragraph 24 of the Amended Complaint.

25.      GM LLC admits that on February 24, 2014, it sent a letter to NHTSA pursuant to the requirements of 49 C.F.R. § 573.6 with an attached chronology related to NHTSA Recall No. 14V047 that provides as follows:

> Between 2005 and the date of this submission, GM is currently aware of 23 frontal-impact crashes involving 2005 to 2007 Chevrolet Cobalts and 2007 Pontiac G5s in which the recall condition may have caused or contributed to the airbags' non-deployment.  During that same timeframe, of these crashes, GM is currently aware of six that resulted in eight fatalities of frontal occupants.  GM employees became aware of many of these crashes within a month of the dates on which they occurred.  As GM learned of these crashes, employees undertook to investigate the underlying facts and circumstances to determine, among other things, why the airbags had not deployed.  With respect to 22 of the 23 frontal-impact crashes referenced above, the data retrieved from the vehicles' SDMs indicated that the ignition switches were in the "run" position in nine of the crashes, in the "accessory" position in twelve of the crashes, and in the "off" position in one of the crashes.  Throughout this period, GM was involved in claims and lawsuits in which allegations were made regarding the ignition switch issue that is the subject of the recall.  These 23 crashes are out of a total U.S. population of 619,122 vehicles subject to the pending recall.

GM LLC further admits that the chronology attached to its March 11, 2014 letter to NHTSA related to NHTSA Recall No. 14V047 provided:

Based on the data and information collected, reviewed, and analyzed to date, GM has identified eight frontal-impact crashes in the United States involving 2003 to 2007 model year Saturn Ion vehicles in which the recall condition may have caused or contributed to the airbags' nondeployment. Of these eight crashes, GM is currently aware of four involving the Saturn Ion that resulted in four fatalities (all of which involved 2004 model year vehicles) and six injuries of frontal occupants (which involved 2004, 2005, 2006 & 2007 model year vehicles). GM is currently aware of three frontal-impact crashes in the United States involving 2006 to 2007 model year Chevrolet HHR vehicles in which the recall condition may have caused or contributed to the airbags' non-deployment. These three crashes resulted in three injuries to frontal occupants. GM is not currently aware of any frontal-impact crashes in the United States involving 2006-2007 model year Pontiac Solstice or 2007 model year Saturn Sky vehicles in which the recall condition may have caused or contributed to the airbags' non-deployment. It is important to emphasize that GM continues to review data and information relating to the recalled vehicles in order to evaluate, among other things, whether there were any other crashes involving the recalled vehicles in which the recall condition may have caused or contributed to the airbags' non-deployment.

GM employees became aware of most of the aforementioned crashes within two weeks of the dates on which they occurred. As GM learned of these crashes, employees undertook to investigate the underlying facts and circumstances to determine, among other things, why the airbags had not deployed. Throughout this period, GM was involved in claims and lawsuits with respect to the Ion and HHR vehicles where the non-deployment of airbags may have been caused by the ignition switch condition. These eleven crashes in the United States are out of a total U.S. population of 748,024 vehicles subject to the Ion, HHR, Solstice and Sky recall. GM's review of data and information relating to the recalled vehicles continues.

GM LLC is without sufficient information to admit or deny the allegations in related to allegations of "independent safety regulators," and therefore denies same. GM LLC denies the remaining allegations in Paragraph 25 of the Amended Complaint.

26.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4

10

above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 26 of the Amended Complaint.

27.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above. GM LLC admits that, as part of certain marketing campaigns, General Motors Corporation advertised the safety of General Motors Corporation vehicles, including the subject vehicle at issue. GM LLC denies the remaining allegations in Paragraph 27 of the Amended Complaint, and specifically denies it failed to disclose or actively concealed a defect.

28.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 28 of the Amended Complaint.

29.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 29 of the Amended Complaint.

30.     No response to Paragraph 30 is required by GM LLC as such as a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits that General Motors Corporation had a duty imposed under operation of law related to the design, manufacture, testing, and assembly of motor vehicles. GM LLC denies the remaining allegations

in Paragraph 30 of the Amended Complaint.

31.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 31 of the Amended Complaint.

32.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, 17, and 22 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 32 of the Amended Complaint, including subparagraphs (a) through (h), and specifically denies it acted with willful disregard.

33.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 33 of the Amended Complaint.

34.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 34 of the Amended Complaint.

35.     GM LLC admits that Plaintiff purports to seek in excess of $25,000.00 in this action.  GM LLC denies the remaining allegations in Paragraph 35 of the Amended Complaint.

36.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC denies the remaining allegations in Paragraph 36 of the Amended Complaint, and specifically denies its acts and/or omissions were reckless, in reckless disregard for the public's safety and/or well-being, and/or constituted gross negligence.

37.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC denies the remaining allegations in Paragraph 37 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT II

38.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

39.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 27 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 39 of the Amended Complaint, and specifically denies it was grossly negligent.

40.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4

above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 40 of the Complaint, and specifically denies it was grossly negligent.

41. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 41 of the Amended Complaint, and specifically denies it was grossly negligent.

42. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, 17, and 27 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 42 of the Amended Complaint.

43. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 43 of the Amended Complaint.

44. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the

14

remaining allegations in Paragraph 44 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT III

45.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

46.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 27 above.  GM LLC denies the remaining allegations in Paragraph 46 of the Amended Complaint.

47.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 27 above.  GM LLC denies the remaining allegations in Paragraph 47 of the Amended Complaint.

48.     GM LLC admits that on June 13, 2005, in response to a New York Times inquiry, General Motors Corporation manager for safety communications Alan Adler issued a statement entitled "GM Statement on Chevrolet Cobalt Inadvertent Shutoffs," which states:

> In rare cases when a combination of factors is present, a Chevrolet Cobalt driver can cut power to the engine by inadvertently bumping the ignition key to the accessory or off position while the car is running.
>
> When this happens, the Cobalt is still controllable.  The engine can be restarted after shifting to neutral.
>
> GM has analyzed this condition and believes it may occur when a driver overloads a key ring, or when the driver's leg moves amid factors such as steering column position, seat height and placement.  Depending on these factors, a driver can unintentionally turn the vehicle off.
>
> Service advisers are telling customers they can virtually eliminate this possibility by taking several steps, including removing

15

non-essential material from their key rings.

GM LLC denies the remaining allegations in Paragraph 48 of the Amended Complaint.

49.    GM LLC denies the allegations in Paragraph 49 of the Amended Complaint.

50.    GM LLC denies the allegations in Paragraph 50 of the Amended Complaint.

51.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 51 relating to the knowledge or alleged reliance of any individual consumer, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 51 of the Complaint.

52.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 52 of the Amended Complaint.

53.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 53 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT IV

54.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

16

55.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 30 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 55 of the Amended Complaint.

56.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC denies the remaining allegations in Paragraph 56 of the Amended Complaint, and specifically denies it intended to mislead or deceive Decedent or the public.

57.    GM LLC incorporates reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the allegations in Paragraph 57 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

**COUNT V**

58.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

59.    GM LLC admits the allegations in Paragraph 59 of the Amended Complaint.

60.    GM LLC admits that the GM Ignition Compensation Claims Resolution Facility (the "Facility") states the following with respect to the Facility's purpose:

>   [GM LLC] issued safety recalls identifying a defect in the ignition
>   switch of certain vehicles in which the ignition switch may

17

> unintentionally move from the "run" position to the "accessory" or "off" position ("the Ignition Switch Defect"). This Protocol outlines the eligibility and process requirements for individual claimants to submit and settle claims alleging that the Ignition Switch Defect caused a death or physical injury in an automobile accident.

GM LLC denies the remaining allegations in Paragraph 50 of the Complaint.

61.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC admits in September 2014, it sent a letter to vehicle owners advising of NHTSA Recall No. 14V400.  GM LLC admits that the Facility's website (section 1.3 of the Frequently Asked Questions) provides that:

> To be eligible to file a claim with the Facility you must meet the following criteria:  You must have been a driver, passenger, pedestrian or an occupant of another vehicle involved in an accident resulting in physical injury or death allegedly as a result of an Ignition Switch Defect involving one of the following categories of vehicles ("Eligible Vehicle'):
>
> Production Part Vehicles
> (Ignition Switch Recall Repair was not Performed Prior to the Accident)
> • Chevrolet Cobalt (Model Years 2005-2007)
> • Chevrolet HHR (Model Years 2006-2007)
> • Daewoo G2X (Model Year 2007)
> • Opel/Vauxhall GT (Model Year 2007)
> • Pontiac G4 (Model Years 2005-2006)
> • Pontiac G5 (Model Year 2007)
> • Pontiac Pursuit (Model Years 2005-2006)
> • Pontiac Solstice (Model Years 2006-2007)
> • Saturn Ion (Model Years 2003-2007)
> • Saturn Sky (Model Year 2007)
>
> Service Part Vehicles
> (Ignition Switch was Replaced by a Dealer or Independent Service Center with an Ignition Switch bearing Part Number 10392423 and the accident occurred after such replacement of the Ignition Switch and prior to the Ignition Switch Recall Repair (as defined in the Protocol))

18

- Chevrolet Cobalt (Model Years 2008-2010)
- Chevrolet HHR (Model Years 2008-2011)
- Daewoo G2X (Model Years 2008-2009)
- Opel/Vauxhall GT (Model Years 2008-2010)
- Pontiac G5 (Model Years 2008-2010)
- Pontiac Solstice (Model Years 2008-2010)
- Saturn Sky (Model Years 2008-2010)

GM LLC denies the vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility. GM LLC denies the remaining allegations in Paragraph 61 of the Amended Complaint.

62.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 62 of the Amended Complaint, and therefore denies same.

63.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above. GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility. GM LLC denies the remaining allegations in Paragraph 63 of the Amended Complaint.

64.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above. GM LLC denies the remaining allegations in Paragraph 64 of the Amended Complaint.

65.    GM LLC denies the allegations in Paragraph 65 of the Amended Complaint.

66.    GM LLC denies the allegations in Paragraph 66 of the Amended Complaint.

67.    GM LLC denies the allegations in Paragraph 67 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT IV

68.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

19

69.     GM LLC admits the allegations in Paragraph 69 of the Amended Complaint.

70.     GM LLC incorporates by references its admission and averments as provided in Paragraph 60 above.  GM LLC denies the remaining allegations in Paragraph 70 of the Amended Complaint.

71.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 15 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 71 of the Amended Complaint.

72.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 72 of the Amended Complaint, and therefore denies same.

73.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 73 of the Amended Complaint.

74.     GM LLC denies the allegations in Paragraph 74 of the Amended Complaint.

75.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 75 of the Complaint.

76.     GM LLC denies the allegations in Paragraph 76 of the Amended Complaint.

77.     GM LLC denies the allegations in Paragraph 77 of the Amended Complaint.

78.     GM LLC denies the allegations in Paragraph 78 of the Amended Complaint.

79.     GM LLC denies the allegations in Paragraph 79 of the Amended Complaint.

1:13-cv-13600-TLL-PTM   Doc # 23-4   Filed 07/07/15   Pg 65 of 91   Pg ID 821

GM LLC denies the remaining allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## **COUNT VII**

80.     GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

81.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 17 and 27 above.  GM LLC denies the remaining allegations in Paragraph 81 of the Amended Complaint.

82.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 82 of the Amended Complaint.

83.     GM LLC incorporates by reference its admissions and averments as provides in Paragraphs 4, 17, 22, and 27 above.  GM LLC denies the remaining allegations in Paragraph 83 of the Amended Complaint, and specifically denies it failed to disclose or actively concealed a defect.

84.     GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 17 and 27 above.  GM LLC denies the remaining allegations in Paragraph 84 of the Amended Complaint.

85.     GM LLC incorporates by reference its admissions and averments in Paragraph 48 above.  GM LLC denies the remaining allegations in Paragraph 85 of the Amended Complaint.

86.    GM LLC denies the allegations in Paragraph 86 of the Amended Complaint.

87.    GM LLC denies the allegations in Paragraph 87 of the Amended Complaint.

88.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 88 relating to the knowledge or alleged reliance of any individual consumer, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 88 of the Amended Complaint.

89.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 89 of the Amended Complaint.

90.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 90 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT VIII

91.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

92.    No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC admits that § 30118 of the TREAD Act,

among other things, provides as follows:

> (b) Defect and Noncompliance Proceedings and Orders.—
>
>> (2) If the Secretary decides under paragraph (1) of this subsection that the vehicle or equipment contains the defect or does not comply, the Secretary shall order the manufacturer to—
>>
>>> (A) give notification under section 30119 of this title to the owners, purchasers, and dealers of the vehicle or equipment of the defect or noncompliance; and
>>>
>>> (B) remedy the defect or noncompliance under section 30120 of this title.
>
> * * *
>
> (c) Notification by Manufacturer.— A manufacturer of a motor vehicle or replacement equipment shall notify the Secretary by certified mail, and the owners, purchasers, and dealers of the vehicle or equipment as provided in section 30119(d) of this section, if the manufacturer—
>
>> (1) learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety; or
>>
>> (2) decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter.

GM LLC denies the remaining allegations of Paragraph 92 of the Amended Complaint.

93.    No response to Paragraph 93 is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is required, GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC admits section 6.15 of the Sale Agreement provides:

> From and after the Closing, Purchaser shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall

> Enhancement, Accountability and Documentation Act, the Clean
> Air Act, the California Health and Safety Code and similar Laws,
> in each case, to the extent applicable in respect of vehicles and
> vehicle parts manufactured or distributed by Seller.

GM LLC denies the remaining allegations in Paragraph 93 of the Amended Complaint.

94.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 92 above.  GM LLC denies the remaining allegations in Paragraph 93 of the Amended Complaint.

95.     No response is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is required, GM LLC admits that 49 C.F.R. § 573.6 provides:

> Each manufacturer shall furnish a report to the NHTSA for each
> defect in his vehicles or in his items of original or replacement
> equipment that he or the Administrator determines to be related to
> motor vehicle safety, and for each noncompliance with a motor
> vehicle safety standard in such vehicles or items of equipment
> which either he or the Administrator determines to exist.  Each
> report shall be submitted not more than 5 working days after a
> defect in a vehicle or item of equipment has been determined to be
> safety related, or a noncompliance with a motor vehicle safety
> standard has been determined to exist.

GM LLC denies the remaining allegations in Paragraph 95 of the Amended Complaint.

96.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 92 above.  GM LLC admits 49 C.F.R. § 573.6(c) provides the information to be provided to the NHTSA for each defect in a vehicle or original or replacement equipment, which includes the manufacturer's name, identification of the vehicles or items of motor vehicle equipment potentially containing the defect or noncompliance, a description of the manufacturer's basis for its determination of the recall population, a description of how the vehicles or items of equipment to be recalled differ from similar vehicles or items of equipment that the manufacturer has not included in the recall, the total number of vehicles or items of

equipment potentially containing the defect or noncompliance, the percentage of vehicles or items of equipment specified pursuant to paragraph (c)(2) of this section estimated to actually contain the defect or noncompliance, a description of the defect or noncompliance, a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, a description of the manufacturer's program for remedying the defect or noncompliance, a representative copy of all notices, bulletins, and other communications that relate directly to the defect or noncompliance and are sent to more than one manufacturer, distributor, dealer or purchaser, and the manufacturer's campaign number, if not identical to the identification number assigned by NHTSA.  GM LLC denies the remaining allegations in Paragraph 96 of the Amended Complaint.

97.    GM LLC incorporates by reference its admission and averments in Paragraphs 4, 17, and 22 above.  GM LLC admits that in 2001, General Motors Corporation was conducting pre-development testing of the Saturn Ion, and according to Issue Reports A-83ZA-81205, A-83ZA-81060 and A-83ZA-81254, there was an electrical concern with the ignition switch assembly.  GM LLC admits the detent problem addressed in these early reports was separate and distinct from the problem that led to NHTSA Recall No. 14V047.  GM LLC further admits that Issue Report A-83ZA-81205 reflects that "the problem does not exist anymore."  GM LLC further admits that on March 11, 2014, it sent a letter to NHTSA pursuant to the requirements of 49 C.F.R. § 573.6 with an attached chronology related to NHTSA Recall No. 14V047 that provides as follows:

> **2014.**    Additional analyses were conducted in February 2014 relating specifically to the Ion, HHR, Solstice and Sky vehicles. These analyses included a collection and review of data regarding crashes involving these vehicles and allegations of airbag non-deployment.  The analyses also included a search for and review of FPR and PRTS reports relating to these vehicles, regardless of

model year; a number of these, initiated in 2003 and 2006, addressed complaints of stalling in Ion vehicles. One report initiated in 2001, during pre-production development of the Ion, addressed an issue relating to the ignition switch's "passlock" system. The report stated that the causes of the problem included "low detent plunger force" in the ignition switch, and stated that an ignition switch design change had resolved the problem. A 2003 report documented an instance in which the service technician observed a stall while driving, noted that "[t]he owner had several keys on the key ring," and stated that "[t]he additional weight of the keys had worn out the ignition switch." In that instance, the technician replaced the ignition switch and the FPR was closed. Other reports primarily addressed customer complaints of not being able to start their Ions' engines, but the warranty and technical assistance data collected in support of these reports included complaints of stalling.

GM LLC denies the ignition switch subject to NHTSA Recall No. 14V400 is substantially similar to the ignition switch subject to NHTSA Recall No. 14V047. GM LLC denies the remaining allegations contained in Paragraph 97 of the Amended Complaint.

98. GM LLC admits NHTSA ID Number: 10134303 states as follows:

WHILE DRIVING MY 2004 PONTIAC GRAND AM THE CAR FAILED AT 30 MPH. IT COMPLETELY SHUT OFF LEAVING ME WITH NO POWER STEERING AND NO WAY TO REGAIN CONTROL OF THE CAR UNTIL COMING TO A COMPLETE STOP TO RESTART IT. ONCE I HAD STOPPED IT DID RESTART WITHOUT INCIDENT. ONE WEEK LATER THE CAR FAILED TO START AT ALL NOT EVEN TURNING OVER. WHEN THE PROBLEM WAS DIAGNOSED AT THE GARAGE IT WAS FOUND TO BE A FAULTY "IGNITION CONTROL MODULE" IN THE CAR. AT THIS TIME THE PART WAS REPLACED ONLY TO FAIL AGAIN WITHIN 2 MONTHS TIME AGAIN WHILE I WAS DRIVING THIS TIME IN A MUCH MORE HAZARDOUS CONDITION BEING THAT I WAS ON THE HIGHWAY AND WAS TRAVELING AT 50 MPH AND HAD TO TRAVEL ACROSS TWO LANES OF TRAFFIC TO EVEN PULL OVER TO TRY TO RESTART IT. THE CAR CONTINUED TO START AND SHUT OFF ALL THE WAY TO THE SERVICE GARAGE WHERE IT WAS AGAIN FOUND TO BE A FAULTY "IGNITION CONTROL MODULE". IN ANOTHER TWO WEEKS TIME THE CAR FAILED TO START AND WHEN DIAGNOSED THIS TIME IT

26

> WAS SAID TO HAVE "ELECTRICAL PROBLEMS" POSSIBLE
> THE "POWER CONTROL MODULE". AT THIS TIME THE
> CAR IS STILL UNDRIVEABLE AND UNSAFE FOR TRAVEL.
> *JB

GM LLC is not admitting the truth or the accuracy of this incident. GM LLC denies the

remaining allegations in Paragraph 98 of the Amended Complaint.

99.    GM LLC denies that the vehicles subject to NHTSA Recall Nos. 14V400 and

14V047 share a common ignition switch design.  GM LLC denies the remaining allegations in

Paragraph 99 of the Amended Complaint.

100.    GM LLC is without sufficient information to admit or deny the allegations

concerning alleged statements by the administrator of NHTSA, and therefore denies same.  GM

LLC denies the remaining allegations in Paragraph 100 of the Amended Complaint.

101.    GM LLC denies the allegations in Paragraph 101 of the Amended Complaint.

102.    GM LLC admits that on February 24, 2014, it sent a letter to NHTSA pursuant to

the requirements of 49 C.F.R. § 573.6 with an attached chronology related to NHTSA Recall No.

14V047 that provides as follows:

> **2005.**  GM employees received new field reports of Cobalts losing
> engine power, including instances in which the key moved out of
> the "run" position when a driver inadvertently contacted the key or
> steering column.  Further PRTS's were opened to re-assess this
> issue.  During the course of a PRTS opened in May 2005, an
> engineer proposed that GM redesign the key head from a "slotted"
> to a "hole" configuration.  That proposal was initially approved,
> but later cancelled.  The PRTS process led to GM's issuing an
> Information Service Bulletin 05-02-35-007 in December 2005.
> This Service Bulletin provided "Information on Inadvertent
> Turning of Key Cylinder, Loss of Electrical System and No
> DTCs," and applied to 2005-06 Chevrolet Cobalts, 2006 Chevrolet
> HHRs, 2005-06 Pontiac Pursuits (Canada only), 2006 Pontiac
> Solstices, and 2003-06 Saturn Ions.  These vehicles were all
> equipped with the same ignition switch.  The Service Bulletin
> informed dealers that: "there is potential for the driver to
> inadvertently turn off the ignition due to low ignition key cylinder

27

torque/effort"; "[t]he concern is more likely to occur if the driver is short and has a large and/or heavy key chain"; and "the customer should be advised of this potential and should take steps to prevent it-such as removing unessential items from their key chain." In addition, the Service Bulletin advised that "Engineering has come up with an insert for the key ring so that it goes from a 'slot' design to a hole design. As a result, the key ring cannot move up and down in the slot any longer-it can only rotate on the hole." The Service Bulletin further stated that, "[i]n addition, the previous key ring has been replaced with a smaller, 13 mm design. This will result in the keys not hanging as low as in the past."

GM LLC denies the remaining allegations in Paragraph 102 of the Amended Complaint.

103.    GM LLC admits that Anton R. Valukas's Report to the Board of Directors of General Motors Company Regarding Ignition Switch Recalls ("the Valukas Report") states:

According to Oakley, the term "stall" is a "hot" word that GM generally does not use in bulletins because it may raise a concern about vehicle safety, which suggests GM should recall the vehicle, not issue a bulletin. Others agreed that GM is sensitive to using the word "stall" in a service bulletins and closely scrutinizes any bulletin that does include "stalls" as a symptom. Others at GM confirmed that there was concern about the use of "stall" in a TSB because such language might draw the attention of NHTSA.

GM LLC denies the remaining allegations in Paragraph 103 of the Amended Complaint.

104.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 27 above. GM LLC denies the remaining allegations in Paragraph 104 of the Amended Complaint.

105.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits General Motors Corporation's 2004 Product Information release stated:

The sleek, new Grand Prix embodies this direction, with more horsepower as well as a clean body design that sets the standard for performance sedans. And the new GTO, with its thundering 340-horsepower (254-kw) V-8, will get the adrenaline pumping through the veins of any enthusiast. Pontiac's Bonneville GXP

> model, coming in the first quarter of 2004, will feature new styling,
> a V-8 engine and considerable horsepower. Enhanced handling
> and acceleration are always paramount for Pontiac enthusiasts, and
> these, plus added safety and comfort measures, make the 2004
> Pontiac lineup one of the most exciting in the division's history.

GM LLC denies the remaining allegations in Paragraph 105 of the Amended Complaint.

106.    GM LLC incorporates by reference its admissions and averments as provided in

Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny

the allegations in Paragraph 106 of the Amended Complaint related to alleged statements on

General Motors Corporation's website as of October 4, 2003, and therefore denies same. GM

LLC denies the remaining allegations in Paragraph 106 of the Amended Complaint.

107.    GM LLC incorporates by reference its admissions and averments as provided in

Paragraph 17 above. GM LLC admits that General Motors Corporation's 2004 Annual Report

stated as follows:

> The "Only GM" campaign began by highlighting our plans to
> equip all our cars and trucks sold to retail customers in the United
> States and Canada with OnStar and StabiliTrak, GM's electronic
> stability control system. We want to bring this kind of safety,
> security and peace-of-mind to all of our customers because it's the
> right thing to do, and because only GM can do it. We also want
> potential customers to know that GM offers them great value, and
> that buying GM matters. (For more details, go to *onlygm.com.*)

GM LLC denies the remaining allegations in Paragraph 107 of the Amended Complaint.

108.    GM LLC incorporates by reference its admissions and averments as provided in

Paragraph 17 above. GM LLC admits that General Motors Corporation's 2004 Annual Report

stated as follows:

> Only GM can offer its customers the assurance that someone is
> looking out for them and their families when they're on the road.
> Twenty-four hours a day, seven days a week, OnStar by GM offers
> real-time personalized help. Since 1996, OnStar has had more than

50 million interactions with subscribers, who now total more than three million.

As America's leading in-vehicle safety, security and communications system, OnStar is also an important must-have service that distinguishes GM vehicles in the crowded and highly competitive marketplace. In response to the growing importance consumers are placing on this lifesaving safety technology, GM will include OnStar as standard equipment on all U.S. and Canadian retail vehicles by the end of 2007. This commitment to safety makes GM the only automotive manufacturer able to offer a full range of cars, trucks and SUVs that provide safety protection before, during and after vehicle collisions.

GM LLC denies the remaining allegations in Paragraph 108 of the Amended Complaint.

109.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 109 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of May 10, 2004, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 109 of the Amended Complaint.

110.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 110 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of June 4, 2004, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 110 of the Amended Complaint.

111.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 111 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of June 4, 2004, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 111 of the Amended Complaint.

1:13-cv-01300-TJM   Doc # 23-4   Filed 07/20/15   Pg 29 of 31   Pg ID 889

112.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC admits that General Motors Corporation's 2005 Annual Report stated as follows:

> We are driving quality and productivity even further.
>
> Lasting quality. Consumers are looking for lasting quality when choosing their next car or truck.  Having an appealing exterior is nice, but equally as important is what is underneath.  After all, what good is a great-looking vehicle that seats them in a service waiting room more than behind the wheel?  That is why restoring confidence in quality is just as important as design in rebuilding our brands.  But perception lags reality. GM vehicles place high in quality rankings such as J.D. Power and Associates, ABIAUTO and *AutoBild*.  The challenge is to bridge the gap between perception and reality.  GM's performance has steadily and consistently improved. We are focused on providing our customers with the best quality experience over the lifetime of GM ownership. And, we're getting there…one vehicle at a time.

GM LLC denies the remaining allegations in Paragraph 112 of the Amended Complaint.

113.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 113 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of September 9, 2005, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 113 of the Amended Complaint.

114.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 114 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of September 9, 2005, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 114 of the Amended Complaint.

115.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 115 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of August 9, 2006, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 115 of the Amended Complaint.

116.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 116 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of September 6, 2006, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 116 of the Amended Complaint.

117.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 117 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of October 29, 2006, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 117 of the Amended Complaint.

118.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 118 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of January 6, 2007, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 118 of the Amended Complaint.

119.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC admits that General Motors Corporation's 2007 Annual Report stated as follows:

32

POLICY, WARRANTY AND RECALLS

Provisions for estimated expenses related to policy and product warranties are made at the time products are sold. These estimates are established using historical information on the nature, frequency, and average cost of claims. We actively study trends of claims and take action to improve vehicle quality and minimize claims. Actual experience could differ from the amounts estimated requiring adjustments to these liabilities in future periods.

GM LLC denies the remaining allegations in Paragraph 119 of the Amended Complaint.

120.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 120 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of January 15, 2008, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 120 of the Amended Complaint.

121.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 121 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of March 2008, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 121 of the Amended Complaint.

122.    GM LLC admits that a news release issued January 18, 2011 provided as follows:

Chevrolet sold 4.26 million vehicles globally in 2010, an average of one every 7.4 seconds. As a result, Chevrolet's share of global vehicle industry sales grew by 0.35 points as the brand accounted for about 5.8 percent of all vehicles sold worldwide in 2010. Of the top five global vehicle brands, only Chevrolet grew its total market share last year.

***

"Chevrolet's dedication to compelling designs, quality, durability and great value is a winning formula that resonates with consumers around the world," said Joel Ewanick, GM global chief marketing officer. "We will continue to listen to our customers and do our

1:13-cv-13600-TLPM    Doc 13-4    Filed 07/16/15    Pg 85 of 491    Pg ID 840

> utmost to deliver what it takes to bring them into the Chevrolet family."

GM LLC denies the remaining allegations in Paragraph 122 of the Amended Complaint.

123.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 27 above.    GM LLC denies the remaining allegations in Paragraph 123 of the Amended Complaint.

124.    GM LLC admits the allegations in Paragraph 124 of the Amended Complaint.

125.    At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 125 of the Amended Complaint related to alleged statements made during radio ad, and therefore denies same.

126.    GM LLC admits the allegations in Paragraph 126 of the Amended Complaint.

127.    GM LLC admits that on December 27, 2011, Gay Kent made the following statements:

> **Q:  What should customers know about GM's commitment to vehicle safety?**
>
> A:  Our safety strategy is about providing continuous protection for our customers before, during and after a crash. For example, the crash-avoidance system features of forward collision alert and lane departure warning offered on the 2012 GMC Terrain crossover is designed to help the driver avoid a crash before it happens. The industry-first front center air bag coming to our midsize crossovers in 2013 is an example of GM's newest safety technology that may provide additional protection during side crashes and rollovers. And OnStar enables occupants to get help from emergency services after a crash through Automatic Crash Response.
>
> Another recent example of our commitment to providing safety 'after' the crash is first responder training. For the Chevrolet Volt, GM worked with the National Fire Protection Association to develop and deliver a comprehensive training program for first responders. We believe our approach to vehicle safety and occupant protection is one of the most comprehensive in the industry.

GM LLC denies the remaining allegations in Paragraph 127 of the Amended Complaint.

128.    GM LLC admits that a January 3, 2012 media release entitled "2012 Chevrolet Sonic Models Get Top Safety," provided:

> "We developed Sonic to exceed customer expectations of subcompacts in terms of segment-leading safety features," said Gay Kent, GM executive director of vehicle safety. "From the largest vehicles in our lineup to the smallest, we are putting overall crashworthiness and state-of-the-art safety technologies at the top of the list of must-haves."

GM LLC denies the remaining allegations in Paragraph 128 of the Amended Complaint.

129.    At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 129 of the Amended Complaint, and therefore denies same.

130.    At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 130 of the Amended Complaint, and therefore denies same.

131.    At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 131 of the Amended Complaint, and therefore denies same.

132.    GM LLC admits its website provides:

> At General Motors, we are passionate about earning customers for life. This vision unites us as a team each and every day and is the hallmark of our customer-driven culture.

GM LLC denies the remaining allegations in Paragraph 132 of the Amended Complaint.

133.    GM LLC admits its website provides:

> At GM, it's about getting everything right for our customers – from the way we design, engineer and manufacture our vehicles, all the way through the ownership experience.

GM LLC denies the remaining allegations in Paragraph 133 of the Amended Complaint.

134.    GM LLC further admits it has stated:

> **Safety and Quality First:** Safety will always be a priority at GM. We continue to emphasize our safety-first culture in our facilities, and as

we grow our business in new markets. Our safety philosophy is at the heart of the development of each vehicle. In addition to safety, delivering the highest quality vehicles is a major cornerstone of our promise to our customers.  That is why our vehicles go through extreme testing procedures in the lab, on the road and in our production facilities prior to being offered to customers.

GM LLC denies the remaining allegations in Paragraph 134 of the Amended Complaint.

135.   GM LLC admits its website provides:

Leading the way is our seasoned leadership team who set high standards for our company so that we can give you the best cars and trucks. This means that we are committed to delivering vehicles with compelling designs, flawless quality and reliability, and leading safety, fuel economy and infotainment features.  All are intended to create that special bond that can only happen between a driver and their vehicle.

GM LLC further admits it has stated:

**Safety and Quality First:** Safety will always be a priority at GM. We continue to emphasize our safety-first culture in our facilities, and as we grow our business in new markets. Our safety philosophy is at the heart of the development of each vehicle. In addition to safety, delivering the highest quality vehicles is a major cornerstone of our promise to our customers.  That is why our vehicles go through extreme testing procedures in the lab, on the road and in our production facilities prior to being offered to customers.

GM LLC denies the remaining allegations in Paragraph 135 of the Amended Complaint.

136.   GM LLC denies the allegations in Paragraph 136 of the Amended Complaint.

137.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 22 above.   GM LLC denies the remaining allegations in Paragraph 137 of the Amended Complaint.

138.   GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 60 and 61 above.  GM LLC denies the vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 138

of the Amended Complaint.

139.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 22 above.  GM LLC denies the remaining allegations in Paragraph 139 of the Amended Complaint, and specifically denies it concealed any defect from Decedent or the public.

140.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC denies the remaining allegations in Paragraph 140 of the Amended Complaint.

141.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 22 above.  GM LLC admits that it submitted to NHTSA the following information in a letter dated February 7, 2014, pursuant to 49 C.F.R. § 573.6, pertaining to NHTSA Recall No. 14V047, of approximately 619,122 2005-2007 model year (MY) Chevrolet Cobalt and 2007 Pontiac G5 vehicles:

> 573.6(c)(5): General Motors has decided that a defect, which relates to motor vehicle safety, exists in 2005-2007 model year Chevrolet Cobalt and 2007 Pontiac G5 vehicles. The ignition switch torque performance may not meet General Motors' specification.  If the torque performance is not to specification, and the key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event, the ignition switch may inadvertently be moved out of the "run" position.  The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.
>
> Until this correction is performed, customers should remove non-essential items from their key ring.

GM LLC further admits that it submitted to NHTSA the following information in a letter dated March 27, 2014, pursuant to 49 C.F.R. § 573.6, and subsequently amended the letter on

March 28, 2014, pertaining to NHTSA Recall No. 14V047, of approximately 823,788 vehicles

with Ignition & Start Switches:

> 573.6(c)(5): General Motors has decided that a defect which relates
> to motor vehicle safety exists in the following GM Parts and
> ACDelco Ignition & Start Switch service part number 10392423,
> and Ignition & Start Switch Housing Kits that contain or may
> contain part number 10392423: GM Parts and ACDelco service
> part numbers 10392737, 15857948, 15854953, 15896640, and
> 25846762.  GM records indicate these service parts may have been
> installed during repairs in some 2008-2010 MY Chevrolet Cobalt,
> 2008-2011 MY Chevrolet HHR, 2008-2010 MY Pontiac Solstice,
> 2008-2010 MY Pontiac G5, and 2008-2010 MY Saturn Sky
> vehicles . . .

GM LLC denies the remaining allegations in Paragraph 141 of the Amended Complaint.

142.    GM LLC denies that the vehicles subject to NHTSA Recall Nos. 14V400 and

14V047 share a common ignition switch design.  GM LLC denies the remaining allegations in

Paragraph 142 of the Amended Complaint.

143.    GM LLC incorporates its admissions and averments as provided in Paragraph 22

above.  GM LLC denies the remaining allegations in Paragraph 143 of the Amended Complaint.

144.    GM LLC denies the allegations in Paragraph 144 of the Amended Complaint, and

specifically denies it made fraudulent statements regarding the quality and safety of its vehicles.

145.    No response to Paragraph 145 is required by GM LLC as such is a question of law

for the Court to decide.  To the extent a response is required, GM LLC denies the allegations in

Paragraph 145 of the Amended Complaint, and specifically denies it concealed material facts.

146.    GM LLC incorporates by reference its admissions and averments as provided in

Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether

the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4

above at the time of the subject accident, and therefore denies same.  GM LLC denies the

remaining allegations in Paragraph 146 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT IX

147.    GM incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

148.    No response to Paragraph 148 is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is required, GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 17 and 22 above.  GM LLC denies the remaining allegations in Paragraph 148 of the Amended Complaint.

149.    GM LLC denies the allegations in Paragraph 149 of the Amended Complaint, and specifically denies it actively concealed or made knowing misrepresentations about the characteristics of its vehicles.

150.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 150 of the Amended Complaint relating to the knowledge or alleged reliance of any individual consumer, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 150 of the Amended Complaint, and specifically denies it made knowing and/or affirmative misrepresentations and/or actively concealed facts.

151.    GM LLC denies the allegations in Paragraph 151 of the Amended Complaint.

## COUNT X

152.    GM incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

153.    No response to Paragraph 153 is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is required, GM LLC denies the allegations in Paragraph 153 of the Amended Complaint.

154.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 154 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

WHEREFORE, General Motors LLC requests that this Court dismiss Plaintiff's Complaint with prejudice and award General Motors LLC its costs, expenses, attorney fees, interest, and all other relief as the Court and jury may deem proper.

## AFFIRMATIVE DEFENSES

1.    The accident, injuries, and/or damages complained of may have been proximately caused by the misuse of the product, including but not limited to other intervening superseding culpable acts of third persons or entities other than GM LLC.  Therefore, Plaintiff is not entitled to recovery against GM LLC in this action.

2.    Any and all damages sustained by Plaintiff and/or Decedent may have been caused solely and proximately by the negligence and/or comparative negligence of persons other than GM LLC, including but not limited to Decedent, Kathleen Ann Pillars, and others of whom/which are not known at this time but who will be identified according to applicable court rules.

3.      Any and all of the damages and injuries sustained by Plaintiff and/or Decedent may have been caused solely and proximately by the negligence of persons other than GM LLC, including non-parties that have not yet been identified.

4.      GM LLC relies on the presumptions and defenses set forth in applicable Michigan statutes that bar Plaintiff's claims in whole or in part, including but not limited to MCLA 600.2945, .2946, .2946a, .2947, .2948, .2955, .2957, .2960, and .6304.

5.      GM LLC is entitled to a set-off from any recovery against it to the extent of any and all benefits paid or payable to or on behalf of Plaintiff from any and all collateral sources to the extent such a set-off is permissible under the laws applicable to this case.

6.      GM LLC states Plaintiff's claims and causes of action are barred by the applicable statute of limitations.

7.      Any damages to Plaintiff are limited for all claims of non-economic loss as set forth in MCLA 600.2946a.

8.      Plaintiff may have failed to mitigate damages by failing to take all reasonable care to minimize injuries and the consequences therefrom.

9.      To the extent that Plaintiff failed to maintain or preserve the subject vehicle referenced in Plaintiff's Complaint in its immediate post-incident condition, Plaintiff is guilty of spoliation of evidence and may not maintain any action against GM LLC.

10.      The 2004 Pontiac Grand Am referenced in the Complaint should have been delivered to the purchaser with a written Limited New Vehicle Warranty by General Motors Corporation.  The Limited New Vehicle Warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period.  Needed repairs will be performed using new or remanufactured parts.  The warranty period for all coverages begins

41

on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period. The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first. Moreover, as provided in the Limited New Vehicle Warranty, the implied warranties of merchantability or fitness for a particular purpose applicable to this vehicle are limited in duration to the duration of this written warranty. Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty. There shall be no liability for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty. GM LLC pleads the limitations contained in the warranty.

11.    GM LLC states Plaintiff's claims may be preempted by or precluded by applicable federal law including but not limited to Orders of the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court") entered in the bankruptcy case captioned *In re Motors Liquidation Company, et al.*, Case No. 09-50026, which is pending before the New York Bankruptcy Court.

## RESERVATION OF RIGHTS

12.    GM LLC reserves the right to list additional affirmative defenses if it learns of additional information through investigation and discovery.

## JURY DEMAND

13.    GM LLC demands a trial by jury.

WHEREFORE, General Motors LLC requests that this Court dismiss Plaintiff's Complaint with prejudice and award General Motors LLC its costs, expenses, attorney fees, interest, and all other relief as the Court and jury may deem proper.

Dated:  July 16, 2015                     Respectfully submitted,

                                          BOWMAN AND BROOKE LLP


                          By:     */s/ Thomas P. Branigan*
                                  Thomas P. Branigan (P41774)
                                  BOWMAN AND BROOKE LLP
                                  41000 Woodward Ave., Ste. 200 East
                                  Bloomfield Hills, Michigan 48304
                                  248.205.3300 / 248.205.3399 Fax
                                  thomas.branigan@bowmanandbrooke.com

## CERTIFICATE OF SERVICE

I certify that on July 16, 2015, I electronically filed and served via U.S. Mail the

foregoing paper with the Clerk of the Court using the E-Filing system which will send

notification of such filing to the following:

Victor J. Mastromarco, Jr.
1024 N. Michigan Ave.
Saginaw, Michigan 48602


                                      BOWMAN AND BROOKE LLP

By:      */s/ Thomas P. Branigan*
              Thomas P. Branigan (P41774)
              BOWMAN AND BROOKE LLP
              41000 Woodward Ave., Ste. 200 East
              Bloomfield Hills, Michigan 48304
              248.205.3300 / 248.205.3399 Fax
              thomas.branigan@bowmanandbrooke.com

# Exhibit 4

2010 WL 3395690
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court, W.D. Kentucky,
at Louisiville.

Jamie WADE, Plaintiff

v.

CAVALRY PORTFOLIO SERVICES LLC, Defendant.

Civil Action No. 3:08–CV–
479–S.    |    Aug. 25, 2010.

**Attorneys and Law Firms**

David B. Mour, Zachary L. Taylor, Borowitz & Goldsmith, PLC, Louisville, KY, for Plaintiff.

Reid S. Manley, Burr & Forman LLP, Birmingham, AL, William S. Stinnett, Lloyd & McDaniel, PLC, Louisville, KY, for Defendant.

*MEMORANDUM OPINION*

CHARLES R. SIMPSON, III, District Judge.

**\*1** Defendant Cavalry Portfolio Services LLC moves to amend its answer in this case arising under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. Plaintiff Jamie Wade objects to this amendment on various grounds. For the reasons that follow Wade's objections will be overruled and the amendment will be permitted.

Cavalry filed its initial answer on February 20, 2009. Little of substance took place in the case in the sixteen months before it moved to amend on June 20, 2010. Nonetheless more than 21 days passed, so amendment is permitted only with consent of the opposing party or of the court. Fed.R.Civ.P. 15(a)(2). Wade has refused consent, and thus the decision is for the court, which "should freely give leave when justice so requires." *Id.* The decision is ultimately entrusted to the court's discretion, which should take into account several factors:

Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 458–59 (6th Cir.2001) (quoting *Head v. Jellico Hous. Auth.,* 870 F.2d 1117, 1123 (6th Cir.1989)).

Obviously a substantial period of time passed between the filing of the original answer and the motion to amend. The court is not, however, of the opinion that this lag constitutes "undue delay." Cavalry offered its amendment for two primary purposes: First, to assert a number of affirmative defenses—notably res judicata—that it says have become available to it as a result of a state court judgment it obtained against Wade on January 22, 2010. Second, and more contentiously, Cavalry seeks to amend a number of the admissions and denials in its original answer. Specifically, the original answer admitted the facts contained following paragraphs of the complaint:

> 78.) That in the month of February 2007, CPS–LLC [Cavalry] made an inquiry into Wade's personal credit file through the Trans–Union credit reporting agency without having a permissible purpose;
>
> ...
>
> 80.) That in the month of April 2007, CPS–LLC made an inquiry into Wade's personal credit file through the Trans–Union credit reporting agency without having a permissible purpose;
>
> ...
>
> 82.) That in the month of April 2007, CPS–LLC made an inquiry into Wade's personal credit file through the Experian credit reporting agency without having a permissible purpose;

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

...

84.) That in the month of July 2007, CPS–LLC made an inquiry into Wade's personal credit file through the Trans–Union credit reporting agency without having a permissible purpose;

**\*2** ...

86.) That in the month of February 2007, when CPS–LLC made an inquiry into Wade's personal credit file through the Trans–Union credit reporting agency, without having a permissible purpose, it obtained Wade's personal information under false pretenses[.]

Cavalry avers that these admissions were inadvertent, and that it learned of its mistake only upon reading the plaintiff's scheduling conference statement, filed on June 16, 2010. If this is in fact the case, the amendment cannot be said to have been delayed at all: Cavalry filed it six days later. The court is inclined to believe the defendant's explanation, and thus to think that no undue delay occurred. The complaint is massive, complicated, and far more detailed than the typical pleading. It is plausible that an attempt to discern and respond to all of its factual allegations might have gone awry. In addition, the "Fifth Affirmative Defense" asserted in the original answer actually takes the form of denying some of the factual allegations in the above-quoted paragraphs: "any inquire [sic] by Cavalry into Jamie Wade's credit was done so [sic] with a permissible purpose pursuant to the Fair Credit Reporting Act ." The internal contradiction strongly suggests that Cavalry made a mistake somewhere in the answer, and given defendants' general preference for denying wrongdoing it makes sense to think the error was in the admission, not the denial. [1] It is equally plausible that the defense did not reread its answer after filing it, and that it thus did not have occasion to discover its mistake until the plaintiff pointed it out. Thus we think that there was no undue delay.

For similar reasons, the court concludes that the defendant has not acted in bad faith. From all it appears the original answer contained mistakes that the amendment corrects. Plaintiff does not point to any advantage that Cavalry obtained by initially admitting certain allegations only to deny them later, and no such advantage is obvious to the court. Ockham's razor [2] leads the court to believe that inadvertence, rather than some mysterious and convoluted attempt at gaining the upper hand, is the explanation for Cavalry's initial admissions and subsequent request to amend.

The "Fifth Affirmative Defense" provided notice to Wade and his counsel that Cavalry would or might dispute liability as to the allegations apparently admitted elsewhere in the answer. Plaintiff also complains that he had not previously been placed on notice of the possibility that Cavalry would assert res judicata. However, at the time of the initial answer the state-court decision upon which the defense will apparently rest had not been rendered, and thus Cavalry could not have raised it in the original pleading. And while perhaps Cavalry could have moved to amend its complaint so as to assert res judicata sooner than it did, Wade can hardly claim to have lacked notice of an adverse judgment specifically rendered against him in the state proceeding. By the same token, it cannot have been a surprise to have that judgment asserted against him here. *See* 28 U.S.C. § 1738.

**\*3** The most likely basis on which to refuse to permit the amendment is the possible prejudice to Wade. There is obviously some disadvantage to him in allowing Cavalry to deny facts that it had previously admitted: now he will have to prove his case. But because (as explained above) the court is persuaded that the original admissions were mistakes, any prejudice to the plaintiff is not of a sort that would warrant a denial of leave to amend. The other plausible basis for finding prejudice is Wade's claim that he might have accepted (or at least responded differently to) Cavalry's earlier $2,000 settlement offer had he known that liability was disputed rather than admitted. But that offer is apparently still on the table (*see* Reply 4), so the court does not see any prejudice there either.

The final factor to be considered under *Wade* is futility, but the court is not of opinion that the amendment would be futile. The contested portions consist of denials of specific facts and the assertion of new defenses. The amendment is not futile at least inasmuch as it will require Wade to prove his case, and at this stage of the litigation the court lacks an evidentiary basis for finding that the newly asserted defenses are without merit.

Thus none of the *Wade* factors favors denying the amendment. The plaintiff raises two additional arguments which we will briefly address. First, he argues that Cavalry waived all affirmative defenses not raised in the initial answer. *See* Fed.R.Civ.P. 8(c)(1); *Horton v. Potter,* 369 F.3d 906, 911 (6th Cir.2004); *Haskell v. Washington Twp.,* 864 F.2d 1266, 1273 (6th Cir.1988). But as the Sixth Circuit has recognized, one reason for the rule allowing parties to amend is precisely to permit assertion of defenses omitted from the

initial responsive pleading. *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir.1994). Accordingly the waiver argument holds no water.

Finally, Wade labels the contents of the original answer "judicial admissions" and argues that the defendant must show exceptional circumstances to retract them. However, the court of appeals has stated that "judicial admissions generally arise only from deliberate voluntarily waivers that expressly concede ... an alleged fact.... Considerations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases." *MacDonald v. GMC,* 110 F.3d 337, 340 (6th Cir.1997)

(quoting *United States v. Belculfine,* 527 F.2d 941, 944 (1st Cir.1975)). For reasons expressed above the court is not of the opinion that the admissions in the original answer rise to the level of "deliberate voluntary waivers," and even if they did the court's belief that they arose from inadvertence rather than bad faith would lead us to relieve Cavalry of the consequences thereof. Accordingly the defendant is not bound by the statements in its initial answer.

**\*4** The motion to amend will be granted by separate order.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 3395690

---

Footnotes

1   It appears to the court that Cavalry may have intended to admit only to inquiring into Wade's credit, and not to having an impermissible purpose for doing so: this would make sense of the "Fifth Affirmative Defense."

2   *See, e.g., Awkal v. Mitchell,* No. 01–4278, 2010 U.S.App. LEXIS 15148, at *64, 2010 WL 2868184 (6th Cir. July 23, 2010) (en banc) (Martin, J., dissenting) ("At some point, Ockham's Razor must apply—the simplest answer is usually the correct one.")

---

End of Document                                            © 2015 Thomson Reuters. No claim to original U.S. Government Works.