KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **Case No.:  09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------x

**RESPONSE BY GENERAL MOTORS LLC TO**
**THE IGNITION SWITCH PLAINTIFFS' NO STRIKE PLEADING WITH**
**REGARD TO THE SECOND AMENDED CONSOLIDATED COMPLAINT;**
**AND THE NON-IGNITION SWITCH PLAINTIFFS' OBJECTION PLEADING WITH**
**REGARD TO THE SECOND AMENDED CONSOLIDATED COMPLAINT**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. i

**INTRODUCTION** .................................................................................................. 1

**BACKGROUND FACTS** ..................................................................................... 5

      A.    The Motions To Enforce. .................................................................... 5

      B.    The April 15 Decision. ...................................................................... 6

      C.    The Judgment. .................................................................................... 8

      D.    The Second Amended Consolidated Complaint. ................................ 9

**ARGUMENT** ....................................................................................................... 12

**I.**      **Plaintiffs' Jurisdictional Arguments Lack Merit, As This Court Has
Repeatedly Held.** ........................................................................................ 12

**II.**    **The SACC Improperly Intermixes Pre-363 Sale Allegations Relating to Old
GM Conduct with Assertions About Purported New GM Conduct.** ......... 14

      A.    Claims by the Pre-363 Sale plaintiffs and used Old GM vehicle plaintiffs
are based on successor liability. .......................................................... 14

      B.    The remaining claims in the SACC depend on Old GM conduct and are
therefore not Independent Claims. ....................................................... 17

      C.    Plaintiffs' claims for bankruptcy fraud and other claims that rely on
knowledge imputed to New GM are successor liability claims. ............ 19

**III.**   **The Non-Ignition Switch Plaintiffs Have Not Met Their Burden of
Demonstrating Why They Should Be Excused From the Sale Order and
Injunction.** ................................................................................................... 23

      A.    The Judgment and April 15 Decision applies to Non-Ignition Switch
Plaintiffs. ............................................................................................ 23

      B.    Plaintiffs have not demonstrated that their claims are distinguishable from
the Ignition Switch Plaintiffs. ............................................................. 24

**CONCLUSION** .................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayers v. Gen. Motors Corp.*,
   234 F.3d 514 (11th Cir. 2000) ................................................................................................. 16

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995) ................................................................................................................... 5

*Handy v. Gen. Motors Corp.*,
   518 F.2d 786 (9th Cir 1975) ................................................................................................. 16

*In re 1031 Tax Grp. LLC*,
   No. 10 Civ.-2799, 2011 U.S. Dist. LEXIS 33755 (S.D.N.Y. Mar. 29, 2011) ........................ 12

*In re Johns-Manville Corp.*,
   517 F.3d 52 (2d Cir. 2008) ................................................................................................. 12

*In re Johns-Manville Corp.*,
   600 F.3d 135 (2d Cir. 2010) ................................................................................................. 12

*In re Motors Liquidation Co.*,
   514 B.R. 377 (Bankr. S.D.N.Y. 2014),
   leave to appeal denied, No. 15–CV–772 (S.D.N.Y. May 18, 2015) ................................ 13, 16

*In re Motors Liquidation Co.*,
   522 B.R. 13 (Bankr. S.D.N.Y. 2014),
   leave to appeal denied, No. 15–CV–776 (S.D.N.Y. May 18, 2015) ...................................... 13

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015) ....... 2, 6, 7, 13, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26

*In re Motors Liquidation Co.*,
   531 B.R. 354 (Bankr. S.D.N.Y. 2015) ...................................................... 7, 9, 14, 18, 22, 25, 26

*In re Quigley Co., Inc.*,
   676 F.3d 45 (2d Cir. 2012) ................................................................................................. 12

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009) ................................................................................................. 12

*Trusky v. Gen. Motors Co. (In re Motors Liquidation Co.)*,
   Adv. No. 12-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) .............................. 22

## INTRODUCTION

The Second Amended Consolidated Complaint ("SACC") violates this Court's April 15 Decision and June 1 Judgment in at least three ways:

*First*, the SACC names as plaintiffs 63 individuals who were named as plaintiffs in the *Pre*-Sale Consolidated Complaint, all of whom purchased vehicles manufactured by Motors Liquidation Co. (f/k/a General Motors Corporation) ("Old GM") before the closing of the sale ("363 Sale") from Old GM to General Motors LLC ("New GM"). *See* SACC, 14-MD-2543 (ECF No. 1139). Lead Counsel have effectively conceded that these plaintiffs' claims are premised on a theory of successor liability. Plaintiffs' Brief Re: Post-Sale Consolidated Complaint at 2 n.3 (14-MD-2543, ECF No. 440) ("Unlike the Post-Sale Complaint, [ ] the Pre-Sale Complaint also pleads successor liability claims."). Although plaintiffs assert that the SACC does not include successor liability claims, that is not the case. The SACC includes the same claims and damage theories of pre-Sale plaintiffs alleged in the Pre-Sale Complaint, which is directly contrary to the Judgment entered by the Court on June 1, 2015 ("Judgment"). The Judgment held that "all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order." Judgment ¶ 9 (Bankr. ECF. No. 13177). Although this Court expressly stayed all litigation relating to the Pre-Sale Consolidated Complaint that relies on Old GM conduct and successor liability claims pending the outcome of any appeal, plaintiffs improperly seek to sidestep the Judgment by including the proscribed claims of pre-Sale plaintiffs in the SACC. *Id.* ¶ 10(a).

Further, the SACC improperly seeks to include the claims of 40 additional plaintiffs who purchased used Old GM vehicles after the closing of the 363 Sale from third parties with no connection to New GM.   This too violates this Court's Decision: "if the Sale Order and Injunction would have applied to the original owner who purchased the vehicle prior to the 363 Sale, it equally applies to the current owner who purchased the vehicle after the 363 Sale." *In re Motors Liquidation Co.*, 529 B.R. 510, 572 (Bankr. S.D.N.Y. 2015) ("April 15 Decision"). Plaintiffs' attempt to avoid the directives of the Judgment by merging and relying on the claims of Old GM vehicle plaintiffs (both original owners and used car purchasers), is improper.   By taking these proscribed actions, plaintiffs have precluded their ability to move forward on the SACC as a whole.

*Second*, the SACC includes more than 275 paragraphs concerning Old GM conduct.  *See, e.g.*, SACC ¶¶ 253-297 (ECF No. 1039).[1]  In some of the SACC's paragraphs, plaintiffs preface their allegations by adding the words "New GM knew that . . ." before the Old GM conduct allegation.   But the Court clearly and unequivocally ruled that "[c]laims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand." April 15 Decision, 529 B.R. at 528; *see also* Judgment ¶ 9.[2]  Plaintiffs cannot circumvent the Judgment simply by adding—without any supporting facts—a four-word preface to allegations asserted in prior iterations of the SACC, nor can the alleged conduct of Old GM be imputed wholesale into a complaint purportedly brought against New GM.  To the contrary, plaintiffs'

---

[1]    In determining that complaints filed by Arizona and California should be stayed, this Court similarly noted that the States' complaints contained, respectively, 60 and 18 paragraphs alleging pre-363 Sale conduct.  (Bankr. ECF No. 13162 at 6.)

[2]    *See also* Decision on Motion for 60(B) Relief (Doris Phillips), Bankr. ECF No. 13190 at 7 n.10 ("Presumably her counsel envisioned a theory based on a species of successor liability or other theory under which New GM would be responsible for Old GM's acts.  But theories of this character cannot be asserted under the Court's recent opinions. . . .").

attempt to avoid the Judgment under the guise of imputing the knowledge of certain Old GM employees to New GM as a whole must fail; the imputation argument is merely a form of successor liability claim dressed up to look like something else (which is proscribed by the Sale Order and Injunction and the Judgment).   As each and every one of the substantive counts alleged in the SACC rely on these allegations of Old GM conduct, the SACC must be stayed until it is appropriately modified.

Furthermore, plaintiffs' damages theory is based on the alleged diminished value of the entire "GM Brand" caused by the various recalls and other factors, including the alleged defects in Old GM vehicles.   Because plaintiffs have not attempted to (and cannot) segregate Old GM conduct from the undifferentiated alleged damage to the "GM Brand" suffered by all plaintiffs (which include millions of Old GM vehicle owners whose cars were never recalled), all of their claims must be stayed.

***Third***, the SACC purports to allege, under a variety of state laws, that ***New*** GM committed fraud in connection with ***Old*** GM's bankruptcy.  Specifically, plaintiffs assert that, "[b]ut for New GM's fraudulent concealment of the ignition switch defects, [putative class members] would have filed claims against Old GM before the Bar Date."  *E.g.*, SACC ¶ 1182. But the Judgment specifically precludes "all claims and/or causes of action . . . seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery)."   Judgment ¶ 9.  It is difficult to conceive of a more axiomatic successor liability claim than that New GM purportedly committed fraud in connection with Old GM's establishment of the bar date for filing claims against Old GM after the 363 Sale closed.  This type of claim, which involves a bar date notice approved by the

3

Bankruptcy Court at the request of Old GM and concerns solely Old GM conduct in connection with its creditors, is proscribed by the April 15 Decision and the Judgment.

There is no dispute that this Court held that the Sale Order allows plaintiffs to pursue Independent Claims—"claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are ***based solely on New GM's own, independent, post-Closing acts or conduct***."  Judgment ¶ 4 (emphasis added).  But the SACC clearly fails to meet that standard and must therefore remain stayed pending appeal of the April 15 Decision and Judgment.  *See Id. ¶¶* 9, 11 (a).

Plaintiffs' jurisdictional arguments do nothing to change this analysis.  As the April 15 Decision makes clear, this Court did not provide New GM "with immunity for its own independent violations of federal and state law," so whether the Court *theoretically could have done so* is irrelevant. [3]  *See* No Strike Pleading ¶ 1.[4]  Plaintiffs also claim that the Court lacks jurisdiction to enjoin successor liability claims against a purchaser in a Section 363 Sale—*i.e.,* claims against New GM based on Old GM conduct.  This argument, contrary to the Court's directives, raises nothing new; the Court properly rejected it in 2009, and again in the April 15 Decision.  Plaintiffs' erroneous and previously rejected argument thus provides no basis for relief from the Judgment or the Sale Order and Injunction.

Finally, plaintiffs' argument that the claims of the Non-Ignition Switch plaintiffs should be permitted to go forward simply ignores the Judgment, which provided that "[t]he rulings set forth herein and in the [April 15] Decision that proscribe claims and actions being taken against

---

[3]    New GM has appealed certain aspects of the Judgment and reserves all of its rights on appeal.

[4]    "No Strike Pleading" refers to *The Ignition Switch Plaintiffs' No Strike Pleading with Regard to the Second Amended Consolidated Complaint; and the Non-Ignition Switch Plaintiffs' (i) Objection Pleading with Regard to the Second Amended Consolidated Complaint and (ii) GUC Trust Asset Pleading,* filed 6/24/15 (Bankr. ECF. No. 13247).

New GM . . . shall also apply to any other plaintiffs in these proceedings (including, without limitation, the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs identified on Exhibit "D" attached hereto)." Judgment ¶ 13(a). They, too, are required to seek relief from that Judgment; they cannot just ignore it. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995). The Non-Ignition Switch Plaintiffs have not cited anything new that would suggest they have greater rights than the Ignition Switch Plaintiffs to sue New GM.[5]

For all the foregoing reasons, and as set forth in more detail below, plaintiffs' No-Strike Pleading should be denied.

## BACKGROUND FACTS

### A.    The Motions To Enforce.

After lawsuits were filed around the country seeking to hold New GM liable in connection with vehicles and parts manufactured by Old GM, New GM filed three motions to enforce this Court's Sale Order and Injunction, which had been entered in connection with the Court's approval of the 363 Sale of Old GM's assets in 2009. The first motion, filed in April 2014, was in response to lawsuits seeking economic losses from New GM arising from an alleged defective ignition switch designed and installed by Old GM, that were filed shortly after New GM's nationwide recall of certain vehicles containing that switch. A few months later, in August 2014, New GM filed its Monetary Relief Motion to Enforce in response to the next wave of lawsuits, which sought economic damages for alleged defects in other recalled vehicles. At the same time, New GM filed its Pre-Sale Accident Motion to Enforce in response to numerous

---

[5]    In fact, because the Non-Ignition Switch Plaintiffs have not shown a due process violation, the Sale Order remains unmodified and in full force and effect as to them, and they have not established a right to assert any allegedly Independent Claims against New GM for Old GM vehicles and parts. *See In re Motors Liquidation Co.*, 531 B.R. 354, 360 (Bankr. S.D.N.Y. 2015) ("Form of Judgment Decision").

lawsuits filed against it seeking damages for accidents involving Old GM vehicles that occurred prior to the closing of the 363 Sale.[6]

The central question before the Court in the Motions to Enforce was whether the claims asserted against New GM violated the Sale Order and Injunction.

### B. The April 15 Decision.

In connection with the Motions to Enforce, the parties and the Court agreed to address four threshold issues.[7] After extensive briefing and a two-day oral argument, the Court rendered the April 15 Decision. With respect to due process relating to the 363 Sale notice, the Court found that, while publication notice in a 363 Sale is ordinarily satisfactory, it did not suffice in this case for those consumers whose cars had Ignition Switch Defects. *See* 529 B.R. at 525.

This Court also found that plaintiffs must demonstrate that they were prejudiced as a result of the allegedly insufficient 363 Sale notice. The Court held that the Ignition Switch Pre-Closing Accident Plaintiffs were not prejudiced by the notice. The Court held that the Ignition Switch Plaintiffs[8] were prejudiced, but only with respect to claims based solely on New GM's

---

[6]    *See Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction*, dated April 21, 2014 (Bankr. ECF No. 12620) ("Ignition Switch Motion to Enforce"), (ii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions)*, dated August 1, 2014 (Bankr. ECF No. 12808) ("Monetary Relief Motion to Enforce"); and (iii) *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 (Bankr. ECF No. 12807) ("Pre-Closing Accident Motion to Enforce").

[7]    The four threshold issues were: (1) whether plaintiffs' procedural due process rights were violated in connection with the Sale Agreement and the Sale Order and Injunction, or alternatively, whether plaintiffs' procedural due process rights would be violated if the Sale Order and Injunction is enforced against them; (2) if procedural due process was violated, whether a remedy can or should be fashioned as a result of such violation and, if so, against whom; (3) whether any or all of the claims asserted in the Ignition Switch Actions are claims against the Old GM bankruptcy estate (and/or the GUC Trust); and (4) if any or all of the claims asserted in the Ignition Switch Actions are or could be claims against the Old GM bankruptcy estate (and/or the GUC Trust), should such claims or the actions asserting such claims nevertheless be disallowed/dismissed on grounds of equitable mootness.

[8]    "Ignition Switch Plaintiffs" refers to those plaintiffs who have sued GM for economic losses arising from the Ignition Switch defect in the vehicles recalled in February and March 2014. See No Strike Pleading at 1 n.2 (citing Stipulations of Fact, Dated July 11, 2014 (Bankr. ECF No. 12826)).

6

own conduct, and not with respect to any kind of successor liability or any other act by Old GM

(defined in the Judgment as "Independent Claims"). *See id.* at 526-27. The Court made clear,

however, that notwithstanding the possibility of Independent Claims, the Court would continue

to enforce the prohibitions against successor liability and that New GM would not be liable for

Old GM conduct: "And to the extent, if any, that New GM might be liable on claims based

solely on any wrongful conduct on its own part (and in no way relying on wrongful conduct by

Old GM), New GM would have such liability not because it had assumed any Old GM liabilities,

or was responsible for anything wrong that Old GM did, but only because it had engaged in

independent wrongful, and otherwise actionable, conduct on its own." April 15 Decision, 529

B.R. at 528.

In the No Strike Pleading, the Ignition Switch Plaintiffs suggest that the Decision and

Judgment bar only successor liability claims: *See* No Strike Pleading ¶ 1 ("[The SACC] does not

assert successor liability claims against New GM, which the Decision finds are barred under the

Sale Order . . . ."). The Court, however, rejected that contention, finding it "unduly narrow."

"Successor liability theories are the paradigmatic example of claims that must be barred under a

Free and Clear Order, but they are not the only ones. ***The Sale Order was intended to bar***

***claims of any type that might be asserted against the asset buyer New GM that would be based***

***on the asset seller Old GM's wrongful conduct—including, but not limited to, successor***

***liability claims.*** Acquirers of assets cannot be placed at risk of liability for claims based on seller

conduct premised on the notion that the claims are not exactly for 'successor liability.'" *In re*

*Motors Liquidation Co.*, 531 B.R. 354, 359 (Bankr. S.D.N.Y. 2015) ("Form of Judgment

Decision") (footnote omitted and emphasis added).

C.    **The Judgment.**

On June 1, 2015, the Court issued the Judgment, memorializing its rulings in the April 15

Decision, holding that various lawsuits remained stayed pending appeal of the April 15 Decision

and Judgment, and providing specific procedures by which plaintiffs could challenge application

of the stay (but not reargue issues already decided) if they chose to proceed with their claims.

First, the Court held that lawsuits, including the Pre-Sale Consolidated Complaint, alleging

claims based "in whole or in part on Old GM conduct (including, without limitation, on any

successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order, and

such lawsuits shall remain stayed pending appeal of the Decision and this Judgment."  Judgment

¶ 9.  Counsel, however, were given the option to file a "No Stay" pleading if they had "a good

faith basis to maintain that [their] lawsuit against New GM should not be stayed," but the Court

ordered that Counsel "shall not reargue issues that were already decided by the Decision and this

Judgment, or any other decision or order of this Court."  *Id.* ¶ 10 (c).

Second, the Court addressed "Hybrid Lawsuits," including the Post-Sale Consolidated

Complaint[9], which include some claims that might be permitted under the Judgment and others

that are not.  *Id.* ¶ 11(a).  In order to proceed with these lawsuits, plaintiffs had two alternatives.

Specifically, they could amend the Post-Sale Consolidated Complaint so that only Independent

Claims were pled, ***striking "any allegations, claims, or causes of action concerning an Old GM***

***vehicle or part seeking to impose liability or damages based on Old GM conduct (including***

***without limitation, any successor liability theory of recovery*** . . . ."  *Id.* ¶ 11(a) - (c) (emphasis

added).  Alternatively, plaintiffs could file a "No Strike Pleading" if they believed they had a

good-faith basis to maintain that their allegations, claims, or causes of action should not be

---

[9]    Plaintiffs' reference to paragraph 18 of the Judgment has no relevance to the SACC which is listed as a Hybrid
Lawsuit on Exhibit C.  See Judgment, at 21, Ex. C.

stricken, but, again, counsel were directed "not [to] reargue issues that were already decided by

the Decision and Judgment." *Id.* ¶ 11(c).

Finally, the Court held that the rulings in the Judgment and April 15 Decision that

"*proscribe claims and actions being taken against New GM* shall apply to . . . any other

plaintiffs in these proceedings . . . , subject to [the filing of] any ('Objection Pleading.')." *Id.*

¶ 13(a).  Although the April 15 Decision reserved judgment on the motion to enforce claims of

the Non-Ignition Switch plaintiffs, the Court held that the April 15 Decision was "stare decisis"

with respect to those claims.  *In re Motors Liquidation Co.*, 531 B.R. 354, 360 (Bankr. S.D.N.Y.

2015) ("Form of Judgment Decision").   An "Objection Pleading" thus provided Non-Ignition

Switch plaintiffs with an "opportunity to be heard in this court on whether there are any reasons

to excuse them from the Sale Order . . . ."   *Id.*   The Sale Order and Injunction otherwise

remained fully operative and, before proceeding further against New GM, Non-Ignition Switch

plaintiffs were required to seek resolution from this Court of any issues regarding: "whether

(i) the . . . Non-Ignition Switch Plaintiffs were known or unknown creditors of the Debtors," . . .

or [ii] the . . . Non-Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale

Order."  Judgment, ¶ 13(a).

### D.    The Second Amended Consolidated Complaint.

Plaintiffs filed the SACC on June 12, 2015 (and a corrected version on July 9, 2015),

which "amend[s] and supersed[es] the Pre-Sale *and* Post Sale Complaints."  (Bankr. ECF No.

13251 at 10 (emphasis added).)[10]  The SACC seeks economic damages based on a claimed

stigma on the *GM brand* occasioned not only by the alleged defective ignition switch and recalls

---

[10]    The Judgment did not provide for amending the Pre-Sale Consolidated Complaint.  Instead, that lawsuit
remained stayed pending appeal.  Judgment ¶ 9.  In other words, plaintiffs could not go forward on the Pre-Sale
Consolidated Complaint simply by amending it as part of the SACC.  *See* Judgment ¶ 10.

relating to that switch, but also by New GM's alleged fraudulent concealment and/or failure to timely disclose the defects at issue in all 89 recalls issued in 2014 and 2015.  (SACC ¶¶ 945-982.)  Plaintiffs seek to represent owners of all Old or New GM vehicles, whether or not the vehicles were allegedly defective and/or subject to a recall.  Specifically, the SACC alleges claims on behalf of a purported nationwide class consisting of the owners of three categories of vehicles, which plaintiffs describe as follows:

1) All GM vehicles sold or leased prior to July 11, 2009 [*i.e.*, Old GM-manufactured vehicles];

2) New GM vehicles sold or leased on or after July 11, 2009; and

3) GM vehicles[11] with a defective ignition switch sold or leased as Certified Pre-Owned on or after July 11, 2009.  (*Id.* ¶¶ 992-994.)[12]

The SACC was filed on behalf of 135 named plaintiffs, 123 of whom own a pre-363 Sale vehicle or a post-363 Sale vehicle recalled because of the possibility that it might have been repaired with a defective Old GM ignition switch.  At least 107 named plaintiffs own an Old GM vehicle (with an additional 7 plaintiffs owning 2009 model year vehicles).  Of the 107 plaintiffs with Old GM vehicles, 65 own Old GM vehicles that were purchased pre-363 Sale, while the rest purchased used Old GM vehicles after the 363 Sale; almost all of the used vehicles were sold by parties unrelated to New GM.[13]

---

[11]   The SACC does not specify whether this category includes vehicles manufactured by Old GM, New GM, or both.

[12]   The SACC also asserts several additional nationwide or statewide classes and sub-classes: a "Nationwide Dealer Class" (¶ 995); a "Nationwide Post-Sale Ignition Switch Defect Subclass" (¶¶ 996-997); a "Nationwide Ignition Pre-Sale Switch Subclass" (¶¶ 998-999); "Statewide Classes" (¶ 1000); "Statewide Post-Sale Ignition Switch State Defect Subclasses" (¶¶ 1001-1002); and "Pre-Sale Ignition Switch Defect Statewide Subclasses" (¶¶ 1003-1004).

[13]   Of the 76 plaintiffs who purchased used vehicles, only 4 allege purchases of Certified Pre-Owned vehicles; and one of these alleges a Post-Sale purchase of what could be an Old GM vehicle (a 2009 vehicle).  *See* SACC ¶¶ 51, 122, 143.

The SACC relies heavily on factual allegations regarding Old GM conduct copied and pasted from the Pre-Sale Consolidated Complaint, oftentimes merely adding the new preface of "*New GM knew that*…" or "*New GM was aware that*...").  That tactic runs directly contrary to the Court's admonition in the April 15 Decision, as noted, that the claims against New GM *not rely in any way* on the conduct of Old GM.

The SACC includes the following causes of action, each of which expressly relies on the 275 paragraphs of Old GM conduct allegations:

- violation of RICO, fraudulent concealment, unjust enrichment, breach of implied warranty of merchantability, and violation of state consumer protection statutes;

- violation of the Magnuson-Moss Warranty Act and negligence (post-sale Ignition Switch Defect Subclass);

- fraudulent concealment of the right to file claims against Old GM and violation of the TREAD Act (Pre-Sale Ignition Switch Defect Subclass).

On June 24, 2015, plaintiffs filed a No-Strike Pleading (and for the Non-Ignition Switch Plaintiffs, an Objection Pleading) in this Court, describing it as follows:  "The Ignition Switch Plaintiffs file[d] th[eir] 'No Strike' pleading with regard to the SAC prophylactically for a judicial determination that it asserts only 'Independent Claims' permissible under the Decision and Judgment." (Bankr. ECF No. 13247 at ¶ 2 (footnote omitted).)  The No-Strike Pleading asks for a determination of whether New GM may seek "to enjoin claims or strike portions of the SAC because it contains references or factual allegations relating to 'Old GM' . . . ."  *Id.* ¶¶ 3, 5.[14]

---

[14]    Having ignored this Court's admonitions, plaintiffs filed a motion to withdraw the reference with respect to their No Strike Pleading.  This filing contradicts plaintiffs' earlier stipulation and position that this Court would decide the issues relating to the Motions to Enforce, which subsumes all issues relating to the Sale Order and Injunction, the April 15 Decision, and the Judgment.  This Response replies only to the No Strike Pleading. New GM has filed a separate response to the motion to withdraw the reference with the District Court.

**ARGUMENT**

I.    **PLAINTIFFS' JURISDICTIONAL ARGUMENTS LACK MERIT, AS THIS COURT HAS REPEATEDLY HELD.**

At the threshold, plaintiffs' assertion that this Court lacks jurisdiction to enjoin claims against New GM for "its own, post-Closing acts and conduct," is beside the point and legally irrelevant.  The Judgment does not bar Assumed Liabilities or "Independent Claims," that is, "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are ***based solely on New GM's own, independent, post-Closing acts or conduct***."  Judgment ¶ 4.

In any event, contrary to the Court's order that the plaintiffs should not reargue issues already decided in the April 15 Decision (Judgment ¶¶ 10(c); 11(c)), plaintiffs assert that the Court lacks jurisdiction against "a non-debtor . . . 'when [1] the asset in question is not property of the estate and [2] the dispute has no effect on the estate.'"  No Strike Pleading at ¶ 57.[15]  In the April 15 Decision, however, this Court addressed those arguments, noting that it had already considered, and rejected, the argument that *Johns-Manville* and other authorities cited by plaintiffs[16] limit the Court's jurisdiction in enforcing the "free and clear" provisions of the Sale Order and Injunction:

---

[15]    Plaintiffs assert that prior arguments concerned only the Court's jurisdiction to enforce its own Sale Order and Injunction, "not whether this Bankruptcy Court has jurisdiction to prospectively enjoin Independent Claims." No Strike Pleading ¶ 54.  But this Court has ***not*** enjoined "Independent Claims," and such an argument "has no relation to what the Court actually held" and thus "attacks a straw man."  *See Decision and Order on Bledsoe Plaintiffs Reargument and Other Post-Judgment Motions*, July 22, 2015 (Bankr. ECF No. 13313), at 7 n.17

[16]    *Johns-Manville* and its progeny all stand for the proposition that a bankruptcy court lacks the authority to enjoin claims against third parties where such claims either would not impact the bankruptcy estate or stem from the third party's independent wrongdoing to a non-debtor.  *See In re Johns-Manville Corp.*, 517 F.3d 52, 65 (2d Cir. 2008), *rev'd and remanded sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009); *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010); *In re Quigley Co., Inc.*, 676 F.3d 45, 53 (2d Cir. 2012); *In re 1031 Tax Grp. LLC*, No. 10 Civ. 2799, 2011 U.S. Dist. LEXIS 33755, at *7 (S.D.N.Y. Mar. 29, 2011).  That manifestly is not the situation here.

The Successor Liability Objectors argued that shedding potential successor liability was not permitted under Bankruptcy Code section 363(f). They further argued that section 363(f) "authorize[d] the sale of property free and clear only of 'interests in' property to be sold, not in personam claims against the Purchaser under theories of successor liability." *They further argued that the Court "lack[ed] jurisdiction to enjoin actions between non-debtor product liability claimants and the Purchaser post-closing since resolution of these claims [would] not affect the Debtors' estates."* And they argued that the Free and Clear Provisions would violate due process—asserting that individuals who might have future claims for injuries "cannot have received meaningful notice that the bankruptcy proceeding was resolving their rights or a meaningful opportunity to protect those rights, which otherwise might allow a state law cause of action for their injuries. . . . *In the Sale Opinion, the Court considered, but ultimately rejected, those contentions and similar ones.*

April 15 Decision, 529 B.R. at 532 (emphasis added).[17]

Furthermore, contrary to plaintiffs' contention, it is clear that the SACC does not merely assert claims for New GM's own, post-363 Sale acts and conduct, but is based on alleged wrongful conduct by Old GM, which the Court held is barred by the Sale Order and Injunction.[18]

---

[17] *See also Decision with Respect to No Stay Pleading and Related Motion to Dismiss For Lack Of Subject Matter Jurisdiction (Elliott Plaintiffs), In re Motors Liquidation Co.*, 514 B.R. 377, 381 (Bankr. S.D.N.Y. 2014) "Related to" jurisdiction has nothing to do with the issues here. Bankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their orders in bankruptcy cases and proceedings under those courts' "*arising in* " jurisdiction.") (citing cases); *Decision and Order on Bledsoe Plaintiffs Reargument and Other Post-Judgment Motions* ("Bledsoe Decision and Order"), July 22, 2015 (ECF No. 13313) at 7 ("Peller's contentions here that the Court lacks the jurisdiction to [construe and enforce the Sale Order] are as frivolous now as they were when the Court rejected them in *Elliott* and . . . *Sesay*.") (footnotes omitted) (*citing In re Motors Liquidation Co.*, 514 B.R. 377, 379–80 & nn.4–9 (Bankr. S.D.N.Y. 2014) ("*Elliott*"), leave to appeal denied, No. 15–CV–772 (S.D.N.Y. May 18, 2015) (Furman, J.), and *In re Motors Liquidation Co.*, 522 B.R. 13, 20 (Bankr. S.D.N.Y. 2014) ("*Sesay*"), leave to appeal denied, No. 15–CV–776 (S.D.N.Y. May 18, 2015) (Furman, J.).

[18] *See* Decision, 529 B.R. at 528 ("[I]t is plain that to the extent the Plaintiffs seek to impose successor liability, or to rely, in suits against New GM, on any wrongful conduct by Old GM, these are actually claims against Old GM, and not New GM"); *id*. ("Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand."); *id*. at 598 (Economic Loss Plaintiffs could assert otherwise viable claims against New GM arising "solely out of New GM's own, independent, post-Closing acts, so long as those Plaintiffs' claims do not in any way rely on any acts or conduct by Old GM ").

Plaintiffs' jurisdictional argument provides no basis for avoiding the Sale Order and Injunction, the April 15 Decision, or the Judgment.

## II.    THE SACC IMPROPERLY INTERMIXES PRE-363 SALE ALLEGATIONS RELATING TO OLD GM CONDUCT WITH ASSERTIONS ABOUT PURPORTED NEW GM CONDUCT.

### A.    Claims by the Pre-363 Sale plaintiffs and used Old GM vehicle plaintiffs are based on successor liability.

The SACC names at least 107 named plaintiffs who own an Old GM vehicle (with an additional 7 plaintiffs owning 2009 model year vehicles).  This includes 63 individuals who were named as plaintiffs in the *Pre*-Sale Consolidated Complaint, all of whom purchased Old GM vehicles before the Sale Date.  The Court specifically held that the Pre-Sale Consolidated Complaint was "barred and enjoined pursuant to the Sale Order" because it pled "claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages *based in whole or in part on Old GM conduct* (including, without limitation, *on any successor liability theory of recovery*) . . . ." Judgment ¶¶ 9-10 (emphasis added); *see also* Form of Judgment Decision, 531 B.R. at 358 (the Ignition Switch Plaintiffs filed "many actions that they knew or should have known were barred by the Sale Order, [with] apparently intentional efforts to intermingle permitted and impermissible claims in common complaints").

Plaintiffs admit that "the Pre-Sale Complaint . . . pleads successor liability claims."  (14-MD-2543, ECF No. 440 at 6 n.11.)  Their attempt to merge the Pre-Sale Consolidated Complaint into the SACC does not allow the Ignition Switch Plaintiffs to avoid the directives of the Judgment, and does not transform the enjoined claims into Independent Claims against New GM.

While plaintiffs are correct that this Court recognized that Independent Claims could theoretically involve Old GM vehicles and parts, plaintiffs have not identified any claims for wrongful conduct by New GM that could have had an impact on ***vehicles purchased before the closing of the 363 Sale***.  The Court's observation about the allegations by the Pre-Sale Accident Plaintiffs applies equally to the economic loss claims of pre-363 Sale purchasers:

> The Pre–Closing Accident Plaintiffs suffered the injury or death underlying their claims in Old GM cars, and with Old GM parts. Any actionable conduct . . . took place before the 363 Sale—and necessarily was by Old GM, not New GM, and indeed before New GM could have done anything wrong.

April 15 Decision, 529 B.R. at 573.[19]  For the same reason, any purported economic losses suffered by owners of pre-363 Sale vehicles, such as the alleged diminution in the value of the vehicle, is the result of the faulty ignition switch (or other defective part) manufactured and sold by Old GM before New GM was in existence.  That is a successor liability claim that is not saved by alleging that New GM failed to disclose the defect after the 363 Sale.  The reason is simple:  any purported economic loss is due to the Old GM defect; New GM's purported conduct could not have caused economic loss to plaintiffs who purchased their vehicles before the 363 Sale.[20]  Because the claims of the pre-Sale owners are not based on the conduct of New GM, they are by definition not Independent Claims.[21]

---

[19]    *See also* Bledsoe Decision and Order at 5  [Dkt. No. 13313] ("New GM did not exist at the time of her accident (as it did not at the time of the accidents involving other Pre-Closing Accident Plaintiffs), and was not responsible for the consideration of Ms. Bledsoe's claims, which were classic prepetition claims.  Thus New GM could be liable to her only under prohibited theories of successor liability or similar theories imposing liability on New GM for Old GM acts.").

[20]    Even if the resale price for a pre-363 Sale vehicle allegedly decreased after publicity about New GM's recall of defective vehicles, any such decrease is the result of the Old GM defect and would have occurred regardless of when New GM disclosed that defect.  Thus, any alleged diminution would be attributable to Old GM, and not any alleged post-363 Sale wrongful conduct by New GM.

[21]    Plaintiffs also allege that pre-Sale owners are third-party beneficiaries of New GM's covenant in the Sale Agreement to perform Old GM's obligations under the TREAD Act.  No Strike Pleading at 12; SACC ¶ 2928. But there were no third party beneficiary rights granted under the Sale Agreement with respect to that covenant

Furthermore, because the claims by pre-363 Sale owners are barred, the claims of buyers of used Old GM vehicles are likewise precluded.  In addition to 65 plaintiffs who purchased Old GM vehicles (new or used) before the closing of the 363 Sale, the SACC includes claims by 55 named plaintiffs who purchased used Old GM vehicles after the closing of the 363 Sale.  As the Court has already held: "A subset of the Economic Loss Plaintiffs, the Used Car Purchasers (whom the Plaintiffs refer to as the 'Post-Sale Class'), assert that they have special rights—to assert claims for successor liability when nobody else can—because they had not yet purchased their cars at the time of the 363 Sale.  The Court cannot agree."  April 15 Decision, 529 B.R. at 570.

This Court need not (and should not) decide plaintiffs' contention that purchasers of used Certified Pre-owned vehicles purchased after the closing of the 363 Sale somehow stand on a different footing and that alleged representations made to these individuals constitute Independent Claims against New GM.  As alleged in the SACC, there are at most 3 named plaintiffs who purchased used Certified Pre-owned vehicles after the closing of the 363 Sale, as compared to 52 purchasers of non-Certified Pre-owned vehicles after the closing of the 363 Sale. For these 52, at least, the Court has already held that "[t]he Used Car Purchasers' contention that they deserve better treatment than other GM vehicle owners is . . . illogical and unfair."[22]  April 15 Decision, 529 B.R. at 572.

---

(*see* Sale Agreement § 9.11), and there is no private right of action for third parties to sue for a breach of a recall obligation.  *See Ayers v. Gen. Motors Corp.*, 234 F.3d 514, 522-24 (11th Cir. 2000); *Handy v. Gen. Motors Corp.*, 518 F.2d 786, 787-88 (9th Cir 1975).  Accordingly, New GM's covenant provides no basis for asserting claims against New GM for economic damages relating to Old GM vehicles or parts.

[22]   Certified Pre-owned vehicles were ***not*** addressed in the factual stipulations submitted by the parties to decide the Four Threshold Issues.  Accordingly, New GM will address plaintiffs' allegations with respect to the Certified Pre-owned program after a full record is developed, and will demonstrate at that time that plaintiffs' claims do not constitute Independent Claims.  But regardless, even if such claims were permissible, this Court has already held that the entire complaint must be stayed when it mixes permissible claims with impermissible ones.  *See Decision with Respect to No Stay Pleading and Related Motion to Dismiss For Lack Of Subject Matter Jurisdiction (Elliott Plaintiffs), In re Motors Liquidation Co.*, 514 B.R. 377, 383 n.24 (Bankr. S.D.N.Y. 2014) (staying action involving enjoined claims of pre-Sale vehicle owners even though it included a plaintiff who purchased her vehicle after the sale).

16

**B.     The remaining claims in the SACC depend on Old GM conduct and are therefore not Independent Claims.**

According to the Judgment, plaintiffs with "Hybrid" lawsuits seeking to amend their complaints were required to strike any "***allegations, claims or causes of action concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct*** . . ." and assert only Independent Claims.  Judgment ¶ 11(b).  Nevertheless, the SACC includes more than 275 paragraphs concerning Old GM conduct.  *See, e.g.*, SACC ¶¶ 253-297.  Rather than striking those allegations, the SACC in many cases just adds the words "New GM knew that . . ." before an allegation about Old GM conduct is repeated verbatim from earlier complaints.  But the Court clearly and unequivocally ruled that "[c]laims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand."  April 15 Decision, 529 B.R. at 528 *see also* Judgment ¶ 9.  Plaintiffs cannot circumvent the Judgment simply by adding a four-word preface—unsupported by any facts—to allegations asserted in prior iterations of the SACC.

Plaintiffs argue that the Court cannot "censor the [SACC] by virtue of its reference to Old GM."  No Strike Pleading at 3.  Plaintiffs misunderstand the Judgment.  It is not the *reference* in the SACC to Old GM conduct that is contrary to the Judgment, but rather the fact that the claims in the SACC are based on and depend on that conduct:

> While ***mention (without anything materially more)*** of Old GM and of the 363 Sale would be proper, and New GM would have to live with the knowledge its personnel had from the earliest days they began to serve New GM, this Court assumed that in light of its rulings, courts thereafter implementing them would be wary of reliance on facts ostensibly introduced as "background" when they were in fact attempts to paint New GM with Old GM acts.

17

Bledsoe Decision and Order at 6 n.16 (emphasis added).  Here, of course, the SACC does not merely mention Old GM conduct; it relies on it as a predicate for every claim that it asserts.

Put another way, according to the April 15 Decision and Judgment, the Court will continue to enforce the bar on successor liability claims and New GM would be liable only "on claims **based solely on any wrongful conduct on its own part (and in no way relying on wrongful conduct by Old GM)** . . . ."  April 15 Decision, 529 B.R. at 528 (emphasis added).  The SACC does not meet this standard.  The allegations regarding Old GM's conduct go well beyond providing "context."  Instead, each of plaintiffs' claims expressly incorporates by reference and depends on allegations regarding Old GM conduct.  *See*, *e.g.*, SACC ¶¶ 1016, 1100; *see also* ¶¶ 235–297, 392, 432, 612.  As the Court held in relation to similar pleadings by California and Arizona, such allegations violate the April 15 Decision:

> On their face, the States, like many Ignition Switch Plaintiffs, intermix claims involving pre- and post-sale conduct.  The California Complaint includes at least 18 paragraphs alleging events that took place prior to the 363 Sale, and the Arizona Complaint includes at least 60 paragraphs alleging pre-363 Sale conduct.  *Reliance on allegations of that character was expressly prohibited under the Court's Decision*.

Form of Judgment Decision, 531 B.R. at 358 (emphasis added).

For example, in an attempt to demonstrate that the negligence claims of the Ignition Switch Plaintiffs (*i.e.*, those with vehicles in the February/March 2014 recalls) are Independent Claims, plaintiffs assert that "New GM was negligent in the design, development, manufacture, inspection and testing of vehicles with ignition switch defects."  No Strike Pleading at 11 (*citing* SACC ¶ 1119).  Similarly, plaintiffs claim that New GM breached the implied warranty of merchantability and the Magnuson-Moss Warranty Act "when it manufactured and/or sold vehicles with ignition switch defects."  No Strike Pleading at 11 (*citing* SACC ¶ 1008).  But the defective ignition switches were Old GM parts, and New GM did not manufacture or sell any

vehicles containing those parts.   Accordingly, claims based on the design, development, manufacture, inspection, testing and sale of vehicles recalled in February and March 2014 are based not just on Old GM **parts**, but on ***Old GM pre-Sale conduct***, and therefore cannot be Independent Claims—*i.e.*, claims "***based solely on New GM's own, independent, post-Closing acts or conduct***."   Judgment ¶ 4 at 2 (emphasis added); *see also* April 15 Decision, 529 B.R. at 528.

In addition, plaintiffs attempt to disguise their reliance on Old GM conduct by intentionally merging allegations about conduct of Old GM and New GM, so that it is impossible to tell what allegations and claims (if any) are based *solely* on New GM conduct.   To cite just one example, the SACC uses the generic term "GM Branded vehicles" 36 times in reference to both Old GM conduct and purported New GM conduct.   It was plaintiffs' burden to amend their complaints to plead only Independent Claims, and they cannot avoid this requirement of the Judgment simply by blurring the distinction between the two entities.   *See Order Denying No Stay Pleading*, *Phaneuf v. Gen. Motors LLC*, 09-50026-reg, ECF No. 12791, at 7 (Bankr. S.D.N.Y. July 30, 2014) (plaintiffs' "complaint (apparently intentionally) merges pre- and post-sale conduct by Old GM and New GM; . . . [and] seeks to impose liability on New GM based on Old GM's pre-Sale acts.   Efforts of that character are expressly forbidden by the two [Sale Order] injunctive provisions.").

### C.    Plaintiffs' claims for bankruptcy fraud and other claims that rely on knowledge imputed to New GM are successor liability claims.

Plaintiffs assert that New GM violated a duty to disclose the ignition switch defect to "Ignition Switch Plaintiffs who owned GM-branded vehicles between July 11, 2009 and November 30, 2009," and that New GM's failure deprived the Ignition Switch Plaintiffs of the ability to file claims against the Old GM estate "stemming from New GM's concealment of the

19

Ignition Switch Defect." No Strike Pleading ¶¶ 86-87. The SACC thus attempts to hold New

GM liable for Old GM's defective switch *and* Old GM's failure to provide notice to the Ignition

Switch Plaintiffs. But it was Old GM's duty to provide notice of the bar date, not New GM's.

Plaintiffs' attempt to impose a duty on New GM is based on nothing more than the

knowledge of Old GM employees, which plaintiffs impute to New GM "from its inception." *See*

SACC ¶ 15. For this claim, and others that depend on knowledge purportedly imputed to New

GM, plaintiffs fail to explain (i) what particular knowledge is imputed to (ii) what specific

employee for purposes of (iii) which discrete claim and duty, and then demonstrate (iv) why that

allegation meets the standard for imputed knowledge. This is precisely the sort of successor

liability claim barred by the Sale Order and Injunction:

> [I]t is plain that to the extent the Plaintiffs seek to impose
> successor liability, or to rely, in suits against New GM, on any
> wrongful conduct by Old GM, these are actually claims against
> Old GM, and not New GM. It also is plain that any court
> analyzing claims that are supposedly against New GM only must
> be extraordinarily careful to ensure that they are not in substance
> successor liability claims, "dressed up to look like something else."
> Claims premised in any way on Old GM conduct are properly
> proscribed under the Sale Agreement and the Sale Order, and by
> reason of the Court's other rulings, the prohibitions against the
> assertion of such claims stand.

April 15 Decision, 529 B.R. at 528 (footnote omitted).

Nevertheless, plaintiffs argue that New GM's knowledge is the same regardless of its

origin. *See* No Strike Pleading ¶ 67. Under this view, since New GM *chose* to retain Old GM

employees, it somehow had an obligation to disclose information it purportedly acquired at the

time of the Sale. *See id.* ¶ 71 ("the claims seek to hold New GM liable for what it did, or failed

to do, with the knowledge it acquired from Old GM"). Among other problems, however, the

claims premised upon New GM's "knowledge" ignores that the Sale Agreement contemplated

that (a) substantially all of Old GM's employees would be hired by New GM, a start-up,

government-sponsored entity (*see* Sale Agreement § 6.17(a)), and (b) the hiring of such employees would not transform Retained Liabilities based on Old GM's knowledge and conduct into, essentially, a new and unexpressed category of Assumed Liabilities of New GM. *See* Sale Agreement ¶ 2.3(b). Indeed, if plaintiffs' theory about imputed knowledge were correct, it would be impossible to construct a sale free and clear of liability unless the new entity fired all the debtor's employees and destroyed all its records.

For the same reasons, plaintiffs' claims under RICO and various consumer protections statutes are likewise barred by the Sale Order and Injunction, the April 15 Decision, and the Judgment. For example, plaintiffs cite ¶ 15 of the SACC in support of their claims for violation of consumer protection statutes. No Strike Pleading at 10. That allegation states that New GM was "not born innocent" and that "at least two dozen New GM employees" knew of the ignition switch defects, "from the very date of its inception on July 11, 2009 . . . ." SACC ¶ 15. Likewise, the No Strike Pleading identifies ¶ 1019 in support of plaintiffs' RICO claim, and that paragraph also alleges wrongful conduct by New GM "[f]rom the inception." No Strike Pleading at 12. These claims—which fail to identify what particular knowledge is imputed to what New GM employee, in support of which claim, but instead rely on hundreds of allegations of Old GM conduct and New GM's supposed knowledge of that conduct purportedly acquired at the time of the sale—are based on Old GM conduct barred by the Sale Order and Injunction. *See* April 15 Decision, 529 B.R. at 528 ("to the extent the Plaintiffs seek . . . to rely, in suits against New GM, on any wrongful conduct by Old GM, these are actually claims against Old GM, and not New GM."). In other words, alleging wholesale imputed knowledge acquired by employees of Old GM is nothing but "alleging events that took place prior to the 363 Sale" and thus basing

claims on allegations that the Court has already "expressly prohibited." *See* Form of Judgment Decision, 531 B.R. at 358.

The plaintiffs cannot import whole cloth pages and pages of Old GM conduct allegations—in the face of express prohibitions in the Sale Order and Injunction and Judgment— and then argue that, because such Old GM conduct allegations are broadly and generically relevant to what came after, it is acceptable to do so. Rather, each of these allegations flout the Sale Order and Injunction's bar on successor liability claims.[23] Whether New GM may or may not have inherited "knowledge" or "practices" from its predecessor is not the pertinent question. Instead, the relevant inquiry is whether New GM assumed *liabilities* or *duties* under the Sale Agreement relating to Old GM vehicles and thereafter engaged in independent conduct that is proscribed by law and whether the claim is based at least in part on Old GM assets or conduct. Knowledge and practices are only relevant to the extent of such assumed liabilities, duties, and independent conduct.

Indeed, to the extent the April 15 Decision addressed imputed knowledge at all, the Court explicitly found that its conclusion that certain plaintiffs were known creditors was "based ***not . . . on any kind of automatic or mechanical imputation drawn from agency doctrine (which the Court would find to be of doubtful wisdom)***." 529 B.R. at 558 n. 154 (emphasis added). In support, the Court cited *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 389 (Bankr. S.D.N.Y. 2014) (Gerber, J.), in which the Court previously rejected arguments of automatic imputation of a CEO's alleged intent under ordinary agency rules. April 15 Decision, 529 B.R. at 558 n.154. So too here, plaintiffs cannot simply rely on a theory of

---

[23]    *See* Sale Agreement, § 9.19; Sale Order and Injunction, ¶¶ AA, BB, DD, 6-8, 10, 46-47; *Trusky v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. No. 12-09803, 2013 WL 620281, at *8 (Bankr. S.D.N.Y. Feb. 19, 2013) ("The Sale Order or transfer, by which I approved the Sale Agreement, further ensured that New GM would acquire the assets free and clear of successor or transferee liability.").

imputed knowledge from Old GM employees to end-run the Sale Order and Injunction's bar on successor liability claims and reliance on Old GM conduct.  As this Court noted in connection with similar allegations of New GM's purported knowledge, courts should "be wary of reliance of facts ostensibly introduced as 'background' when they were in fact attempts to paint New GM with Old GM Acts."  Bledsoe Decision and Order, at 6 n.16.

## III.    THE NON-IGNITION SWITCH PLAINTIFFS HAVE NOT MET THEIR BURDEN OF DEMONSTRATING WHY THEY SHOULD BE EXCUSED FROM THE SALE ORDER AND INJUNCTION.

### A.    The Judgment and April 15 Decision applies to Non-Ignition Switch Plaintiffs.

As plaintiffs acknowledge, "[t]he rulings set forth . . . in the Decision that proscribe claims and actions being taken against New GM shall apply to . . . the Non-Ignition Switch Plaintiffs, . . . subject to any objection ('Objection Pleading.') . . . ."  Judgment ¶ 13(a); *see also* No Strike Pleading ¶ 96.  Accordingly, such plaintiffs have the burden to demonstrate why the rulings proscribing claims and actions against New GM should not apply, or why they should be excused from the Sale Order and Injunction or the Court's mootness conclusion regarding the GUC Trust.

Plaintiffs' objections on behalf of the Non-Ignition Switch Plaintiffs are the same as the arguments made, and lost, on behalf of the Ignition Switch Plaintiffs.  Specifically, plaintiffs argue that their claims should proceed immediately because they (i) "assert claims for New GM's own independent post-Closing acts or conduct"; and (ii) this Court lacks jurisdiction because the claims "do not impact the Old GM estate or its property."  *Id.* ¶ 97.  As demonstrated above, the overwhelming majority of named plaintiffs in the SACC are Old GM vehicle owners and the SACC expressly relies on allegations about Old GM's conduct.  The SACC fails to segregate—or even identify—claims based ***solely*** on New GM's own conduct, and affirmatively

23

relies on all allegations in the SACC.  *See*, *e.g.*, SACC ¶¶ 1016, 1100.  The SACC thus does not contain Independent Claims.  Furthermore, as explained above, plaintiffs' jurisdictional arguments were rejected by the Court in 2009 and again in the April 15 Decision.  *See* Decision, 529 B.R. at 532.  Raising the same arguments in their Objection Pleading not only violates the Judgment, it supplies no justification for avoiding the Sale Order and Injunction.

**B.     Plaintiffs have not demonstrated that their claims are distinguishable from the Ignition Switch Plaintiffs.**

The Non-Ignition Switch Plaintiffs assert various defects based on recalls conducted in 2014-15, but also assert claims on behalf of owners of *all* vehicles manufactured by Old or New GM, based on the purported tarnishing of the GM brand that diminished the value of all their vehicles.  Plaintiffs claim it would be unfair to "appl[y] the rulings of the [April 15] Decision and Judgment barring claims against New GM" to the Non-Ignition Switch plaintiffs because they lacked an opportunity to develop and present their own factual stipulations.  No Strike Pleading ¶ 101.

Plaintiffs attempt to flip the Court's rulings on their head.  The Court has held that the Sale Order and Injunction prohibits all claims against New GM that are not either Independent Claims or Assumed Liabilities.  It is the Non-Ignition Switch Plaintiffs that bear the burden of demonstrating their claims can move forward, a burden they do not even attempt to meet.  As the Court has held:

> The Non–Ignition Switch Plaintiffs' claims remain stayed, and properly so; those Plaintiffs have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them.  ***And unless and until they do so, the provisions of the Sale Order, including its injunctive provisions, remain in effect.***  Similar considerations (and also mootness points) may apply with respect to the allowance of late Non–Ignition Switch Plaintiffs' claims."

Form of Judgment Decision, 531 B.R. at 360 (emphasis added).

The Court gave the Non-Ignition Switch Plaintiffs the opportunity to raise objections regarding due process and to explain why they should not be bound by the Sale Order and Injunction.  It also made clear that Non-Ignition Switch plaintiffs were required to seek resolution from this Court of those issues before proceeding further against New GM.  Judgment ¶ 13(a).  But plaintiffs have offered no arguments on the merits of those issues, including how their position is distinguishable from the Ignition Switch Plaintiffs.  Indeed, most of the vehicles of the Non-Ignition Switch Plaintiffs in the proposed class were not defective and/or subject to a recall.  *See* SACC ¶ 25; April 15 Decision, 529 B.R. at 522-23 ("most of [the Non-Ignition Switch Plaintiffs'] cars did not have defects, and/or were not the subject of recalls, at all.  But they contend, in substance, that the Ignition Switch Defect caused damage to 'the brand,' resulting in Economic Loss to them.").  It is hard to see how those plaintiffs could possibly establish they were known creditors entitled to individual notice, particularly for the more than 40 million vehicles not subject to recalls.[24]  Accordingly, the Sale Order and Injunction should not be modified with respect to their claims against New GM.

But even if the Non-Ignition Switch plaintiffs could establish they did not receive adequate notice of the 363 Sale or bar date, they do not explain why the Court's reasoning or conclusions on prejudice would be any different for these economic-loss plaintiffs, who claim a defect other than Ignition Switch defect:

> Back in 2009, the Court heard many others make the same arguments [regarding the Free and Clear provisions], and rejected

---

[24] *See* April 15 Decision, 529 B.R. at 524 ("Given [the] urgency [of the Sale], with the sale hearing to commence 29 days after the Petition Date; objections due 18 days after the Petition Date; and 70 million Old GM vehicles on the road, notice by publication to vehicle owners was obviously proper.  Indeed, it was essential.  It would be wholly unreasonable to expect actual notice of the 363 Sale hearing then to have been mailed to the owners of the 70 million GM cars on the road at the time, or even the 27 million whose cars were then (or later became) the subject of pending recalls.").

them.  The Court now has heard from both the Economic Loss Plaintiffs and Pre–Closing Accident Plaintiffs with respect to the Free and Clear Provisions and successor liability, with full and fair opportunity to be heard.  And neither Plaintiff group has advanced any arguments on successor liability that were not previously made, and made exceedingly well before.

April 15 Decision, 529 B.R. at 526.

As the Court noted, although the April 15 Decision would not be res judicata, it "will be stare decisis for the Non–Ignition Switch Plaintiffs (subject to the usual right of any litigant to show that a judicial opinion is distinguishable) . . . ."  Form of Judgment Decision, 531 B.R. at 360.  Plaintiffs have not demonstrated that their claims are distinguishable in any meaningful way for purpose of the analysis in the April 15 Decision.  Accordingly, their Objection Pleading should be overruled and the April 15 Decision and Judgment should apply to them in all respects.

## **CONCLUSION**

WHEREFORE, New GM respectfully requests that this Court (i) deny the relief requested in the No Strike Pleading and Objection Pleading, (ii) strike the claims and allegations in the SACC that fail to conform to the April 15 Decision and Judgment; and (iii) grant New GM such other and further relief as the Court may deem just and proper.

**26**

Dated: New York, New York
July 23, 2015

Respectfully submitted,


_____/s/ Arthur Steinberg_____
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*