# Exhibit 7

Gary Peller
600 New Jersey Avenue, N.W.
Washington, DC 20001
(202) 662-9122
*Counsel for Petitioners Celestine Elliott*
*Lawrence Elliott, and*
*Berenice Summerville*

July 23, 2015

**Via ECF Filing**
Ms. Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals, Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re: *Elliott et al. v. General Motors LLC et al.*, Docket No. 15-01958
**Letter Regarding Update on Related Proceedings**

Dear Ms. Wolfe:

In light of Local Rule 4.2, Lawrence Elliott, Celestine Elliott and Berenice

Summerville, Petitioners in the above referenced matter, herby notify the Court of

a development in related proceedings in *Motors Liquidation Company*, Docket No.

1:09-bk-50026. On July 22, 2015, The United States Bankruptcy Court for the

Southern District of New York entered its *Decision and Order on Bledsoe*

*Plaintiffs' Reargument and Other Post Judgment Motions* (Bankruptcy Docket No.

13313). A copy of the Bankruptcy Court's decision is attached hereto as Exhibit A.

The Bankruptcy Court's ruling disposes of the *Bledsoe* Plaintiffs' post-

Judgment motions to amend findings pursuant to Fed.R.Bank.P. 7052, for

Ms. Catherine O'Hagan Wolfe
July 23, 2015
Page 2

reargument under S.D.N.Y Local Bankruptcy rule 9023.1, to alter or amend the

Judgment pursuant to Fed.R.Bank.P. 9023, and for relief from the Judgment

pursuant to Fed.R.Bank.P. 9024.

Respectfully Submitted,

*/s/ Gary Peller*
Gary Peller

cc:     Counsel of Record (via ECF)

**Certificate of Service**

I hereby certify that on July 23, 2015, I caused the foregoing **Letter**

**Regarding Update on Related Proceedings** to be served on all parties receiving

notice via the Court's ECF System.

Dated: July 23, 2015

                                                    */s/ Gary Peller*
                                                    Gary Peller

Case 16-1898, Document 67, 07/23/2016, 1901150, Page4 of 27

# Exhibit A

09-50026-reg   Doc 13333   Filed 09/22/15   Entered 09/22/15 12:43:40   Main Document
Pg 6 of 28

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
In re                                                    :          Chapter 11
                                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,                    :          Case No.: 09-50026 (REG)
            f/k/a General Motors Corp., *et al.*         :
                                                         :          (Jointly Administered)
                                 Debtors.                :
----------------------------------------------------------x

DECISION AND ORDER ON BLEDSOE
PLAINTIFFS' REARGUMENT AND OTHER
POST-JUDGMENT MOTIONS

APPEARANCES:

GARY PELLER
*Attorney for Bledsoe Plaintiffs*
600 New Jersey Avenue, NW
Washington, DC 20001
By:    Gary Peller, Esq.

KING & SPALDING LLP
*Counsel for General Motors LLC (New GM)*
1185 Avenue of the Americas
New York, New York 10036
By:    Arthur J. Steinberg, Esq.
       Scott I. Davidson, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

        In still another filing in his efforts to go it alone in connection with litigation

arising from the announcement by General Motors LLC ("**New GM**") of the defects in its

ignition switches (the "**Ignition Switches Controversy**"), and the issuance by this Court

of two opinions in connection with that controversy[1] following the briefing by other

counsel who ably presented plaintiffs' arguments, Gary Peller Esq., this time on behalf of

---

[1]      *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015) (Gerber, J.) ("**Decision**");
*In re Motors Liquidation Co.*, 531 B.R. 354 (Bankr. S.D.N.Y. 2015) (Gerber, J.) ("**Form of
Judgment Decision**").  Familiarity with each is assumed.

-1-

the "**Bledsoe Plaintiffs**,"[2] a subset of the clients he has represented (individually and as

purported class representatives) in this case,[3] has filed many motions seeking post-

judgment relief from this Court.  He moves, with respect to the judgment this Court

entered implementing the *Decision* (the "**Judgment**") and the *Decision's* Findings of

Fact (the "**Findings**"):

>        (a) to amend the Findings under Fed.R.Bankr.P. 7052;

>        (b) to alter or amend the Judgment, under Fed.R.Bankr.P. 9023 (and,
> presumably, Fed.R.Civ.P. 59(e));

>        (c) for relief from the Judgment, under Fed.R.Bankr.P. 9024; and

>        (d) for reargument, under S.D.N.Y. Local Bankruptcy Rule 9023-1.

The motions are denied.

<u>Facts</u>

Familiarity with facts set forth in the *Decision* and the *Form of Judgment*

*Decision* is presumed.  The Court limits its discussion of the facts to those necessary to

address Peller's post-Judgment motions, and then only in combined factual and legal

discussion of all of his motions.

---

[2]        Sharon Bledsoe, Celestine Elliott, Lawrence Elliott, Tina Farmer, Paul Fordham, Momoh Kanu, Tynesia Mitchell, Tierra Thomas and James Tibbs.  Celestine Elliott and Lawrence Elliott were (and may still be) plaintiffs in another subset of Peller's clients, the "**Elliott Plaintiffs**," the subject of this Court's earlier opinion in *In re Motors Liquidation Co.*, 514 B.R. 377 (Bankr. S.D.N.Y. 2014) ("*Elliott*"), *leave to appeal denied*, No. 15–CV–772 (S.D.N.Y. May 18, 2015) (Furman, J.).

[3]        There is a hint in Peller's papers that all of this was merely to preserve, for the Bledsoe Plaintiffs subset of his clients, appellate rights with respect to the arguments he already made on behalf of the others.  *See* Bledsoe Br. at 7-8.  If that is so, it is not clear to the Court why he needed to file a 25 page brief to do it.

09-50026-reg   Doc 13332   Filed 07/22/15   Entered 07/22/15 12:42:45   Main Document
Pg 8 of 23

### Discussion

*1.  Motions to Amend Findings*

Peller first moves, pursuant to Fed.R.Civ.P. 52(b) (as made applicable to

adversary proceedings and contested matters by Fed.R.Bankr.P. 7052 and 9014), for

amendments in the Court's Findings.  But he identifies no fact that the Court confused or

otherwise got wrong, nor any fact that belonged in the Findings but was not included.

Rather, Peller differs with conclusions of law and on mixed questions of fact and

law on matters the Court already decided.  For instance, he argues that "the Court's

construction of the [Sale Order[4]] is untenable, and the Court should amend its findings to

construe the [Sale Order] not to encompass Independent Claims."[5]  As discussed below,

contentions of that character are inappropriate even on a motion for reargument.  They

are especially inappropriate on a request for amended findings.[6]

---

[4]   Notwithstanding the requirements of the Court's Case Management Order ("Parties are not to use acronyms in briefs to describe names of parties or agencies or expressions, unless their meaning is obvious," Case Management Order No. 3 at ¶ 28), Peller repeatedly speaks in terms of the "SOI" and "MTE."  In place of those cryptic acronyms, the Court has substituted words meaningful to a reader.

[5]   Bledsoe Br. at 19.  Also, of course, Peller misconstrues the Court's ruling.  Of course the Sale Order encompassed Independent Claims.  It did so by its express terms.  But this Court ruled that although the Sale Order did so, it should not have covered genuinely Independent Claims.  Not content with this, Peller seems to argue that New GM—and more importantly, the Court—should accept his *ipse dixit* contentions that the claims as he proposes to press them (including, for example, those of Sharon Bledsoe, the victim of a pre-Sale accident before New GM came into existence) are Independent Claims.  Contentions of that nature will be reviewed under the "No-Stay Pleading" mechanism crafted under the Judgment to which all of the other plaintiffs' counsel are adhering.  Rule 52 relief is not the appropriate means to address contentions of this type.

[6]   Though there is authority for the proposition that motions to amend findings may be used to amend conclusions of law as well as those on facts--though only those whose error is "manifest"—*see National Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990), "Rule 52(b) is not intended to allow parties to rehash old arguments already considered and rejected by the trial court."  *Id.*

09-50026-reg   Doc 13337   Filed 07/22/15   Entered 07/22/15 12:43:37   Main Document
Pg 9 of 23

2. *Motion to Alter or Amend Judgment*

        Peller likewise moves for amendment of the Court's judgment.  He argues (rearranging the arguments slightly, for purposes of analysis) that the Judgment should be amended:

        (1) to permit one of his clients, plaintiff Sharon Bledsoe—a pre-sale accident victim—to assert "Independent Claims";[7]

        (2) to exclude the Bledsoe Plaintiffs because the they did not receive the constitutionally required notice in 2009, and the "Court's construction of the [Sale Order] was not reasonably foreseeable";[8]

        (3) to exclude successor liability claims based on New GM's unlawful operation of Old GM assets;[9]

        (4) to "exclude the Bledsoe Plaintiffs' Independent Claims from its reach";[10]

        (6) to be "limited to the construction of the [Sale Order]" and that "the Motion to Enforce should be denied in all other respects,"[11] and

        (5) to deny the Motion to Enforce in its entirety.[12]

But these arguments, to the extent the Bledsoe Plaintiffs did not already win on them, repeat contentions the Court already rejected, are inappropriate for Rule 59 relief, or both.

---

[7]      Bledsoe Br. at 19.

[8]      *Id.* at 20.

[9]      *Id.* at 22.

[10]     *Id.* at 21.

[11]     *Id.* at 22.

[12]     *Id.* at 22.

The first contention is unpersuasive for both reasons.  Sharon Bledsoe, as Peller

acknowledges,[13] was the victim of a pre-sale accident.  The Court is highly sympathetic

to accident victims.  But she is no different than the other victims of pre-closing

accidents, very ably represented by Designated Counsel for the Pre-Closing Accident

Plaintiffs, whose arguments the Court fully considered but ultimately rejected.  She

admittedly "asserts a 'successor liability' claim for pre-sale injury"[14]—which, for reasons

explained at length in the *Decision*, could not be brought.  And Peller's efforts to

characterize her claims as "Independent Claims" are spurious.  New GM did not exist at

the time of her accident (as it did not at the time of the accidents involving other Pre-

Closing Accident Plaintiffs), and was not responsible for the consideration of Ms.

Bledsoe's claims, which were classic prepetition claims.  Thus New GM could be liable

to her only under prohibited theories of successor liability or similar theories imposing

liability on New GM for Old GM acts.  Peller has provided no basis for changing that

conclusion now.  As one who was an accident victim before the sale, Sharon Bledsoe

cannot, as the Court previously ruled, assert what are in substance successor liability

claims "dressed up to look like something else." [15]

The second contention is unpersuasive as well.  The Court ruled that all of the

Ignition Switch Plaintiffs failed to receive constitutionally requisite notice in the 363 Sale

and claims allowance stages of Old GM's chapter 11 case, but that except for the ability

to file claims against Old GM, and to assert Independent Claims, Ignition Switch

Plaintiffs were not prejudiced by their lack of notice—a critical element of any claim for

---

[13]   *Id.* at 13, 21.

[14]   Bledsoe Br. at 13.

[15]   *Decision*, 529 B.R. at 528 (quoting *Burton v. Chrysler Grp., LLC* (*In re Old Carco*), 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013) (Bernstein, C.J.) ("**Old Carco**")).

09-50026-reg    Doc 12933    Filed 07/13/14    Entered 07/13/14 13:33:43    Main Document
Pg 6 of 23

relief.  And though certain plaintiffs, or their lawyers, might not have regarded the

Court's recent rulings (in favor of New GM in some respects, and in favor of Ignition

Switch Plaintiffs in others) as foreseeable, the Court's rulings, in its view, were entirely

foreseeable—at least to those who were familiar with bankruptcy law and had read the

relevant cases.  In any event, this contention raises no issues the Court has not considered

before.

The third contention, to the extent the Court can understand it (given the inherent

inconsistency between successor liability claims and those premised solely on the

acquirer's conduct), is likewise unpersuasive.  The Court considered, and rejected, the

argument that Plaintiffs—whoever they might be—could still bring successor liability

claims.  To the extent, if any, that "unlawful operation" of what were once Old GM assets

is an independent offense otherwise actionable under nonbankruptcy law—consistent

with the rulings in *Old Carco* and the *Decision* that it not be a successor liability claim

"dressed up to look like something else"[16]—the Bledsoe Plaintiffs (other than Sharon

---

[16]    *See Old Carco*, n.15 *supra*.  How that principle applies to specific allegations in specific
complaints is the subject of the various "No-Stay Pleadings," which have been and will be filed by
counsel in this case, and are not before the Court now.  They will be decided by this Court (or the
District Court, depending on the outcome of pending motions related to withdrawal of the
reference) in subsequent proceedings.

But what this Court had in mind when it previously ruled as it did should not be in doubt.  This
Court assumed that things New GM did, or knowledge New GM personnel had when acting for
New GM (even if those personnel acquired that knowledge while acting for Old GM) would be
fair game.  (For example, if such were actionable under applicable nonbankruptcy law, New GM
could still be held liable, consistent with this Court's ruling, for knowingly installing a part it
knew to be defective even if the part had been made by Old GM—just as New GM might be liable
for doing that if the part had been manufactured by another manufacturer in the Supplier Chain—
and likewise could be held liable for refusing to make a repair that New GM knew had to be made,
no matter when its personnel acquired the requisite knowledge.)  But this Court further believed
that New GM could not be held liable for anything Old GM did, and that claims for either
compensatory or punitive damages would have to be premised solely on New GM's knowledge
and conduct.  While mention (without anything materially more) of Old GM and of the 363 Sale
would be proper, and New GM would have to live with the knowledge its personnel had from the
earliest days they began to serve New GM, this Court assumed that in light of its rulings, courts
thereafter implementing them would be wary of reliance on facts ostensibly introduced as
"background" when they were in fact attempts to paint New GM with Old GM acts.

Bledsoe) can bring claims premised on that theory.[17]  But like all of the other Ignition

Switch Plaintiffs, the Bledsoe Plaintiffs cannot bring any successor liability claims.

The fourth contention—that the Judgment should be amended to exclude the

Bledsoe Plaintiffs' Independent Claims from its reach—has largely already been

addressed.  To the extent the Bledsoe Plaintiffs' claims truly are Independent Claims,

they already are carved out from the prohibitions in the Judgment.  But the Bledsoe

Plaintiffs' *assertions* that claims they wish to bring are in fact Independent Claims do not,

without New GM's agreement or a ruling by this or a higher Court, make them so.  In any

event, the Judgment needs no amendment to reflect that reality.

The fifth contention is frivolous.  New GM is entitled to not just construction of

the Sale Order but also its enforcement,[18] to the extent (which is considerable) that the

Sale Order remains enforceable.  Peller's contentions here that the Court lacks the

jurisdiction to do either are as frivolous now as they were when the Court rejected them

in *Elliott* and another decision considering Peller's many contentions,[19] *Sesay*.[20]  And

---

[17]     Thus Peller's further assertion that this Court, once having heard Designated Counsel's excessive
breadth argument (with which the Court ultimately agreed), nevertheless invoked "despotic
power" to insulate New GM from its own allegedly wrongful acts, Bledsoe Br. at 8-9—effecting a
"startling nullification of the laws of the United States and the States"—has no relation to what the
Court actually held.  Peller attacks a straw man.

[18]     *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("***Travelers***") ("[T]he only
question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the
Clarifying Order. The answer here is easy: as the Second Circuit recognized, and respondents do
not dispute, the Bankruptcy Court plainly had jurisdiction to interpret *and enforce* its own prior
orders.") (emphasis added); *Elliott*, 514 B.R. at 379–380 & nn.4–9.

[19]     *In re Motors Liquidation Co.*, 522 B.R. 13, 20 ("***Sesay***"), *leave to appeal denied*, No. 15–CV–776
(S.D.N.Y. May 18, 2015) (Furman, J.).

[20]     *See Elliott*, 514 B.R. at 379–380 & nn.4–9 (this Court had jurisdiction to construe and enforce the
Sale Order) (quoting *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
304 F.3d 223 (2d Cir. 2002) ("***Petrie Retail***") ("A bankruptcy court retains post-confirmation
jurisdiction to interpret *and enforce* its own orders,") (emphasis added); *Sesay*, 522 B.R. at 20
("This contention, as I held in *Elliott* (and which also is now the law of the case), is frivolous.
Federal judges, including bankruptcy judges, have subject matter jurisdiction to enforce their own
orders.").

New GM is not seeking a second injunction; it seeks only to enforce the injunction the

Court issued six years ago. Peller has cited no law, nor is the Court aware of any, that

says that New GM must invoke the word "contempt" (and provide the additional

safeguards to Peller a request for contempt would impose) to enforce an earlier order.[21]

Though he contended that the Sale Order did not properly cover the claims he

wanted to bring, Peller had notice of the Sale Order by no later than July 9, 2014, when

his co-counsel Daniel Hornal submitted Peller's letter to the Court[22]—more than two

months before when he filed *Bledsoe*, on September 19, 2014. And when Peller

nevertheless filed *Bledsoe*, he did so notwithstanding what he knew the Sale Order to say.

Though the Court will entertain a motion for contempt if New GM wishes to bring one (a

matter as to which Peller is surprisingly cavalier), the Court will not require one as a

condition to the enforcement of the Sale Order, nor will it hold the other parties in this

case, with their respective desires to appeal and cross appeal, hostage to the completion

of proceedings for contempt.

The sixth contention likewise is no basis for relief. Its premise for denying the

Motion to enforce in its entirety—that the Bledsoe Plaintiffs did not receive the requisite

notice and opportunity to be heard back in 2009—was addressed at great length in the

---

[21]     Peller lays out requirements for holding him liable for contempt under the law of the Second
Circuit, *see* Bledsoe Br. at 23 n.87, but the authorities he cites do not support the proposition that
it is necessary to place him in contempt to simply enforce the Court's order. Though contempt is
available to enforce earlier orders, "and no further remedy is necessary," *Walls v. Wells Fargo
Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002), that does not mean that motions to simply enforce
an earlier order, without seeking contempt, are impermissible. To the contrary, Bankruptcy
Judges enforce their earlier orders, without also placing people in contempt, with great frequency.

[22]     *See* ECF #12765, amended in respects not relevant here, ECF#12766 (7/9/2014 Peller Ltr.) at 2
(contending that the complaint he wanted to file "carefully avoids violation of the Sale Order");
*accord id.* at 4-5.

*Decision.*[23]  If Peller wants the Judgment overturned in its entirety, he should seek that by

appeal.  Rule 59(e) was adopted in order to clarify that the district court has the power to

rectify its own mistakes in the period immediately following the entry of judgment,[24] and

here the Court sees none.  "A Rule 59(e) motion to alter or amend a judgment may not be

used to relitigate the same matters already determined by the court."[25]

### 3.  Motions for Relief from Judgment

Peller then makes three contentions that seem to sound in relief under Rule 60(b),

based on contentions that this Court's actions were void.  He contends that:

(a) the Court has no power to order dismissal of or to "censor" the Bledsoe

Plaintiffs' pleadings pending before an Article III Court;[26]

(b) The Bledsoe Plaintiffs cannot be bound by the Judgment because they

"were precluded from participating in the 'threshold issues'";[27] and that

(c) the Bledsoe Plaintiffs are entitled to relief from the void provisions of

the [Sale Order]."[28]

Once again, however, his arguments, to the extent the Bledsoe Plaintiffs did not already

win on them, lack merit.

---

[23]   *See* 529 B.R. at 572-73.

[24]   *See* 12 *Moore's Federal Practice – Civil* § 59.30[1].

[25]   *Id.* § 59.30[6] & n.20.

[26]   *Id.* at 23.

[27]   *Id.* at 24.  In his motion, Peller seeks that same relief as an amended finding under Rule 7052,
asserting that the "record is clear" that the Bledsoe Plaintiffs had no opportunity to be heard.
Bledsoe Motion at 2.

[28]   Bledsoe Br. at 25.

-9-

*(a) "Censoring" the Bledsoe Plaintiffs*

The first point, apart from its theatrics, is simply contrary to the law.  Bankruptcy
Judges, notwithstanding their appointment under Article I, most assuredly have the power
to enjoin litigants from prosecuting claims in other courts—state or federal, and in the
latter case, even those that might otherwise be heard by judges appointed under Article
III—when such injunctions are otherwise within Bankruptcy Judges' jurisdiction and an
appropriate use of their injunctive powers.[29]  (This is no different in effect, and not
materially different in concept, from the operation of the automatic stay, implemented
under section 362 of the Bankruptcy Code, which enjoins litigation in any forum, before
any kind of judge.[30])  Peller recognizes that "[a]s the Court has stated, it unquestionably
had *in rem* jurisdiction to issue the [Sale Order] under § 363."[31]

The Sale Order enjoined the prosecution of the litigation Peller commenced; the
Court thereafter enforced that order, by staying his litigation;[32] and as *Travelers, Petrie*

---

[29]     *See*, *e.g Petrie Retail*, 304 F.3d at 225 (affirming three orders by Judge Gonzalez of this Court,
thereafter affirmed by Judge Pauley of the District Court, enjoining a landlord from "commencing
or continuing any action contingent upon the interpretation of lease provisions that were at issue in
the administration of the debtors' estate"); *Adelphia Communications Corp. v. The America
Channel, LLC (In re Adelphia Communications Corp.*), 345 B.R. 69, 71 (Bankr. S.D.N.Y. 2006)
(Gerber, J.) (enjoining The America Channel and its counsel from prosecuting certain of their
antitrust claims in the United States District Court for the District of Minnesota), *motion for
expedited appeal denied*, No. 1:06-cv-05137-BSJ (S.D.N.Y. Jul. 25, 2006) (Jones, D.J.) (denying
expedited appeal, describing Bankruptcy Court's opinion below as "thorough and well-reasoned").

[30]     Peller seems to recognize this.  He notes that under the automatic stay provisions of section 362,
the Court acquires the power to enjoin ongoing civil proceedings, "even those in superior Article
III courts."  Bledsoe Br. at 9.

[31]     Bledsoe Br. at 11.  Peller also concedes, in a way, that the Court "also *may* have inherent power to
construe and enforce its own orders," *id.* (emphasis added), as if the Supreme Court's decision in
*Travelers,* which says that the Bankruptcy Court "plainly" has that power, leaves any doubt as to
that.  *See* n.18, *supra*.

[32]     The Court has always believed that just as it had the power to enjoin the prosecution of litigation
under the Sale Order, it had the power to order the dismissal of litigation brought in violation of it.
But to the extent that proposition is debatable, the Court here does not have to decide it, because,
for reasons stated in the *Form of Judgment Decision*, *see* 531 B.R. at 357-58, it merely stayed the
offending litigation and did not dismiss it.

-10-

09-50026-reg Doc 13193-7 Filed 07/16/15 Entered 07/16/15 23:43:44 Main Document
Pg 11 of 23

*Retail* and the other cases make clear, this Court had the power to do so.  It does not

matter that the litigation Peller brought, in violation of the Sale Order, was before an

Article III judge.

Nor was Peller "censored" in any way by this Court, other than by prohibiting

him from prosecuting litigation he had already been enjoined from prosecuting.  Peller is

not "censored" from saying anything he wants on appeal.

*(b) Asserted Inability to Be Heard*

Peller's second point, asserting an inability to be heard on the Threshold Issues, is

contradicted by the record in this case.  The Court finds, as a fact, to the contrary.  The

Court never limited the opportunity to be heard on the issues before it to Designated

Counsel or anyone else.  All counsel for Plaintiffs whose complaints were the subject of

the Motions to Enforce, including Peller, had the opportunity to file a brief and (assuming

they had filed a brief) to present oral argument on the Threshold Issues.

New GM filed the Motion to Enforce on April 21, 2014.  It was obvious from the

outset that a very large number of Plaintiffs' lawyers would oppose it.  On that same day,

New GM counsel Arthur Steinberg wrote the Court seeking a conference on the

management of the Motion, noting that as of that point in time, there were "currently over

50 Ignition Switches pending across the country (with new actions filed each week)," and

that for the most part, the Plaintiffs in those actions were not represented by the same

counsel.[33]

Also on the same day, the first of the Plaintiffs' counsel to be heard on this matter

(Jonathan Flaxer, Esq., on behalf of the Groman Plaintiffs) filed an adversary complaint in

---

[33]     ECF #12622 at 2.  By the time the Court issued the *Decision*, the number of affected actions had
         increased to about 140.

this Court seeking a declaration that his clients should not be bound by the Sale Order. The following day, April 22, Flaxer wrote his own letter to the Court, *inter alia* agreeing that the status conference New GM requested "would streamline the proceedings," and also stating that "it would serve the interests of economy and efficiency to coordinate [his complaint] with the Motion to Enforce for discovery and other scheduling purposes."[34]

Later that day—considering it obvious that coordinated management of the issues to be determined was essential[35]—the Court issued an Endorsed Order agreeing to hold the requested status conference, on-the-record, on May 2, 2014, and directing New GM to send out notice of the conference. The Court stated, *inter alia*,

> No substantive matters will be decided at the conference, nor will evidence be taken. The Court understands the purpose of the conference to be determining how best to procedurally address any contentions parties wish to make. The Court expects to then limit its consideration to matters such as ascertaining what must be determined, when, and how—*and how the positions of many who may have identical or similar positions may be presented without undue duplication and expense.* Matters then to be addressed will include (but not necessarily be limited to) establishing an appropriate briefing schedule and fixing a date and time for hearing.[36]

---

[34]    ECF #12626 at 2.

[35]    The Court had dealt with case management issues of this character before. When Old GM's motion for approval of the 363 Sale was heard in 2009, it engendered about 850 objections. *See In re General Motors Corp.*, 407 B.R. 463, 520 (Bankr. S.D.N.Y. 2009) (the "*Sale Opinion*"), *stay pending appeal denied*, 2009 WL 2033079 (S.D.N.Y. Jul. 9, 2009), *appeal dismissed and aff'd sub nom Campbell v. General Motors Corp.*, 428 B.R. 43 (S.D.N.Y.2010); *Parker v. General Motors Corp.*, 430 B.R. 65 (S.D.N.Y.2010), *appeal dismissed*, No. 10–4882–bk (2d Cir. July 28, 2011) (*per curiam*), *cert. denied*, --- U.S. ---, 132 S.Ct. 1023 (2012). There the Court considered the briefs of anybody who filed one, but to keep the proceedings manageable and avoid duplication, limited oral argument to designated representatives for each kind of objection, with others being heard orally if, but only if, they had something different to say. The same procedure was utilized here.

[36]    ECF #12627 (emphasis added).

On May 1, 2014, just before the upcoming May 2 conference, Edward Weisfelner,

Esq., a bankruptcy lawyer who would later become one of the Designated Counsel, wrote

the Court advising, *inter alia*, that his firm, along with two others, had been designated

by a majority of the Plaintiffs to meet with New GM to present Plaintiffs' views at the

upcoming conference. Along with presenting substantive thoughts as to issues that

should be teed up for judicial determination and how they should be addressed,

Weisfelner stated that he and others had "worked to coordinate efforts in the spirit of

Your Honor's April 22, 2014 scheduling order and case management orders in this

case."[37]

The Court then held the first conference in this matter on that May 2 date,

focusing on its desire, to avoid the chaos that otherwise would result, to hear from many

affected parties in a coordinated way, with skilled bankruptcy litigators making the

arguments for Plaintiffs in the first instance, with others having the right to supplement

them. But while believing that the Plaintiffs' lead arguments should be presented by a

small number of counsel with bankruptcy litigation expertise, the Court emphasized its

intent that any nonrepetitive points would still be heard:

> I don't want repetition, and that includes making the
> same point in different ways. I need to hear from
> anybody who thinks those three firms [three of the
> four who emerged as Designated Counsel] aren't
> good enough [to say] why that's so, or conversely
> why they're not raising issues that need to be
> addressed. *That's not to say that anybody who
> thinks up anything those firms couldn't can't be
> heard,* but I need to know why and what's the
> problem.[38]

---

[37]     ECF #12677 at 3.

[38]     May 2, 2014 Conf. Tr. (No. 1:14-AP-1929, ECF #16), at 13:1-13:8 (emphasis added).

By the end of the May 2, 2014 Conference, the Court scheduled a follow-up conference for July 2, and issued a number of directives for matters to be accomplished before that time, to be thereafter implemented in a written scheduling order. The Court directed those who had been heard at the May 2, 2014 Conference to meet and confer and thereafter present an agreed-on order to embody the matters on which the Court had ruled, along with further details.

Those lawyers did so. But while the Court largely agreed with the proposed form of order they had submitted, the Court added several paragraphs (shown by blackline) to underscore its desire to ensure that other voices could be heard. One such paragraph expressly confirmed the Court's willingness to allow others to be heard, so long as they did so in a nonrepetitive way. The resulting order (the "**May 2014 Procedures Order**") was ultimately entered on May 16, 2014. The paragraphs the Court added provided, in relevant part:

> [T]o the extent reasonably practicable, Designated Counsel shall consult and coordinate with other bankruptcy counsel who have filed a notice of appearance on behalf of any Plaintiff(s) in connection with the matters set forth in paragraphs 2, 3 and 6 above.
>
> *[N]othing in this Order is intended to or shall preclude any other Plaintiff's counsel from taking a position in connection with any of the matters set forth in paragraphs 2, 3 and 6 above,* PROVIDED that any other counsel who wishes to be heard *orally* with respect to such position at the Conference on July 2 shall submit and electronically file, no later than noon on July 1, a letter to the Court (with copies to all Identified Parties) summarizing the points he or she will wish to make; and PROVIDED FURTHER that any

-14-

        counsel who has failed to do so will not be heard
*orally* at the July 2 Conference.[39]

By the time of the July 2 conference, there were 87 actions (about 83 of which were class actions) pending against New GM, most of which were consolidated for pretrial proceedings before Judge Furman in the MDL.  According to a letter he sent to the Court on July 9,[40] Peller was retained by the first of his clients (Celestine and Lawrence Elliott, who had initially filed a *pro se* complaint in the District of Columbia) on June 17.   Peller's co-counsel Daniel Hornal was heard at length, on behalf of the Elliotts, at the July 2 Conference,[41] seeking relief from a No-Stay Stipulation the Elliotts had entered before they had counsel.[42]

By email dated June 30, 2014, Peller's co-counsel Hornal (copying Peller) submitted the first of many emails, letters, motions, briefs, and other filings in this Court, all of which (except for notices of appeal and motions for leave to appeal) were considered by the Court.  Peller personally submitted his first on July 3, 2014, cosigning a letter with his co-counsel Hornal at that time.[43] All in all, Peller and Hornal made more than 20 substantive filings (not counting notices of appeal and motions for leave to

---

[39]     May 2014 Scheduling Order at 6 (emphasis added).  The identified paragraphs were matters as to which parties were to meet and confer, or otherwise accomplish specified tasks, in advance of the next conference on July 2.  This order, like other Court directives that preceded and followed it, exemplifies the distinction between counsel's ability to argue orally, on the one hand, and to file briefs and be heard by letter, on the other.

[40]     ECF #12763.

[41]     *See* July 2, 2014 Conf. Tr. (ECF #13001) at 7, 98-114.

[42]     The Court then learned that Hornal and Peller wanted to convert the Elliotts' *pro se* complaint into not just a more intelligible one but also a class action.  *See id.* at 104.  Hornal also admitted that "we are soliciting clients for other cases." *Id.* at 107.  The Court granted Hornal's request for relief from the stipulation to permit the filing of an amended complaint to cure the Elliotts' pro se deficiencies, but for them alone.  The Elliott action was thereafter followed by the *Sesay* and *Bledsoe* actions, each a class action.

[43]     ECF #12761.  Peller's first solo submission was on July 9.  *See* ECF ##12765, 12766.

appeal),[44] all of which, no matter how frivolous, were considered by the Court; seven of

which resulted in substantive[45] orders of the Court;[46] and three of which were addressed

in full written opinions (or parts of larger opinions) by the Court.[47]

---

[44]   ECF #12737 (Hornal 6/30/2014 email and Endorsed Order on it re Elliott Plaintiffs); ECF #12761
(7/3/2014 Ltr. from Peller and Hornal on behalf of Elliott Plaintiffs seeking reconsideration of
rulings at 7/2/2014 hearing); ECF ##12765, 12766 (7/9/2014 Ltr. by Peller on behalf of Elliott
Plaintiffs seeking vacatur or suspension of Court's 7/8/2014 order); ECF #12769 (7/11/2014 Ltr.
by Hornal on behalf of Elliott Plaintiffs to correct assertedly erroneous statements by New GM's
counsel); ECF #12772 (7/11/2014 No-Stay Pleading and Motion and Brief Seeking Dismissal
signed by Hornal on behalf of Elliott Plaintiffs);

Also, ECF #12773 (7/12/2014 Declaration by Peller and other documents re Motion Seeking
Dismissal on behalf of Elliott Plaintiffs); ECF #12774 (7/12/2014 Corrected No Stay Pleading and
Motion and Brief Seeking Dismissal signed by Hornal on behalf of Elliott Plaintiffs); ECF #12775
(7/14/2014 Notice of Appeal on behalf of Elliott Plaintiffs signed by Hornal from orders of
6/30/2014, 7/8/2014, and 7/11/2014); ECF #12777 (7/18/2014 Notice signed by Hornal of
7/16/2014 order in District of Columbia with respect to the Elliott Plaintiffs); ECF #12778
(7/18/2014 Notice of Withdrawal of Appeal signed by Hornal on behalf of Elliott Plaintiffs);

Also, ECF #12783 (7/23/2014 Ltr. by Peller on behalf of Elliott Plaintiffs asking that his
7/12/2014 motion (ECF #12773) be treated as submitted and granted forthwith); ECF #12784
(7/23/2014 Exhs. to Peller 7/23/2014 Ltr., including 7/21/2014 Peller email, all on behalf of Elliott
Plaintiffs); ECF #12787 (7/28/2014 Ltr. by Peller, on behalf of Elliott Plaintiffs, re subject matter
jurisdiction points on their Motion to Dismiss); ECF #12788 (7/28/2014 Corrected Ltr. by Peller,
on behalf of Elliott Plaintiffs, re subject matter jurisdiction points on their Motion to Dismiss);
ECF #12821 (8/8/2014 Ltr. by Peller, on behalf of Sesay Plaintiffs, re subject matter jurisdiction
points as to their planned motion to dismiss);

Also, ECF #12830 (8/12/2014 Ltr. by Peller, on behalf of Sesay Plaintiffs, re their pending
motions); ECF #12822 (8/8/2014 Notice of Settlement, on behalf of Elliott Plaintiffs, re their
counter-order); ECF #12828 (8/12/2014 Supplemental Notice of Settlement of Counter-Order
filed by Peller on behalf of Elliott Plaintiffs); ECF #12839 (8/13/2014 Notice of Appeal filed by
Peller on behalf of Elliott Plaintiffs); ECF #12870 (8/22/2014 Corrected No-Stay Pleading and
Motion Seeking Dismissal and Abstention signed by Peller on behalf of Sesay Plaintiffs);

Also, ECF #12871 (8/25/2014 Motion and Brief Seeking Amendment of Judgment filed by Peller
on behalf of Elliott Plaintiffs); ECF #12872 (8/25/2014 Motion and Brief Seeking Abstention filed
by Peller on behalf of Elliott Plaintiffs); ECF #12883 (9/5/2014 Amended No-Stay Pleading,
Motion and Brief Seeking Dismissal and Abstention filed by Peller on behalf of Sesay Plaintiffs);
ECF #12948 (10/13/2014 Brief on No-Stay Pleading filed by Peller on behalf of Bledsoe
Plaintiffs); ECF #13002 (11/21/2014 Renewed Notice of Appeal filed by Peller on behalf of
Elliott Plaintiffs);

Also, ECF #13004 (11/24/2014 Notice of Appeal by Peller on behalf of Sesay Plaintiffs); ECF
#13005 (11/24/2014 Motion for Leave to Appeal filed by Peller on behalf of Elliott Plaintiffs); and
ECF #13007 (11/24/2014 Motion for Leave to Appeal filed by Peller on behalf of Sesay
Plaintiffs).

[45]   Not counting, *e.g.*, orders approving stipulations, granting extensions of time, and granting
admission to the Court *pro hac vice*.

[46]   *See* ECF #12792 (re request to "grant forthwith" motion, on behalf of the Elliott Plaintiffs, to
dismiss New GM Motion to Enforce for lack of subject matter jurisdiction); ECF #12834 (re
Elliott Plaintiffs' No-Stay Pleading); ECF #12835 (re various Sesay Plaintiffs' requests); ECF

Following the Court's conference of July 2, 2014, it issued another scheduling
order (the "**July 11 Order**"),[48] implementing the July 2 conference's rulings.  The
Court's order was entered on July 11, 2014 (not on July 7, as Peller asserts[49]), but more
importantly the July 11 Order (which Peller does not quote) did not "restrict[]
participation in the proceedings to 'counsel for the Identified Parties,'" as Peller likewise
asserts.  In fact, while it is plain that the Court contemplated receiving briefs from most
or all of the Identified Parties (Designated Counsel, Flaxer, the GUC Trust, Unitholders,
and New GM), and set the dates by which each of their briefs were due, that is as far as it
went.  As nobody had requested that the July 11 Order address the issue, it was wholly
silent on whether others could file briefs as well.  It certainly did not prohibit Peller (or
anyone else) from doing so.

After a conference on August 18, 2014, dates for the submission of briefs on the
Motion to Enforce were pushed back, principally to take into account the Plaintiffs' filing
of an amended complaint in the MDL.[50]  At that conference, after the most active players
had spoken (principally about the Threshold Issues to be decided, and when briefs should
be due), the Court asked those in the Courtroom, "[o]thers want to be heard?"[51]  One
attorney spoke up, but not on whether he or others could file briefs.  After his issues were

---

#12836 (on Elliott Plaintiffs' Supplemental Notice of Settlement); ECF #12991 (re Bledsoe
Plaintiffs' No-Stay Pleading); ECF #12993 (re Elliott Plaintiffs' request for reargument); ECF
#12995 (re Sesay Plaintiffs' No-Stay Pleading).

[47]   *See* ECF #12815 (*Elliott*); #12989 (*Sesay*); #13162 (*Form of Judgment Decision*).  The Court also
issued a fourth decision on matters raised by Peller, denying, by Endorsed Order ("***Bledsoe
Endorsed Order***"), similar arguments he made on behalf of the Bledsoe Plaintiffs, citing, *inter
alia*, the Court's earlier rulings in *Elliott* and *Sesay*.  *See* ECF #12991.

[48]   *See* ECF #12770.

[49]   Bledsoe Br. at 6.

[50]   *See* Tr. of Hrg. of 8/18/2014, ECF #12899.

[51]   *Id.* at 73:25.

-17-

addressed, the Court then asked, "[a]nything else?"  This time, nobody spoke, on whether

others could file briefs or otherwise.[52]

On August 21, 2014, New GM counsel Arthur Steinberg wrote the Court,

advising that counsel for the Identified Parties had met and conferred on an appropriate

briefing schedule, and proposed specified modifications to the briefing schedule.[53]

Steinberg stated, *inter alia*, that:

> As previously agreed, Designated Counsel, to the
> extent reasonably practicable, shall consult and
> coordinate with other counsel who have filed a
> notice of appearance on behalf of any Plaintiff(s)
> and solicit input and/or comments to Designated
> Counsel's proposed response to the New GM
> Opening Brief and proposed response to the
> Unitholder/GUC Trust Opening Brief (including
> providing counsel drafts of Designated Counsel's
> briefs no less than ten days prior their submission
> deadline as set forth above).

But neither Steinberg nor the others asked that the Court prohibit other counsel be from

filing briefs on their own, and the Court, which on August 22  issued an Endorsed Order

on Steinberg's letter, simply saying "Approved,"[54] never issued such a prohibition.

Under the revised schedule, briefs in opposition to the Motion to Enforce were

due on December 16, 2014, by which time Peller had made nearly two dozen filings on

behalf of each of his three client groups.  Opposing briefs were filed on or before that

date by the GUC Trust and Unit Holders, Designated Counsel for the Ignition Switch

Plaintiffs, Designated Counsel for the Pre-Closing Accident Plaintiffs, and one additional

---

[52]   *Id.* at 90:22.

[53]   ECF #12867.

[54]   ECF #12869.

counsel, Flaxer, for the Groman Plaintiffs.[55]  Peller did not submit a brief on the

Threshold Issues, on behalf of any of his client groups, timely or otherwise.  Nor did he

ask the Court if he could.

On January 13, 2015, with oral argument on the Threshold Issues coming up, the

Court entered an "Administrative Order re Oral Argument and Related Matters" (the

"**Oral Argument Administrative Order**").[56]  After requiring New GM, Designated

Counsel and GUC Trust counsel to confer and submit a joint recommendation to the

Court on a sequence for oral argument and time allocations for each constituency, the

Court's order provided, *inter alia*:

> Counsel other than New GM counsel, Designated
> Counsel and GUC Trust counsel are to consult with
> counsel for the entity most aligned with their
> interests to ascertain whether their oral argument
> needs can be satisfied by counsel for the most
> closely aligned entity.  If, after such consultation,
> any other party wishes oral argument, the party will
> be heard orally only if (a) that party has filed a brief
> (other than an unqualified joinder) and (b) writes
> the Court, no later than noon on Tuesday, January
> 27, (i) requesting time for oral argument; (ii) stating
> the amount of time requested; and, most
> importantly, (iii) stating the reasons why argument
> by one of the most closely aligned counsel would be
> insufficient—it being remembered that the Court
> will have read all briefs.[57]

Only Flaxer (on behalf of the Groman Plaintiffs) made a request to be heard

orally.  His request was granted.  Peller had not filed a brief, and under the Oral

Argument Administrative Order, he thus was not entitled to ask for oral argument.  But in

any event, he did not then ask to be heard orally either.

---

[55]    *See* ECF ##13021, 13025, 13028, 13030.

[56]    ECF #13044.

[57]    Oral Argument Administrative Order at ¶ 3.

09-50026-reg   Doc 13319-7   Filed 07/22/15   Entered 07/22/15 13:34:54   Main Document
Pg 20 of 23

The fact that Peller ultimately decided not to file a brief, or request oral argument in connection with the hearing on the Four Threshold Issues (on behalf of any of his clients, the Elliott Plaintiffs, the Sesay Plaintiffs, or the Bledsoe Plaintiffs), was his choice to make.  But that does not mean that he was denied the chance to be heard.

In the *Form of Judgment Decision*, the Court considered Peller's contention, on behalf of his various clients, that they should not be bound by the Judgment.  The Court rejected it:

> He [Peller] further argues, on behalf of the Peller
> Plaintiffs, that the Court's rulings in the Decision
> are not binding on them. The Court disagrees.  The
> Peller Plaintiffs had more than ample opportunity to
> raise contentions Designated Counsel did not raise.
> And though Mr. Peller's filings were so numerous
> and frivolous that the Court warned him of the entry
> of a *Martin–Trigona* order, he still had the right
> under the Court's orders establishing the
> mechanisms for determination of the Motion to
> Enforce, to make any points others had not.[58]

For that matter, Peller even had the ability to make any points others *had* made, so long as he did so in writing.  But he chose to put his energy into a variety of frivolous points, addressed in *Elliott*, *Sesay*, and the *Bledsoe* Endorsed Order,[59] rather than the Threshold Issues.  Based on the Court's now very extensive knowledge of the issues it addressed in the *Decision*, the Court cannot see any points that one or another of Designated Counsel, Flaxer, or the GUC Trust failed to make.  But if Peller thought there were such (, he could have raised them.

---

[58]      531 B.R. at 357.

[59]      *See* n.47 *supra*.

*(c) Asserted Voidness of the Sale Order*

The third point (contending that the Court lacked the subject matter jurisdiction to issue the Judgment enforcing the Sale Order; that the Court enforced the Sale Order against the Bledsoe Plaintiffs in violation of their due process rights; and that the Bledsoe Plaintiffs were denied the opportunity to participate on the threshold issues) merely rehashes points Peller made before, in *Elliott*, *Sesay*, and here. It is rejected for the reasons previously stated.

*4. Motions for Reargument*

Finally, in reliance on S.D.N.Y. Local Bankruptcy Rule 9023-1, Peller seeks "reargument regarding whether the Bledsoe Plaintiffs may be bound by the [Sale Order] consistent with the Due Process Clause, and an amendment of the Judgment to exempt each of their independent, non-derivative claims from its reach."[60] He also contends that the Court committed "manifest error" by not understanding the difference between *in rem* and *in personam* jurisdiction. Reargument too is denied.

To be entitled to reargument, the moving party "must demonstrate that the court overlooked controlling decisions or factual matters 'that might materially have influenced its earlier decision.'"[61] "The rule permitting reargument must be narrowly construed to avoid repetitive arguments on issues that the court has already fully considered."[62]

The first half of the first contention—that the Bledsoe Plaintiffs could not be bound by the Sale Order—was extensively addressed in the *Decision*. Peller has brought

---

[60]     Bledsoe Motion at 2.

[61]     *In re Stylesite Marketing, Inc.*, 2001 WL 13212, at *1 (Bankr. S.D.N.Y. 2001) (Bernstein, C.J.) (quoting *Anglo–American Ins. Group, P.L.C. v. Calfed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996)).

[62]     *Id.*

forward no points that the Court then overlooked.  The second half of the first
contention—that the Court needs "to exempt each of [the Bledsoe Plaintiffs']
independent, non-derivative claims from [the Judgment's reach]" has been addressed
above.[63]  The Bledsoe Plaintiffs' Independent Claims, like all other Plaintiffs', *already
are* exempt from a continuing bar under the Judgment—to the extent they genuinely are
Independent Claims.  But a motion for reargument is not the means to test whether they
are.

Finally, Peller's perception that the Court fails to understand the difference
between *in rem* and *in personam* jurisdiction, aside from being incorrect in its premise, is
of no moment.  He devotes a full 10 pages of his brief to discussion of the distinction
between *in rem* and *in personam* claims.  But the reason for that lengthy discussion is
unclear.  If it is to argue that successor liability claims can still be asserted,
notwithstanding the Court's extensive analysis and conclusions to the contrary,[64] that is
not a matter the Court overlooked; it is a matter for appeal.  If, as seems to be the case, it
is to suggest that genuinely Independent Claims can still be asserted, he already has won
on that, so long as he limits his future claims to genuinely Independent Claims.  Here too,
there is no basis for reargument or reconsideration.

The Court will not lengthen this decision further by specifically addressing more
of Peller's remarks in these motions. The Court has canvassed the submission in its
entirety and satisfied itself that no material points other than those it has specifically
addressed were raised and have any merit.

---

[63]     *See*, *e.g.*, page 7 above.

[64]     *See Decision*, 529 B.R. at 566-68.

-22-

The motions are denied.


SO ORDERED.


Dated: New York, New York
       July 22, 2015                        ___s/Robert E. Gerber_____
                                            United States Bankruptcy Judge