UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____x   Chapter 11

In re                                        Case No.: 09-50026 (REG)


MOTORS LIQUIDATION COMPANY, *et. al.*
      f/k/a General Motors Corp., *et. al.*


                        Debtors

_____x


### WALTON REPLY TO GENERAL MOTORS LLC RESPONSE TO NO STRIKE MOTION PURSUANT TO JUDGMENT BY DOLLY WALTON

Dolly Walton, individually and as Parent and Next Friend of A.W., a minor,

("**Ms. Walton**") submits this REPLY to the "**RESPONSE BY GENERAL MOTORS LLC**

**TO NO STRIKE MOTION PURSUANT TO JUDGMENT BY DOLLY WALTON**"

(docket no. 13298) filed by General Motors LLC ("**New GM**") and states to the court as

follows:

1.      In its Response, New GM asks this court to strike all claims for punitive damages

brought by Ms. Walton, regardless of whether those claims are based on conduct of Old

GM, or, based on separate conduct by New GM. However, this Court has made clear

punitive damage claims may be brought against New GM for its own conduct, as was

set forth in the Judgment:

> Except for Independent Claims and Assumed Liabilities (if any), all claims
> and/or causes of action that the Ignition Switch Plaintiffs may have against
> New GM concerning an Old GM vehicle or part seeking to impose liability
> or damages based in whole or in part on Old GM conduct (including,
> without limitation, on any successor liability theory of recovery) are

barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment.

Judgment at ¶ 9.

2.      As acknowledged by New GM, Tennessee product liability law encompasses a duty of a defendant to warn buyers of dangerous or defective conditions and recognized implied warranties. *See e.g., Flax v. Daimler Chrysler*, 272 S.W.3d 521, 542 (Tenn. 2008) *(citing, Whitehead v. Dycho Co.*, 775 S.W.2d 593, 596 (Tenn. 1989); *Trimble v. Irwin*, 59 Tenn. App. 465, 441 S.W.2d 818, 821 (Tenn. Ct. App. 1968). Ms. Walton, in her Cross-Claim has specifically alleged New GM failed to warn her of the certain ignition defects, many of the material facts of which were discovered by New GM after the closing of the bankruptcy sale. The facts supporting these allegations have been set forth in Ms. Walton's Cross-Claim against GM, which specifically details post-sale, independent conduct of New GM. For example, the Cross-Claim alleges:

> 78.      In 2009 GM declared bankruptcy and, weeks later, it emerged from bankruptcy. Both before and after GM's bankruptcy, the Key Systems in the Defective Vehicles continued to fail and GM, in all iterations, continued to conceal the truth.
>
> 79.      In 2010, GM began a formal investigation of the frontal airbag non-deployment incidents in Chevrolet Cobalts and Pontiac G5s. GM subsequently elevated the investigation to a Field Performance Evaluation ("FPE").
>
> 80.      In August 2011, GM assigned Engineer Group Manager, Brian Stoufer as the Field Performance Assessment Engineer ("FPAE") to assist with the FPE investigation.
>
> 81.      In Spring 2012, Stoufer asked Jim Federico, a high level executive and chief engineer at GM, to oversee the FPE investigation. Federico was

the "executive champion" for the investigation to help coordinate resources for the FPE investigation. Cross-Claim at ¶¶ 79-81.

The Cross-Claim continues to outline and provide details of the new knowledge gained by New GM which included specific defects of the Pontiac Grand Prix, which caused injury to April Walton. Ms. Walton specifically alleges:

> 90.    Under 49 C.F.R. ¶ 573.6, GM had a duty in 2012 to disclose the safety-related defects in its vehicles, including the Pontiac Grand Prix.

Cross-Claim at ¶ 90.

The allegations of the Cross-Claim make clear Ms. Walton claims punitive damages are warranted for the separate, independent conduct of New GM.

### PROPOSED AMENDMENT TO COMPLY WITH JUDGMENT

In an effort to achieve clarity, Ms. Walton proposes to amend Paragraph 122 (the count seeking punitive damages) of her Cross-Claim to make remove all claims for punitive damages for any conduct of Old GM and bring only those that arise from conduct of New GM. Paragraph 122  currently reads:

> 122.   GM, through its conduct in designing, testing, manufacturing, assembling, marketing, selling and failing to adequately repair the Pontiac Grand Prix, demonstrated a malicious want to care, evidencing a reckless indifference and disregard to the consequences of their actions.  GM's actions also constitute fraudulent concealment.

Cross-Claim at ¶ 122. Ms. Waton proposes to amend this paragraph to read as follows:

> 123.   GM, after the bankruptcy sale, had a duty to Ms. Walton and others to warn of defects, including the ignition switch defect of the Pontiac Grand Prix, described herein, and the failures to warn, described herein, demonstrate a malicious want to care, evidencing a reckless indifference

and disregard to the consequences of their actions.  GM's actions also constitute fraudulent concealment.

Accordingly, with this edit of Paragraph, the mandates of the Judgment will be satisfied

and Ms. Walton respectfully requests this Court lift any applicable stay on the

underlying litigation in her case.


Respectfully submitted,

HARDEE, MARTIN, DONAHOE,
  OWENS & WRIGHT, P.A.

*s/Matthew E. Wright*
Matthew E. Wright, No. 022596
*Admitted pro hac vice*
213 East Lafayette St.
Jackson, TN 38301
(731) 424-2151
mwright@hmdlaw1.com

CERTIFICATE OF SERVICE

I hereby certify that an accurate and correct copy of the foregoing was served via ECF, which serves all attorneys of record on July 29, 2015.

*s/Matthew E. Wright*
Matthew E.Wright