# Exhibit 4

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: 206-623-7292
Email: steve@hbsslaw.com

*Counsel for the People of the State of
California, acting by and through Orange
County District Attorney Tony Rackauckas and
the State of Arizona*

Mark P. Robinson, Jr. (*pro hac vice*)
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
19 Corporate Plaza Drive
Newport Beach, California 92660
Telephone: 949-720-1288
Email: mrobinson@rcrlaw.net

*Counsel for the People of the State of
California, acting by and through Orange
County District Attorney Tony Rackauckas*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                     :

| | |
|---|---|
| In re: | CHAPTER 11 |
| | Case No.: 09-50026 (REG) |
| MOTORS LIQUIDATION COMPANY, *et al.*, | |
| f/k/a/ General Motors Corp., *et al.*, | |
| | (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------------x

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | |
| Acting by and through Orange County District | |
| Attorney Tony Rackauckas, and THE STATE OF | Case No.: 15-cv-04685-JMF |
| ARIZONA, | |
| Plaintiffs, | |
| -versus- | |
| GENERAL MOTORS LLC, | |
| Defendant. | |

------------------------------------------------------------------x

## REPLY IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE WITH REGARD TO NO STRIKE PLEADINGS FILED BY THE STATES OF <u>CALIFORNIA AND ARIZONA</u>

# TABLE OF CONTENTS

<u>Page</u>

I.     INTRODUCTION ....................................................................................................1

II.    ARGUMENT .........................................................................................................3

       A.     New GM mischaracterizes the States' Complaints in claiming that they are barred by the Decision and Judgment. ..............................................3

       B.     The States had the absolute right to file the Motion and did not violate any stay by exercising this right.......................................................5

       C.     The States properly filed No Strike Pleadings and were not required to amend their Complaints in order to do so.................................................6

       D.     Good cause exists for the district court to withdraw the reference in the exercise of its discretion.....................................................................7

              1.     The Bankruptcy Court lacks final authority to adjudicate the No Strike Pleadings. ...............................................................7

              2.     Withdrawal of the reference will promote the efficient use of judicial resources and minimize cost and delay..........................9

               3.     The States are not forum shopping. ........................................10

III.    CONCLUSION...................................................................................................10

010440-13  796643 V1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Allegheny Health Educ. & Research Found.*,
  383 F.3d 169 (3d Cir. 2004) .......................................................................................9

*In re Ambac Fin. Grp., Inc.*,
  457 B.R. 299 (Bankr. S.D.N.Y. 2011) ......................................................................10

*In re Complete Mgmt., Inc.*,
  2002 WL 31163878 (S.D.N.Y. Sept. 27, 2002) .........................................................8

*In re Eveleth Mines, LLC*,
  312 B.R. 634 (Bankr. D. Minn. 2004) ........................................................................9

*In re G.M. Crocetti, Inc.*,
  2008 WL 4601278 (S.D.N.Y. Oct. 17, 2008) .............................................................9

*In re General Motors LLC Ignition Switch Litig.*,
  69 F. Supp. 3d 404 (S.D.N.Y. 2014) ..........................................................................8

*In re Millenium Seacarriers, Inc.*,
  419 F.3d 83 (2d Cir. 2005) ..........................................................................................8

*In re Millenium Seacarriers, Inc.*,
  458 F.3d 92 (2d Cir. 2006) ..........................................................................................9

*Mishkin v. Ageloff*,
  220 B.R. 784 (S.D.N.Y. 1998) ....................................................................................9

*In re Motors Liquidation Co.*,
  529 B.R. 510 (Bankr. S.D.N.Y. 2015) ........................................................................8

*In re Pan Am. Corp.*,
  163 B.R. 41 (S.D.N.Y. 1993) ......................................................................................9

*In re Residential Cap. LLC* ("*ResCap I*"),
  518 B.R. 259 (S.D.N.Y. 2014) ....................................................................................9

*In re Residential Cap. LLC* ("*ResCap II*"),
  519 B.R. 593 (S.D.N.Y. 2014) ....................................................................................8

*Schneider v. Riddick*,
  305 B.R 147 (S.D.N.Y. 2004) ...................................................................................10

010440-13  796643 V1

*Wellness Int'l Network, Ltd. v. Sharif,*
    135 S. Ct. 1932 (2015) ................................................................................5, 6, 7

## Statutes

28 U.S.C. § 157(d) ..............................................................................................5

## Other Authorities

Fed. R. Bankr. P. 5011 ........................................................................................5

Local Bankr. R. 5011-1 .......................................................................................5

010440-13  796643 V1

## I.    INTRODUCTION

New GM's opposition to the States' Motion to Withdraw the Reference with Regard to

No Strike Pleadings relies heavily on two false propositions:  one, that the Motion somehow

violates the Bankruptcy Court's June 1, 2015 Judgment,[1] and two, that the Motion improperly

asks this Court "to decide the same issues that the Bankruptcy Court has" already ruled on.[2]

Because New GM is wrong, and because the States meet the standards for discretionary

withdrawal of the reference, the States respectfully request that this Court withdraw the reference

to promote the fair and efficient resolution of the No Strike Pleadings and the underlying State

actions.

*First*, neither the Decision nor the Judgment speaks to, let alone prohibits, a motion to

withdraw the reference.  The Judgment specifically authorizes the States' filing of "No Strike

Pleadings" in order to demonstrate that their Complaints' "allegations, claims or causes of action

against New GM should not be stricken," ¶ 12(b), and provides that the States' lawsuits remain

stayed "until and unless the complaint … is judicially determined (***by this or any higher court***)

not to require amendment…."  ¶ 12(a) (emphasis added).  In other words, the States' lawsuits

remain stayed while the litigation over which claims can proceed remains pending.  New GM

cites no authority for the proposition that a bankruptcy court has the power to prevent a motion

for withdrawal of the reference on any issue that is before a bankruptcy court – and the States are

aware of no such authority.

*Second*, the States' No Strike Pleadings do not reargue issues that were already decided

in the Decision and Judgment.  Instead, as the States demonstrate in their No Strike Pleadings,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the States' *Memorandum of Law in Support of Motion to Withdraw the Reference with Regard to No Strike Pleadings* (June 15, 2015) ("States' Mem.")

[2] *See Memorandum of Law by General Motors LLC in Opposition to Motion to Withdraw the Reference with Regard to No Strike Pleadings filed by the States of California and Arizona* ("GM Opp.") at 1-2.

their Complaints are consistent with the Decision and Judgment, as they consist entirely of Independent Claims.  In a recent ruling denying a request to alter or amend the Judgment and the Decision, Judge Gerber (i) recognized that whether given claims are Independent Claims "is the subject of the various 'No Stay Pleadings'[3] … [that] will be decided by this Court (or the District Court, depending on the outcome of pending motions related to the withdrawal of the reference)" and (ii) reiterated that "things New GM did, or knowledge New GM personnel had when acting for New GM (even if those personnel acquired that knowledge while acting for Old GM) would be fair game" in litigation against New GM and "New GM would have to live with the knowledge its personnel had from the earliest days they began to serve New GM…."[4]  The claims in the States' Complaints arise solely from New GM's post-Sale Order conduct and the Complaints are therefore free to proceed under Judge Gerber's Orders.

*Third,* New GM cannot prevail on its arguments that the No Strike Pleadings are "core proceedings," and that it would be ***more*** efficient for these and related No Strike and Objection Pleadings to be heard by Judge Gerber before being appealed to this Court.  In reality, because the No Strike Pleadings do not involve debtor/creditor rights but instead call for a determination of whether the States assert Independent Claims, the No Strike Pleadings are non-core under 28 U.S.C. § 157(c)(1) and withdrawal of the reference is appropriate.  And withdrawal of the reference will promote judicial efficiency, since it will allow this Court to finally determine the merits of the States' No Strike Pleadings as well as related pleadings for which a withdrawal motion is also pending before this Court.

---

[3] "No Stay" Pleadings are essentially similar to "No Strike" Pleadings, except that they are filed by parties other than the States.  *See* Judgment, ¶¶ 8(c), 10(c).

[4] Exhibit A, *Decision and Order on Bledsoe Plaintiffs' Reargument and Other Post-Judgment Motions*, entered July 22, 2015 ("Reargument Order") at 6 n.16.

Finally, resolution of the No Strike Pleadings should not be delayed by the pendency of the appeal from the Decision and Judgment. Because the States' Complaints assert only Independent Claims, they should be free to proceed under the terms of the Sale Order, the Decision and the Judgment, and the States should not have to await the resolution of the appeal in order to proceed with their Complaints.[5]

## II.     ARGUMENT

### A.     New GM mischaracterizes the States' Complaints in claiming that they are barred by the Decision and Judgment.

A fundamental tenet of New GM's opposition to the Motion (as well as its Response to the States' No Strike Pleadings) is that the States' Complaints are barred by the Decision and Judgment and that the States are therefore impermissibly repeating arguments already made before Judge Gerber.[6] To the contrary, as set forth in the No Strike Pleadings and summarized in the States' opening brief, the States' Complaints consist solely of Independent Claims arising exclusively from New GM's post-Sale Order conduct.[7]

New GM makes three arguments as to why the States' Complaints impermissibly seek to hold New GM liable for Old GM's conduct, but each is easily refuted.

*First,* New GM suggests that the mere mention of Old GM or pre-Sale Order conduct means that the claims in the Complaints arise from Old GM's conduct.[8] But as the States have pointed out and Judge Gerber recently noted, factual allegations concerning Old GM do not

---

[5] Nonetheless, and to ensure that their rights are fully protected, the States each plan to file a Notice of Appeal from Judge Gerber's Decision and Judgment.

[6] *See* GM Opp. at 2-3, 6-8

[7] *See* States' Mem. at 5-8.

[8] GM Opp. at 6 (California); *id.* at 7 (Arizona).

necessarily run afoul of the Decision and Judgment;[9] only claims seeking to hold New GM liable based on the conduct of Old GM are precluded.

**Second,** New GM argues that the Complaints' claims must be based on Old GM's conduct since the charging allegations include standard language incorporating by reference all preceding paragraphs in the Complaints – including the references to Old GM.[10] This hyper-technical argument does not change the purpose of the factual allegations that mention Old GM. As the States have demonstrated in their No Strike Pleadings, the knowledge that New GM employees obtained while working at Old GM can be imputed to New GM – and Judge Gerber recently recognized as much when he stated that "knowledge New GM personnel had when acting for New GM (even if those personnel acquired that knowledge while acting for Old GM) would be fair game" in litigation against New GM and "New GM would have to live with the knowledge its personnel had from the earliest days they began to serve New GM…."[11]

**Third,** New GM falsely asserts that the States' claims "relate to Old GM's alleged conduct at the point of sale of the Old GM vehicles alleged in the Complaint[s]."[12] Tellingly, New GM can cite to no such paragraphs in either Complaint. In fact, neither Complaint charges New GM with misconduct in connection with any sale made prior to its existence.[13] Instead, each Complaint claims that – armed with knowledge of the ignition switch defects, a myriad of other defects and systemic safety issues plaguing New GM brand-wide – New GM concealed

---

[9] *See* Reargument Order at 6 n.16.

[10] GM Opp. at 6 (California); *id.* at 7 (Arizona).

[11] Reargument Order at 6 n.16.

[12] GM Opp. at 6 (California); *id.* at 7 (Arizona).

[13] *See* California Complaint, ¶¶ 253-74 (claim under California Business and Professions Code, §§ 17200 & 17500, *et. seq.* based solely on post-Sale Order conduct of New GM); Arizona Complaint, ¶¶ 494-511 (Claim under Arizona Consumer Fraud Act based solely on New GM's post-Sale Order conduct).

material safety issues and repeatedly made untrue and misleading statements in connection with
the sale of vehicles after the effective date of the Sale Order.[14]

    In short, New GM cannot obfuscate the simple issue raised in the States' No Strike
Pleadings – whether the Sale Order, the Decision and the Judgment provide New GM with
immunity for its post-Sale misconduct.  Because the answer is no, this Court should withdraw
the reference and rule promptly on the No Strike Pleadings so the State cases may proceed.

**B.    The States had the absolute right to file the Motion and did not violate any stay by
exercising this right.**

    New GM's argument that the Motion violates the stay of the States' actions because the
Judgment did not expressly authorize the filing of motions to withdraw the reference has no basis
in law or fact.  *See* GM Opp. at 13.  The failure to "authorize" a withdrawal motion cannot be
understood as an express prohibition on such a motion, and a cursory review of the Judgment
makes clear that nothing therein prevents motions to withdraw.  Indeed, while the Judgment
stays certain lawsuits, it also allows litigation over whether these lawsuits should be permitted to
proceed.  Moving to withdraw the reference of the No Strike Pleadings is a permissible action
related to whether the States should be permitted to proceed with the claims in their Complaints.

    This is so because, as the Supreme Court recently recognized in *Wellness*,[15] bankruptcy
courts can only hear matters on a district court's reference.  The District Court has the inherent
ability to withdraw the reference *sua sponte* and the States have the absolute right to seek
withdrawal.  *See* 28 U.S.C. § 157(d); Fed. R. Bankr. P. 5011; Local Bankr. R. 5011-1.[16]  New

---

[14] *See id.*

[15] *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

[16] In *Wellness,* the Supreme Court found that:

    Just as "[t]he 'ultimate decision' whether to invoke [a] magistrate [judge]'s assistance is made by the
    district court," … bankruptcy courts hear matters solely on a district court's reference, … which the district
    court may withdraw *sua sponte* or at the request of a party, … "[S]eparation of powers concerns are

GM fails to explain how the Judgment does, or even could, circumscribe these rights. Indeed, the Bankruptcy Court recently noted in the Reargument Order that the determination of which court will decide the No Stay Pleadings is dependent on the outcome of motions to withdraw the reference, without in any way suggesting that the motions violated the Judgment.[17]

### C. The States properly filed No Strike Pleadings and were not required to amend their Complaints in order to do so.

New GM suggests that the States' No Strike Pleadings are improper since the States (i) objected to the Sale Order before it was entered; (ii) consented to stays of their cases pending resolution of the Threshold Issues; and (iii) chose not to amend to their Complaints after the issuance of the Decision and Judgment.[18] But none of these arguments pose any bar to the States' rights to file No Strike Pleadings or to withdraw the reference on those pleadings.

The States' objections to the Sale Order are of no relevance to the issues before this Court, as they pertained almost exclusively to the Sale Order's bar on successor liability claims.[19] The States could not have anticipated that New GM would read the Sale Order to bar claims based entirely on New GM's post-Sale Order conduct, and never waived or forfeited their right to oppose New GM's position.

Contrary to New GM's assertion, in consenting to the stay of their actions pending the resolution of the Threshold Issues, the States did not consent to the Bankruptcy Court's final

---

diminished" where, as here, "the decision to invoke [a non-Article III] forum is left entirely to the parties and the power of the federal judiciary to take jurisdiction" remains in place. *Wellness,* 135 S. Ct. at 1945 (internal citations omitted).

[17] *See also* July 16, 2015 Hr'g Tr. Bankr. Case No. 09-50026 (REG) at 31:13-23; 49:19-51:10; 54:4-15 (noting that the ruling on procedural relief with respect to the Motion "is properly to be made by Judge Furman" and acknowledging that motion to withdraw the reference "calls on District Judges to make the decisions"). Relevant portions of the hearing transcript are attached hereto as Exhibit B.

[18] *See* GM Opp. at 2-3, 6.

[19] *See* Limited Objection of the States, GM Opp., Exhibit 1 at 3-5.

adjudication of the No Strike Pleadings and are fully within their rights to seek withdrawal.[20]

Again, the States believe that their Complaints contain only Independent Claims – but those

Complaints remain stayed until and unless there is a ruling by the bankruptcy court "***or any***

***higher court***" allowing them to proceed.  Judgment, ¶ 12(a) (emphasis added).

Finally, contrary to New GM's suggestion that the States were required to either amend

their Complaints or remain stayed pending the resolution of appeals of the Judgment,[21] the

Judgment explicitly the option to file No Strike Pleadings arguing that the Complaints'

"allegations, claims or cause of action against New GM should not be stricken."  Judgment

¶ 12(c).  This is precisely what the States have done.  Because the No Strike Pleadings contend

that the States' claims are Independent Claims within the meaning of the Judgment itself, it

cannot be said that the States merely "raise the same arguments" that were already considered by

the Bankruptcy Court prior to the Judgment.  GM Opp. at 2.  In fact, the No Strike Pleadings are

the first briefs filed by the States in this matter, and constitute the first time that they detailed

why all the claims in their Complaints are Independent.

**D.    Good cause exists for the district court to withdraw the reference in the exercise of its discretion.**

**1.    The Bankruptcy Court lacks final authority to adjudicate the No Strike Pleadings.**

In conclusory fashion, New GM asserts that the determination of the States' No Strike

Pleadings is core because it requires determination of whether the States' Complaints violate the

Judgment.  *See* GM Opp. at 15.  New GM confuses the playing field.  The Bankruptcy Court

already interpreted the Sale Order in its Decision and Judgment.  The No Strike Pleadings

---

[20] *See Wellness Int'l Network, Ltd.*, 135 S. Ct. at 1948 (citation omitted) ("litigant's consent – whether express or implied – must still be knowing and voluntary" and is determined by inquiring into "whether 'the litigant or counsel were made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator").

[21] GM Opp. at 2.

require an evaluation of whether the States' Complaints properly assert claims against New GM based solely on New GM's conduct.[22]  This review does not require further interpretation of the Sale Order, rely on bankruptcy law, or have any effect on the administration of the Old GM estate; thus, it is non-core.  *See* States' Mem. at 16-18.  Indeed, the Bankruptcy Court envisioned that other courts would determine whether claims against New GM were Independent Claims or "dressed up" successor liability claims.[23]

New GM argues withdrawal of the reference is improper because the Judgment and Decision "are central to a resolution of the No Strike Pleadings."  *See* GM Opp. at 17 (citing *In re Residential Cap. LLC*, 518 B.R. 259 (S.D.N.Y. 2014) ("*ResCap I*") and *In re Residential Cap. LLC*, 519 B.R. 593 (S.D.N.Y. 2014) ("*ResCap II*")).[24]  New GM again misses the mark.  Proceedings are central or unique to bankruptcy when they require the exercise of a core bankruptcy function and could not be asserted outside of the Bankruptcy Court.  *See In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005); *In re Complete Mgmt., Inc.*, 2002 WL 31163878, at *1 (S.D.N.Y. Sept. 27, 2002).  Resolution of the No Strike Pleadings does not raise any core bankruptcy issues or rely on bankruptcy law.  The cases relied on by New GM that declined to withdraw the reference all involve the determination of rights under bankruptcy law

---

[22] New GM wrongly asserts that the States' Complaints seek to hold New GM liable for Old GM's conduct. *See* GM Opp. at 6-7.  As demonstrated in the No Strike Pleading, all claims asserted in the States' Complaints are properly brought against New GM based on New GM's own, post-Sale conduct.

[23] *See In re Motors Liquidation Co*., 529 B.R. 510, 528 (Bankr. S.D.N.Y. 2015).

[24] *ResCap. II* denied withdrawal because the dispute required substantial consideration and interpretation of the terms of documents with which the bankruptcy judge had extensive familiarity, raised an issue that had previously been before the bankruptcy judge, and the proceeding could be coordinated with other actions before the Bankruptcy Court.  *See* 519 B.R. at 603.  Here, the issues raised have not been considered by the Bankruptcy Court, and the California and Arizona actions are the only two State actions concerning New GM's recent parade of recalls.  Finally, this Court is in the best position to resolve the No Strike Pleadings given its role in presiding over *In re General Motors LLC Ignition Switch Litig.*, Case No. 14-MD 2543 (JMF), the pendency of a Motion to Withdraw the Reference for proceedings concerning whether the Second Amended Consolidated Complaint in the MDL may proceed under the Decision and Judgment, and this Court's prior ruling concerning the motion to remand the California Complaint.  *See In re General Motors LLC Ignition Switch Litig.*, 69 F. Supp. 3d 404 (S.D.N.Y. 2014).

-8-

and the interpretation of sale orders, and are not akin to an evaluation of whether the States' Complaints raise solely Independent Claims.[25]

Accordingly, because this is a non-core matter, withdrawal is appropriate.[26]

### 2. Withdrawal of the reference will promote the efficient use of judicial resources and minimize cost and delay.

The Bankruptcy Court has already interpreted its Sale Order and provided extensive guidance on what claims are permitted thereunder. *See* Decision; Judgment; Reargument Order. The current issue is whether the claims in the State Complaints are truly Independent Claims and based solely on New GM's conduct. It is more efficient for the District Court to resolve this issue as it requires familiarity with the facts which underlie both the MDL action and the state law enforcement claims asserted in the State Complaints. *See, e.g.*, *In re G.M. Crocetti, Inc.*, 2008 WL 4601278, at *5-6 (S.D.N.Y. Oct. 15, 2008), as corrected (Oct. 17, 2008). Indeed, it is well-settled law that judicial economy favors withdrawal of actions that share common issues of fact or law with actions pending in District Court. *See, e.g.*, *In re Pan Am. Corp.*, 163 B.R. 41, 42-44 (S.D.N.Y. 1993).

Proceeding before the District Court in the first instance avoids duplicative work and eliminates the necessity for two courts to delve into the allegations in the State Complaints. *See ResCap I*, 518 B.R. at 266-67. Thus, judicial economy is well served here by withdrawal of the reference.

---

[25] *See* GM Opp. at 15, *citing, e.g.*, *In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 94-95 (2d Cir. 2006) (holding dispute core where proceeding required the Bankruptcy Court to interpret its Sale Order to decide which of two contracts had been assumed and assigned to purchaser); *In re Allegheny Health Educ. & Research Found.*, 383 F.3d 169, 176 (3d Cir. 2004) (holding dispute core that required resolving which obligations within a collective bargaining agreement had been assumed by purchaser); *In re Eveleth Mines, LLC*, 312 B.R. 634, 639-42 (Bankr. D. Minn. 2004) (holding dispute core that required inquiry into what constituted a "free and clear" sale of debtor's assets).

[26] Moreover, even if this action were core – which it is not – that would not end the inquiry. The Bankruptcy Court's retention of core matters does not always lead to the efficient use of judicial resources; thus, this factor is not considered dispositive. *See Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998) (noting that while the core nature of a claim "cuts against permissive withdrawal, it is not dispositive" because "the critical question is efficiency and uniformity"). As set forth below, judicial economy supports withdrawal.

### 3.    The States are not forum shopping.

New GM's claims that the States are forum shopping are inflammatory and untrue. Through the No Strike Pleadings, the States are following the procedures provided for in the Judgment to demonstrate the independence of the claims in their Complaints, not seeking a "premature, back-door appeal of the Bankruptcy Court's previous rulings."  *See* GM Opp. at 20.[27]  The States have an absolute right to file a motion to withdraw the reference as it relates to their No Strike Pleadings.  Exercising that right is neither a "back door appeal" nor "forum shopping."  In reality, the States seek the most efficient forum for the resolution of the dispute. *See* States' Mem. at 18-19.  New GM does not dispute that the District Court is an appropriate and efficient forum to resolve this dispute or that this is an appropriate basis for withdrawal. Accordingly, the Motion should be granted for this reason, and as set forth in the opening brief, all of the *Orion* factors favor withdrawal of the reference.[28]

## III.    CONCLUSION

For the reasons stated above as well as in the States' opening brief, the States respectfully request that this Court enter an Order withdrawing the reference of the States' No Strike Pleadings and granting such other and further relief as is just and proper.

---

[27] New GM's support for the proposition that the States are forum shopping is inapposite.  *See* GM Opp. at 21. In *Schneider v. Riddick*, 305 B.R 147, 151 (S.D.N.Y. 2004), plaintiffs' motion to withdraw was untimely and *In re Ambac Fin. Grp., Inc.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011), concerned the Bankruptcy Court's authority to approve a settlement.  As set forth herein, New GM's forum shopping allegation cannot be substantiated.

[28] As demonstrated in the States' opening brief, withdrawal will not interfere with the uniform interpretation of bankruptcy law or the administration of the bankruptcy estate.  *See* States' Mem. at 16-18.

Dated: July 30, 2015.

HAGENS BERMAN SOBOL SHAPIRO LLP


By:  /s/ Steve W. Berman
    Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone:  206-623-7292
Email:  steve@hbsslaw.com

Jason A. Zweig (JZ-8107)
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone: (212) 752-5455
Email:  jasonz@hbsslaw.com

*Counsel for the People of the State of California, acting
by and through Orange County District Attorney Tony
Rackauckas and the State of Arizona*

Mark P. Robinson, Jr. (*pro hac vice*)
ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.
19 Corporate Plaza Drive
Newport Beach, California 92660
Telephone: 949-720-1288
Email: mrobinson@rcrlaw.net

*Counsel for the People of the State of California, acting
by and through Orange County District Attorney Tony
Rackauckas*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2015, I caused the foregoing to be filed and served upon all parties receiving notice via the Court's ECF system.

Dated:  July 30, 2015

/s/ Steve W. Berman
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Tel.:  206-623-7292
steve@hbsslaw.com

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
In re                                  :          Chapter 11
                                       :
MOTORS LIQUIDATION COMPANY, et al.,    :          Case No.: 09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                       :          (Jointly Administered)
                     Debtors.          :
------------------------------------------------------------x
```

DECISION AND ORDER ON BLEDSOE
PLAINTIFFS' REARGUMENT AND OTHER
POST-JUDGMENT MOTIONS

APPEARANCES:

GARY PELLER
*Attorney for Bledsoe Plaintiffs*
600 New Jersey Avenue, NW
Washington, DC 20001
By:    Gary Peller, Esq.

KING & SPALDING LLP
*Counsel for General Motors LLC (New GM)*
1185 Avenue of the Americas
New York, New York 10036
By:    Arthur J. Steinberg, Esq.
       Scott I. Davidson, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

In still another filing in his efforts to go it alone in connection with litigation

arising from the announcement by General Motors LLC ("**New GM**") of the defects in its

ignition switches (the "**Ignition Switches Controversy**"), and the issuance by this Court

of two opinions in connection with that controversy[1] following the briefing by other

counsel who ably presented plaintiffs' arguments, Gary Peller Esq., this time on behalf of

---

[1]    *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015) (Gerber, J.) ("***Decision***");
*In re Motors Liquidation Co.*, 531 B.R. 354 (Bankr. S.D.N.Y. 2015) (Gerber, J.) ("***Form of
Judgment Decision***").  Familiarity with each is assumed.

the "**Bledsoe Plaintiffs**,"[2] a subset of the clients he has represented (individually and as

purported class representatives) in this case,[3] has filed many motions seeking post-

judgment relief from this Court.  He moves, with respect to the judgment this Court

entered implementing the *Decision* (the "**Judgment**") and the *Decision's* Findings of

Fact (the "**Findings**"):

> (a) to amend the Findings under Fed.R.Bankr.P. 7052;

> (b) to alter or amend the Judgment, under Fed.R.Bankr.P. 9023 (and,
> presumably, Fed.R.Civ.P. 59(e));

> (c) for relief from the Judgment, under Fed.R.Bankr.P. 9024; and

> (d) for reargument, under S.D.N.Y. Local Bankruptcy Rule 9023-1.

The motions are denied.

<u>Facts</u>

Familiarity with facts set forth in the *Decision* and the *Form of Judgment

Decision* is presumed.  The Court limits its discussion of the facts to those necessary to

address Peller's post-Judgment motions, and then only in combined factual and legal

discussion of all of his motions.

---

[2]     Sharon Bledsoe, Celestine Elliott, Lawrence Elliott, Tina Farmer, Paul Fordham, Momoh Kanu, Tynesia Mitchell, Tierra Thomas and James Tibbs.  Celestine Elliott and Lawrence Elliott were (and may still be) plaintiffs in another subset of Peller's clients, the "**Elliott Plaintiffs**," the subject of this Court's earlier opinion in *In re Motors Liquidation Co.*, 514 B.R. 377 (Bankr. S.D.N.Y. 2014) ("*Elliott*"), *leave to appeal denied*, No. 15–CV–772 (S.D.N.Y. May 18, 2015) (Furman, J.).

[3]     There is a hint in Peller's papers that all of this was merely to preserve, for the Bledsoe Plaintiffs subset of his clients, appellate rights with respect to the arguments he already made on behalf of the others.  *See* Bledsoe Br. at 7-8.  If that is so, it is not clear to the Court why he needed to file a 25 page brief to do it.

<u>Discussion</u>

*1. Motions to Amend Findings*

Peller first moves, pursuant to Fed.R.Civ.P. 52(b) (as made applicable to adversary proceedings and contested matters by Fed.R.Bankr.P. 7052 and 9014), for amendments in the Court's Findings. But he identifies no fact that the Court confused or otherwise got wrong, nor any fact that belonged in the Findings but was not included.

Rather, Peller differs with conclusions of law and on mixed questions of fact and law on matters the Court already decided. For instance, he argues that "the Court's construction of the [Sale Order[4]] is untenable, and the Court should amend its findings to construe the [Sale Order] not to encompass Independent Claims."[5] As discussed below, contentions of that character are inappropriate even on a motion for reargument. They are especially inappropriate on a request for amended findings.[6]

---

[4]    Notwithstanding the requirements of the Court's Case Management Order ("Parties are not to use acronyms in briefs to describe names of parties or agencies or expressions, unless their meaning is obvious," Case Management Order No. 3 at ¶ 28), Peller repeatedly speaks in terms of the "SOI" and "MTE." In place of those cryptic acronyms, the Court has substituted words meaningful to a reader.

[5]    Bledsoe Br. at 19. Also, of course, Peller misconstrues the Court's ruling. Of course the Sale Order encompassed Independent Claims. It did so by its express terms. But this Court ruled that although the Sale Order did so, it should not have covered genuinely Independent Claims. Not content with this, Peller seems to argue that New GM—and more importantly, the Court—should accept his *ipse dixit* contentions that the claims as he proposes to press them (including, for example, those of Sharon Bledsoe, the victim of a pre-Sale accident before New GM came into existence) are Independent Claims. Contentions of that nature will be reviewed under the "No-Stay Pleading" mechanism crafted under the Judgment to which all of the other plaintiffs' counsel are adhering. Rule 52 relief is not the appropriate means to address contentions of this type.

[6]    Though there is authority for the proposition that motions to amend findings may be used to amend conclusions of law as well as those on facts--though only those whose error is "manifest"—*see National Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990), "Rule 52(b) is not intended to allow parties to rehash old arguments already considered and rejected by the trial court." *Id.*

09-50026-reg    Doc 13335-4    Filed 07/22/15    Entered 07/22/15 18:41:33    Main Document
Pg 4 of 23

2. *Motion to Alter or Amend Judgment*

Peller likewise moves for amendment of the Court's judgment.  He argues (rearranging the arguments slightly, for purposes of analysis) that the Judgment should be amended:

> (1) to permit one of his clients, plaintiff Sharon Bledsoe—a pre-sale accident victim—to assert "Independent Claims";[7]

> (2) to exclude the Bledsoe Plaintiffs because the they did not receive the constitutionally required notice in 2009, and the "Court's construction of the [Sale Order] was not reasonably foreseeable";[8]

> (3) to exclude successor liability claims based on New GM's unlawful operation of Old GM assets;[9]

> (4) to "exclude the Bledsoe Plaintiffs' Independent Claims from its reach";[10]

> (6) to be "limited to the construction of the [Sale Order]" and that "the Motion to Enforce should be denied in all other respects,"[11] and

> (5) to deny the Motion to Enforce in its entirety.[12]

But these arguments, to the extent the Bledsoe Plaintiffs did not already win on them, repeat contentions the Court already rejected, are inappropriate for Rule 59 relief, or both.

---

[7]     Bledsoe Br. at 19.

[8]     *Id.* at 20.

[9]     *Id.* at 22.

[10]    *Id.* at 21.

[11]    *Id.* at 22.

[12]    *Id.* at 22.

-4-

The first contention is unpersuasive for both reasons.  Sharon Bledsoe, as Peller acknowledges,[13] was the victim of a pre-sale accident.  The Court is highly sympathetic to accident victims.  But she is no different than the other victims of pre-closing accidents, very ably represented by Designated Counsel for the Pre-Closing Accident Plaintiffs, whose arguments the Court fully considered but ultimately rejected.  She admittedly "asserts a 'successor liability' claim for pre-sale injury"[14]—which, for reasons explained at length in the *Decision*, could not be brought.  And Peller's efforts to characterize her claims as "Independent Claims" are spurious.  New GM did not exist at the time of her accident (as it did not at the time of the accidents involving other Pre-Closing Accident Plaintiffs), and was not responsible for the consideration of Ms. Bledsoe's claims, which were classic prepetition claims.  Thus New GM could be liable to her only under prohibited theories of successor liability or similar theories imposing liability on New GM for Old GM acts.  Peller has provided no basis for changing that conclusion now.  As one who was an accident victim before the sale, Sharon Bledsoe cannot, as the Court previously ruled, assert what are in substance successor liability claims "dressed up to look like something else."[15]

The second contention is unpersuasive as well.  The Court ruled that all of the Ignition Switch Plaintiffs failed to receive constitutionally requisite notice in the 363 Sale and claims allowance stages of Old GM's chapter 11 case, but that except for the ability to file claims against Old GM, and to assert Independent Claims, Ignition Switch Plaintiffs were not prejudiced by their lack of notice—a critical element of any claim for

---

[13]     *Id.* at 13, 21.

[14]     Bledsoe Br. at 13.

[15]     *Decision*, 529 B.R. at 528 (quoting *Burton v. Chrysler Grp., LLC* (*In re Old Carco*), 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013) (Bernstein, C.J.) ("***Old Carco***")).

relief.  And though certain plaintiffs, or their lawyers, might not have regarded the

Court's recent rulings (in favor of New GM in some respects, and in favor of Ignition

Switch Plaintiffs in others) as foreseeable, the Court's rulings, in its view, were entirely

foreseeable—at least to those who were familiar with bankruptcy law and had read the

relevant cases.  In any event, this contention raises no issues the Court has not considered

before.

The third contention, to the extent the Court can understand it (given the inherent

inconsistency between successor liability claims and those premised solely on the

acquirer's conduct), is likewise unpersuasive.  The Court considered, and rejected, the

argument that Plaintiffs—whoever they might be—could still bring successor liability

claims.  To the extent, if any, that "unlawful operation" of what were once Old GM assets

is an independent offense otherwise actionable under nonbankruptcy law—consistent

with the rulings in *Old Carco* and the *Decision* that it not be a successor liability claim

"dressed up to look like something else"[16]—the Bledsoe Plaintiffs (other than Sharon

---

[16]    *See Old Carco*, n.15 *supra*.  How that principle applies to specific allegations in specific
complaints is the subject of the various "No-Stay Pleadings," which have been and will be filed by
counsel in this case, and are not before the Court now.  They will be decided by this Court (or the
District Court, depending on the outcome of pending motions related to withdrawal of the
reference) in subsequent proceedings.

But what this Court had in mind when it previously ruled as it did should not be in doubt.  This
Court assumed that things New GM did, or knowledge New GM personnel had when acting for
New GM (even if those personnel acquired that knowledge while acting for Old GM) would be
fair game.  (For example, if such were actionable under applicable nonbankruptcy law, New GM
could still be held liable, consistent with this Court's ruling, for knowingly installing a part it
knew to be defective even if the part had been made by Old GM—just as New GM might be liable
for doing that if the part had been manufactured by another manufacturer in the Supplier Chain—
and likewise could be held liable for refusing to make a repair that New GM knew had to be made,
no matter when its personnel acquired the requisite knowledge.)  But this Court further believed
that New GM could not be held liable for anything Old GM did, and that claims for either
compensatory or punitive damages would have to be premised solely on New GM's knowledge
and conduct.  While mention (without anything materially more) of Old GM and of the 363 Sale
would be proper, and New GM would have to live with the knowledge its personnel had from the
earliest days they began to serve New GM, this Court assumed that in light of its rulings, courts
thereafter implementing them would be wary of reliance on facts ostensibly introduced as
"background" when they were in fact attempts to paint New GM with Old GM acts.

Bledsoe) can bring claims premised on that theory.[17]  But like all of the other Ignition

Switch Plaintiffs, the Bledsoe Plaintiffs cannot bring any successor liability claims.

The fourth contention—that the Judgment should be amended to exclude the

Bledsoe Plaintiffs' Independent Claims from its reach—has largely already been

addressed.  To the extent the Bledsoe Plaintiffs' claims truly are Independent Claims,

they already are carved out from the prohibitions in the Judgment.  But the Bledsoe

Plaintiffs' *assertions* that claims they wish to bring are in fact Independent Claims do not,

without New GM's agreement or a ruling by this or a higher Court, make them so.  In any

event, the Judgment needs no amendment to reflect that reality.

The fifth contention is frivolous.  New GM is entitled to not just construction of

the Sale Order but also its enforcement,[18] to the extent (which is considerable) that the

Sale Order remains enforceable.  Peller's contentions here that the Court lacks the

jurisdiction to do either are as frivolous now as they were when the Court rejected them

in *Elliott* and another decision considering Peller's many contentions,[19] *Sesay*.[20]  And

---

[17]  Thus Peller's further assertion that this Court, once having heard Designated Counsel's excessive breadth argument (with which the Court ultimately agreed), nevertheless invoked "despotic power" to insulate New GM from its own allegedly wrongful acts, Bledsoe Br. at 8–9—effecting a "startling nullification of the laws of the United States and the States"—has no relation to what the Court actually held.  Peller attacks a straw man.

[18]  *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("***Travelers***") ("[T]he only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order. The answer here is easy: as the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret *and enforce* its own prior orders.") (emphasis added); *Elliott*, 514 B.R. at 379–380 & nn.4–9.

[19]  *In re Motors Liquidation Co.*, 522 B.R. 13, 20 ("***Sesay***"), *leave to appeal denied*, No. 15–CV–776 (S.D.N.Y. May 18, 2015) (Furman, J.).

[20]  *See Elliott*, 514 B.R. at 379–380 & nn.4–9 (this Court had jurisdiction to construe and enforce the Sale Order) (quoting *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002) ("***Petrie Retail***") ("A bankruptcy court retains post-confirmation jurisdiction to interpret *and enforce* its own orders,") (emphasis added); *Sesay*, 522 B.R. at 20 ("This contention, as I held in *Elliott* (and which also is now the law of the case), is frivolous. Federal judges, including bankruptcy judges, have subject matter jurisdiction to enforce their own orders.").

New GM is not seeking a second injunction; it seeks only to enforce the injunction the

Court issued six years ago.  Peller has cited no law, nor is the Court aware of any, that

says that New GM must invoke the word "contempt" (and provide the additional

safeguards to Peller a request for contempt would impose) to enforce an earlier order.[21]

      Though he contended that the Sale Order did not properly cover the claims he

wanted to bring, Peller had notice of the Sale Order by no later than July 9, 2014, when

his co-counsel Daniel Hornal submitted Peller's letter to the Court[22]—more than two

months before when he filed *Bledsoe*, on September 19, 2014.  And when Peller

nevertheless filed *Bledsoe*, he did so notwithstanding what he knew the Sale Order to say.

Though the Court will entertain a motion for contempt if New GM wishes to bring one (a

matter as to which Peller is surprisingly cavalier), the Court will not require one as a

condition to the enforcement of the Sale Order, nor will it hold the other parties in this

case, with their respective desires to appeal and cross appeal, hostage to the completion

of proceedings for contempt.

      The sixth contention likewise is no basis for relief.  Its premise for denying the

Motion to enforce in its entirety—that the Bledsoe Plaintiffs did not receive the requisite

notice and opportunity to be heard back in 2009—was addressed at great length in the

---

[21]    Peller lays out requirements for holding him liable for contempt under the law of the Second
Circuit, *see* Bledsoe Br. at 23 n.87, but the authorities he cites do not support the proposition that
it is necessary to place him in contempt to simply enforce the Court's order.  Though contempt is
available to enforce earlier orders, "and no further remedy is necessary," *Walls v. Wells Fargo
Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002), that does not mean that motions to simply enforce
an earlier order, without seeking contempt, are impermissible.  To the contrary, Bankruptcy
Judges enforce their earlier orders, without also placing people in contempt, with great frequency.

[22]    *See* ECF #12765, amended in respects not relevant here, ECF#12766 (7/9/2014 Peller Ltr.) at 2
(contending that the complaint he wanted to file "carefully avoids violation of the Sale Order");
*accord id.* at 4-5.

*Decision.*[23]  If Peller wants the Judgment overturned in its entirety, he should seek that by

appeal.  Rule 59(e) was adopted in order to clarify that the district court has the power to

rectify its own mistakes in the period immediately following the entry of judgment,[24] and

here the Court sees none.  "A Rule 59(e) motion to alter or amend a judgment may not be

used to relitigate the same matters already determined by the court."[25]

### 3.  Motions for Relief from Judgment

Peller then makes three contentions that seem to sound in relief under Rule 60(b),

based on contentions that this Court's actions were void.  He contends that:

(a) the Court has no power to order dismissal of or to "censor" the Bledsoe

Plaintiffs' pleadings pending before an Article III Court;[26]

(b) The Bledsoe Plaintiffs cannot be bound by the Judgment because they

"were precluded from participating in the 'threshold issues'";[27] and that

(c) the Bledsoe Plaintiffs are entitled to relief from the void provisions of

the [Sale Order]."[28]

Once again, however, his arguments, to the extent the Bledsoe Plaintiffs did not already

win on them, lack merit.

---

[23]    *See* 529 B.R. at 572-73.

[24]    *See* 12 *Moore's Federal Practice – Civil* § 59.30[1].

[25]    *Id.* § 59.30[6] & n.20.

[26]    *Id.* at 23.

[27]    *Id.* at 24.  In his motion, Peller seeks that same relief as an amended finding under Rule 7052, asserting that the "record is clear" that the Bledsoe Plaintiffs had no opportunity to be heard. Bledsoe Motion at 2.

[28]    Bledsoe Br. at 25.

### (a) "Censoring" the Bledsoe Plaintiffs

The first point, apart from its theatrics, is simply contrary to the law. Bankruptcy Judges, notwithstanding their appointment under Article I, most assuredly have the power to enjoin litigants from prosecuting claims in other courts—state or federal, and in the latter case, even those that might otherwise be heard by judges appointed under Article III—when such injunctions are otherwise within Bankruptcy Judges' jurisdiction and an appropriate use of their injunctive powers.[29] (This is no different in effect, and not materially different in concept, from the operation of the automatic stay, implemented under section 362 of the Bankruptcy Code, which enjoins litigation in any forum, before any kind of judge.[30]) Peller recognizes that "[a]s the Court has stated, it unquestionably had *in rem* jurisdiction to issue the [Sale Order] under § 363."[31]

The Sale Order enjoined the prosecution of the litigation Peller commenced; the Court thereafter enforced that order, by staying his litigation;[32] and as *Travelers, Petrie*

---

[29]     *See*, *e.g Petrie Retail*, 304 F.3d at 225 (affirming three orders by Judge Gonzalez of this Court, thereafter affirmed by Judge Pauley of the District Court, enjoining a landlord from "commencing or continuing any action contingent upon the interpretation of lease provisions that were at issue in the administration of the debtors' estate"); *Adelphia Communications Corp. v. The America Channel, LLC (In re Adelphia Communications Corp.)*, 345 B.R. 69, 71 (Bankr. S.D.N.Y. 2006) (Gerber, J.) (enjoining The America Channel and its counsel from prosecuting certain of their antitrust claims in the United States District Court for the District of Minnesota), *motion for expedited appeal denied*, No. 1:06-cv-05137-BSJ (S.D.N.Y. Jul. 25, 2006) (Jones, D.J.) (denying expedited appeal, describing Bankruptcy Court's opinion below as "thorough and well-reasoned").

[30]     Peller seems to recognize this. He notes that under the automatic stay provisions of section 362, the Court acquires the power to enjoin ongoing civil proceedings, "even those in superior Article III courts." Bledsoe Br. at 9.

[31]     Bledsoe Br. at 11. Peller also concedes, in a way, that the Court "also *may* have inherent power to construe and enforce its own orders," *id.* (emphasis added), as if the Supreme Court's decision in *Travelers,* which says that the Bankruptcy Court "plainly" has that power, leaves any doubt as to that. *See* n.18, *supra*.

[32]     The Court has always believed that just as it had the power to enjoin the prosecution of litigation under the Sale Order, it had the power to order the dismissal of litigation brought in violation of it. But to the extent that proposition is debatable, the Court here does not have to decide it, because, for reasons stated in the *Form of Judgment Decision, see* 531 B.R. at 357-58, it merely stayed the offending litigation and did not dismiss it.

*Retail* and the other cases make clear, this Court had the power to do so. It does not matter that the litigation Peller brought, in violation of the Sale Order, was before an Article III judge.

Nor was Peller "censored" in any way by this Court, other than by prohibiting him from prosecuting litigation he had already been enjoined from prosecuting. Peller is not "censored" from saying anything he wants on appeal.

### (b) Asserted Inability to Be Heard

Peller's second point, asserting an inability to be heard on the Threshold Issues, is contradicted by the record in this case. The Court finds, as a fact, to the contrary. The Court never limited the opportunity to be heard on the issues before it to Designated Counsel or anyone else. All counsel for Plaintiffs whose complaints were the subject of the Motions to Enforce, including Peller, had the opportunity to file a brief and (assuming they had filed a brief) to present oral argument on the Threshold Issues.

New GM filed the Motion to Enforce on April 21, 2014. It was obvious from the outset that a very large number of Plaintiffs' lawyers would oppose it. On that same day, New GM counsel Arthur Steinberg wrote the Court seeking a conference on the management of the Motion, noting that as of that point in time, there were "currently over 50 Ignition Switches pending across the country (with new actions filed each week)," and that for the most part, the Plaintiffs in those actions were not represented by the same counsel.[33]

Also on the same day, the first of the Plaintiffs' counsel to be heard on this matter (Jonathan Flaxer, Esq., on behalf of the Groman Plaintiffs) filed an adversary complaint in

---

[33]    ECF #12622 at 2. By the time the Court issued the *Decision*, the number of affected actions had increased to about 140.

this Court seeking a declaration that his clients should not be bound by the Sale Order.
The following day, April 22, Flaxer wrote his own letter to the Court, *inter alia* agreeing
that the status conference New GM requested "would streamline the proceedings," and
also stating that "it would serve the interests of economy and efficiency to coordinate [his
complaint] with the Motion to Enforce for discovery and other scheduling purposes."[34]

Later that day—considering it obvious that coordinated management of the issues
to be determined was essential[35]—the Court issued an Endorsed Order agreeing to hold
the requested status conference, on-the-record, on May 2, 2014, and directing New GM to
send out notice of the conference.  The Court stated, *inter alia*,

> No substantive matters will be decided at the
> conference, nor will evidence be taken.  The Court
> understands the purpose of the conference to be
> determining how best to procedurally address any
> contentions parties wish to make.  The Court
> expects to then limit its consideration to matters
> such as ascertaining what must be determined,
> when, and how—*and how the positions of many
> who may have identical or similar positions may be
> presented without undue duplication and expense.*
> Matters then to be addressed will include (but not
> necessarily be limited to) establishing an
> appropriate briefing schedule and fixing a date and
> time for hearing.[36]

---

[34]   ECF #12626 at 2.

[35]   The Court had dealt with case management issues of this character before.  When Old GM's
motion for approval of the 363 Sale was heard in 2009, it engendered about 850 objections.  *See In
re General Motors Corp.*, 407 B.R. 463, 520 (Bankr. S.D.N.Y. 2009) (the "**Sale Opinion**"), *stay
pending appeal denied*, 2009 WL 2033079 (S.D.N.Y. Jul. 9, 2009), *appeal dismissed and aff'd sub
nom Campbell v. General Motors Corp.*, 428 B.R. 43 (S.D.N.Y.2010); *Parker v. General Motors
Corp.*, 430 B.R. 65 (S.D.N.Y.2010), *appeal dismissed*, No. 10–4882–bk (2d Cir. July 28, 2011)
(*per curiam*), *cert. denied*, --- U.S. ---, 132 S.Ct. 1023 (2012).  There the Court considered the
briefs of anybody who filed one, but to keep the proceedings manageable and avoid duplication,
limited oral argument to designated representatives for each kind of objection, with others being
heard orally if, but only if, they had something different to say.  The same procedure was utilized
here.

[36]   ECF #12627 (emphasis added).

On May 1, 2014, just before the upcoming May 2 conference, Edward Weisfelner,

Esq., a bankruptcy lawyer who would later become one of the Designated Counsel, wrote

the Court advising, *inter alia*, that his firm, along with two others, had been designated

by a majority of the Plaintiffs to meet with New GM to present Plaintiffs' views at the

upcoming conference.  Along with presenting substantive thoughts as to issues that

should be teed up for judicial determination and how they should be addressed,

Weisfelner stated that he and others had "worked to coordinate efforts in the spirit of

Your Honor's April 22, 2014 scheduling order and case management orders in this

case."[37]

The Court then held the first conference in this matter on that May 2 date,

focusing on its desire, to avoid the chaos that otherwise would result, to hear from many

affected parties in a coordinated way, with skilled bankruptcy litigators making the

arguments for Plaintiffs in the first instance, with others having the right to supplement

them.  But while believing that the Plaintiffs' lead arguments should be presented by a

small number of counsel with bankruptcy litigation expertise, the Court emphasized its

intent that any nonrepetitive points would still be heard:

> I don't want repetition, and that includes making the
> same point in different ways.  I need to hear from
> anybody who thinks those three firms [three of the
> four who emerged as Designated Counsel] aren't
> good enough [to say] why that's so, or conversely
> why they're not raising issues that need to be
> addressed.  *That's not to say that anybody who
> thinks up anything those firms couldn't can't be
> heard,* but I need to know why and what's the
> problem.[38]

---

[37]     ECF #12677 at 3.

[38]     May 2, 2014 Conf. Tr. (No. 1:14-AP-1929, ECF #16), at 13:1-13:8 (emphasis added).

By the end of the May 2, 2014 Conference, the Court scheduled a follow-up
conference for July 2, and issued a number of directives for matters to be accomplished
before that time, to be thereafter implemented in a written scheduling order.  The Court
directed those who had been heard at the May 2, 2014 Conference to meet and confer and
thereafter present an agreed-on order to embody the matters on which the Court had
ruled, along with further details.

Those lawyers did so.  But while the Court largely agreed with the proposed form
of order they had submitted, the Court added several paragraphs (shown by blackline) to
underscore its desire to ensure that other voices could be heard.  One such paragraph
expressly confirmed the Court's willingness to allow others to be heard, so long as they
did so in a nonrepetitive way.  The resulting order (the "**May 2014 Procedures Order**")
was ultimately entered on May 16, 2014.  The paragraphs the Court added provided, in
relevant part:

> [T]o the extent reasonably practicable, Designated
> Counsel shall consult and coordinate with other
> bankruptcy counsel who have filed a notice of
> appearance on behalf of any Plaintiff(s) in
> connection with the matters set forth in paragraphs
> 2, 3 and 6 above.
>
> *[N]othing in this Order is intended to or shall
> preclude any other Plaintiff's counsel from taking a
> position in connection with any of the matters set
> forth in paragraphs 2, 3 and 6 above,* PROVIDED
> that any other counsel who wishes to be heard
> *orally* with respect to such position at the
> Conference on July 2 shall submit and
> electronically file, no later than noon on July 1, a
> letter to the Court (with copies to all Identified
> Parties) summarizing the points he or she will wish
> to make; and PROVIDED FURTHER that any

-14-

counsel who has failed to do so will not be heard
*orally* at the July 2 Conference.[39]

By the time of the July 2 conference, there were 87 actions (about 83 of which were class actions) pending against New GM, most of which were consolidated for pretrial proceedings before Judge Furman in the MDL.  According to a letter he sent to the Court on July 9,[40] Peller was retained by the first of his clients (Celestine and Lawrence Elliott, who had initially filed a *pro se* complaint in the District of Columbia) on June 17.   Peller's co-counsel Daniel Hornal was heard at length, on behalf of the Elliotts, at the July 2 Conference,[41] seeking relief from a No-Stay Stipulation the Elliotts had entered before they had counsel.[42]

By email dated June 30, 2014, Peller's co-counsel Hornal (copying Peller) submitted the first of many emails, letters, motions, briefs, and other filings in this Court, all of which (except for notices of appeal and motions for leave to appeal) were considered by the Court.  Peller personally submitted his first on July 3, 2014, cosigning a letter with his co-counsel Hornal at that time.[43]  All in all, Peller and Hornal made more than 20 substantive filings (not counting notices of appeal and motions for leave to

---

[39]   May 2014 Scheduling Order at 6 (emphasis added).  The identified paragraphs were matters as to which parties were to meet and confer, or otherwise accomplish specified tasks, in advance of the next conference on July 2.  This order, like other Court directives that preceded and followed it, exemplifies the distinction between counsel's ability to argue orally, on the one hand, and to file briefs and be heard by letter, on the other.

[40]   ECF #12763.

[41]   *See* July 2, 2014 Conf. Tr. (ECF #13001) at 7, 98-114.

[42]   The Court then learned that Hornal and Peller wanted to convert the Elliotts' *pro se* complaint into not just a more intelligible one but also a class action.  *See id.* at 104.  Hornal also admitted that "we are soliciting clients for other cases." *Id.* at 107.  The Court granted Hornal's request for relief from the stipulation to permit the filing of an amended complaint to cure the Elliotts' pro se deficiencies, but for them alone.  The Elliott action was thereafter followed by the *Sesay* and *Bledsoe* actions, each a class action.

[43]   ECF #12761.  Peller's first solo submission was on July 9.  *See* ECF ##12765, 12766.

09-50026-reg    Doc 13385-1    Filed 02/02/15    Entered 02/27/14 15:33:42    Main Document
Pg 41 of 73

appeal),[44] all of which, no matter how frivolous, were considered by the Court; seven of

which resulted in substantive[45] orders of the Court;[46] and three of which were addressed

in full written opinions (or parts of larger opinions) by the Court.[47]

---

[44]  ECF #12737 (Hornal 6/30/2014 email and Endorsed Order on it re Elliott Plaintiffs); ECF #12761 (7/3/2014 Ltr. from Peller and Hornal on behalf of Elliott Plaintiffs seeking reconsideration of rulings at 7/2/2014 hearing); ECF ##12765, 12766 (7/9/2014 Ltr. by Peller on behalf of Elliott Plaintiffs seeking vacatur or suspension of Court's 7/8/2014 order); ECF #12769 (7/11/2014 Ltr. by Hornal on behalf of Elliott Plaintiffs to correct assertedly erroneous statements by New GM's counsel); ECF #12772 (7/11/2014 No-Stay Pleading and Motion and Brief Seeking Dismissal signed by Hornal on behalf of Elliott Plaintiffs);

Also, ECF #12773 (7/12/2014 Declaration by Peller and other documents re Motion Seeking Dismissal on behalf of Elliott Plaintiffs); ECF #12774 (7/12/2014 Corrected No Stay Pleading and Motion and Brief Seeking Dismissal signed by Hornal on behalf of Elliott Plaintiffs); ECF #12775 (7/14/2014 Notice of Appeal on behalf of Elliott Plaintiffs signed by Hornal from orders of 6/30/2014, 7/8/2014, and 7/11/2014); ECF #12777 (7/18/2014 Notice signed by Hornal of 7/16/2014 order in District of Columbia with respect to the Elliott Plaintiffs); ECF #12778 (7/18/2014 Notice of Withdrawal of Appeal signed by Hornal on behalf of Elliott Plaintiffs);

Also, ECF #12783 (7/23/2014 Ltr. by Peller on behalf of Elliott Plaintiffs asking that his 7/12/2014 motion (ECF #12773) be treated as submitted and granted forthwith); ECF #12784 (7/23/2014 Exhs. to Peller 7/23/2014 Ltr., including 7/21/2014 Peller email, all on behalf of Elliott Plaintiffs); ECF #12787 (7/28/2014 Ltr. by Peller, on behalf of Elliott Plaintiffs, re subject matter jurisdiction points on their Motion to Dismiss); ECF #12788 (7/28/2014 Corrected Ltr. by Peller, on behalf of Elliott Plaintiffs, re subject matter jurisdiction points on their Motion to Dismiss); ECF #12821 (8/8/2014 Ltr. by Peller, on behalf of Sesay Plaintiffs, re subject matter jurisdiction points as to their planned motion to dismiss);

Also, ECF #12830 (8/12/2014 Ltr. by Peller, on behalf of Sesay Plaintiffs, re their pending motions); ECF #12822 (8/8/2014 Notice of Settlement, on behalf of Elliott Plaintiffs, re their counter-order); ECF #12828 (8/12/2014 Supplemental Notice of Settlement of Counter-Order filed by Peller on behalf of Elliott Plaintiffs); ECF #12839 (8/13/2014 Notice of Appeal filed by Peller on behalf of Elliott Plaintiffs); ECF #12870 (8/22/2014 Corrected No-Stay Pleading and Motion Seeking Dismissal and Abstention signed by Peller on behalf of Sesay Plaintiffs);

Also, ECF #12871 (8/25/2014 Motion and Brief Seeking Amendment of Judgment filed by Peller on behalf of Elliott Plaintiffs); ECF #12872 (8/25/2014 Motion and Brief Seeking Abstention filed by Peller on behalf of Elliott Plaintiffs); ECF #12883 (9/5/2014 Amended No-Stay Pleading, Motion and Brief Seeking Dismissal and Abstention filed by Peller on behalf of Sesay Plaintiffs); ECF #12948 (10/13/2014 Brief on No-Stay Pleading filed by Peller on behalf of Bledsoe Plaintiffs); ECF #13002 (11/21/2014 Renewed Notice of Appeal filed by Peller on behalf of Elliott Plaintiffs);

Also, ECF #13004 (11/24/2014 Notice of Appeal by Peller on behalf of Sesay Plaintiffs); ECF #13005 (11/24/2014 Motion for Leave to Appeal filed by Peller on behalf of Elliott Plaintiffs); and ECF #13007 (11/24/2014 Motion for Leave to Appeal filed by Peller on behalf of Sesay Plaintiffs).

[45]  Not counting, *e.g.*, orders approving stipulations, granting extensions of time, and granting admission to the Court *pro hac vice*.

[46]  *See* ECF #12792 (re request to "grant forthwith" motion, on behalf of the Elliott Plaintiffs, to dismiss New GM Motion to Enforce for lack of subject matter jurisdiction); ECF #12834 (re Elliott Plaintiffs' No-Stay Pleading); ECF #12835 (re various Sesay Plaintiffs' requests); ECF

Following the Court's conference of July 2, 2014, it issued another scheduling

order (the "**July 11 Order**"),[48] implementing the July 2 conference's rulings.  The

Court's order was entered on July 11, 2014 (not on July 7, as Peller asserts[49]), but more

importantly the July 11 Order (which Peller does not quote) did not "restrict[]

participation in the proceedings to 'counsel for the Identified Parties,'" as Peller likewise

asserts.  In fact, while it is plain that the Court contemplated receiving briefs from most

or all of the Identified Parties (Designated Counsel, Flaxer, the GUC Trust, Unitholders,

and New GM), and set the dates by which each of their briefs were due, that is as far as it

went.  As nobody had requested that the July 11 Order address the issue, it was wholly

silent on whether others could file briefs as well.  It certainly did not prohibit Peller (or

anyone else) from doing so.

After a conference on August 18, 2014, dates for the submission of briefs on the

Motion to Enforce were pushed back, principally to take into account the Plaintiffs' filing

of an amended complaint in the MDL.[50]  At that conference, after the most active players

had spoken (principally about the Threshold Issues to be decided, and when briefs should

be due), the Court asked those in the Courtroom, "[o]thers want to be heard?"[51]  One

attorney spoke up, but not on whether he or others could file briefs.  After his issues were

---

#12836 (on Elliott Plaintiffs' Supplemental Notice of Settlement); ECF #12991 (re Bledsoe
Plaintiffs' No-Stay Pleading); ECF #12993 (re Elliott Plaintiffs' request for reargument); ECF
#12995 (re Sesay Plaintiffs' No-Stay Pleading).

[47]    *See* ECF #12815 (*Elliott*); #12989 (*Sesay*); #13162 (*Form of Judgment Decision*).  The Court also
issued a fourth decision on matters raised by Peller, denying, by Endorsed Order ("**Bledsoe
Endorsed Order**"), similar arguments he made on behalf of the Bledsoe Plaintiffs, citing, *inter
alia*, the Court's earlier rulings in *Elliott* and *Sesay*.  *See* ECF #12991.

[48]    *See* ECF #12770.

[49]    Bledsoe Br. at 6.

[50]    *See* Tr. of Hrg. of 8/18/2014, ECF #12899.

[51]    *Id.* at 73:25.

-17-

addressed, the Court then asked, "[a]nything else?"  This time, nobody spoke, on whether

others could file briefs or otherwise.[52]

On August 21, 2014, New GM counsel Arthur Steinberg wrote the Court,

advising that counsel for the Identified Parties had met and conferred on an appropriate

briefing schedule, and proposed specified modifications to the briefing schedule.[53]

Steinberg stated, *inter alia*, that:

> As previously agreed, Designated Counsel, to the
> extent reasonably practicable, shall consult and
> coordinate with other counsel who have filed a
> notice of appearance on behalf of any Plaintiff(s)
> and solicit input and/or comments to Designated
> Counsel's proposed response to the New GM
> Opening Brief and proposed response to the
> Unitholder/GUC Trust Opening Brief (including
> providing counsel drafts of Designated Counsel's
> briefs no less than ten days prior their submission
> deadline as set forth above).

But neither Steinberg nor the others asked that the Court prohibit other counsel be from

filing briefs on their own, and the Court, which on August 22  issued an Endorsed Order

on Steinberg's letter, simply saying "Approved,"[54] never issued such a prohibition.

Under the revised schedule, briefs in opposition to the Motion to Enforce were

due on December 16, 2014, by which time Peller had made nearly two dozen filings on

behalf of each of his three client groups.  Opposing briefs were filed on or before that

date by the GUC Trust and Unit Holders, Designated Counsel for the Ignition Switch

Plaintiffs, Designated Counsel for the Pre-Closing Accident Plaintiffs, and one additional

---

[52]     *Id.* at 90:22.

[53]     ECF #12867.

[54]     ECF #12869.

counsel, Flaxer, for the Groman Plaintiffs.[55]  Peller did not submit a brief on the

Threshold Issues, on behalf of any of his client groups, timely or otherwise.  Nor did he

ask the Court if he could.

On January 13, 2015, with oral argument on the Threshold Issues coming up, the

Court entered an "Administrative Order re Oral Argument and Related Matters" (the

"**Oral Argument Administrative Order**").[56]  After requiring New GM, Designated

Counsel and GUC Trust counsel to confer and submit a joint recommendation to the

Court on a sequence for oral argument and time allocations for each constituency, the

Court's order provided, *inter alia*:

> Counsel other than New GM counsel, Designated
> Counsel and GUC Trust counsel are to consult with
> counsel for the entity most aligned with their
> interests to ascertain whether their oral argument
> needs can be satisfied by counsel for the most
> closely aligned entity.  If, after such consultation,
> any other party wishes oral argument, the party will
> be heard orally only if (a) that party has filed a brief
> (other than an unqualified joinder) and (b) writes
> the Court, no later than noon on Tuesday, January
> 27, (i) requesting time for oral argument; (ii) stating
> the amount of time requested; and, most
> importantly, (iii) stating the reasons why argument
> by one of the most closely aligned counsel would be
> insufficient—it being remembered that the Court
> will have read all briefs.[57]

Only Flaxer (on behalf of the Groman Plaintiffs) made a request to be heard

orally.  His request was granted.  Peller had not filed a brief, and under the Oral

Argument Administrative Order, he thus was not entitled to ask for oral argument.  But in

any event, he did not then ask to be heard orally either.

---

[55]    *See* ECF ##13021, 13025, 13028, 13030.

[56]    ECF #13044.

[57]    Oral Argument Administrative Order at ¶ 3.

-19-

The fact that Peller ultimately decided not to file a brief, or request oral argument in connection with the hearing on the Four Threshold Issues (on behalf of any of his clients, the Elliott Plaintiffs, the Sesay Plaintiffs, or the Bledsoe Plaintiffs), was his choice to make.  But that does not mean that he was denied the chance to be heard.

In the *Form of Judgment Decision*, the Court considered Peller's contention, on behalf of his various clients, that they should not be bound by the Judgment.  The Court rejected it:

> He [Peller] further argues, on behalf of the Peller Plaintiffs, that the Court's rulings in the Decision are not binding on them. The Court disagrees.  The Peller Plaintiffs had more than ample opportunity to raise contentions Designated Counsel did not raise. And though Mr. Peller's filings were so numerous and frivolous that the Court warned him of the entry of a *Martin–Trigona* order, he still had the right under the Court's orders establishing the mechanisms for determination of the Motion to Enforce, to make any points others had not.[58]

For that matter, Peller even had the ability to make any points others *had* made, so long as he did so in writing.  But he chose to put his energy into a variety of frivolous points, addressed in *Elliott*, *Sesay*, and the *Bledsoe* Endorsed Order,[59] rather than the Threshold Issues.  Based on the Court's now very extensive knowledge of the issues it addressed in the *Decision*, the Court cannot see any points that one or another of Designated Counsel, Flaxer, or the GUC Trust failed to make.  But if Peller thought there were such (, he could have raised them.

---

[58]     531 B.R. at 357.

[59]     *See* n.47 *supra*.

*(c) Asserted Voidness of the Sale Order*

The third point (contending that the Court lacked the subject matter jurisdiction to issue the Judgment enforcing the Sale Order; that the Court enforced the Sale Order against the Bledsoe Plaintiffs in violation of their due process rights; and that the Bledsoe Plaintiffs were denied the opportunity to participate on the threshold issues) merely rehashes points Peller made before, in *Elliott*, *Sesay*, and here.  It is rejected for the reasons previously stated.

*4.  Motions for Reargument*

Finally, in reliance on S.D.N.Y. Local Bankruptcy Rule 9023-1, Peller seeks "reargument regarding whether the Bledsoe Plaintiffs may be bound by the [Sale Order] consistent with the Due Process Clause, and an amendment of the Judgment to exempt each of their independent, non-derivative claims from its reach."[60]  He also contends that the Court committed "manifest error" by not understanding the difference between *in rem* and *in personam* jurisdiction.  Reargument too is denied.

To be entitled to reargument, the moving party "must demonstrate that the court overlooked controlling decisions or factual matters 'that might materially have influenced its earlier decision.'"[61]  "The rule permitting reargument must be narrowly construed to avoid repetitive arguments on issues that the court has already fully considered."[62]

The first half of the first contention—that the Bledsoe Plaintiffs could not be bound by the Sale Order—was extensively addressed in the *Decision*.  Peller has brought

---

[60]     Bledsoe Motion at 2.

[61]     *In re Stylesite Marketing, Inc.*, 2001 WL 13212, at *1 (Bankr. S.D.N.Y. 2001) (Bernstein, C.J.) (quoting *Anglo–American Ins. Group, P.L.C. v. Calfed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996)).

[62]     *Id.*

forward no points that the Court then overlooked.  The second half of the first

contention—that the Court needs "to exempt each of [the Bledsoe Plaintiffs']

independent, non-derivative claims from [the Judgment's reach]" has been addressed

above.[63]  The Bledsoe Plaintiffs' Independent Claims, like all other Plaintiffs', *already*

*are* exempt from a continuing bar under the Judgment—to the extent they genuinely are

Independent Claims.  But a motion for reargument is not the means to test whether they

are.

      Finally, Peller's perception that the Court fails to understand the difference

between *in rem* and *in personam* jurisdiction, aside from being incorrect in its premise, is

of no moment.  He devotes a full 10 pages of his brief to discussion of the distinction

between *in rem* and *in personam* claims.  But the reason for that lengthy discussion is

unclear.  If it is to argue that successor liability claims can still be asserted,

notwithstanding the Court's extensive analysis and conclusions to the contrary,[64] that is

not a matter the Court overlooked; it is a matter for appeal.  If, as seems to be the case, it

is to suggest that genuinely Independent Claims can still be asserted, he already has won

on that, so long as he limits his future claims to genuinely Independent Claims.  Here too,

there is no basis for reargument or reconsideration.

      The Court will not lengthen this decision further by specifically addressing more

of Peller's remarks in these motions. The Court has canvassed the submission in its

entirety and satisfied itself that no material points other than those it has specifically

addressed were raised and have any merit.

---

[63]    *See*, *e.g.*, page 7 above.

[64]    *See Decision*, 529 B.R. at 566-68.

The motions are denied.


SO ORDERED.


Dated: New York, New York          __*s/Robert E. Gerber*_____
      July 22, 2015                     United States Bankruptcy Judge

# Exhibit B

Page 1

```
 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    Case No. 09-50026-LAS

 4    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 5    In the Matter of:

 6    MOTORS LIQUIDATION COMPANY

 7                Debtor.

 8    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 9                          United States Bankruptcy Court

10                          One Bowling Green

11                          New York, New York  10004-1408

12

13                          July 16, 2015

14                          9:48 AM

15

16

17

18

19

20

21

22    B E F O R E:

23    HONORABLE ROBERT E. GERBER

24    U.S. BANKRUPTCY JUDGE

25    ECRO:  K. HARRIS
```

Page 2

```
 1    Hearing Re:  No Stay Pleading

 2

 3    Hearing Re:  Motion to Strike Certain Documents Contained in

 4    Appellants' Designation of Items to be Included in the Record

 5    on Appeal

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Theresa Pullan
```

09-50026-mg   Doc 13285-4   Filed 07/31/15   Entered 07/31/15 16:32:32   Exhibit 4
Case 1:15-cv-04855-JMF   Document 7-2   Filed 07/30/15   Page 4 of 5
Pg 45 of 50

Page 31

```
 1   otherwise, the settlement that we're working on would resolve

 2   the issue once and for all.  So I'll let the GUC Trust counsel

 3   address it, but again what we're looking for is merely a

 4   stipulation that this Court would approve that would extend the

 5   time for the GUC Trust holders to respond to our motion to

 6   withdraw the reference and on the merits with regard to the GUC

 7   Trust.  And on the merits with regard to the GUC Trust

 8   pleadings, it would be our intention and we'll obviously

 9   document all this in a proposed stipulation to present to the

10   Court, but since the deadlines are coming up so quickly, wanted

11   Your Honor to be generally aware of what's developing between

12   us and the GUC Trust.

13            THE COURT:  Mr. Weisfelner, that's a common sense

14   approach variance of which of has been a zillion times in this

15   Court.  I have only a technical question which is the one that

16   you may have thought about already which is that on a motion of

17   this character we have a shift over from my jurisdiction to

18   Jesse Furman's (phonetic) and the rules are pretty plain that

19   your first finding is done in this Court, which is I guess why

20   you came to me.  But I would have thought that further findings

21   would be before Jesse Furman and in essence I'm tolling the

22   deadline before him.  Do we need Jesse Furman's okay on this as

23   well?

24            MR. WEISFELNER:  I think we do and it would be the

25   parties' intention to likewise present to Judge Furman a
```

Case 1:15-cv-04855-JMF    Document 7-2    Filed 07/30/15    Page 3 of 5

1    whatever omnibus pleading they filed, is the issue about

2    whether the New GM can argue that what they filed in the, on

3    the second amended complaint violated Your Honor's judgment

4    then focus on that aspect of it, then we can file our response

5    and do that as well too.

6         So Mr. Martorana says we're mixing apples and oranges

7    because he's essentially arguing a bifurcation which he says

8    exists based on the names of the pleadings, and if that's the

9    case then that's fine.  And I don't care, I just don't want to

10   be in a position where I have to file a pleading on the 20th

11   which we're prepared to do.

12        And for Your Honor with regard to the second amended

13   complaint and I don't know whether the GUC Trust aspect is part

14   of the thing that I have to respond to or not, as of this

15   moment I still think I have to, if they are bifurcating it, if

16   they are excluding it for me as well as them I don't have to

17   consider it, either they withdraw it or bifurcate it, then

18   that's okay.

19        THE COURT:  All right.  Folks, it seems to me that

20   although I would have been offended if requests had been made

21   of this character to Judge Furman without bringing it to my

22   attention first, ultimately the decision is properly to be made

23   by Judge Furman.  To the extent that the GUC Trust and the

24   plaintiffs are asking me to say to Judge Furman that to the

25   extent if any to which I have the right to be heard on this,

1    I'm authorizing you to say that if it's okay with him it's okay

2    with me.  The second and more important issue is how any

3    standstill between the plaintiffs on the one hand and the GUC

4    Trust on the other or any deal that might thereafter be made

5    could adversely affect New GM presents a slightly harder issue

6    or perhaps a materially  harder issue.  But it is again one in

7    which I think I can and should cede whatever residual

8    jurisdiction I have over that over to Judge Furman, although

9    frankly I think it's solely a Judge Furman issue.  He may

10   conclude that he needs to know with greater clarity what the

11   GUC Trust and the plaintiffs propose to agree on matters that

12   might affect New GM or he might conclude what is before him

13   doesn't require him to know that.  That's a decision that is

14   appropriately to be decided by him without me stepping on his

15   toes.

16            Related to that is a first cousin of that which is

17   whether New GM would be impaired in its ability to address

18   these matters by not knowing yet what the deal might be with

19   respect to the plaintiffs on the one hand and the GUC Trust on

20   the other or a variant of that knowing a broad outline what the

21   concept might be, but where the devil might be in the details.

22   Ultimately by reason of the withdraw of the reference structure

23   which requires that motions for withdraw of the reference be

24   filed in the first instance by the Bankruptcy Court when then

25   calls on District Judges to make the decisions.  And by reason

Case 1:15-cv-04855-JMF    Document 7    Filed 07/30/15    Page 2 of 5

Page 51

```
 1    of that provisions in I think it's rule 9055 that says that on

 2    motions to withdraw the reference proceedings in the court

 3    below which is of course the Bankruptcy Court are not stayed in

 4    the absence of the contrary order.  And I'm not of a mind at

 5    this point if ever to issue a contrary order on matters that

 6    are before Jesse Furman as a matter of judicial courtesy, and a

 7    comity with a T, tango.  I think I should let Jesse Furman deal

 8    with that issue as well, what I'll call the fairness issue to

 9    New GM, assuming arguendo that I have the ability to tell Jesse

10    Furman what to do in that regard.  To the extent I have that

11    power, I decline to exercise it.

12            So the bottom line is that I'm in substance allowing

13    you all to say that if it's okay with Jesse Furman, it's okay

14    with me.  I assume he will consider issues of fairness to New

15    GM in terms of when New GM's response should be done if it

16    can't be consensually addressed, and if he thinks an adjustment

17    should be made that of course is also fine with me.

18    Conversely, if he decides that the existing schedule is

19    sufficient, that is also fine with me.

20            I gather from what Mr. Weisfelner said that I will

21    have at least initially before me not just New GM's motion to

22    block the plaintiffs from trying to withdraw the reference, but

23    some motion of some type to the plaintiffs to block New GM's

24    attempt to block that.  And I gather from the way both you guys

25    are talking that there's no consensual resolution of that
```

1    wasn't sure whether you were actually saying that he should

2    decide the pleading of the time limit to, that is before you at

3    this point in time.

4         THE COURT:  I didn't understand myself to be saying

5    that because I was not then sensitive to the fact there were

6    two separate deadlines imposed upon the GUC Trust.  I think I

7    need a little more discussion on this, but I want you to talk

8    about the tentative which would be to toll the GUC Trust time

9    for both until Jesse Furman has decided what he wants to do on

10   the motion to withdraw the reference without prejudice to my

11   ability to decide what I need to do on mine after he's had a

12   chance to think about it in terms of what goes on in his court.

13   I don't want to step on his toes by issuing a substantive

14   ruling on something that is primarily before him in the first

15   instance.

16        MR. STEINBERG:  Right.  And I think what I was saying

17   in my prior presentation to Your Honor which is that if what's

18   before you now with regard to the GUC Trust is withdrawn then I

19   have no issue with that.  If they want to give them an

20   adjournment then I think they really have to bifurcate the

21   issue because I don't want to be responding to that GUC Trust

22   issue while they're not responding to that issue, and Your

23   Honor won't have a complete record when this thing is argued.

24        THE COURT:  My tentative, and I'm going to give both

25   Mr. Weisfelner and Mr. Martorana a chance to comment on this

Page 62

1                          CERTIFICATION

2              I, Theresa Pullan, certify that the foregoing is a

3      correct transcript from the official electronic sound recording

4      of the proceedings in the above-entitled matter.

5      Theresa Pullan    Digitally signed by Theresa Pullan
                         DN: cn=Theresa Pullan, o, ou,
                         email=digital1@veritext.com, c=US
                         Date: 2015.07.17 14:19:29 -04'00'

6      AAERT Certified Electronic Transcriber CET**00650

7      Theresa Pullan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22     Veritext Legal Solutions

23     330 Old Country Road

24     Suite 300

25     Mineola, NY  11501