# Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | | |
|---|---|---|
| BENJAMIN W. PILLARS, | § | |
| as Personal Representative of the | § | |
| Estate of KATHLEEN ANN | § | Case No. 1:15-cv-11360 |
| PILLARS, deceased, | § | |
| | § | Hon. Thomas L. Ludington |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| GENERAL MOTORS LLC, | § | |
| | § | |
| Defendant. | | |

## GENERAL MOTORS LLC'S FIRST AMENDED ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Defendant General Motors LLC ("GM LLC"), by and through its attorneys, files this First Amended Answer to Plaintiff's Amended Complaint, and would show as follows:

## RESPONSE TO COMMON ALLEGATIONS

1.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 1 of the Amended Complaint, and therefore denies same.

2.    GM LLC admits that it is a limited liability company organized under the laws of Delaware with its principal place of business in Michigan. GM LLC does not contest this Court's exercise of personal jurisdiction over

it.   GM LLC denies the remaining allegations in Paragraph 2 of the Amended Complaint.

3.   GM LLC denies the allegations in Paragraph 3 of the Amended Complaint.

4.   GM LLC admits that according to the State of Michigan Traffic Crash Report (the "crash report"), Kathleen Ann Pillars ("Decedent") was driving a 2004 Pontiac Grand Am in Arenac County, Michigan on November 23, 2005 and was involved in an automobile accident.

GM LLC admits that it submitted to NHTSA the following information in a letter dated July 3, 2014, pursuant to 49 C.F.R. § 573.6, and subsequently amended the letter on July 16, 2014, pertaining to the recall of approximately 6,729,742 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, 1999-2005 MY Pontiac Grand Am and 2004-2008 MY Pontiac Grand Prix vehicles ("NHTSA Recall No. 14V400"). The July 16, 2014 letter provides as follows ("Recall Condition"):

> 573.6(c)(5):  General Motors has decided that a defect which relates to motor vehicle safety exists in 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, 1999-2005 MY Pontiac Grand Am, and 2004-2008 MY Pontiac Grand Prix vehicles.  If the key ring is carrying added weight and the vehicle goes off road or experiences

2

> some other jarring event, it may unintentionally move the key away from the "run" position. If this occurs, engine power, power steering and power braking may be affected, increasing the risk of a crash. The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.
>
> Until the recall has been performed, it is <u>very</u> important that customers remove all items from their key ring, leaving only the vehicle key. The key fob (if applicable), should also be removed from the key ring.

GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 4 of the Amended Complaint.

5.     GM LLC is without sufficient information to admit or deny the allegations in Paragraph 5 of the Amended Complaint, and therefore denies same.

6.     GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 6 of the Amended Complaint.

7.     GM LLC incorporates by reference its admissions and

3

averments as provided in Paragraph 4 above.  GM LLC admits that the crash report provides as follows:

> Driver veh 2 going straight.  Witness states veh #1 [Pontiac Grand Am] turned out from drive, loss control and had collision w/#2.

GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 7 of the Amended Complaint, and therefore denies same.

8.   GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 8 of the Amended Complaint, and therefore denies same.

9.   GM LLC admits the subject 2004 Pontiac Grand Am was equipped with a front driver and passenger airbag system, as well as a 3-point lap and shoulder belt, continuous loop design that incorporates a free-falling latch plate in those seating positions.  GM LLC further admits the

4

subject 2004 Pontiac Grand Am was equipped with a Sensing and Diagnostic Module ("SDM").  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 9 of the Amended Complaint, and therefore denies same.

10.  GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 10 of the Amended Complaint.

11.  GM LLC is without sufficient information to admit or deny the allegations in Paragraph 11 of the Amended Complaint, and therefore denies same.

12.  GM LLC is without sufficient information to admit or deny the allegations in Paragraph 12 of the Amended Complaint, and therefore denies same.

13.  GM LLC admits that Plaintiff purports to allege an amount in controversy within the jurisdiction of this Court and that Plaintiff seeks recovery in excess of $25,000.  GM LLC denies the remaining allegations in Paragraph 13 of the Amended Complaint.

14.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 14 of the Amended Complaint, and therefore denies same.

15.    GM LLC admits in September 2014, it sent a letter to vehicle owners advising of NHTSA Recall No. 14V400.  GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 15 of the Amended Complaint, and therefore denies same.

## COUNT I

16.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

17.    GM LLC admits that prior to July 10, 2009, General Motors Corporation (not GM LLC) design in part, manufactured in part, assembled into final form, marketed and distributed various motor vehicles, including the 2004 Pontiac Grand Am, to independent authorized dealers.

GM LLC admits that General Motors Corporation underwent bankruptcy in 2009.  GM LLC admits that the United States Bankruptcy Court for the Southern District of New York issued the Sale Order and Injunction approving the sale of substantially all of Motors Liquidation Company f/k/a General Motors Corporation's assets to NGMCO, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (defined in the

6

Sale Order and Injunction as the "Purchaser"). This Sale Order and Injunction was consummated on July 10, 2009. GM LLC admits it ultimately did acquire substantially all of Motors Liquidation Company f/k/a General Motors Corporation's assets, free and clear of all liens, claims, and encumbrances, except for certain limited exceptions as provided under the Sale Order and Injunction and Amended and Restated Master Sale and Purchase Agreement ("Sale Agreement"). GM LLC admits it ultimately did assume certain liabilities, including the following as provided in Section 2.3(a)(ix) of the Sale Agreement (as amended):

> (ix) all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date [July 10, 2009] and arising from such motor vehicles' operation or performance. . . .

GM LLC denies the subject accident is an assumed liability pursuant to the Sale Order and Injunction, and denies the remaining allegations in Paragraph 17 of the Amended Complaint.

18. GM LLC admits the subject Pontiac Grand Am at issue in this litigation should have been delivered to the purchaser with a written Limited

New Vehicle Warranty by General Motors Corporation.  GM LLC denies the remaining allegations in Paragraph 18 of the Amended Complaint.

19.   GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 19 of the Amended Complaint.

20.   GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC denies the remaining allegations in Paragraph 20 of the Amended Complaint.

21.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC admits that a vehicle with an ignition switch that is not in the "run" position will have the engine off.  GM LLC is without sufficient knowledge or information necessary to form a belief as to the truth of the allegations related to whether a key in "most vehicles" must be "intentionally turn[ed]," and therefore denies same. GM LLC denies the remaining allegations in Paragraph 21 of the Amended Complaint.

8

22.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC admits that it sent a letter to NHTSA dated February 25, 2014, pursuant to 49 C.F.R. § 573.6, pertaining to the ignition switch recall of approximately 748,024 2006-2007 MY Chevrolet HHR and Pontiac Solstice, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles ("NHTSA Recall 14V047"). GM LLC admits that Delphi Packard Electrical/Electronic Architecture was identified as a supplier pursuant to 49 C.F.R. § 573.6(c)(2)(iv) in the letters to NHTSA related to NHTSA Recall 14V047.  GM LLC admits that Delphi prepared certain Analysis/Development/Validation Plan Reports dated January 10, 2002 and May 21, 2002, which documented the results of component-level validation tests required by General Motors Corporation's component technical specifications related to the Saturn Ion.  These tests included a test to determine whether the torque required to rotate the switch from Run to Accessory complied with those specifications.  According to these Analysis/Development/Validation Plan Reports, certain of the ignition switches tested related to the Saturn Ion had a torque measurement that fell below the specifications' minimum requirement.  GM LLC denies Delphi Packard Electrical/Electronic Architecture was the supplier of the ignition switch for vehicles affected by NHTSA Recall No. 14V400.

9

GM LLC admits the July 16, 2014 letter to NHTSA related to NHTSA

Recall No. 14V400 provides as follows:

### 2003

In 2003, GM learned of a customer complaint of intermittent vehicle shut offs in a MY 2003 Grand Am from a Michigan dealership. Despite multiple attempts, the dealership could not duplicate the condition. GM's Brand Quality Manager for the Grand Am personally visited the dealership and requested that the customer demonstrate the problem. The customer had an excess key ring and mass (containing approximately 50 keys and a set of brass knuckles), and was able to recreate the shut off upon driving over a speed bump at approximately 30-35 mph. On January 7, 2003, GM opened PRTS 0084/2003. On May 22, 2003, GM issued a voicemail to dealerships describing the condition and identifying the relevant population of vehicles as 1999 through 2003 MY Chevrolet Malibu, Oldsmobile Alero, and Pontiac Grand Am. The notice directed dealers to pay attention to the key size and mass of the customer's key ring in order to better diagnose the customer's complaint. On July 24, 2003, Engineering Work Order (EWO) 211722 was initiated to increase the detent plunger force on the ignition switch replacing P/N 22688239 with P/N 22737173. This was a running change made in 2004 to the Malibu, Grand Am and the Alero. The production and service stock disposition for P/N 22688239 was designated "use", so it is possible that P/N 22688239 was used to service vehicles.

### 2004

On March 17, 2004, EWO 317693 was initiated to increase the detent plunger force on the ignition switch on the Grand Prix in order to maintain commonality between the Grand Prix and the

10

Malibu, Grand Am and the Alero.  The old Grand Prix part number, P/N -10310896, was not changed to a new part number when the detent plunger force was changed, rather P/N 10310896 remained the part number for the new ignition switch.  The service stock disposition was designated "use", so it is possible that the old switch was used to service vehicles.

## 2014

On May 22, 2014, NHTSA forwarded to GM Director of Global Policy and GM Director of Field Product Investigations and Evaluations a link to Service Bulletin No. 052203, issued in 2003, for the 1999-2003 MY Malibu, Alero and Grand Am.  On June 4, 2014, a Product Investigations Engineer was assigned to investigate ignition switches used on the 1999-2003 MY Malibu, Grand Am and Alero; the investigation expanded to include a number of additional model vehicles.  Between June 6, 2014 and June 24, 2014, the investigator worked with GM subject matter experts to gather and analyze data relating to the ignition switches used on the Malibu, Grand Am and Alero vehicles, as well as to identify other vehicles in which the relevant ignition switches were used. GM also collected and reviewed information from GM's databases, including its TREAD, warranty, customer satisfaction, and Engineering Analysis databases, and NHTSA's Vehicle Owners' Questionnaire (VOQ) database relating to vehicles using the ignition switch parts under review.  From approximately June 13 through June 24, 2014, cars identified in the investigation were evaluated at the Milford Proving Ground.  The road testing on the recall population indicated that, when the slotted key with a ring is carrying added weight, the torque performance of the ignition system may be insufficient to resist energy generated when a vehicle goes off road or experiences some other jarring event, potentially

12470858v1

> resulting in the unintentional movement of the key away from the "run" position.
>
> On June 26, 2014, the investigator made a presentation to the Safety and Field Action Decision Authority (SFADA), which decided to conduct a Safety Recall of 2000-2005 MY Chevrolet Impala and Monte Carlo, 1997-2005 MY Chevrolet Malibu, 1999-2004 MY Oldsmobile Alero, 1998-2002 MY Oldsmobile Intrigue, 1999-2005 MY Pontiac Grand Am and 2004-2008 MY Pontiac Grand Prix vehicles.

GM LLC denies the remaining allegations in Paragraph 22 of the Amended Complaint.

23.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 23 of the Amended Complaint.

24.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.   GM LLC denies the remaining allegations in Paragraph 24 of the Amended Complaint.

25.    GM LLC admits that on February 24, 2014, it sent a letter to NHTSA pursuant to the requirements of 49 C.F.R. § 573.6 with an attached chronology related to NHTSA Recall No. 14V047 that provides as follows:

12470858v1

Between 2005 and the date of this submission, GM is currently aware of 23 frontal-impact crashes involving 2005 to 2007 Chevrolet Cobalts and 2007 Pontiac G5s in which the recall condition may have caused or contributed to the airbags' non-deployment. During that same timeframe, of these crashes, GM is currently aware of six that resulted in eight fatalities of frontal occupants. GM employees became aware of many of these crashes within a month of the dates on which they occurred. As GM learned of these crashes, employees undertook to investigate the underlying facts and circumstances to determine, among other things, why the airbags had not deployed. With respect to 22 of the 23 frontal-impact crashes referenced above, the data retrieved from the vehicles' SDMs indicated that the ignition switches were in the "run" position in nine of the crashes, in the "accessory" position in twelve of the crashes, and in the "off" position in one of the crashes. Throughout this period, GM was involved in claims and lawsuits in which allegations were made regarding the ignition switch issue that is the subject of the recall. These 23 crashes are out of a total U.S. population of 619,122 vehicles subject to the pending recall.

GM LLC further admits that the chronology attached to its March 11, 2014

letter to NHTSA related to NHTSA Recall No. 14V047 provided:

Based on the data and information collected, reviewed, and analyzed to date, GM has identified eight frontal-impact crashes in the United States involving 2003 to 2007 model year Saturn Ion vehicles in which the recall condition may have caused or contributed to the airbags' nondeployment. Of these eight crashes, GM is currently aware of four involving the Saturn Ion that resulted in four fatalities (all of which involved 2004 model year vehicles) and six injuries of frontal occupants (which involved 2004, 2005, 2006 & 2007 model year vehicles). GM is currently aware of three

13

frontal-impact crashes in the United States involving 2006 to 2007 model year Chevrolet HHR vehicles in which the recall condition may have caused or contributed to the airbags' non-deployment. These three crashes resulted in three injuries to frontal occupants. GM is not currently aware of any frontal-impact crashes in the United States involving 2006-2007 model year Pontiac Solstice or 2007 model year Saturn Sky vehicles in which the recall condition may have caused or contributed to the airbags' non-deployment. It is important to emphasize that GM continues to review data and information relating to the recalled vehicles in order to evaluate, among other things, whether there were any other crashes involving the recalled vehicles in which the recall condition may have caused or contributed to the airbags' non-deployment.

GM employees became aware of most of the aforementioned crashes within two weeks of the dates on which they occurred. As GM learned of these crashes, employees undertook to investigate the underlying facts and circumstances to determine, among other things, why the airbags had not deployed. Throughout this period, GM was involved in claims and lawsuits with respect to the Ion and HHR vehicles where the non-deployment of airbags may have been caused by the ignition switch condition. These eleven crashes in the United States are out of a total U.S. population of 748,024 vehicles subject to the Ion, HHR, Solstice and Sky recall. GM's review of data and information relating to the recalled vehicles continues.

GM LLC is without sufficient information to admit or deny the allegations in related to allegations of "independent safety regulators," and therefore denies same. GM LLC denies the remaining allegations in Paragraph 25 of the Amended Complaint.

14

26.  GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 26 of the Amended Complaint.

27.  GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC admits that, as part of certain marketing campaigns, General Motors Corporation advertised the safety of General Motors Corporation vehicles, including the subject vehicle at issue.  GM LLC denies the remaining allegations in Paragraph 27 of the Amended Complaint, and specifically denies it failed to disclose or actively concealed a defect.

28.  GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 28 of the Amended Complaint.

29.  GM LLC incorporates by reference its admissions and

15

averments as provided in Paragraphs 4, 17, and 22 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 29 of the Amended Complaint.

30.    No response to Paragraph 30 is required by GM LLC as such as a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits that General Motors Corporation had a duty imposed under operation of law related to the design, manufacture, testing, and assembly of motor vehicles. GM LLC denies the remaining allegations in Paragraph 30 of the Amended Complaint.

31.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 31 of the Amended

16

Complaint.

32.  GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, 17, and 22 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 32 of the Amended Complaint, including subparagraphs (a) through (h), and specifically denies it acted with willful disregard.

33.  GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 33 of the Amended Complaint.

34.  GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in

17

Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 34 of the Amended Complaint.

35.    GM LLC admits that Plaintiff purports to seek in excess of $25,000.00 in this action.  GM LLC denies the remaining allegations in Paragraph 35 of the Amended Complaint.

36.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC denies the remaining allegations in Paragraph 36 of the Amended Complaint, and specifically denies its acts and/or omissions were reckless, in reckless disregard for the public's safety and/or well-being, and/or constituted gross negligence.

37.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above.  GM LLC denies the remaining allegations in Paragraph 37 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT II

38.    GM LLC incorporates by reference each and every denial

and/or averment in the preceding paragraphs above.

39. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 27 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 39 of the Amended Complaint, and specifically denies it was grossly negligent.

40. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 40 of the Complaint, and specifically denies it was grossly negligent.

41. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM

19

LLC denies the remaining allegations in Paragraph 41 of the Amended Complaint, and specifically denies it was grossly negligent.

42.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 12, 17, and 27 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 42 of the Amended Complaint.

43.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 43 of the Amended Complaint.

44.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4

above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 44 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT III

45. GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

46. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 27 above. GM LLC denies the remaining allegations in Paragraph 46 of the Amended Complaint.

47. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 27 above. GM LLC denies the remaining allegations in Paragraph 47 of the Amended Complaint.

48. GM LLC admits that on June 13, 2005, in response to a New York Times inquiry, General Motors Corporation manager for safety communications Alan Adler issued a statement entitled "GM Statement on

Chevrolet Cobalt Inadvertent Shutoffs," which states:

> In rare cases when a combination of factors is present, a Chevrolet Cobalt driver can cut power to the engine by inadvertently bumping the ignition key to the accessory or off position while the car is running.

> When this happens, the Cobalt is still controllable. The engine can be restarted after shifting to neutral.

> GM has analyzed this condition and believes it may occur when a driver overloads a key ring, or when the driver's leg moves amid factors such as steering column position, seat height and placement. Depending on these factors, a driver can unintentionally turn the vehicle off.

> Service advisers are telling customers they can virtually eliminate this possibility by taking several steps, including removing non-essential material from their key rings.

GM LLC denies the remaining allegations in Paragraph 48 of the Amended Complaint.

49.   GM LLC denies the allegations in Paragraph 49 of the Amended Complaint.

50.   GM LLC denies the allegations in Paragraph 50 of the Amended Complaint.

51.   GM LLC is without sufficient information to admit or deny the allegations in Paragraph 51 relating to the knowledge or alleged reliance of

12470858v1

any individual consumer, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 51 of the Complaint.

52.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 52 of the Amended Complaint.

53.   GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 53 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT IV

54.   GM LLC incorporates by reference each and every denial

and/or averment in the preceding paragraphs above.

55.   GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 30 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 55 of the Amended Complaint.

56.   GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC denies the remaining allegations in Paragraph 56 of the Amended Complaint, and specifically denies it intended to mislead or deceive Decedent or the public.

57.   GM LLC incorporates reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the allegations in Paragraph 57 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT V

58.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

59.    GM LLC admits the allegations in Paragraph 59 of the Amended Complaint.

60.    GM LLC admits that the GM Ignition Compensation Claims Resolution Facility (the "Facility") states the following with respect to the Facility's purpose:

> [GM LLC] issued safety recalls identifying a defect in the ignition switch of certain vehicles in which the ignition switch may unintentionally move from the "run" position to the "accessory" or "off" position ("the Ignition Switch Defect"). This Protocol outlines the eligibility and process requirements for individual claimants to submit and settle claims alleging that the Ignition Switch Defect caused a death or physical injury in an automobile accident.

GM LLC denies the remaining allegations in Paragraph 50 of the Complaint.

61.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above.    GM LLC admits in September 2014, it sent a letter to vehicle owners advising of NHTSA

25

Recall No. 14V400.  GM LLC admits that the Facility's website (section 1.3

of the Frequently Asked Questions) provides that:

> To be eligible to file a claim with the Facility you
> must meet the following criteria:  You must have
> been a driver, passenger, pedestrian or an
> occupant of another vehicle involved in an accident
> resulting in physical injury or death allegedly as a
> result of an Ignition Switch Defect involving one of
> the following categories of vehicles ("Eligible
> Vehicle'):
>
> Production Part Vehicles
> (Ignition Switch Recall Repair was not Performed
> Prior to the Accident)
> * Chevrolet Cobalt (Model Years 2005-2007)
> * Chevrolet HHR (Model Years 2006-2007)
> * Daewoo G2X (Model Year 2007)
> * Opel/Vauxhall GT (Model Year 2007)
> * Pontiac G4 (Model Years 2005-2006)
> * Pontiac G5 (Model Year 2007)
> * Pontiac Pursuit (Model Years 2005-2006)
> * Pontiac Solstice (Model Years 2006-2007)
> * Saturn Ion (Model Years 2003-2007)
> * Saturn Sky (Model Year 2007)
>
> Service Part Vehicles
> (Ignition Switch was Replaced by a Dealer or
> Independent Service Center with an Ignition Switch
> bearing Part Number 10392423 and the accident
> occurred after such replacement of the Ignition
> Switch and prior to the Ignition Switch Recall Repair
> (as defined in the Protocol))
>
> * Chevrolet Cobalt (Model Years 2008-2010)
> * Chevrolet HHR (Model Years 2008-2011)
> * Daewoo G2X (Model Years 2008-2009)
> * Opel/Vauxhall GT (Model Years 2008-2010)

26

- Pontiac G5 (Model Years 2008-2010)
- Pontiac Solstice (Model Years 2008-2010)
- Saturn Sky (Model Years 2008-2010)

GM LLC denies the vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 61 of the Amended Complaint.

62.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 62 of the Amended Complaint, and therefore denies same.

63.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 63 of the Amended Complaint.

64.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies the remaining allegations in Paragraph 64 of the Amended Complaint.

65.    GM LLC denies the allegations in Paragraph 65 of the Amended Complaint.

66.    GM LLC denies the allegations in Paragraph 66 of the Amended Complaint.

27

67.    GM LLC denies the allegations in Paragraph 67 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## **COUNT VI**

68.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

69.    GM LLC admits the allegations in Paragraph 69 of the Amended Complaint.

70.    GM LLC incorporates by references its admission and averments as provided in Paragraph 60 above.  GM LLC denies the remaining allegations in Paragraph 70 of the Amended Complaint.

71.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 15 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility. GM LLC denies the remaining allegations in Paragraph 71 of the Amended Complaint.

72.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 72 of the Amended Complaint, and therefore

28

denies same.

73.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 73 of the Amended Complaint.

74.   GM LLC denies the allegations in Paragraph 74 of the Amended Complaint.

75.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 61 above.  GM LLC denies vehicles affected by NHTSA Recall No. 14V400 are eligible for the Facility.  GM LLC denies the remaining allegations in Paragraph 75 of the Complaint.

76.   GM LLC denies the allegations in Paragraph 76 of the Amended Complaint.

77.   GM LLC denies the allegations in Paragraph 77 of the Amended Complaint.

78.   GM LLC denies the allegations in Paragraph 78 of the Amended Complaint.

79.   GM LLC denies the allegations in Paragraph 79 of the Amended Complaint.

12470858v1

GM LLC denies the remaining allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT VII

80. GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

81. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 17 and 27 above. GM LLC denies the remaining allegations in Paragraph 81 of the Amended Complaint.

82. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 4 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 82 of the Amended Complaint.

83. GM LLC incorporates by reference its admissions and averments as provides in Paragraphs 4, 17, 22, and 27 above. GM LLC denies the remaining allegations in Paragraph 83 of the Amended Complaint, and specifically denies it failed to disclose or actively concealed a defect.

30

84.   GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 17 and 27 above.  GM LLC denies the remaining allegations in Paragraph 84 of the Amended Complaint.

85.   GM LLC incorporates by reference its admissions and averments in Paragraph 48 above.  GM LLC denies the remaining allegations in Paragraph 85 of the Amended Complaint.

86.   GM LLC denies the allegations in Paragraph 86 of the Amended Complaint.

87.   GM LLC denies the allegations in Paragraph 87 of the Amended Complaint.

88.   GM LLC is without sufficient information to admit or deny the allegations in Paragraph 88 relating to the knowledge or alleged reliance of any individual consumer, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 88 of the Amended Complaint.

89.   GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM

31

LLC denies the remaining allegations in Paragraph 89 of the Amended Complaint.

90.    GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 90 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## **COUNT VIII**

91.    GM LLC incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

92.    No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC admits that § 30118 of the TREAD Act, among other things, provides as follows:

> (b) Defect and Noncompliance Proceedings and
> Orders.—

(2) If the Secretary decides under paragraph (1) of this subsection that the vehicle or equipment contains the defect or does not comply, the Secretary shall order the manufacturer to—

(A) give notification under section 30119 of this title to the owners, purchasers, and dealers of the vehicle or equipment of the defect or noncompliance; and

(B) remedy the defect or noncompliance under section 30120 of this title.

* * *

(c) Notification by Manufacturer.— A manufacturer of a motor vehicle or replacement equipment shall notify the Secretary by certified mail, and the owners, purchasers, and dealers of the vehicle or equipment as provided in section 30119(d) of this section, if the manufacturer—

(1) learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety; or

(2) decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter.

GM LLC denies the remaining allegations of Paragraph 92 of the Amended Complaint.

93.   No response to Paragraph 93 is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is

required, GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits section 6.15 of the Sale Agreement provides:

> From and after the Closing, Purchaser shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller.

GM LLC denies the remaining allegations in Paragraph 93 of the Amended Complaint.

94. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 92 above. GM LLC denies the remaining allegations in Paragraph 93 of the Amended Complaint.

95. No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC admits that 49 C.F.R. § 573.6 provides:

> Each manufacturer shall furnish a report to the NHTSA for each defect in his vehicles or in his items of original or replacement equipment that he or the Administrator determines to be related to motor vehicle safety, and for each noncompliance with a motor vehicle safety standard in such vehicles or items of equipment which either he or the Administrator determines to exist. Each report

> shall be submitted not more than 5 working days after a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist.

GM LLC denies the remaining allegations in Paragraph 95 of the Amended Complaint.

96.   GM LLC incorporates by reference its admissions and averments as provided in Paragraph 92 above.  GM LLC admits 49 C.F.R. § 573.6(c) provides the information to be provided to the NHTSA for each defect in a vehicle or original or replacement equipment, which includes the manufacturer's name, identification of the vehicles or items of motor vehicle equipment potentially containing the defect or noncompliance, a description of the manufacturer's basis for its determination of the recall population, a description of how the vehicles or items of equipment to be recalled differ from similar vehicles or items of equipment that the manufacturer has not included in the recall, the total number of vehicles or items of equipment potentially containing the defect or noncompliance, the percentage of vehicles or items of equipment specified pursuant to paragraph (c)(2) of this section estimated to actually contain the defect or noncompliance, a description of the defect or noncompliance, a chronology of all principal events that were the basis for the determination that the defect related to

motor vehicle safety, a description of the manufacturer's program for remedying the defect or noncompliance, a representative copy of all notices, bulletins, and other communications that relate directly to the defect or noncompliance and are sent to more than one manufacturer, distributor, dealer or purchaser, and the manufacturer's campaign number, if not identical to the identification number assigned by NHTSA.  GM LLC denies the remaining allegations in Paragraph 96 of the Amended Complaint.

97.   GM LLC incorporates by reference its admission and averments in Paragraphs 4, 17, and 22 above.  GM LLC admits that in 2001, General Motors Corporation was conducting pre-development testing of the Saturn Ion, and according to Issue Reports A-83ZA-81205, A-83ZA-81060 and A-83ZA-81254, there was an electrical concern with the ignition switch assembly.  GM LLC admits the detent problem addressed in these early reports was separate and distinct from the problem that led to NHTSA Recall No. 14V047.  GM LLC further admits that Issue Report A-83ZA-81205 reflects that "the problem does not exist anymore."  GM LLC further admits that on March 11, 2014, it sent a letter to NHTSA pursuant to the requirements of 49 C.F.R. § 573.6 with an attached chronology related to NHTSA Recall No. 14V047 that provides as follows:

12470858v1

**2014.**      Additional analyses were conducted in February 2014 relating specifically to the Ion, HHR, Solstice and Sky vehicles.  These analyses included a collection and review of data regarding crashes involving these vehicles and allegations of airbag non-deployment.   The analyses also included a search for and review of FPR and PRTS reports relating to these vehicles, regardless of model year; a number of these, initiated in 2003 and 2006, addressed complaints of stalling in Ion vehicles. One report initiated in 2001, during pre-production development of the Ion, addressed an issue relating to the ignition switch's "passlock" system.   The report stated that the causes of the problem included "low detent plunger force" in the ignition switch, and stated that an ignition switch design change had resolved the problem.  A 2003 report documented an instance in which the service technician observed a stall while driving, noted that "[t]he owner had several keys on the key ring," and stated that "[t]he additional weight of the keys had worn out the ignition switch."  In that instance, the technician replaced the ignition switch and the FPR was closed.   Other reports primarily addressed customer complaints of not being able to start their Ions' engines, but the warranty and technical assistance data collected in support of these reports included complaints of stalling.

GM LLC denies the ignition switch subject to NHTSA Recall No. 14V400 is substantially similar to the ignition switch subject to NHTSA Recall No. 14V047.  GM LLC denies the remaining allegations contained in Paragraph 97 of the Amended Complaint.

98.   GM LLC admits NHTSA ID Number: 10134303 states as follows:

37

WHILE DRIVING MY 2004 PONTIAC GRAND AM THE CAR FAILED AT 30 MPH. IT COMPLETELY SHUT OFF LEAVING ME WITH NO POWER STEERING AND NO WAY TO REGAIN CONTROL OF THE CAR UNTIL COMING TO A COMPLETE STOP TO RESTART IT. ONCE I HAD STOPPED IT DID RESTART WITHOUT INCIDENT. ONE WEEK LATER THE CAR FAILED TO START AT ALL NOT EVEN TURNING OVER. WHEN THE PROBLEM WAS DIAGNOSED AT THE GARAGE IT WAS FOUND TO BE A FAULTY "IGNITION CONTROL MODULE" IN THE CAR. AT THIS TIME THE PART WAS REPLACED ONLY TO FAIL AGAIN WITHIN 2 MONTHS TIME AGAIN WHILE I WAS DRIVING THIS TIME IN A MUCH MORE HAZARDOUS CONDITION BEING THAT I WAS ON THE HIGHWAY AND WAS TRAVELING AT 50 MPH AND HAD TO TRAVEL ACROSS TWO LANES OF TRAFFIC TO EVEN PULL OVER TO TRY TO RESTART IT. THE CAR CONTINUED TO START AND SHUT OFF ALL THE WAY TO THE SERVICE GARAGE WHERE IT WAS AGAIN FOUND TO BE A FAULTY "IGNITION CONTROL MODULE". IN ANOTHER TWO WEEKS TIME THE CAR FAILED TO START AND WHEN DIAGNOSED THIS TIME IT WAS SAID TO HAVE "ELECTRICAL PROBLEMS" POSSIBLE THE "POWER CONTROL MODULE". AT THIS TIME THE CAR IS STILL UNDRIVEABLE AND UNSAFE FOR TRAVEL. *JB

GM LLC is not admitting the truth or the accuracy of this incident. GM LLC denies the remaining allegations in Paragraph 98 of the Amended Complaint.

99. GM LLC denies that the vehicles subject to NHTSA Recall Nos. 14V400 and 14V047 share a common ignition switch design. GM LLC

38

denies the remaining allegations in Paragraph 99 of the Amended Complaint.

100. GM LLC is without sufficient information to admit or deny the allegations concerning alleged statements by the administrator of NHTSA, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 100 of the Amended Complaint.

101. GM LLC denies the allegations in Paragraph 101 of the Amended Complaint.

102. GM LLC admits that on February 24, 2014, it sent a letter to NHTSA pursuant to the requirements of 49 C.F.R. § 573.6 with an attached chronology related to NHTSA Recall No. 14V047 that provides as follows:

> **2005.** GM employees received new field reports of Cobalts losing engine power, including instances in which the key moved out of the "run" position when a driver inadvertently contacted the key or steering column. Further PRTS's were opened to re-assess this issue. During the course of a PRTS opened in May 2005, an engineer proposed that GM redesign the key head from a "slotted" to a "hole" configuration. That proposal was initially approved, but later cancelled. The PRTS process led to GM's issuing an Information Service Bulletin 05-02-35-007 in December 2005. This Service Bulletin provided "Information on Inadvertent Turning of Key Cylinder, Loss of Electrical System and No DTCs," and applied to 2005-06 Chevrolet Cobalts, 2006 Chevrolet HHRs, 2005-06 Pontiac Pursuits (Canada only), 2006 Pontiac Solstices, and 2003-06 Saturn Ions. These vehicles were all equipped with the

same ignition switch. The Service Bulletin informed dealers that: "there is potential for the driver to inadvertently turn off the ignition due to low ignition key cylinder torque/effort"; "[t]he concern is more likely to occur if the driver is short and has a large and/or heavy key chain"; and "the customer should be advised of this potential and should take steps to prevent it-such as removing unessential items from their key chain." In addition, the Service Bulletin advised that "Engineering has come up with an insert for the key ring so that it goes from a 'slot' design to a hole design. As a result, the key ring cannot move up and down in the slot any longer-it can only rotate on the hole." The Service Bulletin further stated that, "[i]n addition, the previous key ring has been replaced with a smaller, 13 mm design. This will result in the keys not hanging as low as in the past."

GM LLC denies the remaining allegations in Paragraph 102 of the Amended Complaint.

103. GM LLC admits that Anton R. Valukas's Report to the Board of Directors of General Motors Company Regarding Ignition Switch Recalls ("the Valukas Report") states:

According to Oakley, the term "stall" is a "hot" word that GM generally does not use in bulletins because it may raise a concern about vehicle safety, which suggests GM should recall the vehicle, not issue a bulletin. Others agreed that GM is sensitive to using the word "stall" in a service bulletins and closely scrutinizes any bulletin that does include "stalls" as a symptom. Others at GM confirmed that there was concern about the use of "stall" in a TSB because such language might draw the attention of NHTSA.

GM LLC denies the remaining allegations in Paragraph 103 of the Amended Complaint.

104. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 27 above. GM LLC denies the remaining allegations in Paragraph 104 of the Amended Complaint.

105. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits General Motors Corporation's 2004 Product Information release stated:

> The sleek, new Grand Prix embodies this direction, with more horsepower as well as a clean body design that sets the standard for performance sedans. And the new GTO, with its thundering 340-horsepower (254-kw) V-8, will get the adrenaline pumping through the veins of any enthusiast. Pontiac's Bonneville GXP model, coming in the first quarter of 2004, will feature new styling, a V-8 engine and considerable horsepower. Enhanced handling and acceleration are always paramount for Pontiac enthusiasts, and these, plus added safety and comfort measures, make the 2004 Pontiac lineup one of the most exciting in the division's history.

GM LLC denies the remaining allegations in Paragraph 105 of the Amended Complaint.

106. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph

12470858v1

106 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of October 4, 2003, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 106 of the Amended Complaint.

107. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits that General Motors Corporation's 2004 Annual Report stated as follows:

> The "Only GM" campaign began by highlighting our plans to equip all our cars and trucks sold to retail customers in the United States and Canada with OnStar and StabiliTrak, GM's electronic stability control system. We want to bring this kind of safety, security and peace-of-mind to all of our customers because it's the right thing to do, and because only GM can do it. We also want potential customers to know that GM offers them great value, and that buying GM matters. (For more details, go to *onlygm.com*.)

GM LLC denies the remaining allegations in Paragraph 107 of the Amended Complaint.

108. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits that General Motors Corporation's 2004 Annual Report stated as follows:

> Only GM can offer its customers the assurance that someone is looking out for them and their families when they're on the road. Twenty-four hours a day, seven days a week, OnStar by GM offers real-time personalized help. Since 1996, OnStar has had

more than 50 million interactions with subscribers, who now total more than three million.

As America's leading in-vehicle safety, security and communications system, OnStar is also an important must-have service that distinguishes GM vehicles in the crowded and highly competitive marketplace. In response to the growing importance consumers are placing on this lifesaving safety technology, GM will include OnStar as standard equipment on all U.S. and Canadian retail vehicles by the end of 2007. This commitment to safety makes GM the only automotive manufacturer able to offer a full range of cars, trucks and SUVs that provide safety protection before, during and after vehicle collisions.

GM LLC denies the remaining allegations in Paragraph 108 of the Amended Complaint.

109. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 109 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of May 10, 2004, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 109 of the Amended Complaint.

110. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph

43

110 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of June 4, 2004, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 110 of the Amended Complaint.

111. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 111 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of June 4, 2004, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 111 of the Amended Complaint.

112. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits that General Motors Corporation's 2005 Annual Report stated as follows:

> We are driving quality and productivity even further.
>
> Lasting quality. Consumers are looking for lasting quality when choosing their next car or truck. Having an appealing exterior is nice, but equally as important is what is underneath. After all, what good is a great-looking vehicle that seats them in a service waiting room more than behind the wheel? That is why restoring confidence in quality is just as important as design in rebuilding our brands. But perception lags reality. GM vehicles place high in quality rankings such as J.D. Power and

44

> Associates, ABIAUTO and *AutoBild*. The challenge
> is to bridge the gap between perception and reality.
> GM's performance has steadily and consistently
> improved. We are focused on providing our
> customers with the best quality experience over the
> lifetime of GM ownership. And, we're getting
> there…one vehicle at a time.

GM LLC denies the remaining allegations in Paragraph 112 of the
Amended Complaint.

113.  GM LLC incorporates by reference its admissions and
averments as provided in Paragraph 17 above.  At this time, GM LLC is
without sufficient information to admit or deny the allegations in Paragraph
113 of the Amended Complaint related to alleged statements on General
Motors Corporation's website as of September 9, 2005, and therefore
denies same.  GM LLC denies the remaining allegations in Paragraph 113
of the Amended Complaint.

114.  GM LLC incorporates by reference its admissions and
averments as provided in Paragraph 17 above.  At this time, GM LLC is
without sufficient information to admit or deny the allegations in Paragraph
114 of the Amended Complaint related to alleged statements on General
Motors Corporation's website as of September 9, 2005, and therefore
denies same.  GM LLC denies the remaining allegations in Paragraph 114
of the Amended Complaint.

115.  GM LLC incorporates by reference its admissions and

averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 115 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of August 9, 2006, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 115 of the Amended Complaint.

116. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 116 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of September 6, 2006, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 116 of the Amended Complaint.

117. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 117 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of October 29, 2006, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 117 of the Amended Complaint.

118. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 118 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of January 6, 2007, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 118 of the Amended Complaint.

119. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. GM LLC admits that General Motors Corporation's 2007 Annual Report stated as follows:

> POLICY, WARRANTY AND RECALLS
> Provisions for estimated expenses related to policy and product warranties are made at the time products are sold. These estimates are established using historical information on the nature, frequency, and average cost of claims. We actively study trends of claims and take action to improve vehicle quality and minimize claims. Actual experience could differ from the amounts estimated requiring adjustments to these liabilities in future periods.

GM LLC denies the remaining allegations in Paragraph 119 of the Amended Complaint.

120. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is

47

without sufficient information to admit or deny the allegations in Paragraph 120 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of January 15, 2008, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 120 of the Amended Complaint.

121. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 17 above. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 121 of the Amended Complaint related to alleged statements on General Motors Corporation's website as of March 2008, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 121 of the Amended Complaint.

122. GM LLC admits that a news release issued January 18, 2011 provided as follows:

> Chevrolet sold 4.26 million vehicles globally in 2010, an average of one every 7.4 seconds. As a result, Chevrolet's share of global vehicle industry sales grew by 0.35 points as the brand accounted for about 5.8 percent of all vehicles sold worldwide in 2010. Of the top five global vehicle brands, only Chevrolet grew its total market share last year.
>
> ***
>
> "Chevrolet's dedication to compelling designs, quality, durability and great value is a winning

48

> formula that resonates with consumers around the world," said Joel Ewanick, GM global chief marketing officer. "We will continue to listen to our customers and do our utmost to deliver what it takes to bring them into the Chevrolet family."

GM LLC denies the remaining allegations in Paragraph 122 of the Amended Complaint.

123.  GM LLC incorporates by reference its admissions and averments as provided in Paragraph 27 above.  GM LLC denies the remaining allegations in Paragraph 123 of the Amended Complaint.

124.  GM LLC admits the allegations in Paragraph 124 of the Amended Complaint.

125.  At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 125 of the Amended Complaint related to alleged statements made during radio ad, and therefore denies same.

126.  GM LLC admits the allegations in Paragraph 126 of the Amended Complaint.

127.  GM LLC admits that on December 27, 2011, Gay Kent made the following statements:

> **Q:  What should customers know about GM's commitment to vehicle safety?**
>
> A:  Our safety strategy is about providing continuous protection for our customers before, during and after a crash. For example, the crash-avoidance system features of forward collision alert

> and lane departure warning offered on the 2012 GMC Terrain crossover is designed to help the driver avoid a crash before it happens. The industry-first front center air bag coming to our midsize crossovers in 2013 is an example of GM's newest safety technology that may provide additional protection during side crashes and rollovers. And OnStar enables occupants to get help from emergency services after a crash through Automatic Crash Response.
>
> Another recent example of our commitment to providing safety 'after' the crash is first responder training. For the Chevrolet Volt, GM worked with the National Fire Protection Association to develop and deliver a comprehensive training program for first responders. We believe our approach to vehicle safety and occupant protection is one of the most comprehensive in the industry.

GM LLC denies the remaining allegations in Paragraph 127 of the Amended Complaint.

128.  GM LLC admits that a January 3, 2012 media release entitled "2012 Chevrolet Sonic Models Get Top Safety," provided:

> "We developed Sonic to exceed customer expectations of subcompacts in terms of segment-leading safety features," said Gay Kent, GM executive director of vehicle safety. "From the largest vehicles in our lineup to the smallest, we are putting overall crashworthiness and state-of-the-art safety technologies at the top of the list of must-haves."

GM LLC denies the remaining allegations in Paragraph 128 of the Amended Complaint.

12470858v1

129. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 129 of the Amended Complaint, and therefore denies same.

130. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 130 of the Amended Complaint, and therefore denies same.

131. At this time, GM LLC is without sufficient information to admit or deny the allegations in Paragraph 131 of the Amended Complaint, and therefore denies same.

132. GM LLC admits its website provides:

> At General Motors, we are passionate about earning customers for life. This vision unites us as a team each and every day and is the hallmark of our customer-driven culture.

GM LLC denies the remaining allegations in Paragraph 132 of the Amended Complaint.

133. GM LLC admits its website provides:

> At GM, it's about getting everything right for our customers – from the way we design, engineer and manufacture our vehicles, all the way through the ownership experience.

GM LLC denies the remaining allegations in Paragraph 133 of the Amended Complaint.

12470858v1

134.  GM LLC further admits it has stated:

**Safety and Quality First:** Safety will always be a priority at GM.  We continue to emphasize our safety-first culture in our facilities, and as we grow our business in new markets. Our safety philosophy is at the heart of the development of each vehicle. In addition to safety, delivering the highest quality vehicles is a major cornerstone of our promise to our customers.  That is why our vehicles go through extreme testing procedures in the lab, on the road and in our production facilities prior to being offered to customers.

GM LLC denies the remaining allegations in Paragraph 134 of the Amended Complaint.

135.  GM LLC admits its website provides:

Leading the way is our seasoned leadership team who set high standards for our company so that we can give you the best cars and trucks.  This means that we are committed to delivering vehicles with compelling designs, flawless quality and reliability, and leading safety, fuel economy and infotainment features.  All are intended to create that special bond that can only happen between a driver and their vehicle.

GM LLC further admits it has stated:

**Safety and Quality First:** Safety will always be a priority at GM.  We continue to emphasize our safety-first culture in our facilities, and as we grow our business in new markets. Our safety philosophy is at the heart of the development of each vehicle. In addition to safety, delivering the highest quality vehicles is a major cornerstone of our promise to our customers.  That is why our vehicles go through extreme testing procedures in the lab, on the road

52

and in our production facilities prior to being offered
to customers.

GM LLC denies the remaining allegations in Paragraph 135 of the
Amended Complaint.

136. GM LLC denies the allegations in Paragraph 136 of the
Amended Complaint.

137. GM LLC incorporates by reference its admissions and
averments as provided in Paragraph 22 above. GM LLC denies the
remaining allegations in Paragraph 137 of the Amended Complaint.

138. GM LLC incorporates by reference its admissions and
averments as provided in Paragraphs 60 and 61 above. GM LLC denies
the vehicles affected by NHTSA Recall No. 14V400 are eligible for the
Facility. GM LLC denies the remaining allegations in Paragraph 138 of the
Amended Complaint.

139. GM LLC incorporates by reference its admissions and
averments as provided in Paragraphs 4 and 22 above. GM LLC denies the
remaining allegations in Paragraph 139 of the Amended Complaint, and
specifically denies it concealed any defect from Decedent or the public.

140. GM LLC incorporates by reference its admissions and
averments as provided in Paragraph 4 above. GM LLC denies the
remaining allegations in Paragraph 140 of the Amended Complaint.

141. GM LLC incorporates by reference its admissions and averments as provided in Paragraph 22 above. GM LLC admits that it submitted to NHTSA the following information in a letter dated February 7, 2014, pursuant to 49 C.F.R. § 573.6, pertaining to NHTSA Recall No. 14V047, of approximately 619,122 2005-2007 model year (MY) Chevrolet Cobalt and 2007 Pontiac G5 vehicles:

> 573.6(c)(5): General Motors has decided that a defect, which relates to motor vehicle safety, exists in 2005-2007 model year Chevrolet Cobalt and 2007 Pontiac G5 vehicles. The ignition switch torque performance may not meet General Motors' specification. If the torque performance is not to specification, and the key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event, the ignition switch may inadvertently be moved out of the "run" position. The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.
>
> Until this correction is performed, customers should remove non-essential items from their key ring.

GM LLC further admits that it submitted to NHTSA the following information in a letter dated March 27, 2014, pursuant to 49 C.F.R. § 573.6, and subsequently amended the letter on March 28, 2014, pertaining to NHTSA Recall No. 14V047, of approximately 823,788 vehicles with Ignition & Start Switches:

54

> 573.6(c)(5): General Motors has decided that a defect which relates to motor vehicle safety exists in the following GM Parts and ACDelco Ignition & Start Switch service part number 10392423, and Ignition & Start Switch Housing Kits that contain or may contain part number 10392423: GM Parts and ACDelco service part numbers 10392737, 15857948, 15854953, 15896640, and 25846762. GM records indicate these service parts may have been installed during repairs in some 2008-2010 MY Chevrolet Cobalt, 2008-2011 MY Chevrolet HHR, 2008-2010 MY Pontiac Solstice, 2008-2010 MY Pontiac G5, and 2008-2010 MY Saturn Sky vehicles . . .

GM LLC denies the remaining allegations in Paragraph 141 of the Amended Complaint.

142. GM LLC denies that the vehicles subject to NHTSA Recall Nos. 14V400 and 14V047 share a common ignition switch design. GM LLC denies the remaining allegations in Paragraph 142 of the Amended Complaint.

143. GM LLC incorporates its admissions and averments as provided in Paragraph 22 above. GM LLC denies the remaining allegations in Paragraph 143 of the Amended Complaint.

144. GM LLC denies the allegations in Paragraph 144 of the Amended Complaint, and specifically denies it made fraudulent statements regarding the quality and safety of its vehicles.

145. No response to Paragraph 145 is required by GM LLC as such

12470858v1

is a question of law for the Court to decide.  To the extent a response is required, GM LLC denies the allegations in Paragraph 145 of the Amended Complaint, and specifically denies it concealed material facts.

146. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4 and 17 above. GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 146 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

## COUNT IX

147. GM incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

148. No response to Paragraph 148 is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is required, GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 17 and 22 above.  GM LLC denies the

remaining allegations in Paragraph 148 of the Amended Complaint.

149.  GM LLC denies the allegations in Paragraph 149 of the Amended Complaint, and specifically denies it actively concealed or made knowing misrepresentations about the characteristics of its vehicles.

150.  GM LLC is without sufficient information to admit or deny the allegations in Paragraph 150 of the Amended Complaint relating to the knowledge or alleged reliance of any individual consumer, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 150 of the Amended Complaint, and specifically denies it made knowing and/or affirmative misrepresentations and/or actively concealed facts.

151.  GM LLC denies the allegations in Paragraph 151 of the Amended Complaint.

## COUNT X

152.  GM incorporates by reference each and every denial and/or averment in the preceding paragraphs above.

153.  No response to Paragraph 153 is required by GM LLC as such is a question of law for the Court to decide.  To the extent a response is required, GM LLC denies the allegations in Paragraph 153 of the Amended Complaint.

154. GM LLC incorporates by reference its admissions and averments as provided in Paragraphs 4, 17, and 22 above.  GM LLC is without sufficient information to admit or deny whether the subject 2004 Pontiac Grand Am experienced the Recall Condition described in Paragraph 4 above at the time of the subject accident, and therefore denies same.  GM LLC denies the remaining allegations in Paragraph 154 of the Amended Complaint.

GM LLC denies the allegations in Plaintiff's Prayer for Relief, denies Plaintiff is entitled to the relief requested, or any other relief, and demands strict proof thereof.

WHEREFORE, General Motors LLC requests that this Court dismiss Plaintiff's Complaint with prejudice and award General Motors LLC its costs, expenses, attorney fees, interest, and all other relief as the Court and jury may deem proper.

## **AFFIRMATIVE DEFENSES**

1.   The accident, injuries, and/or damages complained of may have been proximately caused by the misuse of the product, including but not limited to other intervening superseding culpable acts of third persons or entities other than GM LLC.  Therefore, Plaintiff is not entitled to recovery against GM LLC in this action.

58

2.    Any and all damages sustained by Plaintiff and/or Decedent may have been caused solely and proximately by the negligence and/or comparative negligence of persons other than GM LLC, including but not limited to Decedent, Kathleen Ann Pillars, and others of whom/which are not known at this time but who will be identified according to applicable court rules.

3.    Any and all of the damages and injuries sustained by Plaintiff and/or Decedent may have been caused solely and proximately by the negligence of persons other than GM LLC, including non-parties that have not yet been identified.

4.    GM LLC relies on the presumptions and defenses set forth in applicable Michigan statutes that bar Plaintiff's claims in whole or in part, including but not limited to MCLA 600.2945, .2946, .2946a, .2947, .2948, .2955, .2957, .2960, and .6304.

5.    GM LLC is entitled to a set-off from any recovery against it to the extent of any and all benefits paid or payable to or on behalf of Plaintiff from any and all collateral sources to the extent such a set-off is permissible under the laws applicable to this case.

6.    GM LLC states Plaintiff's claims and causes of action are barred by the applicable statute of limitations.

59

7.    Any damages to Plaintiff are limited for all claims of non-economic loss as set forth in MCLA 600.2946a.

8.    Plaintiff may have failed to mitigate damages by failing to take all reasonable care to minimize injuries and the consequences therefrom.

9.    To the extent that Plaintiff failed to maintain or preserve the subject vehicle referenced in Plaintiff's Complaint in its immediate post-incident condition, Plaintiff is guilty of spoliation of evidence and may not maintain any action against GM LLC.

10.    The 2004 Pontiac Grand Am referenced in the Complaint should have been delivered to the purchaser with a written Limited New Vehicle Warranty by General Motors Corporation.  The Limited New Vehicle Warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period.  Needed repairs will be performed using new or remanufactured parts.  The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.  The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first.  Moreover, as provided in the Limited New Vehicle Warranty, the implied warranties of merchantability or fitness for a particular purpose applicable to this vehicle are limited in duration to the duration of this written warranty.

Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty. There shall be no liability for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty. GM LLC pleads the limitations contained in the warranty.

11.     GM LLC states Plaintiff's claims may be preempted by or precluded by applicable federal law including but not limited to Orders of the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court") entered in the bankruptcy case captioned *In re Motors Liquidation Company, et al.*, Case No. 09-50026, which is pending before the New York Bankruptcy Court.

## RESERVATION OF RIGHTS

12.     GM LLC reserves the right to list additional affirmative defenses if it learns of additional information through investigation and discovery.

## JURY DEMAND

13.     GM LLC demands a trial by jury.

WHEREFORE, General Motors LLC requests that this Court dismiss Plaintiff's Complaint with prejudice and award General Motors LLC its

12470858v1

costs, expenses, attorney fees, interest, and all other relief as the Court and jury may deem proper.

Dated:  August 6, 2015                    Respectfully submitted,

                                          BOWMAN AND BROOKE LLP


                             By:    */s/ Thomas P. Branigan*
                                    Thomas P. Branigan (P41774)
                                    Attorney for Defendant
                                    41000 Woodward Ave., Ste. 200 East
                                    Bloomfield Hills, Michigan 48304
                                    248.205.3300 / 248.205.3399 Fax
                                    thomas.branigan@bowmanandbrooke.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 6, 2015, I electronically filed **and** served via

U.S. Mail the foregoing paper with the Clerk of the Court using the E-Filing

system which will send notification of such filing to the following:

> Victor J. Mastromarco, Jr.
> 1024 N. Michigan Ave.
> Saginaw, Michigan 48602

> BOWMAN AND BROOKE LLP

> By:   */s/ Thomas P. Branigan*
> Thomas P. Branigan (P41774)
> Attorney for Defendant
> 41000 Woodward Ave., Ste. 200 East
> Bloomfield Hills, Michigan 48304
> 248.205.3300 / 248.205.3399 Fax
> thomas.branigan@bowmanandbrooke.com

12470858v1