# Exhibit A

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:      (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                             :        Chapter 11
                                                  :
MOTORS LIQUIDATION COMPANY, *et al.*,             :        Bankruptcy Case No.:
        f/k/a General Motors Corp., *et al.*      :        09-50026 (REG)
                                                  :
                        Debtors.                  :        (Jointly Administered)
                                                  :
---------------------------------------------------------------x
IGNITION SWITCH PLAINTIFFS                         :
And CERTAIN NON-IGNITION SWITCH :                  :
PLAINTIFFS,                                        :        Case No.: 1:15-cv-05056-JMF
                                Plaintiffs,        :
        -versus-                                   :
                                                  :
GENERAL MOTORS LLC,                               :
                                                  :
                        Defendant.                :
---------------------------------------------------------------x


### RESPONSE OF GENERAL MOTORS LLC TO THE MOTION TO
### WITHDRAW THE REFERENCE FILED BY DESIGNATED COUNSEL
### IN RESPECT OF THE GUC TRUST ASSET PLEADING

General Motors LLC ("**New GM**"), by its attorneys King & Spalding LLP and Kirkland and Ellis LLP, hereby files this Response ("**Response**") to the Motion to Withdraw the Reference filed by Designated Counsel in respect of the GUC Trust Asset Pleading and, in support thereof, respectfully represents as follows:

### A.    There is No Basis to Withdraw the Reference for the GUC Trust Asset Pleading.

1.    Designated Counsel filed an omnibus pleading entitled "No Strike Pleading, Objection Pleading and GUC Trust Asset Pleading" (as such terms are defined in the Bankruptcy Court's June 1, 2015 Judgment[1]) on June 24, 2015, and simultaneously sought to withdraw the reference to the Bankruptcy Court with respect to such omnibus pleading.

2.    On July 23, 2015, New GM filed a response to the omnibus pleading limited to (a) the No Strike Pleading and the Objection Pleading with the Bankruptcy Court, and (b) the motion to withdraw the reference of the No Strike Pleading and the Objection Pleading with this Court. [Dkt. No. 7] ("**July 23 Response**").

3.    Pursuant to a Stipulation and Order of the Bankruptcy Court on July 28, 2015, the GUC Trust Asset Pleading was severed from the omnibus pleading and the response deadline for the GUC Trust Asset Pleading tolled, subject to reinstatement on seven business days' notice. The same severance/tolling procedure as it related to the motion to withdraw the reference of the GUC Trust Asset Pleading was agreed to by this Court. [Dkt. No. 9].  Notice of the reinstatement was received on July 29, 2015, thus necessitating this Response to the motion to withdraw the

---

[1]  A copy of the Judgment is annexed hereto as **Exhibit "A"**.

reference of the GUC Trust Asset Pleading. Simultaneously herewith, New GM is filing a response to the GUC Trust Asset Pleading in the Bankruptcy Court.[2]

4.      The GUC Trust Asset Pleading was only a small segment of Designated Counsels' omnibus pleading.  New GM's reasons why the Court should not withdraw the reference to the No Strike Pleading and the Objection Pleading apply equally to the GUC Trust Asset Pleading.  The July 23 Response filed with this Court is incorporated herein by reference.

5.      In reality, the GUC Trust Asset Pleading is a reservation of rights. Designated Counsel asserted that it was *premature* to bar Non-Ignition Switch Plaintiffs from accessing GUC Trust Assets. Objection Pleading, at 30. They also contend that it would be inequitable to *now bar* Non-Ignition Switch Plaintiffs from accessing GUC Trust Assets without the same opportunity that was afforded the Ignition Switch Plaintiffs. *Id.*  Exhibit A hereto filed in the Bankruptcy Court provides the substantive response to these arguments. Essentially, the Judgment required Designated Counsel to show why Non-Ignition Switch Plaintiffs were different from Ignition Switch Plaintiffs with respect to the Bankruptcy Court's equitable mootness ruling and they failed to do so. Reservations of rights pleadings were not contemplated. Designated Counsel's inability to draw a distinction between the two groups they currently represent is not surprising: there is no difference between them with respect to the equitable mootness ruling.

6.      Further, as a general proposition, a pleading like the GUC Trust Asset Pleading that essentially seeks to reserve rights is not a pleading that compels, as a matter of this Court's discretion, the withdrawal of the reference.

---

[2]  A copy of the response to the GUC Trust Asset Pleading filed in the Bankruptcy Court is attached hereto as **Exhibit "B"** and incorporated herein by reference.

Case 1:15-cv-08054-JMF    Document 15    Filed 08/07/15    Page 4 of 8

7.      Designated Counsel seek to "muddy the waters" as to why their motion to withdraw the reference is appropriate by referring to recent proceedings in the Bankruptcy Court. As explained below, their characterization of such bankruptcy proceedings are misleading, incomplete and/or incorrect.

### B.  Paragraph 16 of the Judgment Provides for the Bankruptcy Court's Exclusive Jurisdiction, Which Highlights the Improper Basis for the Motion to Withdraw the Reference.

8.      Designated Counsel state that the Judgment does not purport to prohibit motions to withdraw the reference.  *See* Designated Counsel Reply, at 1.  They simply ignore the first sentence of paragraph 16 of the Judgment, which  provides that:

> The Court [(*i.e.*, the Bankruptcy Court)] shall retain *exclusive* jurisdiction, to the fullest extent permissible under law, to construe the Sale Order, this Judgment, and/or the Decision on which it was based.

*Id*. (emphasis supplied).

9.      The GUC Trust Asset Pleading (as well as the No Strike/Objection Pleadings) are part of the enforcement procedures set forth in the Judgment, and require the Bankruptcy Court to construe the Sale Order.  As such, they fall squarely within the exclusive jurisdiction provisions of paragraph 16 of the Judgment.

10.     The above sentence in paragraph 16 of the Judgment was *included* in Designated Counsel's form of judgment submitted to the Bankruptcy Court.[3]

11.     The accompanying letter submitted by Designated Counsel with their form of judgment, dated May 12, 2015, asked the Bankruptcy Court to provide in the judgment that the courts where the original cases were pending should decide whether causes of action alleged to

---

[3]  A copy of the Letter, dated May 12, 2015, submitted by Designated Counsel to the Bankruptcy Court, with their form of judgment attached as Exhibit A [Bankr. Dkt. No. 13137], is annexed hereto as **Exhibit "C"**.

be Independent Claims (as defined in the Judgment) were proscribed by the Judgment.[4] The Bankruptcy Court rejected that request and instead implemented the No Strike/Objection/GUC Trust Asset Pleading procedures suggested by New GM, which mandate that the Bankruptcy Court decide these matters in the first instance.

12.    Paragraph 13 of the Judgment (which addresses both Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs) expressly provides that if a No Strike Pleading/GUC Trust Asset Pleading is filed, it must be done in "this Court" (*i.e.*, the Bankruptcy Court), and the Bankruptcy Court will schedule a hearing thereon, if necessary.

13.    To make sure that there was no ambiguity regarding the Bankruptcy Court's exclusive jurisdiction to decide these issues in the first instance, the Bankruptcy Court added the following language to paragraph 16 of the Judgment:

> For the avoidance of doubt, except as otherwise provided in this Judgment, the Sale Order remains fully enforceable, and in full force and effect. This Judgment shall not be collaterally attacked, *or otherwise subjected to review or modification, in any Court other than this Court or any court exercising appellate authority over this Court.*

Judgment ¶ 16 (emphasis supplied).[5]

14.    The Bankruptcy Court explained its reasoning for the addition of this sentence in its *Decision Re Form of Judgment*, dated May 27, 2015 [Bankr. Dkt. No. 13162] ("**Form of Judgment Decision**"):[6]

> New GM has expressed an understandable concern that plaintiffs in actions whose prosecution is barred by the Sale Order (sic. Cases) will seek to have this Court's Sale Order or judgment vacated or modified by courts in which plaintiffs'

---

[4] That argument is made in the omnibus pleading filed by Designated Counsel. It is the type of re-argument that is expressly prohibited by the Judgment.
[5] A district court that withdraws the reference is not exercising appellate authority.
[6] A copy of the Form of Judgment Decision, published as *In re Motors Liquidation Co.*, No. 09-50026, 2015 WL 3398398 (Bankr. S.D.N.Y. May 27, 2015), is annexed hereto as **Exhibit "D"**.

underlying actions are docketed. This Court cannot (sic. not) tolerate efforts of that character. Wholly apart from the additional expertise that Bankruptcy Courts have with respect to the order they enter and the bankruptcy matters they decide, the interpretation of the Sale Order is a matter for this Court. Subject to the power, of course, of federal courts exercising appellate jurisdiction over this Court, so is the interpretation of the Decision and the Judgment. This Court's determinations with respect to each of those matters are reviewable by the federal appellate courts alone; they cannot be subject to collateral attack. And this last point is so important that the Court is adding even more language to the Judgment to make that clear.

*Id.* at 12.

### C. Footnote 16 of the Bledsoe Decision Does Not Alter the Bankruptcy Court's Exclusive Jurisdiction to Construe the Sale Order and Decide the Omnibus Pleading

15.     Designated Counsel's reference to footnote 16 of the Bledsoe Decision[7] likewise does not support their motion for withdrawal of the reference.  The footnote provides that whether Independent Claims have been asserted against New GM must be decided in the context of "specific allegations in specific complaints."  The Bankruptcy Court noted that these issues are "teed up" in the plaintiffs' No Strike Pleadings pending before it.  The Bankruptcy Court also stated its intention to decide these issues, but recognized that the District Court may do so in the event the reference is withdrawn.

16.     The rest of the footnote does not refer to motions to withdraw the reference. While it mentions that "other courts" would implement the Bankruptcy Court's rulings, the only fair reading of "rulings" must be the ones the Bankruptcy Court has and will make in the matters before it.  Taken in context, that means the Judgment and those matters related to No Strike Pleadings, GUC Trust Asset Pleadings (and other similar pleadings) filed in  the Bankruptcy

---

[7] *See* Designated Counsel's  Reply, at 2.  A copy of the *Decision and Order on Bledsoe Plaintiffs' Reargument and Other Post-Judgment Motions*, entered July 22, 2015 [ECF No. 13313] ("**Bledsoe Decision**") is annexed hereto as **Exhibit "E"**.

Court.  The statement about "other courts" was made as part of an overall caution that other courts will need to be "wary of reliance on facts ostensibly introduced as 'background' when they were in fact attempts to paint New GM with Old GM acts."  The reference to "other courts" does not mean the Bankruptcy Court has changed its view (as expressed clearly in the Judgment and the Form of Judgment Decision) that it (as compared to other courts), in the first instance, should construe the Sale Order, the Judgment, and the enforcement procedures (*e.g.*, No Strike Pleadings, GUC Trust Asset Pleadings, etc.) relating thereto.[8]

### D. Designated Counsel's Reference to the Bankruptcy Court's July 16, 2015 Hearing is Misleading.

17.    At the July 16, 2015 hearing before the Bankruptcy Court, Designated Counsel *asked the Bankruptcy Court* to grant an extension of the time for the GUC Trust to answer a pleading (the motion to withdraw the reference) that was *pending in the District Court*.  It was in that context that the Bankruptcy Court corrected Designated Counsel and indicated that it is the District Court that must decide whether to grant the extension request for matters pending before it (*i.e.*, a motion to withdraw the reference).

18.    Designated Counsel cite to snippets from the hearing (Designated Counsel Reply, at 6 n.19) but omit their own statements made towards the end of the hearing in which they

---

[8]  Designated Counsel also cite this footnote for a proposition that is unrelated to their pending motion to withdraw the reference. They point out that the Bankruptcy Court noted that, to the extent an Independent Claim is based, in whole or in part, on the knowledge of New GM personnel, however obtained, that knowledge is "fair game." However, the example cited by the Bankruptcy Court puts its' comment into context. The Bankruptcy Court theorized that assuming (without deciding) there was a viable cause of action, New GM could be liable for knowingly installing a defective part made by Old GM in a vehicle after the 363 Sale. The Bankruptcy Court assumed New GM would have the same liability if it knowingly installed a defective part made by another manufacturer in the supplier chain.  But, the Bankruptcy Court was careful that its statement not be misconstrued, making it clear that "New GM could not be held liable for anything that Old GM did, and that claims for either compensatory or punitive damages would have to be premised solely on New GM's knowledge and conduct." *Bledsoe Decision*, at 6 n.16.

apologized to the Bankruptcy Court and New GM's counsel for not making themselves clear. *See* July 16, 2015 Hr'g. Tr., Bankr. Case No. 09-50026 (REG), at 55:6-8; *see also id.* at 57:21-25 (Weisfelner) ("[S]ince we were all here today we wanted to take an opportunity to let you know what might be coming down the pike. And instead of clarifying things and making things easier we have obviously done just the opposite. For that I apologize."). In sum, the July 16, 2015 hearing offers nothing to support the motions to withdraw the reference.

****

19.     For the reasons stated above, and in New GM's prior pleadings, New GM requests that the Court deny the motions to withdraw the reference with respect to the GUC Trust Asset Pleading, and grant New GM such other and further relief that is just and proper.

Dated: New York, New York
        August 7, 2015

Respectfully submitted,

    /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*

8

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                          :        Chapter 11
                                               :
MOTORS LIQUIDATION COMPANY, *et al.*,          :        Case No.: 09-50026 (REG)
    f/k/a General Motors Corp., *et al.*        :
                                               :
                  Debtors.        :        (Jointly Administered)

----------------------------------------------------------------x

## JUDGMENT

For the reasons set forth in the Court's *Decision on Motion to Enforce Sale Order*, entered on April 15, 2015 ("**Decision**"),[1] it is hereby ADJUDGED as follows:

1.      The Ignition Switch Plaintiffs and the Ignition Switch Pre-Closing Accident Plaintiffs (collectively, the "**Plaintiffs**") were "known creditors" of the Debtors. The Plaintiffs did not receive the notice of the sale of assets of Old GM to New GM ("**363 Sale**") that due process required.

2.      Except with respect to Independent Claims (as herein defined), the Ignition Switch Plaintiffs were not prejudiced by their lack of notice of the 363 Sale, and they thus failed to demonstrate a due process violation with respect to the 363 Sale.

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision. For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt. No. 12826], at 3); (ii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred prior to the closing of the 363 Sale; (iii) "**Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles; (iv) "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of Pre-Closing Accident Plaintiffs that are not Ignition Switch Pre-Closing Accident Plaintiffs; and (v) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM vehicle.

09-50026-reg   Doc 13099   Filed 04/16/14   Entered 04/16/14 15:03:40   Main Document
Pg 2 of 21

3.     The Ignition Switch Pre-Closing Accident Plaintiffs were not prejudiced by their lack of notice of the 363 Sale, and they thus failed to demonstrate a due process violation with respect to the 363 Sale.

4.     With respect to the Independent Claims, the Ignition Switch Plaintiffs were prejudiced by the failure to give them the notice of the 363 Sale that due process required.  The Ignition Switch Plaintiffs established a due process violation with respect to the Independent Claims.  The Sale Order shall be deemed modified to permit the assertion of Independent Claims.  For purposes of this Judgment, "**Independent Claims**" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct.  Nothing set forth herein shall be construed to set forth a view or imply whether or not Ignition Switch Plaintiffs have viable Independent Claims against New GM.

5.     Except for the modification to permit the assertion  of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.

6.     The Plaintiffs were prejudiced by the failure to receive the notice due process required of the deadline ("**Bar Date**") to file proofs of claim against the Old GM bankruptcy estate.  Any Plaintiff may petition the Bankruptcy Court (on motion and notice) for authorization to file a late or amended proof of claim against the Old GM bankruptcy estate.  The Court has not determined the extent to which any late or amended proof of claim will ultimately be allowed or allowed in a different amount.  But based on the doctrine of equitable mootness, in no event shall assets of the GUC Trust held at any time in the past, now, or in the future (collectively, the "**GUC Trust Assets**") (as defined in the Plan) be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims; *provided* that nothing in this

-2-

Judgment shall impair any party's rights with respect to the potential applicability of Bankruptcy

Code section 502(j) to any claims that were previously allowed or disallowed by the Court.  The

constraints on recourse from GUC Trust Assets shall not apply to any Ignition Switch Plaintiff,

Pre-Closing Accident Plaintiff, or Non-Ignition Switch Plaintiff who had a claim previously

allowed or disallowed by the Court, but in no event shall he or she be entitled to increase the

amount of any allowed claim without the prior authorization of the Bankruptcy Court or an

appellate court following an appeal from the Bankruptcy Court.

       7.      Any claims and/or causes of action brought by the Ignition Switch Pre-Closing

Accident Plaintiffs that seek to hold New GM liable for accidents or incidents that occurred prior

to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order.  The Ignition

Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of

action against New GM.

       8.     (a)     Subject to the other provisions of this paragraph 8, each Ignition Switch

Pre-Closing Accident Plaintiff (including without limitation the Ignition Switch Pre-Closing

Accident Plaintiffs identified on Exhibit "A" attached hereto) is stayed and enjoined from

prosecuting any lawsuit against New GM.

          (b)     Within two (2) business days of the entry of this Judgment, New GM shall

serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "A," by e-mail,

facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover

note that states:  "The attachment is the Judgment entered by the Bankruptcy Court.  Please

review the Judgment, including without limitation, the provisions of paragraph 8 of the

Judgment."

(c)     If counsel for an Ignition Switch Pre-Closing Accident Plaintiff (including, but not limited to, one identified on Exhibit "A") believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM should not be stayed, it shall file a pleading with this Court within 17 business days of this Judgment ("**No Stay Pleading**").  The No Stay Pleading shall not reargue issues that were already decided by the Decision, this Judgment, or any other decision, order, or judgment of this Court.  If a No Stay Pleading is timely filed, New GM shall have 17 business days to respond to such pleading.  The Court will schedule a hearing thereon if it believes one is necessary.

9.  Except for  Independent Claims and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment.

10.     (a)     The lawsuits stayed pursuant to the preceding paragraph shall include those on the attached Exhibit "B."  The lawsuits identified on Exhibit "B" include the Pre-Sale Consolidated Complaint.

(b)     Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on counsel in the lawsuits identified on Exhibit "B", by e-mail, facsimile, overnight mail or, if none of the foregoing are available, regular mail, with a cover note that states: "The attachment is the Judgment entered by the Bankruptcy Court.  Please review the Judgment, including without limitation, the provisions of paragraph 10 of the Judgment."

(c)     If a counsel listed on Exhibit "B" believes that, notwithstanding the

Decision and this Judgment, it has a good faith basis to maintain that its lawsuit against New GM

should not be stayed, it shall file a No Stay Pleading with this Court within 17 business days of

this Judgment.  The No Stay Pleading shall not reargue issues that were already decided by the

Decision and this Judgment, or any other decision or order of this Court.  If a No Stay Pleading

is timely filed, New GM shall have 17 business days to respond to such pleading.  The Court will

schedule a hearing thereon if it believes one is necessary.

11.     (a)     The complaints in the lawsuits listed on the attached Exhibit "C"

("**Hybrid Lawsuits**") include claims and allegations that are permitted under the Decision and

this Judgment and others that are not.  Accordingly, until and unless the complaint in a Hybrid

Lawsuit is (x) amended to assert solely claims and allegations permissible under the Decision

and this Judgment (as determined by this or any higher court, if necessary), or (y) is judicially

determined (by this or any higher court) not to require amendment, that lawsuit is and shall

remain stayed.  The Hybrid Lawsuits include the Post-Sale Consolidated Complaint.  Within two

(2) business days of the entry of this Judgment, New GM shall serve a copy of this Judgment on

counsel in the Hybrid Lawsuits, by e-mail, facsimile, overnight mail or, if none of the foregoing

are available, regular mail, with a cover note that states: "The attachment is the Judgment entered

by the Bankruptcy Court.  Please review the Judgment, including without limitation, the

provisions of paragraph 11 of the Judgment."

(b)     Notwithstanding the stay under the preceding subparagraph, however, the

complaints in the actions listed in Exhibit "C" may, if desired, be amended in accordance with

the subparagraphs that follow.  Subject to the other provisions of this paragraph 11, and unless

the applicable complaint already has been dismissed without prejudice pursuant to an order

entered in MDL 2543, each Plaintiff in a Hybrid Lawsuit wishing to proceed at this time may

amend his or her complaint on or before June 12, 2015, such that any allegations, claims or

causes of action concerning an Old GM vehicle or part seeking to impose liability or damages

based on Old GM conduct (including, without limitation, any successor liability theory of

recovery) are stricken, and only Independent Claims are pled.

        (c)      If a counsel listed in the lawsuits on Exhibit "C" believes that,

notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its

allegations, claims or causes of action against New GM should not be stricken, it shall file a

pleading with this Court within 17 business days of this Judgment ("**No Strike Pleading**").  The

No Strike Pleading shall not reargue issues that were already decided by the Decision and

Judgment.  If a No Strike Pleading is timely filed, New GM shall have 17 business days to

respond to such pleading.  The Court will schedule a hearing thereon if it believes one is

necessary.

        (d)      If an Ignition Switch Plaintiff fails to either (i) amend his or her respective

complaints on or before June 12, 2015, such that all allegations, claims and/or causes of action

concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM

conduct (including, without limitation, any successor liability theory of recovery) are stricken,

and only Independent Claims are pled, or (ii) timely file a No Strike Pleading with the Court

within the time period set forth above, New GM shall be permitted to file with this Court a notice

of presentment on five (5) business days' notice, with an attached order ("**Strike Order**") that

directs the Ignition Switch Plaintiff to strike specifically-identified allegations, claims and/or

causes of action contained in his or her complaint that violate the Decision, this Judgment and/or

the Sale Order (as modified by the Decision and this Judgment), within 17 business days of

receipt of the Strike Order.

(e)     For any allegations, claims or causes of action of the Ignition Switch
Plaintiffs listed on Exhibit "C" that are stricken pursuant to this Judgment (voluntarily or
otherwise), (i) the statute of limitations shall be tolled from the date of the amended complaint to
30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and
Judgment are reversed on appeal such that the appellate court finds that the Ignition Switch
Plaintiffs can make the allegations, or maintain the claims or causes of action, against New GM
heretofore stricken pursuant to this Judgment, all of the Ignition Switch Plaintiffs' rights against
New GM that existed prior to the striking of such claims or causes of action pursuant to this
Judgment shall be reinstated as if the striking of such claims or causes of action never occurred.

(f)     Notwithstanding the foregoing, to the extent (but only the extent)
acceptable to the MDL Court, the Plaintiff in any lawsuit listed on Exhibit "C" may elect not to
amend his or her complaint and may await the outcome of appellate review of this Judgment.  If
that plaintiff thereafter determines to proceed with his or her lawsuit, the plaintiff's counsel shall
provide notice to New GM, and the procedures set forth above shall apply.

12.     (a)     The lawsuits captioned *People of California v. General Motors LLC, et
al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) and *State of Arizona v. General
Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.)  (the "**State Lawsuits**") likewise
include claims and allegations that are permitted under the Decision and this Judgment and
others that are not.  Accordingly, until and unless the complaint in a State Lawsuit is
(x) amended to assert solely claims and allegations permissible under the Decision and this
Judgment (as determined by this or any higher court, if necessary), or (y) is judicially determined
(by this or any higher court) not to require amendment, that lawsuit is and shall remain stayed.

Within two (2) business days of the entry of this Judgment, New GM shall serve a copy of this

Judgment on counsel in the State Lawsuits, by e-mail, facsimile, overnight mail or, if none of the

foregoing are available, regular mail, with a cover note that states: "The attachment is the

Judgment entered by the Bankruptcy Court.  Please review the Judgment, including without

limitation, the provisions of paragraph 12 of the Judgment."

        (b)      Notwithstanding the stay under the preceding subparagraph, however, the

State Lawsuits may, if desired, be amended in accordance with the subparagraphs that follow.

Subject to the other provisions of this paragraph 12, and unless the applicable complaint already

has been dismissed without prejudice, each Plaintiff in a State Lawsuit ("**State Plaintiff**")

wishing to proceed at this time may amend its complaint on or before June 12, 2015, such that

any allegations, claims or causes of action concerning an Old GM vehicle or part seeking to

impose liability or damages based on Old GM conduct (including, without limitation, any

successor liability theory of recovery) are stricken, and only Independent Claims are pled.

        (c)      If a counsel in a State Lawsuit believes that, notwithstanding the Decision

and this Judgment, it has a good faith basis to maintain that its allegations, claims or causes of

action against New GM should not be stricken, it shall file a No Strike Pleading with this Court

within 17 business days of this Judgment.  The No Strike Pleading shall not reargue issues that

were already decided by the Decision and Judgment.  If a No Strike Pleading is timely filed,

New GM shall have 17 business days to respond to such pleading.  The Court will schedule a

hearing thereon if it believes one is necessary.

        (d)      If a State Plaintiff fails to either (i) amend its complaint, on or before June

12, 2015, such that all allegations, claims and/or causes of action concerning an Old GM vehicle

or part seeking to impose liability or damages based on Old GM conduct (including, without

limitation, any successor liability theory of recovery) are stricken, and only Independent Claims
are pled, or (ii) timely file a No Strike Pleading with the Court within the time period set forth
above, New GM shall be permitted to file with this Court a notice of presentment on five (5)
business days' notice, with an attached Strike Order that directs such State Plaintiff to strike
specifically-identified allegations, claims and/or causes of action contained in its complaint that
violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and
Judgment), within 17 business days of receipt of the Strike Order.

(e)     For any allegations, claims or causes of action of a State Plaintiff that are
stricken pursuant to this Judgment (voluntarily or otherwise), (i) the statute of limitations shall be
tolled from the date of the amended complaint to 30 days after all appeals of the Decision and
Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the
appellate court finds that the State Plaintiff can make the allegations, or maintain the claims or
causes of action, against New GM heretofore stricken pursuant to this Judgment, all of the State
Plaintiff's rights against New GM that existed prior to the striking of such allegations, claims or
causes of action pursuant to this Judgment shall be reinstated as if their striking never occurred.

(f)     Notwithstanding the foregoing, a State Plaintiff may elect not to amend its
complaint and may await the outcome of appellate review of this Judgment.  If such plaintiff
thereafter determines to proceed with its lawsuit, the plaintiff's counsel shall provide notice to
New GM, and the procedures set forth above shall apply.

13.     (a)     The rulings set forth herein and in the Decision that proscribe claims and
actions being taken against New GM shall apply to the "Identified Parties"[2] who were heard

---

[2]     "**Identified Parties**" as defined in the Court's Scheduling Order entered on May 16, 2014
        (ECF No. 12697), and persons that have asserted Pre-Closing personal injury and wrongful death claims
        against New GM based on the Ignition Switch Defect (as defined in the Decision).

during the proceedings regarding the Four Threshold Issues and any other parties who had notice

of the proceedings regarding the Four Threshold Issues and the opportunity to be heard in

them—including, for the avoidance of doubt, the plaintiffs in the *Bledsoe*, *Elliott* and *Sesay*

lawsuits listed on Exhibit "C." They shall also apply to any other plaintiffs in these proceedings

(including, without limitation, the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-

Ignition Switch Plaintiffs identified on Exhibit "D" attached hereto), subject to any objection

("**Objection Pleading**") submitted by any such party within 17 business days of the entry of this

Judgment. New GM shall file a response to any such Objection Pleading within 17 business

days of service. The Court will schedule a hearing thereon if it believes one is necessary.   To

the extent an issue shall arise in the future as to whether (i) the Non-Ignition Switch Pre-Closing

Accident Plaintiffs and Non-Ignition Switch Plaintiffs were known or unknown creditors of the

Debtors, (ii) the doctrine of equitable mootness bars the use of any GUC Trust Assets to satisfy

late-filed claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition

Switch Plaintiffs, or (iii) the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-

Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale Order, the Non-

Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs shall be

required to first seek resolution of such issues from this Court before proceeding any further

against New GM and/or the GUC Trust.

(b)     Within two (2) business days of the entry of this Judgment, New GM shall

serve a copy of this Judgment on counsel for the Non-Ignition Switch Pre-Closing Accident

Plaintiffs or Non-Ignition Switch Plaintiffs identified on Exhibit "D", by e-mail, facsimile,

overnight mail or, if none of the foregoing are available, regular mail, with a cover note that

states: "The attachment is the Judgment entered by the Bankruptcy Court. Please review the

Judgment, including without limitation, the provisions of paragraph 13 of the Judgment."

       (c)      If a counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to maintain that its lawsuit, or certain claims or causes of action contained therein, against New GM should not be dismissed or stricken, it shall file a pleading with this Court within 17 business days of this Judgment ("**No Dismissal Pleading**").  Such No Dismissal Pleading may request, as part of any good faith basis to maintain a lawsuit (or certain claims or causes of action contained therein) against New GM, (i) an opportunity to select one or more designated counsel from among the affected parties to address the Four Threshold Issues with respect to particular defects in the vehicles involved in the accidents or incidents that form the basis for the subject claims, and (ii) the establishment of appropriate procedures (including a briefing schedule and discovery, if appropriate) with respect thereto.  If a No Dismissal Pleading is timely filed, New GM shall have 17 business days to respond to such pleading.  The Court will schedule a hearing thereon if it believes one is necessary.

       (d)      If counsel for a Non-Ignition Switch Pre-Closing Accident Plaintiff or a Non-Ignition Switch Plaintiff believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to believe that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court, it shall file a pleading with this Court within 17 business days of this Judgment ("**GUC Trust Asset Pleading**").  The GUC Trust Asset Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a GUC Trust Asset Pleading is timely filed, the GUC Trust,

the GUC Trust Unitholders and/or New GM shall have 17 business days to respond to such pleading.  The Court will schedule a hearing thereon if it believes one is necessary.

(e)  If a Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff listed on Exhibit "D" fails to timely file a No Dismissal Pleading or a GUC Trust Asset Pleading with the Court within the time period set forth in paragraphs 13(c) and (d) above, New GM, the GUC Trust and/or the GUC Trust Unitholders, as applicable, shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached order ("**Dismissal Order**") that directs the Non-Ignition Switch Pre-Closing Accident Plaintiff or Non-Ignition Switch Plaintiff to dismiss with prejudice its lawsuit, or certain claims or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and Judgment), within 17 business days of receipt of the Dismissal Order.  For any lawsuit, or any claims or causes of action contained therein, of the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs that are dismissed pursuant to this Judgment, (i) the statute of limitations shall be tolled from the date of dismissal to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal, such that the appellate court finds that the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs can make the allegations, or maintain the lawsuit or claims or causes of action, against New GM and/or the GUC Trust heretofore dismissed or stricken pursuant to this Judgment, all of the Non-Ignition Switch Pre-Closing Accident Plaintiffs' or Non-Ignition Switch Plaintiffs' rights against New GM and/or the GUC Trust that existed prior to the dismissal of their lawsuit or the striking of claims or causes of action pursuant to this Judgment shall be reinstated as if the dismissal or the striking of such claims or causes of action never occurred.

(f)      Notwithstanding the provisions of this Paragraph 13, any plaintiff whose lawsuit would otherwise have to be dismissed, in whole or in part, under this Paragraph 13 may elect, by notice filed on ECF and served upon New GM and the GUC Trust (no later than 14 days after the entry of this judgment), to stay the lawsuit instead.  Except as the Court may otherwise provide by separate order (entered on stipulation or on motion), the provisions of Paragraph 13 shall then apply to any request for relief from that stay.

14.      The Court adopts the legal standard for "fraud on the court" as set forth in the Decision.

15.      (a)      By agreement of New GM, Designated Counsel for the Ignition Switch Plaintiffs, the GUC Trust, and the GUC Trust Unitholders, and as approved by the Court, no discovery in the Bankruptcy Court was conducted in connection with the resolution of the Four Threshold Issues.  The Ignition Switch Pre-Closing Accident Plaintiffs did not challenge the earlier decision not to seek discovery in the Bankruptcy Court in connection with the Bankruptcy Court's determination of the Four Threshold Issues.  New GM, Designated Counsel, the Groman Plaintiffs, the GUC Trust, and the GUC Trust Unitholders developed and submitted to the Court a set of agreed upon stipulated facts.  Such parties also submitted to the Bankruptcy Court certain disputed facts and exhibits.  The Court decided the Four Threshold Issues on the agreed upon stipulated facts only.

(b)      The Court has determined that the agreed-upon factual stipulations were sufficient for purposes of determining the Four Threshold Issues; that none of the disputed facts were or would have been material to the Court's conclusions as to any of the Four Threshold Issues; and that treating any disputed fact as undisputed would not have affected the outcome or reasoning of the Decision.

(c)    The Groman Plaintiffs requested discovery with respect to the Four

Threshold Issues but the other parties opposed that request, and the Court denied that request.

To the extent the Groman Plaintiffs' discovery request continues, it is denied without prejudice

to renewal in the event that after appeal of this Judgment, the discovery they seek becomes

necessary or appropriate.

(d)    For these reasons (and others), the findings of fact in the Decision shall

apply only for the purpose of this Court's resolution of the Four Threshold Issues, and shall have

no force or applicability in any other legal proceeding or matter, including without limitation,

MDL 2543.  Notwithstanding the foregoing, in all events, however, the Decision and Judgment

shall apply with respect to (a) the Court's interpretation of the enforceability of the Sale Order,

and (b) the actions of the affected parties that are authorized and proscribed by the Decision and

Judgment.

16.    The Court shall retain exclusive jurisdiction, to the fullest extent permissible

under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it

was based.  For the avoidance of doubt, except as otherwise provided in this Judgment, the Sale

Order remains fully enforceable, and in full force and effect.  This Judgment shall not be

collaterally attacked, or otherwise subjected to review or modification, in any Court other than

this Court or any court exercising appellate authority over this Court.

17.    Count One of the amended complaint ("**Groman Complaint**") filed in *Groman et

al v. General Motors LLC* (Adv. Proc. No. 14-01929 (REG)) is dismissed with prejudice.  The

remaining counts of the Groman Complaint that deal with the "fraud on the court" issue are

deferred and stayed until 30 days after all appeals of the Decision and Judgment are decided.

With respect to Count One of the Groman Complaint, (i) the statute of limitations shall be tolled

from the date of dismissal of Count One to 30 days after all appeals of the Decision and

Judgment are decided, and (ii) if the Decision and Judgment are reversed or modified on appeal

such that the appellate court finds that the Groman Plaintiffs can maintain the cause of action in

Count One of the Groman Complaint heretofore dismissed pursuant to this Judgment, the

Groman Plaintiffs' rights against New GM that existed as of the dismissal of Count One shall be

reinstated as if the dismissal of Count One never occurred.

18.    (a)    New GM is hereby authorized to serve this Judgment and the Decision

upon any additional party (or his or her attorney) (each, an "**Additional Party**") that commences

a lawsuit and/or is not otherwise on Exhibits "A" through "D" hereto (each, an "**Additional

Lawsuit**") against New GM that would be proscribed by the Sale Order (as modified by the

Decision and this Judgment). Any Additional Party shall have 17 business days upon receipt of

service by New GM of the Decision and Judgment to dismiss, without prejudice, such Additional

Lawsuit or the allegations, claims or causes of action contained in such Additional Lawsuit that

would violate the Decision, this Judgment, or the Sale Order (as modified by the Decision and

this Judgment).

(b)    If any Additional Party has a good faith basis to maintain that the

Additional Lawsuit or certain allegations, claims or causes of action contained in such Additional

Lawsuit should not be dismissed without prejudice, such Additional Party shall, within 17

business days upon receipt of the Decision and Judgment, file with this Court a No Dismissal

Pleading explaining why such Additional Lawsuit or certain claims or causes of action contained

therein should not be dismissed without prejudice. The No Dismissal Pleading shall not reargue

issues that were already decided by the Decision and Judgment. New GM shall file a response to

the No Dismissal Pleading within 17 business days of service of the No Dismissal Pleading. The

Court will schedule a hearing thereon if it believes one is necessary.

(c)　　If an Additional Party fails to either (i) dismiss without prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that New GM asserts violates the Decision, Judgment, and/or Sale Order (as modified by the Decision and this Judgment), or (ii) timely file a No Dismissal Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached Dismissal Order that directs the Additional Party to dismiss without prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and this Judgment), within 17 business days of receipt of the Dismissal Order.  With respect to any lawsuit that is dismissed pursuant to this paragraph, (i) the statute of limitations shall be tolled from the date of dismissal of such lawsuit to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Additional Party can maintain the lawsuit heretofore dismissed pursuant to this Judgment, the Additional Party's rights against New GM that existed as of the dismissal of the lawsuit shall be reinstated as if the dismissal of the lawsuit never occurred.

(d)　　For the avoidance of doubt, nothing in this paragraph 18 shall apply to the Amended Consolidated Complaint to be filed in MDL 2543 on or before June 12, 2015.

Dated: New York, New York
　　　　June 1, 2015

_s/ Robert E. Gerber_____
United States Bankruptcy Judge

-16-

## Exhibit "A": Complaints Alleging Pre-Closing Ignition Switch Accidents To Be Stayed

Bachelder, et al. v. General Motors LLC, MDL No. 1:15-cv-00155-JMF (S.D.N.Y.)[3]

Betancourt Vega v. General Motors LLC, et al., No. 3:15-cv-01245-DRD (D.P.R.)
(MDL No. 1:15-cv-02638)

Bledsoe, et al. v. General Motors LLC, MDL No. 1:14-cv-07631-JMF (S.D.N.Y.)[4]

Boyd, et al. v. General Motors LLC, No. 4:14-cv-01205-HEA (E.D. Mo.)
(MDL No. 1:14-cv-08385)[5]

Doerfler-Bashucky v. General Motors LLC, et al., No. 5:15-cv-00511-GTS-DEP (N.D.N.Y.)

Edwards, et al. v. General Motors LLC, MDL No. 1:14-cv-06924-JMF (S.D.N.Y.)[6]

Johnston-Twining v. General Motors LLC, et al., No. 3956 (Philadelphia County, Pa.)

Meyers v. General Motors LLC, No. 1:15-cv-00177-CCC (M.D. Pa.)

Occulto v. General Motors Co., et al., No. 15-cv-1545 (Lackawanna County, Pa.)

Scott v. General Motors Company, et al., No. 8:15-cv-00307-JDW-AEP (M.D. Fla.)
(MDL No. 1:15-cv-01790)

Vest v. General Motors LLC, et al., No. 1:14-cv-24995-DAF (S.D. W.Va.)
(MDL No. 1:14-cv-07475)

---

[3]     The *Bachelder* complaint includes both Ignition Switch and non-Ignition Switch Pre-Closing Accident vehicles subject to the Judgment.  Accordingly, it is listed both on Exhibits "A" and "D."

[4]     The *Bledsoe* complaint includes both Ignition Switch and non-Ignition Switch Pre-Closing Accident vehicles subject to the Judgment.  Accordingly, it is listed both on Exhibits "A" and "D."  In addition, the *Bledsoe* complaint includes economic loss claims regarding Old GM conduct and vehicles and, therefore, also appears on Exhibit "C."

[5]     The *Boyd* complaint contains allegations regarding both a Pre-Closing ignition switch accident and one or more Post-Closing ignition switch accidents.  To the extent the complaint concerns one or more Post-Closing ignition switch accidents, those portions of the *Boyd* complaint that assert Product Liabilities (as defined in the Sale Agreement) based on a Post-Closing ignition switch accident are not subject to the Judgment.

[6]     The *Edwards* complaint includes both Ignition Switch and non-Ignition Switch Pre-Closing Accident vehicles subject to the Judgment.  Accordingly, it is listed both on Exhibits "A" and "D."

## Exhibit "B": Economic Loss Complaints To Be Stayed

Hailes, et al. v. General Motors LLC, et al., No. 15PU-CV00412 (Pulaski County, Mo.)

In re General Motors LLC Ignition Switch Litigation, 14-MD-2543, *Consolidated Class Action Complaint Against New GM For Recalled Vehicles Manufactured By Old GM and Purchased Before July 11, 2009*

## Exhibit "C": Complaints Containing Particular Allegations
## And/Or Claims Barred By Sale Order To Be Stricken

**Post-Sale Personal Injury/Wrongful Death Complaints With Economic Loss Claims To Be Stricken:**

Ackerman v. General Motors Corp., et al., No. MRS-L-2898-14 (Morris County, N.J.)

Austin, et al. v. General Motors LLC, No. 2015-L- 000026 (St. Clair County, Ill.)

Berger, et al. v. General Motors LLC, No. 9241/2014 (Kings County, N.Y.)

Casey, et al.  v. General Motors LLC, et al., No. 2014-54547 (Texas MDL)

Colarossi v. General Motors, et al., No. 14-22445 (Suffolk County, N.Y.)

Dobbs v. General Motors LLC, et al., No. 49D051504PL010527 (Marion County, Ind.)

Felix, et al. v. General Motors LLC, No. 1422-CC09472 (City of St. Louis, Mo.)

Gable, et al. v. Walton, et al., No. 6737 (Lauderdale County, Tenn.)

Goins v. General Motors LLC, et al., No. 2014-CI40 (Yazoo County, Miss.)

Grant v. General Motors LLC, et al., No. 2014CV02570MG (Clayton County, Ga.)

Green v. General Motors LLC, et al., No. 15-144964-NF (Oakland County, Mich.)

Hellems v. General Motors LLC, No. 15-459-NP (Eaton County, Mich.)

Hinrichs v. General Motors LLC, et al., No. 15-DCV-221509 (Texas MDL)

Jackson v. General Motors LLC, et al., No. 2014-69442 (Texas MDL)

Largent v. General Motors LLC, et al., No. 14-006509-NP (Wayne County, Mich.)

Licardo v. General Motors LLC, No. 03236 (Fulton County, N.Y.)

Lincoln, et al. v. General Motors LLC, No. 2015-0449-CV (Steuben County, N.Y.)

Lucas v. General Motors LLC, et al., No. 15-CI-00033 (Perry County, Ky.)

Miller v. General Motors LLC, et al., No. CACE-15-002297 (Broward County, Fla.)

Mullin, et al. v. General Motors LLC, et al., No. BC568381 (Los Angeles County, Cal.)

Nelson v. General Motors LLC, et al., No. D140141 (Texas MDL)

Petrocelli v. General Motors LLC, et al., No. 14-17405 (Suffolk County, N.Y.)

Polanco, et al. v. General Motors LLC, et al., No. CIVRS1200622 (San Bernardino County, Cal.)

Quiles v. Catsoulis, et al., No. 702871/14 (Queens County, N.Y.)

Quintero v. General Motors LLC, et al., No. 15-995 (Orleans Parish, La.)

Shell, et al. v. General Motors LLC, No. 1522-CC00346 (City of St. Louis, Mo.)

Solomon v. General Motors LLC, No. 15A794-1 (Cobb County, Ga.)

Spencer v. General Motors LLC, et al., No. D-1-GN-14-001337 (Texas MDL)

Szatkowski, et al. v. General Motors LLC, et al., No. 2014-08274-0 (Luzerne County, Pa.)

Tyre v. General Motors LLC, et al., No. GD-14-010489 (Allegheny County, Pa.)

Wilson v. General Motors LLC, et al., No. 2014-29914 (Texas MDL)

**Post-Sale Economic Loss Complaints With Old GM Allegations/Claims To Be Stricken:**

Bledsoe, et al. v. General Motors LLC, MDL No. 1:14-cv-07631-JMF (S.D.N.Y.)

Elliott, et al. v. General Motors LLC, No. 1:14-cv-00691-KBJ (D.D.C.)
(MDL No. 1:14-cv-08382)

Sesay, et al. v. General Motors LLC, et al., MDL No.1:14-cv-06018-JMF (S.D.N.Y.)

In re General Motors LLC Ignition Switch Litigation, 14-MD-2543, *Consolidated Complaint Concerning All GM-Branded Vehicles That Were Acquired July 11, 2009 or Later*

## Exhibit "D": Non-Ignition Switch Complaints Subject to the Judgment

**Personal Injury/Wrongful Death Complaints:**

Abney, et al. v. General Motors LLC, MDL No. 1:14-cv-05810-JMF (S.D.N.Y.)[7]

Bachelder, et al. v. General Motors LLC, MDL No. 1:15-cv-00155-JMF (S.D.N.Y.)

Bacon v. General Motors LLC, MDL No. 1:15-cv-00918-JMF (S.D.N.Y.)

Edwards, et al. v. General Motors LLC, MDL No. 1:14-cv-06924-JMF (S.D.N.Y.)

Phillips-Powledge v. General Motors LLC, No. 3:14-cv-00192 (S.D. Tex.)
(MDL No. 1:14-cv-08540)

Pillars v. General Motors LLC, No. 1:15-cv-11360-TLL-PTM (E.D. Mich.)

Williams, et al. v. General Motors LLC, No. 5:15-cv-01070-EEF-MLH (W.D. La.)
(MDL No. 1:15-cv-03272)

**Economic Loss Complaints:**

Bledsoe, et al. v. General Motors LLC, MDL No. 1:14-cv-07631-JMF (S.D.N.Y.)

Elliott, et al. v. General Motors LLC, No. 1:14-cv-00691-KBJ (D.D.C.)
(MDL No. 1:14-cv-08382)

Sesay, et al. v. General Motors LLC, et al., MDL No.1:14-cv-06018-JMF (S.D.N.Y.)

Watson, et al. v. General Motors LLC, et al., No. 6:14-cv-02832 (W.D. La.)

---

[7]    The *Abney* complaint includes a non-Ignition Switch Pre-Closing Accident vehicle subject to the Judgment.

# Exhibit B

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.:  09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-----------------------------------------------------------x

### OMNIBUS RESPONSE BY GENERAL MOTORS LLC TO (I) THE GUC TRUST ASSET PLEADING FILED BY THE NON-IGNITION SWITCH PLAINTIFFS AND (II) THE AMENDED RESERVATION OF RIGHTS OF CERTAIN NON-ISD PRE-CLOSING ACCIDENT PLAINTIFFS

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this omnibus response ("**Response**") to (i) the GUC Trust Asset Pleading (as defined in the Judgment dated June 1, 2015 [Dkt. No. 13177] ("**Judgment**") filed by Designated Counsel for the Non-Ignition Switch Plaintiffs ("**DC GUC Trust Asset Pleading**"), and (ii) the Amended Reservation Of

1

Rights Of Certain Non-ISD Pre-Closing Accident Plaintiffs filed by Goodwin Proctor[1] on June 24, 2015 [Dkt. No. 13254] ("**Reservation of Rights**").[2]  In support thereof, New GM states as follows:

1.      In the Judgment, the Court held that, while the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs could seek to file late proofs of claim "based on the doctrine of equitable mootness, in no event shall assets of the GUC Trust held at any time in the past, now, or in the future (collectively, the 'GUC Trust Assets') (as defined in the Plan) be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims . . . ."  Judgment ¶ 6.

2.      The Judgment further provides that the Court's ruling on equitable mootness shall also apply to "any other plaintiffs in these proceedings (including, without limitation, the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs identified on Exhibit "D" attached hereto) . . ." unless it can be shown in a timely filed GUC Trust Asset Pleading (as defined in the Judgment) that such other plaintiffs should be exempt from such ruling.  Judgment ¶ 13(a).

3.      The Reservation of Rights pleading is not a valid GUC Trust Asset Pleading. The Court expressly held in its *Decision re Form of Judgment*, dated May 27, 2015 ("**May 27 Decision**") that the time for other plaintiffs to set forth their arguments as to why they should be

---

[1]     Goodwin Proctor filed the Reservation of Rights on behalf of certain law firms who represent Non-Ignition Switch Pre-Closing Accident Plaintiffs.

[2]     Designated Counsel for the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs filed a No Strike Pleading, Objection Pleading, and GUC Trust Asset Pleading (each as defined in the Judgment) on June 24, 2015.  On July 23, 2015, New GM filed a response to the No Strike Pleading and Objection Pleading with this Court.  *See* Dkt. No. 13316.  Pursuant to a Stipulation and Order so-ordered by the Court on July 28, 2015, the GUC Trust Asset Pleading was severed and the response deadline was tolled, subject to reinstatement, on seven business days' notice.  Notice of the reinstatement was received on July 29, 2015 and thus, the response deadline for the GUC Trust Asset Pleading is August 7, 2015.

exempt from the Court's ruling on equitable mootness is now—and expressly rejected deferring argument in the form of a reservation of rights pleading:

> The Court agrees with New GM, the GUC Trust and the Unitholders that it is time to come to closure on whether there is any basis to excuse the Non-Ignition Switch Plaintiffs from the provisions of the Sale Order and the *Court's mootness conclusions*. And fairness to the MDL Court requires that this Court *timely* provide the MDL Court with any ruling that the MDL Court may require. The Court's Judgment balances the Non-Ignition Switch Plaintiffs' need for opportunity *now* to be heard with others' needs for expeditious closure on these additional claims.

*Id*. at 9 (emphasis supplied).

4.      The "GUC Trust Asset Pleading" was intended to provide other plaintiffs with the opportunity to assert a "good faith basis" as to why "any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court[.]"  Judgment ¶ 13(d). The GUC Trust Asset Pleading, however, could not be used to "reargue issues that were already decided by the Decision and the Judgment." *Id.* The burden of proof was on the Non-Ignition Switch Plaintiffs and the Non-Ignition Switch Pre-Closing Accident Plaintiffs to demonstrate why they should be treated differently than the Ignition Switch Plaintiffs and Ignition Switch Pre-Closing Accident Plaintiffs with respect to the Court's equitable mootness ruling.  Significantly, neither the DC GUC Trust Asset Pleading nor the Reservation of Rights set forth **any** basis for this Court to conclude that they should be treated differently.[3]

5.      This glaring omission is not surprising. Both groups of plaintiffs are similarly situated, and all of the equitable mootness factors, as discussed in the April 15 Decision, apply

---

[3]      In the April 15 Decision, the Court held that Non-Ignition Switch Plaintiffs had not yet proved that there was a due process violation relating to the Sale Order as it applied to them so, at this juncture, the Sale Order would not be modified for them to assert Independent Claims against New GM. That finding, which provided *no relief* for the Non-Ignition Switch Plaintiffs or the Non-Ignition Switch Pre-Closing Accident Plaintiffs relating to the Sale Order, cannot be contorted to provide them with *better* treatment than the Ignition Switch Plaintiffs or the Ignitions Switch Pre-Accident Plaintiffs. In all events, that finding has nothing to do with the Court's equitable mootness ruling in the April 15 Decision.

equally to them. The failure to raise any distinguishing argument is easily understood by the fact that counsel for the Ignition Switch Plaintiffs and the Ignition Switch Pre-Closing Accident Plaintiffs are the same as counsel for the Non-Ignition Switch Plaintiffs and counsel who filed the Reservation of Rights. Simply put, all of the relevant arguments were made by the same counsel prior to the entry of the Judgment, their arguments were rejected by the Court, and they have no new arguments with respect to the equitable mootness ruling.

6.       The reality is that it is futile for plaintiffs to try and make a new argument purporting to distinguish Non-Ignition Switch-based claims for the simple and dispositive reason that the Court's ruling on equitable mootness is not dependent on whether the claim asserted against Old GM was an Ignition Switch based claim or a Non-Ignition Switch based claim. As the Court held in its May 27 Decision:

> When Old GM creditors received distributions under the Plan, and when Unitholders – even if as aftermarket acquirors of GUC Trust Units – acquired their units, they had a reasonable expectation that the total universe of claims filed against Old GM would not increase. And while they knew that there was an accordion feature, they also knew that claims exposure would result, with exceptions exceedingly difficult to show, only from previously filed claims. The Decision respected those concerns. The Court's Judgment will stay true to the principles articulated in the Decision, and will not allow GUC Trust assets to be tapped for claims not previously filed.

*Id.* at 9-10.

7.       In summary, the argument made in the DC GUC Trust Asset Pleading (that "[i]t is premature and inappropriate to bar the Non-Ignition Switch Plaintiffs from accessing GUC Trust Assets", (*id.* at 30)) is vague, devoid of substance, and contrary to the direction in the May 27 Decision that the issue as to the applicability of the equitable mootness ruling be determined at this time. Moreover, plaintiffs' argument that it would be "inequitable" to now bar them "from accessing GUC Trust Assets without the same opportunity that was afforded the Ignition Switch

Plaintiffs" (*id.* at 30) ignores the fact that they have been given that opportunity (in the form of the GUC Trust Asset Pleading), and they have failed to carry their burden.

WHEREFORE, New GM respectfully requests that this Court (i) deny the relief requested in the DC GUC Trust Asset Pleading and in the Reservation of Rights, (ii) find that the provisions of the Judgment relating to the equitable mootness ruling apply equally to the Non-Ignition Switch Plaintiffs and the Non-Ignition Switch Pre-Closing Accident Plaintiffs; and (iii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
     August 7, 2015

                             Respectfully submitted,


                              /s/ Arthur Steinberg
                         Arthur Steinberg
                         Scott Davidson
                         KING & SPALDING LLP
                         1185 Avenue of the Americas
                         New York, New York  10036
                         Telephone:    (212) 556-2100
                         Facsimile:    (212) 556-2222

                         Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                         Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                         KIRKLAND & ELLIS LLP
                         300 North LaSalle
                         Chicago, IL 60654
                         Telephone: (312) 862-2000
                         Facsimile: (312) 862-2200

                         *Attorneys for General Motors LLC*

# Exhibit C

**BROWN**RUDNICK

EDWARD S. WEISFELNER
direct dial: (212) 209-4900
fax: (212) 202-4800
eweisfelner@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

May 12, 2015

**VIA E-MAIL**
**AND ECF FILING**

The Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

RE:    **In re Motors Liquidation Company, et al., Case No. 09-50026 (REG)**

Dear Judge Gerber:

We write jointly as Co-Designated Counsel and Counsel for Economic Loss Plaintiffs and Designated Counsel and Counsel for Ignition Switch Pre-Closing Accident Plaintiffs (together, the "**Ignition Switch Plaintiffs**") in response to the direction set forth in the April 15 Decision and May 5 Endorsed Order. Despite extensive efforts, the parties have not reached a fully consensual form of judgment. Accordingly, we hereby submit the Ignition Switch Plaintiffs' proposed form of judgment attached hereto as **Exhibit A**. Attached hereto as **Exhibit B** is a blackline comparing the Ignition Switch Plaintiffs' proposal to New GM's form. The following highlights the substantive points of disagreement, and why the Court should approve the Ignition Switch Plaintiffs' proposed form.

1) **Permissible Claims Against New GM.**

Paragraph 4 of the Ignition Switch Plaintiffs' proposed judgment provides that "[f]or the reasons set forth in the Decision, the Ignition Switch Plaintiffs established prejudice and thus a due process violation with respect to the Independent Claims. The Sale Order shall be deemed modified to permit the assertion and continued prosecution of Independent Claims." New GM cannot dispute this conforms to the Decision.

The Ignition Switch Plaintiffs and New GM generally agree on the definition of "**Independent Claims**" with the Ignition Switch Plaintiffs proposing in paragraph 4 of their proposal that "Independent Claims" shall mean "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM, whether or not involving Old GM vehicles or parts, that are based solely on New GM's own, independent, post-Closing acts or conduct." See In re Motors Liquidation Co., 2015 Bankr. LEXIS 1296, at *222 (Bankr. S.D.N.Y. Apr. 15, 2011).

However, New GM, in paragraph 9 of its form improperly attempts to limit the definition of Independent Claims by proposing that any claims that Ignition Switch Plaintiffs may have against New GM "concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery are forever barred and enjoined pursuant to the Sale Order." This undercuts the agreed definition of Independent Claims as well as the Decision which provide that the Ignition

Switch Plaintiffs may assert and continue to prosecute claims against New GM involving Old GM vehicles or parts.  See id. at *22.

Accordingly, the Court should adopt the Ignition Switch Plaintiffs' proposed paragraph 8 which provides:  "Except for the Independent Claims and Assumed Liabilities, any claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM based on successor liability are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment."

**2)** **Status of Ignition Switch Plaintiffs' Lawsuits.**

The Ignition Switch Plaintiffs intend to appeal, *inter alia*, that portion of the Decision upholding the Sale Order's bar on successor liability claims.  Accordingly, Plaintiffs request that the successor liability claims be stayed pending appeal.  If the Decision is ultimately affirmed, only then should the successor liability claims be dismissed with prejudice.

This Court should adopt the Ignition Switch Plaintiffs' proposed judgment as faithful to the Decision and sound judicial administration.  Rather than compelling plaintiffs with actions pending in other jurisdictions to file papers in this Court as to why their lawsuits should not be dismissed with prejudice as New GM suggests (necessitating this Court to dive into the merits of plaintiffs' claims), the Ignition Switch Plaintiffs provide an administratively balanced and non-prejudicial pathway forward as follows:

    (i)    Independent Claims proceed in the jurisdictions where they are pending with those courts reviewing same with care to ensure they are not "dressed up" successor liability claims prohibited under the Sale Order.  Id. at *26;

    (ii)    claims or causes of action that Ignition Switch Plaintiffs may have against New GM sounding in the nature of successor liability are stayed pending appeal; and

    (iii)    claims of Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs remain subject to the Sale Order, provided that to the extent an issue shall arise in the future as to whether they were known or unknown creditors of the Debtors or were otherwise bound by the Sale Order, such plaintiffs shall be required to first seek resolution of such issues from this Court before proceeding any further against New GM.

New GM's proposed judgment improperly would dismiss the Ignition Switch Plaintiffs' lawsuits with prejudice now despite the stated intention to appeal and the fact that many of the lawsuits assert Independent Claims.  Paragraphs 8, 10, 11 and 13 of New GM's proposed judgment would provide an inefficient labyrinth of cumbersome procedures impacting a wide array of actions pending against New GM in various jurisdictions.  Adopting New GM's proposed procedures unduly prejudices plaintiffs, raises extra-jurisdictional concerns, and would unnecessarily congest this Court's docket.

The Ignition Switch Plaintiffs submit that the Decision did not direct the substantive actions or extra-jurisdictional procedures set forth in New GM's proposed judgment.  Indeed, New GM's proposed cumbersome procedure for dismissing cases with prejudice is inconsistent with the heavily negotiated and carefully crafted provisions of MDL Order No. 50 (attached hereto as **Exhibit C** and which provides that certain actions that are subsumed by the Amended Consolidated Complaint are dismissed, without prejudice).

Under New GM's proposed judgment, this Court would be faced with deciding whether the merits of the underlying claims in numerous plaintiff actions, including those currently pending and scheduled to be

amended in the MDL, raise Independent Claims, or claims barred by the Sale Order and the Decision. Such a result was not contemplated by the Decision which correctly left it to reviewing courts to analyze the claims to determine whether they are in substance successor liability claims "dressed up to look like something else." Id. at *26. New GM's proposed procedure would eviscerate the work to be done in the MDL and replace Judge Furman's jurisdiction over these exact matters, all on an untenable time line and playing field.

New GM's proposed procedures effectuating immediate dismissals with prejudices in cases pending in other courts are inefficient and inconsistent with sound principles of judicial management and the procedures set forth in the MDL and other courts. See Donovan v. City of Dallas, 377 U.S. 408, 412 (1964) (noting general rule that courts will not interfere with or try to restrain each other's proceedings). New GM's proposed procedure could provide imperfect protection if the appeal is successful, plus force plaintiffs to incur costs in re-filing fees. See Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) ("Dismissal with prejudice is a harsh remedy to be utilized only in extreme situations."). Any dismissals with prejudice are premature. If New GM wants to move to dismiss in the home courts, the home court judge may decide whether to dismiss and on what terms, in light of the anticipated appeals. Staying the actions pending appeal provides more administrative convenience and procedural equity and no undue prejudice to New GM. See Greenidge v. Allstate Ins. Co., No. 02 Civ. 9796 (JCF), 2003 WL 22871905, at *3 (S.D.N.Y. Dec. 3, 2003) (deferral of determination of summary judgment motion pending appeal of intervention motion is not prejudicial).

More fundamentally, Plaintiffs' Second Amended Consolidated Complaint will not be filed until June 12, 2015. All other actions and complaints in the MDL will remain stayed or dismissed without prejudice and the Second Amended Consolidated Complaint will be the only operative pleading in the MDL. It will not assert any successor liability claims to avoid proceedings inconsistent with the Decision, pending resolution of the appeal. Once it is filed, New GM will have the opportunity to move to dismiss the claims pled. At that time, upon full briefing, Judge Furman can rule on the viability of those claims – and that review will no doubt include the question of whether the claims (or any of them) improperly seek to hold New GM liable on a successor liability theory. Dismissal with prejudice now is premature.

**3) The Judgment Should Not Unduly Affect The Interests Of Non-Ignition Switch Plaintiffs.**

New GM's proposed judgment improperly seeks to expand the Decision beyond its parameters as it relates to the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs.

Specifically, the Decision was confined to plaintiffs that owned or leased a vehicle that contained the "Ignition Switch Defect" as defined therein. See In re Motors Liquidation Co., 2015 Bankr. LEXIS 1296 at *5. The other category of Plaintiffs later coming into the picture ("Non-Ignition Switch Plaintiffs") brought actions asserting Economic Loss Claims as to GM branded vehicles that did not have Ignition Switch Defects, including cars made by New GM and Old GM alike. While New GM brought another motion to enforce the Sale Order with respect to them, this additional motion "has been deferred pending the determination of the issues here." Id. at *8-9.

Accordingly, the Decision is limited to the Ignition Switch Defect and does not extend to pre-closing accident plaintiffs whose incident or accident related to a vehicle with a defect other than the Ignition Switch Defect or to plaintiffs with economic loss claims that relate to vehicles that do not contain the Ignition Switch Defect. Of course, this makes sense, because, as the Court itself noted, the "common set of stipulated facts" was developed with respect to the Ignition Switch Defect and not any other defect. Id. Those plaintiffs remain stayed and the Sale Order is still fully applicable to those parties, but any effort to give the Decision preclusive effect as to them would be ironic given the due process issues addressed in the Decision.

New GM's proposed judgment places unnecessary hurdles and administrative burdens on these plaintiffs by compelling them to file No Dismissal Pleadings within 17 business days of receipt of a notice of the claims or causes of action that New GM itself determines violates the Decision and Sale Order. Forcing these claimants to litigate now on New GM's terms is administratively inefficient and prejudicial. The Decision yields no such result. Accordingly, the Court should strike New GM's proposed procedures in paragraphs 13(b) – (e) as unduly burdensome and premature.

**4)   Status of Attorney General Actions.**

The Decision holds that claims against New GM based solely on the conduct of New GM can proceed, even if those claims involve cars and parts made by Old GM. Id. at *222. There are two pending State law enforcement actions that assert solely Independent Claims and accordingly the Sale Order, as modified by the Decision, poses no impediment to their advancement. See People of California v. General Motors LLC, No 30-2014-00731038-CU-BT-CXC (Orange County, Cal.); State of Arizona v. General Motors, LLC, No. CV2014-014090 (Maricopa County, Ariz.) (collectively, the "**State Actions**").

Accordingly, paragraph 9 of the Ignition Switch Plaintiffs' proposed judgment provides that the State Actions "shall be subject to the appropriate motion practice in the courts where those proceedings are pending, consistent with the Decision and this Judgment." Conversely, in paragraph 12 of its proposed judgment, New GM provides that the State Actions should remain stayed without prejudice to the plaintiffs seeking relief from the stay in this Court.

New GM's proposal is inconsistent with the Decision and seeks to impose additional delay on actions that consist entirely of Independent Claims. The State Actions assert law enforcement claims for injunctive relief, civil penalties and other available relief against New GM solely for its post-Sale violations of the State consumer protection laws at issue - respectively, Arizona's Consumer Fraud Act (A.R.S. § 44-1521, *et seq.*), and California's Unfair Competition Law ("**UCL**") (Cal. Bus. Code § 17200) and False Advertising Law ("**FAL**") (Cal. Bus. Code § 17500).

For example, the Arizona Complaint (a copy of which is attached hereto as **Exhibit D**) alleges that "New GM's false representations and/or omissions concerning the safety and reliability of its vehicles, and its concealment of a plethora of known safety defects plaguing its vehicles and its brand, caused Arizona residents to purchase GM-branded vehicles under false pretenses." Arizona Complaint, ¶ 22, and that New GM's conduction violated A.R.S. § 44-1522(A). See id. ¶¶ 497-498. As the Arizona Complaint makes clear, the unlawful practices at issue are those committed by New GM "in connection with the sale and lease of GM-branded vehicles on or after July 11, 2009." Id. ¶¶ 498, 503. Likewise, in the Prayer for Relief, all the remedies are targeted at New GM's conduct, as the State (A) seeks to enjoin New GM from "engaging in the unlawful acts and practice as alleged in this Complaint;" (B) seeks an Order that New GM disgorge its profits or gains from its unlawful practices; and (C) seeks an Order that New GM pay penalties for each of its willful violations of the Consumer Fraud Act.

Similarly, the California Complaint (a copy of which is attached hereto as **Exhibit E**) alleges that post-Sale conduct by New GM violated, *inter alia*, the prohibitions on unfair and deceptive conduct embodied in California's UCL and FAL. See Cal., Compl., ¶¶ 253-274. The Prayer for Relief seeks to (A) enjoin New GM from committing further acts of unfair competition; and (B) obtain civil penalties from New GM for its violations of the UCL and FAL.

Significantly, in his decision remanding the California action to state court, Judge Furman recognized that New GM might be held liable for post-Sale violations of its own independent duties under State law: "[A]s Plaintiff notes, the claims for violations of the UCL and FAL are premised on various allegedly

deceptive practices by New GM." <u>In re General Motors LLC Ignition Switch Litig.</u>, 2014 WL 6655796, at *7 (S.D.N.Y. Nov. 24, 2014).  The same is true of the Arizona action.

New GM wrongfully attempts to encroach on the jurisdiction of the State Action courts.  Clearly, the Decision does not countenance such a result as it cautions other courts to consider whether actions properly assert Independent Claims during the administration of matters pending before them.  Moreover, the Decision does not suggest that additional litigation relating to stay relief on these matters should proceed before this Court.  New GM may argue that the State Actions are somehow "dressed-up" successor liability claims, but under the Decision, those arguments should be addressed to the State Action courts.  Accordingly, the Court should adopt paragraph 9 of the Ignition Switch Plaintiffs' proposed judgment.

**5)  Equitable Mootness.**

There is disagreement between the Ignition Switch Plaintiffs on the one hand, and New GM, the GUC Trust and the Unit Holders, on the other, on two substantive issues relating to the equitable mootness findings.  First, in paragraph 6 of its proposed judgment, the Ignition Switch Plaintiffs propose that "based on the doctrine of equitable mootness, in no event shall **GUC Trust Assets (as defined in the Decision)** be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims."

Conversely, New GM, the GUC Trust and the Unit Holders seek to expand the findings by adding language that based on the doctrine of equitable mootness, in no event shall the assets of the GUC Trust "**held at any time in the past, now, or in the future**" be used to satisfy any claims of the Ignition Switch Plaintiffs.

The Ignition Switch Plaintiffs believe their proposed language is more in faith with the Decision since it did not address whether Plaintiffs may have the exclusive benefit of, or share in, the proceeds of triggering the accordion provision under the Plan and Sale Agreement.  The Ignition Switch Plaintiffs submit that because the proceeds of the accordion provision can only be triggered by allowance of the Ignition Switch Plaintiffs' claims against the Old GM bankruptcy estate and the Decision focused on Unit Holders' expectation that the universe of claims could only go down (<u>see</u> <u>Id.</u> at *194-95), the judgment should adopt the Ignition Switch Plaintiffs' proposed language.  Any other formulation may prejudice the Ignition Switch Plaintiffs' rights going forward.

The Second substantive issue relates to paragraphs 13(d) and (e) of New GM's proposed judgment.  Those paragraphs would compel the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs to file a pleading within 17 business days of entry of the judgment setting forth the basis it believes that any GUC Trust Assets may be used to satisfy late proofs of claim.

The Ignition Switch Plaintiffs propose that Court should not adopt these procedures as the Decision did not address the claims of the Non-Ignition Switch Pre-Closing Accident Plaintiffs and the Non-Ignition Switch Plaintiffs, and such procedures add unnecessary administrative and judicial burdens and costs.

**6)  Miscellaneous Language Disagreements.**

There are several other points of disagreement between the competing proposed judgments reflected in the Ignition Switch Plaintiffs' blackline, attached hereto as **Exhibit B**.  They are equally substantive and important as those issues in dispute highlighted above.  However, for the sake of brevity, the Ignition Switch Plaintiffs believe that this Court will ably see that the Ignition Switch Plaintiffs' proposed language is more faithful to the plain meaning and spirit of the Decision and should be adopted in its entirety.

**BR**

Respectfully submitted,

| | | |
|---|---|---|
| /s/ *Edward S. Weisfelner* | /s/ *Sander L. Esserman* | /s/ *William P. Weintraub* |
| Edward S. Weisfelner | Sander L. Esserman | William P. Weintraub |
| David J. Molton | **STUTZMAN, BROMBERG,** | Gregory W. Fox |
| Howard S. Steel | **ESSERMAN & PLIFKA** | **GOODWIN PROCTER** |
| **BROWNN RUDNICK LLP** | 2323 Bryan Street, Suite 2200 | The New York Times Bldg. |
| 7 Times Square | 2323 Bryan Street, Suite 2200 | 620 Eighth Avenue |
| New York, NY 10036 | Dallas, Texas 75201 | New York, NY 10018 |

cc: Arthur Steinberg
   Scott Davidson
   Richard C. Godfrey, P.C.
   Andrew B. Bloomer, P.C.
   Leonid Feller
   Matt Williams
   Lisa H. Rubin
   Daniel Golden
   Deborah J. Newman
   Alex Schmidt
   Jonathan L. Flaxer
   Garry Peller

09-50026-reg    Doc 13365-1    Filed 08/11/15    Entered 08/12/15 17:47:22    Exhibit A
Pg 45 of 84

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

In re                                             :          Chapter 11
                                                  :
MOTORS LIQUIDATION COMPANY, *et al.*,             :          Case No.: 09-50026 (REG)
    f/k/a General Motors Corp., *et al.*         :
                                                  :
                Debtors.    :          (Jointly Administered)

--------------------------------------------------------------x

### JUDGMENT

For the reasons set forth in the Court's *Decision on Motion to Enforce Sale Order*, entered on April 15, 2015 ("**Decision**"),[1] it is hereby ORDERED AND ADJUDGED as follows:

1.      For the reasons set forth in the Decision, the Ignition Switch Plaintiffs and the Ignition Switch Pre-Closing Accident Plaintiffs (collectively, the "**Plaintiffs**") were "known creditors" of the Debtors. The Plaintiffs did not receive the requisite notice of the sale of substantially all of the assets of Old GM to New GM ("**363 Sale**").

2.      Subject to the sole exception of the Independent Claims (as herein defined), for the reasons set forth in the Decision, the Ignition Switch Plaintiffs have not demonstrated that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish a due process violation with respect to the 363 Sale.

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision. For purposes of this Judgment, the following terms shall apply: (i) "**Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from the Ignition Switch in the Subject Vehicles (each term as defined in the *Agreed and Disputed Stipulations of Fact Pursuant to the Court's Supplemental Scheduling Order, Dated July 11, 2014*, filed on August 8, 2014 [Dkt. No. 12826], at 3); (ii) "**Pre-Closing Accident Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM based on an accident or incident that occurred prior to the closing of the 363 Sale; (iii) "**Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of the Pre-Closing Accident Plaintiffs that had the Ignition Switch in their Subject Vehicles; (iv) "**Non-Ignition Switch Pre-Closing Accident Plaintiffs**" shall mean that subset of Pre-Closing Accident Plaintiffs that are not Ignition Switch Pre-Closing Accident Plaintiffs; and (v) "**Non-Ignition Switch Plaintiffs**" shall mean plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch, in an Old GM vehicle.

3.     For the reasons set forth in the Decision, the Ignition Switch Pre-Closing Accident Plaintiffs have not demonstrated that their lack of notice of the 363 Sale was prejudicial and, therefore, failed to establish a due process violation with respect to the 363 Sale.

4.     For the reasons set forth in the Decision, the Ignition Switch Plaintiffs established prejudice and thus a due process violation with respect to the Independent Claims. The Sale Order shall be deemed modified to permit the assertion and continued prosecution of Independent Claims.  For purposes of this Judgment "**Independent Claims**" shall mean claims or causes of action asserted by Ignition Switch Plaintiffs against New GM, whether or not involving Old GM vehicles or parts, that are based solely on New GM's own, independent, post-Closing acts or conduct.  Nothing set forth herein shall be construed to imply whether or not Ignition Switch Plaintiffs have viable Independent Claims against New GM.

5.     Except for the modification to permit the assertion and continued prosecution of Independent Claims by the Ignition Switch Plaintiffs, the Sale Order shall remain unmodified and in full force and effect.

6.     For the reasons set forth in the Decision, the Plaintiffs were prejudiced by the failure to receive the requisite notice of the deadline ("**Bar Date**") to file proofs of claim against the Old GM bankruptcy estate.  The Plaintiffs may petition the Bankruptcy Court (on motion and notice) for authorization to file late or amended proofs of claim against the Old GM bankruptcy estate.  However, based on the doctrine of equitable mootness, in no event shall GUC Trust Assets (as defined in the Decision) be used to satisfy any claims of the Plaintiffs, nor will Old GM's Plan be modified with respect to such claims.  The preceding sentence shall not apply to any Ignition Switch Plaintiff, Pre-Closing Accident Plaintiff, or Non-Ignition Switch Plaintiff that had a claim previously allowed by the Court, but in no event shall they be entitled to

increase the amount of such allowed claim without the prior authorization of the Bankruptcy Court or an appellate court following an appeal from the Bankruptcy Court.

7.      Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs against New GM that seek to hold it liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM.

8.      Except for the Independent Claims and Assumed Liabilities, any claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM based on successor liability are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment.

9.      The lawsuits captioned *People of California v. General Motors LLC, et al.*, No. 30-2014-00731038-CU-BT-CXC (Orange County, Cal.) and *State of Arizona v. General Motors LLC*, No. CV2014-014090 (Maricopa County, Ariz.) shall be subject to appropriate motion practice in the courts where those proceedings are currently pending, consistent with the Decision and this Judgment.

10.     The rulings set forth herein and in the Decision that proscribe claims and actions being taken against New GM shall apply to the "Identified Parties"[2] who were heard during the proceedings regarding the Four Threshold Issues.  They shall also apply to other plaintiffs in these proceedings, subject to any objection ("**Objection Pleading**") submitted by any such party within 17 business days of the entry of this Judgment.  New GM shall file a response to any such Objection Pleading within 17 business days of service.  The Court will schedule a hearing

---

[2]      "**Identified Parties**" as defined in the Court's Scheduling Order entered on May 16, 2014 (ECF No. 12697), and persons that have asserted Pre-Closing personal injury and wrongful death claims against New GM based on the Ignition Switch Defect (as defined in the Decision).

thereon if it believes one is necessary. The rulings set forth herein are without prejudice to the submission of other objections to New GM's Motions to Enforce Sale Order. To the extent an issue shall arise in the future as to whether (i) the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs were known or unknown creditors of the Debtors, or (ii) the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs were otherwise bound by the provisions of the Sale Order, the Non-Ignition Switch Pre-Closing Accident Plaintiffs or Non-Ignition Switch Plaintiffs shall be required to first seek resolution of such issues from this Court before proceeding any further against New GM.

11.     The Court adopts the legal standard for "fraud on the court" as set forth in the Decision.

12.     (a)     By agreement of New GM, Designated Counsel for the Ignition Switch Plaintiffs, the GUC Trust, and the GUC Trust Unitholders, and approved by the Court, no discovery was conducted in connection with the resolution of the Four Threshold Issues. The Ignition Switch Pre-Closing Accident Plaintiffs did not challenge the earlier decision barring discovery in connection with the Four Threshold Issues. Instead, New GM, Designated Counsel, the Groman Plaintiffs, the GUC Trust, and the GUC Trust Unitholders developed and submitted to the Court a set of agreed upon stipulated facts. Such parties also submitted to the Bankruptcy Court certain disputed facts and exhibits.

        (b)     The Court finds that the agreed-upon factual stipulations were sufficient for purposes of determining the Four Threshold Issues, that none of the disputed factual stipulations raised a genuine issue of material fact as to any of the Four Threshold Issues, and that treating any of the disputed facts as part of the undisputed stipulated record would not have affected the Decision.

4

(c)     The Groman Plaintiffs requested discovery with respect to the Four Threshold Issues but the other parties opposed the request and the Court denied said request. The Groman Plaintiffs' continuing request for such discovery is also denied.

(d)     For these reasons (and others), the findings of fact in the Decision shall apply only for the purpose of this Court's resolution of the Four Threshold Issues and shall have no force or applicability in any other legal proceeding or matter, including without limitation, MDL 2543.

13.     The Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, to construe or enforce the Sale Order, this Judgment, and/or the Decision on which it was based.

14.     Pursuant to Bankruptcy Rule 8006(e)(1), for the reasons stated in the Decision, the Court hereby certifies this Judgment for direct appeal to the Circuit Court ("**Appeal**").  The Ignition Switch Plaintiffs, the Pre-Closing Accident Plaintiffs, the Non-Ignition Switch Plaintiffs, New GM, the GUC Trust, the GUC Trust Unitholders and the Groman Plaintiffs each reserve all of their rights with respect to the Appeal, including the right to challenge any of the factual and legal findings made by the Court in the Decision and to challenge certification for direct appeal.

15.     The parties have stipulated that they shall not file any voluntary supplemental statements regarding the Court's certification of the Appeal as allowed pursuant to Bankruptcy Rule 8006(e)(2), and shall submit all statements either in support or against certification of the Appeal in the Circuit Court.

16.     Count One of the amended complaint ("**Groman Complaint**") filed in *Groman et al v. General Motors LLC* (Adv. Proc. No. 14-01929 (REG)) is dismissed with prejudice.  The

remaining counts of the Groman Complaint that deal with the "fraud on the court" issue are deferred and stayed until 30 days after all appeals of the Decision and Judgment are decided. With respect to Count One of the Groman Complaint, (i) the statute of limitations shall be tolled from the date of dismissal of Count One to 30 days after all appeals of the Decision and Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the appellate court finds that the Groman Plaintiffs can maintain the cause of action in Count One of the Groman Complaint heretofore dismissed pursuant to this Judgment, the Groman  Plaintiffs' rights against New GM that existed as of the dismissal of Count One shall be reinstated as if the dismissal of Count One never occurred.

17.    New GM is hereby authorized to serve this Judgment and the Decision upon any additional party (and/or their attorney) (each, an "**Additional Party**") that commences a lawsuit (each, an "**Additional Lawsuit**") against New GM that would be proscribed by the Sale Order (as modified by the Decision and Judgment).  Any Additional Party shall have 17 business days upon receipt of service by New GM of the Decision and Judgment to dismiss, without prejudice, such Additional Lawsuit or the allegations, claims or causes of action contained in such Additional Lawsuit that would violate the Decision, this Judgment, and the Sale Order (as modified by the Decision and Judgment).  If any Additional Party has a good faith basis to maintain that the Additional Lawsuit or certain allegations, claims or causes of action contained in such Additional Lawsuit should not be dismissed without prejudice, such Additional Party shall, within 17 business days upon receipt of the Decision and Judgment, file with this Court a pleading ("**No Dismissal Pleading**") explaining why such Additional Lawsuit or certain claims or causes of action contained therein should not be dismissed without prejudice. The No Dismissal Pleading shall not reargue issues that were already decided by the Decision and

6

Judgment.  New GM shall file a response to the No Dismissal Pleading within 17 business days

of service of the No Dismissal Pleading.  The Court will schedule a hearing thereon if it believes

one is necessary.  If an Additional Party fails to either (i) dismiss without prejudice the

Additional Lawsuit or the claims and/or causes of action contained therein that New GM asserts

violates the Decision, Judgment, and/or Sale Order (as modified by the Decision and Judgment),

or (ii) timely file a No Dismissal Pleading with the Court within the time period set forth above,

New GM shall be permitted to file with this Court a notice of presentment on five (5) business

days' notice, with an attached Dismissal Order that directs the Additional Party to dismiss

without prejudice the Additional Lawsuit or the claims and/or causes of action contained therein

that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and

Judgment), within 17 business days of receipt of the Dismissal Order.  With respect to any

lawsuit that is dismissed pursuant to this Paragraph, (i) the statute of limitations shall be tolled

from the date of dismissal of such lawsuit to 30 days after all appeals of the Decision and

Judgment are decided, and (ii) if the Decision and Judgment are reversed on appeal such that the

appellate court finds that the Additional Party can maintain the lawsuit heretofore dismissed

pursuant to this Judgment, the Additional Party's rights against New GM that existed as of the

dismissal of the lawsuit shall be reinstated as if the dismissal of the lawsuit never occurred.  For

the avoidance of doubt, nothing in this Paragraph 17 shall apply to the Amended Consolidated

Complaint to be filed in the MDL proceeding on or before June 12, 2015.


Dated: New York, New York
      May __, 2015

               _____
               UNITED STATES BANKRUPTCY JUDGE

# Exhibit D

531 B.R. 354
United States Bankruptcy Court,
S.D. New York.

In re Motors Liquidation Company, et al.,
f/k/a General Motors Corp., et al. Debtors.

Case No.: 09–50026 (REG) (Jointly
Administered)   |   Signed May 27, 2015

**Synopsis**
**Background:** Purchaser at sale outside the ordinary course of business of assets of bankrupt automobile manufacturer brought adversary proceeding to enforce "free and clear of" language in sale order, and creditors with claims arising from ignition switch defects in certain models of vehicles objected on due process grounds. After the Bankruptcy Court entered its decision on the motion to enforce, 529 B.R. 510, dispute arose over form of judgment to implement court's decision.

**Holdings:** The Bankruptcy Court, Robert E. Gerber, J., held that:

[1] entry of judgment would not be delayed so that certain creditors could present additional arguments to the court;

[2] those complaints embodying claims that were barred by the sale order, which were filed in violation of the sale order, would be stayed, rather than dismissed outright;

[3] prosecution of actions brought by state Attorneys General, which intermixed claims involving pre- and post-sale conduct, would remain stayed; and

[4] court would enjoin claims against asset purchaser that were based on debtor's wrongful conduct, including, but not limited to, successor liability claims.

Ordered accordingly.

West Headnotes (8)

[1]     **Bankruptcy**
⚖ Rights and liabilities of purchasers, and right to purchase

On motion of purchaser of Chapter 11 debtor-automobile manufacturer's assets to enforce "free and clear" sale order, entry of judgment on bankruptcy court's ruling would not be delayed so that certain creditors with claims arising from ignition switch defects in particular models of vehicles could present additional arguments to the court; these creditors had more than ample opportunity to raise contentions that had not been raised by counsel designated to act for those creditors whose counsel generally litigated tort matters, and even though filings made by attorney for these creditors were so numerous and frivolous that they prompted a warning from the court, attorney still had the right to make points others had not. 11 U.S.C.A. § 363.

Cases that cite this headnote

[2]     **Bankruptcy**
⚖ Rights and liabilities of purchasers, and right to purchase

Complaints embodying claims that were barred by bankruptcy court's "free and clear" sale order pertaining to assets of Chapter 11 debtor-automobile manufacturer, which complaints were filed in violation of the sale order, would be stayed pending completion of appellate proceedings, rather than dismissed outright, upon court's entry of order on asset purchaser's motion to enforce sale order; asset purchaser would not be prejudiced, much less materially so, if such complaints were simply stayed for the time being, whereas proposed dismissal procedures would be cumbersome and could result in additional expense in refiling fees if any complaints now to be dismissed later turned out, after appeal, to assert claims that could properly be presented. 11 U.S.C.A. § 363.

Cases that cite this headnote

[3]     **Bankruptcy**
⚖ Order of court and proceedings therefor in general

Compliance with bankruptcy court's sale order was required, unless and until the sale order was vacated or modified by the bankruptcy court or a higher court. 11 U.S.C.A. § 363.

Cases that cite this headnote

[4]    **Bankruptcy**
👉 Rights and liabilities of purchasers, and right to purchase

Upon bankruptcy court's entry of order on motion of purchaser of Chapter 11 debtor-automobile manufacturer's assets to enforce "free and clear" sale order, prosecution of actions brought by state Attorneys General, which intermixed claims involving pre- and post-sale conduct, would remain stayed; claims involving pre-sale conduct were barred by the sale order. 11 U.S.C.A. § 363.

Cases that cite this headnote

[5]    **Bankruptcy**
👉 Rights and liabilities of purchasers, and right to purchase

On motion of purchaser of Chapter 11 debtor-automobile manufacturer's assets to enforce "free and clear" sale order, bankruptcy court would continue to enjoin claims against asset purchaser that were based on debtor's wrongful conduct, including, but not limited to, successor liability claims; although successor liability theories were the paradigmatic example of claims that must be barred under a "free and clear" order, they were not the only ones, and here, the sale order was intended to bar claims of any type that might be asserted against asset purchaser based on debtor's wrongful conduct. 11 U.S.C.A. § 363.

Cases that cite this headnote

[6]    **Bankruptcy**
👉 Reconsideration

Section of the Bankruptcy Code governing reconsideration of claim applies, by its terms, only to claims that were previously allowed or disallowed. 11 U.S.C.A. § 502(j).

Cases that cite this headnote

[7]    **Bankruptcy**
👉 Order of court and proceedings therefor in general

Interpretation of the bankruptcy court's sale order was a matter for that court. 11 U.S.C.A. § 363.

Cases that cite this headnote

[8]    **Bankruptcy**
👉 Rights and liabilities of purchasers, and right to purchase
**Bankruptcy**
👉 Collateral attack

Interpretation of the bankruptcy court's decision and judgment on asset purchaser's motion to enforce sale order was a matter for the bankruptcy court, subject to the power of federal courts exercising appellate jurisdiction over the bankruptcy court, and the bankruptcy court's determinations could not be subject to collateral attack. 11 U.S.C.A. § 363.

Cases that cite this headnote

**Attorneys and Law Firms**

*356 KING & SPALDING LLP, Counsel for General Motors LLC (New GM), 1185 Avenue of the Americas, New York, New York 10036, By: Arthur J. Steinberg, Esq.

BROWN RUDNICK, Designated Counsel and Counsel for Economic Loss Plaintiffs, Seven Times Square, New York, New York 10036, By: Edward S. Weisfelner, Esq.

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C., Designated Counsel and Counsel for Economic Loss Plaintiffs, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201, By: Sander L. Esserman, Esq.

GOODWIN PROCTER, LLP, Designated Counsel and Counsel for Pre-Sale Accident Victim Plaintiffs, The New York Times Building, 620 Eighth Avenue, New York, New York 10018, By: William P. Weintraub, Esq.

GOLENBOCK, EISEMAN, ASSOR, BELL & PESKOE, LLP, Counsel for Groman Plaintiffs, 437 Madison Avenue, New York, New York 10022, BY: Jonathan L. Flaxer, Esq.

GIBSON, DUNN & CRUTCHER, LLP, Counsel for Wilmington Trust Company as GUC Trust Administrator, 200 Park Avenue, New York, New York 10166, BY: Lisa H. Rubin, Esq.

AKIN, GUMP, STRAUSS, HAUER & FELD, LLP, Counsel for Participating GUC Trust Unit Trust Holders, One Bryant Park New York, New York 10036, BY: Deborah J. Newman, Esq.

### DECISION RE FORM OF JUDGMENT

ROBERT E. GERBER, UNITED STATES BANKRUPTCY JUDGE:

**\*\*1** The parties' inability to agree on a form of judgment to implement the Court's *Decision on Motion to Enforce Sale Order* [1] requires this Court to decide the disputed matters. The Court will be entering a judgment, consistent with its rulings on the disputed matters, within a few days. [2] The Court's reasoning on the disputed matters follow.

### 1. Request for Delay in Entry of Judgment

**[1]** Gary Peller, Esq., counsel for the *Elliott* and *Sesay* Plaintiffs (and an additional plaintiff, Sharon Bledsoe, a pre-petition accident victim) (collectively, the "**Peller Plaintiffs**")—whose insistence on prosecuting their complaints ahead of all of the other plaintiffs similarly situated **\*357** (and that this Court lacks the jurisdiction to enforce its own orders) necessitated two written opinions by this Court [3]—now argues that entry of judgment is premature. He argues, effectively, that the entry of a judgment as desired by all of the other parties in this case (and the prompt appellate review that all of the other parties also desire) should await the consideration of additional arguments he wishes to present.

He further argues, on behalf of the Peller Plaintiffs, that the Court's rulings in the Decision are not binding on them. The Court disagrees. The Peller Plaintiffs had more than ample opportunity to raise contentions Designated Counsel did not raise. And though Mr. Peller's filings were so numerous and frivolous that the Court warned him of the entry of a *Martin–Trigona* order, [4] he still had the right, under the Court's orders

establishing the mechanisms for determination of the Motion to Enforce, to make any points others had not.

Under these circumstances, there is no good reason for delaying the entry of a judgment that all of the other parties in this case need. Judgment will be entered now. The only fairly debatable issue is exactly how it will be framed.

### 2. Dismissal With Prejudice v. Stay of Cases

**[2]** In its proposed form of judgment, New GM provides for the outright dismissal, with prejudice, of the complaints embodying claims that continue to be barred by the Sale Order. In their proposed form of judgment, Designated Counsel argue that such complaints should merely be stayed. Though the matter is close—as neither side would be materially prejudiced by the other's approach—the Court believes it should provide, for the time being, for no more than a stay.

**\*\*2** **[3]** Of course it is true, as New GM has argued, that many plaintiffs' counsel filed plenary action complaints, in both state and federal courts, in knowing disregard of the prohibitions of the Sale Order. And whether those counsel did so out of arrogance; ignorance; their own perceptions of when orders should be complied with; or an apparent notion that orders of a United States Bankruptcy Court are unworthy of respect, is of no moment. Compliance with the Court's Sale Order was required, unless and until the Sale Order was vacated or modified by this or a higher court. [5] With this Court having declined to vacate or modify the Sale Order with respect to successor liability claims, New GM is right in its contention that the normal remedy for the filing of a complaint in violation of a court order—now determined, in respects relevant here, to be fully valid—would be an order mandating that complaint's dismissal.

The real issue, however, is *when*— and whether merely staying the actions pending the completion of appellate proceedings would suffice. Designated Counsel argue that full dismissal "would provide an inefficient labyrinth of cumbersome procedures impacting a wide array of actions pending against New GM in various jurisdictions." **\*358** That is true, but it is largely a problem of Ignition Switch Plaintiffs' making—resulting from their filing of many actions that they knew or should have known were barred by the Sale Order, and apparently intentional efforts to intermingle permitted and impermissible claims in common complaints.

Nevertheless, though many of New GM's proposed procedures would have to remain in any event (to provide mechanisms for relief from the stays, and for determining whether curative measures were sufficient), New GM's dismissal procedures would be cumbersome, and could result in additional expense in refiling fees if any complaints now to be dismissed later turn out, after appeal, to assert claims that could properly be presented. And while New GM offers mechanisms (such as a tolling of the statute of limitations and restoration of the *status quo ante* ) to protect Ignition Switch Plaintiffs in the event of a reversal or modification of the Decision, there is no need for quite so many measures so complex, nor for the additional burdens on the Court that would result from New GM's approach. New GM would not be prejudiced, much less materially so, if complaints embodying claims proscribed by the Sale Order are simply stayed for the time being.

The Court gave substantial thought to the issues addressed in the Decision and believes, not surprisingly, that it got them right. But as the Court noted when it certified the Decision for direct appeal to the Circuit, available authorities, while helpful to a point, came nowhere close to addressing a factual situation of this nature. Staying the actions embodying barred claims more than satisfactorily protects New GM's legitimate needs and concerns for now. If, as the Court believes, its conclusions on the issues to be appealed were right, New GM can then come back to the Court for full dismissals after the appellate process has taken its course.

### 3. State Court Attorney General Actions

 **[4]**  After the filing of the Motion to Enforce, actions in California and Arizona state court (the "**State Actions**") were filed on behalf of the Attorneys General of California and Arizona (the "**State Plaintiffs**") seeking injunctive relief, civil penalties and "other available relief." New GM's form of judgment provides for those actions to be stayed. Designated Counsel object to that, contending that the two State Actions assert claims based only on New GM conduct—which, if true, would be permissible under the Decision.

 **\*\*3**  But the Court does not believe that to be true. On their face, the State Plaintiffs, like many Ignition Switch Plaintiffs, intermix claims involving pre-and post-sale conduct. The California complaint includes at least 18 paragraphs alleging events that took place prior to the 363 Sale, [6] and the Arizona complaint includes at least 60 paragraphs alleging pre–363

Sale conduct. [7] Reliance on allegations of that character was expressly prohibited under the Court's decision. And the State Actions' prayers for monetary relief (as contrasted to injunctive relief, which is forward looking, and much less prone to rest on Old GM conduct), in reliance on pre-sale allegations aggravate the problem.

The Court has included within the Judgment, however, provisions allowing the State Plaintiffs to choose between maintaining the complaints in their State Actions as they originally drafted them, pending any appeal they might bring, or pruning their complaints of allegations relating conduct to Old GM conduct. If either elects the latter, and New GM does  **\*359**  not agree that claims and allegations only of a permissible nature remain, the State Plaintiffs may seek a ruling from this Court. But in the meantime, the prosecution of the state lawsuits will remain stayed. [8]

### 4. Language Re Barred Claims

 **[5]**  In its form of judgment, New GM proposes to continue the injunction against claims against New GM "concerning an Old GM vehicle or part seeking to impose liability or damages based on Old GM conduct, or a successor liability theory of recovery." Designated Counsel's form of judgment limits the barred claims to those "based on successor liability." But the latter's formulation is unduly narrow, distorting the Court's intent. The Court cannot accept Designated Counsel's language.

Successor liability theories are the paradigmatic example of claims that must be barred under a Free and Clear Order, but they are not the only ones. The Sale Order was intended to bar claims *of any type* that might be asserted against the asset buyer New GM that would be based on the asset seller Old GM's wrongful conduct—including, but not limited to, successor liability claims. [9] Acquirers of assets cannot be placed at risk of liability for claims based on seller conduct premised on the notion that the claims are not exactly for "successor liability." Any sale order that did not protect purchasers of assets from the sellers' wrongful acts would not do its job. And when the Court issued the Decision (having rejected the Ignition Switch Plaintiffs' contentions, except insofar as they involved alleged wrongful conduct by New GM alone), its intent was to leave all of the protective provisions intact. [10]

 **\*\*4**   **\*360**  The Court's judgment will stay true to the original Sale Order and the language in the Decision.

### 5. Language Re Non–Ignition Switch Plaintiffs

As both sides recognize, after New GM filed the Motion to Enforce, still another category of Plaintiffs came into the picture—the "Non–Ignition Switch Plaintiffs." Though New GM brought still another motion—a third one—to enforce the Sale Order with respect to Non–Ignition Switch Plaintiffs, this third motion could not easily be melded into the earlier stipulation and briefing schedule. Thus it was deferred pending the determination of the issues addressed in the Decision.

The Non–Ignition Switch Plaintiffs' claims remain stayed, and properly so; those Plaintiffs have not shown yet, if they ever will, that they were known claimants at the time of the 363 Sale, and that there was any kind of a due process violation with respect to them. And unless and until they do so, the provisions of the Sale Order, including its injunctive provisions, remain in effect. Similar considerations (and also mootness points) may apply with respect to the allowance of late Non–Ignition Switch Plaintiffs' claims.

Yet as Designated Counsel properly observe, the Non–Ignition Switch Plaintiffs are still entitled to a fair opportunity to be heard in this Court as to whether there are any reasons to excuse them from the Sale Order, or the Court's mootness conclusions with respect to tapping GUC Trust assets. The Decision will be *stare decisis* for the Non–Ignition Switch Plaintiffs (subject to the usual right of any litigant to show that a judicial opinion is distinguishable), but it will not be *res judicata.* The Court agrees with New GM, the GUC Trust and the Unitholders that it is time to come to closure on whether there is any basis to excuse the Non–Ignition Switch Plaintiffs from the provisions of the Sale Order and the Court's mootness conclusions. And fairness to the MDL Court requires that this Court timely provide the MDL Court with any rulings the MDL Court may require. The Court's Judgment balances the Non–Ignition Switch Plaintiffs' need for opportunity now to be heard with others' needs for expeditious closure on these additional claims.

### 6. Language Re GUC Trust Assets

New GM and, particularly, the GUC Trust and the Unitholders, on the one hand, and Designated Counsel, on the other, disagree on the language in the judgment appropriate to implement the Court's mootness conclusions. The Court generally agrees with the GUC Trust, Unitholders and New GM. But it believes, consistent with the rationale of the

Decision, that the guiding standard should the reasonable expectations of GUC Trust and acquirors of GUC Trust Units under the Plan—a matter not fully addressed by either side.

It is necessary, in the Court's view, to include different provisions in the Judgment with respect to new claims and reconsideration of old ones. When Old GM creditors received distributions under the Plan, and when Unitholders—even if as aftermarket acquirors of GUC Trust Units—acquired their units, they had a reasonable expectation that the total universe of claims filed against Old GM would not increase. And while they knew that there was an accordion feature, they also knew that claims exposure would result, with exceptions exceedingly difficult to show, only from previously filed claims. The Decision respected those concerns. The Court's Judgment will stay true to the principles articulated in the Decision, and will not allow GUC Trust assets to be tapped for claims not previously filed.

**\*\*5**  **[6]**   **\*361**  But as noted, the situation is different with respect to claims that were already filed, and previously allowed or disallowed. Bankruptcy Code section 502(j) provides, in relevant part:

> A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. [11]

Creditors receiving distributions under the Plan, and owners of GUC Trust units acquiring such units after confirmation of the Plan, were on notice that the Bankruptcy Code includes a section 502(j). Just as they had the justifiable expectation that the Court would apply provisions of the Bankruptcy Code or caselaw that would bolster their rights, they had (or should have had) the same expectation that the Court might apply provisions of the Bankruptcy Code or caselaw that could dilute their recoveries. Each assumed the risk that the Court might apply section 502(j) with respect to any claims that previously had been allowed or disallowed.

The Court expresses no view now as to whether or how it would apply section 502(j) to the claim of any plaintiff who previously filed a claim that was allowed or disallowed, but has added a proviso to its Judgment to provide that nothing in the judgment impairs any rights under section 502(j).

## 7. Language Re Disputed Facts

Designated Counsel and New GM also joust over the extent to which the Court should address, in the judgment, disputed facts that did not affect the Court's Decision. Designated Counsel ask the Court to provide that disputed facts did not raise any "genuine issue of material fact as to any of the Four Threshold Issues, and that treating any of the disputed facts as part of the undisputed stipulated record would not have affected the Decision." New GM opposes such a provision, stating that this "is found nowhere in the Decision and, in fact, is inconsistent with the Decision."

New GM is right that the language Designated Counsel want to add is found nowhere in the Decision. But New GM is mistaken when it says that the language "is inconsistent with the Decision." Such language—or at least language to the same general effect—is implicit. The Court expressly stated that "[b]y analogy to motions for summary judgment, the Court has relied only on undisputed facts."[12] Both sides agree, or should, that the Plaintiffs did indeed put forward additional facts which New GM disputed, but which the Court found unnecessary to decide to reach the conclusions it did. If the Court considered any disputed fact to have **\*362** the potential to change the outcome (or even its analysis on the way to the outcome), the Court would have said so—just as it would, if necessary, on a motion for summary judgment.

## 8. Enforcement Authority

**\*\*6** New GM's proposed form of judgment provides, in Paragraph 15:

> Notwithstanding the foregoing, in all events, however, the Decision and Judgment shall apply with respect to (a) the Court's interpretation of the enforceability of the Sale Order, and (b) the actions of the affected parties that are authorized and proscribed by the Decision and Judgment.

The Plaintiffs want this language taken out. The Court declines to do so.

**[7]** **[8]** New GM has expressed an understandable concern that plaintiffs in actions whose prosecution is barred by the Sale Order cases will seek to have this Court's Sale Order or Judgment vacated or modified by courts in which plaintiffs' underlying actions are docketed. This Court cannot not tolerate efforts of that character. Wholly apart from the additional expertise that Bankruptcy Courts have with respect to the orders they enter and the bankruptcy matters they decide, the interpretation of this Court's Sale Order is a matter for this Court. Subject to the power, of course, of federal courts exercising appellate jurisdiction over this Court, so is the interpretation of the Decision and the Judgment. This Court's determinations with respect to each of those matters are reviewable by the federal appellate courts alone; they cannot be subject to collateral attack. And this last point is so important that the Court is adding even more language to the Judgment to make that clear.

## 8. Other Matters

In several places, New GM has proposed that the judgment state that notice of the 363 sale came from Old GM, fearing that omitting reference to Old GM would imply that someone else was responsible for the 363 sale notice, "which clearly is not true." Of course the notice came from Old GM. But leaving it out does not result in the implication New GM fears. Consistent with the Court's practice here to minimize unnecessary matter, and to point readers to the Decision to understand its rationale, the Court leaves that and other nonessential matter out.

Certification to the Second Circuit Court of Appeals is more appropriately handled by a separate order.[13] The parties' stipulation with respect to voluntary supplemental statements will be included in that separate order as well.

In many places, the Court has pruned language from the proposed forms of judgment to reduce verbosity. Where changes were meant to be substantive, they have been explained in the discussion above.

## All Citations

531 B.R. 354, 2015 WL 3398398

Footnotes

1    *See In re Motors Liquidation Co.,* 529 B.R. 510 (Bankr.S.D.N.Y.2015) (Bankr.S.D.N.Y. Apr. 15, 2015) (the "**Decision**"), familiarity with which is assumed. Defined terms (such as the Court's reference to "**Designated Counsel**," the bankruptcy counsel for many of the Ignition Switch Plaintiffs) are as set forth the Decision and in the proposed forms of judgment.

2    By separate order, entered today, the Court is inviting comments on *technical* matters relating to the form of judgment. The entry of the judgment will await the submission of any such technical comments, but nothing else.

3    *See In re Motors Liquidation Co.,* 514 B.R. 377 (Bankr.S.D.N.Y.2014) (Elliott Plaintiffs); *In re Motors Liquidation Co.,* 522 B.R. 13 (Bankr.S.D.N.Y.2014) ("***Sesay***") (Sesay Plaintiffs), *leave to appeal denied,*No. 15–CV–772 and 15–CV–776 (S.D.N.Y. May 18, 2015) (Furman, J.).

4    *See Sesay,* 522 B.R. at 20 n. 13.

5    *See, e.g., Celotex Corp. v. Edwards,* 514 U.S. 300, 306, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ("Persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.")(internal citations omitted).

6    *See* ECF No. 13137, Exhibit E.

7    *See id.*Exhibit D.

8    According to New GM, the State Plaintiffs have indicated that they will not amend their complaints to eliminate reliance on Old GM conduct. The Court does not know that to be true. But assuming that it is, a decision of that character comes with a price—and that price is a stay of the State Action for as long as appropriate as the federal appellate process takes its course. Compliance with the Sale Order, or with the Decision and Judgment, is not a matter for the State Plaintiffs, or the state courts, to decide. The issues addressed in the Decision were issues properly before the federal courts, and this Court in particular. On matters properly within its purview, the Court cannot permit a disregard of its orders and judgments, or end-runs on its jurisdiction.

9    *See Sale Opinion,In re General Motors Corp.,* 407 B.R. 463, 500 n. 92 (Bankr.S.D.N.Y.2009) (Sale Order would provide that except for Assumed Liabilities, assets would be transferred "free and clear of all liens, claims, encumbrances, and other interests *of any kind or nature whatsoever...including* rights or claims based on any successor or transferee liability ...." (quoting Proposed Sale Order at ¶ 7) (emphasis added)). *See also id.*(noting that injunction would bar persons and entities holding claims "*of any kind or nature whatsoever, including* rights or claims based on any successor or transferee liability, against or in a Seller or the Purchased Assets ... arising under or out of, in connection with, or in any way relating to, the Sellers, the Purchased Assets, the operation of the Purchased Assets prior to the Closing, or the 363 Transaction ...." (quoting Proposed Sale Order at¶ 8) (emphasis added)).

10   *See* Decision, 529 B.R. at 528, 2015 WL 1727285 at *8 ("[I]t is plain that to the extent the Plaintiffs seek to impose successor liability, *or to rely, in suits against New GM, on any wrongful conduct by Old GM,* these are actually claims against Old GM, and not New GM"); *id.* at 528, 2015 WL 1727285 at *8 ("*Claims premised in any way on Old GM conduct* are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand."); *id.* at 598, 2015 WL 1727285 at *68 (Economic Loss Plaintiffs could assert otherwise viable claims against New GM arising "solely out of New GM's own, independent, post-Closing acts,"*so long as those Plaintiffs' claims do not in any way rely on any acts or conduct by Old GM* ") (emphasis added in each case).

11   It goes on to say that:

> Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder.

> This provides other creditors with a considerable measure of protection, but does not go to all of the concerns the GUC Trust and Unitholders voiced that were thereafter addressed in the Decision. Importantly, section 502(j) applies, by its terms, only to claims that were previously allowed or disallowed.

12   Decision, 529 B.R. at 529–30, 2015 WL 1727285 at *9 n. 17.

13   *See*Fed. R. Bankr. P. 8006(e)(1).

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit E

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
In re                                :        Chapter 11
                                     :
MOTORS LIQUIDATION COMPANY, *et al.*, :        Case No.: 09-50026 (REG)
            f/k/a General Motors Corp., *et al.* :
                                     :        (Jointly Administered)
                    Debtors.         :
-----------------------------------------------------------x

DECISION AND ORDER ON BLEDSOE
PLAINTIFFS' REARGUMENT AND OTHER
POST-JUDGMENT MOTIONS

APPEARANCES:

GARY PELLER
*Attorney for Bledsoe Plaintiffs*
600 New Jersey Avenue, NW
Washington, DC 20001
By:     Gary Peller, Esq.

KING & SPALDING LLP
*Counsel for General Motors LLC (New GM)*
1185 Avenue of the Americas
New York, New York 10036
By:     Arthur J. Steinberg, Esq.
        Scott I. Davidson, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

        In still another filing in his efforts to go it alone in connection with litigation

arising from the announcement by General Motors LLC ("**New GM**") of the defects in its

ignition switches (the "**Ignition Switches Controversy**"), and the issuance by this Court

of two opinions in connection with that controversy[1] following the briefing by other

counsel who ably presented plaintiffs' arguments, Gary Peller Esq., this time on behalf of

---

[1]     *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015) (Gerber, J.) ("**Decision**");
*In re Motors Liquidation Co.*, 531 B.R. 354 (Bankr. S.D.N.Y. 2015) (Gerber, J.) ("**Form of
Judgment Decision**").  Familiarity with each is assumed.

-1-

the "**Bledsoe Plaintiffs**,"[2] a subset of the clients he has represented (individually and as

purported class representatives) in this case,[3] has filed many motions seeking post-

judgment relief from this Court.  He moves, with respect to the judgment this Court

entered implementing the *Decision* (the "**Judgment**") and the *Decision's* Findings of

Fact (the "**Findings**"):

> (a) to amend the Findings under Fed.R.Bankr.P. 7052;

> (b) to alter or amend the Judgment, under Fed.R.Bankr.P. 9023 (and,
> presumably, Fed.R.Civ.P. 59(e));

> (c) for relief from the Judgment, under Fed.R.Bankr.P. 9024; and

> (d) for reargument, under S.D.N.Y. Local Bankruptcy Rule 9023-1.

The motions are denied.

<u>Facts</u>

Familiarity with facts set forth in the *Decision* and the *Form of Judgment*

*Decision* is presumed.  The Court limits its discussion of the facts to those necessary to

address Peller's post-Judgment motions, and then only in combined factual and legal

discussion of all of his motions.

---

[2]     Sharon Bledsoe, Celestine Elliott, Lawrence Elliott, Tina Farmer, Paul Fordham, Momoh Kanu,
Tynesia Mitchell, Tierra Thomas and James Tibbs.  Celestine Elliott and Lawrence Elliott were
(and may still be) plaintiffs in another subset of Peller's clients, the "**Elliott Plaintiffs**," the
subject of this Court's earlier opinion in *In re Motors Liquidation Co.*, 514 B.R. 377 (Bankr.
S.D.N.Y. 2014) ("*Elliott*"), *leave to appeal denied*, No. 15–CV–772 (S.D.N.Y. May 18, 2015)
(Furman, J.).

[3]     There is a hint in Peller's papers that all of this was merely to preserve, for the Bledsoe Plaintiffs
subset of his clients, appellate rights with respect to the arguments he already made on behalf of
the others.  *See* Bledsoe Br. at 7-8.  If that is so, it is not clear to the Court why he needed to file a
25 page brief to do it.

09-50026-reg    Doc 13386    Filed 07/28/14    Entered 07/28/14 12:33:39    Main Document
Pg 64 of 83

<u>Discussion</u>

*1. Motions to Amend Findings*

Peller first moves, pursuant to Fed.R.Civ.P. 52(b) (as made applicable to adversary proceedings and contested matters by Fed.R.Bankr.P. 7052 and 9014), for amendments in the Court's Findings. But he identifies no fact that the Court confused or otherwise got wrong, nor any fact that belonged in the Findings but was not included.

Rather, Peller differs with conclusions of law and on mixed questions of fact and law on matters the Court already decided. For instance, he argues that "the Court's construction of the [Sale Order[4]] is untenable, and the Court should amend its findings to construe the [Sale Order] not to encompass Independent Claims."[5] As discussed below, contentions of that character are inappropriate even on a motion for reargument. They are especially inappropriate on a request for amended findings.[6]

---

[4]    Notwithstanding the requirements of the Court's Case Management Order ("Parties are not to use acronyms in briefs to describe names of parties or agencies or expressions, unless their meaning is obvious," Case Management Order No. 3 at ¶ 28), Peller repeatedly speaks in terms of the "SOI" and "MTE." In place of those cryptic acronyms, the Court has substituted words meaningful to a reader.

[5]    Bledsoe Br. at 19. Also, of course, Peller misconstrues the Court's ruling. Of course the Sale Order encompassed Independent Claims. It did so by its express terms. But this Court ruled that although the Sale Order did so, it should not have covered genuinely Independent Claims. Not content with this, Peller seems to argue that New GM—and more importantly, the Court—should accept his *ipse dixit* contentions that the claims as he proposes to press them (including, for example, those of Sharon Bledsoe, the victim of a pre-Sale accident before New GM came into existence) are Independent Claims. Contentions of that nature will be reviewed under the "No-Stay Pleading" mechanism crafted under the Judgment to which all of the other plaintiffs' counsel are adhering. Rule 52 relief is not the appropriate means to address contentions of this type.

[6]    Though there is authority for the proposition that motions to amend findings may be used to amend conclusions of law as well as those on facts--though only those whose error is "manifest"—*see National Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990), "Rule 52(b) is not intended to allow parties to rehash old arguments already considered and rejected by the trial court." *Id.*

-3-

## 2. *Motion to Alter or Amend Judgment*

Peller likewise moves for amendment of the Court's judgment.  He argues
(rearranging the arguments slightly, for purposes of analysis) that the Judgment should be
amended:

(1) to permit one of his clients, plaintiff Sharon Bledsoe—a pre-
sale accident victim—to assert "Independent Claims";[7]

(2) to exclude the Bledsoe Plaintiffs because the they did not
receive the constitutionally required notice in 2009, and the "Court's
construction of the [Sale Order] was not reasonably foreseeable";[8]

(3) to exclude successor liability claims based on New GM's
unlawful operation of Old GM assets;[9]

(4) to "exclude the Bledsoe Plaintiffs' Independent Claims from its
reach";[10]

(6) to be "limited to the construction of the [Sale Order]" and that
"the Motion to Enforce should be denied in all other respects,"[11] and

(5) to deny the Motion to Enforce in its entirety.[12]

But these arguments, to the extent the Bledsoe Plaintiffs did not already win on them,
repeat contentions the Court already rejected, are inappropriate for Rule 59 relief, or both.

---

[7]    Bledsoe Br. at 19.

[8]    *Id.* at 20.

[9]    *Id.* at 22.

[10]   *Id.* at 21.

[11]   *Id.* at 22.

[12]   *Id.* at 22.

-4-

The first contention is unpersuasive for both reasons.  Sharon Bledsoe, as Peller acknowledges,[13] was the victim of a pre-sale accident.  The Court is highly sympathetic to accident victims.  But she is no different than the other victims of pre-closing accidents, very ably represented by Designated Counsel for the Pre-Closing Accident Plaintiffs, whose arguments the Court fully considered but ultimately rejected.  She admittedly "asserts a 'successor liability' claim for pre-sale injury"[14]—which, for reasons explained at length in the *Decision*, could not be brought.  And Peller's efforts to characterize her claims as "Independent Claims" are spurious.  New GM did not exist at the time of her accident (as it did not at the time of the accidents involving other Pre-Closing Accident Plaintiffs), and was not responsible for the consideration of Ms. Bledsoe's claims, which were classic prepetition claims.  Thus New GM could be liable to her only under prohibited theories of successor liability or similar theories imposing liability on New GM for Old GM acts.  Peller has provided no basis for changing that conclusion now.  As one who was an accident victim before the sale, Sharon Bledsoe cannot, as the Court previously ruled, assert what are in substance successor liability claims "dressed up to look like something else." [15]

The second contention is unpersuasive as well.  The Court ruled that all of the Ignition Switch Plaintiffs failed to receive constitutionally requisite notice in the 363 Sale and claims allowance stages of Old GM's chapter 11 case, but that except for the ability to file claims against Old GM, and to assert Independent Claims, Ignition Switch Plaintiffs were not prejudiced by their lack of notice—a critical element of any claim for

---

[13]     *Id.* at 13, 21.

[14]     Bledsoe Br. at 13.

[15]     *Decision*, 529 B.R. at 528 (quoting *Burton v. Chrysler Grp., LLC* (*In re Old Carco*), 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013) (Bernstein, C.J.) ("***Old Carco***")).

relief.  And though certain plaintiffs, or their lawyers, might not have regarded the

Court's recent rulings (in favor of New GM in some respects, and in favor of Ignition

Switch Plaintiffs in others) as foreseeable, the Court's rulings, in its view, were entirely

foreseeable—at least to those who were familiar with bankruptcy law and had read the

relevant cases.  In any event, this contention raises no issues the Court has not considered

before.

The third contention, to the extent the Court can understand it (given the inherent

inconsistency between successor liability claims and those premised solely on the

acquirer's conduct), is likewise unpersuasive.  The Court considered, and rejected, the

argument that Plaintiffs—whoever they might be—could still bring successor liability

claims.  To the extent, if any, that "unlawful operation" of what were once Old GM assets

is an independent offense otherwise actionable under nonbankruptcy law—consistent

with the rulings in *Old Carco* and the *Decision* that it not be a successor liability claim

"dressed up to look like something else"[16]—the Bledsoe Plaintiffs (other than Sharon

---

[16]    *See Old Carco*, n.15 *supra*.  How that principle applies to specific allegations in specific
complaints is the subject of the various "No-Stay Pleadings," which have been and will be filed by
counsel in this case, and are not before the Court now.  They will be decided by this Court (or the
District Court, depending on the outcome of pending motions related to withdrawal of the
reference) in subsequent proceedings.

But what this Court had in mind when it previously ruled as it did should not be in doubt.  This
Court assumed that things New GM did, or knowledge New GM personnel had when acting for
New GM (even if those personnel acquired that knowledge while acting for Old GM) would be
fair game.  (For example, if such were actionable under applicable nonbankruptcy law, New GM
could still be held liable, consistent with this Court's ruling, for knowingly installing a part it
knew to be defective even if the part had been made by Old GM—just as New GM might be liable
for doing that if the part had been manufactured by another manufacturer in the Supplier Chain—
and likewise could be held liable for refusing to make a repair that New GM knew had to be made,
no matter when its personnel acquired the requisite knowledge.)  But this Court further believed
that New GM could not be held liable for anything Old GM did, and that claims for either
compensatory or punitive damages would have to be premised solely on New GM's knowledge
and conduct.  While mention (without anything materially more) of Old GM and of the 363 Sale
would be proper, and New GM would have to live with the knowledge its personnel had from the
earliest days they began to serve New GM, this Court assumed that in light of its rulings, courts
thereafter implementing them would be wary of reliance on facts ostensibly introduced as
"background" when they were in fact attempts to paint New GM with Old GM acts.

-6-

Bledsoe) can bring claims premised on that theory.[17]  But like all of the other Ignition Switch Plaintiffs, the Bledsoe Plaintiffs cannot bring any successor liability claims.

The fourth contention—that the Judgment should be amended to exclude the Bledsoe Plaintiffs' Independent Claims from its reach—has largely already been addressed.  To the extent the Bledsoe Plaintiffs' claims truly are Independent Claims, they already are carved out from the prohibitions in the Judgment.  But the Bledsoe Plaintiffs' *assertions* that claims they wish to bring are in fact Independent Claims do not, without New GM's agreement or a ruling by this or a higher Court, make them so.  In any event, the Judgment needs no amendment to reflect that reality.

The fifth contention is frivolous.  New GM is entitled to not just construction of the Sale Order but also its enforcement,[18] to the extent (which is considerable) that the Sale Order remains enforceable.  Peller's contentions here that the Court lacks the jurisdiction to do either are as frivolous now as they were when the Court rejected them in *Elliott* and another decision considering Peller's many contentions,[19] *Sesay*.[20]  And

---

[17]     Thus Peller's further assertion that this Court, once having heard Designated Counsel's excessive breadth argument (with which the Court ultimately agreed), nevertheless invoked "despotic power" to insulate New GM from its own allegedly wrongful acts, Bledsoe Br. at 8-9—effecting a "startling nullification of the laws of the United States and the States"—has no relation to what the Court actually held.  Peller attacks a straw man.

[18]     *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("***Travelers***") ("[T]he only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order. The answer here is easy: as the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret *and enforce* its own prior orders.") (emphasis added); *Elliott*, 514 B.R. at 379–380 & nn.4–9.

[19]     *In re Motors Liquidation Co.*, 522 B.R. 13, 20 ("***Sesay***"), *leave to appeal denied*, No. 15–CV–776 (S.D.N.Y. May 18, 2015) (Furman, J.).

[20]     *See Elliott*, 514 B.R. at 379–380 & nn.4–9 (this Court had jurisdiction to construe and enforce the Sale Order) (quoting *Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223 (2d Cir. 2002) ("***Petrie Retail***") ("A bankruptcy court retains post-confirmation jurisdiction to interpret *and enforce* its own orders,") (emphasis added); *Sesay*, 522 B.R. at 20 ("This contention, as I held in *Elliott* (and which also is now the law of the case), is frivolous. Federal judges, including bankruptcy judges, have subject matter jurisdiction to enforce their own orders.").

-7-

New GM is not seeking a second injunction; it seeks only to enforce the injunction the

Court issued six years ago.  Peller has cited no law, nor is the Court aware of any, that

says that New GM must invoke the word "contempt" (and provide the additional

safeguards to Peller a request for contempt would impose) to enforce an earlier order.[21]

Though he contended that the Sale Order did not properly cover the claims he

wanted to bring, Peller had notice of the Sale Order by no later than July 9, 2014, when

his co-counsel Daniel Hornal submitted Peller's letter to the Court[22]—more than two

months before when he filed *Bledsoe*, on September 19, 2014.  And when Peller

nevertheless filed *Bledsoe*, he did so notwithstanding what he knew the Sale Order to say.

Though the Court will entertain a motion for contempt if New GM wishes to bring one (a

matter as to which Peller is surprisingly cavalier), the Court will not require one as a

condition to the enforcement of the Sale Order, nor will it hold the other parties in this

case, with their respective desires to appeal and cross appeal, hostage to the completion

of proceedings for contempt.

The sixth contention likewise is no basis for relief.  Its premise for denying the

Motion to enforce in its entirety—that the Bledsoe Plaintiffs did not receive the requisite

notice and opportunity to be heard back in 2009—was addressed at great length in the

---

[21]    Peller lays out requirements for holding him liable for contempt under the law of the Second
Circuit, *see* Bledsoe Br. at 23 n.87, but the authorities he cites do not support the proposition that
it is necessary to place him in contempt to simply enforce the Court's order.  Though contempt is
available to enforce earlier orders, "and no further remedy is necessary," *Walls v. Wells Fargo
Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002), that does not mean that motions to simply enforce
an earlier order, without seeking contempt, are impermissible.  To the contrary, Bankruptcy
Judges enforce their earlier orders, without also placing people in contempt, with great frequency.

[22]    *See* ECF #12765, amended in respects not relevant here, ECF#12766 (7/9/2014 Peller Ltr.) at 2
(contending that the complaint he wanted to file "carefully avoids violation of the Sale Order");
*accord id.* at 4-5.

*Decision.*[23]  If Peller wants the Judgment overturned in its entirety, he should seek that by

appeal.  Rule 59(e) was adopted in order to clarify that the district court has the power to

rectify its own mistakes in the period immediately following the entry of judgment,[24] and

here the Court sees none.  "A Rule 59(e) motion to alter or amend a judgment may not be

used to relitigate the same matters already determined by the court."[25]

### 3.  Motions for Relief from Judgment

Peller then makes three contentions that seem to sound in relief under Rule 60(b),

based on contentions that this Court's actions were void.  He contends that:

(a) the Court has no power to order dismissal of or to "censor" the Bledsoe

Plaintiffs' pleadings pending before an Article III Court;[26]

(b) The Bledsoe Plaintiffs cannot be bound by the Judgment because they

"were precluded from participating in the 'threshold issues'";[27] and that

(c) the Bledsoe Plaintiffs are entitled to relief from the void provisions of

the [Sale Order]."[28]

Once again, however, his arguments, to the extent the Bledsoe Plaintiffs did not already

win on them, lack merit.

---

[23]     *See* 529 B.R. at 572-73.

[24]     *See* 12 *Moore's Federal Practice – Civil* § 59.30[1].

[25]     *Id.* § 59.30[6] & n.20.

[26]     *Id.* at 23.

[27]     *Id.* at 24.  In his motion, Peller seeks that same relief as an amended finding under Rule 7052,
asserting that the "record is clear" that the Bledsoe Plaintiffs had no opportunity to be heard.
Bledsoe Motion at 2.

[28]     Bledsoe Br. at 25.

*(a) "Censoring" the Bledsoe Plaintiffs*

The first point, apart from its theatrics, is simply contrary to the law.  Bankruptcy Judges, notwithstanding their appointment under Article I, most assuredly have the power to enjoin litigants from prosecuting claims in other courts—state or federal, and in the latter case, even those that might otherwise be heard by judges appointed under Article III—when such injunctions are otherwise within Bankruptcy Judges' jurisdiction and an appropriate use of their injunctive powers.[29]  (This is no different in effect, and not materially different in concept, from the operation of the automatic stay, implemented under section 362 of the Bankruptcy Code, which enjoins litigation in any forum, before any kind of judge.[30])  Peller recognizes that "[a]s the Court has stated, it unquestionably had *in rem* jurisdiction to issue the [Sale Order] under § 363."[31]

The Sale Order enjoined the prosecution of the litigation Peller commenced; the Court thereafter enforced that order, by staying his litigation;[32] and as *Travelers, Petrie*

---

[29]     *See*, *e.g Petrie Retail*, 304 F.3d at 225 (affirming three orders by Judge Gonzalez of this Court, thereafter affirmed by Judge Pauley of the District Court, enjoining a landlord from "commencing or continuing any action contingent upon the interpretation of lease provisions that were at issue in the administration of the debtors' estate"); *Adelphia Communications Corp. v. The America Channel, LLC (In re Adelphia Communications Corp.)*, 345 B.R. 69, 71 (Bankr. S.D.N.Y. 2006) (Gerber, J.) (enjoining The America Channel and its counsel from prosecuting certain of their antitrust claims in the United States District Court for the District of Minnesota), *motion for expedited appeal denied*, No. 1:06-cv-05137-BSJ (S.D.N.Y. Jul. 25, 2006) (Jones, D.J.) (denying expedited appeal, describing Bankruptcy Court's opinion below as "thorough and well-reasoned").

[30]     Peller seems to recognize this.  He notes that under the automatic stay provisions of section 362, the Court acquires the power to enjoin ongoing civil proceedings, "even those in superior Article III courts."  Bledsoe Br. at 9.

[31]     Bledsoe Br. at 11.  Peller also concedes, in a way, that the Court "also *may* have inherent power to construe and enforce its own orders," *id.* (emphasis added), as if the Supreme Court's decision in *Travelers,* which says that the Bankruptcy Court "plainly" has that power, leaves any doubt as to that.  *See* n.18, *supra*.

[32]     The Court has always believed that just as it had the power to enjoin the prosecution of litigation under the Sale Order, it had the power to order the dismissal of litigation brought in violation of it. But to the extent that proposition is debatable, the Court here does not have to decide it, because, for reasons stated in the *Form of Judgment Decision, see* 531 B.R. at 357-58, it merely stayed the offending litigation and did not dismiss it.

*Retail* and the other cases make clear, this Court had the power to do so.  It does not

matter that the litigation Peller brought, in violation of the Sale Order, was before an

Article III judge.

Nor was Peller "censored" in any way by this Court, other than by prohibiting

him from prosecuting litigation he had already been enjoined from prosecuting.  Peller is

not "censored" from saying anything he wants on appeal.

*(b) Asserted Inability to Be Heard*

Peller's second point, asserting an inability to be heard on the Threshold Issues, is

contradicted by the record in this case.  The Court finds, as a fact, to the contrary.  The

Court never limited the opportunity to be heard on the issues before it to Designated

Counsel or anyone else.  All counsel for Plaintiffs whose complaints were the subject of

the Motions to Enforce, including Peller, had the opportunity to file a brief and (assuming

they had filed a brief) to present oral argument on the Threshold Issues.

New GM filed the Motion to Enforce on April 21, 2014.  It was obvious from the

outset that a very large number of Plaintiffs' lawyers would oppose it.  On that same day,

New GM counsel Arthur Steinberg wrote the Court seeking a conference on the

management of the Motion, noting that as of that point in time, there were "currently over

50 Ignition Switches pending across the country (with new actions filed each week)," and

that for the most part, the Plaintiffs in those actions were not represented by the same

counsel.[33]

Also on the same day, the first of the Plaintiffs' counsel to be heard on this matter

(Jonathan Flaxer, Esq., on behalf of the Groman Plaintiffs) filed an adversary complaint in

---

[33]    ECF #12622 at 2.  By the time the Court issued the *Decision*, the number of affected actions had
increased to about 140.

-11-

this Court seeking a declaration that his clients should not be bound by the Sale Order.

The following day, April 22, Flaxer wrote his own letter to the Court, *inter alia* agreeing

that the status conference New GM requested "would streamline the proceedings," and

also stating that "it would serve the interests of economy and efficiency to coordinate [his

complaint] with the Motion to Enforce for discovery and other scheduling purposes."[34]

Later that day—considering it obvious that coordinated management of the issues

to be determined was essential[35]—the Court issued an Endorsed Order agreeing to hold

the requested status conference, on-the-record, on May 2, 2014, and directing New GM to

send out notice of the conference. The Court stated, *inter alia*,

> No substantive matters will be decided at the
> conference, nor will evidence be taken. The Court
> understands the purpose of the conference to be
> determining how best to procedurally address any
> contentions parties wish to make. The Court
> expects to then limit its consideration to matters
> such as ascertaining what must be determined,
> when, and how—*and how the positions of many
> who may have identical or similar positions may be
> presented without undue duplication and expense.*
> Matters then to be addressed will include (but not
> necessarily be limited to) establishing an
> appropriate briefing schedule and fixing a date and
> time for hearing.[36]

---

[34]    ECF #12626 at 2.

[35]    The Court had dealt with case management issues of this character before. When Old GM's
motion for approval of the 363 Sale was heard in 2009, it engendered about 850 objections. *See In
re General Motors Corp.*, 407 B.R. 463, 520 (Bankr. S.D.N.Y. 2009) (the "**Sale Opinion**"), *stay
pending appeal denied*, 2009 WL 2033079 (S.D.N.Y. Jul. 9, 2009), *appeal dismissed and aff'd sub
nom Campbell v. General Motors Corp.*, 428 B.R. 43 (S.D.N.Y.2010); *Parker v. General Motors
Corp.*, 430 B.R. 65 (S.D.N.Y.2010), *appeal dismissed*, No. 10–4882–bk (2d Cir. July 28, 2011)
(*per curiam*), *cert. denied*, --- U.S. ---, 132 S.Ct. 1023 (2012). There the Court considered the
briefs of anybody who filed one, but to keep the proceedings manageable and avoid duplication,
limited oral argument to designated representatives for each kind of objection, with others being
heard orally if, but only if, they had something different to say. The same procedure was utilized
here.

[36]    ECF #12627 (emphasis added).

On May 1, 2014, just before the upcoming May 2 conference, Edward Weisfelner, Esq., a bankruptcy lawyer who would later become one of the Designated Counsel, wrote the Court advising, *inter alia*, that his firm, along with two others, had been designated by a majority of the Plaintiffs to meet with New GM to present Plaintiffs' views at the upcoming conference. Along with presenting substantive thoughts as to issues that should be teed up for judicial determination and how they should be addressed, Weisfelner stated that he and others had "worked to coordinate efforts in the spirit of Your Honor's April 22, 2014 scheduling order and case management orders in this case."[37]

The Court then held the first conference in this matter on that May 2 date, focusing on its desire, to avoid the chaos that otherwise would result, to hear from many affected parties in a coordinated way, with skilled bankruptcy litigators making the arguments for Plaintiffs in the first instance, with others having the right to supplement them. But while believing that the Plaintiffs' lead arguments should be presented by a small number of counsel with bankruptcy litigation expertise, the Court emphasized its intent that any nonrepetitive points would still be heard:

> I don't want repetition, and that includes making the same point in different ways. I need to hear from anybody who thinks those three firms [three of the four who emerged as Designated Counsel] aren't good enough [to say] why that's so, or conversely why they're not raising issues that need to be addressed. *That's not to say that anybody who thinks up anything those firms couldn't can't be heard,* but I need to know why and what's the problem.[38]

---

[37]     ECF #12677 at 3.

[38]     May 2, 2014 Conf. Tr. (No. 1:14-AP-1929, ECF #16), at 13:1-13:8 (emphasis added).

By the end of the May 2, 2014 Conference, the Court scheduled a follow-up
conference for July 2, and issued a number of directives for matters to be accomplished
before that time, to be thereafter implemented in a written scheduling order.  The Court
directed those who had been heard at the May 2, 2014 Conference to meet and confer and
thereafter present an agreed-on order to embody the matters on which the Court had
ruled, along with further details.

Those lawyers did so.  But while the Court largely agreed with the proposed form
of order they had submitted, the Court added several paragraphs (shown by blackline) to
underscore its desire to ensure that other voices could be heard.  One such paragraph
expressly confirmed the Court's willingness to allow others to be heard, so long as they
did so in a nonrepetitive way.  The resulting order (the "**May 2014 Procedures Order**")
was ultimately entered on May 16, 2014.  The paragraphs the Court added provided, in
relevant part:

> [T]o the extent reasonably practicable, Designated
> Counsel shall consult and coordinate with other
> bankruptcy counsel who have filed a notice of
> appearance on behalf of any Plaintiff(s) in
> connection with the matters set forth in paragraphs
> 2, 3 and 6 above.
>
> *[N]othing in this Order is intended to or shall
> preclude any other Plaintiff's counsel from taking a
> position in connection with any of the matters set
> forth in paragraphs 2, 3 and 6 above,* PROVIDED
> that any other counsel who wishes to be heard
> *orally* with respect to such position at the
> Conference on July 2 shall submit and
> electronically file, no later than noon on July 1, a
> letter to the Court (with copies to all Identified
> Parties) summarizing the points he or she will wish
> to make; and PROVIDED FURTHER that any

counsel who has failed to do so will not be heard
*orally* at the July 2 Conference.[39]

By the time of the July 2 conference, there were 87 actions (about 83 of which
were class actions) pending against New GM, most of which were consolidated for
pretrial proceedings before Judge Furman in the MDL.  According to a letter he sent to
the Court on July 9,[40] Peller was retained by the first of his clients (Celestine and
Lawrence Elliott, who had initially filed a *pro se* complaint in the District of Columbia)
on June 17.   Peller's co-counsel Daniel Hornal was heard at length, on behalf of the
Elliotts, at the July 2 Conference,[41] seeking relief from a No-Stay Stipulation the Elliotts
had entered before they had counsel.[42]

By email dated June 30, 2014, Peller's co-counsel Hornal (copying Peller)
submitted the first of many emails, letters, motions, briefs, and other filings in this Court,
all of which (except for notices of appeal and motions for leave to appeal) were
considered by the Court.  Peller personally submitted his first on July 3, 2014, cosigning
a letter with his co-counsel Hornal at that time.[43] All in all, Peller and Hornal made more
than 20 substantive filings (not counting notices of appeal and motions for leave to

---

[39]    May 2014 Scheduling Order at 6 (emphasis added).  The identified paragraphs were matters as to
which parties were to meet and confer, or otherwise accomplish specified tasks, in advance of the
next conference on July 2.  This order, like other Court directives that preceded and followed it,
exemplifies the distinction between counsel's ability to argue orally, on the one hand, and to file
briefs and be heard by letter, on the other.

[40]    ECF #12763.

[41]    *See* July 2, 2014 Conf. Tr. (ECF #13001) at 7, 98-114.

[42]    The Court then learned that Hornal and Peller wanted to convert the Elliotts' *pro se* complaint into
not just a more intelligible one but also a class action.  *See id.* at 104.  Hornal also admitted that
"we are soliciting clients for other cases." *Id.* at 107.  The Court granted Hornal's request for relief
from the stipulation to permit the filing of an amended complaint to cure the Elliotts' pro se
deficiencies, but for them alone.  The Elliott action was thereafter followed by the *Sesay* and
*Bledsoe* actions, each a class action.

[43]    ECF #12761.  Peller's first solo submission was on July 9.  *See* ECF ##12765, 12766.

appeal),[44] all of which, no matter how frivolous, were considered by the Court; seven of

which resulted in substantive[45] orders of the Court;[46] and three of which were addressed

in full written opinions (or parts of larger opinions) by the Court.[47]

---

[44]    ECF #12737 (Hornal 6/30/2014 email and Endorsed Order on it re Elliott Plaintiffs); ECF #12761 (7/3/2014 Ltr. from Peller and Hornal on behalf of Elliott Plaintiffs seeking reconsideration of rulings at 7/2/2014 hearing); ECF ##12765, 12766 (7/9/2014 Ltr. by Peller on behalf of Elliott Plaintiffs seeking vacatur or suspension of Court's 7/8/2014 order); ECF #12769 (7/11/2014 Ltr. by Hornal on behalf of Elliott Plaintiffs to correct assertedly erroneous statements by New GM's counsel); ECF #12772 (7/11/2014 No-Stay Pleading and Motion and Brief Seeking Dismissal signed by Hornal on behalf of Elliott Plaintiffs);

Also, ECF #12773 (7/12/2014 Declaration by Peller and other documents re Motion Seeking Dismissal on behalf of Elliott Plaintiffs); ECF #12774 (7/12/2014 Corrected No Stay Pleading and Motion and Brief Seeking Dismissal signed by Hornal on behalf of Elliott Plaintiffs); ECF #12775 (7/14/2014 Notice of Appeal on behalf of Elliott Plaintiffs signed by Hornal from orders of 6/30/2014, 7/8/2014, and 7/11/2014); ECF #12777 (7/18/2014 Notice signed by Hornal of 7/16/2014 order in District of Columbia with respect to the Elliott Plaintiffs); ECF #12778 (7/18/2014 Notice of Withdrawal of Appeal signed by Hornal on behalf of Elliott Plaintiffs);

Also, ECF #12783 (7/23/2014 Ltr. by Peller on behalf of Elliott Plaintiffs asking that his 7/12/2014 motion (ECF #12773) be treated as submitted and granted forthwith); ECF #12784 (7/23/2014 Exhs. to Peller 7/23/2014 Ltr., including 7/21/2014 Peller email, all on behalf of Elliott Plaintiffs); ECF #12787 (7/28/2014 Ltr. by Peller, on behalf of Elliott Plaintiffs, re subject matter jurisdiction points on their Motion to Dismiss); ECF #12788 (7/28/2014 Corrected Ltr. by Peller, on behalf of Elliott Plaintiffs, re subject matter jurisdiction points on their Motion to Dismiss); ECF #12821 (8/8/2014 Ltr. by Peller, on behalf of Sesay Plaintiffs, re subject matter jurisdiction points as to their planned motion to dismiss);

Also, ECF #12830 (8/12/2014 Ltr. by Peller, on behalf of Sesay Plaintiffs, re their pending motions); ECF #12822 (8/8/2014 Notice of Settlement, on behalf of Elliott Plaintiffs, re their counter-order); ECF #12828 (8/12/2014 Supplemental Notice of Settlement of Counter-Order filed by Peller on behalf of Elliott Plaintiffs); ECF #12839 (8/13/2014 Notice of Appeal filed by Peller on behalf of Elliott Plaintiffs); ECF #12870 (8/22/2014 Corrected No-Stay Pleading and Motion Seeking Dismissal and Abstention signed by Peller on behalf of Sesay Plaintiffs);

Also, ECF #12871 (8/25/2014 Motion and Brief Seeking Amendment of Judgment filed by Peller on behalf of Elliott Plaintiffs); ECF #12872 (8/25/2014 Motion and Brief Seeking Abstention filed by Peller on behalf of Elliott Plaintiffs); ECF #12883 (9/5/2014 Amended No-Stay Pleading, Motion and Brief Seeking Dismissal and Abstention filed by Peller on behalf of Sesay Plaintiffs); ECF #12948 (10/13/2014 Brief on No-Stay Pleading filed by Peller on behalf of Bledsoe Plaintiffs); ECF #13002 (11/21/2014 Renewed Notice of Appeal filed by Peller on behalf of Elliott Plaintiffs);

Also, ECF #13004 (11/24/2014 Notice of Appeal by Peller on behalf of Sesay Plaintiffs); ECF #13005 (11/24/2014 Motion for Leave to Appeal filed by Peller on behalf of Elliott Plaintiffs); and ECF #13007 (11/24/2014 Motion for Leave to Appeal filed by Peller on behalf of Sesay Plaintiffs).

[45]    Not counting, *e.g.*, orders approving stipulations, granting extensions of time, and granting admission to the Court *pro hac vice*.

[46]    *See* ECF #12792 (re request to "grant forthwith" motion, on behalf of the Elliott Plaintiffs, to dismiss New GM Motion to Enforce for lack of subject matter jurisdiction); ECF #12834 (re Elliott Plaintiffs' No-Stay Pleading); ECF #12835 (re various Sesay Plaintiffs' requests); ECF

Following the Court's conference of July 2, 2014, it issued another scheduling
order (the "**July 11 Order**"),[48] implementing the July 2 conference's rulings.  The
Court's order was entered on July 11, 2014 (not on July 7, as Peller asserts[49]), but more
importantly the July 11 Order (which Peller does not quote) did not "restrict[]
participation in the proceedings to 'counsel for the Identified Parties,'" as Peller likewise
asserts.  In fact, while it is plain that the Court contemplated receiving briefs from most
or all of the Identified Parties (Designated Counsel, Flaxer, the GUC Trust, Unitholders,
and New GM), and set the dates by which each of their briefs were due, that is as far as it
went.  As nobody had requested that the July 11 Order address the issue, it was wholly
silent on whether others could file briefs as well.  It certainly did not prohibit Peller (or
anyone else) from doing so.

After a conference on August 18, 2014, dates for the submission of briefs on the
Motion to Enforce were pushed back, principally to take into account the Plaintiffs' filing
of an amended complaint in the MDL.[50]  At that conference, after the most active players
had spoken (principally about the Threshold Issues to be decided, and when briefs should
be due), the Court asked those in the Courtroom, "[o]thers want to be heard?"[51]  One
attorney spoke up, but not on whether he or others could file briefs.  After his issues were

---

#12836 (on Elliott Plaintiffs' Supplemental Notice of Settlement); ECF #12991 (re Bledsoe
Plaintiffs' No-Stay Pleading); ECF #12993 (re Elliott Plaintiffs' request for reargument); ECF
#12995 (re Sesay Plaintiffs' No-Stay Pleading).

[47]   *See* ECF #12815 (*Elliott*); #12989 (*Sesay*); #13162 (*Form of Judgment Decision*).  The Court also
issued a fourth decision on matters raised by Peller, denying, by Endorsed Order ("**Bledsoe
Endorsed Order**"), similar arguments he made on behalf of the Bledsoe Plaintiffs, citing, *inter
alia*, the Court's earlier rulings in *Elliott* and *Sesay*.  *See* ECF #12991.

[48]   *See* ECF #12770.

[49]   Bledsoe Br. at 6.

[50]   *See* Tr. of Hrg. of 8/18/2014, ECF #12899.

[51]   *Id.* at 73:25.

-17-

addressed, the Court then asked, "[a]nything else?"  This time, nobody spoke, on whether

others could file briefs or otherwise.[52]

On August 21, 2014, New GM counsel Arthur Steinberg wrote the Court,

advising that counsel for the Identified Parties had met and conferred on an appropriate

briefing schedule, and proposed specified modifications to the briefing schedule.[53]

Steinberg stated, *inter alia*, that:

> As previously agreed, Designated Counsel, to the
> extent reasonably practicable, shall consult and
> coordinate with other counsel who have filed a
> notice of appearance on behalf of any Plaintiff(s)
> and solicit input and/or comments to Designated
> Counsel's proposed response to the New GM
> Opening Brief and proposed response to the
> Unitholder/GUC Trust Opening Brief (including
> providing counsel drafts of Designated Counsel's
> briefs no less than ten days prior their submission
> deadline as set forth above).

But neither Steinberg nor the others asked that the Court prohibit other counsel be from

filing briefs on their own, and the Court, which on August 22  issued an Endorsed Order

on Steinberg's letter, simply saying "Approved,"[54] never issued such a prohibition.

Under the revised schedule, briefs in opposition to the Motion to Enforce were

due on December 16, 2014, by which time Peller had made nearly two dozen filings on

behalf of each of his three client groups.  Opposing briefs were filed on or before that

date by the GUC Trust and Unit Holders, Designated Counsel for the Ignition Switch

Plaintiffs, Designated Counsel for the Pre-Closing Accident Plaintiffs, and one additional

---

[52]    *Id.* at 90:22.

[53]    ECF #12867.

[54]    ECF #12869.

counsel, Flaxer, for the Groman Plaintiffs.[55]  Peller did not submit a brief on the

Threshold Issues, on behalf of any of his client groups, timely or otherwise.  Nor did he

ask the Court if he could.

On January 13, 2015, with oral argument on the Threshold Issues coming up, the

Court entered an "Administrative Order re Oral Argument and Related Matters" (the

"**Oral Argument Administrative Order**").[56]  After requiring New GM, Designated

Counsel and GUC Trust counsel to confer and submit a joint recommendation to the

Court on a sequence for oral argument and time allocations for each constituency, the

Court's order provided, *inter alia*:

> Counsel other than New GM counsel, Designated
> Counsel and GUC Trust counsel are to consult with
> counsel for the entity most aligned with their
> interests to ascertain whether their oral argument
> needs can be satisfied by counsel for the most
> closely aligned entity.  If, after such consultation,
> any other party wishes oral argument, the party will
> be heard orally only if (a) that party has filed a brief
> (other than an unqualified joinder) and (b) writes
> the Court, no later than noon on Tuesday, January
> 27, (i) requesting time for oral argument; (ii) stating
> the amount of time requested; and, most
> importantly, (iii) stating the reasons why argument
> by one of the most closely aligned counsel would be
> insufficient—it being remembered that the Court
> will have read all briefs.[57]

Only Flaxer (on behalf of the Groman Plaintiffs) made a request to be heard

orally.  His request was granted.  Peller had not filed a brief, and under the Oral

Argument Administrative Order, he thus was not entitled to ask for oral argument.  But in

any event, he did not then ask to be heard orally either.

---

[55]     *See* ECF ##13021, 13025, 13028, 13030.

[56]     ECF #13044.

[57]     Oral Argument Administrative Order at ¶ 3.

The fact that Peller ultimately decided not to file a brief, or request oral argument in connection with the hearing on the Four Threshold Issues (on behalf of any of his clients, the Elliott Plaintiffs, the Sesay Plaintiffs, or the Bledsoe Plaintiffs), was his choice to make.  But that does not mean that he was denied the chance to be heard.

In the *Form of Judgment Decision*, the Court considered Peller's contention, on behalf of his various clients, that they should not be bound by the Judgment.  The Court rejected it:

> He [Peller] further argues, on behalf of the Peller Plaintiffs, that the Court's rulings in the Decision are not binding on them. The Court disagrees.  The Peller Plaintiffs had more than ample opportunity to raise contentions Designated Counsel did not raise. And though Mr. Peller's filings were so numerous and frivolous that the Court warned him of the entry of a *Martin–Trigona* order, he still had the right under the Court's orders establishing the mechanisms for determination of the Motion to Enforce, to make any points others had not.[58]

For that matter, Peller even had the ability to make any points others *had* made, so long as he did so in writing.  But he chose to put his energy into a variety of frivolous points, addressed in *Elliott*, *Sesay*, and the *Bledsoe* Endorsed Order,[59] rather than the Threshold Issues.  Based on the Court's now very extensive knowledge of the issues it addressed in the *Decision*, the Court cannot see any points that one or another of Designated Counsel, Flaxer, or the GUC Trust failed to make.  But if Peller thought there were such (, he could have raised them.

---

[58]     531 B.R. at 357.

[59]     *See* n.47 *supra*.

    *(c) Asserted Voidness of the Sale Order*

    The third point (contending that the Court lacked the subject matter jurisdiction to issue the Judgment enforcing the Sale Order; that the Court enforced the Sale Order against the Bledsoe Plaintiffs in violation of their due process rights; and that the Bledsoe Plaintiffs were denied the opportunity to participate on the threshold issues) merely rehashes points Peller made before, in *Elliott*, *Sesay*, and here. It is rejected for the reasons previously stated.

*4. Motions for Reargument*

    Finally, in reliance on S.D.N.Y. Local Bankruptcy Rule 9023-1, Peller seeks "reargument regarding whether the Bledsoe Plaintiffs may be bound by the [Sale Order] consistent with the Due Process Clause, and an amendment of the Judgment to exempt each of their independent, non-derivative claims from its reach."[60] He also contends that the Court committed "manifest error" by not understanding the difference between *in rem* and *in personam* jurisdiction. Reargument too is denied.

    To be entitled to reargument, the moving party "must demonstrate that the court overlooked controlling decisions or factual matters 'that might materially have influenced its earlier decision.'"[61] "The rule permitting reargument must be narrowly construed to avoid repetitive arguments on issues that the court has already fully considered."[62]

    The first half of the first contention—that the Bledsoe Plaintiffs could not be bound by the Sale Order—was extensively addressed in the *Decision*. Peller has brought

---

[60]    Bledsoe Motion at 2.

[61]    *In re Stylesite Marketing, Inc.*, 2001 WL 13212, at *1 (Bankr. S.D.N.Y. 2001) (Bernstein, C.J.) (quoting *Anglo–American Ins. Group, P.L.C. v. Calfed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996)).

[62]    *Id.*

forward no points that the Court then overlooked.  The second half of the first

contention—that the Court needs "to exempt each of [the Bledsoe Plaintiffs']

independent, non-derivative claims from [the Judgment's reach]" has been addressed

above.[63]  The Bledsoe Plaintiffs' Independent Claims, like all other Plaintiffs', *already*

*are* exempt from a continuing bar under the Judgment—to the extent they genuinely are

Independent Claims.  But a motion for reargument is not the means to test whether they

are.

      Finally, Peller's perception that the Court fails to understand the difference

between *in rem* and *in personam* jurisdiction, aside from being incorrect in its premise, is

of no moment.  He devotes a full 10 pages of his brief to discussion of the distinction

between *in rem* and *in personam* claims.  But the reason for that lengthy discussion is

unclear.  If it is to argue that successor liability claims can still be asserted,

notwithstanding the Court's extensive analysis and conclusions to the contrary,[64] that is

not a matter the Court overlooked; it is a matter for appeal.  If, as seems to be the case, it

is to suggest that genuinely Independent Claims can still be asserted, he already has won

on that, so long as he limits his future claims to genuinely Independent Claims.  Here too,

there is no basis for reargument or reconsideration.

      The Court will not lengthen this decision further by specifically addressing more

of Peller's remarks in these motions. The Court has canvassed the submission in its

entirety and satisfied itself that no material points other than those it has specifically

addressed were raised and have any merit.

---

[63]    *See*, *e.g.*, page 7 above.

[64]    *See Decision*, 529 B.R. at 566-68.

The motions are denied.


SO ORDERED.


Dated: New York, New York          _s/Robert E. Gerber_____
       July 22, 2015               United States Bankruptcy Judge