# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re

                                  Ch. 11 Case No. 09-50026 (REG)

MOTORS LIQUIDATION COMPANY, et al.,    (Jointly Administered)

             Debtors.

-------------------------------------------------------x

IGNITION SWITCH PLAINTIFFS And
CERTAIN NON-IGNITION SWITCH
PLAINTIFFS,

             Plaintiffs,           Case No. 15-cv-05056 (JMF)

      -versus-

GENERAL MOTORS LLC,

             Defendant.

-------------------------------------------------------x

**MEMORANDUM OF LAW BY WILMINGTON TRUST COMPANY, AS GUC TRUST
ADMINISTRATOR AND TRUSTEE, AND THE PARTICIPATING UNITHOLDERS IN
OPPOSITION TO MOTION TO WITHDRAW THE REFERENCE WITH RESPECT
TO THE NON-IGNITION SWITCH PLAINTIFFS' GUC TRUST ASSET PLEADING**

GIBSON, DUNN & CRUTCHER LLP
MATTHEW J. WILLIAMS
LISA H. RUBIN
KEITH R. MARTORANA
200 Park Avenue
New York, NY 10166-0193
Telephone:    212.351.4000
Facsimile:     212.351.4035

*Attorneys for Motors Liquidation Company
GUC Trust Administrator*

AKIN GUMP STRAUSS HAUER & FELD
LLP
DANIEL H. GOLDEN
DEBORAH J. NEWMAN
NAOMI MOSS
One Bryant Park
New York, NY 10036
Telephone:    212.872.1000
Facsimile:     212.872.1002

*Attorneys for the Participating Unitholders*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................... 3

    A.    The 363 Sale and Motions to Enforce ................................................ 3

    B.    The Multidistrict Litigation Pending Against New GM ....................... 4

    C.    The Threshold Issues Decision ........................................................... 5

    D.    The Form of Judgment Decision ......................................................... 6

    E.    The Bankruptcy Court's Judgment with Respect to the April 15 Decision .......... 7

    F.    Designated Counsel's Current Pleadings ............................................. 8

ARGUMENT ......................................................................................................... 9

    A.    Plaintiffs' Withdrawal Motion as it Applies to the Reservation of Rights is Not Ripe for Adjudication ............................................................................. 9

    B.    Mandatory Withdrawal of the Reference Is Not Required .................. 10

    C.    Permissive Withdrawal of the Reference Is Inappropriate .................. 12

            1.    Legal Standard ................................................................... 12

            2.    The Adjudication of the Reservation of Rights Is a Core Matter, and the Bankruptcy Court Has Authority to Adjudicate It ............... 13

            3.    Plaintiffs Are Forum Shopping ........................................... 15

            4.    Denying Withdrawal of the Reference Will Promote Judicial Efficiency and Will Reduce Delay and Costs ................... 16

            5.    The Claims at Issue Are Equitable ...................................... 17

CONCLUSION ...................................................................................................... 18

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | *OMNIBUS RESPONSE OF WILMINGTON TRUST COMPANY, AS GUC TRUST ADMINISTRATOR AND TRUSTEE, AND THE PARTICIPATING UNITHOLDERS TO (A) THE NON-IGNITION SWITCH PLAINTIFFS' GUC TRUST ASSET PLEADING AND (B) CERTAIN NON-IGNITION SWITCH PRE-CLOSING ACCIDENT PLAINTIFFS' AMENDED RESERVATION OF RIGHTS*, filed on August 7, 2015 in Case No. 09-50026 (Bankr. S.D.N.Y.) [Bankr. Dkt. No. 13351]. |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. Simpson,*
    613 F.3d 346 (2d Cir. 2010) ............................................................................. 14

*In re Burger Boys, Inc.,*
    94 F.3d 755 (2d Cir. 1996) ............................................................................... 13

*In re Charter Commcn's,*
    No. 09-11435, 2010 WL 502764 (Bankr. S.D.N.Y. Feb. 8, 2010) ......................... 14

*In re Chateaugay Corp.,*
    104 B.R. 622 (S.D.N.Y. 1989) ............................................................................ 9

*In re Chateaugay Corp.,*
    193 B.R. 669 (S.D.N.Y. 1996) .......................................................................... 12

*In re Connie's Trading Corp.,*
    No. 14-cv-376 (LAK) (GWG), 2014 WL 1813751 (S.D.N.Y. May 8, 2014)......... 10

*In re Enron Corp.,*
    318 B.R. 273 (S.D.N.Y. 2004) .......................................................................... 10

*In re Extended Stay, Inc.,*
    466 B.R. 188 (S.D.N.Y. 2011) .......................................................................... 11

*In re Ionosphere Clubs, Inc.,*
    922 F.2d 984 (2d Cir. 1990) ............................................................................ 10

*In re Lehman Bros. Holdings Inc.,*
    No. 11–cv–6194 (DAB), 2015 WL 3778512 (S.D.N.Y. June 15, 2015) ............... 12

*In re Motors Liquidation Co.,*
    529 B.R. 510 (Bankr. S.D.N.Y. 2015)........................................................ 1, 5, 6, 20

*In re Motors Liquidation Co.,* 531 B.R. 354 (Bankr. S.D.N.Y. 2015) ...................................... 6, 7

*In re Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures),*
    4 F.3d 1095 (2d Cir. 1993) ............................................................................. 13

*In re Quebecor World (USA),*
    12-cv-6614(JMF), 2012 WL 5289919 (S.D.N.Y. Oct. 26, 2012) ......................... 13

*In re Residential Capital, LLC,*
    519 B.R. 593 (S.D.N.Y. 2014) ............................................................... 13, 16, 17

*In re Sheldrake Lofts LLC*,
    14-cv-4274(NSR), 2014 WL 6450340 (Bankr. S.D.N.Y. Nov. 15, 2014) ............................. 18

*In re Willis Roof Consulting, Inc.*,
    No. 10-CV-01682-GMN-VCF, 2012 WL 3011985 (D. Nev. July 23, 2012) ........................... 9

*Lehman Brothers Holdings Inc. v. Intel Corp. (In re Lehman Bros. Holdings Inc.)*,
    18 F. Supp. 3d 553 (S.D.N.Y. May 10, 2014) ........................................................................ 12

*Schneider v. Riddick (In re Formica Corp.)*,
    305 B.R. 147 (S.D.N.Y. 2004) ............................................................................................... 16

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009) ................................................................................................................ 14

*Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*,
    201 B.R. 635 (S.D.N.Y. 1996) ............................................................................................... 15

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    467 B.R. 712 (S.D.N.Y. 2012) ............................................................................................... 15

*Wellness Int'l Network, Ltd. v. Sharif*,
    135 S. Ct. 1932 (2015) ............................................................................................................ 14

**Statutes**

28 U.S.C. § 157 ..................................................................................................... 3, 10, 12, 14

Wilmington Trust Company, not in its individual capacity and solely in its capacity as
trust administrator and trustee (the "**GUC Trust Administrator**") of the Motors Liquidation
Company GUC Trust (the "**GUC Trust**"), as established under the Debtors' Second Amended
Joint Chapter 11 Plan dated as of March 18, 2011 [Bankr. Case No. 09-50026, Dkt. No. 9836]
(as confirmed, the "**Plan**")[1] of the above-captioned post-effective date debtors, and certain
holders of beneficial units of the GUC Trust (the "**Participating Unitholders**") submit this
Memorandum of Law in opposition to the motion of Designated Counsel (the "**Withdrawal
Motion**") seeking withdrawal of the reference with regard to the Non-Ignition Switch Plaintiffs'
(as defined below) GUC Trust Asset Pleading.[2]  In support of the foregoing, the GUC Trust
Administrator and the Participating Unitholders respectfully represent as follows:

## PRELIMINARY STATEMENT

More than four years have passed since the confirmation of Old GM's Plan.  Since that
time the GUC Trust has distributed approximately 92% of its assets to creditors of the Old GM
bankruptcy estate and the holders of GUC Trust Units (the "**Unitholders**").  As recognized by
the Bankruptcy Court in its April 15 Decision, such Unitholders made investment decisions in
reliance on the procedures established under the Plan and based on their understanding that new
claims against the Old GM estate "could only go down."  *In re Motors Liquidation Co.*, 529 B.R.
510, 587 (Bankr. S.D.N.Y. 2015).  In so finding, the Bankruptcy Court held that under the

---

[1]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan, the *Decision on Motion to Enforce Sale Order* issued on April 15, 2015, published as *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015) (the "**April 15 Decision**"), or the June 1, 2015 *Judgment* [Bankr. Case No. 09-50026, Dkt. No. 13177] (the "**Judgment**"), as applicable.

[2]   While the Withdrawal Motion was filed on an omnibus basis and also applies to the Ignition Switch Plaintiffs' No Strike Pleading with regard to the Second Amended Consolidated Complaint and the Non-Ignition Switch Plaintiffs' Objection Pleading with regard to the Second Amended Consolidated Complaint, the GUC Trust Administrator and Participating Unitholders herein respond only to the portion of the Withdrawal Motion addressing the Non-Ignition Switch Plaintiffs' GUC Trust Asset Pleading and take no position with respect to the remaining aspects of the Withdrawal Motion.

doctrine of equitable mootness any previously unfiled claims relating to the Ignition Switch

Defect could not be satisfied with the assets of the GUC Trust (the "**Equitable Mootness**

**Holding**").  While the April 15 Decision was not directly applicable to the claims of the Non-

Ignition Switch Plaintiffs, in an attempt to balance the Non-Ignition Switch Plaintiffs' rights to

be heard with the interests of the GUC Trust and its Unitholders in finality and closure, the

Bankruptcy Court afforded the Non-Ignition Switch Plaintiffs a limited time (17 business days)

to file a pleading (a "**GUC Trust Asset Pleading**") setting forth a good faith basis as to why the

Equitable Mootness Holding should not apply to their claims.

Disregarding the express terms of the Bankruptcy Court's directive, the Non-Ignition

Switch Plaintiffs' purported "GUC Trust Asset Pleading" constitutes a mere reservation of rights

(the "**Reservation of Rights**"), asserting solely that adjudication of the applicability of the April

15 Decision to the Non-Ignition Switch Plaintiffs is premature and should be deferred.[3]  The

Non-Ignition Switch Plaintiffs made no attempt to distinguish their claims from those of the

Ignition Switch Plaintiffs as required by the Bankruptcy Court.[4]

---

[3]    This Reservation of Rights was set forth in two pages as part of Designated Counsel's Omnibus Judgment
Pleading (defined below) dated June 24, 2015 [Bankr. Case No. 09-50026, Dkt. No. 13247].
Contemporaneously herewith, the GUC Trust Administrator and the Participating Unitholders filed a response
to the Reservation of Rights with the Bankruptcy Court, which response addresses the procedural and
substantive deficiencies of the Non-Ignition Switch Plaintiffs' filing in greater detail.  A copy of that response is
attached hereto as Exhibit A.

[4]    Nor could they.  As set forth in the response to the Reservation of Rights filed by the GUC Trust Administrator
and Participating Unitholders, the rationale underlying the Bankruptcy Court's Equitable Mootness Holding
applies in equal measure to both the Ignition Switch Plaintiffs and the Non-Ignition Switch Plaintiffs.
Specifically in reaching the Equitable Mootness Holding, the Bankruptcy Court found it could not grant
effective relief for the Ignition Switch Plaintiffs from GUC Trust assets that had been reserved for existing
GUC Trust beneficiaries or costs and expenses under the Plan and Confirmation Order; that permitting the
Ignition Switch Plaintiffs to access the GUC Trust's assets "would be extraordinarily unjust for the purchasers
of GUC Trust Units after confirmation" who understood that claims against the GUC Trust "could only go
down"; and that the Ignition Switch Plaintiffs, having failed to seek to file claims against the GUC Trust or to
stay its distributions, had not diligently pursued claims against the GUC Trust.  Each of these factors applies
with equal force against the Non-Ignition Switch Plaintiffs, who seek to preserve indefinitely their right to
access GUC Trust assets that rightfully belong to GUC Trust beneficiaries; who have failed, even to this day, to
seek to file claims against the GUC Trust; and who joined the Ignition Switch Plaintiffs in their strategic
decision not to seek a stay of the GUC Trust's distribution of assets in November 2014.

In light of the foregoing, the Non-Ignition Switch Plaintiffs' request that the reference be withdrawn with respect to their Reservation of Rights is simply nonsensical. A reservation of rights is, by definition, not a ripe case or controversy. In essence, the Non-Ignition Switch Plaintiffs are seeking to reserve their preferred venue now, in advance of any litigation, in the event that they someday seek to move forward with claims against the GUC Trust. Preemptive venue fights are not contemplated by 28 U.S.C. § 157, and case law is clear that they should not be permitted.

Moreover, even if the Non-Ignition Switch Plaintiffs had filed a proper GUC Trust Asset Pleading, the Withdrawal Motion would nevertheless fail to satisfy the governing standards for mandatory and permissive withdrawal of the reference. Mandatory withdrawal is not required because the issues raised by Designated Counsel against the GUC Trust do not necessitate substantial interpretation of federal non-bankruptcy law. Permissive withdrawal is inappropriate because adjudication of a GUC Trust Asset Pleading (had one properly been filed) is undeniably within the Bankruptcy Court's core jurisdiction, and Designated Counsel have failed to meet their burden of showing "cause" for such withdrawal. To the contrary, it is clear that the Withdrawal Motion is a transparent effort to forum shop.

For these reasons and the reasons set forth below, this Court should deny Designated Counsel's request for withdrawal of the reference with respect to the Reservation of Rights.

## **BACKGROUND**

### A.   **The 363 Sale and Motions to Enforce**

In July 2009, Motors Liquidation Company, formerly known as General Motors Corporation ("**Old GM**"), as a Chapter 11 debtor, sold substantially all of its assets to General Motors LLC ("**New GM**") in a sale pursuant to section 363 of the Bankruptcy Code (the "**363 Sale**"), pursuant to an Amended and Restated Master Sale and Purchase Agreement (the "**Sale**

3

**Agreement**").  The Bankruptcy Court approved the 363 Sale in an order and injunction (the

"**Sale Order and Injunction**") dated July 5, 2009.  *See* Sale Order and Injunction, Dkt. No. 7-1,

Case No. 15-cv-05056 (Jul. 23, 2015).  Pursuant to New GM's agreement to perform Old GM's

recall responsibilities under federal law (*see* Sale Agreement ¶ 6.15(a)), beginning in February

2014, New GM began to recall certain vehicles, many of which were manufactured by Old GM.

Immediately after the first recalls were announced, plaintiffs throughout the country began filing

lawsuits against New GM asserting various personal injury and economic loss claims.

Following the commencement of the post-recall lawsuits, New GM filed three motions

with the Bankruptcy Court seeking to enforce the provisions of the Sale Order and Injunction

and bar the suits from proceeding.  The first motion (the "**Ignition Switch Motion to Enforce**")

was filed in April 2014 in response to lawsuits (the "**Ignition Switch Actions**") asserting

economic loss claims against New GM relating to defective ignition switches (the "**Ignition

Switch Defect**") in certain vehicles.  In 2014, New GM also announced other recalls unrelated to

the alleged Ignition Switch Defect, with respect to vehicles manufactured and sold by Old GM,

and lawsuits were commenced against New GM based on these other recalls.  On August 1,

2014, New GM filed two additional motions seeking to enforce the Sale Order with respect to

complaints filed by plaintiffs asserting economic losses  (the "**Non-Ignition Switch Plaintiffs**")

or personal injuries relating to defects other than the Ignition Switch Defect (collectively with the

Ignition Switch Motion to Enforce, the "**Motions to Enforce**").

B.     **The Multidistrict Litigation Pending Against New GM**

An MDL proceeding, captioned *In re General Motors LLC Ignition Switch Litig.*, Case

No. 14-md-2543 (JMF), is currently pending in this Court.  A substantial number of the cases in

the MDL are subject to the Motions to Enforce.  In this proceeding, this Court has held certain

matters in abeyance pending a final resolution in the Bankruptcy Court of the issues raised in the

Motions to Enforce.  In 2014, Lead Counsel in the MDL filed two consolidated complaints: (i) one filed against New GM by plaintiffs who purchased Old GM vehicles prior to the closing of the 363 Sale (the "**Pre-Sale Consolidated Complaint**"), and (ii) one filed against New GM by plaintiffs who purchased either Old GM vehicles or New GM vehicles after the closing of the 363 Sale (the "**Post-Sale Consolidated Complaint**").  Following the Bankruptcy Court's April 15 Decision and Judgment, on June 12, 2015, Lead Counsel filed a single amended complaint (the "**Second Amended Consolidated Complaint**"), which partially combines the Pre-Sale Consolidated Complaint and the Post-Sale Consolidated Complaint, asserting claims on behalf of plaintiffs who, *inter alia*, bought Old GM vehicles both prior to and after the 363 Sale.  *See* Pl. Mem. at 10 ("On June 12, 2015, Lead Counsel filed the [Second Amended Consolidated Complaint], amending and superseding the Pre-Sale and Post-Sale Complaints on behalf of the same group of plaintiffs and a virtually identical list of proposed class representatives.").

**C.    The Threshold Issues Decision**

In connection with the Motions to Enforce, the parties and the Bankruptcy Court agreed to address four threshold issues (the "**Threshold Issues**"), which included the question: "If any or all of the claims asserted in the Ignition Switch Actions are or could be claims against the Old GM bankruptcy estate (and/or the GUC Trust), should such claims or the actions asserting such claims nevertheless be disallowed/dismissed on grounds of equitable mootness" (the "**Equitable Mootness Threshold Issue**")."  April 15 Decision, 529 B.R. at 540.  After briefing and argument, the Bankruptcy Court issued its April 15 Decision.

In analyzing the Equitable Mootness Threshold Issue, the Bankruptcy Court applied the five-factor analysis established by the Second Circuit in *In re Chateaugay Corp.*  April 15 Decision, 529 B.R. at 584-86.  Under that standard, the Bankruptcy Court concluded that the Ignition Switch Plaintiffs' claims against the GUC Trust were equitably moot (the "**Equitable**

**Mootness Holding**") because, *inter alia*, the Plan has been substantially consummated and (1) fashioning effective relief would require the modification or revocation of the Confirmation Order, and was thus impossible under applicable Second Circuit law; (2) allowing Ignition Switch Plaintiffs to access GUC Trust assets through late-filed proofs of claim would impermissibly "knock the props out of" intricate transactions in GUC Trust Units; and (3) Ignition Switch Plaintiffs' strategic decision not to seek a stay of GUC Trust distributions constituted a failure to diligently pursue claims against the GUC Trust. *Id.* at 585-93. Because granting relief to the Ignition Switch Plaintiffs "would require . . . *the modification of the confirmation order—and with it, impairment of the rights of the Unitholders,*" the Bankruptcy Court concluded that the Second Circuit mootness standard required that the "GUC Trust Unitholders . . . be protected from a modification of the Plan." *Id.* (emphasis in original).

D.    **The Form of Judgment Decision**

The parties to the Motions to Enforce were unable to agree on a form of a proposed judgment in connection with the April 15 Decision and submitted letter briefs respecting such judgment to the Bankruptcy Court. Designated Counsel's proposed form of judgment contained a provision that Non-Ignition Switch Plaintiffs would be bound by the April 15 Decision and the proposed judgment, subject to the filing of a pleading challenging such applicability *in the Bankruptcy Court*, whereupon the *Bankruptcy Court* would rule on the issue. By seeking relief in the *District Court* in the first instance, the Withdrawal Motion contradicts the procedures proposed in Designated Counsel's own proposed form of judgment.

On May 27, 2015, the Bankruptcy Court entered its *Decision re Form of Judgment* (the "**Judgment Decision**"), published as *In re Motors Liquidation Co.*, 531 B.R. 354 (Bankr. S.D.N.Y. 2015). With respect to equitable mootness, the Bankruptcy Court explained that the guiding standard for the Judgment should be "the reasonable expectations of GUC Trust and

acquirors of GUC Trust Units under the Plan," and reaffirmed that the Judgment would "not

allow GUC Trust assets to be tapped for claims not previously filed." *Id.* at 360-61. Although

the Bankruptcy Court recognized that the April 15 Decision did not have *res judicata* effect with

respect to the Non-Ignition Switch Plaintiffs, it further held that the April 15 Decision, including

the Equitable Mootness Holding, would be *stare decisis* with respect to Non-Ignition Switch

Plaintiffs, subject only to such a plaintiff's satisfactory showing that the April 15 Decision

should not apply to them because of a factual distinction with respect to that plaintiff's claims.

*Id.* at 360.

In setting a deadline for the Non-Ignition Switch Plaintiffs to make the required showing,

the Bankruptcy Court sought to balance the Non-Ignition Switch Plaintiffs' need to be heard with

the interest of the GUC Trust and Unitholders in finality:

> The [Bankruptcy] Court agrees with New GM, the GUC Trust and the Unitholders that it
> is time to come to closure on whether there is any basis to excuse the Non–Ignition
> Switch Plaintiffs from the provisions of the Sale Order and the [Bankruptcy] Court's
> mootness conclusions. And fairness to the MDL Court requires that this [Bankruptcy]
> Court timely provide the MDL Court with any rulings that the MDL Court may require.
> The [Bankruptcy] Court's Judgment balances the Non–Ignition Switch Plaintiffs' need
> for opportunity now to be heard with others' needs for expeditious closure on these
> additional claims.

Judgment Decision, 531 B.R. at 360.

**E.**     **The Bankruptcy Court's Judgment with Respect to the April 15 Decision**

On June 1, 2015, the Bankruptcy Court issued the Judgment, implementing its rulings in

the April 15 Decision and the Judgment Decision. The Judgment specifically addresses

procedures to be followed by the Ignition Switch Plaintiffs and the Non-Ignition Switch

Plaintiffs. Among other things, the Judgment provides:

> (i) [B]ased on the doctrine of equitable mootness, in no event shall assets of the GUC
> Trust held at any time in the past, now, or in the future (collectively, the "**GUC Trust
> Assets**") (as defined in the Plan) be used to satisfy any claims of the Plaintiffs, nor will
> Old GM's Plan be modified with respect to such claims . . . . [Judgment ¶ 6.]

7

(ii) To the extent an issue shall arise in the future as to whether . . . the doctrine of equitable mootness bars the use of any GUC Trust Assets to satisfy late-filed claims of the [Non-Ignition Switch Plaintiffs] . . . the [Non-Ignition Switch Plaintiffs] shall be required to first seek resolution of such issues from this [Bankruptcy] Court before proceeding any further against New GM and/or the GUC Trust.  [Judgment ¶ 13(a).]

(iii) If counsel for a [Non-Ignition Switch Plaintiff] believes that, notwithstanding the Decision and this Judgment, it has a good faith basis to believe that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court, it shall file a pleading with this [Bankruptcy] Court within 17 business days of this Judgment ("**GUC Trust Asset Pleading**").  The GUC Trust Asset Pleading shall not reargue issues that were already decided by the Decision and Judgment.  If a GUC Trust Asset Pleading is timely filed, the GUC Trust, the GUC Trust Unitholders and/or New GM shall have 17 business days to respond to such pleading. [Judgment ¶ 13(d).]

With respect to all of the pleadings permitted under the Judgment, potential movants were directed not to reargue issues already decided by the April 15 Decision, the Judgment, or any other decision or order of the Bankruptcy Court.  *See, e.g.*, *id.* ¶ 10(c).  The Ignition Switch Plaintiffs and the Non-Ignition Switch Plaintiffs were stayed from further action in their lawsuits except for the pleadings expressly permitted under the Judgment (or the ability to amend a complaint).

F.    **Designated Counsel's Current Pleadings**

On June 24, 2015, Designated Counsel simultaneously filed *The Ignition Switch Plaintiffs' No Strike Pleading with Regard to the Second Amended Consolidated Complaint; and the Non-Ignition Switch Plaintiffs' (I) Objection Pleading With Regard to the Second Amended Complaint and (II) GUC Trust Asset Pleading* (the "**Omnibus Judgment Pleading**") and the Withdrawal Motion.  Through the Withdrawal Motion and Omnibus Judgment Pleading, Designated Counsel request entry of an order finding, *inter alia*, that "the Non-Ignition Switch Plaintiffs' rights are reserved to, at a future date, file and seek allowance of late claims, seek a

recovery on such claims from the assets of the GUC Trust . . . and litigate issues . . . identified in

paragraph 13(a) of the Judgment." Omnibus Judgment Pleading ¶ 51.

## ARGUMENT

**A.**      **Plaintiffs' Withdrawal Motion as it Applies to the Reservation of Rights is Not Ripe for Adjudication**

With respect to the relief sought by Designated Counsel against the GUC Trust, there is

no proceeding, motion, or controversy for which the Court may withdraw the reference. Insofar

as Designated Counsel's Omnibus Judgment Pleading relates to the GUC Trust, it seeks only a

"reservation of rights" on an issue that is either moot as a result of Designated Counsel's failure

to comply with the Judgment's procedures or is not ripe for adjudication. *See* Omnibus

Judgment Pleading at ¶ 51 (requesting entry of an order finding that "the Non-Ignition Switch

Plaintiffs' rights are reserved to, at a future date, file and seek allowance of late claims, seek a

recovery on such claims from the assets of the GUC Trust . . . and litigate issues . . . identified in

paragraph 13(a) of the Judgment.").

Designated Counsel's attempt to simply "reserve" rights—while failing to assert any—

demonstrates that, at this juncture, there is no proceeding for which the reference may be

withdrawn. Where a party seeking withdrawal of the reference raises a mere speculative

objection to a potential future circumstance, the motion should be denied. *In re Willis Roof*

*Consulting, Inc.*, No. 10-CV-01682-GMN-VCF, 2012 WL 3011985, at *2 (D. Nev. July 23,

2012) (where plaintiffs moved to withdraw the reference with respect to their claim, but the

bankruptcy trustee had not yet filed an objection thereto, district court held that plaintiffs'

concern was "only a speculative objection that does not require the Court to withdraw the

reference at this time."); *see also In re Chateaugay Corp.*, 104 B.R. 622, 625-26 (S.D.N.Y.

1989) (creditor's motion to withdraw the reference was premature where its claim had not been

objected to by any party); *In re Enron Corp.*, 318 B.R. 273, 275-76 (S.D.N.Y. 2004) (denying

motion to withdraw the reference where bankruptcy court had not yet been asked to determine

whether matter was core or non-core); *In re Connie's Trading Corp.*, No. 14-cv-376 (LAK)

(GWG), 2014 WL 1813751, at *10 (S.D.N.Y. May 8, 2014) ("Given this concern for judicial

efficiency, courts in this District generally deny withdrawal motions where a case is not yet

ready for trial.").  Indeed, Designated Counsel cite no authority—and the GUC Trust

Administrator and Participating Unitholders are aware of none—in which a court withdrew the

reference for the purpose of simply entering an order reserving the movant's rights.

Accordingly, this Court should reject Designated Counsel's attempt to sidestep or override the

clear deadlines provided in the Judgment and decline to withdraw the reference.

**B.**     **Mandatory Withdrawal of the Reference Is Not Required**

Pursuant to 28 U.S.C. § 157(d), a "district court shall, on timely motion of a party, so

withdraw a proceeding if the court determines that resolution of the proceeding requires

consideration of both title 11 and other laws of the United States regulating organizations or

activities affecting interstate commerce."  District courts must withdraw a reference when

"substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for

the resolution of the proceeding."  *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)

(internal quotation marks omitted).  The mandatory withdrawal provision "has been construed

narrowly," and "is not available merely whenever non-Bankruptcy Code federal statutes will be

considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and

material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of

the proceeding."  *Id.* (citation omitted).  Such substantial and material consideration occurs

"when a determination of issues requires 'significant *interpretation* of federal laws that

[C]ongress would have intended to have decided by a district judge rather than a bankruptcy

10

judge . . . .'" Withdrawal of the reference is mandated where "issues arising under non-title 11

laws dominate[ ] those arising under title 11 . . . ." *In re Extended Stay, Inc.*, 466 B.R. 188, 196

(S.D.N.Y. 2011) (citation omitted).

Here, "substantial and material consideration" of non-bankruptcy federal law is not

necessary to resolve Designated Counsel's reservation of rights regarding a GUC Trust Asset

Pleading. To the contrary, resolution of a GUC Trust Asset Pleading (had one properly been

filed) would simply require the interpretation of the April 15 Decision and Judgment and

application of any purported distinguishing facts—an analysis for which the Bankruptcy Court

that authored the April 15 Decision and Judgment is most optimally suited. The Bankruptcy

Court's Equitable Mootness Holding was an exercise of that court's power and does not

implicate non-bankruptcy federal law.

Indeed, the Non-Ignition Switch Plaintiffs do not even attempt to argue that mandatory

withdrawal is required with respect to the Reservation of Rights. Rather, Designated Counsel

focus their arguments on the necessary interpretation of the Magnuson-Moss Warrant Act and

the RICO Act—federal statutes that purportedly apply to the No Strike Pleading and the

Objection Pleading due to an asserted "overlap" of issues presented by those pleadings and the

Second Amended and Consolidated Complaint—statutes that are not implicated by the

Reservation of Rights.

Designated Counsel also cite potential due process concerns as a basis for withdrawal,

but again, cites these concerns as a basis for mandatory withdrawal of the Objection Pleading,

not the Reservation of Rights. Even if a proper GUC Trust Asset Pleading had been filed, any

claimed constitutional due process concerns would not have mandated withdrawal, as the

allegation of a due process violation does not compel mandatory withdrawal of the reference.  As

the district court held in *In re Chateaugay Corp.*:

> Whether LTV complied with due process in providing notice to its creditors of the bar
> date set by the Bankruptcy Court is a procedural issue well within the competence of the
> Bankruptcy Court.  Even if, as movants suggest, the notice issue rises above statutory
> interpretation to the level of a constitutional claim, the Bankruptcy Court is equipped to
> decide it.  A bankruptcy court is just as bound by the Constitution as any Article III court,
> and is well situated to decide whether the notice provided to implement its own bar date
> complied with established rules of due process. Allowing bankruptcy courts to decide
> these issues in no way diminishes the authority conferred by Article III of the
> Constitution, because a district court may review that decision de novo.  The statute
> contemplates mandatory withdrawal not when the Bankruptcy Court is called upon to
> make a routine interpretation of its own notice requirements, or whether that notice
> complies with the Constitution, but when it is called upon to interpret a federal statute
> with which it has little familiarity.  Moreover, the particular constitutional issue here is
> one that could almost always be raised by a party seeking withdrawal of the reference.
> Holding that that issue mandates withdrawal would defeat Congress's purpose when it
> created the bankruptcy courts, and would transform § 157(d) into an escape hatch through
> which numerous cases would fall.

193 B.R. 669, 674-75 (S.D.N.Y. 1996).

Accordingly, mandatory withdrawal of the reference with respect to the Non-Ignition

Switch Plaintiffs' Reservation of Rights is not required.

**C.**     **Permissive Withdrawal of the Reference Is Inappropriate**

1.     Legal Standard

A party seeking to withdraw the reference bears the burden of demonstrating that

permissive withdrawal is warranted.  *In re Lehman Bros. Holdings Inc.*, No. 11–cv–6194 (DAB),

2015 WL 3778512, at *8 (S.D.N.Y. June 15, 2015); *Lehman Brothers Holdings Inc. v. Intel

Corp. (In re Lehman Bros. Holdings Inc.)*, 18 F. Supp. 3d 553, 557 (S.D.N.Y. May 10, 2014).

Designated Counsel have failed to satisfy this burden.

A "district court may withdraw, in whole or in part, any case or proceeding referred [to

the bankruptcy court] under this section, on its own motion or on timely motion of any party, for

cause shown."  28 U.S.C. § 157(d).  While "cause" is not defined in the statute, the Second

Circuit has set forth various factors to review when deciding whether the reference should be

withdrawn.  "These factors include (1) whether the claim or proceeding is core or non-core; (2)

whether the claim or proceeding is legal or equitable; and (3) considerations of efficiency,

prevention of forum shopping, and uniformity in the administration of bankruptcy law."  *In re

Quebecor World (USA)*, 12-cv-6614(JMF), 2012 WL 5289919, at *2 (S.D.N.Y. Oct. 26, 2012)

(citing *In re Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures),* 4 F.3d

1095, 1101 (2d Cir. 1993)); *see also In re Burger Boys, Inc.,* 94 F.3d 755, 762 (2d Cir. 1996)

("[I]n deciding whether to withdraw an issue from the bankruptcy court, the district court should

weigh several factors, of which the first is the most important: (1) whether the claim is core or

non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what

are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5)

what will prevent forum shopping, and (6) other related factors.").

> 2.      The Adjudication of the Reservation of Rights Is a Core Matter, and the
>         Bankruptcy Court Has Authority to Adjudicate It.

The Second Circuit in *In re Orion* called for a non-dispositive "threshold" determination

of whether the proceedings for which withdrawal of the reference is sought are "core" or "non-

core."  4 F.3d at 1101; *see also Burger Boys*, 94 F.3d at 762 (whether the claim is core or non-

core is the most important factor).  Since *Stern v. Marshall* was decided, district courts

addressing this "threshold" factor have also considered whether the bankruptcy court has the

constitutional authority to enter a final judgment with respect to the proceedings at issue.  *See,

e.g.*, *In re Residential Capital, LLC*, 519 B.R. 593, 598 (S.D.N.Y. 2014).

The adjudication of the Reservation of Rights is undeniably within the Bankruptcy

Court's core jurisdiction.  Included on the statutory list of core matters are "other proceedings

affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor . . .

Case 1:15-cv-05056-JMF   Document 18   Filed 09/07/15   Page 19 of 24

relationship . . . ."  28 U.S.C. § 157(b)(2).  The sole purpose of the Reservation of Rights is to

permit the Non-Ignition Switch Plaintiffs to reserve their rights to one day seek to access *estate*

*assets*.  Accordingly, adjudication of the Reservation of Rights falls squarely within subsection

(b)(2) of 28 U.S.C. § 157.

Nor does the adjudication of the Reservation of Rights implicate any *Stern v. Marshall*

concerns regarding the Bankruptcy Court's authority to enter a final judgment on the matter.  A

"Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *see also Baker v. Simpson*, 613 F.3d

346, 352 (2d Cir. 2010) ("[A] bankruptcy court retains post-confirmation jurisdiction to interpret

and enforce its own orders." (citation omitted)); *In re Charter Commcn's*, No. 09-11435, 2010

WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010) ("This Court unquestionably has the authority

and discretion to rule on the Enforcement Motion . . . .  All courts retain the jurisdiction to

interpret and enforce their own orders.").  The issue raised in the Reservation of Rights—

whether the April 15 Decision and Judgment preclude the Non-Ignition Switch Plaintiffs from

seeking to access estate assets through the filing and allowance of late claims—is a paradigmatic

bankruptcy matter that, unlike the state law claims at issue in *Stern* and its progeny, does not

implicate Article III considerations.  Further, throughout the pendency of this bankruptcy case,

Designated Counsel have repeatedly consented to the exclusive jurisdiction of the Bankruptcy

Court.  *Cf. Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) (holding that any

right to an Article III decision-maker recognized in *Stern v. Marshall* may be waived where the

objecting party has consented to bankruptcy court adjudication).  At no point—including in the

instant Withdrawal Motion and Omnibus Judgment Pleading—have Designated Counsel argued

that the Bankruptcy Court lacks the authority to enter a final order with respect to a GUC Trust

Asset Pleading.

Recognizing that the resolution of the Reservation of Rights is indeed a core matter,

Designated Counsel attempt to bootstrap a permissive withdrawal grant by citing *Weisfelner v.*

*Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 724 (S.D.N.Y. 2012) for the proposition

that where non-core issues predominate, the withdrawal of core issues may be appropriate.

Reliance on *Lyondell* is misguided, however, as the core and non-core issues to be adjudicated in

that case *all related to one defendant*.  Here, there are no non-core issues to be adjudicated with

respect to the GUC Trust.  Designated Counsel cannot manufacture the result they desire by

arbitrarily grouping core issues that relate to the GUC Trust with non-core issues that relate to

New GM.  Such gerrymandering is not what is contemplated by *Lyondell*.[5]

3.    Plaintiffs Are Forum Shopping.

Designated Counsel's abrupt about-face from their earlier position of consenting to the

exclusive jurisdiction of the Bankruptcy Court also raises significant forum-shopping concerns.

Their first attempt to transfer these proceedings to the District Court follows the Bankruptcy

Court's Decision and Judgment, which, *inter alia*, precluded recovery from the GUC Trust

Assets on equitable mootness grounds.  *Cf. Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld*

*LLP*, 201 B.R. 635, 641 (S.D.N.Y. 1996) ("The Court also finds that it is in the interest of the

prevention of forum shopping that this case be litigated by the District Court.  It is more than

coincidental that this action was filed in the Bankruptcy Court shortly after this Court's Report &

---

[5]    Moreover, as Judge Cote recognized in *Lyondell*, even in circumstances where a bankruptcy court lacks the
authority to enter final judgment as to a subset of claims, withdrawal of the reference is nonetheless
unwarranted where the bankruptcy court has acquired extensive experience in the matter.  467 B.R. at 724.

Recommendation that the Noteholder plaintiffs' suit . . . be dismissed.").[6]  Designated Counsel's

desire to litigate issues relating to the GUC Trust Assets in front of a court other than the one that

recently ruled against them is a litigation tactic that should not be condoned.  *See Schneider v.*

*Riddick (In re Formica Corp.)*, 305 B.R. 147, 151 (S.D.N.Y. 2004) ("[C]ourts should employ

withdrawal judiciously in order to prevent it from becoming just another litigation tactic for

parties eager to find a way out of bankruptcy court." (citation and internal quotations omitted)).

Accordingly, the forum shopping factor weighs heavily against withdrawal of the reference.

    4.    Denying Withdrawal of the Reference Will Promote
        Judicial Efficiency and Will Reduce Delay and Costs.

As this Court has previously recognized in the context of the Sale Order and Injunction,

"Judge Gerber is in a better position to interpret his prior orders and figure out what is and isn't

subject to those orders and [] it will just cause undue complications to withdraw the reference as

to some subset of claims or proceedings."  Aug. 11, 2014 MDL 2543 Hr'g Tr. at 6, 22-23.  This

continues to be the case.  Judge Gerber is deeply versed in this case and, as the author of the

April 15 Decision and Judgment, is best-positioned to resolve issues relating to the scope of their

applicability according to the procedures that he himself laid out in the Judgment.  *See, e.g.*, *In re*

*Residential Capital*, 519 B.R. at 603 ("This Court concludes that the matter should remain in

bankruptcy court primarily because of [the bankruptcy judge's] expertise and extensive

familiarity with . . . this complex bankruptcy case, which commenced in 2012.").  Because it

would remove these proceedings from the court that has long presided over them and is most

familiar with them, withdrawal of the reference would disserve judicial economy.

---

[6]  Designated Counsel's reference to Judge Gerber's recall status coupled with their disregard for the terms of the
Judgment governing GUC Trust Asset Pleadings are also indicative of forum shopping.  There are no grounds
to believe that Judge Gerber's recall status will hinder or delay the adjudication of the relevant proceeding in
any way.  Further, Designated Counsel's purported concern that "it is unclear how much longer [Judge Gerber]
will be available to preside over the proceedings in the Bankruptcy Court" is undermined by the delays that they
have created through their failure to comply with the deadlines established in the Judgment and proceed before
Judge Gerber in the first instance.

By contrast, this Court does not share the Bankruptcy Court's close familiarity with the facts, circumstances and prior proceedings relevant to the Reservation of Rights (having not been directly subject to the lengthy briefing, numerous status conferences and hearings related specifically to the Threshold Issues), and is thus not as well-positioned as the Bankruptcy Court to rule on the Reservation of Rights.  Withdrawing the reference with respect to the Reservation of Rights under these circumstances would only increase the already substantial delays caused by the Non-Ignition Switch Plaintiffs' failure to comply with the express terms of the Judgment, and will increase attendant legal costs and expenses.

Designated Counsel claim that judicial economy supports its request because the Omnibus Judgment Pleading shares common issues of fact and law with the concurrent proceedings before this Court with respect to the Second Amended and Consolidated Complaint. But there are not, and cannot ever be, common issues of law and fact between the subject matter of the Reservation of Rights and that of the Second Amended and Consolidated Complaint. Pursuant to the Judgment, the Second Amended and Consolidated Complaint may only address independent conduct of New GM following the Sale.  By contrast, claims against the Old GM bankruptcy estate (the claims the Non-Ignition Switch Plaintiffs seek to preserve in their Reservation of Rights) can only relate to pre-Sale conduct of Old GM.  By definition, the issues of fact and law presented by any GUC Trust Asset Pleading and the Second Amended and Consolidated Complaint cannot overlap, and thus any argument that efficiencies will be realized by permitting this Court to adjudicate the Reservation of Rights are without merit.

5.    The Claims at Issue Are Equitable.

It is beyond dispute that a determination of equitable mootness is a prudential doctrine based on courts' equitable authority.  *See* April 15 Decision, 529 B.R. at 584-85.   There are thus no concerns relating to the potential loss of a jury right in this case.  *See, e.g.*, *In re Residential*

*Capital*, 519 B.R. at 605 (factor does not weigh in favor of or against withdrawal of the reference where jury rights are not at issue); *In re Sheldrake Lofts LLC*, 14-cv-4274(NSR), 2014 WL 6450340, at *2 (Bankr. S.D.N.Y. Nov. 15, 2014) (same).  This factor therefore does not support withdrawal of the reference.

## CONCLUSION

Designated Counsel's disregard of the procedures set forth in the Judgment should not be condoned—nor should their unprecedented attempt to withdraw the reference as to a reservation of rights.  Because resolution of the Reservation of Rights will not require substantial reference to non-bankruptcy federal law, there is no basis for mandatory withdrawal of the reference.  Further, each of the applicable factors weighs against discretionary withdrawal of the reference.  For the foregoing reasons, the GUC Trust Administrator and the Participating Unitholders respectfully request that the Court deny Designated Counsel's request to withdraw the reference with respect to the Reservation of Rights.

Dated: New York, New York
   August 7, 2015

         GIBSON, DUNN & CRUTCHER LLP

         By:   /s/ Lisa H. Rubin
           Matthew J. Williams
           Lisa H. Rubin
           Keith R. Martorana

         200 Park Avenue
         New York, NY 10166-0193
         Telephone:  212.351.4000
         Facsimile:  212.351.4035

         *Attorneys for the Motors Liquidation Company*
         *GUC Trust Administrator*

         AKIN GUMP STRAUSS HAUER & FELD LLP

         By:  /s/ Daniel H. Golden
           Daniel H. Golden
           Deborah J. Newman
           Naomi Moss

         One Bryant Park
         New York, New York 10036
         Telephone: (212) 872-1000
         Facsimile: (212) 872-1002

         *Attorneys for the Participating Unitholders*

# EXHIBIT A

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035
Matthew J. Williams
Lisa H. Rubin
Keith R. Martorana
*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone:    (212) 872-1000
Facsimile:    (212) 872-1002
Daniel H. Golden
Deborah J. Newman
Naomi Moss

*Attorneys for the Participating Unitholders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :
                                                                   :          **Chapter 11 Case No.**
                                                                   :
**MOTORS LIQUIDATION COMPANY,** *et al.,*                          :
**f/k/a General Motors Corp.,** *et al.*                           :          **09-50026 (REG)**
                                                                   :
                                                                   :
            **Debtors.**                                           :          **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------------x

**OMNIBUS RESPONSE OF WILMINGTON TRUST COMPANY, AS GUC TRUST**
**ADMINISTRATOR AND TRUSTEE, AND THE PARTICIPATING UNITHOLDERS**
**TO (A) THE NON-IGNITION SWITCH PLAINTIFFS' GUC TRUST ASSET**
**PLEADING AND (B) CERTAIN NON-IGNITION SWITCH PRE-CLOSING**
**ACCIDENT PLAINTIFFS' AMENDED RESERVATION OF RIGHTS**

Wilmington Trust Company, not in its individual capacity and solely in its capacity as

trust administrator and trustee (the "**GUC Trust Administrator**") of the Motors Liquidation

Company GUC Trust (the "**GUC Trust**"), and certain holders of beneficial units of the GUC

Trust (the "**Participating Unitholders**") hereby file this joint omnibus response to (a) the

*Non-Ignition Switch Plaintiffs' GUC Trust Asset Pleading* [Docket No. 13247] (the "**Non-**

1

**Ignition Switch Economic Loss Plaintiffs' Pleading**"),[1] and (b) the *Amended Reservation of Rights of Certain Non-ISD Pre-Closing Accident Plaintiffs* [Docket No. 13254] (the "**Non-Ignition Switch Personal Injury Plaintiffs' Pleading**"), and respectfully represent as follows:

## BACKGROUND

1.    In April 2014, General Motors Company ("**New GM**") filed the first of a series of three motions (the "**Ignition Switch Motion to Enforce**") seeking to enforce the terms of this Court's order dated July 7, 2009 approving the sale of substantially all of the assets of General Motors Corporation ("**Old GM**") to New GM (the "**Sale Order**").  The Ignition Switch Motion to Enforce sought to enjoin the numerous complaints (the "**Ignition Switch Actions**") that had been filed by certain plaintiffs (the "**Ignition Switch Plaintiffs**") against New GM throughout the United States relating to economic losses suffered as a result of defects in the ignition switches (the "**Ignition Switch Defect**") contained in certain cars manufactured by Old GM.

2.    In August 2014, New GM filed two additional motions seeking to enforce the Sale Order, this time with respect to complaints filed by plaintiffs asserting economic losses (the "**Non-Ignition Switch Economic Loss Plaintiffs**") or personal injuries (the "**Non-Ignition Switch Personal Injury Plaintiffs**," and collectively with the Non-Ignition Switch Economic Loss Plaintiffs, the "**Non-Ignition Switch Plaintiffs**") related to defects in cars manufactured by Old GM other than the Ignition Switch Defect (collectively with the Ignition Switch Motion to Enforce, the "**Motions to Enforce**").

3.    In connection with the Motions to Enforce, the parties and the Court agreed to address four threshold issues (the "**Threshold Issues**"), which included the following

---

[1] The Non-Ignition Switch Economic Loss Plaintiffs' Pleading is combined, on an omnibus basis, with the Ignition Switch Plaintiffs' No Strike Pleading, and the Non-Ignition Switch Economic Loss Plaintiffs' Objection Pleading (each as defined in the Judgment, as defined below).  The GUC Trust Administrator and Participating Unitholders take no position with respect to the No Strike Pleading or the Objection Pleading.

2

question: "if any or all of the claims asserted in the Ignition Switch Actions are or could be claims against the Old GM bankruptcy estate (and/or the GUC Trust), should such claims or the actions asserting such claims nevertheless be disallowed/dismissed on grounds of equitable mootness" (the "**Equitable Mootness Threshold Issue**").  *See Supplemental Scheduling Order* [Docket No. 12770].

4.      Following briefing and oral argument on the Threshold Issues, on April 15, 2015 the Court rendered its *Decision on Motion to Enforce Sale Order and Injunction* [Docket No. 13109] (the "**Threshold Issues Decision**"), published as *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).  With respect to the Equitable Mootness Threshold Issue, the Court found that even if the Ignition Switch Plaintiffs' hypothetical late-filed claims were to be allowed, permitting them to access assets of the GUC Trust would constitute an impermissible modification of the confirmation order.  *See* Threshold Issues Decision at 15-16.  Accordingly, the Court held that the Ignition Switch Plaintiffs could file and seek allowance of their late claims, if any, but that the doctrine of equitable mootness barred them from obtaining any recovery on such claims from the assets of the GUC Trust (the "**Equitable Mootness Holding**").  *Id.*

5.      On May 27, 2015 the Court rendered its *Decision re Form of Judgment* [Docket No. 13162] (the "**Judgment Decision**"), published as *In re Motors Liquidation Co.*, 531 B.R. 354 (Bankr. S.D.N.Y. 2015).

6.      In its Judgment Decision, the Court recognized that, because the evidentiary record was not sufficiently developed, the Threshold Issues Decision did not have *res judicata* effect with respect to the Non-Ignition Switch Plaintiffs.  *Id.* at 360.  However, the Court also held that the Threshold Issues Decision, including the Equitable Mootness Holding, would be *stare decisis*, subject only to a Non-Ignition Switch Plaintiff's satisfactory showing that the Threshold Issues Decision is distinguishable on a factual basis with respect

to its claims.  *Id.*

7.    The Court did not provide the Non-Ignition Switch Plaintiffs with unlimited time to make the required showing.  Instead, the Court balanced the needs of the Non-Ignition Switch Plaintiffs to be heard, with the needs of the GUC Trust and Unitholders for closure, holding the following:

> The Court agrees with New GM, the GUC Trust and the Unitholders that *it is time to come to closure* on whether there is any basis to excuse the Non-Ignition Switch Plaintiffs from the provisions of the Sale Order and the Court's mootness conclusions. And fairness to the MDL Court requires that this Court timely provide the MDL Court with any rulings that the MDL Court may require.  The Court's Judgment balances the Non-Ignition Switch Plaintiffs' need for an opportunity now to be heard with others' needs for expeditious closure on these additional claims.

*Id.* at 360 (emphasis added).

8.    The Non-Ignition Switch Plaintiffs did not appeal the Judgment Decision.

9.    On June 1, 2015, the Court entered its *Judgment* implementing the terms of the Threshold Issues Decision and the Judgment Decision [Docket No. 13177] (the "**Judgment**").  Pursuant to paragraph 13(d) of the Judgment:

> If counsel for a [Non-Ignition Switch Plaintiff] believes that, notwithstanding the [Threshold Issues] Decision and this Judgment, it has a good faith basis to believe that any of the GUC Trust Assets may be used to satisfy late proofs of claim filed by them that may ultimately be allowed by the Bankruptcy Court, it shall file a pleading with this Court within 17 business days of this Judgment ("**GUC Trust Asset Pleading**"). The GUC Trust Asset Pleading shall not reargue issues that were already decided by the Decision and Judgment. If a GUC Trust Asset Pleading is timely filed, the GUC Trust, the GUC Trust Unitholders and/or New GM shall have 17 business days to respond to such pleading. The Court will schedule a hearing thereon if it believes one is necessary.

Judgment ¶ 13(d).

10.    On June 24, 2015, the Non-Ignition Switch Economic Loss Plaintiffs filed their Non-Ignition Switch Economic Loss Plaintiffs' Pleading, and the Non-Ignition Switch Personal Injury Plaintiffs filed their Non-Ignition Switch Personal Injury Plaintiffs' Pleading.

The parties subsequently agreed that responses to the Non-Ignition Switch Economic Loss Plaintiffs' Pleading and the Non-Ignition Switch Personal Injury Plaintiffs' Pleading would be filed no later than August 7, 2015.[2]

## **RESPONSE**[3]

11.     Neither of the pleadings filed by the Non-Ignition Switch Plaintiffs complies with this Court's Judgment.  Accordingly, the Court should find that the Equitable Mootness Holding of the Threshold Issues Judgment applies to the Non-Ignition Switch Plaintiffs.

12.     First, while styled as a "GUC Trust Asset Pleading," the Non-Ignition Switch Economic Loss Plaintiffs' Pleading fails to assert any basis, let alone a "good faith basis," as to why the Equitable Mootness Holding should not apply to their claims as required by the Judgment.  *See* Judgment ¶ 13(d).  Nor could they assert such a basis.  The rationale underlying the Court's Equitable Mootness Holding applies in equal measure to both the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs.  Specifically, in reaching the Equitable Mootness Holding, the Court found that it could not grant effective relief for the Ignition Switch Plaintiffs from GUC Trust assets that had been reserved for existing GUC Trust beneficiaries or costs and expenses under the Plan and Confirmation Order; that permitting the Ignition Switch Plaintiffs to access the GUC Trust's assets "would be extraordinarily unjust for the purchasers of GUC Trust Units after confirmation" who understood that claims against the GUC Trust "could only go down"; and that the Ignition Switch Plaintiffs, having failed to seek to file claims against the GUC Trust or to stay its distributions, had not diligently pursued claims against the GUC Trust.  Each of these factors

---

[2] *See Stipulation and Agreed Order Tolling Certain of the Ignition Switch Plaintiffs' No Strike Pleading With Regard to the Second Amended Consolidated Complaint and the Non-Ignition Switch Plaintiffs' (i) Objection Pleading With Regard to the Second Amended Consolidated Complaint and (ii) GUC Trust Asset Pleading and the Amended Reservation of Rights of Certain Non-ISD Pre-Closing Accident Plaintiffs*, so ordered by this Court on July 28, 2015 [Docket No. 13325].

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Threshold Issues Decision.

5

applies with equal force against the Non-Ignition Switch Plaintiffs, who seek to preserve indefinitely their right to access GUC Trust assets that rightfully belong to GUC Trust beneficiaries; who have failed, even to this day, to seek to file claims against the GUC Trust; and who joined the Ignition Switch Plaintiffs in their strategic decision not to seek a stay of the GUC Trust's distribution of assets in November 2014.

13.    Instead of demonstrating a basis as to why the Equitable Mootness Holding should not apply to them, the Non-Ignition Switch Economic Loss Plaintiffs assert only that it is premature and/or inappropriate to impose the Equitable Mootness Holding on the Non-Ignition Switch Economic Loss Plaintiffs because they are not parties to the appeal of the Threshold Issues Decision.  *See* Non-Ignition Switch Economic Loss Plaintiffs' Pleading ¶ 105.  This rationale is circular; the entire purpose of the GUC Trust Asset Pleading is to immediately determine whether the Equitable Mootness Holding should apply to such plaintiffs, and if so, to permit them to participate in the related appeals.

14.    The Non-Ignition Switch Personal Injury Plaintiffs, by comparison, did not even attempt to characterize their pleading as a "GUC Trust Asset Pleading," and instead filed a reservation of rights bereft of any "good faith basis" for distinguishing their claims, or explanation as to how their reservation of rights comports with the plain language of the Judgment and the Judgment Decision.

15.    It is beyond dispute that paragraph 13(d) of the Judgment was intended to balance the needs of the Non-Ignition Switch Plaintiffs to have their day in court—and attempt to distinguish their factual record from that of the Ignition Switch Plaintiffs—with the needs of the GUC Trust and Unitholders for closure.  Yet it is clear from the face of the pleadings filed by the Non-Ignition Switch Plaintiffs that, while they disagree with this Court's Equitable Mootness Holding, there is no reasoned, good-faith basis to distinguish their purported claims from those of the Ignition Switch Plaintiffs.  If distinguishing facts

6

exist, the Non-Ignition Switch Plaintiffs have either failed to meet their burden of establishing such facts or have waived their right to do so. Respectfully, the Court should find that the Equitable Mootness Holding applies with equal force to the Non-Ignition Switch Plaintiffs.

### **CONCLUSION**

WHEREFORE, the GUC Trust Administrator and Participating Unitholders respectfully request that the Court (A) enter an order providing that the Equitable Mootness Holding applies to the Non-Ignition Switch Plaintiffs and (B) grant such other and further relief as may be deemed just and proper.

Dated:  New York, New York
August 7, 2015

GIBSON, DUNN & CRUTCHER LLP

By:  \_\_/s/\_\_ Matthew J. Williams_____

Matthew J. Williams
Lisa H. Rubin
Keith R. Martorana
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for the Motors Liquidation Company*
*GUC Trust Administrator*

AKIN, GUMP, STRAUSS, HAUER & FELD LLP

By:  \_\_/s/\_\_ Daniel G. Golden_____

Daniel H. Golden
Deborah J. Newman
Naomi Moss
One Bryant Park
New York, NY 10036
(212) 872-1000

*Attorneys for the Participating Unitholders*