# Exhibit 1

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5                                        Chapter 11

6    MOTORS LIQUIDATION COMPANY,          Case No.: 09-50026(REG)

7    et al, f/k/a General Motors          (Jointly Administered)

8    Corp., et al.,

9

10          Debtors.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   STEVEN GROMAN, ROBIN DELUCO,

13   ELIZABETH Y. GRUMET, ABC

14   FLOORING, INC., MARCUS

15   SULLIVAN, KATELYN SAXSON,            Adv. Pro. No.:

16   AMY C. CLINTON, AND ALLISON          14-01929(REG)

17   C. CLINTON, on behalf of

18   themselves, and all other

19   similarly situated,

20                Plaintiffs,

21          v.

22   GENERAL MOTORS LLC,

23                Defendant.

24   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

25

Page 2

1              U.S. Bankruptcy Court

2              One Boling Green

3              New York, New York

4

5              May 2, 2014

6              9:46 AM

7

8

9    B E F O R E :

10   HON ROBERT E. GERBER

11   U.S. BANKRUPTCY JUDGE

12

13

14   Hearing re:  Status Conference

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South and Sheila Orms

Page 3

1   A P P E A R A N C E S :

2   KING & SPALDING LLP

3        Attorneys for General Motors LLC

4        1185 Avenue of the Americas

5        New York, NY 10036-4003

6

7   BY:  ARTHUR J. STEINBERG, ESQ.

8        SCOTT DAVIDSON, ESQ.

9

10  KIRKLAND & ELLIS

11       Attorney for New GM

12       300 North LaSalle

13       Chicago, IL 60654

14

15  BY:  RICHARD C. GODFREY, P.C., ESQ.

16

17  GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

18       Attorneys for the Plaintiffs

19       437 Madison Avenue

20       New York, NY 10022

21

22  BY:  JONATHAN FLAXER, ESQ.

23       S. PRESTON RICARDO, ESQ.

24

25

Page 4

```
 1   GIBSON, DUNN & CRUTCHER LLP

 2        Attorney for Motors Liquidation GUC Trust

 3        200 Park Avenue

 4        New York, NY 10166-0193

 5

 6   BY:  KEITH R. MARTORANA, ESQ.

 7

 8   ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.

 9        Attorney for Ratzlaff, et al.

10        19 Corporate Plaza Drive

11        Newport Beach, CA 92660

12

13   BY:  MARK P. ROBINSON, JR., ESQ.

14

15   GOODWIN ROCTER LLP

16        Attorneys for the South Texas Plaintiffs

17        The New York Times Building

18        620 Eighth Avenue

19        New York, NY 10018

20

21   BY:  WILLIAM P. WEINTRAUB, ESQ.

22        EAMONN O'HAGAN, ESQ.

23

24

25
```

Page 5

```
 1   BROWN RUDNICK LLP

 2        Attorneys for Ratzlaff, et al.

 3        Seven Times Square

 4        New York, NY 10036

 5

 6   BY:  EDWARD WEISFELNER, ESQ.

 7        DAVID J. MOLTON, ESQ.

 8        HOWARD STEEL, ESQ.

 9

10   AKIN GUMP STRAUSS HAUER & FELD LLP

11        Attorneys for Holders of Units in the GUC Trust

12        One Bryant Park

13        New York, NY 10036-6745

14

15   BY:  NAOMI MOSS, ESQ.

16        DANIEL GOLDEN, ESQ.

17

18   OTTERBOURG

19        230 Park Avenue

20        New York, NY 10169

21

22   BY:  DAVID M. POSNER, ESQ.

23

24

25
```

```
 1    LOWENSTEIN SANDLER LLP

 2         Attorney for Plaintiffs Darby and Jones

 3         65 Livingston Avenue

 4         Roseland, NJ 07068

 5

 6    BY:  JOHN K. SHERWOOD, ESQ.

 7

 8    LOWENSTEIN SANDLER LLP

 9         Attorney for Plaintiffs Darby and Jones

10         1251 Avenue of the Americas

11         New York, NY 10020

12

13    BY:  MICHAEL S. ETKIN, ESQ.

14

15    UNITED STATES DEPARTMENT OF JUSTICE

16         Attorney for the U.S. Trustee

17         U.S. Federal Office Building

18         201 Varick Street

19         Suite 1006

20         New York, NY 10014

21

22    BY:  BRIAN MASUMOTO, ESQ.

23

24

25
```

Page 7

```
 1   CAPLIN & DRYSDALE, CHARTERED

 2        One Thomas Circle, NW

 3        Suite 1100

 4        Washington, DC 20005

 5

 6   BY:  PETER VAN N. LOCKWOOD, ESQ.

 7

 8   CAPLIN & DRYSDALE, CHARTERED

 9        600 Lexington Avenue

10        21st Floor

11        New York, NY 10022-7619

12

13   BY:  ELIHU INSELBUCH, ESQ.

14

15   STUZMAN, BROMBERG, ESSERMAN & PLIFKA

16        2323 Bryan Street

17        Suite 2200

18        Dallas, TX 75201-2689

19

20   BY:  SANDER L. ESSERMAN, ESQ.

21

22

23

24

25
```

Page 8

1   KELLEY DRYE & WARREN LLP

2       101 Park Avenue

3       New York, NY 10178

4

5   BY:  BENJAMIN D. FEDER, ESQ.

6

7   PACHULSKI STANG ZIEHL & JONES

8       Attorney for Plaintiffs

9       780 Third Avenue

10      36th Floor

11      New York, NY 10017-2024

12

13  BY:  MARIA A. BOVE, ESQ.

14

15  BECNEL LAW FIRM, LLC

16      Attorney for Jomaka Coleman, et al.

17      425 West Airline Highway

18      Suite B

19      Laplace, LA 70068

20

21  BY:  DANIEL BECNEL, JR., ESQ. (TELEPHONIC)

22

23

24

25

Page 9

<pre>
 1              P R O C E E D I N G S

 2              THE COURT:  Good morning, have seats, please.  I

 3    know most of you at the counsel table.  Mr. Steinberg, with

 4    you is whom?

 5              MR. STEINBERG:  With me is -- well, you can

 6    introduce yourself.

 7              MR. GODREY:  Richard Godfrey, Your Honor.

 8              MR. STEINBERG:  From Kirkland.

 9              THE COURT:  Mr. Godfrey?  Okay.  Thank you.

10              MR. GODREY:  Good morning, Your Honor.

11              THE COURT:  I know Mr. Weisfelner, Mr. Inselbuch,

12    Mr. Esserman, and Mr. Flaxer.  As others want to be heard

13    I'll give them that opportunity as we go along.

14              Within limits I'm going allow parties to be heard

15    as they see fit, but I have some preliminary comments.

16              I haven't read all 3,500 pages of the filings that

17    have come in in the last ten days, but I've read New GM's

18    motion, Mr. Flaxer's complaint, Mr. Weisfelner's objection,

19    and have also read all of counsel's letters and the various

20    proposed agenda items.

21              I think I have a pretty decent handle on the

22    issues that are going to need to be addressed today and the

23    issues that are going to need to be addressed in the

24    upcoming several months, but I'm less clear as to the extent

25    to which all of the issues are already on the table.
</pre>

1            Identifying the issues that are going to need to

2    be teed up for judicial determination, or more exactly

3    figuring out how and when they're going to be put on the

4    table, is one of the primary purposes of the conference

5    today.

6            I think everybody understands or should that today

7    is not the day to argue the merits of any of your respective

8    positions or especially calling either side names.  It's

9    instead to, as I said, identify the issues that need to be

10   addressed and to establish a fair means for getting the

11   issues judicially determined.

12           I appreciate the efforts of Mr. Steinberg and

13   Mr. Weisfelner and Mr. Inselbuch, Esserman, and Flaxer in

14   conferring before we got here to avoid inefficiencies and to

15   set up the orderly process for teeing these issues up.  You

16   got pretty far and I'll take care of the rest.

17           As you'll hear momentarily I have a number of

18   tentatives, as that expression is used in California and

19   elsewhere in the Ninth Circuit, which are my inclinations as

20   to how to proceed, subject to your rights to be heard, but I

21   have some expectations as to an orderly discussion, no

22   histrionics, no repetition.  I also have some questions and

23   concerns that I want you to address when it's your turn.

24           Starting with my questions.

25           I gather there are now about 60 class actions and

Page 11

1    a couple of individual actions pending against New GM in

2    various parts of the country with respect to the ignition

3    switches in some way, but I have only a partial

4    understanding of what the claims typically characterized as

5    for economic loss are.

6              I'd understood, rightly or wrongly, that New GM

7    voluntarily assumed liability for wrongful death, personal

8    injury, and property damage with respect to any "incidents

9    or occurrences," which I understood to be things like wrecks

10   or fires or of course death or injury, that took place after

11   the sale in July of 2009.

12             I also understood that New GM had undertaken

13   responsibility for satisfying the glove box warranty and for

14   complying with state lemon laws.

15             But I need to get a handle on what's left.  What

16   is left that has engendered 60 class actions across the

17   country?  And obviously I'll hear your respective views on

18   that.  I got a pretty good sense of the legal theories that

19   were invoked, vis-à-vis that economic loss, but I still

20   don't understand exactly what we're talking about.

21             Mr. Inselbuch's April 24th letter identifies an

22   issue as to whether claims against New GM, statutory or

23   otherwise, based on post-sale conduct of New GM are subject

24   to my orders.  Mr. Esserman's April 23rd letter and

25   Mr. Weinberg's -- I don't see Mr. Weinberg, is he here

Page 12

1   somewhere?  Oh, yeah there is he, okay.  April 30 letters

2   raise whey I understand to be the same issue.

3           To what extent, and I guess this is mainly for

4   you, Mr. Steinberg, is there a dispute on that?  Or is the

5   devil in the details turning on the whether the alleged

6   wrongful conduct is wholly past sale or there's some other

7   nuance that would make the question harder than it would

8   appear at first blush?  Help me get a better handle on what

9   we're talking about in that regard.

10          A similar issue exists with respect to the lemon

11  laws as mentioned in Mr. Esserman's April 23rd letter.

12  Please address that as well.

13          Next, each of the Steinberg and Weisfelner letters

14  talk about getting a sense as to how the majority of the

15  class action plaintiffs are prepared to proceed.  I

16  underscore the word majority.  When each of you use that

17  term it suggested to me, rightly or wrongly, that the

18  plaintiffs referred to were less than all of them.  I think

19  what you were able to accomplish was very, very helpful, but

20  have some difficulty in seeing how that by itself would get

21  me across the goal line.

22          The fact that all plaintiffs couldn't get behind

23  three law firms -- and on this limited issue I think I can

24  take judicial notice -- have some proven track record in

25  addressing the interface between tort liability and

Page 13

1    bankruptcy law causes me some concern.  Because as I said, I

2    don't want repetition, and that includes making the same

3    point in different ways.  I need to hear from anybody who

4    thinks those three firms aren't good enough why that's so,

5    or conversely why they're not raising issues that need to be

6    addressed.  That's not to say that anybody who thinks up

7    anything those firms couldn't can't be heard, but I need to

8    know why and what's the problem.

9             I also want to hear from Mr. Flaxer, since he was

10   the first and he was the only one that brought an adversary,

11   and I don't put him in the category that I put all the

12   others.

13            Next, Mr. Esserman speaks in his April 23rd

14   letter, paragraph 5, of teeing up procedures for plaintiffs.

15   I don't know if this is the class action plaintiffs he

16   represents or all prospective plaintiffs, to show cause

17   whether they have any claims against New GM not otherwise

18   barred by the sale order and injunction.

19            You wrote that letter, Mr. Esserman, back on

20   April 23rd and I gather you've had discussions with other

21   folks since that time.  I'd like you or Mr. Weisfelner, let

22   me know whether you have any needs and concerns to get

23   rulings on this that haven't been subsequently rolled into

24   what needs to be addressed, and I'd like to ask the same

25   with respect to the item you listed as number 7 in your

1   letter, procedures under which, assuming the sale order

2   stands without modification, under which plaintiffs might

3   seek amendments to it.

4           Okay, now for my tentatives.  I apologize to you

5   all for speaking at such length.

6           As I said these are California tentatives, which

7   are views I formed on a preliminary basis after reading the

8   briefs and the letters but which are subject to your rights

9   to be heard and which I'll obviously consider in the way of

10  modifications based on whatever you tell me verbally.

11          First.  Now that fraud on the Court has been taken

12  off the list of threshold issues I'm not sure if there's a

13  material difference in views or for that matter any

14  difference in views on the threshold issues that need to be

15  addressed at least insofar as the majority of the plaintiffs

16  are concerned.

17          I'm inclined to consider as threshold issues the

18  two remaining issues that were shown on Mr. Weisfelner's

19  black line, and I'm also amenable and inclined to allow any

20  other purely legal issues to be raised along with the so-

21  called threshold issues, such as the discrimination

22  argument, that is the argument that creditors with personal

23  injury claims, death claims, property claims would be

24  addressed by New GM whereas those with the so-called

25  economic damage claims would not.

Page 15

1          It seems to me, again subject to your rights to be

2     heard, that the more appropriate means of demarcation

3     between claims that can and should be considered as

4     threshold issues and those that can be put and should put to

5     a later time is to separate issues that can be addressed

6     without discovery from those that can only be addressed with

7     discovery and potentially a very burdensome or at least

8     lengthy discovery process.

9          The principal players as I read the letters, New

10    GM and the class action plaintiff steering committee seem to

11    feel that they can win without discovery, and whether or not

12    either side is right in that regard that seems to me, that

13    is to deal with issues without discovery, to be the logical

14    place to start since even if issues need to be further

15    addressed or refined the early work that's accomplished

16    would set the table for the work, if any, that needs to be

17    considered next.

18          The corollary of that would seem to be that I need

19    to reject the contentions of a couple of you, and I'm

20    thinking of Mr. Esserman, your first -- your April 23rd

21    letter and Mr. Etkin's April 30 letter, that we should now

22    have discovery, and as I read your early letter,

23    Mr. Esserman, what would seem to be pretty massive discovery

24    early on and that such discovery should proceed on an

25    expedited basis.

Page 16

1    Once again I note that you, Mr. Esserman, are a

2    member of the steering committee and your views may have

3    evolved since April 23rd when you wrote that early letter.

4    Two.  My tentative is not to interfere with the

5    MDL's hearing now scheduled for May 29th, I think that's the

6    date, and to permit the judicial panel and multidistrict

7    litigation to rule on where pretrial proceedings with

8    respect to any future litigation should proceed, but that

9    would be under the understanding, at least under my

10   understanding -- that's why I wanted you guys to be heard on

11   it -- that everyone understands that to the extent I

12   hereafter rule in a way that some or more than some of those

13   now pending litigations before the MDL panel need to be put

14   on hold or stopped in some other fashion, that I would be

15   free to do that, including vis-à-vis, the multidistrict

16   panel irrespective of what the MDL panel had accomplished up

17   to that point in time.

18   Three.  I share your view that anyone who's

19   unwilling to agree to a temporary standstill that the

20   majority seems to agree upon should come forward within a

21   time certain either on the date that's already proposed,

22   which I think was May 10, or some alternate date.  More

23   likely close to that, but if fairness requires a little more

24   time that to my thinking would be okay.

25   Reading the submissions so far it's obvious that

Page 17

1    these are serious issues, and my general view -- call it a

2    tentative or not -- is that rushing by a few days or even a

3    few weeks on issues of this importance isn't in anybody's

4    interest.

5            Fourth.  I think we need to ascertain by a date to

6    be agreed upon or set all of the issues that are on the

7    table or that are to be decided even if they're not

8    addressed as what I call Phrase I issues.  I need your

9    recommendation as to the best way to do that, and what

10   deadline I should impose for parties to get their

11   contentions on the table.

12           That wouldn't necessarily mean that they should

13   all be briefed at that early time, and in fact my

14   expectation would be that they wouldn't be, but I want to

15   get the lay of the land on the issues that I'm going to be

16   asked to rule upon.

17           Related to that was Mr. Flaxer's suggestion that a

18   date should be set by which any and all interested parties

19   should commence adversaries similar to the one he brought if

20   they were of a mind to.  My tentative is to agree with

21   Mr. Flaxer's point in that regard.

22           Fifth.  I want to accomplish as much as we can

23   before we get bogged down in discovery.  I like the idea of

24   you guys agreeing on a stipulated record, but I don't like

25   the variant of that, which I think was proposed by

Page 18

1    Mr. Weisfelner, which was request for admissions.  If things

2    would be admitted they'd be stipulated to, and if they're

3    not admitted they're going to result in disputed issues of

4    fact as to which we're going to have to come up with some

5    other mechanism, and Rule 35 requests for admissions is

6    really nothing more than a cost shifting device any way.

7            So I want you guys when the time comes to really

8    try to agree on everything you can agree upon consistent

9    with your professional responsibilities and then identify

10   issues as to which you agree to disagree and I'll decide

11   then what to do about it.

12           Six.  We have one adversary proceeding on file and

13   one contested matter.  Other adversaries may be filed

14   consistent with the point Mr. Flaxer made, but at this point

15   I have these two, we need to think about the possibility of

16   more.

17           My tentative to consolidate the contested matter

18   and any adversaries for procedural purposes.  Mr. Steinberg,

19   your letter cited decisions by Judge Lifland and Judge

20   Walrath indicating pretty clearly holding that when you're

21   enforcing an earlier court order you don't need to bring an

22   adversary to do that, but many observers might agree with

23   the judgment that Mr. Flaxer presumably made that when he

24   wanted a declaratory judgment and he wanted some of the

25   stuff that he asked for in there an adversary proceeding was

Page 19

1    appropriate.

2          I guess the issue is whether others who are

3    looking for things similar to what Mr. Flaxer did would need

4    to either climb onto his adversary or bring their own

5    adversaries.  It might be appropriate for separate

6    adversaries to be brought, although my thought would be that

7    they would be procedurally consolidated and jointly

8    administered as well, but I need people to focus on that.

9          If those adversaries are to be brought -- and many

10   might regard that as a good idea, but I'm not forming a

11   tentative on that -- Mr. Flaxer's point that it should

12   happen by a fairly early date certain seems to me to be

13   pretty persuasive.  But again, that's a tentative.

14         Seven.  While these issues mainly involve New GM

15   some also appear to also involve Old GM or the GUC Trust,

16   the general unsecured creditors trust, that's Old GM's

17   successor.

18         It would seem to me that there's an issue as to

19   whether there might be excusable neglect to file late claims

20   against Old GM to the extent that I ruled that any of the

21   claims being asserting are prepetition claims rather than

22   post-petition claims if the ability to assert those claims

23   wasn't known by the time that the Old GM case bar date

24   expired.

25         When I was preparing for today I speculated that

1    issues of that character were why Mr. Golden wanted to have

2    the opportunity to be heard.

3         To the extent any issues involving Old GM or the

4    GUC Trust can be heard as matters of law my tentative is

5    that they should be considered along with the other

6    threshold issues and that anybody who cares about those

7    kinds of issues should have a chance to weigh in on them.

8         Lastly, eight.  In his April 24th letter

9    Mr. Flaxer raised the issue of mediation.  Obviously the

10   idea or the prospect of meeting the two sides needs and

11   concerns without this monstrous battle is attractive to me.

12        When I was a practicing lawyer a district judge in

13   Delaware, Joe Farnan, some of you may know him, made an

14   impression on me and I think a bunch of other lawyers when

15   he said that the guy in the robe would do his job but

16   parties' needs and concerns could be better addressed by

17   negotiation than by forcing a judge to decide issues within

18   the four corners of what judges are allowed to decide.

19        And frankly it would be great if whatever money is

20   available for injured people could go to them and not to

21   litigation costs and attorneys' fees.  I have no tentative

22   on this, but I want people to address it by the time they're

23   done.

24        So we're ready to continue.  Mr. Steinberg, I'm

25   going hear from you first, then Mr. Weisfelner, then from

Page 21

1    anybody who has any non-repetitive remarks to make after

2    that.  Oh, Mr. Flaxer, can I hear from you, please, after I

3    hear from Mr. Weisfelner if you care to be heard.

4            Mr. Steinberg.

5            MR. STEINBERG:  Thank you very much, Your Honor,

6    and thank you for the careful consideration of the issues

7    that have been presented.

8            I'd like to be able to address the tentatives and

9    then go back to the questions and then maybe find the script

10   that I had started in connection with this hearing.

11           Your Honor had identified the demarcation for

12   threshold issues as that which could be done with either no

13   discovery or very little discovery versus something that

14   would lead to much more complex discovery, and we agree that

15   that is a proper formulation.

16           The one thing that we would ask Your Honor to

17   consider, and I understand the balance here, is that we had

18   suggested as well as I think Mr. Flaxer, that fraud on the

19   Court would be a threshold issue.

20           Generally we were lumping all the Rule 60 issues

21   together, and many times when someone argues 60(d)(1), which

22   is whether there's an equitable remedy that should be

23   fashioned, or even the 610(b)(4), which is the procedural

24   due process, they usually throw in 60(d)(3), which is the

25   fraud on the court, whether it's proper or not, but that's

Page 22

1   -- but they assert those in.  And so I understand that fraud

2   on the Court may require some additional discovery, but the

3   issue is how much additional discovery and should it be

4   considered as well as a threshold issue?

5           THE COURT:  You read my mind, Mr. Steinberg,

6   because when I thought about fraud on the Court in trying to

7   put myself in the role of a plaintiff's lawyer then I would

8   have thought that the plaintiff's lawyer would want to get

9   into GM's files or communications to ascertain the extent to

10  which behind the scenes Old GM was thinking about this

11  liability and not making a disclosure to me.  You think

12  that's only modest discovery or can be limited in that

13  fashion or were you thinking about a different kind of

14  discovery that might be undertaken, vis-à-vis, that issue?

15          MR. STEINBERG:  Well the issue about whether the

16  Old GM professionals or the people in charge of negotiating

17  the MSPA or the people in charge of presenting evidence to

18  Your Honor, that would be a fairly discreet time period.  I

19  mean the bankruptcy was filed on June 1, the order approving

20  the sale was July 5.  So we don't think that necessarily the

21  discovery from a time span is as significant.  We're also

22  fairly confident what the result would be of that -- of any

23  of that type of discovery.

24          But, Your Honor, as you outline the issue if the

25  choice that we had was to effectively piecemeal the 60(d)(3)

1    issue and the trade off would be a much more streamline

2    procedure to present the legal issues -- so either there'd

3    be no discovery or very, very little discovery -- that may

4    be something that we're prepared to do, because we

5    understand the logic of that.  And though it's piecemealing

6    a Rule 60 issue it may make sense under the circumstances to

7    be able to present as many of the pure legal issues as

8    possible.

9         I probably would need, and I'm sure this side of

10   the table probably needs the opportunity to talk to their

11   other people as well too to see whether they agree with my

12   formulation, but I certainly understand the logic of it and

13   if there was an agreement that there would be little or no

14   discovery and we would just try to stipulate as much as we

15   could to a stipulated record that may be a good avenue to go

16   forward.

17        Your Honor, in trying to address one of your other

18   tentatives, because I think it ties into a number of

19   different issues, you'll see that -- that in our agenda

20   letter we had said that the people who brought the adversary

21   proceeding could file an amendment to the complaint by

22   May 14th, provided that it doesn't object to the substance

23   of what we agree to as the procedure going forward today.

24   So if they want to restate what they think their claims are

25   and perhaps try to make sure that it was more inclusive of

Page 24

1    other people then that's fine.

2            And you see that in Mr. Weisfelner's letter that

3    he talked about filing an amended complaint in the -- in the

4    MDL action as a procedural issue, which we don't think is a

5    procedural issue, we actually think it's a substantive

6    issue.  But both things -- both of those issues evolve

7    around one of the tentative --

8            THE COURT:  Forgive me, Mr. Steinberg, I lost you

9    there.  I thought you said filing an amended complaint in

10   the MDL action.  I thought that my only connection with the

11   MDL action is I guess I have the power to put it on hold,

12   but what else do I have to do with the MDL action?

13           MR. STEINBERG:  No, Your Honor, I was trying to

14   lead to a point, but I was merely saying that there was a

15   point of disagreement in the letters as to whether the

16   agreement to allow them to go forward on the May 29th

17   hearing and that it wouldn't be stayed and that it would be

18   for purely administrative matters, and we were disagreeing

19   as to whether the filing of an amended complaint in the MDL

20   action would be an administrative matter or a substantive

21   matter.

22           But the point that I was trying to connect between

23   these things is that -- is that the filing of an amended

24   complaint by Mr. Flaxer or a recitation to file a

25   consolidated complaint to try to get all those theories

Page 25

1    together is really trying to address Your Honor's tentative

2    ruling about wanting to know what are the bankruptcy-related

3    issues, what is -- what is it that they think that they can

4    go forward on that -- that would not otherwise be foreclosed

5    by the sale order?

6           All of those things are touching the same thing,

7    and my suggestion in light of your -- the tentatives and in

8    thinking about it and the reviewing the letters is that the

9    issue of whether they should file a complaint in the MDL

10   action or not should be -- should in effect be deferred

11   until the next status conference, and that one of the things

12   that we should be doing between this status conference and

13   the next status conference is to try to decide what we had

14   called in our agenda letter the bankruptcy-related issues

15   that are not the threshold issues, to try to define what it

16   is that we ultimately are going ask Your Honor to set forth,

17   because that's the exercise that's imbedded in doing either

18   the amended complaint to the adversary proceeding or the

19   amended complaint to try to coalesce all of these

20   complaints.  Those are the issues that someone will have to

21   decide are bankruptcy-related issues or survive and should

22   go forward without, and that's the exercise that I think

23   should be done, and I don't think we should reach a firm

24   decision as to whether they should be doing anything more

25   than -- on the MDL proceeding to go forward on May 29th, do

Page 26

1   the things like selection of lead counsel, the things that

2   we can agree are purely administrative, and we should defer

3   consideration of the amended complaint issue until the next

4   status conference.

5           THE COURT:  But matters of the character that the

6   MDL could appropriately determine in your view could include

7   whether the pretrial proceedings take place in say

8   California on the one hand or New York on the other?

9           MR. STEINBERG:  For the MDL I think the MDL should

10  be able to select which forum is going to go forward on

11  generally the MDL action to the extent that the MDL action

12  will ever go forward.

13          THE COURT:  Okay.  Continue, please.

14          MR. STEINBERG:  The -- Your Honor, with regard to

15  the -- your tentative ruling on the stipulated record and

16  that we don't do admissions, that is essentially what we

17  have been trying to urge on the plaintiffs.

18          One of the issues was that we had discussions

19  separately with one group versus another group and they had

20  differing views on certain issues.  And even with the group

21  that had a larger issue what we were getting to some extent

22  was the lowest common denominator.  When you have 15 people

23  having suggestions sometimes you get 15 suggestions because

24  no one really wants to whittle it down and they leave it up

25  to us to do it.

1          We urge to do a stipulated record under the theory

2     that it's too early to do admissions, it is a -- really just

3     a cost shifting issue as Your Honor had identified, and it

4     leads to a dialogue.  If they -- if they propose that they

5     want us to agree to something instead of me answering as I

6     would answer an admission I'd be sitting there saying I

7     can't do that but I can do something different and then we

8     would have an iterative dialogue to be able to try to

9     present what the issues are and then I wouldn't have to try

10    to do the reflexive issue, which is that if you want

11    admissions then maybe I have admissions that I want to ask

12    of you.  Did you know of the bankruptcy proceeding?  Did you

13    know of a problem with your car?  Those things and try to

14    identify those issues, which may be relevant to certain of

15    the issues whether it's -- that they may tangentially relate

16    to the fraud on the Court issue, which may be off the table

17    now, but -- so I said stay with the stipulation and if we

18    can't agree to it we'll have a status conference in June and

19    we'll tell the judge this is as far as we could get and we

20    couldn't get all the way there, and if we couldn't agree on

21    everything then you could propose what kind of limited

22    discovery you think you need to conclude those facts that

23    are necessary to determine the purely legal issue.  We'll be

24    able to evaluate it.  And then if we can't agree with that

25    we'd be before Your Honor on something specific and

Page 28

1  concrete.

2         And the problem that we were having between now

3  and May 2nd is that there was a lot of general propositions

4  that were asserted and many times the devil is in the

5  detail, and you need to know when someone says it's purely

6  administrative it's not substantive you really need to know

7  what they are talking about.  When people say we can agree

8  to some facts and it's not going to be big, it's going to be

9  narrowly tailored you need to know what someone means when

10  they say narrowly tailored, because when actually try to pin

11  it down it becomes a lot more difficult.

12         So what we were proposing -- and I think there was

13  a lot of receptivity on it from the other side -- was a walk

14  and then run, which is give us a chance to try to do an

15  exchange and we'll see how good we are, and give us a chance

16  if we can't fill in all the gaps to how to complete the

17  discovery and we'll see how good we are, and if we can't do

18  it then I know that you're going to bridge the gap for us

19  and then we'll both live with whatever Your Honor rules.

20  And we're only looking to defer that consideration where we

21  otherwise couldn't agree for like a six or seven-week

22  period.

23         And the reason why we think that time period going

24  a little longer versus shorter is better -- and I think Your

25  Honor eluded to that as one of your tentative rulings that

1  sometimes things take a little longer and these serious

2  issues -- is that until we know how they've organized -- and

3  it's really their job to organize, but it's our burden to

4  make sure that we're dealing with 2 groups of people,

5  4 groups of people, or 20 groups of people, because it

6  becomes harder to figure out briefing schedules, potential

7  discovery, stipulation of facts if we don't know who the

8  people are that we're dealing with you may need to have a

9  little more time until they get better organized to be able

10  to do that.  That's why we actually suggest in our agenda

11  letter is just tell us if you formed a group.  That has the

12  salutary effect of at least we know who we're dealing with

13  and Your Honor will know whether they actually formed the

14  group, and those who decide they want to be outliers well

15  then they will have to stand up and tell Your Honor why they

16  need to be an outlier and the liaison groups couldn't

17  properly be formed.

18          But that's all we were trying to say on that

19  issue, which is give them an opportunity to get themselves

20  organized and let us know how successful you were, and where

21  you were not fully successful just let us know because we --

22  we on our side of the table procedurally have to deal if

23  they're not fully organized and then ultimately Your Honor

24  will have that same issue about how things are being

25  presented to Your Honor.

1          With regard to -- so that's why we thought we

2     needed a little more time.  And by the way, the dates that

3     we selected in our letter were given to us by one of the

4     plaintiff groups, and the other plaintiff group actually

5     said, while they shortened our dates, they also said in

6     their letter that they're flexible about the dates.  So I

7     don't think ultimately at the end of the day we're going to

8     disagree about dates, about when we're going to be here.

9          I think the general proposition is that between

10    now and some time in mid to late June when we'll have

11    another status conference we're going to try to accomplish a

12    stipulated record for briefing the threshold issues and to

13    see whether there's any discovery that is it warranted or

14    not with regard to that stipulated record.

15         And I would suggest also, and this is off my

16    agenda letter, but picking off on the tentative ruling,

17    trying to identify during that period of time the other

18    issues which are not threshold issues, the other bankruptcy-

19    related issues that we'd ask Your Honor to consider, and

20    we'd be doing all of that presentation at the next status

21    conference.  And at that next status conference, to the

22    extent that the defendants are not fully organized, that we

23    would try to -- and it wouldn't be me, but it would be Your

24    Honor and the plaintiffs -- try to figure out how they can,

25    you know, get to the end to themselves more fully organized.

1         The tentative that you had about the GUC Trust,

2    late-filed claims, excusable neglect, we actually think that

3    this is an issue that should be dealt with.  It is not our

4    issue, but to the extent that they've raised or some of them

5    have raised a procedural due process issue relating to the

6    bar order, which was after the sale order had taken place

7    and they're saying that they don't have a remedy -- an

8    effective remedy against Old GM, well there is a GUC Trust,

9    there are a number of -- there's a number of values still

10   left in the GUC Trust.  Whether they actually are a

11   creditor, where they actually have excusable neglect I'm not

12   trying to prejudge it, but we were urging that they

13   shouldn't just assume that there was nothing there when

14   there is potentially something there and they should be able

15   to and should be almost in fact required to at least explore

16   that as an alternative to try to get a recovery, if they're

17   entitled to a recovery.  I wasn't trying to say that they

18   were or not.

19         As far as the suggestion of mediation, it is

20   always hard to say that you're against mediation.  The only

21   thing that I would say, Your Honor, is that New GM has hired

22   Ken Feinberg, who is a very well known person who tries to

23   figure out how to deal with circumstances and to how to

24   adjust situations on a non-legal base, but to try to

25   negotiate a resolution.

1          Mr. Feinberg is working on the matter but he

2     hasn't -- while studying what to do he hasn't taken it to

3     the next step.  And my own feeling about mediation is that

4     we would like to see whether Mr. Feinberg -- what

5     Mr. Feinberg will do and not do and let's see where the

6     legal issues lie, but understand that the overall sentiment

7     that Your Honor expressed, which is that at the end of the

8     day if there's going to be a negotiated resolution you

9     better do it -- you're better off doing and being able to

10    pay the people who claim to have suffered injury, better off

11    paying them than to end up building up a big load star and

12    paying other people.

13         Your Honor had asked what the -- to confirm what

14    these lawsuits were about.  Your Honor was absolutely

15    correct that under the MSPA, the asset purchase agreement

16    upon which New GM took assets, that New GM assumed the

17    liability for the glove box warranty, the lemon law

18    liability, and for accidents, incidents that led to the loss

19    of life, personal injury, or property damage for anything

20    that took place after the sale.  So if there was an Old GM

21    vehicle that was -- got into an accident after the sale and

22    that led to an injury issue that was something that New GM

23    assumed the responsibility for.

24         These lawsuits are not those cases, and we didn't

25    move by the way just so it's clear -- we did not move to

1    enforce Your Honor's injunction for the presale accidents,

2    which were actually retained liabilities under the MSPA.  We

3    purposely carved out the accident victims whether it's

4    presale retained liability or post-sale assumed liability,

5    because we wanted to focus in as to what these lawsuits were

6    about.  These lawsuits are about a claimed economic loss,

7    the value of a car which is six, seven, eight, nine, ten

8    years old for the loss in value because of the announcement

9    that there was going to be an ignition switch recall and

10   that that car had lost its value until the time that it is

11   being repaired through the recall or not.  I'm not sure if I

12   can figure that out.

13          THE COURT:  Pause please.  Maybe this question is

14   better directed at your opponents.  But is this before or

15   after the cars were fixed?

16          MR. STEINBERG:  This --

17          THE COURT:  I mean the loss in value, because I

18   would assume that if a car hasn't been fixed it would lose

19   value, but I'm not sure what the view of --

20          MR. STEINBERG:  This has --

21          THE COURT:  -- parties would be after it's been

22   fixed.

23          MR. STEINBERG:  This I don't think has anything to

24   do with the cars being fixed or not, because by virtue of

25   the recall New GM is committed to fixing the cars, replacing

1    the ignition switches, and to doing it tentatively now they

2    think they'd be able to complete it by the end of October of

3    this year.  So everybody is going to have their car fixed

4    and so the ignition switch is going to be fixed.  This is a

5    perceived loss in value of a car that has some history on it

6    for the -- because of the announced recall for whatever that

7    loss of value is.

8              So frankly in one of the individual cases that was

9    brought in Texas where we were involved in a litigation as

10   to whether all of the cars with the ignition switch issued

11   should be parked.  The actual lawsuit was about a 2006

12   Cobalt -- Chevy Cobalt which had 165,000 miles on it, and

13   the issue was the deterioration in value of that car by

14   virtue of the announcement of the ignition switch recall.

15   That was what that lawsuit was about.

16             The injunctive relief was whether all cars should

17   be parked because of a perceived defect between now and

18   until it was repaired.

19             But that was the nature of that lawsuit, and I

20   know that if I'm not properly characterizing how the

21   economic losses are I'm sure that the people who'll follow

22   me at this rostrum will be able to -- be able to do that,

23   but that's my understanding of it.

24             These are people who have not had any accident,

25   any property damage, or personal injury, this is for the --

1    and they are going to get compensated for -- they are going

2    to get their -- the repair of the ignition switch by virtue

3    of the recall, and I think that to the extent that they had

4    to do it themselves before the recall has a provision about

5    whether they get compensated for that as well, but this is

6    for the perceived deterioration in the value of their car by

7    virtue of this announcement.

8            Now just to make it clear too because it deals

9    with the issue, Your Honor, as to what's, you know, the New

10   GM conduct versus the Old GM conduct.  I think Your Honor

11   had talked about that.  All of the -- all of the cars with

12   an ignition switch issue, all of them were Old GM vehicles.

13   By the time of the sale the ignition switch had been

14   corrected in the cars.  The recall --

15           THE COURT:  By that you mean new cars then being

16   constructed?

17           MR. STEINBERG:  Right.

18           THE COURT:  Okay.

19           MR. STEINBERG:  The issue why the recall involves

20   some post-sale cars is a nuance difference.

21           What happened was someone with a new car, which

22   had a good ignition switch, would go in to have their car

23   repaired and there was a possibility that the person who

24   repaired that car, which may have been a GM dealer or may

25   have been someone totally different, they may have actually

1    put in an old ignition switch part.  They may have taken a

2    good part out and put a bad part in.  And since New GM

3    didn't know whether -- whether that -- which cars that

4    occurred to it announced the recall for some post-sale cars.

5    But the cars that would ever be impacted by this is a very,

6    very small element, but New GM is repairing all of those

7    ignition switches.

8            So the issue in our view is that we believe that

9    everything they're talking about relates to Old GM conduct,

10   Old GM manufactured cars, and that -- and that what they're

11   trying to build on is the fact that under the sale order and

12   the MSPA New GM accepted as a covenant, not an assumed

13   liability, but a covenant, to comply with -- with the

14   federal laws relating to recall, and they're saying that

15   that somehow creates claims because New GM didn't recall

16   these vehicles fast enough and that they should have done it

17   faster.  And we believe that all of that relates to -- all

18   of those claims whether they could ever assert that as a

19   private right of action, which we don't think is correct, we

20   think all of that is an Old GM retained liability issue.

21           Now, I don't expect them to agree with my

22   recitation of that, but that is the nuance, right, that is

23   the issue as to why it's not a clear demarcation.

24           What is clear is that if New GM manufactured and

25   sold the vehicle and anything happen to do that vehicle that

Page 37

1    is not a retained liability, that is a --

2            THE COURT:  An ordinary liability.

3            MR. STEINBERG:  -- that is an ordinary New GM

4    liability.  And if there was an accident that has taken

5    place based on an Old GM vehicle, that is not before Your

6    Honor, that is not part of the list of ignition switch

7    actions that we brought before Your Honor, that's going to

8    go forward in New GM, understands that New GM is defending

9    that.  It's not also part of the MDL.  So that is -- that is

10   why I think --

11           THE COURT:  Pause please, Mr. Steinberg, I'm

12   trying to keep up with you.

13           What was the very last thing you said, the nuance

14   you were making on what would still be going forward?

15           MR. STEINBERG:  What is going forward is if

16   there's an accident relating to an Old GM car and if there's

17   an accident relating to a New GM manufactured car.

18           THE COURT:  Any kind of accident.

19           MR. STEINBERG:  Any kind of accidents are going

20   forward.

21           With regard to just the glove box warranty and the

22   lemon law, just so Your Honor understands the nuance that we

23   put in our papers, is that lemon law is defined in the MSPA,

24   it's defined as that you need to have brought it more than

25   one time to have a repair and it wasn't done.  And our

1    argument is that while we did assume lemon laws none of

2    these ignition switch actions that have been pled to date

3    talk about having brought it once to have it repaired and it

4    wasn't repaired and the second time it wasn't repaired to

5    qualify within the definition of what a lemon law means for

6    purposes of our assumption.

7         So I think it's correct that we did agree to

8    assume lemon laws, but -- a lemon law type claim, but none

9    of what is being asserted here fits within that paradigm.

10        If I'm wrong and there's a particular nuance out

11   of all the lawsuits that have been brought that was one of

12   the elements that we had asked for in our motion to enforce

13   which is in effect to show cause, tell us why you think

14   you're not otherwise bound, that you fit within the lemon

15   law that we assume because of your particular fact

16   circumstance and then we would evaluate it.  Because I can

17   make the general statement, but there may be a specific

18   exception that I haven't accounted for, but the general

19   statement is as far as I'm aware, based on the general

20   pleadings that have been done, is that no one asked to have

21   this being repaired a second time.  And as far as the glove

22   box warranty we're -- for all of these vehicles we're -- or

23   almost all these vehicles we're outside of the glove box

24   warranty, it's expired by this point in time.

25        So I think, Your Honor, with regard to the issue

1   that you had raised about the threshold issues we actually

2   had thought that the issues that had been raised in the

3   adversary proceeding under Rule 60 were all threshold

4   issues.  We understand the differences, and if it turns out

5   we can streamline discovery significantly by taking out

6   fraud on the Court that may be a better way to go, and we do

7   agree also that the discrimination issue that was raised by

8   Mr. Weisfelner in his papers is a pure legal issue.  I

9   frankly think Your Honor has decided the legal issue before,

10  but it's a pure legal issue and we think it should be taken

11  off the table.  And frankly there's a practical reason why

12  it should be taken off the table and we eluded to it in our

13  papers.

14          One of the things that Mr. Feinberg has been hired

15  to do is to evaluate whether there's something that should

16  be done to these prepetition accident victims, people who

17  have actually had an accident to which are a retained

18  liability should New GM --

19          THE COURT:  That would mean people who were

20  injured in prepetition accidents who were only getting 30

21  cents on the dollar who had filed claims --

22          MR. STEINBERG:  That's correct.

23          THE COURT:  -- or who had blown the bar date but

24  were actually hurt?

25          MR. STEINBERG:  Right.  That's why Mr. -- that was

Page 40

1    one of the primary reasons why Mr. Feinberg has been hired,

2    to see whether there's something that should be done as a

3    general basis.

4         If someone is going to say that if we did someone

5    on a voluntary basis for those victims, those people who

6    actually suffered an injury from an accident that we're

7    somehow picking up liabilities for a bunch of people who are

8    worried about the deterioration and the value of their car

9    then I think we need to know that, and so therefore we want

10   to put this as an earlier issue and not a later issue.  And

11   if they want to abandon it because they don't think it's a

12   proper issue to raise then that's okay too.  We're not

13   trying to litigate something that they're prepared to

14   abandon, but it has been raised.

15        If you actually read the pleading filed by -- on

16   this issue it makes it seem like it's a very important issue

17   and we're prepared to meet it head on and to -- and I don't

18   think it requires any discovery at all.

19        If you just bear with me just one second, Your

20   Honor, just to go through the rest of my notes.

21        I think that Your Honor when we -- when I came

22   into court and I think Your Honor summarized it correctly we

23   had actually agreed in many concepts with the people that we

24   had spoken with, and so there was a general understanding

25   that they would stand down on litigation and that those who

Page 41

1    didn't -- who weren't prepared to stand down would have to

2    show cause as to why they think they shouldn't stand down.

3          And there was a recognition on our part that to

4    the extent that we got bogged down for some reason that we

5    couldn't envision on the threshold issues and the other

6    bankruptcy-related issues needed to be brought to attention

7    or that they thought that there were issues that were not

8    bankruptcy-related issues but they had decided to in effect

9    wait on and that they would otherwise be a part of the MDL

10   we had agreed, and I think the date differences were end of

11   July versus beginning of September, we would have an

12   effective grace period but then we thought they had to come

13   to Your Honor.  If they wanted to relax the stay because

14   they thought they were otherwise being aggrieved because

15   this process wasn't playing out the way that they had

16   envisioned or that they thought they --

17          THE COURT:  You mean the process before me in

18   terms of --

19          MR. STEINBERG:  That's correct.

20          THE COURT:  -- getting these issues --

21          MR. STEINBERG:  That's right.

22          THE COURT:  -- judicially decided?

23          MR. STEINBERG:  They then could try to make their

24   case before Your Honor, and we thought that that was okay.

25   I mean no one -- no one could quite envision exactly how

Page 42

1    this is going to go, we wanted to have a breathing spell to

2    make sure that this is going along in the direction that

3    everybody thinks it's going along, but we were not looking

4    to permanently foreclose anybody's rights if they thought an

5    adjustment had to be made.  And so if they needed to have

6    that explicit as part of their agreement up front to stay

7    their litigation then we were prepared to do it, and I think

8    there was just a difference in a month, and I think our date

9    was -- probably made more sense because of the inherent

10   delays that we'd have in the system.

11            I think, Your Honor, we had agreed on most of the

12   threshold issues and Your Honor's tentatives had addressed

13   the rest.  We had actually agreed to in effect do this in

14   two steps, and Your Honor has properly identified that while

15   doing it in the two steps we should make progress and try to

16   identify what will be litigated in the second step.  And I

17   think Your Honor's tentative addressed the differences we

18   had on stipulations of facts versus admissions and the

19   timing of submissions.

20            So I think Your Honor's tentatives have bridged

21   the gap where we differed and we were fairly close coming

22   into the courtroom, and I think you for that and I'll turn

23   over the rostrum to other people.

24            THE COURT:  Before you do, please, Mr. Steinberg.

25            The day after you wrote your letter, I think yours

Page 43

1   was on April 30th, I got both a letter and a black line from

2   Mr. Weisfelner where he'd massaged what had been one of your

3   paragraphs and he gave me a black line articulating issues

4   that would be decided as threshold issues.  Is there any

5   difference between you and Mr. Weisfelner, that is between

6   your thinking and his black line mark up?

7           MR. STEINBERG:  Yes.  The --

8           THE COURT:  On that point, how so?  I didn't

9   follow that.

10          MR. STEINBERG:  Well our original proposal

11  included fraud on the Court being a threshold issue and they

12  had crossed that out, so that is one difference.

13          The second difference was that we thought the

14  discrimination argument was a threshold issue and they had

15  said they didn't think it should be a threshold issue.

16          THE COURT:  So he wanted to drop fraud on the

17  Court from the first phase and you leaned in favor, although

18  I thought you -- the way I heard you you didn't think of it

19  as something you felt strongly about, you thought that with

20  limited discovery it could be considered as a Phase I issue

21  and you favored inclusion of the discrimination argument and

22  you understood him to prefer not to deal with that now.

23          MR. STEINBERG:  I think he crossed that out and

24  asked to not deal with that, yes.

25          THE COURT:  Okay.

Page 44

1          MR. STEINBERG:  So --

2          THE COURT:  Thank you.

3          MR. STEINBERG:  -- and so just to be clear, while

4   I thought fraud on the Court should be a threshold issue

5   because it's a Rule 60 issue, to the extent that we can

6   accomplish something significant on the discovery front in

7   curtailing it then I understand clearly the logic of making

8   that a secondary issue.

9          THE COURT:  Okay.  Thank you.

10          Mr. Weisfelner.

11          MR. WEISFELNER:  Judge, thank you, I don't know

12   what Your Honor's preference is.

13          Not only have some of our thoughts matured and

14   changed over time but based on Your Honor's tentatives and

15   the questions you asked they may change even further.

16          I don't know that we can accomplish a lot in a

17   ten-minute recess, but one of my colleagues passed me the

18   note to ask if you thought it would be appropriate.  If not

19   I can start and go forward and take a break whenever Your

20   Honor thinks is good.

21          THE COURT:  Well if you think it would be

22   productive I'm not going to stand in the way of that,

23   Mr. Weisfelner.  I don't want to use up what is relatively

24   limited time that we have if it drifts, and there are a lot

25   of people both on the phone in this courtroom and presumably

Page 45

1    in overflow courtrooms, but if you think you can usefully

2    use ten minutes I think that's a good investment.

3         MR. WEISFELNER:  And, Your Honor, I think ten

4    minutes is the right -- we're either going to make progress

5    in ten minutes or we're not.

6         THE COURT:  Okay.

7         MR. WEISFELNER:  So I wouldn't want anymore than a

8    ten-minute adjournment.

9         THE COURT:  Then let's recess until five to 11:00

10   on the clock up there.

11        MR. WEISFELNER:  Thank you, Judge.

12        THE COURT:  Thank you.

13     (Recess at 10:44 a.m.)

14        THE COURT:  Have seats everybody.

15        MR. WEISFELNER:  Your Honor, thank you for the

16   time, I think it was well spent.

17        Judge, for the record, Edward Weisfelner, Brown

18   Rudnick LLP appearing on behalf of the Robinson Calcagnie

19   firm, and I have Mark Robinson of the firm with us in court

20   today as well as Haigins Berman (ph), and as Your Honor has

21   indicated while they reserve the right obviously to correct

22   me where I go wrong we are working closely together with

23   Sander Esserman of Stutzman, Bromberg, Esserman & Plifka, as

24   well as Elihu Inselbuch of Caplin & Drysdale, and as I think

25   Your Honor knows the collective plaintiff group has also

1    asked the three of us to coordinate our activities as we

2    deem necessary with Ms. Siganowski (ph) of the Otterbourg

3    firm, and we will utilize her services as appropriate and

4    necessary.

5              Judge, I want to as Mr. Steinberg did address your

6    tentatives, move on to your questions and avoid merits, name

7    calling, and the other no-noes that Your Honor laid out, but

8    I would like to note a couple of factors that I think are

9    relevant and bleed directly interest your tentative ands

10   your questions.

11             What one may characterize as part of the good news

12   there's lots of information in the public domain regarding

13   the defect that's the subject of the recall.  Lots in the

14   public domain about who knew what when.

15             I characterize that as good news to the extent

16   that, and as Mr. Robinson has indicated to me, in his many,

17   many years of litigating in the auto products field both in

18   terms of Toyota, the Ford Pinto, claims against GM, it's

19   rare that you see this level of information already in the

20   public domain before discovery or formal discovery between

21   the parties necessarily starts.  That's part of the good

22   news.

23             Part of the bad news is, depending on your

24   perspective, but I think it's a relevant factor in

25   understanding how the parties can or can't get together in

1    terms of the timing of the resolution of the issues, the

2    fact of the matter is that New GM, as we understand it, is

3    the subject of a -- it's a term of art -- boatload of

4    regulatory investigations.  We are aware of congressional

5    investigations, and maybe there's more than one, at least

6    one attorney general investigation, an SEC investigation.

7    We understand that New GM has commenced its own internal

8    investigation, and I may have run out of fingers to count

9    just how many investigations they're currently the subject

10   of.

11           I mention those because one could imagine a

12   sensitivity on the part of a corporate entity to necessarily

13   engage in discovery during the pendency and/or before

14   investigations of both civil and potential criminal

15   consequences are concluded.  And I can only advise Your

16   Honor that I think it behooves both sides to take the

17   reality of what's going on in the marketplace into

18   consideration with regard to the timing of discovery or the

19   narrowing of issues between the parties.  There are other

20   factors that might influence either side of the tables'

21   speed with regard to those issues.

22           Your Honor, to address the tentatives.

23           First of all I think from a starting perspective,

24   and I was unavailable for another meeting among plaintiffs

25   that took place yesterday in New York, but I've gotten a

1    download, and I'm not blaming Mr. Steinberg, Your Honor

2    ought to know that with one outlier, and only one outlier

3    that I'm aware of, the plaintiffs as a group are on the same

4    page and intend, unless I or Elihu or Sander slip up, to

5    allow one or the other of us to speak for the group, and I

6    presume that outlier will speak for him or herself at an

7    appropriate time.

8            And I also understand that the difference of

9    opinion between all of the plaintiffs and this one single

10   plaintiff really comes down to what ought the threshold

11   issues be that the parties work towards preparing and

12   presenting to Your Honor for as efficient resolution as is

13   possible.  And it boils down to a distinction between

14   whether or not we focus our collective attention on the what

15   we think is the right threshold issue, whether or not

16   parties impacted by this ignition switch problem were denied

17   due process, and if so what's the appropriate remedy?

18           They would, the outliers would like to put on the

19   table as part of the threshold issue a determination of

20   whether or not there was fraud on the Court.  And, Your

21   Honor, again, for reasons that we can delve into I don't

22   think they're necessarily appropriate for today because

23   there'll be another status conference where I think whatever

24   remaining differences there are between the plaintiffs taken

25   as a group and New GM can and will be resolved down to the

Page 49

1    details of timing for discovery, briefing, and subsequent

2    hearings.

3            Your Honor, the next tentative you talked about

4    was the MDL proceedings and I'd like to unpack that just as

5    a matter of fact into two parts, because I think as to part

6    number one there is unanimity in the entirety of the

7    courtroom.  All plaintiffs and New GM as to what happens in

8    step one, and as I understand it only a very narrow

9    disagreement on what I'll call step number two.

10            And, Your Honor, please forgive me because the one

11    thing I'm not is a class action or tort lawyer, I'm just a

12    measly bankruptcy lawyer, but this is what I understand the

13    two parts to be.

14            Part number one, on May 29th in Chicago before a

15    joint panel on multidistrict litigation, which I understand

16    consists of some seven Article III judges, that panel will

17    determine the venue for any further multidistrict litigation

18    consideration, and I've been told that the panel has under

19    consideration --

20            THE COURT:  Pause.  When you put it that way I

21    wasn't clear on whether you were talking about it consistent

22    with my understanding of what would be done by the judicial

23    panel and multidistrict litigation.  Is this 28 U.S.C. 1407?

24            MR. WEISFELNER:  Yes, it is, Your Honor.

25            THE COURT:  Which as I understood it addresses the

1    locale for pretrial proceedings in multiple litigation after

2    which when the pretrial proceedings end they're farmed back

3    to whatever districts, venue would otherwise be appropriate?

4            MR. WEISFELNER:  Correct.  So --

5            THE COURT:  Now were you meaning -- forgive me.

6    Were you meaning to say something different than my -- what

7    I just said?

8            MR. WEISFELNER:  No, other that where I think we

9    all agree is that nothing is going to interfere with, and

10   none of the parties or the Court, nor will the Court be

11   asked to interfere with the activities of the joint panel on

12   the 29th, which we all understand to mean that they'll pick

13   an ultimate venue for MDL proceedings as between Michigan,

14   California, New York, or some other jurisdiction.

15           Where we appear to have a difference of view, as I

16   heard Mr. Steinberg discuss the issues before Your Honor,

17   was how far should the MDL go once it receives the case some

18   time after May 29th?

19           THE COURT:  By that you mean the temporary

20   transferee court after it's been transferred by the panel?

21           MR. WEISFELNER:  Correct.

22           THE COURT:  Okay.

23           MR. WEISFELNER:  And as I understand it what that

24   court will do is procedural, it will among other things

25   select lead and/or liaison counsel not for bankruptcy

Page 51

1      purposes but for purposes of actually trying the case, and

2      as typically happens would require that the many complaints

3      filed against New GM -- and as I understand it they're up to

4      some 60 plus different class action complaints -- be

5      procedurally consolidated into a single complaint, a process

6      that my guess will take a period of time, and certainly a

7      period of time beyond what we anticipate to be the next

8      status conference before Your Honor.

9              But we wouldn't want the record of this or any

10     other proceeding before Your Honor to be used or cited for

11     the proposition that from Your Honor's perspective getting

12     the complaints narrowed down to a single complaint, doing

13     whatever else it is that the MDL judge typically does, which

14     is figure out which counsel they're going to for lack of a

15     better word lead the fray, there should be nothing that

16     impacts that procedural mechanism from moving forward.  It's

17     going to in our view at least get the parties or -- and the

18     issues that may ultimately be tried narrowed and get the

19     disbursed plaintiffs' groups better organized on the merits

20     should they ever get to the merits.

21              THE COURT:  Pause, please, Mr. Weisfelner.

22              MR. WEISFELNER:  Certainly.

23              THE COURT:  Can you envision a scenario under

24     which rulings by me might affect the extent to which claims

25     remain which would then be the subject of gathering up and

Page 52

1    bundling in that amended complaint?

2                MR. WEISFELNER:  Certainly, and again, this is

3    just my opinion, but when viewed from the perspective of

4    judicial economy if there is a single complaint and Your

5    Honor were then to determine what's kosha (ph) and what's

6    unkosha (ph) about that amended complaint one has an easier

7    vehicle to start making chops to.

8                As opposed to, and it sort of bleeds into some of

9    your other tentatives and some of your other questions, have

10   a multiplicity of lawsuits and then having to parse each and

11   every one of them to determine what portion of the

12   allegations, the complaints, the prayers for relief does or

13   doesn't violate or do violence to Your Honor's directive as

14   it currently stands or as it may ultimately morph after this

15   procedure currently before you develops.

16               THE COURT:  You said what I had anticipated that

17   you would say.  The corollary of that would at least

18   seemingly be that after the panel sends it wherever it's

19   supposed to go, and I'll call it the transferee judge, even

20   though it may eventually go back somewhere or to different

21   places, that there simply be a stop, look, and listen, vis-

22   à-vis, interfering or not interfering with the acts of the

23   transferee judge after determinations have been made in this

24   court and everybody in this room has had his chance to speak

25   his peace.

1           MR. WEISFELNER:  And, Your Honor, I think like

2    many things in life it's all a matter of timing.  Because I

3    anticipate the transferee court is never going to get around

4    to the job of figuring out what's the next procedural steps

5    to narrow the issues that may be before him or her.  I think

6    we'll be further advanced on the issues that need to be

7    resolved by Your Honor, and the coordination between Your

8    Honor's decision making process and what does or doesn't

9    happen in the MDL will be much further advanced.

10          So while I'm not sure that it benefits anyone to

11   pursue this in any greater detail, my only point with regard

12   to this is I detected a difference between where we come

13   out, where I thought New GM was coming out on this, and what

14   I heard Mr. Steinberg say earlier this morning, which is we

15   have to leave open the possibility that the MDL proceedings

16   may be put on ice simply because this process is still

17   ongoing without a resolution.

18          THE COURT:  Well stand by.  Mr. Steinberg, come on

19   up and take Mr. Weisfelner's place for a second.

20          Is there a substantive disagreement here?  Because

21   I thought I was hearing consensus that we'd let the MDL

22   panel decide who the transferee district should be and then

23   we're going to have stuff that goes on here.

24          Would you have a substantive or procedural problem

25   with doing a stop, look, and listen in this court to then

Page 54

1    decide whether I should enjoin the transferee judge from

2    doing anything more, or should not do so?

3            MR. STEINBERG:  Your Honor, I would agree with

4    everything that you say except that I would assume that you

5    would be enjoining the parties not the court from moving

6    forward.

7            THE COURT:  Correct.  And I don't think in 13 and

8    a half years I've ever enjoined a court, but I enjoin

9    parties all the time.

10           MR. STEINBERG:  Then other than that, Your Honor,

11   I agree with exactly what you said.

12           THE COURT:  Okay.

13           All right, Mr. Weisfelner, I think that issue just

14   went away so come on up and let's proceed.

15           MR. WEISFELNER:  Great.

16           Your Honor, we take your points to heart with

17   regard to tentatives three and four both with regard to the

18   propriety of standstill agreements and your admonition that

19   we don't necessarily -- we shouldn't necessarily be rushing

20   in favor of getting it right.

21           One area where I think the parties may need some

22   additional time with each other but maybe we could explore

23   in a little bit more detail Your Honor's tentative with

24   regard to new complaints along the lines of what Mr. Flaxer

25   filed.

1          And I will tell Your Honor frankly that before

2     Mr. Flaxer hit the docket with his complaint I know I and my

3     shop and I venture to guess many other shops were working on

4     similar complaints.

5          Viewed from our perspective is the right

6     procedural mechanism for bringing the issue before Your

7     Honor; however, once we had the advent of New GM's motion

8     frankly I'm not sure what the procedural advantage is of

9     moving forward with that adversary proceeding complaint much

10    less inviting other parties to replicate it or to file

11    additional or add-on adversary proceeding complaints.  It

12    may -- it may involve some interesting work by a bunch of

13    bankruptcy and/or class action firms.  I think it's just

14    going to clog the docket here, and I think procedurally we

15    were of the view that rather than lose any of the

16    allegations or procedural advantages that are perceived or

17    actually exist in the adversary proceeding they all ought to

18    be subsumed within the contested matter.  Parties ought to

19    be afforded an opportunity to file their own objections to

20    the motion, join in our objection to the motion, or anything

21    in between.

22          But I'm not sure, nor do my colleagues feel, that

23    there's necessarily a substantive or procedural advantage to

24    separating the adversary proceeding and giving it a life of

25    its own even for the purposes of inviting other people to

1    file new adversary proceedings.

2         THE COURT:  I partly lost you with the negative

3    that was in your last sentence.  In other words you're

4    saying the formalities aren't important, put it in a big

5    bundle and just decide it all together or am I --

6         MR. WEISFELNER:  That's exactly --

7         THE COURT:  -- stating it too crudely?

8         MR. WEISFELNER:  No, that's -- well, you couldn't

9    have stated it any cruder than I would have had I thought

10   about it, but that's exactly our sentiment, you know, let's

11   have one bundle and not have separate adversary proceedings

12   and separate contested matters, let along invite people to

13   file new adversary proceedings that address the same issue.

14   And I think the parties did intend on conferring with each

15   other on appropriate procedural mechanisms to allow that

16   ball of wax to form without violating anybody's procedural

17   or substantive rights.  And I think we can come up with in

18   very short order, certainly before the next status

19   conference, the procedural mechanism that we think is

20   appropriate.  But what we would like to avoid is either the

21   necessity or the thought out there that people better rush

22   to file, you know, identical or new or expanded adversary

23   proceedings.

24        THE COURT:  Now that's a different point than the

25   separate -- at least in your mind from the separate point

Page 57

1   that I thought I was making that if there are any

2   substantive issues on the table that haven't been

3   potentially to be put on the table that I want to hear what

4   those points are.

5          MR. WEISFELNER:  And I think that can be readily

6   accommodated by virtue of setting a date by which parties

7   will want to respond to the motion that New GM has filed.  I

8   mean we obviously filed within, and I think before the

9   expiration of 24 hours.  Obviously there may be people out

10  there with further reflection that come up with better,

11  different, more expansive responses and we don't want to

12  preclude that.  We just don't want to get into a

13  (indiscernible - 01:19:05) of a separate docket for an

14  adversary proceeding, a separate docket for contested motion

15  practice, and any possibility that, you know, the resolution

16  of those issues shouldn't be at some point joined.  And

17  again, I think the parties can work out a proposal for Your

18  Honor's consideration that deals with melding together the

19  adversary proceeding and the contested matter.

20          Number five, Your Honor, which I guess was the

21  issue between stipulations and admissions.  And, Your Honor,

22  I think the answer is we get it and the parties will work as

23  best they can on stipulations and will only elevate the heat

24  intention as we have to both in terms of narrowing discovery

25  and avoiding unnecessary contests that have to be determined

Page 58

1    by this Court.  And again, you know, I'm focusing on all of

2    this from the perspective of the what we've referred to as

3    the gaiting issue.

4         And this -- and I want to sort of then flip to the

5    questions that Your Honor asked, and either attempt to

6    respond to them or tell you why I'd like to evade them as

7    best I can.

8

9         And again, you know, I'm focusing on all of this from

10   the perspective of the what we've referred to as the gaiting

11   issue.  And this -- and I want to sort of then flip to the

12   questions that Your Honor asked, and either attempt to

13   respond to them or tell you why I'd like to abade them as

14   best I can.

15         THE COURT:  Before you move on to those, please,

16   Mr. Weisfelner, the one issue that I still see as open

17   between you and Mr. Steinberg is with respect to two issues

18   that might or might not be addressed as part of Phase I, the

19   most classic threshold issues, fraud on the Court and

20   discrimination amongst different kinds of creditors.

21         My preference would be in terms of meeting my own

22   responsibilities would be to get issues on the table and

23   teed up for judicial determination, and to the extent

24   practical decided sooner rather than later, which would

25   cause me to come to the view that on fraud on the Court, if

Page 59

1   we could deal with that without having the associated

2   discovery bog us all down, it would be handled sooner rather

3   than later and the same thing with discrimination, which

4   doesn't seem to involve discovery issues.

5           I sense that you would prefer to defer fraud on

6   the Court, but would you be of the same mind to defer it if

7   just the limited discovery of the type that Mr. Steinberg

8   recommended were undertaken so that issue could be teed up

9   with the others?

10          MR. WEISFELNER:  Your Honor, we would be opposed

11  to it and let me explain why.

12          First of all we share Your Honor's perspective

13  that issues that could resolve matters from the perspective

14  of either side where discovery can be limited ought to be

15  preferred on issues that potentially don't decide the matter

16  even if they don't require a lot of discovery.

17          So let me take the easier example first, the

18  discrimination issue, raised in retrospect unfortunately in

19  my papers as opposed to anybody else's.  And, Your Honor, it

20  seems to me that we could brief that issue at whatever cost

21  is required.  It doesn't require discovery.  Your Honor

22  could make a ruling.

23          And notwithstanding how you rule I don't think it

24  gets the plaintiffs any closer to trying claims against New

25  GM or for that matter New GM any closer to preventing the

Page 60

1    plaintiffs' claims from moving forward based on their

2    reliance on the injunction and the sale order.  It's an

3    interesting issue but it's in no event dispositive of either

4    parties' position on the fundamental issue.

5            For that reason, even though I was the one who

6    first raised it and frankly raised it before I understood

7    the entire history behind the metamorphous that the final

8    sale order took on the carve out for wrongful death, injury,

9    and property damage, which as I understood it originally

10   what New GM was purporting to assume was wrongful death,

11   personal injury, property damage solely with regard to cars

12   that it sold post-petition or post-sale rather, and it

13   morphed at the direction in part of various attorneys

14   generals and consumer advocates.

15            THE COURT:  In the middle of the trial.

16            MR. WEISFELNER:  Sorry?

17            THE COURT:  In the middle of the sale trial.

18            MR. WEISFELNER:  Right.

19            THE COURT:  Yeah, I remember the history.

20            MR. WEISFELNER:  Okay.

21            THE COURT:  Oh, by the way I'm going to interrupt

22   you.  I want each side not to tell me today but to think

23   about the extent to which I'm allowed to use my knowledge of

24   what happened back then in connection with the findings of

25   fact.

Page 61

1              MR. WEISFELNER:  Well, Your Honor, I could tell

2      you now without even consulting with my colleagues, unless

3      Your Honor were to be willing to undergo a lobotomy I don't

4      know how anyone could take the position that Your Honor

5      cannot, should not, or may not take into account your

6      knowledge and familiarity with what transpired during the

7      bankruptcy proceeding and in fact during post-reorganization

8      or post-restructuring matters that were brought to Your

9      Honor's attention.

10             But I want to sort of get back to --

11             THE COURT:  Pause.

12             MR. STEINBERG:  I was going to -- without

13     inferring whether there should be a lobotomy or not -- I was

14     going to say that we agree with Mr. Weisfelner as well, that

15     you should be able to take into account your position.

16             THE COURT:  Okay.  Fair enough.

17             Go on then, please, Mr. Weisfelner.

18             MR. WEISFELNER:  Any way, Your Honor, I'm sort of

19     getting back to what we ought to be collectively spending

20     time and attention on.

21             From the plaintiffs' perspective we ought to be

22     spending time and attention, which converts into money and

23     effort, in dealing with as narrow a set of facts that we

24     have to deal with to determine whether or not the sale order

25     applies to our underlying clients.

Page 62

1          The discrimination argument, Your Honor, may be

2     left on the table in the unlikely from my perspective and

3     unfortunate event that we lose the threshold issue.  But why

4     it needs to be determined today, even though it's an issue

5     of law and not a matter to discovery, it's not dispositive

6     from either sides' perspective, it doesn't get us closer to

7     where either one of us wants to get to.

8          And if I could then turn to the fraud on the Court

9     issue.

10         Your Honor, there are subtleties on top of

11    subtleties on top of details that suggest to us that you

12    could not make a determination with regard to fraud on the

13    Court with anywhere close to the narrow discovery that

14    Mr. Steinberg suggests.  And it's sort of all subsumed I

15    think or fear in the whole due process argument, and without

16    in any way trying to argue the merits but just to lay out

17    what the issues are as objectively as I can without tilting

18    them in either direction, remembering again that there's a

19    lot of information in the public record about what GM knew

20    when they knew it with regard to the ignition switch.

21         I think that New GM would say, well, wait a

22    second, determining GM's -- Old GM's knowledge and for that

23    matter New GM's knowledge isn't necessarily determined --

24    and I use this very bad analogy but I'll give it to you any

25    way -- by focusing on the guy in the test laboratory who's

Page 63

1    got grease up to his elbows and is wearing overalls.  That

2    person may have knowledge, but it may not necessarily be

3    imputed to someone sitting in a conference room who has the

4    luxury of wearing a suit and tie every day.  And I think New

5    GM may ultimately argue that Joe the mechanic's knowledge

6    isn't to be imputed into an executive office let along a

7    board room.

8            Now frankly we're encouraged by the fact that

9    plenty of people who wore suits and white collars have

10   already put their position on the record or it's otherwise

11   discoverable through things that the National Highway Safety

12   Council has made available or the Congress has made

13   available or what we can read and report on in the press,

14   but to suggest that we can or should pursue fraud on the

15   Court to my mind and gender is a discovery dispute at three

16   different levels by the way.  Old GM, New GM, and based on

17   not my intuitions, but my discussions, I think we're going

18   to get into a discussion of what treasury in its role as the

19   intermediary between Old GM and New GM knew or didn't know.

20           And as much as I like spending time with Matt

21   Feldman and Jim Milstein (ph) and Harry Wilson, I don't know

22   that I necessarily want to get involved in discovery of what

23   any of those people knew or should have known in the context

24   of proving --

25           THE COURT:  You used the word should have known.

Page 64

1   Since when is should have known an element of a claim of

2   fraud against the Court?

3           MR. WEISFELNER:  Your Honor, I'm not sure that it

4   is, which is another reason why when I think about this, and

5   maybe I think about it in an overly simplistic fashion, but

6   I have the comfort of knowing that my co-counsel thinks

7   about it the exact same way, in fact all of the plaintiffs

8   think about it exactly the same way with the exception of

9   one possibly outlier, and that is if I start with the

10  proposition, understanding that it's a proposition and not a

11  proven fact, that the consumers of this product were known

12  to have had a defective product and that Old GM did nothing

13  to let those people know that they had a defective product,

14  didn't give them notice of the bankruptcy, didn't give them

15  notice of the sale, and didn't give them notice of the

16  extent to which the sale could affect their rights, if our

17  contentions are accurate isn't it the case that these

18  individuals were deprived of due process?

19          In that context should the sale order apply to

20  them or should some portion of the sale order apply to them?

21  Not a revocation of the sale order, we're not going cut it

22  up and carve it out and chop it up as it relates to anybody

23  else other than people who prove to you that they were

24  denied due process.

25          Why we need to then get into at this stage the

1    other elements of fraud on the Court, Your Honor, we

2    respectfully suggest is beyond what we ought to be doing if

3    we want to do something efficient and effective from the

4    perspective of these injured parties.

5            THE COURT:  Do you think that for the purposes

6    solely of my case management discretionary calls, as

7    contrasted to the merits in figuring out how we should tee

8    these things up, it's appropriate for me to assume that

9    there might be a difference between defrauding the driving

10   public on the one hand and defrauding the Court on the

11   other?

12           MR. WEISFELNER:  Yes.  And, Your Honor, I'd make

13   the distinction though, we're not defrauding the driving

14   public, that's not our contention.  Our contention is that

15   the number of people who bought, leased, or owned these

16   cars, and to my knowledge, the number is something below 3

17   million, I could be wrong, so it's not the driving public,

18   it's these specific people that were sold cars with this

19   ignition switch problem.

20           And again, this is not the place or time to get

21   into this, so then I won't, I just want to get back to your

22   issue.  I do think that it's a matter of Your Honor's

23   discretion in setting our own calendar in terms of dealing

24   with dispositive issues first.

25           If Your Honor were to decide that these people

1   were denied due process, and therefore, the injunction that

2   New GM bargained for should not apply to them, case over,

3   from our perspective.

4          It's only if Your Honor were to decide there was

5   no denial of due process, that we may want to ask Your Honor

6   to tee up and consider other issues.  Until that time, I

7   think it's a matter of case management and Your Honor's

8   discretion, that's the right way to go.  And I say that

9   because we've thought about it, and we think it's the right

10  way to go, not to be determinative of what Your Honor

11  decides in terms of exercising your own discretion.

12         But we clearly think it's the easy way to go, and

13  I'm not sure I understand how expanding either the factual

14  issue or the legal issue into fraud on the Court serves the

15  purpose of narrowing the issues and letting the parties and

16  the Court get to the -- a resolution in the most cost-

17  effective manner possible.

18         Now, Your Honor, I'm happy to sort of move on to

19  the questions that Your Honor had.

20         THE COURT:  Go ahead.  And I'm going to do this in

21  such a fashion as I possibly can, so as not to insult the

22  Court.  But you asked what's left its engendered so much

23  heat, and with all -- in other words, what are the damages

24  that people could possibly be concerned about here, since

25  wrongful death, personal injury, and property damage are off

Page 67

1    the table.

2           And Mr. Steinberg in his opening tried to -- or

3    talked to you about five, six, seven, eight-year old cars

4    driven a lot of miles that have a broken switch that GM's

5    prepared to fix, so what are the damages.

6           Oh, and I think he mixed in the fact that we're

7    talking about a pretty cheap set of vehicles, Chevy Cobalts

8    and other such cars.  And, Your Honor, in the simplest

9    terms, it's our view that the measure of damages that

10   plaintiffs could prove were they permitted to pursue claims

11   against New GM, notwithstanding your injunction, is a matter

12   for determination by a court of competent jurisdiction who

13   doesn't have New GM waving the injunction in front of it.

14          Once that injunction is gone, Your Honor's

15   question is really within the bailiwick of Court's

16   interpreting state law, federal --

17          THE COURT:  Forgive me, with respect to you, Mr.

18   Weisfelner, that isn't the purpose of my question.  The

19   purpose of my question is to ascertain the extent to which

20   claims your guys want to bring, is or is not within the

21   scope of the existing sale order, which is the question

22   which we start with after which we then determine the extent

23   to which the provisions of that sale order are in whole or

24   in part unenforceable against your constituency.

25          MR. WEISFELNER:  Ah.

Page 68

1          THE COURT:  So please do not restate or

2     misunderstand my question.

3          MR. WEISFELNER:  Thank you, Your Honor.  I did --

4     I misunderstood it completely.

5          I should call to Your Honor's attention, and I'm

6     hoping that this is in the process of being fixed, because

7     I've been told that's in the process of being fixed, but one

8     would hope that as this process moves forward and the

9     parties reach consensus on how to form and present the

10    issues in the most effective way, that we don't have

11    exacerbation of the problem or the issue.

12          We were told the story about an individual who in

13    connection with the recall went to his or her dealer to have

14    this ignition switch fixed, and was presented by the dealer

15    with a form that she was being told she had to sign before

16    the work could be done on her car.

17          And the form, while I haven't seen it, I'm told,

18    either had the individual consenting to arbitration of any

19    issue that may arise in connection with the work that was

20    being done and/or contained a waiver of any claims that

21    could be asserted in connection with any of the work that's

22    being done.

23          Now, I'm told that these issues were brought to

24    New GM's attention and New GM has or is in the process of

25    ensuring through communication with its dealers that the

1    fixing of the switch is not to be conditioned on parties

2    signing anything that may impact their claims or causes of

3    action going forward, and that to the extent that people

4    have already signed anything as a precondition to having

5    their car dealt with on a recall, that it won't be enforced

6    or sought to be enforced by New GM.

7              The other thing I want to bring to Your Honor's

8    attention, and again, it's not within my bailiwick, except

9    that I've heard enough about it from underlying plaintiffs'

10   lawyers and have read enough about it is, there is not an

11   agreement between this side of the courtroom, meaning the

12   plaintiff's side --

13             THE COURT:  Pause please, Mr. Weisfelner.

14             Right after you told me that anecdote, which

15   troubled me, as it would trouble most folks I think, you

16   said that when GM, New GM heard about it, it pulled the plug

17   on that deal -- issue acting that way, and told them, you

18   didn't use these words, you, jerk, you can't do that.  So

19   why did you tell me that?

20             MR. WEISFELNER:  I told you that for at least two

21   reasons.  Having New GM tell the dealers to stop acting like

22   jerks may or may not cause the new dealers -- the underlying

23   dealers and the fixers, guys who are dealing with the

24   recall, to stop acting like jerks.  And I just wanted to let

25   Your Honor know that we are concerned about people acting

Page 70

1    like jerks on a going forward basis.

2              The second reason I brought it to Your Honor's

3    attention is, to the extent that people have historically

4    signed the pieces of paper that the jerks gave them to

5    review, I haven't seen anything in the record other than an

6    oral communication that said New GM will not hold those

7    releases or agreements to arbitrate against the plaintiffs,

8    I raise it now only because for all of our benefit, we'd

9    like to see something about this in writing at some point.

10             I brought it up in the context of Your Honor's

11   concern about presale conduct and post-sale conduct, and

12   Your Honor, the plaintiffs very much agree that to the

13   extent that one could readily distinguish between actions

14   that go to New GM's conduct, that they can't, as Mr.

15   Steinberg indicated, properly be the subject of the

16   injunction.

17             But the devil is also in the details on this one

18   because we're not --

19             THE COURT:  Pause for a second.  Mr. Steinberg,

20   I'm going to give you another chance to be heard, why don't

21   you sit down for now.

22             MR. WEISFELNER:  In terms of what constitutes New

23   GM's actions versus Old GM's actions, you heard at least one

24   example of how it's difficult, and that is New GM does a

25   recall and could arguably be replacing the ignition switch,

Page 71

1    not with a new ignition switch, but with an old ignition

2    switch, or that parties are concerned that, you know, they

3    went to their dealer, they got a new ignition switch, they

4    don't know now whether it was a recalled ignition switch or

5    an old switch.

6            But, Your Honor, and again, I just mention this,

7    not because I think it needs to be resolved, or because I

8    have any evidence to prove it's true, but a lot of what

9    we're reading suggests that calling this an ignition switch

10   defect is an impermissible narrowing of what the issues are.

11           The ignition switch may or may not have been the

12   cause of air bag failure to deploy.  The fixing of the

13   ignition switch, given the electronic calibrations between

14   the switch and the air bags may or may not address the air

15   bag problem.  I don't know the answer to any of this.

16           Other than to tell you again, when we parse out or

17   attempt to parse out actions against New GM for New GM

18   conduct, or things that New GM definitively agreed to assume

19   as part of the sale process, versus actions that could

20   arguably or do, in fact, implicate the injunction that's

21   part of the sale order is, for lack of a better term, easier

22   said than done.

23           Nevertheless, the plaintiffs as a whole do reserve

24   the right if this process gets bogged down or takes too

25   long, to say, you know what, maybe the quickest thing to do

1   is to spend the time and energy that hopefully we won't have

2   to, to parse through whatever's been filed, and to

3   demonstrate to Your Honor that the allegations that are

4   being made, the liability that's being ascribed, and the

5   damages sought to be obtained as they relate to New GM

6   conduct do not implicate Your Honor's injunction.

7           For now, however, we'd prefer not to get into all

8   of those potentially dicey issues, as to what does and what

9   doesn't constitute a direct claim against New GM that is

10   outside of the injunction, at least until the parties work

11   hard on trying to get to a position where the due process

12   issue gets teed up for Your Honor's consideration.

13          And if we can do that in an effective vehicle and

14   quickly, then all of the other noise that may be necessary

15   down the road could be avoided.  Because whether it's

16   actions against New GM or actions that New GM contends

17   they're not liable for because of the injunction, if the

18   injunction is dissolved as to this group, because of lack of

19   fundamental due process, it doesn't matter.

20          So I'd prefer, we collectively would prefer to

21   deal with that issue as, when and if it does matter.

22          I'm going to skip over the lemon law issues,

23   because I don't think we have much difference of view with

24   regard to the answer that you got from Mr. Steinberg.  I do

25   want to stress on your question number four, the inability

Page 73

1   to get together.

2           The plaintiffs are together, and with the

3   exception of again one outlier on the issue of what ought to

4   be part of the threshold and what not be part of the

5   threshold, there's not a plaintiff group that we're aware of

6   that isn't prepared to have their interests in the first

7   instance, represented by one of the three of us, with

8   consultation with Ms. Cyganowski, subject, of course, their

9   ability to stand up and say, hey, they didn't present my

10  issue.  But we have a commonality of position, a commonality

11  of interest, and a desire to work collectively through these

12  three lawyers.

13          I'm just trying to see if there was anything else.

14  You've heard our views with regard to an adversary

15  proceeding versus motion practice.  I didn't touch on the

16  impact on Old GM and the GUC Trust.  And I liked Your Honor

17  took comfort in the fact that Mr. Golden is here, as I do

18  take comfort any time Mr. Golden shows up anywhere.

19          Look, Your Honor, it's obvious, and you get it,

20  that one of the arguments that New GM may make is if these

21  individuals were damaged or deprived of due process, let's

22  not jump to the conclusion that the right remedy is to have

23  the injunction not apply to them.

24          Instead let's consider the alternative remedy of

25  having them all get shifted into the category of late filed

Page 74

1   claims, judicially acknowledged late filed claims, will now,

2   as part of a bankruptcy process, go through a procedure for

3   determining what those claims might be worth individually or

4   on some class basis.

5        And when that process is all over, then we can let

6   the GUC Trust and its beneficiaries know that their expected

7   future dividends may have to be adjusted or wiped out in

8   order to allow these new beneficiaries of the trust to, in

9   effect, catch up on distributions that have already been

10  made, if in fact, that can be done as a matter of

11  practicality.

12       And I anticipate that holders of the units

13  including Mr. Golden's clients and others may very well have

14  an opinion about that.

15       Again, it seems to me that before we ever get near

16  that thorny issue, where lots of people are going to be

17  impacted, and it may not be practical, if we resolve the

18  threshold issue of whether, because of lack of due process

19  the injunction ought not to apply, then we never get into

20  this issue.  Unless someone were to argue that

21  notwithstanding the denial of due process the right remedy

22  is not let the injunction dissolve, but the right remedy is

23  somehow to treat these people as if they had late filed

24  claims, and will now just dilute all of the other

25  beneficiaries of the GUC Trust.

Page 75

1          Your last point was on mediation, and like Mr.

2    Steinberg, I agree that litigation is inherently wasteful,

3    time consuming, and not a very efficient way of resolving

4    matters, and that whenever possible, mediation is the way to

5    go.

6          I just am concerned that given where I started,

7    which is to identify, as I'm sure Your Honor knows, the

8    multiplicity of investigations that are currently underway.

9    Just what the role of Ken Fineberg is, just how much money

10   Mr. Fineberg may have at his disposal to attempt to resolve

11   issues, while we would collectively prefer to mediate than

12   litigate, I'm not sure that the environment is such today

13   that we're presented with that effective choice.

14          Should circumstances change, as I think Your Honor

15   knows very well, the plaintiffs are as willing to attempt to

16   resolve issues notwithstanding how prepared they'll be to

17   prove their cases and collect their appropriate damages.

18   Thank you, Judge.

19          THE COURT:  All right.  Thank you.  Mr. Flaxer.

20          MR. FLAXER:  Thank you, Your Honor.  I note that

21   I'm working in conjunction as co-counsel with the firm of

22   Wolf Halthenstein (ph) which is here by counsel.

23          Perhaps, Your Honor, I should jump right into an

24   issue that was maybe the only area where the plaintiff group

25   wasn't able to come to complete consensus.  And Your Honor

1    added some thoughts to it that I think shed a lot of light

2    and were actually extremely helpful in my own thinking about

3    it.  Which is in identifying the threshold issues what the

4    sort of philosophical line of demarcation should be and if I

5    heard correctly one notion that Your Honor suggested was

6    things that can be decided on a legal basis, without the

7    necessity for discovery, but that's -- I'm going to sort of

8    pause there, and say discovery, we've talked about a

9    possibility of limited discovery as opposed to more

10   extensive discovery.

11          So -- and I think that's an important point to

12   keep in mind.  Our view has been that the claim of fraud on

13   the Court, which the objection to the motion and which our

14   adversary proceeding both assert, our concern has been that

15   it's difficult to separate it out from the lack of due

16   process point because although superficially I suggest it

17   might be a -- maybe that's not the right word, but it might

18   be -- it may seem that since fraud on the Court is sort of a

19   more broad remedy or has more prongs to it that maybe need

20   to be established that the discovery in establishing that

21   claim would be much broader and take a lot more time.

22          As I step back from it, and think about it, if

23   there's going to be discovery on a due process violation, I

24   think when the actual discovery process gets going, the

25   discovery on those two claims will be basically the same.

Page 77

1            And I think Your Honor got into --

2            THE COURT:  Wait.  I was keeping up with you, Mr.

3     Flaxer, until you said basically the same.  Obviously under

4     the covers of all this, is that fraud generally is subject

5     to a time limitation, if I recall correctly, it's one of

6     your words, fraud on the Court, it's not, and that's the

7     difference between 60(b) and 60(d).

8            But I wasn't clear after that what the distinction

9     you were making was.

10            MR. FLAXER:  The distinction I'm making is that if

11     a due process violation is going to be a threshold issue,

12     and we're going to wind up taking discovery on that issue,

13     then as a matter of judicial economy, it may be wiser to

14     include fraud on the Court at that point, because the

15     discovery is likely to be I think extraordinarily similar if

16     not identical.

17            THE COURT:  I'm not inclined to differ with you in

18     that regard, Mr. Flaxer, but I thought the consensus until

19     you spoke was that other folks in the room who spoke before

20     me thought that due process could be addressed at least in

21     major respects without any discovery.

22            MR. FLAXER:  And if -- and my view on that is, I'm

23     -- what I would say is, that may or may not be right.  So

24     maybe what we ought to do here to sort of resolve everything

25     for today at least, is let's proceed with the process of

Page 78

1    developing stipulations of facts, and lawyers from both

2    sides will work together on that.  And when we come back for

3    the next time, I think the parties will be able to advise

4    the Court whether or not they think that based on what's

5    stipulated, we should just put the due process issue to the

6    Court, and put fraud on the Court, perhaps to the side for

7    the moment.

8              But I don't think we ought to decide that one

9    today, nor do I think we need to.  So I don't think there's

10   any need for any difference of opinion going forward from

11   today to the next status conference.

12             I will confess some skepticism about whether

13   stipulations of fact will be sufficient to address the

14   alleged lack of due process issue, but I'm happy to keep an

15   open mind about it, because as events develop, we all have

16   to be prepared to have an open mind and change.

17             So our view for today is, we don't have to decide

18   whether or not fraud on the Court should be a threshold

19   issue or not.  Let's kick that to the next status conference

20   and let's see how the process goes with developing

21   stipulations of fact.

22             And I would add as Mr. Weisfelner very eloquently

23   observed, there are a number of government investigations

24   ongoing.  I understand that GM's internal report is due

25   fairly soon, I think in early June.  That may shed a lot of

1   light on a lot of issues, and that's another fact on the

2   ground that may affect our thinking when we get to the next

3   status conference.

4          Trying to focus on your threshold issues, and

5   trying not to repeat, I don't have anything to add to the

6   MDL, that's all been said.

7          As to the dates for when events should happen, we

8   agree that, you know, on the one hand we want to get in and

9   out of this court as fast as we can.  On the other hand, we

10  don't want to rush or we're going to wind up right back

11  before you asking for more time, so we think the dates that

12  were in Mr. Steinberg's agenda letter are fine, and we're

13  fine with those.

14         As to a deadline for amending -- I mean, I'm

15  sorry, for filing additional adversary proceedings or

16  joining in ours, it was never our intention to encourage

17  more adversary proceedings, but we did think it was

18  important that there be a time when the Court be able to

19  know that.  I now know the universe of what the pleadings

20  are.

21         THE COURT:  What people want to assert.

22         MR. FLAXER:  Yes.  So we're fine with picking a

23  date for that, maybe a date in mid to late May would be

24  fine.  Mr. Steinberg's agenda letter suggested May 14th as a

25  date for us to amend our complaint.  We are considering

Page 80

1    three amendments, which we don't think would have any effect

2    on the process that's being developed here, but we're okay

3    with that date.

4         Mr. Weisfelner discussed sort of the interplay

5    between adversary proceedings and the contested matter.  I

6    think that there is agreement here that for discovery

7    purposes and for the scheduling we're doing here today, they

8    should be treated as consolidated and run contemporaneously,

9    and there's no need at this point to have any distinction

10   that's meaningful that I can think of.

11        I mentioned to Mr. Steinberg this morning in the

12   hallway that, you know, because we filed a complaint, a

13   summons has been issued, and there's a date to answer, which

14   backs into a date for a Rule 26(f) conference.  But I think

15   those dates can be just sort of rolled into this process so

16   we don't have to have any, you know, separate concerns about

17   other dates that sort of automatically come with a filing of

18   an adversary proceeding.

19        THE COURT:  I think my understanding then might

20   flow from what you just said, but you're also equally

21   amenable to any procedural consolidation, including briefs

22   to cover the field in both.

23        MR. FLAXER:  Correct.

24        THE COURT:  Okay.

25        MR. FLAXER:  And I think the last point that I

Page 81

1   have to mention since everything's been so, I must say, very

2   efficiently covered is we're the ones who did raise the

3   possibility of mediation.  I think I agree with what both

4   counsel have said before me.  I would just urge that we

5   don't lose sight of it and as much as we'd like to avoid

6   extensive discovery here, and as much as I'd hope we can

7   avoid it, but I fear it may not be avoidable, the mediation

8   alternative may wind up being much more productive and

9   better for the victims we're all seeking to serve than

10  extensive litigation.

11            THE COURT:  Okay.  Thank you.

12            MR. FLAXER:  Thank you, Your Honor.

13            THE COURT:  Is there anybody else who hasn't had a

14  chance to be heard for the first time who would like to be?

15  Come on up, please.

16            I'm taking someone in the courtroom first, and

17  then I'll ask about the phone.

18            MR. MARTORANA:  Good morning, Your Honor, Keith

19  Martorana of Gibson Dunn & Crutcher on behalf of the GUC

20  Trust.

21            THE COURT:  Did you say Marona?

22            MR. MARTORANA:  Martorana.

23            THE COURT:  Martorana.

24            MR. MARTORANA:  Yes.

25            THE COURT:  I'm sorry.

Page 82

1          MR. MARTORANA:  Your Honor, I stand because you

2     had suggested at the outset of this hearing the possibility

3     that issues related to the GUC Trust and claims against the

4     GUC Trust might be better addressed as a threshold issue to

5     start.

6          Based upon what I'm hearing today, it sounds like

7     there's a consensus among the parties here at least, that

8     this is something that should not be addressed as a

9     threshold issue.

10          THE COURT:  Well, that depends on who you're

11     including within that consensus, Mr. Martorana.

12          MR. MARTORANA:  I meant just these parties over

13     here.  Don't -- you would like to have it addressed to the

14     threshold issue?

15          UNIDENTIFIED:  I'll address it later.

16          MR. MARTORANA:  Okay.  All right.  Then I guess

17     there is no consensus on that, but I will tell you that from

18     our perspective, we believe that it should not be addressed

19     as a threshold issue.

20          We do believe that first off it will require at

21     least some discovery, probably substantial discovery.  We

22     also believe, you know, particularly because as it relates

23     to issues of excusable neglect, which are fact sensitive.

24          We also believe that it's not dispositive of -- as

25     Mr. Weisfelner said the -- you know, the fundamental issue

1   here which is whether or not claims can be asserted against

2   New GM.

3           Moving off it being a threshold issue, we also

4   don't believe that this is an issue frankly that needs to be

5   addressed at any point during this hearing -- during this

6   proceeding.

7           No claimants, none of the plaintiffs, no claimants

8   or potential claimants had raised this as a possibility.  No

9   one has filed a motion to lift the bar date.  The only

10  person that has raised it has been New GM, based upon, you

11  know, some statements of fact in some pleadings.  But the

12  only person that has actually moved forward with it is New

13  GM, and frankly, you know, it's our view that this is

14  essentially a way to deflect liability away, and you know,

15  the attention away from New GM and put it on to a third

16  party.

17          To the extent that Your Honor is inclined to rule

18  against us and have it either be dealt with as a threshold

19  issue or as a -- I guess, a subsequent issue, we would

20  request to participate in any of the discovery that does

21  transpire.  And then to the extent that there are any claims

22  against New GM to be resolved, we would also ask to

23  participate in any mediation.

24          THE COURT:  Okay.  Thank you.

25          MR. FLAXER:  Thank you.

Page 84

1           THE COURT:  Let's see, Mr. Golden, Mr. Posner.

2    First you, Mr. Golden, then I'll hear from you, Mr. Posner.

3           MR. GOLDEN:  Thank you, Your Honor, Daniel Golden,

4    Akin Gump Strauss Hauer and Feld, counsel for certain

5    publically traded public -- publically traded unit trust

6    holders.

7           Your Honor, I do take your admonition not to pile

8    on, although my name was used in vain, so I figured I'd

9    stand for a minute or two, we agree with the position just

10   advocated by counsel for the GUC Trust.

11          We think it interesting that none of the potential

12   plaintiffs who might have asserted late claims against a GUC

13   Trust have indicated an intention to do so.  It's only New

14   GM that has raised that issue.

15          THE COURT:  Well, pause please, Mr. Golden.

16          MR. GOLDEN:  Yes.

17          THE COURT:  You've been around the block a couple

18   of times.

19          MR. GOLDEN:  Too many times.

20          THE COURT:  If you were a plaintiff's lawyer,

21   would you rather collect a hundred cents on the dollar or 30

22   cents on the dollar?  And if I'm allowed to ask a compound

23   question, would you prefer to try to shoot the moon with a

24   claim for punitive damages or would you prefer to assert

25   that punitive damages claim in a bankruptcy where punitive

Page 85

1    damages come at the expense of the remainder of the creditor

2    community?

3              MR. GOLDEN:  So I'm assuming both of those

4    compound -- both parts of that compound question were

5    rhetorical.

6              THE COURT:  Yes.

7              MR. GOLDEN:  I understand, Your Honor.  I

8    understand the strategy involved, but I think Mr. Weisfelner

9    is correct.  There is a looming threshold issue here.  I'm

10   not here to argue pro or con on that threshold issue, but

11   that issue once resolved will determine whether there needs

12   to be claims asserted or attempted to be asserted against

13   the GUC Trust.

14              I think Mr. Weisfelner was entirely correct, we

15   actually debated among ourselves whether to either --

16   whether to even file a letter seeking to participate at this

17   hearing, because none of this hearing had anything to do

18   with the Trust or the beneficial interest holders of the

19   Trust.

20              I was, however, concerned on April 30th, that

21   somehow some way the GUC Trust was going to be injected into

22   those proceedings, and therefore, we sent the letter asking

23   to participate.

24              Sure enough, seven hours later, New GM filed their

25   letter.  And for the first time injected that issue into

Page 86

1  these proceedings.  We don't think it's appropriate.  We're

2  frankly strangers to these proceedings.  There may come a

3  time when the plaintiffs and the claims that the plaintiffs

4  represent, seek to assert those claims against the GUC

5  Trust, it's not now.  They haven't done so, they haven't

6  indicated an intention to do so.

7          Furthermore, Your Honor --

8          THE COURT:  Pause please, Mr. Golden.  Put

9  yourself -- I made you put yourself in the shoes of the

10  plaintiffs' lawyers, now I want you to put yourself in my

11  shoes.

12          Can you see how a judge might be uncomfortable

13  with a scenario under which there's no claim against

14  anybody, assuming solely for the purpose of discussion, that

15  the claim otherwise has merit?

16          MR. GOLDEN:  Absolutely, Your Honor.  I've said to

17  my colleagues that you must be struggling at night with

18  these issues, whether to proceed, allow these claims to be

19  filed against New GM.  If so, then there's no need for the

20  GUC Trust.  But if not, does there -- is there another

21  remedy available by going against the GUC Trust.  I

22  understand the discomfort of the Court, but that discomfort

23  was caused by actions taken by other parties.

24          There's often times unfortunate circumstances when

25  people are deprived of their ability.  They fail to assert

Page 87

1    their rights, they fail to a -- timely assert their rights.

2    Unfortunate things happen in bankruptcy, Your Honor is well

3    aware of that, and I understand the discomfort level.  But

4    it doesn't change the fact that to adjudicate whether or not

5    these claims should be allowed against the GUC Trust will

6    require a significant amount of discovery.  .

7           The Pioneer standards themselves that regulate or

8    determine whether or not there is excusable neglect is ripe

9    with discovery and evidentiary rationales.

10          So, Your Honor, I think I agree with Mr.

11   Weisfelner's suggestion, hold this off, it won't be

12   permanently held off.  If Your Honor is to determine that

13   the plaintiffs can proceed against New GM, that will

14   probably be the end of it as it relates to the GUC Trust.

15   If that's not the Court's ruling, we can revisit the issue

16   if and when it becomes appropriate.

17          But to do it as a threshold issue, when there are

18   already so many issues on the table, we think is a mistake.

19          THE COURT:  Okay.  Thank you.

20          MR. GOLDEN:  Thank you, Your Honor.

21          THE COURT:  All right.  Mr. Posner, come on up,

22   please.  Now, I understand that you and your partner, Ms.

23   Cyganowski are acting as liaison between Mr. Weisfelner, and

24   Mr. Esserman and Mr. Inselbuch on the one hand, and the

25   other, I guess it's, I don't know, 50 to a hundred other

Page 88

1    class action lawyers, do you have some points that you need

2    to make that Mr. Weisfelner didn't satisfactorily make?

3            MR. POSNER:  No, Your Honor, just briefly, David

4    -- for the record, David Posner from Otterbourg, and as you

5    pointed out, and as Mr. Weisfelner mentioned I think twice,

6    Ms. Cyganowski, my partner, has -- is working with that

7    group as a consultant and a liaison counsel-type role.

8            She asked me to convey to the Court that to the

9    extent that she can be helpful in harmonizing any discord in

10   connection with the plaintiffs' group, she stands ready to

11   assist in that regard.  And I would be remiss, Your Honor,

12   if I didn't say I'm working with co-counsel, Harley Tropin

13   of the Kozyak Tropin firm who's here today in the court.

14           THE COURT:  Okay.

15           MR. POSNER:  Thank you, Your Honor.

16           THE COURT:  Thank you, Mr. Posner.  Mr. Etkin.

17           MR. ETKIN:  Your Honor, Michael Etkin, Lowenstein

18   Sandler for the plaintiffs in two pending class actions.

19           I rise only to talk about an issue that has been

20   raised and was raised in Mr. Weisfelner's letter of

21   yesterday, just so I have some clarity.

22           First of all, given the time frame, the number of

23   lawsuits, the number of lawyers, I think it's extraordinary

24   that the plaintiffs' side has been able to achieve this

25   level of cooperation so quickly for purposes of today's

1    hearing.  And having dealt in the class action realm for

2    many years, it is not the usual.

3          Second of all, I have enormous respect for Mr.

4    Inselbuch and his firm, Mr. Esserman, and his firm and Mr.

5    Weisfelner and his firm, that goes without say.  However, I

6    just want to quote from the second to last bullet point of

7    Mr. Weisfelner's letter as it related to the question of

8    liaison counsel for plaintiffs.  And that's --

9          THE COURT:  The letter of May 1?

10         MR. ETKIN:  His letter of May 1, yes.  And that's

11   what I thought and assumed the state of play was as we

12   walked into the courtroom today.  And it's short.

13         Mr. Weisfelner says, "A majority of plaintiffs has

14   designated counsel as lead counsel for the May 2nd

15   conference.  Counsel will endeavor to further a continued

16   coordination amongst plaintiffs.  The May 2nd conference

17   agenda should not include debate about the appropriate

18   procedures for such coordination, and if necessary, it can

19   be addressed at a later conference."

20         I agree with that.  I think that there's

21   coordination that still needs to be discussed as we move

22   forward.  These three esteemed counsel were designated to

23   appear on behalf of a majority of the plaintiffs for

24   purposes of today's hearing, and I just want to make sure

25   that I understand the state of play correctly.

Page 90

1           THE COURT:  Well, I take it you're not asking me

2      for a ruling on that.

3           MR. ETKIN:  No.  I'm not asking you for a ruling

4      at all.  It's not something that really was placed on the

5      agenda, and it's really something for the plaintiffs'

6      counsel and their respective bankruptcy counsel to work out,

7      to the extent more coordination is necessary.

8           THE COURT:  Okay.  All right.  Anybody else -- oh,

9      there was a gentleman on the phone if I'm not mistaken.

10          MR. BECNEL:  Yes, Your Honor, Daniel Becnel of

11     Becnel Law Firm.  I have since filed in the Eastern District

12     of Louisiana --

13          THE COURT:  Okay.  Pause please.  Was it Becnel?

14          MR. BECNEL:  Becnel, B-e-c-n-e-l.

15          THE COURT:  And did you give me a letter, Mr.

16     Becnel?  My prep didn't reflect that letter.

17          MR. BECNEL:  No, we did not submit a letter.

18     We've been on all of the conferences though.

19          THE COURT:  I beg your pardon?

20          MR. BECNEL:  We've been with all of the conference

21     calls that all of the lawyers have had together.

22          THE COURT:  Well, forgive me, Mr. Becnel, I asked

23     another attorney to put himself in my shoes, and I'm going

24     to do the same with you.  But frankly I'm not looking for

25     your understanding.  I'm looking for you to understand my

Page 91

1    ruling.

2              I have before me one full courtroom here, and I

3    believe I have two overflow courtrooms.  And I issued an

4    order to obviate this exact situation, which every one of

5    the other lawyers in this entire case was fully able to

6    comply with, and when I issue an administrative order to

7    avoid conduct that results in chaos in a case on my watch, I

8    need the legal community to understand that when I issue

9    orders, I mean them.

10             So respectfully, I am denying you the opportunity

11   to be heard.  If you have concerns, I'm sure that Mr.

12   Weisfelner or his colleagues will return your phone calls.

13   And as you've undoubtedly heard, they're fairly capable

14   advocates.

15             So I think my ruling is clear.  I'm denying you

16   the opportunity to be heard for failure to comply with the

17   requirements of my case management order.

18             Mr. Stein -- is there anybody else on the phone,

19   of course, a person on the phone who has complied with the

20   requirements of the order?

21       (No response)

22             THE COURT:  Mr. Steinberg, you can reply.

23             MR. STEINBERG:  Your Honor, I'm going to be very

24   brief.  One, to the extent there was a discussion about

25   mediation and Ken Feinberg, I want to just make it

Page 92

1    absolutely clear that Mr. Feinberg has not been retained to

2    examine the economic losses which are inherent in these

3    lawsuits.  His focus has been on the accident victims.

4            Second, that the accident victims, while not a

5    part of our motion to enforce, it does not mean that there

6    -- that our position is not that they are retaining

7    liability at this point in time for the pre-sale accident

8    victims only.

9            Third, that I agree with Mr. Weisfelner and Mr.

10   Flaxer that I think as far as melding the two procedures and

11   making sure that the adversary proceeding, the contested

12   matter are all dealt with efficiently, I think we'll be able

13   to do that and work with each other to do that.

14           I did think Mr. Flaxer had actually a very good

15   suggestion on the fraud and the court issue, is that once we

16   go through the stipulated facts and the -- whether there

17   will be discovery and if so, what narrowly tailored

18   discovery there will be, then we will be able to evaluate

19   whether it's still efficient to deal with fraud on the Court

20   or not as a threshold issue.

21           And so our suggestion would be as Mr. Flaxer has

22   modified it, is to let us go through the process of

23   stipulated facts and if we do want to put on fraud on the

24   Court as a threshold issue because we actually think we can

25   get rid of it based on a legal theory, and whatever facts we

Page 93

1    stipulated to, we want to reserve the right to do it.  We're

2    not asking Your Honor to rule on that now or not, but we

3    would take that up at the next hearing if we're at that

4    stage.

5              As far as the GUC Trust, the late filed claim, the

6    reality is that the person who raised this issue was not me

7    in my letter.  The person who raised the issue was the

8    objector, and I think it was Mr. Weisfelner who claimed a

9    denial of procedural due process for failure to get notice

10   of the bar order, and saying that he had no other remedy,

11   and the only remedy that he could possibly look to is New

12   GM.

13             The other person who put it on the calendar was

14   Mr. Flaxer's client, because we've agreed that a threshold

15   issue is three -- I'm sorry, 60(d)(1), which is that if

16   there was some kind of a violation, is there -- should there

17   be an equitable remedy that's fashioned against New GM for

18   Old GM's conduct.

19             So he's put on the issue as to whether -- because

20   there's no other opportunity to get any kind of recovery,

21   that you have to look to New GM.

22             Now, when I said that I didn't concede that this

23   was a threshold issue or not, it was because it was more

24   nuanced.  I'm not trying to suggest that as a threshold

25   issue we brief the Pioneer issues.  What I am suggesting is

Page 94

1    that the plaintiffs here cannot make a legitimate procedural

2    due process argument relating to the bar order if they want

3    to sleep on their rights and not go against Old GM while Old

4    GM is still sitting with securities.  And I thought that

5    that needed to be flabbed (ph).

6          And that if it's inherent in the 60(d)(1) issue

7    that they're going to look to us because they otherwise have

8    no other remedy, then I think that that is an issue that has

9    to be dealt with.  Having said that, and I don't say

10   anything more on that issue.

11         I do think, Your Honor, and I wasn't sure why Mr.

12   Weisfelner went into it, but his concerns with regard to an

13   issue that I think Your Honor dealt with adequately, which

14   is dealers who may have tried to put conditions on fixing an

15   ignition switch, and Your Honor asked essentially, why are

16   you asking me that, I think New GM clarified that.  And as

17   far as we know, it was one dealer, and it was immediately

18   dealt with, and when they asked whether there were other

19   dealers involved, we never got a list for anything else.

20         So I only say that not because it's relevant to

21   anything here, except that there is press that is listening

22   to this issue, and everybody likes to say in a very broad

23   brushed way, New GM is acting irresponsibly.  On this

24   particular issue, we did act responsibly, and on all the

25   issues I think we're trying to act responsibly.

Page 95

1          And to the extent that Mr. Weisfelner conceded

2    that he wasn't a class action lawyer, or a negligence

3    lawyer, he's probably also not a scientist or an engineer

4    who could decide whether the air bag issue is one thing or

5    another thing.

6          I only say that again because the people listening

7    here, that it should be absolutely clear that you can say

8    whatever you want to say, but at the end of the day, it

9    ultimately has to be grounded in fact and a probable claim.

10         Other than that, Your Honor, we appreciate the

11   time you've given us today.

12         THE COURT:  All right.  Ladies and gentlemen, I

13   want you to take a lengthy bathroom break, but hopefully no

14   more than that.  I would like people who are interested in

15   my resulting directions to be back in 15 minutes.  That

16   would be 25 to 1 on the clock up there.

17         I can't guarantee you that I'll have it buttoned

18   up all then, but I don't want to impose on you to wait any

19   more than you need to.  We're in recess.

20         (Recessed at 12:21 p.m.; reconvened at 1:10 p.m.)

21         THE COURT:  Have seats, please.  I apologize for

22   keeping you all waiting.  Here's what we're going to do.  In

23   most respects, it will be similar to my tentatives, but with

24   some refinements.

25         One, I want to leave as much time for thoughtful

Page 96

1    briefing and thought by the Court as possible.  But at the

2    same time, I want this to proceed as expeditiously as I can

3    consistent with fairness.  So we're going to consider as

4    threshold issues the two remaining issues shown on Mr.

5    Weisfelner's blackline, the discrimination argument, the

6    possibility that the claims now being asserted may be claims

7    against Old GM or the GUC Trust, and subject to what I say

8    momentarily, even the fraud on the Court contentions.

9            Messrs. Steinberg, Weisfelner, Flaxer, Martorana,

10   and Golden, or their designees, are to confer and to prepare

11   an order then to be settled on three business days' notice

12   or overnight mail, consistent with these determinations that

13   I'm dictating now, but putting meat on the bones, and

14   providing for agreed upon dates.

15           Two, you're to meet and confer to agree upon facts

16   to the maximum extent possible, consistent with your

17   professional duties to your clients.  To the extent you need

18   to agree to disagree, you're to identify the matters that

19   you can't agree upon and jointly present those identified

20   matters to me, after which I'll determine the materiality of

21   what's not agreed on and how it should affect further

22   proceedings, either by way of authorizing limited discovery,

23   or by taking issues off the table for now, and determining

24   them later.

25           As a general matter, we're going to get as far as

1    we can without discovery.  And notwithstanding what my case

2    management order otherwise provides, there will be no

3    discovery in either the adversary proceeding or the

4    contested matter until and unless I order otherwise.

5              Three, I consider it preferable to consider the

6    fraud on the Court claims as early as possible, and at this

7    juncture, I'm including it as an issue to bring before me as

8    one of the threshold issues.

9              But I recognize or at least assume that the fraud

10   on the Court claim is likely to require at least some

11   discovery.  You're to confer and see if you can agree on

12   limited discovery that will meet your respective needs on

13   this.  I hope, but I'm not sure that you'll be successful.

14             If after good faith discussion, agreeing on

15   limited discovery is impossible, either side will be

16   permitted to take the fraud on the Court issues off the

17   table as threshold matters, and to defer them for

18   consideration until a later time, assuming that you first

19   identified the problem to me and gotten my green light to do

20   so.

21             Four, I agree with Mr. Martorana and Mr. Golden

22   that the matters involved in compliance with Pioneer are

23   fact intensive, and are not appropriately threshold issues.

24   But any party will be free to assert that claims now being

25   asserted against New GM are prepetition and not post-

Page 98

1  petition claims.

2          Before any decision is made on the extent to which

3  the GUC Trust might have to satisfy any of those claims,

4  each of Wilmington Trust and any holders of GUC Trust units

5  will have full opportunity to be heard on any and all

6  issues.

7          Each of Wilmington Trust and any holders of GUC

8  Trust units, though in the latter case, with the same kinds

9  of coordination that I expect from the plaintiffs' side,

10 will have unlimited standing to be heard on not just GUC

11 Trust related issues, but on any of the issues that we're

12 considering as part of this exercise; either in the

13 adversary proceeding or the contested matter.

14         Likewise, in the Wilmington Trust and any holders

15 of GUC Trust units, again subject to the coordination

16 requirement, will be free to participate in any discovery I

17 authorize in connection with the remainder of the issues,

18 even though I'm not authorizing any such discovery now.

19         But related to that, to the extent Wilmington

20 Trust told me in our discussion that it had a desire for

21 discovery, its request for that is denied at this time,

22 without prejudice to renewal at a time when it's more

23 appropriate.

24         Five, I will not interfere with the MDL panel's

25 hearing now scheduled for May 29 and will permit the

Page 99

1    judicial panel and multi-district litigation to rule on

2    where pretrial proceedings with respect to any of the

3    underlying actions might proceed.

4              But this ruling is without prejudice to the rights

5    of any party to ask me to stay further proceedings before

6    the transferee judge based on rulings in this Chapter 11

7    case, or based on any perceived delay in my issuing rulings

8    in this Chapter 11 case.

9              Six, anyone who is unwilling to agree to the

10   temporary stand still that the majority seems to agree upon

11   must come forward before me within a time certain, either on

12   the date proposed in the Steinberg and Weisfelner letters,

13   or an alternative date they might agree upon, in

14   consultation with the other parties that I've allowed to

15   participate in the formation of the order, with a motion

16   asking me to rule on whether I should force such a

17   standstill on the dissenter by TRO or preliminary

18   injunction.

19             Nothing in the scheduling order will, however,

20   change the usual burdens associated with getting a TRO or

21   preliminary injunction relief.

22             Seven, parties are to identify any and all issues

23   they want me to decide by a date certain to be proposed by

24   that team who I've designated for that purpose, the same one

25   that's preparing the proposed form of order, and to state

1    whether or not their issues to be addressed as threshold

2    issues or not.

3         They are then to confer with the others as to when

4    any such issues are best decided, whether as threshold

5    issues or as later issues.  If any such additional issues

6    are to be presented as threshold issues, briefing on them

7    should be rolled into the briefing, otherwise authorized.

8    But if they're not perceived to be threshold issues, they

9    can be deferred with a full reservation of rights.

10         Eight, matters in the adversary proceeding and in

11   the contested matter will be jointly administered.  For the

12   avoidance of doubt, this will include joint briefing and

13   joint discovery, if and when any discovery is authorized.

14         Parties should agree upon a preferred place for a

15   single docket to file all of the documents in connection

16   with this controversy, and to provide for that in the

17   proposed order.  As far as I'm concerned, either the

18   adversary or the contested matter will be equally

19   satisfactory.

20         Nine, other than as I stated, I don't think that I

21   intended to disapprove anything that had been agreed upon

22   between Mr. Steinberg and the class action plaintiff

23   steering committee.  But for the avoidance of doubt, if you

24   think I left something out, or was inconsistent in my

25   rulings, I would ask that you tell me that now.

Page 101

1          Ten, the matter of mediation is deferred without

2     prejudice to anyone's right to raise the issue at a later

3     time.

4          So, folks, you can take the weekend off, but after

5     that, please get together as soon as practical to get me an

6     agreed upon form of order, at least agreed upon between the

7     people I mentioned, then to be settled.  That order should

8     take care of details, such as proposed dates, which I've

9     intentionally left out of the rulings I just announced.  I

10    think you can and should meet your needs and concerns on

11    that.

12         Now, not by way of reargument, I suspect that

13    there may be some details I failed to address or some loose

14    ends, and I'll allow people to be heard on that.

15         Mr. Steinberg?

16         MR. STEINBERG:  Your Honor, I think I can deal

17    with everything you said.  The only thing is, do we talk to

18    your chambers about the next status conference date, or do

19    you want to give us the date and we'll try to back into to

20    the sum of the requirements before then?

21         THE COURT:  My preference, I think, Mr. Steinberg,

22    is that we do it as an iterative process.  You guys, after

23    you've figured out the time you need, tell me what you would

24    recommend as far as a date within a zone.  Thereupon my

25    courtroom deputy, Ms. Calderone will see how it fits into

Page 102

1   the schedule.  She'll advise you what we're in a position to

2   do, and then you can either massage your dates, or plug the

3   date we give you into the order that you settle.

4           MR. STEINBERG:  That's acceptable, thank you.

5           THE COURT:  Okay.  Anything else?  Mr. Esserman,

6   were you rising to be heard in any way?

7           MR. ESSERMAN:  No, thank you, Your Honor.

8           THE COURT:  Oh, okay.  All right.  Does anybody

9   have anything else?

10      (No response)

11          THE COURT:  No.  Okay.  Thank you very much.

12  We're adjourned.

13  (Proceedings concluded at 1:22 PM)

14                      *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

1                              I N D E X

2

3                           R U L I N G S

4    IDENTIFICATION                                        PAGE

5    Judge's ruling                                         95

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T I O N

2

3          I, Dawn South, certify that the foregoing transcript

4     is a true and accurate record of the proceedings.

5

6     **Dawn South**
      Digitally signed by Dawn South
      DN: cn=Dawn South, o=Veritext, ou,
      email=digital@veritext.com, c=US
7     Date: 2014.05.05 13:12:50 -04'00'

8     AAERT Certified Electronic Transcriber CET**D-408

9

10         I, Sheila G. Orms, certify that the foregoing is a

11    correct transcript from the official electronic sound

12    recording of the proceedings in the above-entitled matter.

13

14    Dated:  May 3, 2014

15

16    **Shelia G. Orms**
      Digitally signed by Shelia G. Orms
      DN: cn=Shelia G. Orms, o=Veritext, ou,
      email=digital@veritext.com, c=US
17    Date: 2014.05.05 13:13:22 -04'00'

18    Signature of Approved Transcriber

19    Veritext

20    330 Old Country Road

21    Suite 300

22    Mineola, NY 11501

23

24

25

**[& - addressed]**

| & |
|---|
| **&** 3:2,10,17 4:1 5:10 7:1,8,15 8:1,7 45:23,24 81:19 |

| 0 |
|---|
| **01:19:05** 57:13 |
| **07068** 6:4 |
| **09-50026** 1:6 |

| 1 |
|---|
| **1** 21:21 22:19 89:9 89:10 93:15 94:6 95:16 |
| **10** 16:22 |
| **10014** 6:20 |
| **10017-2024** 8:11 |
| **10018** 4:19 |
| **10020** 6:11 |
| **10022** 3:20 |
| **10022-7619** 7:11 |
| **10036** 5:4 |
| **10036-4003** 3:5 |
| **10036-6745** 5:13 |
| **1006** 6:19 |
| **101** 8:2 |
| **10166-0193** 4:4 |
| **10169** 5:20 |
| **10178** 8:3 |
| **10:44** 45:13 |
| **11** 1:5 99:6,8 |
| **1100** 7:3 |
| **11501** 104:22 |
| **1185** 3:4 |
| **1251** 6:10 |
| **12:21** 95:20 |
| **13** 54:7 |
| **14-01929** 1:16 |
| **1407** 49:23 |
| **14th** 23:22 79:24 |
| **15** 26:22,23 95:15 |
| **165,000** 34:12 |
| **19** 4:10 |
| **1:10** 95:20 |
| **1:22** 102:13 |

| 2 |
|---|
| **2** 2:5 29:4 |
| **20** 29:5 |
| **200** 4:3 |
| **20005** 7:4 |
| **2006** 34:11 |
| **2009** 11:11 |
| **201** 6:18 |
| **2014** 2:5 104:14 |
| **21st** 7:10 |
| **2200** 7:17 |
| **230** 5:19 |
| **2323** 7:16 |
| **23rd** 11:24 12:11 13:13,20 15:20 16:3 |
| **24** 57:9 |
| **24th** 11:21 20:8 |
| **25** 95:16 |
| **26** 80:14 |
| **28** 49:23 |
| **29** 98:25 |
| **29th** 16:5 24:16 25:25 49:14 50:12 50:18 |
| **2nd** 28:3 89:14,16 |

| 3 |
|---|
| **3** 21:24 22:25 65:16 104:14 |
| **3,500** 9:16 |
| **30** 12:1 15:21 39:20 84:21 |
| **300** 3:12 104:21 |
| **30th** 43:1 85:20 |
| **330** 104:20 |
| **35** 18:5 |
| **36th** 8:10 |

| 4 |
|---|
| **4** 21:23 29:5 |
| **408** 104:8 |
| **425** 8:17 |
| **437** 3:19 |

| 5 |
|---|
| **5** 13:14 22:20 |
| **50** 87:25 |

| 6 |
|---|
| **60** 10:25 11:16 21:20,21,24 22:25 23:6 39:3 44:5 51:4 77:7,7 93:15 94:6 |
| **600** 7:9 |
| **60654** 3:13 |
| **610** 21:23 |
| **620** 4:18 |
| **65** 6:3 |

| 7 |
|---|
| **7** 13:25 |
| **70068** 8:19 |
| **75201-2689** 7:18 |
| **780** 8:9 |

| 9 |
|---|
| **92660** 4:11 |
| **95** 103:5 |
| **9:46** 2:6 |

| a |
|---|
| **a.m.** 45:13 |
| **aaert** 104:8 |
| **abade** 58:13 |
| **abandon** 40:11,14 |
| **abc** 1:13 |
| **ability** 19:22 73:9 86:25 |
| **able** 12:19 21:8 23:7 26:10 27:8,24 29:9 31:14 32:9 34:2,22,22 61:15 75:25 78:3 79:18 88:24 91:5 92:12,18 |
| **absolutely** 32:14 86:16 92:1 95:7 |
| **acceptable** 102:4 |
| **accepted** 36:12 |
| **accident** 32:21 33:3 34:24 37:4,16,17,18 39:16,17 40:6 92:3 92:4,7 |
| **accidents** 32:18 33:1 37:19 39:20 |
| **accommodated** 57:6 |

**accomplish** 12:19 17:22 30:11 44:6,16
**accomplished** 15:15 16:16
**account** 61:5,15
**accounted** 38:18
**accurate** 64:17 104:4
**achieve** 88:24
**acknowledged** 74:1
**act** 94:24,25
**acting** 69:17,21,24 69:25 87:23 94:23
**action** 12:15 13:15 15:10 24:4,10,11,12 24:20 25:10 26:11 26:11 36:19 49:11 51:4 55:13 69:3 88:1 89:1 95:2 100:22
**actions** 10:25 11:1 11:16 37:7 38:2 70:13,23,23 71:17 71:19 72:16,16 86:23 88:18 99:3
**activities** 46:1 50:11
**acts** 52:22
**actual** 34:11 76:24
**add** 55:11 78:22 79:5
**added** 76:1
**additional** 22:2,3 54:22 55:11 79:15 100:5
**address** 10:23 12:12 20:22 21:8 23:17 25:1 46:5 47:22 56:13 71:14 78:13 82:15 101:13
**addressed** 9:22,23 10:10 13:6,24 14:15 14:24 15:5,6,15 17:8 20:16 42:12,17 58:18 77:20 82:4,8 82:13,18 83:5 89:19 100:1

[addresses - assets]    Page 2

**addresses** 49:25
**addressing** 12:25
**adequately** 94:13
**adjourned** 102:12
**adjournment** 45:8
**adjudicate** 87:4
**adjust** 31:24
**adjusted** 74:7
**adjustment** 42:5
**administered** 1:7
19:8 100:11
**administrative**
24:18,20 26:2 28:6
91:6
**admission** 27:6
**admissions** 18:1,5
26:16 27:2,11,11
42:18 57:21
**admitted** 18:2,3
**admonition** 54:18
84:7
**adv** 1:15
**advanced** 53:6,9
**advantage** 55:8,23
**advantages** 55:16
**advent** 55:7
**adversaries** 17:19
18:13,18 19:5,6,9
**adversary** 13:10
18:12,22,25 19:4
23:20 25:18 39:3
55:9,11,17,24 56:1
56:11,13,22 57:14
57:19 73:14 76:14
79:15,17 80:5,18
92:11 97:3 98:13
100:10,18
**advise** 47:15 78:3
102:1
**advocated** 84:10
**advocates** 60:14
91:14
**affect** 51:24 64:16
79:2 96:21
**afforded** 55:19
**agenda** 9:20 23:19
25:14 29:10 30:16

79:12,24 89:17 90:5
**aggrieved** 41:14
**agree** 16:19,20
17:20 18:8,8,10,22
21:14 23:11,23 26:2
27:5,18,20,24 28:7
28:21 36:21 38:7
39:7 50:9 54:3,11
61:14 70:12 75:2
79:8 81:3 84:19
87:10 89:20 92:9
96:15,18,19 97:11
97:21 99:9,10,13
100:14
**agreed** 17:6 40:23
41:10 42:11,13
71:18 93:14 96:14
96:21 100:21 101:6
101:6
**agreeing** 17:24
97:14
**agreement** 23:13
24:16 32:15 42:6
69:11 80:6
**agreements** 54:18
70:7
**ah** 67:25
**ahead** 66:20
**air** 71:12,14,14 95:4
**airline** 8:17
**akin** 5:10 84:4
**al** 1:7,8 4:9 5:2 8:16
**allegations** 52:12
55:16 72:3
**alleged** 12:5 78:14
**allison** 1:16
**allow** 9:14 14:19
24:16 48:5 56:15
74:8 86:18 101:14
**allowed** 20:18 60:23
84:22 87:5 99:14
**alternate** 16:22
**alternative** 31:16
73:24 81:8 99:13
**amenable** 14:19
80:21

**amend** 79:25
**amended** 24:3,9,19
24:23 25:18,19 26:3
52:1,6
**amending** 79:14
**amendment** 23:21
**amendments** 14:3
80:1
**americas** 3:4 6:10
**amount** 87:6
**amy** 1:16
**analogy** 62:24
**ands** 46:9
**anecdote** 69:14
**announced** 34:6
36:4 101:9
**announcement** 33:8
34:14 35:7
**answer** 27:6 57:22
71:15 72:24 80:13
**answering** 27:5
**anticipate** 51:7 53:3
74:12
**anticipated** 52:16
**anybody** 13:3,6
20:6 21:1 59:19
64:22 81:13 86:14
90:8 91:18 102:8
**anybody's** 17:3
42:4 56:16
**anymore** 45:7
**anyone's** 101:2
**apologize** 14:4
95:21
**appear** 12:8 19:15
50:15 89:23
**appearing** 45:18
**applies** 61:25
**apply** 64:19,20 66:2
73:23 74:19
**appreciate** 10:12
95:10
**appropriate** 15:2
19:1,5 44:18 46:3
48:7,17,22 50:3
56:15,20 65:8 75:17
86:1 87:16 89:17

98:23
**appropriately** 26:6
97:23
**approved** 104:18
**approving** 22:19
**april** 11:21,24 12:1
12:11 13:13,20
15:20,21 16:3 20:8
43:1 85:20
**arbitrate** 70:7
**arbitration** 68:18
**area** 54:21 75:24
**arguably** 70:25
71:20
**argue** 10:7 62:16
63:5 74:20 85:10
**argues** 21:21
**argument** 14:22,22
38:1 43:14,21 62:1
62:15 94:2 96:5
**arguments** 73:20
**art** 47:3
**arthur** 3:7
**article** 49:16
**articulating** 43:3
**ascertain** 17:5 22:9
67:19
**ascribed** 72:4
**asked** 17:16 18:25
32:13 38:12,20
43:24 44:15 46:1
50:11 58:5,12 66:22
88:8 90:22 94:15,18
**asking** 79:11 85:22
90:1,3 93:2 94:16
99:16
**assert** 19:22 22:1
36:18 76:14 79:21
84:24 86:4,25 87:1
97:24
**asserted** 28:4 38:9
68:21 83:1 84:12
85:12,12 96:6 97:25
**asserting** 19:21
**asset** 32:15
**assets** 32:16

[assist - burdens]                                                                        Page 3

**assist** 88:11
**associated** 59:1
  99:20
**assor** 3:17
**assume** 31:13 33:18
  38:1,8,15 54:4
  60:10 65:8 71:18
  97:9
**assumed** 11:7 32:16
  32:23 33:4 36:12
  89:11
**assuming** 14:1 85:3
  86:14 97:18
**assumption** 38:6
**attempt** 58:5,12
  71:17 75:10,15
**attempted** 85:12
**attention** 41:6
  48:14 61:9,20,22
  68:5,24 69:8 70:3
  83:15
**attorney** 3:11 4:2,9
  6:2,9,16 8:8,16 47:6
  90:23
**attorneys** 3:3,18
  4:16 5:2,11 20:21
  60:13
**attractive** 20:11
**authorize** 98:17
**authorized** 100:7
  100:13
**authorizing** 96:22
  98:18
**auto** 46:17
**automatically** 80:17
**available** 20:20
  63:12,13 86:21
**avenue** 3:4,19 4:3
  4:18 5:19 6:3,10
  7:9 8:2,9 23:15
**avoid** 10:14 46:6
  56:20 81:5,7 91:7
**avoidable** 81:7
**avoidance** 100:12
  100:23
**avoided** 72:15

**avoiding** 57:25
**aware** 38:19 47:4
  48:3 73:5 87:3

**b**

**b** 2:9 8:18 21:23
  77:7 90:14
**back** 13:19 21:9
  50:2 52:20 60:24
  61:10,19 65:21
  76:22 78:2 79:10
  95:15 101:19
**backs** 80:14
**bad** 36:2 46:23
  62:24
**bag** 71:12,15 95:4
**bags** 71:14
**bailiwick** 67:15
  69:8
**balance** 21:17
**ball** 56:16
**bankruptcy** 1:1 2:1
  2:11 13:1 22:19
  25:2,14,21 27:12
  30:18 41:6,8 49:12
  50:25 55:13 61:7
  64:14 74:2 84:25
  87:2 90:6
**bar** 19:23 31:6
  39:23 83:9 93:10
  94:2
**bargained** 66:2
**barred** 13:18
**base** 31:24
**based** 11:23 14:10
  37:5 38:19 44:14
  60:1 63:16 78:4
  82:6 83:10 92:25
  99:6,7
**basically** 76:25 77:3
**basis** 14:7 15:25
  40:3,5 70:1 74:4
  76:6
**bathroom** 95:13
**battle** 20:11
**beach** 4:11
**bear** 40:19

**becnel** 8:15,21
  90:10,10,11,13,14
  90:14,16,17,20,22
**beg** 90:19
**beginning** 41:11
**behalf** 1:17 45:18
  81:19 89:23
**behooves** 47:16
**believe** 36:8,17
  82:18,20,22,24 83:4
  91:3
**bell** 3:17
**beneficial** 85:18
**beneficiaries** 74:6,8
  74:25
**benefit** 70:8
**benefits** 53:10
**benjamin** 8:5
**berman** 45:20
**best** 17:9 57:23 58:7
  58:14 100:4
**better** 12:8 20:16
  28:24 29:9 32:9,9
  32:10 33:14 39:6
  51:15,19 56:21
  57:10 71:21 81:9
  82:4
**beyond** 51:7 65:2
**big** 28:8 32:11 56:4
**bit** 54:23
**black** 14:19 43:1,3
  43:6
**blackline** 96:5
**blaming** 48:1
**bleed** 46:9
**bleeds** 52:8
**block** 84:17
**blown** 39:23
**blush** 12:8
**board** 63:7
**boatload** 47:3
**bog** 59:2
**bogged** 17:23 41:4
  71:24
**boils** 48:13
**boling** 2:2

**bones** 96:13
**bought** 65:15
**bound** 38:14
**bove** 8:13
**box** 11:13 32:17
  37:21 38:22,23
**break** 44:19 95:13
**breathing** 42:1
**brian** 6:22
**bridge** 28:18
**bridged** 42:20
**brief** 59:20 91:24
  93:25
**briefed** 17:13
**briefing** 29:6 30:12
  49:1 96:1 100:6,7
  100:12
**briefly** 88:3
**briefs** 14:8 80:21
**bring** 18:21 19:4
  67:20 69:7 97:7
**bringing** 55:6
**broad** 76:19 94:22
**broader** 76:21
**broken** 67:4
**bromberg** 7:15
  45:23
**brought** 13:10
  17:19 19:6,9 23:20
  34:9 37:7,24 38:3
  38:11 41:6 61:8
  68:23 70:2,10
**brown** 5:1 45:17
**brushed** 94:23
**bryan** 7:16
**bryant** 5:12
**build** 36:11
**building** 4:17 6:17
  32:11
**bullet** 89:6
**bunch** 20:14 40:7
  55:12
**bundle** 56:5,11
**bundling** 52:1
**burden** 29:3
**burdens** 99:20

[burdensome - complaint]                                      Page 4

| | | | |
|---|---|---|---|
| **burdensome** 15:7 | **cases** 32:24 34:8 | **circumstances** 23:6 | **closer** 59:24,25 62:6 |
| **business** 96:11 | 75:17 | 31:23 75:14 86:24 | **coalesce** 25:19 |
| **buttoned** 95:17 | **catch** 74:9 | **cited** 18:19 51:10 | **cobalt** 34:12,12 |
| **c** | **category** 13:11 | **civil** 47:14 | **cobalts** 67:7 |
| | 73:25 | **claim** 32:10 38:8 | **coleman** 8:16 |
| **c** 1:16,17 3:1,15 9:1 | **cause** 13:16 38:13 | 64:1 72:9 76:12,21 | **collars** 63:9 |
| 90:14 104:1,1 | 41:2 58:25 69:22 | 84:24,25 86:13,15 | **colleagues** 44:17 |
| **ca** 4:11 | 71:12 | 93:5 95:9 97:10 | 55:22 61:2 86:17 |
| **calcagnie** 4:8 45:18 | **caused** 86:23 | **claimants** 83:7,7,8 | 91:12 |
| **calderone** 101:25 | **causes** 13:1 69:2 | **claimed** 33:6 93:8 | **collect** 75:17 84:21 |
| **calendar** 65:23 | **cents** 39:21 84:21 | **claims** 11:4,22 | **collective** 45:25 |
| 93:13 | 84:22 | 13:17 14:23,23,23 | 48:14 |
| **calibrations** 71:13 | **certain** 16:21 19:12 | 14:25 15:3 19:19,21 | **collectively** 61:19 |
| **california** 10:18 | 26:20 27:14 84:4 | 19:21,22,22 23:24 | 72:20 73:11 75:11 |
| 14:6 26:8 50:14 | 99:11,23 | 31:2 36:15,18 39:21 | **come** 9:17 16:20 |
| **call** 17:1,8 49:9 | **certainly** 23:12 51:6 | 46:18 51:24 59:24 | 18:4 41:12 53:12,18 |
| 52:19 68:5 | 51:22 52:2 56:18 | 60:1 67:10,20 68:20 | 54:14 56:17 57:10 |
| **called** 14:21,24 | **certified** 104:8 | 69:2 74:1,1,3,24 | 58:25 75:25 78:2 |
| 25:14 | **certify** 104:3,10 | 76:25 82:3 83:1,21 | 80:17 81:15 85:1 |
| **calling** 10:8 46:7 | **cet** 104:8 | 84:12 85:12 86:3,4 | 86:2 87:21 99:11 |
| 71:9 | **chambers** 101:18 | 86:18 87:5 96:6,6 | **comes** 18:7 48:10 |
| **calls** 65:6 90:21 | **chance** 20:7 28:14 | 97:6,24 98:1,3 | **comfort** 64:6 73:17 |
| 91:12 | 28:15 52:24 70:20 | **clarified** 94:16 | 73:18 |
| **can't** 69:18 70:14 | 81:14 | **clarity** 88:21 | **coming** 42:21 53:13 |
| 95:17 96:19 | **change** 44:15 75:14 | **class** 10:25 11:16 | **commence** 17:19 |
| **capable** 91:13 | 78:16 87:4 99:20 | 12:15 13:15 15:10 | **commenced** 47:7 |
| **caplin** 7:1,8 45:24 | **changed** 44:14 | 49:11 51:4 55:13 | **comments** 9:15 |
| **car** 27:13 33:7,10 | **chaos** 91:7 | 74:4 88:1,18 89:1 | **committed** 33:25 |
| 33:18 34:3,5,13 | **chapter** 1:5 99:6,8 | 95:2 100:22 | **committee** 15:10 |
| 35:6,21,22,24 37:16 | **character** 20:1 26:5 | **classic** 58:19 | 16:2 100:23 |
| 37:17 40:8 68:16 | **characterize** 46:11 | **clear** 9:24 32:25 | **common** 26:22 |
| 69:5 | 46:15 | 35:8 36:23,24 44:3 | **commonality** 73:10 |
| **care** 10:16 21:3 | **characterized** 11:4 | 49:21 77:8 91:15 | 73:10 |
| 101:8 | **characterizing** | 92:1 95:7 | **communication** |
| **careful** 21:6 | 34:20 | **clearly** 18:20 44:7 | 68:25 70:6 |
| **cares** 20:6 | **charge** 22:16,17 | 66:12 | **communications** |
| **cars** 33:15,24,25 | **chartered** 7:1,8 | **client** 93:14 | 22:9 |
| 34:10,16 35:11,14 | **cheap** 67:7 | **clients** 61:25 74:13 | **community** 85:2 |
| 35:15,20 36:3,4,5 | **chevy** 34:12 67:7 | 96:17 | 91:8 |
| 36:10 60:11 65:16 | **chicago** 3:13 49:14 | **climb** 19:4 | **company** 1:6 |
| 65:18 67:3,8 | **choice** 22:25 75:13 | **clinton** 1:16,17 | **compensated** 35:1,5 |
| **carve** 60:8 64:22 | **chop** 64:22 | **clock** 45:10 95:16 | **competent** 67:12 |
| **carved** 33:3 | **chops** 52:7 | **clog** 55:14 | **complaint** 9:18 |
| **case** 1:6 19:23 | **circle** 7:2 | **close** 16:23 42:21 | 23:21 24:3,9,19,24 |
| 41:24 50:17 51:1 | **circuit** 10:19 | 62:13 | 24:25 25:9,18,19 |
| 64:17 65:6 66:2,7 | **circumstance** 38:16 | **closely** 45:22 | 26:3 51:5,12 52:1,4 |
| 91:5,7,17 97:1 98:8 | | | 52:6 55:2,9 79:25 |
| 99:7,8 | | | |

[complaint - court]    Page 5

80:12
complaints 25:20
  51:2,4,12 52:12
  54:24 55:4,11
complete 28:16
  34:2 75:25
completely 68:4
complex 21:14
compliance 97:22
complied 91:19
comply 36:13 91:6
  91:16
complying 11:14
compound 84:22
  85:4,4
con 85:10
concede 93:22
conceded 95:1
concepts 40:23
concern 13:1 70:11
  76:14
concerned 14:16
  66:24 69:25 71:2
  75:6 85:20 100:17
concerns 10:23
  13:22 20:11,16
  80:16 91:11 94:12
  101:10
conclude 27:22
concluded 47:15
  102:13
conclusion 73:22
concrete 28:1
conditioned 69:1
conditions 94:14
conduct 11:23 12:6
  35:10,10 36:9 70:11
  70:11,14 71:18 72:6
  91:7 93:18
confer 96:10,15
  97:11 100:3
conference 2:14
  10:4 25:11,12,13
  26:4 27:18 30:11,21
  30:21 48:23 51:8
  56:19 63:3 78:11,19
  79:3 80:14 89:15,16

89:19 90:20 101:18
conferences 90:18
conferring 10:14
  56:14
confess 78:12
confident 22:22
confirm 32:13
congress 63:12
congressional 47:4
conjunction 75:21
connect 24:22
connection 21:10
  24:10 60:24 68:13
  68:19,21 88:10
  98:17 100:15
consensus 53:21
  68:9 75:25 77:18
  82:7,11,17
consenting 68:18
consequences 47:15
consider 14:9,17
  21:17 30:19 66:6
  73:24 96:3 97:5,5
consideration 21:6
  26:3 28:20 47:18
  49:18,19 57:18
  72:12 97:18
considered 15:3,17
  20:5 22:4 43:20
considering 79:25
  98:12
consistent 18:8,14
  49:21 96:3,12,16
consists 49:16
consolidate 18:17
consolidated 19:7
  24:25 51:5 80:8
consolidation 80:21
constituency 67:24
constitute 72:9
constitutes 70:22
constructed 35:16
consultant 88:7
consultation 73:8
  99:14
consulting 61:2

consumer 60:14
consumers 64:11
consuming 75:3
contained 68:20
contemporaneously
  80:8
contends 72:16
contention 65:14,14
contentions 15:19
  17:11 64:17 96:8
contested 18:13,17
  55:18 56:12 57:14
  57:19 80:5 92:11
  97:4 98:13 100:11
  100:18
contests 57:25
context 63:23 64:19
  70:10
continue 20:24
  26:13
continued 89:15
contrasted 65:7
controversy 100:16
conversely 13:5
converts 61:22
convey 88:8
cooperation 88:25
coordinate 46:1
coordination 53:7
  89:16,18,21 90:7
  98:9,15
corners 20:18
corollary 15:18
  52:17
corp 1:8
corporate 4:10
  47:12
correct 32:15 36:19
  38:7 39:22 41:19
  45:21 50:4,21 54:7
  80:23 85:9,14
  104:11
corrected 35:14
correctly 40:22
  76:5 77:5 89:25
cost 18:6 27:3 59:20
  66:16

costs 20:21
council 63:12
counsel 9:3 26:1
  50:25 51:14 64:6
  75:21,22 81:4 84:4
  84:10 88:7,12 89:8
  89:14,14,15,22 90:6
  90:6
counsel's 9:19
count 47:8
country 11:2,17
  104:20
couple 11:1 15:19
  46:8 84:17
course 11:10 73:8
  91:19
court 1:2 2:1 9:2,9
  9:11 14:11 18:21
  21:19,25 22:2,5,6
  24:8 26:5,13 27:16
  33:13,17,21 35:15
  35:18 37:2,11,18
  39:6,19,23 40:22
  41:17,20,22 42:24
  43:8,11,16,17,25
  44:2,4,9,21 45:6,9
  45:12,14,19 48:20
  49:20,25 50:5,10,10
  50:19,20,22,24
  51:21,23 52:16,24
  53:3,18,25 54:5,7,8
  54:12 56:2,7,24
  58:1,15,19,25 59:6
  60:15,17,19,21
  61:11,16 62:8,13
  63:15,25 64:2 65:1
  65:5,10 66:14,16,20
  66:22 67:12,17 68:1
  69:13 70:19 75:19
  76:13,18 77:2,6,14
  77:17 78:4,6,6,18
  79:9,18,21 80:19,24
  81:11,13,21,23,25
  82:10 83:24 84:1,15
  84:17,20 85:6 86:8
  86:22 87:19,21 88:8
  88:13,14,16 89:9

90:1,8,13,15,19,22
91:22 92:15,19,24
95:12,21 96:1,8
97:6,10,16 101:21
102:5,8,11
**courtroom**  42:22
44:25 49:7 69:11
81:16 89:12 91:2
101:25
**courtrooms**  45:1
91:3
**court's**  67:15 87:15
**covenant**  36:12,13
**cover**  80:22
**covered**  81:2
**covers**  77:4
**creates**  36:15
**creditor**  31:11 85:1
**creditors**  14:22
19:16 58:20
**criminal**  47:14
**crossed**  43:12,23
**crudely**  56:7
**cruder**  56:9
**crutcher**  4:1 81:19
**currently**  47:9
52:14,15 75:8
**curtailing**  44:7
**cut**  64:21
**cyganowski**  73:8
87:23 88:6

**d**

**d**  8:5 9:1 21:21,24
22:25 77:7 93:15
94:6 103:1 104:8
**dallas**  7:18
**damage**  11:8 14:25
32:19 34:25 60:9,11
66:25
**damaged**  73:21
**damages**  66:23 67:5
67:9 72:5 75:17
84:24,25 85:1
**daniel**  5:16 8:21
84:3 90:10
**darby**  6:2,9

**date**  16:6,21,22
17:5,18 19:12,23
38:2 39:23 41:10
42:8 57:6 79:23,23
79:25 80:3,13,14
83:9 99:12,13,23
101:18,19,24 102:3
**dated**  104:14
**dates**  30:2,5,6,8
79:7,11 80:15,17
96:14 101:8 102:2
**david**  5:7,22 88:3,4
**davidson**  3:8
**davis**  4:8
**dawn**  2:25 103:3
**day**  10:7 30:7 32:8
42:25 63:4 95:8
**days**  9:17 17:2
**days'**  96:11
**dc**  7:4
**deadline**  17:10
79:14
**deal**  15:13 29:22
31:23 43:22,24 59:1
61:24 69:17 72:21
92:19 101:16
**dealer**  35:24 68:13
68:14 71:3 94:17
**dealers**  68:25 69:21
69:22,23 94:14,19
**dealing**  29:4,8,12
61:23 65:23 69:23
**deals**  35:8 57:18
**dealt**  31:3 69:5
83:18 89:1 92:12
94:9,13,18
**death**  11:7,10 14:23
60:8,10 66:25
**debate**  89:17
**debated**  85:15
**debtors**  1:10
**decent**  9:21
**decide**  18:10 20:17
20:18 25:13,21
29:14 53:22 54:1
56:5 59:15 65:25
66:4 78:8,17 95:4

99:23
**decided**  17:7 39:9
41:8,22 43:4 58:24
76:6 100:4
**decides**  66:11
**decision**  25:24 53:8
98:2
**decisions**  18:19
**declaratory**  18:24
**deem**  46:2
**defect**  34:17 46:13
71:10
**defective**  64:12,13
**defendant**  1:23
**defendants**  30:22
**defending**  37:8
**defer**  26:2 28:20
59:5,6 97:17
**deferred**  25:10
100:9 101:1
**define**  25:15
**defined**  37:23,24
**definition**  38:5
**definitively**  71:18
**deflect**  83:14
**defrauding**  65:9,10
65:13
**delaware**  20:13
**delay**  99:7
**delays**  42:10
**deluco**  1:12
**delve**  48:2
**demarcation**  15:2
21:11 36:23 76:4
**demonstrate**  72:3
**denial**  66:5 74:21
93:9
**denied**  48:16 64:24
66:1 98:21
**denominator**  26:22
**denying**  91:10,15
**department**  6:15
**depending**  46:23
**depends**  82:10
**deploy**  71:12
**deprived**  64:18
73:21 86:25

**deputy**  101:25
**designated**  89:14,22
99:24
**designees**  96:10
**desire**  73:11 98:20
**detail**  28:5 53:11
54:23
**details**  12:5 49:1
62:11 70:17 101:8
101:13
**detected**  53:12
**deterioration**  34:13
35:6 40:8
**determination**  10:2
48:19 58:23 62:12
67:12
**determinations**
52:23 96:12
**determinative**
66:10
**determine**  26:6
27:23 49:17 52:5,11
61:24 67:22 85:11
87:8,12 96:20
**determined**  10:11
57:25 62:4,23
**determining**  62:22
74:3 96:23
**develop**  78:15
**developed**  80:2
**developing**  78:1,20
**develops**  52:15
**device**  18:6
**devil**  12:5 28:4
70:17
**dialogue**  27:4,8
**dicey**  72:8
**dictating**  96:13
**didn't**  69:18 73:9
73:15 88:2,12 90:16
93:22
**differ**  77:17
**differed**  42:21
**difference**  14:13,14
35:20 42:8 43:5,12
43:13 48:8 50:15
53:12 65:9 72:23

77:7 78:10
**differences** 39:4
41:10 42:17 48:24
**different** 13:3 22:13
23:19 27:7 35:25
50:6 51:4 52:20
56:24 57:11 58:20
63:16
**differing** 26:20
**difficult** 28:11
70:24 76:15
**difficulty** 12:20
**dilute** 74:24
**direct** 72:9
**directed** 33:14
**direction** 42:2
60:13 62:18
**directions** 95:15
**directive** 52:13
**directly** 46:9
**disagree** 18:10 30:8
96:18
**disagreeing** 24:18
**disagreement** 24:15
49:9 53:20
**disapprove** 100:21
**disbursed** 51:19
**disclosure** 22:11
**discomfort** 86:22
86:22 87:3
**discord** 88:9
**discoverable** 63:11
**discovery** 15:6,7,8
15:11,13,22,23,24
17:23 21:13,13,14
22:2,3,12,14,21,23
23:3,3,14 27:22
28:17 29:7 30:13
39:5 40:18 43:20
44:6 46:20,20 47:13
47:18 49:1 57:24
59:2,4,7,14,16,21
62:5,13 63:15,22
76:7,8,9,10,20,23
76:24,25 77:12,15
77:21 80:6 81:6
82:21,21 83:20 87:6

87:9 92:17,18 96:22
97:1,3,11,12,15
98:16,18,21 100:13
100:13
**discreet** 22:18
**discretion** 65:23
66:8,11
**discretionary** 65:6
**discrimination**
14:21 39:7 43:14,21
58:20 59:3,18 62:1
96:5
**discuss** 50:16
**discussed** 80:4
89:21
**discussion** 10:21
63:18 86:14 91:24
97:14 98:20
**discussions** 13:20
26:18 63:17
**disposal** 75:10
**dispositive** 60:3
62:5 65:24 82:24
**dispute** 12:4 63:15
**disputed** 18:3
**dissenter** 99:17
**dissolve** 74:22
**dissolved** 74:12
**distinction** 48:13
65:13 77:8,10 80:9
**distinguish** 70:13
**distributions** 74:9
**district** 1:2 20:12
53:22 90:11 99:1
**districts** 50:3
**dividends** 74:7
**docket** 55:2,14
57:13,14 100:15
**documents** 100:15
**doesn't** 67:13 72:9
72:19 87:4
**doing** 25:12,17,24
30:20 32:9 34:1
42:15 51:12 53:25
54:2 65:2 80:7
**dollar** 39:21 84:21
84:22

**domain** 46:12,14,20
**don't** 68:10 70:20
71:4,15 72:23 78:8
78:9,17 79:5,10
80:1,16 81:5 82:13
83:4 86:1 87:25
94:9 95:18 100:20
**doubt** 100:12,23
**download** 48:1
**drifts** 44:24
**drive** 4:10
**driven** 67:4
**driving** 65:9,13,17
**drop** 43:16
**drye** 8:1
**drysdale** 7:1,8
45:24
**due** 21:24 31:5
48:17 62:15 64:18
64:24 66:1,5 72:11
72:19 73:21 74:18
74:21 76:15,23
77:11,20 78:5,14,24
93:9 94:2
**dunn** 4:1 81:19
**duties** 96:17

**e**

**e** 2:9,9,10 3:1,1 9:1
9:1 90:14,14 103:1
104:1
**eamonn** 4:22
**earlier** 18:21 40:10
53:14
**early** 15:15,22,24
16:3 17:13 19:12
27:2 78:25 97:6
**easier** 52:6 59:17
71:21
**eastern** 90:11
**easy** 66:12
**economic** 11:5,19
14:25 33:6 34:21
92:2
**economy** 52:4 77:13
**edward** 5:6 45:17
**effect** 25:10 29:12
38:13 41:8 42:13

74:9 80:1
**effective** 31:8 41:12
65:3 66:17 68:10
72:13 75:13
**effectively** 22:25
**efficient** 48:12 65:3
75:3 92:19
**efficiently** 81:2
92:12
**effort** 61:23
**efforts** 10:12
**eight** 20:8 33:7 67:3
100:10
**eighth** 4:18
**eiseman** 3:17
**either** 10:8 15:12
16:21 19:4 21:12
23:2 25:17 45:4
47:20 56:20 58:5,12
59:14 60:3 62:6,7
62:18 66:13 68:18
83:18 85:15 96:22
97:3,15 98:12 99:11
100:17 102:2
**elbows** 63:1
**electronic** 71:13
104:8,11
**element** 36:6 64:1
**elements** 38:12 65:1
**elevate** 57:23
**elihu** 7:13 45:24
48:4
**elizabeth** 1:13
**ellis** 3:10
**eloquently** 78:22
**else's** 59:19
**eluded** 28:25 39:12
**encourage** 79:16
**encouraged** 63:8
**endeavor** 89:15
**ends** 101:14
**energy** 72:1
**enforce** 33:1 38:12
92:5
**enforced** 69:5,6
**enforcing** 18:21

engage 47:13
engendered 11:16
  66:22
engineer 95:3
enjoin 54:1,8
enjoined 54:8
enjoining 54:5
enormous 89:3
ensuring 68:25
entire 60:7 91:5
entirely 85:14
entirety 49:6
entitled 31:17
  104:12
entity 47:12
environment 75:12
envision 41:5,25
  51:23
envisioned 41:16
equally 80:20
  100:18
equitable 21:22
  93:17
especially 10:8
esq 3:7,8,15,22,23
  4:6,13,21,22 5:6,7,8
  5:15,16,22 6:6,13
  6:22 7:6,13,20 8:5
  8:13,21
essentially 26:16
  83:14 94:15
esserman 7:15,20
  9:12 10:13 13:13,19
  15:20,23 16:1 45:23
  45:23 87:24 89:4
  102:5,7
esserman's 11:24
  12:11
establish 10:10
established 76:20
establishing 76:20
esteemed 89:22
et 1:7,8 4:9 5:2 8:16
etkin 6:13 88:16,17
  88:17 89:10 90:3
etkin's 15:21

evade 58:6
evaluate 27:24
  38:16 39:15 92:18
event 60:3 62:3
events 78:15 79:7
eventually 52:20
everybody 10:6
  34:3 42:3 45:14
  52:24 94:22
everything's 81:1
evidence 22:17 71:8
evidentiary 87:9
evolve 24:6
evolved 16:3
exacerbation 68:11
exact 64:7 91:4
exactly 10:2 11:20
  41:25 54:11 56:6,10
  64:8
examine 92:2
example 59:17
  70:24
exception 38:18
  64:8 73:3
exchange 28:15
excusable 19:19
  31:2,11 82:23 87:8
executive 63:6
exercise 25:17,22
  98:12
exercising 66:11
exist 55:17
existing 67:21
exists 12:10
expanded 56:22
expanding 66:13
expansive 57:11
expect 36:21 98:9
expectation 17:14
expectations 10:21
expected 74:6
expedited 15:25
expeditiously 96:2
expense 85:1
expiration 57:9
expired 19:24 38:24

explain 59:11
explicit 42:6
explore 31:15 54:22
expressed 32:7
expression 10:18
extensive 76:10
  81:6,10
extent 9:24 12:3
  16:11 19:20 20:3
  22:9 26:11,21 30:22
  31:4 35:3 41:4 44:5
  46:15 51:24 58:23
  60:23 64:16 67:19
  67:22 69:3 70:3,13
  83:17,21 88:9 90:7
  91:24 95:1 96:16,17
  98:2,19
extraordinarily
  77:15
extraordinary
  88:23
extremely 76:2

f

f 1:7 2:9 80:14
  104:1
fact 12:22 17:13
  18:4 31:15 36:11
  38:15 47:2 49:5
  60:25 61:7 63:8
  64:7,11 67:6 71:20
  73:17 74:10 78:13
  78:21 79:1 82:23
  83:11 87:4 95:9
  97:23
factor 46:24
factors 46:8 47:20
facts 27:22 28:8
  29:7 42:18 61:23
  78:1 92:16,23,25
  96:15
factual 66:13
fail 86:25 87:1
failed 101:13
failure 71:12 91:16
  93:9
fair 10:10 61:16

fairly 19:12 22:18
  22:22 42:21 78:25
  91:13
fairness 16:23 96:3
faith 97:14
familiarity 61:6
far 10:16 16:25
  27:19 31:19 38:19
  38:21 50:17 92:10
  93:5 94:17 96:25
  100:17 101:24
farmed 50:2
farnan 20:13
fashion 16:14 22:13
  64:5 66:21
fashioned 21:23
  93:17
fast 36:16 79:9
faster 36:17
favor 43:17 54:20
favored 43:21
fear 62:15 81:7
feder 8:5
federal 6:17 36:14
  67:16
feel 15:11 55:22
feeling 32:3
fees 20:21
feinberg 31:22 32:1
  32:4,5 39:14 40:1
  91:25 92:1
feld 5:10 84:4
feldman 63:21
felt 43:19
field 46:17 80:22
fifth 17:22
figure 29:6 30:24
  31:23 33:12 51:14
figured 84:8 101:23
figuring 10:3 53:4
  65:7
file 18:12 19:19
  23:21 24:24 25:9
  55:10,19 56:1,13,22
  85:16 100:15
filed 18:13 22:19
  31:2 39:21 40:15

[filed - gm's]                                                                                    Page 9

51:3 54:25 57:7,8
72:2 73:25 74:1,23
80:12 83:9 85:24
86:19 90:11 93:5
**files** 22:9
**filing** 24:3,9,19,23
79:15 80:17
**filings** 9:16
**fill** 28:16
**final** 60:7
**find** 21:9
**findings** 60:24
**fine** 24:1 79:12,13
79:22,24
**fineberg** 75:9,10
**fingers** 47:8
**fires** 11:10
**firm** 8:15 25:23
45:19,19 46:3 75:21
88:13 89:4,4,5
90:11
**firms** 12:23 13:4,7
55:13
**first** 12:8 13:10
14:11 15:20 20:25
43:17 47:23 59:12
59:17 60:6 65:24
73:6 81:14,16 82:20
84:2 85:25 88:22
97:18
**fit** 9:15 38:14
**fits** 38:9 101:25
**five** 45:9 57:20 67:3
98:24
**fix** 67:5
**fixed** 33:15,18,22
33:24 34:3,4 68:6,7
68:14
**fixers** 69:23
**fixing** 33:25 69:1
71:12 94:14
**flabbed** 94:5
**flaxer** 3:22 9:12
10:13 13:9 18:14,23
19:3 20:9 21:2,18
24:24 54:24 55:2
75:19,20 77:3,10,18

77:22 79:22 80:23
80:25 81:12 83:25
92:10,14,21 96:9
**flaxer's** 9:18 17:17
17:21 19:11
**flaxer's** 93:14
**flexible** 30:6
**flip** 58:4,11
**floor** 7:10 8:10
**flooring** 1:14
**flow** 80:20
**focus** 19:8 33:5
48:14 79:4 92:3
**focusing** 58:1,9
62:25
**folks** 13:21 69:15
77:19 101:4
**follow** 34:21 43:9
**force** 99:16
**forcing** 20:17
**ford** 46:18
**foreclose** 42:4
**foreclosed** 25:4
**foregoing** 104:3,10
**forgive** 24:8 49:10
50:5 67:17 90:22
**form** 56:16 68:9,15
68:17 99:25 101:6
**formal** 46:20
**formalities** 56:4
**formation** 99:15
**formed** 14:7 29:11
29:13,17
**forming** 19:10
**formulation** 21:15
23:12
**forth** 25:16
**forum** 26:10
**forward** 16:20
23:16,23 24:16 25:4
25:22,25 26:10,12
37:8,14,15,20 44:19
51:16 54:6 55:9
60:1 68:8 69:3 70:1
78:10 83:12 89:22
99:11

**four** 20:18 54:17
72:25 97:21
**fourth** 17:5
**frame** 88:22
**frankly** 20:19 34:8
39:9,11 55:1,8 60:6
63:8 83:4,13 86:2
90:24
**fraud** 14:11 21:18
21:25 22:1,6 27:16
39:6 43:11,16 44:4
48:20 58:19,25 59:5
62:8,12 63:14 64:2
65:1 66:14 76:12,18
77:4,6,14 78:6,18
92:15,19,23 96:8
97:6,9,16
**fray** 51:15
**free** 16:15 97:24
98:16
**front** 42:6 44:6
67:13
**full** 91:2 98:5 100:9
**fully** 29:21,23 30:22
30:25 91:5
**fundamental** 60:4
72:19 82:25
**further** 15:14 44:15
49:17 53:6,9 57:10
89:15 96:21 99:5
**furthermore** 86:7
**future** 16:8 74:7

---

**g**

**g** 9:1 103:3 104:10
**gaiting** 58:3,10
**gap** 28:18 42:21
**gaps** 28:16
**gather** 10:25 13:20
**gathering** 51:25
**gender** 63:15
**general** 1:7,22 3:3
17:1 19:16 28:3
30:9 38:17,18,19
40:3,24 47:6 96:25
**generally** 21:20
26:11 77:4

**generals** 60:14
**gentleman** 90:9
**gentlemen** 95:12
**gerber** 2:10
**getting** 10:10 12:14
26:21 39:20 41:20
51:11 54:20 61:19
99:20
**gibson** 4:1 81:19
**give** 9:13 28:14,15
29:19 62:24 64:14
64:14,15 70:20
90:15 101:19 102:3
**given** 30:3 71:13
75:6 88:22 95:11
**giving** 55:24
**glove** 11:13 32:17
37:21 38:21,23
**gm** 11:1 11:1,6,12
11:22,23 13:17
14:24 15:10 19:14
19:15,20,23 20:3
22:10,16 31:8,21
32:16,16,20,22
33:25 35:10,10,12
35:24 36:2,6,9,10
36:12,15,20,24 37:3
37:5,8,8,16,17
39:18 46:18 47:2,7
48:25 49:7 51:3
53:13 57:7 59:25,25
60:10 62:19,21 63:5
63:16,16,19,19
64:12 66:2 67:11,13
68:24 69:6,16,16,21
70:6,24 71:17,17,18
72:5,9,16,16 73:16
73:20 83:2,10,13,15
83:22 84:14 85:24
86:19 87:13 93:12
93:17,21 94:3,4,16
94:23 96:7 97:25
**gm's** 9:17 19:16
22:9 55:7 62:22,22
62:23
**gm's** 67:4 68:24
70:14,23,23 78:24

93:18
go 9:13 20:20 21:9
23:15 24:16 25:4,22
25:25 26:10,12
35:22 37:8 39:6
40:20 42:1 44:19
45:22 50:17 52:19
52:20 61:17 66:8,10
66:12,20 70:14 74:2
75:5 92:16,22 94:3
goal 12:21
godfrey 3:15 9:7,9
godrey 9:7,10
goes 53:23 78:20
89:5
going 9:14,22,23
10:1,3 17:15 18:3,4
20:25 23:23 25:16
26:10 28:8,8,18,23
30:7,8,11 32:8 33:9
34:3,4 35:1,1 37:7
37:14,15,19 40:4
42:1,2,3 44:22 45:4
47:17 50:9 51:14,17
53:3,23 55:14 60:21
61:12,14 63:17
64:21 66:20 69:3
70:1,20 72:22 74:16
76:7,23,24 77:11,12
78:10 79:10 85:21
86:21 90:23 91:23
94:7 95:22 96:3,25
golden 5:16 20:1
73:17,18 84:1,2,3,3
84:15,16,19 85:3,7
86:8,16 87:20 96:10
97:21
golden's 74:13
golenbock 3:17
good 9:2,10 11:18
13:4 19:10 23:15
28:15,17 35:22 36:2
44:20 45:2 46:11,15
46:21 81:18 92:14
97:14
goodwin 4:15

gotten 47:25 97:19
government 78:23
grace 41:12
grease 63:1
great 20:19 54:15
greater 53:11
green 2:2 97:19
groman 1:12
ground 79:2
grounded 95:9
group 26:19,19,20
29:11,14 30:4 45:25
48:3,5,25 72:18
73:5 75:24 88:7,10
groups 29:4,5,5,16
30:4 51:19
grumet 1:13
guarantee 95:17
guc 4:2 5:11 19:15
20:4 31:1,8,10
73:16 74:6,25 81:19
82:3,4 84:10,12
85:13,21 86:4,20,21
87:5,14 93:5 96:7
98:3,4,7,10,15
guess 12:3 19:2
24:11 51:6 55:3
57:20 82:16 83:19
87:25
gump 5:10 84:4
guy 20:15 62:25
guys 16:10 17:24
18:7 67:20 69:23
101:22

h

haigins 45:20
half 54:8
hallway 80:12
halthenstein 75:22
hand 26:8 65:10
79:8,9 87:24
handle 9:21 11:15
12:8
handled 59:2
happen 19:12 36:25
53:9 79:7 87:2

happened 35:21
60:24
happens 49:7 51:2
happy 66:18 78:14
hard 31:20 72:11
harder 12:7 29:6
harley 88:12
harmonizing 88:9
harry 63:21
hasn't 81:13
hauer 5:10 84:4
haven't 68:17 70:5
86:5,5
head 40:17
hear 10:17 11:17
13:3,9 20:25 21:2,3
57:3 84:2
heard 9:12,14 10:20
13:7 14:9 15:2
16:10 20:2,4 21:3
43:18 50:16 53:14
69:9,16 70:20,23
73:14 76:5 81:14
91:11,13,16 98:5,10
101:14 102:6
hearing 2:14 16:5
21:10 24:17 53:21
82:2,6 83:5 85:17
85:17 89:1,24 93:3
98:25
hearings 49:2
heart 54:16
heat 57:23 66:23
held 87:12
help 12:8
helpful 12:19 76:2
88:9
here's 95:22
hey 73:9
he's 93:19 95:3
highway 8:17 63:11
hired 31:21 39:14
40:1
historically 70:3
history 34:5 60:7,19
histrionics 10:22

hit 55:2
hold 16:14 24:11
70:6 87:11
holders 5:11 74:12
84:6 85:18 98:4,7
98:14
holding 18:20
hon 2:10
honor 9:7,10 21:5
21:11,16 22:18,24
23:17 24:13 25:16
26:14 27:3,25 28:19
28:25 29:13,15,23
29:25 30:19,24
31:21 32:7,13,14
35:9,10 37:6,7,22
38:25 39:9 40:20,21
40:22 41:13,24
42:11,14 44:20 45:3
45:15,20,25 46:7
47:16,22 48:1,12,21
49:3,10,24 50:16
51:8,10 52:5 53:1,7
54:3,10,16 55:1,7
57:20,21 58:5,12
59:10,19,21 61:1,3
61:4,18 62:1,10
64:3 65:1,12,25
66:4,5,10,18,19
67:8 68:3 69:25
70:12 71:6 72:3
73:16,19 75:7,14,20
75:23,25 76:5 77:1
81:12,18 82:1 83:17
84:3,7 85:7 86:7,16
87:2,10,12,20 88:3
88:11,15,17 90:10
91:23 93:2 94:11,13
94:15 95:10 101:16
102:7
honor's 25:1 33:1
42:12,17,20 44:12
44:14 51:11 52:13
53:8 54:23 57:18
59:12 61:9
honor's 65:22 66:7
67:14 68:5 69:7

[honor's - issues]

70:2,10 72:6,12
hope 68:8 81:6
97:13
hopefully 72:1
95:13
hoping 68:6
hours 57:9 85:24
howard 5:8
hundred 84:21
87:25
hurt 39:24

**i**

ice 53:16
idea 17:23 19:10
20:10
identical 56:22
77:16
identification 103:4
identified 21:11
27:3 42:14 96:19
97:19
identifies 11:21
identify 10:9 18:9
27:14 30:17 42:16
75:7 96:18 99:22
identifying 10:1
76:3
ignition 11:2 33:9
34:1,4,10,14 35:2
35:12,13,22 36:1,7
37:6 38:2 48:16
62:20 65:19 68:14
70:25 71:1,1,3,4,9
71:11,13 94:15
iii 49:16
il 3:13
imagine 47:11
imbedded 25:17
immediately 94:17
impact 69:2 73:16
impacted 36:5
48:16 74:17
impacts 51:16
impermissible
71:10
implicate 71:20
72:6

importance 17:3
important 40:16
56:4 76:11 79:18
impose 17:10 95:18
impossible 97:15
impression 20:14
imputed 63:3,6
inability 72:25
incidents 11:8
32:18
inclinations 10:19
inclined 14:17,19
77:17 83:17
include 26:6 77:14
89:17 100:12
included 43:11
includes 13:2
including 16:15
74:13 80:21 82:11
97:7
inclusion 43:21
inclusive 23:25
inconsistent 100:24
indicated 45:21
46:16 70:15 84:13
86:6
indicating 18:20
indiscernible 57:13
individual 11:1
34:8 68:12,18
individually 74:3
individuals 64:18
73:21
inefficiencies 10:14
inferring 61:13
influence 47:20
information 46:12
46:19 62:19
inherent 42:9 92:2
94:6
inherently 75:2
injected 85:21,25
injunction 13:18
33:1 60:2 66:1
67:11,13,14 70:16
71:20 72:6,10,17,18
73:23 74:19,22

99:18,21
injunctive 34:16
injured 20:20 39:20
65:4
injury 11:8,10
14:23 32:10,19,22
34:25 40:6 60:8,11
66:25
inselbuch 7:13 9:11
10:13 45:24 87:24
89:4
inselbuch's 11:21
insofar 14:15
instance 73:7
insult 66:21
intend 48:4 56:14
intended 100:21
intensive 97:23
intention 57:24
79:16 84:13 86:6
intentionally 101:9
interest 17:4 46:9
73:11 85:18
interested 17:18
95:14
interesting 55:12
60:3 84:11
interests 73:6
interface 12:25
interfere 16:4 50:9
50:11 98:24
interfering 52:22
52:22
intermediary 63:19
internal 47:7 78:24
interplay 80:4
interpreting 67:16
interrupt 60:21
introduce 9:6
intuitions 63:17
investigation 47:6,6
47:8
investigations 47:4
47:5,9,14 75:8
78:23
investment 45:2

invite 56:12
inviting 55:10,25
invoked 11:19
involve 19:14,15
55:12 59:4
involved 34:9 63:22
85:8 94:19 97:22
involves 35:19
involving 20:3
irrespective 16:16
irresponsibly 94:23
isn't 67:18 73:6
issue 11:22 12:2,10
12:23 19:2,18 20:9
21:19 22:3,4,14,15
22:24 23:1,6 24:4,5
24:6 25:9 26:3,21
27:3,10,16,23 29:19
29:24 31:3,4,5
32:22 34:13 35:9,12
35:19 36:8,20,23
38:25 39:7,8,9,10
40:10,10,12,16,16
43:11,14,15,20 44:4
44:5,8 48:15,19
54:13 55:6 56:13
57:21 58:3,11,16
59:8,18,20 60:3,4
62:3,4,9 65:22
66:14,14 68:11,19
69:17 72:12,21 73:3
73:10 74:16,18,20
75:24 77:11,12 78:5
78:14,19 82:4,9,14
82:19,25 83:3,4,19
83:19 84:14 85:9,10
85:11,25 87:15,17
88:19 91:6,8 92:15
92:20,24 93:6,7,15
93:19,23,25 94:6,8
94:10,13,22,24 95:4
97:7 101:2
issued 34:10 80:13
91:3
issues 9:22,23,25
10:1,9,11,15 13:5
14:12,14,17,18,20

14:21 15:4,5,13,14
17:1,3,6,8,15 18:3
18:10 19:14 20:1,3
20:6,7,17 21:6,12
21:20 23:2,7,19
24:6 25:3,14,15,20
25:21 26:18,20 27:9
27:14,15 29:2 30:12
30:18,18,19 32:6
39:1,2,4 41:5,6,7,8
41:20 42:12 43:3,4
47:1,19,21 48:11
50:16 51:18 53:5,6
57:2,16 58:17,19,22
59:4,13,15 62:17
65:24 66:6,15 68:10
68:23 71:10 72:8,22
75:11,16 76:3 79:1
79:4 82:3,23 86:18
87:18 93:25 94:25
96:4,4,23 97:8,16
97:23 98:6,11,11,17
99:22 100:1,2,4,5,5
100:5,6,8
**issuing** 99:7
**item** 13:25
**items** 9:20
**iterative** 27:8
101:22
**it's** 65:8,17,18,22
66:4,7,9,12 67:9
69:8 70:24 71:8
72:15 73:19 76:15
77:5,6 82:24 83:13
84:13 86:1,5 87:25
88:23 89:12 90:4,5
92:19 94:6,20 98:22
**i'd** 65:12 72:20 81:6
84:8
**i'll** 81:17 82:15 84:2
95:17 96:20 101:14
**i'm** 66:13,18,20
68:5,17,23 70:20
72:22 73:13 75:7,12
75:21 76:7 77:10,17
77:22 78:14 79:14
81:16,25 82:6 84:22

85:3,9 88:12 90:3,9
90:23,24,25 91:11
91:15,23 93:15,24
96:13 97:7,13 98:18
100:17
**i've** 68:7 69:9 86:16
99:14,24 101:8

**j**

**j** 3:7 5:7
**jerk** 69:18
**jerks** 69:22,24 70:1
70:4
**jim** 63:21
**job** 20:15 29:3 53:4
**joe** 20:13 63:5
**john** 6:6
**join** 55:20
**joined** 57:16
**joining** 79:16
**joint** 49:15 50:11
100:12,13
**jointly** 1:7 19:7
96:19 100:11
**jomaka** 8:16
**jonathan** 3:22
**jones** 6:2,9 8:7
**jr** 4:13 8:21
**judge** 2:11 18:19,19
20:12,17 27:19
44:11 45:11,17 46:5
51:13 52:19,23 54:1
75:18 86:12 99:6
**judges** 20:18 49:16
**judge's** 103:5
**judgment** 18:23,24
**judicial** 10:2 12:24
16:6 49:22 52:4
58:23 77:13 99:1
**judicially** 10:11
41:22 74:1
**july** 11:11 22:20
41:11
**jump** 73:22 75:23
**juncture** 97:7
**june** 22:19 27:18
30:10 78:25

**jurisdiction** 50:14
67:12
**justice** 6:15

**k**

**k** 1:7 6:6
**katelyn** 1:15
**keep** 37:12 76:12
78:14
**keeping** 77:2 95:22
**keith** 4:6 81:18
**kelley** 8:1
**ken** 31:22 75:9
91:25
**kick** 78:19
**kind** 22:13 27:21
37:18,19 93:16,20
**kinds** 20:7 58:20
98:8
**king** 3:2
**kirkland** 3:10 9:8
**knew** 46:14 62:19
62:20 63:19,23
**know** 9:3,11 13:8
13:15,22 20:13 25:2
27:12,13 28:5,6,9
28:18 29:2,7,12,13
29:20,21 30:25
34:20 35:9 36:3
40:9 44:11,16 48:2
55:2 56:10,22 57:15
58:1,9 61:4 63:19
63:21 64:13 69:25
71:2,4,15,25 74:6
79:8,19,19 80:12,16
82:22,25 83:11,13
83:14 87:25 94:17
**knowing** 64:6
**knowledge** 60:23
61:6 62:22,23 63:2
63:5 65:16
**known** 19:23 31:22
63:23,25 64:1,11
**knows** 45:25 75:7
75:15
**kosha** 52:5
**kozyak** 88:13

**l**

**l** 7:20 90:14 103:3
**la** 8:19
**laboratory** 62:25
**lack** 51:14 71:21
72:18 74:18 76:15
78:14
**ladies** 95:12
**laid** 46:7
**land** 17:15
**laplace** 8:19
**larger** 26:21
**lasalle** 3:12
**lastly** 20:8
**late** 19:19 30:10
31:2 73:25 74:1,23
79:23 84:12 93:5
**law** 8:15 12:23 13:1
20:4 32:17 37:22,23
38:5,8,15 62:5
67:16 72:22 90:11
**laws** 11:14 12:11
36:14 38:1,8
**lawsuit** 34:11,15,19
**lawsuits** 32:14,24
33:5,6 38:11 52:10
88:23 92:3
**lawyer** 20:12 22:7,8
49:11,12 84:20 95:2
95:3
**lawyers** 20:14 69:10
73:12 78:1 86:10
88:1,23 90:21 91:5
**lay** 17:15 62:16
**lead** 21:14 24:14
26:1 50:25 51:15
89:14
**leads** 27:4
**leaned** 43:17
**leased** 65:15
**leave** 26:24 53:15
95:25
**led** 32:18,22
**left** 11:15,16 31:10
62:2 66:22 100:24
101:9

[legal - meat]                                                                                Page 13

**legal** 11:18 14:20
23:2,7 27:23 31:24
32:6 39:8,9,10
66:14 76:6 91:8
92:25
**legitimate** 94:1
**lemon** 11:14 12:10
32:17 37:22,23 38:1
38:5,8,8,14 72:22
**length** 14:5
**lengthy** 15:8 95:13
**letter** 11:21,24
12:11 13:14,19 14:1
15:21,21,22 16:3
18:19 20:8 23:20
24:2 25:14 29:11
30:3,6,16 42:25
43:1 79:12,24 85:16
85:22,25 88:20 89:7
89:9,10 90:15,16,17
93:7
**letters** 9:19 12:1,13
14:8 15:9 24:15
25:8 99:12
**letting** 66:15
**let's** 73:21,24 77:25
78:19,20 84:1
**level** 46:19 87:3
88:25
**levels** 63:16
**lexington** 7:9
**liabilities** 33:2 40:7
**liability** 11:7 12:25
22:11 32:17,18 33:4
33:4 36:13,20 37:1
37:2,4 39:18 72:4
83:14 92:7
**liable** 72:17
**liaison** 29:16 50:25
87:23 88:7 89:8
**lie** 32:6
**life** 32:19 53:2
55:24
**lifland** 18:19
**lift** 83:9
**light** 25:7 76:1 79:1
97:19

**liked** 73:16
**likes** 94:22
**likewise** 98:14
**limitation** 77:5
**limited** 12:23 22:12
27:21 43:20 44:24
59:7,14 76:9 96:22
97:12,15
**limits** 9:14
**line** 12:21 14:19
43:1,3,6 76:4
**lines** 54:24
**liquidation** 1:6 4:2
**list** 14:12 37:6
94:19
**listed** 13:25
**listen** 52:21 53:25
**listening** 94:21 95:6
**litigate** 40:13 75:12
**litigated** 42:16
**litigating** 46:17
**litigation** 16:7,8
20:21 34:9 40:25
42:7 49:15,17,23
50:1 75:2 81:10
99:1
**litigations** 16:13
**little** 16:23 21:13
23:3,13 28:24 29:1
29:9 30:2 54:23
**live** 28:19
**livingston** 6:3
**llc** 1:22 3:3 8:15
**llp** 3:2,17 4:1,15 5:1
5:10 6:1,8 8:1
45:18
**load** 32:11
**lobotomy** 61:3,13
**locale** 50:1
**lockwood** 7:6
**logic** 23:5,12 44:7
**logical** 15:13
**long** 71:25
**longer** 28:24 29:1
**look** 52:21 53:25
73:19 93:11,21 94:7

**looking** 19:3 28:20
42:3 90:24,25
**looming** 85:9
**loose** 101:13
**lose** 33:18 55:15
62:3 81:5
**loss** 11:5,19 32:18
33:6,8,17 34:5,7
**losses** 34:21 92:2
**lost** 24:8 33:10 56:2
**lot** 28:3,11,13 44:16
44:24 59:16 62:19
67:4 71:8 76:1,21
78:25 79:1
**lots** 46:12,13 74:16
**louisiana** 90:12
**lowenstein** 6:1,8
88:17
**lowest** 26:22
**lumping** 21:20
**luxury** 63:4

**m**

**m** 5:22
**madison** 3:19
**mail** 96:12
**major** 77:21
**majority** 12:14,16
14:15 16:20 89:13
89:23 99:10
**making** 13:2 22:11
37:14 44:7 52:7
53:8 57:1 77:9,10
92:11
**management** 65:6
66:7 91:17 97:2
**manner** 66:17
**manufactured**
36:10,24 37:17
**marcus** 1:14
**maria** 8:13
**mark** 4:13 43:6
45:19
**marketplace** 47:17
**marona** 81:21
**martorana** 4:6
81:18,19,22,22,23
81:24 82:1,11,12,16

96:9 97:21
**massage** 102:2
**massaged** 43:2
**massive** 15:23
**masumoto** 6:22
**material** 14:13
**materiality** 96:20
**matt** 63:20
**matter** 1:4 14:13
18:13,17 24:20,21
32:1 47:2 49:5 53:2
55:18 57:19 59:15
59:25 62:5,23 65:22
66:7 67:11 72:19,21
74:10 77:13 80:5
92:12 96:25 97:4
98:13 100:11,18
101:1 104:12
**matters** 20:4 24:18
26:5 56:12 59:13
61:8 75:4 96:18,20
97:17,22 100:10
**matured** 44:13
**maximum** 96:16
**mdl** 16:13,16 24:4
24:10,11,12,19 25:9
25:25 26:6,9,9,11
26:11 37:9 41:9
49:4 50:13,17 51:13
53:9,15,21 79:6
98:24
**mdl's** 16:5
**mean** 17:12 22:19
33:17 35:15 39:19
41:17,25 50:12,19
57:8 79:14 91:9
92:5
**meaning** 50:5,6
69:11
**meaningful** 80:10
**means** 10:10 15:2
28:9 38:5
**meant** 82:12
**measly** 49:12
**measure** 67:9
**meat** 96:13

mechanic's 63:5
mechanism 18:5
51:16 55:6 56:19
mechanisms 56:15
mediate 75:11
mediation 20:9
31:19,20 32:3 75:1
75:4 81:3,7 83:23
91:25 101:1
meet 40:17 96:15
97:12 101:10
meeting 20:10
47:24 58:21
melding 57:18
92:10
member 16:2
mention 47:11 71:6
81:1
mentioned 12:11
80:11 88:5 101:7
merely 24:14
merit 86:15
merits 10:7 46:6
51:19,20 62:16 65:7
messrs 96:9
metamorphous
60:7
michael 6:13 88:17
michigan 50:13
mid 30:10 79:23
middle 60:15,17
miles 34:12 67:4
million 65:17
milstein 63:21
mind 17:20 22:5
56:25 59:6 63:15
76:12 78:15,16
mineola 104:22
minute 44:17 45:8
84:9
minutes 45:2,4,5
95:15
mistake 87:18
mistaken 90:9
misunderstand
68:2

misunderstood
68:4
mixed 67:6
modest 22:12
modification 14:2
modifications 14:10
modified 92:22
molton 5:7
moment 78:7
momentarily 10:17
96:8
money 20:19 61:22
75:9
monstrous 20:11
month 42:8
months 9:24
moon 84:23
morning 9:2,10
53:14 80:11 81:18
morph 52:14
morphed 60:13
moss 5:15
motion 9:18 38:12
55:7,20,20 57:7,14
73:15 76:13 83:9
92:5 99:15
motors 1:6,7,22 3:3
4:2
move 32:25,25 46:6
58:15 66:18 89:21
moved 83:12
moves 68:8
moving 51:16 54:5
55:9 60:1 83:3
mspa 22:17 32:15
33:2 36:12 37:23
multi 99:1
multidistrict 16:6
16:15 49:15,17,23
multiple 50:1
multiplicity 52:10
75:8

**n**

n 3:1 7:6 9:1 90:14
103:1,3 104:1
name 46:6 84:8

names 10:8
naomi 5:15
narrow 49:8 53:5
61:23 62:13
narrowed 51:12,18
narrowing 47:19
57:24 66:15 71:10
narrowly 28:9,10
92:17
national 63:11
nature 34:19
near 74:15
necessarily 17:12
22:20 46:21 47:12
48:22 54:19,19
55:23 62:23 63:2,22
necessary 27:23
46:2,4 72:14 89:18
90:7
necessity 56:21 76:7
need 9:22,23 10:1,9
11:15 13:3,5,7
14:14 15:14,18
16:13 17:5,8 18:15
18:21 19:3,8 23:9
27:22 28:5,6,9 29:8
29:16 37:24 40:9
53:6 54:21 64:25
76:19 78:9,10 80:9
86:19 88:1 91:8
95:19 96:17 101:23
needed 30:2 41:6
42:5 94:5
needs 13:22,24
15:16 20:10,16
23:10 62:4 71:7
83:4 85:11 89:21
97:12 101:10
negative 56:2
neglect 19:19 31:2
31:11 82:23 87:8
negligence 95:2
negotiate 31:25
negotiated 32:8
negotiating 22:16
negotiation 20:17

never 53:3 74:19
79:16 94:19
nevertheless 71:23
new 1:2 2:3,3 3:5,11
3:20 4:4,17,19 5:4
5:13,20 6:11,20
7:11 8:3,11 9:17
11:1,6,12,22,23
13:17 14:24 15:9
19:14 26:8 31:21
32:16,16,22 33:25
35:9,15,21 36:2,6
36:12,15,24 37:3,8
37:8,17 39:18 47:2
47:7,25 48:25 49:7
50:14 51:3 53:13
54:24 55:7 56:1,13
56:22 57:7 59:24,25
60:10 62:21,23 63:4
63:16,19 66:2 67:11
67:13 68:24,24 69:6
69:16,21,22 70:6,14
70:22,24 71:1,3,17
71:17,18 72:5,9,16
72:16 73:20 74:8
83:2,10,12,15,22
84:13 85:24 86:19
87:13 93:11,17,21
94:16,23 97:25
newport 4:11
news 46:11,15,22
46:23
night 86:17
nine 33:7 100:20
ninth 10:19
nj 6:4
noes 46:7
noise 72:14
non 21:1 31:24
north 3:12
note 16:1 44:18
46:8 75:20
notes 40:20
notice 12:24 64:14
64:15,15 93:9 96:11
notion 76:5

[notwithstanding - people]                                           Page 15

**notwithstanding**
59:23 67:11 74:21
75:16 97:1
**nuance** 12:7 35:20
36:22 37:13,22
38:10
**nuanced** 93:24
**number** 10:17
13:25 23:18 31:9,9
49:6,9,14 57:20
65:15,16 72:25
78:23 88:22,23
**nw** 7:2
**ny** 3:5,20 4:4,19 5:4
5:13,20 6:11,20
7:11 8:3,11 104:22

**o**

**o** 2:9 9:1 104:1
**o'hagan** 4:22
**object** 23:22
**objection** 9:18
55:20 76:13
**objections** 55:19
**objectively** 62:17
**objector** 93:8
**observed** 78:23
**observers** 18:22
**obtained** 72:5
**obviate** 91:4
**obvious** 16:25 73:19
**obviously** 11:17
14:9 20:9 45:21
57:8,9 77:3
**occurred** 36:4
**occurrences** 11:9
**october** 34:2
**office** 6:17 63:6
**official** 104:11
**oh** 12:1 21:2 60:21
67:6 90:8 102:8
**okay** 9:9 12:1 14:4
16:24 26:13 35:18
40:12 41:24 43:25
44:9 45:6 50:22
54:12 60:20 61:16
80:2,24 81:11 82:16
83:24 87:19 88:14

90:8,13 102:5,8,11
**old** 19:15,16,20,23
20:3 22:10,16 31:8
32:20 33:8 35:10,12
36:1,9,10,20 37:5
37:16 62:22 63:16
63:19 64:12 67:3
70:23 71:1,5 73:16
93:18 94:3,3 96:7
104:20
**once** 16:1 38:3
50:17 55:7 67:14
85:11 92:15
**ones** 81:2
**ongoing** 53:17
78:24
**open** 53:15 58:16
78:15,16
**opening** 67:2
**opinion** 48:9 52:3
74:14 78:10
**opponents** 33:14
**opportunity** 9:13
20:2 23:10 29:19
55:19 91:10,16
93:20 98:5
**opposed** 52:8 59:10
59:19 76:9
**oral** 70:6
**order** 13:18 14:1
18:21 22:19 25:5
31:6,6 36:11 56:18
60:2,8 61:24 64:19
64:20,21 67:21,23
71:21 74:8 91:4,6
91:17,20 93:10 94:2
96:11 97:2,4 99:15
99:19,25 100:17
101:6,7 102:3
**orderly** 10:15,21
**orders** 11:24 91:9
**ordinary** 37:2,3
**organize** 29:3
**organized** 29:2,9,20
29:23 30:22,25
51:19

**original** 43:10
**originally** 60:9
**orms** 2:25 104:10
**otterbourg** 5:18
46:2 88:4
**ought** 48:2,10 55:17
55:18 59:14 61:19
61:21 65:2 73:3
74:19 77:24 78:8
**outlier** 29:16 48:2,2
48:6 64:9 73:3
**outliers** 29:14 48:18
**outline** 22:24
**outset** 82:2
**outside** 38:23 72:10
**overall** 32:6
**overalls** 63:1
**overflow** 45:1 91:3
**overly** 64:5
**overnight** 96:12
**owned** 65:15

**p**

**p** 3:1,1 4:13,21 9:1
**p.c.** 3:15
**p.m.** 95:20,20
**pachulski** 8:7
**page** 48:4 103:4
**pages** 9:16
**panel** 16:6,13,16,16
49:15,16,18,23
50:11,20 52:18
53:22 99:1
**panel's** 98:24
**paper** 70:4
**papers** 37:23 39:8
39:13 59:19
**paradigm** 38:9
**paragraph** 13:14
**paragraphs** 43:3
**pardon** 90:19
**park** 4:3 5:12,19
8:2
**parked** 34:11,17
**parse** 52:10 71:16
71:17 72:2
**part** 36:1,2,2 37:6,9
41:3,9 42:6 46:11

46:21,23 47:12
48:19 49:5,14 58:18
60:13 67:24 71:19
71:21 73:4,4 74:2
92:5 98:12
**partial** 11:3
**participate** 83:20
83:23 85:16,23
98:16 99:15
**particular** 38:10,15
94:24
**particularly** 82:22
**parties** 9:14 17:10
17:18 20:16 33:21
46:21,25 47:19
48:11,16 50:10
51:17 54:5,9,21
55:10,18 56:14 57:6
57:17,22 60:4 65:4
66:15 68:9 69:1
71:2 72:10 78:3
82:7,12 86:23 99:14
99:22 100:14
**partly** 56:2
**partner** 87:22 88:6
**parts** 11:2 49:5,13
85:4
**party** 83:16 97:24
99:5
**passed** 44:17
**pause** 33:13 37:11
49:20 51:21 61:11
69:13 70:19 76:8
84:15 86:8 90:13
**pay** 32:10
**paying** 32:11,12
**peace** 52:25
**pendency** 47:13
**pending** 11:1 16:13
88:18
**people** 19:8 20:20
20:22 22:16,17
23:11,20 24:1 26:22
28:7 29:4,5,5,8
32:10,12 34:21,24
39:16,19 40:5,7,23
42:23 44:25 55:25

Page 16

56:12,21 57:9 63:9
63:23 64:13,23
65:15,18,25 66:24
69:3,25 70:3 74:16
74:23 79:21 86:25
95:6,14 101:7,14
**perceived** 34:5,17
35:6 55:16 99:7
100:8
**period** 22:18 28:22
28:23 30:17 41:12
51:6,7
**permanently** 42:4
87:12
**permit** 16:6 98:25
**permitted** 67:10
97:16
**person** 31:22 35:23
63:2 83:10,12 91:19
93:6,7,13
**personal** 11:7 14:22
32:19 34:25 60:11
66:25
**perspective** 46:24
47:23 51:11 52:3
55:5 58:2,10 59:12
59:13 61:21 62:2,6
65:4 66:3 82:18
**persuasive** 19:13
**peskoe** 3:17
**peter** 7:6
**petition** 19:22 60:12
98:1
**ph** 45:20 46:2 52:5
52:6 63:21 75:22
94:5
**phase** 43:17,20
58:18
**philosophical** 76:4
**phone** 44:25 81:17
90:9 91:12,18,19
**phrase** 17:8
**pick** 50:12
**picking** 30:16 40:7
79:22
**piecemeal** 22:25

**piecemealing** 23:5
**pieces** 70:4
**pile** 84:7
**pin** 28:10
**pinto** 46:18
**pioneer** 87:7 93:25
97:22
**place** 11:10 15:14
26:7 31:6 32:20
37:5 47:25 53:19
65:20 100:14
**placed** 90:4
**places** 52:21
**plaintiff** 15:10 30:4
30:4 45:25 48:10
73:5 75:24 100:22
**plaintiff's** 22:7,8
**plaintiffs** 1:20 3:18
4:16 6:2,9 8:8
12:15,18,22 13:14
13:15,16 14:2,15
26:17 30:24 47:24
48:3,9,24 49:7
51:19 59:24 60:1
61:21 64:7 67:10
70:7,12 71:23 73:2
75:15 83:7 84:12
86:3,3 87:13 88:18
89:8,13,16,23 94:1
**plaintiffs'** 69:9
86:10 88:10,24 90:5
98:9
**plaintiff's** 69:12
84:20
**play** 89:11,25
**players** 15:9
**playing** 41:15
**plaza** 4:10
**pleading** 40:15
**pleadings** 38:20
79:19 83:11
**please** 9:2 12:12
21:2 26:13 33:13
37:11 42:24 49:10
51:21 58:15 61:17
68:1 69:13 81:15
84:15 86:8 87:22

90:13 95:21 101:5
**pled** 38:2
**plenty** 63:9
**plifka** 7:15 45:23
**plug** 69:16 102:2
**plus** 51:4
**pm** 102:13
**point** 13:3 16:17
17:21 18:14,14
19:11 24:14,15,22
38:24 43:8 53:11
56:24,25 57:16 70:9
75:1 76:11,16 77:14
80:9,25 83:5 89:6
92:7
**pointed** 88:5
**points** 54:16 57:4
88:1
**portion** 52:11 64:20
**position** 60:4 61:4
61:15 63:10 72:11
73:10 84:9 92:6
102:1
**positions** 10:8
**posner** 5:22 84:1,2
87:21 88:3,4,15,16
**possibility** 18:15
35:23 53:15 57:15
76:9 81:3 82:2 83:8
96:6
**possible** 23:8 48:13
66:17 75:4 96:1,16
97:6
**possibly** 64:9 66:21
66:24 93:11
**post** 11:23 19:22
33:4 35:20 36:4
60:12,12 61:7,8
70:11 97:25
**potential** 29:6 47:14
83:8 84:11
**potentially** 15:7
31:14 57:3 59:15
72:8
**power** 24:11
**practical** 39:11
58:24 74:17 101:5

**practicality** 74:11
**practice** 57:15
73:15
**practicing** 20:12
**prayers** 52:12
**pre** 57:12
**preclude** 57:12
**precondition** 69:4
**prefer** 43:22 59:5
72:7,20,20 75:11
84:23,24
**preferable** 97:5
**preference** 44:12
58:21 101:21
**preferred** 59:15
100:14
**prejudge** 31:12
**prejudice** 98:22
99:4 101:2
**preliminary** 9:15
14:7 99:17,21
**prep** 90:16
**prepare** 96:10
**prepared** 12:15
23:4 40:13,17 41:1
42:7 67:5 73:6
75:16 78:16
**preparing** 19:25
48:11 99:25
**prepetition** 19:21
39:16,20 97:25
**presale** 33:1,4
70:11
**present** 23:2,7 27:9
68:9 73:9 96:19
**presentation** 30:20
**presented** 21:7
29:25 68:14 75:13
100:6
**presenting** 22:17
48:12
**press** 63:13 94:21
**preston** 3:23
**presumably** 18:23
44:25
**presume** 48:6

[pretrial - receptivity]                                                                    Page 17

**pretrial** 16:7 26:7
50:1,2 99:2
**pretty** 9:21 10:16
11:18 15:23 18:20
19:13 67:7
**preventing** 59:25
**primary** 10:4 40:1
**principal** 15:9
**private** 36:19
**pro** 1:15 85:10
**probable** 95:9
**probably** 23:9,10
42:9 82:21 87:14
95:3
**problem** 13:8 27:13
28:2 48:16 53:24
65:19 68:11 71:15
97:19
**procedural** 18:18
21:23 24:4,5 31:5
50:24 51:16 53:4,24
55:6,8,16,23 56:15
56:16,19 80:21 93:9
94:1
**procedurally** 19:7
29:22 51:5 55:14
**procedure** 23:2,23
52:15 74:2
**procedures** 13:14
14:1 89:18 92:10
**proceed** 10:20
12:15 15:24 16:8
54:14 77:25 86:18
87:13 96:2 99:3
**proceeding** 18:12
18:25 23:21 25:18
25:25 27:12 39:3
51:10 55:9,11,17,24
57:14,19 61:7 73:15
76:14 80:18 83:6
92:11 97:3 98:13
100:10
**proceedings** 16:7
26:7 49:4 50:1,2,13
53:15 56:1,11,13,23
79:15,17 80:5 85:22
86:1,2 96:22 99:2,5

102:13 104:4,12
**process** 10:15 15:8
21:24 31:5 41:15,17
48:17 51:5 53:8,16
62:15 64:18,24 66:1
66:5 68:6,7,8,24
71:19,24 72:11,19
73:21 74:2,5,18,21
76:16,23,24 77:11
77:20,25 78:5,14,20
80:2,15 92:22 93:9
94:2 101:22
**product** 64:11,12
64:13
**productive** 44:22
81:8
**products** 46:17
**professional** 18:9
96:17
**professionals** 22:16
**progress** 42:15 45:4
**prongs** 76:19
**proper** 21:15,25
40:12
**properly** 29:17
34:20 42:14 70:15
**property** 11:8 14:23
32:19 34:25 60:9,11
66:25
**proposal** 43:10
57:17
**propose** 27:4,21
**proposed** 9:20
16:21 17:25 99:12
99:23,25 100:17
101:8
**proposing** 28:12
**proposition** 30:9
51:11 64:10,10
**propositions** 28:3
**propriety** 54:18
**prospect** 20:10
**prospective** 13:16
**prove** 64:23 67:10
71:8 75:17
**proven** 12:24 64:11

**provide** 100:16
**provided** 23:22
**provides** 97:2
**providing** 96:14
**proving** 63:24
**provision** 35:4
**provisions** 67:23
**public** 46:12,14,20
62:19 65:10,14,17
84:5
**publically** 84:5,5
**pulled** 69:16
**punitive** 84:24,25
84:25
**purchase** 32:15
**pure** 23:7 39:8,10
**purely** 14:20 24:18
26:2 27:23 28:5
**purporting** 60:10
**purpose** 66:15
67:18,19 86:14
99:24
**purposely** 33:3
**purposes** 10:4
18:18 38:6 51:1,1
55:25 65:5 80:7
88:25 89:24
**pursue** 53:11 63:14
67:10
**put** 10:3 13:11,11
15:4,4 16:13 22:7
24:11 36:1,2 37:23
40:10 48:18 49:20
53:16 56:4 57:3
63:10 78:5,6 83:15
86:8,9,10 90:23
92:23 93:13,19
94:14
**putting** 96:13

**q**

**qualify** 38:5
**question** 12:7 33:13
67:15,18,19,21 68:2
72:25 84:23 85:4
89:7
**questions** 10:22,24
21:9 44:15 46:6,10

52:9 58:5,12 66:19
**quickest** 71:25
**quickly** 72:14 88:25
**quite** 41:25
**quote** 89:6

**r**

**r** 2:9 3:1 4:6 9:1
103:3 104:1
**raise** 12:2 40:12
70:8 81:2 101:2
**raised** 14:20 20:9
31:4,5 39:1,2,7
40:14 59:18 60:6,6
83:8,10 84:14 88:20
88:20 93:6,7
**raising** 13:5
**rare** 46:19
**rationales** 87:9
**ratzlaff** 4:9 5:2
**reach** 25:23 68:9
**read** 9:16,17,19
15:9,22 22:5 40:15
63:13 69:10
**readily** 57:5 70:13
**reading** 14:7 16:25
71:9
**ready** 20:24 88:10
**reality** 47:17 93:6
**really** 18:6,7 25:1
26:24 27:2 28:6
29:3 48:10 67:15
90:4,5
**realm** 89:1
**reargument** 101:12
**reason** 28:23 39:11
41:4 60:5 64:4 70:2
**reasons** 40:1 48:21
69:21
**recall** 33:9,11,25
34:6,14 35:3,4,14
35:19 36:4,14,15
46:13 68:13 69:5,24
70:25 77:5
**recalled** 71:4
**receives** 50:17
**receptivity** 28:13

[recess - room]

**recess** 44:17 45:9,13
 95:19
**recessed** 95:20
**recitation** 24:24
 36:22
**recognition** 41:3
**recognize** 97:9
**recommend** 101:24
**recommendation**
 17:9
**recommended** 59:8
**reconvened** 95:20
**record** 12:24 17:24
 23:15 26:15 27:1
 30:12,14 45:17 51:9
 62:19 63:10 70:5
 88:4 104:4
**recording** 104:12
**recovery** 31:16,17
 93:20
**referred** 12:18 58:2
 58:10
**refined** 15:15
**refinements** 95:24
**reflect** 90:16
**reflection** 57:10
**reflexive** 27:10
**reg** 1:6,16
**regard** 12:9 15:12
 17:21 19:10 26:14
 30:1,14 37:21 38:25
 47:18,21 53:11
 54:17,17,24 60:11
 62:12,20 72:24
 73:14 77:18 88:11
 94:12
**regarding** 46:12
**regulate** 87:7
**regulatory** 47:4
**reject** 15:19
**relate** 27:15 72:5
**related** 17:17 25:2
 25:14,21 30:19 41:6
 41:8 82:3 89:7
 98:11,19
**relates** 36:9,17
 64:22 82:22 87:14

**relating** 31:5 36:14
 37:16,17 94:2
**relatively** 44:23
**relax** 41:13
**releases** 70:7
**relevant** 27:14 46:9
 46:24 94:20
**reliance** 60:2
**relief** 34:16 52:12
 99:21
**remain** 51:25
**remainder** 85:1
 98:17
**remaining** 14:18
 48:24 96:4
**remarks** 21:1
**remedy** 21:22 31:7
 31:8 48:17 73:22,24
 74:21,22 76:19
 86:21 93:10,11,17
 94:8
**remember** 60:19
**remembering** 62:18
**remiss** 88:11
**renewal** 98:22
**reorganization** 61:7
**repair** 35:2 37:25
**repaired** 33:11
 34:18 35:23,24 38:3
 38:4,4,21
**repairing** 36:6
**repeat** 79:5
**repetition** 10:22
 13:2
**repetitive** 21:1
**replacing** 33:25
 70:25
**replicate** 55:10
**reply** 91:22
**report** 63:13 78:24
**represent** 86:4
**represented** 73:7
**represents** 13:16
**request** 18:1 83:20
 98:21
**requests** 18:5

**require** 22:2 51:2
 59:16,21 82:20 87:6
 97:10
**required** 31:15
 59:21
**requirement** 98:16
**requirements** 91:17
 91:20 101:20
**requires** 16:23
 40:18
**reservation** 100:9
**reserve** 45:21 71:23
 93:1
**resolution** 31:25
 32:8 47:1 48:12
 53:17 57:15 66:16
**resolve** 59:13 74:17
 75:10,16 77:24
**resolved** 48:25 53:7
 71:7 83:22 85:11
**resolving** 75:3
**respect** 11:2,8 12:10
 13:25 16:8 58:17
 67:17 89:3 99:2
**respectfully** 65:2
 91:10
**respective** 10:7
 11:17 90:6 97:12
**respects** 77:21
 95:23
**respond** 57:7 58:6
 58:13
**response** 91:21
 102:10
**responses** 57:11
**responsibilities**
 18:9 58:22
**responsibility** 11:13
 32:23
**responsibly** 94:24
 94:25
**rest** 10:16 40:20
 42:13
**restate** 23:24 68:1
**restructuring** 61:8
**result** 18:3 22:22

**resulting** 95:15
**results** 91:7
**retained** 33:2,4
 36:20 37:1 39:17
 92:1
**retaining** 92:6
**retrospect** 59:18
**return** 91:12
**review** 70:5
**reviewing** 25:8
**revisit** 87:15
**revocation** 64:21
**rhetorical** 85:5
**ricardo** 3:23
**richard** 3:15 9:7
**rid** 92:25
**right** 15:12 35:17
 36:19,22 39:25
 41:21 45:4,21 48:15
 54:13,20 55:5 60:18
 66:8,9 69:14 71:24
 73:22 74:21,22
 75:19,23 76:17
 77:23 79:10 82:16
 87:21 90:8 93:1
 95:12 101:2 102:8
**rightly** 11:6 12:17
**rights** 10:20 14:8
 15:1 42:4 56:17
 64:16 87:1,1 94:3
 99:4 100:9
**ripe** 87:8
**rise** 88:19
**rising** 102:6
**road** 72:15 104:20
**robe** 20:15
**robert** 2:10
**robin** 1:12
**robinson** 4:8,8,13
 45:18,19 46:16
**rocter** 4:15
**role** 22:7 63:18 75:9
 88:7
**rolled** 13:23 80:15
 100:7
**room** 52:24 63:3,7
 77:19

**roseland** 6:4
**rostrum** 34:22
  42:23
**rudnick** 5:1 45:18
**rule** 16:7,12 17:16
  18:5 21:20 23:6
  39:3 44:5 59:23
  80:14 83:17 93:2
  99:1,16
**ruled** 19:20
**rules** 28:19
**ruling** 25:2 26:15
  30:16 59:22 87:15
  90:2,3 91:1,15 99:4
  103:5
**rulings** 13:23 28:25
  51:24 99:6,7 100:25
  101:9
**run** 28:14 47:8 80:8
**rush** 56:21 79:10
**rushing** 17:2 54:19

**s**

**s** 3:1,23 6:13 9:1
  103:3
**safety** 63:11
**sale** 11:11,23 12:6
  13:18 14:1 22:20
  25:5 31:6 32:20,21
  33:4 35:13,20 36:4
  36:11 60:2,8,12,17
  61:24 64:15,16,19
  64:20,21 67:21,23
  70:11 71:19,21 92:7
**salutary** 29:12
**sander** 7:20 45:23
  48:4
**sandler** 6:1,8 88:18
**satisfactorily** 88:2
**satisfactory** 100:19
**satisfy** 98:3
**satisfying** 11:13
**saxson** 1:15
**saying** 24:14 27:6
  31:7 36:14 56:4
  93:10
**says** 28:5 89:13

**scenario** 51:23
  86:13
**scenes** 22:10
**schedule** 102:1
**scheduled** 16:5
  98:25
**schedules** 29:6
**scheduling** 80:7
  99:19
**scientist** 95:3
**scope** 67:21
**scott** 3:8
**script** 21:9
**seats** 9:2 45:14
  95:21
**sec** 47:6
**second** 38:4,21
  40:19 42:16 43:13
  53:19 62:22 70:2,19
  89:3,6 92:4
**secondary** 44:8
**securities** 94:4
**see** 9:15 11:25
  23:11,19 24:2 28:15
  28:17 30:13 32:4,5
  40:2 46:19 58:16
  70:9 73:13 78:20
  84:1 86:12 97:11
  101:25
**seeing** 12:20
**seek** 14:3 86:4
**seeking** 81:9 85:16
**seemingly** 52:18
**seen** 68:17 70:5
**select** 26:10 50:25
**selected** 30:3
**selection** 26:1
**sends** 52:18
**sense** 11:18 12:14
  23:6 42:9 59:5
**sensitive** 82:23
**sensitivity** 47:12
**sent** 85:22
**sentence** 56:3
**sentiment** 32:6
  56:10

**separate** 15:5 19:5
  56:11,12,25,25
  57:13,14 76:15
  80:16
**separately** 26:19
**separating** 55:24
**september** 41:11
**serious** 17:1 29:1
**serve** 81:9
**serves** 66:14
**services** 46:3
**set** 10:15 15:16 17:6
  17:18 25:16 61:23
  67:7
**setting** 57:6 65:23
**settle** 102:3
**settled** 96:11 101:7
**seven** 5:3 19:14
  28:21 33:7 49:16
  67:3 85:24 99:22
**shapiro** 4:8
**share** 16:18 59:12
**shed** 76:1 78:25
**sheila** 2:25 104:10
**sherwood** 6:6
**she'll** 102:1
**shifted** 73:25
**shifting** 18:6 27:3
**shoes** 86:9,11 90:23
**shoot** 84:23
**shop** 55:3
**shops** 55:3
**short** 56:18 89:12
**shortened** 30:5
**shorter** 28:24
**show** 13:16 38:13
  41:2
**shown** 14:18 96:4
**shows** 73:18
**side** 10:8 15:12 23:9
  28:13 29:22 47:20
  59:14 60:22 69:11
  69:12 78:6 88:24
  97:15 98:9
**sides** 20:10 47:16
  62:6 78:2

**siganowski** 46:2
**sight** 81:5
**sign** 68:15
**signature** 104:18
**signed** 69:4 70:4
**significant** 22:21
  44:6 87:6
**significantly** 39:5
**signing** 69:2
**similar** 12:10 17:19
  19:3 55:4 77:15
  95:23
**similarly** 1:19
**simplest** 67:8
**simplistic** 64:5
**simply** 52:21 53:16
**single** 48:9 51:5,12
  52:4 100:15
**sit** 70:21
**sitting** 27:6 63:3
  94:4
**situated** 1:19
**situation** 91:4
**situations** 31:24
**six** 18:12 28:21 33:7
  67:3 99:9
**skepticism** 78:12
**skip** 72:22
**sleep** 94:3
**slip** 48:4
**small** 36:6
**sold** 36:25 60:12
  65:18
**solely** 60:11 65:6
  86:14
**soon** 78:25 101:5
**sooner** 58:24 59:2
**sorry** 60:16 79:15
  81:25 93:15
**sort** 52:8 58:4,11
  61:10,18 62:14
  66:18 76:4,7,18
  77:24 80:4,15,17
**sought** 69:6 72:5
**sound** 104:11
**sounds** 82:6

**south** 2:25 4:16
  104:3
**southern** 1:2
**spalding** 3:2
**span** 22:21
**speak** 48:5,6 52:24
**speaking** 14:5
**speaks** 13:13
**specific** 27:25 38:17
  65:18
**speculated** 19:25
**speed** 47:21
**spell** 42:1
**spend** 72:1
**spending** 61:19,22
  63:20
**spent** 45:16
**spoke** 77:19,19
**spoken** 40:24
**square** 5:3
**stage** 64:25 93:4
**stand** 29:15 40:25
  41:1,2 44:22 53:18
  73:9 82:1 84:9
  99:10
**standards** 87:7
**standing** 98:10
**stands** 14:2 52:14
  88:10
**standstill** 16:19
  54:18 99:17
**stang** 8:7
**star** 32:11
**start** 15:14 44:19
  52:7 64:9 67:22
  82:5
**started** 21:10 75:6
**starting** 10:24
  47:23
**starts** 46:21
**state** 11:14 67:16
  89:11,25 99:25
**stated** 56:9 100:20
**statement** 38:17,19
**statements** 83:11
**states** 1:1 6:15

**stating** 56:7
**status** 2:14 25:11,12
  25:13 26:4 27:18
  30:11,20,21 48:23
  51:8 56:18 78:11,19
  79:3 101:18
**statutory** 11:22
**stay** 27:17 41:13
  42:6 99:5
**stayed** 24:17
**steel** 5:8
**steering** 15:10 16:2
  100:23
**stein** 91:18
**steinberg** 3:7 9:3,5
  9:8 10:12 12:4,13
  18:18 20:24 21:4,5
  22:5,15 24:8,13
  26:9,14 33:16,20,23
  35:17,19 37:3,11,15
  37:19 39:22,25
  41:19,21,23 42:24
  43:7,10,23 44:1,3
  46:5 48:1 50:16
  53:14,18 54:3,10
  58:17 59:7 61:12
  62:14 67:2 70:15,19
  72:24 75:2 80:11
  91:22,23 96:9 99:12
  100:22 101:15,16
  101:21 102:4
**steinberg's** 79:12
  79:24
**step** 32:3 42:16 49:8
  49:9 76:22
**steps** 42:14,15 53:4
**steven** 1:12
**stipulate** 23:14
**stipulated** 17:24
  18:2 23:15 26:15
  27:1 30:12,14 78:5
  92:16,23 93:1
**stipulation** 27:17
  29:7
**stipulations** 42:18
  57:21,23 78:1,13,21

**stop** 52:21 53:25
  69:21,24
**stopped** 16:14
**story** 68:12
**strangers** 86:2
**strategy** 85:8
**strauss** 5:10 84:4
**streamline** 23:1
  39:5
**street** 6:18 7:16
**stress** 72:25
**strongly** 43:19
**struggling** 86:17
**studying** 32:2
**stuff** 18:25 53:23
**stutzman** 45:23
**stuzman** 7:15
**subject** 10:20 11:23
  14:8 15:11 46:13
  47:3,9 51:25 70:15
  73:8 77:4 96:7
  98:15
**submissions** 16:25
  42:19
**submit** 90:17
**subsequent** 49:1
  83:19
**subsequently** 13:23
**substance** 23:22
**substantial** 82:21
**substantive** 24:5,20
  28:6 53:20,24 55:23
  56:17 57:2
**subsumed** 55:18
  62:14
**subtleties** 62:10,11
**successful** 29:20,21
  97:13
**successor** 19:17
**suffered** 32:10 40:6
**sufficient** 78:13
**suggest** 29:10 30:15
  62:11 63:14 65:2
  76:16 93:24
**suggested** 12:17
  21:18 76:5 79:24
  82:2

**suggesting** 93:25
**suggestion** 17:17
  25:7 31:19 87:11
  92:15,21
**suggestions** 26:23
  26:23
**suggests** 62:14 71:9
**suit** 63:4
**suite** 6:19 7:3,17
  8:18 104:21
**suits** 63:9
**sullivan** 1:15
**sum** 101:20
**summarized** 40:22
**summons** 80:13
**superficially** 76:16
**supposed** 52:19
**sure** 14:12 23:9,25
  29:4 33:11,19 34:21
  42:2 53:10 55:8,22
  64:3 66:13 75:7,12
  85:24 89:24 91:11
  92:11 94:11 97:13
**survive** 25:21
**suspect** 101:12
**switch** 33:9 34:4,10
  34:14 35:2,12,13,22
  36:1 37:6 38:2
  48:16 62:20 65:19
  67:4 68:14 69:1
  70:25 71:1,2,3,4,5,9
  71:11,13,14 94:15
**switches** 11:3 34:1
  36:7
**system** 42:10

**t**

**t** 104:1,1
**table** 9:3,25 10:4
  15:16 17:7,11 23:10
  27:16 29:22 39:11
  39:12 48:19 57:2,3
  58:22 62:2 67:1
  87:18 96:23 97:17
**tables** 47:20
**tailored** 28:9,10
  92:17

[take - times]                                                                    Page 21

**take** 10:16 12:24
26:7 29:1 44:19
47:16 51:6 53:19
54:16 59:17 61:4,5
61:15 73:18 76:21
84:7 90:1 93:3
95:13 97:16 101:4,8
**taken** 14:11 31:6
32:2 36:1 37:4
39:10,12 48:24
86:23
**takes** 71:24
**talk** 12:14 23:10
38:3 88:19 101:17
**talked** 24:3 35:11
49:3 67:3 76:8
**talking** 11:20 12:9
28:7 36:9 49:21
67:7
**tangentially** 27:15
**team** 99:24
**tee** 65:7 66:6
**teed** 10:2 58:23
59:8 72:12
**teeing** 10:15 13:14
**telephonic** 8:21
**tell** 14:10 27:19
29:11,15 38:13 55:1
58:6,13 60:22 61:1
69:19,21 71:16
82:17 100:25
101:23
**temporary** 16:19
50:19 99:10
**ten** 9:17 33:7 44:17
45:2,3,5,8 101:17
**tentative** 16:4 17:2
17:20 18:17 19:11
19:13 20:4,21 24:7
25:1 26:15 28:25
30:16 31:1 42:17
46:9 49:3 54:23
**tentatively** 34:1
**tentatives** 10:18
14:4,6 21:8 23:18
25:7 42:12,20 44:14
46:6 47:22 52:9

54:17 95:23
**term** 12:17 47:3
71:21
**terms** 41:18 46:18
47:1 57:24 58:21
65:23 66:11 67:9
70:22
**test** 62:25
**texas** 4:16 34:9
**thank** 9:9 21:5,6
44:2,9,11 45:11,12
45:15 68:3 75:18,19
75:20 81:11,12
83:24,25 84:3 87:19
87:20 88:15,16
102:4,7,11
**that's** 65:14 66:8
68:7,21 71:20 72:4
76:7,11,17 77:6
79:1,6 80:2,10
87:15 89:8,10 93:17
99:25 102:4
**theories** 11:18
24:25
**theory** 27:1 92:25
**there's** 73:5 76:23
78:9 80:9,13 82:7
86:13,19,24 89:20
93:20
**they'll** 75:16
**they're** 72:17 91:13
94:7 100:8
**thing** 21:16 25:6
31:21 37:13 49:11
59:3 69:7 71:25
95:4,5 101:17
**things** 11:9 18:1
19:3 24:6,23 25:6
25:11 26:1,1 27:13
29:1,24 39:14 50:24
53:2 63:11 65:8
71:18 76:6 87:2
**think** 9:21 10:6
12:18,23 16:5,22
17:5,25 18:15 20:14
21:18 22:11,20
23:18,24 24:4,5

25:3,22,23 26:9
27:22 28:12,23,24
30:7,9 31:2 33:23
34:2 35:3,10 36:19
36:20 37:10 38:7,13
38:25 39:9,10 40:9
40:11,18,21,22 41:2
41:10 42:7,8,11,17
42:20,22,25 43:15
43:18,23 44:21 45:1
45:2,3,16,24 46:8
46:24 47:16,23
48:15,22,23 49:5
50:8 53:1,5 54:7,13
54:21 55:13,14
56:14,17,19 57:5,8
57:17,22 59:23
60:22 62:15,21 63:4
63:17 64:4,5,8 65:5
65:22 66:7,9,12
67:6 69:15 71:7
72:23 75:14 76:1,11
76:22,24 77:1,15
78:3,4,8,9,9,25
79:11,17 80:1,6,10
80:14,19,25 81:3
84:11 85:8,14 86:1
87:10,18 88:5,23
89:20 91:15 92:10
92:12,14,24 93:8
94:8,11,13,16,25
100:20,24 101:10
101:16,21
**thinking** 15:20
16:24 22:10,13 25:8
43:6 76:2 79:2
**thinks** 13:4,6 42:3
44:20 64:6
**third** 8:9 83:15 92:9
**thomas** 7:2
**thorny** 74:16
**thought** 19:6 22:6,8
24:9,10 30:1 39:2
41:7,12,14,16,24
42:4 43:13,18,19
44:4,18 53:13,21
56:9,21 57:1 66:9

77:18,20 89:11 94:4
96:1
**thoughtful** 95:25
**thoughts** 44:13 76:1
**three** 12:23 13:4
16:18 46:1 54:17
63:15 73:7,12 80:1
89:22 93:15 96:11
97:5
**threshold** 14:12,14
14:17,21 15:4 20:6
21:12,19 22:4 25:15
30:12,18 39:1,3
41:5 42:12 43:4,11
43:14,15 44:4 48:10
48:15,19 58:19 62:3
73:4,5 74:18 76:3
77:11 78:18 79:4
82:4,9,14,19 83:3
83:18 85:9,10 87:17
92:20,24 93:14,23
93:24 96:4 97:8,17
97:23 100:1,4,6,8
**throw** 21:24
**tie** 63:4
**ties** 23:18
**tilting** 62:17
**time** 13:21 15:5
16:17,21,24 17:13
18:7 19:23 20:22
22:18,21 28:23 29:9
30:2,10,17 33:10
35:13 37:25 38:4,21
38:24 44:14,24
45:16 48:7 50:18
51:6,7 54:9,22
61:20,22 63:20
65:20 66:6 72:1
73:18 75:3 76:21
77:5 78:3 79:11,18
81:14 85:25 86:3
88:22 92:7 95:11,25
96:2 97:18 98:21,22
99:11 101:3,23
**timely** 87:1
**times** 4:17 5:3 21:21
28:4 84:18,19 86:24

[timing - views]                                                          Page 22

| | | | |
|---|---|---|---|
| **timing** 42:19 47:1 47:18 49:1 53:2 | 84:5,10,13 85:13,18 85:19,21 86:5,20,21 87:5,14 93:5 96:7 98:3,4,4,7,8,11,14 98:15,20 | **undergo** 61:3 **underlying** 61:25 69:9,22 99:3 **underscore** 12:16 **understand** 11:20 12:2 21:17 22:1 23:5,12 32:6 39:4 44:7 47:2,7 48:8 49:8,12,15 50:12,23 51:3 66:13 78:24 85:7,8 86:22 87:3 87:22 89:25 90:25 91:8 | **urge** 26:17 27:1 81:4 **urging** 31:12 **use** 12:16 44:23 45:2 60:23 62:24 69:18 **usefully** 45:1 **usual** 89:2 99:20 **usually** 21:24 **utilize** 46:3 |

**today** 9:22 10:5,6 19:25 23:23 45:20 48:22 60:22 62:4 75:12 77:25 78:9,11 78:17 80:7 82:6 88:13 89:12 95:11
**today's** 88:25 89:24
**told** 49:18 68:7,12 68:15,17,23 69:14 69:17,20 98:20
**top** 62:10,11
**tort** 12:25 49:11
**totally** 35:25
**touch** 73:15
**touching** 25:6
**toyota** 46:18
**track** 12:24
**trade** 23:1
**traded** 84:5,5
**transcribed** 2:25
**transcriber** 104:8 104:18
**transcript** 104:3,11
**transferee** 50:20 52:19,23 53:3,22 54:1 99:6
**transferred** 50:20
**transpire** 83:21
**transpired** 61:6
**treasury** 63:18
**treat** 74:23
**treated** 80:8
**trial** 60:15,17
**tried** 51:18 67:2 94:14
**tries** 31:22
**tro** 99:17,20
**tropin** 88:12,13
**trouble** 69:15
**troubled** 69:15
**true** 71:8 104:4
**trust** 4:2 5:11 19:15 19:16 20:4 31:1,8 31:10 73:16 74:6,8 74:25 81:20 82:3,4

**trustee** 6:16
**try** 18:8 23:14,25 24:25 25:13,15,19 27:8,9,13 28:10,14 30:11,23,24 31:16 31:24 41:23 42:15 84:23 101:19
**trying** 22:6 23:17 24:13,22 25:1 26:17 29:18 30:17 31:12 31:17 36:11 37:12 40:13 51:1 59:24 62:16 72:11 73:13 79:4,5 93:24 94:25
**turn** 10:23 42:22 62:8
**turning** 12:5
**turns** 39:4
**twice** 88:5
**two** 14:18 16:4 18:15 20:10 42:14 42:15 49:5,9,13 58:17 69:20 76:25 84:9 88:18 91:3 92:10 96:4,15
**tx** 7:18
**type** 22:23 38:8 59:7 88:7
**typically** 11:4 51:2 51:13

| **u** |
|---|

**u** 103:3
**u.s.** 2:1,11 6:16,17
**u.s.c.** 49:23
**ultimate** 50:13
**ultimately** 25:16 29:23 30:7 51:18 52:14 63:5 95:9
**unanimity** 49:6
**unavailable** 47:24
**uncomfortable** 86:12

**understanding** 11:4 16:9,10 34:23 40:24 46:25 49:22 64:10 80:19 90:25
**understands** 10:6 16:11 37:8,22
**understood** 11:6,9 11:12 43:22 49:25 60:6,9
**undertaken** 11:12 22:14 59:8
**underway** 75:8
**undoubtedly** 91:13
**unenforceable** 67:24
**unfortunate** 62:3 86:24 87:2
**unfortunately** 59:18
**unidentified** 82:15
**unit** 84:5
**united** 1:1 6:15
**units** 5:11 74:12 98:4,8,15
**universe** 79:19
**unkosha** 52:6
**unlimited** 98:10
**unnecessary** 57:25
**unpack** 49:4
**unsecured** 19:16
**unwilling** 16:19 99:9
**upcoming** 9:24

| **v** |
|---|

**v** 1:21
**vain** 84:8
**value** 33:7,8,10,17 33:19 34:5,7,13 35:6 40:8
**values** 31:9
**van** 7:6
**variant** 17:25
**varick** 6:18
**various** 9:19 11:2 60:13
**vehicle** 32:21 36:25 36:25 37:5 52:7 72:13
**vehicles** 35:12 36:16 38:22,23 67:7
**venture** 55:3
**venue** 49:17 50:3,13
**verbally** 14:10
**veritext** 104:19
**versus** 21:13 26:19 28:24 35:10 41:11 42:18 70:23 71:19 73:15
**victims** 33:3 39:16 40:5 81:9 92:3,4,8
**view** 16:18 17:1 26:6 33:19 36:8 50:15 51:17 55:15 58:25 67:9 72:23 76:12 77:22 78:17 83:13
**viewed** 52:3 55:5
**views** 11:17 14:7,13 14:14 16:2 26:20 73:14

| | | | |
|---|---|---|---|
| **violate** 52:13 | **wasn't** 75:25 77:8 | **weisfelner's** 87:11 | 90:6 92:13 |
| **violating** 56:16 | 94:11 95:2 | 88:20 89:7 96:5 | **working** 32:1 45:22 |
| **violation** 76:23 | **wasteful** 75:2 | **went** 54:14 68:13 | 55:3 75:21 88:6,12 |
| 77:11 93:16 | **watch** 91:7 | 71:3 94:12 | **worried** 40:8 |
| **violence** 52:13 | **waving** 67:13 | **west** 8:17 | **worth** 74:3 |
| **virtue** 33:24 34:14 | **wax** 56:16 | **we'd** 70:8 72:7 81:5 | **wrecks** 11:9 |
| 35:2,7 57:6 | **way** 11:3 14:9 16:12 | **we'll** 92:12 101:19 | **writing** 70:9 |
| **vis** 11:19,19 16:15 | 17:9 18:6 27:20 | **we're** 65:13 67:6 | **wrong** 38:10 45:22 |
| 16:15 22:14,14 | 30:2 32:25 39:6 | 70:18 71:9 73:5 | 65:17 |
| 52:21,22 | 41:15 43:18 44:22 | 75:13 77:12 79:10 | **wrongful** 11:7 12:6 |
| **voluntarily** 11:7 | 49:20 60:21 61:18 | 79:12,22 80:2,7 | 60:8,10 66:25 |
| **voluntary** 40:5 | 62:16,25 63:16 64:7 | 81:2,9 86:1 93:1,3 | **wrongly** 11:6 12:17 |
| | 64:8 66:8,10,12 | 94:25 95:19,22 96:3 | **wrote** 13:19 16:3 |
| **w** | 68:10 69:17 75:3,4 | 96:25 98:11 102:1 | 42:25 |
| | 83:14 85:21 94:23 | 102:12 | |
| **wait** 41:9 62:21 | 96:22 101:12 102:6 | **we've** 66:9 76:8 | **x** |
| 77:2 95:18 | **ways** 13:3 | 90:18,20 93:14 | **x** 1:3,11,24 103:1 |
| **waiting** 95:22 | **we've** 58:2,10 | **whatever's** 72:2 | |
| **waiver** 68:20 | **wearing** 63:1,4 | **what's** 66:22 78:4 | **y** |
| **walk** 28:13 | **week** 28:21 | 96:21 | **y** 1:13 |
| **walked** 89:12 | **weekend** 101:4 | **whey** 12:2 | **yeah** 12:1 60:19 |
| **walrath** 18:20 | **weeks** 17:3 | **white** 63:9 | **year** 34:3 67:3 |
| **want** 9:12 10:23 | **weigh** 20:7 | **whittle** 26:24 | **years** 33:8 46:17 |
| 13:2,9 17:14,22 | **weinberg** 11:25 | **wholly** 12:6 | 54:8 89:2 |
| 18:7 20:22 22:8 | **weinberg's** 11:25 | **who's** 88:13 | **yesterday** 47:25 |
| 23:24 27:5,10,11 | **weintraub** 4:21 | **william** 4:21 | 88:21 |
| 29:14 40:9,11 44:23 | **weisfelner** 5:6 9:11 | **willing** 61:3 75:15 | **york** 1:2 2:3,3 3:5 |
| 45:7 46:5 51:9 57:3 | 10:13 12:13 13:21 | **wilmington** 98:4,7 | 3:20 4:4,17,19 5:4 |
| 57:7,11,12 58:4,11 | 18:1 20:25 21:3 | 98:14,19 | 5:13,20 6:11,20 |
| 60:22 61:10 63:22 | 39:8 43:2,5 44:10 | **wilson** 63:21 | 7:11 8:3,11 26:8 |
| 65:3,21 66:5 67:20 | 44:11,23 45:3,7,11 | **win** 15:11 | 47:25 50:14 |
| 69:7 72:25 79:8,10 | 45:15,17 49:24 50:4 | **wind** 77:12 79:10 | **you'll** 97:13 |
| 79:21 86:10 89:6,24 | 50:8,21,23 51:21,22 | 81:8 | **you're** 80:20 82:10 |
| 91:25 92:23 93:1 | 52:2 53:1 54:13,15 | **wiped** 74:7 | 90:1 96:15,18 97:11 |
| 94:2 95:8,13,18,25 | 56:6,8 57:5 58:16 | **wiser** 77:13 | **you've** 73:14 84:17 |
| 96:2 99:23 101:19 | 59:10 60:16,18,20 | **wolf** 75:22 | 91:13 95:11 101:23 |
| **wanted** 16:10 18:24 | 61:1,14,17,18 64:3 | **won't** 65:21 69:5 | |
| 18:24 20:1 33:5 | 65:12 67:18,25 68:3 | 72:1 87:11 | **z** |
| 41:13 42:1 43:16 | 69:13,20 70:22 | **word** 12:16 51:15 | **ziehl** 8:7 |
| 69:24 | 78:22 80:4 82:25 | 63:25 76:17 | **zone** 101:24 |
| **wanting** 25:2 | 85:8,14 87:23 88:2 | **words** 56:3 66:23 | |
| **wants** 26:24 62:7 | 88:5 89:5,13 91:12 | 69:18 77:6 | **à** |
| **warranted** 30:13 | 92:9 93:8 94:12 | **wore** 63:9 | **à** 11:19 16:15 22:14 |
| **warranty** 11:13 | 95:1 96:9 99:12 | **work** 15:15,16 | 52:22 |
| 32:17 37:21 38:22 | **weisfelner's** 9:18 | 48:11 55:12 57:17 | |
| 38:24 | 14:18 24:2 53:19 | 57:22 68:16,19,21 | |
| **warren** 8:1 | | 72:10 73:11 78:2 | |
| **washington** 7:4 | | | |