Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 09-50026-LAS

4    - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6    MOTORS LIQUIDATION COMPANY

7            Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - -x

9                         United States Bankruptcy Court

10                        One Bowling Green

11                        New York, New York   10004-1408

12

13                        July 16, 2015

14                        9:48 AM

15

16

17

18

19

20

21

22    B E F O R E:

23    HONORABLE ROBERT E. GERBER

24    U.S. BANKRUPTCY JUDGE

25    ECRO:   K. HARRIS

PLAINTIFF'S EXHIBIT

1

09-50026-mg   Doc 13397-2   Filed 08/27/15   Entered 08/27/15 12:33:20   Exhibit
09-50026-reg   Doc 13393   Filed 07/29/15   Entered 07/29/15 14:41:05   Main Document
09-50026-reg   Exhibit 1 Pg 7/16 of 29 Corrected Transcript of 7/9/15 Hearing IDE Exhibit 1
Pg 20 of 151

Page 2

1    Hearing Re:  No Stay Pleading

2

3    Hearing Re:  Motion to Strike Certain Documents Contained in

4    Appellants' Designation of Items to be Included in the Record

5    on Appeal

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Theresa Pullan

Page 3

```
 1    A P P E A R A N C E S :

 2

 3    KING & SPALDING

 4          Attorneys for General Motors

 5          1185 Avenue of the Americas

 6          New York, NY  10036-2601

 7    BY:  ARTHUR STEINBERG, ESQ.

 8

 9    THE MASTROMARCO FIRM

10          Attorneys for the Estate of Kathleen Pillars

11    BY:  RUSSELL C. BABCOCK, ESQ.

12

13    AKIN GUMP

14          Attorneys for General Motors

15          One Bryant Park

16          New York, NY  10036-6745

17    BY:  DEBORAH NEWMAN, ESQ.

18

19    GIBSON DUNN

20          Attorney for Motors Liquidation Company GUC Trust

21          200 Park Avenue

22          New York, NY  10166-0193

23    BY:  KEITH R. MARTORANA, ESQ.

24

25    MR. WEISFELNER
```

1              P R O C E E D I N G S

2              THE COURT:  I want to get appearances, and then I

3    have some comments.

4              MR. BABCOCK:  Good morning, Your Honor, Russell

5    Babcock, I'm here on behalf of the estate of Kathleen Pillars.

6              THE COURT:  Mr. Babcock that is.

7              MR. BABCOCK:  Yes.

8              THE COURT:  Okay.  I thought I saw a different name

9    on the papers, Mr. Babcock.

10             MR. BABCOCK:  Yes, Mr. Markell is a lawyer, while he

11   is a partner of the firm I am employed with, I filed an

12   appearance too so I could argue the motion today.

13             THE COURT:  Okay, sure.  Mr. Steinberg.

14             MR. STEINBERG:  On behalf of the New General Motors,

15   and I'm with Mr. Davidson.

16             THE COURT:  Okay.  Folks, you don't need me to tell

17   you about the similarities between this case and Deutsch.  But

18   there is a twist in it that I need you to address which neither

19   of you dealt with as directly as I would have liked in the

20   papers.

21             Mr. Babcock, Mr. Mastramarcos's brief recognized my

22   earlier ruling in Deutsch which is quite obviously directly on

23   point.  And he tried to get around that, not by saying that

24   Deutsch was improperly decided, but relied on a different kind

25   of argument, although he didn't use what I would have thought

1  would be the right words to describe it.

2          The premise was that because whoever had filed the

3  removal petition in the answer in the State Court action which

4  I think was Michigan, certainly wasn't in this district, had

5  relied on the earlier version of the sale agreement. We had

6  apparently said "Execution Copy," but was amended by our first

7  amended filed on June 30th, 2009, that this might be an

8  occurrence even though I had moved in Deutsch that the death of

9  a victim after a car wreck wasn't either an accident or an

10  incident. But you didn't flesh out the law of, didn't mention

11  the key words, judicial estoppel, trying to rely on some kind

12  of admission.

13          And it seems to me in essence what you and Mr.

14  Mastramarco are asking me to do is to rely on a wrong version

15  of the sale agreement.  I got a couple of problems with that:

16  a) I didn't know how a guy in my position could responsibly

17  rely on what he knows to be the wrong agreement, and as a

18  matter of Second Circuit law (though it's not unique to the

19  Second Circuit because the Supreme Court has said it as well).

20  To make out judicial estoppel, you need to have a couple of

21  things: one is materially different statements, and second,

22  reliance by the tribunal on the statement by the opponent.

23          New GM used the wrong language as far as I can tell.

24  I will allow Mr. Steinberg to be heard if he wants to correct

25  me on that, but it wasn't materially wrong at least at the

```
 1    time, and more importantly, there's no reliance by me on that,

 2    and then third, of course, what the agreement says is the best

 3    evidence of what it says, not what a lawyer says about what the

 4    agreement says.  So I need help from you on that.

 5           Conversely, Mr. Steinberg, I'll need some help from

 6    you as to why either [indiscernible] there seemed to be

 7    reliance on the old language rather than the new, and why the

 8    issue that I just articulated wasn't raised.  Once I rely on

 9    the proper language in the agreement, and I got to tell you Mr.

10    Babcock that I think you'd have to throw a Hail Mary to

11    convince me that I should rely on the wrong language.  So you

12    can tell me whether you think Deutsch was wrongly decided, and

13    materially wrongly decided, being mindful of what I said in

14    quite a number of published decisions, that the interest of

15    predictability in the Southern District of New York is of great

16    importance and that in the absence of manifest error I follow the

17    decisions of of fellow bankruptcy Judges in this district and of

18    course I follow my own.

19           So strictly speaking, it's your motion, Mr. Babcock,

20    so I'll hear from you first, and then Mr. Steinberg with the

21    usual reply.

22           MR. BABCOCK:  Your Honor, Russell Babcock here on

23    behalf of the estate of Kathleen Pillars.  I guess the problem

24    as we see it from the New GM's perspective is that parties can

25    and do quite often waive defenses or arguments that they may
```

1   otherwise have.  Why do I think that's important here?  Your

2   Honor, there has been no evidence to suggest that this was an

3   error on the part of New GM.  New GM like anyone can take on

4   whatever obligations they want to.  If they want to rely on

5   different contractual language they can do so.  And in fact,

6   that takes it outside the purview.  We're not asking the Court

7   here to make any changes to its rulings as to these, as to the

8   subsequent agreements.  We're saying that New General Motors

9   has made admissions, in fact they've even used the words

10  admissions in their complaint, and not just once, Your Honor,

11  in paragraph 17, but I mean paragraphs 22, 27, 29, 31 through

12  34, 36, 37, 39 through 44, 46 and onward.  There's at least 40

13  times where they make the same admission or incorporate the

14  same admission I should say.

15          And for them to come in here, and this case as Your

16  Honor pointed out was an *in the* Eastern District of Michigan under

17  Sixth Circuit rules courts, parties are bound by the statements

18  of their attorneys and especially in the context of pleadings.

19  As Your Honor is well aware *with the* of Federal Rules of Civil

20  Procedure, when you answer a complaint you either make a denial

21  or an admission.  In this case they made an admission, and not

22  only that but they made it in the notice as well.  There's been

23  no authority cited by New GM which disputes what I've just

24  said.  They say we didn't really mean it.  That's not

25  authority, that's an unsupported assertion.

Page 8

1           And then, Your Honor, I guess with regards to the,

2    and I guess I want to make sure we flush out the Deutsch

3    opinion.  There is a couple of key language that appeared in

4    the subsequent version that I think is important, besides the

5    fact that it did not have or other distinct and discrete

6    occurrences which the court noted in its opinion.  Also in the

7    version that New GM is not relying upon in this particular

8    context, in this particular case, it doesn't have the first

9    occurring language which also the Court found important in the

10   Deutsch opinion as well.

11           THE COURT:  Doesn't first occurring appear in both

12   versions?

13           MR. BABCOCK:  Not in the excerpt that they've, well

14   see they did quote the language they're relying on in their

15   answer.  And in fact if you look at paragraph, page 4 to

16   exhibit 2 to their notice of removal, they quote the language

17   that they're standing --

18           THE COURT:  My bundle doesn't include that document.

19   Can you hand up what you're making reference to after showing

20   it to Mr. Steinberg?

21           MR. BABCOCK:  Sure, I can hand you this document,

22   Your Honor.

23           THE COURT:  And this is from the removal petition?

24           MR. BABCOCK:  Yeah, it's from the removal.  May I

25   approach the bench, Your Honor?

09-50026-mg   Doc 13397-2   Filed 08/27/15   Entered 08/27/15 12:33:20   Exhibit
09-50026-reg   Doc 13323-7   Filed 07/29/15   Entered 07/29/15 14:41:06   Main Document
09-50026-reg Exhibit 1 - 16-15 Corrected Transcript   Pg 9 of 29   IDExhibit 1

Pg 27 of 151

Page 9

1          THE COURT:  Yes sir.

2          MR. BABCOCK:  Okay.  That language is from the page 4

3   of the notice of removal.  And as Your Honor can see, the

4   language that they're representing to the District Court of the

5   Eastern District of Michigan is this is what controls the

6   situation from our perspective.  And --

7          THE COURT:  Give me a second to read it.  Was

8   withdrawn by a Thomas P. Branigan of Bowman and Brook in

9   Bloomfield Hills, Michigan, attorney for New GM.

10         MR. BABCOCK:  And I believe Your Honor --

11         THE COURT:  Do you need this back?

12         MR. BABCOCK:  I was going to reference it, Your

13   Honor.  I can get -- all right.  And again, Your Honor, if you

14   don't have, I apologize if you didn't get these documents, Your

15   Honor.  And again, Your Honor, in paragraph 17 to the answer to

16   our amended complaint, now, that was marked I believe -- hold

17   one second here -- as exhibit 4 to our pleading, I don't know

18   if Your Honor has that as well.  It says here, and I think it's

19   the same language.  It says:  all liabilities to third parties

20   for death, personal injury or other injury to persons or damage

21   to property caused by motor vehicles designed for operation on

22   public roadways or by the component parts of such motor

23   vehicles and, in each case, manufactured, sold, or delivered by

24   sellers (collectively) "product liabilities" which arise

25   directly out of accidents, incidents -- excuse me -- accidents,

09-50026-mg   Doc 13397-2   Filed 08/27/15   Entered 08/27/15 12:33:20   Exhibit
09-50026-reg   Doc 13328   Filed 07/29/15   Entered 07/29/15 14:11:29   Main Document
09-50026-reg 13306 1332DM   Doc 177g/Filed/Entered 07/29/15 15:55:49 Pg IE26bit-1
Pg 28 of 151

Page 10

1   incidents or other and discrete occurrences that happened or

2   after the closing date, July 10, 2009 and arise from such --

3        THE COURT:  What are you reading from, Mr. Babcock?

4        MR. BABCOCK:  I'm reading from, this is the quote

5   from paragraph 17 to New GM's answer to the amended complaint.

6   And again, and arise from such motor vehicles' operation or

7   performance.  That's the language, Your Honor, that New GM

8   represented to the District Court for the Eastern District, not

9   once but on two separate occasions, two separate pleadings.

10        And when Your Honor considers the fact that they

11   acknowledge in paragraph 17 that this is what they state, GM

12   LLC admits it ultimately did assume certain liabilities,

13   including the following as provided in section 2.3 (a)(ix) of

14   sale agreement.  That's where the quote that I just read you

15   comes from.  That's what they're relying upon, and that was

16   from attorney Tomas Branigan from Bowman and Brook LLP on

17   behalf of New General Motors.

18        So, Your Honor, the reason we're here, and this is

19   kind of, I mean I'm not aware of any other case where New GM

20   decided to take this approach.  This is a situation where in

21   the context of this case, New General Motors made a decision to

22   take a certain position, and as we've pointed out in responding

23   to that position, the language that they're relying upon

24   provides broader liability and explore to New GM in the case

25   which covers, in the case of my client's claim at least than

1   what may or may not have been accomplished in subsequent

2   agreements, but they're not relying on the subsequent

3   agreements in the case before the United States District Court

4   Eastern District of Michigan which is where this case was

5   removed by New GM.

6          So, Your Honor, we cited Sixth Circuit cases that

7   would explain why the Court in that case in that venue would —

8   why those statements are dispositive to New GM. There's been

9   no authority cited to the contrary. And then in --

10          THE COURT: Do I have the Sixth Circuit rule that

11   you're relying on in the record?

12          MR. BABCOCK: Basically the Federal Rule of Civil

13   Procedure Rule of pleading plus the two cases I was talking

14   about, the two cases talking, which are Barnes and the McDonald

15   opinions which appear in that no state pleading, and we cite to

16   them. On page 4 of our brief, Barnes vs. Owens Corning Fiber

17   Glass Corporation which is 201 F.3d 815 and page 829 is

18   referenced specifically as the Sixth Circuit 2000 opinion.

19   There's another one, McDonald vs. General Motors Corporation,

20   110 F.3d 337, 340 Sixth Circuit 1997. Again talking about the

21   impact of admissions made by attorneys or defendants of parties

22   in the course of litigation.

23          And again, Your Honor there's been no authority cited

24   by New GM that disputes that. They say we don't really mean

25   it. I take it as simply being buyer's remorse on their part

1   now that they, that the consequences of their position has

2   become apparent now more willing to consider the impact to

3   there is any form their opinion with regard to this Court's

4   ruling rather than their own admissions earlier on.

5           THE COURT:  Mr. Babcock, did the Pillars family file

6   a claim against Old GM where its trust, back in the time when

7   claims could still be filed?

8           MR. BABCOCK:  Your Honor, that's the tragedy of the

9   situation.  My client was in an automobile, the estate, the

10  decedent was in an automobile accident in 2005.  She was in a,

11  she was incapacitated until her death in 2000, I believe it was

12  in 2012, Your Honor.  And an estate was formed back in 2014.

13          THE COURT:  Was there any kind of guardian or

14  anything appointed for her in the time between the wreck and

15  the time of her passing?

16          MR. BABCOCK:  Not to my knowledge, Your Honor.  In

17  fact, the appointment took place in 2014.  She had a, she had

18  a, she was married at the time of the accident, and she was

19  being taken care for in basically a vegetative state from my

20  understanding at least up to the point of her death.  And so

21  that's what, and so that's what I think is the most, the tragic

22  part about all this.  New GM wants to be excused for its

23  conduct and its statements and its actions it's made in front

24  of Federal District Court in Michigan.  But yet they want to

25  penalize my client for something that they did when they did

```
 1    nothing wrong.  They were accused of, the decedent was a victim

 2    of a car accident.  Her wrongful death did not occur until

 3    2012.  A wrongful death statute claim could not have been

 4    brought until her death, it goes without saying, and thus New

 5    GM is saying sorry, you're out of luck.  And but yet they want

 6    this Court, to come in here and say on the other hand what we

 7    say and what we do doesn't matter.  And that is where, that's

 8    where -- again, this is not going to have any impact on the

 9    ruling from this Court today on this issue that we're bringing

10    to the Court's attention, will have no impact on the bankruptcy

11    estate.  In fact, quite the contrary, New GM's agreed to take

12    on the additional liability which might otherwise went to the

13    old bankruptcy.

14         THE COURT:  Well you're not pressing that

15    jurisdictional argument that I rejected I don't know how many

16    times in the cases that that lawyer Gary Peller brought.

17    You're simply saying that letting your client bring a wrongful

18    death case against New GM isn't that big a deal?

19         MR. BABCOCK:  Because this is just one case, Your

20    Honor.  This is, the admissions that they made in this

21    particular case, the position that they took in this particular

22    case involves only this particular case.  It does not involve

23    or require this Court to make any adjustments to any of its

24    earlier rulings because --

25         THE COURT:  I understand.
```

1           MR. BABCOCK:  Yeah, so that's kind of where we're

2    coming from, Your Honor.  And again I think it's also

3    important, that the defendant, that New GM I should say doesn't

4    provide any explanation as to this additional changed language,

5    the occurrence language that we already quoted.  The fact that

6    there is no first occurrence language in the portion that

7    they're relying upon, the United States District Court Eastern

8    District of Michigan, none of that is being challenged.  They

9    haven't said that we're not correct on our interpretation of

10   that occurrence and or the fact that it says or other distinct

11   occurrences.  They don't challenge any of that, Your Honor.

12   They just say, well Your Honor made the rulings.  Well Your

13   Honor did make the rulings, and as you pointed out in the

14   Deutsch opinion, you were, the issue in that case was whether

15   or not accidents and incidences were, you had to deal with

16   those particular terms.

17           And yet as you point out in your opinion that this

18   occurrence issue wasn't even a part of it, so there was no

19   reason to get into it.  And as you pointed out in that case, no

20   one bothered even to discuss it.  And in this case we are

21   discussing it.  We've provided evidence, we provided definition

22   term, definition for this, for this terminology.  I think that,

23   and the fact that the other additional language as we point out

24   further supports the fact that what we have here is a much

25   broader language.

1       So I guess with regards to this issue about the

2   Deutsch opinion, I guess as a representative of a victim of

3   these accidents, I would take the position even though I don't

4   think that the Court needs to get to this point because I don't

5   think you need to reverse yourself and Deutsch at all or even

6   clarify it to give us the relief we're asking for today.  But

7   if push comes to shove, I guess and for the purpose of

8   preserving it for the record, I guess in addition to the

9   arguments made by the lawyers for that, for the estate in that

10   case, I guess the way I read the terminology with all due

11   respect to the Court is that you basically came down to

12   "accident" or "incident" meaning at least in my opinion and how I

13   took it, and maybe I'm wrong about this, is being the same

14   thing.  But I think that we don't need to go there.  I think

15   that the Court can grant the relief that we've already asked

16   for to the mechanism I've already explained.

17       Unless Your Honor has any questions, and I guess,

18   they have brought up these other issues about, and I just got

19   these, I got these when I came back from vacation yesterday,

20   about the responses to the [indiscernible] and the objection

21   where they make the additional argument about the, whether this

22   is, whether this is an ignition system.  I guess we look at

23   paragraph 4 to their answer to the complaint, they kind of tie

24   it all together, they say this is all, ours is the same as

25   everyone else's as far as the recall problem.  And so I guess,

1  I don't think we need to go there because if you grant the

2  relief we asked for at the very beginning, all this additional

3  stuff becomes academic.

4        THE COURT:  You're saying if I grant the relief you *will*

5  still got to prove your case in Michigan State Court or

6  Michigan Federal Court?

7        MR. BABCOCK:  Sure.  Of course we would have to, we

8  would have to prove the underlying case against New GM, the

9  claims itself, yes.  Unless Your Honor has any questions.

10       THE COURT:  No, thank you.  I want to hear from Mr.

11  Steinberg.

12       MR. STEINBERG:  Your Honor, I think the most

13  fundamental point to start is that this lawsuit was improperly

14  brought.  It was in violation of Your Honor's sale order and

15  injunction, and that it was a violation of the injunction to

16  start. That actually is the starting point.  Under the ~~Selztex~~ *Celotex* X

17  (phonetic) decision which we've cited to, Your Honor, many

18  times that if there was any confusion, they were required to

19  come in.  Your Honor's Deutsch decision had been decided over

20  three years ago, and they brought this lawsuit anyway.  And

21  they're arguing that some local counsel for New GM in the

22  context of trying to get this to the JPML for purpose of then

23  moving it to the MDL cited to the wrong version of the sale

24  agreement.

25       THE COURT:  He was a lawyer for New GM, wasn't he?

09-50026-mg   Doc 13397-2   Filed 08/27/15   Entered 08/27/15 12:33:20   Exhibit
09-50026-reg   Doc 13248   Filed 07/29/15   Entered 07/29/15 14:41:09   Main Document
Exhibit 43-7 16-15 Corrected Transcript   Pg 17 of 29
09-50026-reg 13406 0532M1   Doc 07/29/15   Entered 07/29/15 08:25:4   Pg 1 Exhibit 1
Pg 35 of 151
Page 17

1          MR. STEINBERG:  Yes he was.

2          THE COURT:  And I don't know if it matters because

3    over 45 years I've learned a little bit about the agency, but

4    isn't there somebody at the national level that supervises

5    local counsel?

6          MR. STEINBERG:  I'm sure that in the context of this

7    wave of lawsuits there was more than the local counsel just

8    doing this.  I think, Your Honor, that this was a mistake that

9    was made.

10         THE COURT:  It plainly was.  And the consequence is,

11   the question is who should bear the consequences of that

12   mistake?

13         MR. STEINBERG:  But I don't think there's any

14   reliance on anything here.  First you start with an improperly

15   brought --

16         THE COURT:  Well that was the way I started, Mr.

17   Steinberg, because more likely if not plainly we don't have a

18   judicial estoppel, but Mr. Babcock makes a different point, he

19   asserts a judicial admission that's contrasted to a judicial

20   estoppel by reason of the fact that when people answer

21   complaints we hold people to what they say.

22         MR. STEINBERG:  People amend their answers all the

23   time.  And what was the admission that other than it was just a

24   mistake?  Because at the end of the day if we had asserted the

25   old agreement and they had not refuted it, then are we all

1    governed by the old agreement instead of what was the governing

2    agreement that applies to everybody in this case?  The fact of

3    the matter is there's an underlying agreement that governed

4    this circumstance, the underlying agreement was the First

5    Amendment.  That First Amendment --

6              THE COURT:  I didn't see much reference to that in

7    your brief either, or attention to the distinction.

8              MR. STEINBERG:  I think the, with regard to my brief

9    --

10             THE COURT:  Unless I read the wrong brief.

11             MR. STEINBERG:  No, no, I think we say that the fact

12   that there was a citation to the old amendment shouldn't change

13   what the controlling law is and I think we put that in a

14   sentence there.

15             THE COURT:  In --

16             MR. STEINBERG:  In our response.

17             THE COURT:  12 page response, it was pretty buried if

18   it was stated.

19             MR. STEINBERG:  Yes.  If you can bear with --

20             THE COURT:  You mean [indiscernible] reliance on

21   subject matter jurisdiction and due process.  Where is the

22   discussion of judicial or admissions or estoppels?

23             MR. STEINBERG:  I think, well I think Your Honor on

24   page 7, footnote 5, New GM may have inadvertently referred to

25   the original language contained in section 2(b)(3)(b)(9) of the

1    sale agreement --

2              THE COURT:  I see.  All right.

3              MR. STEINBERG: -- and certain pleadings filed in the

4    underlying lawsuit, the language contained in the first

5    amendment with respect clearly governs this matter.  Perhaps we

6    didn't give it the attention that Your Honor wanted us to give

7    the attention because we didn't think it mattered that much

8    because at the end of the day --

9              THE COURT:  It matters critically, Mr. Steinberg.

10             MR. STEINBERG:  Well, Your Honor, this issue actually

11   did come up in Deutsch.  The first hearing that you had in

12   Deutsch, people had cited actually to the wrong amendment, you

13   actually had I think a second hearing on Deutsch where you

14   analyzed what would be the governing position, and you actually

15   in the Deutsch decision compared the language that was in the

16   June 26th, 2009 agreement versus the first amendment and said

17   no one has explained why the language changed, and therefore it

18   could have been because it was duplicative or otherwise, but

19   otherwise you were going to discount it.  So this actual, you

20   know, this actual problem actually took place before in the

21   Deutsch case and Your Honor handled it that way by just looking

22   at the actual agreement.  And maybe that's the reason why we

23   didn't give it as much attention in our brief that perhaps it

24   warranted.

25             But I go back and I also wanted to just address the

09-50026-mg    Doc 13397-2    Filed 08/27/15    Entered 08/27/15 12:33:20    Exhibit
09-50026-reg    Doc 13328    Filed 07/29/15    Entered 07/29/15 13:41:08    Main Document
09-50026-reg15600 11332vm   Doc 07/29/22 of 151 ed 07/29/20 d5255.40g IE28xit 1

Page 20

Pg 38 of 151

```
 1    issue that Your Honor said that you thought that we perhaps

 2    miss-cited the section in our own brief.  If you were referring

 3    to page 2 of our brief, we were actually citing to the section

 4    that was in the Retain Liabilities portion of the sale

 5    agreement as compared to the Assumed Liabilities and that is

 6    the right quote of how it was written in the Retained

 7    Liabilities.  So I think we got it right in our pleading.

 8            But fundamentally what happened is that you had an

 9    improperly started lawsuit in violation of Your Honor's sale

10    order.  And we had deadlines in the state court because those

11    things go forward.  We sent the no stay letter to them, and in

12    the meantime we had to try to remove this to the JPML and get

13    it ultimately before Judge Furman (phonetic) in the MDL, and

14    the statement that is being referred to here has no material

15    difference as to whether we cite it to the first amendment or

16    the second amendment, the June 26th agreement or the first

17    amendment, because the central focus was that it had bankruptcy

18    court jurisdiction and there was a basis for federal removal,

19    it relates to the bankruptcy case.  New GM was disclaiming

20    liability and was saying that it should all be ultimately moved

21    to the MDL where it gets stayed because they're handling

22    [indiscernible] cases, and it's subject to Your Honor's order.

23    We waited then for them to file their response to the no stay

24    pleading and then Your Honor entered the judgment and that

25    created a separate procedure for the same thing.
```

09-50026-mg   Doc 13397-2   Filed 08/27/15   Entered 08/27/15 12:33:20   Exhibit
09-50026-reg   Doc 13323   Filed 07/29/15   Entered 07/29/15 11:21:09   Main Document
Exhibit B - Corrected Transcript   Pg 21 of 29
09-50026 leg   Doc 13020 03 32 DVL   Dated 0 Reg/2scn 06/28 0677/25/15 16256:49g II E2sot 1
Pg 39 of 151
Page 21

```
 1              Once in the, so the answer that was filed was the

 2      answer that was filed in conjunction with something that was

 3      ultimately going to be removed and stayed and ultimately the

 4      answer should not have necessarily been required to be filed

 5      because this action never should have been brought in the first

 6      place.  It was a violation of the Deutsch decision.  There's

 7      no, there's no judicial admission of anything because there was

 8      no attempt to admit to an older agreement versus a new

 9      agreement.

10              And if Your Honor needs a declaration from someone to

11      say that it was a mistake and answers could be amended all the

12      time, and so therefore I don't think in the very early stages

13      of an improperly led complaint you can say there's a judicial

14      admission of anything.  This would have been amended if this

15      case would have gone forward, but this case never should have

16      been brought in the first place.

17              And I think the estate representative is the husband

18      who was taking care of the wife since the accident in 2005.  So

19      Your Honor had this issue in Deutsch, unfortunately local

20      counsel made a mistake in responding where the goal was just to

21      get this to the MDL where it would be stayed while we

22      simultaneously would be dealing with this in the bankruptcy

23      court to say that it was subject to Your Honor's order.

24      There's no difference as to whether we cited the first

25      amendment or the June 26th amendment for purposes of the over-
```

Page 22

```
 1   reaching point, that this was an improperly started lawsuit,

 2   that this was, that there was federal jurisdiction based on the

 3   bankruptcy court on this, and that this matter should be

 4   ultimately removed to the federal court and then to the JPML.

 5           Your Honor's decision in Deutsch also said that if

 6   you even relied on the old amendment that it wasn't sure

 7   whether there was any difference.  And if you look at their

 8   brief when they decide, when they're focusing on the word

 9   occurrence --

10           THE COURT:  I read Deutsch this morning again, I did

11   not see in there but you can refresh my recollection if I'm

12   mistaken any suggestion that if the words occurrence had

13   appeared and the words first occurring had not appeared, that I

14   had then ruled, assuming it wouldn't have been dictum, that the

15   conclusion would be the same.

16           MR. STEINBERG:  I don't think you said that.  I think

17   on page 5 of the Deutsch decision --

18           THE COURT:  Give me a second please.  Well I have it

19   in the BT. form, is it in the discussion or where?

20           MR. STEINBERG:  It is in the discussion, it is after

21   the heavily blocked quote, and it starts with the paragraph,

22   but while incidents may be deemed to be somewhat ambiguous.

23           THE COURT:  Right.  I'm with you now.  Basically I

24   said is I didn't have an evidentiary basis for concluding,

25   making conclusions as to the reasons for the change.
```

```
 1              MR. STEINBERG:  But the reason why this was even in
 2    your decision was because there was the same mistake that was
 3    made before, people were referring to the June 26th amendment
 4    in an earlier hearing and Your Honor was struggling with would
 5    it have made a difference, why was the change being made.  If
 6    people had cited to it properly the first time even in Deutsch,
 7    you never would have had to deal with this discussion, because
 8    the operative agreement is what controls.  And that is really
 9    you know we didn't say it in lots of words, sometimes you get
10    criticized for being verbose, here we basically said there is
11    one agreement, that is the agreement that is controlling, that
12    is what Your Honor has to apply in this case.

13              No matter what we said, we could say that the sky is
14    orange, but the sky is blue, that's what you have to recognize.
15    Here, there was no attempt to change a different agreement with
16    respect to a plaintiff who improperly started a lawsuit based
17    on an accident that took place ten years ago.  The rest of the
18    arguments, I think, Your Honor, I think if, once you find that
19    there are prepetition non-ignition switch plaintiff, then the
20    rest flows from the judgment on the due process arguments and
21    the Court's jurisdiction argument.  And so I think really we're
22    left to, and I think Your Honor has already said that you
23    believe that Deutsch is applicable or not for this particular
24    issue where a local counsel had improperly cited to a June
25    26th, but it wasn't to take any advantage, no court has ruled
```

1    on this matter.  The JPML hasn't even ruled on the removal

2    action.

3            And frankly again, and I'll conclude with this, and I

4    know I've said it a number of times, it all starts with the

5    fundamental notion that this was an improperly brought lawsuit.

6    And to say that someone in an answer said something on a

7    lawsuit that never should have been brought which was a

8    violation of an injunction I don't think they should be able to

9    bootstrap that type of argument.  Thank you.

10            THE COURT:  Mr. Babcock.

11            MR. BABCOCK:  New GM filed a 58 page answer, a very

12   detailed, they went through quotes, it's a very detailed

13   answer.  To suggest that what they say in this very detailed

14   answer should be disregarded by this Court flies in the face of

15   what the purpose of an answer is which is either make denials

16   or make admissions.  They could have just said denied, isn't

17   true, denied, isn't true.  But they instead they made the

18   decision to make admissions.  They have not, as Your Honor, as

19   you pointed out when you, during opposing counsel's -- they

20   have not cited any authority that says they are excused from

21   the consequences of what they did, and I mean what the lawyers

22   in that case did.

23            Your Honor, unless Your Honor has any questions for

24   us, we'd --

25            THE COURT:  Have everybody sit in place for a minute.

```
 1        Gentleman, ladies and gentlemen, I'm ruling that the

 2   Pillars action can proceed against the New GM and that New GM

 3   will have the duty and of course the right to defend it on the

 4   merits without expressing [indiscernible] merits in the filing

 5   of my findings of fact conclusions of law and bases for the

 6   exercise of my discretion in connection of this decision,

 7   although I don't think I'm really relying on my discretion in

 8   any way on this.

 9        At the outset of oral argument I recognized as we all

10   had to recognize my Deutsch decision, which if it had been

11   decided in a vacuum, this controversy had been decided in a

12   vacuum based upon the proper language of the sale agreement,

13   would have resulted in a victory for New GM.  But the fact that

14   had the potential ability to change the applicability of the

15   Deutsch decision was the language under which New GM's

16   assumption of its liabilities would rest.

17        In Deutsch, as we all know, the key language was

18   accidents or incidents first occurring.  And the underlying

19   principal of that was that each word had to be given individual

20   meaning, although they could overlap.  It is not disputed that a

21   local counsel through GM said in two separate submissions,

22   first in a notice of removal and then also in an answer,

23   perhaps I'm flip-flopping their chronological order, but in two

24   separate documents, that New GM had assumed liabilities for

25   accidents, incidents or other occurrences, and did not rely on
```

09-50026-mg   Doc 13397-2   Filed 08/27/15   Entered 08/27/15 12:33:20   Exhibit
09-50026-reg   Doc 13328   Filed 07/29/15   Entered 07/29/15 11:41:08   Main Document
09-50026 reg Exhibit 1 - 16-15 Corrected Transcript   Pg 26-29 19

Pg 44 of 151

Page 26

| | |
|---|---|
| 1 | the words first occurring or mention the words first occurring. |
| 2 | As I discussed in the Deutsch opinion, first occurring had |
| 3 | significance as well.  As I indicated at the outset of oral |
| 4 | argument, this is not a judicial estoppel, the requirements for |
| 5 | judicial estoppel of reliance by the tribunal is missing. |
| 6 | Nevertheless, as Mr. Babcock properly pointed out, it is a |
| 7 | judicial admission, which is similar in some respects, but |
| 8 | different in others.  It is not for instance a statement in a |
| 9 | brief.  It's a statement in the answer, which has significance. |
| 10 | Answers have to be taken seriously.  Although it is true that |
| 11 | answers can thereafter be amended, unless and until they have |
| 12 | been, they stand.  Judges need to have the ability to rely on |
| 13 | answers because answers take issues off the table. |
| 14 | So then we get to the issue as to whether what GM's |
| 15 | counsel, which is obviously an agent, [indiscernible] should be |
| 16 | regarded because the litigation shouldn't have been brought in |
| 17 | the first place.  Well, lots of litigations were brought in |
| 18 | what we now know to have been violation of my earlier order. |
| 19 | And when I had become aware of that, I have stopped them, I |
| 20 | have stopped them by stays.  And it's for that reason that this |
| 21 | litigation is stayed.  But it was one thing to say that this |
| 22 | action should be stayed, then later dismissed, and quite a |
| 23 | different way to say never mind, [indiscernible] vis-a-vis |
| 24 | everything that happened in the first place. |
| 25 | I have not ruled to that effect in any of the 22 |

09-50026-mg   Doc 13397-2   Filed 08/27/15   Entered 08/27/15 12:33:20   Exhibit
09-50026-reg   Doc 13328   Filed 07/29/15   Entered 07/29/15 14:41:06   Main Document
Exhibit 2 - 16-15 Corrected Transcript   Pg 27 of 29
09-50026-mg   Doc 15200-1   Dated Dated 07/29/15 Entered 07/29/15 03:55:49   Exhibit 1
Pg 45 of 151                                    Page 27

1   decisions that previously issued in connection with the GM

2   case, and I am not of the mind to do that now.  Obviously GM

3   has the ability to ensure that its counsel do their jobs, and

4   it's not too much to hold GM for the consequences of what its

5   counsel, who is plainly an agent, did.  So having admitted that

6   New GM is liable for accidents, incidents or other occurrences,

7   I think have to parse those words.  Under the principals of

8   Deutsch, each word is to be given meaning.  Accidents refers to

9   wrecks; we all know what an accident is.  Incidents are,

10  applies to, something that can include wrecks but can also

11  include other things.  And as I ruled in Deutsch in of the

12  Pillars actions, repeating or characterizing my ruling in

13  Deutsch, that covers things like explosions, fires, car running

14  off the road and the like.  Occurrences can overlap with that,

15  but it can also have some other meaning.  And in this instance,

16  occurrences, which as far as I'm aware has not and will not ever

17  be the subject of another judicial construction in this case.

18  But the principals of Deutsch should be construed as meaning

19  something else, and the arguments made by Pillars' counsel in

20  its brief that death from that is subject to coverage under

21  that ambiguity.  Of course, the construction of documents when

22  they're ambiguous necessarily must go against the drafter.

23      So I'm going to allow this lawsuit to proceed, and

24  I'm going to state a couple of things for the avoidance of

25  doubt, although they should be obvious.  One is I reiterate for

* See 513 B.R. at 172 ¶¶. 16, 17 (GM - Planeof).

09-50026-mg   Doc 13397-2   Filed 08/27/15   Entered 08/27/15 12:33:20   Exhibit
09-50026-reg   Doc 13328   Filed 07/29/15   Entered 07/29/15 17:41:03   Main Document
Exhibit 1 - 7-16-15 Corrected Transcript   Pg 28 of 29
09-50026-reg   Doc 13330   Filed 07/29/15   Entered 07/29/15 06:58:49   Page 1
Pg 46 of 151
Page 28

```
 1    the 900th time that I have subject matter jurisdiction over

 2    this dispute.  As is apparent from everything that I've said,

 3    this applies only to this particular judicial admission in this

 4    particular wrongful death case, and has no bearing on anything
                                           Gary Peller
 5    that I ruled on April 15th or on the Gary Cutler (phonetic)

 6    matters [indiscernible].  It does however, mean that New GM has

 7    to defend this wrongful death case.  And if it doesn't like

 8    defending wrongful death cases when its local counsel admit

 9    things that maybe they shouldn't have been admitted to, it

10    should supervise its counsel more carefully.

11              That summarizes my rulings.  If New GM really wants

12    to appeal this, I reserve the right to issue a written opinion.

13    But as you all well know, I've got so many things beyond that

14    to deal with in GM and for that matter other cases on my watch,

15    that I'm not going to write on this unless I need to.

16              Mr. Babcock, you or your co-counsel can settle an

17    order in accordance with this ruling.  Not by way of

18    rearguments, are there any questions?

19              MR. STEINBERG:  Your Honor, will we have, can we have

20    the opportunity to make a submission, and I don't know whether

21    this is true or not, I would need to verify that at the time to

22    answer or amend, we had a right to amend the answer, that this

23    is not a judicial admission to give further briefing.

24              THE COURT:  There was plenty of time to focus on

25    these issues before today.  That's my ruling.
```

09-50026-mg   Doc 13397-2   Filed 08/27/15   Entered 08/27/15 12:33:20   Exhibit
09-50026-reg   Doc 13328-7   Filed 07/29/15   Entered 07/29/15 14:41:09   Main Document
Exhibit 43 - 7-16-15 Corrected Transcript   Pg 29 of 29
09-50026-reg 13360 13320M   Dated 07/29/tomentered 07/29/15 15:56:40g IDExhibit 1

Page 29
Pg 47 of 151

1          MR. STEINBERG:  All right.

2          THE COURT:  Mr. Steinberg, I have a zillion things on

3    my watch and I have to rely on lawyers dealing with issues in a

4    timely way.  We can't have do-overs after I've ruled.  I had

5    the same issue with a motion for rearguments now which is in

6    substance a do-over after I've ruled, I'm not going to invite

7    even more stuff of that character.  Anything else?

8          MR. BABCOCK:  Your Honor, I'm not familiar with how

9    the Court handles its orders.

10         THE COURT:  Do you want to stand please?  I take it

11   in most of the courts you would stand when you're talking to a

12   Judge?

13         MR. BABCOCK:  I'm sorry, Your Honor, I wasn't being

14   disrespectful.  Okay, at this point, the lawyers, would GM be

15   submitting a proposed order?  Is that, do I understand what

16   your instruction was or do you want me to prepare an order?

17         THE COURT:  I said you are to settle an order.  We

18   have local court rules in this Court to deal with the

19   settlement of orders.

20         MR. BABCOCK:  Okay, Your Honor.

21         THE COURT:  Okay.  Anything else?  Have a good day.

22   We're adjourned.

23         MR. WEISFELNER:  Your Honor, I apologize.  This is a

24   procedural housekeeping issue.  And let me see if I can't state

25   succinctly what the issue is.