2015 WL 1216541
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States Bankruptcy Court,
S.D. New York.

In re : Gregory Papadopoulos, Debtor.
Ray Zemon, Plaintiff,
v.
Gregory Papadopoulos, Defendant.

Case No. 12–13125 (JLG) | Adversary No. 12–01907 (JLG) | Signed March 13, 2015

**Attorneys and Law Firms**

PRESS LAW FIRM PLLC, Attorneys for Plaintiff Ray Zemon, 405 Lexington Avenue, 7th Floor, New York, New York 10174, By: Matthew J. Press, Esq.

GREGORY PAPADOPOULOS, Debtor/Defendant Pro Se, 2520 30th Road, Apt. 5H, Queens, New York 11102

## MEMORANDUM OPINION AND ORDER DENYING THE DEFENDANT'S MOTION FOR RECONSIDERATION

The Honorable James L. Garrity, Jr., United States Bankruptcy Judge

### Introduction

\*1 Ray Zemon (the "Plaintiff") commenced this adversary proceeding by filing a complaint seeking a judgment denying Gregory Papadopoulos, a *pro se* debtor (the "Debtor"), a discharge in bankruptcy under sections 727(a)(3) and (a)(4)(A) of the Bankruptcy Code, 11 U.S.C. §§ 727(a)(3) and (a)(4)(A). [ECF Doc. # 1][1] By motion dated July 15, 2014 (the "Summary Judgment Motion"), the Plaintiff sought summary judgment on his complaint pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr.P.") 7056 and Federal Rule of Civil Procedure ("FRCP") 56. [ECF Docs. ## 79, 80, 81, 82] On January 8, 2005, the Court (Grossman, J.)[2] issued an opinion (the "Opinion") granting the motion and directing entry of judgment against the Debtor.[3] The Court assumes familiarity with the Opinion for purposes of the discussion below.

On January 20, 2015, the Debtor timely sought reconsideration of the Opinion pursuant to a *Motion for Reconsideration* and *Adentum [sic] to Motion for Reconsideration* (collectively, the "Motion"). [ECF Docs. ## 101, 102] The Debtor contends that he is entitled to relief to correct errors of fact contained in the Opinion and because the Court erroneously relied on *Moreo v. Rossi* (*In re Moreo*), 437 B.R. 40 (E.D.N.Y.2010) ("*Moreo*") in the Opinion. The Plaintiff opposes the Motion, arguing that it is little more than a rehash of the arguments rejected by the Court in resolving the Summary Judgment Motion and thus not grounds for the relief the Debtor seeks. *See Opposition of Creditor Ray Zemon to Motion of Gregory Papadopoulos for Reconsideration* at 2–3. [ECF Doc. # 103] The Debtor does not contend that there has been an intervening change of controlling law, and does not point to evidence or other matters overlooked by the Court that would have altered the Opinion. Nor has the Debtor demonstrated a need to correct clear errors of fact or law in the Opinion–even in light of the liberal pleading standards that this Court accords the *pro se* Debtor.[4] Accordingly, as explained below, the Motion is **DENIED**.

### *Standard of Review*

\*2 Local Bankruptcy Rule 9023–1(a) provides:

> A motion for reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered. No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be reargued orally.

PLAINTIFF'S EXHIBIT 4

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

S.D.N.Y. L.B.R. 9023–1(a).[5]

The standard applicable to a motion for reargument or reconsideration is identical to a motion to amend a judgment under FRCP 59(e).[6] See *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 41 (2d Cir.1982) ("[W]here a post-judgment motion is timely filed and 'calls into question the correctness of that judgment it should be treated as a motion under FRCP 59(e), however it may be formally styled.'" (quoting *Dove v. Codesco*, 569 F.2d 807, 809 (4th Cir.1978))); *In re Jamesway Corp.*, 203 B.R. 543, 545 (Bankr.S.D.N.Y.1996) (A "motion for 'reargument' is properly in the nature of a motion for a new trial or for the amendment of a judgment pursuant to Fed.R.Civ.P. 59"); *see also* 10 Collier on Bankruptcy ¶ 9023.04 (15th ed. rev.2008) ("Any motion that draws into question the correctness of the judgment is functionally a motion under Rule 9023, whatever its label. Thus a motion to 'reconsider,' 'for clarification,' to 'vacate,' to 'set aside' or to 'reargue' is a motion under Rule 9023....").

Under FRCP 59(e), a court can revisit a prior decision based upon an intervening change in the controlling law, the availability of new evidence, to correct manifest errors of law or fact upon which the judgment is based, or to prevent manifest injustice. *Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 378 B.R. 54, 56–57 (Bankr.S.D.N.Y.2007) (citing *Cray v. Nationwide Mut. Ins. Co.*, 192 F.Supp.2d 37, 39 (W.D.N.Y.2001)). "The standard for granting ... a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 256 (2d Cir.1995) ("*Shrader*") (citing *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990); *Adams v. United States*, 686 F.Supp. 417, 418 (S.D.N.Y.1988)). In that way, the rule insures "the finality of decisions and ... prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y.1988); *see also Park South Tenants Corp. v. 200 Central Park Assocs., L.P.*, 754 F.Supp. 352, 354 (S.D.N.Y.1985) ("The standard for granting a motion for reargument is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court."). It also precludes repetitive arguments on issues that have already been considered by the court. *Ruiz v. Comm'r of Dep't of Transp.*, 687 F.Supp. 888, 890 (S.D.N.Y.), aff'd, 858 F.2d 898 (2d Cir.1988); *see also In re Taub*, 421 B.R. 713, 716 (Bankr.E.D.N.Y.1997) (A motion for reconsideration "is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion."). A motion for reconsideration is "limited to the record that was before the Court on the original motion." *Pereira v. Aetna Cas. & Surety Co. (In re Payroll Exp. Corp.)*, 216 B.R. 713, 716 (S.D.N.Y.1997) (quoting *Wishner v. Cont'l Airlines*, 1997 WL 615401, at *1 (S.D.N.Y. Oct. 6, 1997))).

*3 As noted, the Debtor contends that the Opinion is rife with factual errors and that the Court misplaced its reliance on *Moreo*. "A motion based on manifest errors of law or fact will not be granted except on a showing of some substantial reason. The burden is on the movant to demonstrate these manifest errors." *In re Crozier Bros., Inc.*, 60 B.R. 683, 688 (Bankr.S.D.N.Y.1986) (citing *Hager v. Paul Revere Life Ins. Co.*, 489 F.Supp. 317, 321 (E.D.Tenn.1977), aff'd without opinion, 615 F.2d 1360 (6th Cir.1980); *Solar Laboratories v. Cincinnati Adver. Prods. Co.*, 34 F.Supp. 783, 784 (S.D.Ohio 1940), appeal dismissed, 116 F.2d 497 (6th Cir.1940).

*Analysis*

**1. *Alleged Errors of Fact***
The Debtor contends that, in the Opinion, the Court relied on "fraudulent unsworn factual misrepresentations and trickery" by the Plaintiff and ignored or overlooked documents submitted in opposition to the Summary Judgment Motion.[7] *See* Motion at 1. Neither contention supports the Debtor's claim for relief under FRCP 59(e). Contrary to the Debtor's assertion, the Court based its findings in the Opinion on evidence in the record–much of it consisting of the Debtor's deposition testimony and responses to the Plaintiff's interrogatories. Moreover, the Debtor does not point to specific facts or legal arguments in the documents that the Court allegedly overlooked, let alone those that, if considered, would reasonably be expected to alter the Opinion.[8]

Debtor next points to portions of the Opinion that he says contain factual errors warranting FRCP 59(e) relief. Here, as above, Debtor neither demonstrates that the Court's findings are clearly erroneous, nor points to evidence or other matters that, if properly applied, could alter the Opinion. Rather, the Debtor seems intent on relitigating matters already decided by the Court in the Opinion. That is plainly prohibited by FRCP

59(e). *See Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."); *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998) ( *"Sequa Corp."*) ("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'...."). The Court considers each of the Debtor's contentions below.

*4 On Page 3 of the Opinion, the Court stated that "[t]he Debtor's assets included ... a 100% ownership interest in Revcon, Inc./Revcon, LLC, his proprietary trading firm." Opinion at 3. As support for that finding, the Court relied on the Debtor's sworn deposition testimony. *Id.* (citing Papadopoulos Depo. 162:7–17).[9] Nonetheless, the Debtor contends that the finding is "false" and is "clearly contradicted" by affidavits dated October 10, 2014 and October 19, 2014, respectively [ECF Docs. # # 98, 99], that the Debtor submitted in opposition to the Summary Judgment Motion.[10] *See* Motion at 1. Those affidavits provide no support for the Motion because the Debtor is plainly taking a "second bite at the apple" in contravention to FRCP 59(e) and, in any event, the Court properly disregarded the affidavits in rendering the Opinion. *See, e.g., Schwimmer v. SONY Corp. of Am.*, 637 F.2d 41, 45–46 (2d Cir.1980) (on motion for summary judgment, court "could properly rely on Schwimmer's earlier deposition testimony, as opposed to his later conflicting hearsay affidavit"); *Perma Research & Dev. Co. v. Singer Co.*, 310 F.2d 572, 577 (2d Cir.1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

On Page 3 of the Opinion, the Court stated:

> [t]he Debtor admits to having had numerous bank accounts, including accounts with Bank of America, Caisse D'Epargne, Capital One, Citibank, Commerzbank, Société Générale, TD Bank, and Washington Mutual.... The Debtor also admits having had brokerage accounts with over twenty institutions.

Opinion at 3. As support for that finding, the Court relied on the Debtor's responses to the Plaintiff's interrogatories. *Id.* (citing Debtor's First Interrog. Resps. ¶¶ 1–2).[11] The Debtor does not point to a specific error by the Court in relying on his interrogatory responses. The Debtor contends that the Court erred in focusing on the enumerated bank accounts since they either were not in his name or were closed more than one year prior to the petition date.[12] The Debtor made the same argument in opposition to the Summary Judgment Motion. *See* Summ. Judg. Opp'n[13] at 15–16 ("Since 2010, two years prior to filing, I was signatory in the same two active bank accounts, one with Citibank in the name of Revcon Retirement, and one with Chase in the name of Revcon LLC. A personal bank account with Chase in the name of Greg Palos was opened in 2006 and became inactive in January 2010.... Chapter 7 Bankruptcy was filed by Gregory Papadopoulos and not by Revcon LLC or Revcon Retirement Plan."). As such, it provides no support for the Motion. *See Shrader*, 70 F.3d at 257; *Sequa Corp.*, 156 F.3d at 144; *see also Padilla v. Maersk Line, Ltd.*, 636 F.Supp.2d 256, 259 (S.D.N.Y.2009) ( *"Padilla"*) (noting that arguments "previously considered and rejected" by the court "may only be properly addressed on appeal").

*5 On Page 3 of the Opinion, the Court stated:

> In addition, the Debtor admitted in his supplemental responses to the Plaintiff's interrogatories that he engaged in substantial trading activity within the two years prior to filing for bankruptcy. For example, the Debtor admitted that his ex-wife invested $125,000 in a trading account operated by the Debtor in January 2012, which the Debtor admits was "extremely profitable".... None of the foregoing assets or trading activities were disclosed in the Debtor's schedules or statement of financial affairs.

Opinion at 3 (citations omitted). The Debtor states that "[t]his event has been described to this court numerous times." Motion at 3. He argues that the trading activity did not result in income to him and did not need to be disclosed.[14] *Id.* The Debtor does not does not point to any fact or legal principle overlooked by the Court in concluding that his failure to disclose those assets supports denial of his discharge. Rather, Debtor merely rehashes arguments previously made in opposition to the Summary Judgment Motion. *See* Summ. Judg. Opp'n at 34 ("In fact when my

ex-wife put $125,000 in an account in her name and gave trading authorization, Zemon and [his attorney] trough [sic] subpoenas, restraining orders and harassment insured that the account closed within two months. During these two months the account made some money but I received no income, and reported to the IRS no income. So: what is to report in the Bankruptcy forms?"). This plainly violates FRCP 59(e)'s prohibition against relitigating matters already considered by the Court. See Shrader, 70 F.3d at 257; Sequa Corp., 156 F.3d at 144; see also Padilla, 636 F.Supp.2d at 259.

*6 On Pages 3 and 4 of the Opinion, the Court stated:

> According to his deposition, the Debtor owns at least four computers, a number of external memory devices, and various email addresses that he used in connection with his business.... However, the Debtor contends that none of his computers or emails contain any electronic files or documents relevant to his financial condition.

Opinion at 3–4 (citations omitted). The Debtor contends that he has no electronic records other than privileged legal research.[15] The Debtor simply repeats his prior explanation for why he did not produce responsive electronic files or financial records. See Summ. Judg. Opp'n at 31 ("There were no electronic documents responsive to [the Plaintiff's] requests. For example email is used to transmit legal research from a law library to my home computer.... I am my own Attorney and as such I am protected by the Attorney Client Confidentiality Principal [sic] and the broader Work Product Doctrine."). This too plainly violates the rule prohibiting a party from revisiting old arguments in a FRCP 59(e) motion. See Shrader, 70 F.3d at 257; Sequa Corp., 156 F.3d at 144; see also Padilla, 636 F.Supp.2d at 259.

On Page 4 of the Opinion, the Court stated:

> On June 24, 2013, former Judge Peck issued an order compelling the Debtor to produce all hard copy and electronic documents responsive to the Plaintiff's interrogatories and production requests. Despite admitting to having numerous domestic and foreign bank and brokerage accounts, the Debtor failed to produce any underlying records documenting the alleged dissipation of his wealth in contempt of the Court's order.

Opinion at 4 (citation omitted). The Debtor disputes that finding. He contends that, in responding to the Plaintiff's interrogatories, he produced copies of "account numbers, voided checks, copies of debit cards, as well as numerous adverse decisions issued by [various courts]." Motion at 5. He maintains that he sent the interrogatory responses, together with exhibits consisting of documents supporting those responses, to the Clerk's Office. Id. He says that the Clerk docketed the interrogatory responses, but not the exhibits, and that the Clerk is in possession of the exhibits. Id. ("Defendant's responses and exhibits to interrogatories were submitted to the Court and docketed as ECF Doc. # 23. The Clerk's Office docketed the responses but not the exhibits as they were deemed confidential. The exhibits and all account information must be in the Court's file as definitive proof that Defendant properly responded to [the] interrogatories and production of documents request."). This allegation is new; the Debtor did not raise it in his opposition to the Summary Judgment Motion. Therefore, it is outside the scope of FRCP 59(e). See Schonberger, 742 F.Supp. at 119 ("[A] party making a motion for reargument may not ... advance new facts or arguments not previously presented to the Court."); see also Payroll Exp. Corp., 216 B.R. at 716 (Motions for reconsideration are "limited to the record that was before the Court on the original motion." (citation omitted)).[16]

*7 On Page 4 of the Opinion, the Court stated that, "[t]hroughout his bankruptcy case, the Debtor has filed numerous papers alleging a vast conspiracy between the FBI, members of the so-called 'Palm Beach Mafia,' and others to bring about the Debtor's financial ruin." Opinion at 4. The Debtor contends that the Court failed to address these arguments.[17] Motion at 6. However, the Court considered and rejected the arguments, stating that other courts have described the Debtor's claims as "frivolous, irrational, and, at times, incomprehensible" and "fanciful, fantastic, and delusional." See Opinion 4, n.2. As the Court addressed and rejected these claims, and Debtor has failed to demonstrate manifest error in the Court's doing so, they are an inappropriate basis for reconsideration. Shrader, 70 F.3d at 257; Padilla, 636 F.Supp.2d at 259.

On Page 7 of the Opinion, the Court stated that the Debtor "failed to maintain and produce adequate records of his business activity and financial affairs." Opinion at 7. The

Debtor does not point to evidence allegedly overlooked by the Court in reaching that conclusion. Rather, the Debtor contests the Court's finding and argues that, given his financial hardships, he was unable to preserve all of his financial records.[18] The Debtor made similar arguments in opposition to the Summary Judgment Motion. *See* Summ. Judg. Opp'n at 19 ("Since 1997 because of Zemon and his Gang I had to move 48 times. Zemon wants this bankruptcy dismissed because I was not able to preserve 100% of these 1,000,000 pages [of records] dating back to 1986–2008. Zemon ... knows the volume of paper that existed in 2006. So cleverly he wants this bankruptcy dismissed for failing to move 1,000,000 pages from apartment to apartment 48 times since 1997."). As such, they provide no support for his Motion. *Shrader*, 70 F.3d at 257; *Sequa Corp.*, 156 F.3d at 144; *see also Padilla*, 636 F.Supp.2d at 259.[19]

II. *Alleged Errors of Law*

*8 The Debtor also complains that the Court relied "exclusively" on *Moreo*, 437 B.R. 40, in granting summary judgment. Motion at 8. Although the Debtor correctly contends that the facts of *Moreo* are distinguishable from those in this case, the differences are irrelevant. The Court relied on *Moreo* as support for well-settled legal principles plainly applicable to this case, not for fact-specific matters unique to *Moreo*. The Debtor has not shown that the Court erred in relying on *Moreo*, much less "manifest error" of the type warranting reconsideration under FRCP 59(e). We review the Court's use of *Moreo* below.

First, on pages 7 and 8 of the Opinion, the Court stated:

> As the Plaintiff has satisfied his initial burden, the burden shifts to the Debtor to justify the deficiencies in his record keeping. The Debtor has repeatedly maintained that he did not keep any financial records other than those already provided to the Plaintiff. However the Debtor is a sophisticated businessman, formerly employed as an options trader and arbitrageur subject to the scrutiny of regulators and self-regulated organizations. He therefore can offer no sufficient justification for his failure to maintain and disclose even basic records of his business activities and financial accounts, including bank statements. "Debtors have a duty to preserve those records that others in like circumstances would ordinarily keep.... Hence, the debtor's honest belief that he does not need to keep the records in question, or that his records are sufficient, or his statement that it is not his practice to keep additional records, does not constitute justification for failure to keep or preserve records under § 727(a)(3)." *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 53 (E.D.N.Y.2010).

Opinion at 7–8. The Debtor does not contest the accuracy of the Court's quote or contend that *Moreo* does not stand for proposition cited. Indeed, *Moreo* merely recites the well-settled law in this Circuit. "It has long been the law that the privilege of a discharge depends upon the debtor's disclosure of a true and accurate picture of his financial affairs." *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1309 (2d Cir.1996). Debtors may not excuse the failure to maintain records by arguing that they simply did not keep records or by claiming that their records are sufficient. *See, e.g.,Aid Auto Stores, Inc. v. Pimpinella (In re Pimpinella)*, 133 B.R. 694, 698 (Bankr.E.D.N.Y.1991) ("The debtor must do more than profess a belief that his records were sufficient or that it was not his practice to keep additional records.... Any attempt to justify the failure to keep records must show that the circumstances were in fact so unusual that ordinary record keeping was not required.").

Second, the Court stated that, for purposes of § 724(a)(4)(A), "[a] debtor's bankruptcy petition and the accompanying schedules and statement of financial affairs constitute statements under oath." Opinion at 8 (quoting *Moreo*, 439 B.R. at 59). Again, the Debtor does not challenge accuracy of the quote or the well-settled legal principle. *See, e.g.,Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr.S.D.N.Y.1994) ("A debtor's petitions and annexed schedules can constitute a statement under oath for purposes of § 727(a)(4)(A)."); *MacLeod v. Arcuri (In re Arcuri)*, 116 B.R. 873, 880 (Bankr.S.D.N.Y.1990) (holding that § 727(a)(4)(A) "clearly extends" to documents filed under oath such as schedules and statements of financial affairs).

Third, the Court cited *Moreo* for the proposition that, for the purpose of § 727(a)(4)(A), "an objecting creditor has the initial burden of producing persuasive evidence of a false statement or omission." Opinion at 9 (citing *Moreo*, 437 B.R. at 62). This, too, is well-settled. *See, e.g.,Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 461 (Bankr.S.D.N.Y.2008) ("Once the plaintiff meets its initial burden to produce persuasive evidence of a false statement, the burden of production shifts to the debtor to produce a credible explanation."); *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 662 (Bankr.S.D.N.Y.2008) ("[O]nce the objecting creditor has produced persuasive evidence of a false statement, the burden shifts to the debtor

09-50026-mg  Doc 13397-5  Filed 08/27/15  Entered 08/27/15 12:33:20  Exhibit
                    Exhibit 4 - Zemon v. Papadopoulos  Pg 6 of 9

to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanation."); *Adler v. Ng (In re Adler)*, 395 B.R. 827, 841 (E.D.N.Y.2008) (same).

*9 Fourth and finally, the Court stated that, for purposes of § 727(a)(4)(A), "fraudulent intent may be inferred from a series of incorrect statements and omissions contained in the [debtor's] schedules," and "while subsequent disclosure before an objection to discharge is filed may be some evidence of innocent intent, ... the effect of a false statement is not cured by correction." Opinion at 9 (quoting *Moreo*, 437 B.R. at 62). Again, there is substantial support for the Court's legal conclusion. *See, e.g., Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 882 (Bankr.S.D.N.Y.1994) ("[F]raudulent intent may be inferred, for purposes of a § 727(a)(4)(A) objection, from a debtor's reckless indifference to or cavalier disregard of the truth."); *In re Diorio*, 297 F.Supp. 842, 845 (2d Cir.1968) ("[A] false statement in schedules is not 'cured' by the bankrupt's subsequent disclosure...."); *In re Tabibian*, 289 F.2d 793, 797 (2d Cir.1961) ("The referee felt that the false answer in the petition was 'cured' by [the debtor's] subsequent testimony at the first meeting of creditors. As a 'rule of law,' stated broadly, the referee was incorrect.").

*Conclusion*

Based on the foregoing, the Motion is **DENIED**.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2015 WL 1216541

Footnotes

1   References to ECF docket entries refer to the electronic docket maintained in the above-captioned adversary proceeding, No. 12–01907.
2   This adversary proceeding was initially assigned to Bankruptcy Judge James M. Peck. After Judge Peck's retirement on January 31, 2014, the case was temporarily reassigned to Judge Robert E. Grossman, sitting by designation in the Southern District of New York pursuant to an order signed on January 6, 2014 by Chief Judge Robert A. Katzmann of the Second Circuit. On February 18, 2015, the proceeding was reassigned to the undersigned.
3   *See Memorandum Decision Granting the Plaintiff's Motion for Summary Judgment* [ECF Doc. # 100].
4   In *In re Enron Corp.*, 352 B.R. 363 (Bankr.S.D.N.Y.2006), the court noted the leeway that courts accord *pro se* litigants, as follows:
    The Motion is a *pro se* pleading, and as such, it will be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Courts are instructed to "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). *Pro se* status, however, "does not exempt a party from compliance with the relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).
    352 B.R. at 366.
5   Local Rule 9023–1(a) derives from former Local Bankruptcy Rule 13(j) and is an adaptation of Civil Rule 6.3 of the Local District Rules. *See* S.D.N.Y. L.B.R. 9023–1 cmt. The Motion was returnable before the Court on February 24, 2015. The Court declined to hear argument on the Motion.
6   Fed. R. Bankr.P. 9023 incorporates FRCP 59. *See*Fed. R. Bankr.P. 9023.
7   The Debtor identified the following documents that the Court allegedly ignored or overlooked:
    • Defendant's Opposition to Motion for Summary Judgment [ECF Doc # 86];
    • Undisputed Facts [ECF Doc. # 87];
    • Memorandum of Law In Opposition to Plaintiff's Motion for Summary Judgment [ECF Doc. # 88];
    • Crossmotion [sic] Seeking Sanctions Against Zemon [ECF Doc. # 89];
    • Letter of Gregory Papadopolous to the Court dated October 6, 2014 [ECF Doc. # 94];
    • Defendant's Sur-reply Afidavit [sic] in Opposition to Plaintiff's Motion for Summary Judgement [sic] and Additional Demand for Sanctions [ECF Doc. # 95];
    • Suporting Afidavit [sic] on the History of Revcon as It Relates to this Bankruptcy [ECF Doc. # 96];

- Suplamental [sic] Affidavit on the Issue of Ownership of Revcon LLC in Opposition to Zemons [sic] Letter Dated October 10, 2014 [ECF Doc. # 98]; and
- Suporting Afidavit [sic] on the History of Revcon as It Relates to this Bankruptcy [ECF Doc # 99].

See Motion at 1.

8   In the addendum to the Motion [ECF Doc. # 102], the Debtor seeks to supplement the record with two documents. The first is a copy of a picture of what the Debtor says are books and records of Revcon LLC, Revcon Inc., and Revcon Retirement Plan, including check books, debit cards, credit cards, account monthly statements, financial diaries, and other documents that he claims he produced to the chapter 7 trustee at the section 341 creditors' meeting. The second is a copy of a list of documents that the Debtor delivered to the chapter 7 trustee's office. The questionable probative value of those documents aside, the Court will not consider them in ruling on the Motion, since the Debtor is prohibited from supplementing the record. See Payroll Exp. Corp., 216 B.R. at 716.

9   "Papadopoulos Depo." refers to the transcript of the deposition of Gregory Papadopolous taken on October 1, 2013. A copy of the deposition transcript is attached to the Declaration of Matthew J. Press (the "Press Declaration") as Exhibit 2.

10   In substance, in those affidavits, the Debtor avers that he never held more than a 70% interest in Revcon. See Debtor's Supp'l Aff. ¶ 1 ("Revcon Associates Inc., a NYS S Corporation, was formed in late 1985. There were 3 partners with Papadopoulos owning 70%."). The Debtor "bought out" the other equity partners in 1987 and immediately assigned a 40% interest to his ex-wife. Id. ¶ 2. The Debtor contends that the Court's allegedly erroneous conclusion that he owned 100% of Revcon was "fundamental" to the Court's denial of his discharge. Motion at 1. However, the exact amount of the Debtor's ownership interest in Revcon was not germane to the Court's conclusion that the Debtor failed to disclose the interest. On Page 9 of the Opinion, the Court made clear that there is a dispute over the exact amount of the Debtor's ownership interest and specifically noted that the amount of his interest "is not a question to be resolved on summary judgment." Opinion at 9, n.4.

11   "Debtor's First Interrog. Resps." refers to Debtor's Responces [sic] to Interogatories [sic] Requested by Zemon dated March 2, 2013. A copy of the responses is attached to the Press Declaration as Exhibit 3.

12   In relevant part, the Debtor contends:

Question in interrogatories asked: "...*Provide all documents and communications concerning any bank (and brokerage) or trust account in the name of Gregory Papadopoulos, Gregory Palos, Revcon, Revcon Retirement Plan, or any entity owned or controlled by any of the foregoing anywhere in the world***from January 2002 to the present**..." Since the question was requesting 12 years old information Defendant listed as many relationships as he could recall with financial institution [sic] and provided all documents in "his possession custody and control" as required by federal discovery rules [....]

In compiling Bankruptcy forms, Debtor filed Chapter 7 Bankruptcy on behalf of himself and not Revcon Inc [sic] or LLC or Revcon Retirement, and properly answered the questions as if they were pertaining to himself. In Schedule B Personal property the question is: "*1. List (property in) checking, savings, or other financial accounts etc.*" and Debtor properly claimed he had no accounts in his name. The question was in the present tense requesting disclosure of currently existing accounts.

In the Statement of Financial Affairs question # 11 asks: "*List all closed financial accounts ... held in the name of the Debtor ... which were closed ... within one year ... preceding this case ...*" Again, this was left blank since no accounts qualified to be listed.

Motion at 2 (emphasis original; bracketed ellipses added).

13   "Summ. Judg. Opp'n" refers to Defendant's Opposition to Motion for Summary Judgment.

14   In relevant part, the Debtor asserts:

In January 2012 Defendant's ex-wife invested $125,000 in an account with TD Ameritrade and gave Defendant limited trading authorization. Limited means Defendant can enter orders but had no authority to withdraw funds. The account was exclusively in Ms. Claire Burke's name defendant's ex-wife.... The account made approximately $9,000 over three months. When [the Plaintiff's attorney] issued restraining orders and subpoenas to TD Ameritrade trying to illegally restrain the account, the firm not wishing to be involved, closed the account and returned $134,000 to Ms. Burke (ex-wife) in April 2012. Three months later on July 18 2012 Defendant filed Chapter 7 and filled the schedules based on information available to him at the time....

The Court claims this activity should have been listed in the forms but fails to state where and remains vague. Such activity does not belong in "Statistical Summary" or schedule I because it is not income. It does not belong in Sch. B, C, G, because it is not property of the Debtor. It does not belong in SOFA 1 and 2 because it is not income. It clearly does not belong in SOFA 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25

because it is not a busiess [sic]. ***So obviously not even the Court knows where such activity should have been listed on July 18, 2012 based on the information available at the time.***

A business is defined as an economic activity intended and expected to generate income for the entrepreneur. Buying lottery tickets is not a business although it could be extremely profitable. Buying or selling a stock or an option or a future from home is not a business although again it could be profitable. Especially buying and selling securities in another party's account with no personal profit motive is definitely not a business and obviously there was nothing to report in bankruptcy forms.

Motion at 3–4 (emphasis original).

15   In the Motion, the Debtor states:

Question is why does this Court finds [sic] it so difficult to believe Defendant's sworn statements without a trial? Defendant since 1985 kept accurate financial diaries and saved some necessary financial statements. Starting 1998 due to some 50 changes of residential addresses it became impossible to retain more than 3 year old statements. All financial information is in the financial diaries and up to 3 year old statements are available and have been provided. One computer is used for Google searches, legal research (not discoverable), legal document storage (not discoverable) and some monitoring of the financial markets. No financial information is stored in the computer. Three laptops were used for the same purposes during travel and have not been used since 2007. External storage devices are used to save duplicate copies of legal documents and are not discoverable. So there is nothing responsive to [the Plaintiff's counsel's] request for electronic financial documents. So the question remains why is this court, not only does not believe any of Defendant's sworn statements, but desperately wants to believe any unsworn fraudulent allegation by [Plaintiff's counsel] without trial.

Motion at 4–5.

16   In any event, the Court questions the accuracy of the Debtor's assertions. The document referred to at ECF Doc. # 23 is the Debtor's *Responces [sic] to Court Ordered Interrogatories by Defendant* dated June 27, 2013 ("Debtor's Second Interrog. Resps."), which contains the Debtor's responses to 22 interrogatories propounded by the Plaintiff. The Debtor does not purport to annex exhibits or other documents to those responses, and in those responses does not refer to documents other than those he previously produced. *See* Debtor's Second Interrog. Resps. ¶¶ 1, 2, 15. The Debtor does not contend anywhere in those responses that he intended to file documents in the Clerk's Office. To the contrary, in his "Final Comments" to the responses, he asserts:

There are no documents stored electronically other than non-discoverable litigation related documents. There are no other financial records available in my possession. You know how to issue subpoenas for more information. Anything else has been made available for your inspection on June 21, 2013 after the court hearing.

I have nothing further. I am available for a deposition during which I can perhaps easier provide lengthy explanations and more details about facts. I can appear on a three day notice at a court house or other public building and I can bring with me anything in my possession you wish to inspect. I am not available July 17, 2013.

Debtor's Second Interrog. Resps. at 5.

17   The Debtor asserts:

The Court however provides no explanation why some 60 prior civil cases were all assigned to Judges formerly in criminal justice and close friends of high level FBI officials, or Judges from the Caribbean with offshore connections and accounts that the Fanjul Crime Family could secretly bribe. It also provides no explanation why two recent appeals to the District Court were assigned to Judge Failla ... formerly with the SDNY U.S. Attorney's office Criminal Division and FBI Director Comey's former protégé and employee (Comey was her boss for many years), and Judge Edgardo Ramos.... It provides no explanation why for two and a half years Defendant had to leave [sic] a few doors away from former U.S. Attorney General Mukasey and as result suffered severe injuries. And last it provides no explanation why Judge Peck, a Judge whose integrity nobody could possibly question, just quit the bench and went back to private practice. He even abandoned the Lehman case and some 235 Lehman adversarial proceedings. As he was dashing out of his 9 year Courtroom where Lehman was being litigated he labeled Zemon's case the elephant in his Court room and obviously felt he could not possibly administer justice in a case where FBI protected Organized Crime was the adversary.

Motion at 6.

18   In relevant part, the Debtor contends as follows:

The Court does not seem to realize that for the two years prior to filing bankruptcy Debtor was defending himself in minor criminal allegations, was incarcerated and detained for six months, lived month to month on $1,300 Social Security and $190 food stamps, occasionally sold some furniture and decorative items at ebay and yard sales to

make ends meet, and controlled a $1,000–3,000 futures account in the name of Revcon/Retirement. During this period, perhaps once a month did a trade in that account. On June 2011 total cash resources were less than $1,000. In early January 2012 total cash recourses increased to about $6,000 due to accumulated past due Social Security payments while incarcerated and detained. Debtor provided monthly statements of the bank account where the Treasury was depositing his retirement check, monthly statement of the Revcon account, tax returns, and financial diaries. All these documents were received and are annexed as exhibits by the Plaintiff. The Court is vague and does not state what is missing because given this level of complexity nothing is missing. In other cases, such as in *Moreo* the courts have always been specific in stating what was missing.

Motion at 6–7.

19   The Debtor also reads the Opinion to state that the Debtor "does not 'explain the dissipation of the Debtor's assets,'" and argues that "[n]othing is further from the truth." Motion at 7. However, the relevant portion of the Opinion actually reads as follows:

[The Debtor] failed to maintain and produce adequate records of his business activity and financial affairs, even when expressly ordered by the Court to do so. Such records are necessary to explain the dissipation of the Debtor's assets and to reasonably ascertain the Debtor's financial condition.

Opinion at 7. To the extent Debtor contests that determination, Debtor is seeking to relitigate matters previously heard by the Court. That is not grounds for relief under FRCP 59(e). *Shrader,* 70 F.3d at 257; *Sequa Corp.,* 156 F.3d at 144; *see also Padilla,* 636 F.Supp.2d at 259.

---

End of Document                                         © 2015 Thomson Reuters. No claim to original U.S. Government Works.