Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 09-50026-REG

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6    MOTORS LIQUIDATION COMPANY

7              Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

9                          United States Bankruptcy Court

10                         One Bowling Green

11                         New York, New York   10004-1408

12

13                         July 16, 2015

14                         9:48 AM

15

16

17

18

19

20

21

22    B E F O R E:

23    HONORABLE ROBERT E. GERBER

24    U.S. BANKRUPTCY JUDGE

25    ECRO:  K. HARRIS

1    Hearing Re:  No Stay Pleading

2

3    Hearing Re:  Motion to Strike Certain Documents Contained in

4    Appellants' Designation of Items to be Included in the Record

5    on Appeal

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Theresa Pullan

Page 3

1   A P P E A R A N C E S :

2

3   KING & SPALDING

4        Attorneys for General Motors

5        1185 Avenue of the Americas

6        New York, NY  10036-2601

7   BY:  ARTHUR STEINBERG, ESQ.

8

9   THE MASTROMARCO FIRM

10        Attorneys for the Estate of Kathleen Pillars

11   BY:  RUSSELL C. BABCOCK, ESQ.

12

13   AKIN GUMP

14        Attorneys for General Motors

15        One Bryant Park

16        New York, NY  10036-6745

17   BY:  DEBORAH NEWMAN, ESQ.

18

19   GIBSON DUNN

20        Attorney for Motors Liquidation Company GUC Trust

21        200 Park Avenue

22        New York, NY  10166-0193

23   BY:  KEITH R. MARTORANA, ESQ.

24

25   MR. WEISFELNER

```
                                                    Page 4
  1                    P R O C E E D I N G S

  2            THE COURT:  I want to get appearances, and then I

  3    have some comments.

  4            MR. BABCOCK:  Good morning, Your Honor, Russell

  5    Babcock, I'm here on behalf of the estate of Kathleen Pillars.

  6            THE COURT:  Mr. Babcock that is.

  7            MR. BABCOCK:  Yes.

  8            THE COURT:  Okay.  I thought I saw a different name

  9    on the papers, Mr. Babcock.

 10            MR. BABCOCK:  Yes, Mr. Markell is a lawyer, while he

 11    is a partner of the firm I am employed with, I filed an

 12    appearance too so I could argue the motion today.

 13            THE COURT:  Okay, sure.  Mr. Steinberg.

 14            MR. STEINBERG:  On behalf of the New General Motors,

 15    and I'm with Mr. Davidson.

 16            THE COURT:  Okay.  Folks, you don't need me to tell

 17    you about the similarities between this case and Deutsch.  But

 18    there is a twist in it that I need you to address which neither

 19    of you dealt with as directly as I would have liked in the

 20    papers.

 21            Mr. Babcock, Mr. Mastramarcos's brief recognized my

 22    earlier ruling in Deutsch which is quite obviously directly on

 23    point.  And he tried to get around that, not by saying that

 24    Deutsch was improperly decided, but relied on a different kind

 25    of argument, although he didn't use what I would have thought
```

Page 5

1   would be the right words to describe it.

2         The premise was that because whoever had filed the

3   removal petition in the answer in the State Court action which

4   I think was Michigan, certainly wasn't in this district, had

5   relied on the earlier version of the sale agreement.  We had

6   apparently said execution copy, but was amended by our first

7   amended filed on June 30th, 2009, that this might be an

8   occurrence even though I had moved in Deutsch that the death of

9   a victim after a car wreck wasn't either an accident or an

10  incident.  But you didn't flesh out the law of, didn't mention

11  the key words, judicial estoppel, trying to rely on some kind

12  of admission.

13        And it seems to me in essence what you and Mr.

14  Mastramarco are asking me to do is to rely on a wrong version

15  of the sale agreement.  I got a couple of problems with that:

16  a) I didn't know how a guy in my position could responsibly

17  rely on what he knows to be the wrong agreement, and as a

18  matter of Second Circuit law, thought it's not unique to the

19  Second Circuit because the Supreme Court has said it as well.

20  To make out judicial estoppel, you need to have a couple of

21  things: one is materially different statements, and second,

22  reliance by the tribunal on the statement by the opponent.

23        New GM used the wrong language as far as I can tell.

24  I will allow Mr. Steinberg to be heard if he wants to correct

25  me on that, but it wasn't materially wrong at least at the

09-50026-mg   Doc 13399   Filed 07/30/15   Entered 08/27/15 15:52:04   Main Document
Pg 6 of 62

Page 6

1    time, and more importantly, there's no reliance by me on that,

2    and then third, of course, what the agreement says is the

3    evidence of what it says, not what a lawyer says about what the

4    agreement says.  So I need help from you on that.

5         Conversely, Mr. Steinberg, I'll need some help from

6    you as to why either [indiscernible] there seemed to be

7    reliance on the old language rather than the new, and why the

8    issue that I just articulated wasn't raised.  Once I rely on

9    the proper language in the agreement, and I got to tell you Mr.

10   Babcock that I think you'd have to throw a Hail Mary to

11   convince me that I should rely on the wrong language.  So you

12   can tell me whether you think Deutsch was wrongly decided, and

13   materially wrongly decided being mindful of what I said in

14   quite a number of published decisions, that the interest of

15   predictability in the Southern District of New York is of great

16   importance and that the absence of manifest error I follow the

17   decisions, I follow bankruptcy Judges in this district and of

18   course I follow my own.

19        So strictly speaking, it's your motion, Mr. Babcock,

20   so I'll hear from you first, and then Mr. Steinberg with the

21   usual reply.

22        MR. BABCOCK:  Your Honor, Russell Babcock here on

23   behalf of the estate of Kathleen Pillars.  I guess the problem

24   as we see it from the New GM's perspective is that parties can

25   and do quite often waive defenses or arguments that they may

Page 7

1    otherwise have.  Why do I think that's important here?  Your

2    Honor, there has been no evidence to suggest that this was an

3    error on the part of New GM.  New GM like anyone can take on

4    whatever obligations they want to.  If they want to rely on

5    different contractual language they can do so.  And in fact,

6    that takes it outside the purview.  We're not asking the Court

7    here to make any changes to its rulings as to these, as to the

8    subsequent agreements.  We're saying that New General Motors

9    has made admissions, in fact they've even used the words

10   admissions in their complaint, and not just once, Your Honor,

11   in paragraph 17, but I mean paragraphs 22, 27, 29, 31 through

12   34, 36, 37, 39 through 44, 46 and onward.  There's at least 40

13   times where they make the same admission or incorporate the

14   same admission I should say.

15          And for them to come in here, and this case as Your

16   Honor pointed out was an Eastern District of Michigan under

17   Sixth Circuit rules courts, parties are bound by the statements

18   of their attorneys and especially in the context of pleadings.

19   As Your Honor is well aware of Federal Rules of Civil

20   Procedure, when you answer a complaint you either make a denial

21   or an admission.  In this case they made an admission, and not

22   only that but they made it in the notice as well.  There's been

23   no authority cited by New GM which disputes what I've just

24   said.  They say we didn't really mean it.  That's not

25   authority, that's an unsupported assertion.

Page 8

1           And then, Your Honor, I guess with regards to the,

2     and I guess I want to make sure we flush out the Deutsch

3     opinion.  There is a couple of key language that appeared in

4     the subsequent version that I think is important, besides the

5     fact that it did not have or other distinct and discrete

6     occurrences which the court noted in its opinion.  Also in the

7     version that New GM is not relying upon in this particular

8     context, in this particular case, it doesn't have the first

9     occurring language which also the Court found important in the

10    Deutsch opinion as well.

11           THE COURT:  Doesn't first occurring appear in both

12    versions?

13           MR. BABCOCK:  Not in the excerpt that they've, well

14    see they did quote the language they're relying on in their

15    answer.  And in fact if you look at paragraph, page 4 to

16    exhibit 2 to their notice of removal, they quote the language

17    that they're standing --

18           THE COURT:  My bundle doesn't include that document.

19    Can you hand up what you're making reference to after showing

20    it to Mr. Steinberg?

21           MR. BABCOCK:  Sure, I can hand you this document,

22    Your Honor.

23           THE COURT:  And this is from the removal petition?

24           MR. BABCOCK:  Yeah, it's from the removal.  May I

25    approach the bench, Your Honor?

Page 9

1           THE COURT:  Yes sir.

2           MR. BABCOCK:  Okay.  That language is from the page 4

3    of the notice of removal.  And as Your Honor can see, the

4    language that they're representing to the District Court of the

5    Eastern District of Michigan is this is what controls the

6    situation from our perspective.  And --

7           THE COURT:  Give me a second to reach it.  Was

8    withdrawn by a Thomas P. Branigan of Bowman and Brook in

9    Bloomfield Hills, Michigan, attorney for New GM.

10          MR. BABCOCK:  And I believe Your Honor --

11          THE COURT:  Do you need this back?

12          MR. BABCOCK:  I was going to reference it, Your

13   Honor.  I can get -- all right.  And again, Your Honor, if you

14   don't have, I apologize if you didn't get these documents, Your

15   Honor.  And again, Your Honor, in paragraph 17 to the answer to

16   our amended complaint, now, that was marked I believe -- hold

17   one second here -- as exhibit 4 to our pleading, I don't know

18   if Your Honor has that as well.  It says here, and I think it's

19   the same language.  It says:  all liabilities to third parties

20   for death, personal injury or other injury to persons or damage

21   to property caused by motor vehicles designed for operation on

22   public roadways or by the component parts of such motor

23   vehicles and, in each case, manufactured, sold, or delivered by

24   sellers (collectively) "product liabilities" which arise

25   directly out of accidents, incidents -- excuse me -- accidents,

Page 10

1   incidents or other and discrete occurrences that happened or

2   after the closing date, July 10, 2009 and arise from such --

3          THE COURT:  What are you reading from, Mr. Babcock?

4          MR. BABCOCK:  I'm reading from, this is the quote

5   from paragraph 17 to New GM's answer to the amended complaint.

6   And again, and arise from such motor vehicles' operation or

7   performance.  That's the language, Your Honor, that New GM

8   represented to the District Court for the Eastern District, not

9   once but on two separate occasions, two separate pleadings.

10         And when Your Honor considers the fact that they

11  acknowledge in paragraph 17 that this is what they state, GM

12  LLC admits it ultimately did assume certain liabilities,

13  including the following as provided in section 2.3 (a)(ix) of

14  sale agreement.  That's where the quote that I just read you

15  comes from.  That's what they're relying upon, and that was

16  from attorney Tomas Branigan from Bowman and Brook LLP on

17  behalf of New General Motors.

18         So, Your Honor, the reason we're here, and this is

19  kind of, I mean I'm not aware of any other case where New GM

20  decided to take this approach.  This is a situation where in

21  the context of this case, New General Motors made a decision to

22  take a certain position, and as we've pointed out in responding

23  to that position, the language that they're relying upon

24  provides broader liability and explore to New GM in the case

25  which covers, in the case of my client's claim at least than

Page 11

1    what may or may not have been accomplished in subsequent

2    agreements, but they're not relying on the subsequent

3    agreements in the case before the United States District Court

4    Eastern District of Michigan which is where this case was

5    removed by New GM.

6            So, Your Honor, we cited Sixth Circuit cases that

7    would explain why the Court in that case in that venue would,

8    why those statements are dispositive to New GM.  There's been

9    no authority cited to the contrary.  And then in --

10           THE COURT:  Do I have the Sixth Circuit rule that

11   you're relying on in the record?

12           MR. BABCOCK:  Basically the Federal Rule of Civil

13   Procedure Rule of pleading plus the two cases I was talking

14   about, the two cases talking, which are Barnes and the McDonald

15   opinions which appear in that no state pleading, and we cite to

16   them.  On page 4 of our brief, Barnes vs. Owens Corning Fiber

17   Glass Corporation which is 201 F.3d 815 and page 829 is

18   referenced specifically as the Sixth Circuit 2000 opinion.

19   There's another one, McDonald vs. General Motors Corporation,

20   110 F.3d 337, 340 Sixth Circuit 1997.  Again talking about the

21   impact of admissions made by attorneys or defendants of parties

22   in the course of litigation.

23           And again, Your Honor there's been no authority cited

24   by New GM that disputes that.  They say we don't really mean

25   it.  I take it as simply being buyer's remorse on their part

Page 12

1    now that they, that the consequences of their position has

2    become apparent now more willing to consider the impact to

3    there is any form their opinion with regard to this Court's

4    ruling rather than their own admissions earlier on.

5              THE COURT:  Mr. Babcock, did the Pillars family file

6    a claim against Old GM where its trust, back in the time when

7    claims could still be filed?

8              MR. BABCOCK:  Your Honor, that's the tragedy of the

9    situation.  My client was in an automobile, the estate, the

10   decedent was in an automobile accident in 2005.  She was in a,

11   she was incapacitated until her death in 2000, I believe it was

12   in 2012, Your Honor.  And an estate was formed back in 2014.

13             THE COURT:  Was there any kind of guardian or

14   anything appointed for her in the time between the wreck and

15   the time of her passing?

16             MR. BABCOCK:  Not to my knowledge, Your Honor.  In

17   fact, the appointment took place in 2014.  She had a, she had

18   a, she was married at the time of the accident, and she was

19   being taken care for in basically a vegetative state from my

20   understanding at least up to the point of her death.  And so

21   that's what, and so that's what I think is the most, the tragic

22   part about all this.  New GM wants to be excused for its

23   conduct and its statements and its actions it's made in front

24   of Federal District Court in Michigan.  But yet they want to

25   penalize my client for something that they did when they did

Page 13

1    nothing wrong.  They were accused of, the decedent was a victim

2    of a car accident.  Her wrongful death did not occur until

3    2012.  A wrongful death statute claim could not have been

4    brought until her death, it goes without saying, and thus New

5    GM is saying sorry, you're out of luck.  And but yet they want

6    this Court, to come in here and say on the other hand what we

7    say and what we do doesn't matter.  And that is where, that's

8    where -- again, this is not going to have any impact on the

9    ruling from this Court today on this issue that we're bringing

10   to the Court's attention, will have no impact on the bankruptcy

11   estate.  In fact, quite the contrary, New GM's agreed to take

12   on the additional liability which might otherwise went to the

13   old bankruptcy.

14          THE COURT:  Well you're not pressing that

15   jurisdictional argument that I rejected I don't know how many

16   times in the cases that that lawyer Gary Peller brought.

17   You're simply saying that letting your client bring a wrongful

18   death case against New GM isn't that big a deal?

19          MR. BABCOCK:  Because this is just one case, Your

20   Honor.  This is, the admissions that they made in this

21   particular case, the position that they took in this particular

22   case involves only this particular case.  It does not involve

23   or require this Court to make any adjustments to any of its

24   earlier rulings because --

25          THE COURT:  I understand.

Page 14

1          MR. BABCOCK:  Yeah, so that's kind of where we're

2    coming from, Your Honor.  And again I think it's also

3    important, that the defendant, that New GM I should say doesn't

4    provide any explanation as to this additional changed language,

5    the occurrence language that we already quoted.  The fact that

6    there is no first occurrence language in the portion that

7    they're relying upon, the United States District Court Eastern

8    District of Michigan, none of that is being challenged.  They

9    haven't said that we're not correct on our interpretation of

10   that occurrence and or the fact that it says or other distinct

11   occurrences.  They don't challenge any of that, Your Honor.

12   They just say, well Your Honor made the rulings.  Well Your

13   Honor did make the rulings, and as you pointed out in the

14   Deutsch opinion, you were, the issue in that case was whether

15   or not accidents and incidences were, you had to deal with

16   those particular terms.

17          And yet as you point out in your opinion that this

18   occurrence issue wasn't even a part of it, so there was no

19   reason to get into it.  And as you pointed out in that case, no

20   one bothered even to discuss it.  And in this case we are

21   discussing it.  We've provided evidence, we provided definition

22   term, definition for this, for this terminology.  I think that,

23   and the fact that the other additional language as we point out

24   further supports the fact that what we have here is a much

25   broader language.

1          So I guess with regards to this issue about the

2    Deutsch opinion, I guess as a representative of a victim of

3    these accidents, I would take the position even though I don't

4    think that the Court needs to get to this point because I don't

5    think you need to reverse yourself and Deutsch at all or even

6    clarify it to give us the relief we're asking for today.  But

7    if push comes to shove, I guess and for the purpose of

8    preserving it for the record, I guess in addition to the

9    arguments made by the lawyers for that, for the estate in that

10   case, I guess the way I read the terminology with all due

11   respect to the Court is that you basically came down to

12   accident or incident meaning at least in my opinion and how I

13   took it, and maybe I'm wrong about this, is being the same

14   thing.  But I think that we don't need to go there.  I think

15   that the Court can grant the relief that we've already asked

16   for to the mechanism I've already explained.

17          Unless Your Honor has any questions, and I guess,

18   they have brought up these other issues about, and I just got

19   these, I got these when I came back from vacation yesterday,

20   about the responses to the [indiscernible] and the objection

21   where they make the additional argument about the, whether this

22   is, whether this is an ignition system.  I guess we look at

23   paragraph 4 to their answer to the complaint, they kind of tie

24   it all together, they say this is all, ours is the same as

25   everyone else's as far as the recall problem.  And so I guess,

Page 16

1    I don't think we need to go there because if you grant the

2    relief we asked for at the very beginning, all this additional

3    stuff becomes academic.

4            THE COURT:  You're saying if I grant the relief you

5    still got to prove your case in Michigan State Court or

6    Michigan Federal Court?

7            MR. BABCOCK:  Sure.  Of course we would have to, we

8    would have to prove the underlying case against New GM, the

9    claims itself, yes.  Unless Your Honor has any questions.

10           THE COURT:  No, thank you.  I want to hear from Mr.

11   Steinberg.

12           MR. STEINBERG:  Your Honor, I think the most

13   fundamental point to start is that this lawsuit was improperly

14   brought.  It was in violation of Your Honor's sale order and

15   injunction, and that it was a violation of the injunction to

16   start. That actually is the starting point.  Under the Seletex

17   (phonetic) decision which we've cited to, Your Honor, many

18   times that if there was any confusion, they were required to

19   come in.  Your Honor's Deutsch decision had been decided over

20   three years ago, and they brought this lawsuit anyway.  And

21   they're arguing that some local counsel for New GM in the

22   context of trying to get this to the JPML for purpose of then

23   moving it to the MDL cited to the wrong version of the sale

24   agreement.

25           THE COURT:  He was a lawyer for New GM, wasn't he?

Page 17

1           MR. STEINBERG:  Yes he was.

2           THE COURT:  And I don't know if it matters because

3     over 45 years I've learned a little bit about the agency, but

4     isn't there somebody at the national level that supervises

5     local counsel?

6           MR. STEINBERG:  I'm sure that in the context of this

7     wave of lawsuits there was more than the local counsel just

8     doing this.  I think, Your Honor, that this was a mistake that

9     was made.

10          THE COURT:  It plainly was.  And the consequence is,

11    the question is who should bear the consequences of that

12    mistake?

13          MR. STEINBERG:  But I don't think there's any

14    reliance on anything here.  First you start with an improperly

15    brought --

16          THE COURT:  Well that was the way I started, Mr.

17    Steinberg, because more likely if not plainly we don't have a

18    judicial estoppel, but Mr. Babcock makes a different point, he

19    asserts a judicial admission that's contrasted to a judicial

20    estoppel by reason of the fact that when people answer

21    complaints we hold people to what they say.

22          MR. STEINBERG:  People amend their answers all the

23    time.  And what was the admission that other than it was just a

24    mistake?  Because at the end of the day if we had asserted the

25    old agreement and they had not refuted it, then are we all

1    governed by the old agreement instead of what was the governing

2    agreement that applies to everybody in this case?  The fact of

3    the matter is there's an underlying agreement that governed

4    this circumstance, the underlying agreement was the first

5    amendment.  That first amendment --

6              THE COURT:  I didn't see much reference to that in

7    your brief either, or attention to the distinction.

8              MR. STEINBERG:  I think the, with regard to my brief

9    --

10             THE COURT:  Unless I read the wrong brief.

11             MR. STEINBERG:  No, no, I think we say that the fact

12   that there was a citation to the old amendment shouldn't change

13   what the controlling law is and I think we put that in a

14   sentence there.

15             THE COURT:  In --

16             MR. STEINBERG:  In our response.

17             THE COURT:  12 page response, it was pretty buried if

18   it was stated.

19             MR. STEINBERG:  Yes.  If you can bear with --

20             THE COURT:  You mean [indiscernible] reliance on

21   subject matter jurisdiction and due process.  Where is the

22   discussion of judicial or admissions or estoppels?

23             MR. STEINBERG:  I think, well I think Your Honor on

24   page 7, footnote 5, New GM may have inadvertently referred to

25   the original language contained in section 2(b)(3)(b)(9) of the

1    sale agreement --

2             THE COURT:  I see.  All right.

3             MR. STEINBERG: -- and certain pleadings filed in the

4    underlying lawsuit, the language contained in the first

5    amendment with respect clearly governs this matter.  Perhaps we

6    didn't give it the attention that Your Honor wanted us to give

7    the attention because we didn't think it mattered that much

8    because at the end of the day --

9             THE COURT:  It matters critically, Mr. Steinberg.

10            MR. STEINBERG:  Well, Your Honor, this issue actually

11   did come up in Deutsch.  The first hearing that you had in

12   Deutsch, people had cited actually to the wrong amendment, you

13   actually had I think a second hearing on Deutsch where you

14   analyzed what would be the governing position, and you actually

15   in the Deutsch decision compared the language that was in the

16   June 26th, 2009 agreement versus the first amendment and said

17   no one has explained why the language changed, and therefore it

18   could have been because it was duplicative or otherwise, but

19   otherwise you were going to discount it.  So this actual, you

20   know, this actual problem actually took place before in the

21   Deutsch case and Your Honor handled it that way by just looking

22   at the actual agreement.  And maybe that's the reason why we

23   didn't give it as much attention in our brief that perhaps it

24   warranted.

25            But I go back and I also wanted to just address the

Page 20

1    issue that Your Honor said that you thought that we perhaps

2    miss-cited the section in our own brief.  If you were referring

3    to page 2 of our brief, we were actually citing to the section

4    that was in the retain liabilities portion of the sale

5    agreement as compared to the assumed liabilities and that is

6    the right quote of how it was written in the retained

7    liabilities.  So I think we got it right in our pleading.

8             But fundamentally what happened is that you had an

9    improperly started lawsuit in violation of Your Honor's sale

10   order.  And we had deadlines in the state court because those

11   things go forward.  We sent the no stay letter to them, and in

12   the meantime we had to try to remove this to the JPML and get

13   it ultimately before Judge Furman (phonetic) in the MDL, and

14   the statement that is being referred to here has no material

15   difference as to whether we cite it to the first amendment or

16   the second amendment, the June 26th agreement or the first

17   amendment, because the central focus was that it had bankruptcy

18   court jurisdiction and there was a basis for federal removal,

19   it relates to the bankruptcy case.  New GM was disclaiming

20   liability and was saying that it should all be ultimately moved

21   to the MDL where it gets stayed because they're handling

22   [indiscernible] cases, and it's subject to Your Honor's order.

23   We waited then for them to file their response to the no stay

24   pleading and then Your Honor entered the judgment and that

25   created a separate procedure for the same thing.

1            Once in the, so the answer that was filed was the

2    answer that was filed in conjunction with something that was

3    ultimately going to be removed and stayed and ultimately the

4    answer should not have necessarily been required to be filed

5    because this action never should have been brought in the first

6    place.  It was a violation of the Deutsch decision.  There's

7    no, there's no judicial admission of anything because there was

8    no attempt to admit to an older agreement versus a new

9    agreement.

10            And if Your Honor needs a declaration from someone to

11    say that it was a mistake and answers could be amended all the

12    time, and so therefore I don't think in the very early stages

13    of an improperly led complaint you can say there's a judicial

14    admission of anything.  This would have been amended if this

15    case would have gone forward, but this case never should have

16    been brought in the first place.

17            And I think the estate representative is the husband

18    who was taking care of the wife since the accident in 2005.  So

19    Your Honor had this issue in Deutsch, unfortunately local

20    counsel made a mistake in responding where the goal was just to

21    get this to the MDL where it would be stayed while we

22    simultaneously would be dealing with this in the bankruptcy

23    court to say that it was subject to Your Honor's order.

24    There's no difference as to whether we cited the first

25    amendment or the June 26th amendment for purposes of the over-

Page 22

1   reaching point, that this was an improperly started lawsuit,

2   that this was, that there was federal jurisdiction based on the

3   bankruptcy court on this, and that this matter should be

4   ultimately removed to the federal court and then to the JPML.

5          Your Honor's decision in Deutsch also said that if

6   you even relied on the old amendment that it wasn't sure

7   whether there was any difference.  And if you look at their

8   brief when they decide, when they're focusing on the word

9   occurrence --

10         THE COURT:  I read Deutsch this morning again, I did

11  not see in there but you can refresh my recollection if I'm

12  mistaken any suggestion that if the words occurrence had

13  appeared and the words first occurring had not appeared, that I

14  had then ruled, assuming it wouldn't have been dictum, that the

15  conclusion would be the same.

16         MR. STEINBERG:  I don't think you said that.  I think

17  on page 5 of the Deutsch decision --

18         THE COURT:  Give me a second please.  Well I have it

19  in the Br. form, is it in the discussion or where?

20         MR. STEINBERG:  It is in the discussion, it is after

21  the heavily blocked quote, and it starts with the paragraph,

22  but while incidents may be deemed to be somewhat ambiguous.

23         THE COURT:  Right.  I'm with you now.  Basically I

24  said is I didn't have an evidentiary basis for concluding,

25  making conclusions as to the reasons for the change.

Page 23

1          MR. STEINBERG:  But the reason why this was even in

2    your decision was because there was the same mistake that was

3    made before, people were referring to the June 26th amendment

4    in an earlier hearing and Your Honor was struggling with would

5    it have made a difference, why was the change being made.  If

6    people had cited to it properly the first time even in Deutsch,

7    you never would have had to deal with this discussion, because

8    the operative agreement is what controls.  And that is really

9    you know we didn't say it in lots of words, sometimes you get

10   criticized for being verbose, here we basically said there is

11   one agreement, that is the agreement that is controlling, that

12   is what Your Honor has to apply in this case.

13          No matter what we said, we could say that the sky is

14   orange, but the sky is blue, that's what you have to recognize.

15   Here, there was no attempt to change a different agreement with

16   respect to a plaintiff who improperly started a lawsuit based

17   on an accident that took place ten years ago.  The rest of the

18   arguments, I think, Your Honor, I think if, once you find that

19   there are prepetition non-ignition switch plaintiff, then the

20   rest flows from the judgment on the due process arguments and

21   the Court's jurisdiction argument.  And so I think really we're

22   left to, and I think Your Honor has already said that you

23   believe that Deutsch is applicable of not for this particular

24   issue where a local counsel had improperly cited to a June

25   26th, but it wasn't to take any advantage, no court has ruled

Page 24

1    on this matter.  The JPML hasn't even ruled on the removal

2    action.

3              And frankly again, and I'll conclude with this, and I

4    know I've said it a number of times, it all starts with the

5    fundamental notion that this was an improperly brought lawsuit.

6    And to say that someone in an answer said something on a

7    lawsuit that never should have been brought which was a

8    violation of an injunction I don't think they should be able to

9    bootstrap that type of argument.  Thank you.

10             THE COURT:  Mr. Babcock.

11             MR. BABCOCK:  New GM filed a 58 page answer, a very

12   detailed, they went through quotes, it's a very detailed

13   answer.  To suggest that what they say in this very detailed

14   answer should be disregarded by this Court flies in the face of

15   what the purpose of an answer is which is either make denials

16   or make admissions.  They could have just said denied, isn't

17   true, denied, isn't true.  But they instead they made the

18   decision to make admissions.  They have not, as Your Honor, as

19   you pointed out when you, during opposing counsel's -- they

20   have not cited any authority that says they are excused from

21   the consequences of what they did, and I mean what the lawyers

22   in that case did.

23             Your Honor, unless Your Honor has any questions for

24   us, we'd --

25             THE COURT:  Have everybody sit in place for a minute.

Page 25

1          Gentleman, ladies and gentlemen, I'm ruling that the

2     Pillars action can proceed against the New GM and that New GM

3     will have the duty and of course the right to defend it on the

4     merits without expressing [indiscernible] merits in the filing

5     of my findings of fact conclusions of law and bases for the

6     exercise of my discretion in connection of this decision,

7     although I don't think I'm really relying on my discretion in

8     any way on this.

9          At the outset of oral argument I recognized as we all

10    had to recognize my Deutsch decision which if it had been

11    decided in a vacuum, this controversy had been decided in a

12    vacuum based upon the proper language of the sale agreement

13    would have resulted in a victory for New GM.  But the fact that

14    had the potential ability to change the applicability of the

15    Deutsch decision was the language under which New GM's

16    assumption of its liabilities would rest.

17         In Deutsch, as we all know, the key language was

18    accidents or incidents first occurring.  And the underlying

19    principal of that was that each word had to be given individual

20    meaning although they could overlap.  It is not disputed that a

21    local counsel through GM said in two separate submissions,

22    first in a notice of removal and then also in an answer,

23    perhaps I'm flip-flopping their chronological order, but in two

24    separate documents, that New GM had assumed liabilities for

25    accidents, incidents or other occurrences, and did not rely on

1    the words first occurring or mention the words first occurring.

2    As I discussed in the Deutsch opinion, first occurring had

3    significance as well.  As I indicated at the outset of oral

4    argument, this is not a judicial estoppel, the requirements for

5    judicial estoppel of reliance by the tribunal is missing.

6    Nevertheless, as Mr. Babcock properly pointed out, it is a

7    judicial admission, which is similar in some respects, but

8    different in others.  It is not for instance a statement in a

9    brief.  It's a statement in the answer which has significance.

10   Answers have to be taken seriously.  Although it is true that

11   answers can thereafter be amended, unless and until they have

12   been, they stand.  Judges need to have the ability to rely on

13   answers because answers take issues off the table.

14           So then we get to the issue as to whether what GM's

15   counsel which is obviously an agent [indiscernible] should be

16   regarded because the litigation shouldn't have been brought in

17   the first place.  Well, lots of litigations were brought in

18   what we now know to have been violation of my earlier order.

19   And when I had become aware of that, I have stopped them, I

20   have stopped them by stays.  And it's for that reason that this

21   litigation is stayed.  But it was one thing to say that this

22   action should be stayed, then later dismissed, and quite a

23   different way to say never mind [indiscernible] vis-à-vis

24   everything that happened in the first place.

25           I have not ruled to that affect in any of the 22

Page 27

```
 1   decisions that previously issued in connection with the GM

 2   case, and I am not of the mind to do that now.  Obviously GM

 3   has the ability to ensure that its counsel do their jobs and

 4   it's not too much to hold GM for the consequences of what its

 5   counsel who is plainly an agent did.  So having admitted that

 6   New GM is liable for accidents, incidents or other occurrences

 7   I think have to parse those words.  Under the principals of

 8   Deutsch each word is to be given meaning.  Accidents refers to

 9   wrecks, we all know what an accident is.  Incidents are,

10   applies to something that can include wrecks but can also

11   include other things.  And as I ruled in Deutsch in of the

12   Pillars actions, repeating or characterizing my ruling in

13   Deutsch, that covers things like explosions, fires, car running

14   off the road and the like.  Occurrences can overlap with that,

15   but it can also have some other meaning.  And in this instance,

16   occurrences which as far as I'm aware has not and will not ever

17   be the subject of another judicial construction in this case.

18   But the principals of Deutsch should be construed as meaning

19   something else, and the arguments made by Pillars' counsel in

20   its brief that death from that is subject to coverage under

21   that ambiguity.  Of course, the construction of documents when

22   they're ambiguous necessarily must go against the drafter.

23           So I'm going to allow this lawsuit to proceed, and

24   I'm going to state a couple of things for the avoidance of

25   doubt, although they should be obvious.  One is I reiterate for
```

Page 28

1    the 900th time that I have subject matter jurisdiction over

2    this dispute.  As is apparent from everything that I've said,

3    this applies only to this particular judicial admission in this

4    particular wrongful death case, and has no bearing on anything

5    that I ruled on April 15th or on the Cary Cutler (phonetic)

6    matters [indiscernible].  It does however, mean that New GM has

7    to defend this wrongful death case.  And if it doesn't like

8    defending wrongful death cases when its local counsel admit

9    things that maybe they shouldn't have been admitted to, it

10   should supervise its counsel more carefully.

11           That summarizes my rulings.  If New GM really wants

12   to appeal this, I reserve the right to issue a written opinion.

13   But as you all well know, I've got so many things beyond that

14   to deal with in GM and for that matter other cases on my watch,

15   that I'm not going to write on this unless I need to.

16           Mr. Babcock, you or your co-counsel can settle an

17   order in accordance with this ruling.  Not by way of

18   rearguments, are there any questions?

19           MR. STEINBERG:  Your Honor, will we have, can we have

20   the opportunity to make a submission, and I don't know whether

21   this is true or not, I would need to verify that at the time to

22   answer or amend, we had a right to amend the answer, that this

23   is not a judicial admission to give further briefing.

24           THE COURT:  There was plenty of time to focus on

25   these issues before today.  That's my ruling.

Page 29

1          MR. STEINBERG:  All right.

2          THE COURT:  Mr. Steinberg, I have a zillion things on

3     my watch and I have to rely on lawyers dealing with issues in a

4     timely way.  We can't have do-overs after I've ruled.  I had

5     the same issue with a motion for rearguments now which is in

6     substance a do-over after I've ruled, I'm not going to invite

7     even more stuff of that character.  Anything else?

8          MR. BABCOCK:  Your Honor, I'm not familiar with how

9     the Court handles its orders.

10         THE COURT:  Do you want to stand please?  I take it

11    in most of the courts you would stand when you're talking to a

12    Judge?

13         MR. BABCOCK:  I'm sorry, Your Honor, I wasn't being

14    disrespectful.  Okay, at this point, the lawyers, would GM be

15    submitting a proposed order?  Is that, do I understand what

16    your instruction was or do you want me to prepare an order?

17         THE COURT:  I said you are to settle an order.  We

18    have local court rules in this Court to deal with the

19    settlement of orders.

20         MR. BABCOCK:  Okay, Your Honor.

21         THE COURT:  Okay.  Anything else?  Have a good day.

22    We're adjourned.

23         MR. WEISFELNER:  Your Honor, I apologize.  This is a

24    procedural housekeeping issue.  And let me see if I can't state

25    succinctly what the issue is.

Page 30

1           As Your Honor knows, designated counsel on behalf of

2     plaintiffs filed what I'll refer to as an omnibus no strike

3     objection pleading, and also sought relief with respect to the

4     GUC Trust.  And with regard to that omnibus pleading, we had

5     sought through a motion to have it, to have the reference

6     withdrawn.  We are working with the GUC Trust and the GUC unit

7     holders on a potential resolution of issues that separate the

8     two of us, that being the plaintiffs on the one hand, the GUC

9     trust and unit holders on the other hand.  And because we are

10    still working towards that resolution, the GUC Trust and the

11    unit holders have asked for the following form of relief that

12    we have no opposition to.

13           One is they want, they don't want to have to respond

14    to our motion to withdraw the reference, and have asked us to

15    modify that portion of our motion that would seek to have the

16    GUC Trust pleadings removed.  And we are prepared to cede to

17    that request.  We are likewise --

18           THE COURT:  Pause please, Mr. Weisfelner.

19    Temporarily or the possibility that you won't have to revisit

20    the issue if the settlement goes through or for a longer

21    period?

22           MR. WEISFELNER:  Your Honor, it would be our

23    intention to have our ability to withdraw the reference on the

24    GUC Trust pleadings spring back into effect if and only if

25    we're unable to reach a settlement between the parties.  And

Page 31

1    otherwise, the settlement that we're working on would resolve

2    the issue once and for all.  So I'll let the GUC Trust counsel

3    address it, but again what we're looking for is merely a

4    stipulation that this Court would approve that would extend the

5    time for the GUC Trust holders to respond to our motion to

6    withdraw the reference and on the merits with regard to the GUC

7    Trust.  And on the merits with regard to the GUC Trust

8    pleadings, it would be our intention and we'll obviously

9    document all this in a proposed stipulation to present to the

10   Court, but since the deadlines are coming up so quickly, wanted

11   Your Honor to be generally aware of what's developing between

12   us and the GUC Trust.

13            THE COURT:  Mr. Weisfelner, that's a common sense

14   approach variance of which of has been a zillion times in this

15   Court.  I have only a technical question which is the one that

16   you may have thought about already which is that on a motion of

17   this character we have a shift over from my jurisdiction to

18   Jesse Furman's (phonetic) and the rules are pretty plain that

19   your first finding is done in this Court, which is I guess why

20   you came to me.  But I would have thought that further findings

21   would be before Jesse Furman and in essence I'm tolling the

22   deadline before him.  Do we need Jesse Furman's okay on this as

23   well?

24            MR. WEISFELNER:  I think we do and it would be the

25   parties' intention to likewise present to Judge Furman a

Page 32

1    similar stipulation indicating that pending resolution or the

2    filing of an appropriate motion to approve a settlement between

3    the parties should we be able to reach one which I expect we'll

4    be able to do, that the time periods to respond to pleadings

5    either in this Court or before Judge Furman would be affected.

6           Now the reason for some of the confusion among the

7    parties is we not only have pending motions to withdraw the

8    reference, but only recently have had filed by New GM a motion

9    to compel us to withdraw our motions to withdraw the reference,

10   which have its own responsive and return dates.  I think it's

11   August 12th.  Your Honor may be asked to consider --

12          THE COURT:  On August 12th in the New GM motion to

13   stop you from going to the District Court?

14          MR. WEISFELNER:  Right.  And frankly, Your Honor, I

15   should tell you and this will seem a lot like the old Atari

16   game of ping pong, my client's lead counsel in the MDL are

17   contemplating filing a motion to withdraw the reference on GM's

18   motion to compel us to withdraw our motion, to withdraw the

19   reference.  So the ball has yet to stop bouncing, but ought to

20   shortly.  All we're looking to accomplish today, Your Honor, is

21   to advise Your Honor that we intend that the GUC Trust not be

22   put to the test of filing a response to our motion to withdraw

23   the reference, and for that matter not be put to the test to

24   respond to our GUC Trust pleadings in a scenario where the

25   parties are in my view very close to resolving their issues,

Page 33

1    subject of course to the appropriate motion practice and an

2    opportunity for New GM to be heard.

3            THE COURT:  Now here's what I'm going to do.  I want

4    to hear first from the GUC Trust.  Is it Mr. Martorana?

5            MR. MARTORANA:  Yes, Your Honor.

6            THE COURT:  Then from any unit holders who I see out

7    by first base if any of them want to be heard, and then from

8    Mr. Steinberg.

9            MR. MARTORANA:  Good morning, Your Honor, Keith

10   Martorana of Gibson Dunn and Crutcher on behalf of the GUC

11   Trust.  I believe that was an accurate recitation of where we

12   are.  Just to clarify I think as a technical matter the way

13   that it will work is that there are two pleadings which the GUC

14   Trust right now without any changes would need to respond to.

15   One is the motion to withdraw the reference which as Your Honor

16   noted is before Judge Furman, our response is due on the 23rd

17   with respect to that.  My understanding of what we --

18           THE COURT:  That's in July Mr. Martorana?

19           MR. MARTORANA:  July 23rd, correct.  My understanding

20   of the discussions that we had with the plaintiffs is that they

21   would be modifying/withdrawing their aspect of the motion to

22   withdraw the reference solely with respect to the GUC Trust

23   asset pleading with a right to renew, obviously the withdraw

24   would be without prejudice.  That would alleviate the burden of

25   the GUC Trust to have to respond to that pleading.  And I

Page 34

1    believe that technically that would be in a separate

2    stipulation dealing just with that issue that would be

3    presented to Judge Furman.

4            With respect to the underling GUC Trust asset

5    pleading, our response on a substantive level is due before

6    this Court on July 20th, assuming that issue was not withdrawn

7    to Judge Furman.  With respect to that, the agreement there is

8    that we, that would be indefinitely adjourned with the right

9    for, if things do not go well on that settlement for the

10   plaintiffs to notify us, I believe on five business days'

11   notice that they want to, our response to be filed and to move

12   forward with the GUC Trust asset pleading.  That's my

13   understanding of --

14           THE COURT:  Only five days to respond?

15           MR. MARTORANA:  Five business days.

16           THE COURT:  Go on.

17           MR. MARTORANA:  That's it.  That's all I have, Your

18   Honor.

19           THE COURT:  Okay.  Unit holders?

20           MS. NEWMAN:  [indiscernible]

21           THE COURT:  Okay.  Mr. Steinberg?

22           MR. STEINBERG:  Your Honor, just so you know, I had

23   no notice of what was said to Your Honor just now for all this

24   time period.  For whatever it's worth, the time period to

25   respond to the motions to withdraw the reference that have been

Page 35

1    filed by designated counsel have already been adjourned once

2    and the application to adjourn those matters were made to the

3    District Court.  And the District Court approved those

4    extensions to take you to the July 23rd date.  So Your Honor

5    was correct that they may ask you to do something but it's

6    really Judge Furman who has to do it because the matters are

7    before Judge Furman.

8             Yesterday I was contacted to schedule a meet and

9    confer to deal with a lot of these procedural issues that Mr.

10   Weisfelner decided to air to Your Honor now.  That was

11   scheduled for tomorrow at noon, so the idea that we're having

12   this played out before there is even a meet and confer is an

13   unusual process.  To the extent that Mr. Martorana said that

14   there is a pleading that is before Your Honor which is the

15   motion to the no strike pleading which they've also moved to

16   withdraw the reference, but the no strike pleading is

17   technically before you, then --

18            THE COURT:  Which of the zillion no strike pleadings

19   are we now, that I have are we now talking about?

20            MR. STEINBERG:  These are the, this is the designated

21   counsel's no strike pleading.

22            THE COURT:  That was filed a long time ago.

23            MR. STEINBERG:  That was filed about 15 days ago, 20

24   days ago, something like that.

25            THE COURT:  The first of them, wasn't it?

Page 36

1          MR. STEINBERG:  Well I think they've only filed one,

2     designated counsel has filed one --

3          THE COURT:  Now I was just putting all of the no

4     strike pleadings together in a single bucket.

5          MR. STEINBERG:  But, Your Honor, with regard to that

6     pleading, if designated counsel wants to in effect not move

7     forward on that, then I believe then the designated counsel

8     should strike that from its pleading, otherwise, you're going

9     to get a circumstance where it's part of the resolution, we're

10    going to have a hearing ultimately before Your Honor, we'll

11    respond about some aspect of what is being said, GUC Trust will

12    not respond, and you'll have a messed up process.  Either

13    they're going forward with it or they're not going forward with

14    it.  If they're going to adjourn it then they should be

15    bifurcating it and pushing it out and not dealing with it at

16    all, but we shouldn't be in a position where we have to respond

17    to it, and the GUC Trust who is on the front lines of that

18    issue is not responding to it and we have no idea whether this

19    is going forward or not because of a potential deal that may or

20    may never occur.

21          THE COURT:  Let me get any reply you have, Mr.

22    Weisfelner, and as part of that, tell me how long you think

23    you'll know whether or not you're going to have a deal with the

24    GUC Trust.

25          MR. WEISFELNER:  Sure.  Your Honor, let me try and

Page 37

1    clarify because I don't want Your Honor to believe that we are

2    in any way mixing apples or oranges.  There are basically two

3    separate issues that are contained within designated counsel's

4    no strike no stay pleading.  On the one hand, we have the

5    question as to whether or not the second amended consolidated

6    complaint filed on or about June 12th with Judge Furman does or

7    does not contain allegations or contentions that Your Honor has

8    indicated in your decision are inappropriate because they

9    relate to Old GM.  It's our position in the no strike no state

10   pleading that the second amended consolidated complaint seeks

11   to hold New GM and only New GM liable for its own independent

12   acts and conduct which we read as being permissible under Your

13   Honor's decision, and that the references to Old GM are there

14   for context only, and that we are not seeking to hold New GM

15   liable for Old GM's conduct.  Let's put that aside because

16   nothing that I've said this morning affects the relief that we

17   seek in connection with the second amended consolidated

18   complaint.

19        The situation as it exists between the plaintiffs,

20   the GUC Trust and the GUC unit holders is as follows.  Your

21   Honor indicated in your April decision that there was a lack of

22   appropriate due process notice and a resulting prejudice with

23   regard to the bar date.  And in that context indicated that

24   late proofs of claim, applications to file late proofs of claim

25   were contemplated.  Your Honor then went on to say --

1           THE COURT:  Contemplated or were permissible under my

2    order?

3           MR. WEISFELNER:  Well permissible.  But Your Honor

4    then went on to say that under the doctrine of equitable

5    mootness there would be no recovery from --

6           THE COURT:  I think what I said, the words were that

7    assets of the GUC Trust couldn't be tacked even for late

8    claims.

9           MR. WEISFELNER:  Correct.

10          THE COURT:  That was what Ms. Newman argued, or if

11   she argued it or not, that was what I ruled after she won on

12   the mootness issue.

13          MR. WEISFELNER:  Understood.  And, Your Honor, here

14   is the issue when all is said and done.  And I recognize that

15   this issue depending on your perception may or may not have

16   been intended by Your Honor.  But we can all read the language

17   of Your Honor's decision, and it is the subject of an appeal,

18   although we don't know to which court that appeal will go, but

19   it -- here's our concern.  As Your Honor is aware, there is an

20   accordion feature in the plan, and what the accordion feature

21   basically says is as Your Honor well knows, if you get up to

22   $35 billion worth of claims, and up to $42 billion worth of

23   claims then New GM would be responsible for an additional

24   number of shares of New GM stock to be contributed to the

25   trust.  I think the parties all recognize that under the

Page 39

1   current state of affairs the GUC Trust will never trigger the

2   accordion feature.  The most that the GUC Trust could have by

3   way of claims is something like $33 billion worth of claims,

4   and 35 is the triggering number.  The concept that's being

5   contemplated between the plaintiffs and the GUC Trust would be

6   a mechanism by which we would say, look, if we the plaintiffs

7   are in a position to trigger the accordion feature, then so

8   long as we have exclusive rights to the accordion value, we

9   will forever leave you guys alone with regard to all of the

10  value that was ever in the trust or that remains in the trust

11  for future distribution.  So you take all of the value that was

12  there but for the accordion, we take the accordion value if we

13  are ultimately able to trigger it.

14          Now, Your Honor, and again, with all due respect to

15  Mr. Steinberg, he's right, we didn't tell him that procedurally

16  and it was really at the request of the GUC Trust who otherwise

17  has a brief due I think as early as the 20th, and we saw no

18  reason for them to spin their wheels and write another brief as

19  early as the 20th, which is why we came here today.  And I did

20  let Mr. Steinberg know in conversations we had I think

21  yesterday what direction we were going in with regard to the

22  GUC Trust.  So that's the whole controversy.

23          New GM takes the position that Your Honor's equitable

24  mootness decision in effect killed off the accordion feature,

25  that there is no more accordion feature, it doesn't exist,

Page 40

1    can't ever be triggered.  We disagree.  I think the GUC Trust

2    would likewise disagree.  And all we're looking for is an

3    opportunity to resolve our controversies with the GUC Trust on

4    the basis that I just elaborated.  If and only if we're able to

5    trigger the accordion feature, it's ours.  You get to keep

6    everything else and will no longer contend that we're entitled

7    through a reversal of equitable mootness to start glomming on

8    to the about billion dollars you have left or for that matter

9    to seek to compel people to start giving stuff back, we'd be

10   done on that issue.

11             And, Your Honor, that's the reason that at this point

12   rather than spin wheels and have people drafting additional

13   briefs that as between us and the GUC Trust, we'd like to do

14   away with their need to file a brief.  It doesn't therefore

15   give New GM the opportunity to say, oh, then by the way with

16   regard to your no strike pleading on whether or not the second

17   amended consolidated complaint does or does not violate Judge

18   Gerber's order.  Well if you're going to kick over the issue

19   with the GUC Trust, we want you to kick over our issues too,

20   enough delay, we want resolution of these issues.  As they

21   impact Judge Furman's ability to go forward with motion

22   practice, we need these matters resolved.

23             THE COURT:  The second half of what you said raises

24   bigger issues than the first.  By itself your request to give

25   the GUC Trust more time or to be more precise to get me to say

Page 41

1    to Jesse Furman that Gerber doesn't care if you don't care is

2    benign, it's minimal.  But what New GM might say in its

3    response to its papers could be affected by the terrain

4    depending on whether or not there's a deal between your

5    constituency and the GUC Trust to stick it to New GM.  That

6    might not affect the merits, but it would be something that New

7    GM might want to be heard about if it perceives the issue to be

8    in those terms.

9             So the issue before me is that assuming arguendo that

10   I agree that I should tell or authorize you to tell Jesse

11   Furman that I'm not opposed to it if he's not, whether there

12   should additionally be a recommendation that if New GM thinks

13   it needs some time to deal with the facts on the ground whether

14   I should condition what I said on that.  Do you want to be

15   heard on that one last time?

16             MR. WEISFELNER:  Well sure.  There will be no

17   substantive impact on anyone's rights other than the procedural

18   extension of time for people to file papers.  That will be

19   accomplished without notice and an opportunity to be heard by

20   New GM.  So for example, if we were, meaning us on the one

21   hand, GUC Trust unit holders on the other hand, able to

22   consummate a settlement, it would be brought to the Court's

23   attention under rule 9019 I presume, either to this Court or to

24   Judge Furman depending on the resolution of the motions to

25   withdraw the reference on notice to New GM.  And New GM will

Page 42

1   have an opportunity to oppose that 9019, take the position that

2   as Your Honor indicated we've colluded in an effort to stick it

3   to New GM.  And they'll be entitled to be heard on the merits

4   with regard to that contention, and the settlement will not be

5   effective unless and until the Court overrules that objection.

6   And --

7             THE COURT:  The problem with that Mr. Weisfelner is

8   the different way which judges evaluate 9019s in part.  The

9   principal attention that a judge gives to the 9019 is whether

10  the estate is giving away the store.  And that would mean in

11  this context whether Mr. Martorana is prejudicing the interest

12  of the GUC Trust community and its unit holders, which if he

13  entered into the deal would be very hard to find because the

14  problem if there is a problem with any such deal is he's

15  helping his guys too much, not that he's helping them too

16  little.  Sometimes in evaluating 9019s, we also look to see

17  whether parties while acting in the interest of the estate are

18  nevertheless inappropriately adversely affecting parties who

19  aren't at the table, that's the more significant concern here.

20            MR. WEISFELNER:  Sure.  And, Your Honor, again the

21  only party --

22            THE COURT:  We have this in asbestos cases which you

23  have more than a little familiarity.

24            MR. WEISFELNER:  And, Your Honor, again I see the

25  analogy and you're right I think the only party that could

Page 43

1    stand up and say they're being adversely affected aside from

2    the plaintiffs which I want to get to in a minute to respond to

3    your question about how much time do I think this takes, the

4    only party that would be adversely affected would be New GM.

5    It's New GM's stock that would have to be forked over were the

6    accordion feature triggered.  And I would assume that New GM

7    has an economic interest in not having the accordion trigger in

8    maintaining that the accordion feature is now dead as a

9    consequence of Your Honor's equitable mootness decision.  And

10   obviously we're not going to get our hands on that stock

11   without New GM putting up a fight.  And be it this Court or

12   Judge Furman, I presume, will give New GM all the time and due

13   process it needs and wants in order to ensure that its rights

14   are protected before it literally has to turn over 10 million

15   shares of New GM stock.

16          The issue on the plaintiff's side is quite a bit more

17   complicated.  There are any number of potential subclasses of

18   plaintiffs that may want a shot at the accordion feature should

19   it ever be triggered.  You have the easy subclass if one were

20   to think what are the classes, you have the ignition switch

21   defect plaintiffs as defined, that being the ones that were

22   subject of the first two recalls.  You have the other ignition

23   switch defect plaintiffs that were the subject of the

24   subsequent recalls.  You then have the non-ignition switch

25   defects.

Page 44

1           THE COURT:  What's your Weintraub [indiscernible]

2    because I would have thought that they should have, or could

3    make a decent argument that they should have first dibs on any

4    claims against the estate.

5           MR. WEISFELNER:  Now Mr. Weintraub was careful I

6    think to represent only the presale accident victims who drove

7    ignition switch defect vehicles defined to be limited to the

8    first two recalls, the ones I think in February and March of

9    2014.

10          MR. STEINBERG:  [indiscernible]

11          MR. WEISFELNER:  That's my best recollection.  He may

12   tell you otherwise, and we are working with Mr. Weintraub with

13   regard to this settlement that he represents pre-sale accident

14   victims that drove other vehicles.  But my point is this, the

15   GUC Trust and unit holders want the broadest from of relief

16   possible.  They want as many people to stand down from

17   challenging their exclusive rights to the cash that's gone out

18   the door and the billion or so dollars left to go out the door

19   based on the remaining securities that they've asked for and

20   Your Honor has given authority to liquidate but not distribute.

21   So they want all of us plaintiff types to say no mas, we're not

22   coming after you to ever dip into those assets.

23          We need to ensure that we're not prejudicing any

24   plaintiff rights with regard to the accordion feature should it

25   ever be triggered.  And what we contemplate is a procedure that

Page 45

1    has the late filed claims being authorized, some sort of

2    estimation procedure as to what the magnitude of damages would

3    be, either the accordion is triggered or it's not with New GM

4    participating in all of those proceedings.  And then a

5    subsequent determination, we believe most efficiently by Judge

6    Furman as to what the relevant entitlements would be as among

7    those potential class plaintiffs to the rest that would be the

8    accordion feature.

9           And because we have issues like class notice for

10   settlement purposes under rule 32, all of those issue take

11   quite a while to resolve, that would be a to be determined

12   aspect of the overall settlement that would be relevant if and

13   only if the accordion ever does get triggered and in the

14   scenario where everybody, every party's rights gets protected.

15   So to put a practical spin on it, 10 million shares of GM

16   stock, call it at $30 a share, I think it trades a little bit

17   higher than that today.  We're talking about potentially I

18   think it's 30 million shares, we're talking about potentially

19   $900 million of accordion feature value that would get put into

20   a lock box and distributed to whoever was entitled to a portion

21   of that lockbox value.  And in exchange for the GUC Trust and

22   unit holders stepping out of the way for that to occur, would

23   leave them alone on the values they've already distributed and

24   the approximate billion dollars left that they'd like to

25   distribute as soon as they finish selling off all their

Page 46

1    securities.

2          We fully recognize that we will have New GM to battle

3    with over these issues, and we fully understand that we'll have

4    to go through at a minimum class certification for settlement

5    purposes before resolution of the value in the accordion

6    feature as ultimately resolved.  But all we're doing now

7    procedurally is taking the GUC Trust off the hook for filing

8    papers on the 20th and thought Your Honor ought to be made

9    aware of that before you started cataloguing all the documents

10   you get on the 20th and notice the absence of their response.

11         THE COURT:  All right.  Let me hear first from Mr.

12   Martorana and then I am going to give Mr. Steinberg a further

13   chance to be heard.

14         MR. MARTORANA:  Again, Your Honor, Keith Martorana,

15   Gibson Dunn and Crutcher on behalf of the GUC Trust.  First

16   off, I just want to say I think we're way ahead of ourselves

17   when we're talking about potential 9019 motions or anything of

18   that matter.  The GUC Trust is a publicly traded trust, at this

19   point I don't want to take any position as to confidential

20   negotiations on a potential settlement.  We're at very

21   preliminary stages and that's about all I'm prepared to say

22   about it. I understand what Mr. Weisfelner said about what his

23   view of where negotiations are.  At this point, the GUC Trust

24   is not taking a position, I don't think we have to for purposes

25   of what we're talking about today.  That's what I want to start

Page 47

```
 1   with.

 2           Your Honor, with respect to what we're asking for

 3   here, I think Mr. Weisfelner said it right, what we're looking

 4   for is to avoid having, we are in potential, we are in

 5   negotiations very preliminary, we're looking to avoid a

 6   scenario where we have to file unnecessary papers.  Your

 7   judgments and order actually did the bifurcation here, there

 8   is, there is no strike pleadings, there's GUC Trust asset

 9   pleadings, which is all that we're talking about here, there's

10   no state pleadings, those issues are all bifurcated and for

11   good reason, they're unrelated to each other.  There have been

12   a number of, the plaintiffs have filed no strike pleadings, no

13   state pleadings, [indiscernible] filed a no state pleading, but

14   didn't file a GUC Trust asset pleading, so for ease for

15   procedural ease, Mr. Weisfelner's client did an omnibus

16   pleading, and then they did an omnibus motion to withdraw the

17   reference.  But there shouldn't be any reason why those can't

18   be taken separately, and Mr. Weisfelner should not be permitted

19   to withdraw his motion to withdraw the reference with respect

20   to the GUC Trust asset pleading, that shouldn't have any effect

21   on the no strike pleadings or the no state pleadings that New

22   GM has to deal with.

23           And for the same reasons, the substantive response to

24   a GUC Trust asset pleading which only deals with whether or not

25   non-ignition switch plaintiffs and non-ignition switch personal
```

Page 48

1    injury plaintiffs are affected by Your Honor's judgments why

2    that should have any effect on New GM and pleadings that they

3    have to deal with.  So I really do think we're mixing apples

4    and oranges here, I think they can be dealt with separately and

5    I just frankly don't understand the prejudice to New GM in that

6    respect.

7              THE COURT:  Mr. Steinberg?

8              MR. STEINBERG:  Your Honor, I think Mr. Weisfelner

9    made the analogy about the Atari and the ping pong, I'm sitting

10   there trying to figure out how a procedural request became a

11   substantive discussion of a preliminary of a settlement

12   discussion.  But the reality is is that what Mr. Martorana just

13   said is exactly what I say -- if there's going to be argument

14   on the withdraw of a reference which is before Judge Furman we

15   need to know what the pleading is that is before Judge Furman.

16   If they want to withdraw their request vis-à-vis the GUC Trust

17   what Mr. Martorana called the GUC Trust pleading, they are free

18   to do that and we do not object to that, just they can withdraw

19   whatever they want.  If in connection with the pleading that's

20   before Your Honor, if someone wants to say and I didn't

21   appreciate this deference, but there's such a thing called the

22   GUC Trust pleading versus a no strike pleading, and that they

23   want to in effect bifurcate so that there's no, nobody has to

24   respond to the GUC Trust pleading issues, and the only thing

25   that you're focusing on in connection within their no strike,

Page 49

1    whatever omnibus pleading they filed, is the issue about

2    whether the New GM can argue that what they filed in the, on

3    the second amended complaint violated Your Honor's judgment

4    then focus on that aspect of it, then we can file our response

5    and do that as well too.

6            So Mr. Martorana says we're mixing apples and oranges

7    because he's essentially arguing a bifurcation which he says

8    exists based on the names of the pleadings, and if that's the

9    case then that's fine.  And I don't care, I just don't want to

10   be in a position where I have to file a pleading on the 20th

11   which we're prepared to do.

12           And for Your Honor with regard to the second amended

13   complaint and I don't know whether the GUC Trust aspect is part

14   of the thing that I have to respond to or not, as of this

15   moment I still think I have to, if they are bifurcating it, if

16   they are excluding it for me as well as them I don't have to

17   consider it, either they withdraw it or bifurcate it, then

18   that's okay.

19           THE COURT:  All right.  Folks, it seems to me that

20   although I would have been offended if requests had been made

21   of this character to Judge Furman without bringing it to my

22   attention first, ultimately the decision is properly to be made

23   by Judge Furman.  To the extent that the GUC Trust and the

24   plaintiffs are asking me to say to Judge Furman that to the

25   extent if any to which I have the right to be heard on this,

Page 50

1    I'm authorizing you to say that if it's okay with him it's okay

2    with me.  The second and more important issue is how any

3    standstill between the plaintiffs on the one hand and the GUC

4    Trust on the other or any deal that might thereafter be made

5    could adversely affect New GM presents a slightly harder issue

6    or perhaps a materially  harder issue.  But it is again one in

7    which I think I can and should cede whatever residual

8    jurisdiction I have over that over to Judge Furman, although

9    frankly I think it's solely a Judge Furman issue.  He may

10   conclude that he needs to know with greater clarity what the

11   GUC Trust and the plaintiffs propose to agree on matters that

12   might affect New GM or he might conclude what is before him

13   doesn't require him to know that.  That's a decision that is

14   appropriately to be decided by him without me stepping on his

15   toes.

16          Related to that is a first cousin of that which is

17   whether New GM would be impaired in its ability to address

18   these matters by not knowing yet what the deal might be with

19   respect to the plaintiffs on the one hand and the GUC Trust on

20   the other or a variant of that knowing a broad outline what the

21   concept might be, but where the devil might be in the details.

22   Ultimately by reason of the withdraw of the reference structure

23   which requires that motions for withdraw of the reference be

24   filed in the first instance by the Bankruptcy Court when then

25   calls on District Judges to make the decisions.  And by reason

Page 51

1    of that provisions in I think it's rule 9055 that says that on

2    motions to withdraw the reference proceedings in the court

3    below which is of course the Bankruptcy Court are not stayed in

4    the absence of the contrary order.  And I'm not of a mind at

5    this point if ever to issue a contrary order on matters that

6    are before Jesse Furman as a matter of judicial courtesy, and a

7    comity with a T, tango.  I think I should let Jesse Furman deal

8    with that issue as well, what I'll call the fairness issue to

9    New GM, assuming arguendo that I have the ability to tell Jesse

10   Furman what to do in that regard.  To the extent I have that

11   power, I decline to exercise it.

12         So the bottom line is that I'm in substance allowing

13   you all to say that if it's okay with Jesse Furman, it's okay

14   with me.  I assume he will consider issues of fairness to New

15   GM in terms of when New GM's response should be done if it

16   can't be consensually addressed, and if he thinks an adjustment

17   should be made that of course is also fine with me.

18   Conversely, if he decides that the existing schedule is

19   sufficient, that is also fine with me.

20         I gather from what Mr. Weisfelner said that I will

21   have at least initially before me not just New GM's motion to

22   block the plaintiffs from trying to withdraw the reference, but

23   some motion of some type to the plaintiffs to block New GM's

24   attempt to block that.  And I gather from the way both you guys

25   are talking that there's no consensual resolution of that

Page 52

1    standoff in sight.  And I'll decide after all the papers are in

2    what I should be doing in that connection.  But I'm expressing

3    no view on that now.

4            What else Mr. Steinberg?

5            MR. STEINBERG:  Your Honor, I --

6            THE COURT:  Come to the main mike if you please.

7            MR. STEINBERG:  I understood your ruling about

8    deferring to Judge Furman with regard to the motions to

9    withdraw the reference.  But there are, and I just want to make

10   sure I understood the ruling, there are the no strike pleadings

11   that are before Your Honor, and I thought the request that was

12   being made was something to do with adjourning the GUC Trust

13   response to respond to that.  And I wasn't sure how Judge

14   Furman would deal with something that's before Your Honor on

15   the no strike pleading.

16           THE COURT:  Then we have a misunderstanding because I

17   thought I was only talking about the plaintiff's motion to

18   withdraw the reference.  If there are no strike motions that

19   are before me that are not the subject of a motion to withdraw

20   the reference, I think under 9055 I've got to deal with them.

21           MR. STEINBERG:  Your Honor, just to clarify, the no

22   strike pleading is before Your Honor.  The motion to withdraw

23   the reference with regard to the no strike pleading is before

24   Judge Furman.  The request that Mr. Weisfelner was making was

25   to ask you to adjourn to allow the GUC Trust ability to respond

Page 53

```
 1    to the motion to withdraw the reference which is before Judge

 2    Furman to be adjourned.  I understood you saying that that's a

 3    Judge Furman call, but under rule 9055, that is the rule, the

 4    no strike pleading because the motion hasn't been withdrawn is

 5    before Your Honor.  And there's a time for both New GM and the

 6    GUC trust to respond to that no strike pleading which is I

 7    think July 20th.  They were asking you to allow the adjournment

 8    of that pleading in a, which is before Your Honor at that point

 9    in time because there is no stay caused by the motion to

10    withdraw the reference.

11              THE COURT:  Then I'm confused because what we were

12    talking about is something that required the GUC trust to

13    respond to Judge Furman.  Are we talking about a response that

14    GUC trust also has to make before me?

15              MR. STEINBERG:  Without, I will say yes, but I will

16    ask him to confirm that, I think it is, yes.  There are two

17    different deadlines, the motion to withdraw the reference

18    deadline, the extension is now through July 23rd, that's a

19    Judge Furman District Court issue, and then in the Bankruptcy

20    Court, the no strike pleading, the deadline is July 20th, and

21    that's a bankruptcy --

22              UNIDENTIFIED:  [indiscernible]

23              MR. STEINBERG:  20th, and that's a Bankruptcy Court

24    issue.  So I think I understood, I understood deferring to

25    Judge Furman on something that is before him but I don't, I
```

Page 54

1   wasn't sure whether you were actually saying that he should

2   decide the pleading of the time limit to, that is before you at

3   this point in time.

4          THE COURT:  I didn't understand myself to be saying

5   that because I was not then sensitive to the fact there were

6   two separate deadlines imposed upon the GUC Trust.  I think I

7   need a little more discussion on this, but I want you to talk

8   about the tentative which would be to toll the GUC Trust time

9   for both until Jesse Furman has decided what he wants to do on

10  the motion to withdraw the reference without prejudice to my

11  ability to decide what I need to do on mine after he's had a

12  chance to think about it in terms of what goes on in his court.

13  I don't want to step on his toes by issuing a substantive

14  ruling on something that is primarily before him in the first

15  instance.

16         MR. STEINBERG:  Right.  And I think what I was saying

17  in my prior presentation to Your Honor which is that if what's

18  before you now with regard to the GUC Trust is withdrawn then I

19  have no issue with that.  If they want to give them an

20  adjournment then I think they really have to bifurcate the

21  issue because I don't want to be responding to that GUC Trust

22  issue while they're not responding to that issue, and Your

23  Honor won't have a complete record when this thing is argued.

24         THE COURT:  My tentative, and I'm going to give both

25  Mr. Weisfelner and Mr. Martorana a chance to comment on this

Page 55

1    part as well, would be that anything that is before me that

2    while I toll it for the GUC Trust, I would also toll it for New

3    GM.  And then that's without prejudice to anybody's rights to

4    come back after Jesse Furman has expressed any views to tell me

5    that I should change that approach.  Mr. Weisfelner?

6           MR. WEISFELNER:  Your Honor, I apologize both to the

7    Court and to Mr. Steinberg, I think I haven't made myself

8    clear.  With regard to the motion that's pending currently

9    before Your Honor but is subject to a motion to withdraw, that

10   being the plaintiff's no strike no stay GUC Trust pleading

11   which was filed in an omnibus, we can without judicial

12   intervention I would respectfully suggest cause the GUC Trust

13   not to have to file any pleadings if we withdraw that portion

14   of our omnibus motion without prejudice that relates to the GUC

15   Trust assets.  That would result in no party having to address

16   the GUC Trust pleadings on the merits.

17           THE COURT:  I know I'm interrupting, and that would

18   be a one sentence, a one page piece of paper?

19           MR. WEISFELNER:  Yes, Your Honor.

20           THE COURT:  Keep going.

21           MR. WEISFELNER:  Now, frankly the reason why we

22   didn't lead off with that is and one of the reasons I wanted a

23   meet a confer tomorrow where it's not just me but I actually

24   have my lead counsel involved and I understood Mr. Steinberg

25   wouldn't get Kirkland and Ellis involved.  We're sort of mixed

Page 56

1   up in a scenario where and again I don't want to prejudice the

2   record any further than we've already elaborated on it, but New

3   GM takes the position that there is no accordion fees, so we

4   can bang our heads against the wall unless and until Your

5   Honor's decision with regard to equitable mootness is reversed,

6   you can never have an accordion feature to trigger.  What I'm

7   concerned about is to the extent that I withdraw my GUC Trust

8   pleading, which Your Honor laid out as one of the mechanics in

9   your June 1st order, I got to make sure that I'm not prejudice

10  down the road with regard to our appellate rights.  Assuming we

11  can overcome that hurdle which I think we can do by consent,

12  then among what we would do is, we would withdraw that portion

13  of our omnibus pleadings that relate to the GUC Trust and the

14  GUC Trust assets, and I think that's what's going to happen.

15  I'm just not there yet because I need my lead counsel's consent

16  and I need to hear from K and S as well as King and Spalding

17  and that's what tomorrow's noon conference is all about.

18          THE COURT:  I lost you in the acronyms.  I know who

19  King and Spalding is, who is --

20          MR. WEISFELNER:  Oh, I'm sorry, it's K and E,

21  Kirkland and Ellis.

22          THE COURT:  Okay.  Kirkland I understand.  Okay.

23          MR. WEISFELNER:  So, Your Honor, again I think where

24  we are is the first deadline was that we were concerned about

25  was the deadline in front of Judge Furman on the motion to

Page 57

1    withdraw the reference.

2            MR. MARTORANA:  One here on the 20th.

3            MR. WEISFELNER:  I'm sorry, the one that's due here

4    on the 20th which is their response on the merits to our GUC

5    Trust pleadings.

6            THE COURT:  Which could be withdrawn but you got to

7    do some protective stuff.

8            MR. WEISFELNER:  That's right.  And I'm hoping to get

9    it withdrawn you know before close of business on Friday.  The

10   next deadline to worry about is the deadline for responding to

11   our motion to withdraw the reference as it relates to the GUC

12   Trust pleading which is a deadline that's before Judge Furman.

13   Obviously if we withdraw that portion of the omnibus motion

14   that relates to the GUC Trust pleading then having withdrawn it

15   there is no predicate to another judge and that will become

16   moot.  And our only purpose for again rising and informing Your

17   Honor that we may have pieces of paper in front of you or Judge

18   Furman or and/or Judge Furman is because you were anticipating

19   a slew of pleadings on the 20th, and in the absence of one of

20   those pleadings or getting an intervening message from us that

21   the motion has been amended since we were all here today we

22   wanted to take an opportunity to let you know what might be

23   coming down the pike.  And instead of clarifying things and

24   making things easier we have obviously done just the opposite.

25   For that I apologize.

Page 58

1          THE COURT:  All right.  But Mr. Martorana has a more

2    urgent need which is he's got a pleading due before me

3    tomorrow.

4          MR. MARTORANA:  Not tomorrow, on the 20th.

5          THE COURT:  Monday.

6          MR. MARTORANA:  Monday, right.  And for that, Your

7    Honor, there is a little bit of concern that I have because now

8    what I've heard is that they'll probably withdraw the

9    underlying pleading but they have to get consent from New GM

10   and they need to talk about it tomorrow at noon.  I guess what

11   I would ask Your Honor is there any way that we can temporarily

12   --

13         THE COURT:  Your time to respond --

14         MR. MARTORANA:  Exactly.

15         THE COURT:  And the tentative that I articulated to

16   all three of you, four if you count Ms. Newman, is that my

17   tentative is to give you the extra time to kind of toll it for

18   a while, but also insofar as stuff is before me to give Mr.

19   Steinberg that same right.

20         MR. WEISFELNER:  Your Honor, I think what I'm hearing

21   is that the way to get everybody comfortable is to --

22         THE COURT:  Come to a mike because this is --

23         MR. WEISFELNER:  I apologize.  Is for us to agree in

24   open Court that everyone's time to respond to our omnibus

25   motion is tolled through the 23rd.  And if Your Honor is

Page 59

1    acceptable and can so order that, I think we're all comfortable

2    for today and we can move on and try and get this thing

3    resolved.

4              THE COURT:  Mr. Steinberg, how does that sound to

5    you?

6              MR. STEINBERG:  That's fine, Your Honor.

7              THE COURT:  All right.

8              MR. MARTORANA:  That's okay with us too, Your Honor.

9              THE COURT:  Okay.  So I'm so ordering the record and

10   the time for everybody, not just the GUC Trust is tolled under

11   the 23rd without prejudice to anybody's rights to come in for a

12   modification of that on or before that date.  But with that

13   said, I would really like your guys in your meet and confer

14   tomorrow to see if you can put meat on the bones of that bare

15   bones tolling to see if there is a clear recommendation that is

16   agreed upon by all parties for the benefit of Judge Furman and

17   me as our interest may appear so to speak.

18              So talk about this in your meet and confer and see if

19   there's any stip or consent order that you can put forward to

20   which would presumably be partly before me, maybe a material

21   part before me, but which could also be something that will

22   need to be reviewed and approved by Judge Furman.

23              MR. WEISFELNER:  Your Honor, at the risk of having my

24   head handed to me.

25              THE COURT:  Yes, you are subjecting yourself to that

Page 60

1    risk at this point.

2           MR. WEISFELNER:  And, Your Honor, I'd like to think

3    it's, you know, for the benefit of all the parties here who are

4    worried about appeals, the timing of appeal, whether we're

5    going to the Second Circuit or Judge Furman, and I presume Your

6    Honor has seen Judge Furman's endorsed order.

7           The other issue that we're all struggling with is the

8    timing for resolution of outstanding motions to

9    reconsideration.  Your Honor is aware that there is a motion

10   for reconsideration filed by Mr. Pillar and none of us are

11   aware of whether or when a hearing on those matters is likely

12   to occur.

13          THE COURT:  There won't be a hearing, but when the

14   opinion, the rules of this Court, local rules of this Court

15   don't require hearings on motions for rearguments.  When the

16   exact opinion will be done is something I can't give you as

17   much assurance on, although I can tell you with certainty that

18   you're not going to get it today.  Okay?  Anything else?

19   Anyone else want to have his or her head handed to him or her?

20   We're adjourned.

21          (Hearing Adjourned 11:53 AM)

22

23

24

25

Page 61

1                          I N D E X

2

3    WITNESS              DIRECT    CROSS    REDIRECT    RECROSS

4

5

6

7                            RULINGS

8    DESCRIPTION                                          PAGE

9

10   Hearing Re:  No Stay Pleading                          25

11

12   Hearing Re:  Motion to Strike Certain Documents

13   Contained in Appellants' Designation of Items to

14   be Included in the Record on Appeal                    52

15

16

17

18

19

20

21

22

23

24

25

Page 62

1                        CERTIFICATION

2          I, Theresa Pullan, certify that the foregoing is a

3    correct transcript from the official electronic sound recording

4    of the proceedings in the above-entitled matter.

5    Theresa Pullan

Digitally signed by Theresa Pullan
DN: cn=Theresa Pullan, o, ou,
email=digital1@veritext.com, c=US
Date: 2015.07.30 12:16:56 -04'00'

6    AAERT Certified Electronic Transcriber CET**00650

7    Theresa Pullan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY  11501