**Presentment Date: September 4, 2015 at 12:00 noon (Eastern Time)**
**Response Deadline:  September 4, 2015 at 11:30 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.:  09-50026 (REG) |
|     f/k/a General Motors Corp., *et al.* | : | |
| | : | |
|               Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------x

**APPLICATION BY GENERAL MOTORS LLC, PURSUANT TO THE**
**JUDGMENT DATED JUNE 1, 2015, IN SUPPORT OF AN ORDER**
**DIRECTING PLAINTIFFS IN THE BAVLSIK LAWSUIT TO WITHDRAW**
<u>**THEIR PUNITIVE DAMAGES REQUEST IN THEIR COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND RELEVANT TO APPLICATION ....................................................................2

    A.  The Sale Agreement/Assumed Liabilities/Punitive Damages .......................................2

    B.  The Sale Order and Injunction, and Claims Based on Old GM Conduct....................5

    C.  The Motions to Enforce, and the Bankruptcy Court's
       Decision and Judgment on the Four Threshold Issues................................................6

    D.  Previous Attempts to Address the Punitive Damages Issue...........................................7

    E.  The Bavlsik Lawsuit .....................................................................................................8

    F.  Judgment Procedure Relating to Bavlsik Lawsuit .......................................................9

ARGUMENT ...............................................................................................................................11

    PLAINTIFFS SHOULD BE DIRECTED TO WITHDRAW
    THEIR REQUEST FOR PUNITIVE DAMAGES ..............................................................11

    A.  Punitive Damages in General......................................................................................11

    B.  Punitive Damages Claims Are Not Part of Product Liability Claims.........................12

    C.  New GM Only Assumed Product Liability Claims of The
       Sellers, Who, At the Time, Were Debtors in a Bankruptcy
       Case, and Were Not Liable for Punitive Damages.......................................................14

    D.  Principles of Contract Construction and
       New York Law Bar Punitive Damages .......................................................................16

DMSLIBRARY01\21600\162081\26696496.v3-8/28/15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Honda Fin. Corp. v. Simao*,
  526 F. App'x 112 (2d Cir. 2013) ......................................................................... 17

*Castillo v. General Motors Co. (In re Motors Liquidation Co.)*,
  Adv. Proc. No. 09-00509, 2012 WL 1339496 (Bankr. S.D.N.Y. Apr. 17, 2012) ...................... 4

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust*,
  93 F.3d 1064 (2d Cir. 1996) ................................................................................ 17

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*,
  532 U.S. 424 (2001) ........................................................................................ 11

*Corral v. Outer Marker LLC*,
  No. 10-CV-1162 SJF ARL, 2012 WL 243318 (E.D.N.Y. Jan. 24, 2012) ............................... 17

*Cush-Crawford v. Adchem Corp.*,
  271 F.3d 352 (2d Cir. 2001) ................................................................................ 12

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ........................................................................................ 11

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
  74 N.Y.2d 487 (1989) ....................................................................................... 17

*IBM Poughkeepsie Employees Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*,
  590 F.Supp. 769 (S.D.N.Y.1984) ........................................................................... 16

*In re Best Payphones, Inc.*,
  523 B.R. 54 (Bankr. S.D.N.Y. 2015) ....................................................................... 14

*In re Ephedra Products Liability Litigation*,
  329 B.R. 1 (S.D.N.Y. 2005) ................................................................................ 14

*In re K-V Discovery Solutions, Inc.*,
  396 B.R. 330 (Bankr. S.D.N.Y. 2013) ...................................................................... 17

*In re Motors Liquidation Co.*,
  529 B.R. 510 (Bankr. S.D.N.Y. 2015) ............................................................... 2, 6, 7, 13

*Molzof v. U.S.*,
  502 U.S. 301 (1992) ........................................................................................ 12

*Newport v. Fact Concerts, Inc.*,
  453 U.S. 247 (1981) ........................................................................................ 12

DMSLIBRARY01\21600\162081\26696496.v3-8/28/15

*Quadrant Structured Prods. Co.,*
   23 N.Y.3d. 549 (N.Y. 2014) .................................................................................................. 16

*Symbol Technologies, Inc. v. Voicenet (Aust.) Ltd.,*
   No. CV-03-6010 SJF ARL, 2008 WL 89626 (E.D.N.Y. Jan. 4, 2008) ..................................... 17

*Trusky v. General Motors LLC (In re Motors Liquidation Co,),*
   Adv. Proc. No. 12-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013).............. 5, 6, 13

*Virgilio v. City of New York,*
   407 F.3d 105 (2d Cir. 2005).................................................................................................... 11

## Statutes

11 U.S.C. § 726(a)(4).................................................................................................................. 14

General Motors LLC ("**New GM**"), by its undersigned counsel, submits this application ("**Application**"), pursuant to paragraph 18(c) of the Judgment, dated June 1, 2015 ("**Judgment**"), in support of a proposed order ("**Proposed Order**") directing plaintiffs ("**Plaintiffs**") in the lawsuit captioned *Michael Bavlsik, et al. v. General Motors LLC* ("**Bavlsik Lawsuit**"), pending in the United States District Court for the Eastern District of Missouri ("**Missouri Court**"), to withdraw their claim for punitive damages contained in Plaintiffs' Complaint ("**Complaint**").[1]  In support thereof, New GM represents as follows:

## PRELIMINARY STATEMENT

1.     Pursuant to the Amended and Restated Master Sale and Purchase Agreement (as amended) ("**Sale Agreement**"), approved by this Court by Order dated July 5, 2009 ("**Sale Order and Injunction**"), New GM purchased assets ("**363 Sale**") of Motors Liquidation Company (f/k/a General Motors Corporation) ("**Old GM**"), and agreed to assume only three categories of liabilities for vehicles and parts manufactured/sold by Old GM: (a) post-363 Sale accidents/incidents involving Old GM vehicles causing personal injury, loss of life or property damage ("**Product Liability Claims**"); (b) repairs provided for under the "glove box warranty"—a specific written warranty, of limited duration, that only covers repairs and replacement of parts and not monetary damages; and (c) Lemon Law claims (as defined in the Sale Agreement) essentially tied to the failure to honor the glove box warranty. All other liabilities relating to vehicles/parts manufactured/sold by Old GM were "Retained Liabilities" of Old GM.  *See* Sale Agreement § 2.3(b).  That was the fundamental basis of New GM's contractual agreement to purchase Old GM's assets free and clear of all liens and claims (other than contractually-defined Assumed Liabilities).

---

[1]    A copy of the Complaint is annexed hereto as **Exhibit "A."**

1

2.      As this Court already concluded in the Decision (as herein defined) and the Judgment, other than Independent Claims (as defined herein) propounded by Ignition Switch Plaintiffs based *exclusively* on New GM conduct, which circumstance is not present here, New GM did not acquire any *new* liabilities to Old GM vehicle owners.  The assertion of such a "new liability" claim against New GM is, in reality, a successor liability claim (dressed up to look like something else), and is barred by the Sale Order and Injunction.

3.      The Bavlsik Lawsuit alleges certain claims relating to a July 7, 2012 accident involving a 2003 GMC Savana van.  As noted, New GM assumed Product Liability Claims, and this aspect of the Complaint (seeking compensatory damages directly relating to the accident) is not barred by the Sale Order and Injunction.[2]  However, the Bavlsik Lawsuit asserts claims other than Product Liability Claims.  It seeks punitive damages premised on Old GM conduct that is not compensation for the injuries incurred in the accident.  The Sale Order and Injunction does not provide that New GM is liable for these types of damages.[3]  To the contrary, on its face, the Sale Agreement expressly excludes punitive damages from the definition of "Damages" allowed under the Sale Agreement.  *See* Sale Agreement, p. 5 (defining "Damages" as "any and all Losses, *other than* punitive damages" (emphasis added)).  As demonstrated herein, New GM never assumed punitive damages relating to Product Liability Claims for an Old GM vehicle.

## BACKGROUND RELEVANT TO APPLICATION

### A.      The Sale Agreement/Assumed Liabilities/Punitive Damages

4.      The resolution of this issue should begin and end with the plain language of the Sale Agreement.  The Definitions section of the Sale Agreement confirms that New GM did not

---

[2]      New GM disputes liability for the Product Liability Claims and ultimately the merits dispute will be decided in the Missouri Court.

[3]      *See In re Motors Liquidation Co.*, 529 B.R. 510, 528 (Bankr. S.D.N.Y. 2015).

DMSLIBRARY01\21600\162081\26696496.v3-8/28/15

assume punitive damages.  Under the Sale Agreement, "Product Liability Claims" are a type of "Liabilities" which, in turn, are a type of "Losses."[4]  The contractual term "Damages" is defined in the Sale Agreement as "any and all Losses, ***other than punitive damages***."  Sale Agreement, p. 5 (emphasis added).

5.      More broadly, under the Sale Agreement, New GM agreed to assume liabilities for personal injury, loss of life, or property damage caused *directly* by a post-363 Sale accident/incident involving the operation/performance of an Old GM vehicle/part.  Specifically, Section 2.3(a)(ix) of the Sale Agreement defines Product Liability Claims as:

> all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise ***directly*** out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date and arising from such motor vehicles' operation or performance ….

*Id.* (emphasis added).

This provision was added to the Sale Agreement (after the original version of the Sale Agreement was filed with the Bankruptcy Court) to address specific objections made to the 363 Sale by certain objectors (such as States' Attorneys General and the Creditors Committee).[5] Those objections discussed the necessity of paying compensatory damages to future accident victims relating to Old GM vehicles.  No objector asserted that New GM should assume punitive damages claims.[6]  Indeed, since unsecured creditors were to receive their dividend from the Old

---

[4]    Losses are defined as "any and all Liabilities, losses, damages, fines, amounts paid in settlement, penalties, costs and expenses (including reasonable and documented attorneys', accountants', consultants', engineers' and experts' fees and expenses)." *Id.* at p. 11.

[5]    The original version of the Sale Agreement provided that New GM would only assume Product Liabilities "arising out of products delivered to a consumer, lessee or other purchaser of products at or after the Closing." Original Sale Agreement, § 2.3(a)(ix) [Dkt. No. 92-1].

[6]    *See, e.g., Joinder And Limited Objection Of The States Of Connecticut, Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Dakota And Vermont,* filed on June 19, 2009 [Dkt. No. 1926] ("The States submit

DMSLIBRARY01\21600\162081\26696496.v3-8/28/15

GM estate in the form of New GM stock and warrants, it would have been counter-intuitive for the Creditors Committee to have urged New GM to assume punitive damage claims that would have only diluted the value of their future New GM equity interests. And, it would have been counter-intuitive for New GM to have agreed to assume obligations that Old GM would never have been required to pay.  *See* Argument, Section C, *infra*.

6.    The word *directly* in Section 2.3(a)(ix) has a critical importance.  It signifies that New GM agreed to assume only compensatory damages relating to the specific accident. The clause "death, personal injury, or other injury to Persons or damage to property" is repeated twice in Section 2.3(a)(ix).  In the second repetition, the word "directly" is inserted. That was purposeful. It was intended to specifically tie the compensatory product liability damage assumed to the particular accident.  This concept was reaffirmed in Section 2.3(a)(ix) by the use of the clause "arising from such motor vehicles' operation or performance."  In other words, the damages to compensate for actual loss must relate to the performance of the vehicle during the accident.

7.    Punitive damages are legally and fundamentally different from such assumed compensatory damages.  They are awarded in rare instances to punish a wrongdoer for egregious conduct and to deter its repetition.  Under the Sale Agreement, New GM only agreed to assume those liabilities that it deemed commercially necessary for the operation of its new business.[7]  It

---

that this Court should not enter any order depriving purchasers of GM vehicles of legal rights to be compensated for death or serious injuries caused by defects in GM products."); *Memorandum Of Law In Support Of The Limited Objection Of Callan Campbell, Kevin Junso, Et Al., Edwin Agosto, Kevin Chadwick, Et. Al., Joseph Berlingieri, And The Center For Auto Safety, Et Al., To The Debtors' 363 Motion For The Sale Of The "Purchased Assets" Free And Clear Of Potential Successor Liability Claims*, filed June 22, 2009 [Dkt. No. 2177] ("People who have not yet suffered injury or loss because of GM's behavior cannot have an 'interest in' GM's property because the injuries that would lead them to have such an interest have not yet even occurred.").

[7]    *See Castillo v. General Motors Co. (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-00509, 2012 WL 1339496, at *4 (Bankr. S.D.N.Y. Apr. 17, 2012) ("In short, by the end of the 363 Sale hearing it was clear not only to Old GM and Treasury, but also to the Court and to the public, that the goal of the 363 Sale was to pass

DMSLIBRARY01\21600\162081\26696496.v3-8/28/15

obviously never meant New GM paying for non-compensatory awards that are designed to *punish* Old GM for egregious conduct relating to its manufacture/sale of Old GM vehicles/parts. After all, punishing New GM for Old GM conduct was of no commercial benefit to New GM. And, punishing Old GM would have little utility since Old GM was no longer going to be in business after the 363 Sale.  Further, since punitive damages would never be paid by the Old GM bankruptcy estate, there was no benefit to Old GM if such liabilities were paid by New GM.  In fact, as noted, unsecured creditors who were to be the future equity holders of New GM would have been worse off by New GM's assumption of such damages. Indeed, it would have been particularly irksome to Old GM's unsecured creditors, for New GM to have assumed punitive damages, since such damages are otherwise subordinated to unsecured claims.

## B.    The Sale Order and Injunction, and Claims Based on Old GM Conduct

8.    The Sale Order and Injunction provides that, except for Assumed Liabilities,[8] New GM shall not be liable for Old GM's conduct (including acts and failures to act). Specifically, Paragraph AA of the Sale Order and Injunction provides, in relevant part:

> The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and, except for the Assumed Liabilities, will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of liens, claims, encumbrances, and other interests (other than Permitted Encumbrances), including rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code) based on any successor or transferee liability, including, but not limited to … all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement,

---

on to Old GM's purchaser—what thereafter became New GM—only those liabilities that were commercially necessary to the success of New GM."); *Trusky v. General Motors LLC (In re Motors Liquidation Co,),* Adv. Proc. No. 12-09803, 2013 WL 620281, at *8 (Bankr. S.D.N.Y. Feb. 19, 2013) ("Nor did New GM assume liability for Old GM's failures under other theories.  As I noted in *Castillo*, the intent of the parties was to pass on only those liabilities that were commercially necessary to the success of New GM.").

[8]    As noted, New GM's position is that punitive damages are not Assumed Liabilities.

DMSLIBRARY01\21600\162081\26696496.v3-8/28/15

understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor or transferee liability.

*See also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013) ("New GM is not liable for Old GM's conduct or alleged breaches of warranty.").

9.      Various other provisions of the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (other than Assumed Liabilities) predicated on Old GM's conduct, relating to the operation of Old GM's business, or the production of vehicles/ parts before the closing of the 363 Sale, and that creditors and other parties in interest were barred from asserting such liabilities, including successor liability claims, against New GM. *See*, *e.g.*, Sale Order and Injunction, ¶¶ 8, 9, 46.

**C.      The Motions to Enforce, and the Bankruptcy Court's
Decision and Judgment on the Four Threshold Issues**

10.      In 2014, New GM filed three motions ("**Motions to Enforce**") with the Bankruptcy Court seeking to enforce the provisions of the Sale Order and Injunction.  The Motions to Enforce did not concern lawsuits based exclusively on "Product Liability Claims." However, to the extent  lawsuits—like the Bavlsik Lawsuit—contain other claims that constitute Retained Liabilities (*i.e.*, punitive damages), the Motions to Enforce were applicable to such claims.

11.      In connection with the Motions to Enforce, the parties and the Court ultimately agreed to address four threshold issues ("**Four Threshold Issues**").  After briefing and oral argument, the Court rendered its *Decision on Motion to Enforce Sale Order* on April 15, 2015 ("**Decision**").[9]  The Court specifically held, among other things, that it will continue to enforce

---

[9]      *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).

the prohibitions against successor liability and New GM is not liable for Old GM conduct: "Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand." *Id.* at 528.

12.    On June 1, 2015, the Court issued the Judgment, memorializing its rulings set forth in the Decision.[10] The Judgment provides, in relevant part, as follows:

> Except for Independent Claims[[11]] and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment.

Judgment ¶ 9.

## D.    Previous Attempts to Address the Punitive Damages Issue

13.    The issue as to whether a request for punitive damages that is based on Old GM conduct was assumed by New GM previously came up in connection with the *No Strike Motion Pursuant to Judgment by Dolly Walton*, dated June 18, 2015 [Dkt. No. 13228] ("**Walton No Strike Pleading**").  After New GM responded to the Walton No Strike Pleading, arguing that the punitive damages request by the *Walton* plaintiffs was in violation of the Sale Order and Injunction, the *Walton* plaintiff agreed to dismiss her request for punitive damages.  The punitive damages issue also recently came up in connection with another lawsuit against New GM but, after serving a demand letter, and approximately 30 days of discussion, like the *Walton* plaintiff,

---

[10]    Notices and cross-notices of appeal have been filed with respect to the Judgment.  On the same day that the Judgment was entered, the Court certified the Judgment for direct appeal to the Second Circuit.

[11]    "Independent Claims" are defined in the Judgment as "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct."  Judgment ¶ 4.  The Bavlsik Lawsuit is not an ignition switch case and therefore, the modification to the Sale Order and Injunction to allow, in certain circumstances, Independent Claims to be asserted against New GM, does not apply to Plaintiffs.

the plaintiffs in that other lawsuit agreed to voluntarily strike their request for punitive damages. Accordingly, the punitive damages issue remains ripe for determination. It is a common issue that is asserted in approximately 80 pending lawsuits.

### E.    The Bavlsik Lawsuit

14.    While Plaintiffs' complaint asserts Product Liability Claims against New GM, it goes further and seeks punitive damages based on Old GM conduct. In doing so, it improperly refers to both Old GM and New GM interchangeably, purposefully conflating these two separate and distinct entities as a defined "GM." In fact, sample allegations from the Complaint set forth below, clearly show that the conduct of the ill-defined "GM" concerns *exclusively* the conduct of Old GM (not New GM):

i.    "At the time the Subject Vehicle was sold new, it was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended when it *left GM's control*." Complaint, ¶ 15 (emphasis added).

ii.    "*GM designed*, fabricated, produced, compounded, proceeded, assembled, developed, manufactured, tested, distributed, sold, warranted, and placed on the market and into the stream of commerce a defective and unreasonably dangerous product, namely the 2003 GMC Savana, including the Subject Vehicle, knowing that the Subject Vehicle would reach consumers without substantial change in the condition in which it was sold and that, at the time the Subject Vehicle *left GM's control*, it was defective and in an unreasonably dangerous condition." Complaint, ¶ 23 (emphasis added).

iii.    "*GM* knowingly failed to adequately test the 2003 Savana before and during the design, production, and sale of the Subject Vehicle to the public and/or knowingly placed the dangerously designed vehicle into the stream of commerce." Complaint, ¶ 27 (emphasis added).

iv.    "*GM* breached its duty to Plaintiffs by manufacturing and marketing the 2003 Savana, including the Subject Vehicle, in a defective and unreasonably dangerous condition, in that the Subject Vehicle's electronic stability control system, structural system, restraint system and air bag system were defective and unreasonably dangerous as set forth above." Complaint, ¶ 37 (emphasis added).

8

v. "*GM failed* to exercise reasonable care in the manufacture and design of the Subject Vehicle." Complaint, ¶ 39 (emphasis added).

vi. "*GM knowingly* failed to adequately inspect and/or test the 2003 Savana, including the Subject Vehicle, before and during the design, production and sale of the vehicle to the public and/or knowingly placed the defective and unreasonably dangerous vehicle in the stream of commerce." Complaint, ¶ 40 (emphasis added).

vii. "*GM negligently, recklessly*, and/or knowingly sold the 2003 Savana, including the Subject Vehicle, without technologically available safety features, despite being fully aware of the important safety benefits provided by such systems." Complaint, ¶ 41 (emphasis added).

15. Plaintiffs then demand punitive damages against New GM premised on these allegations that are based on exclusively Old GM conduct. In fact, the summation sentence exemplifies the flawed terminology in an effort to manufacture a punitive damage claim against New GM for a 2003 GMC vehicle that was designed, manufactured and sold six years before New GM came into existence: "The aforesaid misconduct of GM constituted a gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, including Plaintiff, thus justifying and requiring punitive damages to be assessed against GM in a sum that will deter GM and others from such misconduct in the future." Complaint, ¶¶ 34, 49. In all circumstances, this punitive damage demand seeks relief far greater than the compensatory damages directly related to the specific post-363 Sale accident alleged in the Complaint, which is contrary to the Sale Order and Injunction.

**F.    Judgment Procedure Relating to Bavlsik Lawsuit**

16. The trial in the Bavlsik Lawsuit is scheduled to begin in mid-September 2015. A year earlier, at a hearing before the Missouri Court on September 30, 2014, the Plaintiffs withdrew the only expert opinion offered in the Bavlsik Lawsuit relating to punitive damages. In light of that, New GM reasonably assumed that Plaintiffs were no longer pursuing any punitive damages claim.

9

17.    As the pretrial conference approached, however, and because the punitive damages claim had not formally been withdrawn, on August 21, 2015, New GM sent Plaintiffs a letter ("**August 21 Letter**"),[12] seeking confirmation that the punitive damages claim had been withdrawn.  To the extent the Plaintiffs were still requesting punitive damages, in accordance with paragraph 18 of the Judgment, the August 21 Letter set forth why such a claim is barred by the Sale Order and Injunction, as well as the Decision and Judgment, and that the request for punitive damages should be withdrawn.

18.    By letter dated August 25, 2015 ("**August 25 Letter**"),[13] Plaintiffs responded to New GM's August 21 Letter.  Instead of confirming that they had withdrawn their request for punitive damages, Plaintiffs asserted that they "have no intention of dismissing our punitive damages claim."  August 25 Letter, at 3.  Plaintiffs also proclaimed that the Judgment procedures do not apply in this case.  *See id.* at 2.

19.    Paragraph 18(c) of the Judgment provides as follows:

If an Additional Party fails to either (i) dismiss without prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that New GM asserts violates the Decision, Judgment, and/or Sale Order (as modified by the Decision and this Judgment), or (ii) timely file a No Dismissal Pleading with the Court within the time period set forth above, New GM shall be permitted to file with this Court a notice of presentment on five (5) business days' notice, with an attached Dismissal Order that directs the Additional Party to dismiss without prejudice the Additional Lawsuit or the claims and/or causes of action contained therein that violate the Decision, this Judgment and/or the Sale Order (as modified by the Decision and this Judgment), within 17 business days of receipt of the Dismissal Order.

20.    Plaintiffs' unilateral assertion that the procedures in the Judgment do not apply to the Bavlsik Lawsuit can only mean that the Plaintiffs will not be amending the Complaint or filing a No Dismissal Pleading, and, instead, will be proceeding as if the Judgment and the other

---

12    A copy of the August 21 Letter is annexed hereto as **Exhibit "B."**

13    A copy of the August 25 Letter is annexed hereto as **Exhibit "C."**

DMSLIBRARY01\21600\162081\26696496.v3-8/28/15

rulings of this Court never happened and do not apply to them.  New GM is, thus, authorized by

paragraph 18(c) of the Judgment to file this Application and accompanying notice of

presentment and Proposed Order.

21.    Contemporaneously with this filing, New GM has sought relief from the District

Court to adjourn the pending trial until this Court can resolve the issue presented herein.

## ARGUMENT

### PLAINTIFFS SHOULD BE DIRECTED TO WITHDRAW THEIR REQUEST FOR PUNITIVE DAMAGES

22.    Pursuant to the Judgment, the Decision and the Sale Order and Injunction,

Plaintiffs cannot seek punitive damages from New GM for Product Liability Claims.

Accordingly, as explained below, any request for punitive damages should be withdrawn by

Plaintiffs.

**A.    Punitive Damages in General**

23.    As stated by the United States Supreme Court,

> Although compensatory damages and punitive damages are typically awarded at
> the same time by the same decision maker, they serve distinct purposes. The
> former are intended to redress the concrete loss that the plaintiff has suffered by
> reason of the defendant's wrongful conduct. [citations omitted]. The latter, which
> have been described as "quasi-criminal," [citation omitted] operate as "private
> fines" intended to punish the defendant and to deter future wrongdoing.

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001); *see also*

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) ("[Punitive damages] are not

compensation for injury.  Instead, they are private fines levied by civil juries to punish

reprehensible conduct and to deter its future occurrence."); *Virgilio v. City of New York*, 407

F.3d 105, 116 (2d Cir. 2005) ("While compensatory damages recompense for one's injuries,

punitive damages under New York law serve an entirely different purpose.  Punitive damages are

invoked to punish egregious, reprehensible behavior."); *Cush-Crawford v. Adchem Corp.*, 271

11

F.3d 352, 359 (2d Cir. 2001) ("the objectives of punitive damages by definition differ from the objectives of compensatory damages").

24.     "The common-law definition of 'punitive damages' focuses on the nature of the defendant's conduct.  As a general rule, the common law recognizes that damages intended to compensate the plaintiff are different in kind from 'punitive damages.'"  *Molzof v. U.S.*, 502 U.S. 301, 307 (1992).  "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor …, and to deter him and others from similar extreme conduct."  *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-267 (1981).

## B.     **Punitive Damages Claims Are Not Part of Product Liability Claims**

25.     As a starting point, the Sale Agreement expressly precludes an award of punitive damages against New GM for Old GM conduct—"Damages" is defined as "any and all Losses, ***other than*** punitive damages."  Sale Agreement, p. 5 (emphasis added).  This language and distinction should end the inquiry of whether punitive damages were included in the Sale Agreement as an Assumed Liability; they were not.

26.     More broadly, even in the absence of this plain text, the language used in the Sale Agreement to describe Product Liability Claims demonstrates that punitive damages were not included in the category of Assumed Liabilities.  In order for a claim to be a Product Liability Claim, it must be a liability:

> i.      to a third party "for death, personal injury, or other injury to Persons or damage to property;"
>
> ii.     "caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles;"
>
> iii.    related to a motor vehicle or part "in each case, manufactured, sold or delivered by Sellers;"

      iv.    that "arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date;"

      v.    and "arising from such motor vehicles' operation or performance …."

27.    Clearly, each of the above elements comprising a Product Liability Claim necessarily concerns compensatory damages arising from a single, specific accident and not a liability based on punitive damages.  Accordingly, based on the language used to define Product Liability Claims, New GM only agreed to assume compensatory damages related to post-363 Sale accidents involving Old GM vehicles/parts, and was not agreeing to assume punitive damages.  This interpretation is also consistent with the basis for the June 26, 2009 amendment (as further amended on June 30, 2009) to the Sale Agreement that added Product Liability Claims, as well as this Court's rulings that (a) recognized New GM was only assuming liabilities that were commercially necessary for its operations, and (b) prohibited claims against New GM based on Old GM conduct.  *See*, *e.g.*, Judgment ¶ 9; Decision, 529 B.R. at 528; *Trusky*, 2013 WL 620281, at *2.

28.    As noted, the language in Section 2.3(a)(ix) that includes the word "directly" and the clause "arising from such motor vehicles' operation or performance" are intended to connect the Product Liability Claim assumed to the specific accident.  That intertwining is indicative of compensatory damages, not punitive damages.

29.    Accordingly, Plaintiffs' request for punitive damages must be stricken from the Complaint.

C.    **New GM Only Assumed Product Liability Claims of The
      Sellers, Who, At the Time, Were Debtors in a Bankruptcy
      Case, and Were Not Liable for Punitive Damages**

30.    The "Sellers" under the Sale Agreement were debtors in bankruptcy.  Thus, any

liabilities *assumed* by New GM would be limited to liabilities that would have been otherwise

allowed and paid by the Debtors.

31.    Pursuant to Section 726(a) of the Bankruptcy Code, general unsecured claims

(either timely filed or tardily filed) are paid in full before an allowed claim "for any fine, penalty,

or forfeiture, or for multiple, exemplary or punitive damages, arising before the earlier of the

order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or

damages are not compensation for actual pecuniary loss suffered by the holder of such claim[.]"

11 U.S.C. § 726(a)(4); *see also In re Ephedra Products Liability Litigation*, 329 B.R. 1, 9

(S.D.N.Y. 2005) ("in bankruptcy punitive damages and penalties are given a low priority of

distribution so that general creditors are paid in full before any estate assets are used to pay

penalties").

32.    While the Debtors' cases were Chapter 11 cases, Section 726 is applicable

pursuant to the "best interest of creditors" test, *i.e.*, that holders of claims in a Chapter 11 case

must receive on account of their claims at least as much as they would receive in a Chapter 7

case.  *See*, *e.g.*, *In re Best Payphones, Inc.*, 523 B.R. 54, 75 (Bankr. S.D.N.Y. 2015) ("Section 11

U.S.C. § 1129(a)(7) requires a creditor to receive or retain at least as much property under the

plan as it would in a hypothetical chapter 7 liquidation. It is the lowest point below which a

proposed distribution may not fall, and must be read together with 11 U.S.C. § 726(a), which

governs the priority of distribution in a chapter 7 case.").

33.    At oral argument on the Four Threshold Issues, this Court recognized that

punitive damages claims would not have received a distribution from the Debtors.  *See* Tr. of

14

Hearing, Feb. 18, 2015, at 89 ("But in the claims process, you don't get punitive damages, you don't get RICO damages, because there's well-established authority.  I think I held this earlier in GM in the [Apartheid] opinion, that punitives in the claims context, in a liquidating plan, penalized the wrong guys.  They penalized the innocent unsecured Creditors.").[14]

34.    It cannot be disputed that New GM was a newly formed company, completely separate and apart from Old GM. The public policy purposes for punitive damages cannot be served by burdening a new company with the acts of the old company.  Any punishment must be directed at the entity that committed the bad conduct.  Penalizing New GM (with punitive damages) for obligation that Old GM would not be required to pay would be penalizing the "wrong guys," and was not part of the bargain struck in the Sale Agreement approved by the Court.  Penalizing the new equity holders of New GM (*i.e.*, the unsecured creditors of Old GM) with subordinated punitive damage claims would also be penalizing the wrong guys.

35.    As understood when the 363 Sale was entered into, unsecured creditors were not going to receive payment in full on their claims from the Debtors' estates, and because unsecured claims have a higher priority than punitive damages claims, any claims for punitive damages against the Debtors would have been denied.  Accordingly, as claims for punitive damages would never have been compensated by the Debtors, New GM did not intend to, or assume liabilities that would not be compensated by Old GM.

---

[14]    In this Court's Bench Decision ("**Apartheid Decision**") on Apartheid Claimant's Motion for Class Certification, and on Debtor's Objection to Apartheid Claimants' Underlying Claims, dated January 28, 2011, it noted (page 19) as follows: "And the deterrence class actions often provide would be of little utility in a case like this one, where Old GM is liquidating, and any punishment for any wrongful Old GM conduct would be borne by Old GM's innocent creditors."  None of the claims by the Apartheid Claimants were allowed against the Old GM bankruptcy estate.

**D.    Principles of Contract Construction and
New York Law Bar Punitive Damages**

36.    The structure of the Sale Agreement was based on the principle that everything is a Retained Liability unless it is specifically listed as an Assumed Liability.  *See* Sale Agreement, § 2.3(b) (providing that "[e]ach Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability of any Seller, whether occurring or accruing before, at or after the Closing, other than the Assumed Liabilities").  This structure is the doctrine of *expressio unius est exclusio alterius*, *i.e.*, the expression of one thing is the exclusion of the other.  *See IBM Poughkeepsie Employees Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 590 F.Supp. 769, 773 n. 19 (S.D.N.Y.1984) ("Under the doctrine of *expressio unius est exclusio alterius*, when certain persons or categories are specified in a contract, an intention to exclude all others may be inferred."); *Quadrant Structured Prods. Co.,* 23 N.Y.3d. 549, 560 (N.Y. 2014) ("[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission. The maxim *expressio unius est exclusio alterius,* as used in the interpretation of contracts, supports precisely this conclusion.").

37.    This doctrine is found throughout New York law.[15]  For example, third parties who voluntarily assume certain liabilities are generally shielded from additional exposure.  For example, with respect to indemnitors:

> [w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.  Where the language of the parties is not clear enough to enforce an obligation to indemnify the Court will not rewrite the contract and supply a specific obligation the parties themselves did not spell out.

---

[15]  The Sale Agreement is governed by New York law, if the Bankruptcy Code is not applicable.  *See* Sale Agreement, § 9.12.

DMSLIBRARY01\21600\162081\26696496.v3-8/28/15

*Corral v. Outer Marker LLC*, No. 10-CV-1162 SJF ARL, 2012 WL 243318, at \*3 (E.D.N.Y. Jan. 24, 2012); *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491–92 (1989) ("[T]he promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances.").

38.    In the analogous guarantor context, New York law provides that

> [a] guarantor's obligation must be narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract.  Guarantees are strictly construed because the guarantor cannot be held responsible to guarantee a performance different from that which he intended or specified in the guaranty.

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust*, 93 F.3d 1064, 1073–74 (2d Cir. 1996) (interpreting New York law); *Am. Honda Fin. Corp. v. Simao*, 526 F. App'x 112, 115 (2d Cir. 2013) ("[W]e interpret guaranty obligations in the strictest manner"); *Symbol Technologies, Inc. v. Voicenet (Aust.) Ltd.*, No. CV-03-6010 SJF ARL, 2008 WL 89626, at \*2 (E.D.N.Y. Jan. 4, 2008) (noting that guaranties are interpreted in favor of the guarantor).

39.    In the subordination context, there is the similar "Rule of Explicitness," that, in order for the a senior creditor's priority rights to be enforced, the subordination agreement has to be explicit.  In the case of post-petition interest when a debtor files for bankruptcy, unless the subordination agreement specifically addresses the issue, no subordination priority will be inferred.  *See In re K-V Discovery Solutions, Inc.*, 396 B.R. 330, 335 (Bankr. S.D.N.Y. 2013). The substance of the rule applies in this case.

40.    Here, the very purpose of the Sale Agreement was for New GM to obtain Old GM's assets free and clear of liens, claims and encumbrances.  Without any legal obligation to do so, New GM voluntarily assumed certain of Old GM's liabilities, but only those liabilities deemed commercially necessary for it to be a successful business going forward.  Decisively, punitive damages do not fit within this construct, and were not specifically set forth anywhere in

17

the Assumed Liabilities section of the Sale Agreement.  Such omission is fatal to Plaintiffs, and

demonstrates that punitive damages claims were never meant to be assumed under the Sale

Agreement.

41.    Accordingly, New York law does not permit a rewriting of the Sale Agreement to

impose specific obligations to which the parties did not explicitly agree.

WHEREFORE, New GM respectfully requests that this Court enter the Proposed Order

substantially in the form attached hereto as **Exhibit "D"** (i) granting the relief requested in this

Application, (ii) directing Plaintiffs to withdraw their request for punitive damages so as to

conform to the rulings set forth in the Judgment, Decision and Sale Order and Injunction; and

(iii) granting New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
August 28, 2015

Respectfully submitted,


_____/s/ Arthur Steinberg_____
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for General Motors LLC*