**Hearing Date and Time: To Be Determined
By Court if Necessary**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**RESPONSE BY GENERAL MOTORS LLC TO**
**ADAMS PLAINTIFFS' NO DISMISSAL PLEADING**

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** .......... 1

**BACKGROUND RELEVANT TO RESPONSE** .......... 3

**A. The Sale Agreement, and Sale Order and Injunction** .......... 3

**B. The Debtors' Bankruptcy Schedules; the Bar Date, and the Debtor's Books and Records** .......... 5

**C. The Pre-Closing Accident Motion to Enforce, the April 15 Decision and the Judgment** .......... 7

**D. The Adams Lawsuit** .......... 8

**E. Judgment Procedures Relating to the Adams Lawsuit** .......... 9

**RESPONSE** .......... 9

**THE RELIEF REQUESTED IN THE ADAMS NO DISMISSAL PLEADING SHOULD BE DENIED** .......... 9

**A. Claims Based on Retained Liabilities May Not Be Asserted Against New GM** .......... 10

**B. New GM Had No Duty to Inform Plaintiffs To File A Claim Against Old GM** .......... 12



DMSLIBRARY01\21600\162081\26749033.v2-9/3/15

## TABLE OF AUTHORITIES


| **Cases** | **Page(s)** |
|---|---|
| *Ayres v. GMC*, 234 F.3d 514 (11th Cir. 2000) | 10 |
| *Chamberlain Group, Inc. v.. Nassimi*, 2010 WL 1875923 (W.D. Wash. 2010) | 15 |
| *Conmar Prods. Corp. v. Universal Studio Fastener Co.*, 172 F.2d 150 (2d Cir. 1949) | 15 |
| *Forest Laboratories, Inc. v. The Pillsbury Co.*, 452 F.2d 621 (7th Cir. 1971) | 15 |
| *Handy v. Gen. Motors Corp.*, 518 F.2d 786 (9th Cir. 1975) | 10 |
| *In re Gen. Motors Corp*., 407 B.R. 463 (Bankr. S.D.N.Y. 2009) | 13 |
| *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. Apr. 15, 2015) | 1, 11, 12, 15, 16 |
| *In re Motors Liquidation Co.*, 531 B.R. 354 (Bankr. S.D.N.Y. May 27, 2015) | 2, 3 |
| *In re Motors Liquidation Co.*, 533 B.R. 46 (Bankr. S.D.N.Y. 2015) | 14 |
| *Interstate Power Co. v. Kansas City Power & Light Co.*, 909 F. Supp. 1241 (N.D. Iowa 1993) | 15 |
| *Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013) | 4 |
| *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348 (Bankr. S.D.N.Y. 2014) | 16 |

**Statutes**

National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq.* ................................. 9




DMSLIBRARY01\21600\162081\26749033.v2-9/3/15

General Motors LLC (**"New GM"**), by its undersigned counsel, submits this response ("**Response**") to the *Adams Plaintiffs' No Dismissal Pleading*, dated August 11, 2015 [Dkt. No. 13359] ("**Adams No Dismissal Pleading**") filed by the plaintiffs ("**Plaintiffs**") named in the *Omnibus Complaint for Pre-Sale Personal Injuries and Deaths* ("**Omnibus Complaint**"),[1] which was filed in the United States District Court for the Southern District of New York ("**District Court**") (Case No. 15-5528) ("**Adams Lawsuit**"). The Adams No Dismissal Pleading implicates (a) New GM's Pre-Closing Accident Motion to Enforce,[2] (b) the Court's Order, dated July 5, 2009 ("**Sale Order and Injunction**"), which approved the Amended and Restated Master Sale and Purchase Agreement, as amended ("**Sale Agreement**") and authorized the sale of assets ("**363 Sale**") from Motors Liquidation Company (formerly known as General Motors Corporation) ("**Old GM**") to New GM; (c) the Court's *Decision on Motion to Enforce Sale Order* (*see In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. Apr. 15, 2015) ("**April 15 Decision**")), and (d) the Court's *Judgment*, dated June 1, 2015 [Dkt. No. 13177] ("**Judgment**").

## PRELIMINARY STATEMENT

1. The Plaintiffs in the Adams Lawsuit are Pre-Closing Accident Plaintiffs. Their claims are Retained Liabilities (as defined in the Sale Agreement) of Old GM. Under the Sale Agreement and the Sale Order and Injunction, New GM did not assume any obligations or ongoing duties to third parties with respect to Retained Liabilities. The Sale Order and Injunction is clear that New GM purchased assets "free and clear" of such Retained Liabilities.

[1] A copy of the Omnibus Complaint is annexed to the Adams No Dismissal Pleading as Exhibit "A."

[2] The full title of the Pre-Closing Accident Motion to Enforce is *Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits*, dated August 1, 2014 [Dkt. No. 12807]. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Pre-Closing Accident Motion to Enforce.



DMSLIBRARY01\21600\162081\26749033.v2-9/3/15

2. Plaintiffs seek to hold New GM liable for their failure to file proofs of claim against the Old GM bankruptcy estate with respect to their alleged Retained Liabilities arising from accidents that occurred before the closing of the 363 Sale. Plaintiffs ignore that, after the 363 Sale, it was Old GM, and its retained professionals, who were responsible for preparing and filing the Debtors' bankruptcy schedules, establishing (with Bankruptcy Court approval) a claims bar date, confirming (with Bankruptcy Court approval) the claims bar date notice, serving the claims bar date notice in accordance with the claims bar date order, and thereafter resolving claims filed against the Old GM bankruptcy estate. Plaintiffs also fail to note that the Official Committee of Unsecured Creditors ("**Creditors Committee**"), on behalf of all unsecured creditors in the Old GM bankruptcy case (including Plaintiffs), was actively involved in reviewing each of these Old GM actions relating to the claims process.

3. New GM was not responsible for *any* of these actions and, in particular, had *no* obligation or duty to Plaintiffs with respect to the claims process, or Retained Liabilities, in general. Plaintiffs assert no legal authority to support their claims against New GM, and there is none.

4. In connection with providing comments on the proposed form of Judgment, New GM asked the Court to explicitly set forth that it was Old GM that sent the 363 Sale notice, but the Court did not do so, finding it unnecessary. It held that "[o]f course the notice came from Old GM," and therefore leaving out the reference to Old GM "does not result in the implication that New GM fears." *In re Motors Liquidation Company*, 531 B.R. 354, 361 (Bankr. S.D.N.Y. May 27, 2015). The Court made clear that the omission of a reference to Old GM being the entity that sent out the notice does not "imply that someone else was responsible for the 363 notice, '***which clearly is not true***.'" *Id.* at 12 (emphasis supplied). The same rationale relating to

the 363 Sale notice applies equally to the bar date notice sent out by Old GM. Simply put, New GM is not responsible for what Old GM did after the 363 Sale relating to the claims process in general, or with Plaintiffs, in particular.

5. Plaintiffs improperly assert that, whether New GM breached an alleged duty to them, is a matter for the court in which they filed their lawsuit to decide. *See* Adams No Dismissal Pleading, at 5. The fact that the commencement of the Adams Lawsuit violated this Court's Sale Order and Injunction is of no moment to them. Under Plaintiffs' flawed logic, any party should be able to end-run this Court's exclusive jurisdiction to assert a Retained Liability claim against New GM in another court, and then hope for a favorable ruling from that other court. That is contrary to the Sale Order and Injunction which enjoined such actions from being commenced, in the first instance, in any court. This Court retained exclusive jurisdiction to interpret the Sale Order and Injunction. Similarly, paragraph 19 of the Judgment was structured so that this Court, in the first instance, would decide whether the Sale Order and Injunction was violated by lawsuits like the Adams Lawsuit.

6. Finally, the Adams Lawsuit is premised on the fact that none of the Plaintiffs filed claims in the Old GM bankruptcy case. From a cursory review of the Old GM claims docket, that does not appear to be true.

7. As more fully explained below, Plaintiffs' claims have no merit and Plaintiffs should be directed to dismiss the Adams Lawsuit.

## **BACKGROUND RELEVANT TO RESPONSE**

### **A. The Sale Agreement, and Sale Order and Injunction**

8. Under the Sale Agreement and the Sale Order and Injunction, New GM acquired Old GM's assets free and clear of all claims and liabilities other than Assumed Liabilities (which

were specifically listed in Section 2.3(a) of the Sale Agreement). All other liabilities were Retained Liabilities of Old GM. *See* Sale Agreement, § 2.3(b).

9. Section 2.3(b) of the Sale Agreement set forth a non-exclusive list of Retained Liabilities of Old GM. They included (a) "all Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date [July 10, 2009]" (Sale Agreement, § 2.3(b)(ix)); (b) "all Liabilities *to third parties* for Claims based upon Contract, tort or any other basis" (*id.*, § 2.3(b)(xi)); and (c) "all Liabilities arising out of, related to or in connection with any (A) implied warranty or *other implied obligation* arising under statutory or common law without the necessity of an express warranty or (B) allegation, *statement or writing by or attributable to Sellers*" (Sale Agreement, § 2.3(b)(xvi) (emphasis supplied)). The claims asserted in the Adams Lawsuit fall squarely in the above-stated categories of Retained Liabilities.

10. Paragraph AA of the Sale Order and Injunction provides that, except for Assumed Liabilities (not applicable here), New GM shall not be liable for:

> all claims *arising in any way* in connection with any agreements, *acts, or failures to act*, of any of the Sellers or any of the Sellers' predecessors or affiliates, *whether known or unknown*, contingent or otherwise, *whether arising prior to or subsequent to the commencement of these chapter 11 cases*, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor or transferee liability.

(emphasis supplied); *see also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013) ("New GM is not liable for Old GM's conduct or alleged breaches of warranty."). In other words, with respect to Retained Liabilities, New GM was not liable for any claims, whether known, contingent, and whenever arising.

11. Various other provisions of the Sale Order and Injunction provide that New GM would have no responsibility for the Retained Liabilities asserted in the Adams Lawsuit. By way of example, paragraph DD of the Sale Order and Injunction provides that New GM would not have consummated the 363 Sale if it "would, *or in the future* could, be liable for . . . Retained Liabilities" (emphasis added), and that New GM would have no liability whatsoever with respect to Retained Liabilities. Paragraph 47 of the Sale Order and Injunction prohibits all actions against New GM with respect to any claims against the Debtors (other than Assumed Liabilities). Those prohibitions subsume the claims made in the Adams Lawsuit. In addition, paragraph 48 of the Sale Order and Injunction provides that, except for Assumed Liabilities, New GM shall have "no liability or responsibility for any liability or other obligation of Sellers arising under or related to the Purchased Assets . . . [T]he Purchaser shall not be liable for any claims against the Seller…whether known or unknown as of the Closing, now existing or hereafter arising . . . with respect to the Sellers or any obligations of the Sellers arising prior to the Closing."

12. Based on these express provisions of the Sale Agreement and the Sale Order and Injunction, the claim in the Adams Lawsuit may not be asserted against New GM.

**B. The Debtors' Bankruptcy Schedules; the Bar Date, and the Debtor's Books and Records**

13. The Debtors prepared their bankruptcy schedules, and filed them with the Bankruptcy Court on September 15, 2009. *See* Dkt. Nos. 4060 *et. seq*. New GM was not responsible for the preparation or filing of the Debtors' schedules.

14. On September 2, 2009, Old GM filed a motion with the Court for an order ("**Bar Date Order**") establishing a bar date for the filing of claims against Old GM ("**Bar Date**") and seeking approval of the bar date notice. The Bar Date Order was entered on September 16, 2009 [Dkt. No. 4079]. It approved the content of the notice to be given to Old GM's creditors, and it

directed "the Debtors" to mail notice of the approved Bar Date Notice (as defined in the Bar Date Order) to numerous creditors, and to publish notice of the Bar Date in various publications. *See* Bar Date Order, at 6-7. New GM was not involved in seeking such relief, nor did New GM have any role in serving the bar date notice.

15. Section 2.2(b)(viii) of the Sale Agreement defines Excluded Assets to include "all books, records, ledgers, files, documents, correspondence, lists, . . . advertising and promotional materials, reports and other materials relating exclusively to . . . Retained Liabilities, and any books and records and other materials that any Seller is required by Law to retain." Thus, contrary to the allegation made in the Adams No Dismissal Pleading (*see* pp. 4-5 thereof), the books and records relating to Pre-Closing Accident claims, including the Adams Lawsuit, were never purchased by New GM under the Sale Agreement.

16. The Debtors' access to their books and records for Retained Liabilities is aptly demonstrated by the filing of the bankruptcy schedules detailing their assets and liabilities, which are thousands of pages long. What is more, even with respect to the books and records purchased by New GM, Old GM always retained full access to such information. *See id.* § 6.23 ("During such retention period [defined as six years], duly authorized Representatives of a Party shall, upon reasonable notice, have reasonable access during normal business hours to examine, inspect and copy such books and records held by the other Parties for any proper purpose, except as may be prohibited by Law or by the terms of any Contract (including any confidentiality agreement) . . . ."). To the extent the Adams No Dismissal Pleading suggests otherwise, it is wrong.

### C. The Pre-Closing Accident Motion to Enforce, the April 15 Decision and the Judgment

17. Notwithstanding the express language of the Sale Agreement that proscribed pre-Closing accident claims being brought against New GM,[3] various plaintiffs nevertheless commenced litigation against New GM on account of such claims, which necessitated that New GM file the Pre-Closing Accident Motion to Enforce with this Court. After a conference on the Pre-Closing Accident Motion to Enforce on August 18, 2014, the Court entered a Scheduling Order on September 15, 2014 [Dkt. No. 12897], which provided that the schedule governing New GM's Ignition Switch Motion to Enforce also governed the Pre-Closing Accident Motion to Enforce." *Id.* at 2. In connection with the briefing on the Four Threshold Issues, the same counsel that filed the Adams No Dismissal Pleading filed a brief on behalf of Pre-Closing Accident Plaintiffs in opposition to the Pre-Closing Accident Motion to Enforce (*see* Dkt. No. 13021). The brief advanced arguments on due process/remedies issues but, significantly, did not include any discussion of the Old GM Claim Threshold Issue, and, in particular, it failed to discuss the claim set forth in the Adams Lawsuit.

18. The Court heard oral argument on the Four Threshold Issues and thereafter entered the April 15 Decision, finding, among other things, that Pre-Closing Accident Plaintiffs could not demonstrate a violation of their due process rights with respect to the Sale Motion, and that the Sale Order and Injunction is binding on them. With respect to the Court's "overbreadth" finding concerning the Sale Order and Injunction, the Court held that such ruling would ***not*** apply to the Ignition Switch Pre-Closing Accident Plaintiffs:

> The arguments as to Sale Order breadth that the Economic Loss Plaintiffs might have asserted would not be relevant to the Pre–Closing Accident Plaintiffs. To the extent the Sale Order was overbroad, it was so as to any claims that might arise

---

[3] *See* Sale Agreement ¶ 2.3(b)(ix).

> solely by reason of New GM's conduct. The Pre–Closing Accident Plaintiffs suffered the injury or death underlying their claims in Old GM cars, and with Old GM parts. Any actionable conduct causing that injury or death took place before the 363 Sale—and necessarily was by Old GM, not New GM, and indeed before New GM could have done anything wrong.
>
> If the overbreadth objection were sustained and the Sale Order could be, and were, fixed (a matter addressed in Section II below, dealing with Remedies), the Pre–Closing Accident Plaintiffs still could not assert claims against New GM.
>
> The Pre–Closing Accident Plaintiffs did not suffer the prejudice that is an element to a denial of due process claim.

*Id.*

19. On June 1, 2015, the Court entered the Judgment in connection with the rulings set forth in the April 15 Decision, again holding that the Sale Order and Injunction is binding, in all respects, on Pre-Closing Accident Plaintiffs. *See Judgment* ¶ 7 ("Any claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs that seek to hold New GM liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM."). The basis for the ruling on the Ignition Switch Pre-Closing Accident Plaintiffs applies with equal force to the Non-Ignition Switch Pre-Closing Accident Plaintiffs. As such, Plaintiffs' claim in the Omnibus Complaint falls squarely within this category of claims barred by the Judgment.

**D. <u>The Adams Lawsuit</u>**

20. The Adams Lawsuit was commenced on or about July 16, 2015 in the District Court and is subject to MDL 2543 pending before Judge Furman. There are 300 Plaintiffs named in the Omnibus Complaint, and they each admit that they "assert claims against [New GM] for personal injury and/or wrongful death stemming from pre-sale accidents—that is, the accidents in question occurred before July 10, 2009." Omnibus Complaint, ¶ 7. The Omnibus

Complaint contains numerous misstatements and allegations regarding Old GM conduct, as well as a claim for punitive damages, which violates the Sale Order and Injunction, the April 15 Decision and Judgment. Specifically, the Omnibus Complaint contains 22 paragraphs with allegations based on events and Old GM conduct that took place prior to the closing of the 363 Sale. *See* Omnibus Complaint, ¶¶ 27(a)-27(v). It contains one count, entitled "Negligence, Gross Negligence, Recklessness and/or Fraud by Concealment of the Right to File a Claim Against Old GM in Bankruptcy." The underlying premise of the Adams Lawsuit is that none of the Plaintiffs filed claims against Old GM. That is wrong as a factual matter.

**E. Judgment Procedures Relating to the Adams Lawsuit**

21. In accordance with paragraph 18 of the Judgment, New GM sent Plaintiffs a demand letter on July 17, 2015 ("**July 17 Letter**"),[4] asserting that the Omnibus Complaint violated the April 15 Decision, Judgment and Sale Order and Injunction, and that Plaintiffs needed to dismiss the Omnibus Complaint. Plaintiffs timely filed the Adams No Dismissal Pleading.

**RESPONSE**

**THE RELIEF REQUESTED IN THE ADAMS NO DISMISSAL PLEADING SHOULD BE DENIED**

22. Plaintiffs make the unprecedented argument that a purchaser of assets from a debtor, "free and clear" of the debtor/seller's claims, has a duty, after the sale, to notify creditors of the debtor that they may have a claim against the debtor. Plaintiffs cite no authority to support this baseless claim, and for good reason. There is none.[5] The claims of Pre-Sale Accident

4 A copy of the July 17 Letter is annexed to the Adams No Dismissal Pleading as Exhibit "B."

5 Plaintiffs' insinuate that New GM's covenant to comply with the recall requirement of the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq.* ("**Safety Act**"), is the equivalent of an Assumed Liability. Plaintiffs are incorrect. The express terms of the Sale Agreement provides that Assumed Liabilities are only those set forth in Section 2.3(a) of the Sale Agreement. The recall covenant is in Section 6.15 of the Sale



DMSLIBRARY01\21600\162081\26749033.v2-9/3/15

Plaintiffs were Retained Liabilities of Old GM, and New GM never assumed a duty or ongoing obligation to such creditors.

## A. Claims Based on Retained Liabilities May Not Be Asserted Against New GM

23. Section 2.3(a) of the Sale Agreement provides that, with respect to Retained Liabilities, New GM "did not assume, or become liable to pay, perform or discharge, any Liability of Seller, whether occurring or accruing before, at or after the Closing . . . ." In other words, New GM, for all purposes, *and for all time periods*, would not be liable or obligated to a third party with respect to a Retained Liability. Those Old GM claims were left behind, to be dealt with exclusively by the Old GM bankruptcy estate. That was the "fresh start" that New GM bargained for in the "free and clear" 363 Sale.

24. Section 2.3(a) emphasized this point when it stated that with respect to Retained Liabilities, New GM did not "assume, or be deemed to have assumed, any Indebtedness, Claim or other Liability of any Seller [Old GM] . . . whatsoever, whether occurring or accruing before, at or after the Closing . . . ." Plaintiffs concede that the Adams Lawsuit is a pre-363 Sale accident claim, which is a Retained Liability of Old GM, and thus that their sole recourse was to file a claim against the Old GM bankruptcy estate. Their failure to do so, however, under procedures sought and administered by Old GM, is a dispute they have with Old GM. New GM cannot be "deemed to have assumed" any "Claim or other Liability" for such Retained Liability, whether such Claim or Liability occurred or accrued prior to *or after* the 363 Sale.

---

Agreement. The Sale Order and Injunction (¶ 7) is clear that New GM acquired the Purchased Assets free and clear of all claims. The only exception is the contractually defined "Assumed Liabilities," which does not include the recall covenant. Furthermore, a breach of the Safety Act does not provide for an individual consumer cause of action. *See Handy v. Gen. Motors Corp.*, 518 F.2d 786, 788 (9th Cir. 1975) (*per curiam*); *see also Ayres v. GMC*, 234 F.3d 514, 522 (11th Cir. 2000) (stating that the Safety Act confers no private right of action).

25. The Court recently confirmed that ***any*** claim based on a pre-363 Sale accident—like the claims asserted by Plaintiffs—cannot be asserted against New GM, and is proscribed by the Sale Order and Injunction. Specifically, the Judgment expressly holds:

> ***Any*** claims and/or causes of action brought by the Ignition Switch Pre-Closing Accident Plaintiffs that seek to hold New GM liable for accidents or incidents that occurred prior to the closing of the 363 Sale are barred and enjoined pursuant to the Sale Order. The Ignition Switch Pre-Closing Accident Plaintiffs shall not assert or maintain any such claim or cause of action against New GM.

Judgment, ¶ 7 (emphasis added).[6]

26. The Omnibus Complaint alleges that Old GM violated some type of unspecified duty to Plaintiffs relating to the Bar Date Notice. But, New GM never had that obligation, and any attempt to saddle New GM with an obligation that was clearly Old GM's relating to a Retained Liability, is a proscribed successor liability claim, dressed up to look like something else.

27. Plaintiffs are wrong when they insinuate that the Judgment modified the Sale Order and Injunction to allow them to assert Independent Claims against New GM. It did not. The Judgment is clear that the modification to the Sale Order and Injunction only applied to Ignition Switch Plaintiffs asserting economic loss claims:

> The Economic Loss Plaintiffs (***but not the Pre–Closing [Accident] Sale Claimants***) may, however, assert otherwise viable claims against New GM for any causes of action that might exist arising solely out of New GM's own, independent, post-Closing acts, so long as those Plaintiffs' claims do not in any way rely on any acts or conduct by Old GM.

*Motors Liquidation Co.*, 529 B.R. at 598 (emphasis added).

6 For purposes of the Adams Lawsuit, there is no functional difference between Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Pre-Closing Accident Plaintiffs. Plaintiffs concede this point in the Omnibus Complaint by not differentiating between the two types of Plaintiffs. Instead, they merely list their names, dates of accidents, and other information on a schedule attached to the Omnibus Complaint.

28. This point was reinforced in other parts of the Decision, with the Court finding that if "the Sale Order was overbroad, it was so as to any claims that might arise solely by reason of New GM's conduct. The Pre–Closing Accident Plaintiffs suffered the injury or death underlying their claims in Old GM cars, and with Old GM parts. Any actionable conduct causing that injury or death took place before the 363 Sale—and necessarily was by Old GM, not New GM, and indeed before New GM could have done anything wrong." *Id.* at 573. In short, Plaintiffs' claims are barred by the Judgment.

**B. New GM Had No Duty to Inform Plaintiffs To File A Claim Against Old GM**

29. While Plaintiffs allege that New GM breached some type of duty to them, Plaintiffs never explain how this duty arose, or set forth its legal basis. That is because no such duty exists. In particular, Plaintiffs cite no statute, rule, case law or other legal authority that ***imposes on a purchaser*** of assets, free and clear of liabilities, a duty to inform ***claimants of a seller/debtor*** that they may have claims ***against the debtor***. It is the debtor that is charged with providing proper notice to its creditors of the deadline to file proofs of claim. Here, (i) it was Old GM that filed the motion seeking to establish the General Bar Date, and this Court approved the form of the Bar Date Notice that Old GM proposed; (ii) it was Old GM that was responsible for compliance with the distribution of the Bar Date Notice; and (ii) it was Old GM, as monitored by the Creditors Committee, that was responsible for the overall claims process. New GM was not responsible for any of those activities.

30. At the Sale Hearing, Old GM's counsel argued that it was unnecessary to decide how to deal with vehicle owner claims against Old GM as part of the 363 Sale. Old GM would have sale proceeds and could deal with that issue as part of its liquidating plan. *See* Hr'g Tr. 262:14-25, July 1, 2009. Counsel for Wilmington Trust echoed that sentiment at the Sale

Hearing stating that the 363 Sale created a pie, and the creditors could fight about how that pie should be allocated after the 363 Sale closed. *See* Hr'g Tr. 109:15-24, July 2, 2009. None of these claims resolution issues related to the 363 Sale. And, New GM had no obligation or duties as to how Old GM would subsequently deal with its' creditors.

31. In the Sale Decision, the Court made clear that "[Old] GM's assets simply are being sold, with the consideration to [New] GM to be hereafter distributed to stakeholders, consistent with their statutory priorities, under a subsequent plan." *In re Gen. Motors Corp.*, 407 B.R. 463, 474 (Bankr. S.D.N.Y. 2009). The Court also stated that the Sale Agreement did not seek to restructure the rights of creditors; it merely brought in value that creditors would share in a plan. *Id* at 495-96. New GM was not assuming product liabilities from accidents/incidents before the sale, or liabilities to third parties related to any implied obligation under statutory or common law. *Id.* at 482.

32. Plaintiffs assert that New GM acquired Old GM's employees,[7] books and records, and that New GM, therefore, had independent duties to Plaintiffs with respect to their filing claims against Old GM. Again, no legal authority or support is given for this meritless theory. As previously noted, while New GM purchased certain books and records of Old GM, it did not purchase books and records related to Retained Liabilities (*i.e.*, the Plaintiffs' claim). Furthermore, as set forth in Section 6.23 of the Sale Agreement, Old GM had access to its books and records, including those that would demonstrate that Plaintiffs may hold claims against Old GM. In other words, Old GM, at all times, had the ability to determine who should receive the Bar Date Notice.

---

[7] Plaintiffs' imputation of knowledge theory with respect to New GM hiring Old GM employees is addressed in paragraphs 35-37, *infra*.

33. Furthermore, even though the fundamental assumption of the Adams Lawsuit is that the Plaintiffs did not file a claim, in fact, at least some of them did precisely that. For example, a representative affiliated with four of the Plaintiffs ("**Powledge Plaintiffs**") has been before this Court previously, attempting to set aside a settlement agreement she (and the Powledge Plaintiffs) entered into with Old GM with respect to her timely filed proof of claim. The Court, in denying the motion, held:

> In neither Mrs. Phillips' motion nor her reply was a legal basis articulated upon which New GM, which came into existence long after the accident, would be liable for her loss. ***Presumably her counsel envisioned a theory based on a species of successor liability or other theory under which New GM would be responsible for Old GM's acts.*** But theories of this character cannot be asserted under the Court's recent opinions in the Motion to Enforce Decision, 529 B.R. 510 (Bankr. S.D.N.Y. 2015), and In re Motors Liquidation Co., --- B.R. ---, 2015 Bankr. LEXIS 1751, 2015 WL 3398398 (Bankr. S.D.N.Y. May 27, 2015). For this additional reason, apart from those applying to both the GUC Trust and New GM, the Court cannot grant Mrs. Phillips relief vis-à-vis New GM.

*In re Motors Liquidation Co.*, 533 B.R. 46, 51 n.10 (Bankr. S.D.N.Y. 2015) (emphasis added).

34. Based on a cursory review of the Old GM claims register, it appears that other Plaintiffs, such as Kally Jo Surbeck (Claim No. 13046) and (ii) Postley Kyomi (Claim No. 65318), filed claims against Old GM, thus negating the flawed theory on which the Adams Lawsuit is based.[8]

35. Although this Court has plainly held that Old GM conduct allegations and dressed-up successor liability claims are barred, Plaintiffs seek to side-step this holding by arguing that Old GM conduct allegations regarding the knowledge of Old GM employees who became New GM employees should be permitted to remain in their complaint because such knowledge should be imputed to New GM. In doing so, Plaintiffs fail to explain (i) what particular knowledge is imputed to (ii) what specific employee for purposes of (iii) which

8 The proofs of claim relating to Kally Jo Surbeck and Kyomi Postley are annexed hereto, collectively, as **Exhibit "1."**

discrete claim, and then demonstrate (iv) why that allegation meets the standard for imputed knowledge. That New GM hired many of Old GM's employees who may have knowledge of something does not change the fact that (a) the underlying claim is based on Old GM's conduct, (b) New GM did not assume the underlying claim or obligation under the Sale Agreement, and (c) New GM acquired Old GM's assets free and clear of the underlying claim and obligation.

36. In general, the knowledge of Old GM's employees cannot be automatically imputed to New GM simply because they went to work for New GM after the closing of the 363 Sale. *See Conmar Prods. Corp. v. Universal Studio Fastener Co.*, 172 F.2d 150, 157 (2d Cir. 1949) (buyer not liable for trade secret violation despite knowledge of employee hired from seller who was aware of the trade secret violation); *Chamberlain Group, Inc. v.. Nassimi*, 2010 WL 1875923 (W.D. Wash. 2010) (employee's knowledge of a fraud while working for the seller, who is then hired by the buyer, cannot be imputed to the buyer who was unaware of the fraud); *Interstate Power Co. v. Kansas City Power & Light Co.*, 909 F. Supp. 1241, 1272 (N.D. Iowa 1993) ("Finally, KCPL has cited no persuasive CERCLA authority for the position that the knowledge held by KCPL employees who stayed on as IPC employees should be imputed to IPC"); *Forest Laboratories, Inc. v. The Pillsbury Co.*, 452 F.2d 621, 626 (7th Cir. 1971)("finding that "the knowledge of the [seller's] employees cannot properly be imputed to [the purchaser] just because they went to work for [the purchaser]").

37. As the Court reaffirmed in the April 15 Decision, "it is plain that to the extent the Plaintiffs seek to impose successor liability, or to rely, in suits against New GM, on any wrongful conduct by Old GM, these are actually claims against Old GM, and not New GM." 529 B.R. at 528. Thus, allowing Old GM conduct to be pled whole cloth under the guise of imputed New GM knowledge would eviscerate the restrictions imposed by the Sale Order and

Injunction and the Judgment. Indeed, to the extent the April 15 Decision addressed imputed knowledge at all, the Court explicitly found that its conclusion that certain plaintiffs were known creditors was "based not on any kind of automatic or mechanical imputation drawn from agency doctrine (which the Court would find to be of doubtful wisdom)." *Id.* (emphasis added). In support, the Court cited *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 389 (Bankr. S.D.N.Y. 2014) (Gerber, J.), a case in which the Court previously rejected arguments of automatic imputation of a CEO's alleged intent under ordinary agency rules. April 15 Decision, 529 B.R. at 558 n.154. So too here, the Plaintiffs cannot simply rely on allegations of imputed knowledge from Old GM employees to end-run the Sale Order and Injunction's bar on successor liability claims and reliance on Old GM conduct.

38. As Plaintiffs' claim is barred by the Judgment, April 15 Decision and the Sale Order and Injunction, any request for punitive damages is similarly barred. Even if some type of claim remained, New GM did not assume punitive damages relating to Old GM conduct. The specific allegations in the Omnibus Complaint all relate to Old GM conduct by Old GM employees.

39. For all of the foregoing reasons, Plaintiffs' claim cannot be asserted against New GM, and Plaintiffs should be directed to dismiss the Adams Lawsuit.

WHEREFORE, New GM requests that this Court (i) deny the relief requested in the Adams No Dismissal Pleading, (ii) find that the provisions of the Judgment apply to the Plaintiffs; (iii) direct Plaintiffs to dismiss the Adams Lawsuit, and (iv) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
September 3, 2015

Respectfully submitted,

/s/ Arthur Steinberg

Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for General Motors LLC*



DMSLIBRARY01\21600\162081\26749033.v2-9/3/15