**Reply Deadline:  September 22, 2015 at 12:00 noon (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In re                                                    :        Chapter 11
                                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,                    :        Case No.:  09-50026 (REG)
        f/k/a General Motors Corp., *et al.*             :
                                                         :
                Debtors.                                 :        (Jointly Administered)
                                                         :
--------------------------------------------------------------x

**OPENING BRIEF BY GENERAL MOTORS LLC WITH
RESPECT TO WHETHER PLAINTIFFS MAY SEEK PUNITIVE
DAMAGES FROM GENERAL MOTORS LLC BASED ON
<u>THE CONDUCT OF GENERAL MOTORS CORPORATION</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT BACKGROUND ..........................................................................................5

    A.  The Sale Agreement, Assumed Liabilities And Punitive Damages ...............5

    B.  The Sale Order and Injunction, and Claims Based on Old GM Conduct...................8

    C.  The Motions to Enforce, and the Bankruptcy Court's
       Decision and Judgment on the Four Threshold Issues...................9

    D.  The Bellwether Cases in MDL 2543 .......................................11

    E.  The MDL Complaint in MDL 2543.........................................13

    F.  Other Complaints......................................................14

ARGUMENT ........................................................................14

    ANY REQUEST FOR PUNITIVE DAMAGES
    CONTAINED IN  LAWSUITS FILED AGAINST NEW GM
    THAT IS BASED ON OLD GM  CONDUCT IS BARRED
    PURSUANT TO THE SALE ORDER AND INJUNCTION...................14

    A.  Punitive Damages in General..........................................14

    B.  Punitive Damages Claims Were Not Assumed By New GM........................16

    C.  New GM Only Assumed Product Liability Claims of
       the Sellers Who, At the Time, Were Debtors in a Bankruptcy
       Case, and Not Liable for Punitive Damages...................18

    D.  Principles of Contract Construction and
       New York Law Bar Punitive Damages ...................20

    E.  Since Punitive Damage Claims Were Not
       Assumed, They Cannot Be Based on Old GM Conduct...................22

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Am. Honda Fin. Corp. v. Simao*,
   526 F. App'x 112 (2d Cir. 2013)                                                                          21

*Ayres v. GMC*,
   234 F.3d 514 (11th Cir. 2000)                                                                             4

*Boott Mills v. Boston & M.R.R.*,
   106 N.E. 680 (Mass. 1914)                                                                                16

*Casey v. Auto Owners Ins. Co.*,
   729 N.W.2d 277 (Mich. App. 2006)                                                                         16

*Castillo v. General Motors Co. (In re Motors Liquidation Co.)*,
   Adv. Proc. No. 09-00509, 2012 WL 1339496 (Bankr. S.D.N.Y. Apr. 17, 2012)                                 8

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust*,
   93 F.3d 1064 (2d Cir. 1996)                                                                              21

*Cooper Inds., Inc. v. Leatherman Tool Grp., Inc.*,
   532 U.S. 424 (2001)                                                                                      14

*Corral v. Outer Marker LLC*,
   No. 10-CV-1162 SJF ARL, 2012 WL 243318 (E.D.N.Y. Jan. 24, 2012)                                          21

*Cush-Crawford v. Adchem Corp.*,
   271 F.3d 352 (2d Cir. 2001)                                                                              15

*Dailey v. N. Coast Life Ins. Co.*,
   919 P.2d 589 (1996)                                                                                      15

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)                                                                                      14

*Handy v. Gen. Motors Corp.*,
   518 F.2d 786 (9th Cir. 1975)                                                                              4

*Hillside Metro Assoc, LLC v. JP Morgan Chase Bank*,
   No. 10–cv–1772, 2011 WL 5008368 (E.D.N.Y. Oct, 20, 2011)                                                 16

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
   74 N.Y.2d 487 (1989)                                                                                     21

*IBM Poughkeepsie Employees Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*,
   590 F.Supp. 769 (S.D.N.Y.1984)                                                                           20

ii

*In re Best Payphones, Inc.*,
    523 B.R. 54 (Bankr. S.D.N.Y. 2015)         19

*In re Ephedra Products Liability Litigation*,
    329 B.R. 1 (S.D.N.Y. 2005)         18

*In re K-V Discovery Solutions, Inc.*,
    396 B.R. 330 (Bankr. S.D.N.Y. 2013)         22

*In re Motors Liquidation Co.*,
    529 B.R. 510 (Bankr. S.D.N.Y. 2015)         10, 18, 22

*In re Motors Liquidation Co.*,
    534 B.R. 538 (Bankr. S.D.N.Y. 2015)         4

*Killebrew v. Abbott Labs.*,
    359 So. 2d 1275 (La. 1978)         16

*Metz v. U.S. Life Ins. Co.*,
    No. 09–cv–10250, 2010 WL 3703810 (S.D.N.Y. Sept 21, 2010)         16

*Miller v. Kingsley*,
    230 N.W.2d 472 (Neb. 1975)         15

*Molzof v. United States*,
    502 U.S. 301 (1992)         15

*Newport v. Fact Concerts, Inc.*,
    453 U.S. 247 (1981)         15

*Quadrant Structured Prods. Co.*,
    23 N.Y.3d. 549 (N.Y. 2014)         20

*Ross v. Louise Wise Servs., Inc.*,
    868 N.E.2d 189 (N.Y. 2007)         15

*Symbol Technologies, Inc. v. Voicenet (Aust.) Ltd.*,
    No. CV-03-6010 SJF ARL, 2008 WL 89626 (E.D.N.Y. Jan. 4, 2008)         21

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000)         16

*Trusky v. General Motors LLC (In re Motors Liquidation Co,)*,
    Adv. Proc. No. 12-09803, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013)         8, 9, 18

*Virgilio v. City of New York*,
    407 F.3d 105 (2d Cir. 2005)         15

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

## **Statutes**

11 U.S.C. § 726(a)(4) ........................................................................................................ 18

49 U.S.C. § 30101, *et seq.* ............................................................................................... 4

N.H. REV. STAT. ANN. § 507:16 ..................................................................................... 16

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

This opening brief demonstrates that punitive damage claims against General Motors LLC ("**New GM**"), based on the conduct of Motors Liquidation Co. (f/k/a General Motors Corporation) ("**Old GM**"), are barred by the Sale Order and Injunction ("**Punitive Damages Issue**").

## PRELIMINARY STATEMENT

New GM has been named as a defendant in many lawsuits relating to Old GM vehicles/parts where the Punitive Damages Issue is raised. Generally, the Issue arises in the following situations:

(i)    in lawsuits that concern personal injuries arising from an accident that occurred after the closing of the 363 Sale that involve *an Old GM vehicle*, (*e.g.*, the Bellwether Cases);

(ii)    in lawsuits that concern personal injuries arising from an accident that occurred after the closing of the 363 Sale that *involve a New GM vehicle*, where the plaintiffs rely on allegations that detail events that took place prior to the closing of the 363 Sale (Old GM conduct), as a basis for their punitive damage demand;[1]

(iii)    in lawsuits that concern non-Product Liability Claims involving *Old GM and/or New GM vehicles* (in both personal injury and economic loss complaints), where the plaintiffs rely on allegations that detail events that took place prior to the closing of the 363 Sale (Old GM conduct) as a basis for their punitive damage demand. (*e.g.*, the Bellwether Cases and the MDL 2543); and

(iv)    in lawsuits that purport to assert Independent Claims that are, in reality, Retained Liabilities of Old GM; such Claims, which were the responsibility of Old GM, cannot form the basis of a punitive damage demand against New GM. (*e.g.*, the Bellwether Cases and MDL 2543).

The request for punitive damages in each of these situations is barred by the Court's Sale Order and Injunction. New GM neither assumed punitive damages claims, nor can it be held

---

[1]    Representative examples of such lawsuits are annexed hereto as **Exhibit "A"**.

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

liable for punitive damages based on Old GM conduct, or for claims for which New GM has no responsibility.[2]

**New GM Did Not Assume Punitive Damages Relating
to Product Liability Claims For Old GM Vehicles**

Under the Sale Agreement, New GM assumed "Product Liability Claims;" that is, compensatory damages for post-sale accidents relating to Old GM vehicles. New GM did not assume liability for punitive damages, which are assessed to punish the wrongdoer and deter future wrongdoing, for Old GM manufactured vehicles. The Sale Agreement provision that contains the definition of Product Liabilities employs words of limitation such as "caused by motor vehicles," "caused by accidents," and Product Liabilities which "arise directly" out of injury, to make clear that New GM's assumption of liabilities for post-sale accidents were only those directly related to the accident. This overall contractual intent of the parties is illustrated by the defined term "Damages" which specifically excludes punitive damages.

After objections to the originally filed Sale Agreement were made, New GM agreed to assume Product Liability Claims. Importantly, the objectors never asked New GM to assume anything more than compensatory damages, and that is all New GM agreed to do. This Court previously found that New GM only assumed liabilities that were commercially necessary for its post-sale business activities. Punitive damages assessed to punish alleged pre-sale wrongful conduct of Old GM, and to deter future wrongdoing by Old GM (an entity essentially out of business after the 363 Sale), was not something considered commercially necessary. In fact, based on the subordinated priority of punitive damages claims in bankruptcy, New GM would never have assumed an obligation that Old GM did not have to pay. Moreover, the creditors of Old GM, who would eventually become the future shareholders of New GM, would never have

---

[2] The marked pleadings to be submitted by New GM will detail the type of Old GM conduct allegations that cannot be used as a basis for punitive damages liability against New GM.

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

wanted New GM to be burdened with a subordinated liability (that otherwise was not to be paid by Old GM).

**New GM Did Not Assume Punitive Damages Relating
to Non-Product Liability Claims For Old GM Vehicles**

Non-Product Liability claims relating to Old GM vehicles/parts are found in both post-363 Sale accident cases (*e.g.*, the Bellwether Cases) and economic loss cases (*e.g.*, MDL 2543). New GM assumed only two types of non-Product Liability Claims relating to Old GM vehicles: (i) "glove box" warranty claims (*i.e.*, a specific written warranty, of limited duration, that only covers repairs and replacement of parts and not monetary damages); and (ii) Lemon Law claims (as defined in the Sale Agreement). The non-Product Liability Claims relating to Old GM vehicles for which punitive damages are sought are neither glove box warranty claims nor Lemon Law claims. Accordingly, such non-Product Liability claims are not Assumed Liabilities. Under the Sale Agreement, all liabilities of Old GM that were not Assumed Liabilities, were Retained Liabilities for which Old GM remained solely responsible. Accordingly, the non-Product Liability Claims relating to Old GM vehicles, asserted in the post-363 Sale accident cases and the economic loss cases, are Retained Liabilities. New GM is not liable for any damages for such claims, let alone punitive damages.

Plaintiffs attempt to circumvent these prohibitions by alleging their claims are Independent Claims, not Retained Liabilities. For example, in MDL 2543, plaintiffs argue that New GM had knowledge of purported defects in Old GM vehicles, and therefore had a duty to warn plaintiffs about such defects in Old GM vehicles; the failure to do so, plaintiffs argue, should give rise to punitive damages based on New GM's independent conduct. But, in reality, these claims are Retained Liabilities. Once New GM purchased Old GM's assets, free and clear

of claims and obligations relating to Old GM vehicles,[3] including successor liability claims, New GM did not have *any* ongoing duties to Old GM vehicle owners—other than Assumed Liabilities—by reason of statute, common law, contract, implied obligation, or otherwise. That was the obvious purpose for obtaining a "free and clear" order with respect to the 363 Sale. Because New GM did not assume any duty to warn Old GM vehicle owners, New GM cannot be held liable for punitive damages for failing to do so.[4]

### New GM Is Not Liable For Punitive Damages Relating to Old GM Conduct

Even if plaintiffs had alleged Independent Claims (they do not), they nevertheless may *not* base their punitive damages claims on Old GM conduct. To do so, is to assert a successor liability claim against New GM. As this Court previously found, "New GM ***could not be held liable for anything Old GM did***, and . . . claims for either compensatory or ***punitive damages would have to be premised solely on New GM's knowledge and conduct***." *In re Motors Liquidation Co.*, 534 B.R. 538, 544 n.16 (Bankr. S.D.N.Y. 2015) ("***Bledsoe* Decision**").[5] Thus, any punitive damage demand against New GM that is based on Old GM conduct, whether it relates to an Old GM vehicle or a New GM vehicle and whether in the context of a Product

---

[3]    The only exception to the "free and clear" rule relating to Old GM vehicles is Assumed Liabilities. The non-Product Liability Claims asserted against New GM for Old GM vehicles in lawsuits at issue are not Assumed Liabilities.

[4]    Plaintiffs contend that Section 6.15 of the Sale Agreement—the recall covenant—is another basis for their alleged Independent Claims. However, this provision was purposefully not included in the section dealing with Assumed Liabilities, and is thus *not* an exception to the general rule set forth in the Sale Order and Injunction that New GM acquired assets *free and clear* of all Old GM liabilities and Old GM conduct. New GM's separate covenant to comply with the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101, *et seq.* ("**Safety Act**"), does not create an independent obligation or duty to any third party other than the U.S. government. Indeed, a claimed breach of the Safety Act does not provide for an individual consumer cause of action. *See Handy v. Gen. Motors Corp.*, 518 F.2d 786, 788 (9th Cir. 1975) (*per curiam*); *see also Ayres v. GMC*, 234 F.3d 514, 522 (11th Cir. 2000) (stating that the Safety Act confers no private right of action). Thus, plaintiffs cannot base any claim—be it compensatory or punitive damages—on New GM's alleged failure to comply with the Safety Act.

[5]    The issue of whether Old GM conduct can be imputed to New GM is the subject of a separate brief to be submitted.

4

Liability claim (*e.g.,* the Bellwether Complaints) or an economic loss claim (the MDL Complaint), is barred by the Sale Order and Injunction.

As will be more fully described herein, plaintiffs' punitive damages claims are barred by the Sale Order and Injunction.

## RELEVANT BACKGROUND

### A.    The Sale Agreement, Assumed Liabilities And Punitive Damages

Pursuant to the Amended and Restated Master Sale and Purchase Agreement (as amended) ("**Sale Agreement**"), approved by this Court by Order dated July 5, 2009 ("**Sale Order and Injunction**"), New GM purchased assets ("**363 Sale**") of Old GM and agreed to assume only three categories of liabilities for vehicles/parts manufactured/sold by Old GM: (a) post-363 Sale accidents/incidents involving Old GM vehicles causing personal injury, loss of life or property damage ("**Product Liability Claims**"); (b) repairs provided for under the glove box warranty; and (c) Lemon Law claims essentially tied to the failure to honor the glove box warranty. All other liabilities relating to vehicles/parts manufactured/sold by Old GM were "Retained Liabilities" of Old GM. *See* Sale Agreement § 2.3(b). That was the fundamental basis of New GM's contractual agreement to purchase Old GM's assets free and clear of all liens and claims (other than contractually-defined Assumed Liabilities). Among others, Retained Liabilities under the Sale Agreement included "all Liabilities to *third parties* for Claims based upon Contract, tort or any other basis[.]" Sale Agreement, § 2.3(b)(xi). Plaintiffs' non-Product Liability Claims for Old GM vehicles are Retained Liabilities.

New GM never agreed to be liable for Old GM conduct relating to Retained Liabilities. Punitive damages claims are not mentioned in Section 2.3(a) of the Sale Agreement—the section that lists "Assumed Liabilities." Anything not listed in that section is a Retained Liability. Moreover, in the "Definitions" section of the Sale Agreement, "Damages" is defined as "any and

5

all Losses, *other than punitive damages*." Sale Agreement, at 5 (emphasis added). This definition expressly reflects the parties' general intent that New GM would never assume punitive damages relating to any Old GM liability, or relating to any Old GM conduct.

One category of Assumed Liabilities was liabilities related to Product Liability Claims; *i.e.*, liabilities for personal injury, loss of life, or property damage caused directly by a post-363 Sale accident/incident involving the operation/performance of an Old GM vehicle/part. Specifically, Section 2.3(a)(ix) of the Sale Agreement (as amended) defines Product Liability Claims as:

> all Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers (collectively, "Product Liabilities"), which arise ***directly*** out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date and arising from such motor vehicles' operation or performance ….

*Id.* (emphasis added). This provision was modified (after the original version of the Sale Agreement was filed with the Court) to address specific objections made to the 363 Sale by certain objectors (such as States' Attorneys General and the Creditors Committee). Those objections discussed the necessity of paying compensatory damages to future accident victims relating to Old GM vehicles. No objector asserted that New GM should assume punitive damages liability.[6]

---

[6] *See, e.g., Joinder And Limited Objection Of The States Of Connecticut, Kentucky, Maryland, Minnesota, Missouri, Nebraska, North Dakota And Vermont*, filed on June 19, 2009 [Dkt. No. 1926] ("The States submit that this Court should not enter any order depriving purchasers of GM vehicles of legal rights to be compensated for death or serious injuries caused by defects in GM products."); *Memorandum Of Law In Support Of The Limited Objection Of Callan Campbell, Kevin Junso, Et Al., Edwin Agosto, Kevin Chadwick, Et. Al., Joseph Berlingieri, And The Center For Auto Safety, Et Al., To The Debtors' 363 Motion For The Sale Of The "Purchased Assets" Free And Clear Of Potential Successor Liability Claims*, filed June 22, 2009 [Dkt. No. 2177] ("People who have not yet suffered injury or loss because of GM's behavior cannot have an 'interest in' GM's property because the injuries that would lead them to have such an interest have not yet even occurred.").

6

The original version of the Sale Agreement filed with the Sale Motion defined "Product Liabilities" as part of the initial version of Section 2.3(a)(ix), as follows:

> all Liabilities (including Liabilities for negligence, strict liability, design defect, manufacturing defect, failure to warn or breach of the express or implied warranties of merchantability or fitness for a particular purpose) to third parties for death, personal injury, other injury to persons or damage to property (collectively, "Product Liabilities") in each case arising out of products delivered to a consumer, lessee or other purchaser of products at or after the Closing.

Thus, in the original version of the Sale Agreement, the term "Product Liabilities" is narrowed by when the vehicle was sold to the consumer (post-Closing). When Section 2.3(a)(ix) was amended to address the objections to the Sale Motion, the term "Product Liabilities" was also narrowed, but not in terms of when the vehicle was sold. Rather, Product Liabilities was first defined to relate to injuries "*caused by* Old GM motor vehicles" in post-sale accidents. Then, the more narrowly defined term "Product Liabilities" was then further narrowed by the addition of the word "*directly*." That word signifies that New GM agreed to only assume damages specifically related to the accident—the basis for compensatory damages. This concept was further emphasized in Section 2.3(a)(ix) by the use of the clause "arising from such motor vehicles' operation or performance." In other words, the damages must relate to the performance of the vehicle during the accident.

The term "Liabilities" in Section 2.3(a)(ix) is not a stand-alone term. It is part of the definition of what constitutes a "Product Liability." The Product Liabilities definition narrows the term Liabilities to that *caused by the motor vehicle* itself—as contrasted to liabilities derived from the overall conduct of the Seller. Then the words that follow the defined term Product Liabilities, such as "*directly*" and "*arising from such motor vehicles performance*," are further words of limitation that were intended to narrow the scope of the Product Liabilities assumed by New GM.

7

Punitive damages are legally and fundamentally different from compensatory damages. They are awarded in rare instances to punish a wrongdoer for egregious conduct and to deter its repetition.  Under the Sale Agreement, New GM only agreed to assume those liabilities that it deemed commercially necessary for the operation of its new business.[7]  It obviously never meant that New GM would pay for non-compensatory awards designed to *punish* Old GM for *its* conduct relating to the manufacture/sale of Old GM vehicles/parts.  Clearly, punishing New GM for Old GM conduct was of no commercial benefit to New GM.  And, punishing Old GM had no deterrent effect since it would no longer be in business after the 363 Sale.  Further, because punitive damages would never be paid by the Old GM bankruptcy estate, there was no benefit to Old GM if such liabilities were paid by New GM.  In addition, unsecured creditors who were to be the future equity holders of New GM would have been made worse off by New GM's assumption of such damages.  Indeed, Old GM's unsecured creditors would have strongly disfavored New GM assuming any punitive damages liability, since such damages were otherwise subordinated to their claims.

**B.     The Sale Order and Injunction, and Claims Based on Old GM Conduct**

The Sale Order and Injunction provides that, except for Assumed Liabilities,[8] New GM shall not be liable for Old GM's conduct (including acts and failures to act).  Specifically, Paragraph AA of the Sale Order and Injunction provides, in relevant part:

---

[7]  *See Castillo v. General Motors Co. (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-00509, 2012 WL 1339496, at *4 (Bankr. S.D.N.Y. Apr. 17, 2012) ("In short, by the end of the 363 Sale hearing it was clear not only to Old GM and Treasury, but also to the Court and to the public, that the goal of the 363 Sale was to pass on to Old GM's purchaser—what thereafter became New GM—only those liabilities that were commercially necessary to the success of New GM."); *Trusky v. General Motors LLC (In re Motors Liquidation Co,)*, Adv. Proc. No. 12-09803, 2013 WL 620281, at *8 (Bankr. S.D.N.Y. Feb. 19, 2013) ("Nor did New GM assume liability for Old GM's failures under other theories.  As I noted in *Castillo*, the intent of the parties was to pass on only those liabilities that were commercially necessary to the success of New GM.").

[8]  As noted, punitive damages are not Assumed Liabilities.

8

> The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and, except for the Assumed Liabilities, will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of liens, claims, encumbrances, and other interests (other than Permitted Encumbrances), including rights or claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code) based on any successor or transferee liability, including, but not limited to … *all claims arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates*, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor or transferee liability. (emphasis added)

*See also Trusky v. Gen. Motors LLC (In re Motors Liquidation Co.)*, Adv. Proc. No. 09-09803, 2013 WL 620281, at *2 (Bankr. S.D.N.Y. Feb. 19, 2013) ("New GM is not liable for Old GM's conduct or alleged breaches of warranty.").

Several other provisions of the Sale Order and Injunction provide that New GM would have no responsibility for any liabilities (other than Assumed Liabilities) predicated on Old GM's conduct, relating to the operation of Old GM's business, or the production of vehicles/ parts before the closing of the 363 Sale, and that creditors and other parties in interest were barred from asserting such liabilities, including successor liability claims, against New GM. *See*, *e.g.*, Sale Order and Injunction, ¶¶ 8, 9, 46.

## C.     The Motions to Enforce, and the Bankruptcy Court's <u>Decision and Judgment on the Four Threshold Issues</u>

In 2014, New GM filed three motions ("**<u>Motions to Enforce</u>**") with the Bankruptcy Court seeking to enforce the provisions of the Sale Order and Injunction.  The Motions to Enforce did not concern lawsuits based exclusively on "Product Liability Claims," but they did subsume such lawsuits to the extent that non-Product Liability Claims were also alleged therein.

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

In addition, to the extent such lawsuits sought punitive damages based on Old GM conduct, such claims were subsumed by the Motions to Enforce.

In connection with the Motions to Enforce, the parties and the Court ultimately agreed to address four threshold issues ("**Four Threshold Issues**").  After briefing and oral argument, the Court rendered its *Decision on Motion to Enforce Sale Order* on April 15, 2015 ("**Decision**").[9] The Court specifically held, among other things, that it will continue to enforce the prohibitions against successor liability, and New GM is not liable for any Old GM conduct:  "Claims premised in any way on Old GM conduct are properly proscribed under the Sale Agreement and the Sale Order, and by reason of the Court's other rulings, the prohibitions against the assertion of such claims stand."  *Id.*, 529 B.R. at 528.

On June 1, 2015, the Court issued the Judgment ("**Judgment**"), memorializing its rulings set forth in the Decision.[10]  The Judgment provides, in relevant part, as follows:

> Except for Independent Claims[11] and Assumed Liabilities (if any), all claims and/or causes of action that the Ignition Switch Plaintiffs may have against New GM concerning an Old GM vehicle or part seeking to impose liability or damages based in whole or in part on Old GM conduct (including, without limitation, on any successor liability theory of recovery) are barred and enjoined pursuant to the Sale Order, and such lawsuits shall remain stayed pending appeal of the Decision and this Judgment.

Judgment, ¶ 9.

Ignition Switch Plaintiffs have not and cannot assert viable claims against New GM based on New GM's own, independent, post-Closing acts.  Yet, even if they did, their request for

---

9   *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015).

10   Notices and cross-notices of appeal have been filed with respect to the Judgment.

11   "Independent Claims" are defined in the Judgment as "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct."  Judgment, ¶ 4. Many of the lawsuits against New GM that raise the Punitive Damages Issue are not ignition switch cases and, therefore, the modification to the Sale Order and Injunction to allow, in certain circumstances, Independent Claims to be asserted against New GM, does not apply to such plaintiffs.

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

punitive damages would fail because it is premised on Old GM's conduct.  Non-Ignition Switch

Plaintiffs have not demonstrated a due process violation for their non-Product Liability Claims

and, until they do (if ever), they cannot assert Independent Claims against New GM that would

be otherwise proscribed by the Sale Order and Injunction.  Therefore, they too cannot request

punitive damages in connection with claims relating to Old GM vehicles.

**D.    The Bellwether Cases in MDL 2543**

In connection with the multidistrict litigation pending in the United States District Court

for the Southern District of New York ("**District Court**"), captioned *In re General Motors LLC*

*Ignition Switch Litigation*, Case No. 14-MD 2543 ("**MDL 2543**"), the following six cases have

been designated as bellwether cases, with their trials scheduled to go first in MDL 2543: (i)

*Yingling v. General Motors LLC*, (ii) *Barthelemy v. General Motors LLC*; (iii) *Reid v. General*

*Motors LLC*; (iv) *Norville v. General Motors LLC*; (v) *Cockram v. General Motors LLC*; and (vi)

*Scheuer v. General Motors LLC* (collectively, the "**Bellwether Cases**").  Each of the Bellwether

Cases concern an accident that took place after the closing of the 363 Sale involving a vehicle

manufactured/sold by Old GM, and each Bellwether Case seeks punitive damages against New

GM.[12]  All six of the Bellwether cases request punitive damage based on Old GM conduct.[13]

Specifically, the *Yingling* complaint contains at least 77 paragraphs detailing events that took

place prior to the closing of the 363 Sale.  *See Yingling* Complaint, ¶¶ 21-98.  Every cause of

action in the *Yingling* complaint incorporates by reference every prior paragraph "as if fully set

---

[12]  New GM disputes liability for the Product Liability Claims alleged in the Bellwether Cases, and ultimately the merits dispute will be decided in the District Court. The Bellwether Cases also assert claims that New GM maintains do not fall within the definition of Product Liability Claims and, as such, they are not Assumed Liabilities of New GM but Retained Liabilities of Old GM (*e.g.*, claims for fraud, fraudulent concealment, fraudulent misrepresentation, violations of consumer protection statutes).  However, the only issue addressed in this brief is the Punitive Damages Issue.  New GM will set forth its position on such other claims that violate the Sale Order and injunction in other pleadings filed with the Court.

[13]  New GM does not dispute that Old GM conduct is an appropriate basis for compensatory damages for a Product Liability Claim assumed by New GM.

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

forth herein" (*see Yingling* Complaint, ¶¶ 148, 164, 167, 173, 176, 180, 183, 202, 205, 219), and each "wherefore" clause for each count in the Yingling complaint contains a request for punitive damages (*see id.*, pp. 35-39, 42, 44).

The complaints in the other five Bellwether Cases are substantially similar; each seeks punitive damages based on dozens of paragraphs detailing events that took place prior to the closing of the 363 Sale involving Old GM conduct.  *See, e.g., Scheuer* Complaint, ¶¶ 142-188.[14] In addition, and contrary to numerous express rulings by this Court, the plaintiffs in these five Bellwether Cases continue to assert that "New GM is and was the successor corporation to General Motors Corporation and/or General Motors Company, which underwent bankruptcy in 2009."  *Scheuer* Complaint, ¶ 37; *see also Barthelemy* Complaint, ¶ 33; *Cockram* Complaint, ¶ 28; *Reid* Complaint, ¶ 33; *Norville* Complaint, ¶ 35.

Moreover, with respect to punitive damages, the *Scheuer* Complaint alleges, *inter alia*, as follows:

> Defendant knew that Plaintiff's vehicle and ignition switch was dangerously defective and could not be safely used for their intended purpose. Defendant further knew that these dangerous defects would not be apparent to the public and that Plaintiff would use the Vehicle without adequate warning of the Key Defects. Defendant nevertheless ***placed the ignition switch and Plaintiff vehicle into stream of commerce*** in willful and conscious disregard of public safety, meriting punitive damages.

*Scheuer* Complaint, ¶ 429 (emphasis added).[15]  The vehicle at issue in the *Scheuer* Complaint is a 2003 Saturn Ion, which was clearly manufactured and "placed into the stream of commerce" by Old GM, approximately six years before New GM came into existence.  Thus, plaintiff's request

---

14  Most, if not all of these allegations are contained in the complaints in the four other Bellwether Cases.  *See Barthelemy* Complaint (¶¶ 138-184 thereof); *Cockram* Complaint (¶¶ 133-179 thereof); *Reid* Complaint (¶¶ 138-184 thereof); *Norville* Complaint (¶¶ 140-186 thereof).

15  A substantially similar allegation is made in the *Barthelemy* Complaint (*see* ¶ 455 thereof), the *Cockram* Complaint (*see* ¶ 484 thereof), the *Reid* Complaint (*see* ¶ 465 thereof), and the *Norville* Complaint (*see* ¶ 435 thereof).

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

for punitive damages necessarily includes allegations relating to Old GM conduct and is barred by the Sale Order and Injunction.

In addition, five of the complaints in the six Bellwether Cases purport to seek punitive damages based on a duty to recall an Old GM vehicle. However, New GM did not assume such liabilities; instead, it purchased assets "free and clear" of those liabilities. New GM did not manufacture the vehicles and did not sell the vehicles to the plaintiffs in the Bellwether Cases. Moreover, such plaintiffs do not have a private right of action to pursue claims based on a failure to comply with the Safety Act. New GM is not liable for what Plaintiffs assert are their Independent Claims relating to Old GM vehicles and, therefore, such claims cannot serve as a basis for punitive damages liability.

### E.      The MDL Complaint in MDL 2543

In addition to the complaints in the Bellwether Cases, the Second Amended Consolidated Complaint ("**MDL Complaint**") filed on or about June 12, 2015 in MDL 2543 also seeks punitive damages on behalf of, among others, 63 plaintiffs who purchased vehicles manufactured by Old GM prior to the closing of the 363 Sale, as well as 40 additional plaintiffs who purchased used Old GM vehicles after the closing of the 363 Sale from third parties who had no connection to New GM. Moreover, the MDL Complaint contains numerous allegations of Old GM conduct, which plaintiffs expressly "reallege and incorporate by reference" in every Count in the MDL Complaint that seeks punitive damages. *See, e.g.*, MDL Complaint, ¶¶ 251-297. In effect, every claim in the MDL Complaint that seeks punitive damages includes, and is based on, Old GM conduct allegations. *See, e.g.*, MDL Complaint ¶ 2969 (Count I, which contains a request for punitive damages, *see* MDL Complaint, ¶ 2992).

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

F.      **Other Complaints**

Plaintiffs (in complaints like the ones annexed as Exhibit "A" hereto relating to New GM vehicles) seek punitive damages based on allegations relating to Old GM conduct. That is a successor liability claim which is barred by the Sale Order and Injunction.

## ARGUMENT

### ANY REQUEST FOR PUNITIVE DAMAGES CONTAINED IN LAWSUITS FILED AGAINST NEW GM THAT IS BASED ON OLD GM CONDUCT IS BARRED PURSUANT TO THE SALE ORDER AND INJUNCTION

As noted, this Court already concluded in the *Bledsoe* Decision that New GM cannot be liable to plaintiffs for punitive damages that depend on Old GM conduct. This is the beginning and end of the inquiry.

This Court also concluded in the Decision and the Judgment that, with the sole exception of valid Independent Claims based *exclusively* on New GM conduct, New GM did not acquire any *new* liabilities in connection with the 363 Sale with respect to Old GM vehicles. Thus, punitive damages claims based on Old GM conduct, either in whole or in part, are essentially successor liability claims and barred by the Sale Order and Injunction.

A.      **Punitive Damages in General**

As stated by the United States Supreme Court,

> Although compensatory damages and punitive damages are typically awarded at the same time by the same decision maker, they serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. [citations omitted]. The latter . . . operate as "private fines" intended to punish the defendant and to deter future wrongdoing.

*Cooper Inds., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) ("[Punitive damages] are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to

deter its future occurrence."); *Virgilio v. City of New York*, 407 F.3d 105, 116 (2d Cir. 2005) ("While compensatory damages recompense for one's injuries, punitive damages under New York law serve an entirely different purpose. Punitive damages are invoked to punish egregious, reprehensible behavior."); *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 359 (2d Cir. 2001) ("[T]he objectives of punitive damages by definition differ from the objectives of compensatory damages.").

"The common-law definition of 'punitive damages' focuses on the nature of the defendant's conduct. As a general rule, the common law recognizes that damages intended to compensate the plaintiff are different in kind from 'punitive damages.'" *Molzof v. United States*, 502 U.S. 301, 307 (1992). "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor …, and to deter him and others from similar extreme conduct." *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-267 (1981); *see also Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 196 (N.Y. 2007) ("Punitive damages are not to compensate the injured party but rather to punish the tortfeasor and to deter this wrongdoer and others similarly situated from indulging in the same conduct in the future.").

Recognizing the myriad issues with punitive damages, many states significantly limit the applicability of punitive damages or bar their imposition altogether. For example, the state of Washington has held that punitive damages are contrary to public policy. *See Dailey v. N. Coast Life Ins. Co.*, 919 P.2d 589, 590 (1996). Nebraska also does not allow punitive damages. *See Miller v. Kingsley*, 230 N.W.2d 472, 474 (Neb. 1975) ("It is a fundamental rule of law in this state that punitive, vindictive, or exemplary damages are not allowed. The measure of recovery in all civil cases is compensation for the injury sustained."). Other states refuse to award punitive damages absent a statutory mandate. *Killebrew v. Abbott Labs.*, 359 So. 2d 1275, 1278

(La. 1978) ("[I]n Louisiana punitive damages are not allowable unless it be for some particular wrong for which a statute expressly authorizes the imposition of some such penalty"); *Boott Mills v. Boston & M.R.R.*, 106 N.E. 680, 683 (Mass. 1914) ("In this commonwealth there is no such thing known to the common law as the recovery of punitive damages in addition to compensatory damages."); *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 286 (Mich. App. 2006) ("Punitive damages, which are designed to punish a party for misconduct, are generally not recoverable in Michigan. The exception is if they are expressly authorized by statute"); N.H. REV. STAT. ANN. § 507:16 ("No punitive damages shall be awarded in any action, unless otherwise provided by statute.").

Given the unique nature of punitive damages, and the fact that New GM was only agreeing to take on liabilities deemed commercially necessary for the operation of the new business, it obviously did not agree to assume punitive damages that are designed to punish Old GM for its conduct. If it had agreed to do so, such an unusual and significant assumption of liabilities would have been specifically set forth in the Sale Agreement. *See* Argument, Section D, *infra*. It is not, which is outcome determinative on this issue.

## B.    Punitive Damages Claims Were Not Assumed By New GM

There is no category of Assumed Liabilities that provides for the assumption of punitive damages. In fact, the term "Damages" as used in the Sale Agreement specifically excludes punitive damages. *See* Sale Agreement, at 5 (emphasis added).[16] The only possible category

---

[16] It is axiomatic that an agreement must be interpreted as a whole, with its terms read consistently and harmoniously. *See, e.g., Terwilliger v. Terwilliger,* 206 F.3d 240, 245 (2d Cir. 2000) ("[T]he entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency."); *Hillside Metro Assoc, LLC v. JP Morgan Chase Bank,* No. 10–cv–1772, 2011 WL 5008368, at *9 (E.D.N.Y. Oct, 20, 2011) ([I]n interpreting a contract, court must "consider the contract as a whole ... and attempt to harmonize all of its terms."); *Metz v. U.S. Life Ins. Co.,* No. 09–cv–10250, 2010 WL 3703810, at *3 (S.D.N.Y. Sept 21, 2010) ([U]nder New York law, a contract "should be read as a whole, and every part will be interpreted with reference to the whole.") (internal citation and quotation marks omitted)). The Sale Agreement is governed by New York law, if the Bankruptcy Code is not applicable. *See* Sale Agreement, § 9.12.

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

where a punitive damages claim could be relevant to a vehicle issue is in the category dealing with Product Liability Claims.    But a review of that category of Assumed Liabilities demonstrates, for multiple reasons, that punitive damages were not assumed by New GM as part of the 363 Sale.

The language used in the Sale Agreement to describe Product Liability Claims demonstrates that punitive damages were not included in that category of Assumed Liabilities. In order for a claim to be a Product Liability Claim, it must be a liability:

    i.     to a third party "for death, personal injury, or other injury to Persons or damage to property;"

    ii.    "caused by motor vehicles designed for operation on public roadways or by the component parts of such motor vehicles;"

    iii.   related to a motor vehicle or part "in each case, manufactured, sold or delivered by Sellers;"

    iv.   that "arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date;"

    v.    and "arising from such motor vehicles' operation or performance …."

Clearly, each of the above elements comprising a Product Liability Claim necessarily concerns compensatory damages arising from a single, specific accident, and not a liability based on the overall conduct of the seller/manufacturer (*e.g.*, punitive damages).    Based on the language used to define Product Liability Claims, New GM only agreed to assume compensatory damages related to post-363 Sale accidents involving Old GM vehicles/parts, and was not agreeing to assume punitive damages.    This interpretation is also consistent with the basis for the June 26, 2009 amendment (as further amended on June 30, 2009) to the Sale Agreement that modified Product Liability Claims, as well as this Court's rulings that (a) recognized New GM was only assuming liabilities that were commercially necessary for its operations, and

17

(b) prohibited claims against New GM based on Old GM conduct.  *See, e.g.*, Judgment, ¶ 9;

Decision, 529 B.R. at 528; *Trusky*, 2013 WL 620281, at *2.

As noted, the final language in Section 2.3(a)(ix) of the Sale Agreement (as amended),

which added the word "*directly*" and the clause "arising from such motor vehicles' operation or

performance," are intended to connect any assumed Product Liability Claim to the specific

accident.  That intertwining is indicative of compensatory damages, not punitive damages.

Accordingly, plaintiffs' requests for punitive damages that relate to Product Liability Claims

must be stricken from their complaints.

## C.    New GM Only Assumed Product Liability Claims of the Sellers Who, At the Time, Were Debtors in a Bankruptcy Case, and Not Liable for Punitive Damages

The "Sellers" under the Sale Agreement were debtors in bankruptcy.  Thus, any liabilities

*assumed* by New GM would be limited to liabilities that would have been otherwise allowed and

paid by the Debtors.

Pursuant to Section 726(a) of the Bankruptcy Code, general unsecured claims (either

timely filed or tardily filed) are paid in full before an allowed claim "for any fine, penalty, or

forfeiture, or for multiple, exemplary or punitive damages, arising before the earlier of the order

for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or

damages are not compensation for actual pecuniary loss suffered by the holder of such claim[.]"

11 U.S.C. § 726(a)(4); *see also In re Ephedra Prods Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005)

("[I]n bankruptcy punitive damages and penalties are given a low priority of distribution so that

general creditors are paid in full before any estate assets are used to pay penalties.").

While the Debtors' cases were Chapter 11 cases, Section 726 is applicable pursuant to the

"best interest of creditors" test, *i.e.*, that holders of claims in a Chapter 11 case must receive on

account of their claims at least as much as they would receive in a Chapter 7 case.  *See, e.g.*, *In*

*re Best Payphones, Inc.*, 523 B.R. 54, 75 (Bankr. S.D.N.Y. 2015) ("Section 11 U.S.C. § 1129(a)(7) requires a creditor to receive or retain at least as much property under the plan as it would in a hypothetical chapter 7 liquidation.  It is the lowest point below which a proposed distribution may not fall, and must be read together with 11 U.S.C. § 726(a), which governs the priority of distribution in a chapter 7 case.").

At oral argument on the Four Threshold Issues, this Court recognized that punitive damages claims would not have received a distribution from the Debtors.  *See* Hr'g Tr. 89:11-17, Feb. 18, 2015 ("But in the claims process, you don't get punitive damages, you don't get RICO damages, because there's well-established authority.  I think I held this earlier in GM in the [Apartheid] opinion, that punitives in the claims context, in a liquidating plan, penalized the wrong guys.  They penalized the innocent unsecured Creditors.").[17]

It cannot be disputed that New GM was a newly formed company, completely separate and apart from Old GM. The public policy purposes for punitive damages is not served by burdening a new company with punitive damages liabilities based on the acts of the old company.  Any punishment must be directed at the entity that committed the bad conduct. Penalizing New GM (with punitive damages) for obligations that Old GM would not be required to pay would be penalizing the "wrong guys," and was not part of the bargain struck in the Sale Agreement approved by the Court.  Penalizing the new equity holders of New GM (*i.e.*, the unsecured creditors of Old GM) with subordinated punitive damage claims would also be penalizing the wrong guys.

---

[17]  In this Court's Bench Decision on Apartheid Claimant's Motion for Class Certification, and on Debtor's Objection to Apartheid Claimants' Underlying Claims, dated January 28, 2011, it noted (page 19) as follows: "And the deterrence class actions often provide would be of little utility in a case like this one, where Old GM is liquidating, and any punishment for any wrongful Old GM conduct would be borne by Old GM's innocent creditors."  None of the claims by the Apartheid claimants were allowed against the Old GM bankruptcy estate.

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

As understood when the 363 Sale was entered into, unsecured creditors were not going to receive payment in full on their claims from the Debtors' estates, and because unsecured claims have a higher priority than punitive damages claims, any claims for punitive damages against the Debtors would have been denied. Accordingly, as claims for punitive damages would never have been paid by the Debtors, New GM did not intend or agree to assume liabilities that would not be compensated by Old GM.

### D.    Principles of Contract Construction and <u>New York Law Bar Punitive Damages</u>

The structure of the Sale Agreement was based on the principle that liabilities are Retained Liabilities unless they are specifically listed as Assumed Liabilities. *See* Sale Agreement, § 2.3(b) (providing that "[e]ach Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement, Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability of any Seller, whether occurring or accruing before, at or after the Closing, other than the Assumed Liabilities"). This structure is the doctrine of *expressio unius est exclusio alterius*, *i.e.*, the expression of one thing is the exclusion of the other. *See IBM Poughkeepsie Employees Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 590 F. Supp. 769, 773 n. 19 (S.D.N.Y. 1984) ("Under the doctrine of *expressio unius est exclusio alterius*, when certain persons or categories are specified in a contract, an intention to exclude all others may be inferred."); *Quadrant Structured Prods. Co.,* 23 N.Y.3d. 549, 560 (N.Y. 2014) ("[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission. The maxim *expressio unius est exclusio alterius,* as used in the interpretation of contracts, supports precisely this conclusion.").

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

This doctrine is found throughout New York law.[18]  For example, third parties who voluntarily assume certain liabilities are generally shielded from additional exposure.  For example, with respect to indemnitors:

> [w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.  Where the language of the parties is not clear enough to enforce an obligation to indemnify the Court will not rewrite the contract and supply a specific obligation the parties themselves did not spell out.

*Corral v. Outer Marker LLC*, No. 10-CV-1162 SJF ARL, 2012 WL 243318, at *3 (E.D.N.Y. Jan. 24, 2012); *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491–92 (1989) ("[T]he promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances.").

In the analogous guarantor context, New York law provides that

> [a] guarantor's obligation must be narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract.  Guarantees are strictly construed because the guarantor cannot be held responsible to guarantee a performance different from that which he intended or specified in the guaranty.

*Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust*, 93 F.3d 1064, 1073–74 (2d Cir. 1996) (interpreting New York law); *Am. Honda Fin. Corp. v. Simao*, 526 F. App'x 112, 115 (2d Cir. 2013) ("[W]e interpret guaranty obligations in the strictest manner"); *Symbol Technologies, Inc. v. Voicenet (Aust.) Ltd.*, No. CV-03-6010 SJF ARL, 2008 WL 89626, at *2 (E.D.N.Y. Jan. 4, 2008) (noting that guaranties are interpreted in favor of the guarantor).

In the subordination context, there is the similar "Rule of Explicitness," that, in order for a senior creditor's priority rights to be enforced, the subordination agreement has to be explicit. In the case of post-petition interest when a debtor files for bankruptcy, unless the subordination

---

[18]  As noted in footnote 16, *supra*, the Sale Agreement (§ 9.12) provides that New York law governs if the Bankruptcy Code is not applicable.

agreement specifically addresses the issue, no subordination priority will be inferred.  *See In re K-V Discovery Solutions, Inc.*, 396 B.R. 330, 335 (Bankr. S.D.N.Y. 2013).  The substance of the rule applies in this case.

Here, the very purpose of the Sale Agreement was for New GM to obtain Old GM's assets free and clear of liens, claims and encumbrances.  Without any legal obligation to do so, New GM voluntarily assumed certain specific Old GM liabilities, but only those liabilities deemed commercially necessary for it to be a successful business going forward.  Decisively, punitive damages do not fit within this construct, and are not specifically set forth anywhere in the Assumed Liabilities section of the Sale Agreement.  Such omission demonstrates that punitive damages claims were never meant to be assumed under the Sale Agreement.  Accordingly, New York law does not permit a rewriting of the Sale Agreement to impose specific obligations to which the parties did not explicitly agree.

**E.**      **Since Punitive Damage Claims Were Not**
            **<u>Assumed, They Cannot Be Based on Old GM Conduct</u>**

This Court, on numerous occasions, has ruled that, unless a liability is an Assumed Liability as defined in the Sale Agreement, New GM cannot be liable for claims based on Old GM conduct.  *See* Sale Order and Injunction, ¶ AA; Judgment, ¶ 9, *Motors Liquidation Co.*, 529 B.R. at 528.  New GM also cannot be liable for claims based on the operation of Old GM's business (Sale Order and Injunction, ¶ 8), or any "Liabilities to third parties for Claims based upon Contract, tort or any other basis[.]" Sale Agreement, § 2.3(b)(xi).  Many punitive damages claims being asserted against New GM (concerning Old GM vehicles *or* New GM vehicles) rely specifically on Old GM conduct, or concern the operation of Old GM's business.  Such claims are barred by the Sale Order and Injunction.

New GM did not have any obligation *or ongoing duties* to third parties with respect to Retained Liabilities.  In particular, with respect to non-Product Liability Claims relating to Old GM vehicles, because New GM was not the manufacturer of Old GM vehicles, and did not sell Old GM vehicles before the 363 Sale, it was not liable for express or implied warranty claims, implied obligations under statutory or common law, or claims arising under contract, tort or otherwise.  *See* Sale Order and Injunction, ¶ 56; Sale Agreement, §§ 2.3(b)(xi) and (xvi).  New GM purchased assets free and clear of all such claims, including successor liability claims. Punitive damages sought for non-Product Liability Claims that are Retained Liabilities is a successor liability claim and thus barred by the Sale Order and Injunction.

Plaintiffs fare no better with respect to their self-designated Independent Claims. Whether styled as a duty to recall, or relating to a New GM vehicle, punitive damages liability for New GM cannot be predicated on Old GM conduct. To do so, is to assert a proscribed successor liability claim.

WHEREFORE, New GM respectfully requests that this Court: (i) find that any request for punitive damages against New GM based on Old GM conduct is barred by the Sale Order and Injunction and cannot be maintained against New GM; (ii) direct plaintiffs in lawsuits that seek punitive damages against New GM based on Old GM conduct to withdraw their request for punitive damages so as to conform to the rulings set forth in the Judgment, Decision and Sale Order and Injunction; and (iii) grant New GM such other and further relief as the Court may deem just and proper.

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15

Dated:  New York, New York
        September 13, 2015

                                    Respectfully submitted,


                                    _____/s/ Arthur Steinberg_____
                                    Arthur Steinberg
                                    Scott Davidson
                                    KING & SPALDING LLP
                                    1185 Avenue of the Americas
                                    New York, New York  10036
                                    Telephone:    (212) 556-2100
                                    Facsimile:    (212) 556-2222

                                    Richard C. Godfrey, P.C. (admitted *pro hac vice*)
                                    Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
                                    KIRKLAND & ELLIS LLP
                                    300 North LaSalle
                                    Chicago, IL 60654
                                    Telephone:    (312) 862-2000
                                    Facsimile:    (312) 862-2200

                                    *Attorneys for General Motors LLC*

DMSLIBRARY01\21600\162081\26976271.v1-9/13/15