```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
IN RE:                                                            :
                                                                  :
MOTORS LIQUIDATION COMPANY                                        :
                                                                  :
------------------------------------------------------------------X
```

15-CV-4685 (JMF)
15-CV-5056 (JMF)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/27/2015

JESSE M. FURMAN, United States District Judge:

These cases arise out of the Chapter 11 bankruptcy of the Motors Liquidation Company (the "Bankruptcy Proceedings"), formerly known as General Motors ("Old GM"). In addition, they relate (in part) to multi-district litigation proceedings (the "MDL") now pending before this Court against General Motors LLC ("New GM"), which purchased the majority of Old GM's assets pursuant to Section 363 of the Bankruptcy Code.[1] In 2014, New GM filed several motions to enforce the Bankruptcy Court's July 5, 2009 sale order and injunction (the "Sale Order") seeking to enjoin many of the cases and claims in the MDL and elsewhere. Earlier this year, the Honorable Robert E. Gerber, United States Bankruptcy Judge for the Southern District of New York, ruled that certain claims and allegations were barred by the Sale Order, and established a procedure by which parties could file pleadings to determine whether and how their claims were subject to that ruling. Plaintiffs in the MDL (the "MDL Plaintiffs"), the State of Arizona, and the People of the State of California (together with the State of Arizona, the "State Plaintiffs," and, collectively, "Plaintiffs") filed such pleadings. Thereafter, they moved to withdraw the reference, thereby asking this Court — rather than the Bankruptcy Court — to resolve whether their claims are subject to the Bankruptcy Court's ruling. By Order entered August 17, 2015, the

---

[1] Familiarity with the Bankruptcy Proceedings (Case No. 09-BK-50026 (REG) (Bankr. S.D.N.Y.) ("Bankr. Docket")) and the MDL (Case No. 14-MD-2543 (JMF) ("MDL Docket")) is presumed.

Court denied Plaintiffs' motions to withdraw the reference for reasons to be stated in an opinion to be filed in due course. (15-CV-4685, Docket No. 8; 15-CV-5056, Docket No. 23). This is that opinion.

## BACKGROUND

There are several types of proceedings currently involving New GM that are implicated by the instant motions to withdraw the reference. First, Old GM filed for bankruptcy in June 2009, and the resulting Bankruptcy Proceedings before the Bankruptcy Court for the Southern District of New York are still ongoing. Second, there are many civil proceedings brought against New GM relating to defects in certain GM-brand motor vehicles and associated recalls. The Judicial Panel on Multidistrict Litigation (the "JPML") has consolidated many of those actions before this Court, and others have been directly filed and consolidated with the MDL. (*See* MDL Docket No. 1). Initially, the MDL included only economic-loss claims against New GM based on defects in the ignition switches of certain vehicles (*id.*), but it has since expanded to include personal and wrongful death claims, as well as economic-loss claims based on other alleged defects. (*See, e.g.*, MDL Docket No. 505 at 1 n.1; MDL Docket No. 519 at 1). Despite the MDL's scope, however, not all civil actions against New GM relating to the alleged defects are included; there are other, similar civil actions pending in state court, including the actions brought by the State Plaintiffs. (Mem. Law Supp. Mot. To Withdraw Reference Regard No Strike Pleadings (15-CV04685, Docket No. 4) ("States' Mem."), Ex. A; *id.*, Ex. B).

The Court need not spell out the lengthy and convoluted history of all the foregoing proceedings, but can state the relevant facts briefly. After Old GM filed for bankruptcy, it moved to sell the majority of its assets pursuant to Section 363 of the Bankruptcy Code to the entity that became New GM. *See In re Motors Liquidation Co.*, 500 B.R. 333, 336 (S.D.N.Y.

2

2013); *In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009). (*See also* Bankr. Docket No. 1). On July 5, 2009, Judge Gerber approved the sale, and entered the Sale Order, which provided that New GM assumed the majority of Old GM's assets "free and clear" of many of Old GM's liabilities. *See In re General Motors LLC Ignition Switch Litigation*, No. 14-MD-2543 (JMF), 2015 WL 3619584, at *2 (S.D.N.Y. June 10, 2015). Between April and August 2014, after the ignition-switch defect came to light and many of the cases that are now part of the MDL were filed, New GM filed three motions in the Bankruptcy Proceedings seeking to enforce the Sale Order. (*See* Bankr. Docket Nos. 12620, 12807, 12808). New GM argued that the Sale Order barred claims seeking to hold New GM liable for Old GM's conduct. More specifically, New GM contended the Sale Order barred many cases or claims alleging economic loss and all personal injury and wrongful death cases arising out of incidents or accidents prior to the sale.

On April 15, 2015, Judge Gerber issued an opinion granting in large part two of New GM's motions — namely, those addressing claims brought by the "Ignition Switch Plaintiffs," MDL Plaintiffs whose claims pertain to ignition-switch defects with respect to GM-branded vehicles involved in specific recalls (*see* Mem. Law Supp. Mot. To Withdraw Reference Ignition Switch Pls.' No Strike Pleading Regard Second Amended Consol. Compl.; & Non-Ignition Switch Pls.' (I) Objection Pleading Regard To Second Amended Consol. Compl. & (II) GUC Trust Asset Pleading (15-CV-5056, Docket No. 4) ("MDL Pls.' Mem.") v. n.2), and State Plaintiffs, among others; the opinion did not address claims brought by the "Non-Ignition Switch Plaintiffs," MDL Plaintiffs whose claims relate primarily to defects other than ignition switches. *See In re Motors Liquidation Co.*, 529 B.R. 510, 526-27 (Bankr. S.D.N.Y. 2015) ("*April 15th Bankr. Op.*"). To the extent relevant here, Judge Gerber held that, pursuant to the equitable mootness doctrine, the Ignition Switch Plaintiffs and the State Plaintiffs may not recover on any

3

of their claims from the trust established by the bankruptcy plan (the "General Motors Liquidation Trust" or "GUC Trust"). *See April 15th Bankr. Op.*, 529 B.R. at 585-92. He also held that parties could not pursue claims arising out of Old GM's conduct, but could pursue claims against New GM arising out of New GM's own, post-closing acts — identified as "Independent Claims." *See April 15th Bankr. Op.*, 529 B.R. at 526-27, 598; *see also In re Motors Liquidation Co.*, 531 B.R. 354, 359 (Bankr. S.D.N.Y. 2015) ("*May 27 Bankr. Op.*"). (Judgment (Bankr. Docket No. 13177) ¶¶ 4, 9). Judge Gerber did not definitively resolve which complaints or allegations were barred. Instead, he established procedures (the "No Strike" and "No Stay" procedures) — the details of which are irrelevant here — for parties to seek a determination of what impact, if any, the ruling had on their complaints and allegations. (Judgment ¶¶ 8(c), 11(c), 12(c)). Pursuant to those procedures, both the State Plaintiffs and the Ignition Switch Plaintiffs filed pleadings seeking declarations that their claims could proceed. (People State Calif.'s "No Strike" Pleading (Bankr. Docket No. 13210); State Ariz.'s "No Strike Pleading" (Bankr. Docket No. 13211); Ignition Switch Pls.' No Strike Pleading Regard Second Am. Consol. Compl.; & Non-Ignition Switch Pls.' (I) Objection Pleading Regard Second Am. Consol. Compl & (II) GUC Trust Asset Pleading (Bankr. Docket No. 13247) ("MDL Pls.' Bankr. Pleading") 21-28).

The Non-Ignition Switch Plaintiffs, however, are in a slightly different position than the State Plaintiffs and the Ignition Switch Plaintiffs. As noted, although Judge Gerber's April 15th Opinion resolved the motions to enforce relating to claims brought by the Ignition Switch Plaintiffs and the State Plaintiffs, he deferred consideration of New GM's motion with respect to claims brought by the Non-Ignition Switch Plaintiffs. *See April 15th Bankr. Op.*, 529 B.R. at 522, 539; *May 27 Bankr. Op.*, 531 B.R. at 360. Thereafter, in a May 27, 2015 Opinion, Judge

4

Gerber observed that his April 15th Opinion is *stare decisis* — but not *res judicata* — as to those Plaintiffs. *See May 27 Bankr. Op.*, 531 B.R. at 360. In light of that ruling, Judge Gerber created procedures for the Non-Ignition Switch Plaintiffs to object to application of his April 15th decision to them and to demonstrate that their claims are Independent Claims (the "Objection" procedures). (Judgment ¶¶ 13(a), (c)). Further, although Judge Gerber held that the doctrine of equitable mootness precludes the Ignition Switch Plaintiffs from satisfying any of their claims with GUC Trust assets, he provided a procedure for the Non-Ignition Switch Plaintiffs to attempt to show that they *should* be allowed to recover from GUC Trust assets. *See May 27 Bankr. Op.*, 531 B.R. at 360. (Judgment ¶¶ 6, 13(a), (d)). Under that procedure, the Non-Ignition Switch Plaintiffs had seventeen days in which to file a pleading setting forth a good faith basis for why their claims were not equitably moot. (Judgment ¶ 13(d)). Instead of filing such a pleading, however, the Non-Ignition Switch Plaintiffs filed a "Reservation of Rights/ GUC Trust Asset Pleading" (the "GUC Trust Asset Pleading"), asking to reserve the right, at a future date, to file and seek allowance of their claims and to recover on such claims from the GUC Trust assets. (MDL Pls.' Bankr. Pleading 30-31). At the same time, they filed an Objection pleading (together with the State and Ignition Switch Plaintiffs' No Strike pleadings, the "No Strike Pleadings") seeking to establish that their claims are Independent Claims. (MDL Pls.' Bankr. Pleading 28-29 ("Objection Pleading")). All three categories of Plaintiffs now seek to withdraw the reference and have this Court address whether and to what extent their complaints are affected by Judge Gerber's rulings on the motions to enforce. The Court will first address the No Strike Pleadings, and then turn to the GUC Trust Asset Pleading.

5

## DISCUSSION

Although district courts have original jurisdiction over bankruptcy cases, *see* 28 U.S.C. § 1334(a), each district court may refer "any or all" bankruptcy proceedings "to the bankruptcy judges for the district," 28 U.S.C. § 157(a). Section 157(d), however, provides for withdrawal of the reference in certain circumstances. Such withdrawal may be either "permissive" or "mandatory." *See* 28 U.S.C. § 157(d). The mandatory withdrawal provision applies if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* Courts have construed that provision "narrowly," holding that withdrawal is required only in cases "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990); *see also In re Enron Corp.*, 388 B.R. 131, 136 (S.D.N.Y. 2008). Permissive withdrawal is warranted "for cause shown." 28 U.S.C. § 157(d). To determine whether such "cause" exists, courts in the Second Circuit look to several factors, including: (1) whether the proceeding is core or non-core (and relatedly, after *Stern v. Marshall*, 131 S. Ct. 2594 (2011), whether the bankruptcy court has constitutional authority to enter a judgment on the claim); (2) what the most efficient use of judicial resources is; (3) the delay and potential costs to the parties; (4) the need for uniformity of bankruptcy administration; and (5) the prevention of forum shopping. *See In re Lyondell Chemical Co.*, 467 B.R. 712, 719 (S.D.N.Y. 2012); *In re FMI Forwarding Co., Inc.*, No. 00-B-41815 (CB), 2005 WL 147298, at *5 (S.D.N.Y. Jan. 24, 2005).

**A.    The No Strike Pleadings**

First, the MDL Plaintiffs — but not the State Plaintiffs — argue that withdrawal of the reference with respect to their No Strike Pleading is mandatory on the ground that a court

reviewing the claims asserted in the operative MDL Complaint will have to "examine various legal issues specific to the federal and other claims at issue," including claims under the Magnuson-Moss Warranty Act and the Racketeer Influenced and Corrupt Organizations ("RICO") Act. (MDL Pls.' Mem. 15). That argument is meritless. Ruling on the MDL Plaintiffs' No Strike Pleading does not require the Bankruptcy Court to rule on the underlying merits of the MDL Complaint. Instead, it merely requires the Court to examine the allegations in the operative MDL Complaint to determine whether they pertain to conduct by Old GM or New GM. Accordingly, there is no reason why the Bankruptcy Court would have to interpret federal non-bankruptcy law. And, in any event, not every claim that implicates federal law must be removed from the Bankruptcy Court; instead, mandatory withdrawal is appropriate only where the Bankruptcy Court would be required "to engage itself in the intricacies of non-bankruptcy law, as opposed to routine application of that law or the straightforward application of a federal statute to a particular set of facts." *In re Extended Stay, Inc.*, 466 B.R. 188, 196 (S.D.N.Y. 2011) (internal quotation marks omitted). The MDL Plaintiffs' conclusory allegation that their RICO claims are "complex and novel" aside (MDL Pls.' Mem. 15), the MDL Plaintiffs have given the Court no reason to believe that the Bankruptcy Court would in fact be required to give "substantial and material consideration" to federal non-bankruptcy law in resolving the No Strike Pleadings. *In re Ionosphere Clubs, Inc*., 922 F.2d at 995.

There is no more merit to the Non-Ignition Switch Plaintiffs' argument that the reference with regard to the No Strike Pleading (as opposed to just the GUC Trust Asset Pleading) must be withdrawn because it raises "an issue of constitutional law," namely, "whether the application of the Decision and Judgment to the Non-Ignition Switch Plaintiffs in the absence of any factual record relating thereto violates due process." (*See* MDL Pls.' Mem. 15). Not every invocation

7

of constitutional law requires withdrawal of the reference, and the Non-Ignition Switch Plaintiffs have not even attempted to demonstrate that the constitutional issues supposedly raised in their Objection Pleading are particularly novel. *See, e.g.*, *Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 12-MC-115 (JSR), 2013 WL 4077586, at *3 (S.D.N.Y. Aug. 2, 2013); *Murphy v. Cnty. of Chemung*, 410 B.R. 145, 149 (W.D.N.Y. 2009) (declining to withdraw the reference even though the parties' dispute implicated constitutional law). Put simply, there is no reason to believe that determining (at least in the first instance) whether the Non-Ignition Switch Plaintiffs have had an adequate opportunity to be heard is not "well within the ken of the Bankruptcy Court." *Sec. Investor Protection Corp.*, 2013 WL 4077586, at *3.

Next, all Plaintiffs argue that the Court should withdraw the reference pursuant to the permissive withdrawal provision. But the No Strike Pleadings clearly qualify as core proceedings, which is the "first and most important" factor that a district court must consider "in [its] overall evaluation of a request for permissive withdrawal." *In re Global Aviation Holdings Inc.*, 496 B.R. 284, 286-87 (E.D.N.Y. 2013). As the Second Circuit has held, "orders approving the sale of property constitute core proceedings," and an adversary action that "turns on the terms of the Sale Order, [and] amounts to a request that the bankruptcy court enforce that order" is also a core proceeding. *In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 95 (2d Cir. 2006). Here, the No Strike Pleadings amount to a request for a declaration that the Sale Order does not bar Plaintiffs' claims. That is, at bottom, the No Strike Pleadings effectively assert that, applying the Bankruptcy Court's April 15th Opinion, New GM's motions to enforce should be denied with respect to their claims. Given that the motions to enforce were themselves core proceedings, *see In re Motors Liquidation Company*, 522 B.R. 13, 26-27 (Bankr. S.D.N.Y. 2014), it follows that the No Strike Pleadings are also core proceedings. Judge Gerber could have settled the dispute

8

presented in the No Strike Pleadings in his April 15th and May 27th Opinions, or in the resulting Judgment.  The fact that he instead chose to implement alternative procedural mechanisms for doing so does not transform the nature of the dispute from core to non-core.[2]

In arguing otherwise, Plaintiffs rely heavily on *In re Residential Capital, LLC*, 519 B.R. 593, 601-02 (S.D.N.Y. 2014), which held that not every action that involves the "application and enforcement of a bankruptcy court's orders" is core and that the principle that bankruptcy courts "retain the jurisdiction to interpret and enforce their own orders," while true, is also "irrelevant to the question of whether a case is core or non-core." (*See* MDL Pls.' Mem. 18; States' Mem. 13). *In re Residential Capital*, however, involved a dispute over the interpretation of a pre-bankruptcy petition contract, and the interpretation of the bankruptcy court's order was merely incidental to that dispute.  By contrast, the dispute presented here begins and ends with the meaning and application of Judge Gerber's decision on the motions to enforce and the resulting Judgment.  *In re Residential Capital* therefore does not change the Court's conclusion that the No Strike Pleadings represent a core proceeding.

The conclusion that the No Strike Pleadings are core, however, does not end the inquiry.  A district court may withdraw the reference over even a core proceeding if it finds that "withdrawal of [the] reference is essential to preserve a higher interest." *In re Parmalat Finanziaria S.p.A.*, 320 B.R. 46, 50-51 (S.D.N.Y. 2005) (internal quotation marks omitted).  No

---

[2]  To the extent that, since *Stern*, courts ask also whether the bankruptcy court has the constitutional authority to resolve the claim at issue, Plaintiffs do not actually argue that the Bankruptcy Court lacks such authority. (MDL Pls.' Mem. 16-19 (arguing that the No Strike Pleadings are not core proceedings, but not that, even if they are core, the Bankruptcy Court would lack the constitutional authority to resolve them); States' Mem. 12-13 (same)).  Nor could they, as the No Strike Pleadings essentially call on the Bankruptcy Court to interpret and enforce its own orders, which it unquestionably has the constitutional authority to do. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

9

such higher interest is present here. Indeed, none of the other factors that courts in this Circuit consider requires permissive withdrawal. Withdrawal of the reference will not enhance judicial efficiency, for example, because Judge Gerber is already fully versed in Plaintiffs' claims (only some of which are pending before this Court as part of the MDL), the Sale Order, and his ruling on the motions to enforce — indeed, he has already ruled that "[o]n their face, the State Plaintiffs . . . intermix claims involving pre-and post-sale conduct" in their Complaints. *See May 27 Bankr. Op.*, 531 B.R. at 358-59. Further, failing to withdraw the reference is unlikely to cause delay or increase the costs to the parties. Discovery in the MDL proceeds apace, and there is no indication that Judge Gerber will be unable to rule expeditiously.[3] Lastly, there is some indication that Plaintiffs are forum shopping. Judge Gerber largely ruled against them in resolving New GM's motions to enforce, and has already ruled that the State Plaintiffs' Complaints include claims relating to Old GM's conduct. Similarly, although Judge Gerber has not ruled on the viability of the operative MDL Complaint, he has observed that counsel has engaged in "apparently intentional efforts to intermingle permitted and impermissible claims in common complaints." *May 27 Bankr. Op.*, 531 B.R. at 358. Accordingly, the motions to withdraw the reference with respect to the No Strike Pleadings must be and are denied.

### B. The GUC Trust Asset Pleading

That leaves the Non-Ignition Switch Plaintiffs' argument for withdrawal of the reference for the GUC Trust Asset Pleading. As an initial matter, much (if not all) of the Non-Ignition Switch Plaintiffs' briefing focuses on whether the Court would have to withdraw the reference over a pleading that argues that they should be entitled to recover from the GUC Trust assets.

---

[3] Plaintiffs argue that the fact that Judge Gerber is on recall status favors withdrawing the reference. (*See* MDL Pls.' Mem. 21-22; States' Mem. 16). But any implication that Judge Gerber will not be able to rule on the motions before he leaves the bench is entirely speculative.

10

(*See* Omnibus Reply Supp. Mot. Withdraw Reference Non-Ignition Switch Pls.' GUC Trust Asset Pleading (MDL Docket No. 22) ("Pls.' GUC Trust Asset Reply") 3 ("The GUC Trust Asset Pleading raises the issue whether the equitable mootness ruling in the Decision is applicable to the Non-Ignition Switch Plaintiffs.")). But no such pleading has yet been filed, so there is no reason for the Court to rule on it now. *Cf., e.g.*, *In re Chateaugay Corp.*, 104 B.R. 622, 625-26 (S.D.N.Y. 1989) (declining to withdraw the reference over a proof of claim where no objection to that claim had yet been filed). Instead, the GUC Trust Pleading appears to assert that the Non-Ignition Switch Plaintiffs should have the *opportunity* to file such a pleading in the future. (GUC Trust Asset Pleading 31 (arguing that "the rights of Non-Ignition Switch Plaintiffs should be reserved to, *at a future date*, file and seek allowance of late claims, [and] seek a recovery on such claims from the assets of the GUC Trust" (emphasis added)). Only in a footnote do the Non-Ignition Switch Plaintiffs argue, and in conclusory fashion no less, that they have a "good faith basis . . . to access GUC Trust Assets." (GUC Trust Asset Pleading 31 n. 57). Thus, the question currently pending before the Bankruptcy Court appears to be whether the GUC Trust Asset Pleading as filed complies with its Judgment — which required that any pleading seeking to establish a good-faith basis for recovering from the GUC Trust assets be filed within seventeen days (Judgment ¶ 13(d)) — and whether, if it does not, the Non-Ignition Switch Plaintiffs should nonetheless be given an opportunity in the future to make the required good-faith showing. (*See* Mem. Law Wilmington Trust Co., as GUC Trust Administrator & Trustee & Participating Unitholders Opp'n Mot. To Withdraw Reference Respect Non-Ignition Switch Pls.' GUC Trust Asset Pleading (Docket No. 18), Ex. A at 5-7). There is no basis to withdraw the reference with respect to those questions.

11

As an initial matter, mandatory withdrawal is plainly inappropriate. The Non-Ignition Switch Plaintiffs claim that the GUC Trust Pleading raises a due process question — namely, "whether application of the Decision and Judgment to bar the Non-Ignition Switch Plaintiffs from accessing GUC Trust Assets in the absence of any factual record violates their constitutional . . . rights." (Pls.' GUC Trust Asset Reply 6). That issue is not necessarily raised by the GUC Trust Pleading, however. Instead, it will arise only if Judge Gerber finds that the Non-Ignition Switch Plaintiffs either adequately complied with the Judgment or are not barred from making an argument about equitable mootness despite their failure to comply with the Judgment. And even if that issue were presented now, the constitutional question presented is not sufficiently "substantial and material." *In re Ionosphere Clubs, Inc.*, 922 F.2d at 995; *see also In re Chateaugay Corp.*, 193 B.R. 669, 674-75 (S.D.N.Y. 1996) (declining to withdraw the reference where a party argued that the debtor did not comply with due process in providing notice to its creditors of the bar date set by the Bankruptcy Court). Second, there is no basis for permissive withdrawal. As noted, the gravamen of the dispute appears to be whether the Non-Ignition Switch Plaintiffs should be allowed to raise the equitable mootness question at a future date. That question plainly presents a core dispute that the Bankruptcy Court has the constitutional authority to resolve. *Cf. Eriksen v. Residential Capital, LLC*, No. 14-CV-7205 (JMF), 2014 WL 7234615, at *1 (S.D.N.Y. Dec. 18, 2014) (holding that a dispute about whether to allow the movants' claims is a core proceeding and that the bankruptcy court has final adjudicative authority over such a claim). Further, there are no efficiency gains to be made by withdrawing the reference, as Judge Gerber is undoubtedly more familiar with the question of whether the GUC Trust Asset Pleading complies with his Judgment than is this Court.

Finally, even if the GUC Trust Asset Pleading did call for resolution of the equitable mootness question now, there would still be no basis to withdraw the reference. As noted, the Non-Ignition Switch Plaintiffs are seeking to "file and seek allowance of late claims, [and] seek a recovery on such claims from the assets of the GUC Trust." (GUC Trust Asset Pleading 31). Adjudicating whether late claims should be allowed and whether the Non-Ignition Switch Plaintiffs should be allowed to access GUC Trust assets is plainly a core proceeding and falls well within the Bankruptcy Court's constitutional adjudicative authority; indeed, any argument to the contrary would be frivolous. *See, e.g.*, *Eriksen, LLC*, 2014 WL 7234615, at *1; *see also* 28 U.S.C. § 157(b)(2) (defining as a core matter "proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor . . . relationship"). Further, the other factors that courts consider, such as efficiency and prejudice to the parties, counsel against withdrawal of the reference here for the same reasons that they counsel against withdrawal of the reference with respect to the No Strike Pleadings. If anything, the efficiency arguments cut even more against withdrawal, as this Court has no familiarity with the issues raised by the GUC Trust Asset Pleading, as it does not implicate the issues or claims raised in the MDL.[4]

---

[4] The Non-Ignition Switch Plaintiffs argue for the first time in their reply memorandum of law that withdrawal of the reference is called for because, if their claims against Old GM are allowed, those claims are likely to trigger the "accordion feature" of the sale agreement between Old GM and New GM. If that feature is triggered, New GM would have to contribute additional New GM stock to satisfy the Non-Ignition Switch Plaintiffs' claims. (Pls.' GUC Trust Reply 2-3, 7-8). But "issues raised for the first time in a reply brief are generally deemed waived." *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010). And, even if the argument had not been waived, the accordion feature would come into play only if the Non-Ignition Switch Plaintiffs were allowed to recover from the GUC Trust assets. The accordion feature is therefore no reason to withdraw the reference over the antecedent question of whether claims seeking to recover from the GUC Trust assets can proceed.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motions to withdraw the reference are DENIED. The Clerk of Court is directed to close these cases (15-CV-4685 and 15-CV-5056). Further, insofar as this Opinion and Order relates to the MDL and some filings in connection with the instant motions were docketed in the MDL, the Clerk of Court is directed to file this Opinion and Order not only in the above-captioned cases, but also in 14-MD-2543 and 14-MC-2543.

SO ORDERED.

Date: August 27, 2015
New York, New York

JESSE M. FURMAN
United States District Judge