**Hearing Date and Time: October 14, 2015 at 9:45 a.m. (ET)**

William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
T: 212-813-8800
E: wweintraub@goodwinprocter.com
E: gfox@goodwinprocter.com

*Counsel for Post-Closing Ignition*
*Switch Accident Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                  :

In re:                                               :                Chapter 11

MOTORS LIQUIDATION COMPANY, et al.,        :                Case No.: 09-50026 (REG)

         f/k/a General Motors Corp., et al.,              :

                                                     :

                                       Debtors.      :                (Jointly Administered)
------------------------------------------------------------X

# POST-CLOSING IGNITION SWITCH ACCIDENT PLAINTIFFS' REPLY WITH RESPECT TO PUNITIVE DAMAGES ISSUE

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

REPLY .......................................................................................................................................... 2

I.    NEW GM CANNOT ESCAPE THE PLAIN LANGUAGE OF THE
SALE AGREEMENT, WHICH PROVIDES FOR THE ASSUMPTION
OF ANY AND ALL LIABILITIES FOR POST-CLOSING ACCIDENTS
WITH NO CARVEOUT FOR PUNITIVE DAMAGES ...................................................... 2

II.    THIS COURT NEVER ABSOLVED NEW GM FROM LIABILITY
FOR PUNITIVE DAMAGES FOR ITS OWN REPREHENSIBLE
POST-CLOSING CONDUCT ............................................................................................. 6

A.    New GM Improperly Seeks to Broaden the "Retained Liabilities" to
Include Independent Claims for Punitive Damages ............................................... 6

B.    The Merits of Whether New GM Is Liable for Punitive Damages as
Independent Claims Under Statutory or Common Law Is a Matter for the
Trial Courts and Not Part of This Court's Gatekeeping Function ......................... 8

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayres v. General Motors Corp.*,
   234 F.3d 514 (11th Cir. 2000) ...................................................................................9

*Ezagui v. Dow Chemical*,
   598 F.2d 727 (2d Cir.1979)......................................................................................10

*Handy v. General Motors Corp.*,
   518 F.2d 786 (9th Cir. 1975) .....................................................................................9

*Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
   517 F.3d 52, 68 (2d Cir. 2008)...................................................................................8

*Loewy v. Stuart Drug & Surgical Supply, Inc.*,
   1999 WL 216656, *2 (S.D.N.Y. Apr. 14, 1999).......................................................10

*Lowe v. General Motors Corp.*,
   624 F.2d 1373 (5th Cir. 1980) ...................................................................................9

*In re Motors Liquidation Co.*,
   529 B.R. 510 (Bankr. S.D.N.Y. 2015).......................................................................8

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009)...................................................................................................8

**Other Authorities**

*U.S. v. $900,000,000 in U.S. Currency*, Case No. 15-cv-07342 (S.D.N.Y.)
   Verified Complaint filed on September 16, 2015......................................................1

*In re TQ14-001 NHTSA Recall No. 14V-047*,
   Consent Order dated May 16, 2014 ...........................................................................1

U.S. Department of Transportation Announces Record Fines, Unprecedented
   Oversight Requirements in GM Investigation (May 16, 2014), *available at*
   http://www.nhtsa.gov/About+NHTSA/Press+Releases/2014/DOT-
   Announces-Record-Fines,-Unprecedented-Oversight-Requirements-in-GM-
   Investigation..............................................................................................................1

**Preliminary Statement**[1]

New GM in its opening brief on the punitive damages issue argues that it should be completely exonerated from punitive damage claims arising from the Ignition Switch Defect.[2] The timing of the New GM Opening Brief is ironic in that it was filed just days before the announcement that New GM reached an agreement with the United States Department of Justice (the "DOJ") under which New GM will pay $900 million and enter into a deferred prosecution agreement to settle the DOJ's criminal investigation into New GM's and its employees' actions with respect to the Ignition Switch Defect.[3] This is on top of *New GM's* May 2014 admission that it violated federal safety laws in connection with the delayed recall of Old GM-manufactured vehicles containing the Ignition Switch Defect, which resulted in the maximum penalty (and largest ever paid) for Safety Act violations.[4]

The New GM Opening Brief not only ignores the fact that New GM assumed both compensatory and punitive damages with respect to the Post-Closing Ignition Switch Accident Plaintiffs' claims, it also ignores the reality that New GM knowingly allowed millions of people to drive vehicles that it knew contained a deadly safety defect. This is not hyperbole; New GM has admitted in its Deferred Prosecution Agreement with the DOJ that it "failed to disclose to its U.S. regulator and the public a potentially lethal safety defect that caused airbag non-deployment in certain GM model cars" and that it "affirmatively misled consumers about the safety of GM

---

[1] Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Post-Closing Ignition Switch Accident Plaintiffs' Memorandum of Law With Respect to Punitive Damages Issue [ECF No. 13434] (the "Plaintiffs' Opening Brief").
[2] *See* Opening Brief By General Motors LLC With Respect to Whether Plaintiffs May Seek Punitive Damages From General Motors LLC Based on the Conduct of General Motors Corporation [ECF No. 13437] (the "New GM Opening Brief").
[3] *See U.S. v. $900,000,000 in U.S. Currency*, Case No. 15-cv-07342 (S.D.N.Y.), Exhibit A to Verified Complaint filed on September 16, 2015 attached as Exhibit A (the "Deferred Prosecution Agreement").
[4] *See In re TQ14-001 NHTSA Recall No. 14V-047*, Consent Order dated May 16, 2014 attached as Exhibit B. *See also* U.S. Department of Transportation Announces Record Fines, Unprecedented Oversight Requirements in GM Investigation (May 16, 2014), *available at* http://www.nhtsa.gov/About+NHTSA/Press+Releases/2014/DOT-Announces-Record-Fines,-Unprecedented-Oversight-Requirements-in-GM-Investigation.

cars afflicted by the defect." Deferred Prosecution Agreement at ¶ 2. The Post-Closing Ignition Switch Accident Plaintiffs suffered catastrophic injuries and fatalities in post-closing accidents that New GM should have prevented by conducting a timely recall. It should be up to a jury and the trial courts overseeing those actions to decide whether punitive damages are appropriate in these circumstances.

<b><u>Reply</u></b>

**I.    New GM Cannot Escape the Plain Language of the Sale Agreement,
Which Provides for the Assumption of Any and All Liabilities
for Post-Closing Accidents With No Carveout for Punitive Damages**

New GM's Opening Brief relies on tautological reasoning to argue that punitive damages are not part of the Assumed Liability for "Product Liabilities" provided for in section 2.3(a)(ix) of the Sale Agreement. In essence, New GM argues that punitive damages are not Assumed Liabilities because those liabilities were not assumed. Based upon that faulty circular premise, New GM contends throughout its brief that it cannot be liable for the conduct of Old GM. Of course it can. Indeed, New GM contracted to be liable for the conduct of Old GM in section 2.3(a)(ix) of the Sale Agreement.[5]

Thus, the question is not whether New GM can be held liable for Old GM conduct, but rather, the question is what Old GM conduct and resulting liabilities did New GM assume? Merely assuming the answer does not answer the question. The answer is in the language of the Sale Agreement. As demonstrated in the Plaintiffs' Opening Brief, the operative language of section 2.3(a)(ix) and the defined terms used therein provides for complete assumption by New GM of any and all Old GM liability for "Products Liabilities" <u>without any carveout for punitive damages</u>. Try as it might, New GM cannot change the fact that the plain language of the Sale

---

[5] *See* GM Opening Brief at 11 n.13 ("New GM does not dispute that Old GM conduct is an appropriate basis for compensatory damages for a Product Liability Claim assumed by New GM.").

2

Agreement does not say that only compensatory damages were assumed for post-Sale accidents. Instead, section 2.3(a)(ix) provides for complete assumption of any and all liabilities for post-closing accidents with no distinction between punitive and compensatory damages.

In an effort to escape the plain contractual language and conjure a carveout for punitive damages that does not exist, New GM relies on (i) a defined term – "Damages" – not used in the operative section but used elsewhere in the contract, (ii) self-serving proclamations of an "overall contractual intent" to assume only compensatory damages and to not assume any liabilities that it did not consider "commercially necessary," and (iii) misconstruction of the words "directly" and "caused by." *See* New GM Opening Brief at 2, 5-8, 17-18. New GM's creative efforts cannot change the clear and unambiguous language of section 2.3(a)(ix), which does not use the defined term "Damages" or otherwise exclude punitive damages.

In the face of the unambiguous contractual language, New GM's subjective intent is irrelevant. If New GM wanted punitive damages carved out of the assumed Product Liabilities, it could easily have done so by:

- ➢ Drafting section 2.3(a)(ix) to provide that New GM was assuming "all <u>Damages</u> to third parties," rather than "all <u>Liabilities</u> to third parties";
- ➢ Including punitive damages for post-closing accidents in the explicit parenthetical carveout that already existed for asbestos-related injuries in section 2.3(a)(ix); or
- ➢ Explicitly including punitive damages as a "Retained Liability" in section 2.3(b) as it did for sixteen other categories of liabilities that it was leaving behind at Old GM.

New GM did none of these things and cannot now shield itself from liabilities it assumed based on a nebulous "overall contractual intent" or what it now conveniently believes would be "commercially necessary." Consideration of parol evidence here would be contrary to basic

3

contract law as well as the plain language of the contract, and is also barred by the merger clause of section 9.17 of the Sale Agreement.

In addition, such parol evidence would be highly subjective and dangerously vulnerable to self-serving revisionism. For example, New GM alleges that certain Sale objections did not assert that New GM needed to assume punitive damages. *See* New GM Opening Brief at 6 n.6. This is an irrelevant data point. There is no mention of punitive damages in the language that New GM quotes in footnote 6 of its brief and no reason to infer that the assumption or retention of punitive damages was at issue when the cited pleadings were filed. Unlike what is now public knowledge, no party knew that Old GM had concealed the Ignition Switch Defect for years or that New GM would continue to conceal the Ignition Switch Defect for years to come. Indeed, given the plain language of the pre-amendment version of section 2.3(a)(ix) – which also did not carve out punitive damages or use the defined term "Damages" – objectors desiring that punitive damages be included as an Assumed Liability would have had no reason to object to the proposed language of that section. Any suggestion that the language of these objections confirms the existence of a disclaimer by New GM of the obligation to pay punitive damages as part of the Assumed Liabilities is not supported by the plain language of the Sale Agreement.

Moreover, as explained in section I.C.1 of the Plaintiffs' Opening Brief, New GM's convoluted interpretation of the import of the words "directly" and "caused by" do not create ambiguity. *See* New GM Opening Brief at 2, 18. In addition to the goal of deterrence, punitive damages are meant to provide plaintiffs with retribution for a defendants' reprehensible conduct towards them. There is a direct linkage between Old GM's reprehensible conduct (compounded by New GM's own independent reprehensible conduct for which plaintiffs have Independent Claims) and the needless injuries and deaths suffered by the Post-Sale Ignition Switch Accident

4

Plaintiffs. The Post-Closing Ignition Switch Accident Plaintiffs' claims against New GM (including their retributive claims for punitive damages) were causally connected to – *i.e.*, <u>caused by</u> – and arise <u>directly</u> from the accidents they suffered in post-closing accidents in dangerously defective vehicles. These damage claims are "Assumed Liabilities" pursuant to the plain language of section 2.3(a)(ix).

New GM also attempts to rely on this Court's prior rulings concerning pre-Sale claims to support its contention that it did not assume liability for punitive damages for <u>post-Sale</u> accidents. *See* New GM Opening Brief at 10, 14. But the successor liability claims against New GM the Court addressed in the Decision, the Judgment, and *Bledsoe* all related to <u>pre-Sale claims</u> and had nothing to do with "Assumed Liabilities."[6] Those rulings also made clear that New GM was not absolved from liability (compensatory or punitive) for "Independent Claims," which the Court has defined as "claims or causes of action asserted by Ignition Switch Plaintiffs against New GM (whether or not involving Old GM vehicles or parts) that are based solely on New GM's own, independent, post-Closing acts or conduct." Judgment at ¶¶ 4, 9.

New GM's references to the Sale Order are similarly unavailing when it comes to <u>post-Sale</u> accident cases. *See* New GM Opening Brief at 8-9, 22. The quoted language from the Sale Order merely bars the assertion against New GM of liabilities of Old GM that are not Assumed Liabilities. The Sale Order does not define Assumed Liabilities, nor does it mention the exclusion of punitive damages. It is circular for New GM to contend that punitive damages for post-Sale accidents are barred by the Sale Order. This is because New GM's contention is based

---

[6] The same goes for New GM's reference to this Court's prior statements with respect to claims of the "Apartheid Claimants." *See* New GM Opening Brief at 19 n.17. The Apartheid Claimants had <u>pre-bankruptcy</u> apartheid-related lawsuits pending against Old GM and the Court rejected these claimants' motion for class certification and disallowed their claims. Bench Decision on Apartheid Claimants' Motion for Class Certification, and on Debtors Objection to Apartheid Claimants' Underlying Claims, issued on January 28, 2011 [ECF No. 8926]. That contested matter did not concern New GM at all, let alone "Assumed Liabilities" or "Independent Claims."

5

upon the incorrect supposition that punitive damages for Product Liabilities are not an Assumed Liability. New GM's argument also ignores the second and third paths to punitive damages as Independent Claims. In sum, punitive damages for post-Sale accidents are not pre-Sale successor liability claims in sheep's clothing; they are Assumed Liabilities and Independent Claims.

### II. This Court Never Absolved New GM From Liability For Punitive Damages for its Own Reprehensible Post-Closing Conduct

The New GM Opening Brief makes several arguments aimed at gaining complete absolution from punitive damages for its own post-closing conduct relating to its failure to recall vehicles with the Ignition Switch Defect. Essentially, New GM's argument is that because the faulty ignitions switches were installed by Old GM in vehicles sold by Old GM, New GM has absolutely no liability for punitive damages arising from the defect. *See* New GM Opening Brief at 22-23. These arguments completely ignore the facts that New GM knew about the Ignition Switch Defect and its deadly consequences as of the moment the Sale closed and, nevertheless, it continued to allow millions of people to remain in danger on a daily basis. Many of those people were injured or killed in preventable crashes following the Closing Date, including the Post-Sale Ignition Switch Accident Plaintiffs. New GM's liability for punitive damages for its own failure to recall vehicles with known safety defects is an Independent Claim. Nothing in the Sale Agreement, the Sale Order, the Decision, or otherwise provides New GM with an escape hatch from punitive damages for its own post-Sale conduct.

#### A. *New GM Improperly Seeks to Broaden the "Retained Liabilities" to Include Independent Claims for Punitive Damages*

New GM mischaracterizes the structure of the Sale Agreement and suggests that Independent Claims based on New GM's post-closing misconduct are a "Retained Liability." *See* New GM Opening Brief at 1, 3. This makes no sense.

6

First, the language of section 2.3(b) of the Sale Agreement makes it clear that Retained Liabilities are only those of the Seller. Specifically, the preamble to section 2.3(b) states in pertinent part that the "Purchaser shall not assume, or become liable to pay, perform or discharge, any Liability <u>of any Seller</u>…." Sale Agreement at 2.3(b) (emphasis added).[7] Thus, nothing in the "Retained Liabilities" section of the Sale Agreement remotely concerns Independent Claims for New GM's post-Sale conduct.

Second, it is illogical for New GM to argue that Independent Claims (or punitive damages relating thereto) are "Retained Liabilities." That is tantamount to arguing that Old GM <u>assumed</u> liability for post-Sale claims against New GM that are based solely on New GM's post-Sale conduct. How can liabilities that had not yet arisen at the time of the Sale be viewed as liabilities that were left behind with Old GM? Were creditors able to file claims against Old GM for New GM's post-Sale misconduct? These are questions that answer themselves.

By arguing that Independent Claims associated with the Ignition Switch Defect are Retained Liabilities, New GM is conflating conduct and knowledge. New GM acquired or developed knowledge about the Ignition Switch Defect on and after the Closing Date. What New GM did (or did not do) with that knowledge is its own conduct. When the Post-Sale Ignition Switch Accident Plaintiffs seek to hold New GM liable for its own post-closing acts, the fact that those acts can be judged in light of the knowledge that New GM had at the time it acted (or failed to act) does not equate to holding New GM liable for Old GM's conduct, even if Old GM's conduct is what created the knowledge.

---

[7] This preamble means that New GM's reliance on section 2.3(b)(ix) of the Sale Agreement is misplaced. *See* New GM Opening Brief at 22. You never get to section 2.3(b)(xi) because the preamble to all of section 2.3(b) makes it clear that what follows in the subparts (i) through (xvi) are matters <u>other than</u> Assumed Liabilities <u>and</u> are limited to liabilities <u>of the Seller</u>.

7

New GM also argues that only plaintiffs who have demonstrated a due process violation may assert Independent Claims. *See* New GM Opening Brief at 10. This argument is incorrect. The supposed absence of a proven due process violation does not permit New GM to be exonerated from liability for its own conduct.[8] In any event, any such prospective third party release is a subject matter jurisdiction issue. *See Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 68 (2d Cir. 2008) (bankruptcy court lacked subject matter jurisdiction to enjoin non-debtor's claims against non-debtor predicated on defendant's independent misconduct unrelated to the *res* of the bankruptcy estate), *rev'd on other grounds*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009). As the Court has already held, the Sale Order does not enjoin Independent Claims, nor could it. *In re Motors Liquidation Co.*, 529 B.R. 510, 598 (Bankr. S.D.N.Y. 2015). Although New GM wishes otherwise, it did not purchase Old GM's assets "free and clear" of its own <u>future</u> liability for post-closing actions and inactions.

**B.    *The Merits of Whether New GM Is Liable for Punitive Damages as Independent Claims Under Statutory or Common Law Is A Matter for the Trial Courts and Not Part of This Court's Gatekeeping Function***

New GM also conflates the Post-Closing Ignition Switch Accident Plaintiffs' ability to assert Independent Claims with questions of whether New GM violated any duties or obligations owed to such plaintiffs. The point, however, is that if New GM disputes liability for its own post-Sale conduct, that is a defense that must be asserted in the applicable trial courts. Assessment of the merits of Independent Claims goes beyond the gatekeeping function of this Court.

While it is a matter for the MDL Court or other trial courts that will be assessing the merits of Independent Claims, contrary to the assertions in the New GM Opening Brief, the Post-

---

[8] As set forth in section III of the Plaintiffs' Opening Brief, because the Post-Sale Ignition Switch Accident Plaintiffs had not yet had their accidents at the time of Old GM's bankruptcy (indeed several of them had not yet purchased their defective vehicles), these plaintiffs were denied due process in connection with the Sale.

8

Closing Ignition Switch Accident Plaintiffs are not seeking to assert a private right of action under the Safety Act. Because there is no controlling Second Circuit law on the Safety Act private right question, New GM points to out-of-circuit cases that hold that the Safety Act does not confer a private cause of action to enforce that statute's recall or notice obligations. *See* New GM Opening Brief at 4 n.4. However, the Post-Closing Ignition Switch Accident Plaintiffs are <u>not</u> seeking to force New GM to comply with the Safety Act (as in the *Handy* case) or to use Safety Act violations as the predicate for a RICO claim (as in the *Ayres* case). *See Handy v. General Motors Corp.*, 518 F.2d 786, 786 (9th Cir. 1975) (plaintiffs sought injunctions to force General Motors to comply with notice and repair obligations under the Safety Act); *Ayres v. General Motors Corp.*, 234 F.3d 514, 520 (11th Cir. 2000) (plaintiffs sought to use alleged Safety Act violations to satisfy federal mail and wire fraud predicates for racketeering under state RICO statute). Rather, the Post-Closing Ignition Switch Accident Plaintiffs contend that New GM's failures under the Safety Act are, at a minimum, probative data points for New GM's own negligence and reprehensible conduct.

In fact, the *Ayres* case on which New GM relies made clear that, although in the Eleventh Circuit the Safety Act does not create a private right of action, Safety Act violations <u>can</u> be used as evidence of negligence under state law. *See Ayres*, 234 F.3d at 524 n.19 ("[t]he mere fact that the law which evidences negligence is Federal while the negligence action itself is brought under State common law does not mean that the state law claim metamorphoses into a private right of action under Federal regulatory law"; "the lack of a private right of action under the Safety Act does not preclude [the plaintiffs from] acting under a state law cause of action."). *See also Lowe v. General Motors Corp.*, 624 F.2d 1373, 1379 (5th Cir. 1980) (defendant's violation of Safety Act was properly presented as evidence to jury to support verdict under Alabama Wrongful

9

Death statute and punitive damages).  This is true in the Second Circuit as well.  *See Loewy v. Stuart Drug & Surgical Supply, Inc.*, 1999 WL 216656, *2 (S.D.N.Y. Apr. 14, 1999) (explaining that under Second Circuit law, evidence of a defendants' violation of a federal law for which the plaintiff does not have a private right of action to enforce can be used in support of a negligence claim) (citing *Ezagui v. Dow Chemical*, 598 F.2d 727 (2d Cir.1979)).  Thus, contrary to New GM's assertions, New GM's admitted violations of the Safety Act are relevant to whether New GM is liable for compensatory and punitive damages under applicable state law.

New GM boldly contends in the context of this gatekeeping proceeding that Independent Claims cannot be asserted against it because it does not have any duties to Post-Closing Ignition Switch Accident Plaintiffs and other owners of Old GM vehicles.  New GM Opening Brief at 4, 23.  In doing so, New GM is attempting to circumvent the judicial process and self-proclaim what it can and cannot be liable for, without regard to what a court or jury might determine after a trial.  It is up to a trial court to determine if New GM has liability to the Post-Sale Ignition Switch Accident Plaintiffs for its own (admittedly illegal) independent post-closing acts and the damages that should be awarded in the event New GM is liable.

## CONCLUSION

For the reasons set forth above and in the Plaintiffs' Opening Brief, the Post-Closing Ignition Switch Accident Plaintiffs respectfully request entry of an order (i) deeming their requests for punitive damages against New GM permissible under this Court's Sale Order, Decision, and Judgment and (ii) permitting the Post-Closing Ignition Switch Accident Plaintiffs to pursue such punitive damages against New GM in the MDL or other trial courts with jurisdiction over their respective lawsuits.

Dated: September 22, 2015

Respectfully submitted,

/s/ *William P. Weintraub*
William P. Weintraub
Gregory W. Fox
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
wweintraub@goodwinprocter.com
gfox@goodwinprocter.com

*Counsel for Post-Closing Ignition Switch Accident Plaintiffs*