**Hearing Date: October 14, 2015, at 9:45 a.m. (Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
Arthur Steinberg
Scott Davidson

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)

*Attorneys for General Motors LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
| In re | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
---------------------------------------------------------------x

**REPLY BRIEF BY GENERAL MOTORS LLC WITH
RESPECT TO WHETHER PLAINTIFFS MAY SEEK PUNITIVE
DAMAGES FROM GENERAL MOTORS LLC BASED ON
<u>THE CONDUCT OF GENERAL MOTORS CORPORATION</u>**

**TABLE OF CONTENTS**

**Page**

**ARGUMENT** ...........................................................................................................................1

    **A. Plaintiffs Have Not Shown That Section 2.3(a)(ix) Unambiguously Provides For Payment of Punitive Damages Relating to Post-Sale Accidents/Incidents** ............1

    **B. The Qualitative Differences Between Compensatory and Punitive Damages Demonstrate that Section 2.3(a)(ix) is Limited to Compensatory Damages** ..................4

    **C. Section 2.3(a)(ix) Must Be Interpreted in the Context Of the Entire Sale Agreement, and the Sale Order** ..........................................................6

    **D. Extrinsic Evidence Is Important Context For Construing Section 2.3(a)(ix)** ...............7

    **E. New GM Cannot Be Assessed Punitive Damages for Retained Liabilities** .................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Banxcorp v. Costco Wholesale Corp.*,
   723 F.Supp.2d 596 (S.D.N.Y. 2010) .................................................................................. 5

*Barbagallo v. Marcum LLP*,
   820 F.Supp.2d 429 (E.D.N.Y. 2011) ................................................................................... 5

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996) ............................................................................................................ 4

*Engquist v Oregon Dep't of Agriculture*,
   478 F.3d 985, 1002 (9th Cir. 2007) ................................................................................. 4, 5

*Fabiano v. Philip Morris Inc.*,
   54 A.D.3d 146,150-51, 862 N.Y.S.2d 487 (2008) .............................................................. 5

*Hillside Metro Assoc., LLC v. JP Morgan Chase Bank*,
   No. 10–cv–1772, 2011 WL 5008368 (E.D.N.Y. Oct, 20, 2011) ........................................ 6

*Holland v. FCA US LLC*,
   1015 U.S. Dist. LEXIS 117643 (N.D. Ohio Sept. 3, 2015) .............................................. 10

*Home Ins. Co. v. Am. Home Prods. Corp.*,
   75 N.Y.2d 196 (N.Y. 1990) ............................................................................................ 4, 9

*Metz v. U.S. Life Ins. Co.*,
   No. 09–cv–10250, 2010 WL 3703810 (S.D.N.Y. Sept 21, 2010) ...................................... 6

*Soto v. State Farm Ins. Co.*,
   83 N.Y.2d 718 (N.Y. 1994) ................................................................................................ 9

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................................................................ 4

*Terwilliger v. Terwilliger*,
   206 F.3d 240 (2d Cir. 2000) ............................................................................................... 6

**Statutes**

N.Y. Pattern Jury Instr., Civil § 2:278 ..................................................................................... 5

DMSLIBRARY01\21600\162081\27080310.v2-9/22/15

General Motors LLC ("**New GM**") submits this reply brief to show that the Sale Order[1] bars plaintiffs from asserting punitive damage claims against it based on the conduct of Motors Liquidation Co. (f/k/a General Motors Corporation) ("**Old GM**").[2]

## ARGUMENT

### A. Plaintiffs Have Not Shown That Section 2.3(a)(ix) Unambiguously Provides For Payment of Punitive Damages Relating to Post-Sale Accidents/Incidents

Plaintiffs assert that Section 2.3(a)(ix) of the Sale Agreement, addressing Assumed Liabilities for post-363 Sale accidents/incidents, is unambiguous because it does not specifically exclude the term "punitive damages." In fact, the opposite is true; Section 2.3(a)(ix) is *ambiguous*, in the context of plaintiffs' argument concerning damages, precisely because there is no specific mention of punitive damages. A negative implication argument (the omission of a specific term such as punitive damages) rarely demonstrates unambiguity. It certainly does not show unambiguity here since the generalized term—damages—is not even used in Section 2.3(a)(ix). In that circumstance, the Court is required to review the entirety of the Sale Agreement to confirm that plaintiffs' proposed interpretation is consistent with the overall Agreement and the parties' intent. Extrinsic evidence concerning the reason why the provision was specifically amended also is relevant in these circumstances, as are the inherent differences (including treatment in bankruptcy and public policy objectives) between compensatory damages and punitive damages.

---

[1] Terms used herein and not otherwise defined shall have the meanings ascribed to them in New GM's Opening Brief on the Punitive Damages Issue, dated September 13, 2015 [Dkt. No. 13437].

[2] This Reply Brief is filed in response to (i) the *Post-Closing Ignition Switch Accident Plaintiffs' Memorandum of Law with Respect to Punitive Damages Issues*, dated September 13, 2015 [Dkt. No. 13434] ("**Post Closing Accident Plaintiffs' Brief**"), (ii) the *Joinder of the Ignition Switch Plaintiffs and Non-Ignition Switch Plaintiffs to the Post-Closing Ignition Switch Accident Plaintiffs' Memorandum of Law with Respect to Punitive Damages Issues*, dated September 13, 2015 [Dkt. No. 13436] ("**Plaintiffs' Joinder**"), and (iii) the *Brief of Plaintiffs Regarding Punitive Damages Issue*, dated September 13, 2015 (filed by the *Moore* Plaintiffs).

1

Plaintiffs alternatively argue that the Sale Agreement is unambiguous because the parties knew how to draft an exclusion for punitive damages, as they did in excluding punitive damages from the definition of "Damages" in Section 1.1 of the Sale Agreement. If anything, however, the express exclusion of punitive damages from Section 1.1 further demonstrates the parties' generalized contractual intent to exclude punitive damages caused by Old GM's conduct from the liabilities assumed by New GM. The text of the Sale Agreement, therefore, supports New GM because, if the parties had intended for New GM to assume punitive damages in connection with Assumed Liabilities, they would have expressly said so.

Indeed, in making their counter-textual argument, Plaintiffs ignore the sequence of the drafting of the respective Sale Agreement provisions. The "Damages" definition, which was intended to and did exclude punitive damages, never changed from the original version filed with the Sale Motion. Section 2.3(a)(ix) of the Sale Agreement, however, was modified just prior to the Sale Hearing for the narrow purpose of specifically addressing objections that owners of Old GM vehicles, who may become involved in post-363 Sale accidents, would not be compensated for damages arising from such accidents. Significantly, no interested party asked New GM to assume punitive damages relating to post-363 Sale accidents, and Section 2.3(a)(ix) was amended specifically to resolve the filed objections.

Plaintiffs next argue that unambiguity is shown by the defined term "Liabilities." But that term does not use the word "damages," much less "punitive damages." Even more important, the term "Liabilities" is not used as a standalone term in Section 2.3(a)(ix); it is one part of the definition "Product Liabilities." The original version of the Sale Agreement filed with the Sale Motion defined "Product Liabilities" in Section 2.3(a)(ix) as follows:

> All Liabilities (including Liabilities for negligence, strict liability, design defect, manufacturing defect, failure to warn or breach of express or implied warranties

2

of merchantability or fitness for a particular purpose) to third parties for death, personal injury, other injury to Persons or damage to property.[3]

In the version of the Sale Agreement approved by the Court, the definition of "Product Liabilities" in Section 2.3(a)(ix) changed as follows:

> All Liabilities to third parties for death, personal injury, or other injury to Persons or damage to property *caused by motor vehicles designed* for operation on public roadways or by the component parts of such motor vehicles and, in each case, manufactured, sold or delivered by Sellers ("Product Liabilities"). . . (emphasis supplied)

For purpose of the punitive damages issue, the key difference between the two definitions of "Product Liability" is that the final version added the clause "caused by motor vehicles." Plaintiffs do not analyze this clause, which was intended to limit the scope of product liability claims to those where the vehicle itself was the direct cause of the alleged injury—*i.e.*, primarily as in the case of a motor vehicle accident—rather than more broadly to claims arising from the general conduct of Old GM, such as purportedly false misrepresentations giving rise to a fraud claim. Unambiguity cannot be established by an incomplete analysis which ignores a newly added clause.

The remainder of the revised Section 2.3(a)(ix), after defining "Product Liabilities," also is critically important to the scope of Product Liabilities assumed by New GM. This additional language limits Product Liabilities to those "which arise directly out of death, personal injury or other injury to Persons or damage to property caused by accidents or incidents first occurring on or after the Closing Date and arising from such motor vehicles' operation or performance . . . ." The word *directly* and the phrase *caused by accidents or incidents* (both of which are express limitations) were added after the newly defined term "Product Liabilities;" these mean that the injury from the Product Liability must be *directly* caused by the motor vehicle and *the*

---

3   In the original version, assumed Product Liabilities only related to vehicles sold by New GM.

3

*accident/incident.* Then, another clause of limitation, *arise from such motor vehicles' operation or performance* was also added. Read together, the section means that an assumed Product Liability Claim is limited to the circumstance when an injury/damage to property is ***(a) directly caused by the motor vehicle, (b) directly caused by the accident/incident, and (c) directly arises from such motor vehicle's performance/operation***. As shown in the next section, that is the essence of compensatory damages—not punitive damages.

**B.     The Qualitative Differences Between Compensatory and Punitive Damages Demonstrate that Section 2.3(a)(ix) is Limited to Compensatory Damages**

Compensatory damages are "intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003) (citing Restatement (Second) of Torts § 903 (1979)). By contrast, punitive damages are imposed to serve two policy objectives: punishing unlawful conduct and deterring its repetition. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). A punitive damage award does not serve any compensatory goals. *Engquist v Oregon Dep't of Agriculture*, 478 F.3d 985, 1002, 1004 (9th Cir. 2007); *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 200 (1990) (punitive damages are a windfall for the plaintiff who has been made whole by compensatory damages).[4] As the Supreme Court has repeatedly cautioned: "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm,* 538 U.S. at 418.

Compensatory damages are a property right subject to due process protections. Punitive damages are not. *See Engquist*, 478 F.3d at 1002 (because punitive damages are a discretionary,

---

[4]  The Sale Agreement (§ 9.12) provides that New York law governs if the Bankruptcy Code is not applicable.

moral judgment, a plaintiff's interest in punitive damages is too speculative to constitute property under the Takings Clause). As the Ninth Circuit put it: "punitive damages do not follow compensatory damages, as interest follows principal." *Id*. at 1003. Punitive damages are "never awarded as of right, no matter how egregious the defendant's conduct," in contrast to compensatory damages, which "are mandatory, once liability is found . . . ." *Id.* (citing *Smith v. Wade*, 461 U.S. 30, 52 (1983)).

Plaintiffs misconstrue the word "directly" in Section 2.3(a)(ix) of the Sale Agreement by claiming punitive damages arise directly from the injury. While it is true that if there are no compensatory damages, then there can be no punitive damages, that is as far as plaintiffs' argument can be extended.[5] Punitive damages "must be shown to be emblematic of much more than individually sustained wrong. It must be shown to reflect pervasive and grave misconduct affecting the public generally." *Fabiano v. Philip Morris Inc.*, 54 A.D.3d 146,150-51, 862 N.Y.S.2d 487, 490-91 (2008); *see also Banxcorp v. Costco Wholesale Corp.*, 723 F.Supp.2d 596, 621 (S.D.N.Y. 2010) (citing *Fabiano*); *Barbagallo v. Marcum LLP*, 820 F.Supp.2d 429, 448-49 (E.D.N.Y. 2011) (same). In other words, punitive damages are not directly tied to the injury caused by a motor vehicle accident. They address a different policy objective (punishment and deterrence) and, thus, their focus is on other issues *beyond the specific vehicle accident*.[6] Because, in contrast, Section 2.3(a)(ix) of the Sale Agreement is expressly limited to direct injuries caused by the particular operation of the motor vehicle specific to the accident or incident alleged, punitive damages cannot be included within this narrow definition.

---

[5] Indeed, that is precisely New GM's point regarding punitive damage demands for what plaintiffs assert are Independent Claims but, in reality, are Retained Liabilities.

[6] New York's Pattern Jury Instructions illustrate this distinction. Juries are instructed that they may consider the wrongdoer's similar conduct in other situations in order to determine the extent to which defendant's conduct was reprehensible. N.Y. Pattern Jury Instr., Civil § 2:278. Juries may also consider the wrongdoer's financial condition in determining the amount of punitive damages. *Id*.

5

**C.    Section 2.3(a)(ix) Must Be Interpreted in the Context
Of the Entire Sale Agreement, and the Sale Order**

As the Second Circuit cautioned in *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000), "the entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency." *See also Hillside Metro Assoc., LLC v. JP Morgan Chase Bank,* No. 10–cv–1772, 2011 WL 5008368, at *9 (E.D.N.Y. Oct, 20, 2011); *Metz v. U.S. Life Ins. Co.,* No. 09–cv–10250, 2010 WL 3703810, at *3 (S.D.N.Y. Sept 21, 2010). Section 2.3(a)(ix) must therefore be given a meaning consistent with the other provisions of the Sale Agreement. In that regard, Section 9.19 of the Sale Agreement is particularly relevant. It provides:

> Except where expressly prohibited under applicable Law or otherwise expressly ordered by the Bankruptcy Court, upon the Closing, neither Purchaser nor any of its Affiliates or stockholders shall be deemed to (a) be the successor of Sellers; (b) have, de facto, or otherwise, merged with or into Sellers; (c) be a mere continuation or substantial continuation of Sellers or the enterprise(s) of Sellers; or (d) ***other than as set forth in this Agreement, be liable for any acts or omission of Seller in the conduct of Sellers' business or arising under or related to the Purchased Assets***. Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, neither Purchaser nor any of its Affiliates or stockholders ***shall be liable for any Claims against Sellers*** or any of their predecessors or Affiliates, and neither Purchaser nor any of its Affiliates or stockholders shall have any successor, transferee or vicarious Liability of any kind or character ***whether known or unknown*** at the Closing, whether now existing or ***hereafter arising***, whether fixed or contingent, ***with respect to Sellers' business or any obligations of Sellers arising prior to the Closing . . .*** (emphasis supplied).

This provision reflects the generalized contractual intent of the parties; that New GM was not assuming liabilities relating to Old GM's conduct except as narrowly and explicitly set forth in the Sale Agreement. The failure to expressly mention punitive damages, a liability measured by Old GM's conduct, and whose sole purpose is to punish the wrongdoer-seller and deter its future wrongdoing, is therefore significant. The absence of language explicitly including punitive damages in the scope of Assumed Liabilities must be read consistently with the contractual intent reflected by the other provisions of the Sale Agreement, which demonstrate

6

that New GM assumed liabilities that were as narrow and limited as commercially necessary for its' business. As shown in the next section, it would also be against public policy to do so. Plaintiffs here do not have standing to complain about this result; they are not third party beneficiaries under the plain terms of the Sale Agreement.[7]

### D. Extrinsic Evidence Is Important Context For Construing Section 2.3(a)(ix)

If the Court were to determine that the plain language of Section 2.3(a)(ix) and the agreement as a whole do not unambiguously exclude punitive damages, then extrinsic evidence is relevant to determining the parties' intent. Here, the extrinsic evidence is clear that New GM never agreed to assume punitive damages. *First*, it was not commercially necessary to assume that type of obligation. *Second*, Section 2.3(a)(ix) was amended to address certain objections to the 363 Sale, and no objector sought this type of relief. *Third*, punitive damages, as a subordinated claim, would never have been paid by Old GM and, thus, there was no compelling reason for Old GM to seek such a provision in the Sale Agreement, no compelling reason for the creditors who would be the future equity holders of New GM to do so, and no compelling reason for New GM to agree to pay for such an obligation.

As described in New GM's Opening Brief (*see* p. 8 n.7), this Court has repeatedly found that New GM only agreed to assume those liabilities that were commercially necessary for the operation of its new business. New GM had no reason to, and never agreed to, pay for non-compensatory awards designed to punish Old GM for its misconduct or to provide plaintiffs with a windfall recovery. Punishing New GM for Old GM conduct would have been of no

---

[7] Section 9.11 of the Sale Agreement provides: "This Agreement shall be binding upon and inure solely to the benefit of each Party hereto, and their respective permitted successors and assigns. . . . Subject to the preceding sentence, nothing express or implied in this Agreement is intended or shall be construed to confer upon or give to any Person, other than the Parties, their Affiliates, and their respective permitted successors or assigns, any legal or equitable Claims, benefits, rights or remedies of any nature whatsoever under or by reason of this Agreement."

7

commercial benefit to New GM, nor would paying plaintiffs after they had been made whole through compensatory damages. Plaintiffs have not presented any evidence that New GM intended to assume this type of obligation.

Section 2.3(a)(ix) was amended to address specific objections made to the 363 Sale by objectors that discussed the necessity of paying compensatory damages to future accident victims relating to Old GM vehicles. The objectors argued[8] that people who have not yet suffered injury or loss because of Old GM's misconduct are not creditors. Injury or loss, in that context, meant compensatory damages, not punitive damages. The objectors also argued they had a due process right to be compensated for injury or loss. Again, that meant compensatory damages, not punitive damages. No objector asserted that New GM should pay punitive damages, and Section 2.3(a)(ix) was amended to address only the specific objections that were made.

At the time of the 363 Sale, it was known to all parties that, based on the purchase price and the amount of undisputed claims against Old GM, unsecured creditors would not be paid in full and subordinated claims, such as punitive damage awards, would not be paid *anything*. There was nothing speculative about this result. These facts are all relevant to the proper interpretation of Section 2.3(a)(ix). Because claims for punitive damages would never have been paid by Old GM, New GM would have no logical reason to assume them.

Moreover, the policy objectives of punishment and deterrence are not served if Section 2.3(a)(ix) is construed to provide for New GM's assumption of punitive damages. New GM should not be punished for acts committed before it came into existence. Courts applying New York law have held that imposing punitive damages on a party who did not commit the wrongful conduct is against public policy. Specifically, New York's "public policy precludes

---

[8] *See* New GM Opening Brief on Punitive Damages, at p. 6 n.6.

DMSLIBRARY01\21600\162081\27080310.v2-9/22/15

indemnification for punitive damages." *Soto v. State Farm Ins. Co.*, 83 N.Y.2d 718, 724 (N.Y. 1994); *see also Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 200 (N.Y. 1990) ("There is no question that the general rule, as articulated in two of our recent decisions, is that New York public policy precludes insurance indemnification for punitive damage awards, whether the punitive damages are based on intentional actions or actions which, while not intentional, amount to 'gross negligence, recklessness, or wantonness'")(citations omitted)).

In *Soto*, an insured sought to make its insurer indemnify it for punitive damages awarded in a motor vehicle accident lawsuit after the insurer refused to settle before trial. While the insurer was responsible for compensatory damages in excess of the policy limits, the New York Court of Appeals found that the insurer was not responsible for punitive damages:

> We conclude that a rule permitting recovery for excess civil judgments attributable to punitive damage awards would be unsound public policy. We have previously endorsed the "'fundamental principle that no one shall be permitted to take advantage of his own wrong.'" [citations omitted]  This principle is not vitiated by the existence of an entirely separate and analytically distinct wrong on the part of the insurer. [citations omitted] . . .

*Soto*, 613 N.Y.S.2d at 724-25; *see also Home Ins. Co.*, 75 N.Y.2d at 203 ("allowing coverage serves no useful purpose since such damages are a windfall for the plaintiff who, by hypothesis, has been made whole by the award of compensatory damages'" (citations omitted)).

The assumption of liabilities in a 363 sale is analogous to an insurer's agreement to indemnify its insured. In both cases, there is an agreement on the part of a third party to be liable for claims based on the actions of another. Allowing punitive damages to be shifted from the wrongdoer to a third party nullifies the policy objectives of punitive damages and is, thus, contrary to New York public policy.

9

### E.     **New GM Cannot Be Assessed Punitive Damages for Retained Liabilities**

Plaintiffs' other two arguments for punitive damages related to New GM conduct are already covered in other New GM submissions. New GM's opening imputation brief specifically addresses why New GM cannot be liable for punitive damages based on New GM's knowledge of purported events that took place at Old GM. And the marked pleadings and accompanying letters will demonstrate that plaintiffs' alleged "Independent Claims" are actually Retained Liabilities, which plaintiffs concede are not subject to punitive damages.[9]

WHEREFORE, New GM respectfully requests that this Court: (i) find that any request for punitive damages against New GM based on Old GM conduct is barred by the Sale Order, and cannot be maintained against New GM; and (ii) direct plaintiffs in lawsuits that seek punitive damages against New GM based on Old GM conduct to withdraw their request for punitive damages.

Dated: New York, New York
September 22, 2015

Respectfully submitted,

      /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

-and-

---

[9] Plaintiffs cite to *Holland v. FCA US LLC*, 1015 U.S. Dist. LEXIS 117643 (N.D. Ohio Sept. 3, 2015), in support of their Independent Claim argument. But *Holland* is inapposite. There, the plaintiffs framed the issue as to whether New Chrysler established a sufficient relationship with Old Chrysler vehicle owners such that state law imposed an independent duty. The alleged new conduct included events that took place after the sale to New Chrysler, including: (i) New Chrysler extending warranty coverage (akin to the glove box warranty), and (ii) New Chrysler issuing technical service bulletins alerting dealers and vehicle owners about vehicle issues. The Court did not decide any substantive issue, but determined it would not transfer the case to the bankruptcy court. Other than using the words "Independent Conduct," plaintiffs have not made any of the "new conduct" allegations set forth in *Holland*.

10

Richard C. Godfrey, P.C. (admitted *pro hac vice*)
Andrew B. Bloomer, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for General Motors LLC*

11