# Exhibit F

# UNITED STATES DISTRICT COURT

# EASTERN DISTRCT OF LOUISIANA

| | | |
|---|---|---|
| YOLANDA COLEMAN and | * | |
| QUNSTON COLEMAN | * | CIVIL ACTION NO. |
| | * | |
| VERSUS | * | JURY TRIAL DEMAND |
| | * | |
| GENERAL MOTORS, LLC, | * | SECTION: |
| GENERAL MOTORS HOLDING, | * | |
| LLC, STONERIDGE, INC., | * | MAGISTRATE: |
| STONERIDGE, INC. d/b/a POLLAK | * | |
| ENGINEERED PRODUCTS, AND | * | |
| ABC MANUFACTURING COMPANY | * | |
| | * | |

**************************************************************************

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, come plaintiffs, **YOLANDA
COLEMAN**, hereinafter occasionally referred to as **"COLEMAN"** and **QUNSTON
COLEMAN,** also sometimes referred to collectively as "Plaintiffs," who are domiciled in
Houma, Louisiana respectfully file the following Complaint for Damages:

## VENUE AND JURISIDCTION

### 1.

This Honorable Court has original jurisdiction over this action pursuant to 28 U.S.C. §
1332.  Venue is proper in accordance with 28 U.S.C. § 1391(b)(2).

### 2.

This case is brought pursuant to the Constitution and the laws of the United States of
America, the Louisiana Products Liability Act (LA. R.S. 9:2800.51 *et seq.*), the Louisiana Unfair
Trade Practices and Consumer Protection Law (LA R.S. 51:1401), the Transportation Recall

Enhancement, Accountability, and Documentation Act (49 U.S.C. § 30118 *et seq.*), Louisiana Civil Code Articles 2315, 2520, 2475, and 2524, and all other provisions of Louisiana Law which may have bearing on this proceeding.

## PARTIES

3.

**YOLANDA COLEMAN**, plaintiff, is a person of the full age of majority and a resident of Houma, Louisiana and the driver of the 2001 Pontiac Grand Am (hereinafter the "Defective Vehicle") at the time of the accident described in Paragraph 14 of this Complaint.

4.

**QUNSTON COLEMAN**, plaintiff, is a person of the full age of majority and a resident of Houma, Louisiana and the husband of **YOLANDA COLEMAN**.

5.

**GENERAL MOTORS CORPORATION** (hereinafter "**GM CORP.**") was a Delaware corporation with its headquarters in Detroit, Michigan. **GM CORP.** designed, manufactured, marketed, distributed and sold Pontiac, Saturn, Chevrolet and other brand automobiles in Louisiana and multiple other locations in the United States and worldwide.

6.

In 2009, **GM CORP.** filed for bankruptcy, and substantially all of its assets were sold pursuant to a Master Sales and Purchase Agreement ("Agreement") to **GENERAL MOTORS, LLC** (hereinafter "**GM LLC**").

7.

Under the Agreement, **GM LLC** also expressly assumed certain liabilities of **GM**

**CORP.**, including certain statutory requirements:

> From and after the Closing, Purchaser [**GM LLC**] shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller.

**GM LLC** also set forth that **GM LLC**:

> shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers [**GM CORP.**] that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

8.

**GM LLC** is liable through successor liability for the deceptive and unfair acts and omissions of **GM CORP.**, as alleged in this Complaint because **GM LLC** acquired and operated **GM CORP.** and ran it as a continuing business enterprise, and because **GM LLC** was aware from its inception of the Ignition Switch Defects in the Defective Vehicle driven by the Plaintiff.

9.

**GM LLC** is a Delaware corporation with its headquarters in Detroit, Michigan. **GM LLC** is registered with the Secretary of State and conducts business in all fifty states (including the District of Columbia). **GM LLC** was incorporated in 2009 and on July 10, 2009, acquired substantially all assets and assumed certain liabilities of **GM CORP.** through a Section 363 sale

under Chapter 11 of the U.S. Bankruptcy Code.

10.

At all times relevant herein, **GM CORP.** and its successor in interest **GM LLC** were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Defective Vehicle driven by the Plaintiff, and other motor vehicles and motor vehicle components throughout the United States.

11.

**STONERIDGE, INC.** and **STONERIDGE, INC. d/b/a POLLAK ENGINEERED PRODUCTS and/or ABC MANUFACTURING COMPANY,** (hereinafter collectively **"STONERIDGE"**) is an Ohio corporation with its principal places of business in Ohio and Massachusetts. **STONERIDGE, INC.** is located at 9400 East Market Street, Warren OH 44484, and can be served with process through its Registered Agent listed by the Ohio Secretary of State's office at: CT Corporation System, 1300 East 9th Street, Cleveland, OH 44114. **STONERIDGE, INC. d/b/a POLLAK ENGINEERED PRODUCTS** is located at 300 Dan Road, Canton, MA 02021, and can be served with process through its Registered Agent listed by the Massachusetts Secretary of State's office, at: CT Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110.

12.

Upon information and belief, at all times relevant herein, **STONERIDGE**, through its various entities, designed, manufactured, and supplied **GM LLC** with motor vehicle components, including the subject ignition switches.

[4]

13.

**GM LLC**, **STONERIDGE,** and **ABC MANUFACTURING COMPANY** are collectively referred to in this Complaint as "Defendants."

## FACTUAL ALLEGATIONS

14.

On August 18, 2002, **COLEMAN** was driving the Defective Vehicle, on Louisiana Highway 24 in Houma, Louisiana when suddenly and without warning, she was sideswiped by another vehicle causing her steering column to lock and lose control of the vehicle.  This malfunction caused his vehicle to travel off the highway and run into a utility pole.  Additionally, the driver's side airbag failed to deploy.  This accident caused **COLEMAN** to suffer severe and debilitating injuries, which require ongoing medical treatment.

15.

The defective vehicle should have been recalled because of the following defect in design, manufacture, and/or assembly later detailed in a recall notice:

> "If the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the "run" position.  If this occurs, engine power, power steering, and power braking may be affected, increasing the risk of a crash.  If the ignition switch is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury or fatality."

16.

**GM LLC** failed to disclose this defect in a timely manner and effectively concealed this defect until after **COLEMAN**'s accident.

[5]

17.

A manufacturer that is aware of dangerous design defects that cause its vehicles to shut
down during operation, or the vehicles' airbags not to deploy, must promptly disclose and remedy
such defects.

18.

More importantly, the Ignition Switch Defect in **GM LLC**'s vehicles could have been
easily avoided. From at least 2005 to the present, **GM LLC** received reports of crashes and
injuries that put **GM LLC** on notice of the serious safety issues presented by its ignition switch
system.

19.

Because of its faulty design and improper positioning, the ignition switch can
unexpectedly and suddenly move from the "on" or "run" position while the vehicle is in operation
to the "off" or "accessory" position (the "Ignition Switch Defect"). This can occur at any time
during normal and proper operation of the Defective Vehicle, meaning the ignition can suddenly
switch off while it is driving on the highway, as in **COLEMAN**'s case, leaving the driver
unable to safely control the vehicle.

20.

The vehicle **COLEMAN** was driving was originally designed, manufactured, marketed,
and placed into the stream of commerce by **GM CORP**. **GM CORP.** also violated these
obligations and duties by designing and marketing vehicles with defective ignition switch
systems, and then by failing to disclose that defect even after becoming aware that the ignition
switch defect was causing fatal accidents. In addition to the liability arising out of the statutory
obligations assumed by **GM LLC**, **GM LLC** also has successor liability for the deceptive and

[6]

unfair acts and omissions of **GM CORP.** because **GM LLC** has continued the business enterprise of **GM CORP.** with full knowledge of the Ignition Switch Defects.

21.

**GM LLC**'s predecessor, **GM CORP.** filed for bankruptcy in 2009. In July 2009, the bankruptcy court approved the sale of **GM CORP.** to **GM LLC**. Notwithstanding the prior bankruptcy or contractual obligations under the sale agreement, **GM LLC** is liable for its own conduct. From its inception in 2009 and while extolling the safety and reliability of its vehicles, **GM LLC** had its own independent knowledge of the defects in its vehicles, yet chose to conceal them.

22.

Specifically, **GM LLC** has actual knowledge that, because of the way in which the ignition was designed and integrated into the Defective Vehicle, the ignition switch can suddenly fail during normal operation, cutting off engine power and certain electrical systems in the cars, which, in turn, disables key vehicle components, safety features (like airbags), or other vehicle functions, leaving occupants vulnerable to crashes, serious injuries, and death.

**SUCCESSOR LIABILITY**

23.

The defective ignition switch was manufactured by **STONERIDGE AUTOMOTIVE PLC** and/or **STONERIDGE AUTOMOTIVE SYSTEMS, LLC** (hereinafter "**STONERIDGE**").

[7]

24.

Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act"),[1] and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must promptly disclose the defect.[2] If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers, and dealers of the defect and must remedy the defect.[3]

25.

**GM LLC** also violated the TREAD Act by failing to timely inform NHTSA of the ignition switch defects and allowed cars to remain on the road with these defects.

26.

Upon information and belief, prior to the sale of the Defective Vehicle, **GM LLC** knew of the Ignition Switch Defect through sources such as pre-release design, manufacturing, and field testing data; in-warranty repair data; early consumer complaints made directly to **GM LLC**, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI") and/or posted on public online vehicle owner forums; field testing done in response to those complaints; aggregate data from **GM LLC** dealers; and accident data. Despite this knowledge, **GM LLC** failed to disclose and actively concealed the Ignition Switch Defect from Plaintiff and the public, and continued to market and advertise the Defective Vehicle as a reliable and safe vehicle, which it was not.

---

[1]  49 U.S.C.§§ 30101-30170
[2]  49 U.S.C. § 30118(c)(l) & (2).
[3]  49 U.S.C. § 30118(b)(2)(A) & (B)

[8]

## CLAIMS FOR RELIEF

## PRODUCTS LIABILITY CLAIMS

### 27.

Upon information and belief, at all material times, **GM LLC** was the manufacturer and distributor of the vehicle.

### 28.

At all material times, **GM LLC**, was engaged in the business of designing, manufacturing, assembling, and selling the Defective Vehicle.

### 29.

At all material times, **GM LLC** was responsible for the sale and marketing of the Defective Vehicle.

### 30.

At all material times, **GM LLC** was responsible for all warnings and labels which accompanied the Defective Vehicle.

### 31.

**COLEMAN**'s injuries were caused by the fault of **GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY**, in that they manufactured and sold a defective product pursuant to Louisiana law.

### 32.

**COLEMAN**'s injuries were caused by the fault of **GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY**, in that the vehicle's ignition switch was unreasonably dangerous in construction and/or composition.

[9]

33.

**COLEMAN**'s injuries were caused by the fault of **GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY**, in that the vehicle's ignition switch was unreasonably dangerous in design.

34.

**COLEMAN**'s injuries were caused by the fault of **GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY**, in that the ignition switch is unreasonably dangerous because an adequate warning about the ignition switch was not provided to Plaintiffs in a timely manner.

35.

**COLEMAN**'s injuries were caused by the fault of **GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY**, in that the ignition switch is unreasonably dangerous because the ignition switch does not conform to an express warranty of the manufacturer.

**VIOLATION OF THE MAGNUUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301 et seq.**

36.

Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

37.

At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.

38.

Plaintiffs are consumers as defined in 15 U.S.C. § 2301(3).  They are consumers because

they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

39.

The Defective Vehicle is a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

40.

**GM LLC** is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)-(5).

41.

15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by failure of a warrantor to comply with a written or implied warranty. **GM LLC** breached these warranties as described in more detail herein.

42.

In connection with its sales of the Defective Vehicle, **GM LLC** gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. As a part of the implied warranty of merchantability, **GM LLC** warranted that the Defective Vehicle was fit for its ordinary purpose as a safe passenger motor vehicle, would pass without objection in the trade as designed, manufactured, marketed, and was adequately contained, packaged, and labeled.

43.

**GM LLC** is liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.

44.

**GM LLC** breached its implied warranty of merchantability to Plaintiffs because the Defective Vehicle was not fit for the ordinary purposes for which it is used—namely, as a safe passenger motor vehicle. The Ignition Switch Defect, which affects the ignition switch system in the Defective Vehicle, may, among other things, result in the vehicle's airbags not deploying in a crash event, increasing the potential for occupant injury or death. This safety defect makes the Defective Vehicle unfit for its ordinary purpose of providing safe transportation.

45.

**GM LLC** further breached its implied warranty of merchantability to Plaintiffs because the Defective Vehicle would not pass without objection in the trade, as it contained a defect that relates to motor vehicle safety due to the Ignition Switch Defect in the Defective Vehicle.

46.

**GM LLC** further breached its implied warranty of merchantability to Plaintiffs because the Defective Vehicle was not adequately contained, packaged, and labeled. The directions and warnings that accompanied the Defective Vehicle did not adequately instruct Plaintiffs on the proper use of the Defective Vehicle in light of the Ignition Switch Defect, or adequately warn Plaintiffs of the dangers of improper use of the Defective Vehicle.

47.

At the time of the delivery of the Defective Vehicle, **GM LLC** did not provide instructions and warnings to Plaintiffs to not place extra weight on the vehicle's key chains, including a fob or extra keys. According to **GM LLC**, placing extra weight on the vehicle's key chain increases the chances that the ignition switch will unintentionally move from the "on" position to the

"accessory" or "off" position.

48.

At the time of the delivery of the Defective Vehicle, **GM LLC** did not provide instructions and warnings to Plaintiffs to avoid rough, bumpy, and uneven terrain while driving his vehicle. Traveling across such terrain increases the chances that the ignition switch in the Defective Vehicle will unintentionally move from the "on" position and into the "accessory" or "off" position, especially when the key chains are weighted down with a fob, additional keys or other items.

49.

At the time of the delivery of the Defective Vehicle, **GM LLC** did not provide instructions and warnings to Plaintiffs to carefully avoid brushing or bumping up against his vehicle's key chain with a body part. According to **GM LLC**, brushing or bumping up against the Defective Vehicle's key chains increases the chances that the ignition switch in the Defective Vehicle will unintentionally move from the "on" position and into the "accessory" or "off" position.

50.

At the time of the delivery of the Defective Vehicle, **GM LLC** did not adequately warn Plaintiffs of the dangers of not taking the necessary steps outlined above to prevent the ignition switch in their vehicle from unintentionally moving from the "on" position and into the "accessory" or "off" position while in motion, including the loss of power and shut off of the engine resulting in an increased difficulty in maneuvering the vehicle, the lack of airbag deployment in the event of a crash and injury or death.

[13]

51.

Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs are entitled to recover the damages caused to them by **GM LLC**'s breach of the implied warranty of merchantability, which damages constitute the difference in value between the Defective Vehicle as warranted (its sales prices) and the Defective Vehicle as actually delivered (perhaps worth $0.00) (i.e., a total or partial refund of the full purchase prices of the Defective Vehicle), plus loss of use and other consequential damages arising after the date of delivery of the Defective Vehicle.

52.

Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs in connection with the commencement and prosecution of this action.

## **BREACH OF WARRANTY OF FITNESS FOR ORDINARY USE**

53.

**GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY** also warranted that the Defective Vehicle was reasonably fit for its ordinary and intended use. La. C.C. Art. 2524.

54.

The Defective Vehicle was clearly not safe and contained a serious and life threatening defect. As a result, the Defective Vehicle was unfit and inherently dangerous for ordinary use.

55.

As a direct and proximate result of **GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY's** actions in breaching their warranty of fitness for ordinary use, Plaintiffs have sustained serious and significant damages for which **GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY** are liable.

## **VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

56.

**GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY's** acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint demonstrate unfair and deceptive methods.

57.

The unfair and deceptive acts and practices of **GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY** violate the provisions of the Louisiana Unfair Trade Practices and Consumer Protection Law. As a result, Plaintiffs suffered actual damages for which they are entitled to relief.

58.

As a direct and proximate cause of **GM LLC, STONERIDGE and/or ABC MANUFACTURING COMPANY**'s acts and omissions, Plaintiffs have incurred economic damages and are entitled to recover monetary damages, including but not limited to, replacement and/or reimbursement for loss of value.

## BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS

59.

Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

60.

At all times relevant hereto, Defendants knew of the use for which the Defective Vehicle was intended and impliedly warranted the Defective Vehicle to be of merchantable quality and safe and fit for such use.

61.

Defendants were aware that a consumer, such as the Plaintiffs, would use the Defective Vehicle in the manner in which passenger vehicles are intended to be used.

62.

Plaintiffs reasonably relied upon the judgment and sensibility of Defendants to sell the Defective Vehicle only if it was indeed of merchantable quality and safe and fit for Plaintiffs' intended use. Defendants breached their implied warranty of merchantability to Plaintiffs because the Defective Vehicle was neither of merchantable quality nor fit for the ordinary purposes for which it is used—as a safe passenger vehicle. Specifically, and according to **GM LLC**'s representatives, the Defective Vehicle contained the Ignition Switch Defect, which makes the Defective Vehicle unfit for their ordinary purpose of providing safe transportation.

63.

Defendants further breached their implied warranty of merchantability to Plaintiffs because the Defective Vehicle was not adequately contained, packaged, and labeled in that

[16]

the directions and warnings that accompanied the Defective Vehicle did not adequately instruct Plaintiffs on the proper use of the Defective Vehicle in light of the Ignition Switch Defect.

64.

At the time of delivery of the Defective Vehicle, Defendants did not provide instructions and warnings to Plaintiffs to not place extra weight on their vehicles' key chains, including a fob or extra keys. On or around March of 2014, GM publicly stated that placing extra weight on the key chain of the Defective Vehicles increases the chances that the ignition switch in the Defective Vehicles will move from the "on" position and into the "accessory" or "off" position.

65.

At the time of the delivery of the Defective Vehicle, Defendants did not provide instructions and/or warnings to Plaintiffs to avoid rough, bumpy, and uneven terrain while driving. On or around March of 2014, GM publicly stated that traveling across such terrain increases the chances that the ignition switch in the Defective Vehicles will move from the "on" position to the "accessory" or "off" position.

66.

Additionally, at the time of delivery of the Defective Vehicle, Defendants did not adequately warn Plaintiffs of the dangers of not taking the necessary steps outlined above to prevent the ignition switch in the Defective Vehicles from moving from the "on" position to the "accessory" or "off" position while the Vehicle is in motion.

Case 2:15-cv-03081-RJB-JCW    Document 1    Filed 09/23/15    Page 28 of 21

67.

It was not necessary for Plaintiffs to give Defendants notice of GM's breach of the implied warranty of merchantability because Defendants had actual notice of the Ignition Switch Defect. Prior to the filing of this action, GM issued a safety recall for the Defective Vehicles acknowledging the Ignition Switch Defect. Defendants admitted they had notice of the Ignition Switch Defect as early as 2004, and possibly as early as 2001. At the time of the safety recall, GM also acknowledged that numerous accidents and fatalities were caused by the Ignition Switch Defect. In addition to the above, the filing of this action is sufficient to provide Defendants notice of their breaches of the implied warranty of merchantability with respect to the Defective Vehicles.

68.

Plaintiffs' injuries were caused by the negligence of defendant, **GM LLC**, in the following non-exclusive particulars, to-wit:

a.  Manufacturing and selling a product which is unreasonably dangerous in construction and/or composition;

b.  Manufacturing and selling a product which is unreasonably dangerous in design;

c.  Failing to provide adequate and timely warnings about the product;

d.  Manufacturing and selling a product which is unreasonably dangerous because it does not conform to an express warranty;

e.  Improperly installing the **STONERIDGE** ignition switch;

f.  The vehicle and ignition switch were being used in a way that was intended and/or foreseeable;

g.  The defendant, **GM LLC,** is engaged in the business of manufacturing or selling

vehicles; and

h.  Any other acts of negligence to be shown at the trial of this matter.

69.

Plaintiffs' injuries were caused by the negligence of defendant, **STONERIDGE and/or ABC MANUFACTURING COMPANY**, in the following non-exclusive particulars, to-wit:

a.  Manufacturing and selling a product which is unreasonably dangerous in construction and/or composition;

b.  Manufacturing and selling a product which is unreasonably dangerous in design;

c.  Failing to provide adequate and timely warnings about the product;

d.  Manufacturing and selling a product which is unreasonably dangerous because it does not conform to an express warranty;

e.  The ignition switch was being used in a way that was intended and/or foreseeable;

f.  The defendant, **STONERIDGE,** is engaged in the business of manufacturing and selling ignition switches; and

g.  Any other acts of negligence to be shown at the trial of this matter.

70.

**YOLANDA COLEMAN** alleges the following general and specific damages for which she is entitled to recover in an amount calculated to adequately compensate her for the injuries and damages she sustained:

a.  Past, present, and future medical expenses;

b.  Past, present, and future physical pain and suffering and loss of function;

c.  Past, present, and future mental anguish and emotional distress;

d.  Past, present, and future lost wages and diminished earning capacity;

[19]

    e.   Special care and services;

    f.   Loss of enjoyment of life;

    g.   Permanent partial disability;

    h.   Travel expenses;

    i.   Costs of these proceedings and experts fees, and

    j.   Any other damages which will be shown through discovery, proven at trial, and are recoverable by law.

71.

**QUNSTON COLEMAN** alleges the following general and specific damages for which he is entitled to recover in an amount calculated to adequately compensate him for the damages he sustained:

    a.   Loss of consortium;

    b.   Loss of aid, assistance, companionship, affection, society, and service; and

    c.   Any other damages which will be shown through discovery, proven at trial, and are recoverable by law.

72.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

**WHEREFORE,** plaintiffs, **YOLANDE COLEMAN and QUNSTON COLEMAN,** pray the defendants be cited and served with this complaint and after due proceedings are had, there be judgment in their favor and against defendants, **GENERAL MOTORS CORPORATION, GENERAL MOTORS, LLC, STONERIDGE AUTOMOTIVE PLC,**

[20]

**STONERIDGE AUTOMOTIVE SYSTEMS, LLC**, **and ABC MANUFACTURING**

**COMPANY** severally, jointly and *in solido*, in a full and true sum calculated to compensate

plaintiffs for the damages complained of herein, along with legal interest from the date of judicial

demand until paid, for all costs of these proceedings, and for all other general and equitable relief.

Respectfully submitted,

SANGISETTY LAW FIRM, LLC

/s/ Michael Lillis_____
RAVI K. SANGISETTY (Bar No. 30709)
MICHAEL E. LILLIS (Bar No. 33245)
935 Gravier Street, Suite 835
New Orleans, La 70112
Telephone:     (504) 662-1016
Facsimile:     (504) 662-1318

and

BRIAN K. JEFFERSON (Bar No. 23143)
228 St. Charles Avenue, Ste. 1110
New Orleans, LA 70130
Telephone:     (504) 586-9395

**SERVICE INSTRUCTIONS:**

Service on all defendants will be completed by waiver pursuant to Rule 4(d) of the FRCP.

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
YOLANDA COLEMAN AND QUNSTON COLEMAN

### DEFENDANTS
GENERAL MOTORS, LLC, GEBERAL MOTORS HOLDING, LLC, STONERIDGE, INC, STONERIDGE INC. DBA POLLAK ENGINEERING PRODUCTS, ABC MANUFACTURING COMPANY

**(b)** County of Residence of First Listed Plaintiff   TERREBONNE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   DELAWARE
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
MICHAEL LILLIS AND RAVI SANGISETTY
935 GRAVIER ST., STE. 835
NEW ORLEANS, LA 70112 5046621016

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
         Plaintiff

☐ 3   Federal Question
         *(U.S. Government Not a Party)*

☒ 4   Diversity
         *(Indicate Citizenship of Parties in Item III)*

☐ 2   U.S. Government
         Defendant

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☒ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
         Proceeding

☐ 2   Removed from
         State Court

☐ 3   Remanded from
         Appellate Court

☐ 4   Reinstated or
         Reopened

☐ 5   Transferred from
         Another District
         *(specify)*

☐ 6   Multidistrict
         Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332
Brief description of cause:
FAULTY IGNITION SWITCH INJURY CASE

## VII. REQUESTED IN COMPLAINT:
☐   CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
08/31/2015

SIGNATURE OF ATTORNEY OF RECORD
,

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____